WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------x
:
In re                                            :          **Chapter 11**
:
**SEARS HOLDINGS CORPORATION**, *et al.*,        :          **Case No. 18-23538 (RDD)**
:
**Debtors.**[1]                                  :          **(Jointly Administered)**
:
------------------------------------------------------------------- x
**VIR VENTURES, INC.** and                       :
**AMI VENTURES, INC.**,                           :
                                    **Plaintiffs,** :        **Adversary Proceeding**
:
                        -against-                 :          **Case No. 19-08700 (RDD)**
:
**SEARS HOLDINGS CORPORATION, et al.**,          :
:
                                    **Defendants.** :
:
-------------------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**DECLARATION OF JENNIFER BROOKS CROZIER, ESQ.
IN SUPPORT OF THE DEBTORS' (I) MOTION TO DISMISS THE ADVERSARY
COMPLAINT AND (II) REPLY TO PLAINTIFFS'
OPPOSITION TO DEBTORS' SECOND OMNIBUS CLAIMS OBJECTION**

Pursuant to 28 U.S.C. § 1746, I, Jennifer Brooks Crozier, hereby declare and state

as follows:

1.      I am an associate at Weil, Gotshal & Manges LLP and counsel for the

Debtors in the above-captioned proceeding.

2.      I submit this Declaration in support of the Debtors Motion to Dismiss the

Adversary Complaint and Reply to the *Joint Response of VIR Ventures, Inc. and AMI Ventures,*

*Inc. in Opposition to Debtors' Second Omnibus Claims Objection* (ECF No. 5056), filed

concurrently herewith.

3.      Attached hereto as **Exhibit A** is a true and correct copy of pages 1 to 41 of

the transcript of the February 24, 2020 omnibus hearing held in the above-captioned case before

the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy

Court for the Southern District of New York.

4.      Attached hereto as **Exhibit B** is a true and correct copy of AMI Ventures,

Inc.'s ballot to opt-in to the Administrative Claim Program, Ballot No. 182353801039931, dated

November 18, 2019.

5.      Attached hereto as **Exhibit C** is a true and correct copy of VIR Ventures,

Inc.'s ballot to opt-in to the Administrative Claim Program, Ballot No. 182353801040864, dated

November 18, 2019.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 2, 2020
New York, New York

_/s/ Jennifer Brooks Crozier_
Jennifer Brooks Crozier

# Exhibit A

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 18-23538-rdd

4

5    - - - - - - - - - - - - - - - - - - -x

6

7    In the Matter of:

8

9    SEARS HOLDINGS CORPORATION,

10

11            Debtors.

12

13    - - - - - - - - - - - - - - - - - - -x

14    Vir VENTURES, ET AL.,

15

              Plaintiffs,

16

       VS.                          Adv. No. 19-08700-RDD

17

18    SEARS HOLDINGS CORPORATION,

              Defendant.

19    - - - - - - - - - - - - - - - - - - - - - - - - - x

20

21            United States Bankruptcy Court

22            300 Quarropas Street, Room 248

23            White Plains, New York

24

25

Page 2

1                    February 24, 2020

2                       10:16 AM

3

4    B E F O R E:

5    HON. ROBERT D. DRAIN

6    U.S. BANKRUPTCY JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   Notice of Agenda of Matters Scheduled for Hearing on

2   February 24, 2020 at 10:00 a.m.

3

4   HEARING RE:  Adversary proceeding: 19-08700-rdd, Vir

5   Ventures, Inc., et al v Sears Holdings Corporation, Pre-

6   trial Conference.

7

8   HEARING RE:  Adversary proceeding: 19-08700-rdd, Vir

9   Ventures, Inc., et al v Sears Holdings Corporation, Motion

10  to Adjourn Adversary Proceeding or for an Extension of Time

11  to Answer or Otherwise Respond to Plaintiffs' Adversary

12  Complaint (related Document(s) 5).

13

14  HEARING RE: Administrative Claims Consent Program.

15

16  HEARING RE:  Motion to Allow Relief from Amended Stipulated

17  Protective Order fled by Sonia E. Colon on behalf of Santa

18  Rosa Mall, LLC (ECF 7210).

19

20  HEARING RE:  Motion to Approve/Second Motion for Orders

21  Establishing Streamlined Procedures Governing Adversary

22  Proceedings Brought by the Debtors Pursuant to Sections 502,

23  547, 548 and 550 of the Bankruptcy Code (ECF 7204).

24

25

Page 4

1    **HEARING RE: Motion to Authorize/Motion of Debtors Requesting**

2    **Release of Adequate Assurance Deposit Amounts Pursuant to**

3    **the Adequate Assurance Procedures (ECF 7290).**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    **Transcribed by:  Pamela Skaw, Nicole Yawn and**

25    **Jamie Gallagher**

**Page 5**

```
 1    A P P E A R A N C E S :

 2    WEIL GOTSHAL & MANGES LLP

 3         Attorneys for Sears Holdings Corp.

 4         and Affiliated Debtors

 5         767 Fifth Avenue

 6         New York, NY 10153

 7

 8    BY:  GARRETT FAIL, ESQ.

 9         JACQUELINE MARCUS, ESQ.

10         ANGELINE HWANG, ESQ.

11         JENNIFER BROOKS COZIER, ESQ.

12

13    FOLEY & LARDNER LLP

14         Attorney for Priority Claimant

15         90 Park Avenue

16         New York, NY 10016

17

18    BY:  PAUL LABOV, ESQ.

19

20    AKIN GUMP STRAUSS HAUER & FELD LLP

21         Attorney for UCC

22         One Bryant Park

23         New York, NY 10036

24

25         BY: SARA L. BRAUNER, ESQ.
```

Page 6

1   FERRAIUOLI LLC

2        Attorney for Gustavo Chico, Santa Rosa Mall, LLC

3        And Carlos Rios Gautier

4        Bank of America Building

5        390 North Orange Avenue

6        Suite 2300

7        Orlando, FL 32801

8

9   ALSO PRESENT:

10   SELEN MAZER PAYMER (ph)

11   NEVILLE N. REED, ESQ. (TELEPHONIC)

12   LUCAS SCHNEIDER, ESQ. (TELEPHONIC)

13   SHARON C. BRITTON, ESQ. (TELEPHONIC)

14   LIGEE GU, ESQ. (TELEPHONIC)

15   DALE MENENDEZ, ESQ. (TELEPHONIC)

16   CARLOS RIOS GAUTIER, ESQ. (TELEPHONIC)

17

18

19

20

21

22

23

24

25

Page 7

1                     P R O C E E D I N G S

2              THE CLERK:   All rise.

3              THE COURT:   Please be seated.   Okay.   Good morning.

4    In re Sears Holdings Corporation, et al.

5              MS. CROZIER:   Good morning, Your Honor.

6              The first item on the agenda is the initial pre-

7    trial conference in Vir Ventures, et al. against Sears

8    Holdings Corporation, number 19-08700.

9              THE COURT:   Okay.

10             MS. CROZIER:   Jennifer --

11             THE COURT:   And related to that is Sears Holdings

12   Corporation's motion to adjourn or alternative for an

13   extension of time to answer.

14             So why don't we take both of those matters

15   together?

16             MS. CROZIER:   Thank you, Your Honor.

17             Jennifer Crozier, Weil Gotshal & Manges for the

18   Debtors.

19             Your Honor, the Debtors move to adjourn or stay

20   this adversary proceeding or, in the alternative, for an

21   extension of time to respond to Plaintiffs' complaint.

22             The Plaintiffs are litigating their administrative

23   expense claims in three separate contexts forcing the

24   Debtors to contend against those claims on three separate

25   fronts and expend the limited resources of the estate in so

1    doing to the detriment of the estate's other creditors.

2           The Plaintiffs, on November 12, 2019, filed their

3    adversary complaint asserting several claims based, in

4    pertinent part, on allegations that the Debtors breached

5    certain Sears' market place agreement.

6           The complaint seeks $790,000 approximately with

7    respect to pre-petition amounts and $95,000 approximately

8    with respect to post-petition amounts.

9           Now, before they filed their adversary complaint,

10   Plaintiffs filed six proofs of claim.  In August 2019, the

11   Debtors objected to these claims seeking to reclassify those

12   general unsecured claims.

13           THE COURT:  Because they were filed as 503(b)(9)?

14           MS. CROZIER:  Correct.

15           THE COURT:  Claims.

16           MS. CROZIER:  The Plaintiffs responded and those

17   claims are now the subject of a pending contested matter.

18           And then six days after they filed their adversary

19   complaint, Plaintiffs affirmatively opted in to the

20   administrative expense claims consent program by submitting

21   two opt-in ballots; the first on behalf of Plaintiff AMI for

22   approximately $700,000.  That covered both pre and post-

23   petition amounts.  And the second Plaintiff, Vir Ventures,

24   for approximately $185,000; again covering both pre and

25   post-petition amounts.

Page 9

1            So, Your Honor, the Debtors ask this Court to

2    adjourn this proceeding until Plaintiffs' administrative

3    expense claims have been resolved in connection with the

4    pending contested matter and the administrative expense

5    claims consent program.  These are the contexts approved by

6    this Court in the confirmation order and the omnibus

7    objection procedures for the orderly and efficient

8    resolution of claimants' administrative expense claims.

9            This adversary proceeding is decidedly not the

10   proper context in which to litigate Plaintiffs'

11   administrative expense claims.

12           First, the pre-petition amounts the Plaintiffs are

13   seeking amount to a claim for money damages based on pre-

14   petition conduct which is not properly brought as an

15   adversary proceeding under the law and that's In Re Ephedra

16   Products Liability Litigation, Southern District of New

17   York, 2005.

18           Second, Your Honor, the Debtors' position is that

19   Plaintiffs waived their right to recover on their

20   administrative expense claims in the adversary context when

21   they opted-in, affirmatively opted-in, to the administrative

22   expense claims consent program.  But, at the very least,

23   their participation in that program moots their claim for

24   relief as to post-petition amounts in connection with this

25   adversary proceeding.

1          At bottom, Your Honor, Plaintiffs' adversary

2     proceeding amounts to an end run around the orderly and

3     efficient procedures that this Court approved to ensure that

4     all creditors of the estate are treated fairly and

5     equitably.

6          Now Plaintiffs make a few arguments in their

7     opposition to the Debtors' motion to adjourn that I would

8     like to briefly address.

9          First, Plaintiffs claim that this adversary

10    proceeding is not simply a claim for money damages based on

11    pre-petition conduct.  Plaintiffs argue we've asserted

12    claims for equitable relief as well.

13          First of all, for reasons that the Debtors would

14    make clear in a motion to dismiss should it come to that,

15    Your Honor, Plaintiffs have not and cannot state a claim for

16    equitable relief here.

17          But even if that were not the case, this Court held

18    in In Re Johns Manville 1985 that if the claim -- if the

19    equitable claim is one that can be reduced to a money

20    judgment, that is -- is effectively a claim for money

21    damages masquerading as equitable relief, it must be

22    asserted in connection with the orderly claims process.

23          THE COURT:  But that's a -- that's true as a

24    general proposition but there are two claims in this

25    complaint that, to me, do seek relief that would be proper

Page 11

1    as an adversary proceeding.

2           First, the declaration or recognition of an express

3    trust and, second, the imposition of a constructive trust.

4    That's not something you would normally litigate, I believe,

5    in a claim objection.

6           It's affirmative relief that's being sought

7    separate and apart from a claim.  It's basically saying this

8    isn't property of the estate.

9           MS. CROZIER:  Right.  So a couple of things on

10   that, Your Honor.

11          The Debtors are prepared to litigate those claims

12   for equitable relief in connection with a motion to dismiss

13   if need be.  But we would submit that addressing Plaintiffs'

14   administrative expense claims -- Plaintiff submitted -- each

15   Plaintiff submitted one ballot and that ballot covers both

16   pre and post-petition.  Now those ballots include the

17   amounts Plaintiffs are seeking as equitable relief.

18          And so we would submit that because these are

19   orderly and -- an orderly and efficient manner of addressing

20   Plaintiffs' claims that we should adjourn this adversary

21   proceeding until those claims are resolved and then

22   determine whether it's appropriate to move forward on those

23   claims.  That's the first argument.

24          The second argument is, again an argument that we

25   would anticipate making in a motion to dismiss, Plaintiffs'

Page 12

1  haven't and can't state a claim for breach of express trust.

2  It's not enough to simply say in -- under the law, it's not

3  enough to simply say in a contract --

4         THE COURT:  But that may be the case.

5         MS. CROZIER:  Okay.

6         THE COURT:  But why wouldn't the right thing to do

7  here be to consolidate those two claims under Rule 7042 with

8  the pending claim objection so it's all dealt with at once

9  and then set a deadline to answer or otherwise move on just

10  those two?

11         I mean, the -- I agree with you on the other

12  claims.  They're -- it's just another way of saying we have

13  a claim as opposed to a separate claim for relief to

14  establish a trust either actual or constructive.

15         MS. CROZIER:  So, just so I understand what Your

16  Honor is proposing, you would propose to consolidate the

17  claims for equitable relief with the pending contested

18  matter?

19         THE COURT:  The two -- well, I'm not sure -- I want

20  to be specific.  The claim for express trust and the claim

21  for a constructive trust.

22         The other claims, the other causes of action, to

23  me, are already being dealt with in the claims objection

24  process and properly so.  They're not -- they are not the

25  proper subject of the Rule 7001 adversary proceeding.

1          MS. CROZIER:  So I would defer to my colleague in

2   bankruptcy concerning how to consolidating these claims with

3   the pending contested matter.

4          THE COURT:  Okay.

5          MR. FAIL:  Good morning, Your Honor.

6          Garrett Fail of Weil Gotshal & Manges, if I may

7   address the Court on this issue.

8          THE COURT:  Right.

9          MS. FAIL:  So the objections that are filed with

10  respect to the current claims of the administrative and the

11  pre-petition portions are a part of omnibus objections.

12         The Debtors adjourned that omnibus objection.  We

13  filed the thirteenth omnibus objection to a hundred other

14  claims with the same issues so that they could all be

15  addressed.  There was a reason that we've consistently, you

16  know, efficiently moved these cases forward and I'll present

17  more of an update on the claims later.

18         So I don't think it necessarily makes sense to

19  combine them.

20         Also Your Honor will recall you set up claims

21  objections procedures whereby legal issues would be

22  determined first before factual issues.

23         So, while we agree, and I think Ms. Crozier

24  suggested and our pleadings suggested, that this be handled

25  in connection with the claims process and without an

Page 14

1    adversary proceedings, the additional time delay and cost of

2    an adversary.  I think the objections can be dealt with

3    separately.  They're on track.  They'll go forward.  That

4    issue will be resolved.

5            The remaining claims can be dismissed either, in

6    our opinion, in a motion or in the adversary.  It doesn't --

7    we're just trying to do it efficiently.

8            But I don't think it makes sense to delay or

9    combine this new equitable relief with the question of

10   whether they're entitled to a claim.

11           They filed claims and they submitted ballots.

12   They've asked for a claim.  Now they're asking for equitable

13   relief on top.

14           I think we should address the claim first and

15   equitable relief afterwards and I think it's an admission

16   essentially when they filed two claims, they submitted

17   ballots.  They have claims.

18           THE COURT:  Well are you saying that they're barred

19   from asserting a trust?

20           MR. FAIL:  We've asked for additional time to

21   respond.  And so if we have -- if they continue to, you

22   know, prosecute the adversary after -- they might win,

23   right?

24           We -- the objection is pending.  Your Honor hasn't

25   decided whether or not they have an administrative claim.

1           If they have a claim, this adversary's moot.  They

2    get a hundred cents.  They're not going to get additional

3    monies.  They're looking for the same amount.

4           THE COURT:  Well it's the other way around, too,

5    right?  If they have a trust, it -- yeah, the claim

6    objection is moot.

7           MR. FAIL:  Sure.  But one's already been pending

8    and subject to -- so it's been responded to and, you know,

9    it --

10          THE COURT:  I just don't see why it's that big a

11   deal to include a motion to dismiss or a motion for judgment

12   on the pleadings on the two trust claims as part of your

13   objection to the claim.

14          MR. FAIL:  Well, we can add another objection, Your

15   Honor.  We'll just need a little bit more time to do it and

16   we'll file a separate objection.

17          But the one that's currently pending was with

18   respect to the same request for the same amounts but in a

19   different form.  So we didn't have that pending when we set

20   an objection.

21          THE COURT:  I understand that.  And so it -- I

22   think the need to extend the time to answer and to schedule

23   it in coordination with or combine it.

24          UNIDENTIFIED SPEAKER:  Your Honor, if I may.  I am

25   here.  I'm counsel for --

1          THE COURT:  Okay.  I want to get the Debtors' view

2     first under Rule 7042, it makes sense.  And I appreciate

3     that there are a lot of common issues, common to a lot of

4     claimants, generally.

5          But, just in terms of efficiently dealing with

6     these particular claims --

7          MR. FAIL:  We wouldn't want to delay, Your Honor,

8     everybody else.  I think Your Honor --

9          THE COURT:  No.

10         MR. FAIL:  -- has asked us to move forward.

11         THE COURT:  I agree with you.

12         MR. FAIL:  We'll move forward to dismiss these.  We

13    think that they're frivolous at best.

14         THE COURT:  Okay.  All right.  Anything else?

15         MS. CROZIER:  So there were just a couple of other

16    things that I'd like to address, Your Honor.

17         With respect to the opposition to our motion to

18    adjourn, Plaintiffs' counsel indicated that there's no cause

19    for delay here because heretofore the settlement process has

20    been minimal.

21         Counsel for the Debtors have engaged in several

22    conversations and substantial correspondence with Plaintiffs

23    in an effort to reach an amicable and expeditious resolution

24    of their claims and to avoid depleting the pool of resources

25    available to the estate's other creditors to no avail

Page 17

1    because here we are.  For example, Your Honor, Plaintiffs,

2    on Friday, served us with an improper 30(b)(6) notice of

3    deposition delineating no fewer than 24 topics; improper, of

4    course, because the parties haven't met and conferred yet

5    pursuant to Rule 26(f).

6         Second, Plaintiffs filed, last night at 12:27 a.m.

7    I think, a motion to set aside $885,000, a reserve from the

8    second distribution, claiming that the Debtors' negotiations

9    thus far have been "our way or the highway" and if what

10   Plaintiffs' counsel means by that is that Debtors have

11   expressed an unwillingness to pay Plaintiffs any more than

12   they are owed under the law and any more than the orderly

13   procedures established by this Court or approved by this

14   Court for the settlement of their claims, then I suppose, in

15   that case, Plaintiff is correct.

16        But we do submit, Your Honor, that at least with

17   respect to the claims that are without question not properly

18   brought in connection with an adversary proceeding

19   (indiscernible) adjourn this and give the Debtors

20   substantially more time to respond.

21        THE COURT:  Okay.  I'm confused though.  I -- my

22   order confirming the plan contemplated a report and I

23   believe a motion or an opportunity to object at least if

24   there was going to be any distribution, right?

25        MR. FAIL:  No, Your Honor, I don't believe that

Page 18

1    there was.  I think last time, you may remember, pleadings

2    were filed because we announced that we were making a

3    distribution and then the rest ensued.

4            But I don't believe that there is a -- we don't

5    need to make another motion.  I think that there are minimum

6    conditions that need to be satisfied.

7            THE COURT:  Right.  I don't think that's right.  I

8    think there's some notice requirement.

9            MR. FAIL:  Sure.  Notice.  But not a -- no hearing.

10           THE COURT:  No, a notice requirement.

11           MR. FAIL:  Yeah.

12           THE COURT:  And people can object.

13           MR. FAIL:  Yeah.  We'll file a notices in advance.

14           THE COURT:  So is this -- was this pleading filed

15   last night in response to a notice?

16           MR. FAIL:  Not at all, Your Honor.

17           THE COURT:  So why are we wasting time on this?

18   It's a total waste of time.  Disregard that pleading.  It

19   should be withdrawn.  Okay.

20           MS. CROZIER:  That's all I have, Your Honor.  Thank

21   you.

22           THE COURT:  All right.

23           MS. PAYMER:   May I, Your Honor?

24           THE COURT:  Yes.

25           MS. PAYMER:  Your Honor, my name is

                                                          Page 19

1    Selen Mazer Paymer (ph).  I'm here on behalf of Vir Ventures

2    and AMI Ventures.

3             Your Honor, we did, in fact, file a motion last

4    night.

5             Our concern is, Your Honor, that we're not being

6    given the opportunity to be heard and to have this Court

7    determine the merits of our claims objection, our response

8    to the second omnibus claims objection as well as our

9    adversary proceeding, Your Honor.  I --

10            THE COURT:  But motion is to set aside money?

11            MS. PAYMER:  It is, Your Honor.  We're

12   concerned --

13            THE COURT:  Well -- but what's the -- why?  What

14   the context?

15            MS. PAYMER:  We're concerned, Your Honor.  We feel

16   as though that the Debtors have not complied with the

17   procedures set forth in the confirmation order with respect

18   to the administrative claims program --

19            THE COURT:  Are they making distributions?

20            MS. PAYMER:  Your Honor, they did make an initial

21   distribution.  And --

22            THE COURT:  After a notice was given, right?

23            MS. PAYMER:  After a notice was given, Your Honor.

24            THE COURT:  And the order requires notice to be

25   given with respect to future distributions.

Page 20

1          MS. PAYMER:  That's correct, Your Honor.

2          THE COURT:  And then someone can respond and say,

3    no, this is premature, right?

4          So why are we creating additional litigation before

5    that process happens?

6          MS. PAYMER:  Your Honor, my concern in conjunction

7    with their motion to continue the adversary proceeding is

8    that they're -- the Debtors are trying to run out the clock

9    on my clients' claims and we're now missing the first

10   distribution and the second distribution, Your Honor.

11         With respect to the first one, I know the

12   confirmation order says that there should be an expedited

13   reconciliation process.

14         And my clients are frustrated here because we've

15   been trying to resolve this matter on an amicable basis for

16   months, many months, Your Honor.

17         And we believe that, particularly with respect to

18   the adversary proceeding, Your Honor, that it's not just an

19   administrative claims issue.  There are also taxes that were

20   not paid.

21         There may be other individuals involved that we can

22   name in this litigation that --

23         THE COURT:  Wait, wait.  Let's just stop.

24         MS. PAYMER:  -- would be responsible.

25         THE COURT:  Let's stop for a moment.  Let's go

Page 21

 1    through this complaint and talk about the Bankruptcy Rules

 2    and the Bankruptcy Code and what can and cannot be brought;

 3    all right?

 4            MS. PAYMER:  Yes, Your Honor.

 5            THE COURT:  As I understand it, you have a pre-

 6    petition claim that's been objected to.  That pre-petition

 7    claim asserts an administrative expense right under Section

 8    503(b)(9), correct?

 9            MS. PAYMER:  Correct, Your Honor.

10            THE COURT:  And that's the subject of an -- a long

11    pending objection.

12            MS. PAYMER:  Correct, Your Honor.

13            THE COURT:  You also have an administrative

14    expense.

15            MS. PAYMER:  Yes, Your Honor.

16            THE COURT:  You assert those same claims in this

17    adversary proceeding.  In fact, you incorporate your

18    pleadings into the adversary proceeding.

19            MS. PAYMER:  Yes, Your Honor.

20            THE COURT:  Where on Earth is that based on Rule

21    7001 as opposed to the claims process?

22            Are we supposed to decide these things three times?

23            MS. PAYMER:  No, Your Honor.  We're just asking for

24    one --

25            THE COURT:  All right.

Page 22

1              MS. PAYMER:  -- (indiscernible) objection.

2              THE COURT:  So that is -- that should just be

3       dismissed.  It's not proper in this context as an adversary

4       proceeding.  It's bankruptcy 101.  It is not proper to keep

5       litigating separate -- the same matter in separate

6       pleadings.  It's a waste of time and money.

7              Congress got it right in the Bankruptcy Rules.

8       It's not covered in Rule 7001.  That is not a proceeding to

9       recover money.  It's a claim against the Debtor.  It's

10      already be asserted.

11             Then you say there may be third parties involved

12      through alter ego or piercing. And is that somehow a claim?

13      Are you asserting that in this adversary proceeding?  You're

14      not, right?

15             MS. PAYMER:  Not against the Debtors' estate, Your

16      Honor.  Against other individuals.

17             THE COURT:  You're not asserting it in the

18      adversary proceeding, right, because the -- those

19      individuals are not named in the complaint.

20             MS. PAYMER:  Not yet, Your Honor.  We haven't

21      engaged in discovery for us to figure out who that would

22      actually be.

23             THE COURT:  So that's not part of this adversary

24      proceeding either.  So you shouldn't be arguing that to me

25      today either.

Page 23

1          In fact, that argues to delay this.

2          There is also a serious issue as to your clients'

3     standing and/or whether it's barred by prior orders of the

4     Court.

5          So I would hope you would think very carefully

6     before pursuing that.

7          Among other things, a general alter ego or veil

8     piercing argument, it is well established in the Second

9     Circuit is a violation of a stay if it's brought just willy

10    nilly without stay relief.

11         MS. PAYMER:  Uh-huh.

12         THE COURT:  But it's not part of this complaint

13    anyway.

14         So the only thing, to me, that looks like something

15    new that might be covered by Bankruptcy Rule 7001 as an

16    adversary proceeding are the two trust claims.

17         Is there anything else?

18         MS. PAYMER:  No, Your Honor.  That's correct.

19         THE COURT:  So that's asserting an interest

20    improperly as opposed to a claim generally against the

21    Debtor.

22         MS. PAYMER:  Correct, Your Honor.

23         THE COURT:  All right.  So if one were to actually

24    deal with this complaint, one would have to sift through it

25    and exclude all of this.

1           And why should a debtor be forced to spend the

2    money to move to dismiss a complaint that, on its face, just

3    doesn't make any sense procedurally?

4           You're throwing out a procedural gauntlet that

5    doesn't make any sense except for these two claims.

6           MS. PAYMER:  Your Honor, I think -- I can confer

7    with Debtors' counsel with respect to the claims that we

8    should -- are outstanding and should remain.  I think we can

9    resolve a motion to dismiss.

10          THE COURT:  Okay.

11          MS. PAYMER:  I'm just concerned my client is here

12   today.  We just want to know when we can actually have this

13   Court determine any of these issues, the legal issues or the

14   factual issues.

15          THE COURT:  All right.  That's a fair point.  But I

16   think we're going to get to that later in today's calendar

17   which is the schedule for dealing with administrative

18   expenses.

19          MS. PAYMER:  Thank you, Your Honor.

20          THE COURT:  Okay.  So it seems to me, subject to

21   hearing the general report on administrative expenses, that

22   causes of action one, three, which is unjust enrichment,

23   implied contract; one being breach of contract -- well,

24   conversion depends on counts two and four.  But to the

25   extent it depends on some other count besides two and four,

Page 25

1     it should be dismissed.  Those should be dismissed.

2            Two and four which are the trust claims dismissed

3     without prejudice to the claims process.  It's already been

4     underway and underway for months.

5            Two and four should be consolidated with the claims

6     process under Bankruptcy Rule 7042 which is specifically

7     contemplated by the advisory committee commentary to the

8     2007 Amendments to Rule 3007 which deal with what should be

9     dealt within a claim objection and what should be dealt

10    within an adversary proceeding.

11           The rules committee and then through that -- then

12    Congress recognized that there are times when a claim

13    objection may also implicate matters that are dealt within

14    an -- properly and necessarily in an adversary proceeding

15    which would include the cause of action for the imposition

16    of a trust.

17           And the rules committee said if a claim objection

18    is filed separately from a related adversary proceeding, the

19    court may consolidate the objection with the adversary

20    proceeding under Rule 7042 and that's what should happen

21    here.

22           Now as far as what goes first, I -- we should talk

23    about that as part of the pre-trial.  But given how the

24    complaint is -- has been whittled down today, there

25    definitely should be an extension of the time to answer or

1    otherwise move.

2           But we should now deal with, you know, when that

3    should be.  So why don't we address that in the context of a

4    pre-trial conference which I gather pertains not only to

5    this litigation but the timing of resolving common issues in

6    a lot of different claim objections.

7           I want to know which counsel for the Debtor wants

8    to address that?

9           MR. FAIL:  Your Honor, Garrett Fail from Weil

10   Gotshal.

11          It doesn't make sense to give the overall report

12   right now and see where things are?

13          THE COURT:  Okay.

14          MR. FAIL:  I think it'll be brief.

15          MS. CROZIER:  Thank you, Your Honor.

16          THE COURT:  Okay.

17          (Pause)

18          MR. FAIL:  Good morning, again, Your Honor.

19          Garrett Fail of Weil Gotshal & Manges, for the

20   Debtors.

21          Your Honor, following entry of the confirmation

22   order on October 15th, the Debtors sent notices to

23   approximately 11,274 parties at 16,614 addresses.

24          Claimants were divided into three categories, as

25   you'll remember.  Opt-in, settled admin claims were those

1    who opted-in to the settlement and settled in time to be

2    eligible for an initial distribution of $21 million.

3            Non-opt-out settled admin claims would be those

4    people who did not opt-in but also did not opt-out plus

5    parties that did opt-in but whose claims were not reconciled

6    in time for the initial distribution.

7            The third category were those who opted-out and who

8    could be addressed and reconciled and paid after the

9    effective date of the Plan.

10           So addressing the opt-in settled admin claim

11   category first, Your Honor.

12           The Debtors received 1206 ballots.  After

13   reviewing, they identified and deducted approximately 258

14   duplicate claims and 120 claims or ballots that would be

15   addressed and should be addressed in separate processes

16   including professionals that would be paid out of a carve-

17   out.  Utilities for whom there are separate deposit accounts

18   to be paid for and taxing authorities.

19           That left 828 ballots to review.  The Debtors

20   reconciled and agreed with 359 of them or 43 percent of them

21   for a total of $73.2 million that shared in the $21 million

22   and they got 28.7 percent in the first distribution.

23           Ninety-eight percent of the payments to those

24   people cleared.  So it was successful.  There are roughly 13

25   checks out of 308 outstanding that haven't cashed.

```
 1              Moving on to the second category and the work
 2       that's been done subsequent --
 3              THE COURT:  Can I interrupt you?
 4              MR. FAIL:  Of course, Your Honor.
 5              THE COURT:  AMI and Vir were in the opt-in category
 6       but they were not reconciled?
 7              MR. FAIL:  Correct, Your Honor.
 8              THE COURT:  Okay.
 9              MR. FAIL:   So they rolled over and rather than
10       being capped at 75 percent, their cap goes up and they get
11       to recover up to 80 percent along with the other parties in
12       the second and subsequent distributions.
13              THE COURT:  Right.
14              MR. FAIL:  So, in the second category, where we
15       currently are, this includes as -- this included the opt-in
16       ballots that have not been reconciled plus additional
17       motions and proofs of claim that asserted 503(b)(9) claims
18       plus motions that are filed on the docket and proofs of
19       claims that were filed asserting 503(b)(1) claims.
20              The Debtors filed -- and plus it also included the
21       Debtors' books and records for unpaid, post-petition
22       503(b)(1).  That's the population that we were tasked to
23       deal with.
24              THE COURT:  Unless someone opted-out.
25              MR. FAIL:  Correct, Your Honor.
```

```
 1                THE COURT:  Right.  Okay.

 2                MR. FAIL:  The Debtors filed ten omnibus objections

 3      to more than 1400 claims.  I think roughly 1407, that had

 4      asserted approximately $702 million in administrative and

 5      priority claims.

 6                Of these, all but approximately 48, which is 48

 7      claims for fewer than 30 creditors, have been resolved.  So

 8      we resolved over 96 percent of the claims to which we

 9      objected without a contested hearing which I think is

10      impressive.

11                In terms of the dollars, we resolved, without a

12      contested hearing, more than 80 -- 98 percent in amount

13      subject to the first through tenth objections and we're

14      working with some of the --

15                THE COURT:  I'm sorry.  Subject to that what?

16                MR. FAIL:  First through tenth omnibus objections.

17                THE COURT:  Right.  Pursuant to --

18                MR. FAIL:  Those are the ones that --

19                THE COURT:  -- those.

20                MR. FAIL:  Pursuant to those --

21                THE COURT:  Right.

22                MR. FAIL:  -- that the Court either settled,

23      entered orders, we settled or we withdrew.  But we have

24      reconciled without a --

25                THE COURT:  As part of that process.
```

Page 30

1            MR. FAIL:  As part of that process.

2            THE COURT:  Okay.

3            MR. FAIL:  And through the administrative consent

4     process that ensued subsequently.

5            THE COURT:  Okay.

6            MR. FAIL:  My point, Your Honor, was only that we

7     didn't burden the Court extensively with contested matters.

8            And we're working with some of the additional

9     remaining 48 claims on a consensual basis waiting for, for

10    example, determination as to whether certain contracts will

11    be assumed or assigned to Transform.

12           So there's reasons that some -- consensual reasons,

13    why many of the objections have been carried, rather than to

14    withdraw and refile.

15            THE COURT:  Okay.

16            MR. FAIL:  Currently, outstanding, there are

17    approximately 1,936 in number, approximately $332 million in

18    asserted amounts outstanding.  Still significant.  But, of

19    these, Your Honor, the debtors have reconciled and can agree

20    to approximately 992 of them, more than 51 percent, leaving

21    944 disputed.  The debtors filed the eleventh, twelfth, and

22    thirteenth objections to approximately 278 creditors and/or

23    ballots.  That's approximately 30 percent of the 944.

24            The objection deadlines for these will lapse on

25    March 3rd and March 10, respectively, so coming up in

Page 31

1   advance of the next hearing, Your Honor.

2              THE COURT:  Which is March 25th, I think.

3              MR. FAIL:  I believe.  If that's the Monday, I

4   think we changed it to accommodate Your Honor's court

5   calendar.

6              THE COURT:  Okay.

7              MR. FAIL:  I think it was the 27th, and now, it's

8   the 25th.

9              THE COURT:  Well, maybe it's the 23rd.  That's the

10  Monday.  It's the 23rd.

11             MR. FAIL:  I believe it's the 23rd now, Your

12  Honor.

13             THE COURT:  okay.

14             MR. FAIL:  But upcoming and the objection deadline

15  will occur before then, and we're -- we'll be, you know,

16  consistent with our normal practice, submitting certificates

17  of no objection to whittle down and avoid the burden on the

18  Court and all the parties and interests.

19             So, Your Honor, that -- that leaves us with

20  approximately 668 disputed.  Still significant, but a lot

21  smaller.

22             THE COURT:  And I'm sorry.  This is in -- just in

23  Category 2 or in both categories?

24             MR. FAIL:  Category 2, Your Honor.

25             THE COURT:  Okay.

1          MR. FAIL:  category 3 is not significant, in terms

2     of number.

3          THE COURT:  Okay.

4          MR. FAIL:  But also, in terms of our mandate for

5     what, you know, we were tasked to focus on.  So this is what

6     I'm reporting on, Your Honor.

7          Of the 668, approximately 159 of these are real

8     estate-related.  The reason I say that is because the

9     debtors are working with Transform to ensure that amounts

10    for which Transform is responsible are paid by Transform,

11    including cure amounts, and reconciling additional asserted

12    amounts for the various landlords.  So some of them may have

13    been paid.  Some of them will be paid.  That's -- that's 159

14    of the 168.

15         So, setting those aside for the moment, there's

16    507 others that are disputed that we're working towards

17    resolving.  The debtors have sent out more than 365

18    individual emails to these parties.  The debtors believe

19    that, for the remaining -- that for 61 of the remaining

20    creditors or ballots, they relate to contracts that may have

21    been assumed or were assumed by Transformed and they,

22    therefore, no longer have claims against the debtors.  There

23    may be nothing left to do with those, so that may be 61 that

24    are resolved completed.  The debtors are researching

25    approximately 60 creditors to find ballot contact

Page 33

1    information for those, leaving 23 that haven't been

2    contacted with a formal email recently, and those will go

3    out by the end of the week.

4          The emails that we sent out informed parties that,

5    if they don't respond, the debtors will be pursuing

6    objections to the claims, and the debtors will do so where

7    there's no response or the response does not lead to

8    information sufficient to reconcile.  Obviously, there has

9    been a lot of work that's gone into this process.  The

10   debtors have been efficient with their use of judicial and

11   estate resources, and we hope to be able to continue that

12   efficiency while continuing to make process -- progress,

13   Your Honor.

14         The goal of the debtors is to reduce the number

15   and the amount of disputed claims in advance of the next

16   distribution, in order to reduce the need for reserves and

17   to maximize the amount that's distributable, ultimately.

18   While the debtors have reconciled amounts that they owe,

19   they've also sent demand letters and commenced hundreds of

20   preference actions.  There is likely overlap, and the

21   debtors reserve all rights to pursue affirmative recoveries.

22         The debtors are still collecting information from

23   Transform and from creditors, but, given the Court's

24   direction to expedite claims reconciliation, in large part,

25   the debtors have not held up reconciling amounts owed, in

Page 34

1    order to get preferences -- preference recoveries net.  To

2    further streamline the process and expedite and maximize

3    recoveries, the debtors will continue -- will consider the

4    concept of a convenience, to make lump-sum, one-time final

5    payments, rather than multiple de minimus payments, for

6    small claims that have been allowed, to reduce

7    administrative costs.

8            Your Honor, that -- that brings us up to date and

9    to where we are.  The next hearing is, as you said, at the

10   end of March.  We expect to go forward with a number of

11   objections, if -- if we have to.  We -- we found that the

12   adjournments have led, as the numbers indicate -- they speak

13   for themselves.  The adjournments have worked.  The debtors

14   have worked consensually, and we've avoided the time and

15   expense of contested matters.  We're currently scheduled to

16   go forward, and we will, if we have to, on any remaining

17   items.

18           THE COURT:  Well, I -- I was under the impression,

19   though, that, in -- in saying that, the debtors believed

20   that there might well be common issues that would need -- it

21   would make sense to give the parties who have not settled an

22   opportunity to be heard on, so that -- well, everyone

23   believes they're the best lawyer.  So, you know, the lawyer

24   who isn't the best lawyer gets heard first and loses, and

25   then they're stuck.  So when do you contemplate that

Page 35

1    happening, that type of process?

2              MR. FAIL:  They are currently teed -- the two

3    issues that were raised with common -- with common issues

4    were the world imports issue.  There are only two attorneys

5    And maybe three -- two or three -- three attorneys with four

6    claims, out of the many, many that were disputed, that seek

7    to go forward at a hearing.

8              THE COURT:  Okay.

9              MR. FAIL:  Based on the first.  There's another

10   round of objections, and there's none -- we filed another

11   objection.  There have been no responses to date.  So we'll

12   see what's required, and we may ask the Court for

13   flexibility.  We may go forward, but that's currently teed

14   up for March.

15             The second issue was what has been referred to

16   this morning as the marketplace vendors or otherwise

17   referred to as drop ship, and we filed, as I mentioned,

18   another objection to 100 claims of a similar issue.  It's

19   teed up for March, if people want to go forward.  We'll be

20   prepared to do that, too.

21             THE COURT:  All right.

22             MR. FAIL:  Your Honor, I would just say that, with

23   respect to disputed matters that go forward before judgment,

24   the appellate process takes time, and we don't -- we, the

25   debtors, don't believe that, you know, litigation is going

1    to yield a faster recovery to parties.  So I'll say it on

2    the record again.

3              THE COURT:  That may well be the case.

4              MR. FAIL:  But it -- we're prepared to go forward.

5              THE COURT:  And it may be, based on -- and -- and

6    that's confirmed by what you have been reporting to me just

7    now, that the claimants, by and large, believe that, too.  I

8    just want to get a sense of the timing here, and it's either

9    the next hearing or maybe the one after that, where those

10   issues might be teed up.

11             MR. FAIL:  That's right, Your Honor, because

12   although we have attempted to get this all done, in advance

13   of the next hearing, the -- between the objection deadline

14   and the hearing, parties may want time to enter into

15   settlement negotiations.  So --

16             THE COURT:  Right, and I'm not going to stand --

17   I'm not going to stand in the way of that, because that's

18   parties controlling their own -- their own destiny.

19             So, moving aside to Vir and AMI, it doesn't appear

20   to me that their issues are really subsumed by those two

21   joint issues.  It's really a --

22        MR. FAIL:  They're not, Your Honor.

23             THE COURT:  -- a separate legal theory.

24             MR. FAIL:  Other parties can assert it.  Their

25   contracts aren't unique, but no one else has, in part,

1   because I'm sure, as Ms. Crozier will tell you, they're

2   barred.  When you have a contract, you can't have quasi-

3   contract relief, unless amongst other things, but --

4             THE COURT:  Well, I -- but I -- but I -- what I'm

5   saying is I also -- I don't know whether you have other

6   parties like Vir and AMI that are really online suppliers

7   with that type of contractual relationship.

8             MR. FAIL:  Hundreds, yeah.

9             THE COURT:  You do?

10            MR. FAIL:  Yes.

11            THE COURT:  But -- but others have not raised

12   these issues?

13            MR. FAIL:  I think there was -- there may be one

14   or two in the -- in the second omnibus objection that

15   responded asserting it, in response.  I'd have to go back

16   and look, but in general, there have been no adversary

17   proceedings commenced to declare that it's not our -- that

18   it's not property of the debtors' estate.  So --

19            THE COURT:  Okay.  So --

20            MR. FAIL:  Your Honor, this is a drop ship issue.

21   They're -- all the drop ship parties have these -- have the

22   same contract.  They're referred to as marketplace vendors.

23            THE COURT:  Right.  But is that an issue for Vir

24   and AMI?  I guess it is.

25            MR. FAIL:  That's what -- that's what the pending

1    objection is.  So they're one of the --

2              THE COURT:  All right.

3              MR. FAIL:  -- parties.

4              THE COURT:  So that is -- that is a common issue?

5              MR. FAIL:  The drop ship is, yes.

6              THE COURT:  Right.  And one would get to that on a

7    non-motion to dismiss basis earlier than -- if the motion to

8    dismiss is denied on a -- on a summary judgment.

9              MR. FAIL:  That's what's teed up for the omnibus

10   objection, legal matter only.

11             THE COURT:  Right.

12             MR. FAIL:  You know, applying the facts that

13   aren't disputed.

14             THE COURT:  All right.  So it seems to me that the

15   -- the deadline to answer should be shorter enough, so that

16   I could have a hearing on those 2 claims, on the 23rd, the

17   same time as I could have a hearing on the drop ship issue.

18   Although, if parties are in discussions -- most parties are

19   in discussions, I would adjourn that, even if one party

20   wanted to go ahead, because it just doesn't make sense to

21   force all the other parties to drop meaningful settlement

22   discussions, because one party doesn't want to.

23             MR. FAIL:  Does that leave time for a motion to

24   dismiss or whatever we'd be filing, with respect to that

25   issue?

1              MS. CROZIER:  It does.

2              MR. FAIL:  Okay.

3              MS. CROZIER:  So, with the hearing on March 23rd,

4    would Your Honor propose a deadline to respond of March 9th?

5              THE COURT:  To respond to the motion to dismiss?

6              MS. CROZIER:  Correct.

7              THE COURT:  Well, so when would you file the

8    motion to dismiss?

9              No, I -- I think it could be seven.  The response

10   to the motion to dismiss could e seven days before the

11   hearing.

12             MS. CROZIER:  Okay.

13             THE COURT:  So that would be the 16th.

14             MS. CROZIER:  So the response would be the 16th?

15             THE COURT:  Right.

16             MS. CROZIER:  So the debtors would file the motion

17   to dismiss --

18             THE COURT:  On the 2nd?

19             MS. CROZIER:  On the 2nd.

20             THE COURT:  Okay, that makes sense

21             MS. CROZIER:  And, to be clear, Your Honor,  we

22   would not be moving to dismiss, with respect to Counts 1 and

23   3, which are the breach of contracts and unjust enrichment

24   claims.

25             THE COURT:  No, those are already -- those are

Page 40

1  already at issue, and -- and, as far as the last contract --

2  I'm sorry -- the last cause of action, that would only be

3  -- oh, I'm sorry.  Let's back up.  The conversion cause of

4  action, which is the next to last.  Now, that's only

5  premised upon the trust counts.  Otherwise, it doesn't --

6  it's not really a claim.

7          MR. FAIL:  So it's not incremental.  We can -- can

8  we skip that, for the responses, in other words?

9          THE COURT:  Yes.  And then the last cause of

10 action which I -- I ignored, which is Count 6, which is

11 fraudulent or negligent misrepresentation -- again, that's

12 subsumed within the claim issues.  So the only thing that's

13 live in the complaint are Counts 2 and 4, and, to the extent

14 they give a predicate to the next-to-last-count conversion,

15 but it's really 2 and 4.

16         MS. CROZIER:  Understood.  We can certainly do

17 that, Your Honor.

18         THE COURT:  Okay, all right.  So motion to dismiss

19 or answer on those counts by the 2nd.  If it's a motion to

20 dismiss, the time to respond is the 16th, and then, unless I

21 adjourn it, the hearing would be on the -- at the same time

22 as the hearing on the drop box issue on the 23rd.

23         MR. FAIL:  Thank you, Your Honor.

24         THE COURT:  Although, again, everyone should

25 understand that, if, you know, a number of parties who had

1    reserved the right to argue the drop box issue on the 23rd

2    have said, no, we're in discussions, we don't want to do

3    that, I'm not going to shortchange those -- or short-circuit

4    those discussions by having one party go ahead.

5              MR. FAIL:  Understood, Your Honor.

6              THE COURT:  On the 23rd.

7              MR. FAIL:  Appreciate that.

8              Unless Your Honor has any other questions, that

9    concludes the debtors' report on the claims process.

10             THE COURT:  Okay, all right.  I think that

11   concludes the pretrial also.

12             MS. CROZIER:  Thank you so much, Your Honor.

13             THE COURT:  Okay.

14             MS. CROZIER:  And I have another proceeding to

15   attend, if I may?

16             THE COURT:  That's fine.

17             MS. CROZIER:  Thank you.

18             THE COURT:  All right.

19             If you want to memorialize this in a pretrial

20   order, you can.  The record's pretty clear, so I'm not sure

21   you need to.

22             MR. FAIL:  I think -- I think we'll rely on the

23   record, Your Honor.

24             THE COURT:  Okay, okay.

25             MR. FAIL:  One other things, on the claims

# **Exhibit B**

SRF 36417

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
---------------------------------------------------------------x
                                            :
In re                                       :     Chapter 11
                                            :
SEARS HOLDINGS CORPORATION, et al.,         :     Case No. 18-23538 (RDD)
                                            :
         Debtors.¹                          :     (Jointly Administered)
                                            :
---------------------------------------------------------------x
```

**NOTICE OF**
**(I) BALLOT TO OPT-IN TO ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM AND**
**(II) BALLOT TO OPT-OUT OF ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM**

| |
|---|
| **PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THE (I) OPT-IN BALLOT ATTACHED HERETO AS EXHIBIT A OR (II) OPT-OUT BALLOT ATTACHED HERETO AS EXHIBIT B.** <br><br> **IF YOU DO NOT TAKE ANY ACTION, YOU WILL BE DEEMED TO BE BOUND BY THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, BUT NOT ENTITLED TO THE BENEFITS THAT WILL BE PROVIDED TO HOLDERS OF ADMINSTRATIVE EXPENSE CLAIMS WHO TIMELY OPT IN TO THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, AS DESCRIBED BELOW.** |

---

¹ The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order Directing Joint Administration of Related Chapter 11 Cases* (ECF No. 118). The location of the Debtors' service address is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

SRF 36417

---

**IN ORDER FOR YOUR OPT-IN BALLOT OR OPT-OUT BALLOT TO BE EFFECTIVE,
THE APPLICABLE BALLOT MUST BE ACTUALLY RECEIVED BY
NOVEMBER 18, 2019,[2] AT 4:00 P.M. (PREVAILING EASTERN TIME)
(THE "OPT-IN/OPT-OUT DEADLINE").**

FAILURE TO OPT-IN TO THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM
BY COMPLETING AND TIMELY SUBMITTING AN OPT-IN BALLOT MEANS YOU WILL NOT BE
ENTITLED PARTICIPATE IN TO THE INITIAL DISTRIBUTION (AS DEFINED HEREIN).

FAILURE TO OPT-OUT OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM
BY COMPLETING AND TIMELY SUBMITTING AN OPT-OUT BALLOT WILL
BIND YOU TO THE TERMS OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM.

---

On October 15, 2019, the Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") entered an order confirming the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors* [ECF No. 5293] (the "**Plan**"),[3] approving, among other things, a proposed consent program for holders of Administrative Expense Claims (the "**Administrative Expense Claims Consent Program**") by and among the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), the Creditors' Committee and the Ad Hoc Vendor Group[4] [ECF No. 5370] (the "**Confirmation Order**").[5]

You are receiving the opt-in ballot (the "**Opt-In Ballot**"), attached hereto as **Exhibit A**, and the opt-out ballot (the "**Opt-Out Ballot**" and together with the Opt-In Ballot, the "**Election Ballots**"), attached hereto as **Exhibit B**, because, as a holder of an Administrative Expense Claim,[6] you are entitled to opt-in to or opt-out of the Administrative Expense Claims Consent Program.

**If you do not take any action, you will be deemed to have opted in and will be bound by the Administrative Expense Claims Consent Program, but not entitled to any benefits that will be provided to holders of Administrative Expense Claims who affirmatively opt-in to the Administrative Expense Claims Consent Program prior to the Opt-In/Opt-Out Deadline, namely, participation in an initial distribution of $21 million on or about December 1, 2019 to all holders of Administrative Expense Claims who opt-in to the Administrative Expense Claims Consent Program.**

All Holders of Administrative Expense Claims (other than the Ad Hoc Vendor Group that is deemed to have opted-in) have an option to opt-in to or opt-out of the Administrative Expense Claims Consent Program and releases contained therein. **The Creditors' Committee and the Debtors recommend that you affirmatively opt-in to and do not opt-out the Administrative Expense Claims Consent Program.**

---

[2] Thirty-three (33) days after service of this notice.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Confirmation Order or the Plan.

[4] The "**Ad Hoc Vendor Group**" means collectively, Whitebox Asymmetric Partners, LP, Whitebox Multi-Strategy Partners, LP, Hain Capital Investors Master Fund, Ltd., and Cherokee Debt Acquisition, LLC.

[5] Copies of the Plan, Confirmation Order, and the Administrative Expense Claims Consent Program Term Sheet may be accessed free of charge by visiting the website maintained by the Debtors' agent, Prime Clerk, LLC (the "**Claims and Noticing Agent**") at https://restructuring.primeclerk.com/sears.

[6] Specifically, you are receiving the Election Ballots because either (i) the Debtors believe you may be a Holder of an Administrative Expense Claim as of August 6, 2019 or (ii) you filed a proof of Administrative Expense Claim, filed a motion seeking allowance of an Administrative Expense Claim, or have otherwise asserted an Administrative Expense Claim in these Chapter 11 Cases.

SRF 36417

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMHOLDERS WHO AFFIRMATIVELY OPT-IN

All holders of Allowed Administrative Expense Claims that affirmatively opt-in (the "**Opt-In Settled Admin Claims**") to the Administrative Expense Claims Consent Program prior to the Opt-In/Opt-Out Deadline shall receive, among other things:[7]

- Their pro rata share of $21 million ("**Initial Cash Pool**"), on or about December 1, 2019 (the percentage recovery, the "**Initial Recovery**");

- total recovery capped at 75% of the Allowed Administrative Expense Claim;

- such $21 million shall only be available to holders of Opt-In Settled Admin Claims who consensually agree with the Debtors to the Allowed amount of the Opt-In Settled Admin Claims;

- consensual reconciliation of the Allowed amount of Opt-In Settled Admin Claims (including on account of 503(b)(9) and 503(b)(1) issues regarding inducement, date of receipt, port of origin, etc., and any exposure on account of preference actions), to be completed within 30 days from the date of receipt of the Opt-In Ballot (the "**Expedited Reconciliation**");

- to the extent the Debtors, the Creditors' Committee, and the holder of the Opt-In Settled Admin Claim are unable to consensually resolve the Allowed amount, such resolution shall be subject to reconciliation on an agreed-upon schedule as reasonably agreed to by the Debtors, the Creditors' Committee, and the applicable holder of an Opt-In Settled Admin Claim;

- for the avoidance of doubt, any waiver or settlement of any preference action shall be considered on a case-by-case basis; and

- holders who do not agree with the Debtors and the Creditors' Committee on the Allowed amount of Opt-In Settled Admin Claims shall be deemed to hold a Non Opt-Out Settled Admin Claim.

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMHOLDERS WHO NEITHER OPT-IN NOR OPT-OUT

All Holders of an Allowed Administrative Expense Claim against the Debtors who neither (i) opt-in to the Administrative Expense Claims Consent Program nor (ii) opt-out of the Administrative Expense Claims Consent Program prior to the Opt-In/Opt-Out Deadline (the "**Non Opt-Out Settled Admin Claims**," and together with the Opt-In Settled Admin Claims, the "**Settled Administrative Expense Claims**") shall receive, among other things:

- its pro rata share of the Second Distribution, which will be shared only by other holders of Non Opt-Out Settled Admin Claims until they have received a percentage of distribution on their Non Opt-Out Settled Admin Claims that is equal to the Initial Recovery provided to holders of Opt-In Settled Claims;

- total recovery capped at 80% of the Allowed Administrative Expense Claim (together with the Initial Recovery, the "**Settled Admin Expense Claims Recovery**");

- Expedited Reconciliation to be completed within 30 days from the Opt-In/Opt-Out Deadline;

- to the extent the Debtors, the Creditors' Committee, and the holder of the Non Opt-Out Settled Admin Claim are unable to consensually resolve the Allowed amount, such resolution shall be subject to reconciliation on an agreed-upon schedule as reasonably agreed to by the Debtors, the Creditors' Committee, and the applicable holder of a Non Opt-Out Settled Admin Claim; and

- any waiver or settlement of any preference action shall be considered on a case-by-case basis.

**All holders of Administrative Expense Claims who do not opt out of the Administrative Expense Claims Consent Program** will be deemed to be satisfied in full on account of such claim once they have received payment in cash equal to (i) 75% of the applicable Allowed Administrative Expense Claim on account of Opt-In Settled Admin

---

[7] The following is an illustrative summary of the benefits of the Administrative Expense Claims Consent Program and is qualified in its entirety by reference to the applicable provisions in the Confirmation Order.

SRF 36417

Claims, and (ii) 80% of the applicable Allowed Administrative Expense Claim on account of Non Opt-Out Settled Admin Claims. Any Distributions made on account of Settled Administrative Expense Claims shall not be subject to disgorgement, including without limitation, upon any conversion or dismissal of the Chapter 11 Cases. And upon entry of the Confirmation Order, all Settled Administrative Expense Claims shall be Allowed against the Debtors in these Chapter 11 Cases on a consolidated basis, or upon any conversion or dismissal of the Chapter 11 Cases.

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMHOLDERS WHO OPT-OUT

If you **opt out of the Administrative Expense Claims Consent Program** prior to the Opt-In/Opt-Out Deadline, you will retain the right to receive payment of the Allowed 100% of your Administrative Expense Claim, but payment of your Administrative Expense Claim shall occur on the latest of (i) the Effective Date, (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim is Allowed, and (iii) the next Distribution Date after such Administrative Expense Claim is Allowed. Holders of opt-out Claims will not be entitled to participate in the Initial Distribution, Second Distribution, or any further distribution until the Plan has become effective or the Settled Administrative Expense Claims have been satisfied.

## ADDITIONAL INFORMATION

Pursuant to the Administrative Expense Claims Consent Program, holders bound by the Administrative Expense Claims Consent Program shall be paid in the following order of priority: (1) Holders of Opt-In Settled Admin Claims of their pro rata share of the Initial Cash Pool; (2) Holders of Non Opt-Out Settled Admin Claims of their pro rata share up to a percentage recovery equal to the Initial Recovery; and (3) all Holders bound by the Administrative Expense Claims Consent Program of the remaining unpaid amount of their Allowed Administrative Expense Claims up to the Settled Admin Expense Claims Recovery.

Each Holder of a Settled Administrative Expense Claim also agrees (1) to support the Plan; and (2) that acceptance of and consent to the Administrative Expense Claims Consent Program will be deemed consent to the Plan, acceptance of the treatment under the Plan in satisfaction of section 1129(a)(9) of the Bankruptcy Code, and agreement to provides the releases included in the Administrative Expense Claims Consent Program.

### Treatment of Holders of Administrative Expense Claims
### Under Administrative Expense Claims Consent Program

|  | Opt-In Settled Admin Claims | Non Opt-Out Settled Admin Claims | Opt-Out Administrative Expense Claims |
|---|---|---|---|
| **Maximum Recovery on Account of Allowed Administrative Expense Claim** | 75% of Allowed Amount | 80% of Allowed Amount | 100% of Allowed Amount |
| **Participates in Distribution of $21 million Initial Cash Pool on or about December 1, 2019** | Yes | No | No |
| **Participates in Second Distribution** | No[8] | Yes | No |
| **Distribution on the Later of (i) the Effective Date, (ii) 30 days after Allowance of the Claim, and (iii) the next Distribution Date after Allowance of the Claim** | N/A | N/A | Yes |

---

[8] To the extent there are any amounts remaining for distribution after the Non Opt-out Settled Admin Claims have received the percentage recovery equal to the Initial Recovery, the Opt-In Settled Admin Claims shall share pro rata in such excess with the Non Opt-Out Settled Admin Claims.

SRF 36417

| Claims Reconciliation to occur | Within 30 days of receipt of Opt-In Ballot | Within 30 days after Opt-In/Opt-Out Deadline | In ordinary course |
|---|---|---|---|

## INSTRUCTION FOR OPTING-IN OR OPTING-OUT

In order to **opt-in** to or **opt-out** of the Administrative Expense Claims Consent Program, you must complete, execute, and submit your Opt-In Ballot or Opt-Out Ballot to the Claims and Noticing Agent so that your Opt-In Ballot or Opt-Out Ballot is <u>actually received</u> by the Claims and Noticing Agent on or before the Opt-In/Opt-Out Deadline, which is **November 18, 2019, at 4:00 p.m., prevailing Eastern Time**.

**You are strongly encouraged to review the Administrative Expense Claims Consent Program Term Sheet and the Plan before you make an election. You may wish to seek legal advice concerning the Administrative Expense Claims Consent Program and the Election Ballots.**

**Acceptable Methods to Complete and Submit Your Election Ballots.** You may elect to opt-in to or opt-out of the Administrative Expense Claims Consent Program by completing and submitting (i) an electronic Opt-In Ballot or Opt-Out Ballot through the dedicated, online portal maintained by the Claims and Noticing Agent ("**E-Ballot**") or (ii) one of the paper-copy Election Ballots (the "**Paper Election Ballots**"). In either case (E-Ballot or Paper Election Ballots), you must submit your Opt-In Ballot or Opt-Out Ballot to the Claims and Noticing Agent so that it is <u>actually received</u> by the Claims and Noticing Agent on or before the Opt-In/Opt-Out Deadlines.

## CERTAIN RISK FACTORS TO BE CONSIDERED

1.    **Risks Related to Debtors' Ability to Make Distributions**

   (a)    **Debtors' Assets Available for Distributions**

As described in greater detail in the Griffith Declaration, Murphy Declaration, and Transier Declaration,[9] the Debtors' Assets as of the September 18, 2019 include approximately $173.5 million comprised of (i) approximately $50.1 million in cash on hand, (ii) $33.4 million on account of other Assets to be monetized, and (iii) approximately $97 million owed by Transform for the assumptions of 503(b)(9) Claims[10] (the "**Additional Asset Proceeds**"):

| Sources | | |
|---|---|---|
| Cash on Hand at 9/18/19 | $ | 50.1 |
| Calder Net Proceeds | | 10.0 |
| Real Estate Proceeds | | 13.1 |
| De Minimis Assets | | 5.3 |
| 2017 EDA Funds | | 5.0 |
| Transform 503(b)(9) Obligations | | 90.0 |
| **Total Sources** | $ | **173.5** |

**_In addition_**, the Debtors believe they will receive significant recoveries from the proceeds of certain valuable litigation assets, including avoidance action arising under section 547 of the Bankruptcy Code or any comparable "preference" action arising under applicable non-bankruptcy law (collectively, the "**Preference Actions**"), certain

---

[9] _Declaration of Brian J. Griffith in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Liquidation of Sears Holdings Corporation and its Affiliated Debtors_ (ECF No. 5148) (the "**Griffith Declaration**"), _Declaration of William Murphy in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Liquidation of Sears Holdings Corporation and its Affiliated Debtors_ (ECF No. 5149) (the "**Murphy Declaration**"), _Declaration of William L. Transier in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Liquidation of Sears Holdings Corporation and its Affiliated Debtors_ (ECF No. 5146) (the "**Transier Declaration**").

[10] The Debtors believe that pursuant to section 2.3(k)(ix) of the Asset Purchase Agreement, Transform is obligated to assume approximately $97 million on account of 503(b)(9) Claims. The $90 million reflected herein ties to the $90 million of estimated 503(b)(9) Claims; to the extent the 503(b)(9) Claims are in excess of $90 million, Transform shall be liable to assume up to $97 million on account of 503(b)(9) Claims pursuant to the Asset Purchase Agreement. Transform disputes that it owes such amounts to the Debtors.

SRF 36417

prepetition related party transaction claims against ESL Investments, Inc. and its affiliates ("**ESL**") and other parties, and potential settlements with insurers with respect to claims against the D&O Policy (together the "**Litigation Proceeds**"), although there can be no assurance of any recovery:

- **Preference Actions**. The Debtors estimate that they will receive at least approximately $100 million in recoveries from Preference Actions out of an excess of $1.345 billion of gross total transfers in the preference window, which is consistent with comparable transactions where the average range of recoveries is from 11.4% if the gross total transfers pursued or, alternatively 23.7% of those transfers, net of subsequent new value. *See* Griffith Decl., ¶¶ 64-70.

- **ESL Litigation**. The Debtors' Restructuring Subcommittee and the Creditors' Committee both have investigated the prepetition related party transaction claims and concluded that such claims are meritorious. On April 17, 2019 the Restructuring Subcommittee, on behalf of certain of the Debtors, filed an adversary complaint against ESL Investments, Inc., its affiliates, various third parties, and certain of the Debtors' directors and officers (ECF No. 3278) (the "**Subcommittee Adversary Complaint**"), seeking over $2 billion in damages arising from certain prepetition related party transactions. *See* Transier Decl., ¶¶ 20-27. As of the date hereof, the Court has not heard any arguments or considered any evidence in connection with the Subcommittee Adversary Complaint. Current and prospective defendants dispute the validity of Claims asserted in the Subcommittee Adversary Complaint, and there is no assurance of any recovery.

- **D&O Insurance**. The Debtors believe they may be able to receive significant recoveries against available D&O Policies on account of Preserved Causes of Action against the Specified Directors and Officers. The Debtors believe that there is at least approximately $150 million of available directors and officers liability insurance that provides a source of recovery to the Debtor plaintiffs in the Subcommittee Adversary Complaint against parties (in their capacity as directors and/or officers) who are covered by such insurance. Certain defendants (such as ESL, Lampert and the Seritage parties) in the Subcommittee Adversary Complaint may also be liable for sums separate and apart from any available insurance coverage. *See* Transier Decl., ¶ 28. Certain insurers have disclaimed coverage under certain of the D&O Policies.

There can be no assurance that the Debtors will be able to successfully monetize their Assets in the projected amounts or when such Assets will be monetized. There is a risk that the Net Proceeds of Total Assets, including the Litigation Proceeds, may be significantly less than projected, which, in turn, could cause the amount and timing of Distributions to adversely change substantially. Further, unanticipated events and circumstances may affect the ultimate recoveries.

**(b)    Debtors' Estimate of Outstanding Claims on the Effective Date**

The Debtors and their advisors have conducted an extensive analysis to estimate the Debtors' outstanding Claims pool and are continuing to review and analyze Claims. The Debtors have filed and intend to continue to file objections to Claims. In the aggregate, the Debtors believe that the sources above will be enough to satisfy the Debtors' estimate of outstanding Claims by the Effective Date:

| Uses | Low Claims | High Claims |
|---|---|---|
| Liquidating Trust funding | $            (25.0) | $            (25.0) |
| Remaining estate professional fees | (9.0) | (9.0) |
| 503(b)(9) | (90.0) | (155.0) |
| Other Admin Claims | (50.0) | (50.0) |
| Secured | (18.0) | (18.0) |
| Priority Tax | (15.0) | (18.0) |
| Priority Non-Tax | (3.0) | (3.0) |
| **Total Uses** | **$          (210.0)** | **$          (278.0)** |
| **Total Potential Shortfall (without Litigation Proceeds)** | **$            (36.5)** | **$          (104.5)** |

6

SRF 36417

But, there can be no assurance that the estimated Allowed amount of Claims will not be significantly more than projected, which, in turn, could cause the total recovery on Administrative Expense Claims to be lower. Some assumptions may not materialize, and unanticipated events and circumstances may affect the ultimate results. Therefore, the actual amount of Allowed Claims may vary from the Debtors' feasibility analysis, and the variation may be material.

    **(c)**    **Distribution Funding Sources**

The Initial Cash Pool, the Second Distribution, additional pre-Effective Date distributions to Settled Administrative Expense Claims, and post-Effective Date Distributions to Opt-Out Claims, will be funded from the following sources, as follows:

| | Within three (3) Business Days of Entry of the Confirmation Order[11] | Post-Confirmation Date, Pre-Effective Date | Post-Effective Date |
|---|---|---|---|
| **Initial Cash Pool ($21 million) for the Initial Distribution to Opt-In Settled Admin Claims only** | $16 million funded from: (i) unrestricted cash on hand and (ii) a minimum of $3 million from the Carve-Out Account | $5 million from Additional Asset Proceeds *and/or* Litigation Proceeds (to occur prior to the Initial Distribution) | N/A |
| **Second Distribution to Non Opt-Out Settled Admin Claims[12]** | N/A | Subject to the Minimum Conditions,[13] from Additional Asset Proceeds *and/or* Litigation Proceeds | N/A |
| **Further Distribution(s) to Settled Admin Claims** | N/A | Subject to the Second Distribution, from Additional Asset Proceeds *and/or* Litigation Proceeds | N/A |
| **Distributions to Opt-Out Claims** | N/A | N/A | From Additional Asset Proceeds *and/or* Litigation Proceeds |

---

[11] Within three (3) Business Days of entry of the Confirmation Order, an additional (i) $15 million from cash on hand will be placed into the segregated Litigation Funding Account for funding of the litigation associated with the Jointly Asserted Causes of Action (the "**Litigation Funding**") and (ii) $5 million will be placed into the segregated Cash Reserve Account for post-Confirmation estate costs including, without limitation, additional professional fees of the Debtors' and the Creditors' Committee not included in the Carve-Out Account as of the entry of the Confirmation Order (the "**Cash Reserve**").

[12] To the extent there are any amounts remaining for distribution after the Non Opt-out Settled Admin Claims have received the percentage recovery equal to the Initial Recovery, the Opt-In Settled Admin Claims shall share pro rata in such excess with the Non Opt-Out Settled Admin Claims.

[13] The Second Distribution shall not occur until each of the until each of the following conditions is met: (i) a total of $25 million has been funded into the Litigation Funding Account in the aggregate, (ii) there has been a funding of $10 million in the aggregate in the Cash Reserve Account and (iii) the Segregated Account has an additional $10 million in cash (together, the "**Minimum Conditions**").

SRF 36417

### 2. Risk of Non-Occurrence of Effective Date

Although the Debtors believe that the Effective Date will occur soon after the Confirmation Date, there can be no assurance as to the timing of the Effective Date. If the conditions precedent to the Effective Date set forth in the Plan have not occurred or have not been waived as set forth in Article X of the Plan or the Debtors are unable to pay their obligations as required under section 1129(a)(9) of the Bankruptcy Code, then the Confirmation Order may be vacated. Any Distributions made on account of Settled Administrative Expense Claims shall not be subject to disgorgement, including without limitation, upon any conversion or dismissal of the Chapter 11 Cases.

### 3. Risks Related to the Causes of Action

There is no guarantee as to the success of pursuing any Cause of Action. The success of the Debtors and the Creditors' Committee or Liquidating Trust in pursuing any Cause of Action, as well as the expenses incurred in investigating and prosecuting the Causes of Action, may materially affect the recoveries for the holders of Allowed Claims.

### 4. No Legal or Tax Advice Is Provided by this Disclosure Statement

The contents of this notice should not be construed as legal, business, or tax advice. Each holder of a Claim should consult their own legal counsel and accountant as to legal, tax, and other matters concerning their Claim. This notice may not be relied upon for any purpose other than to determine how to elect how to be treated under the Administrative Expense Claims Consent Program.

### 5. No Admission Made

Nothing contained herein or in the Plan shall constitute an admission of, or shall be deemed evidence of, the tax or other legal effects of the Plan or Administrative Expense Claims Consent Program on the Debtors or holders of Claims or Interests.

For additional risk factors and considerations, including the position of Transform and/or ESL Parties, please review section VIII.A of the Disclosure Statement. Should you wish to obtain a copy of the Disclosure Statement, Plan, Confirmation Order, the Administrative Expense Claims Consent Program Term Sheet, or any other documents in these Chapter 11 Cases, you should contact the Debtors' Claims and Noticing Agent, Prime Clerk LLC by: (a) visiting the Debtors' restructuring website at: https://restructuring.primeclerk.com/sears; (b) writing to Sears Admin. Claims Consent Prgm Ballot Processing, c/o Prime Clerk LLC, 850 Third Avenue, Suite 412, Brooklyn, New York 11232; and/or (c) emailing **searsinfo@primeclerk.com**. You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.vaeb.uscourts.gov.

SRF 36417

## EXHIBIT A

**OPT-IN BALLOT**

SRF 36417

Voter ID: **713614**

---

**PLEASE FOLLOW THESE INSTRUCTIONS FOR SUBMITTING YOUR <u>OPT-IN ELECTION</u>. IF YOU ELECT TO OPT-IN TO THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, PLEASE COMPLETE, SIGN, DATE, AND TRANSMIT THIS OPT-IN BALLOT SO THAT IT IS _ACTUALLY RECEIVED_ BY THE CLAIMS AND NOTICING AGENT ON OR BEFORE <u>NOVEMBER 18, 2019, AT 4:00 P.M. (PREVAILING EASTERN TIME)</u>**

**YOU MAY RETURN YOUR OPT-IN BALLOT IN THE PRE-ADDRESSED, PRE-PAID RETURN ENVELOPE PROVIDED OR VIA FIRST CLASS MAIL, HAND DELIVERY, OR OVERNIGHT COURIER, TO:**

**SEARS ADMIN. CLAIMS CONSENT PRGM BALLOT PROCESSING
C/O PRIME CLERK LLC
850 THIRD AVENUE, SUITE 412
BROOKLYN, NEW YORK 11232**

---

| **To Submit Your Opt-In Ballot Via E-Ballot** |
| --- |

To submit your Opt-In via E-Ballot, visit https://restructuring.primeclerk.com/sears. Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Opt-In Ballot.

IMPORTANT NOTE: You will need the following information to retrieve and submit your electronic Opt-In Ballot:

Unique E-Ballot ID#: **182353801039931** _____

E-Ballot is the sole manner in which Opt-In will be accepted via electronic or online transmission. Opt-In Ballots submitted by facsimile, email or other means of electronic transmission will not be valid. Any Opt-In submitted through E-Ballot with the Holder's electronic signature will be deemed to be immediately legally valid and effective.

Please complete and submit an electronic Opt-In Ballot for each E-Ballot ID# you receive, as applicable.

Holders who cast an Opt-In using E-Ballot should NOT also submit a Paper Copy.

| **To Submit Your Opt-In Ballot Via Paper Copy** |
| --- |

To submit your Opt-In via Paper Opt-In Ballot, complete items 1, 2, and 3 below and submit your Paper Opt-In Ballot in the pre-addressed, pre-paid return envelope provided or by first-class mail, hand delivery, or overnight courier to:

Sears Admin. Claims Consent Prgm Ballot Processing
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, New York 11232

---

**Item 1. Amount of Administrative Expense Claim(s).**

The undersigned hereby certifies that as of the date of completion of this Opt-In Ballot, the undersigned asserts it was the Holder of an Administrative Expense Claim(s) in the following aggregate amount:[1]

$ 700320 _____

---

[1] This amount should represent the amount of your previously-asserted Administrative Expense Claim(s). If the Debtors do not have a specific Administrative Expense Claim amount on file for you, the box in Item 1 of this Opt-In Ballot will be blank. For reference purposes, you should insert the relevant amount of your alleged Administrative Expense Claim; however, for the avoidance of doubt, this Opt-In Ballot is not to be used to assert your Administrative Expense Claim(s). For more information about asserting an Administrative Expense Claim(s), visit the Debtors' case

SRF 36417

**Item 2. Administrative Expense Claims Consent Program Election.** You may elect to opt-in to the Administrative Expense Claims Consent Program by checking the box below and returning this Opt-In Ballot to the Claims and Noticing Agent on or before the Opt-In/Opt-Out Deadline pursuant to the instructions set forth herein. If you return this Opt-In Ballot but do not check the box below or do not return this Opt-In Ballot, you will not be entitled to the Initial Distribution. If you submit multiple Opt-In Ballots, your last timely received Opt-In Ballot shall control. Election to withhold consent is at your option.

 **THE HOLDER OF THE ADMINISTRATIVE EXPENSE CLAIM(S) SET FORTH IN ITEM 1 ELECTS TO OPT-IN TO THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM.**

**Item 3. Acknowledgments.** By signing this Opt-In Ballot, the undersigned Holder of an Administrative Expense Claim(s) identified in Item 1 above certifies that (i) it is the Holder of the Administrative Expense Claim(s) identified in Item 1 above or (ii) it has full power and authority to act on behalf of the Holder of the Administrative Expense Claim(s) identified in Item 1 above.

AMI VENTURES, INC.

Name

Social Security or Federal Tax I.D. No. (optional)

**Signature:** _SALENE KRAEMER (Nov 18, 2019)_

**Email:** SALENE@MAZURKRAEMER.COM

Signature

SALENE KRAEMER

If by Authorized Agent, Name and Title

Name of Institution

MAZURKRAEMER BUSINESS LAW

Street Address

331 JONQUIL PLACE

City, State, Zip Code

PITTSBURGH PA 15228

Telephone Number

412-427-7075

Email Address

SALENE@MAZURKRAEMER.COM 11.18.2019

Date Completed

**If you elect to opt-in to the Administrative Expense Claims Consent Program, please return your Opt-In Ballot promptly.** If you have any questions regarding this Opt-In Ballot or the procedures for opting out, please contact the Debtors' Claims and Noticing Agent, by: (a) visiting the Debtors' restructuring website at: https://restructuring.primeclerk.com/sears; (b) writing to Sears Admin. Claims Consent Prgm Ballot Processing, c/o Prime Clerk LLC, 850 Third Avenue, Suite 412, Brooklyn, New York 11232; and/or (c) emailing **searsinfo@primeclerk.com.**

> If the Claims and Noticing Agent does **not** actually receive the Opt-In Form on or before November 18, 2019, at 4:00 p.m., prevailing Eastern Time indicating your intent to opt-in to the Administrative Expense Claims Consent Program (and if the Opt-In/Opt-Out Deadline is not extended), your opt-in election will not be effective.

---

website: https://restructuring.primeclerk.com/sears. The Debtors reserve the right to dispute and validate the amount of your asserted Administrative Expense Claim(s).

SRF 36417

4

SRF 36417

## EXHIBIT B

**OPT-OUT BALLOT**

SRF 36417

Voter ID: **713614**

---

**PLEASE FOLLOW THESE INSTRUCTIONS FOR SUBMITTING YOUR <u>OPT-OUT ELECTION</u>. IF YOU ELECT TO OPT-OUT OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, PLEASE COMPLETE, SIGN, DATE, AND TRANSMIT THIS OPT-OUT BALLOT SO THAT IT IS *ACTUALLY RECEIVED* BY THE CLAIMS AND NOTICING AGENT ON OR BEFORE <u>NOVEMBER 18, 2019, AT 4:00 P.M. (PREVAILING EASTERN TIME)</u>**

**IF YOU WOULD LIKE TO RECEIVE THE BENEFITS OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM AND DO NOT WISH TO OPT-OUT OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, YOU DO NOT NEED TO TAKE ANY FURTHER ACTION AT THIS TIME.**

**YOU MAY RETURN YOUR OPT-OUT BALLOT IN THE PRE-ADDRESSED, PRE-PAID RETURN ENVELOPE PROVIDED OR VIA FIRST CLASS MAIL, HAND DELIVERY, OR OVERNIGHT COURIER, TO:**

**SEARS ADMIN. CLAIMS CONSENT PRGM BALLOT PROCESSING**
**C/O PRIME CLERK LLC**
**850 THIRD AVENUE, SUITE 412**
**BROOKLYN, NEW YORK 11232**

---

| **To Submit Your Opt-Out Ballot Via E-Ballot** |
|---|

To submit your Opt-Out via E-Ballot, visit https://restructuring.primeclerk.com/sears. Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Opt-Out Ballot.

IMPORTANT NOTE: You will need the following information to retrieve and submit your electronic Opt-Out Ballot:
**Unique E-Ballot ID#:** 182353801039931

E-Ballot is the sole manner in which Opt-Out will be accepted via electronic or online transmission. Opt-Out Ballots submitted by facsimile, email or other means of electronic transmission will not be valid. Any Opt-Out submitted through E-Ballot with the Holder's electronic signature will be deemed to be immediately legally valid and effective.

Please complete and submit an electronic Opt-Out Ballot for each E-Ballot ID# you receive, as applicable.

Holders who cast an Opt-Out using E-Ballot should NOT also submit a Paper Copy.

| **To Submit Your Opt-Out Ballot Via Paper Copy** |
|---|

To submit your Opt-Out via Paper Opt-Out Ballot, complete items 1, 2, and 3 below and submit your Paper Opt-Out Ballot in the pre-addressed, pre-paid return envelope provided or by first-class mail, hand delivery, or overnight courier to:

Sears Admin. Claims Consent Prgm Ballot Processing
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, New York 11232

SRF 36417

**Item 1. Amount of Administrative Expense Claim(s).**

The undersigned hereby certifies that as of the date of completion of this Opt-Out Ballot, the undersigned asserts it was the Holder of an Administrative Expense Claim(s) in the following aggregate amount:[1]

$ 700320

**Item 2. Administrative Expense Claims Consent Program Election.** You may elect to opt-out of the Administrative Expense Claims Consent Program by checking the box below and returning this Opt-Out Ballot to the Claims and Noticing Agent on or before the Opt-In/Opt-Out Deadline pursuant to the instructions set forth herein. If you return this Opt-Out Ballot but do not check the box below or do not return this Opt-Out Ballot, you will be bound by the Administrative Expense Claims Consent Program. If you submit multiple Opt-Out Ballots, your last timely received Opt-Out Ballot shall control. Election to withhold consent is at your option.

☐     **THE HOLDER OF THE ADMINISTRATIVE EXPENSE CLAIM(S) SET FORTH IN ITEM 1 ELECTS TO OPT-OUT OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM.**

**Item 3. Acknowledgments.** By signing this Opt-Out Ballot, the undersigned Holder of an Administrative Expense Claim(s) identified in Item 1 above certifies that (i) it is the Holder of the Administrative Expense Claim(s) identified in Item 1 above or (ii) it has full power and authority to act on behalf of the Holder of the Administrative Expense Claim(s) identified in Item 1 above.

**AMI VENTURES, INC.**
Name

Social Security or Federal Tax I.D. No. (optional)

Signature: _____
SALENE KRAEMER (Nov 18 2019)
Signature

**Email:** SALENE@MAZURKRAEMER.COM

If by Authorized Agent, Name and Title
**SALENE KRAEMER**
Name of Institution

Street Address
**MAZURKRAEMER BUSINESS LAW**
City, State, Zip Code
**331 JONQUIL PLACE**
Telephone Number
**PITTSBURGH PA 15228**
Email Address
**SALENE@MAZURKRAEMER.COM 11.18.2019**
Date Completed

---

[1] This amount should represent the amount of your previously-asserted Administrative Expense Claim(s). If the Debtors do not have a specific Administrative Expense Claim amount on file for you, the box in Item 1 of this Opt-Out Ballot will be blank. For reference purposes, you should insert the relevant amount of your alleged Administrative Expense Claim; however, for the avoidance of doubt, this Opt-Out Ballot is not to be used to assert your Administrative Expense Claim(s). For more information about asserting an Administrative Expense Claim(s), visit the Debtors' case website: https://restructuring.primeclerk.com/sears. The Debtors reserve the right to dispute and validate the amount of your asserted Administrative Expense Claim(s).

3

SRF 36417

**If you elect to opt-out of the Administrative Expense Claims Consent Program, please return your Opt-Out Ballot promptly.** If you have any questions regarding this Opt-Out Ballot or the procedures for opting out, please contact the Debtors' Claims and Noticing Agent, by: (a) visiting the Debtors' restructuring website at: https://restructuring.primeclerk.com/sears; (b) writing to Sears Admin. Claims Consent Prgm Ballot Processing, c/o Prime Clerk LLC, 850 Third Avenue, Suite 412, Brooklyn, New York 11232; and/or (c) emailing searsinfo@primeclerk.com.

> If the Claims and Noticing Agent does **not** actually receive the Opt-Out Ballot on or before November 18, 2019, at 4:00 p.m., prevailing Eastern Time indicating your intent to opt-out of the Administrative Expense Claims Consent Program (and if the Opt-In/Opt-Out Deadline is not extended), your opt-out election will not be effective.

4

# EBallot_182353801039931_CXRHG28612

Final Audit Report                                                2019-11-18

| | |
|---|---|
| Created: | 2019-11-18 |
| By: | Sears Claims (searsclaims@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAARYEzDOA9WupWz7xr0Ntl36qK5jmsZMgO |

## "EBallot_182353801039931_CXRHG28612" History

🗐  Web Form created by Sears Claims (searsclaims@primeclerk.com)
    2019-11-18 - 8:49:49 PM GMT

🗐  Web Form filled in by SALENE KRAEMER (SALENE@MAZURKRAEMER.COM)
    2019-11-18 - 8:51:50 PM GMT- IP address: 71.182.203.19

✍️  (User email address provided through API User-Agent: Mozilla/5.0 (Macintosh; Intel Mac OS X 10_14_6)
    AppleWebKit/537.36 (KHTML, like Gecko) Chrome/78.0.3904.87 Safari/537.36)
    2019-11-18 - 8:51:53 PM GMT- IP address: 71.182.203.19

✅  Signed document emailed to Sears Claims (searsclaims@primeclerk.com) and SALENE KRAEMER
    (SALENE@MAZURKRAEMER.COM)
    2019-11-18 - 8:51:53 PM GMT

# **Exhibit C**

SRF 36417

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
**In re**                                                       :         **Chapter 11**
:
**SEARS HOLDINGS CORPORATION**, *et al.*,     :         **Case No. 18-23538 (RDD)**
:
**Debtors.**[1]                                           :         **(Jointly Administered)**
:
:
---------------------------------------------------------------x

**NOTICE OF**
**(I) BALLOT TO OPT-IN TO ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM AND**
**(II) BALLOT TO OPT-OUT OF ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM**

> **PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THE (I) OPT-IN BALLOT ATTACHED HERETO AS EXHIBIT A OR (II) OPT-OUT BALLOT ATTACHED HERETO AS EXHIBIT B.**
>
> **IF YOU DO NOT TAKE ANY ACTION, YOU WILL BE DEEMED TO BE BOUND BY THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, BUT NOT ENTITLED TO THE BENEFITS THAT WILL BE PROVIDED TO HOLDERS OF ADMINSTRATIVE EXPENSE CLAIMS WHO TIMELY OPT IN TO THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, AS DESCRIBED BELOW.**

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order Directing Joint Administration of Related Chapter 11 Cases* (ECF No. 118). The location of the Debtors' service address is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

SRF 36417

---

**IN ORDER FOR YOUR OPT-IN BALLOT OR OPT-OUT BALLOT TO BE EFFECTIVE,
THE APPLICABLE BALLOT MUST BE ACTUALLY RECEIVED BY
NOVEMBER 18, 2019,[2] AT 4:00 P.M. (PREVAILING EASTERN TIME)
(THE "OPT-IN/OPT-OUT DEADLINE").**

FAILURE TO OPT-IN TO THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM
BY COMPLETING AND TIMELY SUBMITTING AN OPT-IN BALLOT MEANS YOU WILL NOT BE
ENTITLED PARTICIPATE IN TO THE INITIAL DISTRIBUTION (AS DEFINED HEREIN).

FAILURE TO OPT-OUT OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM
BY COMPLETING AND TIMELY SUBMITTING AN OPT-OUT BALLOT WILL
BIND YOU TO THE TERMS OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM.

---

On October 15, 2019, the Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") entered an order confirming the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors* [ECF No. 5293] (the "**Plan**"),[3] approving, among other things, a proposed consent program for holders of Administrative Expense Claims (the "**Administrative Expense Claims Consent Program**") by and among the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), the Creditors' Committee and the Ad Hoc Vendor Group[4] [ECF No. 5370] (the "**Confirmation Order**").[5]

You are receiving the opt-in ballot (the "**Opt-In Ballot**"), attached hereto as **Exhibit A**, and the opt-out ballot (the "**Opt-Out Ballot**" and together with the Opt-In Ballot, the "**Election Ballots**"), attached hereto as **Exhibit B**, because, as a holder of an Administrative Expense Claim,[6] you are entitled to opt-in to or opt-out of the Administrative Expense Claims Consent Program.

**If you do not take any action, you will be deemed to have opted in and will be bound by the Administrative Expense Claims Consent Program, but not entitled to any benefits that will be provided to holders of Administrative Expense Claims who affirmatively opt-in to the Administrative Expense Claims Consent Program prior to the Opt-In/Opt-Out Deadline, namely, participation in an initial distribution of $21 million on or about December 1, 2019 to all holders of Administrative Expense Claims who opt-in to the Administrative Expense Claims Consent Program.**

All Holders of Administrative Expense Claims (other than the Ad Hoc Vendor Group that is deemed to have opted-in) have an option to opt-in to or opt-out of the Administrative Expense Claims Consent Program and releases contained therein. **The Creditors' Committee and the Debtors recommend that you underline affirmatively opt-in to and do not opt-out the Administrative Expense Claims Consent Program.**

---

[2] Thirty-three (33) days after service of this notice.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Confirmation Order or the Plan.

[4] The "**Ad Hoc Vendor Group**" means collectively, Whitebox Asymmetric Partners, LP, Whitebox Multi-Strategy Partners, LP, Hain Capital Investors Master Fund, Ltd., and Cherokee Debt Acquisition, LLC.

[5] Copies of the Plan, Confirmation Order, and the Administrative Expense Claims Consent Program Term Sheet may be accessed free of charge by visiting the website maintained by the Debtors' agent, Prime Clerk, LLC (the "**Claims and Noticing Agent**") at https://restructuring.primeclerk.com/sears.

[6] Specifically, you are receiving the Election Ballots because either (i) the Debtors believe you may be a Holder of an Administrative Expense Claim as of August 6, 2019 or (ii) you filed a proof of Administrative Expense Claim, filed a motion seeking allowance of an Administrative Expense Claim, or have otherwise asserted an Administrative Expense Claim in these Chapter 11 Cases.

SRF 36417

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMHOLDERS WHO AFFIRMATIVELY OPT-IN

All holders of Allowed Administrative Expense Claims that affirmatively opt-in (the "**Opt-In Settled Admin Claims**") to the Administrative Expense Claims Consent Program prior to the Opt-In/Opt-Out Deadline shall receive, among other things:[7]

- Their pro rata share of $21 million ("**Initial Cash Pool**"), on or about December 1, 2019 (the percentage recovery, the "**Initial Recovery**");

- total recovery capped at 75% of the Allowed Administrative Expense Claim;

- such $21 million shall only be available to holders of Opt-In Settled Admin Claims who consensually agree with the Debtors to the Allowed amount of the Opt-In Settled Admin Claims;

- consensual reconciliation of the Allowed amount of Opt-In Settled Admin Claims (including on account of 503(b)(9) and 503(b)(1) issues regarding inducement, date of receipt, port of origin, etc., and any exposure on account of preference actions), to be completed within 30 days from the date of receipt of the Opt-In Ballot (the "**Expedited Reconciliation**");

- to the extent the Debtors, the Creditors' Committee, and the holder of the Opt-In Settled Admin Claim are unable to consensually resolve the Allowed amount, such resolution shall be subject to reconciliation on an agreed-upon schedule as reasonably agreed to by the Debtors, the Creditors' Committee, and the applicable holder of an Opt-In Settled Admin Claim;

- for the avoidance of doubt, any waiver or settlement of any preference action shall be considered on a case-by-case basis; and

- holders who do not agree with the Debtors and the Creditors' Committee on the Allowed amount of Opt-In Settled Admin Claims shall be deemed to hold a Non Opt-Out Settled Admin Claim.

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMHOLDERS WHO NEITHER OPT-IN NOR OPT-OUT

All Holders of an Allowed Administrative Expense Claim against the Debtors who neither (i) opt-in to the Administrative Expense Claims Consent Program nor (ii) opt-out of the Administrative Expense Claims Consent Program prior to the Opt-In/Opt-Out Deadline (the "**Non Opt-Out Settled Admin Claims**," and together with the Opt-In Settled Admin Claims, the "**Settled Administrative Expense Claims**") shall receive, among other things:

- its pro rata share of the Second Distribution, which will be shared only by other holders of Non Opt-Out Settled Admin Claims until they have received a percentage of distribution on their Non Opt-Out Settled Admin Claims that is equal to the Initial Recovery provided to holders of Opt-In Settled Admin Claims;

- total recovery capped at 80% of the Allowed Administrative Expense Claim (together with the Initial Recovery, the "**Settled Admin Expense Claims Recovery**");

- Expedited Reconciliation to be completed within 30 days from the Opt-In/Opt-Out Deadline;

- to the extent the Debtors, the Creditors' Committee, and the holder of the Non Opt-Out Settled Admin Claim are unable to consensually resolve the Allowed amount, such resolution shall be subject to reconciliation on an agreed-upon schedule as reasonably agreed to by the Debtors, the Creditors' Committee, and the applicable holder of a Non Opt-Out Settled Admin Claim; and

- any waiver or settlement of any preference action shall be considered on a case-by-case basis.

**All holders of Administrative Expense Claims who do not opt out of the Administrative Expense Claims Consent Program** will be deemed to be satisfied in full on account of such claim once they have received payment in cash equal to (i) 75% of the applicable Allowed Administrative Expense Claim on account of Opt-In Settled Admin

---

[7] The following is an illustrative summary of the benefits of the Administrative Expense Claims Consent Program and is qualified in its entirety by reference to the applicable provisions in the Confirmation Order.

SRF 36417

Claims, and (ii) 80% of the applicable Allowed Administrative Expense Claim on account of Non Opt-Out Settled Admin Claims. Any Distributions made on account of Settled Administrative Expense Claims shall not be subject to disgorgement, including without limitation, upon any conversion or dismissal of the Chapter 11 Cases. And upon entry of the Confirmation Order, all Settled Administrative Expense Claims shall be Allowed against the Debtors in these Chapter 11 Cases on a consolidated basis, or upon any conversion or dismissal of the Chapter 11 Cases.

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMHOLDERS WHO OPT-OUT

If you **opt out of the Administrative Expense Claims Consent Program** prior to the Opt-In/Opt-Out Deadline, you will retain the right to receive payment of the Allowed 100% of your Administrative Expense Claim, but payment of your Administrative Expense Claim shall occur on the latest of (i) the Effective Date, (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim is Allowed, and (iii) the next Distribution Date after such Administrative Expense Claim is Allowed. Holders of opt-out Claims will not be entitled to participate in the Initial Distribution, Second Distribution, or any further distribution until the Plan has become effective or the Settled Administrative Expense Claims have been satisfied.

## ADDITIONAL INFORMATION

Pursuant to the Administrative Expense Claims Consent Program, holders bound by the Administrative Expense Claims Consent Program shall be paid in the following order of priority: (1) Holders of Opt-In Settled Admin Claims of their pro rata share of the Initial Cash Pool; (2) Holders of Non Opt-Out Settled Admin Claims of their pro rata share up to a percentage recovery equal to the Initial Recovery; and (3) all Holders bound by the Administrative Expense Claims Consent Program of the remaining unpaid amount of their Allowed Administrative Expense Claims up to the Settled Admin Expense Claims Recovery.

Each Holder of a Settled Administrative Expense Claim also agrees (1) to support the Plan; and (2) that acceptance of and consent to the Administrative Expense Claims Consent Program will be deemed consent to the Plan, acceptance of the treatment under the Plan in satisfaction of section 1129(a)(9) of the Bankruptcy Code, and agreement to provides the releases included in the Administrative Expense Claims Consent Program.

### Treatment of Holders of Administrative Expense Claims
### Under Administrative Expense Claims Consent Program

|  | Opt-In Settled Admin Claims | Non Opt-Out Settled Admin Claims | Opt-Out Administrative Expense Claims |
|---|---|---|---|
| **Maximum Recovery on Account of Allowed Administrative Expense Claim** | 75% of Allowed Amount | 80% of Allowed Amount | 100% of Allowed Amount |
| **Participates in Distribution of $21 million Initial Cash Pool on or about December 1, 2019** | Yes | No | No |
| **Participates in Second Distribution** | No[8] | Yes | No |
| **Distribution on the Later of (i) the Effective Date, (ii) 30 days after Allowance of the Claim, and (iii) the next Distribution Date after Allowance of the Claim** | N/A | N/A | Yes |

[8] To the extent there are any amounts remaining for distribution after the Non Opt-out Settled Admin Claims have received the percentage recovery equal to the Initial Recovery, the Opt-In Settled Admin Claims shall share pro rata in such excess with the Non Opt-Out Settled Admin Claims.

SRF 36417

| Claims Reconciliation to occur | Within 30 days of receipt of Opt-In Ballot | Within 30 days after Opt-In/Opt-Out Deadline | In ordinary course |
|---|---|---|---|

## INSTRUCTION FOR OPTING-IN OR OPTING-OUT

In order to **opt-in** to or **opt-out** of the Administrative Expense Claims Consent Program, you must complete, execute, and submit your Opt-In Ballot or Opt-Out Ballot to the Claims and Noticing Agent so that your Opt-In Ballot or Opt-Out Ballot is <u>actually received</u> by the Claims and Noticing Agent on or before the Opt-In/Opt-Out Deadline, which is **November 18, 2019, at 4:00 p.m., prevailing Eastern Time**.

**You are strongly encouraged to review the Administrative Expense Claims Consent Program Term Sheet and the Plan before you make an election. You may wish to seek legal advice concerning the Administrative Expense Claims Consent Program and the Election Ballots.**

**Acceptable Methods to Complete and Submit Your Election Ballots.** You may elect to opt-in to or opt-out of the Administrative Expense Claims Consent Program by completing and submitting (i) an electronic Opt-In Ballot or Opt-Out Ballot through the dedicated, online portal maintained by the Claims and Noticing Agent ("**E-Ballot**") or (ii) one of the paper-copy Election Ballots (the "**Paper Election Ballots**"). In either case (E-Ballot or Paper Election Ballots), you must submit your Opt-In Ballot or Opt-Out Ballot to the Claims and Noticing Agent so that it is <u>actually received</u> by the Claims and Noticing Agent on or before the Opt-In/Opt-Out Deadlines.

## CERTAIN RISK FACTORS TO BE CONSIDERED

1.   **Risks Related to Debtors' Ability to Make Distributions**

   (a)   **Debtors' Assets Available for Distributions**

As described in greater detail in the Griffith Declaration, Murphy Declaration, and Transier Declaration,[9] the Debtors' Assets as of the September 18, 2019 include approximately $173.5 million comprised of (i) approximately $50.1 million in cash on hand, (ii) $33.4 million on account of other Assets to be monetized, and (iii) approximately $97 million owed by Transform for the assumptions of 503(b)(9) Claims[10] (the "**Additional Asset Proceeds**"):

| Sources | | |
|---|---|---|
| Cash on Hand at 9/18/19 | $ | 50.1 |
| Calder Net Proceeds | | 10.0 |
| Real Estate Proceeds | | 13.1 |
| De Minimis Assets | | 5.3 |
| 2017 EDA Funds | | 5.0 |
| Transform 503(b)(9) Obligations | | 90.0 |
| **Total Sources** | $ | 173.5 |

***In addition***, the Debtors believe they will receive significant recoveries from the proceeds of certain valuable litigation assets, including avoidance action arising under section 547 of the Bankruptcy Code or any comparable "preference" action arising under applicable non-bankruptcy law (collectively, the "**Preference Actions**"), certain

---

[9] *Declaration of Brian J. Griffith in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Liquidation of Sears Holdings Corporation and its Affiliated Debtors* (ECF No. 5148) (the "**Griffith Declaration**"), *Declaration of William Murphy in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Liquidation of Sears Holdings Corporation and its Affiliated Debtors* (ECF No. 5149) (the "**Murphy Declaration**"), *Declaration of William L. Transier in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Liquidation of Sears Holdings Corporation and its Affiliated Debtors* (ECF No. 5146) (the "**Transier Declaration**").

[10] The Debtors believe that pursuant to section 2.3(k)(ix) of the Asset Purchase Agreement, Transform is obligated to assume approximately $97 million on account of 503(b)(9) Claims. The $90 million reflected herein ties to the $90 million of estimated 503(b)(9) Claims; to the extent the 503(b)(9) Claims are in excess of $90 million, Transform shall be liable to assume up to $97 million on account of 503(b)(9) Claims pursuant to the Asset Purchase Agreement. Transform disputes that it owes such amounts to the Debtors.

SRF 36417

prepetition related party transaction claims against ESL Investments, Inc. and its affiliates ("ESL") and other parties, and potential settlements with insurers with respect to claims against the D&O Policy (together the "**Litigation Proceeds**"), although there can be no assurance of any recovery:

- **Preference Actions**. The Debtors estimate that they will receive at least approximately $100 million in recoveries from Preference Actions out of an excess of $1.345 billion of gross total transfers in the preference window, which is consistent with comparable transactions where the average range of recoveries is from 11.4% if the gross total transfers pursued or, alternatively 23.7% of those transfers, net of subsequent new value. *See* Griffith Decl., ¶¶ 64-70.

- **ESL Litigation**. The Debtors' Restructuring Subcommittee and the Creditors' Committee both have investigated the prepetition related party transaction claims and concluded that such claims are meritorious. On April 17, 2019 the Restructuring Subcommittee, on behalf of certain of the Debtors, filed an adversary complaint against ESL Investments, Inc., its affiliates, various third parties, and certain of the Debtors' directors and officers (ECF No. 3278) (the "**Subcommittee Adversary Complaint**"), seeking over $2 billion in damages arising from certain prepetition related party transactions. *See* Transier Decl., ¶¶ 20-27. As of the date hereof, the Court has not heard any arguments or considered any evidence in connection with the Subcommittee Adversary Complaint. Current and prospective defendants dispute the validity of Claims asserted in the Subcommittee Adversary Complaint, and there is no assurance of any recovery.

- **D&O Insurance**. The Debtors believe they may be able to receive significant recoveries against available D&O Policies on account of Preserved Causes of Action against the Specified Directors and Officers. The Debtors believe that there is at least approximately $150 million of available directors and officers liability insurance that provides a source of recovery to the Debtor plaintiffs in the Subcommittee Adversary Complaint against parties (in their capacity as directors and/or officers) who are covered by such insurance. Certain defendants (such as ESL, Lampert and the Seritage parties) in the Subcommittee Adversary Complaint may also be liable for sums separate and apart from any available insurance coverage. *See* Transier Decl., ¶ 28. Certain insurers have disclaimed coverage under certain of the D&O Policies.

There can be no assurance that the Debtors will be able to successfully monetize their Assets in the projected amounts or when such Assets will be monetized. There is a risk that the Net Proceeds of Total Assets, including the Litigation Proceeds, may be significantly less than projected, which, in turn, could cause the amount and timing of Distributions to adversely change substantially. Further, unanticipated events and circumstances may affect the ultimate recoveries.

**(b)    Debtors' Estimate of Outstanding Claims on the Effective Date**

The Debtors and their advisors have conducted an extensive analysis to estimate the Debtors' outstanding Claims pool and are continuing to review and analyze Claims. The Debtors have filed and intend to continue to file objections to Claims. In the aggregate, the Debtors believe that the sources above will be enough to satisfy the Debtors' estimate of outstanding Claims by the Effective Date:

| Uses | Low Claims | | High Claims | |
|---|---|---|---|---|
| Liquidating Trust funding | $ | (25.0) | $ | (25.0) |
| Remaining estate professional fees | | (9.0) | | (9.0) |
| 503(b)(9) | | (90.0) | | (155.0) |
| Other Admin Claims | | (50.0) | | (50.0) |
| Secured | | (18.0) | | (18.0) |
| Priority Tax | | (15.0) | | (18.0) |
| Priority Non-Tax | | (3.0) | | (3.0) |
| **Total Uses** | $ | **(210.0)** | $ | **(278.0)** |
| | | | | |
| **Total Potential Shortfall (without Litigation Proceeds)** | $ | **(36.5)** | $ | **(104.5)** |

6

SRF 36417

But, there can be no assurance that the estimated Allowed amount of Claims will not be significantly more than projected, which, in turn, could cause the total recovery on Administrative Expense Claims to be lower. Some assumptions may not materialize, and unanticipated events and circumstances may affect the ultimate results. Therefore, the actual amount of Allowed Claims may vary from the Debtors' feasibility analysis, and the variation may be material.

    (c)    **Distribution Funding Sources**

The Initial Cash Pool, the Second Distribution, additional pre-Effective Date distributions to Settled Administrative Expense Claims, and post-Effective Date Distributions to Opt-Out Claims, will be funded from the following sources, as follows:

| | Within three (3) Business Days of Entry of the Confirmation Order[11] | Post-Confirmation Date, Pre-Effective Date | Post-Effective Date |
|---|---|---|---|
| **Initial Cash Pool ($21 million) for the Initial Distribution to Opt-In Settled Admin Claims only** | $16 million funded from: (i) unrestricted cash on hand and (ii) a minimum of $3 million from the Carve-Out Account | $5 million from Additional Asset Proceeds *and/or* Litigation Proceeds (to occur prior to the Initial Distribution) | N/A |
| **Second Distribution to Non Opt-Out Settled Admin Claims[12]** | N/A | Subject to the Minimum Conditions,[13] from Additional Asset Proceeds *and/or* Litigation Proceeds | N/A |
| **Further Distribution(s) to Settled Admin Claims** | N/A | Subject to the Second Distribution, from Additional Asset Proceeds *and/or* Litigation Proceeds | N/A |
| **Distributions to Opt-Out Claims** | N/A | N/A | From Additional Asset Proceeds *and/or* Litigation Proceeds |

---

[11] Within three (3) Business Days of entry of the Confirmation Order, an additional (i) $15 million from cash on hand will be placed into the segregated Litigation Funding Account for funding of the litigation associated with the Jointly Asserted Causes of Action (the "**Litigation Funding**") and (ii) $5 million will be placed into the segregated Cash Reserve Account for post-Confirmation estate costs including, without limitation, additional professional fees of the Debtors' and the Creditors' Committee not included in the Carve-Out Account as of the entry of the Confirmation Order (the "**Cash Reserve**").

[12] To the extent there are any amounts remaining for distribution after the Non Opt-out Settled Admin Claims have received the percentage recovery equal to the Initial Recovery, the Opt-In Settled Admin Claims shall share pro rata in such excess with the Non Opt-Out Settled Admin Claims.

[13] The Second Distribution shall not occur until each of the until each of the following conditions is met: (i) a total of $25 million has been funded into the Litigation Funding Account in the aggregate, (ii) there has been a funding of $10 million in the aggregate in the Cash Reserve Account and (iii) the Segregated Account has an additional $10 million in cash (together, the "**Minimum Conditions**").

7

SRF 36417

## 2.    Risk of Non-Occurrence of Effective Date

Although the Debtors believe that the Effective Date will occur soon after the Confirmation Date, there can be no assurance as to the timing of the Effective Date. If the conditions precedent to the Effective Date set forth in the Plan have not occurred or have not been waived as set forth in Article X of the Plan or the Debtors are unable to pay their obligations as required under section 1129(a)(9) of the Bankruptcy Code, then the Confirmation Order may be vacated. Any Distributions made on account of Settled Administrative Expense Claims shall not be subject to disgorgement, including without limitation, upon any conversion or dismissal of the Chapter 11 Cases.

## 3.    Risks Related to the Causes of Action

There is no guarantee as to the success of pursuing any Cause of Action. The success of the Debtors and the Creditors' Committee or Liquidating Trust in pursuing any Cause of Action, as well as the expenses incurred in investigating and prosecuting the Causes of Action, may materially affect the recoveries for the holders of Allowed Claims.

## 4.    No Legal or Tax Advice Is Provided by this Disclosure Statement

The contents of this notice should not be construed as legal, business, or tax advice. Each holder of a Claim should consult their own legal counsel and accountant as to legal, tax, and other matters concerning their Claim. This notice may not be relied upon for any purpose other than to determine how to elect how to be treated under the Administrative Expense Claims Consent Program.

## 5.    No Admission Made

Nothing contained herein or in the Plan shall constitute an admission of, or shall be deemed evidence of, the tax or other legal effects of the Plan or Administrative Expense Claims Consent Program on the Debtors or holders of Claims or Interests.

For additional risk factors and considerations, including the position of Transform and/or ESL Parties, please review section VIII.A of the Disclosure Statement. Should you wish to obtain a copy of the Disclosure Statement, Plan, Confirmation Order, the Administrative Expense Claims Consent Program Term Sheet, or any other documents in these Chapter 11 Cases, you should contact the Debtors' Claims and Noticing Agent, Prime Clerk LLC by: (a) visiting the Debtors' restructuring website at: https://restructuring.primeclerk.com/sears; (b) writing to Sears Admin. Claims Consent Prgm Ballot Processing, c/o Prime Clerk LLC, 850 Third Avenue, Suite 412, Brooklyn, New York 11232; and/or (c) emailing **searsinfo@primeclerk.com.** You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.vaeb.uscourts.gov.

SRF 36417

## EXHIBIT A

### OPT-IN BALLOT

SRF 36417

Voter ID: **716497**

---

**PLEASE FOLLOW THESE INSTRUCTIONS FOR SUBMITTING YOUR <u>OPT-IN ELECTION</u>. IF YOU ELECT TO OPT-IN TO THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, PLEASE COMPLETE, SIGN, DATE, AND TRANSMIT THIS OPT-IN BALLOT SO THAT IT IS *ACTUALLY RECEIVED* BY THE CLAIMS AND NOTICING AGENT ON OR BEFORE <u>NOVEMBER 18, 2019, AT 4:00 P.M. (PREVAILING EASTERN TIME)</u>**

**YOU MAY RETURN YOUR OPT-IN BALLOT IN THE PRE-ADDRESSED, PRE-PAID RETURN ENVELOPE PROVIDED OR VIA FIRST CLASS MAIL, HAND DELIVERY, OR OVERNIGHT COURIER, TO:**

**SEARS ADMIN. CLAIMS CONSENT PRGM BALLOT PROCESSING
C/O PRIME CLERK LLC
850 THIRD AVENUE, SUITE 412
BROOKLYN, NEW YORK 11232**

---

**To Submit Your Opt-In Ballot Via E-Ballot**

To submit your Opt-In via E-Ballot, visit https://restructuring.primeclerk.com/sears. Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Opt-In Ballot.

IMPORTANT NOTE: You will need the following information to retrieve and submit your electronic Opt-In Ballot:

**Unique E-Ballot ID#:** **182353801040864**

E-Ballot is the sole manner in which Opt-In will be accepted via electronic or online transmission. Opt-In Ballots submitted by facsimile, email or other means of electronic transmission will not be valid. Any Opt-In submitted through E-Ballot with the Holder's electronic signature will be deemed to be immediately legally valid and effective.

Please complete and submit an electronic Opt-In Ballot for each E-Ballot ID# you receive, as applicable.

Holders who cast an Opt-In using E-Ballot should NOT also submit a Paper Copy.

**To Submit Your Opt-In Ballot Via Paper Copy**

To submit your Opt-In via Paper Opt-In Ballot, complete items 1, 2, and 3 below and submit your Paper Opt-In Ballot in the pre-addressed, pre-paid return envelope provided or by first-class mail, hand delivery, or overnight courier to:

Sears Admin. Claims Consent Prgm Ballot Processing
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, New York 11232

---

<u>Item 1</u>.  **Amount of Administrative Expense Claim(s).**

The undersigned hereby certifies that as of the date of completion of this Opt-In Ballot, the undersigned asserts it was the Holder of an Administrative Expense Claim(s) in the following aggregate amount:[1]

$ 185576

---

[1] This amount should represent the amount of your previously-asserted Administrative Expense Claim(s).  If the Debtors do not have a specific Administrative Expense Claim amount on file for you, the box in Item 1 of this Opt-In Ballot will be blank.  For reference purposes, you should insert the relevant amount of your alleged Administrative Expense Claim; however, for the avoidance of doubt, this Opt-In Ballot is not to be used to assert your Administrative Expense Claim(s).  For more information about asserting an Administrative Expense Claim(s), visit the Debtors' case

2

SRF 36417

<u>Item 2</u>. **Administrative Expense Claims Consent Program Election.** You may elect to opt-in to the Administrative Expense Claims Consent Program by checking the box below and returning this Opt-In Ballot to the Claims and Noticing Agent on or before the Opt-In/Opt-Out Deadline pursuant to the instructions set forth herein. If you return this Opt-In Ballot but do not check the box below or do not return this Opt-In Ballot, you will not be entitled to the Initial Distribution. If you submit multiple Opt-In Ballots, your last timely received Opt-In Ballot shall control. Election to withhold consent is at your option.

 **THE HOLDER OF THE ADMINISTRATIVE EXPENSE CLAIM(S) SET FORTH IN ITEM 1 ELECTS TO OPT-IN TO THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM.**

<u>Item 3</u>. **Acknowledgments.** By signing this Opt-In Ballot, the undersigned Holder of an Administrative Expense Claim(s) identified in Item 1 above certifies that (i) it is the Holder of the Administrative Expense Claim(s) identified in Item 1 above or (ii) it has full power and authority to act on behalf of the Holder of the Administrative Expense Claim(s) identified in Item 1 above.

## VIR VENTURES, INC.
Name

Social Security or Federal Tax I.D. No. (optional)

**Signature:** *Salene Mazur Kraemer, Esquire*
Salene Mazur Kraemer, Esquire (Nov 18, 2019)

**Email:** salene@mazurkraemer.com

Signature

## Salene Mazur Kraemer, ESQ
If by Authorized Agent, Name and Title

## MAZURKRAEMER BUSINESS LAW
Name of Institution

## 331 JONQUIL PLACE
Street Address

## PITTSBURGH PA 15228
City, State, Zip Code

## 412-427-7075
Telephone Number

## SALENE@MAZURKRAEMER.COM
Email Address

## 11.18.2019
Date Completed

**If you elect to opt-in to the Administrative Expense Claims Consent Program, please return your Opt-In Ballot promptly.** If you have any questions regarding this Opt-In Ballot or the procedures for opting out, please contact the Debtors' Claims and Noticing Agent, by: (a) visiting the Debtors' restructuring website at: https://restructuring.primeclerk.com/sears; (b) writing to Sears Admin. Claims Consent Prgm Ballot Processing, c/o Prime Clerk LLC, 850 Third Avenue, Suite 412, Brooklyn, New York 11232; and/or (c) emailing searsinfo@primeclerk.com.

| If the Claims and Noticing Agent does **not** actually receive the Opt-In Form on or before November 18, 2019, at 4:00 p.m., prevailing Eastern Time indicating your intent to opt-in to the Administrative Expense Claims Consent Program (and if the Opt-In/Opt-Out Deadline is not extended), your opt-in election will not be effective. |

---

website: https://restructuring.primeclerk.com/sears. The Debtors reserve the right to dispute and validate the amount of your asserted Administrative Expense Claim(s).

SRF 36417

SRF 36417

**<u>EXHIBIT B</u>**

**OPT-OUT BALLOT**

SRF 36417

Voter ID: **716497**

---

**PLEASE FOLLOW THESE INSTRUCTIONS FOR SUBMITTING YOUR OPT-OUT ELECTION. IF YOU ELECT TO OPT-OUT OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, PLEASE COMPLETE, SIGN, DATE, AND TRANSMIT THIS OPT-OUT BALLOT SO THAT IT IS *ACTUALLY RECEIVED* BY THE CLAIMS AND NOTICING AGENT ON OR BEFORE NOVEMBER 18, 2019, AT 4:00 P.M. (PREVAILING EASTERN TIME)**

**IF YOU WOULD LIKE TO RECEIVE THE BENEFITS OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM AND DO NOT WISH TO OPT-OUT OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, YOU DO NOT NEED TO TAKE ANY FURTHER ACTION AT THIS TIME.**

**YOU MAY RETURN YOUR OPT-OUT BALLOT IN THE PRE-ADDRESSED, PRE-PAID RETURN ENVELOPE PROVIDED OR VIA FIRST CLASS MAIL, HAND DELIVERY, OR OVERNIGHT COURIER, TO:**

**SEARS ADMIN. CLAIMS CONSENT PRGM BALLOT PROCESSING
C/O PRIME CLERK LLC
850 THIRD AVENUE, SUITE 412
BROOKLYN, NEW YORK 11232**

---

| **To Submit Your Opt-Out Ballot Via E-Ballot** |
|---|

To submit your Opt-Out via E-Ballot, visit https://restructuring.primeclerk.com/sears. Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Opt-Out Ballot.

IMPORTANT NOTE: You will need the following information to retrieve and submit your electronic Opt-Out Ballot:

**Unique E-Ballot ID#:** 182353801040864

E-Ballot is the sole manner in which Opt-Out will be accepted via electronic or online transmission. Opt-Out Ballots submitted by facsimile, email or other means of electronic transmission will not be valid. Any Opt-Out submitted through E-Ballot with the Holder's electronic signature will be deemed to be immediately legally valid and effective.

Please complete and submit an electronic Opt-Out Ballot for each E-Ballot ID# you receive, as applicable.

Holders who cast an Opt-Out using E-Ballot should NOT also submit a Paper Copy.

| **To Submit Your Opt-Out Ballot Via Paper Copy** |
|---|

To submit your Opt-Out via Paper Opt-Out Ballot, complete items 1, 2, and 3 below and submit your Paper Opt-Out Ballot in the pre-addressed, pre-paid return envelope provided or by first-class mail, hand delivery, or overnight courier to:

Sears Admin. Claims Consent Prgm Ballot Processing
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, New York 11232

---

SRF 36417

**Item 1. Amount of Administrative Expense Claim(s).**

The undersigned hereby certifies that as of the date of completion of this Opt-Out Ballot, the undersigned asserts it was the Holder of an Administrative Expense Claim(s) in the following aggregate amount:[1]

$ 185576

**Item 2. Administrative Expense Claims Consent Program Election.** You may elect to opt-out of the Administrative Expense Claims Consent Program by checking the box below and returning this Opt-Out Ballot to the Claims and Noticing Agent on or before the Opt-In/Opt-Out Deadline pursuant to the instructions set forth herein. If you return this Opt-Out Ballot but do not check the box below or do not return this Opt-Out Ballot, you will be bound by the Administrative Expense Claims Consent Program. If you submit multiple Opt-Out Ballots, your last timely received Opt-Out Ballot shall control. Election to withhold consent is at your option.

☐      **THE HOLDER OF THE ADMINISTRATIVE EXPENSE CLAIM(S) SET FORTH IN ITEM 1 ELECTS TO OPT-OUT OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM.**

**Item 3. Acknowledgments.** By signing this Opt-Out Ballot, the undersigned Holder of an Administrative Expense Claim(s) identified in Item 1 above certifies that (i) it is the Holder of the Administrative Expense Claim(s) identified in Item 1 above or (ii) it has full power and authority to act on behalf of the Holder of the Administrative Expense Claim(s) identified in Item 1 above.

**VIR VENTURES, INC.**

Name

Social Security or Federal Tax I.D. No. (optional)

**Signature:** *Salene Mazur Kraemer, Esquire*

Salene Mazur Kraemer, Esquire (Nov 18, 2019)

Signature

**Email:** salene@mazurkraemer.com

If by Authorized Agent, Name and Title

Salene Mazur Kraemer, ESQ

Name of Institution

MAZURKRAEMER BUSINESS LAW

Street Address

331 JONQUIL PLACE

City, State, Zip Code

PITTSBURGH PA 15228

Telephone Number

412-427-7075

Email Address

11.18.2019

Date Completed

---

[1] This amount should represent the amount of your previously-asserted Administrative Expense Claim(s). If the Debtors do not have a specific Administrative Expense Claim amount on file for you, the box in Item 1 of this Opt-Out Ballot will be blank. For reference purposes, you should insert the relevant amount of your alleged Administrative Expense Claim; however, for the avoidance of doubt, this Opt-Out Ballot is not to be used to assert your Administrative Expense Claim(s). For more information about asserting an Administrative Expense Claim(s), visit the Debtors' case website: https://restructuring.primeclerk.com/sears. The Debtors reserve the right to dispute and validate the amount of your asserted Administrative Expense Claim(s).

3

SRF 36417

**If you elect to opt-out of the Administrative Expense Claims Consent Program, please return your Opt-Out Ballot promptly.**  If you have any questions regarding this Opt-Out Ballot or the procedures for opting out, please contact the Debtors' Claims and Noticing Agent, by: (a) visiting the Debtors' restructuring website at: https://restructuring.primeclerk.com/sears; (b) writing to Sears Admin. Claims Consent Prgm Ballot Processing, c/o Prime Clerk LLC, 850 Third Avenue, Suite 412, Brooklyn, New York 11232; and/or (c) emailing searsinfo@primeclerk.com.

> If the Claims and Noticing Agent does **not** actually receive the Opt-Out Ballot on or before November 18, 2019, at 4:00 p.m., prevailing Eastern Time indicating your intent to opt-out of the Administrative Expense Claims Consent Program (and if the Opt-In/Opt-Out Deadline is not extended), your opt-out election will not be effective.

4

# EBallot_182353801040864_DXVJC28612

Final Audit Report                                                            2019-11-18

| Created: | 2019-11-18 |
| --- | --- |
| By: | Sears Claims (searsclaims@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA2wDULu8Eg7Jt8Yp33Huf08sZB-_7EuAA |

## "EBallot_182353801040864_DXVJC28612" History

📄 Web Form created by Sears Claims (searsclaims@primeclerk.com)
2019-11-18 - 8:52:52 PM GMT

📄 Web Form filled in by Salene Mazur Kraemer, Esquire (salene@mazurkraemer.com)
2019-11-18 - 8:54:34 PM GMT- IP address: 71.182.203.19

✏️ (User email address provided through API User-Agent: Mozilla/5.0 (Macintosh; Intel Mac OS X 10_14_6)
AppleWebKit/537.36 (KHTML, like Gecko) Chrome/78.0.3904.87 Safari/537.36)
2019-11-18 - 8:54:37 PM GMT- IP address: 71.182.203.19

✅ Signed document emailed to Salene Mazur Kraemer, Esquire (salene@mazurkraemer.com) and Sears Claims
(searsclaims@primeclerk.com)
2019-11-18 - 8:54:37 PM GMT

Prime Clerk    POWERED BY
Adobe Sign