Luiz Felipe de Oliveira
(New York Bar No. 5349923 and Maryland Bar No. 2001220079)
STEIN IP, LLC
1990 M St NW #610, Washington, DC 20036
Telephone: (202) 216-9505 Direct (202) 594-2055
Email: loliveira@steinip.com
*Counsel for KG Denim Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **SEARS HOLDINGS CORPORATION, et al.,** | : | **Case No. 18-23538 (RDD)** |
| | : | |
| **Debtors.**[1] | : | **(Jointly Administered)** |
| | : | |

-----------------------------------------------------------------X

**RESPONSE OF KG DENIM LIMITED IN**
**OPPOSITION TO DEBTORS' ELEVENTH OMNIBUS OBJECTION TO**
**PROOF OF CLAIM (TO RECLASSIFY CLAIMS)**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

     KG Denim Limited, through its attorney, hereby submits its response in opposition to the

---

[1] The debtors (the "Debtors") in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road,

Debtors' Eleventh Omnibus Objection to Proof of Claims (To Reclassify Claims) [Dkt# 7213]

(the "Objection")[2]. More specifically, Debtors objects to Creditor's claims Nos. 1314, 1362, and

1363 alleging that the value under these claims is not an administrative expense pursuant to

section 503(b)(9). Because "receipt" under 503(b)(9) means time of "physical receipt", KG

Denim's goods were received by the Debtors within the 20-day prepetition period, the entirety of

Claim No. 1363, and a Portion of Claim No. 1362[3] are administrative claims under 503(b)(9).

Furthermore, based on equity and bankruptcy principles, the entirety of Claim No. 1363, and a

Portion of Claim No. 1362 are administrative claims under 503(b)(9).

## PRELIMINARY STATEMENT

1.      11 U.S.C. Code Section 503(b) provides:

> administrative expenses, other than claims allowed under section 502(f) of this title, including—
> [...]
> (9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

2.      Because the Bankruptcy Code does not define the term "received," *see* 11 U.S.C.

§ 101, courts have routinely looked to the Uniform Commercial Code (the "UCC") for

interpreting "receipt," including matters involving reclamation rights. *See e.g., Montello Oil*

*Corp. v. Martin Motor Oil Inc.* (*In re Martin Motor Oil, Inc.*) 740 F.2d 220, 223-26 (3d Cir.

1984) (holding that "receipt" under 11 U.S.C. § 546(c) has the same meaning as "receipt" in the

---

Hoffman Estates, Illinois 60179.
    [2]Creditor KG Denim reserves the right to argue that Creditor debts qualify as administrative expense under 503(b)(1)(A) of the Bankruptcy Code.

U.C.C.); *In re Momenta, Inc.*, 455 B.R. 353, 359 (Bankr. D.N.H. 2011) (holding "the term

'received' in § 546(c) is the equivalent of 'received' in the UCC, and the term 'received' in §

503(b)(9) shall be interpreted identically.").

3.      Courts addressing the issue at bar have found that "receipt" requires possession

and that "possession … occurs when the seller can no longer stop delivery and is left only with

the remedy of reclamation." *In re ADI Liquidation, Inc.,* 572 B.R. 543, 548 (Bankr. D. Del.

2017); *see In re World Imports, Ltd.,* 862 F.3d at 346 ("receipt as used in 11 U.S.C. § 503(b)(9)

requires physical possession by the buyer or his agent."); *In re O.W. Bunker Holdings N. Am.*

*Inc.,* No. 14-51720, 2019 at WL 4025315 *3 (Bankr. D. Conn. Aug 26, 2019); *Ningbo Chenglu*

*Paper Prod. Mfg. Co. v. Momenta, Inc.,* No. 11-CV 479-SM, 2012 WL 3765171, at *6 (D.N.H.

Aug. 29, 2012) ("[T]he phrase 'received by the debtor' as used in Section 503(b)(9) means:

possessed by the debtor…."). Several Courts have similarly held that a section 503(b)(9) claim

requires physical possession of goods by the debtor or its agent within the 20-day prepetition

window. See, e.g., In re Wezbra Dairy, LLC, 493 B.R. 768 (Bankr. N.D. Ind. 2013) (holding that

goods are "received" under section 503(b)(9) when they come into the debtor's physical

possession, rather than when title to the goods transfers to the debtor); In re Circuit City Stores,

Inc., 432 B.R. 225 (Bankr. E.D. Va. 2010) (same). It remains to be seen whether other courts not

bound by the Third Circuit precedent will also adopt this approach.

4.      Admittedly, the Third Circuit Court of Appeals' decision in In re World Imports,

Ltd., 862 F.3d 338 (3d Cir. 2017), is not binding on this Court. The Third Circuit's World

Imports rationale and holding, however, should be applied by this Court.

## DISCUSSION

---

[3]$68,126.00 is associated with No. 7068637961 under Claim No. 1362

5.      The Debtors have objected to Creditor KG Denim claims Nos. 1363, 1362, and

1314.  However, and upon further examination, at least Claims Nos. 1363 and a Portion of Claim

1362 (the "Claims") are administrative claims under section 503(b)(9) because "receipt" under

503(b)(9) means time of "physical receipt" and KG Denim's goods under Claim 1363 and a

Portion of Claim 1362 were received by the Debtors within the 20-day prepetition period under

503(b)(9).

**KG Denim's Claims**

**Summary of the Claim**

6.      Creditor KG Denim's administrative claims under section 503(b)(9) include:

(1) Claim No. 1363 relates to invoice No. M106/2018-2019 for 9248 sets/pcs

valued at $73,843.11 and invoice No. M117/2018-2019 for 5936 sets/pcs valued at

$147,092.48. As to delivery of goods relating to Invoice No. M106/2018-2019, the

common carrier United Parcels Services ("UPS") has assigned Tracking No. 7068637950

(See proof of claim No. 1363, page. 74 of PDF). As to delivery of goods relating to

Invoice No. M117/2018-2019, common carrier UPS has assigned Tracking No.

706863794T. (See proof of claim No. 1363, page. 82, and 83 of PDF)

(2) Claim No. 1362 relates to invoice No. M116/2018-2019 for 3328 sets/pcs

valued at $68,126.00 and in invoice No. M115/2018-2019 for 1976 sets/pcs valued at

$40,552.96. As to delivery of goods relating to Invoice No. M116/2018-2019, common

carrier UPS has assigned Tracking No. 7068637961. (See proof of claim No. 1362, page.

9 of PDF).  As to delivery of goods relating to Invoice No. M115/2018-2019, common

carrier UPS has assigned Tracking No. 7068691949 (See proof of claim No. 1362, page.

15 of PDF)

7.       On October 23, 2018, KG Denim's submitted claim No. 1363 (See Proof of Claim 1363, page 86 of PDF) and claim No. 1362 (See Proof of Claim No. 1362, page 45 of PDF). Therefore, the Claims were submitted before the General Bar Date of April 10, 2019. Thus, the Claims were timely submitted.

**The Goods Under Claims No. 1363 and 1362 Were Physically Delivered within 20 Day prior to the Petition Date**

8.       The Objection provides no information about the dates the Debtors contend they physically received KG Denim's goods. Because the Debtors may have possession and control of documents that may show the exact dates KG Denim's goods were delivered, limited discovery should be afforded to KG Denim on these factual issues.

9.       Creditor further submits that the documents provided by Creditor with its proof of claims are sufficient to demonstrate physical receipt within the 20-day period under section 503(b)(9). Additionally, Creditor hereby submits that the attached Common Carrier UPS's tracking system document corroborates Creditors' claims that the entirety of the goods under Claim 1363 and a portion of the goods under Claim 1362 have been received by the Debtors within the 20-day period under Section 503(b)(9):

(1) Tracking No. 7068637950 (Claim No. 1363 - invoice No. **M106**/2018-2019): Per attached common carrier UPS tracking system, the goods were in the U.S. customs on **October 12, 2018**, i.e. within 20 days prior to the petition date of October 15, 2018. (EXHIBIT A)

(2) Tracking No. 706863794T (Claim No. 1363 - invoice No. **M117**/2018-2019): Per attached common carrier UPS tracking system, the goods were in the U.S. customs on **October 12, 2018**, i.e. within 20 days prior to the petition date of October 15, 2018.

(EXHIBIT B)

(3) Tracking No. 7068637961 (Claim No. 1362 - invoice No. **M116**/2018-2019):

Per attached common carrier UPS tracking system, the goods were in the U.S. customs

on **October 13, 2018**, i.e. within 20 days prior to the petition date of October 15, 2018.

(EXHIBIT C)

10.    Accordingly, because physical receipt of the goods under Claim 1363 and a

Portion of Claim 1362 was within the 20-day period under 503(b)(9), Claim 1363 and a Portion

of Claim 1362 shall remain classified as an administrative claim under Section 503(b)(9). Thus,

after further review, KG Denim believes that the amount of its Section 503(b)(9) should be

$289,060.59, wherein $68,126.00 is associated with No. 7068637961 under Claim No. 1362 (the

"Portion of Claim 1362"), $73,843.11 is associated with Tracking No. 7068637950 under Claim

No. 1363, and $147,092.48 is associated with Tracking No. 706863794T under Claim No. 1363.

The $289,060.59 amount does not include the amount of $40,809.56 associated with claim 1314,

nor the amount of $40,552.96 associated with Tracking No. 7068691949 (part of Claim No.

1362)

**Physical Receipt of Goods**

11.    Claim 1363 and a Portion of Claim 1362 are entitled to administrative claim

treatment under 503(b)(9) because (a) Debtors did not themselves receive the goods under Claim

1363 nor the goods under Claim 1362, (b) United Parcels Services ("UPS") is not Debtors agent,

(c) "receipt" under 503(b)(9) means "physical receipt", and (d) Debtors received the goods under

Claim 1363 and a portion of the goods under Claim 1362.

**Debtors' Do Not And Cannot Argue That They Received The Goods At Any Time While
The Goods Were At The Port of Origin**:

12.     As admitted by the Debtors, the Debtors do not load nor ship goods to the United

States themselves. Debtors depend on a third party to ship the goods to the United States:

> "10. For substantially all of the Debtors' imported goods, **vendors (the "Import
> Vendors") delivered their goods to a freight forwarder** at a port of origin (typically in
> Asia). The freight forwarder was selected by the Debtors and paid by the Debtors. The
> freight forwarder **prepared and processed customs documentation and performed
> other tasks to prepare or arrange for the goods to be transported**. The freight
> forwarder **then loaded the goods onto a ship for delivery to the United States**. The
> freight and transportation costs of the ship were paid for by the Debtors."
> (See Objection ¶ 10)

13.     Accordingly, the only way in which goods could have been considered delivered

to Debtors before it reached the United States is under an agent theory for "receipt".

14.     Debtors do not claim that United Parcels Services ("UPS") is the Debtors' agent.

Accordingly, the Debtors did not receive the goods at the port of origin, as UPS is a common

carrier and cannot be considered Debtors' agent.

**The Definition of FOB Origin's Does Not Provide for Passing of Risks Of Loss At The Time
of Delivery At Port of Origin**

15.     Debtors' argument for defining "receipt" as "delivery at port of origin" is

fundamentally flawed as the definition FOB origin does not provide for the transfer of risks of

loss and damages at the time of delivery at port of origin, but at boarding at the vessel.

16.     Debtors' argument can be summarized as follows: "receipt" under section

503(b)(9) should mean delivery at port of origin because that is the time when the risk of loss

and damage passes to buyer in sales of goods under Incoterm FOB. Debtors, however, conflate

the time in which goods are delivered at the port of origin with the time in which goods are

loaded to the vessel. These are two distinct moments and FOB does not provide that the time of

passing of the risk of loss or damage is at delivery at the port, but the at boarding at the vessel.

17.     In their Objection Debtors argue that the "Import Vendor had no further obligation to the Debtors and its performance was considered complete after its delivery at the port of origin." (See Objection ¶ 11).

18.     In their Objection, Debtors further provides a definition of the FOB:

"28. The Incoterm FOB, for the commercial term "free on board," means:

> that the seller delivers the goods **on board the vessel** nominated by the buyer at the named port of shipment or procures the goods already so delivered. The risk of loss of or damage to the goods passes **when the goods are on board the vessel**, and the buyer bears all costs from that moment onwards.

*World Imports I*, 511 B.R. at 745 (citing Incoterms 2010, 87). With respect to delivery:

> The seller must deliver the goods either **by placing them on board the vessel** nominated by the buyer at the loading point, if any, indicated by the buyer at the named port of shipment or by procuring the goods so delivered. In either case, the seller must deliver the goods on the agreed date or within the agreed period and in the manner customary at the port."

(See Objection ¶ 28)

19.     Accordingly, throughout their objection Debtors ignore the language "on board". Debtors, instead, use the language "Fob point". Even if we were to agree that "receipt" of good does not mean physical receipt, which we are not, Debtors' argument would still fail as "receipt" still could not mean delivery at the port of origin. Per the definition of the Incoterm FOB provided by Debtors themselves, the receipt could only be at "boarding" or loading at the vessel, as opposed to simply delivery at the port.

20.     Debtors cannot pick and choose portions of the definition of Incoterm FOB while ignoring others.

21.     Such discussion is even more relevant because Debtors use their conflating of the

concept of time of delivery at the port of origin with the concept of time of boarding in order to

incorrectly argue that "physical receipt" would create absurd results while "delivery at the port of

origin" would not create such absurd results. As explained below, Debtors' argument for

"delivery at the port of origin" under section 503(b)(9) would, in fact, create absurd results.

**Significantly More Of An Absurd Result Would Arise From Debtors' Definition Of "Receipt" As Transfer of Risks Of Loss:**

22.     Another main argument pressed by Debtors' in their interpretation of "receipt"

under Section 503(b)(9) is that interpreting "receipt" as time of transfer of risks of loss would

avoid absurd results. (See Eleventh Omnibus Objection [Dkt #7213] and Debtor's Reply to

Tenth Objection [Dkt #6372]). Debtors argue that the meaning of "receipt" under Section

503(b)(9) should be based on FOB origin and "delivery at port of origin" because applying the

definition of World Imports III would create absurd results. Debtors' interpretation, however, is

based on their conflating of time of delivery as compared to the time of boarding, and on their

incorrect reading of Incoterm FOB4. Furthermore, Debtor's definition of the term "receipt", in

fact, creates absurd results.

23.     Throughout their Objection Debtors argue that absurd results would arise if the

Court applies *World Imports III*. However, Debtors fail to recognize that their own definition of

"constructive receipt" that creates such an absurd result. For example, consider the following

scenarios wherein we consider Debtors' incorrect argument that the timing of the transfer of risk

of loss and damage under Incoterm FOB should be the time goods are considered "received":

Scenario (1):  a creditor that delivered its good at the port of origin on October 13,

2018 (2 days prior to the petition date of October 15, 2018) and the goods are only loaded

---

[4]As explained above, the timing of delivery is distinct for the time of passing of risk of loss and damage,

to the vessel (time of transfer of risks of loss) three days later, i.e. October 16, 2018.

   <u>Scenario (2)</u>: a creditor that delivered its goods at the port of origin on that same date, i.e. October 13, 2018, and the goods are loaded to the vessel (time of transfer of risks of loss) on the same day, i.e. October 13, 2018.

24. Based on Debtors' flawed definition of "receipt", the Creditor in Scenario (1) would not fulfill the requirements of Section 503(b)(9) under Debtors' definition of receipt, while the Creditor in Scenario (2) would fulfill such a requirement, even though for no fault of the Creditor the goods were loaded to the vessel by the common carrier in different days, i.e. two days later in Scenario (1)5.

25. Debtors argue that the meaning for "receipt" should be based on "when vendors actually made the decision to support the debtor's business" (See Objection, ¶ 33). In Scenarios (1) above, even though creditor made a "decision to support the debtor's business" at the same time as the creditor in Scenario (2), creditor in Scenario (1) would not have an administrative claim under 503(b)(9), while creditor in Scenario (2) would. This is the same type of "absurd result" Debtors argue against.

26. For this reason alone, Debtors' argument that there would be no absurd results if "receipt" followed the Incoterm FOB definition for the timing of the transfer of risk of loss and damage is incorrect and flawed. Similarly, if "receipt" meant boarding at the vessel, that would also create an absurd result (as goods might be delayed and creditor might have no control over such delays). This is not to say that "physical receipt" would not create a similar "absurd results". In other words, whether "receipt" means (a) "delivery at the port of origin", or (b)

---

and under Incoterm FOB is not the time of delivery at the port of origin but at boarding.

[5]As Debtors may be aware a delay between delivery of goods at the port and boarding or loading the goods

"loading at vessel", or (c) "Physical delivery", they all may create the type of "absurd results"

referenced by the Debtors.

27.     Furthermore, Debtors' definition of "receipt" under 503(b)(9) conflate the transfer

of risk of loss with the transfer of title. Receipt of goods and transfer of risk of loss may occur at

the same time, but not always. In many situations, the seller may be allowed to divert goods in

transit upon learning of the buyer's inability to perform, including an inability to pay, even after

the risk of loss and damage has already passed to the buyer[6].  It would create a lot more of an

absurd result if the seller lawfully and properly diverts delivery and cancel the contract, thereby

revesting title in the seller when a buyer has already "constructively received" (if "received" was

to mean "transfer of risk") these same goods from the seller. Furthermore, Debtors' position, in

this case, can be summarized as: section 503(b)(9) should be limited to prepetition receipt of

transaction arising prepetition, and section 503(b)(1) to post-petition receipt of transactions

arising post-petition, while creditors which claim value associated with post-petition receipt of

transactions arising prepetition should be classified as unsecured credit. This creates even more

of an absurd result, as further explained below.

28.     Accordingly, Debtors' definition of "receipt" as the transfer of risk of loss and

damage would create a lot of more absurd results than a definition of "receipt" as "physical

receipt".

### AS A MATTER OF FACT AND UNDER EQUITY AND BANKRUPTCY PRINCIPLES KG DENIM'S CLAIMS SHOULD MAINTAIN ITS STATUS AS ADMINISTRATIVE CLAIMS

---

at a vessel is not uncommon and might not be caused by creditor.
    [6]As Debtors are aware, the UCC and CISG allow a seller to divert goods in transit upon learning of the buyer's inability to perform, including an inability to pay.

29.     As indicated above, KG Denim's goods under Claim 1363 and a Portion of Claim 1362 were received within the 20-day period under 503(b)(9) and fulfill the requirements of section 503(b)(9). Alternatively, if this Court, however, finds for any reason (a) that the goods under KG Denim's claims No. 1363 and a Portion of Claim No. 1362 were physically received after the petition date, and/or (b) that as a matter of law such claims do not fulfill the requirements for 503(b)(9) or 503(b)(1), under equity principles and principles of bankruptcy law, and based on the particular facts of the dealings between Debtors and Creditor KG Denim and in order to avoid injustice, Creditor's claim No. 1363 and a Portion of claim No. 1362 should be considered administrative expenses.

30.     Claim 1363 and a Portion of Claim 1362 under equity and bankruptcy principles and in view of the specific facts of the Debtors' relationship with KG Denim should maintain its status as administrative claims.

31.     The Bankruptcy Code and its legislative history show that sections 546(c) and 503(b)(9) operate to "enhance certain types of reclamation claims." In re Circuit City Stores, Inc., 432 B.R. at 229.  As noted by several courts, the situation presented in this case is what the drafters of BAPCPA envisioned when they amended section 546(c)(2) and enacted section 503(b)(9) to enhance certain types of reclamation claims. (In Re Ow Bunker Holding North America Inc., Bankr. Court, D. Connecticut 2019 citing Circuit City I, 416 B.R. at 536; Circuit City II, 432 B.R. at 229).

32.     If the Court limits (i) classification of credit under 503(b)(9) to prepetition receipt of transaction arising prepetition, and (ii) classification of credit under 503(b)(1) to post-petition receipt of transactions arising post-petition, (iii) creditors which claim value associated with

post-petition receipt of transactions arising prepetition may not have an administrative claim.

There is no indication that the legislature intended to create such distinction, and it would

improperly limit the enhancement of reclamation claims. Referenced situations would create a

lot more of an "absurd result" than the one described by Debtors in its Objection and would

result in similarly situated credits to be classified differently.

33.     It would be inequitable and against bankruptcy principles, to allow credit in

scenario (i) and (ii) to be classified as an administrative claim, but not (iii).  At least as matter

equity and based on the particular facts of the dealings between Debtors and Creditor KG Denim,

and in order to avoid injustice, Creditor's Claim 1363 and a Portion of Claim 1362 should be

considered administrative expenses.

34.     Furthermore, as to Debtors assertions in this action, even if this Court holds that

as a matter of law the doctrine of judicial estoppel does not apply to allow KG Denim's post-

petition receipt of goods shipped prepetition, under equity principles and principles of

bankruptcy law, KG Denim's claims 1363 and a Portion of Claim 1362 should be maintained as

administrative claim status.

35.     Judicial estoppel rests on the principle that "absent any good explanation, a party

should not be allowed to gain an advantage by litigation on one theory, and then seek an

inconsistent advantage by pursuing an incompatible theory." Ryan Operations G.P. v. Santiam-

Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996).

36.     From the very outset of these chapter 11 cases, the Debtors requested that KG

Denim and other vendors continue to ship goods in further support of the Debtors' reorganization

efforts. See Shipping Motion at ¶ 33 ("Without the support of their vendors, the Debtors will

incur significant costs and lose valuable business relationships to the detriment of all parties in

interest."). In furtherance of this request, the Debtors assured vendors that they would be fully

paid in the ordinary course of business for goods shipped but not yet delivered to the Debtors by

the Petition Date (the "In-Transit Goods"), even though the sale of such goods was based on

prepetition orders. See Shipping Motion at ¶ 20 "([T]he Debtors seek an order confirming

administrative expense priority under section 503(b) of the Bankruptcy Code to all undisputed

Prepetition Orders and authorizing the Debtors to satisfy such obligations in the ordinary course

of business."). Over a year and three months after such representations and assurances, Debtors

file their objection to KG Denim's claims.

37.         As a number of courts within this district have concluded, a post-petition

transaction exists if a debtor in possession induces a third party to take action. E.g., In re Enron

Corp., 279 B.R. 695, 705 (Bankr. S.D.N.Y. 2002) (holding services performed by creditor must

have been "induced" by the debtor-in-possession, not the prepetition debtor) performed In re

WorldCom, Inc., 308 B.R. 157, 166 (Bankr. S.D.N.Y. 2004) (same); In re AppliedTheory Corp.,

312 B.R. 225, 238 n. 59 (Bankr. S.D.N.Y. 2004) (same). There is no question that the Debtors

induced vendors to continue shipping goods and, perhaps more importantly, to stand down on

any attempt to interrupt or interfere with the delivery of the In-Transit Goods.

38.    Accordingly, if this Court finds for any reason (a) that the goods under KG

Denim's claims No. 1363 and a Portion of Claim No. 1362 were physically received after the

petition date, and/or (b) that as a matter of law such claims do not fulfill the requirements for

503(b)(9) or 503(b)(1), as matter equity and bankruptcy principles, and based on the particular

facts of the dealings between Debtors and Creditor KG Denim, and in order to avoid injustice

and different classification of similarly situated creditors, KG Denim's claim No. 1363 and a

Portion of claim No. 1362 should maintain its administrative claim status.

**RESERVATION OF RIGHTS**

39.     This Opposition is filed with a full reservation of rights, including the right to amend and/or supplement this Opposition in all respects and to make such additional arguments at the Hearing on the Omnibus Objection.

40.     Creditor further reserves the right to fully claim that KG Denim's claims fulfill the requirements of section 503(b)(1), including the right to fully brief this Court on this issue.

**CONCLUSION**

**WHEREFORE**, for the foregoing reasons, KG Denim respectfully requests that the Court overrule the Eleventh Omnibus Objection and enter an Order (i) finding KG Denim's claim No. 1363 and a Portion of Claim No. 1362 to be administrative claims under 11 U.S.C. §§ 503(b)(9), or 503(b)(1), or under equity and/or bankruptcy principles, (ii) directing the Debtors to immediately pay KG Denim's claim No. 1363 and a Portion of Claim No. 1362 pursuant to 11 U.S.C. § 507(a)(2), and (iii) granting such other relief as the Court deems just and proper.

DATED: March 3, 2020          /s/ Luiz Felipe de Oliveira
                              Luiz Felipe de Oliveira
                              Email: loliveira@steinip.com
                              STEIN IP, LLC
                              1990 M St NW #610, Washington, DC
                              20036
                              Telephone:  (202) 216-9505 Direct (202)
                              594-2055
                              Email: loliveira@steinip.com