Page 1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 18-23538-rdd

5

6   - - - - - - - - - - - - - - - - - - - - -x

7

8   In the Matter of:

9

10   SEARS HOLDINGS CORPORATION, et al.,

11

12                Debtors.

13

14   - - - - - - - - - - - - - - - - - - - - -x

15

16                United States Bankruptcy Court

17                300 Quarropas Street, Room 248

18                White Plains, New York

19

20                June 20, 2019

21                10:06 AM

22

23   B E F O R E :

24   HON. ROBERT D. DRAIN

25   U.S. BANKRUPTCY JUDGE

Page 2

1    18-23538-rdd Sears Holdings Corporation, et al.

2    Ch 11

3

4    Notice of Agenda of Matters Scheduled for Hearing on

5    June 20, 2019 at 10:00 a.m.

6

7    Motion of Milton Manufacturing, LLC to Allow and Compel

8    Payment of Administrative Expense Claim Under 11 U.S.C.

9    §503(b) for Craftsman Branded Goods Delivered to the Debtor

10   Post-Petition Filed by Joel D. Applebaum on behalf of Milton

11   Manufacturing, LLC [ECF No. 1477]

12

13   Third Omnibus Objection of Debtors to Motions for Relief

14   from Stay [ECF No. 3877]

15

16   Motion to Compel Payment of Post-Petition Rent and Related

17   Lease Obligations Pursuant to 11 U.S.C. §§ 105(a), 363(e),

18   (365(d)(3) and 503(b)(1)(A) and to Pay All Subsequent

19   Amounts Owed On a Timely Basis Filed by Robert L. LeHane on

20   behalf of Trustees of the Estate of Bernice Pauahi Bishop,

21   [document #2414]

22

23   Omnibus Objection of Transform to Licensor and Landlord

24   Motions to Compel Filed by Luke A. Barefoot on Behalf of

25   Transform Holdco LLC [ECF No. 2832]

Page 3

1

2    Debtors' Response and Reservation of Rights with Respect to

3    Motion of Trustees of the Estate of Bernice Pauahi Bishop,

4    d/b/a Kamehameha Schools, LLC to Compel Payment of

5    Post-Petition Rent and Related Lease Obligations Pursuant to

6    11 U.S.C. §§ 105(a), 363(e), 365(d)(3) and 503(b)(1)(A)

7    and to Pay all Subsequent Amounts Owed on a Timely Basis

8    [ECF No. 3169]

9

10   Motion for Entry of an Order Pursuant to Section 1114(d) of

11   the Bankruptcy Code Directing the Appointment of a Committee

12   of Retired Employees Filed by James N. Lawlor on Behalf of

13   Richard Bruce, Ronald Olbrysh [ECF No. 4054]

14

15   Debtors' Objection to Motion of Retirees Pursuant to Section

16   1114(d) of the Bankruptcy Code Filed by Jacqueline Marcus

17   [ECF No. 4238]

18

19

20

21

22

23

24

25

Page 4

1    Qualified Joinder of the Official Committee of Unsecured

2    Creditors to the Debtors' Objection to Motion of Retirees

3    Pursuant to Section 1114(d) of the Bankruptcy Code Filed by

4    Ira S. Dizengoff on Behalf of Official Committee of

5    Unsecured Creditors of Sears Holdings Corporation, et al.

6    [ECF No. 4239]

7

8    Motion of Jeffrey Pfeiffer for Relief from the Automatic

9    Stay to Allow Civil Litigation on Appeal to Proceed Filed by

10   David J. Gallagher on Behalf of Jeffrey Pfeiffer [ECF No.

11   2633]

12

13   Second Omnibus Objection of Debtors to Motions for Relief

14   from Stay Filed by Garret A. Fail on Behalf of Sears

15   Holdings Corporation [ECF No. 3149]

16

17   Motion of Santa Rosa Mall, LLC for Relief from the Automatic

18   Stay and Memorandum in Support Thereof and/or to Declare

19   that the Insurance Proceeds Are Not Part of the Bankruptcy

20   Estate Filed by Sonia E. Colon on Behalf of Santa Rosa Mall,

21   LLC [ECF No. 3475]

22

23

24

25

1   Debtors' Objection to Motion of Santa Rosa Mall, LLC for

2   Relief from the Automatic Stay and Memorandum in Support

3   Thereof and/or to Declare that the Insurance Proceeds Are

4   Not Part of the Bankruptcy Estate [ECF No. 4224]

5

6   Notice of Assumption and Assignment of Additional

7   Designatable Leases [ECF No. 3298]

8

9   Supplemental Objection of Bradshaw Westwood Trust to

10  (1) Debtors' Proposed Cure Amount and Possible Assumption

11  and Assignment of Lease, and (2) Notice of Assumption and

12  Assignment of Additional Designatable Leases, and

13  Supplemental Demand for Security Pursuant to

14  11 U.S.C. § 365(l) [ECF No. 3579]

15

16  Supplemental Objections to Cure Amount, Adequate Assurance

17  Information, and Restrictive Covenant Conditions of Landlord

18  Starboard Platform Brighton JV LLC in Response to Notice of

19  Assumption and Assignment of Additional Designatable Leases

20  [ECF No. 3851]

21

22  KDI Rivergate Mall, LLC's (A) Objection to Notice of

23  Assumption and Assignment of Additional Designatable Leases,

24  (B) Objection to Proposed Cure Amount, and (C) Restrictive

25  Covenant Objection [ECF No. 3544]

Page 6

Supplemental Objection of Vornado Realty L.P. and Certain of

its Wholly-Owned and Controlled Subsidiaries, as Landlord,

to Transform Holdco LLC's Notice of Assumption and

Assignment of Additional Designatable Lease [ECF No. 3529]


Supplemental Objection of Interprop Bedford, LLC, as

Landlord, to Transform Holdco LLC's Notice of Assumption and

Assignment of Additional Designatable Leases [ECF No. 3526]


Motion of Tata Consultancy Services Ltd. to Allow and Compel

Payment of Administrative Expense Claim Under

11 U.S.C. § 503(b)(1)(A) for Services Performed

Post-Petition [ECF No. 3949]


McAndrews, Held and Malloy's First Interim Fee Application

for Compensation Earned from October 15, 2018 Through

February 28, 2019 [ECF No. 3087]


FEE MATTERS

First Application for Final Professional Compensation of

Wachtell, Lipton, Rosen & Katz for Amy R. Wolf, Debtors'

Attorney; Period:  10/15/2018 to 3/18/2019 [ECF No. 3185]

Page 7

1   First Interim Fee Application of Akin Gump Strauss Hauer &

2   Feld LLP as Counsel to the Official Committee of Unsecured

3   Creditors for Allowance of Compensation for Services

4   Rendered and Reimbursement of Expenses for the Period of

5   October 24, 2018 Through and Including February 28, 2019

6   [ECF No. 3190]

7

8   First Interim Fee Application of Young Conaway Stargatt &

9   Taylor, LLP, as Conflicts Counsel for the Debtors for the

10  Period from October 15, 2018 through February 8, 2019 [ECF

11  No. 3191]

12

13  First Interim Application of Houlihan Lokey Capital, Inc.,

14  Investment Banker to the Official Committee of Unsecured

15  Creditors for Interim Allowance of Compensation for

16  Professional Services Rendered and Reimbursement of Actual

17  and Necessary Expenses Incurred from October 29, 2018

18  Through February 28, 2019 [ECF No. 3194]

19

20  First Interim Application of FTI Consulting Inc., Financial

21  Advisor to the Official Committee of Unsecured Creditors of

22  Sears Holdings Corporation, et al., for Interim Allowance of

23  Compensation and Reimbursement of Expenses for the Period

24  from October 25, 2018 Through February 28, 2019 [ECF No.

25  3195]

1

2    First Application for Interim Professional Compensation of

3    Prime Clerk LLC, as Administrative Agent to the Debtors, for

4    Services Rendered and Reimbursement of Expense for the

5    Period from the Commencement Date Through February 28, 2019

6    [ECF No. 3196]

7

8    First Application for Interim Professional Compensation of

9    Evercore Group L.L.C. for Allowance of an Administrative

10   Claim for Compensation for Services Rendered and

11   Reimbursement of Expenses Incurred as Investment Banker to

12   the Debtors for the Period from October 15, 2018 Through and

13   Including March 14, 2019 [ECF No. 3204]

14

15   First Application for Interim Professional Compensation of

16   Alvarez & Marsal North America, LLC as Financial Advisors

17   for the Debtors from October 15, 2018 Through February 28,

18   2019 [ECF No. 3205]

19

20   First Application for Interim Professional Compensation of

21   Stout Risius Ross, LLC, Real Estate Consultant and Advisor

22   for the Debtors, for the Period from November 21, 2018

23   Through and Including February 28, 2019 [ECF No. 3206]

24

25

Page 9

1    First Application for Interim Professional Compensation of

2    Paul, Weiss, Rifkind, Wharton & Garrison LLP, Attorneys for

3    the Debtors and Debtors in Possession, for the Period from

4    October 15, 2018 Through and Including February 28, 2019

5    [ECF No. 3207]

6

7    First Interim Fee Application of Deloitte Transactions and

8    Business Analytics LLP for Compensation for Services

9    Rendered and Reimbursement of Expenses Incurred as

10   Bankruptcy Advisor from November 1, 2018 Through February

11   28, 2019 [ECF No. 3213]

12

13   First Interim Fee Application of Deloitte Tax LLP for

14   Compensation for Services Rendered and Reimbursement of

15   Expenses Incurred as Tax Services Provider From October 5,

16   2018 Through February 28, 2019 [ECF No. 3220]

17

18   First Interim Fee Application of Deloitte & Touche LLP for

19   Compensation for Services Rendered and Reimbursement of

20   Expenses Incurred as Independent Auditor and Advisor from

21   October 5, 2018 Through February 28, 2019 [ECF No. 3223]

22

23   First Interim Fee Application of Lazard Freres & Co. LLC,

24   Investment Banker to the Debtors, for the Period from

25   October 15, 2018 through February 28, 2019 [ECF No. 3217]

1

2    First Application of Weil, Gotshal & Manges LLP, as

3    Attorneys for Debtors, for Interim Allowance of Compensation

4    for Professional Services Rendered and Reimbursement of

5    Actual and Necessary Expenses Incurred from October 15, 2018

6    Through and Including February 28, 2019 [ECF No. 3224]

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Lisa Beck

1    A P P E A R A N C E S :

2    WEIL GOTSHAL & MANGES LLP

3         Attorneys for the Debtors and Debtors-in-Possession

4         767 Fifth Avenue

5         New York, NY 10153

6

7    BY:  GARRETT A. FAIL, ESQ.

8         JACQUELINE MARCUS, ESQ.

9         OLGA F. PESHKO, ESQ.

10

11   PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

12        Attorneys for the Debtors and Debtors-in-Possession

13        1285 Avenue of the Americas

14        New York, NY 10019

15

16   BY:  ROBERT A. BRITTON, ESQ.

17        PAUL BASTA, ESQ.

18

19   YOUNG CONAWAY STARGATT & TAYLOR LLP

20        Conflicts Counsel for the Debtors

21

22

23   BY:  RYAN M. BARTLEY, ESQ. (TELEPHONICALLY)

24

25

Page 12

1    AKIN GUMP STRAUSS HAUER & FELD LLP

2         Attorneys for the Official Committee of Unsecured

3          Creditors

4         One Bryant Park

5         New York, NY 10036

6

7    BY:  SARA L. BRAUNER, ESQ.

8         PHILIP C. DUBLIN, ESQ.

9

10   U.S. DEPARTMENT OF JUSTICE

11        Office of the United States Trustee

12        201 Varick Street

13        Suite 1006

14        New York, NY 10014

15

16   BY:  RICHARD C. MORRISSEY, AUST

17

18   U.S. DEPARTMENT OF LABOR

19        Office of the Solicitor

20        200 Constitution Avenue, NW

21        Washington, DC 20210

22

23   BY:  LEONARD H. GERSON, ESQ.

24

25

Page 13

1   PENSION BENEFIT GUARANTY CORPORATION

2       United States Government Agency

3       1200 K Street NW

4       Washington, DC 20005

5

6   BY:  MICHAEL I. BAIRD, ESQ.

7

8   CLEARY GOTTLIEB STEEN & HAMILTON LLP

9       Attorneys for Transform Holdco LLC and Its Affiliates

10      One Liberty Plaza

11      New York, NY 10006

12

13  BY:  KATE MASSEY, ESQ.

14      LUKE A. BAREFOOT, ESQ.

15

16  BALLARD SPAHR LLP

17      Attorneys for Fee Examiner, Paul Harner

18      919 North Market Street

19      11th Floor

20      Wilmington, DE 19801

21

22  BY:  TOBEY DALUZ, ESQ. (TELEPHONICALLY)

23

24

25

```
 1   BALLARD SPAHR LLP

 2        Attorneys for Fee Examiner, Paul Harner

 3        300 East Lombard Street

 4        18th Floor

 5        Baltimore, MD 21202

 6

 7        PAUL HARNER, ESQ. (TELEPHONICALLY)

 8

 9   LAW OFFICE OF WILLIAM P. FENNELL, APLC

10        Attorneys for Dart Warehouse, Inc., Creditor

11        600 West Broadway

12        Suite 930

13        San Diego, CA 92101

14

15   BY:  WILLIAM P. FENNELL, ESQ. (TELEPHONICALLY)

16

17   ROBBINS SCHWARTZ NICHOLAS LIFTON & TAYLOR, LTD.

18        Attorneys for Community Unit School District

19        55 West Monroe

20        Suite 800

21        Chicago, IL 60603

22

23   BY:  KENNETH M. FLOREY, ESQ. (TELEPHONICALLY)

24

25
```

Page 15

```
 1   GENSBURG, CALANDRIELLO & KANTER, P.C.

 2        Attorneys for Community Unit School District

 3        200 West Adams Street

 4        Suite 2425

 5        Chicago, IL 60606

 6

 7   BY:  MATTHEW T. GENSBURG, ESQ. (TELEPHONICALLY)

 8

 9   ARCHER & GREINER, P.C.

10        Attorneys for Community Unit School District

11        630 Third Avenue

12        New York, NY 10017

13

14   BY:  ALLEN G. KADISH, ESQ. (TELEPHONICALLY)

15

16   SEYFARTH SHAW LLP

17        Attorneys for Wilmington Trust, N.A., as Trustee

18        620 Eighth Avenue

19        New York, NY 10018

20

21   BY:  EDWARD M. FOX, ESQ. (TELEPHONICALLY)

22

23

24

25
```

Page 16

1   MOTHERWAY & NAPLETON LLP

2       Attorneys for Jeffrey Pfeiffer, Creditor

3       140 South Dearborn Street

4       Suite 1500

5       Chicago, IL 60603

6

7   BY:  DAVID J. GALLAGHER, ESQ. (TELEPHONICALLY)

8

9   FERRAIUOLI LLC

10      Attorneys for Santa Rosa Mall, LLC

11      390 North Orange Avenue

12      Suite 2300

13      Orlando, FL 32801

14

15  BY:  SONIA E. COLON, ESQ.

16      GUSTAVO A. CHICO-BARRIS, ESQ.

17

18  WOLLMUTH MAHER & DEUTSCH LLP

19      Attorneys for Richard Bruce and Ronald Olbrysh

20      51 JFK Parkway

21      First Floor West

22      Short Hill, NJ 07078

23

24  BY:  JAMES N. LAWLOR, ESQ.

25

Page 17

1   SQUIRE PATTON BOGGS (US), LLP

2        Attorneys for KDI Rivergate Mall, LLC, Creditor

3        30 Rockefeller Plaza

4        New York, NY 10112

5

6   BY:  NORMAN N. KINEL, ESQ. (TELEPHONICALLY)

7

8   MILBANK LLP

9        Attorneys for Cyrus Capital Partners, L.P.

10       2029 Century Park East

11       33rd Floor

12       Los Angeles, CA 90067

13

14  BY:  THOMAS R. KRELLER, ESQ. (TELEPHONICALLY)

15

16  KELLEY DRYE & WARREN LLP

17       Attorneys for JLL & Brookfield, Creditor

18       101 Park Avenue

19       New York, NY 10178

20

21  BY:  MAEGHAN J. MCLOUGHLIN, ESQ. (TELEPHONICALLY)

22

23

24

25

Page 18

1    VEDDER PRICE, P.C.

2         Attorneys for Northstar Group Services

3         1633 Broadway

4         31st Floor

5         New York, NY 10019

6

7    BY:  MICHAEL L. SCHEIN, ESQ. (TELEPHONICALLY)

8

9    STOUT RISIUS & ROSS LLC

10        Attorneys for Interested Party, Stout Risius & Ross LLC

11        150 West Second Street

12        Suite 400

13        Royal Oak, MI 48067

14

15   BY:  KYLE E. WILLIAMS, ESQ. (TELEPHONICALLY)

16

17   WACHTELL LIPTON ROSEN & KATZ LLP

18        Attorneys for Wachtell Lipton Rosen & Katz, Interested

19         Party

20        51 West 52nd Street

21        New York, NY 10019

22

23   BY:  AMY R. WOLF, ESQ. (TELEPHONICALLY)

24

25

```
 1                    P R O C E E D I N G S

 2              THE COURT:  Please be seated.  Okay.  Good

 3      morning.  In re Sears Holdings Corporation.

 4              MR. SCHROCK:  Good morning, Your Honor.  Ray

 5      Schrock, Weil, Gotshal & Manges, on behalf of the debtors.

 6      I'm here with my partners, Jacqueline Marcus and Garrett

 7      Fail.

 8              THE COURT:  Good morning.

 9              MR. SCHROCK:  Good morning.

10              Your Honor, before we move into the agendas -- the

11      matters set for agenda today, I did want to note just a very

12      important case development for the Court and parties-in-

13      interest.

14              Your Honor, I'm very pleased to announce that

15      following the disclosure statement hearing and after several

16      rounds of good faith, efforts to settle all plan terms with

17      the unsecured creditors' committee, the debtors and the

18      unsecured creditors' committee have agreed in principle on

19      the terms of a global settlement for the UCC support of a

20      plan of liquidation.

21              I'll highlight some of the key terms and just

22      address a couple of scheduling matters related to them.

23              In terms of the liquidating trust board

24      composition, we've agreed to make a change.  It was

25      previously a three-member board to whom the debtors won from
```

Page 20

1    the UCC.  We're going to a five-member board, three

2    designated by the UCC in the very near term, two that would

3    be designated by the debtors.  The designees will not be

4    current holders of claims against the debtors' estate.  We

5    are putting a disclosure in the liquidating -- we're putting

6    a disclosure related to liquidating trust funding that we --

7    to reflect an anticipated funding of $25 million into the

8    litigation trust.  That will not be a condition precedent

9    but that is a disclosure item.

10           We've also agreed upon factors to be considered in

11   selecting a liquidating trustee as well as primary

12   litigation counsel for the liquidating trust.  And we have a

13   procedure that all of the parties have agreed upon for

14   selecting those board members in the near term, selecting

15   counsel in the near term, and then if there's a disagreement

16   that there can be parties -- a way for parties to raise

17   objection relating to those selection items.  We're very

18   hopeful that won't ever be necessary but it was really built

19   around kind of driving consensus where four out of five

20   members would have to agree and that the standard would be

21   the best interest of the estate.

22           We've also given the UCC consent rights related to

23   settling estate causes of action related to APA settlement

24   issues to the extent they result in a settlement or

25   impairment of estate causes of action, 507(b) issues as well

1    as administrative claim issues.

2          This was not easy but it was well worth it.  As a

3    result, we did have a delay in commencing solicitation.

4    But -- and as a result, just mechanically, Your Honor, I

5    think it's impossible to get there by July 23rd.  I still

6    think it will be an immense savings for the estate not

7    having the debtors and the unsecured creditors' committee

8    litigating with one another over these items and other plan

9    related items.  So we're working with the UCC on those plan

10   modifications.

11         We've notified certain of the key

12   parties-in-interest including the second lienholders, the

13   so-called 507(b) claims holders, the United States trustee

14   and, you know, we're quite hopeful that this will at least

15   eliminate one key barrier to confirmation of the debtors'

16   plan.  And what we'd like to do is just talk with parties

17   about the -- and with the Court-- I know we've been in touch

18   with the Court about a -- with your deputy around another

19   revised date in August for confirmation.

20         I think we need to huddle up with the unsecured

21   creditors' committee and the parties to make sure that we

22   can make sure everyone's available and ensure those dates in

23   August, come back to the Court and I think related to the

24   507(b) litigation, which has its own separate schedule,

25   we're just going to huddle up with the parties around -- in

Page 22

1    light of the adjourned confirmation date and if there's any

2    issues around scheduling for that piece of the litigation,

3    we would come back to the Court and address it in a separate

4    scheduling conference.

5              THE COURT:  Okay.

6              MR. SCHROCK:  Okay.

7              THE COURT:  All right.  Well, this is obviously a

8    good development.  Based on your summary, it does not seem

9    to me that you need to circulate another disclosure

10   statement and get another disclosure statement approval

11   hearing scheduled, that you can simply amend the disclosure

12   statement that was previously approved.  You still have the

13   blackline with all the changes addressing the committee's

14   objections so that should be fairly easy to deal with.

15             It doesn't sound like these are -- these are

16   important but it doesn't sound like these are complicated

17   provisions to spend a lot of time drafting --

18             MR. SCHROCK:  Correct.

19             THE COURT:  -- redrafting the plan over.  So --

20             MR. SCHROCK:  That's right, Your Honor.  And the

21   key -- I should have mentioned.  These are not economic

22   terms so --

23             THE COURT:  Well, they're important terms.

24             MR. SCHROCK:  -- but they're important terms --

25             THE COURT:  Right.

1          MR. SCHROCK:  -- in terms of I think that from a

2   focus of some of the other parties-in-interest that these

3   were not things that would change any of the numbers that

4   were in the disclosure statement --

5          THE COURT:  Right.

6          MR. SCHROCK:  -- previously circulated.

7          THE COURT:  Except hopefully, it'll reduce the

8   cost of the case.

9          MR. SCHROCK:  Yes.  Yes.  That is our hope, Your

10  Honor.

11         THE COURT:  Okay.  I guess one question I had is

12  in addition to just the drafting, which should be fairly

13  simple, and making sure that the August dates or date works,

14  is there any other -- you mentioned that people would be

15  nominating various people?

16         MR. SCHROCK:  Uh-huh.

17         THE COURT:  But is that contemplated to be done

18  within the time frame we're focusing on here?

19         MR. SCHROCK:  Yes, Your Honor.  So we're

20  contemplating that we would nominate respective board

21  members in the very near term --

22         THE COURT:  Okay.

23         MR. SCHROCK:  -- over the coming days, that those

24  parties would then begin the selection of professionals in

25  advance of the confirmation hearing.  But we think it's

1    important to resolve certain key issues prior to -- like

2    around the APA, for instance, and other issues, you know, in

3    advance of confirmation before that happens.

4              THE COURT:  Okay.

5              MR. SCHROCK:  But we're still -- I would give you

6    specific dates but we're literally still going back and

7    forth in light of the adjourned confirmation hearing date.

8              THE COURT:  Right.  Okay.  Very well.  Do you have

9    anything to add, Mr. Dublin?

10             MR. DUBLIN:  Good morning, Your Honor.  Phil

11   Dublin, Akin Gump, for the committee.

12             The only thing I'd like to add, one, is to thank

13   the debtors and the special committee for their cooperation

14   in reaching the agreement that we did.  And the committee

15   would anticipate and fully expects to be able to submit a

16   letter with the disclosure statement supporting the plan and

17   recommending that parties vote in favor of the plan.

18             As Mr. Schrock mentioned, we expect to have our

19   designees determined within the next day or two with

20   respect --

21             THE COURT:  Oh, okay.

22             MR. DUBLIN:  -- with respect to the board.

23             THE COURT:  All right.

24             MR. DUBLIN:  And then we'll work with the debtors

25   in order to have that board up and running as a shadow board

1    in order to start working on the issues that they need to

2    address as we get towards confirmation and thereafter.

3            THE COURT:  Okay.  Very well.  Thank you.

4            MR. DUBLIN:  Thank you.

5            THE COURT:  All right.

6            MR. SCHROCK:  Your Honor, just one last item.  I

7    was going to get this last but I do want to thank the

8    unsecured creditors' committee, the members of the

9    restructuring committee, the subcommittee and their

10   professionals for working together on this.  This is a very

11   important settlement for the estate.  I don't want to

12   understate it.  It's really a seminal moment in the

13   conclusion of these cases.

14           THE COURT:  Okay.  I agree with that.

15           All right.  Anything else to report or should we

16   just move to the agenda?

17           MR. SCHROCK:  We'll move to the agenda next, Your

18   Honor.

19           THE COURT:  Okay.

20           MS. MARCUS:  Good morning, Your Honor.  Jacqueline

21   Marcus, Weil Gotshal & Manges, on behalf of Sears Holdings

22   Corporation and its affiliated debtors.

23           Before we actually get to the first item on the

24   agenda, Your Honor, I wanted to apologize for the confusion

25   yesterday regarding the agenda letter.  And we had

Page 26

1    inadvertently left off a couple of items and spoke to

2    chambers and I think the preference was that we not refile.

3    So I just wanted to note two matters that are not going

4    forward today but that should have been included on the

5    agenda and that weren't just so that the Court and other

6    parties are aware of the status.

7              THE COURT:  Okay.

8              MS. MARCUS:  The first is the hearing on the

9    motion by QBE Insurance Corporation for relief from the

10   automatic stay for purposes of filing declaratory litigation

11   in the U.S. district court against former directors.  It's

12   ECF number 3910 and the response which was ECF number 421.

13   That motion has been adjourned to the July 11th omnibus

14   hearing date.

15             THE COURT:  Okay.

16             MS. MARCUS:  The second is the notice of

17   presentment of stipulation agreement and order authorizing

18   debtors to assume and assign unexpired nonresidential real

19   property leases for the Quincy, Illinois location.  It's ECF

20   number 3970 and the objection filed by the Victor Reagan

21   Family Trust.  And that's adjourned to the July 11th omnibus

22   hearing date as well.

23             THE COURT:  Okay.

24             MS. MARCUS:  The first item on the agenda, Your

25   Honor, is the motion of the trustees of the estate of

Page 27

1    Bernice Pauahi Bishop doing business as the Kamehameha --

2              THE COURT:  Kamehameha.

3              MS. MARCUS:  Okay.  You got it -- Schools to

4    compel payment of post-petition rent and related

5    (indiscernible).  It's ECF number 2414.

6              THE COURT:  Right.

7              MS. MARCUS:  Your Honor, we've been before you a

8    few times on this matter.  And I'm happy to say we've

9    reached what we think is a very favorable resolution for the

10   benefit of all parties.

11             At the heart of the dispute was the landlord's

12   contention that the relevant lease included an escalation

13   clause and that the post-petition rent paid by the debtors

14   was inadequate in light of the rent increase.  Due to the

15   fact that Transform has the obligation to pay rent during

16   the designation rights period, negotiation of a resolution

17   was really a three-way process.

18             The parties reached an agreement.  And the terms

19   of the agreement are reflected in the proposed order that

20   was filed on June 18th at ECF number 4270.

21             The salient terms of the resolution reflected in

22   the order are as follows:  the lease is rejected as of April

23   15th, 2019.  The amount of the post-petition arrears owed by

24   the debtors is set at $700,428.  Notably, Your Honor, we

25   settled on a revised rental rate that's halfway between what

Page 28

1    the landlord requested and what the debtors contended the

2    revised rent should be.  The landlord also agreed that at

3    this time, it will only seek payment from the debtors of 80

4    percent of that post-petition arrearage amount.  And the 20

5    percent will be treated as an administrative expense claim

6    that will be paid under the plan.

7         The payment to be made by the debtors, which is a

8    payment of approximately $560,000, will be paid from the

9    adequate protection account previously set up for the

10   benefit of the landlord.  That account was in the amount of

11   approximately $759,000.  So there will be about $190,000

12   released to the debtors that they can use.

13        Finally, Transform has agreed to pay the landlord

14   its share of the post-petition arrearage and its share is

15   $487,460 plus a number -- an additional amount for

16   attorneys' fees.

17        So unless you have any other questions, Your

18   Honor, we request the Court enter the proposed order.

19        THE COURT:  So it's going to be a proposed

20   stipulation order or is this just an order --

21        MS. MARCUS:  It's just an order.

22        THE COURT:  -- that will be attached --

23        MS. MARCUS:  That's correct.

24        THE COURT:  The agreement will be attached to

25   it --

Page 29

```
 1                MS. MARCUS:  Actually --

 2                THE COURT:  -- for reference.

 3                MS. MARCUS:  -- the parties just agreed on the

 4      form of the order.

 5                THE COURT:  Okay.

 6                MS. MARCUS:  So we didn't do a stipulation.  It's

 7      just the --

 8                THE COURT:  So the order itself is the

 9      settlement --

10                MS. MARCUS:  That's correct.

11                THE COURT:  -- as well as the order.  Okay.

12                This -- is counsel for the trustees of Bernice

13      Bishop -- are they here?  No?

14                MS. MCLOUGHLIN:  Yes, Your Honor.  I'm on the

15      phone.

16                THE COURT:  Okay.  Anything to add to that, ma'am?

17                MS. MCLOUGHLIN:  No.  We agree with everything

18      counsel has represented.  And we want to thank the parties

19      for resolving this complicated matter.

20                THE COURT:  Okay.  Well, I'm fairly familiar with

21      this matter because it has been carried for quite a while.

22      And you can e-mail the proposed order for entry to chambers.

23                MS. MARCUS:  Thank you, Your Honor.

24                THE COURT:  Thanks.

25                MS. MARCUS:  Number 2, Your Honor, on the agenda
```

Page 30

1    is the 1114 motion filed by certain retirees of Sears.  And

2    that's going to be handled by Mr. Lawlor from the Wollmuth

3    firm.

4            THE COURT:  Okay.

5            MR. LAWLOR:  Good morning, Your Honor.  James

6    Lawlor, Wollmuth Maher & Deutsch, on behalf of retirees,

7    Richard Bruce and Ronald Olbrysh.  That's how you say his

8    name.  So good morning.

9            THE COURT:  Good morning.

10           MR. LAWLOR:  Your Honor, we're here because Sears

11   terminated the life insurance benefits of, roughly, 29,000

12   former employees who were part of a class action that led to

13   a settlement in 2001 which was approved by district court in

14   Chicago in 2001.  And I don't think it's disputed that the

15   settlement itself makes it clear that the benefits would

16   never be reduced or modified beyond the schedule in that

17   settlement.  And as a result, we believe that those benefits

18   were vested.  And I think the (indiscernible) document we've

19   seen that suggests to the contrary is the summary plan

20   description that was circulated in 2007 which is apparently

21   the only plan document that the debtors have been able to

22   find and it contains what appears to be a reservation of

23   rights in that document.

24           Our view is that that document cannot trump a

25   court-approved class action settlement.  It can't amend the

1    terms.  It certainly wasn't agreed to by the, at that time,

2    90,000 employees who were part of the class.

3              THE COURT:  Can I interrupt you just for a second?

4              MR. LAWLOR:  Sure.

5              THE COURT:  The stipulation of settlement wasn't

6    attached in the papers in connection with this motion to

7    form --

8              MR. LAWLOR:  Yes.  They were --

9              THE COURT:  -- a committee.

10             MR. LAWLOR:  I'm sorry.

11             THE COURT:  We dug it out because it was -- when

12   there's an objection to the disclosure --

13             MR. LAWLOR:  Yes.

14             THE COURT:  -- it was attached.

15             MR. LAWLOR:  Yes.

16             THE COURT:  So I have that.  I note that was still

17   subject to the district court's approval.  I don't have that

18   order or -- you know, I don't know whether this is the final

19   version or were there any changes.  Is there any --

20             MR. LAWLOR:  So, Your Honor --

21             THE COURT:  -- understanding on that?

22             MR. LAWLOR:  So let me clarify.

23             THE COURT:  And I appreciate you were class

24   counsel.  So --

25             MR. LAWLOR:  Yeah.  I wasn't class counsel but we

Page 32

1    did do a lot of work to try to find --

2              THE COURT:  You were or weren't?

3              MR. LAWLOR:  I was not.

4              THE COURT:  Oh.  Your colleague was --

5              MR. LAWLOR:  Mr. Mulder was.

6              THE COURT:  -- who appeared last time.  Okay.

7              MR. LAWLOR:  So the actual stipulation was

8    attached to the reply as Exhibit A that we filed on Tuesday

9    which does include all the signature pages because I believe

10   the version that was in the disclosure statement missed the

11   last page.  So that -- we did provide that.

12             The minute order that was provided was attached to

13   the Mulder declaration was the order that we could find.

14   We've requested the Court get the documents from the

15   archives to then produce the actual document and the order

16   that approved the settlement at the fairness hearing.

17             We understand that the archives, they've been sent

18   to Chicago.  We don't know if they're in Chicago.  We

19   haven't found the document yet.

20             THE COURT:  All right.

21             MR. LAWLOR:  So what we have is the settlement

22   that Mr. Mulder believes is the final.  And we have the

23   minute order that says it was approved at a fairness

24   hearing.  The question is was there a modification of that

25   settlement subsequent to the document that we produced.

1          THE COURT:  And he doesn't think --

2          MR. LAWLOR:  We don't believe so.

3          THE COURT:  He doesn't think so.

4          MR. LAWLOR:  No.

5          THE COURT:  Okay.  So my other question is that

6     the class is defined in your stipulation.  In fact, there

7     was an attachment with the list and then a mechanism to add

8     people to the list if before the approval --

9          MR. LAWLOR:  Yes.

10         THE COURT:  -- (indiscernible).  When you refer to

11    the retirees, are you referring to that class or to all

12    retirees including people that retired, you know, in 2010,

13    for example, or after the settlement?

14         MR. LAWLOR:  So as I understand the settlement, it

15    -- only for those employees that were prior to 1997 or

16    there's like a little wedge there in '97.  They were

17    entitled to the members of the class and received a benefit

18    for the balance of their life.

19         THE COURT:  Right.

20         MR. LAWLOR:  Subsequent retirees would not have

21    fallen within that class.

22         THE COURT:  Right.

23         MR. LAWLOR:  So it was a fixed class at that time

24    as I understand it.

25         THE COURT:  So does your motion cover all retirees

Page 34

1    or just those class members?

2              MR. LAWLOR:  It's only with the class members that

3    I've been asked to represent, Your Honor --

4              THE COURT:  Okay.

5              MR. LAWLOR:  -- not all retirees.

6              THE COURT:  All right.  Okay.  Thanks.

7              MR. LAWLOR:  Okay.  So, Your Honor, so we are

8    faced with a situation where the debtor notwithstanding the

9    stipulation, has terminated the benefits --

10             THE COURT:  Right.

11             MR. LAWLOR:  -- which causes a number of issues

12   for a lot of people.  Obviously, the retirees are in a

13   situation where they have to go try to find replacement

14   insurance at 80 years old.  I don't think that's very --

15             THE COURT:  Right.  And this is life insurance.

16             MR. LAWLOR:  -- economical.  It's life insurance.

17   So -- and there are retirees who are, unfortunately, you

18   know, dying daily.  We've had at least three since I've been

19   involved with the case.  I've been told that there are three

20   that have passed away.  And there are a number of retirees

21   that have called us and tried to -- they've tried to find

22   replacement insurance.  And they're still trying.

23             THE COURT:  Can I interrupt you again?

24             MR. LAWLOR:  Sure.

25             THE COURT:  As I read the debtors' response --

Page 35

1    maybe this is more a question for the debtors' counsel.  The

2    insurers have agreed to carry this through August.  So I

3    guess if someone died in June or May, they get the benefit?

4    I --

5              MR. LAWLOR:  I don't think there's --

6              THE COURT:  I don't know the answer to that

7    question.  I wasn't sure what that meant, that sentence

8    meant.

9              MS. MARCUS:  That's true with respect, Your Honor,

10   to the Allstate policy.

11             MR. LAWLOR:  It's only one --

12             MS. MARCUS:  It's a smaller policy.

13             THE COURT:  Okay.

14             MS. MARCUS:  It's not a larger security

15   (indiscernible).

16             THE COURT:  Okay.

17             MR. LAWLOR:  Right.  That's the 12 former senior

18   executives.

19             THE COURT:  Right.

20             MR. LAWLOR:  They've -- that's what the debtors

21   have done with them.  They had not done that for the --

22             THE COURT:  All right.

23             MR. LAWLOR:  -- 29,000 retirees.

24             THE COURT:  If someone unfortunately passes away

25   in that other policy before August, they're --

Page 36

1          MR. LAWLOR:  Right.

2          THE COURT:  -- covered although they -- people who

3     don't --

4          MR. LAWLOR:  Right.

5          THE COURT:  -- should be looking at least, right?

6          MR. LAWLOR:  Right.  The issue, though, that that

7     creates is that, under 1114, if the benefits weren't

8     properly terminated then the debtors breach the vested

9     benefit requirement.  They're now administrative expenses

10    because the way 1114 reads, if you don't properly terminate,

11    you generate an administrative expense priority for the

12    unpaid benefit during that period of time until termination.

13    And there was no preliminary hearing.  There were none of

14    the usual protections for either the estate or the retirees.

15          So we're at the point now where it's been several

16    months.  I understand the debtors have a very delicate case.

17    It's obviously not one of the more solvent large cases that

18    we have.  But it appears to me just from 10,000 feet they're

19    creating more expenses than they're saving because unless

20    those benefits are properly terminated, they're going to

21    have a very large administrative claim.

22          The other big issue that comes in here is I don't

23    know if any of these retirees received notice of a bar date.

24    I don't know if any of these retirees were advised of an

25    administrative bar date.  I suspect none of them have been.

Page 37

1    You know, there's no mechanism in place to tell them that

2    they, in fact, may have a claim.

3              So our view is that a committee could be very

4    helpful to resolve that.  I still think, under 1114, the

5    committee's required.  Once they're vested, I know there's a

6    long -- a lengthy discussion in the debtors' papers about,

7    well, if we have a liquidating plan, things are judged

8    differently.  I think they're judged -- you call the balls

9    strikes on the motion.  You don't judge them before the

10   motion's filed.  And what the debtors are suggesting to the

11   Court is there's only one outcome here.  It's only going to

12   be a rejection.  Why bother with this process.  And I think

13   that presumes a lot of things that really haven't been fully

14   vetted.  I mean, if that was the case, the 60 Yankees would

15   have beat the Pirates and the Patriots would have stayed

16   undefeated.  You have to play the game because we need to

17   figure out what is the best approach.  It may very well be

18   at the end of the day the debtors make the case and it

19   should be rejected, but at least the process will have

20   played out and we'll know how to notify people.  We'll know

21   what their rights and we'll be able to tell them.  I don't

22   think this is a long-term engagement.  I think it's a very

23   quick situation we've got to deal with and get it resolved

24   because every day that goes by, there is a growing

25   administrative expense.

Page 38

1          I also note that Judge Gerber had to deal with

2     this issue and Judge Peck also had to deal with this issue.

3     And they've attached the transcripts, the debtors.  You

4     know, Judge Gerber -- he very thoughtfully thought through

5     it and the benefits weren't vested.  And even at the end of

6     that process, he said, well, it appears the benefits aren't

7     vested but I'm not going to actually deny appointment of a

8     committee.  I'm going to deny without prejudice and you can

9     move to reconsider if you find facts that really support the

10    appointment of a committee.

11          Lehman Brothers, Judge Peck, was even more

12    complicated.  Judge Peck said I'm not appointing a committee

13    but, Debtors, if you want this relief that you've asked for,

14    you're going to go and take care of these people.  And, in

15    fact, I'm pretty sure Lehman retained a lawyer that was

16    funded by the estate who evaluated whether those benefits

17    were actually vested and submitted a report to the Court

18    that explained the whole situation with the benefits.

19          So even in both of those cases, which were

20    liquidating cases essentially, the Court didn't just simply

21    deny the right to an 1114 committee and they actually

22    entered some relief.  Here, we have, in our view, vested

23    benefits.  We think there should be a committee.  What the

24    ultimate relief might be, you know, hopefully, we can come

25    up with something that is amenable and that protects both

Page 39

1     sides of the equation here.

2              With respect to the issue of cost and expense, you

3     know, I recognize that every professional is a dollar for

4     dollar reduction in whatever ends up going to unsecured

5     creditors.  But these are 70, 80, 90 year old retirees who

6     have just been told their benefits are terminated.  They

7     don't know their rights.  They don't understand.  They don't

8     have anybody to represent them.  There's no union.  This is

9     not a situation where there's an alternative.  They're

10    entitled to some representation.  It's not -- you know, I'm

11    not here to negotiate the plan.  I'm not here to start

12    litigation.  I'm here hopefully to get a committee that can

13    perform its service for the benefit of these retirees.

14              THE COURT:  Okay.

15              MR. LAWLOR:  Thank you.

16              THE COURT:  Would you contemplate if I appointed a

17    committee having any other professionals besides counsel?

18              MR. LAWLOR:  I would talk to the debtors about

19    that, but, I mean, if it's somebody that can be -- if they

20    need an actuary, we don't need two actuaries.  If they need

21    someone to cal -- to me, I don't think that it's that

22    complicated, Your Honor, because I think these guys'

23    insurance companies have tables that can figure out what

24    really is the ben -- you know, the cost of the benefit

25    versus what's being given up.  I think the big issue is

Page 40

1    probably notice because when you do -- if it does get

2    rejected, which is probably a good chance, they're going to

3    be noticed to file claims.

4              THE COURT:  Right.  But that wouldn't be a

5    committee responsibility.

6              MR. LAWLOR:  No, it wouldn't be.  But it would be

7    how to reach them.

8              THE COURT:  You'd look at the notice.

9              MR. LAWLOR:  Yeah.

10             THE COURT:  You would obviously look at the

11   notice.

12             MR. LAWLOR:  How to reach them.  I mean, it's --

13             THE COURT:  Right.

14             MR. LAWLOR:  But I don't think it's a -- no

15   accountants, no financial advisors, you know --

16             THE COURT:  Okay.

17             MR. LAWLOR:  Thank you.

18             THE COURT:  All right.  Thank you.

19             Does the government want to say anything more than

20   its statement in support?

21             MR. GERSON:  Leonard Gerson representing U.S.

22   Department of Labor.  Good morning.

23             THE COURT:  Good morning.

24             MR. GERSON:  I agree with what Mr. Lawlor said

25   about the inability of the debtors so far to have -- to

Page 41

1    demonstrate that that stipulation's not enforceable.  And if

2    that stipulation's enforceable, that means that people were

3    vested.  And if people are vested, that means that the

4    exception that the carved out delphi doesn't apply.

5              So Congress was very clear that until a retiree

6    plan was modified through a Section 1114 process, retirees

7    get their benefits.  That's the whole premise of 1114.  So

8    we --

9              THE COURT:  Right.

10             MR. GERSON:  So that's the situation.

11             THE COURT:  I mean, the only disagreement between

12   me and the Visteon court, the Third Circuit, is what it

13   means to modify a plan.  But you're saying that's irrelevant

14   here because they're vested.  The debtors don't have the

15   right under the plan to terminate.

16             MR. GERSON:  That's right.  I mean, once the 1114

17   process begins, then the Court's in a position to exercise

18   its judgment after -- under 1114 --

19             THE COURT:  Right.

20             MR. GERSON:  -- after there's appropriate

21   discussions.

22             THE COURT:  If the benefits are vested.

23             MR. GERSON:  That's right.

24             THE COURT:  Right.  Okay.

25             MR. GERSON:  That's right.  And furthermore, I

Page 42

1    think when this whole thing gets played out, I'm not sure of

2    the best way for the retirees to be protected.  There's

3    going to have to be a -- I'm not sure the retirees, given

4    their age, et cetera, are going to be in a position to

5    participate in the bankruptcy the way your typical creditor

6    would.  There might have to be a special process developed.

7    But that wouldn't have to go on prior to confirmation.

8    There could be a reserve established of some sort.

9              THE COURT:  Well, I'm sorry.  I thought you were

10   just still for the fact that they need a committee because

11   they need a committee.

12             MR. GERSON:  They need a committee.  Need a

13   committee --

14             THE COURT:  With a --

15             MR. GERSON:  -- to work that out.

16             THE COURT:  With a lawyer, yeah.  Okay.

17             MR. GERSON:  Thank you, Your Honor.

18             THE COURT:  Okay.

19             MS. MARCUS:  Jacqueline Marcus again, Your Honor,

20   for Sears.

21             Your Honor, the decision to terminate the

22   retirees' plan was certainly a difficult one for the

23   debtors.  The facts here are very different than the

24   circumstances of most of the cases that we've all read about

25   termination of benefits under 1114.

Page 43

1              The debtors sold substantially all of their assets

2    on February 11th.  In the context of the sale negotiations,

3    the debtors tried to get the buyer to assume these life

4    insurance benefits but the buyer wasn't willing to do that.

5    There's simply no corpus here from which to pay death

6    benefits to 29,000 former Sears employees.  And while the

7    benefit itself to which each employee is entitled is not all

8    that large, when you multiply that by 29,000 employees, it

9    turns out to be a huge number.

10             With respect to the suggestion that the debtors

11   establish a reserve, if we were to do that, it would be $145

12   million and the debtors clearly don't have that kind of

13   money.

14             The suggestion that the debtors would have to pay

15   retiree benefits or make payments for this claim in

16   perpetuity --

17             THE COURT:  No.

18             MS. MARCUS:  -- it's just unrealistic.

19             THE COURT:  But we're here just on the motion to

20   form a committee.

21             MS. MARCUS:  Okay.  Well, I guess our point, Your

22   Honor, and our objection is that the purpose of appointing a

23   committee under 1114 and the whole 1114 process as laid out

24   in the Code, really doesn't make sense in the context of

25   these cases.

Page 44

1              THE COURT:  But there's cases acknowledge that and

2       then nevertheless say that's what Congress said.

3              MS. MARCUS:  I can't really quibble with that,

4       Your Honor.

5              THE COURT:  With the one exception of the case

6       that Judge Lifland disagreed with.

7              MS. MARCUS:  I can't take issue with that, Your

8       Honor, because that's what they say.

9              THE COURT:  Right.

10             MS. MARCUS:  I would note that in the cases where

11      there was a question of whether 1114 applies in a

12      liquidating Chapter 11, it was actually the debtors who were

13      arguing that 1114 should apply and the employees who were

14      arguing that it shouldn't apply.  So the context was a bit

15      different.

16             THE COURT:  Right.

17             MS. MARCUS:  We just don't think that there's any

18      practical point to be served by the appointment of a

19      committee.  And many of the things that were alluded to a

20      few moments ago can be done without a committee.  So to the

21      extent -- and I can't tell the Court today that all of those

22      retirees received notice of the bar date.  I just don't

23      know.  But if they haven't, then the debtors, of course --

24             THE COURT:  Right.

25             MS. MARCUS:  -- would be prepared to extend the

1    bar date for those retirees to allow them to file claims.

2              THE COURT:  But it doesn't seem to me that there

3    is a risk that if the 1114 process isn't gone through --

4    and, of course, Congress did provide that it could be gone

5    through quickly.  A court will rule that these claims go on

6    as administrative expenses through whenever a plan is

7    confirmed.  And then you have also 1129(a)(13) which may

8    prohibit confirmation of a plan.

9              So there's risk in taking a position that only one

10   Court has ever taken before and that Court has been

11   criticized for taking it which is that in liquidation, you

12   shouldn't appoint a retirees committee.

13             MS. MARCUS:  Let me get back to the question of

14   whether the benefits have vested, Your Honor.

15             THE COURT:  Right.

16             MS. MARCUS:  I don't think there's any question

17   although the evidence isn't the strongest.  We don't dispute

18   that the stipulation of settlement is actually the

19   stipulation of settlement.

20             THE COURT:  Right.

21             MS. MARCUS:  That was entered into.  But what we

22   haven't found is any indication that the debtors, in fact,

23   went forward and amended the plan to provide that the

24   benefits would not be changed.

25             THE COURT:  Right.

Page 46

1          MS. MARCUS:  We're at a little bit of a

2     disadvantage given the transition to Transform.  But we have

3     been working with the employees who are now Transform

4     employees to find anything we can find regarding the

5     administration of a plan.  And we just haven't been able to

6     find any amendments.

7          The movants mentioned that all we've provided is

8     that SPD, the summary of plan document -- the summary plan

9     document.  We don't think there is something called the

10    retiree plan separate and apart from that SPD.  And it says

11    in two places that the benefits are subject to change if the

12    debtors -- in the debtors' discretion.

13         THE COURT:  And that's post-2002.

14         MS. MARCUS:  It was 2007, I believe.

15         THE COURT:  Right.  Well, so let me -- so is the

16    debtors' argument that the stipulation isn't the plan itself

17    and so it isn't really covered by 1114?

18         MS. MARCUS:  That is the debtors' argument, Your

19    Honor --

20         THE COURT:  Okay.

21         MS. MARCUS:  -- that the stipulation, in fact,

22    uses --

23         THE COURT:  That this is just a contract claim.

24         MS. MARCUS:  It's a breach claim, exactly.  The

25    stipulation --

Page 47

1              THE COURT:  All right.

2              MS. MARCUS:  -- actually didn't say the plan is

3     hereby amended.  It said the debtors shall amend the plan to

4     provide, et cetera.

5              THE COURT:  Oh, there's probably principles of

6     ERISA that would apply to that, I'm assuming, right?  Maybe

7     not?  I don't know.

8              MS. MARCUS:  I'm not sure, Your Honor, although we

9     have had our ERISA experts involved and they haven't noted

10    anything that would apply.

11             THE COURT:  Okay.  Okay.

12             MS. MARCUS:  Finally, Your Honor, you know, our

13    alternative argument is if the Court sees fit to appoint a

14    committee in light of the debtors' cash position, in

15    particular, we would ask that the Court do what it did in

16    Delphi and limit the amount that the committee's

17    professionals are entitled to spend as well as the scope --

18             THE COURT:  Well, let me just elaborate on that a

19    bit.  When you say in light of the debtors' cash position, I

20    think it's more in light of the fact that the debtors are,

21    in fact, liquidating.  So as Judge Lifland said in

22    Ionosphere, it's not the case here, the anticipated case

23    here, that a retirees committee would be doing the type of

24    work that a retirees committee would be doing in the context

25    of a reorganizing case where you're evaluating, as a union

Page 48

1   would evaluate, and negotiating a request by the debtor to

2   cut benefits in order to enable the debtor to continue in

3   business which is a much more expensive protracted process

4   that involves financial professionals and multi-party

5   negotiations and the like.  This is -- I mean, the debtors'

6   argument is pretty -- it's going to be pretty clear, which

7   is there won't be a debtor to fund these benefits --

8          MS. MARCUS:  That's correct.

9          THE COURT:  -- in the future.

10          MS. MARCUS:  I suspect if there's any role for a

11   retiree committee, it would really be determining the amount

12   of the claims of the retirees --

13          THE COURT:  And/or arguing the debtors' point

14   about vesting and/or arguing what the claim actually is.  I

15   mean, it's still not clear to me when the dollar numbers are

16   cited whether that -- maybe this is -- maybe I just don't --

17   I'm missing a key point about these two insurance plans.

18          Is the class the only beneficiary of these two

19   plans?  Or do the insurance arguably apply to other folks,

20   too?  In other words, when you're paying the premiums, are

21   you paying it for every retiree including those after 1997

22   or is it just for these --

23          MS. MARCUS:  Well, it's --

24          THE COURT:  -- people?

25          MS. MARCUS:  -- only -- I think that the premiums

Page 49

1    are probably for every retiree.

2              THE COURT:  Okay.

3              MS. MARCUS:  But that -- the stipulation of

4    settlement --

5              THE COURT:  Right.

6              MS. MARCUS:  -- only applies to those people who

7    had vested --

8              THE COURT:  Right.  So --

9              MS. MARCUS:  -- before because what happened was

10   there was a change in the reduction of the benefit --

11             THE COURT:  Right.

12             MS. MARCUS:  -- for those people.

13             THE COURT:  So to me, that would be a role that a

14   retiree committee would play, too, which is, okay, who is

15   covered by 1114.  You know, I think this committee would be

16   those -- would be representing those who are in the class

17   and if the debtors and the committee counsel disagree on

18   who's in the class and what the premiums are, you know,

19   monthly premiums -- the monthly premiums are high here for

20   one group at least.  They're high for both.  Then that would

21   be sorted out, too.

22             MS. MARCUS:  I don't know that there's any dispute

23   on that issue, though, Your Honor.  Nobody's come forward

24   who's a more recent retiree and taken issue with the

25   termination of the plan.

Page 50

1              THE COURT:  No.  I understand but the debtors are

2       saying that the monthly cost is x.  But that covers

3       everybody.  Maybe.  But the monthly cost, if it's just the

4       people covered by the stipulation might be x minus a

5       question mark.  And you and a retiree committee that

6       represents those people may have to sort out what that is.

7              MS. MARCUS:  That's true, Your Honor.

8              THE COURT:  It may be easy to do because you know

9       who the people are.

10              MS. MARCUS:  Well, that hasn't seen --

11              THE COURT:  There's a list.

12              MS. MARCUS:  That hasn't been so easy for us to

13       determine --

14              THE COURT:  All right.  Well, I mean --

15              MS. MARCUS:  -- but it turns out we think we do

16       know who they are.

17              THE COURT:  I mean, there is a -- there's an

18       exhibit referred to in the stipulation.

19              MS. MARCUS:  The exhibit to the stipulation --

20       it's a little morbid.  But my understanding is the exhibit

21       to the stipulation had 70,000 names on it.

22              THE COURT:  Yeah.

23              MS. MARCUS:  It's gigantic.

24              THE COURT:  Right.

25              MS. MARCUS:  And over time, because these were

1    elderly people --

2              THE COURT:  Right.  So you have to figure out --

3              MS. MARCUS:  -- the size of this --

4              THE COURT:  -- who's still around from that

5    exhibit.

6              MS. MARCUS:  That's correct.

7              THE COURT:  So that's a function, too.  Okay.  All

8    right.

9              MS. MARCUS:  Thank you, Your Honor.

10             THE COURT:  Does anyone have anything further to

11   say on this?

12             MR. GERSON:  I just want to add, Your Honor, that

13   your inclination was correct.  Under ERISA, you just don't

14   look at the four corners of the "plan" to figure out what

15   the plan document is.  Very often, there is decisions where

16   provisions in state law that are in conflict with the plan

17   terms but are not preempted because ERISA preserves.  State

18   insurance laws are viewed as becoming provisions of the

19   plan.

20             Also, you have the situation in Devlin where --

21             THE COURT:  In what?

22             MR. GERSON:  Devlin.  The Second Circuit case --

23             THE COURT:  Right.

24             MR. GERSON:  -- in Devlin.  It's not just the four

25   corners of the plan.  People can get vested --

1              THE COURT:  Right.  No.  I --

2              MR. GERSON:  You understand.

3              THE COURT:  I mean, I have vivid memories of

4    listening to my ERISA partners and thinking to myself they

5    must feel the same way when I explain bankruptcy law to

6    them.  So I'm sure there's some issue there somewhere.

7    That's why ERISA partners --

8              MR. GERSON:  Thank you.

9              THE COURT:   -- are interesting people.

10             MR. GERSON:  I'm sorry to revive bad memories for

11   you.

12             THE COURT:  No, no.  They're good memories.

13   They're interesting issues.  It's just they're complicated

14   sometimes.

15             MR. LAWLOR:  I won't mention anything about ERISA,

16   Your Honor.

17             THE COURT:  Okay.

18             MR. LAWLOR:  I just note that we attached a letter

19   to our reply dated 2010 which was sent by the insurance

20   company to retirees that expressly mentions the settlement

21   agreement and the litigation.  So --

22             THE COURT:  Right.

23             MR. LAWLOR:  -- everybody was aware that that was

24   governing -- it was a governing document.  So I suspect that

25   no matter what we find, we're going to find that the

Page 53

1    stipulation was always there.  Thank you.

2            THE COURT:  Okay.

3            MR. MORRISSEY:  Good morning, Your Honor.  Richard

4    Morrissey for the U.S. trustee.

5            The U.S. trustee did not put in a pleading.  The

6    U.S. trustee has no position regarding the merits of the

7    motion.  But the U.S. trustee does have a view concerning

8    the last point heading in the debtors' objection which had

9    to do with restricting the scope of the retirees' committee

10   if one is appointed and also putting a cap on fees.

11           We believe, Your Honor, that the committee should

12   not be hamstrung in its ability to carry out its fiduciary

13   duties.  Its mandate, we believe, is already limited by

14   1114.  In other words, unlike a creditors' committee, Your

15   Honor, the retirees' committee would not be ordered to get

16   involved in all aspects of the Chapter 11 case.  I think

17   there's been some colloquy about that just this morning.

18           To the extent that there are any excessive fees by

19   professionals of a retirees' committee those can be

20   addressed in the context of the fee application process.

21   And also, Your Honor, the committee should not have

22   restrictions imposed upon it before it comes into existence.

23           So, Your Honor, with that, again, the U.S. trustee

24   has no position on the underlying motion.  Just if the Court

25   is inclined to grant the motion, there's a restriction and

1    scope already in the statute and there's no reason for the

2    Court to repeat or add to that restriction in the order.

3              Thank you, Your Honor.

4              THE COURT:  There's not a legal prohibition on

5    that, thought, right?  This is just a policy statement?

6              MR. MORRISSEY:  Yes, Your Honor.  We -- if there

7    are people sitting on two sides of the table, one would not

8    have a fee restriction and the other would and we don't

9    think that that would be appropriate in this case.

10             THE COURT:  It's been done repeatedly in all sorts

11   of cases with all sorts of committees.

12             MR. MORRISSEY:  Your Honor, I think in this case,

13   we have a discreet issue.  So to the extent, for example,

14   the debtors -- if you look at fee applications, Your Honor,

15   they'll have a project category to deal with the retirees

16   issue.

17             THE COURT:  Right.

18             MR. MORRISSEY:  They're not restricted with

19   respect to that issue.  And we don't think --

20             THE COURT:  Except as a practical matter.

21             MR. MORRISSEY:  Well, they could be.  And again,

22   both sides have the same restriction which would be the fee

23   application process in terms of reasonableness of the fees.

24        (Pause)

25             THE COURT:  Okay.

Page 55

1           MR. MORRISSEY:  Thank you, Your Honor.

2           THE COURT:  All right.  I have before me a motion

3    to form a committee of retirees under Section 1114 of the

4    Bankruptcy Code.

5           The motion just uses the term "retiree".  However,

6    it refers almost exclusively to a specific class of retirees

7    as defined in a stipulation of settlement dated October 5,

8    2001 and apparently approved in 2002 by the district court

9    for the Middle District of Illinois.  A copy of the

10   stipulation of settlement was attached to the reply and

11   declaration in support of the motion as well as to the

12   disclosure statement objection.

13          It is not clear to me whether that class includes

14   all of the retirees who would be the beneficiaries under the

15   two life insurance plans referred to in the stipulation of

16   settlement and the motion.  And the Sears retiree group life

17   insurance plan that apparently was the vehicle under which

18   those two life insurance policies or programs were set up.

19          This is a relevant issue because the scope and

20   nature of the committee, if I appoint one, are important.

21   Thus far, these insurance policies in the Sears retiree

22   group life insurance plan are the only benefit plans that

23   I'm aware of that would meet the definition of retiree

24   benefits under Section 1114(a) of the Bankruptcy Code.

25   Namely, payments to any entity or person for the purpose of

Page 56

1  providing or reimbursement payments for, among other things,

2  death under any plan, fund or program maintained or

3  established in whole or in part by the debtor prior to the

4  filing of the bankruptcy case.

5            It's important also because the debtors have

6  contended that under the group life insurance plan itself

7  and the policy terms, they have the absolute right to

8  terminate the plan and policies.  That is not contested by

9  the movant except as follows and it's a big exception.  The

10  movant refers to paragraph 3 of the stipulation of

11  settlement that I referred to earlier headed "Creation of

12  Permanent Retiree Life Insurance Benefits for Class Members"

13  wherein the defendants agreed, among other things, that

14  "Except as expressly provided herein, this stipulation of

15  settlement is not subject to any reservation of rights or

16  unilateral change of any kind by Sears.  Within a reasonable

17  period after the final approval of the settlement, Sears

18  will amend the plan and summary plan description to the

19  extent necessary to incorporate paragraphs 3.1, 3.2, 3.3, 7

20  and 8 of the stipulation."

21            3.1 says "Defendants will not accelerate the rate

22  of reduction in the amount of life insurance for any class

23  member beyond that announced in September 1997 communicated

24  to retirees in the form of your personalized life insurance

25  information response form."

1          3.2 provides that "For approved claimants,

2    Defendants will not reduce their retiree life insurance

3    amount to less than the total of $5,000 plus any life

4    insurance reductions foregone and amounts restored, if any,

5    under paragraph 8."

6          And 3.3 provides that "For class members who are

7    not approved claimants, Defendants will not reduce their

8    retiree life insurance amount to less than $5,000."

9          As with many such class action settlements, there

10   was an opt out provision as well as a provision for filing

11   claims which ties into some of those definitions.

12         The movant therefore -- or the movants therefore

13   contend that, in fact, Sears does not have the unilateral

14   ability to terminate the insurance plan and the insurance

15   policies for the class plaintiffs as laid out in the

16   paragraphs that I've just summarized or quoted from.

17         That is important because at least in the Second

18   Circuit, at the lower court level, the courts have

19   interpreted Section 1114 of the Bankruptcy Code to operate

20   under the actual terms of the plan at issue.  Namely, where

21   Section 1114(e)(1) provides:  "Notwithstanding any other

22   provision of this title, the debtor-in-possession shall

23   timely pay and shall not modify any retiree benefits except

24   that" and then there's a mechanism for doing so with the

25   authorized representative of those retirees.

1          The Courts in the Southern District of New York

2     have held that a debtor-in-possession does not modify

3     retiree benefits when the benefits themselves acknowledge

4     the right to modify.  The Third Circuit in In re Visteon

5     Corp., 612 F.3d 210 (3rd Cir. 2010), disagrees with that

6     interpretation, I think somewhat unfairly, contending that

7     it's just a policy interpretation as opposed to interpreting

8     the word "modify" and "plan".  But the motion contends with

9     some force, I believe, that this is really not relevant as

10    to the class members since, under Section 3, Sears agreed

11    not to modify the insurance plan as set forth in that

12    section.

13          But it does appear to me that that agreement, if,

14    in fact, part of the plan, an issue I'm not prepared to

15    decide today in the context of this motion, waived it's

16    right to -- actually, in effect, amended the plan as a

17    matter of law.  So it can't be terminated as to that class.

18    And I'd certainly agree with that analysis.  It's completely

19    consistent with In re Delphi Corp., 2009 Bank. LEXIS 576

20    (Bank. S.D.N.Y. March 10, 2009) and the other cases that the

21    debtors have cited in their objection to the motion.

22          It does not appear to me to be the case that

23    anyone disputes that the plan is, in fact, a retiree benefit

24    as defined in Section 1114.  So if, in fact, there's a

25    serious issue as to whether the debtors have the ability to

1    terminate it as to the class, the appointment of a

2    committee, as I did in Delphi, would be warranted rather

3    than leave that issue hanging and subject the debtors to the

4    risk of violating Section 1114(e) and/or Section 1129(a)(13)

5    when their plan comes up for confirmation.

6           The debtors have also argued that because this is

7    clearly a liquidating case, the debtors have sold

8    substantially all of their assets and they propose a

9    liquidating Chapter 11 plan, Section 1114 shouldn't be read

10   to apply.  There is some logic to that argument given the

11   reference in Section 1114 to reorganization not liquidation

12   and to some of the legislative history especially

13   Congressman's Fish's floor remarks where he seemed to think

14   that there was a distinction between liquidation and

15   reorganization although one could also read those remarks to

16   view this is a distinction between Chapter 7 and Chapter 11.

17          But although the argument has been acknowledged in

18   a number of bankruptcy cases, I'm not aware of any case,

19   except arguably one, that holds that a Court should not

20   appoint a committee or has the discretion not to appoint a

21   committee where it appears one would otherwise be warranted

22   simply because the debtor is in liquidation mode or has

23   liquidated but is still in Chapter 11.

24          I think the best analysis of this actually is in

25   In re SAI Holdings Ltd., 2007 Bank. LEXIS 1051 (N.D. Oh.,

Page 60

1    March 26, 2007) at pages 16 -- I'm sorry -- excuse me -- at

2    pages 12 through 16.  And I adopt that analysis.

3            I also agree with former Chief Judge Lifland's

4    view in In re Ionosphere Clubs Inc., 134 B.R. 515 (Bank.

5    S.D.N.Y. 1991), that Section 1114 applies in liquidating

6    cases.  But when applying the Court's discretion under the

7    statute to consider a request to modify or terminate for

8    retiree benefit, one needs to take into account the fact

9    that the debtor is, in fact, liquidating and not, in

10   essence, present the debtor with a superpriority by

11   employing a more constricted definition of the term

12   "reorganization" in the statute.

13           So I believe a committee should be formed here.

14   There's enough of a serious issue as to the class members

15   that the debtor does not have the right, under the plan

16   itself, to terminate the plan for me to reach that

17   conclusion.  I say that notwithstanding that there's no

18   evidence that the plan itself was ever amended.  And it may

19   be that the debtors would actually be able to convince the

20   Court that the plan itself is still modifiable under

21   applicable law or terminatable at will under applicable law,

22   but given the settlement stipulation and my limited

23   knowledge of ERISA, that's not necessarily an easy argument

24   to win.

25           That leaves the issue as to whether the committee

Page 61

1    should have a budget and/or a limited function here.  I am

2    somewhat reluctant to prescribe the function of the

3    committee definitionally other than saying who it's

4    representing which I think I've already done.  But I do

5    think a budget is warranted here as a reality check subject

6    to, as was the case in Delphi, the right to come back and

7    show the Court that really additional work beyond the budget

8    was warranted.  To me, the major issues here, and perhaps

9    the only issues here for a committee to deal with, are less

10   the rationale behind a rejection or termination of these

11   policies which, unfortunately, given the fact that the

12   debtors are liquidating, colloquially is kind of a no-

13   brainer, unfortunately, but rather who is covered by the

14   stipulation, how those people get notice, what can be done

15   to work with them to get alternative coverage and/or perhaps

16   some funding and the like.

17          Given my sense that many of the beneficiaries of

18   the plan are seniors who would benefit from counsel on those

19   types of issues alone, I think that's certainly well spent

20   time.

21          So I will set a budget of $250,000.  It doesn't

22   mean that it needs to be spent, obviously.  On the other

23   hand, as I said before, if legitimate good faith work led to

24   the incurrence of another 50,000 or something, professional

25   counsel could come back and ask for an increase.

Page 62

1           I don't think that tilts the playing field here.

2      I don't believe the debtors are in any position to overwhelm

3      counsel with their resources given the financial picture of

4      these estates either.  So while the U.S. trustee's concern

5      may be realistic in other cases, I don't think it is here.

6           So I will ask counsel for the movants to e-mail an

7      order granting the motion as I've provided it.  You don't

8      need to formally settle that order but you should provide a

9      copy to counsel for the debtors, to the DOL and to the

10     committee just to make sure it's consistent with my ruling,

11     and the U.S. trustee.

12           MR. LAWLOR:  Thank you, Your Honor.

13           THE COURT:  Thank you.  And I expect the U.S.

14     trustee will promptly form a committee.

15           Okay.

16           MR. SCHROCK:  Thanks very much, Your Honor.

17     Again, Ray Schrock for Weil Gotshal for the debtors.

18           I thank the Court for a quick ruling on this and

19     we'll look forward to sitting down with the retiree

20     committee.  I just want to echo your sentiments.  We

21     certainly will not overwhelm the retiree committee.  We want

22     to approach this issue fairly practically.  We will file an

23     1114 motion just to make sure that we get that relief in

24     front of the Court.  We'll sit down with the retiree

25     committee and address issues including notice, talk to them,

Page 63

1    see if we can come up with an agreement with the other

2    constituents around claims, either claims allowance and

3    whether or not there's some other practical issues we can do

4    for the retirees.  We certainly take no pleasure in

5    terminating anyone's benefits.  And we tried very hard to

6    get the buyer to sort of assume those benefits.  It's not

7    surprising that they wouldn't ultimately agree to it.  We'll

8    get through this quickly and we hope efficiently.

9              THE COURT:  Okay.  All right.

10             MS. PESHKO:  Your Honor, Olga Peshko, Weil

11   Gotshal, for the debtors.

12             The next item on the agenda is number 3, the

13   motion of Jeffrey Pfeiffer for relief from the automatic

14   stay.  Before I turn it over to counsel for the movant, I

15   just wanted to note for the Court that this motion was

16   previously heard at the April omnibus hearing and was

17   adjourned at that time so the debtors could provide evidence

18   that there is no insurance coverage available for the

19   2008/2009 period.  Your Honor, the debtors did provide

20   movant's counsel with confirmation from their insurer,

21   Chubb, that coverage under the policy year -- for the policy

22   year 2008/2009, as well as the years 2005/2006 and

23   2006/2007, has been exhausted.  However, movant's counsel

24   insisted we proceed with this hearing.  So at this time, I

25   will cede the floor to Mr. Gallagher.

Page 64

```
 1                THE COURT:  Before you do that --

 2                MS. PESHKO:  Okay.

 3                THE COURT:  -- the motion says that Mr. Pfeiffer

 4   bought the weed killer going back to 1988.

 5                MS. PESHKO:  He did.

 6                THE COURT:  When did he first assert this claim?

 7   I'm just wondering whether we need to go back beyond the

 8   dates that you have --

 9                MS. PESHKO:  Sure.

10                THE COURT:  -- you confirmed there's no

11   insurance --

12                MS. PESHKO:  Right.

13                THE COURT:  -- because the coverage is exceeded

14   because of statutory limitations issues.

15                MS. PESHKO:  This has only been asserted with this

16   motion.  The actual case has not been filed in any court.

17                THE COURT:  Right.

18                MS. PESHKO:  As I understand it from Mr.

19   Gallagher, the reason that they want to name Kmart is purely

20   for venue reasons.  They want to file this action in Cooke

21   County, Illinois where they believe it is more plaintiff

22   friendly not because Kmart is a necessary party.  And their

23   real intention is to go after two other parties that are not

24   Kmart.

25                THE COURT:  Well, okay.  But --
```

Page 65

1           MR. GALLAGHER:  Your Honor?

2           THE COURT:  Yes.

3           MR. GALLAGHER:  Dave Gallagher on behalf of the

4    movant.  If I may?

5           THE COURT:  Sure.

6           MR. GALLAGHER:  So I did speak with counsel

7    yesterday and I explained to her that one of the issues with

8    regards to why we felt Kmart was a necessary party is for

9    the issue of venue.  But obviously, there's independent

10   state law claims with regards to product liability to apply

11   to Kmart directly.

12          Our claim is that Mr. Pfeiffer purchased this

13   product from Kmart starting in 1988 running through 2014.

14   In Illinois, there's something on the discovery rule which

15   tolls the statute of limitations and a statute of repose.

16   In this case, the issue is the development of certain

17   cancers associated with this product.  There was an article

18   that linked Mr. Pfeiffer's cancer to this product that came

19   out in approximately November of 2017.  So that would be the

20   time that we'd argue that he knew or should have known of

21   the association between an exposure of this product and his

22   injury.

23          With regards to the insurance coverage, it's my

24   understanding that Kmart previously filed bankruptcy, I

25   believe, in 2001 and so any liability that it would have had

Page 66

1    for any actions prior to that time were extinguished in that

2    bankruptcy.  So I guess the relevant time period here would

3    be from that post-bankruptcy period through 2014.

4              THE COURT:  Okay.

5              MR. GALLAGHER:  Counsel has provided me --

6              THE COURT:  No.  Go ahead.

7              MR. GALLAGHER:  I'm sorry, Your Honor.

8              Counsel has provided me with an e-mail from a

9    Chubb representative stating that it's their belief that the

10   general liability policy aggregate limits were exhausted for

11   all years prior to August 1st, 2017 including the policy

12   year of August 1st, 2018 through August 1st, 2019.

13             The reason this is critical is because it relates

14   to paragraph 18 of the debtors' response, which is ECF

15   docket number 3149.  In that paragraph, it states, and I

16   quote, "The Debtors maintained various insurance policies in

17   their history over the prepetition period.  Among them were

18   both general liability and umbrella policies that

19   potentially could have applied in the Movants' Actions."

20             So what the debtors admit is that they have two

21   forms of insurance, general liability and umbrella.  All

22   they've proven and all they've provided to the Court and to

23   counsel is evidence that the aggregate limits on their

24   general liability policy have been exhausted.  They have

25   provided no documentation to support what, if any, umbrella

Page 67

1    coverage is still applicable for these claims.  Now our

2    motion to lift the stay acknowledges that we're only

3    entitled to recover whatever available insurance proceeds

4    there are.  There's a difference between the duty to defend

5    and the duty to indemnify.  As there is still available

6    umbrella coverage for these claims, or at least there's a

7    likely possibility that there's available umbrella coverage,

8    the duty to defend these claims exists and there would be no

9    debt incurred by the debtors by allowing the stay, allowing

10   the claim to proceed in state court, limiting the claim to

11   whatever insurance proceeds there are.  The insurance

12   company will have to pay for the defense.  If it turns out

13   that the aggregate limits were, in fact, exhausted, Mr.

14   Pfeiffer is not entitled to any recovery from Kmart or any

15   other entity until his damages are proved to have exceeded

16   the aggregate limit of five million dollars.  So

17   hypothetically, if he goes forward and gets a judgment for

18   ten million dollars, he can get five million dollars from

19   the umbrella coverage to the extent that it's still in

20   existence.

21           MS. PESHKO:  If I could respond, two points, Your

22   Honor.

23           First, the umbrella coverage only applies when the

24   first five million dollars are spent towards a defense or

25   judgment.  And so, the debtors would have to first spend

Page 68

1    five million dollars on this action and there would have to

2    be some kind of five million dollar cost before umbrella

3    coverage would apply to this or any other action.

4              Second, you know, Mr. Gallagher keeps talking

5    about a judgment but the debtors would have to file an

6    appearance and defend this action.  And there is no money

7    available --

8              THE COURT:  Well, why would they have to defend?

9    Couldn't they just hand over the defense to the carrier?

10             MS. PESHKO:  Well, the carrier -- the umbrella

11   policy is only available when the first five million dollars

12   is spent in this action, Your Honor.  And so, the --

13             THE COURT:  So if they didn't defend, they'd waive

14   their rights on the umbrella policy?  Is that --

15             MS. PESHKO:  I don't know that they'd waive their

16   rights, Your Honor, but either the insurer or Mr.

17   Gallagher's client would have a claim against the debtors.

18   Even if the insurer were to agree to defend even though that

19   first five million dollars has not been spent, the insurer

20   would then have a claim against debtors because they have

21   not met the eligibility for coverage.

22             THE COURT:  Okay.  Have you shown Mr. Gallagher

23   the policy so he could confirm that?

24             MS. PESHKO:  We have not shown him the umbrella

25   policy, Your Honor.

1           THE COURT:  Okay.  Well, I think you should do

2    that.  We should adjourn this so that you can show that to

3    him.

4           MS. PESHKO:  We can do that, Your Honor.

5           THE COURT:  In other words, Mr. Gallagher, what

6    you lay out makes sense unless the umbrella carrier, in

7    essence, gets a claim through the back door.  And then the

8    debtor -- you know, it really isn't just against the

9    insurance because the insurer itself would have the right to

10   go against -- have the claim against the debtor.

11          MR. GALLAGHER:  Sure.  Your Honor, what I have

12   been provided what I think supports my position in this case

13   is a statement from what was at that time ACE Insurance

14   Company that's now been assumed by Aon is my understanding.

15   But in the coverage section of the relevant policies, and by

16   this I mean the general liability policies, it states, and I

17   quote, "We will have the right and duty to defend the

18   insurer against any suit seeking damages."

19          So the duty to defend, again, separate and

20   distinct from the duty to indemnify -- and while I

21   understand counsel's position that the duty to indemnify

22   under the general liability policies may be exhausted

23   through the payment of the aggregate limit, that does not

24   mean that the duty to defend is exhausted.  The duty to

25   defend will continue on to the extent that there is some

Page 70

```
 1    reasonable argument that there may, in the future, be some
 2    obligation on the part of the insurer to pay.  And in this
 3    case, because there is umbrella coverage, that duty to
 4    defend would be triggered.  So --
 5            THE COURT:  Well, I would need to see the umbrella
 6    policy myself --
 7            MR. GALLAGHER:  Sure.
 8            THE COURT:  -- and the other policy to see how
 9    they operate together and whether there'd be a claim over by
10    either insurer.
11            MR. GALLAGHER:  Sure.
12            THE COURT:  Illinois is not a direct action state?
13    You can't go directly against --
14            MR. GALLAGHER:  No.
15            THE COURT:  Okay.
16            MS. PESHKO:  Your Honor, if we can show to the
17    movant that under both the general liability policy and the
18    umbrella policy the insurer would have a claim against the
19    debtors --
20            THE COURT:  Yeah.  Well, then I'll deny the
21    motion.
22            MS. PESHKO:  Thank you, Your Honor.
23            THE COURT:  I mean, it's not really against the
24    insurance then because it --
25            MS. PESHKO:  Right.
```

1          THE COURT:  -- through the back door becomes a

2     claim against the debtor.  But -- so we should just nail

3     that down with each other.  And if you disagree about it

4     then put it back on the calendar and I'll rule on it.

5          MS. PESHKO:  Thank you, Your Honor.  We'll adjourn

6     to a date to be determined --

7          THE COURT:  Okay.

8          MS. PESHKO:  And we'll --

9          THE COURT:  I mean, if you have the policies, you

10    can probably do it in August, is my guess, July or August.

11         MS. PESHKO:  Okay.

12         THE COURT:  One of those dates.

13         MS. PESHKO:  Okay.  Thank you, Your Honor.

14         THE COURT:  Although, again, I think you're both

15    clear on how I'm going to rule on this.

16         MS. PESHKO:  That's right.

17         THE COURT:  If it's truly --

18         MR. GALLAGHER:  Yes.

19         THE COURT:  -- just against the insurance, it

20    doesn't come back to bite the debtor through either of those

21    policies then I'll grant the motion.  If it does come back

22    to bite the debtor then I'll deny it.

23         MS. PESHKO:  Thank you, Your Honor.

24         MR. GALLAGHER:  Your Honor, just for

25    recordkeeping, can we keep it on the July omnibus schedule?

Page 72

1    I have a tight deadline --

2              THE COURT:  Yeah, that's fine.  We can adjourn it

3    to July.

4              MR. GALLAGHER:  Thank you. Thank you, Your Honor.

5              THE COURT:  Okay.

6              MS. PESHKO:  Your Honor, the next item on the

7    agenda is number 4, the motion of Santa Rosa Mall, LLC, for

8    relief from the automatic stay, ECF number 3475.

9              THE COURT:  Right.

10             MS. PESHKO:  I will turn it over to counsel for

11   Santa Rosa.

12             THE COURT:  Okay.

13        (Pause)

14             MR. CHICO-BARRIS:  Good morning, Your Honor.

15             THE COURT:  Good morning.

16             MR. CHICO-BARRIS:  On behalf of Santa Rosa Mall, I

17   am Gustavo Chico along with Sonia Colon.

18             THE COURT:  Okay.

19             MS. COLON:  Good morning, Your Honor.

20             MR. CHICO-BARRIS:  Your Honor, in this case, we

21   filed a motion for relief from stay.  The motion is to who

22   one portion of it is being addressed through an adversary

23   proceeding subsequently filed.  I'm not going to discuss

24   those.

25             THE COURT:  Unless the portion seeking a

Page 73

1   declaration that the proceeds of the insurance policy are

2   not property of the estate and therefore not subject to the

3   automatic stay.

4           MR. CHICO-BARRIS:  Correct.

5           THE COURT:  Right.  Okay.

6           MR. CHICO-BARRIS:  The portion that I would like

7   to submit to the Court are the causes of action that Santa

8   Rosa Mall has against the insurers and the insurance

9   carriers and the insurance broker.

10          In Puerto Rico, under the Puerto Rico Insurance

11  Code, Section 2003, we sustain that Santa Rosa has a direct

12  cause of action against the insurers.  In addition, we've

13  referred that we have a direct cause of action against the

14  insurance producer who issued certificates of insurance that

15  were subsequently through this case proven to be false or

16  incorrect information.  The insurance producer has stated

17  that Santa Rosa was a loss payee and through the discovery

18  in this case, that was not so.  And that is sanctionable in

19  Puerto Rico under the Puerto Rico Insurance Code as well as

20  the Puerto Rico Insurance Civil Code.

21          Sears sustains that this is related to the

22  bankruptcy case because Sears entered into a confidential

23  sentiment agreement for these insurance proceeds that has an

24  indemnity clause.  And Sears purports that if we seek

25  damages against independent damages under non-bankruptcy law

Page 74

1    pursuant to the Puerto Rico Code of Insurance and the Puerto

2    Rico Civil Code, that ultimately, the insurance companies

3    will seek to collect those damages from the debtors.

4         THE COURT:  Okay.  Can I break this into two

5    parts?  The motion describes these claims, as far as I can

6    see, in two paragraphs.  Paragraph 52 says, " Santa Rosa

7    Mall has causes of action against AIG Europe Limited, that

8    is, the Debtors' insurance company that issued the Contract

9    of Insurance, and Aon Risk Services Central, Inc., as

10   insurance producer or agency who issued a Certificate of

11   Insurance regarding Policy No." and then it lists the

12   number.

13        And then 55 says, " Santa Rosa Mall seeks relief

14   from the automatic stay to prosecute independent

15   non-bankruptcy claims against the insurance company, its

16   underwriters, agents and/or producers under non-bankruptcy

17   law arising from the resolution and payment of such

18   insurance claim in detriment of Santa Rosa Mall."

19        Now I understand -- you're saying the claim

20   against the insurance broker or agency is based on their

21   providing a certificate that shows loss payee status for the

22   mall, right?

23        MR. CHICO-BARRIS:  Correct.

24        THE COURT:  What is the claim against the other

25   entities that you identify here, the insurance company, its

Page 75

1    underwriters, agents and/or producers?

2            MR. CHICO-BARRIS:  Yes.  I'll explain.  Under the

3    Puerto Rico Insurance Code and under the Puerto Rico Civil

4    Code, because the insurance code provides a direct cause of

5    action against the insurer, and if the insurance company --

6            THE COURT:  For what?  None of this is in your

7    papers.  I am someone who likes to read things so I'm not

8    reacting well to this, particularly since your papers have

9    already been inaccurate in describing the facts and the law.

10   So what section are you referring to?

11           MR. CHICO-BARRIS:  I am talking about Section

12   2003 --

13           THE COURT:  Of --

14           MR. CHICO-BARRIS:  -- of the Puerto Rico Insurance

15   Code.  That would be 26, Loss of Puerto Rico Annotated 2003.

16           THE COURT:  Okay.

17           MR. CHICO-BARRIS:  And in addition, under the

18   Puerto Rico Civil Code, if a party pays incorrectly to

19   someone, the Puerto Rico Civil Code --

20           THE COURT:  Okay.

21           MR. CHICO-BARRIS:  -- suggests --

22           THE COURT:  So let me stop you there.  Isn't that

23   the issue in the adversary, too?  You're saying that you are

24   entitled to the proceeds and the debtors are saying no, they

25   are.  So how can you say paid incorrectly is independent

1    from the bankruptcy.  It's in the adversary proceeding.

2             MR. CHICO-BARRIS:  If I may.  Because even if the

3    insurance companies paid whatever they paid to the debtors,

4    under Puerto Rico law, if they paid incorrectly only to one

5    party, Puerto Rico Civil Code demands that the party who

6    paid wrong or incorrectly pays whoever it was entitled to

7    receive those damages.

8             THE COURT:  But that issue was already teed up in

9    front of me.

10            MR. CHICO-BARRIS:  Well, we haven't sued the

11   insurance companies in the adversary proceeding.

12            THE COURT:  Well --

13            MR. CHICO-BARRIS:  And --

14            THE COURT:  But the incorrect part is in front of

15   me.  That part.

16            MR. CHICO-BARRIS:  What is in -- what the

17   adversary proceeding seeks -- it stems from the same source,

18   I guess, that basically Santa Rosa falls under coverage of

19   the insurance -- of the policy.

20            THE COURT:  Right.

21            MR. CHICO-BARRIS:  But that action can also be --

22   that defense can also be claimed against the insurance --

23            THE COURT:  It can but why would have two parallel

24   lawsuits going?  They could get two different results.

25            MR. CHICO-BARRIS:  Because one -- the remedies are

Page 77

 1    different.

 2              THE COURT:  But it's the same facts and the same

 3    determination.  And would the debtor be then subject to

 4    collateral estoppel so the debtor would have to appear in

 5    that lawsuit, too?

 6              MR. CHICO-BARRIS:  Well, we referred that they

 7    don't have to because --

 8              THE COURT:  No.  You didn't answer my question.

 9    Would collateral estoppel apply to the debtor in that

10    lawsuit?  After all, the insurer was in privity with the

11    debtor.  In most jurisdictions, those are in privity or even

12    broader term, it doesn't have to be contractual privity but

13    they use the term "privy" -- is binding on the defendant, or

14    the party that loses, and their privies.  So I just don't

15    see this as a basis for lifting the stay on that type of

16    lawsuit.

17              MR. CHICO-BARRIS:  But -- I guess they could.  But

18    we also seek remedies against Aon --

19              THE COURT:  That's why I'm breaking it into two.

20    But as far as going against the insurer or its agents, et

21    cetera, I don't -- I mean -- you haven't given me these two

22    statutes but you summarize them.  They're both for wrongful

23    payment, right?

24              MR. CHICO-BARRIS:  Right.

25              THE COURT:  Okay.  So again, what's at issue in

Page 78

1  front of me is whether the payment is wrongful or not

2  because who should they be paying, the payee or someone who

3  asserts a right to reform or an equitable lien or a

4  constructive trust or whatever it is that is the basis for

5  the adversary proceeding.

6           MR. CHICO-BARRIS:  The adversary proceeding

7  doesn't -- I guess my point is it does not include Aon.

8           THE COURT:  Well --

9           MR. CHICO-BARRIS:  And --

10          THE COURT:  -- I know.  But it does include the

11 issue of wrong --

12          MR. CHICO-BARRIS:  -- it does include the issue

13 of --

14          THE COURT:  Improper payment, wrongful payment --

15          MR. CHICO-BARRIS:  Right.

16          THE COURT:  -- et cetera.

17          MR. CHICO-BARRIS:  The stem is -- or the root

18 would be --

19          THE COURT:  Right.

20          MR. CHICO-BARRIS:  -- if Santa Rosa is entitled to

21 remedy under that insurance policy.

22          THE COURT:  Right.

23          MR. CHICO-BARRIS:  Yes.

24          THE COURT:  So let's turn to Aon as the broker

25 then.

Page 79

1              MR. CHICO-BARRIS:  Well, in this case, Santa Rosa

2     had received before Hurricane Maria certificates of

3     insurance stating that the policy included Santa Rosa as a

4     loss payee.

5              THE COURT:  Who sent those certificates?

6              MR. CHICO-BARRIS:  Aon.  And Sears provided them

7     under the lease agreement.

8              THE COURT:  No, no, no.  Who sent them to you?

9     Who communicated them to you?

10             MR. CHICO-BARRIS:  Yes.  Under the lease

11    agreement, Sears had to provide them as proof of insurance

12    to my client.

13             THE COURT:  Right.  So what is the basis for the

14    claim against Aon?

15             MR. CHICO-BARRIS:  That it provided when it issued

16    the certificates of insurance, it represented to Sears and

17    my client, of course --

18             THE COURT:  How did they represent it to your

19    client?

20             MR. CHICO-BARRIS:  Because under the lease

21    agreement, the debtor was supposed to give -- to provide

22    Sears with proof of insurance --

23             THE COURT:  Right.

24             MR. CHICO-BARRIS:  -- and --

25             THE COURT:  So how is Aon involved in that?

1              MR. CHICO-BARRIS:  Well, the certificates of

2     insurance that were --

3              THE COURT:  No.  No.  How does Aon know that --

4     know about the lease?  I mean, you're alleging a fraud claim

5     against them, right?  Or is it something else?  I'm just

6     trying to figure out what the claim is to see whether the

7     debtor would be drawn into this litigation.

8              MR. CHICO-BARRIS:  Well, I don't see how because

9     what the debtor did, what Sears did was simply to provide

10    them under its obligations under the lease agreement --

11             THE COURT:  Whose agent was Aon?

12             MR. CHICO-BARRIS:  Sears.

13             THE COURT:  Okay.  And Aon --

14             MR. CHICO-BARRIS:  Sears was --

15             THE COURT:  -- provided the certificate to Sears.

16             MR. CHICO-BARRIS:  Yes.

17             THE COURT:  So what is the basis for your claim

18    against Aon?

19             MR. CHICO-BARRIS:  That when Aon -- let me go

20    back.  The lease agreement required --

21             THE COURT:  I know what the lease agreement

22    requires.  What is the basis for your claim against Aon?

23             MR. CHICO-BARRIS:  That when Aon included by name

24    Sears -- my client expressly in the certificate of

25    insurance, it represented to Sears and my client, through

Page 81

1    Sears --

2            THE COURT:  That's where I'm having a hard time.

3            MS. COLON:  Your Honor --

4            THE COURT:  How did it represent to your client

5    through Sears if it -- that's -- I mean, look, if I defraud

6    you, right, in some way or break a contract with you, that

7    doesn't necessarily mean that your colleague has a cause of

8    action against me.

9            MR. CHICO-BARRIS:  Well --

10            THE COURT:  And it probably means -- this is what

11    I'm exploring.  It probably means that when your colleague

12    sues me, I'm going to sue you, i.e., Aon will sue Sears or

13    join Sears in the litigation because it was Sears' agent.

14    And it made the representation to Sears.  I don't know what

15    the circumstances were that Aon knew.  And the basis for

16    your motion is that this is not going to affect the estate

17    because it's a cause of action against Aon.  But I'm not

18    sure that's right.  I don't have any facts to back that up,

19    in other words.

20            MR. CHICO-BARRIS:  I'm not 100 percent sure and I

21    don't want to misrepresent the Court --

22            THE COURT:  Right.

23            MR. CHICO-BARRIS:  -- but I believe that there

24    were letters sent to Aon stating, look, under the lease

25    agreement, I am supposed to be a loss payee.  And they

Page 82

1    included the references of the lease agreement.  But my

2    client believed those statements and it relied on those

3    statements as proof of insurance.

4              THE COURT:  Well, it may -- I mean, it has a claim

5    against Sears.  It has asserted -- it has a claim against

6    Sears.  But I'm just --

7              MR. CHICO-BARRIS:  I --

8              THE COURT:  It may be that you have an independent

9    claim against Aon.  I just don't really have enough to know

10   that at this point.  And moreover, is there any sort of

11   limitations period you're up against --

12             MR. CHICO-BARRIS:  No --

13             THE COURT:  -- in suing them?

14             MR. CHICO-BARRIS:  -- not under Puerto Rico law,

15   no.

16             THE COURT:  Okay.  All right.  So my inclination

17   is to have some more -- to learn something more about this.

18             Let me step back a step.  You probably teed up the

19   underlying dispute which is what are your rights, if any,

20   under the policy.  That's before me in the adversary

21   proceeding where it should be because you're looking for a

22   declaratory judgment as to what's property of the estate and

23   what isn't.  I don't want to have multiple litigations.

24   It's pretty clear to me that that would be the case on the

25   causes of action against the insurer and its agents.  It's

Page 83

1   not crystal clear to me that that's the case with regard to

2   the broker.  But it may well be, particularly based on what

3   I've heard so far in the case that all of the issues as to

4   what Santa Rosa was entitled to under the policies is going

5   to creep in to the litigation against the broker.  And the

6   issue of whether the broker had any duty and law to Santa

7   Rosa Mall.

8            MR. CHICO-BARRIS:  Well, what we can do is amend

9   the motion for relief from stay --

10           THE COURT:  I guess.

11           MR. CHICO-BARRIS:  -- to include further --

12           THE COURT:  I mean, I guess, although we're

13   proceeding with the litigation.  If there's no statute of

14   limitations, maybe the adversary proceeding should be

15   decided first and then you can -- you know, at that point,

16   it would be a lot clearer in what relationship you stand

17   with the debtor.  And, you know, maybe it's the debtor that

18   has a cause of action against Aon at that point.

19           You know, I wouldn't want -- in other words, it

20   just seems to me that the mall's rights under the policy

21   and/or to the proceeds is kind of the first step here in any

22   litigation, particularly since the broker was the debtors'

23   broker.  If it was doing something improper then that's an

24   issue and the debtor may want to go after them depending on

25   how the adversary proceeding turns out.  And if the

Page 84

1      adversary proceeding turns out in your favor, and the

2      money's there, then the broker's going to say, well, there

3      are no damages and motion is miss.  So it seems to me that

4      adversary proceeding is the first call.

5              But in any event, I don't have the facts today --

6              MR. CHICO-BARRIS:  Very well.

7      BY MR. CHIRLS:

8      Q    -- to really go through it all.  I don't know.  You

9      maybe have more to say.  The debtor probably wants to say

10     something on this.  Maybe not.  I don't know.

11             MS. MARCUS:  Jacqueline Marcus, again, Your Honor.

12     I'll be very brief.

13             You've said most of what I was planning on saying.

14             THE COURT:  Okay.

15             MS. MARCUS:  And the bottom line is that the

16     standards for relief from the automatic stay aren't present

17     here.  Even a cursory look at the Sonnax factors leads to

18     the conclusion that, as you said, the adversary proceeding

19     should be decided first and then let's see where we are at

20     that point.

21             THE COURT:  Okay.  All right.

22             MS. COLON:  Your Honor, if I may just -- I know

23     you set various questions regarding whether there is

24     independent causes of action under Puerto Rico law and there

25     are.

Page 85

1          THE COURT:  No.  But it's a different -- I think

2     that's the problem with this motion.  The fact that you may

3     have a cause of action doesn't mean you're entitled to

4     relief from the stay because you're defining the word

5     "independent" totally differently, I believe, than what the

6     statute requires, i.e., yes, there are other parties you can

7     sue.  But if the debtor's going to be sucked into that

8     litigation for relief from stay purposes, you lose under

9     Sonnax.

10          MS. COLON:  As insurer, the insurer is

11     responsible --

12          THE COURT:  No.  I'm sorry.  You just don't get

13     this.

14          MS. COLON:  I understand, Your Honor.

15          THE COURT:  The rationale for suing the insurer

16     was that they paid wrongfully.

17          MS. COLON:  Yes, Your Honor.

18          THE COURT:  All right?  The word "wrongful" is the

19     very issue in the adversary proceeding.  Did they pay

20     wrongfully or was it properly paid to the debtor and now

21     could be property of the debtor's estate?  If you brought

22     that litigation against the insurer, of course, the debtor

23     would have to intervene because that's the issue.  And then

24     we have two litigations going at once with potential for two

25     different results.  That's like -- a court would never grant

 1    that relief under Sonnax.

 2            So I'm going to deny the motion without prejudice.

 3    You can renew it or you can just keep it on the calendar and

 4    put it -- I'm not going to deny it.  You can keep it on the

 5    calendar and put it on for a hearing after a ruling in the

 6    adversary proceeding on the merits.

 7            I guess the one other basis for putting it back on

 8    the calendar is if you can show me that you have a direct

 9    relationship with Aon -- not with Aon -- with -- yeah, with

10    Aon, the broker, where they owe you a duty independent of

11    the debtors' conduct.

12            MS. COLON:  That's our understanding so we'll

13    be --

14            THE COURT:  Okay.

15            MS. COLON:  -- amending.  Thank you, Your Honor.

16            THE COURT:  Thank you.

17            MS. MARCUS:  Thank you, Your Honor.  That brings

18    us to the next section of the agenda which is the Section

19    365(d)(4) matters.

20            THE COURT:  Right.

21            MS. MARCUS:  And that's going to be handled by

22    Cleary.  I think Mr. Barefoot on behalf of Transform.

23            THE COURT:  Okay.

24            MR. BAREFOOT:  Good morning, Your Honor.  Luke

25    Barefoot from Cleary Gottlieb Steen & Hamilton for Transform

1    Holdco and its affiliates.

2         Your Honor, as Ms. Marcus noted at the outset,

3    there was some confusion with the agenda.  And in addition,

4    the leases that are going to be up for hearing today on

5    which we've reached agreement with landlords are sort of a

6    moving target.  So with Your Honor's permission, I have what

7    is a very simplified form of agenda that I think would -- if

8    I may approach, would make it easy to walk through this.

9         THE COURT:  Okay.  That's fine.

10        MR. BAREFOOT:  Your Honor, following the last

11   hearing that we had on these lease assumption and assignment

12   issues on May 8th, hundreds of leases were successfully

13   assumed and assigned to Transform and there were 54 leases

14   that had been designated by Transform that were the subject

15   of extensions under 365(d)(4).

16        We've been diligently working through that list.

17   As of today, six of those 54 already have orders entered

18   assuming and assigning them.  And then, as you can see, on

19   this list, there are five additional leases which Transform

20   has filed proposed consensual assumption and assignment

21   orders where the presentment date has passed.  And we will

22   submit electronic versions of those orders to chambers.

23        THE COURT:  All right.  I actually have six on

24   this.  Is this page 3?

25        MR. BAREFOOT:  I'm still on page 1, Your Honor.

Page 88

1              THE COURT:  Oh.

2              MR. BAREFOOT:  There are five leases, the White

3      Plains, Key West, Burbank, West Orange and Williamsport

4      where we have notices of presentment that have been filed.

5              THE COURT:  Okay.

6              MR. BAREFOOT:  And then if you move to the second

7      section, and this is really just to give the Court an

8      overview of the progress we're making, there are a total of

9      30 leases where we either have already extended the Section

10     365(d)(4) deadline or shortly it will be further extended.

11     That breaks --

12             THE COURT:  I guess I'm confused because --

13             MR. BAREFOOT:  Okay.

14             THE COURT:  I see.  This is done by landlord as

15     opposed to number of leases.

16             MR. BAREFOOT:  Correct.  By --

17             THE COURT:  Okay.  All right.

18             MR. BAREFOOT:  Yes, that's correct.

19             THE COURT:  Got it.

20             MR. BAREFOOT:  So, for example, you'll see under

21     1(a)(ii), it's Auburndale Property which represents two --

22             THE COURT:  Two.

23             MR. BAREFOOT:  -- separate locations.

24             THE COURT:  So that's why it's five.

25             MR. BAREFOOT:  Apologies for the misunderstanding.

1              THE COURT:  No.  That's fine.

2              MR. BAREFOOT:  So that's why there are five that

3     are set for entry by Your Honor.

4              THE COURT:  Okay.

5              MR. BAREFOOT:  Then if we move to the section

6     where there will be a further extension, either already done

7     or in the process -- this is under II of the agenda you

8     have.

9              THE COURT:  Right.

10             MR. BAREFOOT:  There are a total -- you know,

11    there are two where the presentment date has already passed.

12    There are three where the presentment date is passing as we

13    speak.  And then there are another eight where the

14    stipulations have been filed.

15             Finally, there's one large master lease which, in

16    three different tranches, covers 17 store locations and a

17    further extension of the 365(d)(4) deadline for those

18    Brookfield properties will be filed shortly.

19             THE COURT:  Okay.

20             MR. BAREFOOT:  Bringing us then to the progress

21    that we're hoping to make today, the leases that are going

22    forward today with proposed orders.

23             We have a total of nine locations there that break

24    out into six different orders, again, based on the landlord

25    that covers those locations.  The first one is for KDI

1    Rivergate Mall in Goodlettsville, Tennessee.  The second one

2    is Westwood, Massachusetts.

3              Your Honor, with respect to Westwood, you may

4    recall that at the last hearing, this landlord had made a

5    Section 365(l) demand for nine months of security.

6    Transform served discovery on the landlord concerning that

7    demand after the hearing and the landlord has since

8    withdrawn the request for the 365(l) deposit.  So we have a

9    consensual form of assumption and assignment order.

10             THE COURT:  Okay.

11             MR. BAREFOOT:  The third order covers three

12   locations, Lebanon, Tennessee; McAllen, Texas; and Warsaw,

13   Indiana.

14             Your Honor, the fourth order --

15             THE COURT:  So, I'm sorry.  These are --

16             MR. BAREFOOT:  Yes.

17             THE COURT:  -- agreed orders at this point?

18             MR. BAREFOOT:  The first five of them are agreed

19   orders.

20             THE COURT:  Okay.  So KDI Rivergate Mall --

21             MR. BAREFOOT:  KDI Rivergate, Westwood,

22   Massachusetts --

23             THE COURT:  Right.

24             MR. BAREFOOT:  -- Lebanon, McAllen and Warsaw are

25   all -- that I went through are all just consensual orders.

Page 91

1            THE COURT:  Okay.

2            MR. BAREFOOT:  And I have the proposed orders

3    here.

4            THE COURT:  All right.

5            MR. BAREFOOT:  They're substantially in the

6    form -- all of these are substantially in the form of Your

7    Honor's May 13th order.  I'm happy to hand them up or we can

8    just submit them to chambers.

9            THE COURT:  No.  You should e-mail them to

10   chambers.

11           MR. BAREFOOT:  Very good, Your Honor.

12           The fourth order covers two locations, one in

13   Frederikstad (ph), Puerto Rico and one in Juana Diaz, the

14   Virgin Islands.  Your Honor, for both of those, pursuant to

15   an agreement with the landlord in addition to the order,

16   there will be a related stipulation between Transform and

17   the landlord that specifically addresses certain hurricane

18   repairs that are being made at these properties.

19           THE COURT:  Okay.

20           MR. BAREFOOT:  The debtors are not a party to

21   these stipulations and we'll simply submit those to chambers

22   as well, with Your Honor's permission.

23           THE COURT:  The stipulation?

24           MR. BAREFOOT:  Correct.

25           THE COURT:  You mean, they'll just be attached as

Page 92

1    an exhibit or --

2             MR. BAREFOOT:  It's a standalone document.

3             THE COURT:  Are they to be so ordered?

4             MR. BAREFOOT:  Yes, Your Honor.

5             THE COURT:  Okay.  But it's just between Transform

6    and the --

7             MR. BAREFOOT:  And the landlord.

8             THE COURT:  -- and the landlords.  Okay.

9             MR. BAREFOOT:  And then the fifth consensual

10   order, Your Honor, is with respect to the store in Clovis,

11   California where, again, the order is substantially in the

12   form of the May 13th order and is consensual with the

13   landlord.

14            THE COURT:  Okay.

15            MR. BAREFOOT:  That brings us to the last one

16   where I think there's a little bit of an asterisk around the

17   consent.  This is with respect to Dart Warehouse Corporation

18   and the distribution center located in Naperville, Indiana.

19            Your Honor, the parties have been working

20   cooperatively on this.  And the clients are our respective

21   clients have reached agreement on the cure amount to be paid

22   as a condition to assumption and assignment.

23            THE COURT:  Okay.

24            MR. BAREFOOT:  Transform has mailed the check that

25   represents the agreed upon cure payment.  It has been cut by

Page 93

1    Transform.  We've given the landlord the check number but

2    the landlord has not been able to confirm receipt of the

3    check.  Your Honor, it's our view that because the order

4    provides and orders Transform to pay the cure amount within

5    five business days, the landlord is adequately protected and

6    that there is no barrier to us moving forward with entry of

7    this order, particularly where the 365(d)(4) deadline will

8    expire before there is another omnibus hearing.

9              THE COURT:  When does it expire?

10             MR. BAREFOOT:  June 30th, Your Honor.

11             THE COURT:  All right.  Well, you've agreed on

12   everything, right?  It's just whether the check bounces or

13   not?

14             MR. BAREFOOT:  I think it's whether the landlord

15   has the check in its hands.

16             THE COURT:  All right.

17             MR. BAREFOOT:  But it's our position, Your Honor,

18   that the landlord has adequate remedies --

19             THE COURT:  Well, why don't you just submit the

20   order before June 30th?

21             MR. FENNELL:  Your Honor, may I be heard?

22             THE COURT:  Sure.

23             MR. FENNELL:  This is William Fennell on behalf of

24   Dart Warehouse.

25             THE COURT:  Right.

Page 94

1              MR. FENNELL:  Since e-mails during this hearing

2      with Mr. Barefoot, I've received confirmation from the

3      client that it did receive payment.

4              THE COURT:  Okay.

5              MR. FENNELL:  And I've been provided with a copy

6      of the draft order sent to me yesterday as settlement

7      discussions so I haven't had an opportunity to review that.

8      It also refers to a stipulation which I didn't get.  But as

9      Mr. Barefoot said, the clients are working cooperatively and

10     I have every expectation that we'll be able to submit an

11     order before June 30th.

12             THE COURT:  All right.

13             MR. BAREFOOT:  Your Honor, this is news to me but

14     I'm fine with that approach.  The only thing I'd ask Mr.

15     Fennell to confirm is that to the extent it's required, he

16     will grant a further extension of the 365(d)(4) so we don't

17     have (indiscernible) rejection.

18             THE COURT:  All right.  That seems --

19             MR. FENNELL:  Yes, Your Honor.  I have that --

20             THE COURT:  You have that authority and you're

21     confirming that in light of where the parties are at this

22     point, if for some reason the order doesn't get submitted or

23     entered before June 30th, there'll be an extension till the

24     next omnibus.

25             MR. FENNELL:  That is correct, Your Honor.

Page 95

1   William Fennell.

2           THE COURT:  Okay.  Very well.

3           MR. BAREFOOT:  Very good, Your Honor.  We'll

4   continue to winnow down this list of leases and we'll submit

5   these orders to chambers.

6           THE COURT:  Okay.  That's fine.

7           Is there any landlord here that believes they are

8   not covered by what we just went through or on the phone?

9           Okay.  Thanks.

10          MR. BAREFOOT:  Thank you, Your Honor.

11          THE COURT:  All right.  I think that's it for the

12  agenda today?  No?  Oh, oh, yes.  There's --

13          MR. FAIL:  Very close, Your Honor.  Very close.

14          THE COURT:  All right.

15          MR. FAIL:  The final items on the agenda, Your

16  Honor, are the --

17          THE COURT:  I didn't do that on purpose.

18          MR. FAIL:  -- fee matters.

19          THE COURT:  Yes.

20          MR. FAIL:  Your Honor, there were 16 applications

21  on for hearing.  There were no objections to any of them.

22  We communicated with the fee examiner that was appointed and

23  agreed to his request to insert language in the proposed

24  order that we would submit.  That reserves the fee

25  examiner's right to review these applications in connection

Page 96

1    and to -- in connection with approval of final fee

2    applications by the movants.

3              THE COURT:  Right.

4              MR. FAIL:  The fee examiner has, I believe, begun

5    his review but we didn't want to either delay this hearing

6    or put undue pressure on the examiner to conduct a full

7    review of all of the applications.

8              THE COURT:  Right.

9              MR. FAIL:  So --

10             THE COURT:  Well, they're interim applications so

11   everyone has that right.  But this just spells it out

12   specifically for --

13             MR. FAIL:  We agreed to include it explicitly.

14             THE COURT:  -- for the fee examiner.

15             MR. FAIL:  That's right, Your Honor.

16             THE COURT:  Okay.  We've reviewed the applications

17   and nothing leaps out.  But, you know, there has been

18   acknowledgment during the disclosure statement hearing that

19   administrative solvency is tight.  The debtors believe

20   that's the case that they are administratively solvent but

21   they acknowledge that depending on how certain pending

22   disputes turn out, that may change.  So I guess my question

23   is, under the fee order, there is a 80 percent payment every

24   month unless there's a dispute plus 100 percent of expenses.

25   So what you're really seeking here is confirmation of that

Page 97

1    plus payment of the remaining 20 for these periods.

2             Are these payments part of the carve-out, i.e.,

3    they're allowed to be paid from collateral because there's

4    been no --

5             MR. FAIL:  Yes, Your Honor.  It's coming out of --

6             THE COURT:  All right.

7             MR. FAIL:  -- the carve-out reserve.

8             THE COURT:  All right.  So it's not really an

9    administrative solvency issue at this point.

10            MR. FAIL:  Correct, Your Honor.

11            THE COURT:  All right.  So I will grant the

12   applications in the amounts sought --

13            MR. FAIL:  Thank you, Your Honor.

14            THE COURT:  -- as interim applications.  So you

15   should e-mail -- I guess you can -- there are a lot of them

16   but I think you can do Schedules A and B and attach them to

17   the one order.

18            MR. FAIL:  Thank you very much, Your Honor.  We'll

19   do that.

20            THE COURT:  Okay.

21            MR. FAIL:  I think that concludes the agenda.

22            THE COURT:  Okay.

23            MR. FAIL:  And thank you very much for your time

24   this morning.

25            THE COURT:  Thank you.

Page 98

1          (A chorus of thank you)

2          (Whereupon, these proceedings were concluded at 11:52

3     a.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        I N D E X

 2

 3                     R U L I N G S

 4

 5    DESCRIPTION                             PAGE      LINE

 6    Motion of the trustees of the estate of    21        29

 7      Bernice Pauahi Bishop to compel payment of

 8      post-petition rent granted

 9    Retirees' motion for entry of an order     60        12

10      directing appointment of a committee of

11      retired employees granted

12    Transform Holdco's motion requesting entry of  95      5

13      orders approving assumption and assignment of

14      various designated leases granted

15    Motions of various professionals in the case   97     14

16      for approval of interim fee applications

17      granted

18

19

20

21

22

23

24

25
```

Page 100

1                    C E R T I F I C A T I O N

2

3      I, Lisa Beck, certify that the foregoing transcript is a

4      true and accurate record of the proceedings.

5      Lisa Beck
                          Digitally signed by Lisa Beck
                          DN: cn=Lisa Beck, o, ou,
6      _____ email=digital@veritext.com, c=US
                          Date: 2020.03.04 09:53:23 -05'00'

7      Lisa Beck

8

9

10

11     Date:  June 23, 2019

12

13     Veritext Legal Solutions

14     330 Old Country Road

15     Suite 300

16     Mineola, NY 11501

17

18

19

20

21

22

23

24

25

[& - 32801]                                                                           Page 1

| **&** |
| --- |
| **&**   6:22 7:1,8 8:16 9:2,18,23 10:2 11:2,11,19 12:1 13:8 14:17 15:1,9 16:1,18 17:16,17 18:9,10,17,18 19:5 25:21 30:6 86:25 |

| **0** |
| --- |
| **07078**   16:22 |

| **1** |
| --- |
| **1**   2:18 3:6 5:10 6:13 9:10 57:21 87:25 88:21 |
| **10**   58:20 |
| **10,000**   36:18 |
| **10/15/2018**   6:23 |
| **100**   81:20 96:24 |
| **10006**   13:11 |
| **10014**   12:14 |
| **10017**   15:12 |
| **10018**   15:19 |
| **10019**   11:14 18:5 18:21 |
| **10036**   12:5 |
| **1006**   12:13 |
| **101**   17:18 |
| **10112**   17:4 |
| **10153**   11:5 |
| **10178**   17:19 |
| **105**   2:17 3:6 |
| **1051**   59:25 |
| **10:00**   2:5 |
| **10:06**   1:21 |
| **11**   2:2,8,17 3:6 5:14 6:13 44:12 53:16 59:9,16,23 |
| **1114**   3:10,16 4:3 30:1 36:7,10 37:4 38:21 41:6,7,16 41:18 42:25 43:23 |

43:23 44:11,13 45:3 46:17 49:15 53:14 55:3,24 57:19,21 58:24 59:4,9,11 60:5 62:23
**1129**   45:7 59:4
**11501**   100:16
**11th**   13:19 26:13 26:21 43:2
**12**   35:17 60:2 99:9
**1200**   13:3
**1285**   11:13
**13**   45:7 59:4
**134**   60:4
**13th**   91:7 92:12
**14**   8:13 99:15
**140**   16:3
**145**   43:11
**1477**   2:11
**15**   6:17 7:10 8:12 8:17 9:4,25 10:5
**150**   18:11
**1500**   16:4
**15th**   27:23
**16**   60:1,2 95:20
**1633**   18:3
**17**   89:16
**18**   66:14
**18-23538**   1:4 2:1
**18th**   14:4 27:20
**190,000**   28:11
**19801**   13:20
**1988**   64:4 65:13
**1991**   60:5
**1997**   33:15 48:21 56:23
**1st**   66:11,12,12

| **2** |
| --- |
| **2**   5:11 29:25 |
| **20**   1:20 2:5 28:4 97:1 |

**200**   12:20 15:3
**20005**   13:4
**2001**   30:13,14 55:8 65:25
**2002**   46:13 55:8
**2003**   73:11 75:12 75:15
**2005/2006**   63:22
**2006/2007**   63:23
**2007**   30:20 46:14 59:25 60:1
**2008/2009**   63:19 63:22
**2009**   58:19,20
**201**   12:12
**2010**   33:12 52:19 58:5
**2014**   65:13 66:3
**2017**   65:19 66:11
**2018**   6:17 7:5,10 7:17,24 8:12,17 8:22 9:4,10,16,21 9:25 10:5 66:12
**2019**   1:20 2:5 6:18 7:5,10,18,24 8:5 8:13,18,23 9:4,11 9:16,21,25 10:6 27:23 66:12 100:11
**20210**   12:21
**2029**   17:10
**21**   8:22 99:6
**210**   58:5
**21202**   14:5
**23**   100:11
**2300**   16:12
**23rd**   21:5
**24**   7:5
**2414**   2:21 27:5
**2425**   15:4
**248**   1:17
**25**   7:24 20:7

**250,000**   61:21
**26**   60:1 75:15
**2633**   4:11
**28**   6:18 7:5,18,24 8:5,17,23 9:4,11 9:16,21,25 10:6
**2832**   2:25
**29**   7:17 99:6
**29,000**   30:11 35:23 43:6,8

| **3** |
| --- |
| **3**   2:18 3:6 56:10 58:10 63:12 87:24 |
| **3.1**   56:19,21 |
| **3.2**   56:19 57:1 |
| **3.3**   56:19 57:6 |
| **3/18/2019**   6:23 |
| **30**   17:3 88:9 |
| **300**   1:17 14:3 100:15 |
| **3087**   6:18 |
| **30th**   93:10,20 94:11,23 |
| **3149**   4:15 66:15 |
| **3169**   3:8 |
| **3185**   6:23 |
| **3190**   7:6 |
| **3191**   7:11 |
| **3194**   7:18 |
| **3195**   7:25 |
| **3196**   8:6 |
| **31st**   18:4 |
| **3204**   8:13 |
| **3205**   8:18 |
| **3206**   8:23 |
| **3207**   9:5 |
| **3213**   9:11 |
| **3217**   9:25 |
| **3220**   9:16 |
| **3223**   9:21 |
| **3224**   10:6 |
| **32801**   16:13 |

**3298**  5:7
**330**  100:14
**33rd**  17:11
**3475**  4:21 72:8
**3526**  6:9
**3529**  6:5
**3544**  5:25
**3579**  5:14
**363**  2:17 3:6
**365**  2:18 3:6 5:14
    86:19 87:15 88:10
    89:17 90:5,8 93:7
    94:16
**3851**  5:20
**3877**  2:14
**390**  16:11
**3910**  26:12
**3949**  6:14
**3970**  26:20
**3rd**  58:5

**4**

**4**  72:7 86:19 87:15
    88:10 89:17 93:7
    94:16
**400**  18:12
**4054**  3:13
**421**  26:12
**4224**  5:4
**4238**  3:17
**4239**  4:6
**4270**  27:20
**48067**  18:13
**487,460**  28:15

**5**

**5**  9:15,21 55:7
    99:12
**5,000**  57:3,8
**50,000**  61:24
**503**  2:9,18 3:6
    6:13
**507**  20:25 21:13
    21:24

**51**  16:20 18:20
**515**  60:4
**52**  74:6
**52nd**  18:20
**54**  87:13,17
**55**  14:19 74:13
**560,000**  28:8
**576**  58:19

**6**

**60**  37:14 99:9
**600**  14:11
**60603**  14:21 16:5
**60606**  15:5
**612**  58:5
**620**  15:18
**630**  15:11

**7**

**7**  56:19 59:16
**70**  39:5
**70,000**  50:21
**700,428**  27:24
**759,000**  28:11
**767**  11:4

**8**

**8**  7:10 56:20 57:5
**80**  28:3 34:14 39:5
    96:23
**800**  14:20
**8th**  87:12

**9**

**90**  39:5
**90,000**  31:2
**90067**  17:12
**919**  13:18
**92101**  14:13
**930**  14:12
**95**  99:12
**97**  33:16 99:15

**a**

**a.m.**  2:5 98:3

**ability**  53:12
    57:14 58:25
**able**  24:15 30:21
    37:21 46:5 60:19
    93:2 94:10
**absolute**  56:7
**accelerate**  56:21
**account**  28:9,10
    60:8
**accountants**
    40:15
**accurate**  100:4
**ace**  69:13
**acknowledge**  44:1
    58:3 96:21
**acknowledged**
    59:17
**acknowledges**
    67:2
**acknowledgment**
    96:18
**action**  20:23,25
    30:12,25 57:9
    64:20 68:1,3,6,12
    70:12 73:7,12,13
    74:7 75:5 76:21
    81:8,17 82:25
    83:18 84:24 85:3
**actions**  66:1,19
**actual**  7:16 10:5
    32:7,15 57:20
    64:16
**actuaries**  39:20
**actuary**  39:20
**adams**  15:3
**add**  24:9,12 29:16
    33:7 51:12 54:2
**addition**  23:12
    73:12 75:17 87:3
    91:15
**additional**  5:6,12
    5:19,23 6:5,9
    28:15 61:7 87:19

**address**  19:22
    22:3 25:2 62:25
**addressed**  53:20
    72:22
**addresses**  91:17
**addressing**  22:13
**adequate**  5:16
    28:9 93:18
**adequately**  93:7
**adjourn**  69:2 71:5
    72:2
**adjourned**  22:1
    24:7 26:13,21
    63:17
**administration**
    46:5
**administrative**
    2:8 6:12 8:3,9
    21:1 28:5 36:9,11
    36:21,25 37:25
    45:6 96:19 97:9
**administratively**
    96:20
**admit**  66:20
**adopt**  60:2
**advance**  23:25
    24:3
**adversary**  72:22
    75:23 76:1,11,17
    78:5,6 82:20
    83:14,25 84:1,4
    84:18 85:19 86:6
**advised**  36:24
**advisor**  7:21 8:21
    9:10,20
**advisors**  8:16
    40:15
**affect**  81:16
**affiliated**  25:22
**affiliates**  13:9
    87:1
**age**  42:4

agency 13:2 74:10 74:20

agenda 2:4 19:11 25:16,17,24,25 26:5,24 29:25 63:12 72:7 86:18 87:3,7 89:7 95:12 95:15 97:21

agendas 19:10

agent 8:3 80:11 81:13

agents 74:16 75:1 77:20 82:25

aggregate 66:10 66:23 67:13,16 69:23

ago 44:20

agree 20:20 25:14 29:17 40:24 58:18 60:3 63:7 68:18

agreed 19:18,24 20:10,13 28:2,13 29:3 31:1 35:2 56:13 58:10 90:17 90:18 92:25 93:11 95:23 96:13

agreement 24:14 26:17 27:18,19 28:24 52:21 58:13 63:1 73:23 79:7 79:11,21 80:10,20 80:21 81:25 82:1 87:5 91:15 92:21

ahead 66:6

aig 74:7

akin 7:1 12:1 24:11

al 1:10 2:1 4:5 7:22

alleging 80:4

allen 15:14

allow 2:7 4:9 6:11 45:1

allowance 7:3,15 7:22 8:9 10:3 63:2

allowed 97:3

allowing 67:9,9

allstate 35:10

alluded 44:19

alternative 39:9 47:13 61:15

alvarez 8:16

amenable 38:25

amend 22:11 30:25 47:3 56:18 83:8

amended 45:23 47:3 58:16 60:18

amending 86:15

amendments 46:6

america 8:16

americas 11:13

amount 5:10,16 5:24 27:23 28:4 28:10,15 47:16 48:11 56:22 57:3 57:8 92:21 93:4

amounts 2:19 3:7 57:4 97:12

amy 6:22 18:23

analysis 58:18 59:24 60:2

analytics 9:8

angeles 17:12

annotated 75:15

announce 19:14

announced 56:23

answer 35:6 77:8

anticipate 24:15

anticipated 20:7 47:22

anybody 39:8

anyone's 63:5

aon 69:14 74:9 77:18 78:7,24 79:6,14,25 80:3

80:11,13,18,19,22 80:23 81:12,15,17 81:24 82:9 83:18 86:9,9,10

apa 20:23 24:2

apart 46:10

aplc 14:9

apologies 88:25

apologize 25:24

apparently 30:20 55:8,17

appeal 4:9

appear 58:13,22 77:4

appearance 68:6

appeared 32:6

appears 30:22 36:18 38:6 59:21

applebaum 2:10

applicable 60:21 60:21 67:1

application 6:16 6:21 7:1,8,13,20 8:2,8,15,20 9:1,7 9:13,18,23 10:2 53:20 54:23

applications 54:14 95:20,25 96:2,7,10,16 97:12,14 99:16

applied 66:19

applies 44:11 49:6 60:5 67:23

apply 41:4 44:13 44:14 47:6,10 48:19 59:10 65:10 68:3 77:9

applying 60:6

appoint 45:12 47:13 55:20 59:20 59:20

appointed 39:16 53:10 95:22

appointing 38:12 43:22

appointment 3:11 38:7,10 44:18 59:1 99:10

appreciate 31:23

approach 37:17 62:22 87:8 94:14

appropriate 41:20 54:9

approval 22:10 31:17 33:8 56:17 96:1 99:16

approved 22:12 30:13,25 32:16,23 55:8 57:1,7

approving 99:13

approximately 28:8,11 65:19

april 27:22 63:16

archer 15:9

archives 32:15,17

arguably 48:19 59:19

argue 65:20

argued 59:6

arguing 44:13,14 48:13,14

argument 46:16 46:18 47:13 48:6 59:10,17 60:23 70:1

arising 74:17

arrearage 28:4,14

arrears 27:23

article 65:17

asked 34:3 38:13

aspects 53:16

assert 64:6

asserted 64:15 82:5

asserts 78:3

**assets** 43:1 59:8
**assign** 26:18
**assigned** 87:13
**assigning** 87:18
**assignment** 5:6,11
5:12,19,23 6:5,9
87:11,20 90:9
92:22 99:13
**associated** 65:17
**association** 65:21
**assume** 26:18
43:3 63:6
**assumed** 69:14
87:13
**assuming** 47:6
87:18
**assumption** 5:6
5:10,11,19,23 6:4
6:8 87:11,20 90:9
92:22 99:13
**assurance** 5:16
**asterisk** 92:16
**attach** 97:16
**attached** 28:22,24
31:6,14 32:8,12
38:3 52:18 55:10
91:25
**attachment** 33:7
**attorney** 6:23
**attorneys** 9:2 10:3
11:3,12 12:2 13:9
13:17 14:2,10,18
15:2,10,17 16:2
16:10,19 17:2,9
17:17 18:2,10,18
28:16
**auburndale** 88:21
**auditor** 9:20
**august** 21:19,23
23:13 35:2,25
66:11,12,12 71:10
71:10

**aust** 12:16
**authority** 94:20
**authorized** 57:25
**authorizing** 26:17
**automatic** 4:8,17
5:2 26:10 63:13
72:8 73:3 74:14
84:16
**available** 21:22
63:18 67:3,5,7
68:7,11
**avenue** 11:4,13
12:20 15:11,18
16:11 17:18
**aware** 26:6 52:23
55:23 59:18

## b

**b** 1:23 2:9,18 3:4
3:6 5:24 6:13
20:25 21:13,24
97:16
**b.r.** 60:4
**back** 21:23 22:3
24:6 45:13 61:6
61:25 64:4,7 69:7
71:1,4,20,21
80:20 81:18 82:18
86:7
**bad** 52:10
**baird** 13:6
**balance** 33:18
**ballard** 13:16
14:1
**balls** 37:8
**baltimore** 14:5
**bank** 58:19,20
59:25 60:4
**banker** 7:14 8:11
9:24
**bankruptcy** 1:2
1:16,25 3:11,16
4:3,19 5:4 9:10
42:5 52:5 55:4,24

56:4 57:19 59:18
65:24 66:2,3
73:22,25 74:15,16
76:1
**bar** 36:23,25
44:22 45:1
**barefoot** 2:24
13:14 86:22,24,25
87:10,25 88:2,6
88:13,16,18,20,23
88:25 89:2,5,10
89:20 90:11,16,18
90:21,24 91:2,5
91:11,20,24 92:2
92:4,7,9,15,24
93:10,14,17 94:2
94:9,13 95:3,10
**barrier** 21:15
93:6
**barris** 16:16
72:14,16,20 73:4
73:6 74:23 75:2
75:11,14,17,21
76:2,10,13,16,21
76:25 77:6,17,24
78:6,9,12,15,17
78:20,23 79:1,6
79:10,15,20,24
80:1,8,12,14,16
80:19,23 81:9,20
81:23 82:7,12,14
83:8,11 84:6
**bartley** 11:23
**based** 22:8 74:20
83:2 89:24
**basically** 76:18
**basis** 2:19 3:7
77:15 78:4 79:13
80:17,22 81:15
86:7
**basta** 11:17
**beat** 37:15

**beck** 10:25 100:3
100:7
**becoming** 51:18
**bedford** 6:7
**begins** 41:17
**begun** 96:4
**behalf** 2:10,20,24
3:12 4:4,10,14,20
19:5 25:21 30:6
65:3 72:16 86:22
93:23
**belief** 66:9
**believe** 30:17 32:9
33:2 46:14 53:11
53:13 58:9 60:13
62:2 64:21 65:25
81:23 85:5 96:4
96:19
**believed** 82:2
**believes** 32:22
95:7
**ben** 39:24
**beneficiaries**
55:14 61:17
**beneficiary** 48:18
**benefit** 13:1 27:10
28:10 33:17 35:3
36:9,12 39:13,24
43:7 49:10 55:22
58:23 60:8 61:18
**benefits** 30:11,15
30:17 34:9 36:7
36:20 38:5,6,16
38:18,23 39:6
41:7,22 42:25
43:4,6,15 45:14
45:24 46:11 48:2
48:7 55:24 56:12
57:23 58:3,3 63:5
63:6
**bernice** 2:20 3:3
27:1 29:12 99:7

**best** 20:21 37:17
42:2 59:24
**beyond** 30:16
56:23 61:7 64:7
**big** 36:22 39:25
56:9
**binding** 77:13
**bishop** 2:20 3:3
27:1 29:13 99:7
**bit** 44:14 46:1
47:19 92:16
**bite** 71:20,22
**blackline** 22:13
**board** 19:23,25
20:1,14 23:20
24:22,25,25
**boggs** 17:1
**bother** 37:12
**bottom** 84:15
**bought** 64:4
**bounces** 93:12
**bradshaw** 5:9
**brainer** 61:13
**branded** 2:9
**brauner** 12:7
**breach** 36:8 46:24
**break** 74:4 81:6
89:23
**breaking** 77:19
**breaks** 88:11
**brief** 84:12
**brighton** 5:18
**bringing** 89:20
**brings** 86:17
92:15
**britton** 11:16
**broader** 77:12
**broadway** 14:11
18:3
**broker** 73:9 74:20
78:24 83:2,5,6,22
83:23 86:10

**broker's** 84:2
**brookfield** 17:17
89:18
**brothers** 38:11
**brought** 85:21
**bruce** 3:13 16:19
30:7
**bryant** 12:4
**budget** 61:1,5,7
61:21
**built** 20:18
**burbank** 88:3
**business** 9:8 27:1
48:3 93:5
**buyer** 43:3,4 63:6

**c**

**c** 5:24 11:1 12:8
12:16 19:1 100:1
100:1
**ca** 14:13 17:12
**cal** 39:21
**calandriello** 15:1
**calendar** 71:4
86:3,5,8
**california** 92:11
**call** 37:8 84:4
**called** 21:13 34:21
46:9
**cancer** 65:18
**cancers** 65:17
**cap** 53:10
**capital** 7:13 17:9
**care** 38:14
**carried** 29:21
**carrier** 68:9,10
69:6
**carriers** 73:9
**carry** 35:2 53:12
**carve** 97:2,7
**carved** 41:4
**case** 1:4 19:12
23:8 34:19 36:16
37:14,18 44:5

47:22,22,25 51:22
53:16 54:9,12
56:4 58:22 59:7
59:18 61:6 64:16
65:16 69:12 70:3
72:20 73:15,18,22
79:1 82:24 83:1,3
96:20 99:15
**cases** 25:13 36:17
38:19,20 42:24
43:25 44:1,10
54:11 58:20 59:18
60:6 62:5
**cash** 47:14,19
**category** 54:15
**cause** 73:12,13
75:4 81:7,17
83:18 85:3
**causes** 20:23,25
34:11 73:7 74:7
82:25 84:24
**cede** 63:25
**center** 92:18
**central** 74:9
**century** 17:10
**certain** 6:2 21:11
24:1 30:1 65:16
91:17 96:21
**certainly** 31:1
42:22 58:18 61:19
62:21 63:4
**certificate** 74:10
74:21 80:15,24
**certificates** 73:14
79:2,5,16 80:1
**certify** 100:3
**cetera** 42:4 47:4
77:21 78:16
**ch** 2:2
**chambers** 26:2
29:22 87:22 91:8
91:10,21 95:5

**chance** 40:2
**change** 19:24 23:3
46:11 49:10 56:16
96:22
**changed** 45:24
**changes** 22:13
31:19
**chapter** 44:12
53:16 59:9,16,16
59:23
**check** 61:5 92:24
93:1,3,12,15
**chicago** 14:21
15:5 16:5 30:14
32:18,18
**chico** 16:16 72:14
72:16,17,20 73:4
73:6 74:23 75:2
75:11,14,17,21
76:2,10,13,16,21
76:25 77:6,17,24
78:6,9,12,15,17
78:20,23 79:1,6
79:10,15,20,24
80:1,8,12,14,16
80:19,23 81:9,20
81:23 82:7,12,14
83:8,11 84:6
**chief** 60:3
**chirls** 84:7
**chorus** 98:1
**chubb** 63:21 66:9
**cir** 58:5
**circuit** 41:12
51:22 57:18 58:4
**circulate** 22:9
**circulated** 23:6
30:20
**circumstances**
42:24 81:15
**cited** 48:16 58:21
**civil** 4:9 73:20
74:2 75:3,18,19

76:5

**claim**  2:8 6:12
8:10 21:1 28:5
36:21 37:2 43:15
46:23,24 48:14
64:6 65:12 67:10
67:10 68:17,20
69:7,10 70:9,18
71:2 74:18,19,24
79:14 80:4,6,17
80:22 82:4,5,9

**claimants**  57:1,7

**claimed**  76:22

**claims**  20:4 21:13
40:3 45:1,5 48:12
57:11 63:2,2
65:10 67:1,6,8
74:5,15

**clarify**  31:22

**class**  30:12,25
31:2,23,25 33:6
33:11,17,21,23
34:1,2 48:18
49:16,18 55:6,13
56:12,22 57:6,9
57:15 58:10,17
59:1 60:14

**clause**  27:13
73:24

**clear**  30:15 41:5
48:6,15 55:13
71:15 82:24 83:1

**clearer**  83:16

**clearly**  43:12 59:7

**cleary**  13:8 86:22
86:25

**clerk**  8:3

**client**  68:17 79:12
79:17,19 80:24,25
81:4 82:2 94:3

**clients**  92:20,21
94:9

**close**  95:13,13

**clovis**  92:10

**clubs**  60:4

**code**  3:11,16 4:3
43:24 55:4,24
57:19 73:11,19,20
74:1,2 75:3,4,4,15
75:18,19 76:5

**collateral**  77:4,9
97:3

**colleague**  32:4
81:7,11

**collect**  74:3

**colloquially**  61:12

**colloquy**  53:17

**colon**  4:20 16:15
72:17,19 81:3
84:22 85:10,14,17
86:12,15

**come**  21:23 22:3
38:24 49:23 61:6
61:25 63:1 71:20
71:21

**comes**  36:22
53:22 59:5

**coming**  23:23
97:5

**commencement**
8:5

**commencing**  21:3

**committee**  3:11
4:1,4 7:2,14,21
12:2 19:17,18
21:7,21 24:11,13
24:14 25:8,9 31:9
37:3 38:8,10,12
38:21,23 39:12,17
40:5 42:10,11,12
42:13 43:20,23
44:19,20 45:12
47:14,23,24 48:11
49:14,15,17 50:5
53:9,11,14,15,19

53:21 55:3,20
59:2,20,21 60:13
60:25 61:3,9
62:10,14,20,21,25
99:10

**committee's**  22:13
37:5 47:16

**committees**  54:11

**communicated**
56:23 79:9 95:22

**community**  14:18
15:2,10

**companies**  39:23
74:2 76:3,11

**company**  52:20
67:12 69:14 74:8
74:15,25 75:5

**compel**  2:7,16,24
3:4 6:11 27:4 99:7

**compensation**
6:17,21 7:3,15,23
8:2,8,10,15,20 9:1
9:8,14,19 10:3

**completely**  58:18

**complicated**
22:16 29:19 38:12
39:22 52:13

**composition**
19:24

**conaway**  7:8
11:19

**concern**  62:4

**concerning**  53:7
90:6

**concluded**  98:2

**concludes**  97:21

**conclusion**  25:13
60:17 84:18

**condition**  20:8
92:22

**conditions**  5:17

**conduct**  86:11
96:6

**conference**  22:4

**confidential**  73:22

**confirm**  68:23
93:2 94:15

**confirmation**
21:15,19 22:1
23:25 24:3,7 25:2
42:7 45:8 59:5
63:20 94:2 96:25

**confirmed**  45:7
64:10

**confirming**  94:21

**conflict**  51:16

**conflicts**  7:9 11:20

**confused**  88:12

**confusion**  25:24
87:3

**congress**  41:5
44:2 45:4

**congressman's**
59:13

**connection**  31:6
95:25 96:1

**consensual**  87:20
90:9,25 92:9,12

**consensus**  20:19

**consent**  20:22
92:17

**consider**  60:7

**considered**  20:10

**consistent**  58:19
62:10

**constituents**  63:2

**constitution**  12:20

**constricted**  60:11

**constructive**  78:4

**consultancy**  6:11

**consultant**  8:21

**consulting**  7:20

**contains**  30:22

**contemplate**
39:16

**contemplated**
  23:17
**contemplating**
  23:20
**contend** 57:13
**contended** 28:1
  56:6
**contending** 58:6
**contends** 58:8
**contention** 27:12
**contested** 56:8
**context** 43:2,24
  44:14 47:24 53:20
  58:15
**continue** 48:2
  69:25 95:4
**contract** 46:23
  74:8 81:6
**contractual** 77:12
**contrary** 30:19
**controlled** 6:3
**convince** 60:19
**cooke** 64:20
**cooperation** 24:13
**cooperatively**
  92:20 94:9
**copy** 55:9 62:9
  94:5
**corners** 51:14,25
**corp** 58:5,19
**corporation** 1:10
  2:1 4:5,15 7:22
  13:1 19:3 25:22
  26:9 92:17
**corpus** 43:5
**correct** 22:18
  28:23 29:10 48:8
  51:6,13 73:4
  74:23 88:16,18
  91:24 94:25 97:10
**cost** 23:8 39:2,24
  50:2,3 68:2

**counsel** 7:2,9
  11:20 20:12,15
  29:12,18 31:24,25
  35:1 39:17 49:17
  61:18,25 62:3,6,9
  63:14,20,23 65:6
  66:5,8,23 72:10
**counsel's** 69:21
**country** 100:14
**county** 64:21
**couple** 19:22 26:1
**course** 44:23 45:4
  79:17 85:22
**court** 1:2,16 19:2
  19:8,12 21:17,18
  21:23 22:3,5,7,19
  22:23,25 23:5,7
  23:11,17,22 24:4
  24:8,21,23 25:3,5
  25:14,19 26:5,7
  26:11,15,23 27:2
  27:6 28:18,19,22
  28:24 29:2,5,8,11
  29:16,20,24 30:4
  30:9,13,25 31:3,5
  31:9,11,14,16,21
  31:23 32:2,4,6,14
  32:20 33:1,3,5,10
  33:19,22,25 34:4
  34:6,10,15,23,25
  35:6,13,16,19,22
  35:24 36:2,5
  37:11 38:17,20
  39:14,16 40:4,8
  40:10,13,16,18,23
  41:9,11,12,19,22
  41:24 42:9,14,16
  42:18 43:17,19
  44:1,5,9,16,21,24
  45:2,5,10,10,15
  45:20,25 46:13,15
  46:20,23 47:1,5
  47:11,13,15,18

  48:9,13,24 49:2,5
  49:8,11,13 50:1,8
  50:11,14,17,22,24
  51:2,4,7,10,21,23
  52:1,3,9,12,17,22
  53:2,24 54:2,4,10
  54:17,20,25 55:2
  55:8 57:18 59:19
  60:20 61:7 62:13
  62:18,24 63:9,15
  64:1,3,6,10,13,16
  64:17,25 65:2,5
  66:4,6,22 67:10
  68:8,13,22 69:1,5
  70:5,8,12,15,20
  70:23 71:1,7,9,12
  71:14,17,19 72:2
  72:5,9,12,15,18
  72:25 73:5,7 74:4
  74:24 75:6,13,16
  75:20,22 76:8,12
  76:14,20,23 77:2
  77:8,19,25 78:8
  78:10,14,16,19,22
  78:24 79:5,8,13
  79:18,23,25 80:3
  80:11,13,15,17,21
  81:2,4,10,21,22
  82:4,8,13,16
  83:10,12 84:14,21
  85:1,12,15,18,25
  86:14,16,20,23
  87:9,23 88:1,5,7
  88:12,14,17,19,22
  88:24 89:1,4,9,19
  90:10,15,17,20,23
  91:1,4,9,19,23,25
  92:3,5,8,14,23
  93:9,11,16,19,22
  93:25 94:4,12,18
  94:20 95:2,6,11
  95:14,17,19 96:3
  96:8,10,14,16

  97:6,8,11,14,20
  97:22,25
**court's** 31:17
  41:17 60:6
**courts** 57:18 58:1
**covenant** 5:17,25
**cover** 33:25
**coverage** 61:15
  63:18,21 64:13
  65:23 67:1,6,7,19
  67:23 68:3,21
  69:15 70:3 76:18
**covered** 36:2
  46:17 49:15 50:4
  61:13 95:8
**covers** 50:2 89:16
  89:25 90:11 91:12
**craftsman** 2:9
**creates** 36:7
**creating** 36:19
**creation** 56:11
**creditor** 14:10
  16:2 17:2,17 42:5
**creditors** 4:2,5
  7:3,15,21 12:3
  19:17,18 21:7,21
  25:8 39:5 53:14
**creep** 83:5
**critical** 66:13
**criticized** 45:11
**crystal** 83:1
**cure** 5:10,16,24
  92:21,25 93:4
**current** 20:4
**cursory** 84:17
**cut** 48:2 92:25
**cyrus** 17:9

**d**

**d** 1:24 2:10,18 3:4
  3:6,10,16 4:3 19:1
  86:19 87:15 88:10
  89:17 93:7 94:16
  99:1

daily  34:18
daluz  13:22
damages  67:15
  69:18 73:25,25
  74:3 76:7 84:3
dart  14:10 92:17
  93:24
date  8:5 21:19
  22:1 23:13 24:7
  26:14,22 36:23,25
  44:22 45:1 71:6
  87:21 89:11,12
  100:11
dated  52:19 55:7
dates  21:22 23:13
  24:6 64:8 71:12
dave  65:3
david  4:10 16:7
day  24:19 37:18
  37:24
days  23:23 93:5
dc  12:21 13:4
de  13:20
deadline  72:1
  88:10 89:17 93:7
deal  22:14 37:23
  38:1,2 54:15 61:9
dearborn  16:3
death  43:5 56:2
debt  67:9
debtor  2:9 34:8
  48:1,2,7 56:3
  57:22 58:2 59:22
  60:9,10,15 69:8
  69:10 71:2,20,22
  77:3,4,9,11 79:21
  80:7,9 83:17,17
  83:24 84:9 85:20
  85:22
debtor's  85:7,21
debtors  1:12 2:13
  4:13 6:22 7:9 8:3
  8:12,17,22 9:3,3

9:24 10:3 11:3,3
  11:12,12,20 19:5
  19:17,25 20:3,4
  21:7,15 24:13,24
  25:22 26:18 27:13
  27:24 28:1,3,7,12
  30:21 34:25 35:1
  35:20 36:8,16
  37:6,10,18 38:3
  38:13 39:18 40:25
  41:14 42:23 43:1
  43:3,10,12,14
  44:12,23 45:22
  46:12,12,16,18
  47:3,14,19,20
  48:5,13 49:17
  50:1 53:8 54:14
  56:5 58:21,25
  59:3,6,7 60:19
  61:12 62:2,9,17
  63:11,17,19 66:14
  66:16,20 67:9,25
  68:5,17,20 70:19
  74:3 75:24 76:3
  83:22 86:11 91:20
  96:19
debtors'  3:2,15
  4:2 5:1,10 74:8
decide  58:15
decided  83:15
  84:19
decision  42:21
decisions  51:15
declaration  32:13
  55:11 73:1
declaratory  26:10
  82:22
declare  4:18 5:3
defend  67:4,8
  68:6,8,13,18
  69:17,19,24,25
  70:4

defendant  77:13
defendants  56:13
  56:21 57:2,7
defense  67:12,24
  68:9 76:22
defined  33:6 55:7
  58:24
defining  85:4
definition  55:23
  60:11
definitionally
  61:3
definitions  57:11
defraud  81:5
delay  21:3 96:5
delicate  36:16
delivered  2:9
deloitte  9:7,13,18
delphi  41:4 47:16
  58:19 59:2 61:6
demand  5:13 90:5
  90:7
demands  76:5
demonstrate  41:1
deny  38:7,8,21
  70:20 71:22 86:2
  86:4
department  12:10
  12:18 40:22
depending  83:24
  96:21
deposit  90:8
deputy  21:18
describes  74:5
describing  75:9
description  30:20
  56:18 99:5
designatable  5:7
  5:12,19,23 6:5,9
designated  20:2,3
  87:14 99:14
designation  27:16

designees  20:3
  24:19
determination
  77:3
determine  50:13
determined  24:19
  71:6
determining
  48:11
detriment  74:18
deutsch  16:18
  30:6
developed  42:6
development
  19:12 22:8 65:16
devlin  51:20,22
  51:24
diaz  91:13
died  35:3
diego  14:13
difference  67:4
different  42:23
  44:15 76:24 77:1
  85:1,25 89:16,24
differently  37:8
  85:5
difficult  42:22
diligently  87:16
direct  70:12 73:11
  73:13 75:4 86:8
directing  3:11
  99:10
directly  65:11
  70:13
directors  26:11
disadvantage
  46:2
disagree  49:17
  71:3
disagreed  44:6
disagreement
  20:15 41:11

disagrees  58:5
disclosure  19:15
  20:5,6,9 22:9,10
  22:11 23:4 24:16
  31:12 32:10 55:12
  96:18
discovery  65:14
  73:17 90:6
discreet  54:13
discretion  46:12
  59:20 60:6
discuss  72:23
discussion  37:6
discussions  41:21
  94:7
dispute  27:11
  45:17 49:22 82:19
  96:24
disputed  30:14
disputes  58:23
  96:22
distinct  69:20
distinction  59:14
  59:16
distribution  92:18
district  1:3 14:18
  15:2,10 26:11
  30:13 31:17 55:8
  55:9 58:1
dizengoff  4:4
docket  66:15
document  2:21
  30:18,21,23,24
  32:15,19,25 46:8
  46:9 51:15 52:24
  92:2
documentation
  66:25
documents  32:14
doing  27:1 47:23
  47:24 57:24 83:23
dol  62:9

dollar  39:3,4
  48:15 68:2
dollars  67:16,18
  67:18,24 68:1,11
  68:19
door  69:7 71:1
draft  94:6
drafting  22:17
  23:12
drain  1:24
drawn  80:7
driving  20:19
drye  17:16
dublin  12:8 24:9
  24:10,11,22,24
  25:4
due  27:14
dug  31:11
duties  53:13
duty  67:4,5,8
  69:17,19,20,21,24
  69:24 70:3 83:6
  86:10
dying  34:18

**e**

e  1:23,23 2:17 3:6
  4:20 11:1,1 16:15
  18:15 19:1,1
  29:22 57:21 59:4
  62:6 66:8 91:9
  94:1 97:15 99:1
  100:1
earlier  56:11
earned  6:17
east  14:3 17:10
easy  21:2 22:14
  50:8,12 60:23
  87:8
ecf  2:11,14,25 3:8
  3:13,17 4:6,10,15
  4:21 5:4,7,14,20
  5:25 6:5,9,14,18
  6:23 7:6,10,18,24

8:6,13,18,23 9:5
  9:11,16,21,25
  10:6 26:12,12,19
  27:5,20 66:14
  72:8
echo  62:20
economic  22:21
economical  34:16
edward  15:21
effect  58:16
efficiently  63:8
efforts  19:16
eight  89:13
eighth  15:18
either  36:14 62:4
  63:2 68:16 70:10
  71:20 88:9 89:6
  96:5
elaborate  47:18
elderly  51:1
electronic  87:22
eligibility  68:21
eliminate  21:15
employee  43:7
employees  3:12
  30:12 31:2 33:15
  43:6,8 44:13 46:3
  46:4 99:11
employing  60:11
enable  48:2
ends  39:4
enforceable  41:1
  41:2
engagement  37:22
ensure  21:22
enter  28:18
entered  38:22
  45:21 73:22 87:17
  94:23
entities  74:25
entitled  33:17
  39:10 43:7 47:17
  67:3,14 75:24

76:6 78:20 83:4
  85:3
entity  55:25 67:15
entry  3:10 29:22
  89:3 93:6 99:9,12
equation  39:1
equitable  78:3
erisa  47:6,9 51:13
  51:17 52:4,7,15
  60:23
escalation  27:12
especially  59:12
esq  11:7,8,9,16,17
  11:23 12:7,8,23
  13:6,13,14,22
  14:7,15,23 15:7
  15:14,21 16:7,15
  16:16,24 17:6,14
  17:21 18:7,15,23
essence  60:10
  69:7
essentially  38:20
establish  43:11
established  42:8
  56:3
estate  2:20 3:3
  4:20 5:4 8:21 20:4
  20:21,23,25 21:6
  25:11 26:25 36:14
  38:16 73:2 81:16
  82:22 85:21 99:6
estates  62:4
estoppel  77:4,9
et  1:10 2:1 4:5
  7:22 42:4 47:4
  77:20 78:16
europe  74:7
evaluate  48:1
evaluated  38:16
evaluating  47:25
event  84:5
evercore  8:9

**everybody** 50:3
52:23
**everyone's** 21:22
**evidence** 45:17
60:18 63:17 66:23
**exactly** 46:24
**examiner** 13:17
14:2 95:22 96:4,6
96:14
**examiner's** 95:25
**example** 33:13
54:13 88:20
**exceeded** 64:13
67:15
**exception** 41:4
44:5 56:9
**excessive** 53:18
**exclusively** 55:6
**excuse** 60:1
**executives** 35:18
**exercise** 41:17
**exhausted** 63:23
66:10,24 67:13
69:22,24
**exhibit** 32:8 50:18
50:19,20 51:5
92:1
**existence** 53:22
67:20
**exists** 67:8
**expect** 24:18
62:13
**expectation** 94:10
**expects** 24:15
**expense** 2:8 6:12
8:4 28:5 36:11
37:25 39:2
**expenses** 7:4,17
7:23 8:11 9:9,15
9:20 10:5 36:9,19
45:6 96:24
**expensive** 48:3

**experts** 47:9
**expire** 93:8,9
**explain** 52:5 75:2
**explained** 38:18
65:7
**explicitly** 96:13
**exploring** 81:11
**exposure** 65:21
**expressly** 52:20
56:14 80:24
**extend** 44:25
**extended** 88:9,10
**extension** 89:6,17
94:16,23
**extensions** 87:15
**extent** 20:24
44:21 53:18 54:13
56:19 67:19 69:25
94:15
**extinguished** 66:1

**f**

**f** 1:23 11:9 100:1
**f.3d** 58:5
**faced** 34:8
**fact** 27:15 33:6
37:2 38:15 42:10
45:22 46:21 47:20
47:21 57:13 58:14
58:23,24 60:8,9
61:11 67:13 85:2
**factors** 20:10
84:17
**facts** 38:9 42:23
75:9 77:2 81:18
84:5
**fail** 4:14 11:7 19:7
95:13,15,18,20
96:4,9,13,15 97:5
97:7,10,13,18,21
97:23
**fairly** 22:14 23:12
29:20 62:22

**fairness** 32:16,23
**faith** 19:16 61:23
**fallen** 33:21
**falls** 76:18
**false** 73:15
**familiar** 29:20
**family** 26:21
**far** 40:25 55:21
74:5 77:20 83:3
**favor** 24:17 84:1
**favorable** 27:9
**february** 6:18 7:5
7:10,18,24 8:5,17
8:23 9:4,10,16,21
9:25 10:6 43:2
**fee** 6:16,20 7:1,8
9:7,13,18,23
13:17 14:2 53:20
54:8,14,22 95:18
95:22,24 96:1,4
96:14,23 99:16
**feel** 52:5
**fees** 28:16 53:10
53:18 54:23
**feet** 36:18
**feld** 7:2 12:1
**felt** 65:8
**fennell** 14:9,15
93:21,23,23 94:1
94:5,15,19,25
95:1
**ferraiuoli** 16:9
**fiduciary** 53:12
**field** 62:1
**fifth** 11:4 92:9
**figure** 37:17 39:23
51:2,14 80:6
**file** 40:3 45:1
62:22 64:20 68:5
**filed** 2:10,19,24
3:12,16 4:3,9,14
4:20 26:20 27:20
30:1 32:8 37:10

64:16 65:24 72:21
72:23 87:20 88:4
89:14,18
**filing** 26:10 56:4
57:10
**final** 6:21 31:18
32:22 56:17 95:15
96:1
**finally** 28:13
47:12 89:15
**financial** 7:20
8:16 40:15 48:4
62:3
**find** 30:22 32:1,13
34:13,21 38:9
46:4,4,6 52:25,25
**fine** 72:2 87:9
89:1 94:14 95:6
**firm** 30:3
**first** 6:16,21 7:1,8
7:13,20 8:2,8,15
8:20 9:1,7,13,18
9:23 10:2 16:21
25:23 26:8,24
64:6 67:23,24,25
68:11,19 83:15,21
84:4,19 89:25
90:18
**fish's** 59:13
**fit** 47:13
**five** 20:1,19 67:16
67:18,24 68:1,2
68:11,19 87:19
88:2,24 89:2
90:18 93:5
**fixed** 33:23
**fl** 16:13
**floor** 13:19 14:4
16:21 17:11 18:4
59:13 63:25
**florey** 14:23
**focus** 23:2

focusing 23:18
folks 48:19
following 19:15
  87:10
follows 27:22 56:9
force 58:9
foregoing 100:3
foregone 57:4
form 29:4 31:7
  43:20 55:3 56:24
  56:25 62:14 87:7
  90:9 91:6,6 92:12
formally 62:8
formed 60:13
former 26:11
  30:12 35:17 43:6
  60:3
forms 66:21
forth 24:7 58:11
forward 26:4
  45:23 49:23 62:19
  67:17 89:22 93:6
found 32:19 45:22
four 20:19 51:14
  51:24
fourth 90:14
  91:12
fox 15:21
frame 23:18
fraud 80:4
frederikstad
  91:13
freres 9:23
friendly 64:22
front 62:24 76:9
  76:14 78:1
fti 7:20
full 96:6
fully 24:15 37:13
function 51:7 61:1
  61:2
fund 48:7 56:2

funded 38:16
funding 20:6,7
  61:16
further 51:10
  83:11 88:10 89:6
  89:17 94:16
furthermore
  41:25
future 48:9 70:1

## g

g 15:14 19:1 99:3
gallagher 4:10
  16:7 63:25 64:19
  65:1,3,3,6 66:5,7
  68:4,22 69:5,11
  70:7,11,14 71:18
  71:24 72:4
gallagher's 68:17
game 37:16
garret 4:14
garrett 11:7 19:6
garrison 9:2
  11:11
general 66:10,18
  66:21,24 69:16,22
  70:17
generate 36:11
gensburg 15:1,7
gerber 38:1,4
gerson 12:23
  40:21,21,24 41:10
  41:16,20,23,25
  42:12,15,17 51:12
  51:22,24 52:2,8
  52:10
gigantic 50:23
give 24:5 79:21
  88:7
given 20:22 39:25
  42:3 46:2 59:10
  60:22 61:11,17
  62:3 77:21 93:1

global 19:19
go 34:13 38:14
  42:7 45:5 64:7,23
  66:6 69:10 70:13
  80:19 83:24 84:8
goes 37:24 67:17
going 20:1 21:25
  24:6 25:7 26:3
  28:19 30:2 36:20
  37:11 38:7,8,14
  39:4 40:2 42:3,4
  48:6 52:25 64:4
  71:15 72:23 76:24
  77:20 81:12,16
  83:4 84:2 85:7,24
  86:2,4,21 87:4
  89:21
good 19:2,4,8,9,16
  22:8 24:10 25:20
  30:5,8,9 40:2,22
  40:23 52:12 53:3
  61:23 72:14,15,19
  86:24 91:11 95:3
goodlettsville
  90:1
goods 2:9
gotshal 10:2 11:2
  19:5 25:21 62:17
  63:11
gottlieb 13:8
  86:25
governing 52:24
  52:24
government 13:2
  40:19
grant 53:25 71:21
  85:25 94:16 97:11
granted 99:8,11
  99:14,17
granting 62:7
greiner 15:9
group 8:9 18:2
  49:20 55:16,22

56:6
growing 37:24
guaranty 13:1
guess 23:11 35:3
  43:21 66:2 71:10
  76:18 77:17 78:7
  83:10,12 86:7
  88:12 96:22 97:15
gump 7:1 12:1
  24:11
gustavo 16:16
  72:17
guys 39:22

## h

h 12:23
halfway 27:25
hamilton 13:8
  86:25
hamstrung 53:12
hand 61:23 68:9
  91:7
handled 30:2
  86:21
hands 93:15
hanging 59:3
happened 49:9
happens 24:3
happy 27:8 91:7
hard 63:5 81:2
harner 13:17 14:2
  14:7
hauer 7:1 12:1
headed 56:11
heading 53:8
heard 63:16 83:3
  93:21
hearing 2:4 19:15
  22:11 23:25 24:7
  26:8,14,22 32:16
  32:24 36:13 63:16
  63:24 86:5 87:4
  87:11 90:4,7 93:8
  94:1 95:21 96:5

96:18
**heart**  27:11
**held**  6:16 58:2
**helpful**  37:4
**high**  49:19,20
**highlight**  19:21
**hill**  16:22
**history**  59:12
  66:17
**holdco**  2:25 6:4,8
  13:9 87:1
**holdco's**  99:12
**holders**  20:4
  21:13
**holdings**  1:10 2:1
  4:5,15 7:22 19:3
  25:21 59:25
**holds**  59:19
**hon**  1:24
**honor**  19:4,10,14
  21:4 22:20 23:10
  23:19 24:10 25:6
  25:18,20,24 26:25
  27:7,24 28:18
  29:14,23,25 30:5
  30:10 31:20 34:3
  34:7 35:9 39:22
  42:17,19,21 43:22
  44:4,8 45:14
  46:19 47:8,12
  49:23 50:7 51:9
  51:12 52:16 53:3
  53:11,15,21,23
  54:3,6,12,14 55:1
  62:12,16 63:10,19
  65:1 66:7 67:22
  68:12,16,25 69:4
  69:11 70:16,22
  71:5,13,23,24
  72:4,6,14,19,20
  81:3 84:11,22
  85:14,17 86:15,17
  86:24 87:2,10,25

89:3 90:3,14
  91:11,14 92:4,10
  92:19 93:3,10,17
  93:21 94:13,19,25
  95:3,10,13,16,20
  96:15 97:5,10,13
  97:18
**honor's**  87:6 91:7
  91:22
**hope**  23:9 63:8
**hopeful**  20:18
  21:14
**hopefully**  23:7
  38:24 39:12
**hoping**  89:21
**houlihan**  7:13
**huddle**  21:20,25
**huge**  43:9
**huh**  23:16
**hundreds**  87:12
**hurricane**  79:2
  91:17
**hypothetically**
  67:17

**i**

**i.e.**  81:12 85:6
  97:2
**identify**  74:25
**ii**  88:21 89:7
**il**  14:21 15:5 16:5
**illinois**  26:19 55:9
  64:21 65:14 70:12
**immense**  21:6
**impairment**  20:25
**important**  19:12
  22:16,23,24 24:1
  25:11 55:20 56:5
  57:17
**imposed**  53:22
**impossible**  21:5
**improper**  78:14
  83:23

**inability**  40:25
**inaccurate**  75:9
**inadequate**  27:14
**inadvertently**
  26:1
**inclination**  51:13
  82:16
**inclined**  53:25
**include**  32:9 78:7
  78:10,12 83:11
  96:13
**included**  26:4
  27:12 79:3 80:23
  82:1
**includes**  55:13
**including**  7:5 8:13
  8:23 9:4 10:6
  21:12 33:12 48:21
  62:25 66:11
**incorporate**  56:19
**incorrect**  73:16
  76:14
**incorrectly**  75:18
  75:25 76:4,6
**increase**  27:14
  61:25
**incurred**  7:17
  8:11 9:9,15,20
  10:5 67:9
**incurrence**  61:24
**indemnify**  67:5
  69:20,21
**indemnity**  73:24
**independent**  9:20
  65:9 73:25 74:14
  75:25 82:8 84:24
  85:5 86:10
**indiana**  90:13
  92:18
**indication**  45:22
**indiscernible**  27:5
  30:18 33:10 35:15
  94:17

**information**  5:17
  56:25 73:16
**injury**  65:22
**insert**  95:23
**insisted**  63:24
**instance**  24:2
**insurance**  4:19
  5:3 26:9 30:11
  34:14,15,16,22
  39:23 43:4 48:17
  48:19 51:18 52:19
  55:15,17,18,21,22
  56:6,12,22,24
  57:2,4,8,14,14
  58:11 63:18 64:11
  65:23 66:16,21
  67:3,11,11 69:9
  69:13 70:24 71:19
  73:1,8,9,10,14,14
  73:16,19,20,23
  74:1,2,8,9,10,11
  74:15,18,20,25
  75:3,4,5,14 76:3
  76:11,19,22 78:21
  79:3,11,16,22
  80:2,25 82:3
**insurer**  63:20
  68:16,18,19 69:9
  69:18 70:2,10,18
  75:5 77:10,20
  82:25 85:10,10,15
  85:22
**insurers**  35:2 73:8
  73:12
**intention**  64:23
**interest**  19:13
  20:21 21:12 23:2
**interested**  18:10
  18:18
**interesting**  52:9
  52:13
**interim**  6:16 7:1,8
  7:13,15,20,22 8:2

8:8,15,20 9:1,7,13
9:18,23 10:3
96:10 97:14 99:16
**interpretation**
58:6,7
**interpreted** 57:19
**interpreting** 58:7
**interprop** 6:7
**interrupt** 31:3
34:23
**intervene** 85:23
**investment** 7:14
8:11 9:24
**involved** 34:19
47:9 53:16 79:25
**involves** 48:4
**ionosphere** 47:22
60:4
**ira** 4:4
**irrelevant** 41:13
**islands** 91:14
**issue** 36:6,22 38:2
38:2 39:2,25 44:7
49:23,24 52:6
54:13,16,19 55:19
57:20 58:14,25
59:3 60:14,25
62:22 65:9,16
75:23 76:8 77:25
78:11,12 83:6,24
85:19,23 97:9
**issued** 73:14 74:8
74:10 79:15
**issues** 20:24,25
21:1 22:2 24:1,2
25:1 34:11 52:13
61:8,9,19 62:25
63:3 64:14 65:7
83:3 87:12
**it'll** 23:7
**item** 20:9 25:6,23
26:24 63:12 72:6

**items** 20:17 21:8,9
26:1 95:15
**i'm** 55:23

**j**

**j** 4:10 16:7 17:21
**jacqueline** 3:16
11:8 19:6 25:20
42:19 84:11
**james** 3:12 16:24
30:5
**jeffrey** 4:8,10
16:2 63:13
**jfk** 16:20
**jll** 17:17
**joel** 2:10
**join** 81:13
**joinder** 4:1
**juana** 91:13
**judge** 1:25 37:9
38:1,2,4,11,12
44:6 47:21 60:3
**judged** 37:7,8
**judgment** 41:18
67:17,25 68:5
82:22
**july** 21:5 26:13,21
71:10,25 72:3
**june** 1:20 2:5
27:20 35:3 93:10
93:20 94:11,23
100:11
**jurisdictions**
77:11
**justice** 12:10
**jv** 5:18

**k**

**k** 13:3
**kadish** 15:14
**kamehameha** 3:4
27:1,2
**kanter** 15:1
**kate** 13:13

**katz** 6:22 18:17
18:18
**kdi** 5:22 17:2
89:25 90:20,21
**keep** 71:25 86:3,4
**keeps** 68:4
**kelley** 17:16
**kenneth** 14:23
**key** 19:21 21:11
21:15 22:21 24:1
48:17 88:3
**killer** 64:4
**kind** 20:19 43:12
56:16 61:12 68:2
83:21
**kinel** 17:6
**kmart** 64:19,22
64:24 65:8,11,13
65:24 67:14
**knew** 65:20 81:15
**know** 21:14,17
24:2 31:18,18
32:18 33:12 34:18
35:6 36:23,24
37:1,5,20,20 38:4
38:24 39:3,7,10
39:24 40:15 44:23
47:7,12 49:15,18
49:22 50:8,16
68:4,15 69:8
78:10 80:3,4,21
81:14 82:9 83:15
83:17,19 84:8,10
84:22 89:10 96:17
**knowledge** 60:23
**known** 65:20
**kreller** 17:14
**kyle** 18:15

**l**

**l** 2:19 5:14 12:7
18:7 90:5,8 99:3
**l.l.c.** 8:9

**l.p.** 6:2 17:9
**labor** 12:18 40:22
**laid** 43:23 57:15
**landlord** 2:23
5:17 6:3,8 28:1,2
28:10,13 88:14
89:24 90:4,6,7
91:15,17 92:7,13
93:1,2,5,14,18
95:7
**landlord's** 27:11
**landlords** 87:5
92:8
**language** 95:23
**large** 36:17,21
43:8 89:15
**larger** 35:14
**law** 14:9 51:16
52:5 58:17 60:21
60:21 65:10 73:25
74:17 75:9 76:4
82:14 83:6 84:24
**lawlor** 3:12 16:24
30:2,5,6,10 31:4,8
31:10,13,15,20,22
31:25 32:3,5,7,21
33:2,4,9,14,20,23
34:2,5,7,11,16,24
35:5,11,17,20,23
36:1,4,6 39:15,18
40:6,9,12,14,17
40:24 52:15,18,23
62:12
**laws** 51:18
**lawsuit** 77:5,10,16
**lawsuits** 76:24
**lawyer** 38:15
42:16
**lay** 69:6
**lazard** 9:23
**leads** 84:17
**leaps** 96:17

learn 82:17
lease 2:17 3:5
   5:11 6:5 27:12,22
   79:7,10,20 80:4
   80:10,20,21 81:24
   82:1 87:11 89:15
leases 5:7,12,19
   5:23 6:9 26:19
   87:4,12,13,19
   88:2,9,15 89:21
   95:4 99:14
leave 59:3
leaves 60:25
lebanon 90:12,24
led 30:12 61:23
left 26:1
legal 54:4 100:13
legislative 59:12
legitimate 61:23
lehane 2:19
lehman 38:11,15
lengthy 37:6
leonard 12:23
   40:21
letter 24:16 25:25
   52:18
letters 81:24
level 57:18
lexis 58:19 59:25
liability 65:10,25
   66:10,18,21,24
   69:16,22 70:17
liberty 13:10
licensor 2:23
lien 78:3
lienholders 21:12
life 30:11 33:18
   34:15,16 43:3
   55:15,16,18,22
   56:6,12,22,24
   57:2,3,8
lifland 44:6 47:21

lifland's 60:3
lift 67:2
lifting 77:15
lifton 14:17
light 22:1 24:7
   27:14 47:14,19,20
   94:21
likes 75:7
limit 47:16 67:16
   69:23
limitations 64:14
   65:15 82:11 83:14
limited 53:13
   60:22 61:1 74:7
limiting 67:10
limits 66:10,23
   67:13
line 84:15 99:5
linked 65:18
lipton 6:22 18:17
   18:18
liquidated 59:23
liquidating 19:23
   20:5,6,11,12 37:7
   38:20 44:12 47:21
   59:7,9 60:5,9
   61:12
liquidation 19:20
   45:11 59:11,14,22
lisa 10:25 100:3,7
list 33:7,8 50:11
   87:16,19 95:4
listening 52:4
lists 74:11
literally 24:6
litigating 21:8
litigation 4:9 20:8
   20:12 21:24 22:2
   26:10 39:12 52:21
   80:7 81:13 83:5
   83:13,22 85:8,22
litigations 82:23
   85:24

little 33:16 46:1
   50:20 92:16
llc 2:7,11,25 3:4
   4:17,21 5:1,18 6:7
   8:3,16,21 9:23
   13:9 16:9,10 17:2
   18:9,10 72:7
llc's 5:22 6:4,8
llp 7:2,9 9:2,8,13
   9:18 10:2 11:2,11
   11:19 12:1 13:8
   13:16 14:1 15:16
   16:1,18 17:1,8,16
   18:17
located 92:18
location 26:19
locations 88:23
   89:16,23,25 90:12
   91:12
logic 59:10
lokey 7:13
lombard 14:3
long 37:6,22
look 40:8,10
   51:14 54:14 62:19
   81:5,24 84:17
looking 36:5
   82:21
los 17:12
lose 85:8
loses 77:14
loss 73:17 74:21
   75:15 79:4 81:25
lot 22:17 32:1
   34:12 37:13 83:16
   97:15
lower 57:18
luke 2:24 13:14
   86:24

m

m 11:23 14:23
   15:21

ma'am 29:16
maeghan 17:21
maher 16:18 30:6
mail 29:22 62:6
   66:8 91:9 97:15
mailed 92:24
mails 94:1
maintained 56:2
   66:16
major 61:8
making 23:13
   88:8
mall 4:17,20 5:1
   5:22 16:10 17:2
   72:7,16 73:8 74:7
   74:13,18,22 83:7
   90:1,20
mall's 83:20
malloy's 6:16
mandate 53:13
manges 10:2 11:2
   19:5 25:21
manufacturing
   2:7,11
march 8:13 58:20
   60:1
marcus 3:16 11:8
   19:6 25:20,21
   26:8,16,24 27:3,7
   28:21,23 29:1,3,6
   29:10,23,25 35:9
   35:12,14 42:19,19
   43:18,21 44:3,7
   44:10,17,25 45:13
   45:16,21 46:1,14
   46:18,21,24 47:2
   47:8,12 48:8,10
   48:23,25 49:3,6,9
   49:12,22 50:7,10
   50:12,15,19,23,25
   51:3,6,9 84:11,11
   84:15 86:17,21
   87:2

maria 79:2
mark 50:5
market 13:18
marsal 8:16
massachusetts 90:2,22
massey 13:13
master 89:15
matter 1:8 27:8 29:19,21 52:25 54:20 58:17
matters 2:4 6:20 19:11,22 26:3 86:19 95:18
matthew 15:7
mcallen 90:12,24
mcandrews 6:16
mcloughlin 17:21 29:14,17
md 14:5
mean 37:14 39:19 40:12 41:11,16 48:5,15 50:14,17 52:3 61:22 69:16 69:24 70:23 71:9 77:21 80:4 81:5,7 82:4 83:12 85:3 91:25
means 41:2,3,13 81:10,11
meant 35:7,8
mechanically 21:4
mechanism 33:7 37:1 57:24
meet 55:23
member 19:25 20:1 56:23
members 20:14 20:20 23:21 25:8 33:17 34:1,2 56:12 57:6 58:10 60:14

memorandum 4:18 5:2
memories 52:3,10 52:12
mention 52:15
mentioned 22:21 23:14 24:18 46:7
mentions 52:20
merits 53:6 86:6
met 68:21
mi 18:13
michael 13:6 18:7
middle 55:9
milbank 17:8
million 20:7 43:12 67:16,18,18,24 68:1,2,11,19
milton 2:7,10
mineola 100:16
minus 50:4
minute 32:12,23
misrepresent 81:21
missed 32:10
missing 48:17
misunderstanding 88:25
mode 59:22
modifiable 60:20
modification 32:24
modifications 21:10
modified 30:16 41:6
modify 41:13 57:23 58:2,4,8,11 60:7
moment 25:12
moments 44:20
money 43:13 68:6
money's 84:2

monroe 14:19
month 96:24
monthly 49:19,19 50:2,3
months 36:16 90:5
morbid 50:20
morning 19:3,4,8 19:9 24:10 25:20 30:5,8,9 40:22,23 53:3,17 72:14,15 72:19 86:24 97:24
morrissey 12:16 53:3,4 54:6,12,18 54:21 55:1
motherway 16:1
motion 2:7,16 3:3 3:10,15 4:2,8,17 5:1 6:11 26:9,13 26:25 30:1 31:6 33:25 37:9 43:19 53:7,24,25 55:2,5 55:11,16 58:8,15 58:21 62:7,23 63:13,15 64:3,16 67:2 70:21 71:21 72:7,21,21 74:5 81:16 83:9 84:3 85:2 86:2 99:6,9 99:12
motion's 37:10
motions 2:13,24 4:13 99:15
movant 56:9,10 57:12 63:14 65:4 70:17
movant's 63:20 63:23
movants 46:7 57:12 62:6 96:2
movants' 66:19
move 19:10 25:16 25:17 38:9 88:6

89:5
moving 87:6 93:6
mulder 32:5,13,22
multi 48:4
multiple 82:23
multiply 43:8

n

n 3:12 11:1 16:24 17:6 19:1 99:1,3 100:1
n.a. 15:17
n.d. 59:25
nail 71:2
name 30:8 64:19 80:23
names 50:21
naperville 92:18
napleton 16:1
nature 55:20
near 20:2,14,15 23:21
necessarily 60:23 81:7
necessary 7:17 10:5 20:18 56:19 64:22 65:8
need 21:20 22:9 25:1 37:16 39:20 39:20,20 42:10,11 42:12,12 62:8 64:7 70:5
needs 60:8 61:22
negotiate 39:11
negotiating 48:1
negotiation 27:16
negotiations 43:2 48:5
never 30:16 85:25
nevertheless 44:2
new 1:3,18 11:5 11:14 12:5,14 13:11 15:12,19 17:4,19 18:5,21

58:1
**news** 94:13
**nicholas** 14:17
**nine** 89:23 90:5
**nj** 16:22
**nobody's** 49:23
**nominate** 23:20
**nominating** 23:15
**non** 73:25 74:15
  74:16
**nonresidential**
  26:18
**norman** 17:6
**north** 8:16 13:18
  16:11
**northstar** 18:2
**notably** 27:24
**note** 19:11 26:3
  31:16 38:1 44:10
  52:18 63:15
**noted** 47:9 87:2
**notice** 2:4 5:6,11
  5:18,22 6:4,8
  26:16 36:23 40:1
  40:8,11 44:22
  61:14 62:25
**noticed** 40:3
**notices** 88:4
**notified** 21:11
**notify** 37:20
**notwithstanding**
  34:8 57:21 60:17
**november** 8:22
  9:10 65:19
**number** 26:12,12
  26:20 27:5,20
  28:15 29:25 34:11
  34:20 43:9 59:18
  63:12 66:15 72:7
  72:8 74:12 88:15
  93:1
**numbers** 23:3
  48:15

**nw** 12:20 13:3
**ny** 11:5,14 12:5,14
  13:11 15:12,19
  17:4,19 18:5,21
  100:16

**o**

**o** 1:23 19:1 100:1
**oak** 18:13
**objection** 2:13,23
  3:15 4:2,13 5:1,9
  5:22,24,25 6:2,7
  20:17 26:20 31:12
  43:22 53:8 55:12
  58:21
**objections** 5:16
  22:14 95:21
**obligation** 27:15
  70:2
**obligations** 2:17
  3:5 80:10
**obviously** 22:7
  34:12 36:17 40:10
  61:22 65:9
**october** 6:17 7:5
  7:10,17,24 8:12
  8:17 9:4,15,21,25
  10:5 55:7
**office** 12:11,19
  14:9
**official** 4:1,4 7:2
  7:14,21 12:2
**oh** 24:21 32:4
  47:5 59:25 88:1
  95:12,12
**okay** 19:2 22:5,6
  23:11,22 24:4,8
  24:21 25:3,14,19
  26:7,15,23 27:3
  29:5,11,16,20
  30:4 32:6 33:5
  34:4,6,7 35:13,16
  39:14 40:16 41:24
  42:16,18 43:21

46:20 47:11,11
49:2,14 51:7
52:17 53:2 54:25
62:15 63:9 64:2
64:25 66:4 68:22
69:1 70:15 71:7
71:11,13 72:5,12
72:18 73:5 74:4
75:16,20 77:25
80:13 82:16 84:14
84:21 86:14,23
87:9 88:5,13,17
89:4,19 90:10,20
91:1,19 92:5,8,14
92:23 94:4 95:2,6
95:9 96:16 97:20
97:22
**olbrysh** 3:13
  16:19 30:7
**old** 34:14 39:5
  100:14
**olga** 11:9 63:10
**omnibus** 2:13,23
  4:13 26:13,21
  63:16 71:25 93:8
  94:24
**once** 37:5 41:16
  85:24
**operate** 57:19
  70:9
**opportunity** 94:7
**opposed** 58:7
  88:15
**opt** 57:10
**orange** 16:11 88:3
**order** 3:10 24:25
  25:1 26:17 27:19
  27:22 28:18,20,20
  28:21 29:4,8,11
  29:22 31:18 32:12
  32:13,15,23 48:2
  54:2 62:7,8 90:9
  90:11,14 91:7,12

91:15 92:10,11,12
93:3,7,20 94:6,11
94:22 95:24 96:23
97:17 99:9
**ordered** 53:15
  92:3
**orders** 87:17,21
  87:22 89:22,24
  90:17,19,25 91:2
  93:4 95:5 99:13
**orlando** 16:13
**outcome** 37:11
**outset** 87:2
**overview** 88:8
**overwhelm** 62:2
  62:21
**owe** 86:10
**owed** 2:19 3:7
  27:23
**owned** 6:3

**p**

**p** 11:1,1 14:9,15
  19:1
**p.c.** 15:1,9 18:1
**page** 32:11 87:24
  87:25 99:5
**pages** 32:9 60:1,2
**paid** 27:13 28:6,8
  75:25 76:3,3,4,6
  85:16,20 92:21
  97:3
**papers** 31:6 37:6
  75:7,8
**paragraph** 56:10
  57:5 66:14,15
  74:6
**paragraphs** 56:19
  57:16 74:6
**parallel** 76:23
**park** 12:4 17:10
  17:18
**parkway** 16:20

**part** 4:19 5:4
30:12 31:2 56:3
58:14 70:2 76:14
76:15 97:2
**participate** 42:5
**particular** 47:15
**particularly** 75:8
83:2,22 93:7
**parties** 19:12
20:13,16,16 21:12
21:16,21,25 23:2
23:24 24:17 26:6
27:10,18 29:3,18
64:23 85:6 92:19
94:21
**partners** 17:9
19:6 52:4,7
**parts** 74:5
**party** 18:10,19
48:4 64:22 65:8
75:18 76:5,5
77:14 91:20
**passed** 34:20
87:21 89:11
**passes** 35:24
**passing** 89:12
**patriots** 37:15
**patton** 17:1
**pauahi** 2:20 3:3
27:1 99:7
**paul** 9:2 11:11,17
13:17 14:2,7
**pause** 54:24 72:13
**pay** 2:18 3:7
27:15 28:13 43:5
43:14 57:23 67:12
70:2 85:19 93:4
**payee** 73:17 74:21
78:2 79:4 81:25
**paying** 48:20,21
78:2
**payment** 2:8,16
3:4 6:12 27:4 28:3

28:7,8 69:23
74:17 77:23 78:1
78:14,14 92:25
94:3 96:23 97:1
99:7
**payments** 43:15
55:25 56:1 97:2
**pays** 75:18 76:6
**peck** 38:2,11,12
**pending** 96:21
**pension** 13:1
**people** 23:14,15
33:8,12 34:12
36:2 37:20 38:14
41:2,3 48:24 49:6
49:12 50:4,6,9
51:1,25 52:9 54:7
61:14
**percent** 28:4,5
81:20 96:23,24
**perform** 39:13
**performed** 6:13
**period** 6:23 7:4,10
7:23 8:5,12,22 9:3
9:24 27:16 36:12
56:17 63:19 66:2
66:3,17 82:11
**periods** 97:1
**permanent** 56:12
**permission** 87:6
91:22
**perpetuity** 43:16
**person** 55:25
**personalized**
56:24
**peshko** 11:9 63:10
63:10 64:2,5,9,12
64:15,18 67:21
68:10,15,24 69:4
70:16,22,25 71:5
71:8,11,13,16,23
72:6,10

**petition** 2:10,16
3:5 6:14 27:4,13
27:23 28:4,14
99:8
**pfeiffer** 4:8,10
16:2 63:13 64:3
65:12 67:14
**pfeiffer's** 65:18
**ph** 91:13
**phil** 24:10
**philip** 12:8
**phone** 29:15 95:8
**picture** 62:3
**piece** 22:2
**pirates** 37:15
**place** 37:1
**places** 46:11
**plains** 1:18 88:3
**plaintiff** 64:21
**plaintiffs** 57:15
**plan** 19:16,20
21:8,9,16 22:19
24:16,17 28:6
30:19,21 37:7
39:11 41:6,13,15
42:22 45:6,8,23
46:5,8,8,10,16
47:2,3 49:25
51:14,15,16,19,25
55:17,22 56:2,6,8
56:18,18 57:14,20
58:8,11,14,16,23
59:5,9 60:15,16
60:18,20 61:18
**planning** 84:13
**plans** 48:17,19
55:15,22
**platform** 5:18
**play** 37:16 49:14
**played** 37:20 42:1
**playing** 62:1
**plaza** 13:10 17:3

**pleading** 53:5
**please** 19:2
**pleased** 19:14
**pleasure** 63:4
**plus** 28:15 57:3
96:24 97:1
**point** 36:15 43:21
44:18 48:13,17
53:8 78:7 82:10
83:15,18 84:20
90:17 94:22 97:9
**points** 67:21
**policies** 55:18,21
56:8 57:15 61:11
66:16,18 69:15,16
69:22 71:9,21
83:4
**policy** 35:10,12,25
54:5 56:7 58:7
63:21,21 66:10,11
66:24 68:11,14,23
68:25 70:6,8,17
70:18 73:1 74:11
76:19 78:21 79:3
82:20 83:20
**portion** 72:22,25
73:6
**position** 41:17
42:4 45:9 47:14
47:19 53:6,24
62:2 69:12,21
93:17
**possession** 9:3
11:3,12 57:22
58:2
**possibility** 67:7
**possible** 5:10
**post** 2:10,16 3:5
6:14 27:4,13,23
28:4,14 46:13
66:3 99:8
**potential** 85:24

**potentially** 66:19
**practical** 44:18
  54:20 63:3
**practically** 62:22
**precedent** 20:8
**preempted** 51:17
**preference** 26:2
**prejudice** 38:8
  86:2
**preliminary**
  36:13
**premise** 41:7
**premiums** 48:20
  48:25 49:18,19,19
**prepared** 44:25
  58:14
**prepetition** 66:17
**prescribe** 61:2
**present** 60:10
  84:16
**presentment**
  26:17 87:21 88:4
  89:11,12
**preserves** 51:17
**pressure** 96:6
**presumes** 37:13
**pretty** 38:15 48:6
  48:6 82:24
**previously** 19:25
  22:12 23:6 28:9
  63:16 65:24
**price** 18:1
**primary** 20:11
**prime** 8:3
**principle** 19:18
**principles** 47:5
**prior** 24:1 33:15
  42:7 56:3 66:1,11
**priority** 36:11
**privies** 77:14
**privity** 77:10,11
  77:12

**privy** 77:13
**probably** 40:1,2
  47:5 49:1 71:10
  81:10,11 82:18
  84:9
**problem** 85:2
**procedure** 20:13
**proceed** 4:9 63:24
  67:10
**proceeding** 72:23
  76:1,11,17 78:5,6
  82:21 83:13,14,25
  84:1,4,18 85:19
  86:6
**proceedings** 98:2
  100:4
**proceeds** 4:19 5:3
  67:3,11 73:1,23
  75:24 83:21
**process** 27:17
  37:12,19 38:6
  41:6,17 42:6
  43:23 45:3 48:3
  53:20 54:23 89:7
**produce** 32:15
**produced** 32:25
**producer** 73:14
  73:16 74:10
**producers** 74:16
  75:1
**product** 65:10,13
  65:17,18,21
**professional** 6:21
  7:16 8:2,8,15,20
  9:1 10:4 39:3
  61:24
**professionals**
  23:24 25:10 39:17
  47:17 48:4 53:19
  99:15
**program** 56:2
**programs** 55:18

**progress** 88:8
  89:20
**prohibit** 45:8
**prohibition** 54:4
**project** 54:15
**promptly** 62:14
**proof** 79:11,22
  82:3
**properly** 36:8,10
  36:20 85:20
**properties** 89:18
  91:18
**property** 26:19
  73:2 82:22 85:21
  88:21
**propose** 59:8
**proposed** 5:10,24
  27:19 28:18,19
  29:22 87:20 89:22
  91:2 95:23
**prosecute** 74:14
**protected** 42:2
  93:5
**protection** 28:9
**protections** 36:14
**protects** 38:25
**protracted** 48:3
**proved** 67:15
**proven** 66:22
  73:15
**provide** 32:11
  45:4,23 47:4 62:8
  63:17,19 79:11,21
  80:9
**provided** 32:12
  46:7 56:14 62:7
  66:5,8,22,25
  69:12 79:6,15
  80:15 94:5
**provider** 9:15
**provides** 57:1,6
  57:21 75:4 93:4

**providing** 56:1
  74:21
**provision** 57:10
  57:10,22
**provisions** 22:17
  51:16,18
**puerto** 73:10,10
  73:19,19,20 74:1
  74:1 75:3,3,14,15
  75:18,19 76:4,5
  82:14 84:24 91:13
**purchased** 65:12
**purely** 64:19
**purports** 73:24
**purpose** 43:22
  55:25 95:17
**purposes** 26:10
  85:8
**pursuant** 2:17 3:5
  3:10,15 4:3 5:13
  74:1 91:14
**put** 53:5 71:4 86:4
  86:5 96:6
**putting** 20:5,5
  53:10 86:7

---

**q**

**qbe** 26:9
**qualified** 4:1
**quarropas** 1:17
**question** 23:11
  32:24 33:5 35:1,7
  44:11 45:13,16
  50:5 77:8 96:22
**questions** 28:17
  84:23
**quibble** 44:3
**quick** 37:23 62:18
**quickly** 45:5 63:8
**quincy** 26:19
**quite** 21:14 29:21
**quote** 66:16 69:17
**quoted** 57:16

| r | | | |
|---|---|---|---|
| **r**  1:23 6:22 11:1 17:14 18:23 19:1 99:3 100:1 | **received**  33:17 36:23 44:22 79:2 94:2 | 56:1 | **repairs**  91:18 |
| **raise**  20:16 | **recognize**  39:3 | **rejected**  27:22 37:19 40:2 | **repeat**  54:2 |
| **rate**  27:25 56:21 | **recommending**  24:17 | **rejection**  37:12 61:10 94:17 | **repeatedly**  54:10 |
| **rationale**  61:10 85:15 | **reconsider**  38:9 | **related**  2:16 3:5 19:22 20:6,22,23 21:9,23 27:4 73:21 91:16 | **replacement**  34:13,22 |
| **ray**  19:4 62:17 | **record**  100:4 | | **reply**  32:8 52:19 55:10 |
| **rdd**  1:4 2:1 | **recordkeeping**  71:25 | **relates**  66:13 | **report**  25:15 38:17 |
| **reach**  40:7,12 60:16 | **recover**  67:3 | **relating**  20:17 | **repose**  65:15 |
| **reached**  27:9,18 87:5 92:21 | **recovery**  67:14 | **relationship**  83:16 86:9 | **represent**  34:3 39:8 79:18 81:4 |
| **reaching**  24:14 | **redrafting**  22:19 | **released**  28:12 | **representation**  39:10 81:14 |
| **reacting**  75:8 | **reduce**  23:7 57:2 57:7 | **relevant**  27:12 55:19 58:9 66:2 69:15 | **representative**  57:25 66:9 |
| **read**  34:25 42:24 59:9,15 75:7 | **reduced**  30:16 | | **represented**  29:18 79:16 80:25 |
| **reads**  36:10 | **reduction**  39:4 49:10 56:22 | **relied**  82:2 | **representing**  40:21 49:16 61:4 |
| **reagan**  26:20 | **reductions**  57:4 | **relief**  2:13 4:8,13 4:17 5:2 26:9 38:13,22,24 62:23 63:13 72:8,21 74:13 83:9 84:16 85:4,8 86:1 | **represents**  50:6 88:21 92:25 |
| **real**  8:21 26:18 64:23 | **refer**  33:10 | | **request**  28:18 48:1 60:7 90:8 95:23 |
| **realistic**  62:5 | **reference**  29:2 59:11 | | **requested**  28:1 32:14 |
| **reality**  61:5 | **references**  82:1 | **reluctant**  61:2 | **requesting**  99:12 |
| **really**  20:18 25:12 27:17 37:13 38:9 39:24 43:24 44:3 46:17 48:11 58:9 61:7 69:8 70:23 82:9 84:8 88:7 96:25 97:8 | **referred**  50:18 55:15 56:11 73:13 77:6 | **remaining**  97:1 | **required**  37:5 80:20 94:15 |
| | **referring**  33:11 75:10 | **remarks**  59:13,15 | **requirement**  36:9 |
| | **refers**  55:6 56:10 94:8 | **remedies**  76:25 77:18 93:18 | **requires**  80:22 85:6 |
| | **refile**  26:2 | **remedy**  78:21 | **reservation**  3:2 30:22 56:15 |
| **realty**  6:2 | **reflect**  20:7 | **rendered**  7:4,16 8:4,10 9:9,14,19 10:4 | **reserve**  42:8 43:11 97:7 |
| **reason**  54:1 64:19 66:13 94:22 | **reflected**  27:19,21 | | **reserves**  95:24 |
| **reasonable**  56:16 70:1 | **reform**  78:3 | **renew**  86:3 | **resolution**  27:9,16 27:21 74:17 |
| **reasonableness**  54:23 | **regard**  83:1 | **rent**  2:16 3:5 27:4 27:13,14,15 28:2 99:8 | **resolve**  24:1 37:4 |
| **reasons**  64:20 | **regarding**  25:25 46:4 53:6 74:11 84:23 | **rental**  27:25 | **resolved**  37:23 |
| **recall**  90:4 | | **reorganization**  59:11,15 60:12 | |
| **receipt**  93:2 | **regards**  65:8,10 65:23 | **reorganizing**  47:25 | |
| **receive**  76:7 94:3 | **reimbursement**  7:4,16,23 8:4,11 9:9,14,19 10:4 | | |

**resolving** 29:19
**resources** 62:3
**respect** 3:2 24:20
  24:22 35:9 39:2
  43:10 54:19 90:3
  92:10,17
**respective** 23:20
  92:20
**respond** 67:21
**response** 3:2 5:18
  26:12 34:25 56:25
  66:14
**responsibility**
  40:5
**responsible** 85:11
**restored** 57:4
**restricted** 54:18
**restricting** 53:9
**restriction** 53:25
  54:2,8,22
**restrictions** 53:22
**restrictive** 5:17,24
**restructuring**
  25:9
**result** 20:24 21:3
  21:4 30:17
**results** 76:24
  85:25
**retained** 38:15
**retired** 3:12 33:12
  99:11
**retiree** 41:5 43:15
  46:10 48:11,21
  49:1,14,24 50:5
  55:5,16,21,23
  56:12 57:2,8,23
  58:3,23 60:8
  62:19,21,24
**retirees** 3:15 4:2
  30:1,6 33:11,12
  33:20,25 34:5,12
  34:17,20 35:23
  36:14,23,24 39:5

39:13 41:6 42:2,3
  42:22 44:22 45:1
  45:12 47:23,24
  48:12 52:20 53:9
  53:15,19 54:15
  55:3,6,14 56:24
  57:25 63:4 99:9
**review** 94:7 95:25
  96:5,7
**reviewed** 96:16
**revised** 21:19
  27:25 28:2
**revive** 52:10
**richard** 3:13
  12:16 16:19 30:7
  53:3
**rico** 73:10,10,19
  73:19,20 74:1,2
  75:3,3,14,15,18
  75:19 76:4,5
  82:14 84:24 91:13
**rifkind** 9:2 11:11
**right** 22:7,20,25
  23:5 24:8,23 25:5
  25:15 27:6 32:20
  33:19,22 34:6,10
  34:15 35:17,19,22
  36:1,4,5,6 38:21
  40:4,13,18 41:9
  41:15,16,19,23,24
  41:25 44:9,16,24
  45:15,20,25 46:15
  47:1,6 49:5,8,11
  50:14,24 51:2,8
  51:23 52:1,22
  54:5,17 55:2 56:7
  58:4,16 60:15
  61:6 63:9 64:12
  64:17 69:9,17
  70:25 71:16 72:9
  73:5 74:22 76:20
  77:23,24 78:3,15
  78:19,22 79:13,23

80:5 81:6,18,22
  82:16 84:21 85:18
  86:20 87:23 88:17
  89:9 90:23 91:4
  93:11,12,16,25
  94:12,18 95:11,14
  95:25 96:3,8,11
  96:15 97:6,8,11
**rights** 3:2 20:22
  27:16 30:23 37:21
  39:7 56:15 68:14
  68:16 82:19 83:20
**risius** 8:21 18:9
  18:10
**risk** 45:3,9 59:4
  74:9
**rivergate** 5:22
  17:2 90:1,20,21
**road** 100:14
**robbins** 14:17
**robert** 1:24 2:19
  11:16
**rockefeller** 17:3
**role** 48:10 49:13
**ronald** 3:13 16:19
  30:7
**room** 1:17
**root** 78:17
**rosa** 4:17,20 5:1
  16:10 72:7,11,16
  73:8,11,17 74:6
  74:13,18 76:18
  78:20 79:1,3 83:4
  83:7
**rosen** 6:22 18:17
  18:18
**ross** 8:21 18:9,10
**roughly** 30:11
**rounds** 19:16
**royal** 18:13
**rule** 45:5 65:14
  71:4,15

**ruling** 62:10,18
  86:5
**running** 24:25
  65:13
**ryan** 11:23

**s**

**s** 4:4 11:1 19:1
  99:3
**s.d.n.y.** 58:20 60:5
**sai** 59:25
**sale** 43:2
**salient** 27:21
**san** 14:13
**sanctionable**
  73:18
**santa** 4:17,20 5:1
  16:10 72:7,11,16
  73:7,11,17 74:6
  74:13,18 76:18
  78:20 79:1,3 83:4
  83:6
**sara** 12:7
**saving** 36:19
**savings** 21:6
**saying** 41:13 50:2
  61:3 74:19 75:23
  75:24 84:13
**says** 32:23 46:10
  56:21 64:3 74:6
  74:13
**schedule** 21:24
  30:16 71:25
**scheduled** 2:4
  22:11
**schedules** 97:16
**scheduling** 19:22
  22:2,4
**schein** 18:7
**school** 14:18 15:2
  15:10
**schools** 3:4 27:3
**schrock** 19:4,5,9
  22:6,18,20,24

23:1,6,9,16,19,23
24:5,18 25:6,17
62:16,17
**schwartz** 14:17
**scope** 47:17 53:9
54:1 55:19
**sears** 1:10 2:1 4:5
4:14 7:22 19:3
25:21 30:1,10
42:20 43:6 55:16
55:21 56:16,17
57:13 58:10 73:21
73:22,24 79:6,11
79:16,22 80:9,12
80:14,15,24,25
81:1,5,12,13,13
81:14 82:5,6
**seated** 19:2
**second** 4:13 18:11
21:12 26:16 31:3
51:22 57:17 68:4
88:6 90:1
**section** 3:10,15
4:3 41:6 55:3,24
57:19,21 58:10,12
58:24 59:4,4,9,11
60:5 69:15 73:11
75:10,11 86:18,18
88:7,9 89:5 90:5
**security** 5:13
35:14 90:5
**see** 63:1 70:5,8
74:6 77:15 80:6,8
84:19 87:18 88:14
88:20
**seek** 28:3 73:24
74:3 77:18
**seeking** 69:18
72:25 96:25
**seeks** 74:13 76:17
**seen** 30:19 50:10
**sees** 47:13

**selecting** 20:11,14
20:14
**selection** 20:17
23:24
**seminal** 25:12
**senior** 35:17
**seniors** 61:18
**sense** 43:24 61:17
69:6
**sent** 32:17 52:19
79:5,8 81:24 94:6
**sentence** 35:7
**sentiment** 73:23
**sentiments** 62:20
**separate** 21:24
22:3 46:10 69:19
88:23
**september** 56:23
**serious** 58:25
60:14
**served** 44:18 90:6
**service** 39:13
**services** 6:11,13
7:3,16 8:4,10 9:8
9:14,15,19 10:4
18:2 74:9
**set** 19:11 27:24
28:9 55:18 58:11
61:21 84:23 89:3
**settle** 19:16 62:8
**settled** 27:25
**settlement** 19:19
20:23,24 25:11
29:9 30:13,15,17
30:25 31:5 32:16
32:21,25 33:13,14
45:18,19 49:4
52:20 55:7,10,16
56:11,15,17 60:22
94:6
**settlements** 57:9
**settling** 20:23

**seyfarth** 15:16
**shadow** 24:25
**share** 28:14,14
**shaw** 15:16
**short** 16:22
**shortly** 88:10
89:18
**show** 61:7 69:2
70:16 86:8
**shown** 68:22,24
**shows** 74:21
**sides** 39:1 54:7,22
**signature** 32:9
**simple** 23:13
**simplified** 87:7
**simply** 22:11
38:20 43:5 59:22
80:9 91:21
**sit** 62:24
**sitting** 54:7 62:19
**situation** 34:8,13
37:23 38:18 39:9
41:10 51:20
**six** 87:17,23 89:24
**size** 51:3
**smaller** 35:12
**sold** 43:1 59:7
**solicitation** 21:3
**solicitor** 12:19
**solutions** 100:13
**solvency** 96:19
97:9
**solvent** 36:17
96:20
**somebody** 39:19
**somewhat** 58:6
61:2
**sonia** 4:20 16:15
72:17
**sonnax** 84:17 85:9
86:1
**sorry** 31:10 42:9
52:10 60:1 66:7

85:12 90:15
**sort** 42:8 50:6
63:6 82:10 87:5
**sorted** 49:21
**sorts** 54:10,11
**sought** 97:12
**sound** 22:15,16
**source** 76:17
**south** 16:3
**southern** 1:3 58:1
**spahr** 13:16 14:1
**spd** 46:8,10
**speak** 65:6 89:13
**special** 24:13 42:6
**specific** 24:6 55:6
**specifically** 91:17
96:12
**spells** 96:11
**spend** 22:17 47:17
67:25
**spent** 61:19,22
67:24 68:12,19
**spoke** 26:1
**squire** 17:1
**stand** 83:16
**standalone** 92:2
**standard** 20:20
**standards** 84:16
**starboard** 5:18
**stargatt** 7:8 11:19
**start** 25:1 39:11
**starting** 65:13
**state** 51:16,17
65:10 67:10 70:12
**stated** 73:16
**statement** 19:15
22:10,10,12 23:4
24:16 32:10 40:20
54:5 55:12 69:13
96:18
**statements** 82:2,3
**states** 1:2,16
12:11 13:2 21:13

66:15 69:16
**stating** 66:9 79:3
   81:24
**status** 26:6 74:21
**statute** 54:1 60:7
   60:12 65:15,15
   83:13 85:6
**statutes** 77:22
**statutory** 64:14
**stay** 2:14 4:9,14
   4:18 5:2 26:10
   63:14 67:2,9 72:8
   72:21 73:3 74:14
   77:15 83:9 84:16
   85:4,8
**stayed** 37:15
**steen** 13:8 86:25
**stem** 78:17
**stems** 76:17
**step** 82:18,18
   83:21
**stipulation** 26:17
   28:20 29:6 31:5
   32:7 33:6 34:9
   45:18,19 46:16,21
   46:25 49:3 50:4
   50:18,19,21 53:1
   55:7,10,15 56:10
   56:14,20 60:22
   61:14 91:16,23
   94:8
**stipulation's** 41:1
   41:2
**stipulations** 89:14
   91:21
**stop** 75:22
**store** 89:16 92:10
**stout** 8:21 18:9,10
**strauss** 7:1 12:1
**street** 1:17 12:12
   13:3,18 14:3 15:3
   16:3 18:11,20

**strikes** 37:9
**strongest** 45:17
**subcommittee**
   25:9
**subject** 31:17
   46:11 56:15 59:3
   61:5 73:2 77:3
   87:14
**submit** 24:15 73:7
   87:22 91:8,21
   93:19 94:10 95:4
   95:24
**submitted** 38:17
   94:22
**subsequent** 2:18
   3:7 32:25 33:20
**subsequently**
   72:23 73:15
**subsidiaries** 6:3
**substantially** 43:1
   59:8 91:5,6 92:11
**successfully** 87:12
**sucked** 85:7
**sue** 81:12,12 85:7
**sued** 76:10
**sues** 81:12
**suggesting** 37:10
**suggestion** 43:10
   43:14
**suggests** 30:19
   75:21
**suing** 82:13 85:15
**suit** 69:18
**suite** 12:13 14:12
   14:20 15:4 16:4
   16:12 18:12
   100:15
**summarize** 77:22
**summarized**
   57:16
**summary** 22:8
   30:19 46:8,8
   56:18

**superpriority**
   60:10
**supplemental** 5:9
   5:13,16 6:2,7
**support** 4:18 5:2
   19:19 38:9 40:20
   55:11 66:25
**supporting** 24:16
**supports** 69:12
**supposed** 79:21
   81:25
**sure** 21:21,22
   23:13 31:4 34:24
   35:7 38:15 42:1,3
   47:8 52:6 62:10
   62:23 64:9 65:5
   69:11 70:7,11
   81:18,20 93:22
**surprising** 63:7
**suspect** 36:25
   48:10 52:24
**sustain** 73:11
**sustains** 73:21

**t**

**t** 15:7 100:1,1
**table** 54:7
**tables** 39:23
**take** 38:14 44:7
   60:8 63:4
**taken** 45:10 49:24
**talk** 21:16 39:18
   62:25
**talking** 68:4 75:11
**target** 87:6
**tata** 6:11
**tax** 9:13,15
**taylor** 7:9 11:19
   14:17
**teed** 76:8 82:18
**telephonically**
   11:23 13:22 14:7
   14:15,23 15:7,14
   15:21 16:7 17:6

17:14,21 18:7,15
   18:23
**tell** 37:1,21 44:21
**ten** 67:18
**tennessee** 90:1,12
**term** 20:2,14,15
   23:21 37:22 55:5
   60:11 77:12,13
**terminatable**
   60:21
**terminate** 36:10
   41:15 42:21 56:8
   57:14 59:1 60:7
   60:16
**terminated** 30:11
   34:9 36:8,20 39:6
   58:17
**terminating** 63:5
**termination** 36:12
   42:25 49:25 61:10
**terms** 19:16,19,21
   19:23 22:22,23,24
   23:1 27:18,21
   31:1 51:17 54:23
   56:7 57:20
**texas** 90:12
**thank** 24:12 25:3
   25:4,7 29:18,23
   39:15 40:17,18
   42:17 51:9 52:8
   53:1 54:3 55:1
   62:12,13,18 70:22
   71:5,13,23 72:4,4
   86:15,16,17 95:10
   97:13,18,23,25
   98:1
**thanks** 29:24 34:6
   62:16 95:9
**thereof** 4:18 5:3
**thing** 24:12 42:1
   94:14
**things** 23:3 37:7
   37:13 44:19 56:1

56:13 75:7
**think** 21:5,6,20,23
23:1,25 26:2 27:9
30:14,18 33:1,3
34:14 35:5 37:4,8
37:12,22,22 38:23
39:21,22,25 40:14
42:1 44:17 45:16
46:9 47:20 48:25
49:15 50:15 53:16
54:9,12,19 58:6
59:13,24 61:4,5
61:19 62:1,5 69:1
69:12 71:14 85:1
86:22 87:7 92:16
93:14 95:11 97:16
97:21
**thinking** 52:4
**third** 2:13 15:11
41:12 58:4 90:11
**thomas** 17:14
**thought** 38:4 42:9
54:5
**thoughtfully** 38:4
**three** 19:25 20:1
27:17 34:18,19
89:12,16 90:11
**ties** 57:11
**tight** 72:1 96:19
**till** 94:23
**tilts** 62:1
**time** 22:17 23:18
28:3 31:1 32:6
33:23 36:12 50:25
61:20 63:17,24
65:20 66:1,2
69:13 81:2 97:23
**timely** 2:19 3:7
57:23
**times** 27:8
**title** 57:22
**tobey** 13:22

**today** 19:11 26:4
44:21 58:15 84:5
87:4,17 89:21,22
95:12
**told** 34:19 39:6
**tolls** 65:15
**total** 57:3 88:8
89:10,23
**totally** 85:5
**touch** 21:17
**touche** 9:18
**tranches** 89:16
**transactions** 9:7
**transcribed** 10:25
**transcript** 100:3
**transcripts** 38:3
**transform** 2:23,25
6:4,8 13:9 27:15
28:13 46:2,3
86:22,25 87:13,14
87:19 90:6 91:16
92:5,24 93:1,4
99:12
**transition** 46:2
**treated** 28:5
**tried** 34:21,21
43:3 63:5
**triggered** 70:4
**true** 35:9 50:7
100:4
**truly** 71:17
**trump** 30:24
**trust** 5:9 15:17
19:23 20:6,8,12
26:21 78:4
**trustee** 12:11
15:17 20:11 21:13
53:4,5,6,7,23
62:11,14
**trustee's** 62:4
**trustees** 2:20 3:3
26:25 29:12 99:6

**try** 32:1 34:13
**trying** 34:22 80:6
**tuesday** 32:8
**turn** 63:14 72:10
78:24 96:22
**turns** 43:9 50:15
67:12 83:25 84:1
**two** 20:2 24:19
26:3 39:20 46:11
48:17,18 54:7
55:15,18 64:23
66:20 67:21 74:4
74:6 76:23,24
77:19,21 85:24,24
88:21,22 89:11
91:12
**type** 47:23 77:15
**types** 61:19
**typical** 42:5

## u

**u** 99:3
**u.s.** 1:25 12:10,18
26:11 40:21 53:4
53:5,6,7,23 62:4
62:11,13
**u.s.c.** 2:8,17 3:6
5:14 6:13
**ucc** 19:19 20:1,2
20:22 21:9
**uh** 23:16
**ultimate** 38:24
**ultimately** 63:7
74:2
**umbrella** 66:18
66:21,25 67:6,7
67:19,23 68:2,10
68:14,24 69:6
70:3,5,18
**undefeated** 37:16
**underlying** 53:24
82:19
**understand** 32:17
33:14,24 36:16

39:7 50:1 52:2
64:18 69:21 74:19
85:14
**understanding**
31:21 50:20 65:24
69:14 86:12
**understate** 25:12
**underwriters**
74:16 75:1
**undue** 96:6
**unexpired** 26:18
**unfairly** 58:6
**unfortunately**
34:17 35:24 61:11
61:13
**unilateral** 56:16
57:13
**union** 39:8 47:25
**unit** 14:18 15:2,10
12:11 13:2 21:13
**unpaid** 36:12
**unrealistic** 43:18
**unsecured** 4:1,5
7:2,14,21 12:2
19:17,18 21:7,20
25:8 39:4
**use** 28:12 77:13
**uses** 46:22 55:5
**usual** 36:14

## v

**varick** 12:12
**various** 23:15
66:16 84:23 99:14
99:15
**vedder** 18:1
**vehicle** 55:17
**venue** 64:20 65:9
**veritext** 100:13
**version** 31:19
32:10
**versions** 87:22

**versus** 39:25
**vested** 30:18 36:8
  37:5 38:5,7,17,22
  41:3,3,14,22
  45:14 49:7 51:25
**vesting** 48:14
**vetted** 37:14
**victor** 26:20
**view** 30:24 37:3
  38:22 53:7 59:16
  60:4 93:3
**viewed** 51:18
**violating** 59:4
**virgin** 91:14
**visteon** 41:12 58:4
**vivid** 52:3
**vornado** 6:2
**vote** 24:17

---
w
---

**wachtell** 6:22
  18:17,18
**waive** 68:13,15
**waived** 58:15
**walk** 87:8
**want** 19:11 25:7
  25:11 29:18 38:13
  40:19 51:12 62:20
  62:21 64:19,20
  81:21 82:23 83:19
  83:24 96:5
**wanted** 25:24
  26:3 63:15
**wants** 84:9
**warehouse** 14:10
  92:17 93:24
**warranted** 59:2
  59:21 61:5,8
**warren** 17:16
**warsaw** 90:12,24
**washington** 12:21
  13:4
**way** 20:16 27:17
  36:10 42:2,5 52:5

81:6
**we've** 19:24 20:10
  20:22 21:11,17
  27:7,8 30:18
  32:14 34:18 37:23
  42:24 46:7 73:12
  87:5,16 93:1
  96:16
**wedge** 33:16
**weed** 64:4
**weil** 10:2 11:2
  19:5 25:21 62:17
  63:10
**weiss** 9:2 11:11
**went** 45:23 90:25
  95:8
**west** 14:11,19
  15:3 16:21 18:11
  18:20 88:3,3
**westwood** 5:9
  90:2,3,21
**wharton** 9:2
  11:11
**white** 1:18 88:2
**wholly** 6:3
**william** 14:9,15
  93:23 95:1
**williams** 18:15
**williamsport** 88:3
**willing** 43:4
**wilmington** 13:20
  15:17
**win** 60:24
**winnow** 95:4
**withdrawn** 90:8
**wolf** 6:22 18:23
**wollmuth** 16:18
  30:2,6
**won** 19:25
**wondering** 64:7
**word** 58:8 85:4,18
**words** 48:20
  53:14 69:5 81:19

83:19
**work** 24:24 32:1
  42:15 47:24 61:7
  61:15,23
**working** 21:9 25:1
  25:10 46:3 87:16
  92:19 94:9
**works** 23:13
**worth** 21:2
**wrong** 76:6 78:11
**wrongful** 77:22
  78:1,14 85:18
**wrongfully** 85:16
  85:20

---
x
---

**x** 1:6,14 50:2,4
  99:1

---
y
---

**yankees** 37:14
**yeah** 31:25 40:9
  42:16 50:22 70:20
  72:2 86:9
**year** 39:5 63:21
  63:22 66:12
**years** 34:14 63:22
  66:11
**yesterday** 25:25
  65:7 94:6
**york** 1:3,18 11:5
  11:14 12:5,14
  13:11 15:12,19
  17:4,19 18:5,21
  58:1
**young** 7:8 11:19