UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------x
In re                                      :

                                         :         **Chapter 11**

**SEARS HOLDINGS CORPORATION,**
*et al.*,                                :

                                         :         **Case No. 18-23538**
              **Debtors.**[1]          :         **(Jointly Administered)**

                                         :
--------------------------------------------------------------x

**OBJECTION OF BROE REAL ESTATE GROUP
TO THE DEBTORS' PROPOSED DE MINIMIS ASSET SALE OF THEIR
MEMBERSHIP INTEREST IN CLAYTON STREET ASSOCIATES, LLC**
(Related to Docket No. 7335)

TO THE HONORABLE ROBERT D. DRAIN, UNITED STATES BANKRUPTCY JUDGE:

      Broe Real Estate Group ("**Broe**") hereby files this objection (the "**Objection**") to the

*Notice of De Minimis Asset Sale for Membership Interest in Clayton Street Associates, LLC* [Dkt.

No. 7335] (the "**Notice**") filed by the above-captioned debtors (the "**Debtors**") seeking to sell

five hundred (500) Voting Capital Units[2] in Clayton Street Associates, LLC (the "**Interests**") to

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used, but not defined herein, shall have the meanings ascribed to them in the Notice or Approval Order (as defined below), as applicable.

NP, Inc. (the "**Proposed Purchaser**").  In support of this Objection, Broe respectfully states as follows:

## INTRODUCTION

1.      On October 15, 2018, each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") commencing these cases (the "**Chapter 11 Cases**") in the United States Bankruptcy Court for the Southern District of New York (the "**Court**").  The Debtors have continued to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108 of the Bankruptcy Code.

2.      On November 21, 2018, the Court entered the *Order Authorizing and Establishing Procedures for De Minimis Asset Sales and De Minimis Asset Abandonments* [Dkt. No. 856] (the "**Approval Order**") allowing the Debtors to sell or transfer De Minimis Assets with a selling price less than or equal to $15,000,000 without further Court approval if "such sales are in the best interest of the estates."  Approval Order ¶ 2(a).  Pursuant to the Approval Order, the Debtors are required to file and serve a sale notice (the "**Sale Notice**") at least seven (7) business days prior to closing such sale or effectuating such transfer.  *Id*.  In the absence of any objections after seven (7) business days' notice, the Debtors may immediately consummate such sale or transfer without any further Court approval.  *Id*.

3.      On February 24, 2020, the Debtors filed the Notice seeking to sell the Interests to the Proposed Purchaser for $37,500.00 in cash, plus twenty percent (20%) of the net proceeds arising from a Company Change of Control (as defined in the Membership Interest Purchase Agreement attached to the Notice).  The Notice provided parties with an objection deadline of March 4, 2020 at 4:00 p.m. ET (the "**Objection Deadline**").

4.      On March 4, 2020, the Debtors agreed by email to extend the Objection Deadline for Broe until March 11, 2020 at 4:00 p.m. ET.

5.      Broe, a private real estate investment firm headquartered in Denver, Colorado, now files this Objection given its belief that it can provide the Debtors, their estates and their creditors with significantly more value for the Interests.

## OBJECTION

6.      In light of Broe's proven success and position in the commercial real estate space, Broe has the desire and resources to make a competitive offer for the Interests.  While the Debtors do not need Court approval to sell or transfer De Minimis Assets if "such sales are in the best interest of the estates," the pending sale to the Proposed Purchaser will not yield the highest value for the Debtors' estates.  Broe is willing and able to provide the Debtors with significantly more value for the assets contemplated in the Notice.  Thus, if the Debtors were to establish a process to permit Broe to bid for the Interests, it would undoubtedly result in the Debtors maximizing the value of their assets to the benefit of the Debtors, their estates and their creditors.

7.      Broe hereby provides notice to the Debtors and the Court that it is willing and able to purchase the Interests for the purchase price of $1,125,000—a considerable increase in value for the Debtors' estates—on the terms and conditions reflected in the proposed membership interest purchase agreement (the "**MIPA**") attached hereto as **Exhibit A**, along with a redlined version of the MIPA marked to show Broe's revisions to the agreement of the Proposed Purchaser attached hereto as **Exhibit B**.

## <u>CONCLUSION</u>

For the reasons set forth above, Broe respectfully requests that (i) the Debtors withdraw the Notice and (ii) the Debtors (with the Court's approval, if necessary) establish a competitive process to allow Broe to bid for the Interests to the benefit of the Debtors, their estates and their creditors.

Respectfully submitted,

**HOGAN LOVELLS US LLP**

By: <u>/s/ *John D. Beck*</u>

John D. Beck, Esq.
Eric L. Einhorn, Esq.
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000
Facsimile:  (212) 918-3100
john.beck@hoganlovells.com
eric.einhorn@hoganlovells.com

# EXHIBIT A

**Membership Interest Purchase Agreement**

## MEMBERSHIP INTEREST PURCHASE AGREEMENT

THIS MEMBERSHIP INTEREST PURCHASE AGREEMENT (this "*Agreement*") is made and entered into effective as of the __ day of March, 2020 (the "*Effective Date*") by and between **BREG Investment Holdings, LLC**, a Colorado limited liability company (or its designee, the "*Buyer*"), and **SEARS, ROEBUCK AND CO.**, a New York corporation, as successor-in-interest to Tower Cherry Creek LLC, a Delaware limited liability company ("*Seller*"; Seller and Buyer are sometimes individually referred to as a "*Party*" and collectively referred to as the "*Parties*").

### WITNESSETH:

WHEREAS, Seller is a debtor in the chapter 11 cases assigned number 18-23538 (the "*Chapter 11 Cases*") currently pending in the United States Bankruptcy Court for the Southern District of New York (the "*Bankruptcy Court*"):

WHEREAS, Seller is a member of Clayton Street Associates, LLC, a Colorado limited liability company (the "*Company*"), and holds five hundred (500) Voting Capital Units in the Company, which constitute a forty-five and eleven one hundredths percent (45.11%) Capital Unit Ratio in the Company (the "*Membership Interest*");

WHEREAS, Seller has filed and served a notice of sale of the Membership Interest (the "*Sale Notice*") to NP, Inc. (D.I. 7335) in accordance with the *Order Authorizing and Establishing Procedures For De Minimis Asset Sales and De Minimis Asset Abandonments* (D.I. 856) entered by the Bankruptcy Court on November 21, 2018 (the "*Approval Order*"), which provided parties-in-interest seven (7) business days' notice of the sale of the Membership Interest (the "*Notice Period*");

WHEREAS, Seller extended Buyer's time to object to the Sale Notice to March 11, 2020;

WHEREAS, Buyer has objected to the Sale Notice and desires to become a member of the Company; and

WHEREAS, Buyer desires to purchase from Seller, and Seller desires to sell to Buyer, the Membership Interest pursuant to the terms and conditions set forth below.

NOW, THEREFORE, in consideration of the premises and of the promises contained herein, the parties agree as follows:

1.      **OPERATING AGREEMENT**.  Buyer understands and agrees that it must become a party to the Operating Agreement of the Company dated November 1, 2001, as amended by that First Amendment to Operating Agreement dated April 5, 2007 (collectively, the "*Operating Agreement*") and agrees to be bound by all terms and conditions of the Operating Agreement pertaining to Members. All capitalized terms not otherwise defined herein shall have the meanings given to them in the Operating Agreement.

2.      **PURCHASE PRICE**.  Buyer shall buy the Membership Interest from Seller for a purchase price equal to One Million One Hundred and Twenty Five Thousand and no/100

1

Dollars ($1,125,000.00) payable in good funds at Closing (as defined below) (the "*Purchase Price*").

3. **ESCROW**. On or before one (1) business day after the expiration of the Notice Period, Buyer shall cause the Purchase Price to be deposited into an escrow account established by Seller (the "*Membership Interest Escrow Account*"). The Purchase Price shall be released to Seller upon Closing or returned to Buyer if (i) the Closing has not occurred within thirty (30) days from the expiration of the Notice Period or (ii) by mutual agreement of the Parties.

Prior to the Closing, Buyer shall cause to be placed into a separate escrow account (the "*Parking Units Escrow Account*") the required capital contribution allocable to the Membership Interest's share of the purchase price in connection with the Company's purchase of the Parking Units (as defined below). Such Parking Units Escrow Account shall be released at Closing to the seller of the Parking Units under the applicable purchase agreement or returned to Buyer if (i) the Closing has not occurred within thirty (30) days from the expiration of the Notice Period or (ii) by mutual agreement of the Parties.

4. **CONDITIONS TO CLOSING OF BOTH PARTIES**. Each Party's obligation to close on the Membership Interest is conditioned on the following:

(a)    The sale shall be authorized by the Approval Order if either no objections to the Sale Notice were timely received or any such objections were withdrawn or overruled by the Bankruptcy Court pursuant to an order specifically approving the sale of the Membership Interest;

(b)    All documentation necessary to effectuate this Agreement is agreed to in a form satisfactory to Buyer in its sole discretion;

(c)    Buyer shall be approved as a Member of the Company pursuant to the Operating Agreement;

(d)    Final approval of the Investment Committee of Buyer; and

(e)    The Closing of the Company's purchase of the Parking Units (as defined below) shall have occurred or simultaneously will occur with the Closing.

5. **CLOSING**. The closing (the "*Closing*") shall take place on a date (the "*Closing Date*") that is (i) after the Notice Period has expired, or in the event a timely objection to the Sale Notice is interposed and not withdrawn, entry of a final order from the Bankruptcy Court overruling the objection, and (ii) simultaneous with the closing of the Company's purchase of (a) a planned community unit located on a portion of the fourth floor and fifth floor of an above grade five-level parking structure at 2500 East 2nd Avenue, in Denver, Colorado (the "*Parking Structure*"), and (b) a planned community unit consisting of a single parking space that is ADA compliant and van accessible and located on the first floor of the Parking Structure (collectively, the "*Parking Units*"), pursuant to that certain Right of First Refusal Agreement dated March 27, 2003 (the "*ROFR Agreement*"). The Parking Units are more particularly described on Exhibit A to the ROFR Agreement.

At the Closing, Seller shall deliver to Buyer a duly executed Assignment of Membership Interest, in substantially the form attached hereto as Exhibit A ("*Assignment*") together with any other documents of transfer and title related to the Membership Interest of Seller as is reasonably requested by Buyer, and Buyer shall deliver to Seller the Purchase Price.

6.    TERMINATION OF MEMBERSHIP; RESIGNATION.  Effective upon Closing, Seller shall cease to be a member of the Company and shall have no claims whatsoever to distributions from the Company or to any assets of the Company.  Effective upon Closing, Seller hereby resigns from any and all posts and positions with the Company and acknowledges that it has no claims for compensation through the Closing Date.

7.    REPRESENTATIONS AND WARRANTIES OF SELLER.  Seller represents and warrants to Buyer that, subject to Section 4 of this Agreement, Seller has or will have by the Closing Date full right, power and authority to consummate the transactions contemplated in this Agreement.  The execution, delivery and performance of this Agreement will not conflict with nor result in any breach of the provisions of, or constitute a default under, any agreement or other instrument to which Seller is a party or by which Seller may be bound.

The foregoing representations and warranties shall survive the assignment of the Membership Interest and shall be deemed to be repeated in the Assignment.

8.    FURTHER ASSURANCES.  The Parties each agree to do, execute, acknowledge and deliver all such further acts, instruments and assurances and to take all such further action before or after the Closing as shall be necessary or desirable to fully carry out this Agreement and to fully consummate and effect the transaction contemplated hereby.

9.    INDEMNIFICATION.  Buyer hereby indemnifies Seller and holds it harmless from and against all claims, liabilities, damages, losses, costs and expenses (including attorney's fees) arising out of (i) any breach of representation, warranty or covenant or inaccurate or erroneous representation made by Buyer to Seller in this Agreement and (ii) the ongoing business operations of the Company.

10.    RELEASE.  Buyer hereby releases and waives, and forever discharges any and all claims, suits, actions, and liabilities, whether known or unknown, against Seller and its respective shareholders, directors, agents, officers, representatives, successors, and assigns arising from or in any way related to this Agreement.  Each released party that is not a party to this Agreement is a third party beneficiary of this Agreement.

11.    COSTS AND EXPENSES.  The Parties agree that each Party shall bear its own costs and expenses incurred by such Party in connection with the negotiation, preparation, drafting and performance under this Agreement; *provided*, *however*, Seller agrees to reimburse Buyer's expenses, including legal fees, incurred in connection with the negotiation, preparation, drafting and performance under this Agreement in an amount not less than $50,000 if (i) Seller sells the Membership Interests to any party other than Buyer (ii) the remaining Members of the Company do not approve Buyer as a Member of the Company and exercise their rights pursuant to Section 11.2 of the Operating Agreement to purchase the Membership Interests or (iii) Buyer is accepted as a Member of the Company, but the Members other than Buyer successfully institute a "Forced

3

Sale" of the Membership Interests under Section 11.3 of the Operating Agreement within sixty (60) days of the Closing.

     **12.**   **NOTICES**.  Any notices or communications required or permitted under this Agreement shall be sufficiently given to a Party hereto if sent by first class mail, postage prepaid, to the address of such Party, or by email to the email address, indicated below, or such other address or email address as a Party may provide in writing to all other party hereto subsequent to the date of this Agreement:

> To Seller:     Sears, Roebuck and Co.
> 3333 Beverly Road
> Hoffman Estates, Illinois 60179
> Attn: _____
> Email: _____

> To Buyer:     BREG Investment Holdings, LLC
> 252 Clayton St
> Denver, Colorado 80202
> Attn:   Reagan Shanley
> Email: rshanley@broerealestate.com

     **13.**   **SUCCESSORS AND ASSIGNS**.  This Agreement and the rights of the Parties hereunder shall be binding upon and shall inure to the benefit of the Parties hereto and their agents, successors and assigns.  For the avoidance of doubt, Purchaser may assign this Agreement to any subsidiary or any affiliated entity to which it shares a common majority owner.

     **14.**   **ENTIRE AGREEMENT**.  This Agreement constitutes the entire agreement and understanding among the Parties hereto regarding the subject matter addressed herein and supersedes any prior agreement and understanding relating to the subject matter of this Agreement.  No change, amendment, termination or attempted waiver of any of the provisions of this Agreement shall be binding unless in writing and signed by the Parties.

     **15.**   **COUNTERPARTS; FACSIMILES**.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute the same instrument, and may be executed by facsimile signature, and a facsimile signature shall constitute an original signature for all purposes.

     **16.**   **APPLICABLE LAW**.  This Agreement shall be governed and regulated, and the rights and liabilities of all Parties hereto, shall be construed in accordance with the laws of the State of Colorado (without giving effect to the principles of conflicts of laws thereof), except to the extent that the laws of such state are superseded by the Bankruptcy Code.

     **17.**   **ATTORNEYS' FEES AND COSTS**.  In the event any proceeding is filed or instituted between the Parties concerning this Agreement, the prevailing Party shall receive from the other Party its attorneys' fees, experts' fees, costs and expenses, whether or not such controversy,

4

claim or action is prosecuted to judgment or other form of relief.  The *"prevailing Party"* is the Party that is awarded judgment or other legal or equitable relief as a result of trial or arbitration. If more than one party receives a judgment or other award of relief, the court or the arbitrator shall determine which Party is the prevailing Party, taking into consideration the merits of the claims asserted by each Party, the relative values of the judgments, settlements or other forms of relief received by each Party, and the relative equities between the Parties.

*[Signature page follows]*

**IN WITNESS WHEREOF**, the Parties hereto have entered into this Agreement as of the date first above written.

BUYER:

**BREG Investment Holdings, LLC**, a
Colorado limited liability company

By: /s/

Name: Douglas N. Wells

Title: Manager

[SIGNATURE PAGE TO MEMBERSHIP INTEREST PURCHASE AGREEMENT]

**SELLER**:

SEARS, ROEBUCK AND CO., a
New York corporation

By: /s/ _____
Name: Mohsin Y. Meghji _____
Title: Chief Restructuring Officer ___

[SIGNATURE PAGE TO MEMBERSHIP INTEREST PURCHASE AGREEMENT]

## EXHIBIT A

## ASSIGNMENT OF MEMBERSHIP INTEREST IN
## CLAYTON STREET ASSOCIATES, LLC

THIS ASSIGNMENT is made effective as of the __ day of March, 2020, by **SEARS, ROEBUCK AND CO.**, a New York corporation ("***Assignor***") in favor of **BREG INVESTMENT HOLDINGS, LLC**, a Colorado limited liability company (or its designee, "***Assignee***"; Assignor and Assignee are sometimes individually referred to as a "***Party***" and collectively referred to as the "***Parties***").

WITNESSETH

WHEREAS, Assignor is a Member of Clayton Street Associates, LLC, a Colorado limited liability company ("***Company***"), pursuant to that certain Operating Agreement dated November 1, 2001, as amended by that First Amendment to Operating Agreement dated April 5, 2007 (collectively, the "***Operating Agreement***"); and

WHEREAS, Assignor owns five hundred (500) Voting Capital Units in the Company, which constitute a forty-five and eleven one hundredths percent (45.11%) Capital Unit Ratio in the Company (the "***Membership Interest***"); and

WHEREAS, Assignor desires to assign the Membership Interest to Assignee upon the terms and conditions hereof.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    **ASSIGNMENT OF MEMBERSHIP INTEREST**.  Assignor hereby assigns and transfers the Membership Interest to Assignee.

2.    **MISCELLANEOUS**.  The Parties each agree to do, execute, acknowledge and deliver all such further acts, instruments and assurances and to take all such further action as shall be necessary or desirable to fully carry out this Assignment and to fully consummate and effect the transaction contemplated hereby.  In the event of any action or proceeding involving the Parties hereto arising out of or in connection with this Assignment or the breach of any representation or warranty set forth herein, the prevailing Party in such action or proceeding shall be awarded all of its costs and expenses reasonably incurred in connection therewith, including but not limited to, reasonable attorneys' fees and expert witness fees, in addition to any other relief to which such Party may be entitled.

IN WITNESS WHEREOF, Assignor has executed this Assignment effective as of the day and year first written above.

ASSIGNOR:                                    **SEARS, ROEBUCK AND CO.**, a
                                             New York corporation

EXHIBIT A-1

By:_____

Name: _____

Title: _____

EXHIBIT A-2

# **EXHIBIT B**

**Redline**

## MEMBERSHIP INTEREST PURCHASE AGREEMENT

THIS MEMBERSHIP INTEREST PURCHASE AGREEMENT (this "*Agreement*") is made and entered into effective as of the 21st__ day of ~~February~~March, 2020 (the "*Effective Date*") by and ~~among  NP, Inc.~~between **BREG Investment Holdings, LLC**, a Colorado ~~corporation (~~limited liability company (or its designee, the "*Buyer*"), and **SEARS, ROEBUCK AND CO.**, a New York corporation, as successor-in-interest to Tower Cherry Creek LLC, a Delaware limited liability company ("*Seller*"; Seller and ~~Purchaser  are  also~~Buyer are sometimes individually referred to as to as a "*Party*" and collectively referred to ~~in this Agreement~~ as the "*Parties*").

WITNESSETH:

WHEREAS, Seller is a debtor in the chapter 11 cases assigned number 18-23538 (the "*Chapter 11 ~~Case~~Cases*") currently pending in the United States Bankruptcy Court for the Southern District of New York (the "*Bankruptcy Court*"):

WHEREAS, Seller is a member of Clayton Street Associates, LLC, a Colorado limited liability company (the "*Company*"), and holds five hundred (500) Voting Capital Units in the Company, which constitute a forty-five and eleven one hundredths percent (45.11%) Capital Unit Ratio in the Company (the "*Membership Interest*"); ~~and~~

WHEREAS, Seller has filed and served a notice of sale of the Membership Interest (the "*Sale Notice*") to NP, Inc. (D.I. 7335) in accordance with the *Order Authorizing and Establishing Procedures For De Minimis Asset Sales and De Minimis Asset Abandonments* (D.I. 856) entered by the Bankruptcy Court on November 21, 2018 (the "*Approval Order*"), which provided parties-in-interest seven (7) business days' notice of the sale of the Membership Interest (the "*Notice Period*");

WHEREAS, Seller extended Buyer's time to object to the Sale Notice to March 11, 2020;

WHEREAS, Buyer has objected to the Sale Notice and desires to become a member of the Company; and

WHEREAS, Buyer desires to purchase from Seller, and Seller desires to sell to Buyer, the Membership Interest pursuant to the terms and conditions set forth below.

NOW, THEREFORE, in consideration of the premises and of the promises contained herein, the parties agree as follows:

1.    OPERATING AGREEMENT.  Buyer understands and agrees that it must become a party to the Operating Agreement of the Company dated November 1, 2001, as amended (by that First Amendment to Operating Agreement dated April 5, 2007 (collectively, the "*Operating Agreement*") and agrees to be bound by all terms and conditions of the Operating Agreement pertaining to Members. All capitalized terms not otherwise defined herein shall have the meanings given to them in the Operating Agreement.

~~2. PURCHASE PRICE.  Buyer shall buy the Membership Interest from Seller for a purchase price equal to Thirty-Seven Thousand Five Hundred and no/100 Dollars ($37,500.00) payable in~~

1

~~good funds at Closing (the "*Purchase Price*"). In addition, Buyer shall cause the Company to grant to Seller a Profits Interest in the Company as described below. The "*Profits Interest*" shall mean the right to receive twenty percent (20%) of all Net Proceeds resulting from a Company Change in Control at any time within five years of the Closing Date. A "*Company Change in Control*" shall mean (i) the purchase or other acquisition by any person, entity or group of persons of all of outstanding membership interests of the Company, (ii) a reorganization, merger or consolidation of the Company, whereby the members of the Company immediately prior to such reorganization, merger or consolidation, do not, immediately thereafter, own more than fifty percent (50%) of the combined voting power of the surviving entity, or (iii) a liquidation or dissolution or the sale of all or substantially all of the assets of the Company. "*Net Proceeds*" shall mean the proceeds available for distribution following (a) payment of all outstanding expenses associated with the Company operations and the ultimate sale or other disposition of Company property, including without limitation, title company premiums and brokerage commissions, (b) repayment of any outstanding debt of the Company (c) a return to members of the Company of all capital contributions, and (d) a ten percent (10%) preferred return compounded quarterly to the members of the Company on all costs and expenses incurred by the Company up through the Company Change in Control, including without limitation the $6,000,000 anticipated to be paid by the Company to the City and County of Denver and all due diligence, transaction, and closing costs associated with the same and all operating and maintenance expenses associated with any property held by the Company. The Profits Interest shall have no value and be void as of the fifth anniversary of the Closing Date.~~

2.    PURCHASE PRICE.  Buyer shall buy the Membership Interest from Seller for a purchase price equal to One Million One Hundred and Twenty Five Thousand and no/100 Dollars ($1,125,000.00) payable in good funds at Closing (as defined below) (the "*Purchase Price*").

3.    ESCROW.  On or before one (1) business day after the expiration of the Notice Period, Buyer shall cause the Purchase Price to be deposited into an escrow account established by Seller (the "*Membership Interest Escrow Account*").  The Purchase Price shall be released to Seller upon Closing or returned to Buyer if (i) the Closing has not occurred within thirty (30) days from the expiration of the Notice Period or (ii) by mutual agreement of the Parties.

Prior to the Closing, Buyer shall cause to be placed into a separate escrow account (the "*Parking Units Escrow Account*") the required capital contribution allocable to the Membership Interest's share of the purchase price in connection with the Company's purchase of the Parking Units (as defined below).  Such Parking Units Escrow Account shall be released at Closing to the seller of the Parking Units under the applicable purchase agreement or returned to Buyer if (i) the Closing has not occurred within thirty (30) days from the expiration of the Notice Period or (ii) by mutual agreement of the Parties.

4.    ~~3.~~ CONDITIONS TO CLOSING OF BOTH PARTIES.  Each Party's obligation to close on the Membership Interest is conditioned on the following:

~~(a) Seller shall have duly filed and served a notice of sale of the Membership Interest (the "*Sale Notice*") in accordance with the Order Authorizing and Establishing Procedures For De Minimis Asset Sales and De Minimis Asset Abandonments (ECF No. 856) entered by the Bankruptcy Court ) on November 21, 2018 (the "*Approval Order*")~~

2

~~and provided the requisite parties-in-interest at least seven (7) business days' notice of the sale of the Membership Interest (the "*Notice Period*"). and~~

(a)    ~~(b)~~ The sale shall be authorized by the Approval Order ~~because~~if either no objections to the Sale Notice were timely received or any such objections were withdrawn or overruled by the Bankruptcy Court pursuant to an order specifically approving the sale of the Membership Interest~~.~~;

(b)    All documentation necessary to effectuate this Agreement is agreed to in a form satisfactory to Buyer in its sole discretion;

(c)    Buyer shall be approved as a Member of the Company pursuant to the Operating Agreement;

(d)    Final approval of the Investment Committee of Buyer; and

(e)    The Closing of the Company's purchase of the Parking Units (as defined below) shall have occurred or simultaneously will occur with the Closing.

**5.**    ~~4.~~ CLOSING.  The closing (the "*Closing*") shall take place ~~within three (3) days~~on a date (the "*Closing Date*") that is (i) after the Notice Period has expired, or in the event a timely objection to the Sale Notice is interposed~~, within three (3) days after~~ and not withdrawn, entry of a final order from the Bankruptcy Court overruling the objection, and ~~specifically approving the sale of the Membership Interest (the "*Final Sale Order*"), or such later date as reasonably requested by Seller (the "*Closing Date*").~~(ii) simultaneous with the closing of the Company's purchase of   (a) a planned community unit located on a portion of the fourth floor and fifth floor of an above grade five-level parking structure at 2500 East 2nd Avenue, in Denver, Colorado (the "*Parking Structure*"), and (b) a planned community unit consisting of a single parking space that is     ADA compliant and van accessible and located on the first floor of the Parking Structure (collectively, the "*Parking Units*"), pursuant to that certain Right of First Refusal Agreement dated March 27, 2003 (the "*ROFR Agreement*").   The Parking Units are more particularly described on Exhibit A to the ROFR Agreement.

At the Closing, Seller shall deliver to Buyer a duly executed Assignment of Membership Interest, in substantially the form attached hereto as Exhibit A ("*Assignment*") together with any other documents of transfer and title related to the Membership Interest of Seller as is reasonably requested by Buyer, and Buyer shall deliver to Seller the Purchase Price~~and shall cause the Company to issue a Grant of the Profits Interest in the form attached hereto as Exhibit B~~.

**6.**    ~~5.~~ TERMINATION OF MEMBERSHIP; RESIGNATION.  Effective upon Closing, Seller shall cease to be a member of the Company and shall have no claims whatsoever to distributions from the Company or to any assets of the Company~~, except as provided in Section 2 hereof~~. Effective upon Closing, Seller hereby resigns from any and all posts and positions with the Company and acknowledges that it has no claims for compensation through the Closing Date~~, except as provided in Section 2 hereof~~.

**7.** ~~6.~~ **REPRESENTATIONS AND WARRANTIES OF SELLER**. Seller represents and warrants to Buyer ~~as follows:~~

~~(a)~~ that, subject to Section ~~3~~4 of this Agreement, Seller has or will have by the Closing Date full right, power and authority to consummate the transactions contemplated in this Agreement.  The execution, delivery and performance of this Agreement will not conflict with nor result in any breach of the provisions of, or constitute a default under, any agreement or other instrument to which Seller is a party or by which Seller may be bound.

The foregoing representations and warranties shall survive the assignment of the Membership Interest and shall be deemed to be repeated in the Assignment.

**8.** ~~7.~~ **FURTHER ASSURANCES**.  The Parties each agree to do, execute, acknowledge and deliver all such further acts, instruments and assurances and to take all such further action before or after the Closing as shall be necessary or desirable to fully carry out this Agreement and to fully consummate and effect the transaction contemplated hereby.

**9.** ~~8.~~ **INDEMNIFICATION**.  Buyer hereby indemnifies Seller and holds it harmless from and against all claims, liabilities, damages, losses, costs and expenses (including attorney's fees) arising out of (i) any breach of representation, warranty or covenant or inaccurate or erroneous representation made by Buyer to ~~such~~ Seller in this Agreement and (ii) the ongoing business operations of the Company.

**10.** ~~9.~~ **RELEASE**.  Buyer hereby releases and waives, and forever discharges any and all claims, suits, actions, and liabilities, whether ~~the~~ known or unknown, against Seller and its respective shareholders, directors, agents, officers, representatives, successors, and assigns arising from or in any way related to ~~any act or omission~~this Agreement.  Each released party that is not a party to this Agreement is a third party beneficiary of this Agreement.

**11.** ~~10.~~ **COSTS AND EXPENSES**.  The Parties agree that each Party shall bear its own costs and expenses incurred by such Party in connection with the negotiation, preparation, drafting and performance under this Agreement~~.~~; *provided, however,* Seller agrees to reimburse Buyer's expenses, including legal fees, incurred in connection with the negotiation, preparation, drafting and performance under this Agreement in an amount not less than $50,000 if (i) Seller sells the Membership Interests to any party other than Buyer (ii) the remaining Members of the Company do not approve Buyer as a Member of the Company and exercise their rights pursuant to Section 11.2 of the Operating Agreement to purchase the Membership Interests or (iii) Buyer is accepted as a Member of the Company, but the Members other than Buyer successfully institute a "Forced Sale" of the Membership Interests under Section 11.3 of the Operating Agreement within sixty (60) days of the Closing.

**12.** ~~11.~~ **NOTICES**.  Any notices or communications required or permitted under this Agreement shall be sufficiently given to a Party hereto if sent by first class mail, postage prepaid, to the address of such Party, or by email to the email address, indicated below, or such other address or email address as a Party may provide in writing to all other party hereto subsequent to the date of this Agreement:

To Seller:          Sears, Roebuck and Co.
                    3333 Beverly Road
                    Hoffman Estates, Illinois 60179
                    Attn: _____
                    Email: _____

To Buyer:           ~~NP, Inc.~~BREG Investment Holdings, LLC
                    ~~1644 Platte Street, Suite 130~~
                    252 Clayton St
                    Denver, Colorado 80202
                    Attn: ~~Randy T. Nichols~~   Reagan Shanley
                    Email:  rshanley@broerealestate.com
                    ~~Email: rnichols@nicholspartnership.com~~

**13.**    ~~12.~~ SUCCESSORS AND ASSIGNS.  This Agreement and the rights of the Parties hereunder shall be binding upon and shall inure to the benefit of the Parties hereto and their agents, successors and assigns.  For the avoidance of doubt, Purchaser may assign this Agreement to any subsidiary or any affiliated entity to which it shares a common majority owner.

**14.**    ~~13.~~ ENTIRE AGREEMENT.  This Agreement constitutes the entire agreement and understanding among the Parties hereto regarding the subject matter addressed herein and supersedes any prior agreement and understanding relating to the subject matter of this Agreement.  No change, amendment, termination or attempted waiver of any of the provisions of this Agreement shall be binding unless in writing and signed by the ~~party sought to be bound~~Parties.

**15.**    ~~14.~~ COUNTERPARTS; FACSIMILES.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute the same instrument, and may be executed by facsimile signature, and a facsimile signature shall constitute an original signature for all purposes.

**16.**    ~~15.~~ APPLICABLE LAW.  This Agreement shall be governed and regulated, and the rights and liabilities of all Parties hereto, shall be construed in accordance with the laws of the State of Colorado (without giving effect to the principles of conflicts of laws thereof), except to the extent that the laws of such state are superseded by the Bankruptcy Code.

**17.**    ~~16.~~ ATTORNEYS' FEES AND COSTS.  In the event any proceeding is filed or instituted between the Parties concerning this Agreement, the prevailing Party shall receive from the other Party ~~or parties~~ its attorneys' fees, experts' fees, costs and expenses, whether or not such controversy, claim or action is prosecuted to judgment or other form of relief.  The "*prevailing Party*" is the Party that is awarded judgment or other legal or equitable relief as a result of trial or arbitration.  If more than one party receives a judgment or other award of relief, the court or the arbitrator shall determine which Party is the prevailing Party, taking into consideration the merits of the claims asserted by each Party, the relative values of the judgments,

settlements or other forms of relief received by each Party, and the relative equities between the Parties.

*[Signature page follows]*

\\NY - 150699/000013765434/000001 - 10045845 v16

**IN WITNESS WHEREOF**, the Parties hereto have entered into this Agreement as of the date first above written.

**BUYER:**                                      ~~NP, Inc.~~**BREG Investment Holdings, LLC**, a Colorado ~~corporation~~limited liability company


By:  /s/ _____

~~Randy T. Nichols, President~~


~~SELLER:~~                                      ~~SEARS, ROEBUCK AND CO., a
New York corporation~~

~~By:~~ _____

Name: _____

Title: _____


~~See attached signature page~~

**IN WITNESS WHEREOF**, the parties hereto have entered into this Agreement as of the date first above written.

**SELLER**:                                      **SEARS, ROEBUCK AND CO.,** a
                                                 New York corporation


                                                 By: /s/ _____
                                                 Name: Mohsin Y. Meghji _____
                                                 Title: Chief Restructuring Officer _____

## EXHIBIT A

## ASSIGNMENT OF MEMBERSHIP INTEREST IN
## CLAYTON STREET ASSOCIATES, LLC

THIS ASSIGNMENT is made effective as of the __ day of ~~February~~March, 2020, by **SEARS, ROEBUCK AND CO.**, a New York corporation ("*Assignor*") in favor of ~~NP, INC.~~**BREG INVESTMENT HOLDINGS, LLC**, a Colorado ~~corporation (~~limited liability company (or its designee, "*Assignee*"; Assignor and Assignee are ~~also~~sometimes individually referred to as a "*Party*" and collectively referred to as the "*Parties*").

W I T N E S S E T H

WHEREAS, Assignor is a Member of Clayton Street Associates, LLC, a Colorado limited liability company ("*Company*"), pursuant to that certain Operating Agreement dated November 1, 2001, as amended by that First Amendment to Operating Agreement dated April 5, 2007 (collectively, the "*Operating Agreement*"); and

WHEREAS, Assignor owns five hundred (500) Voting Capital Units in the Company, which constitute a forty-five and eleven one hundredths percent (45.11%) Capital Unit Ratio in the Company (the "*Membership Interest*"); and

WHEREAS, Assignor desires to assign the Membership Interest to Assignee upon the terms and conditions hereof.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

**1.** **ASSIGNMENT OF MEMBERSHIP INTEREST**.  Assignor hereby assigns and transfers the Membership Interest to Assignee.

**2.** **MISCELLANEOUS**.  The Parties each agree to do, execute, acknowledge and deliver all such further acts, instruments and assurances and to take all such further action as shall be necessary or desirable to fully carry out this Assignment and to fully consummate and effect the transaction contemplated hereby.  In the event of any action or proceeding involving the Parties hereto arising out of or in connection with this Assignment or the breach of any representation or warranty set forth herein, the prevailing Party in such action or proceeding shall be awarded all of its costs and expenses reasonably incurred in connection therewith, including but not limited to, reasonable attorneys' fees and expert witness fees, in addition to any other relief to which such Party may be entitled.

IN WITNESS WHEREOF, Assignor has executed this Assignment effective as of the day and year first written above.

**ASSIGNOR:**                                      **SEARS, ROEBUCK AND CO.**, a
                                                     New York corporation

By:_____

Name:_____

Title:_____

## EXHIBIT B

### GRANT OF PROFITS INTEREST IN
### CLAYTON STREET ASSOCIATES, LLC

THIS PROFITS INTEREST GRANT (this "***Grant***") is made as of _____, 2020, by **CLAYTON STREET ASSOCIATES, LLC**, a Colorado limited liability company ("***Company***") in favor of **SEARS, ROEBUCK AND CO.**, a New York corporation ("***Recipient***").

WHEREAS, Recipient is a former member of the Company; and

WHEREAS, the Company desires to issue and Recipient desires to acquire the profits interest described below, on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual covenants herein and other good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

**1. PROFITS INTEREST.**

The "***Profits Interest***" granted to Recipient hereunder shall mean the right to receive twenty percent (20%) of all Net Proceeds resulting from a Company Change in Control at any time within five years of the Closing Date. A "***Company Change in Control***" shall mean (i) the purchase or other acquisition by any person, entity or group of persons of all of outstanding membership interests of the Company, (ii) a reorganization, merger or consolidation of the Company, whereby the members of the Company immediately prior to such reorganization, merger or consolidation, do not, immediately thereafter, own more than fifty percent (50%) of the combined voting power of the surviving entity, or (iii) a liquidation or dissolution or the sale of all or substantially all of the assets of the Company. "***Net Proceeds***" shall mean the proceeds available for distribution following (a) payment of all outstanding expenses associated with the Company operations and the ultimate sale or other disposition of Company property, including without limitation, title company premiums and brokerage commissions, (b) repayment of any outstanding debt of the Company (c) a return to members of the Company of all capital contributions, and (d) a ten percent (10%) preferred return compounded quarterly to the members of the Company on all costs and expenses incurred by the Company up through the Company Change in Control, including without limitation the $6,000,000 anticipated to be paid by the Company to the City and County of Denver and all due diligence, transaction, and closing costs associated with the same and all operating and maintenance expenses associated with any property held by the Company.

**2. NO RIGHTS AS MEMBER.**

Nothing herein with respect to the Profits Interest shall be construed to: (a) give Recipient any rights whatsoever with respect to membership interests or capital units of the Company or

\NY 150699/000013 10045845.v1

otherwise cause Recipient to be a member or owner of the Company; or (b) cause the Profits Interest to be deemed capital units of the Company.

**3. TAXATION.**

Recipient understands and agrees that, the acceptance of the Profits Interest and/or receipt of payment with respect thereto by Recipient shall constitute an agreement by Recipient to report any income in connection therewith in accordance with then applicable law and to cooperate with Company in establishing the amount of such income and corresponding deduction, if any, to the Company for its income tax purposes.  Withholding for Federal or state income tax purposes will be made, if and as required by law.

**4. FURTHER ACTIONS.**

The parties agree to execute such further instruments and to take such further action as may reasonably be necessary to carry out the intent of this Grant.

**5. NOTICES.**

All notices, requests, demands and other communications under this Grant shall be in writing and shall be deemed to have been duly given on: (a) the date of service if served personally on the party to whom notice is to be given; (b) the date when sent by electronically confirmed electronic mail transmission provided, that the date is a business day and if not then the next business day; or (c) within three (3) days after mailing, if mailed to the party to whom notice is to be given, by first class mail, registered or certified, return receipt requested, postage prepaid, and properly addressed to the party at its address set forth on the signature page of this Grant or any other address that any party may designate by written notice to the other.

**6. SUCCESSORS AND ASSIGNS.**

Recipient shall have no right to assign or otherwise transfer this Grant or its rights hereunder and any attempted assignment or transfer shall be null, void and of no force or effect.  This Grant shall inure to the benefit of the successors and assigns of the Company.

**7. SEVERABILITY.**

If any provision of this Grant is invalid or unenforceable in any jurisdiction, then, to the fullest extent permitted by law, (a) such provision shall be modified to be enforced to the maximum extent permitted by law; (b) the other provisions hereof shall remain in full force and effect in such jurisdiction; and (c) the invalidity or unenforceability of any provision hereof in any jurisdiction shall not affect the validity or enforceability of such provision in any other jurisdiction.

**8. GOVERNING LAW AND VENUE.**

This Grant shall be governed by and interpreted in accordance with the laws of Colorado, without regard to any applicable conflicts of law, except to the extent that the laws of such state are superseded by the Bankruptcy Code.  Any actions regarding this Grant shall be heard in a court of

\\NY - 150699/000013 - 10045845.v1

competent jurisdiction sitting in or for Denver, Colorado, to whose jurisdiction the parties expressly consent, except to the extent superseded by the Bankruptcy Code.

**9. ATTORNEYS' FEES AND COSTS.**

In the event any proceeding is filed or instituted between the parties concerning this Grant, the prevailing party shall receive from the other party or parties its attorneys' fees, experts' fees, costs and expenses, whether or not such controversy, claim or action is prosecuted to judgment or other form of relief. The "*prevailing party*" is the party that is awarded judgment or other legal or equitable relief as a result of trial or arbitration. If more than one party receives a judgment or other award of relief, the court or the arbitrator shall determine which party is the prevailing party, taking into consideration the merits of the claims asserted by each party, the relative values of the judgments, settlements or other forms of relief received by each party, and the relative equities between the parties.

**10. ENTIRE AGREEMENT.**

This Grant constitutes the entire agreement of the parties with respect to the subject matter hereof.

**IN WITNESS WHEREOF**, the parties hereto have executed this Grant as of the date first above written.

**COMPANY:**                                       **CLAYTON STREET ASSOCIATES,**
**LLC, a**

                                                   Colorado limited liability company

                                                   By: _____

                                                   Randy T. Nichols, Manager

**RECIPIENT:**                                     **SEARS, ROEBUCK AND CO.**, a

                                                   New York corporation

                                                   By: _____

                                                   Name: _____

                                                   Title: _____

\\NY- 150699/000013 - 10045845.v1

| Summary report: | |
|---|---|
| **Litéra® Change-Pro 10.1.0.200 Document comparison done on 3/11/2020 3:24:11 PM** | |
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://HLEAST/NEWYORK/10045845/1 | |
| **Modified DMS:** iw://HLEAST/NEWYORK/10045845/6 | |
| **Changes:** | |
| Add | 91 |
| Delete | 128 |
| Move From | 5 |
| Move To | 5 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 229 |