Salene R.M. Kraemer, Esquire
NY ID No. 5228580
skraemer@bernsteinlaw.com
BERNSTEIN-BURKLEY, P.C.
707 Grant Street
Suite 2200 Gulf Tower
Pittsburgh, PA  15219
(412) 456-8100 Telephone
(412) 456-8135 Facsimile
*Counsel for Plaintiffs VIR Ventures, Inc. and*
*AMI Ventures, Inc.*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: SEARS HOLDING CORPORATION, et al., Debtors[1]. | Chapter 11<br><br>Bankruptcy No. 18-23538 (RDD) |
| VIR VENTURES, INC. AND AMI VENTURES, INC.,<br><br>Plaintiffs,<br><br>v.<br>SEARS HOLDING CORPORATION *et al*,<br><br>Defendants. | Adversary Proceeding<br><br>Case No. 19-08700 (RDD) |

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); SHC Licensed Business LLC (3718); SHC Promotions LLC (9626); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

1

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEBTORS' MOTION TO DISMISS
<u>THE ADVERSARY COMPLAINT</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................5

II. FACTUAL BACKGROUND ..................................................................................6

III. RELIEF REQUESTED ............................................................................................9

IV. LAW AND ARGUMENT .......................................................................................9

    A. Legal Standard ..................................................................................................9

    B. Plaintiffs' Complaint States a Valid Claim for Breach of Express Trust ........10

    C. Count IV of Plaintiffs' Complaint Contains Sufficient Allegations to Obtain the Imposition of a Constructive Trust ..............................................................12

    D. Count V of Plaintiffs' Complaint Contains Sufficient Allegations to Obtain Compensation as Victims of Conversion ...........................................................16

V. CONCLUSION .......................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Carlson Orchards, Inc. v. Linsey*, 296 B.R. 582 (Bankr. D. Mass. 2003) ................................... 11

*Chiu v. Wong,* 16 F.3d 306, 310 (8th Cir. 1994) ........................................................................ 12

*Drury v. Sanofi-Synthelabo Inc.*, 292 F.Supp. 2d 1068 (N.D. Ill. 2003). ..................................... 9

*Evans v. Robbins (In re Robbins),* 83 B.R. 688, 692–93 (Bankr. W.D. Mo. 1988) .................... 12

*Schultz v. Schultz*, 297 Ill. App. 3d 102, 106-7 (1998) ............................................................... 12

*Advent Elects., Inc. v. Buckman*, 918 F. Supp. 260, 264 (N.D. Ill. 1996) ............................. 14, 15

*Eychaner v. Gross*, 202 Ill. 2d 228, 253 (Ill. 2002) ............................................................... 10, 11

*In re Estate of Wilkening*, 109 Ill. App. 3d 934, 940-41, 65 Ill. Dec. 366, 441 N.E.2d 158 (1982) ........... 10

*In re Estate of Zukerman*, 218 Ill. App. 3d 325, 329 ................................................................. 10

*Kronmuller v. West End Fire Co. No. 3 Fire Dep't*, 123 F.R.D. 170 (E.D. Pa. 1988). ................ 9

*N. Y. Agency of Bank of Commerce & Credit Int'l S.A.,* 90 N.Y.2d 410, 424 (1997) ................ 10

*Price v. State*, 79 Ill. App. 3d 143, 148, 34 Ill. Dec. 690, 398 N.E.2d 365 (1979) .................... 10

*Steinmetz v. Kern*, 375 Ill. 616, 620 (Ill. 1941). ........................................................................ 13

*Swartz v. Eberly*, 212 F.Supp. 32 (E.D. Pa. 1962). ..................................................................... 9

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .................................................................................. 12

Federal Rule of Civil Procedure 9(b) ......................................................................................... 12

Plaintiffs VIR Ventures, Inc. ("VIR") and AMI Ventures, Inc. ("AMI"), (collectively "Plaintiffs"), hereby file this Response in Opposition to the Motion to Dismiss the Adversary Complaint filed by Sears Holdings Corporation ("SHC" or "Sears") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors").

## I.    INTRODUCTION

1.    The Motion to Dismiss is an attempt at misdirection, distraction and delay to "run out the clock" so that the Plaintiffs will recover nothing in a melting ice cube Chapter 11 proceeding that is an administratively insolvent case.

2.    Yes, this issue is a novel one and a case of first impression. E-marketplace portals are relatively new to the retail industry. Nevertheless, the Plaintiffs should not therefore be deprived of their due process and day in court.

3.    As demonstrated herein, the Plaintiffs hold colorable claims. It is likely that all parties will agree that Sears was supposed to hold customer funds as agent for the Plaintiffs but it failed to do so. It is likely that all parties will agreed that instead, Sears used the money as it wished for other purposes. Plaintiffs believe the evidence will reveal that Sears customer representatives orchestrated a system-wide fraudulent scheme, mistakenly, recklessly or intentionally misinforming the Plaintiffs (and all e-marketplace sellers) about the bankruptcy proceeding and their legal rights, thus further inducing them to do to business, even though the agents perhaps knew that what they were stating to the 100's of e-marketplace sellers, including the Plaintiffs, was wrong or could be inaccurate.

4.    The Plaintiffs are confident that through discovery the facts will be revealed evidencing that this is not your typical creditor-debtor relationship.[2] The Plaintiffs deserve the

---

[2] In accordance with the Court's instruction at the February 24, 2020 hearing, Plaintiffs' withdrew the *Expedited Joint Motion of E-Market Place Sellers VIR Ventures, Inc. and AMI Ventures, Inc. to Set-Aside a $885,896 Reserve*

5

right to proceed in this litigation to ferret out the facts here to determine if the parties did in fact establish a trust or if this Court should indeed recognize a constructive one given what has transpired.

5.      The Plaintiffs respectfully request that this Honorable Court deny the Motion to Dismiss to enable the Plaintiffs to utilize the judicial process in the hope of seeking relief that will right the wrong that has been perpetrated by Sears upon not only the Plaintiffs but hundreds of similarly situated e-market place sellers. This case will establish critical precedent that will have global implications upon the entire e-marketplace industry. This decision may dictate new industry practices and business terms. The Plaintiffs respectfully submit that an adverse decision will have grave consequences for relatively small e-marketplace sellers like the Plaintiffs. An adverse decision restrict the growth of this segment and the growth of millions of small businesses in this country (not only the e-marketplace sellers but also their small business suppliers).

## II.    FACTUAL BACKGROUND

6.      On October 15, 2018 (the "Petition Date"), the Debtors filed voluntary cases under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") (Chapter 11 Cases) in the United States Bankruptcy Court for the Southern District of New York (this Honorable "Court").

7.      During the pendency of these Chapter 11 Cases, on or about February 19, 2019, in a global asset sale transaction, the Debtors sold 425+ of its stores to Transform Holdco, LLC ("Transform") for the sale price of $5.2B (cash and credit bid, plus assumption of certain seller liabilities, including cure costs with respect to certain Assigned Agreements). Sears former

---

*from the Second Distribution under the Administrative Expense Claims Consent Program,* on March 5, 2020 (CM/ECF #7400).

Chairman and CEO Eddie Lampert bought the company through his hedge fund, ESL Investments, and regained control of these stores.

8. VIR and AMI are creditors in the above- captioned cases within the meaning of the Bankruptcy Code § 101(10) and also a party-in-interest for the purposes of Bankruptcy Code § 365.

9. VIR and AMI were third-party e-marketplace seller for the Debtors. AMI began selling for Sears in January of 2010 and VIR began selling in January of 2014. Since January of 2010, AMI and VIR have been providing goods to Sears' customers via its online marketplace www.sears.com.

10. AMI and VIR were likely one of Sears' top marketplace sellers that provided the largest selection and number of different products for Sears to sell. Together, they provided at least 1 million (1,000,000) unique SKU's representing products available to be purchased by Sears' customers.

11. In order to sell on Sears' online marketplace, AMI and VIR each entered into a Sears Marketplace Agreement ("Agreement"). Pursuant to the terms of the Agreement the Debtors were obligated to provide access to the Plaintiffs to access Sears and its affiliate's websites as a platform to post merchandise listings. In return, the Debtors received a monthly fee and a commission from each product sold.

12. This is not a typical creditor-debtor claim matter. Customers would purchase chosen products from the Debtor's website and pay the Debtor directly. VIR and AMI would then deliver the purchased products to a common carrier who then delivered the goods directly to the Debtors' customers. The terms of the Agreement then required the Debtors to send the payment minus the commissions to AMI and VIR within fifteen days of delivery.

13. AMI and VIR performed their obligations under the terms of the agreement. The Debtors have not. The Debtors have failed to remit payment to AMI and VIR for the products delivered.

14. Additionally, Sears, as Plaintiffs agent, was contractually obligated to set aside monies to pay sales taxes and to reimburse the Plaintiffs for the goods purchased. The Sears Agreement states that Sears is an "agent" of the Plaintiffs for the purposes of holding the customer funds. It expressly states:

> Title to and risk of loss of and/or damage to the Requested Merchandise will remain with Seller until delivery to the User. Sears will not have title to, or deemed the legal owner of, any Merchandise at any time under the terms of this Agreement. Seller may not include any marketing, promotional materials, or any other solicitations with the Requested Merchandise shipped to Users.

Sears Agreement, p. 3, Part II, Section C (I).

> "**Seller hereby appoints Sears as an agent of Seller for the sole and express purpose of receiving payments from Users** for Seller's Merchandise sold on the Websites. Seller acknowledges that, as between Seller and a User who purchases Merchandise from Seller, **Sears' receipt of funds from the User is deemed the receipt of funds by Seller**.
> Sears Agreement, p. 3, Part I, Section B.

15. This Court cannot let Sears retain those customer funds when they duly belong to the Plaintiffs (minus the applicable commission), since the Plaintiffs were negligently, mistakenly or fraudulently induced to continue to provide goods.

16. Prior to the Petition Date, once a customer ordered an item through the website, in addition to collecting the purchase price, Sears collected sales tax from the customers and then remitted them to the Plaintiffs for applicable states where the Plaintiffs uploaded the tax certificate for states like California, Texas, New York, Florida, and New Jersey. For Pennsylvania and Washington, Sears collected taxes and also remitted them to the Plaintiffs for submission. Sears

8

has not taken any responsibility for remitting any taxes in 2018 in any states on behalf of customers' transactions, the sum of which totals about $40,000.

### III.  RELIEF REQUESTED

17.  AMI and VIR respectfully request that this Honorable Court deny the Debtors' Motion to Dismiss Counts II, IV and V of the Complaint.  Alternatively, AMI and VIR respectfully request that this Honorable find that the Debtors' Motion to Dismiss is premature and defer ruling until discovery is complete.   The Plaintiffs also request the opportunity to re-plead allegations if necessary.

### IV.  LAW AND ARGUMENT

#### A.  Legal Standard

18.  On a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the court accepts all well-pleaded allegations in complaint as true, and grants the motion only if a plaintiff can prove no set of facts to support allegations in her claim. *Drury v. Sanofi-Synthelabo Inc.*, 292 F.Supp. 2d 1068 (N.D. Ill. 2003).

19.  A motion to dismiss for failure to state a claim may be granted only in clearest cases and, must be denied when additional facts are required before ultimate judgment may be arrived at. *Swartz v. Eberly*, 212 F.Supp. 32 (E.D. Pa. 1962).  Even if it is doubtful that plaintiff would ultimately prevail, if plaintiff colorably states facts which, if proven, would entitle him to relief, motion to dismiss for failure to state claim should not be granted. *Kronmuller v. West End Fire Co. No. 3 Fire Dep't*, 123 F.R.D. 170 (E.D. Pa. 1988).

20.  Federal Rule of Civil Procedure 9(b), which is applicable here, requires that the circumstances constituting fraud or mistake be stated with particularity.

**B.    Plaintiffs' Complaint Count II States a Valid Claim for Breach of Express Trust**

21.    'A trust "is a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, *which arises as a result of a manifestation of an intention to create it.*" *Eychaner v. Gross*, 202 Ill. 2d 228, 253 (Ill. 2002), citing, Restatement (Second) of Trusts § 2 (1959).

22.    In Illinois, the creation of an express trust requires:

(i)    Intent of the parties to create a trust, which may be shown by a declaration of trust by the settlor *or by circumstances which show that the settlor intended to create a trust;*
(ii)   A definite subject matter or trust property;
(iii)  Ascertainable beneficiaries;
(iv)   A trustee;
(v)    Specifications of a trust purpose and how the trust is to be performed; and
(vi)   Delivery of the trust property to the trustee.

*In re Estate of Zukerman*, 218 Ill. App. 3d 325, 329; *In re Estate of Wilkening*, 109 Ill. App. 3d 934, 940-41, 65 Ill. Dec. 366, 441 N.E.2d 158 (1982); *Price v. State*, 79 Ill. App. 3d 143, 148, 34 Ill. Dec. 690, 398 N.E.2d 365 (1979) (emphasis added).

23.    By the express terms of the agreement, Sears was appointed as an agent of or trustee for Plaintiffs to receive the trust property (customer payments) for the merchandise sold by Plaintiffs on Sears' website.

24.    As outlined in Plaintiffs' Complaint and set forth above, the parties set out in the Agreement as follows:

> **Seller hereby appoints Sears as an agent of Seller for the sole and express purpose of receiving payments from Users for Seller's Merchandise sold on the Websites**. As between Plaintiff Sellers and a User who purchases Merchandise from Plaintiffs, **Sears' receipt of funds from the User is deemed the receipt of funds by Seller**.

Sears Agreement, Part I, Section B, User Orders and Payment, p. 3.

10

25. Sears was then to remit taxes on the sale, again for the benefit of the Plaintiffs. Then within 15 days of receiving payment, Sears, as trustee, and in accordance with the Agreement was required to remit the payment (the trust res) to the Plaintiffs as the beneficiary of the trust.

26. Additionally, "it is immaterial whether or not the settlor knows the intended relationship is called a trust, and whether or not [the settlor] knows the precise characteristics of the relationship which is called a trust." *Eychaner*, 779 N.E.2d at 1132. No particular form of words or conduct is necessary is necessary for the manifestation of intent to create a trust. *Id.* The 'manifestation of intention to create a trust "may clearly appear from written or spoken words or may be determined by interpretation of the words or conduct of the settlor in the light of all circumstances." *Id.* The question in each case is whether the settlor manifested an intention to create the kind of relationship that to lawyers is known as a trust. *Id.* at 1133.

27. Here, the consumer (settlor) purchased goods online from Sears' e-marketplace. The settlor remitted payment to Sears (trustee) for the benefit of Plaintiffs (beneficiary). Although the consumer (settlor) may not have been fully aware of the relationship it created, the consumers intention was to purchase the goods and have the funds delivered as necessary to complete the transaction. The consumer's actions manifested the intent to create a trust, thereby satisfying the first element of an express trust.

28. Contrary to the Debtors' assertions, there is a trust res – the funds submitted by the consumer and whatever traceable property was purchased with this funds (will be determined in discovery). *Carlson Orchards, Inc. v. Linsey*, 296 B.R. 582 (Bankr. D. Mass. 2003) (after debtor embezzled money from employer, employer imposes constructive trust on vehicles which were purchased with embezzled funds). Although Sears did not obtain title to the merchandise, as delineated in the agreement, Sears did obtain title and possession to the funds remitted by the

11

consumer. As a result, there is a trust res. The trust res could also be the traceable property purchased with such funds.

29. Next, the Plaintiffs were the ascertainable beneficiaries and Sears was the trustee, therefore, this element is also met.

30. The trust's purpose was to provide goods to consumers through the online marketplace. The Debtors as trustee had specific instructions as to how to perform the trust – to remit taxes and then transfer the funds to the Plaintiffs. As trustee, the Debtors were to obtain the trust property (funds) from the consumer, upon completion of the purchase from the e-marketplace.

31. Lastly, there was no agreement that the Debtors were allowed to commingle the trust property with non-trust property. Also, the Debtors were never permitted to use the consumer funds, owed to the Plaintiffs, as their own funds. In fact, had the Debtors not commingled funds with non-trust property, then payment may have been remitted as specified as in the agreement and this issue would not be before the Court. The Plaintiffs will attempt to trace the trust property through discovery back to the illegal transfers giving rise to the trust. *Chiu v. Wong,* 16 F.3d 306, 310 (8th Cir. 1994) (constructive trust arose to the extent that debtor wrongfully converted partnership assets); *cf. Evans v. Robbins (In re Robbins)*, 83 B.R. 688, 692–93 (Bankr. W.D. Mo. 1988) (trustee was entitled to the entire commingled property when debtor failed to offer a minimal explanation, to produce minimal records, and had been evasive to the point of being dishonest).

32. The Debtors have failed to meet their heavy burden under Rule 12(b)(6) and their Motion to Dismiss Count II of Plaintiff's Complaint should be denied.

**C. Count IV of Plaintiffs' Complaint Contains Sufficient Allegations to Obtain the Imposition of a Constructive Trust.**

33. The Debtors assert that a constructive trust is not applicable in this case for two primary reasons, (1) that Plaintiffs have failed to identify a trust res that is traceable to any

wrongful conduct in this case; and (2) that Plaintiffs have not made specific allegations of wrongdoing on the part of the Debtors that would support the imposition of a constructive trust. See Debtors Motion to Dismiss ¶ 26-27.

34. A "constructive trust is an equitable remedy imposed against one, who, by some form of wrongdoing such as actual or constructive fraud, breach of a fiduciary duty, duress, coercion, or mistake, has been unjustly enriched." *Schultz v. Schultz*, 297 Ill. App. 3d 102, 106-7 (1998).

35. "[W]hereby reason of friendship, agency, business association and experience, a high degree of trust is reposed, a confidential relationship may be said to exist; and the mere existence of such connection prohibits the one trusted from seeking or obtaining any selfish benefit for himself [or herself] during the course of the relationship and affords a basis for fastening a constructive trust upon the property." *Steinmetz v. Kern*, 375 Ill. 616, 620 (Ill. 1941).

36. As discussed in section B, *supra*, Plaintiffs have established the existence of a trust res, the customer funds made online to Sears via the e-marketplace portal or the traceable property purchased with the same.

37. In their Complaint, Plaintiffs elaborately address with specificity the allegations of wrongdoing, breach of fiduciary duty and mistake on behalf of the Debtors.

38. Specifically, as set forth in the Complaint Brian Carr, an employee of the Debtors and account manager for the Plaintiffs for the last five years, made numerous statements that were mistaken, reckless, and perhaps fraudulent (depending up on what Brian Carr knew at the time he made them- which can only be ferreted out in discovery):

   a. October 15, 2018- "**The messages I have received indicated business** as usual and **payments restarting**." Complaint, Paragraph 55, p. 11 [This was false. Payment did not resume until months after the Petition Date. Per the Bankruptcy Code, the Debtors could not pay pre-petition debt post-petition without a Court

13

      order. Discovery will reveal what messages were actually received by Brian Carr regarding this matter and what knowledge and experience Brian Carr would have had regarding Chapter 11 legal issues].

b. October 15, 2018- The Debtors "do not anticipate any impact to vendor payment" and "we intend to pay our vendors in the ordinary course for all goods and services provided on or after the filing date." Complaint, Paragraph 56, p. 11  [This was false- the Plaintiffs were not named as critical vendors in these Chapter 11 Cases, Discovery will reveal what the Debtors' intent was at the time that this email was sent]. Complaint, Paragraph 56, p. 11.

c. October 16, 2018- "**Payment for orders** shipped from Sunday midnight forward **will be paid as per the usual terms** … without delay. AP has confirmed the payments should arrive 13-15 business days after shipping. **Per the contract—this is** lawfully obligated and cannot be sped up or slowed down and is **guaranteed**." Complaint, Paragraph 58, p. 11 [This was clearly false. Payment, in fact, was never received. Brian Carr provides legal advice even though he is not a lawyer. The contract did not guarantee payments in the event of a bankruptcy filing. Clearly, these statements were misleading, false, and indicative of a widespread pattern of wrongful conduct by Brian Carr, who upon information and belief cmade the same types of statements to several e-marketplace sellers (which can also be proven in discovery)].

d. October 23, 2010-"**MKP … are sellers** and not vendors **which allows you to be in a distinct class. . . due ahead of other sellers.** You should start receiving regular POST OCT 15 payments by next week. ☺" [This was also false. The Debtors have taken the position that e-marketplace sellers do not deserve to be in a distinct class as administrative claimants].

e. Tuesday, January 22, 2019- "Eddie Lampert retains control of Sears as a whole entity going forward. …. At that point, **we will official emerge from bankruptcy after a relatively short 3 months**!" [Evidently false as the Plaintiffs continued to remain unpaid and embroiled in these Chapter 11 Cases.]

f. Tuesday, February 12, 2019- " As of yesterday, it **appears we are officially out of Chapter 11**! … Any holds or delays on processing EFTS should be cleared by Wednesday- pending amounts should hit your account by then." [False again. Pending amount were never paid.]

    39.    These statements were made to the Plaintiffs who were not represented by counsel. The Plaintiffs, to their own detriment, relied on these statements made by Brian Carr and continued serving the Debtors' customers and increasing their exposure of unpaid invoices.

14

40. Moreover, the Debtors' conduct by retaining the funds owed to the Plaintiffs while making guarantees that the funds would be paid, also constitutes a breach of the Debtors' fiduciary duty as an agent of the Sellers and trustee of the funds. In discovery it may be revealed that the Debtors' agents were fully aware that customer funds had already vanished and payments would not be made to vendors, yet they made continuous representations to the contrary.

41. The Debtors have been unjustly enriched by retaining the funds.

42. The Debtors further argue that "representations promising future conduct cannot form the basis of a fraud claim." *See* Debtors Motion to Dismiss ¶ 27. The Debtors' reliance on *Advent Elects., Inc. v. Buckman*, 918 F. Supp. 260, 264 (N.D. Ill. 1996), is misplaced. In *Advent Elects., Inc.,* the District Court for the Northern District of Illinois noted that "[p]romises to perform future conduct generally do not constitute fraudulent misrepresentations. However, the general rule against the viability of "promissory fraud" is subject to an exception where the false premise or representation of intention of future conduct is the scheme or device to accomplish the fraud." *Id.* at 265. The "scheme exception" is applicable here.

43. The "scheme exception" applies where "the party promises performance in order to induce the other party's reliance, and the other party so relies, but the promisor never intended to keep the promise." *Id.* Here, the Debtors, through Brian Carr, promised payment that he knew was not forthcoming in order induce the Plaintiffs to continue to sell on the Debtors e-marketplace.

44. Discovery should reveal that this was Brian Carr, Sears, and Transform's scheme: misinforming 100's of e-marketplace sellers (who were not conferring with bankruptcy counsel) so as to ensure goods would continue to be provided to Sears' customers during the Chapter 11 Cases and through and after the sale process to transform.

45. The New York Court of Appeals has explained that "equity and good conscience" are "the fundamental requirement[s] for imposition of a constructive trust." *N. Y. Agency of Bank of Commerce & Credit Int'l S.A.*, 90 N.Y.2d 410, 424, 683 N.E.2d 756, 660 N.Y.S.2d 850 (1997). Retention by the bankruptcy estate of assets that, absent bankruptcy, would go to a particular creditor is not inherently unjust. "There is no inequity in treating [the plaintiff] in the same manner as any other depositor/creditor who was unfortunate enough to have placed its money" with the debtor. *In re N. Y. Agency*, 90 N.Y.2d at 424. This case can be distinguished because the Plaintiffs did not place their own money with the Debtors; the customers placed their money with the Debtors.

46. Finally, Plaintiffs are not requesting that this court "automatically" recognize a constructive trust, but rather are requesting that the Court consider the unique circumstances of this matter and impose a constructive trust for this limited set of facts.

47. The Debtors made material misrepresentations that the Plaintiffs relied upon to continue doing business with the Debtors. As a result of these misrepresentations, the Debtors have been unjustly enriched, in at least the amount of $885,896.65 plus attorneys' fees for failing to remit the customer funds and taxes.

**D.  Count V of Plaintiffs' Complaint Contains Sufficient Allegations to Obtain Compensation as Victims of Conversion**

48. Count V of Plaintiffs' Complaint contains sufficient allegations to obtain compensation as victims of conversion.

49. The Claim for conversion arises out of the same conduct as the claims for an express trust (Claim II) or constructive trust (Claim V).

50. Sears took dominion and control over the customer funds as trustee for the Plaintiffs' benefit and wrongfully used the funds as Sears saw fit instead of remitting them to Plaintiffs. The customer funds should have never been a part of the Debtors' estate.

51. The Plaintiffs should be able to recover despite the economic loss doctrine because of Sears' duty as trustee with a fiduciary duty to protect the customer funds if a constructive trust is recognized here, which would be independent of the express contract.

## II.   CONCLUSION

For all the foregoing reasons, the Plaintiffs request that the Court deny the Debtors' Motion, find that the Debtors' Motion to Dismiss is premature and defer ruling until discovery is complete, or, in the alternative, give Plaintiffs permission to replead the allegations. The Plaintiffs are confident that discovery will reveal a fraudulent scheme conducted by the Debtors to induce e-marketplace sellers to continue to do business. While the Plaintiffs recognize that imposing a constructive trust in bankruptcy can "thwart the principles of ratable distribution underlying the Bankruptcy Code," in this new digital age, the Plaintiffs respectfully submit that this case provides the "compelling" sets of facts that would justify the recognition of a constructive trust since "equity and good conscience" require it.

Dated: March 16, 2020

Salene R.M. Kraemer, Esquire
NY ID No. 5228580
skraemer@bernsteinlaw.com
BERNSTEIN-BURKLEY, P.C.
707 Grant Street
Suite 2200 Gulf Tower
Pittsburgh, PA  15219
(412) 456-8100 Telephone
(412) 456-8135 Facsimile
***Counsel for VIR Ventures, Inc. and AMI Ventures, Inc.***