WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
In re                                                        :
                                                             :    Chapter 11
SEARS HOLDINGS CORPORATION, et al.,                          :
                                                             :    Case No. 18-23538 (RDD)
                                                             :
                       Debtors.¹                             :    (Jointly Administered)
------------------------------------------------------------x
```

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR - Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc. (3626)); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**DEBTORS' OBJECTION TO MOTION
OF RELATOR CARL IRELAND, ADMINISTRATOR OF THE
ESTATE OF JAMES GARBE, FOR AN ORDER (I) DETERMINING THE VALUE
OF THE RELATOR'S COLLATERAL AS OF THE SALE OF SUCH COLLATERAL;
(II) DETERMINING THE AMOUNT OF ANY DIMINUTION IN THE AMOUNT OF
THE SALES PROCEEDS ALLOCABLE TO SUCH COLLATERAL AFTER THE SALE;
(III) DIRECTING PAYMENT OF RELATOR'S SECURED AND SUPERPRIORITY
ADMINISTRATIVE CLAIM; AND (IV) GRANTING RELATED RELIEF**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation ("**Sears**") and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), submit this objection to the *Motion of Relator Carl Ireland, Administrator of the Estate of James Garbe, For an Order (I) Determining the Value of the Relator's Collateral as of the Sale of Such Collateral; (II) Determining the Amount of Any Diminution in the Amount of the Sales Proceeds Allocable to Such Collateral After the Sale; (III) Directing Payment of Relator's Secured and Superpriority Administrative Claim; and (IV) Granting Related Relief*, dated August 21, 2019 (ECF No. 4931) (the "**Motion**"), filed by Relator Carl Ireland, as Administrator of the Estate of James Garbe (the "**Relator**"),[2] and respectfully represent as follows:

**Preliminary Statement**

1. The Debtors do not contest that Relator holds a secured claim. Throughout these chapter 11 cases, the Debtors and the Court have addressed Relator's concerns, including language in the DIP Orders, the Sale Order (defined below), and the Confirmation Order. As discussed below, that language is sufficient to adequately protect Relator, and the relief requested

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, the *Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors and (II) Granting Related Relief* (ECF No. 5370) (the "**Confirmation Order**"), or the Plan (as defined in the Confirmation Order), as applicable.

in the Motion (notably filed before the entry of the Confirmation Order) is neither necessary nor appropriate.

2. The Court will recall that the Confirmation Order provided Relator and the United States (together, the "**Mortgagees**") with replacement liens over all of the Debtors' assets as adequate protection for their asserted secured claim. *See* Confirmation Order, ¶ 65.

3. The Court will further recall that it found at the confirmation hearing that Relator is not entitled to payment on a secured claim prior to the Effective Date of the Plan, that a cash reserve (the functional equivalent of the Debtors' paying the Mortgagees) is not warranted (given the Court found the Plan feasible), and that Relator has not shown that it is not adequately protected in these chapter 11 cases. *See In Re Sears Holdings Corporation et al.*, Case No. 18-23538 (RDD), Hr'g Tr. at 157:7-9; 210:7-211:19-22 (Bankr S.D.N.Y. Dec. 3, 2019) ("**Dec. 3rd Confirmation Hr'g Tr.**").

4. While the Mortgagees reserved the right to request that the Court require a cash reserve prior to the Effective Date if there are changes in the facts and circumstances of these cases, *see id.*, there have been no unfavorable changes—alleged or in actuality—that require a change in the Court's decision. Relator has not and cannot point to any facts that were not known or assumed at the confirmation hearing or changes in these chapter 11 cases that would warrant the extraordinary relief requested by granting the Motion.

5. Finally, as the Court is aware, the Debtors are addressing many claims filed by many parties that are asserted in amounts with which the Debtors disagree. These include hundreds asserted as entitled to administrative or other priorities that may also need to be satisfied in full upon the Effective Date of the Plan. As described below, Relators' claim is one among those many. The Court has already recognized that individual creditors are not best positioned to

direct the administration of the massive claims reconciliation process and has ordered that requests by creditors for payment of administrative expense claims be adjourned without date, allowing time for an efficient—and wherever possible, consensual—claims resolution process. The Motion offers no basis for the Court to deviate from this course now.

6. For those reasons and as set forth below, the Motion should be denied.

## Relevant Background

7. Beginning on October 15, 2018 (the "**Commencement Date**") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 the United States Code (the "**Bankruptcy Code**").

8. On November 11, 2018 and December 28, 2018, the Court entered the Senior DIP Order and Junior DIP Order, respectively, pursuant to which the Mortgagees' first priority liens and security interests were preserved. *See* Senior DIP Order, ¶ 65; Junior DIP Order, ¶ 64.

9. The Debtors entered into an asset purchase agreement, dated as of January 17, 2019 (as amended, the "**APA**") for the sale of substantially all of the Debtors' assets (the "**Sale Transaction**").

10. On February 8, 2019, the Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and* Clear *of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* (ECF No. 2507) (the "**Sale Order**"), pursuant to which the Mortgagees were granted a replacement lien on the sale proceeds of the Property and a superpriority administrative expense claim for any diminution of value of such replacement lien

post-Closing (the "**Sale Order Grants**"). *See* Sale Order, ¶ 71. The Sale Transaction closed on February 11, 2019.

11. On October 15, 2019, the Court entered the Confirmation Order, confirming the Plan (as defined in the Confirmation Order). The Confirmation Order provides the Mortgagees with a replacement lien against Total Assets (as defined in the Plan) as additional adequate assurance (the "**Additional Adequate Protection Replacement Lien**"), which is senior to all other liens against the Total Assets and does not supersede or otherwise modify the Sale Order Grants. *See* Confirmation Order, ¶ 65.

12. On December 10, 2019, the Debtors engaged Integra Realty Resources ("**Integra**") to conduct an independent appraisal of the Property. On February 20, 2020, Integra issued to the Debtors an appraisal report (the "**Appraisal**"), in which Integra assigned a value of $16,920,000 to the Property as of the Closing Date (as defined in the APA). *See* Ex. 1, pp. 2, 7.

### The Motion Should Be Denied

**A.    Valuation Need Not Be Determined At This Time**

13. Pursuant to the Bankruptcy Code, the Confirmation Order, and the Plan approved by this Court, Relator's claim does not need to be paid until the Plan's Effective Date. *See* Plan, §§ 2.5, 7.2. To the extent the amount of Relator's claim is still in dispute on the Effective Date, the Debtors will reserve for the disputed amounts as provided by the Plan. *See* Plan, § 11.4. There is absolutely no need to burden the Court or distract resources from the Debtors' estates now to address a single claim ahead of others.

14. Further, as expressed by this Court, a cash reserve is neither necessary nor required at this time. *See* Dec. 3rd Confirmation Hr'g Tr. at 157:7-9 (noting that with respect to Relator's replacement lien provided under the Sale Order, the Debtors need to protect the lien but a cash reserve is not needed); *In re Sears Holdings Corporation et. al*, Case No. 18-23538 (RDD),

Hr'g Tr. at 122:20-21 (Bankr. S.D.N.Y. Dec. 7, 2019) ("**Dec. 7th Confirmation Hr'g Tr.**") (stating again that a reserve will not be set up with respect to disputed 507(b) claims prior to the Effective Date). Requiring a reserve and trapping cash of the Debtors would be the functional equivalent of requiring current payment, which is not required or appropriate.

15. The Debtors are hopeful that the parties will be able to agree on a valuation prior to the Effective Date, when Relator is rightfully entitled payment, to obviate the need to litigate the issue.

16. As stated above, though, the Debtors' Appraisal assigned to the Property an "as is" value of $16,920,000 as of the Closing Date (the "**Closing Date Valuation**"). Relator's Current Appraisal assigned an "as is" value of $22,100,000 as of March 15, 2019 (the "**Relator's Valuation**"). The difference in the Debtors' Closing Date Valuation and Relator's Valuation is $5,180,000;[3] the Debtors believe that settlement of scale is not an insurmountable task. If the parties are able to come to an agreement, the Court need not decide a contested, evidentiary valuation issue.[4]

17. Separately, following entry of the Confirmation Order, there is no relevance to Relator's assertion of a superpriority administrative expense claim on account of any diminution in the amount of the sale proceeds of the Property following the Closing Date. In fact, any superpriority administrative expense claim the Relator may have is effectively rendered moot by

---

[3] Given the discrepancy of the valuation dates, the Debtors chose the valuation that is closer in date to Relator's Valuation, *i.e.*, the Closing Date Valuation.

[4] The Debtors have tried to engage in negotiations with the Relator regarding valuation but the Relator has informed the Debtors that it does not wish to negotiate at this time.

the Additional Adequate Protection Replacement Lien provided in the Confirmation Order, which lien extends to all of the Debtors' Total Assets and is senior to all other liens on Total Asset, if any.[5] In confirming the Plan, the Court found the Plan feasible, *i.e.*, that the value of Total Assets will be sufficient to pay all secured, priority, and administrative expense claims (in accordance with the Administrative Expense Claims Consent Program) for the Plan to go effective. As the first in line to be paid on the Effective Date, Relator would need to show that the value of the Total Asset is or will be less than the amount of its asserted claim, which it has not and cannot do.[6]

      **B.**      **Relator is Adequately Protected and Prompt Payment is Not Required**

      18.      As noted above, with the Additional Adequate Protection Replacement Lien against Total Assets provided under the Confirmation Order, Relator is fully and adequately

---

[5] *See also* Dec. 3rd Confirmation Hr'g Tr. at 209:22 – 210:8:

> THE COURT: Well, but where's the evidence your collateral is diminished?
>
> MS. LIBERMAN: But we – we're also in an unusual situation . . . they're not making any provision to protect us . . . one way or the other it appears they're giving us a valueless slien.
>
> THE COURT: Well, I don't understand that. You have a lien on all of the assets.

The Debtors note that although at the time of confirmation hearing, the Relator did not have a lien on all of the Debtors' assets, they were provided such a lien pursuant to the Confirmation Order.

[6] *See also* Dec. 3rd Confirmation Hr'g Tr. at 211:12-22:

> THE COURT: It doesn't have to be administratively solvent. You're first. It just has to be solvent to the tune of $18 million.
>
> MS. LIBERMAN: But, Your Honor, that's why I'm concerned about $20 –
>
> …
>
> THE COURT: I know your[sic] concerned, but you need to show me why you're not adequately protected with all other assets. All other asset add up to . . . far more than your client is owed.

protected. The Debtors are continuing to pursue the various causes of actions to liquidate the assets of the Debtors' estates.

19. The crux of the issue for Relator continues to be the timing of payment, but the circumstances simply have not changed since the confirmation hearing to warrant current payment or a cash reserve. The Plan provides that Relator will be paid on its claim on the Effective Date to the extent Allowed. *See* Plan, §§ 2.5, 7.2.

20. The Debtors have offered Relator the opportunity to participate in the Administrative Consent Program, the only means by which Relator could be entitled to earlier payments (prior to the Effective Date and in exchange for agreeing to a 20% discount on recovery on its claims). The Debtors once again offer Relator this opportunity.

## Reservation of Rights

21. The Debtors hereby reserve the right to amend, modify, or supplement this Objection.

## Conclusion

22. For the reasons set forth herein, the Debtors respectfully request that the Third Lift Stay Motion be denied with prejudice.

Dated: March 18, 2020
    New York, New York

/s/ Garrett Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors
and Debtors in Possession*