**Hearing Date and Time: March 25, 2020 at 10:00 a.m. (Eastern)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | |
| | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION**, *et al.*, | : | |
| | : | **Case No. 18-23538 (RDD)** |
| | : | |
| **Debtors.**[1] | : | **(Jointly Administered)** |
| | : | |

---------------------------------------------------------------x

## OBJECTION OF DEBTORS TO
## MOTIONS FOR RELIEF FROM STAY

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), submit this objection in response to the motions for relief from the automatic stay (ECF Nos. 4209 and 5483) (the "**Motions**") filed by Julie Tomchak ("**Movant**"), and respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      A movant seeking relief from the automatic stay must show cause warranting such relief.  11 U.S.C. § 362(d)(1).  If the movant fails to satisfy this burden, then "the [C]ourt should deny relief without requiring any showing from the debtor that it is entitled to continued protection."  *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990).  Here, Movant has failed to satisfy her burden to establish cause to lift the automatic stay.

2.      Movant seeks to continue to negotiate or pursue an alleged claim against the Debtors' or their insurers (the "**Tomchak Dispute**").  The Motions are expressly premised, on information and belief, on the availability of third-party insurance coverage for liability for Movant's claims.  As the Debtors explained to Movant, however, no such coverage is available. If the automatic stay is lifted, the Debtors will be forced to incur all administrative costs associated with this nascent dispute.  Movant is one of many of the Debtors' prepetition general unsecured creditors.  It would be premature, inefficient, and prejudicial to all of the Debtors' administrative, priority, and other general unsecured creditors to expend estate resources on Movant's claim at this time.  The Motion should be denied.

WEIL:\97415577\5\73217.0004

## BACKGROUND

**A.** **The Tomchak Dispute and Motions to Lift Stay**

3.        Movant alleges that in September 2017, Movant brought her truck into a Sears Auto Center (the "**Auto Shop**") seeking to have her oil changed, and that in March 2018, Movant reported to the Debtors that the Auto Shop allegedly did not properly replace her oil, which caused engine damage.  Movant asserts that she spent nearly seven thousand dollars ($7,000) in expenses to have her truck towed, and inspected and to obtain an estimated cost of repairing her engine.

4.        On October 15, 2018 (the "**Petition Date**"), the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). On June 12, 2019, Movant filed her first motion which does not assert a legal basis for the relief requested.  (ECF No. 4209).  On October 23, 2019 Movant filed her second motion, with the court which, again, does not assert a legal basis for the relief requested.  (ECF No. 5483).

**B.** **The Debtors' Insurance Coverage**

5.        The Debtors maintained various insurance policies in its history over the prepetition period.  Among them were both a general liability and an umbrella policy that potentially could have applied in the Tomchak Dispute.  The general liability policy applicable to incidents that occurred between August 1, 2017 and August 1, 2018 had a $5 million aggregate limit.  Paid losses to date have exceeded the $5 million limit under that policy.  Accordingly, there is no available coverage under this policy with respect to the Tomchak Dispute; the insurer has no duty to defend the Debtors or pay for the Debtors' losses.  **Exhibit A** provides excerpts from the applicable general liability policy demonstrating that for the relevant coverage period, the policy includes a $5,000,000 deductible.  This amount represents a cost that would be borne by the

WEIL:\97415577\5\73217.0004

Debtors' estates before any available insurance proceeds could be provided to the movant in connection with the Tomchak Dispute.

6.        Coverage under the applicable umbrella policy would only be triggered if there was a judgment against the Debtors in excess of $5 million.  In the first instance, the Motions do not assert a claim in excess of $5 million.  Even if it had, the insurer would not be obligated to defend such claims.  The insurer would be responsible only for the amount of the judgment in excess of $5 million.

7.        Accordingly, the Debtors are without coverage to defend or satisfy claims arising out of the Tomchak Dispute.

## ARGUMENT

### A.    Governing Legal Standards

8.        The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 502 (1986).  The stay is "designed to give the debtor time to organize its affairs—which includes protection from having to defend claims brought against the estate." *Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986).  One of the primary forms of protection that the stay provides is preventing a debtor from being forced to litigate multiple claims in multiple forums.  *See In re Larkham*, 31 B.R. 273, 276 (Bankr. D. Vt. 1983).

9.        Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that upon a request of a party in interest and after notice and a hearing, the Court shall grant relief from the automatic stay "for cause."  11 U.S.C. § 362(d)(1).  "Cause" is not defined, and the decision whether to modify the stay is left to the discretion of the bankruptcy court.  *In re Marketxt Corp.*, 428 B.R. 579, 584 (S.D.N.Y. 2010).  In the Second Circuit, courts weigh twelve factors, known as the "*Sonnax* factors," in determining whether the automatic stay should be lifted.  *See Sonnax*

4

*Indus., Inc. v. Tri-Component prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990).[2]  Not all of the factors will be relevant in a given case, and the Court may disregard irrelevant factors.  *See In re Mazzeo*, 167 F.3d 139, 143 (2d Cir. 1999).  Additionally, courts need not assign equal weight to each factor, and have discretion is weighing the factors against one another.  *In re RCM Global Long Term Captial Appreciation Fund, Ltd.*, 200 B.R. 514, 526 (Bankr. S.D.N.Y. 1996).

10.    Movant bears the initial burden to show cause for lifting the automatic stay.  *Sonnax*, 907 F.2d at 1285.  "The burden on the movant seeking relief from the automatic stay to prosecute an unsecured claim is heavy," as "[t]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief."  *In re Mildred Deli Grocery, Inc.*, No. 18-10077 (MG), 2018 WL 1136017, at *3 (Bankr. S.D.N.Y. Feb. 28, 2018) (quoting *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992)).

11.    However, "[i]f the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection."  *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990); *In re Chittur*

---

[2] The *Sonnax* factors are:

(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with bankruptcy case; (3) whether the other proceeding involves the debtor as fiduciary; (4) whether a specialized tribunal with necessary expertise has been established to hear cause of action; (5) whether the debtor's insurer has assumed full defense responsibility; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Id.*

WEIL:\97415577\5\73217.0004

*& Assocs., P.C.,* No. 18-cv-4577 (AKH), 2018 U.S. Dist. LEXIS 213968, at *5–6 (S.D.N.Y. Dec.

18, 2018).

12.     Here, Movant has not satisfied the burden of establishing "cause" under

section 362(d)(1), and as a result, the Motions should be denied.

**B.     The Debtors Have Exhausted Any Insurance Coverage Applicable to Movant**

13.     Movant does not make any legal arguments, in either motion, or set forth a

basis for any type of relief, however, the pleadings should be viewed as motions for relief from

the automatic stay as the Movant seeks to pursue insurance proceeds and solely relies on "national

insurance laws." (ECF No. 5483 ¶ 8).  The Motions are expressly conditioned on the availability

of insurance coverage against liability for Movant's claims.  The Motions assert that the Debtors'

insurance should cover the cost of repair and that the damage done to the engine is directly related

to a failure to properly replace the oil.  The Movant makes a generalized assertion that "[t]here are

national insurance laws that require insurance claims to be handled in a time appropriate manner."

*Id..*  Because any potentially applicable insurance coverage has been exhausted, the relief sought

is unavailable.

14.     As discussed above, the Debtors have determined that applicable insurance

is exhausted or unavailable for Movant.  Although the Movant failed to cite any case law in the

Motions, when applying the *Sonnax* factors, there is little support for Movant's relief requested,

including—most obviously—the fifth factor, which considers whether the Debtors' insurer has

assumed full defense responsibility.  If the automatic stay were to be lifted with respect to the

Tomchak Dispute for which no insurance is available, the Debtors would be forced to directly

incur the costs of all legal fees and expenses in connection with negotiating with Movant and

defending the claims asserted in the Motions.  As additional administrative expense claims, those

6

costs are "unquestionably a factor to be given serious consideration" in the cause inquiry. *In re Terry*, 12 B.R. 578, 582 (Bankr. E.D. Wis. 1981).

15.    The Debtors can identify no third parties that will absorb the full costs of litigation or potential judgment(s) in Movants' favor, if any.  Therefore, the fifth—and most relevant—*Sonnax* factor weighs against granting the Motions.

## C.    Additional *Sonnax* Factors Weigh Against Lifting the Automatic Stay

16.    The first *Sonnax* factor—whether relief would result in a partial or complete resolution of the issues—does not weigh in favor of lifting the stay in these circumstances.  As the Second Circuit has previously held, lifting the stay merely for this purpose is not necessarily a guarantee of finality or resolution.  *See, e.g.*, *E. Refractories Co. v. Forty Eight Insulations*, 157 F.3d 169, 171 (2d Cir. 1998) (creditor filing multiple lawsuits against debtors spent the "better part of three years in a fruitless effort" to obtain agreement or judgment for coverage from asserted third party).  Furthermore, courts in this District have ruled that satisfaction of the first *Sonnax* factor is insufficient when complete resolution of a matter would be at a substantial cost, or may take a long time.  *See In re Chittur & Assocs., P.C.*, No. 18-cv-4577 (AKH), 2018 U.S. Dist. LEXIS 213968, at *7 (S.D.N.Y. Dec. 18, 2018) (affirming a bankruptcy court decision denying relief from the stay, and finding that while modification of the automatic stay may well resolve the matter, it would do so at a substantial cost, and would be subject to a bankruptcy plan of distribution); *In re SunEdison, Inc.*, 557 B.R. 303, 309 (Bankr. S.D.N.Y. 2016) (denying relief from the stay, and finding that "[t]he one factor weighing in favor of granting the *Motion* is that it will completely resolve the issues between the Debtors and Vivint (Factor # 1).  But even then, final resolution following the exhaustion of the appellate process may be years away, and occur long after the Debtors have confirmed a plan.").

7

17.    Here, the Debtors have a confirmed plan (ECF No. 5370) which provides for a pro rata distribution to general unsecured claimants. Movant had originally filed a proof of claim asserting an administrative priority claim pursuant to section 503(b)(9), that claim was ultimately reclassified as a general unsecured claim. (ECF No. 5031). Therefore, assuming that the first *Sonnax* factor was satisfied, and finality of the issue could be achieved and a judgment was entered in the Movant's favor, the Movant would still be treated according to the confirmed plan and receive a distribution pursuant to her reclassified proof of claim, which will be paid out with the other general unsecured claimants, who are last in the priority scheme. Finality could also be achieved more efficiently through the typical bankruptcy claims resolution process.

18.    The second *Sonnax* factor—whether there is a lack of connection or interference with the bankruptcy estate—does not weigh in favor of lifting the stay. Where there is a lack of insurance, or even a dispute over the availability of insurance, the Debtors would inevitably be involved in such discussions, defense of actions, or, at the very least, monitoring of the cases, interfering with the administration of their estates. The automatic stay is meant to shield debtors from a multitude of litigation in a variety of forums.

19.    The fourth *Sonnax* factor, whether a specialized tribunal with the necessary expertise has been established to hear the cause of action, does not support lifting the stay. The Motions here do not present specialized issues that require a specialized tribunal. Moreover, Movant had not commenced any prepetition litigation against the Debtors or their insurers. Accordingly, the fourth *Sonnax* factor does not support granting relief in these circumstances.

20.    The seventh *Sonnax* factor, which considers whether litigation in another forum would prejudice the interests of other creditors, similarly weighs against granting the Motions. Lifting the stay where there is no insurance coverage would result in the Debtors

8

incurring unnecessary administrative costs to potentially have to litigate the Tomchak Dispute, should the automatic stay be lifted and Movant commence an action. Additionally, the estate would be incurring unnecessary expenses before recoveries to general unsecured creditors become available to them. Should the Motions be granted, given the scale of the Debtors' prepetition business, an increase in filings of motions to lift the automatic stay is likely to occur. Simply negotiating and responding to such motions by itself creates administrative costs that consume estate assets that would otherwise be available for unsecured creditors. Absent "extraordinary circumstances" Movant should be treated in the same manner and on the same timeline as other unsecured creditors. *See Leibowitz*, 147 B.R. at 345.

21.    The tenth *Sonnax* factor, whether relief would serve the interests of judicial economy and expeditious and economical resolution of litigation, also does not weigh in favor of lifting the automatic stay. The Debtors are party to numerous insurance disputes. If the Court were to lift the stay with respect to the Tomchak Dispute, the Debtors and the Court would continue to be inundated with similar requests for stay relief. Indeed, dozens of motions lifting the automatic stay have already been filed in these chapter 11 cases and, in addition, the Debtors are assessing multiple inquiries being submitted to the Debtors under the Stay Procedures.

22.    The twelfth *Sonnax* factor, which weighs the impact of the stay on the parties and the balance of the harms, does not support lifting the automatic stay. Movant might argue, for example, that the claims are small compared to the Debtors' overall obligations. As explained above, however, the Debtors are party to numerous insurance disputes. Indeed, this response addresses only a handful of the stay relief motions filed against the Debtors in these cases, demonstrating only a small portion of the volume of actions pending. Taken together, such disputes constitute a meaningful unsecured creditor constituency that the Debtors have an

WEIL:\97415577\5\73217.0004

obligation to maximize value for as a whole.  Although general unsecured recoveries are yet to be

determined, the administrative costs expended on defending prepetition actions have a

disproportionate negative impact on any constituency receiving less than full recovery.  At this

time, lifting the automatic stay would not expedite any potential recovery on account of these

unsecured claims nor would it help to identify recovery amounts.

### Conclusion

23.    For the foregoing reasons, Movant has failed to satisfy the burden to

establish cause to lift the automatic stay.  Accordingly, the Motions should be denied.

WHEREFORE, for all of the foregoing reasons, the Debtors respectfully request

that the Court deny the Motions.

Dated: March 18, 2020
       New York, New York

/s/  Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors
and Debtors in Possession*

10

**Exhibit A**

# CHUBB®

ACE American Insurance Company
436 Walnut Street
Philadelphia PA 19106

# Commercial General Liability
# Declarations

| | |
|---|---|
| **POLICY NUMBER:** HDO G27868988 | **EXPIRING POLICY NUMBER:** HDO G27853717 |
| | **RENEWAL** |

## ITEM ONE

**Named Insured:** Sears Holdings Corporation

**Address:** 3333 Beverly Road, Risk Management Dept, E-3262B
Hoffman Estates IL 60179

**Producer Number:** 174016

**Producer Name:** AON RISK SERVICES CENTRAL INC

**Producer Address:** 200 EAST RANDOLPH ST 13TH FL
CHICAGO IL 60601

**Form of Business:** [X] Corporation   [ ] Limited Liability Company
[ ] Other _

**Named Insured's business:** Retail Trade

**Policy Period:** Policy covers from 08/01/2017 to 08/01/2018 12:01 am standard time at the named insured's address stated above.

**Audit Period: Annual, unless otherwise stated:**   [ ] Semi-Annual   [ ] Quarterly   [ ] _

**Total Advance Premium (including surcharges):** $60,895.00

**Refer to Surcharge Endorsement for surcharge amounts and rates. (Does Not Apply in Puerto Rico)**

LD-25211 (10/08)          Copyright, Insurance Services Office, Inc. 2000          Page 1 of 8

# CHUBB®

**Commercial General Liability Declarations**

ACE American Insurance Company
436 Walnut Street
Philadelphia PA 19106

**POLICY NUMBER:** HDO G27868988

| COVERAGES AND LIMITS OF INSURANCE | | | | |
|---|---|---|---|---|
| **EACH OCCURRENCE LIMIT** | $ | 5,000,000 | | |
| **DAMAGE TO PREMISES RENTED TO YOU LIMIT** | $ | 5,000,000 | | Any one premises |
| **MEDICAL EXPENSE LIMIT** | $ | Excluded | | Any one person |
| **PERSONAL & ADVERTISING INJURY LIMIT** | $ | 5,000,000 | | Any one person or organization |
| **GENERAL AGGREGATE LIMIT** | | | $ | 5,000,000 |
| **PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT** | | | $ | 5,000,000 |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |

### RETROACTIVE DATE (CLAIMS MADE POLICIES ONLY)

THIS INSURANCE DOES NOT APPLY TO "BODILY INJURY", "PROPERTY DAMAGE" OR "PERSONAL AND ADVERTISING INJURY" WHICH OCCURS BEFORE THE RETROACTIVE DATE, IF ANY, SHOWN BELOW.
RETROACTIVE DATE: _____
(ENTER DATE OR "NONE" IF NO RETROACTIVE DATE APPLIES)

### SCHEDULE OF LOCATIONS

| LOCATION NUMBER | ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY |
|---|---|
| | |

| LOCATION NUMBER | COVERAGE | CLASS CODE/ DESCRIPTION |
|---|---|---|
| All | All | 52050/Retail Trade |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**REIMBURSEMENT OF DEDUCTIBLE ENDORSEMENT INDEMNITY - ONLY REIMBURSEMENT**

| Named Insured Sears Holdings Corporation | | | Endorsement Number 67 |
|---|---|---|---|
| Policy Symbol HDO | Policy Number G27868988 | Policy Period 08/01/2017 TO 08/01/2018 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**I)  DEDUCTIBLE AMOUNT**

1) Indemnity:  $5,000,000

2) The Deductible Amount applies separately to:

(a) The sum of:

(i)  damages per "occurrence" under Coverage A; and

(ii)  medical expenses per accident under Coverage C.

(b) Damages sustained by any one person or organization under Coverage B.

**II)  ADDITIONAL PROVISIONS**

1) "We" will pay all sums that "we" become legally obligated to pay up to the Limits of Insurance under this policy.

2) "You" must reimburse us up to the Deductible Amount for any amounts we have paid under this policy.

3) The Deductible Amount will apply as shown in Section I of this endorsement regardless of the number of claimants, Insureds, claims made or "suits" brought, or persons or organizations making claims or bringing "suits".

4) If "you" fail to reimburse "us" for any amount due under this endorsement, "you" will be in default of "your" obligations to "us", and "we" may take any steps "we" deem necessary to enforce our rights against "you", including but not limited to canceling this policy, if permitted by law.

5) If "we" recover any payment "we" make under this policy from anyone liable for damages the amount "we" recover will first be applied to any payments "we" made in excess of the Deductible Amount and to "our" expenses in obtaining the recovery. The remainder of the recovery, if any, will reduce the amount that is reimbursable by "you".

**III) NO OTHER CHANGES**

All other terms of this policy, including those with respect to:

(a) Our right to defend any "insured" against a "suit" asking for damages to which this insurance applies, and

(b) Limits of Insurance, and

MS16881 (08/14)                              ©Chubb. 2016. All rights reserved.                              Page 1 of 2

**REIMBURSEMENT OF DEDUCTIBLE ENDORSEMENT INDEMNITY - ONLY REIMBURSEMENT**

(c) Your duties in the event of an "occurrence," claim, "suit" or loss remain unchanged.

©Chubb. 2016. All rights reserved.