

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 18-23538-rdd

4    Adv. Case No. 19-08700-rdd

5    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7

8    SEARS HOLDINGS CORPORATION,

9

10            Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   VIR VENTURES, INC., et al.,

13                  Plaintiffs,

14          v.

15   SEARS HOLDINGS CORPORATION,

16                  Defendants.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

18

19

20

21

22

23

24

25

Page 2

1                    United States Bankruptcy Court

2                    300 Quarropas Street, Room 248

3                    White Plains, NY 10601

4

5                    March 25, 2020

6                    10:11 AM

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21   B E F O R E :

22   HON ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   UNKNOWN

1   HEARING re Notice of Agenda of Matters Scheduled for

2   Telephonic Hearing on March 25, 2020 at 10:00 a.m.

3

4   Adversary proceeding: 19-08700-rdd Vir Ventures, Inc. et al

5   v. Sears Holdings Corporation

6   Motion to Dismiss Adversary Proceeding / Debtors (I) Motion

7   to Dismiss the Adversary Complaint and (II) Reply to

8   Plaintiffs Opposition to Debtors Second Omnibus Claims

9   Objection (related document(s)l)

10

11   Adversary proceeding: 19-08700-rdd Vir Ventures, Inc. et al

12   v. Sears Holdings Corporation

13   Declaration of Jennifer Brooks Crozier, Esq. in Support of

14   Motion of Sears Holdings Corporation to Dismiss Adversary

15   Proceeding [ECF No. 13]

16

17   Adversary proceeding: 19-08700-rdd Vir Ventures, Inc. et al

18   v. Sears Holdings Corporation

19   Motion to Adjourn Adversary Proceeding or, in the

20   Alternative, for an Extension of Time to Answer or Otherwise

21   Respond to Plaintiffs' Adversary Complaint [ECF No. 5]

22

23

24

25

Page 4

1    Adversary proceeding: 19-08700-rdd Vir Ventures, Inc. et al

2    v. Sears Holdings Corporation

3    Joint Response of VIR Ventures, Inc. and AMI Ventures, Inc.

4    in Opposition to Debtors Motion to Adjourn Adversary

5    Proceeding, or in the Alternative, for an Extension of

6    Time to Answer or Otherwise Response to Plaintiffs Adversary

7    Complaint [ECF No. 6]

8

9    PLAINTIFFS RESPONSE IN OPPOSITION TO DEBTORS MOTION TO

10   DISMISS THE ADVERSARY COMPLAINT (ECF 7457)

11

12   Debtors' Sixth Omnibus Objection to Proofs of Claim

13   (Satisfied Claims) [ECF No. 5075]

14

15   Motion for Extension of Time to File Memorandum of Law in

16   Compliance with Court Order [ECF No. 7448]

17

18   Notice of Sale: Notice of De Minimis Asset Sale for

19   Membership Interest in Clayton Street Associates, LLC

20   (related document(s) 856) filed by Jacqueline Marcus on

21   behalf of Sears Holdings Corporation (ECF 7335)

22

23   Objection of Broe Real Estate Group to the Debtors Proposed

24   De Minimis Asset Sale of Their Membership Interest in

25   Clayton Street Associates, LLC (related document(s) 7335)

Page 5

1    Motion Addendum of Julie Independence Tomchak for Original

2    Motion (related to ECF #4209) (ECF 5483)

3

4    Debtors' Objection (ECF 7475)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2    WEIL, GOTSHAL & MANGES LLP

3          Attorneys for the Debtor

4          767 Fifth Avenue

5          New York, NY 10153

6

7    BY:  JENNIFER CROZIER

8          GARRETT FAIL

9          JACQUELINE MARCUS

10          PHILIP DIDONATO

11          JULIE TOMCHAK

12

13    HOGAN LOVELLS US LLP

14          Attorneys for Interested Party, Broe Real Estate Group

15          875 Third Avenue

16          New York, NY 10022

17

18    BY:  JOHN BECK

19

20    BERNSTEIN-BURKLEY, P.C.

21          Attorneys for the Plaintiffs

22          707 Grant Street, Suite 2200 Gulf Tower

23          Pittsburgh, PA 15219

24

25    BY:  SALENE KRAEMER

Page 7

1   ALSO PRESENT TELEPHONICALLY:

2

3   CHRIS STAUBLE

4   ARLENE R. ALVES

5   LAUREN BAIO

6   SARA BRAUNER

7   ALIX BROZMAN

8   BENJAMIN BUTTERFIELD

9   PATRICK J. HOLOHAN

10   HOO RI KIM

11   PAUL LABOV

12   CATHERINE LOTIEMPIO

13   MARILYN MACRON

14   HOWARD P. MAGALIFF

15   SHIRIN MAHKAMOVA

16   JENNIFER MARINES

17   ERIKA MORABITO

18   NERVILLE N. REID

19   LEE J. ROHN

20   SUNNY SINGH

21   ALEXANDER R. TIKIN

22   DAVID H. WANDER

23   MAGDALENA ZALEWSKI

24

25

Page 8

```
 1                      P R O C E E D I N G S

 2              THE COURT:  Okay, good morning.  This is Judge

 3      Drain in In re Sears Holdings Corp., et al.  There's no one

 4      in the courtroom except the person who's operating the

 5      recording for transcription purposes.  I know I have a lot

 6      of people on the phone.  I'll ask you to identify yourself

 7      only when you're speaking and then you can not only state

 8      who you are, but who you're representing.

 9              So I have the amended agenda for today and I'm

10      happy to go down in the order of that agenda unless someone

11      wants to proceed in another way.

12              MS. CROZIER:  Good morning, Your Honor.  It's

13      Jennifer Crozier of Weil, Gotshal, and Manges for the

14      Debtors.  The first item on the amended agenda, as you see,

15      is the Debtors' motion (audio cuts out) plaintiffs VIR

16      Ventures and AMI Ventures, the remaining counts of their

17      adversary complaints and given the circumstances, Your

18      Honor, I intend to be brief (audio cuts out) answer any

19      questions concerning the Debtors (audio cuts out).

20              THE COURT:  Okay, well, this motion may take a

21      while, so notwithstanding what I just said, it's probably

22      better to go to the uncontested matters and the rest of the

23      agenda first and then we can come back to the VIR matter.

24              MS. CROZIER:  Sure, that's perfectly fine with the

25      Debtors, Your Honor, and so I will hand it over to
```

Page 9

1    (indiscernible) to address Item No. 2.

2              THE COURT:  Okay.

3              MR. FAIL:  Thank you.  Thank you, Your Honor.

4    Garrett Fail, Weil, Gotshal, and Manges for the Debtors.

5    The first uncontested item is No. 2 on the agenda.  It's the

6    Debtors' sixth omnibus objection to claims.  The Debtors

7    objected to a number of claims on the basis that the claims

8    had been satisfied in full.  The Debtors carried a number of

9    the claims from time to time as we continued to work with

10   the creditors that were subject to it.  Today, we are going

11   forward on an uncontested basis with respect to three claims

12   filed by Salesforce.com.

13             We've received confirmation from Salesforce.com

14   they have no objection or no opposition to the objection,

15   and so we're just proceeding to submit a supplemental order

16   with respect to these claims.

17             THE COURT:  Okay.  That's fine, based on that

18   representation and there being no objection by Salesforce.

19   I will grant the objection as to those three claims.  You

20   can email that order --

21             MR. FAIL:  Thank you very much, Your Honor.  Thank

22   you very much, Your Honor, and on behalf of the Debtors,

23   thank you again for accommodating our -- the hearing agenda

24   on the calendar under the circumstances.

25             THE COURT:  That's fine.  Okay.

Page 10

1           MR. FAIL:  The next item is the motion of Santa

2    Rose Mall and I believe counsel should be the line.

3           THE COURT:  Do I have counsel for Santa Rosa on

4    the phone?  All right.  Well, I actually thought I had

5    granted this in an email response to counsel.  The Debtors

6    have no objection to this request for an extension of time,

7    correct?

8           MS. MARCUS:  Your Honor --

9           MR. FAIL:  That's correct, Your Honor.  Garrett

10   Fail.  Go ahead.

11          MS. MARCUS:  That's fine.

12          THE COURT:  Okay, so I will grant this request.

13   I( actually don't think I need an order to do this, but if

14   counsel for Santa Rosa thinks I do, then they can email it

15   to chambers, but I grant the request which is on consent to

16   extend the deadline to submit its memorandum of law to the

17   27th of this month from the 13th.

18          MS. MARCUS:  Your Honor, Jacqueline Marcus, Weil,

19   Gotshal, and Manges, on behalf of the Debtors.  The next

20   item, No. 4 on the uncontested list is the notice of de

21   minimis asset sale for membership interest in Clayton Street

22   Associates, LLC.  As indicated on the objection -- on the

23   agenda, excuse me, Your Honor, Broe Real Estate Group filed

24   an objection to the Debtors' proposed transaction that was

25   at ECF No. 4730, and by way of background, on February 24th,

1    the Debtors filed the notice of de minimis asset sale.  At

2    the time, the Debtors proposed to sell their membership

3    interest in Clayton Street Associates, LLC, to NP, Inc.,

4    Nichols, for $37,500 plus a 20 percent profit participation.

5            Clayton's plan was to exercise a right of first

6    refusal to acquire a valuable parking lot in Denver,

7    Colorado.  After the sale notice was filed, the Debtors were

8    contacted by Broe Real Estate Group which indicated that it

9    was prepared to bid substantially more for the membership

10   interest.  Broe filed its objection to the proposed

11   transaction along with a revised form of membership purchase

12   agreement that it was prepared to enter into.

13           The Broe officer provided a cash purchase price of

14   $1,125,000 and Broe requested, as part of its offer that the

15   Debtors reimburse Broe's expenses of not less than $50,000

16   if it were not the successful bidder for the membership

17   interest.  Under the operating agreement for Clayton Street

18   associates, the other member of the company has the right to

19   match any proposed offer for the sale of a member's

20   interest.  Accordingly, the Debtors provided Nichols with

21   notice of the Broe offer and requested that they either

22   match the offer or consent to the transfer of the membership

23   interest to Broe.

24           Nichols elected to match Broe's offer and the

25   Debtors and Nichols have entered into a revised membership

Page 12

1    interest purchase agreement that provides for a purchase

2    price of $1,125,000 conditioned upon the closing of the sale

3    of the parking lot to Clayton.  The Debtors subsequently

4    requested that Broe withdraw its objection and Broe

5    requested that the Debtors agree to stay the expense

6    reimbursement.

7              After discussions with attorneys for the Creditors

8    Committee, and in view of substantial increase in the

9    purchase price precipitated by the Broe offer, the Debtors

10   have agreed, subject to the approval of the Court, to grant

11   Broe an allowed administrative claim in the amount of

12   $50,000 which would be treated as a tier two, non-opt-out

13   claim under the administrative expense claims program.

14             The terms of the agreement with Broe are set forth

15   in the stipulation agreement that was filed with the Court

16   at ECF No. 7505 and a copy of the stipulation was provided

17   to chambers yesterday.  As indicated, the key terms of the

18   stipulations are, upon Court approval, Broe's objection

19   shall be deemed withdrawn and the Debtors will be authorized

20   to complete the sale to Nichols in accordance with the

21   revised membership purchase agreement and Broe shall have an

22   allowed non-opt-out settled administrative claim pursuant to

23   the administrative expense claims consent program in the

24   amount of $50,000 which shall be subject to the 80 percent

25   recovery (indiscernible).

Page 13

1          Additionally, the Debtors and Broe release each

2     other from any claims related in any way to the membership

3     interest and sale notice or the objection.  Your Honor, from

4     the Debtors' point of view, the sequence of events

5     represents an excellent outcome, and accordingly, the

6     Debtors request that the Court approve the stipulation.  I'm

7     happy to answer any questions that you might have.

8          THE COURT:  Okay.  Is anyone from Broe Real Estate

9     on the phone?  I don't think so.

10         MR. BECK:  Yes, Your Honor.

11         THE COURT:  Oh, you are.  Okay.

12         MR. BECK:  Yes, Your Honor.  This is beck -- John

13    Beck of Hogan Lovells.

14         THE COURT:  Okay.  Is there any agreement or

15    understanding between the actual buyer here or proposed

16    actual buyer and Broe with respect to the subsequent

17    transfer of the property?

18         MR. BECK:  No, Your Honor, there --

19         THE COURT:  Okay.  All right.  I will grant the

20    motion as revised and also enter -- approve the Debtors'

21    entry into the stipulation with Broe.  That is on the

22    condition, though, that there be no agreement or

23    understanding as between Broe or anyone acting on its

24    behalf, and the actual buyer here that -- with respect to

25    any subsequent transfer of the property from the buyer from

 1    the Debtor to Broe or anyone connecting with it.

 2           So --

 3           MR. BECK:  Your Honor --

 4           MS. MARCUS:  -- reflect that.

 5           THE COURT:  Sorry?

 6           MS. MARCUS:  This is Jacqueline Marcus again.  I

 7    was just wondering how you would want us to reflect that.

 8           THE COURT:  I can just add it to the so-ordered

 9    line.

10           MR. BECK:  And, Your Honor, I just wanted to

11    clarify (indiscernible).  There is no agreement

12    (indiscernible) to purchase (indiscernible) sort of --

13           THE COURT:  Sorry, you're --

14           MR. BECK:  -- or agreement.

15           THE COURT:  You're cutting in and out.  If you

16    could just repeat that, please.

17           MR. BECK:  Sure, Your Honor.  (indiscernible) that

18    there's no current agreement between Broe (indiscernible)

19    entity right now.  (indiscernible) still very

20    (indiscernible) in purchasing the parking lot in the future

21    and will continue to try to do so, but that is an arm's

22    length transaction and there is no sort of (indiscernible).

23           THE COURT:  Right.  And that's all I -- that's all

24    I'm focusing on.  If down the road, Broe purchases the

25    parking lot, that's fine.  I just want to make sure that

1    there's no agreement today that -- or understanding that

2    that purchase is going to happen, because obviously that

3    would be collusive with respect to the bidding.  But

4    obviously, if they get back together again or they get

5    together again six months from now or three months from now

6    or two months from now and negotiate a new agreement, that's

7    fine.

8              MR. BECK:  (indiscernible).

9              THE COURT:  Okay.  So I'll just -- Ms. Marcus, you

10   sent me the -- you or someone at Weil sent me the proposed

11   stip yesterday.  I'll just add that condition to the so-

12   ordered line.

13             MS. MARCUS:  Okay, perfect.  Thank you, Your

14   Honor.

15             THE COURT:  And I don't know, did you also send

16   the order approving the sale?

17             MS. MARCUS:  So we don't believe we need an order

18   approving the sale --

19             THE COURT:  Okay.

20             MS. MARCUS:  -- asset procedures.  We're

21   authorized to proceed if any objection is withdrawn so the

22   stipulation is withdrawing the objection and therefore, we

23   don't think we need a separate order approving the sale.

24             THE COURT:  All right.  That's fine.  Very well.

25   So, and again, to the extent that's an issue, I'm approving

Page 16

1    the sale.

2            MS. MARCUS:  Thank you, Your Honor.

3            THE COURT:  Okay.

4            MR. DIDONATO:  Good morning, Your Honor.  This is

5    Phil DiDonato from Weil, Gotshal, and Manges on behalf of

6    the Debtors.  The next item on the agenda, No. 5, are the

7    motions of Julie Tomchak and there are actually two motions

8    going forward here today, the original filed at ECF No. 4209

9    and the addendum that was filed at ECF No. 5483.  Our

10   understanding is that both of these motions related to the

11   same underlying claim.  I'll note that these were not filed

12   formally as motions to release the automatic stay, but we

13   treated them as such in our response because they relate to

14   a prepetition claim against the Debtors.

15           Our objection is filed at ECF No. 7475 and today

16   we're asking that the Court reject these motions, that these

17   motions be denied for the reasons stated in our objection,

18   namely that there's no insurance available to this claim.

19           THE COURT:  Okay.  And when you say there's no

20   insurance available, you mean literally the policy limits

21   for the first tier coverage have not been -- they've been

22   exceeded and the coverage has been exhausted at this point,

23   correct?

24           MR. DIDONATO:   That's correct.

25           THE COURT:  And then as far as any excess coverage

Page 17

1    is concerned, the excess coverage is only for claims over

2    and above $5 million and this claim, as asserted, is in the

3    thousands of dollars range as opposed to over $5 million?

4            MR. DIDONATO:  Correct.

5            THE COURT:  Okay.  Is Ms. Tomchak on the phone?

6    She had sought to have this --

7            MS. TOMCHAK:  Yes.

8            THE COURT:  -- be a telephonic hearing.

9            MS. TOMCHAK:  Yes, I am here.

10           THE COURT:  Okay.  Good morning.  I had one

11   question for the Debtors, which is, as I read Ms. Tomchak's

12   motion, she really wants to go against the insurer.  The

13   Debtors have represented, and I accept, that there is no

14   insurance coverage that's available.  She also says,

15   however, that the insurer prepetition wrongfully denied her

16   claim.  Do the Debtors object to lifting the stay solely as

17   to Ms. Tomchak proceeding against the insurer for wrongful

18   denial?

19           MR. DIDONATO:  So, Your Honor, I don't think we

20   have any issue with that.  The real issue here was just

21   (indiscernible) the automatic stay to proceed against the

22   Debtors here.

23           THE COURT:  Right.  And as I read it --

24           MR. DIDONATO:  I don't think --

25           THE COURT:  -- Ms. Tomchak really doesn't want to

Page 18

1    proceed against the Debtors, per se, because her real beef

2    is that the insurer turned down her request to pay out,

3    prepetition.

4             MS. TOMCHAK:  The issue was -- yes.  There was a

5    third party which was (indiscernible) they are actually not

6    the insurer.  They are supposed to be a third party that

7    passes it along to the insurance company and apparently a

8    week before Sears filed for bankruptcy, they chose to throw

9    in everything, even though I had been waiting a year to

10   process this already, they decided to throw it into the

11   bankruptcy so that they would not have to pay out.

12            THE COURT:  Right, but that third party would be

13   the agent for the insurer.  That's the adjustor for the

14   insurer.

15            MS. TOMCHAK:  So, is --

16            MR. FAIL:  Your Honor, I'm not sure if that's

17   correct.

18            THE COURT:  Okay.

19            MR. FAIL:  Your Honor, this is Garrett Fai.  I'm

20   not sure that that's correct, that they're the agent for the

21   insurer as opposed to agents for the Debtors.  I'm just --

22   I'm not sure that that's right.  I don't know the facts, but

23   I don't know that it's correct that they are an agent for

24   anyone other than the Debtor.  I'm also not sure that

25   there's a direct claim against (indiscernible).

Page 19

1          THE COURT:  Well, there may not be --

2          MR. FAIL: -- for anything --

3          THE COURT:  There may not be.  There may not be a

4    direct claim against the insurer, but as long as that claim

5    doesn't come back to bite the Debtor, I don't see a basis

6    for the Debtor being hurt by lifting the stay.  Now, the

7    third party we're referring to is Sedgwick Claims Management

8    Services as third party administrator.

9          MS. TOMCHAK:  Correct.

10         THE COURT:  So it is possible that they -- I mean,

11   it says, their letter says, "Sedgwick Claims Management

12   Services as third party administrator manages claims for

13   Sears Roebuck and Company on behalf of Ace American

14   Insurance Company."  So my thought would be that the stay

15   would be lifted solely to the extent that Ms. Tomchak wants

16   to pursue a claim against Ace American Insurance Company

17   and/or Sedgwick solely in its capacity, if any, as agent for

18   Ace for wrongful denial of coverage, there being no

19   representation that there is such a direct claim.

20         And there may well not be, Ms. Tomchak.  I'm not

21   saying that there is, either as a matter of law that there's

22   a direct right for denial of coverage that you would have or

23   as matter of the facts, that they wrongfully denied the

24   coverage.  So you might be pursuing this for no reason, but

25   the point would be that there would be no claim over against

Page 20

1    the Debtor and the litigation would have to stop if it

2    appeared that either Ace or Sedgwick would have a claim over

3    against the Debtor.

4             MS. TOMCHAK:  At this point, I was told by

5    Sedgwick that I had to go against Sears.  That's what I was

6    instructed.

7             THE COURT:  Well, if you have a claim against

8    Sears, that's correct.  But if you have an independent claim

9    against the insurer or Sedgwick for wrongfully denying

10   coverage, directly, a direct claim that you would have that

11   didn't affect Sears, then you could go against them;

12   although, again, I don't know whether that's true as a

13   matter of law.

14            MS. TOMCHAK:  I am not exactly sure on that.  All

15   I know is when I have actually called, like, my insurance

16   company or someone who deals with insurance and people going

17   through bankruptcy, I was told that they had to handle every

18   insurance claim within a timely manner and this has gone on

19   longer than, what, two years, three years.  And so it was

20   not handled in a time-appropriate manner which is the

21   national law.  It doesn't apply to this one state.  It's a

22   nationwide --

23            THE COURT:  Well --

24            MS. TOMCHAK:  -- that was my frustration.

25            THE COURT:  Look, I don't know whether that is

Page 21

1    true as a matter of law or fact, but what I'm saying is the

2    following, and I appreciate it's a fairly arcane aspect of

3    bankruptcy law.  First, this is something basic to

4    bankruptcy law.  The automatic stay is in the statute.  It

5    comes into effect when a company files bankruptcy.  It means

6    that unless you get relief from the automatic stay on a

7    motion filed with the Court, you can't proceed against the

8    Debtor, in this case, Sears.

9            And it's true that if your claim to the insurance

10   is based on a claim against Sears, you can't proceed against

11   the insurance until you get relief from the automatic stay

12   in the bankruptcy case.

13           MS. TOMCHAK:  Okay.

14           THE COURT:  It is fairly common where --

15           MS. TOMCHAK:  Okay.

16           THE COURT:  Let me just -- because there's a

17   second element in this.  It's fairly common in bankruptcy

18   case when someone moves for relief from the stay and says, I

19   only want to go against the insurance and the Court

20   determines that that will adversely affect the Debtor, the

21   Court will lift the automatic stay so that a party can go

22   against the insurance only, and there are a lot of

23   stipulations and order in this case that, where there is

24   insurance, the stay has been lifted.

25           But here, the Debtors say there is no insurance.

Page 22

1    It's all been used up.  So that avenue is closed to you

2    because it would be a waste of everyone's time, including,

3    importantly, yours to agree to lift the stay to go against

4    insurance when there's no insurance.  The --

5            MS. TOMCHAK:  Yeah.

6            THE COURT:  The different thing about your motion

7    is that you're basically saying they should've honored my

8    claim, the insurer should have, prebankruptcy and they

9    didn't.  So I'm saying, I would not -- I would enter an

10   order lifting the stay to the extent you have a cause of

11   action, a direct cause of action, against the insurer or its

12   agent for wrongful denial of coverage.  I don't know whether

13   you have such a direct cause of action, but it doesn't

14   affect -- it wouldn't affect the Debtor.

15           So I would lift the automatic stay to permit you,

16   if you wanted to, to go against the insurer and/or its

17   agents if you can show that they wrongfully denied the

18   coverage and it's a direct claim against the insurer.  The

19   lawyer then -- you'd have to hire a lawyer to go do that,

20   and I don't know whether that would win or not or whether

21   the lawyer would tell you you're wasting your money in

22   paying me, but I'm prepared to lift the stay to let that

23   happen.

24           MS. TOMCHAK:  Okay.  (indiscernible).

25           THE COURT:  Okay, so I'm going to ask the Debtors

Page 23

1   to prepare that order which, again, doesn't lift the stay to

2   let you go to sue the Debtor either directly or indirectly.

3   It just permits you, if you have a direct action against the

4   insurer for wrongful denial of coverage and/or the insurer's

5   agent, to go and do that.

6           MS. TOMCHAK:  Okay.

7           THE COURT:  But you have to be really careful not

8   to name the Debtor as someone that you're asserting a claim

9   against, that you're pursuing a claim against the Debtor,

10  because that would violate the stay and subject you to

11  sanctions.  So you have to be really clear.  The order will

12  be clear.  When you go and hire a lawyer, if you decide to

13  do that, you need to show that person the order so that they

14  will know not to get you in trouble by drafting a complaint

15  that will seek relief from the Debtor, either directly or

16  indirectly.

17          MS. TOMCHAK:  I see.  Okay.

18          THE COURT:  Okay?  All right.  So that order will

19  be entered fairly soon on the docket.  You should look for

20  it and then you can print it out and give it to a lawyer if

21  you want to hire a lawyer to pursue it.

22          MS. TOMCHAK:  Okay.  Thank you.

23          THE COURT:  Okay, very well.  Okay, before we get

24  to the first matter on the agenda, there are a number of

25  adjourned matters on the agenda as well as some withdrawn

Page 24

1   matters.  I don't know if the Debtors wish to make any sort

2   of report in connection with any of the adjourned matters.

3   I'm not telling you, if you're not -- if that's not

4   something that you had prepared to do.  But if you had

5   prepared to give a status update, generally or any of these

6   particular matters, you should feel free to do so now.

7           MR. FAIL:  Thank you, Your Honor.  Garrett Fail,

8   Weil, Gotshal, and Manges.  There is no update prepared.

9   This was a notice only, but appreciate the opportunity.

10           THE COURT:  Okay.  So why don't we return, then,

11   to the first matter on the agenda.  I don't think there's

12   anything else left other than that, correct, which is VIR

13   Ventures, Inc.

14           MS. KRAEMER:  -- Your Honor.

15           THE COURT:  -- versus Sears?  I had been passed a

16   note that Ms. Kraemer, the plaintiff's counsel, was logging

17   on late to the phone.  Are you on now, ma'am?

18           MS. KRAEMER:  Your Honor, I'm here.

19           THE COURT:  Okay, good.  All right.  Well, you

20   didn't miss anything because we put this at the end, given

21   that it would take the longest.  So what is on the calendar

22   in this adversary proceeding, VIR Ventures, Inc. and AMI

23   Ventures, Inc. v. Sears Holdings Corp. et al., is the

24   Debtors' motion to dismiss what I believe are the remaining

25   causes of action in the complaint and you should assume that

Page 25

1    I've read the pleadings on this and gone through it.

2              I do want to just confirm, we had a hearing a

3    couple of weeks ago on a related VIR Ventures/AMI Ventures

4    matter in which I stated that the other causes of action in

5    the complaint, that is other than the ones that are subject

6    to this motion, should be treated as dismissed because

7    they're in derogation of Bankruptcy Rule 7001 and I haven't

8    seen an order on that, but is there any dispute about that

9    at this point?

10             MS. KRAEMER:  No, Your Honor.

11             THE COURT:  All right.

12             MS. CROZIER:  No, Your Honor, there is not.

13             THE COURT:  All right.  So we're focusing on the

14   causes of action that are the subject of the motion which

15   are count two for express trust or the imposition or

16   declaration of an express trust, count four for the

17   imposition of a constructive trust based on the allegations

18   in the complaint generally, and then to the extent not tied

19   to a breach of contract claim, count five for unjust

20   enrichment.

21             So it's the Debtors' motion, so I should hear from

22   them first, to the extent they want to have any oral

23   argument as opposed to just resting on their papers.

24             MS. CROZIER:  Thank you, Your Honor.  This is,

25   again, Jennifer Crozier, Weil, Gotshal, and Manges, for the

Page 26

1   Debtors.   Again, thank you for your time this morning, and

2   given the circumstances, I do intend to be brief.

3           We respectfully request that the Court dismiss the

4   remaining counts of plaintiffs' complaint which we

5   understand to be, as you just said, the breach of express

6   trust, constructive trust, and to the extent not predicated

7   on the already dismissed counts, that the claim for

8   conversion.

9           As the Bankruptcy Court for the Southern District

10  of New York stated in the In RE:  Ames Department Stores

11  (indiscernible) trust or agency to a contract does not,

12  without more, convert an ordinary (indiscernible) into a

13  trust or agency relationship.  Where (indiscernible) rights

14  for creditors are at issue, it is (indiscernible) important

15  that substance not give way to form.  We must look to the

16  parties' actual (indiscernible) the status of the property

17  at issue.

18          The relative rights (indiscernible) other

19  creditors are implicated here, Your Honor, and therefore, we

20  must look to the substance of the relationship between

21  plaintiffs and the Debtors in order to determine the status

22  of the property at issue in this case whether it's

23  (indiscernible) purported trust or, in fact, part of the

24  Debtors' estate.

25          Now, according to the plaintiffs themselves, the

Page 27

1   business relationship between plaintiffs and the Debtors had

2   none of the hallmarks of a trust relationship.  Plaintiffs

3   themselves that the Debtors exercised control over the sale

4   proceeds, comingled them with their own funds, and used them

5   for their own purposes.  Plaintiffs themselves have alleged

6   a Debtor-creditor relationship and accordingly, and for all

7   the other reasons that we've set forth in our papers, the

8   Court should dismiss plaintiffs' breach of express trust

9   claims.

10          The Court should likewise dismiss plaintiffs'

11  claims for imposition of a constructive trust.  Among other

12  things, plaintiffs have failed to adequately allege any

13  wrongdoing on the part of the Debtors that would warrant the

14  imposition of such an extraordinary remedy.  Plaintiffs

15  allegations of wrongdoing, again, as we argue in our papers,

16  are bare, conclusory, and fail to satisfy the proving

17  standard set forth in Rule 9(b).  The same is true for the

18  (indiscernible) improper allegations plaintiffs assert in

19  their opposition which, again, as the Debtors argue in their

20  reply, the Court should not consider in adjudicating the

21  plaintiffs' motion to dismiss.

22          And finally, Your Honor, the Debtors respectfully

23  request that the Court dismiss plaintiffs' claim for

24  conversion which is premised entirely upon the dismissed

25  breach of contract claims.  One need only look at Paragraph

Page 28

1    133 to 135 of the complaint to see that and each of those

2    explicitly referenced the Sears (indiscernible) agreement

3    and the Debtors' alleged failure to perform pursuant to

4    those agreements, and even if the conversion claim were not

5    based on the dismissed contract claim which the Debtors

6    don't concede, it would be barred by the economic loss

7    doctrine as recognized in Illinois.

8            So in sum, Your Honor, as the Third Circuit

9    (indiscernible) in In RE: Morales Travel Agency which is

10   cited by the (indiscernible), if a ritualistic incantation

11   of trust language conclusive where third-party interests are

12   at stake in a bankruptcy case, it would be a simple matter

13   for one creditor, at the expense of others, to circumvent

14   the rules pertaining to the creating of bona fide security

15   interests.

16           As the Debtors have argued (indiscernible) of this

17   adversary proceeding, Your Honor, that's precisely what

18   plaintiffs have attempted to do here and the Debtors submit

19   that the Court should not permit plaintiffs to sidestep the

20   procedures approved by this Court for the orderly and

21   efficient resolution of administrative expense claims and

22   thus we respectfully ask the Court to dismiss the remaining

23   counts of this adversary complaint with prejudice.  I'm

24   happy to answer any questions Your Honor may have;

25   otherwise, I'm finished.

Page 29

1           THE COURT:  Okay, thank you.

2           MS. CROZIER:  Thank you so much.

3           THE COURT:  Okay.  Ms. Kraemer?

4           MS. KRAEMER:  Yes, Your Honor, thank you.  Your

5   Honor, we would respectfully request that this motion to

6   dismiss be denied.  We feel as though that the motion to

7   dismiss is premature, particularly in light of the fact that

8   we've had no discovery in this case.  While we have asked

9   for a notice of a 30(b)(6) deposition, we have not been able

10  to obtain that.

11          THE COURT:  Well, that's --

12          MS. KRAEMER:  -- Your Honor --

13          THE COURT:  I'm sorry, that's why you have a

14  motion to dismiss, is so that the -- if it can be granted,

15  the defendant doesn't have to incur the burden and expense

16  of discovery.

17          MS. KRAEMER:  I agree, Your Honor.  We still take

18  the position that this motion is premature.  We also believe

19  that it is -- the Debtors have not satisfied their burden

20  for a motion to dismiss, Your Honor.  We believe that this

21  issue is a novel one and a case of first impression with

22  respect to e-marketplace portals that are relatively new to

23  the retail industry.  We believe that our complaint does

24  satisfy and sufficient plead (indiscernible) claims for at

25  least, Your Honor, for a constructive trust.

Page 30

```
 1            We believe that the evidence would reveal, and we

 2    have pled in our pleadings specific representation by Sears

 3    customer representatives that -- and based on information

 4    that has come to light since we filed the complaint, that

 5    this, perhaps, is a system-wide fraudulent scheme, if not

 6    fraudulent definitely mistaken where customer

 7    representatives intentionally misinformed the plaintiffs as

 8    well as -- I had no idea the numerous e-marketplace

 9    following.

10            Your Honor, we believe that with respect to --

11    indulge me one second.  With -- I'll address the

12    constructive trust directly, Your Honor.  Again, we feel as

13    though that the facts here are sufficient so that the

14    wrongdoing here that we believe were perpetrated upon my

15    clients, it should be that a constructive trust is an

16    equitable remedy that once one in this situation, we believe

17    that the five-year relationship between my clients and the

18    representatives built a high degree of trust and that at the

19    time that these representations were made to my clients,

20    they were made intentionally, we believe, by the

21    representatives to ensure that my clients would continue to

22    do business with Transform and with Sears.

23            And we believe that the express language of the

24    agreement created a fiduciary duty on behalf of Sears as an

25    agent, if not as a trustee to a constructive trust to have
```

Page 31

1    not used that money for its own purposes and that they

2    should have -- and because it was money of the customers'

3    and not my clients, we believe that this was a unique kind

4    of relationship and not your typical Debtor-creditor

5    relationship.

6              Your Honor, we have expressly pled in the

7    pleadings, the emails that were sent back and forth to my

8    client by Brian Carr, and we see that certain of the

9    messages that were sent could be considered future

10   statements that we hold or we anticipate, but we believe

11   that certain statements were statements that are present

12   statements.  For example, Your Honor, that on October 15th,

13   2018, Brian Carr stated that message, he indicated, business

14   would be -- payments would be restarting.

15             Your Honor, Brian Carr also stated that per the

16   contract, this is lawfully obligated and cannot be set up or

17   closed down and payments are guaranteed.  Your Honor, Brian

18   Carr also stated that marketplace sellers are sellers and

19   not vendors which allow you to be in a distinct class, you

20   ahead of other creditors.  You should start receiving

21   payments regular, post October 15th payments by next week.

22             Your Honor, in an email on Tuesday, February 12th,

23   he states that, as of yesterday it appears we are officially

24   out of Chapter 11.  Your Honor, we respectfully submit that

25   if these aren't tantamount to fraud, they're definitely

Page 32

1    mistaken.  They were negligent and as a result -- and I

2    believe that these statements were made to e-marketplace

3    sellers across the board, and that this would be considered

4    a scheme, in our opinion, so more e-marketplace sellers

5    continued to do business.

6          Your Honor, for all of these reasons, I would

7    respectfully request that the motions for dismiss be denied

8    and that equity and good conscience would require it.

9          THE COURT:  Okay.  I have the so-called Sears

10   Marketplace Agreement under which the parties conducted

11   their business.  It's referred to an incorporated in the

12   compliant.  Based on my review of it, there is one paragraph

13   in the agreement that refers to an agency relationship which

14   is quoted in the complaint.  It's Paragraph 1(b) and it says

15   that, "Seller hereby appoints Sears as an agent of seller

16   for the sole and express purpose of receiving payments form

17   users for seller's merchandise sold on the websites."

18          I don't see any other agency language, so my first

19   question is, is there any other express agency language in

20   the agreement besides that paragraph?

21          MS. KRAEMER:  No, Your Honor, that is it.

22          THE COURT:  Okay.  And then the second question I

23   have is, is there any language in the agreement, including

24   in that paragraph, laying out how or even whether the

25   seller, namely your clients, have the right and ability to

1    control Sears in how it performs its work as agent?

2              MS. KRAEMER:  I'm sorry, Your Honor, you mean,

3    with respect to Sears as agent for my clients?

4              THE COURT:  For your client, yes.

5              MS. KRAEMER:  Or --

6              THE COURT:  Sears as agent for your client.

7              MS. KRAEMER:  With respect to control over the

8    funds or just control over --

9              THE COURT:  Any control, as agent.  Is there any

10   provision whereby the sellers are given control over Sears'

11   actions?

12             MS. KRAEMER:  So just to be clear, so my clients'

13   ability to control what Sears does with the money or vice

14   versa?  I'm confused.

15             THE COURT:  No, I'm just focusing on their control

16   over Sears.  Normally, a principal has the right to control

17   its agent, if there's a true --

18             MS. KRAEMER:  Okay.

19             THE COURT:  -- agency relationship.

20             MS. KRAEMER:  Okay.  Well, with respect to the

21   transaction, I know that -- and my client was in a very

22   vulnerable -- as a principal relationship here, in a very

23   vulnerable position because once the customer orders the

24   treadmill off of Sears, my client was contractually

25   obligated to go out and find that product and then deliver

```
 1    it to the customer and then my client would only -- but

 2    Sears would collect the credit card funds once the customer

 3    made the transaction, and my client had -- really had no

 4    control over Sears.

 5              They had control over obtaining the treadmill,

 6    having it delivered to a third party, and having proof of

 7    delivery, then sent to Sears, and then upon that proof of

 8    delivery, Sears was then supposed to remit the funds,

 9    including taxes (indiscernible) authorities.  That is my

10    understanding, there's about $40,000 of taxes that have not

11    been remitted properly.  But in terms of a control, Sears

12    really had control over the funds and -- once that customer

13    issued the credit card payment.

14              Sears -- yeah, and Sears, my client was not

15    permitted to, for marketing purposes, have any type of

16    marketing materials on the packaging that was ultimately

17    sent to the customer, so I know I'm not really answering

18    your question, but in this kind of a situation, my client

19    didn't have that much control.  They're in a vulnerable

20    position.  It's a novel kind of way to do business, and I've

21    asked my clients why is this the industry standard, why are

22    e-marketplace sellers -- this contract needs to be

23    rewritten.

24              The 503(b)(9) doesn't help us much at all and this

25    leaves them all exposed and vulnerable, particularly in
```

Page 35

1    these recall cases.  So that's my answer.  I don't have any

2    -- not sure what else I could say about that.

3              THE COURT:  Okay.  And as I read it, Sears has no

4    responsibility to immediately pay the money over, right?

5              MS. KRAEMER:  They were to pay the money within 15

6    days after proof of shipment.

7              THE COURT:  Right.

8              MS. KRAEMER:  And they were also obligated to

9    remit the taxes, too.

10             THE COURT:  Right.  Was there any timeframe for

11   that?

12             MS. KRAEMER:  for the taxes?  That was set forth

13   in Paragraph 48 of the complaint.  That's the contractual

14   language.  It doesn't say.  It just says, Sears will pay

15   over taxes collected from the online purchaser directly to

16   the seller and seller will be responsible for remitting,

17   except in states where Sears as the marketplace

18   (indiscernible) provider is either required by law or elects

19   to remit those taxes to the state on behalf of the seller.

20   I do not see a see (indiscernible) here.

21             THE COURT:  Okay.

22             MS. KRAEMER:  (indiscernible).  Yeah.  It says,

23   seller will promptly reimburse Sears for any amounts paid --

24             THE COURT:  Right.

25             MS. KRAEMER:  -- to the extent that

Page 36

1   (indiscernible) Sears to pay any of the seller's taxes.

2          THE COURT:  Okay.  And I didn't see any -- I mean,

3   I think that's the operative language in the agreement that

4   you quoted in Paragraph 48.

5          MS. KRAEMER:  That's right.

6          THE COURT:  Right, which is Paragraph IIb3.

7          MS. KRAEMER:  Your Honor, if I may, this agreement

8   is -- we would think of it as a contract of adhesion.  It

9   wasn't an agreement that was --

10          THE COURT:  Well, but --

11          MS. KRAEMER:  -- format.  Each e-marketplace

12   seller would --

13          THE COURT:  But, no, that's not -- Ms. Kraemer,

14   that's not alleged in the complaint so it's really not an

15   issue that's before me.

16          MS. KRAEMER:  Okay.

17          THE COURT:  Okay, anything else?

18          MS. KRAEMER:  (indiscernible).  We allege, for the

19   constructive trust, I note it in Illinois, the earmarks are

20   mistake, fraud, coercion, or duress, and I guess that's

21   where I'm going with that, because Sears as a

22   megacorporation and then these small e-marketplace sellers -

23   -

24          THE COURT:  But you haven't alleged --

25          MS. KRAEMER:  -- there's really no --

Page 37

1          THE COURT:  But Ms. Kraemer, you haven't alleged

2    any duress.

3          MS. KRAEMER:  Your Honor, we did in the complaint.

4    We did (indiscernible) constructive trust part.

5          MS. CROZIER:  Your Honor, if I may, this is

6    Jennifer Crozier for the Debtor.  My line went dead for a

7    moment.  But if I may address Ms. Kraemer's argument

8    concerning this being a contract of adhesion or duress --

9          THE COURT:  Well, but please let's just finish

10   this thought.  I didn't see allegations of duress or

11   adhesion here.

12         MS. KRAEMER:  Your Honor, if I may --

13         MS. CROZIER:  -- and in fact, plaintiffs have

14   alleged quite the opposite.  They have alleged at Paragraph

15   21 that they are, "longstanding e-marketplace sellers."  At

16   28, they have alleged that they are likely one of Sears' top

17   marketplace sellers that provide the larges selection and

18   number of different products for Sears to sell and together

19   provide at least one million unique SKUs.  They have not

20   alleged that they are the little guy against the big guy.

21   They haven't alleged that.

22         And to the extent that they're relying on Brian

23   Carr's statement to show that they reposed confidence in

24   anyone, they must allege that they reposed confidence in

25   someone with respect to the execution of the Sears

Page 38

1    marketplace agreements and they have not done that.  Their

2    relationship with Brian Carr alleges they began in 2013.

3    That's at Paragraph 54.  And AMI, at least, entered into its

4    contract in 2010.  So there are no allegations of adhesion

5    or duress.  Certainly, we have no fiduciary duty here, at

6    least no adequate allegations under Trombe or Iqbal, and in

7    fact, their allegations would suggest the opposite.

8              THE COURT:  Okay, Ms. Kraemer --

9              MS. KRAEMER:  Your Honor, if I may.

10             THE COURT:  Yeah, you were going to show me

11   allegations of duress here.

12             MS. KRAEMER:  Yes, Your Honor.  It's in the

13   constructive trust count, Your Honor, and it's Paragraph 118

14   to 126.  I'd say that -- specifically I'd say that in

15   Paragraph 120, Sears (indiscernible) retail powerhouse

16   (indiscernible) tower in dominion over plaintiffs as well as

17   other e-marketplace sellers.  There was a longstanding

18   relationship with sellers and a high degree of trust between

19   Rupeshi Sanhavi and Pankaj Rothi empirically (indiscernible)

20   akin to a confidential relationship.  Certain of its

21   statements to plaintiff were mistaken, if not outright

22   false.

23             There was a market disparity and this is

24   experienced between the plaintiffs who were not represented

25   by counsel in Sears, that plaintiffs trusted Carr.  The

Page 39

1    plaintiffs were under commercial duress after the petition

2    date because of the large unpaid prepetition sums which were

3    about $880,000, Your Honor.  These compelling facts support

4    a basis of a constructive trust.

5          And the margins -- just to you know, Your Honor,

6    the margins on, like for an $800,000 of goods that my

7    clients purchased and delivered to customer funds and then

8    those funds were then -- Sears would take the funds.  Sears'

9    commission is dependent upon the product that was delivered,

10   but it would be, like, 3 percent, 5 percent, 10 percent, and

11   then my clients' margins on these products were varied.

12   They said it was like 1 percent.  They're very slim margins,

13   so for Sears to take all the monies that should've been used

14   to actually purchase the product and provide the product, I

15   mean, my clients are -- it's a huge hit on someone like my

16   clients.

17         It's a small business.  They do a lot of business.

18   They did so a lot of business with Sears, but it's...

19         THE COURT:  So let me -- the allegedly false

20   representations are all post-petition, correct?

21         MS. KRAEMER:  I'm sorry, can you repeat that?

22         THE COURT:  I think, based on my reading of the

23   complaint, the allegedly fraudulent representations by Mr.

24   Carr are all post-petition, after the commencement of the

25   bankruptcy, correct?

1            MS. KRAEMER:  Your Honor, if you look at page --

2      it was on the petition date, was the first email --

3            THE COURT:  Right, so --

4            MS. KRAEMER:  -- 11.

5            THE COURT:  So post-petition?

6            MS. KRAEMER:  That was on the petition date.

7            THE COURT:  Right.  So I guess this is a

8      subsidiary point, but I didn't understand how that could

9      justify imposing a constructive trust for the whole $790,000

10     of prepetition amounts.

11           MS. KRAEMER:  Your Honor, I understand that and I

12     have thought about that and I did digest this.  At what

13     point were these statements made, and I asked them were

14     there any other statements prior to this date, like -- that

15     were like this.  The answer is no.

16           THE COURT:  Okay.

17           MS. KRAEMER:  So there were -- the analysis, I

18     think, with respect to the constructive trust, it would have

19     to come after the date that these statements were made and

20     there were prepetition -- in the 20 days, I know the number

21     is like $800,000-and-some or $700,000-and-some, and then the

22     post-petition, I know there's an amount that -- and Jennifer

23     and I have discussed this amount -- it's about, we think

24     it's, I think, $100,000.  They think it's about $75,000.  So

25     --

1          THE COURT:  Well, the compliant says it's 95.

2          MS. KRAEMER:  Yeah, then when we were trying to

3    resolve our -- through administrative claims consent

4    program, there were some issues about duplicative invoices

5    or refunds or whatever.  We're really not -- didn't get to

6    the nitty gritty of that, but the Debtors believe that the

7    number is 75.  My clients thought it was 95.

8          THE COURT:  Okay.  All right.  Very well.

9    Anything else?

10         MS. KRAEMER:  I have nothing further, Your Honor.

11         THE COURT:  Okay.  Anything else from the Debtors'

12   side?

13         MS. CROZIER:  Nothing further here, Your Honor.

14   Thank you.

15         THE COURT:  Okay.  All right.  I have before me a

16   motion by the Debtor defendants in this adversary proceeding

17   to dismiss the agreed remaining claims in the adversary

18   proceeding, which are counts two, four, and to the extent

19   that the counts set forth in V is for conversion unrelated

20   to a breach of the parties' contract, count five, under

21   Bankruptcy Rule 7012 which incorporates Federal Rule of

22   Civil Procedure 12(b)(6).

23         When considering a motion under Rule 12(b)(6), the

24   Court must assess the legal feasibility of the complaint,

25   not weigh the evidence that might be offered in its support.

Page 42

1    Koppel v. 4978 Corp., 167 F.3d. 125, 133 (2d Cir. 1993).

2    The court's consideration is limited to facts stated on the

3    face of the complaint and the documents appended to the

4    complaint or incorporated in the complaint by reference as

5    well as to matters of which judicial notice may be taken.

6    Hertz Corp. v. city of New York, 1F.3d. 121, 125, (2d. Cir.,

7    1993, cert., denied), 510 U.S. 1111 (1993).

8         The Court accepts the complaint's factual

9    allegations as true and must draw reasonable inferences in

10   favor of the plaintiff.  Tellabs, Inc., 551 U.S. 308, 323

11   (2007).  However, if a complaint's allegations are clearly

12   contradicted by documents incorporated into the pleadings by

13   reference, the Court need not accept them.  Labajo v. Best

14   Buy Stores, LP, 478 F. Supp. 2d 523, 528 (SDNY 2007).

15        Moreover, the Court is not bound to accept as true

16   a legal conclusion couched as a factual allegation.  Papasan

17   v. Allain, 478 U.S. 265, 286 (1986).  Instead, the complaint

18   must state more than "labels and conclusions and a formulaic

19   recitation of the elements of the cause of action will not

20   do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555

21   (2007).

22        Relatedly, while the Supreme Court has confirmed

23   in light of the notice pleading standard of Federal Rule of

24   Civil Procedure 8A that a complaint does not need detail

25   factual allegations to survive a motion under Rule 12(b)(6),

Page 43

1   see Erickson v. Pardus, 127 Supreme Court 2197, 2200 (2007);

2   Bell Atlantic Corp. v. Twombly, 550 U.S. at 555.   Its

3   "factual allegations must be enough to raise a right to

4   relieve above the speculative level."   Bell Atlantic Corp.

5   v. Twombly at 555.

6        Complaint must contain sufficient facts except it

7   is true to state a claim that is "plausible on its face",

8   id. at 570.   In other words, if the claim would not

9   otherwise be plausible on its face, the plaintiff must

10   allege sufficient facts to "nudge the claim across the line

11   from conceivable to plausible," id., otherwise the defendant

12   should not be subjected to the burdens of discovery and the

13   worry of overhanging litigation, id.

14        Evaluating plausibility is "a context-specific

15   task that requires a Court to draw on judicial experience

16   and common sense, aware that well pleaded facts to not

17   permit the Court to infer more than mere possibility of

18   misconduct the complaint has alleged but has not shown that

19   the pleader is entitle to relief under Rule 8."   Ashcroft v.

20   Iqbal, 129 Supreme Court 1937, 1949 (2009).

21        The plausibility standard is not akin to a

22   "probability requirement" but it asks for more than sheer

23   possibility that the defendant has acted unlawfully, id.

24        In sum, therefore, to determine this motion to

25   dismiss, the Court must first identify the elements of the

Page 44

1    applicable causes of action, id. at 1947.  Next, it must

2    identify the allegations not entitled to the assumption of

3    truth because they are legal conclusions, not factual

4    allegations, id. at 1951.  And finally, it must assess the

5    factual allegations in the context of the elements of the

6    claim to determine whether they plausibly suggest an

7    entitlement to relief, id.

8            The motion also is couched to the extent that the

9    causes of action at issue are premised upon allegations of

10   fraud on Rule 9 of the Federal Rules of Civil Procedure

11   incorporated by Bankruptcy Rule 7009.  That rule requires

12   wherever fraud is alleged that with respect to allegations

13   other than state of mind, the allegations be stated with

14   particularity as to the circumstances constituting fraud,

15   which is morally interpreted to state that the alleged fraud

16   must be stated with particularity as to the who, what,

17   where, and when aspects of the fraud, so that the defendant

18   is not asked in its answer to speculate or guess as to the

19   circumstances pertaining to the alleged fraud.

20           Here, again, there are three causes of action that

21   are the subject of the motion.  The first is a cause of

22   action for a declaration of express trust between the

23   parties.  The parties do not have an agreement which

24   declares expressly a trust.  Rather, their relationship, as

25   set forth in the complaint, is under a so-called Sears

Page 45

1    Marketplace agreement, which, since it is referred to in the

2    complaint and incorporated therein, as I noted above, I can

3    consider.

4            Whether parties have an expressed declaration of

5    trust or not, however, is not dispositive as to whether they

6    have agreed to such an express trust.  Rather, under

7    Illinois law, which is the law that the parties, I believe,

8    agree applies here, and in any event, which they have agreed

9    applies with respect to their relationship under the Sears

10   Marketplace agreement in paragraph F thereof, the creation

11   of an express trust requires each of the following elements

12   to be established.  That is, the complaint here would have

13   to plead sufficiently under Twombly and Iqbal the following:

14           "Intent of the parties to create a trust, which

15   may be shown by a declaration of trust by the settler or by

16   circumstances which show the settler intended to create a

17   trust; 2) A definite subject matter or trust property; 3)

18   Ascertainable beneficiaries; 4) A trustee; 5) Specifications

19   of a trust purpose and how the trust is to be performed; and

20   6) Delivery of the trust property to the trustee." See

21   Eychaner v. Gross, 779 N.E.2d 1115, 1131, (Ill. 2002).

22           Here, as I said, the agreement between the parties

23   does not refer to a trust relationship and the complaint

24   itself does not refer to any agreement whereby the parties

25   denominated their relationship as one subject to an express

1    trust.  Indeed, paragraph G of the agreement states:  "The

2    parties to this agreement are independent contractors and no

3    other relationship will be implied from this agreement."

4           In fact, the only statement of agency in the

5    agreement is the one that we discussed at oral argument

6    appearing in paragraph 1B, which states:  "Seller hereby

7    appoints Sears as an agent of Seller for the sole and

8    express purpose of receiving payments from users for

9    Seller's merchandise sold on the websites.  Unlimited

10   declaration of agency."

11          In addition, it is not clear from the complaint

12   what the subject matter or trust property is, although I

13   have inferred that it is the cash received by Sears in

14   respect of sales of merchandise sold under the Sears

15   Marketplace terms and conditions on its website provided by

16   the Plaintiffs as sellers.  That's with an under-case S

17   under the marketing agreement.

18          Each of the other aspects of finding an express

19   trust, i.e., ascertainable beneficiaries, a trustee,

20   specifications of a trust purpose and how the trust is to be

21   performed and delivery of the trust property to the trustee

22   are not delineated expressly in the complaint.  And, again,

23   I have to infer that each of those requirements is intended

24   to be satisfied by the delivery of the payments by those who

25   order merchandise to Sears, ostensibly to be held in trust

Page 47

1    for the Plaintiffs, although there's no allegation, and this

2    really does cross the line of Twombly/Iqbal, to suggest that

3    the customers making the payments to Sears had any

4    understanding as to the delivery of those payments into

5    trust at Sears for the Plaintiff's benefit.

6           As stated in the Eychaner case, the mere agency

7    relationship, that is, one where the agent in some way

8    manages the affairs of another, does not give rise to the

9    express trust.  Id. at 134 through 35.  Moreover, and I

10   believe dispositive here, the funds at issue were not

11   directed to be turned over immediately to the

12   seller/putative beneficiaries, rather, the agreement

13   contemplated that the funds good be held by contract at

14   least for 15 days and there is no prohibition on comingling

15   the funds.

16          Under those circumstances, the courts have widely

17   held that the parties have not established a trust

18   relationship, an express trust relationship, but, rather,

19   have established a debtor-creditor relationship.  I would

20   note that there is not even an allegation that the funds

21   could be traced in the complaint, nor is there any

22   allegation in the complaint or any provision in the parties'

23   agreement that gives the Sellers any control over such funds

24   or requires them to be dealt with in a specific way to

25   enable their segregation or tracing.

Page 48

```
 1            The courts in this circuit, as well as in the

 2   Seventh Circuit interpreting Illinois law, have concluded

 3   under those circumstances an express trust, which requires

 4   an ascertainable res does not exist.  See LFD Operating Inc.

 5   v. Ames Department Stores, Inc., In re Ames Department

 6   Stores, Inc. 144 Fed.Appx. 900, 901-902, (2d Cir. 2005).

 7   It's also worth citing the lower court, district court,

 8   opinion on that issue, which appears at 2004 U.S. District

 9   LEXIS 17575 at pages 12 and 14-15, particularly 14-15 as to

10   express trust.  See also Chicago Cutter v. Carter-Karcher,

11   Inc., v. Maley, (In re Lord's Inc.), 356 F.2d 456, 458, (7th

12   Cir. 1965), Cert denied, 385 U.S. 847 (1966).

13            To be contrasted with those cases and

14   distinguished by the bankruptcy opinion in the Ames case is

15   In re Greenfield Direct Response, 171 B.R. 848, 857-858,

16   (Bankr. N.D. Ill. 1994) where the Court stated that there

17   was an immediate obligation to pay and, therefore, any

18   comingling was in violation of the parties' expressed

19   agreement.  See also United States v. Mazza-Alaluf, 2011

20   U.S. District LEXIS 8391 at pages 14-17, (S.D.N.Y. Jan. 27,

21   2011) where the district court dismissed a complaint where

22   there was not only comingling, but no allegation, or any

23   plausible allegation.  of any fiduciary relationship and,

24   therefore, the cause of action could not lie, even though

25   one could conceivably engage in various tracing mechanisms
```

 1    because there was no plausible allegation of any fiduciary

 2    relationship.

 3            For those reasons the cause of action should, in

 4    fact, be dismissed.  It is alleged that I should take a

 5    closer look at this matter because there are no cases

 6    directly on point for e-commerce marketers like this.  It

 7    appears to me, however, that the general rules can be

 8    applied to this relationship and, indeed, certain of the

 9    cases bear a distinct similarity, including the Ames case,

10    to this case with one distinction, which is not really a

11    distinction that favors the Plaintiffs.

12            In Ames there was a similar relationship except

13    that -- and the same with Cutter/Karcher -- the goods were

14    actually physically in the Defendant's store.  Here, of

15    course, they were not in the store but merely sold over the

16    Defendant's website.  If there is a distinction there, it is

17    one that I believe is not meaningful, in any event, not

18    favorable to the Plaintiffs.

19            I will also note that in both Ames and Lord's, the

20    Chicago Cutter/Karcher case, the parties' agreement actually

21    had trust language in it.  But both courts went behind the

22    language to determine that, in fact, there was no express

23    trust relationship in fact, given the permission to

24    comingle.

25            If anything by analogy here, and if one were to be

1   creating any sort of new law, I believe one would be guided

2   by the law of consignments and/or bailments, neither of

3   which is favorable here to the Plaintiffs under the Illinois

4   version of the UCC to affect an interest in consigned goods.

5   And, of course, there's no allegation of consignment here

6   but the facts might suggest a consignment type of

7   relationship that is effective as against prior creditors

8   and/or judgment creditors.

9         The consignor needs to perfect its interest by

10  filing a financing statement, Illinois UCC9-319, and the

11  official commentary thereto.  That section deems the

12  consignee, i.e., Sears, if this were to be viewed as a

13  consignment, as having the ownership interest and,

14  therefore, the rights pass to the Trustee as property of the

15  estate under 11 USC Section 541.  See Leibzeit v. FVTS

16  Acquisition Company (In re Wolverine Fire Apparatus

17  Company), 465 B.R. 808, 820 B.R. (ED Wisc. 2012)

18  interpreting the Wisconsin UCC, which is on all fours with

19  the Illinois UCC on this provision.

20         As far as a bailment is concerned, "In Illinois, a

21  bailment is the delivery of property for some purpose upon a

22  contract, express or implied, that after the purpose has

23  been fulfilled, the property shall be redelivered to the

24  bailor or otherwise dealt with according to his directions

25  or kept until he reclaims it." Maxwell v. Penn Media, (In re

1   MarchFirst, Inc.) 2010, B.R. LEXIS 3480 at pages 19-20.

2   (Bankr. N.D. Ill., October 14, 2010).

3           Here the goods themselves could not conceivably be

4   part of a bailment because they are not delivered to Sears

5   to be held by Sears.  Rather, they were delivered to the

6   customers.  As far as the issue as to whether the money,

7   that is the proceeds, could be held as a bailment, again,

8   there's no language creating it and the limitations on

9   holding it are only contractual in the sense that payments

10  should be made, although not from this specific money,

11  within 15 days or when notified that a tax is due.

12          In addition, there is substantial doubt as to

13  whether there can be a bailment only on money.  Id.  at page

14  20 and footnote 6 therein, and see generally that if there

15  is a special deposit under Illinois banking law, there is a

16  bailment, such that instead of creating the relation of

17  debtor and creditor, the deposit creates a bailment in that

18  it sets apart the specific money for its return and demand.

19  Mid-City National Bank v. Mar Building Corp., 33 (Ill. App.

20  Ct.),1083, 1089-1090 (1975).  However, a normal bank

21  deposit, where the funds go into the general funds is not a

22  bailment and the depositor simply becomes a general

23  creditor.  It's an old case.  Otis v. Gross 96 Ill. 612,

24  614, (1880) and In re Western Marine and Fire Insurance

25  Company, 38 Ill. 289 (1865).

Page 52

1          Count 4 asserts that the Court should impose a

2     constructive trust on the Debtor's estate for the amounts

3     owed to the Plaintiffs.  This is a bankruptcy case and the

4     courts around the country, including in the Second Circuit,

5     have clearly and uniformly stated that when a creditor

6     asserts or alleges as a remedy the imposition of a

7     constructive trust on a bankruptcy case, different equitable

8     considerations apply and that the Court should be very

9     careful, extremely careful to oppose such a trust or should

10    act with caution or that there needs to be a substantial

11    reason over and above normal constructive law  to oppose

12    such a trust.  See Ades & Berg Group Investors v. Breeden

13    (In re Ades & Berg Group investors), 550 F.3d 245 (2d Cir.

14    2004) and numerous other decisions in the Second Circuit,

15    including Rosen v. Chowaiki & Company Fine Art (In re

16    Chowaiki & Company Fine Art), 593 B.R. 699 (Bankr. S.D.N.Y.

17    2018) and the cases cited therein, where, as is aptly stated

18    by Judge Vyskocil, "Most significantly, even to the extent

19    that the debtor may have been enriched prior to bankruptcy,

20    the gravitational center of the equities analysis focuses on

21    the totality of the Debtor's creditors once bankruptcy was

22    initiated."  Id. at 720.

23          As the Court there states, "No equities would be

24    served here by allowing Plaintiff to satisfy his losses

25    while similarly situated creditors, many of whom hold

Page 53

1    similar causes of action against the Debtor for fraud and

2    fraudulent inducement, wait for pro rata distribution,"

3    citing Ades & Berg.  Id. at 721.

4            Instead, as the debtors assert here, Judge

5    Vyskocil in the Chowaiki case noted that the Plaintiff may,

6    of course, file a claim, which is what the Plaintiff here

7    has done.  See also Brenner v. Heller, 2011 U.S. Dist.

8    LEXIS 137072, (N.D.N.Y. Nov. 30, 2011), In re Paulino, 2014

9    B.R. LEXIS 4435, pages 20-21, (Bankr. S.D.N.Y. Oct. 20,

10   2014); and In re Fetman, 567 B.R. 702, 706 (Bankr. E.D.N.Y.

11   2017), and the cases cited therein, including Geltzer v.

12   Balgobin (In re Balgobin 490 B.R. 13), (Bankr. E.D.N.Y.

13   2013).

14           Here it has been argued that there are two grounds

15   for the imposition of the constructive trust.  The first is

16   an alleged trust or fiduciary relationship.  And the second

17   is wrongdoing in the form of alleged misrepresentations, all

18   of which occurred on or after the commencement of the

19   bankruptcy case.  Besides, even if one were to conclude that

20   that grounds would give rise to a constructive trust, they

21   would only apply to the money advanced allegedly on the

22   basis of those representations, which is a small fraction of

23   the total amount at issue here.

24           Moreover, as to those representations, it is

25   alleged that such representations were made system-wide to

1    marketplace sellers across the board, which consistent with

2    the case law that I've just cited argues that if a post-

3    petition claim is to be based on such representations, it

4    should be pursued as part of the claim process for assertion

5    of a post-petition claim, which is already underway with

6    regard to these two Plaintiffs and should not be used

7    through the remedy of constructive trust for one claimant or

8    one alleged recipient of such misrepresentations to get a

9    leg up with a specific property interest over others.

10           Particularly, whereas here there are issues as to

11   tracing, assuming that tracing had been alleged in the

12   complaint, that could only be dealt with by tracing

13   mechanisms like the lowest intermediate balance rule, which,

14   when one takes into account other parties who necessarily

15   receive the same or similar representations, would be unfair

16   and inequitable.

17           Under Illinois law, constructive trust is imposed

18   to prevent unjust enrichment by imposing a duty on the

19   person receiving the benefit to convey the property back to

20   the person from whom it was received.  Martin v. Heinold

21   Commodities, Inc., 163 Ill. 2d. 33, 643 N.E. 2d 734, 745,

22   (Ill. 1994). It is a remedy, in essence, for restitution.  A

23   property seeking a constructive trust must establish the

24   existence of identifiable property to serve as the res upon

25   which a trust can be opposed and possession of that res or

Page 55

1    its product by the person who has to be charged as the

2    constructive Trustee.  People es rel. Hartigan v. Candy

3    Club, 149 Ill. App.3d 498501 (N.E.2d, 1988, 1991, Ill. App.

4    Court 1986).

5           Here, as I said, there are two grounds.  I will

6    return to the second ground, the alleged fraud, but as is

7    clear from my statement so far, I do not believe that under

8    the law governing the assertion of the constructive trust

9    remedy in a bankruptcy case the allegations regarding fraud

10   establish a basis for that remedy here, separate and apart

11   from whether a constructive trust would lie in any event,

12   which I'll come back to.

13          Let me go, instead, to the first basis for the

14   remedy of constructive trust, which is allegations that

15   there was a trust relationship between the parties, albeit

16   not a formal express trust relationship and/or that the

17   parties' relationship itself, separate and apart from the

18   alleged misrepresentations, created a basis for imposing the

19   remedy here.

20          We discussed at oral argument whether there are

21   sufficient allegations in the complaint of duress or

22   coercion.  I conclude under Twombly and Iqbal there are not,

23   particularly given the allegations in the complaint and the

24   marketplace agreement, including the statements by the

25   parties that they're acting as independent contractors, and

Page 56

1    the volume of business that the complaint alleges is done

2    here.  Under those circumstances, the recitations of duress

3    and/or coercion are merely restatements of the cause of

4    action as opposed to the facts supporting the cause of

5    action and/or are not plausible.

6           The other basis for a constructive trust here is

7    that the parties were in a fiduciary relationship with

8    respect to some identifiable property or res that is one

9    where a proper remedy would be the imposition of a

10   constructive trust.  Here again, the only possible res that

11   would be the subject of the trust would be the funds paid by

12   the customers into Sears, which, under the agreement, Sears

13   is to pay a like amount absent or after having deducted

14   commission and certain other amounts within 15 days to the

15   Sellers and/or after the Sellers notify them with taxes due.

16          The complaint itself does not set forth expressly

17   any facts which show that that relationship, which is,

18   again, laid out in the Sears Marketplace Agreement, would

19   give rise to the type of fiduciary duty that would justify

20   the imposition of a constructive trust even outside of a

21   bankruptcy case.  As I noted, there is only one statement of

22   an agency relationship and that is only in respect of one

23   sentence in paragraph 1B.  Quote, "Seller hereby appoints

24   Sears as an agent of Seller for the sole and express purpose

25   of receiving payments from users for Seller's merchandise

1    sold on the websites."

2         Illinois law recognizes the common law presumption

3    that a party in possession of personal property is, in fact,

4    the owner.  The property here being the cash paid by the

5    customers.  In re MarchFirst, Inc. 2010 B.R. LEXIS 3480 at

6    page 16 and the cases cited therein.  That presumption

7    extends to money.  Id.  That presumption can be overcome and

8    it can be done by showing a proper agency relationship as

9    applied to the particular property.  That is because in

10   Illinois, "Agents generally do not own property transferred

11   into their possession by or for the benefit of a principal."

12   Greenfield Direct Response, Inc., v. ADCO List Management

13   (In re Greenfield Direct Response, Inc.) 171 B.R. 848, 857

14   (Bankr. N.D. Ill. 1994).

15        On the other hand, the burden of establishing an

16   agency relationship rests with the party claiming it, in

17   this case the Seller/Plaintiffs and "In Illinois, parties

18   have an agency relationship when the principal has the right

19   to control the manner in which the agent performs his work

20   and the agent has the ability to subject the principal to

21   principal liability." In re MarchFirst, Inc., 2010 B.R.

22   LEXIS 3480 at pages 17-18 and the cases cited therein.

23        Here, as we discussed at oral argument and as is

24   clear from the Sears Marketplace agreement, even though

25   Sears is stated as the agent for receiving the payments,

1    there is no control over that property by the

2    Seller/Plaintiffs.  Indeed, it can be comingled, consistent

3    with the case law that I've already cited.  Therefore, it is

4    clear for purposes of a motion to dismiss that such property

5    is property of the Debtor's estate and should not be

6    impressed with a constructive trust given that, although

7    Sears is stated to be an agent for receiving the property,

8    it is not a true agent there for fiduciary duty purposes.

9            In that the Trustee or putative Trustee does not

10   have a sole duty to deliver title and possession of that

11   property, i.e., the payments by the customers, back to the

12   Seller/Plaintiffs.  Id.  See also Brandt v. ICON EAR, LLC

13   (In re Equipment Acquisition Res., Inc.) 2012 B.R LEXIS 4651

14   at pages 11-12, (Bankr. N.D. Ill. Sept.  30, 2012).  See

15   also Sullivan v. Glenn, (In re Glenn) 502 B.R. 516, 452-543

16   (Bankr. N.D.Ill.2013) discussing, consistent with the

17   parties' own representations and agreement in paragraph G,

18   the Illinois law under which one would be deemed an

19   independent contractor instead of an agent with fiduciary

20   duties.

21           It's clear to me under the allegations in the

22   complaint and the Sears Marketplace agreement that there is

23   no such duty here that would give rise to a constructive

24   trust for failure to comply with the duty, even outside of

25   the bankruptcy context.  Although, again, the allegations

Page 59

1    here are so similar to what is described to me by the

2    Plaintiffs as a system-wide allegation that the bankruptcy

3    context would argue strongly for not imposing a constructive

4    trust even if such an agency relationship were sufficiently

5    pled in the complaint, including as I must take into account

6    the parties' agreements, which is incorporated into the

7    complaint.

8          It also appears to me that as a matter of

9    constructive trust law outside of bankruptcy, the alleged

10   what I'll call misrepresentations by the Debtors, which are,

11   in fact, quoted with the emails having been attached as an

12   exhibit, are of such a precatory or couched in future terms

13   nature as not to give rise to a fraud.  But that conclusion

14   is not necessary given the fact that those post-petition

15   allegations, or allegations of post-petition misconduct, are

16   quite properly or appropriately encompassed by the

17   litigation of the Plaintiff's post-petition administrative

18   expense claim, which are being dealt with under the opt-in

19   procedures previously approved by the Court.

20         It appears clear to me, therefore, that there I no

21   independent duty arising prepetition that would give rise to

22   a constructive trust remedy and then all that is covered by

23   these allegations is the failure to pay a debt.  Failure to

24   pay a debt is, obviously for anyone who has been in that

25   position, extremely irritating and worse condition to be

Page 60

1    under as the creditor, but it does not create special

2    interests in property.  Rather, it is dealt with in the

3    claims process as opposed to a trust or constructive trust

4    process.  See Swanson v. Randall, 195 N.E.2d 656, 660 (Ill.

5    1964)

6             As far as the last cause of action is concerned

7    for conversion, as I've already found, there is no specific

8    property right or interest here in the funds held by the

9    Debtor, which not only are comingled but were permitted to

10   be comingled by the parties' agreement and the operation of

11   law.  Given that conclusion that I've already reached based

12   on my review of the complaint and the parties' agreement, a

13   claim for conversion does not lie.  There was not right to

14   the specific funds paid in by the customers but, rather, a

15   claim for payment of a like amount within 15 days or upon

16   notice that taxes were due.

17            Under those circumstances, a cause of action for

18   conversion would not lie.  There is no separate tort other

19   than, that is, the breach of that obligation to pay a like

20   amount of funds over or within 15 days.  To the extent it is

21   a separate defense, other than just simply the fact that

22   there's no property interest here to be protected, the

23   Debtors correctly cite to the economic loss doctrine as

24   recognized in Illinois, where if there is no separate tort,

25   and there cannot be a separate tort here given my conclusion

Page 61

1    based on the allegations of the complaint, if there is no

2    property interest in the funds that have not been paid and

3    one, therefore, is looking only at a breach of contract, a

4    claim for conversion would not lie.  See Congregation of

5    Passion v. Touche Rosse & Co., 636 N.E.2d 503, 514 (Ill.

6    1994) and Essex Insurance Company v. Lutz, 2007 WL 844914 at

7    page 5, (S.D. Ill. March 20, 2007).

8             So, I will enter an order granting the motion to

9    dismiss each of the remaining causes of action in the

10   complaint.  That order, just for good housekeeping, should

11   also confirm that the other causes of action have also been

12   dismissed and/or withdrawn based on the Court's ruling from

13   March 13th that under Bankruptcy Rule 7001, such causes of

14   action should not be brought under complaint but, rather,

15   should be consolidated with the pending administrative

16   expense matters and/or with regard to prepetition claims,

17   the general claim disallowance process or claim objection

18   process under Rule 3007 of the Bankruptcy Code, in each

19   case, for consolidation purposes under Bankruptcy Rule 7042.

20            So, does anyone have any questions on that?

21            MS. CROZIER:  This is Jennifer Crozier for the

22   Debtors.  No, and thank you.  We will submit the order.

23            THE COURT:  Okay.  All right, thank you.  And that

24   order does not have to be formally settled on notice to Ms.

25   Kramer, but you should not only copy her on the email of the

Page 62

1    chambers but also give her a day or so to look it over to

2    make sure it's consistent with my ruling.

3              MS. CROZIER:  We will do that, Your Honor.

4              MS. KRAMER:  Thank you, Your Honor.

5              THE COURT:  Okay, thank you.

6              MS. CROZIER:  Thank you, Your Honor.  I think that

7    completes our agenda and we're on, I believe, for April 23rd

8    for our next omnibus, right?

9              THE COURT:  Okay.  Very well.  I will be talking

10   to you all then.  Thank you.

11             MS. CROZIER:  Thank you.  Be well, everybody.

12             THE COURT:  Same to you.

13             (Whereupon these proceedings were concluded at

14   12:02 PM)

15

16

17

18

19

20

21

22

23

24

25

Page 63

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    *[signature: Sonya M. Ledanski Hyde]*

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  March 26, 2020

**[& - 550]** Page 1

**&**

**&**   6:2 52:12,13,15
  52:16 53:3 61:5

**1**

**1**   32:14 39:12
**1,125,000**   11:14
  12:2
**10**   39:10
**100,000**   40:24
**10022**   6:16
**10153**   6:5
**10601**   2:3
**1083**   51:20
**1089-1090**   51:20
**10:00**   3:2
**10:11**   2:6
**11**   31:24 40:4
  50:15
**11-12**   58:14
**1111**   42:7
**1115**   45:21
**1131**   45:21
**11501**   63:23
**118**   38:13
**12**   41:22,23 42:25
  48:9
**120**   38:15
**121**   42:6
**125**   42:1,6
**126**   38:14
**127**   43:1
**129**   43:20
**12:02**   62:14
**12th**   31:22
**13**   3:15 53:12
**133**   28:1 42:1
**134**   47:9
**135**   28:1
**137072**   53:8
**13th**   10:17 61:13
**14**   51:2
**14-15**   48:9,9

**14-17**   48:20
**144**   48:6
**149**   55:3
**15**   35:5 47:14
  51:11 56:14 60:15
  60:20
**15219**   6:23
**15th**   31:12,21
**16**   57:6
**163**   54:21
**167**   42:1
**17-18**   57:22
**171**   48:15 57:13
**17575**   48:9
**18-23538**   1:3
**1865**   51:25
**1880**   51:24
**19-08700**   1:4 3:4
  3:11,17 4:1
**19-20**   51:1
**1937**   43:20
**1947**   44:1
**1949**   43:20
**195**   60:4
**1951**   44:4
**1964**   60:5
**1965**   48:12
**1966**   48:12
**1975**   51:20
**1986**   42:17 55:4
**1988**   55:3
**1991**   55:3
**1993**   42:1,7,7
**1994**   48:16 54:22
  57:14 61:6
**1b**   46:6 56:23
**1f.3d.**   42:6

**2**

**2**   9:1,5 45:17
**20**   11:4 40:20
  51:14 53:9 61:7
**20-21**   53:9

**2002**   45:21
**2004**   48:8 52:14
**2005**   48:6
**2007**   42:11,14,21
  43:1 61:6,7
**2009**   43:20
**2010**   38:4 51:1,2
  57:5,21
**2011**   48:19,21
  53:7,8
**2012**   50:17 58:13
  58:14
**2013**   38:2 53:13
**2014**   53:8,10
**2017**   53:11
**2018**   31:13 52:17
**2020**   2:5 3:2 63:25
**21**   37:15
**2197**   43:1
**2200**   6:22 43:1
**23rd**   62:7
**245**   52:13
**248**   2:2
**24th**   10:25
**25**   2:5 3:2
**26**   63:25
**265**   42:17
**27**   48:20
**27th**   10:17
**28**   37:16
**286**   42:17
**289**   51:25
**2d**   42:1,6,14 48:6
  52:13 54:21,21

**3**

**3**   39:10 45:17
**30**   29:9 53:8 58:14
**300**   2:2 63:22
**3007**   61:18
**308**   42:10
**323**   42:10
**33**   51:19 54:21

**330**   63:21
**3480**   51:1 57:5,22
**35**   47:9
**356**   48:11
**37,500**   11:4
**38**   51:25
**385**   48:12

**4**

**4**   10:20 45:18 52:1
**40,000**   34:10
**4209**   5:2 16:8
**4435**   53:9
**452-543**   58:15
**456**   48:11
**458**   48:11
**465**   50:17
**4651**   58:13
**4730**   10:25
**478**   42:14,17
**48**   35:13 36:4
**490**   53:12
**4978**   42:1
**498501**   55:3

**5**

**5**   3:21 16:6 17:2,3
  39:10 45:18 61:7
**50,000**   11:15
  12:12,24
**502**   58:15
**503**   34:24 61:5
**5075**   4:13
**510**   42:7
**514**   61:5
**516**   58:15
**523**   42:14
**528**   42:14
**54**   38:3
**541**   50:15
**544**   42:20
**5483**   5:2 16:9
**550**   42:20 43:2
  52:13

**551** 42:10
**555** 42:20 43:2,5
**567** 53:10
**570** 43:8
**593** 52:16

**6**

**6** 4:7 29:9 41:22
  41:23 42:25 45:20
  51:14
**612** 51:23
**614** 51:24
**636** 61:5
**643** 54:21
**656** 60:4
**660** 60:4
**699** 52:16

**7**

**700,000** 40:21
**7001** 25:7 61:13
**7009** 44:11
**7012** 41:21
**702** 53:10
**7042** 61:19
**706** 53:10
**707** 6:22
**720** 52:22
**721** 53:3
**7335** 4:21,25
**734** 54:21
**7448** 4:16
**745** 54:21
**7457** 4:10
**7475** 5:4 16:15
**75** 41:7
**75,000** 40:24
**7505** 12:16
**767** 6:4
**779** 45:21
**790,000** 40:9
**7th** 48:11

**8**

**8** 43:19
**80** 12:24
**800,000** 39:6
  40:21
**808** 50:17
**820** 50:17
**8391** 48:20
**844914** 61:6
**847** 48:12
**848** 48:15 57:13
**856** 4:20
**857** 57:13
**857-858** 48:15
**875** 6:15
**880,000** 39:3
**8a** 42:24

**9**

**9** 27:17 34:24
  44:10
**900** 48:6
**901-902** 48:6
**95** 41:1,7
**96** 51:23

**a**

**a.m.** 3:2
**ability** 32:25
  33:13 57:20
**able** 29:9
**absent** 56:13
**accept** 17:13
  42:13,15
**accepts** 42:8
**accommodating**
  9:23
**account** 54:14
  59:5
**accurate** 63:4
**ace** 19:13,16,18
  20:2
**acquire** 11:6

**acquisition** 50:16
  58:13
**act** 52:10
**acted** 43:23
**acting** 13:23
  55:25
**action** 22:11,11
  22:13 23:3 24:25
  25:4,14 42:19
  44:1,9,20,22
  48:24 49:3 53:1
  56:4,5 60:6,17
  61:9,11,14
**actions** 33:11
**actual** 13:15,16
  13:24 26:16
**adco** 57:12
**add** 14:8 15:11
**addendum** 5:1
  16:9
**addition** 46:11
  51:12
**additionally** 13:1
**address** 9:1 30:11
  37:7
**adequate** 38:6
**adequately** 27:12
**ades** 52:12,13
  53:3
**adhesion** 36:8
  37:8,11 38:4
**adjourn** 3:19 4:4
**adjourned** 23:25
  24:2
**adjudicating**
  27:20
**adjustor** 18:13
**administrative**
  12:11,13,22,23
  28:21 41:3 59:17
  61:15
**administrator**
  19:8,12

**adv** 1:4
**advanced** 53:21
**adversary** 3:4,6,7
  3:11,14,17,19,21
  4:1,4,6,10 8:17
  24:22 28:17,23
  41:16,17
**adversely** 21:20
**affairs** 47:8
**affect** 20:11 21:20
  22:14,14 50:4
**agency** 26:11,13
  28:9 32:13,18,19
  33:19 46:4,10
  47:6 56:22 57:8
  57:16,18 59:4
**agenda** 3:1 8:9,10
  8:14,23 9:5,23
  10:23 16:6 23:24
  23:25 24:11 62:7
**agent** 18:13,20,23
  19:17 22:12 23:5
  30:25 32:15 33:1
  33:3,6,9,17 46:7
  47:7 56:24 57:19
  57:20,25 58:7,8
  58:19
**agents** 18:21
  22:17 57:10
**ago** 25:3
**agree** 12:5 22:3
  29:17 45:8
**agreed** 12:10
  41:17 45:6,8
**agreement** 11:12
  11:17 12:1,14,15
  12:21 13:14,22
  14:11,14,18 15:1
  15:6 28:2 30:24
  32:10,13,20,23
  36:3,7,9 44:23
  45:1,10,22,24
  46:1,2,3,5,17

47:12,23 48:19
49:20 55:24 56:12
56:18 57:24 58:17
58:22 60:10,12
**agreements** 28:4
38:1 59:6
**ahead** 10:10 31:20
**akin** 38:20 43:21
**al** 1:12 3:4,11,17
4:1 8:3 24:23
**alaluf** 48:19
**albeit** 55:15
**alexander** 7:21
**alix** 7:7
**allain** 42:17
**allegation** 42:16
47:1,20,22 48:22
48:23 49:1 50:5
59:2
**allegations** 25:17
27:15,18 37:10
38:4,6,7,11 42:9
42:11,25 43:3
44:2,4,5,9,12,13
55:9,14,21,23
58:21,25 59:15,15
59:23 61:1
**allege** 27:12 36:18
37:24 43:10
**alleged** 27:5 28:3
36:14,24 37:1,14
37:14,16,20,21
43:18 44:12,15,19
49:4 53:16,17,25
54:8,11 55:6,18
59:9
**allegedly** 39:19,23
53:21
**alleges** 38:2 52:6
56:1
**allow** 31:19
**allowed** 12:11,22

**allowing** 52:24
**alternative** 3:20
4:5
**alves** 7:4
**amended** 8:9,14
**american** 19:13
19:16
**ames** 26:10 48:5,5
48:14 49:9,12,19
**ami** 4:3 8:16
24:22 25:3 38:3
**amount** 12:11,24
40:22,23 53:23
56:13 60:15,20
**amounts** 35:23
40:10 52:2 56:14
**analogy** 49:25
**analysis** 40:17
52:20
**answer** 3:20 4:6
8:18 13:7 28:24
35:1 40:15 44:18
**answering** 34:17
**anticipate** 31:10
**apart** 51:18 55:10
55:17
**app** 51:19 55:3
**app.3d** 55:3
**apparatus** 50:16
**apparently** 18:7
**appeared** 20:2
**appearing** 46:6
**appears** 31:23
48:8 49:7 59:8,20
**appended** 42:3
**applicable** 44:1
**applied** 49:8 57:9
**applies** 45:8,9
**apply** 20:21 52:8
53:21
**appoints** 32:15
46:7 56:23

**appreciate** 21:2
24:9
**appropriate**
20:20
**appropriately**
59:16
**approval** 12:10,18
**approve** 13:6,20
**approved** 28:20
59:19
**approving** 15:16
15:18,23,25
**april** 62:7
**aptly** 52:17
**arcane** 21:2
**aren't** 31:25
**argue** 27:15,19
59:3
**argued** 28:16
53:14
**argues** 54:2
**argument** 25:23
37:7 46:5 55:20
57:23
**arising** 59:21
**arlene** 7:4
**arm's** 14:21
**art** 52:15,16
**ascertainable**
45:18 46:19 48:4
**ashcroft** 43:19
**asked** 29:8 34:21
40:13 44:18
**asking** 16:16
**asks** 43:22
**aspect** 21:2
**aspects** 44:17
46:18
**assert** 27:18 53:4
**asserted** 17:2
**asserting** 23:8
**assertion** 54:4
55:8

**asserts** 52:1,6
**assess** 41:24 44:4
**asset** 4:18,24
10:21 11:1 15:20
**associates** 4:19,25
10:22 11:3,18
**assume** 24:25
**assuming** 54:11
**assumption** 44:2
**atlantic** 42:20
43:2,4
**attached** 59:11
**attempted** 28:18
**attorneys** 6:3,14
6:21 12:7
**audio** 8:15,18,19
**authorities** 34:9
**authorized** 12:19
15:21
**automatic** 16:12
17:21 21:4,6,11
21:21 22:15
**available** 16:18,20
17:14
**avenue** 6:4,15
22:1
**aware** 43:16

| **b** |

**b** 2:21 27:17 29:9
32:14 34:24 41:22
41:23 42:25
**b.r** 58:13
**b.r.** 48:15 50:17
50:17 51:1 52:16
53:9,10,12 57:5
57:13,21 58:15
**back** 8:23 15:4
19:5 31:7 54:19
55:12 58:11
**background**
10:25
**bailment** 50:20,21
51:4,7,13,16,17

51:22
**bailments** 50:2
**bailor** 50:24
**baio** 7:5
**balance** 54:13
**balgobin** 53:12,12
**bank** 51:19,20
**banking** 51:15
**bankr** 48:16 51:2
52:16 53:9,10,12
57:14 58:14,16
**bankruptcy** 1:1
2:1,23 18:8,11
20:17 21:3,4,5,12
21:17 25:7 26:9
28:12 39:25 41:21
44:11 48:14 52:3
52:7,19,21 53:19
55:9 56:21 58:25
59:2,9 61:13,18
61:19
**bare** 27:16
**barred** 28:6
**based** 9:17 21:10
25:17 28:5 30:3
32:12 39:22 54:3
60:11 61:1,12
**basic** 21:3
**basically** 22:7
**basis** 9:7,11 19:5
39:4 53:22 55:10
55:13,18 56:6
**bear** 49:9
**beck** 6:18 13:10
13:12,12,13,18
14:3,10,14,17
15:8
**beef** 18:1
**began** 38:2
**behalf** 4:21 9:22
10:19 13:24 16:5
19:13 30:24 35:19

**believe** 10:2 15:17
24:24 29:18,20,23
30:1,10,14,16,20
30:23 31:3,10
32:2 41:6 45:7
47:10 49:17 50:1
55:7 62:7
**bell** 42:20 43:2,4
**beneficiaries**
45:18 46:19 47:12
**benefit** 47:5 54:19
57:11
**benjamin** 7:8
**berg** 52:12,13
53:3
**bernstein** 6:20
**best** 42:13
**better** 8:22
**bid** 11:9
**bidder** 11:16
**bidding** 15:3
**big** 37:20
**bite** 19:5
**board** 32:3 54:1
**bona** 28:14
**bound** 42:15
**brandt** 58:12
**brauner** 7:6
**breach** 25:19 26:5
27:8,25 41:20
60:19 61:3
**breeden** 52:12
**brenner** 53:7
**brian** 31:8,13,15
31:17 37:22 38:2
**brief** 8:18 26:2
**broe** 4:23 6:14
10:23 11:8,10,13
11:14,21,23 12:4
12:4,9,11,14,21
13:1,8,16,21,23
14:1,18,24

**broe's** 11:15,24
12:18
**brooks** 3:13
**brought** 61:14
**brozman** 7:7
**building** 51:19
**built** 30:18
**burden** 29:15,19
57:15
**burdens** 43:12
**burkley** 6:20
**business** 27:1
30:22 31:13 32:5
32:11 34:20 39:17
39:17,18 56:1
**butterfield** 7:8
**buy** 42:14
**buyer** 13:15,16,24
13:25

**c**
**c** 6:1 8:1 63:1,1
**calendar** 9:24
24:21
**call** 59:10
**called** 20:15 32:9
44:25
**candy** 55:2
**can't** 21:7,10
**capacity** 19:17
**card** 34:2,13
**careful** 23:7 52:9
52:9
**carr** 31:8,13,15,18
38:2,25 39:24
**carried** 9:8
**carr's** 37:23
**carter** 48:10
**case** 1:3,4 21:8,12
21:18,23 26:22
28:12 29:8,21
46:16 47:6 48:14
49:9,10,20 51:23
52:3,7 53:5,19

54:2 55:9 56:21
57:17 58:3 61:19
**cases** 35:1 48:13
49:5,9 52:17
53:11 57:6,22
**cash** 11:13 46:13
57:4
**catherine** 7:12
**cause** 22:10,11,13
42:19 44:21 48:24
49:3 56:3,4 60:6
60:17
**causes** 24:25 25:4
25:14 44:1,9,20
53:1 61:9,11,13
**caution** 52:10
**center** 52:20
**cert** 42:7 48:12
**certain** 31:8,11
38:20 49:8 56:14
**certainly** 38:5
**certified** 63:3
**chambers** 10:15
12:17 62:1
**chapter** 31:24
**charged** 55:1
**chicago** 48:10
49:20
**chose** 18:8
**chowaiki** 52:15,16
53:5
**chris** 7:3
**cir** 42:1,6 48:6,12
52:13
**circuit** 28:8 48:1,2
52:4,14
**circumstances**
8:17 9:24 26:2
44:14,19 45:16
47:16 48:3 56:2
60:17
**circumvent** 28:13

[cite - consolidation]                                                    Page 5

cite   60:23
cited   28:10 52:17
  53:11 54:2 57:6
  57:22 58:3
citing   48:7 53:3
city   42:6 51:19
civil   41:22 42:24
  44:10
claim   4:12 12:11
  12:13,22 16:11,14
  16:18 17:2,16
  18:25 19:4,4,16
  19:19,25 20:2,7,8
  20:10,18 21:9,10
  22:8,18 23:8,9
  25:19 26:7 27:23
  28:4,5 43:7,8,10
  44:6 53:6 54:3,4,5
  59:18 60:13,15
  61:4,17,17
claimant   54:7
claiming   57:16
claims   3:8 4:13
  9:6,7,7,9,11,16,19
  12:13,23 13:2
  17:1 19:7,11,12
  27:9,11,25 28:21
  29:24 41:3,17
  60:3 61:16
clarify   14:11
class   31:19
clayton   4:19,25
  10:21 11:3,17
  12:3
clayton's   11:5
clear   23:11,12
  33:12 46:11 55:7
  57:24 58:4,21
  59:20
clearly   42:11 52:5
client   31:8 33:4,6
  33:21,24 34:1,3
  34:14,18

clients   30:15,17
  30:19,21 31:3
  32:25 33:3 34:21
  39:7,15,16 41:7
clients'   33:12
  39:11
closed   22:1 31:17
closer   49:5
closing   12:2
club   55:3
code   61:18
coercion   36:20
  55:22 56:3
collect   34:2
collected   35:15
collusive   15:3
colorado   11:7
come   8:23 19:5
  30:4 40:19 55:12
comes   21:5
comingle   49:24
comingled   27:4
  58:2 60:9,10
comingling   47:14
  48:18,22
commencement
  39:24 53:18
commentary
  50:11
commerce   49:6
commercial   39:1
commission   39:9
  56:14
committee   12:8
commodities
  54:21
common   21:14,17
  43:16 57:2
company   11:18
  18:7 19:13,14,16
  20:16 21:5 50:16
  50:17 51:25 52:15
  52:16 61:6

compelling   39:3
complaint   3:7,21
  4:7,10 23:14
  24:25 25:5,18
  26:4 28:1,23
  29:23 30:4 32:14
  35:13 36:14 37:3
  39:23 41:24 42:3
  42:4,4,17,24 43:6
  43:18 44:25 45:2
  45:12,23 46:11,22
  47:21,22 48:21
  54:12 55:21,23
  56:1,16 58:22
  59:5,7 60:12 61:1
  61:10,14
complaints   8:17
complaint's   42:8
  42:11
complete   12:20
completes   62:7
compliance   4:16
compliant   32:12
  41:1
comply   58:24
concede   28:6
conceivable   43:11
conceivably   48:25
  51:3
concerned   17:1
  50:20 60:6
concerning   8:19
  37:8
conclude   53:19
  55:22
concluded   48:2
  62:13
conclusion   42:16
  59:13 60:11,25
conclusions   42:18
  44:3
conclusive   28:11

conclusory   27:16
condition   13:22
  15:11 59:25
conditioned   12:2
conditions   46:15
conducted   32:10
confidence   37:23
  37:24
confidential   38:20
confirm   25:2
  61:11
confirmation   9:13
confirmed   42:22
confused   33:14
congregation   61:4
connecting   14:1
connection   24:2
conscience   32:8
consent   10:15
  11:22 12:23 41:3
consider   27:20
  45:3
consideration
  42:2
considerations
  52:8
considered   31:9
  32:3
considering   41:23
consigned   50:4
consignee   50:12
consignment   50:5
  50:6,13
consignments
  50:2
consignor   50:9
consistent   54:1
  58:2,16 62:2
consolidated
  61:15
consolidation
  61:19

**constituting** 44:14
**constructive**
25:17 26:6 27:11
29:25 30:12,15,25
36:19 37:4 38:13
39:4 40:9,18 52:2
52:7,11 53:15,20
54:7,17,23 55:2,8
55:11,14 56:6,10
56:20 58:6,23
59:3,9,22 60:3
**contacted** 11:8
**contain** 43:6
**contemplated**
47:13
**context** 43:14
44:5 58:25 59:3
**continue** 14:21
30:21
**continued** 9:9
32:5
**contract** 25:19
26:11 27:25 28:5
31:16 34:22 36:8
37:8 38:4 41:20
47:13 50:22 61:3
**contractor** 58:19
**contractors** 46:2
55:25
**contractual** 35:13
51:9
**contractually**
33:24
**contradicted**
42:12
**contrasted** 48:13
**control** 27:3 33:1
33:7,8,9,10,13,15
33:16 34:4,5,11
34:12,19 47:23
57:19 58:1
**conversion** 26:8
27:24 28:4 41:19

60:7,13,18 61:4
**convert** 26:12
**convey** 54:19
**copy** 12:16 61:25
**corp** 8:3 24:23
42:1,6,20 43:2,4
51:19
**corporation** 1:8
1:15 3:5,12,14,18
4:2,21
**correct** 10:7,9
16:23,24 17:4
18:17,20,23 19:9
20:8 24:12 39:20
39:25
**correctly** 60:23
**couched** 42:16
44:8 59:12
**counsel** 10:2,3,5
10:14 24:16 38:25
**count** 25:15,16,19
38:13 41:20 52:1
**country** 52:4
63:21
**counts** 8:16 26:4,7
28:23 41:18,19
**couple** 25:3
**course** 49:15 50:5
53:6
**court** 1:1 2:1 4:16
8:2,20 9:2,17,25
10:3,12 12:10,15
12:18 13:6,8,11
13:14,19 14:5,8
14:13,15,23 15:9
15:15,19,24 16:3
16:16,19,25 17:5
17:8,10,23,25
18:12,18 19:1,3
19:10 20:7,23,25
21:7,14,16,19,21
22:6,25 23:7,18
23:23 24:10,15,19

25:11,13 26:3,9
27:8,10,20,23
28:19,20,22 29:1
29:3,11,13 32:9
32:22 33:4,6,9,15
33:19 35:3,7,10
35:21,24 36:2,6
36:10,13,17,24
37:1,9 38:8,10
39:19,22 40:3,5,7
40:16 41:1,8,11
41:15,24 42:8,13
42:15,22 43:1,15
43:17,20,25 48:7
48:7,16,21 52:1,8
52:23 55:4 59:19
61:23 62:5,9,12
**courtroom** 8:4
**courts** 47:16 48:1
49:21 52:4
**court's** 42:2 61:12
**coverage** 16:21,22
16:25 17:1,14
19:18,22,24 20:10
22:12,18 23:4
**covered** 59:22
**create** 45:14,16
60:1
**created** 30:24
55:18
**creates** 51:17
**creating** 28:14
50:1 51:8,16
**creation** 45:10
**credit** 34:2,13
**creditor** 27:6
28:13 31:4 47:19
51:17,23 52:5
60:1
**creditors** 9:10
12:7 26:14,19
31:20 50:7,8
52:21,25

**cross** 47:2
**crozier** 3:13 6:7
8:12,13,24 25:12
25:24,25 29:2
37:5,6,13 41:13
61:21,21 62:3,6
62:11
**ct** 51:20
**current** 14:18
**customer** 30:3,6
33:23 34:1,2,12
34:17 39:7
**customers** 47:3
51:6 56:12 57:5
58:11 60:14
**customers'** 31:2
**cuts** 8:15,18,19
**cutter** 48:10 49:13
49:20
**cutting** 14:15

### d

**d** 2:22 8:1
**date** 39:2 40:2,6
40:14,19 63:25
**david** 7:22
**day** 62:1
**days** 35:6 40:20
47:14 51:11 56:14
60:15,20
**de** 4:18,24 10:20
11:1
**dead** 37:6
**deadline** 10:16
**deals** 20:16
**dealt** 47:24 50:24
54:12 59:18 60:2
**debt** 59:23,24
**debtor** 1:10 6:3
14:1 18:24 19:5,6
20:1,3 21:8,20
22:14 23:2,8,9,15
27:6 31:4 37:6
41:16 47:19 51:17

52:19 53:1 60:9
**debtors** 3:6,8 4:4
  4:9,12,23 5:4 8:14
  8:19,25 9:4,6,8,22
  10:5,19 11:1,2,7
  11:15,20,25 12:3
  12:5,9,19 13:1,6
  16:6,14 17:11,13
  17:16,22 18:1,21
  21:25 22:25 24:1
  26:1,21 27:1,3,13
  27:19,22 28:5,16
  28:18 29:19 41:6
  53:4 59:10 60:23
  61:22
**debtors'** 8:15 9:6
  10:24 13:4,20
  24:24 25:21 26:24
  28:3 41:11
**debtor's** 52:2,21
  58:5
**decide** 23:12
**decided** 18:10
**decisions** 52:14
**declaration** 3:13
  25:16 44:22 45:4
  45:15 46:10
**declares** 44:24
**deducted** 56:13
**deemed** 12:19
  58:18
**deems** 50:11
**defendant** 29:15
  43:11,23 44:17
**defendants** 1:16
  41:16
**defendant's** 49:14
  49:16
**defense** 60:21
**definite** 45:17
**definitely** 30:6
  31:25

**degree** 30:16
  38:18
**delineated** 46:22
**deliver** 33:25
  58:10
**delivered** 34:6
  39:7,9 51:4,5
**delivery** 34:7,8
  45:20 46:21,24
  47:4 50:21
**demand** 51:18
**denial** 17:18
  19:18,22 22:12
  23:4
**denied** 16:17
  17:15 19:23 22:17
  29:6 32:7 42:7
  48:12
**denominated**
  45:25
**denver** 11:6
**denying** 20:9
**department** 26:10
  48:5,5
**dependent** 39:9
**deposit** 51:15,17
  51:21
**deposition** 29:9
**depositor** 51:22
**derogation** 25:7
**described** 59:1
**detail** 42:24
**determine** 26:21
  43:24 44:6 49:22
**determines** 21:20
**didn't** 20:11 22:9
  24:20 34:19 36:2
  37:10 40:8 41:5
**didonato** 6:10
  16:4,5,24 17:4,19
  17:24
**different** 22:6
  37:18 52:7

**digest** 40:12
**direct** 18:25 19:4
  19:19,22 20:10
  22:11,13,18 23:3
  48:15 57:12,13
**directed** 47:11
**directions** 50:24
**directly** 20:10
  23:2,15 30:12
  35:15 49:6
**disallowance**
  61:17
**discovery** 29:8,16
  43:12
**discussed** 40:23
  46:5 55:20 57:23
**discussing** 58:16
**discussions** 12:7
**dismiss** 3:6,7,14
  4:10 24:24 26:3
  27:8,10,21,23
  28:22 29:6,7,14
  29:20 32:7 41:17
  43:25 58:4 61:9
**dismissed** 25:6
  26:7 27:24 28:5
  48:21 49:4 61:12
**disparity** 38:23
**dispositive** 45:5
  47:10
**dispute** 25:8
**dist** 53:7
**distinct** 31:19
  49:9
**distinction** 49:10
  49:11,16
**distinguished**
  48:14
**distribution** 53:2
**district** 1:2 26:9
  48:7,8,20,21
**docket** 23:19

**doctrine** 28:7
  60:23
**document** 3:9
  4:20,25
**documents** 42:3
  42:12
**doesn't** 17:25
  19:5 20:21 22:13
  23:1 29:15 34:24
  35:14
**dollars** 17:3
**dominion** 38:16
**don't** 10:13 13:9
  15:15,17,23 17:19
  17:24 18:22,23
  19:5 20:12,25
  22:12,20 24:1,10
  24:11 28:6 32:18
  35:1
**doubt** 51:12
**drafting** 23:14
**drain** 2:22 8:3
**draw** 42:9 43:15
**due** 51:11 56:15
  60:16
**duplicative** 41:4
**duress** 36:20 37:2
  37:8,10 38:5,11
  39:1 55:21 56:2
**duties** 58:20
**duty** 30:24 38:5
  54:18 56:19 58:8
  58:10,23,24 59:21

| e |
| --- |

**e** 2:21,21 6:1,1 8:1
  8:1 29:22 30:8
  32:2,4 34:22
  36:11,22 37:15
  38:17 49:6 63:1
**e.d.n.y.** 53:10,12
**ear** 58:12
**earmarks** 36:19

ecf 3:15,21 4:7,10 4:13,16,21 5:2,2,4 10:25 12:16 16:8 16:9,15
economic 28:6 60:23
ecro 2:25
ed 50:17
effect 21:5
effective 50:7
efficient 28:21
either 11:21 19:21 20:2 23:2,15 35:18
elected 11:24
elects 35:18
element 21:17
elements 42:19 43:25 44:5 45:11
email 9:20 10:5,14 31:22 40:2 61:25
emails 31:7 59:11
empirically 38:19
enable 47:25
encompassed 59:16
engage 48:25
enriched 52:19
enrichment 25:20 54:18
ensure 30:21
enter 11:12 13:20 22:9 61:8
entered 11:25 23:19 38:3
entirely 27:24
entitle 43:19
entitled 44:2
entitlement 44:7
entity 14:19
entry 13:21
equipment 58:13

equitable 30:16 52:7
equities 52:20,23
equity 32:8
erickson 43:1
erika 7:17
es 55:2
esq 3:13
essence 54:22
essex 61:6
establish 54:23 55:10
established 45:12 47:17,19
establishing 57:15
estate 4:23 6:14 10:23 11:8 13:8 26:24 50:15 52:2 58:5
et 1:12 3:4,11,17 4:1 8:3 24:23
evaluating 43:14
event 45:8 49:17 55:11
events 13:4
everybody 62:11
everyone's 22:2
evidence 30:1 41:25
exactly 20:14
example 31:12
exceeded 16:22
excellent 13:5
excess 16:25 17:1
excuse 10:23
execution 37:25
exercise 11:5
exercised 27:3
exhausted 16:22
exhibit 59:12
exist 48:4
existence 54:24

expense 12:5,13 12:23 28:13,21 29:15 59:18 61:16
expenses 11:15
experience 43:15
experienced 38:24
explicitly 28:2
exposed 34:25
express 25:15,16 26:5 27:8 30:23 32:16,19 44:22 45:6,11,25 46:8 46:18 47:9,18 48:3,10 49:22 50:22 55:16 56:24
expressed 45:4 48:18
expressly 31:6 44:24 46:22 56:16
extend 10:16
extends 57:7
extension 3:20 4:5 4:15 10:6
extent 15:25 19:15 22:10 25:18 25:22 26:6 35:25 37:22 41:18 44:8 52:18 60:20
extraordinary 27:14
extremely 52:9 59:25
eychaner 45:21 47:6

**f**

f 2:21 42:14 45:10 63:1
f.2d 48:11
f.3d 52:13
f.3d. 42:1
face 42:3 43:7,9

fact 21:1 26:23 29:7 37:13 38:7 46:4 49:4,22,23 57:3 59:11,14 60:21
facts 18:22 19:23 30:13 39:3 42:2 43:6,10,16 50:6 56:4,17
factual 42:8,16,25 43:3 44:3,5
fai 18:19
fail 6:8 9:3,4,21 10:1,9,10 18:16 18:19 19:2 24:7,7 27:16
failed 27:12
failure 28:3 58:24 59:23,23
fairly 21:2,14,17 23:19
false 38:22 39:19
far 16:25 50:20 51:6 55:7 60:6
favor 42:10
favorable 49:18 50:3
favors 49:11
feasibility 41:24
february 10:25 31:22
fed.appx. 48:6
federal 41:21 42:23 44:10
feel 24:6 29:6 30:12
fetman 53:10
fide 28:14
fiduciary 30:24 38:5 48:23 49:1 53:16 56:7,19 58:8,19

**fifth** 6:4
**file** 4:15 53:6
**filed** 4:20 9:12
  10:23 11:1,7,10
  12:15 16:8,9,11
  16:15 18:8 21:7
  30:4
**files** 21:5
**filing** 50:10
**finally** 27:22 44:4
**financing** 50:10
**find** 33:25
**finding** 46:18
**fine** 8:24 9:17,25
  10:11 14:25 15:7
  15:24 52:15,16
**finish** 37:9
**finished** 28:25
**fire** 50:16 51:24
**first** 8:14,23 9:5
  11:5 16:21 21:3
  23:24 24:11 25:22
  29:21 32:18 40:2
  43:25 44:21 53:15
  55:13
**five** 25:19 30:17
  41:20
**focuses** 52:20
**focusing** 14:24
  25:13 33:15
**following** 21:2
  30:9 45:11,13
**footnote** 51:14
**foregoing** 63:3
**form** 11:11 26:15
  32:16 53:17
**formal** 55:16
**formally** 16:12
  61:24
**format** 36:11
**formulaic** 42:18
**forth** 12:14 27:7
  27:17 31:7 35:12

41:19 44:25 56:16
**forward** 9:11 16:8
**found** 60:7
**four** 25:16 41:18
**fours** 50:18
**fraction** 53:22
**fraud** 31:25 36:20
  44:10,12,14,15,17
  44:19 53:1 55:6,9
  59:13
**fraudulent** 30:5,6
  39:23 53:2
**free** 24:6
**frustration** 20:24
**fulfilled** 50:23
**full** 9:8
**funds** 27:4 33:8
  34:2,8,12 39:7,8,8
  47:10,13,15,20,23
  51:21,21 56:11
  60:8,14,20 61:2
**further** 41:10,13
**future** 14:20 31:9
  59:12
**fvts** 50:15

## g

**g** 8:1 46:1 58:17
**garrett** 6:8 9:4
  10:9 18:19 24:7
**geltzer** 53:11
**general** 49:7
  51:21,22 61:17
**generally** 24:5
  25:18 51:14 57:10
**give** 23:20 24:5
  26:15 47:8 53:20
  56:19 58:23 59:13
  59:21 62:1
**given** 8:17 24:20
  26:2 33:10 49:23
  55:23 58:6 59:14
  60:11,25

**gives** 47:23
**glenn** 58:15,15
**go** 8:10,22 10:10
  17:12 20:5,11
  21:19,21 22:3,16
  22:19 23:2,5,12
  33:25 51:21 55:13
**going** 9:10 15:2
  16:8 20:16 22:25
  36:21 38:10
**good** 8:2,12 16:4
  17:10 24:19 32:8
  47:13 61:10
**goods** 39:6 49:13
  50:4 51:3
**gotshal** 6:2 8:13
  9:4 10:19 16:5
  24:8 25:25
**governing** 55:8
**grant** 6:22 9:19
  10:12,15 12:10
  13:19
**granted** 10:5
  29:14
**granting** 61:8
**gravitational**
  52:20
**greenfield** 48:15
  57:12,13
**gritty** 41:6
**gross** 45:21 51:23
**ground** 55:6
**grounds** 53:14,20
  55:5
**group** 4:23 6:14
  10:23 11:8 52:12
  52:13
**guaranteed** 31:17
**guess** 36:20 40:7
  44:18
**guided** 50:1
**gulf** 6:22

**guy** 37:20,20

## h

**h** 7:22
**hallmarks** 27:2
**hand** 8:25 57:15
**handle** 20:17
**handled** 20:20
**happen** 15:2
  22:23
**happy** 8:10 13:7
  28:24
**hartigan** 55:2
**haven't** 25:7
  36:24 37:1,21
**hear** 25:21
**hearing** 3:1,2 9:23
  17:8 25:2
**heinold** 54:20
**held** 46:25 47:13
  47:17 51:5,7 60:8
**heller** 53:7
**help** 34:24
**hertz** 42:6
**high** 30:18 38:18
**hire** 22:19 23:12
  23:21
**hit** 39:15
**hogan** 6:13 13:13
**hold** 31:10 52:25
**holding** 51:9
**holdings** 1:8,15
  3:5,12,14,18 4:2
  4:21 8:3 24:23
**holohan** 7:9
**hon** 2:22
**honor** 8:12,18,25
  9:3,21,22 10:8,9
  10:18,23 13:3,10
  13:12,18 14:3,10
  14:17 15:14 16:2
  16:4 17:19 18:16
  18:19 24:7,14,18
  25:10,12,24 26:19

27:22 28:8,17,24
29:4,5,12,17,20
29:25 30:10,12
31:6,12,15,17,22
31:24 32:6,21
33:2 36:7 37:3,5
37:12 38:9,12,13
39:3,5 40:1,11
41:10,13 62:3,4,6
**honored** 22:7
**hoo** 7:10
**housekeeping**
61:10
**howard** 7:14
**huge** 39:15
**hurt** 19:6
**hyde** 5:25 63:3,8

**i**

**i.e.** 46:19 50:12
58:11
**icon** 58:12
**idea** 30:8
**identifiable** 54:24
56:8
**identify** 8:6 43:25
44:2
**ii** 3:7
**iib3** 36:6
**illinois** 28:7 36:19
45:7 48:2 50:3,10
50:19,20 51:15
54:17 57:2,10,17
58:18 60:24
**immediate** 48:17
**immediately** 35:4
47:11
**implicated** 26:19
**implied** 46:3
50:22
**important** 26:14
**importantly** 22:3
**impose** 52:1

**imposed** 54:17
**imposing** 40:9
54:18 55:18 59:3
**imposition** 25:15
25:17 27:11,14
52:6 53:15 56:9
56:20
**impressed** 58:6
**impression** 29:21
**improper** 27:18
**incantation** 28:10
**including** 22:2
32:23 34:9 49:9
52:4,15 53:11
55:24 59:5
**incorporated**
32:11 42:4,12
44:11 45:2 59:6
**incorporates**
41:21
**increase** 12:8
**incur** 29:15
**independence** 5:1
**independent** 20:8
46:2 55:25 58:19
59:21
**indicated** 10:22
11:8 12:17 31:13
**indirectly** 23:2,16
**indiscernible** 9:1
12:25 14:11,12,12
14:17,18,19,20,22
15:8 17:21 18:5
18:25 22:24 26:11
26:12,13,14,16,18
26:23 27:18 28:2
28:9,10,16 29:24
34:9 35:18,20,22
36:1,18 37:4
38:15,16,19
**inducement** 53:2
**indulge** 30:11

**industry** 29:23
34:21
**inequitable** 54:16
**infer** 43:17 46:23
**inferences** 42:9
**inferred** 46:13
**information** 30:3
**initiated** 52:22
**instructed** 20:6
**insurance** 16:18
16:20 17:14 18:7
19:14,16 20:15,16
20:18 21:9,11,19
21:22,24,25 22:4
22:4 51:24 61:6
**insurer** 17:12,15
17:17 18:2,6,13
18:14,21 19:4
20:9 22:8,11,16
22:18 23:4
**insurer's** 23:4
**intend** 8:18 26:2
**intended** 45:16
46:23
**intent** 45:14
**intentionally** 30:7
30:20
**interest** 4:19,24
10:21 11:3,10,17
11:20,23 12:1
13:3 50:4,9,13
54:9 60:8,22 61:2
**interested** 6:14
**interests** 28:11,15
60:2
**intermediate**
54:13
**interpreted** 44:15
**interpreting** 48:2
50:18
**investors** 52:12,13
**invoices** 41:4

**iqbal** 38:6 43:20
45:13 47:2 55:22
**irritating** 59:25
**issue** 15:25 17:20
17:20 18:4 26:14
26:17,22 29:21
36:15 44:9 47:10
48:8 51:6 53:23
**issued** 34:13
**issues** 41:4 54:10
**item** 8:14 9:1,5
10:1,20 16:6
**it's** 8:12,21 9:5
18:23 20:21 21:2
21:9,17 22:1,18
25:21 26:22 32:11
32:14 34:20 36:14
38:12,13 39:15,18
40:23,24,24 41:1
48:7 51:23 58:21
62:2
**i'd** 38:14,14
**i'll** 8:6 15:9,11
16:11 30:11 55:12
59:10
**i'm** 8:9 13:6 14:24
15:25 18:16,19,21
18:22,24 19:20
21:1 22:9,22,25
24:3,18 28:23,25
29:13 33:2,14,15
34:17 36:21 39:21
**i've** 25:1 34:20
54:2 58:3 60:7,11

**j**

**j** 7:9,19
**jacqueline** 4:20
6:9 10:18 14:6
**jan** 48:20
**jennifer** 3:13 6:7
7:16 8:13 25:25
37:6 40:22 61:21

**john** 6:18 13:12
**joint** 4:3
**judge** 2:23 8:2
  52:18 53:4
**judgment** 50:8
**judicial** 42:5
  43:15
**julie** 5:1 6:11 16:7
**justify** 40:9 56:19

**k**

**karcher** 48:10
  49:13,20
**kept** 50:25
**key** 12:17
**kim** 7:10
**kind** 31:3 34:18
  34:20
**know** 8:5 15:15
  18:22,23 20:12,15
  20:25 22:12,20
  23:14 24:1 33:21
  34:17 39:5 40:20
  40:22
**koppel** 42:1
**kraemer** 6:25
  24:14,16,18 25:10
  29:3,4,12,17
  32:21 33:2,5,7,12
  33:18,20 35:5,8
  35:12,22,25 36:5
  36:7,11,13,16,18
  36:25 37:1,3,12
  38:8,9,12 39:21
  40:1,4,6,11,17
  41:2,10
**kraemer's** 37:7
**kramer** 61:25
  62:4

**l**

**l** 3:9
**labajo** 42:13
**labels** 42:18

**labov** 7:11
**laid** 56:18
**language** 28:11
  30:23 32:18,19,23
  35:14 36:3 49:21
  49:22 51:8
**large** 39:2
**larges** 37:17
**late** 24:17
**lauren** 7:5
**law** 4:15 10:16
  19:21 20:13,21
  21:1,3,4 35:18
  45:7,7 48:2 50:1,2
  51:15 52:11 54:2
  54:17 55:8 57:2,2
  58:3,18 59:9
  60:11
**lawfully** 31:16
**lawyer** 22:19,19
  22:21 23:12,20,21
**laying** 32:24
**leaves** 34:25
**ledanski** 5:25 63:3
  63:8
**lee** 7:19
**left** 24:12
**leg** 54:9
**legal** 41:24 42:16
  44:3 63:20
**leibzeit** 50:15
**length** 14:22
**letter** 19:11
**let's** 37:9
**level** 43:4
**lexis** 48:9,20 51:1
  53:8,9 57:5,22
  58:13
**lfd** 48:4
**liability** 57:21
**lie** 48:24 55:11
  60:13,18 61:4

**lift** 21:21 22:3,15
  22:22 23:1
**lifted** 19:15 21:24
**lifting** 17:16 19:6
  22:10
**light** 29:7 30:4
  42:23
**likewise** 27:10
**limitations** 51:8
**limited** 42:2
**limits** 16:20
**line** 10:2 14:9
  15:12 37:6 43:10
  47:2
**list** 10:20 57:12
**literally** 16:20
**litigation** 20:1
  43:13 59:17
**little** 37:20
**llc** 4:19,25 10:22
  11:3 58:12
**llp** 6:2,13
**logging** 24:16
**long** 19:4
**longer** 20:19
**longest** 24:21
**longstanding**
  37:15 38:17
**look** 20:25 23:19
  26:15,20 27:25
  40:1 49:5 62:1
**looking** 61:3
**lord's** 48:11 49:19
**loss** 28:6 60:23
**losses** 52:24
**lot** 8:5 11:6 12:3
  14:20,25 21:22
  39:17,18
**lotiempio** 7:12
**lovells** 6:13 13:13
**lower** 48:7
**lowest** 54:13

**lp** 42:14
**lutz** 61:6

**m**

**macron** 7:13
**magaliff** 7:14
**magdalena** 7:23
**mahkamova** 7:15
**making** 47:3
**maley** 48:11
**mall** 10:2
**management** 19:7
  19:11 57:12
**manages** 19:12
  47:8
**manges** 6:2 8:13
  9:4 10:19 16:5
  24:8 25:25
**manner** 20:18,20
  57:19
**mar** 51:19
**march** 2:5 3:2
  61:7,13 63:25
**marchfirst** 51:1
  57:5,21
**marcus** 4:20 6:9
  10:8,11,18,18
  14:4,6,6 15:9,13
  15:17,20 16:2
**margins** 39:5,6,11
  39:12
**marilyn** 7:13
**marine** 51:24
**marines** 7:16
**market** 38:23
**marketers** 49:6
**marketing** 34:15
  34:16 46:17
**marketplace**
  29:22 30:8 31:18
  32:2,4,10 34:22
  35:17 36:11,22
  37:15,17 38:1,17
  45:1,10 46:15

| | | n | 42:5,23 60:16 |
|---|---|---|---|
| 54:1 55:24 56:18 57:24 58:22 | million 17:2,3 37:19 | | 61:24 |
| martin 54:20 | mind 44:13 | n 6:1 7:18 8:1 63:1 | notified 51:11 |
| match 11:19,22 11:24 | mineola 63:23 | n.d. 48:16 51:2 57:14 58:14 | notify 56:15 notwithstanding |
| materials 34:16 | minimis 4:18,24 10:21 11:1 | n.d.ill.2013 58:16 | 8:21 |
| matter 1:6 8:23 19:21,23 20:13 21:1 23:24 24:11 25:4 28:12 45:17 46:12 49:5 59:8 | misconduct 43:18 59:15 | n.d.n.y. 53:8 | nov 53:8 |
| | misinformed 30:7 | n.e. 54:21 | novel 29:21 34:20 |
| | misrepresentati... 53:17 54:8 55:18 59:10 | n.e.2d 45:21 55:3 60:4 61:5 | np 11:3 nudge 43:10 |
| | | name 23:8 | number 9:7,8 23:24 37:18 40:20 41:7 |
| matters 3:1 8:22 23:25 24:1,2,6 42:5 61:16 | mistake 36:20 | national 20:21 51:19 | |
| | mistaken 30:6 32:1 38:21 | nationwide 20:22 | numerous 30:8 52:14 |
| maxwell 50:25 | moment 37:7 | nature 59:13 | ny 2:3 6:5,16 63:23 |
| mazza 48:19 | money 22:21 31:1 31:2 33:13 35:4,5 51:6,10,13,18 53:21 57:7 | necessarily 54:14 | |
| ma'am 24:17 | | necessary 59:14 | o |
| mean 16:20 19:10 33:2 36:2 39:15 | | need 10:13 15:17 15:23 23:13 27:25 42:13,24 | o 2:21 8:1 63:1 |
| meaningful 49:17 | monies 39:13 | | object 17:16 |
| means 21:5 | month 10:17 | | objected 9:7 |
| mechanisms 48:25 54:13 | months 15:5,5,6 | needs 34:22 50:9 52:10 | objection 3:9 4:12 4:23 5:4 9:6,14,14 9:18,19 10:6,22 10:24 11:10 12:4 12:18 13:3 15:21 15:22 16:15,17 61:17 |
| media 50:25 | morabito 7:17 | negligent 32:1 | |
| megacorporation 36:22 | morales 28:9 | negotiate 15:6 | |
| member 11:18 | morally 44:15 | neither 50:2 | |
| membership 4:19 4:24 10:21 11:2,9 11:11,16,22,25 12:21 13:2 | morning 8:2,12 16:4 17:10 26:1 | nerville 7:18 | |
| | motion 3:6,6,14 3:19 4:4,9,15 5:1 5:2 8:15,20 10:1 13:20 17:12 21:7 22:6 24:24 25:6 25:14,21 27:21 29:5,6,14,18,20 41:16,23 42:25 43:24 44:8,21 58:4 61:8 | new 1:2 6:5,16 15:6 26:10 29:22 42:6 50:1 | obligated 31:16 33:25 35:8 |
| | | nichols 11:4,20,24 11:25 12:20 | obligation 48:17 60:19 |
| member's 11:19 | | nitty 41:6 | obtain 29:10 |
| memorandum 4:15 10:16 | | non 12:12,22 | obtaining 34:5 |
| merchandise 32:17 46:9,14,25 56:25 | | normal 51:20 52:11 | obviously 15:2,4 59:24 |
| | | normally 33:16 | occurred 53:18 |
| mere 43:17 47:6 | motions 16:7,7,10 16:12,16,17 32:7 | note 16:11 24:16 36:19 47:20 49:19 | oct 53:9 |
| merely 49:15 56:3 | | | october 31:12,21 51:2 |
| message 31:13 | moves 21:18 | noted 45:2 53:5 56:21 | |
| messages 31:9 | | notice 3:1 4:18,18 10:20 11:1,7,21 13:3 24:9 29:9 | offer 11:14,19,21 11:22,24 12:9 |
| mid 51:19 | | | |

[offered - phone]                                                          Page 13

**offered** 41:25
**officer** 11:13
**official** 50:11
**officially** 31:23
**oh** 13:11
**okay** 8:2,20 9:2,17
  9:25 10:12 13:8
  13:11,14,19 15:9
  15:13,19 16:3,19
  17:5,10 18:18
  21:13,15 22:24,25
  23:6,17,18,22,23
  23:23 24:10,19
  29:1,3 32:9,22
  33:18,20 35:3,21
  36:2,16,17 38:8
  40:16 41:8,11,15
  61:23 62:5,9
**old** 51:23 63:21
**omnibus** 3:8 4:12
  9:6 62:8
**once** 30:16 33:23
  34:2,12 52:21
**ones** 25:5
**online** 35:15
**operating** 8:4
  11:17 48:4
**operation** 60:10
**operative** 36:3
**opinion** 32:4 48:8
  48:14
**opportunity** 24:9
**oppose** 52:9,11
**opposed** 17:3
  18:21 25:23 54:25
  56:4 60:3
**opposite** 37:14
  38:7
**opposition** 3:8 4:4
  4:9 9:14 27:19
**opt** 12:12,22
  59:18

**oral** 25:22 46:5
  55:20 57:23
**order** 4:16 8:10
  9:15,20 10:13
  15:16,17,23 21:23
  22:10 23:1,11,13
  23:18 25:8 26:21
  46:25 61:8,10,22
  61:24
**ordered** 14:8
  15:12
**orderly** 28:20
**orders** 33:23
**ordinary** 26:12
**original** 5:1 16:8
**ostensibly** 46:25
**otis** 51:23
**outcome** 13:5
**outright** 38:21
**outside** 56:20
  58:24 59:9
**overcome** 57:7
**overhanging**
  43:13
**owed** 52:3
**owner** 57:4
**ownership** 50:13

**p**

**p** 6:1,1 7:14 8:1
**p.c.** 6:20
**pa** 6:23
**packaging** 34:16
**page** 40:1 51:13
  57:6 61:7
**pages** 48:9,20
  51:1 53:9 57:22
  58:14
**paid** 35:23 56:11
  57:4 60:14 61:2
**pankaj** 38:19
**papasan** 42:16
**papers** 25:23 27:7
  27:15

**paragraph** 27:25
  32:12,14,20,24
  35:13 36:4,6
  37:14 38:3,13,15
  45:10 46:1,6
  56:23 58:17
**pardus** 43:1
**parking** 11:6 12:3
  14:20,25
**part** 11:14 26:23
  27:13 37:4 51:4
  54:4
**participation** 11:4
**particular** 24:6
  57:9
**particularity**
  44:14,16
**particularly** 29:7
  34:25 48:9 54:10
  55:23
**parties** 32:10
  44:23,23 45:4,7
  45:14,22,24 46:2
  47:17 54:14 55:15
  55:25 56:7 57:17
**parties'** 26:16
  41:20 47:22 48:18
  49:20 55:17 58:17
  59:6 60:10,12
**party** 6:14 18:5,6
  18:12 19:7,8,12
  21:21 28:11 34:6
  57:3,16
**pass** 50:14
**passed** 24:15
**passes** 18:7
**passion** 61:5
**patrick** 7:9
**paul** 7:11
**paulino** 53:8
**pay** 18:2,11 35:4,5
  35:14 36:1 48:17
  56:13 59:23,24

60:19
**paying** 22:22
**payment** 34:13
  60:15
**payments** 31:14
  31:17,21,21 32:16
  46:8,24 47:3,4
  51:9 56:25 57:25
  58:11
**pending** 61:15
**penn** 50:25
**people** 8:6 20:16
  55:2
**percent** 11:4
  12:24 39:10,10,10
  39:12
**perfect** 15:13 50:9
**perfectly** 8:24
**perform** 28:3
**performed** 45:19
  46:21
**performs** 33:1
  57:19
**permission** 49:23
**permit** 22:15
  28:19 43:17
**permits** 23:3
**permitted** 34:15
  60:9
**perpetrated** 30:14
**person** 8:4 23:13
  54:19,20 55:1
**personal** 57:3
**pertaining** 28:14
  44:19
**petition** 39:1,20
  39:24 40:2,5,6,22
  54:3,5 59:14,15
  59:17
**phil** 16:5
**philip** 6:10
**phone** 8:6 10:4
  13:9 17:5 24:17

physically   49:14
pittsburgh   6:23
plains   2:3
plaintiff   38:21
   42:10 43:9 52:24
   53:5,6
plaintiffs   1:13 3:8
   3:21 4:6,9 6:21
   8:15 26:21,25
   27:1,2,5,12,14,18
   28:18,19 30:7
   37:13 38:16,24,25
   39:1 46:16 47:1
   49:11,18 50:3
   52:3 54:6 57:17
   58:2,12 59:2
plaintiffs'   26:4
   27:8,10,21,23
plaintiff's   24:16
   47:5 59:17
plan   11:5
plausibility   43:14
   43:21
plausible   43:7,9
   43:11 48:23 49:1
   56:5
plausibly   44:6
plead   29:24 45:13
pleaded   43:16
pleader   43:19
pleading   42:23
pleadings   25:1
   30:2 31:7 42:12
please   14:16 37:9
pled   30:2 31:6
   59:5
plus   11:4
pm   62:14
point   13:4 16:22
   19:25 20:4 25:9
   40:8,13 49:6
policy   16:20

portals   29:22
position   29:18
   33:23 34:20 59:25
possession   54:25
   57:3,11 58:10
possibility   43:17
   43:23
possible   19:10
   56:10
post   31:21 39:20
   39:24 40:5,22
   54:2,5 59:14,15
   59:17
powerhouse
   38:15
prebankruptcy
   22:8
precatory   59:12
precipitated   12:9
precisely   28:17
predicated   26:6
prejudice   28:23
premature   29:7
   29:18
premised   27:24
   44:9
prepare   23:1
prepared   11:9,12
   22:22 24:4,5,8
prepetition   16:14
   17:15 18:3 39:2
   40:10,20 59:21
   61:16
present   7:1 31:11
presumption   57:2
   57:6,7
prevent   54:18
previously   59:19
price   11:13 12:2,9
principal   33:16
   33:22 57:11,18,20
   57:21

print   23:20
prior   40:14 50:7
   52:19
pro   53:2
probability   43:22
probably   8:21
procedure   41:22
   42:24 44:10
procedures   15:20
   28:20 59:19
proceed   8:11
   15:21 17:21 18:1
   21:7,10
proceeding   3:4,6
   3:11,15,17,19 4:1
   4:5 9:15 17:17
   24:22 28:17 41:16
   41:18
proceedings
   62:13 63:4
proceeds   27:4
   51:7
process   18:10
   54:4 60:3,4 61:17
   61:18
product   33:25
   39:9,14,14 55:1
products   37:18
   39:11
profit   11:4
program   12:13,23
   41:4
prohibition   47:14
promptly   35:23
proof   34:6,7 35:6
proofs   4:12
proper   56:9 57:8
properly   34:11
   59:16
property   13:17,25
   26:16,22 45:17,20
   46:12,21 50:14,21
   50:23 54:9,19,23

54:24 56:8 57:3,4
57:9,10 58:1,4,5,7
58:11 60:2,8,22
61:2
proposed   4:23
   10:24 11:2,10,19
   13:15 15:10
protected   60:22
provide   37:17,19
   39:14
provided   11:13,20
   12:16 46:15
provider   35:18
provides   12:1
proving   27:16
provision   33:10
   47:22 50:19
purchase   11:11
   11:13 12:1,1,9,21
   14:12 15:2 39:14
purchased   39:7
purchaser   35:15
purchases   14:24
purchasing   14:20
purported   26:23
purpose   32:16
   45:19 46:8,20
   50:21,22 56:24
purposes   8:5 27:5
   31:1 34:15 58:4,8
   61:19
pursuant   12:22
   28:3
pursue   19:16
   23:21
pursued   54:4
pursuing   19:24
   23:9
put   24:20
putative   47:12
   58:9

| q | | | |
|---|---|---|---|
| **quarropas** 2:2 | **recipient** 54:8 | 47:7,18,18,19 | 32:7 |
| **question** 17:11 | **recitation** 42:19 | 48:23 49:2,8,12 | **requested** 11:14 |
| 32:19,22 34:18 | **recitations** 56:2 | 49:23 50:7 53:16 | 11:21 12:4,5 |
| **questions** 8:19 | **reclaims** 50:25 | 55:15,16,17 56:7 | **require** 32:8 |
| 13:7 28:24 61:20 | **recognized** 28:7 | 56:17,22 57:8,16 | **required** 35:18 |
| **quite** 37:14 59:16 | 60:24 | 57:18 59:4 | **requirement** |
| **quote** 56:23 | **recognizes** 57:2 | **relative** 26:18 | 43:22 |
| **quoted** 32:14 36:4 | **record** 63:4 | **relatively** 29:22 | **requirements** |
| 59:11 | **recording** 8:5 | **release** 13:1 16:12 | 46:23 |

| r | | | |
|---|---|---|---|
| **r** 2:21 6:1 7:4,21 | **recovery** 12:25 | **relief** 21:6,11,18 | **requires** 43:15 |
| 8:1 63:1 | **redelivered** 50:23 | 23:15 43:19 44:7 | 44:11 45:11 47:24 |
| **raise** 43:3 | **refer** 45:23,24 | **relieve** 43:4 | 48:3 |
| **randall** 60:4 | **reference** 42:4,13 | **relying** 37:22 | **res** 48:4 54:24,25 |
| **range** 17:3 | **referenced** 28:2 | **remaining** 8:16 | 56:8,10 58:13 |
| **rata** 53:2 | **referred** 32:11 | 24:24 26:4 28:22 | **resolution** 28:21 |
| **rdd** 1:3,4 3:4,11 | 45:1 | 41:17 61:9 | **resolve** 41:3 |
| 3:17 4:1 | **referring** 19:7 | **remedy** 27:14 | **respect** 9:11,16 |
| **reached** 60:11 | **refers** 32:13 | 30:16 52:6 54:7 | 13:16,24 15:3 |
| **read** 17:11,23 | **reflect** 14:4,7 | 54:22 55:9,10,14 | 29:22 30:10 33:3 |
| 25:1 35:3 | **refunds** 41:5 | 55:19 56:9 59:22 | 33:7,20 37:25 |
| **reading** 39:22 | **refusal** 11:6 | **remit** 34:8 35:9,19 | 40:18 44:12 45:9 |
| **real** 4:23 6:14 | **regard** 54:6 61:16 | **remitted** 34:11 | 46:14 56:8,22 |
| 10:23 11:8 13:8 | **regarding** 55:9 | **remitting** 35:16 | **respectfully** 26:3 |
| 17:20 18:1 | **regular** 31:21 | **repeat** 14:16 | 27:22 28:22 29:5 |
| **really** 17:12,25 | **reid** 7:18 | 39:21 | 31:24 32:7 |
| 23:7,11 34:3,12 | **reimburse** 11:15 | **reply** 3:7 27:20 | **respond** 3:21 |
| 34:17 36:14,25 | 35:23 | **report** 24:2 | **response** 4:3,6,9 |
| 41:5 47:2 49:10 | **reimbursement** | **reposed** 37:23,24 | 10:5 16:13 48:15 |
| **reason** 19:24 | 12:6 | **representation** | 57:12,13 |
| 52:11 | **reject** 16:16 | 9:18 19:19 30:2 | **responsibility** |
| **reasonable** 42:9 | **rel** 55:2 | **representations** | 35:4 |
| **reasons** 16:17 | **relate** 16:13 | 30:19 39:20,23 | **responsible** 35:16 |
| 27:7 32:6 49:3 | **related** 3:9 4:20 | 53:22,24,25 54:3 | **rest** 8:22 |
| **recall** 35:1 | 4:25 5:2 13:2 | 54:15 58:17 | **restarting** 31:14 |
| **receive** 54:15 | 16:10 25:3 | **representatives** | **restatements** 56:3 |
| **received** 9:13 | **relatedly** 42:22 | 30:3,7,18,21 | **resting** 25:23 |
| 46:13 54:20 | **relation** 51:16 | **represented** 17:13 | **restitution** 54:22 |
| **receiving** 31:20 | **relationship** | 38:24 | **rests** 57:16 |
| 32:16 46:8 54:19 | 26:13,20 27:1,2,6 | **representing** 8:8 | **result** 32:1 |
| 56:25 57:25 58:7 | 30:17 31:4,5 | **represents** 13:5 | **retail** 29:23 38:15 |
| | 32:13 33:19,22 | **request** 10:6,12 | **return** 24:10 |
| | 38:2,18,20 44:24 | 10:15 13:6 18:2 | 51:18 55:6 |
| | 45:9,23,25 46:3 | 26:3 27:23 29:5 | |

**reveal** 30:1
**review** 32:12
  60:12
**revised** 11:11,25
  12:21 13:20
**rewritten** 34:23
**ri** 7:10
**right** 10:4 11:5,18
  13:19 14:19,23
  15:24 17:23 18:12
  18:22 19:22 23:18
  24:19 25:11,13
  32:25 33:16 35:4
  35:7,10,24 36:5,6
  40:3,7 41:8,15
  43:3 57:18 60:8
  60:13 61:23 62:8
**rights** 26:13,18
  50:14
**rise** 47:8 53:20
  56:19 58:23 59:13
  59:21
**ritualistic** 28:10
**road** 14:24 63:21
**robert** 2:22
**roebuck** 19:13
**rohn** 7:19
**room** 2:2
**rosa** 10:3,14
**rose** 10:2
**rosen** 52:15
**rosse** 61:5
**rothi** 38:19
**rule** 25:7 27:17
  41:21,21,23 42:23
  42:25 43:19 44:10
  44:11,11 54:13
  61:13,18,19
**rules** 28:14 44:10
  49:7
**ruling** 61:12 62:2
**rupeshi** 38:19

## s

**s** 3:9 4:20,25 6:1
  8:1 46:16
**s.d.** 61:7
**s.d.n.y.** 48:20
  52:16 53:9
**sale** 4:18,18,24
  10:21 11:1,7,19
  12:2,20 13:3
  15:16,18,23 16:1
  27:3
**salene** 6:25
**sales** 46:14
**salesforce** 9:18
**salesforce.com**
  9:13
**salesforce.com.**
  9:12
**sanctions** 23:11
**sanhavi** 38:19
**santa** 10:1,3,14
**sara** 7:6
**satisfied** 4:13 9:8
  29:19 46:24
**satisfy** 27:16
  29:24 52:24
**saying** 19:21 21:1
  22:7,9
**says** 17:14 19:11
  19:11 21:18 32:14
  35:14,22 41:1
**scheduled** 3:1
**scheme** 30:5 32:4
**sdny** 42:14
**se** 18:1
**sears** 1:8,15 3:5
  3:12,14,18 4:2,21
  8:3 18:8 19:13
  20:5,8,11 21:8,10
  24:15,23 28:2
  30:2,22,24 32:9
  32:15 33:1,3,6,13
  33:16,24 34:2,4,7

34:8,11,14,14
35:3,14,17,23
36:1,21 37:18,25
38:15,25 39:8,13
39:18 44:25 45:9
46:7,13,14,25
47:3,5 50:12 51:4
51:5 56:12,12,18
56:24 57:24,25
58:7,22
**sears'** 33:10 37:16
  39:8
**second** 3:8 21:17
  30:11 32:22 52:4
  52:14 53:16 55:6
**section** 50:11,15
**security** 28:14
**sedgwick** 19:7,11
  19:17 20:2,5,9
**see** 8:14 19:5
  23:17 28:1 31:8
  32:18 35:20,20
  36:2 37:10 43:1
  45:20 48:4,10,19
  50:15 51:14 52:12
  53:7 58:12,14
  60:4 61:4
**seek** 23:15
**seeking** 54:23
**seen** 25:8
**segregation** 47:25
**selection** 37:17
**sell** 11:2 37:18
**seller** 32:15,15,25
  35:16,16,19,23
  36:12 46:6,7
  47:12 56:23,24
  57:17 58:2,12
**sellers** 31:18,18
  32:3,4 33:10
  34:22 36:22 37:15
  37:17 38:17,18
  46:16 47:23 54:1

56:15,15
**seller's** 32:17 36:1
  46:9 56:25
**send** 15:15
**sense** 43:16 51:9
**sent** 15:10,10 31:7
  31:9 34:7,17
**sentence** 56:23
**separate** 15:23
  55:10,17 60:18,21
  60:24,25
**sept** 58:14
**sequence** 13:4
**serve** 54:24
**served** 52:24
**services** 19:8,12
**set** 12:14 27:7,17
  31:16 35:12 41:19
  44:25 56:16
**sets** 51:18
**settled** 12:22
  61:24
**settler** 45:15,16
**seventh** 48:2
**sheer** 43:22
**shipment** 35:6
**shirin** 7:15
**should've** 22:7
  39:13
**show** 22:17 23:13
  37:23 38:10 45:16
  56:17
**showing** 57:8
**shown** 43:18
  45:15
**side** 41:12
**sidestep** 28:19
**significantly**
  52:18
**similar** 49:12 53:1
  54:15 59:1
**similarity** 49:9

similarly 52:25
simple 28:12
simply 51:22
  60:21
singh 7:20
situated 52:25
situation 30:16
  34:18
six 15:5
sixth 4:12 9:6
skus 37:19
slim 39:12
small 36:22 39:17
  53:22
sold 32:17 46:9,14
  49:15 57:1
sole 32:16 46:7
  56:24 58:10
solely 17:16 19:15
  19:17
solutions 63:20
sonya 5:25 63:3,8
soon 23:19
sorry 14:5,13
  29:13 33:2 39:21
sort 14:12,22 24:1
  50:1
sought 17:6
southern 1:2 26:9
speaking 8:7
special 51:15 60:1
specific 30:2
  43:14 47:24 51:10
  51:18 54:9 60:7
  60:14
specifically 38:14
specifications
  45:18 46:20
speculate 44:18
speculative 43:4
stake 28:12
standard 27:17
  34:21 42:23 43:21

start 31:20
state 8:7 20:21
  35:19 42:18 43:7
  44:13,15
stated 16:17 25:4
  26:10 31:13,15,18
  42:2 44:13,16
  47:6 48:16 52:5
  52:17 57:25 58:7
statement 37:23
  46:4 50:10 55:7
  56:21
statements 31:10
  31:11,11,12 32:2
  38:21 40:13,14,19
  55:24
states 1:1 2:1
  31:23 35:17 46:1
  46:6 48:19 52:23
status 24:5 26:16
  26:21
statute 21:4
stauble 7:3
stay 12:5 16:12
  17:16,21 19:6,14
  21:4,6,11,18,21
  21:24 22:3,10,15
  22:22 23:1,10
stip 15:11
stipulation 12:15
  12:16 13:6,21
  15:22
stipulations 12:18
  21:23
stop 20:1
store 49:14,15
stores 26:10 42:14
  48:5,6
street 2:2 4:19,25
  6:22 10:21 11:3
  11:17
strongly 59:3

subject 9:10 12:10
  12:24 23:10 25:5
  25:14 44:21 45:17
  45:25 46:12 56:11
  57:20
subjected 43:12
submit 9:15 10:16
  28:18 31:24 61:22
subsequent 13:16
  13:25
subsequently 12:3
subsidiary 40:8
substance 26:15
  26:20
substantial 12:8
  51:12 52:10
substantially 11:9
successful 11:16
sue 23:2
sufficient 29:24
  30:13 43:6,10
  55:21
sufficiently 45:13
  59:4
suggest 38:7 44:6
  47:2 50:6
suite 6:22 63:22
sullivan 58:15
sum 28:8 43:24
sums 39:2
sunny 7:20
supp 42:14
supplemental
  9:15
support 3:13 39:3
  41:25
supporting 56:4
supposed 18:6
  34:8
supreme 42:22
  43:1,20
sure 8:24 14:17
  14:25 18:16,20,22

18:24 20:14 35:2
  62:2
survive 42:25
swanson 60:4
system 30:5 53:25
  59:2

t

t 63:1,1
take 8:20 24:21
  29:17 39:8,13
  49:4 59:5
taken 42:5
takes 54:14
talking 62:9
tantamount 31:25
task 43:15
tax 51:11
taxes 34:9,10 35:9
  35:12,15,19 36:1
  56:15 60:16
telephonic 3:2
  17:8
telephonically 7:1
tell 22:21
tellabs 42:10
telling 24:3
terms 12:14,17
  34:11 46:15 59:12
thank 9:3,3,21,21
  9:23 15:13 16:2
  23:22 24:7 25:24
  26:1 29:1,2,4
  41:14 61:22,23
  62:4,5,6,10,11
that's 8:24 9:17
  9:25 10:9,11
  14:23,23,25 15:6
  15:24,25 16:24
  17:14 18:13,16,20
  18:22 20:5,8,12
  24:3 28:17 29:11
  29:13 35:1,13
  36:3,5,13,14,15

[that's - vendors]                                                                          Page 18

36:20 38:3 46:16
**thereof**   45:10
**thereto**   50:11
**there's**   8:3 14:18
   15:1 16:18,19
   18:25 19:21 21:16
   22:4 24:11 33:17
   34:10 36:25 40:22
   47:1 50:5 51:8
   60:22
**they're**   18:20 25:7
   31:25 34:19 37:22
   39:12 55:25
**they've**   16:21
**thing**   22:6
**things**   27:12
**think**   10:13 13:9
   15:23 17:19,24
   24:11 36:3,8
   39:22 40:18,23,24
   40:24 62:6
**thinks**   10:14
**third**   6:15 18:5,6
   18:12 19:7,8,12
   28:8,11 34:6
**thought**   10:4
   19:14 37:10 40:12
   41:7
**thousands**   17:3
**three**   9:11,19 15:5
   20:19 44:20
**throw**   18:8,10
**tied**   25:18
**tier**   12:12 16:21
**tikin**   7:21
**time**   3:20 4:6,15
   9:9,9 10:6 11:2
   20:20 22:2 26:1
   30:19
**timeframe**   35:10
**timely**   20:18
**title**   58:10

**today**   8:9 9:10
   15:1 16:8,15
**told**   20:4,17
**tomchak**   5:1 6:11
   16:7 17:5,7,9,17
   17:25 18:4,15
   19:9,15,20 20:4
   20:14,24 21:13,15
   22:5,24 23:6,17
   23:22
**tomchak's**   17:11
**top**   37:16
**tort**   60:18,24,25
**total**   53:23
**totality**   52:21
**touche**   61:5
**tower**   6:22 38:16
**traced**   47:21
**tracing**   47:25
   48:25 54:11,11,12
**transaction**   10:24
   11:11 14:22 33:21
   34:3
**transcribed**   5:25
**transcript**   63:4
**transcription**   8:5
**transfer**   11:22
   13:17,25
**transferred**   57:10
**transform**   30:22
**travel**   28:9
**treadmill**   33:24
   34:5
**treated**   12:12
   16:13 25:6
**trombe**   38:6
**trouble**   23:14
**true**   20:12 21:1,9
   27:17 33:17 42:9
   42:15 43:7 58:8
   63:4
**trust**   25:15,16,17
   26:6,6,11,13,23

27:2,8,11 28:11
   29:25 30:12,15,18
   30:25 36:19 37:4
   38:13,18 39:4
   40:9,18 44:22,24
   45:5,6,11,14,15
   45:17,17,19,19,20
   45:23 46:1,12,19
   46:20,20,21,25
   47:5,9,17,18 48:3
   48:10 49:21,23
   52:2,7,9,12 53:15
   53:16,20 54:7,17
   54:23,25 55:8,11
   55:14,15,16 56:6
   56:10,11,20 58:6
   58:24 59:4,9,22
   60:3,3
**trusted**   38:25
**trustee**   30:25
   45:18,20 46:19,21
   50:14 55:2 58:9,9
**truth**   44:3
**try**   14:21
**trying**   41:2
**tuesday**   31:22
**turned**   18:2 47:11
**two**   12:12 15:6
   16:7 20:19 25:15
   41:18 53:14 54:6
   55:5
**twombly**   42:20
   43:2,5 45:13 47:2
   55:22
**type**   34:15 50:6
   56:19
**typical**   31:4

---

**u**

**u.s.**   2:23 42:7,10
   42:17,20 43:2
   48:8,12,20 53:7
**ucc**   50:4,18,19

**ucc9-319**   50:10
**ultimately**   34:16
**uncontested**   8:22
   9:5,11 10:20
**underlying**   16:11
**understand**   26:5
   40:8,11
**understanding**
   13:15,23 15:1
   16:10 34:10 47:4
**underway**   54:5
**unfair**   54:15
**uniformly**   52:5
**unique**   31:3 37:19
**united**   1:1 2:1
   48:19
**unjust**   25:19
   54:18
**unknown**   2:25
**unlawfully**   43:23
**unlimited**   46:9
**unpaid**   39:2
**unrelated**   41:19
**update**   24:5,8
**usc**   50:15
**users**   32:17 46:8
   56:25

---

**v**

**v**   1:14 3:5,12,18
   4:2 24:23 41:19
   42:1,6,13,17,20
   43:1,2,5,19 45:21
   48:5,10,11,19
   50:15,25 51:19,23
   52:12,15 53:7,11
   54:20 55:2 57:12
   58:12,15 60:4
   61:5,6
**valuable**   11:6
**varied**   39:11
**various**   48:25
**vendors**   31:19

**ventures** 1:12 3:4 3:11,17 4:1,3,3 8:16,16 24:13,22 24:23 25:3,3
**veritext** 63:20
**versa** 33:14
**version** 50:4
**versus** 24:15
**vice** 33:13
**view** 12:8 13:4
**viewed** 50:12
**violate** 23:10
**violation** 48:18
**vir** 1:12 3:4,11,17 4:1,3 8:15,23 24:12,22 25:3
**volume** 56:1
**vulnerable** 33:22 33:23 34:19,25
**vyskocil** 52:18 53:5

**w**

**wait** 53:2
**waiting** 18:9
**wander** 7:22
**want** 14:7,25 17:25 21:19 23:21 25:2,22
**wanted** 14:10 22:16
**wants** 8:11 17:12 19:15
**warrant** 27:13
**wasn't** 36:9
**waste** 22:2
**wasting** 22:21
**way** 8:11 10:25 13:2 26:15 34:20 47:7,24
**website** 46:15 49:16
**websites** 32:17 46:9 57:1

**week** 18:8 31:21
**weeks** 25:3
**weigh** 41:25
**weil** 6:2 8:13 9:4 10:18 15:10 16:5 24:8 25:25
**went** 37:6 49:21
**western** 51:24
**we're** 9:15 15:20 16:16 19:7 25:13 41:5 62:7
**we've** 9:13 27:7 29:8
**white** 2:3
**who's** 8:4
**wide** 30:5 53:25 59:2
**widely** 47:16
**win** 22:20
**wisc** 50:17
**wisconsin** 50:18
**wish** 24:1
**withdraw** 12:4
**withdrawing** 15:22
**withdrawn** 12:19 15:21 23:25 61:12
**wl** 61:6
**wolverine** 50:16
**wondering** 14:7
**words** 43:8
**work** 9:9 33:1 57:19
**worry** 43:13
**worse** 59:25
**worth** 48:7
**wouldn't** 22:14
**wrongdoing** 27:13,15 30:14 53:17
**wrongful** 17:17 19:18 22:12 23:4

**wrongfully** 17:15 19:23 20:9 22:17

**x**

**x** 1:5,11,17

**y**

**yeah** 22:5 34:14 35:22 38:10 41:2
**year** 18:9 30:17
**years** 20:19,19
**yesterday** 12:17 15:11 31:23
**york** 1:2 6:5,16 26:10 42:6
**you'd** 22:19
**you're** 8:7,8 14:13 14:15 22:7,21 23:8,9 24:3

**z**

**zalewski** 7:23