**Hearing Date and Time: April 23, 2020 at 10:00 a.m. (Eastern Time)**

FERRAIUOLI LLC
390 N. Orange Avenue
Suite 2300
Orlando, Florida 32801
Telephone: (407) 982-7310
Facsimile: (787) 766-7001
Email: scolon@ferraiuoli.com
Email: gchico@ferraiuoli.com

Counsel for *Santa Rosa Mall, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |

<u>**MEMORANDUM OF LAW ON PUERTO RICO'S INSURANCE LAW**</u>
<u>**IN COMPLIANCE WITH COURT ORDER**</u>
(Related Docket Nos. 6317, 7211, 7311)

## **TABLE OF CONTENTS**

**Page(s)**

Introduction ..................................................................................................................... 1

Factual Background .......................................................................................................... 1

Applicable Law and Discussion ....................................................................................... 4

I. Does the Lease Agreement grant Santa Rosa a Right as an Additional Insured or Loss Payee, to Sue under the Contract of Insurance? ......................................................................................... 4

II. Can a Certificate of Insurance Modify or Change the Terms of an Insurance Policy? ........................... 7

III. The Puerto Rico Direct Action Statute vis a vis the Right to Sue Directly in a Puerto Rico Court as a Named Insured and/or Loss Payee ............................................................................... 10

    *A.   Direct Action Statute Under Art. 20.030 and Art. 11.190 of the Puerto Rico Insurance Code, 26 L.P.R.A. §§ 2003, 1119* ...................................................................................... 10

    *B.   Direct Action Statute Under Art. 1209 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3374 vis a vis the Right to Sue Directly as Loss Payee* ........................................................... 15

IV. The McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015 ...................................................... 17

V. The Integrity of the Contract of Insurance and General Insurance Law Principles .............................. 18

    *A.   The Contract of Insurance, Property Insurance and the Insured* .................................... 18

    *B.   A Loss Payee* ............................................................................................. 22

    *C.   Insurable Interest over Store No. 1915* .............................................................. 24

    *D.   Promissory Estoppel* .................................................................................... 25

    *E.   Improper Payment Doctrine* ............................................................................ 26

    *F.   The Principle of Good Faith* ........................................................................... 29

Closing Remarks ............................................................................................................. 29

Prayer for Relief .............................................................................................................. 32

## TABLE OF AUTHORITIES

Page(s)

**U.S. Cases**

*Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 103, 104 (7th Cir. 1998) ............................. 20

*Baker v. Phoenix Ins. Co.*, 2013 U.S. Dist. LEXIS 193972 (W.D. Wash. 2013) ....................................... 30

*Bank of Nichols Hills v. Bank of Okla.*, 196 P.3d 984 (2008)............................................................. 27, 28

*Blackburn, Nickels & Smith, Inc. v. National Farmers Union Property and Casualty Co.*, 482 N.W.2d 600, 603 (N.D. 1992) ................................................................................................................................ 7

*Cole Taylor Bank v. Truck Ins. Exch.*, 1994 US Dist. Lexis 3705 (N. D. Ill. 1994).................................. 27

*Conner v. Northwestern Nat. Cas. Co.*, 774 P.2d 1055, 1057 (Okla. 1989) ............................................. 27

*Corbit v J. I. Case Co.*, 70 Wash. 2d 522, 539, 424 P.2d 290, 300 (1967)................................................. 31

*Deitrick v. Greaney*, 309 U.S. 190, 196 (1940) ........................................................................................... 37

*Farmers Insurance Exchnage v. Nelson*, 479 SW 2d 717, 721 (Tex. Civ. App. 1972)................................. 7

*Fireman's Fund Ins. Co. v. Globe Navigation Co. et al., The Nottingham*, 236 Fed. 618, 633 (1916) ...... 26

*General Acc. Ins. Co. of America*, 716 A.2d at 755................................................................................... 31

*Golden Idem. Co. v. Liberty Mut*, 45 F.Supp. 9, 11 (1942) ...................................................................... 25

*Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205 (1979)..................................................... 20

*Hagan v. Scottish Insurance Company*, 186 U.S. 423, 428 (1902) ............................................................. 26

*Harrington v. Agricultural Ins. Co. of Watertown N.Y.*, 179 Minn. 510, 229 N.W. 792 (1930)................ 29

*Independent Coal & Coke Co. v. United States*, 274 U.S. 640, 648 (1927) ................................................ 38

*Lezak & Levy Wholesale Meats, Inc. v. Illinois Employers Insurance Company of Wausau*, 121 Ill. App. 3d 954, 460 N.E.2d 475, 77 Ill. Dec. 419 (Ill. App. 1984) .............................................................................. 7

*Liverpool & London & Globe Ins. Co. v. Bolling*, 176 Va. 182, 192, 10 S.E. 2d 518, 522 (1940)........... 29

*Merchants Home Delivery Serv., Inc. v. Frank B. Hall & Co.*, 50 F.3d 1486, 1488-1489 (9th Cir. 1995) 20

*Monroe Bank v. State Farm Fire & Cas. Co.*, 2010 U.S. Dist. LEXIS 119736, at *4, 2010 WL 4668428, at *2 (S.D. Ind. 2010)....................................................................................................................................... 18

*Noble v. Corporación Insular de Seguros*, 738 F.2d 51, 53 (1st. Cir. 1984)........................................ 7, 24

*Perfect Investments, Inc., v. Underwriters at Lloyd's, London*, 782 P.2d 932, 934 (Okla. 1989)............... 27

*Riggs v Palmer*, 115 N.Y. 506, 511-512 (N.Y. 1889)................................................................................. 37

*Ruiz Rodriguez v. Litton Industries Leasing Corp.*, 574 F.2d 44, 46 (1978) ............................................. 22

Santa Rosa highlights *Riggs v. Palmer*, 115 N.Y. 506 (N.Y. 1889) .......................................................... 37

*SEC v. National Securities, Inc.*, 393 U.S. 453, 460 (1969) ...................................................................... 20

*Stewart-Smith Haidinger, Inc., v. Avi-Truck, Inc.*, 682 P.2d 1108 (Alaska 1984) ..................................... 6

*Thomas v. Taggart*, 209 U.S. 385, 389 (1908).......................................................................................... 26

*Thompson v. Gearhart*, 137 Va. 427, 119 S.E. 67 (1923) .......................................................................... 29

*United States Dept. of the Treasury v. Fabe*, 508 U.S. 491, 507 (1993) .................................................... 20

*United States v. Dunn*, 268 U.S. 121, 133 (1925) ...................................................................................... 37

*US v. CAN Financial Corp*, 113 Fed. Appx. 205 (9th Cir. 2004) ................................................................ 6

**P.R. Cases**

*A.L. Arsuaga, Inc. v. La Hood Const., Inc.*, 90 D.P.R. 104, 1964 PR Sup. LEXIS 231 (1964) ........... 18, 19

*Barrera v. Santana*, 87 D.P.R. 227, 1963 PR Sup. LEXIS 245 (1963) ....................................................... 26

*CMI Capital Market Investment, LLC v. Municipality of Bayamon*, 410 F.Supp.2d 61, 74 (D.P.R. 2006) 33

*E.L.A. v. Great American Insurance Co.*, 106 D.P.R. 825, 829 (1977)...................................................... 24

*Echandi Otero v. Stewart Title*, 174 D.P.R. 355 (2008) ........................................................... 25

*General Accident Ins. Co. P.R. v. Ramos,* 148 D.P.R. 523, 531 (1999) .................................... 22

*General Accident Ins. v. Am. Nat'l Fireproofing*, 716 A.2d 751 (R.I. 1998) ............................ 31

*In re Navarro*, 504 B. R. 316 (D.P.R. 2014).................................................................................. 1

*Int. General Electric v. Concrete Builders,* 104 D.P.R. 871, 1976 PR Sup. LEXIS 2352 (1976)........ 30, 31

*Llorens v. Arribas*, 184 D.P.R. 32, 51-52 (2011)........................................................................... 1

*M.R. (Vega Alta), Inc. v. Caribe General Elec. Products, Inc.*, 31 F. Supp. 2d 226, 238 (D.P.R. 1998)... 18

*Maryland Cas. Co. v. San Juan Racing Ass'n*, 83 D.P.R. 559, 1961 PR Sup. LEXIS 437 (1961) ............. 19

*Quiñones López v. Manzano Pozas*, 141 D.P.R. 139, 1996 PR Sup. LEXIS 290 (1996) ........................... 25

*Real Legacy Assurance Co. v. Santori Trucking, Inc.*, 2008 WL 11357822, at *3 (D.P.R. 2008) ............. 19

*Rodriguez de Oller v. Transamerica Occidental Life Insurance Company*, 171 D.P.R. 293, 2007 WL
    1723369, 2007 PR Sup. LEXIS 237 (2007)................................................................................... 9

*San Juan Dupont Plaza Hotel Fire Litig.,* 789 F. Supp. 1212, 1216-1217 (D.P.R. 1992) ........................ 13

*Seguros v. Morales-Vazquez*, 2018 WL 3763305, 2018 U.S. Dist. LEXIS 133864 (D.P.R. 2018)...... 10, 11

*Supermercados Econo v. Integrand Assur. Co.,* 359 F. Supp. 2d 62, 70 (D.P.R. 2005)............................ 27

*Torres v. Bella Vista Hosp., Inc.*, 523 F. Supp. 2d 123, 152 (D.P.R. 2007) .................................. 19

*Velilla v. Pueblo Supermarkets, Inc.*, 111 D.P.R. 585, 1981 WL 176460 (1981) ............................. 35, 36

*Vilanova Díaz v. Vilanova Serrano*, 184 D.P.R. 824 (2012) ........................................................... 1

*William Contractor, Inc.*, 2016 WL 1317434, at *2 (Bankr. D.P.R. 2016)................................... 19

**P.R. Statutes**

31 L.P.R.A. § 3151 ...................................................................................................................... 32

31 L.P.R.A. § 3161 ...................................................................................................................... 32

31 L.P.R.A. § 3162 ...................................................................................................................... 32

31 L.P.R.A. § 3168 ...................................................................................................................... 33

Art. 11.140 of the Puerto Rico Insurance Code, 26 L.P.R.A. § 1114 ........................................ 25

Art. 11.190 of the Puerto Rico Insurance Code, 26 L.P.R.A. § 1119 ..................................... 13, 15, 16 17

Art. 11.250 of the Puerto Rico Insurance Code, 26 L.P.R.A. § 1125 .................................... 25, 26

Art. 1116 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3166........................................... 32, 33, 35

Art. 1210 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3375.............................................. 35

Art. 1603 of the Puerto Rico Civil Code, 31 L.P.R.A. § 4422............................................... 11

Art. 20.010 of the Puerto Rico Insurance Code, 26 L.P.R.A. § 2001 ........................................ 13

Art. 20.030 of the Puerto Rico Insurance Code, 26 L.P.R.A. § 2003(1) ...................... 12, 13, 15

Art. 27.150 of the Puerto Rico Insurance Code, 26 L.P.R.A. § 2714a ...................................... 21

Art. 4.040 of the Puerto Rico Insurance Code, 26 L.P.R.A. § 404 ............................................ 25

Art. 9.063 of the Puerto Rico Insurance Code, 26 L.P.R.A. § 949l(1) ...................................... 10

Art. 9.210 of the Puerto Rico Insurance Code, 26 L.P.R.A. § 951a ......................................... 10

Art. 9.212 of the Puerto Rico Insurance Code, 26 L.P.R.A. § 951c(2)...................................... 10

Art. 11.050 of the Puerto Rico Insurance Code, 26 L.P.R.A. § 1105 ........................................ 29

Art. 11.220 of the Puerto Rico Insurance Code, 26 L.P.R.A. §1122 ......................................... 28

Art. 1209 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3374 ............................................. 18, 19

Art. 1210 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3375.................................................... 24

Art. 1233 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3471.............................................. 34, 35

Art. 27.16 of the Puerto Rico Insurance Code, 26 L.P.R.A. § 2716a ........................................ 21

Art. 27.162 of the Puerto Rico Insurance Code, 26 L.P.R.A. § 2716b ...................................... 21

Art. 1054 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3018.................................................... 24

**U.S. Statutes**

McCarran Ferguson Act, 1945, 15 U.S.C.S. § 1012(b) *et seq.*.........................................................20, 21, 38

**Other Authorities**

Act No. 242-2018                                                                                                                  15
Art. 1258 of the Spanish Civil Code                                                                                        35
Article 7.1 of the new Preliminary Title of the Spanish Civil Code [adopted in 1974]              35
Office of the Commissioner of Insurance, Circular Letter No. CC-2019-1949-D, *Clarification of the Term for Bringing Legal Action Against Insurers and Applicability of The Appraisal Process to Claims Related to Hurricanes Irma And María* (June 25, 2019)                                                      15
Office of the Commissioner of Insurance, Ruling Letter No. CC-2019-248-D, *Appraisal Process Established in [Act] No. 242-2018* (March 20, 2019)                                                                     16

**Treatises**

11A *Couch on Insurance*, §159:1 (3rd ed. 2019)...........................................................................................26
*Comentarios a las Reformas del Código Civil* 366 (Ed. Tecnos, Madrid) (1977).....................................35
E.M. Holmes, *Appleman on Insurance*, Vol. 2 §5.5, pp 92-93 (1996) .......................................................22
Espín Cánovas, *Manual de Derecho Civil Español* 518 (Ed. Rev. de Derecho Privado, Madrid) (1979) .35
John A. Appleman & Jean Appleman*, Appleman on Insurance Law & Practice Archive* §112.10[d] (2nd ed. 2011) ...........................................................................................................................................24
John Appleman, *Insurance Law & Practice*, § 3335 (1979) ...................................................................27

TO THE HONORABLE COURT:

COMES NOW Santa Rosa Mall, LLC ("Santa Rosa"), by and through its undersigned counsel, and respectfully states and prays as follows:

### Introduction[1]

At the hearing held on February 24, 2020, the Court scheduled a final hearing on Santa Rosa's *Motion for [] an Order Finding the Automatic Stay Inapplicable or, in the Alternative, for Relief from the Automatic Stay and Memorandum in Support Thereof* (the "*Motion for Relief from Stay*", Docket No. 6317) and ordered it to file a brief on Puerto Rico's insurance law. See February 24, 2020, Hr'g. Tr. 72:17-19.

In compliance, we submit this *Memorandum of Law on Puerto Rico's Insurance Law*[2] which applies and interprets general property insurance law principles and how they are applied and interpreted to regulate the insurance business in Puerto Rico[3] so as to provide the Court with a legal analysis that supports granting the relief requested in the *Motion for Relief from Stay* and the filing of independent non-bankruptcy causes of action against non-debtor third-parties, to wit: Aon and the Underwriters. Santa Rosa, as an additional "Named Insured" and/or "Loss Payee", has a separate, distinct, and direct action against the Underwriters as a matter of Puerto Rico Law, independent from any claim against the Debtors.

At the outset, considering that there are no real controversies with respect to the facts as outlined hereunder, Santa Rosa will address the main queries which this Honorable Court requested to be briefed on and then expand on other related matters within the context of property insurance law and its *modus operandi*.

### Factual Background

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Motion for Relief from Stay, infra.*

[2] This Court has noted that Puerto Rico law is controlling under New York Choice of Law Principles because the injury happened in Puerto Rico. See March 21, 2019, Hr'g. Tr. 82:4-7.

[3] The Courts in Puerto Rico will turn to interpretations in other jurisdictions when necessary. See *e.g.*, *Llorens v. Arribas*, 184 D.P.R. 32, 51-52 (2011) (determined that, in the absence of an interpretation by the Puerto Rico courts, the Supreme Court of Puerto Rico has analyzed Delaware case law to interpret Puerto Rico's Corporation Act); *In re Navarro*, 504 B. R. 316 (D.P.R. 2014); *Vilanova Díaz v. Vilanova Serrano*, 184 D.P.R. 824 (2012).

1.      Sears, Roebuck de Puerto Rico, Inc. ("Sears Roebuck"), initially leased retail space from Santa Rosa Mall in Bayamón, Puerto Rico pursuant to that certain *Lease Agreement* executed on September 22, 1965. See *Lease Agreement*, Docket No. 6317-1.

2.      Section 6.01 of the Lease Agreement states that Sears Roebuck was obliged to "**maintain at Tenant's sole cost and expense, for the benefit of Landlord and Tenant, insurance with respect to the Demised Premises**," for risks including "windstorm".  Id. at p. 30, § 6.01 (boldface added).

3.      In the event "Tenant elects to effect such insurance **through an insurance company**, such policies shall be secured promptly and **certificates thereof shall be furnished to Landlord**. [] Such policies shall **contain loss payable clauses to Landlord** and Tenant as [] provided in Section 6.03." Id., at § 6.02(a) (boldface added).

4.      To provide Landlord access to insurance proceeds, Section 6.03(b)(3) of the Lease Agreement further mandates that:

> The net sums recovered by Landlord and Tenant on account of loss or damage whether under the policies taken out as aforesaid, or under other insurance policies taken out by Tenant and indemnifying for physical loss (as distinguished from the loss of use and occupancy. or profits), shall be deposited in a special account in the name of Landlord separate and distinct from all other funds of Landlord in a bank or trust company of the city of San Juan, Puerto Rico approved by Landlord and Tenant to be applied on account of the cost of such restoration or rebuilding, as the case may be …

Id., at § 6.03(b)(3).

5.      On or about October 25, 2017, Aon Risk Services Central, Inc., d/b/a/ Aon Risk Insurance Services Central, Inc., issued a certain Certificate of Insurance for Policy No. PTNAM1701557 which covered former Store No. 1915 for the period of June 1, 2017 to June 1, 2018.  See *Certificate of Insurance*, Docket No. 6317-5.

6.      Pursuant to that certain Certificate of Insurance, CCM and Santa Rosa are the "Certificate Holder[s]", AIG Europe Limited (i.e., the Underwriters) as the "Insurer", Sears Holdings Corporation (d/b/a Sears, Roebuck and Co.) is the "Named Insured", and Aon Risk Services Central, Inc. is both the "Producer" and "Authorized Representative". Id., at pp. 2, 3.

-2-

7.      The Certificate of Insurance also states, in capitalized and bolded text under the "Special Conditions/Other Coverage" of its "Additional Remarks Schedule" that: "**COVERAGE [IS] SUBJECT TO THE LEASE REQUIREMENTS, IF ANY**." Id., at p. 2 (emphasis original).

8.      Lastly, the *Certificate of Insurance* further states under its "Special Conditions/Other Coverage" of its "Additional Remarks Schedule" that:

> **Santa Rosa Mall, LLC**… and Commercial Centers Management, LLC **are included as Loss Payee in accordance with the policy provisions of** [Policy No. PTNAM1701557] with respect to the property located at [Sears Store No. 1915 – Santa Rosa Mall, Bayamon, PR].

Id. at pp. 2, 3.

9.      The Certificate of Insurance, which is similar to those received by Santa Rosa in the past, was emailed to both Santa Rosa and the Debtors by Aon Client Services, a department of Aon Client Services Central, Inc. d/b/a/ Aon Risk insurance Services Central, Inc., on October 25, 2017.  See *Email from Aon to CCM and the Debtors dated October 25, 2017*, Docket No. 6317-6.

10.     The coverage terms and conditions of the aforementioned Policy No. PTNAM1701557, to which the Certificate of Insurance makes reference, are outlined in the Contract of Insurance entered into by the Debtors on or about May 30, 2017.  See *Contract of Insurance*, Docket No. 6317-2.

11.     The Contract of Insurance includes and/or outlines the following parties as "Named Insured" under Policy No. PTNAM1701557:

> Sears Holding Corporation any subsidiary, affiliated, associated, or allied company, corporation, firm, organization, partnership, joint venture, joint lease or joint operating agreement as now or hereinafter constituted or acquired, as their interest may appear, *and any other party for which the Insured has the responsibility for providing insurance, as their respective interest may appear.*

but in no event shall this include the following entities or their subsidiaries:

Sears Canada Inc.
Sears Technology Services, Inc.
ST Holdings, Inc.

Whose mailing address is:

Sears Holdings Corporation
Risk Management Department
3333 Beverly Road E3-237A

Hoffman Estates, Illinois 60179

**all hereafter referred to as the "Insured."**

<u>Id</u>., at p. 4 (underline and italics added, boldface original). Sears Roebuck, as a subsidiary of Sears Holding

Corporation is an "Insured" under the "Named Insured" clause of the Contract of Insurance.

12.     Paragraph 39 of the Contract of Insurance authorized Aon Risk Services, Inc., to issue the

*Certificate of Insurance* as follows:

> **It is agreed, between the Underwriters and the Insureds that "that Aon Risk Services, Inc.
> are (*sic*) authorized to issue Certificate(s) or Evidence(s) of Insurance** [] naming Additional
> Named Insured(s), Loss Payee(s) or Mortgagee(s), and others for their respective rights and
> interests, **subject always to the terms, conditions and limits of endorsements in respect of
> such additional interests**. The Certificate(s) or Evidence(s) of Insurance may show a
> deductible amount less that (*sic*) the policy deductible, but the Insured agrees to reimburse The
> Company immediately after the Company has mad (*sic*) a loss payment to the extent this
> agreement results in a larger loss payment or a payment with the policy deductible.

<u>Id</u>., at p. 28, ¶ 39 (boldface and underline added).  The Contract of Insurance further authorizes Aon to "**act

as a Managing General Agent (MGA) on behalf of an Insurer**" and be "remunerated for the work

undertaken on behalf of the Insurer", which "may include profit or contingent commission." <u>Id</u>., at p. 3

(emphasis added).

13.     Paragraph 51 of the Certificate of Insurance further states the following regarding the

"Severability of Interest": "**Each of the Insureds insured by this policy will have the same protection

and obligations as if the policy has been issued individually to each of them** []." <u>Id</u>., at p. 31, ¶ 51

(boldface added).

<u>Applicable Law and Discussion</u>

I.      *Does the Lease Agreement grant Santa Rosa a Right as an Additional Insured or Loss Payee, to
        Sue under the Contract of Insurance?*

The answer is yes because under Section 6.01 of the *Lease Agreement*, Sears Roebuck agreed to:

"**maintain at Tenant's sole cost and expense, for the benefit of Landlord and Tenant, insurance with

respect to the Demised Premises**," for risks including "windstorm". *Lease Agreement*, Docket No. 6317-

1, p. 30, § 6.01 (boldface added).  Section 6.02 of the Lease Agreement further states that Tenant "shall

-4-

have the option of effecting such insurance through an insurance company of recognized standing satisfactory to the Landlord and the holder of any mortgage on the fee of the Demised Premises or through Tenant's Parent Corporation [] which would act as a self-insurer." Id., § 6.02.

In the event "Tenant elects to effect such insurance through an insurance company, such policies shall be secured promptly and **certificates thereof shall be furnished to Landlord**. [] Such policies shall **contain loss payable clauses to Landlord** and Tenant as [] provided in Section 6.03." Id., at § 6.02(a) (boldface added). It undisputed that under the Lease Agreement, the Debtors were obliged to include a loss payable clauses for the benefit of both the Landlord (Santa Rosa) and the Tenant (Sears Roebuck) in the Contract of Insurance, in both instances as their interest may appear.   To provide Landlord access to insurance proceeds, Section 6.03(b)(3) of the Lease Agreement further mandates that:

> The net sums recovered by Landlord and Tenant on account of loss or damage whether under the policies taken out as aforesaid, or under other insurance policies taken out by Tenant and indemnifying for physical loss (as distinguished from the loss of use and occupancy. or profits), shall be deposited in a special account in the name of Landlord separate and distinct from all other funds of Landlord in a bank or trust company of the city of San Juan, Puerto Rico approved by Landlord and Tenant to be applied on account of the cost of such restoration or rebuilding, as the case may be []

Id., at § 6.03(b)(3).

Once Sears Holdings Corporation opted to obtain insurance through an insurance company, and name Sears Roebuck (Tenant of Santa Rosa) as an "Insured" under the Contract of Insurance, it had the obligation to include a loss payable clause for the benefit of Santa Rosa and to insure the leased premises for the sole purpose of applying the proceeds "on account of the cost of such restoration or rebuilding as the case may be ...".  Id., at § 6.03(b)(3).  These contractual clauses prompted the Debtors to procure and obtain insurance for former Store No. 1915 and give Santa Rosa a right under the Contract of Insurance.

The Contract of Insurance, read in conjunction with the Lease Agreement and the Certificate of Insurance, as it should, further supports Santa Rosa's position that it is an additional "Named Insured" and/or loss payee under the Contract of Insurance even though it is not listed by name. Santa Rosa submits

that the blanket "Named Insured" clause of the Contract of Insurance includes Santa Rosa among the insured as follows:

> Sears Holding Corporation any subsidiary, affiliated, associated, or allied company, corporation, firm, organization, partnership, joint venture, joint lease or joint operating agreement as now or hereinafter constituted or acquired, as their interest may appear, *and any other party for which the Insured has the responsibility for providing insurance, as their respective interest may appear.*

> []

> **all hereafter referred to as the "Insured."**

*Contract of Insurance*, Docket No.  6317-2, at p. 4 (italics and underline added; boldface original).  As outlined above, the definition of Named Insured lists those parties that are in no event included as a Named Insured. It must be underscored that Santa Rosa **is not among those excluded** from the aforementioned blanket "Named Insured" clause, unlike Sears Canada Inc., Sears Technology Services, Inc., and ST Holdings, Inc. See id.

The Debtors agreed, under the terms of the Lease Agreement, to maintain insurance for their benefit and that of Santa Rosa.  As a consequence thereof, Santa Rosa is a **"party for which the Insured has the responsibility for providing insurance"** and must be treated as an "Insured" under the blanket "Named Insured" clause of the Contract of Insurance, as its interest may appear.

An unnamed party like Santa Rosa may have rights as an implied beneficiary of a contract of property insurance under a blanket named insured clause.  See *e.g.*, *Stewart-Smith Haidinger, Inc., v. Avi-Truck, Inc., 682 P.2d 1108 (Alaska 1984)*; *US v. CAN Financial Corp*, 113 Fed. Appx. 205 (9th Cir. 2004). Once the insurer becomes aware of an agreement to include a "Loss Payee" under the terms of an insurance policy, "the duty rests upon the insurer to treat the proceeds of the policy as though such a provision was written into the policy." *Farmers Insurance Exchange v. Nelson*, 479 SW 2d 717, 721 (Tex. Civ. App. 1972). See also *Noble v. Corporación Insular de Seguros*, 738 F.2d 51, 53 (1st. Cir. 1984).

For the avoidance of doubt, the Certificate of Insurance delivered to the Underwriters names those additional insureds or loss payees related to Santa Rosa, which are referred to in the Contract of Insurance

-6-

as "Insured" under the blanket "Named Insured" clause, i.e., *any other party for which the Insured has the responsibility for providing insurance, as their respective interest may appear.*

II.    *Can a Certificate of Insurance Modify or Change the Terms of an Insurance Policy?*

The short answer is no. The purpose of a certificate or evidence of insurance is to inform the recipient thereof that insurance has been obtained and that the contractual agreements of the parties has been satisfied.  The foregoing cannot be used to amend, extend, or alter the coverage provisions, terms, or conditions of an insurance policy.

Notwithstanding, the Debtors belittle the value of the Certificate of Insurance and opted instead to ignore that it is not a separate and distinct independent contract but rather evidence of the underlying agreement which references the coverage of the policy in general terms. See *Lezak & Levy Wholesale Meats, Inc. v. Illinois Employers Insurance Company of Wausau*, 121 Ill. App. 3d 954, 460 N.E.2d 475, 77 Ill. Dec. 419 (Ill. App. 1984); *Blackburn, Nickels & Smith, Inc. v. National Farmers Union Property and Casualty Co.*, 482 N.W.2d 600, 603 (N.D. 1992).

Pursuant to Paragraph 39 of the Contract of Insurance, the Underwriters authorized Aon Risk Services, Inc., to issue Certificate(s) or Evidence of Insurance as follows:

> It is agreed, between the Underwriters and the Insureds that "that Aon Risk Services, Inc. are (*sic*) authorized to issue Certificate(s) or Evidence(s) of Insurance [] naming Additional Named Insured(s), Loss Payee(s) or Mortgagee(s), and others for their respective rights and interests, **subject always to the terms, conditions and limits of endorsements in respect of such additional interests**.

*Contract of Insurance*, Docket No.  6317-2, p. 28, ¶ 39 (boldface and underline added).

Aon, acting under the authority of Paragraph 39, issued the Certificate of Insurance and identified Santa Rosa as "included as Loss Payee **in accordance with the policy provisions of** [the Contract of Insurance,] with respect to" former Store No. 1915, located in Santa Rosa Mall, Bayamon.  See *Certificate of Insurance*, Docket No. 6317-5, p. 4.  As such, the Certificate of Insurance did not grant, and was not intended to grant, Santa Rosa, a Loss Payee and/or additional "Named Insured", more rights or coverage beyond that provided under the Contract of Insurance. Neither is the Certificate of Insurance intended to

modify the Contract of Insurance or its terms. Instead, the Certificate of Insurance informs and certifies that Santa Rosa is a loss payee under the terms of the insurance policy identified in the Certificate of Insurance, *subject to its terms and conditions*. See *Certificate of Insurance*, Docket No. 6317-5, p. 4 ("**Special Conditions/Other Coverage []: Coverage subject to the lease requirements, if any**.")  As such, while not changing the terms or conditions of the Contract of Insurance, the Certificate of Insurance issued by Aon under the authority of the Underwriters, reinforces that Santa Rosa **is at the very least a "Loss Payee" in the *Contract of Insurance* as required by the *Lease Agreement* involved in this case.**

Notwithstanding, while a certificate of insurance cannot be used to amend, extend, or alter the coverage provisions, terms, or conditions of an insurance policy, an insurer is bound by the representations made by its general agent and/or authorized representative under Puerto Rico Law.

As analyzed by the Supreme Court of Puerto Rico**,** a general agent is as "a person appointed by or under contract with an insurer as an independent contractor or on commission, in whole or in part, with power or duty generally to supervise the underwriting and policy service operations of the insurer, to appoint agents for the insurer, and to perform such other functions as are vested in general agents by the custom of the kind or kinds of insurance transacted or type of insurer represented." *Rodriguez de Oller v. Transamerica Occidental Life Insurance Company,* 171 D.P.R. 293, 2007 WL 1723369, 2007 PR Sup. LEXIS 237 (2007) (citing Art. 3.340(1) of the Puerto Rico Insurance Code, 26 L.P.R.A. § 334(1)) (official translation).  Moreover,

> **The general agent has broad authority <u>to bind the insurer, inasmuch as the agent's conduct is, for all legal purposes, the insurer's conduct</u>.**  A general agent 'stands in the shoes' of the principal-insurer and, ordinarily, has authority coextensive with that of the insurer.  **As a rule, the general agent is authorized to** accept risks, settle terms of insurance contracts, **change and modify terms of existing policies**, issue new policies, renew old policies, and make modifying endorsements on new and existing policies.  **<u>A general agent's authority to bind the insurer may be both actual and apparent.</u>** The authority is actual if the agent is in fact authorized to perform the actions that he or she seeks to carry out. In turn, the agent's authority is apparent if a third person reasonably believes that the agent is authorized to perform an act or make a statement even though he or she actually has no such authority. *In the absence of notice to the insured of any limitations upon the general agent's authority, a general agent may bind his or her principal by any acts, agreements or representations, even if these are in violation of private instructions or restrictions upon his or her authority, and even if the agent is honestly mistaken in performing them.*

*Rodriguez de Oller v. Transamerica Occidental Life Insurance Company*, 171 D.P.R. 293, 2007 WL 1723369, 2007 PR Sup. LEXIS 237 (2007) (official translation) (internal citations omitted, boldface and underline added, italics original).

On that same vein, and pursuant to Art. 9.212(2) of the Insurance Code, 26 L.P.R.A. § 951c(2), a "general agent shall have the authority, which consistently with this Code, the insurer may confer upon him/her in the contract executed between them. Said general agent may transact insurance applications if he/she obtains a license as producer and meets all requirements established in § 950i of this title for said license, except as refers to the length of his/her previous residence in Puerto Rico." 26 L.P.R.A. § 951c(2) (official translation). Further,

> (1) **A producer** is not a representative of an insurer and **does not have the power through his own acts to bind the insurer** regarding a risk or in reference to any insurance transaction, **unless the producer has subscribed a contract with the insurer through which he/she is conferred the authority to act as his/her authorized representative** in the transaction of one or more kinds of insurance subscribed by the insurer. []
>
> (2) In those cases whereby [] an insurer wishes to appoint a producer as his/her authorized representative for transacting insurance, the latter shall subscribe a contract with said producer through which shall be established, among other things, the payment of commissions, the collection of premiums, the termination of the contractual relationship and whether said representation shall be of an exclusive nature.

Art. 9.210 of the Puerto Rico Insurance Code, 26 L.P.R.A. § 951a (official translation) (boldface and underline added). Also see Art. 9.063(1) of the Puerto Rico Insurance Code, 26 L.P.R.A. § 949l(1) ("No producer may act as authorized representative of an insurer, unless he/she subscribes a contract with the insurer through which the insurer authorizes the producer to negotiate insurance on behalf and in representation of the insurer.").

As held by the United States District Court for the District of Puerto Rico in *Seguros v. Morales-Vazquez*, 2018 WL 3763305, 2018 U.S. Dist. LEXIS 133864 (D.P.R. 2018),

> An agent is a person who has contracted to render some service, or to do something for the account or at the request of another. The principal's offer of authority may be express or implied, inferred from the acts of the principal, from acts or deeds which manifestly reveal such declaration of consent necessarily implying, evidently and clearly, the intent to be bound. The agent's acceptance of authority may also be express or implied, the latter being inferred from the acts of the agent. When an agent-principal relationship exists, [a]n agent is bound to perform services at the request of his principal, [Art. 1600 of the Civil Code of Puerto Rico, 31 L.P.R.A.

§ 4421], and the principal implicitly delegates the necessary authority to the agent to administer property that is essential to the agency. Consequently, it is reasonable to impute the agent's knowledge of pertinent facts to his principal.

*Seguros*, 2018 WL 3763305, at * 9, 2018 U.S. Dist. LEXIS 133864, at *27-28 (official translation) (internal citations and quotations omitted).

The Underwriters specifically authorized Aon to issue the Certificate of Insurance. Compare a **general agent's authority** to bind an insurer with the Contract of Insurance which authorizes Aon to "**act as a Managing General Agent (MGA) on behalf of an Insurer**" and be "remunerated for the work undertaken on behalf of the Insurer", which "may include profit or contingent commission". *Contract of Insurance*, Docket No. 6317-2, pp. 3 (boldface and underline added). Further, compare **a producer's authority** to bind an insurer **through his own acts when conferred authority to act as the insurer's authorized representative** (Art. 9.210 and Art. 9.063(1)) with the Certificate of Insurance which lists Aon as both a "Producer" and "Authorized Representative". See *Certificate of Insurance*, Docket No. 6317-5, pp. 2, 3. Such authorization is proof, and tantamount to the express mandate of Art. 1603 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 4422[4]. Accordingly, it naturally follows that Aon was acting as an agent or general agent of the Underwriters to execute certain acts on their behalf, which were clearly within the acts that can be delegated to be performed by an agent or general agent in accordance with the Puerto Rico Insurance Code. Thus, while a certificate of insurance cannot be used to amend, extend, or alter the coverage provisions, terms, or conditions of an insurance policy, the Underwriters are nonetheless bound under Puerto Rico law by the representations made by Aon when it issued the Certificate of Insurance under its express and clearly apparent authority.

III.    *The Puerto Rico Direct Action Statute vis a vis the Right to Sue Directly in a Puerto Rico Court as a Named Insured and/or Loss Payee*

  A.    *Direct Action Statute Under Art. 20.030 and Art. 11.190 of the Puerto Rico Insurance Code, 26 L.P.R.A. §§ 2003, 1119*

---

[4] "An agency may be express or implied. An express agency may be given by a public or private instrument and even by parol. The acceptance may also be express or implied, the latter being inferred from the acts of the agent." Art. 1603 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 4422

In its *Motion for Relief from Stay* (Docket No. 6317) and subsequent *Reply to Debtors' Objection to Motion for an Order Finding the Automatic Stay Inapplicable or, in the Alternative, For Relief From the Automatic Stay And Memorandum In Support Thereof* (Docket No. 7311),  Santa Rosa alleged that, as an additional insured and/or loss payee, it has a separate, distinct and direct action claim against the Underwriters under Art. 20.030(1) of the Puerto Rico Insurance Code, 26 L.P.R.A. § 2003(1), for the purpose of affording exclusive jurisdiction to Puerto Rico courts and is commonly referred to as the "direct action statute". Under Art. 20.030, any individual sustaining damages and losses may file an action directly solely against an insurer, or against the insurer and the insured jointly "subject to the conditions of the policy or contract".

> (1) **Any individual sustaining damages and losses shall have, at his option, a direct action against the insurer under the terms and limitations of the policy**, which action he may exercise against the insurer only or against the insurer and the insured jointly. **The direct action against the insurer may only be exercised in Puerto Rico**. The liability of the insurer shall not exceed that provided for in the policy, and the court shall determine not only the liability of the insurer, but also the amount of the loss. **Any action brought under this section shall be subject to the conditions of the policy or contract** and to the defenses that may be pleaded by the insurer to the direct action instituted by the insured.
>
> (2) In a direct action brought against the insurer by the person who suffered the damages, the former is barred from introducing those defenses of the insured based on the protection of the family unit or other similar immunities that are recognized in the legal system of Puerto Rico.
>
> (3) If the injured party brings suit against the insured alone, it shall not be deemed to deprive him of the right, by subrogation to the rights of the insured under the policy, to maintain action against and recover from the insurer after securing final judgment against the insured.

26 L.P.R.A. § 2003(1) (official translation) (boldface added).  See *In re San Juan Dupont Plaza Hotel Fire Litig.,* 789 F. Supp. 1212, 1216-1217 (D.P.R. 1992) (noting that the "direct action statute does not confer any additional rights against the insurer than those already held by the insured. Since its primary purpose is to provide remedial relief to the injured, it is and has been liberally construed." And, "[a]ny action brought under this section shall be subject to the conditions of the policy or contract and to the defenses that may be pleaded by the insurer to the direct action instituted by the insured."); Art. 20.010 of the Puerto Rico Insurance Code, 26 L.P.R.A. § 2001 ("The insurer issuing a policy insuring any person against loss or damage through legal liability for the bodily injury, death, or damage to property of a third person, shall

become absolutely liable whenever a loss covered by the policy occurs, and payment of such loss by the insurer to the extent of its liability therefor under the policy shall not depend upon payment by the insured of or upon any final judgment against him arising out of such occurrence.") (Official translation).

In short, the direct action afforded under Art. 20.030(1) of the Puerto Rico Insurance Code, 26 L.P.R.A. § 2003(1), means that a claimant does not have to seek recourse solely against the person that brought him harm but may choose to file his action directly against its insurer instead.

In addition to the foregoing and in the specific context of property insurance (which is the class of insurance at issue), Art. 11.190 of the Puerto Rico Insurance Code, 26 L.P.R.A. § 1119, acknowledges an insured's right to file a direct action against an insurer on account of damages or losses that are the object of a property insurance claim (termed a "Suit Against Us" by the Office of the Commissioner of Insurance for the Government of Puerto Rico) and is intended to void any insurance contract provision which attempts to limit an injured party's right to sue the insurer directly. Said Art. 11.190 states that:

> (1) **No policy delivered or issued for delivery in Puerto Rico and covering a subject of insurance resident, located, or to be performed in Puerto Rico, shall contain any condition, stipulation or agreement:**
>
> > **(a) Depriving the insured of right of access to the courts for determination of his rights under the policy in event of dispute.**
> >
> > **(b) Depriving the courts of Puerto Rico of jurisdiction of action against the insurer.**
> >
> > (c) []
> >
> > (d) Requiring that the policy be governed by the laws of any other jurisdiction except as necessary to meet the requirements of motor vehicle financial obligation laws or compulsory disability benefit laws of such other jurisdiction.
>
> (2) Any clause or stipulation in an insurance contract or policy that establishes conditions for the insured to bring legal action against the insurer to assert their rights in court to limit the period of time to do so for a period of less than one (1) year, will be null, without such nullity affecting the validity of the other provisions of the policy or contract.
>
> (3) []
>
> (4) For purposes of **[a] direct action by a property owner to recover damages under an insurance policy**, a notice of claim to the insurance company or its authorized representative or its authorized general agent constitutes an extrajudicial claim that tolls the statute of limitations applicable to the actions in accordance with Section 5303 of Title 31, **even when**

-12-

**the claim is a consequence of the impact of Hurricanes Irma and / or Maria of last September 2017.**

(5) For purposes of **[a] direct action by a property owner to recover damages under an insurance policy**, acceptance of a notice of insurance claim by the insurance company or its authorized representative or its authorized general agent constitutes acknowledgment that tolls the statute of limitations applicable to the actions in accordance with Section 5303 of Title 31, **even when the claim is a consequence of the impact of Hurricanes Irma and / or Maria of last September 2017.**

(6) []

(7) []

26 L.P.R.A. § 1119 (certified translation).[5]  Santa Rosa respectfully submits that **the direct action statute recognized in Art. 20.030(1) and Art. 11.190(4)-(5) are one and the same.**

As a direct consequence of the impact of Hurricanes Irma and/or María on Puerto Rico, Art. 11.190 was substantially amended on November 27, 2018, by Act No. 242-2018[6] to, *inter alia,* "establish[] [an insured's] right to legal recourse" against an insurer on account of the unprecedented damages or losses suffered by insured properties (a "Suit Against Us") following Hurricanes Irma and Maria.  In addition, Act No. 242-2018 was purposely intended to assure the right of the insured to expeditiously assert its rights in court as well as "provide the insured with the alternative of settling out of court through [an] appraisal process."  Office of the Commissioner of Insurance, Circular Letter No. CC-2019-1949-D, *Clarification of the Term for Bringing Legal Action Against Insurers and Applicability of The Appraisal Process to Claims Related to Hurricanes Irma And María* (June 25, 2019) (official translation).  Act No. 242-2018 further proposed the creation of specialized tribunals with judges vested with the knowledge and experience required to resolve insurance property claims.

We note that the Statement of Purpose of Act No. 242-2018, *inter alia*, clearly states:

It is high time, given the experiences we have endured, to codify the current protections for consumers provided under common law and adopt innovative initiatives, with a view to obtaining a swifter and better response from the insurance industry "**for the victims of hurricanes Irma and María**" and in the event of a future natural catastrophe. This legislative measure proposes several amendments to the Insurance Code of Puerto Rico that reflects the sense of what was discussed at the summit meeting [regarding the "Response of the Insurance

---

[5] See Certified Translation of 26 L.P.R.A. § 1119 attached hereto as **Exhibit I**.
[6] See Certified Partial Translation of Act No. 242-2018, **Exhibit II**.

Industry in view of Catastrophic Events and Mechanisms to Ensure the Protection of the Insureds"] *directed at establishing more agile processes that facilitate an appropriate response to the insureds and payment of claims.*

Office of the Commissioner of Insurance, Ruling Letter No. CC-2019-248-D, *Appraisal Process Established in [Act] No. 242-2018* (March 20, 2019) (citing Statement of Purpose of Act No. 242-2018) (official translation, emphasis original, italics ours). Ruling Letter No. CC-2019-248-D, issued by the Office of the Commissioner of Insurance for the Government of Puerto Rico, affirmed the retroactive applicability of Act No. 242-2018 for it is clear in the Statement of Purpose of Act No. 242-2018 that "the legislative intent was clearly to make such provisions of law be applicable to the claims that have arisen due to hurricanes Irma and María that are pending resolution…" Id.

It must be highlighted that the emphasis of the amendments to Art. 11.190 of the Puerto Rico Insurance Code, 26 L.P.R.A. § 1119, by Act No. 242-2018, further validate Santa Rosa's right to file a direct action against the Underwriters. See 26 L.P.R.A. § 1119(4)-(5).

Act No. 242-2018 was part of a concerted effort of the Legislature of Puerto Rico and the Office of the Commissioner of Insurance to "establish[] [an insured's] right to legal recourse" against an insurer on account of the unprecedented damages or losses suffered by insured properties following Hurricanes Irma and Maria. However, until November 27, 2018, those insured under property insurance remained substantially unprotected because such clear legislation providing for the creation of Appraisal Panels did not yet exist in Puerto Rico. And, while the right of an insured to file an action directly against the insurer as an additional insured and/or loss payee in the context of a property insurance did exist long before Act No. 242-2018 was approved, it had not been expressly incorporated in a statute before now. In the spirit of transparency, having exhausted all available legal search engines, Santa Rosa has been unable to identify case law that interprets or otherwise applies Art. 11.190 of the Puerto Rico Insurance Code, 26 L.P.R.A. § 1119, as amended by Act No. 242-2018. However, the legislative intent exposed in the Statement of Purpose of Act No. 242-2018, the text of Art. 11.190 and its interpretation by the Office of the Commissioner of Insurance **is very clear.** A reading of **Art. 11.190(4)-(5)**, as amended, ***in pari materia*** **with Art. 20.030(1), clearly shows now that there is a statutory right to a direct action against the**

-14-

insurer under both a property insurance context and a liability context, which we submit for jurisdictional purposes are one and the same.

In addition to the foregoing statutory rights to file a direct action in a Puerto Rico Court, Santa Rosa has a right to sue the Underwriters directly for breach of contract under the Contract of Insurance itself which created privity of contract between the Underwriters and itself as an additional insured and/or loss payee, whose full name was confirmed to the Underwriters by the Certificate of Insurance. Because Santa Rosa has an insurable interest in the damaged property located in Puerto Rico and is an additional insured and/or loss payee to the Contract of Insurance, it has a legal right to sue the Underwriters directly under Puerto Rico Law based on the Underwriters' disregard of Santa Rosa's insurable rights under the Contract of Insurance, Art. 11.190 and Art. 20.030(1) of the Puerto Rico Insurance Code, 26 L.P.R.A. §§1119, 2003(1), which squarely prohibit any attempt to deprive the courts of Puerto Rico of jurisdiction and require Puerto Rico laws be applied when an insurance policy covers a property located in Puerto Rico.

B.  *Direct Action Statute Under Art. 1209 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3374 vis a vis the Right to Sue Directly as Loss Payee*

In the alternative, and pursuant to Fed. R. Civ. P. 8, Santa Rosa respectfully submits that Article 1209 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3374 may be applicable to Santa Rosa as a third party beneficiary. See *A.L. Arsuaga, Inc. v. La Hood Const., Inc.,* 90 D.P.R. 104, 1964 PR Sup. LEXIS 231 (1964) (official translation) ("it is perfectly admissible for a third person to have direct action against one of the contracting parties to demand, whenever warranted by special circumstances, the fulfillment of the obligation assumed.").

As a loss payee, Santa Rosa may be construed to be a "third party beneficiary" to the Contract of Insurance with standing to claim coverage under the Contract of Insurance. See *Monroe Bank v. State Farm Fire & Cas. Co.,* 2010 U.S. Dist. LEXIS 119736, at *4, 2010 WL 4668428, at *2 (S.D. Ind. 2010). A "loss payee" is termed a "third party beneficiary" only in name for even if not expressly denominated under the definitions of an insurance policy, **a "loss payee" is not a stranger to the contract between an insured and its insurer; neither is it a third party or a judgment creditor**. Id. "Once a third-party beneficiary

-15-

accepts the contract, all are bound by it and cannot revoke or modify it to the detriment of the third party." Id. (boldface added).

Puerto Rico law expressly recognizes **a direct cause of action** in favor of third-party beneficiaries to a contract.  See *M.R. (Vega Alta), Inc. v. Caribe General Elec. Products, Inc.*, 31 F. Supp. 2d 226, 238 (D.P.R. 1998); *Real Legacy Assurance Co. v. Santori Trucking, Inc.*, 2008 WL 11357822, at *3 (D.P.R. 2008).  Specifically, Article 1209 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3374, states in pertinent part that "[s]hould the contract contain any stipulation in favor of a third person [such as a third party beneficiary], he may demand its fulfilment, provided he has given notice of his acceptance to the person bound before it may have been revoked."  31 L.P.R.A. § 3374 (official translation, emphasis added).  In other words, in Puerto Rico, "[a] stranger to the contractual relationship may demand the fulfillment of a contract successfully only if the contract contains a stipulation in his favor." *Torres v. Bella Vista Hosp., Inc.*, 523 F. Supp. 2d 123, 152 (D.P.R. 2007); *In re William Contractor, Inc.*, 2016 WL 1317434, at *2 (Bankr. D.P.R. 2016).

In *A.L. Arsuaga, Inc. v. La Hood Const., Inc.*, 90 D.P.R. 104, 1964 PR Sup. LEXIS 231 (1964) (official translation), the Supreme Court of Puerto Rico recognized that a third-party who has not been a party to a contract but to whom stipulations in his favor have been made, is considered a "third party beneficiary" and may demand the fulfillment of the contract, subject to notice of its acceptance.  A notice of acceptance "may be express or implied, by word of mouth or by acts, insofar as one and the other reflect the will of the third person to assume a juridical nexus [with the parties to the contract]." Id. at 107 (quotations omitted).  "No matter how the third person manifests his adhesion to the covenant as respects him, he is bound." Id. at 107.

In a like manner, the Supreme Court of Puerto Rico affirmed in *Maryland Cas. Co. v. San Juan Racing Ass'n*, 83 D.P.R. 559, 1961 PR Sup. LEXIS 437 (1961), that the insurance business has always been considered as vested with public interest justifying the intervention of the state in its regulation and held that the "law of the state having more contact with the object insured is controlling, the presumption being that that the state which has more interest in a question which may arise in connection with the contract."

IV.    *The McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015*

Pursuant to the *McCarran-Ferguson Act* of 1945, 15 U.S.C.S. § 1012(b) *et seq.*, controversies related to insurance contracts are delegated to the individual states and territories and cannot be sidestepped by federal laws, if applicable. While there has been a lot of discussion with respect to the nature of the insurance business, there should be no doubt that the *McCarran-Ferguson Act* intended to safeguard for each state or territory insurance laws and regulations. Accordingly, the legislative history of the Act and the cases that have followed consistently conclude that the "business of insurance" was understood by Congress to mean the underwriting of risks and the relationship and transactions between insurance companies and their policyholders. Thus, the "business of insurance," as noted in *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205 (1979), is concerned with:

> The relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement -- these were the core of the 'business of insurance.' Undoubtedly, other activities of insurance companies relate so closely to their status as reliable insurers that they too must be placed in the same class. But whatever the exact scope of the statutory term, it is clear where the focus was -- it was on the relationship between the insurance company and the policyholder.

*Group Life & Health Ins. Co.*, 440 U.S. at 215-216 (citing *SEC v. National Securities, Inc.*, 393 U.S. 453, 460 (1969)).

The present case relates to the contract between the Underwriters, the Debtors, and Santa Rosa, and its interpretation and enforcement constitute an essential element of the business of insurance. Because Congress intended the *McCarran-Ferguson Act* to allow the states to regulate "free from inadvertent preemption by the federal statutes of general applicability"[7], it consequently follows that Congress reversed the standard of preemption, creating a "clear statement rule… that state law enacted 'for the purpose of regulating the business of insurance' do not yield to conflicting federal statutes unless a federal statute

---

[7] *Merchants Home Delivery Serv., Inc. v. Frank B. Hall & Co.,* 50 F.3d 1486, 1488-1489 (9th Cir. 1995).

specifically requires otherwise."[8] It also follows that the issues and controversies between Santa Rosa and the Underwriters are subject to Puerto Rico laws and must be litigated in Puerto Rico courts.

Thus, Santa Rosa would not only be able to file its claim as a first party insured in Puerto Rico courts against the Underwriters but also file a parallel complaint with the Insurance Commissioner for not responding timely to Santa Rosa's claim notices as per Art. 27.150 of the Puerto Rico Insurance Code, 26 L.P.R.A. § 2714a, and violating various provisions of Articles 27.16 and 27.162, 26 L.P.R.A. §§ 2716a and 2716b, which regulate the claims handling process.

V. *The Integrity of the Contract of Insurance and General Insurance Law Principles*

A. *The Contract of Insurance, Property Insurance and the Insured*

At a hearing held on February 24, 2020, this Court referred to the case of *General Accident Ins. Co. P.R. v. Ramos,* 148 D.P.R. 523, 531 (1999).[9] In *General Accident,* the controversy centered on an automobile collision claim and the Puerto Rico Supreme Court determined that the relationship between the insured(s) and the insurer is contractual and is governed by what the parties agreed to in the insurance contract, which is the law that rules their contractual relationship.

Santa Rosa agrees that the Contract of Insurance governs.[10] Furthermore, it is fair to affirm that "[t]he polar star of contract interpretation of an insurance contract is the intention of the parties."[11] And at this point, it becomes important to emphasize that:

> Some of the essentials of a valid contract of insurance may be unexpressed and rest in implication. Those matters which are implied are, nevertheless, as much a part of the contract as though they had been expressly written therein. And it has been stated that the insured's name in the policy is not always important, if an intent to cover the risk is clear.

E.M. Holmes, *Appleman on Insurance*, Vol. 2 §5.5, pp 92-93 (1996). For it is undeniable that "[a]n insurer may validly agree to add as an additional insured, any person or organization to which the named insured

---

[8] *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 103, 104 (7th Cir. 1998) (citing *U.S. Dept. of Treasury v. Fabe,* 508 U.S. 491, 507 (1993)).

[9] See Certified Translation of *General Accident Ins. Co. P.R. v. Ramos*, *supra*, attached hereto as **Exhibit III**.

[10] **Santa Rosa has never suggested that under its right to file a direct, separate and distinct action against the Underwriters, the insurer's liability somehow becomes independent of its contractual obligations. See *Ruiz Rodriguez v. Litton Industries Leasing Corp.*, 574 F.2d 44, 46 (1978).**

[11] E.M. Holmes, *Appleman on Insurance*, Vol. 2 §5.4, pg. 72 (1996).

is obligated by virtue of a written contract, to provide insurance." E.M. Holmes, *Appleman on Insurance*, Vol. 2 §196.03 (internal citations omitted).

In the case of Santa Rosa, the Debtors argue that counsel for Santa Rosa has admitted that Santa Rosa is allegedly not included in the Contract of Insurance as a "Loss Payee".  See Mar. 21, 2019 Hr'g. Tr. 75-76:24-5. (Court: "[T]he insurance policy itself does not name the landlord as a loss payee or beneficiary, right?" [Landlord's counsel]: "Correct.").  The foregoing is correct in that the name Santa Rosa is not specifically stated in the policy. However, while the Contract of Insurance does not specifically name Santa Rosa, it expressly provides that the Underwriters obligated themselves to insure "any other party for which the Insured has the responsibility for providing insurance, as their respective interest may appear … all hereafter referred to as the 'Insured' "  each of which "will have the same protection and obligations as if the policy has been issued individually to each of them".  *Contract of Insurance*, Docket No.  6317-2, pp. 4 and 31, ¶ 51.  In turn, the Certificate of Insurance issued by Aon under the authority given by the Underwriters, certified the full name of each one of the loss payees that were covered in the Contract of Insurance.

From a practical perspective, the Debtors were, and still are, a national retail chain that operates hundreds of leased premises; thus, it is usual and customary that the Underwriters delegate the task of certifying those whom the Debtors were obligated to insure in by way of a certificate of insurance instead of listing hundreds of landlords and amending the insurance contract every time a landlord was added or removed.  Both the Debtors and the Underwriters know this. Further, it is clear that Store No. 1915 was covered by the insurance policy because the Debtors claimed and the Underwriters paid millions of dollars for the damage to Store No. 1915.

Aon issued a valid Certificate of Insurance as it was authorized to do under the terms of the Contract of Insurance, thus, Santa Rosa IS in fact a loss-payee or additional insured under the Contract of Insurance. There cannot be any doubt as well that the *Contract of Insurance* in this case covered Store No. 1915.

> If the insurer's performance of its duty to pay runs directly to the insured for indemnifying the insured's direct loss, then the insurance classification is called *first-party insurance*. The insurance benefit (the policy's financial proceeds) is directly paid to the insured to rectify the

insured's actual loss. Since the first-party insurer's promise to pay "runs" to the insured, the insured files a direct claim with the first-party insurer. If the insurer does not pay the claim, then the insured can institute a *direct action* (a lawsuit) to recover the promised policy benefits.
...

The classic example of first-party insurance is property insurance. In first-party property insurance, the damage to the insured's property ... is an *immediate, direct diminution of the insured's assets*. The insurance proceeds are then paid by the first-party insurer directly to the insured to redress ("indemnify") the insured's actual, direct loss. The goal and purpose of all first-party coverages such as property is to reimburse the insured for the insured's actual property loss (restoration, dollar for dollar) but generally no more. The objective of first-party indemnity is to fulfill the insured's reasonable expectation interest by putting the insured in as good a position as if the loss had not occurred, but not in a better position. That objective comports with the classic function of contract theory and contract remedies, i.e., to fulfill the reasonable expectations of the contracting parties. []

15-122 John A. Appleman & Jean Appleman, *Appleman on Insurance Law & Practice Archive* §112.10[d]

(2nd ed. 2011) (italics added).

The civil law doctrine of reasonable expectations, as analyzed by Associate Supreme Court Judge

Stephen Breyer, then Judge of the First Circuit:

[m]ight be viewed as incorporated by reference into the contract. Article 1210 of the Civil Code, 31 L.P.R.A. § 3375 ("contracts ... are binding not only with regards to the fulfillment of what has been expressly stipulated, but also with regards to all the consequences which, according to their character, are in accordance with good faith, use and law"); *E.L.A. v. Great American Insurance Co.*, 106 D.P.R. 825, 829 (1977) (**when parties conclude agreements on matters regulated by statute, statutory provisions are implicitly incorporated into contract. And, plaintiff's suit might be considered one for breach of such an implicit term. In either event, the suit would arise under Civil Code Article 1054**, which states that:

[t]hose who in fulfilling their obligations are guilty of fraud, negligence, or delay and those who in any manner whatsoever act in contravention of the stipulations of [their contractual obligations] … shall be subject to indemnify for the losses and damages caused thereby.

*Noble*, 738 F.2d at 53 (boldface added).

Consequently, with respect to the Underwriters, an additional insured or loss payee, being a "first party insured" on account of its contractual relationship with the Underwriters in a property insurance context, has the legal right to seek recourse directly from them and recover the full amount of its claimed losses up to the extent that its insurable interest may appear. Therefore, the Debtors could not settle Santa Rosa's separate, direct and distinct claim with the Underwriters without Santa Rosa's consent and as

discussed below, under the doctrine of *promissory estoppel* the Underwriters are barred from denying Santa Rosa's rights as additional insured or loss payee.

Art. 4.040 of the Puerto Rico Insurance Code, 26 L.P.R.A. § 404, defines property insurance as:

the insurance on all classes of real or personal property of every kind and interest therein, against loss or damage from any or all hazards or causes, and against loss consequential upon such loss or damage, other than noncontractual legal liability for any such loss or damage.

26 L.P.R.A. § 404 (official translation).

Also, Art. 11.140 of the Puerto Rico Insurance Code, 26 L.P.R.A. §1114, further provides that an insurance policy shall specify the names of the parties to a contract, and the status of any party where such status is material to the contract. As previously stated, the pertinent Certificate of Insurance in this case provided the names of the additional insureds to the Underwriters and it must be construed that since Aon was acting as agent of the Underwriters, no additional notice had to be given or any type of endorsement required.

The purpose of all insurance contracts is to offer the most protection to the insured. See *Echandi Otero v. Stewart Title*, 174 D.P.R. 355 (2008). "[W]hen in doubt about the interpretation of a policy, it should be resolved taking into consideration the purpose of the policy: to provide protection to the insured." *Quiñones López v. Manzano Pozas*, 141 D.P.R. 139, 1996 PR Sup. LEXIS 290 (1996) (official translation) (internal citations omitted).

Further, Art. 11.250 of the Puerto Rico Insurance Code, 26 L.P.R.A. § 1125, provides that,

Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended or modified by any lawful rider, or application attached to and made as part of the policy.

26 L.P.R.A. § 1125 (official translation).

In the present case, the Certificate of Insurance is entirely compatible with the Contract of Insurance, as its purpose is to name the "Loss Payee" in accordance with the authority granted to Aon by the Underwriters and the blanket additional insurance provision in the Contract of Insurance to include any party that the Debtors was obligated to insure. See *e.g. Golden Idem. Co. v. Liberty Mut*, 45 F.Supp. 9, 11 (1942); 11A *Couch on Insurance*, §159:1 (3rd ed. 2019).

-21-

As held by the Supreme Court of Puerto Rico in *Barrera v. Santana*, 87 D.P.R. 227, 1963 PR Sup.

LEXIS 245 (1963) that:

> **Those portions especially drafted in the policies prevail over the printed clauses whenever they are inconsistent.** The reason is that as to those portions especially written there has been greater assent or meeting of the minds between the contracting parties than as to the printed portions of the contract. *Hagan v. Scottish Insurance Company*, 186 U.S. 423, 428 (1902); *Thomas v. Taggart*, 209 U.S. 385, 389 (1908); *Fireman's Fund Ins. Co. v. Globe Navigation Co. et al., The Nottingham*, 236 Fed. 618, 633 (1916).

*Barrera*, 87 D.P.R. at 236 (boldface added). Thus, **the printed boiler plate disclaimers of the Certificate of Insurance**, which forms part of the Insurance Contract, **should be disregarded when faced with language specifically written to identify those included under the blanket "Named Insured" clause as identified in the Certificate of Insurance.** Accordingly, the Certificate of Insurance confirms the existence of coverage and that a contractual relationship exists between the Underwriters and Santa Rosa that cannot be refuted or considered unreasonable or unanticipated.

### B.  A Loss Payee

"**[A] loss payee under an insurance policy is a party designated to receive payment should the named insured prevail on its claim.**  [] A loss payee recovers to the extent the named insured recovers. Moreover, [] '[a] loss payee may only recover if the insured could have recovered.' " *Supermercados Econo v. Integrand Assur. Co.,* 359 F. Supp. 2d 62, 70 (D.P.R. 2005) (citing John Appleman, *Insurance Law & Practice*, § 3335 (1979)). "[A] loss payee's right to proceed against an insurer cannot be defeated by a settlement between the insured and the insurer without the knowledge and consent of the loss payee." *Cole Taylor Bank v. Truck Ins. Exch.,* 1994 US Dist. Lexis 3705 (N. D. Ill. 1994) (citing *Perfect Investments, Inc., v. Underwriters at Lloyd's, London,* 782 P.2d 932, 934 (Okla. 1989) and *Conner v. Northwestern Nat. Cas. Co.,* 774 P.2d 1055, 1057 (Okla. 1989)).

In *Perfect Investments, Inc., v. Underwriters at Lloyd's, London, supra*, the Supreme Court of Oklahoma determined the following:

> The issue in *Conner v. Northwestern Nat'l Casualty Co.*, 774 P.2d 1055, 1057 (Okla.1989) was whether a simple loss payee is bound by settlement negotiations between an insurer and its

-22-

insured mortgagor. We held that a loss payee is not bound by an insurance company's settlement agreement with a mortgagor entered without the knowledge or consent of the loss payee. In so holding, we aligned ourselves with the majority view. We said:

> "The predominant rule is that a mortgagee entitled to proceeds of an insured loss by reason of a simple loss payable clause is not affected or bound by an adjustment of the loss, whether by arbitration or settlement, between the insured mortgagor and the company without the mortgagee's knowledge or consent." Because the loss payee did not participate in settlement negotiations between the insurer and its insured, he was found to have the right to maintain an independent claim or cause of action against the insured.

*Perfect Investments, Inc.,* 782 P.2d at 934.

**On the same vein, in** *Bank of Nichols Hills v. Bank of Okla*.**, 196 P.3d 984 (2008), the Court of**

**Civil Appeals of Oklahoma** held that the insurer,

> did not act in a commercially reasonable manner or in accordance with reasonable commercial standards of its business when it issued the loss check to the insured without notice to the mortgagee. BOK's expert testified that it is standard practice in the industry to notify the lender of a loss this size, ***in order to avoid exactly the result that occurred here.*** Mortgagees often have a greater financial stake in an insurance policy than do the mortgagors. That was clearly true in this case. While there was opinion testimony to the contrary, the trial court was entitled to conclude that [the insurer] did not act in a commercially reasonably manner []

*Bank of Nichols Hills v. Bank of Okla.,* 196 P.3d at 988 (italics original).

It would be unconscionable and contrary to insurance law precedent for the Underwriters to deny having at the very least constructive knowledge of the fact that Santa Rosa is included as an additional insured under the blanket "Named Insured" clause of the Contract of Insurance. The Underwriters cannot deny having knowledge of Santa Rosa's rights because "[a]ll documentation and information [is] to be recorded and/or transmitted electronically and stored electronically in Aon Limited repositories…" *Records, Transmitting & Storing Information*, *Contract of Insurance*, *Contract of Insurance* and *Notices*, Docket No. 6317-2, p. 10. Considering the number of Underwriters and considering that each one of them is jointly and severally responsible to its insureds, the creation of this repository makes a lot of sense.[12]

---

[12] The Certificate of Insurance contains a list of the Insurance Companies that insured Sears Store No. 915 and since there are more than one, pursuant to Article 11.220 of the Insurance Code of Puerto Rico, 26 L.P.R.A. §1122, they

In any event, a group of experienced insurers such as the ones formed by the Underwriters in this case, knew or should have reasonably known that Sears had many landlords who historically ask their tenants to procure insurance and include them as additional insureds. Hence, a minimal amount of due diligence would have confirmed that Santa Rosa had an insurable interest and was an additional insured and/or loss payee pursuant to the terms of the Contract of Insurance itself.

### C. Insurable Interest over Store No. 1915

Having referred earlier to the need to have an insurable interest in order to file a claim against an insurer, it now behooves Santa Rosa to expand on the subject and refer to the applicable provisions of the Puerto Rico Insurance Code. In the present case while the *Lease* was in effect both, Santa Rosa and Sears had an insurable interest over Sears Store No. 1915. Pursuant to Article 11.050 of the Puerto Rico Insurance Code, 26 L.P.R.A. § 1105:

> (1) No insurance contract on property or of any interest therein or arising therefrom shall be legally enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured.
>
> (2) Insurable interest as used in this section means any actual, lawful, and substantial economic interest in the safety preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment.
>
> (3) The measure of an insurable interest in property is the extent to which the insured might be damnified for losses, injury, or impairment thereof.

26 L.P.R.A. § 1105 (official translation).

It should be noted that the term "insurable interest" in property, as highlighted above, means "any actual lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment." 26 L.P.R.A § 1105(2).

Also, the general rule is that "Policies of insurance are contracts of indemnity, and for that reason the measure of recovery is the value of the interest lost. […]" *Liverpool & London & Globe Ins. Co. v. Bolling*, 176 Va. 182, 192, 10 S.E. 2d 518, 522 (1940) (citing *Thompson v. Gearhart*, 137 Va. 427, 119

---

are regarded to be each one jointly and severally responsible for the payment of any claim insured in connection with a certain store and building known as Sears Store 1915.

S.E. 67 (1923)). The reason this is so is because the "only permissible object of insurance is indemnity rather than **profit**." *Harrington v. Agricultural Ins. Co. of Watertown N.Y.*, 179 Minn. 510, 515, 229 N.W. 792 (1930) (boldface added).

**The purpose of the insurable interest doctrine is to prevent insurance contracts from becoming a form of gambling and to prevent people without an insurable interest from intentionally destroying life or property for financial gain.** See *Baker v. Phoenix Ins. Co.,* 2013 U.S. Dist. LEXIS 193972 (W.D. Wash. 2013).

### D. Promissory Estoppel

The common law doctrine of Promissory Estoppel bars the Underwriters from refusing to acknowledge Santa Rosa's rights as "Loss Payee" under the Contract of Insurance. This common law doctrine is aligned to Puerto Rico's Civil law doctrine which bars a party from going against his own acts. In *International General Electric v. Concrete Builders,* 104 D.P.R. 871, 1976 PR Sup. LEXIS 2352 (1976)*,* the Supreme Court of Puerto Rico incorporated the foregoing doctrine to our Civil Code when it established that contradictory behavior has no place in the field of Law and thus it should be prevented. Moreover, it is a general rule that nobody can go against its own acts, a principle that is rooted in the general principle of good faith.

> The contents of the rule that nobody is allowed to go against his own acts is grounded and rooted in the general principle of Law which orders that one should act in good faith in the juridical life. Contradictory behavior has no place in the field of Law, and should be prevented. This principle has as a parallel in English Law the doctrine of "estoppel." The minimum typical effect which should be acknowledged to unilateral acts is that they set up an "estoppel". The latter prevents that the subject upon whom the unilateral act may be charged may act in contradiction with his declared will.

> Since "going against one's own acts" is a general principle of Law, of universal validity, it spontaneously issues from the provision of art. 6 of the Civil Code instructing that when there is no statute applicable to the case, the court shall decide in accordance with equity, which means that natural justice, as embodied in the general principles of jurisprudence and in accepted and established usages and customs, shall be taken into consideration. Its efficacy, its entailing strength has life and effect of its own, which tend to protect the trust deposited in the appearances, which by extension is the protection of a social interest or the attainment of an ideal of justice. The necessary premises or constituting elements for the application of the juridical rule that no one can go against his own acts may be summarized as follows: (a) A certain behavior of a subject, (b) that he has given life to a situation contrary to reality, that is,

apparent and, through such appearances, may influence the behavior of others, and (c) that it be the basis of the trust of another party which has acted in good faith and that, for that reason, has acted in a manner which would cause him prejudice if his trust was defrauded.

*International General Electric v. Concrete Builders,*104 D.P.R. 871, 1976 PR Sup. LEXIS 2352, 7-11 (1976) (official translation).

There are five elements prerequisites for a recovery under the doctrine of promissory estoppel, to wit: "(1) A promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise." *Hellbaum v. Burwell*, **1 Wn. App. 694, 700, 463 P. 2d 225 (1969)**.

In *General Accident Ins. v. Am. Nat'l Fireproofing*, 716 A.2d 751 (R.I. 1998), a case involving brokers issuing certificate of insurance, the doctrine of promissory estoppel is discussed as an equitable doctrine which bars a person from denying liability when the party makes "[a] promise which the promisor should reasonably expect[s] to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance … [and] injustice can avoided only by enforcement of the promise." *General Acc. Ins. Co. of America*, 716 A.2d at 755.

In the case at bar, Santa Rosa relied on the representations contained in the Certificate of Insurance, i.e, that it was a loss payee under the Contract of Insurance. Neither Aon nor the Underwriters can back away from that representation at this time and are estopped from doing so; as they cannot go against their own acts.

It should be highlighted that the insurer owes a duty to indemnify the **first-party** insured in a property insurance context and pay the damage to the insured whose property suffers an immediate, **direct** diminution of value.

*E.   Improper Payment Doctrine*

In furtherance to the foregoing, the Underwriters exposed themselves to paying twice under the "improper payment" doctrine of Art. 1116 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3166, which

requires "[p]ayment [] be made to the person in whose favor [an] obligation is constituted, or to another authorized to receive it in his name." 31 L.P.R.A. § 3166 (official translation).

Under the Puerto Rico Civil Code, an obligation may be extinguished, *inter alia*, by payment. See 31 L.P.R.A § 3151 (official translation). "A debt shall not be considered as paid until the full amount of the thing has been delivered…". 31 L.P.R.A. § 3161 (official translation). To that effect, "[a]ny person, whether he has an interest or not in the fulfillment of the obligation... can make the payment." 31 L.P.R.A. § 3162 (official translation). Notwithstanding, **"[p]ayment must be made to the person in whose favor the obligation is constituted, or to another authorized to receive it in his name."** 31 L.P.R.A. § 3166 (official translation). **Ergo, while "payment made in good faith to the person who is in possession of the credit shall release the debtor,"** 31 L.P.R.A. § 3168, **payment otherwise made to a third person is deemed invalid unless "it may have been beneficial to the creditor."** 31 L.P.R.A. § 3167 (official translation, emphasis added). See also C*MI Capital Market Investment, LLC v. Municipality of Bayamon*, 410 F.Supp.2d 61, 74 (D.P.R. 2006) (recognizing the "improper payment" doctrine of Art. 1116 of the Puerto Rico Civil Code and noting that "the only legal effect of such 'improper payment' would be that the contractual obligation set forth in the [agreement] remains in full force and effect **and that payment remains due**.").

The Underwriters, as a group of experienced insurers, knew or should have known that the Debtors had an obligation to obtain property insurance with loss payable clauses in favor of one or more landlords under the terms of one or more lease agreements. The Underwriters disregarded Santa Rosa's rights as an additional "Named Insured" and/or loss payee under the Contract of Insurance. As such, the Underwriters willfully, knowingly or recklessly participated in the misrepresentations made by the Debtors regarding Santa Rosa, as they were timely informed by Santa Rosa of its claim. In the alternative, the Underwriters incurred in gross negligence by executing the Settlement Agreement and paying the Debtors, blatantly disregarding Santa Rosa's rights as additional insured and/or loss payee. A minimal amount of due diligence would have confirmed that this was the case, mainly because Santa Rosa had notified the Underwriters that it had an insurable interest in former Store No. 1915.

-27-

Having previously discussed the principle of insurable interest and the doctrine of promissory estoppel discussed above, Santa Rosa considers it appropriate to add that while Paragraph 53 of the Contract of Insurance provides that: "Loss, if any, shall be adjusted with and payable to Sears Holdings Corporation or as directed by it"[13], the Underwriters are estopped from trying to shield themselves from liability under Paragraph 53. It is Santa Rosa's position that the Underwriters cannot argue that they paid as directed by the Debtors under Paragraph 53 and therefore should not be ordered to pay twice because such a position contradicts Section 6.01 of the Lease Agreement, which requires that Sears Roebuck maintain "at [its] sole cost and expense [] insurance" for the benefit of and contain a loss payable clause "to Landlord [(Santa Rosa)] and Tenant [(Sears Roebuck)]". *Lease Agreement*, Docket No. 6317-1, p. 30, § 6.01; p. 31, § 6.02(a). But most importantly, such a position contradicts the blanket "Named Insured" clause of the Contract of Insurance, which acknowledges the obligation of the Underwriters to treat as an additional insured anyone the Debtors has a "responsibility for providing insurance, as their respective interest may appear". *Contract of Insurance*, Docket No. 6317-2, at p. 4.

Furthermore, the Underwriters were aware of Santa Rosa's insurable interest claims well before the Settlement Agreement was executed and cannot conveniently ignore its rights by claiming protection under Paragraph 53. Additionally, to interpret Paragraph 53 in a vacuum also contradicts Paragraph 51 of the Contract of Insurance, which states that:

> *Each of the Insureds* insured by this policy [, (i.e., "Sears Holding Corporation [] and any other party for which the Insured has the responsibility for providing insurance, as their respective interest may appear",[14]] *will have the same protection and obligations as if the policy has been issued individually to each of them*, []

Contract of Insurance, Docket No. 6317-2, ¶ 51, p. 31 (boldface original, underline and italics added).

Santa Rosa, as an additional insured and/or loss payee, is entitled to the same protection as the Debtors under the Contract of Insurance. The intent of the Lease Agreement and the Contract of Insurance

---

[13] Contract of Insurance, Docket No. 6317-2, p. 31, ¶ 53.
[14] Contract of Insurance, Docket No. 6317-2, at p. 4.

is to provide insurance for the purpose of restoring and repairing former Store No. 1915. For the avoidance

of doubt, and as expressly stated in Article 1233 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3471:

> If the terms of a contract are clear and leave no doubt as to the intentions of the contracting
> parties, the literal sense of its stipulations shall be observed. If the words appear to be contrary
> to the evident intention of the contracting parties, the [intent] shall prevail."

31 L.P.R.A. § 3471 (official translation).  Which means that when in doubt, the intent of the parties is king.

Accordingly, payment remains due under the "improper payment" doctrine of Art. 1116 of the

Puerto Rico Civil Code, 31 L.P.R.A. § 3166, and the Underwriters must pay twice.

### F.   The Principle of Good Faith

In *Velilla v. Pueblo Supermarkets, Inc.*, 111 D.P.R. 585, 1981 WL 176460 (1981), Puerto Rico's

highest court determined the following regarding the principle of good faith,

> Article 7.1 of the new Preliminary Title of the Spanish Civil Code [adopted  on May 31, 1974]
> states that "Rights shall be exercised in accordance with the requirements of good faith." It has
> been pointed out that this article "reaffirms a truly general principle of Law on whose existence
> and importance the doctrine and the case law agree, which had been basically obtained, among
> other precepts, from Art. 1258 of the Civil Code." I *Comentarios a las Reformas del Código
> Civil* 366 (Ed. Tecnos, Madrid) (1977). Art. 1210 of the Puerto Rico Civil Code, 31 L.P.R.A.
> §3375, incorporates the provisions of Art. 1258 of the Spanish Civil Code. We note the same
> parallelism in the scores of other articles where both codes refer to the concept of good faith.
> As Espín Cánovas says: "Since Roman times, an ethical content has been demanded in human
> endeavors [*within the province of what Law means*] through the most diverse institutions. …"
> I D. Espín Cánovas, *Manual de Derecho Civil Español* 518 (Ed. Rev. de Derecho Privado,
> Madrid) (1979). We hold that the requirement of good faith is also a general requirement of our
> Law and that, as such, it extends to our whole legal system. The ethical content of each act
> should be examined in the light of its particular circumstances, but a behavior based on good
> faith is a general rule that encompasses every juridical activity.

*Velilla v. Pueblo Supermarkets, Inc.*, 111 D.P.R. 585, 735-736, 1981 WL 176460 (1981) (official

translation) (phrase inserted taken from the Spanish Civil Code).

In the present case, the Underwriters violated the principle of good faith when they chose to ignore

their own Contract of Insurance and the Certificate of Insurance it authorized Aon to issue.

### Closing Remarks

Having outlined the applicable law and the fundamental principles of integrity and coherence of

the business of insurance, five basic conclusions stand out in support of the relief sought by Santa Rosa.

First, the clause creating an expanded number of blanket "Named Insured" to cover both, the primary insured (Sears Holdings Corporation) and those it was obligated to insure, was included in the policy primarily, but not exclusively, to protect those "blanket named insureds" (such as Santa Rosa), should Aon or the Underwriters fail to issue a Certificate of Insurance for any one of those additional insureds or loss payees. It cannot be concluded, by any means, that its purpose was intended to give the Debtors or the Underwriters an excuse to disregard Santa Rosa's rights. On the contrary, in a property leasehold context, the purpose cannot be other than to assure that each insured will be able to recover their pro rata share "as their interest may appear". In turn, this allows for the payment of the claim to be distributed among the various insureds in accordance with their respective insurable interest in the property to use the proceeds of the insurance **solely to repair and restore, and nothing else**.

Second, the Certificate of Insurance cannot be construed to be a worthless paper, nor can the authorization given by the Underwriters to Aon to issue certificates or evidence of insurance be interpreted as having no value. A different interpretation would result in the abolition of the principles of reasonable expectations, the relevancy of the clear intentions of the parties, and the principles of Promissory Estoppel and good faith.

Third, unless it is given its appropriate value, in its proper perspective, the mandate given by the Underwriters to Aon to issue Certificate of Insurance's and serve as their depository of documents would invalidate the legal and contractual agency relationship that exists when one person (the agent, Aon in this case) acts on behalf of another (the principal, the Underwriters in this case) with the authority to perform certain acts which, if disregarded, would void the binding effects that an act of an agent has on a principal. And,

Fourth, as previously discussed in the *Motion for Relief from Stay* (Docket No. 6317), Santa Rosa highlights *Riggs v. Palmer*, 115 N.Y. 506 (N.Y. 1889), where the Court of Appeals of New York aptly stated that:

> No one shall be permitted to profit by his own fraud, or take advantage of his own wrong, or to found any claim upon his own inequity or to acquire property by his own crime. These maxims

are dictated by public policy, have their foundation in universal law administered in civilized countries, and have nowhere been superseded by statutes. [15]

*Riggs v Palmer*, 115 N.Y. 506, 511-512 (N.Y. 1889).  Santa Rosa cited two other cases to sustain the proposition that "[i]t is a principle of the widest application that equity will not permit one to rely on his own wrongful act, as against those affected by it but who have not participated in it, to support his own asserted legal title or to defeat a remedy which except for his misconduct would not be available." *Deitrick v. Greaney*, 309 U.S. 190, 196 (1940) (citing *United States v. Dunn*, 268 U.S. 121, 133 (1925) and *Independent Coal & Coke Co. v. United States*, 274 U.S. 640, 648 (1927)). Should this Court extend the automatic stay to the Underwriters in this case, thereby preventing Santa Rosa from claiming directly from them, all involved will have profited from their own fraud and will have taken advantage of their own wrongdoing.

Finally, Santa Rosa submits that the resolution of the issues involved demand a coherent state policy in accordance with the *McCarran Ferguson Act* reverse preemption with respect to insurance matters that involve as defendants a group of underwriters and an insurance producer in dual roles as broker of the primary insured and agent of the Underwriters and, as plaintiff, an additional insured or loss payee.  This should be left to the Puerto Rico courts for resolution

It defies logic that the stay be extended to the Underwriters in this case, in spite of the undisputed facts analyzed vis a vis the applicable law and jurisprudence within the framework of the principles of good faith and fair dealings.  Santa Rosa respectfully submits that it should be allowed to file a claim against the

---

[15] "The equitable construction … is defined by Aristotle, as frequently quoted, in this manner: *Aequitas est correctio legis generaliter latae qua parti deficit.* [*Where there is law that is too general and thereby deficient, equity corrects the same.*] If the law-makers could, as to this case, be consulted, would they say that they intended by their general language that the property of a testator or of an ancestor should pass to one who had taken his life for the express purpose of getting his property? In 1 Blackstone's Commentaries (91) the learned author, speaking of the construction of statutes, says: "If there arise out of them any absurd consequences manifestly contradictory to common reason, they are, with regard to those collateral consequences, void. * * * When some collateral matter arises out of the general words, and happen to be unreasonable, then the judges are in decency to conclude that the consequence was not foreseen by the parliament, and, therefore, they are at liberty to expound the statute by equity and only *quoad hoc* [*with respect to this*] disregard it;" and he gives as an illustration, if an act of parliament gives a man power to try all causes that arise within his manor of Dale, yet, if a cause should arise in which he himself is party, the act is construed not to extend to that because it is unreasonable that any man should determine his own quarrel." *Riggs v. Palmer*, 115 N.Y. 506, 510-511 (N. Y. 1889).

Underwriters, notwithstanding the Debtor's indemnity obligation, because an insurer owes the insured(s) (such as Santa Rosa), a good-faith obligation to honor its contractual commitment. Since the Underwriters are charged with knowledge of their own policy provisions and of the Certificate Insurance, they must acknowledge that the blanket "Named Insured" clause of the Contract of Insurance includes Santa Rosa "as [its] interest may appear", both as an "Insured" under the Contract of Insurance and as a "Loss Payee" under the Lease Agreement.

Prayer for Relief

WHEREFORE, Santa Rosa requests the Court take notice of the foregoing and grant any other relief it deems fair and equitable.

[*signatures in the next page*]

Respectfully submitted.
Dated: March 27, 2020

**Ferraiuoli** LLC

390 N. Orange Avenue, Suite 2300
Orlando, Florida 32801
Telephone: (407) 982-7310
Facsimile: (787) 766-7001

*/s/Sonia E. Colón Colón*
Sonia E. Colón Colón
Admitted *Pro Hac Vice*
USDC-PR No. 213809
scolon@ferraiuoli.com

*/s/Gustavo A. Chico-Barris*
Gustavo A. Chico-Barris
NY State Bar No. 929147
USDC-PR No. 224205
gchico@ferraiuoli.com

and

Ríos Gautier & Cestero, C.S.P.
27 Calle González Giusti, Ste, 300
Guaynabo, P.R. 00968-3076
Telephone (787) 753-7750
Facsimile (787) 759-6768

*/s/ Carlos Ríos Gautier*
Carlos Ríos Gautier
USDC-PR No. 112606
Admitted *Pro Hac Vice*
riosgautierlaw@yahoo.com

Attorneys for
*Santa Rosa Mall, LLC*