# EXHIBIT II

A GIFT OF TONGUES, INC.
TRANSLATION SERVICES

# AFFIDAVIT OF TRANSLATOR

I, __Anthony Palomo__, do hereby state that I am a competent __Spanish__ to __English__ and __English__ to __Spanish__ Certified Court Interpreter, so qualified upon written and oral examinations by the Administrative Office of the U.S. Courts, and likewise certified as a translator upon written examinations in the above language combinations by the American Translators Association, my name being of record both at the A.T.A. Headquarters in Alexandria, Virginia, at the aforesaid Administrative Office of the U.S. Courts in Washington, D.C.

I further state that the translation hereunto attached, to wit:

The Spanish-into-English translation consisting of **FIVE (5) PAGES**, corresponding to **SELECTED PORTIONS OF ACT No. 242 OF PUERTO RICO, ENACTED ON NOVEMBER 27, 2018.**

----is true and correct to the best of my knowledge and ability, and that I do have such ability.

STATE OF FLORIDA )
                 )
COUNTY OF DADE   )

Sworn to and subscribed before me by __Anthony Palomo__, known personally to me, this __26th__ day of __March__, 2020.

**Anthony Palomo**
U.S. Court Certified Interpreter
A.T.A. Certified Translator No. 3168

VIVIAN NAVAILLES
MY COMMISSION # GG 343650
EXPIRES: June 11, 2023
Bonded Thru Notary Public Underwriters

9724 N.W. 5th Terrace • Miami, FL 33172 • (305) 854-6949 • www.agiftoftongues.com

**P. del S. 1054**

*18TH* ASSEMBLY, *4TH* ORDINARY LEGISLATIVE SESSION
Act No. *242*
(Enacted *27th* of Nov, 20 *18*)

# ACT

To amend Articles 11.150 and 11.190 and add new Article 9.301 to Act No. 77 of June 19, 1957, as amended, known as "Puerto Rico Insurance Code"; to amend Article 5.005 of Act 201-2003, as amended, known as "Judiciary Act of Puerto Rico," for the purpose of improving the response of the insurance industry to the insured population; and other related matters.

## STATEMENT OF MOTIVES

We live in times where the frequency and severity of natural catastrophic events are increasing. In the midst of this reality, the insurance industry plays a key role in disaster recovery. When a disaster occurs, such as caused by Hurricanes Irma and María, it is important that insurers respond with agility and promptness to attend to and resolve the claims of the insured.

The passage of the hurricanes in the year 2017, and their devastating effects, are unprecedented in the modern history of our island. It has been shown that the response of the insurance industry to this catastrophe was not as expected. There are multiple complaints from the insured due to the long obstacles brought by the insurance companies to take attend to their claims in a timely manner. This, among other things, has delayed the economic recovery of many businesses and citizens, which has negatively affected the economy and, in some cases, has increased the migration of citizens and precipitated the closure of businesses.

These events left lessons for all sectors of our island, and after decades without a disaster of this nature, they showed citizens the importance of being prepared for natural disasters, as for any type of emergency that may happen unexpectedly. This means that all sectors must be prepared to respond if such event occurs again.

Given their prominent role in recovery and reconstruction, it is vital that insurance companies improve their response to situations like the one we are experiencing. This is why the Governor, Ricardo Rosselló Nevares, called members of the insurance industry, commercial sectors, organizations, mayors and the general public to participate on June 28, 2018 in the summit that was called "Response of the Insurance Industry in the Event of Catastrophic Events and Mechanisms to Ensure the Protection of the Insured". This summit served as a forum to listen to the

recommendations of all the participants and to study alternatives that improve the response of the insurance industry to the insured population in order to have an industry that is able to handle pending claims and face future catastrophic events. In addition, it provided a channel for citizens to subsequently submit concerns and recommendations to improve the insurance industry's response to the reality that our geographic location continually exposes us to the risk of another similar disaster.

One of the concerns expressed at the summit is the delay in the payment of claims, mainly due to discrepancies between the insured and the insurer in the amount of damage or loss corresponding to the claim. In this regard, this piece of legislation makes it possible to use the appraisal process to resolve conflicts in the payment of the amount corresponding to property insurance claims. The appraisal process is a method in which the parties submit disagreements regarding the amount of an insurance claim to an impartial arbitrator. The appraisal process is an alternative method of conflict resolution, commonly used in the other states of the United States, that does not replace or substitute the insured's right to initiate an administrative proceeding or judicial action in court. This process is designed to provide a quick alternative and additionally of non-contentious nature, which makes it easier for the parties to reach an agreement on the payment for the fair value of the claim.

Additionally, it proposes to guarantee the right of the insured or claimant to assert their rights under the policy in court, offering an alternative process that is more economical, efficient and expedited. Establishing, for these purposes, that any clause or stipulation in an insurance contract or policy that establishes conditions for the insured to initiate legal action against the insurer to assert their rights under the policy in court, or to limit the period of time for do it for a term less than the one already established, shall be null and void. We also propose to make the availability of specialized rooms with judges prepared to resolve insurance claim disputes, in order to ensure the expeditious, expert and efficient handling of court cases related to insurance claims arising as a result of a catastrophe.

This administration is firmly committed to establishing additional legal tools that enable a better response by the insurance industry to the insured population and to have an industry better equipped to handle pending claims and face future catastrophic events.

It is time to, based on the experiences already lived, codify the current consumer protections that the common law provides and adopt innovative initiatives, in search of a quicker and better response from the insurance industry to the victims of hurricanes Irma and María, and in the event of a future natural catastrophe. This piece of legislation proposes a series of amendments to the Puerto Rico

Page 3

Insurance Code that reflect the sentiment of the expressions presented at the summit aimed at establishing processes that are more agile and facilitate the adequate response to policyholders and the payment of claims.

**DECREED BY THE LEGISLATIVE ASSEMBLY OF PUERTO RICO:**

[…]

Page 4

[…]

Section 3 – Article 11.190 of Act No. 77 of June 19, 1957, as amended, better known as the "Puerto Rico Insurance Code," is hereby amended to read as follows:

"Article 11.190.- Limitation of actions on policies; jurisdiction

(1) No policy delivered or issued for delivery in Puerto Rico, that covers a subject of insurance resident, located or to be performed in Puerto Rico, shall contain any condition, stipulation or agreement:

   (a) …
   (b) …
   (c) …
   (d) …

(2) Any clause or stipulation in an insurance contract or policy that establishes conditions for the insured to bring legal action against the insurer to assert their rights under the policy in court, to limit the period of time to do so for a term less than one (1) year, shall be null and void, without such nullity affecting the validity of the other provisions of the policy or contract.

(3) As long as it does not replace or constitutes a waiver of the insured's right to initiate legal action in court, an appraisal valuation stipulation or clause contained in property insurance policies in the commercial or personal line shall be considered valid, that provides that any of the parties may request in writing to submit to an impartial and competent arbitrator the resolution of disputes, regarding the valuation of damages or loss in a claim in which the insurer has accepted that it is covered.

   For purposes of this Section, "arbitrator" shall mean an impartial and competent party selected, within the valuation process, to resolve

disagreements exclusively related to the value of a loss or damages in one or more items of the claim in property insurance policies, in the commercial or personal line. The arbitrator shall be selected, by mutual agreement, between the appraiser of the insurer and the appraiser of the insured, or, if these not to agree, within a term of fifteen (15) calendar days from the date the valuation process is requested, it will be selected by the Office of the Insurance Commissioner. The arbitrator shall not have the authority to decide coverage controversies or any question of law. The arbitrator's decision in the valuation process shall be binding, when two (2) of the three (3) parties (insured appraiser, insurer appraiser and arbitrator) reach an agreement, without prejudice to the dissatisfied party being able to go to the Court of First Instance to challenge the decision.

The arbitrator's fees shall be paid by the insurer and the insured in equal proportions, and each party shall pay the fees of the appraiser that represents them in the valuation process. The arbitrator must establish his or her fees in writing, specifically regarding the rate (per hour, day or session), before beginning the assessment process.

The Insurance Commissioner shall have the power to adopt the norms and rules that he deems necessary to regulate the valuation processes and the suitability and competence criteria of the people who act as arbitrators or appraisers in said process.

(4) For purposes of direct action by a property owner to recover damages under an insurance policy, a notice of claim to the insurance company or its authorized representative or its authorized general agent constitutes an extrajudicial claim that tolls the statute of limitations applicable to the actions in accordance to Article 1873 of the Civil Code of Puerto Rico, even when the claim is a consequence of the impact of Hurricanes Irma and/or Maria of last September 2017.

(5) For purposes of direct action by a property owner to recover damages under an insurance policy, acceptance of a notice of insurance claim by the insurance company or its authorized representative or its authorized general agent constitutes acknowledgment that tolls the statute of limitations applicable to actions pursuant to Article 1873 of the Civil Code of Puerto Rico, even when the claim is a consequence of the impact of Hurricanes Irma and / or Maria of last September 2017.

(6) The limitation of the period of time to file a claim or seek protection from the court or from an administrative process, imposed by an insurance policy, is subject to being interrupted by extrajudicial notification, pursuant to Article 1873 of the Civil Code of Puerto Rico. Any agreement to the contrary

Page 6

shall be void, even when the claim is a consequence of the impact of Hurricanes Irma and / or Maria from last September 2017.

(7) The other claims shall be governed by the provisions of Article 27.164."

[…]

Page 7

[…]

**DEPARTMENT OF STATE**
**Certifications, Regulations, Register**
**of Notaries and Sales Laws**
**I certify that this is a true and correct copy of the original**
**Date: DECEMBER 3, 2018**

[(Signed) Illegible]
**Signature**

**Eduardo Arosemena Muñoz**
**Assistant Secretary**
**Department of State**
**Government of Puerto Rico**