Doron Yitzchaki, Esq. (*pro hac vice*)
Dickinson Wright PLLC
350 S. Main Street, Suite 300
Ann Arbor, MI 48104
Telephone: 734-623-1947
Fax:  844-670-6009
*Attorneys for Combine International, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | X | Chapter 11 |
| | X | Case No. 18-23538-RDD |
| Sears Holdings Corporation, *et al.*,[1] | X | |
| | X | (Jointly Administered) |
| Debtors. | X | |
| | X | **Hearing Date: April 29, 2020** |
| _____/ | | **10:00 a.m. EDT** |

**COMBINE INTERNATIONAL, INC.'S RESPONSE IN OPPOSITION TO DEBTORS' FOURTEENTH OMNIBUS OBJECTION TO BALLOTS**

Combine International, Inc. ("Combine"), by its undersigned counsel, responds as follows in opposition to the Debtors' Fourteenth Omnibus Objection to Ballots (Docket No. 7453, the "Objection") and respectfully requests that the Objection be overruled as to Combine's 503(b)(9) claims in the total amount of $179,533.98.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

1

I.     **BACKGROUND**

The following facts are supported by the Declaration of Richard Dollinger, Accounts Receivable Manager for Combine, attached as **Exhibit 1** hereto (the "Dollinger Declaration"):

1.     Combine is a trade creditor of Sears Holdings Corporation and Sears, Roebuck & Co. (collectively, "Sears") and Kmart Corporation ("Kmart" and together with Sears, the "Debtors"). Dollinger Declaration, ¶ 3. Prior to the Debtors' bankruptcy, Combine supplied jewelry merchandise to the Debtors on both a consignment and non-consignment basis. *Id.* ¶ 3.

2.     Combine timely filed proofs of claim against Sears (Claim #14307, the "Sears Claim") and Kmart (Claim #14250, the "Kmart Claim") based on Combine's books and records. *Id.* ¶ 4. The Sears Claim and the Kmart Claim are on file in the Debtors' claims register.

3.     The Sears Claim included $614,973.72 in general unsecured claims for non-consignment merchandise sold to Sears prior to its bankruptcy and delivered before the 20-day 503(b)(9) window, and the Kmart Claim included $385,289.92 in general unsecured claims for non-consignment merchandise sold to Kmart prior to its bankruptcy and delivered before the 20-day window (collectively, the "General Unsecured Claim"). *Id.* ¶ 5.

4.     The Sears Claim also included $168,666.99 in administrative priority claims for non-consignment merchandise sold to Sears in the ordinary course of business prior to its bankruptcy and delivered to Sears within the 20-day window, and the Kmart Claim also included $10,866.99 in administrative priority claims for non-consignment merchandise sold to Kmart in the ordinary course of business prior to its bankruptcy and delivered within the 20-day window (collectively, the "503(b)(9) Claim"). *Id.* ¶ 6.

5.     To date, the Debtors have not objected to or otherwise sought to reduce Combine's General Unsecured Claim in the total amount of $1,000,263.64. *Id.* ¶ 7.

6.     On March 13, 2020, the Debtors filed their Objection, which includes an objection to

Combine's 503(b)(9) Claim and seeks to reduce the 503(b)(9) Claim from the total amount of $179,533.98 down to $0.00. *See* Objection, p. 8. The only explanation given in the Objection is that "the Debtors' books and records do not indicate liability for the Claim amount." *See id.*, p. 8.

7.  Debtors' counsel granted Combine an extension to April 14, 2020 to file a response to the Objection. Dollinger Declaration, ¶ 9.

8.  Attached as **Exhibit A** to the Dollinger Declaration is a true and accurate summary listing pulled from Combine's accounting system detailing the Debtors' purchase orders and Combine's outstanding invoices supporting the 503(b)(9) Claim. *Id.* ¶ 10. Invoices were dated and issued on the date merchandise was shipped to the Debtors, and all merchandise was shipped 2nd-day air, which means all items listed were received by the Debtors within the 20-day window. *Id.* ¶ 10.

9.  The Debtors have not paid Combine for the listed merchandise. *Id.* ¶ 11.

10. To date, the Debtors have not contested the fact that they received all of the listed merchandise within the 20-day window, nor that they purchased it in the ordinary course of their business, nor that they have failed to pay Combine for the listed merchandise. *Id.* ¶ 12.

11. In response to Combine's request for further clarification regarding the basis for the Debtors' Objection, the Debtors responded that the Debtors' books and records show $365,210.94 in what the Debtors are calling "unclaimed credits" against Combine. *Id.* ¶ 13. The Debtors further explained that they have chosen to offset the purported credits against Combine's 503(b)(9) Clam, thereby deeming the 503(b)(9) Claim satisfied. *Id.* ¶ 13.

12. The Debtors provided Combine a summary listing of the purported credits but no supporting documentation. *Id.* ¶ 14. The Debtors instead advised that they are working to obtain supporting documentation for the larger credits from Transform HoldCo LLC ("Transform") and have not yet obtained it. *Id.* ¶ 14.

13. Combine has reviewed the summary listing provided by the Debtors and cross-

3

checked it against Combine's books and records. *Id.* ¶ 15. Of the "unclaimed credit" amounts listed by the Debtors, only $76,365.45 actually ties to amounts shown in Combine's books and records (the "Reconciled Credits"). *Id.* ¶ 15. The remaining $288,845.49 in purported credits do not tie to Combine's books and records and appear to be unfounded (the "Unreconciled Credits"). *Id.* ¶ 15. At least $108,039.39 of the Unreconciled Credits appears to relate to merchandise which the Debtors claimed to have returned to Combine but which was never in fact received back by Combine. *Id.* ¶ 15.

14. Combine has requested that the Debtors provide documentation supporting the Unreconciled Credits, but the Debtors have not yet provided any. *Id.* ¶ 16.

15. Regarding the Reconciled Credits, the vast majority, if not all of them, relate to merchandise delivered to the Debtors prior to the 20-day window. *Id.* ¶ 17. Accordingly, to the extent the Debtors seek to offset the Reconciled Credits, they should be offset against the General Unsecured Claim and not against the 503(b)(9) Claim. *Id.* ¶ 17.

16. Combine has requested that Debtors provide legal authority for the proposition that the Debtors may offset the Reconciled Credits (or for that matter the Unreconciled Credits) against the 503(b)(9) Claim despite the fact that the vast majority, if not all of them, relate to merchandise delivered prior to the 20-day window. *Id.* ¶ 18. To date, Debtors' have not provided Combine any legal authority for their position. *Id.* ¶ 18.

## II. ARGUMENT

### A. Combine's 503(b)(9) Claim is Valid and Debtors Have Not Provided Any Evidence to the Contrary.

Combine's 503(b)(9) Claim in the amount of $179,533.98 was timely filed as part of Combine's proofs of claim in accordance with the claims procedures established by the Debtors and the Court. Accordingly, the 503(b)(9) Claim is *prima facie* valid pursuant to Fed. R. Bankr. P. 3001(f). The Dollinger Declaration submitted herewith provides further evidentiary support for the

503(b)(9) Claim.  Moreover, the Debtors have not contested the fact that they received all of the listed merchandise on Exhibit A to the Dollinger Declaration within the 20-day window, nor that they purchased it in the ordinary course of their business, nor that they have failed to pay Combine for the listed merchandise.

Section 503(b)(9) of the Bankruptcy Code requires that the Court "*shall allow [as] administrative expenses*… the value of any goods received by the debtor within 20 days before the commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9) (emphasis added). The language of the Bankruptcy Code is mandatory. Here, the Debtors do not contest that Combine's 503(b)(9) Claim meets all of the statutory requirements for allowance as an administrative expense. Accordingly, the 503(b)(9) Claim must be allowed and the Objection must be overruled.

### B. The Debtors Have Not Established Any Right of Setoff.

A right of setoff is an affirmative defense which must be established by the Debtors. *First Nat'l Bank v. Hurricane Elkhorn Coal Corp. II*, 763 F.2d 188, 190 (6th Cir. 1985) ("[S]etoff is an affirmative defense which must be pled and proven by the party asserting it.") Here, the Debtors have not established any right of setoff, and there has been no judicial determination that the Debtors have any such right. As set forth in the Dollinger Declaration, only the Reconciled Credits even tie to Combine's own books and records, and the Debtors have not provided Combine any supporting documentation for any of the Unreconciled Credits. Accordingly, for this additional reason, the 503(b)(9) Claim must be allowed and the Objection must be overruled.

### C. Any Setoffs Actually Established By the Debtors Should Be Taken Against Combine's General Unsecured Claim.

Finally, as set forth in the Dollinger Declaration, the vast majority, if not all, of the Reconciled Credits relate to merchandise delivered to the Debtors prior to the 20-day window.  Accordingly, to the extent the Debtors seek to offset the Reconciled Credits (or for that matter, the Unreconciled

Credits if and when the Debtors ever establish them), they should be offset against Combine's General Unsecured Claim and not against the 503(b)(9) Claim.

Under similar circumstances, bankruptcy courts have held that it is inequitable – and that it defeats the intent of Sections 503 and 507(a)(2) of the Bankruptcy Code – to apply a right of setoff to a creditor's higher priority administrative expense claim when the setoff actually relates to the creditor's lower priority general unsecured claim. For example, in *In re TSLC I, Inc.*, 332 B.R. 476 (Bankr. M.D. Fla. 2005), the debtor sought to reduce a trade creditor's request for administrative expenses by asserting setoffs that related to alleged defects in goods delivered prepetition, even though the creditor held a prepetition claim of nearly $1.5 million against which those setoffs could have been asserted. The bankruptcy court rejected the debtor's position, allowed the creditor's administrative expense claim in full, and instead required the debtor to assert its setoffs against the creditor's prepetition claim. *TSLC I*, 332 B.R. at 479.

Similarly, in *In re TI Acquisition, LLC*, 410 B.R. 742, 748 (Bankr. N.D. Ga. 2009), the bankruptcy court rejected a debtor's attempt to offset pre-petition payments it had made to a trade creditor to reduce that creditor's 503(b)(9) claim where the evidence demonstrated that the payments related to shipments made prior to the 20-day window and not to shipments made within the 20-day window. *See also In re Lawson*, 187 B.R. 6, 8–9 (Bankr. D. Idaho 1995) ("The priorities given by Section 507 are expressions of Congressional policy that certain claims against a debtor should be given priority in payment above others. It would completely defeat this statutory scheme if a debtor were allowed to setoff its claims against the creditor, first against the creditors' priority claims and secondly against the creditors' non-priority claims."); *In re Genuity Inc.*, 323 B.R. 79, 83-85 (Bankr. S.D.N.Y. 2005) (refusing to allow debtors to offset prepetition security deposits against post-petition cure obligations; "It is not fair, not is it equitable, to allow the satisfaction of post-petition obligations with fractional dollars, rather than whole ones."); *In re Braniff Airways, Inc.*, 42 B.R. 443, 452 (Bankr.

6

N.D. Tex. 1984) (requiring debtor to offset claims first against a creditor's non-priority claims as a matter of equity and "in order to preserve the priority payment scheme as expressed in the Bankruptcy Code."); 8B C.J.S. Bankruptcy § 971 ("The estate should exercise a right of setoff against nonpriority claims first and only afterwards against priority claims.")

Here, as in the above-cited cases, Combine holds a substantial General Unsecured Claim of more than $1 million. The vast majority, if not all, of the Reconciled Credits relate to the merchandise underlying the General Unsecured Claim. By attempting to offset the Reconciled Credits (or for that matter, the Unreconciled Credits if and when the Debtors ever establish them) against the 503(b)(9) Claim, the Debtors are attempting to leave Combine with no recovery on its General Unsecured Claim and no recovery on its 503(b)(9) Claim. Doing so violates the clear intent of Section 503(b)(9) of the Bankruptcy Code that a creditor who delivers valuable goods to a debtor within 20 days of its bankruptcy filing *shall* be paid in full for those goods. As in *TSLC I* and the other authorities cited above, the Court should require that any setoffs established by the Debtors be taken first against Combine's General Unsecured Claim. Accordingly, for this additional reason, the 503(b)(9) Claim must be allowed and the Objection must be overruled.

### III.    CONCLUSION

For all of the foregoing reasons, Combine respectfully requests that the Court overrule the Objection and allow Combine's 503(b)(9) Claim in the amount of $179,533.98.

Dated:    April 12, 2020
        Ann Arbor, Michigan

Respectfully submitted,

DICKINSON WRIGHT PLLC

By: /s/ Doron Yitzchaki
Doron Yitzchaki, Esq. (*Pro Hac Vice*)
(Michigan Bar No. P72044)
350 S. Main Street, Suite 300
Ann Arbor, MI 48104
Tel: 734-623-1947
dyitzchaki@dickinsonwright.com
*Attorneys for Combine International, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on April 12, 2020, I filed the foregoing papers, together with all exhibits thereto, with the Clerk of the Court through the Court's CM/ECF System, which will serve electronic notice of such filing on all persons that have appeared in this case. Additionally, on April 12, 2020, I served the foregoing papers and all exhibits thereto by pdf emailed to all notice parties required to be served as set forth in the Debtors' Fourteenth Omnibus Objection To Ballots.

      DICKINSON WRIGHT PLLC

      By: /s/ Doron Yitzchaki
      Doron Yitzchaki, Esq. (*Pro Hac Vice*)

.