# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Sears Holdings Corporation, *et al.*, | Case No. 18-23538-RDD |
| Debtors. | (Jointly Administered) |

## DECLARATION OF RICHARD DOLLINGER

I, Richard Dollinger, make this declaration under 28 U.S.C. § 1746:

1. I am over 18 years of age and am the Accounts Receivable Manager of Combine International Inc. ("Combine").

2. I make this declaration based on my own personal knowledge and my review of the business records of Combine which are kept in the ordinary course of business. If called upon to testify, I am competent to testify to the matters set forth herein.

3. Combine is a trade creditor of Sears Holdings Corporation and Sears, Roebuck & Co. (collectively, "Sears") and Kmart Corporation ("Kmart" and together with Sears, the "Debtors"). Prior to the Debtors' bankruptcy, Combine supplied jewelry merchandise to the Debtors on both a consignment and non-consignment basis.

4. I prepared and timely filed proofs of claim on behalf of Combine against Sears (Claim #14307, the "Sears Claim") and Kmart (Claim #14250, the "Kmart Claim") based on Combine's books and records.

5. The Sears Claim included $614,973.72 in general unsecured claims for non-consignment merchandise sold to Sears prior to its bankruptcy and delivered before the 20-day 503(b)(9) window, and the Kmart Claim included $385,289.92 in general unsecured claims for non-consignment merchandise sold to Kmart prior to its bankruptcy and delivered before the 20-day window (collectively, the "General Unsecured Claim").

1

6. The Sears Claim also included $168,666.99 in administrative priority claims for non-consignment merchandise sold to Sears in the ordinary course of business prior to its bankruptcy and delivered to Sears within the 20-day window, and the Kmart Claim also included $10,866.99 in administrative priority claims for non-consignment merchandise sold to Kmart in the ordinary course of business prior to its bankruptcy and delivered within the 20-day window (collectively, the "503(b)(9) Claim").

7. To date, the Debtors have not objected to or otherwise sought to reduce Combine's General Unsecured Claim in the total amount of $1,000,263.64.

8. On March 13, 2020, the Debtors filed their Fourteenth Omnibus Objection to Claims (Docket No. 7453, the "Objection"), which included an objection to Combine's 503(b)(9) Claim and seeks to reduce the 503(b)(9) Claim from the total amount of $179,533.98 down to $0.00. The only explanation given was that "the Debtors' books and records do not indicate liability for the Claim amount."

9. Debtors' counsel granted Combine an extension to April 14, 2020 to file a response to the Objection.

10. Attached as **Exhibit A** hereto is a true and accurate summary listing which I pulled from Combine's accounting system detailing the Debtors' purchase orders and Combine's outstanding invoices supporting the 503(b)(9) Claim. Invoices were dated and issued on the date merchandise was shipped to the Debtors, and all merchandise was shipped 2nd-day air, which means all items listed were received by the Debtors within the 20-day window.

11. The Debtors have not paid Combine for the listed merchandise.

12. To date, the Debtors have not contested the fact that they received all of the listed merchandise within the 20-day window, nor that they purchased it in the ordinary course of their business, nor that they have failed to pay Combine for the listed merchandise.

13. In response to Combine's request for clarification regarding the basis for the Debtors' Objection, the Debtors responded that the Debtors' books and records show $365,210.94 in what the Debtors are calling "unclaimed credits" against Combine. The Debtors further explained that they have chosen to offset the purported credits against Combine's 503(b)(9) Clam, thereby deeming the 503(b)(9) Claim satisfied.

14. The Debtors provided Combine a summary listing of the purported credits but no supporting documentation. The Debtors instead advised that they are working to obtain supporting documentation for the larger credits from Transform HoldCo LLC ("Transform") and have not yet obtained it.

15. I reviewed the summary listing provided by the Debtors and cross-checked it against Combine's books and records. Of the "unclaimed credit" amounts listed by the Debtors, only $76,365.45 actually ties to amounts shown in Combine's books and records (the "Reconciled Credits"). The remaining $288,845.49 in purported credits do not tie to Combine's books and records and appear to be unfounded (the "Unreconciled Credits"). At least $108,039.39 of the Unreconciled Credits appears to relate to merchandise which the Debtors claimed to have returned to Combine but which was never in fact received back by Combine.

16. Combine has requested that the Debtors provide documentation supporting the Unreconciled Credits, but the Debtors have not yet provided any.

17. Regarding the Reconciled Credits, the vast majority, if not all of them, relate to merchandise delivered to the Debtors prior to the 20-day window. Accordingly, to the extent the Debtors seek to offset the Reconciled Credits, I believe they should be offset against the General Unsecured Claim and not against the 503(b)(9) Claim.

18. Combine has requested that Debtors provide legal authority for the proposition that the Debtors may offset the Reconciled Credits (or for that matter the Unreconciled Credits) against the 503(b)(9) Claim despite the fact that the vast majority, if not all of them, relate to merchandise delivered prior to the 20-day window. To date, Debtors' have not provided Combine any legal authority for their position.

19. I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 10, 2020

Richard Dollinger

4