AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Ira S. Dizengoff
Philip C. Dublin
Sara L. Brauner
Zachary D. Lanier

*Counsel to the Official Committee of Unsecured*
*Creditors of Sears Holdings Corporation, et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SEARS HOLDINGS CORPORATION, et al., | : | Case No. 18-23538 (RDD) |
| | : | |
| | : | (Jointly Administered) |
| Debtors.[1] | : | |

---------------------------------------------------------------x

**FOURTH INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OF NOVEMBER 1, 2019 THROUGH AND INCLUDING FEBRUARY 29, 2020**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc.(4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

| General Information | |
| --- | --- |
| Name of Applicant: | Akin Gump Strauss Hauer & Feld LLP ("<u>Akin Gump</u>")[2] |
| Authorized to Provide Services to: | The Official Committee of Unsecured Creditors and the Litigation Designees[3] |
| Petition Date: | October 15, 2018 |
| Retention Date: | December 10, 2018, *nunc pro tunc* to October 24, 2018 |
| Prior Applications: | 3 |

| Summary of Fees and Expenses Sought in this Application | |
| --- | --- |
| Time Period Covered by this Application: | November 1, 2019 through and including February 29, 2020 (the "<u>Compensation Period</u>") |
| Amount of Compensation Sought as Actual, Reasonable and Necessary for the Compensation Period: | $4,217,112.50 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary for the Compensation Period: | $1,424,635.72 |
| Total Compensation and Expenses Requested for the Compensation Period: | $5,641,748.22 |

| Summary of Fees and Expenses Allowed Pursuant to Prior Applications | |
| --- | --- |
| Total Compensation Approved by Interim Order to Date: | $31,434,909.50 |

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors and (II) Granting Related Relief*, dated October 15, 2019 [ECF No. 5370] (the "<u>Confirmation Order</u>") or the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors*, dated October 15, 2019 [ECF No. 5370-1] (the "<u>Plan</u>"), as applicable.

[3] As described further herein, pursuant to the Confirmation Order and effective as of the date thereof, Akin Gump serves as "primary litigation counsel to act on behalf of the Litigation Designees to investigate, commence, prosecute and otherwise litigate the Jointly Asserted Causes of Action" in addition to its role as counsel to the Creditors' Committee. *See* Confirmation Order ¶ 22. To facilitate review of Akin Gump's fees attributable to its role as counsel to the Litigation Designees following entry of the Confirmation Order, a separate task code (Task Code 20) contains all such work.

| Total Expenses Approved by Interim Order to Date: | $2,461,715.80 |
|---|---|
| Total Compensation and Expenses Approved by Interim Order to Date: | $33,896,625.30 |
| Total Allowed Compensation Paid to Date: | $31,434,909.50 |
| Total Allowed Expenses Paid to Date: | $2,459,212.31 |
| Total Allowed Compensation and Expenses Paid to Date: | $33,894,121.80 |

### Summary of Fees, Professionals, Rates and Budget in this Application

| | |
|---|---|
| Compensation Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed (80% of Fees): | $2,378,686.40[4] |
| Expenses Sought in this Application Already Paid Pursuant to the Compensation Order But Not Yet Allowed (100% of Expenses): | $901,903.74[5] |
| Total Compensation and Expenses Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $3,280,590.14 |
| Total Compensation and Expenses Sought in this Application Not Yet Paid: | $2,361,158.08 |
| Voluntary Fee Waiver and Expense Reduction in this Compensation Period: | $178,433.66[6] |

---

[4] Akin Gump has received $791,316.00 (80% of $989,145.00) as compensation for services rendered during the period of November 1, 2019 through November 30, 2019, as requested in the Fourteenth Monthly Fee Statement (as defined herein), $765,714.80 (80% of $957,143.50) as compensation for services rendered during the period of December 1, 2019 through December 31, 2019, as requested in the Fifteenth Monthly Fee Statement (as defined herein) and $821,655.60 (80% of $1,027,069.50) as compensation for services rendered during the period of January 1, 2020 through January 31, 2020, as requested in the Sixteenth Monthly Fee Statement.

[5] Akin Gump has received $305,321.24 for reimbursement of actual and necessary expenses during the period of November 1, 2019 through November 30, 2019, as requested in the Fourteenth Monthly Fee Statement, $303,709.74 for reimbursement of actual and necessary expenses during the period of December 1, 2019 through December 31, 2019, as requested in the Fifteenth Monthly Fee Statement and $292,872.76 for reimbursement of actual and necessary expenses during the period of January 1, 2020 through January 31, 2020, as requested in the Sixteenth Monthly Fee Statement.

[6] Akin Gump voluntarily reduced its fees and expenses prior to the filing of the applicable Monthly Fee Statement (as defined herein) by the following amounts: (i) $148,421.50 for fee reductions and (ii) $30,012.16 for expense

| *Summary of Fees and Expenses Sought in this Application* | |
| --- | --- |
| Blended Rate in this Application for All Attorneys: | $806.25 |
| Blended Rate in this Application for All Timekeepers: | $788.05 |
| Number of Timekeepers Included in this Application: | 36 (31 attorneys; 5 paraprofessionals and other non-legal staff) |
| Number of Attorneys Billing Fewer than 15 Hours to the Case During the Compensation Period: | 6 |
| Increase in Rates Since Date of Retention: | 2[7] |
| Interim or Final Application: | Interim |

---

reductions.  The voluntary fee and expense reductions relate to, among other things: (i) fees incurred by professionals or paraprofessionals for attending meetings, conferences or hearings at which their presence was not essential to the issues or matters addressed therein; (ii) duplicative work or work performed by professionals or paraprofessionals billing a *de minimis* amount of time to the Chapter 11 Cases during the applicable period; (iii) certain fees on account of non-working travel time; (iv) fees incurred in connection with certain administrative tasks; and (v) certain overtime meal and travel expenses.  Consequently, Akin Gump does not seek payment of these fees and expenses in this Application.

[7] Akin Gump increased its rates on January 1, 2019 and January 1, 2020, consistent with its customary practice and as disclosed in the Akin Retention Application (as defined herein) and the *Supplemental Declaration of Philip C. Dublin in Support of the Application of the Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al. to Retain and Employ Akin Gump Strauss Hauer & Feld LLP as Counsel, Effective Nunc Pro Tunc to October 24, 2018*, dated December 30, 2019 [ECF No. 6301] (the "Supplemental Rate Declaration").

## SUMMARY OF MONTHLY FEE STATEMENTS

| DATE FILED | ECF NO. | PERIOD COVERED | FEES REQUESTED | EXPENSES REQUESTED | FEES PAID | EXPENSES PAID |
|---|---|---|---|---|---|---|
| 01/30/20 | 6794 | 11/01/19 – 11/30/19 | $791,316.00 (80% of $989,145.00) | $305,321.24 | $791,316.00 | $305,321.24 |
| 02/21/20 | 7328 | 12/01/19 – 12/31/19 | $765,714.80 (80% of $957,143.50) | $303,709.74 | $765,714.80 | $303,709.74 |
| 03/20/20 | 7484 | 01/01/20 – 01/31/20 | $821,655.60 (80% of $1,027,069.50) | $292,872.76 | $821,655.60 | $292,872.76 |
| 04/01/20 | 7633 | 02/01/20 – 02/29/20 | $995,003.60 (80% of $1,243,754.50) | $522,731.98 | N/A | N/A |

Summary of Any Objections to Monthly Fee Statements:  None

Compensation and Expenses Sought in This Application Not Yet Paid:  $2,361,158.08

## COMPENSATION BY PROFESSIONAL
## NOVEMBER 1, 2019 THROUGH AND INCLUDING FEBRUARY 29, 2020

| Name of Professional | Position | Department | Year Admitted | Hourly Billing Rate 2019 | Hourly Billing Rate 2020 | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|---|
| Brauner, Sara L. | Partner | Financial Restructuring | 2011 | $1,125.00 | $1,225.00 | 266.50 | $310,422.50 |
| Dizengoff, Ira S. | Partner | Financial Restructuring | 1993 | $1,550.00 | $1,595.00 | 5.20 | $8,060.00 |
| Dublin, Philip C. | Partner | Financial Restructuring | 1999 | $1,475.00 | $1,595.00 | 43.90 | $65,760.50 |
| Qureshi, Abid | Partner | Financial Restructuring | 1995 | $1,475.00 | $1,595.00 | 12.70 | $19,560.50 |
| Jacob, John | Partner | Health | 1993 | N/A | $1,135.00 | 7.00 | $7,945.00 |
| Chapman, Dean L. | Partner | Litigation | 2009 | $980.00 | $1,225.00 | 420.50 | $463,907.50 |
| Chen, Julius | Partner | Litigation | 2010 | $925.00 | $1,015.00 | 117.70 | $115,451.50 |
| Lawrence, Lacy M. | Partner | Litigation | 2006 | $1,020.00 | $1,350.00 | 32.60 | $39,159.00 |
| Sorkin, Joseph L. | Partner | Litigation | 2008 | $1,120.00 | $1,350.00 | 137.70 | $169,013.00 |
| Zensky, David | Partner | Litigation | 1988 | $1,305.00 | $1,595.00 | 162.70 | $236,654.50 |
| Phelps, David | Partner | Real Estate | 1987 | N/A | $1,240.00 | 6.20 | $7,688.00 |
| Elder, Eugene | Counsel | Health | 1990 | N/A | $975.00 | 6.50 | $6,337.50 |
| Matheson, Clayton | Counsel | Intellectual Property | 2010 | N/A | $950.00 | 16.30 | $6,337.50 |
| Park, Daniel S. | Counsel | Litigation | 2011 | $690.00 | $960.00 | 118.30 | $100,284.00 |
| Sharad, Saurabh | Counsel | Litigation | 2015 | $815.00 | $925.00 | 107.40 | $92,133.50 |
| Tizravesh, Roxanne | Counsel | Litigation | 2009 | $905.00 | $1,195.00 | 76.60 | $81,532.00 |
| Tolentino, Raymond | Counsel | Litigation | 2013 | $840.00 | $910.00 | 33.90 | $29,449.00 |
| Steed, Allison | Associate | Corporate | 2018 | N/A | $650.00 | 8.50 | $5,525.00 |

| Name of Professional | Position | Department | Year Admitted | Hourly Billing Rate 2019 | Hourly Billing Rate 2020 | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|---|
| Lanier, Zachary D. | Associate | Financial Restructuring | 2017 | $760.00 | $860.00 | 254.00 | $202,400.00 |
| Mahkamova, Shirin | Associate | Financial Restructuring | 2019 | $560.00 | $700.00 | 77.20 | $46,508.00 |
| Szydlo, Joseph E. | Associate | Financial Restructuring | 2019 | $560.00 | $700.00 | 93.30 | $55,174.00 |
| Glackin, Patrick J. | Associate | Litigation | 2019 | $540.00 | $650.00 | 423.00 | $254,259.00 |
| Kane, John P. | Associate | Litigation | 2016 | $770.00 | $895.00 | 594.90 | $495,085.50 |
| Kulikowski, Jillian R. | Associate | Litigation | 2019 | $540.00 | $650.00 | 543.50 | $321.573.00 |
| Latov, Jeffrey A. | Associate | Litigation | 2017 | $760.00 | $810.00 | 506.70 | $398.017.00 |
| Maizel, Elise | Associate | Litigation | 2017 | $690.00 | $810.00 | 242.50 | $181,257.00 |
| Nolan, Sean | Associate | Litigation | 2018 | $630.00 | $725.00 | 150.30 | $105,490.50 |
| Praestholm, Amanda | Associate | Litigation | 2017 | N/A | $650.00 | 21.10 | $13,715.00 |
| Tandy, Lewis | Associate | Litigation | 2018 | $510.00 | $535.00 | 79.50 | $42,215.00 |
| Collins, Russell J. | Staff Attorney | Practice Attorney | 1998 | $455.00 | $475.00 | 516.90 | $241,247.50 |
| Young, Melodie | Staff Attorney | Practice Attorney | 2003 | $415.00 | $435.00 | 87.00 | $37,183.00 |
| Krasa-Berstell, Dagmara | Legal Assistant | Financial Restructuring | N/A | $395.00 | N/A | 12.90 | $5,095.50 |
| Levy, Sophia D. | Legal Assistant | Financial Restructuring | N/A | $235.00 | $245.00 | 34.90 | $8,306.50 |
| Csizmadia, Suzanne | Legal Assistant | Intellectual Property | N/A | N/A | $330.00 | 54.90 | $18,117.00 |
| Walls, Bennett | Legal Assistant | Litigation | N/A | $205.00 | $215.00 | 68.70 | $14,530.50 |
| Ginsborg, Michael | Specialist | Research | N/A | $265.00 | N/A | 9.70 | $2,570.50 |

**TOTAL FEES**
**NOVEMBER 1, 2019 THROUGH AND INCLUDING FEBRUARY 29, 2020**

| PROFESSIONALS | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners | $1,255.01 | 843.30 | $1,058,352.00 |
| Senior Counsel / Counsel | $1,015.54 | 612.90 | $622,427.00 |
| Associates | $669.82 | 3,714.00 | $2,487,713.50 |
| Paraprofessionals and Other Non-Legal Staff | $268.47 | 181.10 | $48,620 |
| **Blended Attorney Rate** | **$806.25** | | |
| **Blended Rate for All Timekeepers** | **$788.05** | | |
| **Total Fees Incurred** | | **5,351.30** | **$4,217,112.50** |

## COMPENSATION BY PROJECT CATEGORY
## NOVEMBER 1, 2019 THROUGH AND INCLUDING FEBRUARY 29, 2020

| Task Code | Project Category | Total Hours Billed | Total Amount |
|---|---|---|---|
| 2 | Case Administration | 26.10 | $12,035.50 |
| 3 | Akin Gump Fee Application/Monthly Billing Reports | 198.80 | $136,384.00 |
| 4 | Analysis of Other Professionals Fee Applications/Reports | 6.10 | $4,261.50 |
| 5 | Review/Preparation of Schedules, Statements | -- | -- |
| 6 | Retention of Professionals | 0.40 | $450.00 |
| 7 | Creditors Committee Matters/Meetings (including 341 Meetings) | 21.50 | $18,803.50 |
| 8 | Hearings and Court Matters/Court Preparation | 52.80 | $52,021.50 |
| 9 | Financial Reports and Analysis | 4.80 | $3,648.00 |
| 10 | DIP, Cash Collateral Usage, Adequate Protection and Exit Financing | -- | -- |
| 11 | Executory Contract/Lease Issues | 0.70 | $595.00 |
| 12 | General Claims Analysis/Claims Objections | 170.10 | $168,616.00 |
| 13 | Analysis of Pre-Petition Transactions | -- | -- |
| 14 | Insurance Issues | 12.30 | $12,947.00 |
| 15 | Secured Creditors Issues/Communications/Meetings | 94.70 | $82,152.00 |
| 16 | Automatic Stay Issues | 1.20 | $1,470.00 |
| 17 | General Litigation Matters/Adversary Proceedings | 23.30 | $24,763.00 |
| 18 | Tax Issues | -- | -- |
| 19 | Labor Issues/Employee Benefits | 1.40 | $1,210.00 |
| 20 | Jointly Asserted Causes of Action | 4,305.50 | $3,279,931.00 |

| Task Code | Project Category | Total Hours Billed | Total Amount |
|---|---|---|---|
| 21 | Exclusivity | -- | -- |
| 22 | Disclosure Statement/Solicitation/Plan/Confirmation | 291.40 | $278,200.50 |
| 23 | Asset Dispositions/363 Asset Sales | 123.70 | $119,726.00 |
| 24 | Real Estate Issues | 9.30 | $10,865.00 |
| 25 | Travel Time | 7.20 | $9,033.00 |
| 26 | Securities Law Issues | – | – |
| 27 | Environmental | – | – |
| 28 | General Corporate Matters | – | – |
| 29 | Intercompany Claims/Intercompany Transactions/Cash Management | – | – |
| 30 | Customer, Supplier and Vendor Issues (including Critical Vendors) | – | – |
| 31 | Business Operations | – | – |
| **Total** | | **5,351.30** | **$4,217,112.50** |

## EXPENSE SUMMARY
## NOVEMBER 1, 2019 THROUGH AND INCLUDING FEBRUARY 29, 2020[8]

| Disbursement Activity | Amount |
|---|---|
| Computerized Legal Research - Lexis - in contract 30% discount | $7,812.07 |
| Computerized Legal Research - Westlaw - in contract 30% discount | $27,745.36 |
| Computerized Legal Research - Westlaw - out of contract | $108.73 |
| Computerized Legal Research - Courtlink - in contract 50% discount | $851.30 |
| Computerized Legal Research - Other | $1,031.25 |
| Color Copy | $279.00 |
| Contract Labor - Attorney | $70,024.39 |
| Courier Service/Messenger Service - Off Site | $127.19 |
| Document Retrieval | $1,355.00 |
| Duplication - In House | $4,015.70 |
| Duplication - Off Site | $1,282.18 |
| Filing Fees | $800.00 |
| Imaging/Computerized Litigation Support | $81,563.00 |
| Meals - Overtime | $142.67 |
| Meals - Business | $467.70 |
| Meals (100%) | $3,148.97 |
| Miscellaneous | $727.89 |
| Overtime - Admin Staff | $857.64 |

---

[8] The expenses incurred during the Compensation Period include, among other things: (i) $1,032,510.21 of expenses relating to the payment of consulting fees and expenses incurred by Solomon Page Group LLC, a staffing provider retained in connection with the Adversary Proceeding; (ii) $170,581.05 of expenses relating to the payment of professional fees and expenses incurred by Akin Gump's document management and e-discovery provider, H5; and (iii) $121,261.50 of expenses relating to the compensation of expert witnesses retained in connection with the Adversary Proceeding.

| Disbursement Activity | Amount |
|---|---|
| Postage | $39.10 |
| Professional Fees - Consultant Fees | $1,083,747.32 |
| Professional Fees - Misc. | $105,418.75 |
| Professional Fees - Process Server | $26,853.95 |
| Research | $1,344.70 |
| Telephone - Long Distance | $307.00 |
| Transcripts | $613.20 |
| Travel - Airfare | $40.00 |
| Travel - Ground Transportation | $1,111.26 |
| Travel - Lodging (Hotel, Apt, Other) | $1,123.29 |
| Local Transportation - Overtime | $1,697.11 |
| **Total** | **$1,424,635.72** |

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002
Ira S. Dizengoff
Philip C. Dublin
Sara L. Brauner
Zachary D. Lanier

*Counsel to the Official Committee of Unsecured
Creditors of Sears Holdings Corporation, et al.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SEARS HOLDINGS CORPORATION, et al., | : | Case No. 18-23538 (RDD) |
| | : | |
| | : | (Jointly Administered) |
| Debtors.[1] | : | |

----------------------------------------------------------------x

**FOURTH INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS
HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE
PERIOD OF NOVEMBER 1, 2019 THROUGH AND INCLUDING FEBRUARY 29, 2020**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc.(4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7side); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), counsel to the Official Committee of Unsecured Creditors (the "Creditors' Committee") of Sears Holdings Corporation and its affiliated debtors and debtors in possession (collectively, the "Debtors"), hereby submits this fourth application (the "Application"), pursuant to sections 330(a) and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), requesting interim allowance of compensation for services rendered to the Creditors' Committee and the Litigation Designees for the period of November 1, 2019 through and including February 29, 2020 (the "Compensation Period") and for reimbursement of expenses incurred in connection therewith.  In support of this Application, Akin Gump submits the declaration of Philip C. Dublin, a partner at Akin Gump, which declaration is attached hereto as **Exhibit A** and incorporated by reference into this Application.  In further support of this Application, Akin Gump respectfully represents as follows.

## **INTRODUCTION**

1.      By this Application, Akin Gump seeks (i) interim allowance of compensation for the professional services rendered by Akin Gump during the Compensation Period in the amount of $4,217,112.50, representing 5,170.20 hours of professional services and 181.10 hours of paraprofessional and other non-legal services and (ii) reimbursement of actual and necessary expenses incurred by Akin Gump during the Compensation Period in the amount of $1,424,635.72.[2]

---

[2] The expenses incurred during the Compensation Period include, among other things: (i) $1,032,510.21 of expenses relating to the payment of consulting fees and expenses incurred by Solomon Page Group LLC, a staffing provider retained in connection with the Adversary Proceeding; (ii) $170,581.05 of expenses relating to the payment of professional fees and expenses incurred by Akin Gump's document management and e-discovery provider, H5; and

2.      This Application has been prepared in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the *Order Authorizing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, dated November 16, 2018 [ECF No. 796] (the "Interim Compensation Order"), the *Order Authorizing Appointment of Independent Fee Examiner Pursuant to 11 U.S.C. § 327*, dated April 22, 2019 [ECF No. 3307] (the "Fee Examiner Order"), the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York (June 17, 2013) promulgated pursuant to Local Bankruptcy Rule 2016-1(a) (the "Local Guidelines") and the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 for Attorneys in Larger Chapter 11 Cases, effective as of November 1, 2013 (the "U.S. Trustee Guidelines" and, together with the Local Guidelines, the "Fee Guidelines").

3.      The Chair (as defined herein) of the Creditors' Committee has been given the opportunity to review this Application and has approved the compensation and reimbursement of expenses requested herein.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory bases for the relief requested herein are Bankruptcy Code sections 330 and 331, Bankruptcy Rule 2016 and Local Bankruptcy Rule 2016-1.

---

(iii) $121,261.50 of expenses relating to the compensation of expert witnesses retained in connection with the Adversary Proceeding.

## BACKGROUND

### A.    The Debtors' Chapter 11 Cases

7.    On October 15, 2018, and continuing thereafter, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  The Debtors' chapter 11 cases (the "Chapter 11 Cases") are jointly administered for procedural purposes only.  No trustee or examiner has been appointed in the Chapter 11 Cases.

8.    On October 24, 2018 (the "Formation Date"), the Office of the United States Trustee for Region 2 (the "U.S. Trustee") appointed the Creditors' Committee pursuant to Bankruptcy Code section 1102(a).  *See Notice of Appointment of Official Committee of Unsecured Creditors* [ECF No. 276].  The Creditors' Committee currently comprises seven members.[3]  Simon Property Group, L.P. serves as chair of the Creditors' Committee (the "Chair").

9.    On January 3, 2019, the U.S. Trustee filed the *Motion of United States Trustee for Order Authorizing Appointment of Independent Fee Examiner* [ECF No. 1470].  On April 22, 2019, this Court entered the Fee Examiner Order [ECF No. 3307].  On the same day, Paul E. Harner was appointed as fee examiner in the Chapter 11 Cases (the "Fee Examiner").  The Fee Examiner has retained Ballard Spahr LLP as legal counsel.

---

[3] The following entities currently comprise the Creditors' Committee:  (i) The Bank of New York Mellon Trust Company, N.A. as Indenture Trustee; (ii) Brixmor Operating Partnership, L.P.; (iii) Computershare Trust Company, N.A.; (iv) Oswaldo Cruz; (v) Pension Benefit Guaranty Corporation ("PBGC"); (vi) Simon Property Group, L.P.; and (vii) Winiadaewoo Electronics America, Inc.  *See Amended Notice of Appointment of Official Committee of Unsecured Creditors*, dated March 31, 2020 [ECF No. 7539].

**B.      Retention of Akin Gump**

10.      On the Formation Date, the Creditors' Committee selected Akin Gump as its legal

counsel.  On November 28, 2018, the Creditors' Committee filed its application to retain and

employ Akin Gump as counsel to the Creditors' Committee [ECF No. 923] (the "Akin Retention

Application"), which application was authorized by an order of this Court dated December 10,

2018 [ECF No. 1107] (the "Akin Retention Order").[4]

11.      The Akin Retention Order authorizes the Creditors' Committee to retain and

employ Akin Gump as its counsel in the Chapter 11 Cases in accordance with Akin Gump's

normal hourly rates and disbursement policies, *nunc pro tunc* to October 24, 2018, all as

contemplated by the Akin Retention Application.  Specifically, the Akin Retention Order

authorizes Akin Gump to be compensated on an hourly basis and to be reimbursed for actual and

necessary out-of-pocket expenses.

12.      On October 15, 2019, the Court entered the Confirmation Order [ECF No. 5370]

approving the Plan.  Pursuant to the Confirmation Order, the Creditors' Committee was granted

joint standing with the Debtors to commence, prosecute, settle and otherwise dispose of the: (i)

Specified Causes of Action; (ii) other Preserved Causes of Action against the ESL Parties; (iii) all

claims and causes of action asserted in the pending adversary proceeding captioned *Sears*

*Holdings Corp. v. Lampert*, Adv. Pro. 19-08250 (RDD) (Bankr. S.D.N.Y.) (the "Adversary

Proceeding") and any other claims or causes of action ancillary thereto; and (iv) claims or causes

of action against insurance carriers related to coverage for claims asserted in the Adversary

Proceeding (the foregoing referred to collectively as the "Jointly Asserted Causes of Action").

---

[4] The Creditors' Committee selected FTI Consulting, Inc. ("FTI") to serve as its financial advisor and Houlihan Lokey Capital, Inc. ("Houlihan") to serve as its investment banker on October 25, 2019 and October 29, 2019, respectively.  The orders authorizing the retention of FTI [ECF No. 1325] and Houlihan [ECF No. 1326] were entered on December 19, 2018.

The Jointly Asserted Causes of Action are overseen by designees who will be the initial members

of the Liquidating Trust Board upon the Effective Date of the Plan (the "Litigation Designees").[5]

Pursuant to the Confirmation Order, Akin Gump serves as "primary litigation counsel to act on

behalf of the Litigation Designees to investigate, commence, prosecute and otherwise litigate the

Jointly Asserted Causes of Action." *See* Confirmation Order ¶ 22.[6]  The Confirmation Order

authorizes Akin Gump to be compensated on an hourly basis and to be reimbursed for actual and

necessary out-of-pocket expenses. *Id.*

## C.    Prior Fee Applications and Fee Statements Filed During the Compensation Period

13.     On December 16, 2019 Akin Gump filed and served the *Third Interim Fee*

*Application of Akin Gump Strauss Hauer & Feld LLP as Counsel to the Official Committee of*

*Unsecured Creditors for Allowance of Compensation for Services Rendered and Reimbursement*

*of Expenses for the Period of July 1, 2019 Through and Including October 31, 2019* [ECF No.

6231] (the "Third Interim Fee Application").[7]  Pursuant to the Third Interim Fee Application,

Akin Gump requested interim allowance of fees in the amount of $5,384,047.00 and

reimbursement of expenses in the amount of $318,470.97 for the period from July 1, 2019

through and including October 31, 2019.  There were no objections to the Third Interim Fee

Application and, on January 31, 2020, the Court entered an order approving the Third Interim

Fee Application [ECF No. 6811] (the "Third Interim Fee Order").  Pursuant to the Third Interim

---

[5] The initial members of the Liquidating Trust Board will be: (i) Patrick Bartels; (ii) Alan Carr; (iii) Eugene Davis; (iv) William Transier; and (v) Raphael Wallander.

[6] The Creditors' Committee Settlement provided, among other things, that three of the five members of the Liquidating Trust Board would be selected by the Creditors' Committee and the remaining two members would be selected by the Debtors.  In turn, the proposed members of the Liquidating Trust Board would choose, subject to various factors and procedures, primary litigation counsel for the Liquidating Trust.  In July 2019, the proposed members of the Liquidating Trust Board chose Akin Gump to serve as Primary Trust Litigation Counsel.

[7] A Copy of the Third Interim Fee Application can be accessed at: https://restructuring.primeclerk.com/sears/Home-DownloadPDF?id1=MzEzODkz&id2=0.

Fee Order, on February 28, 2020, Akin Gump received payment of $1,076,809.40 (representing the 20% of fees withheld from the payments made on account of the monthly fee statements subject to the Third Interim Fee Application).

14.    On January 30, 2020, Akin Gump filed and served the *Fourteenth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of November 1, 2019 Through November 30, 2019* [ECF No. 6794] (the "Fourteenth Monthly Fee Statement"),[8] pursuant to which Akin Gump sought payment of (i) $791,316.00 (80% of $989,145.00) as compensation for professional services rendered and (ii) $305,321.24 for reimbursement of expenses.  Akin Gump did not receive any objections to the Fourteenth Monthly Fee Statement and received payment in respect thereof on March 9, 2020.

15.    On February 21, 2020, Akin Gump filed and served the *Fifteenth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of December 1, 2019 Through December 31, 2019* [ECF No. 7328] (the "Fifteenth Monthly Fee Statement"),[9] pursuant to which Akin Gump sought payment of (i) $765,714.80 (80% of $957,143.50) as compensation for professional services rendered and (ii) $303,709.74 for reimbursement of expenses.  Akin Gump did not receive any objections to the Fifteenth Monthly Fee Statement and received payment in respect thereof on April 10, 2020.

16.    On March 20, 2020, Akin Gump filed and served the *Sixteenth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and*

---

[8] A copy of the Fourteenth Monthly Fee Statement can be accessed at:
https://restructuring.primeclerk.com/sears/Home-DownloadPDF?id1=MzI1OTU3&id2=0

[9] A copy of the Fifteenth Monthly Fee Statement can be accessed at:
https://restructuring.primeclerk.com/sears/Home-DownloadPDF?id1=MzEyOTYw&id2=0.

*Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of January 1, 2020 Through January 31, 2020* [ECF No. 7484] (the "Sixteenth Monthly Fee Statement"),[10] pursuant to which Akin Gump sought payment of (i) $821,655.60 (80% of $1,027,069.50) as compensation for professional services rendered and (ii) $292,872.76 for reimbursement of expenses.  Akin Gump did not receive any objections to the Sixteenth Monthly Fee Statement and received payment in respect thereof on April 10, 2020.

17.    On April 1, 2020, Akin Gump filed and served the *Seventeenth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of February 1, 2020 Through February 29, 2020* [ECF No. 7633] (the "Seventeenth Monthly Fee Statement"[11] and, together with the Fourteenth Monthly Fee Statement, the Fifteenth Monthly Fee Statement and the Sixteenth Monthly Fee Statement, the "Monthly Fee Statements"), pursuant to which Akin Gump sought payment of (i) $995,003.60 (80% of $1,243,754.50) as compensation for professional services rendered and (ii) $522,731.98 for reimbursement of expenses.  As of the date of this Application, Akin Gump has not received any objections to the Seventeenth Monthly Fee Statement.

### SUMMARY OF PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES REQUESTED

18.    By this Application, Akin Gump requests allowance of interim compensation for professional services rendered during the Compensation Period in the amount of $4,217,112.50

---

[10] A copy of the Sixteenth Monthly Fee Statement can be accessed at:
https://restructuring.primeclerk.com/sears/Home-DownloadPDF?id1=MzQwMDY0&id2=0.

[11] A copy of the Seventeenth Monthly Fee Statement can be accessed at:
https://restructuring.primeclerk.com/sears/Home-DownloadPDF?id1=MzQ1MjE4&id2=0.

and expense reimbursements of $1,424,635.72.[12]  During the Compensation Period, Akin Gump

attorneys and paraprofessionals expended a total of 5,351.30 hours for which compensation is

sought.

19.     The fees charged by Akin Gump in the Chapter 11 Cases are billed in accordance

with Akin Gump's existing billing rates and procedures in effect during the Compensation

Period.  The rates Akin Gump charges for the services rendered by its professionals and

paraprofessionals in the Chapter 11 Cases are the same rates Akin Gump charges for professional

and paraprofessional services rendered in comparable non-bankruptcy related matters.  Such fees

are reasonable based on the customary compensation charged by comparably skilled practitioners

in comparable non-bankruptcy cases in a competitive national legal market.  The disclosures

required by the U.S. Trustee Guidelines regarding the customary and comparable compensation

are annexed hereto as **Exhibit B**.

20.     Akin Gump maintains computerized records of the time spent by all Akin Gump

professionals and paraprofessionals in connection with the Chapter 11 Cases.  A summary of

compensation by timekeeper is attached hereto in **Exhibit C**, and a summary of fees by task code

is attached hereto in **Exhibit D**.  The itemized time records for Akin Gump professionals and

paraprofessionals performing services during the Compensation Period have been filed and

served in the Monthly Fee Statements in accordance with the Interim Compensation Order.

---

[12] Akin Gump voluntarily reduced its fees and expenses prior to the filing of the applicable Monthly Fee Statement
by the following amounts: (i) $148,421.50 for fee reductions; and (ii) $30,012.16 for expense reductions.  The
voluntary fee and expense reductions relate to, among other things: (i) fees incurred by professionals or
paraprofessionals for attending meetings, conferences or hearings at which their presence was not essential to the
issues or matters addressed therein; (ii) duplicative work or work performed by professionals or paraprofessionals
billing a *de minimis* amount of time to the Chapter 11 Cases during the applicable period; (iii) certain fees on
account of non-working travel time; (iv) fees incurred in connection with certain administrative tasks; and (v)
certain overtime meal and travel expenses.  Consequently, Akin Gump does not seek payment of these fees and
expenses in this Application.

21.    Akin Gump also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services.  A summary of the categories of expenses and amounts for which reimbursement is requested by this Application is attached hereto as **Exhibit E**.

22.    Akin Gump's staffing plan for the Compensation Period is attached hereto as **Exhibit F**.

## SUMMARY OF SERVICES PERFORMED BY
## AKIN GUMP DURING THE COMPENSATION PERIOD

23.    The services provided by Akin Gump during the Compensation Period were actual and necessary for the administration of the Chapter 11 Cases, performed at the request of the Creditors' Committee and/or the Litigation Designees and commensurate with the complexity and significance of this matter.  The variety and complexity of the issues in the Chapter 11 Cases and the need to act or respond to such issues on an expedited basis during the Compensation Period required the expenditure of significant time by Akin Gump professionals and paraprofessionals from numerous legal disciplines.

24.    The following is a summary of the professional services rendered by Akin Gump during the Compensation Period.  This summary is organized in accordance with Akin Gump's internal system of task codes established at the outset of the Chapter 11 Cases based on the Fee Guidelines.  In classifying services into task codes, Akin Gump attempted to place the services performed in the category that most closely related to the services provided.  The below does not include summaries for certain task codes for which a *de minimis* amount of time was billed during the Compensation Period.

25.    Moreover, the following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed.  Rather, it merely is an

attempt to highlight certain of those areas in which services were rendered, as well as to identify

certain of the matters and issues that Akin Gump was required to address during the

Compensation Period.

A.    **General Case Administration (Task Code 2)**

| Total Hours | Fees |
|:---:|:---:|
| 26.10 | $12,035.50 |

26.    This category includes time spent by Akin Gump professionals and

paraprofessionals performing various administrative services in order to represent the Creditors'

Committee effectively and efficiently, including, among other things: (i) reviewing and analyzing

pleadings and other documents filed by the Debtors and third parties; (ii) apprising Akin Gump

attorneys and paraprofessionals of recent filings and upcoming deadlines; (iii) preparing internal

task lists and case calendars; and (iv) communicating with the members of the Creditors'

Committee, the Debtors' advisors and other parties in interest regarding general case

administration and related matters.

27.    During the Compensation Period, Akin Gump kept in close contact with counsel

to the Debtors and other parties in interest to discuss open scheduling issues, the timing for filing

various motions and applications and the type of information the Creditors' Committee would

require to analyze each such motion or application.  Akin Gump also consulted regularly with

FTI with respect to documents and other information received from the Debtors, their

representatives and other parties in interest.

28.    Akin Gump professionals and paraprofessionals also monitored the dockets for

the Chapter 11 Cases, the Adversary Proceeding and all appeals to remain apprised of all critical

matters.  For each significant filing, Akin Gump professionals and paraprofessionals worked to

ensure that the appropriate parties were notified of its contents, relevant response deadlines,

hearing dates and any other critical matters related thereto.  Further, in connection with motions

and applications filed by the Debtors and other parties in the Chapter 11 Cases, Akin Gump

analyzed and conducted diligence with respect to the subject matter of the motion or application

to determine, among other things, the effect the relief requested would have on the Debtors, their

creditors and the administration of the Chapter 11 Cases.  Akin Gump's analysis and diligence

efforts included: (i) reviewing underlying documentation and litigation related to the applicable

motion or application; (ii) meeting with or holding conference calls with representatives of the

Debtors and third parties to attempt to achieve consensual resolutions of the issues involved; and

(iii) working with FTI to ensure that the Creditors' Committee understood the effects the

requested relief would have on the Debtors' estates and creditors.  Due to Akin Gump's

experience counseling official committees of unsecured creditors, Akin Gump believes it was

able to address all issues relating to case administration that have arisen during the pendency of

the Chapter 11 Cases in an effective and efficient manner.

**B.      Akin Gump Fee Application/Monthly Billing Reports (Task Code 3)**

| Total Hours | Fees |
|---|---|
| 198.80 | $136,384.00 |

29.      This category includes time spent by Akin Gump professionals and

paraprofessionals preparing and drafting the Third Interim Fee Application and Monthly Fee

Statements and responding to all inquiries and requests regarding the foregoing, including those

from the Fee Examiner and the U.S. Trustee.  Pursuant to the Interim Compensation Order, the

Third Interim Fee Application and the Monthly Fee Statements contained a list of individuals

who rendered services to the Creditors' Committee during the relevant compensation period,

information as to each individual's title, billing rate and hours worked and a comprehensive

breakdown of the fees incurred and disbursements expended.  To minimize costs in connection

with this time-intensive process, Akin Gump relied on paraprofessionals to prepare the initial

drafts of the Third Interim Fee Application and Monthly Fee Statements, thereby limiting the

time spent by attorneys on the review of fees, where reasonably practicable.

**C.    Creditor Committee Matters/Meetings (Task Code 7)**

| Total Hours | Fees |
|:---:|:---:|
| 21.50 | $18,803.50 |

30.    This category includes time spent by Akin Gump professionals and

paraprofessionals: (i) preparing for and participating in conference calls with the Creditors'

Committee as a whole and with individual members of the Creditors' Committee; (ii)

participating in update calls among the professionals to the Creditors' Committee regarding

pending matters and strategy; (iii) responding to numerous inquiries from individual unsecured

creditors; and (iv) attending to other general Creditors' Committee matters.

31.    Through conference calls and correspondence, Akin Gump assisted the Creditors'

Committee in fulfilling its statutory duties to make informed decisions regarding the various

issues that have arisen in the Chapter 11 Cases, monitor closely the Debtors' management of the

Chapter 11 Cases and reach independent conclusions on the merits of specific matters.  Although

the tasks in this category do not necessarily relate to specific legal issues, they nevertheless were

essential because they facilitated Akin Gump's management of the Chapter 11 Cases and

supported Akin Gump's performance of other substantive tasks.

**D.    Court Hearings (Task Code 8)**

| Total Hours | Fees |
|:---:|:---:|
| 52.80 | $52,021.50 |

32.    This category includes time spent by Akin Gump professionals and

paraprofessionals in connection with Court hearings and Chambers conferences held during the

Compensation Period. During the Compensation Period, Akin Gump participated in four hearings, which required the preparation and participation of Akin Gump attorneys.

33.     In preparing for hearings and conferences, Akin Gump attorneys, together with the Creditors' Committee's other advisors, reviewed and analyzed all issues, applicable motions and applications filed with the Court, including any objections and responses thereto, discussed with the Debtors' advisors and other relevant parties the relief requested and, as necessary, asserted the Creditors' Committee's position at such hearings and conferences. In addition, following each hearing or conference, Akin Gump provided the Creditors' Committee with updates and analyses of the results thereof, either in written form or during the following Creditors' Committee call.

**E.     General Claims Analysis/Claims Objections (Task Code 12)**

| Total Hours | Fees |
|:---:|:---:|
| 170.10 | $168,616.00 |

34.     This category includes time spent by Akin Gump attorneys reviewing and analyzing claims against the Debtors' estates and any settlements thereof. During the Compensation Period, Akin Gump, together with FTI, worked closely with the advisors to the Debtors and other parties in interest to understand the amount and validity of secured, priority, administrative and unsecured claims asserted against the estates. Accordingly, during the Compensation Period, Akin Gump, together with FTI: (i) performed analyses with respect to the bases for various claims and potential settlements thereof, including administrative expense claims and those claims asserted by certain plaintiffs involved in the insolvency proceedings of Sears Canada Inc.; (ii) participated in negotiations among the Debtors and certain creditors asserting secured or administrative expense claims; (iii) reviewed analyses prepared by advisors retained by the Debtors to pursue preference actions under Bankruptcy Code section 547 and

other comparable actions under applicable nonbankruptcy law to understand, among other things, the potential offsets to asserted claims; and (iv) provided the Creditors' Committee with updates regarding the foregoing, including claims pool estimates and issues related thereto.

35.    Notably, during the Compensation Period, Akin Gump attorneys worked closely with the Debtors' attorneys to analyze and respond to Winners Industry Co., Ltd.'s ("Winners") appeal of the Court's order denying Winners's motion for allowance of administrative expense claims asserted under Bankruptcy Code section 503(b)(1) (the "503(b)(1) Motion"). [13]  On October 15, 2019, the Court entered an order denying the 503(b)(1) Motion [ECF No. 5371], which Winners subsequently appealed to the United States District Court for the Southern District of New York (the "District Court") on October 28, 2019.  *See Winners Industy Co. Ltd. v. Sears Holdings Corporation*, Case No. 7:19-cv-10231 (S.D.N.Y.) (NSR).   In connection with this appeal, Akin Gump attorneys spent a significant amount of time during the Compensation Period: (i) conducting research and analyzing the legal issues presented by Winners' appellant and reply briefs; (ii) holding conference calls with the Debtors' advisors on the appropriate response; and (iii) drafting, and on February 3, 2020, filing the *Joint Response Brief of Appellees* [Case No. 7:19-cv-10231; ECF No. 19].  By the joint appellee brief, the Debtors and the Creditors' Committee argued, among other things, that Winners' claims are not entitled to administrative expense priority under applicable law.

36.    Akin Gump continues to work with the Debtors advisors with respect to Winners's appeal.  As of the date of this Application, no hearing to consider the appeal has been scheduled.

---

[13] Winners's motion also sought allowance of administrative claims under Bankruptcy Code section 503(b)(9) in respect of additional goods shipped to the Debtors prepetition.  Winners's appeal, however, related strictly to its asserted claims under Bankruptcy Code section 503(b)(1).

**F.        Secured Creditor Issues/Communications/Meetings (Task Code 15)**

| Total Hours | Fees |
|---|---|
| 94.70 | $82,152.00 |

37.        This category includes time spent by Akin Gump attorneys in connection with claims asserted by ESL, Cyrus Capital Partners, L.P. ("Cyrus") and Wilmington Trust, N.A. ("Wilmington Trust" and, together with ESL and Cyrus, the "Second Lien Parties") arising under Bankruptcy Code section 507(b) (the "507(b) Claims"), and the Debtors' proposed surcharges of the Second Lien Parties' collateral pursuant to Bankruptcy Code section 506(c) (the "506(c) Surcharges"). Prior to the Compensation Period, on May 26, 2019, the Debtors filed the *Debtors' Motion to Estimate Certain 507(b) Claims for Reserve Purposes* [ECF No. 4034] (the "Estimation Motion"). By stipulation among the Debtors and the Second Lien Parties, which the Court entered on June 21, 2019 [ECF No. 4316] (the "Rule 3012 Stipulation"), the Estimation Motion was deemed to be a motion pursuant to Bankruptcy Rule 3012 to determine the amount, if any, of the 507(b) Claims and the amount of any 506(c) Surcharges. On August 5, 2019, following the conclusion of a two-day hearing, the Court ordered that (i) the Second Lien Parties were not entitled to a 507(b) Claim [ECF No. 4740] (the "507(b) Order") and (ii) the Debtors had not satisfied their burden of establishing the 506(c) Surcharges [ECF No. 4793] (the "506(c) Order").[14] On August 14, 2019, ESL, Wilmington Trust and Cyrus each filed a separate notice appealing the 507(b) Order to the District Court [ECF Nos. 4832, 4839, 4845].

---

[14] On October 30, 2019, the District Court, at the request of the Debtors and the Creditors' Committee and over the objection of the Second Lien Parties, stayed the appeal of the 506(c) Order pending resolution of the 507(b) Order appeal. *Memorandum Order and Opinion*, 19-cv-08002 (VB), [ECF No. 25]; *see also Motion to Stay the Debtors' 506(c) Appeal Pending Resolution of Second-Lien Holders' 507(b) Appeals*, 19-cv-08002 (VB), [ECF No. 17]; *Official Committee of Unsecured Creditors' (I) Motion to Stay the 506(c) Appeal Pending the Resolution of the 507(b) Appeals and (II) Joinder to the Debtors' Stay Motion*, 19-cv-08237 (VB), [ECF No. 13]; *Debtors' and UCC's Joint Reply in Support of their Motions to Stay 506(c) Appeals Pending Resolution of Second-Lien Holders' 507(b) Appeals*, 19-cv-08002 (VB), [ECF No. 24].

38.     On November 1, 2019, following the District Court's denial of the Certification

Motion by the Second Lien Parties,[15] the Second Lien Parties submitted to the District Court

their joint appellant brief regarding their 507(b) Claims [Case No. 7:19-cv-07660; ECF No. 25].

In their joint appellant brief, the Second Lien Parties argued that, among other things, the Court

erred by: (i) analyzing the value of the Second Lien Parties' collateral using its own valuation

methodology in a manner inconsistent with *Associates Commercial Corp. v. Rash*, 520 U.S. 953,

962 (1997); (ii) deducting approximately $395 million of first-lien obligations relating to

undrawn letters of credit from the aggregate value of the Second Lien Parties' collateral; and (iii)

deducting certain of the Debtors' indirect overhead costs from the aggregate value of the Second

Lien Parties' collateral.

39.     On December 9, 2019, the Debtors and the Creditors' Committee filed their joint

appellee brief [Case No. 7:19-cv-07660; ECF No. 51] in which they argued, among other things,

that the Court's valuation methodology was consistent with the Supreme Court's ruling in *Rash*

and otherwise contested the Second Lien Parties' remaining arguments.  In preparing the

appellee brief, Akin Gump attorneys worked closely with Debtors' counsel to research and

develop the arguments in support of the Court's ruling in connection with entry of the 507(b)

Order.  Finally, on December 23, 2019, the Second Lien Parties filed their joint reply brief [Case

No. 7:19-cv-07660; ECF No. 54] in which they reiterated several arguments set forth in their

initial brief and responded to the arguments made by the Debtors and the Creditors' Committee

---

[15] Specifically, on September 18, 2019, ESL filed the *Motion of ESL for Certification of Direct Appeal to the United States Court of Appeals for the Second Circuit*, 19-cv-07660 (VB), [ECF No. 6] (the "Certification Motion").  Cyrus and Wilmington Trust filed joinders to the Certification Motion on September 17, 2019 and September 18, 2019, respectively.  In response, on October 8, 2019, Akin Gump, on behalf of the Creditors' Committee filed the *Opposition of the Official Committee of Unsecured Creditors to Motion to Certify Direct Appeals to the Second Circuit*, 19-cv-07660, [ECF No. 33].  On October 17, 2019, Akin Gump attorneys participated in a status conference before the District Court, during which the District Court denied the Certification Motion, largely on the grounds put forward by the Debtors and the Creditors' Committee.  *See* 19-cv-7660 (VB), [ECF No. 40].

in the joint appellee brief.  The Second Lien Parties have requested oral argument on the issues

presented.  As of the date of this Application, no hearing has been scheduled.

**G.      Jointly Asserted Causes of Action (Task Code 20)[16]**

| Total Hours | Fees |
|---|---|
| 4,305.50 | $3,279,931.00 |

40.      This category includes time spent by Akin Gump attorneys in connection with

their role as Primary Trust Litigation Counsel to the Litigation Designees.  During the

Compensation Period, Akin Gump professionals and paraprofessionals, among other things: (i)

continued their comprehensive investigation (the "Investigation") into the related-party

transactions that preceded the commencement of the Chapter 11 Cases and claims arising

therefrom, including the Jointly Asserted Causes of Action; (ii) drafted and filed an amended

adversary complaint [Case No. 19-08250; ECF No. 52] (the "First Amended Adversary

Complaint") in the Adversary Proceeding; (iii) engaged in discovery with defendants in the

Adversary Proceeding and certain third parties; and (iv) prepared for and participated in

regularly scheduled conference calls with the Litigation Designees to provide updates and

analysis and seek authorization with respect to the foregoing.

41.      On November 25, 2019, Akin Gump, on behalf of the Creditors' Committee, filed

the First Amended Adversary Complaint.  Drafting the 258-page First Amended Adversary

Complaint was a highly involved process.  In connection therewith, Akin Gump attorneys

conducted extensive research and prepared detailed analyses with respect to discrete legal issues

---

[16] As described further herein, pursuant to the Confirmation Order and effective as of the date thereof, Akin Gump
serves as "primary litigation counsel to act on behalf of the Litigation Designees to investigate, commence,
prosecute and otherwise litigate the Jointly Asserted Causes of Action" in addition to its role as counsel to the
Creditors' Committee.  *See* Confirmation Order ¶ 22.  To facilitate review of Akin Gump's fees attributable to its
role as counsel to the Litigation Designees following entry of the Confirmation Order, this task code (Task Code 20)
contains all such work.

arising in connection with claims asserted in the First Amended Adversary Complaint.  The

research and analyses ultimately formed the basis of the Creditors' Committee's and Litigation

Designees' decision to assert 26 additional counts and name 27 additional defendants in the First

Amended Adversary Complaint not previously included in the original complaint.

42.     On December 17, 2019, Akin Gump attorneys participated in a conference

pursuant to Rule 26(f) of the Federal Rules of Civil Procedure with the advisors for nearly all of

the parties to the Adversary Proceeding regarding a number of issues, including those relating to:

(i) briefing deadlines and scheduling; (ii) transmittal of privileged documents or

communications; and (iii) the discovery process.  As a result of this conference and subsequent

telephonic conferences among advisors to the Debtors, Creditors' Committee and certain other

parties to the Adversary Proceeding, the parties reached certain agreements with respect to

briefing and discovery procedures.  The parties memorialized these procedures in a joint letter to

the Court, which Akin Gump prepared and filed on February 10, 2020 [Case No. 19-08250; ECF

No. 85].

43.     During the Compensation Period, and in accordance with such agreed upon

procedures, Akin Gump attorneys: (i) drafted and served extensive document requests on all

defendants named in the First Amended Adversary Complaint as well as approximately 34 third

parties; (ii) reviewed the defendants' and third parties' responses and objections to requests for

documents and conducted meet-and-confers with such parties, as appropriate; (iii) drafted a

proposed protective order; (iv) identifed, interviewed and retained certain experts to perform

analyses, provide advice and, if appropriate, ultimately testify with respect to certain issues

relevant to the First Amended Adversary Complaint; and (v) continued to review the voluminous

discovery—including more than 1,000,000 documents received during the Compensation
Period—produced in connection with the Adversary Proceeding.[17]

44.    On February 21, 2020, many of the defendants in the Adversary Proceeding filed
motions to dismiss the First Amended Adversary Complaint [Case No. 19-08250; ECF Nos. 95-
101, 103-111, 113-116, 118-127, 129-137] (the "Motions to Dismiss").  Akin Gump attorneys
devoted significant time during the Compensation Period to reviewing the Motions to Dismiss
and drafting oppositions to the same.  Specifically, Akin Gump attorneys analyzed the case law
cited in support of the Motions to Dismiss, performed legal research related to issues raised
therein and prepared briefing in opposition to the Motions to Dismiss.

45.    Finally, during the Compensation Period, certain defendants in the Adversary
Proceeding, who were former directors of Sears Holdings Corporation (the "Director
Defendants"), were involved in two separate state court litigations in New York and Illinois,
captioned *Alvarez v. XL Specialty Insurance Co.*, Case No. 655391/2019 (N.Y. Sup. Ct. Sept. 17,
2019) and *QBE Insurance Corp. v. 1291079 Ontario Ltd.*, Case No. 2019-CH-9982 (Ill. Cir. Ct.
Aug. 28, 2019), respectively, with certain providers of liability insurance to the directors and
officers of Sears Holdings Corporation (collectively, the "D&O Coverage Proceedings").  In the
D&O Coverage Proceedings, the Director Defendants have sought declaratory relief relating to,
among other things, the extent to which coverage is available for (i) the fees the Director
Defendants have incurred (and continue to incur) defending against  the Adversary Proceeding
and (ii) potential damages awards issued against the Director Defendants in connection with the
Adversary Proceeding.  In light of the effects such proceedings may have on issues related to the

---

[17] To minimize costs associated with the document review process, Akin Gump engaged contract attorneys to
conduct a first-level review of documents received in connection with the Investigation and Adversary Proceeding.
Contract attorneys dedicated significant time to this document review during the Compensation Period.

Adversary Proceeding, Akin Gump attorneys monitored the D&O Coverage Proceedings and performed research and prepared analyses in connection therewith.

**H.    Disclosure Statement/Solicitation/Plan Confirmation (Task Code 22)**

| Total Hours | Fees |
|---|---|
| 291.40 | $278,200.50 |

46.    This category includes time spent by Akin Gump professionals and paraprofessionals during the Compensation Period in connection with the Plan, Plan Supplement and other related matters, including, among other things, responding to objections to the compensation for the Liquidating Trust Board Members (the "Board Compensation") and an appeal of the Confirmation Order.

47.    Prior to the Compensation Period, on October 7, 2019, the Debtors filed the *Notice of Filing of Fourth Plan Supplement in Connection with Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [ECF No. 5335] setting forth the terms of the Board Compensation, which proposed compensation was the result of extensive negotiations led by the Creditors' Committee.  Thereafter, on October 25, 2019 and November 13, 2019, respectively, two administrative creditors objected to the Board Compensation [ECF Nos. 5517, 6009] (the "Compensation Objections"), arguing, among other things, that the Board Compensation was excessive and unwarranted.

48.    Although the Creditors' Committee believed that the Board Compensation was reasonable and appropriate under the circumstances, Akin Gump, along with the Debtors' advisors, attempted to negotiate a resolution of the Compensation Objections.  When these efforts proved fruitless, Akin Gump attorneys, with input from the Debtors' advisors, filed the *Joint Response of the Debtors and the Official Committee of Unsecured Creditors in Support of the Fourth Plan Supplement in Connection with Modified Second Amended Joint Chapter 11*

*Plan of Sears Holdings Corporation and Its Affiliated Debtors*, dated December 12, 2019 [ECF

No. 6189] (the "Joint Board Compensation Response").  By the Joint Board Compensation

Response, the Debtors and Creditors' Committee argued, among other things, that the Board

Compensation represented a reasonable exercise of the Debtors' and the Creditors' Committee's

business judgment and appropriately aligned the interests of the Litigation Trust Board Members

(and, prior to the Effective Date of the Plan, the Litigation Designees) with the interests of

creditors.  Following a contested hearing held on December 13, 2019, the Court overruled the

Compensation Objections and approved the Board Compensation.

49.    In addition, during the Compensation Period, Akin Gump attorneys spent

significant time analyzing issues in connection with the Confirmation Order appeal filed by ESL

on October 17, 2019 [ECF No. 5399] (the "ESL Confirmation Appeal"), drafting a responsive

brief in connection with the same and ultimately negotiating a consensual resolution of the

appeal.  Specifically, on December 23, 2019, ESL filed its appellant brief [Case No. 19-cv-

09703; ECF No. 10] and argued that the Confirmation Order should be reversed to the extent that

the Confirmation Order and the Plan could be interpreted to limit the assets from which ESL

and/or Transform could recover in the event their 507(b) Claims were allowed in connection with

the pending appeal of their 507(b) Claims.  In addition, ESL argued that the continued use of

certain litigation funding and cash reserves approved by the Court pursuant to the Confirmation

Order to pursue recoveries on account of claims junior to ESL's 507(b) Claims violated the

absolute priority rule and the discharge provisions of the Bankruptcy Code.

50.    Akin Gump work closely with the Debtors' advisors to analyze the legal and

factual issues implicated by the ESL Confirmation Order Appeal and drafted a responsive brief.

In addition, recognizing that ESL's Confirmation Appeal was contingent on the outcome of the

appeal of the 507(b) Order and, therefore not ripe, the Debtors and the Creditors' Committee attempted to negotiate a consensual resolution of the ESL Confirmation Appeal. These efforts were not immediately successful and, therefore, on February 12, 2020, the Debtors and the Creditors' Committee filed the *Joint Response Brief of Appellees* [Case No. 19-cv-09703; ECF No. 15]. In their joint appellee brief, the Creditors' Committee and the Debtors argued that (i) ESL's appeal was not ripe for hearing, particularly in light of the fact that ESL's 507(b) Claims were not yet allowed and were the subject of ongoing litigation in the District Court and (ii) the funding of litigation against ESL did not violate the absolute priority rule or improperly discharge ESL's claims. After filing the appellee brief, the Debtors and Creditors' Committee resumed settlement discussions with ESL. These discussions ultimately were successful and, on February 24, 2020, the parties filed a stipulation dismissing the ESL Confirmation Appeal [Case No. 19-cv-09703; ECF No. 20].

## I.    Asset Dispositions/363 Asset Sales (Task Code 23)

| Total Hours | Fees |
|:---:|:---:|
| 123.70 | $119,726.00 |

51.    This category includes time spent by Akin Gump attorneys in connection with the ongoing disputes related to Transform's obligations under the Asset Purchase Agreement that were the subject of the *Debtors' (I) Motion to (A) Enforce Asset Purchase Agreement and Automatic Stay Against Transform Holdco LLC and (B) Compel Turnover of Estate Property, and (II) Response to Transform Holdco LLC's Motion to Assign Matter to Mediation* [ECF No. 2796] (the "Turnover Motion," and the disputes related thereto, the "APA Disputes").[18] A

---

[18] Prior to the Compensation Period, on March 6, 2019, Transform filed a motion to assign the APA Disputes to mediation [ECF No. 2766] (the "Mediation Motion"). In response, on March 11, 2019, the Debtors filed the Turnover Motion. The Debtors and Transform each filed various responsive pleadings; however, at a hearing held on March 21, 2019, the Court instructed Transform and the Debtors to attempt to resolve the APA Disputes consensually based on guidance provided during that hearing. Transform and the Debtors ultimately were unable to resolve the remaining APA Disputes and, on May 24, 2019, the Debtors filed the *Debtors' Supplemental Motion to*

favorable resolution on the APA Disputes was critical to the Debtors' estates and creditors. Accordingly, prior to and during the Compensation Period, Akin Gump attorneys and the Creditors' Committee's other advisors worked closely with the Debtors' advisors to respond to Transform's various assertions.

52.    In light of the evidentiary nature of the APA Disputes, these efforts required the involvement of a number of members of Akin Gump's litigation team in addition to corporate and financial restructuring attorneys.  Specifically, during the Compensation Period, Akin Gump attorneys and the Creditors' Committee's other advisors analyzed Transform's and the Debtors' arguments, conducted extensive research regarding those arguments, prepared detailed memoranda for the Creditors' Committee and assisted the Debtors in preparing briefs in connection with the Remaining APA Disputes.  *See Debtors' Opposition to Transform Holdco LLC's Second Supplemental Memorandum of Law in Support of its Adversary Complaint*, dated November 22, 2019 [ECF No. 6079].

53.    The Remaining APA Disputes revolved primarily around the calculation of certain amounts under the Asset Purchase Agreement that could offset the amounts owed by Transform to the Debtors.  On December 9, 2019, after the Debtors and Transform were unable to come to an agreement regarding the proper method for calculating these amounts, the Court entered an order directing the appointment of a disinterested expert (the "Expert") to assist in making such calculations [ECF No. 6166].  Akin Gump attorneys remained in close coordination with the

---

*Enforce the Asset Purchase Agreement* [ECF No. 4029] (the "Motion to Enforce").  Thereafter, on May 25, 2019, Transform filed an adversary complaint against the Debtors [ECF No. 4033] (the "Transform's Adversary Complaint").  In the Motion to Enforce and Transform's Adversary Complaint, the Debtors and Transform set forth their respective arguments regarding Transform's obligations to assume certain of the Debtors' liabilities pursuant to the Asset Purchase Agreement and Transform's arguments that the Debtors breached the terms of the Asset Purchase Agreement.  During the July 11, 2019 hearing, the Court ruled on certain of the APA Disputes, but left three open disputes for further briefing: (i) the amount of "available cash" the Debtors had at the closing of the Asset Purchase Agreement; (ii) whether the Debtors breached their obligations to manage payables in the ordinary course; and (iii) whether Transform was liable for certain mechanics' liens (the "Remaining APA Disputes").

Debtors on these issues and analyzed the Expert's proposed work plan, dated December 23, 2019 [ECF No. 6274], to understand the costs that the Debtors would incur in connection therewith. Specifically, Akin Gump and FTI participated in several in-person and telephonic conferences with the Debtors' advisors to consider: (i) the risk associated with the outcome of the Expert's analyses; (ii) the costs associated with the Expert's work plan, including, among others, costs relating to information gathering, witness interviews, retention of professionals and preparation of expert reports; and (iii) the impact that the Expert's investigation would have on the Debtors' liquidity and ability to issue timely distributions to administrative expense creditors.

54.    Ultimately, during the Compensation Period, the Debtors and the Creditors' Committee determined that it was in the best interests of the Debtors' estates and creditors to endeavor, once again, to settle the Remaining APA Disputes with Transform and, thereby, avoid the costs associated with continuing the litigation.  Accordingly, The Debtors and the Creditors Committee engaged in extensive negotiations with Transform regarding the terms of a proposed settlement (the "APA Settlement") and, on January 10, 2020, filed a motion seeking approval of the APA Settlement [ECF No. 6327].  Pursuant to the terms of the APA Settlement:

- Transform would make a cash payment to the Debtors in the amount of $14 million, including $1 million in respect of reimbursement of certain professional fees;

- Transform would agree to release its interest in approximately $5.3 million in utility deposits held by the Debtors that the Court had previously determined belonged to Transform;

- The Debtors and Transform would grant releases with respect to all APA Disputes and would be prohibited from pursuing further litigation with respect to the APA Disputes; and

- The Expert would be relieved of his duties related to the Remaining APA Disputes.

55.    In connection with the APA Settlement, Akin Gump, on behalf of the Creditors'

Committee, filed, on January 21 2020, the *Statement of the Official Committee of Unsecured*

*Creditors in Support of Debtors' Motion Pursuant to Federal Rule of Bankruptcy Procedure*

*9019(a) for Entry of an Order Approving Settlement Agreement with Transform Holdco LLC*

[ECF No. 6371], pursuant to which the Creditors' Committee stated its support for the APA

Settlement, noted the continuous strain that the Remaining APA Disputes imposed on the

Debtors' estates and expressed the urgent need to avoid protracted litigation with respect to such

disputes.  On January 28, 2020, the Court entered an order approving the APA Settlement [ECF

No. 6413].

### ACTUAL AND NECESSARY DISBURSEMENTS

56.    Akin Gump seeks allowance of reimbursement of expenses in the amount of

$1,424,635.72 for expenses incurred during the Compensation Period in the course of providing

professional services to the Creditors' Committee and the Litigation Designees.  Akin Gump's

disbursement policies pass through all out-of-pocket expenses at actual cost or an estimated

actual cost when the actual cost is difficult to determine.  For example, as it relates to

computerized research, Akin Gump believes that it does not make a profit on that service as a

whole although the cost of any particular search is difficult to ascertain.  Other reimbursable

expenses (whether the service is performed by Akin Gump in-house or through a third party

vendor) include, but are not limited to, long-distance calls, overtime meals, deliveries, court

costs, transcript fees, discovery and temporary legal staffing services, travel and clerk fees.

## FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

57.    Bankruptcy Code section 330 provides, in relevant part, that the Court may award

to a professional person "reasonable compensation for actual, necessary services rendered[.]"

*See* 11 U.S.C. § 330(a)(1).  In turn, Bankruptcy Code section 330 provides as follows:

> In determining the amount of reasonable compensation to be awarded, the
> court shall consider the nature, the extent, and the value of such services,
> taking into account all relevant factors, including –
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration
> of, or beneficial at the time at which the service was
> rendered toward the completion of, a case under this title;
>
> (D)    whether the services were performed within a reasonable
> amount of time commensurate with the complexity,
> importance, and nature of the problem, issue, or task
> addressed; and
>
> (E)    with respect to a professional person, whether the person is
> board certified or otherwise has demonstrated skill and
> experience in the bankruptcy field; and
>
> (F)    whether the compensation is reasonably based on the
> customary compensation charged by comparably skilled
> practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

58.    The clear congressional intent and policy expressed in Bankruptcy Code section

330 is to provide for adequate compensation in order to continue to attract qualified and

competent bankruptcy practitioners to bankruptcy cases.  *In re Drexel Burnham Lambert Grp.,*

*Inc.*, 133 B.R. 13, 20 (Bankr. S.D.N.Y. 1991) ("Congress' objective in requiring that the market,

not the Court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by

appropriate legal specialists."); *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 850 (3d. Cir.

1994) (citations and internal quotations omitted) ("Congress rather clearly intended to provide

sufficient economic incentive to lure competent bankruptcy specialists to practice in the

bankruptcy courts.").

59.    In assessing the "reasonableness" of the fees requested, the Second Circuit has

stated that courts should consider the factors enumerated in *Johnson v. Ga. Highway Express,*

*Inc.*, while also incorporating the "lodestar method." *See Arbor Hill Concerned Citizens*

*Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections,* 522 F.3d 182, 190

(2d Cir. 2007) (citing *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974),

*abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 92–93, 96 (1989)).  The

"lodestar method" of calculating the reasonable fee contemplates "the number of hours

reasonably expended . . . multiplied by a reasonable hourly rate." *See Hensley v. Eckerhart et*

*al.*, 461 U.S. 424, 433 (1983); *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002); *Perdue v. Kenny*

*A.*, 130 S.Ct. 1662, 1672 (2010); *In re Drexel Burnham Lambert Grp., Inc.* 133 B.R. 13 (Bankr.

S.D. N.Y. 1991).  The factors set forth in *Johnson* and *In re First Colonial Corp. of Am.*, 544 F.2d

1291, 1298-99 (5th Cir. 1977) have been adopted by most courts.[19]  *See In re Nine Assocs., Inc.*,

76 B.R. 943, 945 (S.D.N.Y. 1987) (adopting *First Colonial/Johnson* analysis); *In re Cuisine*

*Magazine, Inc.*, 61 B.R. 210, 212-13 (Bankr. S.D.N.Y 1986) (same); *Green v. City of New York*,

403 Fed. Appx. 626, 629 (2d Cir. 2010) (summary order); *see generally* 3 COLLIER ON

BANKRUPTCY ¶ 330.03[9] (Lawrence P. King ed., 16th ed. 2016) (describing *First Colonial* and

*Johnson* as the "leading cases to be considered in determining a reasonable allowance of

compensation").

---

[19] The factors articulated by the Fifth Circuit in *First Colonial* were first articulated by the Fifth Circuit in *Johnson,*
with the *First Colonial* court adding the factor of the "spirit of economy," which was later rejected by
Congress.  *See Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*,
127 F.3d 1398, 1403 (11th Cir. 1997).

60.    Akin Gump respectfully submits that a consideration of these factors should result in the Court's allowance of the full compensation sought in this Application.

a.    <u>Time and Labor Required</u>.  Akin Gump billed a total of 5,170.20 hours of professional services and 181.10 hours of paraprofessional and other non-legal services during the Compensation Period.  As evidenced by this Application, Akin Gump professionals and paraprofessionals worked diligently and efficiently without unnecessary duplication of efforts throughout the Compensation Period.  This is especially true when considering the nature and complexity of the issues that arose in the Chapter 11 Cases during the Compensation Period.  In particular, the Compensation Period involved many material issues that required a favorable resolution for the Debtors' estates, including, among other things, those relating to the Remaining APA Disputes, the Second Lien Parties' appeal regarding their 507(b) Claims, negotiations with the Debtors and other parties with respect to the treatment of various claims, including administrative expense claims, the appeals of the Confirmation Order and the prosecution of the First Amended Adversary Complaint.  Akin Gump's representation of the Creditors' Committee has required it to balance the need to provide quality services with the need to act quickly and represent the Creditors' Committee in an effective, efficient and timely manner.  Akin Gump submits that the hours spent were reasonable given the size and complexity of the Chapter 11 Cases, the significant—and often times urgent—legal and business issues raised, and the numerous pleadings filed in the Chapter 11 Cases.

b.    <u>Novelty and Difficulty of the Questions</u>.  Akin Gump tasked knowledgeable attorneys to research, analyze and provide advice on difficult and complex bankruptcy, litigation, finance and other issues.  As further described herein, Akin Gump's skilled teams assisted the Creditors' Committee in evaluating, among other things, the Debtors' and Transform's relative obligations arising under the Asset Purchase Agreement, the Second Lien Parties' 507(b) Claims, the 506(c) Surcharges, the bases for various claims, including administrative expense claims and the claims and causes of action subject to the First Amended Adversary Complaint.

c.    <u>Skill Requisite to Perform the Legal Services Properly</u>.  Akin Gump believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Akin Gump's practice and its creative approach to the resolution of issues has contributed to the successful administration of the Chapter 11 Cases and benefited the Debtors and the Creditors' Committee.  Due to the nature and complexity of the legal issues presented in the Chapter 11 Cases, Akin Gump was required to exhibit a high degree of legal skill in areas related to, *inter alia*, bankruptcy, litigation, tax, real estate and corporate transaction matters.  Additionally, Akin Gump's strong working relationship with the legal and financial advisors

to other parties in interest enabled Akin Gump to work with such advisors towards a swift, consensual resolution of many of the salient issues in the Chapter 11 Cases.

d.  <u>Preclusion of Other Employment by Applicant Due to Acceptance of the Case</u>. Due to the size of Akin Gump's financial restructuring and litigation departments, Akin Gump's representation of the Creditors' Committee did not preclude its acceptance of new clients, but the demands for immediate and substantive action in the Chapter 11 Cases imposed significant burdens on Akin Gump professionals and paraprofessionals working concurrently on other matters.

e.  <u>Customary Fee</u>. The rates Akin Gump charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin Gump charges for professional and paraprofessional services rendered in comparable nonbankruptcy matters. Akin Gump's fee structure also is equivalent to the fee structure used by Akin Gump for restructuring, workout, bankruptcy, insolvency and comparable matters, as well as similar complex corporate and litigation matters, whether in-court or otherwise, regardless of whether a fee application is required. The firm's customary hourly rates and rate structure reflect that restructuring and related matters typically involve great complexity, numerous tasks requiring a high level of expertise and severe time pressures, as is the case here. Akin Gump's rate structure is similar to the rate structure used by other, similar law firms that work on other, similar matters.

f.  <u>Whether the Fee Is Fixed or Contingent</u>. Pursuant to Bankruptcy Code sections 330 and 331, all fees sought by professionals employed under Bankruptcy Code section 1103 are contingent pending final approval by the Court, and are subject to adjustment depending upon the services rendered and the results obtained. The contingency of full and actual compensation to Akin Gump increased the risk Akin Gump was assuming by representing the Creditors' Committee in the Chapter 11 Cases.

g.  <u>Time Limitations Imposed by the Client or Other Circumstances</u>. As previously set forth herein, Akin Gump was required to attend to certain issues arising in the Chapter 11 Cases under compressed timelines. Akin Gump and the Creditors' Committee's other advisors were faced with limited time in which to engage in negotiations while also preparing to prosecute objections at various hearings as necessary. For example, Akin Gump engaged in negotiations with administrative expense creditors while simultaneously litigating with the Second Lien Parties over the extent of their purported 507(b) Claims and taking discovery in connection with the prosecution of the First Amended Adversary Complaint. The tremendous efforts of Akin Gump professionals and paraprofessionals in completing this work permitted the

Creditors' Committee to address effectively various issues for the benefit of the Debtors' unsecured creditors.

h.  Amount Involved and Results Obtained.  Akin Gump professionals and paraprofessionals worked diligently to maximize value for the Debtors' estates and creditors.  During the Compensation Period, and as described in the summary of services herein, Akin Gump was instrumental in maximizing value for the benefit of unsecured creditors.  In particular, Akin Gump's efforts in connection with, among other things, the Remaining APA Disputes, 507(b) Claims and Plan-related issues effectively maximized the potential assets available for distribution to unsecured creditors.  Akin Gump submits that the fees requested in this Application are reasonable and appropriate when considering the results obtained on behalf of unsecured creditors as more fully described in the summary of services.

i.  Experience, Reputation and Ability of Attorneys.  Akin Gump is an international law firm that consistently is recognized as a top tier law firm in the field of creditors' rights, business reorganizations and liquidations under chapter 11 of the Bankruptcy Code.  During the Compensation Period, Akin Gump solicited the skill and expertise of its attorneys, a number of which have practiced law for over 20 years in a number of jurisdictions and legal disciplines.  Akin Gump attorneys have actively represented creditors and creditors' committees, as well as other parties in interest, in a number of the nation's largest chapter 11 cases, including *In re Nine West Holdings, Inc.*, *In re iHeartMedia, Inc.*, *In re Cumulus Media Inc.*, *In re Avaya Inc.*, *In re Chassix Holdings, Inc., In re Energy Future Holdings Corp.*, *In re Dynegy Holdings, LLC, In re Nortel Networks Inc.*, *In re Lightsquared Inc.*, *In re Longview Power, LLC*, *In re Eastman Kodak Company*, *In re Cal Dive International, Inc., In re Washington Mutual Inc., In re NII Holdings, Inc., In re MPM Silicones, LLC*, *In re Overseas Shipholding Group, Inc.*, *In re QCE Finance LLC*, *In re Residential Capital, LLC, In re Solutia, Inc., In re WorldCom, Inc., In re XO Communications, Inc., In re Tower Automotive LLC, In re VeraSun Energy Corp.,* and many others.  Akin Gump's extensive experience enables it to perform the services described herein competently and expeditiously.  In addition to its expertise in the area of corporate reorganization, Akin Gump has called upon the expertise of its partners and associates in other practice areas to perform the wide-ranging scope of the legal work necessitated by the Chapter 11 Cases, as described above.

j.  "Undesirability" of the Cases.  This factor is not applicable to the Chapter 11 Cases.

k.  Nature and Length of Professional Relationship.  Akin Gump has been rendering professional services to the Creditors' Committee since it was selected as counsel to the Creditors' Committee on October 24, 2018.

61.     For the reasons set forth above, the services rendered by Akin Gump were necessary and beneficial to the Creditors' Committee and consistently performed in a timely manner.  The compensation sought in this Application is reasonable in light of the value of such services to the Creditors' Committee and all unsecured creditors, Akin Gump's demonstrated skill and expertise in the bankruptcy field (as well as other areas of expertise relevant to the Chapter 11 Cases) and the customary compensation charged by comparably skilled practitioners at Akin Gump.  Accordingly, Akin Gump respectfully submits that the Court should approve the compensation for professional services and reimbursement of expenses sought herein.

62.     No agreement or understanding exists between Akin Gump and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with the Chapter 11 Cases.  No prior application has been made in this Court or in any other court for the relief requested herein as it relates to the Compensation Period.

## ATTORNEY STATEMENT PURSUANT TO U.S. TRUSTEE GUIDELINES

63.     The following is provided in response to the request for additional information set forth in ¶ C.5. of the U.S. Trustee Guidelines.

**Question**:     Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain.

Response:     No.

**Question**:     If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

Response:     Not applicable.

**Question**:     Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

Response:     No.

**Question**:    Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees.

Response:     Yes.  During the Compensation Period, 65.60 hours and $44,372.00 in fees were spent reviewing time records for compliance with the Fee Guidelines.

**Question**:    Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

Response:     See above.

**Question**:    If the fee application includes any rate increases since retention:  (i) Did your client review and approve those rate increases in advance?  (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

Response:     Akin Gump disclosed to the Creditors' Committee the hourly rates charged at the time of its retention and the hourly rates to be charged beginning in January 2020 in the Akin Retention Application and the Supplemental Rate Declaration, which the Creditors' Committee agreed to.

## **RESERVATION OF RIGHTS**

To the extent that there are services rendered or expenses incurred that relate to the Compensation Period but were not processed prior to the preparation of the Application, Akin Gump reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

**CONCLUSION**

WHEREFORE, Akin Gump respectfully requests: (i) an interim allowance of compensation for professional services rendered during the Compensation Period in the amount of $4,217,112.50 and expense reimbursement in the amount of $1,424,635.72; (ii) the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to Akin Gump's right to seek additional compensation for services performed and expenses incurred during the Compensation Period which were not processed at the time of the Application; and (iii) such other and further relief as the Court deems just, proper and equitable.

Dated: New York, New York
      April 14, 2020

AKIN GUMP STRAUSS HAUER & FELD LLP

By: */s/ Philip C. Dublin*
Ira S. Dizengoff
Philip C. Dublin
Sara L. Brauner
Zachary D. Lanier
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
pdublin@akingump.com
sbrauner@akingump.com
zlanier@akingump.com

*Counsel to the Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al.*

## **EXHIBIT A**

**CERTIFICATION OF PHILIP C. DUBLIN**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

In re:                                                                    :        Chapter 11
                                                                          :
SEARS HOLDINGS CORPORATION, et al.                                        :        Case No. 18-23538 (RDD)
                                                                          :
                                                                          :        (Jointly Administered)
                        Debtors.[1]                                       :
---------------------------------------------------------------x

### CERTIFICATION UNDER THE FEE GUIDELINES IN RESPECT OF THE FOURTH INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OF NOVEMBER 1, 2019 THROUGH AND INCLUDING FEBRUARY 29, 2020

I, Philip C. Dublin, hereby certify that:

1.     I am a partner with Akin Gump,[2] with responsibility for the Chapter 11 Cases of

the above captioned Debtors.  Akin Gump is counsel to Creditors' Committee of Sears Holdings

Corporation and its affiliated debtors and debtors in possession (collectively, the "Debtors").

---

[1] The Debtors in the Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc.(4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used herein but otherwise not defined shall have the meanings ascribed to such terms in the Application.

2.      In accordance with the Fee Guidelines, this certification is made with respect to the Application, for interim allowance of compensation and reimbursement of expenses incurred during the Compensation Period.

3.      In respect of section B.1 of the Local Guidelines, I certify that:

(a)     I have read the Application;

(b)     to the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Fee Guidelines;

(c)     the fees and disbursements sought are billed at rates in accordance with those customarily charged by Akin Gump and generally accepted by Akin Gump's clients; and

(d)     in providing a reimbursable service, Akin Gump does not make a profit on that service, whether the service is performed by Akin Gump in-house or through a third party.

4.      In accordance with section B.2 of the Local Guidelines and as required by the Interim Compensation Order, I certify that Akin Gump has complied with those provisions requiring it to provide the Debtors and the Creditors' Committee with a statement of Akin Gump's fees and disbursements accrued during the previous month, although, due to administrative limitations, such statements were not always provided within the timeframe set forth in the Local Guidelines or the Interim Compensation Order.

5.      In respect of section B.3 of the Local Guidelines, I certify that the Debtors, the U.S. Trustee and the members of the Creditors' Committee are each being provided with a copy of the Application.

Dated: New York, New York                     By: */s/  Philip C. Dublin*
April 14, 2020                                 Philip C. Dublin

## <u>EXHIBIT B</u>

**CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURE**

| Blended Hourly Rates | | |
|---|---|---|
| **Category of Timekeeper** | **Billed by NY Office for Preceding Year[1]** | **Billed in this Application** |
| Partner | $1,236.99 | $1,255.01 |
| Senior Counsel and Counsel | $921.13 | $1,015.54 |
| Associate | $678.79 | $669.82 |
| Legal Assistant | $280.82 | $268.47 |
| **All Timekeepers Aggregated** | **$895.58** | **$788.05** |

---

[1] Consistent with the U.S. Trustee Guidelines, this **Exhibit B** discloses the blended hourly rate for the aggregate of all timekeepers in the domestic offices of Akin Gump in which timekeepers collectively billed more than 10% of the hours to these cases during the Compensation Period (i.e., the New York office), segregated by category, and excluding all data from timekeepers practicing primarily in the financial restructuring group.  This data is based on information from a rolling 12-month year ending February 29, 2020.

**<u>EXHIBIT C</u>**

**SUMMARY OF COMPENSATION BY TIMEKEEPER**

| Name of Professional | Position | Department | Year Admitted | Hourly Billing Rate 2019 | Hourly Billing Rate 2020 | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|---|
| Brauner, Sara L. | Partner | Financial Restructuring | 2011 | $1,125.00 | $1,225.00 | 266.50 | $310,422.50 |
| Dizengoff, Ira S. | Partner | Financial Restructuring | 1993 | $1,550.00 | $1,595.00 | 5.20 | $8,060.00 |
| Dublin, Philip C. | Partner | Financial Restructuring | 1999 | $1,475.00 | $1,595.00 | 43.90 | $65,760.50 |
| Qureshi, Abid | Partner | Financial Restructuring | 1995 | $1,475.00 | $1,595.00 | 12.70 | $19,560.50 |
| Jacob, John | Partner | Health | 1993 | N/A | $1,135.00 | 7.00 | $7,945.00 |
| Chapman, Dean L. | Partner | Litigation | 2009 | $980.00 | $1,225.00 | 420.50 | $463,907.50 |
| Chen, Julius | Partner | Litigation | 2010 | $925.00 | $1,015.00 | 117.70 | $115,451.50 |
| Lawrence, Lacy M. | Partner | Litigation | 2006 | $1,020.00 | $1,350.00 | 32.60 | $39,159.00 |
| Sorkin, Joseph L. | Partner | Litigation | 2008 | $1,120.00 | $1,350.00 | 137.70 | $169,013.00 |
| Zensky, David | Partner | Litigation | 1988 | $1,305.00 | $1,595.00 | 162.70 | $236,654.50 |
| Phelps, David | Partner | Real Estate | 1987 | N/A | $1,240.00 | 6.20 | $7,688.00 |
| Elder, Eugene | Counsel | Health | 1990 | N/A | $975.00 | 6.50 | $6,337.50 |
| Matheson, Clayton | Counsel | Intellectual Property | 2010 | N/A | $950.00 | 16.30 | $6,337.50 |
| Park, Daniel S. | Counsel | Litigation | 2011 | $690.00 | $960.00 | 118.30 | $100,284.00 |
| Sharad, Saurabh | Counsel | Litigation | 2015 | $815.00 | $925.00 | 107.40 | $92,133.50 |
| Tizravesh, Roxanne | Counsel | Litigation | 2009 | $905.00 | $1,195.00 | 76.60 | $81,532.00 |
| Tolentino, Raymond | Counsel | Litigation | 2013 | $840.00 | $910.00 | 33.90 | $29,449.00 |
| Steed, Allison | Associate | Corporate | 2018 | N/A | $650.00 | 8.50 | $5,525.00 |
| Lanier, Zachary D. | Associate | Financial Restructuring | 2017 | $760.00 | $860.00 | 254.00 | $202,400.00 |
| Mahkamova, Shirin | Associate | Financial Restructuring | 2019 | $560.00 | $700.00 | 77.20 | $46,508.00 |

| Name of Professional | Position | Department | Year Admitted | Hourly Billing Rate 2019 | Hourly Billing Rate 2020 | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|---|
| Szydlo, Joseph E. | Associate | Financial Restructuring | 2019 | $560.00 | $700.00 | 93.30 | $55,174.00 |
| Glackin, Patrick J. | Associate | Litigation | 2019 | $540.00 | $650.00 | 423.00 | $254,259.00 |
| Kane, John P. | Associate | Litigation | 2016 | $770.00 | $895.00 | 594.90 | $495,085.50 |
| Kulikowski, Jillian R. | Associate | Litigation | 2019 | $540.00 | $650.00 | 543.50 | $321.573.00 |
| Latov, Jeffrey A. | Associate | Litigation | 2017 | $760.00 | $810.00 | 506.70 | $398.017.00 |
| Maizel, Elise | Associate | Litigation | 2017 | $690.00 | $810.00 | 242.50 | $181,257.00 |
| Nolan, Sean | Associate | Litigation | 2018 | $630.00 | $725.00 | 150.30 | $105,490.50 |
| Praestholm, Amanda | Associate | Litigation | 2017 | N/A | $650.00 | 21.10 | $13,715.00 |
| Tandy, Lewis | Associate | Litigation | 2018 | $510.00 | $535.00 | 79.50 | $42,215.00 |
| Collins, Russell | Staff Attorney | Practice Attorney | 1998 | $455.00 | $475.00 | 516.90 | $241,247.50 |
| Young, Melodie | Staff Attorney | Practice Attorney | 2003 | $415.00 | $435.00 | 87.00 | $37,183.00 |
| Krasa-Berstell, Dagmara | Legal Assistant | Financial Restructuring | N/A | $395.00 | N/A | 12.90 | $5,095.50 |
| Levy, Sophia D. | Legal Assistant | Financial Restructuring | N/A | $235.00 | $245.00 | 34.90 | $8,306.50 |
| Csizmadia, Suzanne | Legal Assistant | Intellectual Property | N/A | N/A | $330.00 | 54.90 | $18,117.00 |
| Walls, Bennett | Legal Assistant | Litigation | N/A | $205.00 | $215.00 | 68.70 | $14,530.50 |
| Ginsborg, Michael | Specialist | Research | N/A | $265.00 | N/A | 9.70 | $2,570.50 |

**EXHIBIT D**

**SUMMARY OF COMPENSATION BY TASK CODE AGAINST BUDGETED HOURS
AND FEES**

| Task Code | Task Code Category | Hours Budgeted (Low – High) | Amount Budgeted (Low – High) | Actual Hours | Actual Amount |
|---|---|---|---|---|---|
| 2 | General Case Administration | 25 – 35 | $11,500.00 – $14,200.00 | 26.10 | $12,035.50 |
| 3 | Akin Gump Fee Application/Monthly Billing Reports | 150 – 250 | $100,000.00 – $200,000.00 | 198.80 | $136,384.00 |
| 4 | Analysis of Other Professionals' Fee Applications/Reports | 5 – 10 | $4,200.00 – $8,300.00 | 6.10 | $4,261.50 |
| 5 | Review/Preparation of Schedules, Statements | 0 – 5 | $0.00 – $7,000.00 | -- | -- |
| 6 | Retention of Professionals | 0 – 5 | $0.00 – $7,000.00 | 0.40 | $450.00 |
| 7 | Creditor Committee matters/Meetings (including 341 meetings) | 30 – 40 | $35,000.00 – $50,000.00 | 21.50 | $18,803.50 |
| 8 | Court Hearings | 50 – 150 | $60,800.00 – $120,100.00 | 52.80 | $52,021.50 |
| 9 | Financial Reports and Analysis | 5 – 10 | $4,500.00 – $9,000.00 | 4.80 | $3,648.00 |
| 10 | DIP, Cash Collateral Usage and Exit Financing | 0 – 5 | $0.00 – $7,000.00 | -- | -- |
| 11 | Executory Contracts/Lease Issues | 10 – 20 | $10,400.00 – $21,800.00 | 0.70 | $595.00 |
| 12 | General Claims Analysis/Claims Objections | 150 – 250 | $150,000.00 – $250,000.00 | 170.10 | $168,616.00 |
| 13 | Analysis of Pre-Petition Transactions | -- | -- | -- | -- |
| 14 | Insurance Issues | 10 – 30 | $16,000.00 – $29,500.00 | 12.30 | $12,947.00 |
| 15 | Secured Creditors Issues /Communications/ Meetings | 80 – 120 | $70,000.00 – $110,600.00 | 94.70 | $82,152.00 |
| 16 | Automatic Stay Issues | 5 – 10 | $4,500.00 – $9,000.00 | 1.20 | $1,470.00 |
| 17 | General Litigation Matters/Adversary Proceedings | 15 – 30 | $12,200.00 – $23,300.00 | 23.30 | $24,763.00 |
| 18 | Tax Issues | 0 – 5 | $0.00 – $7,000.00 | -- | -- |
| 19 | Labor Issues/Employee Benefits | 0 – 5 | $0.00 – $7,000.00 | 1.40 | $1,210.00 |
| 20 | Jointly Asserted Causes of Action | 3,500 – 4,500 | $2,500,000.00 – $3,500,000.00 | 4,305.50 | $3,279,931.00 |
| 21 | Exclusivity | 0 – 5 | $0.00 – $7,000.00 | -- | -- |

| Task Code | Task Code Category | Hours Budgeted (Low − High) | Amount Budgeted (Low − High) | Actual Hours | Actual Amount |
|---|---|---|---|---|---|
| 22 | Disclosure Statement/ Solicitation/Plan/ Confirmation | 250 − 350 | $225,000.00 − $350,000.00 | 291.40 | $278,200.50 |
| 23 | Asset Dispositions/363 Asset Sales | 100 − 150 | $100,000.00 − $145,200.00 | 123.70 | $119,726.00 |
| 24 | Real Estate Issues | 5 − 10 | $6,000.00 − $10,500.00 | 9.30 | $10,865.00 |
| 25 | Travel Time | 40 − 50 | $40,700.00 − $50,900.00 | 7.20 | $9,033.00 |
| 28 | General Corporate Matters | 10 − 20 | $8,300.00 − $16,500.00 | − | − |
| 29 | Intercompany Claims/ Intercompany Transactions/Cash Management | 5 − 10 | $7,200.00 − $14,400.00 | − | − |
| 30 | Customer, Supplier, and Vendor Issues (including Critical Vendor issues) | 10 − 20 | $8,300.00 − $16,500.00 | − | − |
| 31 | Business Operations | 10 − 20 | $8,300.00 − $16,500.00 | − | − |
| **TOTAL** | | **4,585 − 6,170** | **$3,804,500.00 − $5,246,400.00** | **5,351.30** | **$4,217,112.50** |

## **EXHIBIT E**

**SUMMARY OF EXPENSES BY CATEGORY**

| Disbursement Activity[1] | Amount |
|---|---|
| Computerized Legal Research - Lexis - in contract 30% discount | $7,812.07 |
| Computerized Legal Research - Westlaw - in contract 30% discount | $27,745.36 |
| Computerized Legal Research – Westlaw – out of contract | $108.73 |
| Computerized Legal Research - Courtlink- in contract 50% discount | $851.30 |
| Computerized Legal Research - Other | $1,031.25 |
| Color Copy | $279.00 |
| Contract Labor - Attorney | $70,024.39 |
| Courier Service/Messenger Service - Off Site | $127.19 |
| Document Retrieval | $1,355.00 |
| Duplication - In House | $4,015.70 |
| Duplication - Off Site | $1,282.18 |
| Filing Fees | $800.00 |
| Imaging/Computerized Litigation Support | $81,563.00 |
| Meals - Overtime | $142.67 |
| Meals - Business | $467.70 |
| Meals (100%) | $3,148.97 |
| Miscellaneous | $727.89 |
| Overtime - Admin Staff | $857.64 |
| Postage | $39.10 |
| Professional Fees - Consultant Fees | $1,083,747.32 |

---

[1] The expenses incurred during the Compensation Period include, among other things: (i) $1,032,510.21 of expenses relating to the payment of consulting fees and expenses incurred by Solomon Page Group LLC, a staffing provider retained in connection with the Adversary Proceeding; (ii) $170,581.05 of expenses relating to the payment of professional fees and expenses incurred by Akin Gump's document management and e-discovery provider, H5; and (iii) $121,261.50 of expenses relating to the compensation of expert witnesses retained in connection with the Adversary Proceeding.

| Disbursement Activity[1] | Amount |
|---|---|
| Professional Fees - Misc. | $105,418.75 |
| Professional Fees - Process Server | $26,853.95 |
| Research | $1,344.70 |
| Telephone - Long Distance | $307.00 |
| Transcripts | $613.20 |
| Travel - Airfare | $40.00 |
| Travel - Ground Transportation | $1,111.26 |
| Travel - Lodging (Hotel, Apt, Other) | $1,123.29 |
| Local Transportation - Overtime | $1,697.11 |
| **Total** | **$1,424,635.72** |

## **EXHIBIT F**

**STAFFING PLAN**

| Category of Timekeeper | Number of Timekeepers Expected to Work on Matter During the Compensation Period | Average Hourly Rate |
|---|---|---|
| Partner | 10 | $1,356.36 |
| Senior Counsel and Counsel | 10 | $1,048.75 |
| Associate | 20 | $714.38 |
| Paralegals & Non-Legal Staff | 5 | $298.00 |