# EXHIBIT A

EXECUTED ESCROW AGREEMENT

94-3402

## ESCROW AGREEMENT

THIS ESCROW AGREEMENT (the "Escrow Agreement") is made as of this 20Th day of December, 1994, by and between SEARS LOGISTICS SERVICES, INC., a Delaware corporation (f/k/a SLS, Inc.)("Seller"), WILLIAM D. STAFFIERI, or nominee ("Buyer"), and CONGRESS ABSTRACT CORPORATION, a corporation ("Escrow Agent") with reference to the following facts:

A. Seller and Buyer entered into that certain Agreement for Purchase and Sale of Property dated as of May 31, 1994, amended by First Amendment dated August 5, 1994, by Second Amendment dated October 10, 1994, and by Third Amendment dated October 21, 1994, and modified by letter agreement dated October 31, 1994 (collectively, the "Agreement") for a parcel of real property known as 3820 N. 2nd Street, Philadelphia, PA (the "Real Property"); and

B. A portion of the Real Property (excluding the Northeast Parking Parcel) has been contaminated as described in the Site Characterization Report dated September 22, 1994 prepared by Seller's consultant, Resource Control Corporation ("Seller's Contamination"); and

C. Seller has agreed with Buyer that Seller shall, at Seller's sole cost and expense, ensure the removal or remediation of the Seller's Contamination and that, to secure such agreement, Seller will escrow at the closing of the sale and conveyance of the Real Property, the sum of Two Hundred Thirty-Four Thousand and 00/100 Dollars ($234,000.00) (representing the amount of Seller's estimated project budget, reflected in Exhibit "A" hereto) with Escrow Agent, said sum to be utilized in the remediation of the Seller's Contamination; and

D. The parties desire to enter into this Escrow Agreement for the purpose of creating the escrow required under the Agreement and for the further purpose of providing certain protections to Escrow Agent, in accordance with the provisions hereof.

IN CONSIDERATION of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, each intending to be legally bound, hereby covenant and agree as follows:

1. Seller has, simultaneously with the execution of this Escrow Agreement, delivered to Escrow Agent the sum of Two

STAFFESC.SAM

Hundred Thirty-Four Thousand and 00/100 Dollars ($234,000.00) (hereinafter referred to as the "Escrow Deposit"). Escrow Agent, by its execution hereof, acknowledges receipt of the Escrow Deposit, which Escrow Deposit shall be invested by Escrow Agent in an insured investment account or certificate of deposit reasonably acceptable to Seller (taking into consideration the need for liquidity and disbursements pursuant to the provisions hereinafter set forth). Interest earned on the Escrow Deposit shall remain in escrow, to be held and utilized in accordance with the provisions hereof, and shall be delivered to Seller upon termination of the escrow, subject, however, to the utilization thereof in connection with remediation as hereinafter set forth. The Federal ID No. of Seller is 36-1857180.

2.  Portions of the Escrow Deposit shall, subject to the provisions hereof, be released to Seller, as follows:

    (a)  Following the completion of additional investigation and remedial testing, Seller will cause to be developed and will obtain approval by the Pennsylvania Department of Environmental Resources ("PADER") of a complete remedial action plan. Upon approval of a complete remedial action plan, Escrow Agent shall release to Seller that portion of the Escrow Deposit spent by Seller to date in such investigation, remedial testing, and plan preparation, the amount of said release not to exceed $80,000.00 or 34.35% of the total Escrow Deposit. Escrow Agent shall not be required to confirm such expenditures by Seller or plan approval by PADER, but Escrow Agent shall be entitled to rely upon a certification of Seller to that effect.

    (b)  Three (3) months subsequent to the date of PADER approval of a remedial action plan, and provided that Seller has substantially completed the implementation of the approved remedial action plan by excavating and removing soil, installing the recovery system, installing equipment, and completing start-up and shake-down procedures, Escrow Agent shall release to Seller that portion of the Escrow Deposit which is equal to the costs of such implementation and associated equipment detailed in the approved plan and spent by Seller to date, the amount of said release not to exceed $105,000.00 or 45.15% of the total Escrow Deposit. Escrow Agent shall not be required to confirm the cost either of the implementation or of the equipment, but Escrow Agent shall be entitled to rely upon a certification of Seller to that effect.

    (c)  One (1) year subsequent to the date Seller has completed implementation of the approved remedial action plan, Seller shall be entitled to an additional disbursement by Escrow Agent in an amount equal to the remediation costs spent by Seller since the disbursement pursuant to Subsection 2(b) above, the

STAFFESC.SAM                            2

amount of said disbursement not to exceed $40,000.00 or 17.16% of the total Escrow Deposit. Again, Escrow Agent shall be entitled to rely on a certification by Seller with respect to the amount of the Escrow Deposit to be so disbursed.

(d) Upon delivery by Seller to Escrow Agent and to Buyer of a letter from PADER concerning Seller's Contamination permitting Seller to deactivate the operation of any active remediation systems in place and to switch to passive monitoring only, Escrow Agent shall deliver to Seller such portion of the Escrow Deposit, together with all interest accrued on any thereof, then held by Escrow Agent.

3. (a) In the event that Seller, after receiving thirty (30) days prior written notice from Buyer, does not diligently pursue remediation of Seller's Contamination, then, and in such event, Buyer shall be entitled to deliver to Seller and Escrow Agent written notification that Buyer has decided to take over remediation of the Seller's Contamination in accordance with the approved remedial action. Seller shall provide to Escrow Agent and Buyer written acknowledgment of and agreement with Buyer's take-over of the remediation, and shall authorize Escrow Agent to act in accordance with Subsection 3(c) below. Provided, however, that delays in obtaining responses from or approvals by PADER, and delays caused by inclement weather or temporary unavailability of services, labor or material shall not be deemed to be a lack of diligence on the part of Seller.

(b) In such event, Buyer shall be entitled, either through utilization of the contractor then performing the remediation work on behalf of Seller, or through utilization of another contractor chosen by Buyer, which substitute contractor shall be subject to the prior written consent, not to be unreasonably withheld or delayed, of Seller, to pursue the remediation of the Seller's Contamination to completion.

(c) In the event that Buyer does so take over the remediation of the Seller's Contamination then Buyer shall be entitled, on a monthly basis, to deliver to Escrow Agent certifications regarding its reasonable costs and expenses in connection therewith and Escrow Agent shall disburse to Buyer, out of the Escrow Deposit, monies to reimburse Buyer for such costs and expenses. Provided, however, that nothing contained herein is intended, or shall be construed, as an assumption by Buyer of any financial or other obligations with respect to the Seller's Contamination; and, with respect to the Seller's Contamination, the respective obligations and liabilities of Seller and Buyer shall continue as set forth in the Agreement. The provisions of this Section 3 relate solely to making the Escrow Deposit, or such portion thereof as is then remaining, available to Buyer for remediation of the Seller's Contamination.

4.  (a) With respect to the certifications to be provided on behalf of Seller pursuant to Section 2 hereof, to the notice and certifications to be given by Buyer pursuant to Section 3 hereof, and with respect to all other notices, certifications, demands or requests required or permitted by this Escrow Agreement, all such certifications, notices or other communications shall be in writing and shall be delivered to the other parties hereto at the addresses set forth hereinbelow. In the event that any such certification, notice or communication is not agreed to, in writing, or executed by both Seller and Buyer, Escrow Agent shall give to Seller or Buyer, as the case may be, copies of any certification, notice or communication received from the other and shall not take any actions with regard thereto until at least five (5) business days following the receipt by such other party of such copy.

(b) In the event of any dispute between Seller and Buyer with respect to any certification, notice or direction (specifically including, but not limited to, any indication by Buyer that it does not agree with the requested disbursements set forth in Section 2 hereof), Escrow Agent shall not make such disbursement or follow such direction and, in the event of any disputes sufficient in the discretion of Escrow Agent to justify its doing so, Escrow Agent shall be entitled to tender to the registry or custody of any court of competent jurisdiction the Escrow Deposit, or such portion thereof as is then remaining, in its hands under the terms of this Escrow Agreement, together with such legal proceedings as it deems appropriate, and thereupon be discharged from all further duties under this Escrow Agreement.

5.  Escrow Agent shall not, in connection with its duties as escrow agent hereunder:

(a) Be liable for any loss caused by the failure, suspension, bankruptcy or dissolution of the depository institution into which the Escrow Deposit is placed;

(b) Be liable for loss or damage resulting from:

  (i) any good faith act or forbearance of Escrow Agent;

  (ii) any default, error, action or omission of any party other than Escrow Agent;

  (iii) the expiration of any time limit or other delay which is not solely caused by the failure of Escrow Agent to proceed in its ordinary course of business; and in no event where such time limit is not disclosed in writing to the Escrow Agent;

(iv) the lack of authenticity of any writing delivered to Escrow Agent or of any signature thereto, or the lack of authority of the signatory to sign such writing;

(v) Escrow Agent's compliance with all attachments, writs, orders, judgments, or other legal process issued out of any court;

(vi) Escrow Agent's assertion or failure to assert any cause of action or defense in any judicial or administrative proceeding; or

(vii) any loss or damage which arises after the Escrow Deposit has been disbursed in accordance with the terms of this Agreement.

6. (a) Escrow Agent shall be fully indemnified by the parties hereto for all its expenses, costs, and reasonable attorney's fees incurred in connection with any interpleader action which Escrow Agent may file, in its sole discretion, to resolve any dispute between Seller and Buyer; or which may by filed against the Escrow Agent, as escrow agent, not as issuer of title insurance.

(b) If Escrow Agent, as escrow agent, not as issuer of title insurance, is made a party to any judicial, non-judicial or administrative action, hearing or process based on acts of any of the other parties hereto and not on the malfeasance and/or negligence of Escrow Agent in performing its duties hereunder, the expenses, costs, and reasonable attorneys' fees incurred by Escrow Agent in responding to such action, hearing or process may be deducted from the funds held hereunder and the party/parties whose alleged acts are a basis for such proceedings shall indemnify, save and hold Escrow Agent harmless from said expenses, costs and fees so incurred.

7. Any notice required or permitted to be given hereunder shall be in writing and either personally delivered, sent by facsimile transmission, sent by U.S. Certified Mail, return receipt requested, postage prepaid, or sent by Federal Express, or any similar service, to the party being given such notice at the following addresses:

Seller:    Sears Logistics Services, Inc.
           3333 Beverly Road, Building A3
           Hoffman Estates, IL    60179
           Attn: Vice President
                 Planning and Operations Services

STAFFESC.SAM                5

```
with a copy to:       Sears Logistics Services, Inc.
                      3333 Beverly Road, Building A3
                      Hoffman Estates, IL   60179
                      Attn: General Counsel


Buyer:                William D. Staffieri
                      4219 Richmond Street
                      Philadelphia, PA   19137


with a copy to:       Jeffrey R. Abbott, Esq.
                      25 West 3rd Street
                      Media, PA   19063

Escrow Agent:         Congress Abstract Corporation
                      230 South Broad St.
                      8th floor
                      Philadelphia, Pa. 19102
                      Attn: John J. Byers


with a copy to:       _____
                      _____
                      _____
                      _____
                      _____
```

   8.   (a)  This Escrow Agreement, together with the Agreement and a License dated of even date herewith by and between Seller and Buyer, constitutes the entire agreement between the parties hereto and it is understood and agreed that all undertakings and agreements heretofore and between these parties are merged herein and superseded hereby.  No representation, promise or inducement not included herein shall be binding upon any party hereto.

        (b)  This Agreement may not be changed orally, but only by an agreement in writing signed by the parties hereto.

        (c)  The provisions of this Escrow Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective heirs, successors and assigns and the legal representatives of their estates, as the case may apply.

(d) Time is of the essence of this Escrow Agreement.

(e) In the event either party is required to enforce the provisions of this Escrow Agreement, such party, if it prevails, shall be entitled to receive from the other party all costs and expenses, including, without limitation, reasonable attorneys' fees incurred, at trial and on appeal, in connection with such enforcement.

(f) If the time period by which any right, option or election provided under this Escrow Agreement must be exercised, or by which any act required hereunder must be performed, expires on a Saturday, Sunday or legal holiday, then such time period shall be automatically extended through the close of business on the next regular business day. For the purposes hereof, a "business day" shall be deemed to be any day that is not a Saturday, Sunday or legal holiday.

(g) This Escrow Agreement may be executed in counterparts, all of which counterparts taken together shall be deemed to be but one original.

IN WITNESS WHEREOF, the parties hereto have executed this Escrow Agreement as of the date first above written.

WITNESS:

By: _Phillip E. Bovdchick_

SELLER:

SEARS LOGISTICS SERVICES, INC.

By: _James E. Comerford_
James E. Comerford
President and
   Chief Executive Officer

WITNESS:

By: _Jeff R. Abbott_

BUYER:

By: _William D. Staffieri_
WILLIAM D. STAFFIERI

STAFFESC.SAM                                   7

| | |
|---|---|
| WITNESS:<br>By: _T. E. Turco_____ | ESCROW AGENT:<br><br>CONGRESS ABSTRACT CORPORATION<br><br>By: _John J. Byers_____<br>Name: _JOHN J. BYERS_____<br>Title: _Vice President_____ |