WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
**In re**                                              :     **Chapter 11**
:
**SEARS HOLDINGS CORPORATION**, *et al.*,              :     **Case No. 18-23538 (RDD)**
:
Debtors.¹                                              :     **(Jointly Administered)**
:
------------------------------------------------------------x

**DEBTORS' OMNIBUS REPLY IN SUPPORT OF**
**DEBTORS' SECOND OMNIBUS OBJECTION TO PROOFS OF CLAIM**
**(RECLASSIFICATION AS GENERAL UNSECURED CLAIMS)**

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in reply to six responses (each a "**Response,**" and collectively, the "**Responses**") filed by certain claimants (collectively, the "**Claimants**")[2] to the *Debtors' Second Omnibus Objection to Proofs of Claim (Reclassification as General Unsecured Claims)* (ECF No. 4776) (the "**Objection**").[3]

## Reply

**I.    The Debtors did not "receive" any goods from the Claimants, under any definition of the word.**

1. The Objection seeks to reclassify as general unsecured claims the claims asserted by Claimants seeking priority treatment. The basis for the Objection to each claim is that the claim does not relate to goods received "by the Debtors."

2. Nothing in the Responses contradicts the factual basis for the Objection. Claimants sold their goods on a website (the "**Sears Marketplace**") through which Claimants and many others (collectively, the "**Marketplace Vendors**") could market their goods

---

[2] *See* (i) *Claimant's Response to Omnibus Objection* filed by Georgia Watersports, LLC ("**Georgia Watersports**") (ECF No. 4814) (the "**Georgia Watersports Response**"); (ii) *Response of VM Innovations, Inc. In Opposition to Debtors' Second Omnibus Objection to Proofs of Claim* filed by VM Innovations, Inc. ("**VM Innovation**") (ECF No. 4986) (the "**VM Innovations Response**"); (iii) *Claimants Objection to Claim Reclassification* filed by Shopchimney.com Inc. ("**Shopchimney**") (ECF No. 5003) (the "**Shopchimney Response**"); (iv) *Joint Response of VIR Ventures, Inc. and AMI Ventures, Inc. In Opposition to Debtors' Second Omnibus Objection to Proofs of Claims* filed by VIR Ventures, Inc. and AMI Ventures, Inc. ("**VIR/AMI**") (ECF No. 5056) (the "**VIR/AMI Response**"); (v) *Response of Sky Billiards, Inc. d/b/a Best Choice Products in Opposition to Debtors' Second Omnibus Objection to Proofs of Claim* filed by Ski Billiards, Inc. d/b/a Best Choice Products ("**Sky Billiards**") (ECF No. 5421) (the "**Sky Billiards Response**"); (vi) *Response by Stolaas Company in Opposition to Debtors' Second Omnibus Objection to Proofs of Claim* filed by Stolaas Company d/b/a Tic-Tok a/k/a CompGeek ("**Stolaas**") (ECF No. 5524) (the "**Stolaas Response**").

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Objection.

2

(the "**Marketplace Goods**") for sale directly to customers. Pursuant to the form agreement entered into between Debtors and all Marketplace Vendors (the "**Agreement**"), Marketplace Vendors were responsible for their own goods and sales efforts, setting their own prices, obtaining their own licenses and permits, and, importantly, all aspects of shipping their own merchandise to their customers. *See* Agreement § II(B), (B)(1), (B)(3), (C), (C)(1); *accord* VIR/AMI Response, ¶ 34 n.4 (The [Agreement] provides: "Seller is responsible for all aspects of shipping, including providing adequate packaging, tagging labeling and packaging of the Merchandise in compliance with the Seller Specifications and Applicable Law."); *see also* Georgia Watersport Response, ¶ 1; Shopchimney Response, ¶ 2. Title to, risk of loss, and delivery errors for the Marketplace Goods remained with the Marketplace Vendors until it was delivered directly to customers. *See* Agreement § II(C)(1), (3). The Debtors did not have title to and were not deemed the legal owner of any goods sold by Marketplace Vendors on the Sears Marketplace. *See id.* ("title to and risk of loss of and/or damage to the [Marketplace Goods] will remain with Seller until delivery to the [customer]. Sears will not have title to, or deemed the legal owner of, any [Marketplace Goods] at any time under the terms of this Agreement."); *accord* VIR/AMI Response ¶ 36. The Debtors did not purchase goods from the Marketplace Vendors; non-debtor customers would place orders for the Marketplace Goods directly on the Sears Marketplace. Goods were not delivered to the Debtors and were never received by the Debtors in the shipping process.

   3. Nothing in the Responses provides factual or legal support to overrule the Objection. The instant facts are highly similar to those in the case of *In re ADI Liquidation, Inc.*, 572 B.R. 543, 550 (Bankr. D. Del. 2017) (hereinafter "*ADI*"). In *ADI*, the debtor "AWI" was a cooperative food distributor that provided distribution and retail services to member retailers, the "AWI Members." *Id.* at 545. AWI Members, not AWI, would order goods directly from

3

manufacturers through the cooperative food distribution system of AWI, and then pay AWI for the purchase price. *Id.* The manufacturer shipped goods directly to the AWI Members, and then AWI remitted payment to the manufacturers, less a percentage. *Id.* Under this format, which is highly similar to that of the Sears Marketplace, the court denied administrative priority status for a manufacturer asserting a 503(b)(9) claim against AWI. *See id.* at 550.[4]

4. Under any conceivable interpretation of the term "received," the Debtors have not received the Marketplace Goods from the Marketplace Vendors, as the Debtors never purchased or received, constructively[5] or physically, the Marketplace Goods delivered by the Marketplace Vendors.

5. Without any case law to cite to, the Responses raise a variety of creative, but incorrect, arguments in an attempt to show constructive possession of the goods sold and delivered by Marketplace Vendors to the non-Debtor customers.

6. The Shopchimney Response and VM Innovations Response allege these Claimants are entitled to priority status simply because the Debtors' reporting of the revenue for the sale of goods on the Sears Marketplace in their top-line balances allegedly shows some sort of "implicit" possession of the goods, and that the Debtors' holding back portions of payments by

---

[4] The court noted that the facts involved in that case were comparable to certain "drop ship" transactions, which a well-established line of cases, including in the Second Circuit, have found do not qualify for priority under section 503(b)(9). See In re OW Bunker Holding North America Inc., 607 B.R. 32, 43-44 (Bankr. D. Conn. 2019); In re SRC Liquidation, LLC, 573 B.R. 537, 542 (Bankr. D. Del. 2017); In re Momenta, Inc., 455 B.R. 353, 364-65 (Bankr. D. N.H. 2011). In each of these cases, in which goods were purchased by a debtor from a vendor and delivered directly from the vendor to a third party, the courts found that a lack of physical or constructive possession by the debtors or their agents disqualified claims for administrative expense priority against the debtors. The court in ADI Liquidation observed that the AWI arrangement "more strongly supports denial of an administrative priority claim under section 503(b)(9)" than drop ship scenarios in which a debtor purchased goods from the vendor. In re ADI Liquidation, Inc., 572 B.R. at 550.

[5] Constructive possession is defined by courts as either an agent or bailee of the debtor taking physical possession of the goods. *See In re O.W. Bunker Holdings North America Inc.*, 607 B.R. at 43-44; *In re ADI Liquidation, Inc.*, 572 B.R. at 549; *In re SRC Liquidation, LLC*, 573 B.R. at 541.

customers to pay sales tax somehow constitutes possession of the goods sold "for the purpose of tax collection." *See* Shopchimney Response, ¶¶ 6-7; *see also* VM Innovations Response ¶ 6. Neither Claimant has provided any case law to support this novel theory of receipt by the Debtors, and the Debtors have found no such authority which stands for the proposition that balance sheet or income statement reporting of cash income or payment of sales taxes qualifies as receipt of goods, constructive or otherwise, for purposes of 503(b)(9). This argument does not create possession of goods, and is insufficient to show that the Debtors received goods for 503(b)(9) purposes.

7. Georgia Watersport's Response asserts, without citation, the proposition that customers should be considered the Debtors. *See* Georgia Watersports Response, ¶ 1(a). Claimants offer no basis whatsoever to find that the Claimant's customers are the Debtors' agents or bailees. In *In re ADI Liquidation, Inc.*, where the debtor did purchase goods from the vendor, it was "undisputed" that the customers of the debtor were not bailees for purposes of establishing constructive possession. 572 B.R. 549 (Bankr. D. Del. 2017).

8. Finally, VIR/AMI and VM Innovations allege in their Responses that by nature of controlling the online marketplace that forwards the customer's shipping information to Marketplace Vendors, the Debtors somehow had constructive possession of the goods that the Marketplace Vendors shipped. VIR/AMI Response, ¶¶ 33-34; VM Innovations Reply, ¶ 6. This allegation ignores the definition of constructive possession established in case law, and is directly analogous to the arguments rejected by the court in *In re ADI Liquidation, Inc. See In Re ADI Liquidations, Inc.*, 572 B.R. at 549 (rejecting the notion that a debtor who was highly integrated in the process and controlled most aspects of the day-to-day business transactions between vendors and customers constructively possessed goods for 503(b)(9) administrative claims).

**II.     Ancillary Arguments Raised by Claimants in their Responses Should be Summarily Rejected**

9.      Perhaps recognizing the weakness of their defense to the Objection, several Claimants raised a variety of ancillary arguments in their Responses that are insufficient to establish entitlement to statutory priority for a claim, inapplicable to the Objection, and require affirmative relief in adversary proceedings. The Debtors address these remaining arguments below.

*A. VM Innovations' Incorrect Procedural Argument*

10.     VM Innovations alleges that the Objection was filed prematurely as the Debtors failed to negotiate with VM Innovations prior to filing the Objection. It contends that the *Order (I) Establishing Deadline to File Proofs of Claim and Procedures Relating Thereto, (II) Approving the Form and Manner of Notice Thereof, (III) Approving Procedures for the Resolution of Claims Asserted Pursuant to 11 U.S.C. § 503(b)(9), and (IV) Prohibiting Vendors From Pursuing Such Claims Outside the Procedures* (ECF No. 2676) (the "**Claims Procedure Order**") allegedly creates a mandatory negotiation period with non-503(b)(9) claimants that Debtors did not follow. *See* VM Innovations Response, ¶¶ 9-10. First, Debtors disagree with the interpretation and applicability of the Claims Procedure Order as VM Innovations alleges. More importantly, however, the Court should not grant priority status to a claim that does not meet the statutory requirements. *See, e.g.*, *Howard Delivery Serv. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 667, 669 (2006) (noting the longstanding principle that administrative claims "must be tightly construed" to accomplish the Bankruptcy Code's objective of equal distribution to creditors); *In re Bayou Grp., LLC*, 431 B.R. 549, 558 (Bankr. S.D.N.Y. 2010) (emphasizing "the general rule that priorities must be narrowly construed in light of the presumption in bankruptcy cases that the debtor's limited resources will be equally distributed among all unsecured creditors"); *In re A.C.E.*

6

*Elevator Co., Inc.*, 347 B.R. 473, 479 (Bankr. S.D.N.Y. 2006) ("Because the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, statutory priorities are narrowly construed.") (quoting *Tr. of Amalgamated Ins. Fund v. McFarlin's Inc.*, 789 F.2d 98, 100 (2d Cir. 1986)). Even assuming, *arguendo*, that the Claims Procedure Order would apply to 503(b)(9) claims as described by VM Innovations, the Debtors are not seeking an agreement regarding a 503(b)(9) claim. Rather, as shown in the Objection and this Response, VM Innovations does not possess a 503(b)(9) claim to reconcile. As such, the Claims Procedure Order is inapplicable.

### B. Sky Billiards's Flawed Estoppel Argument

11. Sky Billiards asserts that the Debtors are somehow estopped from objecting to its claim due to a postpetition email sent by an account representative of Debtors. *See* Sky Billiards Response, ¶¶ 2-3. As the Court knows, however, "[a]n estoppel arises when one party has made a misleading representation to another party and the other has reasonably relied to his [or her] detriment on that representation. *Power Five, Inc. v. General Motors Corp.*, 219 B.R. 513, 519 (Bankr. S.D. Ind. 1998). "Generally, four elements must be present in order to establish the defense of equitable estoppel: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the conduct to his injury." *In re Heritage Hotel P'ship I*, 160 B.R. 374, 378 (B.A.P. 9th Cir. 1993), *aff'd*, 59 F.3d 175 (9th Cir. 1995) (citing cases); *see also In re Am.'s Hobby Ctr., Inc.*, 223 B.R. 275, 284-85 (Bankr. S.D.N.Y. 1998). "The misrepresentation must be one of fact, and an opinion or misrepresentation of law will not suffice." *In re Zarro*, 268 B.R. 715, 722 (Bankr. S.D.N.Y. 2001) (citing *Lignos v. United States,* 439 F.2d 1365, 1368 (2d Cir.1971); *In re*

*Chateaugay Corp.,* 156 B.R. 391, 403 n. 16 (S.D.N.Y.), *aff'd,* 10 F.3d 944 (2d Cir.1993)). "The burden of proof is on the party claiming estoppel." *See, e.g.*, *United States v. Asmar*, 827 F.2d 907, 912 (3d Cir. 1987).

12. Here, Sky Billiards has failed to make out a claim of equitable estoppel. First, the statement by the account executive of Debtors directing Sky Billiards to assert a 503(b)(9) priority claim was an opinion or misrepresentation of law, not fact. As Sky Billiards does not assert any misrepresentation of *fact*, Debtors should not be estopped from objecting to Sky Billiards' claim. *See Zarro*, 268 B.R. at 722.

13. Second, Sky Billiards did not lack the knowledge or the means of obtaining the knowledge in regards to the legal issue, not fact, of what priority to which their claim was entitled. *See Loyola Univ. of Chicago v. Humana Ins. Co.*, 996 F.2d 895, 902 (7th Cir. 1993) ("The party asserting estoppel must show that. . . "[it] had no knowledge or convenient means of ascertaining the true facts which would have prompted [it] to react otherwise.") (quoting *De Graw v. State Security Ins. Co.,* 40 Ill.App.3d 26, 34, 351 N.E.2d 302, 309 (1st Dist.1976)). Sky Billiards had better knowledge of its claim than the Debtors did and it could have sought advice from counsel at any time, as evidenced by the fact that it did seek counsel before timely filing its Response. Clearly, it had convenient means to determine for itself how to file its claims here.

14. Third, and most critically, Sky Billiards has suffered no prejudice. *See Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.,* 467 U.S. 51, 59 (1984) ("[T]he party claiming the estoppel must have relied on its adversary's conduct 'in such a manner as to change his position for the worse'"). Sky Billiards has not, and cannot, allege prejudice. It was not entitled to a 503(b)(9) priority claim by means of the undisputed facts surrounding their sale and delivery of goods to non-Debtor customers. A post-bankruptcy email sent after the Claimant delivered

8

WEIL:\97380289\11\73217.0004

goods to customers – not before – could not have induced reliance and does not entitle Sky Billiards' claim to administrative expense status. By objecting to the asserted status of Sky Billiards' claim, the Debtors are not taking from Sky Billiards anything to which it was entitled. *See Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 61 (1984) (plaintiff's equitable estoppel claim failed where its detriment was to lose a benefit to which the plaintiff was not legally entitled); *2284 Corp. v. Shiffrin*, 98 F. Supp. 2d 244, 249 (D. Conn. 2000) ("in this case, the plaintiffs have not lost a legal right. As in *Heckler,* the plaintiffs' detriment here is the inability to retain a benefit that they never should have had in the first place."); *see also United States v. Asmar*, 827 F.2d 907, 915 (3d Cir. 1987) ("we cannot accept that the fact that [the party asserting estoppel] has suffered *any* demonstrable detriment," as "[a]ny benefit she received from the IRS agents' promise not to proceed against her for execution of the judgment is not one to which she was or is legally entitled"). Sky Billiards has failed to make out their claim for equitable estoppel and it should be denied.

### C. The Remaining Arguments Should Be Denied

15. Several Responses raise arguments that have no bearing on a determination of the asserted claims' priority status under 503(b)(9) and, therefore on the Objection. The Debtors request that the Court deny the Responses to the extent they seek affirmative relief not properly sought in response to a claims objection. Alternatively, should the Court find reason to entertain any of the allegations alleged here, the Debtors request that the Court deny them for the substantive reasons set forth below. To the extent that the Responses and Objection need to be bifurcated, the Debtors request that this Court reach a decision on the common issue amongst all Responses of whether Debtors received the goods sold on the Sears Marketplace for purposes of establishing 503(b)(9) administrative expense priority, and reserve any remaining arguments for determination

at a later date. *See In re New Century TRS Holdings, Inc.*, 465 B.R. 38, 43 (Bankr. D. Del. 2012) (issuing scheduling order to first address the issues raised by debtor's claims objection but "not the underlying merits of such claims, which, if required, will be addressed at a separate hearing to be scheduled by the Court").

        i. The Court has already ruled that the Agreement did not establish a constructive trust.

16. Several claimants, including VIR/AMI, whom the Court previously addressed, contend in their Responses that Sears was an agent obligated to set aside monies received in a constructive trust. *See* VIR/AMI Response, ¶¶ 35-38. Consistent with Debtors' current position that this argument does not go to the merits of Debtors' Objection, but rather raises a separate affirmative cause of action for equitable relief and turnover of funds, VIR/AMI subsequently launched an adversary proceeding. *See VIR Ventures, Inc. v. Sears Holdings Corporation, et. al.*, Adv. Prov. No. 19-08700 (Bankr. S.D.N.Y. Nov. 12, 2019). In their complaint, VIR/AMI alleged both a breach of express trust and the imposition of a constructive trust. *See* ECF No. 5991.

17. On March 25, 2020, this Court granted Debtors' motion to dismiss VIR/AMI's adversary claims. *See VIR Ventures, Inc. v. Sears Holdings Corporation, et. al.*, Adv. Prov. No. 19-08700 (RDD), Hr'g. Tr. at 60:8-10 (Bankr. S.D.N.Y. Mar. 25, 2020). In making that determination, the Court noted that the relationship between Debtors and VIR/AMI is set forth in the Agreement, which is governed by Illinois law. *Id.* at 43:24-44:10. The Court held that, under Illinois law, the Agreement did not establish an express trust. *Id.* at 48:3-4. The Court also held that there was no basis under the facts or applicable law for the imposition of a constructive trust. *Id.* at 51:1-59:5. As this Court has already issued a holding as to VIR/AMI's trust claims, the arguments raised in their Response should be dismissed.

18. VM Innovations, Georgia Watersport and Shopchimney have similarly raised this alternative theory of constructive trust, which does not go to the merits of the Objection. *See* VM Innovations Response at ¶ 12; Georgia Watersport Response at ¶ 1(b); Shopchimney Response at ¶ 9. The constructive trust arguments raised in their responses are sparing and unsupported by any citations to legal authority. *See id.* Since the constructive trust arguments of VM Innovations, Georgia Watersport and Shopchimney are based upon the same general facts that VIR/AMI asserted in their adversary proceeding—namely, the provisions of the Agreement—they should also be dismissed for the same reasons that this Court has already found persuasive.

      ii. Stolaas's fraudulent inducement claim cannot be raised in the first instance within a response, is not properly pled, and is an improper basis for priority status

19. The Stolaas Response does not address whether claims for goods sold on the Sears Marketplace should be entitled to administrative priority, but rather it reads like a complaint for alleged fraudulent inducement. First, Stolaas cannot assert a claim for the first time in a response to an objection. Second, even if Stolaas could assert such a claim here, it has not sufficiently pled the elements of fraudulent inducement. Third, and most importantly, fraudulent inducement is not a statutory basis under which Stolaas may seek priority status for its claim.

20. First, Stolaas never asserted a claim for fraudulent inducement in its filed claim. *See* Claim No. 11880 (amending Stolaas's previous claims, Nos. 1389 and 4280, which on only assert "merchandise sold on the Sears Marketplace" and "dropshipments on Sears behalf" as the basis for the claim). Courts "generally do not consider arguments that are raised for the first time in a reply brief. *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 n. 5 (2d Cir. 2006) (Sotomayor, J.). This Court's previous order established April 10, 2019, as the deadline for vendors to assert all prepetition claims against the Debtors, which has long since passed. *See* ECF No. 2676. Stolaas

11

is raising fraudulent inducement for the first time in its Response; this Court should not consider it.

21.     Second, even if the Court were to address Stolaas's claim for fraudulent inducement, Stolaas' Response does not to assert the elements of such a claim, so its *prima facie* case fails.  "To state a claim for fraudulent inducement under New York law, a plaintiff must allege: 'a representation of fact, which is untrue and either known by defendant to be untrue or recklessly made, which is offered to deceive and to induce the other party to act upon it, and which causes injury.'"  *See PetEdge, Inc. v. Garg*, 234 F.Supp.3d 477, 490 (S.D.N.Y. 2017).  Also, "[a] claim for fraudulent inducement must satisfy the heightened pleading requirement of Federal Rule Civil Procedure 9(b), which requires that a party 'state with particularity the circumstances constituting fraud.'"  *Id.* (citing Fed. R. Civ. P. 9(b)).  Here, Stolaas asserts no facts that would support even a basic inference that the allegedly fraudulent misrepresentations—contained in automated messages generated by the Sears Marketplace system and the emails from technical support staff, *see* Stolaas Response, ¶¶ 5-8 – had any requisite intent to induce Stolaas with respect to goods already sold to customers.[6]

22.     Lastly, even should the court entertain the possibility of Stolaas' fraudulent inducement claim, which it should not, there is no statutory basis for granting priority status to such claim.  In its Response, Stolaas only makes a passing argument that, in light of the alleged

---

[6] Moreover, the emails from the Sears Marketplace Support team do not appear to be materially false, as they acknowledged that payments were being delayed. *See* Stolaas Response at p. 29 (Oct. 10, 2018 email from Marketplace Support to Stolaas, stating "at this point, we do not have a timeline"); *see also id.* at 30 (Oct. 8, 2018 email from A. Karandel to Stolaas, stating "[w]e regret to inform you that unfortunately. [*sic*] at this time we are experiencing a delay in payments remitting to accounts.").  Furthermore, to the extent that such statement contained any inaccuracies, there is no indication that the Sears Marketplace Seller Support team knew of them. *See id.* at p. 29 (undated, internal Sears message where A. Karanel asks for clarification from her team members, trying to identify why payments are being delayed).

fraudulent inducement, under "equitable principles," Debtors should be deemed as having "received" the goods sold by Stolaas, thus entitling it to a 503(b)(9) administrative expense claim. *See* Stolaas Response, ¶ 10. However, a claim for fraudulent inducement that arose prepetition is merely a general unsecured claim – duplicative of any claim for amounts owed to Stolaas under contract. *See In re Houbigant, Inc.*, 188 B.R. 347, 357 (Bankr. S.D.N.Y. 1995), *corrected* (Nov. 8, 1995) (in assessing a creditor's tort claim, the court held that while "[c]laims arising from acts committed by a debtor which give rise to tort liability are accorded general unsecured status," such claims are only afforded priority status where the "acts [are] committed by the debtor in possession."). All the emails alleged in the Stolaas Response to form the basis of their fraudulent inducement claim are prepetition emails, with the latest occurring on October 5, 2018. *See* Stolaas Response, ¶ 5. Thus, whether Stolaas asserts fraudulent inducement or any other basis for priority status for its claim, the claim should be recategorized as a general unsecured claim.

23. Based on all of the foregoing, the Debtors request the Court overrule the Responses and sustain the Objection.

24. The Debtors reserve all rights to supplement this reply and make additional arguments at the hearing to consider the Objection.

Dated: April 17, 2020
    New York, New York

                                   /s/ Garrett A. Fail
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Debtors
and Debtors in Possession*

WEIL:\97380289\11\73217.0004