**Hearing Date and Time: May 14, 2020 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: May 7, 2020 at 4:00 p.m. (Prevailing Eastern Time)**

STOLL KEENON OGDEN PLLC
500 West Jefferson Street, Suite 2000
Louisville, Kentucky 40202
Telephone: (502) 333-6000
Facsimile: (502) 333-6099
Lea Pauley Goff (*pro hac vice* admission pending)
Emily L. Pagorski (*pro hac vice* admission pending)

*Counsel for Creditor,*
*Tempur Sealy International, Inc. and its affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------- x | | |
| In re | : | Case No. 18-23538-RDD |
| | : | |
| SEARS HOLDING CORPORATION, *et al.*, | : | Chapter 11 |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| ------------------------------------------------------- x | | |

**MOTION FOR ORDER (A) ALLOWING AND REQUIRING PAYMENT OF 503(b)(9)**
**CLAIMS OF TEMPUR SEALY INTERNATIONAL & AFFILIATES; OR, IN THE**
**ALTERNATIVE, (B) DIRECTING DEBTORS TO SET-ASIDE A RESERVE**
**FROM FUTURE DISTRIBUTIONS UNDER THE ADMINISTRATIVE EXPENSE**
**CLAIMS CONSENT PROGRAM FOR THE BENEFIT OF SUCH CLAIMS**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brand Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

## I.   INTRODUCTION

Tempur Sealy International, Inc. and its affiliates, Sealy Mattress Manufacturing Co., LLC, Tempur-Pedic North America, LLC, Sealy Mattress Company of Puerto Rico, and Comfort Revolution, LLC (collectively "Tempur") respectfully move the Court (the "Motion") for an Order (a) allowing and requiring payment of Tempur's claims under 11 U.S.C. § 503(b)(9); or, in the alternative, (b) directing the Debtors to set-aside and reserve for Tempur its *pro rata* share of all future distributions to be made, including the "Second Distribution," to holders of allowed administrative expense claims under the Administrative Expense Claims Consent Program (the "Consent Program").

The Consent Program allows administrative claimants that "opt-in" to recover a certain percentage of their allowed administrative expense claims through a series of distributions that are triggered by the Debtors meeting certain Minimum Conditions.[2] On November 16, 2019, Tempur timely cast its ballots to opt-in to the Consent Program on account of its $2,398,655.12 Section 503(b)(9) priority claim (the "Priority Claim").[3] Thereafter, Tempur has fully complied with the Program's requirements and has promptly responded to the Debtors' requests for additional information. While the Consent Program contained a 30 day consensual claim reconciliation period, more than five months have passed and Tempur's claims still have not been deemed allowed, but the Debtors have also made no objection to them.

Due to the Debtors' delay (intentional or not), Tempur did not share in the Initial Distribution that commenced on December 27, 2019. If the Debtors continue to delay, Tempur

---

[2] All capitalized terms not otherwise defined herein shall have the meanings assigned to them in the Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan Of Sears Holdings Corporation And Its Affiliated Debtors And (II) Granting Related Relief (Doc. No. 5370) entered by the Court on October 15, 2019.

[3] Tempur received three separate ballots for the Consent Program and, out of an abundance of caution, it timely submitted all three ballots.

2

also faces potential exclusion from the Second Distribution to Administrative Claimants as well. When Sears was struggling, Tempur acted in good faith in continue to deliver goods to it right up to the filing of the Petition. Section 503(b)(9) was enacted to protect vendors like Tempur who continue to supply a company headed for the bankruptcy courts. This Court should enter an order allowing and requiring immediate payment of the Tempur Priority Claim. In the alternative, to protect Tempur's interest, this Court should order the Debtors to set aside and reserve for Tempur the *pro rata* amount of any additional distributions to which Tempur's $2,398,655.12 Priority Claim would entitle it as an allowed claim under the Consent Program.

## II.    BACKGROUND

1.    For a period of years prepetition, Tempur supplied the Sears entities with branded mattress and other bedding products for Sears to sell to its customers. On or about October 15, 2018 (the "Petition Date"), Sears Holdings Corporation and its debtor affiliates, as debtors in possession in the above-captioned chapter 11 cases (collectively the "Debtors"), filed voluntary bankruptcy petitions in the United States Bankruptcy Court for the Southern District of New York. Tempur had delivered to the Debtors product worth $2,398,655.12 during the twenty (20) days preceding the Petition Date.

2.    As debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, the Debtors have continued to possess their property and continued to operate and maintain their business.

3.    On February 22, 2019, the Court entered an order (Doc. No. 2676) establishing April 10, 2019 at 5:00 p.m. (Eastern time) as the deadline by which to file a proof of claim for pre-petition amounts owing by the Debtors, including priority claims under 11 U.S.C. § 503(b)(9) for

goods provided to the Debtors during the twenty day period preceding the Petition Date (the "Bar Date Order").

4.     On or about March 30, 2019, pursuant to the Bar Date Order, Tempur timely filed a proof of claim for its $2,398,655.12 priority 503(b)(9) claim for goods delivered within twenty (20) days of the Petition Date with that claim appearing as Claim Number 13224 in Prime Clerk's electronic claim register.[4]

5.     On April 17, 2019, the Debtors filed their joint chapter 11 plan of reorganization (Doc. No. 3275) (as amended and modified, the "Plan") and the accompanying disclosure statement (Doc. No. 3276) with the Court. Thereafter, on October 15, 2019, the Court entered an order confirming the Plan (Doc. No. 5370) (the "Confirmation Order").

6.     In the Confirmation Order, the Court approved the Debtors' Administrative Expense Claims Consent Program. Under this program, holders of administrative claims that did not opt out were to be placed into one of two groups that would be paid in advance of the Plan's effective date. Creditors whose administrative claims became allowed before the Initial Distribution were placed in the Opt-In Settled Admin Claims group and were to receive a 75% recovery on the allowed amount of their claim. The second group - the Non Opt-Out Settled Admin Claims group – was to consist of creditors (1) who elected to participate in the Consent Program but whose claims become allowed after the Initial Distribution and (2) who did not affirmatively opt-out of the program and whose claims are ultimately deemed allowed. This group is to receive an 80% recovery.

7.     Further, following the Initial Distribution, and after certain Minimum Conditions are satisfied, each holder of a Non Opt-Out Settled Admin Claim shall receive its *pro rata* share

---

[4] Tempur also has a $2,515,081.45 general unsecured claim against Sears, Roebuck and Co. that appears as Claim Number 13051 in Prime Clerk's electronic claims register.

4

of the Second Distribution. Following the Second Distribution, all Net Proceeds of Total Assets other than the Litigation Funding and the Cash Reserve are to be made available for distributions on account of Settled Administrative Expense Claims up to the Settled Administrative Expense Claims Recovery but there is no guaranty that funds will be left at that point or that the Debtors' estates won't become administratively insolvent, if they are not already.

8. On November 16, 2019, Tempur timely submitted its ballots electing to participate in the Consent Program. That same date, Tempur received an email from M-III, the Debtors' Restructuring Professional tasked with reconciling the Consent Program ballots, requesting Tempur to provide it with a laundry list of information relating to its Priority Claim. Tempur provided all of the applicable requested information on November 25, 2019.

9. Even though Tempur provided the Debtors with all required information, including the supplemental data requested by M-III, and despite language in the Confirmation Order requiring "consensual resolution of the Allowed amount . . . to be completed within 30 days from the date of the [holder's] Opt-In Ballot," Tempur's Priority Claim had not been allowed as of the December 27, 2019 — the Initial Distribution Date — and Tempur was excluded from that distribution.[5]

10. Indeed, Tempur heard nothing further from M-III until approximately three (3) months later, on February 26, 2020, when M-III requested that Tempur provide copies of the actual 503(b)(9) invoices, as well as the shipping information (including delivery addresses). On March 12, 2020, Tempur supplied M-III with detailed invoices and shipping information. This information was provided in addition to the information contained in Tempur's timely filed proof of claim (i.e. a schedule of the invoices, since they are voluminous). To date, Tempur has not

---

[5] In that Amended Notice Regarding Initial Distribution Pursuant To Administrative Expense Claims Consent Program (Doc. No. 6280), the Debtors indicated that the Initial Distribution would commence on December 27, 2019.

5

received a substantive response concerning this information and Debtors have not taken further steps to reconcile Tempur's Priority Claim as part of the Consent Program.

11.     One of Tempur's affiliates is the subject of an avoidance action to recover allegedly preferential transfers and other of its affiliates have likewise received letters demanding the return of certain allegedly preferential transfers. The undersigned, at great expense to Tempur, retained a nationally known consultant which has analyzed the Debtors' claims and concluded that Tempur has no potential exposure after application of subsequent new value and ordinary course defenses. Tempur shared these analyses with the Debtors several months ago in an effort to resolve their claims and has not heard any challenges to the consultant's methodology or conclusions.

### III.    ARGUMENT

Tempur has fully complied with its requirements under the Consent Program. The Debtors, on the other hand, have failed to comply with the procedures and deadlines of the Consent Program. The Debtors have delayed, and continue to delay, the resolution of the Allowed Amount of Tempur's administrative claim — neither objecting to it nor allowing it.

On November 16, 2019, when Tempur timely cast its Opt-In Ballot, Tempur reasonably expected that the Debtors would comply with the Court-ordered timeline and work diligently to reconcile Tempur's claim within thirty days. But the Debtors did not work diligently toward a consensual resolution of Tempur's Priority Claim. Instead, the Debtors have continuously engaged in delay tactics in an attempt to avoid paying Tempur under the Consent Program.

More than five months have passed since Tempur cast its Opt-In ballot. During this period, Tempur has accommodated each of the Debtors' requests for information. Nevertheless, the Debtors have still not reconciled Tempur's Priority Claim. The date of Initial Distribution has already passed without Tempur being paid on its Priority Claim. The Debtors' continuing delay

tactics threaten Tempur's potential recovery in any subsequent distribution, particularly given that the Debtors may be rendered administratively insolvent by the professional fees and expenses they continue to incur. This is an injustice that will only be prevented by an order allowing Tempur's 503(b)(9) claim or, alternatively, setting aside $2,398,655.12 now to be paid to Tempur with the next distribution. Section 503(b)(9), permitting priority claims for goods delivered to the soon-to-be debtor within the 20 days preceding the petition, was enacted in 2005 and was intended to encourage vendors to continue shipping goods to struggling customers and to protect those vendors if they did so. *In re Arts Dairy, LLC*, 414 B.R. 219, 220 (Bankr. N.D. Ohio, 2009) (stating that Section 503(b)(9) "seeks to encourage trade creditors to continue to extend credit to a debtor potentially heading for bankruptcy. Conversely, it will discourage abuse by debtors who seek to acquire goods at a time when it is known that bankruptcy is imminent and that payment for the goods will not have to be tendered.") (citing Collier on Bankruptcy P 503.16 (15th ed. Rev. 2005)). The Debtors' apparent attempt here to keep Tempur's claim in an eternal purgatory, where it is not allowed, not paid, and not objected to, entirely frustrates the letter and spirit of that legislation. It should stop.

### IV.    CONCLUSION

This Court should allow Tempur's 503(b)(9) Priority Claim in the full amount of $2,398,655.12, and order payment of $1,918,924.10 of it immediately — i.e. 80% of the amount of the claim. Alternatively, should this Court conclude there is any reason that Tempur's claim should not be allowed now - the Court should order the Debtors to set-aside and reserve that amount for Tempur from any subsequent distribution. If this relief is not granted, then Tempur is at risk of being denied any recovery on its Priority Claim despite its having continued to supply

8

the Debtors in good faith prepetition and Tempur's compliance with the Consent Program's terms.

A proposed order is tendered with this Motion and attached at Exhibit A.

Date: April 29, 2020                                   Respectfully submitted,


/s/ Lea Pauley Goff
Lea Pauley Goff
(*pro hac vice* admission pending)
Emily L. Pagorski
(*pro hac vice* admission pending)
Stoll Keenon Ogden PLLC
500 West Jefferson Street
Suite 2000
Louisville, Kentucky  40202
(502) 333-6000
lea.goff@skofirm.com
emily.pagorski@skofirm.com

Counsel for Creditor,
Tempur Sealy International, Inc. and its affiliates

8195222.1