<div align="right">Page 1</div>

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 18-23538-rdd

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In re:

6

7   SEARS HOLDINGS CORPORATION,

8

9           Debtor.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12

13              United States Bankruptcy Court

14              300 Quarropas Street, Room 248

15              White Plains, NY 10601

16

17              April 23, 2020

18              10:00 AM

19

20

21  B E F O R E :

22  HON ROBERT D. DRAIN

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:   UNKNOWN

Page 2

1    Hearing re:  Notice of Agenda of Matters Scheduled for

2    Telephonic Hearing on April 23, 2020 at 10:00 a.m.

3

4    Amended motion for Reconsideration and Request for an

5    Enlargement of Time to File an Appeal Pending this Motion

6    (related document(s)51) filed by Brian Coke Ng (document

7    #52)

8

9    Motion for Reconsideration (document #51)

10

11   Objection to Motion/Objection of PDX, Inc. and National

12   Health Information Network, Inc., to the Motion of Brian

13   Coke Ng Pursuant to Rule 60(b) for Relief from Order and

14   Request for an Enlargement of Time to File an Appeal Pending

15   this Motion (related document(s)52)

16

17   Affidavit/Reply Affidavit and Further Memorandum in Support

18   (related document(s)52) filed by Brian Coke Ng (document

19   #55)

20

21   Debtors' Motion for Entry of an Order Approving Settlement

22   Agreement Among Sears Holdings Corporation and the Canadian

23   Plaintiffs (ECF #7518)

24

25

Page 3

1   Application to Appoint to Retain and Employ Moritt Hock &

2   Hamroff LLP as Special Conflicts Counsel, Effective Nunc Pro

3   Tunc to January 2, 2020 filed by Ted A. Berkowitz on behalf

4   of Official Committee of Unsecured Creditors of Sears

5   Holdings Corporation, et al. (ECF #7798)

6

7   Debtors Second Omnibus Objection to Proofs of Claim

8   (Reclassification as General Unsecured Claims) (ECF #4776)

9

10   Claimant's Response to Omnibus Objection Re: Claim no. 5472

11   (related document(s)4776) filed by Georgia Watersports, LLC

12   (ECF No. 4814)

13

14   Response of VM Innovations to Second Omnibus Objection to

15   Proofs of Claim (ECF No. 4986)

16

17   Objection to Suzanne Jewelers (ECF No. 4994)

18

19   Response of ShopChimney.com to Second Omnibus Objection to

20   Proofs of Claim (ECF No. 5003)

21

22   Response of VIR Ventures, Inc. to Second Omnibus Objection

23   to Proofs of Claim (ECF No. 5056)

24

25

Page 4

1    Response of Sky Billiards, Inc., d/b/a Best Choice Products

2    in Opposition to Debtors' Second Omnibus Objection (ECF No.

3    5421)

4

5    Response of Stolaas Company in Opposition to Debtors' Second

6    Omnibus Objection to Proofs of Claim (ECF No. 5524)

7

8    Motion to Extend Time to Respond filed by Myrna Ruiz-Olmo on

9    behalf of Puerto Rico Supplies Group, Inc. (ECF #7788)

10

11   Motion of Relator Carl Ireland, Administrator of the Estate

12   of James Garbe, for an Order (I) Determining the Value of

13   Relator's Collateral as of the Sale of Such Collateral; (II)

14   Determining the Amount of Any Diminution in the Amount of

15   the Sales Proceeds Allocable to Such Collateral After the

16   Sale; (III) Directing Payment of Relator's Secured and

17   Superpriority Administrative Claims; and (IV) Granting

18   Related Relief filed by Alan D. Halperin on behalf of

19   Relator Carl Ireland, Administrator of the Estate of James

20   Garbe (ECF #4931)

21

22   Debtors' Objection (ECF #7471)

23

24   Letter on behalf of the United States of America to join in

25   the motion (ECF #7836)

Page 5

1    Administrative Claim Status Conference

2

3    Debtors' Tenth Omnibus Objection to Proofs of Claim (To

4    Reclassify Claims) (ECF #5237)

5

6    Debtors' Eleventh Omnibus Objection to Proofs of Claim (To

7    Reclassify or Disallow Certain Claims) (ECF #7213)

8

9    Motion for Relief from Stay filed by Sonia E. Colo on behalf

10   of Santa Rosa Mall, LLC (ECF #6317)

11

12   Debtors' Objection (ECF #7211)

13

14   Reply to Debtors' Objection filed by Sonia E. Colon on

15   behalf of Santa Rosa Mall, LLC. (ECF #7311)

16

17   Statement Certifying Compliance (related document(s)6316,

18   6317) filed by Sonia E. Colon on behalf of Santa Rosa Mall,

19   LLC. (ECF #7326)

20

21   Memorandum of Law on Puerto Rico's Insurance Law in

22   Compliance with Court Order (related document(s)6317, 7311,

23   7211) filed by Sonia E. Colon on behalf of Santa Rosa Mall,

24   LLC. (ECF 7531)

25   Transcribed by:  Sonya Ledanski Hyde

Page 6

1   A P P E A R A N C E S :

2

3   WEIL, GOTSHAL & MANGES
        Attorney for the Debtors

4
        767 Fifth Avenue

5
        New York, NY   10153

6

7   BY:  GARRETT FAIL

8        JACQUELINE MARCUS

9

    KIRBY AISNER & CURLEY, LLP

10
        Attorney for PDX, Inc.

11      700 Post Rd Suite 237

12      Scarsdale, NY 10583

13

    BY:  JULIE CURLEY

14

15

    HALPERIN BATTAGLIA BENZIJA

16      Attorney for Relator, Carl Ireland

17      40 Wall Street

18      New York, NY 10005

19

    BY:  ALAN HALPERIN

20

21

22

23

24

25

Page 7

1   U.S. DEPARTMENT OF JUSTICE

2        Attorney for the United States Trustee

3        U.S. Federal Office Building

4        201 Varick Street, Suite 1006

5        New York, NY 10014

6

7   BY:  LAWRENCE FOGELMAN

8

9   DAVIDOFF HUTCHER & CITRON

10       Attorney for Orient Craft Limited and HK Sino-Thai

11       Trading Company Limited.

12       605 3rd Avenue

13       New York, NY 10158

14

15  BY:  DAVID WANDER

16

17  BERNSTEIN-BURKLEY

18       Attorney for Vir Ventures and AMI Ventures

19       707 Grant Street, #2200

20       Pittsburgh, PA 15219

21

22  BY:  SALENE MAZUR KRAEMER

23

24

25

Page 8

1   MORRISON & FOERSTER

2         Attorney for Icon Health and Fitness

3         250 W 55th Street

4         New York, NY 10019

5

6   BY:  BEN BUTTERFIELD

7

8   ARENT FOX LLP

9         Attorney for Sky Billiards

10        1301 Avenue of the Americas, 42nd Floor

11        New York, NY 10019

12

13  BY:  DOUG FLAHAUT

14

15  FOLEY & LARDNER LLP

16        Attorney for Hain Capital Investors Master Fund, Ltd

17        90 Park Avenue

18        New York, NY 10016-1314

19

20  BY:  PAUL J. LABOV

21

22

23

24

25

```
 1   RÍOS GAUTIER & CESTERO C.S.P.

 2        Attorney for Santa Rosa Mall, LLC

 3        27 González Giusti Street, Suite 300

 4        Guaynabo, PR 00968-3076

 5

 6   BY:  CARLOS RIOS

 7

 8   FERRAIUOLI LLC

 9        Attorneys for Santa Rosa Mall

10        221 Avenida de la Constitución

11        San Juan, 00917, Puerto Rico

12

13   BY:  SONIA COLON

14   CARLOS RIOS

15   GUSTAVO CHICO

16

17   BRIAN COKE NG

18

19

20

21

22

23

24

25
```

1                   P R O C E E D I N G S

2           THE COURT:  Hello, good morning.  This is Judge

3   Drain, and this is the omnibus hearing date for matters in

4   Sears Holdings Corporation, et al.  This is a completely

5   telephonic hearing, so not only will I ask you to identify

6   yourself and your client when you first speak, I may also

7   ask you later while you're speaking to do the same thing

8   again if I think that the court reporter taking down the

9   official recording from Court Solutions may not be able to

10  identify you.

11          One last point, there is one recording permitted

12  of this set of hearings; that's the official recording being

13  undertaking by Court Solutions.  No one should separately be

14  recording this hearing.

15          With that introduction, I'm happy then to proceed

16  on the agenda, the amended version of which was filed

17  yesterday.

18          MR. FAIL:  Good morning, Your Honor.  For the

19  record, Garrett Fail, Weil, Gotshal & Manges for the

20  Debtors.  That's right, the agenda was filed at Docket

21  #7857.  Before beginning, we hope the Court and its staff

22  are well and appreciate the Court's time and thank the Court

23  for the time this morning.

24          Unless the Court prefers to proceed in a different

25  fashion, we could proceed in the order in which items appear

Page 11

1    on the agenda, which would begin with the adversary

2    proceeding first, the Brian Coke Ng v. Sears Holding

3    Corporation, et al; it's Item #1 on the agenda.

4             THE COURT:  Right, that's fine.  Let's do that.

5    And that matter is a motion by Mr. Ng -- that's spelled N-G

6    for the court reporter's benefit -- for reconsideration of

7    an order that I entered on April 9, 2020 in which I did two

8    things: I relieved PDX, Inc. and National Health

9    Information, which I'll refer to as PDX/NHIN or PDX, of a

10   default in this adversary proceeding under Federal Rule of

11   Bankruptcy Procedure 7055, and also granted PDX/NHIN's

12   motion to dismiss the claims against it in the adversary

13   proceeding brought by Mr. Ng.

14             The hearing on that matter was conducted by me

15   telephonically.  And during the hearing I asked a number of

16   times whether Mr. Ng was present.  He had expressed a

17   serious interest in participating in that hearing.  And I am

18   aware of email correspondence with the Clerk's Office -- or

19   I was aware at the time of email correspondence with the

20   Clerk's Office instructing him how to sign on to Court

21   Solutions.  Notwithstanding that, he was not present at the

22   hearing, and I proceeded just with counsel for the movant,

23   PDX/NHIN.

24             Mr. Ng filed his motion almost immediately after

25   the order was entered, stating that he attempted to be

Page 12

1    present at the hearing and was not and sought

2    reconsideration on that basis.

3              I see from the dashboard, Mr. Ng, that you are

4    present today.

5              MR. NG:  Yes, Your Honor.  Good morning.  Thanks

6    for having me.  I finally got here.  I was present.  I did

7    call in at the last hearing, but I was placed on mute, and I

8    did not have all of the protocols with me at the time to

9    know everything that is required of me to properly enter

10   through the dashboard.  I was signed up by the defense

11   counsel.

12             I felt somewhat disappointed because no one called

13   me to advise me when the Court already sent me an email,

14   which I received later in the day, that there would be a

15   waiver.  And so, I felt very not much -- not happy because I

16   have a complaint that I had filed and I wanted to address

17   the complaint, along with some procedural issues on the part

18   of the PDX defendants.  So I'm --

19             THE COURT:  Okay.  But before we go further, Mr.

20   Ng, let me take the other appearances on this particular

21   matter.

22             MR. NG:  Yes.  Yes, Your Honor.

23             MS. CURLEY:  Thank you, Judge.  Julie Curley of

24   Kirby Aisner & Curley, LLP for defendants, PDX, Inc. and

25   National Health Information Network, Inc.

1           THE COURT:  Okay, very well.  I don't think anyone

2     else is appearing on this particular motion.  So, Mr. Ng,

3     let me go back to you.  We received an email well after the

4     Sears hearing ended -- and it was an omnibus hearing; there

5     were more matters on the calendar than just this one -- that

6     you were still on the phone and were wondering what was

7     going on.  Did you hear my ruling at the hearing and the

8     discussion?

9           MR. NG:  No, Your Honor.  I heard nothing.

10          THE COURT:  Okay.

11          MR. NG:  I heard nothing other than from the

12    beginning when I first call in, I got a good morning

13    message, a good morning greeting, and that greeting shortly

14    thereafter placed me on mute.  I was there waiting until

15    sometime after midday or so that same day and I became

16    curious.  I thought then perhaps the Court was busy with

17    other cases and so I continued to wait.

18          THE COURT:  Okay.

19          MR. NG:  And I finally sent an email.

20          THE COURT:  Okay, and I got that email.  I do want

21    to note two things, Mr. Ng.  I get the dashboard that shows

22    each person that's on the call --

23          MR. NG:  Yes, Your Honor.

24          THE COURT:  -- and also the clerk's office does

25    too.  And that dashboard showed you on the call at the very

Page 14

1    beginning briefly before the hearing started and then did

2    not show you thereafter, including at the end.  And I now

3    have your icon and you are -- you're obviously showing up

4    now, and the fact that someone is muted doesn't take them

5    out of the dashboard.  So I'm not sure what happened, but I

6    don't think there's anything particularly nefarious that

7    went on here.  It's just that you weren't able to

8    participate in the hearing; that's clear.  And in light of

9    that, I decided to schedule a hearing on your motion.

10             I know you're representing yourself and you're not

11   a lawyer, but under the local rules and the bankruptcy

12   rules, the court does not need to schedule a hearing on a

13   motion under Bankruptcy Rules 9023 and 7024, which

14   incorporate the Federal Rules 59 and 60, if it believes

15   there's really no purpose to be served by a hearing.  But I

16   felt that since you had not participated in the earlier

17   hearing, that there would be a purpose served, so that's why

18   I scheduled this hearing.

19             So I have one more question for you, and then I'm

20   going to ask you just to briefly address your opposition to

21   the motion that was made by PDX/NHIN to dismiss.  And that

22   question is, have you been able to get the transcript of my

23   ruling, because I gave quite a lengthy ruling at the end of

24   the prior hearing.

25             MR. NG:  Well, I request it, Your Honor.

1              THE COURT:  Right.

2              MR. NG:  And I was promised in an email that

3    somehow that request was somehow end up in a spam box, and

4    that I will be -- they will respond to my request within a

5    day, and that was earlier on several days ago.  And I have

6    not heard anything back from anyone pertaining to the

7    transcript, so I do not have a copy, Your Honor.

8              THE COURT:  You haven't reviewed the transcript.

9              MR. NG:  I haven't seen it.

10             THE COURT:  Okay.  And unless one asks for an

11   emergency transcript, it usually takes them a while to

12   prepare it, so I'm not surprised that you haven't seen it,

13   but I just really wanted to know as to the state of your

14   knowledge of my ruling.

15             MR. NG:  No, I have no knowledge of --

16             THE COURT:  Okay.

17             MR. NG:  It just here and I heard that there was a

18   transcript and I requested and I have not gotten it

19   whatsoever.

20             THE COURT:  Okay, very well.  So given that, I

21   want to let you know I did read your objection to PDX's

22   motion to dismiss carefully, including the exhibits, as well

23   as the underlying Complaint that they sought to dismiss.

24             MR. NG:  Yes.

25             THE COURT:  So I'm familiar with all of those

1   documents, as well as, of course, PDX's motion.  But if you

2   want to say anything more on top of those documents in

3   opposition to the motion, now is your chance.

4           MR. NG:  Yes, Your Honor.  I'm happy to say

5   something on it.

6           So the complaint was filed, and it is my belief --

7   I'm not an attorney and only pro se, and I'm not someone who

8   can artfully plead like an attorney.  But what I do

9   understand, Your Honor, is that what I would like to say,

10  that my complaint is well pled under the Rule 8 -- Rule

11  8(a), with the accompanying factual allegations I'm showing

12  of the harm.  It relates to negligence.  That's the primary

13  complaint that I have.

14          But the PDX defendants is simply ignoring the

15  portion of the complaint that they do not like.  Like I

16  said, it's negligence.  I understand that long ago that a

17  complaint must specify who, what, when, where and how, but

18  it went -- my complaint went further than that.

19          For example, I had alleged four elements of the

20  negligence that I pled, and I had declared those elements of

21  the negligence and applied them to the PDX defendants, but I

22  had -- I did not stop there.  I put forward a factual basis

23  of the claim establishing, including how the PDX negligence

24  occurred and how the damages occurred.

25          I must point out also, Your Honor, that -- and I

Page 17

1    would like to point you to the complaint itself.  At

2    Paragraph 118, I expressed everything concerning the

3    standard of care that was owed to me.  I also expressed and

4    explained in Paragraph 118 also that PDX owed me a duty.

5            The factual allegation actually showing the

6    standard of care that is owed in Paragraphs 16, 17, 19 and

7    118.  And so, I believe that was just covered in the -- that

8    covered the first element of the negligence, Your Honor.

9            I had also alleged specifically in the complaint

10   at Paragraph 4, 41, 42, 43, 44 and 45, also 115 and 118, 119

11   and 120, that the PDX defendants had breached that duty of

12   care.  And so, with that, I didn't stop there.  I went on

13   with the other paragraph -- Paragraphs 2, 41, 47, 48, 68,

14   69, 70, 86, 87, 91, 116 and 117 to show and to explain the

15   injury that I had -- that I had -- that came about and

16   developed as a result of the negligence.

17           And then to sum it up and to finalize the

18   negligence, I had also alleged in Paragraphs 2, 41, 48, 69,

19   85, 86, 87, 91, 115, 116, 117 and 124, the injuries that

20   result from the PDX breach of duty, Your Honor.

21           But one other thing with related which I would

22   like to touch on.  The issues about the -- I'm sorry -- the

23   issues about the product liability, all of that was just

24   part of the negligence complaint that I have.  My main

25   complaint, Your Honor, is about negligence and the injuries

Page 18

1    related to emotional distress and the asthma attacks that I

2    have been suffering until this moment, Your Honor, all of

3    that is a part of the injuries that I had sustained.

4           So I tried to be artful as possible to make the

5    case for the negligence because I know very well that it has

6    -- there are four elements to it, which I detailed to you

7    just a short while ago in the paragraph as I had placed

8    them, and I didn't stop there.  I also showed the factual

9    basis for bringing those elements to the forefront of the

10   Court.

11          THE COURT:  Okay, all right.  I think at this

12   point, you're repeating what you told me earlier, so you

13   don't need to do it again.

14          MR. NG:  Okay.  Okay, Your Honor.

15          THE COURT:  Okay.

16          MR. NG:  So one other thing I would like to touch

17   on is that there seems to be a matter related to the

18   procedural efforts that the PDX defendants had made.  In

19   July of 2019, they made their first motion to dismiss, Your

20   Honor.  And with respect to that notice of motion, they did

21   raise that Rule 12(b)(6) motion; in fact, they said that

22   they were making the motion for an order to dismiss under

23   the (b)(12) -- I mean, under the Rule 12 -- Rule 12(b)(6).

24          However, they made just few, just very little

25   address of what the claims were at that time, but they

1    didn't go forward with it.  Instead, they stick to what they

2    were intended to do, I believe, that was for the

3    jurisdiction, dismissing the complaint for personal

4    jurisdiction.  I'm sorry.

5            And because that had been raised, I believe that

6    at that time when they raised that first motion, they could

7    have include the other defense as well and consolidate them

8    under the Rule 12 -- under the rules of those defense that

9    they have.  They could have consolidated them, but they did

10   not, they choose not.  However, the Court made a decision

11   which denied that personal jurisdiction request -- motion

12   that they had set forth.

13           And I believe when that decision was handed out

14   and filed with the Court in December 2nd, I believe from the

15   rules that they have only 14 days to either plead or to

16   answer the Complaint.  They had not made any request or move

17   the Court to seek an extension of time to either plead or

18   answer the Complaint and so, the time expired.

19           They were supposed to answer 14 days; they end up

20   answered January 16.  And I believe, Your Honor, that I

21   should be protected -- I should be protected by that under

22   the Rule 12 -- Rule 12 for -- let me see what I have here --

23   under that rule that actually gives them -- granted them

24   that time to respond or to plead, if you understand what I'm

25   trying to say here.

1          THE COURT:  Yes.  No, I do.  I do, and you made

2    that point clearly in your objection to their motion.

3          MR. NG:  Yes, Your Honor.  So for me not to be

4    able to protect it -- and, in fact, that's why I seek the

5    Court to enter default.  And that was just one day later,

6    they quickly went, and they filed a motion to dismiss, which

7    they never even respond to the motion -- to the clerk's

8    default entry.  They didn't make any response.  They just

9    figured then, well, the time was not -- the motion was not

10   untimely.  Nobody says that, but them not making any

11   response, I don't feel comfortable yet, Your Honor, because

12   I believe that I was protected by the Rule 12(a) --

13   (a)(4)(a).

14          THE COURT:  Mr. Ng, following the date after the

15   14 days ran, did you take any action in reliance on the

16   default?

17          MR. NG:  Well, the action related to the default,

18   I understand that I have a time to -- after the Court make

19   that decision to enter the default, I understand that I have

20   a specific time.  I don't remember the exact timeframe as to

21   move for an order for default judgment.  So I believe I'm

22   still within that time, Your Honor, but, again, I don't

23   remember the exact time because I tried to seek as much help

24   as to get proper information as well.  But I don't have that

25   time that is allowed for making that judgment -- for that

Page 21

1    motion for a default judgment.

2              THE COURT:  Okay.

3              MR. NG:  So I'm not satisfied, Your Honor, that

4    I'm not protected by that Rule 12, because with everything

5    else within the Court, respectfully, the Court ruled by

6    rules and strict rules.  And so, you know, I feel that that

7    should be considered, Your Honor, with all respect due.

8              THE COURT:  All right.

9              MR. NG:  I believe that with all respect due.  And

10   I'm not trying to make a big deal out of anything other than

11   I believe I have been so mistreated by all the defendants

12   actually because I'm the person actually suffering.  I have

13   bills piled up on me over the same issues, and it's not like

14   I'm not suffering.  I'm suffering very deeply.  And so, with

15   this case, it's hard to digest that something could have

16   gone so, you know, in such a direction that nobody cares to

17   find a way to resolve it, and I have to be fighting over

18   pretty much my civil rights and my private rights over

19   simple medical records.

20             THE COURT:  Okay.

21             MR. NG:  And so, at this stage that, you know, I

22   don't -- I don't know really.

23             THE COURT:  All right.  So let me ask, Miss

24   Curley, do you want to respond or do you want to stand on

25   your prior pleadings?

1            MS. CURLEY:  Your Honor, I'll stand on my prior

2       pleadings, as well as what I had said in a prior hearing

3       that, because there is a legitimate defense -- grounds exist

4       for the motion to dismiss the complaint, that there is cause

5       to vacate the default, and then hear the motion to dismiss,

6       which the Court had granted at the last hearing.

7            THE COURT:  Okay, very well.

8            MS. CURLEY:  Thank you.

9            THE COURT:  All right.  I have before me the

10      plaintiff's motion in this adversary proceeding to

11      reconsider and vacate my April 9th, 2020 order, which, as I

12      said, introducing this matter did two things.  First, it

13      vacated the entry of default by the clerk's office under

14      Bankruptcy Rule 7055 against the remaining defendant,

15      PDX/NHIN; and secondly, it granted PDX/NHIN's motion to

16      dismiss all of the claims in the complaint against it.

17           As I noted at the beginning of this hearing, that

18      was a -- the hearing that resulted in that order was a

19      telephonic hearing and Mr. Ng was not able or did not speak

20      at that hearing.  I don't believe it was through any

21      intentional fault on his own or on any other one's part.

22      But given that he is pro se and given the fact that he did

23      not get his chance to speak, in addition to the extensive

24      objection that he filed, I believed it was warranted to

25      schedule this hearing on his motion today to hear him.

1          Normally, motions under Bankruptcy Rules 9023 and

2     9024, to vacate a prior order of the court, are viewed as

3     seeking an extraordinary remedy to be employed sparingly in

4     the interest of finality and the conservation of judicial

5     resources.  Motions for reconsideration under Bankruptcy

6     Rule 9023, which incorporates Federal Rule of Civil

7     Procedure 59, are not normally granted unless the moving

8     party can point to controlling decisions or facts that the

9     court overlooked; matters, in other words, that might

10    reasonably expect to alter the conclusion reached by the

11    court.  Zuma Press, Inc. v. Getty Images (USA), Inc., 2019

12    US Dist. LEXIS 12415 at Page 2 (S.D.N.Y. January 24, 2019),

13    citing, among other cases, Key Mechanical Inc. v. BDC 56

14    LLC., 330 F.3d 111, 123 (2nd Cir. 2003).

15         In addition, I've treated this as a potential

16    request under Bankruptcy Rule 9024, which incorporates

17    Federal Rules of Civil Procedure 60(b).  That rule provides

18    that a party can obtain relief from judgment on the

19    following grounds: mistake, inadvertent surprise or

20    excusable neglect; two, newly discovered evidence; three,

21    fraud, misrepresentation or misconduct by an opposing party;

22    four, the judgment is void; five, the judgment has been

23    satisfied, released or discharged; or, six, any other reason

24    that justifies relief.

25         Rule 60(b), "strikes a balance between serving the

Page 24

1    ends of justice and preserving the finality of judgments".

2    Nemaizer v. Baker, 793 F.2d 58, 61 (2nd Cir. 1986).  Courts

3    should not lightly reopen final judgments under Rule 60(b),

4    Id.  See also In re Lehman Brothers Holdings, Inc., 445 B.R.

5    143, 168 (Bank. S.D.N.Y. 2011).  And it should not be used

6    as a substitute for a timely appeal, and it is invoked only

7    upon a showing of exceptional circumstances, Id.  See also

8    United States v. International Brotherhood of Teamsters, 247

9    F.3d 373, 391 (2nd Cir. 2001), although ultimately, the

10   decision whether to grant such relief lies with the sound

11   discretion of the court.

12          Here, potentially categories one, that is mistake,

13   inadvertent surprise or excusable neglect; two, newly

14   discovered evidence; three, fraud, misrepresentation or

15   misconduct by an opposing party; or, six, any other reason

16   that justifies relief have been asserted as potential

17   grounds.  Here, there is, as stated, no newly discovered

18   evidence; in fact, Mr. Ng was quite clear in laying out in

19   summary form the basis for his objection, which he had filed

20   previously in more voluminous form and that I considered in

21   connection with my original ruling.

22          The response to the objection to this motion

23   alleges misconduct by PDX in setting up the phone call.  But

24   it appears to me that such an allegation, i.e., fraud,

25   misrepresentation or misconduct, sets forth a high burden.

Page 25

1    As stated in the case law, the movant has the burden to

2    establish, by clear and convincing evidence, that the

3    adverse party obtained the judgment through fraud,

4    misrepresentation or other misconduct.  See In re Old Carco,

5    LLC, 423 B.R. 50-51 (Bankr. S.D.N.Y. 2010) and the cases

6    cited therein.  And it does not appear to me, based on my

7    own recollection of the Dashboard and the correspondence

8    with chambers that there was misconduct that has been shown

9    by clear and convincing evidence here.

10           In any event, I have given Mr. Ng the chance to

11   participate in what in essence would have been or is a

12   replay of the hearing that I previously had, which would be

13   the only other reason that might justify relief under

14   60(b)(6), given that this catch-all provision cannot apply

15   if one or more of the specific clauses of Rule 60(b) will

16   not justify relief under that provision.  Again, see United

17   States v. International Brotherhood of Teamsters, 247 F.3d

18   370, 390-92 (2nd Cir. 2011), citing Liljeberg v. Health

19   Services Acquisition Corp., 486 U.S. 847, 863 (1988).

20           In addition, I have not heard any new evidence

21   that was not raised before or could have been raised before.

22   And that leaves me with whether any exercise of my

23   discretion I believe I made a mistake in my ruling based on

24   my review of the pleadings, including the underlying

25   complaint.  Mistakes can include both legal and factual

Page 26

1    mistakes by the Court.

2           Here, given that this was a motion to dismiss, it

3    would only be a potential legal mistake.  And I considered,

4    after having heard Mr. Ng, whether that might apply here.

5    Again, for the interpretation of Rule 60(b)(1), see In re

6    Old Carco, LLC, 423 B.R. 45-46 and the cases cited therein.

7    I thought carefully about that, but I conclude that the

8    order was properly entered.

9           Let me deal with the motion to dismiss first.  I

10   carefully reviewed the complaint and went through the

11   elements of the underlying causes of action and then applied

12   the factual allegations in the complaint to those elements

13   and I believe laid out in some detail in my bench ruling why

14   here I believe the complaint did not state a cause of action

15   that was plausible, including under negligence.

16          The basic proposition on the negligence point was

17   that the allegedly negligent action by PDX was to have

18   provided Mr. Ng with certain records that it had regarding

19   prescriptions filled for him that were (a) not originally

20   provided and then were later provided and when later

21   provided that conflicted with, i.e., were different from

22   information he had previously received regarding the

23   prescriptions.

24          I concluded that as far as the negligence cause of

25   action was concerned, the facts alleged did not establish a

Page 27

1    duty of care with respect to those facts nor approximate

2    cause, given that the primary conflict was in the nature of

3    the warnings with respect to prescriptions that were

4    prescribed medically, and that one would not reasonably

5    expect or plausibly expect that to have caused the

6    psychological reactions that Mr. Ng's complaint details.

7              The other causes of action, which Mr. Ng has not

8    dealt with at today's hearing but did in his objection, I

9    separately addressed, and I believe was not mistaken in

10   addressing in my bench ruling denying those causes of

11   action.

12             Finally, the second part of my ruling was that PDX

13   should be relieved of the default that the clerk's office

14   entered here.  The default was entered correctly, as Mr. Ng

15   noted both in his objection and at oral argument.  After PDX

16   lost its initial motion to dismiss, which was solely on the

17   grounds of lack of personal jurisdiction, it had a specified

18   time under the bankruptcy rules to answer the complaint or

19   otherwise move.  It was late in that by approximately a

20   month and the notice of default was properly entered under

21   Bankruptcy Rule 7055.  However, this rule is only the first

22   step in a default, unless the complaint is for a sum

23   certain, which was not the case here.

24             In addition, the plaintiff needs to move for a

25   default judgment, which had not yet been done, and I don't

Page 28

1    fault Mr. Ng for doing that.  He's correct in saying that

2    his time to make such a motion had not expired by the time

3    that the defendant had made its second motion to dismiss.

4    But that fact is relevant to the proper analysis of a

5    request to be relieved of a default under Federal Rule of

6    Civil Procedure 55.

7            The courts generally act or approach a request to

8    be relieved of a default with the following factors: whether

9    the default was willful or culpable; whether granting relief

10   from the default would prejudice the opposing party, in this

11   case, Mr. Ng; and whether defaulting party has a meritorious

12   defense.  Those factors guide the court in the exercise of

13   its discretion, although courts are generally well advised

14   by the proposition that the courts prefer matters to be

15   decided on their merits.

16           Here, I concluded that the default was not willful

17   or culpable, which is related to the second point, which is

18   that there was no prejudice to Mr. Ng in that he had not yet

19   moved for entry of a default judgment, nor had any other

20   step in the adversary proceeding taken place.  And further,

21   there was sufficient time for addressing all of the issues

22   on the merits in the motion to dismiss.  And there, it was

23   clear to me that, in fact, the defendant did have a

24   meritorious defense to each of the causes of action in the

25   complaint.

Page 29

1            So in light of that, I was prepared to grant the

2    request by PDX for relief from the default, and I don't

3    believe on today's record that that should be changed.  Of

4    course, Mr. Ng has his right to appeal and by saying that I

5    didn't make a mistake I'm not concluding that there wasn't a

6    mistake, but as far as a motion under Rule 9023 or 9024 is

7    concerned, that is dispositive.

8            So I will ask counsel for PDX to submit an order

9    denying the motion for the reasons stated in my bench ruling

10   on the record.  I will also ask or work with my clerk's

11   Office, Miss Li work with counsel for PDX and Mr. Ng to get

12   a copy of the transcript of my earlier bench ruling so that

13   the parties can have that promptly.

14           MS. CURLEY:  Thank you, Judge.  I've been taking

15   notes and I'll start to get an order over this afternoon.

16           THE COURT:  Okay, very well.  Thank you both.

17           MS. CURLEY:  And I'll copy Mr. Ng on the

18   submission of the order.

19           THE COURT:  That's fine.  Okay.  So we should

20   proceed then to the next item on the agenda.

21           MR. FAIL:  Thank you, Your Honor, for the record,

22   again, Garret Fail, Weil, Gotshal & Manges.

23           The second item on the agenda is the first of two

24   status conferences that are on for today.  The first relates

25   to a motion filed by the Relator Carl Ireland, relating to a

Page 30

1    secured claim that was asserted in these cases.

2          Your Honor will recall, this motion was filed

3    eight months ago prior to the sale, prior to confirmation.

4    It's been carried from time to time.  The motion originally

5    sought to have the claim value determined, to have proceeds

6    allocated, and to be paid and satisfied.

7          Subsequently to the motion being filed, Your Honor

8    will recall several instances where this issue was discussed

9    in Court, including at the confirmation hearing where,

10   through the confirmation order, this creditor was granted

11   adequate protection for its secured claim with a lien on all

12   assets of the Debtors, which included --

13          THE COURT:  I'm sorry, I have the paragraph here,

14   and it's a lien against the sale proceeds of the property

15   and a superpriority administrative expense against all the

16   Debtors that was adequate protection.

17          MR. FAIL:  That was at the sale, Your Honor,

18   right?

19          THE COURT:  No, that's, I believe, the

20   confirmation order, paragraph 65, if I'm not mistaken.  But

21   in any event, there's the superpriority administrative

22   expense claim as well as adequate protection arising from

23   the sale of the property, which was where there had been an

24   earlier lien granted in connection with the sale, to satisfy

25   the diminution in value of the replacement lien post-

Page 31

1    closing.

2           MR. FAIL:  Right, Your Honor.  We cite, in

3    paragraph 65, that they got a lien in our reply that we

4    filed at Docket 7471, confirmation order, paragraph 65,

5    which gave them a replacement lien against total assets

6    defined in the plan as additional adequate assurance, which

7    is senior to other liens against total assets, and doesn't

8    supersede or otherwise modify the sale order grant for the

9    Debtors.

10          THE COURT:  I'm not sure about that.  My notes

11   have it as just a lien on the property plus the

12   superpriority claim, but it may not matter based on what you

13   --

14          MR. FAIL:  I think that was an issue -- that was

15   an issue that was, you know, that was an argument that they

16   were concerned that the proceeds weren't sufficient.  And I

17   think to address the issue, we gave the additional liens,

18   Your Honor.

19          THE COURT:  Okay, all right.

20          MR. FAIL:  It's in total assets.  So, you know,

21   from the Debtors' perspective, when we attempted to make the

22   initial distribution pursuant to the confirmation orders

23   approval of the administrative consent program whereby

24   creditors that opted to reduce their administrative expense

25   recoveries by 25 or 20 percent, would receive payments in

Page 32

1    advance of the effective date of confirmation, the Relator

2    objected and, again, sought to have payment made on the

3    secured claim.  And the Court determined that they were

4    adequately protected, noting, among other things, that to be

5    adequately protected, the Debtors only had to have roughly

6    $18-, $20-, $22 million worth of assets to cover the alleged

7    claim.

8             The Court noted that the litigation, the

9    substantive litigations that the Debtors were pursuing,

10   including preference actions, of which the record is clear

11   that the Debtors have pursued and filed hundreds of causes

12   of action, including the Debtors' claims against D&O

13   proceeds, and including the Debtors' litigation against ESL,

14   you know, were valuable assets of the Debtors'.

15            From the Debtors' position, nothing has changed

16   with respect to that, and the fact that the Relator and the

17   government are now looking at other items that were part of

18   calculations dealt with and addressed at confirmation, you

19   know, we shouldn't be retrying things.  This estate is

20   limited.  We're trying to move forward.  And this Court has

21   already ruled that, from the adequate protection

22   perspective, the estate had long-term assets that provided

23   them this claim with adequate protection.

24            We don't think there's anything else to do or to

25   schedule with respect to this motion.  We noted in our reply

that, you know, there's a dispute as to the quantum of the claim. I think that the real sticking point to settlement of that is the Relator's and the government's continued desire to be paid in full in cash, immediately and prior to the effective date and from the Debtors' perspective, this issue has been addressed and we don't have to do that.

We also note that, you know, the Debtors reserve all rights to dispute the claim, obviously, if the need be, including examination as to whether any of the claims should be actually subordinated, because it's a penalty or a punitive damage claim.

But we're hopeful that we don't have to spend a substantial amount of money disputing it. I think that the real issue is that they continue to want payment. Nothing has changed since the confirmation order, it's law of the case. There are no facts and circumstances that change with respect to the pending litigation that's outstanding.

That litigation won't be compromised, abandoned or settled or monetized without orders of this Court. Even if it were, then distributions from those proceeds eventually will not go out to creditors unless and until we provide notice to the Court, which hasn't happened, obviously, of course. And so, if circumstances change based on those two factors, perhaps we can revisit. But at this point, we don't think that it's beneficial to the estate or necessary

Page 34

1    to protect adequately this secured claim for $20 million,

2    approximately, to spend any more resources or judicial

3    resources on it.  I'm happy to answer any questions and I'm

4    sure that the Relator and the government will want so speak.

5             THE COURT:  Okay.  Well, I just want to focus on

6    what's -- this is a status conference, but it's a status

7    conference not really on the matter that's pending before

8    the Court.  The matter that's pending before the Court is a

9    motion for an order determining the value of the Relator's

10   collateral as of the sale; determining the amount of any

11   diminution in the amount allocable thereafter and directing

12   payments.  And on that score, I gather that the parties not

13   only have exchanged their appraisals, where there seems to

14   be a spread between about $17 million and $22 million, at

15   least without going into any detail as to the valuation

16   issue.  And I've had some discussions about resolving those

17   issues.

18             But the real subject of today's conference, at

19   least as highlighted by Mr. Fogelman's letter, is about

20   adequate protection.  And there isn't really an adequate

21   protection motion in front of me.  So, I'm reluctant to get

22   into great detail about whether the Relator is adequately

23   protected or not, because I don't really have a forum in

24   which to do that.

25             MR. FAIL:  Thank you, Your Honor, that's fine.

Page 35

1   The Debtors would agree with that and further with respect

2   to the eight-month-old motion to determine the value.  A lot

3   has happened since then, including the imposition of the

4   administrative expense program.  I'll be providing an update

5   on that next, Your Honor.  But the Debtors are focused on

6   reconciling claims that are entitled to be paid first, and

7   we've been efficient and, the Court has deferred and

8   adjourned all requests to have individual claims addressed

9   at the request of individual creditors.  And so, I really

10  don't think that we need a status conference on that or that

11  the Court will be scheduling that portion.

12          THE COURT:  Well, let me just -- part of the

13  Relator's collateral is cash.  And the issue, I guess, that

14  Mr. Fogelman raises, is an adequate protection issue.  But

15  to the extent that the Debtors would be paying out or using

16  cash, I don't think there's a cash collateral agreement.

17  There didn't need to be given the earlier findings of

18  adequate protection.  But I suppose the issue could be

19  raised there.  But I gather from what you've stated, that

20  the Debtors don't intend to be making distributions or

21  payments to administrative expense creditors going forward

22  without notice, which I'm assuming would include notice to

23  the Relator's counsel and the government.  Am I right about

24  that?

25          MR. FAIL:  You are, Your Honor.  But I want to be

Page 36

1    clear, we will be providing notice.  But I don't think that

2    -- you know, I hope to defer this issue beyond that notice

3    because the Court's confirmation order gave them a lien on

4    total assets, as I said.  It says, "In addition to the sale

5    order grants, mortgagee shall have a replacement lien

6    against total assets as adequate protection.  It shall be

7    subject to the carve out...," blah, blah, blah.  So, it

8    basically has a lien on everything else and it was expected

9    that cash coming in would then go out.  So, it's not new.

10   So, we do have cash now.  We will announce -- it's not a

11   today issue.

12            THE COURT:  I don't think it is a today issue, but

13   I also think that that finding of adequate protection is

14   subject to materially changed circumstances.  So, it would

15   seem to me that if there are materially changed

16   circumstances that would, arguably, render the Relator and

17   the government not adequately protected upon the Debtors

18   making material cash distributions, then they should either

19   consent or -- you know, it should be on notice to them that

20   this is the proposed use with a showing which could be as

21   much as you want, including what you've just said, that they

22   are adequately protected.  I think that would be, other than

23   a motion for relief from the stay or to enforce an

24   administrative expense under the applicable order, the

25   confirmation order.  Those would be the two ways I think

Page 37

1    this issue could come up.  And I don't think it's really

2    more than that can be said today about it, other than I

3    would encourage you to sit down with counsel for the

4    Relator, and to the extent Mr. Fogelman wants to be

5    involved, the government to potentially head off unnecessary

6    litigation over this issue so that they can report back to

7    their clients whether they think, based on what you've gone

8    through, that they are still adequately protected.

9              MR. FAIL:  Thank you, Your Honor.  We have had

10   conversations.  We've attempted to cut off litigation costs.

11   The litigation remains outstanding as significant.  The

12   Unsecured Creditors Committee is pursuing it.  They're on

13   the line.  I would hope that we don't see a motion and that

14   they don't request and that the Court doesn't require

15   additional costs for trials to prove what's already been

16   proven as law of the case; that the Debtor has significant

17   short-term assets, long-term assets, and that the long-term

18   assets are remaining with value that exceeds the estimated

19   $20 million, even if all cash, you know, current cash, were

20   to go out, all current available cash were to go out

21   pursuant to the admin expense motion.  I'm just afraid that,

22   you know, we're going to face another motion from the same

23   parties for the same issue.  The Debtors were looking to cut

24   that off with the status conference.

25              THE COURT:  All right.

Page 38

1              MR. HALPERIN:  Your Honor, it's Alan Halperin.

2              THE COURT:  Yeah, go ahead.

3              MR. HALPERIN:  My apologies.  I would like to be

4     heard on this if I may.

5              THE COURT:  Sure.

6              MR. HALPERIN:  First and foremost, just because it

7     bears saying at the beginning, I genuinely appreciate the

8     Court and the parties getting together today and allowing us

9     to be heard.  These are some interesting and surreal times

10    that we're all living in right now, and I do hope that

11    everybody is okay.  There are a couple of --

12             THE COURT:  Could you -- I'm sorry -- just for the

13    record, could you just state who you're appearing on behalf

14    of?

15             MR. HALPERIN:  My apologies, Your Honor.  Alan

16    Halperin, Halperin Battaglia Benzija, on behalf of the

17    Relator, Carl Ireland.

18             THE COURT:  Okay.

19             MR. HALPERIN:  There are definitely a couple of

20    points that I felt was important to at least note, and I do

21    know that this is a status conference, it wasn't a motion.

22    But we've kind of, sort of blurred the line a little bit.

23             A couple of things: first, we filed our motion

24    back in August of 2019, seeking a determination of value of

25    the secured claim, and seeking adequate protection.  It was

Page 39

1    noted in there, because we do continue to have concerns and

2    there were some things at the time that were concerning us.

3    And that was before confirmation.  Actually, I think it

4    might have even been before the sale, but I'm not 100

5    percent sure, before the sale closing.

6            I don't need to get into everything.  It's a

7    status conference and we've already gone through quite a

8    bit.  But suffice it to say, I guess, in short, as part of

9    the sale order and as part of the confirmation order, the

10   right of the Relator and its co-mortgagee, the United

11   States, to come in and request a change in terms of the

12   adequate protection, in terms of requesting some monies to

13   be escrowed or paid, was reserved.  And it was clear all

14   along that that was a preserved right.

15           So, I understand that lawyers will have positions,

16   and clients do too, but it's certainly not law of the case.

17   It was a procedure that was set up, and it can evolve, just

18   like the case can evolve.  In terms of the --

19           THE COURT:  Well, that's always the case with

20   adequate protection.  So, I don't think we need to worry

21   about that.  On the other hand, it's really not a good idea

22   to make a motion on, essentially, the same facts or not

23   materially change facts for your particular client.  I don't

24   know the answer to that.  Maybe you're at that point.

25           MR. HALPERIN:  Clearly understood, Your Honor.  By

Page 40

1    way of going along those lines, let's be very clear, we made

2    or motion back in August of last year and it's been

3    adjourned from time to time at the request of the Debtor.

4    And, frankly, we did it because we wanted to queue up the

5    process and start to deal with our claim, but it wasn't

6    urgent, and we didn't --

7              THE COURT:  Right, but I did deal with it in

8    confirmation, you know, because that was --

9              MR. HALPERIN:  Absolutely.

10             THE COURT:  -- it was teed up at confirmation.

11   So, we're really focusing on what's changed since the third

12   week of October last year.  A lot may have changed as far as

13   your collateral.  I don't know.

14             MR. HALPERIN:  And that is correct, and that is

15   something that has been causing us concern.  I don't need to

16   belabor the point per se, because this is a status

17   conference, Your Honor, but we do note in our reply some of

18   those changed circumstances.  And they're material.

19   Everybody's operating on a little bit of a difficult basis

20   given the stay-at-home orders and the impact it's having on

21   everybody.  But it does go to proceeds realized versus

22   proceeds that were projected.

23             THE COURT:  Well, the issue, though, is whether

24   they're material as to your client's claim, not the case

25   generally.

Page 41

1          MR. HALPERIN:  We believe they are.

2          THE COURT:  And I understand that you get that

3     too.  So, I don't know if there's anything more to say at

4     this point.  It's not really going to help me to hear more

5     on that without the right context.  So, I would urge you,

6     again, to focus on that.  It seems to be so far -- maybe I'm

7     wrong -- the discussions have been more about how to resolve

8     the claim as opposed to the interim step of adequate

9     protection.  If you haven't had that latter set of

10    discussions, you should before making a motion.  There are a

11    whole host of ways to assure a secured creditor that there

12    is adequate protection and/or a court.  And I would just

13    want that exercise to have happened before any request for

14    adequate protection is teed up before me.

15         MR. HALPERIN:  Your Honor, I think that's okay, I

16    guess, to the extent I heard what I thought I heard.  I just

17    want to make sure we're on the same page.  I thought I heard

18    Your Honor say that additional monies to any administrative

19    creditors wouldn't go out without notice.  We have --

20         THE COURT:  Well, material payments.  I mean,

21    obviously, if they're paying the light bill, that's one

22    thing.  But material payments, yeah.

23         MR. HALPERIN:  But that would go, I would expect,

24    to the admin procedures motion, so, to the extent we're

25    talking about millions of dollars out the door.  That said,

Page 42

1    we have recently started discussions asking for additional

2    information, so that we could better understand the current

3    asset picture; some of which we were able to glean from the

4    public record, some of which really isn't in the public

5    record and we still don't have.  And we will follow up with

6    the Debtors and their counsel, and hopefully be able to get

7    that information.  And if not, if we need to tee this up by

8    another -- we still believe that we're in trouble and we

9    need to -- or concerned or at risk -- and need to tee this

10   up by another motion -- we can.

11          We kept it kind of light, although we did at least

12   address the requests in this motion, but we can tee it up

13   differently with more specifics if we need to.  But we'd be

14   happy, and would prefer, to first be able to get the

15   information we need and come to some kind of an amicable

16   resolution of this.  Because I think we and the Debtors, at

17   least via the positions in Court today, have a different

18   perspective on what was put before the Court in terms of

19   what could be, what should be relied on, and what

20   confirmation was based on versus what wasn't, in terms of

21   assets and what would be there.

22          All of that being said, as Your Honor stated --

23   and I agree with you -- it's better not to turn this into a

24   contested matter if we can all come to some kind of an

25   accord on issues that concern both sides.  And I will

Page 43

1    continue to try to do that.

2              THE COURT:  Okay.  And that agreement can an

3    interim one just on adequate protection or it can be a

4    comprehensive one, which includes all the issues regarding

5    this claim that are before me.  So, it can be either one.

6              And then as far as major outflows of cash are

7    concerned, if that cash is the Relator's cash collateral,

8    then I think that you all are entitled to notice before it

9    goes out the door.

10             MR. FAIL:  That's fine.  Your Honor, we've already

11   agreed.  Your Honor, the Debtors already have agreed that

12   we're going to provide notice of a distribution.  There's

13   nothing new or that's contemplated by a distribution.  The

14   Court entered the confirmation order and directed us to give

15   out the cash that was liquidated from short-term assets to

16   administrative creditors, knowing that there were long-term

17   assets.  And the long-term assets remain.  The Committee

18   counsel is on the phone, who is prosecuting it.  I mean, the

19   Relator wants detailed information and I just hope that they

20   don't continue to ask us to engage in another trial on

21   what's been done.  The Court considered long-term and short-

22   term assets.  We'll deal with it if they file something,

23   Judge.

24             THE COURT:  Very well.  Okay --

25             MR. HALPERIN:  The only thing I would ask, which

Page 44

1    is where I was going with this -- I apologize, Judge, but I

2    want to make sure this is clear -- is that we'll get, what

3    I'll say is adequate notice so that if we do have a concern

4    about what's going out the door, we have an opportunity to

5    first talk with Weil and second, if we can't come to some

6    accord, that we have an opportunity to ask Your Honor for

7    some help.  Judge, I want to make this very clear.  I'm not

8    --

9              THE COURT:  That's clear, you don't have to --

10   that's what I have in mind.

11             MR. FOGELMAN:  Good morning, Your Honor, this is

12   Larry Fogelman, if I may be heard briefly?

13             THE COURT:  Sure.

14             MR. FOGELMAN:  Just for the record, I'm here on

15   behalf of the United States.

16             Your Honor, first, just as an initial matter, AUSA

17   Peter Aronoff is lead counsel for the government on this

18   case.  He is recently returned from parental leave, and I've

19   been filling in, in his absence.  So, I appreciate the

20   Court's hearing me this morning.

21             I think everything has already been said.  I just

22   want to raise the concern that -- the Court's asked about

23   conversations about adequate protection.  And at least to

24   date, and it's been said today in Court, the Debtor's

25   position has been that the Court's already ruled on this,

Page 45

1    it's law of the case and nothing has changed.

2              We disagree with that, respectfully.  I think,

3    just to give the Court one key example, at the time of the

4    confirmation hearing, it was estimated that Transform would

5    pay $90 million of the administrative claims in this case.

6    And the recent settlement in January 2020 reduced that

7    amount of their contribution to $7 million.  So, right off

8    the bat, there's an $83 million swing that has potentially

9    harmed the government and the Relator here.

10             We've been attempting to have conversations with

11   Debtors' counsel to evaluate how much cash is on hand,

12   what's the value of non-cash assets, what's the amount of

13   liability just to be able to compare that asset and

14   liability picture and have a more detailed -- get more

15   detailed information to present to the Court.  And we'd

16   simply ask that the Debtors be flexible in providing that

17   information to us.  There is still outstanding information

18   that we've attempted to learn that we have not yet been

19   given and we looked forward to working with Debtors in an

20   effort to resolve this.

21             THE COURT:  Okay, very well.

22             MR. FOGELMAN:  Thank you, Your Honor.

23             THE COURT:  Why don't we move then to the next

24   agenda item; which I would like to actually have -- not the

25   next one.  And I think, Mr. Fail, you alluded to it earlier,

Page 46

1   which is just a brief status conference on the

2   administrative expense claim liquidation process.

3            MR. FAIL:  Thank you, Your Honor.  You're saying

4   you would like me to present that or you would not like me

5   to present that?

6            THE COURT:  Yes.  No, I would.  I would like you

7   to.

8            MR. FAIL:  Thank you.

9            THE COURT:  It's not next on the agenda, but I

10  think it's related to this matter.

11           MR. FAIL:  I do as well.  I just wanted to

12  clarify.  Thank you, Judge.

13           At the February 24th hearing, I presented an

14  updated on the Debtors' efforts to reconcile administrative

15  claims and administrative motions invalid.  We disclosed at

16  the time that we had reconciled and allowed 359 opt invalid

17  for an allowed total of $73.2 million that shared in $21

18  million and received initial distribution of 28.7 percent

19  already.

20           We disclosed at that time that we had reconciled

21  992 non-opt-out settled admin claims as well.  We disclosed

22  that we had resolved various claims without the need for

23  objections, that we had filed ten omnibus objections to more

24  n 1,400 claims; that we had resolved all but approximately

25  48 of those claims for less than 30 creditors with a

Page 47

1    settlement or with a court order, but without a contested

2    hearing.

3            At that time, we had filed the Debtors' eleventh,

4    twelfth and thirteenth omnibus objections to another

5    approximately 280 claims that were pending at the time.  At

6    that time there were approximately 668 other claims that

7    remained to be reconciled or put on an objection.

8            Since that last status update, Debtors have

9    continued to resolve claims through the administrative

10   claims process without objections.  Since the last status

11   update, the objection deadlines for the eleventh, twelfth

12   and thirteenth omnibus objections have passed, and the Court

13   has already entered multiple orders granting the relief

14   requested.

15           The Debtors also filed their fourteenth,

16   fifteenth, sixteenth, seventeenth and eighteenth omnibus

17   objections.  The Court entered an order for the fourteenth

18   omnibus objection already.  The objection deadline remains

19   outstanding for the remaining.  We're going forward to

20   address the remaining claims on the Debtor's second omnibus

21   objection later today.

22           While we have adjourned disputes from time to

23   time, the Debtors have been efficient and productive in the

24   interim.  Out of all of the hundreds of claims subject to

25   the first 13 omnibus objections, there are only a very few

Page 48

1    claims for which the hearings remain adjourned.  The numbers

2    are quite impressive.  A total of only six non-World Import

3    claims remain adjourned.  And a total of only 11 World

4    Import-related claims remain adjourned.

5           I'll note two things of further relevance with

6    respect to the already incredibly small population of

7    claims.  First, the Debtors have reached a settlement in

8    principle, and are documenting settlements with three of

9    those 11 World Imports-related claims.  So, a more accurate

10   count of those claims is really 25 percent lower than the

11   11.

12          Second, certain of the remaining World Imports

13   creditors have opted out of the administrative claims

14   settlement.  In other words, they will not participate in

15   distributions ahead of the plan effective date, even if

16   their claims are eventually allowed through litigation in

17   advance of the effective date.  Notably, these include some

18   of the most vocal objectors.  And of course, the Debtors

19   were required to prioritize settlements of all other claims

20   ahead of their claim.

21          In summary and in total, since the last update,

22   the Debtors have reduced the number of claims that have not

23   been settled or subject to an objection, from 668 to 127; a

24   reduction of 541 or 80 percent of the claims population.

25   Obviously, a lot of work went into this.  The results speak

Page 49

1    for themselves.

2         The Debtors have been efficient with their use of

3    judicial resources and we hope to continue that efficiency

4    while continuing to make progress.  We ask that the Court

5    allow us to be able to continue in this fashion.  While we

6    have made significant progress, there remains significant

7    work to do.  The goal of the Debtors continues to be to

8    reduce the number and amount of disputed claims in advance

9    of the next distribution, in order to reduce the need for

10   reserves, and to maximize the amount that is distributable.

11        The Debtors and the UCC advisors, and now the

12   administrative claims representative, have the best

13   visibility into the pools of claims, and the best way to

14   meet that goal.  Individual creditors do not.  They only see

15   and argue for their particular claim.  In addition, as we

16   have disclosed before, while the Debtors have reconciled the

17   amounts that they owe, they have also sent demand letters

18   and commenced hundreds of preference actions.

19        There is overlap between the claimants and the

20   preference defendants, including significant overlap amongst

21   a small group of remaining disputed World Import creditors.

22   The Debtors do not intend to make any distribution to these

23   prepetition claims while preference exposure is outstanding.

24        The Debtors have consulted with the UCC and the

25   administrative claims representative in developing and

Page 50

1    executing their strategies.  Both the UCC and the

2    administrative claims representative supported the debtors'

3    decision to continue to adjourn the hearings that have been

4    adjourned, and to reduce the time and expense of litigation

5    on the World Import issues.

6            Judge, I'm happy to answer any questions you have,

7    but that's our update on the significant progress that's

8    been made with respect to the program.

9            THE COURT:  Okay.  The one question I have at this

10   point is, what is going on with regard to payment of these

11   claims to the extent allowed?

12           MR. FAIL:  Judge, under the program the debtors

13   are required to fund certain reserves and excess available

14   cash above those reserves are to be distributed to the next

15   round of these creditors that I'm talking about, that have

16   been allowed since the initial distribution, pro rata, up to

17   the 28 percent recovery that initial distribution received,

18   but that's after we provide notice.

19           THE COURT:  Okay.

20           MR. FAIL:  The significant 80 percent reduction in

21   number has led to a significant reduction in what would

22   otherwise need to be reserved for the claims.  But our goal

23   will be, and must be, because the confirmation order

24   requires us, to expeditiously move to distribute the cash

25   that we have amassed, and anything that comes in, to those

Page 51

1    creditors.

2            THE COURT:  So, who does that notice go to?

3            MR. FAIL:  We'll file it publicly on the docket.

4    I suggest that nothing further need to be required.  Parties

5    that are interested receive information from the docket.

6    And there wasn't -- we don't need to continue to do mailings

7    or anything like that.  We'll file notice on the docket.

8    People can --

9            THE COURT:  At this point, you have claims that

10   have been filed, right?  There's no one out there who hasn't

11   filed a claim?  I mean, that didn't have to file a claim?

12           MR. FAIL:  Judge, to be clear, we're talking about

13   administrative priority claims.  We looked at those that

14   were filed by the bar date.  We filed motions based on

15   everything in our books and records.  We sent out notices

16   asking anybody in connection with the ballots.  I think at

17   the last hearing I talked about the -- I forget if it was

18   between 10- and 20,000 parties that we noticed.  We think

19   we've covered the universe, and now we've gone through

20   everything that's come through.

21           THE COURT:  I mean, at this point, you have

22   defined the universe because of the bar date.  So --

23           MR. FAIL:  For pre-petition claims, that's right.

24   And honestly, we haven't operated as Debtor -- we haven't

25   operated a business in close to a year, so, we're over a

1    year.  We think we know of everybody that's out there.

2              THE COURT:  Okay.  I see at least Mr. Wander on

3    the Dashboard.  I don't know if other parties -- he had

4    asked for this conference.  I don't know if other parties

5    want to be heard as well.

6              MR. WANDER:  Good morning, Judge, this is David

7    Wander, of Davidoff Hutcher & Citron, on behalf of Orient

8    Craft Limited and HK Sino-Thai, that's S-I-N-O hyphen T-H-A-

9    I, Trading Company Limited.  After I give you my comments,

10   Your Honor, Benjamin Butterfield of the Morrison Foster

11   firm, counsel for Icon, would like to give his comments, if

12   that is okay with Your Honor.

13             THE COURT:  Okay.

14             MR. WANDER:  Your Honor, I want to focus on the

15   matter that I asked you to have this status conference.

16   There were additional matters that were just mentioned with

17   regard to the payment of a second distribution.  And while I

18   have comments on that, I am not going to say it on this

19   call, because that was not the purpose of my request, Your

20   Honor.  I would only note that there has been no

21   administrative claims bar date in the case.  But I want to

22   focus on my matter, Your Honor.

23             THE COURT:  But I'm sorry, just on that point, it

24   is the case that it's highly unlikely that there are any

25   parties who care about administrative expenses at this

1    point, that have not surfaced, given that the Debtors' sale

2    happened so long ago.

3              MR. WANDER:  Your Honor, I don't think that's

4    correct, because I saw on the docket in the past two days, I

5    believe, an administrative claim of $1 million that was

6    recently filed.  And I've been following the docket and each

7    week I see additional motions for allowance of

8    administrative claim.  So, I believe there are other

9    administrative claims out there, but again, that is not what

10   I asked to be heard on today.

11             THE COURT:  Okay, all right.

12             MR. WANDER:  Your Honor, I look at this very

13   differently than the Debtors' position.  From my viewpoint,

14   if the Court rendered or renders a decision on the World

15   Imports issue, it would save a lot of legal fees.  Claimants

16   want to know the position in the Southern District on

17   503(b)(9).  It's a pressing issue.  I imagine, based on --

18             THE COURT:  I'm sorry, in this case?

19             MR. WANDER:  No.

20             THE COURT:  It doesn't sound like the numbers bear

21   that out.

22             MR. WANDER:  Well, Your Honor, I've had many

23   discussions with other administrative claimants, and many of

24   them, frankly, have been worn down and they can't, some of

25   them, their clients can't continue to pay the legal fees.

Page 54

1    Others are being told there's another distribution coming

2    and if you don't settle, you're going to miss the boat.  So,

3    I just look at things differently from the Debtors' point of

4    view, because I've been vocal in my viewpoints on the

5    administrative claims process, and certain defects, but I

6    haven't put it before Your Honor because it hasn't been

7    appropriate for my clients.

8           There are no negotiation going on right now on my

9    client's 503(b)(9) claims.  And I believe that it's

10   important for my clients.  It's important for the bankruptcy

11   bar, particularly with the deluge of retail bankruptcy

12   filings that we're expecting.  Now, I wrote to Your Honor --

13          THE COURT:  No, but Mr. Wander, that's not this

14   case.  People write law review articles and that's why

15   people like you advise their clients.  But courts just don't

16   go out and write opinions because they want to write an

17   opinion that will affect the law in other cases.  So, to me,

18   that's not warranted.  Can go back, though, to one of your

19   other points?  I just want to make sure I understand a

20   couple of things here.

21          First, is your client a defendant or has it been

22   given notice that it could be a defendant in a preference

23   action?

24          MR. WANDER:  Orient Craft I'm not aware of any

25   preference claim.  I believe for HK Sino-Thai, I think my

Page 55

1    client got a letter four months ago and nothing else has

2    happened.  We did not opt out, so we're in the

3    administrative claims program.  So, if that answers Your

4    Honor's questions?

5              THE COURT:  Okay.  And then the other question I

6    had is, I appreciate that the World Imports issue would, at

7    some level, affect negotiations.  But it appears to me that

8    in this case, there are many other factors that probably

9    have a more significant effect on negotiation.  Those

10   include potential preference liability and, most

11   importantly, simply the Debtors' ability to pay.  And I

12   don't get the impression, but you can feel free to correct

13   me, that the thing that is driving all of these settlements

14   it the World Imports issue and parties trying to figure out

15   whether it applies or not, and/or whether they have given up

16   on it because they don't have the money to spend.

17             Normally, if people need an answer on something

18   like that, and want an answer as opposed to want the

19   uncertainty in an negotiation, which could help both sides,

20   they leave it open, or they, you know, if they need an

21   answer they go and get one.  But to say that people don't

22   want to spend the money on it, may well mean, simply, they

23   don't want to spend anymore money on the case because they

24   see their best-case scenario even if they win, being a

25   certain percentage recovery as opposed to a full recovery.

Page 56

1            MR. WANDER:  I appreciate that, Your Honor.  The

2      way I look at this right now, from a procedural posture, I

3      wrote to Your Honor on this issue in January, on January 21.

4      And at that time, I said I will not object to one more

5      adjournment of the hearing on the tenth omnibus claims

6      motion if the Debtors would file their reply papers.  And

7      Your Honor forced the Debtor to file their reply papers, I

8      believe, in January.  And so, we had agreed that the matter

9      would get adjourned.  And I did say in my email at the end,

10     "This issue is too important for the can to just be kicked

11     further down the road."

12            Now, that was in January, and here we are in

13     April.  And myself and others were prepared for oral

14     argument today, and then we heard that the Debtor was going

15     to adjourn things.  And I'm okay with that, Your Honor.

16     Because of what's going on right now, I'm not going to rant

17     and rave like I might otherwise have done.

18            But there's no reason, Your Honor, respectfully,

19     that this matter can't and shouldn't be addressed at the

20     next omnibus on May 14.  Your Honor, I believe, I submit,

21     Your Honor is going to have to render a decision on this,

22     because there are certain parties that do not feel that the

23     type of settlement that's been proposed comes close to what

24     would be acceptable to my clients.  So, we would --

25            THE COURT:  How many of those parties are there at

Page 57

1    this point?  That was one of the reasons to adjourn back in

2    January.  If it wasn't clear who was going to be involved in

3    the dispute --

4              MR. WANDER:  I think there was --

5              THE COURT:  Has that been narrowed down?  There

6    are three parties.

7              MR. WANDER:  I think it's -- well, three law

8    firms.  So, Your Honor, I have two clients; Mr. Butterfield,

9    he has Icon, which is, I think the largest one, it's about a

10   $10 million claim, I believe.  And then there's Jeffrey

11   Schwartz, who has the Winners.  So, we want to go forward --

12             MS. MAZUR KRAEMER:  Your Honor, if I may, this is

13   Salene Mazur Kraemer on behalf of Vir Ventures and AMI

14   Ventures.  We are in this boat as well.  They had a claim

15   for about $800,000, Your Honor.  It's a World Imports issue

16   also.  And I represent another creditor, New Acme, their

17   claim is about $100,000.  Again, it's a World Imports issue.

18   I echo the sentiments of counsel regarding this issue.

19             THE COURT:  Have you briefed it like the other

20   three firms?

21             MS. MAZUR KRAEMER:  Yes, I have, Your Honor.  It's

22   a joint response to the second omnibus objection.

23             MR. FAIL:  Judge, it's Garrett Fail, just a quick

24   check of reality here.  Since January, we've resolved a

25   large number of the ones that were remaining, as we said we

Page 58

1   were going to.  Since January, Your Honor gave us the

2   discretion to continue to adjourn it where we thought it

3   would be productive for the Debtors.  Not necessarily -- not

4   productive for the parties that have insisted that it goes

5   forward.

6            We checked with the Creditors Committee, we've

7   checked with the administrative claims representative, who

8   have agreed with us and whose counsels are on the line

9   today.  We've demonstrated that there has been progress with

10  respect to this subgroup of claimants.

11           We've further demonstrated that we've not focused

12  solely on these creditors, but to address 80 percent of the

13  other creditors that are out there.

14           THE COURT:  Mr. Fail, I heard you earlier.

15           MR. FAIL:  Okay, and then the last --

16           THE COURT:  I'm just trying to figure out how many

17  people are involved here --

18           MR. FAIL:  Very few.

19           THE COURT:  -- it sounds like there are like eight

20  or ten.

21           MR. FAIL:  There's eight of them at most.  Our

22  records indicate, and we're checking, that -- and now I've

23  just gotten confirmation -- Orient Craft, Mr. Wander's

24  client, opted out.  The administrative claim motions that

25  are being filed recently are related to real estate and

Page 59

1    landlord claims where Transform is liable.  So, I don't

2    think there's anything wrong with any of the statements,

3    actually, that I made.  The new motions don't demonstrate

4    that there's people that have valid claims against us and I

5    don't think it's relevant at all to whether or not we

6    continue to adjourn.  At most, there's more work for us to

7    do -- nothing that helps Mr. Wander's client.

8                 THE COURT:  So, I guess the one other point --

9                 MR. WANDER:  Your Honor, if I may --

10                THE COURT:  No, no, let me just ask this question

11   first.  I wanted the Debtors to file their brief so that --

12                MR. FAIL:  We did.

13                THE COURT:  -- the lawyers involved here -- I

14   know, I know, and I wanted the lawyers involved here to

15   actually see both sides of the question, and their clients

16   could see both sides of the question and could analyze it in

17   the context of settlement negotiation.

18                Mr. Wander is right, there is a time, at some

19   point, when settlement negotiations stop because one side or

20   the other doesn't want to continue.  But at the same time,

21   if, in the meantime, people are not being prejudiced, and

22   the Debtors are actually using their time more efficiently,

23   I'm not sure why we should put this issue on the front

24   burner.

25                So, I guess the thing I'm most interested in at

Page 60

1    this point is how, if at all, other than wanting to have an

2    answer conclusively, which could hurt or help, there's

3    prejudice of this being adjourned -- not only today, which

4    it was, but say, from the May hearing, if the Debtors are at

5    a point there where, in consultation with various parties,

6    they think it should be adjourned.  We're at the prejudice,

7    that's really the issue I'm asking Mr. Wander.

8              MR. WANDER:  Yes, Your Honor, if I may defer just

9    now to counsel, Mr. Butterfield.  I know he wanted to

10   address you.

11             THE COURT:  Okay.

12             MR. WANDER:  And if he doesn't address this point,

13   which I think he will, then I will do that after he speaks.

14             THE COURT:  Okay.

15             MR. BUTTERFIELD:  Good morning, Your Honor.  For

16   the record, it's Ben Butterfield from Morrison & Foerster

17   for Icon Health and Fitness.  Your Honor, I just wanted to

18   address that point and also add a little bit to the comments

19   from Mr. Wander.

20             We understand that adjournments can be helpful,

21   that they can facilitate settlements, and we support that.

22   But what we don't think should be allowed is for a Debtor to

23   use adjournments defensively, right, defensively to pressure

24   creditors to settle.

25             And look, you know, I know that some creditors

Page 61

1    will complain about any delay, any adjournment.  And we

2    tried not to complain in this case.  But I think the Debtors

3    are starting to cross the line here.  They filed their tenth

4    omnibus objection last September.  They filed their eleventh

5    several months ago now.  The issue is fully briefed.

6    They've already filed a reply for the tenth; maybe they'll

7    file a reply for the eleventh, I don't know.  But otherwise,

8    it's fully briefed.

9            This is a discreet legal issue.  Like they said,

10   there's not that may admin creditors out there with this

11   issue that remain at this point; there's just a few of us.

12   And you know, the Debtors have given us a preliminary

13   settlement range and we are nowhere close.  We are nowhere

14   close.  And the Debtors don't disagree.

15           We gave them our estimate of it, they gave us

16   theirs and they said, look, I don't even think we can have a

17   settlement here.  We've never seen a settlement where the

18   divide is so great.  So, we think we have very strong

19   arguments.  There are dozens of cases on our side.  There's

20   not a single case on the Debtors' side that's going to win

21   on the merits --

22           THE COURT:  Can I interrupt you?

23           MR. BUTTERFIELD:  Yes, Your Honor, please.

24           THE COURT:  Are your clients preference targets?

25           MR. BUTTERFIELD:  They are.  So, we have an $8.5

Page 62

1    million disputed 503(b)(9) World Imports claim.  That's like

2    the disputed portion on World Imports.  Our preference

3    liability, you know, we've talked to the Debtors about it.

4    We think it's about $3 million.  And one of the concerns

5    here is that, like we have a reserve issue.  Like, we're not

6    sure -- I know that people are talking about there's going

7    to be a reserve, there's going to be a reserve, but where is

8    that in the confirmation order?

9            MR. FAIL:  This is not on for the agenda today.

10   What is this relevant for?  This is ---

11           THE COURT:  I'm just focusing on -- and this goes

12   to the prejudice point -- again, the Debtors have

13   represented that they're giving notice, and they've

14   discussed reserves.  I understand that the Debtors' decision

15   to adjourn today's hearing, which had been noticed on the

16   World Imports issue, came late.  What I want to focus on is

17   that I want to make sure that if they do the same thing -- I

18   forget when the next omnibus day is.  It's May …

19           MR. BUTTERFIELD:  May 14, Your Honor.

20           THE COURT:  May 14, well, that's not that far

21   away.  But if they do it before then, on, say, May 13, that

22   it's the right thing to do.  And to me, I'm not sure it

23   really matters unless there's real prejudice in terms of

24   money going out the door that would otherwise be spread

25   among parties.  And I'm not hearing that yet.

Page 63

1          MR. WANDER:  Judge, this is David Wander.  I'd

2     like to address the prejudice.

3          THE COURT:  Okay.

4          MR. WANDER:  The prejudice is to everyone because,

5     let's assume Your Honor rules against my client, then maybe

6     there shouldn't be a reserve, and there will be more money

7     to distribute.  Now, say Your Honor rules for my client,

8     then those funds aren't going to (indiscernible), they're

9     going to be distributed.

10          MR. FAIL:  No, they won't, in either case.  That's

11     not true, right?  We will not distribute after the final

12     order, number one and number two -- is Mr. Wander now giving

13     up his appellate rights if he loses?  That would be great if

14     he is.  But it doesn't seem to be the history of the case

15     that he has.  So, I just -- these arguments fall flat.

16          MR. WANDER:  Please don't interrupt me, because I

17     wasn't finished.  In addition, I'll address what Mr. Fail

18     brought up.  And this is another reason that goes to the

19     prejudice.  If Your Honor rules against my client and

20     others, we will appeal.  We may do a direct appeal to the

21     Second Circuit, whatever procedure is appropriate.  And this

22     is an issue that then will still have to be resolved with

23     millions of dollars in reserve if Your Honor rules for my

24     clients, and supports the World Imports decision.  It's

25     doubtful there would be an appeal.  And I'm just saying

Page 64

1   that.  I'm sure Mr. Fail will disagree, but as a practical

2   matter, a decision by Your Honor, together with the Third

3   Circuit, I think the Debtor would probably determine they

4   would then be wasting a state's resources.  So, there's the

5   prejudice, Your Honor.

6            To my other client, Pearl Global, that wants to

7   have more money distributed, it doesn't want to have a

8   reserve.  And to the other claimant, they don't want to have

9   a reserve.  That's the prejudice, Your Honor.

10           MR. FAIL:  Judge, one more time, now that Mr.

11  Wander is finished, I'm looking at the Orient Craft ballot.

12  They're both opt out.  So, there's no reserve whatsoever for

13  his clients' claims that will clog up anything and there's

14  no prejudice for his clients because they're not receiving

15  anything until the effective date of the plan.  So that's

16  that.

17           MR. BUTTERFIELD:  Your Honor, Ben Butterfield from

18  Morrison & Foerster.  Mr. Fail, are you representing that --

19  so, our client, Icon, opted in.  And our claim is -- the

20  disputed portion of our claim is $8.5 million and the full

21  amount is close to $10.  Are you representing that you will

22  be reserving for our client's claim, even though our client

23  is the subject of a preference demand, or a preference

24  complaint?

25           MR. FAIL:  I'm not making any representations

Page 65

1    because it's not on the agenda, and we haven't announced the

2    distribution.  So, the relevant parties haven't said

3    anything.  But disputed claims are acknowledged, they're

4    before the Court.  We'll address them.

5            There's no prejudice whatsoever.  We deal with the

6    Icon, and I haven't figured -- we haven't addressed the

7    preference setoff and we can and we will.  But you're

8    subject to a preference, so you won't receive a distribution

9    on a prepetition claim.  That may be litigable issue, but

10   it's another one that could be tied up for some time, that

11   doesn't result in a distribution going out the door.

12           MR. BUTTERFIELD:  Your Honor, Ben Butterfield from

13   MoFo.  So, look, I really think there's two issues here.

14   So, the first is, we're going to get jammed.  You know, we

15   filed our papers, we've been paying attention to the docket.

16   But what's going to happen is there's going to be a notice

17   of distribution and then we're going to get jammed because

18   our claim is not allowed yet.  But they're not going to

19   reserve for it.  They're not going to reserve for it.  And

20   the second thing is, every time --

21           MR. FAIL:  Not true.

22           MR. BUTTERFIELD:  -- we have these hearings, they

23   get put on the agenda and then they get adjourned two days

24   before the hearing.  And we spend time, we spend or clients'

25   money, we spend resources, we get distracted from our

Page 66

1    settlement negotiations, because we're trying to prepare for

2    a hearing and then it just disappears.  So, the start-stop

3    nature of this has become really burdensome.

4             MR. FAIL:  We'd love to kick it off indefinitely,

5    but what we've done is follow the Court's orders and waited

6    'til we see if it was still necessary and productive.  And

7    as we've settled with 25 percent of the remaining ones that

8    are relevant, and we're working to document it, we, the

9    Creditors Committee and the administrative claims

10   representative thought, in this circumstance, it did make

11   sense.

12            THE COURT:  Okay, I think -- you should adjourn

13   this to the June omnibus day and you should provide notice

14   if you intend to further adjourn it at least two weeks

15   before that date, and we'll have a discussion then as to

16   whether I'll grant that adjournment or not.

17            MR. FAIL:  Thank you, Your Honor.

18            MS. MAZUR KRAEMER:  Your Honor, if I may --

19            THE COURT:  They are very capable, counsel, here.

20   You've just highlighted about ten reasons why my ruling is

21   not going to be the driving factor in resolving these

22   claims, and you all know it, so you should deal with that.

23   If you don't, that's fine, I will decide it.  But it

24   shouldn't be driving the bus.

25            MR. HALPERIN:  Your Honor, it's Alan Halperin, if

1    I could ask one thing just relating back to the very

2    beginning of this topic.  Mr. Fail indicated that in terms

3    of notice on distributions, it was going to be ECF, as we

4    have been sort of dubbed as someone a little bit more

5    elevated in terms of priority and I don't want to see this

6    get lost in the mail, so to speak.  If we could get direct

7    notice email to our folks, I would be grateful.

8            THE COURT:  That's fine, as long as only one

9    attorney checks the ECF.  Yes, I will note there were three

10   people on this call, so, that's fine.  But you can take off

11   the number of people that are checking the ECF.

12           MS. MAZUR KRAEMER:  Your Honor, if I may.  Selene

13   Mazur Kraemer with Vir Ventures and AMI Ventures.  Just for

14   the purposes of the record, I did file a motion back in

15   February, in ECF 7331, for the other e-marketplace seller

16   counsel that are on the phone here, that did set forth all

17   of the things that they just said about a need to set aside

18   a reserve.  My client's claim was $885,000.  So, I just

19   wanted to note that for the record.

20           You did ask me to withdraw that motion, Your

21   Honor, which we did.  But again, the prejudice to my client

22   is they basically have run out of money to pay my counsel

23   fee and I think that's the same with all these other e-

24   marketplace sellers who have smaller claims, they've just

25   kind of given up because this issue has gone on for so long

Page 68

1    and so many months.

2            MR. FAIL:  Your Honor, if we're ready to move onto

3    the next item, I think the only thing to say with respect to

4    that last comment is I don't think that Ms. Kraemer's

5    clients have a World Imports issue.  I think they are the

6    marketplace issue, which is coming up right now; we believe

7    totally unrelated, but Your Honor will make that decision.

8            THE COURT:  Okay.

9            MR. FAIL:  The fourth item on the agenda is the

10   Debtors' second omnibus objection to proofs of claim.  The

11   Debtors filed this objection with respect to a number of

12   claims that were asserted as entitled to priority.  There

13   are six claimants that are contesting the objection, and

14   that we're moving forward with today.  Each assets claim

15   entitled to 503(b)(9) priority.

16           As we said in our objection, the Debtors did not

17   receive goods, which is a prima facie element to entitlement

18   to 503(b)(9).  Each of these parties, as set forth in our

19   response, which is filed on our reply at 7829, so I won't

20   belabor it, Your Honor.  Each of these parties sold goods to

21   non-debtors.  They marketed their goods through a Sears

22   marketplace website.

23           We're not contesting in this objection that Sears

24   may have owed them money as pass-through, but these aren't

25   even drop-ship cases.  These parties sold goods to other

Page 69

1    people.  The Debtors never purchased them like a drop ship

2    case where the Debtors buy goods and they're delivered

3    someplace else.

4           This is, as we cited in our reply, a step removed

5    from that.  The Debtors aren't these vendors' customers.

6    The Debtors didn't buy any goods from the vendors.  The

7    Debtors didn't receive any goods from these Debtors.  And

8    so, it's not a matter of does Sears owe these people money,

9    it's, are they entitled to priority.

10          We think the law is clear, priorities have to be

11   awarded strictly and narrowly.  And there's nothing in the

12   claim or the responses to the objection that entitled them

13   to priority.  There are other bases for entitlement to money

14   asserted in the replies.

15          At most, they're duplicative tort claims, which

16   would be duplicative to get money damages.  Those are

17   unsecured claim issues.  None of the allegations in the

18   responses elevate general unsecured claims to priority.

19   There's no overlap with World Imports, there's no overlap

20   with anything substantive with respect to 503(b)(9)

21   disputes.  This is plain, clear cut.  We didn't buy

22   anything.  We didn't get anything.  Full stop.  Happy to

23   answer any questions or address any responses.

24          THE COURT:  Okay.  I'm happy to hear from the

25   objectors now.

1          MS. MAZUR KRAEMER:  I'm sorry, Your Honor, did you

2     give us the floor there?

3          THE COURT:  Yes.

4          MS. MAZUR KRAEMER:  Okay, thank you.

5          THE COURT:  Each of the objectors should feel free

6     to...

7          MS. MAZUR KRAEMER:  Your Honor, we set forth our

8     response --

9          THE COURT:  I think I know who you are, but you

10    should just state it again for the record so we could be

11    absolutely sure.

12         MS. MAZUR KRAEMER:  Selene Mazur Kraemer on behalf

13    of Vir Ventures and AMI Ventures.  We pleaded, we briefed

14    this in our response that we filed back in, I think,

15    September.  We believe that -- and I apologize for the --

16    when they say World Imports issue -- we rely on World

17    Imports in our response, Your Honor, arguing that there was

18    constructive possession on behalf of the Debtor.

19         Our client is, again, an e-marketplace seller.

20    The customer buys, let's say, a treadmill online through the

21    Sears portal.  And my client fulfills that order.  Sears

22    tells us what to buy, Sears tells us where to ship it, and

23    we ship it.  We get paid only after we provide a proof of

24    delivery to Sears customers to Sears.  And we did all those

25    things, Your Honor, to the tune of $885,000 of goods that

Page 71

1    Sears then did not transfer to us, the customer funds which,

2    according to the agreement as we set forth in our papers,

3    was to be held as an agent for the purposes of returning

4    those customer funds, minus Sears' commission.

5           Your Honor, we would argue that, again,

6    constructive possession as a result of delivery to one of

7    the buyers of Sears agents, which would have been UPS or

8    FedEx, which was a shipper, Your Honor, or directly to Sears

9    customers.  That's our position, Your Honor, and I know with

10   respect to the definition of control -- I'm sorry, the

11   definition of constructive possession, relates to the amount

12   of control that Sears would have had in that kind of a

13   transaction.  And as we've set forth in our papers, that

14   sufficient control would have existed here and that,

15   therefore, my client should be allowed an administrative

16   claim for these 503(b)(9) claims.  That's it, Your Honor.

17   The rest of it we rest on it with our papers.

18          MR. FLAHAUT:  Your Honor, this is Doug Flahaut

19   from Arent Fox LLP on behalf of Sky Billiards.  I don't know

20   if the Court, sort of, wants to go down and take each of the

21   individual claims in order or whether now is the appropriate

22   time for me to weigh in on behalf of my client, Sky

23   Billiards.

24          THE COURT:  No, go ahead.  That's fine.

25          MR. FLAHAUT:  Thank you, Your Honor.  Again, Doug

Page 72

1    Flahaut from Arent Fox LLP on behalf of Sky Billiards.

2            Sky Billiards' claim here, and argument is

3    particularly unique, and I believe is different from the

4    other arguments made at this hearing.  I would note that

5    this second omnibus objection was filed in August of 2019

6    and has been continued unilaterally by the Debtor about

7    seven months, a number of times.  It is only now, during a

8    global pandemic when we can't get into the courthouse

9    physically that the debtor now decides to go forward with

10   this objection.  But, in any case, we are prepared to make

11   our arguments and proceed.

12           The first thing I want to put on the record and

13   raise before Your Honor is the fact that I don't see any

14   evidence in the record before Your Honor that Sears didn't

15   receive these goods.  If you look at the second omnibus

16   objection, you don't see any declaration in support of --

17           THE COURT:  Where is there evidence that you

18   delivered them?

19           MR. FLAHAUT:  Well, I'll get to that, Your Honor,

20   and I think it is in the record of that.  What there's

21   evidence of is we filed a proof of claim, which is prima

22   facie validity in amount of our claim, and in response to

23   the objection, we attached an email from a Sears account

24   executive stating that Sears received the goods and that we

25   should check the 503(b)(9) box.  And that moves to my

Page 73

1    estoppel argument, Your Honor, in the sense that we believe

2    that potentially it's a live issue as to whether Sears

3    received the goods or not.  I think you heard counsel before

4    me argue about that and there are going to be some disputes

5    about that.  I understand there has been, in the past, a lot

6    of disputes on the facts on these sorts of things as to what

7    constitutes receipt and what doesn't and that will be

8    litigated in due course, if need be.

9              But right now, you don't have any evidence in the

10   record that says Sears didn't receive the goods and I think

11   Sears bears the burden on objecting to our claim of

12   overcoming the prima facie evidence of the claim.  And so, I

13   just wanted to call into question the lack of evidence in

14   the Objection itself.

15             I believe we're here on what's known as, pursuant

16   to the objection proceedings, as a sufficiency hearing.  So,

17   we're looking to see whether there's enough evidence, it's

18   the same standard as a motion to dismiss for failure to

19   state a claim.  So, if my client has any plausible claim,

20   then this Objection needs to be overruled at this stage.

21   And I think -- what's that?

22             THE COURT:  Go ahead, I'm sorry.

23             MR. FLAHAUT:  Okay.  Well, I want to address the

24   Court's concerns, obviously.  Those are the most important

25   concerns, so if you have a particular question, I do want to

Page 74

1    address that.

2            THE COURT:  I'm trying to pull up your pleading to

3    look at the exhibit.

4            MR. FLAHAUT:  Sure.

5            THE COURT:  The client, again, is?

6            MR. FLAHAUT:  My client is Sky Billiards.

7            MR. FAIL:  It's Document 5421, Judge.

8            MR. FLAHAUT:  Yes, it's ECF Document 5421 and

9    this, again, was filed -- I apologize to the Court on the

10   shortness of these opposition papers, but we were trying to

11   resolve this consensually up until, sort of, the day before

12   it was due and then no further extension of the deadline was

13   granted.  So, we rushed to file at least a written

14   opposition.

15           MR. FAIL:  Judge, it's Garrett Fail from Weil

16   Gotshal for the Debtors.  5421-1 is the exhibit that counsel

17   seems to be referring to.  It doesn't say what counsel

18   suggests.  This is a generic email that says -- it doesn't

19   say that the Debtors received goods.  It says, claims for

20   amount -- it's an instruction on how to file the form

21   electronically.

22           THE COURT:  This is from --

23           MR. FLAHAUT:  If I may, Mr. Fail, I haven't

24   completed my argument.

25           THE COURT:  No, I'm just trying to locate it.

Page 75

1    This is from Shawn Zavsza, is that the email we're referring

2    to?

3          MR. FAIL:   That's what I'm (indiscernible), Your

4    Honor.

5          THE COURT:   Okay.   All right.   You can go ahead, I

6    just was trying --

7          MR. FLAHAUT:   Sure, and I'm sure Mr. Fail will

8    have an opportunity to state his position, but I'd like to

9    finish stating mine.

10          The email -- I think you've got it up now, this is

11   from Shawn Zavsza, the account executive.   And he

12   understands the relationship between the parties well and

13   this is post-petition, so this is after the filing of the

14   petition.   And so, he sends an email to my client, including

15   instructions for filing a claim and also says there that you

16   want to use "yes" for question 13 and include that as well.

17          Now, if you look at question 13 on the proof of

18   claim form, it spells out specifically.   It says, this is

19   the amount of goods received by the Debtor within 20 days of

20   the Petition.   So, I believe that Mr. Zavsza here is telling

21   my client, or acknowledging to my client, that he has

22   received these goods.   Now, he may be, in hindsight,

23   incorrect, whether there's going to be litigation about

24   this.   But --

25          THE COURT:   But do you have -- I'm sorry -- do you

1    have any evidence that they were actually -- the issue here

2    is whether they were physically delivered to Sears or Bailey

3    or agent for Sears.  Do you have any evidence of that?

4              MR. FLAHAUT:  I do not on the record, Your Honor,

5    and I don't know if I do outside of the record.

6              THE COURT:  Okay.  So, it appears to me that the

7    argument you're making, based on this email, is simply that

8    an employee of Sears acknowledged that you had a claim for

9    goods delivered.  Not that they actually were delivered,

10   right?  So it's more of an estoppel argument or a waiver or

11   a contract argument than a proof that they were actually

12   delivered.

13             MR. FLAHAUT:  It is certainly an estoppel

14   argument, Your Honor.  I think the initial point I was

15   making at the beginning about the lack of evidence in

16   opposition was just highlighting -- and I don't -- I'm

17   admitted pro hac vice here, so I don't practice in front of

18   your Court, Your Honor, very often.  But I was somewhat

19   surprised that the objection of this magnitude did not have

20   any evidence, any declaration, anybody from Sears saying, I

21   never received the goods, for example, which would

22   presumably be necessary to overcome the prima facie validity

23   and amount of my client's claim.  But yes, Your Honor --

24             THE COURT:  Each one says they have not been

25   received.  I'm looking at the omnibus objection now.

Page 77

1           MR. FLAHAUT:  Yes.  They say it in the pleading,

2    Your Honor.  The lawyers say it, but I don't see a

3    declaration from anybody that would put that into evidence

4    and perhaps that's an offer of proof that's sufficient to

5    Your Honor.  But yes, the crux of my client's argument -- I

6    think the strongest argument for my client, and what makes

7    my client unique and different from the other parties in

8    this same boat here, is the estoppel argument.

9           Your Honor hit it on the head, I think that we

10   relied -- my client relied on the account executive stating

11   that they did receive the goods.  Whether they did or not,

12   we relied on that and on the prospect that we would be paid

13   a priority on that claim and in reliance, what we didn't do

14   is, we didn't aggressively pursue, perhaps, constructive

15   trust arguments, other arguments that can be made in these

16   sorts of situations, chasing the money or aggressively

17   pursue the kind of critical vendor preferential treatment

18   that sometimes you can get in these sorts of situations.

19   Because my client was lulled, I suppose, into believing that

20   he would be -- have a valid 503(b)(9) claim.  And it's only

21   now, way after the fact, that the Debtor, the same entity

22   that essentially, in my view, acknowledged receipt of these

23   goods for purposes of 503(b)(9) back in November, now

24   objects to it.  And I think that's the issue where they

25   can't really blow hot or cold on these facts.

1           MS. KRAEMER:  Your Honor, if I may, Salene Mazur

2      Kraemer.  We are in that same exact boat and now that

3      counsel --

4           THE COURT:  Ma'am, I've already ruled on your

5      constructive trust claim.

6           MS. KRAEMER:  Yeah.  I just wanted to say we're in

7      the same boat with respect to the representations by the

8      Debtor right at the filing of the case.  And we did submit

9      those emails in the adversary proceeding where the Debtor

10     directed our client to go ahead and check that box.

11          THE COURT:  Are they part of your opposition --

12     are they part of your opposition to the claim objection?

13          MS. KRAEMER:  Yes, I believe they are, Your Honor.

14     I'll have to double check that.  I believe we did put that -

15     - actually, I'm not -- I believe we did.  I can double

16     check.  I know for sure we put it in our Complaint and the

17     adversary proceeding.  I need to pull that up, Your Honor.

18          THE COURT:  No, don't pull up the adversary

19     proceeding.  That's not --

20          MR. FLAHAUT:  Just to complete it and then I'll

21     cede the floor, Your Honor, if I may.  This is Doug Flahaut

22     again from Arent Fox LLP.  I -- So, Your Honor has focused

23     on the estoppel argument, I think, correctly.  I would note

24     again that the opposition was not the kind of detailed

25     points and authorities that I typically would like to give a

Page 79

1    Court on the estoppel issue because it was hastily put

2    together on the last day after I realized no further

3    extension was going to be granted.

4           Looking at the reply, I have reviewed the Debtors'

5    discussion of the estoppel argument and I think there are

6    some issues with it.  The first is that I'm not sure the

7    Debtor really has the correct estoppel standard in the sense

8    that, I think there's federal estoppel and also estoppel

9    under state law and I believe the standards are different.

10   In my review of the Debtors' reply, I think, reading those

11   cases, are that some of them were applying state law

12   estoppel -- the state law estoppel standard whereas, I

13   believe, this would be a federal estoppel standard applied

14   in this case.  And the Second Circuit case of Kosakow v. New

15   Rochelle Radiology, that's 274 F.3d 706 (2d Cir. 2001),

16   states the federal law standard, which has three factors,

17   not four like the Debtor put in their reply.  It says, under

18   federal law -- this is a quote, "Under federal law, a party

19   may be estopped from pursuing a claim or defense where (1)

20   the party to be estopped makes a misrepresentation of fact

21   to the other party with reason to believe the other party

22   will rely on it, (2) the other party reasonably relies upon

23   it, (3) to her detriment."  And I think we --

24          THE COURT:  But the reasonable reliance issue is

25   the real issue here.  I mean, the goods had already been

Page 80

1    shipped, right?

2            MR. FLAHAUT:  The goods had been shipped.  The

3    reliance aspect of it, Your Honor, is that we relied on it

4    by not seeking to recover our money through other

5    mechanisms, which we believe would, potentially, have been -

6    -

7            THE COURT:  But, there's no segregation of the

8    money, right?

9            MR. FLAHAUT:  We don't know.  Certainly not now.

10           THE COURT:  No, no.  I mean, under the parties'

11   agreement.

12           MR. FLAHAUT:  I do not know, Your Honor.  I do not

13   have the Agreement in front of me.  I don't believe it was

14   put in the record in connection with the objection to this

15   claim.

16           THE COURT:  No, but you're the one arguing

17   estoppel.

18           MR. FLAHAUT:  Right.  Well, and I can tell you

19   that we would -- that my client has informed me, and I

20   believe they are correct on this, that they would have

21   pursued recovery of these monies differently and more

22   aggressively if they had not been lulled into believing that

23   they had a 503(b)(9) claim for the goods with it shipped

24   within 20 days.

25           THE COURT:  Well, that could just have meant,

Page 81

1    though, that they would have spun their wheels.  Just as VMI

2    did in making a constructive trust argument, which I ruled

3    on, they had no basis for, and it wasn't just based on the

4    inability to trade.

5              And then secondly, as far as the critical vendor

6    point is concerned, it's not based on pressure from the

7    other party, it's based on an analysis of a number of

8    factors that -- I just -- I'm quite skeptical that if one's

9    talking about burden here, that somehow, you've carried your

10   burden on estoppel.

11             MR. FLAHAUT:  Well remember, Your Honor, it's the

12   Debtor carrying the burden.  We've got burdens of proof

13   here.  Only --

14             THE COURT:  I'm sorry, sir.  If you cannot, in

15   good faith, tell me that the goods were physically

16   delivered, then they have rebutted that issue.

17             MR. FLAHAUT:  Okay.

18             THE COURT:  I mean, come on, this email doesn't

19   say anything acknowledging physical delivery of goods.

20             MR. FLAHAUT:  Correct, Your Honor.  It only says

21   that the goods had been delivered sufficiently for 503(b)(9)

22   under the proof of claim --

23             THE COURT:  No, it doesn't say that either.  But

24   it certainly doesn't talk about physical delivery or

25   delivery to an agent or a bailee.  And that's what the basis

Page 82

1   for the objection is and, you know what, I could adjourn

2   this, but you're going to have to amend your claim or

3   actually show me that there was physically delivered before

4   we even think about convening another hearing.

5           MR. FLAHAUT:  Well, Your Honor, obviously we've

6   been -- we're trying to work out a consensual deal with this

7   Debtor for months now and if a continued hearing would allow

8   us time to discuss the matter, I would certainly take that

9   from the Court.

10          THE COURT:  Okay.  I'm fine with that.  I really

11  don't think you've carried your burden on estoppel, which

12  really is your burden here, such as not part of the claim

13  and -- I mean, it's not alleged anywhere.

14          MR. FAIL:  Your Honor, even if it was alleged, it

15  doesn't give priority.  We're not saying, again, we're not

16  challenging --

17          THE COURT:  Look, I'm going to give you all my

18  ruling, which, just as a preference is that physical

19  delivery or delivery to a bailee or an agent for delivery,

20  at least has to be shown here.  So, they know that, (a) and

21  (b), as far as whether they can show physical delivery or

22  not, they also know that they're going to be wasting their

23  time if they can't do that.

24          And as far as estoppel is concerned, I think you

25  can tell that I think it's a very slim reed.  So, I don't

Page 83

1   see any reason not to adjourn it so that you can try to

2   resolve this without further litigation.  I mean, the

3   estoppel point here is one where, under either standard,

4   reliance is key, and the notion that they would have pursued

5   some other avenue in the case given their rights, I think is

6   highly questionable.  But we don't have their agreement and

7   let's just leave it at that.

8           So, going back to Ms. Kraemer's matter, your

9   pleading did not include any emails on it.

10          MS. KRAEMER:  Your Honor, no, it was in the

11   Constructive Trust Complaint, Your Honor.

12          THE COURT:  Right, okay.  Which I dismissed.  So,

13   are any of the other objections, counsel, wanting to go

14   forward and speak?

15          MR. WANDER:  Yes, Your Honor.  This is David

16   Wander of Davidoff Hutcher & Citron, counsel for Stolaas

17   Company, if I may be heard.

18          THE COURT:  Sure.

19          MR. WANDER:  Your Honor, first, in a nutshell, my

20   client has an equitable estoppel argument.  Stolaas provided

21   goods for the Debtors for approximately seven years through

22   the Sears Marketplace beginning in about 2011.

23          Historically, the Debtors paid Stolaas daily --

24   this is a very important point -- with direct payments to

25   Stolaas' bank account with a 14-day lag, which represented

Page 84

1   the credit terms.  Several months prior to the Debtors'

2   bankruptcy filing, these payments stopped, but Sears kept

3   reporting the goods delivered by Stolaas as having been

4   paid, meaning Sears collected the money.

5           Numerous emails sent by Sears to Stolaas claimed

6   that Sears deposited funds into Stolaas' account as payment

7   for the goods delivered when, in fact, those deposits were

8   never made.  Attached to the response by Stolaas are

9   numerous emails showing the fraud that was perpetrated.

10          Now because my client was told that these were

11  computer errors, my client kept delivering the goods.  Now

12  it's important here -- if Sears generated falsified

13  remittance reports showing non-existent deposits into

14  Stolaas' account with fictious EFT numbers, while no

15  payments were made after the Sears EFT date of September 11,

16  2018, remittance reports continued populating on the Sears

17  website stating that the deposits were being regularly made

18  on September 12th, 13th, 14th, 17th, 19th, etc., all the way

19  through October 9th, less than one week before the

20  bankruptcy filing.  The total amount of the fictitious

21  deposits reflected on the Sears remittance reports is

22  $104,605.00.

23          Now, in various emails during this period, Sears

24  claimed that the delays in payment were due to computer

25  problems.  In addition, during this time, there were some

Page 85

1    payments that were received by my client which induced my

2    client to continue shipping goods.  It was not until after

3    Sears filed for bankruptcy that Stolaas realized that a

4    fraudulent scheme had been in place to induce Stolaas to

5    continue shipping goods to Sears, including during the 20

6    days leading up to the bankruptcy filing.

7            Had Sears not induced Stolaas to continue shipping

8    goods that were sold in the Sears Marketplace with falsified

9    remittance reports and fraudulent emails, Stolaas would have

10   stopped delivering goods.  Based on the facts and equitable

11   principles, the goods sold by Stolaas should be considered

12   to have been delivered by the Debtors.  Now, Judge --

13           THE COURT:  Why?  Why?  I don't understand.  Why?

14   You mean delivered to the Debtors?

15           MR. WANDER:  Correct.  What we're saying is --

16           THE COURT:  But on what grounds?  They weren't.

17           MR. WANDER:  So, it's the estoppel defense.  It's

18   the equitable estoppel should bar the Debtors from raising

19   the defense that the goods were not delivered to the Debtors

20   or received by the Debtors.  Because, Your Honor, the Estate

21   received a windfall through the fraudulent conduct of the

22   Debtors' pre-petition.  Had they not fraudulently induced my

23   client to continue shipping goods, the Estate would not have

24   had that cash on hand when they filed for bankruptcy.  Now -

25   -

Page 86

1              THE COURT:  But Mr. Wander, that -- I mean, let's

2       just assume that instead of -- I'm assuming, for purposes of

3       this hearing, that your allegations of fraud are accurate,

4       okay?  For purposes of this hearing, because the focus of

5       this hearing is just on the administrative expense under

6       503(b)(9).  So, let's say, instead of keeping the money, it

7       actually -- one of its agents went to your client's office

8       and robbed the money.  As far as Sears is concerned, that

9       would just be a pre-petition claim.

10             MR. WANDER:  Your Honor, so, had an employee of

11      Sears robbed my client, the estate would not have gotten

12      those funds and I would agree, my client would --

13             THE COURT:  All right.  Let's say he gave the

14      money to Sears.  It has nothing to do with 503(b)(9).  It's

15      just a pre-petition forge claim.

16             MR. WANDER:  Yes, I'll tell you why it does, Your

17      Honor.  Because this was not a robbery, this was a

18      fraudulent scheme to induce my client to ship goods so the

19      debtor could load up on inventory and load up on cash going

20      into the bankruptcy.  Now, Your Honor, the same thing

21      happened after the Transform sale.  Now, this is --

22             THE COURT:  Mr. Wander, do you have any caselaw

23      even remotely on point on this issue?

24             MR. WANDER:  The caselaw on equitable estoppel,

25      which counsel for Sky Billiards mentioned before and which

Page 87

1   was the discussion, okay --

2          THE COURT:  So, the answer is no.  This objection

3   is granted.  This is a pre-petition tort that is alleged in

4   the objection.  Pre-petition torts to the extent it's

5   proven, and that's not the issue for today, are pre-petition

6   claims.  There's absolutely no basis for estoppel here.

7   There was no delivery and I'm sorry, Mr. Wander, there's a

8   point where creative law just has to stop, and you've

9   reached that point here.  There is no estoppel here.  There

10  is no estoppel alleged in the claim, there are no cases

11  cited, and there's a good reason for that.  None could be.

12          MR. WANDER:  Well, Your Honor --

13          THE COURT:  503(b)(9) is a specific provision and

14  the elements of that provision are not shown here, there's

15  no representation that even ties into rights under 503(b)(9)

16  that were somehow not asserted and consequently, there was

17  reliance on something where those rights were not asserted.

18  Moreover, the failure to assert those rights in light of the

19  misrepresentations that you've alleged, would not have been

20  replaced by any post-petition rights that your client would

21  have had, such as the billiard company asserted, oh, we

22  would have, instead, asserted a constructive trust or, oh,

23  you would have asserted a critical vendor point.  Just not

24  the case here.

25          Your client, as you said, became aware of this

Page 88

1    pre-petition.  So, enough.

2              MR. WANDER:  No, that's not --

3              THE COURT:  This objection is granted.  This

4    objection is granted.  This is not a priority claim.

5              MR. WANDER:  Your Honor, could I just address the

6    comment?

7              THE COURT:  Very briefly.

8              MR. WANDER:  In paragraph 12 of Stolaas' response,

9    it says, Stolaas reserves its right to amend its response to

10   include additional arguments in support of its

11   administrative claim.  Additionally, Stolaas reserves its

12   right to file a response to any reply filed by the debtors.

13   Because the debtors' claim objection fails to include any

14   facts or law, Stolaas can only guess what grounds underlies

15   the debtors' claim objection.

16             The reason there was no caselaw in this, is

17   because there was no caselaw or even mention of the Sears

18   Marketplace in the debtors' initial objection.  All it said

19   in the debtors' objection was that, according to the

20   debtors' books and records or review of the debtors'

21   records, reveals that the goods were not delivered within 20

22   days.  Period.  Nothing about Sears --

23             THE COURT:  But that's not disputed, right?  You

24   don't dispute that, do you?

25             MR. WANDER:  Well, in the reply by the debtors,

Page 89

1    Your Honor, in the reply, where I believe they

2    mischaracterize Stolaas' claim as a fraudulent inducement

3    claim instead of that is supporting the 503(b)(9) claim, the

4    debtors said in paragraph 20, courts generally do not

5    consider arguments that are raised for the first time --

6            THE COURT:  No, I'm not relying on that.  I'm

7    relying on what you just told me.  I'm relying on what you

8    just told me and what you just told me doesn't hold water.

9    I'm sorry.  It's undisputed that the debtors' assertion that

10   the goods were not physically delivered or delivered to a

11   bailee or an agent for receipt of the goods, that's

12   undisputed.  And what the claim is based on is a series of

13   alleged fraudulent representations to your client pre-

14   petition.  And the two don't -- that may give rise to a

15   claim, but it doesn't give rise to a claim under 503(b)(9),

16   which is what the claim is for.

17           So, I don't care whether you didn't raise it or

18   did raise it, it's just not going to fly.  So, I'm granting

19   this objection without prejudice to any claim that you've

20   asserted on a pre-petition basis or in a timely manner.

21           MR. FAIL:  Thanks, Your Honor.  For the record,

22   again, Garrett Fail from Weil for the Debtors.  So, does

23   that cover -- hopefully that covers every claim that's going

24   forward today based on --

25           THE COURT:  Well, I don't know.  There were -- I

Page 90

1    think there were --

2              MR. FAIL:  We could hear from others.  I would

3    just also, for the record --

4              THE COURT:  There were some responses from

5    companies that I have not yet heard from.

6              MR. FAIL:  That's fine.  We can -- and we should

7    consider to make -- we should go forward to make sure

8    everyone's heard.  I would just, again, point the Court to

9    Section 503(b)(9), which requires that value of goods

10   received by the Debtor for goods that have been sold to the

11   Debtor in the ordinary course.

12             Our argument, and it's undisputed thus far, is not

13   only was there no receipt, but goods under this Marketplace

14   Agreement were not sold to the Debtors, they were sold to

15   third party customers.  Nothing, so far, has contested that

16   fact and nothing in 503(b)(9), as Your Honor said, gives

17   priority for other tort causes of action.  So, even if

18   they're right, as Your Honor is accepting for purposes today

19   and as we did, but not for any other reason, there's no

20   503(b)(9) priority.  We're happy to continue to look into

21   other -- the other parties and make sure that we could go

22   forward and get rid of all these claims.

23             THE COURT:  Is there anyone else on the phone who

24   wants to address or speak on behalf of any of the

25   objections?

Page 91

1           MS. KRAEMER:  Your Honor, Salene Kraemer again.

2   Can you just -- for purposes of me being able to explain to

3   my client, so, how is the comity carrier not an agent of the

4   Debtor --

5           THE COURT:  I will give you a ruling, ma'am, but

6   your own paper says that Sears was the agent for the

7   plaintiff, so, I think you should point that out to them.

8           But, is there anyone else on the phone on this

9   matter?  All right.

10          I have before me the debtors' second omnibus

11  objection to asserted claims under Section 503(b)(9) of the

12  Bankruptcy Code, which creates a statutory priority

13  notwithstanding, unlike all of the other statutory

14  priorities -- well, maybe a couple of exceptions in 503(b)

15  of the Bankruptcy Code -- creates an administrative expense

16  with respect to pre-petition obligations as with any

17  administrative expense as stated by the court in the Howard

18  Delivery Service case.  Administrative expenses, including

19  under 503(b)(9), take away from the normal priority scheme

20  of the Bankruptcy Code and unless there is any other strong

21  policy arguing to the contrary, should be read narrowly.

22          503(b)(9) of the Bankruptcy Code says that there

23  shall be an allowed administrative expense for, "the value

24  of any goods received by the debtor within 20 days before

25  the date of commencement of the case under this title in

Page 92

1     which the goods have been sold to the debtor in the ordinary

2     course of such debtor's business.."

3           The objectors here, including those who have had

4     counsel speaking at today's hearing, are participants or

5     were participants in the Sears Marketplace selling activity

6     whereby, on the Sears internet site, they sold goods to

7     customers with payment to Sears.  The goods were delivered

8     to the customers and were never delivered to the debtor or

9     sold to the debtor.

10          By the plain terms of Section 503(b)(9),

11    therefore, they would not be entitled to a statutory

12    priority.  This argument has never been directly made in the

13    context of a Marketplace Agreement like this, although it

14    has been closely addressed before in ADI Liquidation, Inc.

15    572 B.R. 543-544 (Bankr. D. Del. 2017) and generally

16    speaking, the requirement for physical delivery or, at a

17    minimum, constructive possession through an agent or bailee,

18    in numerous cases, including In re O.W. Bunker Holding North

19    America, Inc. 607 B.R. 32, 43-44 (Bankr. D. Conn 2019) and,

20    In re SRC Liquidation, Inc. from the District Court of

21    Delaware 573 B.R. 537, 542 (Bankr. D. Del. 2017).

22          The objection did not dispute that there was not

23    physical delivery of the goods to the debtor or sale of the

24    goods to the debtor, but rather have raised arguments to the

25    effect that the debtor nevertheless should be charged with

1    having received the goods on various theories, one of which

2    comport with the statutes, including, as asserted by VIR,

3    AMI that Sears was the agent for the claimants, not having

4    any agency relationship where its agent received the goods.

5             Although it has also been argued by the same

6    creditor that the shipping service, whether it was UPS,

7    FedEx or some other service, was Sears' agent,

8    notwithstanding the lack of any proof or assertion that such

9    shipper had a relationship with Sears as opposed to the

10   claimant.  In any event, the statute's plain language simply

11   hasn't been satisfied and the statutory priority therefor

12   should not lie.

13            As far as the arguments regarding estoppel are

14   concerned, that the debtor may have engaged in some form of

15   tort or misconduct pre-petition that induced a claimant to

16   ship goods pre-petition, does not give rise to a post-

17   petition claim for estoppel and clearly does not do so under

18   Section 503(b)(9).  The representations alleged by Stolaas

19   do not affect the 503(b)(9) nature of the claim.

20            As far as Sky Billiards is concerned, there was a

21   post-petition communication that arguably could give rise to

22   an estoppel argument on a post-petition basis.  However,

23   when one examines the email, it is not an acknowledgment of

24   a claim that could reasonably be relied on as to the nature

25   of the claim, although it may have misled or caused the

Page 94

1    claimant to rely on the assertion of the claim holding up.

2            But whether that reliance was the cause of any

3    harm remains to be seen and, as I said during oral argument,

4    I'm skeptical that it could be shown.  It would be need to

5    be based upon some theory that some right had been lost to a

6    priority or to a specific 100 percent payment, both of which

7    I'm quite skeptical about, but I'm prepared to adjourn based

8    on my review, if it comes, of a supplement to the claim that

9    would credibly make such an argument.

10           As far as the other objections are concerned, the

11   delivery argument is key and has not been addressed

12   sufficiently to overcome the debtors' objection.  So, I will

13   grant the objection as to all claims except Sky Billiards

14   and I will adjourn the hearing on that provided that Sky

15   Billiards sufficiently amends its claim at least 14 days

16   before the hearing.  So that probably means the hearing

17   would be adjourned to June.  But if you can get it in before

18   then, then I'll hear it in May.

19           MR. FLAHAUT:  Your Honor, this is Doug Flahaut

20   from Arent Fox on behalf of Sky Billiards.  I would probably

21   prefer the June date just to allow --

22           THE COURT:  That's fine.  It's up to you.  I'm

23   just saying I'm giving you the choice.  But I'll look for an

24   order from the debtors otherwise granting the claim

25   objection, which, again, is solely as to the priority nature

1    of these claims pursuant to 503(b)(9) of the Bankruptcy

2    Code.  And you can, obviously, from the schedule, leave out

3    Sky Billiards and reference the adjourn date in the order.

4              MR. FAIL:  Thank you, Your Honor.  This is Garrett

5    Fail from Weil Gotshal on behalf of the Debtors.  We'll

6    submit an order in accordance with the Court's direction.

7    We appreciate your time this morning on these claims

8    matters.

9              The next item on the agenda -- oh, go ahead --

10   will be handled by my colleague and partner, Jackie Marcus.

11             MS. MARCUS:  Hi.  Good afternoon, Your Honor,

12   Jacqueline Marcus on behalf of Sears Holdings Corporation.

13             This is the motion of Santa Rosa Mall and as

14   you'll recall, Your Honor, at the February 24th hearing, you

15   had granted Santa Rosa Mall additional time to file a

16   supplemental briefing.  I don't know how you'd like to move

17   forward this afternoon.

18             THE COURT:  Well, I've reviewed those briefs and

19   so you all should assume that, which are Santa Rosa's

20   briefs, the debtors' reply and Santa Rosa's response to

21   that.  I guess I'm happy to hear from Santa Rosa's counsel

22   at this point.

23             MR. RIOS:  Thank you, Your Honor.  My name is

24   Carlos Rios.  I'm one of the attorneys for Santa Rosa Mall

25   and with me are attorney Sonia Colon and Gustavo Chico.  I

Page 96

1    will address the issues concerning the memorandum of

2    insurance.  If it relates to other matters, then either

3    Sonia Colon or Gustavo Chico will address those issues.

4              THE COURT:  Okay.

5              MR. RIOS:  The first thing that I'd like to say,

6    Your Honor, is that the classic example of first party

7    insurance is property insurance.  That's what this case is

8    all about and that's what we discussed in our memorandum of

9    insurance.  The right to be insured in the Sears policy

10   arises from the lease contract.

11             We cited Section 601, we called for Sears to

12   provide insurance for the benefit of landlord and tenant

13   with respect to the demised premise, which works as the

14   respective interest may appear, which is the standard

15   language used.

16             Accordingly, the insurance contract included Santa

17   Rosa as an additional named insured and that appears, Your

18   Honor, in the first page of the insurance contract where the

19   insured is defined.  And it's defined as follows, it

20   mentions Sears and its affiliates, without mentioning the

21   name of Santa Rosa, yet its name was clearly implied when it

22   said, any other party for which the insured has the

23   responsibility for providing insurance and as their

24   respective interest may appear.  I covered that in our

25   memorandum at pages 3, 6, 4, 19 and 28, with cases, and

Page 97

1    juris prudence and authorities.

2            The objective of first party indemnity is to

3    fulfill the insured reasonable expectations.  That objective

4    comports with the classic function of the contract theory

5    and contract remedies to fulfill the reasonable expectations

6    of the contracted parties.  The underwriters know this and

7    also were aware of Santa Rosa insurable interest in the

8    property because Santa Rosa was implied in the policy.

9            Furthermore, the damages occurred in September

10   2017.  The case was settled in January 2018.  That's 16

11   months after.  The underwriters had plenty of time before

12   paying Sears to find out who the other insureds were, but

13   they did not.  An insurance company cannot ignore a party

14   insured because another party insured tells them otherwise.

15   We cited cases.  You end up paying twice when you do that.

16   We also mentioned that in the Memorandum.  Furthermore --

17           THE COURT:  I'm sorry.  Could I interrupt you?

18           MR. RIOS:  Of course.

19           THE COURT:  The only cases I see -- really, the

20   only case I see is the Farmers case from Texas.

21           MR. RIOS:  Yes.

22           THE COURT:  And it is not clear to me that that

23   stands for the proposition that the insurer paid twice.

24   What support do you have for that?  Maybe I missed it.

25   Because let me back up for a second, and maybe I should have

1    done this at the start of the hearing, and I apologize for

2    not having done it.  The reason I asked Santa Rosa to brief

3    whether it has a direct right against the insurer was

4    whether that right was somehow separate from the policies.

5    And the reason for that is that under the settlement and

6    release agreement between Sears and the underwriters, Sears

7    represented that, in paragraph 4, this agreement resolves

8    all claims for the applicable policy period, including any

9    and all claims that Releasor or any other party made, could

10   have made or could make in the future under the policies for

11   the hurricane loss.  And then paragraph 5 states release of

12   further warrant that Releasor is the only party of interest

13   with regard to the hurricane loss.

14          So, the Debtors have argued that this has already

15   been dealt with and any attempt by Santa Rosa to go against

16   the underwriters at this point would immediately give rise

17   to liability under paragraphs 4 and 5 and then, of course, 6

18   is the hold harmless provision for paragraph 4 and 5.  And T

19   the prior hearing that we had, I said that I understand or I

20   thought that Santa Rosa was making an argument that it had a

21   direct right against the insurers not grounded on the

22   policies.  And you put it quite clearly just now.  It would

23   in essence mean that the insureds would have to pay twice

24   because they have a separate, an independent duty.  Not just

25   a right under -- not just that the policy gave the mall the

Page 99

1    right to be paid the money based on the policy itself.  And

2    frankly, that's how I read the Farmers case, the latter

3    scenario.

4              So, do you have any authorities for the

5    proposition that the insurers have to pay twice, separate

6    and apart from the policy, they have an obligation not to

7    have paid the money out to Sears?

8              MR. RIOS:  We cited a case.  It's a Puerto Rico

9    case, I don't have the case right in front of me, but it's a

10   Puerto Rico case that involved a flood damage and they paid

11   the wrong person.  So, the issue was resolved against the

12   claimant because there was no insurance.  There had been a

13   misrepresentation that had been made in the policy and as a

14   consequence of that the claimant could not collect.

15             In our case, Your Honor, the underwriters cannot

16   claim that they didn't know that Santa Rosa was an

17   additional insured because they appointed, they authorized

18   Aon to issue the certificates, they authorized Aon, as their

19   agent, to keep all the documents, all the records.  So, the

20   underwriters knew or should have known --

21             THE COURT:  But that case is distinguishable

22   because the insurer paid someone that wasn't a named insured

23   whereas Sears was a named insured.

24             MS. MARCUS:  And Your Honor, if I may interject.

25   This is Jacqueline Marcus.

Page 100

1             MR. RIOS:  The decision not to pay -- are you

2     talking about the Texas case, Your Honor?

3             THE COURT:  No, no.  I'm talking about the one you

4     just summarized for me.

5             MR. RIOS:  Yes, the one I summarized, the

6     claimant's claim was denied because of the -- because the

7     insured made -- represented some facts that under the

8     federal law -- under the Flawed Insurance Act, they were --

9     the policy was null and void.  But allow me, sir, to go back

10    to the original issue here.  My client has a separate and

11    distinct action against the underwriter, which does not

12    depend on the -- upon the -- Sears or Debtors.  Debtors --

13            THE COURT:  I'm sorry.  Let me -- this is the key

14    point.  How does that action not depend upon the policy

15    itself?

16            MR. RIOS:  Well, it depends upon the policy, of

17    course, because if you don't have an insurable interest, you

18    cannot claim on the policy.  Both parties here, Sears and

19    Santa Rosa, had an insurable interest on the insurance

20    policy.  So, consequently, they are both first party insured

21    and they have a direct action against the insured -- I mean,

22    insurance company.

23            THE COURT:  Except the insurance company's already

24    paid to the other insured.

25            MR. RIOS:  Well, the insurance company should have

Page 101

1   paid the amount that Sears was entitled to receive as its

2   interest may appear.  Now, if they went beyond that and they

3   paid in excess of the interest that Sears had, well, they

4   have to pay twice.  But, I'm --

5          MS. MARCUS:  Your Honor --

6          THE COURT:  Hold on Ms. Marcus for a second.  But

7   aren't you just assuming that?  I mean, I don't -- I don't -

8   -

9          MR. RIOS:  I don't have any other way to know,

10  Your Honor, because we --

11         THE COURT:  No, but how would it be in excess, as

12  their interest may appear?  That's where I'm having a hard

13  time --

14         MR. RIOS:  Of course.  Of course.  The policy

15  itself describes what -- how is the payment distributed in

16  the case of a lessor, in the case of a mortgagor.  I mean,

17  this insurance policy was made to protect Sears.  That's why

18  they have this blanket named insured.

19         THE COURT:  I'm sorry.  Where does it say that?

20         MR. RIOS:  In the policy.

21         THE COURT:  But, I mean, I don't -- I guess --

22         MR. RIOS:  I didn't mention that in the

23  Memorandum, Your Honor, but the policy --

24         THE COURT:  I know.

25         MR. RIOS:  -- makes reference to mortgagors and

Page 102

1    makes reference to lessors and lessees.

2              THE COURT:  First of all, I guess I have two

3    points, two questions.  The Memorandum says, citing the one

4    case, I think, the Farmers case, Farmers Insurance Exchange

5    v. Nelson 479 S.W.2d 717, 721 and there are some other cases

6    in that case that are cited, (Tex.Civ.App. 1972), for the

7    proposition that once the insurer becomes aware of an

8    agreement to include a loss payee under the terms of

9    insurance policy, the duty rests upon the insurer to treat

10   the proceeds of the policy as though such a provision was

11   written into the policy.  And the argument is made that

12   there was sufficient disclosure in the policy, along with

13   the certificate, so that the underwriters would know that it

14   would include, although not specifically identified, Santa

15   Rosa as a landlord.

16             MR. RIOS:  Yes.

17             THE COURT:  But Sears also is the beneficiary of

18   the policy and I don't see anything to show that the insurer

19   is liable for having paid Sears as opposed to Santa Rosa.

20   And I don't see how there's a direct action against the

21   landlord having already paid Sears.

22             MR. RIOS:  Your Honor, the issue here is clearly

23   stated in the definition of the additional insured.  When it

24   says, as their respective interest may appear.  Let's say

25   that a landlord is included in the policy, its name and

Page 103

1    everything in the policy.  The landlord sells the property

2    to another person.  The landlord that is included in the

3    policy has no insurable interest in the property, so he

4    cannot collect.  Regardless of the fact that his name was on

5    the policy.

6              THE COURT:  Okay, go ahead.

7              MR. RIOS:  Yes.  And that's why -- I mean, you

8    have a --

9              THE COURT:  So, when was the payment here?  And

10   what was Sears' interest at the time?

11             MR. RIOS:  As a lessor?  As a lessee?  I'm sorry,

12   Your Honor, as a lessee.

13             THE COURT:  Okay.  All right.  The property hadn't

14   been sold and it is still the lessee.

15             MR. RIOS:  Yes.  So, I'm entitled to participate

16   in the proceeds of the insured -- in the insurance.

17             THE COURT:  But what is missing here is whether --

18   you may be entitled, somehow, to participate in the proceeds

19   of the insurance.

20             MR. RIOS:  The underwriter.

21             THE COURT:  The question is whether you have a

22   separate cause of action, separate and apart from the

23   policies, against the underwriters for paying the money over

24   to Sears.

25             MR. RIOS:  Your Honor, our case depends upon the

Page 104

1    contract of insurance.  That's the whole basis of our

2    Memorandum.  But we have a separate and the distinct right

3    from that of Sears.  I mean, the two could work together.

4    There's cases on that.  I mean, there's stateside cases

5    referring to how the monies are distributed.  But what is

6    consistent in all the juris prudence that I have reviewed,

7    Your Honor, I have been in practice -- I've been practicing

8    law for 55 years.

9            I was Insurance Commissioner of Puerto Rico for

10   two years and I've been involved in contracts of insurance.

11   There's some basic principles of insurance, like I said, if

12   you don't have insurance, you can't collect.  So --

13           THE COURT:  But Sears had an insurable and insured

14   interest.

15           MR. RIOS:  I beg your pardon, sir.

16           THE COURT:  But Sears had an insured interest.

17           MR. RIOS:  I don't understand.  What?

18           THE COURT:  Sears had an insured interest.

19           MR. RIOS:  Of course, it had, but it's separate

20   and apart from the one that my client.  That's why I believe

21   that the indemnity has no purpose.  Because if the

22   underwriters paid Sears what Sears was entitled to receive,

23   they have no recourse against Sears.  If, on the other hand,

24   if the underwriters paid in excess and obtained or made

25   payments through Sears that belonged to my client, to the

Page 105

1   landlord, then we will have a case against the underwriters.

2   The underwriters will have to decide -- that's an issue to

3   be decided in Puerto Rico and --

4           THE COURT:  Do you have any cases to support that

5   proposition?

6           MR. RIOS:  Well, Your Honor, I mean, we cited the

7   case of -- let me see, I have it right here -- the case of

8   Capital Markets vs. Municipality of Bayamon.  It says ergo

9   while payment might be made in good faith for the person who

10  is in possession of the credit shall release the debtor.

11  But payment otherwise made to a third person is deemed

12  invalid unless it may have been beneficial to the creditor.

13  I mean, what the underwriters --

14          THE COURT:  But that was a third person who didn't

15  have the insurable interest.

16          MS. MARCUS:  Your Honor, I know you asked me to

17  wait, but --

18          MR. RIOS:  I'm referring to the principle, Your

19  Honor.  I'm referring to the principle because the Civil

20  Code has a series of sections that talk about this third

21  party and the rights of a beneficiary.  So, you have to

22  integrate the whole law, the whole system, civil law system

23  which is statutory and contains all the provisions regarding

24  the obligations that they go beyond the Insurance Code

25  because the Civil Code supplements what the Insurance Code

Page 106

1    does not cover.

2           So, I believe that Sears will be able to defend

3    itself if they receive what they should have received.  And

4    if the underwriters didn't pay what they had to pay to Santa

5    Rosa, they have to pay Santa Rosa because Santa Rosa was

6    disregarded without any legal authority or any present.

7    They had no right to do that.  The underwriters knew letters

8    were written to the underwriters before they entered the

9    settlement.  And of course, Sears knew about it when they

10   misrepresented the fact that that there was nobody else

11   involved or had any rights to the insurance proceeds.  So,

12   we have a situation here that, I believe that we covered

13   aptly in our Memorandum and it was not notified.

14           THE COURT:  Do you have cases for the proposition

15   that if the underwriters knew someone was asserting an

16   interest as a loss payee.  No, let me finish.  That they

17   should withhold payment to the other insured party until

18   that party's interests are taken into account?

19           MR. RIOS:  Yes, Your Honor.  You're paying the

20   wrong party.  Of course, there's mostly cases of that, but I

21   mean, they're paying someone that's not entitled to receive

22   the monies.  The monies did not benefit my client because

23   had Sears repaired and restored the store, then we wouldn't

24   be complaining.

25           THE COURT:  I'm just asking if you have any cases.

Page 107

1    I'm asking if you have any cases here.

2             MR. RIOS:  We could cite some cases, Your Honor,

3    yes.

4             THE COURT:  I thought that was the purpose of this

5    Memo.

6             MR. MARCUS:  Your Honor, this is Jacqueline

7    Marcus.  Before we go too much further, I wanted to respond

8    to a couple of points.

9             I know that Santa Rosa's arguing that they are an

10   insured under the policy, and I think you know, based on our

11   papers, that we dispute that.  But I think we can all agree

12   that if Santa Rosa were considered an insured under the

13   policy, that they would be bound by the terms of the policy.

14   In Section 53 of the policy, which is entitled, "Loss

15   Payable", says, and I quote, "Loss, if any, shall be

16   adjusted with and payable to Sears Holding Corporation or as

17   directed by it."  And Paragraph 19 has similar language

18   talking about how a claim is asserted and how it's adjusted.

19   So, even if Santa Rosa were correct that it's an insured

20   covered by the policy, I fail to see how there would be any

21   argument that the underwriters paid the wrong party.  They

22   did exactly as they were required to do under Section 53 of

23   the policy.

24             MR. RIOS:  Could I address that issue, Your Honor?

25             THE COURT:  Sure.

Page 108

1            MR. RIOS:  We covered that in the memorandum.  We

2     covered it in the memorandum.  We said you have to read

3     Paragraph 53 with Paragraph 51 that says that each of the

4     insureds insured by this policy will have the same

5     protection and obligations as if the policy had been issued

6     individually to each of them.  The intent of an insurance

7     policy is to provide insurance to the insured, to provide

8     and protect, that's the intention.  If there's any doubt in

9     interpreting these conflicting paragraphs, it would favor

10    the insured.  We covered that extensively by referring to

11    how to interpret an insurance policy and --

12            THE COURT:  Well, you -- I'm actually at that

13    section and it is at pages 27, 28 and 29 and there's

14    literally no authority, other than a general provision in

15    the Puerto Rico Civil Code that states the following, If the

16    terms of a contract are clear and leave no doubt as to the

17    intentions of the contracting party, the literal sense of

18    its stipulations shall be observed.  If the words appear to

19    be contrary to the evident intention of the contracting

20    parties, the intent shall prevail.

21            So, I really don't see the support for what you've

22    just said to me, that this is somehow embodied in the

23    insurance law.

24            MR. RIOS:  Well, it's in the Civil Code, Your

25    Honor, and when you interpret --

Page 109

```
 1              THE COURT:  No, I just read the provision, but

 2     paragraph 53 is specific and paragraph 601 is general and

 3     602.

 4              MR. RIOS:  Well, but --

 5              THE COURT:  Doesn't paragraph 53 deal with the

 6     issue of payment and adjustment whereas the issue covered by

 7     601 and 602 is as far as the parties covered by the policy?

 8              MR. RIOS:  Well, yes, Your Honor.  It does

 9     authorize Sears to adjust and collect the payment.  What it

10     doesn't do is authorize the underwriters to pay the total

11     amount due Sears disregarding Santa Rosa's rights as an

12     additional insured.  That is the issue here.

13              THE COURT:  Well, all right.  Is there any support

14     for that proposition, other than Puerto Rico's version of

15     the plain meaning rule?

16              MR. RIOS:  The plain meaning rule?  The plain

17     meaning rule -- there is some ambiguity here.  Here are two

18     clauses.  The entire contract refers to the definition of

19     the insured, the entire contract.  It goes back and forth.

20     They authorize the agent, the broker who's performing a dual

21     role or broker and agent to issue the certificates.  The

22     certificates evidence the existence of the rights of Santa

23     Rosa.  They cannot be disregarded.  There's no provision in

24     the insurance contract or anywhere that you could disregard

25     one insured's rights versus another.  They're both named
```

Page 110

1    insureds.  So, it's --

2            THE COURT:  The contract itself specifies, I

3    think, how it's supposed to be adjusted, through Sears.

4            MR. RIOS:  Of course, and I agreed with you, Your

5    Honor.

6            MR. MARCUS:  And Your Honor, there's a very

7    (indiscernible) reason for that because the insured, the

8    underwriters don't want to get involved in dealing with

9    various landlords or other parties that might have an

10    interest in the insurance proceeds.  Their view is, Sears is

11    the insured party.  They pay Sears and then Sears deals with

12    it.

13            MR. RIOS:  Your Honor, that's the case of Nickels

14    that we cited -- that we included -- a cite in the

15    memorandum and the standard practice is, before the

16    insurance company pays, they find out if there's any other

17    additional insureds involved and they make sure, they issue

18    the check, the check in the names of the two parties.

19            In this case, in the case of Nickels, a check was

20    written in the name of the two parties and the insured

21    falsified the endorsement and the Court said, look, I mean,

22    you have to be more careful, insurance company.  You have to

23    watch out, you have to make sure that you're paying the

24    right party and you're delivering the check to both.  Which

25    is what the lease contract provides, the monies to be

Page 111

1    deposited in a joint account.  But --

2              THE COURT:  I'm sorry -- Nickels.  I don't see

3    Nickels in your list of cases.

4              MR. RIOS:  Let me see, Your Honor.

5              MS. MARCUS:  It's there, Your Honor.  It's

6    Blackburn-Nickels & Smith.

7              MR. RIOS:  I'm looking for it, sir.

8              THE COURT:  Oh, Blackburn.  I see.  But that's --

9    It was not cited for that proposition, so I'm going to look

10   it up.

11             MR. RIOS:  Sir, the case is Bank of Nichols Hills

12   versus Bank of Oklahoma.  It's cited at page --

13             THE COURT:  I'm sorry, not Blackburn-Nickels &

14   Smith?  What page --

15             MR. RIOS:  Page 24, sir.

16             THE COURT:  Okay.

17             MR. RIOS:  It said, Bank of Nichols Hills versus

18   Bank of Oklahoma.  It held that the insured did not act in a

19   commercially reasonable manner or in accordance with

20   reasonable commercial standards.  And I insist, Your Honor,

21   the underwriters knew that before they made the payment,

22   that Santa Rosa had an interest in the policy.  I know this

23   is going to be an issue of fact, but it's an issue that we

24   will be able to prove in court in due form.

25             THE COURT:  I'm sorry.  You say this appears in

Page 112

1    what case?

2              MR. RIOS:  I'm citing think Bank of Nichols Hills

3    versus Bank of Oklahoma.  It's cited at page 24.

4              THE COURT:  It's actually 27 through 28.  Let me

5    go to that.  It's not there either.  Well, it doesn't appear

6    on the page that the table of authorities say it appears and

7    it's not on page 24 either.

8              MS. MARCUS:  It looks to me like it's on, maybe,

9    page 23, Your Honor.

10             THE COURT:  Oh, I see.

11             MS. MARCUS:  Yeah.  It's page 28 of the .pdf.

12             MR. RIOS:  Oh yes.  Because I'm referring to the

13   memorandum itself, Your Honor.  I'm sorry.

14             THE COURT:  Right.  Okay, okay.  I got it.  All

15   right.  So is Santa Rosa prepared in any way to protect the

16   Debtor against this?

17             MR. RIOS:  I beg your pardon, sir.  I missed

18   something there.

19             THE COURT:  A number of times during this argument

20   you've said that if the insurers in fact paid the debtor

21   properly under the policy, the debtor has nothing to worry

22   about and if they didn't, they have an independent

23   obligation.

24             MR. RIOS:  Yes.

25             THE COURT:  But they will be going after the

Page 113

1    debtor no matter what under this indemnification provision.

2    Is Santa Rosa able to protect the Debtor against the adverse

3    consequences of that?

4              MR. RIOS:  Well --

5              THE COURT:  Assume it doesn't win against the

6    insurers, that the insurers acted properly but the insurers

7    run up a million-dollar legal bill in determining that which

8    then they assert against the Debtors.  How are the Debtors

9    protected against that from happening?

10             MR. RIOS:  Well, it's a self-inflicted harm, Your

11   Honor.  They could have avoided it in the first place when

12   they signed the settlement agreement.  That's number one.

13   Number two, I think you have to balance the interest and

14   this is -- I mean, we're now addressing an issue which is --

15   it doesn't fall within my realm of knowledge.  I believe

16   that's a bankruptcy issue.  Right, Your Honor?

17             MS. COLON:  Your Honor, if I may, there's -- this

18   is Sonia Colon on behalf of Santa Rosa.  In the motion we

19   specifically stated that we will withdraw our part of the

20   claim against Santa Rosa, against the debtor, when we are

21   released of the stay and our claim against the

22   (indiscernible) is adjudicated.

23             THE COURT:  No.  I understand that portion.  What

24   I'm addressing is a different point, which is the debtors

25   liability to the insurers understand the settlement

Page 114

1    agreement, if it turns out that the insurers are right and

2    Santa Rosa is wrong as far as Santa Rosa having a separate

3    claim against the insurers.

4              MS. COLON:  Santa Rosa has the claim -- well,

5    these facts cannot be taken in a vacuum.  We had asserted

6    our claims, Your Honor, and after we had asserted our claims

7    they negotiated and they included language therein that

8    they're the only ones with a right to receive this funds.

9    Both parties knew of our right of -- under the policy

10   because we had sent communications to both parties, Your

11   Honor, in the balance of equities between -- which is one of

12   the Sonnax Factors in the balance of equities.  Once this is

13   adjudicated we'll withdraw our claim or that portion of the

14   claim against Santa Rosa.

15             Nonetheless, right now, if there's any fees that

16   they're incurring -- they raise that there are going to be

17   incurring fees -- in defending themselves.  They're already

18   incurring fees in Puerto Rico with regards to the same mall

19   in a cause of action that they have against a roofing

20   company.  So they're already incurring fees in this regard.

21   Thus --

22             THE COURT:  I'm sorry.  Can you say that -- I'm

23   sorry.  I'm sure I followed that.  What about the litigation

24   in Puerto Rico at this point?  Can you just repeat that?

25             MS. COLON:  They already have a cause of action in

Page 115

1    Puerto Rico which they're actively litigating.  I don't know

2    --

3              THE COURT:  I'm sorry.  Who do you mean by -- the

4    insurer?

5              MS. MARCUS:  Your Honor, I can help with that.  I

6    think I can help with that.

7              MS. COLON:  They have a cause of action against

8    the roof -- against the roofing company that did work in the

9    roof of the building, of the Santa Rosa Mall, and all the

10   profits of that litigation and those litigation costs,

11   everything is being borne by the debtor and the benefits of

12   those, even though it affects Santa Rosa, it was the roof.

13   Santa Rosa doesn't have any rights with those.  Everything

14   is being kept by the debtors.  So, those allegations that

15   they are going to incur expenses if this is litigated in

16   Puerto Rico which is the exclusive forum of --

17             THE COURT:  No, no.  I'm sorry.  You're going way

18   off where I wanted an answer.

19             MS. MARCUS:  Your Honor, can I just --

20             THE COURT:  Let me just summarize what --

21             MR. RIOS:  May I address that issue, Your Honor,

22   briefly?

23             THE COURT:  No.  Let me -- please.  I'm trying to

24   focus this and the last five minutes got it completely off

25   track so I'm trying to get it back to where it should be.

Page 116

```
 1              Your response as to whether the debtor should be
 2    protected in any way from Santa Rosa being wrong on this
 3    issue, I believe, is as follows; the debtors took the risk
 4    in entering into that settlement agreement knowing of Santa
 5    Rosa's interest in being paid directly by the insurers.  Is
 6    that a fair summary?
 7              MR. RIOS:  Well, not directly, jointly, Your
 8    Honor.
 9              THE COURT:  Well, with the insurers.
10              MR. RIOS:  Yes.
11              THE COURT:  Fine, jointly.  But I have one
12    document before me that I think may support that or is being
13    asserted to support that proposition, which was the December
14    14th, 2018 motion by Santa Rosa Mall in this case to compel
15    disclosure of the status of insurance claims and to compel
16    the deposit of any proceeds into escrow exclusively for
17    repair.  Right?  Is that what we're talking about here?
18    Okay.
19              MS. COLON:  Yes, Your Honor.  We filed a motion in
20    December.
21              THE COURT:  But again, that's assuming, I think,
22    that the money is going to go to Sears.
23              MR. RIOS:  Well, like I said, Your Honor, it is
24    going to go to Sears and Santa Rosa.  That's our position.
25              THE COURT:  But, I think that motion assumes that
```

Page 117

1    any settlement proceeds goes to Sears and then is put into

2    escrow.  It's not a motion to compel the insurer to pay the

3    money separately into escrow, right?  It's dealing with the

4    money coming into Sears, as I read it.

5              MS. COLON:  Your Honor, that motion is pre-dated

6    by numerous letters which I don't have in front of me, but

7    numerous letters requesting that Santa Rosa comply to the

8    terms of the lease agreement -- that Sears complies with

9    terms of lease agreement.

10             THE COURT:  All right.  That's fine but those are

11   --

12             MS. COLON:  They hadn't had our --

13             THE COURT:  But those are to Sears.  Again, the

14   focus here is on whether an agreement whereby Sears gets

15   paid the money -- we shouldn't even be dealing at this point

16   with that issue as far as the insurers are concerned.

17             MR. RIOS:  Can I address this, Your Honor?

18             MS. COLON:  There were letters to both the

19   insurers and to Sears and in numerous efforts prior to that

20   motion, Your Honor.

21             MS. MARCUS:  Your Honor, this is --

22             THE COURT:  Are they in the record in connection

23   with the motion before me?  They aren't, right?

24             MS. COLON:  I assume they are just --

25             THE COURT:  Well, I have the motion before me and

Page 118

1    I don't see them.

2              MR. RIOS:  In this particular motion I don't

3    believe there's -- in this particular --

4              THE COURT:  Right.  And all the other motions have

5    been withdrawn.

6              MR. RIOS:  Your Honor, can I respond to your

7    previous question and then I'll allow Sonia to talk about

8    the previous letters, Your Honor, please?

9              THE COURT:  Okay.

10             MR. RIOS:  The fact that Sears as the primary

11   insurer gets paid and does the adjustment, that is the

12   normal practice, Your Honor.  But the normal practice also

13   is when the monies are paid, they're paid to the insured and

14   the landlord and that's what went wrong here.  That's what

15   went wrong, and in this case, the underwriters relied

16   extremely -- they took a big risk when they accepted the

17   misrepresentation of a Debtor in possession.

18             I mean, they knew beforehand when they signed that

19   indemnity that Sears was under the protection of the

20   bankruptcy court.  So they took a chance.  In spite of that,

21   they issued the check and -- knowing that Santa Rosa had

22   written letters to the underwriters, to AIG specifically and

23   to AIG specifically in Puerto Rico and in London.  There

24   were two of them.  So we have an issue here which is an

25   issue of unfairness and it's an issue of breach of contract,

Page 119

1   an issue of reasonable expectations which is a principle of

2   insurance law, an issue of bad faith which is also a

3   principle of insurance law, but expressed good faith -- no

4   bad faith.

5           I mean, insurers have to observe good faith and

6   they can expect that the insured, in this case Santa Rosa,

7   would be treated by the underwriter as the underwriter would

8   treat itself and this is not what happened here.  And one

9   last comment, Your Honor.  It's not going to cost the

10  underwriters a million dollars in Puerto Rico.  There are

11  plenty of good lawyers that work for AIG and they're not

12  going to charge a million dollars for this case.

13          If sister counsel, Jacqueline Marcus, was right,

14  this issue could go out with a motion to dismiss.  I don't

15  think that's going to happen but it could be very brief.  If

16  Attorney Marcus is right it could only require a motion to

17  dismiss.  But that's not going to happen and it's never

18  going to cost a million dollars, but it's costing my client

19  Santa Rosa a lot of money because they've had to go forward

20  and restore the building without the benefit of the

21  insurer's proceeds.  I would ask sister counsel Sonia Colon

22  to add anything with regards to the notices, Your Honor.

23          MS. COLON:  Your Honor, with regards to your

24  question, the letters that I'm referring to are in docket

25  6317, the release of stay, docket 6317, docket 7, 8, and 9.

Page 120

1   That's the release of January the 7th.

2           THE COURT:  I'm sorry.  I have the motion, which

3   is 6317.  The only exhibit that I have is the -- Oh, so

4   there are other exhibits.  Okay.  So, Ms. Marcus, what is

5   your response to this?

6           MS. COLON:  Yeah.  I wanted to -- well, okay.  I

7   wanted to speak regarding the bankruptcy perspective but

8   I'll speak then after Ms. Marcus.

9           MS. MARCUS:  Okay.  Your Honor, first, I'd like to

10  go back to the case that Santa Rosa relies on for this

11  question about who's the appropriate person to pay, Bank of

12  Nichols Hills versus Bank of Oklahoma.  In the second

13  paragraph it says -- it was about insurance over a mobile

14  home -- excuse me -- and I'm quoting.  In paragraph two it

15  says, "The insurance policy provided that in case of loss

16  Farm Bureau will pay you unless another payee is named on

17  the declarations page, that loss shall be payable to any

18  mortgagee named in the declarations, and that one of Farm

19  Bureau's duties was to protect the mortgagee's interest in

20  the insured building."

21          The declarations page of the policy listed Conseco

22  Finance as the mortgagee.  Conseco has a mortgage security

23  interest in the home, and that's the end of the quote from

24  paragraph 2.

25          So unlike the situation here where -- paragraph 53

Page 121

1    says, insurance company you pay Sears -- in that case, the

2    policy said that the obligation was to protect the mortgagee

3    and that's why that case came out the way it did.  That's a

4    very different situation.

5           But I also don't want us to lose sight of the fact

6    that the Debtors have taken the position Santa Rosa is not

7    an insured under the policy under that language and I think

8    Your Honor mentioned it at the last hearing on February

9    24th.  There's an obligation in the lease for the Debtors to

10   obtain insurance but we don't believe that that language

11   puts Santa Rosa within the insured language that they're

12   relying on.

13          I can't take issue with the letters that Ms. Colon

14   refers to because there is a letter there to AIG of Puerto

15   Rico that mentions an obligation ostensibly for the monies

16   to be put in a separate account which we also take issue

17   with.  But the bottom line here is that the policy is very,

18   very clear and the underwriters complied with the policy and

19   that Santa Rosa really doesn't fall within the language that

20   they're relying on.

21          MR. RIOS:  Briefly, we covered that in our

22   response but I'll allow Sonia Colon to respond to the other

23   issues.

24          MS. COLON:  Your Honor, at the last hearing -- the

25   February 24th hearing -- you requested us to brief on three

1    gatekeeping issues.  A, that the lease agreement grants

2    Santa Rosa right in under the contract of insurance, Two,

3    that the certificate of insurance modified or changed the

4    terms of the contracts, and three, Santa Rosa statutorily

5    direct actions status.

6         In a motion that we filed, and in the discussion

7    that Carlos Rios, who was commissioner of insurance of

8    Puerto Rico did a few minutes ago, it's my proposition that

9    we have complied with the three gatekeeping issues that is

10   set forth in the February 24th hearing.

11        So the only pending issues that we raised in the

12   motion for release of stay and that is whether the

13   settlement's indemnity clause, which was not subject to Rule

14   1919, is enforceable and serves as justification to extend

15   the automatic stay to non-debtor third parties, namely the

16   underwriters, Your Honor.

17        Okay.  Although we agree that Section 362 of the

18   Bankruptcy Code may be extended according to some case law

19   to non-debtors in certain unique circumstances, that's not

20   the case that we have before us, Your Honor.  The case --

21        THE COURT:  Ma'am, I'm going to interrupt you on

22   that point.  You're not going to win on that point because

23   the issue here is specifically far more -- the stay doesn't

24   even need to be extended at this point because the immediate

25   effect of any litigation against the underwriters asserting

Page 123

1    that they paid improperly here given the terms of the

2    agreement is going to result in a claim under the settlement

3    agreement.  So this is not your indemnification claim that

4    is the type of claim that's covered in your brief as

5    something that has an immediate effect on the Debtors.  So

6    you should focus on --

7              MS. COLON:  The claim was --

8              THE COURT:  -- ma'am, I'm sorry.  You're just

9    going to lose on this point.  You're not going to persuade

10   me.  Your brief did as good as you could ever do it and it's

11   not going to carry the day.  So you should focus on the

12   second point which is whether the settlement agreement on

13   the payment of the proceeds required notice in a hearing.

14             MS. MARCUS:  Your Honor, I thought you ruled on

15   that in the last hearing.

16             THE COURT:  I thought I did, too, but --

17             MS. MARCUS:  We weren't going to argue that --

18             THE COURT:  Is there something we missed on that

19   point?  Yeah.  So I think the real issue here is the one

20   that I did ask you all to brief and, frankly, to me, the

21   rights that you're asserting here are at best rights that

22   give Santa Rosa a claim to the insurance policies and

23   perhaps that claim should have been dealt with when those

24   policies were in hand and of course the litigation history

25   here is tortured.

Page 124

1          I don't recall whether we ever got to the point

2     where I was given a case that asserted as the Texas case

3     that I previously cited asserts that somehow there's a lien

4     right as to those proceeds, but I'm having a hard time

5     seeing a claim here of the type that I thought might give

6     Santa Rosa a right to stay relief, namely a claim that would

7     not be based on the policies and its rights under the

8     policies, but a separate claim to the insurers under which

9     they would have to pay twice.

10          And I appreciate the length of the brief and the

11     experience of the brief writer, but I don't see, except in

12     very distinguishable circumstances, authority that under

13     these circumstances would require the insurer to pay twice,

14     particularly in light of the terms of the policy itself

15     which have the money coming to Sears.

16          MR. RIOS:  Well, Your Honor, will the fact the

17     underwriters were notified -- that they knew about it which

18     they did.  We have --

19          THE COURT:  But that --

20          MR. RIOS:  May I finish, Your Honor?

21          THE COURT:  Well, okay.  That's fine.  Sure.

22          MR. RIOS:  Yes.  Very briefly, they had

23     constructive notice through their agent, Aon.  They had it

24     in their files with the name and everything of Santa Rosa.

25          THE COURT:  I accept that.  I accept that they had

Page 125

1    notice.  I accept that Santa Rosa said the money should be

2    paid into a separate escrow, but the policy itself doesn't

3    say that, and the case law that you've cited, to me, doesn't

4    say that they paid improperly.  What it says is that in an

5    action where they are an actual insured or named insured

6    which at least under the law of certain states would

7    arguably include Santa Rosa here --

8            MR. RIOS:  Certainly the laws of Puerto Rico does.

9            THE COURT:  Well, I didn't see any Puerto Rico

10   case on point on that in the brief.  The case that you

11   cited, I believe, is a case where the other party just

12   wasn't entitled to the money.  And here, at best, again,

13   there's going to be an argument as to who -- whose interests

14   were the proper interests and --

15           MR RIOS:  That is true.

16           THE COURT:  -- to me, that's not the type of right

17   that would let the stay be lifted here.

18           MR. RIOS:  Your Honor, I'm missing something here

19   because when this case started there was a discussion with

20   regards to a direct action statute which applies to

21   liability cases, to accident cases.  And I am lost if the

22   Court at that time believed that there was a direct action

23   statute, the case would be -- the stay would be relifted or

24   not extended.  Why --

25           THE COURT:  Well --

Page 126

1              MR. RIOS:  Why would an insured be deprived of a

2      right as a contract act is a party to the contrary?

3              THE COURT:  Because in the direct action cases

4      where the stay is lifted to let the personal injury claimant

5      go against the insurer, the Debtor hasn't already been paid

6      the insurance and hasn't signed an indemnity agreement

7      saying, I was the proper one to get it.

8              My recollection of the last hearing was that I

9      basically threw you guys a lifeline saying, if you can show

10     that the insurers had some separate duty to Santa Rosa Mall

11     and that duty is not one flowing from the policy itself that

12     would give rise to an immediate claim under the settlement

13     agreement, then I might say that the stay doesn't apply as

14     I've said it that it wouldn't apply -- shouldn't apply and

15     you all agreed on this -- to Aon, but that doesn't seem to

16     me to be the case here.

17             I mean, again, I started this whole argument by

18     asking about cases that say the insurer might have to pay

19     twice and so far what I'm getting is that when the insurer

20     might have to pay twice is where the payment was clearly

21     made to the wrong party.

22             MR. RIOS:  That is correct, Your Honor.

23             THE COURT:  And I don't think that's the case

24     here.  I mean, Sears is a party too, and you have the

25     paragraph 53 and 19 of the agreement which contemplates

Page 127

1    payment and -- look, I understand that the interest was made

2    known to AIG.  I see that letter now.  And clearly, among

3    the theories that Santa Rosa raised in December of 2018 was

4    that these funds should be dedicated to repairing the mall,

5    but I don't believe that I was ever shown that that interest

6    was something other than a contract interest, and I think

7    that's where we are at this point.

8              MR. RIOS:  Well, Your Honor, it's a matter of

9    proof.

10             THE COURT:  Can I tell -- I'm sorry to interrupt,

11   sir, but I wanted to get out one other thought.  If there is

12   some way to protect Sears on that point -- because I

13   understand your point, which is that, you know, under

14   certain circumstances as a factual matter it may be shown

15   that the insurers acted improperly, so if there's some way

16   to protect the debtor against that not being the case and

17   the insurers coming back and having a legitimate claim

18   against the debtor under the settlement agreement, then I

19   think under Sonnax the stay could be lifted.  But I'm not

20   hearing that.

21             Now you said the cost should be minimal, et

22   cetera.  I don't know, but I think Santa Rosa should think

23   about that.

24             MS. COLON:  Your Honor --

25             THE COURT:  Because --

Page 128

1          MS. COLON:  -- if I may --

2          THE COURT:  -- I can't -- let me just -- I'm

3    sorry.  I was just pausing.  My kids complain that my pauses

4    are too long but --

5          MS. COLON:  I'm sorry.

6          THE COURT:  -- but that's what happens when you're

7    on the phone.  I do, again, recognize that there might be a

8    scenario, at least under a couple of the cases that are

9    cited in the brief, where, you know, you might be able to

10   establish that the insurance carriers were on sufficient

11   notice that they shouldn't have made the payment, but that's

12   far from a given here and so that's why I'm focusing on

13   protecting the debtor because I think the stay is in place

14   at this point given the payment and given the settlement

15   agreement.

16         MR. RIOS:  Well, but the --

17         THE COURT:  So that's where we are.  I mean, if

18   the payments haven't been made, then that's a different

19   issue, but I think at this point --

20         MR. RIOS:  But there won't be an indemnity then,

21   Your Honor.

22         THE COURT:  Well, but I don't know -- indemnity by

23   whom?

24         MR. RIOS:  Well, if monies had not been paid,

25   Sears would have not have to issue the indemnity.

Page 129

```
 1              THE COURT:  Oh, I understand, but the money has

 2     been paid.  That's the difference.

 3              MR. RIOS:  Well, but -- I mean, why should we be

 4     penalized for the wrongdoings of Sears?  Sears should have

 5     never signed that indemnity, should have never agreed.

 6              THE COURT:  Well, I've already ruled on that

 7     point.  I've already ruled on that point so that's a

 8     different issue.

 9              MS. COLON:  Your Honor --

10              THE COURT:  Go ahead.  Yeah.  Go ahead.

11              MS. COLON:  It's not --

12              CLERK:  Good afternoon, Your Honor.

13              MS. COLON:  Oh.

14              CLERK:  I do apologize.  This is Ry, the court

15     clerk.

16              THE COURT:  Well I -- can I interrupt you?  This

17     is important.  Yeah.  Go ahead.

18              MS. COLON:  Okay.

19              THE COURT:  There's a feature -- no, no, ma'am,

20     this is important.  There's a feature of this Court

21     Solutions that is tied, I think, to other people's

22     technology.  The hearing can only go on for four minutes on

23     a recorded -- four hours -- on a recorded basis and then it

24     stops so we're going to be cut off in about 20 minutes.

25     Right, Ry?
```

Page 130

1           CLERK:  That is -- Your Honor, that's correct.

2           THE COURT:  Okay.  So unless we're going to go

3     past 2:00 we can wrap this up, but if we're going to go past

4     2:00 I'm going ask everyone to hang up at about, you know,

5     five of two, three of two and then sign back in again.

6           MS. COLON:  Your Honor --

7           THE COURT:  That's just how the technology works.

8     So go ahead, ma'am.

9           MS. COLON:  Two issues.  Again, I sustain that

10    there are conflict of actions that can be established

11    directly against Sears, but I leave that to Carlos Rios.

12    There were even amendments after Hurricane Maria and those

13    were briefed that gives those rights and those were briefed

14    in our motion.

15           Nonetheless, with regards to the underwriter's

16    claim, we included case law in our brief where we say that

17    an indemnity gives rise to the -- it's crystalized or the

18    claim is crystalized when the indemnity is executed.  So if

19    the underwriters had a claim or have a claim against Sears,

20    they show as a result of this indemnity.  They should have

21    filed a proof of claim and there's nothing in the record

22    regarding the proof of claim.

23           THE COURT:  There's no administrative expense bar

24    date in this case.  Correct, Ms. Marcus?

25           MS. MARCUS:  That's correct, Your Honor.

Page 131

```
 1              THE COURT:  All right.  So they don't have to have

 2    filed a proof of claim.

 3              MS. COLON:  We included language also in our brief

 4    as to how we see that this is an unsecured claim and not

 5    necessarily an administrative claim as Sears has

 6    represented.

 7              THE COURT:  It's a post-petition agreement, ma'am.

 8              MS. COLON:  But they are not defined as the

 9    release parties and we included all this discussion

10    regarding as to how the plan reads and how the --

11              THE COURT:  No.  that's a separate -- I'm sorry.

12    Maybe I misunderstood you.  I understand that they are

13    released under the plan, but there's a separate agreement --

14    post-petition agreement, the settlement agreement -- to

15    which they are a party and Sears is a party and if Sears

16    breaches that agreement it gives rise to administrative

17    expense.

18              MS. COLON:  An agreement that a clause can be

19    easily (indiscernible) because it's really not enforceable.

20    They did not comply with the bankruptcy requirements or the

21    application requirements before issuing that indemnity

22    clause in that agreement.  I think that we can -- in all due

23    respect, Your Honor -- I consider that we can

24    (indiscernible) that clause and leave the agreement and that

25    way Santa Rosa can assert its right in Puerto Rico law
```

Page 132

1    against the underwriters and Aon.

2              MS. MARCUS:  Your Honor, we're going over things

3    that we've gone over multiple times over the course of the

4    past year.

5              THE COURT:  Right.  I agree with that.  I agree

6    with that.  I mean, I dealt with that at our last hearing.

7    I was assuming the enforceability of that agreement which

8    was why I accept if there was some separate cause of action

9    and we've been through that for the last hour or so.  So I

10   think we're at the point of diminishing returns at this

11   point.

12             MS. COLON:  Your Honor, if there's going to be --

13   if your position has to do that there's been a stay which we

14   disagree, we request, Your Honor, that it be retroactive to

15   extend it and any applicable statute of limitations be told

16   while we appeal then any decision.

17             MS. MARCUS:  I'm not sure I understand that.

18             THE COURT:  I'm not sure I understand that either.

19   You could separately brief that if you want to.  I don't

20   understand what you're focusing on there.

21             MS. COLON:  Oh, you see, I can have a second, Your

22   Honor.  It's under 108(c) so we can resolve this matter

23   instead of delaying the issue.  Just give me a -- just give

24   me a second to speak with co-counsel.

25             MR. CHICO:  Your Honor, am I unmuted?  Can you

Page 133

1    hear me?

2            THE COURT:  You can go ahead.  Yes, is this Ry

3    from the clerk's office?

4            MR. CHICO:  No.  This is Gustavo Chico, Your

5    Honor.  Good afternoon.  Thank you for your time.  I think

6    what Ms. Sonia Colon was trying to address is that since we

7    can -- if your ruling is not to grant the relief from stay,

8    then to preserve our rights on appeal, we would like to have

9    the -- any tolling period --  any applicable tolling period,

10   if any -- extended so that we can preserve our right to

11   appeal.  But we can do that by way of motion, Your Honor.

12           THE COURT:  Okay.  I mean, I'm looking at 108.

13   I'm not quite sure what -- yes.  Unless that period is about

14   to expire, in which case you should argue it now -- but if

15   there's sufficient time so you could brief it you should

16   brief that issue.

17           So this hearing is not only a lengthy hearing

18   today, but covers a prior hearing, which was also lengthy

19   where I gave other rulings.  I'm not going to go through

20   those rulings again, but I will state based on today's

21   record, as well as the briefing, that I'm not prepared

22   either to declare the stay inapplicable to the pursuit of

23   claims against the underwriters given that they derive from

24   the debtors' insurance policies and immediately and

25   adversely implicate the debtors with liability under the

Page 134

1    insurance settlement agreement and therefore, the primary

2    factor under the Sonnax test, which is the adverse effect on

3    the estate, argues to keep the stay in place.

4          The adverse effect here would be in hundred-cent

5    dollars given the post-petition nature of the agreement and

6    the risk the debtors face.  If Santa Rosa were prepared to

7    ameliorate that effect with some particular form of

8    undertaking or protection to the debtors, I would view the

9    matter differently but, that is not the case today.

10         That agreement, to the extent that the lift of the

11   stay would directly affect it, and therefore it would be

12   covered under 362(a), would also be a basis for protecting

13   the underwriters separately under Queenie v Nygard,

14   International 321 F.3d 282, 287 (2d Cir. 2003), where the

15   court through then Judge Sotomayor stated that where there's

16   an immediate adverse impact on the estate third parties will

17   be protected.

18         That's not necessarily extending the stay.  It's

19   just interpreting the stay to apply in that type of

20   situation which I believe is the case here.  So I will deny

21   the motion and ask the debtors to prepare an order to that

22   affect.  You don't need to formally settle it on counsel for

23   Santa Rosa Mall, but you should provide it to them a day or

24   so before submitting it to the Court.

25         If Santa Rosa wants to seek extension or tolling

1    of a limitations period, it's free to do so on motion to the

2    Court.  And you should cc not only the Debtors but the party

3    that would be asserting the statute of limitations, if in

4    fact it was not told, which I'm assuming would be the

5    insurers here.

6              MS. MARCUS:  Thank you, Your Honor.  We will

7    submit an order as you suggested.

8              THE COURT:  Okay.  I think that is the last matter

9    on today's agenda and just would like either Ms. Marcus and

10   Ms. Fail to confirm -- Mr. Fail -- to confirm that and

11   otherwise I think this call can be concluded.

12             MS. MARCUS:  That's correct, Your Honor.  That was

13   the last matter.  The rest have been addressed.  Thank you

14   very much for your time.

15             THE COURT:  Okay.  Very well.

16             MR. FAIL:  Thank you very much, Your Honor.

17             THE COURT:  Who was trying to address me?

18             Mr. BERKOWITZ:  Good afternoon, Judge Drain, it's

19   Ted Berkowitz from Moritt, Hock & Hamroff.  We were advised

20   that our -- the application of the creditor's committee for

21   whom we are proposed counsel might be considered on today's

22   hearing.  We did file a certification of no objection.

23             THE COURT:  No.  That will just be granted.  I

24   reviewed it and given that there were no objections and then

25   based on my review, you could email the proposed order to

Page 136

1      chambers.

2                MR. BERKOWITZ:  Thank you, Judge.

3                THE COURT:  You should just send the application

4      itself along with it just so I can reference it in the order

5      in case you haven't.

6                MR. BERKOWITZ:  Very good.  Thank you, sir.

7                THE COURT:  Okay.  Thank you.

8                MS. MARCUS:  Thank you, Your Honor.

9                MR. FAIL:  Thank you, Judge.

10               THE COURT:  Okay.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 137

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  April 27, 2020

[& - 50-51]                                                                                                    Page 1

## &

**&**   3:1 6:3,9 7:9
8:1,15 9:1 10:19
12:24 29:22 52:7
60:16 64:18 83:16
111:6,13 135:19

## 0

**00917**   9:11
**00968-3076**   9:4

## 1

**1**   11:3 26:5 53:5
79:19
**1,400**   46:24
**10**   51:18 57:10
64:21
**100**   39:4 94:6
**100,000**   57:17
**10005**   6:18
**10014**   7:5
**10016-1314**   8:18
**10019**   8:4,11
**1006**   7:4
**10153**   6:5
**10158**   7:13
**104,605.00.**   84:22
**10583**   6:12
**10601**   1:15
**108**   132:22 133:12
**10:00**   1:18 2:2
**11**   48:3,9,11 84:15
**111**   23:14
**115**   17:10,19
**11501**   137:23
**116**   17:14,19
**117**   17:14,19
**118**   17:2,4,7,10
**119**   17:10
**12**   18:21,23,23,23
19:8,22,22 20:12
21:4 88:8
**120**   17:11

**123**   23:14
**124**   17:19
**12415**   23:12
**127**   48:23
**12th**   84:18
**13**   47:25 62:21
75:16,17
**1301**   8:10
**13th**   84:18
**14**   19:15,19 20:15
56:20 62:19,20
83:25 94:15
**143**   24:5
**14th**   84:18 116:14
**15219**   7:20
**16**   17:6 19:20
97:10
**168**   24:5
**17**   17:6 34:14
**17th**   84:18
**18**   32:6
**18-23538**   1:3
**19**   17:6 96:25
107:17 126:25
**1919**   122:14
**1972**   102:6
**1986**   24:2
**1988**   25:19
**19th**   84:18

## 2

**2**   3:3 17:13,18
23:12 79:22
120:24
**20**   31:25 32:6 34:1
37:19 75:19 80:24
85:5 88:21 89:4
91:24 129:24
**20,000**   51:18
**2001**   24:9 79:15
**2003**   23:14 134:14
**201**   7:4
**2010**   25:5

**2011**   24:5 25:18
83:22
**2017**   92:15,21
97:10
**2018**   84:16 97:10
116:14 127:3
**2019**   18:19 23:11
23:12 38:24 72:5
92:19
**2020**   1:17 2:2 3:3
11:7 22:11 45:6
137:25
**21**   46:17 56:3
**22**   32:6 34:14
**2200**   7:19
**221**   9:10
**23**   1:17 2:2 112:9
**237**   6:11
**24**   23:12 111:15
112:3,7
**247**   24:8 25:17
**248**   1:14
**24th**   46:13 95:14
121:9,25 122:10
**25**   31:25 48:10
66:7
**250**   8:3
**27**   9:3 108:13
112:4 137:25
**274**   79:15
**28**   50:17 96:25
108:13 112:4,11
**28.7**   46:18
**280**   47:5
**282**   134:14
**287**   134:14
**29**   108:13
**2:00**   130:3,4
**2d**   79:15 134:14
**2nd**   19:14 23:14
24:2,9 25:18

## 3

**3**   62:4 79:23 96:25
**30**   46:25
**300**   1:14 9:3
137:22
**32**   92:19
**321**   134:14
**330**   23:14 137:21
**359**   46:16
**362**   122:17 134:12
**370**   25:18
**373**   24:9
**390-92**   25:18
**391**   24:9
**3rd**   7:12

## 4

**4**   17:10 20:13
96:25 98:7,17,18
**40**   6:17
**41**   17:10,13,18
**42**   17:10
**423**   25:5 26:6
**42nd**   8:10
**43**   17:10
**43-44**   92:19
**44**   17:10
**445**   24:4
**45**   17:10
**45-46**   26:6
**47**   17:13
**4776**   3:8,11
**479**   102:5
**48**   17:13,18 46:25
**4814**   3:12
**486**   25:19
**4931**   4:20
**4986**   3:15
**4994**   3:17

## 5

**5**   98:11,17,18
**50-51**   25:5

**5003**  3:20
**503**  53:17 54:9
  62:1 68:15,18
  69:20 71:16 72:25
  77:20,23 80:23
  81:21 86:6,14
  87:13,15 89:3,15
  90:9,16,20 91:11
  91:14,19,22 92:10
  93:18,19 95:1
**5056**  3:23
**51**  2:6,9 108:3
**52**  2:7,15,18
**5237**  5:4
**53**  107:14,22
  108:3 109:2,5
  120:25 126:25
**537**  92:21
**541**  48:24
**542**  92:21
**5421**  4:3 74:7,8
**5421-1**  74:16
**543-544**  92:15
**5472**  3:10
**55**  2:19 28:6 104:8
**5524**  4:6
**55th**  8:3
**56**  23:13
**572**  92:15
**573**  92:21
**58**  24:2
**59**  14:14 23:7

                **6**

**6**  18:21,23 25:14
  96:25 98:17
**60**  2:13 14:14
  23:17,25 24:3
  25:14,15 26:5
**601**  96:11 109:2,7
**602**  109:3,7
**605**  7:12
**607**  92:19

**61**  24:2
**6316**  5:17
**6317**  5:10,18,22
  119:25,25 120:3
**65**  30:20 31:3,4
**668**  47:6 48:23
**68**  17:13
**69**  17:14,18

                **7**

**7**  45:7 119:25
**70**  17:14
**700**  6:11
**7024**  14:13
**7055**  11:11 22:14
  27:21
**706**  79:15
**707**  7:19
**717**  102:5
**721**  102:5
**7211**  5:12,23
**7213**  5:7
**73.2**  46:17
**7311**  5:15,22
**7326**  5:19
**7331**  67:15
**7471**  4:22 31:4
**7518**  2:23
**7531**  5:24
**767**  6:4
**7788**  4:9
**7798**  3:5
**7829**  68:19
**7836**  4:25
**7857**  10:21
**793**  24:2
**7th**  120:1

                **8**

**8**  16:10,11 119:25
**8.5**  61:25 64:20
**80**  48:24 50:20
  58:12
**800,000**  57:15

**83**  45:8
**847**  25:19
**85**  17:19
**86**  17:14,19
**863**  25:19
**87**  17:14,19
**885,000**  67:18
  70:25

                **9**

**9**  11:7 53:17 54:9
  62:1 68:15,18
  69:20 71:16 72:25
  77:20,23 80:23
  81:21 86:6,14
  87:13,15 89:3,15
  90:9,16,20 91:11
  91:19,22 92:10
  93:18,19 95:1
  119:25
**90**  8:17 45:5
**9023**  14:13 23:1,6
  29:6
**9024**  23:2,16 29:6
**91**  17:14,19
**992**  46:21
**9th**  22:11 84:19

                **a**

**a.m.**  2:2
**abandoned**  33:18
**ability**  55:11
**able**  10:9 14:7,22
  20:4 22:19 42:3,6
  42:14 45:13 49:5
  91:2 106:2 111:24
  113:2 128:9
**absence**  44:19
**absolutely**  40:9
  70:11 87:6
**accept**  124:25,25
  125:1 132:8
**acceptable**  56:24
**accepted**  118:16

**accepting**  90:18
**accident**  125:21
**accompanying**
  16:11
**accord**  42:25 44:6
**account**  72:23
  75:11 77:10 83:25
  84:6,14 106:18
  111:1 121:16
**accurate**  48:9
  86:3 137:4
**acknowledged**
  65:3 76:8 77:22
**acknowledging**
  75:21 81:19
**acknowledgment**
  93:23
**acme**  57:16
**acquisition**  25:19
**act**  28:7 100:8
  111:18 126:2
**acted**  113:6
  127:15
**action**  20:15,17
  26:11,14,17,25
  27:7,11 28:24
  32:12 54:23 90:17
  100:11,14,21
  102:20 103:22
  114:19,25 115:7
  125:5,20,22 126:3
  132:8
**actions**  32:10
  49:18 122:5
  130:10
**actively**  115:1
**activity**  92:5
**actual**  125:5
**add**  60:18 119:22
**addition**  22:23
  23:15 25:20 27:24
  36:4 49:15 63:17
  84:25

**additional**   31:6,17
37:15 41:18 42:1
52:16 53:7 88:10
95:15 96:17 99:17
102:23 109:12
110:17
**additionally**
88:11
**address**   12:16
14:20 18:25 31:17
42:12 47:20 58:12
60:10,12,18 63:2
63:17 65:4 69:23
73:23 74:1 88:5
90:24 96:1,3
107:24 115:21
117:17 133:6
135:17
**addressed**   27:9
32:18 33:6 35:8
56:19 65:6 92:14
94:11 135:13
**addressing**   27:10
28:21 113:14,24
**adequate**   30:11
30:16,22 31:6
32:21,23 34:20,20
35:14,18 36:6,13
38:25 39:12,20
41:8,12,14 43:3
44:3,23
**adequately**   32:4,5
34:1,22 36:17,22
37:8
**adi**   92:14
**adjourn**   50:3
56:15 57:1 58:2
59:6 62:15 66:12
66:14 82:1 83:1
94:7,14 95:3
**adjourned**   35:8
40:3 47:22 48:1,3
48:4 50:4 56:9

60:3,6 65:23
94:17
**adjournment**   56:5
61:1 66:16
**adjournments**
60:20,23
**adjudicated**
113:22 114:13
**adjust**   109:9
**adjusted**   107:16
107:18 110:3
**adjustment**   109:6
118:11
**admin**   37:21
41:24 46:21 61:10
**administrative**
4:17 5:1 30:15,21
31:23,24 35:4,21
36:24 41:18 43:16
45:5 46:2,14,15
47:9 48:13 49:12
49:25 50:2 51:13
52:21,25 53:5,8,9
53:23 54:5 55:3
58:7,24 66:9
71:15 86:5 88:11
91:15,17,18,23
130:23 131:5,16
**administrator**
4:11,19
**admitted**   76:17
**advance**   32:1
48:17 49:8
**adversary**   11:1,10
11:12 22:10 28:20
78:9,17,18
**adverse**   25:3
113:2 134:2,4,16
**adversely**   133:25
**advise**   12:13
54:15
**advised**   28:13
135:19

**advisors**   49:11
**affect**   54:17 55:7
93:19 134:11,22
**affidavit**   2:17,17
**affiliates**   96:20
**afraid**   37:21
**afternoon**   29:15
95:11,17 129:12
133:5 135:18
**agency**   93:4
**agenda**   2:1 10:16
10:20 11:1,3
29:20,23 45:24
46:9 62:9 65:1,23
68:9 95:9 135:9
**agent**   71:3 76:3
81:25 82:19 89:11
91:3,6 92:17 93:3
93:4,7 99:19
109:20,21 124:23
**agents**   71:7 86:7
**aggressively**
77:14,16 80:22
**ago**   15:5 16:16
18:7 30:3 53:2
55:1 61:5 122:8
**agree**   35:1 42:23
86:12 107:11
122:17 132:5,5
**agreed**   43:11,11
56:8 58:8 110:4
126:15 129:5
**agreement**   2:22
35:16 43:2 71:2
80:11,13 83:6
90:14 92:13 98:6
98:7 102:8 113:12
114:1 116:4 117:8
117:9,14 122:1
123:2,3,12 126:6
126:13,25 127:18
128:15 131:7,13
131:14,14,16,18

131:22,24 132:7
134:1,5,10
**ahead**   38:2 48:15
48:20 71:24 73:22
75:5 78:10 95:9
103:6 129:10,10
129:17 130:8
133:2
**aig**   118:22,23
119:11 121:14
127:2
**aisner**   6:9 12:24
**al**   3:5 10:4 11:3
**alan**   4:18 6:19
38:1,15 66:25
**allegation**   17:5
24:24
**allegations**   16:11
26:12 69:17 86:3
115:14
**alleged**   16:19 17:9
17:18 26:25 32:6
82:13,14 87:3,10
87:19 89:13 93:18
**allegedly**   26:17
**alleges**   24:23
**allocable**   4:15
34:11
**allocated**   30:6
**allow**   49:5 82:7
94:21 100:9 118:7
121:22
**allowance**   53:7
**allowed**   20:25
46:16,17 48:16
50:11,16 60:22
65:18 71:15 91:23
**allowing**   38:8
**alluded**   45:25
**alter**   23:10
**amassed**   50:25
**ambiguity**   109:17

ameliorate 134:7
amend 82:2 88:9
amended 2:4
  10:16
amendments
  130:12
amends 94:15
america 4:24
  92:19
americas 8:10
ami 7:18 57:13
  67:13 70:13 93:3
amicable 42:15
amount 4:14,14
  33:13 34:10,11
  45:7,12 49:8,10
  64:21 71:11 72:22
  74:20 75:19 76:23
  84:20 101:1
  109:11
amounts 49:17
analysis 28:4 81:7
analyze 59:16
announce 36:10
announced 65:1
answer 19:16,18
  19:19 27:18 34:3
  39:24 50:6 55:17
  55:18,21 60:2
  69:23 87:2 115:18
answered 19:20
answers 55:3
anybody 51:16
  76:20 77:3
anymore 55:23
aon 99:18,18
  124:23 126:15
  132:1
apart 99:6 103:22
  104:20
apologies 38:3,15
apologize 44:1
  70:15 74:9 98:1

129:14
appeal 2:5,14
  24:6 29:4 63:20
  63:20,25 132:16
  133:8,11
appear 10:25 25:6
  96:14,24 101:2,12
  102:24 108:18
  112:5
appearances
  12:20
appearing 13:2
  38:13
appears 24:24
  55:7 76:6 96:17
  111:25 112:6
appellate 63:13
applicable 36:24
  98:8 132:15 133:9
application 3:1
  131:21 135:20
  136:3
applied 16:21
  26:11 79:13
applies 55:15
  125:20
apply 25:14 26:4
  126:13,14,14
  134:19
applying 79:11
appoint 3:1
appointed 99:17
appraisals 34:13
appreciate 10:22
  38:7 44:19 55:6
  56:1 95:7 124:10
approach 28:7
appropriate 54:7
  63:21 71:21
  120:11
approval 31:23
approving 2:21

approximate 27:1
approximately
  27:19 34:2 46:24
  47:5,6 83:21
april 1:17 2:2
  11:7 22:11 56:13
  137:25
aptly 106:13
arguably 36:16
  93:21 125:7
argue 49:15 71:5
  73:4 123:17
  133:14
argued 93:5 98:14
argues 134:3
arguing 70:17
  80:16 91:21 107:9
argument 27:15
  31:15 56:14 72:2
  73:1 74:24 76:7
  76:10,11,14 77:5
  77:6,8 78:23 79:5
  81:2 83:20 90:12
  92:12 93:22 94:3
  94:9,11 98:20
  102:11 107:21
  112:19 125:13
  126:17
arguments 61:19
  63:15 72:4,11
  77:15,15 88:10
  89:5 92:24 93:13
arises 96:10
arising 30:22
aronoff 44:17
artful 18:4
artfully 16:8
articles 54:14
aside 67:17
asked 11:15 44:22
  52:4,15 53:10
  98:2 105:16

asking 42:1 51:16
  60:7 106:25 107:1
  126:18
asks 15:10
aspect 80:3
assert 87:18 113:8
  131:25
asserted 24:16
  30:1 68:12 69:14
  87:16,17,21,22,23
  89:20 91:11 93:2
  107:18 114:5,6
  116:13 124:2
asserting 106:15
  122:25 123:21
  135:3
assertion 89:9
  93:8 94:1
asserts 124:3
asset 42:3 45:13
assets 30:12 31:5
  31:7,20 32:6,14
  32:22 36:4,6
  37:17,17,18 42:21
  43:15,17,17,22
  45:12 68:14
assume 63:5 86:2
  95:19 113:5
  117:24
assumes 116:25
assuming 35:22
  86:2 101:7 116:21
  132:7 135:4
assurance 31:6
assure 41:11
asthma 18:1
attached 72:23
  84:8
attacks 18:1
attempt 98:15
attempted 11:25
  31:21 37:10 45:18

**attempting** 45:10

**attention** 65:15

**attorney** 6:3,10
6:16 7:2,10,18 8:2
8:9,16 9:2 16:7,8
67:9 95:25 119:16

**attorneys** 9:9
95:24

**august** 38:24 40:2
72:5

**ausa** 44:16

**authorities** 78:25
97:1 99:4 112:6

**authority** 106:6
108:14 124:12

**authorize** 109:9
109:10,20

**authorized** 99:17
99:18

**automatic** 122:15

**available** 37:20
50:13

**avenida** 9:10

**avenue** 6:4 7:12
8:10,17 83:5

**avoided** 113:11

**awarded** 69:11

**aware** 11:18,19
54:24 87:25 97:7
102:7

**b**

**b** 1:21 2:13 4:1
18:21,23,23 23:17
23:25 24:3 25:14
25:15 26:5 53:17
54:9 62:1 68:15
68:18 69:20 71:16
72:25 77:20,23
80:23 81:21 82:21
86:6,14 87:13,15
89:3,15 90:9,16
90:20 91:11,14,19
91:22 92:10 93:18

93:19 95:1

**b.r.** 24:4 25:5 26:6
92:15,19,21

**back** 13:3 15:6
37:6 38:24 40:2
54:18 57:1 67:1
67:14 70:14 77:23
83:8 97:25 100:9
109:19 115:25
120:10 127:17
130:5

**bad** 119:2,4

**bailee** 81:25 82:19
89:11 92:17

**bailey** 76:2

**baker** 24:2

**balance** 23:25
113:13 114:11,12

**ballot** 64:11

**ballots** 51:16

**bank** 24:5 83:25
111:11,12,17,18
112:2,3 120:11,12

**bankr** 25:5 92:15
92:19,21

**bankruptcy** 1:1
1:13,23 11:11
14:11,13 22:14
23:1,5,16 27:18
27:21 54:10,11
84:2,20 85:3,6,24
86:20 91:12,15,20
91:22 95:1 113:16
118:20 120:7
122:18 131:20

**bar** 51:14,22
52:21 54:11 85:18
130:23

**based** 25:6,23
31:12 33:23 37:7
42:20 51:14 53:17
76:7 81:3,6,7
85:10 89:12,24

94:5,7 99:1
107:10 124:7
133:20 135:25

**bases** 69:13

**basic** 26:16
104:11

**basically** 36:8
67:22 126:9

**basis** 12:2 16:22
18:9 24:19 40:19
81:3,25 87:6
89:20 93:22 104:1
129:23 134:12

**bat** 45:8

**battaglia** 6:15
38:16

**bayamon** 105:8

**bdc** 23:13

**bear** 53:20

**bears** 38:7 73:11

**beg** 104:15 112:17

**beginning** 10:21
13:12 14:1 22:17
38:7 67:2 76:15
83:22

**behalf** 3:3 4:9,18
4:24 5:9,15,18,23
38:13,16 44:15
52:7 57:13 70:12
70:18 71:19,22
72:1 90:24 94:20
95:5,12 113:18

**belabor** 40:16
68:20

**belief** 16:6

**believe** 17:7 19:2
19:5,13,14,20
20:12,21 21:9,11
22:20 25:23 26:13
26:14 27:9 29:3
30:19 41:1 42:8
53:5,8 54:9,25
56:8,20 57:10

68:6 70:15 72:3
73:1,15 75:20
78:13,14,15 79:9
79:13,21 80:5,13
80:20 89:1 104:20
106:2,12 113:15
116:3 118:3
121:10 125:11
127:5 134:20

**believed** 22:24
125:22

**believes** 14:14

**believing** 77:19
80:22

**belonged** 104:25

**ben** 8:6 60:16
64:17 65:12

**bench** 26:13 27:10
29:9,12

**beneficial** 33:25
105:12

**beneficiary**
102:17 105:21

**benefit** 11:6 96:12
106:22 119:20

**benefits** 115:11

**benjamin** 52:10

**benzija** 6:15
38:16

**berkowitz** 3:3
135:18,19 136:2,6

**bernstein** 7:17

**best** 4:1 49:12,13
55:24 123:21
125:12

**better** 42:2,23

**beyond** 36:2
101:2 105:24

**big** 21:10 118:16

**bill** 41:21 113:7

**billiard** 87:21

**billiards** 4:1 8:9
71:19,23 72:1,2

[billiards - certain]                                                         Page 6

74:6 86:25 93:20
94:13,15,20 95:3
**bills** 21:13
**bit** 38:22 39:8
40:19 60:18 67:4
**blackburn** 111:6
111:8,13
**blah** 36:7,7,7
**blanket** 101:18
**blow** 77:25
**blurred** 38:22
**boat** 54:2 57:14
77:8 78:2,7
**books** 51:15 88:20
**borne** 115:11
**bottom** 121:17
**bound** 107:13
**box** 15:3 72:25
78:10
**breach** 17:20
118:25
**breached** 17:11
**breaches** 131:16
**brian** 2:6,12,18
9:17 11:2
**brief** 46:1 59:11
98:2 119:15
121:25 123:4,10
123:20 124:10,11
125:10 128:9
130:16 131:3
132:19 133:15,16
**briefed** 57:19 61:5
61:8 70:13 130:13
130:13
**briefing** 95:16
133:21
**briefly** 14:1,20
44:12 88:7 115:22
121:21 124:22
**briefs** 95:18,20
**bringing** 18:9

**broker** 109:20,21
**brotherhood** 24:8
25:17
**brothers** 24:4
**brought** 11:13
63:18
**building** 7:3 115:9
119:20 120:20
**bunker** 92:18
**burden** 24:25
25:1 73:11 81:9
81:10,12 82:11,12
**burdens** 81:12
**burdensome** 66:3
**bureau** 120:16
**bureau's** 120:19
**burkley** 7:17
**burner** 59:24
**bus** 66:24
**business** 51:25
92:2
**busy** 13:16
**butterfield** 8:6
52:10 57:8 60:9
60:15,16 61:23,25
62:19 64:17,17
65:12,12,22
**buy** 69:2,6,21
70:22
**buyers** 71:7
**buys** 70:20

**c**

**c** 6:1 10:1 132:22
137:1,1
**c.s.p.** 9:1
**calculations** 32:18
**calendar** 13:5
**call** 12:7 13:12,22
13:25 24:23 52:19
67:10 73:13
135:11
**called** 12:12 96:11

**canadian** 2:22
**capable** 66:19
**capital** 8:16 105:8
**carco** 25:4 26:6
**care** 17:3,6,12
27:1 52:25 89:17
**careful** 110:22
**carefully** 15:22
26:7,10
**cares** 21:16
**carl** 4:11,19 6:16
29:25 38:17
**carlos** 9:6,14
95:24 122:7
130:11
**carried** 30:4 81:9
82:11
**carrier** 91:3
**carriers** 128:10
**carry** 123:11
**carrying** 81:12
**carve** 36:7
**case** 1:3 18:5
21:15 25:1 27:23
28:11 33:16 37:16
39:16,18,19 40:24
44:18 45:1,5
52:21,24 53:18
54:14 55:8,23,24
61:2,20 63:10,14
69:2 72:10 78:8
79:14,14 83:5
87:24 91:18,25
96:7 97:10,20,20
99:2,8,9,9,10,15
99:21 100:2
101:16,16 102:4,4
102:6 103:25
105:1,7,7 110:13
110:19,19 111:11
112:1 116:14
118:15 119:6,12
120:10,15 121:1,3

122:18,20,20
124:2,2 125:3,10
125:10,11,19,23
126:16,23 127:16
130:16,24 133:14
134:9,20 136:5
**caselaw** 86:22,24
88:16,17
**cases** 13:17 23:13
25:5 26:6 30:1
54:17 61:19 68:25
79:11 87:10 92:18
96:25 97:15,19
102:5 104:4,4
105:4 106:14,20
106:25 107:1,2
111:3 125:21,21
126:3,18 128:8
**cash** 33:4 35:13
35:16,16 36:9,10
36:18 37:19,19,20
43:6,7,7,15 45:11
45:12 50:14,24
85:24 86:19
**catch** 25:14
**categories** 24:12
**cause** 22:4 26:14
26:24 27:2 94:2
103:22 114:19,25
115:7 132:8
**caused** 27:5 93:25
**causes** 26:11 27:7
27:10 28:24 32:11
90:17
**causing** 40:15
**cc** 135:2
**cede** 78:21
**cent** 134:4
**certain** 5:7 26:18
27:23 48:12 50:13
54:5 55:25 56:22
122:19 125:6
127:14

**certainly** 39:16
76:13 80:9 81:24
82:8 125:8
**certificate** 102:13
122:3
**certificates** 99:18
109:21,22
**certification**
135:22
**certified** 137:3
**certifying** 5:17
**cestero** 9:1
**cetera** 127:22
**challenging** 82:16
**chambers** 25:8
136:1
**chance** 16:3 22:23
25:10 118:20
**change** 33:16,23
39:11,23
**changed** 29:3
32:15 33:15 36:14
36:15 40:11,12,18
45:1 122:3
**charge** 119:12
**charged** 92:25
**chasing** 77:16
**check** 57:24 72:25
78:10,14,16
110:18,18,19,24
118:21
**checked** 58:6,7
**checking** 58:22
67:11
**checks** 67:9
**chico** 9:15 95:25
96:3 132:25 133:4
133:4
**choice** 4:1 94:23
**choose** 19:10
**cir** 23:14 24:2,9
25:18 79:15
134:14

**circuit** 63:21 64:3
79:14
**circumstance**
66:10
**circumstances**
24:7 33:16,23
36:14,16 40:18
122:19 124:12,13
127:14
**cite** 31:2 107:2
110:14
**cited** 25:6 26:6
69:4 87:11 96:11
97:15 99:8 102:6
105:6 110:14
111:9,12 112:3
124:3 125:3,11
128:9
**citing** 23:13 25:18
102:3 112:2
**citron** 7:9 52:7
83:16
**civil** 21:18 23:6,17
28:6 105:19,22,25
108:15,24
**claim** 3:7,10,15,20
3:23 4:6 5:1,3,6
16:23 30:1,5,11
30:22 31:12 32:3
32:7,23 33:2,8,11
34:1 38:25 40:5
40:24 41:8 43:5
46:2 48:20 49:15
51:11,11 53:5,8
54:25 57:10,14,17
58:24 62:1 64:19
64:20,22 65:9,18
67:18 68:10,14
69:12,17 71:16
72:2,21,22 73:11
73:12,19,19 75:15
75:18 76:8,23
77:13,20 78:5,12

79:19 80:15,23
81:22 82:2,12
86:9,15 87:10
88:4,11,13,15
89:2,3,3,12,15,15
89:16,19,23 93:17
93:19,24,25 94:1
94:8,15,24 99:16
100:6,18 107:18
113:20,21 114:3,4
114:13,14 123:2,3
123:4,7,22,23
124:5,6,8 126:12
127:17 130:16,18
130:19,19,21,22
131:2,4,5
**claimant** 64:8
93:10,15 94:1
99:12,14 126:4
**claimant's** 3:10
100:6
**claimants** 49:19
53:15,23 58:10
68:13 93:3
**claimed** 84:5,24
**claims** 3:8 4:17
5:4,7 11:12 18:25
22:16 32:12 33:9
35:6,8 45:5 46:15
46:21,22,24,25
47:5,6,9,10,20,24
48:1,3,4,7,9,10,13
48:16,19,22,24
49:8,12,13,23,25
50:2,11,22 51:9
51:13,23 52:21
53:9 54:5,9 55:3
56:5 58:7 59:1,4
64:13 65:3 66:9
66:22 67:24 68:12
69:15,18 71:16,21
74:19 87:6 90:22
91:11 94:13 95:1

95:7 98:8,9 114:6
114:6 116:15
133:23
**clarify** 46:12
**classic** 96:6 97:4
**clause** 122:13
131:18,22,24
**clauses** 25:15
109:18
**clear** 14:8 24:18
25:2,9 28:23
32:10 36:1 39:13
40:1 44:2,7,9
51:12 57:2 69:10
69:21 97:22
108:16 121:18
**clearly** 20:2 39:25
93:17 96:21 98:22
102:22 126:20
127:2
**clerk** 129:12,14
129:15 130:1
**clerk's** 11:18,20
13:24 20:7 22:13
27:13 29:10 133:3
**client** 10:6 39:23
54:21 55:1 58:24
59:7 63:5,7,19
64:6,19,22 67:21
70:19,21 71:15,22
73:19 74:5,6
75:14,21,21 77:6
77:7,10,19 78:10
80:19 83:20 84:10
84:11 85:1,2,23
86:11,12,18 87:20
87:25 89:13 91:3
100:10 104:20,25
106:22 119:18
**client's** 40:24 54:9
64:22 67:18 76:23
77:5 86:7

**clients** 37:7 39:16
  53:25 54:7,10,15
  56:24 57:8 59:15
  61:24 63:24 64:13
  64:14 65:24 68:5
**clog** 64:13
**close** 51:25 56:23
  61:13,14 64:21
**closely** 92:14
**closing** 31:1 39:5
**code** 91:12,15,20
  91:22 95:2 105:20
  105:24,25,25
  108:15,24 122:18
**coke** 2:6,13,18
  9:17 11:2
**cold** 77:25
**collateral** 4:13,13
  4:15 34:10 35:13
  35:16 40:13 43:7
**colleague** 95:10
**collect** 99:14
  103:4 104:12
  109:9
**collected** 84:4
**colo** 5:9
**colon** 5:14,18,23
  9:13 95:25 96:3
  113:17,18 114:4
  114:25 115:7
  116:19 117:5,12
  117:18,24 119:21
  119:23 120:6
  121:13,22,24
  123:7 127:24
  128:1,5 129:9,11
  129:13,18 130:6,9
  131:3,8,18 132:12
  132:21 133:6
**come** 37:1 39:11
  42:15,24 44:5
  51:20 81:18

**comes** 50:25
  56:23 94:8
**comfortable**
  20:11
**coming** 36:9 54:1
  68:6 117:4 124:15
  127:17
**comity** 91:3
**commenced** 49:18
**commencement**
  91:25
**comment** 68:4
  88:6 119:9
**comments** 52:9,11
  52:18 60:18
**commercial**
  111:20
**commercially**
  111:19
**commission** 71:4
**commissioner**
  104:9 122:7
**committee** 3:4
  37:12 43:17 58:6
  66:9 135:20
**communication**
  93:21
**communications**
  114:10
**companies** 90:5
**company** 4:5 7:11
  52:9 83:17 87:21
  97:13 100:22,25
  110:16,22 114:20
  115:8 121:1
**company's** 100:23
**compare** 45:13
**compel** 116:14,15
  117:2
**complain** 61:1,2
  128:3
**complaining**
  106:24

**complaint** 12:16
  12:17 15:23 16:6
  16:10,13,15,17,18
  17:1,9,24,25 19:3
  19:16,18 22:4,16
  25:25 26:10,12,14
  27:6,18,22 28:25
  64:24 78:16 83:11
**complete** 78:20
**completed** 74:24
**completely** 10:4
  115:24
**compliance** 5:17
  5:22
**complied** 121:18
  122:9
**complies** 117:8
**comply** 117:7
  131:20
**comport** 93:2
**comports** 97:4
**comprehensive**
  43:4
**compromised**
  33:18
**computer** 84:11
  84:24
**concern** 40:15
  42:25 44:3,22
**concerned** 26:25
  29:7 31:16 42:9
  43:7 81:6 82:24
  86:8 93:14,20
  94:10 117:16
**concerning** 17:2
  39:2 96:1
**concerns** 39:1
  62:4 73:24,25
**conclude** 26:7
**concluded** 26:24
  28:16 135:11
**concluding** 29:5

**conclusion** 23:10
**conclusively** 60:2
**conduct** 85:21
**conducted** 11:14
**conference** 5:1
  34:6,7,18 35:10
  37:24 38:21 39:7
  40:17 46:1 52:4
  52:15
**conferences** 29:24
**confirm** 135:10
  135:10
**confirmation** 30:3
  30:9,10,20 31:4
  31:22 32:1,18
  33:15 36:3,25
  39:3,9 40:8,10
  42:20 43:14 45:4
  50:23 58:23 62:8
**conflict** 27:2
  130:10
**conflicted** 26:21
**conflicting** 108:9
**conflicts** 3:2
**conn** 92:19
**connection** 24:21
  30:24 51:16 80:14
  117:22
**conseco** 120:21,22
**consensual** 82:6
**consensually**
  74:11
**consent** 31:23
  36:19
**consequence**
  99:14
**consequences**
  113:3
**consequently**
  87:16 100:20
**conservation** 23:4
**consider** 89:5
  90:7 131:23

**considered** 21:7
24:20 26:3 43:21
85:11 107:12
135:21
**consistent** 104:6
**consolidate** 19:7
**consolidated** 19:9
**constitución** 9:10
**constitutes** 73:7
**constructive**
70:18 71:6,11
77:14 78:5 81:2
83:11 87:22 92:17
124:23
**consultation** 60:5
**consulted** 49:24
**contains** 105:23
**contemplated**
43:13
**contemplates**
126:25
**contested** 42:24
47:1 90:15
**contesting** 68:13
68:23
**context** 41:5
59:17 92:13
**continue** 33:14
39:1 43:1,20 49:3
49:5 50:3 51:6
53:25 58:2 59:6
59:20 85:2,5,7,23
90:20
**continued** 13:17
33:3 47:9 72:6
82:7 84:16
**continues** 49:7
**continuing** 49:4
**contract** 76:11
96:10,16,18 97:4
97:5 104:1 108:16
109:18,19,24
110:2,25 118:25

122:2 126:2 127:6
**contracted** 97:6
**contracting**
108:17,19
**contracts** 104:10
122:4
**contrary** 91:21
108:19 126:2
**contribution** 45:7
**control** 71:10,12
71:14
**controlling** 23:8
**convening** 82:4
**conversations**
37:10 44:23 45:10
**convincing** 25:2,9
**copy** 15:7 29:12
29:17
**corp** 25:19
**corporation** 1:7
2:22 3:5 10:4 11:3
95:12 107:16
**correct** 28:1 40:14
53:4 55:12 79:7
80:20 81:20 85:15
107:19 126:22
130:1,24,25
135:12
**correctly** 27:14
78:23
**correspondence**
11:18,19 25:7
**cost** 119:9,18
127:21
**costing** 119:18
**costs** 37:10,15
115:10
**counsel** 3:2 11:22
12:11 29:8,11
35:23 37:3 42:6
43:18 44:17 45:11
52:11 57:18 60:9
66:19 67:16,22

73:3 74:16,17
78:3 83:13,16
86:25 92:4 95:21
119:13,21 132:24
134:22 135:21
**counsels** 58:8
**count** 48:10
**country** 137:21
**couple** 38:11,19
38:23 54:20 91:14
107:8 128:8
**course** 16:1 29:4
33:23 48:18 73:8
90:11 92:2 97:18
98:17 100:17
101:14,14 104:19
106:9,20 110:4
123:24 132:3
**court** 1:1,13 5:22
10:2,8,9,13,21,22
10:24 11:4,6,20
12:13,19 13:1,10
13:16,18,20,24
14:12 15:1,8,10
15:16,20,25 18:10
18:11,15 19:10,14
19:17 20:1,5,14
20:18 21:2,5,5,8
21:20,23 22:6,7,9
23:2,9,11 24:11
26:1 28:12 29:16
29:19 30:9,13,19
31:10,19 32:3,8
32:20 33:19,22
34:5,8,8 35:7,11
35:12 36:12 37:14
37:25 38:2,5,8,12
38:18 39:19 40:7
40:10,23 41:2,12
41:20 42:17,18
43:2,14,21,24
44:9,13,24 45:3
45:15,21,23 46:6

46:9 47:1,12,17
49:4 50:9,19 51:2
51:9,21 52:2,13
52:23 53:11,14,18
53:20 54:13 55:5
56:25 57:5,19
58:14,16,19 59:8
59:10,13 60:11,14
61:22,24 62:11,20
63:3 65:4 66:12
66:19 67:8 68:8
69:24 70:3,5,9
71:20,24 72:17
73:22 74:2,5,9,22
74:25 75:5,25
76:6,18,24 78:4
78:11,18 79:1,24
80:7,10,16,25
81:14,18,23 82:9
82:10,17 83:12,18
85:13,16 86:1,13
86:22 87:2,13
88:3,7,23 89:6,25
90:4,8,23 91:5,17
92:20 94:22 95:18
96:4 97:17,19,22
99:21 100:3,13,23
101:6,11,19,21,24
102:2,17 103:6,9
103:13,17,21
104:13,16,18
105:4,14 106:14
106:25 107:4,25
108:12 109:1,5,13
110:2,21 111:2,8
111:13,16,24,25
112:4,10,14,19,25
113:5,23 114:22
115:3,17,20,23
116:9,11,21,25
117:10,13,22,25
118:4,9,20 120:2
122:21 123:8,16

123:18 124:19,21
124:25 125:9,16
125:22,25 126:3
126:23 127:10,25
128:2,6,17,22
129:1,6,10,14,16
129:19,20 130:2,7
130:23 131:1,7,11
132:5,18 133:2,12
134:15,24 135:2,8
135:15,17,23
136:3,7,10
**court's**  10:22 36:3
  44:20,22,25 66:5
  73:24 95:6
**courthouse**  72:8
**courts**  24:2 28:7
  28:13,14 54:15
  89:4
**cover**  32:6 89:23
  106:1
**covered**  17:7,8
  51:19 96:24
  106:12 107:20
  108:1,2,10 109:6
  109:7 121:21
  123:4 134:12
**covers**  89:23
  133:18
**craft**  7:10 52:8
  54:24 58:23 64:11
**creates**  91:12,15
**creative**  87:8
**credibly**  94:9
**credit**  84:1 105:10
**creditor**  30:10
  41:11 57:16 93:6
  105:12
**creditor's**  135:20
**creditors**  3:4
  31:24 33:21 35:9
  35:21 37:12 41:19
  43:16 46:25 48:13

49:14,21 50:15
51:1 58:6,12,13
60:24,25 61:10
66:9
**critical**  77:17 81:5
  87:23
**cross**  61:3
**crux**  77:5
**crystalized**
  130:17,18
**culpable**  28:9,17
**curious**  13:16
**curley**  6:9,13
  12:23,23,24 21:24
  22:1,8 29:14,17
**current**  37:19,20
  42:2
**customer**  70:20
  71:1,4
**customers**  69:5
  70:24 71:9 90:15
  92:7,8
**cut**  37:10,23
  69:21 129:24

### d

**d**  1:22 4:1,18 10:1
  92:15,19,21
**d&o**  32:12
**daily**  83:23
**damage**  33:11
  99:10
**damages**  16:24
  69:16 97:9
**dashboard**  12:3
  12:10 13:21,25
  14:5 25:7 52:3
**date**  10:3 20:14
  32:1 33:5 44:24
  48:15,17 51:14,22
  52:21 64:15 66:15
  84:15 91:25 94:21
  95:3 130:24
  137:25

**dated**  117:5
**david**  7:15 52:6
  63:1 83:15
**davidoff**  7:9 52:7
  83:16
**day**  12:14 13:15
  15:5 20:5 62:18
  66:13 74:11 79:2
  83:25 123:11
  134:23
**days**  15:5 19:15
  19:19 20:15 53:4
  65:23 75:19 80:24
  85:6 88:22 91:24
  94:15
**de**  9:10
**deadline**  47:18
  74:12
**deadlines**  47:11
**deal**  21:10 26:9
  40:5,7 43:22 65:5
  66:22 82:6 109:5
**dealing**  110:8
  117:3,15
**deals**  110:11
**dealt**  27:8 32:18
  98:15 123:23
  132:6
**debtor**  1:9 37:16
  40:3 51:24 56:7
  56:14 60:22 64:3
  70:18 72:6,9
  75:19 77:21 78:8
  78:9 79:7,17
  81:12 82:7 86:19
  90:10,11 91:4,24
  92:1,8,9,23,24,25
  93:14 105:10
  112:16,20,21
  113:1,2,20 115:11
  116:1 118:17
  122:15 126:5
  127:16,18 128:13

**debtor's**  44:24
  47:20 92:2
**debtors**  2:21 3:7
  4:2,5,22 5:3,6,12
  5:14 6:3 10:20
  30:12,16 31:9,21
  32:5,9,11,12,13
  32:14,15 33:5,7
  35:1,5,15,20
  36:17 37:23 42:6
  42:16 43:11 45:11
  45:16,19 46:14
  47:3,8,15,23 48:7
  48:18,22 49:2,7
  49:11,16,22,24
  50:2,12 53:1,13
  54:3 55:11 56:6
  58:3 59:11,22
  60:4 61:2,12,14
  61:20 62:3,12,14
  68:10,11,16,21
  69:1,2,5,6,7,7
  74:16,19 79:4,10
  83:21,23 84:1
  85:12,14,18,19,20
  85:22 88:12,13,15
  88:18,19,20,20,25
  89:4,9,22 90:14
  91:10 94:12,24
  95:5,20 98:14
  100:12,12 113:8,8
  113:24 115:14
  116:3 121:6,9
  122:19 123:5
  133:24,25 134:6,8
  134:21 135:2
**december**  19:14
  116:13,20 127:3
**decide**  66:23
  105:2
**decided**  14:9
  28:15 105:3

[decides - dismissed]

decides 72:9
decision 19:10,13
20:19 24:10 50:3
53:14 56:21 62:14
63:24 64:2 68:7
100:1 132:16
decisions 23:8
declaration 72:16
76:20 77:3
declarations
120:17,18,21
declare 133:22
declared 16:20
dedicated 127:4
deemed 105:11
deeply 21:14
default 11:10 20:5
20:8,16,17,19,21
21:1 22:5,13
27:13,14,20,22,25
28:5,8,9,10,16,19
29:2
defaulting 28:11
defects 54:5
defend 106:2
defendant 22:14
28:3,23 54:21,22
defendants 12:18
12:24 16:14,21
17:11 18:18 21:11
49:20
defending 114:17
defense 12:10
19:7,8 22:3 28:12
28:24 79:19 85:17
85:19
defensively 60:23
60:23
defer 36:2 60:8
deferred 35:7
defined 31:6
51:22 96:19,19
131:8

definitely 38:19
definition 71:10
71:11 102:23
109:18
del 92:15,21
delaware 92:21
delay 61:1
delaying 132:23
delays 84:24
delivered 69:2
72:18 76:2,9,9,12
81:16,21 82:3
84:3,7 85:12,14
85:19 88:21 89:10
89:10 92:7,8
delivering 84:11
85:10 110:24
delivery 70:24
71:6 81:19,24,25
82:19,19,19,21
87:7 91:18 92:16
92:23 94:11
deluge 54:11
demand 49:17
64:23
demised 96:13
demonstrate 59:3
demonstrated
58:9,11
denied 19:11
100:6
deny 134:20
denying 27:10
29:9
department 7:1
depend 100:12,14
depends 100:16
103:25
deposit 116:16
deposited 84:6
111:1
deposits 84:7,13
84:17,21

deprived 126:1
derive 133:23
describes 101:15
desire 33:4
detail 26:13 34:15
34:22
detailed 18:6
43:19 45:14,15
78:24
details 27:6
determination
38:24
determine 35:2
64:3
determined 30:5
32:3
determining 4:12
4:14 34:9,10
113:7
detriment 79:23
developed 17:16
developing 49:25
difference 129:2
different 10:24
26:21 42:17 72:3
77:7 79:9 113:24
121:4 128:18
129:8
differently 42:13
53:13 54:3 80:21
134:9
difficult 40:19
digest 21:15
diminishing
132:10
diminution 4:14
30:25 34:11
direct 63:20 67:6
83:24 98:3,21
100:21 102:20
122:5 125:20,22
126:3

directed 43:14
78:10 107:17
directing 4:16
34:11
direction 21:16
95:6
directly 71:8
92:12 116:5,7
130:11 134:11
disagree 45:2
61:14 64:1 132:14
disallow 5:7
disappears 66:2
disappointed
12:12
discharged 23:23
disclosed 46:15,20
46:21 49:16
disclosure 102:12
116:15
discovered 23:20
24:14,17
discreet 61:9
discretion 24:11
25:23 28:13 58:2
discuss 82:8
discussed 30:8
62:14 96:8
discussion 13:8
66:15 79:5 87:1
122:6 125:19
131:9
discussions 34:16
41:7,10 42:1
53:23
dismiss 11:12
14:21 15:22,23
18:19,22 20:6
22:4,5,16 26:2,9
27:16 28:3,22
73:18 119:14,17
dismissed 83:12

**dismissing** 19:3
**dispositive** 29:7
**dispute** 33:1,8
  57:3 88:24 92:22
  107:11
**disputed** 49:8,21
  62:1,2 64:20 65:3
  88:23
**disputes** 47:22
  69:21 73:4,6
**disputing** 33:13
**disregard** 109:24
**disregarded**
  106:6 109:23
**disregarding**
  109:11
**dist** 23:12
**distinct** 100:11
  104:2
**distinguishable**
  99:21 124:12
**distracted** 65:25
**distress** 18:1
**distributable**
  49:10
**distribute** 50:24
  63:7,11
**distributed** 50:14
  63:9 64:7 101:15
  104:5
**distribution** 31:22
  43:12,13 46:18
  49:9,22 50:16,17
  52:17 54:1 65:2,8
  65:11,17
**distributions**
  33:20 35:20 36:18
  48:15 67:3
**district** 1:2 53:16
  92:20
**divide** 61:18
**docket** 10:20 31:4
  51:3,5,7 53:4,6

65:15 119:24,25
  119:25
**document** 2:6,6,9
  2:15,18,18 3:11
  5:17,22 66:8 74:7
  74:8 116:12
**documenting** 48:8
**documents** 16:1,2
  99:19
**doesn't** 89:15
**doing** 28:1
**dollar** 113:7
**dollars** 41:25
  63:23 119:10,12
  119:18 134:5
**door** 41:25 43:9
  44:4 62:24 65:11
**double** 78:14,15
**doubt** 108:8,16
**doubtful** 63:25
**doug** 8:13 71:18
  71:25 78:21 94:19
**dozens** 61:19
**drain** 1:22 10:3
  135:18
**driving** 55:13
  66:21,24
**drop** 68:25 69:1
**dual** 109:20
**dubbed** 67:4
**due** 21:7,9 73:8
  74:12 84:24
  109:11 111:24
  131:22
**duplicative** 69:15
  69:16
**duties** 120:19
**duty** 17:4,11,20
  27:1 98:24 102:9
  126:10,11

**e**
**e** 1:21,21 5:9,14
  5:18,23 6:1,1 10:1
  10:1 67:15,23
  70:19 137:1
**earlier** 14:16 15:5
  18:12 29:12 30:24
  35:17 45:25 58:14
**easily** 131:19
**ecf** 2:23 3:5,8,12
  3:15,17,20,23 4:2
  4:6,9,20,22,25 5:4
  5:7,10,12,15,19
  5:24 67:3,9,11,15
  74:8
**echo** 57:18
**ecro** 1:25
**effect** 55:9 92:25
  122:25 123:5
  134:2,4,7
**effective** 3:2 32:1
  33:5 48:15,17
  64:15
**efficiency** 49:3
**efficient** 35:7
  47:23 49:2
**efficiently** 59:22
**effort** 45:20
**efforts** 18:18
  46:14 117:19
**eft** 84:14,15
**eight** 30:3 35:2
  58:19,21
**eighteenth** 47:16
**either** 19:15,17
  36:18 43:5 63:10
  81:23 83:3 96:2
  112:5,7 132:18
  133:22 135:9
**electronically**
  74:21
**element** 17:8
  68:17

**elements** 16:19,20
  18:6,9 26:11,12
  87:14
**elevate** 69:18
**elevated** 67:5
**eleventh** 5:6 47:3
  47:11 61:4,7
**email** 11:18,19
  12:13 13:3,19,20
  15:2 56:9 67:7
  72:23 74:18 75:1
  75:10,14 76:7
  81:18 93:23
  135:25
**emails** 78:9 83:9
  84:5,9,23 85:9
**embodied** 108:22
**emergency** 15:11
**emotional** 18:1
**employ** 3:1
**employed** 23:3
**employee** 76:8
  86:10
**encourage** 37:3
**ended** 13:4
**endorsement**
  110:21
**ends** 24:1
**enforce** 36:23
**enforceability**
  132:7
**enforceable**
  122:14 131:19
**engage** 43:20
**engaged** 93:14
**enlargement** 2:5
  2:14
**enter** 12:9 20:5,19
**entered** 11:7,25
  26:8 27:14,14,20
  43:14 47:13,17
  106:8

[entering - facts]                                                    Page 13

entering 116:4
entire 109:18,19
entitled 35:6 43:8
  68:12,15 69:9,12
  92:11 101:1
  103:15,18 104:22
  106:21 107:14
  125:12
entitlement 68:17
  69:13
entity 77:21
entry 2:21 20:8
  22:13 28:19
equitable 83:20
  85:10,18 86:24
equities 114:11,12
ergo 105:8
errors 84:11
escrow 116:16
  117:2,3 125:2
escrowed 39:13
esl 32:13
essence 25:11
  98:23
essentially 39:22
  77:22
establish 25:2
  26:25 128:10
established
  130:10
establishing 16:23
estate 4:11,19
  32:19,22 33:25
  58:25 85:20,23
  86:11 134:3,16
estimate 61:15
estimated 37:18
  45:4
estopped 79:19,20
estoppel 73:1
  76:10,13 77:8
  78:23 79:1,5,7,8,8
  79:12,12,13 80:17

81:10 82:11,24
  83:3,20 85:17,18
  86:24 87:6,9,10
  93:13,17,22
et 3:5 10:4 11:3
  127:21
evaluate 45:11
event 25:10 30:21
  93:10
eventually 33:20
  48:16
everybody 38:11
  40:21 52:1
everybody's
  40:19
everyone's 90:8
evidence 23:20
  24:14,18 25:2,9
  25:20 72:14,17,21
  73:9,12,13,17
  76:1,3,15,20 77:3
  109:22
evident 108:19
evolve 39:17,18
exact 20:20,23
  78:2
exactly 107:22
examination 33:9
examines 93:23
example 16:19
  45:3 76:21 96:6
exceeds 37:18
exceptional 24:7
exceptions 91:14
excess 50:13
  101:3,11 104:24
exchange 102:4
exchanged 34:13
exclusive 115:16
exclusively
  116:16
excusable 23:20
  24:13

excuse 120:14
executed 130:18
executing 50:1
executive 72:24
  75:11 77:10
exercise 25:22
  28:12 41:13
exhibit 74:3,16
  120:3
exhibits 15:22
  120:4
exist 22:3
existed 71:14
existence 109:22
existent 84:13
expect 23:10 27:5
  27:5 41:23 119:6
expectations 97:3
  97:5 119:1
expected 36:8
expecting 54:12
expeditiously
  50:24
expense 30:15,22
  31:24 35:4,21
  36:24 37:21 46:2
  50:4 86:5 91:15
  91:17,23 130:23
  131:17
expenses 52:25
  91:18 115:15
experience 124:11
expire 133:14
expired 19:18
  28:2
explain 17:14
  91:2
explained 17:4
exposure 49:23
expressed 11:16
  17:2,3 119:3
extend 4:8 122:14
  132:15

extended 122:18
  122:24 125:24
  133:10
extending 134:18
extension 19:17
  74:12 79:3 134:25
extensive 22:23
extensively
  108:10
extent 35:15 37:4
  41:16,24 50:11
  87:4 134:10
extraordinary
  23:3
extremely 118:16

f

f 1:21 137:1
f.2d 24:2
f.3d 23:14 24:9
  25:17 79:15
  134:14
face 37:22 134:6
facie 68:17 72:22
  73:12 76:22
facilitate 60:21
fact 14:4 18:21
  20:4 22:22 24:18
  28:4,23 32:16
  72:13 77:21 79:20
  84:7 90:16 103:4
  106:10 111:23
  112:20 118:10
  121:5 124:16
  135:4
factor 66:21 134:2
factors 28:8,12
  33:24 55:8 79:16
  81:8 114:12
facts 23:8 26:25
  27:1 33:16 39:22
  39:23 73:6 77:25
  85:10 88:14 100:7
  114:5

factual 16:11,22
17:5 18:8 25:25
26:12 127:14
fail 6:7 10:18,19
29:21,22 30:17
31:2,14,20 34:25
35:25 37:9 43:10
45:25 46:3,8,11
50:12,20 51:3,12
51:23 57:23,23
58:14,15,18,21
59:12 62:9 63:10
63:17 64:1,10,18
64:25 65:21 66:4
66:17 67:2 68:2,9
74:7,15,15,23
75:3,7 82:14
89:21,22 90:2,6
95:4,5 107:20
135:10,10,16
136:9
fails 88:13
failure 73:18
87:18
fair 116:6
faith 81:15 105:9
119:2,3,4,5
fall 63:15 113:15
121:19
falsified 84:12
85:8 110:21
familiar 15:25
far 26:24 29:6
40:12 41:6 43:6
62:20 81:5 82:21
82:24 86:8 90:12
90:15 93:13,20
94:10 109:7 114:2
117:16 122:23
126:19 128:12
farm 120:16,18
farmers 97:20
99:2 102:4,4

fashion 10:25
49:5
fault 22:21 28:1
favor 108:9
feature 129:19,20
february 46:13
67:15 95:14 121:8
121:25 122:10
federal 7:3 11:10
14:14 23:6,17
28:5 79:8,13,16
79:18,18 100:8
fedex 71:8 93:7
fee 67:23
feel 20:11 21:6
55:12 56:22 70:5
fees 53:15,25
114:15,17,18,20
felt 12:12,15
14:16 38:20
ferraiuoli 9:8
fictious 84:14
fictitious 84:20
fifteenth 47:16
fifth 6:4
fighting 21:17
figure 55:14 58:16
figured 20:9 65:6
file 2:5,14 43:22
51:3,7,11 56:6,7
59:11 61:7 67:14
74:13,20 88:12
95:15 135:22
filed 2:6,18 3:3,11
4:8,18 5:9,14,18
5:23 10:16,20
11:24 12:16 16:6
19:14 20:6 22:24
24:19 29:25 30:2
30:7 31:4 32:11
38:23 46:23 47:3
47:15 51:10,11,14
51:14 53:6 58:25

61:3,4,6 65:15
68:11,19 70:14
72:5,21 74:9 85:3
85:24 88:12
116:19 122:6
130:21 131:2
files 124:24
filing 75:13,15
78:8 84:2,20 85:6
filings 54:12
filled 26:19
filling 44:19
final 24:3 63:11
finality 23:4 24:1
finalize 17:17
finally 12:6 13:19
27:12
finance 120:22
find 21:17 97:12
110:16
finding 36:13
findings 35:17
fine 11:4 29:19
34:25 43:10 66:23
67:8,10 71:24
82:10 90:6 94:22
116:11 117:10
124:21
finish 75:9 106:16
124:20
finished 63:17
64:11
firm 52:11
firms 57:8,20
first 10:6 11:2
13:12 17:8 18:19
19:6 22:12 26:9
27:21 29:23,24
35:6 38:6,23
42:14 44:5,16
47:25 48:7 54:21
59:11 65:14 72:12
79:6 83:19 89:5

96:5,6,18 97:2
100:20 102:2
113:11 120:9
fitness 8:2 60:17
five 23:22 115:24
130:5
flahaut 8:13 71:18
71:18,25 72:1,19
73:23 74:4,6,8,23
75:7 76:4,13 77:1
78:20,21 80:2,9
80:12,18 81:11,17
81:20 82:5 94:19
94:19
flat 63:15
flawed 100:8
flexible 45:16
flood 99:10
floor 8:10 70:2
78:21
flowing 126:11
fly 89:18
focus 34:5 41:6
52:14,22 62:16
86:4 115:24
117:14 123:6,11
focused 35:5
58:11 78:22
focusing 40:11
62:11 128:12
132:20
foerster 8:1 60:16
64:18
fogelman 7:7
35:14 37:4 44:11
44:12,14 45:22
fogelman's 34:19
foley 8:15
folks 67:7
follow 42:5 66:5
followed 114:23
following 20:14
23:19 28:8 53:6

108:15
**follows**  96:19
  116:3
**forced**  56:7
**forefront**  18:9
**foregoing**  137:3
**foremost**  38:6
**forge**  86:15
**forget**  51:17 62:18
**form**  24:19,20
  74:20 75:18 93:14
  111:24 134:7
**formally**  134:22
**forth**  19:12 24:25
  67:16 68:18 70:7
  71:2,13 109:19
  122:10
**forum**  34:23
  115:16
**forward**  16:22
  19:1 32:20 35:21
  45:19 47:19 57:11
  58:5 68:14 72:9
  83:14 89:24 90:7
  90:22 95:17
  119:19
**foster**  52:10
**four**  16:19 18:6
  23:22 55:1 79:17
  129:22,23
**fourteenth**  47:15
  47:17
**fourth**  68:9
**fox**  8:8 71:19 72:1
  78:22 94:20
**frankly**  40:4
  53:24 99:2 123:20
**fraud**  23:21 24:14
  24:24 25:3 84:9
  86:3
**fraudulent**  85:4,9
  85:21 86:18 89:2
  89:13

**fraudulently**
  85:22
**free**  55:12 70:5
  135:1
**front**  34:21 59:23
  76:17 80:13 99:9
  117:6
**fulfill**  97:3,5
**fulfills**  70:21
**full**  33:4 55:25
  64:20 69:22
**fully**  61:5,8
**function**  97:4
**fund**  8:16 50:13
**funds**  63:8 71:1,4
  84:6 86:12 114:8
  127:4
**further**  2:17
  12:19 16:18 28:20
  35:1 48:5 51:4
  56:11 58:11 66:14
  74:12 79:2 83:2
  98:12 107:7
**furthermore**  97:9
  97:16
**future**  98:10

## g

**g**  10:1 11:5
**garbe**  4:12,20
**garret**  29:22
**garrett**  6:7 10:19
  57:23 74:15 89:22
  95:4
**gatekeeping**
  122:1,9
**gather**  34:12
  35:19
**gautier**  9:1
**general**  3:8 69:18
  108:14 109:2
**generally**  28:7,13
  40:25 89:4 92:15

**generated**  84:12
**generic**  74:18
**genuinely**  38:7
**georgia**  3:11
**getting**  38:8
  126:19
**getty**  23:11
**giusti**  9:3
**give**  43:14 45:3
  52:9,11 70:2
  78:25 82:15,17
  89:14,15 91:5
  93:16,21 98:16
  123:22 124:5
  126:12 132:23,23
**given**  15:20 22:22
  22:22 25:10,14
  26:2 27:2 35:17
  40:20 45:19 53:1
  54:22 55:15 61:12
  67:25 83:5 123:1
  124:2 128:12,14
  128:14 133:23
  134:5 135:24
**gives**  19:23 90:16
  130:13,17 131:16
**giving**  62:13
  63:12 94:23
**glean**  42:3
**global**  64:6 72:8
**go**  12:19 13:3 19:1
  33:21 36:9 37:20
  37:20 38:2 40:21
  41:19,23 51:2
  54:16,18 55:21
  57:11 71:20,24
  72:9 73:22 75:5
  78:10 83:13 90:7
  90:21 95:9 98:15
  100:9 103:6
  105:24 107:7
  112:5 116:22,24
  119:14,19 120:10

126:5 129:10,10
  129:17,22 130:2,3
  130:8 133:2,19
**goal**  49:7,14 50:22
**goes**  43:9 58:4
  62:11 63:18
  109:19 117:1
**going**  13:7 14:20
  34:15 35:21 37:22
  40:1 41:4 43:12
  44:1,4 47:19
  50:10 52:18 54:2
  54:8 56:14,16,16
  56:21 57:2 58:1
  61:20 62:6,7,24
  63:8,9 65:11,14
  65:16,16,17,18,19
  66:21 67:3 73:4
  75:23 79:3 82:2
  82:17,22 83:8
  86:19 89:18,23
  111:9,23 112:25
  114:16 115:15,17
  116:22,24 119:9
  119:12,15,17,18
  122:21,22 123:2,9
  123:9,11,17
  125:13 129:24
  130:2,3,4 132:2
  132:12 133:19
**gonzález**  9:3
**good**  10:2,18 12:5
  13:12,13 39:21
  44:11 52:6 60:15
  81:15 87:11 95:11
  105:9 119:3,5,11
  123:10 129:12
  133:5 135:18
  136:6
**goods**  68:17,20,21
  68:25 69:2,6,7
  70:25 72:15,24
  73:3,10 74:19

75:19,22 76:9,21
77:11,23 79:25
80:2,23 81:15,19
81:21 83:21 84:3
84:7,11 85:2,5,8
85:10,11,19,23
86:18 88:21 89:10
89:11 90:9,10,13
91:24 92:1,6,7,23
92:24 93:1,4,16
**gotshal** 6:3 10:19
29:22 74:16 95:5
**gotten** 15:18
58:23 86:11
**government** 32:17
34:4 35:23 36:17
37:5 44:17 45:9
**government's**
33:3
**grant** 7:19 24:10
29:1 31:8 66:16
94:13 133:7
**granted** 11:11
19:23 22:6,15
23:7 30:10,24
74:13 79:3 87:3
88:3,4 95:15
135:23
**granting** 4:17
28:9 47:13 89:18
94:24
**grants** 36:5 122:1
**grateful** 67:7
**great** 34:22 61:18
63:13
**greeting** 13:13,13
**grounded** 98:21
**grounds** 22:3
23:19 24:17 27:17
85:16 88:14
**group** 4:9 49:21
**guaynabo** 9:4

**guess** 35:13 39:8
41:16 59:8,25
88:14 95:21
101:21 102:2
**guide** 28:12
**gustavo** 9:15
95:25 96:3 133:4
**guys** 126:9

**h**

**h** 52:8
**hac** 76:17
**hain** 8:16
**halperin** 4:18
6:15,19 38:1,1,3,6
38:15,16,16,19
39:25 40:9,14
41:1,15,23 43:25
66:25,25
**hamroff** 3:2
135:19
**hand** 39:21 45:11
85:24 104:23
123:24
**handed** 19:13
**handled** 95:10
**hang** 130:4
**happen** 65:16
119:15,17
**happened** 14:5
33:22 35:3 41:13
53:2 55:2 86:21
119:8
**happening** 113:9
**happens** 128:6
**happy** 10:15
12:15 16:4 34:3
42:14 50:6 69:22
69:24 90:20 95:21
**hard** 21:15 101:12
124:4
**harm** 16:12 94:3
113:10

**harmed** 45:9
**harmless** 98:18
**hastily** 79:1
**head** 37:5 77:9
**health** 2:12 8:2
11:8 12:25 25:18
60:17
**hear** 13:7 22:5,25
41:4 69:24 90:2
94:18 95:21 133:1
**heard** 13:9,11
15:6,17 25:20
26:4 38:4,9 41:16
41:16,17 44:12
52:5 53:10 56:14
58:14 73:3 83:17
90:5,8
**hearing** 2:1,2 10:3
10:5,14 11:14,15
11:17,22 12:1,7
13:4,4,7 14:1,8,9
14:12,15,17,18,24
22:2,6,17,18,19
22:20,25 25:12
27:8 30:9 44:20
45:4 46:13 47:2
51:17 56:5 60:4
62:15,25 65:24
66:2 72:4 73:16
82:4,7 86:3,4,5
92:4 94:14,16,16
95:14 98:1,19
121:8,24,25
122:10 123:13,15
126:8 127:20
129:22 132:6
133:17,17,18
135:22
**hearings** 10:12
48:1 50:3 65:22
**held** 71:3 111:18
**hello** 10:2

**help** 20:23 41:4
44:7 55:19 60:2
115:5,6
**helpful** 60:20
**helps** 59:7
**hi** 95:11
**high** 24:25
**highlighted** 34:19
66:20
**highlighting**
76:16
**highly** 52:24 83:6
**hills** 111:11,17
112:2 120:12
**hindsight** 75:22
**historically** 83:23
**history** 63:14
123:24
**hit** 77:9
**hk** 7:10 52:8
54:25
**hock** 3:1 135:19
**hold** 89:8 98:18
101:6
**holding** 11:2
92:18 94:1 107:16
**holdings** 1:7 2:22
3:5 10:4 24:4
95:12
**home** 40:20
120:14,23
**hon** 1:22
**honestly** 51:24
**honor** 10:18 12:5
12:22 13:9,23
14:25 15:7 16:4,9
16:25 17:8,20,25
18:2,14,20 19:20
20:3,11,22 21:3,7
22:1 29:21 30:2,7
30:17 31:2,18
34:25 35:5,25
37:9 38:1,15

39:25 40:17 41:15
41:18 42:22 43:10
43:11 44:6,11,16
45:22 46:3 52:10
52:12,14,20,22
53:3,12,22 54:6
54:12 56:1,3,7,15
56:18,20,21 57:8
57:12,15,21 58:1
59:9 60:8,15,17
61:23 62:19 63:5
63:7,19,23 64:2,5
64:9,17 65:12
66:17,18,25 67:12
67:21 68:2,7,20
70:1,7,17,25 71:5
71:8,9,16,18,25
72:13,14,19 73:1
75:4 76:4,14,18
76:23 77:2,5,9
78:1,13,17,21,22
80:3,12 81:11,20
82:5,14 83:10,11
83:15,19 85:20
86:10,17,20 87:12
88:5 89:1,21
90:16,18 91:1
94:19 95:4,11,14
95:23 96:6,18
99:15,24 100:2
101:5,10,23
102:22 103:12,25
104:7 105:6,16,19
106:19 107:2,6,24
108:25 109:8
110:5,6,13 111:4
111:5,20 112:9,13
113:11,16,17
114:6,11 115:5,19
115:21 116:8,19
116:23 117:5,17
117:20,21 118:6,8
118:12 119:9,22

119:23 120:9
121:8,24 122:16
122:20 123:14
124:16,20 125:18
126:22 127:8,24
128:21 129:9,12
130:1,6,25 131:23
132:2,12,14,22,25
133:5,11 135:6,12
135:16 136:8
**honor's**  55:4
**hope**  10:21 36:2
37:13 38:10 43:19
49:3
**hopeful**  33:12
**hopefully**  42:6
89:23
**host**  41:11
**hot**  77:25
**hour**  132:9
**hours**  129:23
**howard**  91:17
**hundred**  134:4
**hundreds**  32:11
47:24 49:18
**hurricane**  98:11
98:13 130:12
**hurt**  60:2
**hutcher**  7:9 52:7
83:16
**hyde**  5:25 137:3,8
**hyphen**  52:8

**i**

**i.e.**  24:24 26:21
**icon**  8:2 14:3
52:11 57:9 60:17
64:19 65:6
**idea**  39:21
**identified**  102:14
**identify**  10:5,10
**ignore**  97:13
**ignoring**  16:14

**ii**  4:13
**iii**  4:16
**images**  23:11
**imagine**  53:17
**immediate**  122:24
123:5 126:12
134:16
**immediately**
11:24 33:4 98:16
133:24
**impact**  40:20
134:16
**implicate**  133:25
**implied**  96:21
97:8
**import**  48:2,4
49:21 50:5
**important**  38:20
54:10,10 56:10
73:24 83:24 84:12
129:17,20
**importantly**
55:11
**imports**  48:9,12
53:15 55:6,14
57:15,17 62:1,2
62:16 63:24 68:5
69:19 70:16,17
**imposition**  35:3
**impression**  55:12
**impressive**  48:2
**improperly**  123:1
125:4 127:15
**inability**  81:4
**inadvertent**  23:19
24:13
**inapplicable**
133:22
**include**  19:7
25:25 35:22 48:17
55:10 75:16 83:9
88:10,13 102:8,14
125:7

**included**  30:12
96:16 102:25
103:2 110:14
114:7 130:16
131:3,9
**includes**  43:4
**including**  14:2
15:22 16:23 25:24
26:15 30:9 32:10
32:12,13 33:9
35:3 36:21 49:20
75:14 85:5 91:18
92:3,18 93:2 98:8
**incorporate**  14:14
**incorporates**  23:6
23:16
**incorrect**  75:23
**incredibly**  48:6
**incur**  115:15
**incurring**  114:16
114:17,18,20
**indefinitely**  66:4
**indemnification**
113:1 123:3
**indemnity**  97:2
104:21 118:19
122:13 126:6
128:20,22,25
129:5 130:17,18
130:20 131:21
**independent**
98:24 112:22
**indicate**  58:22
**indicated**  67:2
**indiscernible**  63:8
75:3 110:7 113:22
131:19,24
**individual**  35:8,9
49:14 71:21
**individually**
108:6
**induce**  85:4 86:18

**induced**  85:1,7,22
  93:15
**inducement**  89:2
**inflicted**  113:10
**information**  2:12
  11:9 12:25 20:24
  26:22 42:2,7,15
  43:19 45:15,17,17
  51:5
**informed**  80:19
**initial**  27:16 31:22
  44:16 46:18 50:16
  50:17 76:14 88:18
**injuries**  17:19,25
  18:3
**injury**  17:15
  126:4
**innovations**  3:14
**insist**  111:20
**insisted**  58:4
**instances**  30:8
**instructing**  11:20
**instruction**  74:20
**instructions**  75:15
**insurable**  97:7
  100:17,19 103:3
  104:13 105:15
**insurance**  5:21
  96:2,7,7,9,12,16
  96:18,23 97:13
  99:12 100:8,19,22
  100:23,25 101:17
  102:4,9 103:16,19
  104:1,9,10,11,12
  105:24,25 106:11
  108:6,7,11,23
  109:24 110:10,16
  110:22 116:15
  119:2,3 120:13,15
  121:1,10 122:2,3
  122:7 123:22
  126:6 128:10
  133:24 134:1

**insured**  96:9,17
  96:19,22 97:3,14
  97:14 99:17,22,23
  100:7,20,21,24
  101:18 102:23
  103:16 104:13,16
  104:18 106:17
  107:10,12,19
  108:4,7,10 109:12
  109:19 110:7,11
  110:20 111:18
  118:13 119:6
  120:20 121:7,11
  125:5,5 126:1
**insured's**  109:25
**insureds**  97:12
  98:23 108:4 110:1
  110:17
**insurer**  97:23
  98:3 99:22 102:7
  102:9,18 115:4
  117:2 118:11
  124:13 126:5,18
  126:19
**insurer's**  119:21
**insurers**  98:21
  99:5 112:20 113:6
  113:6,6,25 114:1
  114:3 116:5,9
  117:16,19 119:5
  124:8 126:10
  127:15,17 135:5
**integrate**  105:22
**intend**  35:20
  49:22 66:14
**intended**  19:2
**intent**  108:6,20
**intention**  108:8,19
**intentional**  22:21
**intentions**  108:17
**interest**  11:17
  23:4 96:14,24
  97:7 98:12 100:17

**100:19 101:2,3,12
  102:24 103:3,10
  104:14,16,18
  105:15 106:16
  110:10 111:22
  113:13 116:5
  120:19,23 127:1,5
  127:6
**interested**  51:5
  59:25
**interesting**  38:9
**interests**  106:18
  125:13,14
**interim**  41:8 43:3
  47:24
**interject**  99:24
**international**  24:8
  25:17 134:14
**internet**  92:6
**interpret**  108:11
  108:25
**interpretation**
  26:5
**interpreting**
  108:9 134:19
**interrupt**  61:22
  63:16 97:17
  122:21 127:10
  129:16
**introducing**  22:12
**introduction**
  10:15
**invalid**  46:15,16
  105:12
**inventory**  86:19
**investors**  8:16
**invoked**  24:6
**involved**  37:5
  57:2 58:17 59:13
  59:14 99:10
  104:10 106:11
  110:8,17

**ireland**  4:11,19
  6:16 29:25 38:17
**issue**  30:8 31:14
  31:15,17 33:6,14
  34:16 35:13,14,18
  36:2,11,12 37:1,6
  37:23 40:23 53:15
  53:17 55:6,14
  56:3,10 57:15,17
  57:18 59:23 60:7
  61:5,9,11 62:5,16
  63:22 65:9 67:25
  68:5,6 70:16 73:2
  76:1 77:24 79:1
  79:24,25 81:16
  86:23 87:5 99:11
  99:18 100:10
  102:22 105:2
  107:24 109:6,6,12
  109:21 110:17
  111:23,23 113:14
  113:16 115:21
  116:3 117:16
  118:24,25,25
  119:1,2,14 121:13
  121:16 122:23
  123:19 128:19,25
  129:8 132:23
  133:16
**issued**  108:5
  118:21
**issues**  12:17 17:22
  17:23 21:13 28:21
  34:17 42:25 43:4
  50:5 65:13 69:17
  79:6 96:1,3
  121:23 122:1,9,11
  130:9
**issuing**  131:21
**item**  11:3 29:20
  29:23 45:24 68:3
  68:9 95:9

**items** 10:25 32:17
**iv** 4:17
**i'm** 89:18

**j**

**j** 8:20
**jackie** 95:10
**jacqueline** 6:8
    95:12 99:25 107:6
    119:13
**james** 4:12,19
**jammed** 65:14,17
**january** 3:3 19:20
    23:12 45:6 56:3,3
    56:8,12 57:2,24
    58:1 97:10 120:1
**jeffrey** 57:10
**jewelers** 3:17
**join** 4:24
**joint** 57:22 111:1
**jointly** 116:7,11
**juan** 9:11
**judge** 1:23 10:2
    12:23 29:14 43:23
    44:1,7 46:12 50:6
    50:12 51:12 52:6
    57:23 63:1 64:10
    74:7,15 85:12
    134:15 135:18
    136:2,9
**judgment** 20:21
    20:25 21:1 23:18
    23:22,22 25:3
    27:25 28:19
**judgments** 24:1,3
**judicial** 23:4 34:2
    49:3
**julie** 6:13 12:23
**july** 18:19
**june** 66:13 94:17
    94:21
**juris** 97:1 104:6
**jurisdiction** 19:3
    19:4,11 27:17

**justice** 7:1 24:1
**justification**
    122:14
**justifies** 23:24
    24:16
**justify** 25:13,16

**k**

**keep** 99:19 134:3
**keeping** 86:6
**kept** 42:11 84:2
    84:11 115:14
**key** 23:13 45:3
    83:4 94:11 100:13
**kick** 66:4
**kicked** 56:10
**kids** 128:3
**kind** 38:22 42:11
    42:15,24 67:25
    71:12 77:17 78:24
**kirby** 6:9 12:24
**knew** 99:20 106:7
    106:9,15 111:21
    114:9 118:18
    124:17
**know** 12:9 14:10
    15:13,21 18:5
    21:6,16,21,22
    31:15,20 32:14,19
    33:1,7 36:2,19
    37:19,22 38:21
    39:24 40:8,13
    41:3 52:1,3,4
    53:16 55:20 59:14
    59:14 60:9,25,25
    61:7,12 62:3,6
    65:14 66:22 70:9
    71:9,19 76:5
    78:16 80:9,12
    82:1,20,22 89:25
    95:16 97:6 99:16
    101:9,24 102:13
    105:16 107:9,10
    111:22 115:1

127:13,22 128:9
    128:22 130:4
**knowing** 43:16
    116:4 118:21
**knowledge** 15:14
    15:15 113:15
**known** 73:15
    99:20 127:2
**kosakow** 79:14
**kraemer** 7:22
    57:12,13,21 66:18
    67:12,13 70:1,4,7
    70:12,12 78:1,2,6
    78:13 83:10 91:1
    91:1
**kraemer's** 68:4
    83:8

**l**

**la** 9:10
**labov** 8:20
**lack** 27:17 73:13
    76:15 93:8
**lag** 83:25
**laid** 26:13
**landlord** 59:1
    96:12 102:15,21
    102:25 103:1,2
    105:1 118:14
**landlords** 110:9
**language** 93:10
    96:15 107:17
    114:7 121:7,10,11
    121:19 131:3
**lardner** 8:15
**large** 57:25
**largest** 57:9
**larry** 44:12
**late** 27:19 62:16
**law** 5:21,21 25:1
    33:15 37:16 39:16
    45:1 54:14,17
    57:7 69:10 79:9
    79:11,12,16,18,18

87:8 88:14 100:8
    104:8 105:22,22
    108:23 119:2,3
    122:18 125:3,6
    130:16 131:25
**lawrence** 7:7
**laws** 125:8
**lawyer** 14:11
**lawyers** 39:15
    59:13,14 77:2
    119:11
**laying** 24:18
**lead** 44:17
**leading** 85:6
**learn** 45:18
**lease** 96:10 110:25
    117:8,9 121:9
    122:1
**leave** 44:18 55:20
    83:7 95:2 108:16
    130:11 131:24
**leaves** 25:22
**led** 50:21
**ledanski** 5:25
    137:3,8
**legal** 25:25 26:2
    53:15,25 61:9
    106:6 113:7
    137:20
**legitimate** 22:3
    127:17
**lehman** 24:4
**length** 124:10
**lengthy** 14:23
    133:17,18
**lessee** 103:11,12
    103:14
**lessees** 102:1
**lessor** 101:16
    103:11
**lessors** 102:1
**letter** 4:24 34:19
    55:1 121:14 127:2

**letters** 49:17
106:7 117:6,7,18
118:8,22 119:24
121:13
**level** 55:7
**lexis** 23:12
**li** 29:11
**liability** 17:23
45:13,14 55:10
62:3 98:17 113:25
125:21 133:25
**liable** 59:1 102:19
**lie** 93:12
**lien** 30:11,14,24
30:25 31:3,5,11
36:3,5,8 124:3
**liens** 31:7,17
**lies** 24:10
**lifeline** 126:9
**lift** 134:10
**lifted** 125:17
126:4 127:19
**light** 14:8 29:1
41:21 42:11 87:18
124:14
**lightly** 24:3
**liljeberg** 25:18
**limitations** 132:15
135:1,3
**limited** 7:10,11
32:20 52:8,9
**line** 37:13 38:22
58:8 61:3 121:17
**lines** 40:1
**liquidated** 43:15
**liquidation** 46:2
92:14,20
**list** 111:3
**listed** 120:21
**literal** 108:17
**literally** 108:14
**litigable** 65:9

**litigated** 73:8
115:15
**litigating** 115:1
**litigation** 32:8,13
33:17,18 37:6,10
37:11 48:16 50:4
75:23 83:2 114:23
115:10,10 122:25
123:24
**litigations** 32:9
**little** 18:24 38:22
40:19 60:18 67:4
**live** 73:2
**living** 38:10
**llc** 3:11 5:10,15,19
5:24 9:2,8 23:14
25:5 26:6
**llp** 3:2 6:9 8:8,15
12:24 71:19 72:1
78:22
**load** 86:19,19
**local** 14:11
**locate** 74:25
**london** 118:23
**long** 16:16 32:22
37:17,17 43:16,17
43:21 53:2 67:8
67:25 128:4
**look** 53:12 54:3
56:2 60:25 61:16
65:13 72:15 74:3
75:17 82:17 90:20
94:23 110:21
111:9 127:1
**looked** 45:19
51:13
**looking** 32:17
37:23 64:11 73:17
76:25 79:4 111:7
133:12
**looks** 112:8
**lose** 121:5 123:9

**loses** 63:13
**loss** 98:11,13
102:8 106:16
107:14,15 120:15
120:17
**lost** 27:16 67:6
94:5 125:21
**lot** 35:2 40:12
48:25 53:15 73:5
119:19
**love** 66:4
**lower** 48:10
**lulled** 77:19 80:22

**m**

**ma'am** 78:4 91:5
122:21 123:8
129:19 130:8
131:7
**magnitude** 76:19
**mail** 67:6
**mailings** 51:6
**main** 17:24
**major** 43:6
**making** 18:22
20:10,25 35:20
36:18 41:10 64:25
76:7,15 81:2
98:20
**mall** 5:10,15,18
5:23 9:2,9 95:13
95:15,24 98:25
114:18 115:9
116:14 126:10
127:4 134:23
**manges** 6:3 10:19
29:22
**manner** 89:20
111:19
**marcus** 6:8 95:10
95:11,12 99:24,25
101:5,6 105:16
107:6,7 110:6
111:5 112:8,11

115:5,19 117:21
119:13,16 120:4,8
120:9 123:14,17
130:24,25 132:2
132:17 135:6,9,12
136:8
**maria** 130:12
**marketed** 68:21
**marketplace**
67:15,24 68:6,22
70:19 83:22 85:8
88:18 90:13 92:5
92:13
**markets** 105:8
**master** 8:16
**material** 36:18
40:18,24 41:20,22
**materially** 36:14
36:15 39:23
**matter** 11:5,14
12:21 18:17 22:12
31:12 34:7,8
42:24 44:16 46:10
52:15,22 56:8,19
64:2 69:8 82:8
83:8 91:9 113:1
127:8,14 132:22
134:9 135:8,13
**matters** 2:1 10:3
13:5 23:9 28:14
52:16 62:23 95:8
96:2
**maximize** 49:10
**mazur** 7:22 57:12
57:13,21 66:18
67:12,13 70:1,4,7
70:12,12 78:1
**mean** 18:23 41:20
43:18 51:11,21
55:22 79:25 80:10
81:18 82:13 83:2
85:14 86:1 98:23
100:21 101:7,16

101:21 103:7
104:3,4 105:6,13
106:21 110:21
113:14 115:3
118:18 119:5
126:17,24 128:17
129:3 132:6
133:12
**meaning** 84:4
109:15,16,17
**means** 94:16
**meant** 80:25
**mechanical** 23:13
**mechanisms** 80:5
**medical** 21:19
**medically** 27:4
**meet** 49:14
**memo** 107:5
**memorandum**
2:17 5:21 96:1,8
96:25 97:16
101:23 102:3
104:2 106:13
108:1,2 110:15
112:13
**mention** 88:17
101:22
**mentioned** 52:16
86:25 97:16 121:8
**mentioning** 96:20
**mentions** 96:20
121:15
**meritorious** 28:11
28:24
**merits** 28:15,22
61:21
**message** 13:13
**midday** 13:15
**million** 32:6 34:1
34:14,14 37:19
45:5,7,8 46:17,18
53:5 57:10 62:1,4
64:20 113:7

119:10,12,18
**millions** 41:25
63:23
**mind** 44:10
**mine** 75:9
**mineola** 137:23
**minimal** 127:21
**minimum** 92:17
**minus** 71:4
**minutes** 115:24
122:8 129:22,24
**mischaracterize**
89:2
**misconduct** 23:21
24:15,23,25 25:4
25:8 93:15
**misled** 93:25
**misrepresentation**
23:21 24:14,25
25:4 79:20 99:13
118:17
**misrepresentati...**
87:19
**misrepresented**
106:10
**missed** 97:24
112:17 123:18
**missing** 103:17
125:18
**mistake** 23:19
24:12 25:23 26:3
29:5,6
**mistaken** 27:9
30:20
**mistakes** 25:25
26:1
**mistreated** 21:11
**misunderstood**
131:12
**mobile** 120:13
**modified** 122:3
**modify** 31:8

**mofo** 65:13
**moment** 18:2
**monetized** 33:19
**money** 33:13
55:16,22,23 62:24
63:6 64:7 65:25
67:22 68:24 69:8
69:13,16 77:16
80:4,8 84:4 86:6,8
86:14 99:1,7
103:23 116:22
117:3,4,15 119:19
124:15 125:1,12
129:1
**monies** 39:12
41:18 80:21 104:5
106:22,22 110:25
118:13 121:15
128:24
**month** 27:20 35:2
**months** 30:3 55:1
61:5 68:1 72:7
82:7 84:1 97:11
**moritt** 3:1 135:19
**morning** 10:2,18
10:23 12:5 13:12
13:13 44:11,20
52:6 60:15 95:7
**morrison** 8:1
52:10 60:16 64:18
**mortgage** 120:22
**mortgagee** 36:5
39:10 120:18,22
121:2
**mortgagee's**
120:19
**mortgagor** 101:16
**mortgagors**
101:25
**motion** 2:4,5,9,11
2:12,15,21 4:8,11
4:25 5:9 11:5,12
11:24 13:2 14:9

14:13,21 15:22
16:1,3 18:19,20
18:21,22 19:6,11
20:2,6,7,9 21:1
22:4,5,10,15,25
24:22 26:2,9
27:16 28:2,3,22
29:6,9,25 30:2,4,7
32:25 34:9,21
35:2 36:23 37:13
37:21,22 38:21,23
39:22 40:2 41:10
41:24 42:10,12
56:6 67:14,20
73:18 95:13
113:18 116:14,19
116:25 117:2,5,20
117:23,25 118:2
119:14,16 120:2
122:6,12 130:14
133:11 134:21
135:1
**motions** 23:1,5
46:15 51:14 53:7
58:24 59:3 118:4
**movant** 11:22
25:1
**move** 19:16 20:21
27:19,24 32:20
45:23 50:24 68:2
95:16
**moved** 28:19
**moves** 72:25
**moving** 23:7
68:14
**multiple** 47:13
132:3
**municipality**
105:8
**mute** 12:7 13:14
**muted** 14:4
**myrna** 4:8

**n**

**n** 6:1 10:1 11:5
46:24 52:8 137:1
**name** 95:23 96:21
96:21 102:25
103:4 110:20
124:24
**named** 96:17
99:22,23 101:18
109:25 120:16,18
125:5
**names** 110:18
**narrowed** 57:5
**narrowly** 69:11
91:21
**national** 2:11 11:8
12:25
**nature** 27:2 66:3
93:19,24 94:25
134:5
**necessarily** 58:3
131:5 134:18
**necessary** 33:25
66:6 76:22
**need** 14:12 18:13
33:8 35:10,17
39:6,20 40:15
42:7,9,9,13,15
46:22 49:9 50:22
51:4,6 55:17,20
67:17 73:8 78:17
94:4 122:24
134:22
**needs** 27:24 73:20
**nefarious** 14:6
**neglect** 23:20
24:13
**negligence** 16:12
16:16,20,21,23
17:8,16,18,24,25
18:5 26:15,16,24
**negligent** 26:17

**negotiated** 114:7
**negotiation** 54:8
55:9,19 59:17
**negotiations** 55:7
59:19 66:1
**nelson** 102:5
**nemaizer** 24:2
**network** 2:12
12:25
**never** 20:7 61:17
69:1 76:21 84:8
92:8,12 119:17
129:5,5
**nevertheless**
92:25
**new** 1:2 6:5,18 7:5
7:13 8:4,11,18
25:20 36:9 43:13
57:16 59:3 79:14
**newly** 23:20 24:13
24:17
**ng** 2:6,13,18 9:17
11:2,5,13,16,24
12:3,5,20,22 13:2
13:9,11,19,21,23
14:25 15:2,9,15
15:17,24 16:4
18:14,16 20:3,14
20:17 21:3,9,21
22:19 24:18 25:10
26:4,18 27:7,14
28:1,11,18 29:4
29:11,17
**ng's** 27:6
**nhin** 11:9,23
14:21 22:15
**nhin's** 11:11
22:15
**nichols** 111:11,17
112:2 120:12
**nickels** 110:13,19
111:2,3,6,13

**non** 45:12 46:21
48:2 68:21 84:13
122:15,19
**normal** 91:19
118:12,12
**normally** 23:1,7
55:17
**north** 92:18
**notably** 48:17
**note** 13:21 33:7
38:20 40:17 48:5
52:20 67:9,19
72:4 78:23
**noted** 22:17 27:15
32:8,25 39:1
**notes** 29:15 31:10
**notice** 2:1 18:20
27:20 33:22 35:22
35:22 36:1,2,19
41:19 43:8,12
44:3 50:18 51:2,7
54:22 62:13 65:16
66:13 67:3,7
123:13 124:23
125:1 128:11
**noticed** 51:18
62:15
**notices** 51:15
119:22
**notified** 106:13
124:17
**noting** 32:4
**notion** 83:4
**notwithstanding**
11:21 91:13 93:8
**november** 77:23
**null** 100:9
**number** 11:15
48:22 49:8 50:21
57:25 63:12,12
67:11 68:11 72:7
81:7 112:19
113:12,13

**numbers** 48:1
53:20 84:14
**numerous** 84:5,9
92:18 117:6,7,19
**nunc** 3:2
**nutshell** 83:19
**ny** 1:15 6:5,12,18
7:5,13 8:4,11,18
137:23
**nygard** 134:13

**o**

**o** 1:21 10:1 52:8
137:1
**o.w.** 92:18
**object** 56:4
**objected** 32:2
**objecting** 73:11
**objection** 2:11,11
3:7,10,14,17,19
3:22 4:2,6,22 5:3
5:6,12,14 15:21
20:2 22:24 24:19
24:22 27:8,15
47:7,11,18,18,21
48:23 57:22 61:4
68:10,11,13,16,23
69:12 72:5,10,16
72:23 73:14,16,20
76:19,25 78:12
80:14 82:1 87:2,4
88:3,4,13,15,18
88:19 89:19 91:11
92:22 94:12,13,25
135:22
**objections** 46:23
46:23 47:4,10,12
47:17,25 83:13
90:25 94:10
135:24
**objective** 97:2,3
**objectors** 48:18
69:25 70:5 92:3

[objects - paragraph]                                                    Page 23

objects 77:24
obligation 99:6
  112:23 121:2,9,15
obligations 91:16
  105:24 108:5
observe 119:5
observed 108:18
obtain 23:18
  121:10
obtained 25:3
  104:24
obviously 14:3
  33:8,22 41:21
  48:25 73:24 82:5
  95:2
occurred 16:24,24
  97:9
october 40:12
  84:19
offer 77:4
office 7:3 11:18
  11:20 13:24 22:13
  27:13 29:11 86:7
  133:3
official 3:4 10:9
  10:12
oh 87:21,22 95:9
  111:8 112:10,12
  120:3 129:1,13
  132:21
okay 12:19 13:1
  13:10,18,20 15:10
  15:16,20 18:11,14
  18:14,15 21:2,20
  22:7 29:16,19
  31:19 34:5 38:11
  38:18 41:15 43:2
  43:24 45:21 50:9
  50:19 52:2,12,13
  53:11 55:5 56:15
  58:15 60:11,14
  63:3 66:12 68:8
  69:24 70:4 73:23

75:5 76:6 81:17
  82:10 83:12 86:4
  87:1 96:4 103:6
  103:13 111:16
  112:14,14 116:18
  118:9 120:4,6,9
  122:17 124:21
  129:18 130:2
  133:12 135:8,15
  136:7,10
oklahoma 111:12
  111:18 112:3
  120:12
old 25:4 26:6 35:2
  137:21
olmo 4:8
omnibus 3:7,10
  3:14,19,22 4:2,6
  5:3,6 10:3 13:4
  46:23 47:4,12,16
  47:18,20,25 56:5
  56:20 57:22 61:4
  62:18 66:13 68:10
  72:5,15 76:25
  91:10
once 102:7 114:12
one's 22:21 81:8
ones 57:25 66:7
  114:8
online 70:20
open 55:20
operated 51:24,25
operating 40:19
opinion 54:17
opinions 54:16
opportunity 44:4
  44:6 75:8
opposed 41:8
  55:18,25 93:9
  102:19
opposing 23:21
  24:15 28:10

opposition 4:2,5
  14:20 16:3 74:10
  74:14 76:16 78:11
  78:12,24
opt 46:16,21 55:2
  64:12
opted 31:24 48:13
  58:24 64:19
oral 27:15 56:13
  94:3
order 2:13,21
  4:12 5:22 10:25
  11:7,25 18:22
  20:21 22:11,18
  23:2 26:8 29:8,15
  29:18 30:10,20
  31:4,8 33:15 34:9
  36:3,5,24,25 39:9
  39:9 43:14 47:1
  47:17 49:9 50:23
  62:8 63:12 70:21
  71:21 94:24 95:3
  95:6 134:21 135:7
  135:25 136:4
orders 31:22
  33:19 40:20 47:13
  66:5
ordinary 90:11
  92:1
orient 7:10 52:7
  54:24 58:23 64:11
original 24:21
  100:10
originally 26:19
  30:4
ostensibly 121:15
outflows 43:6
outside 76:5
outstanding 33:17
  37:11 45:17 47:19
  49:23
overcome 76:22
  94:12

overcoming 73:12
overlap 49:19,20
  69:19,19
overlooked 23:19
overruled 73:20
owe 49:17 69:8
owed 17:3,4,6
  68:24

p

p 6:1,1 10:1
pa 7:20
page 23:12 41:17
  96:18 111:12,14
  111:15 112:3,6,7
  112:9,11 120:17
  120:21
pages 96:25
  108:13
paid 30:6 33:4
  35:6 39:13 70:23
  77:12 83:23 84:4
  97:23 99:1,7,10
  99:22 100:24
  101:1,3 102:19,21
  104:22,24 107:21
  112:20 116:5
  117:15 118:11,13
  118:13 123:1
  125:2,4 126:5
  128:24 129:2
pandemic 72:8
paper 91:6
papers 56:6,7
  65:15 71:2,13,17
  74:10 107:11
paragraph 17:2,4
  17:10,13 18:7
  30:13,20 31:3,4
  88:8 89:4 98:7,11
  98:18 107:17
  108:3,3 109:2,2,5
  120:13,14,24,25
  126:25

paragraphs 17:6
  17:13,18 98:17
  108:9
pardon 104:15
  112:17
parental 44:18
park 8:17
part 12:17 17:24
  18:3 22:21 27:12
  32:17 35:12 39:8
  39:9 78:11,12
  82:12 113:19
participants 92:4
  92:5
participate 14:8
  25:11 48:14
  103:15,18
participated
  14:16
participating
  11:17
particular 12:20
  13:2 39:23 49:15
  73:25 118:2,3
  134:7
particularly 14:6
  54:11 72:3 124:14
parties 29:13
  34:12 37:23 38:8
  51:4,18 52:3,4,25
  55:14 56:22,25
  57:6 58:4 60:5
  62:25 65:2 68:18
  68:20,25 75:12
  77:7 80:10 90:21
  97:6 100:18
  108:20 109:7
  110:9,18,20 114:9
  114:10 122:15
  131:9 134:16
partner 95:10
party 23:8,18,21
  24:15 25:3 28:10

28:11 79:18,20,21
  79:21,22 81:7
  90:15 96:6,22
  97:2,13,14 98:9
  98:12 100:20
  105:21 106:17,20
  107:21 108:17
  110:11,24 125:11
  126:2,21,24
  131:15,15 135:2
party's 106:18
pass 68:24
passed 47:12
paul 8:20
pauses 128:3
pausing 128:3
pay 45:5 53:25
  55:11 67:22 98:23
  99:5 100:1 101:4
  106:4,4,5 109:10
  110:11 117:2
  120:11,16 121:1
  124:9,13 126:18
  126:20
payable 107:15,16
  120:17
payee 102:8
  106:16 120:16
paying 35:15
  41:21 65:15 97:12
  97:15 103:23
  106:19,21 110:23
payment 4:16
  32:2 33:14 50:10
  52:17 84:6,24
  92:7 94:6 101:15
  103:9 105:9,11
  106:17 109:6,9
  111:21 123:13
  126:20 127:1
  128:11,14
payments 31:25
  34:12 35:21 41:20

41:22 83:24 84:2
  84:15 85:1 104:25
  128:18
pays 110:16
pdf 112:11
pdx 2:11 6:10
  11:8,9,9,11,23
  12:18,24 14:21
  16:14,21,23 17:4
  17:11,20 18:18
  22:15,15 24:23
  26:17 27:12,15
  29:2,8,11
pdx's 15:21 16:1
pearl 64:6
penalized 129:4
penalty 33:10
pending 2:5,14
  33:17 34:7,8 47:5
  122:11
people 51:8 54:14
  54:15 55:17,21
  58:17 59:4,21
  62:6 67:10,11
  69:1,8
people's 129:21
percent 31:25
  39:5 46:18 48:10
  48:24 50:17,20
  58:12 66:7 94:6
percentage 55:25
performing
  109:20
period 84:23
  88:22 98:8 133:9
  133:9,13 135:1
permitted 10:11
perpetrated 84:9
person 13:22
  21:12 99:11 103:2
  105:9,11,14
  120:11

personal 19:3,11
  27:17 126:4
perspective 31:21
  32:22 33:5 42:18
  120:7
persuade 123:9
pertaining 15:6
peter 44:17
petition 51:23
  75:13,14,20 85:22
  86:9,15 87:3,4,5
  87:20 88:1 89:14
  89:20 91:16 93:15
  93:16,17,21,22
  131:7,14 134:5
phone 13:6 24:23
  43:18 67:16 90:23
  91:8 128:7
physical 81:19,24
  82:18,21 92:16,23
physically 72:9
  76:2 81:15 82:3
  89:10
picture 42:3 45:14
piled 21:13
pittsburgh 7:20
place 28:20 85:4
  113:11 128:13
  134:3
placed 12:7 13:14
  18:7
plain 69:21 92:10
  93:10 109:15,16
  109:16
plains 1:15
plaintiff 27:24
  91:7
plaintiff's 22:10
plaintiffs 2:23
plan 31:6 48:15
  64:15 131:10,13
plausible 26:15
  73:19

**plausibly** 27:5
**plead** 16:8 19:15
19:17,24
**pleaded** 70:13
**pleading** 74:2
77:1 83:9
**pleadings** 21:25
22:2 25:24
**please** 61:23
63:16 115:23
118:8
**pled** 16:10,20
**plenty** 97:11
119:11
**plus** 31:11
**point** 10:11 16:25
17:1 18:12 20:2
23:8 26:16 28:17
33:2,24 39:24
40:16 41:4 50:10
51:9,21 52:23
53:1 54:3 57:1
59:8,19 60:1,5,12
60:18 61:11 62:12
76:14 81:6 83:3
83:24 86:23 87:8
87:9,23 90:8 91:7
95:22 98:16
100:14 113:24
114:24 117:15
122:22,22,24
123:9,12,19 124:1
125:10 127:7,12
127:13 128:14,19
129:7,7 132:10,11
**points** 38:20
54:19 78:25 102:3
107:8
**policies** 98:4,10
98:22 103:23
123:22,24 124:7,8
133:24

**policy** 91:21 96:9
97:8 98:8,25 99:1
99:6,13 100:9,14
100:16,18,20
101:14,17,20,23
102:9,10,11,12,18
102:25 103:1,3,5
107:10,13,13,14
107:20,23 108:4,5
108:7,11 109:7
111:22 112:21
114:9 120:15,21
121:2,7,17,18
124:14 125:2
126:11
**pools** 49:13
**populating** 84:16
**population** 48:6
48:24
**portal** 70:21
**portion** 16:15
35:11 62:2 64:20
113:23 114:13
**position** 32:15
44:25 53:13,16
71:9 75:8 116:24
121:6 132:13
**positions** 39:15
42:17
**possession** 70:18
71:6,11 92:17
105:10 118:17
**possible** 18:4
**post** 6:11 30:25
75:13 87:20 93:16
93:21,22 131:7,14
134:5
**posture** 56:2
**potential** 23:15
24:16 26:3 55:10
**potentially** 24:12
37:5 45:8 73:2
80:5

**pr** 9:4
**practical** 64:1
**practice** 76:17
104:7 110:15
118:12,12
**practicing** 104:7
**pre** 51:23 85:22
86:9,15 87:3,4,5
88:1 89:13,20
91:16 93:15,16
117:5
**prefer** 28:14
42:14 94:21
**preference** 32:10
49:18,20,23 54:22
54:25 55:10 61:24
62:2 64:23,23
65:7,8 82:18
**preferential** 77:17
**prefers** 10:24
**prejudice** 28:10
28:18 60:3,6
62:12,23 63:2,4
63:19 64:5,9,14
65:5 67:21 89:19
**prejudiced** 59:21
**preliminary**
61:12
**premise** 96:13
**prepare** 15:12
66:1 134:21
**prepared** 29:1
56:13 72:10 94:7
112:15 133:21
134:6
**prepetition** 49:23
65:9
**prescribed** 27:4
**prescriptions**
26:19,23 27:3
**present** 11:16,21
12:1,4,6 45:15
46:4,5 106:6

**presented** 46:13
**preserve** 133:8,10
**preserved** 39:14
**preserving** 24:1
**press** 23:11
**pressing** 53:17
**pressure** 60:23
81:6
**presumably** 76:22
**pretty** 21:18
**prevail** 108:20
**previous** 118:7,8
**previously** 24:20
25:12 26:22 124:3
**prima** 68:17
72:21 73:12 76:22
**primary** 16:12
27:2 118:10 134:1
**principle** 48:8
105:18,19 119:1,3
**principles** 85:11
104:11
**prior** 14:24 21:25
22:1,2 23:2 30:3,3
33:4 84:1 98:19
117:19 133:18
**priorities** 69:10
91:14
**prioritize** 48:19
**priority** 51:13
67:5 68:12,15
69:9,13,18 77:13
82:15 88:4 90:17
90:20 91:12,19
92:12 93:11 94:6
94:25
**private** 21:18
**pro** 3:2 16:7 22:22
50:16 76:17
**probably** 55:8
64:3 94:16,20
**problems** 84:25

**procedural** 12:17
18:18 56:2
**procedure** 11:11
23:7,17 28:6
39:17 63:21
**procedures** 41:24
**proceed** 10:15,24
10:25 29:20 72:11
**proceeded** 11:22
**proceeding** 11:2
11:10,13 22:10
28:20 78:9,17,19
**proceedings**
73:16 137:4
**proceeds** 4:15
30:5,14 31:16
32:13 33:20 40:21
40:22 102:10
103:16,18 106:11
110:10 116:16
117:1 119:21
123:13 124:4
**process** 40:5 46:2
47:10 54:5
**product** 17:23
**productive** 47:23
58:3,4 66:6
**products** 4:1
**profits** 115:10
**program** 31:23
35:4 50:8,12 55:3
**progress** 49:4,6
50:7 58:9
**projected** 40:22
**promised** 15:2
**promptly** 29:13
**proof** 70:23 72:21
75:17 76:11 77:4
81:12,22 93:8
127:9 130:21,22
131:2
**proofs** 3:7,15,20
3:23 4:6 5:3,6

68:10
**proper** 20:24 28:4
125:14 126:7
**properly** 12:9
26:8 27:20 112:21
113:6
**property** 30:14,23
31:11 96:7 97:8
103:1,3,13
**proposed** 36:20
56:23 135:21,25
**proposition** 26:16
28:14 97:23 99:5
102:7 105:5
106:14 109:14
111:9 116:13
122:8
**prosecuting** 43:18
**prospect** 77:12
**protect** 20:4 34:1
101:17 108:8
112:15 113:2
120:19 121:2
127:12,16
**protected** 19:21
19:21 20:12 21:4
32:4,5 34:23
36:17,22 37:8
113:9 116:2
134:17
**protecting** 128:13
134:12
**protection** 30:11
30:16,22 32:21,23
34:20,21 35:14,18
36:6,13 38:25
39:12,20 41:9,12
41:14 43:3 44:23
108:5 118:19
134:8
**protocols** 12:8
**prove** 37:15
111:24

**proven** 37:16 87:5
**provide** 33:21
43:12 50:18 66:13
70:23 96:12 108:7
108:7 134:23
**provided** 26:18,20
26:20,21 32:22
83:20 94:14
120:15
**provides** 23:17
110:25
**providing** 35:4
36:1 45:16 96:23
**provision** 25:14
25:16 87:13,14
98:18 102:10
108:14 109:1,23
113:1
**provisions** 105:23
**prudence** 97:1
104:6
**psychological**
27:6
**public** 42:4,4
**publicly** 51:3
**puerto** 4:9 5:21
9:11 99:8,10
104:9 105:3
108:15 109:14
114:18,24 115:1
115:16 118:23
119:10 121:14
122:8 125:8,9
131:25
**pull** 74:2 78:17,18
**punitive** 33:11
**purchased** 69:1
**purpose** 14:15,17
52:19 104:21
107:4
**purposes** 67:14
71:3 77:23 86:2,4
90:18 91:2

**pursuant** 2:13
31:22 37:21 73:15
95:1
**pursue** 77:14,17
**pursued** 32:11
80:21 83:4
**pursuing** 32:9
37:12 79:19
**pursuit** 133:22
**put** 16:22 42:18
47:7 54:6 59:23
65:23 72:12 77:3
78:14,16 79:1,17
80:14 98:22 117:1
121:16
**puts** 121:11

## q

**quantum** 33:1
**quarropas** 1:14
**queenie** 134:13
**question** 14:19,22
50:9 55:5 59:10
59:15,16 73:13,25
75:16,17 103:21
118:7 119:24
120:11
**questionable** 83:6
**questions** 34:3
50:6 55:4 69:23
102:3
**queue** 40:4
**quick** 57:23
**quickly** 20:6
**quite** 14:23 24:18
39:7 48:2 81:8
94:7 98:22 133:13
**quote** 79:18
107:15 120:23
**quoting** 120:14

## r

**r** 1:21 6:1 10:1
137:1

radiology   79:15
raise   18:21 44:22
  72:13 89:17,18
  114:16
raised   19:5,6
  25:21,21 35:19
  89:5 92:24 122:11
  127:3
raises   35:14
raising   85:18
ran   20:15
range   61:13
rant   56:16
rata   50:16
rave   56:17
rd   6:11
rdd   1:3
reached   23:10
  48:7 87:9
reactions   27:6
read   15:21 91:21
  99:2 108:2 109:1
  117:4
reading   79:10
reads   131:10
ready   68:2
real   33:2,14 34:18
  58:25 62:23 79:25
  123:19
reality   57:24
realized   40:21
  79:2 85:3
really   14:15 15:13
  21:22 34:7,20,23
  35:9 37:1 39:21
  40:11 41:4 42:4
  48:10 60:7 62:23
  65:13 66:3 77:25
  79:7 82:10,12
  97:19 108:21
  121:19 131:19
realm   113:15

reason   23:23
  24:15 25:13 56:18
  63:18 79:21 83:1
  87:11 88:16 90:19
  98:2,5 110:7
reasonable   79:24
  97:3,5 111:19,20
  119:1
reasonably   23:10
  27:4 79:22 93:24
reasons   29:9 57:1
  66:20
rebutted   81:16
recall   30:2,8
  95:14 124:1
receipt   73:7 77:22
  89:11 90:13
receive   31:25 51:5
  65:8 68:17 69:7
  72:15 73:10 77:11
  101:1 104:22
  106:3,21 114:8
received   12:14
  13:3 26:22 46:18
  50:17 72:24 73:3
  74:19 75:19,22
  76:21,25 85:1,20
  85:21 90:10 91:24
  93:1,4 106:3
receiving   64:14
reclassification
  3:8
reclassify   5:4,7
recognize   128:7
recollection   25:7
  126:8
reconcile   46:14
reconciled   46:16
  46:20 47:7 49:16
reconciling   35:6
reconsider   22:11
reconsideration
  2:4,9 11:6 12:2

23:5
record   10:19 29:3
  29:10,21 32:10
  38:13 42:4,5
  44:14 60:16 67:14
  67:19 70:10 72:12
  72:14,20 73:10
  76:4,5 80:14
  89:21 90:3 117:22
  130:21 133:21
  137:4
recorded   129:23
  129:23
recording   10:9,11
  10:12,14
records   21:19
  26:18 51:15 58:22
  88:20,21 99:19
recourse   104:23
recover   80:4
recoveries   31:25
recovery   50:17
  55:25,25 80:21
reduce   31:24 49:8
  49:9 50:4
reduced   45:6
  48:22
reduction   48:24
  50:20,21
reed   82:25
refer   11:9
reference   95:3
  101:25 102:1
  136:4
referring   74:17
  75:1 104:5 105:18
  105:19 108:10
  112:12 119:24
refers   109:18
  121:14
reflected   84:21
regard   50:10
  52:17 98:13

114:20
regarding   26:12
  26:22 43:4 57:18
  93:13 105:23
  120:7 130:22
  131:10
regardless   103:4
regards   114:18
  119:22,23 125:20
  130:15
regularly   84:17
related   2:6,15,18
  3:11 4:18 5:17,22
  17:21 18:1,17
  20:17 28:17 46:10
  48:4,9 58:25
relates   16:12
  29:24 71:11 96:2
relating   29:25
  67:1
relationship
  75:12 93:4,9
relator   4:11,19
  6:16 29:25 32:1
  32:16 34:4,22
  36:16 37:4 38:17
  39:10 43:19 45:9
relator's   4:13,16
  33:3 34:9 35:13
  35:23 43:7
release   98:6,11
  105:10 119:25
  120:1 122:12
  131:9
released   23:23
  113:21 131:13
releasor   98:9,12
relevance   48:5
relevant   28:4 59:5
  62:10 65:2 66:8
reliance   20:15
  77:13 79:24 80:3
  83:4 87:17 94:2

**relied** 42:19 77:10
    77:10,12 80:3
    93:24 118:15
**relief** 2:13 4:18
    5:9 23:18,24
    24:10,16 25:13,16
    28:9 29:2 36:23
    47:13 124:6 133:7
**relies** 79:22
    120:10
**relieved** 11:8
    27:13 28:5,8
**relifted** 125:23
**reluctant** 34:21
**rely** 70:16 79:22
    94:1
**relying** 89:6,7,7
    121:12,20
**remain** 43:17 48:1
    48:3,4 61:11
**remained** 47:7
**remaining** 22:14
    37:18 47:19,20
    48:12 49:21 57:25
    66:7
**remains** 37:11
    47:18 49:6 94:3
**remedies** 97:5
**remedy** 23:3
**remember** 20:20
    20:23 81:11
**remittance** 84:13
    84:16,21 85:9
**remotely** 86:23
**removed** 69:4
**render** 36:16
    56:21
**rendered** 53:14
**renders** 53:14
**reopen** 24:3
**repair** 116:17
**repaired** 106:23

**repairing** 127:4
**repeat** 114:24
**repeating** 18:12
**replaced** 87:20
**replacement**
    30:25 31:5 36:5
**replay** 25:12
**replies** 69:14
**reply** 2:17 5:14
    31:3 32:25 40:17
    56:6,7 61:6,7
    68:19 69:4 79:4
    79:10,17 88:12,25
    89:1 95:20
**report** 37:6
**reporter** 10:8
**reporter's** 11:6
**reporting** 84:3
**reports** 84:13,16
    84:21 85:9
**represent** 57:16
**representation**
    87:15
**representations**
    64:25 78:7 89:13
    93:18
**representative**
    49:12,25 50:2
    58:7 66:10
**represented** 62:13
    83:25 98:7 100:7
    131:6
**representing**
    14:10 64:18,21
**request** 2:4,14
    14:25 15:3,4
    19:11,16 23:16
    28:5,7 29:2 35:9
    37:14 39:11 40:3
    41:13 52:19
    132:14
**requested** 15:18
    47:14 121:25

**requesting** 39:12
    117:7
**requests** 35:8
    42:12
**require** 37:14
    119:16 124:13
**required** 12:9
    48:19 50:13 51:4
    107:22 123:13
**requirement**
    92:16
**requirements**
    131:20,21
**requires** 50:24
    90:9
**reserve** 33:7 62:5
    62:7,7 63:6,23
    64:8,9,12 65:19
    65:19 67:18
**reserved** 39:13
    50:22
**reserves** 49:10
    50:13,14 62:14
    88:9,11
**reserving** 64:22
**resolution** 42:16
**resolve** 21:17 41:7
    45:20 47:9 74:11
    83:2 132:22
**resolved** 46:22,24
    57:24 63:22 99:11
**resolves** 98:7
**resolving** 34:16
    66:21
**resources** 23:5
    34:2,3 49:3 64:4
    65:25
**respect** 18:20 21:7
    21:9 27:1,3 32:16
    32:25 33:17 35:1
    48:6 50:8 58:10
    68:3,11 69:20
    71:10 78:7 91:16

    96:13 131:23
**respectfully** 21:5
    45:2 56:18
**respective** 96:14
    96:24 102:24
**respond** 4:8 15:4
    19:24 20:7 21:24
    107:7 118:6
    121:22
**response** 3:10,14
    3:19,22 4:1,5 20:8
    20:11 24:22 57:22
    68:19 70:8,14,17
    72:22 84:8 88:8,9
    88:12 95:20 116:1
    120:5 121:22
**responses** 69:12
    69:18,23 90:4
**responsibility**
    96:23
**rest** 71:17,17
    135:13
**restore** 119:20
**restored** 106:23
**rests** 102:9
**result** 17:16,20
    65:11 71:6 123:2
    130:20
**resulted** 22:18
**results** 48:25
**retail** 54:11
**retain** 3:1
**retroactive**
    132:14
**retrying** 32:19
**returned** 44:18
**returning** 71:3
**returns** 132:10
**reveals** 88:21
**review** 25:24
    54:14 79:10 88:20
    94:8 135:25

**reviewed** 15:8
26:10 79:4 95:18
104:6 135:24
**revisit** 33:24
**rico** 4:9 9:11 99:8
99:10 104:9 105:3
108:15 114:18,24
115:1,16 118:23
119:10 121:15
122:8 125:8,9
131:25
**rico's** 5:21 109:14
**rid** 90:22
**right** 10:20 11:4
15:1 18:11 21:8
21:23 22:9 29:4
30:18 31:2,19
35:23 37:25 38:10
39:10,14 40:7
41:5 45:7 51:10
51:23 53:11 54:8
56:2,16 59:18
60:23 62:22 63:11
68:6 73:9 75:5
76:10 78:8 80:1,8
80:18 83:12 86:13
88:9,12,23 90:18
91:9 94:5 96:9
98:3,4,21,25 99:1
99:9 103:13 104:2
105:7 106:7
109:13 110:24
112:14,15 113:16
114:1,8,9,15
116:17 117:3,10
117:23 118:4
119:13,16 122:2
124:4,6 125:16
126:2 129:25
131:1,25 132:5
133:10
**rights** 21:18,18
33:8 63:13 83:5

87:15,17,18,20
105:21 106:11
109:11,22,25
115:13 123:21,21
124:7 130:13
133:8
**rios** 9:6,14 95:23
95:24 96:5 97:18
97:21 99:8 100:1
100:5,16,25 101:9
101:14,20,22,25
102:16,22 103:7
103:11,15,20,25
104:15,17,19
105:6,18 106:19
107:2,24 108:1,24
109:4,8,16 110:4
110:13 111:4,7,11
111:15,17 112:2
112:12,17,24
113:4,10 115:21
116:7,10,23
117:17 118:2,6,10
121:21 122:7
124:16,20,22
125:8,15,18 126:1
126:22 127:8
128:16,20,24
129:3 130:11
**rise** 89:14,15
93:16,21 98:16
126:12 130:17
131:16
**risk** 42:9 116:3
118:16 134:6
**road** 56:11 137:21
**robbed** 86:8,11
**robbery** 86:17
**robert** 1:22
**rochelle** 79:15
**role** 109:21
**roof** 115:8,9,12

**roofing** 114:19
115:8
**room** 1:14
**rosa** 5:10,15,18,23
9:2,9 95:13,15,24
96:17,21 97:7,8
98:2,15,20 99:16
100:19 102:15,19
106:5,5,5 107:12
107:19 109:23
111:22 112:15
113:2,18,20 114:2
114:2,4,14 115:9
115:12,13 116:2
116:14,24 117:7
118:21 119:6,19
120:10 121:6,11
121:19 122:2,4
123:22 124:6,24
125:1,7 126:10
127:3,22 131:25
134:6,23,25
**rosa's** 95:19,20,21
107:9 109:11
116:5
**roughly** 32:5
**round** 50:15
**ruiz** 4:8
**rule** 2:13 11:10
16:10,10 18:21,23
18:23 19:8,22,22
19:23 20:12 21:4
22:14 23:6,6,16
23:17,25 24:3
25:15 26:5 27:21
27:21 28:5 29:6
109:15,16,17
122:13
**ruled** 21:5 32:21
44:25 78:4 81:2
123:14 129:6,7
**rules** 14:11,12,13
14:14 19:8,15

21:6,6 23:1,17
27:18 63:5,7,19
63:23
**ruling** 13:7 14:23
14:23 15:14 24:21
25:23 26:13 27:10
27:12 29:9,12
66:20 82:18 91:5
133:7
**rulings** 133:19,20
**run** 67:22 113:7
**rushed** 74:13
**ry** 129:14,25
133:2
**ríos** 9:1

**s**

**s** 2:6,15,18 3:11
5:17,22 6:1 10:1
52:8
**s.d.n.y.** 23:12 24:5
25:5
**s.w.2d** 102:5
**sale** 4:13,16 30:3
30:14,17,23,24
31:8 34:10 36:4
39:4,5,9 53:1
86:21 92:23
**salene** 7:22 57:13
78:1 91:1
**sales** 4:15
**san** 9:11
**santa** 5:10,15,18
5:23 9:2,9 95:13
95:15,19,20,21,24
96:16,21 97:7,8
98:2,15,20 99:16
100:19 102:14,19
106:4,5,5 107:9
107:12,19 109:11
109:22 111:22
112:15 113:2,18
113:20 114:2,2,4
114:14 115:9,12

115:13 116:2,4,14
116:24 117:7
118:21 119:6,19
120:10 121:6,11
121:19 122:2,4
123:22 124:6,24
125:1,7 126:10
127:3,22 131:25
134:6,23,25
**satisfied** 21:3
23:23 30:6 93:11
**satisfy** 30:24
**save** 53:15
**saw** 53:4
**saying** 28:1 29:4
38:7 46:3 63:25
76:20 82:15 85:15
94:23 126:7,9
**says** 20:10 36:4
73:10 74:18,19
75:15,18 76:24
79:17 81:20 88:9
91:6,22 102:3,24
105:8 107:15
108:3 120:13,15
121:1 125:4
**scarsdale** 6:12
**scenario** 55:24
99:3 128:8
**schedule** 14:9,12
22:25 32:25 95:2
**scheduled** 2:1
14:18
**scheduling** 35:11
**scheme** 85:4
86:18 91:19
**schwartz** 57:11
**score** 34:12
**se** 16:7 22:22
40:16
**sears** 1:7 2:22 3:4
10:4 11:2 13:4
68:21,23 69:8

70:21,21,22,24,24
71:1,4,7,8,12
72:14,23,24 73:2
73:10,11 76:2,3,8
76:20 83:22 84:2
84:4,5,6,12,15,16
84:21,23 85:3,5,7
85:8 86:8,11,14
88:17,22 91:6
92:5,6,7 93:3,7,9
95:12 96:9,11,20
97:12 98:6,6 99:7
99:23 100:12,18
101:1,3,17 102:17
102:19,21 103:10
103:24 104:3,13
104:16,18,22,22
104:23,25 106:2,9
106:23 107:16
109:9,11 110:3,10
110:11,11 116:22
116:24 117:1,4,8
117:13,14,19
118:10,19 121:1
124:15 126:24
127:12 128:25
129:4,4 130:11,19
131:5,15,15
**second** 3:7,14,19
3:22 4:2,5 27:12
28:3,17 29:23
44:5 47:20 48:12
52:17 57:22 63:21
65:20 68:10 72:5
72:15 79:14 91:10
97:25 101:6
120:12 123:12
132:21,24
**secondly** 22:15
81:5
**section** 90:9 91:11
92:10 93:18 96:11
107:14,22 108:13

122:17
**sections** 105:20
**secured** 4:16 30:1
30:11 32:3 34:1
38:25 41:11
**security** 120:22
**see** 12:3 19:22
24:4,7 25:4,16
26:5 37:13 49:14
52:2 53:7 55:24
59:15,16 66:6
67:5 72:13,16
73:17 77:2 83:1
97:19,20 102:18
102:20 105:7
107:20 108:21
111:2,4,8 112:10
118:1 124:11
125:9 127:2 131:4
132:21
**seeing** 124:5
**seek** 19:17 20:4
20:23 134:25
**seeking** 23:3
38:24,25 80:4
**seen** 15:9,12
61:17 94:3
**segregation** 80:7
**selene** 67:12 70:12
**self** 113:10
**seller** 67:15 70:19
**sellers** 67:24
**selling** 92:5
**sells** 103:1
**send** 136:3
**sends** 75:14
**senior** 31:7
**sense** 66:11 73:1
79:7 108:17
**sent** 12:13 13:19
49:17 51:15 84:5
114:10

**sentiments** 57:18
**separate** 98:4,24
99:5 100:10
103:22,22 104:2
104:19 114:2
121:16 124:8
125:2 126:10
131:11,13 132:8
**separately** 10:13
27:9 117:3 132:19
134:13
**september** 61:4
70:15 84:15,18
97:9
**series** 89:12
105:20
**serious** 11:17
**served** 14:15,17
**serves** 122:14
**service** 91:18 93:6
93:7
**services** 25:19
**serving** 23:25
**set** 10:12 19:12
39:17 41:9 67:16
67:17 68:18 70:7
71:2,13 122:10
**setoff** 65:7
**sets** 24:25
**setting** 24:23
**settle** 54:2 60:24
134:22
**settled** 33:19
46:21 48:23 66:7
97:10
**settlement** 2:21
33:2 45:6 47:1
48:7,14 56:23
59:17,19 61:13,17
61:17 66:1 98:5
106:9 113:12,25
116:4 117:1 123:2
123:12 126:12

127:18 128:14
131:14 134:1
**settlement's**
  122:13
**settlements** 48:8
  48:19 55:13 60:21
**seven** 72:7 83:21
**seventeenth** 47:16
**shared** 46:17
**shawn** 75:1,11
**ship** 68:25 69:1
  70:22,23 86:18
  93:16
**shipped** 80:1,2,23
**shipper** 71:8 93:9
**shipping** 85:2,5,7
  85:23 93:6
**shopchimney.com**
  3:19
**short** 18:7 37:17
  39:8 43:15,21
**shortly** 13:13
**shortness** 74:10
**show** 14:2 17:14
  82:3,21 102:18
  126:9 130:20
**showed** 13:25
  18:8
**showing** 14:3
  16:11 17:5 24:7
  36:20 84:9,13
**shown** 25:8 82:20
  87:14 94:4 127:5
  127:14
**shows** 13:21
**side** 59:19 61:19
  61:20
**sides** 42:25 55:19
  59:15,16
**sight** 121:5
**sign** 11:20 130:5
**signed** 12:10
  113:12 118:18

**126:6 129:5**
**significant** 37:11
  37:16 49:6,6,20
  50:7,20,21 55:9
**similar** 107:17
**simple** 21:19
**simply** 16:14
  45:16 55:11,22
  76:7 93:10
**single** 61:20
**sino** 7:10 52:8
  54:25
**sir** 81:14 100:9
  104:15 111:7,11
  111:15 112:17
  127:11 136:6
**sister** 119:13,21
**sit** 37:3
**site** 92:6
**situation** 106:12
  120:25 121:4
  134:20
**situations** 77:16
  77:18
**six** 23:23 24:15
  48:2 68:13
**sixteenth** 47:16
**skeptical** 81:8
  94:4,7
**sky** 4:1 8:9 71:19
  71:22 72:1,2 74:6
  86:25 93:20 94:13
  94:14,20 95:3
**slim** 82:25
**small** 48:6 49:21
**smaller** 67:24
**smith** 111:6,14
**sold** 68:20,25 85:8
  85:11 90:10,14,14
  92:1,6,9 103:14
**solely** 27:16 58:12
  94:25

**solutions** 10:9,13
  11:21 129:21
  137:20
**someplace** 69:3
**somewhat** 12:12
  76:18
**sonia** 5:9,14,18,23
  9:13 95:25 96:3
  113:18 118:7
  119:21 121:22
  133:6
**sonnax** 114:12
  127:19 134:2
**sonya** 5:25 137:3
  137:8
**sorry** 17:22 19:4
  30:13 38:12 52:23
  53:18 70:1 71:10
  73:22 75:25 81:14
  87:7 89:9 97:17
  100:13 101:19
  103:11 111:2,13
  111:25 112:13
  114:22,23 115:3
  115:17 120:2
  123:8 127:10
  128:3,5 131:11
**sort** 38:22 67:4
  71:20 74:11
**sorts** 73:6 77:16
  77:18
**sotomayor** 134:15
**sought** 12:1 15:23
  30:5 32:2
**sound** 24:10 53:20
**sounds** 58:19
**southern** 1:2
  53:16
**spam** 15:3
**sparingly** 23:3
**speak** 10:6 22:19
  22:23 34:4 48:25
  67:6 83:14 90:24

**120:7,8 132:24**
**speaking** 10:7
  92:4,16
**speaks** 60:13
**special** 3:2
**specific** 20:20
  25:15 87:13 94:6
  109:2
**specifically** 17:9
  75:18 102:14
  113:19 118:22,23
  122:23
**specifics** 42:13
**specified** 27:17
**specifies** 110:2
**specify** 16:17
**spelled** 11:5
**spells** 75:18
**spend** 33:12 34:2
  55:16,22,23 65:24
  65:24,25
**spite** 118:20
**spread** 34:14
  62:24
**spun** 81:1
**src** 92:20
**staff** 10:21
**stage** 21:21 73:20
**stand** 21:24 22:1
**standard** 17:3,6
  73:18 79:7,12,13
  79:16 83:3 96:14
  110:15
**standards** 79:9
  111:20
**stands** 97:23
**start** 29:15 40:5
  66:2 98:1
**started** 14:1 42:1
  125:19 126:17
**starting** 61:3
**state** 15:13 26:14
  38:13 70:10 73:19

75:8 79:9,11,12
133:20
state's 64:4
stated 24:17 25:1
29:9 35:19 42:22
91:17 102:23
113:19 134:15
statement 5:17
statements 59:2
states 1:1,13 4:24
7:2 24:8 25:17
39:11 44:15 79:16
98:11 108:15
125:6
stateside 104:4
stating 11:25
72:24 75:9 77:10
84:17
status 5:1 29:24
34:6,6 35:10
37:24 38:21 39:7
40:16 46:1 47:8
47:10 52:15
116:15 122:5
statute 125:20,23
132:15 135:3
statute's 93:10
statutes 93:2
statutorily 122:4
statutory 91:12
91:13 92:11 93:11
105:23
stay 5:9 36:23
40:20 113:21
119:25 122:12,15
122:23 124:6
125:17,23 126:4
126:13 127:19
128:13 132:13
133:7,22 134:3,11
134:18,19
step 27:22 28:20
41:8 69:4

stick 19:1
sticking 33:2
stipulations
108:18
stolaas 4:5 83:16
83:20,23,25 84:3
84:5,6,8,14 85:3,4
85:7,9,11 88:8,9
88:11,14 89:2
93:18
stop 16:22 17:12
18:8 59:19 66:2
69:22 87:8
stopped 84:2
85:10
stops 129:24
store 106:23
strategies 50:1
street 1:14 6:17
7:4,19 8:3 9:3
strict 21:6
strictly 69:11
strikes 23:25
strong 61:18
91:20
strongest 77:6
subgroup 58:10
subject 34:18 36:7
36:14 47:24 48:23
64:23 65:8 122:13
submission 29:18
submit 29:8 56:20
78:8 95:6 135:7
submitting 134:24
subordinated
33:10
subsequently 30:7
substantial 33:13
substantive 32:9
69:20
substitute 24:6
suffering 18:2
21:12,14,14

suffice 39:8
sufficiency 73:16
sufficient 28:21
31:16 71:14 77:4
102:12 128:10
133:15
sufficiently 81:21
94:12,15
suggest 51:4
suggested 135:7
suggests 74:18
suite 6:11 7:4 9:3
137:22
sum 17:17 27:22
summarize
115:20
summarized
100:4,5
summary 24:19
48:21 116:6
superpriority
4:17 30:15,21
31:12
supersede 31:8
supplement 94:8
supplemental
95:16
supplements
105:25
supplies 4:9
support 2:17
60:21 72:16 88:10
97:24 105:4
108:21 109:13
116:12,13
supported 50:2
supporting 89:3
supports 63:24
suppose 35:18
77:19
supposed 19:19
110:3

sure 14:5 31:10
34:4 38:5 39:5
41:17 44:2,13
54:19 59:23 62:6
62:17,22 64:1
70:11 74:4 75:7,7
78:16 79:6 83:18
90:7,21 107:25
110:17,23 114:23
124:21 132:17,18
133:13
surfaced 53:1
surprise 23:19
24:13
surprised 15:12
76:19
surreal 38:9
sustain 130:9
sustained 18:3
suzanne 3:17
swing 45:8
system 105:22,22

t

t 52:8 98:18 137:1
137:1
table 112:6
take 12:20 14:4
20:15 67:10 71:20
82:8 91:19 121:13
121:16
taken 28:20
106:18 114:5
121:6
takes 15:11
talk 44:5 81:24
105:20 118:7
talked 51:17 62:3
talking 41:25
50:15 51:12 62:6
81:9 100:2,3
107:18 116:17
targets 61:24

[teamsters - transcript]                                           Page 33

**teamsters**  24:8
  25:17
**technology**
  129:22 130:7
**ted**  3:3 135:19
**tee**  42:7,9,12
**teed**  40:10 41:14
**telephonic**  2:2
  10:5 22:19
**telephonically**
  11:15
**tell**  80:18 81:15
  82:25 86:16
  127:10
**telling**  75:20
**tells**  70:22,22
  97:14
**ten**  46:23 58:20
  66:20
**tenant**  96:12
**tenth**  5:3 56:5
  61:3,6
**term**  32:22 37:17
  37:17,17 43:15,16
  43:17,21,22
**terms**  39:11,12,18
  42:18,20 62:23
  67:2,5 84:1 92:10
  102:8 107:13
  108:16 117:8,9
  122:4 123:1
  124:14
**test**  134:2
**tex.civ.app.**  102:6
**texas**  97:20 100:2
  124:2
**thai**  7:10 52:8
  54:25
**thank**  10:22 12:23
  22:8 29:14,16,21
  34:25 37:9 45:22
  46:3,8,12 66:17
  70:4 71:25 95:4

95:23 133:5 135:6
  135:13,16 136:2,6
  136:7,8,9
**thanks**  12:5 89:21
**theirs**  61:16
**theories**  93:1
  127:3
**theory**  94:5 97:4
**therefor**  93:11
**thing**  10:7 17:21
  18:16 41:22 43:25
  55:13 59:25 62:17
  62:22 65:20 67:1
  68:3 72:12 86:20
  96:5
**things**  11:8 13:21
  22:12 32:4,19
  38:23 39:2 48:5
  54:3,20 56:15
  67:17 70:25 73:6
  132:2
**think**  10:8 13:1
  14:6 18:11 31:14
  31:17 32:24 33:2
  33:13,25 35:10,16
  36:1,12,13,22,25
  37:1,7 39:3,20
  41:15 42:16 43:8
  44:21 45:2,25
  46:10 51:16,18
  52:1 53:3 54:25
  57:4,7,9 59:2,5
  60:6,13,22 61:2
  61:16,18 62:4
  64:3 65:13 66:12
  67:23 68:3,4,5
  69:10 70:9,14
  72:20 73:3,10,21
  75:10 76:14 77:6
  77:9,24 78:23
  79:5,8,10,23 82:4
  82:11,24,25 83:5
  90:1 91:7 102:4

107:10,11 110:3
  112:2 113:13
  115:6 116:12,21
  116:25 119:15
  121:7 123:19
  126:23 127:6,19
  127:22,22 128:13
  128:19 129:21
  131:22 132:10
  133:5 135:8,11
**third**  40:11 64:2
  90:15 105:11,14
  105:20 122:15
  134:16
**thirteenth**  47:4,12
**thought**  13:16
  26:7 41:16,17
  58:2 66:10 98:20
  107:4 123:14,16
  124:5 127:11
**three**  23:20 24:14
  48:8 57:6,7,20
  67:9 79:16 121:25
  122:4,9 130:5
**threw**  126:9
**tied**  65:10 129:21
**ties**  87:15
**time**  2:5,14 4:8
  10:22,23 11:19
  12:8 18:25 19:6
  19:17,18,24 20:9
  20:18,20,22,23,25
  27:18 28:2,2,21
  30:4,4 39:2 40:3,3
  45:3 46:16,20
  47:3,5,6,22,23
  50:4 56:4 59:18
  59:20,22 64:10
  65:10,20,24 71:22
  82:8,23 84:25
  89:5 95:7,15
  97:11 101:13
  103:10 124:4

125:22 133:5,15
  135:14
**timeframe**  20:20
**timely**  24:6 89:20
**times**  11:16 38:9
  72:7 112:19 132:3
**title**  91:25
**today**  12:4 22:25
  29:24 36:11,12
  37:2 38:8 42:17
  44:24 47:21 53:10
  56:14 58:9 60:3
  62:9 68:14 87:5
  89:24 90:18
  133:18 134:9
**today's**  27:8 29:3
  34:18 62:15 92:4
  133:20 135:9,21
**told**  18:12 54:1
  84:10 89:7,8,8
  132:15 135:4
**tolling**  133:9,9
  134:25
**top**  16:2
**topic**  67:2
**tort**  69:15 87:3
  90:17 93:15
**torts**  87:4
**tortured**  123:25
**total**  31:5,7,20
  36:4,6 46:17 48:2
  48:3,21 84:20
  109:10
**totally**  68:7
**touch**  17:22 18:16
**track**  115:25
**trade**  81:4
**trading**  7:11 52:9
**transaction**  71:13
**transcribed**  5:25
**transcript**  14:22
  15:7,8,11,18
  29:12 137:4

transfer  71:1
transform  45:4
  59:1 86:21
treadmill  70:20
treat  102:9 119:8
treated  23:15
  119:7
treatment  77:17
trial  43:20
trials  37:15
tried  18:4 20:23
  61:2
trouble  42:8
true  63:11 65:21
  125:15 137:4
trust  77:15 78:5
  81:2 83:11 87:22
trustee  7:2
try  43:1 83:1
trying  19:25
  21:10 32:20 55:14
  58:16 66:1 74:2
  74:10,25 75:6
  82:6 115:23,25
  133:6 135:17
tunc  3:3
tune  70:25
turn  42:23
turns  114:1
twelfth  47:4,11
twice  97:15,23
  98:23 99:5 101:4
  124:9,13 126:19
  126:20
two  11:7 13:21
  22:12 23:20 24:13
  29:23 33:23 36:25
  48:5 53:4 57:8
  63:12 65:13,23
  66:14 89:14 102:2
  102:3 104:3,10
  109:17 110:18,20
  113:13 118:24

120:14 122:2
  130:5,5,9
type  56:23 123:4
  124:5 125:16
  134:19
typically  78:25

## u

u.s.  1:23 7:1,3
  25:19
ucc  49:11,24 50:1
ultimately  24:9
uncertainty  55:19
underlies  88:14
underlying  15:23
  25:24 26:11
understand  16:9
  16:16 19:24 20:18
  20:19 39:15 41:2
  42:2 54:19 60:20
  62:14 73:5 85:13
  98:19 104:17
  113:23,25 127:1
  127:13 129:1
  131:12 132:17,18
  132:20
understands
  75:12
understood  39:25
undertaking
  10:13 134:8
underwriter
  100:11 103:20
  119:7,7
underwriter's
  130:15
underwriters
  97:6,11 98:6,16
  99:15,20 102:13
  103:23 104:22,24
  105:1,2,13 106:4
  106:7,8,15 107:21
  109:10 110:8
  111:21 118:15,22

119:10 121:18
  122:16,25 124:17
  130:19 132:1
  133:23 134:13
undisputed  89:9
  89:12 90:12
unfairness  118:25
unilaterally  72:6
unique  72:3 77:7
  122:19
united  1:1,13 4:24
  7:2 24:8 25:16
  39:10 44:15
universe  51:19,22
unknown  1:25
unmuted  132:25
unnecessary  37:5
unrelated  68:7
unsecured  3:4,8
  37:12 69:17,18
  131:4
untimely  20:10
update  35:4 47:8
  47:11 48:21 50:7
updated  46:14
ups  71:7 93:6
urge  41:5
urgent  40:6
usa  23:11
use  36:20 49:2
  60:23 75:16
usually  15:11

## v

v  11:2 23:11,13
  24:2,8 25:17,18
  79:14 102:5
  134:13
vacate  22:5,11
  23:2
vacated  22:13
vacuum  114:5
valid  59:4 77:20

validity  72:22
  76:22
valuable  32:14
valuation  34:15
value  4:12 30:5,25
  34:9 35:2 37:18
  38:24 45:12 90:9
  91:23
varick  7:4
various  46:22
  60:5 84:23 93:1
  110:9
vendor  77:17 81:5
  87:23
vendors  69:5,6
ventures  3:22
  7:18,18 57:13,14
  67:13,13 70:13,13
veritext  137:20
version  10:16
  109:14
versus  40:21
  42:20 109:25
  111:12,17 112:3
  120:12
vice  76:17
view  54:4 77:22
  110:10 134:8
viewed  23:2
viewpoint  53:13
viewpoints  54:4
vir  3:22 7:18
  57:13 67:13 70:13
  93:2
visibility  49:13
vm  3:14
vmi  81:1
vocal  48:18 54:4
void  23:22 100:9
voluminous  24:20
vs  105:8

| w | wants 37:4 43:19 | wheels 81:1 | wrongdoings |
|---|---|---|---|
| w 8:3 | 64:6 71:20 90:24 | white 1:15 | 129:4 |
| wait 13:17 105:17 | 134:25 | willful 28:9,16 | wrote 54:12 56:3 |
| waited 66:5 | warnings 27:3 | win 55:24 61:20 | **x** |
| waiting 13:14 | warrant 98:12 | 113:5 122:22 | x 1:4,10 |
| waiver 12:15 | warranted 22:24 | windfall 85:21 | **y** |
| 76:10 | 54:18 | winners 57:11 | yeah 38:2 41:22 |
| wall 6:17 | wasting 64:4 | withdraw 67:20 | 78:6 112:11 120:6 |
| wander 7:15 52:2 | 82:22 | 113:19 114:13 | 123:19 129:10,17 |
| 52:6,7,14 53:3,12 | watch 110:23 | withdrawn 118:5 | year 40:2,12 |
| 53:19,22 54:13,24 | water 89:8 | withhold 106:17 | 51:25 52:1 132:4 |
| 56:1 57:4,7 59:9 | watersports 3:11 | wondering 13:6 | years 83:21 104:8 |
| 59:18 60:7,8,12 | way 21:17 40:1 | words 23:9 48:14 | 104:10 |
| 60:19 63:1,1,4,12 | 49:13 56:2 77:21 | 108:18 | yesterday 10:17 |
| 63:16 64:11 83:15 | 84:18 101:9 | work 29:10,11 | york 1:2 6:5,18 |
| 83:16,19 85:15,17 | 112:15 115:17 | 48:25 49:7 59:6 | 7:5,13 8:4,11,18 |
| 86:1,10,16,22,24 | 116:2 121:3 | 82:6 104:3 115:8 | **z** |
| 87:7,12 88:2,5,8 | 127:12,15 131:25 | 119:11 | zavsza 75:1,11,20 |
| 88:25 | 133:11 | working 45:19 | zuma 23:11 |
| wander's 58:23 | ways 36:25 41:11 | 66:8 | |
| 59:7 | we've 35:7 37:10 | works 96:13 | |
| want 13:20 15:21 | 38:22 39:7 43:10 | 130:7 | |
| 16:2 21:24,24 | 45:10,18 51:19,19 | world 48:2,3,9,12 | |
| 33:14 34:4,5 | 57:24 58:6,9,11 | 49:21 50:5 53:14 | |
| 35:25 36:21 41:13 | 58:11 61:17 62:3 | 55:6,14 57:15,17 | |
| 41:17 44:2,7,22 | 65:15 66:5,7 | 62:1,2,16 63:24 | |
| 52:5,14,21 53:16 | 71:13 81:12 82:5 | 68:5 69:19 70:16 | |
| 54:16,19 55:18,18 | 132:3,9 | 70:16 | |
| 55:22,23 57:11 | website 68:22 | worn 53:24 | |
| 59:20 62:16,17 | 84:17 | worry 39:20 | |
| 64:7,8 67:5 72:12 | week 40:12 53:7 | 112:21 | |
| 73:23,25 75:16 | 84:19 | worth 32:6 | |
| 110:8 121:5 | weeks 66:14 | wrap 130:3 | |
| 132:19 | weigh 71:22 | write 54:14,16,16 | |
| wanted 12:16 | weil 6:3 10:19 | writer 124:11 | |
| 15:13 40:4 46:11 | 29:22 44:5 74:15 | written 74:13 | |
| 59:11,14 60:9,17 | 89:22 95:5 | 102:11 106:8 | |
| 67:19 73:13 78:6 | went 14:7 16:18 | 110:20 118:22 | |
| 107:7 115:18 | 16:18 17:12 20:6 | wrong 41:7 59:2 | |
| 120:6,7 127:11 | 26:10 48:25 86:7 | 99:11 106:20 | |
| wanting 60:1 | 101:2 118:14,15 | 107:21 114:2 | |
| 83:13 | whatsoever 15:19 | 116:2 118:14,15 | |
| | 64:12 65:5 | 126:21 | |