**Hearing Date and Time: June 17, 2020, at 10:00 a.m. (Eastern Time)**
**Objection Deadline Date and Time: June 10, 2020 at 4:00 p.m. (Eastern Time)**

FERRAIUOLI LLC
390 N. Orange Avenue
Suite 2300
Orlando, Florida 32801
Telephone: (407) 982-7310
Facsimile: (787) 766-7001
Email: scolon@ferraiuoli.com
Email: gchico@ferraiuoli.com

Counsel for *Santa Rosa Mall, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |

**MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 108(C)**
***NUNC PRO TUNC* TO THE PETITION DATE**

TO THE HONORABLE COURT:

COMES NOW Santa Rosa Mall, LLC ("Santa Rosa"), by and through its undersigned counsel, respectfully states and prays as follows:

Background

1. On September 20, 2017, Store No. 1915 was substantially damaged by the passing of Hurricane Maria.[1] Store No. 1915 has remained closed and in ill repair since.

2. On October 15, 2018, the Debtors filed their voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date").

3. At the October 7, 2019, confirmation hearing, the Court granted the Debtors' *Modified Second Amended Plan* (the "*Plan*") and ordered the Debtors file a letter with the Court clarifying the injunction provision provided in Section 15.8(b).

---

[1] The Court may take judicial notice of the passing of Hurricane Maria, as well as its trajectory and aftermath, under Fed. R. Evid. 201.

4. On October 11, 2019, the Debtors complied with the Court's direction and filed a letter (Docket No. 5362) clarifying "that the injunction provision … of the Plan [did] not seek to enjoin any actions against non-Debtor third-parties."

5. On October 15, 2019, the Court entered an *Order* (Docket No. 5370) confirming the *Plan*. Pursuant to Section 13.4(iii) of the *Plan*:

> **the automatic stay**… and the injunctions set forth in the Plan, if and to the extent applicable, **shall be deemed lifted without further order of this Court** [on the Effective Date of the *Plan*], **solely to permit**: (a) claimants with … direct action claims against an insurer under applicable non-bankruptcy law to proceed with their claims; (b) insurers to administer, handle, defend, settle, and/or pay … (II) **claims where a claimant asserts a direct claim against any insurer under applicable non-bankruptcy law**, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay to proceed with its claim, and (III) all costs in relation to each of the foregoing…

Docket No. 5370-1, § 13.4(iii), pp. 77-78 (boldface added).

6. On October 21, 2019, the Debtors and Santa Rosa executed a *Stipulation, Agreement*[sic]*, and Order Between the Debtors and Santa Rosa Mall, LLC Granting Limited Relief from the Automatic Stay* ("*Stipulated Order*", Docket No. 5435). The *Stipulated Order* was granted by the Court on October 30, 2020 (Docket No. 5537). Paragraph 2 of the *Stipulated Order* reads as follows:

> the automatic stay … shall be modified solely to the extent necessary to permit Santa Rosa to pursue independent causes of action against Aon; <u>provided</u>, <u>that</u>, all other provisions of the Automatic Stay, **including, without limitation, those provisions prohibiting the commencement or continuation of any other judicial proceeding against any of the Debtors or the Underwriters that** … **could have been commenced prior to the [Petition] Date**, and those provisions prohibiting any act to collect, assess, or recover a claim that arose prior to the [Petition] Date from the respective estates and/or assets or property of any of the Debtors (as defined in section 541 of the Bankruptcy Code), shall remain in full force and effect.

Docket No. 5537, p. 6, ¶ 2 (underline original; boldface added).[2]

---

[2] In agreeing to the language above, Santa Rosa did not admit that the automatic stay extends to the Underwriters, instead, what Santa Rosa agreed to was to preserve the *status quo* and not file or otherwise commence any action against the Underwriters while pursuing an amicable solution with regard to Aon.

7. On January 7, 2020, Santa Rosa filed a *Motion for [] an Order Finding the Automatic Stay Inapplicable or, in the Alternative, for Relief from the Automatic Stay and Memorandum in Support Thereof* (the "*Motion for Relief from Stay*", Docket No. 6317).[3]

8. At a hearing held on April 23, 2020, the Court denied the *Motion for Relief from Stay* and concluded that any action against the Underwriters would have an immediate adverse economic consequence on the Debtors' estate.

> I'm not prepared either to declare the stay inapplicable to the pursuit of claims against the underwriters given that they derive from the debtors' insurance policies and immediately and adversely implicate the debtors with liability under the insurance settlement agreement and therefore, the primary factor under the Sonnax test, which is the adverse effect on the estate, argues to keep the stay in place. The adverse effect here would be in hundred-cent dollars given the post-petition nature of the agreement and the risk the debtors face. [] That agreement, to the extent that the lift of the stay would directly affect it, and therefore it would be covered under 362(a), would also be a basis for protecting the underwriters separately under Queenie v Nygard, International[,] 321 F.3d 282, 287 (2d Cir. 2003), where the court through then Judge Sotomayor stated that where there's an immediate adverse impact on the estate third parties will be protected. That's not necessarily extending the stay. It's just interpreting the stay to apply in that type of situation which I believe is the case here. So I will deny the motion ….

April 23, 2020 Hr'g. Tr., 133-134:21-22.

9. At the hearing, to the extent the automatic stay was not expressly extended to the Underwriters, the undersigned counsel requested the Court toll any applicable nonbankruptcy law statute of limitations to preserve Santa Rosa's rights on appeal. The Court requested Santa Rosa brief the court. See id., 133:4-16.

10. On April 30, 2020, the Court entered an *Order* (Docket No. 7881) denying the *Motion for Relief from Stay*, without prejudice.

11. In light of such *Order*, and to preserve its right to appeal, Santa Rosa seeks an order tolling any applicable nonbankruptcy statutes of limitations *nun pro tunc* to the petition date pursuant to Sections 108(c) and 105 of the Bankruptcy Code and applicable case law.

Applicable Law and Discussion

*A.    The Automatic Stay and Section 108(c) of the Bankruptcy Code*

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Motion for Relief from Stay*.

12. Section 362(a)(6) of the Bankruptcy Code prohibits "any act to collect, assess, or recover a claim **against the debtor** that arose before the commencement of the case under this title" or "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate". 11 U.S.C. § 362(a)(6), (3) (boldface added).

13. In turn, Section 108(c) of the Bankruptcy Code provides in pertinent part that:

[I]f applicable nonbankruptcy law … fixes a period for commencing … a civil action in a court other than a bankruptcy court on a claim against the debtor, … **and such period has not expired before the date of the filing of the petition**, then such period does not expire until the later of

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay under section 362 …

11 U.S.C. § 108(c) (boldface added).

14. Courts differ in their interpretation on how to apply Section 108(c) when a statute of limitations runs before a bankruptcy stay is lifted. See Young v. U.S., 535 U.S. 43, 52 (2002) ("Petitioners believe § 108(c)(1) contains a tolling provision. The lower courts have split over this issue []; we need not resolve it here. [] It would be quite reasonable for Congress to instruct *nonbankruptcy* courts (including state courts) to toll *nonbankruptcy* limitations periods (including state-law limitations periods) while, at the same time, assuming that bankruptcy courts will use their inherent equitable powers to toll the federal limitations periods within the Code.")

15. Some courts recognize Section 108(c) as an independent "tolling provision; it extends state statutes of limitations for creditors who are barred by the automatic stay from taking timely action against the debtor". In re Shamus Holdings, LLC, 642 F.3d 263, 266 (1st Cir. 2011). See *e.g.*, Spirtos v. Moreno (In re Spirtos), 221 F.3d 1079, 1080–1081 (9th Cir.2000) ("The California statute [] fixes a ten-year period []. Under section 108(c), then, the limitations period does not expire until 30 days after the end of the automatic stay."); LBM Fin., LLC v. 201 Forest St., LLC (In re 201 Forest St., LLC), 422 B.R. 888, 895 (B.A.P. 1st Cir.2010) (The question is … whether the creditor was prohibited from taking action to enforce its rights. Spirtos and Morton both framed the question in the latter way, and determined that because the

creditors could not enforce their rights, § 108(c) applied to extend the life of those rights. [] Section 108(c) applies here because LBM was prohibited by the automatic stay from initiating a civil foreclosure action.").

16. Others have held that Section 108(c) does not create an independent tolling provision and instead look to state or federal law. See *e.g.*, Rogers v. Corrosion Products, Inc., 42 F.3d 292, 297 (5th Cir. 1995) ("the plain words of the statute and find that § 108(c) does not create a separate tolling provision. The statute plainly states that for the time period to be suspended, other federal or state law must mandate it and then be incorporated through § 108(c). Otherwise, a party must file suit within the thirty-day grace period after the end of the stay." (citations omitted)).

17. The US Court of Appeal for the Second Circuit has stated that if "the [state law] limitation period governing that lien had not yet expired, the running of the period is tolled pursuant to § 108(c)(1), (2)." In re Morton, 866 F.2d 561, 566 (2nd Cir. 1989). In doing so, the court determined that "this result is in full harmony with congress's purpose in enacting § 108(c). Recognizing that a petition in bankruptcy could sometimes give a debtor unfair advantage over a claimant by allowing the debtor to remain under the protection of the automatic stay until the limitation period governing the claimant's action had expired, [] congress acted to solidly preserve the rights of a party 'stayed from commencing or continuing an action against the debtor because of the bankruptcy case'." Id. at 566-567 (citations omitted). To hold otherwise "not only would create a substantial inequity, but also would give the debtor the power to eliminate certain secured claims simply by filing for bankruptcy at the appropriate time and then allowing the limitation period to run while it remained under the protection of the automatic stay. Exactly this type of inequity congress sought to remedy by enacting § 108(c)". Id. at 567.

18. On the same vein, courts have held that actions against nondebtor third-parties that are stayed by Section 362(a) are also subject to the tolling provisions of Section 108(c). See Valley Transit Mix of Ruidoso, Inc. v. Miller, 928 F.2d 354 (10th Cir. 1991)[4].

---

[4] In In re 360 Networks (USA) Inc., 282 B.R. 756, 764 (Bankr. S.D.N.Y. 2001) (Gropper, B.J.), the holder of an alleged mechanics' liens against a debtors' leasehold interests sought relief from the stay to file actions to continue and/or enforce the alleged lien against the debtors and certain third-party owners of the property encumbered by the alleged liens in state court. The movant argued that its rights against the third-party owners might be impaired by

19. In <u>Valley Transit</u>, the US Court of Appeals for the Tenth Circuit noted and held as follows:

> [the non-debtor] reasserts … that because [the creditor] was attempting to foreclose its mechanics lien against only the [non-debtor]'s fee interest and not the leasehold interest of …. the debtor, [the creditor]'s foreclosure claim was not stayed by section 362 and, therefore, not subject to the provisions of section 108(c)(2). [The creditor] contends that even though it was seeking to satisfy a debt out of property that stood in the name of persons other than a debtor, section 362 makes no such distinction but, instead, bars any action to collect or recover a claim against a debtor from any source whatsoever, not just a debtor. Therefore, according to [the creditor,] it was stayed from filing its foreclosure claim and protected by section 108(c)(2).
>
> **We agree with [the creditor]'s position.** The stay provisions of section 362 are broad. The stay protects not only property of the estate but also prohibits "any act to collect ... or recover a claim against the debtor...." Bankruptcy courts, construing section 362, have held that it precludes foreclosure of property when a debtor has a "leasehold" or "possessory" interest in the property and the debt sought to be satisfied out of the property is that of the debtor. Here, [the creditor]'s foreclosure claim was based upon a debt incurred by [the debtor]. **Therefore, [the creditor]'s foreclosure claim was stayed by section 362, and the tolling provisions of section 108(c) applied to the claim.**

<u>Valley Transit Mix</u>, 928 F.2d at 356-357 (internal citations omitted; boldface added).

20. The Debtors executed that certain *Settlement Agreement* wherein they agreed "to hold harmless, indemnify, and defend the [Underwriters] from any and all actions, demands, and claims under the Policies which [the Debtors], or any … additional insured, and/or loss payee, … including but not limited to … landlord(s) of any of [the Debtors] properties, may assert at a later date arising out of the matters herein released." *Settlement Agreement*, Docket No. 6317-10, ¶ 6.

21. In <u>Fisher Sand & Gravel Co. v. Western Sur. Co.</u>, 2009 WL 4099768 (D.N.M. 2009), the District Court for the District of New Mexico analyzed whether the statute of limitations was tolled under Section 108(c) where the automatic stay was extended to a nondebtor third-party with a pre-petition right to indemnification by the debtor. During the pendency of the debtor's bankruptcy case, Fisher Sand &

---

virtue of the fact that a state court might find that a suit against the owners alone lacked a necessary party (the debtors), thereby finding cause to dismiss the claims. While the Court did not find any support for the movant's claims, it noted that the movant's right to file suits "against the [third-party] owners d[id] not appear to be protected by § 546(b)[, and thus] there is some uncertainty as to whether [the movant] could sue the owners." The Court noted that "[a]lthough [the holding in <u>Valley Transit</u>] would fully protect [the movant], <u>Valley Transit</u> is not necessarily the law of this circuit …" Notwithstanding, the Court found that the harm borne by the movant was greater than that of the Debtor and thus granted the relief requested solely to allow the movant to file its actions and cause process to be served.

Gravel Company ("Fisher") filed a motion for relief from the automatic stay. The bankruptcy court granted Fisher relief from the stay, allowing it to file a suit against the indemnitee in state court. The indemnitee removed the suit to the district court and filed a motion to dismiss on the grounds that the suit was time barred. Relying on A.H. Robins Co. v. Piccinin, 788 F.2d 994 (4th Cir. 1986)[5], and cases where the automatic stay was extended to cover claims against a debtor's indemnitee, Fisher argued that the automatic stay extended to the indemnitee, thereby tolling the statute of limitations under Section 108(c).

22.     The District Court in Fisher noted that the bankruptcy court "expressly extended the automatic stay [in A.H. Robins]. In contrast, neither [the debtor] nor [the indemnitee] ever requested the bankruptcy court to extend the stay to Fisher's claims against [the indemnitee]. The weight of authority indicates that although the stay provided by 11 U.S.C. § 362(a) is automatic as to the debtor, it is not automatic as to others. **Unless the bankruptcy court expressly extends the stay to others,** it applies by its literal terms only to the debtor." Id., at *3 (boldface added):

> [The debtor] did not seek to extend the stay, indicating its comfort with [the indemnitee's] indemnity claim. Fisher … cites a passage from A.H. Robins in which the court suggested that it would be unfair 'if the indemnitee, who has suffered a judgment for which he is entitled to be absolutely indemnified by the debtor, cannot file and have allowed as an adjudicated claim the actual amount of the judgment he has secured but must submit his claim for allowance in the bankruptcy proceeding with the prospect that his claim may not be allowed in the full amount....' Yet … the indemnitee in this case, was apparently comfortable with this prospect because it did not seek an extension of the automatic stay.
> …
> Fisher maintains that '[i]t is noteworthy that the BR Court *lifted* the stay; rather than determining the stay did not apply in the first instance. Presumably, the BR Court would have not needed to lift a non-existent stay.' However, the bankruptcy court's granting of Fisher's motion to lift the automatic stay does not amount to a ruling by the bankruptcy court that the stay extended to Fisher's claims against [the indemnitee]. The bankruptcy judge's comments at the hearing on Fisher's motion to lift the automatic stay make clear that he did not believe that the automatic stay applied to Fisher's claims against [the indemnitee].

---

[5] For purposes of this argument, in In A.H. Robins, the US Court of Appeals for the Fourth Circuit noted the debtor's pre-petition indemnification obligations and held that suits against nondebtors may be stayed "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." Id., at 999. If the Court has determined that the insurance proceeds are part of the bankruptcy estate and the "[Settlement Agreement], to the extent that the lift of the stay would directly affect it, [] would be covered under [Section] 362(a)", thereby precluding Santa Rosa from asserting claims against nondebtors in regards thereto, it is only fair that the Court extends § 108 tolling against the non-debtor entities related to such proceeds.

Id., at *3-6 (citations omitted; italics original).  As such, and "**[b]ecause the bankruptcy court did not expressly extend the automatic stay to cover Fisher's claims against [the indemnitee], … the stay did not toll the running of the limitation period set forth in the payment bond.**" Id. at *6 (boldface added).

B.     *Section 105 of the Bankruptcy Code*

23.     Section 105(a) of the Bankruptcy Code grants this Court the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Consequently, this Court has the authority, pursuant to its equitable powers under Section 105(a) of the Bankruptcy Code, to authorize the relief requested herein because such relief is necessary to avoid the "inequity congress sought to remedy by enacting § 108(c)".  In re Morton, 866 F.2d at 567.

24.     Like Fisher, Santa Rosa has been prevented from asserting nonbankruptcy causes of action against the Underwriters by the automatic stay.  However, while this Court has not expressly extended the automatic stay to the Underwriters, it has expressly concluded that any action against the forgoing would have an immediate adverse economic impact on the Debtors' bankruptcy estate because of the Debtors' indemnity obligation.  See April 23, 2020 Hr'g. Tr., 133-134:21-22 ("I'm not prepared … to declare the stay inapplicable to the pursuit of claims against the underwriters … That's not necessarily extending the stay.  It's just interpreting the stay to apply …").

25.     Accordingly, to preserve Santa Rosa's right to pursue nonbankruptcy cases of action against the Underwriters, Santa Rosa moves the Court to follow the same reasoning in Valley Transit and toll any applicable nonbankruptcy statute of limitations *nunc pro tunc* to the petition date pursuant to Sections 108(c) and 105 of the Bankruptcy Code and applicable case law.

26.     The relief requested herein is made in good faith and for good cause.

Prayer for Relief

WHEREFORE, Santa Rosa respectfully moves the Court to enter an order tolling any applicable nonbankruptcy statute of limitations *nunc pro tunc* to the petition date, and grant any other relief that is fair and equitable.

Respectfully submitted.
Dated: May 5, 2020

**Ferraiuoli** LLC
390 N. Orange Avenue
Suite 2300
Orlando, Florida 32801
Telephone: (407) 982-7310
Facsimile: (787) 766-7001

/s/Sonia E. Colón Colón
Sonia E. Colón Colón
Admitted *Pro Hac Vice*
USDC-PR No. 213809
scolon@ferraiuoli.com

/s/Gustavo A. Chico-Barris
Gustavo A. Chico-Barris
NY State Bar No. 929147
USDC-PR No. 224205
gchico@ferraiuoli.com