UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>Sears Holding Corporation, et al.,<br><br>Debtors | Chapter 11<br><br>Case No. 18-23538 (RRD)<br><br>Jointly Administered |

**GROUPBY USA, INC.'S RESPONSE TO
DEBTORS' EIGHTEENTH OMNIBUS OBJECTION**

GroupBy USA, Inc. ("**GroupBy**") submits this its *Response* (the "**Response**") to the *Eighteenth Omnibus Objection to Proofs of Claim or Ballots (Reduced or Reclassified Claims/Ballots)* [Docket No. 7859] (the "**Eighteenth Omnibus Objection**") filed by the Debtors and, in support thereof, would respectfully show the Court as follows:

**I.     BACKGROUND**

1.     GroupBy provided software and related services to or for the benefit of the Debtors, including Sears Holding Management Corporation ("**SHMC**") pursuant to a Software-as-a-Service Agreement between GroupBy and SHMC dated December 31, 2017 (the "**Agreement**"). The services GroupBy provided to SHMC included hosted software service, third-party services, ecommerce, and related services. GroupBy continued to provide these services post-Petition.

2.     On October 15, 2018 (the "**Petition Date**"), Sears Holdings Corporations and various of its affiliates (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of title 11 of the United State Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continued to operate their businesses as debtors in possession.

3. On October 24, 2018, the United States Trustee for Region 2 (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors (the "**Committee**"). No trustee has been appointed in these chapter 11 cases.

4. GroupBy submitted its invoice dated January 1, 2019 to SHMC in the amount of $840,000.00, in accordance with the contractual terms of the Agreement. The Invoice covered post-petition services to the Debtors from January 1, 2019 through June 30, 2019 at the contracted rate of $140,000 per month.

5. On January 23, 2019, the Debtors filed their *Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* [Docket No. 1774] (the "**Cure Notice**"). The Cure Notice included the amounts the Debtors believed were required to cure all defaults then existing under such contracts to be assumed (the "**Cure Amounts**"). Although the Cure Notice listed the Cure Amount for the Agreement to be $0, the Debtors indicated in the Cure Notice that they intended to assume the Agreement with GroupBy. GroupBy filed a limited objection to the Cure Notice [Docket No. 2282] disputing that the Cure Amount was $0.

6. In March 2019, the Debtors changed their mind. On March 6, 2019, the Debtors filed their *Motion of Debtors for Entry of an Order (A) Authorizing Rejection of Certain Executory Contracts, (B) Establishing Procedures for the Rejection of Executory Contracts, and (C) Granting Related Relief* [Docket No. 2768] (the "**Rejection Motion**"). The Debtors requested in the Rejection Motion that the Agreement with GroupBy be rejected effective March 6, 2019. The Court granted the Rejection Motion and authorized the rejection of GroupBy's Agreement by Order dated April 3, 2019 [Dkt. No. 3044]. On April 17th, the Debtors circulated their Notice of Rejection of Executory Contracts [Dkt. No. 3268] (the "**Rejection Notice**"). The Rejection Notice

made clear the effective date of rejection of such contracts, including the Agreement with GroupBy, was April 17, 2019.

7. GroupBy provided its software as a service and related services to the Debtors from the Petition Date through March 31, 2019. On April 29, 2019, after the Debtors rejected the Agreement, GroupBy filed its *Motion for Allowance and Payment of Administrative Expense Claim and for Related Relief* [Docket No. 3404] ("**Administrative Expense Motion**"). The Declaration of Srikant Nayak attached thereto [Docket No. 3404-2] is fully incorporated herein by reference. The Debtors objected to the Administrative Expense Motion via their *Omnibus Objection to Vendors' Motions for Allowance and Payment of Administrative Expense Claims* [Docket No. 4854] and GroupBy filed a reply in support of its claim [Docket No. 4935]. The Court held a hearing on the Administrative Expense Motion, but determined it was premature and did not issue a ruling.

8. On April 10, 2019, GroupBy filed Claim No. 15900 (the "**Original Claim**"), asserting a claim in the amount of $2,940,000 based upon GroupBy's provision of software and related services to SHMC pursuant to the Agreement. GroupBy asserted a claim of $2,940,000, consisting of the remaining $3,360,000 balance due under the Agreement, less $420,000 due and owing by SHMC post-petition, for which GroupBy asserted an administrative claim.

9. On May 8, 2019, the Court entered an *Order Approving the Rejection of Certain Executory Contracts* [Docket No. 3755] (the "**Rejection Order**") including the Agreement with GroupBy. Pursuant to Paragraph 2 of the Rejection Order, claimants were required to submit a proof of claim on or prior to thirty (30) days after the entry of the Rejection Order for claims arising from that rejection, such as GroupBy's administrative claim; failure to do so forever barred the claimant from asserting a claim arising from the rejection of its contract. To comply with the Rejection Order, GroupBy filed an amended Claim No. 19690 (the "**Amended Claim**") for the

limited purpose of adding the $420,000 administrative expense amount to GroupBy's existing $2,940,000 claim.

10. GroupBy voted in favor of the Plan [Docket No. 5139] and opted in to the Consent Program, but GroupBy has not yet received any distribution for its administrative claim.

11. Now, Debtors are again moving to disallow GroupBy's Administrative Expense Claim via their Eighteenth Omnibus Objection. In their Eighteenth Omnibus Objection, the Debtors mistakenly list $840,000 as the amount of GroupBy's claim, but, as stated in the Amended Claim and the Administrative Expense Motion, GroupBy only asserts an administrative expense claim of $420,000 for services provided between January 1, 2019 and March 31, 2019.

## II.   ARGUMENTS & ANALYSIS

12. GroupBy is entitled to an administrative expense claim for the entire period during which the Debtors used and benefitted from GroupBy's services under the Agreement, from January 1, 2019 through March 31, 2019. GroupBy is entitled to an administrative priority claim in the amount of $420,000, which represents three months service at the contract rate of $140,000 per month. Both the Amended Claim and the Administrative Expense Motion GroupBy filed reflect this administrative claim.

13. The Debtors claim that once an objection to a claim is filed, the burden rests with the claimant to establish the proof of claim, but that assumes the Debtor has put forth either argument or evidence to controvert the claim itself. A properly filed proof of claim that comports with Rule 3001 is *prima facie* evidence of the validity *and* amount of the claim. Fed. R. Bankr. P. 3001(f); *In re Irons*, 343 B.R. 32, 39 (Bankr. N.D.N.Y. 2006). GroupBy's Original Claim and Amended Claim were filed in accordance with the Bankruptcy Code and Rule 3001 and are thus *prima facie* evidence. After GroupBy properly filed its proofs of claim, the burden shifted to the Debtors to produce evidence to rebut the validity of the claim: "to overcome this *prima facie*

evidence, the objecting party must provide evidence that disproves at least one of the essential elements of the claim." *In re Irons*, 343 B.R. at 39 citing to *Carey v. Ernst*, 333 B.R. 666, 672 (S.D.N.Y. 2005). The Debtors do not introduce any such evidence in their Eighteenth Omnibus Objection; the Debtors do not even directly address GroupBy's – or any other claimant's – claim beyond its mention as a single line item out of the 71 claims listed in the Eighteenth Omnibus Objection. As such, the objection should be denied and the administrative expense claim should be allowed in the amount of $420,000.00.

14. GroupBy is entitled to allowance of its administrative expense claim for the actual and necessary costs of preserving the Debtors' estates. Section 503(b)(1) of the Bankruptcy Code requires the Court to allow administrative expenses for "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. 503(b)(1). "[A]dministrative expense priority is available to contract parties when the debtor enjoys the benefits of the contract pending assumption or rejection." *In re Smurfit-Stone Container Corp., 425 B.R. 735, 741* (Bankr. D. Del. 2010); *BP Energy Co. v. Bethlehem Steel Corp.*, Civ. Act. No. 02-6419 (NRB), 2002 U.S. Dist. LEXIS 22052, *22 n.14 (S.D.N.Y Nov. 15, 2002) (a debtor is required to make post-petition payments under an executory contract pending assumption or rejection as an administrative expense to the extent it receives a benefit to its estate.); *see also In re Beverage Canners Int'l Corp.*, 255 B.R. 89, 93–94 (Bankr. S.D. Fla. 2000).

15. Courts consistently hold that, where a contract exists, the contractual rate is assumed to be "the reasonable value of the goods or services provided to the estate." *Bethlehem Steel Corporation v. BP Energy Company and Conoco, Inc. (In re Bethlehem Steel Corporation)*, 291 B.R. 260, 264 (Bankr. S.D.N.Y. 2003) citing *Memphis-Shelby County Airport Authority v. Braniff Airways, Inc. (In the matter of Braniff Airways, Inc.)*, 783 F.2d 1283 (5th Cir. 1986). Debtors are required to pay the "reasonable value of the services received," and "there is a

presumption that the contract rate is reasonable." *Smurfit*, 425 B.R. at 741; *see also In re Washington-St. Tammany Elec. Coop., Inc.*, 111 B.R 555, 559 (Bankr. E.D. La. 1989). This presumption "in favor of the contract price is viable unless the debtor introduces convincing evidence to the contrary." *Bethlehem Steel Corporation v. BP Energy Company and Conoco, Inc. (In re Bethlehem Steel Corporation)*, 291 B.R. 260, 264 (Bankr. S.D. N.Y. 2003), citing to *Matter of Washington-St. Tammany Electric Cooperative, Inc.*, 111 B.R. 555, 559 (E.D. LA. 1989).

16. The Debtors clearly benefited from the Agreement and the related software services rendered by GroupBy through March 31, 2019. The use of GroupBy's services provided the Debtors with full functionality of their ecommerce platform, a core component of the Debtors' business operations. Absent these services, the Debtors' ecommerce capabilities would have been severely compromised during a critical phase of their reorganization. GroupBy's continued support under the Agreement allowed the Debtors to preserve the ongoing value of their business, which benefitted the estate and all creditors. As set out in the Administrative Expense Motion, GroupBy is therefore entitled to an administrative priority expense claim pursuant to section 503(b)(1) of the Bankruptcy Code.

### III.    PRAYER

In light of the foregoing, GroupBy respectfully requests that this Court enter an order denying the Debtors' Eighteen Omnibus Objection, granting GroupBy an administrative claim in the amount of $420,000, and for any such other and further relief, at law or in equity, to which GroupBy may show itself to be justly entitled.

Dated: May 13, 2020.

Respectfully submitted,

By: */s/ Michael P. Cooley*
Michael P. Cooley (SBN 3005717)
**REED SMITH LLP**
2501 N. Harwood St., Ste. 1700
Dallas, Texas 75201
T: 469.680.4200
F: 469.680.4299
mpcooley@reedsmith.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on **May 13, 2020** a true and correct copy of the foregoing document was served through the court's CM/ECF system to all parties consenting to service through same.

*/s/ Michael P. Cooley*
Michael P. Cooley