Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 18-23538-rdd

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   SEARS HOLDINGS CORPORATION

8

9          Debtor.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12

13                  United States Bankruptcy Court

14                  300 Quarropas Street, Room 248

15                  White Plains, NY 10601

16

17                  June 17, 2020

18                  10:15 AM

19

20

21  B E F O R E :

22  HON ROBERT D. DRAIN

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  UNKNOWN

Page 2

1    HEARING re Notice of Agenda of Matters Scheduled for

2    Telephonic Hearing on June 17, 2020 at 10:00 a.m.

3

4    HEARING re Notice of Hearing on Interim Applications for

5    Allowance of Compensation and Reimbursement of Expenses on

6    June 17, 2020 at 10:00 a.m. (related document(s)7820, 7847,

7    7815, 7818, 7841, 7816, 7846, 7814)

8

9    HEARING re Fourth Interim Fee Application of Prime Clerk

10   LLC, as Administrative Agent to the Debtors, for Services

11   Rendered and Reimbursement of Expenses for the Period from

12   November 1, 2019 through February 29, 2020 (ECF 7814)

13

14   HEARING re Fourth Interim Application of FTI Consulting,

15   Inc., Financial Advisor to the Official Committee of

16   Unsecured Creditors of Sears Holdings Corporation, et al.

17   for Interim Allowance of Compensation and Reimbursement of

18   Expenses for the Period: 11/1/2019 to 2/29/2020,

19   fee:$337,852.50, expenses: $1,379.56 (ECF #7815)

20

21

22

23

24

25

                                                            **Page 3**

1   HEARING re Fourth Interim Fee Application of Akin Gump

2   Strauss Hauer & Feld LLP as Counsel to the Official

3   Committee of Unsecured Creditors for Allowance of

4   Compensation for Services Rendered and Reimbursement of

5   Expenses for the Period: 11/1/2019 to 2/29/2020,

6   fee:$4,217,l 12.50, expenses: $1,424,635.72 (ECF #7816)

7

8   HEARING re Fourth Application of Weil, Gotshal & Manges LLP,

9   as Attorneys for the Debtors, for Interim Allowance of

10  Compensation for Professional Services Rendered and

11  Reimbursement of Actual and Necessary Expenses Incurred

12  from: 11/1/2019 to 2/29/2020, fee:$5,051,526.75, expenses:

13  $206,901.80 (ECF #7818)

14

15  HEARING re Fourth Application for Interim Professional

16  Compensation for Paul, Weiss, Rifkind, Wharton & Garrison

17  LLP, Debtor's Attorney, period: 11/1/2019 to 2/29/2020, fee:

18  $75,78L00, expenses: $207,704.60 (ECF #7820)

19

20

21

22

23

24

25

Page 4

1    HEARING re Third Application for Interim Professional

2    Compensation Third Joint Application of Paul E. Hamer, as

3    Fee Examiner and Ballard Spahr LLP, as Counsel to the Fee

4    Examiner for Interim Allowance of Compensation for

5    Professional Services Rendered and Reimbursement of Actual

6    and Necessary Expenses Incurred period: 11/1/2019 to

7    2/29/2020, fee: $562,951.00, expenses: $2,520.24 (ECF

8    #7862)Reset for 07/15/2020 at 10:00 am

9

10   HEARING re First Interim Fee Application of Herrick,

11   Feinstein LLP as Special Conflicts Counsel to the Official

12   Committee of Unsecured Creditors for Allowance of

13   Compensation for Services Rendered and Reimbursement of

14   Expenses for the period: 1/2/2019 to 2/29/2020,

15   fee:$1,076,531.5, expenses: $14,827.17 (ECF #7958)

16

17   HEARING re Status Regarding Effective Date

18

19   HEARING re Motion to Allow for an Order Pursuant to 11

20   U.S.C. § 108(C) Nunc Pro Tune to the Petition Date filed by

21   Sonia E Colon on behalf of Santa Rosa Mall, LLC (ECF #7910)

22

23

24

25

Page 5

1    HEARING re Debtors' Limited Objection to Motion for an Order

2    Pursuant to 11 U.S.C. § 108(c) Nunc Pro Tune to the Petition

3    Date (related document(s)7910) filed by Jacqueline Marcus on

4    behalf of Sears Holdings Corporation (ECF #8021)

5

6    HEARING re Reply to Debtors' Limited Objection to Motion for

7    an Order Pursuant to 11 U.S.C. 108(c) Nunc Pro Tunc to the

8    Petition Date (related document(s)7910) filed by Gustavo A

9    Chico-Barris on behalf of Santa Rosa Mall, LLC. (ECF #8026)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 6

1    A P P E A R A N C E S :

2

3    WEIL, GOTSHAL & MANGES

4         Attorney for Debtors

5         767 Fifth Avenue

6         New York, NY 10153

7

8    BY:  GARRETT FAIL

9         JACQUELINE MARCUS

10

11   DAVIDOFF HUTCHER & CITRON

12        Attorney for Orient Craft LTD

13        605 3rd Avenue

14        New York, NY 10158

15

16   BY:  DAVID WANDER

17

18   FERRAIUOLI LLC

19        Attorney for Santa Rosa Mall

20        221 Ponce de Leon Avenue

21        San Juan, PR 00917

22

23   BY:  GUSTAVO CHICO-BARRIS

24

25

 1   BALLARD SPAHR

 2        Fee Examiner

 3        1675 Broadway

 4        New York, NY 10019

 5

 6   BY:  PAUL E. HARNER

 7        VINCENT MARRIOTT

 8

 9   ALSO APPEARING TELEPHONICALLY:

10   SHIRIN MAHKAMOVA

11   BRYAN PODZIUS

12   NATAN BANE

13   ALEXANDER TIKTIN

14   ARLENE ALVES

15   BRYAN CIMALA

16   ALIX BROZMAN

17   PATRICIA WALSH

18   VADIM NIKITINE

19   EMILY PAGORSKI

20   LEE J ROHN

21   CHRIS KIM

22   ANDREW CARRILLO

23   JEREMY RYAN

24

25

1                   P R O C E E D I N G S

2           THE COURT:  All right.  The next case and last

3    case on the agenda is in re. Sears Holdings Corp. et al.

4    And again, I --

5           MR. FAIL:  Thank you, Your Honor.

6           THE COURT:  Right.  And again, I have an agenda

7    for this set of hearings as well, an omnibus agenda.

8           MR. FAIL:  Good morning, Your Honor.  Garrett

9    Fail, Weil Gotshal & Manges, for the Debtors.  We did file

10   an agenda for this morning's hearing.  The first item on the

11   agenda is for seven fee applications, all of which are

12   uncontested.  Those include applications for Prime Clerk,

13   FTI, Akin Gump, Weil Gotshal, Paul Weiss, Paul Harner as the

14   fee examiner, Herrick Feinstein.  And each of those was

15   noticed and there was no objection for any of them, so

16   they're all going forward on an uncontested basis this

17   morning.

18          THE COURT:  Okay.  Do these applications reflect

19   any pre-application reductions worked out with the fee

20   examiner?

21          MR. FAIL:  Your Honor, I think in the order that

22   we propose to submit granting the applications, I believe

23   there's a reservation of rights.  To the extent any of the

24   professionals have reached an agreement, we have verified

25   with the professionals that the numbers in the order that we

1   submitted to chambers are correct from their perspective.  I

2   don't know if Mr. Harner is on the phone or his

3   representative and wants to speak to specific applications.

4   But in general, there's been a reservation of rights to

5   continue to the final fee applications to preserve any

6   ability, but not to delay for process.  But if Mr. Harner --

7            MR. HARNER:  Your Honor, it's Paul Harner.  That's

8   correct.

9            THE COURT:  Well, I guess on that point, it's

10  clear that these Debtors are cash strapped.  And I just --

11  I'm not quite sure whether the reservation is going to be

12  effective, if you follow me.

13           MR. HARNER:  Well, the Debtors, you know, cash

14  position is what it is, Your Honor.

15           THE COURT:  Right.

16           MR. HARNER:  But I don't know that that affects

17  the solvency of the professionals that are involved in being

18  paid.

19           THE COURT:  Well, is each professional -- I mean,

20  for, you know, the biggest downside for a professional would

21  be that the fee examiner determines at the end of the day

22  that he's going to object to X-hundred thousand of fees.

23  Mr. Harner, you're satisfied that either that can come out

24  of the last amount that would be still not paid or that the

25  firms are good for it if they have to disgorge it?

1          MR. HARNER:  Yes, Your Honor, I am.  We have been

2     sensitive to that issue.  And, obviously, it's been one

3     that's in the forefront of the professionals, in my mind and

4     the Court's mind, for some period of time.  But we are

5     satisfied that to the extent that there are either agreed

6     upon reductions or objections that result in Court ordered

7     reductions, that they can be satisfied either out of amounts

8     otherwise payable in the final fee application process,

9     otherwise held back, or by disgorgement from the

10    professionals involved.

11         THE COURT:  Okay, all right.  And the

12    professionals understand that?  I mean, to put it

13    differently, there's a fair amount of -- I'm not sure it

14    rises to the level of precedent, but there are remarks both

15    on the record and sometimes in cases by bankruptcy judges

16    saying, you know, I'm reluctant to order disgorgement.

17         Here, I guess given the reservation of rights, I

18    just want to put people on notice.  I'm not saying that I

19    would order --

20         MR. HARNER:  Right.

21         THE COURT:  -- you know, (crosstalk).

22         MR. HARNER:  We're reluctant to have disgorgement

23    and, you know, believe that the applications are

24    appropriate, and the fees and expenses are reasonable and

25    justified.  And so, even if they are challenged, we

Page 11

1    obviously will stand behind the applications.

2            THE COURT:  Right.  But I guess I don't want,

3    given the reservation of rights, given the fact of the

4    Debtors' cash position, which I do think is relevant here

5    because often when there's a reservation of rights, it can

6    be dealt with in the final fee application by saying, well,

7    I'm not going to authorize X amount of the final fee app for

8    the last period, which would have been paid in cash --

9    possibly that wouldn't happen here.

10           MR. FAIL:  Just one reminder, Your Honor.  This

11   case is part of the (sound glitch) of the carveout.

12           THE COURT:  Right.

13           MR. FAIL:  And so, the Debtors' professionals and

14   the committees' professionals, you know, have not agreed to

15   take the same risks that other parties have faced in this

16   case, so we are differently situated, and I'll just remind

17   the Court of that as well.

18           THE COURT:  Well, no, I understand the carveout

19   point.  I guess ultimately my point is this: that, again,

20   this is no comment on the fee applications that I've

21   reviewed, either this particular set or prior ones.  But if

22   the fee examiner finds something and convinces me that I

23   should grant that objection, given the reservation of rights

24   and given that we're not dealing with it now, I think people

25   should understand that I'm not going to be reluctant about

Page 12

1    directing disgorgement.  I think that's the proper approach,

2    because otherwise it would force the examiner to make

3    objections on an interim basis, and that's wasteful, I

4    think.

5            MR. FAIL:  Thank you, Your Honor, understood.  And

6    maybe what I would suggest is that we hold off.  If Your

7    Honor approves the objection -- the applications today

8    before the Debtors submit the proposed order, a final

9    proposed order to chambers and before the Court enters it,

10   the Debtors -- Weil Gotshal can communicate with each of the

11   professionals whose application is on today, ensure that

12   they have heard the message that the Court is giving today,

13   see if there's any engagement that could be productive or

14   any proposed changes that need to occur consensually with

15   Mr. Harner and his team, and submit a proposed order with

16   any changes or the same to the Court after the professionals

17   have had an opportunity to consider Your Honor's statements

18   today.

19           But conditionally, the request that the Court

20   approve it as it, subject to any additional consensual

21   resolutions reached in the coming days.  Does that approach

22   work?

23           THE COURT:  Yeah, that's fine, that's fine.  Now

24   related to that, and this is my only set of comments on any

25   of these applications, but it comes up in at least three

Page 13

1     cases.  It appears to me that, at least with respect to the

2     Akin Gump, Weil Gotshal, and Paul Weiss applications -- and

3     it's most dramatic in the Paul Weiss one, not in terms of

4     the amount but just in terms of the identification of the

5     issue -- a substantial amount of the time billed to fee and

6     employment matters appears to be billed to responding to the

7     fee examiner, dealing with the fee examiner, revising time

8     entries and the like.

9              I'm not talking about redacting time entries for

10    privilege and things like that.  I'm really focusing on

11    literally dealing with the fee examiner's inquiries about

12    the bill and/or maybe discussing potentially problematic

13    aspects of the bill, although I don't know if that's

14    included in this because it's not in that much detail.  No

15    one has addressed this and there's a reservation of rights

16    that we just spent some time on.

17             I'm not sure whether, under the Baker Botts-Asarco

18    case, that time of time is compensable.  And I think

19    normally if a client had questions about a bill, made

20    inquiries about time records, et cetera in a non-bankruptcy

21    context, the law firm wouldn't bill the client for answering

22    those questions.

23             So I'm highlighting this issue with the

24    reservation of rights.  I don't think I need to address it

25    at this point, but I think it is an issue.  And to the

1    extent that Mr. Harner hasn't focused on it -- I think he

2    should -- the U.S. Trustee may want to focus on it and

3    certainly the lawyers may want to focus on it.  I don't have

4    a fixed view on it.  I'm not asking for briefing on it.  My

5    inclination, unless I hear anyone who, frankly, probably

6    shouldn't be heard since there are no objections to the

7    allowance of these interim applications, but my inclination

8    is to grant the applications, but to have raised that issue

9    for future consideration.

10          MR. FAIL:  Thank you, Your Honor.  So we'll take t

11   he granting of the application.  And if there's nothing

12   else, we can move on to the status conference that's

13   scheduled for agenda item number two.

14          THE COURT:  That's fine.  So you could email the

15   order in with schedules A and B.  I think in the past, we've

16   had all professionals, including the committee

17   professionals, covered in one order.

18          MR. FAIL:  That's right.

19          THE COURT:  And that's subject to the procedure

20   that you outlined a few minutes ago.  Hopefully, there won't

21   be any tinkering with it, and everyone can understand the

22   point I was making about disgorgement.  So let's move on, as

23   you said, to the next agenda item.

24          MR. FAIL:  Thank you, Your Honor.  Again, it's

25   Garrett Fail from Weil Gotshal for the Debtors.  The Debtors

Page 15

1     are providing the Court and parties-in-interest with this

2     update pursuant to Paragraph 14 of the confirmation order.

3     The Debtors have given updates before on the progress of

4     administering the cases, including on December 13th and

5     February 24th.

6              The Debtors filed an exhibit on the docket prior

7     to the start of this hearing that may be helpful for

8     participants to view; it's at ECF 8032.  The Court will

9     recall confirming the Chapter 11 plan in these cases in

10    October.  The confirmation order authorized the continuation

11    of payments of administrative claims prior to the

12    confirmation of the plan, and that's not necessarily

13    unusual.

14             One key part that required Court approval was the

15    settlement, where administrative creditors agreed, actively

16    or passively, to accept less than 100 percent of their

17    allotted claim amount by prioritizing payment to consenting

18    creditors and creditors who reconciled their claims with the

19    Debtors ahead of payment to other administrative creditors

20    that actively refused to compromise on the amount of their

21    claims or the amount of their recovery.

22             The Debtors have honored their end of the

23    agreement.  To date, the Debtors, working closely with the

24    UCC and the admin claims representative, have allowed 1,606

25    claims after reconciling more than 3,942 total claims,

Page 16

1    ballots, motions, books and records, and other requests for

2    payment and administrative claims.  In total, the Debtors

3    eliminated more than $1.3 billion of claims asserting

4    entitlement to administrative or priority status.  This took

5    a significant amount of work; the numbers demonstrate that.

6            There are 167 administrative claims currently

7    being disputed that assert approximately $49 million.  As

8    required, the Debtors made an initial post-confirmation

9    settlement distribution of $21 million in September.  The

10   Debtors are ready to announce their next post-confirmation

11   settlement distribution, which is required by the

12   confirmation order and, as agreed, they're giving advanced

13   notice.

14           They intend to provide notice of the allowed

15   claims receiving distributions and the proposed amounts,

16   subject to adjustment, in the days and weeks following this

17   hearing.  The notice will announce the distribution date,

18   which will be subsequent to the next omnibus hearing in

19   July.

20           The notice will list each of the 1,121 claims that

21   the Court ordered can now be satisfied in full up to their

22   respective settlement account.  Although each of these

23   claims was considered de minimis, the aggregate number

24   represents a substantial, 70 percent, of all of the allowed

25   administrative claimants in this case, and they will now be

1    satisfied in full in compliance with the confirmation order;

2    955 of these claims are newly allowed, and will be receiving

3    their first and final payment.

4         The notice will also show that approximately 294

5    additional newly allowed claims -- that's in addition to the

6    955 de minimis ones -- will receive their first post-

7    confirmation settlement distribution.  These 294 claims will

8    receive the full (sound glitch) distribution, that is the

9    same 28.7 percent that was distributed to holders of allowed

10   claims in December.

11        The notice will also show the amounts in reserve

12   for each of the remaining disputed claims.  To be clear, the

13   Debtors will be reserving the same 28.7 percent that they

14   are distributing to the newly allowed settlement of

15   administrative claims.  The amount of the reserve may be

16   significant, in part because the Debtors intend to reserve

17   amounts for claimants who are recipients of potentially

18   avoidable transactions.

19        What the Debtors are proposing in part is (sound

20   glitch) to settle and to get a distribution to do so now

21   before the July hearing.  The Debtors encourage parties to

22   do so.  Otherwise, creditors will wait until the next

23   distribution, as well as the completion of any necessary

24   litigation to receive any payments.  The Debtors do not

25   intend, in general, to make interim distributions, so there

1    is an incentive for parties to settle now, which will free

2    up what the Debtors believe are excess reserves for the

3    benefit of all allowed and remaining disputed claims.

4             The estimated amount of the distribution to

5    allowed creditors is $15 million, and the estimated amount

6    being held back in reserves for disputed claims is $14

7    million.

8             Today, the Debtors are providing the Court and all

9    creditors with an update simultaneously.  The summary

10   conclusion is that met that Debtors' performance and go

11   forward estimates remain consistent with the testimony

12   presented that was the basis for the confirmation order.

13            Let me explain further.  At confirmation, the

14   Debtors' estimated total sources of $83.5 million from cash

15   on hand, which is $45.4 million, net proceeds related to a

16   Calder statue, real estate proceeds, de minimis assets,

17   certain EDA funds with which the Court is familiar, and

18   utility deposits.

19            Through May of 2020, the Debtors collected $79.9

20   million of that, again, from cash on hand, real estate

21   proceeds, de minimis assets, the EDA funds, and utility

22   deposits.  The Debtors estimate future collections from the

23   Calder statue, real estate proceeds, and de minimis assets

24   will be an additional $13.1 million in aggregate.  So in

25   total for those categories of sources, the total estimate

1    has increased by $9.5 million.

2         Following confirmation, the Debtors also received

3    the following additional cash amounts that were not included

4    in the Debtors confirmation estimates: $9 million from the

5    professional fee carveout at confirmation; $4.9 million of

6    tax refunds; $3.9 million from Blue Cross/Blue Shield

7    escrow; and $2 million of other.  So the running total

8    increase to sources from confirmation date estimates,

9    therefore, is now $29.3 million, for those keeping track.

10        The Debtors further estimate that they have $7.5

11   million of tax refunds outstanding and $.7 million of

12   additional amounts they will get from a Blue Cross/Blue

13   Shield escrow.  That brings the running increase in sources

14   from confirmation date estimates to $37.5 million.

15        The Court will recall at the confirmation hearing

16   that the Debtors and Transform were disputing whether

17   Transform was obligated to satisfy or reimburse the Debtors

18   for $90 million of 503(b)(9) claims.  Ultimately, the Court

19   approved, without any objection from any party, a settlement

20   between the Debtors and Transform whereby the Debtors

21   received $12 million to satisfy 503(b)(9) obligations.

22        While some may suggest this is a decrease from

23   estimates used by the Court to determine feasibility of the

24   plan at confirmation, the record reflects the opposite; that

25   is, $12 million more than was estimated as a money good

1   source.  For example, the Court may recall the testimony of

2   Mr. Murphy at confirmation.  He noted that the Debtors'

3   claims against Transform was subject to offsets that

4   included a dispute over inventory and receivables, and that

5   Transform may have a substantial claim for reduction that

6   may be $60 million, so that only 37 would be Transform's

7   obligation.  Mr. Griffith also testified that the Debtors

8   assumed now that no further dollars would come in on APA

9   Transform litigation.  Both of those -- that testimony was

10  on the October 3rd hearing.

11          So to summarize the sources, the total sources

12  collected through May 2020 is $111.7 million, and the

13  Debtors' estimate for sources remaining to be realized is

14  $21.3 million, excluding certain litigation assets.  That

15  combined total with excluding litigation assets is $133

16  million, compared to the $83.5 million number presented at

17  confirmation, excluding the disputed 503(b)(9) claims

18  against Transform; that's an increase of approximately $50

19  million, it's $49.5 million.

20          I'll come back to the litigation assets again, but

21  first let me discuss the uses.  At confirmation, the

22  Debtors' testimony produced a range of estimates for total

23  uses: a low estimate of $210 million and a high estimate of

24  $278 million.  Today, the Debtors' estimate of uses remains

25  within that range at $245.3 million; that's $32.7 million

Page 21

1    below the estimated high end range.

2              Administrative, secured and priority claims

3    estimates were $176 million on the low end and $244 million

4    on the high end.  The Debtors estimate that as a result of

5    the administrative claims settlement and the work that

6    they've done to reconcile claims, the cost of

7    administrative, secured and priority claims will be $173

8    million; in other words, below the low end of confirmation

9    estimates.  This includes a conservative estimate for the

10   full amount asserted by the qui tam plaintiff from whom

11   we've heard recently and whose claim is subject to dispute

12   and a complete reservation of rights.  And as required by

13   the confirmation order, the $25 million of funding for the

14   liquidating trust remains intact.

15             In total, the uses is estimated to be $245.3

16   million, which is within the range of confirmation

17   estimates; $32.7 million lower than the high end range of

18   confirmation estimates.

19             Reduction of costs of claims was offset by an

20   increase in other post-confirmation expenses, among other

21   things: responding to litigation over confirmation appeals

22   and adversary proceedings, post-closing matters, automatic

23   stay issues, real estate transactions, and claims with

24   reconciliation and disputes required significant resources.

25             The result, though, is the progress that we've

Page 22

1    been able to today: net then, the Debtors are outperforming

2    confirmation estimates with respect to non-litigation

3    sources and total uses.  Of course, the total sources I just

4    summarized are lower than the total uses, $112.3 million

5    lower, but that was the case at confirmation; that is not a

6    change in circumstances.

7              In the low claims estimates of uses, without any

8    estimate for contribution by Transform for the 503(b)(9)

9    disputes, the shortfall was $126.5 million.  In the high

10   claims estimate of uses, again, without any estimate for

11   contribution by Transform for the 503(b)(9) disputes, the

12   shortfall was $194.5 million.  The gap has actually narrowed

13   over time since confirmation.

14             Even when the Court considered the potential

15   impact for a complete win for the Debtors against Transform

16   on the 503(b)(9) dispute and the Court calculated the

17   shortfall to be $90 million less, between $35 million and

18   $100 million.  The Court considered the shortfall would

19   probably be greater than the Debtors estimated, $10 million

20   greater, bringing the shortfall estimated at confirmation to

21   approximately $110 million, almost exactly where we find

22   ourselves today.

23             The Debtors' testimony for confirmation is that

24   the Debtors may require proceeds of, among other things, the

25   ESL litigation, to fund payments under the plan.  Mr.

1    Griffith's Declaration included that testimony.  Mr.

2    Griffith testified that between the ESL litigation and

3    preference actions, the Debtors probably need a little over

4    $100 to $120 million; that was the testimony on October 3rd.

5    And the Court acknowledged that the plan support parties

6    were relying on preference recoveries and the ESL and D&O

7    litigation for a distribution under the consent program.

8            Turning now to the litigation assets of the

9    Debtors, which were considered at confirmation, given the

10   shortfall I described.  At confirmation, the Debtors

11   estimated that the combined potential recovery from ESL-

12   related litigation and avoidance actions was $268 million;

13   that number was greater than the then-projected shortfall

14   and, accordingly, the plan was confirmed.

15           To date, the Debtors have not been presented with

16   any reason to alter their absence of the ESL-related

17   litigation.  The litigation is being prosecuted by the

18   liquidating trust; and, in fact, the Court is aware that

19   counsel to the creditors' committee.  At confirmation,

20   though, the Debtors' testimony acknowledged it is, of

21   course, possible that no funds are received as a result of

22   the ESL litigation, and the Court observed, you know, that

23   they were real claims and not visionary schemes.

24           Your Honor is aware the adversary proceeding is

25   currently moving through the motion (sound glitch) phase

Page 24

1   with argument and the petition set for the end of August.

2   In the meantime, we understand the Court recently assisted

3   the parties with a case schedule governing document

4   production and the commencement of (sound glitch).

5          Counsel to the creditors' committee and the

6   committee designated on the pre-effective date committee

7   have participated in discussions regarding the upcoming

8   second settlement distribution to administrative creditors

9   and are supportive of the Debtors moving forward with that

10  distribution.

11         Turning to the avoidance actions.  At

12  confirmation, the Debtors estimated that gross recoveries

13  would be approximately $100 million.  To date, recoveries,

14  including by setoff or settlement of administrative claims,

15  has been $17.8 million.  The Debtors estimate that the

16  remaining recoveries will be approximately $59.7 million but

17  will take time to recover.

18         In total, the Debtors estimate of recoveries on

19  avoidance actions has decreased to $77.5 million, but the

20  estimate is still within the range of the estimate provided

21  in the Debtors' testimony at confirmation trial of what

22  would be received and recovered prior to the effective date.

23         Mr. Griffith testified that his estimated guess to

24  the nearest $10 million of preference recovery by the end of

25  2019 would be $15 to $20 million, and anticipated recoveries

Page 25

1   in 2020 would be another $60 million or so, for a total of

2   $80 million.  Net, the Debtors estimate of gross litigation

3   recoveries has decreased to $245.5 million, but that is

4   still more than two times the projected shortfall between

5   the total sources and total uses.

6          The Debtors are optimistic that they'll be able to

7   make the next required distribution pursuant to the

8   confirmation order without any additional administrative

9   expense of litigating to do so.  While there may have been

10  speculation without the information provided today, the

11  Debtors provide this public report in accordance with the

12  confirmation order to advise that in the Debtors' view, net

13  circumstances have not changed materially since

14  confirmation.  The Debtors stand ready to work with the

15  remaining disputed creditors to resolve their claims in time

16  for the upcoming distribution.

17         That concludes the Debtors' update this morning,

18  Your Honor.

19         THE COURT:  Okay, thank you.  So, Mr. Fail, let me

20  make sure I understand.  I've been listening, so I haven't

21  gone on ECF.  Is the report that you just gave orally also

22  now in writing on ECF on the docket?

23         MR. FAIL:  In summary format, pdf of the chart --

24  a pdf chart containing the numbers that I went through are

25  provided.  I added additional color, and that's noted in the

Page 26

1    presentation as well, but the -- the presentation

2    accompanies it.  The numbers, the comparisons have all been

3    provided, Your Honor.

4            THE COURT:  All right.  And then you also

5    addressed the fact that notice will be going out shortly

6    with respect to the next distribution on administrative

7    expenses, and that I believe you said the actual

8    distribution is slated to be made after the July omnibus

9    hearing.

10           MR. FAIL:  Correct, Your Honor.

11           THE COURT:  Okay.  And you urged the parties who

12   remained in disputes with the Debtor over the allowance of

13   their administrative or priority or secured claim to

14   consider engaging at this point in settlement discussions so

15   that they could participate in that distribution.

16           I'm trying to think practically here.  When,

17   recognizing that you're going to be giving that notice which

18   describes the anticipated distribution, when would sort of

19   the last time -- I'm not setting a date, I'm not setting a

20   bar date or anything like that, but when would be the last

21   time as a practical matter that you think you could agree on

22   a settlement, if you wanted to, in order to participate in

23   the next distribution?

24           MR. FAIL:  Current thinking is prior to the July

25   omnibus hearing, Your Honor.

Page 27

1          THE COURT:  When you say prior to, you mean right

2    prior to, like the day before, something like that?

3          MR. FAIL:  Your Honor, we'll provide, you know, to

4    the extent that we need further clarity from our end

5    mechanically, we will provide that in the notice so that

6    there's no ambiguity.  But the intent of the notice is to

7    provide each creditor with the status of its claim.  And the

8    notice will say it is subject to adjustments and

9    reconciliations to the extent that there was an error, the

10   numbers may change to the extent that distributions are

11   freed -- that reserves are freed up and they're in excess,

12   the amount of the distributions, you know, may change

13   accordingly.

14          So we view this as if it's like a schedule, and so

15   there's exercise and to the extent that there have to be

16   adjustments, there have to be adjustments, and if there's

17   disputes --

18          THE COURT:  No, I understand that, and what I was

19   raising is not required by the settlement procedures in the

20   confirmation order.  But I think it might be useful to

21   include in the notice that the Debtors recommend that if you

22   have a disputed claim that would be subject, if allowed, to

23   this distribution, you seek to either settle it or have it

24   resolved before the distribution.

25          MR. FAIL:  That is our intent, Your Honor.  Thank

1    you, yes.

2              THE COURT:  Okay.  And that there's some date

3    that's tied to that July hearing, I think that's important

4    to -- not as a firm date, but just as a practical matter --

5    to alert people to it.

6              MR. FAIL:  Understood, Your Honor, and agree.

7              THE COURT:  Okay, so I appreciate the update.

8    Does anyone have anything further to say on it?

9              MR. WANDER:  Good morning, Judge.  This is David

10   Wander of Davidoff Hutcher & Citron.  May I be heard for a

11   brief moment?

12             THE COURT:  Yes, sure.

13             MR. WANDER:  I represent on this call two of the

14   creditors, Orient Craft and HK Sino-Thai Trading.  I first

15   want to thank Mr. Fail and Weil Gotshal for the document

16   that they just filed.  I was reading along, Your Honor, as

17   Mr. Fail made his presentation, and it provides a tremendous

18   amount of information and I want to thank them for that.

19             I just want to say for the record that my overall

20   view of the results to date and what was said at

21   confirmation are different than what Mr. Fail presented to

22   Your Honor, but there's no need for me to go into that any

23   further.  And I will digest this further, ask follow-up

24   questions of Mr. Fail and the others, and respond in advance

25   of the July hearing.

Page 29

```
 1              I had requested, Your Honor, that the Court at
 2     least schedule a final date for the World Imports argument.
 3     And in my latest submission, I suggested that it be in
 4     October, which would be the one-year anniversary of the
 5     confirmation hearing.  Some of my colleagues might believe
 6     it should be heard sooner at the July hearing, but I simply
 7     ask, Your Honor, that we set some kind of finality so that
 8     the creditors, including my clients, who may have funds in
 9     reserve for their claims.  If we get a favorable decision,
10     then the funds can be distributed and we won't be held, what
11     I'll call, hostage to funds just remaining in reserve
12     indefinitely.
13              So I ask, Your Honor, that we bring at least
14     closure to the adjournments on the World Imports issue and
15     schedule that matter for oral argument in the near future.
16              MR. FAIL:  Your Honor, Garrett Fail, Weil Gotshal
17     again.  Before I (sound glitch) on this, I've set it for the
18     August hearing, and that hearing's been -- the August
19     omnibus has been moved to September, so there should be
20     nothing left to address on that.  And as we made clear
21     before, given the extent that there's a ruling adverse to
22     the Debtors on that, given the appellate process playing
23     out, (sound glitch) will not be made on those claims at this
24     (sound glitch) distribution in any regard.
25              THE COURT:  Right.  Well, it seems to me that the
```

Page 30

1   decision on when to hear those issues, if ever, depends on a

2   number of factors that cannot be truly predicted in advance,

3   including who simply said I'm not discussing this anymore on

4   a potentially consensual basis.

5           How the Debtors are spending their time in dealing

6   with claims generally?  Based on the work to date and the

7   fact that, at this point of over 3,000 requests for payment

8   of administrative expenses, priority amounts or cash that

9   would otherwise need to come out, only 167 remain.  It

10  appears to me the Debtors have been moving diligently and

11  properly prioritizing the work.

12          There may be a point when we're together in

13  September that it appears to me this is the right time to

14  hear the matter, i.e., in October.  But again, as long as

15  there's a reserve for it and the Debtors are spending their

16  time dealing with a great many more claims than would be

17  covered by this particular legal issue, it makes sense to

18  have them continue to deal with the larger number.

19          As Mr. Fail pointed out, there is a cost -- which

20  is understandable of course because these are legal issues

21  and, therefore, lawyers are spending time on them and

22  billing time on them -- there's a cost to liquidating the

23  administrative expense claims, priority claims and other

24  requests for hundred-cent payment, and it's important to use

25  those dollars efficiently.

1              So I'm reluctant on June 17th to set a hearing

2       date on an issue that I think at this point is not the main

3       issue to focus on in terms of enabling the distributions

4       under the plan.  But it does appear to me that we're getting

5       down to the point if people don't want to negotiate and

6       there aren't other matters involving the claims process that

7       should take my word even, may well be that October is the

8       right date.

9              So does anyone else have anything to say on the

10      report?  Okay, very well.

11              MR. FAIL:  Thank you, Your Honor.  The next item

12      on the agenda is a motion pursuant to Section --

13              MR. HARNER:  Your Honor, I'm sorry to interrupt

14      Mr. Fail.  It's Paul Harner.  May Mr. Marriott and I now be

15      excused?

16              THE COURT:  Yes, certainly.

17              MR. HARNER:  Thank you.

18              MR. MARRIOTT:  Thank you, Your Honor.

19              THE COURT:  Okay, you can go ahead, Mr. Fail.

20              MR. FAIL:  Thank you, Your Honor.  The next item

21      on the agenda is agenda item number 9, the motion pursuant

22      to Section 108 of the Bankruptcy Code.  It's a motion that's

23      not filed by the Debtors and will be handled for the Debtors

24      by my colleague, Ms. Marcus.

25              THE COURT:  Okay.

Page 32

1              MR. FAIL:  Thank you, Your Honor.

2              THE COURT:  Okay.  So this is a motion by Santa

3     Rosa Mall, LLC that, at least as set forth in Paragraph 11

4     of the motion, seeks, quote, "An order tolling any

5     applicable non-bankruptcy statutes of limitations nunc pro

6     tunc to the petition date pursuant to Sections 108(c) and

7     105 of the Bankruptcy Code and applicable case law."

8              I've reviewed the motion, the Debtors' response

9     and Santa Rosa Mall's reply.  The reply spends a significant

10    amount of time referring to the doctrine of equitable

11    tolling under various state law regimes.  So I guess my

12    first question for the movant's counsel is, in seeking this

13    relief, which again is a tolling nunc pro tunc to the

14    petition date pursuant to Sections 108(c) and 105 of the

15    Bankruptcy Code and applicable state law, does that include

16    the doctrine of equitable tolling?

17             MR. CHICO:  Good morning, Your Honor.  On behalf

18    of Santa Rosa Mall, I am Gustavo Chico.  Can you hear me

19    okay?

20             THE COURT:  Yes.  I can hear you fine, sir.

21             MR. CHICO:  Your Honor, we cited the equitable

22    tolling to illustrate it is applicable under Puerto Rico

23    law.  Puerto Rico law allows for the tolling of these

24    provisions.  Under state law basically, these causes of

25    actions may be tolled.

Page 33

1            THE COURT:  Okay.  So the answer to my question

2    was yes?

3            MR. CHICO:  Yes, they may be tolled.

4            THE COURT:  All right.  And you're seeking relief

5    on that basis also.

6            MR. CHICO:  Well, if I may, Your Honor.  The

7    purpose of the motion is during the last hearing, the Court

8    made a determination that 362 -- the Court was not extending

9    the automatic stay; it simply ruled that it applied.  And in

10   ruling like that, Santa Rosa is prevented from filing any

11   complaint against the underwriters.  And if you read Section

12   108, Section 108 expressly tolls against the debtor.

13            And since our causes of actions are against the

14   underwriters, what we move for is a clarification that if

15   the Court determined that the automatic stay applies, then -

16   - to prevent us from filing any cause of action against the

17   underwriters who are third parties, then we move the Court

18   to clarify that because the automatic stay applies.  Then

19   under 108 and the Court's equitable power, if we're being

20   paused to file a complaint against the underwriters, then

21   the tolling period should be fully tolled.

22            THE COURT:  Well, but my question was, are you

23   seeking relief just under Section 108(c) and 105 or also

24   under the doctrine of equitable tolling as it may apply in

25   non-bankruptcy law?

1          MR. CHICO:  We're -- under all of them.

2          THE COURT:  Okay, all right.  So, again, I guess -

3     - in the same paragraph that I quoted, Paragraph 11 of the

4     motion, it says, "In light of the order denying the motion

5     for relief from stay and to preserve its right to appeal,

6     Santa Rosa is seeking this relief."  Maybe I'm just being

7     dense, but what -- how is this relief necessary to preserve

8     Santa Rosa's right to appeal; first, appeal what?

9          MR. CHICO:  Well, we appealed the order denying

10     the relief from stay.  We don't know how long the Court is

11     going to take in ruling that appeal.

12          THE COURT:  Right.  But how is this relief related

13     to that appeal, the relief you're requesting now?

14          MR. CHICO:  Well, Your Honor, because the appeal

15     may take some time, some statutes of limitation may be

16     running.  If we prevail on the appeal, then we can just go

17     and file a complaint against the underwriters, but that may

18     take some time.  And during that time, then time is still

19     running.

20          THE COURT:  Okay.  But you're looking for relief

21     nunc pro tunc to the petition date, so that really doesn't

22     have anything to do with the appeal.

23          MR. CHICO:  Well, the substance of the appeal is

24     the order denying the relief from stay nunc pro tunc in the

25     sense that because the Court determines that the automatic

Page 35

1    stay applies, it applies from the petition date.

2            THE COURT:  But the statute, the state statutes

3    may have already run.

4            MR. CHICO:  Well, we don't believe so because

5    prior to bankruptcy, there were letters sent to the

6    underwriters.

7            THE COURT:  Right, but, of course, that's not part

8    of the record.  I have another question.  I don't think you

9    served Aon or any of the Aon entities with your motion.  I

10   reviewed the certificate of service and the attachments to

11   it and I don't see Aon on it at all.  Are you looking to

12   have this relief apply to your claim against Aon where I

13   lifted the stay consensually some time ago, more than 30

14   days ago?

15           MR. CHICO:  I don't believe so.  I think that the

16   remedy requested was for the underwriters particularly.

17           THE COURT:  Where is that stated?

18           MR. CHICO:  The order will be -- the request was

19   against the underwriters, Your Honor.

20           THE COURT:  Well, I guess that's another question.

21   You did serve them with this motion.  But you actually,

22   since they're corporations, don't appear to have served them

23   properly under Rule 7004.  There's no attention general

24   counsel or some other officer or agent for service; it just

25   lists their address.

Page 36

```
 1              MR. CHICO:  We also served them by email to their

 2      counsel.

 3              THE COURT:  Counsel of record in this case?

 4              MR. CHICO:  I believe so.

 5              THE COURT:  I didn't see an email aspect in the

 6      certificate of service.

 7              MR. CHICO:  Well, I can verify, Your Honor, and

 8      supplement this.  It's Courtney Murphy, the name of the

 9      person is Courtney Murphy, and I can supplement that by

10      (sound glitch).

11              THE COURT:  I'm sorry.  Courtney Mercy?

12              MR. CHICO:  Murphy, Murphy.

13              THE COURT:  Murphy.  And has Courtney Murphy made

14      a notice of appearance in this Chapter 11 case?

15              MR. CHICO:  Need to verify.

16              THE COURT:  You're not sure.

17              MR. CHICO:  I'm not a hundred percent sure.  But,

18      I mean, the certificate of service and the servicing was

19      made by my administrative staff, but I can verify that.

20              THE COURT:  Okay.  Because ultimately, the relief

21      you're seeking here would be against them, right?  It would

22      be against the party that would potentially be asserting a

23      statute of limitations defense, not the Debtor.

24              MR. CHICO:  Right.  This is not -- this order is

25      not geared towards or against the Debtors.  The purpose of
```

1    this is that if we are prevented from filing any complaint

2    to the underwriters, then we should be equally be -- we

3    should preserve the statutes of limitation that may be

4    tolling against them, against third parties, not against the

5    Debtor.

6            THE COURT:  Okay.  Well, I am concerned that they

7    really haven't had proper notice of this motion.

8            MS. MARCUS:  Your Honor, this is Jacqueline Marcus

9    on behalf of the Debtors.  Maybe I can help a little bit on

10   this point.

11           THE COURT:  Okay.

12           MS. MARCUS:  Whether or not the underwriters were

13   properly served by Santa Rosa Mall, we did provide the

14   motion to the underwriters' counsel and actually suggested

15   that they might want to get involved in this dispute.  And

16   their response, somewhat troubling to the Debtors, was this

17   is really an issue for the Debtors because if there's a

18   lawsuit against the underwriters, the underwriters are going

19   to take the position that the Debtors have an

20   indemnification obligation under the settlement agreement;

21   and, therefore, the Debtors really are the true party-in-

22   interest with respect to this dispute.

23           THE COURT:  Well, at this point -- because, again,

24   my order is what it is -- they can't bring a suit against

25   the underwriters.

1          MS. MARCUS:  And that's why our position is that

2     this whole motion and request is premature because there

3     isn't a pending lawsuit.  We don't know when it will be

4     commenced; we don't know where it will be commenced.  We

5     don't know what the basis of the lawsuit will be; and,

6     therefore, we don't even know what statute of limitations

7     we're talking about.

8          THE COURT:  Right.  And, of course, statute of

9     limitations is not jurisdictional, at least in most

10    distances; and, therefore, it can be waived if it's not

11    asserted.

12         MS. MARCUS:  Correct.

13         THE COURT:  So can we turn to that issue?  I have

14    to say that -- well, let me go back.  We had a lengthy

15    hearing on April 23 on Santa Rosa Mall's motion for a

16    determination that the automatic stay doesn't apply to a

17    potential suit against the underwriters or, in the

18    alternative, relief from the automatic stay; that was

19    extensively briefed.  And I, after the hearing, issued a

20    pretty lengthy bench ruling denying the motion.

21         At the very end of the hearing, this issue that's

22    now before me was raised I believe in passing, and I said I

23    haven't thought about it, you're going to have to address it

24    separately.  That was not an invitation necessarily to have

25    me rule on it.  It's just I hadn't thought about it.

Page 39

```
 1              Having now seen the motion and reviewed the

 2      issues, this issue does not, in fact, appear to be properly

 3      before me at this point.  I think, quite similarly to Judge

 4      Fitzgerald's opinion in In re. Busy Beaver Building Centers,

 5      Inc., 127 B.R. 343 (Bankr. W.D. Pa. 1991), for ripeness

 6      jurisdictional purposes, this isn't properly brought before

 7      me.  This would come up in a litigation if the underwriters

 8      -- I'm sorry -- if the Santa Rosa Mall was able to sue the

 9      underwriters, at which point, they would assert a defense

10      maybe on the statute of limitations.

11              I don't know where that suit would be, whether

12      it'd be one suit or many suits.  The underwriters are not,

13      some of them, located in the United States.  I don't know

14      what law would govern, what applicable non-bankruptcy law

15      would govern, which is one of the factors as laid out in

16      Section 108(c).

17              In addition, it would seem to me highly unlikely

18      that in that litigation, if they -- or litigations, if the

19      defendant or defendants raised the statute of limitations

20      defense, Santa Rosa Mall would not limit its response to

21      that defense to Section 108(c), but would also assert the

22      applicable non-bankruptcy law that would govern in that --

23      you know, for that lawsuit defense of equitable tolling and

24      I don't have the equities.  I don't have any of that

25      information before me at this point because there's going to
```

Page 40

1   be a lot of time that expires between now and if and when

2   Santa Rosa Mall is able to bring the lawsuit or lawsuits, so

3   I couldn't possibly determine equitable tolling today.

4           And it further appears to me, although this does

5   not appear necessarily to be the law in the Second Circuit,

6   that the nature of the equities has a bearing on whether a

7   Court would apply the Valley Transit analysis, so this

8   really does not appear to me to be ripe.

9           I will note that in the case law, there are times

10  when the 108(c) issue and the equitable tolling issue are

11  raised in the context of a bankruptcy litigation.  That was

12  the case in In re. Morton, 866 F.2d 561 (2nd Cir. 1989).  It

13  was also the case in In re. U.S. Lines Inc., 262 B.R. 223

14  (S.D.N.Y. 2001) affirmed 318 F.3d 432 by the Second Circuit.

15  But that's not necessarily the case.

16          For example, in In re. Parmalat Securities

17  litigation, 493 F.Supp. 2d 723, District Judge Kaplan -- I'm

18  sorry, it's the Southern District of New York 2007 --

19  District Judge Kaplan considered a response to a defense

20  asserted by the defendants there that the statute of

21  limitations barred the lawsuit and the response to that

22  defense was twofold: first, 108(c), Judge Kaplan, quite

23  clearly in Footnote 51 said that once the 30 days expires

24  after the stay is lifted, 108(c) wouldn't apply, citing

25  Aslanidis v. U.S. Lines Inc., a different U.S. Lines case, 7

1    F.3d 1067 1073 (2d Cir. 1993).

2            But then he also considered the New York state

3    law, because New York state law governed, doctrine of

4    equitable tolling, and he noted that I had issued an

5    injunction in the Section 304 ancillary proceeding that had

6    precluded the lawsuit, and that Italian courts in the

7    Parmalat Italian bankruptcy had issued similar injunctive

8    relief, and he applied the doctrine of equitable tolling.

9    But that was the judge presiding over the trial after the

10   defense was asserted with all the facts before him.  I don't

11   have that.

12           So to me, this seems to be a unripe for

13   justiciability purposes, you know, Article 3 purposes,

14   dispute, and I don't believe I should deal with it.

15           MR. CHICO:  May I?

16           THE COURT:  You've gone -- let me just say one

17   more thing.  You've gone on record in seeking this relief

18   now, so you have shown, unlike the plaintiff in the U.S.

19   Lines case that lost before the Second Circuit and Judge

20   Sweet in 2001 that, at least with respect to making this

21   motion in response to my order, you've been diligent.

22           I don't know has happened though before then and,

23   you know, particularly since it was somewhat ambiguous to me

24   as far as Aon is concerned, but you've answered; this

25   wouldn't apply to Aon, I suppose, this relief you're

Page 42

1    requesting.  But it just doesn't -- it's not -- this is not

2    a judicial issue at this point.  So you can go ahead.

3    That's my preliminary ruling.

4            MR. CHICO:  Okay.  I appreciate the Court's

5    ruling.  I just wanted to clarify.  In some of the cases

6    that we found and cited, Your Honor, the controversy was --

7    is rooted on an extension of the automatic stay and whether

8    or not that tolling in those separate cases in non-

9    bankruptcy court.

10           In this case -- by the way just to clarify, Puerto

11   Rico, we sustain Puerto Rico law would apply because it's an

12   insurance issue and insurance issues in Puerto Rico have to

13   be heard in Puerto Rico and that's why we cited -- we made a

14   chart with the applicable Puerto Rico statutes.  But in some

15   of the cases that we cited, that non-bankruptcy litigation

16   happened or is rooted out of an extension of the automatic

17   stay, whether the automatic stay extended or when the

18   automatic stay was declared or not to extend to third

19   parties.

20           In this particular case, Your Honor, the Court's

21   ruling was that the Court made a distinction and said I am

22   not extending the automatic stay; I am merely declaring that

23   the automatic stay applied.  And when we look at Section

24   108(c), the statute refers to the debtor, only to the

25   debtor.  And what we seek was if the Court ruled that the

Page 43

```
 1   automatic stay applies in this case, then it's not extending

 2   it to third parties, then we just wanted a clarification

 3   that the statute that provides for the tolling when the

 4   automatic stay applies equally applies against those third

 5   parties because it was not extended; it merely stated it

 6   applies.

 7            THE COURT:  Well, again, it's not a ripe

 8   controversy.

 9            MR. CHICO:  Okay.  Thank you, Your Honor.

10            THE COURT:  I mean, it's just not ripe.  And in

11   any event, the fact that I stayed you one way or another

12   from proceeding against the underwriters is really your

13   issue, but that's an equitable doctrine, and the

14   underwriters should be able to litigate that issue if and

15   when they assert the defense.  105 can't be used to inject

16   it into 108; the law is clear on that.  105 does not allow

17   the Bankruptcy Court to override an explicit mandate of

18   another section of the Bankruptcy Code.  Law v. Siegel, 571

19   U.S. 415 421 (2014).

20            So you're going to be relying on the equities

21   anyway one way or the other.  And you're assuming that

22   you're going to win on the appeal and, therefore, get stuck

23   because you've not been able to sue the underwriters in the

24   meantime.  But, of course, again, that was the case always,

25   so the nunc pro tunc relief doesn't make sense.
```

Page 44

1          So I just -- this is just not the right context as

2     a justiciability matter, not a matter at my discretion, to

3     hear this issue.  And, you know, Judge Fitzgerald's not

4     alone on that issue; this has been dealt with a lot in other

5     contexts.  See, for example, Wisniewski v. (indiscernible)

6     Manufacturing Corp., 2018 US Dist Lexis 721 at page 5 (W.D.

7     Wisc., January 3, 2018) and the case that, besides the Busy

8     Beaver case that I already noted, the Debtors cite in their

9     objection Davis v. Vanguard Home Care, LLC., 2016 US Dist

10    Lexis 167098 at pages 6-9.

11         This just isn't, you know, the right -- it's not

12    ripe to hear it at this point.  It should be heard by the

13    Court, if you ever get the chance to sue the underwriters,

14    that is hearing that lawsuit if and when the underwriters

15    raise the defense of the statute of limitations.  And I'm

16    sure you're going to combine, because it would be the smart

17    thing to do given the case law, equitable tolling and 108.

18    And I say that because most of the case law in 108,

19    including in the Second Circuit, provides for tolling only

20    for 30 days after the stay is lifted and it does say only as

21    to the debtor.

22         So your best shot here, as Judge Kaplan very

23    astutely noted in the Parmalat case that I already cited, is

24    to rely on equitable tolling, which is not even before me at

25    this point.  So I'm going to deny the motion.  I'm going to

Page 45

1    ask you to prepare the order.  The Debtors have spent too

2    much money already on Santa Rosa Mall issues, so you can

3    prepare the order, send a draft to Miss Marcus.  And then

4    after a day or so, you can email the order to chambers for

5    entry denying the motion for the reasons stated by the Court

6    on the record at the hearing.

7              MS. MARCUS:  Thank you, Your Honor.  I think that

8    brings us to the conclusion of today's calendar.  The other

9    matters on the agenda have all been adjourned.

10             THE COURT:  That's right.  So I'm going to ring

11   off now; that would end today's hearings.  Thank you.

12             MS. MARCUS:  Thank you, Your Honor.

13             (Whereupon these proceedings were concluded)

14

15

16

17

18

19

20

21

22

23

24

25

Page 46

1

2                    **C E R T I F I C A T I O N**

3

4        I, Sonya Ledanski Hyde, certified that the foregoing

5    transcript is a true and accurate record of the proceedings.

6

7

8

9    Sonya Ledanski Hyde

10

11

12

13

14

15

16

17

18

19

20

21    Veritext Legal Solutions

22    330 Old Country Road

23    Suite 300

24    Mineola, NY 11501

25

Page 47

1    Date:   June 19, 2020

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

[& - 7841]                                                                                      Page 1

**&**

**&** 3:2,8,16 6:3,11
8:9 28:10

**0**

**00917** 6:21
**07/15/2020** 4:8
**076,531.5** 4:15

**1**

**1** 2:12
**1,121** 16:20
**1,379.56** 2:19
**1,424,635.72** 3:6
**1,606** 15:24
**1.3** 16:3
**1/2/2019** 4:14
**10** 22:19 24:24
**100** 15:16 22:18
23:4 24:13
**10019** 7:4
**10153** 6:6
**10158** 6:14
**105** 32:7,14 33:23
43:15,16
**10601** 1:15
**1067** 41:1
**1073** 41:1
**108** 4:20 5:2,7
31:22 32:6,14
33:12,12,19,23
39:16,21 40:10,22
40:24 42:24 43:16
44:17,18
**10:00** 2:2,6 4:8
**10:15** 1:18
**11** 4:19 5:2,7 15:9
32:3 34:3 36:14
**11/1/2019** 2:18 3:5
3:12,17 4:6
**110** 22:21
**111.7** 20:12
**112.3** 22:4

**11501** 46:24
**12** 19:21,25
**12.50** 3:6
**120** 23:4
**126.5** 22:9
**127** 39:5
**13.1** 18:24
**133** 20:15
**13th** 15:4
**14** 15:2 18:6
**14,827.17** 4:15
**15** 18:5 24:25
**167** 16:6 30:9
**167098** 44:10
**1675** 7:3
**17** 1:17 2:2,6
**17.8** 24:15
**173** 21:7
**176** 21:3
**17th** 31:1
**18-23538** 1:3
**19** 47:1
**194.5** 22:12
**1989** 40:12
**1991** 39:5
**1993** 41:1

**2**

**2** 19:7
**2,520.24** 4:7
**2/29/2020** 2:18 3:5
3:12,17 4:7,14
**20** 24:25
**2001** 40:14 41:20
**2007** 40:18
**2014** 43:19
**2016** 44:9
**2018** 44:6,7
**2019** 2:12 24:25
**2020** 1:17 2:2,6,12
18:19 20:12 25:1
47:1
**206,901.80** 3:13

**207,704.60** 3:18
**21** 16:9
**21.3** 20:14
**210** 20:23
**221** 6:20
**223** 40:13
**23** 38:15
**244** 21:3
**245.3** 20:25 21:15
**245.5** 25:3
**248** 1:14
**24th** 15:5
**25** 21:13
**262** 40:13
**268** 23:12
**278** 20:24
**28.7** 17:9,13
**29** 2:12
**29.3** 19:9
**294** 17:4,7
**2d** 40:17 41:1
**2nd** 40:12

**3**

**3** 41:13 44:7
**3,000** 30:7
**3,942** 15:25
**3.9** 19:6
**30** 35:13 40:23
44:20
**300** 1:14 46:23
**304** 41:5
**318** 40:14
**32.7** 20:25 21:17
**330** 46:22
**337,852.50** 2:19
**343** 39:5
**35** 22:17
**362** 33:8
**37** 20:6
**37.5** 19:14
**3rd** 6:13 20:10
23:4

**4**

**4,217** 3:6
**4.9** 19:5
**415** 43:19
**421** 43:19
**432** 40:14
**45.4** 18:15
**49** 16:7
**49.5** 20:19
**493** 40:17

**5**

**5** 44:6
**5,051,526.75** 3:12
**50** 20:18
**503** 19:18,21
20:17 22:8,11,16
**51** 40:23
**561** 40:12
**562,951.00** 4:7
**571** 43:18
**59.7** 24:16

**6**

**6-9** 44:10
**60** 20:6 25:1
**605** 6:13

**7**

**7** 19:11 40:25
**7.5** 19:10
**70** 16:24
**7004** 35:23
**721** 44:6
**723** 40:17
**75,78l00** 3:18
**767** 6:5
**77.5** 24:19
**7814** 2:7,12
**7815** 2:7,19
**7816** 2:7 3:6
**7818** 2:7 3:13
**7820** 2:6 3:18
**7841** 2:7

| | | | |
|---|---|---|---|
| **7846** 2:7 | **additional** 12:20 | **agreement** 8:24 | **anticipated** 24:25 |
| **7847** 2:6 | 17:5 18:24 19:3 | 15:23 37:20 | 26:18 |
| **7862** 4:8 | 19:12 25:8,25 | **ahead** 15:19 31:19 | **anymore** 30:3 |
| **79.9** 18:19 | **address** 13:24 | 42:2 | **anyway** 43:21 |
| **7910** 4:21 5:3,8 | 29:20 35:25 38:23 | **akin** 3:1 8:13 13:2 | **aon** 35:9,9,11,12 |
| **7958** 4:15 | **addressed** 13:15 | **al** 2:16 8:3 | 41:24,25 |
| **8** | 26:5 | **alert** 28:5 | **apa** 20:8 |
| **80** 25:2 | **adjourned** 45:9 | **alexander** 7:13 | **app** 11:7 |
| **8021** 5:4 | **adjournments** | **alix** 7:16 | **appeal** 34:5,8,8,11 |
| **8026** 5:9 | 29:14 | **allotted** 15:17 | 34:13,14,16,22,23 |
| **8032** 15:8 | **adjustment** 16:16 | **allow** 4:19 43:16 | 43:22 |
| **83.5** 18:14 20:16 | **adjustments** 27:8 | **allowance** 2:5,17 | **appealed** 34:9 |
| **866** 40:12 | 27:16,16 | 3:3,9 4:4,12 14:7 | **appeals** 21:21 |
| **9** | **admin** 15:24 | 26:12 | **appear** 31:4 35:22 |
| **9** 19:4,18,21 20:17 | **administering** | **allowed** 15:24 | 39:2 40:5,8 |
| 22:8,11,16 31:21 | 15:4 | 16:14,24 17:2,5,9 | **appearance** 36:14 |
| **9.5** 19:1 | **administrative** | 17:14 18:3,5 | **appearing** 7:9 |
| **90** 19:18 22:17 | 2:10 15:11,15,19 | 27:22 | **appears** 13:1,6 |
| **955** 17:2,6 | 16:2,4,6,25 17:15 | **allows** 32:23 | 30:10,13 40:4 |
| **a** | 21:2,5,7 24:8,14 | **alter** 23:16 | **appellate** 29:22 |
| **a.m.** 2:2,6 | 25:8 26:6,13 30:8 | **alternative** 38:18 | **applicable** 32:5,7 |
| **ability** 9:6 | 30:23 36:19 | **alves** 7:14 | 32:15,22 39:14,22 |
| **able** 22:1 25:6 | **advance** 28:24 | **ambiguity** 27:6 | 42:14 |
| 39:8 40:2 43:14 | 30:2 | **ambiguous** 41:23 | **application** 2:9,14 |
| 43:23 | **advanced** 16:12 | **amount** 9:24 | 3:1,8,15 4:1,2,10 |
| **absence** 23:16 | **adversary** 21:22 | 10:13 11:7 13:4,5 | 8:19 10:8 11:6 |
| **accept** 15:16 | 23:24 | 15:17,20,21 16:5 | 12:11 14:11 |
| **accompanies** 26:2 | **adverse** 29:21 | 17:15 18:4,5 | **applications** 2:4 |
| **account** 16:22 | **advise** 25:12 | 21:10 27:12 28:18 | 8:11,12,18,22 9:3 |
| **accurate** 46:5 | **advisor** 2:15 | 32:10 | 9:5 10:23 11:1,20 |
| **acknowledged** | **affirmed** 40:14 | **amounts** 10:7 | 12:7,25 13:2 14:7 |
| 23:5,20 | **agenda** 2:1 8:3,6,7 | 16:15 17:11,17 | 14:8 |
| **action** 33:16 | 8:10,11 14:13,23 | 19:3,12 30:8 | **applied** 33:9 41:8 |
| **actions** 23:3,12 | 31:12,21,21 45:9 | **analysis** 40:7 | 42:23 |
| 24:11,19 32:25 | **agent** 2:10 35:24 | **ancillary** 41:5 | **applies** 33:15,18 |
| 33:13 | **aggregate** 16:23 | **andrew** 7:22 | 35:1,1 43:1,4,4,6 |
| **actively** 15:15,20 | 18:24 | **anniversary** 29:4 | **apply** 33:24 35:12 |
| **actual** 3:11 4:5 | **ago** 14:20 35:13 | **announce** 16:10 | 38:16 40:7,24 |
| 26:7 | 35:14 | 16:17 | 41:25 42:11 |
| **added** 25:25 | **agree** 26:21 28:6 | **answer** 33:1 | **appreciate** 28:7 |
| **addition** 17:5 | **agreed** 10:5 11:14 | **answered** 41:24 | 42:4 |
| 39:17 | 15:15 16:12 | **answering** 13:21 | **approach** 12:1,21 |

**appropriate** 10:24
**approval** 15:14
**approve** 12:20
**approved** 19:19
**approves** 12:7
**approximately** 16:7 17:4 20:18 22:21 24:13,16
**april** 38:15
**argument** 24:1 29:2,15
**arlene** 7:14
**article** 41:13
**article** 7:14
**asarco** 13:17
**asking** 14:4
**aslanidis** 40:25
**aspect** 36:5
**aspects** 13:13
**assert** 16:7 39:9 39:21 43:15
**asserted** 21:10 38:11 40:20 41:10
**asserting** 16:3 36:22
**assets** 18:16,21,23 20:14,15,20 23:8
**assisted** 24:2
**assumed** 20:8
**assuming** 43:21
**astutely** 44:23
**attachments** 35:10
**attention** 35:23
**attorney** 3:17 6:4 6:12,19
**attorneys** 3:9
**august** 24:1 29:18 29:18
**authorize** 11:7
**authorized** 15:10
**automatic** 21:22 33:9,15,18 34:25

38:16,18 42:7,16 42:17,18,22,23 43:1,4
**avenue** 6:5,13,20
**avoidable** 17:18
**avoidance** 23:12 24:11,19
**aware** 23:18,24

**b**

**b** 1:21 14:15 19:18,21 20:17 22:8,11,16
**b.r.** 39:5 40:13
**back** 10:9 18:6 20:20 38:14
**baker** 13:17
**ballard** 4:3 7:1
**ballots** 16:1
**bane** 7:12
**bankr** 39:5
**bankruptcy** 1:1 1:13,23 10:15 13:20 31:22 32:5 32:7,15 33:25 35:5 39:14,22 40:11 41:7 42:9 42:15 43:17,18
**bar** 26:20
**barred** 40:21
**barris** 5:9 6:23
**based** 30:6
**basically** 32:24
**basis** 8:16 12:3 18:12 30:4 33:5 38:5
**bearing** 40:6
**beaver** 39:4 44:8
**behalf** 4:21 5:4,9 32:17 37:9
**believe** 8:22 10:23 18:2 26:7 29:5 35:4,15 36:4 38:22 41:14

**bench** 38:20
**benefit** 18:3
**best** 44:22
**biggest** 9:20
**bill** 13:12,13,19 13:21
**billed** 13:5,6
**billing** 30:22
**billion** 16:3
**bit** 37:9
**blue** 19:6,6,12,12
**books** 16:1
**botts** 13:17
**brief** 28:11
**briefed** 38:19
**briefing** 14:4
**bring** 29:13 37:24 40:2
**bringing** 22:20
**brings** 19:13 45:8
**broadway** 7:3
**brought** 39:6
**brozman** 7:16
**bryan** 7:11,15
**building** 39:4
**busy** 39:4 44:7

**c**

**c** 4:20 5:2,7 6:1 8:1 32:6,14 33:23 39:16,21 40:10,22 40:24 42:24 46:2 46:2
**calculated** 22:16
**calder** 18:16,23
**calendar** 45:8
**call** 28:13 29:11
**care** 44:9
**carrillo** 7:22
**carveout** 11:11,18 19:5
**case** 1:3 8:2,3 11:11,16 13:18 16:25 22:5 24:3

32:7 36:3,14 40:9 40:12,13,15,25 41:19 42:10,20 43:1,24 44:7,8,17 44:18,23
**cases** 10:15 13:1 15:4,9 42:5,8,15
**cash** 9:10,13 11:4 11:8 18:14,20 19:3 30:8
**categories** 18:25
**cause** 33:16
**causes** 32:24 33:13
**cent** 30:24
**centers** 39:4
**certain** 18:17 20:14
**certainly** 14:3 31:16
**certificate** 35:10 36:6,18
**certified** 46:4
**cetera** 13:20
**challenged** 10:25
**chambers** 9:1 12:9 45:4
**chance** 44:13
**change** 22:6 27:10 27:12
**changed** 25:13
**changes** 12:14,16
**chapter** 15:9 36:14
**chart** 25:23,24 42:14
**chico** 5:9 6:23 32:17,18,21 33:3 33:6 34:1,9,14,23 35:4,15,18 36:1,4 36:7,12,15,17,24 41:15 42:4 43:9

chris 7:21
cimala 7:15
cir 40:12 41:1
circuit 40:5,14
  41:19 44:19
circumstances
  22:6 25:13
cite 44:8
cited 32:21 42:6
  42:13,15 44:23
citing 40:24
citron 6:11 28:10
claim 15:17 20:5
  21:11 26:13 27:7
  27:22 35:12
claimants 16:25
  17:17
claims 15:11,18
  15:21,24,25,25
  16:2,3,6,15,20,23
  17:2,5,7,10,12,15
  18:3,6 19:18 20:3
  20:17 21:2,5,6,7
  21:19,23 22:7,10
  23:23 24:14 25:15
  29:9,23 30:6,16
  30:23,23 31:6
clarification
  33:14 43:2
clarify 33:18 42:5
  42:10
clarity 27:4
clear 9:10 17:12
  29:20 43:16
clearly 40:23
clerk 2:9 8:12
client 13:19,21
clients 29:8
closely 15:23
closing 21:22
closure 29:14
code 31:22 32:7
  32:15 43:18

colleague 31:24
colleagues 29:5
collected 18:19
  20:12
collections 18:22
colon 4:21
color 25:25
combine 44:16
combined 20:15
  23:11
come 9:23 20:8,20
  30:9 39:7
comes 12:25
coming 12:21
commenced 38:4
  38:4
commencement
  24:4
comment 11:20
comments 12:24
committee 2:15
  3:3 4:12 14:16
  23:19 24:5,6,6
committees 11:14
communicate
  12:10
compared 20:16
comparisons 26:2
compensable
  13:18
compensation 2:5
  2:17 3:4,10,16 4:2
  4:4,13
complaint 33:11
  33:20 34:17 37:1
complete 21:12
  22:15
completion 17:23
compliance 17:1
compromise
  15:20
concerned 37:6
  41:24

concluded 45:13
concludes 25:17
conclusion 18:10
  45:8
conditionally
  12:19
conference 14:12
confirmation 15:2
  15:10,12 16:8,10
  16:12 17:1,7
  18:12,13 19:2,4,5
  19:8,14,15,24
  20:2,17,21 21:8
  21:13,16,18,20,21
  22:2,5,13,20,23
  23:9,10,19 24:12
  24:21 25:8,12,14
  27:20 28:21 29:5
confirmed 23:14
confirming 15:9
conflicts 4:11
consensual 12:20
  30:4
consensually
  12:14 35:13
consent 23:7
consenting 15:17
conservative 21:9
consider 12:17
  26:14
consideration
  14:9
considered 16:23
  22:14,18 23:9
  40:19 41:2
consistent 18:11
consulting 2:14
containing 25:24
context 13:21
  40:11 44:1
contexts 44:5
continuation
  15:10

continue 9:5
  30:18
contribution 22:8
  22:11
controversy 42:6
  43:8
convinces 11:22
corp 8:3 44:6
corporation 1:7
  2:16 5:4
corporations
  35:22
correct 9:1,8
  26:10 38:12
cost 21:6 30:19,22
costs 21:19
counsel 3:2 4:3,11
  23:19 24:5 32:12
  35:24 36:2,3
  37:14
country 46:22
course 22:3 23:21
  30:20 35:7 38:8
  43:24
court 1:1,13 8:2,6
  8:18 9:9,15,19
  10:6,11,21 11:2
  11:12,17,18 12:9
  12:12,16,19,23
  14:14,19 15:1,8
  15:14 16:21 18:8
  18:17 19:15,18,23
  20:1 22:14,16,18
  23:5,18,22 24:2
  25:19 26:4,11
  27:1,18 28:2,7,12
  29:1,25 31:16,19
  31:25 32:2,20
  33:1,4,7,8,15,17
  33:22 34:2,10,12
  34:20,25 35:2,7
  35:17,20 36:3,5
  36:11,13,16,20

37:6,11,23 38:8
38:13 40:7 41:16
42:9,21,25 43:7
43:10,17 44:13
45:5,10
**court's** 10:4 33:19
42:4,20
**courtney** 36:8,9
36:11,13
**courts** 41:6
**covered** 14:17
30:17
**craft** 6:12 28:14
**creditor** 27:7
**creditors** 2:16 3:3
4:12 15:15,18,18
15:19 17:22 18:5
18:9 23:19 24:5,8
25:15 28:14 29:8
**cross** 19:6,12
**crosstalk** 10:21
**current** 26:24
**currently** 16:6
23:25

**d**

**d** 1:22 8:1
**d&o** 23:6
**date** 4:17,20 5:3,8
15:23 16:17 19:8
19:14 23:15 24:6
24:13,22 26:19,20
28:2,4,20 29:2
30:6 31:2,8 32:6
32:14 34:21 35:1
47:1
**david** 6:16 28:9
**davidoff** 6:11
28:10
**davis** 44:9
**day** 9:21 27:2
45:4
**days** 12:21 16:16
35:14 40:23 44:20

**de** 6:20 16:23 17:6
18:16,21,23
**deal** 30:18 41:14
**dealing** 11:24
13:7,11 30:5,16
**dealt** 11:6 44:4
**debtor** 1:9 26:12
33:12 36:23 37:5
42:24,25 44:21
**debtor's** 3:17
**debtors** 2:10 3:9
5:1,6 6:4 8:9 9:10
9:13 11:4,13 12:8
12:10 14:25,25
15:3,6,19,22,23
16:2,8,10 17:13
17:16,19,21,24
18:2,8,10,14,19
18:22 19:2,4,10
19:16,17,20,20
20:2,7,13,22,24
21:4 22:1,15,19
22:23,24 23:3,9
23:10,15,20 24:9
24:12,15,18,21
25:2,6,11,12,14
25:17 27:21 29:22
30:5,10,15 31:23
31:23 32:8 36:25
37:9,16,17,19,21
44:8 45:1
**december** 15:4
17:10
**decision** 29:9 30:1
**declaration** 23:1
**declared** 42:18
**declaring** 42:22
**decrease** 19:22
**decreased** 24:19
25:3
**defendant** 39:19
**defendants** 39:19
40:20

**defense** 36:23
39:9,20,21,23
40:19,22 41:10
43:15 44:15
**delay** 9:6
**demonstrate** 16:5
**dense** 34:7
**deny** 44:25
**denying** 34:4,9,24
38:20 45:5
**depends** 30:1
**deposits** 18:18,22
**described** 23:10
**describes** 26:18
**designated** 24:6
**detail** 13:14
**determination**
33:8 38:16
**determine** 19:23
40:3
**determined** 33:15
**determines** 9:21
34:25
**different** 28:21
40:25
**differently** 10:13
11:16
**digest** 28:23
**diligent** 41:21
**diligently** 30:10
**directing** 12:1
**discretion** 44:2
**discuss** 20:21
**discussing** 13:12
30:3
**discussions** 24:7
26:14
**disgorge** 9:25
**disgorgement**
10:9,16,22 12:1
14:22
**dispute** 20:4
21:11 22:16 37:15

**defense** 37:22 41:14
**disputed** 16:7
17:12 18:3,6
20:17 25:15 27:22
**disputes** 21:24
22:9,11 26:12
27:17
**disputing** 19:16
**dist** 44:6,9
**distances** 38:10
**distinction** 42:21
**distributed** 17:9
29:10
**distributing** 17:14
**distribution** 16:9
16:11,17 17:7,8
17:20,23 18:4
23:7 24:8,10 25:7
25:16 26:6,8,15
26:18,23 27:23,24
29:24
**distributions**
16:15 17:25 27:10
27:12 31:3
**district** 1:2 40:17
40:18,19
**docket** 15:6 25:22
**doctrine** 32:10,16
33:24 41:3,8
43:13
**document** 2:6 5:3
5:8 24:3 28:15
**dollars** 20:8 30:25
**downside** 9:20
**draft** 45:3
**drain** 1:22
**dramatic** 13:3

**e**

**e** 1:21,21 4:2,21
6:1,1 7:6 8:1,1
46:2
**ecf** 2:12,19 3:6,13
3:18 4:7,15,21 5:4

5:9 15:8 25:21,22
ecro  1:25
eda  18:17,21
effective  4:17 9:12
  24:6,22
efficiently  30:25
either  9:23 10:5,7
  11:21 27:23
eliminated  16:3
email  14:14 36:1,5
  45:4
emily  7:19
employment  13:6
enabling  31:3
encourage  17:21
engagement  12:13
engaging  26:14
ensure  12:11
enters  12:9
entities  35:9
entitlement  16:4
entries  13:8,9
entry  45:5
equally  37:2 43:4
equitable  32:10
  32:16,21 33:19,24
  39:23 40:3,10
  41:4,8 43:13
  44:17,24
equities  39:24
  40:6 43:20
error  27:9
escrow  19:7,13
esl  22:25 23:2,6
  23:11,16,22
estate  18:16,20,23
  21:23
estimate  18:22,25
  19:10 20:13,23,23
  20:24 21:4,9 22:8
  22:10,10 24:15,18
  24:20,20 25:2

estimated  18:4,5
  18:14 19:25 21:1
  21:15 22:19,20
  23:11 24:12,23
estimates  18:11
  19:4,8,14,23
  20:22 21:3,9,17
  21:18 22:2,7
et  2:16 8:3 13:20
event  43:11
exactly  22:21
examiner  4:3,4
  7:2 8:14,20 9:21
  11:22 12:2 13:7,7
examiner's  13:11
example  20:1
  40:16 44:5
excess  18:2 27:11
excluding  20:14
  20:15,17
excused  31:15
exercise  27:15
exhibit  15:6
expense  25:9
  30:23
expenses  2:5,11
  2:18,19 3:5,6,11
  3:12,18 4:6,7,14
  4:15 10:24 21:20
  26:7 30:8
expires  40:1,23
explain  18:13
explicit  43:17
expressly  33:12
extend  42:18
extended  42:17
  43:5
extending  33:8
  42:22 43:1
extension  42:7,16
extensively  38:19
extent  8:23 10:5
  14:1 27:4,9,10,15

29:21

f

f  1:21 46:2
f.2d  40:12
f.3d  40:14 41:1
f.supp.  40:17
faced  11:15
fact  11:3 23:18
  26:5 30:7 39:2
  43:11
factors  30:2 39:15
facts  41:10
fail  6:8 8:5,8,9,21
  11:10,13 12:5
  14:10,18,24,25
  25:19,23 26:10,24
  27:3,25 28:6,15
  28:17,21,24 29:16
  29:16 30:19 31:11
  31:14,19,20 32:1
fair  10:13
familiar  18:17
far  41:24
favorable  29:9
feasibility  19:23
february  2:12
  15:5
fee  2:9,19 3:1,6,12
  3:17 4:3,3,7,10,15
  7:2 8:11,14,19 9:5
  9:21 10:8 11:6,7
  11:20,22 13:5,7,7
  13:11 19:5
fees  9:22 10:24
feinstein  4:11
  8:14
feld  3:2
ferraiuoli  6:18
fifth  6:5
file  8:9 33:20
  34:17
filed  4:20 5:3,8
  15:6 28:16 31:23

filing  33:10,16
  37:1
final  9:5 10:8 11:6
  11:7 12:8 17:3
  29:2
finality  29:7
financial  2:15
find  22:21
finds  11:22
fine  12:23,23
  14:14 32:20
firm  13:21 28:4
firms  9:25
first  4:10 8:10
  17:3,6 20:21
  28:14 32:12 34:8
  40:22
fitzgerald's  39:4
  44:3
fixed  14:4
focus  14:2,3 31:3
focused  14:1
focusing  13:10
follow  9:12 28:23
following  16:16
  19:2,3
footnote  40:23
force  12:2
forefront  10:3
foregoing  46:4
format  25:23
forth  32:3
forward  8:16
  18:11 24:9
found  42:6
fourth  2:9,14 3:1
  3:8,15
frankly  14:5
free  18:1
freed  27:11,11
fti  2:14 8:13
full  16:21 17:1,8
  21:10

**[fully - intact]**                                                                 Page 7

fully  33:21
fund  22:25
funding  21:13
funds  18:17,21
  23:21 29:8,10,11
further  18:13
  19:10 20:8 27:4
  28:8,23,23 40:4
future  14:9 18:22
  29:15

**g**

g  8:1
gap  22:12
garrett  6:8 8:8
  14:25 29:16
garrison  3:16
geared  36:25
general  9:4 17:25
  35:23
generally  30:6
getting  31:4
given  10:17 11:3,3
  11:23,24 15:3
  23:9 29:21,22
  44:17
giving  12:12
  16:12 26:17
glitch  11:11 17:8
  17:20 23:25 24:4
  29:17,23,24 36:10
go  18:10 28:22
  31:19 34:16 38:14
  42:2
going  8:16 9:11
  9:22 11:7,25 26:5
  26:17 34:11 37:18
  38:23 39:25 43:20
  43:22 44:16,25,25
  45:10
good  8:8 9:25
  19:25 28:9 32:17
gotshal  3:8 6:3
  8:9,13 12:10 13:2

14:25 28:15 29:16
govern  39:14,15
  39:22
governed  41:3
governing  24:3
grant  11:23 14:8
granting  8:22
  14:11
great  30:16
greater  22:19,20
  23:13
griffith  20:7 23:2
  24:23
griffith's  23:1
gross  24:12 25:2
guess  9:9 10:17
  11:2,19 24:23
  32:11 34:2 35:20
gump  3:1 8:13
  13:2
gustavo  5:8 6:23
  32:18

**h**

hamer  4:2
hand  18:15,20
handled  31:23
happen  11:9
happened  41:22
  42:16
harner  7:6 8:13
  9:2,6,7,7,13,16,23
  10:1,20,22 12:15
  14:1 31:13,14,17
hauer  3:2
hear  14:5 30:1,14
  32:18,20 44:3,12
heard  12:12 14:6
  21:11 28:10 29:6
  42:13 44:12
hearing  2:1,2,4,4
  2:9,14 3:1,8,15
  4:1,10,17,19 5:1,6
  8:10 15:7 16:17

16:18 17:21 19:15
  20:10 26:9,25
  28:3,25 29:5,6,18
  31:1 33:7 38:15
  38:19,21 44:14
  45:6
hearing's  29:18
hearings  8:7
  45:11
held  10:9 18:6
  29:10
help  37:9
helpful  15:7
herrick  4:10 8:14
high  20:23 21:1,4
  21:17 22:9
highlighting
  13:23
highly  39:17
hk  28:14
hold  12:6
holders  17:9
holdings  1:7 2:16
  5:4 8:3
home  44:9
hon  1:22
honor  8:5,8,21 9:7
  9:14 10:1 11:10
  12:5,7 14:10,24
  23:24 25:18 26:3
  26:10,25 27:3,25
  28:6,16,22 29:1,7
  29:13,16 31:11,13
  31:18,20 32:1,17
  32:21 33:6 34:14
  35:19 36:7 37:8
  42:6,20 43:9 45:7
  45:12
honor's  12:17
honored  15:22
hopefully  14:20
hostage  29:11

hundred  9:22
  30:24 36:17
hutcher  6:11
  28:10
hyde  5:25 46:4,9

**i**

i.e.  30:14
identification
  13:4
illustrate  32:22
impact  22:15
important  28:3
  30:24
imports  29:2,14
incentive  18:1
inclination  14:5,7
include  8:12
  27:21 32:15
included  13:14
  19:3 20:4 23:1
includes  21:9
including  14:16
  15:4 24:14 29:8
  30:3 44:19
increase  19:8,13
  20:18 21:20
increased  19:1
incurred  3:11 4:6
indefinitely  29:12
indemnification
  37:20
indiscernible  44:5
information  25:10
  28:18 39:25
initial  16:8
inject  43:15
injunction  41:5
injunctive  41:7
inquiries  13:11,20
insurance  42:12
  42:12
intact  21:14

**intend**  16:14 17:16,25
**intent**  27:6,25
**interest**  15:1 37:22
**interim**  2:4,9,14 2:17 3:1,9,15 4:1 4:4,10 12:3 14:7 17:25
**interrupt**  31:13
**inventory**  20:4
**invitation**  38:24
**involved**  9:17 10:10 37:15
**involving**  31:6
**issue**  10:2 13:5,23 13:25 14:8 29:14 30:17 31:2,3 37:17 38:13,21 39:2 40:10,10 42:2,12 43:13,14 44:3,4
**issued**  38:19 41:4 41:7
**issues**  21:23 30:1 30:20 39:2 42:12 45:2
**it'd**  39:12
**italian**  41:6,7
**item**  8:10 14:13 14:23 31:11,20,21

**j**
**j**  7:20
**jacqueline**  5:3 6:9 37:8
**january**  44:7
**jeremy**  7:23
**joint**  4:2
**juan**  6:21
**judge**  1:23 28:9 39:3 40:17,19,22 41:9,19 44:3,22

**judges**  10:15
**judicial**  42:2
**july**  16:19 17:21 26:8,24 28:3,25 29:6
**june**  1:17 2:2,6 31:1 47:1
**jurisdictional**  38:9 39:6
**justiciability**  41:13 44:2
**justified**  10:25

**k**
**kaplan**  40:17,19 40:22 44:22
**keeping**  19:9
**key**  15:14
**kim**  7:21
**kind**  29:7
**know**  9:2,13,16,20 10:16,21,23 11:14 13:13 23:22 27:3 27:12 34:10 38:3 38:4,5,6 39:11,13 39:23 41:13,22,23 44:3,11

**l**
**l**  3:6 4:15
**laid**  39:15
**larger**  30:18
**latest**  29:3
**law**  13:21 32:7,11 32:15,23,23,24 33:25 39:14,14,22 40:5,9 41:3,3 42:11 43:16,18 44:17,18
**lawsuit**  37:18 38:3 38:5 39:23 40:2 40:21 41:6 44:14
**lawsuits**  40:2
**lawyers**  14:3 30:21

**ledanski**  5:25 46:4 46:9
**lee**  7:20
**left**  29:20
**legal**  30:17,20 46:21
**lengthy**  38:14,20
**leon**  6:20
**letters**  35:5
**level**  10:14
**lexis**  44:6,10
**lifted**  35:13 40:24 44:20
**light**  34:4
**limit**  39:20
**limitation**  34:15 37:3
**limitations**  32:5 36:23 38:6,9 39:10,19 40:21 44:15
**limited**  5:1,6
**lines**  40:13,25,25 41:19
**liquidating**  21:14 23:18 30:22
**list**  16:20
**listening**  25:20
**lists**  35:25
**literally**  13:11
**litigate**  43:14
**litigating**  25:9
**litigation**  17:24 20:9,14,15,20 21:21 22:2,25 23:2,7,8,12,17,17 23:22 25:2 39:7 39:18 40:11,17 42:15
**litigations**  39:18
**little**  23:3 37:9
**llc**  2:10 4:21 5:9 6:18 32:3 44:9

**llp**  3:2,8,17 4:3,11
**located**  39:13
**long**  30:14 34:10
**look**  42:23
**looking**  34:20 35:11
**lost**  41:19
**lot**  40:1 44:4
**low**  20:23 21:3,8 22:7
**lower**  21:17 22:4 22:5

**m**
**mahkamova**  7:10
**main**  31:2
**making**  14:22 41:20
**mall**  4:21 5:9 6:19 32:3,18 37:13 39:8,20 40:2 45:2
**mall's**  32:9 38:15
**mandate**  43:17
**manges**  3:8 6:3 8:9
**manufacturing**  44:6
**marcus**  5:3 6:9 31:24 37:8,8,12 38:1,12 45:3,7,12
**marriott**  7:7 31:14,18
**materially**  25:13
**matter**  1:5 26:21 28:4 29:15 30:14 44:2,2
**matters**  2:1 13:6 21:22 31:6 45:9
**mean**  9:19 10:12 27:1 36:18 43:10
**mechanically**  27:5
**mercy**  36:11

merely 42:22 43:5
message 12:12
met 18:10
million 16:7,9
 18:5,7,14,15,20
 18:24 19:1,4,5,6,7
 19:9,11,11,14,18
 19:21,25 20:6,12
 20:14,16,16,19,19
 20:23,24,25,25
 21:3,3,8,13,16,17
 22:4,9,12,17,17
 22:18,19,21 23:4
 23:12 24:13,15,16
 24:19,24,25 25:1
 25:2,3
mind 10:3,4
mineola 46:24
minimis 16:23
 17:6 18:16,21,23
minutes 14:20
moment 28:11
money 19:25 45:2
morning 8:8,17
 25:17 28:9 32:17
morning's 8:10
morton 40:12
motion 4:19 5:1,6
 23:25 31:12,21,22
 32:2,4,8 33:7 34:4
 34:4 35:9,21 37:7
 37:14 38:2,15,20
 39:1 41:21 44:25
 45:5
motions 16:1
movant's 32:12
move 14:12,22
 33:14,17
moved 29:19
moving 23:25
 24:9 30:10
murphy 20:2 36:8
 36:9,12,12,13,13

## n

n 6:1 8:1 46:2
name 36:8
narrowed 22:12
natan 7:12
nature 40:6
near 29:15
nearest 24:24
necessarily 15:12
 38:24 40:5,15
necessary 3:11
 4:6 17:23 34:7
need 12:14 13:24
 23:3 27:4 28:22
 30:9 36:15
negotiate 31:5
net 18:15 22:1
 25:2,12
new 1:2 6:6,14 7:4
 40:18 41:2,3
newly 17:2,5,14
nikitine 7:18
non 13:20 22:2
 32:5 33:25 39:14
 39:22 42:8,15
normally 13:19
note 40:9
noted 20:2 25:25
 41:4 44:8,23
notice 2:1,4 10:18
 16:13,14,17,20
 17:4,11 26:5,17
 27:5,6,8,21 36:14
 37:7
noticed 8:15
november 2:12
number 14:13
 16:23 20:16 23:13
 30:2,18 31:21
numbers 8:25
 16:5 25:24 26:2
 27:10

nunc 4:20 5:2,7
 32:5,13 34:21,24
 43:25
ny 1:15 6:6,14 7:4
 46:24

## o

o 1:21 8:1 46:2
object 9:22
objection 5:1,6
 8:15 11:23 12:7
 19:19 44:9
objections 10:6
 12:3 14:6
obligated 19:17
obligation 20:7
 37:20
obligations 19:21
observed 23:22
obviously 10:2
 11:1
occur 12:14
october 15:10
 20:10 23:4 29:4
 30:14 31:7
officer 35:24
official 2:15 3:2
 4:11
offset 21:19
offsets 20:3
okay 8:18 10:11
 25:19 26:11 28:2
 28:7 31:10,19,25
 32:2,19 33:1 34:2
 34:20 36:20 37:6
 37:11 42:4 43:9
old 46:22
omnibus 8:7
 16:18 26:8,25
 29:19
once 40:23
ones 11:21 17:6
opinion 39:4

opportunity
 12:17
opposite 19:24
optimistic 25:6
oral 29:15
orally 25:21
order 4:19 5:1,7
 8:21,25 10:16,19
 12:8,9,15 14:15
 14:17 15:2,10
 16:12 17:1 18:12
 21:13 25:8,12
 26:22 27:20 32:4
 34:4,9,24 35:18
 36:24 37:24 41:21
 45:1,3,4
ordered 10:6
 16:21
orient 6:12 28:14
outlined 14:20
outperforming
 22:1
outstanding 19:11
overall 28:19
override 43:17

## p

p 6:1,1 8:1
pa 39:5
page 44:6
pages 44:10
pagorski 7:19
paid 9:18,24 11:8
paragraph 15:2
 32:3 34:3,3
parmalat 40:16
 41:7 44:23
part 11:11 15:14
 17:16,19 35:7
participants 15:8
participate 26:15
 26:22
participated 24:7

particular 11:21
30:17 42:20
particularly
35:16 41:23
parties 11:15 15:1
17:21 18:1 23:5
24:3 26:11 33:17
37:4 42:19 43:2,5
party 19:19 36:22
37:21
passing 38:22
passively 15:16
patricia 7:17
paul 3:16 4:2 7:6
8:13,13 9:7 13:2,3
31:14
paused 33:20
payable 10:8
payment 15:17,19
16:2 17:3 30:7,24
payments 15:11
17:24 22:25
pdf 25:23,24
pending 38:3
people 10:18
11:24 28:5 31:5
percent 15:16
16:24 17:9,13
36:17
performance
18:10
period 2:11,18 3:5
3:17 4:6,14 10:4
11:8 33:21
person 36:9
perspective 9:1
petition 4:20 5:2,8
24:1 32:6,14
34:21 35:1
phase 23:25
phone 9:2
plains 1:15

plaintiff 21:10
41:18
plan 15:9,12
19:24 22:25 23:5
23:14 31:4
playing 29:22
podzius 7:11
point 9:9 11:19,19
13:25 14:22 26:14
30:7,12 31:2,5
37:10,23 39:3,9
39:25 42:2 44:12
44:25
pointed 30:19
ponce 6:20
position 9:14 11:4
37:19 38:1
possible 23:21
possibly 11:9 40:3
post 16:8,10 17:6
21:20,22
potential 22:14
23:11 38:17
potentially 13:12
17:17 30:4 36:22
power 33:19
pr 6:21
practical 26:21
28:4
practically 26:16
pre 8:19 24:6
precedent 10:14
precluded 41:6
predicted 30:2
preference 23:3,6
24:24
preliminary 42:3
premature 38:2
prepare 45:1,3
presentation 26:1
26:1 28:17
presented 18:12
20:16 23:15 28:21

preserve 9:5 34:5
34:7 37:3
presiding 41:9
pretty 38:20
prevail 34:16
prevent 33:16
prevented 33:10
37:1
prime 2:9 8:12
prior 11:21 15:6
15:11 24:22 26:24
27:1,2 35:5
prioritizing 15:17
30:11
priority 16:4 21:2
21:7 26:13 30:8
30:23
privilege 13:10
pro 4:20 5:2,7
32:5,13 34:21,24
43:25
probably 14:5
22:19 23:3
problematic
13:12
procedure 14:19
procedures 27:19
proceeding 23:24
41:5 43:12
proceedings
21:22 45:13 46:5
proceeds 18:15,16
18:21,23 22:24
process 9:6 10:8
29:22 31:6
produced 20:22
production 24:4
productive 12:13
professional 3:10
3:15 4:1,5 9:19,20
19:5
professionals 8:24
8:25 9:17 10:3,10

10:12 11:13,14
12:11,16 14:16,17
program 23:7
progress 15:3
21:25
projected 23:13
25:4
proper 12:1 37:7
properly 30:11
35:23 37:13 39:2
39:6
propose 8:22
proposed 12:8,9
12:14,15 16:15
proposing 17:19
prosecuted 23:17
provide 16:14
25:11 27:3,5,7
37:13
provided 24:20
25:10,25 26:3
provides 28:17
43:3 44:19
providing 15:1
18:8
provisions 32:24
public 25:11
puerto 32:22,23
42:10,11,12,13,14
purpose 33:7
36:25
purposes 39:6
41:13,13
pursuant 4:19 5:2
5:7 15:2 25:7
31:12,21 32:6,14
put 10:12,18

q

quarropas 1:14
question 32:12
33:1,22 35:8,20
questions 13:19
13:22 28:24

qui  21:10
quite  9:11 39:3
   40:22
quote  32:4
quoted  34:3

**r**

r  1:21 6:1 8:1 46:2
raise  44:15
raised  14:8 38:22
   39:19 40:11
raising  27:19
range  20:22,25
   21:1,16,17 24:20
rdd  1:3
reached  8:24
   12:21
read  33:11
reading  28:16
ready  16:10 25:14
real  18:16,20,23
   21:23 23:23
realized  20:13
really  13:10 34:21
   37:7,17,21 40:8
   43:12
reason  23:16
reasonable  10:24
reasons  45:5
recall  15:9 19:15
   20:1
receivables  20:4
receive  17:6,8,24
received  19:2,21
   23:21 24:22
receiving  16:15
   17:2
recipients  17:17
recognizing  26:17
recommend  27:21
reconcile  21:6
reconciled  15:18
reconciliation
   21:24

reconciliations
   27:9
reconciling  15:25
record  10:15
   19:24 28:19 35:8
   36:3 41:17 45:6
   46:5
records  13:20
   16:1
recover  24:17
recovered  24:22
recoveries  23:6
   24:12,13,16,18,25
   25:3
recovery  15:21
   23:11 24:24
redacting  13:9
reduction  20:5
   21:19
reductions  8:19
   10:6,7
referring  32:10
refers  42:24
reflect  8:18
reflects  19:24
refunds  19:6,11
refused  15:20
regard  29:24
regarding  4:17
   24:7
regimes  32:11
reimburse  19:17
reimbursement
   2:5,11,17 3:4,11
   4:5,13
related  2:6 5:3,8
   12:24 18:15 23:12
   23:16 34:12
relevant  11:4
relief  32:13 33:4
   33:23 34:5,6,7,10
   34:12,13,20,24
   35:12 36:20 38:18

41:8,17,25 43:25
reluctant  10:16
   10:22 11:25 31:1
rely  44:24
relying  23:6 43:20
remain  18:11 30:9
remained  26:12
remaining  17:12
   18:3 20:13 24:16
   25:15 29:11
remains  20:24
   21:14
remarks  10:14
remedy  35:16
remind  11:16
reminder  11:10
rendered  2:11 3:4
   3:10 4:5,13
reply  5:6 32:9,9
report  25:11,21
   31:10
represent  28:13
representative
   9:3 15:24
represents  16:24
request  12:19
   35:18 38:2
requested  29:1
   35:16
requesting  34:13
   42:1
requests  16:1 30:7
   30:24
require  22:24
required  15:14
   16:8,11 21:12,24
   25:7 27:19
reservation  8:23
   9:4,11 10:17 11:3
   11:5,23 13:15,24
   21:12
reserve  17:11,15
   17:16 29:9,11

30:15
reserves  18:2,6
   27:11
reserving  17:13
reset  4:8
resolutions  12:21
resolve  25:15
resolved  27:24
resources  21:24
respect  13:1 22:2
   26:6 37:22 41:20
respective  16:22
respond  28:24
responding  13:6
   21:21
response  32:8
   37:16 39:20 40:19
   40:21 41:21
result  10:6 21:4
   21:25 23:21
results  28:20
reviewed  11:21
   32:8 35:10 39:1
revising  13:7
rico  32:22,23
   42:11,11,12,13,14
rifkind  3:16
right  8:2,6 9:15
   10:11,20 11:2,12
   14:18 26:4 27:1
   29:25 30:13 31:8
   33:4 34:2,5,8,12
   35:7 36:21,24
   38:8 44:1,11
   45:10
rights  8:23 9:4
   10:17 11:3,5,23
   13:15,24 21:12
ring  45:10
ripe  40:8 43:7,10
   44:12
ripeness  39:5

rises 10:14
risks 11:15
road 46:22
robert 1:22
rohn 7:20
room 1:14
rooted 42:7,16
rosa 4:21 5:9 6:19
  32:3,9,18 33:10
  34:6 37:13 38:15
  39:8,20 40:2 45:2
rosa's 34:8
rule 35:23 38:25
ruled 33:9 42:25
ruling 29:21
  33:10 34:11 38:20
  42:3,5,21
run 35:3
running 19:7,13
  34:16,19
ryan 7:23

**s**

s 2:6 5:3,8 6:1 8:1
s.d.n.y. 40:14
san 6:21
santa 4:21 5:9
  6:19 32:2,9,18
  33:10 34:6,8
  37:13 38:15 39:8
  39:20 40:2 45:2
satisfied 9:23 10:5
  10:7 16:21 17:1
satisfy 19:17,21
saying 10:16,18
  11:6
says 34:4
schedule 24:3
  27:14 29:2,15
scheduled 2:1
  14:13
schedules 14:15
schemes 23:23

sears 1:7 2:16 5:4
  8:3
second 24:8 40:5
  40:14 41:19 44:19
section 31:12,22
  33:11,12,23 39:16
  39:21 41:5 42:23
  43:18
sections 32:6,14
secured 21:2,7
  26:13
securities 40:16
see 12:13 35:11
  36:5 44:5
seek 27:23 42:25
seeking 32:12
  33:4,23 34:6
  36:21 41:17
seeks 32:4
seen 39:1
send 45:3
sense 30:17 34:25
  43:25
sensitive 10:2
sent 35:5
separate 42:8
separately 38:24
september 16:9
  29:19 30:13
serve 35:21
served 35:9,22
  36:1 37:13
service 35:10,24
  36:6,18
services 2:10 3:4
  3:10 4:5,13
servicing 36:18
set 8:7 11:21
  12:24 24:1 29:7
  29:17 31:1 32:3
setoff 24:14
setting 26:19,19

settle 17:20 18:1
  27:23
settlement 15:15
  16:9,11,22 17:7
  17:14 19:19 21:5
  24:8,14 26:14,22
  27:19 37:20
seven 8:11
shield 19:6,13
shirin 7:10
shortfall 22:9,12
  22:17,18,20 23:10
  23:13 25:4
shortly 26:5
shot 44:22
show 17:4,11
shown 41:18
siegel 43:18
significant 16:5
  17:16 21:24 32:9
similar 41:7
similarly 39:3
simply 29:6 30:3
  33:9
simultaneously
  18:9
sino 28:14
sir 32:20
situated 11:16
slated 26:8
smart 44:16
solutions 46:21
solvency 9:17
somewhat 37:16
  41:23
sonia 4:21
sonya 5:25 46:4,9
sooner 29:6
sorry 31:13 36:11
  39:8 40:18
sort 26:18
sound 11:11 17:8
  17:19 23:25 24:4

29:17,23,24 36:10
source 20:1
sources 18:14,25
  19:8,13 20:11,11
  20:13 22:3,3 25:5
southern 1:2
  40:18
spahr 4:3 7:1
speak 9:3
special 4:11
specific 9:3
speculation 25:10
spending 30:5,15
  30:21
spends 32:9
spent 13:16 45:1
staff 36:19
stand 11:1 25:14
start 15:7
state 32:11,15,24
  35:2 41:2,3
stated 35:17 43:5
  45:5
statements 12:17
states 1:1,13
  39:13
statue 18:16,23
status 4:17 14:12
  16:4 27:7
statute 35:2 36:23
  38:6,8 39:10,19
  40:20 42:24 43:3
  44:15
statutes 32:5
  34:15 35:2 37:3
  42:14
stay 21:23 33:9,15
  33:18 34:5,10,24
  35:1,13 38:16,18
  40:24 42:7,17,17
  42:18,22,23 43:1
  43:4 44:20

[stayed - unsecured]                                                          Page 13

**stayed**  43:11
**strapped**  9:10
**strauss**  3:2
**street**  1:14
**stuck**  43:22
**subject**  12:20
  14:19 16:16 20:3
  21:11 27:8,22
**submission**  29:3
**submit**  8:22 12:8
  12:15
**submitted**  9:1
**subsequent**  16:18
**substance**  34:23
**substantial**  13:5
  16:24 20:5
**sue**  39:8 43:23
  44:13
**suggest**  12:6
  19:22
**suggested**  29:3
  37:14
**suit**  37:24 38:17
  39:11,12
**suite**  46:23
**suits**  39:12
**summarize**  20:11
**summarized**  22:4
**summary**  18:9
  25:23
**supplement**  36:8
  36:9
**support**  23:5
**supportive**  24:9
**suppose**  41:25
**sure**  9:11 10:13
  13:17 25:20 28:12
  36:16,17 44:16
**sustain**  42:11
**sweet**  41:20

**t**

**t**  14:10 46:2,2
**take**  11:15 14:10
  24:17 31:7 34:11
  34:15,18 37:19
**talking**  13:9 38:7
**tam**  21:10
**tax**  19:6,11
**team**  12:15
**telephonic**  2:2
**telephonically**  7:9
**terms**  13:3,4 31:3
**testified**  20:7 23:2
  24:23
**testimony**  18:11
  20:1,9,22 22:23
  23:1,4,20 24:21
**thai**  28:14
**thank**  8:5 12:5
  14:10,24 25:19
  27:25 28:15,18
  31:11,17,18,20
  32:1 43:9 45:7,11
  45:12
**thing**  41:17 44:17
**things**  13:10
  21:21 22:24
**think**  8:21 11:4,24
  12:1,4 13:18,24
  13:25 14:1,15
  26:16,21 27:20
  28:3 31:2 35:8,15
  39:3 45:7
**thinking**  26:24
**third**  4:1,2 33:17
  37:4 42:18 43:2,4
**thought**  38:23,25
**thousand**  9:22
**three**  12:25
**tied**  28:3
**tiktin**  7:13
**time**  10:4 13:5,7,9
  13:16,18,18,20

  22:13 24:17 25:15
  26:19,21 30:5,13
  30:16,21,22 32:10
  34:15,18,18,18
  35:13 40:1
**times**  25:4 40:9
**tinkering**  14:21
**today**  12:7,11,12
  12:18 18:8 20:24
  22:1,22 25:10
  40:3
**today's**  45:8,11
**tolled**  32:25 33:3
  33:21
**tolling**  32:4,11,13
  32:16,22,23 33:21
  33:24 37:4 39:23
  40:3,10 41:4,8
  42:8 43:3 44:17
  44:19,24
**tolls**  33:12
**total**  15:25 16:2
  18:14,25,25 19:7
  20:11,15,22 21:15
  22:3,3,4 24:18
  25:1,5,5
**track**  19:9
**trading**  28:14
**transactions**
  17:18 21:23
**transcribed**  5:25
**transcript**  46:5
**transform**  19:16
  19:17,20 20:3,5,9
  20:18 22:8,11,15
**transform's**  20:6
**transit**  40:7
**tremendous**  28:17
**trial**  24:21 41:9
**troubling**  37:16
**true**  37:21 46:5
**truly**  30:2

**trust**  21:14 23:18
**trustee**  14:2
**trying**  26:16
**tunc**  5:7 32:6,13
  34:21,24 43:25
**tune**  4:20 5:2
**turn**  38:13
**turning**  23:8
  24:11
**two**  14:13 25:4
  28:13
**twofold**  40:22

**u**

**u.s.**  1:23 14:2
  40:13,25,25 41:18
  43:19
**u.s.c.**  4:20 5:2,7
**ucc**  15:24
**ultimately**  11:19
  19:18 36:20
**uncontested**  8:12
  8:16
**understand**  10:12
  11:18,25 14:21
  24:2 25:20 27:18
**understandable**
  30:20
**understood**  12:5
  28:6
**underwriters**
  33:11,14,17,20
  34:17 35:6,16,19
  37:2,12,14,18,18
  37:25 38:17 39:7
  39:9,12 43:12,14
  43:23 44:13,14
**united**  1:1,13
  39:13
**unknown**  1:25
**unripe**  41:12
**unsecured**  2:16
  3:3 4:12

**unusual**  15:13
**upcoming**  24:7
  25:16
**update**  15:2 18:9
  25:17 28:7
**updates**  15:3
**urged**  26:11
**use**  30:24
**useful**  27:20
**uses**  20:21,23,24
  21:15 22:3,4,7,10
  25:5
**utility**  18:18,21

**v**

**v**  40:25 43:18 44:5
  44:9
**vadim**  7:18
**valley**  40:7
**vanguard**  44:9
**various**  32:11
**verified**  8:24
**verify**  36:7,15,19
**veritext**  46:21
**view**  14:4 15:8
  25:12 27:14 28:20
**vincent**  7:7
**visionary**  23:23

**w**

**w.d.**  39:5 44:6
**wait**  17:22
**waived**  38:10
**walsh**  7:17
**wander**  6:16 28:9
  28:10,13
**want**  10:18 11:2
  14:2,3 28:15,18
  28:19 31:5 37:15
**wanted**  26:22
  42:5 43:2
**wants**  9:3
**wasteful**  12:3
**way**  42:10 43:11
  43:21

**we've**  14:15 21:11
  21:25
**weeks**  16:16
**weil**  3:8 6:3 8:9,13
  12:10 13:2 14:25
  28:15 29:16
**weiss**  3:16 8:13
  13:2,3
**went**  25:24
**wharton**  3:16
**white**  1:15
**win**  22:15 43:22
**wisc**  44:7
**wisniewski**  44:5
**word**  31:7
**words**  21:8
**work**  12:22 16:5
  21:5 25:14 30:6
  30:11
**worked**  8:19
**working**  15:23
**world**  29:2,14
**writing**  25:22

**x**

**x**  1:4,10 9:22 11:7

**y**

**yeah**  12:23
**year**  29:4
**york**  1:2 6:6,14
  7:4 40:18 41:2,3