# EXHIBIT 2

UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

**Fill in this information to identify the case (Select only one Debtor per claim form):**

| | | | | |
|---|---|---|---|---|
| ☒ Sears Holdings Corporation (18-23538) | Kmart Corporation (18-23549) | Sears, Roebuck de Puerto Rico, Inc. (18-23561) | MyGofer LLC (18-23573) | Kmart.com LLC (18-23585) |
| Sears, Roebuck and Co. (18-23537) | MaxServ, Inc. (18-23550) | SYW Relay LLC (18-23562) | Sears Brands Business Unit Corporation (18-23574) | Sears Brands Management Corporation (18-23586) |
| Kmart Holding Corporation (18-23539) | Private Brands, Ltd. (18-23551) | Wally Labs LLC (18-23563) | Sears Holdings Publishing Company, LLC (18-23575) | SHC Licensed Business LLC (18-23616) |
| Kmart Operations LLC (18-23540) | Sears Development Co. (18-23552) | Big Beaver of Florida Development, LLC (18-23564) | Kmart of Michigan, Inc. (18-23576) | SHC Promotions LLC (18-23630) |
| Sears Operations LLC (18-23541) | Sears Holdings Management Corporation (18-23553) | California Builder Appliances, Inc. (18-23565) | SHC Desert Springs, LLC (18-23577) | SRe Holding Corporation (19-22301) |
| ServiceLive, Inc. (18-23542) | Sears Home & Business Franchises, Inc. (18-23554) | Florida Builder Appliances, Inc. (18-23566) | SOE, Inc. (18-23578) | |
| A&E Factory Service, LLC (18-23543) | Sears Home Improvement Products, Inc. (18-23555) | KBL Holding Inc. (18-23567) | StarWest, LLC (18-23579) | |
| A&E Home Delivery, LLC (18-23544) | Sears Insurance Services, L.L.C. (18-23556) | KLC, Inc. (18-23568) | STI Merchandising, Inc. (18-23580) | |
| A&E Lawn & Garden, LLC (18-23545) | Sears Procurement Services, Inc. (18-23557) | Sears Protection Company (Florida), L.L.C. (18-23569) | Troy Coolidge No. 13, LLC (18-23581) | |
| A&E Signature Service, LLC (18-23546) | Sears Protection Company (18-23558) | Kmart of Washington LLC (18-23570) | BlueLight.com, Inc. (18-23582) | |
| FBA Holdings Inc. (18-23547) | Sears Protection Company (PR) Inc. (18-23559) | Kmart Stores of Illinois LLC (18-23571) | Sears Brands, L.L.C. (18-23583) | |
| Innovel Solutions, Inc. (18-23548) | Sears Roebuck Acceptance Corp. (18-23560) | Kmart Stores of Texas LLC (18-23572) | Sears Buying Services, Inc. (18-23584) | |

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| **Part 1:** | **Identify the Claim** |
|---|---|

| | | |
|---|---|---|
| 1. | **Who is the current creditor?** | Royal Consumer Products, LLC |
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor |

| | | |
|---|---|---|
| 2. | **Has this claim been acquired from someone else?** | ☑ No ☐ Yes. From whom? _____ |

| | | | |
|---|---|---|---|
| 3. | **Where should notices and payments to the creditor be sent?** Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Where should notices to the creditor be sent? Christopher J. Major MEISTER SEELIG & FEIN LLP 125 Park Avenue, 7th Floor New York, New York 10017 | Where should payments to the creditor be sent? (if different) Steven Schulman, President Royal Consumer Products c/o Mafcote, Inc. 108 Main Street Norwalk, CT 06851 |
| | | Contact phone (212) 655-3500 Contact email cjm@msf-law,com | Contact phone 203-847-8500 Contact email sschulman@mafcote.com |

| | | |
|---|---|---|
| 4. | **Does this claim amend one already filed?** | ☑ No ☐ Yes. Claim number on court claims registry (if known) _____ Filed on ___/___/___ MM / DD / YYYY |

| | | |
|---|---|---|
| 5. | **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No ☐ Yes. Who made the earlier filing? _____ |

**Part 2:    Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?**    $ 69903.77 _____. **Does this amount include interest or other charges?**

☒ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

### Consignment AJR as of the Petition and Consignment Inventory

**9. Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☑ Other. Describe:    See attached UCC Financing Statement

**Basis for perfection:**    UCC Financing Statement

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $ 69,903.77

**Amount of the claim that is secured:**    $ 69,903.77

**Amount of the claim that is unsecured:**    $ 0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $ 69,903.77

**Annual Interest Rate** (when case was filed) _____ %
☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $ _____

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(____) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |
| 13. **Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?** | ☑ No | |
| | ☐ Yes. Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim. | $_____ |

## Part 3:  Sign Below

| | |
|---|---|
| The person completing this proof of claim must sign and date it. FRBP 9011(b).<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571. | *Check the appropriate box:*<br><br>☑ I am the creditor.<br>☐ I am the creditor's attorney or authorized agent.<br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct.<br><br>**Signature:** *Steven Schulman*<br>Steven Schulman (April 6, 2018)<br><br>**Email:** pg@msf-law.com |

Signature
Print the name of the person who is completing and signing this claim:
Name of the person who is completing and signing this claim:

| Name | Steven | | Schulman |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | President | | |
| Company | Royal Consumer Products, LLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 108 Main Street | | |
| | Number    Street | | |
| | Norwalk | CT | 06851 |
| | City | State | ZIP Code |
| Contact phone | 203·644·1 212 | Email | sschulman@mafcote.com |

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ have supporting documentation.
  (attach below)

☐ do <u>not</u> have supporting documentation.

🖉 Attachment

PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.

IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.

Modified Form 410

# **Instructions for Proof of Claim**

United States Bankruptcy Court                                                                                          12/15

These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.

> A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
> 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- Fill in all of the information about the claim as of the date the case was filed.

- Fill in the caption at the top of the form.

- If the claim has been acquired from someone else, then state the identity of the last party who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- Attach any supporting documents to this form.
  Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- Do not attach original documents because attachments may be destroyed after scanning.

- If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.

- A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth. See Bankruptcy Rule 9037.

- For a minor child, fill in only the child's initials and the full name and address of the child's parent or guardian. For example, write *A.B., a minor child (John Doe, parent, 123 Main St., City, State)*. See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, either enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at http://restructuring.primeclerk.com/sears.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Claim Pursuant to 11 U.S.C. §503(b)(9):** A claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of the Debtor's business. Attach documentation supporting such claim.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. §101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. §507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. §506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

## Please send completed Proof(s) of Claim to:

Sears Holdings Corporation Claims Processing Center
c/o Prime Clerk LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

**Do not file these instructions with your form**

UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

**Fill in this information to identify the case (Select only one Debtor per claim form):**

| | | | | |
|---|---|---|---|---|
| ☑ Sears Holdings Corporation (18-23538) | ☐ Kmart Corporation (18-23549) | ☐ Sears, Roebuck de Puerto Rico, Inc. (18-23573) | ☐ MyGofer LLC (18-23573) | ☐ Kmart.com LLC (18-23585) |
| ☐ Sears, Roebuck and Co. (18-23537) | ☐ MaxServ, Inc. (18-23550) | ☐ SYW Relay LLC (18-23562) | ☐ Sears Brands Business Unit Corporation (18-23574) | ☐ Sears Brands Management Corporation (18-23586) |
| ☐ Kmart Holding Corporation (18-23539) | ☐ Private Brands, Ltd. (18-23551) | ☐ Wally Labs LLC (18-23563) | ☐ Sears Holdings Publishing Company, LLC (18-23575) | ☐ SHC Licensed Business LLC (18-23616) |
| ☐ Kmart Operations LLC (18-23540) | ☐ Sears Development Co. (18-23552) | ☐ Big Beaver of Florida Development, LLC (18-23564) | ☐ Kmart of Michigan, Inc. (18-23576) | ☐ SHC Promotions LLC (18-23630) |
| ☐ Sears Operations LLC (18-23541) | ☐ Sears Holdings Management Corporation (18-23553) | ☐ California Builder Appliances, Inc. (18-23565) | ☐ SHC Desert Springs, LLC (18-23577) | ☐ SRe Holding Corporation (19-22301) |
| ☐ ServiceLive, Inc. (18-23542) | ☐ Sears Home & Business Franchises, Inc. (18-23554) | ☐ Florida Builder Appliances, Inc. (18-23566) | ☐ SOE, Inc. (18-23578) | |
| ☐ A&E Factory Service, LLC (18-23543) | ☐ Sears Home Improvement Products, Inc. (18-23555) | ☐ KBL Holding Inc. (18-23567) | ☐ StarWest, LLC (18-23579) | |
| ☐ A&E Home Delivery, LLC (18-23544) | ☐ Sears Insurance Services, L.L.C. (18-23556) | ☐ KLC, Inc. (18-23568) | ☐ STI Merchandising, Inc. (18-23580) | |
| ☐ A&E Lawn & Garden, LLC (18-23545) | ☐ Sears Procurement Services, Inc. (18-23557) | ☐ Sears Protection Company (Florida), L.L.C. (18-23569) | ☐ Troy Coolidge No. 13, LLC (18-23581) | |
| ☐ A&E Signature Service, LLC (18-23546) | ☐ Sears Protection Company (18-23558) | ☐ Kmart of Washington LLC (18-23570) | ☐ BlueLight.com, Inc. (18-23582) | |
| ☐ FBA Holdings Inc. (18-23547) | ☐ Sears Protection Company (PR) Inc. (18-23559) | ☐ Kmart Stores of Illinois LLC (18-23571) | ☐ Sears Brands, L.L.C. (18-23583) | |
| ☐ Innovel Solutions, Inc. (18-23548) | ☐ Sears Roebuck Acceptance Corp. (18-23560) | ☐ Kmart Stores of Texas LLC (18-23572) | ☐ Sears Buying Services, Inc. (18-23584) | |

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

**Part 1:** Identify the Claim

| | | |
|---|---|---|
| 1. Who is the current creditor? | Royal Consumer Products, LLC | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor | |
| 2. Has this claim been acquired from someone else? | ☑ No<br>☐ Yes. From whom? _____ | |
| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>Christopher J. Major<br>MEISTER SEELIG & FEIN LLP<br>125 Park Avenue, 7th Floor<br>New York, New York 10017<br><br>Contact phone (212) 655-3500<br>Contact email cjm@msf-law.com | **Where should payments to the creditor be sent? (if different)**<br><br>Steven Schulman, President<br>Royal Consumer Products<br>c/o Mafcote, Inc.<br>108 Main Street<br>Norwalk, CT 06851<br><br>Contact phone 203-847-8500<br>Contact email sschulman@mafcote.com |
| 4. Does this claim amend one already filed? | ☑ No<br>☐ Yes. Claim number on court claims registry (if known)_____ | Filed on ___/___/_____<br>MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes. Who made the earlier filing? _____ | |

Proof of Claim                              page 1

**Part 2:**  **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☒ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____ |

**7. How much is the claim?**  $_____69,903.77_____. Does this amount include interest or other charges?

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Consignment A/R as of the Petition and Consignment Inventory

**9. Is all or part of the claim secured?**

☐ No

☒ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☒ Other. Describe:   See attached UCC Financing Statement

Basis for perfection:   UCC Financing Statement

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:   $_____69,903.77

Amount of the claim that is secured:   $_____69,903.77

Amount of the claim that is unsecured:  $_____0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:   $_____69,903.77

Annual Interest Rate (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☒ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.   $_____

**11. Is this claim subject to a right of setoff?**

☒ No

☐ Yes. Identify the property: _____

| | | Amount entitled to priority |
|---|---|---|
| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one* | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |
| 13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)? | ☑ No | |
| | ☐ Yes. Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim. | $_____ |

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box*

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date     04/08/2019     (mm/dd/yyyy)

_____
Signature

Print the name of the person who is completing and signing this claim:

Name of the person who is completing and signing this claim:

| Name | Steven | | Schulman |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | President | | |
| Company | Royal Consumer Products, LLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer | | |
| Address | 108 Main Street | | |
| | Number    Street | | |
| | Norwalk | CT | 06851 |
| | City | State | ZIP Code |
| Contact phone | 203-644-1212 | Email sschulman@mafcote.com | |

### Addendum to Royal Consumer Products, LLC'S Proof of Claim

On or about January 15, 2012, Kmart Corporation, Sears, Roebuck and Co. and all other subsidiaries of Sears Holdings Corporation and Kmart Corporation (collectively "Debtors") and Royal Consumer Products LLC ("RCP" or "Claimant") entered into the Scan-Based Trading and Consignment Agreement as amended by the Scan-Based Trading and Consignment Agreement Rider dated as of May 8, 2012 (collectively the "Agreement"). A true and correct copy of the Agreement (including the Rider) is attached hereto as **Exhibit 1**.

Pursuant to the terms of the Agreement, RCP delivers poster board, foam board and project board products and similar merchandise to Debtors on consignment for resale to retail consumers. Debtors sell RCP's merchandise for sale to Debtors' customers. Under the Agreement, Debtors are required to pay RCP net proceeds from the sale of RCP's merchandise thirty (30) days from the date the merchandise is scanned by Debtors at their cash registers.

Under the Agreement, RCP was granted a perfected security interest in its inventory delivered to Debtors and the accounts receivable generated from any sale of RCP's consignment merchandise sold by Debtors. RCP and Debtors further agreed that RCP could file financing statements, any amendments and other appropriate Uniform Commercial Code forms and/or other documents reflecting Vendor's consigning the merchandise and proceeds. On or about December 16, 2014, Claimant filed a UCC Financial Statement with the Michigan Department of State ("UCC-1"). A true and correct copy of Claimant's UCC-1 is annexed hereto as **Exhibit 2**.

Debtors owed RCP $27,299.51 as of the Petition Date and Debtors are holding RCP's consigned merchandise in the amount of $42,604.26. A true and correct copy of spreadsheet showing the accounts receivable and consignment inventory is attached hereto as **Exhibit 3**.

# Exhibit 1

1/15/12

date

## SCAN-BASED TRADING AND CONSIGNMENT AGREEMENT

This Scan-Based Trading and Consignment Agreement (the "Agreement") is entered into by and between Kmart Corporation (together with its subsidiaries "Kmart"), Sears, Roebuck and Co (together with its subsidiaries "Sears") and all other subsidiaries of Sears Holdings Corporation (jointly, "Company") 3333 Beverly Road, Hoffman Estates, IL 60179 and Royal Consumer Products LLC, 108 Main Street, Norwalk, CT 06851 signing this Agreement as Vendor below. In consideration of and reliance on the mutual promises and representations contained in this Agreement, Vendor and Company agree as follows:

1.      Vendor and Company desire to enter into a scan-based trading and consignment arrangement for the supply of certain merchandise by Vendor to Company for resale to retail customers pursuant to the terms set forth in this Agreement. As used in this Agreement, scan-based trading ("SBT") refers to an arrangement in which: (i) Company payments to Vendor are based on Company's point of sale ("POS") data, (ii) Vendor delivers merchandise to Company's stores as defined in related Agreements between Company and Vendor in the absence of a purchase order relative to such merchandise, (iii) Vendor retains title and ownership of such merchandise until the merchandise is scanned by Company at the register, at which time Company purchases the merchandise and instantaneously resells it to the retail customer, (iv) Company only pays Vendor for merchandise that is scanned by Company at the register, and, (v) Company shall pay vendor net 30 days from the date the merchandise is scanned by Company at register.

2.      Vendor will deliver to Company on a consignment basis such merchandise as identified in one or more SBT inventory form(s) executed by Vendor and Company (the "SBT Merchandise"), a representative form of which is attached and incorporated by reference  The parties intend by this Agreement to enter into a "consignment" arrangement agreement as defined in § 9-102(20) of the Uniform Commercial Code and agree that all SBT Merchandise delivered by Vendor and received by Company is consigned merchandise.  Title to the SBT Merchandise will remain with Vendor until (i) the SBT Merchandise is scanned by Company at the register, at which point title will pass to Company and the SBT Merchandise will be resold to the retail customer or (ii) purchased by Company in accordance with paragraph 11 of this Agreement.  Company is responsible for establishing appropriate initial inventory levels of SBT Merchandise in Company's retail stores and distribution centers and replenishing such merchandise based on reported sales (as reflected in Company's POS data).

3.      Company and Vendor will mutually agree upon the purchase price and payment terms of the SBT Merchandise as between Company and Vendor.  Company will have the sole discretion to determine the retail price of the SBT Merchandise for sales to retail customers.  For each unit of SBT Merchandise sold (as determined by Company POS data, which is subject to audit by Vendor as provided below), Company will pay Vendor the agreed upon purchase price for the unit, pursuant to the agreed upon payment terms. The following SBT Merchandise will not be counted as a sale for purposes of calculating payments to Vendor:  any SBT Merchandise that (i) is sold and returned by a retail customer in accordance with Company's return policy, or (ii) is defective.  Company may take deductions from payments due to Vendor for any and all returned or defective SBT Merchandise for which Vendor has previously received payment.

4.      All transactions between Company and Vendor concerning this Agreement (e.g., remittance advises, payments, etc.) will be conducted via electronic data interchange ("EDI") pursuant to the Electronic Data Interchange Trading Partner Agreement in place between Company and Vendor. Company will provide Vendor with EDI transaction set No. 852 "Product Activity Data" (also known as POS) via EDI (which reflects unit sales of SBT Merchandise) at no charge within 48 hours of the end of each business day.  In the event of any conflict between the terms of the Electronic Data Interchange Trading Partner Agreement and this Agreement, the terms of this Agreement will control.

5.      Risk of loss or damage to the SBT Merchandise caused by fire, flood, wind or other natural disaster and shrink shall remain with Vendor until title passes to Company as provided in paragraph 1.

6.      Vendor will maintain true and correct books and records concerning the delivery of SBT Merchandise to Company's distribution centers, which will govern in determining the quantity of SBT Merchandise received by Company from Vendor and which is subject to audit as provided below

(5)

Company will maintain a record of the perpetual inventory of the SBT Merchandise. If physical inventories of the SBT Merchandise are performed, the company that performs Company's annual physical cycle inventories at the retail stores will perform the physical inventories of the SBT Merchandise at Company's cost; provided, however, that Vendor may at its own cost conduct its own periodic physical inventories or observe physical inventories conducted by Company. Company may audit Vendor's books and records concerning the delivery of SBT Merchandise to Company (i) once per calendar year on 15 days written notice to Vendor and (ii) thereafter, at any other time upon 15 days written notice to Vendor, subject to Vendor's written consent, with such consent not to be unreasonably withheld or delayed. If Company chooses to conduct such an audit, Company or its auditors will sign a commercially reasonable confidentiality agreement.

7.       Company is responsible for collecting, paying, and reporting all sales, use, excise, gross receipts and other federal, state or local taxes or other assessments (other than any tax based on the income of Vendor or the value of the consigned SBT Merchandise) arising from the sale of the SBT Merchandise to the retail customer. Vendor is responsible for reporting and paying any personal property, inventory, and ad valorum taxes assessed by any taxing authority on the consigned SBT Merchandise located at the Company retail stores and distribution centers. At Company's request, Vendor will furnish Company evidence of paying such taxes. Company represents that the SBT Merchandise will not be identified or treated as Company-owned inventory for the Company's accounting, financial reporting or any other purpose

8.       The consigned SBT Merchandise, even if conforming and non-defective, may be returned to Vendor at Company's sole option. For such returns, the responsibility for freight costs will be Company's responsibility (freight prepaid).

9.       Company consents to Vendor filing financing statements, any amendments and other appropriate Uniform Commercial Code forms and/or other documents reflecting Vendor's consigning the SBT Merchandise (and proceeds) and forwarding notices to other secured parties, if any, as contemplated by § 9-319 of the Uniform Commercial Code, in order for Vendor to have and a maintain a first priority, perfected consignment interest. Company will cooperate with Vendor to protect and secure Vendor's interest in the SBT Merchandise (and proceeds), including without limitation the executing such other security documents and notices as Vendor may deem reasonably necessary in order to maintain a perfected interest in the SBT Merchandise (and proceeds).

10.      The terms and conditions governing the relationship between Vendor and Company are those signed by Vendor and on file from Vendor, all of which are incorporated by reference (the "Terms and Conditions"). In the event there is a conflict between this Agreement and the applicable Terms and Conditions, this Agreement will supersede and control; in all other respects, the applicable Terms and Conditions will remain in full force and effect. This Agreement is incorporated by reference into any "Orders" (as defined in the Terms and Conditions).

11.      This Agreement will commence and be effective as the term is provided in the Terms and Conditions unless earlier terminated as provided in this document. Company may terminate this Agreement on 30 days written notice without cause. Breaching, expiring or terminating this Agreement shall have no impact on Vendor's ownership interest and consignment interest or security interest in the SBT Merchandise.



2

12.        This agreement shall be governed by the laws of the Sate of Illinois, without regard to its conflicts of law principles.

SEE RIDER DATED 5/8/12 SIGNED 6/15/12 WHOSE PROVISIONS
ARE INCORPORATED HEREIN.

COMPANY                                    VENDOR

By: _____    By: _____

Its: _____VP/EM_____    Its: _____PRESIDENT_____

Date: _____8/14/2012._____    Date: _____6/15/2012_____


Approved as to form

_____

Sears Holdings Corporation
Legal Department

05/08/12

## SCAN-BASED TRADING AND CONSIGNMENT AGREEMENT RIDER

This Scan-Based Trading and Consignment Agreement Rider ("Rider") is attached to and hereby made part of the Scan-Based Trading and Consignment Agreement, dated January 15, 2012 between Kmart Corporation (together with its subsidiaries "Kmart"), Sears, Roebuck and Co. (together with its subsidiaries "Sears") and all other subsidiaries of Sears Holdings Corporation (jointly, "Company") and Royal Consumer Products, LLC ("Vendor"). Absolutely no changes are to be made to this Rider without prior written agreement between the parties.

This Rider is solely with respect to the terms herein and does not affect any other obligations within the Scan-Based Trading and Consignment Agreement. In the event the terms of this Rider conflict with the terms of the Scan-Based Trading and Consignment Agreement, the terms of this Rider shall be deemed controlling.

1-Duration and Termination of Consignment. The Company and Vendor agree that this Rider, and the underlying Scan-Based Trading and Consignment Agreement shall remain in effect from Effective Date to the start of the 13th month from such date and then thereafter until termination by either party upon 45 days written notice. All obligations set out in or arising from this agreement shall continue until fully satisfied or until otherwise discharged after any termination. The Effective Date is September 9, 2012.

A. Either party may terminate for cause upon fifteen (15) days written notice for a material breach of this Rider, or the underlying Scan-Based Trading and Consignment Agreement which has not been promptly remedied. In the event Vendor has committed a material breach, and otherwise failed to promptly remedy to the satisfaction of Company, then Company shall deduct the verifiable, actual damage of such breach and Company may terminate in accordance to the terms and conditions of Section 1B. In the event Company has committed a material breach, including failing to make timely payment to Vendor and otherwise failed to promptly remedy to the satisfaction of Vendor, the Vendor shall be paid by the Company the verified actual damage of such breach and Vendor may terminate in accordance with Section 1C.

B. If Company terminates with cause during the 12 month term or Vendor terminates without cause after the 12 month term a consigned item or product line or this Rider or the underlying Scan-Based Trading and Consignment Agreement, the Company will continue to sell the consigned inventory, without replenishment, for ninety (90) days from the date of notice. During the last thirty (30) days, the Company will reduce the sale price of the consigned items by 50% and similarly Vendor shall reduce its price to the Company for the consigned items by 50%. Non-sold consignment inventory will be liquidated by Company without further payment to the Vendor.

C. If Vendor terminates with cause during the 12 month term or Company terminates without cause after the 12 month term a consigned item or product line or this Rider or the underlying Scan-Based Trading and Consignment Agreement, and except as otherwise provided for herein this Section 1, the Company will continue to sell the consigned inventory, without replenishment, for ninety (90) days from the date of notice. At the end of these ninety days, the Company will guarantee and pay for at full price any unsold consigned inventory.

05/08/12

**2. Efforts to Sell.** The Company agrees to accept and sell the consignment inventory in a manner similar to the manner under which these product lines were sold prior to this Agreement. The product lines that will be sold under this Agreement are Posterboard & Foamboard & Project Board consisting of 21 items to be consigned for which similar items were sold by competitors and 7 Accessories items sold by Vendor to Company to be consigned. Actual product selection and pricing is the subject of further negotiations between Vendor and Company prior to the execution of this Agreement and thereafter during this Agreement and parties agree that failure of the parties to agree on pricing as set out in Section 2 of the Agreement supports declaration and notice by either party to the other of termination without cause and, in which event, Sections 1.B. and 1.C. shall control.

**3. Consigned Inventory.** The parties agree that the consigned inventory provided by Vendor and carried by Company shall average three (3) months running average demand and either party has the right to restrict orders to maintain the inventory aligned with the three (3) months running average demand. The parties shall each provide reasonably necessary documentation for the calculation of such running average demand.

**4. Rebate.** In the event there has been no material breach of this agreement that has not been promptly cured by the Company or there is not a bankruptcy or insolvency declaration of the Company, including but not limited to filing or continued bankruptcy or insolvency proceeding, Vendor shall rebate to Company 10% of the annual net revenues received from the Company from the sales of the Consigned Inventory for the prior calendar year. Vendor shall remit such rebate directly to Company for each prior calendar year, having a remittance date on or about April 15. In the event there has been an uncured material breach that has not been promptly cured by the Company or there is a bankruptcy or insolvency declaration of the Company through April 15, including but not limited to filing or continued bankruptcy or insolvency proceeding, there shall be no rebates issued by Vendor, regardless of the sale of the consigned inventory hereunder.

**5. Store Closing.** In the event of a store closing where Vendor's consigned goods are being marketed and/or sold, the Company shall guarantee and remit to the Vendor the value of the store consigned inventory at the time of closing.

**6. Bankruptcy or Insolvency.** In the event of bankruptcy or insolvency declaration of the Company, or any subsidiary thereof, this Agreement shall terminate and the Company shall return in undamaged condition and at its cost including return freight cost any unsold consigned inventory at the time of such declaration.

**7. Security Interest Filing.**
Article 9 of Uniform Commercial Code ("UCC") provides the means whereby a consignor can establish a valid, protected security interest in its own inventory, even when that inventory has been delivered to a consignee. Vendor may at its option file a conforming financing statement amendment and other related documents as may be allowed under the UCC in order to protect its security interest in the consigned goods. Moreover, the parties agree that at the moment of sale to the Company's customer of consigned inventory (at the scan), the Vendor advances the payment received for its goods sold and Vendor has a first secured interest in proceeds then due to Vendor as its rightful accounts receivable.

05/08/12

8. **Assignment.** The Company shall not assign the Rider, or the underlying Scan-Based Trading and Consignment Agreement, without written consent of Vendor.

9. **Governing Law.** The parties agree that this Rider, and the underlying Scan-Based Trading and Consignment Agreement, shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Kentucky.

10. **Attorney Fees.** Each party hereto shall bear all attorney's fees and costs arising from the actions of its own counsel in connection with this Rider, and the underlying Scan-Based Trading and Consignment Agreement, the matters and documents referred to herein, and all related matters.

11. **Counterparts; Headings.** This Rider, and the underlying Scan-Based Trading and Consignment Agreement, may be executed in several counterparts, each of which shall be deemed to be an original, and all of which together shall constitute but one and the same instrument. The headings in the sections of this Rider are inserted for convenience only and in no way alter, amend, modify, limit or restrict the contractual obligations of the parties.

12. **Severability and Subordination.** If any provision of this Rider, or the underlying Scan-Based Trading and Consignment Agreement, is deemed or held to be invalid, illegal or unenforceable, such invalidity, unenforceability or illegality shall not affect the validity, enforceability or legality of the remaining provisions of this Rider and this Rider will be deemed to be amended to the extent necessary to make it valid, enforceable and legal. The remaining provisions will remain in full force and effect.

13. **Customer Returns, Inventory Shortages, Damaged in Store.** Both parties acknowledge that customer returns, inventory shortages and store damage ( "RS&D")  are part of the business process for which under this agreement Royal will be financially responsible up to a 2% maximum as calculated on RS&D each quarter divided by net sales to the Company from Vendor for each quarter ("Cap RS&D %"). Both parties also understand that the industry average for these classes of products is below 2%. If the actual RS&D percentage exceeds Cap RS&D %, then both companies will work together to determine the cause and execute the necessary steps to correct the cause. If the determination is that the actual RS&D is in excess of the Cap RS&D % because of defective Vendor products, Vendor shall issue credit for all defective Vendor products in addition to the Cap RS&D credit. To the extent that the determination is that the actual RS&D percentage is the result from normal activity and results within the Company, then both parties will agree to negotiate an increase the Cap RS&D % and a corresponding price increase both effective at the same time.

14. **Mark downs and Reset Fees and Racks.**
 Marketing costs are the amount paid or agreed to be paid at a future date by Vendor to Company or on behalf of Company for markdowns, racks, and reset fees.

If there is a material breach by the Company which has not been promptly cured, or if there is a termination by the Company of this agreement on part thereof without cause, or if there is a bankruptcy or insolvency declaration of the Company, including but not limited to the filing or continued bankruptcy or insolvency proceeding, such amounts of marketing costs not amortized by Vendor shall be due and payable to the Vendor by the Company. The Vendor amortizes such costs over a 36 month period from the date incurred.



05/08/12

15. **Scanned Based Sales.** With regard to the Section 1 of the Scanned based Trading Agreement: "Company shall pay vendor net 30 days from the date the merchandise is scanned by Company at register", it is agreed that the applicable consigned inventory shall be scanned whenever a customer exits a Company store with such inventory to the same standard of care that it maintains for its other inventory.

AGREED AND ACCEPTED. IN WITNESS WHEREOF, the parties have executed this Rider as of the day and year first above written.

COMPANY                              VENDOR

By:                                  by:

As: VP/GMM                           As: PRESIDENT

Date: 6/20/2012                      Date: 6/15/2012

WITNESS:                             WITNESS:

Approved as to form

Sears Holdings Corporation
Legal Department

# Exhibit 2

Michigan Department of State - Uniform Commercial Code

Document Number:

**2014178469-6**

Filing Date and Time:

**12/16/2014 3:36:10 PM**

*(This document was filed electronically.)*

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Noah Scooler

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

Graubard Miller

Graubard Miller

405 Lexington Avenue - Floor 11

New York                          NY      10174

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME  KMart Corporation | | | | | |
|---|---|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS    3333 Beverly Road | CITY    Hoffman Estates | STATE  IL | POSTAL CODE  60179 | | COUNTRY  USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME  Royal Consumer Products LLC | | | | | |
|---|---|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS    108 Main Street | CITY    Norwalk | STATE  CT | POSTAL CODE  06851 | | COUNTRY  USA |

4. COLLATERAL: This financing statement covers the following collateral:

Poster board, foam board and project board products and similar products thereto and proceeds thereof.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☑ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)    International Association of Commercial Administrators (IACA)

Exhibit 3

| Item | Kmart # | Inventory 4-1-2019 - vendor 698756 - Royal Consumer Products llc | Price | Ending Store SLBL Ivntry Units (EA) | DC Ivntry Units (EA) | Ending Store SLBL + DC Ivntry Units (EA) | $ Amount |
|---|---|---|---|---|---|---|---|
| 27141 | 6891425 | Eco Brites Yellow 1 Ply | 3.00 | 2.00 | - | 2.00 | 6.00 |
| 24312T | 4811743 | Poster Board Lavendar 1/Pack, | 0.32 | 49.00 | - | 49.00 | 15.68 |
| 23303T | 4811971 | Fl Orange Poster Board 22 x 28 | 0.37 | 70.00 | - | 70.00 | 25.90 |
| 27835 | 8882821 | Eco Brites Project Board 2 | 3.00 | 9.00 | - | 9.00 | 27.00 |
| 27144 | 6891392 | Eco Brites Black 1 Ply Project | 3.00 | 12.00 | - | 12.00 | 36.00 |
| 24320T | 4811315 | 2 Cool Red/Green Poster Board 22 x 28 | 0.35 | 110.00 | - | 110.00 | 38.50 |
| 24321T | 4811109 | Poster Board 2 Cool Colors | 0.35 | 112.00 | - | 112.00 | 39.20 |
| 24328T | 4811138 | Poster Board 2 Cool Colors | 0.35 | 121.00 | - | 121.00 | 42.35 |
| 23303W | 4811971 | Poster Board Fl. Neon Orange | 0.37 | 116.00 | - | 116.00 | 42.92 |
| 27140 | 6891426 | Eco Brites Red 1 Ply Project | 3.00 | 15.00 | - | 15.00 | 45.00 |
| 27135 | 5843503 | Eco Brites Project Board 2 | 4.00 | 15.00 | - | 15.00 | 60.00 |
| 26790 | 5843504 | Two Cool Project Board White/ | 3.75 | 19.00 | - | 19.00 | 71.25 |
| 24321 | 4811109 | Black/Orange 2 Cool Poster B. | 0.35 | 375.00 | 75.00 | 450.00 | 157.50 |
| 27213 | 5843505 | White Tri Fold Presentation | 8.65 | 22.00 | - | 22.00 | 190.30 |
| 27145 | 6891393 | Eco Brites White 1 Ply Project | 3.00 | 127.00 | - | 127.00 | 381.00 |
| 23499 | 4805093 | Poster Board Sign Kit 12 + | 2.53 | 213.00 | - | 213.00 | 538.89 |
| 26896 | 4804891 | Eco Foam Board 2 Cool Colors | 2.04 | 402.00 | - | 402.00 | 820.08 |
| 24301 | 4840271 | White Poster Board | 0.14 | 5,918.00 | - | 5,918.00 | 828.52 |
| 27072 | 4805076 | Eco Brites Project Board, | 1.10 | 792.00 | - | 792.00 | 871.20 |
| 21055 | 4805078 | Bond Roll, White 1/Pack | 1.76 | 538.00 | - | 538.00 | 946.88 |
| 24324 | 6265837 | S-Poster Board White 8/Pack, | 0.98 | 1,160.00 | - | 1,160.00 | 1,136.80 |
| 23304W | 4811853 | Poster Board Fl. Neon Green | 0.37 | 3,268.00 | - | 3,268.00 | 1,209.16 |
| 27839 | 9012495 | Eco Project Board 2 Cool | 1.96 | 648.00 | - | 648.00 | 1,270.08 |
| 23302W | 4840191 | Poster Board Fl. Neon Canary | 0.37 | 3,469.00 | - | 3,469.00 | 1,283.53 |
| 26976 | 4804964 | Vanishing Grid 11X14 Foamboard | 1.28 | 1,019.00 | - | 1,019.00 | 1,304.32 |
| 23305W | 4840202 | Poster Board Fl. Neon Pink | 0.37 | 3,875.00 | - | 3,875.00 | 1,433.75 |
| 27104R | 4811658 | Poster Board Eco Prem. White | 0.38 | 5,052.00 | - | 5,052.00 | 1,919.76 |
| 26825 | 4787729 | Eco Foam Board, Black 1/Pack, | 2.00 | 1,065.00 | - | 1,065.00 | 2,130.00 |
| 23502 | 4809043 | Poster Board Grid Board | 0.77 | 2,739.00 | 72.00 | 2,811.00 | 2,164.47 |
| 26881 | 4799459 | Eco Foam Board Tri-Fold | 2.41 | 916.00 | - | 916.00 | 2,207.56 |
| 27416 | 6257824 | Two Cool Poster Board Primary | 1.50 | 1,557.00 | - | 1,557.00 | 2,335.50 |
| 72700 | 4809041 | L-Grid Poster Board Bilingual, | 1.35 | 1,738.00 | - | 1,738.00 | 2,346.30 |
| 27417 | 6258087 | Two Cool Poster Board | 1.50 | 1,611.00 | - | 1,611.00 | 2,416.50 |
| 26824 | 4889164 | Eco Foam Board, White 1/Pack, | 1.40 | 1,710.00 | 20.00 | 1,730.00 | 2,422.00 |
| 23500 | 4811031 | S-Poster Board Fl. Neon | 0.90 | 2,784.00 | 48.00 | 2,832.00 | 2,548.80 |
| 23408 | 7389260 | Poster Board White, | 2.21 | 1,125.00 | 100.00 | 1,225.00 | 2,707.25 |
| 27383B | 6274857 | Poster Board Shapes, Two Cool | 1.15 | 2,595.00 | - | 2,595.00 | 2,984.25 |
| 46326B | 8818034 | E-Z Print Sign Board, Two Cool | 1.74 | 2,069.00 | - | 2,069.00 | 3,600.06 |

42,604.26

## Accounts Receivable 4-1-2019 - vendor 698756 - Royal Consumer Products llc

| | Invoice date | due date | | Amount |
|---|---|---|---|---|
| **Pre Petion** | | | | |
| D31143 | 9/3/2018 | 9/3/2018 | penalty | 23.32 |
| D31142 | 9/3/2018 | 9/3/2018 | penalty | 24.44 |
| D29760 | 3/26/2018 | 3/26/2018 | penalty | 28.55 |
| D30108 | 5/30/2018 | 5/30/2018 | penalty | 150.00 |
| D30109 | 5/30/2018 | 5/30/2018 | penalty | 150.00 |
| | | | | |
| 1673892 | 8/11/2018 | 9/10/2018 | INV | 732.77 |
| 1676129 | 9/15/2018 | 10/15/2018 | INV | 2,660.64 |
| 1675668 | 9/8/2018 | 10/8/2018 | INV | 2,672.09 |
| 1674099 | 8/18/2018 | 9/17/2018 | INV | 2,757.86 |
| 1676694 | 9/22/2018 | 10/22/2018 | INV | 2,828.30 |
| 1674515 | 8/25/2018 | 9/24/2018 | INV | 2,905.73 |
| 1676996 | 9/29/2018 | 10/29/2018 | INV | 2,973.75 |
| 1675114 | 9/1/2018 | 10/1/2018 | INV | 2,982.40 |
| 1677804 | 10/6/2018 | 11/5/2018 | INV | 3,071.01 |
| 1678060 | 10/13/2018 | 11/12/2018 | INV | 3,338.65 |
| | **Total pre-petition** | | | **27,299.51** |
| **Post-Petition** | | | | |
| D32020 | 1/24/2019 | 1/24/2019 | penalty | 6.28 |
| D32082 | 2/4/2019 | 2/4/2019 | penalty | 14.13 |
| D32137 | 2/7/2019 | 2/7/2019 | penalty | 4.28 |
| D32206 | 2/15/2019 | 2/15/2019 | penalty | 100.64 |
| D32271 | 3/7/2019 | 3/7/2019 | penalty | 16.10 |
| D32282 | 3/7/2019 | 3/7/2019 | penalty | 103.42 |
| D32438 | 3/28/2019 | 3/28/2019 | penalty | 6.66 |
| D32412 | 3/28/2019 | 3/28/2019 | penalty | 25.50 |
| | | | | |
| 1679278 | 10/20/2018 | 11/19/2018 | INV | 584.57 |
| 1682958 | 12/15/2018 | 1/14/2019 | INV | 24.00 |
| 1683372 | 12/22/2018 | 1/21/2019 | INV | 1.70 |
| 1685836 | 1/26/2019 | 2/25/2019 | INV | 752.81 |
| 1686807 | 2/2/2019 | 3/4/2019 | INV | 2,070.96 |
| 1686983 | 2/9/2019 | 3/11/2019 | INV | 2,148.34 |
| 1688163 | 2/23/2019 | 3/25/2019 | INV | 874.73 |
| 1689007 | 3/2/2019 | 4/1/2019 | INV | 3,177.17 |
| 1689681 | 3/9/2019 | 4/8/2019 | INV | 2,886.84 |
| 1689960 | 3/16/2019 | 4/15/2019 | INV | 2,282.42 |
| 1690751 | 3/23/2019 | 4/22/2019 | INV | 1,227.74 |
| | **Total post-petition** | | | **16,308.29** |
| | | | | |
| | | | | **43,607.80** |

# Electronic Proof of Claim

**Final Audit Report**                                                                2019-04-09

| | |
|---|---|
| Created: | 2019-04-09 |
| By: | Sears Claims (searsclaims@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA6ZWQOEBPZ0oEoTMO7c6g13R6S9_FfPBc |

## "Electronic Proof of Claim" History

Widget created by Sears Claims (searsclaims@primeclerk.com)
2019-04-09 - 1:38:36 PM GMT

Steven Schulman (pg@msf-law.com) uploaded the following supporting documents:
Attachment
2019-04-09 - 2:19:13 PM GMT

Widget filled in by Steven Schulman (pg@msf-law.com)
2019-04-09 - 2:19:13 PM GMT- IP address: 24.157.54.130

(User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; WOW64; Trident/7.0; rv:11.0) like Gecko)
2019-04-09 - 2:19:16 PM GMT- IP address: 24.157.54.130

Signed document emailed to Sears Claims (searsclaims@primeclerk.com) and Steven Schulman (pg@msf-law.com)
2019-04-09 - 2:19:16 PM GMT