STOLL KEENON OGDEN PLLC
500 West Jefferson Street, Suite 2000
Louisville, Kentucky 40202
Telephone: (502) 333-6000
Facsimile: (502) 333-6099
Lea Pauley Goff (admitted *pro hac vice*)
Emily L. Pagorski (admitted *pro hac vice*)

*Counsel for Creditor,*
*Tempur Sealy International, Inc. and its affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | : | Case No. 18-23538-RDD |
| SEARS HOLDING CORPORATION, *et al.*, | : | Chapter 11 |
| Debtors. | : | (Jointly Administered) |

**TEMPUR SEALY INTERNATIONAL, INC.'S RESPONSE TO**
**DEBTORS' TWENTIETH OMNIBUS OBJECTION TO PROOFS OF CLAIM**
**(REDUCED/RECLASSIFIED CLAIMS)**

Tempur Sealy International, Inc. and its affiliates, Sealy Mattress Manufacturing Co., LLC, Tempur-Pedic North America, LLC, Sealy Mattress Company of Puerto Rico, and Comfort Revolution, LLC (collectively, "Tempur") hereby submit this response (the "Response") to Debtors' Twentieth Omnibus Objection To Proofs Of Claim (Reduced/Reclassified Claims) (Doc. No. 8019) (the "Claim Objection").[1]  The Debtors' objection is based solely on credits they claim reduce the amount of the 503(b)(9) claim.  However, the Debtors have not met their burden of proof to demonstrate that they indeed own the credits that they now seek to offset against Tempur's Section 503(b)(9) claim, or that they may otherwise assert them.  The Claim Objection should be overruled. Tempur respectfully states as follows in support of its Response.

---

[1] In a separate written communication with counsel for Tempur, counsel for the Debtors agreed to extend the deadline for Tempur's response to the Debtors' Claim Objection through and including August 4, 2020.

### I.  BACKGROUND

1.  For a period of years prepetition, Tempur supplied the Sears entities with branded mattress and other bedding products for Sears to sell to its customers.

2.  On or about October 15, 2018 (the "Petition Date"), Sears Holdings Corporation and its debtor affiliates, as debtors-in-possession in the above-captioned chapter 11 cases (collectively the "Debtors"), filed voluntary bankruptcy petitions in the United States Bankruptcy Court for the Southern District of New York. Tempur had delivered to the Debtors product worth $2,398,655.12 during the twenty (20) days preceding the Petition Date.

3.  As debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, the Debtors have continued to possess their property and continued to operate and maintain their business.

4.  On January 17, 2019, the Debtors entered into an Asset Purchase Agreement with Transform Holdco LLC ("Transform") - the company that ESL Investments, Inc. formed to purchase substantially all of the Debtors' assets and operations. *See* Asset Purchase Agreement dated as of January 27, 2019 by and among Transform Holdco LLC, Sears Holdings Corporation and Its Subsidiaries Party Hereto (Doc. No. 1730).

5.  On February 8, 2019, after a hearing on the Debtors' motion for entry of an order pursuant to sections 105, 363 and 365 of the Bankruptcy Code approving the sale of the Debtors' assets (the "Sale Hearing"), the Bankruptcy Court entered an order (Doc. No. 2507) (the "Sale Order") approving the sale of substantially all of the Debtors' assets and operations to Transform (the "Sale").

6.  In connection with the Sale Order, the Debtors assumed and assigned certain of their executory contracts and unexpired leases. However, no contracts between Tempur and the

Debtors were among the executory contracts designated for assumption and assignment as part of the sale.

7.     Among other terms, the Execution Version of the Asset Purchase Agreement attached at Exhibit B to the Sale Order (the "APA")[2] provides that the Debtors sold and Transform purchased the following assets, free and clear of any and all liens, claims and encumbrances:

> (t) all Actions and other rights, rebates, refunds, audits, rights of setoff, rights of recoupment, rights of reimbursement, rights of indemnity or contribution and other similar rights (known and unknown, matured and unmatured, accrued or contingent, regardless of whether such rights are currently exercisable) against any Person, including all warranties, representations, guarantees, indemnities and other contractual claims (express, implied or otherwise), in each case to the extent related to the Business or any Acquired Asset (excluding for the avoidance of doubt, any Claims arising under any Transaction Document), including, subject to the terms and conditions of the SHIP Purchase Agreement and applicable Law, if the SHIP Closing shall have occurred prior to the Closing Date, the indemnities set forth in Section 6.08(b) and Section 6.08(e) of the SHIP Purchase Agreement.

See APA at Section 2.1(t).

8.     On information and belief, the Sale closed on or about February 11, 2019.

9.     On February 22, 2019, the Court entered an order (Doc. No. 2676) establishing April 10, 2019 at 5:00 p.m. (Eastern time) as the deadline by which to file a proof of claim for pre-petition amounts owing by the Debtors, including priority claims under 11 U.S.C. § 503(b)(9) for goods provided to the Debtors during the twenty day period preceding the Petition Date (the "Bar Date Order").

10.    On or about March 30, 2019, pursuant to the Bar Date Order, Tempur timely filed a proof of claim for its $2,398,655.12 priority 503(b)(9) claim (the "503(b)(9) Claim") for goods delivered within twenty (20) days of the Petition Date with that claim appearing as Claim Number

---

[2] It is unclear whether the form of the APA attached to the Sale Order was indeed executed by the parties without any revisions thereto.

13224 in Prime Clerk's electronic claim register.[3] The 503(b)(9) Claim is held by Tempur as follows:

| | |
|---|---|
| Sealy Mattress Manufacturing Company, LLC ("Sealy") | $1,895,252.80 |
| Tempur-Pedic North America, LLC | $ 352,712.50 |
| Sealy Mattress Company of Puerto Rico | $ 145,429.82 |
| Comfort Revolution, LLC | $ 5,260.00 |

*See* Exhibit A to 503(b)(9) Claim.

11. On April 17, 2019, the Debtors filed their joint chapter 11 plan of reorganization (Doc. No. 3275) (as amended and modified, the "Plan") and the accompanying disclosure statement (Doc. No. 3276) with the Court. Thereafter, on October 15, 2019, the Court entered an order confirming the Plan (Doc. No. 5370) (the "Confirmation Order").

12. The Plan provides that "On the Effective Date . . . each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) as of the Effective Date is subject to a pending motion to assume such Unexpired Lease or Executory Contract . . .; (2) is a contract, engagement letter that has been approved by an order of the Bankruptcy Court, release, or other agreement or document entered into in connection with the Plan; or (3) is a D&O Policy or an Insurance Contract." (Doc. No. 5370-1 at 76-77).

13. To date, the Debtors have not assumed or assumed and assigned any executory contracts between the Debtors and Tempur. Therefore, any executory contracts existing between Tempur and the Debtors "shall be deemed automatically rejected" as of the Effective Date of the Plan.

---

[3] Tempur also has a $2,515,081.45 general unsecured claim against Sears, Roebuck and Co. that appears as Claim Number 13051 in Prime Clerk's electronic claims register.

14. In the Confirmation Order, the Court approved the Debtors' Administrative Expense Claims Consent Program.

15. On November 16, 2019, Tempur timely submitted its ballots electing to participate in the Consent Program. That same date, Tempur received an email from M-III, the Debtors' Restructuring Professional tasked with reconciling the Consent Program ballots, requesting Tempur to provide it with a laundry list of information relating to its Priority Claim. Tempur provided all of the applicable requested information on November 25, 2019.

16. Even though Tempur provided the Debtors with all required information, including the supplemental data requested by M-III, and despite language in the Confirmation Order requiring "consensual resolution of the Allowed amount . . . to be completed within 30 days from the date of the [holder's] Opt-In Ballot," Tempur's Priority Claim had not been allowed as of the December 27, 2019 – the Initial Distribution Date – and Tempur was excluded from that distribution.[4] Up to that time, Tempur had heard no dispute of its 503(b)(9) claims from Sears.

17. On April 29, 2020, Tempur filed that *Motion For Order (A) Allowing And Requiring Payment Of 503(B)(9) Claims Of Tempur Sealy International & Affiliates; Or, In The Alternative, (B) Directing Debtors To Set-Aside A Reserve From Future Distributions Under The Administrative Expense Claims Consent Program For The Benefit Of Such Claims* (Doc. No. 7877) (the "Admin Expense Claim Motion") with the Court which pleading is incorporated by reference as if set forth in full here.

18. Following the filing of the Admin Expense Claim Motion, counsel for Tempur has had several communications with counsel for the Debtors. On or about April 30, 2020 – more than a year after Tempur filed its 503(b)(9) Claim – the Debtors, through their counsel and M-III,

---

[4] In that Amended Notice Regarding Initial Distribution Pursuant To Administrative Expense Claims Consent Program (Doc. No. 6280), the Debtors indicated that the Initial Distribution would commence on December 27, 2019.

5

for the first time advised Tempur's counsel that the Debtors disputed Tempur's 503(b)(9) Claim because there were allegedly credits owing by Tempur to the Debtors, the amount of which credits are alleged to exceed Tempur's $2,398,655.12 503(b)(9) Claim (the "Credits").

19. Transform has also recently advised Tempur that, at a minimum, it purchased certain of the Credits for Sealy from the Debtors in connection with the Sale (the "Transform Purchased Credits"). At the same time, the Debtors, via the Claim Objection, are seemingly seeking to set-off Credits in an amount sufficient to extinguish that portion of the 503(b)(9) Claim attributable to Sealy i.e. $1,895,252.80.

20. On June 9, 2020, the Debtors filed the Claim Objection wherein they seek to disallow, in full, Tempur's 503(b)(9) claim due to "outstanding unclaimed credits against which the Debtors' are entitled to setoff." The Debtors' objection provides no additional information. It omits that it sold credits to Transform. It does not identify what credits (by amount, date or any other identifier) it contends can be applied. It does not cite the contractual or other legal basis for the credits it claims.

21. Further, at present, it appears that both the Debtors and Transform are claiming an ownership interest in certain of the Credits, leaving Tempur as the target of inconsistent claims and bearing the risk that the Credits will be applied against it twice by two different entities.

## II.    ARGUMENT

A creditor's filing of a proof of claim that comports with Rule 3001 constitutes *prima facie* evidence of the amount and validity of such creditor's claim. *See* Fed.R.Bankr.P.3001(f); *In re: Planet Hollywood Int'l.*, 274 B.R. 391, 394 (Bankr. D. Del. 2001) (citing *In re Allegheny Int'l., Inc.*, 954 F.2d 167, 173 (3d Cir. 1992)). Tempur's proof of claim was filed in accordance with the Bankruptcy Code and Rule 3001.

6

Once a creditor files a proper proof of claim, the burden then shifts to the debtor to produce evidence to rebut the *prima facie* validity of such claim. *See Sherman v. Novak (In re Reilly),* 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000); *see also* 9 COLLIER ON BANKR. ¶ 3001.9[1] (15th ed. 2003). In meeting its burden of production, the debtor must produce evidence rebutting the filed proof of claim of "probative force equal to the contents of the claim." 9 COLLIER ON BANKR. ¶ 3001.9[1]; *see also In re Brown*, 221 B.R. 46, 47 (Bankr. S.D. Ga. 1998) (holding that under Rule 3001(f) the debtor "bear[s] the initial burden of demonstrating 'by probative force equal to that of the allegations of the proofs of claim themselves' . . . that the claims should not be allowed.").

In order to refute such *prima facie* validity, the party opposing a claim must present evidence sufficient to "negate one or more of the sworn facts in the proof of claim." *In re Allegheny Int'l., Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). An objection alone is insufficient to contest a proof of claim; the objection must contain "probative evidence to call a claim into question." *In re King Resources Co.*, 20 B.R. 191, 197 (D. Colo. 1982); *see also In re Lanza*, 51 B.R. 125, 127 (Bankr. D.N.J. 1985) (finding that "the onus is on the debtor to overcome the presumption of validity"). "An objecting party must provide 'substantial evidence' to rebut the prima facie presumption of validity of a proof of claim." *In re Enron Creditors' Recovery Corp.*, Chapter 11, No. 01-16034, 2007 Bankr. LEXIS 2969, *10 (Bankr. S.D.N.Y. Aug. 28, 2007) (citation omitted).

Here, the Debtors allege that they are entitled to apply certain Credits against the 503(b)(9) Claim while Transform is also seemingly claiming an interest in them. Based on the language in the APA which is of record in the case, and which shows credits transferring to Transform, Debtors have the burden of proving what credits they are claiming and that they still own the credits they claim and those credits have not been sold to Transform. Notwithstanding that burden,

the Debtors' objection offers no evidence, "probative" or otherwise, showing their ownership of the claimed credits.

Even assuming *arguendo* that the Debtors had a contractual right to credits in the past, any executory contract between Tempur and the Debtors is automatically rejected under the Plan on the Effective Date and therefore cannot be asserted by the Debtors. Bankruptcy courts routinely deny attempts by debtors to enforce rights under contracts they have rejected. *See, e.g., In re WorldCom, Inc.*, 2007 U.S. Dist. LEXIS 51147, at *9-10 (S.D.N.Y. July 13, 2007) ("Bankruptcy law does not allow a debtor to reject a contract but still maintain its benefits." (internal quotations omitted)); *Custom Coated Components, Inc. v. Benteler Automotive Corp.*, 2006 U.S. Dist. 38375, at *8-9 (W.D. Mich. June 9, 2006) (same).

Further, rejection of an executory contract constitutes a breach. *See* 11 U.S.C. § 365(g); *Mission Product Holdings, Inc. v. Termpnology, LLC*, 139 S.Ct. 1652, 1661 (2019). According to general contract principles, a party who materially breaches a contract cannot enforce the terms of the contract favorable to it against the non-breaching counterparty. *Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*, 361 F. Supp. 2d 283, 291 (S.D.N.Y. 2005) ("A fundamental principle of contract law provides that the material breach of a contract by one party discharges the contractual obligations of the nonbreaching party"); *Gomez v. MLB Enterprises, Corp.*, 2018 U.S. Dist. LEXIS 96145, at *35 (S.D.N.Y. June 5, 2018) ("Defendants materially breached the arbitration agreements and cannot, now, selectively enforce them against Plaintiffs."). Whether because of the rejection, or because Sears was in breach of the agreements between it and Tempur prepetition, it cannot now enforce any credits to which it otherwise might have been entitled.

Because the Debtors have not offered probative evidence to demonstrate that they are indeed the owners of the alleged Credits or that the Credits themselves are valid and due and owing

8

to them, Tempur's 503(b)(9) Claim should be deemed allowed. Tempur reserves all of its rights and defenses and, to the extent that the Debtors later offer any support for their objection, Tempur reserves the right to amend and supplement this response.

### III.  CONCLUSION

This Court should allow Tempur's 503(b)(9) Claim in the full amount of $2,398,655.12, and also order that it share in the upcoming second distribution.

Date: August 3, 2020

Respectfully submitted,

/s/ Lea Pauley Goff
Lea Pauley Goff
(admitted *pro hac vice*)
Emily L. Pagorski
(admitted *pro hac vice*)
Stoll Keenon Ogden PLLC
500 West Jefferson Street
Suite 2000
Louisville, Kentucky  40202
(502) 333-6000
lea.goff@skofirm.com
emily.pagorski@skofirm.com

Counsel for Creditor,
Tempur Sealy International, Inc. and its affiliates

8250590.1