HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, New York 10016
Telephone: (212) 592-1400
Facsimile: (212) 592-1500
Sean E. O'Donnell
Stephen B. Selbst
Steven B. Smith
Christopher Carty

*Special Conflicts Counsel to the Official Committee of*
*Unsecured Creditors of Sears Holdings Corporation, et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SEARS HOLDINGS CORPORATION, *et al.*, | : | Case No. 18-23538 (RDD) |
| | : | |
| Debtors[1] | : | (Jointly Administered) |
| | : | |
| | : | |

--------------------------------------------------------------- x

**COVER SHEET FOR SECOND INTERIM FEE
APPLICATION OF HERRICK, FEINSTEIN LLP AS SPECIAL
CONFLICTS COUNSEL TO THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION
FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES
FOR THE PERIOD OF PERIOD MARCH 1, 2020 THROUGH JUNE 30, 2020**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); SHC Licensed Business LLC (3718); SHC Promotions LLC (9626); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

| General Information | |
|---|---|
| Name of Applicant: | Herrick, Feinstein LLP ("Herrick") |
| Authorized to Provide Professional Services to: | The Official Committee of Unsecured Creditors and the Litigation Designees[2] |
| Petition Date: | October 15, 2018 |
| Date of Retention: | March 22, 2019 *nunc pro tunc* to January 2, 2019 |
| Prior Applications: | 1 |
| **Summary of Fees and Expenses Sought in this Application** | |
| Period Covered by this Application: | March 1, 2020 through and including June 30, 2020 (the "Compensation Period") |
| Amount of Compensation Sought as Actual, Reasonable and Necessary for the Compensation Period: | $1,185,248.50 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary for the Compensation Period: | $117,625.05 |
| Total Compensation and Expenses Requested for the Compensation Period: | $1,302,873.55 |
| **Summary of Fees and Expenses Allowed Pursuant to Prior Applications** | |
| Total Compensation Approved by Interim Order to Date: | $1,076,531.50 |
| Total Expenses Approved by Interim Order to Date: | $14,827.17 |

---

[2] As described further herein, in addition to its role as special conflicts counsel to the Creditors' Committee in connection with an investigation into the MTN Transactions (as defined herein), Herrick has been retained to serve as special conflicts counsel to act on behalf of the Litigation Designees to investigate, commence, prosecute and otherwise litigate certain matters in connection with the Jointly Asserted Causes of Action. *See Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors and (II) Granting Related Relief*, dated October 15, 2019 [ECF No. 5370] (the "Confirmation Order") ¶ 22 ("In addition, without further order of this Court, the Litigation Designees may retain such additional professionals or consultants (including attorneys, accountants, appraisers, financial advisors, expert witnesses or other parties determined by the Initial Litigation Designees to have qualifications necessary or desirable to assist in the investigation, prosecution and/or settlement of the Jointly Asserted Causes of Action) . . . ").

HF 13432610v.4

| | |
|---|---|
| Total Compensation and Expenses Approved by Interim Order to Date: | $1,091,358.67 |
| Total Allowed Compensation Paid to Date: | $1,076,531.50 |
| Total Allowed Expenses Paid to Date | $14,827.17 |
| Total Allowed Compensation and Expenses Paid to Date: | $1,091,358.67 |
| **Summary of Fees, Professionals, Rates and Budget in this Application** | |
| Compensation Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed (80% of Fees): | $606,348.00[3] |
| Expenses Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed (100% of Expenses): | $61,491.73 |
| Total Compensation and Expenses Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $667,839.73 |
| Total Compensation and Expenses Sought in this Application Not Yet Paid: | $635,033.82 |
| Voluntary Fee Waiver and Expense Reduction in this Compensation Period: | $2,069.00[4] |
| **Summary of Fees and Expenses Sought in this Application** | |
| Blended Rate in this Application for All Attorneys: | $546.09 |

---

[3] Herrick has received $606,348.00 (80% of $757,935.00) as compensation for services rendered during the period of March 1, 2020 through April 30, 2020, as requested in the Sixth Monthly Fee Statement (as defined below). Herrick has not yet received (i) $178,694.80 (80% of $223,368.50) as compensation for services rendered during the period of May 1, 2020 through May 31, 2020, as requested in the Seventh Monthly Fee Statement (as defined below) and (ii) $164,811.20 (80% of $206,014.00) as compensation for services rendered during the period of June 1, 2020 through June 30, 2020, as requested in the Eighth Monthly Fee Statement (as defined below).

[4] Herrick voluntarily reduced its fees prior to filing this Application. The voluntary fee and expense reductions relate to, among other things: (i) duplicative work or work performed by professionals or paraprofessionals billing a *de minimis* amount of time to the Chapter 11 Cases during the applicable period and (ii) fees incurred in connection with certain administrative tasks. Consequently, Herrick does not seek payment of these fees and expenses in this Application.

iii

| Blended Rate in this Application for All Timekeepers: | $521.68 |
| --- | --- |
| Number of Timekeepers Included in this Application: | 14 (11 attorneys; 3 paraprofessionals) |
| Number of Attorneys Billing Fewer than 15 Hours to the Case During the Compensation Period: | 1 |
| Increase in Rates Since Date of Retention: | 1[5] |
| Interim or Final Application: | Interim |

---

[5] Herrick increased its rates on January 1, 2020, consistent with its customary practice and as disclosed in the Herrick Retention Application (as defined herein).

iv

## SUMMARY OF MONTHLY FEE STATEMENTS

| DATE FILED | ECF NO. | PERIOD COVERED | FEES REQUESTED | EXPENSES REQUESTED | FEES PAID | EXPENSES PAID |
|---|---|---|---|---|---|---|
| 06/02/20 | 7998 | 3/1/2020 – 4/30/20 | $606,348.00 (80% of $757,935.00) | $61,491.73 | $606,348.00 | $61,491.73 |
| 07/06/20 | 8215 | 5/1/20 – 5/31/20 | $178,694.80 (80% of $223,368.50) | $44,492.40 | 0 | 0 |
| 07/20/20 | 8314 | 6/1/20 – 6/30/20 | $164,811.20 (80% of $206,014.00) | $11,640.42 | 0 | 0 |

<u>Summary of Any Objections to Monthly Fee Statements</u>: None

<u>Compensation and Expenses Sought in This Application Not Yet Paid</u>: $635,033.82

v

## COMPENSATION BY PROFESSIONAL
## MARCH 1, 2020 THROUGH AND INCLUDING JUNE 30, 2020

| Name of Professional | Position | Department | Year Admitted | Hourly Billing Rate 2020 | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| O'Donnell, Sean | Partner | Restructuring & Finance Litigation | 1998 | $1,025.00 | 57.20 | $58,630.00 |
| D'Angelo, Jason A. | Partner | Restructuring & Finance Litigation | 1998 | $845.00 | 63.90 | $53,995.50 |
| Carty, Christopher | Partner | Restructuring & Finance Litigation | 2010 | $785.00 | 332.5 | $261,012.50 |
| Smith, Steven B. | Partner | Restructuring & Finance Litigation | 2001 | $765.00 | 34.20 | $26,163.00 |
| Kolb, Kyle J. | Counsel | Restructuring & Finance Litigation | 2012 | $610.00 | 255.90 | $156,099.00 |
| Anderson, Conor | Associate | Restructuring & Finance Litigation | 2019 | $415.00 | 14.90 | $6,183.50 |
| Field, Daniel | Associate | Restructuring & Finance Litigation | 2017 | $435.00 | 88.10 | $38,323.50 |

HF 13432610v.4

| Stockman, Silvia | Associate | Restructuring & Finance Litigation | 2016 | $435.00 | 32.60 | $14,181.00 |
|---|---|---|---|---|---|---|
| Zimmer, Heather | Associate | Restructuring & Finance Litigation | 2017 | $435.00 | 420.90 | $183,091.50 |
| Fromer, Gabrielle R. | Associate | Restructuring & Finance Litigation | 2018 | $420.00 | 284.40 | $119,448.00 |
| Plowman, Elizabeth J. | Associate | Restructuring & Finance Litigation | 2018 | $420.00 | 412.50 | $173,250.00 |
| Poretsky, Larisa | Paralegal | Restructuring & Finance Litigation | N/A | $390.00 | 41.70 | $16,263.00 |
| Schepp, Linda | Paralegal | Restructuring & Finance Litigation | N/A | $335.00 | 227.20 | $76,112.00 |
| Hassall, Neil D. | Paralegal | Litigation | N/A | $390.00 | 6.40 | $2,496.00 |

vii

**TOTAL FEES FOR THE COMPENSATION PERIOD**

| PROFESSIONALS | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners | $819.60 | 487.80 | $399,801.00 |
| Counsel | $610.00 | 255.90 | $156,099.00 |
| Associates | $426.56 | 1,253.00 | $534,477.50 |
| Paraprofessionals | $346.03 | 275.30 | $94,871.00 |
| **Blended Attorney Rate** | **$546.09** | | |
| **Blended Rate for All Timekeepers** | **$521.68** | | |
| **Total Fees Incurred** | | | **$1,185,248.50** |

HF 13432610v.4

**TOTAL BY TASK CODE**
**MARCH 1, 2020 THROUGH AND INCLUDING JUNE 30, 2020**

| Task Code[6] | Total Hours Billed | Total Amount |
|---|---|---|
| Fee/Employment Applications - B160 | 87.70 | $50,165.50 |
| Contested Matters - B190 | 212.00 | $111,556.50 |
| Jointly Asserted Causes of Action | 1,972.10 | $1,023,526.50 |
| **Total** | **2,272.00** | **$1,185,248.50** |

---

[6] The fees related to task codes B160 and B190 are Herrick's fees attributable to the services it performs as counsel to the Creditors' Committee in connection with the Chapter 11 Cases, and such fees are paid out of the Debtors' carve-out account. Pursuant to the terms of the Plan and Confirmation Order, however, Herrick's fees and expenses attributable to the services it performs in connection with the Jointly Asserted Causes of Action are paid out of a segregated account established to provide initial funding for such litigation. *See* Confirmation Order ¶ 52(d).

ix

**EXPENSE SUMMARY**
**MARCH 1, 2020 THROUGH AND INCLUDING JUNE 30, 2020**

| Description | Amount billed |
|---|---:|
| Photocopies – Inside | $2.88 |
| Shipping | $123.52 |
| Duplicating Supplies | $49.18 |
| Expert Witness Fees | $114,245 |
| Meals | $22.48 |
| Color Duplicating | $3.08 |
| Teleconferencing | $210.00 |
| Velobind/binding | $20.00 |
| E-copy | $7.38 |
| Pacer Charges | $265.40 |
| Online Research West | $916.29 |
| Printing | $40.14 |
| Printing – Blowback | $718.70 |
| Document Processing | $601.00 |
| E-Discovery Data Hosting Minimum Charge | $400.00 |
| **Total** | **$117,625.05** |

x

HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, New York 10016
Telephone: (212) 592-1400
Facsimile: (212) 592-1500
Sean E. O'Donnell
Stephen B. Selbst
Steven B. Smith
Christopher Carty

*Special Conflicts Counsel to the Official Committee of*
*Unsecured Creditors of Sears Holdings Corporation, et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x

In re:                                            :       Chapter 11
                                                  :
SEARS HOLDINGS CORPORATION, *et al.*,             :       Case No. 18-23538 (RDD)
                                                  :
                    Debtors[1]                    :       (Jointly Administered)
                                                  :
                                                  :
                                                  :
---------------------------------------------------------------- x

**SECOND INTERIM FEE APPLICATION OF HERRICK, FEINSTEIN LLP**
**AS SPECIAL CONFLICTS COUNSEL TO THE OFFICIAL COMMITTEE**
**OF UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION**
**FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE**
**PERIOD OF MARCH 1, 2020 THROUGH AND INCLUDING JUNE 30, 2020**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); SHC Licensed Business LLC (3718); SHC Promotions LLC (9626); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Herrick Feinstein LLP ("Herrick"), special conflicts counsel to the Official Committee of Unsecured Creditors (the "Creditors' Committee") appointed in the above-captioned chapter 11 cases (the "Chapter 11 Cases") of Sears Holding Corporation and its affiliated debtors and debtors in possession (collectively, the "Debtors"), hereby respectfully submits its second application (the "Application"),[2] pursuant to sections 330(a) and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), requesting interim allowance of compensation for services rendered to the Creditors' Committee and the Litigation Designees by Herrick for the period of March 1, 2020 through and including June 30, 2020 (the "Compensation Period") and for reimbursement of expenses incurred in connection therewith. In support of this Application, Herrick respectfully submits the declaration of Stephen B. Selbst, a partner at Herrick (the "Selbst Declaration"), which is attached hereto as **Exhibit A** and incorporated by reference into this Application. In further support of this Application, Herrick respectfully represents as follows.

## **INTRODUCTION**

1.      By this Application, Herrick seeks (i) interim allowance of compensation for the professional services rendered by Herrick during the Compensation Period in the amount of $1,185,248.50, representing 1,996.70 hours of professional services and 275.30 hours of paraprofessional and other non-legal services, and (ii) reimbursement of actual and necessary expenses incurred by Herrick during the Compensation Period in the amount of $117,625.05.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors and (II) Granting Related Relief*, dated October 15, 2019 [ECF No. 5370] (the "Confirmation Order") or the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors, dated October 15, 2019* [ECF No. 5370] (the "Plan"), as applicable.

HF 13432610v.4

2.      This Application has been prepared in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the *Order Authorizing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [ECF No. 796] (the "Interim Compensation Order"), the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York (June 17, 2013) promulgated pursuant to Local Bankruptcy Rule 2016-1(a) (the "Local Guidelines") and the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 for Attorneys in Larger Chapter 11 Cases, effective as of November 1, 2013 (the "U.S. Trustee Guidelines" and, together with the Local Guidelines, the "Fee Guidelines").

3.      The Chair (as defined herein) of the Creditors' Committee has been given the opportunity to review this Application and has approved the compensation and reimbursement of expenses requested herein.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory bases for the relief requested herein are Bankruptcy Code sections 330 and 331, Bankruptcy Rule 2016 and Local Bankruptcy Rule 2016-1.

## BACKGROUND

### A.      The Debtors' Chapter 11 Cases

7.      On October 15, 2018 (the "Petition Date"), and continuing thereafter, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses as debtors in possession pursuant to Bankruptcy Code sections

3

1107(a) and 1108. The Chapter 11 Cases are jointly administered for procedural purposes only. No trustee or examiner has been appointed in the Chapter 11 Cases.

8.      On October 24, 2018 (the "Formation Date"), the Office of the United States Trustee for Region 2 (the "U.S. Trustee") appointed the Creditors' Committee pursuant to Bankruptcy Code section 1102(a). *Notice of Appointment of Official Committee of Unsecured Creditors* [ECF No. 276]. The Creditors' Committee currently comprises seven members.[3] Simon Property Group, L.P. serves as chair of the Creditors' Committee (the "Chair").

**B.      Herrick's Role as Special Conflicts Counsel in Connection with an Investigation of the MTN Transactions**

9.      On November 9, 2018, the Debtors filed an emergency motion [ECF No. 642] (the "Sale Motion"), seeking to monetize certain Medium-Term Notes Series B (the "MTNs") issued by Debtor Sears Roebuck Acceptance Corp. ("SRAC") (collectively, the "MTN Transactions") in advance of an auction (the "CDS Auction") to be conducted by the International Swaps and Derivatives Association ("ISDA"). The value of the MTNs spiked temporarily because of the demand for qualifying SRAC obligations to tender into the CDS Auction. *See* Sale Motion ¶ 11. The Debtors sought to capitalize on this opportunity and engaged Jefferies LLC to manage and conduct the sale process for the MTNs. On November 15, 2018, the Court granted the relief requested by the Sale Motion and entered an order approving the sale of the MTNs [ECF No. 826] (the "Sale Order").

10.      However, following the auction and the Court's approval of the sale of MTNs to Cyrus, other interested bidders filed objections challenging the sale of the MTN's to Cyrus,

---

[3] The following entities currently comprise the Creditors' Committee: (i) The Bank of New York Mellon Trust Company, N.A., as Indenture Trustee; (ii) Brixmor Operating Partnership, L.P.; (iii) Computershare Trust Company, N.A.; (iv) Oswaldo Cruz; (v) Pension Benefit Guaranty Corporation ("PBGC"); (vi) Simon Property Group, L.P.; and (vii) Winiadaewoo Electronics America, Inc. *See Amended Notice of Appointment of Official Committee of Unsecured Creditors*, dated March 31, 2020 [ECF No. 7539].

HF 13432610v.4

arguing that additional value was available for the Debtors' estate provided that the Court reopen

the auction. On December 20, 2018, having agreed that the Sale Order did not authorize the

Debtors to restrict the sale of the MTNs held by Sears Reinsurance Company, Ltd. ("Sears Re"),

the Court ordered the Debtors to file a notice and provide parties with the opportunity to object to

the transaction with Cyrus (including the "lock-up" of the MTNs held by Sears Re) and submit

new competing bids for the acquisition of all or a portion of the Debtors' MTNs by December 31,

2018.

11.      Notwithstanding the ardent interest shown in freeing up the sale of additional

MTNs, none of the objectors to the sale filed an objection or confirmed its prior offer to purchase

MTNs. The only response received on December 31, 2018 was from Cyrus, in which it alluded to

"derisk[ing]" transactions that had occurred subsequent to the December 20 Hearing. [ECF No.

1455] ¶ 28 (noting that "Cyrus has begun closing out CDS positions with CDS counterparties to

derisk itself from its CDS exposure.")

12.      At the January 2, 2019 hearing, the Court commented that it was "odd . . . that a

financial institution . . . withdrew a bid that they had proudly announced at the last hearing before

the deadline to submit such a bid officially." Jan. 2, 2019 Hr'g Tr. 12:12-17. And the Debtors

noted that the lack of competing bids was "troubling." The Creditors' Committee explained to the

Court that it would be investigating the MTN Transactions to determine whether any improper

conduct occurred that halted further bidding and whether the MTN Transactions, and various other

related transactions prevented the Debtors from realizing additional value from the MTNs.

13.      On January 2, 2019, the Creditors' Committee selected Herrick as its special

conflicts counsel in connection with the Chapter 11 Cases in order to investigate the MTN

Transactions. On February 13, 2019, the Creditors' Committee filed its application to retain and

employ Herrick as its special conflicts counsel [ECF No. 2574] (the "Herrick Retention

5

Application"), which application was authorized by an order of this Court dated March 21, 2019 [ECF No. 2936] (the "Herrick Retention Order").

14.     The Herrick Retention Order authorizes the Creditors' Committee to retain and employ Herrick in accordance with Herrick's normal hourly rates and disbursement policies, *nunc pro tunc* to January 2, 2019, all as contemplated by the Herrick Retention Application. Specifically, the Herrick Retention Order authorizes Herrick to be compensated on an hourly basis and to be reimbursed for actual and necessary out-of-pocket expenses.

15.     On January 12, 2019, Herrick, on behalf of the Creditors' Committee, filed its motion pursuant to Bankruptcy Rule 2004 [ECF No. 1557] seeking to examine certain CDS participants who were either involved with the MTN Transactions or who opposed the sale of the MTNs. On February 15, 2019, the Court entered the *Order Pursuant To Bankruptcy Code Sections 105 And 1103 And Federal Rules Of Bankruptcy Procedure 2004 And 9016 Authorizing The Examination Of The CDS Participants* [ECF No. 2628] (the "Rule 2004 Order"). Herrick serves as the Creditors' Committee special counsel with respect to the investigation authorized by the Rule 2004 Order (the "Rule 2004 Investigation").

## C.     Herrick's Role as Special Conflicts Counsel in Connection with Certain of the Jointly Asserted Causes of Action

16.     On October 15, 2019, the Court entered the Confirmation Order [ECF No. 5370] approving the Plan. Pursuant to the Confirmation Order, the Creditors' Committee was granted joint standing with the Debtors to commence, prosecute, settle and otherwise dispose of the: (i) Specified Causes of Action; (ii) other Preserved Causes of Action against the ESL Parties; (iii) all claims and causes of action asserted in the pending adversary proceeding captioned *Sears Holdings Corp. v. Lampert*, Adv. Pro. 19-08250 (RDD) (Bankr. S.D.N.Y.) (the "Adversary Proceeding") and any other claims or causes of action ancillary thereto; and (iv) claims or causes

6

of action against insurance carriers related to coverage for claims asserted in the Adversary Proceeding (the foregoing referred to collectively as the "Jointly Asserted Causes of Action").

17.     Herrick serves as special conflicts counsel in connection with certain matters related to the Jointly Asserted Causes of Action, as overseen by the Litigation Designees.[4]

**D.    Prior Fee Applications and Monthly Fee Statements Filed During the Compensation Period[5]**

18.     On May 14, 2020, Herrick filed and served the *First Interim Fee Application of Herrick, Feinstein LLP as Special Conflict Counsel to the Official Committee of Unsecured Creditors for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period of January 2, 2019 Through and Including February 29, 2020* [ECF No. 7958 (the "First Interim Fee Application"). Pursuant to the First Interim Fee Application, Herrick requested interim allowance of fees in the amount of $1,076,531.50 and reimbursement of expenses in the amount of $14,827.17 for the period from January 2, 2019 Through and Including February 29, 2020. There were no objections to the First Interim Fee Application and, on June 18, 2020, the Court entered an order approving the First Interim Fee Application [ECF No. 8036] (the "Fourth Interim Fee Order"). Pursuant to the Fourth Interim Fee Order, on July 21, 2020, Herrick received payment of $205,106.74 (representing the 20% of fees withheld from the payments made on account of the monthly fee statements subject to the First Interim Fee Application).[6]

---

[4] Consistent with the terms of the Confirmation Order, which authorizes the Litigation Designees to retain additional attorneys in connection with prosecution of the Adversary Proceeding without further order of the Court, *see* Confirmation Order ¶ 22, Herrick has been retained as special conflicts counsel in connection with certain conflict matters related to the Jointly Asserted Causes of Action.

[5] Herrick's fees and expenses attributable to the services it performs as counsel to the Creditors' Committee in connection with the Chapter 11 Cases are paid out of the Debtors' carve-out account. Pursuant to the terms of the Plan and Confirmation Order, however, Herrick's fees and expenses attributable to the services it performs in connection with the Jointly Asserted Causes of Action are paid out of a segregated account established to provide initial funding for such litigation. *See* Confirmation Order ¶ 52(d).

[6] On May 20, 2019, Herrick filed and served the *First Monthly Fee Statement of Herrick, Feinstein LLP for Professional Services Rendered and Disbursements Incurred as Special Conflict Counsel to the Official Committee of Unsecured Creditors for the period of January 2, 2019 through March 31, 2019* [ECF No. 3951] in which Herrick requested

7

19.    On June 20, 2020, Herrick filed and served the *Sixth Combined Monthly Fee Statement of Herrick, Feinstein LLP for Professional Services Rendered and Disbursements Incurred as Special Conflicts Counsel to the Official Committee of Unsecured Creditors for the Period of March 1, 2020 through April 30, 2020* [ECF No. 7998] (the "Sixth Combined Monthly Fee Statement"),[7] pursuant to which Herrick sought payment of (i) $606,348.00 (80% of $757,35.00) as compensation for professional services rendered and (ii) $61,282.01 for reimbursement of expenses. Herrick did not receive any objections to the Sixth Combined Monthly Fee Statement and received payment in respect thereof on July 20, 2020.

20.    On July 6, 2020, Herrick filed and served the *Seventh Monthly Fee Statement of Herrick, Feinstein LLP for Professional Services Rendered and Disbursements Incurred as Special Conflicts Counsel to the Official Committee of Unsecured Creditors for the Period of May*

---

payment of compensation for services rendered in the amount of $227,286.4 (80% of $284,108.00) and reimbursement for expenses in the amount of $3,179.77. On July 19, 2019, Herrick filed and served the *Second Combined Monthly Fee Statement of Herrick, Feinstein LLP for Professional Services Rendered and Disbursements Incurred as Special Conflicts Counsel to the Official Committee of Unsecured Creditors for the Period of April 1, 2019 through May 31, 2019* [ECF No. 4584] (the "Second Combined Monthly Fee Statement") in which Herrick requested payment of compensation for services rendered in the amount of $92,351.60 (80% of $115,439.50) and reimbursement for expenses in the amount of $1,040.57. On November 12, 2019, Herrick filed and served the *Third Combined Monthly Fee Statement of Herrick, Feinstein LLP for Professional Services Rendered and Disbursements Incurred as Special Conflicts Counsel to the Official Committee of Unsecured Creditors for the Period of June 1, 2019 through August 31, 2019* [ECF No. 5989] (the "Third Combined Monthly Fee  Statement") in which Herrick requested payment of compensation for services rendered in the amount of $95,720.40 (80% of $119,650.50) and reimbursement for expenses in the amount of $627.56. On December 10, 2019, Herrick filed and served the *Fourth Combined Monthly Fee Statement of Herrick, Feinstein LLP for Professional Services Rendered and Disbursements Incurred as Special Conflicts Counsel to the Official Committee of Unsecured Creditors for the Period of September 1, 2019 through August 31, 2019* [ECF No. 6173] (the "Fourth Combined Monthly Fee  Statement") in which Herrick requested payment of compensation for services rendered in the amount of $69,929.29 (80% of $87,411.50) and reimbursement for expenses in the amount of $627.56. On March 24, 2020, Herrick filed and served the *Fifth Combined Monthly Fee Statement of Herrick, Feinstein LLP for Professional Services Rendered and Disbursements Incurred as Special Conflicts Counsel to the Official Committee of Unsecured Creditors for the Period of November 1, 2019 through February 29, 2020* [ECF No. 7507] (the "Fifth Combined Monthly Fee  Statement") in which Herrick requested payment of compensation for services rendered in the amount of $386,137.16 (80% of $482,671.45) and reimbursement for expenses in the amount of $9,725.45.

[7] A copy of the Sixth Combined Monthly Fee Statement can be accessed at:
https://restructuring.primeclerk.com/sears/Home-DocketInfo?DockSearchValue=7998#

HF 13432610v.4

*1, 2020 through May 31, 2020* [ECF No. 8215] (the "Seventh Monthly Fee Statement"),[8] pursuant to which Herrick sought payment of (i) $178,694.80 (80% of $223,368.50) as compensation for professional services rendered and (ii) $44,492.40 for reimbursement of expenses. Herrick did not receive any objections to the Seventh Monthly Fee Statement. As of the date this Application, Herrick has not yet received payment in respect of the Seventh Monthly Fee Statement.

21.     On July 20, 2020, Herrick filed and served the *Eighth Monthly Fee Statement of Herrick, Feinstein LLP for Professional Services Rendered and Disbursements Incurred as Special Conflicts Counsel to the Official Committee of Unsecured Creditors for the Period of June 1, 2020 through June 30, 2020* [ECF No. 8314] (the "Eighth Monthly Fee Statement"),[9] pursuant to which Herrick sought payment of (i) $164,81.20 (80% of $206,014.00) as compensation for professional services rendered and (ii) $11,640.42 for reimbursement of expenses. Herrick did not receive any objections to the Eighth Monthly Fee Statement.  As of the date this Application, Herrick has not yet received payment in respect of the Eighth Monthly Fee Statement.

## SUMMARY OF PROFESSIONAL COMPENSATION
## AND REIMBURSEMENT OF EXPENSES REQUESTED

22.     By this Application, Herrick respectfully requests allowance of interim compensation for professional services rendered to the Creditors' Committee during the Compensation Period in the amount of $1,185,248.50 and expense reimbursements of $117,625.05.  During the Compensation Period, Herrick attorneys and paraprofessionals expended a total of 2,272 hours for which compensation is sought.

---

[8] A copy of the Seventh Monthly Fee Statement can be accessed at:
https://restructuring.primeclerk.com/sears/Home-DocketInfo?DockSearchValue=8215#

[9] A copy of the Eighth Combined Monthly Fee Statement can be accessed at:
https://restructuring.primeclerk.com/sears/Home-DocketInfo?DockSearchValue=8314#

HF 13432610v.4

23.     The fees charged by Herrick in the Chapter 11 Cases are billed in accordance with Herrick's existing billing rates and procedures in effect during the Compensation Period. The rates Herrick charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Herrick charges for professional and paraprofessional services rendered in comparable non-bankruptcy related matters. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market. The disclosures required by the U.S. Trustee Guidelines regarding the customary and comparable compensation are annexed hereto as **Exhibit B**.

24.     Herrick maintains computerized records of the time spent by all Herrick professionals and paraprofessionals in connection with its representation of the Creditors' Committee in the Chapter 11 Cases. A summary of compensation by timekeeper is attached hereto in **Exhibit C**, and a summary of fees by task code is attached hereto in **Exhibit D**. The itemized time records for Herrick professionals and paraprofessionals performing services for the Creditors' Committee during the Compensation Period records have been filed and served in the Monthly Fee Statements in accordance with the Interim Compensation Order.

25.     Herrick also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services. A summary of the categories of expenses and amounts for which reimbursement is requested by this Application is attached hereto as **Exhibit E**.

26.     Herrick's staffing plan and budget for the Compensation Period is attached hereto as **Exhibit F**.

## SUMMARY OF SERVICES PERFORMED BY
## HERRICK DURING THE COMPENSATION PERIOD

10

27.     The services provided by Herrick during the Compensation Period were actual and necessary for the administration of the Chapter 11 Cases, performed at the request of the Creditors' Committee and commensurate with the complexity and significance of the matter. The variety and complexity of the issues in the Chapter 11 Cases and the need to act or respond to such issues on an expedited basis in furtherance of the Creditors' Committee's needs and the interests of the Debtors' unsecured creditors required the expenditure of significant time by Herrick professionals and paraprofessionals from numerous legal disciplines during the Compensation Period.

28.     The following is a summary of the professional services rendered by Herrick during the Compensation Period. This summary is organized in accordance with the ABA Bankruptcy Code Set, commonly used in bankruptcy matters. In classifying services into task codes, Herrick attempted to place the services performed in the category that most closely related to the services provided. The below does not include summaries for certain task codes for which a *de minimis* amount of time was billed during the Compensation Period.

29.     Moreover, the following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed. Rather, it merely is an attempt to highlight certain of those areas in which services were rendered to the Creditors' Committee, as well as to identify some of the matters and issues that Herrick was required to address during the Compensation Period.

## B160 - FEE/EMPLOYMENT APPLICATIONS

| Total Hours | Fees |
|:---:|:---:|
| 87.70 | $50,165.50 |

30.     This category includes the time spent by Herrick professionals and paraprofessionals preparing and drafting, *inter alia*: (i) the First Interim Fee Application; and

11

(ii) the Monthly Fee Statements.    This category also includes the time spent by Herrick professionals preparing for, and attending, the hearing on the First Interim Fee Application.

31.    Pursuant to the Interim Compensation Order, each of the Monthly Fee Statements contained a list of individuals who rendered services to the Creditors' Committee during the relevant compensation period, information as to each individual's title, billing rate and hours worked and a comprehensive breakdown of the fees incurred and disbursements expended. To minimize costs in connection with this time-intensive process, Herrick relied on paraprofessionals to prepare the initial drafts of the Retaining Application and Monthly Fee Statements, thereby limiting the time spent by attorneys on the review of fees, where reasonably practicable.

32.    Herrick professionals and paraprofessionals have also communicated with, and responded to requests from, representatives from M-III Partners respecting, among other things, weekly accrual information.

## B190 - CONTESTED MATTERS (EXCLU. ASSUMPTION/REJECTION)

| Total Hours | Fees |
|:---:|:---:|
| 212.60 | $111,556.50 |

33.    This category includes time spent by Herrick professionals and paraprofessionals in connection with their role as Special Conflicts Counsel to the Creditors' Committee, pursuant to the Herrick Retention Order. Through this role, Herrick is, among other things, conducting the Rule 2004 Investigation, as authorized by the Rule 2004 Order, of the Debtors' sale of certain MTNs issued by Debtor SRAC (the "MTN Auction") and is authorized to obtain, and has obtained extensive, discovery from certain participants in the MTN Auction (the "CDS Participants").

12

34.     In furtherance of the Rule 2004 Order, during the Compensation Period, Herrick professionals and paraprofessionals, among other things: (i) prepared and provided an interim update to the Creditors' Committee summarizing our findings; (ii) conducted diligence on and finalized the retention of a firm with expertise in areas relevant to the MTN Investigation; (iii) worked with those consultants in order to further analyze issues relating to the conduct at issue in the MTN investigation; (iv) with the assistance of those consultants, participated in multiple meet and confer negotiations regarding the scope of certain additional information requested from each of the CDS Participants; (v) finalized subpoenas to obtain deposition testimony from a witness from each of the CDS Participants as authorized by the Rule 2004 Order; and (vi) prepared for those depositions.

35.     This work included thorough analysis of documents produced by the CDS Participants and certain publicly available information, extensive discussion of the underlying facts of the MTN Investigation with the consultants retained by the Creditors' Committee, and work product in preparation for depositions. Furthermore, the consultants generated their own work product regarding certain aspects of the CDS marketplace and ISDA auction process, which we have analyzed and relied upon.

## JOINTLY ASSERTED CAUSES OF ACTION

| Total Hours | Fees |
|:---:|:---:|
| 1,972.10 | $1,023,526.50 |

36.     This category includes time spent by Herrick attorneys in connection with their role as Special Conflicts Counsel to the Creditors' Committee, acting on behalf of the Debtors' Estates

13

(as to the Cyrus Defendants[10] and certain recipients of third-party subpoenas) in the Adversary Proceeding.

37.     During the Compensation Period, Herrick professionals and paraprofessionals, among other things: (i) investigated the related-party transactions that preceded the commencement of the Chapter 11 Cases and claims arising therefrom, including the Jointly Asserted Causes of Action; (ii) reviewed and provided comments on an amended adversary complaint drafted and filed by Primary Trust Litigation Counsel [Adv. Pro. No. 19-08250; ECF No. 52] (the "First Amended Adversary Complaint") in the Adversary Proceeding; and (iii) engaged in discovery with the Cyrus Defendants and certain third parties.

38.     During the Compensation Period, Herrick attorneys, among other things: (i) negotiated the scope of the production of documents in response to document requests that were served on the Cyrus Defendants named in the First Amended Adversary Complaint and approximately eight third parties, which included numerous conversations with counsel to third parties and the ESL Defendants and Edward Lampert concerning parameters and search terms for the production of documents; (ii) reviewed the voluminous discovery—including nearly 70,000 documents produced by third parties that Herrick attorneys had responsibility for taking discovery of—produced in connection with the Adversary Proceeding and prepared legal memoranda analyzing pertinent issues developed from information contained in documents; (iii) performed legal research related to issues raised in the Cyrus Defendants' Motion to Dismiss and drafted Plaintiffs' brief in opposition to the Cyrus Defendants' Motion to Dismiss, which was filed with the Court on April 30, 2020 [Adv. Pro. No. 19-08250; ECF No. 166]; (iv) reviewed and analyzed

---

[10] As defined in the First Amended Adversary Complaint, the "Cyrus Defendants" are the following entities: Cyrus Capital Partners, LP; Crescent 1, LP; Canary SC Master Fund, LP; CYR Fund, LP; CMH VI, LP; Cyrus Opportunities Master Fund II, Ltd.; CRS Master Fund, LP; Canary SC Master Fund, LP; Cyrus Select Opportunities Master Fund, Ltd.; Cyrus Special Strategies Master Fund, LP; and Cyrus 1740 Master Fund, LP.

14

the Cyrus Defendants' reply brief in support of their Motion to Dismiss, which was filed on June 15, 2020 [Adv. Pro. No. 19-08250; ECF No. 188]; (v) conducted research, reviewed supporting documentation, and analyzed claims to be asserted against certain other third parties; (vi) assisted with drafting Plaintiffs' initial disclosures and revisions to the Amended Rule 26(f) Report; and (vii) prepared for and attended the Pretrial Conference before Judge Drain on June 9, 2020.

## ACTUAL AND NECESSARY DISBURSEMENTS

39.    Herrick seeks allowance of reimbursement of expenses in the amount of $117,625.05 for expenses incurred during the Compensation Period in the course of providing professional services to the Creditors' Committee. Herrick's disbursement policies pass through all out-of-pocket expenses at actual cost or an estimated actual cost when the actual cost is difficult to determine. For example, as it relates to computerized research, Herrick believes that it does not make a profit on that service as a whole although the cost of any particular search is difficult to ascertain. Other reimbursable expenses (whether the service is performed by Herrick in-house or through a third party vendor) include, but are not limited to, long-distance calls, overtime meals, deliveries, court costs, transcript fees, discovery and temporary legal staffing services, travel and clerk fees.

## FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

40.    Bankruptcy Code section 330 provides, in relevant part, that the Court may award to a professional person "reasonable compensation for actual, necessary services rendered[.]" *See* 11 U.S.C. § 330(a)(1). In turn, Bankruptcy Code section 330 provides as follows:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;

15

> (C)     whether the services were necessary to the administration of, or
>          beneficial at the time at which the service was rendered toward
>          the completion of, a case under this title;
>
> (D)     whether the services were performed within a reasonable
>          amount of time commensurate with the complexity, importance,
>          and nature of the problem, issue, or task addressed; and
>
> (E)     with respect to a professional person, whether the person is
>          board certified or otherwise has demonstrated skill and
>          experience in the bankruptcy field; and
>
> (F)     whether the compensation is reasonably based on the customary
>          compensation charged by comparably skilled practitioners in
>          cases other than cases under this title.

11 U.S.C. § 330(a)(3).

41.     The clear congressional intent and policy expressed in Bankruptcy Code section 330 is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases. *In re Drexel Burnham Lambert Grp., Inc.*, 133 B.R. 13, 20 (Bantu. S.D.N.Y. 1991) ("Congress' objective in requiring that the market, not the Court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal specialists."); *In re Busy Beaver Bldg. Ctrs., Inc.,* 19 F.3d 833, 850 (3d. Cir.1994) (citations and internal quotations omitted) ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts.").

42.     In assessing the "reasonableness" of the fees requested, the Second Circuit has stated that courts should consider the factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, while also incorporating the "lodestar method." *See Arbor Hill Concerned Citizens Neighborhood Ass 'n v. County of Albany and Albany County Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2007) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93, 96 (1989)). The "lodestar method" of calculating the reasonable fee contemplates "the number of hours reasonably expended . . .

16

multiplied by a reasonable hourly rate." *See Hensley v. Eckerhart et al.*, 461 U.S. 424, 433 (1983); *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002*); Perdue v. Kenny A.*, 130 S.Ct. 1662, 1672 (2010); *In re Drexel Burnham Lambert Grp., Inc.* 133 B.R. 13 (Bankr. S.D. N.Y. 1991). The factors set forth in *Johnson* and *In re First Colonial Corp. of Am.*, 544 F.2d 1291, 1298-99 (5th Cir. 1977) have been adopted by most courts.[11] *See In re Nine Assocs., Inc.*, 76 B.R. 943, 945 (S.D.N.Y. 1987) (adopting *First Colonial/Johnson* analysis*); In re Cuisine Magazine, Inc.*, 61 B.R. 210, 212-13 (Bankr. S.D.N.Y 1986) (same); *Green v. City of New York*, 403 Fed. Appx. 626, 629 (2d Cir. 2010) (summary order); *see generally* 3 COLLIER ON BANKRUPTCY ¶ 330.03[9] (Lawrence P. King ed., 16th ed. 2016) (describing *First Colonial* and *Johnson* as the "leading cases to be considered in determining a reasonable allowance of compensation").

43.    Herrick respectfully submits that a consideration of these factors should result in the Court's allowance of the full compensation sought in this Application.

a.    <u>Time and Labor Required</u>. Herrick billed a total of 1,996.7 hours of professional services and 275.3 hours of paraprofessional and other non-legal services during the Compensation Period. As evidenced by this Application, Herrick professionals and paraprofessionals worked diligently and efficiently without unnecessary duplication of efforts throughout the Compensation Period. This is especially true when considering the nature and complexity of the issues that arose in the Chapter 11 Cases during the Compensation Period. In particular, the Compensation Period involved many material issues that required a favorable resolution for the Debtors' estates, including, among other things, the Rule 2004 Investigation and the Jointly Asserted Causes of Action, described in greater detail above. Herrick's representation of the Creditors' Committee and Litigation Designees has required it to balance the need to provide quality services with the need to represent these parties in an effective, efficient and timely manner. Herrick respectfully submits that the hours spent were reasonable given the size and complexity of the Chapter 11 Cases, the significant legal issues raised, and the numerous pleadings filed in the Chapter 11 Cases.

---

[11] The factors articulated by the Fifth Circuit in First Colonial were first articulated by the Fifth Circuit in Johnson, with the First Colonial out adding the factor of the "spirit of economy," which was later rejected by Congress. *See Stroock & Stroock & Lawan V. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*, 127 F.3d 1398, 1403 (11th Cir. 1997).

HF 13432610v.4

b.    <u>Novelty and Difficulty of the Questions</u>. Herrick tasked knowledgeable attorneys to research, analyze and provide advice on difficult and complex bankruptcy, litigation, finance and other issues. As further described herein, Herrick's skilled teams assisted the Creditors' Committee in evaluating, among other things, the bases for various claims against certain CDS participants in connection with the Rule 2004 Investigation and assisted the Litigation Designees in connection with the claims and causes of action subject to the First Amended Adversary Complaint.

c.    <u>Skill Requisite to Perform the Legal Services Properly</u>. Herrick believes that its recognized expertise in the area of bankruptcy litigation and corporate restructuring, its ability to draw from highly experienced professionals in other areas of Herrick's practice and its creative approach to the resolution of issues has benefited the Debtors, the Creditors' Committee and the Litigation Designees. Due to the nature and complexity of the legal issues Herrick was retained to investigate and/or prosecute in the Chapter 11 Cases, Herrick was required to exhibit a high degree of legal skill in areas related to, *inter alia*, bankruptcy, litigation, finance and corporate transaction matters. Additionally, Herrick's strong working relationship with the Creditors' Committee's other legal and financial advisors as well as the legal and financial advisors to other parties in interest enabled Herrick to work with such advisors towards a swift, consensual resolution of many of the salient issues in the 2004 Investigation and the Jointly Asserted Causes of Action.

d.    <u>Preclusion of Other Employment by Applicant Due to Acceptance of the Case</u>. Although Herrick's representation of the Creditors' Committee and the Litigation Designees did not preclude its acceptance of new clients, the demands for immediate and substantive action in connection with the Rule 2004 Investigation and the Jointly Asserted Causes of Action imposed significant burdens on Herrick professionals and paraprofessionals working concurrently on other matters.

e.    <u>Customary Fee</u>. The rates Herrick charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Herrick charges for professional and paraprofessional services rendered in comparable non-bankruptcy matters. Herrick's fee structure also is equivalent to the fee structure used by Herrick for restructuring, workout, bankruptcy, insolvency and comparable matters, as well as similar complex corporate and litigation matters, whether in-court or otherwise, regardless of whether a fee application is required. The firm's customary hourly rates and rate structure reflect that restructuring and related matters typically involve great complexity, numerous tasks requiring a high level of expertise and severe time pressures, as is the case here. Herrick's rate structure is similar to the rate structure used by other, similar law firms that work on other, similar matters.

18

f.      Whether the Fee Is Fixed or Contingent. Pursuant to Bankruptcy Code sections 330 and 331, all fees sought by professionals employed under Bankruptcy Code section 1103 are contingent pending final approval by the Court and are subject to adjustment depending upon the services rendered and the results obtained. The contingency of full and actual compensation to Herrick increased the risk Herrick was assuming by representing the Creditors' Committee and Litigation Designees as special conflicts counsel in the Chapter 11 Cases.

g.      Time Limitations Imposed by the Client or Other Circumstances. As previously set forth herein, Herrick was required to attend to certain issues arising in the Rule 2004 Investigation and Jointly Asserted Causes of Action under compressed timelines. The tremendous efforts of Herrick professionals and paraprofessionals in completing this work permitted the Creditors' Committee and Litigation Designees to address effectively various issues for the benefit of the Debtors' unsecured creditors.

h.      Amount Involved and Results Obtained. Herrick professionals and paraprofessionals worked diligently to maximize value for the Debtors' estates and creditors. During the Compensation Period, and as described in the summary of services herein, Herrick was instrumental in maximizing value for the benefit of unsecured creditors. In particular, Herrick's efforts in connection with, among other things, the Rule 2004 Investigation and the Jointly Asserted Causes of Action, effectively maximized the potential assets available for distribution to unsecured creditors. Herrick respectfully submits that the fees requested in this Application are reasonable and appropriate when considering the results obtained on behalf of unsecured creditors as more fully described in the summary of services.

i.      Experience, Reputation and Ability of Attorneys. Attorneys in Herrick's Finance Litigation & Restructuring group are consistently recognized as leading attorneys in the field of bankruptcy and bankruptcy related litigation as well as creditors' rights, business reorganizations and liquidations under chapter 11 of the Bankruptcy Code. During the Compensation Period, Herrick solicited the skill and expertise of its attorneys, a number of which have practiced law for over 20 years in a number of jurisdictions and legal disciplines. Herrick attorneys have actively represented creditors and creditors' committees, as well as other parties in interest, in a number of the nation's largest chapter 11 cases, including *In re The Weinstein Company Holdings, In re Blackhawk Mining, Inc., In re Boston Generating, LLC, In re Toys "R" Us, Inc., In re GMX Resources, Inc., In re Energy Future Holdings Corp., In re Dynegy Holdings, LLC, In re Edison Mission Energy, Inc., In re Loehmann's Holdings, Inc., In re Global Aviation Holdings, Inc., In re Anderson News, LLC, In re Trico Marine Services, In re American Safety Razor, In re Visteon Corp., In re ATX Communications, Inc., In re Global Crossing, In re Exide Communications, Loral Space and Communications and In re X0 Communications, Inc.*, and many others.

19

Herrick's extensive experience enables it to perform the services described herein competently and expeditiously.

j.    "Undesirability" of the Cases. This factor is not applicable to the Chapter 11 Cases.

k.    Nature and Length of Professional Relationship. Herrick has been rendering professional services to the Creditors' Committee since it was selected as counsel to the Creditors' Committee on January 2, 2019.

44.    For the reasons set forth above, the services rendered by Herrick were necessary and beneficial to the Creditors' Committee and the Litigation Designees and consistently performed in a timely manner. The compensation sought in this Application is reasonable in light of the value of such services to the Creditors' Committee, the Litigation Designees and all unsecured creditors, Herrick's demonstrated skill and expertise in the bankruptcy field (as well as other areas of expertise relevant to the Chapter 11 Cases) and the customary compensation charged by comparably skilled practitioners at Herrick. Accordingly, Herrick respectfully submits that the Court should approve the compensation for professional services and reimbursement of expenses sought herein.

45.    No agreement or understanding exists between Herrick and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with the Chapter 11 Cases. No prior application has been made in this Court or in any other court for the relief requested herein as it relates to the Compensation Period.

**ATTORNEY STATEMENT PURSUANT TO U.S. TRUSTEE GUIDELINES**

46.    The following is provided in response to the request for additional information set forth in ¶ C.5. of the U.S. Trustee Guidelines.

| **Question**: | Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain. |
|---|---|

20

| | |
|---|---|
| <u>Response:</u> | No. |

**<u>Question</u>:**    If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

<u>Response:</u>    Not applicable.

**<u>Question</u>:**    Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

<u>Response:</u>    No.

**<u>Question</u>:**    Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees.

<u>Response:</u>    No.

**<u>Question</u>:**    Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

<u>Response:</u>    See above.

**<u>Question</u>:**    If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

<u>Response:</u>    Herrick disclosed to the Creditors' Committee the hourly rates charged at the time of its retention. Herrick increased its rates on January 1, 2020, consistent with its customary practice and as disclosed in the Herrick Retention Application (as defined herein).

## <u>RESERVATION OF RIGHTS</u>

To the extent that there are services rendered or expenses incurred that relate to the Compensation Period but were not processed prior to the preparation of the Application, Herrick reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

21

## **CONCLUSION**

**WHEREFORE**, Herrick respectfully requests: (i) an interim allowance of compensation for professional services rendered during the Compensation Period in the amount of $1,185,248.50  and expense reimbursement in the amount of $117,625.05; (ii) the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to Herrick's right to seek additional compensation for services performed and expenses incurred during the Compensation Period which were not processed at the time of the Application; and (iii) such other and further relief as the Court deems just, proper and equitable.

HF 13432610v.4

Dated: New York, New York
     August 14, 2020

HERRICK, FEINSTEIN LLP

By: */s/ Stephen B. Selbst*
Sean E. O'Donnell
Stephen B. Selbst
Steven B. Smith
Christopher Carty
Two Park Avenue
New York, NY 10016
Telephone: (212) 592-1400
Facsimile: (212) 592-1500
Email: sodonnell@herrick.com
       sselbst@herrick.com
       ssmith@herrick.com
       ccarty@herrick.com

*Special Conflicts Counsel to the Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al.*

`

HF 13432610v.4

# EXHIBIT A

**CERTIFICATION OF STEPHEN B. SELBST**

HF 13432610v.4

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- x

In re:                                                    :        Chapter 11
                                                          :
SEARS HOLDINGS CORPORATION, *et al.*,                     :        Case No. 18-23538 (RDD)
                                                          :
            Debtors[1]                                    :        (Jointly Administered)
                                                          :
                                                          :
-------------------------------------------------------------- x


**CERTIFICATION UNDER THE FEE GUIDELINES IN RESPECT OF THE**
**SECOND INTERIM FEE APPLICATION OF HERRICK, FEINSTEIN LLP AS**
**SPECIAL CONFLICTS COUNSEL TO THE OFFICIAL COMMITTEE OF**
**UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR**
**SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES**
**FOR THE PERIOD OF MARCH 1, 2020 THROUGH JUNE 30, 2020**

I, Stephen B. Selbst, hereby certify that:[2]

1.      I am a partner with Herrick, a law firm with its main office located at 2 Park

Avenue, New York. Herrick is special conflicts counsel to the Creditors' Committee of Sears

Holdings Corporation and its affiliated debtors and debtors in possession (collectively, the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); SHC Licensed Business LLC (3718); SHC Promotions LLC (9626); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used herein but otherwise not defined shall have the meanings ascribed to such terms in the Application.

"Debtors") and also serves, pursuant to the Confirmation Order, as special conflicts counsel in connection with certain conflicts matters relating to the Adversary Proceeding.

2.      In accordance with the Fee Guidelines, this certification is made with respect to the Application, for interim allowance of compensation and reimbursement of expenses incurred during the Compensation Period.

3.      In respect of section B.1 of the Local Guidelines, I certify that:

     (a)      I have read the Application;

     (b)      to the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Fee Guidelines;

     (c)      the fees and disbursements sought are billed at rates in accordance with those customarily charged by Herrick and generally accepted by Herrick's clients; and

     (d)      in providing a reimbursable service, Herrick does not make a profit on that service, whether the service is performed by Herrick in-house or through a third party.

4.      In accordance with section B.2 of the Local Guidelines and as required by the Interim Compensation Order, I certify that Herrick has complied with those provisions requiring it to provide the Debtors and the Creditors' Committee with a statement of Herrick's fees and disbursements accrued during the previous month, although, due to administrative limitations, such statements were not always provided within the timeframe set forth in the Local Guidelines or the Interim Compensation Order.[3]

5.      In respect of section B.3 of the Local Guidelines, I certify that the Debtors, the U.S. Trustee and the members of the Creditors' Committee are each being provided with a copy of the Application.

Dated: New York, New York                     By: */s/  Stephen B. Selbst*
      August 14, 2020                           Stephen B. Selbst

---

[3] We have been sending Herrick's weekly accrual information to M-III Partners, L.P., the Debtors' restructuring advisors, since the Summery of 2019, on a weekly basis or as soon thereafter as was reasonably practicable.

## **EXHIBIT B**

**CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURE**

| Blended Hourly Rates | | |
|---|---|---|
| **Category of Timekeeper** | **Billed by Timekeepers NY Office for Preceding Year[1]** | **Billed in this Application** |
| Partner | $749.00 | $819.60 |
| Counsel | $579.00 | $610 |
| Associate | $422.00 | $426.56 |
| Paralegals | $335.00 | $344.61 |
| **All Timekeepers Aggregated** | **$607.00** | **$521.68** |

---

[1] Consistent with the U.S. Trustee Guidelines, this **Exhibit B** discloses the blended hourly rate for the aggregate of all timekeepers in the domestic offices of Herrick, segregated by category. This data is based on Herrick's prior completed fiscal year.

HF 13432610v.4

# **EXHIBIT C**

## **SUMMARY OF COMPENSATION BY TIMEKEEPER**

| Name of Professional | Position | Department | Year Admitted | Hourly Billing Rate 2020 | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| O'Donnell, Sean | Partner | Restructuring & Finance Litigation | 1998 | $1,025.00 | 57.20 | $58,630.00 |
| D'Angelo, Jason A. | Partner | Restructuring & Finance Litigation | 1998 | $845.00 | 63.90 | $53,995.50 |
| Carty, Christopher | Partner | Restructuring & Finance Litigation | 2010 | $785.00 | 332.59 | $261,012.50 |
| Smith, Steven B. | Partner | Restructuring & Finance Litigation | 2001 | $765.00 | 34.20 | $26,163.00 |
| Kolb, Kyle J. | Counsel | Restructuring & Finance Litigation | 2012 | $610.00 | 255.90 | $156,099.00 |
| Anderson, Conor | Associate | Restructuring & Finance Litigation | 2019 | $415.00 | 14.90 | $6,183.50 |
| Field, Daniel | Associate | Restructuring & Finance Litigation | 2017 | $435.00 | 88.10 | $38,323.50 |
| Stockman, Silvia | Associate | Restructuring & Finance Litigation | 2016 | $435.00 | 32.60 | $14,181.00 |

| Zimmer, Heather | Associate | Restructuring & Finance Litigation | 2017 | $435.00 | 420.90 | $183,091.50 |
|---|---|---|---|---|---|---|
| Fromer, Gabrielle R. | Associate | Restructuring & Finance Litigation | 2018 | $420.00 | 284.40 | $119,448.00 |
| Plowman, Elizabeth J. | Associate | Restructuring & Finance Litigation | 2018 | $420.00 | 412.50 | $173,250.00 |
| Poretsky, Larisa | Paralegal | Restructuring & Finance Litigation | N/A | $390.00 | 41.70 | $16,263.00 |
| Schepp, Linda | Paralegal | Restructuring & Finance Litigation | N/A | $335.00 | 227.20 | $76,112.00 |
| Hassall, Neil D. | Paralegal | Litigation | N/A | $390.00 | 6.40 | $2,496.00 |

# EXHIBIT D

## SUMMARY OF COMPENSATION BY TASK CODE

| Task Code[22] | Task Code Category | Hours Budgeted (Low – High) | Amount Budgeted (Low – High) | Actual Hours | Actual Amount |
|---|---|---|---|---|---|
| B160 | Fee/Employment Applications | 75-100 | $45,000 – $60,000 | 87.70 | $50,165.50 |
| B190 | Contested Matters | 150 – 275 | $80,000 – $150,000 | 212.20 | $111,556.50 |
| | Jointly Asserted Causes of Action | 1,500 – 2,500 | $775,000 – $1,400,000 | 1,972.10 | $1,023,526.50 |
| **TOTAL** | | **1,725 – 2,875** | **$900,000 – $1,610,000** | **2,272.00** | **$1,185,248.50** |

---

[22] The fees related to task codes B160 and B190 are Herrick's fees attributable to the services it performs as counsel to the Creditors' Committee in connection with the Chapter 11 Cases, and such fees are paid out of the Debtors' carve-out account.  Pursuant to the terms of the Plan and Confirmation Order, however, Herrick's fees and expenses attributable to the services it performs in connection with the Jointly Asserted Causes of Action are paid out of a segregated account established to provide initial funding for such litigation.  *See* Confirmation Order ¶ 52(d).

**<u>EXHIBIT E</u>**

**SUMMARY OF EXPENSES BY CATEGORY**

| Description | Amount billed |
| --- | ---: |
| Photocopies – Inside | $2.88 |
| Shipping | $123.52 |
| Duplicating Supplies | $49.18 |
| Expert Witness Fees | $114,245 |
| Meals | $22.48 |
| Color Duplicating | $3.08 |
| Teleconferencing | $210.00 |
| Velobind/binding | $20.00 |
| E-copy | $7.38 |
| Pacer Charges | $265.40 |
| Online Research West | $916.29 |
| Printing | $40.14 |
| Printing – Blowback | $718.70 |
| Document Processing | $601.00 |
| E-Discovery Data Hosting Minimum Charge | $400.00 |
| **Total** | **$117,625.05** |

## __EXHIBIT F__

## STAFFING PLAN

| Category of Timekeeper | Number of Timekeepers Expected to Work on Matter During the Compensation Period | Average Hourly Rate |
| --- | --- | --- |
| Partner | 4 | $855.00 |
| Counsel | 2 | $610.00 |
| Associate | 6 | $426.67 |
| Paralegals & Non-Legal Staff | 2 | $362.50 |