**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Ira S. Dizengoff
Philip C. Dublin
Sara L. Brauner
Zachary D. Lanier

*Counsel to the Official Committee of Unsecured*
*Creditors of Sears Holdings Corporation, et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SEARS HOLDINGS CORPORATION, et al., | : | Case No. 18-23538 (RDD) |
| | : | |
| | : | (Jointly Administered) |
| Debtors.[1] | : | |

------------------------------------------------------------------x

**SUMMARY SHEET FOR FIFTH INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE <u>PERIOD OF MARCH 1, 2020 THROUGH AND INCLUDING JUNE 30, 2020</u>**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc.(4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

| General Information | |
| --- | --- |
| Name of Applicant: | Akin Gump Strauss Hauer & Feld LLP ("Akin Gump")[2] |
| Authorized to Provide Services to: | The Official Committee of Unsecured Creditors and the Litigation Designees[3] |
| Petition Date: | October 15, 2018 |
| Retention Date: | December 10, 2018, *nunc pro tunc* to October 24, 2018 |
| Prior Applications: | 4 |

| Summary of Fees and Expenses Sought in this Application | |
| --- | --- |
| Time Period Covered by the Application: | March 1, 2020 through and including June 30, 2020 (the "Compensation Period") |

| *Compensation & Expenses Sought for Services Performed on Behalf of the Creditors' Committee in Connection with the Chapter 11 Cases* | |
| --- | --- |
| Amount of Compensation Sought as Actual, Reasonable and Necessary for the Compensation Period: | $408,202.00 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary for the Compensation Period: | $4,261.53 |

| *Compensation & Expenses Sought for Services Performed on Behalf of the Litigation Designees in Connection with the Jointly Asserted Causes of Action* | |
| --- | --- |
| Amount of Compensation Sought as Actual, Reasonable and Necessary for the Compensation Period: | $6,677,001.50 |

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application, the *Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors and (II) Granting Related Relief*, dated October 15, 2019 [ECF No. 5370] (the "Confirmation Order") or the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors*, dated October 15, 2019 [ECF No. 5370-1] (the "Plan"), as applicable.

[3] As described further herein, pursuant to the Confirmation Order and effective as of the date thereof, Akin Gump serves as "primary litigation counsel to act on behalf of the Litigation Designees to investigate, commence, prosecute and otherwise litigate the Jointly Asserted Causes of Action" in addition to its role as counsel to the Creditors' Committee. *See* Confirmation Order ¶ 22. To facilitate review of Akin Gump's fees attributable to its role as Primary Trust Litigation Counsel following entry of the Confirmation Order, a separate task code (Task Code 20) contains all such work.

| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary for the Compensation Period: | $2,369,551.75 |
|---|---|

*Total Compensation & Expenses Sought for Services Performed on Behalf of the Creditors' Committee and the Litigation Designees in Connection with the Chapter 11 Cases and the Jointly Asserted Causes of Action*

| Total Amount of Compensation Sought as Actual, Reasonable and Necessary for the Compensation Period: | $7,085,203.50 |
|---|---|
| Total Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary for the Compensation Period: | $2,373,813.28 |
| Total Compensation and Expenses Requested for the Compensation Period: | $9,459,016.78 |

**Summary of Fees and Expenses Allowed Pursuant to Prior Applications**

| Total Compensation Approved by Interim Order to Date: | $35,652,022.00 |
|---|---|
| Total Expenses Approved by Interim Order to Date: | $3,886,351.52 |
| Total Compensation and Expenses Approved by Interim Order to Date: | $39,538,373.52 |
| Total Allowed Compensation Paid to Date: | $35,652,022.00 |
| Total Allowed Expenses Paid to Date: | $3,886,351.52 |
| Total Allowed Compensation and Expenses Paid to Date: | $39,538,373.52 |

**Summary of Fees, Professionals, Rates and Budget in this Application**

| Compensation Sought in the Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed (80% of Fees): | $1,463,676.00[4] |
|---|---|

---

[4] As discussed in further detail in the Application, Akin Gump, as Primary Trust Litigation Counsel, has been working to prepare a comprehensive budget for the expected costs associated with prosecution of the Jointly Asserted Causes of Action, as overseen by the Litigation Designees and then, upon the Effective Date, by the Liquidating Trust Board.  As such, and to ensure that the Litigation Designees have the appropriate opportunity to review and approve such budget, Akin Gump has not requested any payments in respect of its fees and certain expenses incurred in connection with the prosecution of the Jointly Asserted Causes of Action beginning with the Nineteenth Monthly Fee Statement.  Upon approval of a budget for the Jointly Asserted Causes of Action, Akin Gump will request authorization from the Litigation Designees for payment of such fees and expenses from the Litigation Funding Account established pursuant to the terms of the Plan and Confirmation Order.  Accordingly, the amount reflected above in respect of compensation already paid pursuant to the Interim Compensation Order but not yet allowed *excludes* fees and certain expenses incurred during the Compensation Period in connection with

| | |
|---|---|
| Expenses Sought in the Application Already Paid Pursuant to the Compensation Order But Not Yet Allowed (100% of Expenses): | $1,783,816.31[5] |
| Total Compensation and Expenses Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $3,247,492.31 |
| Total Compensation and Expenses Sought in this Application Not Yet Paid: | $6,211,524.47 |
| Voluntary Fee Waiver and Expense Reduction in this Compensation Period: | $147,787.17[6] |

| ***Summary of Fees and Expenses Sought in this Application*** | |
|---|---|
| Blended Rate in this Application for All Attorneys: | $849.75 |
| Blended Rate in this Application for All Timekeepers: | $823.85 |
| Number of Timekeepers Included in this Application: | 40 (33 attorneys; 7 paraprofessionals and other non-legal staff) |

---

prosecution of the Jointly Asserted Causes of Action beginning with the Nineteenth Monthly Fee Statement for April 2020. Specifically, this amount comprises: (i) $1,320,330.00 (80% of $1,650,412.50) as compensation for services rendered during the period of March 1, 2020 through March 31, 2020, as requested in the Eighteenth Monthly Fee Statement; (ii) $107,374.00 (80% of $134,217.50, which excludes fees incurred in connection with the Jointly Asserted Causes of Action) as compensation for services rendered during the period of April 1, 2020 through April 30, 2020, as requested in the Nineteenth Monthly Fee Statement; and (iii) $35,972.00 (80% of $44,965.00, which excludes fees incurred in connection with the Jointly Asserted Causes of Action) as compensation for services rendered during the period of May 1, 2020 through May 31, 2020, as requested in the Twentieth Monthly Fee Statement. Notwithstanding the foregoing, Akin Gump respectfully requests that the Court authorize the payment of all fees and expenses incurred by Akin Gump during the Compensation Period so that such may be paid upon approval of a budget by the Litigation Designees.

[5] This amount comprises: $343,378.99 for reimbursement of actual and necessary expenses during the period of March 1, 2020 through March 31, 2020, as requested in the Eighteenth Monthly Fee Statement; $1,087,966.61 for reimbursement of actual and necessary expenses during the period of April 1, 2020 through April 30, 2020, as requested in the Nineteenth Monthly Fee Statement; and $352,470.71 for reimbursement of actual and necessary expenses during the period of May 1, 2020 through May 31, 2020, as requested in the Twentieth Monthly Fee Statement. As noted above, the expenses requested in respect of the Nineteenth and Twentieth Fee Statements exclude certain expenses incurred in connection with prosecution of the Jointly Asserted Causes of Action.

[6] Akin Gump voluntarily reduced its fees and expenses prior to the filing of the applicable Monthly Fee Statement (as defined herein) by the following amounts: (a) $116,714.50 for fee reductions and (b) $31,072.67 for expense reductions. The voluntary fee and expense reductions relate to, among other things: (i) fees incurred by professionals or paraprofessionals for attending meetings, conferences or hearings at which their presence was not essential to the issues or matters addressed therein; (ii) duplicative work or work performed by professionals or paraprofessionals billing a *de minimis* amount of time to the Chapter 11 Cases during the applicable period; (iii) certain fees on account of non-working travel time; (iv) fees incurred in connection with certain administrative tasks; and (v) certain overtime meal and travel expenses. Consequently, Akin Gump does not seek payment of these fees and expenses in this Application.

| | |
|---|---|
| Number of Attorneys Billing Fewer than 15 Hours to the Case During the Compensation Period: | 4 |
| Increase in Rates Since Date of Retention: | 2[7] |
| Interim or Final Application: | Interim |

---

[7] Akin Gump increased its rates on January 1, 2019 and January 1, 2020, consistent with its customary practice and as disclosed in the Akin Retention Application (as defined herein) and the *Supplemental Declaration of Philip C. Dublin in Support of the Application of the Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al. to Retain and Employ Akin Gump Strauss Hauer & Feld LLP as Counsel, Effective Nunc Pro Tunc to October 24, 2018*, dated December 30, 2019 [ECF No. 6301] (the "Supplemental Rate Declaration").

## SUMMARY OF MONTHLY FEE STATEMENTS

| Date Filed | ECF No. | Period Covered | Fees Requested | Expenses Requested | Fees Paid | Expenses Paid |
|---|---|---|---|---|---|---|
| 05/04/20 | 7899 | 03/01/20 – 03/31/20 | $1,320,330.00 (80% of $1,650,412.50) | $343,378.99 | $1,320,330.00 | $343,378.99 |
| 05/29/20 | 7990 | 04/01/20 – 04/30/20 | $1,860,676.80 (80% of $2,325,846.00) | $1,119,787.78 | $107,374.00 | $1,087,966.61 |
| 06/30/20 | 8201 | 05/01/20 – 05/31/20 | $1,243,474.40 (80% of $1,554,343.00) | $373,741.27 | $35,972.00 | $352,470.71 |
| 08/07/20 | 8354 | 06/01/20 – 06/30/20 | $1,243,681.60 (80% of $1,554,602.00) | $536,905.24 | N/A | N/A |

Summary of Any Objections to Monthly Fee Statements:  None

Compensation and Expenses Sought in This Application Not Yet Paid:  $6,211,524.47

## COMPENSATION BY PROFESSIONAL
## NOVEMBER 1, 2020 THROUGH AND INCLUDING JUNE 30, 2020

| Name of Professional | Position | Department | Year Admitted | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Brauner, Sara L. | Partner | Financial Restructuring | 2011 | $1,225.00 | 137.50 | $168,437.50 |
| Dizengoff, Ira S. | Partner | Financial Restructuring | 1993 | $1,595.00 | 8.00 | $12,760.00 |
| Dublin, Philip C. | Partner | Financial Restructuring | 1999 | $1,595.00 | 18.10 | $28,869.50 |
| Qureshi, Abid | Partner | Financial Restructuring | 1995 | $1,595.00 | 27.00 | $43,065.00 |
| Chapman, Dean L. | Partner | Litigation | 2009 | $1,225.00 | 656.40 | $804,090.00 |
| Lawrence, Lacy M. | Partner | Litigation | 2006 | $1,350.00 | 95.00 | $128,250.00 |
| Sorkin, Joseph L. | Partner | Litigation | 2008 | $1,350.00 | 168.60 | $227,610.00 |
| Zensky, David | Partner | Litigation | 1988 | $1,595.00 | 250.50 | $399,547.50 |
| Matheson, Clayton | Counsel | Intellectual Property | 2010 | $950.00 | 11.00 | $10,450.00 |
| Lloyd, Matthew | Counsel | Litigation | 2014 | $910.00 | 218.40 | $198,744.00 |
| Meier, Brennan | Counsel | Litigation | 2013 | $910.00 | 199.50 | $181,545.00 |
| O'Brien, Patrick | Senior Counsel | Litigation | 2004 | $935.00 | 210.60 | $196,911.00 |
| Park, Daniel S. | Counsel | Litigation | 2011 | $960.00 | 254.40 | $244,224.00 |
| Sharad, Saurabh | Counsel | Litigation | 2015 | $925.00 | 149.90 | $138,657.50 |
| Tizravesh, Roxanne | Counsel | Litigation | 2009 | $1,195.00 | 394.90 | $471,905.50 |
| Williams, Jr., Richard | Counsel | Litigation | 2014 | $960.00 | 5.00 | $4,800.00 |
| Windscheffel, Dennis | Senior Counsel | Litigation | 2004 | $965.00 | 11.60 | $11,194.00 |
| Lanier, Zachary D. | Associate | Financial Restructuring | 2017 | $860.00 | 79.50 | $68,370.00 |
| Mahkamova, Shirin | Associate | Financial Restructuring | 2019 | $700.00 | 75.30 | $52,710.00 |

| Name of Professional | Position | Department | Year Admitted | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Szydlo, Joseph E. | Associate | Financial Restructuring | 2019 | $700.00 | 105.10 | $73,570.00 |
| Figueroa-Santana, Bianca | Associate | Litigation | 2018 | $810.00 | 56.30 | $45,603.00 |
| Glackin, Patrick J. | Associate | Litigation | 2019 | $650.00 | 393.40 | $255,710.00 |
| Kane, John P. | Associate | Litigation | 2016 | $895.00 | 516.80 | $462,536.00 |
| Kulikowski, Jillian R. | Associate | Litigation | 2019 | $650.00 | 733.80 | $476,970.00 |
| Latov, Jeffrey A. | Associate | Litigation | 2017 | $810.00 | 825.50 | $668,655.00 |
| Lombardi, Nicholas | Associate | Litigation | 2018 | $735.00 | 290.40 | $213,444.00 |
| Maizel, Elise | Associate | Litigation | 2017 | $810.00 | 268.70 | $217,647.00 |
| Miller, Katlyne | Associate | Litigation | 2018 | $575.00 | 190.10 | $109,307.50 |
| Nolan, Sean | Associate | Litigation | 2018 | $725.00 | 579.30 | $419,992.50 |
| Praestholm, Amanda | Associate | Litigation | 2017 | $650.00 | 108.30 | $70,395.00 |
| Tandy, Lewis | Associate | Litigation | 2018 | $535.00 | 385.40 | $206,189.00 |
| Collins, Russell J. | Staff Attorney | Practice Attorney | 1998 | $475.00 | 592.20 | $281,295.00 |
| Young, Melodie | Staff Attorney | Practice Attorney | 2003 | $435.00 | 196.30 | $85,390.50 |
| Krasa-Berstell, Dagmara | Legal Assistant | Financial Restructuring | N/A | N/A | 21.20 | $8,798.00 |
| Levy, Sophia D. | Legal Assistant | Financial Restructuring | N/A | $245.00 | 23.10 | $5,659.50 |
| Csizmadia, Suzanne | Legal Assistant | Intellectual Property | N/A | $330.00 | 34.80 | $11,484.00 |
| Walls, Bennett | Legal Assistant | Litigation | N/A | $215.00 | 123.50 | $26,552.50 |
| Greer, Michael | Specialist | Trial Services | N/A | $310.00 | 49.00 | $15,190.00 |
| Moore, James | Specialist | Trial Services | N/A | $285.00 | 76.30 | $21,745.50 |
| Racanati, Frank | Specialist | Trial Services | N/A | $285.00 | 59.40 | $16,929.00 |

**TOTAL FEES**
**MARCH 1, 2020 THROUGH AND INCLUDING JUNE 30, 2020**

| PROFESSIONALS | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners | $1,331.74 | 1,361.10 | $1,812,629.50 |
| Senior Counsel / Counsel | $1,002.15 | 1,455.30 | $1,458,431.00 |
| Associates | $687.08 | 5,396.40 | $3,707,784.50 |
| Paraprofessionals and Other Non-Legal Staff | $274.62 | 387.30 | $106,358.50 |
| **Blended Attorney Rate** | **$849.75** | | |
| **Blended Rate for All Timekeepers** | **$823.85** | | |
| **Total Fees Incurred** | | **8,600.10** | **$7,085,203.50** |

## COMPENSATION BY PROJECT CATEGORY
## <u>MARCH 1, 2020 THROUGH AND INCLUDING JUNE 30, 2020</u>

| Task Code | Project Category | Total Hours Billed | Total Amount |
|---|---|---|---|
| 2 | Case Administration | 29.30 | $15,857.00 |
| 3 | Akin Gump Fee Application/Monthly Billing Reports | 209.70 | $157,047.00 |
| 4 | Analysis of Other Professionals Fee Applications/Reports | 19.40 | $16,160.00 |
| 5 | Review/Preparation of Schedules, Statements | -- | -- |
| 6 | Retention of Professionals | 18.90 | $18,684.50 |
| 7 | Creditors Committee Matters/Meetings (including 341 Meetings) | 21.80 | $22,126.50 |
| 8 | Hearings and Court Matters/Court Preparation | 51.50 | $44,315.00 |
| 9 | Financial Reports and Analysis | 1.60 | $1,376.00 |
| 10 | DIP, Cash Collateral Usage, Adequate Protection and Exit Financing | -- | -- |
| 11 | Executory Contract/Lease Issues | -- | -- |
| 12 | General Claims Analysis/Claims Objections | 64.40 | $76,672.00 |
| 13 | Analysis of Pre-Petition Transactions | -- | -- |
| 14 | Insurance Issues | 18.80 | $18,892.00 |
| 15 | Secured Creditors Issues/Communications/Meetings | 3.10 | $3,400.00 |
| 16 | Automatic Stay Issues | -- | -- |
| 17 | General Litigation Matters/Adversary Proceedings | 11.80 | $14,272.50 |
| 18 | Tax Issues | -- | -- |
| 19 | Labor Issues/Employee Benefits | -- | -- |
| 20 | Jointly Asserted Causes of Action | 8,133.70 | $6,677,001.50 |

x

| Task Code | Project Category | Total Hours Billed | Total Amount |
|---|---|---|---|
| 21 | Exclusivity | -- | -- |
| 22 | Disclosure Statement/Solicitation/Plan/Confirmation | 0.80 | $761.00 |
| 23 | Asset Dispositions/363 Asset Sales | 11.80 | $15,594.50 |
| 24 | Real Estate Issues | 3.50 | $3,044.00 |
| 25 | Travel Time | -- | -- |
| 26 | Securities Law Issues | -- | -- |
| 27 | Environmental | -- | -- |
| 28 | General Corporate Matters | -- | -- |
| 29 | Intercompany Claims/Intercompany Transactions/Cash Management | -- | -- |
| 30 | Customer, Supplier and Vendor Issues (including Critical Vendors) | -- | -- |
| 31 | Business Operations | -- | -- |
| **Total** | | 8,600.10 | $7,085,203.50 |

**EXPENSE SUMMARY**
**MARCH 1, 2020 THROUGH AND INCLUDING JUNE 30, 2020[8]**

| Disbursement Activity | Amount |
|---|---|
| Computerized Legal Research - Lexis - in contract 30% discount | $22,210.32 |
| Computerized Legal Research - Westlaw - in contract 30% discount | $63,007.70 |
| Computerized Legal Research - Westlaw - out of contract | -- |
| Computerized Legal Research - Courtlink - in contract 50% discount | $459.00 |
| Computerized Legal Research - Other | $834.35 |
| Color Copy | -- |
| Contract Labor - Attorney | -- |
| Courier Service/Messenger Service - Off Site | $751.56 |
| Document Retrieval | $668.00 |
| Duplication - In House | -- |
| Duplication - Off Site | -- |
| Filing Fees | -- |
| Imaging/Computerized Litigation Support | $10,856.25 |
| Meals - Overtime | -- |
| Meals - Business | -- |
| Meals (100%) | $846.31 |
| Miscellaneous | $20.00 |
| Office Supplies – Printing | $47.58 |

---

[8] The expenses incurred during the Compensation Period include, among other things: (i) $1,024,952.86 of expenses relating to the payment of consulting fees and expenses incurred by Solomon Page Group LLC, a staffing provider retained in connection with the Adversary Proceeding; (ii) $47,704.75 of expenses relating to the payment of professional fees and expenses incurred by Akin Gump's document management and e-discovery provider, H5; and (iii) $1,230,692.59 of expenses relating to the compensation of expert witnesses retained in connection with the Adversary Proceeding.

| Disbursement Activity | Amount |
|---|---|
| Overtime - Admin Staff | $361.03 |
| Postage | 0.00 |
| Professional Fees - Consultant Fees | $2,225,778.31 |
| Professional Fees - Misc. | $38,761.00 |
| Professional Fees - Process Server | $6,340.65 |
| Research | $297.79 |
| Telephone - Long Distance | $490.00 |
| Transcripts | $930.90 |
| Travel - Airfare | 0.00 |
| Travel - Ground Transportation | $419.67 |
| Travel - Lodging (Hotel, Apt, Other) | 0.00 |
| Local Transportation - Overtime | $232.86 |
| **Total** | **$2,373,813.28** |

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Ira S. Dizengoff
Philip C. Dublin
Sara L. Brauner
Zachary D. Lanier

*Counsel to the Official Committee of Unsecured*
*Creditors of Sears Holdings Corporation, et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SEARS HOLDINGS CORPORATION, et al., | : | Case No. 18-23538 (RDD) |
| | : | |
| | : | (Jointly Administered) |
| Debtors.[1] | : | |

-----------------------------------------------------------------x

**FIFTH INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS
HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE
PERIOD OF MARCH 1, 2020 THROUGH AND INCLUDING JUNE 30, 2020**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc.(4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), counsel to the Official

Committee of Unsecured Creditors (the "Creditors' Committee") of Sears Holdings Corporation

and its affiliated debtors and debtors in possession (collectively, the "Debtors"), hereby submits

this fifth application (the "Application"), pursuant to sections 330(a) and 331 of title 11 of the

United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and Rule 2016-1 of the Local Bankruptcy Rules for the

Southern District of New York (the "Local Bankruptcy Rules"), requesting interim allowance of

compensation for services rendered to the Creditors' Committee and the Litigation Designees for

the period of March 1, 2020 through and including June 30, 2020 (the "Compensation Period")

and for reimbursement of expenses incurred in connection therewith.  In support of this

Application, Akin Gump submits the declaration of Philip C. Dublin, a partner at Akin Gump,

which declaration is attached hereto as **Exhibit A** and incorporated by reference into this

Application.  In further support of this Application, Akin Gump respectfully represents as

follows.

## INTRODUCTION

1.      By this Application, Akin Gump seeks (i) interim allowance of compensation for

the professional services rendered by Akin Gump during the Compensation Period in the amount

of $7,085,203.50, representing 8,212.80 hours of professional services and 387.30 hours of

paraprofessional and other non-legal services and (ii) reimbursement of actual and necessary

expenses incurred by Akin Gump during the Compensation Period in the amount of

$2,373,813.28.[2]

---

[2] The expenses incurred during the Compensation Period include, among other things: (i) $1,024,952.86 of expenses relating to the payment of consulting fees and expenses incurred by Solomon Page Group LLC, a staffing provider retained in connection with the Adversary Proceeding; (ii) $47,704.75 of expenses relating to the payment of professional fees and expenses incurred by Akin Gump's document management and e-discovery provider, H5; and

2.      This Application has been prepared in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the *Order Authorizing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, dated November 16, 2018 [ECF No. 796] (the "Interim Compensation Order"), the *Order Authorizing Appointment of Independent Fee Examiner Pursuant to 11 U.S.C. § 327*, dated April 22, 2019 [ECF No. 3307] (the "Fee Examiner Order"), the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York (June 17, 2013) promulgated pursuant to Local Bankruptcy Rule 2016-1(a) (the "Local Guidelines") and the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 for Attorneys in Larger Chapter 11 Cases, effective as of November 1, 2013 (the "U.S. Trustee Guidelines" and, together with the Local Guidelines, the "Fee Guidelines").

3.      The Chair (as defined herein) of the Creditors' Committee has been given the opportunity to review this Application and has approved the compensation and reimbursement of expenses requested herein.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory bases for the relief requested herein are Bankruptcy Code sections 330 and 331, Bankruptcy Rule 2016 and Local Bankruptcy Rule 2016-1.

---

(iii) $1,230,692.59 of expenses relating to the compensation of expert witnesses retained in connection with the Adversary Proceeding.

## BACKGROUND

**A.    The Debtors' Chapter 11 Cases**

7.    On October 15, 2018, and continuing thereafter, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  The Debtors' chapter 11 cases (the "Chapter 11 Cases") are jointly administered for procedural purposes only.  No trustee or examiner has been appointed in the Chapter 11 Cases.

8.    On October 24, 2018 (the "Formation Date"), the Office of the United States Trustee for Region 2 (the "U.S. Trustee") appointed the Creditors' Committee pursuant to Bankruptcy Code section 1102(a).  *See Notice of Appointment of Official Committee of Unsecured Creditors* [ECF No. 276].  The Creditors' Committee currently comprises seven members.[3]  Simon Property Group, L.P. serves as chair of the Creditors' Committee (the "Chair").

9.    On January 3, 2019, the U.S. Trustee filed the *Motion of United States Trustee for Order Authorizing Appointment of Independent Fee Examiner* [ECF No. 1470].  On April 22, 2019, this Court entered the Fee Examiner Order [ECF No. 3307].  On the same day, Paul E. Harner was appointed as fee examiner in the Chapter 11 Cases (the "Fee Examiner").  The Fee Examiner has retained Ballard Spahr LLP as legal counsel.

---

[3] The following entities currently comprise the Creditors' Committee:  (i) The Bank of New York Mellon Trust Company, N.A. as Indenture Trustee; (ii) Brixmor Operating Partnership, L.P.; (iii) Computershare Trust Company, N.A.; (iv) Oswaldo Cruz; (v) Pension Benefit Guaranty Corporation ("PBGC"); (vi) Simon Property Group, L.P.; and (vii) Winiadaewoo Electronics America, Inc.  *See Amended Notice of Appointment of Official Committee of Unsecured Creditors*, dated March 31, 2020 [ECF No. 7539].

B.      **Retention of Akin Gump**

10.     On the Formation Date, the Creditors' Committee selected Akin Gump as its legal

counsel.  On November 28, 2018, the Creditors' Committee filed its application to retain and

employ Akin Gump as counsel to the Creditors' Committee [ECF No. 923] (the "Akin Retention

Application"), which application was authorized by an order of this Court dated December 10,

2018 [ECF No. 1107] (the "Akin Retention Order").[4]

11.     The Akin Retention Order authorizes the Creditors' Committee to retain and

employ Akin Gump as its counsel in the Chapter 11 Cases in accordance with Akin Gump's

normal hourly rates and disbursement policies, *nunc pro tunc* to October 24, 2018, all as

contemplated by the Akin Retention Application.  Specifically, the Akin Retention Order

authorizes Akin Gump to be compensated on an hourly basis and to be reimbursed for actual and

necessary out-of-pocket expenses.

12.     On October 15, 2019, the Court entered the Confirmation Order [ECF No. 5370]

approving the Plan.  Pursuant to the Confirmation Order, the Creditors' Committee was granted

joint standing with the Debtors to commence, prosecute, settle and otherwise dispose of the: (i)

Specified Causes of Action; (ii) other Preserved Causes of Action against the ESL Parties; (iii) all

claims and causes of action asserted in the pending adversary proceeding captioned *Sears*

*Holdings Corp. v. Lampert*, Adv. Pro. 19-08250 (RDD) (Bankr. S.D.N.Y.) (the "Adversary

Proceeding") and any other claims or causes of action ancillary thereto; and (iv) claims or causes

of action against insurance carriers related to coverage for claims asserted in the Adversary

Proceeding (the foregoing referred to collectively as the "Jointly Asserted Causes of Action").

---

[4] The Creditors' Committee selected FTI Consulting, Inc. ("FTI") to serve as its financial advisor and Houlihan
Lokey Capital, Inc. ("Houlihan") to serve as its investment banker on October 25, 2019 and October 29, 2019,
respectively.  The orders authorizing the retention of FTI [ECF No. 1325] and Houlihan [ECF No. 1326] were
entered on December 19, 2018.

The Jointly Asserted Causes of Action are overseen by designees who will be the initial members of the Liquidating Trust Board upon the Effective Date of the Plan (the "Litigation Designees").[5] Pursuant to the Confirmation Order, Akin Gump serves as "primary litigation counsel to act on behalf of the Litigation Designees to investigate, commence, prosecute and otherwise litigate the Jointly Asserted Causes of Action." *See* Confirmation Order ¶ 22.[6] The Confirmation Order authorizes Akin Gump to be compensated on an hourly basis and to be reimbursed for actual and necessary out-of-pocket expenses.[7] *Id.*

**C.      Prior Fee Applications and Fee Statements Filed During the Compensation Period**

13.      On April 14, 2020 Akin Gump filed and served the *Fourth Interim Fee Application of Akin Gump Strauss Hauer & Feld LLP as Counsel to the Official Committee of Unsecured Creditors for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period of November 1, 2019 Through and Including February 29, 2020* [ECF

---

[5] The initial members of the Liquidating Trust Board will be: (i) Patrick Bartels; (ii) Alan Carr; (iii) Eugene Davis; (iv) William Transier; and (v) Raphael Wallander.

[6] The Creditors' Committee Settlement provided, among other things, that three of the five members of the Liquidating Trust Board would be selected by the Creditors' Committee and the remaining two members would be selected by the Debtors. In turn, the proposed members of the Liquidating Trust Board would choose, subject to various factors and procedures, primary litigation counsel for the Liquidating Trust. In July 2019, the proposed members of the Liquidating Trust Board chose Akin Gump to serve as Primary Trust Litigation Counsel.

[7] Akin Gump's fees and expenses attributable to the services it performs as counsel to the Creditors' Committee in connection with the Chapter 11 Cases are paid out of the Debtors' carve-out account. Pursuant to the terms of the Plan and Confirmation Order, however, Akin Gump's fees and expenses attributable to the services it performs as Primary Trust Litigation Counsel—as well as the fees and expenses of other professionals retained in connection with the Jointly Asserted Causes of Action—are paid out of a segregated account established to provide initial funding for such litigation (the "Litigation Funding Account"). *See* Confirmation Order ¶ 52(d). As Primary Trust Litigation Counsel, Akin Gump has been working to prepare a comprehensive budget for the expected costs associated with prosecution of such litigation overseen by the Litigation Designees and then, upon the Effective Date, by the Liquidating Trust Board. As such, and to ensure that the Litigation Designees have the appropriate opportunity to review and approve such budget, Akin Gump has not requested any payments from the Litigation Funding Account in respect of its fees and certain expenses incurred in connection with prosecution of the Jointly Asserted Causes of Action beginning with the Nineteenth Monthly Fee Statement. Upon approval of a budget for the Jointly Asserted Causes of Action, Akin Gump will request authorization from the Litigation Designees for payment of such fees and expenses from the Litigation Funding Account. Notwithstanding the foregoing, Akin Gump respectfully requests that the Court authorize the payment of such fees and expenses so that they may be paid upon approval of a budget by the Litigation Designees.

No. 7816] (the "<u>Fourth Interim Fee Application</u>").[8]  Pursuant to the Fourth Interim Fee

Application, Akin Gump requested interim allowance of fees in the amount of $4,217,112.50 and

reimbursement of expenses in the amount of $1,424,635.72 for the period from November 1,

2019 through and including February 29, 2020.  There were no objections to the Fourth Interim

Fee Application and, on June 18, 2020, the Court entered an order approving the Fourth Interim

Fee Application [ECF No. 8036] (the "<u>Fourth Interim Fee Order</u>").  Pursuant to the Fourth

Interim Fee Order, on July 21, 2020 and July 22, 2020, Akin Gump received two payments in the

aggregate amount of $843,422.50 (representing the 20% of fees withheld from the payments

made on account of the monthly fee statements subject to the Fourth Interim Fee Application).

14.     On May 4, 2020, Akin Gump filed and served the *Eighteenth Monthly Fee*

*Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and*

*Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the*

*Period of March 1, 2020 Through March 31, 2020* [ECF No. 7899] (the "<u>Eighteenth Monthly</u>

<u>Fee Statement</u>"),[9] pursuant to which Akin Gump sought payment of (i) $1,320,330.00 (80% of

$1,650,412.50) as compensation for professional services rendered and (ii) $343,378.99 for

reimbursement of expenses.  Akin Gump did not receive any objections to the Eighteenth

Monthly Fee Statement and received payment of $1,320,330.00 in fees and $343,378.99 in

expenses in respect thereof on May 22, 2020.

15.     On May 29, 2020, Akin Gump filed and served the *Nineteenth Monthly Fee*

*Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and*

*Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the*

---

[8] A Copy of the Fourth Interim Fee Application can be accessed at:
https://restructuring.primeclerk.com/sears/Home-DownloadPDF?id1=MzU0Mjg3&id2=0.

[9] A copy of the Eighteenth Monthly Fee Statement can be accessed at:
https://restructuring.primeclerk.com/sears/Home-DownloadPDF?id1=Mzc2Njgz&id2=0.

*Period of April 1, 2020 Through April 30, 2020* [ECF No. 7990] (the "Nineteenth Monthly Fee

Statement"),[10] pursuant to which Akin Gump sought payment of (i) $1,860,676.80 (80% of

$2,325,846.00) as compensation for professional services rendered and (ii) $1,119,787.78 for

reimbursement of expenses.  Akin Gump did not receive any objections to the Nineteenth

Monthly Fee Statement and received payment of $107,374.00 in fees and $1,087,966.61 in

expenses in respect thereof on July 6, 2020 and July 28, 2020, respectively.  As discussed in

further detail above, the amount of fees and expenses paid to date with respect to the Nineteenth

Monthly Fee Statement includes those fees and expenses incurred by Akin Gump for its services

to the Creditors' Committee and excludes fees and certain expenses incurred by Akin Gump in

connection with prosecution of the Jointly Asserted Causes of Action.

16.    On June 30, 2020, Akin Gump filed and served the *Twentieth Monthly Fee*

*Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and*

*Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the*

*Period of May 1, 2020 Through May 30, 2020* [ECF No. 8201] (the "Twentieth Monthly Fee

Statement"),[11] pursuant to which Akin Gump sought payment of (i) $1,243,474.40 (80% of

$1,554,343.00) as compensation for professional services rendered and (ii) $373,741.27 for

reimbursement of expenses.  Akin Gump did not receive any objections to the Twentieth

Monthly Fee Statement and received payment of $35,972.00 in fees and $352,470.71 in expenses

in respect thereof on July 28, 2020.  As discussed in further detail above, the amount of fees and

expenses paid to date with respect to the Twentieth Monthly Fee Statement includes those fees

and expenses incurred by Akin Gump for its services to the Creditors' Committee and excludes

---

[10] A copy of the Nineteenth Monthly Fee Statement can be accessed at:
https://restructuring.primeclerk.com/sears/Home-DownloadPDF?id1=NDA2MTU1&id2=0.
[11] A copy of the Twentieth Monthly Fee Statement can be accessed at:
https://restructuring.primeclerk.com/sears/Home-DownloadPDF?id1=NDQ3NzA4&id2=0.

fees and certain expenses incurred by Akin Gump in connection with prosecution of the Jointly Asserted Causes of Action.

17.     On August 7, 2020, Akin Gump filed and served the *Twenty-First Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of June 1, 2020 Through June 30, 2020* [ECF No. 8354] (the "Twenty-First Monthly Fee Statement"),[12] pursuant to which Akin Gump sought payment of (i) $1,243,681.60 (80% of $1,554,602.00) as compensation for professional services rendered and (ii) $536,905.24 for reimbursement of expenses.  As of the date of this Application, Akin Gump has not received any objections to the Twenty-First Monthly Fee Statement.

## SUMMARY OF PROFESSIONAL COMPENSATION
## AND REIMBURSEMENT OF EXPENSES REQUESTED

18.     By this Application, Akin Gump requests allowance of interim compensation for professional services rendered during the Compensation Period in the amount of $7,085,203.50 and expense reimbursements of $2,373,813.28.[13]  During the Compensation Period, Akin Gump professionals and paraprofessionals expended a total of 8,600.10 hours for which compensation is sought.

---

[12] A copy of the Twenty-First Monthly Fee Statement can be accessed at:
https://restructuring.primeclerk.com/sears/Home-DownloadPDF?id1=NTcxMTkx&id2=0.

[13] Akin Gump voluntarily reduced its fees and expenses prior to the filing of the applicable Monthly Fee Statement by the following amounts: (a) $116,714.50 for fee reductions; and (b) $31,072.67 for expense reductions.  The voluntary fee and expense reductions relate to, among other things: (i) fees incurred by professionals or paraprofessionals for attending meetings, conferences or hearings at which their presence was not essential to the issues or matters addressed therein; (ii) duplicative work or work performed by professionals or paraprofessionals billing a *de minimis* amount of time to the Chapter 11 Cases during the applicable period; (iii) certain fees on account of non-working travel time; (iv) fees incurred in connection with certain administrative tasks; and (v) certain overtime meal and travel expenses.  Consequently, Akin Gump does not seek payment of these fees and expenses in this Application.

19.     The fees charged by Akin Gump in the Chapter 11 Cases are billed in accordance with Akin Gump's existing billing rates and procedures in effect during the Compensation Period.  The rates Akin Gump charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin Gump charges for professional and paraprofessional services rendered in comparable non-bankruptcy related matters.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.  The disclosures required by the U.S. Trustee Guidelines regarding the customary and comparable compensation are annexed hereto as **Exhibit B**.

20.     Akin Gump maintains computerized records of the time spent by all Akin Gump professionals and paraprofessionals in connection with the Chapter 11 Cases.  A summary of compensation by timekeeper is attached hereto in **Exhibit C**, and a summary of fees by task code is attached hereto in **Exhibit D**.  The itemized time records for Akin Gump professionals and paraprofessionals performing services during the Compensation Period have been filed and served in the Monthly Fee Statements in accordance with the Interim Compensation Order.

21.     Akin Gump also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services.  A summary of the categories of expenses and amounts for which reimbursement is requested by this Application is attached hereto as **Exhibit E**.

22.     Akin Gump's staffing plan for the Compensation Period is attached hereto as **Exhibit F**.

## SUMMARY OF SERVICES PERFORMED BY
## <u>AKIN GUMP DURING THE COMPENSATION PERIOD</u>

23.    The services provided by Akin Gump during the Compensation Period were actual and necessary for the administration of the Chapter 11 Cases, performed at the request of the Creditors' Committee and/or the Litigation Designees and commensurate with the complexity and significance of this matter.  The variety and complexity of the issues in the Chapter 11 Cases and the need to act or respond to such issues on an expedited basis during the Compensation Period required the expenditure of significant time by Akin Gump professionals and paraprofessionals from numerous legal disciplines.

24.    The following is a summary of the professional services rendered by Akin Gump during the Compensation Period.  This summary is organized in accordance with Akin Gump's internal system of task codes established at the outset of the Chapter 11 Cases based on the Fee Guidelines.  In classifying services into task codes, Akin Gump attempted to place the services performed in the category that most closely related to the services provided.  The below does not include summaries for certain task codes for which a *de minimis* amount of time was billed during the Compensation Period.

25.    Moreover, the following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed.  Rather, it merely is an attempt to highlight certain of those areas in which services were rendered, as well as to identify certain of the matters and issues that Akin Gump was required to address during the Compensation Period.

A.    **General Case Administration (Task Code 2)**

| Total Hours | Fees |
|:---:|:---:|
| 29.30 | $15,857.00 |

26.    This category includes time spent by Akin Gump professionals and paraprofessionals performing various administrative services in order to represent the Creditors' Committee effectively and efficiently, including, among other things: (i) reviewing and analyzing pleadings and other documents filed by the Debtors and third parties; (ii) apprising Akin Gump professionals and paraprofessionals of recent filings and upcoming deadlines; (iii) preparing internal task lists and case calendars; and (iv) communicating with the members of the Creditors' Committee, the Debtors' advisors and other parties in interest regarding general case administration and related matters.

27.    During the Compensation Period, Akin Gump kept in close contact with counsel to the Debtors and other parties in interest to discuss open scheduling issues, the timing for filing various motions and applications and the type of information the Creditors' Committee would require to analyze each such motion or application. Akin Gump also consulted with FTI with respect to documents and other information received from the Debtors, their representatives and other parties in interest.

28.    Akin Gump professionals and paraprofessionals also monitored the dockets for the Chapter 11 Cases, the Adversary Proceeding and all appeals to remain apprised of all critical matters. For each significant filing, Akin Gump professionals and paraprofessionals worked to ensure that the appropriate parties were notified of its contents, relevant response deadlines, hearing dates and any other critical matters related thereto. Further, in connection with motions and applications filed by the Debtors and other parties in the Chapter 11 Cases, Akin Gump analyzed and conducted diligence with respect to the subject matter of the motion or application

to determine, among other things, the effect the relief requested would have on the Debtors, their

creditors and the administration of the Chapter 11 Cases.  Akin Gump's analysis and diligence

efforts included: (i) reviewing underlying documentation and litigation related to the applicable

motion or application; (ii) meeting with or holding conference calls with representatives of the

Debtors and third parties to attempt to achieve consensual resolutions of the issues involved; and

(iii) working with FTI to ensure that the Creditors' Committee understood the effects the

requested relief would have on the Debtors' estates and creditors.  Due to Akin Gump's

experience counseling official committees of unsecured creditors, Akin Gump believes it was

able to address all issues relating to case administration that have arisen during the pendency of

the Chapter 11 Cases in an effective and efficient manner.

**B.    Akin Gump Fee Application/Monthly Billing Reports (Task Code 3)**

| Total Hours | Fees |
|---|---|
| 209.70 | $157,047.00 |

29.    This category includes time spent by Akin Gump professionals and

paraprofessionals preparing and drafting the Fourth Interim Fee Application and Monthly Fee

Statements and responding to all inquiries and requests regarding the foregoing, including those

from the Fee Examiner and the U.S. Trustee.  Pursuant to the Interim Compensation Order, the

Fourth Interim Fee Application and the Monthly Fee Statements contained a list of individuals

who rendered services to the Creditors' Committee during the relevant compensation period,

information as to each individual's title, billing rate and hours worked and a comprehensive

breakdown of the fees incurred and disbursements expended.  To minimize costs in connection

with this time-intensive process, Akin Gump relied on paraprofessionals to prepare the initial

drafts of the Fourth Interim Fee Application and Monthly Fee Statements, thereby limiting the

time spent by professionals on the review of fees, where reasonably practicable.

C.    **Analysis of Other Professional Fee Applications/Reports (Task Code 4)**

| Total Hours | Fees |
|---|---|
| 19.40 | $16,160.00 |

30.    This category includes time spent by Akin Gump professionals and paraprofessionals reviewing monthly fee statements and fee applications prepared by FTI and Houlihan as well as monthly fee statements submitted to the Court by other estate retained professionals.  Akin Gump reviewed such fee statements to ensure that professionals operated in accordance with their individual mandates and charged reasonable fees in connection therewith. This category also includes time spent assisting the other professionals retained in connection with prosecution of the Jointly Asserted Causes of Action, including Herrick Feinstein LLP ("Herrick") and Moritt Hock & Hamroff LLP ("Moritt"), in finalizing, filing and serving their respective fee statements and fee applications.

D.    **Retention of Professionals (Task Code 6)**

| Total Hours | Fees |
|---|---|
| 18.90 | $18,684.50 |

31.    This category includes time spent by Akin Gump professionals and paraprofessionals with respect to various professional retention matters including the retentions by the Creditors' Committee of: (i) Herrick, as special conflicts counsel in connection with the investigation of certain postpetition transactions relating to the Medium Term Notes Series B issued by Sears Roebuck Acceptance Corp.; and (ii) Moritt as special conflicts counsel in connection with certain of the Jointly Asserted Causes of Action.

**E.**      **Creditor Committee Matters/Meetings (Task Code 7)**

| Total Hours | Fees |
|:---:|:---:|
| 21.80 | $22,126.50 |

32.      This category includes time spent by Akin Gump professionals and paraprofessionals to keep the Creditors' Committee apprised of developments in the Chapter 11 Cases and attending to other general Creditors' Committee matters. Specifically, through conference calls and correspondence, Akin Gump assisted the Creditors' Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in the Chapter 11 Cases, monitor closely the Debtors' management of the Chapter 11 Cases and reach independent conclusions on the merits of specific matters. Although the tasks in this category do not necessarily relate to specific legal issues, they nevertheless were essential because they facilitated Akin Gump's management of the Chapter 11 Cases and supported Akin Gump's performance of other substantive tasks.

**D.**      **Court Hearings (Task Code 8)**

| Total Hours | Fees |
|:---:|:---:|
| 51.50 | $44,315.00 |

33.      This category includes time spent by Akin Gump professionals and paraprofessionals in connection with Court hearings and Chambers conferences held during the Compensation Period. During the Compensation Period, Akin Gump participated in three hearings, which required the preparation and participation of Akin Gump professionals.

34.      In preparing for hearings and conferences, Akin Gump professionals, together with the Creditors' Committee's other advisors, reviewed and analyzed all issues, applicable motions and applications filed with the Court, including any objections and responses thereto, discussed with the Debtors' advisors and other relevant parties the relief requested and, as necessary, asserted the Creditors' Committee's position at such hearings and conferences. In

addition, following each hearing or conference, Akin Gump provided the Creditors' Committee with updates and analyses of the results thereof, either in written form or during the following Creditors' Committee call.

**E.    General Claims Analysis/Claims Objections (Task Code 12)**

| Total Hours | Fees |
|:---:|:---:|
| 64.40 | $76,672.00 |

35.    This category includes time spent by Akin Gump professionals reviewing and analyzing claims against the Debtors' estates and any settlements thereof.  During the Compensation Period, Akin Gump, together with FTI, worked closely with the advisors to the Debtors and other parties in interest to understand the amount and validity of secured, priority, administrative and unsecured claims asserted against the estates.  Accordingly, during the Compensation Period, Akin Gump, together with FTI: (i) performed analyses with respect to the bases for various claims and potential settlements thereof; (ii) participated in negotiations among the Debtors and certain creditors asserting administrative expense claims, including participation in all meetings and discussions with the Pre-Effective Date Committee established pursuant to the Confirmation Order; (iii) analyzed various issues regarding the resolution of claims pursuant to the Administrative Expense Claims Consent Program and all distributions on account thereof, including the recently completed second distribution;[14] (iv) reviewed analyses prepared by counsel retained by the Debtors to pursue preference actions under Bankruptcy Code section 547 and other comparable actions under applicable nonbankruptcy law to understand, among other things, the potential offsets to asserted claims; and (v) provided the Creditors' Committee with updates regarding the foregoing, including claims pool estimates and issues related thereto.

---

[14] *See Final Notice Regarding Second Distribution Pursuant to Administrative Expense Claims Consent Program* [ECF No. 8350].

G.    **Jointly Asserted Causes of Action (Task Code 20)**[15]

| Total Hours | Fees |
|---|---|
| 8,133.70 | $6,677,001.50 |

36.    This category includes time spent by Akin Gump professionals and paraprofessionals in connection with Akin Gump's role as Primary Trust Litigation Counsel to the Litigation Designees, including prosecution of the first amended adversary complaint [Adv. Pro. No. 19-08250, ECF No. 52] (the "First Amended Adversary Complaint") filed in the Adversary Proceeding.  Prior to the Compensation Period, on November 25, 2019, Akin Gump, on behalf of the Creditors' Committee and the Debtors, filed the First Amended Adversary Complaint.  Akin Gump's comprehensive and continuing investigation (the "Investigation") into the related-party transactions that preceded the commencement of the Chapter 11 Cases and the claims arising therefrom, including the Jointly Asserted Causes of Action, formed the bases for the claims and causes of actions asserted in the First Amended Adversary Complaint.

37.    Throughout the Compensation Period, Akin Gump professionals prepared for and participated in regularly scheduled conference calls with the Litigation Designees to obtain necessary authorizations with respect to the Investigation and Adversary Proceeding, and provide updates and analyses regarding the relevant issues.  The primary work streams undertaken by Akin Gump during the Compensation Period in connection with the Adversary Proceeding and the Investigation are summarized below.

---

[15] As described further herein, pursuant to the Confirmation Order and effective as of the date thereof, Akin Gump serves as Primary Trust Litigation Counsel in addition to its role as counsel to the Creditors' Committee.  *See* Confirmation Order ¶ 22.  To facilitate review of Akin Gump's fees attributable to its role as counsel to the Litigation Designees following entry of the Confirmation Order, this task code (Task Code 20) contains all such work.

### 1. Fact and Expert Discovery

38.     During the Compensation Period, Akin Gump engaged in discovery with the defendants named in the First Amended Adversary Complaint (the "Defendants") and certain third parties.[16] Akin Gump prepared and filed an amended Rule 26(f) report (the "Amended Rule 26(f) Report") on April 24, 2020 [Case No. 19-08250; ECF No. 162]. The Amended Rule 26(f) Report replaced in full the prior Rule 26(f) report that was filed on June 13, 2019.

39.     During the Compensation Period, and in accordance with agreed upon procedures, Akin Gump professionals: (i) drafted and served 15 document requests on certain of the Defendants and approximately 34 third parties; (ii) reviewed 42 responses and objections to requests for documents from the Defendants and third parties; (iii) conducted approximately 97 meet-and-confers with these parties, as appropriate; (iv) exchanged more than 100 substantive letters, emails and other correspondence with various parties to memorialize meet-and-confers and resolve discovery disputes; (v) drafted a proposed protective order; and (vi) continued to review the voluminous discovery—including more than 13,000,000 documents received during the Compensation Period—produced in connection with the Adversary Proceeding.[17]

40.     In addition, Akin Gump professionals and paraprofessionals devoted substantial time during the Compensation Period to identifying additional parties who were beneficiaries of certain of the transactions challenged in the First Amended Adversary Complaint. Specifically,

---

[16] Prior to the Compensation Period, on December 17, 2019, Akin Gump professionals participated in a conference pursuant to Rule 26(f) of the Federal Rules of Civil Procedure with the advisors for nearly all of the parties to the Adversary Proceeding regarding a number of issues, including those relating to: (i) briefing deadlines and scheduling; (ii) transmittal of privileged documents or communications; and (iii) the discovery process. As a result of this conference and subsequent telephonic conferences among advisors to the Debtors, Creditors' Committee and certain other parties to the Adversary Proceeding, the parties reached certain agreements with respect to briefing and discovery procedures. The parties memorialized these procedures in a joint letter to the Court, which Akin Gump prepared and filed on February 10, 2020 [Adv. Pro. No. 19-08250; ECF No. 85].

[17] To minimize costs associated with the document review process, Akin Gump engaged contract attorneys to conduct a first-level review of documents received in connection with the Investigation and Adversary Proceeding. Contract attorneys dedicated significant time to this document review during the Compensation Period.

Akin Gump professionals: (i) drafted and served 57 subpoenas to third parties seeking information relating to such beneficiaries; (ii) conducted dozens of meet-and-confers with such third parties as appropriate; and (iii) reviewed and analyzed such third parties' voluminous productions. The Creditors' Committee's conflicts counsel, Moritt, assisted Akin Gump professionals with this process.

41.    During the Compensation Period, Akin Gump professionals identified, interviewed and retained certain experts to perform analyses, provide advice and, if appropriate, ultimately testify with respect to certain issues relevant to the First Amended Adversary Complaint. In accordance with their retentions, these experts have begun to diligence materials related to their scopes of work and, in certain instances, have provided Akin Gump with preliminary analyses and other work product. Akin Gump professionals have reviewed these materials and participated in several conferences with the respective experts to provide feedback on their analyses and guidance for ongoing work streams.

42.    On June 9, 2020, the Court conducted a pretrial conference (the "Initial Pretrial Conference"). In preparation for the Initial Pretrial Conference, Akin Gump professionals conferred with the advisors for nearly all of the parties to the Adversary Proceeding regarding a number of issues, including those relating to pre-trial scheduling, the discovery process and procedures for depositions in light of the challenges posed by the COVID-19 pandemic. These discussions were memorialized in a letter to the Court, which Akin Gump prepared and filed on June 4, 2020 [Adv. Pro. No. 19-08250; ECF No. 170]. At the Initial Pretrial Conference, the Court agreed to the Plaintiffs' request to set a discovery schedule. The parties to the Adversary Proceeding then continued to confer regarding a scheduling order, which the Court entered on July 8, 2020 [Adv. Pro. No. 19-08250; ECF No. 210].

## 2. Motions to Dismiss and Opposition Briefing

43.    During the Compensation Period, Akin Gump professionals devoted significant

time to reviewing the motions to dismiss the First Amended Adversary Complaint filed by

Defendants on February 21, 2020, as well as supporting affidavits and exhibits [Adv. Pro. No.

19-08250; ECF Nos. 95-101, 103-111, 113-116, 118-127, 129-137] (collectively, the "Motions to

Dismiss").  Specifically, Akin Gump professionals analyzed all case law cited in support of the

Motions to Dismiss, performed legal research related to issues raised therein and prepared

briefing in opposition to the Motions to Dismiss.

44.    On April 30, 2020, Akin Gump professionals filed three briefs in opposition to

Defendants' Motions to Dismiss [Adv. Pro. No. 19-08250; ECF Nos. 163-165][18] (the

"Opposition Briefs").  Drafting the Opposition Briefs, which comprised more than 230 pages in

the aggregate, was a highly involved process.  In connection therewith, Akin Gump professionals

conducted extensive research and prepared detailed analyses with respect to discrete legal issues

arising in connection with the arguments asserted in the Motions to Dismiss.  On June 15, 2020,

the Defendants each filed a brief in response to the Opposition Briefs [Adv. Pro. No. 19-08250;

ECF Nos. 174-189] (the "Reply Briefs").  Akin Gump professionals then spent considerable time

reviewing the Reply Briefs and analyzing case law cited in support of the Reply Briefs.

## 3. Initial Disclosures

45.    During the Compensation Period, Akin Gump professionals also spent

considerable time preparing the Plaintiffs' amended initial disclosures (the "Amended Initial

Disclosures").  These disclosures, as required under Rule 26(a)(1) of the Federal Rules of Civil

Procedure, must include: (i) the identities of all individuals likely to have discoverable

---

[18] Akin Gump also filed an affidavit and an exhibit in support of the Opposition Briefs [Adv. Pro. No. 19-08250; ECF Nos. 166-167].

information—as well as the subjects of such information—that a disclosing party may use to support its claims or defenses; (ii) descriptions of all documents in the disclosing party's possession that it may use to support its claims or defenses; and (iii) computations for each category of damages claimed by the disclosing party.  Preparation of the Amended Initial Disclosures required substantial efforts given the scope of First Amended Adversary Complaint, the amount and complexity of the claims asserted therein and the number of individuals and entities likely to have relevant and discoverable information with respect to such claims.  In addition to identifying more than 150 individuals and entities likely to possess discoverable information, the Plaintiffs prepared a detailed schedule of preliminary damages computations for each monetary claim asserted in the First Amended Adversary Complaint.  Compiling these materials required Akin Gump professionals to conduct significant research and transactional diligence and obtain input from certain experts.

### 4.  D&O Insurance Coverage Litigation

46.     Finally, during the Compensation Period, certain Defendants, who were former directors of Sears Holdings Corporation (the "Director Defendants"), have been involved in two separate state court litigations in New York and Illinois, captioned *Alvarez v. XL Specialty Insurance Co.*, Case No. 655391/2019 (N.Y. Sup. Ct. Sept. 17, 2019) and *QBE Insurance Corp. v. 1291079 Ontario Ltd.*, Case No. 2019-CH-9982 (Ill. Cir. Ct. Aug. 28, 2019), respectively, with certain providers of liability insurance to the directors and officers of Sears Holdings Corporation (collectively, the "D&O Coverage Proceedings").  In the D&O Coverage Proceedings, the Director Defendants have sought declaratory relief relating to, among other things, the extent to which coverage is available for the fees the Director Defendants have incurred (and continue to incur) defending against the Adversary Proceeding and potential damages awards issued against

the Director Defendants in connection with the Adversary Proceeding. In light of the effects the

D&O Coverage Proceedings may have on issues implicated in the Adversary Proceeding, Akin

Gump professionals continued to monitor the D&O Coverage Proceedings throughout the

Compensation Period and perform research and analyses in connection therewith

## **ACTUAL AND NECESSARY DISBURSEMENTS**

47.    Akin Gump seeks allowance of reimbursement of expenses in the amount of

$2,373,813.28 for expenses incurred during the Compensation Period in the course of providing

professional services to the Creditors' Committee and the Litigation Designees. Akin Gump's

disbursement policies pass through all out-of-pocket expenses at actual cost or an estimated

actual cost when the actual cost is difficult to determine. For example, as it relates to

computerized research, Akin Gump believes that it does not make a profit on that service as a

whole although the cost of any particular search is difficult to ascertain. Other reimbursable

expenses (whether the service is performed by Akin Gump in-house or through a third party

vendor) include, but are not limited to, long-distance calls, overtime meals, deliveries, court

costs, transcript fees, discovery and temporary legal staffing services, travel and clerk fees.

## **FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES**

48.    Bankruptcy Code section 330 provides, in relevant part, that the Court may award

to a professional person "reasonable compensation for actual, necessary services rendered[.]"

*See* 11 U.S.C. § 330(a)(1). In turn, Bankruptcy Code section 330 provides as follows:

> In determining the amount of reasonable compensation to be awarded, the
> court shall consider the nature, the extent, and the value of such services,
> taking into account all relevant factors, including –
>
> (A)     the time spent on such services;
>
> (B)     the rates charged for such services;

(C)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)     whether the compensation is reasonably based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

49.    The clear congressional intent and policy expressed in Bankruptcy Code section 330 is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.  *In re Drexel Burnham Lambert Grp., Inc.*, 133 B.R. 13, 20 (Bankr. S.D.N.Y. 1991) ("Congress' objective in requiring that the market, not the Court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal specialists."); *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 850 (3d. Cir. 1994) (citations and internal quotations omitted) ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts.").

50.    In assessing the "reasonableness" of the fees requested, the Second Circuit has stated that courts should consider the factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, while also incorporating the "lodestar method."  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2007) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974),

*abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 92–93, 96 (1989)).  The

"lodestar method" of calculating the reasonable fee contemplates "the number of hours

reasonably expended . . . multiplied by a reasonable hourly rate."  *See Hensley v. Eckerhart et

al.*, 461 U.S. 424, 433 (1983); *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002); *Perdue v. Kenny

A.*, 130 S.Ct. 1662, 1672 (2010); *In re Drexel Burnham Lambert Grp., Inc.* 133 B.R. 13 (Bankr.

S.D. N.Y. 1991).  The factors set forth in *Johnson* and *In re First Colonial Corp. of Am.*, 544 F.2d

1291, 1298-99 (5th Cir. 1977) have been adopted by most courts.[19]  *See In re Nine Assocs., Inc.*,

76 B.R. 943, 945 (S.D.N.Y. 1987) (adopting *First Colonial/Johnson* analysis); *In re Cuisine

Magazine, Inc.*, 61 B.R. 210, 212-13 (Bankr. S.D.N.Y 1986) (same); *Green v. City of New York*,

403 Fed. Appx. 626, 629 (2d Cir. 2010) (summary order); *see generally* 3 COLLIER ON

BANKRUPTCY ¶ 330.03[9] (Lawrence P. King ed., 16th ed. 2016) (describing *First Colonial* and

*Johnson* as the "leading cases to be considered in determining a reasonable allowance of

compensation").

51.    Akin Gump respectfully submits that a consideration of these factors should result

in the Court's allowance of the full compensation sought in this Application.

      a.    <u>Time and Labor Required</u>.  Akin Gump billed a total of 8,212.80 hours of
professional services and 387.30 hours of paraprofessional and other non-legal
services during the Compensation Period.  As evidenced by this Application,
Akin Gump professionals and paraprofessionals worked diligently and
efficiently without unnecessary duplication of efforts throughout the
Compensation Period.  This is particularly true when considering the nature
and complexity of the issues that arose in the Chapter 11 Cases, including the
treatment of various claims, including administrative expense claims, and in
connection with the Adversary Proceeding and the prosecution of the First
Amended Adversary Complaint.  Akin Gump's representation of the
Creditors' Committee and the Litigation Designees has required it to balance
the need to provide quality services with the need to act quickly and represent

---

[19] The factors articulated by the Fifth Circuit in *First Colonial* were first articulated by the Fifth Circuit in *Johnson,*
with the *First Colonial* court adding the factor of the "spirit of economy," which was later rejected by
Congress.  *See Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*,
127 F.3d 1398, 1403 (11th Cir. 1997).

these parties in an effective, efficient and timely manner.  Akin Gump submits that the hours spent were reasonable given the size and complexity of the Chapter 11 Cases, the significant—and often times urgent—legal issues raised.

b.  <u>Novelty and Difficulty of the Questions</u>.  Akin Gump tasked knowledgeable professionals to research, analyze and provide advice on difficult and complex bankruptcy, litigation and finance issues.  Notably, and as further described herein, Akin Gump's skilled teams assisted the Creditors' Committee and Litigation Designees in (i) evaluating and responding to the Motions to Dismiss and Reply Briefs filed by the Defendants, (ii) monitoring the D&O Coverage Proceedings and analyzing the effect such proceedings may have on potential damages awards issued against the Director Defendants in connection with the Adversary Proceeding and (iii) assisting expert witnesses in preparing relevant reports on complex issues relevant to the Adversary Proceeding.

c.  <u>Skill Requisite to Perform the Legal Services Properly</u>.  Akin Gump believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Akin Gump's practice and its creative approach to the resolution of issues has contributed to the successful administration of the Chapter 11 Cases and benefited the Debtors, the Creditors' Committee and the Litigation Designees.  Due to the nature and complexity of the legal issues presented in the Chapter 11 Cases, Akin Gump was required to exhibit a high degree of legal skill in areas related to, *inter alia*, bankruptcy and litigation matters.  Additionally, Akin Gump's strong working relationship with the legal and financial advisors to other parties in interest enabled Akin Gump to work with such advisors towards a swift, consensual resolution of many of the salient issues in the Chapter 11 Cases.

d.  <u>Preclusion of Other Employment by Applicant Due to Acceptance of the Case</u>. Due to the size of Akin Gump's financial restructuring and litigation departments, Akin Gump's representation of the Creditors' Committee and the Litigation Designees did not preclude its acceptance of new clients, but the demands for immediate and substantive action in the Chapter 11 Cases imposed significant burdens on Akin Gump professionals and paraprofessionals working concurrently on other matters.

e.  <u>Customary Fee</u>.  The rates Akin Gump charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin Gump charges for professional and paraprofessional services rendered in comparable nonbankruptcy matters.  Akin Gump's fee structure also is equivalent to the fee structure used by Akin Gump for restructuring, workout, bankruptcy, insolvency and comparable matters, as well as similar complex corporate and litigation matters, whether in-court or otherwise, regardless of

whether a fee application is required. The firm's customary hourly rates and rate structure reflect that restructuring and related matters typically involve great complexity, numerous tasks requiring a high level of expertise and severe time pressures, as is the case here. Akin Gump's rate structure is similar to the rate structure used by other, similar law firms that work on other, similar matters.

f.   <u>Whether the Fee Is Fixed or Contingent</u>. Pursuant to Bankruptcy Code sections 330 and 331, all fees sought by professionals employed under Bankruptcy Code section 1103 are contingent pending final approval by the Court, and are subject to adjustment depending upon the services rendered and the results obtained. The contingency of full and actual compensation to Akin Gump increased the risk Akin Gump was assuming by representing the Creditors' Committee and the Litigation Designees in the Chapter 11 Cases.

g.   <u>Time Limitations Imposed by the Client or Other Circumstances</u>. As previously set forth herein, Akin Gump was required to attend to certain issues arising in the Chapter 11 Cases under compressed timelines. Akin Gump was faced with limited time in which to conduct significant discovery and prepare the extensive Opposition Briefs in connection with the Adversary Proceeding. The tremendous efforts of Akin Gump professionals and paraprofessionals in completing this work permitted the Creditors' Committee to address effectively various issues for the benefit of the Debtors' unsecured creditors.

h.   <u>Amount Involved and Results Obtained</u>. Akin Gump professionals and paraprofessionals worked diligently to maximize value for the Debtors' estates and creditors. During the Compensation Period, and as described in the summary of services herein, Akin Gump was instrumental in maximizing value for the benefit of unsecured creditors. In particular, the Jointly Asserted Causes of Actions, and any recoveries to the Debtors' estates therefrom, may provide material benefits to all creditors and is the only likely source for recovery for unsecured creditors in the Chapter 11 Cases. Akin Gump submits that the fees requested in this Application are reasonable and appropriate when considering the results that may be obtained on behalf of unsecured creditors, as more fully described in the summary of services.

i.   <u>Experience, Reputation and Ability of Attorneys</u>. Akin Gump is an international law firm that consistently is recognized as a top tier law firm in the field of creditors' rights, business reorganizations and liquidations under chapter 11 of the Bankruptcy Code. During the Compensation Period, Akin Gump solicited the skill and expertise of its attorneys, a number of which have practiced law for over 20 years in a number of jurisdictions and legal disciplines. Akin Gump attorneys have actively represented creditors and creditors' committees, as well as other parties in interest, in a number of the nation's largest chapter 11 cases, including *In re Purdue Pharma L.P.*, *In re Nine West Holdings, Inc.*, *In re iHeartMedia, Inc.*, *In re Cumulus Media Inc.*,

*In re Avaya Inc., In re Chassix Holdings, Inc., In re Energy Future Holdings Corp., In re Dynegy Holdings, LLC, In re Nortel Networks Inc., In re Lightsquared Inc., In re Longview Power, LLC, In re Eastman Kodak Company, In re Cal Dive International, Inc., In re Washington Mutual Inc., In re NII Holdings, Inc., In re MPM Silicones, LLC, In re Overseas Shipholding Group, Inc., In re QCE Finance LLC, In re Residential Capital, LLC, In re Solutia, Inc., In re WorldCom, Inc., In re XO Communications, Inc., In re Tower Automotive LLC, In re VeraSun Energy Corp.,* and many others.  Akin Gump's extensive experience enables it to perform the services described herein competently and expeditiously.  In addition to its expertise in the area of corporate reorganization, Akin Gump has called upon the expertise of its partners and associates in other practice areas to perform the wide-ranging scope of the legal work necessitated by the Chapter 11 Cases, as described above.

     j.    <u>"Undesirability" of the Cases</u>.  This factor is not applicable to the Chapter 11 Cases.

     k.    <u>Nature and Length of Professional Relationship</u>.  Akin Gump has been rendering professional services to the Creditors' Committee since it was selected as counsel to the Creditors' Committee on October 24, 2018.

52.    For the reasons set forth above, the services rendered by Akin Gump were necessary and beneficial to the Creditors' Committee and the Litigation Designees and consistently performed in a timely manner.  The compensation sought in this Application is reasonable in light of the value of such services to the Creditors' Committee, the Litigation Designees and all unsecured creditors, Akin Gump's demonstrated skill and expertise in the bankruptcy field (as well as other areas of expertise relevant to the Chapter 11 Cases) and the customary compensation charged by comparably skilled practitioners at Akin Gump.  Accordingly, Akin Gump respectfully submits that the Court should approve the compensation for professional services and reimbursement of expenses sought herein.

53.    No agreement or understanding exists between Akin Gump and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with the Chapter 11 Cases.  No prior application has been made in this

Court or in any other court for the relief requested herein as it relates to the Compensation

Period.

## **ATTORNEY STATEMENT PURSUANT TO U.S. TRUSTEE GUIDELINES**

54.     The following is provided in response to the request for additional information set

forth in ¶ C.5. of the U.S. Trustee Guidelines.

**Question**:     Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain.

Response:     No.

**Question**:     If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

Response:     Not applicable.

**Question**:     Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

Response:     No.

**Question**:     Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees.

Response:     Yes.  During the Compensation Period, 65.60 hours and $44,372.00 in fees were spent reviewing time records for compliance with the Fee Guidelines.

**Question**:     Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

Response:     See above.

**Question**:     If the fee application includes any rate increases since retention:  (i) Did your client review and approve those rate increases in advance?  (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order

to have you continue the representation, consistent with ABA Formal Ethics
Opinion 11-458?

Response:    Akin Gump disclosed to the Creditors' Committee the hourly rates charged at the
time of its retention and the hourly rates to be charged beginning in January 2020
in the Akin Retention Application and the Supplemental Rate Declaration, which
the Creditors' Committee agreed to.

## **RESERVATION OF RIGHTS**

To the extent that there are services rendered or expenses incurred that relate to the

Compensation Period but were not processed prior to the preparation of the Application, Akin

Gump reserves the right to request additional compensation for such services and reimbursement

of such expenses in a future application.

## **CONCLUSION**

WHEREFORE, Akin Gump respectfully requests: (i) an interim allowance of compensation for professional services rendered during the Compensation Period in the amount of $7,085,203.50 and expense reimbursement in the amount of $2,373,813.28 (ii) the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to Akin Gump's right to seek additional compensation for services performed and expenses incurred during the Compensation Period which were not processed at the time of the Application; and (iii) such other and further relief as the Court deems just, proper and equitable.

Dated: New York, New York
      August 14, 2020

AKIN GUMP STRAUSS HAUER & FELD LLP

By: */s/  Philip C. Dublin*
Ira S. Dizengoff
Philip C. Dublin
Sara L. Brauner
Zachary D. Lanier
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
pdublin@akingump.com
sbrauner@akingump.com
zlanier@akingump.com

*Counsel to the Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al.*

## **EXHIBIT A**

**CERTIFICATION OF PHILIP C. DUBLIN**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re:                                                          :        Chapter 11
                                                                :
SEARS HOLDINGS CORPORATION, et al.                              :        Case No. 18-23538 (RDD)
                                                                :
                                                                :        (Jointly Administered)
                                 Debtors.[1]                     :
-------------------------------------------------------------------x

### CERTIFICATION UNDER THE FEE GUIDELINES IN RESPECT OF THE FIFTH INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OF MARCH 1, 2019 THROUGH AND INCLUDING JUNE 30, 2020

I, Philip C. Dublin, hereby certify that:

1.      I am a partner with Akin Gump,[2] with responsibility for the Chapter 11 Cases of

the above captioned Debtors.  Akin Gump is counsel to Creditors' Committee of Sears Holdings

Corporation and its affiliated debtors and debtors in possession (collectively, the "Debtors").

---

[1] The Debtors in the Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc.(4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used herein but otherwise not defined shall have the meanings ascribed to such terms in the Application.

Akin Gump also serves as Primary Trust Litigation Counsel to the Litigation Designees pursuant to the Confirmation Order.

2.      In accordance with the Fee Guidelines, this certification is made with respect to the Application, for interim allowance of compensation and reimbursement of expenses incurred during the Compensation Period.

3.      In respect of section B.1 of the Local Guidelines, I certify that:

(a)    I have read the Application;

(b)    to the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Fee Guidelines;

(c)    the fees and disbursements sought are billed at rates in accordance with those customarily charged by Akin Gump and generally accepted by Akin Gump's clients; and

(d)    in providing a reimbursable service, Akin Gump does not make a profit on that service, whether the service is performed by Akin Gump in-house or through a third party.

4.      In accordance with section B.2 of the Local Guidelines and as required by the Interim Compensation Order, I certify that Akin Gump has complied with those provisions requiring it to provide the Debtors and the Creditors' Committee with a statement of Akin Gump's fees and disbursements accrued during the previous month, although, due to administrative limitations, such statements were not always provided within the timeframe set forth in the Local Guidelines or the Interim Compensation Order.

5.      In respect of section B.3 of the Local Guidelines, I certify that the Debtors, the U.S. Trustee and the members of the Creditors' Committee are each being provided with a copy of the Application.

Dated: New York, New York                        By: */s/  Philip C. Dublin*
August 14, 2020                                          Philip C. Dublin

2

## EXHIBIT B

**CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURE**

| Blended Hourly Rates | | |
|---|---|---|
| **Category of Timekeeper** | **Billed by NY and DA Offices for Preceding Year[1]** | **Billed in this Application** |
| Partner | $1,332.00 | $1,331.74 |
| Senior Counsel and Counsel | $929.74 | $1,002.15 |
| Associate | $724 | $687.08 |
| Legal Assistant | $215 | $274.62 |
| **All Timekeepers Aggregated** | **$811.97** | **$823.85** |

---

[1] Consistent with the U.S. Trustee Guidelines, this **Exhibit B** discloses the blended hourly rate for the aggregate of all timekeepers in the domestic offices of Akin Gump in which timekeepers collectively billed more than 10% of the hours to these cases during the Compensation Period (i.e., the New York and Dallas offices), segregated by category, and excluding all data from timekeepers practicing primarily in the financial restructuring group.  This data is based on information from a rolling 12-month year ending June 30, 2020.

**<u>EXHIBIT C</u>**

**SUMMARY OF COMPENSATION BY TIMEKEEPER**

| Name of Professional | Position | Department | Year Admitted | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Brauner, Sara L. | Partner | Financial Restructuring | 2011 | $1,225.00 | 137.50 | $168,437.50 |
| Dizengoff, Ira S. | Partner | Financial Restructuring | 1993 | $1,595.00 | 8.00 | $12,760.00 |
| Dublin, Philip C. | Partner | Financial Restructuring | 1999 | $1,595.00 | 18.10 | $28,869.50 |
| Qureshi, Abid | Partner | Financial Restructuring | 1995 | $1,595.00 | 27.00 | $43,065.00 |
| Chapman, Dean L. | Partner | Litigation | 2009 | $1,225.00 | 656.40 | $804,090.00 |
| Lawrence, Lacy M. | Partner | Litigation | 2006 | $1,350.00 | 95.00 | $128,250.00 |
| Sorkin, Joseph L. | Partner | Litigation | 2008 | $1,350.00 | 168.60 | $227,610.00 |
| Zensky, David | Partner | Litigation | 1988 | $1,595.00 | 250.50 | $399,547.50 |
| Matheson, Clayton | Counsel | Intellectual Property | 2010 | $950.00 | 11.00 | $10,450.00 |
| Lloyd, Matthew | Counsel | Litigation | 2014 | $910.00 | 218.40 | $198,744.00 |
| Meier, Brennan | Counsel | Litigation | 2013 | $910.00 | 199.50 | $181,545.00 |
| O'Brien, Patrick | Senior Counsel | Litigation | 2004 | $935.00 | 210.60 | $196,911.00 |
| Park, Daniel S. | Counsel | Litigation | 2011 | $960.00 | 254.40 | $244,224.00 |
| Sharad, Saurabh | Counsel | Litigation | 2015 | $925.00 | 149.90 | $138,657.50 |
| Tizravesh, Roxanne | Counsel | Litigation | 2009 | $1,195.00 | 394.90 | $471,905.50 |
| Williams, Jr., Richard | Counsel | Litigation | 2014 | $960.00 | 5.00 | $4,800.00 |
| Windscheffel, Dennis | Senior Counsel | Litigation | 2004 | $965.00 | 11.60 | $11,194.00 |
| Lanier, Zachary D. | Associate | Financial Restructuring | 2017 | $860.00 | 79.50 | $68,370.00 |
| Mahkamova, Shirin | Associate | Financial Restructuring | 2019 | $700.00 | 75.30 | $52,710.00 |
| Szydlo, Joseph E. | Associate | Financial Restructuring | 2019 | $700.00 | 105.10 | $73,570.00 |

| Name of Professional | Position | Department | Year Admitted | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Figueroa-Santana, Bianca | Associate | Litigation | 2018 | $810.00 | 56.30 | $45,603.00 |
| Glackin, Patrick J. | Associate | Litigation | 2019 | $650.00 | 393.40 | $255,710.00 |
| Kane, John P. | Associate | Litigation | 2016 | $895.00 | 516.80 | $462,536.00 |
| Kulikowski, Jillian R. | Associate | Litigation | 2019 | $650.00 | 733.80 | $476,970.00 |
| Latov, Jeffrey A. | Associate | Litigation | 2017 | $810.00 | 825.50 | $668,655.00 |
| Lombardi, Nicholas | Associate | Litigation | 2018 | $735.00 | 290.40 | $213,444.00 |
| Maizel, Elise | Associate | Litigation | 2017 | $810.00 | 268.70 | $217,647.00 |
| Miller, Katlyne | Associate | Litigation | 2018 | $575.00 | 190.10 | $109,307.50 |
| Nolan, Sean | Associate | Litigation | 2018 | $725.00 | 579.30 | $419,992.50 |
| Praestholm, Amanda | Associate | Litigation | 2017 | $650.00 | 108.30 | $70,395.00 |
| Tandy, Lewis | Associate | Litigation | 2018 | $535.00 | 385.40 | $206,189.00 |
| Collins, Russell J. | Staff Attorney | Practice Attorney | 1998 | $475.00 | 592.20 | $281,295.00 |
| Young, Melodie | Staff Attorney | Practice Attorney | 2003 | $435.00 | 196.30 | $85,390.50 |
| Krasa-Berstell, Dagmara | Legal Assistant | Financial Restructuring | N/A | N/A | 21.20 | $8,798.00 |
| Levy, Sophia D. | Legal Assistant | Financial Restructuring | N/A | $245.00 | 23.10 | $5,659.50 |
| Csizmadia, Suzanne | Legal Assistant | Intellectual Property | N/A | $330.00 | 34.80 | $11,484.00 |
| Walls, Bennett | Legal Assistant | Litigation | N/A | $215.00 | 123.50 | $26,552.50 |
| Greer, Michael | Specialist | Trial Services | N/A | $310.00 | 49.00 | $15,190.00 |
| Moore, James | Specialist | Trial Services | N/A | $285.00 | 76.30 | $21,745.50 |
| Racanati, Frank | Specialist | Trial Services | N/A | $285.00 | 59.40 | $16,929.00 |

## <u>EXHIBIT D</u>

**SUMMARY OF COMPENSATION BY TASK CODE AGAINST BUDGETED HOURS
AND FEES**

| Task Code | Task Code Category | Hours Budgeted (Low – High) | Amount Budgeted (Low – High) | Actual Hours | Actual Amount |
|---|---|---|---|---|---|
| 2 | General Case Administration | 25 – 40 | $12,000.00 – $19,000.00 | 29.30 | $15,857.00 |
| 3 | Akin Gump Fee Application/Monthly Billing Reports | 150 – 250 | $100,000.00 – $200,000.00 | 209.70 | $157,047.00 |
| 4 | Analysis of Other Professionals' Fee Applications/Reports | 10 – 20 | $9,000.00 – $18,000.00 | 19.40 | $16,160.00 |
| 5 | Review/Preparation of Schedules, Statements | 0 | $0.00 | -- | -- |
| 6 | Retention of Professionals | 15 – 25 | $10,000.00 – $25,000.00 | 18.90 | $18,684.50 |
| 7 | Creditor Committee matters/Meetings (including 341 meetings) | 30 – 40 | $35,000.00 – $50,000.00 | 21.80 | $22,126.50 |
| 8 | Court Hearings | 50 – 150 | $40,000.00 – $120,000.00 | 51.50 | $44,315.00 |
| 9 | Financial Reports and Analysis | 5 – 10 | $4,500.00 – $9,000.00 | 1.60 | $1,376.00 |
| 10 | DIP, Cash Collateral Usage and Exit Financing | 0 | $0.00 | -- | -- |
| 11 | Executory Contracts/Lease Issues | 0 – 10 | $0.00 – $10,500.00 | -- | -- |
| 12 | General Claims Analysis/Claims Objections | 50 – 100 | $50,000.00 – $100,000.00 | 64.40 | $76,672.00 |
| 13 | Analysis of Pre-Petition Transactions | 0 | $0.00 | -- | -- |
| 14 | Insurance Issues | 10 – 30 | $10,000.00 – $30,000.00 | 18.80 | $18,892.00 |
| 15 | Secured Creditors Issues /Communications/ Meetings | 5 – 20 | $4,500.00 – $16,000.00 | 3.10 | $3,400.00 |
| 16 | Automatic Stay Issues | 0 – 5 | $0.00 – $7,000.00 | -- | -- |
| 17 | General Litigation Matters/Adversary Proceedings | 15 – 30 | $15,000.00 – $30,000.00 | 11.80 | $14,272.50 |
| 18 | Tax Issues | 0 | $0.00 | -- | -- |
| 19 | Labor Issues/Employee Benefits | 0 | $0.00 | -- | -- |
| 20 | Jointly Asserted Causes of Action | 7,000 – 10,500 | $5,000,000.00 – $11,500,000.00 | 8,133.70 | $6,677,001.50 |
| 21 | Exclusivity | 0 | $0.00 | -- | -- |

| Task Code | Task Code Category | Hours Budgeted (Low – High) | Amount Budgeted (Low – High) | Actual Hours | Actual Amount |
|---|---|---|---|---|---|
| 22 | Disclosure Statement/ Solicitation/Plan/ Confirmation | 0 – 5 | $0.00 – $5,000.00 | 0.80 | $761.00 |
| 23 | Asset Dispositions/363 Asset Sales | 10 – 50 | $10,000.00 – $35,000.00 | 11.80 | $15,594.50 |
| 24 | Real Estate Issues | 5 – 10 | $6,000.00 – $10,500.00 | 3.50 | $3,044.00 |
| 25 | Travel Time | 5 – 10 | $1,000.00 – $5,000.00 | -- | -- |
| 28 | General Corporate Matters | 0 | $0.00 | -- | -- |
| 29 | Intercompany Claims/ Intercompany Transactions/Cash Management | 0 | $0.00 | -- | -- |
| 30 | Customer, Supplier, and Vendor Issues (including Critical Vendor issues) | 0 | $0.00 | -- | -- |
| 31 | Business Operations | 0 | $0.00 | -- | -- |
| **TOTAL** | | **7,385 – 11,305** | **$5,317,000.00 – $12,209,500.00** | **8,600.10** | **$7,085,203.50** |

## <u>EXHIBIT E</u>

**SUMMARY OF EXPENSES BY CATEGORY**

| Disbursement Activity[1] | Amount |
|---|---|
| Computerized Legal Research - Lexis - in contract 30% discount | $22,210.32 |
| Computerized Legal Research - Westlaw - in contract 30% discount | $63,007.70 |
| Computerized Legal Research - Westlaw - out of contract | -- |
| Computerized Legal Research - Courtlink - in contract 50% discount | $459.00 |
| Computerized Legal Research - Other | $834.35 |
| Color Copy | -- |
| Contract Labor - Attorney | -- |
| Courier Service/Messenger Service - Off Site | $751.56 |
| Document Retrieval | $668.00 |
| Duplication - In House | -- |
| Duplication - Off Site | -- |
| Filing Fees | -- |
| Imaging/Computerized Litigation Support | $10,856.25 |
| Meals - Overtime | -- |
| Meals - Business | -- |
| Meals (100%) | $846.31 |
| Miscellaneous | $20.00 |
| Office Supplies – Printing | $47.58 |
| Overtime - Admin Staff | $361.03 |
| Postage | 0.00 |
| Professional Fees - Consultant Fees | $2,225,778.31 |

---

[1] The expenses incurred during the Compensation Period include, among other things: (i) $1,024,952.86 of expenses relating to the payment of consulting fees and expenses incurred by Solomon Page Group LLC, a staffing provider retained in connection with the Adversary Proceeding; (ii) $47,704.75 of expenses relating to the payment of professional fees and expenses incurred by Akin Gump's document management and e-discovery provider, H5; and (iii) $1,230,692.59 of expenses relating to the compensation of expert witnesses retained in connection with the Adversary Proceeding.

| Disbursement Activity[1] | Amount |
|---|:---:|
| Professional Fees - Misc. | $38,761.00 |
| Professional Fees - Process Server | $6,340.65 |
| Research | $297.79 |
| Telephone - Long Distance | $490.00 |
| Transcripts | $930.90 |
| Travel - Airfare | 0.00 |
| Travel - Ground Transportation | $419.67 |
| Travel - Lodging (Hotel, Apt, Other) | 0.00 |
| Local Transportation - Overtime | $232.86 |
| **Total** | **$2,373,813.28** |

# EXHIBIT F

**STAFFING PLAN**

| Category of Timekeeper | Number of Timekeepers Expected to Work on Matter During the Compensation Period | Average Hourly Rate |
|---|---|---|
| Partner | 10 | $1,356.36 |
| Senior Counsel and Counsel | 10 | $1,048.75 |
| Associate | 20 | $714.38 |
| Paralegals & Non-Legal Staff | 5 | $298.00 |