*DRAFT 8/12/20*
*CONFIDENTIAL*
*SUBJECT TO FRE 408*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SEARS HOLDINGS CORPORATION, *et al.*,[1] | § | Case No. 18-23538 (RDD) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

## COVER SHEET FOR THE FINAL
## APPLICATION OF HOULIHAN LOKEY CAPITAL, INC.,
## INVESTMENT BANKER TO THE OFFICIAL COMMITTEE OF
## UNSECURED CREDITORS, FOR ALLOWANCE OF
## COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND
## REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED
## <u>FROM OCTOBER 29, 2018 THROUGH OCTOBER 31, 2019</u>

**NAME OF APPLICANT:**          Houlihan Lokey Capital, Inc.

**TIME PERIOD:**          October 29, 2018 through October 31, 2019

**DATE OF RETENTION:**          December 19, 2018,
*nunc pro tunc* to October 29, 2018

**AUTHORIZED TO PROVIDE
PROFESSIONAL SERVICES TO:**          Official Committee of Unsecured Creditors

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**CURRENT APPLICATION**:                    $0.00

    Fees Incurred (Including 20%
    Holdback):                                  $0.00

    Expenses Incurred:

**PRIOR APPLICATIONS:**

    Fees Previously Requested:        $9,875,000.00

    Fees Previously Awarded:          $9,875,000.00

    Expenses Previously Requested:    $111,517.76

    Expenses Previously Awarded:      $111,517.76

*DRAFT 8/12/20*
*CONFIDENTIAL*
*SUBJECT TO FRE 408*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| | | |
| SEARS HOLDINGS CORPORATION, *et al.*,[1] | § | Case No. 18-23538 (RDD) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**FINAL APPLICATION OF HOULIHAN LOKEY**
**CAPITAL, INC., INVESTMENT BANKER TO THE OFFICIAL**
**COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF**
**COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND**
**REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED**
**FROM OCTOBER 29, 2018 THROUGH OCTOBER 31, 2019**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Houlihan Lokey Capital, Inc. ("Houlihan"), as investment banker to the Official

Committee of Unsecured Creditors (the "Creditors' Committee") of Sears Holdings Corporation

("SHC") and its affiliated debtors and debtors-in-possession in the above captioned chapter 11

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

cases (collectively, the "Debtors"), hereby submits this fourth and final application (the "Application"), pursuant to sections 328(a) and 1103 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules") authorizing the Creditors' Committee to retain and employ Houlihan as investment banker for the Creditors' Committee, nunc pro tunc to October 29, 2018, pursuant to the terms of that certain engagement letter between the Creditors' Committee and Houlihan, dated as of October 29, 2018 (the "Engagement Agreement"), all as more fully described in the Application, and *the Order Authorizing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, dated November 16, 2018 [Docket No. 796] (the "Interim Compensation Order"), for the final allowance of compensation for professional services rendered from October 29, 2018 through and including October 31, 2019 (the "Total Compensation Period"), and for reimbursement of expenses incurred in connection with such services.  This Application has been prepared in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Interim Compensation Order, the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York (June 17, 2013) promulgated pursuant to Local Bankruptcy Rule 2016-1(a) (the "Local Guidelines") and the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 for Attorneys in Larger Chapter 11 Cases, effective as of November 1, 2013 (the "U.S. Trustee Guidelines" and, together with the Local Guidelines, the "Fee Guidelines").  In support of this Application, Houlihan respectfully represents as follows:

2

## BACKGROUND

1.    <u>Bankruptcy Filing</u>.  On October 15, 2018 (the "<u>Petition Date</u>") and continuing thereafter, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No request has been made for the appointment of a trustee or an examiner.

2.    <u>Creditors' Committee</u>.  On October 24, 2018, the United States Trustee for the Southern District of New York (the "<u>U.S. Trustee</u>") appointed the Creditors' Committee pursuant to Bankruptcy Code section 1102.[2] On October 24, 2018, the Creditors' Committee selected Akin Gump Strauss Hauer & Feld LLP ("<u>Akin Gump</u>") to serve as counsel to the Creditors' Committee, subject to Court approval. On October 25, 2018, the Creditors' Committee selected FTI Consulting, Inc. ("<u>FTI</u>") to serve as financial advisor to the Creditors' Committee and on October 29, 2018, the Creditors' Committee selected Houlihan to provide investment banking services to the Creditors' Committee, in each case subject to Court approval.

3.    <u>Jurisdiction</u>.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the chapter 11 cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are sections 328, 330 and 331 of the Bankruptcy Code. Pursuant to the Local Guidelines, a certification regarding compliance with the Local Guidelines is attached hereto as <u>Exhibit A</u>.

---

[2] The Creditors' Committee currently comprises: (i) Brixmor Operating Partnership, L.P.; (ii) Computershare Trust Company, N.A., as indenture trustee; (iii) Oswaldo Cruz; (iv) Pension Benefit Guaranty Corporation; (v) Simon Property Group L.P.; (vi) The Bank of New York Mellon Trust Company, N.A., as indenture trustee; and (vii) Winiadaewoo Electronics America, Inc.

## RETENTION OF HOULIHAN
## AND SUMMARY OF PROFESSIONAL COMPENSATION
## AND REIMBURSEMENT OF EXPENSES REQUESTED

4.      On December 19, 2018, pursuant to the *Order Authorizing the Retention and Employment of Houlihan Lokey Capital, Inc. as Investment Banker to the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 328 and 1103, nunc pro tunc to October 29, 2018* [Docket No. 1326] (the "Retention Order"), the Court authorized Houlihan's retention as investment banker for the Creditors' Committee in these chapter 11 cases. The Retention Order authorized Houlihan to receive compensation pursuant to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Guidelines, the U.S. Trustee Guidelines, and the local rules and orders of this Court.  The Retention Order provided that Houlihan's fees and expenses would be subject to the standard of review provided in Bankruptcy Code section 328(a).[3] Moreover, the Retention Order authorized Houlihan personnel to keep contemporaneous records of services performed in half-hour increments.

5.      Pursuant to the Local Guidelines, a certification regarding compliance with the Local Guidelines is attached hereto as Exhibit A.

6.      On April 15, 2019, Houlihan filed the *First Interim Application of Houlihan Lokey Capital, Inc., Investment Banker to the Official Committee of Unsecured Creditors, for Interim Allowance of Compensation For Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from October 29, 2018 Through February 28, 2019* [Docket No. 3194] (the "First Interim Fee Application"). In the First Interim Fee Application, Houlihan requested interim approval and allowance of (a) compensation for professional services rendered

---

[3] The U.S. Trustee shall retain the right to object to the compensation and reimbursement payable pursuant to the Engagement Agreement based on the reasonableness standard provided for in Bankruptcy Code section 330.

during the period from October 29, 2018 through and including February 28, 2019 (the "First Interim Compensation Period") in the amount of $8,7500,000.00, and (b) reimbursement of its actual and necessary expenses incurred in connection with such services, in the amount of $110,347.94.

7.      On July 1, 2019, the Court entered an order (Docket No. 4409) granting the First Interim Fee Application and authorizing the Debtors to pay Houlihan 100% of requested fees (i.e., $8,750,000.00) and expenses (i.e, $110,347.94). To date, Houlihan has received 100% of the fees and 100% of the expenses authorized by the aforementioned order.

8.      On August 14, 2019, Houlihan filed the *Second Interim Application of Houlihan Lokey Capital, Inc., Investment Banker to the Official Committee of Unsecured Creditors, for Interim Allowance of Compensation For Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from March 1, 2019 Through June 30, 2019* [Docket No. 4842] (the "Second Interim Fee Application"). In the Second Interim Fee Application, Houlihan requested interim approval and allowance of (a) compensation for professional services rendered during the period from March 1, 2019 through and including June 30, 2019 (the "Second Interim Compensation Period") in the amount of $625,000.00, and (b) reimbursement of its actual and necessary expenses incurred in connection with such services, in the amount of $1,169.82.

9.      On October 24, 2019, the Court entered an order (Docket No. 5507) granting the Second Interim Fee Application and authorizing the Debtors to pay Houlihan 100% of requested fees (i.e., $625,000.00) and expenses (i.e, $1,169.82). To date, Houlihan has received 100% of the fees and 100% of the expenses authorized by the aforementioned order.

10.     On December 16, 2019, Houlihan filed the *Third Interim Application of Houlihan Lokey Capital, Inc., Investment Banker to the Official Committee of Unsecured Creditors, for*

*Interim Allowance of Compensation For Professional Services Rendered and Reimbursement of*
*Actual and Necessary Expenses Incurred from July 1, 2019 Through October 31, 2019* [Docket
No. 4842] (the "Third Interim Fee Application"). In the Third Interim Fee Application, Houlihan
requested interim approval and allowance of (a) compensation for professional services rendered
during the period from July 1, 2019 through and including October 31, 2019 (the "Third Interim
Compensation Period") in the amount of $500,000.00, and (b) reimbursement of its actual and
necessary expenses incurred in connection with such services, in the amount of $0.00.

11.     On January 31, 2020, the Court entered an order (Docket No. 6811) granting the
Third Interim Fee Application and authorizing the Debtors to pay Houlihan 100% of requested
fees (i.e., $500,000.00).[4] To date, Houlihan has received 100% of the fees authorized by the
aforementioned order.

12.     Pursuant to Bankruptcy Rule 2016(a), there is no agreement or understanding
between Houlihan and any other person for the sharing of compensation to be received for services
rendered in these cases.

13.     Houlihan respectfully submits that (a) the services provided by Houlihan were
necessary for, and beneficial to, the Creditors' Committee, (b) Houlihan has satisfied the
requirements of Sections 328(a) of the Bankruptcy Code as set forth in the Retention Order, and
(c) the requested compensation is appropriate based on the complexity, importance and nature of
the services provided.

14.     Pursuant to the U.S. Trustee Guidelines and the Retention Order, Houlihan has
maintained a schedule setting forth all Houlihan professionals who have performed services in
these chapter 11 cases during the Total Compensation Period, the capacities in which each such

---

[4] Houlihan incurred no reimbursable expenses during the Third Interim Compensation Period.

individual is employed by Houlihan and the aggregate number of hours expended by restructuring professionals in this matter, which totaled approximately 8,801.5 hours for the period from October 29, 2018 through and including October 31, 2019.

15.    Houlihan does not maintain, in the normal course of providing financial advisory and investment banking services to its clients, detailed written time records, and does not bill its clients based on the number of hours expended by its professionals. However, Houlihan has maintained written records in half-hour increments of the time expended by its restructuring professionals in the rendition of professional services to the Creditors' Committee during the Total Compensation Period in accordance with the terms of the Local Guidelines and the Retention Order. Such time records were made in connection with the rendition of services by the person rendering such services. Annexed hereto as Exhibit B is a schedule setting forth: (i) a list of all professionals who rendered services to the Creditors' Committee and (ii) the total number of hours expended by each restructuring professional during the Total Compensation Period. Since Houlihan does not have the systems in place to allow its professional staff to regularly log hours worked given the flat monthly fee nature of all of its retentions, Houlihan firmly believes the hours provided are materially understated, notwithstanding its best efforts to capture relevant activities. The hours presented represent only those of Houlihan's core deal team and do not reflect non-core deal team activities (i.e. supporting roles from other offices and groups).

16.    Houlihan has not received any payments from the Debtors other than those sought by the First Interim Fee Application, the Second Interim Fee Application, the Third Interim Fee Application, and those set forth in the *Application of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Retention and Employment of Houlihan Lokey Capital, Inc. as Investment Banker to the Official Committee of Unsecured Creditors Pursuant to*

7

*11 U.S.C. §§ 328 and 1103, Nunc Pro Tunc to October 29, 2018* [Docket No. 1071] (the "Retention

Application").

## SUMMARY OF SERVICES RENDERED

17.     Houlihan has been retained as investment banker to the Creditors' Committee in

respect of all of the Debtors in these complex cases because of Houlihan's extensive knowledge

and reputation in financial restructuring, its familiarity with issues involved in these chapter 11

cases and the Creditors' Committee's belief that Houlihan possesses the requisite resources and is

well qualified to represent the Creditors' Committee in these chapter 11 cases. During the Total

Compensation Period, Houlihan rendered a broad range of professional services to the Creditors'

Committee in various areas, addressing critical issues faced by the Creditors' Committee during

these chapter 11 cases. The services that Houlihan has been required to perform and has performed

have been substantial and necessary in these chapter 11 Cases. Houlihan has worked extensively

with other professionals retained by the Creditors' Committee, the Debtors, and the Debtors'

professionals (including but not limited to M-III Partners, LP ("M-III") as financial advisor, Lazard

Freres & Co., LLC ("Lazard") as investment banker, and Weil, Gotshal & Manges LLP, ("Weil")

as counsel), while at the same time Houlihan has attempted to perform its services with the

minimum amount of duplication with the Creditors' Committee's other advisors.

18.     The following summarizes the professional services by category rendered by

Houlihan during the Total Compensation Period. Much of the work performed by Houlihan during

the Total Compensation Period can be categorized under more than one of the categories described

below, however for efficiency and ease of reference we often describe in one category an activity

where time may have also been spent in other categories. For example, analyzing the Debtor's real

estate portfolio is categorized under "Analysis, Presentations, and Due Diligence" below, however

significant time was spent considering the Debtor's real estate in other categories, such as "Financing and Marketing Process Diligence and Analysis" and "Litigation Diligence and Analysis."

**Analysis, Presentations, and Due Diligence**

19.    Houlihan spent a significant amount of time during the Total Compensation Period analyzing the Debtors' various businesses, both as a whole and in each individual part including analyzing the various presented versions of the go-forward business plans and projected transformation of its cost structure, including comparative analyses to historical results. This included analyses of the Debtors' liquidity forecasts both in the short term, and over the forecasted period in the various presented versions of the longer-term business plan. Houlihan spent a significant amount of time analyzing the Debtors' business units and the profitability and viability of each unit, both on an individual basis and each unit's contribution to the combined company. Houlihan also extensively performed due diligence and analysis on the Debtors' real estate portfolio. Significant time was spent in the Total Compensation Period analyzing appropriate valuation for the Debtor's real estate portfolio, including assessing the various types of real estate assets owned/leased under a number of scenarios.

20.    Houlihan prepared, and extensively updated and refined, an analysis of the projected recovery to the Debtors' various stakeholders based on a wide variety of inputs and assumptions regarding claim amounts, treatment of claims, proceeds from the sale of various assets and potential litigation recoveries, and numerous other key variables affecting recoveries. Over the course of the Total Compensation Period, Houlihan, in conjunction with the Creditors' Committee's other professionals, prepared and delivered a significant amount of analyses and presentations to the Creditors' Committee on all of these topics.

21.     Additionally, Houlihan analyzed the implications arising from Debtors' asset sale to Transform Holdco (the "ESL Sale Transaction") to the estates and the remaining claims, including claim treatments related to the 507(b) surcharge provision, the administrative claim settlement, and the corresponding impacts on the recoveries of unsecured creditors. This included analyses of proceeds available after the satisfaction of administrative claims, the Debtors' administrative solvency post-sale, and sensitivities around the proceeds that were in dispute.

22.     Throughout the Total Compensation Period, Houlihan provided analysis of the Debtors' "Estate Tracker" which contained a regularly updated analysis of the projected administrative claims and sources of potential payment of such claims. Houlihan held discussions with the Creditors Committee's advisors to understand the Estate Tracker, analyze its implications, and discuss how to present findings to the Creditors' Committee.

23.     In addition, Houlihan analyzed issues relating to the treatment of certain claims, including with respect to the disputes with the Debtors' secured creditors regarding the 506(c) collateral surcharge and alleged 507(b) claims and the treatment of administrative claims under the confirmed Plan.[5] Houlihan spent time with both the Creditors' Committee's and Debtors' advisors to understand the relative positions and assess the impact to unsecured creditors across a range of treatments of these claims.

**Correspondence with Debtors and Other Stakeholders**

24.     During the Total Compensation Period, Houlihan had many meetings and calls with the Debtors and their advisors on a number of matters, including due diligence, liquidity needs and prospects, business plan development, financial restructuring alternatives, and historical

---

[5] See Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors and (II) Granting Related Relief (Docket No. 5370) (the "Confirmation Order" and Exhibit A thereto, the "Plan").

10

acquisition and disposition transactions. Houlihan coordinated with M-III and Lazard regarding the flow of information on specific issues.

25.    In addition, Houlihan worked with a number of parties, including the Debtors and their advisors, in an attempt to settle disputes related to topics such as administrative claims and the post-confirmation liquidating trust.

**Correspondence with Official Committee of Unsecured Creditors**

26.    During the Total Compensation Period, the Creditors' Committee's advisors coordinated on a regular basis regarding the key issues involved in these chapter 11 cases. This coordination among the Creditors' Committee's advisors included phone calls and in-person meetings. The Creditors' Committee's advisors regularly communicated what each advisor would be working on in order to minimize duplication of efforts where applicable.

27.    Houlihan and the Creditors' Committee's other advisors also held regular conference calls with the Creditors' Committee to provide status updates and provide analyses and related recommendations on a number of topics. During the Total Compensation Period, key topics discussed with the Creditors' Committee included administrative claim settlement, purported 507(b) claims, litigation trust board consideration, the Plan (and earlier iterations thereof) and related confirmation issues.

28.    Houlihan spent time in the Total Compensation Period advising the Creditors' Committee on various issues leading up to the eventual confirmation of the case, including analyzing various confirmation objections, terms related to the APA settlement, terms related to the administrative claim settlement, and potential treatments of various assets remaining in the estate.

**Financing and Marketing Process Diligence and Analysis**

29.     Early on in the cases, Houlihan spent significant time analyzing and performing diligence on the Debtors' proposed DIP financing, both the "senior" and "junior" DIP facilities. This review required a number of calls and meetings with the Debtors' advisors and with potential providers of DIP financing. In addition, Houlihan spent a significant amount of time during the Total Compensation Period analyzing the Debtors' marketing process for their various assets, both on an individual basis and as a whole. The conclusions drawn from this analysis were compared to analyses performed on a potential liquidation of the Debtors' assets. This analysis included extensive discussions with the Debtors' professionals, potential bidders, and members of the Debtors' management team. Houlihan analyzed a wide variety of offers received by the Debtors for their various assets, and regularly presented its findings regarding the Debtors' marketing process to the Creditors' Committee. Houlihan performed diligence on proposed individual transactions throughout the Total Compensation Period, such as the proposed sale of Sears Home Improvement ("SHIP") and certain individual real estate assets.

30.     Houlihan also conducted analyses supporting the Creditors' Committee's review of the Debtors' auction of certain Sears Roebuck Acceptance Corp. ("SRAC") securities, including evaluating potential litigation and intercompany related issues arising from the auction.

**General Case Administration**

31.     Given the amount of information gathered during the Total Compensation Period, Houlihan spent considerable time organizing all of the data onto its internal network so that Houlihan team members could analyze and review efficiently. Houlihan cataloged documents received directly from the Debtors and their advisors.

32.     In connection with Houlihan's ongoing retention, Houlihan's financial staff also performed a comprehensive review of potential conflicts with various parties in interest in these chapter 11 cases. The conflicts check was also reviewed by Houlihan's legal department.

33.     Houlihan spent time attending or listening to hearings, tracking hours, and preparing the Fee Statements during the Total Compensation Period. Houlihan also spent time in the Total Compensation Period preparing backup information and reports for the appointed fee examiner.

**Litigation Diligence and Analysis**

34.     During the Compensation Period, Houlihan spent a significant amount of time analyzing and performing due diligence related to certain prepetition transactions involving the Debtors, their affiliates, and certain of the Debtors' predecessors. In addition, Houlihan, along with the Creditors' Committee's other advisors, prepared extensively for litigation in order to challenge the sale transaction to Transform HoldCo LLC (the "Sale Transaction"). Houlihan assisted the Creditors' Committee's other advisors in the review of discovery materials and preparation of deposition content, attended numerous depositions, and at the direction of the Creditors' Committee's counsel created multiple presentations for the Creditors' Committee related to litigation-related topics. Houlihan also produced a witness, with both live and written testimony, supporting the Creditor's Committee's objection to the Sale Transaction. Houlihan spent considerable time holding informal discussions with key parties attempting to both improve the Sale Transaction and to narrow the contested issues.

35.     During the Total Compensation Period, Houlihan spent time analyzing and doing due diligence on litigation and potential litigation related issues including purported 507(b) claims, APA disputes, the proposed administrative claim settlement, and other claims being prepared.

36.     The professional services performed by Houlihan were necessary and appropriate to the administration of the chapter 11 Cases and were in the best interests of the Creditors' Committee and other parties in interest. Compensation for the services described above is commensurate with the complexity, importance, and nature of the problems, issues, or tasks involved.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

37.     Houlihan respectfully submits that the services for which it seeks compensation in the Application were necessary for, and beneficial to, the Creditors' Committee and that Houlihan has satisfied the requirements of sections 328(a), 330(a), and 331 of the Bankruptcy Code as set forth in the Retention Order. Houlihan's requested compensation is appropriate based on the complexity, importance and nature of the services provided, and is consistent with the customary compensation charged by comparable professionals both in and out of the bankruptcy context. Houlihan therefore respectfully requests that the Court grant the relief requested in this Application.

## NO DUPLICATION OF SERVICE

38.     Houlihan has developed a cooperative working relationship on behalf of the Creditors' Committee with Akin Gump as the Creditors' Committee's counsel and FTI as the Creditors' Committee's financial advisors. Because each firm has been aware of the others' roles and services to the Creditors' Committee, Houlihan believes that no unnecessary duplication of services has occurred.

## NO PRIOR REQUEST

39.     No previous motion for the relief sought herein has been made to this or any other court.

14

## **CONCLUSION**

WHEREFORE, Houlihan respectfully requests the Court (a) allow Houlihan (i) an

allowance of compensation for professional services rendered during the Total Compensation

Period in the amount of $9,875,000.00 and necessary expenses Houlihan incurred during the Total

Compensation Period in the amount of $111,517.76 for a total award of $9,986,517.76 and (ii)

such other and further relief as is just and proper.

Dated: New York, NY
      August 14, 2020

HOULIHAN LOKEY CAPITAL, INC.
Investment Banker to the Official Committee of Unsecured
Creditors of Sears Holdings Corporation, *et al.*


_____
Saul E. Burian
Managing Director
245 Park Avenue, 20th Floor
New York, NY 10167
Telephone: (212) 497-4245

## EXHIBIT A

**BURIAN CERTIFICATION**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| SEARS HOLDINGS CORPORATION, *et al.*,[1] | § | Case No. 18-23538 (SSC) |
|  | § |  |
| Debtors. | § | (Jointly Administered) |
|  | § |  |

## CERTIFICATION UNDER GUIDELINES FOR FEES AND DISBURSEMENTS FOR PROFESSIONALS IN RESPECT OF FINAL APPLICATION OF HOULIHAN LOKEY CAPITAL, INC., FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

I, Saul Burian, hereby certify that:

1.      I am a Managing Director with the applicant firm, Houlihan Lokey Capital, Inc.,

("Houlihan"), as investment banker for the Official Committee of Unsecured Creditors (the

"Creditors' Committee") for the jointly administered chapter 11 cases of Sears Holdings

Corporation, et. al. (together, the "Debtors"), in respect of compliance with the Amended

Guidelines for Fees and Disbursements for Professionals in Southern District of New York

Bankruptcy Cases adopted by the Court on January 29, 2013 (the "Local Guidelines"), the United

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted January 30, 1996 (the "U.S. Trustee Guidelines") and the *Order Authorizing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, dated November 16, 2018 [Docket No. 796] (the "Interim Compensation Order," and collectively with the Amended Local Guidelines and U.S. Trustee Guidelines, the "Guidelines").

2.    This certification is made in respect of Houlihan's application, (the "Application"), for interim compensation for the period commencing October 29, 2018, through and including October 31, 2019, (the "Total Compensation Period") in accordance with the Local Guidelines.

In respect of section B.1 of the Local Guidelines, I certify that:

(a)    I have read the application;

(b)    To the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Local Guidelines;

(c)    The Application respectfully requests that this Court enter an Order awarding Houlihan $9,875,000 as compensation for services rendered during the Total Compensation Period;

(d)    The fees and disbursement requested in the Application are billed in accordance with practices customarily employed by Houlihan and generally accepted by Houlihan's clients; and

(e)    In providing a reimbursable service, Houlihan does not make a profit on that service, whether the service is performed by Houlihan in-house or through a third party.

3.    In respect of section B.2 of the Local Guidelines and as required by the Interim Compensation Order, I certify that Houlihan has provided, on a monthly basis or as soon as reasonably possible, statements of Houlihan's fees and disbursements accrued during the previous month, to the Debtors and the co-chairs of the Creditors' Committee.

2

4.      In respect of section B.3 of the Local Guidelines, I certify that the Debtors, the

United States Trustee for the Region 2 and the co-chairs of the Creditors' Committee are each

being provided a copy of the Application.

Dated: New York, New York
           August 14, 2020            Respectfully submitted,


                                      HOULIHAN LOKEY CAPITAL, INC.
                                      Investment Banker to the Official Committee of Unsecured
                                      Creditors of Sears Holdings Corporation, *et al.*


                                      _____
                                      Saul E. Burian
                                      Managing Director
                                      245 Park Avenue, 20th Floor
                                      New York, NY 10167
                                      Telephone: (212) 497-4245

**EXHIBIT B**

**Sears Holdings Corporation**
**Houlihan Lokey Capital, Inc.**
**October 29, 2018 - October 31, 2019**

### Summary of Services Rendered by Category

| Code # | Category Description | First Interim | Second Interim | Third Interim | Total |
|--------|----------------------|--------------:|---------------:|--------------:|------:|
| A | General Case Administration | 640.5 | 206.5 | 126.0 | 973.0 |
| B | Correspondence with Debtor and Other Stakeholders | 890.5 | 103.5 | - | 994.0 |
| C | Correspondence with Official Committee of Unsecured Creditors | 1,000.0 | 166.0 | 29.5 | 1,195.5 |
| D | Analysis, Presentations, and Due Diligence | 2,630.0 | 568.0 | 189.0 | 3,387.0 |
| E | Financing Diligence and Analysis | 162.5 | - | - | 162.5 |
| F | Litigation Diligence and Analysis | 629.5 | 39.5 | 210.5 | 879.5 |
| G | Real Estate Analysis | 1,210.0 | - | - | 1,210.0 |
| **TOTAL** | | **7,163.0** | **1,083.5** | **555.0** | **8,801.5** |

### Summary of Services Rendered by Professional

| Name | First Interim | Second Interim | Third Interim | Total |
|------|--------------:|---------------:|--------------:|------:|
| Saul Burian, Managing Director | 481.0 | 156.5 | 66.5 | 704.0 |
| Eric Siegert, Senior Managing Director | 120.0 | 3.0 | - | 123.0 |
| Brad Geer, Managing Director | 421.0 | 16.5 | - | 437.5 |
| Surbhi Gupta, Managing Director | 149.0 | 9.0 | - | 158.0 |
| Greg Rinsky, Director | 238.0 | - | - | 238.0 |
| Tom Hedus, Senior Vice President | 719.0 | 203.5 | 119.5 | 1,042.0 |
| Ross Rosenstein, Associate | 885.0 | 132.5 | 93.0 | 1,110.5 |
| Ryan Conroy, Associate | 243.0 | - | - | 243.0 |
| John Hartigan, Associate | 858.0 | 171.0 | 128.0 | 1,157.0 |
| Ahmed Mumtaz, Associate | 188.5 | - | - | 188.5 |
| Tanya Wong, Associate | 222.0 | 1.0 | - | 223.0 |
| Jack Foster, Financial Analyst | 752.5 | 208.5 | - | 961.0 |
| James Lai, Financial Analyst | 880.5 | 165.0 | 148.0 | 1,193.5 |
| Natalie Weelborg, Financial Analyst | 436.5 | 15.0 | - | 451.5 |
| Andrew Felman, Financial Analyst | 260.5 | - | - | 260.5 |
| Jenner Currier, Financial Analyst | 143.5 | 2.0 | - | 145.5 |
| Matthew Stadtmauer, Financial Analyst | 165.0 | - | - | 165.0 |
| **TOTAL** | **7,163.0** | **1,083.5** | **555.0** | **8,801.5** |