## Exhibit 1

**Assumption Agreement**

## ASSUMPTION AGREEMENT

THIS ASSUMPTION AGREEMENT (the "Assumption Agreement") dated August 10, 2020, is made and entered into by and among (i) Sears Holdings Corporation ("Sears Holdings"); (ii) Kmart Holding Corporation ("Kmart Holdings", and collectively with Sears Holdings, "Original Insureds"); (iii) ESL Investments, Inc. ("ESL"); (iv) Transform Holdco LLC ("Assuming Entity" and collectively with ESL, the "Transform Entities"); and (v) the Chubb Companies (as defined below and together with each of the Original Insureds and each of the Transform Entities, each a "Party" and collectively, the "Parties"). Each of the Parties enters into this Assumption Agreement on behalf of itself and each of its affiliates and predecessors.

WHEREAS, starting on October 15, 2018 (the "Petition Date"), each of the Original Insureds and certain of their affiliates (collectively, the "Debtors") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court"), which cases were administratively consolidated at Case No. 18-23538 (the "Chapter 11 Case");

WHEREAS, ACE American Insurance Company, Indemnity Insurance Company of North America, ACE Property and Casualty Insurance Company, Illinois Union Insurance Company, ACE Fire Underwriters Insurance Company, Westchester Surplus Lines Insurance Company and Westchester Fire Insurance Company (collectively and together with each of their affiliates and predecessors, the "ACE Companies") provided from time to time certain insurance coverage including, but not limited to, property, primary casualty, directors and officers, general liability, excess general liability, international casualty, workers' compensation, excess workers' compensation, excess fire, international advantage, umbrella excess, environmental, fiduciary liability, automobile liability, professional liability, construction wrap up, employment practices liability, inland marine and certain other insurance to the Original Insureds under and subject to the terms, conditions and limitations of certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time and for all policy periods, collectively and together with any agreements related thereto, the "ACE Insurance Program");[1]

WHEREAS, Federal Insurance Company, Great Northern Insurance Company, Vigilant Insurance Company, Texas Pacific Indemnity, Company Chubb Custom Insurance Company and Executive Risk Specialty Insurance Company (collectively and together with each of their affiliates, the "Federal Companies," and collectively with the ACE Companies, "Chubb Companies") provided from time to time certain insurance coverage including, but not limited to,

---

[1]     The ACE Insurance Program shall also include, without limitation: (a) collectively, and as a subset of the ACE Insurance Program, the "Prior LPT/Swap Documents": (i) that certain Binder dated as April 20, 2018 together with all insurance policies, agreements, documents and letters issued, sent or entered into in relation thereto, (ii) that certain Binder with a program effective date of March 31, 2019 together with all insurance policies, agreements, documents and letters issued, sent or entered into in relation thereto and (iii) that certain Agreement dated December 27, 2016 between certain of ACE Companies and the Sears Companies (as defined therein) with respect to the swap of certain collateral. Further, the ACE Insurance Program includes policies issued to non-Debtors to the extent that they provide coverage to the Debtors, and any agreements related thereto and (b) Assumption and Novation Agreement, as renewed, amended, modified, endorsed or supplemented from time to time and including any exhibit or addenda thereto, by and between (i) Lumbermens Mutual Casualty Company and American Motorists Insurance Company, (ii) ACE American Insurance Company, and (iii) Sears, Roebuck and Co., effective as of June 30, 2005.

guild travel accident, boiler and machinery, fire, crime, excess crime, directors and officers, excess, export package, excess retail, fiduciary liability, general liability, property, package, fire, cargo, automobile liability, umbrella, workers' compensation, and certain other insurance to the Original Insureds under and subject to the terms, conditions and limitations of certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time and for all policy periods, collectively and together with any agreements related thereto, "Chubb Insurance Programs" and together with the ACE Insurance Program, "Insurance Programs");

WHEREAS, to secure certain of the obligations of the Original Insureds under the Insurance Programs, the Original Insureds provided certain collateral and/or security to the Chubb Companies including that certain letter of credit No. 69608878 issued by Citibank, N.A. in the amount of $73,730,244 (as amended, confirmed, supplemented or replaced and together with the proceeds thereof, the "Letter of Credit");

WHEREAS, on February 8, 2019, the Court approved a sale of substantially all of the Debtors' assets to the Assuming Entity pursuant to that certain *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* [D.I. 2507] (the "Sale Order");

WHEREAS, paragraph 64 of Sale Order expressly provides that the Chubb Insurance Contracts (as defined therein)[2] were not "sold, assigned or otherwise transferred" to the Assuming Entity;

WHEREAS, on October 15, 2019, the Court entered the *Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors and (II) Granting Related Relief* [D.I. 5370] (the "Confirmation Order") and confirmed the Debtors' *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* (as attached as Exhibit A to the Confirmation Order, the "Confirmed Plan");

WHEREAS, Section 13.4 of the Confirmed Plan addresses the Insurance Contracts[3] and among other things, provides that the Insurance Contracts (as defined in the Confirmed Plan) shall be assumed in their entirety by the Debtors on the Effective Date of the Confirmed Plan, and upon such assumption, the Liquidating Trust (as defined in the Confirmed Plan) shall remain liable in full for any and all now existing or hereafter arising obligations thereunder;

---

[2]      The term "Chubb Insurance Contracts"  as defined in the Sale Order has the same meaning as the term "Insurance Programs" as used herein.

[3]      The term "Insurance Programs" as used herein constitute those Insurance Contracts (as defined in the Confirmed Plan) issued by or entered into with any of the Chubb Companies.  Further, prior to the filing of the final version of the Confirmed Plan on September 13, 2019, counsel for the Original Insureds' and the Chubb Companies' counsel agreed to revisions to certain other related sections of the Plan which revisions were reflected in the Confirmed Plan.  Such other sections together with Section 13.4 of the Confirmed Plan shall be referred to as "Insurance Sections".

WHEREAS, the Effective Date (as defined in the Confirmed Plan) of the Confirmed Plan has not yet occurred;[4]

WHEREAS, after consummation of the Sale, the Original Insureds and the Transform Entities have requested that in furtherance of the transactions contemplated by the Sale Order and the Confirmed Plan, the Chubb Companies (i) consent to the assumption and assignment in the Chapter 11 Case by the Original Insureds of a certain portion of the Insurance Programs (the Policies identified on Exhibit A hereto as the "Referenced Policies" and any agreements related thereto whether or not listed on Exhibit A hereto, the "Assigned Insurance Contracts")[5] to the Assuming Entity and (ii) agree to a certain loss portfolio transfer (the "LPT"[6] and parts (i) and (ii) hereof shall collectively be referred to as the "Transaction"); and

WHEREAS, and as a condition for considering this request for the Transaction, the Chubb Companies have required, among other things, that the Original Insureds and the Transform Entities execute this Assumption Agreement

NOW THEREFORE, incorporating the foregoing herein, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Parties hereby agree as follows:

1.      Integrated Transaction.  Each of the Parties understands, acknowledges and agrees that the Assumption Agreement and the LPT constitute an integrated transaction that shall occur in immediate succession and that if the entirety of the Transaction does not take effect by the Program Transaction Date (as defined in the Binder), the Assumption Agreement and the Order (as defined herein) shall each be null and void.

2.      Conditions to Effectiveness.  The effectiveness of this Assumption Agreement and the Parties' obligations hereunder shall be subject to the prior satisfaction of all of the following material conditions precedent with time being of the essence in each instance:

2.1.    Court Approval.

a.      The Debtors or the Transform Entities shall file or cause to be filed with the Court a notice of presentment of a proposed order requesting court approval of the Assumption Agreement and the Assumption Agreement Release, among other things, as detailed

---

4       The term "Plan" shall refer to the Confirmed Plan or any plan proposed in this Chapter 11 Case.

5       The Assigned Insurance Contracts are a subset of the Insurance Programs. The portion of the Insurance Programs remaining after assignment of the Assigned Insurance Contracts shall be collectively, the "Retained Insurance Contracts." Collectively, the Assigned Insurance Contracts and the Retained Insurance Contracts constitute all of the Insurance Programs and there shall be no portion of the Insurance Programs that is not either an Assigned Insurance Contract or a Retained Insurance Contract.

6       LPT shall consist of (i) that certain Binder (the "Binder") dated as of August 10, 2020, (ii) the CIP (as defined in the Binder) and (iii) all other insurance policies, agreements, documents and letters issued, sent or entered into in relation thereto. The Binder is attached hereto as Exhibit "B."

herein (the "<u>Notice of Presentment</u>") and obtain an order (the "<u>Order</u>") of the Court. Once the relevant period under which the Order can be appealed has passed with no appeals pending, such Order shall have become a final, non-appealable order (the "<u>Final Order</u>"). The Notice of Presentment, Order and Final Order shall each be in a form acceptable to the Chubb Companies, the Debtors and Transform Entities in all respects.

b.      The Order and the Final Order shall provide that:

    i.    this Assumption Agreement and the Assumption Agreement Release (as defined herein) are approved by the Court;

    ii.    the Debtors are authorized and directed to enter into this Assumption Agreement and any other agreements or documents necessary to effectuate the Transaction; <u>provided, however</u>, that if the Transaction does not take effect by the Program Transaction Date (as defined in the Binder), the Assumption Agreement and the Order shall each be null and void;

    iii.    the Debtors are authorized and directed to assume the Insurance Programs pursuant to Sections 105 and 365 of the Bankruptcy Code, provided, however, that the Debtors shall not be required to cure any existing defaults with respect thereto, any of which shall be cured and paid by the Assuming Entity, according to the terms of this Assumption Agreement[7];

    iv.    the Debtors are authorized and directed to assign to the Assuming Entity pursuant to Sections 105 and 365 of the Bankruptcy Code (a) the Assigned Insurance Contracts and (b) without in any way altering or affecting the Chubb Companies' right, claims, title and interest to and in the Letter of Credit, any rights, claims, title and interest of the Debtors and their estates to and in $56,650,000 of the Letter of Credit (the "<u>Assigned LOC Proceed Amount</u>") and the Returned LOC Proceeds (as defined herein);

---

[7]    The Assuming Entity and the Chubb Companies understand, accept and agree that (i) as of July 8, 2020, the liquidated amount due is $368,006 (the "<u>Liquidated Amount</u>") and (ii) certain obligations under the Insurance Programs may not become liquidated or otherwise due and owing until after the Agreement Effective Date (as defined herein) and further, that the Assuming Entity shall be liable for all cure amounts as well as all AIC Obligations (as defined herein) regardless of when they become due and owing and notwithstanding this provision of the Final Order. The Chubb Companies agree to accept $168,006 in full satisfaction of the Liquidated Amount, provided that such amount is paid by the Assuming Entity from the Returned LOC Proceeds (as defined herein) as described in section 3.3(iv) herein.

v.      the Assuming Entity shall assume and be liable for all the AIC Obligations (as defined herein) regardless of when such AIC Obligations arise or become due and owing;

vi.     upon the Program Transaction Date, any rights, claims, title and interest of the Debtors or their estates to and in the Assigned LOC Proceed Amount, the Remaining LOC Proceeds, and the Returned LOC Proceeds (as defined herein) shall be forever waived and released;

vii.    the Chubb Companies shall be reimbursed for any remaining Retained Obligations (as defined herein)8 regardless of when such Retained Obligations arise or become due and owing by the Chubb Companies applying, on behalf of the Debtors, the Remaining LOC Proceeds to such Retained Obligations as they become due and owing. In the event that the Remaining LOC Proceeds are insufficient to pay all Retained Obligations, the Chubb Companies shall be precluded from seeking any further payment from the Debtors; provided, however, that nothing in the Transaction or the Final Order shall obligate the Chubb Companies in any way to pay or satisfy any obligations or liabilities of the Debtors under the Retained Insurance Contracts other than the Retained Obligations;

viii.   within two (2) business days after the Chubb Companies receives the Draw (as defined herein), each of the Chubb Companies and the Transform Entities shall have made or cause to have made a payment to the Original Insureds in the amount of $100,000, plus one half of the amount of the reasonable and documented attorneys' fees incurred by the Original Insureds in connection with the Transaction and the Notice of Presentment, not to exceed $50,000 in the aggregate, in cash or other immediately available funds pursuant to payment instructions provided by the Original Insureds; provided, however, (i) on behalf of the Assuming Entity, the Chubb Companies shall make, as described in section 3.3(iv) herein, the payment of the amount (i.e., $100,000 plus up to $25,000) that the Assuming Entity owes the Original Insureds pursuant to this section 2.1(b)(viii), (ii) the Original Insureds will provide to the

---

8 The "Retained Obligations" shall be any and all now existing or hereafter arising payment obligations of the Original Insureds to the Chubb Companies under the Retained Insurance Contracts that are not AIC Obligations, including, any and all liabilities and obligations to reimburse the Chubb Companies for amounts within applicable deductibles. The "Retained Obligations" shall not include any amounts within a self-insured retention or any amounts in excess of any applicable limits of a Retained Insurance Contract.

Chubb Companies and the Assuming Entity the supporting documentation for the reasonable attorneys' fees incurred by counsel to the Original Insureds no later than three (3) business days after the filing of the Notice of Presentment, and (iii) the Original Insureds shall be entitled to submit additional documentation for professional fees incurred after the filing of the Notice of Presentment, subject to the cap set forth in section 2.1(b)(viii) of the Assumption Agreement;

ix.    except as expressly agreed by the Chubb Companies in writing, the Order, the Assumption Agreement and the Insurance Programs, including without limitation, any agreement to arbitrate disputes shall not be altered by (and shall survive) any chapter 11 plan or any other order of the Court (including any order providing for dismissal or conversion of the Chapter 11 Cases), and each of the Debtors and each of the Transform Entities and each of their successors and assigns including, but not limited to, any trustee appointed pursuant to the Bankruptcy Code, shall not take any action against the Chubb Companies that is inconsistent with terms of the Insurance Programs and/or the Assumption Agreement;

x.    the automatic stay provided under Section 362(a) of the Bankruptcy Code and any injunction in any Plan, if and to the extent applicable, shall be lifted, without further order of the Court, to permit (a) claimants with workers' compensation and direct action claims arising under the Insurance Programs to proceed with their claims and (b) the Chubb Companies to administer, handle, defend, settle and/or pay (including all costs related thereto) (I) all workers' compensation and direct action claims arising under the Insurance Programs and (II) any claim for which an order has been entered by the Court granting the claimant relief from the automatic stay or any injunction in any Plan to proceed with its claim;

xi.    (a) the Order is immediately enforceable upon entry, and (b) the stay set forth in the Federal Rule of Bankruptcy Procedure 6004(h) and 6006(d) shall be waived; and

xii.    the Order shall bind each of the Debtors, the Liquidating Trust[9] established by the Confirmed Plan each of the

---

[9] Should the Confirmed Plan not become effective, the Original Insureds agree that the concept and the term of "Liquidating Trust" may need to be revised, subject to the written approval of the Chubb Companies, to

Transform Entities and each of the foregoing's respective successors in interest and assigns including, without limitation, any trustee appointed pursuant to the Bankruptcy Code.

c.  The Debtors or the Transform Entities shall prepare, file and prosecute the Notice of Presentment.  The Debtors or the Transform Entities shall give all required notices of the Notice of Presentment to all appropriate parties in interest in the bankruptcy cases.  The Notice of Presentment shall provide that the Transform Entities and the Chubb Companies shall each pay the amounts described in section 2.1(b)(viii) hereof.

2.2.    The Original Insureds shall have assumed the Insurance Programs;

2.3.    The Original Insureds shall have assigned the Assigned Insurance Contracts to the Assuming Entity as of the Agreement Effective Date (as defined herein);

2.4.    Execution of this Assumption Agreement by all of the Parties;

2.5.    Execution of the Binder by the Assuming Entity and Indemnity Insurance Company of North America; and

2.6.    Payment in full by the Transform Entities in satisfaction of all sums currently due and owing (including the Liquidated Amount) to the Chubb Companies under this Assumption Agreement.

3.    Transfer, Assignment and Assumption of Insurance Programs.

3.1.    Effective upon the date on which all of the conditions set forth in Section 2 above have been satisfied ("Agreement Effective Date"), the Original Insureds hereby transfer and assign to the Assuming Entity and the Assuming Entity hereby accepts and assumes from the Original Insureds, all rights, claims, title and interest in and to, and agrees to observe, pay, perform, satisfy, fulfill and discharge, any and all now existing or hereafter arising duties, terms, provisions, covenants, obligations and liabilities of the Original Insureds or any of them under the Assigned Insurance Contracts, including, without limitation, any and all liabilities and obligations to pay losses and expenses within the deductibles, pay premium to the Chubb Companies, and pay service fees (hereinafter collectively and including any amounts not paid pursuant to paragraph 2.6 hereof, the "AIC Obligations"); provided, however, notwithstanding anything to the contrary in this Assumption Agreement and without altering the foregoing assumption

---

correspond to any subsequently-identified successor(s) to the Original Insureds, if any, under any Plan or conversion order or dismissal order entered in the Chapter 11 Case, including, without limitation, any chapter 7 trustee.

of the AIC Obligations, the Assuming Entity is not entitled to coverage under the Insurance Programs for claims against the Assuming Entity; provided, further, however, that, subject to the effectiveness of the LPT, such AIC Obligations shall be satisfied as provided in the LPT.  For the avoidance of doubt, the Assuming Entity is assuming all underlying claims that are insured under the Assigned Insurance Contracts.  The Assuming Entity hereby acknowledges and agrees that the Chubb Companies may enforce their rights under the Assigned Insurance Contracts against the Assuming Entity, as though the Assuming Entity was the original named insured thereunder and a party thereto.  The Chubb Companies hereby acknowledge and agree that after the Agreement Effective Date, the Chubb Companies may not enforce their rights under the Assigned Insurance Contracts against the Original Insured or any of its successors.

3.2.    Upon the Agreement Effective Date, the Original Insureds  hereby (a) transfer and assign to the Assuming Entity and the Assuming Entity hereby accepts and assumes from the Original Insureds, all rights, claims, title and interest (including any reversionary interest) in and to, the Assigned LOC Proceed Amount and (b) forever waive and release all of their rights, claims, title and interest in and to the Assigned LOC Proceed Amount, the Remaining LOC Proceeds and the  Returned LOC Proceeds (as defined herein).  The Original Insureds expressly consent to and waive any right to challenge in any way, the Chubb Companies drawing on the Letter of Credit including the Draw (as defined herein), provided that the Draw complies with the requirements of section 3.3 hereof.

3.3.    Within two (2) business days after the Agreement Effective Date, the Chubb Companies shall submit via overnight mail a request for a draw (or draws) on the Letter of Credit for full balance thereof (*i.e.*, $73,730,244, the "Draw") which shall be distributed as follows: (i) within two (2) business days after Chubb Companies receives the Draw, the Chubb Companies shall wire in immediately available funds $11,989,352 less the amounts due from the Assuming Entity to the Original Insureds and the Chubb Companies as described in sections 2.1(b)(viii) and 2.6 herein respectively (the "Returned LOC Proceeds") to the Assuming Entity pursuant to the wiring instructions set forth on Exhibit C hereof, (ii) subject to the effectiveness of the LPT, the Assigned LOC Proceed Amount shall be applied as provided for in the LPT, (iii) $5,090,892 (the "Remaining LOC Proceeds") shall be held by the Chubb Companies and applied to any Retained Obligations owing or arising under the Retained Insurance Contracts in accordance with the terms thereof and of this Assumption Agreement; and (iv) within two (2) business days after the Chubb Companies receives the Draw, the Chubb Companies shall wire in immediately available funds (A) the amounts due from the Assuming Entity to the Original Insureds as described in section 2.1(b)(viii) and (B) the amounts due from the Chubb Companies to the Original Insureds as described in section 2.1(b)(viii) to the Original Insureds, pursuant to the wiring instructions set forth on Exhibit D hereof.

3.4.    Upon the Agreement Effective Date, the right, if any, to any return premiums, loss payments, expense adjustments, return of paid loss deposit funds, and other benefits or credits (i) under the Assigned Insurance Contracts shall belong to the

Assuming Entity, and not to the Original Insureds (provided, however, that pursuant to the LPT, such shall belong to the Chubb Companies), and (ii) under the Retained Insurance Contracts shall belong to the Debtors.

3.5.    As of the Agreement Effective Date and subject to the terms of this Assumption Agreement (including section 3.4 hereof) the Assuming Entity is entitled to receive all insurance benefits of the Assigned Insurance Contracts, and the Chubb Companies shall provide or pay all of such insurance benefits to the Assuming Entity as though the Assuming Entity were the original named insured under and party to the Assigned Insurance Contracts; provided, however, that such agreement by the Chubb Companies is conditioned on and subject to the Assuming Entity's assumption of all duties and obligations to the Chubb Companies under the Assigned Insurance Contracts including, but not limited to, payment in full of the AIC Obligations; provided further, however, that except as expressly provided herein, nothing alters the coverage provided by the Insurance Programs.

3.6.    As of the Agreement Effective Date, (i) the Chubb Companies shall be under no obligation whatsoever to determine the applicability of any policy under the Insurance Programs, and/or the availability of coverage or proceeds thereunder, with respect to any underlying claim against the Original Insureds, the Assuming Entity, or both, except in the normal course of responding to tender of a claim, (ii) without altering the Chubb Companies' ability to determine in its sole discretion if coverage exists under the Insurance Programs and how losses, insurance proceeds or benefits are allocated between or among multiple insureds or claimants, issues regarding allocation of losses, insurance proceeds or benefits between the Original Insureds and Assuming Entity shall otherwise be determined by and between Chubb and the Assuming Entity, at their sole cost and expense, (iii) the Chubb Companies shall in no event be responsible or liable for any allocation or alleged misallocation of coverage or proceeds, and (iv) the Assuming Entity hereby releases and hold the Chubb Companies harmless from any responsibility or liability for any loss, cost, damage, or expense actually or allegedly incurred by the Assuming Entity relating to such allocation or misallocation as between the Original Insureds and the Assuming Entity.

4.    Retained Insurance Contracts.

4.1.    In the event that the Retained Obligations exceed the amount of the Remaining LOC Proceeds, the Chubb Companies shall be precluded from seeking the payment of any such excess from the Debtors; provided, however, that nothing in the Transaction or the Final Order shall obligate the Chubb Companies in any way to pay or satisfy any obligations of the Debtors other than (x) the Retained Obligations or (y) any express obligation of the Chubb Companies under the Retained Insurance Contracts.

5.    No Limitation of Liability/No Alteration.

5.1.    Notwithstanding anything to the contrary in the Motion, the Global Bidding Procedures, the Global Bidding Procedures Order, the Asset Purchase Agreement (each of the foregoing as defined in the Sale Order), the Sale Order, the

Definitive Documents (as defined or otherwise referred to in any Plan), the Plan Supplement (as defined in or otherwise referred to in any Plan), any Plan, the Confirmation Order (or any confirmation order, conversion order or dismissal order entered in the Chapter 11 Case), any documents related to any of the foregoing, any other order of the Court (including any order providing for dismissal or conversion of the Chapter 11 Cases), any other agreement or otherwise, any provision which reduces, limits or excludes (or purports to reduce, limit or exclude) the Assuming Entity's liability and/or obligations for all or any part of the Original Insureds' liabilities with respect to insurance shall not be applicable to, or reduce, limit, exclude, modify or impair in any respect, the Assuming Entity's liabilities and/or obligations to the Chubb Companies related to the AIC Obligations, the Assigned Insurance Contracts, and/or this Assumption Agreement. The liabilities and obligations of the Assuming Entity shall be determined pursuant to the terms and conditions of the Assigned Insurance Contracts as though the Assuming Entity was the original named insured thereunder and a party thereto and as though (aside from the Transaction and the Final Order) the Chapter 11 Case had not occurred.

5.2.   Except as expressly set forth herein, nothing in this Assumption Agreement shall alter the terms, conditions or coverage of the Insurance Programs (including the Prior LPT/Swap Documents).

6.   <u>Original Insureds' Release</u>.  The following shall be collectively referred to as the "<u>Assumption Agreement Release</u>".

6.1.   Except for the obligations of Insurer Releasees (as defined herein) as set forth in this Assumption Agreement and any insurance policy issued by any of the Chubb Companies to an Original Insured or any affiliate or subsidiary of an Original Insured, and in consideration of the covenants, promises and agreements contained herein, and for such other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, upon receipt by the Assuming Entity of the Returned LOC Proceeds, the Original Insureds, jointly and severally, on behalf of themselves, their bankruptcy estates (and all parties claiming by, through or under the bankruptcy estates) and all of their affiliates, subsidiaries, and parents and each of their respective agents, employees, representatives, officers, attorneys, shareholders, members, partners, directors, successors, assigns, trustees, estates and predecessors in interest of each of the foregoing (collectively and including any liquidating trustee or chapter 7 trustee appointed pursuant to the Bankruptcy Code, the "<u>Original Insured Releasors</u>") waive, release, acquit and forever discharge each of the Chubb Companies and their agents, employees, representatives, officers, attorneys, shareholders, directors, assigns, trustees, successors and predecessors in interest (collectively, the "<u>Insurer Releasees</u>") from any and all claims, counterclaims, rights, demands, obligations, causes of action, actions, costs, damages, losses, liabilities, and attorneys' fees, arising under any federal, state, or local statute or regulation, ordinance or common law, whether asserted or unasserted, known or unknown, suspected or unsuspected, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, which have ever existed or

may currently exist that the Original Insured Releasors may have against any or all of the Insurer Releasees from the beginning of time through the receipt by the Assuming Entity of the Returned LOC Proceeds, relating to the Letter of Credit, any draw thereon (including the Draw), the Remaining LOC Proceeds, the Returned LOC Proceeds and the Assigned LOC Proceed Amount previously provided by, through or on behalf of the Insured to secure its obligations to the Chubb Companies.

6.2.    With respect to the matters released herein, the Original Insureds, for themselves and each of the Original Insured Releasors, expressly waive any and all rights under § 1542 of the Civil Code of the State of California, which provides as follows:  *A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.*

7.    Chubb Companies' Release.

7.1.    Except for the non-monetary obligations of the Original Insured Releasees (as defined herein) as set forth in this Assumption Agreement and any insurance policy issued by any of the Chubb Companies to an Original Insured or any affiliate or subsidiary of an Original Insured, and in consideration of the covenants, promises and agreements contained herein, and for such other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, upon the Agreement Effective Date, the Chubb Companies, jointly and severally, on behalf of themselves and all of their affiliates, subsidiaries, and parents and each of their respective agents, employees, representatives, officers, attorneys, shareholders, members, partners, directors, successors, assigns, trustees, estates and predecessors in interest of each of the foregoing (collectively, the "Chubb Companies Releasors") waive, release, acquit and forever discharge each of the Original Insureds and their agents, employees, representatives, officers, attorneys, shareholders, directors, assigns, trustees, successors and predecessors in interest (collectively, the "Original Insured Releasees") from any and all claims, counterclaims, rights, demands, obligations, causes of action, actions, costs, damages, losses, liabilities, and attorneys' fees, arising under any federal, state, or local statute or regulation, ordinance or common law, whether asserted or unasserted, known or unknown, suspected or unsuspected, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, which have ever existed or may currently exist that the Chubb Companies Releasors may have against any or all of the Original Insured Releasees from the beginning of time through the Agreement Effective Date related to the Retained Insurance Policies and any and all collateral security (including, but not limited to, the Letter of Credit, any draw thereon (including the Draw), the Remaining LOC Proceeds, the Returned LOC Proceeds and the Assigned LOC Proceed Amount) previously provided by, through or on behalf of the Original Insureds to secure their obligations to the Chubb Companies.

11

7.2.    With respect to the matters released herein, the Chubb Companies, for themselves and each of the Chubb Companies Releasors, expressly waive any and all rights under § 1542 of the Civil Code of the State of California, which provides as follows:  *A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.*

8.    <u>ESL's Release</u>.

8.1    Except for the obligations of the Insurer Releasees (as defined herein) as set forth in (i) the Referenced Policies, (ii) the LPT and (iii) any other insurance policy or related agreement issued by Chubb to an Original Insured or any affiliate or subsidiary of an Original Insured, and in consideration of the covenants, promises and agreements contained herein, and for such other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, upon the later of the Program Transaction Date or the receipt by the Assuming Entity of the Returned LOC Proceeds, ESL for itself and on behalf of all of its affiliates, subsidiaries, and parents and each of their respective agents, employees, representatives, officers, attorneys, shareholders, members, partners, directors, successors, assigns, trustees, estates and predecessors in interest of each of the foregoing (collectively and including any chapter 7 trustee appointed pursuant to title 11 of the U.S.C., the "<u>ESL Releasors</u>"), waives, releases, acquits and forever discharges Chubb and its agents, employees, representatives, officers, attorneys, shareholders, directors, assigns, trustees, successors and predecessors in interest (collectively, the "<u>Insurer Releasees</u>") from any and all claims, counterclaims, rights, demands, obligations, causes of action, actions, costs, damages, losses, liabilities, and attorneys' fees, arising under any federal, state, or local statute or regulation, ordinance or common law, whether asserted or unasserted, known or unknown, suspected or unsuspected, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, which have ever existed or may currently exist that any of the ESL Releasors has or may have against any or all of the Insurer Releasees from the beginning of time through the later of the Program Transaction Date or the receipt by the Assuming Entity of the Returned LOC Proceeds (collectively and including, but not limited to, (i) any and all such pursuant to 11 U.S.C. §§ 362, 363, 364, 365, 542, 544, 547, 548, 549, and 550 and (ii) any and all such related to any and all collateral security (including, but not limited to, the Letter of Credit, any draw thereon (including the Draw), the Remaining LOC Proceeds, the Returned LOC Proceeds and the Assigned LOC Proceed Amount) previously provided by, through or on behalf of the Insured to secure its obligations to the Chubb Companies, the "<u>ESL Released Claims</u>").  ESL further agrees, for itself and each of the ESL Releasors, that the Assumption Agreement Release includes all ESL Released Claims relating to or arising under the Prior LPT/Swap Documents but it does not otherwise alter or modify the Prior LPT/Swap Documents or the Insurer Releasees' obligations, if any, thereunder arising on or after the Program Transaction Date (as defined in the Binder).

8.2    With respect to the matters released herein, ESL, for itself and the other ESL Releasors, expressly waives any and all rights under § 1542 of the Civil Code of the State of California, which provides as follows:  *A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.*

9.    <u>Consent</u>.  The Chubb Companies hereby consent to the Original Insureds' assignment and transfer, and the Assuming Entity's assumption and acceptance of, the Assigned Insurance Contracts and the AIC Obligations, and related benefits thereunder, subject to the terms and conditions of this Assumption Agreement.

10.    <u>Billing</u>.  Following the Agreement Effective Date, the Chubb Companies shall bill the Assuming Entity directly for the AIC Obligations (which AIC Obligations, subject to the effectiveness of the LPT, shall be satisfied as provided in the LPT.

11.    <u>Further Assurances</u>.  Each Party hereto agrees to take such further actions as may be reasonably necessary or as another Party may reasonably request in order to achieve the purpose and intent of the Transaction (including this Assumption Agreement), or to consummate the transactions contemplated hereby.  If required by the Chubb Companies, an amendment to the Insurance Programs, endorsements to the Assigned Insurance Contracts or similar documentation will be executed, in form and substance satisfactory to the Chubb Companies, by any of the Original Insureds, Assuming Entity and/or the Chubb Companies reflecting the terms of the Transaction (including this Assumption Agreement) including, but not limited to, the Assuming Entity's assumption of the AIC Obligations pursuant to this Assumption Agreement; provided, however, that the reasonable out-of-pocket costs and expenses incurred by the Original Insureds related to such additional amendments or similar documentation that are not requested by the Original Insureds shall be paid (i) by Chubb Companies, if such additional amendments or similar documentation are requested by Chubb Companies, or (ii) by the Assuming Entity, if such additional amendments or similar documentation are requested by the Assuming Entity.

12.    <u>Representations and Warranties</u>.

12.1.    Subject to entry of the Order, as to the Debtors, each of the Parties expressly warrants and represents to each other as follows: (i) the execution of this Assumption Agreement is fully authorized by each of them; (ii) that it has the right, power and authority to enter into the transaction described herein on its own behalf; (iii) the person or persons executing this Assumption Agreement have the necessary and appropriate authority to do so; (iv) there are no pending agreements, transactions, or negotiations to which any of them are a party that would render this Assumption Agreement or any part thereof void, voidable or unenforceable; and (v) none of the claims being novated pursuant to this Assumption Agreement have been previously assigned or transferred in any way to any person; provided, however, that with respect to the Original Insureds, the foregoing is subject to entry of the Final Order.

12.2.   The Assuming Entity warrants and represents to the Chubb Companies that it has received copies of the Insurance Programs.

13.   <u>Miscellaneous</u>.

13.1.   This Assumption Agreement shall be construed in accordance with the internal laws of the State of New York without regard to those provisions concerning conflicts of laws.

13.2.   For purposes of construction, this Assumption Agreement shall be deemed to have been jointly drafted by the respective Parties and their counsel, and any rule of construction of contracts that would otherwise provide that ambiguities are to be construed against the drafting party shall not be applied against any person.  Further, this Assumption Agreement is drafted in good faith.  Should the need arise, the Parties shall cooperate in demonstrating to a court or arbitration panel that this Assumption Agreement, together with any terms and provisions contained therein, were negotiated and drafted on a mutual basis by parties of equal bargaining power and in good faith.

13.3.   This Assumption Agreement contains no admissions whatsoever regarding insurance coverage.  This Assumption Agreement is not and shall not be interpreted as a contract or policy of insurance.  The Insurance Programs provide all terms, conditions and limitations with respect to insurance coverage.

13.4.   This Assumption Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective heirs, executors, legal representatives, successors and assigns; <u>provided, however,</u> that the Retained Insurance Contracts may not be hereafter assigned by the Original Insureds except to the Litigation Trust without the Chubb Companies' written consent and the Assigned Insurance Contracts may not hereafter be assigned by the Assuming Entity without the Chubb Companies' written consent.

13.5.   Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction only, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions and without affecting the validity or enforceability of such provision in any other jurisdiction.

13.6.   This Assumption Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which shall constitute one and the same Assumption Agreement.  This Assumption Agreement shall be deemed fully executed when it has been signed by all of the Parties.

13.7.   This Assumption Agreement may not be modified, amended, assigned or terminated except by written agreement signed by all of the Parties.  This Assumption Agreement, together with the Insurance Programs and the Prior/LPT Swap Documents, is the entire agreement among all of the Parties and supersedes all other prior

agreements and understandings, written or oral, with respect to the subject matter hereof. The Parties understand and agree that they are not relying on any promise or representation that is not stated expressly herein.

14.   <u>Arbitration</u>.   Any controversy, dispute, claim or question directly or indirectly arising out of or relating to this Assumption Agreement, including without limitation its interpretation, performance or non-performance by any party, or any breach thereof (collectively, "<u>Controversy</u>") shall be referred to and resolved exclusively by three arbitrators through private, confidential arbitration conducted in Philadelphia, Pennsylvania; provided, however, that this section 14 shall not apply to any Controversy involving the Debtors.  Such arbitrators shall be disinterested, neutral individuals who have experience and qualifications in the subject matter of the Controversy.   One arbitrator shall be chosen by each party and the third by the two so chosen; or, if all three Parties are involved in the dispute, the two Parties with the same or similar interest shall select one arbitrator and the other Party shall select the other arbitrator, and the two so chosen shall select the third.  If any party refuses or neglects to appoint an arbitrator within thirty (30) days after receipt of written notice from the other party requesting it to do so, the requesting party may choose a total of two arbitrators who shall choose the third.   If the arbitrators fail to select the third arbitrator within ten (10) days after both have been named, the party plaintiff shall notify the American Arbitration Association (AAA) who shall appoint the third arbitrator.   The AAA shall sect an arbitrator who is disinterested, neutral and who has experience and qualifications in the subject matter of the Controversy.  Each party shall bear the expense of its own arbitrator and shall jointly and equally bear the cost of the third arbitrator.  In the event of the death, disability or incapacity of any arbitrator, a replacement shall be named pursuant to the process which resulted in the selection of the arbitration to be replaced.   The arbitrators may abstain from following the strict rules of law, and shall make their decision with regard to the custom and usage of insurance business as at the Agreement Effective Date.  The majority decision of the panel shall be final and binding upon the Parties.   Judgment may be entered upon the award of the arbitrators in any court of competent jurisdiction.   Except as otherwise specifically provided, the arbitration of any Controversy shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association.  Any Controversy involving the Debtors shall be litigated in the Court and the Parties agree to submit to the jurisdiction of the Court.

[THE REMAINDER OF PAGE IS INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Parties have caused their duly authorized representatives to execute this Assumption Agreement on the dates set forth below, to be effective as of the date set forth above.

**SEARS HOLDINGS CORPORATION**
(On behalf of itself and each of its affiliates)

By: _____
Name: Mohsin Y. Meghji
Title: Chief Restructuring Officer

**KMART HOLDINGS CORPORATION**
(On behalf of itself and each of its affiliates)

By: _____
Name: Mohsin Y. Meghji
Title: Chief Restructuring Officer

**ESL INVESTMENTS, INC.**
(On behalf of itself and each of its affiliates)

By: _____
Name: Kunal Kamlani
Title: President

**TRANSFORM HOLDCO LLC**
(On behalf of itself and each of its affiliates)

By: _____
Name: Luke Valentino
Title: General Counsel

**ACE AMERICAN INSURANCE COMPANY**
(On behalf of itself and each of the Chubb Companies)

By: _____
Name: Brian M Ancharski
Title: Attorney In Fact

**EXHIBIT A**

**Referenced Policies**

| Policy Group | Policy Number | Inception Date | Expiration Date |
|---|---|---|---|
| One | 5BA 038 001 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 002 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 004 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 011 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 012 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 013 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 014 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 021 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 022 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 024 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 031 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 032 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 033 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 034 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 061 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 062 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 062 01 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 064 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 071 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 072 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 073 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 074 00 | 10/1/1992 | 9/30/1993 |
| One | 5SC 041 099 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 098 00 | 11/20/1992 | 3/31/1996 |
| One | 5BA 038 005 00 | 12/1/1992 | 1/1/1993 |
| One | 5BA 038 041 00 | 1/1/1993 | 12/31/1993 |
| One | 5BA 038 042 00 | 1/1/1993 | 10/1/1993 |
| One | 5BA 038 043 00 | 1/1/1993 | 10/1/1993 |
| One | 5BA 038 044 00 | 1/1/1993 | 12/31/1993 |
| One | 5BA 038 045 00 | 1/1/1993 | 12/31/1993 |

| Policy Group | Policy Number | Inception Date | Expiration Date |
|---|---|---|---|
| One | 5BA 038 048 00 | 1/1/1993 | 12/31/1993 |
| One | 5BA 038 049 00 | 1/1/1993 | 10/1/1993 |
| One | 5BA 038 081 00 | 1/1/1993 | 10/1/1993 |
| One | 5BA 038 001 01 | 10/1/1993 | 9/30/1994 |
| One | 5BA 038 002 01 | 10/1/1993 | 9/30/1994 |
| One | 5BA 038 003 00 | 10/1/1993 | 9/30/1994 |
| One | 5BA 038 004 01 | 10/1/1993 | 9/30/1994 |
| One | 5BA 038 011 01 | 10/1/1993 | 9/30/1994 |
| One | 5BA 038 012 01 | 10/1/1993 | 9/30/1994 |
| One | 5BA 038 013 01 | 10/1/1993 | 9/30/1994 |
| One | 5BA 038 014 02 | 10/1/1993 | 9/30/1994 |
| One | 5BA 038 021 01 | 10/1/1993 | 9/30/1994 |
| One | 5BA 038 022 01 | 10/1/1993 | 9/30/1994 |
| One | 5BA 038 023 00 | 10/1/1993 | 9/30/1994 |
| One | 5BA 038 061 01 | 10/1/1993 | 9/30/1994 |
| One | 5BA 038 063 00 | 10/1/1993 | 9/30/1994 |
| One | 5BA 038 064 01 | 10/1/1993 | 9/30/1994 |
| One | 5SC 041 099 01 | 10/1/1993 | 9/30/1994 |
| One | 5BA 038 015 00 | 1/1/1994 | 12/31/1994 |
| One | 5BA 038 041 01 | 1/1/1994 | 12/31/1994 |
| One | 5BA 038 044 01 | 1/1/1994 | 12/31/1994 |
| One | 5BA 038 001 02 | 10/1/1994 | 9/30/1995 |
| One | 5BA 038 002 02 | 10/1/1994 | 9/30/1995 |
| One | 5BA 038 003 01 | 10/1/1994 | 9/30/1995 |
| One | 5BA 038 004 02 | 10/1/1994 | 9/30/1995 |
| One | 5BA 038 011 02 | 10/1/1994 | 9/30/1995 |
| One | 5BA 038 012 02 | 10/1/1994 | 9/30/1995 |
| One | 5BA 038 013 02 | 10/1/1994 | 9/30/1995 |
| One | 5BA 038 014 00 | 10/1/1994 | 9/30/1995 |
| One | 5BA 038 016 00 | 10/1/1994 | 9/30/1995 |

| Policy Group | Policy Number | Inception Date | Expiration Date |
| --- | --- | --- | --- |
| One | 5BA 038 021 02 | 10/1/1994 | 9/30/1995 |
| One | 5BA 038 022 02 | 10/1/1994 | 9/30/1995 |
| One | 5BA 038 023 01 | 10/1/1994 | 9/30/1995 |
| One | 5BA 038 025 00 | 10/1/1994 | 9/30/1995 |
| One | 5BA 038 090 00 | 10/1/1994 | 9/30/1995 |
| One | 5BA 038 090 00 | 10/1/1994 | 9/30/1995 |
| One | 5SC 041 099 02 | 10/1/1994 | 9/30/1995 |
| One | 5BA 038 009 00 | 1/1/1995 | 10/1/1995 |
| One | 5BA 038 018 00 | 1/1/1995 | 10/1/1995 |
| One | 5BA 038 026 00 | 1/1/1995 | 10/1/1995 |
| One | 5BA 038 044 02 | 1/1/1995 | 12/31/1995 |
| One | 5BA 038 001 03 | 10/1/1995 | 9/30/1997 |
| One | 5BA 038 002 03 | 10/1/1995 | 9/30/1997 |
| One | 5BA 038 003 02 | 10/1/1995 | 9/30/1997 |
| One | 5BA 038 011 03 | 10/1/1995 | 9/30/1997 |
| One | 5BA 038 012 03 | 10/1/1995 | 9/30/1997 |
| One | 5BA 038 013 03 | 10/1/1995 | 9/30/1997 |
| One | 5BA 038 016 01 | 10/1/1995 | 9/30/1997 |
| One | 5BA 038 021 03 | 10/1/1995 | 9/30/1997 |
| One | 5BA 038 022 03 | 10/1/1995 | 9/30/1997 |
| One | 5BA 038 023 02 | 10/1/1995 | 9/30/1997 |
| One | 5BA 038 025 01 | 10/1/1995 | 9/30/1997 |
| One | 5BA 038 090 01 | 10/1/1995 | 9/30/1997 |
| One | 5SC 041 099 03 | 10/1/1995 | 9/30/1997 |
| One | 5SC 041 134 00 | 10/1/1996 | 10/1/1997 |

| Policy Group | Policy Number | Inception Date | Expiration Date |
|---|---|---|---|
| Two | C4WLR613817 | 8/1/2010 | 7/31/2011 |
| Two | C4WLR613821 | 8/1/2010 | 7/31/2011 |
| Two | C4SCF613825 | 8/1/2010 | 7/31/2011 |
| | | | |
| Three | C6WLR441330 | 8/1/2017 | 7/31/2018 |
| Three | C6SCF441332 | 8/1/2017 | 7/31/2018 |
| Three | C6WLR522623 | 8/1/2018 | 12/31/2018 |
| Three | C6SCF522631 | 8/1/2018 | 12/31/2018 |
| | | | |
| Four | G2HDO739667 | 5/29/2015 | 7/31/2015 |
| Four | G2HDO739668 | 5/29/2015 | 7/31/2015 |
| Four | G2HDO739669 | 5/29/2015 | 7/31/2015 |
| Four | G2HDO739750 | 8/1/2015 | 7/31/2016 |
| Four | G2HDO739751 | 8/1/2015 | 7/31/2016 |
| Four | G2HDO739749 | 8/1/2015 | 7/31/2016 |
| Four | G2HDO785375 | 8/1/2016 | 7/31/2017 |
| Four | G2HDO785379 | 8/1/2016 | 7/31/2017 |
| Four | G2HDO785383 | 8/1/2016 | 7/31/2017 |
| Four | G2HDO786703 | 8/1/2017 | 7/31/2018 |
| Four | G2HDO786902 | 8/1/2017 | 7/31/2018 |
| Four | G2HDO786906 | 8/1/2017 | 7/31/2018 |
| Four | G7HDO109765 | 8/1/2018 | 12/31/2018 |
| Four | G7HDO109769 | 8/1/2018 | 12/31/2018 |
| Four | G7HDO109773 | 8/1/2018 | 12/31/2018 |
| | | | |
| Five | H0ISA906095 | 8/1/2017 | 7/31/2018 |
| Five | H0ISA906096 | 8/1/2017 | 7/31/2018 |
| Five | H0ISA906097 | 8/1/2017 | 7/31/2018 |
| Five | H2ISA515987 | 8/1/2018 | 12/31/2018 |
| Five | H2ISA515988 | 8/1/2018 | 12/31/2018 |
| Five | H2ISA515989 | 8/1/2018 | 12/31/2018 |

| Policy Group | Policy Number | Inception Date | Expiration Date |
|---|---|---|---|
| Six | WCUC44187036 | 4/1/2005 | 3/31/2006 |
| Six | WCUC44187139 | 6/1/2005 | 3/31/2006 |
| Six | WCUC44340884 | 4/1/2006 | 3/31/2007 |
| Six | WCUC44340896 | 4/1/2006 | 3/31/2007 |
| Six | WCUC44460774 | 4/1/2007 | 7/31/2007 |
| Six | WCUC44460786 | 4/1/2007 | 7/31/2007 |
| Six | WCUC44477257 | 8/1/2007 | 7/31/2008 |
| Six | WCUC42847896 | 8/1/2008 | 7/31/2009 |
| Six | WCUC45701232 | 8/1/2009 | 7/31/2010 |
| Six | WCUC46138296 | 8/1/2010 | 7/31/2011 |
| Six | WCUC46482839 | 8/1/2011 | 7/31/2012 |
| Six | WCUC47123057 | 8/1/2012 | 7/31/2013 |
| Six | WCUC47322613 | 8/1/2013 | 7/31/2014 |
| Six | WCUC47888839 | 8/1/2014 | 7/31/2015 |
| Six | WCUC48589662 | 8/1/2015 | 7/31/2016 |
| Six | WCUC48609259 | 8/1/2016 | 7/31/2017 |
| Six | WCUC64413314 | 8/1/2017 | 7/31/2018 |
| Six | WCUC65226273 | 8/1/2018 | 12/31/2018 |

## **EXHIBIT B**

Binder

## Chubb Alternative Risk Solutions
## BINDER

*This Binder ("Binder") sets out the terms and conditions of a proposed transaction covering the Insured's reimbursement obligations arising under certain Workers' Compensation, General Liability and Auto Liability policies, and, as set forth herein, is a summary of the coverage to be provided pursuant to the Transaction. The "Transaction" shall consist of (i) the Assumption Agreement (as defined herein) and (ii) the LPT (as defined herein). This is an offer to provide coverage, subject to the satisfaction of all of the conditions precedent contained herein, and this offer will automatically expire on August 10, 2020 (unless withdrawn earlier) if this Binder is not executed by the parties on or prior to such date. This Binder supersedes and replaces any and all prior Binders, Indications or Term Sheets relating to the Policy (as defined below). This Binder may be accepted by the Insured by the Insured's signature of this Binder and delivery of such to the Insurer on or before August 10, 2020.*

| | |
|---|---|
| **Original Insureds:** | **Sears Holdings Corporation**<br>**Kmart Holding Corporation**<br>**3333 Beverly Road, E3-237A**<br>**Hoffman Estates, Illinois 60179** |
| **Insured:** | **Transform Holdco LLC**<br>**3333 Beverly Road, B6-364A**<br>**Hoffman Estates, Illinois 60179** |
| **Insurer:** | Indemnity Insurance Company of North America |
| **Program Effective Date:** | July 1, 2020 |
| **Program Transaction Date:** | The Program Transaction Date shall have the meaning provided below. This Binder shall be of no further force and effect and shall be void *ab initio* if the Program Transaction Date does not occur on or before September 11, 2020 unless the Insurer and the Insured each agrees to a later date by written notice to the other. |
| **Referenced Policies:** | Referenced Policies shall be limited to those specifically listed on Appendix 1. Without altering the foregoing, a summary, for convenience purposes only, of the Referenced Policies is as follows: |

(i)      Workers' Compensation policies with effective dates from and including October 1, 1992 through September 30, 1997 issued by Lumbermens Mutual Insurance Company and/or any of its affiliates to the Original Insured and subsequently novated to ACE American Insurance Company and/or any of its affiliates (collectively and with all affiliates, predecessors and successors thereof including the Insurer, "Chubb" or the "Chubb Companies") (such policies referred to herein as "Policy Group One");

(ii)     Workers' Compensation policies with effective dates from and including August 1, 2010 through July 31, 2011 issued by Chubb to the Original Insured (such policies referred to herein as "Policy Group Two");

(iii)    Workers' Compensation policies with effective dates from and including August 1, 2017 through December 31, 2018 issued by Chubb to the Original Insured (such policies referred to herein as "Policy Group Three");

Chubb does not offer accounting, tax or legal advice regarding the treatment of the proposed program. The Insured should conduct an independent evaluation of the information contained herein and consult with its own accounting, tax, legal advisors and any other relevant specialists before considering this transaction

**Chubb Alternative Risk Solutions**
**BINDER**

(iv)    General Liability policies with effective dates from and including May 29, 2015 through and including December 31, 2018 issued by Chubb to the Original Insured (such policies referred to herein as "Policy Group Four");

(v)    Auto Liability policies with effective dates from and including August 1, 2017 through December 31, 2018 issued by Chubb to the Original Insured (such policies referred to herein as "Policy Group Five"); and

(vi)    Excess Workers' Compensation policies with effective dates from and including April 1, 2005 through December 31, 2018 issued by Chubb to the Original Insured (such policies referred to herein as "Policy Group Six").

**Form of Transaction:**    The Transaction shall consist of (i) the Assumption Agreement (as defined herein) and (ii) the LPT (as defined herein).

The "Assumption Agreement" shall be an agreement among the Original Insureds, the Insured, and the Chubb Companies which shall, *inter alia*, provide for: (i) the transfer, assignment and assumption of the Referenced Policies, the agreements related thereto, and all obligations owing to Chubb thereunder, regardless of when they arise, from the Original Insureds to the Insured, (ii) the assumption and retention by the Original Insureds of any other insurance policies issued by Chubb (that will not be assumed by the Insured), any agreements related thereto and all obligations owing to Chubb thereunder, regardless of when they arise, and any collateral allocated by Chubb thereto, and (iii) the Assumption Agreement Release (as defined herein) and an assignment and release by the Original Insureds of any interest they may have in collateral relating to the Referenced Policies (and the related agreements).

The "LPT" shall consist of: (i) this Binder, (ii) a contractual indemnity policy ("CIP") issued by the Insurer to the Insured to cover the obligations of the Original Insured (and after the effective date of the Assumption Agreement, the Insured) under the Referenced Policies (including as such may be amended or endorsed as a result of the Assumption Agreement) and that will incorporate the terms and conditions of this Binder including the LPT Release (as defined herein) and (iii) any other insurance policies, agreements, documents and letters issued, sent or entered into in relation thereto.

The Assumption Agreement shall not be effective until, among other things, all of the conditions set forth therein (including, but not limited to, receipt of the Final Order (as defined therein and herein)) are satisfied.  The Assumption Agreement and the Final Order shall be null and void if the LPT does not take effect by the Program Transaction Date.

**Premium:**    $56,650,000 (the "Premium")

In consideration of the issuance of the CIP by the Insurer to the Insured, the Insured will pay the Premium to the Insurer.  No coverage will be provided if the Premium is not paid in full as and when due.

2

Chubb does not offer accounting, tax or legal advice regarding the treatment of the proposed program. The Insured should conduct an independent evaluation of the information contained herein and consult with its own accounting, tax, legal advisors and any other relevant specialists before considering this transaction

**Chubb Alternative Risk Solutions**
**BINDER**

The Premium shall be satisfied as follows: Within two (2) business days after the Agreement Effective Date (as defined in the Assumption Agreement), Chubb shall submit via overnight mail a request for the Draw (as defined in the Assumption Agreement). Within two (2) business days after the receipt by the Chubb Companies of the amount of the Draw (as defined in the Assumption Agreement), the Chubb Companies shall apply the Assigned LOC Proceed Amount (as defined in the Assumption Agreement) to fully satisfy the Premium.

**Covered Losses:**

On and after the Program Transaction Date and subject to the terms, conditions, and limits stated herein, the Insurer will reimburse Chubb directly on behalf of the Insured for (i) amounts paid within the applicable Per Occurrence Limit, in excess of the applicable Attachment Point, in respect of: (a) the Insured's deductible reimbursement obligations under the Referenced Policies and (b) the Insured's additional premium payment obligations in respect of Loss and ALAE arising under any retrospectively-rated Referenced Policy, and (ii) premium or program company expenses payable under the Referenced Policies .

Payments for Covered Losses will be based upon information supplied to the Insurer from the TPA (as defined below), as applicable, and verified by the Insurer. Payments will be made by the Insurer in respect of Covered Losses only for amounts actually paid on and after the Program Effective Date, and will not be made based on estimated incurred amounts. No coverage will be provided for Covered Losses paid by or on behalf of the Insured (or the Original Insured) prior to the Program Effective Date.

**Per Occurrence Limit:**

With respect to the Referenced Policies, the CIP will cover, on an each and every occurrence basis, Covered Losses from first dollar of loss and ALAE excess of the applicable Attachment Point, up to the applicable Per Occurrence Limit, as set forth in Appendix 2.

The Per Occurrence Limit and Attachment Point will apply based upon all amounts paid under the Referenced Policies from first dollar in respect of losses and ALAE, regardless of whether such losses and ALAE are Covered Losses or are paid on, before or after the Program Effective Date. The Per Occurrence Limit and Attachment Point will apply based on the claimant's date of injury as reported by the TPA, as applicable, and verified by the Insurer.

**ALAE Treatment:**

ALAE reimbursed by the Insurer in respect of Referenced Policies will erode the applicable Attachment Point and Per Occurrence Limit as set out in Appendix 2. The Insurer will not pay, and will not be liable for, any amount of ALAE in excess of the Per Occurrence Limit per occurrence, each and every occurrence, in respect of the Referenced Policies.

**Claims Handling:**

Broadspire Services, Inc. (Broadspire) is currently the claims administrator for claims arising under the Policy Group One Referenced Policies. Sedgwick Claims Management Services, Inc. ("Sedgwick") is currently the claims administrators for claims arising under the Referenced Policies other than Policy Group One.

This Binder does not include or cover, and the CIP will not include or cover, any claims administration costs payable to Sedgwick or Broadspire in respect of the

Chubb does not offer accounting, tax or legal advice regarding the treatment of the proposed program. The Insured should conduct an independent evaluation of the information contained herein and consult with its own accounting, tax, legal advisors and any other relevant specialists before considering this transaction

**Chubb Alternative Risk Solutions**
**BINDER**

Referenced Policies.  The Insured will be solely responsible for, and will pay, all claims administration costs and fees due to Sedgwick or Broadspire in respect of the LPT.  The Insured will indemnify and reimburse the Insurer for any such costs and fees which the Insurer pays to Sedgwick or Broadspire in respect of the LPT.

The Insurer will require the Insured to, and the Insured agrees that it will, transfer the claims administration of claims arising under the Referenced Policies other than Policy Group One and Policy Group Six from Sedgwick to ESIS, Inc. ("ESIS") on or before October 31, 2020.  The CIP will cover, and the Insurer will be responsible for and pay, all claims administration costs payable to ESIS in respect of the LPT, including any costs associated with the transfer of such claims to ESIS.  Broadspire will remain the claims administrator for claims arising under Policy Group One Referenced Policies.  Sedgwick will remain the claims administrator for claims arising under Policy Group Six Referenced Policies.

The Insurer will assume control of the administration of claim services for claims arising under the Referenced Policies, including but not limited to authority to settle and/or defend any and all such claims and authority to set reserves for such claims, and the Insurer will adhere to its best practices in handling such claims.

**Other Terms and Conditions:**

1.      This Binder is based on loss information that is summarized in Appendix 3, valued as of June 30, 2020, and the Insured represents that, to the best of its knowledge, the loss information summarized in Appendix 3 is an accurate representation of the Insured's loss experience as of June 30, 2020.  The Premium shall be reduced on a dollar-for-dollar basis for all claims paid by the Insured after June 30, 2020.

2.      This Transaction shall be consummated as follows:

First, the Assumption Agreement shall be executed by each of the parties thereto and approved by entry of an order (the "Order") by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in the jointly administered chapter 11 bankruptcy case of SEARS HOLDING CORPORATION and its affiliated debtors (the "Bankruptcy Case") that are insureds under the Referenced Policies.  The Order (a) shall (i) be in form and substance acceptable to Chubb, the Original Insureds and the Insured in all respects, (ii) approve the Assumption Agreement in all respects including any transfer of collateral, (iii) authorize the Original Insureds to enter into the Assumption Agreement, and (iv) approve the Assumption Agreement Release (as defined herein) and (b) must become final, without any appeal or modification thereof, and all applicable appeal periods having expired (the "Final Order").  Receipt of the Final Order shall be a condition precedent to the entry into the LPT.  Additionally, the Original Insureds and the Insured agree to allow the Insurer to review and approve all motions/notices, proposed orders and other documentation requesting the entry and approval of the Order and all exhibits thereto prior to the filing of such documents with the Bankruptcy Court.  The Insurer reserves the right to require Bankruptcy Court approval of the Assumption Agreement even if the Plan Effective Date has occurred.

Second, within two (2) business days after the Agreement Effective Date (as defined in the Assumption Agreement), Chubb shall submit via overnight mail a request for the Draw (as defined in the Assumption Agreement).  Within two (2) business days after Chubb receives the Draw, the Insured and the Insurer shall effectuate the terms of the LPT (such day being the "Program Transaction Date") including that the Chubb Companies shall apply the Assigned LOC Proceed Amount to fully satisfy the Premium.

3.      The Final Order shall include a provision that approves  the Assumption Agreement Release as defined in and as set forth in the Assumption Agreement.

Chubb does not offer accounting, tax or legal advice regarding the treatment of the proposed program. The Insured should conduct an independent evaluation of the information contained herein and consult with its own accounting, tax, legal advisors and any other relevant specialists before considering this transaction

4

## Chubb Alternative Risk Solutions
## BINDER

4.    As part of the Transaction, the Insured shall grant a full and final release to the Insurer Releasees as defined in and set forth in the Assumption Agreement.

5.    As part of the Transaction, the Insurer shall grant a full and final release to the Original Insured Releasees as defined in and set forth in the Assumption Agreement.

6.    This Binder assumes, and the CIP will provide, that the Insurer will be entitled to all recoveries and claim reimbursements received in respect of losses and ALAE paid by the Insurer under the CIP, including but not limited to subrogation recoveries, and that all such amounts will be applied under the CIP.

7.    The Premium includes premium taxes payable by the Insurer with respect to the Premium payable for the CIP.

8.    General Liability Coverages and Exclusions will be as per the Referenced Policies, and will follow the form of the Referenced Policies.

9.    Automobile Liability Coverages and Exclusions will be as per the Referenced Policies, and will follow the form of the Referenced Policies.

10.    The Premium includes $250,000 of brokerage commission payable directly to CAC Specialty, LLC by the Insurer on behalf of the Insured.

[Signature page follows]

Chubb does not offer accounting, tax or legal advice regarding the treatment of the proposed program. The Insured should conduct an independent evaluation of the information contained herein and consult with its own accounting, tax, legal advisors and any other relevant specialists before considering this transaction

## Chubb Alternative Risk Solutions
## BINDER

In consideration of the mutual covenants, promises and agreements contained herein, and for such other
good and valuable consideration, the sufficiency of which is hereby acknowledged, each party hereto does
hereby agree that this Binder, and each and every provision hereof, is binding and enforceable according
to its terms.

**AGREED TO AND ACCEPTED:**

TRANSFORM HOLDCO LLC

By: _____
    Name: *Luke Valentino*
    Title: *General Counsel*


INDEMNITY INSURANCE COMPANY OF NORTH AMERICA

By: _____
    Name:
    Title: *Brian M Ancharski*
        *Attorney In Fact*

6

Chubb does not offer accounting, tax or legal advice regarding the treatment of the proposed program. The
Insured should conduct an independent evaluation of the information contained herein and consult with its own
accounting, tax, legal advisors and any other relevant specialists before considering this transaction

**Chubb Alternative Risk Solutions**
**BINDER**

**Appendix 1**

**Referenced Policies**

| Policy Group | Policy Number | Inception Date | Expiration Date |
|---|---|---|---|
| One | 5BA 038 001 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 002 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 004 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 011 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 012 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 013 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 014 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 021 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 022 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 024 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 031 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 032 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 033 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 034 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 061 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 062 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 062 01 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 064 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 071 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 072 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 073 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 074 00 | 10/1/1992 | 9/30/1993 |
| One | 5SC 041 099 00 | 10/1/1992 | 9/30/1993 |
| One | 5BA 038 098 00 | 11/20/1992 | 3/31/1996 |
| One | 5BA 038 005 00 | 12/1/1992 | 1/1/1993 |
| One | 5BA 038 041 00 | 1/1/1993 | 12/31/1993 |
| One | 5BA 038 042 00 | 1/1/1993 | 10/1/1993 |
| One | 5BA 038 043 00 | 1/1/1993 | 10/1/1993 |
| One | 5BA 038 044 00 | 1/1/1993 | 12/31/1993 |
| One | 5BA 038 045 00 | 1/1/1993 | 12/31/1993 |

7

Chubb does not offer accounting, tax or legal advice regarding the treatment of the proposed program. The
Insured should conduct an independent evaluation of the information contained herein and consult with its own
accounting, tax, legal advisors and any other relevant specialists before considering this transaction

## Chubb Alternative Risk Solutions
## BINDER

| Policy Group | Policy Number | Inception Date | Expiration Date |
|---|---|---|---|
| One | 5BA 038 048 00 | 1/1/1993 | 12/31/1993 |
| One | 5BA 038 049 00 | 1/1/1993 | 10/1/1993 |
| One | 5BA 038 081 00 | 1/1/1993 | 10/1/1993 |
| One | 5BA 038 001 01 | 10/1/1993 | 9/30/1994 |
| One | 5BA 038 002 01 | 10/1/1993 | 9/30/1994 |
| One | 5BA 038 003 00 | 10/1/1993 | 9/30/1994 |
| One | 5BA 038 004 01 | 10/1/1993 | 9/30/1994 |
| One | 5BA 038 011 01 | 10/1/1993 | 9/30/1994 |
| One | 5BA 038 012 01 | 10/1/1993 | 9/30/1994 |
| One | 5BA 038 013 01 | 10/1/1993 | 9/30/1994 |
| One | 5BA 038 014 02 | 10/1/1993 | 9/30/1994 |
| One | 5BA 038 021 01 | 10/1/1993 | 9/30/1994 |
| One | 5BA 038 022 01 | 10/1/1993 | 9/30/1994 |
| One | 5BA 038 023 00 | 10/1/1993 | 9/30/1994 |
| One | 5BA 038 061 01 | 10/1/1993 | 9/30/1994 |
| One | 5BA 038 063 00 | 10/1/1993 | 9/30/1994 |
| One | 5BA 038 064 01 | 10/1/1993 | 9/30/1994 |
| One | 5SC 041 099 01 | 10/1/1993 | 9/30/1994 |
| One | 5BA 038 015 00 | 1/1/1994 | 12/31/1994 |
| One | 5BA 038 041 01 | 1/1/1994 | 12/31/1994 |
| One | 5BA 038 044 01 | 1/1/1994 | 12/31/1994 |
| One | 5BA 038 001 02 | 10/1/1994 | 9/30/1995 |
| One | 5BA 038 002 02 | 10/1/1994 | 9/30/1995 |
| One | 5BA 038 003 01 | 10/1/1994 | 9/30/1995 |
| One | 5BA 038 004 02 | 10/1/1994 | 9/30/1995 |
| One | 5BA 038 011 02 | 10/1/1994 | 9/30/1995 |
| One | 5BA 038 012 02 | 10/1/1994 | 9/30/1995 |
| One | 5BA 038 013 02 | 10/1/1994 | 9/30/1995 |
| One | 5BA 038 014 00 | 10/1/1994 | 9/30/1995 |
| One | 5BA 038 016 00 | 10/1/1994 | 9/30/1995 |

Chubb does not offer accounting, tax or legal advice regarding the treatment of the proposed program. The
Insured should conduct an independent evaluation of the information contained herein and consult with its own
accounting, tax, legal advisors and any other relevant specialists before considering this transaction

## Chubb Alternative Risk Solutions
## BINDER

| Policy Group | Policy Number | Inception Date | Expiration Date |
|---|---|---|---|
| One | 5BA 038 021 02 | 10/1/1994 | 9/30/1995 |
| One | 5BA 038 022 02 | 10/1/1994 | 9/30/1995 |
| One | 5BA 038 023 01 | 10/1/1994 | 9/30/1995 |
| One | 5BA 038 025 00 | 10/1/1994 | 9/30/1995 |
| One | 5BA 038 090 00 | 10/1/1994 | 9/30/1995 |
| One | 5BA 038 090 00 | 10/1/1994 | 9/30/1995 |
| One | 5SC 041 099 02 | 10/1/1994 | 9/30/1995 |
| One | 5BA 038 009 00 | 1/1/1995 | 10/1/1995 |
| One | 5BA 038 018 00 | 1/1/1995 | 10/1/1995 |
| One | 5BA 038 026 00 | 1/1/1995 | 10/1/1995 |
| One | 5BA 038 044 02 | 1/1/1995 | 12/31/1995 |
| One | 5BA 038 001 03 | 10/1/1995 | 9/30/1997 |
| One | 5BA 038 002 03 | 10/1/1995 | 9/30/1997 |
| One | 5BA 038 003 02 | 10/1/1995 | 9/30/1997 |
| One | 5BA 038 011 03 | 10/1/1995 | 9/30/1997 |
| One | 5BA 038 012 03 | 10/1/1995 | 9/30/1997 |
| One | 5BA 038 013 03 | 10/1/1995 | 9/30/1997 |
| One | 5BA 038 016 01 | 10/1/1995 | 9/30/1997 |
| One | 5BA 038 021 03 | 10/1/1995 | 9/30/1997 |
| One | 5BA 038 022 03 | 10/1/1995 | 9/30/1997 |
| One | 5BA 038 023 02 | 10/1/1995 | 9/30/1997 |
| One | 5BA 038 025 01 | 10/1/1995 | 9/30/1997 |
| One | 5BA 038 090 01 | 10/1/1995 | 9/30/1997 |
| One | 5SC 041 099 03 | 10/1/1995 | 9/30/1997 |
| One | 5SC 041 134 00 | 10/1/1996 | 10/1/1997 |

Chubb does not offer accounting, tax or legal advice regarding the treatment of the proposed program. The Insured should conduct an independent evaluation of the information contained herein and consult with its own accounting, tax, legal advisors and any other relevant specialists before considering this transaction

## Chubb Alternative Risk Solutions
## BINDER

| Policy Group | Policy Number | Inception Date | Expiration Date |
|---|---|---|---|
| Two | C4WLR613817 | 8/1/2010 | 7/31/2011 |
| Two | C4WLR613821 | 8/1/2010 | 7/31/2011 |
| Two | C4SCF613825 | 8/1/2010 | 7/31/2011 |
| | | | |
| Three | C6WLR441330 | 8/1/2017 | 7/31/2018 |
| Three | C6SCF441332 | 8/1/2017 | 7/31/2018 |
| Three | C6WLR522623 | 8/1/2018 | 12/31/2018 |
| Three | C6SCF522631 | 8/1/2018 | 12/31/2018 |
| | | | |
| Four | G2HDO739667 | 5/29/2015 | 7/31/2015 |
| Four | G2HDO739668 | 5/29/2015 | 7/31/2015 |
| Four | G2HDO739669 | 5/29/2015 | 7/31/2015 |
| Four | G2HDO739750 | 8/1/2015 | 7/31/2016 |
| Four | G2HDO739751 | 8/1/2015 | 7/31/2016 |
| Four | G2HDO739749 | 8/1/2015 | 7/31/2016 |
| Four | G2HDO785375 | 8/1/2016 | 7/31/2017 |
| Four | G2HDO785379 | 8/1/2016 | 7/31/2017 |
| Four | G2HDO785383 | 8/1/2016 | 7/31/2017 |
| Four | G2HDO786703 | 8/1/2017 | 7/31/2018 |
| Four | G2HDO786902 | 8/1/2017 | 7/31/2018 |
| Four | G2HDO786906 | 8/1/2017 | 7/31/2018 |
| Four | G7HDO109765 | 8/1/2018 | 12/31/2018 |
| Four | G7HDO109769 | 8/1/2018 | 12/31/2018 |
| Four | G7HDO109773 | 8/1/2018 | 12/31/2018 |
| | | | |
| Five | H0ISA906095 | 8/1/2017 | 7/31/2018 |
| Five | H0ISA906096 | 8/1/2017 | 7/31/2018 |
| Five | H0ISA906097 | 8/1/2017 | 7/31/2018 |
| Five | H2ISA515987 | 8/1/2018 | 12/31/2018 |
| Five | H2ISA515988 | 8/1/2018 | 12/31/2018 |
| Five | H2ISA515989 | 8/1/2018 | 12/31/2018 |

Chubb does not offer accounting, tax or legal advice regarding the treatment of the proposed program. The Insured should conduct an independent evaluation of the information contained herein and consult with its own accounting, tax, legal advisors and any other relevant specialists before considering this transaction

10

**Chubb Alternative Risk Solutions**
**BINDER**

| Policy Group | Policy Number | Inception Date | Expiration Date |
|---|---|---|---|
| Six | WCUC44187036 | 4/1/2005 | 3/31/2006 |
| Six | WCUC44187139 | 6/1/2005 | 3/31/2006 |
| Six | WCUC44340884 | 4/1/2006 | 3/31/2007 |
| Six | WCUC44340896 | 4/1/2006 | 3/31/2007 |
| Six | WCUC44460774 | 4/1/2007 | 7/31/2007 |
| Six | WCUC44460786 | 4/1/2007 | 7/31/2007 |
| Six | WCUC44477257 | 8/1/2007 | 7/31/2008 |
| Six | WCUC42847896 | 8/1/2008 | 7/31/2009 |
| Six | WCUC45701232 | 8/1/2009 | 7/31/2010 |
| Six | WCUC46138296 | 8/1/2010 | 7/31/2011 |
| Six | WCUC46482839 | 8/1/2011 | 7/31/2012 |
| Six | WCUC47123057 | 8/1/2012 | 7/31/2013 |
| Six | WCUC47322613 | 8/1/2013 | 7/31/2014 |
| Six | WCUC47888839 | 8/1/2014 | 7/31/2015 |
| Six | WCUC48589662 | 8/1/2015 | 7/31/2016 |
| Six | WCUC48609259 | 8/1/2016 | 7/31/2017 |
| Six | WCUC64413314 | 8/1/2017 | 7/31/2018 |
| Six | WCUC65226273 | 8/1/2018 | 12/31/2018 |

Chubb does not offer accounting, tax or legal advice regarding the treatment of the proposed program. The Insured should conduct an independent evaluation of the information contained herein and consult with its own accounting, tax, legal advisors and any other relevant specialists before considering this transaction

# Chubb Alternative Risk Solutions
# BINDER

### Appendix 2

### Attachment Point and Per Occurrence Limit

| Policy Group | Policy Number | Inception Date | Expiration Date | Attachment Point | Per Occurrence Limit | ALAE Treatment |
|---|---|---|---|---|---|---|
| One | 5BA 038 001 00 | 10/1/1992 | 9/30/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 002 00 | 10/1/1992 | 9/30/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 004 00 | 10/1/1992 | 9/30/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 011 00 | 10/1/1992 | 9/30/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 012 00 | 10/1/1992 | 9/30/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 013 00 | 10/1/1992 | 9/30/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 014 00 | 10/1/1992 | 9/30/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 021 00 | 10/1/1992 | 9/30/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 022 00 | 10/1/1992 | 9/30/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 024 00 | 10/1/1992 | 9/30/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 031 00 | 10/1/1992 | 9/30/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 032 00 | 10/1/1992 | 9/30/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 033 00 | 10/1/1992 | 9/30/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 034 00 | 10/1/1992 | 9/30/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 061 00 | 10/1/1992 | 9/30/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 062 00 | 10/1/1992 | 9/30/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 062 01 | 10/1/1992 | 9/30/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 064 00 | 10/1/1992 | 9/30/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 071 00 | 10/1/1992 | 9/30/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 072 00 | 10/1/1992 | 9/30/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 073 00 | 10/1/1992 | 9/30/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 074 00 | 10/1/1992 | 9/30/1993 | $0 | Unlimited | Unlimited |
| One | 5SC 041 099 00 | 10/1/1992 | 9/30/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 098 00 | 11/20/1992 | 3/31/1996 | $0 | Unlimited | Unlimited |
| One | 5BA 038 005 00 | 12/1/1992 | 1/1/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 041 00 | 1/1/1993 | 12/31/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 042 00 | 1/1/1993 | 10/1/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 043 00 | 1/1/1993 | 10/1/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 044 00 | 1/1/1993 | 12/31/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 045 00 | 1/1/1993 | 12/31/1993 | $0 | Unlimited | Unlimited |

Chubb does not offer accounting, tax or legal advice regarding the treatment of the proposed program. The
Insured should conduct an independent evaluation of the information contained herein and consult with its own
accounting, tax, legal advisors and any other relevant specialists before considering this transaction

## Chubb Alternative Risk Solutions
## BINDER

| Policy Group | Policy Number | Inception Date | Expiration Date | Attachment Point | Per Occurrence Limit | ALAE Treatment |
|---|---|---|---|---|---|---|
| One | 5BA 038 048 00 | 1/1/1993 | 12/31/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 049 00 | 1/1/1993 | 10/1/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 081 00 | 1/1/1993 | 10/1/1993 | $0 | Unlimited | Unlimited |
| One | 5BA 038 001 01 | 10/1/1993 | 9/30/1994 | $0 | Unlimited | Unlimited |
| One | 5BA 038 002 01 | 10/1/1993 | 9/30/1994 | $0 | Unlimited | Unlimited |
| One | 5BA 038 003 00 | 10/1/1993 | 9/30/1994 | $0 | Unlimited | Unlimited |
| One | 5BA 038 004 01 | 10/1/1993 | 9/30/1994 | $0 | Unlimited | Unlimited |
| One | 5BA 038 011 01 | 10/1/1993 | 9/30/1994 | $0 | Unlimited | Unlimited |
| One | 5BA 038 012 01 | 10/1/1993 | 9/30/1994 | $0 | Unlimited | Unlimited |
| One | 5BA 038 013 01 | 10/1/1993 | 9/30/1994 | $0 | Unlimited | Unlimited |
| One | 5BA 038 014 02 | 10/1/1993 | 9/30/1994 | $0 | Unlimited | Unlimited |
| One | 5BA 038 021 01 | 10/1/1993 | 9/30/1994 | $0 | Unlimited | Unlimited |
| One | 5BA 038 022 01 | 10/1/1993 | 9/30/1994 | $0 | Unlimited | Unlimited |
| One | 5BA 038 023 00 | 10/1/1993 | 9/30/1994 | $0 | Unlimited | Unlimited |
| One | 5BA 038 061 01 | 10/1/1993 | 9/30/1994 | $0 | Unlimited | Unlimited |
| One | 5BA 038 063 00 | 10/1/1993 | 9/30/1994 | $0 | Unlimited | Unlimited |
| One | 5BA 038 064 01 | 10/1/1993 | 9/30/1994 | $0 | Unlimited | Unlimited |
| One | 5SC 041 099 01 | 10/1/1993 | 9/30/1994 | $0 | Unlimited | Unlimited |
| One | 5BA 038 015 00 | 1/1/1994 | 12/31/1994 | $0 | Unlimited | Unlimited |
| One | 5BA 038 041 01 | 1/1/1994 | 12/31/1994 | $0 | Unlimited | Unlimited |
| One | 5BA 038 044 01 | 1/1/1994 | 12/31/1994 | $0 | Unlimited | Unlimited |
| One | 5BA 038 001 02 | 10/1/1994 | 9/30/1995 | $0 | Unlimited | Unlimited |
| One | 5BA 038 002 02 | 10/1/1994 | 9/30/1995 | $0 | Unlimited | Unlimited |
| One | 5BA 038 003 01 | 10/1/1994 | 9/30/1995 | $0 | Unlimited | Unlimited |
| One | 5BA 038 004 02 | 10/1/1994 | 9/30/1995 | $0 | Unlimited | Unlimited |
| One | 5BA 038 011 02 | 10/1/1994 | 9/30/1995 | $0 | Unlimited | Unlimited |
| One | 5BA 038 012 02 | 10/1/1994 | 9/30/1995 | $0 | Unlimited | Unlimited |
| One | 5BA 038 013 02 | 10/1/1994 | 9/30/1995 | $0 | Unlimited | Unlimited |
| One | 5BA 038 014 00 | 10/1/1994 | 9/30/1995 | $0 | Unlimited | Unlimited |
| One | 5BA 038 016 00 | 10/1/1994 | 9/30/1995 | $0 | Unlimited | Unlimited |

Chubb does not offer accounting, tax or legal advice regarding the treatment of the proposed program. The Insured should conduct an independent evaluation of the information contained herein and consult with its own accounting, tax, legal advisors and any other relevant specialists before considering this transaction

## Chubb Alternative Risk Solutions
## BINDER

| Policy Group | Policy Number | Inception Date | Expiration Date | Attachment Point | Per Occurrence Limit | ALAE Treatment |
|---|---|---|---|---|---|---|
| One | 5BA 038 021 02 | 10/1/1994 | 9/30/1995 | $0 | Unlimited | Unlimited |
| One | 5BA 038 022 02 | 10/1/1994 | 9/30/1995 | $0 | Unlimited | Unlimited |
| One | 5BA 038 023 01 | 10/1/1994 | 9/30/1995 | $0 | Unlimited | Unlimited |
| One | 5BA 038 025 00 | 10/1/1994 | 9/30/1995 | $0 | Unlimited | Unlimited |
| One | 5BA 038 090 00 | 10/1/1994 | 9/30/1995 | $0 | Unlimited | Unlimited |
| One | 5BA 038 090 00 | 10/1/1994 | 9/30/1995 | $0 | Unlimited | Unlimited |
| One | 5SC 041 099 02 | 10/1/1994 | 9/30/1995 | $0 | Unlimited | Unlimited |
| One | 5BA 038 009 00 | 1/1/1995 | 10/1/1995 | $0 | Unlimited | Unlimited |
| One | 5BA 038 018 00 | 1/1/1995 | 10/1/1995 | $0 | Unlimited | Unlimited |
| One | 5BA 038 026 00 | 1/1/1995 | 10/1/1995 | $0 | Unlimited | Unlimited |
| One | 5BA 038 044 02 | 1/1/1995 | 12/31/1995 | $0 | Unlimited | Unlimited |
| One | 5BA 038 001 03 | 10/1/1995 | 9/30/1997 | $0 | Unlimited | Unlimited |
| One | 5BA 038 002 03 | 10/1/1995 | 9/30/1997 | $0 | Unlimited | Unlimited |
| One | 5BA 038 003 02 | 10/1/1995 | 9/30/1997 | $0 | Unlimited | Unlimited |
| One | 5BA 038 011 03 | 10/1/1995 | 9/30/1997 | $0 | Unlimited | Unlimited |
| One | 5BA 038 012 03 | 10/1/1995 | 9/30/1997 | $0 | Unlimited | Unlimited |
| One | 5BA 038 013 03 | 10/1/1995 | 9/30/1997 | $0 | Unlimited | Unlimited |
| One | 5BA 038 016 01 | 10/1/1995 | 9/30/1997 | $0 | Unlimited | Unlimited |
| One | 5BA 038 021 03 | 10/1/1995 | 9/30/1997 | $0 | Unlimited | Unlimited |
| One | 5BA 038 022 03 | 10/1/1995 | 9/30/1997 | $0 | Unlimited | Unlimited |
| One | 5BA 038 023 02 | 10/1/1995 | 9/30/1997 | $0 | Unlimited | Unlimited |
| One | 5BA 038 025 01 | 10/1/1995 | 9/30/1997 | $0 | Unlimited | Unlimited |
| One | 5BA 038 090 01 | 10/1/1995 | 9/30/1997 | $0 | Unlimited | Unlimited |
| One | 5SC 041 099 03 | 10/1/1995 | 9/30/1997 | $0 | Unlimited | Unlimited |
| One | 5SC 041 134 00 | 10/1/1996 | 10/1/1997 | $0 | Unlimited | Unlimited |

Chubb does not offer accounting, tax or legal advice regarding the treatment of the proposed program. The
Insured should conduct an independent evaluation of the information contained herein and consult with its own
accounting, tax, legal advisors and any other relevant specialists before considering this transaction

## Chubb Alternative Risk Solutions
## BINDER

| Policy Group | Policy Number | Inception Date | Expiration Date | Attachment Point | Per Occurrence Limit | ALAE Treatment |
|---|---|---|---|---|---|---|
| Two | C4WLR613817 | 8/1/2010 | 7/31/2011 | $1,000,000 | $4,000,000 | Erodes |
| Two | C4WLR613821 | 8/1/2010 | 7/31/2011 | $1,000,000 | $4,000,000 | Erodes |
| Two | C4SCF613825 | 8/1/2010 | 7/31/2011 | $1,000,000 | $4,000,000 | Erodes |
| Three | C6WLR441330 | 8/1/2017 | 7/31/2018 | $0 | $5,000,000 | Erodes |
| Three | C6SCF441332 | 8/1/2017 | 7/31/2018 | $0 | $5,000,000 | Erodes |
| Three | C6WLR522623 | 8/1/2018 | 12/31/2018 | $0 | $2,000,000 | Erodes |
| Three | C6SCF522631 | 8/1/2018 | 12/31/2018 | $0 | $2,000,000 | Erodes |
| Four | G2HDO739667 | 5/29/2015 | 7/31/2015 | $0 | $500,000 | Erodes |
| Four | G2HDO739668 | 5/29/2015 | 7/31/2015 | $0 | $500,000 | Erodes |
| Four | G2HDO739669 | 5/29/2015 | 7/31/2015 | $0 | $500,000 | Erodes |
| Four | G2HDO739750 | 8/1/2015 | 7/31/2016 | $0 | $500,000 | Erodes |
| Four | G2HDO739751 | 8/1/2015 | 7/31/2016 | $0 | $500,000 | Erodes |
| Four | G2HDO739749 | 8/1/2015 | 7/31/2016 | $0 | $500,000 | Erodes |
| Four | G2HDO785375 | 8/1/2016 | 7/31/2017 | $0 | $500,000 | Erodes |
| Four | G2HDO785379 | 8/1/2016 | 7/31/2017 | $0 | $500,000 | Erodes |
| Four | G2HDO785383 | 8/1/2016 | 7/31/2017 | $0 | $500,000 | Erodes |
| Four | G2HDO786703 | 8/1/2017 | 7/31/2018 | $0 | $500,000 | Erodes |
| Four | G2HDO786902 | 8/1/2017 | 7/31/2018 | $0 | $500,000 | Erodes |
| Four | G2HDO786906 | 8/1/2017 | 7/31/2018 | $0 | $500,000 | Erodes |
| Four | G7HDO109765 | 8/1/2018 | 12/31/2018 | $0 | $500,000 | Erodes |
| Four | G7HDO109769 | 8/1/2018 | 12/31/2018 | $0 | $500,000 | Erodes |
| Four | G7HDO109773 | 8/1/2018 | 12/31/2018 | $0 | $500,000 | Erodes |
| Five | H0ISA906095 | 8/1/2017 | 7/31/2018 | $0 | $5,000,000 | Erodes |
| Five | H0ISA906096 | 8/1/2017 | 7/31/2018 | $0 | $5,000,000 | Erodes |
| Five | H0ISA906097 | 8/1/2017 | 7/31/2018 | $0 | $5,000,000 | Erodes |
| Five | H2ISA515987 | 8/1/2018 | 12/31/2018 | $0 | $5,000,000 | Erodes |
| Five | H2ISA515988 | 8/1/2018 | 12/31/2018 | $0 | $5,000,000 | Erodes |
| Five | H2ISA515989 | 8/1/2018 | 12/31/2018 | $0 | $5,000,000 | Erodes |

15

Chubb does not offer accounting, tax or legal advice regarding the treatment of the proposed program. The Insured should conduct an independent evaluation of the information contained herein and consult with its own accounting, tax, legal advisors and any other relevant specialists before considering this transaction

## Chubb Alternative Risk Solutions
## BINDER

| Policy Group | Policy Number | Entity | State | Inception Date | Expiration Date | Attachment Point | Per Occurrence Limit | ALAE Treatment |
|---|---|---|---|---|---|---|---|---|
| Six | WCUC44187036 | Kmart Corporation | MA | 4/1/2005 | 3/31/2006 | $200,000 | $4,800,000 | Erodes |
| Six | WCUC44187036 | Kmart Corporation | AZ, IN, MT, NC | 4/1/2005 | 3/31/2006 | $250,000 | $4,750,000 | Erodes |
| Six | WCUC44187036 | Kmart Corporation | CO, MS, NV, SC | 4/1/2005 | 3/31/2006 | $300,000 | $4,700,000 | Erodes |
| Six | WCUC44187036 | Kmart Corporation | OR | 4/1/2005 | 3/31/2006 | $500,000 | $4,500,000 | Erodes |
| Six | WCUC44187036 | Kmart Corporation | AL, CA, FL, GA, IA, LA, ME | 4/1/2005 | 3/31/2006 | $2,000,000 | $3,000,000 | Erodes |
| Six | WCUC44187036 | Kmart Corporation | MI, RI, SD, TN, VA, WA | 4/1/2005 | 3/31/2006 | $2,000,000 | $3,000,000 | Erodes |
| Six | WCUC44187036 | Sears, Roebuck and Co. | WV, WA | 4/1/2005 | 3/31/2006 | $500,000 | $4,500,000 | Erodes |
| Six | WCUC44187036 | Sears, Roebuck and Co. | OH | 4/1/2005 | 3/31/2006 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC44187036 | Sears Logistic Services, Inc. | OH | 4/1/2005 | 3/31/2006 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC44187036 | Sears Carpet and Upholstery Services, Inc. | OH | 4/1/2005 | 3/31/2006 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC44187036 | Sears Home Improvement Products, Inc. | OH, WV, WA | 4/1/2005 | 3/31/2006 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC44187139 | Kmart Corporation | MA | 6/1/2005 | 3/31/2006 | $200,000 | $4,800,000 | Erodes |
| Six | WCUC44187139 | Kmart Corporation | AZ, IN, MT, NC | 6/1/2005 | 3/31/2006 | $250,000 | $4,750,000 | Erodes |
| Six | WCUC44187139 | Kmart Corporation | CO, MS, NV, SC | 6/1/2005 | 3/31/2006 | $300,000 | $4,700,000 | Erodes |
| Six | WCUC44187139 | Kmart Corporation | OR | 6/1/2005 | 3/31/2006 | $500,000 | $4,500,000 | Erodes |
| Six | WCUC44187139 | Kmart Corporation | AL, CA, FL, GA, IA, LA, ME | 6/1/2005 | 3/31/2006 | $2,000,000 | $3,000,000 | Erodes |
| Six | WCUC44187139 | Kmart Corporation | MI, RI, SD, TN, VA, WA | 6/1/2005 | 3/31/2006 | $2,000,000 | $3,000,000 | Erodes |
| Six | WCUC44187139 | Sears, Roebuck and Co. | WV, WA | 6/1/2005 | 3/31/2006 | $500,000 | $4,500,000 | Erodes |
| Six | WCUC44187139 | Sears, Roebuck and Co. | OH | 6/1/2005 | 3/31/2006 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC44187139 | Sears Logistic Services, Inc. | OH | 6/1/2005 | 3/31/2006 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC44187139 | Sears Carpet and Upholstery Services, Inc. | OH | 6/1/2005 | 3/31/2006 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC44187139 | Sears Home Improvement Products, Inc. | OH, WV, WA | 6/1/2005 | 3/31/2006 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC44340884 | Sears, Roebuck and Co. | WV, WA | 4/1/2006 | 3/31/2007 | $500,000 | $4,500,000 | Erodes |
| Six | WCUC44340884 | Sears, Roebuck and Co. | OH | 4/1/2006 | 3/31/2007 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC44340884 | Sears Logistic Services, Inc. | OH | 4/1/2006 | 3/31/2007 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC44340884 | Sears Carpet and Upholstery Services, Inc. | OH | 4/1/2006 | 3/31/2007 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC44340884 | Sears Home Improvement Products, Inc. | OH, WV, WA | 4/1/2006 | 3/31/2007 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC44340884 | Kmart Corporation | CO, MS, NV, SC | 4/1/2006 | 3/31/2007 | $300,000 | $4,700,000 | Erodes |
| Six | WCUC44340884 | Kmart Corporation | OR | 4/1/2006 | 3/31/2007 | $500,000 | $4,500,000 | Erodes |
| Six | WCUC44340884 | Kmart Corporation | AL, CA, GA, LA, MI | 4/1/2006 | 3/31/2007 | $2,000,000 | $3,000,000 | Erodes |
| Six | WCUC44340884 | Kmart Corporation | MO, OH, RI, SD, TN, WV | 4/1/2006 | 3/31/2007 | $2,000,000 | $3,000,000 | Erodes |
| Six | WCUC44340896 | Sears, Roebuck and Co. | WV, WA | 4/1/2006 | 3/31/2007 | $500,000 | $4,500,000 | Erodes |
| Six | WCUC44340896 | Sears, Roebuck and Co. | OH | 4/1/2006 | 3/31/2007 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC44340896 | Sears Logistic Services, Inc. | OH | 4/1/2006 | 3/31/2007 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC44340896 | Sears Carpet and Upholstery Services, Inc. | OH | 4/1/2006 | 3/31/2007 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC44340896 | Sears Home Improvement Products, Inc. | OH, WV, WA | 4/1/2006 | 3/31/2007 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC44340896 | Kmart Corporation | CO, MS, NV, SC | 4/1/2006 | 3/31/2007 | $300,000 | $4,700,000 | Erodes |
| Six | WCUC44340896 | Kmart Corporation | OR | 4/1/2006 | 3/31/2007 | $500,000 | $4,500,000 | Erodes |
| Six | WCUC44340896 | Kmart Corporation | AL, CA, GA, LA, MI | 4/1/2006 | 3/31/2007 | $2,000,000 | $3,000,000 | Erodes |
| Six | WCUC44340896 | Kmart Corporation | MO, OH, RI, SD, TN, WV | 4/1/2006 | 3/31/2007 | $2,000,000 | $3,000,000 | Erodes |
| Six | WCUC44460774 | Sears, Roebuck and Co. | WV, WA | 4/1/2007 | 7/31/2007 | $500,000 | $4,500,000 | Erodes |

16

Chubb does not offer accounting, tax or legal advice regarding the treatment of the proposed program. The
Insured should conduct an independent evaluation of the information contained herein and consult with its own
accounting, tax, legal advisors and any other relevant specialists before considering this transaction

## Chubb Alternative Risk Solutions
## BINDER

| Policy Group | Policy Number | Entity | State | Inception Date | Expiration Date | Attachment Point | Per Occurrence Limit | ALAE Treatment |
|---|---|---|---|---|---|---|---|---|
| Six | WCUC44460774 | Sears, Roebuck and Co. | OH | 4/1/2007 | 7/31/2007 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC44460774 | Sears Logistic Services, Inc. | OH | 4/1/2007 | 7/31/2007 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC44460774 | Sears Carpet and Upholstery Services, Inc. | OH | 4/1/2007 | 7/31/2007 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC44460774 | Sears Home Improvement Products, Inc. | OH, WA, WV | 4/1/2007 | 7/31/2007 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC44460774 | Kmart Corporation | OH, WA | 4/1/2007 | 7/31/2007 | $2,000,000 | $3,000,000 | Erodes |
| Six | WCUC44460786 | Sears, Roebuck and Co. | WV, WA | 4/1/2007 | 7/31/2007 | $500,000 | $4,500,000 | Erodes |
| Six | WCUC44460786 | Sears, Roebuck and Co. | OH | 4/1/2007 | 7/31/2007 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC44460786 | Sears Logistic Services, Inc. | OH | 4/1/2007 | 7/31/2007 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC44460786 | Sears Carpet and Upholstery Services, Inc. | OH | 4/1/2007 | 7/31/2007 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC44460786 | Sears Home Improvement Products, Inc. | OH, WA, WV | 4/1/2007 | 7/31/2007 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC44460786 | Kmart Corporation | OH, WA | 4/1/2007 | 7/31/2007 | $2,000,000 | $3,000,000 | Erodes |
| Six | WCUC44477257 | Sears, Roebuck and Co. | WV | 8/1/2007 | 7/31/2008 | $500,000 | $4,500,000 | Erodes |
| Six | WCUC44477257 | Sears, Roebuck and Co. | OH, WA | 8/1/2007 | 7/31/2008 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC44477257 | Sears Logistic Services, Inc. | OH | 8/1/2007 | 7/31/2008 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC44477257 | Sears Carpet and Upholstery Services, Inc. | OH | 8/1/2007 | 7/31/2008 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC44477257 | Sears Home Improvement Products, Inc. | OH, WA | 8/1/2007 | 7/31/2008 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC44477257 | Sears Home Improvement Products, Inc. | WV | 8/1/2007 | 7/31/2008 | $500,000 | $4,500,000 | Erodes |
| Six | WCUC44477257 | Kmart Corporation | OH, WV | 8/1/2007 | 7/31/2008 | $2,000,000 | $3,000,000 | Erodes |
| Six | WCUC42847896 | Sears, Roebuck and Co. | WV | 8/1/2008 | 7/31/2009 | $500,000 | $4,500,000 | Erodes |
| Six | WCUC42847896 | Sears, Roebuck and Co. | OH, WA | 8/1/2008 | 7/31/2009 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC42847896 | Sears Logistic Services, Inc. | OH | 8/1/2008 | 7/31/2009 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC42847896 | Sears Carpet and Upholstery Services, Inc. | OH | 8/1/2008 | 7/31/2009 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC42847896 | Sears Home Improvement Products, Inc. | WA | 8/1/2008 | 7/31/2009 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC42847896 | Kmart Corporation | OH, WV | 8/1/2008 | 7/31/2009 | $2,000,000 | $3,000,000 | Erodes |
| Six | WCUC45701232 | Sears, Roebuck and Co. | WV | 8/1/2009 | 7/31/2010 | $500,000 | $4,500,000 | Erodes |
| Six | WCUC45701232 | Sears, Roebuck and Co. | OH, WA | 8/1/2009 | 7/31/2010 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC45701232 | Sears Logistic Services, Inc. | OH | 8/1/2009 | 7/31/2010 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC45701232 | Sears Carpet and Upholstery Services, Inc. | OH | 8/1/2009 | 7/31/2010 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC45701232 | Sears Home Improvement Products, Inc. | WA | 8/1/2009 | 7/31/2010 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC45701232 | Kmart Corporation | OH, WV | 8/1/2009 | 7/31/2010 | $2,000,000 | $3,000,000 | Erodes |
| Six | WCUC46138296 | Sears, Roebuck and Co. | WV | 8/1/2010 | 7/31/2011 | $500,000 | $4,500,000 | Erodes |
| Six | WCUC46138296 | Sears, Roebuck and Co. | OH, WA | 8/1/2010 | 7/31/2011 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC46138296 | Sears Logistic Services, Inc. | OH | 8/1/2010 | 7/31/2011 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC46138296 | Sears Carpet and Upholstery Services, Inc. | OH | 8/1/2010 | 7/31/2011 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC46138296 | Sears Home Improvement Products, Inc. | WA | 8/1/2010 | 7/31/2011 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC46138296 | Kmart Corporation | OH, WV | 8/1/2010 | 7/31/2011 | $2,000,000 | $3,000,000 | Erodes |
| Six | WCUC46482839 | Sears, Roebuck and Co. | WV | 8/1/2011 | 7/31/2012 | $500,000 | $4,500,000 | Erodes |
| Six | WCUC46482839 | Sears, Roebuck and Co. | OH, WA | 8/1/2011 | 7/31/2012 | $1,000,000 | $4,000,000 | Erodes |

17

Chubb does not offer accounting, tax or legal advice regarding the treatment of the proposed program. The Insured should conduct an independent evaluation of the information contained herein and consult with its own accounting, tax, legal advisors and any other relevant specialists before considering this transaction

## Chubb Alternative Risk Solutions
## BINDER

| Policy Group | Policy Number | Entity | State | Inception Date | Expiration Date | Attachment Point | Per Occurrence Limit | ALAE Treatment |
|---|---|---|---|---|---|---|---|---|
| Six | WCUC46482839 | Sears Logistic Services, Inc. | OH | 8/1/2011 | 7/31/2012 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC46482839 | Sears Carpet and Upholstery Services, Inc. | OH | 8/1/2011 | 7/31/2012 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC46482839 | Sears Home Improvement Products, Inc. | WA | 8/1/2011 | 7/31/2012 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC46482839 | Kmart Corporation | OH, WV | 8/1/2011 | 7/31/2012 | $2,000,000 | $3,000,000 | Erodes |
| Six | WCUC47123057 | Sears, Roebuck and Co. | WV | 8/1/2012 | 7/31/2013 | $500,000 | $4,500,000 | Erodes |
| Six | WCUC47123057 | Sears, Roebuck and Co. | OH, WA | 8/1/2012 | 7/31/2013 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC47123057 | Sears Logistic Services, Inc. | OH | 8/1/2012 | 7/31/2013 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC47123057 | Sears Carpet and Upholstery Services, Inc. | OH | 8/1/2012 | 7/31/2013 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC47123057 | Sears Home Improvement Products, Inc. | WA | 8/1/2012 | 7/31/2013 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC47123057 | Kmart Corporation | OH, WV | 8/1/2012 | 7/31/2013 | $2,000,000 | $3,000,000 | Erodes |
| Six | WCUC47322613 | Sears, Roebuck and Co. | WV | 8/1/2013 | 7/31/2014 | $500,000 | $4,500,000 | Erodes |
| Six | WCUC47322613 | Sears, Roebuck and Co. | OH, WA | 8/1/2013 | 7/31/2014 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC47322613 | Sears Logistic Services, Inc. | OH | 8/1/2013 | 7/31/2014 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC47322613 | Sears Carpet and Upholstery Services, Inc. | OH | 8/1/2013 | 7/31/2014 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC47322613 | Sears Home Improvement Products, Inc. | WA | 8/1/2013 | 7/31/2014 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC47322613 | Kmart Corporation | OH, WV | 8/1/2013 | 7/31/2014 | $2,000,000 | $3,000,000 | Erodes |
| Six | WCUC47888839 | Sears, Roebuck and Co. | WV | 8/1/2014 | 7/31/2015 | $500,000 | $4,500,000 | Erodes |
| Six | WCUC47888839 | Sears, Roebuck and Co. | OH, WA | 8/1/2014 | 7/31/2015 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC47888839 | Sears Logistic Services, Inc. | OH | 8/1/2014 | 7/31/2015 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC47888839 | Sears Carpet and Upholstery Services, Inc. | OH | 8/1/2014 | 7/31/2015 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC47888839 | Sears Home Improvement Products, Inc. | WA | 8/1/2014 | 7/31/2015 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC47888839 | Kmart Corporation | OH, WV | 8/1/2014 | 7/31/2015 | $2,000,000 | $3,000,000 | Erodes |
| Six | WCUC48589662 | Sears, Roebuck and Co. | WV | 8/1/2015 | 7/31/2016 | $500,000 | $4,500,000 | Erodes |
| Six | WCUC48589662 | Sears, Roebuck and Co. | OH, WA | 8/1/2015 | 7/31/2016 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC48589662 | Sears Logistic Services, Inc. | OH | 8/1/2015 | 7/31/2016 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC48589662 | Sears Carpet and Upholstery Services, Inc. | OH | 8/1/2015 | 7/31/2016 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC48589662 | Sears Home Improvement Products, Inc. | WA | 8/1/2015 | 7/31/2016 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC48589662 | Kmart Corporation | OH, WV | 8/1/2015 | 7/31/2016 | $2,000,000 | $3,000,000 | Erodes |
| Six | WCUC48609259 | Sears, Roebuck and Co. | WV | 8/1/2016 | 7/31/2017 | $500,000 | $4,500,000 | Erodes |
| Six | WCUC48609259 | Sears, Roebuck and Co. | OH, WA | 8/1/2016 | 7/31/2017 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC48609259 | Sears Logistic Services, Inc. | OH | 8/1/2016 | 7/31/2017 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC48609259 | Sears Carpet and Upholstery Services, Inc. | OH | 8/1/2016 | 7/31/2017 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC48609259 | Sears Home Improvement Products, Inc. | WA | 8/1/2016 | 7/31/2017 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC48609259 | Kmart Corporation | OH, WV | 8/1/2016 | 7/31/2017 | $2,000,000 | $3,000,000 | Erodes |
| Six | WCUC64413314 | Sears, Roebuck and Co. | WV | 8/1/2017 | 7/31/2018 | $500,000 | $4,500,000 | Erodes |
| Six | WCUC64413314 | Sears, Roebuck and Co. | OH, WA | 8/1/2017 | 7/31/2018 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC64413314 | Sears Logistic Services, Inc. | OH | 8/1/2017 | 7/31/2018 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC64413314 | Sears Carpet and Upholstery Services, Inc. | OH | 8/1/2017 | 7/31/2018 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC64413314 | Sears Home Improvement Products, Inc. | WA | 8/1/2017 | 7/31/2018 | $1,000,000 | $4,000,000 | Erodes |
| Six | WCUC64413314 | Kmart Corporation | OH, WV | 8/1/2017 | 7/31/2018 | $2,000,000 | $3,000,000 | Erodes |
| Six | WCUC65226273 | Sears, Roebuck and Co. | WV | 8/1/2018 | 12/31/2018 | $500,000 | $1,500,000 | Erodes |
| Six | WCUC65226273 | Sears, Roebuck and Co. | OH, WA | 8/1/2018 | 12/31/2018 | $1,000,000 | $1,500,000 | Erodes |
| Six | WCUC65226273 | Sears Logistic Services, Inc. | OH | 8/1/2018 | 12/31/2018 | $1,000,000 | $1,500,000 | Erodes |
| Six | WCUC65226273 | Sears Carpet and Upholstery Services, Inc. | OH | 8/1/2018 | 12/31/2018 | $1,000,000 | $1,500,000 | Erodes |
| Six | WCUC65226273 | Sears Home Improvement Products, Inc. | WA | 8/1/2018 | 12/31/2018 | $1,000,000 | $1,500,000 | Erodes |
| Six | WCUC65226273 | Kmart Corporation | OH, WV | 8/1/2018 | 12/31/2018 | $2,000,000 | $1,500,000 | Erodes |

18

Chubb does not offer accounting, tax or legal advice regarding the treatment of the proposed program. The Insured should conduct an independent evaluation of the information contained herein and consult with its own accounting, tax, legal advisors and any other relevant specialists before considering this transaction

**Chubb Alternative Risk Solutions**
**BINDER**

**Appendix 3**

Loss Data limited to the Per Occurrence Limit
Valued as of June 30, 2020

[loss data on next page]

Chubb does not offer accounting, tax or legal advice regarding the treatment of the proposed program. The Insured should conduct an independent evaluation of the information contained herein and consult with its own accounting, tax, legal advisors and any other relevant specialists before considering this transaction

## Chubb Alternative Risk Solutions
## BINDER

| | | | Workers' Compensation - Policy Group One | | | | | |
|---|---|---|---|---|---|---|---|---|
| Effective Date | Expiration Date | Entity | State Group | Paid Loss | Reported Loss | Case Reserve | Open Counts | Reported Counts |
| 10/01/92 | 09/30/93 | Sears | All States except CA | $72,830,153 | $74,488,243 | $1,658,090 | 17 | 3,521 |
| 10/01/93 | 09/30/94 | Sears | All States except CA | $61,130,229 | $62,255,771 | $1,125,541 | 14 | 2,863 |
| 10/01/94 | 09/30/95 | Sears | All States except CA | $48,343,199 | $50,286,153 | $1,942,954 | 15 | 2,431 |
| 10/01/95 | 09/30/96 | Sears | All States except CA | $54,258,122 | $55,838,454 | $1,580,332 | 20 | 2,657 |
| 10/01/96 | 09/30/97 | Sears | All States except CA | $58,192,401 | $60,482,784 | $2,290,383 | 15 | 2,762 |
| 10/01/92 | 09/30/93 | Sears | CA | $20,317,709 | $20,324,053 | $6,344 | 1 | 23,792 |
| 10/01/93 | 09/30/94 | Sears | CA | $13,199,377 | $13,560,403 | $361,026 | 4 | 20,145 |
| 10/01/94 | 09/30/95 | Sears | CA | $13,656,985 | $13,819,386 | $162,402 | 3 | 21,095 |
| 10/01/95 | 09/30/96 | Sears | CA | $16,019,022 | $16,363,880 | $344,858 | 5 | 24,658 |
| 10/01/96 | 09/30/97 | Sears | CA | $22,157,657 | $22,486,953 | $329,296 | 5 | 24,793 |
| | | | **Total:** | **$380,104,853** | **$389,906,080** | **$9,801,226** | **99** | **128,217** |

| | | | Workers' Compensation - Policy Group Two | | | | | |
|---|---|---|---|---|---|---|---|---|
| Effective Date | Expiration Date | Entity | State Group | Paid Loss | Reported Loss | Case Reserve | Open Counts | Reported Counts |
| 08/01/10 | 07/31/11 | Kmart | All States except CA | $0 | $0 | $0 | 0 | 0 |
| 08/01/10 | 07/31/11 | Sears | All States except CA | $574,797 | $1,483,345 | $908,548 | 3 | 3 |
| 08/01/10 | 07/31/11 | Sears | CA | $0 | $0 | $0 | 0 | 0 |
| 08/01/10 | 07/31/11 | Kmart | CA | $0 | $0 | $0 | 0 | 0 |
| | | | **Total:** | **$574,797** | **$1,483,345** | **$908,548** | **3** | **3** |

| | | | Workers' Compensation - Policy Group Three | | | | | |
|---|---|---|---|---|---|---|---|---|
| Effective Date | Expiration Date | Entity | State Group | Paid Loss | Reported Loss | Case Reserve | Open Counts | Reported Counts |
| 08/01/17 | 07/31/18 | Sears & Kmart | All States except CA | $17,543,246 | $21,007,040 | $3,463,793 | 92 | 2,202 |
| 08/01/18 | 12/31/18 | Sears & Kmart | All States except CA | $4,290,346 | $6,367,821 | $2,077,475 | 48 | 691 |
| 08/01/17 | 07/31/18 | Sears & Kmart | CA | $6,539,355 | $9,539,546 | $3,000,191 | 65 | 575 |
| 08/01/18 | 12/31/18 | Sears & Kmart | CA | $1,736,238 | $3,739,141 | $2,002,904 | 42 | 220 |
| | | | **Total:** | **$30,109,185** | **$40,653,548** | **$10,544,363** | **247** | **3,688** |

| | General Liability - Policy Group Four | | | | | |
|---|---|---|---|---|---|---|
| Effective Date | Expiration Date | Paid Loss | Reported Loss | Case Reserve | Open Counts | Reported Counts |
| 05/29/15 | 07/31/15 | $63,245 | $110,977 | $47,732 | 1 | 37 |
| 08/01/15 | 07/31/16 | $322,180 | $506,817 | $184,637 | 3 | 155 |
| 08/01/16 | 07/31/17 | $36,103 | $135,558 | $99,455 | 4 | 110 |
| 08/01/17 | 07/31/18 | $22,334 | $57,825 | $35,492 | 5 | 102 |
| 08/01/18 | 12/31/18 | $20,042 | $64,597 | $44,555 | 4 | 49 |
| | **Total:** | **$463,903** | **$875,773** | **$411,870** | **17** | **453** |

| | Auto Liability - Policy Group Five | | | | | |
|---|---|---|---|---|---|---|
| Effective Date | Expiration Date | Paid Loss | Reported Loss | Case Reserve | Open Counts | Reported Counts |
| 08/01/17 | 07/31/18 | $838,222 | $1,618,907 | $780,685 | 82 | 442 |
| 08/01/18 | 12/31/18 | $251,977 | $1,160,283 | $908,306 | 60 | 168 |
| | **Total:** | **$1,090,199** | **$2,779,190** | **$1,688,991** | **142** | **610** |

| | Workers' Compensation - Policy Group Six | | | | | |
|---|---|---|---|---|---|---|
| Effective Date | Expiration Date | Paid Loss | Reported Loss | Case Reserve | Open Counts | Reported Counts |
| 4/1/2005 | 3/31/2006 | $388,471 | $433,088 | $44,616 | 1 | 4 |
| 4/1/2006 | 3/31/2007 | $60,589 | $1,107,394 | $1,046,804 | 1 | 2 |
| 4/1/2006 | 3/31/2007 | $0 | $0 | $0 | 0 | 0 |
| 4/1/2007 | 7/31/2007 | $0 | $0 | $0 | 0 | 0 |
| 8/1/2007 | 7/31/2008 | $0 | $0 | $0 | 0 | 0 |
| 8/1/2008 | 7/31/2009 | $0 | $0 | $0 | 0 | 0 |
| 8/1/2009 | 7/31/2010 | $0 | $0 | $0 | 0 | 0 |
| 8/1/2010 | 7/31/2011 | $0 | $0 | $0 | 0 | 0 |
| 8/1/2011 | 7/31/2012 | $0 | $0 | $0 | 0 | 0 |
| 8/1/2012 | 7/31/2013 | $0 | $0 | $0 | 0 | 0 |
| 8/1/2013 | 7/31/2014 | $0 | $0 | $0 | 0 | 0 |
| 8/1/2014 | 7/31/2015 | $0 | $0 | $0 | 0 | 0 |
| 8/1/2015 | 7/31/2016 | $0 | $0 | $0 | 0 | 0 |
| 8/1/2016 | 7/31/2017 | $0 | $0 | $0 | 0 | 0 |
| 8/1/2017 | 7/31/2018 | $0 | $0 | $0 | 0 | 0 |
| 8/1/2018 | 12/31/2018 | $0 | $0 | $0 | 0 | 0 |
| | **Total:** | **$449,061** | **$1,540,481** | **$1,091,421** | **2** | **6** |

*For all Policy Groups, Open and Reported Counts exclude incident only claims

Chubb does not offer accounting, tax or legal advice regarding the treatment of the proposed program. The Insured should conduct an independent evaluation of the information contained herein and consult with its own accounting, tax, legal advisors and any other relevant specialists before considering this transaction

## Chubb Alternative Risk Solutions
## BINDER

### US FATCA COMPLIANCE NOTIFICATION

The U.S. Foreign Account Tax Compliance Act, commonly known as "FATCA", became the law in the U.S. in March of 2010 and becomes effective July 1, 2014.  Pursuant to FATCA, brokers, producers, agents and/or clients may need to obtain withholding certificates, such as Forms W-8 or W-9, from insurance companies.  For information on how to obtain the applicable withholding certificate from ACE U.S. insurance companies, please go to http://www.acegroup.com/us-en/businesses/foreign-account-tax-compliance-act-fatca.aspx

21

Chubb does not offer accounting, tax or legal advice regarding the treatment of the proposed program. The Insured should conduct an independent evaluation of the information contained herein and consult with its own accounting, tax, legal advisors and any other relevant specialists before considering this transaction

## **EXHIBIT C**

Assuming Entity's Wiring Instructions

[Redacted]

## **<u>EXHIBIT D</u>**

Original Insureds' Wiring Instructions

[Redacted]