**Hearing Date and Time: Tuesday, October 6, 2020 10:00 AM (Eastern Time)**
**Objection Date and Time: Monday, September 28, 2020 4:00 PM (Eastern Time)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SEARS HOLDINGS CORPORATION, *et al.*, | : | Case No. 18-23538 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

--------------------------------------------------------------x

### NOTICE OF HEARING ON MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER TO COMPEL BANKRUPTCY RULE 2004 PRODUCTION OF DOCUMENTS

MORITT HOCK & HAMROFF LLP
1407 Broadway, 39th Floor
New York, New York 10018
Telephone: (212) 239-2000
Facsimile: (212) 239-7277
James P. Chou
Ted A. Berkowitz
Danielle J. Marlow

*Special Conflicts Counsel to the Official Committee*
*of Unsecured Creditors of Sears Holding Corporation, et al.*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); SHC Licensed Business LLC (3718); SHC Promotions LLC (9626); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "Motion"), of the Official Committee of Unsecured Creditors (the "Creditors' Committee") of Sears Holdings Corporation ("Sears") and its affiliated debtors and debtors in possession (collectively, the "Debtors"), for entry of an order compelling BMO Nesbitt Burns, Inc. ("BMO Nesbitt"), HSBC Global Asset Management (UK) Limited ("HSBC"), Legal and General Investment Management Limited ("LGIM"), Jeffries LLC ("Jeffries"), PNC Bank, N.A. ("PNC"), and Clearstream Banking AG ("Clearstream") to produce the documents requested in the Creditors' Committee's Public Shareholder Subpoenas no later than October 9, 2020, pursuant to section 105 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 2004 and 9016, and Federal Rule of Civil Procedure 45, and 28 U.S.C. §§ 157 and 1334, as more fully set forth in the Motion, will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, (the "Bankruptcy Court") on **October 6, 2020 at 10:00 a.m. (Eastern Time)** (the "Hearing"), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that pursuant to General Order M-543, dated March 20, 2020 (Morris, C.J.), the Hearing will be conducted telephonically.  Parties wishing to appear at, or attend, the Hearing must refer to and comply with the Bankruptcy Court's guidelines for telephonic appearances[2] and make arrangements with Court Solutions LLC by telephone at (917) 746-7476.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (the "Objections") to the Motion shall be in writing, conform to the Bankruptcy Rules and the Local Rules, filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court,

---

[2]  The Bankruptcy Court's procedures for telephonic appearances are available at:
http://www.nysb.uscourts.gov/telephonic-appearances-white-plains.

including attorneys admitted *pro hac vice,* electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with the *Amended Order Implementing Certain Notice and Case Management Procedures,* entered on November 1, 2018 [ECF No. 405], so as to be filed and received no later than **September 28, 2020 at 4:00 p.m. (Eastern Time)** (the "Objection Deadline").

     **PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, the Creditors' Committee may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

     **PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

*[Reminder of page left blank intentionally]*

Dated: New York, New York
    September 14, 2020

MORITT HOCK & HAMROFF LLP

By:   /s/ *James P. Chou*
    James P. Chou
    Ted A. Berkowitz
    Danielle J. Marlow
1407 Broadway - 39th Floor
New York, New York, 10018
Telephone: (212) 239-2000
Facsimile: (212) 239-7277

*Special Conflicts Counsel to the Official*
*Committee of Unsecured Creditors of*
*Sears Holdings Corporation, et al.*

**Hearing Date and Time: Tuesday, October 6, 2020 10:00 AM (Eastern Time)**
**Objection Date and Time: Monday, September 28, 2020 4:00 PM (Eastern Time)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SEARS HOLDINGS CORPORATION, *et al.*, | : | Case No. 18-23538 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

-----------------------------------------------------------------x

### MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER TO COMPEL BANKRUPTCY RULE 2004 PRODUCTION OF DOCUMENTS

MORITT HOCK & HAMROFF LLP
1407 Broadway, 39th Floor
New York, New York 10018
Telephone: (212) 239-2000
Facsimile: (212) 239-7277
James P. Chou
Ted A. Berkowitz
Danielle J. Marlow

*Special Conflicts Counsel to the Official Committee*
*of Unsecured Creditors of Sears Holding Corporation, et al.*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); SHC Licensed Business LLC (3718); SHC Promotions LLC (9626); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179

The Official Committee of Unsecured Creditors (the "Creditors' Committee") of Sears

Holdings Corporation ("Sears") and its affiliated debtors and debtors in possession (collectively,

the "Debtors"), by and through its undersigned special conflicts counsel, hereby submits this

Motion to Compel Bankruptcy Rule 2004 Production of Documents from Third-Parties (the

"Motion").  In support of this Motion, the Creditors' Committee respectfully states as follows:

### PRELIMINARY STATEMENT[2]

1.      Pursuant to Bankruptcy Rule 2004 ("Rule 2004"), the Creditors' Committee

began issuing subpoenas ten months ago to identify non-insider shareholders who benefitted

from the Lands' End and Seritage transactions.  The purpose of these subpoenas, as detailed

below, was to obtain information necessary to file a separate action asserting fraudulent transfer

claims against the non-insider shareholders, in the event that the Litigation Designees (as defined

in the Confirmation Order) decide it will be beneficial to the Debtors' estates to do so.

2.      Pursuant to 11 U.S.C. § 546(a), the statute of limitations to file this separate

action expires on October 15, 2020.

3.      After extensive meet-and-confer efforts spanning several months, most of the 127

subpoenaed parties complied with the subpoenas and provided the Creditors' Committee with the

requested information.  Nonetheless, seven (7) of the subpoenaed parties— six (6) of which are

the subject of this Motion and two (2) of which are the subject of a parallel motion that Akin

Gump, main counsel to the Creditors' Committee is filing contemporaneously—have chosen to

flout  this Court's Rule 2004 Order and not complied  with the subpoenas (the "Nonproducing

Parties").  Specifically, this motion is made against (i) BMO Nesbitt Burns, Inc. ("BMO

Nesbitt"), HSBC Global Asset Management (UK) Limited ("HSBC"), and Legal and General

---

[2] Capitalized terms used but not otherwise defined in this Preliminary Statement shall have the meanings ascribed to such terms in the sections below.

1

Investment Management Limited ("LGIM"),[3] each of which has failed to respond to the Subpoenas served upon them; (ii) Jefferies LLC ("Jefferies") whose production is incomplete in that it refuses to provide the relevant account holders' names which, as discussed below, are essential, and PNC Bank, N.A. ("PNC"), whose production is incomplete in that it only produced account holder information for two specific dates and refuses to supplement; and (iii) Clearstream Banking AG ("Clearstream"), which has baselessly objected and refused to produce on a number of spurious grounds such as lack of jurisdiction and improper service. Despite the Creditors' Committee's efforts to obtain basic court-ordered discovery from the Nonproducing Parties, it has become clear that these parties will not timely produce the requested information absent court intervention.

4.      With the statute of limitations to file actions just over one month away, it is imperative that the Creditors' Committee receive the information requested by the Rule 2004 subpoenas promptly to enable the Litigation Designees to perform their fiduciary duties to the Debtors' estates and assess whether to commence an action against these non-insider shareholders of Sears. Accordingly, the Creditors' Committee respectfully requests that the Court enter an order compelling the Nonproducing Parties to produce the information requested by the Creditors' Committee no later than October 9, 2020.

## JURISDICTION AND VENUE

5.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Creditors' Committee confirms its consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

---

[3] Upon information and belief, LGIM does substantial business in New York, but has a principal place of business located in Chicago and was served in Illinois. To ensure jurisdiction over Legal and General, the Committee will also be filing an ancillary action and motion to compel against it in Illinois.

2

to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The bases for the relief requested herein are section 105 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 2004 and 9016, and Federal Rule of Civil Procedure 45.

## BACKGROUND

7.    On November 16, 2018, the Court entered the *Order Pursuant to Bankruptcy Code Section 105 and Federal Rules of Bankruptcy Procedure 2004, 9006, and 9016 Authorizing Expedited Discovery of the Debtors and Third Parties* [ECF No. 802] (the "Rule 2004 Order").

8.    Pursuant to the Rule 2004 Order, the Creditors' Committee was authorized to, among other things, "issue subpoenas for the production of documents relevant to the Rule 2004 Topics . . . ." Rule 2004 Order ¶ 2.  "The Rule 2004 Topics" are wide-reaching and include both the Lands' End Spin-off and the Seritage Rights Offering.[4]  *See Motion of the Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al., for the Entry of an Order Pursuant to Bankruptcy Code Section 105 and Federal Rules of Bankruptcy Procedure 2004, 9006, and 9016 Authorizing Expedited Discovery of the Debtors And Third Parties* [ECF No. 484], at 7-13. The Creditors' Committee and subpoena recipients were required to "work diligently to expedite and substantially complete production of responsive documents as soon as reasonably practicable." Rule 2004 Order ¶ 4.

9.    In accordance with the authority granted to it under the Rule 2004 Order, the Creditors' Committee has actively engaged in discovery to identify certain non-insider

---

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *First Amended Complaint* [Adv. Pro. No. 19-08250, ECF No. 52] ("FAC") filed in the Adversary Proceeding.

3

shareholders of Sears who held shares at the time of, and thus benefitted from, the Lands' End Spin-Off and the Seritage Rights Offering. As alleged in detail in the First Amended Complaint filed in the pending adversary proceeding captioned *Sears Holdings Corp., et al. v. Lampert, et al.*, Case No. 19-08250 (RDD) (Bankr. S.D.N.Y.) (the "Adversary Proceeding"), each of these transactions conveyed substantial value away from Sears to its shareholders at a time when Sears was balance sheet-insolvent and/or cash flow-insolvent and/or intended to incur debts beyond its ability to pay. *See, e.g.*, FAC ¶¶ 4, 10, 13-16. The purpose of the discovery is to identify the recipients of the fraudulent transfers, assess potential damages, and be prepared to file a fraudulent transfer lawsuit against certain of these non-insider shareholders in the event the Litigation Designees opt to do so.

10.     To identify the appropriate non-insider shareholders, the Creditors' Committee served subpoenas (the "Public Shareholder Subpoenas") on various institutions that held significant amounts of Sear's stock "in street name." The subpoenas sought documentation sufficient to identify the underlying beneficial owners of the Sears shares held by each subpoena recipient in street name. To narrow the pool of potential defendants, the Creditors' Committee limited its subpoenas to institutional holders of Sears stock "in street name" which, by virtue of the number of Sears shares held, received an aggregate benefit in excess of $250,000 in connection with either or both of the Lands' End Spin-off and the Seritage Rights Offering. The Creditors' Committee identified the parties for service of the Public Shareholder Subpoenas through a review of public filings and through a subpoena served on Depository Trust & Clearing Corporation (DTCC), a security depository.

11.     The Public Shareholder Subpoenas served by the Creditors' Committee were all substantially identical and contained only six narrow document requests:

4

1. Documents sufficient to identify (a) all shares of Lands' End that You received at the time of the Lands' End Spin-off, and (b) the capacity in which You received such a Transfer.

2. To the extent You did not retain the shares of Lands' End identified pursuant to Request One, documents sufficient to Identify (a) each Person or Persons to whom You transferred such Lands' End shares; (b) the number of Lands' End shares transferred to each such Person; (c) the estimated value of the awarded Lands' End shares transferred to each such Person; and (d) the address of each such Person.

3. Documents sufficient to determine whether each Person Identified pursuant to Request Two was acting as an Intermediary concerning the Transfer of the Lands' End shares awarded in connection with the Lands' End Spin-off. If the Persons Identified pursuant to Request Two above were not the ultimate Beneficial Owners, produce documents sufficient to Identify each such ultimate Beneficial Owner.

4. Documents sufficient to identify (a) all Seritage Rights that You received at the time of the Seritage Rights Offering, and (b) the capacity in which You received such a Transfer.

5. To the extent You did not retain the Seritage Rights identified pursuant to Request Four, documents sufficient to Identify (a) each Person or Persons to whom you transferred such Seritage Rights; (b) the number of Seritage Rights transferred to each such Person; (c) the estimated value of the Seritage Rights transferred to each such Person; (d) whether each such Person sold the Seritage Rights and/or tendered the Seritage Rights to receive shares of Seritage; and (e) the address of each such Person.

6. Documents sufficient to determine whether each Person Identified pursuant to Request Five was acting as an Intermediary concerning the Seritage Rights awarded in connection with the Seritage Rights Offering. If the Persons Identified pursuant to Request Five above were not the ultimate Beneficial Owners, produce documents sufficient to Identify each such ultimate Beneficial Owner.

(*See* Public Shareholder Subpoena, attached as Exhibit A).

12.    As of the date of this Motion, Moritt Hock & Hamroff LLP ("Moritt Hock"), special conflicts counsel to the Creditors' Committee, has served Public Shareholder Subpoenas on 57 parties.  Of the parties served, 43 have either substantially completed productions or represented that they have no responsive data, four (4) have made productions that require follow-up and have agreed to supplement, and three (3) have represented that their productions

are forthcoming.[5]  The six (6) Nonproducing Parties have either (i) wholly failed to comply with

the Public Shareholder Subpoenas (BMO Nesbitt, HSBC, and LGIM); (ii) made incomplete

productions, specifically by failing to provide account holder names (Jefferies), or by producing

only for certain dates (PNC); or (iii) asserted objections having no legal basis (Clearstream).[6]

13.    The Creditors' Committee validly served the Public Shareholder Subpoenas on

the Nonproducing Parties.   All have had more than ample time to produce information

responsive to the Public Shareholder Subpoenas, and, in contravention of the Rule 2004 Order

and applicable law, have failed to do so.   For the following reasons, the Court should compel

their production.

## ARGUMENT

### A.  Legal Standard

14.    Under Bankruptcy Rule 2004, "[o]n motion of any party in interest, the court may

order the examination of any entity."  Fed. R. Bankr. P. 2004(a).  It is without doubt that the

scope of inquiry permitted under Rule 2004 "is exceptionally broad."  *Martin v. Schaap Moving

Sys., Inc.*, No. 97-5042*, 1998 WL 405966, at *2 (2d. Cir. Apr. 20, 1998); *see also In re Almatis

B.V.*, No. 10-12308(MG), 2010 WL 4877868, at *4 (Bankr. S.D.N.Y. Nov. 24, 2010) ("It is well

established that the scope of a Rule 2004 examination is very broad and provides fewer

procedural safeguards than [FRCP 26]").

15.    Rule 2004 further provides that, where necessary, "[t]he attendance of an entity

for examination and for the production of documents . . . may be compelled as provided in Rule

9016 . . . ."  Fed. R. Bankr. P. 2004(c).  Bankruptcy Rule 9016, in turn, makes Rule 45 of the

---

[5] Two subpoenas were withdrawn because the respondents demonstrated that they did not receive the Lands' End or Seritage securities at issue.

[6] Although Moritt Hock's letter to the Court dated September 4, 2020, [ECF No. 8417] identified nine noncompliant parties, one has since agreed to produce responsive documents, one has agreed to supplement its production, and we have determined that the production for another is covered by a related entity.

Federal Rules of Civil Procedure applicable to bankruptcy proceedings.  *See* Fed. R. Bankr. P.

9016; *see also Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 279 (3d Cir. 2013) ("[A] a party

that serves a subpoena for a Rule 2004 examination and document production

may compel performance under Bankruptcy Rule 9016 and Civil Rule 45").

**B.  BMO Nesbitt, HSBC, and LGIM Should Be Compelled To Respond Because They Failed to Object**

16.     BMO Nesbitt, HSBC and LGIM completely ignored the Public Shareholder

Subpoena, and accordingly, the Court should grant the Creditors' Committee's motion to compel.

17.     BMO Nesbitt, HSBC, and LGIM were duly served with the Public Shareholder

Subpoenas.  BMO Nesbitt was served on July 7, 2020 through its authorized agent at the

Secretary of State (*see* Affidavit of Service upon BMO Nesbitt, attached as Exhibit B).  HSBC

was served personally on May 4, 2020 (*see* Affidavit of Service upon HSBC, attached as Exhibit

C).  LGIM was served personally on April 22, 2020 (*see* Affidavit of Service upon LGIM,

attached as Exhibit D).

18.     Rule 45 requires that any objection to a subpoena "be served before the earlier of

the time specified for compliance or 14 days after the subpoena is served."  Fed. R. Civ. P.

45(d)(2)(B).  "The fourteen day time limitation to serve written objections to a subpoena is

crucial as failure to do so typically constitutes a waiver of such objections."  *In re Corso*, 328

B.R. 375, 384 (Bankr. E.D.N.Y. 2005) (imposing sanctions on a lender that failed to object to a

Rule 2004 subpoena "[d]espite the strict time limitations and mechanism to properly object to a

subpoena set forth in Fed. R. Civ. P. 45").  Likewise, a party moving to quash a Rule 2004

subpoena must do so within fourteen (14) days of service.  *In re Parikh*, 397 B.R. 518, 523

(Bankr. E.D.N.Y. 2008) (noting that "under Rule 45(c)(2)(B) of the Federal Rules of Civil

Procedures, as made applicable by Bankruptcy Rule 9016, the party subject to the Rule 2004

subpoena must bring a motion to quash within 14 days of service"). Objections or a motion for a protective order brought after that time are untimely. *See U. S. v. International Business Machines Corp.*, 70 F.R.D. 700, 702 (S.D.N.Y. 1976) (motions for protective orders interposed after deadlines imposed under FRCP 45 were untimely).

19.     Notwithstanding this well-established authority, BMO Nesbitt HSBC, and LGIM chose to disregard the "strict time limitations and mechanism to properly object to a subpoena set forth in Fed. R. Civ. P. 45" (*In re Corso*, 328 B.R. at 384) by failing to timely object, move to quash, or otherwise substantively respond to the subpoenas served on them. BMO Nesbitt, HSBC, and LGIM have no plausible excuse for their noncompliance. Indeed, despite sending a courtesy copy of the subpoena via email to both BMO Nesbitt and HSBC (*see* e-mail to BMO Nesbitt dated July 24, 2020 attached as Exhibit E, and by e-mail to HSBC dated May 28, 2020 attached as Exhibit F), the Creditors' Committee's efforts were met with complete silence.

20.     Because they failed to object or, indeed, respond in any manner, BMO Nesbitt, HSBC, and LGIM have waived any potential objections to producing the information sought by the subpoenas served on them, and should be compelled to produce the requested information immediately. *See In re Corso*, 328 B.R. at 387 (directing the lender to comply with the Rule 2004 subpoena it received and finding the imposition of sanctions proper).

**C. Jefferies Should Be Compelled to Produce Account Holder Names**

21.     Jefferies has produced responsive information, but without account holder names, contending that it cannot disclose the account holder names because of confidentiality concerns. Even if the requested information is confidential (which the Creditors' Committee does not concede), confidentiality concerns do not provide Jefferies a basis to withhold discovery because

the Court has entered an Amended Stipulated Protective Order in this matter (ECF No. 1084), pursuant to which Jefferies can produce information on a confidential basis.

22.    Each of the numerous other parties that have made productions have found the protections afforded by the Amended Stipulated Protective Order more than adequate.  Further, Courts have held that the safeguards similar to those contemplated by the Amended Stipulated Protective Order are more than adequate.  *See, e.g.*,  *S.E.C. v. Galleon Management LP,* 274 F.R.D. 120, 124 (S.D.N.Y. 2011) (privacy interests of third parties were "adequately protected by the Court's Protective Order, which limits the disclosure of all confidential discovery material to the parties and their counsel, witnesses and experts who sign non-disclosure agreements, and the Court and its support personnel"); *Steele v. Costco Wholesale Corp.*, CV 2003-0713 (NG) (MDG), 2004 WL 7331728 (S.D.N.Y. 2004) (denying application to redact names as "the non-parties' privacy are adequately protected with a protective order limiting disclosure and use of any information").

23.    As the Court has already entered the Amended Stipulated Protective Order, which provides extensive confidentiality protections, the Court should reject Jefferies' confidentiality-based objections and compel it to provide account holder names.

### D. PNC Should Be Compelled To Supplement Its Production To Produce Account Holder Information For Additional Dates

24.    PNC produced responsive information, but only for two dates: (i) April 7, 2014 with respect to account holders who received Lands' End spinoff shares and (ii) June 11, 2015 with respect to account holders who received Seritage rights offerings.  PNC bases its position that it is only required to produce account holder information for these two dates on a single e-mail which as a courtesy detailed the transactions at issue and noted that the Lands' End spin off occurred "on **or about** April 7, 2014," and that the Seritage rights offering occurred "on **or**

**about**" June 11, 2014.  *See* August 6, 2020 e-mail, attached as Exhibit G (emphasis added). PNC's position is absurd in that the e-mail correspondence clearly is intended to provide information regarding the subject transactions, not limit the scope of the Subpoena to two specific dates.  *Id.*

25.    In an effort to resolve the matter amicably, Moritt Hock suggested that PNC produce responsive information for two additional dates:  April 14, 2020 and June 18, 2020. Notwithstanding the foregoing compromise, PNC remains obdurate in its position that it is only required to produce for two single dates.  *See* September 14, 2020 e-mail, attached as Exhibit H.

26.    PNC's position that producing account holder information for just two additional dates would impose an undue burden is simply not credible.     Further, this information is necessary to provide a full and accurate picture of the account holders at PNC receiving Lands' End and Seritage securities.  PNC thus should be compelled to provide the requested information for Lands' End spin off shares as of April 14, 2014 and Seritage Rights offerings as of June 18, 2020.

### E.  Clearstream Should Be Compelled to Produce Because Its Objections are Baseless

27.    Although Clearstream failed to serve formal objections and responses to the Public Shareholder Subpoena, based upon an e-mail it sent in response to the Subpoena (*see* July 16, 2020 e-mail, attached as Exhibit I), the Committee understands that Clearstream relies on three grounds in refusing to produce the requested information: (i) while Clearstream has acknowledged that the Public Shareholder Subpoena was received by the "New York representative office of Clearstream Banking S.A.," the documents requested are not located in New York, but rather Luxembourg and/or Germany; (ii) due to strict Luxembourg banking secrecy laws, Clearstream is prohibited from producing the subpoenaed information absent an order from a Luxembourg court; and (iii) the Creditors' Committee failed to serve the Public

Shareholder Subpoena via the Hague Convention of November 15, 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Service Convention"). As set forth below, each of these grounds is baseless.

28.     *First*, Clearstream's argument that it is not obligated to produce documents in response to the Public Shareholder Subpoena because the documents are located in its European-affiliated branches is of no legal import.

29.     Within this jurisdiction, the "general rule is that a foreign corporation doing business in the district is subject to process, including subpoenas *duces tecum*; and it must produce its records and documents even though [such materials] are outside the United States. It is immaterial that the agent upon whom service is made does not have control of the books and records required to be produced. It is not the agent who is to respond, but the corporation. The agent is merely the vehicle for reaching the corporation." *In re Equitable Plan Co.*, 185 F. Supp. 57, 58 (S.D.N.Y. 1960); *see also Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 147-48 (S.D.N.Y. 2011) ("for the purposes of a Rule 45 subpoena, a document is within a witness's 'possession custody, or control' if the witness has the practical ability to obtain the document. If the party subpoenaed has the practical ability to obtain the documents, the actual physical location of the documents – even if overseas – is immaterial").

30.     This conclusion is particularly forceful where, as here, the Public Shareholder Subpoena was directed at Clearstream "as a whole, not solely the New York branches." *Tiffany*, 276 F.R.D. at 149-50 (finding that New York-based subpoenaed non-party had "control" over documents located in China with its affiliated entities for production purposes); *Ssangyong v. Vida Shoes Intern., Inc.*, 03-CV-5014-KMW-DFE, 2004 WL 1125659 (S.D.N.Y. May 20, 2004) (same).

31.    Consequently, whether documents responsive to the Public Shareholder Subpoena
are in Clearstream's possession at its New York branch location, or in its headquarters or affiliate
branches in Luxembourg and/or Germany, they are still within Clearstream's "control," and thus
well within the scope of the Public Shareholder Subpoena.

32.    ***Second***, Clearstream's contention that the requested production is prohibited
under Luxembourg banking secrecy laws, without specificity or citation, is unpersuasive,
particularly in light of the Amended Stipulated Protective Order in place in this action.  Despite
receiving a copy of the Amended Stipulated Protective Order, Clearstream merely states in an
email that "[d]ue to strict Luxembourg banking secrecy laws . . . [Clearstream] is prohibited to
turn over whole or part of any information belonging to its customers." *See* Exhibit G.

33.    This vague reference to banking secrecy laws is insufficient justification for
Clearstream to flout its obligations under the Public Shareholder Subpoena.  Indeed, this Court
has recognized that "the ordered production of private account information in contravention
of foreign bank secrecy laws," such as those requested by the Public Shareholder Subpoena, is
generally appropriate even when considering a comity analysis. *Wultz v. Bank of China Ltd.*, 910
F.Supp.2d 548, 556 (S.D.N.Y. 2012) (granting motion to compel production of private account
information even in contravention of Chinese banking secrecy laws).

34.    This conclusion is particularly compelling where, as here, the conduct that is the
subject of the subpoenaed documents concerns New York transactions. *See Fundacion Museo de
Arte Contemporaneo v. CBI-TDB Union Bancaire Privee*, 93-Civ-6870 (PKL), 1996 WL 243431
(S.D.N.Y. Feb. 9, 1996) (compelling production of documents over subpoenaed party's protest
that production would conflict with Swiss bank secrecy laws); *U.S. v. First Nat. City Bank*, 396
F.2d 897, 901 (2d Cir. 1968) ("A state having jurisdiction to prescribe or enforce a rule of law is

not precluded from exercising its jurisdiction solely because such exercise requires a person to engage in conduct subjecting him to liability under the law of another state having jurisdiction with respect to that conduct").

35.     Moreover, protests on the basis of theoretical violations of foreign banking laws are particularly unpersuasive where, as here, the Court has issued a protective order. *Ssangyong*, 2004 WL at *12-13 (ordering compliance with a subpoena over objections concerning violating Hong Kong banking secrecy laws where production would be subject to "certain confidentiality provisions" where there was a protective order in place).

36.     Clearstream has failed to articulate how the subpoenaed documents conflict with unidentified Luxembourg banking laws and the Amended Stipulated Protective Order is more than sufficient to address Clearstream's concerns, real or imagined. *In re Iraq Telecom Limited*, 18-MC-458 (LGS) (OTW), WL 605931, at *1 (S.D.N.Y. Feb. 7, 2020) (ruling that when subpoenaed party failed to show how Lebanese banking secrecy laws would be violated by the production of the subpoenaed documents, the subpoenaed party was not entitled to a more robust protective order).

37.     In light of the Amended Stipulated Protective Order, it is Clearstream's obligation to demonstrate that production in response to the Publish Shareholder Subpoena would still create a conflict with Luxembourg banking secrecy laws. *In re Commodity Exchange, Inc. Gold Futures and Options Trading Litigation*, 14-MD-2458 (VEC), 2019 WL 1988525, *4 (S.D.N.Y. May 6, 2019) (denying subpoenaed parties' motion for a protective order where "Defendants have failed to show that the disclosure of materials from England and Wales would violate foreign law. . . . nor do they show that disclosure subject to a protective order would be inconsistent with that duty"). Clearstream has not made such a showing. Instead,

when presented with a copy of the Amended Stipulated Protective Order in this Action (*see* July 17, 2020 e-mail, attached as Exhibit J), it responded with utter silence, much less any objection that producing the subpoenaed materials would, or could, still run afoul of Luxembourg law. Accordingly, Clearstream's generic reference to Luxembourg law does not excuse it from complying with the Public Shareholder Subpoena.

38.     ***Third***, Clearstream's argument that service was improper because it was not made in accordance with the Hague Convention is equally unavailing. The Supreme Court has ruled that "[w]here service on a domestic agent is valid and complete under both state law and [the] Due Process Clause, our inquiry ends and the [Hague Service] Convention has no further implications." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988); *see also*, *Gucci America, Inc. v. Weixing Li*, 135 F.Supp.3d 87, 93 (S.D.N.Y. 2015) ("Here, it is undisputed that [non-party Bank of China] was properly served at its New York branch").

39.     That is the case here. As set forth above, service on Clearstream's New York branch was appropriate, as Clearstream transacts business in this district through the branch. Thus, the Creditors' Committee is not required to follow the onerous and time-consuming Hague Service Convention process when proper service can, and has, been made in New York. *Rosenberg v. Lashkar-e-Taiba*, 10-CV-5381 (DLI) (CLP), 2014 WL 12834840, at *8 (E.D.N.Y. Aug. 1, 2014) (noting that the Hague Service "Convention applies to all civil cases where a judicial or extrajudicial document is transmitted **for service in a foreign country**") (emphasis added).

40.     In short, given that Clearstream has acknowledged that service was actually made on its New York representative, and the documents located overseas are still within Clearstream's control, service through the Hague Service Convention is legally superfluous. *Volkswagenwerk*,

486 U.S. at 707 ("The only transmittal to which the [Hague Service] Convention applies is a transmittal abroad that is required as a necessary part of service").   Consequently for this matter's purpose, the Hague Service Convention does not apply, and service was proper of the Public Shareholder Subpoena on Clearstream's New York entity.

## **<u>CONCLUSION</u>**

For the reasons set forth above, the Creditors' Committee respectfully requests that the Court enter an order compelling BMO Nesbitt, HSBC, LGIM, Jefferies, PNC, and Clearstream to produce the documents requested in the Creditors' Committee's Public Shareholder Subpoenas no later than October 9, 2020.

[*Reminder of page left blank intentionally*]

Dated: New York, New York
     September 14, 2020

MORITT HOCK & HAMROFF LLP

By:    /s/ *James P. Chou*
     James P. Chou
     Ted A. Berkowitz
     Danielle J. Marlow
1407 Broadway - 39th Floor
New York, New York, 10018
Telephone: (212) 239-2000
Facsimile: (212) 239-7277

*Special Conflicts Counsel to the*
*Official Committee of Unsecured*
*Creditors of Sears Holdings*
*Corporation, et al.*