Hearing Date and Time: October 15, 2020 10:00 a.m. (Eastern Time)
Objection Date and Time:  October 8, 2020 4:00 p.m. (Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett Fail
Jared R. Friedmann
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                           :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **SEARS HOLDINGS CORPORATION,** *et al.*, | : | **Case No. 18-23538 (RDD)** |
| | : | |
| **Debtors.**[1] | : | **(Jointly Administered)** |
| | : | |

------------------------------------------------------------------x

## NOTICE OF DEBTORS' MOTION PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 9019(a) FOR ENTRY OF AN ORDER APPROVING SECOND APA SETTLEMENT AGREEMENT WITH TRANSFORM HOLDCO LLC

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is c/o M-III Partners, L.P., 130 West 42nd St., 17th Floor, New York, NY 10036.

**PLEASE TAKE NOTICE** that Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), by and through their undersigned counsel, filed the annexed motion (the "**Motion**") for entry of an order (the "**Order**") pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for approval of a settlement and compromise among the Debtors and Transform Holdco LLC ("**Transform**").

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 118, 300 Quarropas Street, White Plains, New York, 10601-4140 (the "**Bankruptcy Court**") on **October 15, 2020 at 10:00 a.m. (Eastern Time)** (the "**Hearing**"), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the Motion (the "**Objections**") shall (i) be in writing; (ii) state the name and address of the objecting party and nature of the claim or interest of such party; (iii) state with particularity the legal and factual bases of such objection; (iv) conform to the Bankruptcy Rules and the Local Bankruptcy Rules; (v) be filed with the Bankruptcy Court, together with proof of service, electronically, in accordance with General Order M-399 (available at www.nysb.uscourts.gov) by registered users of the Court's Electronic Case Filing system, and by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable; and (vi) be served in accordance with the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 (ECF No. 405), so as to be filed

and received no later than **October 8, 2020 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

   **PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

Dated:   September 17, 2020
     New York, New York

       ***/s/ Jacqueline Marcus***
       WEIL, GOTSHAL & MANGES LLP
       767 Fifth Avenue
       New York, New York  10153
       Telephone:  (212) 310-8000
       Facsimile:  (212) 310-8007
       Ray C. Schrock, P.C.
       Jacqueline Marcus
       Garrett Fail
       Jared R. Friedmann
       Sunny Singh

       *Attorneys for Debtors*
       *and Debtors in Possession*

Hearing Date and Time: October 15, 2020 10:00 a.m. (Eastern Time)
Objection Date and Time:  October 8, 2020 4:00 p.m. (Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett Fail
Jared R. Friedmann
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                          :
**In re**                                 :          **Chapter 11**
                                          :
**SEARS HOLDINGS CORPORATION**, *et al.*, :          **Case No. 18-23538 (RDD)**
                                          :
              **Debtors.[1]**             :          **(Jointly Administered)**
                                          :
------------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT TO FEDERAL RULES OF BANKRUPTCY**
**PROCEDURE 9019(a) FOR ENTRY OF AN ORDER APPROVING**
**SECOND APA SETTLEMENT AGREEMENT WITH TRANSFORM HOLDCO LLC**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is c/o M-III Partners, L.P., 130 West 42nd St., 17th Floor, New York, NY 10036.

## TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ...................................................................................1

II.     JURISDICTION AND VENUE .................................................................................3

III.    BACKGROUND .......................................................................................................4

      A.     The Chapter 11 Cases ..................................................................................4

      B.     The Asset Purchase Agreement, the Sale Order, and the Sale Transaction ............4

      C.     The APA Litigation and First APA Settlement Agreement ..................................5

IV.     THE SECOND APA SETTLEMENT AGREEMENT ....................................................6

      A.     The Settlement Negotiations ...............................................................................6

      B.     The Principal Terms of the Second APA Settlement Agreement ............................9

V.      RELIEF REQUESTED SHOULD BE GRANTED .......................................................11

      A.     Basis for Relief ..................................................................................................11

      B.     The Second APA Settlement Agreement Falls Well Within the Range of
           Reasonableness ..................................................................................................13

VI.     WAIVER OF BANKRUPTCY RULE 6004(h) REQUIREMENT IS
      WARRANTED .......................................................................................................16

VII.    NOTICE .................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Line Pilots Ass'n, Int'l. v. Am. Nat'l Bank & Tr. Co. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414 (S.D.N.Y. 1993), *aff'd sub nom. Sobchak v. Am. Nat'l Bank & Tr. Co. (In re Ionosphere Clubs, Inc.)*, 17 F.3d 600 (2d Cir. 1994) ..........................11

*Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599 (2d Cir. 1983)...................................................................................12

*Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567 (5th Cir. 1960) ..................................................................................12

*In re Hibbard Brown & Co.*, 217 B.R. 41 (Bankr. S.D.N.Y. 1998) ....................................................................12

*Nellis v. Shugrue*, 165 B.R. 115 (S.D.N.Y. 1994)....................................................................................12

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972)..............................................................................12

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414 (1968)...........................................................................................11, 12

*In re Purofied Down Prods. Corp.*, 150 B.R. 519 (S.D.N.Y. 1993)...............................................................................12, 13

*Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 134 B.R. 499 (Bankr. S.D.N.Y. 1991) .......................................................................11, 12, 13

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), by and through their undersigned counsel, hereby file this motion (the "**Motion**") pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for approval of the Settlement Agreement, dated as of September 17, 2020, attached hereto as Exhibit 1 (the "**Second APA Settlement Agreement**,"), between the Debtors and Transform Holdco LLC ("**Transform**") (together, the "**Parties**").[1]

## I.    PRELIMINARY STATEMENT

1.    The Debtors seek the Court's approval of the Second APA Settlement Agreement so they can resolve, on a global basis, several outstanding APA-related disputes between and among the Parties that will allow for, among other things, (i) the possibility of significant recoveries to the Debtors' estates for the benefit of the estates' creditors; (ii) the full and final resolution between and among the Parties of several complicated APA-related disputes that the Parties, their counsel, and their advisors have been negotiating for several months; and (iii) the release of any claims arising out of or related to those disputes, thus avoiding the burdens, expenses, and risks associated with potential additional protracted and contentious APA litigation.

2.    Among other benefits, the Second APA Settlement Agreement provides for (i) Transform's reimbursement of the Debtors for approximately $358,000 in taxes paid (or soon to be paid) by the Debtors in connection with certain assets transferred to Transform under the APA; (ii) Transform's reimbursement of the Debtors for approximately $125,000 in business

---

[1] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the *Debtors' Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019(a) for Entry of an Order Approving Settlement Agreement with Transform HoldCo LLC* (ECF No. 6327).

personal property taxes assessed by various taxing authorities for tax year 2019 on business personal property relating to rejected Leases for the applicable occupancy period specified in the APA; (iii) Transform's reimbursement of the Debtors for approximately $240,000 in employment-related costs associated employees located in Sears's Israel offices (the "**SHC-Israel Employees**"); (iv) Transform's relinquishment to the Debtors of any right, title, or interest in, to, or under approximately $1.9 million in reimbursement funds owed by Seritage SRC Finance LLC and Seritage KMC Finance LLC (together, "**Seritage**") to the Debtors under that certain Master Lease dated as of July 7, 2015 (as amended, the "**Seritage Master Lease**"); and (v) Transform's relinquishment to the Debtors of any right, title, or interest in, to, or under several litigation and insurance claims worth millions of dollars.  Significantly, the Debtors' recovery under the Second APA Settlement Agreement will allow the Debtors to remunerate Transform for services it rendered to the Debtors under that certain Services Agreement, dated as of February 11, 2019 (as may be amended, restated, supplemented, or modified from time to time, the "**Transition Services Agreement**") through May 31, 2020, without having to draw upon the Debtors' bank accounts for even a single dollar.  Finally, as discussed above, the Second APA Settlement Agreement brings to a close months of hard-fought, good-faith negotiations concerning various APA-related disputes, along with the expenditure of time and resources that corresponded with those negotiations, and avoids the prospect of future costly APA-related litigation.

3.     The Second APA Settlement Agreement represents sound business judgment exercised by the Debtors acting through their Chief Restructuring Officer and subject to the supervision of the Restructuring Committee.  Among other considerations, the Restructuring Committee assessed the risks associated with additional APA litigation, including potential delays and the ability to collect on any judgment that might be obtained even if the Debtors were

successful on their potential claims. In light of all of these considerations, the Restructuring

Committee has concluded that the Second APA Settlement Agreement is in the best interests of

the Debtors' estates and their creditors.

4.      The Second APA Settlement Agreement has also been independently

reviewed and approved by the Official Committee of Unsecured Creditors (the "**Creditors'**

**Committee**"), which supports the Debtors' entry into the Second APA Settlement Agreement and

the relief requested in this Motion.

5.      Accordingly, and for all of the reasons set forth below, the Second APA

Settlement Agreement is fair and equitable, reasonable, and in the best interests of the Debtors'

estates. The Debtors respectfully request that the Court grant the relief requested in this Motion

and approve the Second APA Settlement Agreement.

## II.      JURISDICTION AND VENUE

6.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012

(Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      Further, the Court has jurisdiction to consider this matter pursuant to the

*Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the*

*Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and*

*Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts,*

*and Leases in Connection Therewith, and (IV) Granting Related Relief* (ECF No. 2507) (the "**Sale**

**Order**"), which provides, in pertinent part, that the Court:

> shall retain exclusive jurisdiction to, among other things, interpret, enforce and
> implement the terms and provisions of [the] Sale Order and the Asset Purchase
> Agreement, all amendments thereto, any waivers and consents thereunder (and of

> each of the agreements executed in connection therewith), to adjudicate disputes related to [the] Sale Order or the Asset Purchase Agreement (and such other related agreements, documents or other instruments) and to enforce the injunctions set forth herein.

Sale Order ¶ 58.

## III.    BACKGROUND

### A.    The Chapter 11 Cases

8.      Beginning on October 15, 2018 (the "**Commencement Date**") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.      On October 24, 2018, the United States Trustee for Region 2 appointed the Creditors' Committee.  No trustee or examiner has been appointed in these chapter 11 cases.

10.     The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules.

11.     On October 15, 2019, the Court entered the *Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors and (II) Granting Related Relief* (ECF No. 5370) (the "**Confirmation Order**").[2]

### B.    The Asset Purchase Agreement, the Sale Order, and the Sale Transaction

12.     On January 17, 2019, the Debtors entered into an Asset Purchase Agreement with Transform—the company that ESL Investments, Inc. ("**ESL**") formed to purchase substantially all of the Debtors' assets and operations.  *See Asset Purchase Agreement dated as of*

---

[2] The Confirmation Order approved the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors* (ECF No. 4476) (the "**Plan**").

*January 17, 2019 by and among Transform Holdco LLC, Sears Holdings Corporation and Its*

*Subsidiaries Party Hereto* (ECF No. 1730) (as amended on February 11, 2019, and as amended,

restated, supplemented, or modified from time to time, the "**APA**").

13.     On February 8, 2019, after a hearing on the Debtors' motion for entry of an

order pursuant to sections 105, 363, and 365 of the Bankruptcy Code approving the sale of the

Debtors' assets (the "**Sale Hearing**"), the Bankruptcy Court entered the Sale Order, which

approved the sale of substantially all of the Debtors' assets and operations to Transform (the "**Sale**

**Transaction**").  The Sale Transaction closed on February 11, 2019 at 12:01 a.m. Eastern Time

(the "**Closing**").  APA § 4.1.

C.    **The APA Litigation and First APA Settlement Agreement**

14.     The Parties began litigating disputes related to the APA shortly after the

Sale Transaction closed.  They litigated that first round of complex APA-related disputes for

almost a full year and, in the process, filed several lengthy motions, appeared for several hours-

long hearings before the Bankruptcy Court, transmitted voluminous correspondence, and engaged

in numerous calls and meetings (the "**APA Litigation**").  The APA Litigation consumed

substantial time and resources of the Parties, their counsel, their advisors, and the Bankruptcy

Court.

15.     Finally, on January 10, 2020, the Parties entered into that certain Settlement

Agreement (the **"First APA Settlement Agreement"**) pursuant to which the parties agreed,

among other things, to fully and finally resolve those disputes comprising the APA Litigation that

had not already been resolved by court order, ruling, or interim settlement.  The Debtors moved

the Court for entry of an order pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy

Procedure approving the First APA Settlement Agreement (Docket No. 6327) (the "**First Motion**

for Approval") and, after notice and a hearing, the Court entered an order granting the relief

requested (ECF No. 6413) (the "**Order Approving the First APA Settlement Agreement**").

## IV.    THE SECOND APA SETTLEMENT AGREEMENT

### A.    The Settlement Negotiations

16.    Soon after the Court approved the First APA Settlement Agreement, the

Parties identified and began discussing a second series of disputes related to the construction and

interpretation of the APA.  Griffith Decl. ¶ 4.  By way of example, the Parties disputed the

following issues under the APA:

a.    the ownership of the rights, title, or interest in, to, or under the following litigation claims: (i) *Sears, Roebuck & Co. v. Vornado Realty Trust, et al.*, Index No. 156171/2014 in the Supreme Court of the State of New York, County of New York (the "**Vornado Claims**") and (ii) *Sears, Roebuck & Co. v. Altaquip, LLC*, Case No. 2015-03145-BLS1 in the Superior Court for the Commonwealth of Massachusetts, Suffolk County (the "**Altaquip Claims**");

b.    whether Transform was obligated to pay (i) the gains tax (the "**India Gains Tax**") that the India taxing authority would impose on or in connection with the Debtors' transfer to Transform of the Debtors' equity in their India subsidiaries (the "**Indian Acquired Foreign Assets**") pursuant to Section 2.13 of the APA; and (ii) the per month interest charge that the India taxing authority may impose in connection with the India Gains tax that has been running since the consideration for the India Acquired Foreign Assets was deemed paid (the "**Indian Interest Amount**");

c.    whether Transform was obligated to pay the gains tax (the "**Mexican Gains Tax**") that the Mexican taxing authority imposed on or in connection with the Debtors' transfer to Transform of the Debtors' equity in the Mexican entities (the "**Mexican Acquired Foreign Assets**") pursuant to Section 2.13 of the APA;

d.    the ownership of the right, title, and interest in, to, or under the dividend declared on April 26, 2019 by Sears Operadora México, S.A. de C.V. (the "**Mexico Dividend**");

e.    the ownership of the right, title, and interest in, to, or under $502,270 in environmental remediation receivables in Sears Holdings account

11115 SHC – Seritage Receivables (the "**Seritage Environmental Receivables**");

f.     the ownership of the right, title, and interest in, to, or under certain reimbursement funds (the "**Seritage Reimbursement Funds**") owed by Seritage for repair work in 2016 to 2018 that the Debtors performed on certain real property that the Debtors leased from Seritage pursuant to the Seritage Master Lease;

g.     the ownership of certain rent and related payments made in March, April, and May 2019 by the subtenant of the Debtors' Vernon, California property (Store Number 68738) (the "**Vernon Warehouse Subtenant Rent**");

h.     whether the Debtors are obligated, under that certain letter agreement between the Parties, dated as of August 12, 2019 (as amended, the "**August 2019 Letter Agreement**"), to pay $7,100 to obtain tax clearance and a good standing certificate for one of the withdrawals contemplated by the August 2019 Letter Agreement (the "**Tax Clearance Fee**");

i.     the amount the Debtors' were obligated to pay Transform for services rendered by Transform to the Debtors (the "**Buyer Transition Services**") pursuant to the Transition Services Agreement from Closing to  May 31, 2020 (the "**Invoiced Date**");

j.     the ownership of the rights, title, and interest in, to, or under the litigation and/or insurance claims set forth in Schedule 1 attached to the Second APA Settlement Agreement (the "**Litigation and Insurance Claims**");

k.     whether the Debtors were obligated to assist Transform's effort to secure from KCD IP, LLC any trademarks that were not transferred or conveyed to Transform when it foreclosed on the KCD notes collateral, including but not limited to U.S. Trademark Application Nos. (i) 87/933656 (the Ovation swirl design), (ii) 87/707476 (Ovation (stylized with design)), (iii) 86/142276 (Powerwave), (iv) 85/002271 (360° Powerwash), and (v) 87/847814 (We Put Your Life in Drive) (the "**Remaining KCD Intellectual Property**");

l.     whether the Debtors were obligated to reimburse Transform for legal fees paid to professionals acting on behalf of the Debtors out of an account maintained by Sedgwick Claims Management Services, Inc. (the "**Sedgwick Account**") that was and had been funded by two Bank of America bank accounts that respectively belonged to Debtor entities Sears Roebuck & Co. (4451198981) and Kmart Corp. (4427082102) but

that had been transferred to Transform at the Closing (the "**Sedgwick Fees**");

m.     whether Transform was obligated to reimburse the Debtors for costs (including salaries, benefits, and other expenses) related to the SHC-Israel Employees from the Closing to April 30, 2020 (the "**SHC-Israel Employee Costs**");

n.     whether Transform was obligated to reimburse the Debtors for business personal property taxes assessed by various taxing authorities for tax year 2019 on business personal property relating to rejected Leases for the applicable occupancy period specified in the APA (the "**2019 BPP Taxes**"), specifically (i) with respect to GOB Leased Stores, the period commencing on the first calendar day following the GOB Period for such GOB Store and ending at the expiration of the Designation Rights Period for such GOB Store and (ii) with respect to Operating Leased Properties, the period commencing on the Closing and ending in the expiration of the Designation Rights Period for such Operating Leased Property;

o.     a mechanism for the Debtors to confirm that Transform purchased the Specified Receivables (as defined in the APA) to obligors who refuse to pay those Specified Receivables to Transform absent a letter with such confirmation from the Debtors; and

p.     Transform's obligation to pay various vendors (the "**Transition Vendors**") amounts due and owing for services the Transition Vendors rendered to Transform pursuant to the Transition Services Agreement (the "**Transition Vendor Services Amounts**"), which the Transition Vendors attempted to recover from the Debtors by means of the Administrative Expense Claims Consent Program (as that term is defined in the Confirmation Order). *Id.* ¶ 7.

17.     Over the course of several months, the Parties, their counsel, and their advisors participated in numerous teleconferences and Zoom meetings and exchanged correspondence and draft proposals in an effort to resolve the APA-related disputes (as defined in the Second APA Settlement Agreement, the "**Additional APA Disputes**"). *Id.* ¶ 6. After several rounds of negotiation, the Parties arrived at an agreement concerning the principal terms of a settlement of the Additional APA Disputes. *Id.* ¶ 7. Those terms, described below, are reflected in the Second APA Settlement Agreement. *See generally* Ex. 1. The Debtors and their advisors

received the approval of the Restructuring Committee of the principal terms of the Second APA

Settlement Agreement on August 5, 2020 and, on September 11, 2020, received approval from the

Creditors' Committee.  Griffith Decl. ¶ 8.

**B.**    **The Principal Terms of the Second APA Settlement Agreement[3]**

- The Altaquip and Vornado Claims will remain with the Debtors and Transform personnel will provide legal assistance to the Debtors in connection with such litigation at a rate of $400/hour.  Transform's post-Closing costs ($63,072 related to the Altaquip Claims and $132,313 related to the Vornado Claims) will be reimbursed as follows:

  o    Altaquip Claims - If attorneys' fees are recovered, Transform will receive the first $63,072 of attorneys' fees; if attorneys' fees are not recovered, Transform will receive $63,072 from the recovery after the Debtors receive the first $500,000 of proceeds; and

  o    Vornado Claims - The Debtors will pay Transform $132,313 from the recovery after the Debtors receive the first $250,000.  Ex. 1 at 2.

- Transform will pay the Indian Gains Tax and will reimburse the Debtors for fifty percent (50%) of the Mexican Gains Tax.  The Debtors will use commercially reasonable efforts to transfer the India Acquired Foreign Assets to Transform within thirty (30) days following the Effective Date. Ex. 1 at 3.

- The Debtors will relinquish their right, title, and interest in the Mexico Dividend to Transform.  Ex. 1 at 4.

- The Parties acknowledge and agree that the Seritage Environmental Receivables are Specified Receivables acquired by Transform and they are entitled to recover them from Seritage.  Ex. 1 at 5.

- Transform will not seek payment from Seritage on account of approximately $1.9 million in Seritage Reimbursement Funds.  Transform will execute a release relinquishing any right, title, and interest in $1.9 million in Seritage Reimbursement Funds to the Debtors.  Ex. 1 at 6.

- The Debtors will relinquish their claim to the Vernon Warehouse Subtenant Rent, which was addressed in the First APA Settlement.

---

[3] The following is a summary of the salient terms of the Second APA Settlement Agreement and is not intended to modify or supersede any of the terms of the Second APA Settlement Agreement.

- Transform will pay the Tax Clearance Fee and Transform will extend the deadline for the estate to remove "Sears" and other related terms from entity and other business names up to and until sixty (60) days following the date on which the Plan becomes effective or, conversion or dismissal of the case, if earlier.  Ex. 1 at 7.

- The Parties agree that the Debtors owe Transform approximately $1.036 million for services rendered by Transform through May 31, 2020 pursuant to the Transition Services Agreement and have negotiated with Transform reasonable fees for go-forward services, as well as a mechanism for the invoicing and payment of those services, set forth in Schedule 2 attached to the Second APA Settlement Agreement.  Ex. 1 at 9.

- The Litigation and Insurance Claims listed in Category 1 of Schedule 1 belong to the Debtors under the APA, and Transform releases, waives, and relinquishes to the Debtors any and all right, title, and interest, in, to, or under each Litigation and Insurance Claim in Category 1.  The Litigation and Insurance Claims listed in Category 2 of Schedule 1 belong to the Transform and the Debtors releases, waives, and relinquishes to Transform any and all right, title, and interest, in, to, or under each Litigation and Insurance Claim in Category 2.  The Debtors shall pay Transform forty percent (40%) of the net recovered proceeds from the Bayamon/Panama City Claims, and the Debtors are entitled to reduce the $1.036 million they owe Transform for Buyer Transition Services.   Transform shall be reimbursed by the Debtors for fees at a rate of $400/hour for legal assistance.  Ex. 1 at 10.

- The Debtors will not object to or interfere with any effort by Transform to secure from KCD IP, LLC certain KCD intellectual property.  In addition, the Parties will finalize the distribution of the remaining 200 Class B Preferred Units of Transform Holdco LLC comprising the Securities Consideration (as defined in the APA).  Ex. 1 at 11.

- The Debtors will reimburse Transform for $61,000 in Sedgwick Fees paid after execution of the First APA Settlement Agreement.  Ex. 1 at 12.

- Transform will reimburse the Debtors for $240,000 in SHC-Israel Employee Costs.  Ex. 1 at 13.

- Transform will reimburse the Debtors for $125,000 in 2019 BPP Taxes.  Ex. 1 at 14.

- Transform will pay certain, specified transition vendors amounts owed to each vendor for services provided under the Transition Services Agreement, as negotiated and agreed upon by Transform and each vendor.  Ex. 1 at 16.

- The Debtors will execute a letter relinquishing to Transform any right, title, and interest in, to, or under the Specified Receivables—i.e., the accounts receivable set forth on Schedule 1.1(k) of the APA—delivered by the Debtors to Transform on the Closing, including but not limited to any specified Frigidaire, L'Oréal, or Sealy receivables set forth on Schedule 1.1(k) of the APA. Ex. 1 at 15.

## V.    RELIEF REQUESTED SHOULD BE GRANTED

18.    The Debtors have determined, in consultation with the Restructuring Committee, their advisors, and the Creditors' Committee, that the Second APA Settlement Agreement is fair and equitable, reasonable, and in the best interests of the Debtors' estates.  By this Motion, the Debtors request approval of the Second APA Settlement Agreement pursuant to Rule 9019(a).

### A.    Basis for Relief

19.    Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement."  Bankruptcy Rule 9019(a) "empowers the Bankruptcy Court to approve compromises and settlements if they are in the best interests of the estate[s]."  *Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).  Because the terms of the Second APA Settlement Agreement are in the best interests of the Debtors' estates, the Court is authorized to approve the proposed settlement between the Parties on the terms set forth in the Second APA Settlement Agreement.

20.    In determining whether to approve a proposed settlement pursuant to Bankruptcy Rule 9019(a), a court must find that the proposed settlement is fair and equitable, reasonable, and in the best interests of the debtor's estates and creditors.  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Air Line Pilots Ass'n, Int'l. v. Am. Nat'l Bank & Tr. Co. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 426

(S.D.N.Y. 1993), *aff'd sub nom. Sobchak v. Am. Nat'l Bank & Tr. Co. (In re Ionosphere Clubs, Inc.)*, 17 F.3d 600 (2d Cir. 1994). A decision to approve a particular compromise or settlement is within the sound discretion of the bankruptcy court. *Drexel Burnham*, 134 B.R. at 505. It is appropriate for the court to consider the opinions of the debtor in possession that a settlement is fair and equitable. *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994). In addition, the bankruptcy court should exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co.,* 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); *see also Shugrue*, 165 B.R. at 123 ("[T]he general rule [is] that settlements are favored and, in fact, encouraged by the approval process outlined above.").

21.    In determining whether to approve a proposed settlement, a bankruptcy court need not decide the numerous issues of law and fact raised by the settlement, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)); *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) (in making the determination of reasonableness, the court need not conduct a "mini-trial" on the merits). "All that [the proponent of the settlement] must do is establish [that] it is prudent to eliminate the risks of litigation to achieve specific certainty though admittedly [the settlement] might be considerably less (or more) than were the case fought to the bitter end." *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 573 (5th Cir. 1960) (citation omitted).

22.    Relying on the guiding language of *TMT Trailer Ferry*, courts in this Circuit have set forth the following factors to be considered in evaluating the reasonableness of settlement:

    a.    the probability of success in litigation, with due consideration for the uncertainty in fact and law;

b.       the difficulties of collecting any litigated judgment;

c.       the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay;

d.       the proportion of creditors who do not object to, or who affirmatively support, the proposed settlement;

e.       the competence and experience of counsel who support the settlement;

f.       the relative benefits to be received by members of any affected class;

g.       the extent to which the settlement is truly the product of arm's-length bargaining and not the product of fraud or collusion; and

h.       the debtor's informed judgment that the settlement is fair and reasonable.

*See Purofied Down Prods.*, 150 B.R. at 522; *Drexel Burnham*, 134 B.R. at 506.

## B.    The Second APA Settlement Agreement Falls Well Within the Range of Reasonableness

23.      In this case, weighing the reasonableness factors for purposes of Bankruptcy Rule 9019, the Debtors, acting through their independent Restructuring Committee and their advisors and with the support of the Creditors' Committee, have concluded that the Second APA Settlement Agreement is fair and equitable, reasonable, and in the best interests of the Debtors' estates and, thus, should be approved.  *See* Griffith Decl. ¶ 8.

24.      ***First***, under the Second APA Settlement Agreement, the Debtors will recover approximately $2.6 million in reimbursements for taxes, casualty payments, and employee costs ($358,000 related to the Mexican Gains Tax, $125,000 related to the 2019 BPP Taxes, $1.9 million related to the Seritage Reimbursement Funds, and $240,000 related to the SHC-Israel Employee Costs).  *Id.* ¶ 9.  The Debtors will also secure their right, title, and interest in, to, and under several litigation and insurance claims (the Litigation and Insurance Claims, Altaquip Claims, and Vornado Claims) worth millions of dollars.  And while the Debtors have agreed in the Second APA Settlement Agreement to pay Transform (i) approximately $1 million for services

rendered by Transform under the Transition Services Agreement and (ii) $61,000 in Sedgwick

Fees, the Debtors' cash recovery in connection with the Second APA Settlement Agreement allows

the Debtors to make those payments without ever having to draw upon their own bank accounts,

thereby preserving funds for eventual distribution to the estates' creditors.

25.    ***Second***, should the Parties ultimately have to litigate the Additional APA

Disputes, such litigation would likely be expensive and protracted and would divert the Debtors'

and their advisors' resources and attention away from implementing an efficient wind-down of the

Debtors' estates and prosecuting the valuable Preserved Causes of Action for the benefit of the

Debtors' creditors.  *Id.* at ¶ 10.  The protracted and contentious course of the APA Litigation

presages the long, time-consuming, and contentious path ahead if the Parties are not able to settle

the Additional APA Disputes.   Griffith Decl. ¶ 10.   Because the Second APA Settlement

Agreement resolves, fully and finally, the Additional APA Disputes, it eliminates any burdens and

expenses that would be associated with the litigation of those disputes before the Court and allows

the Debtors and their advisors to redirect their resources and attention to winding down the

Debtors' estates and progressing toward the Effective Date.  *Id.*

26.    ***Third***, given the complexity of the Additional APA Disputes, the Debtors

cannot be certain of the outcome of any litigation of claims arising out of the Additional APA

Disputes.  *Id.* at ¶ 11.  Although the Debtors submit that that their interpretation of the APA is

correct, Transform disagrees with their interpretation and the Debtors have no assurance that the

Bankruptcy Court will agree with the Debtors' interpretation.  *Id.*  Accordingly, the Second APA

Settlement Agreement's value is well within the range of reasonableness.  *Id.*  Moreover, given

the uncertainties inherent in any litigation, by fully and finally resolving the Additional APA

Disputes, the Second APA Settlement Agreement eliminates the risk of loss associated with

14

potential litigation of those disputes, and importantly eliminates the costs associated with litigating each individual issue, and guarantees a recovery for the Debtors' estates now. *Id.*

27.     ***Fourth***, the proposed settlement is the product of significant effort—over the course of many months—to resolve the Debtors' and Transform's outstanding disputes. *Id.* at ¶ 12. If approved, the Second APA Settlement Agreement would, again, fully and finally resolve these disputes and any claims arising from them, permitting the Debtors, the Restructuring Committee, the Creditors' Committee, and their advisors to focus resources and attention on other claims and claimants and move toward consummation of the Plan. Griffith Decl. ¶ 12.

28.     ***Fifth***, the Parties are represented by sophisticated and experienced professionals—highly regarded law firms and financial advisors with significant restructuring, litigation, and other relevant experience. *Id.* at ¶ 13. The Debtors' professionals, for their part, have been analyzing, discussing, and litigating these APA-related issues with Transform and its professionals for more than six months and fully understand the difficulties of successfully concluding APA-related litigation (having done so once before). *Id.* Accordingly, the Debtors' professionals fully understand the potential consequences to creditors of the estates if the Second APA Settlement Agreement is not consummated and have recommended that the Debtors enter into the Second APA Settlement Agreement. *Id.*

29.     ***Sixth***, the releases are appropriate and narrowly tailored in scope to the Additional APA Disputes. *Id.* at ¶ 14. The release provision does not affect, and expressly carves out, all other disputes between the Parties, including the estates' adversary proceeding against ESL and certain other parties (Adv. Pro. No. 19-08250-rdd). *Id.*

30.     ***Finally***, the Second APA Settlement Agreement is the product of arm's-length negotiations between the Debtors and Transform, as well as the reasoned judgment of the experienced Restructuring Committee and the Creditors' Committee. *Id.* at ¶ 15.

31.     Accordingly, the Debtors submit that the settlement and compromise embodied in the Second APA Settlement Agreement is appropriate in light of the relevant factors, is fair and equitable, and should be approved.

## VI.     WAIVER OF BANKRUPTCY RULE 6004(h) REQUIREMENT IS WARRANTED

32.     To implement the foregoing successfully, the Debtors request that the Court waive the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  As explained above, the relief requested herein is necessary for the Debtors to expeditiously consummate the Second APA Settlement Agreement and realize the benefits thereunder.  Accordingly, ample cause exists to justify granting a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h).

## VII.    NOTICE

33.     Notice of this Motion will be provided in accordance with the procedures set forth in the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 (ECF No. 405) (the "**Amended Case Management Order**"). Notice has also been provided to Transform.  The Debtors respectfully submit that no further notice is required.

34.     No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request that the Court enter the Proposed

Order attached hereto as Exhibit 2, approving the Second APA Settlement Agreement and granting

such additional and further relief as the Court deems just and appropriate.


Dated:  September 17, 2020
        New York, New York

                                    */s/ Jacqueline Marcus*_____
                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York  10153
                                    Telephone:  (212) 310-8000
                                    Facsimile:  (212) 310-8007
                                    Ray C. Schrock, P.C.
                                    Jacqueline Marcus
                                    Garrett Fail
                                    Jared R. Friedmann
                                    Sunny Singh

                                    *Attorneys for Debtors*
                                    *and Debtors in Possession*

**Exhibit 1**

**Second APA Settlement Agreement**

*EXECUTION VERSION*

## SETTLEMENT AGREEMENT

Each of Transform Holdco LLC ("Transform"), Sears Holdings Corporation ("Sears Holdings") and each of the undersigned direct and indirect subsidiaries of Sears Holdings (collectively, with Sears Holdings, the "Debtors")[1] hereby enters into this Settlement Agreement (the "Agreement") on September 17, 2020 (the "Execution Date"). In this Agreement, the term "Parties" refers to Transform, on the one hand, and the Debtors, on the other hand.

WHEREAS, on October 15, 2018, each of the Debtors filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), commencing a process to sell all or substantially all of the Debtors' businesses and assets;

WHEREAS, on February 8, 2019, the Bankruptcy Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Leases in Connection Therewith, and (IV) Granting Related Relief* [Docket No. 2507] (the "Sale Order"), approving the sale of substantially all of the assets of the Debtors to Transform (the "Sale Transaction") pursuant to that certain Asset Purchase Agreement, dated as of January 17, 2019, by and among Transform and the Debtors party thereto (as it has and may be amended, modified or otherwise waived, the "APA");

WHEREAS, the Sale Transaction closed on February 11, 2019 at 12:01 a.m. Eastern Time (the "Closing");

WHEREAS, on January 10, 2020, the Parties entered into that certain Settlement Agreement (the "First APA Settlement Agreement") pursuant to which the Parties agreed, among other things, to fully and finally resolve various disputes arising under and related to the APA (the "APA Claims," as defined in the First APA Settlement Agreement);

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).

*EXECUTION VERSION*

WHEREAS, upon the Debtors' motion for entry of an order pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure approving the First APA Settlement Agreement [Docket No. 6327] (the "First Motion for Approval"), on January 28, 2020, the Court entered an order granting the relief requested in the First Motion for Approval [Docket No. 6413] (the "Order Approving the First APA Settlement Agreement");

WHEREAS, following entry of the Order Approving the First APA Settlement Agreement, the Parties have, with the assistance of counsel, engaged in good-faith, arm's-length negotiations concerning the ownership, under the APA, of the rights, title, or interest in, to, or under the following litigations (i) *Sears, Roebuck & Co. v. Vornado Realty Trust, et al.*, Index No. 156171/2014 in the Supreme Court of the State of New York, County of New York (the "Vornado Claims") and (ii) *Sears, Roebuck & Co. v. Altaquip, LLC*, Case No. 2015-03145-BLS1 in the Superior Court for the Commonwealth of Massachusetts, Suffolk County (the "Altaquip Claims") (the Parties' disputes relating to the ownership of the Vornado Claims and the Altaquip Claims, and any other matters involving the Vornado Claims and the Altaquip Claims that could have been asserted by a Party as of the date hereof, the "Vornado and Altaquip Claims Dispute");

WHEREAS, following entry of the Order Approving the First APA Settlement Agreement, the Parties have, with the assistance of counsel, engaged in good-faith, arm's-length negotiations concerning whether Transform is obligated under the APA to pay (i) the gains tax (the "Indian Gains Tax") that the India taxing authority will impose on or in connection with the Debtors' transfer to Transform of the equity in the Debtors' Indian subsidiaries (the "Indian Acquired Foreign Assets") pursuant to Section 2.13 of the APA; and (ii) the per month interest charge that has been running since the consideration for the India Acquired Foreign Assets was deemed paid, together with any penalties and fees, that the India taxing authority will impose in connection with the Indian Gains Tax or the withholding tax related thereto (the "Indian Interest Amount") (the Parties' disputes relating to the obligation to pay the Indian Gains Tax and the Indian Interest Amount, and any other matters involving the Indian Gains Tax and the Indian Interest Amount that could have been asserted by a Party as of the date hereof, the "Indian Gains Taxes Dispute");

WHEREAS, following entry of the Order Approving the First APA Settlement Agreement, the Parties have, with the assistance of counsel, engaged in good-faith, arm's-length negotiations concerning whether Transform is obligated under the APA to pay the gains tax (the "Mexican Gains Tax") that the Mexican taxing authority imposed on or in connection with the Debtors' transfer to Transform of the equity in the Mexican entities (the "Mexican Acquired Foreign Assets") pursuant to Section 2.13 of the APA (the Parties' disputes relating to the obligation to pay the Mexican Gains Tax, and any other matters involving the Mexican Gains Tax that could have been asserted by a Party as of the date hereof, the "Mexican Gains Taxes Dispute");

WHEREAS, following entry of the Order Approving the First APA Settlement Agreement, the Parties have, with the assistance of counsel, engaged in good-faith, arm's-length negotiations concerning the ownership, under the APA, of the rights, title, and interest in, to, or under the dividend declared on April 26, 2019 by Sears Operadora México, S.A. de C.V. (the "Mexico Dividend") (the Parties' disputes relating to the ownership of the Mexico Dividend, and any other matters involving the Mexico Dividend that could have been asserted by a Party as of the date hereof, the "Mexico Dividend Dispute");

*EXECUTION VERSION*

WHEREAS, following entry of the Order Approving the First APA Settlement Agreement, the Parties have, with the assistance of counsel, engaged in good-faith, arm's-length negotiations concerning the ownership, under the APA, of the rights, title, and interest in, to, or under $502,270 in environmental remediation receivables in Sears Holdings account 11115 SHC – Seritage Receivables (the "Seritage Environmental Receivables") (the Parties' disputes relating to the ownership of the Seritage Environmental Receivables, and any other matters involving the Seritage Environmental Receivables that could have been asserted by a Party as of the date hereof, the "Seritage Environmental Receivables Dispute");

WHEREAS, following entry of the Order Approving the First APA Settlement Agreement, the Parties have, with the assistance of counsel, engaged in good-faith, arm's-length negotiations concerning the ownership, under the APA, of the rights, title, and interest in, to, or under certain reimbursement funds (the "Seritage Reimbursement Funds") owed by Seritage SRC Finance LLC and Seritage KMC Finance LLC (together, "Seritage") for repair work in 2016 to 2018 made necessary by storm damage that the Debtors performed on certain real property that the Debtors leased from Seritage pursuant to that certain Master Lease dated as of July 7, 2015 (as amended, the "Seritage Master Lease") (the Parties' disputes relating to the ownership of the Seritage Reimbursement Funds, and any other matters involving the Seritage Reimbursement Funds that could have been asserted by a Party as of the date hereof, the "Seritage Reimbursement Funds Dispute");

WHEREAS, following entry of the Order Approving the First APA Settlement Agreement, the Parties have, with the assistance of counsel, engaged in good-faith, arm's-length negotiations concerning the ownership under the APA of certain rent and related payments made in March, April, and May 2019 by the subtenant of the Debtors' Vernon, California property (Store Number 68738) (the "Vernon Warehouse Subtenant Rent") (the Parties' disputes relating to ownership of the Vernon Warehouse Subtenant Rent, and any other matters involving the Vernon Warehouse Subtenant Rent that could have been asserted by a Party as of the date hereof, the "Vernon Warehouse Subtenant Rent Dispute");

WHEREAS, following entry of the Order Approving the First APA Settlement Agreement, the Parties have, with the assistance of counsel, engaged in good-faith, arm's-length negotiations concerning whether the Debtors are obligated, under that certain letter agreement between the Parties, dated as of August 12, 2019, pursuant to which the Debtors agreed, among other things, to fund certain of Transform's costs in withdrawing or canceling its foreign business registrations and Transform agreed, among other things, to extend the deadline for the Estate to remove "Sears" and other related terms from entity and other business names (as amended, the "August 2019 Letter Agreement"), and to pay $7,100 to obtain tax clearance and a good standing certificate for one of the withdrawals contemplated by the August 2019 Letter Agreement (the "Tax Clearance Fee") (the Parties' disputes relating to the obligation to pay the Tax Clearance Fee, and any other matters involving the Tax Clearance Fee that could have been asserted by a Party as of the date hereof, the "Tax Clearance Fee Dispute");

WHEREAS, following entry of the Order Approving the First APA Settlement Agreement, the Parties have, with the assistance of counsel, engaged in good-faith, arm's-length negotiations concerning the Debtors' obligation to pay Transform for services rendered by Transform to the Debtors (the "Buyer Transition Services") pursuant to that certain Services

*EXECUTION VERSION*

Agreement dated as of February 11, 2019 by and between the Debtors and Transform [Docket No. 2599] (as may be amended, restated, supplemented, or modified from time to time, the "Transition Services Agreement") from the Closing up to and until May 31, 2020 (the "Invoiced Date") (the Parties' disputes relating to the Buyer Transition Services through the Invoiced Date, and any other matters involving the Transition Services Agreement that could have been asserted by a Party on or prior to the Invoiced Date, the "Buyer Transition Services Dispute");

WHEREAS, following entry of the Order Approving the First APA Settlement Agreement, the Parties have, with the assistance of counsel, engaged in good-faith, arm's-length negotiations concerning the ownership, under the APA, of the rights, title, and interest in, to, or under the litigation and/or insurance claims set forth in Schedule 1 attached hereto (the "Litigation and Insurance Claims") (the Parties' disputes relating to the ownership of the Litigation and Insurance Claims, and any other matters involving the Litigation and Insurance Claims that could have been asserted by a Party as of the date hereof, the "Litigation and Insurance Claims Dispute");

WHEREAS, following entry of the Order Approving the First APA Settlement Agreement, the Parties have, with the assistance of counsel, engaged in good-faith, arm's-length negotiations concerning Transform's effort to secure from KCD IP, LLC any trademarks that were not transferred or conveyed to Transform when it foreclosed on the KCD notes collateral, including but not limited to U.S. Trademark Application Nos. (i) 87/933656 (the Ovation swirl design), (ii) 87/707476 (Ovation (stylized with design)), (iii) 86/142276 (Powerwave), (iv) 85/002271 (360° Powerwash), and (v) 87/847814 (We Put Your Life in Drive) (the "Remaining KCD Intellectual Property") (the Parties' disputes relating to the Remaining KCD Intellectual Property, and any other matters involving the KCD Intellectual Property that could have been asserted by a Party as of the date hereof, the "Remaining KCD Intellectual Property Dispute");

WHEREAS, following entry of the Order Approving the First APA Settlement Agreement, the Parties have, with the assistance of counsel, engaged in good-faith, arm's-length negotiations concerning whether the Debtors are obligated under the APA to reimburse Transform for legal fees paid to professionals acting on behalf of the Debtors out of an account maintained by Sedgwick Claims Management Services, Inc. (the "Sedgwick Account") that was and had been funded by two Bank of America bank accounts that respectively belonged to Debtor entities Sears Roebuck & Co. (4451198981) and Kmart Corp. (4427082102) but that had been transferred to Transform at the Closing (the "Sedgwick Fees") (the Parties' disputes relating to whether the Debtors are obligated to reimburse Transform for the Sedgwick Fees, and any other matters involving the Sedgwick Fees that could have been asserted by a Party as of the date hereof, the "Sedgwick Fees Dispute");

WHEREAS, following entry of the Order Approving the First APA Settlement Agreement, the Parties have, with the assistance of counsel, engaged in good-faith, arm's-length negotiations concerning whether Transform is obligated under the APA to reimburse the Debtors for costs (including salaries, benefits, and other expenses) related to the SHC Israel Ltd. employees from the Closing to April 30, 2020 (the "SHC-Israel Employee Costs") (the Parties' disputes relating to whether Transform is obligated to reimburse the Debtors for the SHC-Israel Employee Costs, and any other matters involving SHC-Israel Employee Costs that could have been asserted by a Party as of the date hereof, the "SHC-Israel Employee Costs Dispute");

*EXECUTION VERSION*

WHEREAS, following entry of the Order Approving the First APA Settlement Agreement, the Parties have, with the assistance of counsel, engaged in good-faith, arm's-length negotiations concerning whether Transform is obligated under the APA to reimburse the Debtors for business personal property taxes assessed by various taxing authorities for tax year 2019 on business personal property relating to rejected Leases for the applicable occupancy period specified in the APA (the "2019 BPP Taxes"), specifically (i) with respect to GOB Leased Stores, the period commencing on the first calendar day following the GOB Period for such GOB Store and ending at the expiration of the Designation Rights Period for such GOB Store and (ii) with respect to Operating Leased Properties, the period commencing on the Closing and ending at the expiration of the Designation Rights Period for such Operating Leased Property (the Parties' disputes relating to whether Transform is obligated to reimburse the Debtors for the 2019 BPP Taxes, and any other matters involving the 2019 BPP Taxes that could have been asserted by a Party as of the date hereof, the "2019 BPP Taxes Dispute");

WHEREAS, following entry of the Order Approving the First APA Settlement Agreement, the Parties have, with the assistance of counsel, engaged in good-faith, arm's-length negotiations concerning a mechanism by which Transform can recover unrecovered Specified Receivables (as that term is defined in the APA) from obligors who refuse to pay those Specified Receivables to Transform absent a letter from the Debtors confirming that the accounts receivable that Transform seeks to recover are Specified Receivables that belong to Transform; and

WHEREAS, following entry of the Order Approving the First APA Settlement Agreement, the Parties have, with the assistance of counsel, engaged in good-faith, arm's-length negotiations concerning Transform's obligation to pay various vendors (the "Transition Vendors") amounts due and owing for services the Transition Vendors rendered to Transform pursuant to the Transition Services Agreement (the "Transition Vendor Services Amounts"), which the Transition Vendors attempted to recover from the Debtors by means of the Administrative-Expense Claims Consent Program (as that term is defined in the *Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated the Debtors and (II) Granting Related Relief* [Docket No. 5370] (the "Confirmation Order") (the Parties' disputes relating to Transform's obligation to pay the Transition Vendor Services Amounts, and any other matters involving the Transition Vendor Services Amounts that could have been asserted by a Party as of the date hereof, the "Transition Vendor Services Amounts Dispute," and, together with the Vornado and Altaquip Claims Dispute, the Indian Gains Taxes Dispute, the Mexican Gains Taxes Dispute, the Mexico Dividend Dispute, the Seritage Environmental Receivables Dispute, the Seritage Reimbursement Funds Dispute, the Vernon Warehouse Subtenant Rent Dispute, the Tax Clearance Fee Dispute, the Buyer Transition Services Dispute, the Litigation and Insurance Claims Dispute, the Remaining KCD Intellectual Property Dispute, the Sedgwick Fees Dispute, the SHC-Israel Employee Costs Dispute, and the 2019 BPP Taxes Dispute, the "Additional APA Disputes");

NOW, THEREFORE, for and in consideration of the covenants, representations, obligations, and releases set forth in this Agreement and other good and valuable consideration, the sufficiency of which is hereby acknowledged, each of the Parties, intending to be bound, agrees as follows:

*EXECUTION VERSION*

1.    <u>Effective Date</u>.  This Agreement shall become fully effective and binding upon each Party upon the satisfaction of each of the following conditions precedent (the "<u>Effective Date</u>"):

(a)  the Debtors shall have filed a Motion (in form and substance satisfactory to each of the Parties) seeking approval of this Agreement by no later than September 18, 2020, seeking a hearing date of no later than October 15, 2020;

(b)  the Bankruptcy Court shall have entered an order approving this Agreement, substantially similar in form and substance to the proposed order attached hereto as <u>Exhibit A</u> (the "<u>Approval Order</u>");

(c)  each of the Parties shall have executed and delivered signature pages to this Agreement; and

(d)  there is no order, or any stay entered or having taken effect, prohibiting or otherwise delaying the transactions contemplated herein.

2.    <u>The Vornado and Altaquip Claims Dispute</u>.

(a)  Except as provided in <u>Sections 2(c)</u>-<u>2(e)</u> below, any and all rights, title, or interest in, to, or under the Vornado Claims and  the Altaquip Claims, including but not limited to any and all litigation proceeds, belong to the Debtors under the APA.

(b)  The Debtors will litigate the Vornado Claims and the Altaquip Claims in a manner consistent with their and their advisors' sole discretion, including with respect to any decision to settle these claims.  The Debtors will periodically update Transform upon request as to the status of such litigation and any settlement discussions.

(c)  In the event that the Debtors recover more than $250,000 in value in connection with the Vornado Claims (the date upon which the Debtors receive payment of any such recovery, the "<u>Vornado Recovery Date</u>"), the Debtors will distribute to Transform any value received in excess of $250,000 as reimbursement for Transform's post-Closing costs and fees incurred as of the Execution Date in connection with the Vornado Claims (subject to an aggregate cap of $132,313) within fourteen (14) days of the Vornado Recovery Date.

(d)  In the event that the Debtors recover more than $500,000 in connection with the Altaquip Claims (the date upon which the Debtors receive payment of any such recovery, the "<u>Altaquip Recovery Date</u>"), the Debtors will distribute to Transform any value received in excess of $500,000 as reimbursement for Transform's post-Closing costs and fees incurred as of the Execution Date in connection with the Altaquip Claims (subject to an aggregate cap of $63,072) within fourteen (14) days of the Altaquip Recovery Date; <u>provided that</u> if the Debtors recover an award of attorneys' fees in connection with the Altaquip Claims, the Debtors will reimburse Transform for its post-Closing costs and fees incurred as of the Execution Date in connection with the Altaquip Claims (subject to an aggregate cap of $63,072) out of the first dollars of the attorneys' fees award rather than from the Excess Recovery regardless of the amount of such recovery.

(e) Transform and its agents, employees, or representatives will provide reasonable and customary legal assistance, as necessary, to the Debtors and their agents, employees, or representatives in connection with the Debtors' litigation of the Vornado Claims and the Altaquip Claims for which the Debtors shall reimburse Transform at an hourly rate of $400/hour. All invoices of Transform for payment of such hourly rates will be paid by the Debtors no later than twenty-one (21) days after delivery.

3. <u>The Indian and Mexican Gains Taxes Dispute</u>.

(a) Within three (3) business days following the Effective Date, Transform will pay the Indian Gains Tax and the Indian Interest Amount (the date on which such payments are made, the "<u>Indian Tax Payment Date</u>").

(b) The Debtors will use commercially reasonable efforts to transfer to Transform one-hundred percent (100%) of the equity in the Indian Acquired Foreign Assets within thirty (30) days following the Effective Date. From the Indian Tax Payment Date until the transfer of the Indian Acquired Foreign Assets to Transform, (i) the Debtors shall hold the Indian Acquired Foreign Assets in trust for the sole benefit of Transform, which shall bear all risk of loss and opportunity for any gain in connection therewith, (ii) Transform shall assume, timely perform, and discharge all liabilities in connection with the Indian Acquired Foreign Assets, (iii) Transform shall have the right, subject to applicable law, to direct the voting of such equity in the Indian Acquired Foreign Assets, and (iv) the Parties will treat Transform as the owner of the equity in the Indian Acquired Foreign Assets for all tax purposes unless otherwise required by law.

(c) For the avoidance of doubt, any Transfer Taxes (as defined in the APA) that are payable in connection with the transfer of the Indian Acquired Foreign Assets shall be borne solely by Transform in accordance with the terms of the APA.

(d) The Parties agree that for purposes of this Settlement Agreement, and without limiting any liability, Transform owes the Debtors $358,000, an amount representing approximately fifty percent (50%) of the Mexican Gains Tax.

4. <u>The Mexico Dividend Dispute</u>.

The Debtors release, waive, and relinquish to Transform any and all right, title, and interest in, to, or under the Mexico Dividend.

5. <u>The Seritage Environmental Receivables Dispute</u>.

The Parties acknowledge and agree that the Seritage Environmental Receivables are Specified Receivables acquired by Transform pursuant to Section 2.1(d), Schedule 1.1(k), and Annex 11 of the APA; the Debtors delivered them to Transform at the Closing; and, as of the Effective Date, Transform is entitled to recover them from Seritage.

*EXECUTION VERSION*

6.      The Seritage Reimbursement Funds Dispute.

Within seven (7) days following the Effective Date, Transform will execute a release, substantially similar in form and substance to the release attached as Exhibit C hereto, releasing, waiving, and relinquishing to the Debtors any rights, title, and interest in, to, or under $1,933,627 of the Seritage Reimbursement Funds.

7.      The Vernon Warehouse Subtenant Rent Dispute.

The Parties acknowledge and agree that, in the First APA Settlement Agreement, the Debtors released, waived, and relinquished any claim for turnover of the Vernon Warehouse Subtenant Rent.  The Debtors acknowledge and agree that any and all rights, title, or interest in, to, or under the Vernon Warehouse Subtenant Rent belong to Transform under the First APA Settlement Agreement.

8.      The Tax Clearance Fee Dispute.

(a)  The Parties agree that Transform shall pay the Tax Clearance Fee.

(b)  The Parties acknowledge and agree that the deadline for the Estate to remove "Sears" and other related terms from entity and other business names shall be extended up to and until the earlier of the date on which the (i) provisions of the Debtors' plan of reorganization go into effect (the "Plan Effective Date"), or (ii) the date that the Debtors' Chapter 11 cases are dismissed or converted to Chapter 7 cases.

(c)  Notwithstanding the foregoing, the Parties acknowledge and agree that the foregoing does not affect the Parties' other, ongoing obligations under the August 2019 Letter Agreement other than with respect to the payment of the Tax Clearance Fee.

9.      The Buyer Transition Services Dispute.

(a)  The Parties agree that pursuant to this Settlement Agreement, the Debtors owe Transform $1,036,000 for Buyer Transition Services rendered by Transform to the Debtors from the Closing up to and until the Invoiced Date.

(b)  The fees for any Buyer Transition Services that are provided by Transform after the Invoiced Date shall be those set forth in Schedule 2 attached hereto.  Transform will invoice the Debtors on a monthly basis for those Buyer Transition Services and the Debtors will render payment within twenty-one (21) days of receipt of those invoices.  The Parties acknowledge and agree that this Section 9(b) constitutes an amendment to Schedule A-2 of the Transition Services Agreement for purposes of Section 2.1(b) of the Transition Services Agreement.

10.      The Litigation and Insurance Claims Dispute.

(a)  The Parties acknowledge and agree that any and all rights, title, or interest in, to, or under the Litigation and Insurance Claims listed in Category 1 of Schedule 1 attached hereto  belong to the Debtors under the APA.  Transform releases, waives, and

*EXECUTION VERSION*

relinquishes to the Debtors any and all right, title, and interest in, to, or under each of the Litigation and Insurance Claim listed in Category 1.

(b) The Parties acknowledge and agree that any and all rights, title, or interest in, to, or under the Litigation and Insurance Claims listed in Category 2 of Schedule 1 attached hereto belong to Transform. The Debtors release, waive, and relinquish to Transform any and all right, title, and interest in, to, or under each of the Litigation and Insurance Claim listed in Category 2.

(c) Notwithstanding anything to the contrary contained herein with respect to the Bayamon claim and the larger Panama City claim in Category 1 of Schedule 1, forty percent (40%) of the net recovered proceeds (i.e., after deducting the Debtors' legal fees) on such claims (the "Bayamon/Panama City Claims") shall be paid by the Debtors to Transform; provided that for purposes of this Settlement Agreement only, in consideration for the forty percent (40%) stake in the Bayamon/Panama City Claims that Transform is to receive, the Debtors will be entitled to reduce the $1,036,000 they owe to Transform for Buyer Transition Services as set forth in Section 9(a) above by $374,000. For the avoidance of doubt, the Debtors will litigate the Bayamon/Panama City Claims in a manner consistent with their and their advisors' sole discretion, including with respect to any decision to settle these claims. The Debtors will periodically update Transform upon request as to the status of such litigation and any settlement discussions.

(d) Transform and its agents, employees, or representatives will provide reasonable and customary legal assistance, as necessary, to the Debtors and their agents, employees, or representatives in connection with the Debtors' litigation of the Bayamon/Panama City Claims for which the Debtors shall reimburse Transform at an hourly rate of $400/hour. All invoices of Transform for payment of such hourly rates will be paid by the Debtors no later than twenty-one (21) days after delivery. For the avoidance of doubt, any and all fees paid by the Debtors to Transform and its agents, employees, or representatives pursuant to this Section 10(d) are Debtors' legal fees to be deducted from any recovered proceeds to be paid to Transform pursuant to Section 10(c) hereof.

11.    The Remaining KCD Intellectual Property Dispute.

The Debtors will not object to or interfere with any effort by Transform to secure from KCD IP, LLC the Remaining KCD Intellectual Property. In addition, the Parties will promptly, but in any event no later than seven (7) business days following the Effective Date, execute the letter in the form attached hereto as Exhibit D regarding the distribution of the final 200 Class B Preferred Units of Transform Holdco LLC comprising the Securities Consideration (as defined in the APA).

12.    The Sedgwick Fees Dispute.

(a) The Parties acknowledge and agree that in the First APA Settlement Agreement, Transform released, waived, and relinquished any claim to recover any Sedgwick Fees from the Debtors that were paid before the execution of the First APA Settlement Agreement.

(b) Notwithstanding anything to the contrary contained herein, however, Transform did not release, waive, or relinquish any claim to recover from the Debtors $61,000 in Sedgwick Fees paid out of the Sedgwick Account after the execution date of the First APA Settlement Agreement.

(c) The Parties agree that pursuant to this Settlement Agreement, the Debtors owe Transform $61,000 in Sedgwick Fees.

13.    The SHC-Israel Employee Costs Dispute.

The Parties agree that for purposes of this Settlement Agreement, and without admitting any liability, Transform owes the Debtors $240,000 as reimbursement for the SHC-Israel Employee Costs.

14.    The 2019 BPP Taxes Dispute.

The Parties agree that for purposes of this Settlement Agreement, and without admitting any liability, Transform owes the Debtors $125,000 as reimbursement for the 2019 BPP Taxes.

15.    The Unrecovered Specified Receivables Letter.

(a) Within seven (7) days following the Effective Date, the Debtors will execute letters, substantially similar in form and substance to the letter attached as Exhibit E hereto, confirming that the accounts receivable that Transform seeks to recover from Frigidaire, L'Oréal, and Sealy (the "Obligors") are Specified Receivables within the meaning of the APA, i.e., accounts receivable set forth on Schedule 1.1(k) of the APA, that belong to Transform (the "Unrecovered Specified Receivables Letter").

(b) On a case-by case basis, the Debtors also will execute letters, substantially similar in form and substance to the letter attached as Exhibit E hereto, to other obligors who owe Transform Specified Receivables within seven (7) days following a related request from Transform in writing (including by electronic transmission).

16.    The Transition Vendor Transition Services Dispute.

(a) Within seven (7) days following the Effective Date, Transform will fully settle and resolve the claims asserted by certain specified vendors as identified on Schedule 3 attached hereto, which Schedule shall be redacted and not be required to be filed with the Bankruptcy Court.

17.    Other Obligations of the Parties.

(a) Bankruptcy Court Approval.  No later than September 18, 2020, the Debtors shall file a motion in form and substance reasonably acceptable to the Parties seeking approval of this Agreement.

(b)  Netting of Payments.  Because, for purposes of this Agreement, without admitting any liability, (i) Transform has agreed it owes the Debtors $358,000 in connection with the Mexican Gains Taxes Dispute, $240,000 in connection with the SHC-Israel Employees Costs Dispute, and $125,000 in connection with the 2019 BPP Taxes Dispute ($723,000 in the aggregate); (ii) the Debtors have agreed that they owe Transform $1,036,000 in connection with the Buyer Transition Services Dispute and $61,000 in connection with the Sedgwick Fees Dispute ($1,097,000 in the aggregate); and (iii) Transform has agreed in Section 10(c) above that, in consideration of the Debtors' agreement to pay Transform forty percent (40%) of the net recovered proceeds on the Bayamon/Panama City Claims, the Debtors will be entitled to reduce the $1,036,000 they owe to Transform for Buyer Transition Services as set forth in paragraph 9(a) above by $374,000 (reducing the amount owed by the Debtors to Transform to $723,000 in the aggregate), neither Party shall be required to make any cash payment to the other Party pursuant to this Agreement, except in connection with the Vornado Claims, the Altaquip Claims, and the Bayamon/Panama City Claims as may be required pursuant to Sections 2 and 10(c) above, or in connection with any post-Execution Date Buyer Transition Services, as may be required pursuant to Section 9(b) above.

(c)  Payment Method.  Unless otherwise indicated in a writing from Transform to the Debtors, any amounts due from the Debtors to Transform related to the Vornado Claims, Altaquip Claims, or Bayamon/Panama City Claims pursuant to this Agreement shall be transferred by wire transfer of immediately available funds in accordance with the wire transfer instructions attached as Schedule 4 hereto, which Schedule shall be redacted in the documents to be filed with the Bankruptcy Court.

18.   Mutual Release.

(a) Upon the Effective Date, Transform and each of the Debtors, on behalf of itself, its controlled affiliates, and each and all of its and its affiliates' respective past and present successors and assigns or any entity asserting a claim released hereunder either through or on behalf of any such parties (all such releasing persons and entities collectively, the "Releasing Parties"), does hereby fully, unconditionally and irrevocably release, relieve, waive, relinquish, remise, acquit and forever discharge the other Party and such other Party's respective past, present and future agents, heirs, executors, administrators, conservators, successors, assigns, noteholders, participants, co-participants, direct and indirect parents, principals, subsidiaries, affiliates, related companies, shareholders, interest holders, investors, members, partners (including, without limitation, general and limited partners), managers, directors, representatives, contractors, service providers, receivers, attorneys and beneficiaries, and the past, present, and future officers, directors, and employees (all such released persons and entities, collectively, the "Released Parties") from, against, and in respect of any and all past, present, and future claims, cross-claims, counterclaims, third-party claims, demands, liabilities, obligations, debts, liens, damages, losses, costs, expenses, controversies, actions, rights, suits, assessments, penalties, charges, indemnities, guaranties, promises, commitments, appeals, or causes of action of whatsoever nature, whether based in contract, tort or otherwise, whether in law or equity and whether direct or indirect, fixed or contingent, that any of the Parties have or may have against any of the other Parties since the beginning of time, under, arising out of or in

11

connection with the Additional APA Disputes (all of the foregoing, the "Released Claims"), which Released Claims shall include for the avoidance of doubt any right to claim an award of attorneys' fees or other costs and expenses incurred in, or in connection with, any of the foregoing.

(b) For the avoidance of doubt, nothing in this Agreement (including, without limitation, Section 18(a)) releases, waives, or prejudices the rights of any Party or Released Party to (i) enforce this Agreement; (ii) prosecute or defend against that certain adversary proceeding commenced with the Debtors' filing, on April 17, 2019, of a complaint (as amended or may be amended from time to time, including but not limited to the First Amended Complaint filed on November 25, 2019) in the Bankruptcy Court against, *inter alia*, Edward Scott "Eddie" Lampert, ESL Investments, Inc.; RBS Partners LP; and CRK Partners LLC (Adv. Case No. 19-08250-rdd), other than Released Claims; (iii) prosecute or defend against Preserved Causes of Action as defined in section 1.127 of the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated the Debtors* [Docket No. 5370-1] and not otherwise Released Claims; or (iv) prosecute or defend against Claims related to obligations under the APA that are not otherwise Released Claims, including but not limited to Claims related to Transform's obligation, if any, to (a) assume Cure Costs under the APA, (b) reimburse the Debtors for Deloitte Tax Fees under Sections 2.3 and 9.2(a) of the APA to the extent such fees arise after September 30, 2019, or (c) indemnify the Debtors for Taxes that are Assumed Liabilities under Sections 2.3 and 9.2(e) of the APA.

(c) For the avoidance of doubt, except with respect to the Released Claims as provided in Section 18(a), nothing herein shall prejudice the rights of any Party to enforce its rights under the APA, the CCAR Order, the EDA Stipulation, and the Interim Settlements, as those terms are defined in the First APA Settlement Agreement, and all such rights are fully and completely reserved.

(d) For the avoidance of doubt, up to and until the Effective Date, the Parties shall retain all of their rights and claims with respect to the Additional APA Disputes, provided that the Parties agree that, up to and until the Effective Date, each Party will not pursue such rights or claims or prosecute the Additional APA Disputes against each other Party.

19.    Mutual Representations and Warranties of All Parties. Each Party represents and warrants to each other Party as of the Execution Date that:

(a) it is an entity duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation;

(b) subject to the Approval Order with respect to the Debtors, it has the requisite organizational power and authority to enter into this Agreement and to carry out the transactions contemplated by, and perform its respective obligations under, this Agreement;

(c) subject to the Approval Order with respect to the Debtors, this Agreement constitutes a legal, valid, and binding obligation of such Party, enforceable against such Party in accordance with its terms;

(d) the execution and delivery of this Agreement and the performance of its obligations hereunder have been duly authorized by all necessary corporate or other organizational action on its part;

(e) the execution, delivery, and performance by it of this Agreement does not violate any provision of law, rule, or regulation applicable to it or any of its affiliates or its certificate of incorporation, bylaws, or other organizational documents or those of any of its affiliates;

(f) before executing this Agreement, (i) it has been fully informed of its terms, contents, conditions, and effects; (ii) it has had a full and complete opportunity to discuss this settlement with its attorney or attorneys; (iii) it is not relying in any respect on any statement or representation made by any other Party; and (iv) no promise or representation of any kind has been made to such Party separate and apart from what is expressly contained in this Agreement.

20.    Further Assurances.  Upon the Effective Date, the Parties shall use their reasonable best efforts to take, or cause to be taken, all appropriate action to do or cause to be done all things necessary under applicable law, and to execute and deliver such documents and other papers, in each case, as may be required to carry out the provisions of this Agreement and consummate and make effective the transactions contemplated hereby.

21.    No Admission of Fault or Liability. This Agreement is a compromise of disputed claims, and nothing contained in this Agreement shall be construed to be an admission of fault or liability on the part of any Party, all such fault or liability being expressly denied by each Party.

22.    Governing Law.  This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York (excluding any conflicts-of-law rule or principle that might refer same to the laws of another jurisdiction).

23.    Consent to Jurisdiction.  This Agreement shall be deemed to be made in New York. Each Party irrevocably and unconditionally submits to and accepts the exclusive jurisdiction of the Bankruptcy Court for any action, suit, or proceeding arising out of or based upon this Agreement, and waives any objection that it may have to the laying of venue in any such court or that any such court is an inconvenient forum or does not have personal jurisdiction over it.

24.    Trial by Jury Waived.  EACH PARTY HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY PROCEEDING DIRECTLY OR INDIRECTLY BASED UPON, ARISING OUT OF, OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER IN CONTRACT OR IN TORT, IN LAW OR IN EQUITY OR GRANTED BY STATUTE).  EACH PARTY (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT, OR ATTORNEY OF ANY OTHER PARTY HAS

*EXECUTION VERSION*

REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND EACH OTHER PARTY HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 24.

25.    Counterparts.    This Agreement may be executed in any number of counterparts, which together shall constitute one instrument. Delivery of an executed counterpart of a signature page of this Agreement by electronic mail transmission (e.g., "pdf" or "tif") shall be effective as delivery of a manually executed counterpart of this Agreement.

26.    Successors and Assigns; Third Party Beneficiaries.    This Agreement shall be binding upon and inure to the benefit of and be enforceable by the respective successors and permitted assigns of the Parties. Each of the Released Parties who is not a party to this Agreement is intended to be, and shall be, a third-party beneficiary but only as pertaining to the Released Claims in Section 18 of this Agreement and entitled to enforce the terms thereof. Except to the extent provided in the immediately preceding sentence, there are no third-party beneficiaries with respect to this Agreement.

27.    Notices.    All notices, requests, demands, and other communications to any Party hereto given under this Agreement shall be in writing, hand delivered or sent by overnight courier or electronic transmission (with confirmation received) to such Party at the address or electronic mail address specified for such Party on Exhibit B hereto, or at such other address or electronic mail address as such Party may subsequently request in writing. All notices, requests, demands, and other communications will be deemed delivered when actually received.

28.    Severability.    If any provision in this Agreement is determined to be invalid, inoperative, or unenforceable, the remaining provisions of this Agreement remain in effect if both the economic and legal substance of the transactions contemplated hereby are not materially affected in any manner adverse to any Party. Otherwise, the Parties shall negotiate in good faith to rewrite any such provision so as to, as nearly and fairly as possible, approach the economic and legal substance originally intended.

29.    Entire Agreement; First APA Settlement Agreement Remains in Full Force and Effect.    This Agreement, together with the APA and the First APA Settlement Agreement, constitutes the entire understanding of the Parties with respect to the subject matter hereof. Notwithstanding anything to the contrary contained herein, nothing in this Agreement supersedes the terms, conditions, or provisions of the First APA Settlement Agreement. For the avoidance of doubt, the Parties accept and continue to be bound by their obligations under the First APA Settlement Agreement, including, for the avoidance of doubt, the obligation to pay any amounts from the Uncashed Checks Escrow (as that term is defined in the First APA Settlement Agreement) owed to Debtors upon expiration of the applicable escheat period.

30.    Amendment and Waiver.    This Agreement may be amended, and the observance of any term of this Agreement may be waived, with (and only with) the written consent of both Parties.

*EXECUTION VERSION*

IN WITNESS WHEREOF, this Agreement has been executed by each of the Parties, effective as of the Execution Date.

**TRANSFORM HOLDCO LLC**

By: _____
    Name: Luke J. Valentino
    Title:   General Counsel and Secretary


**SEARS HOLDINGS CORPORATION**

By: _____
    Name: Mohsin Y. Meghji
    Title:   Chief Restructuring Officer

*EXECUTION VERSION*

IN WITNESS WHEREOF, this Agreement has been executed by each of the Parties, effective as of the Execution Date.

**TRANSFORM HOLDCO LLC**

By:
    Name: Luke Valentino
    Title:   General Counsel and Secretary

**SEARS HOLDINGS CORPORATION**

By:
    Name: Mohsin Y. Meghji
    Title:   Chief Restructuring Officer

*EXECUTION VERSION*

**Kmart Holding Corporation**

By: _____

Name:          Mohsin Y. Meghji

Title:          Chief Restructuring Officer

*EXECUTION VERSION*

**Kmart Operations LLC**

By:

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*EXECUTION VERSION*

**Sears Operations LLC**

By: _____

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*EXECUTION VERSION*

**Sears, Roebuck and Co.**


By:

Name:        Mohsin Y. Meghji

Title:         Chief Restructuring Officer

*EXECUTION VERSION*

**ServiceLive, Inc.**

By: _____

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*EXECUTION VERSION*

**SHC Licensed Business LLC**

By: _____

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*EXECUTION VERSION*

**A&E Factory Service, LLC**

By: _____

Name:        Mohsin Y. Meghji

Title:         Chief Restructuring Officer

*EXECUTION VERSION*

**A&E Home Delivery, LLC**


By:

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*EXECUTION VERSION*

**A&E Lawn & Garden, LLC**

By:

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*[Signature Page to Settlement Agreement]*

*EXECUTION VERSION*

**A&E Signature Service, LLC**


By:

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

**FBA Holdings Inc.**


By: _____

Name:        Mohsin Y. Meghji

Title:         Chief Restructuring Officer

*EXECUTION VERSION*

**Innovel Solutions, Inc.**

By: _____

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*[Signature Page to Settlement Agreement]*

*EXECUTION VERSION*

**Kmart Corporation**


By: _____

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*EXECUTION VERSION*

**MaxServ, Inc.**

By:

Name:          Mohsin Y. Meghji

Title:          Chief Restructuring Officer

*EXECUTION VERSION*

**Private Brands, Ltd.**

By:

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*EXECUTION VERSION*

**Sears Development Co.**


By:

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

**Sears Holdings Management Corporation**

By: _____

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*EXECUTION VERSION*

**Sears Home & Business Franchises, Inc.**


By:        _____

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*EXECUTION VERSION*

**Sears Home Improvement Products, Inc.**

By:

Name:       Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*EXECUTION VERSION*

**Sears Insurance Services, L.L.C.**


By:

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*EXECUTION VERSION*

**Sears Procurement Services, Inc.**

By:

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*EXECUTION VERSION*

**Sears Protection Company**

By: _____

Name:         Mohsin Y. Meghji

Title:          Chief Restructuring Officer

*EXECUTION VERSION*

**Sears Protection Company (PR), Inc.**

By:

Name:      Mohsin Y. Meghji

Title:      Chief Restructuring Officer

*EXECUTION VERSION*

**Sears Roebuck Acceptance Corp.**


By:

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*EXECUTION VERSION*

**Sears, Roebuck de Puerto Rico, Inc.**


By:

Name:          Mohsin Y. Meghji

Title:          Chief Restructuring Officer

*EXECUTION VERSION*

**SYW Relay LLC**

By:

Name:        Mohsin Y. Meghji

Title:         Chief Restructuring Officer

*EXECUTION VERSION*

**Wally Labs LLC**

By:

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*EXECUTION VERSION*

**SHC Promotions LLC**

By: _____

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*EXECUTION VERSION*

**Big Beaver of Florida Development, LLC**


By:

Name:          Mohsin Y. Meghji

Title:          Chief Restructuring Officer

*EXECUTION VERSION*

**California Builder Appliances, Inc.**


By:

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*EXECUTION VERSION*

**Florida Builder Appliances, Inc.**

By:

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*EXECUTION VERSION*

**KBL Holding Inc.**


By: _____

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*EXECUTION VERSION*

**Kmart of Michigan, Inc.**

By:

Name:          Mohsin Y. Meghji

Title:          Chief Restructuring Officer

**Kmart of Washington LLC**


By:

Name:          Mohsin Y. Meghji

Title:          Chief Restructuring Officer

*EXECUTION VERSION*

**Kmart Stores of Illinois LLC**


By:     _____

Name:         Mohsin Y. Meghji

Title:         Chief Restructuring Officer

*EXECUTION VERSION*

**Kmart Stores of Texas LLC**

By:

Name:          Mohsin Y. Meghji

Title:          Chief Restructuring Officer

*EXECUTION VERSION*

**MyGofer LLC**

By: _____

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*EXECUTION VERSION*

**Sears Brands Business Unit Corporation**

By: _____

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*EXECUTION VERSION*

**Sears Holdings Publishing Company, LLC**

By:

Name:      Mohsin Y. Meghji

Title:       Chief Restructuring Officer

*EXECUTION VERSION*

**Sears Protection Company (Florida), L.L.C.**

By: _____

Name:          Mohsin Y. Meghji

Title:          Chief Restructuring Officer

*EXECUTION VERSION*

**SHC Desert Springs, LLC**

By: _____

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

**SOE, Inc.**


By:

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*EXECUTION VERSION*

**StarWest, LLC**

By:

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*EXECUTION VERSION*

**STI Merchandising, Inc.**

By: _____

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*[Signature Page to Settlement Agreement]*

*EXECUTION VERSION*

**Troy Coolidge No. 13, LLC**

By: _____

Name:         Mohsin Y. Meghji

Title:         Chief Restructuring Officer

*[Signature Page to Settlement Agreement]*

*EXECUTION VERSION*

**BlueLight.com, Inc. .**

By:

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*EXECUTION VERSION*

**Sears Brands, L.L.C.**


By: _____

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*EXECUTION VERSION*

**Sears Buying Services, Inc.**

By: _____

Name:        Mohsin Y. Meghji

Title:         Chief Restructuring Officer

*[Signature Page to Settlement Agreement]*

*EXECUTION VERSION*

**Kmart.com LLC**


By: _____

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*EXECUTION VERSION*

**Sears Brands Management Corporation**

By:

Name:        Mohsin Y. Meghji

Title:        Chief Restructuring Officer

*EXECUTION VERSION*

**KLC, Inc.**

By:

Name:          Mohsin Y. Meghji

Title:          Chief Restructuring Officer

*EXECUTION VERSION*

**SRe Holding Corporation**


By:

Name:          Mohsin Y. Meghji

Title:          Chief Restructuring Officer

**Exhibit A**
**Approval Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                                :

In re                          :         **Chapter 11**

**SEARS HOLDINGS CORPORATION,** *et al.*,  :         **Case No. 18-23538 (RDD)**

       **Debtors.**[1]           :         **(Jointly Administered)**
                                :
------------------------------------------------------------------x

## ORDER APPROVING SECOND APA SETTLEMENT AGREEMENT BETWEEN THE DEBTORS AND TRANSFORM HOLDCO LLC

Upon the motion, dated September 17, 2020 (ECF No. [___]) (the "**Motion**")[2] of

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the

above-captioned chapter 11 cases (collectively, the "**Debtors**"), for entry of an order pursuant to

Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") approving

the Settlement Agreement, dated as of September 17, 2020 (the "**Second APA Settlement**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, LLC (None); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is c/o M-III Partners, L.P., 130 West 42nd St., 17th Floor, New York, NY 10036.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

**Agreement**") entered into by the Debtors and Transform Holdco LLC ("**Transform**"); and the

Court having jurisdiction to decide the Motion and the relief requested therein pursuant to 28

U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated

January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a

core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant

to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief sought in the Motion and

the opportunity for a hearing thereon having been provided in accordance with the Amended Case

Management Order; and such notice having been adequate and appropriate under the

circumstances and it appearing that no other or further notice need be provided; and the Court

having held a hearing to consider the relief requested in the Motion on October 15, 2020 (the

"**Hearing**"); and upon the record of the Hearing, and upon all of the proceedings had before the

Court; and the Court having determined that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein in that the Second APA Settlement Agreement is

a fair and reasonable compromise of the issues resolved thereby in the light of the risks, costs and

delay of continued litigation, considerations of enforcement of any litigated resolution, and the

arms-length nature of the parties, and, therefore, such relief is in the best interests of the Debtors,

their estates, their creditors, and all parties in interest; and after due deliberation and sufficient

cause appearing therefor,

## IT IS HEREBY ORDERED THAT:

1.      The relief requested in the Motion is granted.

2.      Pursuant to Bankruptcy Rule 9019(a), the Second APA Settlement

Agreement is approved.

3.      The Debtors and Transform are authorized to take any action as may be necessary or appropriate to implement, effectuate, and fully perform under the Second APA Settlement Agreement in accordance with this Order, including without limitation to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement, effectuate, and fully perform under the Second APA Settlement Agreement in accordance with this Order.

4.      Any automatic 14-day stay of this Order that might apply under the Bankruptcy Rules is waived, for cause, and this Order is effective immediately upon its entry.

5.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2020
          White Plains, New York

                                _____
                                THE HONORABLE ROBERT D. DRAIN
                                UNITED STATES BANKRUPTCY JUDGE

# Exhibit B
## Notice Addresses

**Transform Holdco LLC**

Transform Holdco LLC
3333 Beverly Road
Hoffman Estates, IL 60179
Attention: Luke Valentino, Esq.
Tel: (847) 286-9551

With a copy to:

Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
Attention: Sean A. O'Neal, Esq.
Tel: (212) 225-2000

**The Debtors** (including any Debtor affiliate)

Weil, Gotshal & Manges
767 Fifth Ave.
New York, NY 10153-0119
Attention: Jacqueline Marcus, Esq.
Tel: (212) 310-8000

M-III Partners, LLC
130 W 42nd St. 17th Floor
New York, NY 10036
Attention: Brian Griffith
Tel: (212) 716-1491

**Exhibit C**
**Seritage Release**

**[TRANSFORM HOLDCO LLC LETTERHEAD]**

[Date]

[ADDRESS 1
ADDRESS 2
CITY, STATE ZIP CODE
ATTN:  [NAME]]

Re:      *In re Sears Holdings Corp., et al.*, Ch. 11 Case No. 18-23538 (RDD) in the United States
         Bankruptcy Court for the Southern District of New York (the "Chapter 11 Cases")

Dear Sir or Madam:

   As you are aware, Seritage SRC Finance LLC and Seritage KMT Finance LLC (together, "Seritage") are parties to that certain Master Lease dated as of July 7, 2015 (as amended, the "Seritage Master Lease"), under which Sears Operations LLC and Kmart Operations LLC (together, "Sears")[1] leased from Seritage certain parcels of real property and the improvements thereon, including the properties listed in Exhibit A attached hereto (the "Casualty Properties").  The Debtors in the above-described Chapter 11 Cases rejected the Seritage Master Lease by notice dated March 12, 2019 [ECF No. 2800].

   As you are also aware, after the termination of the Seritage Master Lease, Seritage leased the Casualty Properties to Transform KM Operations LLC and Transform SR Operations LLC (together, "Transform") under that certain Master Lease dated as of February 28, 2019 by and between Seritage and Transform (as amended, the "Transform Master Lease").

   Sears and Transform Holdco LLC ("Holdco"), which controls Transform, are among the parties to that certain Asset Purchase Agreement dated as of January 17, 2019 by and among Holdco (as defined herein), Sears, and Sears's Debtor affiliates (as amended, modified, or supplemented, the "APA").

   Prior to the date hereof, Sears and Transform performed repair and replacement at each of the Casualty Properties (the "Repair Work").  Under the terms of the Seritage Master Lease and the Transform Master Lease, Sears and Transform, respectively, have acquired the right to be paid and reimbursed by Seritage for a portion of the costs of the Repair Work in the total amount of $3,239,412(the "Seritage Reimbursement Funds").

   Holdco—on behalf of itself and all affiliates, successors, and assigns—hereby (i) irrevocably and unconditionally acknowledges and agrees (x) that under the terms of the APA, $1,933,627 of the Seritage Reimbursement Funds belong to Sears (the "Sears Reimbursement Funds"), and (y) not to take any action that would hinder, impede, inhibit, obstruct, prevent, oppose, challenge, dispute, or otherwise interfere with any Seritage transfer of the Sears Reimbursement Funds, or any portion of them, to Sears or Sears's Debtor affiliates, and (ii) forever releases, waives, and relinquishes to Sears any and all right, title, or interest in, to, or under the Sears Reimbursement Funds.

   Sears—on behalf of itself and all affiliates, successors, and assigns—hereby irrevocably and unconditionally acknowledges and agrees: (x) that under the terms of the APA, $1,305,785 of the Seritage Reimbursement Funds belong to Transform (the "Transform Reimbursement Funds"), and (y) not to take any action that would hinder, impede, inhibit, obstruct, prevent, oppose, challenge, dispute, or otherwise

---

[1] Both Sears Operations LLC and Kmart Operations LLC are Debtor entities in the Chapter 11 Cases.

interfere with any Seritage transfer of the Transform Reimbursement Funds, or any portion of them, to Transform or Transform's affiliates, and (ii) forever releases, waives, and relinquishes to Transform any and all right, title, or interest in, to, or under the Transform Reimbursement Funds.

Sincerely,

_____

cc:    Brian Griffith, Managing Director, M-III Partners LP
       Jacqueline Marcus, Weil, Gotshal & Manges LLP
       Jared R. Friedmann, Weil, Gotshal & Manges LLP


ACCEPTED AND AGREED BY SEARS OPERATIONS LLC
AND KMART OPERATIONS LLC


_____

## Exhibit D
**Direction Letter Remaining B Units**

**LETTER AGREEMENT**

September [●], 2020

JPP, LLC
c/o ESL Investments, Inc.
1170 Kane Concourse, Suite 200
Bay Harbor Islands, FL 33154
Attention: Kunal S. Kamlani and Harold Talisman

Transform Holdco LLC
c/o ESL Investments, Inc.
1170 Kane Concourse, Suite 200
Bay Harbor Islands, FL 33154
Attention:  Kunal S. Kamlani and Harold Talisman

**Re: Distribution of the balance of Class B Preferred Units of Transform Holdco LLC as Securities Consideration in accordance with that certain Purchase Agreement**

Reference is made to the following documents:

(1) The Letter Agreement dated as of April 26, 2019 by and among Sears Holdings Corporation, JPP, LLC, solely in its capacity as Administrative Agent for the Second Lien Credit Agreement, Computershare Trust Company, N.A., solely in its capacity as Second Lien PIK Trustee pursuant to the Second Lien PIK Note Indenture, and Transform Holdco LLC [attached hereto as Exhibit A] (the "Direction Letter"); and

(2)  The Bill of Sale and Assumption Agreement, dated as of June 17, 2019, by and among Sears Holdings Corporation, certain of its subsidiaries, Transform Holdco LLC and certain of its assignees (the "KCD Note Transfer Agreement").

Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Direction Letter.

In connection with the transactions contemplated by the Purchase Agreement (including Schedule 9.2 thereof), as approved by the Order, Sears was entitled to receive 3,000 Class B Preferred Units (as defined in the LLC Agreement) from Holdco as the Securities Consideration (as defined in the Purchase Agreement), which SHC agreed to distribute ratably to the Second Lien Holders in accordance with the Allocation Procedure.  In furtherance thereof, pursuant to the Direction Letter, SHC authorized the distribution of 2,800 of such Class B Preferred Units to the Second Lien Holders as of the Record Date and thereby directed Holdco to deliver such 2,800 Class B Preferred Units to (x) the Second Lien Credit Agreement Lenders and (y) the Second Lien PIK Noteholders.

Holdco confirms that, upon the consummation of the transactions contemplated by the KCD Note Transfer Agreement, the remaining 200 Class B Preferred Units Sears was entitled to receive from Holdco as the Securities Consideration were authorized for issuance to Sears.  SHC confirms that it has authorized the distribution of such 200 Class B Preferred Units to the Second Lien Holders and hereby directs Holdco to deliver such 200 Class B Preferred Units to the Second Lien Credit Agreement Lenders and the Second Lien PIK Note Holders in accordance with the instructions applicable to the delivery of the initial 2,800 Class B Preferred Units in the Direction Letter.

SHC and the Administrative Agent acknowledge that Holdco has informed them that (i) each Second Lien Holder that is not already a Member (as defined in the LLC Agreement) of Holdco must become a Member of Holdco by executing and delivering such documents as may be necessary, in the reasonable opinion of the Board of Managers of Holdco, to make such Second Lien Holder a party to the LLC Agreement as a condition to receiving any Class B Preferred Units pursuant to this letter agreement, and (ii) until such time as such Second Lien Holder becomes party to the LLC Agreement, the Class B Preferred Units such Second Lien Holder is entitled to receive hereunder shall be held by Holdco in escrow as Escrowed Units (as defined in the LLC Agreement) in accordance with the LLC Agreement. SHC and the Administrative Agent also acknowledge that (x) Holdco shall have no obligation to deliver any Class B Preferred Units to any Second Lien Holder if the Class B Preferred Units have been cancelled prior to such delivery in accordance with the LLC Agreement and (y) certain Second Lien Holders may not receive any Class B Preferred Units due to the application of rounding requirements contained in the Allocation Procedure. SHC further acknowledges and agrees that Holdco may rely without independent verification on the verifications of ownership of Second Lien PIK Notes provided by the Second Lien PIK Note Holders in determining the allocation of the Class B Preferred Units. Each of the Administrative Agent and Holdco hereby agrees that (x) no Second Lien Holder shall be permitted to receive any Class B Preferred Units unless and until such Second Lien Holder has certified to Holdco that it is a Qualified Institutional Buyer, and (y) that a copy of each such certification shall be delivered by Holdco to SHC and the Administrative Agent promptly following receipt thereof by Holdco.

This letter agreement shall be construed in accordance with and governed by the laws of the State of New York.

[Signature Page to Follow]

**SEARS HOLDINGS CORPORATION**


By: _____
Name:
Title:


**JPP, LLC, solely in its capacity as Administrative Agent for the Second Lien Credit Agreement**


By: _____
Name: Edward S. Lampert
Title: Sole Member


**ACKNOWLEDGED AND AGREED:**
**TRANSFORM HOLDCO LLC**


By: _____
Name: Harold Talisman
Title: Vice President

# Exhibit E
## Specified Receivables Release

**[SEARS DEBTOR-IN-POSSESSION LETTERHEAD]**

[Date]

[ADDRESS 1
ADDRESS 2
CITY, STATE ZIP CODE
ATTN:  [NAME]]

Re:    *In re Sears Holdings Corp., et al.*, Ch. 11 Case No. 18-23538 (RDD); Sale of Specified
        Receivables under Asset Purchase Agreement

Ladies and Gentlemen:

        As you are aware, on October 15, 2018 (the "Petition Date"), Sears Holdings Corporation ("SHC")
and its wholly owned subsidiaries (collectively, the "Debtors"), filed petitions for voluntary relief under
chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy
Court for the Southern District of New York (the "Bankruptcy Court").  The chapter 11 cases are pending
before the Honorable Robert Drain.  We represent the Debtors in their above-referenced chapter 11 cases.

        Reference is made to the Asset Purchase Agreement, dated as of January 17, 2019, (as amended,
and as may be further amended, restated, supplemented or modified, from time to time, the "Asset Purchase
Agreement"), by and among the Debtors and Transform Holdco LLC, a Delaware limited liability company
("Buyer").  On February 8, 2019, the Bankruptcy Court entered the Order (I) Approving the Asset Purchase
Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and
Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of
Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief [D.I.
2507] (the "Sale Order") approving the Asset Purchase Agreement.  The sale of substantially all of Debtors'
assets to Buyer under the Asset Purchase Agreement was consummated on February 11, 2019 (the "Closing
Date").  The Debtors sold to Buyer, among other Acquired Assets,  certain accounts receivable of the Sellers
defined as Acquired Receivables, which include Specified Receivables.  *See* Asset Purchase Agreement at
35 (Section 2.1(d)).  Specified Receivables are defined as "the accounts receivable set forth on Schedule
1.1(k)." *Id.* at 31.

        We understand that you have requested information as to whether or not the accounts receivable
owed to the Debtors by your company have been purchased by Buyer pursuant to the Asset Purchase
Agreement.  By this letter, we are informing you that Buyer has purchased all of the Debtors' accounts
receivable owed by your company (the "Accounts Receivable").

        In furtherance of the foregoing, the Debtors, on behalf of themselves and all affiliates, successors
and assigns, acknowledge that Buyer purchased all Accounts Receivable due to the Debtors existing prior
to the Closing Date as Specified Receivables under the Asset Purchase Agreement, and hereby release,
waive, and discharge, to the fullest extent possible, any and all charges, complaints, claims, counterclaims,
liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action (including
actions for injunctive relief), suits, rights, demands, costs, losses, debts, expenses (including attorneys' fees,
legal expenses, and court costs), interests, and defenses of any nature whatsoever, known or unknown,
suspected or unsuspected, which the Debtors now have, had, or may hereafter claim to have had against
your company that are in any way related to your payment to Buyer of the Accounts Receivable.

If you have any questions concerning this letter, or the Buyer's purchase of Specified Receivables, you should contact [name] at Transform, who can be reached at [email address].

Sincerely,

_____

cc:    Luke Valentino, Transform Holdco LLC
        Sean O'Neal, Cleary Gottlieb Steen & Hamilton LLP

**Schedule 1 –**
**Litigation and Insurance Claims**

**Category 1: Claims Belonging to the Debtors**

|     | Store | Date of Loss |
| --- | --- | --- |
| 1. | 3593 Mount Pocono | 11/6/2007 |
| 2. | 1884 King of Prussia | 10/1/2010 |
| 3. | 35018 Nevada | 2/1/2012 |
| 4. | 9418 Rosedale | 10/29/2012 |
| 5. | 7134 Cortland | 8/8/2013 |
| 6. | 7622 Franklin | 2/14/2015 |
| 7. | 6347 Florida | 12/15/2015 |
| 8. | 6735 Orange Park | 1/8/2016 |
| 9. | 9520 Gulfport | 3/26/2016 |
| 10. | 1197 Houston | 5/12/2016 |
| 11. | 2195 Titusville | 9/1/2017 |
| 12. | 7190 | 9/5/2017 |
| 13. | 4490 Guaynabo | 9/20/2017 |
| 14. | 4340 Santa Rosa | 10/9/2017 |
| 15. | 2412 Rapid City | 11/3/2017 |
| 16. | 4159 Salt Lake City | 12/11/2017 |
| 17. | 7412 West Valley City | 12/31/2017 |
| 18. | 1844 Columbia | 2/16/2018 |
| 19. | 6212 Ann Arbor | 2/22/2018 |
| 20. | 1111 Colorado Springs | 8/3/2018 |
| 21. | 6735 Orange Park | 11/4/2018 |
| 22. | 3527 Philadelphia | 11/16/2018 |
| 23. | 1250 Lincoln Park | 2/2/2019 |
| 24. | 45575 Stockton | 7/24/2019 |
| 25. | 45575 Stockton | 2/23/2020 |
| 26. | 1915 Bayamon | 9/21/2017 |
| 27. | 4026 St Joseph | 1/11/2018 |

**Confidential**                                                                                                1

|     | Store | Date of Loss |
|-----|-------|--------------|
| 28. | 2911 Bayamon | 2/8/2018 |
| 29. | 2805 Panama City [L] | 10/10/2018 |
| 30. | 2805 Panama City [S] | 10/10/2018 |
| 31. | 3424 Gainesville | 12/7/2018 |
| 32. | 1300 Oak Brook | 1/21/2019 |

**Category 2: Claims Belonging to Transform**

|     | Store | Date of Loss |
|-----|-------|--------------|
| 1. | 1528 San Rafael | 12/24/2006 |
| 2. | 5230 Livonia | 12/27/2014 |
| 3. | 4612 Livonia | 12/27/2014 |
| 4. | 8830 Livonia | 12/28/2014 |
| 5. | 1228 Sacramento | 1/1/2015 |
| 6. | 1012 Des Moines | 12/13/2015 |
| 7. | 1307 Abilene | 12/8/2016 |
| 8. | 1217 Corpus Christi | 4/6/2017 |
| 9. | 1634 Baltimore | 5/3/2017 |
| 10. | 1354 Willow Grove | 8/24/2017 |
| 11. | 6444 Lake Grove | 9/3/2017 |
| 12. | 9224 Marathon | 9/10/2017 |
| 13. | 4494 Trujillo Alto | 9/20/2017 |
| 14. | 7768 Guaynabo | 9/20/2017 |
| 15. | 7566 Arecibo | 9/21/2017 |
| 16. | 7570 Bayamon | 9/21/2017 |
| 17. | 2151 St Croix | 9/21/2017 |
| 18. | 2675 Guayama | 9/21/2017 |
| 19. | 3972 St Croix | 9/21/2017 |
| 20. | 1925 Carolina | 9/21/2017 |
| 21. | 1364 Lake Grove | 10/30/2017 |
| 22. | 1171 Springfield | 11/29/2017 |

|     | Store | Date of Loss |
|-----|-------|-------------|
| 23. | 1248 Hayward | 2/7/2018 |
| 24. | 3972 St Croix | 2/10/2018 |
| 25. | 1224 Harrisburg | 3/25/2018 |
| 26. | 1008 Los Angeles | 6/4/2018 |
| 27. | 58491 Hoffman Estates | 7/26/2018 |
| 28. | 7570 Bayamon | 8/20/2018 |
| 29. | 3266 Kingston | 9/13/2018 |
| 30. | 1570 Schaumburg | 9/15/2018 |
| 31. | 1041 Omaha | 10/4/2018 |
| 32. | 1217 Corpus Christi | 10/19/2018 |
| 33. | 1304 Silver Spring | 10/28/2018 |
| 34. | 1377 Houston | 11/3/2018 |
| 35. | 1024 Fall Church | 11/9/2018 |
| 36. | 7413 St Croix | 11/11/2018 |
| 37. | 1668 Las Vegas | 11/13/2018 |
| 38. | 7329 Loveland | 11/27/2018 |
| 39. | 6854 Hackensack | 12/10/2018 |
| 40. | 4381 Bridgeview | 12/28/2018 |
| 41. | 1460 Livonia | 1/2/2019 |
| 42. | 6023 Nashua | 1/4/2019 |
| 43. | 9413 West Orange | 1/15/2019 |
| 44. | 2060 Dayton | 1/28/2019 |
| 45. | 6216 Fort Lauderdale | 3/11/2019 |
| 46. | 3471 Chesapeake | 3/15/2019 |
| 47. | 7570 Bayamon | 5/6/2019 |
| 48. | 2203 Brunswick | 5/8/2019 |
| 49. | 1008 Los Angeles | 5/13/2019 |
| 50. | 8273 Lawrence | 5/20/2019 |
| 51. | 9423 Bridgehampton | 5/24/2019 |
| 52. | 45056 Rio Piedras | 6/2/2019 |

**Confidential**                                                                                          3

|     | Store | Date of Loss |
| --- | --- | --- |
| 53. | 1853 Wilmington | 6/7/2019 |
| 54. | 8147 San Antonio | 6/11/2019 |
| 55. | 6033 Braintree | 6/13/2019 |
| 56. | 4206 Warren | 6/27/2019 |
| 57. | 7083 New Castle | 6/27/2019 |
| 58. | 9413 West Orange | 7/1/2019 |
| 59. | 7383 Barberton | 7/2/2019 |
| 60. | 4871 Farmingville | 7/5/2019 |
| 61. | 7083 New Castle | 7/21/2019 |
| 62. | 7631 Arlington | 8/5/2019 |
| 63. | 6755 Tampa | 8/7/2019 |
| 64. | 2175 Greenville | 8/9/2019 |
| 65. | 7139 Jackson | 8/12/2019 |
| 66. | 9589 Bath | 8/24/2019 |
| 67. | 1224 Harrisburg | 8/29/2019 |
| 68. | 1495 Fort Myers | 8/30/2019 |
| 69. | 5557 Auburn | 9/7/2019 |
| 70. | 1570 Schaumburg | 9/20/2019 |
| 71. | 9220 Algona | 9/24/2019 |
| 72. | 7749 New York | 9/27/2019 |
| 73. | 9394 Fajardo | 10/4/2019 |
| 74. | 2605 State College | 10/11/2019 |
| 75. | 5230 Livonia | 10/16/2019 |
| 76. | 1007 Brandon | 11/3/2019 |
| 77. | 7192 Easton | 11/6/2019 |
| 78. | 1081 Heath | 12/11/2019 |
| 79. | 9423 Bridgehampton | 12/12/2019 |
| 80. | 3949 Wind Gap | 12/13/2019 |
| 81. | 9413 West Orange | 12/16/2019 |
| 82. | 8289 Manteno | 12/19/2019 |

**Confidential**

|     | Store | Date of Loss |
|-----|-------|--------------|
| 83. | 2395 Manassas | 12/26/2019 |
| 84. | 1283 Braintree | 12/26/2019 |
| 85. | 1748 Montclair | 1/31/2020 |
| 86. | 49027 Round Rock | 2/14/2020 |
| 87. | 1700 Dearborn | 2/17/2020 |
| 88. | 45168 Winter Park | 2/29/2020 |

**<u>Schedule 2</u>**

**Legal**

| | | Rate ($) | Task |
|---|---|---|---|
| Custodian A (Senior Paralegal) | Claims & litigation | 34 | Void letters, discovery, lawsuit support |
| Custodian B (Paralegal Manager) | Claims & litigation | 48 | Void letters, discovery, lawsuit support |
| Custodian C (Assistant General Counsel) | Claims & litigation | 80 | Lawsuit management |
| Custodian D | Legal Ops | 65 | Management of invoicing and payment for OCPs |
| Custodian E | Claims & litigation | 30 | Review and opening of lawsuits |
| Custodian F (Senior Counsel) | Claims & litigation | 58.5 | Lawsuit management |
| Custodian G | General corporate | 37.5 | Processing of RX committee retainers; legal entity management |

**Accounting**

| | | Rate ($) | Task |
|---|---|---|---|
| Custodian H | Accounting | 105 | AP support and reconciliation |
| Custodian I | Accounting | 62 | Preference claim support |
| Custodian J | Accounting | 61 | Import AP and bank reconciliations |
| Custodian K | Accounting | 70 | Rent support |
| Custodian L (Senior Director) | Accounting | 97 | MORs |
| Custodian M (Manager, Accounting) | Other support | 70 | MOR support |
| Custodian N (Director, Business Finance) | Accounting | 70 | MOR and general accounting support |
| Custodian O | Accounting | 60 | Pension plan matters |

**Tax**

| | | Rate ($) | Task |
|---|---|---|---|
| Custodian P | Sales tax audits | 50 | Support for sales and use tax audits |
| Custodian Q | Tax legal | 76 | Legal support for tax audits; bankruptcy tax claims reconciliations and objections |

| | | | |
|---|---|---|---|
| Custodian R (Manager, Tax) | Federal tax return | 56 | Preparation of federal tax return; annual reports; etc. |
| Custodian S (VP, Tax) | | 125 | Preparation of federal tax return; annual reports; etc. |
| Custodian T | State tax returns | 38 | Preparation of state tax returns; annual reports; audit support; etc. |

## Cash Management

| | | Rate ($) | Task |
|---|---|---|---|
| Custodian U | Treasury | 37 | General account maintenance |

## HR

| | | Rate ($) | Task |
|---|---|---|---|
| Custodian V | Savings plan | 78 | Windown of Sears Savings Plan |
| Custodian W | Health & welfare plans | 78 | Windown of Sears Health & Welfare Plans |
| Custodian X | Payroll tax & reporting | 60 | W2 processing; managing withholding and unemployment accounts |

## Risk

| | | Rate ($) | Task |
|---|---|---|---|
| Custodian Y | Risk | 51 | Management of property claims |

## Environmental

| | | Rate ($) | Task |
|---|---|---|---|
| Custodian Z | Environmental | 64 | Processing of invoices |

### Schedule 3 –
### Transition Vendor Claims

REDACTED



**<u>Schedule 4 –</u>**
**<u>Transform Wire Information</u>**



**Exhibit 2**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
---------------------------------------------------------------x
                                              :
In re                                         :      Chapter 11
                                              :
SEARS HOLDINGS CORPORATION, et al.,           :      Case No. 18-23538 (RDD)
                                              :
           Debtors.¹                          :      (Jointly Administered)
                                              :
---------------------------------------------------------------x
```

## ORDER APPROVING SECOND APA SETTLEMENT AGREEMENT BETWEEN THE DEBTORS AND TRANSFORM HOLDCO LLC

Upon the motion, dated September 17, 2020 (ECF No. [___]) (the "**Motion**")[2] of

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the

above-captioned chapter 11 cases (collectively, the "**Debtors**"), for entry of an order pursuant to

Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") approving

the Settlement Agreement, dated as of September 17, 2020 (the "**Second APA Settlement**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is c/o M-III Partners, L.P., 130 West 42nd St., 17th Floor, New York, NY 10036.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

1

**Agreement**") entered into by the Debtors and Transform Holdco LLC ("**Transform**"); and the

Court having jurisdiction to decide the Motion and the relief requested therein pursuant to 28

U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated

January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a

core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant

to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief sought in the Motion and

the opportunity for a hearing thereon having been provided in accordance with the Amended Case

Management Order; and such notice having been adequate and appropriate under the

circumstances and it appearing that no other or further notice need be provided; and the Court

having held a hearing to consider the relief requested in the Motion on October 15,  2020 (the

"**Hearing**"); and upon the record of the Hearing, and upon all of the proceedings had before the

Court; and the Court having determined that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein in that the Second APA Settlement Agreement is

a fair and reasonable compromise of the issues resolved thereby in the light of the risks, costs and

delay of continued litigation, considerations of enforcement of any litigated resolution, and the

arms-length nature of the parties, and, therefore, such relief is in the best interests of the Debtors,

their estates, their creditors, and all parties in interest; and after due deliberation and sufficient

cause appearing therefor,

### IT IS HEREBY ORDERED THAT:

1.      The relief requested in the Motion is granted.

2.      Pursuant to Bankruptcy Rule 9019(a), the Second APA Settlement

Agreement is approved.

3.      The Debtors and Transform are authorized to take any action as may be necessary or appropriate to implement, effectuate, and fully perform under the Second APA Settlement Agreement in accordance with this Order, including without limitation to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement, effectuate, and fully perform under the Second APA Settlement Agreement in accordance with this Order.

4.      Any automatic 14-day stay of this Order that might apply under the Bankruptcy Rules is waived, for cause, and this Order is effective immediately upon its entry.

5.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2020
       White Plains, New York

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE