WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett Fail
Jared R. Friedmann
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
: 
In re                                                       :    **Chapter 11**
                                                            :
**SEARS HOLDINGS CORPORATION,** *et al.*,                   :    Case No. 18-23538 (RDD)
                                                            :
Debtors.[1]                                                 :    **(Jointly Administered)**
                                                            :
------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is c/o M-III Partners, L.P., 130 West 42nd St., 17th Floor, New York, NY 10036.

<u>**DECLARATION OF BRIAN J. GRIFFITH**</u> – Page 1

**DECLARATION OF BRIAN J. GRIFFITH
IN SUPPORT OF THE DEBTORS' MOTION PURSUANT TO FEDERAL
RULE OF BANKRUPTCY PROCEDURE 9019(a) FOR ENTRY OF AN ORDER
APPROVING SECOND APA SETTLEMENT AGREEMENT WITH
TRANSFORM HOLDCO LLC**

I, Brian J. Griffith, make this declaration under 28 U.S.C. § 1746:

1. I submit this declaration ("**Declaration**") in support of the *Debtors' Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019(a) for Entry of an Order Approving Second APA Settlement Agreement with Transform Holdco LLC* ("**Motion**"), filed concurrently with this Declaration.[2]

2. I have been a Managing Director of M-III Advisory Partners, LP ("**M-III**") for the past five years. As Managing Director at M-III, I am responsible for leading deal teams where we are retained by either creditors or debtors. Assignments range from operational improvement to distressed situations both in and out of court. Depending on the assignment, deal responsibilities range from short-term profit improvement roles to multi-year turnaround advisory assignments in numerous industries, including: retail, financial services, real estate development, healthcare, energy, consumer products, manufacturing, automotive, and food services. Typical areas of focus on debtor engagements are treasury, cash forecasting, process improvement, cost reductions, development of strategic alternatives, and negotiations with creditors and parties-in-interest. Prior to my current role with M-III, I served in interim management roles, including as a chief financial officer and chief restructuring officer.

3. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge of the Debtors' operations and finances gleaned during the course

---

[2] All capitalized terms not otherwise defined in this Declaration shall have the meanings ascribed to them in the Motion.

of my engagement with the Debtors; my discussions with other members of the M-III team and the Debtors' other advisors; my review of relevant documents; and my views based upon my experience.  If called to testify, I would testify competently to each of the facts set forth in this Declaration.  I am authorized to submit this Declaration on behalf of M-III for the Debtors.

4.      I have been intimately involved in the APA disputes since their inception shortly after the Closing of the APA in February of 2019.  In January 2020, the Debtors and Transform obtained Court approval of the First APA Settlement Agreement.  Almost immediately thereafter, the Parties began negotiating a second series of disputes related to the construction and interpretation of the APA.

5.      With respect to the Second APA Settlement Agreement, I have taken a lead role in close coordination with Debtors' counsel at Weil Gotshal to assess litigation and insurance claims, tax obligations to certain foreign jurisdictions, claims arising from disputes with Seritage, and certain intellectual property disputes on behalf of the Debtors.

6.      The Second APA Settlement Agreement is the outcome of extensive arm's length, good-faith negotiations amongst the Debtors and Transform and their respective advisors.  Over the course of several months, the Parties and their advisors participated in numerous teleconferences and Zoom meetings and exchanged substantial correspondences in an effort to resolve outstanding APA issues.

7.      After several rounds of negotiation, the Parties arrived at an agreement concerning the principal terms of a settlement of the Additional APA Disputes.  Those terms are reflected in the Second APA Settlement Agreement attached to the Motion as Exhibit 1.  I, along with the Debtors' other advisors, consulted with and received the approval of the Restructuring

Committee on the principal terms of the Second APA Settlement Agreement and, on September 11, 2020, received agreement from the Creditors' Committee to such terms.

8. The Debtors, acting through their independent Restructuring Committee and their advisors and with the support of the Creditors' Committee, concluded that the Second APA Settlement Agreement is fair and equitable, reasonable, and in the best interests of the Debtors' estates.

9. *First*, under the Second APA Settlement Agreement, the Debtors will recover approximately $2.6 million in reimbursements for taxes, casualty payments, and employee costs ($358,000 related to the Mexican Gains Tax, $125,000 related to the 2019 BPP Taxes, $1.9 million related to the Seritage Reimbursement Funds, and $240,000 related to the SHC-Israel Employee Costs). The Debtors will also secure their right, title, and interest in, to, and under several litigation and insurance claims (the Litigation and Insurance Claims, Altaquip Claims, and Vornado Claims) worth millions of dollars. And while the Debtors have agreed in the Second APA Settlement Agreement that they owe Transform (i) approximately $1 million for services rendered by Transform under the Transition Services Agreement and (ii) $61,000 in Sedgwick Fees, the Debtors' recovery in connection with the Second APA Settlement Agreement allows the Debtors to settle those payment obligations without ever having to draw upon their own bank accounts, thereby preserving funds for eventual distribution to the estates' creditors.

10. *Second*, should the Parties ultimately have to litigate the Additional APA Disputes, such litigation would likely be expensive and protracted and would divert the Debtors' and their advisors' resources and attention away from implementing an efficient wind-down of the Debtors' estates and prosecuting the valuable Preserved Causes of Action for the benefit of the Debtors' creditors. The protracted and contentious course of the APA Litigation, presages the

long, time-consuming, and contentious path ahead if the Parties are not able to settle the Additional APA Disputes. Because the Second APA Settlement Agreement resolves, fully and finally, the Additional APA Disputes, it eliminates any burdens and expenses that would be associated with the litigation of those disputes before the Court and allows the Debtors and their advisors to redirect their resources and attention to winding down the Debtors' estates and progressing toward the Effective Date.

11. **Third**, given the complexity of the Additional APA Disputes, the Debtors cannot be certain of the outcome of any litigation of claims arising out of the Additional APA Disputes. Although the Debtors submit that that their interpretation of the APA is correct, Transform disagrees with their interpretation and the Debtors have no assurance that the Bankruptcy Court will agree with the Debtors' interpretation. Accordingly, the Second APA Settlement Agreement's value is well within the range of reasonableness. Moreover, given the uncertainties inherent in any litigation, by fully and finally resolving the Additional APA Disputes, the Second APA Settlement Agreement eliminates the risk of loss associated with potential litigation of those disputes, and importantly eliminates the costs associated with litigating each individual issue, and guarantees a recovery for the Debtors' estates now.

12. **Fourth**, the proposed settlement is the product of significant effort—over the course of many months—to resolve the Debtors' and Transform's outstanding disputes. If approved, the Second APA Settlement Agreement would, again, fully and finally resolve these disputes and any claims arising from them, permitting the Debtors, the Restructuring Committee, the Creditors' Committee, and their advisors to focus resources and attention on other claims and claimants and move toward consummation of the Plan.

13. **Fifth**, the Parties are represented by sophisticated and experienced professionals—highly regarded law firms and financial advisors with significant restructuring, litigation, and other relevant experience. The Debtors' professionals, for their part, have been analyzing, discussing, and litigating these APA-related issues with Transform and its professionals for more than six months and fully understand the difficulties of successfully concluding APA-related litigation (having done so once before). Accordingly, the Debtors' professionals fully understand the potential consequences to creditors of the estates if the Second APA Settlement Agreement is not consummated and have recommended that the Debtors enter into the Second APA Settlement Agreement.

14. **Sixth**, the releases are appropriate and narrowly tailored in scope to the Additional APA Disputes. The release provision does not affect, and expressly carves out, all other disputes between the Parties, including the estates' adversary proceeding against ESL and certain other parties (Adv. Pro. No. 19-08250-rdd).

15. **Finally**, the Second APA Settlement Agreement is the product of arm's-length negotiations between the Debtors and Transform, as well as the reasoned judgment of the experienced Restructuring Committee and the Creditors' Committee.

Dated: September 17, 2020  
New York, New York

By: **/s/ Brian J. Griffith**  
Brian J. Griffith  
Managing Director  
M-III Advisory Partners, LP