Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 18-23538-rdd

4

5   - - - - - - - - - - - - - - - - - - -x

6

7   In the Matter of:

8

9   SEARS HOLDINGS CORPORATION,

10

11            Debtors.

12

13   - - - - - - - - - - - - - - - - - - -x

14   Vir VENTURES, ET AL.,

15

                 Plaintiffs,

16

       VS.                        Adv. No. 19-08700-RDD

17

   SEARS HOLDINGS CORPORATION,

18

                 Defendant.

19   - - - - - - - - - - - - - - - - - - - - - - - - - x

20

21            United States Bankruptcy Court

22            300 Quarropas Street, Room 248

23            White Plains, New York

24

25

Page 2

1                    February 24, 2020

2                      10:16 AM

3

4    B E F O R E:

5    HON. ROBERT D. DRAIN

6    U.S. BANKRUPTCY JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1 | Notice of Agenda of Matters Scheduled for Hearing on

2 | February 24, 2020 at 10:00 a.m.

3 |

4 | HEARING RE:  Adversary proceeding: 19-08700-rdd, Vir

5 | Ventures, Inc., et al v Sears Holdings Corporation, Pre-

6 | trial Conference.

7 |

8 | HEARING RE:  Adversary proceeding: 19-08700-rdd, Vir

9 | Ventures, Inc., et al v Sears Holdings Corporation, Motion

10 | to Adjourn Adversary Proceeding or for an Extension of Time

11 | to Answer or Otherwise Respond to Plaintiffs' Adversary

12 | Complaint (related Document(s) 5).

13 |

14 | HEARING RE: Administrative Claims Consent Program.

15 |

16 | HEARING RE:  Motion to Allow Relief from Amended Stipulated

17 | Protective Order fled by Sonia E. Colon on behalf of Santa

18 | Rosa Mall, LLC (ECF 7210).

19 |

20 | HEARING RE:  Motion to Approve/Second Motion for Orders

21 | Establishing Streamlined Procedures Governing Adversary

22 | Proceedings Brought by the Debtors Pursuant to Sections 502,

23 | 547, 548 and 550 of the Bankruptcy Code (ECF 7204).

24 |

25 |

1    HEARING RE: Motion to Authorize/Motion of Debtors Requesting

2    Release of Adequate Assurance Deposit Amounts Pursuant to

3    the Adequate Assurance Procedures (ECF 7290).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Transcribed by:  Pamela Skaw, Nicole Yawn and

25                Jamie Gallagher

1   A P P E A R A N C E S :

2   WEIL GOTSHAL & MANGES LLP

3          Attorneys for Sears Holdings Corp.

4          and Affiliated Debtors

5          767 Fifth Avenue

6          New York, NY 10153

7

8   BY:  GARRETT FAIL, ESQ.

9          JACQUELINE MARCUS, ESQ.

10         ANGELINE HWANG, ESQ.

11         JENNIFER BROOKS COZIER, ESQ.

12

13  FOLEY & LARDNER LLP

14         Attorney for Priority Claimant

15         90 Park Avenue

16         New York, NY 10016

17

18  BY:  PAUL LABOV, ESQ.

19

20  AKIN GUMP STRAUSS HAUER & FELD LLP

21         Attorney for UCC

22         One Bryant Park

23         New York, NY 10036

24

25         BY: SARA L. BRAUNER, ESQ.

Page 6

1    FERRAIUOLI LLC

2        Attorney for Gustavo Chico, Santa Rosa Mall, LLC

3        And Carlos Rios Gautier

4        Bank of America Building

5        390 North Orange Avenue

6        Suite 2300

7        Orlando, FL 32801

8

9    ALSO PRESENT:

10   SELEN MAZER PAYMER (ph)

11   NEVILLE N. REED, ESQ. (TELEPHONIC)

12   LUCAS SCHNEIDER, ESQ. (TELEPHONIC)

13   SHARON C. BRITTON, ESQ. (TELEPHONIC)

14   LIGEE GU, ESQ. (TELEPHONIC)

15   DALE MENENDEZ, ESQ. (TELEPHONIC)

16   CARLOS RIOS GAUTIER, ESQ. (TELEPHONIC)

17

18

19

20

21

22

23

24

25

1                 P R O C E E D I N G S

2             THE CLERK:   All rise.

3             THE COURT:   Please be seated.   Okay.   Good morning.

4     In re Sears Holdings Corporation, et al.

5             MS. CROZIER:   Good morning, Your Honor.

6             The first item on the agenda is the initial pre-

7     trial conference in Vir Ventures, et al. against Sears

8     Holdings Corporation, number 19-08700.

9             THE COURT:   Okay.

10            MS. CROZIER:   Jennifer --

11            THE COURT:   And related to that is Sears Holdings

12    Corporation's motion to adjourn or alternative for an

13    extension of time to answer.

14            So why don't we take both of those matters

15    together?

16            MS. CROZIER:   Thank you, Your Honor.

17            Jennifer Crozier, Weil Gotshal & Manges for the

18    Debtors.

19            Your Honor, the Debtors move to adjourn or stay

20    this adversary proceeding or, in the alternative, for an

21    extension of time to respond to Plaintiffs' complaint.

22            The Plaintiffs are litigating their administrative

23    expense claims in three separate contexts forcing the

24    Debtors to contend against those claims on three separate

25    fronts and expend the limited resources of the estate in so

Page 8

1    doing to the detriment of the estate's other creditors.

2           The Plaintiffs, on November 12, 2019, filed their

3    adversary complaint asserting several claims based, in

4    pertinent part, on allegations that the Debtors breached

5    certain Sears' market place agreement.

6           The complaint seeks $790,000 approximately with

7    respect to pre-petition amounts and $95,000 approximately

8    with respect to post-petition amounts.

9           Now, before they filed their adversary complaint,

10   Plaintiffs filed six proofs of claim.  In August 2019, the

11   Debtors objected to these claims seeking to reclassify those

12   general unsecured claims.

13           THE COURT:  Because they were filed as 503(b)(9)?

14           MS. CROZIER:  Correct.

15           THE COURT:  Claims.

16           MS. CROZIER:  The Plaintiffs responded and those

17   claims are now the subject of a pending contested matter.

18           And then six days after they filed their adversary

19   complaint, Plaintiffs affirmatively opted in to the

20   administrative expense claims consent program by submitting

21   two opt-in ballots; the first on behalf of Plaintiff AMI for

22   approximately $700,000.  That covered both pre and post-

23   petition amounts.  And the second Plaintiff, Vir Ventures,

24   for approximately $185,000; again covering both pre and

25   post-petition amounts.

1          So, Your Honor, the Debtors ask this Court to

2     adjourn this proceeding until Plaintiffs' administrative

3     expense claims have been resolved in connection with the

4     pending contested matter and the administrative expense

5     claims consent program.  These are the contexts approved by

6     this Court in the confirmation order and the omnibus

7     objection procedures for the orderly and efficient

8     resolution of claimants' administrative expense claims.

9          This adversary proceeding is decidedly not the

10    proper context in which to litigate Plaintiffs'

11    administrative expense claims.

12         First, the pre-petition amounts the Plaintiffs are

13    seeking amount to a claim for money damages based on pre-

14    petition conduct which is not properly brought as an

15    adversary proceeding under the law and that's In Re Ephedra

16    Products Liability Litigation, Southern District of New

17    York, 2005.

18         Second, Your Honor, the Debtors' position is that

19    Plaintiffs waived their right to recover on their

20    administrative expense claims in the adversary context when

21    they opted-in, affirmatively opted-in, to the administrative

22    expense claims consent program.  But, at the very least,

23    their participation in that program moots their claim for

24    relief as to post-petition amounts in connection with this

25    adversary proceeding.

1          At bottom, Your Honor, Plaintiffs' adversary

2     proceeding amounts to an end run around the orderly and

3     efficient procedures that this Court approved to ensure that

4     all creditors of the estate are treated fairly and

5     equitably.

6          Now Plaintiffs make a few arguments in their

7     opposition to the Debtors' motion to adjourn that I would

8     like to briefly address.

9          First, Plaintiffs claim that this adversary

10    proceeding is not simply a claim for money damages based on

11    pre-petition conduct.  Plaintiffs argue we've asserted

12    claims for equitable relief as well.

13         First of all, for reasons that the Debtors would

14    make clear in a motion to dismiss should it come to that,

15    Your Honor, Plaintiffs have not and cannot state a claim for

16    equitable relief here.

17         But even if that were not the case, this Court held

18    in In Re Johns Manville 1985 that if the claim -- if the

19    equitable claim is one that can be reduced to a money

20    judgment, that is -- is effectively a claim for money

21    damages masquerading as equitable relief, it must be

22    asserted in connection with the orderly claims process.

23         THE COURT:  But that's a -- that's true as a

24    general proposition but there are two claims in this

25    complaint that, to me, do seek relief that would be proper

Page 11

1    as an adversary proceeding.

2            First, the declaration or recognition of an express

3    trust and, second, the imposition of a constructive trust.

4    That's not something you would normally litigate, I believe,

5    in a claim objection.

6            It's affirmative relief that's being sought

7    separate and apart from a claim.  It's basically saying this

8    isn't property of the estate.

9            MS. CROZIER:  Right.  So a couple of things on

10   that, Your Honor.

11           The Debtors are prepared to litigate those claims

12   for equitable relief in connection with a motion to dismiss

13   if need be.  But we would submit that addressing Plaintiffs'

14   administrative expense claims -- Plaintiff submitted -- each

15   Plaintiff submitted one ballot and that ballot covers both

16   pre and post-petition.  Now those ballots include the

17   amounts Plaintiffs are seeking as equitable relief.

18           And so we would submit that because these are

19   orderly and -- an orderly and efficient manner of addressing

20   Plaintiffs' claims that we should adjourn this adversary

21   proceeding until those claims are resolved and then

22   determine whether it's appropriate to move forward on those

23   claims.  That's the first argument.

24           The second argument is, again an argument that we

25   would anticipate making in a motion to dismiss, Plaintiffs'

1    haven't and can't state a claim for breach of express trust.

2    It's not enough to simply say in -- under the law, it's not

3    enough to simply say in a contract --

4            THE COURT:  But that may be the case.

5            MS. CROZIER:  Okay.

6            THE COURT:  But why wouldn't the right thing to do

7    here be to consolidate those two claims under Rule 7042 with

8    the pending claim objection so it's all dealt with at once

9    and then set a deadline to answer or otherwise move on just

10   those two?

11           I mean, the -- I agree with you on the other

12   claims.  They're -- it's just another way of saying we have

13   a claim as opposed to a separate claim for relief to

14   establish a trust either actual or constructive.

15           MS. CROZIER:  So, just so I understand what Your

16   Honor is proposing, you would propose to consolidate the

17   claims for equitable relief with the pending contested

18   matter?

19           THE COURT:  The two -- well, I'm not sure -- I want

20   to be specific.  The claim for express trust and the claim

21   for a constructive trust.

22           The other claims, the other causes of action, to

23   me, are already being dealt with in the claims objection

24   process and properly so.  They're not -- they are not the

25   proper subject of the Rule 7001 adversary proceeding.

1           MS. CROZIER:  So I would defer to my colleague in

2    bankruptcy concerning how to consolidating these claims with

3    the pending contested matter.

4           THE COURT:  Okay.

5           MR. FAIL:  Good morning, Your Honor.

6           Garrett Fail of Weil Gotshal & Manges, if I may

7    address the Court on this issue.

8           THE COURT:  Right.

9           MS. FAIL:  So the objections that are filed with

10   respect to the current claims of the administrative and the

11   pre-petition portions are a part of omnibus objections.

12          The Debtors adjourned that omnibus objection.  We

13   filed the thirteenth omnibus objection to a hundred other

14   claims with the same issues so that they could all be

15   addressed.  There was a reason that we've consistently, you

16   know, efficiently moved these cases forward and I'll present

17   more of an update on the claims later.

18          So I don't think it necessarily makes sense to

19   combine them.

20          Also Your Honor will recall you set up claims

21   objections procedures whereby legal issues would be

22   determined first before factual issues.

23          So, while we agree, and I think Ms. Crozier

24   suggested and our pleadings suggested, that this be handled

25   in connection with the claims process and without an

Page 14

1     adversary proceedings, the additional time delay and cost of

2     an adversary.  I think the objections can be dealt with

3     separately.  They're on track.  They'll go forward.  That

4     issue will be resolved.

5          The remaining claims can be dismissed either, in

6     our opinion, in a motion or in the adversary.  It doesn't --

7     we're just trying to do it efficiently.

8          But I don't think it makes sense to delay or

9     combine this new equitable relief with the question of

10    whether they're entitled to a claim.

11         They filed claims and they submitted ballots.

12    They've asked for a claim.  Now they're asking for equitable

13    relief on top.

14         I think we should address the claim first and

15    equitable relief afterwards and I think it's an admission

16    essentially when they filed two claims, they submitted

17    ballots.  They have claims.

18         THE COURT:  Well are you saying that they're barred

19    from asserting a trust?

20         MR. FAIL:  We've asked for additional time to

21    respond.  And so if we have -- if they continue to, you

22    know, prosecute the adversary after -- they might win,

23    right?

24         We -- the objection is pending.  Your Honor hasn't

25    decided whether or not they have an administrative claim.

Page 15

1          If they have a claim, this adversary's moot.  They

2     get a hundred cents.  They're not going to get additional

3     monies.  They're looking for the same amount.

4          THE COURT:  Well it's the other way around, too,

5     right?  If they have a trust, it -- yeah, the claim

6     objection is moot.

7          MR. FAIL:  Sure.  But one's already been pending

8     and subject to -- so it's been responded to and, you know,

9     it --

10         THE COURT:  I just don't see why it's that big a

11    deal to include a motion to dismiss or a motion for judgment

12    on the pleadings on the two trust claims as part of your

13    objection to the claim.

14         MR. FAIL:  Well, we can add another objection, Your

15    Honor.  We'll just need a little bit more time to do it and

16    we'll file a separate objection.

17         But the one that's currently pending was with

18    respect to the same request for the same amounts but in a

19    different form.  So we didn't have that pending when we set

20    an objection.

21         THE COURT:  I understand that.  And so it -- I

22    think the need to extend the time to answer and to schedule

23    it in coordination with or combine it.

24         UNIDENTIFIED SPEAKER:  Your Honor, if I may.  I am

25    here.  I'm counsel for --

1          THE COURT:  Okay.  I want to get the Debtors' view

2    first under Rule 7042, it makes sense.  And I appreciate

3    that there are a lot of common issues, common to a lot of

4    claimants, generally.

5          But, just in terms of efficiently dealing with

6    these particular claims --

7          MR. FAIL:  We wouldn't want to delay, Your Honor,

8    everybody else.  I think Your Honor --

9          THE COURT:  No.

10         MR. FAIL:  -- has asked us to move forward.

11         THE COURT:  I agree with you.

12         MR. FAIL:  We'll move forward to dismiss these.  We

13   think that they're frivolous at best.

14         THE COURT:  Okay.  All right.  Anything else?

15         MS. CROZIER:  So there were just a couple of other

16   things that I'd like to address, Your Honor.

17         With respect to the opposition to our motion to

18   adjourn, Plaintiffs' counsel indicated that there's no cause

19   for delay here because heretofore the settlement process has

20   been minimal.

21         Counsel for the Debtors have engaged in several

22   conversations and substantial correspondence with Plaintiffs

23   in an effort to reach an amicable and expeditious resolution

24   of their claims and to avoid depleting the pool of resources

25   available to the estate's other creditors to no avail

Page 17

1   because here we are.  For example, Your Honor, Plaintiffs,

2   on Friday, served us with an improper 30(b)(6) notice of

3   deposition delineating no fewer than 24 topics; improper, of

4   course, because the parties haven't met and conferred yet

5   pursuant to Rule 26(f).

6          Second, Plaintiffs filed, last night at 12:27 a.m.

7   I think, a motion to set aside $885,000, a reserve from the

8   second distribution, claiming that the Debtors' negotiations

9   thus far have been "our way or the highway" and if what

10  Plaintiffs' counsel means by that is that Debtors have

11  expressed an unwillingness to pay Plaintiffs any more than

12  they are owed under the law and any more than the orderly

13  procedures established by this Court or approved by this

14  Court for the settlement of their claims, then I suppose, in

15  that case, Plaintiff is correct.

16         But we do submit, Your Honor, that at least with

17  respect to the claims that are without question not properly

18  brought in connection with an adversary proceeding

19  (indiscernible) adjourn this and give the Debtors

20  substantially more time to respond.

21         THE COURT:  Okay.  I'm confused though.  I -- my

22  order confirming the plan contemplated a report and I

23  believe a motion or an opportunity to object at least if

24  there was going to be any distribution, right?

25         MR. FAIL:  No, Your Honor, I don't believe that

1   there was.  I think last time, you may remember, pleadings

2   were filed because we announced that we were making a

3   distribution and then the rest ensued.

4            But I don't believe that there is a -- we don't

5   need to make another motion.  I think that there are minimum

6   conditions that need to be satisfied.

7            THE COURT:  Right.  I don't think that's right.  I

8   think there's some notice requirement.

9            MR. FAIL:  Sure.  Notice.  But not a -- no hearing.

10           THE COURT:  No, a notice requirement.

11           MR. FAIL:  Yeah.

12           THE COURT:  And people can object.

13           MR. FAIL:  Yeah.  We'll file a notices in advance.

14           THE COURT:  So is this -- was this pleading filed

15   last night in response to a notice?

16           MR. FAIL:  Not at all, Your Honor.

17           THE COURT:  So why are we wasting time on this?

18   It's a total waste of time.  Disregard that pleading.  It

19   should be withdrawn.  Okay.

20           MS. CROZIER:  That's all I have, Your Honor.  Thank

21   you.

22           THE COURT:  All right.

23           MS. PAYMER:   May I, Your Honor?

24           THE COURT:  Yes.

25           MS. PAYMER:  Your Honor, my name is

Page 19

1    Selen Mazer Paymer (ph).  I'm here on behalf of Vir Ventures

2    and AMI Ventures.

3              Your Honor, we did, in fact, file a motion last

4    night.

5              Our concern is, Your Honor, that we're not being

6    given the opportunity to be heard and to have this Court

7    determine the merits of our claims objection, our response

8    to the second omnibus claims objection as well as our

9    adversary proceeding, Your Honor.  I --

10             THE COURT:  But motion is to set aside money?

11             MS. PAYMER:  It is, Your Honor.  We're

12   concerned --

13             THE COURT:  Well -- but what's the -- why?  What

14   the context?

15             MS. PAYMER:  We're concerned, Your Honor.  We feel

16   as though that the Debtors have not complied with the

17   procedures set forth in the confirmation order with respect

18   to the administrative claims program --

19             THE COURT:  Are they making distributions?

20             MS. PAYMER:  Your Honor, they did make an initial

21   distribution.  And --

22             THE COURT:  After a notice was given, right?

23             MS. PAYMER:  After a notice was given, Your Honor.

24             THE COURT:  And the order requires notice to be

25   given with respect to future distributions.

1          MS. PAYMER:  That's correct, Your Honor.

2          THE COURT:  And then someone can respond and say,

3     no, this is premature, right?

4          So why are we creating additional litigation before

5     that process happens?

6          MS. PAYMER:  Your Honor, my concern in conjunction

7     with their motion to continue the adversary proceeding is

8     that they're -- the Debtors are trying to run out the clock

9     on my clients' claims and we're now missing the first

10    distribution and the second distribution, Your Honor.

11         With respect to the first one, I know the

12    confirmation order says that there should be an expedited

13    reconciliation process.

14         And my clients are frustrated here because we've

15    been trying to resolve this matter on an amicable basis for

16    months, many months, Your Honor.

17         And we believe that, particularly with respect to

18    the adversary proceeding, Your Honor, that it's not just an

19    administrative claims issue.  There are also taxes that were

20    not paid.

21         There may be other individuals involved that we can

22    name in this litigation that --

23         THE COURT:  Wait, wait.  Let's just stop.

24         MS. PAYMER:  -- would be responsible.

25         THE COURT:  Let's stop for a moment.  Let's go

Page 21

1   through this complaint and talk about the Bankruptcy Rules

2   and the Bankruptcy Code and what can and cannot be brought;

3   all right?

4           MS. PAYMER:  Yes, Your Honor.

5           THE COURT:  As I understand it, you have a pre-

6   petition claim that's been objected to.  That pre-petition

7   claim asserts an administrative expense right under Section

8   503(b)(9), correct?

9           MS. PAYMER:  Correct, Your Honor.

10          THE COURT:  And that's the subject of an -- a long

11  pending objection.

12          MS. PAYMER:  Correct, Your Honor.

13          THE COURT:  You also have an administrative

14  expense.

15          MS. PAYMER:  Yes, Your Honor.

16          THE COURT:  You assert those same claims in this

17  adversary proceeding.  In fact, you incorporate your

18  pleadings into the adversary proceeding.

19          MS. PAYMER:  Yes, Your Honor.

20          THE COURT:  Where on Earth is that based on Rule

21  7001 as opposed to the claims process?

22          Are we supposed to decide these things three times?

23          MS. PAYMER:  No, Your Honor.  We're just asking for

24  one --

25          THE COURT:  All right.

1          MS. PAYMER:  -- (indiscernible) objection.

2          THE COURT:  So that is -- that should just be

3     dismissed.  It's not proper in this context as an adversary

4     proceeding.  It's bankruptcy 101.  It is not proper to keep

5     litigating separate -- the same matter in separate

6     pleadings.  It's a waste of time and money.

7          Congress got it right in the Bankruptcy Rules.

8     It's not covered in Rule 7001.  That is not a proceeding to

9     recover money.  It's a claim against the Debtor.  It's

10     already be asserted.

11          Then you say there may be third parties involved

12     through alter ego or piercing. And is that somehow a claim?

13     Are you asserting that in this adversary proceeding?  You're

14     not, right?

15          MS. PAYMER:  Not against the Debtors' estate, Your

16     Honor.  Against other individuals.

17          THE COURT:  You're not asserting it in the

18     adversary proceeding, right, because the -- those

19     individuals are not named in the complaint.

20          MS. PAYMER:  Not yet, Your Honor.  We haven't

21     engaged in discovery for us to figure out who that would

22     actually be.

23          THE COURT:  So that's not part of this adversary

24     proceeding either.  So you shouldn't be arguing that to me

25     today either.

Page 23

1          In fact, that argues to delay this.

2          There is also a serious issue as to your clients'

3   standing and/or whether it's barred by prior orders of the

4   Court.

5          So I would hope you would think very carefully

6   before pursuing that.

7          Among other things, a general alter ego or veil

8   piercing argument, it is well established in the Second

9   Circuit is a violation of a stay if it's brought just willy

10  nilly without stay relief.

11          MS. PAYMER:  Uh-huh.

12          THE COURT:  But it's not part of this complaint

13  anyway.

14          So the only thing, to me, that looks like something

15  new that might be covered by Bankruptcy Rule 7001 as an

16  adversary proceeding are the two trust claims.

17          Is there anything else?

18          MS. PAYMER:  No, Your Honor.  That's correct.

19          THE COURT:  So that's asserting an interest

20  improperly as opposed to a claim generally against the

21  Debtor.

22          MS. PAYMER:  Correct, Your Honor.

23          THE COURT:  All right.  So if one were to actually

24  deal with this complaint, one would have to sift through it

25  and exclude all of this.

1          And why should a debtor be forced to spend the

2    money to move to dismiss a complaint that, on its face, just

3    doesn't make any sense procedurally?

4          You're throwing out a procedural gauntlet that

5    doesn't make any sense except for these two claims.

6          MS. PAYMER:  Your Honor, I think -- I can confer

7    with Debtors' counsel with respect to the claims that we

8    should -- are outstanding and should remain.  I think we can

9    resolve a motion to dismiss.

10          THE COURT:  Okay.

11          MS. PAYMER:  I'm just concerned my client is here

12   today.  We just want to know when we can actually have this

13   Court determine any of these issues, the legal issues or the

14   factual issues.

15          THE COURT:  All right.  That's a fair point.  But I

16   think we're going to get to that later in today's calendar

17   which is the schedule for dealing with administrative

18   expenses.

19          MS. PAYMER:  Thank you, Your Honor.

20          THE COURT:  Okay.  So it seems to me, subject to

21   hearing the general report on administrative expenses, that

22   causes of action one, three, which is unjust enrichment,

23   implied contract; one being breach of contract -- well,

24   conversion depends on counts two and four.  But to the

25   extent it depends on some other count besides two and four,

1      it should be dismissed.  Those should be dismissed.

2              Two and four which are the trust claims dismissed

3      without prejudice to the claims process.  It's already been

4      underway and underway for months.

5              Two and four should be consolidated with the claims

6      process under Bankruptcy Rule 7042 which is specifically

7      contemplated by the advisory committee commentary to the

8      2007 Amendments to Rule 3007 which deal with what should be

9      dealt within a claim objection and what should be dealt

10     within an adversary proceeding.

11             The rules committee and then through that -- then

12     Congress recognized that there are times when a claim

13     objection may also implicate matters that are dealt within

14     an -- properly and necessarily in an adversary proceeding

15     which would include the cause of action for the imposition

16     of a trust.

17             And the rules committee said if a claim objection

18     is filed separately from a related adversary proceeding, the

19     court may consolidate the objection with the adversary

20     proceeding under Rule 7042 and that's what should happen

21     here.

22             Now as far as what goes first, I -- we should talk

23     about that as part of the pre-trial.  But given how the

24     complaint is -- has been whittled down today, there

25     definitely should be an extension of the time to answer or

Page 26

1    otherwise move.

2           But we should now deal with, you know, when that

3    should be.  So why don't we address that in the context of a

4    pre-trial conference which I gather pertains not only to

5    this litigation but the timing of resolving common issues in

6    a lot of different claim objections.

7           I want to know which counsel for the Debtor wants

8    to address that?

9           MR. FAIL:  Your Honor, Garrett Fail from Weil

10   Gotshal.

11          It doesn't make sense to give the overall report

12   right now and see where things are?

13          THE COURT:  Okay.

14          MR. FAIL:  I think it'll be brief.

15          MS. CROZIER:  Thank you, Your Honor.

16          THE COURT:  Okay.

17          (Pause)

18          MR. FAIL:  Good morning, again, Your Honor.

19          Garrett Fail of Weil Gotshal & Manges, for the

20   Debtors.

21          Your Honor, following entry of the confirmation

22   order on October 15th, the Debtors sent notices to

23   approximately 11,274 parties at 16,614 addresses.

24          Claimants were divided into three categories, as

25   you'll remember.  Opt-in, settled admin claims were those

1    who opted-in to the settlement and settled in time to be

2    eligible for an initial distribution of $21 million.

3            Non-opt-out settled admin claims would be those

4    people who did not opt-in but also did not opt-out plus

5    parties that did opt-in but whose claims were not reconciled

6    in time for the initial distribution.

7            The third category were those who opted-out and who

8    could be addressed and reconciled and paid after the

9    effective date of the Plan.

10           So addressing the opt-in settled admin claim

11   category first, Your Honor.

12           The Debtors received 1206 ballots.  After

13   reviewing, they identified and deducted approximately 258

14   duplicate claims and 120 claims or ballots that would be

15   addressed and should be addressed in separate processes

16   including professionals that would be paid out of a carve-

17   out.  Utilities for whom there are separate deposit accounts

18   to be paid for and taxing authorities.

19           That left 828 ballots to review.  The Debtors

20   reconciled and agreed with 359 of them or 43 percent of them

21   for a total of $73.2 million that shared in the $21 million

22   and they got 28.7 percent in the first distribution.

23           Ninety-eight percent of the payments to those

24   people cleared.  So it was successful.  There are roughly 13

25   checks out of 308 outstanding that haven't cashed.

1              Moving on to the second category and the work

2      that's been done subsequent --

3              THE COURT:  Can I interrupt you?

4              MR. FAIL:  Of course, Your Honor.

5              THE COURT:  AMI and Vir were in the opt-in category

6      but they were not reconciled?

7              MR. FAIL:  Correct, Your Honor.

8              THE COURT:  Okay.

9              MR. FAIL:  So they rolled over and rather than

10     being capped at 75 percent, their cap goes up and they get

11     to recover up to 80 percent along with the other parties in

12     the second and subsequent distributions.

13             THE COURT:  Right.

14             MR. FAIL:  So, in the second category, where we

15     currently are, this includes as -- this included the opt-in

16     ballots that have not been reconciled plus additional

17     motions and proofs of claim that asserted 503(b)(9) claims

18     plus motions that are filed on the docket and proofs of

19     claims that were filed asserting 503(b)(1) claims.

20             The Debtors filed -- and plus it also included the

21     Debtors' books and records for unpaid, post-petition

22     503(b)(1).  That's the population that we were tasked to

23     deal with.

24             THE COURT:  Unless someone opted-out.

25             MR. FAIL:  Correct, Your Honor.

1          THE COURT:  Right.  Okay.

2          MR. FAIL:  The Debtors filed ten omnibus objections

3    to more than 1400 claims.  I think roughly 1407, that had

4    asserted approximately $702 million in administrative and

5    priority claims.

6          Of these, all but approximately 48, which is 48

7    claims for fewer than 30 creditors, have been resolved.  So

8    we resolved over 96 percent of the claims to which we

9    objected without a contested hearing which I think is

10   impressive.

11         In terms of the dollars, we resolved, without a

12   contested hearing, more than 80 -- 98 percent in amount

13   subject to the first through tenth objections and we're

14   working with some of the --

15         THE COURT:  I'm sorry.  Subject to that what?

16         MR. FAIL:  First through tenth omnibus objections.

17         THE COURT:  Right.  Pursuant to --

18         MR. FAIL:  Those are the ones that --

19         THE COURT:  -- those.

20         MR. FAIL:  Pursuant to those --

21         THE COURT:  Right.

22         MR. FAIL:  -- that the Court either settled,

23   entered orders, we settled or we withdrew.  But we have

24   reconciled without a --

25         THE COURT:  As part of that process.

Page 30

1            MR. FAIL:  As part of that process.

2            THE COURT:  Okay.

3            MR. FAIL:  And through the administrative consent

4     process that ensued subsequently.

5            THE COURT:  Okay.

6            MR. FAIL:  My point, Your Honor, was only that we

7     didn't burden the Court extensively with contested matters.

8            And we're working with some of the additional

9     remaining 48 claims on a consensual basis waiting for, for

10    example, determination as to whether certain contracts will

11    be assumed or assigned to Transform.

12           So there's reasons that some -- consensual reasons,

13    why many of the objections have been carried, rather than to

14    withdraw and refile.

15            THE COURT:  Okay.

16            MR. FAIL:  Currently, outstanding, there are

17    approximately 1,936 in number, approximately $332 million in

18    asserted amounts outstanding.  Still significant.  But, of

19    these, Your Honor, the debtors have reconciled and can agree

20    to approximately 992 of them, more than 51 percent, leaving

21    944 disputed.  The debtors filed the eleventh, twelfth, and

22    thirteenth objections to approximately 278 creditors and/or

23    ballots.  That's approximately 30 percent of the 944.

24            The objection deadlines for these will lapse on

25    March 3rd and March 10, respectively, so coming up in

Page 31

1    advance of the next hearing, Your Honor.

2              THE COURT:  Which is March 25th, I think.

3              MR. FAIL:  I believe.  If that's the Monday, I

4    think we changed it to accommodate Your Honor's court

5    calendar.

6              THE COURT:  Okay.

7              MR. FAIL:  I think it was the 27th, and now, it's

8    the 25th.

9              THE COURT:  Well, maybe it's the 23rd.  That's the

10   Monday.  It's the 23rd.

11             MR. FAIL:  I believe it's the 23rd now, Your

12   Honor.

13             THE COURT:  okay.

14             MR. FAIL:  But upcoming and the objection deadline

15   will occur before then, and we're -- we'll be, you know,

16   consistent with our normal practice, submitting certificates

17   of no objection to whittle down and avoid the burden on the

18   Court and all the parties and interests.

19             So, Your Honor, that -- that leaves us with

20   approximately 668 disputed.  Still significant, but a lot

21   smaller.

22             THE COURT:  And I'm sorry.  This is in -- just in

23   Category 2 or in both categories?

24             MR. FAIL:  Category 2, Your Honor.

25             THE COURT:  Okay.

Page 32

1           MR. FAIL:  category 3 is not significant, in terms

2       of number.

3           THE COURT:  Okay.

4           MR. FAIL:  But also, in terms of our mandate for

5       what, you know, we were tasked to focus on.  So this is what

6       I'm reporting on, Your Honor.

7           Of the 668, approximately 159 of these are real

8       estate-related.  The reason I say that is because the

9       debtors are working with Transform to ensure that amounts

10      for which Transform is responsible are paid by Transform,

11      including cure amounts, and reconciling additional asserted

12      amounts for the various landlords.  So some of them may have

13      been paid.  Some of them will be paid.  That's -- that's 159

14      of the 168.

15          So, setting those aside for the moment, there's

16      507 others that are disputed that we're working towards

17      resolving.  The debtors have sent out more than 365

18      individual emails to these parties.  The debtors believe

19      that, for the remaining -- that for 61 of the remaining

20      creditors or ballots, they relate to contracts that may have

21      been assumed or were assumed by Transformed and they,

22      therefore, no longer have claims against the debtors.  There

23      may be nothing left to do with those, so that may be 61 that

24      are resolved completed.  The debtors are researching

25      approximately 60 creditors to find ballot contact

Page 33

1    information for those, leaving 23 that haven't been

2    contacted with a formal email recently, and those will go

3    out by the end of the week.

4         The emails that we sent out informed parties that,

5    if they don't respond, the debtors will be pursuing

6    objections to the claims, and the debtors will do so where

7    there's no response or the response does not lead to

8    information sufficient to reconcile.  Obviously, there has

9    been a lot of work that's gone into this process.  The

10   debtors have been efficient with their use of judicial and

11   estate resources, and we hope to be able to continue that

12   efficiency while continuing to make process -- progress,

13   Your Honor.

14        The goal of the debtors is to reduce the number

15   and the amount of disputed claims in advance of the next

16   distribution, in order to reduce the need for reserves and

17   to maximize the amount that's distributable, ultimately.

18   While the debtors have reconciled amounts that they owe,

19   they've also sent demand letters and commenced hundreds of

20   preference actions.  There is likely overlap, and the

21   debtors reserve all rights to pursue affirmative recoveries.

22        The debtors are still collecting information from

23   Transform and from creditors, but, given the Court's

24   direction to expedite claims reconciliation, in large part,

25   the debtors have not held up reconciling amounts owed, in

Page 34

1   order to get preferences -- preference recoveries net.  To

2   further streamline the process and expedite and maximize

3   recoveries, the debtors will continue -- will consider the

4   concept of a convenience, to make lump-sum, one-time final

5   payments, rather than multiple de minimus payments, for

6   small claims that have been allowed, to reduce

7   administrative costs.

8          Your Honor, that -- that brings us up to date and

9   to where we are.  The next hearing is, as you said, at the

10  end of March.  We expect to go forward with a number of

11  objections, if -- if we have to.  We -- we found that the

12  adjournments have led, as the numbers indicate -- they speak

13  for themselves.  The adjournments have worked.  The debtors

14  have worked consensually, and we've avoided the time and

15  expense of contested matters.  We're currently scheduled to

16  go forward, and we will, if we have to, on any remaining

17  items.

18          THE COURT:  Well, I -- I was under the impression,

19  though, that, in -- in saying that, the debtors believed

20  that there might well be common issues that would need -- it

21  would make sense to give the parties who have not settled an

22  opportunity to be heard on, so that -- well, everyone

23  believes they're the best lawyer.  So, you know, the lawyer

24  who isn't the best lawyer gets heard first and loses, and

25  then they're stuck.  So when do you contemplate that

Page 35

1    happening, that type of process?

2              MR. FAIL:  They are currently teed -- the two

3    issues that were raised with common -- with common issues

4    were the world imports issue.  There are only two attorneys

5    And maybe three -- two or three -- three attorneys with four

6    claims, out of the many, many that were disputed, that seek

7    to go forward at a hearing.

8              THE COURT:  Okay.

9              MR. FAIL:  Based on the first.  There's another

10   round of objections, and there's none -- we filed another

11   objection.  There have been no responses to date.  So we'll

12   see what's required, and we may ask the Court for

13   flexibility.  We may go forward, but that's currently teed

14   up for March.

15             The second issue was what has been referred to

16   this morning as the marketplace vendors or otherwise

17   referred to as drop ship, and we filed, as I mentioned,

18   another objection to 100 claims of a similar issue.  It's

19   teed up for March, if people want to go forward.  We'll be

20   prepared to do that, too.

21             THE COURT:  All right.

22             MR. FAIL:  Your Honor, I would just say that, with

23   respect to disputed matters that go forward before judgment,

24   the appellate process takes time, and we don't -- we, the

25   debtors, don't believe that, you know, litigation is going

```
 1    to yield a faster recovery to parties.  So I'll say it on

 2    the record again.

 3              THE COURT:  That may well be the case.

 4              MR. FAIL:  But it -- we're prepared to go forward.

 5              THE COURT:  And it may be, based on -- and -- and

 6    that's confirmed by what you have been reporting to me just

 7    now, that the claimants, by and large, believe that, too.  I

 8    just want to get a sense of the timing here, and it's either

 9    the next hearing or maybe the one after that, where those

10    issues might be teed up.

11              MR. FAIL:  That's right, Your Honor, because

12    although we have attempted to get this all done, in advance

13    of the next hearing, the -- between the objection deadline

14    and the hearing, parties may want time to enter into

15    settlement negotiations.  So --

16              THE COURT:  Right, and I'm not going to stand --

17    I'm not going to stand in the way of that, because that's

18    parties controlling their own -- their own destiny.

19              So, moving aside to Vir and AMI, it doesn't appear

20    to me that their issues are really subsumed by those two

21    joint issues.  It's really a --

22         MR. FAIL:  They're not, Your Honor.

23              THE COURT:  -- a separate legal theory.

24              MR. FAIL:  Other parties can assert it.  Their

25    contracts aren't unique, but no one else has, in part,
```

Page 37

1    because I'm sure, as Ms. Crozier will tell you, they're

2    barred.  When you have a contract, you can't have quasi-

3    contract relief, unless amongst other things, but --

4              THE COURT:  Well, I -- but I -- but I -- what I'm

5    saying is I also -- I don't know whether you have other

6    parties like Vir and AMI that are really online suppliers

7    with that type of contractual relationship.

8              MR. FAIL:  Hundreds, yeah.

9              THE COURT:  You do?

10             MR. FAIL:  Yes.

11             THE COURT:  But -- but others have not raised

12   these issues?

13             MR. FAIL:  I think there was -- there may be one

14   or two in the -- in the second omnibus objection that

15   responded asserting it, in response.  I'd have to go back

16   and look, but in general, there have been no adversary

17   proceedings commenced to declare that it's not our -- that

18   it's not property of the debtors' estate.  So --

19             THE COURT:  Okay.  So --

20             MR. FAIL:  Your Honor, this is a drop ship issue.

21   They're -- all the drop ship parties have these -- have the

22   same contract.  They're referred to as marketplace vendors.

23             THE COURT:  Right.  But is that an issue for Vir

24   and AMI?  I guess it is.

25             MR. FAIL:  That's what -- that's what the pending

1    objection is.  So they're one of the --

2              THE COURT:  All right.

3              MR. FAIL:  -- parties.

4              THE COURT:  So that is -- that is a common issue?

5              MR. FAIL:  The drop ship is, yes.

6              THE COURT:  Right.  And one would get to that on a

7    non-motion to dismiss basis earlier than -- if the motion to

8    dismiss is denied on a -- on a summary judgment.

9              MR. FAIL:  That's what's teed up for the omnibus

10   objection, legal matter only.

11             THE COURT:  Right.

12             MR. FAIL:  You know, applying the facts that

13   aren't disputed.

14             THE COURT:  All right.  So it seems to me that the

15   -- the deadline to answer should be shorter enough, so that

16   I could have a hearing on those 2 claims, on the 23rd, the

17   same time as I could have a hearing on the drop ship issue.

18   Although, if parties are in discussions -- most parties are

19   in discussions, I would adjourn that, even if one party

20   wanted to go ahead, because it just doesn't make sense to

21   force all the other parties to drop meaningful settlement

22   discussions, because one party doesn't want to.

23             MR. FAIL:  Does that leave time for a motion to

24   dismiss or whatever we'd be filing, with respect to that

25   issue?

1           MS. CROZIER:  It does.

2           MR. FAIL:  Okay.

3           MS. CROZIER:  So, with the hearing on March 23rd,

4    would Your Honor propose a deadline to respond of March 9th?

5           THE COURT:  To respond to the motion to dismiss?

6           MS. CROZIER:  Correct.

7           THE COURT:  Well, so when would you file the

8    motion to dismiss?

9           No, I -- I think it could be seven.  The response

10   to the motion to dismiss could e seven days before the

11   hearing.

12          MS. CROZIER:  Okay.

13          THE COURT:  So that would be the 16th.

14          MS. CROZIER:  So the response would be the 16th?

15          THE COURT:  Right.

16          MS. CROZIER:  So the debtors would file the motion

17   to dismiss --

18          THE COURT:  On the 2nd?

19          MS. CROZIER:  On the 2nd.

20          THE COURT:  Okay, that makes sense

21          MS. CROZIER:  And, to be clear, Your Honor,  we

22   would not be moving to dismiss, with respect to Counts 1 and

23   3, which are the breach of contracts and unjust enrichment

24   claims.

25          THE COURT:  No, those are already -- those are

Page 40

1    already at issue, and -- and, as far as the last contract --

2    I'm sorry -- the last cause of action, that would only be

3    -- oh, I'm sorry.  Let's back up.  The conversion cause of

4    action, which is the next to last.  Now, that's only

5    premised upon the trust counts.  Otherwise, it doesn't --

6    it's not really a claim.

7             MR. FAIL:  So it's not incremental.  We can -- can

8    we skip that, for the responses, in other words?

9             THE COURT:  Yes.  And then the last cause of

10   action which I -- I ignored, which is Count 6, which is

11   fraudulent or negligent misrepresentation -- again, that's

12   subsumed within the claim issues.  So the only thing that's

13   live in the complaint are Counts 2 and 4, and, to the extent

14   they give a predicate to the next-to-last-count conversion,

15   but it's really 2 and 4.

16            MS. CROZIER:  Understood.  We can certainly do

17   that, Your Honor.

18            THE COURT:  Okay, all right.  So motion to dismiss

19   or answer on those counts by the 2nd.  If it's a motion to

20   dismiss, the time to respond is the 16th, and then, unless I

21   adjourn it, the hearing would be on the -- at the same time

22   as the hearing on the drop box issue on the 23rd.

23            MR. FAIL:  Thank you, Your Honor.

24            THE COURT:  Although, again, everyone should

25   understand that, if, you know, a number of parties who had

1    reserved the right to argue the drop box issue on the 23rd

2    have said, no, we're in discussions, we don't want to do

3    that, I'm not going to shortchange those -- or short-circuit

4    those discussions by having one party go ahead.

5              MR. FAIL:  Understood, Your Honor.

6              THE COURT:  On the 23rd.

7              MR. FAIL:  Appreciate that.

8              Unless Your Honor has any other questions, that

9    concludes the debtors' report on the claims process.

10              THE COURT:  Okay, all right.  I think that

11    concludes the pretrial also.

12              MS. CROZIER:  Thank you so much, Your Honor.

13              THE COURT:  Okay.

14              MS. CROZIER:  And I have another proceeding to

15    attend, if I may?

16              THE COURT:  That's fine.

17              MS. CROZIER:  Thank you.

18              THE COURT:  All right.

19              If you want to memorialize this in a pretrial

20    order, you can.  The record's pretty clear, so I'm not sure

21    you need to.

22              MR. FAIL:  I think -- I think we'll rely on the

23    record, Your Honor.

24              THE COURT:  Okay, okay.

25              MR. FAIL:  One other things, on the claims

1    process.  The administrative -- the -- the representative of

2    the -- of the creditors -- that process is still ongoing.

3    My understanding is that the parties are conducting

4    interviews and hope to have a person nominated or appointed

5    within the first week of March.

6           THE COURT:  Okay.  In the meantime, all this is

7    going on, and no one seems to be --

8           MR. FAIL:  We're making progress, Your Honor.

9           THE COURT:  All right, fine.

10          MR. FAIL:  We've been working with the Creditors'

11   Committee and the -- the Debtors' Restructuring Committee

12   advisers to -- on each of the steps along the way.

13          THE COURT:  Okay.

14          MR. FAIL:  Okay.

15          THE COURT:  When you say the Creditors' Committee,

16   does that include the committee of the admin. parties under

17   this?

18          MR. FAIL:  Yes, Your Honor.

19          THE COURT:  Okay.

20          MR. FAIL:  But separately.  So the Unsecured

21   Creditors Committee both parties --

22          THE COURT:  Both -- both groups?  Okay.

23          MR. FAIL:  We're in lockstep, Your Honor.

24          THE COURT:  Okay, fine.

25          MR. LABOV:  Good morning, Your Honor.  Paul Labov,

Page 43

1   Foley & Lardner, on behalf of the priority claim consortium.

2   We've been working with the debtors, with respect to the

3   admin. claim representative.

4           THE COURT:  Right.

5           MR. LABOV:  Over 380 -- you heard all the numbers

6   this morning.  I won't go through them all.  Over 380 some-

7   odd emails went out to the initial distribution list, in

8   order to come up with names for that list.

9           THE COURT:  Okay.

10          MR. LABOV:  Got about a dozen or so.  They've been

11  whittled down and getting everybody onboard, and March 3rd,

12  I believe, would be the interviews for that process.

13          THE COURT:  But, in the meantime, as to the

14  process for negotiating claims and resolving them, your --

15  your group's been involved, as well as the unsecured

16  committee?

17          MR. LABOV:  That's correct, Your Honor.  We've

18  been getting emails and daily briefings.  Or not daily, but

19  weekly briefings from Mr. Fail on these issues, including

20  some of the -- the legal issues that he just discussed.

21          THE COURT:  Okay, okay, thanks.

22          MR. FAIL:  Your Honor, we can go through the next

23  two items on the agenda, I think, hopefully, briefly.

24          THE COURT:  Okay.

25          MR. FAIL:  Item 3 is the debtors' first omnibus

Page 44

1    objection to claims.  Your Honor, we carried this objection

2    for some time now, and we're moving forward today with

3    respect to six claims, for which no response was received,

4    no formal objection was filed, and there's no objection

5    p[ending.  We gave time for parties to consider due

6    diligence and respond to us and come back to us, and there

7    is no objection.  So, unless there's any --

8            THE COURT:  Okay, that's -- that's Nalco Company

9    (ph), International Packaging Supplies, and Sherwin Williams

10   Paint?

11           MR. FAIL:  That's right, Your Honor.

12           THE COURT:  Okay, all right.

13           Is anyone here on behalf of any of those

14   claimants?

15           Okay, I will grant the omnibus objection, as to

16   those claims.  Nalco has four.  International Packaging has

17   one, and Sherwin Williams has one.  The omnibus objection

18   shifted any presumption underlying the proofs of claim back

19   on to the claimant, and the claimant's obviously, have not

20   carried their burden, in that they haven't responded.  That

21   the reason for the proposed disallowance is clear.  It was

22   either satisfied or released in connection with the

23   assumption and assignment to Transform.

24           So you can email that order to chambers.

25           MR. FAIL:  Thanks, Your Honor.

Page 45

1          Item 4 on the agenda is now uncontested.  It's a

2     motion of the debtors requesting a release of the adequate

3     assurance deposit amounts, pursuant to the adequate

4     assurance procedures.  So Your Honor will recall, we entered

5     an order as like first day, second-day relief, setting up

6     deposits.  The debtors have worked tirelessly with Transform

7     and outside third-party vendors to terminate utility

8     accounts for locations that have been rejected.

9          The result is that substantial amounts of money

10    can be released.  No party in interest has objected to this

11    relief.  Notice was provided to all of the affected utility

12    providers.

13          THE COURT:  Okay.  How -- that's fine, and -- and

14    you can submit that order.

15          MR. FAIL:  Thank you.

16          THE COURT:  But I do have a question.  How does

17    this tie into the adjourned matter, which is the motion of

18    certain utility companies to determine adequate assurance?

19    Is that a separate -- I mean, is that truly a separate

20    thing, or is that sort of wrapped up as part of this?

21          MR. FAIL:  Your Honor, that was, I think, pending,

22    since maybe day two of the case.

23          THE COURT:  Right.

24          MR. FAIL:  That's on there to keep -- I don't know

25    why that continues there.

Page 46

```
 1                THE COURT:  Okay.

 2                MR. FAIL:  But -- but, you know, there --

 3                THE COURT:  There's a separate one --

 4                MR. FAIL:  I'm not going to speak for that

 5     attorney and for those clients.  Those -- those matters have

 6     largely probably -- that's probably outdated, but the

 7     clients want to continue to have it outstanding.

 8                THE COURT:  All right.

 9                MR. FAIL:  So we're --

10                THE COURT:  All right.  I mean, if -- are they the

11     same folks --

12                MR. FAIL:  -- continuing --

13                THE COURT:  -- that have not contested the release

14     of adequate assurance, that I just granted?

15                MR. FAIL:  Related -- related people, with respect

16     to certain accounts.

17                THE COURT:  All right.

18                MR. FAIL:  There are a lot of accounts with a lot

19     of the same parties.

20                THE COURT:  All right.  Well, I guess, as long as

21     they keep adjourning it, that's fine, but it doesn't -- you

22     know, you might ask them to --

23                MR. FAIL:  Taking my colleague --

24                THE COURT:  Once the order is entered on the --

25                MR. FAIL:  It's final, with respect to these --
```

Page 47

1    oh, I understand.   The language that we put in -- in -- we

2    added some -- we're going to add some language to the order,

3    with respect to one of the parties, Your Honor, to make sure

4    that we're saving money in the account for -- for -- for

5    that party.

6                 THE COURT:  Okay.

7                 MR. FAIL:  So there was one.

8                 THE COURT:  All right.

9                 MR. FAIL:  And then there's -- there's other

10   motions that continue to be carried from month to month to

11   month to month.

12                THE COURT:  Okay.

13                MR. FAIL:  If you have any specific questions, my

14   colleague, Angeline Hwang, can -- can -- can explain.

15                THE COURT:  No, that's okay.

16                MR. FAIL:  I don't -- okay.

17                THE COURT:  I just -- there's clearly not an easy

18   answer to it.  So that's all I wanted, at this point.

19                It just seemed to me the two motions were

20   inconsistent with each other, and since I've granted the one

21   --

22                MR. FAIL:  There are many, many other accounts

23   that are still -- for which we're still reserving --

24                THE COURT:  Still working on?

25                MR. FAIL:  Yeah.

```
 1              THE COURT:  Utility --

 2              MR. FAIL:  It takes time to, apparently, get them

 3     closed --

 4              THE COURT:  Get the deposits back.

 5              MR. FAIL:  -- or transferred.

 6              THE COURT:  Okay, all right.

 7              MR. FAIL:  Thank you, Your Honor.

 8         So the next item is a contested one, and I'll turn

 9     it over to the movant's counsel.

10              THE COURT:  Okay.

11              MR. FAIL:  Thank you, Your Honor.

12              MS. COLON:  Good morning, Your Honor.  Sonia Colon

13     and Gustavo Chico, on behalf of Santa Rosa Mall, LLC, and we

14     also have Carlos Rios, appearing by Court Call, on behalf of

15     Santa Rosa.

16              THE COURT:  Okay, good morning.

17              MS. COLON:  The crux of the matter is that an

18     indemnity clause included in a settlement agreement between

19     the debtors and the underwriters, which was not subject to

20     the procedural requirements of Bankruptcy Rule 1919, is not

21     enforceable and shall not be used as a justification to

22     expand the automatic stay to non-debtors' third parties,

23     thus depriving a claimant of estate rights to file an action

24     against the underwriters and not the debtors for the loss

25     suffered on the insured property in 2017.
```

1            THE COURT:  Well, could I -- I've read the

2    parties' pleadings on this, and I just have some basic

3    questions that I want to go through first.  I understand

4    that the confidential settlement and release agreement,

5    which is no longer confidential, --

6            MS. COLON:  Correct.

7            THE COURT:  -- has 2 provisions in it that

8    arguably could give rise to claims against the debtors,

9    paragraphs 5 and 6.  Essentially, the debtors settled with

10   the underwriters for a total payment in respect of the

11   hurricane Irma and Hurricane Maria claims under the policies

12   and that obviously, the underwriters did not want to pay

13   twice, and so, the debtors agreed to indemnify them to hold

14   harmless and indemnify and defend, the releasees, which are

15   the underwriters, from any and all actions, demands, and

16   claims under the policies, which releasor or any mortgagee,

17   co-owner, or co-insured, additional insured, and/or loss

18   payee, assignee, or subrugee, releasor, or any other person,

19   including, but not limited to, owners and/or landlords or

20   any of releasor's properties may assert at a later date

21   arising out of the matters herein released.

22            And I know -- I know that Santa Rosa contends

23   that, that the agreement as a whole, is of no force or

24   effect, because it wasn't approved by the Court, and

25   secondly, that that isn't the case, that the provisions on

Page 50

1   which the debtor is pointing to as the potential harm to the

2   debtor of lifting the stay or declaring that the stay

3   doesn't apply, can be severed, but I have a, I guess, a more

4   fundamental issue, set of questions.  The stay was lifted

5   already in this case, consensually, to let Santa Rosa

6   proceed against the broker, correct?

7         MS. COLON:  Aon.

8         THE COURT:  Aon?  But not as to the underwriters

9   or the debtor, and there's a -- there's a history to this.

10  There's clearly been a number of motions, as well as an

11  adversary proceeding filed by Santa Rosa, seeking one form

12  of relief or another, either lifting the stay, declaring the

13  stay not in effect, declaring the insurance proceeds not

14  property of the debtors' estate, et cetera, that have been

15  withdrawn without prejudice, but I have a history from that,

16  and my understanding, from that history, I just want to lay

17  out here and see if there's any disagreement with it.  The

18  insurance -- I'm sorry.  Let's back up.

19        The lease has a contractual requirement that Santa

20  Rosa be listed in the applicable policy as an insured,

21  arguably.  That's what you contend.

22        The debtors say, no, that just simply any

23  insurance proceeds recovered be issued jointly to the

24  debtors, but in any event, that's 6.03(b)(3), and -- of the

25  lease, but that's a contractual provision between the

Page 51

1    debtors -- or the debtor -- and Santa Rosa Mall or its

2    predecessors, right?

3            And then, however,  the policies themselves don't

4    name insured, right?  And they don't -- nor do they name

5    Santa Rosa as a loss payee.  I'm talking about the policies

6    themselves now.  Is that -- that's correct?

7            MS. COLON:  Your Honor, when you turn to the

8    policy as such, there is language therein that it is

9    covered, and I'm going to go to Docket 63172, and this is

10   page 4.  And may I read from this section?  It says, "The

11   Sears Holding Corporations or any subsidiary --" it don't

12   sound (ph) -- "organization, partnership, joint venture,

13   joint lease, or joint operating agreement is now and herein

14   after constituted or acquire as a respect interest may

15   appear and any other party for which the insured has the

16   responsibility for providing insurances as the respective

17   interest may appear."  That's the named insured.  With us is

18   Carlos Rios, who's the expert on insurers and insuring, but

19   the -- as a result of that language, --

20           THE COURT:  So how do their interests appear?  How

21   do Santa Rosa's interests appear, under that language?

22           MR. RIOS:  May I address the Court, Your Honor?

23           THE COURT:  It's in the policy --

24           MS. COLON:  Your Honor, may Carlos Rios address

25   this issue?

1              THE COURT:  Sure, yeah, that's fine.

2              MR. RIOS:  Yes, yes, my name is Carlos Rios, and

3      I'm sorry I -- I was not able to arrive in time to be at the

4      hearing, and, Your Honor, the issue here is rather simple,

5      even though it might look complicated.  The policies

6      itselves names as additional insured any person that Sears

7      was obligated to insure.  The contract between Sears and

8      Santa Rosa provided that Sears had to insure the property.

9      Furthermore, in order that the -- it agreed -- it obligated

10     Sears to provide Santa Rosa with certificates of property

11     insurance, on a yearly basis, and accordingly, Aon was

12     authorized, pursuant to the insurance policy itself, to

13     issue those certificates, and every year, Aon would issue a

14     certificate stating that Santa Rosa and others were loss

15     payees under the policy.  So really, the insurance policy

16     itself has the authority granted to Aon, who acted as a

17     broker for Sears, but also as an agent for the underwriters

18     evidences that Santa Rosa was a named insured or loss payee

19     under the policy.

20             THE COURT:  But the -- the -- the contract, the

21     lease doesn't provide for Santa Rosa to be a named insured,

22     correct?  It just provides that the --

23             MR. RIOS:  Well, --

24             THE COURT:  -- the insurance proceeds be paid over

25     to Santa Rosa.

1            MR. RIOS:  That is true.  The latter part is true.

2            THE COURT:  Okay.

3            MR. RIOS:  And --

4            THE COURT:  So, as their interests may appear to

5       me -- I'm going through this, because I have always

6       understood, having heard this before in prior hearings and

7       looked at the policies and the lease agreement, that it may

8       well be that Santa Rosa has a cause of action against Aon,

9       because of the certificates, but I'm having a hard time

10      seeing how it has a cause of action against the

11      underwriters, and this is relevant, because in weighing the

12      balance under the case law, whether it's Queenie v. Nygard

13      or Sonnax, the harm to the parties is important.  And if

14      litigation is going to be initiated in Puerto Rico against

15      the underwriters that, to me, has very little chance of

16      succeeding, but that the Debtors would have to defend, that

17      obviously weighs in favor of the Debtors' position.

18            I have another question.  And this is an area that

19      was hardly briefed at all.  The motion refers to 26 LPRA

20      Section 2003(1), which states, "Any individual sustaining

21      damages and losses shall have at his option a direct action

22      against the insurer under the terms and limitations of the

23      policy, which action he may exercise against the insurer

24      only, or against the insurer and the insured jointly."

25            Now, the case cited Marina Aguila v. Den Caribbean

1    Inc., 490 F. Supp. 2d 240, 245 (DPR 2007), merely refers to

2    that section.  It doesn't construe it or apply it.  And in

3    neither the motion, or the objection, or the reply is there

4    any real discussion of how this statute works.  But just

5    looking at its plain language, which refers to a direct

6    action under the terms and limitations of the policy, and

7    construing it based on my limited Spanish, because the only

8    opinions I could find were in Spanish, it isn't, to me, what

9    I normally think of as a direct action statute, which lets a

10   third party sue an insurer even if the policy itself doesn't

11   list them as a named insured or a loss payee.  And there are

12   such statutes, usually in the personal injury realm.

13          It appears to me that this is one where there is a

14   lawsuit under the terms of the policy.  And if the policy

15   itself doesn't name the plaintiff, Santa Rosa, in any way,

16   except as we have just gone through, again I'm not sure that

17   this really helps Santa Rosa's cause.  On the other hand, if

18   it truly is a direct action statute and not under the

19   policy, then it would seem to me that the indemnity doesn't

20   apply, because the indemnity is under the policy.  So I

21   don't know if either side has any thoughts on that.

22          I mean, I have no problem, and I don't believe the

23   Debtors do either, in lifting the stay or saying the stay

24   doesn't apply as to a true direct action statute where the

25   insurer is being sued, not under the policy, but under the

Page 55

1    statute.  But this language doesn't really seem to provide

2    for that, this statutory language.  So I don't know if

3    people have thoughts on that.  If they don't, I'd like them

4    to brief it.

5            MS. COLON:  Your Honor, I have to --

6            MR. RIOS:  Could I address the Court on that

7    issue, Your Honor?

8            THE COURT:  Yes.

9            MR. RIOS:  Quickly.

10           THE COURT:  Sure.

11           MR. RIOS:  Okay.  You're right in the sense that

12   the -- it's a statute directed to liability issues.  But in

13   this case, if we have based our arguments on what I said

14   previously, the policy itself has a blanket name insured,

15   which is described as those persons or those entities that

16   Sears is obligated to insure.  Sears was obligated to insure

17   Santa Rosa.  And accordingly --

18           THE COURT:  Does it -- well, how was Sears

19   obligated to insure Santa Rosa?  I see that it was obligated

20   to pay proceeds of insurance to Santa Rosa, but I don't see

21   how it was obligated to insure Santa Rosa, for example by

22   naming it as a loss payee or named insured.

23           MS. COLON:  Your Honor, Section 6 --

24           MR. RIOS:  Your Honor, the thing here is that the

25   certificate of insurance --

1          THE COURT:  Yeah, but that's a separate issue.

2    The certificate of insurance is why the stay was lifted as

3    to Aon.  Aon may have -- may -- I'm not saying it did, but

4    it may have, in issuing those certificates, given rise to a

5    cause of action that Santa Rosa has, and the stay has been

6    lifted so that you can go against Aon.  I'm focusing on --

7    I'm not focusing on their certificates, because the

8    certificates is a separate thing.

9          MS. COLON:  Your Honor, I'm going to go and

10   supplement with Mr. Rios for a second.

11         THE COURT:  Okay.

12         MS. COLON:  I know there's two issues that I want

13   to clarify.  We're trying to set aside one clause, not the

14   entire agreement, but one clause, which is Section 6, which

15   is the one of the indemnity.  And later, I want to put, I

16   think --

17         THE COURT:  No, no.  I --

18         MS. COLON:  Second, the lease had --

19         THE COURT:  I'm focusing on what's actually at

20   issue in the lawsuit you want to bring.

21         MS. COLON:  The lease agreement in -- I call your

22   attention to the lease agreement, Section 6.02.  That's

23   where the insurance obligations come from.

24         THE COURT:  And the parties briefed this in motion

25   number two, I think, which was withdrawn and never decided

Page 57

1   by me.  But at the hearing, I said you're going to have to

2   show me something more than you showed me then, which was

3   the lease agreement.

4          MS. COLON:  But the lease -- you're asking that

5   the lease agreement --

6          THE COURT:  Right.

7          MS. COLON:  -- does not provide for a requirement

8   to place in insurance, but --

9          THE COURT:  No.  There's a requirement to place

10  insurance.

11         MS. COLON:  Yes.

12         THE COURT:  The issue is whether it is insurance

13  where Santa Rosa is to be a named insured or a loss payee,

14  or whether Santa Rosa was content in the lease agreement to

15  rely on the covenant in 6.03 that Sears would turn over the

16  proceeds to it.

17         MS. COLON:  Well, the lease agreement provides

18  coverage to the insurance.  And then the insurance covers

19  most --

20         THE COURT:  All right.  You're not really --

21         MS. COLON:  Okay.

22         THE COURT:  Does it provide this -- 6.02, does it

23  provide that in addition to obtaining coverage for the mall,

24  you know, for the building, that that coverage be jointly in

25  the names of Sears and Santa Rosa Mall, or that Santa Rosa

Page 58

1  Mall be named as a loss payee?

2          MS. COLON:  Well, there's language regarding here

3  loss payable clauses to the landlord, but I have to find

4  that there is language also in this lease agreement in which

5  the money has to be placed in an account in the name of

6  Santa Rosa.

7          THE COURT:  Yeah.  That's 6.03, but that's a

8  contract.  That's not -- that's the contract between Sears,

9  as tenant, and Santa Rosa, as landlord.  It doesn't have

10 anything to do with the insurance policy being something

11 that the landlord has an interest in.  It's a separate

12 distinction.

13         And the parties dealt with this in a motion before

14 me.  We had a hearing on it.  I prepared on it about six

15 months ago.  And I told you then, you didn't lay out enough

16 for me to show that this argument held water.  I said I can

17 adjourn this, and you can come up with it, but I didn't

18 believe there was enough.  And instead, the motion was

19 withdrawn without prejudice.  And so here we are again.

20 It's the same issue and I'm at the same place.

21         MR. RIOS:  Your Honor --

22         THE COURT:  I don't see, in other words, why A)

23 there is, in fact, a claim against the underwriters, either

24 under general law or under this statute.  And that weighs

25 heavily in my mind as to whether I should say that the stay

Page 59

1    should be lifted when the Debtors have already gotten the

2    money, and in return for getting the money, have represented

3    and indemnified the underwriters that this is it.  They're

4    not going to have to pay twice.

5          So I just -- this seems to me to be a litigation

6    that's going nowhere and, therefore, I don't know why I

7    should let it go nowhere, because it would just be a waste

8    of time and money.

9          MR. RIOS:  Your Honor, can I address the Court?

10   I'd like to differ, Your Honor.

11         THE COURT:  Okay.

12         MR. RIOS:  This is Carlos Rios.

13         Your Honor, the problem that we have here is that

14   Aon acted as an agent for the underwriters.  So what Aon

15   did, when Aon certified that the Santa Rosa was a loss

16   payee, Aon was acting on behalf of the underwriter, under

17   the authority provided under the insurance contract.  So

18   it's definitely a responsibility of the insurance company.

19         And this happens every time there is a mortgagee

20   or a lessor.  If they're left out, the insurance company

21   pays to the debtor or to the insured, in this case Sears,

22   without the knowledge of the lessor or the mortgagor, this

23   is what happens.  They have to pay twice.

24         Furthermore, Your Honor, we sustain that Sears, if

25   at one time had a leasehold -- an insurable interest in the

Page 60

1    property, it has no insurable interest now, because it

2    rejected the lease.

3            THE COURT:  But it's gotten the money.  I believe

4    it's been paid the money, right?  So it doesn't really

5    matter whether it has an insurable interest today.  It had

6    one when the hurricane happened, and it's gotten the money.

7            But can I do back to the first point?  I really

8    didn't understand that the claim that you want to bring

9    against the underwriters is somehow that Aon was acting as

10   their agent in giving a false certificate to Santa Rosa.  It

11   seemed to me the claim that you wanted to bring against the

12   underwriters is that Santa Rosa is entitled to the

13   insurance, separate and apart from what Aon represented in

14   the certificate.  That the policies themselves are what give

15   rise to the claim against the underwriters.  And that's

16   consistent with the reference, I believe, to 26 LPRA

17   2003(1).

18           It's a -- I think what you want to -- I clearly

19   took away from these pleadings that you want to sue the

20   underwriters separately and independent from Aon, and not

21   based on the certificate, but based on their having an

22   obligation of their own under the policies to pay Santa

23   Rosa, or not to pay the Debtor.  And I just -- I'm having a

24   hard time seeing that.  Their contract is their policy.

25           MR. RIOS:  Your Honor, I'm basing my arguments on

Page 61

1    the insurance contract.  Exactly, on the insurance company,

2    the fact that Aon might not have had authority to issue

3    those certificates is a different issue.  They did issue and

4    they are barred to deny that the issue -- that the

5    certificates have no viability.

6              So we -- that's why we asked to sue Aon, but we

7    never waived our right to sue the underwriters.

8              THE COURT:  I know you haven't waived the right,

9    but I don't see that you have the right.  To me, it seems

10   like a strike suit, and it will bring in primarily -- the

11   effect will be on the Debtor because of the cost, because

12   you are suing under the policies.

13             If you were suing on some other basis than under

14   the policies, then I don't think the indemnification

15   applies.  But if you're suing under the policies, which I

16   don't think you have a claim for, then the indemnification

17   applies.

18             MR. RIOS:  Your Honor, I have another argument

19   with regards to the indemnification.  It has to -- the

20   argument was presented in our brief and is based on the fact

21   that no one should be able to benefit or profit from its own

22   wrongdoing.  When Sears represented in the settlement that

23   no party had an interest in the insurance proceeds, they

24   misrepresented that fact.

25             THE COURT:  Well, I don't agree with that.

Page 62

1     There's no lien granted.  So the interest is contractual,

2     which isn't an interest.  It's just a contract.  And Santa

3     Rosa has a claim against Sears for that.

4              MR. RIOS:  But we have a claim against the

5     insurance company based on my previous arguments.

6              THE COURT:  But those aren't persuasive to me.  My

7     inclination is to have the parties brief this.  Let me back

8     -- let me go at it a different way.  The Debtors contend, I

9     think correctly, under Queenie v. Nygard, and Sonnax, and

10    Lomas, and the case law, that paragraphs five and six of the

11    insurance settlement mean that the stay either applies here

12    or should be extended.

13              And again, I believe that is correct.  But that

14    requires one to look at those provisions.  What did the

15    Debtors, in fact, indemnify the underwriters for?  And

16    again, it's -- any and all actions, demands, and claims

17    under the policies.

18              So if you're making a demand in the litigation you

19    want to bring against the underwriters, under the policies,

20    this indemnification applies.  It equally doesn't apply if

21    you're bringing a claim or demand against the underwriters

22    on some other basis, i.e. you're the principal and

23    responsible, ultimately, for Aon's false certificate.  But

24    as far as the policies are concerned, I don't see it.

25              Now, the parties haven't really briefed this.  One

Page 63

1    party, the Debtor, attached their briefing from the last

2    time we were here on this issue, and that's about it.  I'm

3    happy to give you a little more time to brief that, but I

4    just don't see it.  I don't see the language that ties up to

5    give Santa Rosa a claim under the policies, as opposed to in

6    respect of the certificate -- the insurance certificate.

7           So I'm happy to give you more time to brief that

8    issue and to explain what I think is the case that the

9    statute doesn't change that, because you still are bringing

10   the claim, as far as the statute is concerned, the Puerto

11   Rican statute, under the policies.

12          And if it's under the policies, right now, as I

13   said six months ago, I'm in the same position today, I don't

14   see how there is a claim under the policies.  At best,

15   there's a claim because there was a certificate provided

16   that wasn't accurate.

17          MR. RIOS:  Well, I mean, no one has said that the

18   certificate is not accurate.  No one has said that Aon was

19   not acting as an agent of the insurer.

20          THE COURT:  But in respect to their certificate.

21          MR. RIOS:  The certificate has value, Your Honor.

22   And there's --

23          THE COURT:  That's why you have a claim against

24   Aon.  And maybe through Aon against the underwriters, but

25   not under the policy.

1         MR. RIOS:  Look, again, I repeat, Your Honor, no

2    one has questioned the legality or the validity of those

3    certificates.

4         THE COURT:  Well, I do.  It's just not true.  It's

5    not true.  It's on its face.  I don't think anyone needs to

6    question.  If it were true, we wouldn't be fighting over

7    this.

8         MR. RIOS:  Your Honor, that's why we -- if we have

9    to brief it, we'll brief it, of course.  But two steps.  One

10   step is that the certificates validates the policy or test

11   that it's obligated to insure anyone (indiscern.).

12        THE COURT:  Well, that's what has never been

13   briefed to me.  If you guys have cases that show that, that

14   a certificate controls and changes the terms of the policy,

15   then you can brief that.  The Debtors briefed it.  I read

16   their case.  It does seem to stand for the proposition that

17   the policy controls and not the certificate.  That doesn't

18   mean that you might not have a cause of action against the

19   entity that issued the certificate and maybe against their

20   principal based on the certificate, not on the insurance.

21        And again, the indemnification here is in respect

22   of the -- under the policies.  That's what they settled, not

23   that they gave a false certificated.  They didn't settle

24   that.

25        MR. RIOS:  Your Honor, we're not saying -- we're

1   not in disagreement with what you just said.  The policy is

2   the one that responds.  The certificate is just every --

3        THE COURT:  Well, so I'm going to adjourn this to

4   give Santa Rosa Mall the time to brief that issue, i.e.

5   whether a certificate overrides a policy.

6        MR. RIOS:  We're not saying that, Your Honor.

7   We're not saying that it overrides.  We're saying that

8   everything is -- the existence of the policy and the policy

9   itself says that it's obligated to insure that entities like

10  Santa Rosa, and Santa Rosa is the one --

11       THE COURT:  Well, you could brief that issue too.

12  But you could take me through the plain language of the

13  policy and the lease agreement, and try to show me that

14  there actually -- that the language that has been quoted to

15  me from the policy actually creates a right in the

16  insurance, as opposed to the proceeds of the insurance, in

17  the insurance itself by Santa Rosa, or of Santa Rosa.

18       MS. MARCUS:  Your Honor, Jacqueline Marcus from

19  Weil Gotshal on behalf of the Debtors.

20       May I be heard on just a couple of points?

21       THE COURT:  Yes.  But so, I'm not prepared to

22  grant this motion until I see that brief.  Now, maybe Ms.

23  Marcus could persuade me that I should never grant the

24  motion, but I just -- to me, again, it's just -- well, I

25  quoted Yogi Berra two days in a row.  This is déjà vu all

Page 66

1   over again.  We dealt with this six months ago, except you

2   guys didn't deal with it.  I said, you had to show me more,

3   and this pleading doesn't show me more on this issue.  And

4   it's the gatekeeping issue.

5          Again, if you want to proceed against the

6   insurers, separate and apart from under the policies, then I

7   don't think there's a -- that's like the Aon situation.  The

8   stay should be lifted.  But I don't think that's what you

9   want to do.  You want to proceed under the policies.  That

10  raises the issue as to whether that's just a non-starter,

11  which has only the effect of causing the Debtors to pay a

12  lot of money to yet again brief the issue, which they've

13  already done.

14         It just doesn't -- it's not worth it to anyone to

15  do that under the law.  It's just not consistent, subject to

16  your persuading me that you actually have -- would have a

17  right against them.  Then that's a different weighing of the

18  factors.

19         MS. COLON:  It is our position that the insurance,

20  combined with the --

21         THE COURT:  No.  I know it's your position.  I

22  understand.

23         MS. COLON:  We'll brief on that.

24         THE COURT:  Okay.

25         MS. COLON:  But that goes into that there's --

Page 67

1    that the settlement agreement was valid as such.

2              THE COURT:  Right.

3              MS. COLON:  But it did not comply with 9019.

4    Again --

5              THE COURT:  But 9019 is a bankruptcy rule.

6    Bankruptcy rules cannot create greater rights than exist

7    under the Bankruptcy Code.  So you have in the Bankruptcy

8    Code in Section 363 two provisions: one, 363(c) says the

9    debtor can take actions in the ordinary course without Court

10   approval; and then secondly in 363(b), a debtor must take an

11   action out of the ordinary course only with notice and an

12   opportunity for a hearing.

13             So the issue there is is this agreement out of the

14   ordinary course.  There's a separate issue over on top of

15   that which is even if I assumed it was out of the ordinary

16   course, no one has really identified anything with regard to

17   the agreement as to why it's not a proper exercise of

18   business judgment.  Is the amount wrong?  I mean, did they

19   settle for less than they should have?

20             MS. COLON:  Your Honor, the fact is that this is

21   not whether they settle for the amount or the amount

22   (indiscernible), I said is that there's a $46 million

23   settlement for 40 stores at the same time in a catastrophic

24   category 5 hurricane, which does not compare to the other

25   ones in damages.

1           THE COURT:  Well --

2           MS. COLON:  This is out of the ordinary --

3           THE COURT:  No, no, but look, the reason I raised

4    the first point I did first is in part for what I'm going to

5    say next.

6           If the amount of the settlement is not the issue,

7    and I don't believe it is the issue, the amount, the issue

8    that Santa Rosa has with the settlement is that the money

9    went to Sears, right, not to Santa Rosa?  That goes to the

10   first thing that we just spent the last ten minutes talking

11   about is to whether that was improper or not.  If it was

12   improper, then retroactively, I wouldn't approve the

13   settlement if it turns out to have been out of the ordinary

14   course.

15          And probably, if there was a way around your

16   client getting money that it had an absolute right to, then

17   it wouldn't have been in the ordinary course.  But if it's

18   just a settlement of the dollars coming in under the policy,

19   and there's no dispute about those dollars, it's just where

20   it went, then it's a no brainer.  Of course I would approve

21   it retroactively.

22          So it all, to me, comes down to the first issue,

23   which is again, does Santa Rosa vis-à-vis the insurers have

24   a separate right to get that money, as opposed to the

25   Debtors?

1          MS. COLON:  And we'll brief.  It's our position we

2    consider it that we did, and that this is different from

3    previous occasions, because we were going against the funds

4    of the Debtor.  Now, we are going against the underwriters,

5    as such.

6          THE COURT:  But in each case, it's the same money.

7    It's the same money.  Okay.  So I think I've heard enough on

8    this point.

9

10          MS. MARCUS:  Jacqueline Marcus, again, Your Honor.

11   Weil, Gotshal & Manges on behalf of the Debtors.

12          Just a few very brief points.  With respect to

13   Santa Rosa's argument that the language of the policy that

14   says, "Any other party for which the insured has

15   responsibility for providing insurance applies to the

16   landlord.  The Debtors dispute that that's what that

17   language means.  And in fact, Santa Rosa has acknowledged

18   before the Court, actually almost exactly a year ago, that

19   Santa Rosa was neither a loss payee or a beneficiary of the

20   policy.

21          I think that ship as sailed and we shouldn't

22   revisit that again.  With respect to the Puerto Rico

23   statute, Your Honor, you're exactly right.  It does say

24   under the terms and limits of the policy, and I just wanted

25   to note for the Court that Section 53 of the policy

Page 70

1    specifically says that the insurers are only obligated to

2    pay Sears Holdings Corporation or in accordance with the

3    direction of Sears Holdings Corporation.  And that goes to

4    the merits of any claim against the insurers under the

5    policy.

6              THE COURT:  All right.  So Santa Rosa should

7    address that paragraph in its brief.

8              MS. MARCUS:  And finally, Your Honor, the

9    certificate of insurance specifically says -- bear with me

10   one second -- "The insurance afforded by the policies

11   described herein is subject to all the terms, exclusions,

12   and conditions of such policies.  Such policies, limits

13   shown may have been reduced through paid claims."

14             Your Honor, I know you've said that you were going

15   to give Santa Rosa more time to brief the issue.  We have

16   spent so much time and effort on this over the past --

17             THE COURT:  I'm not asking you all to brief it.

18             MS. MARCUS:  Okay.

19             THE COURT:  I'm not asking you all to brief if.  I

20   think that -- I appreciate that it's been frustrating given

21   that we're now on the sixth time that these issues have been

22   raised with the Court.  At the same time, however, each time

23   Santa Rosa has withdrawn without prejudice.  Ostensibly, I

24   think because of negotiations.  I don't think the last

25   stipulation limited their right to go against the

Page 71

1    underwriters, it just said they weren't doing it at the

2    time.

3          So I'd like to nail this down once and for all.

4    They never really responded to your case law and

5    interpretation several months ago.

6          MS. MARCUS:  That's correct.

7          THE COURT:  I don't -- I'm not sure they would be

8    able to, but I'd like to give them a chance.  And I would

9    ask them -- I mean, I think the leading case on interpreting

10   this statute, just based on the annotations, is General

11   Accident Insurance Company P.R. v. Ramos, 148 DPR 523

12   (1999).  It's in Spanish, however.  So I think it says -- at

13   least this is what the annotation says it says, the same

14   thing that I believe the statute says, which is it's an

15   action against the insurer under the terms and limitations

16   of the policy, not just a regular direct action because

17   you're the intended beneficiary.

18          If Santa Rosa wants to dispute that, they ought to

19   give me the English translation of that case and other

20   cases.  But I think I heard from his counsel on the phone

21   that it doesn't dispute that.

22          So, look I -- again, if you want to sue the

23   insurers not under the policies, but for giving you a false

24   certificate, I think the Debtors will see their way to

25   lifting the stay on that, because I don't think the

Page 72

1    indemnity applies to that.  But if you want to sue them

2    under the policies, I don't see it at this point.  And I

3    don't see -- I think the settlement agreement, in a way, the

4    argument that it's out of the ordinary course doesn't matter

5    because, again, the issue there is not the amount that they

6    settle for, but the notion that somehow either the money

7    shouldn't have come to Sears, it should have gone to Santa

8    Rosa, or alternatively, that it's still owed,

9    notwithstanding that the insurers have already paid it to

10   Santa Rosa.  And to me, that's just -- it's the same issue.

11           And I don't believe that when you weigh the Sonnax

12   factors, the Debtors should be put to defending that issue

13   yet again.  On the other hand, if there is a -- their right

14   against the insurers under the policies, that's a different

15   set of facts to weigh.  Those aren't, as far as I can see,

16   before me today.

17           So I'll give you until the 13th of March to brief

18   that issue and I'll adjourn this hearing until the 23rd, but

19   just to cover that point.  And if I conclude that the claim

20   can be under the policies, then I'll have to reevaluate my

21   analysis of the applicability of Sonnax and Queenie v.

22   Nygard to that.

23           MS. MARCUS:  Thank you, Your Honor.

24           THE COURT:  Debtors don't have to file a reply,

25   you know, unless they've left something out that's

1    absolutely critical and then you can point it out.

2            MS. MARCUS:  Okay.  Thank you, Your Honor.  That

3    brings us to the conclusion of our agenda for today.

4    Doesn't it?

5            THE COURT:  There had been an objection to the

6    settlement procedures, the mediation procedures, but that

7    was resolved, right?

8            MR. FAIL:  It was adjourned, Your Honor.  I think

9    there was an issue with noticing, so I think we adjourned it

10   to a later date.

11           THE COURT:  Okay.  Fine.  On that score, I would

12   hope that the mediators, given the -- if there's a claim

13   that's pretty small, we'd do it telephonically or, you know,

14   not force people to come to New York if it's like a $15,000

15   preference.

16           MR. FAIL:  Sure.  Your Honor, we -- I'm not as

17   familiar as you are, but we'll make sure that we can do

18   that.

19           THE COURT:  I think that was the main issue.

20           MR. FAIL:  Thank you, Your Honor.

21           THE COURT:  Okay.

22           MS. MARCUS:  Thank you.

23       (Whereupon, these proceedings were concluded at 11:48

24   AM)

25

1                    **I N D E X**

2

3                  **R U L I N G S**

4

5    DESCRIPTION                                    PAGE

6    Motion to Adjourn Adversary              26

7    Proceeding or for an Extension

8    Of Time to Answer

9

10   Debtors' First Omnibus Objection to Claims   44

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 75

```
1              C E R T I F I C A T I O N

2

3    We, Pamela Skaw, Nicole Yawn, and Jamie Gallagher, certify

4    that the foregoing transcript is a true and accurate record

5    of the proceedings.

6    Pamela Skaw    Digitally signed by Pamela Skaw
                    DN: cn=Pamela Skaw, o, ou,
                    email=digital@veritext.com, c=US
7    _____  Date: 2020.02.25 16:18:59 -05'00'

8    Pamela Skaw

9    Certified Electronic Transcriber

10   Pamela Skaw    Digitally signed by Pamela Skaw
                    DN: cn=Pamela Skaw, o, ou,
                    email=digital@veritext.com, c=US
11   _____  Date: 2020.02.25 16:19:16 -05'00'

12   Nicole Yawn

13   Certified Electronic Transcriber

14   Jamie Gallagher    Digitally signed by Jamie Gallagher
                        DN: cn=Jamie Gallagher, o, ou,
                        email=digital@veritext.com, c=US
15   _____   Date: 2020.02.25 16:21:57 -05'00'

16   Jamie Gallagher

17   Certified Electronic Transcriber

18

19   Date:  February 25, 2020

20

21

22   Veritext Legal Solutions

23   330 Old Country Road

24   Suite 300

25   Mineola, NY 11501
```

[& - acquire]                                                                                      Page 1

| & | 2 | 365  32:17 | 7042  12:7 16:2 |
|---|---|---|---|

**&**

**&**  5:2,13,20 7:17
13:6 26:19 43:1
69:11

**1**

**1**  28:19,22 39:22
53:20 60:17
**1,936**  30:17
**10**  30:25
**100**  35:18
**10016**  5:16
**10036**  5:23
**101**  22:4
**10153**  5:6
**10:00**  3:2
**10:16**  2:2
**11,274**  26:23
**11501**  75:25
**12**  8:2
**120**  27:14
**1206**  27:12
**12:27**  17:6
**13**  27:24
**13th**  72:17
**1400**  29:3
**1407**  29:3
**148**  71:11
**15,000**  73:14
**159**  32:7,13
**15th**  26:22
**16,614**  26:23
**168**  32:14
**16th**  39:13,14
40:20
**18-23538**  1:3
**185,000**  8:24
**19-08700**  1:16 3:4
3:8 7:8
**1919**  48:20
**1985**  10:18
**1999**  71:12

**2**

**2**  31:23,24 38:16
40:13,15 49:7
**2003**  53:20 60:17
**2005**  9:17
**2007**  25:8 54:1
**2017**  48:25
**2019**  8:2,10
**2020**  2:1 3:2 75:19
**21**  27:2,21
**23**  33:1
**2300**  6:6
**23rd**  31:9,10,11
38:16 39:3 40:22
41:1,6 72:18
**24**  2:1 3:2 17:3
**240**  54:1
**245**  54:1
**248**  1:22
**25**  75:19
**258**  27:13
**25th**  31:2,8
**26**  17:5 53:19
60:16 74:6
**278**  30:22
**27th**  31:7
**28.7**  27:22
**2d**  54:1
**2nd**  39:18,19
40:19

**3**

**3**  32:1 39:23 43:25
50:24
**30**  17:2 29:7 30:23
**300**  1:22 75:24
**3007**  25:8
**308**  27:25
**32801**  6:7
**330**  75:23
**332**  30:17
**359**  27:20
**363**  67:8,8,10

**365**  32:17
**380**  43:5,6
**390**  6:5
**3rd**  30:25 43:11

**4**

**4**  40:13,15 45:1
51:10
**40**  67:23
**43**  27:20
**44**  74:10
**46**  67:22
**48**  29:6,6 30:9
**490**  54:1

**5**

**5**  3:12 49:9 67:24
**502**  3:22
**503**  8:13 21:8
28:17,19,22
**507**  32:16
**51**  30:20
**523**  71:11
**53**  69:25
**547**  3:23
**548**  3:23
**550**  3:23

**6**

**6**  17:2 40:10 49:9
55:23 56:14
**6.02**  57:22
**6.02.**  56:22
**6.03**  50:24 57:15
58:7
**60**  32:25
**61**  32:19,23
**63172**  51:9
**668**  31:20 32:7

**7**

**700,000**  8:22
**7001**  12:25 21:21
22:8 23:15
**702**  29:4

**7042**  12:7 16:2
25:6,20
**7204**  3:23
**7210**  3:18
**7290**  4:3
**73.2**  27:21
**75**  28:10
**767**  5:5
**790,000**  8:6

**8**

**80**  28:11 29:12
**828**  27:19
**885,000**  17:7

**9**

**9**  8:13 21:8 28:17
**90**  5:15
**9019**  67:3,5
**944**  30:21,23
**95,000**  8:7
**96**  29:8
**98**  29:12
**992**  30:20
**9th**  39:4

**a**

**a.m.**  3:2 17:6
**able**  33:11 52:3
61:21 71:8
**absolute**  68:16
**absolutely**  73:1
**accident**  71:11
**accommodate**
31:4
**account**  47:4 58:5
**accounts**  27:17
45:8 46:16,18
47:22
**accurate**  63:16,18
75:4
**acknowledged**
69:17
**acquire**  51:14

| | | | |
|---|---|---|---|
| **acted** 52:16 59:14 | **administrative** | **agreement** 8:5 | 38:15 40:19 47:18 |
| **acting** 59:16 60:9 | 3:14 7:22 8:20 9:2 | 48:18 49:4,23 | 74:8 |
| 63:19 | 9:4,8,11,20,21 | 51:13 53:7 56:14 | **anticipate** 11:25 |
| **action** 12:22 | 11:14 13:10 14:25 | 56:21,22 57:3,5 | **anyway** 23:13 |
| 24:22 25:15 40:2 | 19:18 20:19 21:7 | 57:14,17 58:4 | **aon** 50:7,8 52:11 |
| 40:4,10 48:23 | 21:13 24:17,21 | 65:13 67:1,13,17 | 52:13,16 53:8 |
| 53:8,10,21,23 | 29:4 30:3 34:7 | 72:3 | 56:3,3,6 59:14,14 |
| 54:6,9,18,24 56:5 | 42:1 | **aguila** 53:25 | 59:15,16 60:9,13 |
| 64:18 67:11 71:15 | **admission** 14:15 | **ahead** 38:20 41:4 | 60:20 61:2,6 |
| 71:16 | **adv** 1:16 | **akin** 5:20 | 63:18,24,24 66:7 |
| **actions** 33:20 | **advance** 18:13 | **al** 1:14 3:5,9 7:4,7 | **aon's** 62:23 |
| 49:15 62:16 67:9 | 31:1 33:15 36:12 | **allegations** 8:4 | **apart** 11:7 60:13 |
| **actual** 12:14 | **adversary** 3:4,8 | **allow** 3:16 | 66:6 |
| **add** 15:14 47:2 | 3:10,11,21 7:20 | **allowed** 34:6 | **apparently** 48:2 |
| **added** 47:2 | 8:3,9,18 9:9,15,20 | **alter** 22:12 23:7 | **appear** 36:19 |
| **addition** 57:23 | 9:25 10:1,9 11:1 | **alternative** 7:12 | 51:15,17,20,21 |
| **additional** 14:1,20 | 11:20 12:25 14:1 | 7:20 | 53:4 |
| 15:2 20:4 28:16 | 14:2,6,22 17:18 | **alternatively** 72:8 | **appearing** 48:14 |
| 30:8 32:11 49:17 | 19:9 20:7,18 | **amended** 3:16 | **appears** 54:13 |
| 52:6 | 21:17,18 22:3,13 | **amendments** 25:8 | **appellate** 35:24 |
| **address** 10:8 13:7 | 22:18,23 23:16 | **america** 6:4 | **applicability** |
| 14:14 16:16 26:3 | 25:10,14,18,19 | **ami** 8:21 19:2 | 72:21 |
| 26:8 51:22,24 | 37:16 50:11 74:6 | 28:5 36:19 37:6 | **applicable** 50:20 |
| 55:6 59:9 70:7 | **adversary's** 15:1 | 37:24 | **applies** 61:15,17 |
| **addressed** 13:15 | **advisers** 42:12 | **amicable** 16:23 | 62:11,20 69:15 |
| 27:8,15,15 | **advisory** 25:7 | 20:15 | 72:1 |
| **addresses** 26:23 | **affiliated** 5:4 | **amount** 9:13 15:3 | **apply** 50:3 54:2 |
| **addressing** 11:13 | **affirmative** 11:6 | 29:12 33:15,17 | 54:20,24 62:20 |
| 11:19 27:10 | 33:21 | 67:18,21,21 68:6 | **applying** 38:12 |
| **adequate** 4:2,3 | **affirmatively** 8:19 | 68:7 72:5 | **appointed** 42:4 |
| 45:2,3,18 46:14 | 9:21 | **amounts** 4:2 8:7,8 | **appreciate** 16:2 |
| **adjourn** 3:10 7:12 | **afforded** 70:10 | 8:23,25 9:12,24 | 41:7 70:20 |
| 7:19 9:2 10:7 | **agenda** 3:1 7:6 | 10:2 11:17 15:18 | **appropriate** |
| 11:20 16:18 17:19 | 43:23 45:1 73:3 | 30:18 32:9,11,12 | 11:22 |
| 38:19 40:21 58:17 | **agent** 52:17 59:14 | 33:18,25 45:3,9 | **approval** 67:10 |
| 65:3 72:18 74:6 | 60:10 63:19 | **analysis** 72:21 | **approve** 3:20 |
| **adjourned** 13:12 | **ago** 58:15 63:13 | **angeline** 5:10 | 68:12,20 |
| 45:17 73:8,9 | 66:1 69:18 71:5 | 47:14 | **approved** 9:5 10:3 |
| **adjourning** 46:21 | **agree** 12:11 13:23 | **annotation** 71:13 | 17:13 49:24 |
| **adjournments** | 16:11 30:19 61:25 | **annotations** 71:10 | **approximately** |
| 34:12,13 | **agreed** 27:20 | **announced** 18:2 | 8:6,7,22,24 26:23 |
| **admin** 26:25 27:3 | 49:13 52:9 | **answer** 3:11 7:13 | 27:13 29:4,6 |
| 27:10 42:16 43:3 | | 12:9 15:22 25:25 | 30:17,17,20,22,23 |

31:20 32:7,25
**area** 53:18
**arguably** 49:8
  50:21
**argue** 10:11 41:1
**argues** 23:1
**arguing** 22:24
**argument** 11:23
  11:24,24 23:8
  58:16 61:18,20
  69:13 72:4
**arguments** 10:6
  55:13 60:25 62:5
**arising** 49:21
**arrive** 52:3
**aside** 17:7 19:10
  32:15 36:19 56:13
**asked** 14:12,20
  16:10 61:6
**asking** 14:12
  21:23 57:4 70:17
  70:19
**assert** 21:16 36:24
  49:20
**asserted** 10:11,22
  22:10 28:17 29:4
  30:18 32:11
**asserting** 8:3
  14:19 22:13,17
  23:19 28:19 37:15
**asserts** 21:7
**assigned** 30:11
**assignee** 49:18
**assignment** 44:23
**assumed** 30:11
  32:21,21 67:15
**assumption** 44:23
**assurance** 4:2,3
  45:3,4,18 46:14
**attached** 63:1
**attempted** 36:12
**attend** 41:15

**attention** 56:22
**attorney** 5:14,21
  6:2 46:5
**attorneys** 5:3 35:4
  35:5
**august** 8:10
**authorities** 27:18
**authority** 52:16
  59:17 61:2
**authorize** 4:1
**authorized** 52:12
**automatic** 48:22
**avail** 16:25
**available** 16:25
**avenue** 5:5,15 6:5
**avoid** 16:24 31:17
**avoided** 34:14

**b**

**b** 2:4 8:13 17:2
  21:8 28:17,19,22
  50:24 67:10
**back** 37:15 40:3
  44:6,18 48:4
  50:18 60:7 62:7
**balance** 53:12
**ballot** 11:15,15
  32:25
**ballots** 8:21 11:16
  14:11,17 27:12,14
  27:19 28:16 30:23
  32:20
**bank** 6:4
**bankruptcy** 1:1
  1:21 2:6 3:23 13:2
  21:1,2 22:4,7
  23:15 25:6 48:20
  67:5,6,7,7
**barred** 14:18 23:3
  37:2 61:4
**based** 8:3 9:13
  10:10 21:20 35:9
  36:5 54:7 55:13
  60:21,21 61:20

62:5 64:20 71:10
**basic** 49:2
**basically** 11:7
**basing** 60:25
**basis** 20:15 30:9
  38:7 52:11 61:13
  62:22
**bear** 70:9
**behalf** 3:17 8:21
  19:1 43:1 44:13
  48:13,14 59:16
  65:19 69:11
**believe** 11:4 17:23
  17:25 18:4 20:17
  31:3,11 32:18
  35:25 36:7 43:12
  54:22 58:18 60:3
  60:16 62:13 68:7
  71:14 72:11
**believed** 34:19
**believes** 34:23
**beneficiary** 69:19
  71:17
**benefit** 61:21
**berra** 65:25
**best** 16:13 34:23
  34:24 63:14
**big** 15:10
**bit** 15:15
**blanket** 55:14
**books** 28:21
**bottom** 10:1
**box** 40:22 41:1
**brainer** 68:20
**brauner** 5:25
**breach** 12:1 24:23
  39:23
**breached** 8:4
**brief** 26:14 55:4
  61:20 62:7 63:3,7
  64:9,9,15 65:4,11
  65:22 66:12,23
  69:1,12 70:7,15

70:17,19 72:17
**briefed** 53:19
  56:24 62:25 64:13
  64:15
**briefing** 63:1
**briefings** 43:18,19
**briefly** 10:8 43:23
**bring** 56:20 60:8
  60:11 61:10 62:19
**bringing** 62:21
  63:9
**brings** 34:8 73:3
**britton** 6:13
**broker** 50:6 52:17
**brooks** 5:11
**brought** 3:22 9:14
  17:18 21:2 23:9
**bryant** 5:22
**building** 6:4 57:24
**burden** 30:7
  31:17 44:20
**business** 67:18

**c**

**c** 5:1 6:13 7:1 67:8
  75:1,1
**calendar** 24:16
  31:5
**call** 48:14 56:21
**cap** 28:10
**capped** 28:10
**carefully** 23:5
**caribbean** 33:25
**carlos** 6:3,16
  48:14 51:18,24
  52:2 59:12
**carried** 30:13
  44:1,20 47:10
**carve** 27:16
**case** 1:3 10:17
  12:4 17:15 36:3
  45:22 49:25 50:5
  53:12,25 55:13
  59:21 62:10 63:8

64:16 69:6 71:4,9
71:19
cases   13:16 64:13
71:20
cashed   27:25
catastrophic
67:23
categories   26:24
31:23
category   27:7,11
28:1,5,14 31:23
31:24 32:1 67:24
cause   16:18 25:15
40:2,3,9 53:8,10
54:17 56:5 64:18
causes   12:22
24:22
causing   66:11
cents   15:2
certain   8:5 30:10
45:18 46:16
certainly   40:16
certificate   52:14
55:25 56:2 60:10
60:14,21 62:23
63:6,6,15,18,20
63:21 64:14,17,19
64:20 65:2,5 70:9
71:24
certificated   64:23
certificates   31:16
52:10,13 53:9
56:4,7,8 61:3,5
64:3,10
certified   59:15
75:9,13,17
certify   75:3
cetera   50:14
chambers   44:24
chance   53:15 71:8
change   63:9
changed   31:4

changes   64:14
checks   27:25
chico   6:2 48:13
circuit   23:9 41:3
cited   53:25
claim   8:10 9:13,23
10:9,10,15,18,19
10:20 11:5,7 12:1
12:8,13,13,20,20
14:10,12,14,25
15:1,5,13 21:6,7
22:9,12 23:20
25:9,12,17 26:6
27:10 28:17 40:6
40:12 43:1,3
44:18 58:23 60:8
60:11,15 61:16
62:3,4,21 63:5,10
63:14,15,23 70:4
72:19 73:12
claimant   5:14
44:19 48:23
claimant's   44:19
claimants   9:8
16:4 26:24 36:7
44:14
claiming   17:8
claims   3:14 7:23
7:24 8:3,11,12,15
8:17,20 9:3,5,8,11
9:20,22 10:12,22
10:24 11:11,14,20
11:21,23 12:7,12
12:17,22,23 13:2
13:10,14,17,20,25
14:5,11,16,17
15:12 16:6,24
17:14,17 19:7,8
19:18 20:9,19
21:16,21 23:16
24:5,7 25:2,3,5
26:25 27:3,5,14
27:14 28:17,19,19

29:3,5,7,8 30:9
32:22 33:6,15,24
34:6 35:6,18
38:16 39:24 41:9
41:25 43:14 44:1
44:3,16 49:8,11
49:16 62:16 70:13
74:10
clarify   56:13
clause   48:18
56:13,14
clauses   58:3
clear   10:14 39:21
41:20 44:21
cleared   27:24
clearly   47:17
50:10 60:18
clerk   7:2
client   24:11 68:16
clients   20:9,14
23:2 46:5,7
clock   20:8
closed   48:3
code   3:23 21:2
67:7,8
colleague   13:1
46:23 47:14
collecting   33:22
colon   3:17 48:12
48:12,17 49:6
50:7 51:7,24 55:5
55:23 56:9,12,18
56:21 57:4,7,11
57:17,21 58:2
66:19,23,25 67:3
67:20 68:2 69:1
combine   13:19
14:9 15:23
combined   66:20
come   10:14 43:8
44:6 56:23 58:17
72:7 73:14

comes   68:22
coming   30:25
68:18
commenced   33:19
37:17
commentary   25:7
committee   25:7
25:11,17 42:11,11
42:15,16,21 43:16
common   16:3,3
26:5 34:20 35:3,3
38:4
companies   45:18
company   44:8
59:18,20 61:1
62:5 71:11
compare   67:24
complaint   3:12
7:21 8:3,6,9,19
10:25 21:1 22:19
23:12,24 24:2
25:24 40:13
completed   32:24
complicated   52:5
complied   19:16
comply   67:3
concept   34:4
concern   19:5 20:6
concerned   19:12
19:15 24:11 62:24
63:10
concerning   13:2
conclude   72:19
concluded   73:23
concludes   41:9,11
conclusion   73:3
conditions   18:6
70:12
conduct   9:14
10:11
conducting   42:3
confer   24:6

conference 3:6
  7:7 26:4
conferred 17:4
confidential 49:4
  49:5
confirmation 9:6
  19:17 20:12 26:21
confirmed 36:6
confirming 17:22
confused 17:21
congress 22:7
  25:12
conjunction 20:6
connection 9:3,24
  10:22 11:12 13:25
  17:18 44:22
consensual 30:9
  30:12
consensually
  34:14 50:5
consent 3:14 8:20
  9:5,22 30:3
consider 34:3
  44:5 69:2
consistent 31:16
  60:16 66:15
consistently 13:15
consolidate 12:7
  12:16 25:19
consolidated 25:5
consolidating
  13:2
consortium 43:1
constituted 51:14
constructive 11:3
  12:14,21
construe 54:2
construing 54:7
contact 32:25
contacted 33:2
contemplate
  34:25

contemplated
  17:22 25:7
contend 7:24
  50:21 62:8
contends 49:22
content 57:14
contested 8:17 9:4
  12:17 13:3 29:9
  29:12 30:7 34:15
  46:13 48:8
context 9:10,20
  19:14 22:3 26:3
contexts 7:23 9:5
continue 14:21
  20:7 33:11 34:3
  46:7 47:10
continues 45:25
continuing 33:12
  46:12
contract 12:3
  24:23,23 37:2,3
  37:22 40:1 52:7
  52:20 58:8,8
  59:17 60:24 61:1
  62:2
contracts 30:10
  32:20 36:25 39:23
contractual 37:7
  50:19,25 62:1
controlling 36:18
controls 64:14,17
convenience 34:4
conversations
  16:22
conversion 24:24
  40:3,14
coordination
  15:23
corp 5:3
corporation 1:9
  1:17 3:5,9 7:4,8
  70:2,3

corporation's
  7:12
corporations
  51:11
correct 8:14 17:15
  20:1 21:8,9,12
  23:18,22 28:7,25
  39:6 43:17 49:6
  50:6 51:6 52:22
  62:13 71:6
correctly 62:9
correspondence
  16:22
cost 14:1 61:11
costs 34:7
counsel 15:25
  16:18,21 17:10
  24:7 26:7 48:9
  71:20
count 24:25 40:10
  40:14
country 75:23
counts 24:24
  39:22 40:5,13,19
couple 11:9 16:15
  65:20
course 17:4 28:4
  64:9 67:9,11,14
  67:16 68:14,17,20
  72:4
court 1:1,21 7:3,9
  7:11 8:13,15 9:1,6
  10:3,17,23 12:4,6
  12:19 13:4,7,8
  14:18 15:4,10,21
  16:1,9,11,14
  17:13,14,21 18:7
  18:10,12,14,17,22
  18:24 19:6,10,13
  19:19,22,24 20:2
  20:23,25 21:5,10
  21:13,16,20,25
  22:2,17,23 23:4

23:12,19,23 24:10
  24:13,15,20 25:19
  26:13,16 28:3,5,8
  28:13,24 29:1,15
  29:17,19,21,22,25
  30:2,5,7,15 31:2,4
  31:6,9,13,18,22
  31:25 32:3 34:18
  35:8,12,21 36:3,5
  36:16,23 37:4,9
  37:11,19,23 38:2
  38:4,6,11,14 39:5
  39:7,13,15,18,20
  39:25 40:9,18,24
  41:6,10,13,16,18
  41:24 42:6,9,13
  42:15,19,22,24
  43:4,9,13,21,24
  44:8,12 45:13,16
  45:23 46:1,3,8,10
  46:13,17,20,24
  47:6,8,12,15,17
  47:24 48:1,4,6,10
  48:14,16 49:1,7
  49:24 50:8 51:20
  51:22,23 52:1,21
  52:24 53:2,4 55:6
  55:8,10,18 56:1
  56:11,17,19,24
  57:6,9,12,20,22
  58:7,22 59:9,11
  60:3 61:8,25 62:6
  63:20,23 64:4,12
  65:3,11,21 66:21
  66:24 67:2,5,9
  68:1,3 69:6,18,25
  70:6,17,19,22
  71:7 72:24 73:5
  73:11,19,21
court's 33:23
covenant 57:15
cover 72:19

[coverage - distributions]                                                        Page 6

coverage   57:18,23
  57:24
covered   8:22 22:8
  23:15 51:9
covering   8:24
covers   11:15
  57:18
cozier   5:11
create   67:6
creates   65:15
creating   20:4
creditors   8:1 10:4
  16:25 29:7 30:22
  32:20,25 33:23
  42:2,10,15,21
critical   73:1
crozier   7:5,10,16
  7:17 8:14,16 11:9
  12:5,15 13:1,23
  16:15 18:20 26:15
  37:1 39:1,3,6,12
  39:14,16,19,21
  40:16 41:12,14,17
crux   48:17
cure   32:11
current   13:10
currently   15:17
  28:15 30:16 34:15
  35:2,13

d

d   2:5 7:1 74:1
daily   43:18,18
dale   6:15
damages   9:13
  10:10,21 53:21
  67:25
date   27:9 34:8
  35:11 49:20 73:10
  75:19
day   45:5,5,22
days   8:18 39:10
  65:25

de   34:5
deadline   12:9
  31:14 36:13 38:15
  39:4
deadlines   30:24
deal   15:11 23:24
  25:8 26:2 28:23
  66:2
dealing   16:5
  24:17
dealt   12:8,23 14:2
  25:9,9,13 58:13
  66:1
debtor   22:9 23:21
  24:1 26:7 50:1,2,9
  51:1 59:21 60:23
  61:11 63:1 67:9
  67:10 69:4
debtors   1:11 3:22
  4:1 5:4 7:18,19,24
  8:4,11 9:1,18 10:7
  10:13 11:11 13:12
  16:1,21 17:8,10
  17:19 19:16 20:8
  22:15 24:7 26:20
  26:22 27:12,19
  28:20,21 29:2
  30:19,21 32:9,17
  32:18,22,24 33:5
  33:6,10,14,18,21
  33:22,25 34:3,13
  34:19 35:25 37:18
  39:16 41:9 42:11
  43:2,25 45:2,6
  48:19,22,24 49:8
  49:9,13 50:14,22
  50:24 51:1 53:16
  53:17 54:23 59:1
  62:8,15 64:15
  65:19 66:11 68:25
  69:11,16 71:24
  72:12,24 74:10

decide   21:22
decided   14:25
  56:25
decidedly   9:9
declaration   11:2
declare   37:17
declaring   50:2,12
  50:13
deducted   27:13
defend   49:14
  53:16
defendant   1:18
defending   72:12
defer   13:1
definitely   25:25
  59:18
delay   14:1,8 16:7
  16:19 23:1
delineating   17:3
demand   33:19
  62:18,21
demands   49:15
  62:16
den   53:25
denied   38:8
deny   61:4
depends   24:24,25
depleting   16:24
deposit   4:2 27:17
  45:3
deposition   17:3
deposits   45:6 48:4
depriving   48:23
described   55:15
  70:11
description   74:5
destiny   36:18
determination
  30:10
determine   11:22
  19:7 24:13 45:18
determined   13:22

detriment   8:1
differ   59:10
different   15:19
  26:6 61:3 62:8
  66:17 69:2 72:14
diligence   44:6
direct   53:21 54:5
  54:9,18,24 71:16
directed   55:12
direction   33:24
  70:3
disagreement
  50:17 65:1
disallowance
  44:21
discovery   22:21
discussed   43:20
discussion   54:4
discussions   38:18
  38:19,22 41:2,4
dismiss   10:14
  11:12,25 15:11
  16:12 24:2,9 38:7
  38:8,24 39:5,8,10
  39:17,22 40:18,20
dismissed   14:5
  22:3 25:1,1,2
dispute   68:19
  69:16 71:18,21
disputed   30:21
  31:20 32:16 33:15
  35:6,23 38:13
disregard   18:18
distinction   58:12
distributable
  33:17
distribution   17:8
  17:24 18:3 19:21
  20:10,10 27:2,6
  27:22 33:16 43:7
distributions
  19:19,25 28:12

**district** 1:2 9:16
**divided** 26:24
**docket** 28:18 51:9
**document** 3:12
**doing** 8:1 71:1
**dollars** 29:11
68:18,19
**dozen** 43:10
**dpr** 54:1 71:11
**drain** 2:5
**drop** 35:17 37:20
37:21 38:5,17,21
40:22 41:1
**due** 44:5
**duplicate** 27:14
**déjà** 65:25

**e**

**e** 2:4,4 3:17 5:1,1
7:1,1 39:10 74:1
75:1
**earlier** 38:7
**earth** 21:20
**easy** 47:17
**ecf** 3:18,23 4:3
**effect** 49:24 50:13
61:11 66:11
**effective** 27:9
**effectively** 10:20
**efficiency** 33:12
**efficient** 9:7 10:3
11:19 33:10
**efficiently** 13:16
14:7 16:5
**effort** 16:23 70:16
**ego** 22:12 23:7
**eight** 27:23
**either** 12:14 14:5
22:24,25 29:22
36:8 44:22 50:12
54:21,23 58:23
62:11 72:6
**electronic** 75:9,13
75:17

**eleventh** 30:21
**eligible** 27:2
**email** 33:2 44:24
**emails** 32:18 33:4
43:7,18
**enforceable** 48:21
**engaged** 16:21
22:21
**english** 71:19
**enrichment** 24:22
39:23
**ensued** 18:3 30:4
**ensure** 10:3 32:9
**enter** 36:14
**entered** 29:23
45:4 46:24
**entire** 56:14
**entities** 55:15 65:9
**entitled** 14:10
60:12
**entity** 64:19
**entry** 26:21
**ephedra** 9:15
**equally** 62:20
**equitable** 10:12
10:16,19,21 11:12
11:17 12:17 14:9
14:12,15
**equitably** 10:5
**esq** 5:8,9,10,11,18
5:25 6:11,12,13
6:14,15,16
**essentially** 14:16
49:9
**establish** 12:14
**established** 17:13
23:8
**establishing** 3:21
**estate** 7:25 10:4
11:8 22:15 32:8
33:11 37:18 48:23
50:14

**estate's** 8:1 16:25
**et** 1:14 3:5,9 7:4,7
50:14
**event** 50:24
**everybody** 16:8
43:11
**evidences** 52:18
**exactly** 61:1 69:18
69:23
**example** 17:1
30:10 55:21
**exclude** 23:25
**exclusions** 70:11
**exercise** 53:23
67:17
**exist** 67:6
**existence** 65:8
**expand** 48:22
**expect** 34:10
**expedite** 33:24
34:2
**expedited** 20:12
**expeditious** 16:23
**expend** 7:25
**expense** 7:23 8:20
9:3,4,8,11,20,22
11:14 21:7,14
34:15
**expenses** 24:18,21
**expert** 51:18
**explain** 47:14
63:8
**express** 11:2 12:1
12:20
**expressed** 17:11
**extend** 15:22
**extended** 62:12
**extension** 3:10
7:13,21 25:25
74:7
**extensively** 30:7
**extent** 24:25
40:13

**f**

**f** 2:4 17:5 54:1
75:1
**face** 24:2 64:5
**fact** 19:3 21:17
23:1 58:23 61:2
61:20,24 62:15
67:20 69:17
**factors** 66:18
72:12
**facts** 38:12 72:15
**factual** 13:22
24:14
**fail** 5:8 13:5,6,9
14:20 15:7,14
16:7,10,12 17:25
18:9,11,13,16
26:9,9,14,18,19
28:4,7,9,14,25
29:2,16,18,20,22
30:1,3,6,16 31:3,7
31:11,14,24 32:1
32:4 35:2,9,22
36:4,11,22,24
37:8,10,13,20,25
38:3,5,9,12,23
39:2 40:7,23 41:5
41:7,22,25 42:8
42:10,14,18,20,23
43:19,22,25 44:11
44:25 45:15,21,24
46:2,4,9,12,15,18
46:23,25 47:7,9
47:13,16,22,25
48:2,5,7,11 73:8
73:16,20
**fair** 24:15
**fairly** 10:4
**false** 60:10 62:23
64:23 71:23
**familiar** 73:17
**far** 17:9 25:22
40:1 62:24 63:10

72:15
**faster** 36:1
**favor** 53:17
**february** 2:1 3:2
75:19
**feel** 19:15
**feld** 5:20
**ferraiuoli** 6:1
**fewer** 17:3 29:7
**fifth** 5:5
**fighting** 64:6
**figure** 22:21
**file** 15:16 18:13
19:3 39:7,16
48:23 72:24
**filed** 8:2,9,10,13
8:18 13:9,13
14:11,16 17:6
18:2,14 25:18
28:18,19,20 29:2
30:21 35:10,17
44:4 50:11
**filing** 38:24
**final** 34:4 46:25
**finally** 70:8
**find** 32:25 54:8
58:3
**fine** 41:16 42:9,24
45:13 46:21 52:1
73:11
**first** 7:6 8:21 9:12
10:9,13 11:2,23
13:22 14:14 16:2
20:9,11 25:22
27:11,22 29:13,16
34:24 35:9 42:5
43:25 45:5 49:3
60:7 68:4,4,10,22
74:10
**five** 62:10
**fl** 6:7
**fled** 3:17

**flexibility** 35:13
**focus** 32:5
**focusing** 56:6,7,19
**foley** 5:13 43:1
**folks** 46:11
**following** 26:21
**force** 38:21 49:23
73:14
**forced** 24:1
**forcing** 7:23
**foregoing** 75:4
**form** 15:19 50:11
**formal** 33:2 44:4
**forth** 19:17
**forward** 11:22
13:16 14:3 16:10
16:12 34:10,16
35:7,13,19,23
36:4 44:2
**found** 34:11
**four** 24:24,25
25:2,5 35:5 44:16
**fraudulent** 40:11
**friday** 17:2
**frivolous** 16:13
**fronts** 7:25
**frustrated** 20:14
**frustrating** 70:20
**fundamental** 50:4
**funds** 69:3
**further** 34:2
**furthermore** 52:9
59:24
**future** 19:25

**g**

**g** 7:1 74:3
**gallagher** 4:25
75:3,16
**garrett** 5:8 13:6
26:9,19
**gatekeeping** 66:4
**gather** 26:4

**gauntlet** 24:4
**gautier** 6:3,16
**general** 8:12
10:24 23:7 24:21
37:16 58:24 71:10
**generally** 16:4
23:20
**getting** 43:11,18
59:2 68:16
**give** 17:19 26:11
34:21 40:14 49:8
60:14 63:3,5,7
65:4 70:15 71:8
71:19 72:17
**given** 19:6,22,23
19:25 25:23 33:23
56:4 70:20 73:12
**giving** 60:10
71:23
**go** 14:3 20:25 33:2
34:10,16 35:7,13
35:19,23 36:4
37:15 38:20 41:4
43:6,22 49:3 51:9
56:6,9 59:7 62:8
70:25
**goal** 33:14
**goes** 25:22 28:10
66:25 68:9 70:3
**going** 15:2 17:24
24:16 35:25 36:16
36:17 41:3 42:7
46:4 47:2 51:9
53:5,14 56:9 57:1
59:4,6 65:3 68:4
69:3,4 70:14
**good** 7:3,5 13:5
26:18 42:25 48:12
48:16
**gotshal** 5:2 7:17
13:6 26:10,19
65:19 69:11

**gotten** 59:1 60:3,6
**governing** 3:21
**grant** 44:15 65:22
65:23
**granted** 46:14
47:20 52:16 62:1
**greater** 67:6
**group's** 43:15
**groups** 42:22
**gu** 6:14
**guess** 37:24 46:20
50:3
**gump** 5:20
**gustavo** 6:2 48:13
**guys** 64:13 66:2

**h**

**hand** 54:17 72:13
**handled** 13:24
**happen** 25:20
**happened** 60:6
**happening** 35:1
**happens** 20:5
59:19,23
**happy** 63:3,7
**hard** 53:9 60:24
**harm** 50:1 53:13
**harmless** 49:14
**hauer** 5:20
**heard** 19:6 34:22
34:24 43:5 53:6
65:20 69:7 71:20
**hearing** 3:1,4,8,14
3:16,20 4:1 18:9
24:21 29:9,12
31:1 34:9 35:7
36:9,13,14 38:16
38:17 39:3,11
40:21,22 52:4
57:1 58:14 67:12
72:18
**hearings** 53:6
**heavily** 58:25

**held** 10:17 33:25
  58:16
**helps** 54:17
**heretofore** 16:19
**highway** 17:9
**history** 50:9,15,16
**hold** 49:13
**holding** 51:11
**holdings** 1:9,17
  3:5,9 5:3 7:4,8,11
  70:2,3
**hon** 2:5
**honor** 7:5,16,19
  9:1,18 10:1,15
  11:10 12:16 13:5
  13:20 14:24 15:15
  15:24 16:7,8,16
  17:1,16,25 18:16
  18:20,23,25 19:3
  19:5,9,11,15,20
  19:23 20:1,6,10
  20:16,18 21:4,9
  21:12,15,19,23
  22:16,20 23:18,22
  24:6,19 26:9,15
  26:18,21 27:11
  28:4,7,25 30:6,19
  31:1,12,19,24
  32:6 33:13 34:8
  35:22 36:11,22
  37:20 39:4,21
  40:17,23 41:5,8
  41:12,23 42:8,18
  42:23,25 43:17,22
  44:1,11,25 45:4
  45:21 47:3 48:7
  48:11,12 51:7,22
  51:24 52:4 55:5,7
  55:23,24 56:9
  58:21 59:9,10,13
  59:24 60:25 61:18
  63:21 64:1,8,25
  65:6,18 67:20

69:10,23 70:8,14
  72:23 73:2,8,16
  73:20
**honor's** 31:4
**hope** 23:5 33:11
  42:4 73:12
**hopefully** 43:23
**huh** 23:11
**hundred** 13:13
  15:2
**hundreds** 33:19
  37:8
**hurricane** 49:11
  49:11 60:6 67:24
**hwang** 5:10 47:14

**i**

**i.e.** 62:22 65:4
**identified** 27:13
  67:16
**ignored** 40:10
**implicate** 25:13
**implied** 24:23
**important** 53:13
**imports** 35:4
**imposition** 11:3
  25:15
**impression** 34:18
**impressive** 29:10
**improper** 17:2,3
  68:11,12
**improperly** 23:20
**inclination** 62:7
**include** 11:16
  15:11 25:15 42:16
**included** 28:15,20
  48:18
**includes** 28:15
**including** 27:16
  32:11 43:19 49:19
**inconsistent** 47:20
**incorporate** 21:17
**incremental** 40:7

**indemnification**
  61:14,16,19 62:20
  64:21
**indemnified** 59:3
**indemnify** 49:13
  49:14 62:15
**indemnity** 48:18
  54:19,20 56:15
  72:1
**independent**
  60:20
**indicate** 34:12
**indicated** 16:18
**indiscern** 64:11
**indiscernible**
  17:19 22:1 67:22
**individual** 32:18
  53:20
**individuals** 20:21
  22:16,19
**information** 33:1
  33:8,22
**informed** 33:4
**initial** 7:6 19:20
  27:2,6 43:7
**initiated** 53:14
**injury** 54:12
**insurable** 59:25
  60:1,5
**insurance** 50:13
  50:18,23 52:11,12
  52:15,24 55:20,25
  56:2,23 57:8,10
  57:12,18,18 58:10
  59:17,18,20 60:13
  61:1,1,23 62:5,11
  63:6 64:20 65:16
  65:16,17 66:19
  69:15 70:9,10
  71:11
**insurances** 51:16
**insure** 52:7,8
  55:16,16,19,21

64:11 65:9
**insured** 48:25
  49:17,17 50:20
  51:4,15,17 52:6
  52:18,21 53:24
  54:11 55:14,22
  57:13 59:21 69:14
**insurer** 53:22,23
  53:24 54:10,25
  63:19 71:15
**insurers** 51:18
  66:6 68:23 70:1,4
  71:23 72:9,14
**insuring** 51:18
**intended** 71:17
**interest** 23:19
  45:10 51:14,17
  58:11 59:25 60:1
  60:5 61:23 62:1,2
**interests** 31:18
  51:20,21 53:4
**international** 44:9
  44:16
**interpretation**
  71:5
**interpreting** 71:9
**interrupt** 28:3
**interviews** 42:4
  43:12
**involved** 20:21
  22:11 43:15
**irma** 49:11
**issue** 13:7 14:4
  20:19 23:2 35:4
  35:15,18 37:20,23
  38:4,17,25 40:1
  40:22 41:1 50:4
  51:25 52:4,13,13
  55:7 56:1,20
  57:12 58:20 61:2
  61:3,3,4 63:2,8
  65:4,11 66:3,4,10
  66:12 67:13,14

68:6,7,7,22 70:15
72:5,10,12,18
73:9,19
**issued** 50:23
64:19
**issues** 13:14,21,22
16:3 24:13,13,14
26:5 34:20 35:3,3
36:10,20,21 37:12
40:12 43:19,20
55:12 56:12 70:21
**issuing** 56:4
**it'll** 26:14
**item** 7:6 43:25
45:1 48:8
**items** 34:17 43:23
**itselves** 52:6

**j**

**jacqueline** 5:9
65:18 69:10
**jamie** 4:25 75:3
75:16
**jennifer** 5:11 7:10
7:17
**johns** 10:18
**joint** 36:21 51:12
51:13,13
**jointly** 50:23
53:24 57:24
**judge** 2:6
**judgment** 10:20
15:11 35:23 38:8
67:18
**judicial** 33:10
**justification**
48:21

**k**

**keep** 22:4 45:24
46:21
**know** 13:16 14:22
15:8 20:11 24:12
26:2,7 31:15 32:5
34:23 35:25 37:5

38:12 40:25 45:24
46:2,22 49:22,22
54:21 55:2 56:12
57:24 59:6 61:8
66:21 70:14 72:25
73:13
**knowledge** 59:22

**l**

**l** 5:25 74:3
**labov** 5:18 42:25
42:25 43:5,10,17
**landlord** 58:3,9
58:11 69:16
**landlords** 32:12
49:19
**language** 47:1,2
51:8,19,21 54:5
55:1,2 58:2,4 63:4
65:12,14 69:13,17
**lapse** 30:24
**lardner** 5:13 43:1
**large** 33:24 36:7
**largely** 46:6
**law** 9:15 12:2
17:12 53:12 58:24
62:10 66:15 71:4
**lawsuit** 54:14
56:20
**lawyer** 34:23,23
34:24
**lay** 50:16 58:15
**lead** 33:7
**leading** 71:9
**lease** 50:19,25
51:13 52:21 53:7
56:18,21,22 57:3
57:4,5,14,17 58:4
60:2 65:13
**leasehold** 59:25
**leave** 38:23
**leaves** 31:19
**leaving** 30:20 33:1

**led** 34:12
**left** 27:19 32:23
59:20 72:25
**legal** 13:21 24:13
36:23 38:10 43:20
75:22
**legality** 64:2
**lessor** 59:20,22
**letters** 33:19
**liability** 9:16
55:12
**lien** 62:1
**lifted** 50:4 56:2,6
59:1 66:8
**lifting** 50:2,12
54:23 71:25
**ligee** 6:14
**limitations** 53:22
54:6 71:15
**limited** 7:25 49:19
54:7 70:25
**limits** 69:24 70:12
**list** 43:7,8 54:11
**listed** 50:20
**litigate** 9:10 11:4
11:11
**litigating** 7:22
22:5
**litigation** 9:16
20:4,22 26:5
35:25 53:14 59:5
62:18
**little** 15:15 53:15
63:3
**live** 40:13
**llc** 3:18 6:1,2
48:13
**llp** 5:2,13,20
**locations** 45:8
**lockstep** 42:23
**lomas** 62:10
**long** 21:10 46:20

**longer** 32:22 49:5
**look** 37:16 52:5
62:14 64:1 68:3
71:22
**looked** 53:7
**looking** 15:3 54:5
**looks** 23:14
**loses** 34:24
**loss** 48:24 49:17
51:5 52:14,18
54:11 55:22 57:13
58:1,3 59:15
69:19
**losses** 53:21
**lot** 16:3,3 26:6
31:20 33:9 46:18
46:18 66:12
**lpra** 53:19 60:16
**lucas** 6:12
**lump** 34:4

**m**

**main** 73:19
**making** 11:25
18:2 19:19 42:8
62:18
**mall** 3:18 6:2
48:13 51:1 57:23
57:25 58:1 65:4
**mandate** 32:4
**manges** 5:2 7:17
13:6 26:19 69:11
**manner** 11:19
**manville** 10:18
**march** 30:25,25
31:2 34:10 35:14
35:19 39:3,4 42:5
43:11 72:17
**marcus** 5:9 65:18
65:18,23 69:10,10
70:8,18 71:6
72:23 73:2,22
**maria** 49:11

**marina** 53:25
**market** 8:5
**marketplace** 35:16 37:22
**masquerading** 10:21
**matter** 1:7 8:17 9:4 12:18 13:3 20:15 22:5 38:10 45:17 48:17 60:5 72:4
**matters** 3:1 7:14 25:13 30:7 34:15 35:23 46:5 49:21
**maximize** 33:17 34:2
**mazer** 6:10 19:1
**mean** 12:11 45:19 46:10 54:22 62:11 63:17 64:18 67:18 71:9
**meaningful** 38:21
**means** 17:10 69:17
**mediation** 73:6
**mediators** 73:12
**memorialize** 41:19
**menendez** 6:15
**mentioned** 35:17
**merely** 54:1
**merits** 19:7 70:4
**met** 17:4
**million** 27:2,21,21 29:4 30:17 67:22
**mind** 58:25
**mineola** 75:25
**minimal** 16:20
**minimum** 18:5
**minimus** 34:5
**minutes** 68:10
**misrepresentation** 40:11

**misrepresented** 61:24
**missing** 20:9
**moment** 20:25 32:15
**monday** 31:3,10
**money** 9:13 10:10 10:19,20 19:10 22:6,9 24:2 45:9 47:4 58:5 59:2,2,8 60:3,4,6 66:12 68:8,16,24 69:6,7 72:6
**monies** 15:3
**month** 47:10,10 47:11,11
**months** 20:16,16 25:4 58:15 63:13 66:1 71:5
**moot** 15:1,6
**moots** 9:23
**morning** 7:3,5 13:5 26:18 35:16 42:25 43:6 48:12 48:16
**mortgagee** 49:16 59:19
**mortgagor** 59:22
**motion** 3:9,16,20 3:20 4:1,1 7:12 10:7,14 11:12,25 14:6 15:11,11 16:17 17:7,23 18:5 19:3,10 20:7 24:9 38:7,7,23 39:5,8,10,16 40:18,19 45:2,17 53:19 54:3 56:24 58:13,18 65:22,24 74:6
**motions** 28:17,18 47:10,19 50:10

**movant's** 48:9
**move** 7:19 11:22 12:9 16:10,12 24:2 26:1
**moved** 13:16
**moving** 28:1 36:19 39:22 44:2
**multiple** 34:5

**n**

**n** 5:1 6:11 7:1 74:1,3 75:1
**nail** 71:3
**nalco** 44:8,16
**name** 18:25 20:22 51:4,4 52:2 54:15 55:14 58:5
**named** 22:19 51:17 52:18,21 54:11 55:22 57:13 58:1
**names** 43:8 52:6 57:25
**naming** 55:22
**necessarily** 13:18 25:14
**need** 11:13 15:15 15:22 18:5,6 33:16 34:20 41:21
**needs** 64:5
**negligent** 40:11
**negotiating** 43:14
**negotiations** 17:8 36:15 70:24
**neither** 54:3 69:19
**net** 34:1
**never** 56:25 61:7 64:12 65:23 71:4
**neville** 6:11
**new** 1:2,23 5:6,16 5:23 9:16 14:9 23:15 73:14
**nicole** 4:24 75:3 75:12

**night** 17:6 18:15 19:4
**nilly** 23:10
**ninety** 27:23
**nominated** 42:4
**non** 27:3 38:7 48:22 66:10
**normal** 31:16
**normally** 11:4 54:9
**north** 6:5
**note** 69:25
**notice** 3:1 17:2 18:8,9,10,15 19:22,23,24 45:11 67:11
**notices** 18:13 26:22
**noticing** 73:9
**notion** 72:6
**notwithstanding** 72:9
**november** 8:2
**number** 7:8 30:17 32:2 33:14 34:10 40:25 50:10 56:25
**numbers** 34:12 43:5
**ny** 5:6,16,23 75:25
**nygard** 53:12 62:9 72:22

**o**

**o** 2:4 7:1 75:1
**object** 17:23 18:12
**objected** 8:11 21:6 29:9 45:10
**objection** 9:7 11:5 12:8,23 13:12,13 14:24 15:6,13,14 15:16,20 19:7,8 21:11 22:1 25:9 25:13,17,19 30:24

[objection - pays]                                                                    Page 12

31:14,17 35:11,18
36:13 37:14 38:1
38:10 44:1,1,4,4,7
44:15,17 54:3
73:5 74:10
**objections**  13:9,11
13:21 14:2 26:6
29:2,13,16 30:13
30:22 33:6 34:11
35:10
**obligated**  52:7,9
55:16,16,19,19,21
64:11 65:9 70:1
**obligation**  60:22
**obligations**  56:23
**obtaining**  57:23
**obviously**  33:8
44:19 49:12 53:17
**occasions**  69:3
**occur**  31:15
**october**  26:22
**odd**  43:7
**oh**  40:3 47:1
**okay**  7:3,9 12:5
13:4 16:1,14
17:21 18:19 24:10
24:20 26:13,16
28:8 29:1 30:2,5
30:15 31:6,13,25
32:3 35:8 37:19
39:2,12,20 40:18
41:10,13,24,24
42:6,13,14,19,22
42:24 43:9,21,21
43:24 44:8,12,15
45:13 46:1 47:6
47:12,15,16 48:6
48:10,16 53:2
55:11 56:11 57:21
59:11 66:24 69:7
70:18 73:2,11,21
**old**  75:23

**omnibus**  9:6
13:11,12,13 19:8
29:2,16 37:14
38:9 43:25 44:15
44:17 74:10
**onboard**  43:11
**once**  12:8 46:24
71:3
**one's**  15:7
**ones**  29:18 67:25
**ongoing**  42:2
**online**  37:6
**operating**  51:13
**opinion**  14:6
**opinions**  54:8
**opportunity**
17:23 19:6 34:22
67:12
**opposed**  12:13
21:21 23:20 63:5
65:16 68:24
**opposition**  10:7
16:17
**opt**  8:21 26:25
27:3,4,4,5,10 28:5
28:15
**opted**  8:19 9:21
9:21 27:1,7 28:24
**option**  53:21
**orange**  6:5
**order**  3:17 9:6
17:22 19:17,24
20:12 26:22 33:16
34:1 41:20 43:8
44:24 45:5,14
46:24 47:2 52:9
**orderly**  9:7 10:2
10:22 11:19,19
17:12
**orders**  3:20 23:3
29:23
**ordinary**  67:9,11
67:14,15 68:2,13

68:17 72:4
**organization**
51:12
**orlando**  6:7
**ostensibly**  70:23
**ought**  71:18
**outdated**  46:6
**outside**  45:7
**outstanding**  24:8
27:25 30:16,18
46:7
**overall**  26:11
**overlap**  33:20
**overrides**  65:5,7
**owe**  33:18
**owed**  17:12 33:25
72:8
**owner**  49:17
**owners**  49:19

**p**

**p**  5:1,1 7:1 44:5
**p.r.**  71:11
**packaging**  44:9
44:16
**page**  51:10 74:5
**paid**  20:20 27:8
27:16,18 32:10,13
32:13 52:24 60:4
70:13 72:9
**paint**  44:10
**pamela**  4:24 75:3
75:8
**paragraph**  70:7
**paragraphs**  49:9
62:10
**park**  5:15,22
**part**  8:4 13:11
15:12 22:23 23:12
25:23 29:25 30:1
33:24 36:25 45:20
53:1 68:4
**participation**  9:23

**particular**  16:6
**particularly**
20:17
**parties**  17:4 22:11
26:23 27:5 28:11
31:18 32:18 33:4
34:21 36:1,14,18
36:24 37:6,21
38:3,18,18,21
40:25 42:3,16,21
44:5 46:19 47:3
48:22 49:2 53:13
56:24 58:13 62:7
62:25
**partnership**  51:12
**party**  38:19,22
41:4 45:7,10 47:5
51:15 54:10 61:23
63:1 69:14
**paul**  5:18 42:25
**pause**  26:17
**pay**  17:11 49:12
55:20 59:4,23
60:22,23 66:11
70:2
**payable**  58:3
**payee**  49:18 51:5
52:18 54:11 55:22
57:13 58:1 59:16
69:19
**payees**  52:15
**payment**  49:10
**payments**  27:23
34:5,5
**paymer**  6:10
18:23,25 19:1,11
19:15,20,23 20:1
20:6,24 21:4,9,12
21:15,19,23 22:1
22:15,20 23:11,18
23:22 24:6,11,19
**pays**  59:21

pending 8:17 9:4
  12:8,17 13:3
  14:24 15:7,17,19
  21:11 37:25 45:21
people 18:12 27:4
  27:24 35:19 46:15
  55:3 73:14
percent 27:20,22
  27:23 28:10,11
  29:8,12 30:20,23
person 42:4 49:18
  52:6
personal 54:12
persons 55:15
persuade 65:23
persuading 66:16
persuasive 62:6
pertains 26:4
pertinent 8:4
petition 8:7,8,23
  8:25 9:12,14,24
  10:11 11:16 13:11
  21:6,6 28:21
ph 6:10 19:1 44:9
  51:12
phone 71:20
piercing 22:12
  23:8
place 8:5 57:8,9
  58:20
placed 58:5
plain 54:5 65:12
plains 1:23
plaintiff 8:21,23
  11:14,15 17:15
  54:15
plaintiffs 1:15
  3:11 7:21,22 8:2
  8:10,16,19 9:2,10
  9:12,19 10:1,6,9
  10:11,15 11:13,17
  11:20,25 16:18,22
  17:1,6,10,11

plan 17:22 27:9
pleading 18:14,18
  66:3
pleadings 13:24
  15:12 18:1 21:18
  22:6 49:2 60:19
please 7:3
plus 27:4 28:16,18
  28:20
point 24:15 30:6
  47:18 60:7 68:4
  69:8 72:2,19 73:1
pointing 50:1
points 65:20
  69:12
policies 49:11,16
  51:3,5 52:5 53:7
  60:14,22 61:12,14
  61:15 62:17,19,24
  63:5,11,12,14
  64:22 66:6,9
  70:10,12,12 71:23
  72:2,14,20
policy 50:20 51:8
  51:23 52:12,15,15
  52:19 53:23 54:6
  54:10,14,14,19,20
  54:25 55:14 58:10
  60:24 63:25 64:10
  64:14,17 65:1,5,8
  65:8,13,15 68:18
  69:13,20,24,25
  70:5 71:16
pool 16:24
population 28:22
portions 13:11
position 9:18
  53:17 63:13 66:19
  66:21 69:1
post 8:8,22,25
  9:24 11:16 28:21
potential 50:1

practice 31:16
pre 3:5 7:6 8:7,22
  8:24 9:12,13
  10:11 11:16 13:11
  21:5,6 25:23 26:4
predecessors 51:2
predicate 40:14
preference 33:20
  34:1 73:15
preferences 34:1
prejudice 25:3
  50:15 58:19 70:23
premature 20:3
premised 40:5
prepared 11:11
  35:20 36:4 58:14
  65:21
present 6:9 13:16
presented 61:20
presumption
  44:18
pretrial 41:11,19
pretty 41:20
  73:13
previous 62:5
  69:3
previously 55:14
primarily 61:10
principal 62:22
  64:20
prior 23:3 53:6
priority 5:14 29:5
  43:1
probably 46:6,6
  68:15
problem 54:22
  59:13
procedural 24:4
  48:20
procedurally 24:3
procedures 3:21
  4:3 9:7 10:3 13:21
  17:13 19:17 45:4

73:6,6
proceed 50:6 66:5
  66:9
proceeding 3:4,8
  3:10 7:20 9:2,9,15
  9:25 10:2,10 11:1
  11:21 12:25 17:18
  19:9 20:7,18
  21:17,18 22:4,8
  22:13,18,24 23:16
  25:10,14,18,20
  41:14 50:11 74:7
proceedings 3:22
  14:1 37:17 73:23
  75:5
proceeds 50:13,23
  52:24 55:20 57:16
  61:23 65:16
process 10:22
  12:24 13:25 16:19
  20:5,13 21:21
  25:3,6 29:25 30:1
  30:4 33:9,12 34:2
  35:1,24 41:9 42:1
  42:2 43:12,14
processes 27:15
products 9:16
professionals
  27:16
profit 61:21
program 3:14
  8:20 9:5,22,23
  19:18
progress 33:12
  42:8
proofs 8:10 28:17
  28:18 44:18
proper 9:10 10:25
  12:25 22:3,4
  67:17
properly 9:14
  12:24 17:17 25:14

properties 49:20
property 11:8
  37:18 48:25 50:14
  52:8,10 60:1
propose 12:16
  39:4
proposed 44:21
proposing 12:16
proposition 10:24
  64:16
prosecute 14:22
protective 3:17
provide 52:10,21
  55:1 57:7,22,23
provided 45:11
  52:8 59:17 63:15
providers 45:12
provides 52:22
  57:17
providing 51:16
  69:15
provision 50:25
provisions 49:7
  49:25 62:14 67:8
puerto 53:14
  63:10 69:22
pursuant 3:22 4:2
  17:5 29:17,20
  45:3 52:12
pursue 33:21
pursuing 23:6
  33:5
put 47:1 56:15
  72:12

**q**

quarropas 1:22
quasi 37:2
queenie 53:12
  62:9 72:21
question 14:9
  17:17 45:16 53:18
  64:6

questioned 64:2
questions 41:8
  47:13 49:3 50:4
quickly 55:9
quoted 65:14,25

**r**

r 2:4 5:1 7:1 74:3
  75:1
raised 35:3 37:11
  68:3 70:22
raises 66:10
ramos 71:11
rdd 1:3,16 3:4,8
reach 16:23
read 49:1 51:10
  64:15
real 32:7 54:4
really 36:20,21
  37:6 40:6,15
  52:15 54:17 55:1
  57:20 60:4,7
  62:25 67:16 71:4
realm 54:12
reason 13:15 32:8
  44:21 68:3
reasons 10:13
  30:12,12
recall 13:20 45:4
received 27:12
  44:3
reclassify 8:11
recognition 11:2
recognized 25:12
reconcile 33:8
reconciled 27:5,8
  27:20 28:6,16
  29:24 30:19 33:18
reconciliation
  20:13 33:24
reconciling 32:11
  33:25
record 36:2 41:23
  75:4

record's 41:20
records 28:21
recover 9:19 22:9
  28:11
recovered 50:23
recoveries 33:21
  34:1,3
recovery 36:1
reduce 33:14,16
  34:6
reduced 10:19
  70:13
reed 6:11
reevaluate 72:20
reference 60:16
referred 35:15,17
  37:22
refers 53:19 54:1
  54:5
refile 30:14
regard 67:16
regarding 58:2
regards 61:19
regular 71:16
rejected 45:8 60:2
relate 32:20
related 3:12 7:11
  25:18 32:8 46:15
  46:15
relationship 37:7
release 4:2 45:2
  46:13 49:4
released 44:22
  45:10 49:21
releasees 49:14
releasor 49:16,18
relelasor's 49:20
relevant 53:11
relief 3:16 9:24
  10:12,16,21,25
  11:6,12,17 12:13
  12:17 14:9,13,15
  23:10 37:3 45:5

45:11 50:12
rely 41:22 57:15
remain 24:8
remaining 14:5
  30:9 32:19,19
  34:16
remember 18:1
  26:25
repeat 64:1
reply 54:3 72:24
report 17:22
  24:21 26:11 41:9
reporting 32:6
  36:6
representative
  42:1 43:3
represented 59:2
  60:13 61:22
request 15:18
requesting 4:1
  45:2
required 35:12
requirement 18:8
  18:10 50:19 57:7
  57:9
requirements
  48:20
requires 19:24
  62:14
researching 32:24
reserve 17:7
  33:21
reserved 41:1
reserves 33:16
reserving 47:23
resolution 9:8
  16:23
resolve 20:15 24:9
resolved 9:3 11:21
  14:4 29:7,8,11
  32:24 73:7
resolving 26:5
  32:17 43:14

**resources** 7:25
16:24 33:11
**respect** 8:7,8
13:10 15:18 16:17
17:17 19:17,25
20:11,17 24:7
35:23 38:24 39:22
43:2 44:3 46:15
46:25 47:3 49:10
51:14 63:6,20
64:21 69:12,22
**respective** 51:16
**respectively** 30:25
**respond** 3:11 7:21
14:21 17:20 20:2
33:5 39:4,5 40:20
44:6
**responded** 8:16
15:8 37:15 44:20
71:4
**responds** 65:2
**response** 18:15
19:7 33:7,7 37:15
39:9,14 44:3
**responses** 35:11
40:8
**responsibility**
51:16 59:18 69:15
**responsible** 20:24
32:10 62:23
**rest** 18:3
**restructuring**
42:11
**result** 45:9 51:19
**retroactively**
68:12,21
**return** 59:2
**review** 27:19
**reviewing** 27:13
**revisit** 69:22
**rican** 63:11
**rico** 53:14 69:22

**right** 9:19 11:9
12:6 13:8 14:23
15:5 16:14 17:24
18:7,7,22 19:22
20:3 21:3,7,25
22:7,14,18 23:23
24:15 26:12 28:13
29:1,17,21 35:21
36:11,16 37:23
38:2,6,11,14
39:15 40:18 41:1
41:10,18 42:9
43:4 44:11,12
45:23 46:8,10,17
46:20 47:8 48:6
51:2,4 55:11 57:6
57:20 60:4 61:7,8
61:9 63:12 65:15
66:17 67:2 68:9
68:16,24 69:23
70:6,25 72:13
73:7
**rights** 33:21 48:23
67:6
**rios** 6:3,16 48:14
51:18,22,24 52:2
52:2,23 53:1,3
55:6,9,11,24
56:10 58:21 59:9
59:12,12 60:25
61:18 62:4 63:17
63:21 64:1,8,25
65:6
**rise** 7:2 49:8 56:4
60:15
**road** 75:23
**robert** 2:5
**rolled** 28:9
**room** 1:22
**rosa** 3:18 6:2
48:13,15 49:22
50:5,11,20 51:1,5
52:8,10,14,18,21

52:25 53:8 54:15
55:17,19,20,21
56:5 57:13,14,25
57:25 58:6,9
59:15 60:10,12,23
62:3 63:5 65:4,10
65:10,17,17 68:8
68:9,23 69:17,19
70:6,15,23 71:18
72:8,10
**rosa's** 51:21 54:17
69:13
**roughly** 27:24
29:3
**round** 35:10
**row** 65:25
**rule** 12:7,25 16:2
17:5 21:20 22:8
23:15 25:6,8,20
48:20 67:5
**rules** 21:1 22:7
25:11,17 67:6
**run** 10:2 20:8

**s**

**s** 3:12 5:1 7:1 74:3
**sailed** 69:21
**santa** 3:17 6:2
48:13,15 49:22
50:5,11,19 51:1,5
51:21 52:8,10,14
52:18,21,25 53:8
54:15,17 55:17,19
55:20,21 56:5
57:13,14,25,25
58:6,9 59:15
60:10,12,22 62:2
63:5 65:4,10,10
65:17,17 68:8,9
68:23 69:13,17,19
70:6,15,23 71:18
72:7,10
**sara** 5:25

**satisfied** 18:6
44:22
**saving** 47:4
**saying** 11:7 12:12
14:18 34:19 37:5
54:23 56:3 64:25
65:6,7,7
**says** 20:12 51:10
65:9 67:8 69:14
70:1,9 71:12,13
71:13,14
**schedule** 15:22
24:17
**scheduled** 3:1
34:15
**schneider** 6:12
**score** 73:11
**sears** 1:9,17 3:5,9
5:3 7:4,7,11 8:5
51:11 52:6,7,8,10
52:17 55:16,16,18
57:15,25 58:8
59:21,24 61:22
62:3 68:9 70:2,3
72:7
**seated** 7:3
**second** 3:20 8:23
9:18 11:3,24 17:6
17:8 19:8 20:10
23:8 28:1,12,14
35:15 37:14 45:5
56:10,18 70:10
**secondly** 49:25
67:10
**section** 21:7 51:10
53:20 54:2 55:23
56:14,22 67:8
69:25
**sections** 3:22
**see** 15:10 26:12
35:12 50:17 55:19
55:20 58:22 61:9
62:24 63:4,4,14

65:22 71:24 72:2
72:3,15
**seeing** 53:10
60:24
**seek** 10:25 35:6
**seeking** 8:11 9:13
11:17 50:11
**seeks** 8:6
**selen** 6:10 19:1
**sense** 13:18 14:8
16:2 24:3,5 26:11
34:21 36:8 38:20
39:20 55:11
**sent** 26:22 32:17
33:4,19
**separate** 7:23,24
11:7 12:13 15:16
22:5,5 27:15,17
36:23 45:19,19
46:3 56:1,8 58:11
60:13 66:6 67:14
68:24
**separately** 14:3
25:18 42:20 60:20
**serious** 23:2
**served** 17:2
**set** 12:9 13:20
15:19 17:7 19:10
19:17 50:4 56:13
72:15
**setting** 32:15 45:5
**settle** 64:23 67:19
67:21 72:6
**settled** 26:25 27:1
27:3,10 29:22,23
34:21 49:9 64:22
**settlement** 16:19
17:14 27:1 36:15
38:21 48:18 49:4
61:22 62:11 67:1
67:23 68:6,8,13
68:18 72:3 73:6

**seven** 39:9,10
**severed** 50:3
**shared** 27:21
**sharon** 6:13
**sherwin** 44:9,17
**shifted** 44:18
**ship** 35:17 37:20
37:21 38:5,17
69:21
**short** 41:3
**shortchange** 41:3
**shorter** 38:15
**show** 57:2 58:16
64:13 65:13 66:2
66:3
**showed** 57:2
**shown** 70:13
**side** 54:21
**sift** 23:24
**significant** 30:18
31:20 32:1
**similar** 35:18
**simple** 52:4
**simply** 10:10 12:2
12:3 50:22
**situation** 66:7
**six** 8:10,18 44:3
58:14 62:10 63:13
66:1
**sixth** 70:21
**skaw** 4:24 75:3,8
**skip** 40:8
**small** 34:6 73:13
**smaller** 31:21
**solutions** 75:22
**sonia** 3:17 48:12
**sonnax** 53:13 62:9
72:11,21
**sorry** 29:15 31:22
40:2,3 50:18 52:3
**sort** 45:20
**sought** 11:6

**sound** 51:12
**southern** 1:2 9:16
**spanish** 54:7,8
71:12
**speak** 34:12 46:4
**speaker** 15:24
**specific** 12:20
47:13
**specifically** 25:6
70:1,9
**spend** 24:1
**spent** 68:10 70:16
**stand** 36:16,17
64:16
**standing** 23:3
**starter** 66:10
**state** 10:15 12:1
**states** 1:1,21
53:20
**stating** 52:14
**statute** 54:4,9,18
54:24 55:1,12
58:24 63:9,10,11
69:23 71:10,14
**statutes** 54:12
**statutory** 55:2
**stay** 7:19 23:9,10
48:22 50:2,2,4,12
50:13 54:23,23
56:2,5 58:25
62:11 66:8 71:25
**step** 64:10
**steps** 42:12 64:9
**stipulated** 3:16
**stipulation** 70:25
**stop** 20:23,25
**stores** 67:23
**strauss** 5:20
**streamline** 34:2
**streamlined** 3:21
**street** 1:22
**strike** 61:10

**stuck** 34:25
**subject** 8:17 12:25
15:8 21:10 24:20
29:13,15 48:19
66:15 70:11
**submit** 11:13,18
17:16 45:14
**submitted** 11:14
11:15 14:11,16
**submitting** 8:20
31:16
**subrugee** 49:18
**subsequent** 28:2
28:12
**subsequently** 30:4
**subsidiary** 51:11
**substantial** 16:22
45:9
**substantially**
17:20
**subsumed** 36:20
40:12
**succeeding** 53:16
**successful** 27:24
**sue** 54:10 60:19
61:6,7 71:22 72:1
**sued** 54:25
**suffered** 48:25
**sufficient** 33:8
**suggested** 13:24
13:24
**suing** 61:12,13,15
**suit** 61:10
**suite** 6:6 75:24
**sum** 34:4
**summary** 38:8
**supp** 54:1
**supplement** 56:10
**suppliers** 37:6
**supplies** 44:9
**suppose** 17:14
**supposed** 21:22

**sure** 12:19 15:7
  18:9 37:1 41:20
  47:3 52:1 54:16
  55:10 71:7 73:16
  73:17
**sustain** 59:24
**sustaining** 53:20

**t**

**t** 75:1,1
**take** 7:14 65:12
  67:9,10
**takes** 35:24 48:2
**talk** 21:1 25:22
**talking** 51:5 68:10
**tasked** 28:22 32:5
**taxes** 20:19
**taxing** 27:18
**teed** 35:2,13,19
  36:10 38:9
**telephonic** 6:11
  6:12,13,14,15,16
**telephonically**
  73:13
**tell** 37:1
**ten** 29:2 68:10
**tenant** 58:9
**tenth** 29:13,16
**terminate** 45:7
**terms** 16:5 29:11
  32:1,4 53:22 54:6
  54:14 64:14 69:24
  70:11 71:15
**test** 64:10
**thank** 7:16 18:20
  24:19 26:15 40:23
  41:12,17 45:15
  48:7,11 72:23
  73:2,20,22
**thanks** 43:21
  44:25
**theory** 36:23
**thing** 12:6 23:14
  40:12 45:20 55:24

**things** 11:9 16:16
  21:22 23:7 26:12
  37:3 41:25
**think** 13:18,23
  14:2,8,14,15
  15:22 16:8,13
  17:7 18:1,5,7,8
  23:5 24:6,8,16
  26:14 29:3,9 31:2
  31:4,7 37:13 39:9
  41:10,22,22 43:23
  45:21 54:9 56:16
  56:25 60:18 61:14
  61:16 62:9 63:8
  64:5 66:7,8 69:7
  69:21 70:20,24,24
  71:9,12,20,24,25
  72:3 73:8,9,19
**third** 22:11 27:7
  45:7 48:22 54:10
**thirteenth** 13:13
  30:22
**thoughts** 54:21
  55:3
**three** 7:23,24
  21:22 24:22 26:24
  35:5,5,5
**throwing** 24:4
**tie** 45:17
**ties** 63:4
**time** 3:10 7:13,21
  14:1,20 15:15,22
  17:20 18:1,17,18
  22:6 25:25 27:1,6
  34:4,14 35:24
  36:14 38:17,23
  40:20,21 44:2,5
  48:2 52:3 53:9
  59:8,19,25 60:24
  63:2,3,7 65:4
  67:23 70:15,16,21
  70:22,22 71:2

**74:8**
**times** 21:22 25:12
**timing** 26:5 36:8
**tirelessly** 45:6
**today** 22:25 24:12
  25:24 44:2 60:5
  63:13 72:16 73:3
**today's** 24:16
**told** 58:15
**top** 14:13 67:14
**topics** 17:3
**total** 18:18 27:21
  49:10
**track** 14:3
**transcribed** 4:24
**transcriber** 75:9
  75:13,17
**transcript** 75:4
**transferred** 48:5
**transform** 30:11
  32:9,10,10 33:23
  44:23 45:6
**transformed**
  32:21
**translation** 71:19
**treated** 10:4
**trial** 3:6 7:7 25:23
  26:4
**true** 10:23 53:1,1
  54:24 64:4,5,6
  75:4
**truly** 45:19 54:18
**trust** 11:3,3 12:1
  12:14,20,21 14:19
  15:5,12 23:16
  25:2,16 40:5
**try** 65:13
**trying** 14:7 20:8
  20:15 56:13
**turn** 48:8 51:7
  57:15
**turns** 68:13

**twelfth** 30:21
**twice** 49:13 59:4
  59:23
**two** 8:21 10:24
  12:7,10,19 14:16
  15:12 23:16 24:5
  24:24,25 25:2,5
  35:2,4,5 36:20
  37:14 43:23 45:22
  47:19 56:12,25
  64:9 65:25 67:8
**type** 35:1 37:7

**u**

**u** 74:3
**u.s.** 2:6
**ucc** 5:21
**uh** 23:11
**ultimately** 33:17
  62:23
**uncontested** 45:1
**underlying** 44:18
**understand** 12:15
  15:21 21:5 40:25
  47:1 49:3 60:8
  66:22
**understanding**
  42:3 50:16
**understood** 40:16
  41:5 53:6
**underway** 25:4,4
**underwriter**
  59:16
**underwriters**
  48:19,24 49:10,12
  49:15 50:8 52:17
  53:11,15 58:23
  59:3,14 60:9,12
  60:15,20 61:7
  62:15,19,21 63:24
  69:4 71:1
**unidentified**
  15:24

unique   36:25
united   1:1,21
unjust   24:22
  39:23
unpaid   28:21
unsecured   8:12
  42:20 43:15
unwillingness
  17:11
upcoming   31:14
update   13:17
use   33:10
usually   54:12
utilities   27:17
utility   45:7,11,18
  48:1

**v**

v   3:5,9 53:12,25
  62:9 71:11 72:21
valid   67:1
validates   64:10
validity   64:2
value   63:21
various   32:12
veil   23:7
vendors   35:16
  37:22 45:7
venture   51:12
ventures   1:14 3:5
  3:9 7:7 8:23 19:1
  19:2
veritext   75:22
viability   61:5
view   16:1
violation   23:9
vir   1:14 3:4,8 7:7
  8:23 19:1 28:5
  36:19 37:6,23
vis   68:23,23
vs   1:16
vu   65:25

**w**

wait   20:23,23
waiting   30:9
waived   9:19 61:7
  61:8
want   12:19 16:1,7
  24:12 26:7 35:19
  36:8,14 38:22
  41:2,19 46:7 49:3
  49:12 50:16 56:12
  56:15,20 60:8,18
  60:19 62:19 66:5
  66:9,9 71:22 72:1
wanted   38:20
  47:18 60:11 69:24
wants   26:7 71:18
waste   18:18 22:6
  59:7
wasting   18:17
water   58:16
way   12:12 15:4
  17:9 36:17 42:12
  54:15 62:8 68:15
  71:24 72:3
we've   10:11 13:15
  14:20 20:14 34:14
  42:10 43:2,17
week   33:3 42:5
weekly   43:19
weigh   72:11,15
weighing   53:11
  66:17
weighs   53:17
  58:24
weil   5:2 7:17 13:6
  26:9,19 65:19
  69:11
went   43:7 68:9,20
white   1:23
whittle   31:17
whittled   25:24
  43:11

williams   44:9,17
willy   23:9
win   14:22
withdraw   30:14
withdrawn   18:19
  50:15 56:25 58:19
  70:23
withdrew   29:23
words   40:8 58:22
work   28:1 33:9
worked   34:13,14
  45:6
working   29:14
  30:8 32:9,16
  42:10 43:2 47:24
works   54:4
world   35:4
worth   66:14
wrapped   45:20
wrong   67:18
wrongdoing
  61:22

**x**

x   1:5,13,19 74:1

**y**

yawn   4:24 75:3,12
yeah   15:5 18:11
  18:13 37:8 47:25
  52:1 56:1 58:7
year   52:13 69:18
yearly   52:11
yield   36:1
yogi   65:25
york   1:2,23 5:6,16
  5:23 9:17 73:14

**à**

à   68:23