Hearing Date and Time: October 6, 2020 at 10:00 a.m. (Eastern Time)

MORITT HOCK & HAMROFF LLP
1407 Broadway, 39th Floor
New York, New York 10018
Telephone: (212) 239-2000
Facsimile: (212) 239-7277
James P. Chou
Ted A. Berkowitz
Danielle J. Marlow

*Special Conflicts Counsel to the Official Committee*
*of Unsecured Creditors of Sears Holding Corporation, et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
| In re: | : | Chapter 11 |
|---|---|---|
| | : | |
| SEARS HOLDINGS CORPORATION, *et al.*, | : | Case No. 18-23538 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |
---------------------------------------------------------------x

# REPLY IN FURTHER SUPPORT OF MOTION OF THE
# OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN
# ORDER TO COMPEL BANKRUPTCY RULE 2004 PRODUCTION OF
# DOCUMENTS FROM THIRD-PARTY PNC FINANCIAL SERVICES INC.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); SHC Licensed Business LLC (3718); SHC Promotions LLC (9626); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179

The Official Committee of Unsecured Creditors (the "Creditors' Committee") of Sears Holdings Corporation ("Sears") and its affiliated debtors and debtors in possession (collectively, the "Debtors"), by and through its undersigned Special Conflicts Counsel, hereby submits this Reply in Further Support of its Motion to Compel Bankruptcy Rule 2004 Production of Documents from PNC Financial Services Inc. ("PNC") (the "Motion"). In further support of this Motion, the Creditors' Committee respectfully states as follows:

## PRELIMINARY STATEMENT[2]

1. Pursuant to Bankruptcy Rule 2004 ("Rule 2004") and the Court's Order, dated November 16, 2018, the Creditors' Committee issued the Subpoenas to identify non-insider shareholders who benefitted from the Lands' End and Seritage transactions. The requested information is necessary to file a separate action asserting fraudulent transfer claims against the non-insider shareholders, in the event that the Litigation Designees (as defined in the Confirmation Order) decide it would be beneficial to the Debtors' estates to do so. Each Subpoena requests production of six (6) narrow categories of documents targeted to this purpose.

2. As was the case with many subpoena respondents, following service of the Subpoena upon PNC (which PNC does not contest), Special Conflicts Counsel for the Creditors' Committee had telephonic and e-mail communications with PNC to explain the purpose and scope of the Subpoena, including the responsive information the Creditors' Committee is seeking. During those conversations, in order to narrow the inquiry, assist PNC in its search for responsive materials, and conserve resources, Special Conflicts Counsel made an effort to describe the particular transactions that were the subject of the Subpoena—specifically the Land End spinoff, and the Seritage rights offering. Further, Special Conflicts Counsel discussed the

---

[2] Capitalized terms used but not otherwise defined shall have the meanings ascribed to such terms in the initial moving submissions.

1

timeframe of these transactions, specifically that the Lands' End spinoff occurred on or about April 7, 2014, and the Seritage rights offering occurred on or about June 11, 2015.

3. As PNC acknowledges, Special Conflicts Counsel followed up the telephonic conversation with PNC with an e-mail stating: "as discussed, *in particular*, we are looking for: The account holder name, the date of distribution, the number of shares distributed, and the share values for Lands' End shares distributed to account holders at PNC *on or about* April 7, 2014… [and the] Seritage rights distributed to account holders at PNC *on or about* June 11, 2015." PNC Opposition, ¶ 4 (citing Motion, Exhibit G) (emphasis added). The explanation was illustrative, without limitation or waiver of the other requests contained in the Subpoena, and, again, was intended to assist PNC in meeting its obligations under the Subpoena..

4. But rather than appreciate the above-described efforts, PNC now refuses to complete its production, and appears to be taking the spurious position that, based on the foregoing correspondence, the Creditors' Committee agreed to limit PNC's production of documents and information regarding the Lands' End and Seritage transactions to two single dates: April 7, 2014, for Lands' End, and June 11, 2015, for Seritage. Clearly this was not the intent.

5. The very e-mail correspondence PNC references makes clear that these two dates were only used to assist PNC in highlighting the specific transactions from which the Subpoena sought relevant information. To support its contention that the Creditors' Committee limited the Subpoena to the two dates above, PNC cites an August 6, 2020 e-mail, which expressly states that the subject transactions occurred *on or about* April 7, 2014, and *on or about* June 11, 2015. *See* Motion, Exhibit G. The express language of this email clearly states that PNC's production obligations were *not* limited to these two dates.

2

6. Further, PNC relies upon an additional email (*see* Boxer Decl., ¶ 2(c), Ex.. C), in which Special Conflicts Counsel for the Creditors' Committee expressly stated "***to be clear, the securities at issue may not have been issued on those exact dates***" and that "to be safe, we would request accounts that were issued those securities **within a week of** April 7, 2014 (Lands' End) and June 11, 2015 (Seritage)." (emphasis added).

7. When PNC stated that it was limiting its production to account holders who received the subject securities on April 7, 2014, and June 11, 2015, Special Conflicts Counsel to the Creditors' Committee expressly stated in an e-mail response (receipt of which PNC acknowledges) that any acceptance of a production for only those dates was only in the first instance, and was "***without waiver, and without any agreement that such production is sufficient***." *Id.* (emphasis added).

8. Put simply, there is absolutely no basis for PNC's claim that counsel for the Creditors' Committee limited PNC's production obligation to two dates.

9. Nor is there any basis for PNC's suggestion that the Creditors' Committee's request that PNC produce account holder information for additional dates would impose upon PNC an undue burden. Notably, Special Conflicts Counsel's efforts described above were intended to lessen PNC's burden. As PNC admits, it has only produced six pages comprising 244 rows of responsive data to date. Opposition, ¶ 6. Producing the additional responsive information would not be unduly burdensome.

10. In sum, PNC's Opposition rests on two completely unsubstantiated grounds: (i) waiver on the part of the Creditors' Committee—which is contradicted by the very e-mails PNC cites; and (ii) undue burden—which is belied by PNC's extremely limited production to date.

11.  Accordingly, PNC should be compelled to comply with the Subpoena as issued. Absent this, PNC's production remains insufficient and incomplete.

## ARGUMENT

12.  Under Bankruptcy Rule 2004, "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a).  It is commonly understood that the scope of inquiry permitted under Rule 2004 "is exceptionally broad."  *Martin v. Schaap Moving Sys., Inc.*, No. 97-5042, 1998 WL 405966, at *2 (2d. Cir. Apr. 20, 1998); *see also In re Almatis B.V.*, No. 10-12308(MG), 2010 WL 4877868, at *4 (Bankr. S.D.N.Y. Nov. 24, 2010) ("It is well established that the scope of a Rule 2004 examination is very broad and provides fewer procedural safeguards than [FRCP 26].").

13.  As demonstrated, the information sought pursuant to the Subpoena served upon PNC is clearly relevant for the purpose for which it was served, namely in furtherance of asserting potential fraudulent transfer claims against the non-insider shareholder recipients of Lands' End and Seritage spinoff shares.  PNC does not deny this.

14.  Rather, PNC takes the incredulous position that the Creditors' Committee limited PNC's production obligation to only two specific, concrete dates—April 7, 2014, for Lands' End, and June 11, 2015, for Seritage.  As demonstrated above, this contention makes no sense and is rebutted by the very communications PNC relies upon in its Opposition

15.  Equally unavailing is PNC's suggestion that the Subpoena would impose upon it an undue burden.  As noted, PNC has only produced six pages of data comprising 244 rows. Producing the additional data that the Creditors' Committee seeks would not impose an undue burden on PNC.

16.  PNC also makes the absurd argument that "[u]nexplained in the motion to compel is why shares potentially subject to a claim of fraudulent conveyance would have been

4

distributed to, or received by, a PNC account not on, but instead a week subsequent to the "as of" date for issuance of those shares." In fact, as would be expected, the data produced in response to the Subpoenas demonstrates that in many instances, the distributions were frequently made several days before or after April 7, 2014, for Lands' End, and several days before or after June 11, 2015, for Seritage. For this reason, Special Conflicts Counsel for the Creditors' Committee specified that these transactions occurred "***on or about***" the specified dates. The Creditors' Committee is not requiring PNC to produce data for information for every single day in/around April 7, 2014 and June 10, 2015. Rather, the Creditors' Committee is asking that PNC search their files for transactions during that time period and then produce the information requested which will likely fall on a date sometime around April 7, 2014 and June 10, 2015.

17. But producing for one single date in the case of Lands' End—April 7, 2014—and one single date in the case of Seritage—June 11, 2015—ensures that PNC's production is incomplete, if not inaccurate and misleading.

18. In sum, PNC's Opposition is based upon misrepresentations of the communications between Special Conflicts Counsel to the Creditors' Committee and PNC's counsel, as well as unsubstantiated claims of undue burden. The Creditors' Committee has clearly been reasonable in its requests for production from PNC in response to the Subpoena. PNC should be compelled to comply.

*[intentionally left blank]*

## **CONCLUSION**

For the reasons set forth above, the Creditors' Committee respectfully requests that the Court enter an order compelling PNC to produce the documents requested in the Creditors' Committee's Public Shareholder Subpoena on an immediate and continuing basis and no later than the earlier of three days following the date of an order granting this motion or October 12, 2020.

Dated: New York, New York
      October 2, 2020                     MORITT HOCK & HAMROFF LLP

                                       By:   /s/ *James P. Chou*
                                             James P. Chou
                                             Ted A. Berkowitz
                                             Danielle J. Marlow
                         1407 Broadway - 39th Floor
                         New York, New York, 10018
                         Telephone: (212) 239-2000
                         Facsimile: (212) 239-7277

                         *Special Conflicts Counsel to the Official*
                         *Committee of Unsecured Creditors of*
                         *Sears Holdings Corporation, et al.*