Paul H. Zumbro
pzumbro@cravath.com
Lauren A. Moskowitz
lmoskowitz@cravath.com
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, New York 10019
Telephone:    (212) 474-1000
Facsimile:    (212) 474-3700

*Attorneys for Plaintiffs Stanley Black &
Decker, Inc. and its subsidiaries Black &
Decker (U.S.) Inc. and Black & Decker
Macao Commercial Offshore Limited*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>SEARS HOLDINGS CORPORATION, *et al.*,<br><br>        Debtors. | Chapter 11<br>Case No. 18-23538 (RDD)<br>(Jointly Administered) |
| STANLEY BLACK & DECKER, INC.; BLACK & DECKER (U.S.) INC. and BLACK & DECKER MACAO COMMERCIAL OFFSHORE LIMITED,<br><br>        Plaintiffs,<br>    v.<br><br>KMART CORPORATION and SEARS, ROEBUCK AND CO.,<br><br>        Defendants. | Adv. Pro. No. _____ |

## COMPLAINT

Stanley Black & Decker, Inc. and its subsidiaries Black & Decker (U.S.) Inc., in its own capacity and as successor to Waterloo Industries, Inc., and Black & Decker Macao Commercial Offshore Limited (collectively, "**SBD**"), by and through its undersigned counsel, and pursuant to Federal Rule of Bankruptcy Procedure 7001, hereby files this Complaint for declaratory judgment and injunctive relief.  In support of this Complaint, SBD respectfully alleges as follows:

### JURISDICTION AND VENUE

1.      On October 15, 2018 (the "**Petition Date**"), Sears and each of Sears' debtor affiliates[1] filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. 101 et seq. (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the Southern District of New York (the "**Court**").

2.      This is an adversary proceeding brought pursuant to Federal Rule of Bankruptcy Procedure 7001.  This adversary proceeding is a core proceeding and the Court has jurisdiction over the claims raised in this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

3.     This adversary proceeding falls within the Bankruptcy Court's post-confirmation jurisdiction as set forth in the Confirmation Order (defined below).  Pursuant to paragraph 67 of the Confirmation Order:

> Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this Court, except as otherwise provided in the Plan or herein, shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, but not limited to, the matters set forth in Article XVI of the Plan.

4.     Venue in this Court is proper under 28 U.S.C. § 1409.

## THE PARTIES

5.     Stanley Black & Decker, Inc. is a domestic corporation, duly organized and existing under the laws of the State of Connecticut, with its principal place of business at 1000 Stanley Drive, New Britain, CT 06053.

6.     Black & Decker (U.S.) Inc. is a domestic corporation, duly organized and existing under the laws of the State of Maryland, with its principal place of business at 701 East Joppa Road, Towson, MD, 21286, and is a creditor in the above captioned proceedings.

7.     Black & Decker Macao Commercial Offshore Limited is a foreign limited liability company, duly organized and existing under the laws of the Macao, with its principal place of business at 15C, Edif. Commercial Nam Tung, No. 517, Avenida Praia Grande, Macao, and is a creditor in the above captioned proceedings.

8.      Waterloo Industries, Inc.[2] was a domestic corporation, duly organized and existing under the laws of the State of Delaware, with its principal place of business at 1500 Waterloo Drive, Sedalia, MO 65301, and is a creditor in the above captioned proceedings.

9.      Kmart Corporation and Sears, Roebuck and Co. (together, the "**Defendants**") are debtors in the above captioned proceedings.  The Defendants' chapter 11 cases are being jointly administered for procedural purposes only.

## FACTUAL BACKGROUND

### A.  SBD's Claims Against The Debtors

10.      Prior to the Petition Date, pursuant to purchase orders and contracts entered into by the Debtors, SBD delivered certain goods to the Debtors.  The Debtors failed to pay for these goods in full.

11.      The Debtors' schedules of assets and liabilities for Kmart Corporation and Sears, Roebuck and Co. [Docket Nos. 1629, 1711] reflect that the Debtors owed SBD an aggregate amount of $10,019,077.16 as of the Petition Date, none of which the Debtors listed as contingent, unliquidated or disputed.

12.      Following the Petition Date, pursuant to certain ongoing contractual obligations to supply goods to the Debtors, SBD continued to supply goods to the Debtors.  The Debtors failed to pay for these goods in full, resulting in post-petition administrative expense claims for such goods.

13.      While the Debtors' schedules of assets and liabilities listed certain pre-petition amounts owed to SBD, SBD timely filed proofs of claim for the amounts the Debtors owed SBD

---

[2] Waterloo Industries, Inc. is a former subsidiary Stanley Black & Decker, Inc. and merged into Black & Decker (U.S.) Inc. on December 28, 2019.

for the delivered but not paid for goods, including in respect of goods delivered post-petition. The aggregate total of SBD's proofs of claim was $11,376,005.97, including $3,763,469.40 in respect of section 503(b)(9) claims and other administrative priority claims.[3]

14.     As of the date hereof, SBD's claims are not listed as contingent, unliquidated or disputed on the Debtors' claims register. *See* Claim Nos. 16178, 16191, 16225, 16358, 16709, 20513, Sears Claims Register *available at* https://restructuring.primeclerk.com/sears/Home-ClaimInfo.

15.     Vendors, such as SBD, that provided goods to the Debtors on credit in accordance with prepetition contractual arrangements and filed timely proofs of claims are entitled to administrative expense priority under section 503(b) of the Bankruptcy Code and an order of this Court.[4]

## B.  The Debtors Struggle to Confirm Their Plan

16.     Under section 1129(a)(9) of the Bankruptcy Code, a court cannot confirm a plan put forth by a debtor unless the debtor shows that it is able to pay all administrative expense claims in full on the effective date of the plan (unless the holder of a particular claims agrees to a different treatment).

17.     Here, the amount of the administrative expense claims against the Debtors, including SBD's claims, presented a serious issue as to whether the Debtors would be able to put forth a confirmable plan.

---

[3] *See* Claim Nos. 16178, 16191, 16225, 16358, 16709, 20513.

[4] The Court's *Final Order Authorizing Debtors to (I) Pay Prepetition Claims of (A) Shippers, Warehousemen, and Other Non-Merchandise Lien Claimants and (B) Holders of PACA/PASA Claims, and (II) Confirm Administrative Expense Priority for Prepetition Orders Delivered to the Debtors Postpetition, and Satisfy Such Obligations in The Ordinary Course Of Business* [Docket No. 843] provides that "[a]ll undisputed obligations of the Debtors arising from the postpetition delivery or shipment by of goods under the Prepetition Orders are granted administrative expense priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code . . .".

18.     On February 8, 2019, this Court entered its *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* [Docket No. 2507] (the "**Sale Order**").

19.     Among other things, the Sale Order approved the asset purchase agreement (the "**APA**") pursuant to which the Debtors believed the Buyer (as defined therein) assumed responsibility for up to approximately $347 million of administrative expense claims, including section 503(b)(9) claims. *See Disclosure Statement for Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors*, at 15 [Docket No. 3276] ("[U]p to approximately $347 million of Administrative Expense Claims are the responsibility of the Buyer pursuant to Section 2.3(k) of the Asset Purchase Agreement and the Sale Order comprised of: up to $139 million on account of Claims arising under section 503(b)(9) . . . and up to $166 million on account of Other Payables. . . .").

20.     The Debtors' strategy for satisfying their estimated $558 million of administrative expense claims, "excluding and claim[s] entitled to administrative priority under section 507(b)", *id.* at 59, relied on (i) the Buyer's assumption of a substantial portion of those administrative expense claims pursuant to the terms of the APA and (ii) the receipt of certain cash payments from the Buyer under the APA, *id.* at 60 ("[The] assets available to satisfy such Administrative Expense Claims . . . are comprised of, among other assets $53 million in cash and inventory currently being withheld by Transform Holdco[ the Buyer under the APA]."). However, both prongs and consequently the Debtors' ability to satisfy their administrative expense claims were quickly cast into doubt.

21.     Less than a month after the entry of the Sale Order, on March 6, 2019, the Buyer filed a motion alleging numerous breaches of the APA by the Debtors and requesting the Court assign the matter to mediation [Docket No. 2766].

22.     In response, on March 11, 2019, the Debtors filed a motion [Docket No. 2796] (the "**Turnover Motion**"), seeking to, among other things, compel the Buyer to return $57.5 million of estate funds that the Debtors asserted were "critical to maintaining administrative solvency" of the Debtor.  Turnover Motion ¶ 3.

23.     On March 21, 2019, the Court held a hearing on the Turnover Motion.  Counsel for the Official Committee of Unsecured Creditors echoed the concern that the Debtors may be administratively insolvent and unable to confirm a plan of reorganization.  *See* Mar. 21, 2019 Hr'g Tr. at 15:12–17 ("We have concerns about the admin claims . . . there's a deluge of 507(b) claims that also weigh on the ability for us to confirm the plan or pursue a plan.").

24.     The dispute over the APA continued to escalate and on May 25, 2019, the Buyer brought an adversary proceeding against the Debtors[5] seeking, among other things, (i) a declaratory judgment that the Buyer had no obligation to assume any of the Debtors' section 503(b)(9) claims under the terms of the APA and that the obligation to assume Other Payables (as defined therein) was substantially reduced and (ii) an award for compensatory damages of not less than $130 million.[6]  The relief sought by the Buyer placed real uncertainty on the Debtors' ability to satisfy all administrative expense claims in full.

---

[5] [Case No. 19-08262 (RDD); Docket No. 1]

[6] The APA-related disputes continued through the Court's confirmation of the Debtors' plan of reorganization in October 2019.  On January 28, 2020, the Court entered an order approving a settlement of the APA-related disputes [Docket No. 6413] pursuant to which, among other things, the Buyer would make a payment of approximately $18.3 million to the Debtors, who would retain (i) approximately $45 million of funds that the Buyer previously transferred to the Debtors, and (ii) the benefit of the Buyer's prior payments of approximately $160 million in respect of assumed liabilities.

25.    Against that backdrop and the increasing uncertainty over the Debtors' ability to satisfy their administrative expense claims, on May 16, 2019, the Debtors filed the *Disclosure Statement for Amended Joint Chapter 11 Plan of Sears Holding Corporation and Its Affiliated Debtors* [Docket No. 3895] (the "**Amended Disclosure Statement**").  In the Amended Disclosure Statement, the Debtors acknowledged the risk of administrative insolvency by adding a toggle mechanism in the proposed plan pursuant to which solvent Debtors could make intercompany loans on the Effective Date to those Debtors with "insufficient Assets to satisfy Allowed Administrative Expense Claims" and other priority claims.  *See* Amended Disclosure Statement at 61.  In addition, the Amended Disclosure Statement provided a preview of the Admin Consent Program (defined below).  The Debtors included new language in the Amended Disclosure Statement, which informed creditors that "to the extent that the Debtors determine that there will be an administrative shortfall at a particular Debtor, *the Debtors may solicit administrative claimants to receive less than 100% recovery of their administrative claims*".  *Id.* at 62 (emphasis added).

**C.  The Administrative Expense Claims Consent Program**

26.    On October 1, 2019, the Debtors filed their *Notice of Filing of Administrative Expense Claims Consent Program Term Sheet with the Ad Hoc Vender Group and Creditors' Committee* [Docket No. 5292] announcing the terms of the program pursuant to which the Debtors would solicit their administrative claimants to receive less than 100% recovery of their administrative claims.

27.    Although the Debtors attempted to spin the Admin Consent Program in the their concurrently filed supplemental confirmation brief [Docket No. 5296] (the "**Supplemental Confirmation Brief**") as merely being "intended to reduce protracted and expensive litigation

with holders of Administrative Expense Claims, and to secure[] an expedient path forward" and stating that "confirmation of the Plan is not dependent on the Administrative Expense Claims Consent Program," the Debtors' prior statements make clear that the Admin Consent Program was driven by the increasing risk of administrative insolvency. *See* Supplemental Confirmation Brief ¶¶ 5–6.

28.     On October 3, 2019, the first day of confirmation hearings, the Court noted that the Plan can go effective "[o]nly when you know you can make the payments you need to make," including in respect of administrative expense claims. *See* Oct. 3, 2019 Hr'g Tr. at 217:12–13.

29.     On October 15, 2019, the Court entered its *Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors and (II) Granting Related Relief* [Docket No. 5370] (the "**Confirmation Order**", a copy of which is attached hereto as **Exhibit A**).[7]

30.     The Confirmation Order incorporates the terms of the Debtors' Administrative Expense Claims Consent Program (the "**Admin Consent Program**").  *See* Confirmation Order ¶¶ 52–53.

31.     Pursuant to the Admin Consent Program, the Debtors solicited their administrative expense claim holders, including SBD, to accept less than full payment for their administrative expense claims.  Claimants who opted-in or did not opt-out of the Admin Consent Program would be subject to a 20-25% haircut on the allowed amount of their administrative expense claims. *Id.* With respect to SBD's asserted administrative expense claims of $3,763,469.40, that translated to a proposed haircut of $752,693.88 to $940,867.35.

---

[7]  Capitalized terms used herein not otherwise defined have the meanings given to them in the Confirmation Order.

32.    To induce the administrative creditors to agree to this unusual request, the Debtors made certain promises, including "Expedited Reconciliation" of the claims of those creditors who agreed to opt-in to or did not opt-out of the Admin Consent Program.

33.    Regarding "Expedited Reconciliation" for those who opted in, the Confirmation Order provides:

> [E]ach holder of an Allowed Administrative Expense Claim against the Debtors that *affirmatively opts-in* (the "**Opt-In Settled Admin Claims**") . . . to the Administrative Expense Claims Consent Program **shall receive**: (i) its pro rata share of the Initial Distribution . . . capped at 75% of the Allowed Administrative Expense Claim (the percentage recovery, the "**Initial Recovery**"); provided, that, the Initial Distribution shall only be available to holders of Opt-In Settled Admin Claims who consensually agree with the Debtors and the Creditors' Committee to the Allowed amount of the Opt-In Settled Admin Claims; provided, further, that, holders who do not agree with the Debtors and the Creditors' Committee on the Allowed amount of the Opt-In Settled Admin Claim shall be deemed to hold a Non Opt-Out Settled Admin Claim; and (ii) **consensual reconciliation of the Allowed amount of Opt-In Settled Admin Claims** (**including** on account of 503(b)(9) and 503(b)(1) issues regarding inducement, date of receipt, port of origin, etc., and **any exposure on account of preference actions**) . . . provided, further, that, for the avoidance of doubt, any waiver or settlement of any preference action shall be considered on a case-by-case basis.

Confirmation Order ¶ 52(a)(1) (emphasis in the form of **bold, underlined** added; other emphasis in the original).

34.    The Expedited Reconciliation process for holders of Non Opt-Out Settled Admin Claims is the same as the process for holders of Opt-In Settled Admin Claims.  *See* Confirmation Order ¶ 52(a)(3).

35.    In the Confirmation Order, the Court approved the Debtors' *Notice of (I) Ballot to Opt-In to Administrative Expense Claims Consent Program and (II) Ballot to Opt-Out of Administrative Expense Claims Consent Program* [Docket No. 5370-3] (the "**Notice of Ballot**"). The Notice of Ballot also provides for the "Expedited Reconciliation" promised by the Debtors,

stating that holders of Opt-In Settled Admin Claims "shall receive, among other things . . . consensual reconciliation of the Allowed amount of Opt-In Settled Admin Claims (*including* on account of 503(b)(9) and 503(b)(1) issues regarding inducement, date of receipt, port of origin, etc., and *any exposure on account of preference actions*)". Notice of Ballot at 3.

36.    Both the Confirmation Order and the Notice of Ballot therefore expressly provide that "Expedited Reconciliation" for Opt-In Settled Admin Claims and Non Opt-Out Settled Admin Claims includes not only reconciliation of administrative expense claims but also "***any exposure on account of preference actions***". *See* Confirmation Order ¶ 52(a)(1), (3); Notice of Ballot at 3.

37.    Relying on this promise of full claims reconciliation (including on account of any preference actions),[8] SBD timely opted in to the Admin Consent Program on November 25, 2019 by submitting the provided ballots for each of Black & Decker (U.S.) Inc., Black & Decker Macao Commercial Offshore Limited and Waterloo Industries, Inc. for an aggregate total of $3,763,469.40, the amount of SBD's asserted administrative expense claims.

38.    Notwithstanding the fact that SBD opted in to the Admin Consent Program, the Debtors unilaterally (and SBD believes improperly) deemed SBD to be a holder of Non Opt-Out Settled Admin Claims. *See Notice Regarding Initial Distribution Pursuant to Administrative Expense Claims Consent Program* [Docket No. 6186]. SBD objected to this treatment [Docket No. 6198], but at an omnibus hearing on December 13, 2020 (the "**December 13 Hearing**"), the

---

[8] Settling administrative expense claims and any potential preference claims together made sense to SBD because why would SBD compromise 100 cent administrative expense claims and knowingly leave itself exposed to preference claim risk?

Court overruled SBD's objection.  Accordingly, SBD was deemed to hold Non Opt-Out Settled Admin Claims.[9]

39.    On December 1, 2019, the Debtors sent three separate emails to SBD acknowledging each of SBD's ballots and initiating the Expedited Reconciliation process (copies of which are attached hereto as **Exhibit B**).  The Debtors requested both a list of unpaid invoices supporting SBD's claim amounts, *and a list of payments received from the Debtors during the preference period*.  Based on the language of the Notice of Ballot and Confirmation Order, SBD believed that the Debtors would use the requested information to reach a definitive settlement with SBD of both SBD's administrative expense claims and any potential preference claims against SBD.[10]

40.    SBD compiled all of the requested information for each of Black & Decker (U.S.) Inc., Black & Decker Macao Commercial Offshore Limited and Waterloo Industries, Inc., and on December 11, 2019, SBD emailed the Debtors the requested supporting information including a complete list of payments it had received during the preference period.

41.    During the December 13 Hearing, the Debtors confirmed that administrative expense claims and preference claims would be resolved concurrently when the Debtors' counsel represented to the Court that the Debtors would "factor in whether or not there was potential preference liability **into the overall settlement**" with parties who, like SBD, had opted into the Admin Consent Program.  *See* Dec. 13, 2019 Hr'g Tr. at 15:15–17 (emphasis added).  Later in the

---

[9]  The Court's ruling was limited to the classification and distribution of funds for holders of Opt-In Settled Admin Claims and Non Opt-Out Settled Admin Claims and therefore has no bearing on the relief sought in this complaint. *See* Dec. 13 Hr'g Tr. at 203:5–9.

[10]   SBD acknowledges that the Admin Consent Program provides that for the settlement of preferences on a "case-by-case basis", but notes that the Debtors specifically requested information about preference period payments in connection with the Expedited Reconciliation process and SBD had every reason to believe the Debtors were also settling their preference actions.

hearing, the Court noted that the settlement process under the Admin Consent Program contemplated that the Debtors "take into account preference exposure, and [] wrap it all up." *See id.* at 211:25-212:1.

42.    It was reasonable for SBD, whose counsel attended the December 13 Hearing on its behalf, to rely on this unequivocal statement by Debtors' counsel made in open court as well as this statement by the Court.

43.    Following the December 13 Hearing, on December 16, 2019, SBD began settlement discussions with the Debtors pursuant to Expedited Reconciliation.

44.    On December 22, 2019, the Debtors proposed a settlement pursuant to which SBD's administrative expense claims would be allowed in an aggregate amount of $3,148,715.00—an off-the-top discount of $614,754.40, or more than 16% of SBD's asserted administrative expense claim amount.  Because the Admin Consent Program caps the recovery on allowed claims at 80% of the allowed amount (for "non opt-outs"), the proposal meant that SBD would at most receive $2,518,972.00 in respect of its $3,763,469.40 administrative expense claim—a discount of $1,244,497.40, more than 33%.

45.    On January 7, 2020, SBD sent an email to the Debtors accepting the Debtors' proposed settlement, stating that although SBD did not agree with the Debtors' numbers, SBD was willing to accept the lower amounts in respect of its administrative expense claims as a full settlement in order to avoid spending any further time or expense on claims reconciliation (the "**SBD Settlement**").  In agreeing to enter into the SBD Settlement, SBD in good faith believed that it would obtain the full benefit of the bargain of its participation in the Admin Consent Program by resolving all claims issues with the Debtors' estates.

46.    On January 9, 2020, the Debtors confirmed the settlement and in such confirmation specifically referenced the Confirmation Order and the provisions of the Admin Consent Program, including the section which states that "consensual reconciliation of the Allowed amount of Non Opt-Out Settled Admin Claims (**includ[es]** . . . 503(b)(9) and 503(b)(1) issues . . . and **any exposure on account of preference actions**)".  *See* Confirmation Order ¶ 52(a)(3).

**D.  The Preference Demand Letters**

47.    However, less than three weeks later, on January 27, 2020, the Debtors mailed a demand letter to Black & Decker (U.S.) Inc., alleging $5,489,108.39 of preferential transfers and threatening to commence litigation by February 10, 2020 unless the parties reached a settlement before then (the "**January Demand Letter**").

48.    SBD sought and obtained an extension from the Debtors giving SBD until February 19, 2020 to reply.

49.    On February 19, 2020, SBD sent a detailed and comprehensive response letter (a copy of which is attached hereto as **Exhibit C**, the "**SBD Response Letter**") to the Debtors, asserting that (i) the assertion against SBD of the alleged preference claims violates the terms of the Confirmation Order as they were resolved pursuant to the Admin Consent Program approved by the Confirmation Order and (ii) in any event, SBD possesses viable defenses under section 547(c) that completely offset the asserted preference amount.  SBD's response also put the Debtors on notice that SBD was considering its options, including potentially bringing to the Court's attention what SBD believed to be a violation of the Confirmation Order and seeking appropriate relief in connection therewith.

50.    On March 6, 2020, the Debtors responded that they believed they were in full compliance with the Confirmation Order and suggested further discussion regarding the merits of SBD's affirmative defenses.

51.    SBD was willing to engage with the Debtors regarding SBD's affirmative defenses because if the Debtors accepted SBD's affirmative defenses, the defenses completely offset the amount of the asserted preferences, which would avoid having to involve the Court in a dispute about the Admin Consent Program and Confirmation Order.[11]

52.    On March 20, 2020, SBD and the Debtors met and conferred regarding January Demand Letter and SBD's response.

53.    Following the meet and confer, on March 21, 2020 and March 30, 2020, SBD emailed the Debtors information supporting SBD's affirmative defenses to the preference amounts asserted in the January Demand Letter, and reiterated SBD's position that SBD believed the Debtors' asserted preferences violated the terms of the Admin Consent Program and Confirmation Order.  In response, the Debtors stated that they would review the provided information and contact SBD for further discussion.

54.    Having received no response from the Debtors for approximately two weeks, in April of 2020, SBD reached out to the Debtors to discuss the current status of the Debtors' evaluation of SBD's affirmative defenses to the asserted preference amounts in the January Demand Letter, but received no response from the Debtors.

---

[11]  SBD notes in this regard that Congress amended section 547(b) of the Bankruptcy Code effective February 19, 2020 (coincidentally, the date of the SBD Response Letter) to require the trustee or a debtor-in-possession to determine whether to exercise its authority to pursue preference claims "based on reasonable due diligence *in the circumstances of the case* and taking into account a party's known or reasonably knowable affirmative defenses under subsection (c) . . . ."  11 U.S.C. § 547(b) (emphasis added).

55.     From March 31, 2020 to October 1, 2020, SBD received no further requests or correspondence from the Debtors regarding the January Demand Letter.  Based on the silence from the Debtors, SBD reasonably believed the Debtors had accepted that per the terms of the Admin Consent Program and the Confirmation Order, any further pursuit of preference claims against SBD was barred, or, alternatively, that the Debtors in the fulfillment of their due diligence obligations under the newly-enacted provisions of section 547(b) of the Bankruptcy Code had determined based on the circumstances of the case and the information SBD provided regarding its affirmative defenses that the Debtors should not pursue preference claims against SBD.

56.     However, six months later, on October 2, 2020, the Debtors' special avoidance counsel emailed SBD's counsel out of the blue (a copy of which is attached hereto as **<u>Exhibit D</u>**) to inform SBD's counsel that the Debtors "will be commencing an avoidance action against your clients Black & Decker (U.S.) Inc., Black & Decker Macao, and Waterloo Industries Inc. on or before October 15, 2020."  *See* Debtors' October 2, 2020 Email.

57.     The Debtors attached to the October 2, 2020 email a demand letter dated September 9, 2020 and addressed to Waterloo Industries Inc., alleging $7,381,065.32 of preferential transfers (the "**September Demand Letter**", together with the January Demand Letter, the "**Demand Letters**").  The Debtors' October 2, 2020 email was the first time that the Debtors had asserted or even mentioned any potential preference claims against Waterloo Industries, Inc.

58.     SBD did not receive the September Demand Letter as it was mailed to an incorrect address, and prior to the October 2, 2020 email, the Debtors did not send a copy of the September Demand Letter to SBD's counsel of record.

59.     Despite the threat of litigation against Black & Decker Macao contained in the October 2, 2020 email, to date the Debtors have not provided SBD with any demand letter or any

information regarding the amount or details of any alleged preference claims against Black &

Decker Macao Commercial Offshore Limited.[12]

60.    On October 6, 2020, SBD and the Debtors met and conferred regarding the Demand

Letters, but were unable to reach a resolution.

61.    In sum, despite SBD providing significant benefits to the Debtors by participating

in the Admin Consent Program and notwithstanding the SBD Settlement and the Court orders and

other Court-filed papers on which SBD relied in entering the SBD Settlement, the Debtors are

threatening to bring preference claims of nearly $13 million (or more) against SBD.  That is neither

fair nor appropriate under applicable law and the circumstances of this case.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment that the Preference Claims were Settled Pursuant to the Admin Consent Program and the Related Settlement)

62.    SBD repeats and realleges the allegations set forth in paragraphs "1" through "61"

as though fully set forth herein.

63.    The preference claims asserted in the Demand Letters (and that may be asserted

against Black & Decker Macao Commercial Offshore Limited) violate paragraph 52 of the

Confirmation Order, which expressly provides that the "Expedited Reconciliation" promised in

the Notice of Ballot includes reconciliation of not only administrative expense claims but also "***any***

***exposure on account of preference actions.***"  *See* Confirmation Order ¶ 52(a)(3); Notice of Ballot

at 3.

64.    During the course of the settlement discussions with SBD, after requesting detailed

information as to prepetition transfers—which SBD provided—and stating in open court that

---

[12]  To the extent the Debtors do institute preference litigation against Black & Decker Macao Commercial Offshore Limited despite the apparent lack of any due diligence conducted by the Debtors, SBD reserves all rights under section 547(b) of the Bankruptcy Code and otherwise in respect thereof.

preference claims would be a part of the overall settlement with parties participating in the Admin Consent Program, the Debtors asserted no preference claims against SBD pursuant to the claims reconciliation process contemplated by the Confirmation Order.

65.    In the aggregate, SBD accepted a $1,244,497.40 haircut (over 33%) to its asserted administrative expense claims to fully settle any disputes relating to its claims, including any preference claims as provided for by the Admin Consent Program.  SBD was entitled to be provided with all pertinent information prior to agreeing to settle its administrative expense claims. Yet, during the settlement negotiations, the Debtors requested information on potential preference payments from SBD and did not inform SBD of the Debtors' intent to assert preference claims against SBD.  The Debtors withheld material information pertinent to the settlement negotiations.

66.    Based on (i) the terms of the Admin Consent Program, (ii) the Debtors' statements in open court that preference claims would be a part of any administrative expense claims settlements and (iii) the Debtors' conduct during the course of the settlement negotiations, SBD reasonably believed the Debtors were not asserting any preference claims against SBD.[13]

67.    Both the Confirmation Order and the Debtors' statements in open court make clear that Expedited Reconciliation includes reconciliation of not only administrative expense claims but also "*any exposure on account of preference actions*".  *See* Confirmation Order ¶ 52(a)(3); Dec. 13, 2019 Hr'g Tr. at 15:15–17 (Debtors stating that they will "*factor in whether or not there*

---

[13]  *See In re IBI Sec. Serv., Inc.*, 133 F.3d 205, 208-10 (2d Cir. 1998) (holding that "a party to a court-approved settlement must be able to rely on the plain language of such an agreement," and if such parties cannot, "it might well have a damaging effect on future creditors' willingness to compromise claims and cooperate with the bankruptcy process"); *In re Chateaugay Corp.*, 201 B.R. 48, 72 (Bankr. S.D.N.Y. 1996) (explaining that courts must intervene when there is colorable claim that the debtors have "misled th[e] Court" and "actions threatened" may undermine "the propriety of the [p]lan and th[e] Court's orders, as well as the integrity of the Debtors' chapter 11 cases"); *Diaz v. Reno*, No. 97 CIV 6580, 2000 WL 5022852, at *3 (S.D.N.Y. Apr. 26, 2000) ("[A] distinct and formal admission made before, during, or even after a proceeding by an attorney acting in his professional capacity binds his client as a judicial admission." (collecting cases and sources)).

*was potential preference liability into the overall settlement*".).  Creditors such as SBD should be able to rely on the plain language of this Court's orders and the Debtors must adhere to their statements made in open court.  The Debtors' threat to initiate preference actions against SBD undermine this Court's Confirmation Order and contravene the Debtors' commitment to this Court and the Debtors' creditors.  If left unchecked, the Debtors' threatened preference actions will have a chilling effect on creditors' willingness to compromise with debtors to facilitate the consensual resolution of chapter 11 cases.

68.    Notwithstanding the foregoing, the Debtors' October 2, 2020 email and the September Demand Letter attached therein make clear that the Debtors are asserting substantial preference claims against SBD, and the Debtors have clearly stated that they will initiate litigation against SBD regarding such claims on or before October 15, 2020.

69.    By reason of the foregoing, an actual and justiciable controversy has arisen, and now exists, between SBD and the Debtors entitling SBD, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, to a judgment declaring that (i) pursuant to the Confirmation Order, the Debtors' alleged preference claims against Black & Decker (U.S.) Inc., Black & Decker Macao Commercial Offshore Limited and Waterloo Industries, Inc. were settled as part of the SBD Settlement and (ii) any litigation brought by the Debtors against SBD related to any alleged preference claims would violate the terms of the Confirmation Order.

### SECOND CLAIM FOR RELIEF
**(Declaratory Judgment that the Threatened Preference Actions Violate Section 547(b) of the Bankruptcy Code)**

70.    SBD repeats and realleges the allegations set forth in paragraphs "1" through "69" as though fully set forth herein.

71.    The threatened preference claims against SBD violate section 547(b) of the Bankruptcy Code, which requires the Debtors to have performed reasonable due diligence based

on both the "circumstances of the case" and SBD's "known or reasonably knowable affirmative defenses under subsection (c)". 11 U.S.C. § 547(b).

72.     The circumstances of this case include the Admin Consent Program and the Confirmation Order, which SBD relied upon in entering into the SBD Settlement.

73.     Notwithstanding the Admin Consent Program, the Confirmation Order, the SBD Settlement and their obligations under section 547(b), the Debtors have asserted approximately $13 million of preference claims against Black & Decker (U.S.) Inc. and Waterloo Industries, Inc. and have threatened preference claims against Black & Decker Macao Commercial Offshore Limited in an unknown amount.

74.     By reason of the foregoing, an actual and justiciable controversy has arisen, and now exists, between SBD and the Debtors entitling SBD, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, to a judgment declaring that any litigation brought by the Debtors against SBD related to any alleged preference claims against Black & Decker (U.S.) Inc., Black & Decker Macao Commercial Offshore Limited or Waterloo Industries, Inc. would violate section 547(b) of the Bankruptcy Code.

### THIRD CLAIM FOR RELIEF
### (Injunctive Relief under Section 105(A) of the Bankruptcy Code)

75.     SBD repeats and realleges the allegations set forth in paragraphs "1" through "74" as though fully set forth herein.

76.     Section 105(a) of the Bankruptcy Code empowers the Bankruptcy Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]". 11 U.S.C. § 105(a).

77.     The Debtors' preference claims against SBD are prohibited by the Confirmation Order, which approved the Admin Consent Program pursuant to which any preference claims

against Black & Decker (U.S.) Inc., Black & Decker Macao Commercial Offshore Limited and

Waterloo Industries, Inc. were settled as part of the SBD Settlement, and this Court should enjoin

the Debtors from taking any further action that contravenes this Court's Confirmation Order.

78.     This Court has a compelling interest to enjoin any conduct in contravention of this

Court's Confirmation Order.[14]

79.     SBD has been, and will continue to be, irreparably harmed by the Debtors' pursuit

of the preference claims because (i) SBD will be forced to continue to expend costs to defend any

forthcoming preference claim litigation and will be unable to recover the costs expended in such

litigation, and (ii) such preference claims impair SBD's rights under the Confirmation Order to be

free from such claims, which SBD reasonably believed were settled as part of the SBD Settlement.

80.     SBD is without an adequate remedy to compensate it for the harm suffered by the

Debtors' preference claims.

81.     The harm suffered by SBD in allowing the preference claims to continue outweighs

any harm that the Debtors may suffer if their preference claims were enjoined, especially in light

of SBD's known and reasonably knowable affirmative defenses.

82.     The public interest would be served by the granting of the injunction because the

injunction would give effect and meaning to the terms and conditions of the Plan and Confirmation

Order and would further promote the policies underlying the Bankruptcy Code, including that of

encouraging settlement.[15]

---

[14] *In re Chateaugay Corp.*, 201 B.R. at 72; *see also In re Flushing Hosp. and Med. Ctr.*, 395 B.R. 229, 241 (Bankr. E.D.N.Y. 2008) (emphasis in original) ("The public has a strong interest in ensuring that the orders of a bankruptcy court (like any other court) cannot be circumvented. . . . Exercise of the Court's section 105(a) authority in this manner, and for this purpose, vindicates the interests of the *Court*, as much as (and perhaps more than) it vindicates the interest of an individual litigant.").

[15] *See In re IBI Sec. Serv., Inc.*, 133 F.3d at 208-10; *In re Flushing Hosp. and Med. Ctr.*, 395 B.R.at 241; *In re Chateaugay Corp.*, 201 B.R. at 72.

83.    By reason of the foregoing, the Court should permanently enjoin the Debtors from prosecuting its preference claims against SBD pursuant to section 105(a) of the Bankruptcy Code.

## FOURTH CLAIM FOR RELIEF
### (Contempt and Damages for Violating the Confirmation Order)

84.    SBD repeats and realleges the allegations set forth in paragraphs "1" through "83" as though fully set forth herein.

85.    The Debtors knowingly and willfully violated the Confirmation Order by asserting the preference claims against Black and Decker (U.S.) Inc. in the January Demand Letter.

86.    The Debtors knowingly and willfully violated the Confirmation Order by further asserting the preference claims against Waterloo Industries Inc. in the September Demand Letter.

87.    The Debtors knowingly and willfully violated the Confirmation Order by threatening to prosecute the alleged preference claims against SBD on or before October 15, 2020.

88.    The Debtors' threat to prosecute the alleged preference claims against SBD on or before October 15, 2020 is a knowing and willful violation of section 547(b) of the Bankruptcy Code.

89.    The Debtors' preference claims and the Debtors' acts in connection with the preference claims have impaired the protections afforded SBD under the Confirmation Order and have caused injury to SBD.

90.    By reason of the foregoing, SBD is entitled to (i) an order of the Bankruptcy Court finding the Debtors in contempt for violating the Confirmation Order and (ii) recovery of damages against the Debtors in an amount to be determined at trial, plus costs and disbursements of this action, including but not limited to attorneys' fees, with interest thereon.

## PRAYER FOR RELIEF

91.    **WHEREFORE**, SBD demands judgment against the Debtors as follows:

a. Declaring that (i) pursuant to the Confirmation Order, the Debtors' alleged preference claims against Black & Decker (U.S.) Inc., Black & Decker Macao Commercial Offshore Limited and Waterloo Industries, Inc. were settled as part of the SBD settlement and (ii) any litigation brought by the Debtors against SBD related to any alleged preference claims violates the terms of the Confirmation Order;

b. Declaring that the Debtors' threatened preference actions against Black & Decker (U.S.) Inc., Black & Decker Macao Commercial Offshore Limited and Waterloo Industries, Inc. in the circumstances of these cases violate section 547(b) of the Bankruptcy Code;

c. Permanently enjoining the Debtors from bringing the preference claims against SBD pursuant to the Confirmation Order and section 105 of the Bankruptcy Code;

d. Entry of an order finding the Debtors in contempt for violating the Court's Confirmation Order;

e. Awarding SBD damages against the Debtors in an amount to be determined at trial, for the costs and disbursements of this action, including but not limited to attorneys' fees, with interest thereon; and

f. Granting such further and different relief as the Court may deem just and proper.

Dated: October 12, 2020

CRAVATH, SWAINE & MOORE LLP

By:  /s/ *Paul H. Zumbro*
      Paul H. Zumbro
      Lauren A. Moskowitz
      Worldwide Plaza
      825 Eighth Avenue
      New York, NY 10019
      Telephone:  (212) 474-1000
      Facsimile:  (212) 474-3700
      Email:  pzumbro@cravath.com
              lmoskowitz@cravath.com

*Attorneys for Plaintiffs Stanley Black &*
*Decker, Inc. and its subsidiaries Black &*
*Decker (U.S.) Inc. and Black & Decker*
*Macao Commercial Offshore Limited*