WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                          :

In re                                :         Chapter 11

**SEARS HOLDINGS CORPORATION,** *et al.*,  :         Case No. 18-23538 (RDD)

             Debtors.[1]                  :         (Jointly Administered)

------------------------------------------------------------x

**DEBTORS' REPLY IN SUPPORT OF**
**DEBTORS' FIRST OMNIBUS OBJECTION TO PROOFS OF CLAIM (SATISFIED CLAIMS)**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in reply to *Shaw Industries, Inc.'s Opposition Regarding Debtors' First Omnibus Objection to Proofs of Claim (Satisfied Claims) [Docket 4775]* (ECF No. 5156) (the "**Response**").

## Reply

Shaw Industries, Inc. ("**Shaw**") erroneously claims in its Response that the Supply Contract (as defined below) has not been assumed and assigned to Transform Holdco LLC ("**Transform**") and that negotiations regarding assumption remain ongoing. Contrary to these assertions, pursuant to the Court-approved assumption and assignment procedures, as evidenced by series of notices and motions on the docket, the Debtors clearly assumed and assigned the Supply Contract to Transform on May 19, 2019 with a prepetition cure cost of $0.00 (zero dollars). Shaw did not file an objection to the cure amount or an objection to the assumption and assignment of the Supply Contract. Accordingly, the Claims that arise from the Supply Contract should be disallowed and the Objection should be sustained.

**I.    Shaw's Claims under the Supply Agreement**

1.      Prior to the applicable bar date in these chapter 11 cases Shaw asserted five proofs of claim against the Debtors (claim nos. 6600, 6804, 16585, 16600, and 16845) (the "**Claims**"). The Claims assert general unsecured claims and claims under section 503(b)(9) of the Bankruptcy Code against certain of the Debtors. The supporting documents attached to the Claims indicate—and the Response does not dispute—that the Claims allegedly arose under that certain Supply Agreement For Flooring Products dated February 15, 2017 by and between Shaw

2

and Sears Holdings Management Corporation and other associated contracts (the "**Supply Contract**"). The Supply Contract is attached as Exhibit A to four of the Claims.

### II.     The Court Approved a $0.00 Cure Cost for the Supply Contract

2.     The assumption and assignment of the Supply Contract was effectuated by multiple notices and orders on the docket in accordance with the plain terms of the approved assumption and assignment procedures governing these cases. On January 23, 2019, the Debtors filed the *Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contract and Unexpired Leases in Connection with Global Sale Transaction* (ECF No. 1774) (the "**Cure Cost Notice**"). The Cure Cost Notice provided for a "Cure Objection Deadline" of January 31, 2019, by which any contract counterparty who was listed in the Cure Cost Notice was required to file its objection to the stated Cure Cost. *See* Cure Cost Notice, ¶ 18. The Supply Contract was listed on line 534 in the Cure Cost Notice, no cure cost was listed, and Shaw did not file an objection to the Cure Cost Notice.[2]

3.     On February 8, 2019, this Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* (ECF No. 2507) (the "**Sale Order**"), which approved the Asset Purchase Agreement (the "**APA**")[3] among the Debtors and Transform.

---

[2] Pursuant to the Affidavit of Service (ECF No. 2162) the Cure Cost Notice was served on Shaw Industries via overnight mail.

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the APA or the Assumption and Assignment Order (defined below), as applicable.

4. The Sale Order noted that the Cure Objection Deadline set forth in the Cure Cost Notice had passed. *See* Sale Order, ¶ 34 ("The Debtors served all counterparties to the Designatable Leases and Additional Contracts . . . listed as Potential Transferred Agreements . . . with an Assumption and Assignment Notice and the deadline to object to the Cure Costs and adequate assurance of future performance with respect to the Buyer has passed."). As such, pursuant to the terms of the Sale Order, Shaw is "forever barred from objecting to (i) the Cure Costs and from asserting any additional cure or other amounts with respect to the applicable . . . Additional Contract . . . except to the extent such Cure Costs further accrue".[4] *Id.* Accordingly, regardless of whether the Supply Contract had not yet been assumed or assigned to Transform, as alleged in the Objection, pursuant to the terms of the Sale Order and the Cure Cost Notice, the Supply Contract had no cure cost associated with it.

**III.     The Supply Agreement Was Assumed and Assigned to Transform with No Cure Cost**

5. Under the APA, a system was put in place to provide for the assumption and assignment of Additional Contracts to Transform. *See* APA, Section 2.9. Transform would designate Additional Contracts for assumption and assignment, and Debtors would use reasonable best efforts to assign the applicable Additional Contracts to Transform "so long as [Transform] pays all Expenses accrued post-Closing and all Cure Costs associated with such Additional Contract." *See id.*

6. To effectuate this process, this Court signed the *Order (I) Authorizing Assumption and Assignment of Certain Executory Contracts and Leases and (II) Granting Related Relief* (ECF No. 3008) (the "**Assumption and Assignment Order**"). The Assumption and Assignment Order provided procedures for the assumption and assignment of Additional Contracts

---

[4] A disclaimer asserting this bar was also included in the Cure Cost Notice. *See* Cure Cost Notice, ¶ 19.

not already assumed and assigned on the Closing Date of the APA. *See* Assumption and Assignment Order, ¶¶ 26-27. Upon notice from Transform that an Additional Contract has been designated for assumption and assignment, the Debtors would file a Designated Additional Contract Notice, and provide an opportunity for parties to object on any basis other than the Cure Costs. *Id.* at ¶ 26. If no objections were timely filed in advance of the applicable objection deadline, the Additional Contracts were assumed and assigned to Transform under the terms of the Assumption and Assignment Order. *See id.* at ¶ 27.

7. Under the Assumption and Assignment Order, Transform was required to pay any Cure Costs for Additional Contracts on or before the Assumption Effective Date. *See id.* at ¶ 12 ("All Cure Costs . . . shall be: (i) with respect to the undisputed amounts, be paid in cash by the Buyer, on or before the Assumption Effective Date and (ii) with respect to any disputed amounts, the Buyer shall establish a cash reserve no later than two (2) business days after the Assumption Effective Date . . . and the Buyer shall pay such amounts promptly upon resolution of any such disputed Cure Cost (unless a notice of withdrawal is filed in accordance with paragraph 17 hereof").[5]

8. Pursuant to the Assumption and Assignment Order, on May 20, 2019, the Debtors filed the *Notice of Assumption and Assignment of Additional Executory Contracts* (ECF No. 3950) (the "**Additional Contract Notice**"). The Additional Contract Notice listed the Supply Agreement at line 175. Paragraph sixteen (16) of the Additional Contract Notice stated that all contracts contained therein, including the Supply Contract, had been previously noticed pursuant to an Assumption and Assignment Notice (i.e. the Cure Cost Notice) and that all objection periods related to such Cure Cost Notice had expired. *See* Additional Contract Notice, ¶ 17. The Supply

---

[5] Transform has filed no notice of withdrawal with respect to Shaw's contract.

Contract was noticed in the Additional Contract Notice with the comment "Cure amount resolved."[6]

9. Like with the Cure Cost Notice, Shaw did not object to the Additional Contract Notice. As such, under the terms of the Cure Cost Notice, the Sale Order, the Assumption and Assignment Order, and the Additional Contract Notice, the Shaw contract was deemed assumed and assigned to Transform effective May 20, 2019 with no cure cost. *See* Cure Cost Notice, ¶ 18; Sale Order, ¶ 34; Assumption and Assignment Order, ¶ 27; Additional Contract Notice, ¶ 19.

10. Shaw failed to object to the Cure Cost Notice, which listed the Supply Agreement with no cure cost, and as such, waived any objection to the cure cost of the Supply Agreement. Shaw also failed to object a second time to the Additional Contract Notice, which listed the Supply Agreement with no cure cost, and as such further waived any objection to the assumption and assignment of the Supply Agreement without any cure cost. Accordingly, the Claims—which arise out of the Supply Agreement—should be disallowed.

*[Remainder of Page Left Intentionally Blank]*

---

[6] Pursuant to the *Affidavit of Service* (ECF No. 4008) the Additional Contract Notice was served on Shaw via overnight mail.

11. Additionally, even assuming Shaw could evidence any right to Cure Costs, payment of such Cure Costs is the responsibility of Transform pursuant to their obligations under the Assumption and Assignment Order and APA. The estate has no further obligation regarding the Supply Contract, and asks that the Objection be sustained with respect to the Claims.

Dated: October 13, 2020
      New York, New York

*/s/ Garrett A. Fail*
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Debtors
and Debtors in Possession*