Page 1

1  UNITED STATES BANKRUPTCY COURT
2  SOUTHERN DISTRICT OF NEW YORK
3  Case No. 18-23538-rdd
4  - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
5  In the Matter of:
6
7  SEARS HOLDINGS CORPORATION,
8
9           Debtor.
10 - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
11
12              United States Bankruptcy Court
13              300 Quarropas Street, Room 248
14              White Plains, NY 10601
15
16              October 6, 2020
17              11:15 AM
18
19
20
21 B E F O R E :
22 HON ROBERT D. DRAIN
23 U.S. BANKRUPTCY JUDGE
24
25 ECRO:   UNKNOWN

| | |
|---|---|
| 1 | HEARING re Motion of the Official Committee of Unsecured |
| 2 | Creditors for an Order to Compel BMO Nesbitt Burns, Inc., |
| 3 | HSBC Global Asset Management (UK) Limited, Legal and |
| 4 | General Investment Management Limited, Jeffries LLC, PNC |
| 5 | Bank, N.A. and Clearstream Banking AG, pursuant to |
| 6 | Bankruptcy Rule 2004 Production of Documents |
| 7 | (ECF #8438) |
| 8 | |
| 9 | HEARING re Opposition of Non-Party Jefferies LLC to Motion |
| 10 | of Official Committee of Unsecured Creditors for an Order to |
| 11 | Compel Bankruptcy Rule 2004 Production of Documents |
| 12 | (related document(s)8438)(ECF #8461) |
| 13 | |
| 14 | HEARING re Counter Motion to Compel Bankruptcy Rule 2004 |
| 15 | Production of Documents (related document(s)8438) filed by |
| 16 | Nelson A. Boxer on behalf of PNC Financial Services |
| 17 | Group, Inc. (ECF #8462) |
| 18 | |
| 19 | HEARING re Reply NON-PARTY JEFFERIES LLCS OPPOSITION |
| 20 | (related document(s)8438) filed by James P Chou on behalf of |
| 21 | Official Committee of Unsecured Creditors of Sears |
| 22 | Holdings Corporation, et al. (ECF #8475) |
| 23 | |
| 24 | |
| 25 | Transcribed by: Sonya Ledanski Hyde |

```
 1   A P P E A R A N C E S :

 2

 3   MORITT HOCK & HOFFMAN LLP

 4        Attorneys for the Official Committee of Unsecured

 5        Creditors

 6        400 Garden City Plaza

 7        Garden City, 11530

 8

 9   BY:  DANIELLE MARLOW (TELEPHONICALLY)

10        JAMES CHOU (TELEPHONICALLY)

11

12   SIDLEY LLP

13        Attorneys for Jeffries, LLC

14        One South Dearborn

15        Chicago, IL 60603

16

17   BY:  BENJAMIN FRIEDMAN (TELEPHONICALLY)

18

19   ALSO PRESENT TELEPHONICALLY:

20

21   ENID STUART

22   DEAN CHAPMAN

23   ANDREW DEVORE

24   ALIX BROZMAN

25   TED BERKOWITZ
```

1  SHIRIN MAHKAMOVA
2  SEAN M. NOLAN
3  LEE J. ROHN
4  DAVID ZENSKY
5  DEAN CHAPMAN
6  JONATHAN FALXER
7  SANDEEP GUPTA
8  SANDRA OLIVERI
9  CLAUDIA SPRINGER
10 CHRISTOPHER LYNCH
11 BENJAMIN HIGGINS
12 DAWN KIRBY
13 TAMMY BENOZA
14 ERIC BROWN
15 RAQUEL FELIX
16 KAREN MIGDAL
17 CLINTON CUTLER
18 STUART GLICK
19 ANTHONY PIRRAGLIA
20 MEYER MUSCHEL
21 NEIMAN CHAIM
22
23
24
25

1                P R O C E E D I N G S

2            THE COURT:  All right.  In re Sears Holdings

3    Corporation, et al.

4            MR. MARLOW:  Good morning, Your Honor.  My name is

5    Danielle Marlow.  I'm here for the Creditors' Committee on

6    our motion to compel.

7            THE COURT:  Okay.  Good morning.

8            MR. FRIEDMAN:  Good morning, Your Honor.  This is

9    Ben Friedman on behalf of nonparty Jefferies, LLC.

10           THE COURT:  Good morning.

11           MR. FRIEDMAN:  Good morning.

12           MS. MARLOW:  Your Honor --

13           UNIDENTIFIED SPEAKER:  Good morning.

14           MS. MARLOW:  -- this is Danielle Marlow.  I just

15   wanted to give you a quick overview of what is still pending

16   on --

17           THE COURT:  Before you continue, Ms. Marlow, is

18   there anyone else on for this?  Is anyone on for PNC?  No?

19           MS. MARLOW:  Not that I can tell, Your Honor.

20           THE COURT:  Okay.  All right.  I actually don't

21   see Mr. Friedman on the hearing dashboard, but you're on.

22   You've made your appearance, so --

23           MR. CHOU:  Your Honor, this is James Chou of

24   Moritt Hock & Hamroff.  I'm also counsel, conflicts counsel

25   for the Committee.

1  THE COURT: Okay.

2  MR. CHOU: I'm on just to participate, but Ms.

3  Marlow will be addressing the Court primarily.

4  THE COURT: Okay. So why don't you go ahead, Ms.

5  Marlow.

6  MS. MARLOW: Sure. Thank you, Your Honor.

7  Pursuant to the letter we sent to the Court, we've resolved

8  the motion with respect to Clearstream and Legal and General

9  Investment Corp. So the only parties that are still subject

10  to the motion are BMO Nesbitt Burns; HSBC Global Asset

11  Management; Jefferies, Inc.; and PNC as you noted, Your

12  Honor. BMO Nesbitt Burns and HSBC have not appeared in any

13  matter on these subpoenas. They were served as demonstrated

14  by the affidavits of service that we attached to our papers.

15  We also emailed the subpoenas to them. And when we made

16  this motion, we also mailed the motion papers to them, but

17  they have not appeared in any manner to object or otherwise

18  respond.

19  THE COURT: Could I interrupt you there?

20  MS. MARLOW: Sure.

21  THE COURT: It appears to me that if service was

22  proper, that your motion should be granted given that

23  they've never objected or sought to quash the Rule 2004(c)

24  subpoenas. But in looking at the affidavits of service, the

25  BMO Nesbitt Burns entity is defined in the subpoena and in

1   the motion as -- well, is described in the motion, excuse
2   me, and then defined as BMO Nesbitt -- as BMO Nesbitt, Inc.,
3   I-N-C.  And in the affidavit of service, it says that it was
4   served on the Secretary of State of New York on BMO Nesbitt
5   Burns Corp.
6           MS. MARLOW:  I believe that might just be a typo,
7   Your Honor.
8           THE COURT:  Well, I don't know.  I mean I have
9   some concern about that.  And then, as you said, you also
10  emailed someone at BMO.com who's Simon A. Fish or Simon
11  Fish.  Who is he?  Who is he an employee of?
12          MS. MARLOW:  The Corp.  He's inside counsel.
13          THE COURT:  Of BMO Nesbitt?
14          MS. MARLOW:  Yes.
15          THE COURT:  Okay.  And the BMO Nesbitt entity that
16  was actually the subject of the subpoena?
17          MS. MARLOW:  Yes, Your Honor.  And we also mailed
18  the motion papers, as I noted.
19          THE COURT:  To whom, though?
20          MS. MARLOW:  To BMO Nesbitt, Corp.
21          THE COURT:  All right.  I mean that's my --
22          MS. MARLOW:  You know, honestly, this is probably
23  just the service provider, you know, making a little bit of
24  a typo looking at it.  It was affidavit of service.  I mean
25  I think they probably just got the name a little misspelled

1   there.  They're not lawyers.
2            THE COURT:  Well, except if he's -- if Mr. Fish is
3   in-house with Corp., as opposed to BMO Nesbitt Burns, Inc.,
4   it may just be to someone else.  So I'd like you to check
5   that before submitting an order.
6            MS. MARLOW:  Sure.  Absolutely, Your Honor.
7            THE COURT:  Okay.  And then as far as the HSBC
8   entity is concerned, the affidavit of service says it was
9   served on HSBC Global Asset Management UK, Limited, Care of
10  HSBC Securities USA.  Is HSBC Securities USA an authorized
11  agent for service?
12           MS. MARLOW:  So that's why they went through the
13  Secretary of State.
14           THE COURT:  Well, no, this affidavit was served as
15  for HSBC Global Asset Management UK.
16           MS. MARLOW:  Yes.
17           THE COURT:  It's not through the Secretary of
18  State.  It was hand delivery to an individual at that name
19  (indiscernible) Wu.  It's a -- this is a statement in the
20  affidavit of service: "By delivering to and leaving a true
21  copy to (indiscernible) Wu personally, a person who stated
22  to be an authorized agent."  I don't know if he stated he
23  was or is stated to be.  Anyway, I'd like you to check that,
24  also, just to make sure that what is the basis for saying
25  that HSBC Securities, USA, which I'm assuming is who

```
 1   (indiscernible) Wu works for, is authorized to receive
 2   service for HSBC Global Asset Management UK, Limited.
 3              MS. MARLOW:  Sure, Your Honor.  Do you want us to
 4   submit a letter on these issues or how should we update you?
 5              THE COURT:  Well, I think when you submit the
 6   orders, you should -- it probably makes sense to attach a
 7   letter to the email that you would also file just detailing
 8   your due diligence on that point.  And then I had a similar
 9   question on the email.  The email is attached to Exhibit F
10   to the motion, and it's from you to marksteffensen@hsbc.com.
11              MS. MARLOW:  Right.
12              THE COURT:  And then who is he?  Is he in-house
13   counsel for HSBC Global Asset Management UK, Limited, or,
14   you know, has he appeared in the case for them?  What is his
15   -- who is he?
16              MS. MARLOW:  He's in-house counsel.  I'll check
17   his exact title.
18              THE COURT:  Okay.  But if he -- I mean the issue
19   is whether he's in-house counsel for some other HSBC entity
20   and not this one.  So I have questions on both, the service
21   of both.  Other than that, I agree with the motion and the
22   authorities cited in it that these two subpoenaed third
23   parties have not complied with the subpoena, nor have they
24   filed any sort of timely objection to it or motion to quash
25   and, therefore, need to be directed to comply.
```

1                Obviously, you want to have the order crystal
2     clear as to what they are supposed to do.  And I would,
3     frankly, make it the same as what you've agreed to do with
4     regard to PNC and Jefferies or something equally specific so
5     that there could be no doubt as to their failure to comply
6     if you thereafter want to have them held in contempt.
7                MS. MARLOW:  Understood, Your Honor.
8                THE COURT:  Okay.  All right.  So why don't we
9     turn then to the other two.  Since we have counsel for
10    Jefferies here, maybe we should do that one, and then turn
11    to PNC.
12               MS. MARLOW:  Sure, Your Honor.  Would you like me
13    to address the motion or do you have -- does Your Honor have
14    specific questions?
15               THE COURT:  Well, I mean I've read the motion,
16    Jefferies' objection, and the Committee's reply.  So you
17    both should assume that.  I guess I did have one question,
18    which is, is it indeed the case that the Committee is
19    limiting its discovery at this point to holders or
20    transferees of $250,000 and above in value?
21               MS. MARLOW:  Yes, Your Honor.  I believe in our
22    reply papers, we proposed a limitation in that regard to a
23    certain number of shares.  Let me just pull that up.  I
24    believe it was 2,000 or more shares, a holder -- an
25    accountholder with 2,000 or more shares of Land's End or

1  8,000 or more of Seritage rights.  I mean if that will
2  resolve the motion, we're happy  to make that accommodation
3  and --
4          THE COURT:  Okay.
5          MS. MARLOW:  -- resolve it.
6          THE COURT:  And that's in the aggregate, I guess.
7  So, for example, someone got Seritage rights on day one and
8  then on day two, they got more of them and if it's in the
9  aggregate, then that would count?
10         MS. MARLOW:  Yes, understood.
11         THE COURT:  Okay.  And are you willing to let
12 Jefferies do the due diligence on that or do you want them
13 just to provide you with -- obviously, subject to the
14 confidentiality order -- all of the transfers and then
15 you'll do your own due diligence on it fitting into those
16 categories?
17         MS. MARLOW:  Well, I think their objection or
18 their contention of undue burden, not that we agree with it,
19 is providing all this information.  So we're happy to let
20 them limit their production to accountholders who meet this
21 threshold, you know, so that they don't have to produce
22 additional information unnecessarily.
23         THE COURT:  Okay.  All right.  So, again, I don't
24 know if there's anything more to say on this.  But I'm happy
25 to hear from Jefferies counsel.

1                MR. FRIEDMAN: Your Honor, this is Ben Friedman
2    for Jefferies. I'll be brief since I know that Your Honor
3    has read the motion papers. But really what Jefferies was
4    concerned about was the fact that the Rule 2004 order didn't
5    specifically address them and that there could be a question
6    later on if the Committee's counsel eventually does file
7    fraudulent conveyance actions against Jefferies'
8    accountholders about why Jefferies disclosed this
9    information.
10               And so, you know, the primary concern that
11   Jefferies had with all of this was that concern, and we
12   attempted to resolve that concern with Committee's counsel
13   back in May. We even suggested that the Committee counsel
14   could come to the Court then and clarify the order and then
15   Jefferies would produce this information, you know, as soon
16   as the Court entered that order. So, you know, Jefferies is
17   a little bit puzzled about how we ended up here kind of on
18   the eve of the Committee's expiration of their statute of
19   limitations.
20               And so, Your Honor, if the Court is inclined to
21   grant the motion, Jefferies would request that the order
22   specifically address Jefferies and, in fact, order them to
23   produce this information so that there's really no question
24   later on from potential defendants in a fraudulent
25   conveyance action about why Jefferies was disclosing this

Page 13

1   information.

2              THE COURT: Okay. Well, I'm happy to do that. I

3   will grant the Committee's motion, which is dated September

4   14. It seemed to me that when I got the Committee's

5   request, which was made over the Labor Day weekend for a

6   discovery conference which I reviewed on the 8th of

7   September, that Tuesday, that either Jefferies was being

8   unduly difficult or in fact just wanted a comfort order.

9   And under either scenarios, I didn't see the reason to have

10  a chambers commerce and instead said we should move ahead

11  with the motion which would result in an order one way or

12  another. I'm happy to make it a comfort order in event.

13  There's no sanction to Jefferies unless it, of course,

14  doesn't comply with the order that will be entered shortly.

15             It appears to me that it's clear that the Rule

16  2004 motion was addressed to obtaining information regarding

17  the insider transactions, as so defined, from those who have

18  knowledge of them, which would include the recipients of the

19  value of those transactions, which would include Jefferies,

20  and authorize the issuance of a subpoena in furtherance of

21  the order granting the motion.

22             The privacy concerns raised by Jefferies are

23  sufficiently addressed by the confidentiality order covering

24  discovery in respect of these matters. And the other

25  concern raised by Jefferies regarding the limitation on the

1   number of parties who it would be providing information to,
2   i.e., namely limited to the 250,000 in the aggregate is also
3   addressed by the Committee's agreement.  So the order here
4   should grant the motion, state clearly that the motion and
5   the subpoena contemplated and this order contemplates
6   production by Jefferies responsive to the subpoena as
7   modified by the order.  And then the order should lay out
8   the modifications, i.e., the time period that Jefferies
9   needs to take, the fact that the disclosure by Jefferies
10  will be covered by the confidentiality order, and the
11  limitation regarding the number of shares or rights outlined
12  by Sears' counsel on the record.
13          So I'll look for that order.  You don't need to
14  settle it on Sidley, but you should copy -- Ms. Marlow, you
15  should copy Sidley's counsel so that he could make sure it's
16  consistent with my ruling.
17          MS. MARLOW:  Will do.
18          THE COURT:  All right.  And then as far as --
19          MR. FRIEDMAN:  Thank you.
20          THE COURT:  Very well.  And then as far as PNC
21  Bank is concerned, counsel for PNC still isn't on the phone,
22  correct?
23          MS. MARLOW:  Correct, Your Honor, but they
24  submitted papers in response to the motion.
25          THE COURT:  Right.  And I've reviewed those

1   pleadings.  It's clear to me that the Committee's counsel
2   did not limit its request here either in the motion or the
3   subpoena or during the meet and confer process to the
4   specific two days claimed by PNC, namely April 7, 2014, and
5   June 11, 2015, regarding the Land's End and Seritage rights
6   offering transactions, respectively.
7               The Committee has since then agreed to add just
8   two additional dates for checking, April 14 and June 18.  I
9   guess, Ms. Marlow, what does that -- why would it just be
10  those two dates as opposed to a week on the end of -- you
11  know, a week between April 7 and April 14 or June 11 and
12  June 18?
13              MS. MARLOW:  We would prefer a full week.  Those
14  specific dates were offered in connection with the meet and
15  confer process, but really, yeah, we need each day between
16  April 7th and the 14th and each day between June 11th and
17  the 18th to capture any disbursements of the subject
18  security.
19              THE COURT:  All right.  And you're not looking for
20  subsequent transfers, right?  You're just looking for
21  transfers from the Sears entity to these customers, correct?
22              MS. MARLOW:  Correct.  As we've seen the data,
23  it's not always exactly on the specific dates, any one
24  specific date.  It's within about a week.  That's why we
25  would like the production to be for each day between the 7th

```
 1   and the 14th of April, 2014 with respect to Land's End and
 2   each day between June 11th and June 18th, 2015 with respect
 3   to Seritage.
 4             THE COURT:  Okay.  All right.  The original 2004
 5   application simply referred to those transactions taking
 6   place in the month of April and the month of June of 2014
 7   and 2015, respectively.  And I think that the Committee has
 8   been reasonable in narrowing it down, at least to exclude
 9   transfers or looking for transfers that couldn't have
10   happened before the closing date, which would have been
11   April 7 and June 11, respectively, for the two insider
12   transactions.
13             And it appears to me that they're also reasonable
14   in not insisting on the full rest of the month  but rather
15   just one more week since it might take that long to fully
16   transfer the consideration from those insider transactions.
17             Are you limiting this one to the 250,000, the same
18   share formula that you had before in the Jefferies one?
19             MS. MARLOW:  This one we preferred not to have
20   that limitation because there are -- these are generally
21   infinite accountholders, not institutions.  So the
22   individual accountholders sometimes need to be aggregated in
23   light of other productions that have --
24             THE COURT:  Okay.
25             MS. MARLOW:  -- (indiscernible) for the same
```

Page 17

1  accountholders. So we'd prefer not.

2  THE COURT: All right. And in any event, PNC has

3  not asked for that.

4  MS. MARLOW: No.

5  THE COURT: You would have this be subject to the

6  confidentiality order, though, I gather, correct?

7  MS. MARLOW: Yes, correct.

8  THE COURT: Okay. All right. So I will overrule

9  PNC's objection. It does not appear to me that compliance

10 with the subpoena as it will be clarified in this order is

11 unduly burdensome or unnecessary. Rather, the subpoena does

12 indeed further a legitimate purpose of the Committee, which

13 is to learn the transferees from the Sears entities or

14 through the -- ultimately, through the Sears entities of the

15 consideration in these two transactions. And any concern

16 that PNC would have with regard to confidentiality of its

17 customers' information is adequately addressed by the

18 confidentiality order in place, which will be referred to in

19 the order granting the motion.

20 So I will grant the motion. Again, the order

21 really needs to be clear as to the dates at issue and the

22 confidentiality provision. And that production needs to be

23 promptly, obviously, because you're facing a key deadline

24 here.

25 MS. MARLOW: Yes. I believe -- in the motion, we

Page 18

1  asked that the production be within three days of entry of
2  the order.
3          THE COURT:  Right.  And I have no problem with
4  that given the length of time this has been pending and the
5  (indiscernible) with which now, at least, PNC would have to
6  identify these customers.
7          MS. MARLOW:  Thank you.
8          THE COURT:  So I'll look for both of those orders.
9  You should just copy counsel for PNC on the email to
10 chambers with the PNC order.  But --
11         MS. MARLOW:  Will do.
12         THE COURT:  -- you can contact them in advance of
13 that order being signed and fill them in on the results of
14 this hearing and tell them that they'll be operating under
15 that deadline.
16         MS. MARLOW:  Will do.
17         THE COURT:  Okay.  Very well.  I think that
18 concludes the calendar for today.  So hearing no one saying
19 anything to the contrary, I'm going to ring off at this
20 point.
21         MS. MARLOW:  Thank you, Your Honor.
22         (Whereupon these proceedings were concluded at
23 11:42 AM)
24
25

```
                         I N D E X


                          RULINGS

                                               Page      Line


  Motion Granted                                17        20
```

1      C E R T I F I C A T I O N

2

3      I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6   *[signature: Sonya M. Ledanski Hyde]*

7

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  October 7, 2020