Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 18-23538-rdd

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   SEARS HOLDINGS CORPORATION,

8

9            Debtors.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                   United States Bankruptcy Court

13                   300 Quarropas Street, Room 248

14                   White Plains, NY 10601

15

16                   October 15, 2020

17                   10:05 AM

18

19

20

21  B E F O R E :

22  HON ROBERT D. DRAIN

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:   UNKNOWN

1    HEARING re Fifth Application of Weil, Gotshal & Manges LLP,

2    as Attorneys for the Debtors, for Interim Allowance of

3    Compensation for Professional Services Rendered and

4    Reimbursement of Actual and Necessary Expenses Incurred from

5    3/1/2020 to 6/30/2020, fee: $2,891,566.50, expenses:

6    $285,632.99. filed by Weil, Gotshal & Manges LLP. (ECF

7    #8403)

8

9    HEARING re Fifth Interim Fee Application of Prime Clerk LLC,

10   as Administrative Agent to the Debtors, for Services

11   Rendered and Reimbursement of Expenses for The Period from

12   March 1, 2020 through June 30, 2020 Filed by Adam M. Adler

13   on behalf of Prime Clerk LLC. (ECF #8377)

14

15   HEARING re Fourth Joint Application of Paul E. Harner, as

16   Fee Examiner and Ballard Spahr LLP, as Counsel to the Fee

17   Examiner for Interim Allowance of Compensation for

18   Professional Services Rendered and Reimbursement of Actual

19   and Necessary Expenses Incurred from 3/1/2020 to 6/30/2020,

20   fee: $233796.00, expenses: $160.71. filed by Fee Examiner.

21   (ECF #8399)

22

23

24

25

1    HEARING re Fifth Interim Fee Application of Akin Gump

2    Strauss Hauer & Feld LLP as Counsel to the Official

3    Committee of Unsecured Creditors for Allowance of

4    Compensation for Services Rendered and Reimbursement of

5    Expenses for the Period : 3/1/2020 to 6/30/2020, fee:

6    $7,085,203.50, expenses: $2,373,813.28. filed by Akin Gump

7    Strauss Hauer & Feld LLP. (ECF #8378)

8

9    HEARING re Fifth Interim Application of FTI Consulting,

10   Inc., Financial Advisor to the Official Committee of

11   Unsecured Creditors of Sears Holding Corporation, et al. for

12   Interim Allowance of Compensation and Reimbursement of

13   Expenses for the Period f 3/1/2020 to 6/30/2020, fee:

14   $216,621.50, expenses: $70.00. filed by FTI CONSULTING, INC.

15   (ECF #8379)

16

17   HEARING re Declaration (Supplemental) of Matthew Diaz in

18   Support of the Application for Entry of an Order Authorizing

19   the Retention and Employment of FTI Consulting, Inc. as

20   Financial Advisor to the Official Committee of Unsecured

21   Creditors Nunc Pro Tunc to October 25, 2018 (related

22   document(s)1074) filed by Ira S. Dizengoff on behalf of

23   Official Committee of Unsecured Creditors of Sears Holdings

24   Corporation, et al. (ECF #8412)

25

1    HEARING re Second Application for Interim Professional

2    Compensation for Herrick, Feinstein LLP, Special Counsel,

3    period: 3/1/2020 to 6/30/2020, fee: $1,185,248.50, expenses:

4    $117,625.05. filed by Herrick, Feinstein LLP. (ECF #8374)

5    Final Application of Houlihan Lokey Capital, Inc.,

6    Investment Banker to the Official Committee of Unsecured

7    Creditors, for Allowance of Compensation for Professional

8    Services Rendered and Reimbursement of Actual and Necessary

9    Expenses Incurred from 10/29/2018 to 10/31/2019, fee:

10   $9,875,000.00, expenses: $111,517.76. filed by Houlihan

11   Lokey Capital, Inc. (ECF #8380)

12

13   HEARING re First Application for Interim Professional

14   Compensation OF MORITT HOCK & HAMROFF LLP AS SPECIAL

15   CONFLICTS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED

16   CREDITORS FOR ALLOWANCE OF COMPENSATION FOR SERVICES

17   RENDERED AND REIMBURSEMENT OF EXPENSES period: 1/2/2020 to

18   6/30/2020, fee: $215677.50, expenses: $7,954.53, and

19   period: 1/2/2020 to 6/30/2020, fee: $215677.50, expenses:

20   $7,954.53. filed by James P Chou. (ECF #8375)

21

22   HEARING re Motion for Omnibus Objection to Claim(s) /

23   Debtors First Omnibus Objection to Proofs of Claim

24   (Satisfied Claims). (ECF #4775)

25

1   HEARING re Shaw Industries, Inc.'s Opposition Regarding

2   Debtors' First Omnibus Objection to Proofs of Claim

3   (Satisfied Claims). (ECF No. 5156)

4

5   HEARING re Debtors' Reply in Support of Debtors' First

6   Omnibus Objection to Proofs of Claim (Satisfied Claims)

7   (related document(s)5156, 4775) filed by Garrett A. Fail on

8   behalf of Sears Holdings Corporation. (ECF #8958)

9

10   HEARING re Debtors Tenth Omnibus Objection to Proofs of

11   Claim (To Reclassify Claims). (ECF #5237)

12

13   HEARING re Infiiloom India Private Limited's Response. (ECF

14   No. 5394)

15

16   HEARING re Winners Industry Company, Ltd.'s Response. (ECF

17   No. 5400)

18

19   HEARING re Orient Craft Ltd.'s Opposition. (ECF Nos. 5496

20   and 5497)

21

22   HEARING re Response of HK Sino-Thai Trading Company LTD.

23   (ECF No. 6037)

24

25   HEARING re Debtors' Omnibus Reply in Support. (ECF No. 6372)

1    HEARING re Debtors Eleventh Omnibus Objection to Proofs of

2    Claim (To Reclassify or Disallow Certain Claims). (ECF

3    #7213)

4

5    HEARING re Response of Xiamen Luxinjia Imp & Exp Co Ltd. in

6    Opposition. (ECF No. 7372)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 7

1    A P P E A R A N C E S :

2

3    WEIL GOTSHAL & MANGES LLP

4        Attorneys for Debtors

5        767 Fifth Avenue

6        New York, NY 10153

7

8    BY:  GARRETT FAIL (TELEPHONICALLY)

9        MICHAEL BUSCHMANN (TELEPHONICALLY)

10        BRYAN PODZIUS (TELEPHONICALLY)

11

12    BALLARD SPAHR LLP

13        Attorneys for Paul Harner

14        1675 Broadway

15        New York, NY 10019

16

17    BY:  PAUL HARNER (TELEPHONICALLY)

18        VINCENT MARRIOTT (TELEPHONICALLY)

19

20    BRYAN CAVE LEIGHTON PAISNER LLP

21        Attorneys for Shaw Industries, Inc.

22        1201 West Peachtree Street NW

23        Atlanta, GA 30309

24

25    BY:  MARK DUEDALL (TELEPHONICALLY)

1    DAVIDOFF HUTCHER & CITRON, LLP

2         Attorneys for Orient Craft and HK Sino

3         605 Third Avenue

4         New York, NY 10158

5

6    BY:  DAVID WANDER (TELEPHONICALLY)

7

8    UNITED STATES DEPARTMENT OF JUSTICE

9         Attorneys for The United States Trustee

10         201 Varick Street

11         New York, NY 10014

12

13    BY:  PAUL SCHWARTZBERG (TELEPHONICALLY)

14

15    ALSO APPEARING:

16    SAUL BURIAN (TELEPHONICALLY)

17

18

19

20

21

22

23

24

25

1              P R O C E E D I N G S

2         THE COURT:  Good morning, this is Judge Drain.

3    We're here in In re Sears Holdings Corp., et al.  This is a

4    completely telephonic hearing.  You should identify yourself

5    and your client the first time you speak.  It's a good idea

6    to do so again if someone speaks between you and the next

7    time you speak so that the court reporter can put together

8    your voice with your name.

9         There is one authorized recording of this hearing.

10   It's taken by CourtSolutions.  If you want to order a

11   transcript, you should contact our clerk's office to arrange

12   for the preparation of one.

13        Lastly, you should keep your phone on mute unless

14   you're speaking, at which point of course you should unmute

15   yourself.

16        So with that being said, I have the proposed

17   agenda for today's omnibus hearing and I'm happy to go down

18   the agenda unless the Debtors want to vary it or provide any

19   other information before we start.

20        MR. FAIL:  Thank you, Your Honor.  Good morning,

21   it's Garrett Fail from Weil Gotshal & Manges on behalf of

22   the Sears debtors.  Are you able to hear me,  Your Honor?

23        THE COURT:  Yes, I can hear you fine.  Thanks.

24        MR. FAIL:  Thank you very much.  We are happy to

25   proceed in the order that the items appear on the agenda.

1            THE COURT:  Okay.

2            MR. FAIL:  The first section are uncontested fee

3    applications.  They include Weil Gotshal, Prime Clerk, and

4    Mr. Harner as the fee examiner, Akin Gump, FTI Consulting,

5    Herrick Feinstein, and Houlihan Lokey, and Moritt Hawk &

6    Hamroff.  As noted on the agenda, each of the applications

7    is uncontested.  If Your Honor grants the applications, we

8    will provide, as we have in the past, a combined order

9    granting them, reserving the rights with respect to all of

10   the interim applications on behalf of the fee examiner.  And

11   that has been included before.

12           THE COURT:  So let me -- I've reviewed the

13   applications, and I will note that they are unopposed.  We

14   have a fee examiner in this case, as you've noted, Mr.

15   Harner.  And I see you're on the phone.  Let me ask you, Mr.

16   Harner, what is the status of your review of the fees that

17   are before me this morning?  Do they reflect your full

18   review and any input or any discussions that you had with

19   the professionals, or is that process still underway?

20           MR. HARNER:  Your Honor, it's in varying states of

21   completion with respect to both fees and all prior interim

22   fee applications.  We have completed and submitted to the

23   professionals preliminary reports with respect to the vast

24   majority of those applications and are nearing completion on

25   the remainder as to which we have not yet submitted

Page 11

1    preliminary reports.

2           As you'll recall Your Honor's order with respect

3    to the fee examination process contemplates the submission

4    of those reports and then a negotiation process that is

5    protected by Rule 408 as settlement communications.

6    Candidly, we are awaiting both the provision of some

7    requested information and responses to preliminary

8    objections on a substantive level from various of

9    professionals.  We do remain cautiously optimistic that they

10   will all ultimately be resolved on a consensual basis.

11   Several of them in fact have been with respect to earlier

12   applications, and either will be reflected in final fee

13   orders or already have been.  But those discussions are

14   ongoing, subject of course to the provision of information

15   that we have requested and the substantive responses that we

16   are awaiting, as I indicated.

17          THE COURT:  Okay.  So, I obviously don't know and

18   don't need to know the full extent of your recommendations

19   to the various professionals on their fees, and it sounds

20   like that process is still ongoing.  These are interim

21   applications.  For some professionals, it's clear to me that

22   their work is, if not winding down completely, going to be

23   reduced for future periods beyond the period covered by

24   these applications.  On the other hand, these are all rather

25   large firms.  What I'm leading up to is whether you believe

1    there should be a larger holdback in respect of any of these

2    applications because of a concern that potential objections

3    that you might have or resolutions would require

4    disgorgement as opposed to just not my awarding final unpaid

5    amounts.

6              MR. HARNER:  Your Honor, just a couple of -- it's

7    Paul Harner again, the fee examiner.  Just a couple of

8    observations in that regard.  First, you're not only correct

9    that several of the firms are winding down.  There are

10   several firms that were very active at the beginning stages

11   of the case that have now in fact completed their

12   engagements.  And in fact, we either have seen or will see

13   final fee applications very shortly from those firms subject

14   to final resolution of whatever objections we either have

15   raised or intend to raise with those firms and are currently

16   negotiating.

17             The process that I ultimately envision if I am

18   correct -- and again, I remain hopefully optimistic in this

19   regard -- is that at the conclusion of the cases, you will

20   see a final report from us that reflects those consensual

21   agreements with each of those firms.

22             Your Honor may also recall that at the last

23   interim fee application hearing, we had a discussion about

24   the disgorgement issue.  And without putting any words in

25   the Court's mouth, I believe that you made clear that to the

1    extent that any agreements or, hopefully not, but to the

2    extent that any objections had to be litigated, the Court

3    ordered fee reductions that required disgorgement that in

4    fact prior fee payments would be subject to disgorgement.

5    But I am not of the view, and remain not of the view, that

6    it's necessary to increase any holdbacks at this point

7    precisely be the firms involved here, particularly those

8    that have the largest of the interim, and ultimately final

9    fee applications, are of sufficient financial wherewithal

10   that I do not have any concern about their ability either on

11   a consensual or court-ordered basis to disgorge.

12          So that is a long way of saying that I do not

13   believe and do not recommend any additional holdback beyond

14   what is already provided in the interim compensation order

15   entered by Your Honor at the outset of the case.

16          THE COURT:  Okay.  That's helpful.  Thank you.

17   And it's consistent with my understanding here.

18          So that leaves just one application, which I have

19   a question about.  Sort of going along the lines of what

20   we've just been talking about.  The Houlihan Lokey

21   application is described as a final application.  Is that

22   one that you have resolved with them, or even though it's

23   couched as final, it will still have a reservation as to the

24   fee examiner and ultimately the Court?  Did I lose you?

25          MR. HARNER:  Your Honor, I apologize.  I pressed

1    mute when I intended to press unmute.  I didn't realize I

2    was already unmuted.

3              THE COURT:  Oh, that's fine.

4              MR. HARNER:  I'm scrabbling, Your Honor, to find

5    this on my computerized files, but I'm going to ask my

6    colleague, Mr. Marriott to confirm.  I believe we did not

7    have any objection to the Houlihan Lokey fee application,

8    which was, by the way, largely success fee based.  But if he

9    has a different recollection, now would be the time for him

10   to speak up.

11             THE COURT:  Okay.

12             MR. MARRIOTT:  Good morning, Your Honor.  Vince

13   Marriott, Ballard Spahr, representing Mr. Harner as fee

14   examiner.  My recollection is the same as Mr. Harner's.

15             THE COURT:  Okay.  So this is the end of

16   Houlihan's work in the case then. They're not providing any

17   more services as investment banker to the committee.  Which

18   --

19             MR. BURIAN:  Your Honor, it's Saul Burian from

20   Houlihan Lokey.

21             THE COURT:  Yes.  Good morning.

22             MR. BURIAN:  Good morning, Your Honor.  After

23   conversations with our committee and at the suggestion of

24   Akin Gump, in order to minimize expense on the estates,

25   notwithstanding that we were not yet final, we stopped

Page 15

1  billing monthlies and expenses quite a while ago.  And while

2  we were available for consultation, we no longer felt it was

3  appropriate to bill the estate pursuant to our retention

4  letter.  So what you have before you is our final fee app

5  with no charges during the past -- I can't remember how many

6  months.  My  understanding is the fee examiner had no

7  comments to our application.  Our expenses, especially with

8  this being in a White Plains courtroom, were quite minimal.

9  And we are seeking a final approval today.

10            THE COURT:  Okay.  That's fine.

11            MR. HARNER:  And, Your Honor, it's Paul Harner

12  again, as the fee examiner.  I apologize to the Court for

13  not having been able earlier to locate my electronic file,

14  but I did in fact locate my confirmation that after

15  examination, we did not have any objection.  And to the

16  extent that I failed to formally communicate that to Mr.

17  Burian, I apologize both to him and to the court.  But we do

18  in fact have no objection to the final application.

19            THE COURT:  Okay, great.  Thank you.  Have there

20  been any changes to the amounts sought from what is set

21  forth in each application?  I guess that's a question for

22  Mr. Fail ultimately.

23            MR. FAIL:  Apologies, Your Honor.  Can you repeat

24  the question.

25            THE COURT:  Sure.  Have there been any changes to

Page 16

1    the amounts sought by any of the professionals from what is

2    sought in the applications as filed?

3              MR. FAIL:  Thank you, Your Honor.  Garrett Fail,

4    Weil Gotshal, for the record.  The debtors, we have not been

5    informed of any, and we will circulate, as we have in the

6    past, the form of proposed order to each of the affected

7    professionals for their signoff.  And if there's any changes

8    that they've negotiated or any corrections, we'll make them

9    before we submit the order to chambers.

10             THE COURT:  Okay, very well.  And does the U.S.

11   Trustee have any comments on any of the applications?

12             MR. SCHWARTZBERG:  No, your -- excuse me.  Paul

13   Schwartzberg for the U.S. Trustee's Office.  No, Your Honor.

14             THE COURT:  Okay.  All right.  Thank you.

15             As I said, I have reviewed each of the

16   applications, each of which is interim except for the

17   Houlihan Lokey application.  And based on the record today,

18   not only do I grant the applications as sought, but I am

19   reasonably comfortable that I don't need any further

20   holdback, notwithstanding the clear reservation of rights

21   for the fee examiner and that process which is ongoing.

22             So I'll ask the Debtors to submit one order that

23   covers all of the application, noting that the Houlihan one

24   is a final application, and that will be entered.

25             MR. FAIL:  Thank you, Your Honor.

1           MR. HARNER:  Your Honor, Paul Harner as the fee

2     examiner.  With that, may Mr. Marriott and I be excused?

3           THE COURT:  Yes, that's fine.  And anyone who is

4     on just for the fee apps can also ring off at this point.

5           MR. HARNER:  Thank you very much, Your Honor.

6           THE COURT:  So, Mr. Fail, before we go to the rest

7     of the agenda, I did have one question.  Originally on the

8     agenda was the Debtors' motion for approval of a second APA

9     settlement between the Debtors and Transform Holdco.  Unlike

10    some of the other matters that had been on the agenda that

11    are now listed as being adjourned or being resolved, this

12    one doesn't appear anymore.  Do you know the status of it?

13          MR. FAIL:  Thank you, Your Honor.  Garrett Fail,

14    Weil Gotshal.  My understanding was that a certificate of no

15    objection was filed with respect to that.  And I'm just

16    going on the docket right now to see if that's the case.

17    Probably Jennifer Crozier may be on the line to respond if

18    she is --

19          THE COURT:  It's possible I -- I'm sorry to

20    interrupt you.  It's possible I may have sent the order in,

21    but I don't recall it.  So could someone at Weil just double

22    check?  And if the order approving it has not been entered,

23    could you have them email or re-email the proposed order to

24    chambers along with a certificate of no objection, and it

25    will get entered.

1          I've reviewed the motion, which I believe is

2    unopposed.  I didn't know whether it had been adjourned or

3    not.  So if it's not been adjourned, then there's no reason

4    not to grant it.

5          MR. FAIL:  Thank you, Judge.  It was not

6    adjourned.  We will resubmit the order.  As of last night, I

7    know it had not been entered.  I will follow up while we're

8    on the hearing.  It's at Docket 8960 I'm being told, is the

9    certificate of no objection.

10          THE COURT:  Okay.

11          MR. FAIL:  But we'll get that submitted.

12          THE COURT:  Very well.  So otherwise, why don't we

13    just keep going down the agenda.

14          MR. FAIL:  Thanks very much, Judge.  The next item

15    on the agenda has been carried for some time.  It's the

16    Debtors' first omnibus objection to claims.  With Your

17    Honor's permission, I'll cede the podium to my colleague,

18    Michael Buschmann.

19          One housekeeping note, Judge.  And you've granted

20    this request in the past for others.  Mr. Buschmann is

21    admitted in the State of New York.  His admission to the

22    Southern District is pending.  I think it's been delayed

23    given the corona crisis.  With Your Honor's permission, we

24    would ask that he be admitted either pro hoc or for purposes

25    of this hearing only to present this objection.

Page 19

1            THE COURT:  That's fine.  If it's just for this

2    hearing, then that's fine.  If he's going to be appearing in

3    other matters in this case, then he should do a pro hoc

4    application.

5            MR. FAIL:  Thank you, Judge.

6            THE COURT:  Okay.

7            MR. BUSCHMANN:  Thank you, Your Honor.  This is

8    Michael Buschmann on behalf of Weil Gotshal & Manges for the

9    Debtors.

10            The next item on the agenda is matter number nine,

11    which relates to the Debtors' first omnibus objection.  As

12    my colleague, Garrett Fail, mentioned, this has been

13    adjourned from time to time.  And while we have been

14    successful in resolving most claims objections in this case,

15    this particular claim we need to seek the Court's judgement

16    on.

17            To summarize the objection and reply, the first

18    omnibus objection objects on the grounds that Debtors have

19    no liability for all claims listed, as those claims have

20    been satisfied either by the Debtors or through assumption

21    and assignment to Transform.

22            To summarize our reply, the response to Shaw

23    Industries to the Debtors' first omnibus objection tries to

24    put forth a factual scenario that the pleadings in this case

25    do not support.  Shaw Industries alleges that on the date

Page 20

1   they filed their objection, their claim had not been assumed

2   and assigned to Transform and that there was still a cure

3   amount allegedly owing.

4           As detailed in the reply, based on cure costs

5   notices and assumption and assignment notices set forth in

6   this case, the cure cost for their claim was fixed and the

7   assignment took place.  Shaw Industries simply cannot use

8   this claims objection process to attempt to raise late

9   objections to those facts.

10          To the extent there are ongoing negations or a

11  dispute between Shaw and Transform over some agreement

12  reached for their contract assumption, as they allege in

13  their response, that is a question for different parties

14  under a different pleading at a different time.

15          The Debtors are willing to make sure that all

16  rights are reserved with respect to any such dispute between

17  Transform and Shaw.  But what is clear now is that the

18  Debtors and their estates have no further involvement with

19  Shaw Industries for their contracts.  The Debtors ask that

20  the objection be upheld with regards to this claim to free

21  up reserved estate assets for other claimants with valid

22  claims against the estate.

23          I am happy to answer any questions you may have at

24  this time or go into more detail regarding the response or

25  respond to anything other parties might have to say.

Page 21

1           THE COURT:  Okay.  Well, I have reviewed the

2    pleadings on this and the underlying orders, so at this

3    point I don't have any questions.  I think I see Counsel for

4    Shaw Industries on the phone.  So I'm happy to hear from

5    them.

6           MR. DUEDALL:  Hello, Judge.  This is Mark Duedall

7    with the firm of Bryan Cave out of Atlanta.  I am counsel

8    for Shaw.  Can Your Honor hear me?

9           THE COURT:  Yes, I can hear you fine.  Thanks.

10          MR. DUEDALL:  Thank you, Judge Drain.  Judge

11    Drain, as indicated in our response, Shaw has no interest

12    and no desire to relitigate cure amounts.  That's not what

13    we do.  We don't wish to revisit procedures that were

14    established by this Court in this case or in other cases.

15          The challenge here is an open factual issue.  And

16    it's even made more bare by the Debtors' reply that they

17    filed I believe on Tuesday.  And that is if the contract was

18    assumed, then there should be no preference claim.  And we

19    are very curious why a preference claim was brought on a

20    contract that was assumed.

21          The Debtors' reply indicates that first they file

22    da notice setting forth that the cure amount is zero, to

23    which Shaw did not respond.  As a factual matter,

24    Transformco made it clear it was willing to assume Shaw's

25    contract only if it had to pay a cure amount

1   (indiscernible).  And that's perfectly appropriate.  Buyers

2   of assets in bankruptcy do that routinely.  It is their

3   right.

4            Shaw indicted that, you know, that would be fine.

5   But then Transformco indicated and it wanted extended credit

6   terms, which is something Shaw was not willing to agree to

7   unless there was a cure payment.

8            And then you had, as indicated in the reply -- not

9   Shaw's response, but in the reply -- a subsequent cure

10  notice saying cure amount agreed to, which is not correct.

11  There has been no cure amount paid.  There has been no cure

12  amount agreed to.  Terms have not been extended.  Shaw

13  continues to do business with Transformco on a PO basis.

14  And we are in a rather weird factual situation where the

15  Debtor filed two cure notices that are inconsistent.  No

16  cure amount has been paid, although it said cure amount

17  agreed to in the second notice.  And then Shaw was sued on a

18  preference, which is entirely inconsistent.  Entirely

19  inconsistent with what the Debtors allege in terms of

20  assumption.

21           So, Your Honor, we have a very unclear factual

22  record here.  We've had discussions with Sears' counsel for

23  some time.  Mr. Buschmann and Mr. Fail were all puzzled by

24  this.  I've had discussions myself with Transformco's in-

25  house counsel, which has indicated, yes, no cure amount was

Page 23

1    ever paid.  And they've asked again for trade terms, and

2    Shaw has said no.  And that's not before Your Honor at all.

3    But it informs the unclear factual record on was there an

4    assumption, was there an assumption with an agreed cure

5    amount, which no one seems to know what that agreed cure

6    amount was, as the Debtors' second notice indicates.  Was

7    there an assumption on the condition of Shaw extending terms

8    to Transformco, which Shaw did not, and the parties

9    continued to do business?  And was there an assumption and

10   yet still a preference point, which there undoubtedly is.

11   There undoubtedly is.

12           So, Your Honor, we have a very unclear factual

13   record here on whether assumption has taken place, in my

14   view.

15           THE COURT:  Okay.  Well, I agree with you that

16   upon the assumption and assignment of the contract, that

17   fact would negate a preference claim.  But I think I tend to

18   disagree with you about the rest of the record.

19           Looking through the relevant orders, it appears

20   clear to me that those orders provide that transform, or its

21   designee, had a specific deadline to take an assignment of a

22   contract, that the contracts with Shaw were identified

23   timely for assumption and assignment, and that the relevant

24   orders, which I'll go through in a minute, provided for the

25   assumption and assignment and that those orders also

Page 24

1    provided that the failure to object to the cure notice would

2    result in there being no cure beyond what was set forth in

3    the notice.

4            As to the point regarding the parties, that is the

5    discussions between Transform and Shaw Industries regarding

6    any amendments to the agreement as part of the assumption

7    and assignment.  Both the APA order from February 8, 2019,

8    as well as the additional assumption and assignment order,

9    i.e. the order applying to addition assumption and

10   assignments from March 26th, 2019, both of those orders gave

11   Transform and the non-debtor parties the flexibility to

12   negotiate a new agreement or a modified agreement, but then

13   went on to say, "And any such agreement shall require the

14   counterparties' waiver of any and all prepetition claims

15   against the Debtors based on the assignment agreement."  So

16   it appears to me clear that while there may be some right

17   that Shaw Industries has against Transform in return for a

18   modified agreement with Transform, as far as the Debtors are

19   concerned, Shaw has no cure claim.  So the agreement has

20   been assigned.  The parties are free to modify it.  The new

21   parties to the agreement, namely, Shaw and Transform.  But

22   as far as the Debtors are concerned, there is no claim

23   against them.  I mean, once Transform designates a contract

24   to be assumed and assigned for it, I don't see any

25   provision, and none has been sent to me, that it can then

1    change its mind, unless it does so within the deadline,

2    which has long past at this point.  So it appears to me

3    that, again, while there may be a right to obtain more value

4    from Transform in return for value being provided to

5    Transform in a modified agreement, as far as the Debtors are

6    concerned, there's no claim.

7          MR. DUEDALL:  This is Mark Duedall, Your Honor.

8    May I respond?

9          THE COURT:  Sure.

10          MR. DUEDALL:  Thank you, Judge.  And we agree.

11    Matters between Shaw and Transformco are not here today and

12    have never yet been before Your Honor.  It's a good customer

13    of Shaw going forward, and we are pleased to have them as

14    such.  We do not intend to get the benefit without the

15    burden, that is continued doing business with Transformco.

16    But we do not seek to have the burden imposed on us without

17    the benefit, which is why the preference claim was brought.

18          THE COURT:  Well, that's fine.  I understand the

19    preference point.  And I expect that upon entry of an order

20    granting this claim objection on the basis that the contract

21    has been assumed and assigned, that they would withdraw the

22    preference claim.

23          MR. DUEDALL:  If that is the case, Your Honor,

24    then I believe the baby has been split appropriately.

25          THE COURT:  Okay.  All right.  Mr. Buschmann, am I

Page 26

1    missing anything here?

2              MR. BUSCHMANN:  No, Your Honor.  This is Michael

3    Buschmann on behalf of the Debtors.  I think that's a fairly

4    accurate assessment in regards to the preference action.

5    We've been in discussions with the folks over here running

6    those preference actions, and they agree that this claims

7    objection and that preference action are sort of one negates

8    the other.

9              In the event that this gores forward today, I

10   think we're all aligned in that that preference action would

11   have no merit going forward.  Not to speak for them on the

12   record, but that's our understanding.

13             THE COURT:  All right.  Okay.  So I will grant the

14   Debtors' objection and overrule Shaw Industries' opposition

15   to the claim objection based on first the Court's bidding

16   procedures order from November 19th, 2018, which approved in

17   Paragraphs 28 through 32 assumption and assignment

18   procedures in connection with the ultimately to-be-approved

19   sale transaction for executory contracts on expired leases,

20   including the sending of a notice of cure costs regarding

21   potential assumption and assignment of executory contracts.

22             And Paragraph 33 of that order, which clearly

23   provided that if there were no objections to such a notice,

24   the non-debtor party to the contract would be bound by the

25   cure amount set forth in the notice.  Such a notice was sent

Page 27

1    on or around November 19th.  I'm sorry, on or around January

2    23, 2019, including to Shaw Industries, alerting it that its

3    contract or contracts might in fact be assumed and assigned,

4    noting that the buyer had flexibility within certain

5    deadlines to designate contracts for assumption of

6    assignment, and also listing the cure amount at zero dollars

7    and stating in bold uppercase print that the counterparty

8    fails to file with the bankruptcy court and serve on the

9    objection recipients a timely cure objection, the

10   counterparties shall be barred from asserting any objection.

11   With regard to the amount to cure, I need to follow up under

12   the applicable contract.

13            There was no objection by Shaw Industries.  I

14   later, about three weeks later, approved the APA

15   transaction, including the assumption and assignment

16   provisions under it in an order dated February 18th, 2019.

17   It contained many paragraphs pertaining to the assumption

18   and assignment of the signed agreements, starting at

19   Paragraph 28, as applicable here.  It dealt with cure costs

20   in Paragraph 29.  And as I noted during discussion on the

21   motion, provided that the non-debtor party to the contract

22   and Transform would have the flexibility to negotiate new

23   terms, but that any new agreement would require the waiver

24   of any and all pre-petition claims against the Debtors other

25   than, of course, any actual cure costs that have not been

Page 28

1    waived or that had been set by the notice.

2            Paragraph 30 memorialized the bar of cure claims

3    beyond the notice amount.  And Paragraph 32 did it again

4    just in case no one was comfortable with Paragraph 30.  As

5    did Paragraph 34, which often happens, I guess, in these

6    types of orders that take paragraphs from different models.

7            The APA order and the underlying agreement gave

8    Transform an additional period to designate more contracts

9    to be assumed and assigned.  It did so.  And, consistent

10   with the bidding procedures order and the provisions of it

11   dealing with the assumption and assignment of contracts,

12   another notice was sent out and an order was entered dated

13   March 26th, 2019, which had the same type of language in it

14   that I've already referred to other than noting the original

15   cure notice and the fact that the non-debtor parties was

16   bound by it.  And Paragraphs -- including Paragraph 13 and

17   17 of the order again barred assertion of additional cure

18   claims against the Debtor.

19           So as far as the claim against the Debtor is

20   concerned, those claims are obviously, to the extent we're

21   above zero dollar, i.e. the whole claim should be disallowed

22   under those prior orders.  That's without prejudice to Shaw

23   Industries' rights against Transform.  And further, as the

24   record reflects, by recognizing the assumption and

25   assignment of the contract, which means that the contract

```
 1    debt is paid in full and would have to be paid in full,
 2    there would be no preference claim.  The fact of a
 3    preference claim wasn't identified.  There was no preference
 4    complaint filed when the cure notice went out.  And under
 5    those circumstances, I believe it would be unfair to hold
 6    Shaw Industries to a wavier of any claim it would have under
 7    Section 502(b) if it paid a preference, which of course
 8    would be a cure claim that would have to be paid as a
 9    condition of assumption.  And the record reflects that
10    resolution.
11            So I'll look for the order granting the objection.
12    I forget whether I've already entered an order with regard
13    to the other claims covered by the first omnibus claim
14    objection.  If I have it, obviously, it will include all of
15    those claims.
16            You don't have to formally settle that order on
17    counsel for Transform, but you should -- I'm sorry, counsel
18    for Shaw Industries, but you should email a copy to Mr.
19    Duedall so he can make sure it's consistent with my ruling
20    before you send it to chambers.
21            MR. BUSCHMANN:  Yes, Your Honor.  Michael
22    Buschmann.  We will do so.
23            THE COURT:  Okay.  So, Mr. Buschmann, I have to
24    ask, are you related to Howard Buschmann?
25            MR. BUSCHMANN:  Not that I'm aware of, but it's
```

Page 30

 1    not a very common last name, so maybe.

 2            THE COURT:  All right.  He was the first

 3    bankruptcy judge I appeard in front of, so I was curious.

 4            All right, so I'll look for that order.

 5            MR. BUSCHMANN:  Thank you, Your Honor.

 6            MR. FAIL:  Thank you, Your Honor.  Garrett Fail

 7    from Weil Gotshal.  The next two items are just moving

 8    forward as a status conference.  And our colleague, Bryan

 9    Podzius, will present the status update for you.

10            MR. DUEDALL:  Your Honor, this is Mark Duedall.

11    May I be excused?

12            THE COURT:  Yes, certainly.

13            MR. DUEDALL:  Thank you very much, Judge.

14            MR. PODZIUS:  Good morning, Your Honor.  It's

15    Bryan Podzius, Weil Gotshal & Manges for the Debtors.  Can

16    Your Honor hear me okay?

17            THE COURT:  Yes, I can hear you fine, thanks.

18            MR. PODZIUS:  Great.  Items 10 and 11 on the

19    agenda, Your Honor, are the Debtors' 10th and 11th omnibus

20    objections.  In these objections, the Debtors have asserted

21    that various proofs of claim should be reclassified on the

22    basis that the goods provided by these claimants were

23    received outside the 503(b)(9) period.  These are what the

24    Debtors have referred to as the world imports objection.

25    So, with Your Honor's permission, I would like to give the

Page 31

1    Court just a brief update on where we are with the few

2    remaining world imports claims.

3              THE COURT:  Okay.

4              MR. PODZIUS:  Your Honor may remember back in

5    July, you had asked the Debtors to report back to the Court

6    on our progress to determine whether it was appropriate for

7    a substantive hearing to be held on the world imports issue.

8              I am pleased to report that the Debtors have made

9    substantial progress since that hearing.  At the time of

10   that July hearing, eight out of the original hundred world

11   imports claims remained outstanding.  Through consensual

12   global settlements involving both preference claims and

13   claim exposure, including a settlement with the largest

14   world imports claimant with an asserted value of over $10

15   million, the Debtors are down to just five outstanding

16   claims.  And of those five, we really think there are just

17   two that are left.  And I can walk the Court through those

18   in a moment.

19             Subject to final documentation for certain pending

20   settlements, the Debtors have now resolved 98 percent of the

21   total claim amount at issue in those world imports

22   objections.  And while a hearing on the world imports issue

23   may be interesting to some, the estate has very limited

24   resources and must be careful before embarking on endless

25   and wasteful litigation in this Court that could surely lead

Page 32

1    to subsequent litigation in the appellate courts.

2            Given the substantial progress, the Debtors, with

3    the support of the pre-effective date committee, which

4    includes the administrative claims representative and a

5    representative of the UCC, the Debtors believe substantial

6    progress has been made and the remaining world imports claim

7    should be adjourned without date, subject to periodic

8    updates to the Court.

9            And I'd like to just briefly walk through the

10   Court the five remaining claims.  And like I said, we really

11   think there are just two left, Your Honor.  And of the five

12   remaining claims, Your Honor, two of those claims are

13   creditors who have opted out of the administrative claims

14   consent program and are not entitled to a distribution or

15   reconciliation until the opt-in claims and the non opt-out

16   claims have been paid in full, subject to their applicable

17   caps in the confirmation order.

18           I would note, Your Honor, of these two opt-out

19   claims, the Debtors have reached commercial terms subject to

20   final documentation with one of those two claimants.  And

21   that is the Winners claim, Your Honor.  The remaining opt-

22   out claim is approximately $258,000 of world imports

23   exposure.

24           Those were the first two of the five, Your Honor.

25   The next three claims are non-opt-out claims.  We believe we

Page 33

1    have an agreement of commercial terms subject to

2    documentation with one of those three.  And the second of

3    those three non-opt-out claims is a claimant that has

4    defaulted in a preference action against it.  Accordingly,

5    the Debtors expect to resolve that world imports claim to a

6    motion for default judgement in disallowance of the claim.

7           The final non-opt-out claim, Your Honor, is the

8    claim of HK Sino-Thai trading.  This is Mr. Wander's client,

9    who I understand would like -- is requesting a hearing on

10   its client's world imports claim in the amount of $260,000.

11          I would note, Your Honor, for HK Sino-Thai

12   trading, a preference action has been filed against this

13   claimant.  It's Case Number 20-06519.  The Debtors have

14   asserted transfers in the amount of $1.4 million and may be

15   avoidable.  This is almost five times the amount of the

16   $260,000 that is disputed in the world imports objection.

17          Further, HK Sino (sound drops) and the Debtors

18   believe there may be limited, if any assets in the United

19   States.  We would agree with comments that Your Honor made

20   back in July that claimants who are subject to a preference

21   should resolve their claim exposure with their preference.

22          Indeed, with respect to HK Sino, it makes even

23   more sense, Your Honor, to resolve the claim with a

24   preference where the asserted preference value is almost

25   five times the amount of the world imports exposure.

Page 34

```
 1              Even more, regardless of any outcome on the world

 2    imports dispute, the Debtors would exercise all of their

 3    rights under Section 502(d) of the Bankruptcy Code to

 4    withhold payment while the preference action is pending,

 5    especially in this instance where there may be limited, if

 6    any, U.S. assets to realize on that preference.

 7              Given those facts, the Debtors have made a

 8    determination in their business judgement with the support

 9    of the pre-effective date committee to adjourn their own

10    objection and resolve these claims at the appropriate time

11    for the Court's instruction.

12              Your Honor, to summarize, the Debtors have made

13    substantial progress, taking into account the commercial

14    agreements reached.  We believe we are at 98 of the 100

15    world imports claimants resolved, and we think those

16    remaining objections should be adjourned without at date.

17              And with that, Your Honor, that concludes my

18    status conference on the world imports claims.  I'm happy to

19    answer any questions Your Honor may have.

20              THE COURT:  Well, let me ask you.  In respect of

21    the unresolved claims where you've stated that there is

22    agreement as to commercial terms, how have those agreements

23    -- I think there are two of them, two out of five -- how

24    have they so thus far been memorialized?

25              MR. PODZIUS:  So those two claims, Your Honor, one
```

1    of them we believe was -- assuming the documentation is

2    completed, it's below the relevant threshold in our claims

3    settlement procedures order and would be resolved without

4    further notice given it's a relatively small amount.  The

5    other one, Your Honor, is much larger and is subject to a

6    pending appeal.  So we would likely, you know, following

7    discussions with the other side, document that through a

8    stipulation on presentment.

9            THE COURT:  So what would the effect -- I'm really

10   focusing on the following.  I have encouraged the parties to

11   resolve their objections by agreement.  Two of the five

12   remaining so-called world imports claim issues appear to be

13   resolved in principle, but I am concerned that my scheduling

14   a hearing say on a summary judgement type of basis on the

15   world imports issue might cause either party to those

16   agreements to put their pens down in documenting matters if

17   commercial terms have been agreed.  And I'm just trying to

18   figure out how locked in those agreements are.

19           MR. PODZIUS:  So, Your Honor, with respect to the

20   smaller settlement, we've circulated a settlement agreement

21   to the other side.  And with respect to the larger

22   settlement that likely I mentioned will need court approval,

23   that agreement was reached late last night.  And we believe

24   we still have yet to circulate settlement documentation.  So

25   we do have a little ways to go, Your Honor, in terms of

1    documenting those.  And occasionally it can take a little

2    while longer with foreign claimants, but we do hope to get

3    those signed up within the next several weeks for sure.

4            THE COURT:  Okay.  All right.  Okay.  I'm happy to

5    -- if other parties -- and I think I see Mr. Wander -- want

6    to be heard on this, that's fine.

7            I can tell you my inclination would be to schedule

8    hopefully on agreed facts -- if not, on a summary judgement

9    type of basis incorporating Rule 56 into the claim objection

10   under Rule 9014 -- this issue for the omnibus in December.

11   I would do it in November, but for my concern that I don't

12   want to cause parties to rethink or renegotiate what they've

13   agreed to in principle as far as the settlement.  And it

14   would seem to me that you might need time between now and

15   when we are here next in November to document both

16   settlements.

17           MR. PODZIUS:  Understood, Your Honor.  And I would

18   just note there is a third claim out there that will be

19   subject to a motion for default judgement.

20           THE COURT:  Right.  And that will --

21           MR. PODZIUS:  And  we would hope to resolve that

22   in the same timeline.

23           THE COURT:  And that would probably be heard in

24   November as well.

25           MR. PODZIUS:  Understood.

1          THE COURT:  So with that, I'm happy to hear from

2    Mr. Wander or anyone else.

3          MR. WANDER:  Thank you, Your Honor.  This is David

4    Wander of Davidoff Hutcher & Citron, counsel for Orient

5    Craft and HK Sino.

6          Your Honor, I have a lot to say.  But if Your

7    Honor is going to schedule the world imports matter for the

8    December omnibus, I will not -- I'll not put all the other

9    matters, comments that I was going to make.  And I'm fine

10   with that, Your Honor.  That would be great.

11         THE COURT:  Okay.

12         MR. WANDER:  I think that if Your Honor does set a

13   firm date, I think that would increase the likelihood of a

14   settlement.  And as long as there is no firm date, I think

15   there won't be a settlement.  And if we can settle, then now

16   that more than a year has gone by, I think it's appropriate

17   that we get a ruling from the Court.

18         THE COURT:  Okay.

19         MR. WANDER:  So December would be fine.

20         THE COURT:  All right.  It seems to me at this

21   point based on what I've just heard, the interests of the

22   estate as a whole are pretty evenly balanced as far as the

23   cost of going forward with the interests of the remaining

24   claimants.  Before then, I think there was a legitimate

25   reason to give the Debtors time to try to resolve as many of

1    these claims as they could given that they were in fact

2    resolving them and have continued to.  But at this point

3    based on the size of the remaining claims, the cost of the

4    litigation -- which, again, it would appear to me to be done

5    either on agreed facts or under Rule 7056 -- the claimants'

6    interests and the estates interests are pretty evenly

7    balanced.  Both sides have basically the same interest in

8    avoiding expensive litigation -- or not expensive -- in

9    avoiding litigation, avoiding the cost of litigation or risk

10   of litigation.  And we should go ahead with it in December.

11   That would give the Debtors time to conclude the agreements

12   of principle and the parties time to give me a factual

13   record.

14            I don't want to have the December hearing be an

15   evidentiary hearing.  I don't think you need one.  I think

16   you have the dates and the underlying documents as far as

17   shipping orders and the like.  So I would incorporate for

18   purposes of the December omnibus hearing on these what would

19   appear to be two remaining claims, unless for some reason I

20   don't grant the default on the preference claim, be

21   conducted as a summary judgment type of matter,

22   incorporating Rule 7056 through 9014 to the contested

23   claims.

24            I don't know if the other claimant's counsel is on

25   the phone.  Which claim would that be?

```
 1              MR. PODZIUS:  Your Honor, it's Bryan Podzius, Weil

 2     Gotshal.  I think -- Mr. Wander can correct me, but I

 3     believe he represents both the remaining non-opt-out and the

 4     remaining opt-out claimants.

 5              THE COURT:  Is that right, Mr. Wander?  You

 6     represent, besides HK Sino, the other one too?

 7              MR. WANDER:  Yes, Your Honor.  Orient Craft.  And

 8     if I may make one comment, Your Honor, with regard to what

 9     Your Honor said about Rule 56 and summary judgment.  I think

10     there are threshold legal issues that were supposed to be

11     determined, what we call the world imports issue.  And I

12     think there were unresolved discovery disputes that we

13     weren't even going to deal with until we got past the simple

14     legal issue.  So I don't know that --

15              THE COURT:  Well, I don't know about that.  I

16     mean, I need -- I mean, the world imports issue only comes

17     into play if the facts are X.  And I thought those facts had

18     been agreed as to what the -- you know -- let me be clear.

19     Maybe you're saying the same thing, Mr. Wander.  When I'm

20     talking about the determination of the world imports issue,

21     I'm not talking about other issues that may pertain to these

22     claims, such as the dollar amount or whether there was some

23     portion subsequently repaid, or whether some of the goods

24     were defective.  I'm just focusing on the facts pertaining

25     to delivery, FOB, those terms that tie right into world
```

Page 40

1    imports.

2          MR. WANDER:  Yes, that's fine, Your Honor.

3          THE COURT:  Okay, so --

4          MR. WANDER:  On that I agree.  There were other

5    defenses.  But for purposes of the world imports issue, I

6    agree with Your Honor.  I don't think the facts are in

7    dispute.

8          THE COURT:  All right.  So I would ask you and

9    whoever is going to be handling this from the Debtor side to

10   meet and confer to make sure that there are no disputed

11   issues pertaining to the world -- no disputed fact issues

12   pertaining to the world imports issue and tee it up for me

13   either with agreed facts, or if you can't agree, Rule 7056

14   statements pointing to the record so I can see whether there

15   is a material fact in dispute as to the world imports issue.

16   And it's only that issue that I would hear at the December

17   omnibus date, not other defenses.

18         MR. WANDER:  Yes, Your Honor.  This is David

19   Wander.  And I'll do that with Debtors' counsel before the

20   next omnibus hearing.  So if there are any issues, we could

21   address it then.

22         THE COURT:  Okay.  And again, I urge you and your

23   clients and the Debtors to see whether you really need to do

24   this in light of the other defenses, potential preference

25   exposure, et cetera.  But I think at this point it would be

Page 41

1    helpful for the overall process to schedule that hearing.

2    So it will be on for the December omnibus date.

3              MR. WANDER:  Thank, you, Your Honor.

4              THE COURT:  Okay, very well.

5              MR. PODZIUS:  Thank you, Your Honor.  It's Bryan

6    Podzius, Weil Gotshal.  That concludes the agenda I believe

7    for today, Your Honor.

8              THE COURT:  I think that's right.  Does anyone

9    disagree?  Is anyone else on that thinks there is another

10   matter on the calendar?

11             Okay, I'll ring off then.  Thank you very much.

12             (Whereupon these proceedings were concluded at

13   11:00 AM)

14

15

16

17

18

19

20

21

22

23

24

25

Page 42

1                          I N D E X

2

3                          RULINGS

4                                              Page      Line

5    Fee applications granted                  16        18

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 43

1                    C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6   *[signature]*

7

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  October 19, 2020