# EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SEARS HOLDING CORPORATION, *et al.*, | : | Case No. 18-23538 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | |
| | : | **HEARING DATE: November 18, 2020 at 10 am** |
| | : | |
| | : | |

### DECLARATION OF SHARON J. ZINNS, ESQ.

1.      My name is Sharon J. Zinns, and I am counsel of record for Armande Mock, individually and as personal representative of the Estate of Roy Mock, in a wrongful death and survival action filed in the State Court of Chatham County relating to Mr. Mock's death from malignant pleural mesothelioma.

2.      This Declaration is given in support of Mock's Motion to Deem Proof of Claim Timely Filed.

3.      The following statements are within my personal knowledge and made under penalty of perjury.

4.      Attached hereto as Exhibit 1 is a true and correct copy of the pathology report diagnosing Roy Mock with malignant pleural mesothelioma.

5.      Attached hereto as Exhibit 2 is a true and correct copy of the *pre-petition* Complaint filed in the State Court of Chatham County.

6.      Attached hereto as Exhibit 3 is a true and correct copy of the Death Certificate of Roy Mock, reflecting his death from mesothelioma.

7.      Attached hereto as Exhibit 4 is a true and correct copy of the Amended Complaint for Wrongful Death filed in the State Court of Chatham County.

8.      During the course of the lawsuit, several other law firms have or currently are co-counsel for the Mocks, including Levy Konigsberg, LLP, Beasley Allen Crow Methvin Portis & Miles, and Oliver Maner, LLP.

9.      I worked at both Levy Konigsberg, LLP and Beasley Allen Crow Methvin Portis & Miles as counsel for the Mocks. However, I was not counsel for the Mocks at the time of the Sears Bankruptcy. *See* Certificate of Service for Notice of Bankruptcy, attached hereto as Exhibit 5.

10.     Despite being an actual and known creditor, no notice of the bar date was provided to me at my current firm or prior firms, to any other co-counsel, or to the Mock family.

11.     After renewal of my work as counsel for the Mock family, I began investigating the bankruptcy of Sears, previously a defendant in the lawsuit. Within days of learning the bar date had passed, I began reaching out to prior counsel for Sears, Vonetta Benjamin at Womble Bond Dickinson (US) LLP, to Debtors Counsel as listed on the docket Ray Schrock, and to the Creditor's Committee Counsel as listed on the docket Ira Dizengoff.

12.     I left two voicemails for Mr. Schrock but neither call was returned. To date, I have not received a return call from Debtor's counsel.

13.     My call was returned from creditor's committee counsel and, after speaking with them, I obtained a date for this motion from the Court.

14.     The only record of service of the notice of bar date on the Mocks is at Docket No. 2752, which claims service at 133 Montgomery St., 501, Savannah, GA. 31401. This is not nor

has it ever been the address for the Mocks or any of their counsel. In fact, this is the address for the Chatham County State Court.

15.     The Mock name, nor the name of any personal injury counsel for the Mocks, appear on any other Affidavit of Service in this case.

This 29th day of October, 2020,

_____
Sharon J. Zinns

# Exhibit 1



**MAYO CLINIC**
**Mayo Medical Laboratories**

1-800-533-1710
# PATHC
Pathology Consultation

| Patient ID | Patient Name | | Birth Date | Gender | Age |
|---|---|---|---|---|---|
| M000449060 | MOCK, ROY E | | 1943-01-22 | M | 74 |
| Order Number | Client Order Number | Ordering Physician | Report Notes | | |
| SA00365049 | S17-2782 | HEJKA, ANTHONY | | | |
| Account Information | | Collected | | | |
| C7012680   Candler Hospital | | 05 Sep 2017 13:38 | | | |

---

## Pathology Consult

Case Number CR-17-51656

**Interpretation**                                                                                    MCR

**FINAL DIAGNOSIS**

Pleura, left, biopsy (S17–2782, 9/5/2017): Malignant mesothelioma, biphasic type (see Comment).

**COMMENT**

This 74-year-old gentleman presented with pleural effusion and was found to have pleural based lesions on the left anterior chest wall. I had the pleasure to review this case because of my special interest in pulmonary pathology and also shared it with my colleague, Dr. Joanne E. Yi, who shares my interest and we completely agree with your assessment.

The submitted slides from the left pleura reveal a biphasic neoplasm. This neoplasm is predominantly comprised of atypical spindle cells. However, there are also foci of more round to oval cells with open chromatin, prominent nucleoli, and ample cytoplasm. The atypical cells are growing in a fibrotic background and a tumefactive growth pattern. Overall, in my opinion, this a malignant neoplasm and I considered a biphasic malignant mesothelioma, a sarcomatoid carcinoma, metastatic melanoma, and sarcoma. Submitted immunostains show that the neoplastic cells at least focally are positive for MCK, CK7, CK5, calretinin, p63, vimentin, and WT1, and are negative for TTF-1, MOC31, BerEp4, B72.3, S-100, CK20, and CD15. Desmin and SMA stain the sarcomatoid component. These morphological and immunophenotypical features are suggestive of a biphasic malignant mesothelioma. Given the strong expression of desmin and SMA in the sarcomatoid component, heterologous leiomyosarcoma-elements might also be a possibility.

Thank you for sharing this case with me. Your submitted material is enclosed. If you have any questions, please do not hesitate to reach me at 507–284–1798. I would appreciate any further follow-up information that you may received on this case.

---

| Participated in the Interpretation                      MCR | Report electronically signed by                      MCR |
|---|---|
| Raghavendra Pillappa, M.B.B.S.-Pathology Fellow | Anja C. Roden, M.D. |
| | 8–2179 |
| | |
| | I verify that I have examined all relevant slides/materials for the specimen(s) and rendered or confirmed the diagnosis. |
| | |
| | Seen in consultation with: |
| | Joanne E. Yi, M.D. 8–9973 |

---

**Material Received**                                                                                    MCR

A. S17–2782: Left pleura
18 stained slides, 1 block

**Received:** 16 Sep 2017 06:17                                    **Reported:** 18 Sep 2017 16:55

---

**Performing Site Legend**

| Code | Laboratory | Address |
|---|---|---|
| MCR | Mayo Clinic Laboratories - Rochester Main Campus | 200 First Street SW, Rochester, MN 55905 |

Printed 19 Sep 2017

**Report Status: Final**
Received and reported dates and times are reported in US Central Time.

CR-17-51656 Page 1 of 1

# **Exhibit 2**

## General Civil Case Filing Information Form (Non-Domestic)

**Court**
☐ Superior
☑ State

**County** CHATHAM

**Docket #** STCV

**Date Filed** 11/10/2017
MM-DD-YYYY

**Plaintiff(s)**

Mock, Roy
Last    First    Middle I.    Suffix Prefix    Maiden

Mock, Armande
Last    First    Middle I.    Suffix Prefix    Maiden

Last    First    Middle I.    Suffix Prefix    Maiden

Last    First    Middle I.    Suffix Prefix    Maiden

**No. of Plaintiffs** 2

**Defendant(s)**

American Biltrite Inc., et al
Last    First    Middle I.    Suffix Prefix    Maiden

Last    First    Middle I.    Suffix Prefix    Maiden

Last    First    Middle I.    Suffix Prefix    Maiden

Last    First    Middle I.    Suffix Prefix    Maiden

**No. of Defendants** 13

**Plaintiff/Petitioner's Attorney**    ☐ Pro Se

Zinns, Sharon J.
Last    First    Middle I.    Suffix

**Bar #** 552920

### Check Primary Type (Check only ONE)

☐ Contract/Account

☐ Wills/Estate

☐ Real Property

☐ Dispossessory/Distress

☐ Personal Property

☐ Equity

☐ Habeas Corpus

☐ Appeals, Reviews

☐ Post Judgment Garnishment, Attachment, or Other Relief

☐ Non-Domestic Contempt

☑ Tort (If tort, fill in right column)

☐ Other General Civil Specify_____

### If Tort is Case Type:
### (Check no more than TWO)

☐ Auto Accident

☐ Premises Liability

☐ Medical Malpractice

☐ Other Professional Negligence

☑ Product Liability

☑ Other Specify Asbestos

**Are Punitive Damages Pleaded?** ☐ Yes ☐ No

☑ I hereby certify that the documents in this filing (including attachments and exhibits) satisfy the requirements for redaction of personal or confidential information in O.C.G.A. 9-11-7.1

IN THE STATE COURT OF CHATHAM COUNTY
STATE OF GEORGIA

RECEIVED FOR FILING
STATE COURT CLERK
CHATHAM CO.GA.

2017 NOV 13  AM 11: 58

Brian K. Hart

| | |
|---|---|
| ROY MOCK and ARMANDE MOCK | ) |
| | ) |
|     PLAINTIFFS, | ) |
| | ) |
| vs. | ) |
| | ) |
| AMERICAN BILTRITE INC.; | ) |
| | ) |
| DOMCO PRODUCTS TEXAS INC.; | ) |
| | ) CIVIL ACTION FILE NO.: |
| H.B. FULLER COMPANY; | ) STCVI701890 |
| | ) |
| IVC US, INC.; | ) |
| | ) |
| MANNINGTON MILLS INC.; | ) |
| | ) |
| MOHAWK INDUSTRIES INC.; | ) |
| | ) |
| ROPPE FLEXCO ACQUISITION | ) **PLAINTIFFS' COMPLAINT** |
| CORPORATION; | ) **FOR DAMAGES** |
| | ) |
| SEARS, ROEBUCK & CO.; | ) |
| | ) |
| SHAW INDUSTRIES GROUP, INC.; | ) |
| | ) |
| TARKETT ALABAMA INC.; | ) |
| | ) |
| TARKETT USA INC.; | ) |
| | ) |
| THE GOODYEAR TIRE & RUBBER | ) |
| COMPANY; | ) |
| | ) |
| UNION CARBIDE CORPORATION; | ) |
| | ) |
| and | ) |
| | ) |
| JOHN DOES NO. 1-10, | ) |
| | ) |
|     DEFENDANTS. | ) |

## COMPLAINT

COME NOW, ROY MOCK and ARMANDE MOCK by and through counsel of record, and hereby state their Complaint for Damages as follows:

## INTRODUCTION

1.      This action arises from injuries sustained by ROY MOCK as a direct and proximate result of his exposure to asbestos-containing products that were designed, produced, manufactured, distributed and/or sold by named Defendants and/or their predecessors in interest as named in this action. As the direct and proximate result of ROY MOCK's exposure to the Defendants' asbestos-containing products, he contracted and was diagnosed as suffering from malignant mesothelioma. Mesothelioma is a rapidly debilitating and fatal form of cancer caused by asbestos exposure.

2.      The State Court of Chatham County has original jurisdiction over this matter, and this action is not subject to federal jurisdiction or removal to federal court under the provisions of 28 U.S.C. § 1332 because the claims asserted in this action relate to a tort committed in Chatham County, State of Georgia, and one or more of the parties in interest properly joined and served as a defendant in this action is a citizen of the state in which the action has been brought. *See*, 28 U.S.C. § 1441(b).

## PARTIES

3.      Plaintiff ROY MOCK is a resident and citizen of the State of Georgia.

4.      Plaintiff ARMANDE MOCK is a resident and citizen of the State of Georgia.

5.      Defendants in this action include both domestic and foreign corporations that have registered to do business in the State of Georgia with the Georgia Secretary of State, or alternatively, are entities that have affirmatively placed asbestos-containing products into the

stream of commerce with the reasonable expectation and knowledge that such asbestos-containing products would be bought, sold, distributed and put to use within the state of Georgia, as well as other states, within the United States of America.

6.    None of Defendants' actions complained of herein were committed under the direction or control of the United States government or any officer or agency thereof, and Plaintiffs hereby disclaim any cause of action or recovery for any injuries resulting from exposure to asbestos dust caused by any act(s) or omission(s) of a party Defendant committed at the direction of an officer of the United States Government. Plaintiffs also hereby disclaim any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave.

7.    Defendant AMERICAN BILTRITE INC. is a Delaware corporation that has duly registered with the Georgia Secretary of State. AMERICAN BILTRITE INC. maintains its principle place of business at, 57 River Street, Suite 302, Wellesley Hills, MA, 02481.

8.    Defendant AMERICAN BILTRITE INC. may be served with Summons and Complaint at, Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, GA, 30092.

9.    Defendant AMERICAN BILTRITE INC. is subject to the jurisdiction and venue of this Court.

10.    Defendant DOMCO PRODUCTS TEXAS INC. is a Delaware corporation that has failed to duly register with the Georgia Secretary of State. DOMCO PRODUCTS TEXAS INC. maintains its principle place of business at 30000 Aurora Rd., Solon, OH 44139.

11.    Defendant DOMCO PRODUCTS TEXAS INC. may be served with Summons and Complaint at, The Corporation Trust Company, Corporation Trust Center 1209 Orange St., Wilmington, DE 19801.

12.    Defendant DOMCO PRODUCTS TEXAS INC. is subject to the jurisdiction and venue of this Court.

13.    Defendant H.B. FULLER COMPANY is a Minnesota corporation that has duly registered with the Georgia Secretary of State. H.B. FULLER COMPANY maintains its principle place of business at, 1200 Willow Lake Boulevard, St. Paul, MN, 55110.

14.    Defendant H.B. FULLER COMPANY may be served with Summons and Complaint at, CT Corporation System, 289 S. Culver St., Lawrenceville, GA 30046.

15.    Defendant H.B. FULLER COMPANY is subject to the jurisdiction and venue of this Court.

16.    Defendant IVC US, INC. is a Georgia corporation that has duly registered with the Georgia Secretary of State. IVC US, INC. maintains its principle place of business at, 160 S. Industrial Blvd., Calhoun, GA, 30701.

17.    Defendant IVC US, INC. may be served with Summons and Complaint at, Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, GA, 30092.

18.    Defendant IVC US, INC. is subject to the jurisdiction and venue of this Court.

19.    Defendant MANNINGTON MILLS INC. is a New Jersey corporation that has duly registered with the Georgia Secretary of State. MANNINGTON MILLS INC. maintains its principle place of business at, P.O. Box 30, Salem, NJ 08079.

20.    Defendant MANNINGTON MILLS INC. may be served with Summons and Complaint at, Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, GA 30092.

21.    Defendant MANNINGTON MILLS INC. is subject to the jurisdiction and venue of this Court.

22.    Defendant MOHAWK INDUSTRIES INC. is a Delaware corporation that has duly registered with the Georgia Secretary of State. MOHAWK INDUSTRIES INC. maintains its principle place of business at, P.O. Box 12069, Calhoun, GA 30703.

23.    Defendant MOHAWK INDUSTRIES INC. may be served with Summons and Complaint at, Corporation Service Company, 40 Technology Pkwy South, Suite 300, Norcross, GA 30092.

24.    Defendant MOHAWK INDUSTRIES INC. is subject to the jurisdiction and venue of this Court.

25.    Defendant ROPPE FLEXCO ACQUISITION CORPORATION is a Delaware corporation that has failed to duly register with the Georgia Secretary of State. ROPPE FLEXCO ACQUISITION CORPORATION maintains its principle place of business at, 1602 N. Union St., Fostoria, OH 44830.

26.    Defendant ROPPE FLEXCO ACQUISITION CORPORATION may be served with Summons and Complaint at, CT Corporation System, 2 North Jackson St., Suite 605, Montgomery, AL 36104.

27.    Defendant ROPPE FLEXCO ACQUISITION CORPORATION is subject to the jurisdiction and venue of this Court.

28.    Defendant SEARS, ROEBUCK & CO. is a New York corporation that has duly registered with the Georgia Secretary of State. SEARS, ROEBUCK & CO. maintains its principle place of business at, 3333 Beverly Road, Hoffman Estates, IL, 60179.

29.    Defendant SEARS, ROEBUCK & CO. may be served with Summons and Complaint at, CT Corporation System, 289 S. Culver St, Lawrenceville, GA 30046.

30.    Defendant SEARS, ROEBUCK & CO. is subject to the jurisdiction and venue of this Court.

31.     Defendant SHAW INDUSTRIES GROUP, INC. is a Georgia corporation that has duly registered with the Georgia Secretary of State. SHAW INDUSTRIES GROUP, INC. maintains its principle place of business at, 616 E Walnut Avenue, P.O. Drawer 2128, MD 061-04, Dalton, GA, 30722.

32.     Defendant SHAW INDUSTRIES GROUP, INC. may be served with Summons and Complaint at, Frederick L. Hooper III, 616 East Walnut Avenue, Dalton, GA 30721.

33.     Defendant SHAW INDUSTRIES GROUP, INC. is subject to the jurisdiction and venue of this Court.

34.     Defendant TARKETT ALABAMA INC. is an Alabama corporation that has failed to duly registered with the Georgia Secretary of State. TARKETT ALABAMA INC. maintains its principle place of business at, 430 Co. Rd. 30, Florence, AL 35634.

35.     Defendant TARKETT ALABAMA INC. may be served with Summons and Complaint at, CT Corporation System, 2 North Jackson St., Suite 605, Montgomery, AL 36104.

36.     Defendant TARKETT ALABAMA INC. is subject to the jurisdiction and venue of this Court.

37.     Defendant TARKETT USA INC. is a Delaware corporation that has failed to registered with the Georgia Secretary of State. TARKETT USA INC. maintains its principle place of business at, 30000 AURORA ROAD, SOLON, OH 44139.

38.     Defendant TARKETT USA INC. may be served with Summons and Complaint at, CT Corporation System, 2 North Jackson St., Suite 605, Montgomery, AL 36104.

39.     Defendant TARKETT USA INC. is subject to the jurisdiction and venue of this Court.

40.     Defendant THE GOODYEAR TIRE & RUBBER COMPANY is an Ohio corporation that has duly registered with the Georgia Secretary of State. THE GOODYEAR TIRE &

RUBBER COMPANY maintains its principle place of business at, 200 Innovation Way, Akron, OH, 44316.

41.    Defendant THE GOODYEAR TIRE & RUBBER COMPANY may be served with Summons and Complaint at, Corporation Service Company, 40 Technology Pkwy. South, Suite 300, Norcross, GA 30092.

42.    Defendant THE GOODYEAR TIRE & RUBBER COMPANY is subject to the jurisdiction and venue of this Court.

43.    Defendant UNION CARBIDE CORPORATION is a New York corporation that has duly registered with the Georgia Secretary of State. UNION CARBIDE CORPORATION maintains its principle place of business at, 7501 State Hwy. 185, Seadrift, TN, 77983.

44.    Defendant UNION CARBIDE CORPORATION may be served with Summons and Complaint at, CT Corporation System, 289 S Culver St., Lawrenceville, GA 30046.

45.    Defendant UNION CARBIDE CORPORATION is subject to the jurisdiction and venue of this Court.

46.    Defendants JOHN DOE No. 1 through 10 are believed to be Georgia or foreign corporations, partnerships, associations or other legal entities that have transacted business in the State of Georgia and are responsible for the injuries and damages incurred by Plaintiffs. Once the identity and the whereabouts of the John Doe Defendants are established, said Defendant(s) will be served with a copy of summons and complaint as provided by law. Defendants JOHN DOE No. 1 through 10 are subject to the jurisdiction and venue of this court.

47.    Each Defendant corporation or its predecessor-in-interest was, at all times material hereto, engaged in the design, manufacture, distribution and sale of asbestos-containing products,

or alternatively, the mining and processing of asbestos as a component part of asbestos containing products at issue in this action.

48.    Venue of this action is established as being in Chatham County, State of Georgia, under the Constitution and laws of the State of Georgia and pursuant to the provisions of O.C.G.A. § 51-14-1 et seq.

49.    Pursuant to the provisions of O.C.G.A. § 51-14-1 *et seq.*, Plaintiffs include certain information provided for under said statute as set forth on Attachment "A" to their Complaint which is incorporated by reference as if fully set forth herein. Plaintiffs expressly reserve the right to challenge the entirety of the provisions of O.C.G.A. § 51-14-1 *et seq.*, to the extent applicable to this action, and by including any information in this Complaint otherwise provided for or suggested by O.C.G.A. § 51-14-1 *et seq.*, do not waive any such challenge in regard to the constitutionality or application of such statutory provisions to this action. Without consenting to same, Plaintiffs assert that they have met the filing requirements of O.C.G.A. § 51-14-1 *et seq.*, as otherwise provided under said Code sections.

## FIRST CAUSE OF ACTION

### (Negligence)

50.    Plaintiffs repeat, reiterates and re-allege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

51.    Plaintiff ROY MOCK was exposed to asbestos-related materials and other asbestos-containing products mined, manufactured, processed, imported, converted, compounded, sold, distributed, maintained, installed, disturbed and/or manipulated by the defendants, or their products, in a way to create asbestos-containing dust that was breathed by Plaintiff. Plaintiff inhaled and absorbed asbestos fibers emanating from various asbestos-containing products as a

direct and proximate result of the acts and omissions of each defendant. As a direct and proximate result of each defendant's acts of negligence, Plaintiff's decedent developed and was otherwise diagnosed as suffering from malignant pleural mesothelioma, which is a terminal form of cancer caused by asbestos exposure.

52.    At all times relevant hereto, each defendant knew, or should have known, that its products would be used without inspection for defects and that any such inspection would not have advised Plaintiff of the fact that the asbestos contained in, or used in conjunction with, such products could cause the terminal condition which Plaintiff developed. Such facts made each of the defendant's products inherently and unreasonably dangerous in that Plaintiff was not apprised of, and did not contemplate, the danger of contracting a deadly asbestos-related disease as a result of his use, proximity, exposure to, and inhalation of, the asbestos fibers contained in, or emanating from, each of the defendant's products.

53.    Each defendant was in the business of designing, manufacturing, selling, distributing, and/or maintaining products that contained asbestos, or alternatively through their customary and intended use resulted in the disbursement of asbestos-containing fibers into the air that Plaintiff breathed at all times relevant to this action. Each defendant knew that Plaintiff, and others similarly situated, would come in contact with asbestos contained in, or emanating from, their products and would be exposed to an unreasonable risk of harm due to the inhalation of the asbestos fibers associated with their products. Each defendant knew, or should have known, that Plaintiff, or others similarly situated, would be in danger of developing asbestos-related diseases such as asbestosis, mesothelioma, or other forms of cancer. Each defendant was negligent in one, some, or all of the following respects, and such negligence was the direct and proximate cause of Plaintiff's injuries and disabilities:

a. In failing to adequately warn Plaintiff and others similarly situated of the dangerous characteristics of their products and failing to warn Plaintiff that he could develop fatal injuries including, but not limited to, mesothelioma and other forms of cancer as a result of being exposed to asbestos dust originating or emanating from each defendant's products.

b. In failing to provide Plaintiff with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if any existed, to protect him from being harmed and disabled by asbestos dust originating or emanating from each defendant's products.

c. In failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and a safe method of handling, installing, or using asbestos materials relating to their product.

d. In continuing to manufacture, sell and distribute products that posed a danger to Plaintiff and others due to asbestos dust originating or emanating from each defendant's products when each defendant knew, or should have known, that use of their products would cause injuries or death.

e. In affirmatively misrepresenting to Plaintiff and other members of the public, in advertising, labels and otherwise, that the products that they manufactured, sold, distributed or otherwise put in use, were safe in their ordinary and foreseeable use. These material misrepresentations induced Plaintiff to unknowingly expose himself to the hazards of developing injuries from asbestos dust, which included mesothelioma and other forms of cancer.

f.  In failing to adequately test their respective products before offering them for sale and use so that Plaintiff and other persons similarly situated would not inhale the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' products and thereby expose Plaintiff and others to the development of injuries from mesothelioma or other forms of cancer.

g.  In failing to remove and recall their unreasonably dangerous products from the stream of commerce and the marketplace upon ascertaining that use of such products would result in contaminating the air that Plaintiff and others would breathe with asbestos dust originating or emanating from each defendant's products.

h.  In failing to warn or advise Plaintiff and others similarly situated, whom the Defendants either knew or should have known would be, or had been, exposed to the danger of inhalation of the asbestos dust and fibers resulting from the ordinary and foreseeable use of their products, as to the dangers associated with such products and to avoid or cease all future exposure to asbestos dust and fibers due to the increasing danger associated with each exposure.

i.  In failing to warn or advise Plaintiff and others similarly situated, whom the Defendants either knew or should have known would be, or had been, exposed to asbestos dust originating or emanating from each Defendant's products, of the danger associated with the inhalation of such dust, as well as the continuing danger to Plaintiff, and all of Plaintiff's family members, as a result of asbestos dust originating or emanating from each Defendant's products found on the work clothes and tools of those who worked with and around Defendants' products.

j.  In designing, utilizing, and including in the vehicles and machinery that it manufactured and sold a braking system that was defective and otherwise posed an unreasonable risk of danger to those who performed routine maintenance or repairs on said vehicles and machinery, or who where in the vicinity of those who performed routine maintenance or repairs on said vehicles, in that the vehicles and machinery, and the braking system as a whole, required the use of asbestos-containing friction products as replacement parts.

54.     The products that caused Plaintiff to be exposed to asbestos dust were at all times relevant to this action being used in the manner in which the defendants intended them to be used.

55.     Defendants' products failed to perform as safely as Plaintiff and others similarly situated expected they would, in that the products caused Plaintiff and others to develop injuries as a result of inhalation of the asbestos dust originating or emanating from each defendant's products.

56.     At all times relevant hereto, it was feasible for each Defendant to have:

a.  adequately warned Plaintiff of the dangers associated with their products;

b.  further tested their products to appreciate and eliminate any danger associated with their use;

c.  designed a safer product; and

d.  substituted asbestos-free products where applicable.

57.     Defendants' negligent, grossly negligent, willful, wanton and reckless conduct, as described herein, was the direct and proximate cause of the Plaintiff's illness and injuries, as a result of which Plaintiff has suffered damages in the form of medical expenses, physical

disability, mental and physical pain and suffering, extreme emotional distress, and other damages as can be proven at a trial of this action.

58.    Plaintiffs are entitled to recover damages against each defendant for their individual and collective acts of negligence in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### (Product Liability)

59.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

60.    Each defendant's asbestos-containing product was sufficiently defective to cause the defendants to be liable to Plaintiffs. Each defendant's products were defective, *inter alia*, in their design, manufacture, and lack of proper or sufficient warnings. The subject products possessed latent characteristics and latent manufacturing and design defects existing at the time they were manufactured and at the time Plaintiff was exposed to them. Each defendant either knew, or in the exercise of reasonable care should have known, that their products would cause injuries in the form of asbestosis, lung cancer, mesothelioma, or other forms of cancer, to those individuals such as Plaintiff who were exposed to dust from said products containing asbestos either directly or through exposure to asbestos-contaminated clothing or environments.

61.    At the time the defendants sold and delivered the products which resulted in Plaintiff exposure to asbestos dust, and at the time those products were used in the manner and environment intended and without substantial change affecting their condition, the products contained latent characteristics or latent manufacturing and design defects, and were defective and unreasonably dangerous and unfit for their intended use in that:

13

a. They were defectively designed to contain asbestos, or to result in the disbursement of asbestos dust, a substance which is deleterious, poisonous and highly harmful to Plaintiff and others similarly situated.

b. They contained inadequate warnings and otherwise failed to contain a warning sufficient to advise Plaintiff that the asbestos dust associated with their intended use was poisonous and extremely harmful to their health.

c. They did not contain sufficient protective appliances or equipment to reduce or eliminate Plaintiff's inhalation of the poisonous and highly harmful asbestos fibers associated with use of the products.

d. In designing, utilizing, and including in the machinery that each defendant manufactured and sold, components that was defective and otherwise posed an unreasonable risk of danger to those who performed routine maintenance or repairs on said machinery, or who where in the vicinity of those who performed routine maintenance or repairs on said machinery, in that the vehicles and machinery, and the system as a whole, as designed, manufactured and sold by Defendants required the use of asbestos-containing products as replacement parts.

62.    Defendants were engaged in the distribution and sale of these asbestos products that, without substantial change in the condition in which each defendant sold them, were the proximate cause of Plaintiff's injury.

63.    Each defendant and its predecessor in interest knew that its products would be used without inspection for defects, and by placing them on the market represented that they would safely do the job for which they were intended, which must necessarily include the safe handling, installation and replacement of those products.

64.    Plaintiff was unaware of the hazards and defects in the products of the defendants, which made those products unsafe for the purposes of using, handling, installation or removal of the products, to the degree that those products would cause Plaintiff to develop mesothelioma and other related physical conditions.

65.    At all times relevant hereto, the asbestos-containing products of each of the defendants were used in the manner intended by the defendants.

66.    Defendants' unreasonably dangerous, defective products were the direct and proximate cause of Plaintiff's injuries, and, as a result, Plaintiff suffered damages in the form of medical expenses, physical disability, mental and physical pain and suffering, extreme emotional distress, and other damages as can be identified at a trial of this action.

67.    Plaintiffs are entitled to recover damages against each defendant under a theory of product liability, which includes negligence, in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### (Loss of Consortium)

68.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

69.    Plaintiff ARMANDE MOCK is the spouse of Plaintiff ROY MOCK.

70.    As a direct and proximate result of the wrongful and tortuous acts of the defendants, Plaintiff ARMANDE MOCK has suffered the loss of affection, society, comfort, support, consortium and companionship of her husband, ROY MOCK.

71.    Defendants' wrongful conduct as alleged above was the direct and proximate cause of the damages suffered by Plaintiff ROY MOCK and has caused Plaintiff ARMANDE MOCK to

incur damages in an amount to be proven at trial equal to the loss of affection, society, comfort, support, consortium and companionship of her husband, ROY MOCK.

### FORTH CAUSE OF ACTION

#### (Punitive Damages)

72.     Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

73.     The conduct of each defendant as set forth hereinabove showed willful misconduct, malice, fraud, wantonness, oppression or that entire want of care which would raise the presumption of a conscious indifference to consequences. Accordingly, punitive damages should be imposed against each defendant pursuant O.C.G.A. § 51-12-5.1 and other applicable laws, to punish and deter each defendant from repeating or continuing such unlawful conduct.

WHEREFORE, Plaintiffs pray:

    a. That process issue according to law;

    b. That each defendant be served with a copy of Plaintiffs' Complaint and show cause why the prayers for relief requested by Plaintiffs herein should not be granted;

    c. That Plaintiffs be granted a trial by jury in this matter;

    d. That the Court enter a judgment against each defendant, jointly and severally, for all general and compensatory damages allowable to Plaintiffs;

    e. That the Court enter a judgment against each defendant, jointly and severally, for all special damages allowable to Plaintiffs;

f.  That the Court enter a judgment against each defendant serving to award Plaintiffs punitive damages under the provisions of O.C.G.A. § 51-12-5.1 and as otherwise provided by law;

g.  That the Court enter a judgment against each Defendant, jointly and severally, for all other relief sought by Plaintiffs under this Complaint;

h.  That the costs of this action be cast upon Defendants; and

i.  That the Court grant Plaintiff such further relief which the Court deems just and appropriate.

Respectfully submitted this __10th__ day of November, 2017.

Sharon J. Zinns
Georgia Bar No. 552920
LEVY KONIGSBERG, LLP
1800 Peachtree Street N.W.
Atlanta, Georgia 30309
(Ph) (404) 784-1600
(F)  (404) 745-8624
szinns@levylaw.com
*Attorney for Plaintiff*

# ATTACHMENT A

## SWORN INFORMATION FORM OF ROY MOCK

COMES NOW, Roy Mock, and to the best of his knowledge and belief, provides the following information in support of his Complaint as required under the provisions of O.C.G.A. § 51-14-7.

The information provided is known to him or made known to him by his attorneys. It is not intended to be an admission of exposure but rather seeks, within the requirements of O.C.G.A. § 51-14-7, to provide information concerning potential exposures that may be proved through discovery.

**(1) The exposed person's name, address, date of birth, social security number, and marital status:**

| | |
|---|---|
| **Name:** | Roy Mock |
| **Address:** | 201 Russ Circle, Savannah, GA 31406 |
| **Date of Birth:** | 01/22/1943 |
| **Social Security No.:** | XXX-XX-0629 |
| **Marital Status:** | Married |

**(2) If the exposed person alleges exposure to asbestos or silica through the testimony of another person or other than by direct or bystander exposure to a product or products, the name, address, date of birth, social security number, and marital status for each person by which claimant alleges exposure, hereafter the "index person," and the claimant's relationship to each such person.**

Not Applicable.

**(3) The specific location of each alleged exposure**

| Manufacturer | Product | Location |
|---|---|---|
| American Biltrite Inc. | Amtico tile and flooring | Coastal Floor Covering and Mock's Floor Covering Service (various customer locations, including but not limited to, Savannah) |
| Domco Products Texas Inc. | Azrock tile and flooring including but not limited to, | Coastal Floor Covering and Mock's Floor Covering |

1

| | Tranquility, Majestic, and Cali | Service (various customer locations, including but not limited to, Savannah) |
|---|---|---|
| H.B. Fuller Company | Chapco flooring products; Benjamin Foster flooring products | Coastal Floor Covering and Mock's Floor Covering Service (various customer locations, including but not limited to, Savannah) |
| IVC US, Inc. | Flexitec tile and flooring including but not limited to, Timeless, Astro, and Planet. | |
| Mannington Mills Inc. | Various tile and flooring including but not limited to, Commercial, Duration, Jump Start, LVS Gold, LVS Platinum, LVS Silver, Naturals, Simplicity, Royal Air, Marquis, Million Air, Vega, Aristocon, Lustrecon, Decora, Architect's Choice, Duracon, and Boca. | Coastal Floor Covering and Mock's Floor Covering Service (various customer locations, including but not limited to, Savannah) |
| Mohawk Industries Inc. | Various tile and flooring including but not limited to, Gateway, Fieldcrest, Absolute, and Hallendale. | Coastal Floor Covering and Mock's Floor Covering Service (various customer locations, including but not limited to, Savannah) |
| Roppe Flexco Acquisition Corporation | Flexco tile, flooring, and flooring products | Coastal Floor Covering and Mock's Floor Covering Service (various customer locations, including but not limited to, Savannah) |
| Sears, Roebuck & Co. | Various tile, flooring, and flooring products | Coastal Floor Covering and Mock's Floor Covering Service (various customer locations, including but not limited to, Savannah) |
| Shaw Industries Group, Inc. | Various tile and flooring including but not limited to, Costal, Heartland, Great Basin, Prometheus, Delmore, and Apollo. | |
| Tarkett Alabama Inc. | Tarkett tile, flooring, and flooring products including but not limited to, Custom Pro and Fresh Start. Nafco tile and flooring including but not | Coastal Floor Covering and Mock's Floor Covering Service (various customer locations, including but not limited to, Savannah) |

2

| | limited to, Vista, Aloft, Access, and Hand Scraped. | |
|---|---|---|
| Tarkett USA, Inc. | Tarkett tile, flooring, and flooring products including but not limited to, Custom Pro and Fresh Start. Nafco tile and flooring including but not limited to, Vista, Aloft, Access, and Hand Scraped. | Coastal Floor Covering and Mock's Floor Covering Service (various customer locations, including but not limited to, Savannah) |
| The Goodyear Tire & Rubber Company | Goodyear tile and flooring | Coastal Floor Covering and Mock's Floor Covering Service (various customer locations, including but not limited to, Savannah) |
| Union Carbide Corporation | Asbestos | Coastal Floor Covering and Mock's Floor Covering Service (various customer locations, including but not limited to, Savannah) |

**(4) The specific asbestos-containing product or silica-containing product to which the exposed person was exposed and the manufacturer of each product:**

| Manufacturer | Product |
|---|---|
| American Biltrite Inc. | Amtico tile and flooring |
| Domco Products Texas Inc. | Azrock tile and flooring including but not limited to, Tranquility, Majestic, and Cali |
| H.B. Fuller Company | Chapco flooring products; Benjamin Foster flooring products |
| IVC US, Inc. | Flexitec tile and flooring including but not limited to, Timeless, Astro, and Planet. |
| Mannington Mills Inc. | Various tile and flooring including but not limited to, Commercial, Duration, Jump Start, LVS Gold, LVS Platinum, LVS Silver, Naturals, Simplicity, Royal Air, Marquis, Million Air, Vega, Aristocon, Lustrecon, Decora, Architect's Choice, Duracon, and Boca. |
| Mohawk Industries Inc. | Various tile and flooring including but not limited to, |

|  | Gateway, Fieldcrest, Absolute, and Hallendale. |
|---|---|
| Roppe Flexco Acquisition Corporation | Flexco tile, flooring, and flooring products |
| Sears, Roebuck & Co. | Various tile, flooring, and flooring products |
| Shaw Industries Group, Inc. | Various tile and flooring including but not limited to, Costal, Heartland, Great Basin, Prometheus, Delmore, and Apollo. |
| Tarkett Alabama Inc. | Tarkett tile, flooring, and flooring products including but not limited to, Custom Pro and Fresh Start. Nafco tile and flooring including but not limited to, Vista, Aloft, Access, and Hand Scraped. |
| Tarkett USA, Inc. | Tarkett tile, flooring, and flooring products including but not limited to, Custom Pro and Fresh Start. Nafco tile and flooring including but not limited to, Vista, Aloft, Access, and Hand Scraped. |
| The Goodyear Tire & Rubber Company | Goodyear tile and flooring |
| Union Carbide Corporation | Asbestos |

**(5) The beginning and ending dates of each alleged exposure as to each asbestos-containing product or silica-containing product for each location at which exposure allegedly took place for plaintiff and for each index person:**

| Manufacturer | Product | Dates of Use |
|---|---|---|
| American Biltrite Inc. | Amtico tile and flooring | 1976-2006 |
| Domco Products Texas Inc. | Azrock tile and flooring including but not limited to, Tranquility, Majestic, and Cali | 1976-2006 |
| H.B. Fuller Company | Chapco flooring products; Benjamin Foster flooring products | 1976-2006 |
| IVC US, Inc. | Flexitec tile and flooring including but not limited to, Timeless, Astro, and Planet. | 1976-2006 |
| Mannington Mills Inc. | Various tile and flooring including but not limited to, | 1976-2006 |

| | Commercial, Duration, Jump Start, LVS Gold, LVS Platinum, LVS Silver, Naturals, Simplicity, Royal Air, Marquis, Million Air, Vega, Aristocon, Lustrecon, Decora, Architect's Choice, Duracon, and Boca. | |
|---|---|---|
| Mohawk Industries Inc. | Various tile and flooring including but not limited to, Gateway, Fieldcrest, Absolute, and Hallendale. | 1976-2006 |
| Roppe Flexco Acquisition Corporation | Flexco tile, flooring, and flooring products | 1976-2006 |
| Sears, Roebuck & Co. | Various tile, flooring, and flooring products | 1976-2006 |
| Shaw Industries Group, Inc. | Various tile and flooring including but not limited to, Costal, Heartland, Great Basin, Prometheus, Delmore, and Apollo. | 1976-2006 |
| Tarkett Alabama Inc. | Tarkett tile, flooring, and flooring products including but not limited to, Custom Pro and Fresh Start. Nafco tile and flooring including but not limited to, Vista, Aloft, Access, and Hand Scraped. | 1976-2006 |
| Tarkett USA, Inc. | Tarkett tile, flooring, and flooring products including but not limited to, Custom Pro and Fresh Start. Nafco tile and flooring including but not limited to, Vista, Aloft, Access, and Hand Scraped. | 1976-2006 |
| The Goodyear Tire & Rubber Company | Goodyear tile and flooring | 1976-2006 |
| Union Carbide Corporation | Asbestos | 1976-2006 |

**(6) The occupation and name of employer of the exposed person at the time of each alleged exposure:**

    a. Floor Installer - Coastal Floor Covering (1976 for 6 months)
    b. Floor Installer - Mock's Floor Covering Service (1976-2006)

**(7) The specific condition related to asbestos or silica claimed to exist:**

Malignant Mesothelioma - biphasic type

**(8) Any supporting documentation of the condition claimed to exist:**

See attached medical record

**(9) The identity of any bankruptcy trust to which a claim has been submitted concerning any asbestos or silica injury of the exposed person, attaching any claim form or other information submitted to such trust or trusts with respect to the exposed person. Plaintiff must also identify any bankruptcy trust that the plaintiff believes is or may be liable for all or part of the injury at issue, even if a claim has not been submitted to that trust at the time the complaint is filed.**

Submitted Bankruptcy Claims:          None at this time.

Potential Bankruptcy Claims:          Johns-Manville, Congoleum, Armstrong

Sworn and subscribed to this 3/ day of October, 2017.

Roy Mock

Signed and sworn before me
this 3/ day of October, 2017

NOTARY PUBLIC

My commission expires: June 3_

6


## MAYO CLINIC
**Mayo Medical Laboratories**

1-800-533-1710
# PATHC
Pathology Consultation

| Patient ID M000449060 | Patient Name MOCK, ROY E | | Birth Date 1943-01-22 | Gender M | Age 74 |
|---|---|---|---|---|---|
| Order Number SA00365049 | Client Order Number S17-2782 | Ordering Physician HEJKA, ANTHONY | Report Notes | | |
| Account Information C7012680  Candler Hospital | | Collected 05 Sep 2017 13:38 | | | |

## Pathology Consult

Case Number CR-17-51656

MCR

Interpretation

**FINAL DIAGNOSIS**

Pleura, left, biopsy (S17-2782, 9/5/2017): Malignant mesothelioma, biphasic type (see Comment).

**COMMENT**

This 74-year-old gentleman presented with pleural effusion and was found to have pleural based lesions on the left anterior chest wall. I had the pleasure to review this case because of my special interest in pulmonary pathology and also shared it with my colleague, Dr. Joanne E. Yi, who shares my interest and we completely agree with your assessment.

The submitted slides from the left pleura reveal a biphasic neoplasm. This neoplasm is predominantly comprised of atypical spindle cells. However, there are also foci of more round to oval cells with open chromatin, prominent nucleoli, and ample cytoplasm. The atypical cells are growing in a fibrotic background and a fumefactive growth pattern. Overall, in my opinion, this a malignant neoplasm and I considered a biphasic malignant mesothelioma, a sarcomatoid carcinoma, metastatic melanoma, and sarcoma. Submitted immunostains show that the neoplastic cells at least focally are positive for MCK, CK7, CK5, calretinin, p63, vimentin, and WT1, and are negative for TTF-1, MOC31, BerEp4, B72.3, S-100, CK20, and CD15. Desmin and SMA stain the sarcomatoid component. These morphological and immunophenotypical features are suggestive of a biphasic malignant mesothelioma. Given the strong expression of desmin and SMA in the sarcomatoid component, heterologous leiomyosarcoma-elements might also be a possibility.

Thank you for sharing this case with me. Your submitted material is enclosed. If you have any questions, please do not hesitate to reach me at 507-284-1798. I would appreciate any further follow-up information that you may received on this case.

| Participated in the interpretation | MCR | Report electronically signed by | MCR |
|---|---|---|---|
| Raghavendra Pilappa, M.B.B.S.-Pathology Fellow | | Anja C. Roden, M.D. 8-2179 | |

Report electronically signed by

Anja C. Roden, M.D.
8-2179

I verify that I have examined all relevant slides/materials for the specimen(s) and rendered or confirmed the diagnosis.

Seen in consultation with:
Joanne E. Yi, M.D. 8-9973

Material Received

MCR

A. S17-2782: Left pleura
18 stained slides, 1 block

Received: 16 Sep 2017 08:17

Reported: 18 Sep 2017 16:55

Performing Site Legend

| Code | Laboratory | Address |
|---|---|---|
| MCR | Mayo Clinic Laboratories - Rochester Main Campus | 200 First Street SW, Rochester, MN 55905 |

Printed 19 Sep 2017

**Report Status: Final**
Received and reported dates and times are reported in US Central Time.

CR-17-51656 Page 1 of 1

# **Exhibit 3**

## GEORGIA DEATH CERTIFICATE

State File Number    **2019GA000016800**

| 1. DECEDENT'S LEGAL FULL NAME (First, Middle, Last) | | 1a. IF FEMALE, ENTER LAST NAME AT BIRTH | 2. SEX | 2a. DATE OF DEATH (Mo., Day, Year) |
|---|---|---|---|---|
| **ROY EDWARD MOCK** | | | **MALE** | **ACTUAL DATE OF DEATH 03/19/2019** |

| 3. SOCIAL SECURITY NUMBER | 4a. AGE  (Years) | 4b. UNDER 1 YEAR | | 4c. UNDER 1 DAY | | 5. DATE OF BIRTH (Mo., Day, Year) |
|---|---|---|---|---|---|---|
| | | Mos. | Days | Hours | Mins. | |
| **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** | **76** | | | | | **01/22/1943** |

| 6. BIRTHPLACE | 7a. RESIDENCE - STATE | 7b. COUNTY | 7c. CITY, TOWN |
|---|---|---|---|
| **GEORGIA** | **GEORGIA** | **CHATHAM** | **SAVANNAH** |

| 7d. STREET AND NUMBER | 7e. ZIP CODE | 7f. INSIDE CITY LIMITS? | 8. ARMED FORCES? |
|---|---|---|---|
| **201 RUSS CIRCLE** | **31406** | **YES** | **YES** |

| 8a. USUAL OCCUPATION | 8b. KIND OF INDUSTRY OR BUSINESS |
|---|---|
| **FLOOR CONTRACTOR** | **CONSTRUCTION** |

| 9. MARITIAL STATUS | 10. SPOUSE NAME | 11. FATHER'S FULL NAME (First, Middle, Last) |
|---|---|---|
| **MARRIED** | **ARMANDE F. SWEENEY** | **JOHNNY MOCK** |

| 12. MOTHER'S MAIDEN NAME (First, Middle, Last) | 13a. INFORMANT'S NAME (First, Middle, Last) | 13b. RELATIONSHIP TO DECEDENT |
|---|---|---|
| **MOURICE TOOTLE** | **ARMANDE MOCK** | **WIFE** |

| 13c. MAILING ADDRESS | 14. DECEDENT'S EDUCATION |
|---|---|
| **201 RUSS CIRCLE SAVANNAH GEORGIA 31406** | **HIGH SCHOOL GRADUATE OR GED COMPLETED** |

| 15. ORIGIN OF DECEDENT (Italian, Mex.,French, English, etc.) | 16. DECEDENT'S RACE (White, Black, American Indian, etc.) (Specify) |
|---|---|
| **NO, NOT SPANISH/HISPANIC/LATINO** | **WHITE** |

| 17a. IF DEATH OCCURRED IN HOSPITAL | 17b. IF DEATH OCCURRED OTHER THAN HOSPITAL (Specify) |
|---|---|
| | **DECEDENT'S HOME** |

| 18. HOSPITAL OR OTHER INSTITUTION NAME (If not in either give street and no.) | 19. CITY, TOWN or LOCATION OF DEATH | 20. COUNTY OF DEATH |
|---|---|---|
| **201 RUSS CIRCLE** | **SAVANNAH** | **CHATHAM** |

| 21. METHOD OF DISPOSITION (specify) | 22. PLACE OF DISPOSITION | 23. DISPOSITION DATE (Mo., Day, Year) |
|---|---|---|
| **BURIAL** | **DANIEL BAPTIST CEMETERY HWY 17 RICHMOND HILL GEORGIA 31324** | **03/23/2019** |

| 24a. EMBALMER'S NAME | 24b. EMBALMER LICENSE NO. | 25. FUNERAL HOME NAME |
|---|---|---|
| **SANFORD L CARTER JR** | **3512** | **CARTER FUNERAL HOME - RICHMOND HILL** |

| 25a. FUNERAL HOME ADDRESS |
|---|
| **10512 FORD AVE RICHMOND HILL GEORGIA 31324** |

| 26a. SIGNATURE OF FUNERAL DIRECTOR | 26b. FUN. DIR. LICENSE NO | AMENDMENTS |
|---|---|---|
| **SANFORD CARTER** | **3938** | |

| 27. DATE PRONOUNCED DEAD (Mo., Day, Year) | 28. HOUR PRONOUNCED DEAD |
|---|---|
| **03/19/2019** | **15:20 MILITARY** |

| 29a. PRONOUNCER'S NAME | 29b. LICENSE NUMBER | 29c. DATE SIGNED |
|---|---|---|
| **Marlene  ALICE Kears** | **RN200599** | **03/19/2019** |

| 30. TIME OF DEATH | 31. WAS CASE REFERRED TO MEDICAL EXAMINER |
|---|---|
| **15:20 MILITARY** | **NO** |

| 32. Part I. Enter the chain of events-diseases, injuries, or complications that directly caused the death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, Or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE. | | Approximate interval between onset and death |
|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) | A.  **MESOTHELIOMA-DID METASTASIZED** | **YEARS** |
| | Due to, or as a consequence of | |
| | B. | |
| | Due to, or as a consequence of | |
| | C. | |
| | Due to, or as a consequence of | |
| | D. | |

| Part II. Enter significant conditions contributing to death but not related to cause given in Part 1A. If female, indicate if pregnant or birth occurred within 90 days of death. | 33. WAS AUTOPSY PERFORMED? | 34. WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH? |
|---|---|---|
| | **NO** | |

| 35. TOBACCO USE CONTRIBUTED TO DEATH | 36. IF FEMALE (range 10-54) PREGNANT | 37. ACCIDENT, SUICIDE, HOMICIDE, UNDETERMINED (Specify) |
|---|---|---|
| **UNKNOWN** | **NOT APPLICABLE** | **NATURAL** |

| 38. DATE OF INJURY (Mo., Day, Year) | 39. TIME OF INJURY | 40. PLACE OF INJURY (Home, Farm, Street, Factory, Office, Etc.) (Specify) | 41. INJURY AT WORK? (Yes or No) |
|---|---|---|---|
| | | | |

| 42. LOCATION OF INJURY (Street, Apartment Number, City or Town, State, Zip, County) |
|---|
| |

| 43. DESCRIBE HOW INJURY OCCURRED | 44. IF TRANSPORTATION INJURY |
|---|---|
| | |

| 45. To the best of my knowledge death occurred at the time, date and place and due to the cause(s) stated. Medical Certifier (Name, Title, License No.) | 46. On the basis of examination and/or investigation, in my opinion death occurred at the time, date and place and due to the cause(s) stated. Medical Examiner/Coroner (Name, Title, License No.) |
|---|---|
| **CYNTHIA L CARTER, MD, 056534** | |

| 45a. DATE SIGNED (Mo., Day, Year) | 45b. HOUR OF DEATH | 46a. DATE SIGNED (Mo., Day, Year) | 46b. HOUR OF DEATH |
|---|---|---|---|
| **03/22/2019** | **15:20 MILITARY** | | |

| 47. NAME, ADDRESS, AND ZIP CODE OF PERSON COMPLETING CAUSE OF DEATH |
|---|
| **CYNTHIA L CARTER 1352  EISENHOWER DRIVE DRIVE SAVANNAH GEORGIA 31416** |

| 48. REGISTRAR (Signature) | **/S/ GWENDOLYN DUFFIN** | 49. DATE FILED - REGISTRAR (Mo., Day, Year) |
|---|---|---|
| | | **03/26/2019** |

Form 3903 (Rev. 04/2012), GEORGIA DEPARTMENT OF PUBLIC HEALTH

THIS IS TO CERTIFY THAT THIS IS A TRUE REPRODUCTION OF THE ORIGINAL RECORD ON FILE WITH THE STATE
OFFICE OF VITAL RECORDS, GEORGIA DEPARTMENT OF PUBLIC HEALTH. THIS CERTIFIED COPY IS ISSUED UNDER
THE AUTHORITY OF CHAPTER 31-10, CODE OF GEORGIA AND 511-1-3 DPH RULES AND REGULATIONS.

DEPUTY STATE REGISTRAR AND CUSTODIAN
GEORGIA STATE OFFICE OF VITAL RECORDS

COUNTY CUSTODIAN: _____

ISSUED BY: _____

DATE ISSUED: __3__ - __28__ - __2019__

Any reproduction of this document is prohibited by statute. Do not accept unless embossed with a raised seal.
**VOID IF ALTERED OR COPIED**

# **Exhibit 4**

-Clerk of Court

# IN THE STATE COURT OF CHATHAM COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **ARMANDE MOCK Individually and as Executor of the Estate of ROY MOCK, Deceased,** | ) ) ) ) |
| **PLAINTIFF,** | ) ) |
| **vs.** | ) ) |
| **AMERICAN BILTRITE INC.;** | ) ) |
| **DOMCO PRODUCTS TEXAS INC.;** | ) |
| **H.B. FULLER COMPANY;** | ) ) |
| **IVC US, INC.;** | ) ) |
| **MANNINGTON MILLS INC.;** | ) ) |
| **MOHAWK INDUSTRIES INC.;** | ) ) |
| **ROPPE FLEXCO ACQUISITION CORPORATION;** | ) ) ) |
| **SEARS, ROEBUCK & CO.;** | ) ) |
| **SHAW INDUSTRIES GROUP, INC.;** | ) ) |
| **TARKETT ALABAMA INC.;** | ) ) |
| **TARKETT USA INC.;** | ) ) |
| **THE GOODYEAR TIRE & RUBBER COMPANY;** | ) ) ) |
| **UNION CARBIDE CORPORATION;** | ) ) |
| **and** | ) ) |
| **JOHN DOES NO. 1-10,** | ) |
| **DEFENDANTS.** | |

**CIVIL ACTION FILE NO.:**

**STCV1701890**

**<u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

1

## FIRST AMENDED COMPLAINT

COME NOW, ARMANDE MOCK individually and as Executor of the Estate of Roy Mock, Deceased, by and through counsel of record, and hereby state their First Amended Complaint as follows:

## INTRODUCTION

1.    This action arises from injuries sustained by ROY MOCK as a direct and proximate result of his exposure to asbestos-containing products that were designed, produced, manufactured, distributed and/or sold by named Defendants and/or their predecessors in interest as named in this action. As the direct and proximate result of ROY MOCK's exposure to the Defendants' asbestos-containing products, he contracted and was diagnosed as suffering from malignant mesothelioma and died therefrom. Mesothelioma is a rapidly debilitating and fatal form of cancer caused by asbestos exposure.

2.    The State Court of Chatham County has original jurisdiction over this matter, and this action is not subject to federal jurisdiction or removal to federal court under the provisions of 28 U.S.C. § 1332 because the claims asserted in this action relate to a tort committed in Chatham County, State of Georgia, and one or more of the parties in interest properly joined and served as a defendant in this action is a citizen of the state in which the action has been brought. *See*, 28 U.S.C. § 1441(b).

## PARTIES

3.    Decedent ROY MOCK was a resident and citizen of the State of Georgia.

4.    Plaintiff ARMANDE MOCK is a resident and citizen of the State of Georgia.

*Brian H. Hart* -Clerk of Court

5.      Defendants in this action include both domestic and foreign corporations that have registered to do business in the State of Georgia with the Georgia Secretary of State, or alternatively, are entities that have affirmatively placed asbestos-containing products into the stream of commerce with the reasonable expectation and knowledge that such asbestos-containing products would be bought, sold, distributed and put to use within the state of Georgia, as well as other states, within the United States of America.

6.      None of Defendants' actions complained of herein were committed under the direction or control of the United States government or any officer or agency thereof, and Plaintiffs hereby disclaim any cause of action or recovery for any injuries resulting from exposure to asbestos dust caused by any act(s) or omission(s) of a party Defendant committed at the direction of an officer of the United States Government. Plaintiffs also hereby disclaim any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave.

7.      Defendant AMERICAN BILTRITE INC. is a Delaware corporation that has duly registered with the Georgia Secretary of State. AMERICAN BILTRITE INC. maintains its principle place of business at, 57 River Street, Suite 302, Wellesley Hills, MA, 02481.

8.      Defendant AMERICAN BILTRITE INC. may be served with Summons and Complaint at, Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, GA, 30092.

9.      Defendant AMERICAN BILTRITE INC. is subject to the jurisdiction and venue of this Court.

10.     Defendant DOMCO PRODUCTS TEXAS INC. is a Delaware corporation that has failed to duly register with the Georgia Secretary of State. DOMCO PRODUCTS TEXAS INC. maintains its principle place of business at 30000 Aurora Rd., Solon, OH 44139.

11.    Defendant DOMCO PRODUCTS TEXAS INC. may be served with Summons and Complaint at, The Corporation Trust Company, Corporation Trust Center 1209 Orange St., Wilmington, DE 19801.

12.    Defendant DOMCO PRODUCTS TEXAS INC. is subject to the jurisdiction and venue of this Court.

13.    Defendant H.B. FULLER COMPANY is a Minnesota corporation that has duly registered with the Georgia Secretary of State. H.B. FULLER COMPANY maintains its principle place of business at, 1200 Willow Lake Boulevard, St. Paul, MN, 55110.

14.    Defendant H.B. FULLER COMPANY may be served with Summons and Complaint at, CT Corporation System, 289 S. Culver St., Lawrenceville, GA 30046.

15.    Defendant H.B. FULLER COMPANY is subject to the jurisdiction and venue of this Court.

16.    Defendant IVC US, INC. is a Georgia corporation that has duly registered with the Georgia Secretary of State. IVC US, INC. maintains its principle place of business at, 160 S. Industrial Blvd., Calhoun, GA, 30701.

17.    Defendant IVC US, INC. may be served with Summons and Complaint at, Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, GA, 30092.

18.    Defendant IVC US, INC. is subject to the jurisdiction and venue of this Court.

19.    Defendant MANNINGTON MILLS INC. is a New Jersey corporation that has duly registered with the Georgia Secretary of State. MANNINGTON MILLS INC. maintains its principle place of business at, P.O. Box 30, Salem, NJ 08079.

20.     Defendant MANNINGTON MILLS INC. may be served with Summons and Complaint at, Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, GA 30092.

21.     Defendant MANNINGTON MILLS INC. is subject to the jurisdiction and venue of this Court.

22.     Defendant MOHAWK INDUSTRIES INC. is a Delaware corporation that has duly registered with the Georgia Secretary of State. MOHAWK INDUSTRIES INC. maintains its principle place of business at, P.O. Box 12069, Calhoun, GA 30703.

23.     Defendant MOHAWK INDUSTRIES INC. may be served with Summons and Complaint at, Corporation Service Company, 40 Technology Pkwy South, Suite 300, Norcross, GA 30092.

24.     Defendant MOHAWK INDUSTRIES INC. is subject to the jurisdiction and venue of this Court.

25.     Defendant ROPPE FLEXCO ACQUISITION CORPORATION is a Delaware corporation that has failed to duly register with the Georgia Secretary of State. ROPPE FLEXCO ACQUISITION CORPORATION maintains its principle place of business at, 1602 N. Union St., Fostoria, OH 44830.

26.     Defendant ROPPE FLEXCO ACQUISITION CORPORATION may be served with Summons and Complaint at, CT Corporation System, 2 North Jackson St., Suite 605, Montgomery, AL 36104.

27.     Defendant ROPPE FLEXCO ACQUISITION CORPORATION is subject to the jurisdiction and venue of this Court.

28.     Defendant SEARS, ROEBUCK & CO. is a New York corporation that has duly registered with the Georgia Secretary of State. SEARS, ROEBUCK & CO. maintains its principle place of business at, 3333 Beverly Road, Hoffman Estates, IL, 60179.

29.     Defendant SEARS, ROEBUCK & CO. may be served with Summons and Complaint at, CT Corporation System, 289 S. Culver St, Lawrenceville, GA 30046.

30.     Defendant SEARS, ROEBUCK & CO. is subject to the jurisdiction and venue of this Court.

31.     Defendant SHAW INDUSTRIES GROUP, INC. is a Georgia corporation that has duly registered with the Georgia Secretary of State. SHAW INDUSTRIES GROUP, INC. maintains its principle place of business at, 616 E Walnut Avenue, P.O. Drawer 2128, MD 061-04, Dalton, GA, 30722.

32.     Defendant SHAW INDUSTRIES GROUP, INC. may be served with Summons and Complaint at, Frederick L. Hooper III, 616 East Walnut Avenue, Dalton, GA 30721.

33.     Defendant SHAW INDUSTRIES GROUP, INC. is subject to the jurisdiction and venue of this Court.

34.     Defendant TARKETT ALABAMA INC. is an Alabama corporation that has failed to duly registered with the Georgia Secretary of State. TARKETT ALABAMA INC. maintains its principle place of business at, 430 Co. Rd. 30, Florence, AL 35634.

35.     Defendant TARKETT ALABAMA INC. may be served with Summons and Complaint at, CT Corporation System, 2 North Jackson St., Suite 605, Montgomery, AL 36104.

36.     Defendant TARKETT ALABAMA INC. is subject to the jurisdiction and venue of this Court.

37.    Defendant TARKETT USA INC. is a Delaware corporation that has failed to registered with the Georgia Secretary of State. TARKETT USA INC. maintains its principle place of business at, 30000 AURORA ROAD, SOLON, OH 44139.

38.    Defendant TARKETT USA INC. may be served with Summons and Complaint at, CT Corporation System, 2 North Jackson St., Suite 605, Montgomery, AL 36104.

39.    Defendant TARKETT USA INC. is subject to the jurisdiction and venue of this Court.

40.    Defendant THE GOODYEAR TIRE & RUBBER COMPANY is an Ohio corporation that has duly registered with the Georgia Secretary of State. THE GOODYEAR TIRE & RUBBER COMPANY maintains its principle place of business at, 200 Innovation Way, Akron, OH, 44316.

41.    Defendant THE GOODYEAR TIRE & RUBBER COMPANY may be served with Summons and Complaint at, Corporation Service Company, 40 Technology Pkwy. South, Suite 300, Norcross, GA 30092.

42.    Defendant THE GOODYEAR TIRE & RUBBER COMPANY is subject to the jurisdiction and venue of this Court.

43.    Defendant UNION CARBIDE CORPORATION is a New York corporation that has duly registered with the Georgia Secretary of State. UNION CARBIDE CORPORATION maintains its principle place of business at, 7501 State Hwy. 185, Seadrift, TN, 77983.

44.    Defendant UNION CARBIDE CORPORATION may be served with Summons and Complaint at, CT Corporation System, 289 S Culver St., Lawrenceville, GA 30046.

45.    Defendant UNION CARBIDE CORPORATION is subject to the jurisdiction and venue of this Court.

46.     Defendants JOHN DOE No. 1 through 10 are believed to be Georgia or foreign corporations, partnerships, associations or other legal entities that have transacted business in the State of Georgia and are responsible for the injuries and damages incurred by Plaintiffs. Once the identity and the whereabouts of the John Doe Defendants are established, said Defendant(s) will be served with a copy of summons and complaint as provided by law. Defendants JOHN DOE No. 1 through 10 are subject to the jurisdiction and venue of this court.

47.     Each Defendant corporation or its predecessor-in-interest was, at all times material hereto, engaged in the design, manufacture, distribution and sale of asbestos-containing products, or alternatively, the mining and processing of asbestos as a component part of asbestos containing products at issue in this action.

48.     Venue of this action is established as being in Chatham County, State of Georgia, under the Constitution and laws of the State of Georgia and pursuant to the provisions of O.C.G.A. § 51-14-1 et seq.

49.     Pursuant to the provisions of O.C.G.A. § 51-14-1 *et seq*., Plaintiffs include certain information provided for under said statute as set forth on Attachment "A" to their Complaint which is incorporated by reference as if fully set forth herein. Plaintiffs expressly reserve the right to challenge the entirety of the provisions of O.C.G.A. § 51-14-1 *et seq*., to the extent applicable to this action, and by including any information in this Complaint otherwise provided for or suggested by O.C.G.A. § 51-14-1 *et seq*., do not waive any such challenge in regard to the constitutionality or application of such statutory provisions to this action. Without consenting to same, Plaintiffs assert that they have met the filing requirements of O.C.G.A. § 51-14-1 *et seq*., as otherwise provided under said Code sections.

## FIRST CAUSE OF ACTION

### (Negligence)

50.　　Plaintiff repeats, reiterates and re-allege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

51.　　Decedent ROY MOCK was exposed to asbestos-related materials and other asbestos-containing products mined, manufactured, processed, imported, converted, compounded, sold, distributed, maintained, installed, disturbed and/or manipulated by the defendants, or their products, in a way to create asbestos-containing dust that was breathed by Decedent. Decedent inhaled and absorbed asbestos fibers emanating from various asbestos-containing products as a direct and proximate result of the acts and omissions of each defendant. As a direct and proximate result of each defendant's acts of negligence, Plaintiff's decedent developed and was otherwise diagnosed as suffering from malignant pleural mesothelioma, which is a terminal form of cancer caused by asbestos exposure. Decedent died therefrom.

52.　　At all times relevant hereto, each defendant knew, or should have known, that its products would be used without inspection for defects and that any such inspection would not have advised Decedent of the fact that the asbestos contained in, or used in conjunction with, such products could cause the terminal condition which Decedent developed. Such facts made each of the defendant's products inherently and unreasonably dangerous in that Decedent was not apprised of, and did not contemplate, the danger of contracting a deadly asbestos-related disease as a result of his use, proximity, exposure to, and inhalation of, the asbestos fibers contained in, or emanating from, each of the defendant's products.

53.　　Each defendant was in the business of designing, manufacturing, selling, distributing, and/or maintaining products that contained asbestos, or alternatively through their customary and

intended use resulted in the disbursement of asbestos-containing fibers into the air that Decedent breathed at all times relevant to this action. Each defendant knew that Decedent, and others similarly situated, would come in contact with asbestos contained in, or emanating from, their products and would be exposed to an unreasonable risk of harm due to the inhalation of the asbestos fibers associated with their products. Each defendant knew, or should have known, that Decedent, or others similarly situated, would be in danger of developing asbestos-related diseases such as asbestosis, mesothelioma, or other forms of cancer. Each defendant was negligent in one, some, or all of the following respects, and such negligence was the direct and proximate cause of Decedent's death:

    a. In failing to adequately warn Decedent and others similarly situated of the dangerous characteristics of their products and failing to warn Decedent that he could develop fatal injuries including, but not limited to, mesothelioma and other forms of cancer as a result of being exposed to asbestos dust originating or emanating from each defendant's products.

    b. In failing to provide Decedent with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if any existed, to protect him from being harmed and disabled by asbestos dust originating or emanating from each defendant's products.

    c. In failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and a safe method of handling, installing, or using asbestos materials relating to their product.

    d. In continuing to manufacture, sell and distribute products that posed a danger to Decedent and others due to asbestos dust originating or emanating from each

10

defendant's products when each defendant knew, or should have known, that use of their products would cause injuries or death.

e.   In affirmatively misrepresenting to Decedent and other members of the public, in advertising, labels and otherwise, that the products that they manufactured, sold, distributed or otherwise put in use, were safe in their ordinary and foreseeable use. These material misrepresentations induced Decedent to unknowingly expose himself to the hazards of developing injuries from asbestos dust, which included mesothelioma and other forms of cancer.

f.   In failing to adequately test their respective products before offering them for sale and use so that Decedent and other persons similarly situated would not inhale the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' products and thereby expose Decedent and others to the development of injuries from mesothelioma or other forms of cancer.

g.   In failing to remove and recall their unreasonably dangerous products from the stream of commerce and the marketplace upon ascertaining that use of such products would result in contaminating the air that Decedent and others would breathe with asbestos dust originating or emanating from each defendant's products.

h.   In failing to warn or advise Decedent and others similarly situated, whom the Defendants either knew or should have known would be, or had been, exposed to the danger of inhalation of the asbestos dust and fibers resulting from the ordinary and foreseeable use of their products, as to the dangers associated with such

products and to avoid or cease all future exposure to asbestos dust and fibers due to the increasing danger associated with each exposure.

i.  In failing to warn or advise Decedent and others similarly situated, whom the Defendants either knew or should have known would be, or had been, exposed to asbestos dust originating or emanating from each Defendant's products, of the danger associated with the inhalation of such dust, as well as the continuing danger to Decedent, and all of Decedent's family members, as a result of asbestos dust originating or emanating from each Defendant's products found on the work clothes and tools of those who worked with and around Defendants' products.

j.  In designing, utilizing, and including in the vehicles and machinery that it manufactured and sold a braking system that was defective and otherwise posed an unreasonable risk of danger to those who performed routine maintenance or repairs on said vehicles and machinery, or who where in the vicinity of those who performed routine maintenance or repairs on said vehicles, in that the vehicles and machinery, and the braking system as a whole, required the use of asbestos-containing friction products as replacement parts.

54.    The products that caused Decedent to be exposed to asbestos dust were at all times relevant to this action being used in the manner in which the defendants intended them to be used.

55.    Defendants' products failed to perform as safely as Decedent and others similarly situated expected they would, in that the products caused Decedent and others to develop injuries as a result of inhalation of the asbestos dust originating or emanating from each defendant's products.

56.     At all times relevant hereto, it was feasible for each Defendant to have:

    a.   adequately warned Decedent of the dangers associated with their products;

    b.   further tested their products to appreciate and eliminate any danger associated with their use;

    c.   designed a safer product; and

    d.   substituted asbestos-free products where applicable.

57.     Defendants' negligent, grossly negligent, willful, wanton and reckless conduct, as described herein, was the direct and proximate cause of the Decedent's illness and injuries, as a result of which Decedent has suffered damages in the form of medical expenses, physical disability, mental and physical pain and suffering, extreme emotional distress, eventual death, and other damages as can be proven at a trial of this action.

58.     Plaintiff is entitled to recover damages against each defendant for their individual and collective acts of negligence in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### (Product Liability)

59.     Plaintiff repeats, reiterate, and re-allege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

60.     Each defendant's asbestos-containing product was sufficiently defective to cause the defendants to be liable to Plaintiff. Each defendant's products were defective, *inter alia*, in their design, manufacture, and lack of proper or sufficient warnings. The subject products possessed latent characteristics and latent manufacturing and design defects existing at the time they were manufactured and at the time Decedent was exposed to them. Each defendant either knew, or in the exercise of reasonable care should have known, that their products would cause injuries in

the form of asbestosis, lung cancer, mesothelioma, or other forms of cancer, to those individuals such as Decedent who were exposed to dust from said products containing asbestos either directly or through exposure to asbestos-contaminated clothing or environments.

61.    At the time the defendants sold and delivered the products which resulted in Decedent exposure to asbestos dust, and at the time those products were used in the manner and environment intended and without substantial change affecting their condition, the products contained latent characteristics or latent manufacturing and design defects, and were defective and unreasonably dangerous and unfit for their intended use in that:

 a. They were defectively designed to contain asbestos, or to result in the disbursement of asbestos dust, a substance which is deleterious, poisonous and highly harmful to Decedent and others similarly situated.

 b. They contained inadequate warnings and otherwise failed to contain a warning sufficient to advise Decedent that the asbestos dust associated with their intended use was poisonous and extremely harmful to their health.

 c. They did not contain sufficient protective appliances or equipment to reduce or eliminate Decedent's inhalation of the poisonous and highly harmful asbestos fibers associated with use of the products.

 d. In designing, utilizing, and including in the machinery that each defendant manufactured and sold, components that was defective and otherwise posed an unreasonable risk of danger to those who performed routine maintenance or repairs on said machinery, or who were in the vicinity of those who performed routine maintenance or repairs on said machinery, in that the vehicles and

machinery, and the system as a whole, as designed, manufactured and sold by

Defendants required the use of asbestos-containing products as replacement parts.

62.    Defendants were engaged in the distribution and sale of these asbestos products that,

without substantial change in the condition in which each defendant sold them, were the

proximate cause of Decedent's injury and death.

63.    Each defendant and its predecessor in interest knew that its products would be used

without inspection for defects, and by placing them on the market represented that they would

safely do the job for which they were intended, which must necessarily include the safe handling,

installation and replacement of those products.

64.    Decedent was unaware of the hazards and defects in the products of the defendants,

which made those products unsafe for the purposes of using, handling, installation or removal of

the products, to the degree that those products would cause Decedent to develop mesothelioma

and other related physical conditions.

65.    At all times relevant hereto, the asbestos-containing products of each of the defendants

were used in the manner intended by the defendants.

66.    Defendants' unreasonably dangerous, defective products were the direct and proximate

cause of Decedent's injuries, and, as a result, Decedent suffered damages in the form of medical

expenses, physical disability, mental and physical pain and suffering, extreme emotional distress,

eventual death, and other damages as can be identified at a trial of this action.

67.    Plaintiff is entitled to recover damages against each defendant under a theory of product

liability, which includes negligence, in an amount to be proven at trial.

### THIRD CAUSE OF ACTION

#### (Wrongful Death)

68.    Plaintiff repeats, reiterate, and re-allege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

69.    Plaintiff ARMANDE MOCK is the spouse of Decedent ROY MOCK.

70.    As a direct and proximate result of the wrongful and tortuous acts of the defendants, ROY MOCK, died an untimely death.

71.    At the time of his death, ROY MOCK was 76 years of age with a life expectancy of approximately 8.58 years.

72.    As ROY MOCK's surviving spouse, ARMANDE MOCK is entitled to recover for the full value of ROY MOCK's life.

### FORTH CAUSE OF ACTION

#### (Estate Claims)

73.    Plaintiff repeats, reiterate, and re-allege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

74.    Plaintiff ARMANDE MOCK is the duly appointed Executor of the Estate of ROY MOCK, Deceased and is entitled to bring claims on behalf of the Estate

75.    Prior to his death, ROY MOCK suffered significant, excruciating, and debilitating physical and mental pain, including conscious awareness of his impending demise, as a direct and proximate result of the wrongful and tortuous acts of the defendant.

76.    As a result of ROY MOCK's death, special damages, including but not limited to pre-death medical bills and expenses and funeral and burial expenses, were incurred.

77.    Plaintiff ARMANDE MOCK, as Executor of the Estate of ROY MOCK, Deceased, is entitled to recover damages including, but not limited to, ROY MOCK's pre-death physical and mental pain and suffering and special damages for pre-death medical treatment and funeral and burial expenses.

### FIFTH CAUSE OF ACTION

### (Punitive Damages)

78.    Plaintiff repeats, reiterate, and re-allege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

79.    The conduct of each defendant as set forth hereinabove showed willful misconduct, malice, fraud, wantonness, oppression or that entire want of care which would raise the presumption of a conscious indifference to consequences. Accordingly, punitive damages should be imposed against each defendant pursuant O.C.G.A. § 51-12-5.1 and other applicable laws, to punish and deter each defendant from repeating or continuing such unlawful conduct.

WHEREFORE, Plaintiff prays:

    a.   That process issue according to law;

    b.   That each defendant be served with a copy of Plaintiff's Complaint and show cause why the prayers for relief requested by Plaintiff herein should not be granted;

    c.   That Plaintiff be granted a trial by jury in this matter;

    d.   That the Court enter a judgment against each defendant, jointly and severally, for all general and compensatory damages allowable to Plaintiff;

    e.   That the Court enter a judgment against each defendant, jointly and severally, for all special damages allowable to Plaintiff;

f.   That the Court enter a judgment against each defendant serving to award Plaintiff punitive damages under the provisions of O.C.G.A. § 51-12-5.1 and as otherwise provided by law;

g.   That the Court enter a judgment against each Defendant, jointly and severally, for all other relief sought by Plaintiff under this Complaint;

h.   That the costs of this action be cast upon Defendants; and

i.   That the Court grant Plaintiff such further relief which the Court deems just and appropriate.

Respectfully submitted this ___16th___ day of September, 2019.

OLIVER MANER LLP

GEORGE L. MAJOR, JR.
Georgia Bar No. 619608
PAUL THRELKELD
Georgia Bar No. 710731
218 West State Street
Savannah, GA 31401-3232
Telephone: (912) 236-3311
Facsimile: (912) 236-8725
gmajor@olivermaner.com
pht@olivermaner.com

*Attorneys for Plaintiff Armande Mock*

## CERTIFICATE OF SERVICE

This is to certify that on this 16th day of September, 2019, the foregoing upon the following by sending via e-mail on the following:

| | |
|---|---|
| Chris Collier, Esq.<br>scollier@hptylaw.com<br>Kristin Brock, Esq.<br>kbrock@hptylaw.com<br>Hawkins Parnell Thackston & Young LLP<br>303 Peachtree St. NE<br>Suite 4000<br>Atlanta, GA 30308<br>Tel.: 404-614-7567<br>Fax: 404-614-7500<br><br>**Attorneys for: *AMERICAN BILTRITE, INC.*** | Steven Henry<br>shenry@foxrothschild.com<br>Fox Rothschild LLP<br>1180 W. Peachtree Street<br>Suite 2300<br>Atlanta, GA 30309<br>Tel.: 404-962-1000<br>Fax: 404-962-1200<br><br>Stephanie Flynn<br>sgflynn@foxrothschild.com<br>Timothy Peck<br>tpeck@foxrothschild.com<br>Fox Rothschild LLP<br>2 W Washington Street, Suite 1100<br>Greenville, SC 29601<br>Tel: 864-751-7607<br>Fax: 864-751-7800<br><br>**Attorneys for: *DOMCO PRODUCTS TEXAS, INC.; MOHAWK INDUSTRIES, INC.*** |
| Lawrie Demorest, Esq.<br>lawrie.demorest@alston.com<br>Catherine Payne<br>catherine.payne@alston.com<br>Melissa Stogner<br>melissa.sotgner@alston.com<br>Clay Massey<br>clay.massey@alston.com<br>ALSTON & BIRD, LLP<br>One Atlantic Center<br>1201 West Peachtree Street<br>Atlanta, GA 30309<br>Tel.: 404-881-7796<br>Fax: 404-881-8570<br><br>**Attorneys for: *H.B. FULLER COMPANY; UNION CARBIDE CORP.*** | Bettis Rainsford, Jr.<br>brainsford@turnerpadget.com<br>TURNER PADGET GRAHAM & LANEY P.A.<br>209 Seventh Street<br>Third Floor<br>Augusta, GA 30901<br>Tel.: 803-227-4252<br><br>**Attorneys for: *IVC US. INC.*** |

| | |
|---|---|
| Eric Hawkins<br>ehawkins@hptylaw.com<br>Hawkins Parnell Thackston & Young LLP<br>303 Peachtree St. NE<br>Suite 4000<br>Atlanta, GA 30308<br>Tel.: 404-614-7400<br>Fax: 404-614-7500<br><br>**Attorneys for: *MANNINGTON MILLS, INC.*** | Charles Ruffin<br>cruffin@burr.com<br>BURR & FORMAN, LLP<br>171 Seventeenth Street, NW<br>Suite 1100<br>Atlants, GA 30363<br>Tel.: 404-685-4290<br>Fax: 404-817-3244<br><br>**Attorneys for: *TARKETT USA, INC.*** |
| Peter York<br>pyork@hptylaw.com<br>Hawkins Parnell Thackston & Young LLP<br>303 Peachtree St. NE<br>Suite 4000<br>Atlanta, GA 30308<br>Tel.: 404-614-7400<br>Fax: 404-614-7500<br><br>**Attorneys for: *SHAW INDUSTRIES GROUP, INC.*** | Elaine Shofner<br>eshofner@hptylaw.com<br>Hawkins Parnell Thackston & Young LLP<br>303 Peachtree St. NE<br>Suite 4000<br>Atlanta, GA 30308<br><br>**Attorneys for: *TARKETT ALABAMA INC., f/ka National Floor Products Company, Inc.*** |
| Vonnetta Benjamin<br>vonetta.benjamin@wbd-us.com<br>WOMBLE BOND DICKINSON<br>271 17th Street NW<br>Suite 2400<br>Atlanta, GA 30363<br>Tel.: 404-879-2479<br>Fax: 404-888-7490<br><br>**Attorneys for: *THE GOODYEAR TIRE & RUBBER COMPANY*** | |

THIS 16th day of September, 2019.

OLIVER MANER LLP

GEORGE D MAJOR, JR.
Georgia Bar No. 619608
PAUL THRELKELD
Georgia Bar No. 710731
218 West State Street
Savannah, GA 31401-3232
Telephone:  (912) 236-3311
Facsimile:  (912) 236-8725
gmajor@olivermaner.com
pht@olivermaner.com

*Attorneys for Plaintiff Armande Mock*

# **Exhibit 5**

**IN THE STATE COURT OF CHATHAM COUNTY
STATE OF GEORGIA**

| | | |
|---|---|---|
| **ROY MOCK AND ARMANDE MOCK,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION FILE NO.** |
| | ) | |
| **AMERICAN BILTRITE INC., et al.** | ) | **STCV170890** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |


**<u>NOTICE OF BANKRUPTCY FILING AND IMPOSITION OF AUTOMATIC STAY</u>**

   **PLEASE TAKE NOTICE** that on October 15, 2018, (the "**Commencement Date**"),
Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the
above-captioned chapter 11 cases (collectively, the "**Debtors**") each commenced a voluntary
case (the "**Chapter 11 Cases**") under chapter 11 of title 11 of the United States Code (11 U.S.C.
§ 101 *et seq.*) (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern
District of New York (the "**Bankruptcy Court**").   The Chapter 11 Cases are being jointly
administered under Case No. 18-23538 (RDD) (the "**Bankruptcy Cases**").   A copy of the
applicable Sears, Roebuck and Co.'s chapter 11 petition is attached hereto as **<u>Exhibit A</u>**.

   **PLEASE BE ADVISED** that pursuant to section 362(a) of the Bankruptcy Code (the
"**Automatic Stay**"), the filing of a bankruptcy petition "operates as a stay, applicable to all
entities," of, among other things "the commencement or continuation, including the issuance or
employment of process, of a judicial, administrative, or other action or proceeding against the
debtor that was or could have been commenced before the commencement of the case under [the
Bankruptcy Code], or to recover a claim against the debtor that arose before the commencement

of the [bankruptcy] case" and "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."   11 U.S.C. § 362(a)(1), (3).   Accordingly, the above-captioned matter has been automatically stayed pursuant to section 362(a) of the Bankruptcy Code.

**PLEASE BE FURTHER ADVISED** that any action taken against the Debtors without obtaining, from the Bankruptcy Court, relief from the Automatic Stay is void *ab initio* and may result in a finding of contempt for violation of the Automatic Stay.   The Debtors reserve and retain their statutory right to seek relief in the Bankruptcy Court from any action by Plaintiff(s) or any judgment, order, or ruling entered in violation of the Automatic Stay.

In the event the Court or any parties have questions regarding the Chapter 11 Cases, please contact counsel for the Debtors:

> WEIL, GOTSHAL & MANGES LLP
> 767 Fifth Avenue
> New York, New York 10153
> Telephone: (212) 310-8000
> Facsimile: (212) 310 8007
> Ray C. Schrock P.C.
> Jacqueline Marcus
> Garrett A. Fail
> Sunny Singh

- 2 -

This 22nd day of October, 2018.

**WOMBLE BOND DICKINSON (US) LLP**

By:    /s/ Vonnetta L. Benjamin
       Michael J. Sullivan
       GA Bar No. 142203
       Vonnetta L. Benjamin
       GA Bar No. 049890
       *Counsel for Defendant Sears,*
       *Roebuck and Co.*

271 17th Street, NW, Suite 2400
Atlanta, Georgia  30363
(404) 872-7000 – telephone
(404) 879-2940 – fax
michael.sullivan@wbd-us.com
vonnetta.benjamin@wbd-us.com

- 3 -

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that I have this day served counsel for all parties in the foregoing matter

with this **NOTICE OF BANKRUPTCY FILING AND IMPOSITION OF AUTOMATIC**

**STAY** via electronic mail with an offer to provide a paper copy as requested to Plaintiffs'

counsel listed below and to all defense counsel of record.

| | |
|---|---|
| George T. Major, Jr., Esq. | Clark Rosengarten, Esq. |
| Paul Threlkeld, Esq. | Donald P. Blydenburgh, Esq. |
| Oliver Maner LLP | Levy Konigsberg LLP |
| 218 West State Street | 800 Third Avenue, 11th Floor |
| P.O. Box 10186 | New York, NY 10022 |
| Savannah , Georgia 31412 | crosengarten@levylaw.com |
| gmajor@olivermaner.com | dblydenburgh@levylaw.com |
| pht@olivermaner.com | *Attorneys for Plaintiffs* |
| *Attorneys for Plaintiffs* | |

And by electronic copy to all defense counsel of record.

Eric T. Hawkins, Esq.
Christopher S. Collier, Esq.
Hawkins Parnell Thackston & Young LLP
303 Peachtree Street, N.E.
Suite 4000
Atlanta, Georgia 30308
ehawkins@hptylaw.com
ccollier@hptylaw.com
**Attorneys for American Biltrite, Inc.**

Peter York, Esq.
David Marshall, Esq.
Eric Hawkins, Esq.
Hawkins Parnell Thackston & Young LLP
303 Peachtree Street, N.E. Suite 4000
Atlanta, Georgia 30308
pyork@hptylaw.com
dmarshall@hptylaw.com
ehawkins@hptylaw.com
**Attorneys for Shaw Industries Group, Inc.**

- 4 -

Ryan B. Wilhelm, Esq.
Carlock, Copeland, & Stair, LLP
191 Peachtree Street NE
Suite 3600
Atlanta, GA 30303-1740
rwilhelm@carlockcopeland.com
**_Attorney for H.B. Fuller Company_**

Eric T. Hawkins, Esq.
Hawkins Parnell Thackston & Young LLP
303 Peachtree Street, N.E.
Suite 4000
Atlanta, Georgia 30308
ehawkins@hptylaw.com
**_Attorney for Mannington Mills_**

Elizabeth O'Neill, Esq.
Womble Bond Dickinson (US) LLP
One Wells Fargo Center
Suite 3500 301 South College Street
Charlotte, NC 28202
Elizabeth.oneill@wbd-us.com
**_Attorney for The Goodyear Tire & Rubber Company_**

W. Clay Massey, Esq.
Phil Sandick, Esq.
Catherine Payne, Esq.
Alston & Bird, LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309
phil.sandick@alston.com
clay.massey@alston.com
Catherine.payne@alston.com
**_Attorneys for Union Carbide Corporation_**

Allan R. Wheeler, Esq.
Burr & Forman
420 North 20th Street, Suite 3400
Birmingham, AL 35203-5206
awheeler@burr.com
**_Attorney for Tarkett USA, Inc._**

- 5 -

Steven Henry, Esq.
Tim Peck, Esq.
Stephanie Flynn, Esq.
Smith Moore Leatherwood LLP
1180 West Peachtree Street NW
2300 Regions Plaza
Atlanta, GA 30309-3482
Steven.henry@smithmoorelaw.com
Tim.peck@smithmoorelaw.com
Stephanie.flynn@smithmoorelaw.com
**_Attorneys for Domco Products Texas Inc._**


E. Elaine Shofner, Esq.
Hawkins Parnell Thackston & Young LLP
303 Peachtree Street, N.E.
Suite 4000
Atlanta, Georgia 30308
eshofner@hptylaw.com
**_Attorney for Tarkett Alabama, Inc._**


      This 22nd day of October, 2018.


                      /s/ Vonnetta L. Benjamin
                      Vonnetta L. Benjamin
                      Georgia State Bar No. 049890

WOMBLE BOND DICKINSON (US) LLP
271 17th Street, N.W.
Suite 2400
Atlanta, Georgia  30363
_Counsel for Defendant Sears, Roebuck and Co._

# EXHIBIT A

| Fill in this information to identify the case |
|---|

United States Bankruptcy Court for the:

Southern _____ District of   New York _____
                      (State)

Case number (*If known*): _____   Chapter   11

☐   Check if this is
an amended filing

## Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy    04/16

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

| 1. | Debtor's name | Sears, Roebuck and Co. |
|---|---|---|

**2.** All other names debtor used in the last 8 years    See Schedule 1

    Include any assumed names, trade names, and *doing business as* names

**3.** Debtor's federal Employer Identification Number (EIN)    36-1750680

**4.** Debtor's address

**Principal place of business**

| 3333 | Beverly Road |
|---|---|
| Number | Street |

| Hoffman Estates | Illinois | 60179 |
|---|---|---|
| City | State | ZIP Code |

Cook County
County

**Mailing address, if different from principal place of business**

| Number | Street |
|---|---|

P.O. Box

| City | State | ZIP Code |
|---|---|---|

**Location of principal assets, if different from principal place of business**

| Number | Street |
|---|---|

| City | State | ZIP Code |
|---|---|---|

| 5. | Debtor's website (URL) | www.searsholdings.com |
|---|---|---|

**6.** Type of debtor

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
☐ Partnership (excluding LLP)
☐ Other. Specify: _____

Debtor  Sears, Roebuck and Co.
         _____                          Case number (if known) _____
         Name

| | |
|---|---|
| 7. **Describe debtor's business** | **A.** *Check one:* |

      ☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
      ☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
      ☐ Railroad (as defined in 11 U.S.C. § 101(44))
      ☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
      ☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
      ☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
      ☒ None of the above  <u>Retail</u>

**B.** *Check all that apply:*

      ☐ Tax- entity (as described in 26 U.S.C. § 501)
      ☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)
      ☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

**C.** NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See
http://www.uscourts.gov/four-digit-national-association-naics-codes .

    <u>SIC Code 5311 (NAICS Code 4521)</u>

| | |
|---|---|
| 8. **Under which chapter of the Bankruptcy Code is the debtor filing?** | *Check one:* |

    ☐ Chapter 7
    ☐ Chapter 9
    ☒ Chapter 11. *Check all that apply:*

        ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,566,050 (amount subject to adjustment on 4/01/19 and every 3 years after that).
        ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement  of operations, cash-flow statement, and federal income tax return or if all of these  documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).
        ☐ A plan is being filed with this petition.
        ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).
        ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the  Securities and Exchange Commission according to § 13 or 15(d) of the Securities  Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing  for Bankruptcy under Chapter 11* (Official Form 201A) with this form.
        ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule  12b-2.

    ☐ Chapter 12

| | |
|---|---|
| 9. **Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**<br><br>If more than  2 cases, attach a separate list. | ☒ No<br><br>☐ Yes  District _____ When _____ Case number _____<br>                                           MM/ DD/ YYYY<br>            District _____ When _____ Case number _____<br>                                            MM / DD/ YYYY |
| 10. **Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**<br><br>List all cases. If more than 1, attach a separate list. | ☐ No<br><br>☒ Yes  Debtor  See Schedule 2     Relationship  See Schedule 2<br>          District  See Schedule 2     When  See Schedule 2<br>          Case number, if known  _____     MM / DD/ YYYY |

Debtor    Sears, Roebuck and Co.                                    Case number (if known) _____
                Name

---

**11. Why is the case filed in this district?**

Check all that apply:

☒ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

---

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (Check all that apply.)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?**

| Number | Street | | |
|---|---|---|---|
| City | | State | ZIP Code |

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

Contact Name _____

Phone _____

---

| | **Statistical and administrative information** |
|---|---|

---

**13. Debtor's estimation of available funds**

Check one:

☒ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

---

**14. Estimated number of creditors**

(on a consolidated basis)

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☒ More than 100,000 |
| ☐ 200-999 | | |

---

**15. Estimated assets**

(on a consolidated basis)

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☒ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

---

**16. Estimated liabilities**

(on a consolidated basis)

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☒ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

---

WEIL:\96066949\1\73217.0003

Debtor   Sears, Roebuck and Co.                                        Case number (if known)
         Name

| | Request for Relief, Declaration, and Signatures |

**WARNING** — Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

- The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

- I have been authorized to file this petition on behalf of the debtor.

- I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   October 15, 2018
              MM / DD / YYYY

☒   /s/ Robert A. Riecker                          Robert A. Riecker
    Signature of authorized representative of debtor   Printed name

    Chief Financial Officer
    Title

**18. Signature of attorney**

☒   /s/ Jacqueline Marcus                   Date   October 15, 2018
    Signature of attorney for debtor                MM / DD / YYYY

    Jacqueline Marcus
    Printed Name

    Weil, Gotshal & Manges LLP
    Firm Name

    767 Fifth Avenue
    Number        Street

    New York                      New York              10153
    City                          State                 ZIP Code

    (212) 310-8000                jacqueline.marcus@weil.com
    Contact phone                 Email address

    1867746                       New York
    Bar Number                    State

## Schedule 1

## <u>All Other Names Used By the Debtor or its Affiliates in the Last 8 Years</u>

| | |
|---|---|
| A&E Factory Service | Kmart Pharmacies of Minnesota, Inc. |
| Accents for Less | Kmart Pharmacies, Inc. |
| American Siding & Deck, Inc. | Kmart Properties, Inc. |
| American Windows & Sash, Inc. | Kmart Stores of Indiana, Inc. |
| Appliance Liquidators | Kmart Stores of TNCP, Inc. |
| Austin Technology Center | KMI, Inc. |
| Bath and Kitchen Elegance | Koolvent Aluminum Products, Inc. |
| Bath and Kitchen Elegance of the Desert | Kresge - Kmart Limited |
| Big Beaver of Caguas Development Corporation | Little Caesars |
| Big Beaver of Caguas Development Corporation II | Max Acquisition Delaware Inc. |
| Big Kmart | McKids |
| Big Kmart (#3680) | McKids The Store |
| Central Wholesale Appliance Supply, Inc. | McPhail's Appliances |
| Chantell Marketing | MetaScale Technologies India Private Limited |
| Circle of Beauty Inc. | Monark |
| Delver | Monark Holdings Inc. |
| Delver.com | Monark of California |
| Designer Depot | Monark Premium Appliance Co. |
| Eblon Technologies India Private Limited | Monark Premium Appliance Co. of Arizona |
| Evoke Productions | Monark Premium Appliance Co. of California |
| FitStudio by Sears | MXSV, Inc. |
| Florida Builder Appliances, Inc. | NTB - National Tire and Battery |
| Garment Rack | NTB-National Tire & Battery |
| HDC Holding Company of Delaware, Inc. | PMB, Inc. |
| HO. Tampa Development Co. | Prairie Buck I, Inc. |
| HO. Tysons Office Investment Co. | Prairie Buck II, Inc. |
| ILJ, Inc. | Private Brands, Ltd. |
| JAF, Inc. | Relay LLC |
| KC Kelley Group | San Diego Appliance Sales |
| Kenmore Direct | Sears |
| Kids Stockroom | Sears #1284 |
| Kmart | Sears Acquisition Corp. |
| Kmart Acquisition Corp. | Sears Auto Center |
| Kmart Apparel Corp. | Sears Auto Center #6582 |
| Kmart Apparel Fashions Corp. | Sears Auto Centers |
| Kmart Apparel Leasing Corp. | Sears Carpet and Upholstery Care, Inc. |
| Kmart Apparel Service of Atlanta Corp. | Sears Essentials |
| Kmart Apparel Service of Des Plaines Corp. | Sears Grand |
| Kmart Apparel Service of Sunnyvale Corp. | Sears Grand #1673 |
| Kmart Corporation | Sears Holdings Management Corporation |
| Kmart Enterprises, Inc. | Sears Home Appliance Showrooms |
| Kmart Far East Limited | Sears Home Improvement Products (South), Inc. |
| Kmart Financing I | Sears Home Services |
| Kmart Global Sourcing Ltd. | Sears Home&Life |
| Kmart Holding Company | Sears Lessee Operations, LLC |
| Kmart Holdings, Inc. | Sears Logistics Services |
| Kmart Lessee Operations, LLC | Sears Logistics Services, Inc. |
| Kmart Management Corporation | Sears Merchandise Group |
| Kmart Michigan Property Services, L.L.C. | Sears Merchandise Group, Inc. |
| Kmart of Amsterdam, NY Distribution Center, Inc. | Sears New York Insurance Agency |
| Kmart of Pennsylvania LP | Sears Oklahoma Insurance Agency |

WEIL:\96066949\1\73217.0003

### Schedule 1

### All Other Names Used By the Debtor or its Affiliates in the Last 8 Years

| | |
|---|---|
| Sears Protection Company Inc. | The Annexx Restaurant |
| Sears Protection Company, Inc. | The Great Indoors |
| Sears Technology Services LLC | Tire Property Holding, Inc. |
| Sears, Roebuck de Mexico, S.A. de C.V. | Tri-Valley Crossings |
| Sears, Wishbook, Inc. | Troy CMBS Property, L.L.C. |
| ServiceLive Direct | Westar Kitchen & Bath LLC |
| SHMC, Inc. | Westar Kitchen and Bath |
| Shop Your Way Local, LLC | Westar Kitchen and Bath, LLC |
| shopyourway.com | Western Bluelight.com LLC |
| Sourcing and Technical Services, Inc. | WestStar Kitchen and Bath |
| SRC O.P. LLC | WestStar Kitchen and Bath LLC |
| SRC Real Estate (TX), LLC | Continental Carpet Cleaning, Inc. |
| Standards of Excellence | Sears Carpet and Upholstery Care, Inc. |
| Standards of Excellence Outlet Store | Print Procurement Company, LLC |
| Super K | Print Production Company, LLC |
| Super Kmart | Relay LLC |
| SUPER KMART CENTER | Shop Your Way Local, LLC |
| Super Kmart Center | Sears New York Insurance Agency |
| Texas Bluelight.com Inc. | Sears Oklahoma Insurance Agency |

WEIL:\96066949\1\73217.0003

## Schedule 2

### Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor

On the date hereof, each of the affiliated entities listed below, including the debtor in this chapter 11 case, filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the **"Court"**). A motion will be filed with the Court requesting that the chapter 11 cases of the entities listed below be consolidated for procedural purposes only and jointly administered, pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure, under the under the case number assigned to the chapter 11 case of Sears Holdings Corporation.

| COMPANY | CASE NUMBER | DATE FILED | DISTRICT | JUDGE |
|---|---|---|---|---|
| Sears, Roebuck and Co. | 18-_____ (  ) | October 15, 2018 | S.D.N.Y. | Pending |
| Sears Holdings Corporation | 18-_____ (  ) | October 15, 2018 | S.D.N.Y. | Pending |
| Kmart Holding Corporation | 18-_____ (  ) | October 15, 2018 | S.D.N.Y. | Pending |
| Kmart Operations LLC | 18-_____ (  ) | October 15, 2018 | S.D.N.Y. | Pending |
| Sears Operations LLC | 18-_____ (  ) | October 15, 2018 | S.D.N.Y. | Pending |
| ServiceLive, Inc. | 18-_____ (  ) | October 15, 2018 | S.D.N.Y. | Pending |
| A&E Factory Service, LLC | 18-_____ (  ) | October 15, 2018 | S.D.N.Y. | Pending |
| A&E Home Delivery, LLC | 18-_____ (  ) | October 15, 2018 | S.D.N.Y. | Pending |
| A&E Lawn & Garden, LLC | 18-_____ (  ) | October 15, 2018 | S.D.N.Y. | Pending |
| A&E Signature Service, LLC | 18-_____ (  ) | October 15, 2018 | S.D.N.Y. | Pending |
| FBA Holdings Inc. | 18-_____ (  ) | October 15, 2018 | S.D.N.Y. | Pending |
| Innovel Solutions, Inc. | 18-_____ (  ) | October 15, 2018 | S.D.N.Y. | Pending |
| Kmart Corporation | 18-_____ (  ) | October 15, 2018 | S.D.N.Y. | Pending |
| MaxServ, Inc. | 18-_____ (  ) | October 15, 2018 | S.D.N.Y. | Pending |
| Private Brands, Ltd. | 18-_____ (  ) | October 15, 2018 | S.D.N.Y. | Pending |
| Sears Development Co. | 18-_____ (  ) | October 15, 2018 | S.D.N.Y. | Pending |
| Sears Holdings Management Corporation | 18-_____ (  ) | October 15, 2018 | S.D.N.Y. | Pending |
| Sears Home & Business Franchises, Inc. | 18-_____ (  ) | October 15, 2018 | S.D.N.Y. | Pending |
| Sears Home Improvement Products, Inc. | 18-_____ (  ) | October 15, 2018 | S.D.N.Y. | Pending |
| Sears Insurance Services, L.L.C. | 18-_____ (  ) | October 15, 2018 | S.D.N.Y. | Pending |
| Sears Procurement Services, Inc. | 18-_____ (  ) | October 15, 2018 | S.D.N.Y. | Pending |
| Sears Protection Company | 18-_____ (  ) | October 15, 2018 | S.D.N.Y. | Pending |
| Sears Protection Company (PR) Inc. | 18-_____ (  ) | October 15, 2018 | S.D.N.Y. | Pending |
| Sears Roebuck Acceptance Corp. | 18-_____ (  ) | October 15, 2018 | S.D.N.Y. | Pending |
| Sears, Roebuck de Puerto Rico, Inc. | 18-_____ (  ) | October 15, 2018 | S.D.N.Y. | Pending |

WEIL:\96066949\1\73217.0003

### Schedule 2

## Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor

| COMPANY | CASE NUMBER | DATE FILED | DISTRICT | JUDGE |
|---------|-------------|------------|----------|-------|
| SYW Relay LLC | 18-_____ ( ) | October 15, 2018 | S.D.N.Y. | Pending |
| Wally Labs LLC | 18-_____ ( ) | October 15, 2018 | S.D.N.Y. | Pending |
| Big Beaver of Florida Development, LLC | 18-_____ ( ) | October 15, 2018 | S.D.N.Y. | Pending |
| California Builder Appliances, Inc. | 18-_____ ( ) | October 15, 2018 | S.D.N.Y. | Pending |
| Florida Builder Appliances, Inc. | 18-_____ ( ) | October 15, 2018 | S.D.N.Y. | Pending |
| KBL Holding Inc. | 18-_____ ( ) | October 15, 2018 | S.D.N.Y. | Pending |
| KLC, Inc. | 18-_____ ( ) | October 15, 2018 | S.D.N.Y. | Pending |
| Kmart of Michigan, Inc. | 18-_____ ( ) | October 15, 2018 | S.D.N.Y. | Pending |
| Kmart of Washington LLC | 18-_____ ( ) | October 15, 2018 | S.D.N.Y. | Pending |
| Kmart Stores of Illinois LLC | 18-_____ ( ) | October 15, 2018 | S.D.N.Y. | Pending |
| Kmart Stores of Texas LLC | 18-_____ ( ) | October 15, 2018 | S.D.N.Y. | Pending |
| MyGofer LLC | 18-_____ ( ) | October 15, 2018 | S.D.N.Y. | Pending |
| Sears Brands Business Unit Corporation | 18-_____ ( ) | October 15, 2018 | S.D.N.Y. | Pending |
| Sears Holdings Publishing Company, LLC | 18-_____ ( ) | October 15, 2018 | S.D.N.Y. | Pending |
| Sears Protection Company (Florida), L.L.C. | 18-_____ ( ) | October 15, 2018 | S.D.N.Y. | Pending |
| SHC Desert Springs, LLC | 18-_____ ( ) | October 15, 2018 | S.D.N.Y. | Pending |
| SOE, Inc. | 18-_____ ( ) | October 15, 2018 | S.D.N.Y. | Pending |
| StarWest, LLC | 18-_____ ( ) | October 15, 2018 | S.D.N.Y. | Pending |
| STI Merchandising, Inc. | 18-_____ ( ) | October 15, 2018 | S.D.N.Y. | Pending |
| Troy Coolidge No. 13, LLC | 18-_____ ( ) | October 15, 2018 | S.D.N.Y. | Pending |
| BlueLight.com, Inc. | 18-_____ ( ) | October 15, 2018 | S.D.N.Y. | Pending |
| Sears Brands, L.L.C. | 18-_____ ( ) | October 15, 2018 | S.D.N.Y. | Pending |
| Sears Buying Services, Inc. | 18-_____ ( ) | October 15, 2018 | S.D.N.Y. | Pending |
| Kmart.com LLC | 18-_____ ( ) | October 15, 2018 | S.D.N.Y. | Pending |
| Sears Brands Management Corporation | 18-_____ ( ) | October 15, 2018 | S.D.N.Y. | Pending |

WEIL:\96066949\1\73217.0003

**ACTION BY
WRITTEN CONSENT OF
THE GOVERNING BODIES
OF**

**KMART HOLDING CORPORATION
KMART OPERATIONS LLC
SEARS OPERATIONS LLC
SEARS, ROEBUCK AND CO.
SERVICELIVE, INC.
A&E FACTORY SERVICE, LLC
A&E HOME DELIVERY, LLC
A&E LAWN & GARDEN, LLC
A&E SIGNATURE SERVICE, LLC
FBA HOLDINGS INC.
INNOVEL SOLUTIONS, INC.
KMART CORPORATION
MAXSERV, INC.
PRIVATE BRANDS, LTD.
SEARS DEVELOPMENT CO.
SEARS HOLDINGS MANAGEMENT CORPORATION
SEARS HOME & BUSINESS FRANCHISES, INC.
SEARS HOME IMPROVEMENT PRODUCTS, INC.
SEARS INSURANCE SERVICES, L.L.C.
SEARS PROCUREMENT SERVICES, INC.
SEARS PROTECTION COMPANY
SEARS PROTECTION COMPANY (PR), INC.
SEARS ROEBUCK ACCEPTANCE CORP.
SEARS, ROEBUCK DE PUERTO RICO, INC.
SYW RELAY LLC
WALLY LABS LLC
BIG BEAVER OF FLORIDA DEVELOPMENT, LLC
CALIFORNIA BUILDER APPLIANCES, INC.
FLORIDA BUILDER APPLIANCES, INC.
KBL HOLDING INC.
KLC, INC.
KMART OF MICHIGAN, INC.
KMART OF WASHINGTON LLC
KMART STORES OF ILLINOIS LLC
KMART STORES OF TEXAS LLC
MYGOFER LLC
SEARS BRANDS BUSINESS UNIT CORPORATION
SEARS HOLDINGS PUBLISHING COMPANY, LLC
SEARS PROTECTION COMPANY (FLORIDA), L.L.C.
SHC DESERT SPRINGS, LLC
SOE, INC.
STARWEST, LLC
STI MERCHANDISING, INC.
TROY COOLIDGE NO. 13, LLC
BLUELIGHT.COM, INC.
SEARS BRANDS, L.L.C.**

**SEARS BUYING SERVICES, INC.**
**KMART.COM LLC**
**SEARS BRANDS MANAGEMENT CORPORATION**

October 14, 2018

The required members of the board of directors, the required managers, the sole member, the sole manager, or the sole director, as the case may be (as applicable, the "Governing Body"), of each of the entities referenced above (each, a "Company" and collectively, the "Companies"), do hereby consent to, adopt, and approve, by written consent in accordance with, as applicable, Section 141(f) of the Delaware General Corporation Law, Section 18-302(d) of the Delaware Limited Liability Company Act, Section 708(b) of the New York Business Corporation Law, Section 525 of the Michigan Business Corporation Act, Section 608.4231 of the Florida Limited Liability Company Act, Section 15-1(d) of the Illinois Limited Liability Company Act, the Washington Limited Liability Company Act, Section 6.201 of the Texas Business Organizations Code, Section 1727(b) of the Pennsylvania Business Corporation Law, and Section 8.45 of the Illinois Business Corporation Act of 1983 the following resolutions and each and every action effected thereby.

This consent may be executed in two or more counterparts, each of which shall constitute an original, and all of which shall constitute one and the same instrument.

WHEREAS, the Governing Body of each Company has reviewed and had the opportunity to ask questions about the materials presented by the management and the legal and financial advisors of such Company regarding the liabilities and liquidity of such Company, the strategic alternatives available to it and the impact of the foregoing on such Company's businesses; and

WHEREAS, the Governing Body of each Company has had the opportunity to consult with the management and the legal and financial advisors of such Company to fully consider each of the strategic alternatives available to such Company;

WHEREAS, the board of directors (the "Holdings Board") of Sears Holdings Corporation ("Holdings") has determined that it is desirable and in the best interests of Holdings, its creditors, and other parties in interest, for Holdings to file a petition seeking relief under the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and to enter into, obtain loans and consummate the transactions under the DIP ABL Financing Documents, as a Borrower (in each case as defined below); and

WHEREAS, the Restructuring Committee of the Holdings Board has determined that it is desirable and in the best interests of Holdings, its creditors, and other parties in interest, to enter into, obtain loans and consummate the transactions under the Junior DIP Financing Documents, as a Borrower (in each case as defined below); and

WHEREAS, each Governing Body desires to approve the following resolutions.

<u>Commencement of Chapter 11 Case</u>

NOW, THEREFORE, BE IT RESOLVED, that the Governing Body has determined, after consultation with the management and the legal and financial advisors of such Company, that it is desirable and in the best interests of such Company, its creditors, and other parties in interest that a petition be filed by such Company seeking relief under the Bankruptcy Code; and be it further

RESOLVED, that any officer of any of such Company or the sole manager of such Company, as applicable (each, an "Authorized Person"), in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, with full power of delegation, to negotiate, execute, deliver, file and perform, in the name and on behalf of such Company, and under its corporate seal or otherwise, all petitions, schedules, motions, lists, applications, pleadings, orders and other documents (the "Chapter 11 Filings") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (with such changes therein and additions thereto as any such Authorized Person may deem necessary, appropriate or advisable, the execution and delivery of any of the Chapter 11 Filings by any such Authorized Person with any changes thereto to be conclusive evidence that any such Authorized Person deemed such changes to meet such standard); and be it further

RESOLVED, that each Authorized Person, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, with full power of delegation, in the name and on behalf of the applicable Company, to take and perform any and all further acts and deeds that such Authorized Person deems necessary, appropriate, or desirable in connection with such Company's chapter 11 case (each, a "Chapter 11 Case") or the Chapter 11 Filings, including, without limitation, (i) the payment of fees, expenses and taxes such Authorized Person deems necessary, appropriate, or desirable, and (ii) negotiating, executing, delivering, performing and filing any and all additional documents, schedules, statements, lists, papers, agreements, certificates and/or instruments (or any amendments or modifications thereto) in connection with, or in furtherance of, such Company's Chapter 11 Case with a view to the successful prosecution of such Chapter 11 Case (such acts to be conclusive evidence that such Authorized Person deemed the same to meet such standard); and be it further

**Debtor-in-Possession Financing**

RESOLVED, that in connection with the Chapter 11 Case, it is in the best interest of (i) in the case of each of Sears Roebuck Acceptance Corp. ("SRAC") and Kmart Corporation ("Kmart") to enter into and obtain loans and (ii) in the case of the Guarantors (as defined in the DIP ABL Term Sheet (as defined below)) to guarantee such loans, and consummate the transactions under that certain senior secured superpriority priming debtor-in-possession asset-based credit facility in an aggregate principal amount of $1.875 billion (the "DIP ABL Loan"), representing an increase of $300 million from the existing facility, on terms set forth on the term sheet attached hereto as Exhibit A (the "DIP ABL Term Sheet"). The DIP ABL Loan, will be evidenced by such Term Sheet, and upon entry of the final order approving, among other things, such Company's entry into the DIP ABL Loan, a senior secured superpriority priming debtor-in-possession asset-based credit agreement, in each case to be entered into by and among, Sears Roebuck Acceptance Corp. ("SRAC") and Kmart Corporation ("Kmart", together with SRAC, the "DIP ABL Borrowers"), and Holdings and the other Loan Parties (as defined in the DIP ABL Term Sheet (other than the DIP ABL Borrowers) as guarantors (the "Guarantors"), the lenders from time to time party thereto (the "DIP ABL Lenders"), and Bank of America, N.A., as administrative agent for the DIP ABL Lenders (in such capacity and together with its successors, the "DIP ABL Agent") (together with the Exhibits and Schedules annexed thereto, the "DIP ABL Loan Credit Agreement" and together with the DIP Loan Documents (as defined in the Dip ABL Loan Term Sheet), the "DIP ABL Financing Documents"), in each case subject to approval of the United States Bankruptcy Court for the Southern District of New York which is necessary and appropriate to the conduct of the business of such Company; and be it further

RESOLVED, that the form, terms and provisions of (i) the DIP ABL Term Sheet, including the use of proceeds to provide liquidity for such Company throughout the Chapter 11 Case, substantially consistent with the DIP ABL Term Sheet, which has been presented to the Board and (ii) any and all of the other documents, agreements (including the DIP ABL Credit Agreement and the other DIP Loan Documents), including, without limitation, any guarantee and security agreement, letters,

3

notices, certificates, documents and instruments authorized, executed, delivered, reaffirmed, verified and/or filed in connection with the DIP ABL Loan and the performance of obligations thereunder, including the borrowings, guarantees, granting of security and pledging of collateral contemplated thereunder, are hereby, in all respects confirmed, ratified and approved; and be it further

RESOLVED, that any Authorized Person is hereby authorized, empowered, and directed, in the name and on behalf of such Company, to cause such Company to negotiate and approve the terms, provisions of and performance of, and to prepare, execute and deliver the DIP ABL Term Sheet and DIP ABL Credit Agreement, in the name and on behalf of such Company under its corporate seal or otherwise, and such other documents, agreements, instruments and certificates as may be required by the DIP ABL Agent or required by the DIP ABL Term Sheet, including the DIP ABL Credit Agreement; and be it further

RESOLVED, that such Company be, and hereby is, authorized to incur the obligations and to undertake any and all related transactions contemplated under the DIP ABL Financing Documents including the borrowing and reborrowing of loans, guaranteeing of obligations of the Borrowers, granting of security thereunder and the pledging of collateral; and be it further

RESOLVED, that any Authorized Person is hereby authorized to grant security interests in, and liens on, any and all property of such Company as collateral pursuant to the DIP ABL Financing Documents to secure all of the obligations and liabilities of such Company thereunder to the respective lenders and agents under the DIP ABL Financing Documents, and to authorize, execute, verify, file and/or deliver to the DIP ABL Agent, on behalf of such Company, all agreements, documents and instruments required by the respective lenders and agents under the DIP ABL Financing Documents in connection with the foregoing; and be it further

RESOLVED, that any Authorized Person, in connection with the DIP Financing, be authorized, empowered, and directed to negotiate and obtain the use of cash collateral or other similar arrangements, including, without limitation, to enter into any guarantees and to pledge and grant liens on and security interests in any and all property of such Company as may be contemplated by or required under the terms of any cash collateral agreements or other similar arrangements entered into in connection with the DIP Financing, in such amounts as is reasonably necessary for the continuing conduct of the affairs of such Company in the Chapter 11 Case and any of such Company's affiliates who may also, concurrently with such Company's petition, file for relief under the Bankruptcy Code; and be it further

RESOLVED, that any Authorized Person is hereby authorized, empowered, and directed, in the name and on behalf of such Company, to take all such further actions including, without limitation, to pay all fees and expenses, in accordance with the terms of the DIP ABL Financing Documents, which shall, in such Authorized Person's sole judgment, be necessary, proper or advisable to perform such Company's obligations under or in connection with the DIP ABL Term Sheet, DIP ABL Credit Agreement or any of the other DIP ABL Financing Documents and the transactions contemplated therein and to carry out fully the intent of the foregoing resolutions; and be it further

RESOLVED, that any Authorized Person is hereby authorized, empowered, and directed, in the name and on behalf of such Company, to execute and deliver any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions and extensions of the DIP ABL Term Sheet, the DIP ABL Credit Agreement and/or any of the DIP ABL Financing Documents, in each case consistent with the DIP ABL Financing Documents, which shall, in such Authorized Person's sole judgment, be necessary, proper or advisable; and be it further

4

**Retention of Advisors**

RESOLVED, that the law firm of Weil, Gotshal & Manges LLP, located at 767 Fifth Avenue, New York, New York 10153, is hereby retained as attorneys for such Company in the Chapter 11 Case, subject to Bankruptcy Court approval; and be it further

RESOLVED, that the firm of M-III Advisory Partners, LP, located at 30 Rockefeller Plaza, New York, NY 10112, is hereby retained as financial advisor for such Company in the Chapter 11 Case, subject to Bankruptcy Court approval; and be it further

RESOLVED, that the firm of Lazard Freres & Company, located at 30 Rockefeller Plaza, New York, NY 10112, is hereby retained as investment banker for such Company in the Chapter 11 Case, subject to Bankruptcy Court approval; and be it further

RESOLVED, that the firm of DLA Piper LLP, located at 500 Eighth Street, NW, Washington, DC 20004, is hereby retained to provide such Company with additional real estate and advisory services in the Chapter 11 Case, subject to Bankruptcy Court approval; and be it further

RESOLVED, that the firm of Prime Clerk, located at 830 Third Avenue, 9th Floor, New York, NY 10022, is hereby retained as claims, noticing and solicitation agent for such Company in the Chapter 11 Case, subject to Bankruptcy Court approval; and be it further

RESOLVED, that, with respect to each Company, each Authorized Person, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, with full power of delegation, in the name and on behalf of such Company, to negotiate, execute, deliver, file and perform any agreement, document or certificate and to take and perform any and all further acts and deeds (including, without limitation, (i) the payment of any consideration and (ii) the payment of fees, expenses and taxes) that such Authorized Person deems necessary, proper, or desirable in connection with such Company's Chapter 11 Case, including, without limitation, negotiating, executing, delivering and performing any and all documents, agreements, certificates and/or instruments (or any amendments or modifications thereto) in connection with the engagement of professionals contemplated by these resolutions, with a view to the successful prosecution of the Chapter 11 Case; and be it further

**Ratification**

RESOLVED, that any and all past actions heretofore taken by any Authorized Officer, any director, or any member of each Company in the name and on behalf of the applicable Company in furtherance of any or all of the preceding resolutions be, and the same hereby are, ratified, confirmed, and approved in all respects.

RESOLVED, that, with respect to each Company, each Authorized Person, any one of whom may act without the joinder of any of the others, hereby is authorized in the name and on behalf of such Company, to take all such further actions, including, but not limited to, (i) the negotiation of such additional agreements, amendments, modifications, supplements, reports, documents, instruments, applications, notes or certificates not now known but which may be required, (ii) the execution, delivery and filing (if applicable) of any of the foregoing and (iii) the payment of all fees, consent payments, taxes and other expenses as any such Authorized Person, in his or her sole discretion, may approve or deem necessary, appropriate or desirable in order to carry out the intent and accomplish the purposes of the foregoing resolutions and the transactions contemplated thereby, all of such actions, executions, deliveries, filings and payments to be conclusive evidence of such approval or that such Authorized Person deemed the same to be so necessary, appropriate or desirable; and be it further

RESOLVED, that any and all past actions heretofore taken by any Authorized Person, any director, or any member of any Company in the name and on behalf of such Company in furtherance of any or all of the preceding resolutions be, and the same hereby are, ratified, confirmed, and approved in all respects.

*[Signature Page Follows]*

**Fill in this information to identify the case:**

Debtor name: Sears, Roebuck and Co.

United States Bankruptcy Court for the: Southern District of New York
(State)

Case number (*If known*): _____

☐ Check if this is an
amended filing

## Official Form 204

# Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially unsecured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | The Pension Benefit Guaranty Corporation Attn.: Office of the Chief Counsel 1200 K Street, N.W., Suite 300 Washington District of Columbia 20005 | Attn.: Office of the Chief Counsel Phone: 202-326-4110 Facsimile: 202-326-4114 Email: | Pension Benefits | | | | Unknown |
| 2 | SRAC Medium Term Notes c/o BNY Midwest Trust Company Attn.: President or General Counsel 101 Barclay St., Floor 8W, New York, New York 10286 | Attn.: President or General Counsel Phone: 312-294-5200 Facsimile: Email: | Unsecured Notes | | | | $2,311,800,000.00 |
| 3 | Holdings Unsecured Notes (8.00%) c/o Computershare Trust Company, N.A. Attn.: President or General Counsel 250 Royal Street Canton, Massachusetts 02021 | Attn.: President or General Counsel Phone: 781-575-2000 Facsimile: 781-575-4210 Email: | Unsecured Notes | | | | $411,000,000.00 |
| 4 | Holdings Unsecured PIK Notes (8.00%) c/o Computershare Trust Company, N.A. Attn.: President or General Counsel 250 Royal Street Canton, Massachusetts 02021 | Attn.: President or General Counsel Phone: 781-575-2000 Facsimile: 781-575-4210 Email: | Unsecured Notes | | | | $222,600,000.00 |
| 5 | SRAC Unsecured Notes c/o The Chase Manhattan Bank, N.A. Attn.: Corporate Trust Department 4 Chase MetroTech Center, 3rd Floor Brooklyn, New York 11245 | Attn.: Corporate Trust Department Phone: Facsimile: Email: | Unsecured Notes | | | | $185,600,000.00 |
| 6 | SRAC Unsecured PIK Notes c/o BNY Midwest Trust Company Attn.: President or General Counsel 101 Barclay Street, Floor 8W New York, New York 10286 | Attn.: President or General Counsel Phone: 312-294-5200 Facsimile: Email: | Unsecured Notes | | | | $107,900,000.00 |

| Debtor | Sears, Roebuck and Co. | | Case number (if known) | |
|---|---|---|---|---|
| | Name | | | |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 7 | Whirlpool Corporation Attn.: President or General Counsel 2000 North M-63 Benton Harbor, Michigan 49022 | Attn.: President or General Counsel Phone: 269-923-5000 Facsimile: 269-923-3722 Email: | Trade Payable | | | | $23,409,729.00 |
| 8 | Frigidaire Company c/o Electrolux Attn.: President or General Counsel P.O. Box 2638 Carol Stream, Illinois 60132-2638 | Attn.: President or General Counsel Phone: 786-388-6400 Facsimile: Email: | Trade Payable | | | | $18,617,186.00 |
| 9 | Winia Daewoo Electronics America Attn.: President or General Counsel 65 Challenger Road, Suite 360 Ridgefield Park, New Jersey 07660 | Attn.: President or General Counsel Phone: 877-393-7823 Facsimile: Email: | Trade Payable | | | | $15,180,156.00 |
| 10 | Cardinal Health Attn.: President or General Counsel 7000 Cardinal Place Dublin, Ohio 43017 | Attn.: President or General Counsel Phone: 614-757-5000 Facsimile: Email: | Trade Payable | | | | $13,877,913.00 |
| 11 | Icon Health and Fitness Inc. Attn.: President or General Counsel 1500 South 1000 West Logan, Utah 84321 | Attn.: President or General Counsel Phone: 877-993-7999 Facsimile: 435-750-5238 Email: | Trade Payable | | | | $12,102,200.00 |
| 12 | HK Greatstar Int'l Co. Ltd. Attn.: President or General Counsel Rm 35, 4/F., Po Yip Building 23 Hing Yip Street, Kwun Tong, Kowloon, Hong Kong | Attn.: President or General Counsel Phone: 852 2110 4002 Facsimile: 852 3585 6687 Email: | Trade Payable | | | | $10,354,683.00 |
| 13 | Samsung Electronics America HA Attn.: President or General Counsel 85 Challenger Road, 7th Floor Ridgefield Park, New Jersey 07660 | Attn.: President or General Counsel Phone: 201-229-4000 Facsimile: 201-229-4029 Email: | Trade Payable | | | | $8,054,247.00 |
| 14 | Apex Tool International LLC Attn.: President or General Counsel 910 Ridgebrook Road, Suite 200 Sparks, Maryland 21152 | Attn.: President or General Counsel Phone: 410-773-7800 Facsimile: 800-234-0472 Email: | Trade Payable | | | | $6,605,582.00 |
| 15 | Black & Decker US Inc. c/o Stanley Black & Decker Attn.: President or General Counsel 1000 Stanley Drive New Britain, Connecticut 06053 | Attn.: President or General Counsel Phone: Facsimile: Email: | Trade Payable | | | | $5,893,734.00 |
| 16 | Eastern Prime Textile Limited Attn.: President or General Counsel Unit F10/F, King Win FTY Building No. 65-67 King Yip Street, Kwun Tong, Kowloon, Hong Kong | Attn.: President or General Counsel Phone: 852 21918293 Facsimile: 852 27939353 Email: | Trade Payable | | | | $5,761,992.00 |
| 17 | Winners Industry Company Limited Attn.: President or General Counsel Unit A, Wah Lung Building 49-53 Wang Lung Street,Tsuen wan, New Territories, Hong Kong | Attn.: President or General Counsel Phone: 86 769 83213199 Facsimile: 86 769 83213177 Email: | Trade Payable | | | | $5,359,201.00 |

| Debtor | Sears, Roebuck and Co. | Case number (if known) | |
|--------|------------------------|------------------------|--|
|        | Name                   |                        |  |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 18 | Tata Consultancy Services Ltd. Attn.: President or General Counsel 379 Thornal Street, 4th Floor Edison, New Jersey 08837 | Attn.: President or General Counsel Phone: 732-590-2600 Facsimile: Email: | Trade Payable | | | | $5,333,545.00 |
| 19 | Active Media Services Inc. Attn.: President or General Counsel 1 Blue Hill Plaza Pearl River, New York 10965 | Attn.: President or General Counsel Phone: 845-735-1700 Facsimile: 845-735-0717 Email: | Trade Payable | | | | $5,192,874.00 |
| 20 | Automotive Rentals Inc. Attn.: President or General Counsel 4001 Leadenhall Road Mount Laurel, New Jersey 08054-4611 | Attn.: President or General Counsel Phone: Facsimile: Email: | Trade Payable | | | | $4,830,313.00 |

**Fill in this information to identify the case:**

Debtor name: <u>Sears, Roebuck and Co.</u>

United States Bankruptcy Court for the: <u>Southern</u> District of <u>New York</u>
(State)

Case number (*If known*): _____

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors

12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING – Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☐ Schedule A/B: Assets–Real and Personal Property (Official Form 206A/B)
- ☐ Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)
- ☐ Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)
- ☐ Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)
- ☐ Schedule H: Codebtors (Official Form 206H)
- ☐ Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)
- ☐ Amended Schedule ____
- ☑ Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders (Official Form 204)
- ☐ Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on <u>October 15, 2018</u>          X /s/ Robert A. Riecker
MM / DD / YYYY                              Signature of individual signing on behalf of debtor

                                           Robert A. Riecker
                                           Printed name

                                           Chief Financial Officer
                                           Position or relationship to debtor

WEIL:\96066949\1\73217.0003