Allen G. Kadish
ARCHER & GREINER, P.C.
1211 Avenue of the Americas, Suite 2750
New York, New York 10036
Tel: (212) 682-4940
Email: akadish@archerlaw.com

       and

Kenneth M. Florey
M. Neal Smith
ROBBINS, SCHWARTZ, NICHOLAS,
LIFTON & TAYLOR, LTD.
631 E. Boughton Road, Suite 200
Bolingbrook, Illinois 60440
Tel: (630) 929-3639
Email: kflorey@robbins-schwartz.com
      nsmith@robbins-schwartz.com

       and

Matthew T. Gensburg
GENSBURG CALANDRIELLO & KANTER, P.C.
200 West Adams Street, Suite 2425
Chicago, Illinois 60606
Tel: (312) 263-2200
Email: mgensburg@gcklegal.com

*Attorneys for Community Unit School District 300*

**Hearing Date and Time: November 18, 2020 at 10:00 A.M.**
**Response Deadline: November 11, 2020 at 4:00 P.M.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) <br> ) Chapter 11 <br> ) |
| SEARS HOLDINGS CORPORATION, *et al.,* | ) Case No. 18-23538 (RDD) <br> ) (Jointly Administered) |
| Debtors. | ) <br> ) |

**MOTION OF COMMUNITY UNIT SCHOOL DISTRICT 300 TO DEEM
ECONOMIC DEVELOPMENT AGREEMENT REJECTED PURSUANT
TO THE DEBTORS' CONFIRMED CHAPTER 11 PLAN, OR, IN THE
<u>ALTERNATIVE, TO COMPEL THE DEBTORS TO REJECT THE AGREEMENT</u>**

COMMUNITY UNIT SCHOOL DISTRICT 300 (the "<u>School District</u>"), an Illinois school

district existing and operating pursuant to the Illinois School Code, 105 Illinois Compiled Statutes

("<u>ILCS</u>") 5/1-1, *et seq.*, by and through its attorneys, files this motion (the "<u>Motion</u>") pursuant to

sections 105(a) and 365 of title 11 of the United States Code (the "Bankruptcy Code"), for entry

of an order, in substantially the form submitted herewith, deeming the Economic Development

Agreement (the "EDA Agreement") between Sears, Roebuck and Co. ("Sears") and the Village of

Hoffman Estates, Illinois, an Illinois municipal corporation (the "Village") rejected pursuant to the

Debtors' confirmed chapter 11 plan or, in the alternative, compelling the above-captioned debtors

(the "Debtors") to reject the Agreement.  In support of this Motion, the School District respectfully

states as follows:

## PRELIMINARY STATEMENT

1.      The EDA Agreement arises out of the 1989 Economic Development Area and Tax

Increment Allocation Act, 20 ILCS 620/1, *et seq*. (the "EDA Act"), which was created and

designed to incentivize Sears to relocate its headquarters from downtown Chicago to undeveloped

farmland in the Village by entitling Sears to receive property tax rebates, subject to it meeting

certain employment and other metrics.  In the absence of the EDA Agreement, the tax dollars

recaptured by Sears would have gone to the communities and taxing districts that would otherwise

be entitled to the funds, impacting not merely the 20,000 students in the School District, but all

residents who live or are served by the effected taxing authorities.

2.      It is now evident that since at least 2017 (if not earlier), Sears has not been in

compliance with the EDA Act, nor the EDA Agreement, due to its failure to maintain the requisite

number of jobs.  This failure has been exacerbated during Sears's bankruptcy, at which time it has

terminated most if not all of its remaining Hoffman Estates corporate headquarters employees and

sold substantially all of its assets (including its Hoffman Estates corporate headquarters, the

development which was the subject matter of the EDA Agreement) to Transform Holdco LLC and

certain of its affiliates (collectively, "Transform" or the "Buyer").  Pursuant to this sale, Sears also

provided Transform with the right to designate the EDA Agreement for assumption and assignment, a right Transform exercised.  As a result of the above developments, the EDA Agreement has become the subject of prolonged, multi-party litigation, both in these chapter 11 cases as well as in the Circuit Court of Cook County, Chancery Division (the "State Court").  This litigation raises, among other issues, the Debtors' ability to assign the EDA Agreement and the disposition and the allocation of various tax funds that were and are held by th Village pursuant to the EDA Agreement.

3.      However, those disputes, at least as they concern the Debtors, have been largely resolved.  This Court approved two stipulations, effectively settling all issues between and among the Debtors, the School District and the Village relating to the funds held by the Village in connection with the EDA Agreement.  Significantly, through the stipulation approved by this Court on October 23, 2019 (ECF No. 5492), the School District released any claims it had against the Debtors for funds related to tax year 2017, and the Debtors, in turn, relinquished all rights they held with respect to funds for tax year 2018 and thereafter.

4.      More recently, Transform has entered into a settlement with the School District and other taxing districts pursuant to which Transform irrevocably will withdraw its designation of the EDA Agreement for assumption and assignment.  With this settlement in place, the only remaining claims in the State Court will involve the School District's claims against the Village for its erroneous distribution of prior EDA Funds to Sears and all matters between the School District and both Sears and Transform will be resolved.

5.      Having sold substantially all their assets, terminated or otherwise lost most of their Hoffman Estates corporate headquarters employees, and relinquished any remaining interests in the EDA funds as noted above, the Debtors have no further  legal or economic interest in the EDA

Agreement, a fact that they have admitted in pleadings filed with the State Court.  Nevertheless, the Debtors remain a party to the EDA Agreement, an executory contract subject to section 365 of the Bankruptcy Code, and have ignored repeated informal requests to reject the agreement.

6.      In light of these circumstances, the Court should enter an order determining that the EDA Agreement is deemed rejected under the Debtors' plan or, alternatively, compelling the Debtors to reject the Agreement.   Rejection of the Agreement will end the aforementioned litigation with respect to the Debtors and free up substantial sums in held-back tax funds that can be put to better use by, among others, the School District and its 20,000 students.  Despite recent negotiations, and although Sears has absolutely no interest in the EDA Agreement, now that Transform has agreed to withdraw its designation, Sears's refusal to reject the EDA Agreement is just an exercise for some hold-up value and an invitation for more litigation.

## JURISDICTION & VENUE

7.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.  This Motion is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

**8.**      The statutory bases for the relief requested herein are sections 105 and 365(a) and (d)(2) of the Bankruptcy Code and rules 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

### A. General Background

9.      On or about October 15, 2018 (the "Petition Date"), the Debtors filed with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code, commencing these chapter 11 cases.

10.     On November 19, 2018, the Court entered the *Order Approving Global Bidding Procedures and Granting Related Relief* (the "**Global Bidding Procedures Order**") (ECF No. 816). The Global Bidding Procedures Order, among other things, approved global auction and sale procedures for the sale of Sears assets on an accelerated timeline. Following the conclusion of the auction on January 17, 2019, the Debtors entered into the Asset Purchase Agreement with Transform (the "**Asset Purchase Agreement**"). On February 8, 2019, the Court entered an order approving the sale and the Asset Purchase Agreement (ECF No. 2507). On February 11, 2019, the Debtors and Transform completed the sale and substantially all of the Debtors' assets were transferred to Transform.

11.     Pursuant to the Asset Purchase Agreement, the Debtors agreed to sell to Transform all "Assigned Agreements and the Designation Rights." "Assigned Agreements" was defined to include the Initial Assigned Agreements, and such other Additional Contracts as Buyer elected to have assigned or assumed and assigned to Buyer in accordance with the Asset Purchase Agreement. Pursuant to the Asset Purchase Agreement, Transform designated the EDA Agreement as an Initial Assigned Agreement or as an Additional Contract to be assumed and assigned to Transform pursuant to Section 365 of the Bankruptcy Code. The School District filed objections to the assumption and assignment of the EDA Agreement which are pending resolution in the Court, as a result of which the assumption and assignment has not become effective.

12.     On October 15, 2019, the Court confirmed the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* (the "Plan"). Article XIII of the Plan dealt with executory contracts and unexpired leases. Paragraph 13.1 of the Plan provided that "[o]n the Effective Date, except as otherwise provided in the Plan or Plan Supplement, each Executory Contract and Unexpired Lease not previously rejected, assumed, or

assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123

of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) as of the

Effective Date is subject to a pending motion to assume such Unexpired Lease or Executory

Contract * * * *." The "Effective Date" of the Plan has not yet occurred.

### B. The EDA Agreement and Related Background

13.     In 1989, Illinois passed the EDA Act, which was designed to incentivize Sears to

relocate its headquarters to the Village from downtown Chicago. Pursuant to the EDA Act, the

Village and Sears entered into the EDA Agreement, which provided considerable financial

assistance and subsidies for Sears to develop its corporate campus in the Village. Significantly,

under the EDA Agreement, millions of property taxpayer dollars, much of which would have gone

to the School District, were instead recaptured by the Debtors. In exchange, and as a condition for

the Debtors to recapture these property taxes, Sears agreed, among other things, to create and

maintain a minimum number of jobs and cause a specific amount of private investment to occur

in the designated project area. The EDA Act was amended in 2012, which effectively extended

the term of the EDA Agreement. Upon closing of the Sale, the Buyer acquired ownership of the

Debtors' interest in the former Sears Headquarters Complex located in the Village, which

headquarters was the sole subject matter of the EDA Agreement.

14.     Pre-petition, on October 10, 2018, the School District filed a lawsuit against the

Village and Sears in the State Court, in a matter styled *Community Unit School District 300 v.*

*Village of Hoffman Estates, et al.,* Case No. 2018 CH 12683 (the "Illinois Action"), alleging

Sears's failure to maintain the statutorily required number jobs at the corporate campus in the

Village. On October 12, 2018, the School District filed an *Emergency Motion for Injunctive Relief*,

seeking to have the State Court enjoin the Village from making any further distributions from the

Village's special tax allocation fund under the EDA Act until the rights of the parties were adjudicated.

15.     Post-petition, on November 12, 2018, the School District filed the *Motion of Community Unit School District 300 for Relief from the Automatic Stay or, in the Alternative, for Abstention* (ECF No. 652) (the "Lift Stay Motion"), seeking to continue prosecution of the Illinois Action in the State Court.  The Debtors filed an objection to the Lift Stay Motion on December 17, 2018 (ECF No. 1280).

16.     On January 11, 2019, the Court entered the *Stipulation and Order By and Among the Village of Hoffman Estates, Sears Holdings Corporation and Community Unit School District 300 Concerning Funds Held Pursuant to the Economic Development Area a Tax Increment Allocation Act* (ECF No. 1548) (the "First Stipulation and Order").  Through the First Stipulation and Order, the Court approved, among other things, the distribution by the Village of funds to various taxing districts within the State of Illinois.

17.     On February 28, 2019, after closing on the Sale, the Debtors filed the *Motion of Debtors to Compel Turnover of Estate Property* (ECF No. 2715) (the "Turnover Motion"), seeking to recover in excess of $9.6 million held by the Village in the special tax allocation fund.  The School District filed an objection to the Turnover Motion on March 29, 2019 (ECF No. 2996).

18.     On April 2, 2019, the Court entered the *Order (I) Authorizing Assumption and Assignment of Certain Executory Contracts and Leases and (II) Granting Related Relief* (ECF No. 3008) (the "Assumption/Assignment Order").  The Assumption/Assignment Order approved, among other things, certain procedures by which additional contracts and leases could be assumed and assigned to the Buyer in connection with the Sale.

19.    Subsequently, on April 11, 2019, the Debtors filed and served the *Sixth Supplemental Notice of Cure Costs and Potential Assumption of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* (ECF No. 3152) (the "Sixth Supplemental Notice"), through which the Debtors indicated that the EDA Agreement could be assumed and assigned to the Buyer in connection with the Sale.  The School District filed an objection to the Sixth Supplemental Notice on April 18, 2019 (ECF No. 3288).

20.    Shortly thereafter, after a hearing, on April 25, 2019, the Court entered two orders: the *Order Granting Community Unit School District 300's Motion for Abstention (ECF* No. 3362) (the "Abstention Order") and the *Order Directing Partial Turnover of EDA Funds to Debtors and Reserving Balance Pending Court Order* (ECF No. 3666) (the "Partial Turnover Order").  Through the Abstention Order, the Court abstained from hearing certain issues raised in the Illinois Action and authorized the parties to proceed with the Illinois Action to resolve such issues.  The Partial Turnover Order also directed the Village to disburse $2,508,660.33 to Sears from funds held in the special tax allocation fund and to hold the balance of such funds pending further Court order.

21.    On May 2, 2019, the Debtors filed their *Notice of Assumption and Assignment of Additional Executory Contracts* (ECF. No. 3539) (the "Assumption Notice"), providing notice under the Assumption/Assignment Order of the proposed assumption and assignment of various contracts, including the EDA Agreement.  The School District filed an objection to the Assumption Notice on May 10, 2019 (ECF. No. 3783) with respect to the EDA Agreement..

22.    On August 16, 2019, the School District filed an amended complaint in the Illinois Action, adding the Buyer and certain affiliates of the Buyer as defendants.

23.    On October 23, 2019, the Court entered the *Amended Stipulation and Order By and Among the Village of Hoffman Estates, the Debtors, and the Community Unit School District 300*

*Concerning 2017 EDA Funds Held in the Special Tax Allocation Fund* (the "Amended Stipulation

and Order") (ECF No. 5492).  Pursuant to the Amended Stipulation and Order the Debtors agreed

to "relinquish any right they may have, in whole or in part, whether asserted or not, known or

unknown, with respect to EDA Funds consisting of property taxes levied for tax year 2018 that

were extended and collected in calendar year 2019 in the Special Tax Allocation Fund (the "2018

EDA Funds") and otherwise, if applicable, relinquish any rights, claims or interests to any

subsequent years' EDA Funds." (¶2)  Further, the Debtors stipulated and agreed that they had no

further interest in the Illinois Action and the issues being litigated therein with respect to the EDA

Agreement. (¶7)  It was also agreed that the Debtors would release any claims, causes of actions,

demands, suits, liabilities, obligations, losses, damages, offsets, arguments, defenses, facts,

objections, counterclaims or other rights and positions that it may have related to the distribution

and receipt of the EDA Funds and/or the compliance and/or non-compliance with the EDA Act or

EDA Agreement in any year other than as expressly provided herein in respect of the 2017 EDA

Funds.

24.    Based on the Amended Stipulation and Order, on September 8, 2020, Sears filed a

motion to dismiss in the Illinois Action (the "Motion to Dismiss"), asking that it be dismissed from

the case.  A copy of the Motion to Dismiss is attached hereto as **Exhibit A**.  In the Motion to

Dismiss, Sears acknowledges and admits that

> Sears has no legal interest in this case.  All monetary claims
> asserted against or by Sears for EDA funds for any year have
> been released, dismissed with prejudice, or forever relinquished,
>
> and
>
> Sears has relinquished any right it may have to 2018 EDA Funds
> and any subsequent years' EDA Funds as part of the Stipulation
> and Order [in the Bankruptcy Court].

9

25.      Finally, on October 27, 2020, the School District and later certain other taxing districts entered into and will enter into, respectively, a settlement with the Buyer to resolve all remaining matters between them at issue in the Illinois Action.  As part of that settlement, the Buyer agreed, contingent upon either agreement by the Debtors to reject the EDA Agreement or entry of an order compelling rejection, to withdraw the Buyer's designation of the EDA Agreement for assumption and assignment.  The parties requested, in light of the settlement, that the Debtors reject the EDA Agreement, but the Debtors thus far have refused.  Because rejection is a necessary component of the settlement to resolve the Illinois Action, the Debtors' refusal leaves the School District with no recourse but to seek intervention from the Court, either by an order deeming the EDA Agreement rejected pursuant to the Plan or compelling the Debtors immediately to reject the EDA Agreement.

## RELIEF REQUESTED

26.      By this Motion, the School District seeks entry of an order, substantially in the form submitted herewith, deeming the EDA Agreement rejected pursuant to the Plan, upon the filing by the Buyer of a withdrawal of its designation of the EDA Agreement as a contract to be assumed and assigned in connection with the Sale, or, alternatively, compelling the Debtors to reject the EDA Agreement upon the filing by the Buyer of such withdrawal.

## BASIS FOR REQUESTED RELIEF

27.      Section 365(a) of the Bankruptcy Code provides that "[e]xcept as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

28.     Section 365(d)(2) of the Bankruptcy Code, in turn, provides that in a chapter 11 case, "the trustee may assume or reject an executory contract . . . at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract . . ."  11 U.S.C. § 365(d)(2).

29.     "Section 365(d)(2) is a codification of the bankruptcy jurisprudence that existed prior to its enactment . . . and the settled rule adopted from pre-Bankruptcy Code case law is that the trustee has a reasonable time to make the assumption or rejection decision.  What constitutes a reasonable time is left to the bankruptcy court's discretion in light of the circumstances of each case."  *In re Hawker Beechcraft, Inc.*, 483 B.R. 424, 428 (Bankr. S.D.N.Y. 2012).

30.     Because the Debtors' Plan has already been confirmed, pursuant to the terms of §365(d)(2), this Motion does not require the Court to undertake an analysis of what is a "reasonable time" for the Debtors to make a decision to assume or reject.  The Debtors' time to assume or reject executory contracts would have already expired.  However, the Plan has functionally extended the §365(d)(2) deadline providing that "on the Effective Date" executory contracts not previously rejected, assumed, or assumed and assigned will be deemed automatically rejected, "unless as of the Effective Date" such contract is subject to a pending motion to assume. Notwithstanding this provision, upon Transform's withdrawal of its designation of the EDA Agreement as a contract to be assumed and assigned under the Asset Purchase Agreement, no reason exists to further delay rejection because the Debtors have no legal or economic interest in the Agreement, thus rendering assumption impracticable.  Accordingly, upon withdrawal of the designation by the Buyer, the Agreement should be deemed rejected through the Plan. Alternatively, the Court should compel the Debtors immediately to reject the Agreement.

31.     Among the factors courts consider in deciding whether compel rejection of an executory contract, or to otherwise to shorten the period of time for it to be assumed or rejected, are the following: (1) the importance of the contract to the debtor's business and reorganization; (2) the debtor's failure or ability to satisfy postpetition obligations; (3) the nature of the interests at stake; (4) the balance of hurt to litigants and the good to be achieved; (5) whether the debtor has had sufficient time to appraise its financial situation and potential value of its assets in formulating plan; (6) the safeguards afforded the litigants; (7) the damage that the nondebtor will suffer beyond compensation available under the Bankruptcy Code; (8) whether there is need for judicial determination as to whether the executory contract exists; (9) whether the exclusivity period has been terminated; (10) whether the action to be taken is so in derogation of the Congressional scheme that the court may be said to be arbitrary; and (11) the purpose of Chapter 11, which is to permit successful rehabilitation of debtors. *In re Dana Corp.*, 350 B.R. 144 (Bankr.S.D.N.Y. 2006).

32.     In the instant case, all of the relevant factors outlined in *Dana* support immediate rejection of the EDA Agreement.  As described above, the EDA Agreement provides for certain tax benefits in connection with the EDA Act related to the development by Sears of its corporate headquarters in the Village and Sears's maintenance of certain numbers of employees in the Village.  Because the Debtors sold their headquarters and no longer maintain employees in the Village, and Transform has de-designated the agreement,[1] the fundamental purpose of the Agreement no longer exists and there is nothing of substance for the Debtors to assume and/or assign.  These are events of default under the EDA Agreement, defaults which Sears has no ability

---

[1]   The School District would contend that the EDA Agreement is not assignable to Transform.  See ECF No. 3288.

to cure on a go-forward basis.  See, *In re Central Florida Metal Fabrication, Inc.*, 190 B.R. 119 (Bankr. N.D.Fla. 1995) (Court could treat Chapter 11 debtor-in-possession's breach of executory contract as rejection, for purposes of allowance of claim).

33.    Moreover, through the Amended Stipulation and Order, the Debtors have unequivocally released and relinquished all economic and legal rights under the Agreement, leaving nothing to be assumed and/or assigned.  They have affirmed this as fact with their Motion to Dismiss in the Illinois Action where they emphatically noted that they have no legal interest in the EDA Agreement, by stating they have "no interest whatsoever in the School District's Action [i.e., the Illinois Action]" the focus of which is on the EDA Agreement. (¶7)  See also paragraph 10 of the Motion to Dismiss where Sears states "[i]n short, the action does not and cannot affect Sears because Sears has no interest in its outcome and there is no actual controversy between the School District and Sears."  They note that they agreed to relinquish any right Sears may have with respect to post-2017 EDA Funds, highlighting that they have no remaining economic interest in the EDA Agreement.  At this stage, the EDA Agreement has no importance to the Debtors. Because the Debtors have no remaining rights or interests in the agreement, and because the deadline for the Debtors to assume or reject contracts under section 365(d)(2) of the Bankruptcy Code (the date of confirmation of the Plan) has expired, the Agreement should be deemed rejected or the Debtors should be compelled immediately to reject the Agreement.

34.    Further, pursuant to paragraph 17 of the Assumption/Assignment Order, "at any time prior to . . . (ii) the Assumption Effective Date with respect to the assumption and assignment of any subsequent Additional Assigned Agreements . . . the Buyer may withdraw the proposed assumption of the applicable Additional Assigned Agreement by filing a notice of withdrawal with the Court."  As noted above, the settlement between the School District and the Buyer provides

for the filing of exactly such a notice upon confirmation that the EDA Agreement will then be rejected.

35.      Sears has had sufficient time to appraise its financial situation and the potential value of the EDA Agreement.  The Plan was confirmed on October 15, 2019, over a year ago, and as of this date has yet to go "Effective."  The School District has settled with Sears as reflected in the October 23, 2019 Stipulation and Order and has reached a settlement agreement with Transform by which Transform has agreed to withdraw its designation of the EDA Agreement for assumption and assignment.

36.      Further, in determining whether to accelerate the debtor's decision, the court must balance the interests of the non-debtor contracting party against the interests of the debtor and the bankruptcy estate.  *In re Midtown Skating Corp.*, 3 B.R. 194, 198 (Bankr. S.D.N.Y. 1980)  (the bankruptcy court must take into account the nature of the interests at stake, the balance of hurt to the litigants, the good to be achieved * * * *").  In balancing these interests, relevant considerations include (i) the damage the non-debtor party will suffer beyond the compensation available under the Bankruptcy Code, (ii) the importance of the contract to the debtor's business and reorganization, and (iii) whether the debtor has had sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan. *In re Teligent, Inc.*, 268 B.R. 723, 738 (Bankr. S.D.N.Y. 2001).

37.      Damage to the School District (and other taxing districts) from a delay in rejecting the EDA Agreement will be significant.  The School District operates 6 pre-schools, 19 primary schools, 8 middle schools and 6 high schools.  Altogether, the School District has in excess of 20,000 students and is the sixth largest school district in the State of Illinois. Furthermore, the School District and other taxing districts and their taxpayers will be irreparable harmed if the

Motion is not granted, in that the property tax value of the Sears' headquarters complex and other properties within the EDA District cannot otherwise be added to the overall tax rolls. When the EDA District properties are added to the tax rolls, the property taxes for all of the taxpayers, residential and commercial, will be materially reduced. Each calendar year that expires without adding the EDA District properties to the tax rolls irrevocably eliminates the property tax reductions and taxing bodies' critical access to the EDA District property tax proceeds desperately needed to fund critical public operations for the citizens of the taxing districts, thus preventing the citizens from receiving the best level of public services.

38.      The urgency of the taxing districts' need for access to these tax proceeds is exacerbated by the current Covid-19 pandemic. The dramatic fall of tax revenues by the State of Illinois occasioned by the epidemic will certainly translate into diminished state funding for local governments to the tune of billions of dollars. The taxing districts gaining access to the EDA District property tax proceeds, to which they are legally entitled, will help to ameliorate the expected financial impact of significantly reduced state funding.

39.      Under these circumstances, where (i) the Debtors have released and relinquished any remaining rights in the EDA Agreement, (ii) the Debtors no longer own the underlying property, (iii) the Buyer has agreed to withdraw its designation of the EDA Agreement, and (iv) the Plan has been confirmed and provides for rejection of all contracts not previously assumed, there is no basis to delay rejection of the EDA Agreement. Any such delay only serves to unfairly prejudice the other parties in the Illinois Action, including the School District and the Buyer, as implementation of their settlement requires rejection, and then termination, of the Agreement. Leaving these disputes unresolved will also further deplete the Debtors' estates' already limited

assets, and for no reason whatsoever, given that the Debtors have already relinquished all interest in the Agreement.

40.     For these reasons, the Court should determine that the EDA Agreement be deemed rejected by the Plan as of the Buyer's filing of the notice of withdrawal of its designation of the EDA Agreement for assumption and assignment, or, alternatively, the Court should compel the Debtors to reject the EDA Agreement upon the Buyer's filing of such notice of withdrawal.

## NOTICE

41.     Notice of this Motion shall be provided to: (i) the Debtors; (ii) the Office of the United States Trustee for the Southern District of New York; (iii) the Committee; (iv) the Buyer; (v) the Village; and (vi) any parties that have requested notice under Bankruptcy Rule 2002.  The School District submits that no other or further notice need be given.

## NO PRIOR REQUEST

42.     The School District has not previously applied for the relief sought herein to this or any other court.

## CONCLUSION

**WHEREFORE**, the School District respectfully requests that the Court (i) enter an order, substantially in the form submitted herewith, granting the relief requested in this Motion, and (ii) grant such other and further relief as the Court may deem proper.

Dated: New York, New York          ARCHER & GREINER, P.C.
       November 2, 2020


                                   By:    s/ Allen G. Kadish
                                       Allen G. Kadish
                                   1211 Avenue of the Americas, Suite 2750
                                   New York, New York 10036
                                   Tel: (212) 682-4940
                                   Email: akadish@archerlaw.com


                                           and


                                   Kenneth M. Florey
                                   M. Neal Smith
                                   ROBBINS, SCHWARTZ, NICHOLAS,
                                   LIFTON & TAYLOR, LTD.
                                   631 E. Boughton Road, Suite 200
                                   Bolingbrook, Illinois 60440
                                   Tel: (630) 929-3639
                                   Email: kflorey@robbins-schwartz.com
                                          nsmith@robbins-schwartz.com


                                           and


                                   Matthew T. Gensburg
                                   GENSBURG CALANDRIELLO & KANTER, P.C.
                                   200 West Adams Street, Suite 2425
                                   Chicago, Illinois 60606
                                   Tel: (312) 263-2200
                                   Email: mgensburg@gcklegal.com

                                   *Attorneys for Community Unit School District 300*