Hearing: November 18, 2020 at 10:00 a.m.
Response Deadline: November 11, 2020 at 4:00 p.m.

Michael Schein, Esq.
VEDDER PRICE P.C.
1633 Broadway, 31st Floor
New York, NY 10019
Tel:  (212) 407-6920
Email:  mschein@vedderprice.com

*Counsel to The Village of Hoffman Estates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF THE VILLAGE OF HOFFMAN ESTATES TO MOTION OF COMMUNITY UNIT SCHOOL DISTRICT 300 TO DEEM ECONOMIC DEVELOPMENT AGREEMENT REJECTED PURSUANT TO DEBTORS' CONFIRMED CHAPTER 11 PLAN, OR, IN THE ALTERNATIVE, TO COMPEL DEBTORS TO REJECT THE AGREEMENT**

The Village of Hoffman Estates (the "Village"), by and through its undersigned counsel, hereby objects to the *Motion of Community Unit School District 300 to Deem Economic Development Agreement Rejected Pursuant to the Debtors' Confirmed Chapter 11 Plan, Or, In the Alternative, to Compel the Debtors to Reject the Agreement* (the "Motion") [Dkt. No. 9061], and in support hereof, respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      Simply put, the Community Unit School District 300 (the "School District") has neither the factual support, nor legal standing, to obtain any of the relief sought in its Motion.  It

is neither a counterparty to the EDA Agreement,[1] nor a proponent of the Plan, each of which are required to grant the alternative relief sought by the School District in its Motion. Moreover, and somewhat ironically, it is now the School District that comes back before this Court, despite repeated claims of state court jurisdiction, for relief against the Village and the Debtors that it has been unable to obtain to date from the state court in the Illinois Action.[2]

2. To support its relief, the School District deliberately conflates the Debtors' (specifically the developer Sears, Roebuck and Co. as the developer ("Sears")) relinquishment of its right to receive any further EDA Funds under the Amended Stipulation and Order with a purported release of all legal and equitable interests in the EDA Agreement. However, the Debtors have never taken such a position, nor is there anything in the record before this Court or in the Illinois Action that supports such a release. Moreover, pursuant to the Plan's unambiguous terms, Sears' interest in the EDA Agreement will remain even if Transform withdraws its designation of assignment of the EDA Agreement, a future action contingent upon, among other things, a settlement agreement between Transform and the School District that is not before this Court.

3. Even if this Court were to overlook the Motion's factual inaccuracies,[3] the School District is not entitled to relief pursuant to Sections 105(a) and 365(d)(2) of the Bankruptcy Code. As noted above, the School District not a party to the EDA Agreement, and thus has no standing to compel Sears to reject the EDA Agreement pursuant to 11 U.S.C. § 365(d)(2). Indeed, the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[2] As evidenced by the docket in the Illinois Action, the School District has repeatedly failed (4x) to state a claim against the Village and the Debtor and again faces another (and hopefully final) round of dismissal relief. Unable to get out of first gear, it now rides back into this Court seeking relief to which it has no keys to and presenting a story that is not supported by any record before this Court.

[3] Among the many misstatements by the School District include the following: (i) None of the School District's 20,000 students reside in the EDA; (ii) no findings have been made in the Illinois Action regarding, among other things, Sears' compliance or whether 4,250 "jobs" exist in the EDA; (iii) the EDA Agreement addresses the entire EDA area and not just the former Sears headquarters; and (iv) any funding issues relating to the School District have nothing to do with the EDA, the EDA Agreement and do not create any urgency before this Court.

School District's reliance on 11 U.S.C. § 365(d)(2) for such post-confirmation relief is entirely misplaced.

4.  Moreover, because the Plan's clear language does not support the School District's contention that the EDA Agreement should be deemed rejected immediately, the School District's request that the Court hold otherwise is, in substance, an attempt to have the Court sua sponte modify the Plan. However, such post-confirmation modification is improper for several reasons. First, Section 1127(b) of the Bankruptcy Code provides the <u>only</u> mechanism for modifying a plan post-confirmation and requires, among other things, that the party proposing modifications be the plan's proponent or the reorganized debtor. The School District is indisputably neither. Second, even if the School District could seek to modify the Plan (and it cannot), it has not complied with the statutory requirements of Section 1127(b) of the Bankruptcy Code. Lastly, the School District cannot bypass the requirements the Section 1127(b) under the guise of a settlement with Transform that is not before the Court, or by calling upon the Court's equitable authority under 11 U.S.C. § 105(a). Accordingly, for the reasons set forth herein, the School District's Motion must be denied.

## ARGUMENT

**I.  Debtors Cannot be Compelled Under Section 365(d)(2) to Reject EDA Agreement.**

5.  The Court should deny the School District's request for an order pursuant to 11 U.S.C. § 365(d)(2) compelling the Debtors to reject the EDA Agreement for the simple reason that the School District lacks standing to seek such relief. Further, even if the School District had such standing, which it does not, it cannot rely on Section 365(d)(2) for such "post-confirmation" relief.

6.  Section 365(d)(2) of the Bankruptcy Code states as follows:

> In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, **on the request of any party to such contract** or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

11 U.S.C. § 365(d)(2) (emphasis added). The language of Section 365(d)(2) is clear that only a "**party to such contract**" can request a bankruptcy court to direct a debtor to assume or reject the contract within a specified period of time. *Id.* (emphasis added); *see also* Bankruptcy Rule 6006(b) ("A proceeding ***by a party to an executory contract*** or unexpired lease . . . to require the trustee, debtor in possession, or debtor to determine whether to assume or reject the contract or lease is governed by Rule 9014.") (emphasis added).

7. The bankruptcy court's holding in *In re Riverside Nursing Home*, 43 B.R. 682 (Bankr. S.D.N.Y. 1984) is directly on point and instructive. In *Riverside*, the bankruptcy court held that the mortgagee of the debtor's landlord who had the right to receive rents from the debtor did <u>not</u> have standing under 11 U.S.C. § 365(d)(2) to compel the debtor to assume or reject the lease because the mortgagee was not a party to the lease. *Id.* at 685. In denying the mortgagee's relief, the bankruptcy court reasoned that the language of Section 365(d)(2) is clear, finding that the statutory language does not "specify that a party in interest, or, for that matter, a creditor with an economic relationship to a debtor's unexpired lease, may compel the debtor to assume or reject it. ***Only a 'party to such . . . lease' possesses the requisite standing***." *Id.* (emphasis added).

8. The holding of *Riverside* is equally applicable here. The School District is not a party to the EDA Agreement. It therefore has no standing under Section 365(d)(2) to compel the Debtors to reject the agreement. Only the Village, as the counter-party to the EDA Agreement, has the requisite standing to make such a request. To the extent the School District argues that it

4

has an "economic interest" in the EDA Agreement, or that it is a "party in interest" in these proceedings, those interests are insufficient as a matter of law to provide the School District with requisite standing. *See Riverside*, 43 B.R. at 684-85 ("In adopting 11 U.S.C. § 365(d)(2), Congress expressly rejected the concept that any party in interest may compel a debtor to assume or reject an executory contract or lease."). Consequently, the Court should deny the School District's request under Section 365(d)(2) to compel the Debtors to reject the EDA Agreement.

9. Even if the School District had standing to compel the Debtors to reject the EDA Agreement (which it does not), Section 365(d)(2) is inapplicable since the Plan was confirmed on October 15, 2019 and relief under Section 365(d)(2) is only available pre-confirmation. *See In re Worldcom, Inc.*, 2006 WL 898029, at *4 (Bankr. S.D.N.Y. Mar. 9, 2006) ("Section 365 of the Bankruptcy Code specifically relates to assumption or rejection at any time before the confirmation of a plan.") (citing 11 U.S.C. § 365(d)(2)).

10. The School District does not cite any cases compelling a different result. Each of the cases relied on it is Motion addresses a "*counterparty's*" request to shorten the time for the debtor to assume or reject its contract *prior to the proposal of, let alone confirmation of*, the debtor's plan. *See In re Dana Corp.*, 350 B.R. 144 (Bankr. S.D.N.Y. 2006) (denying motion by supplier to compel debtor to assume or reject supply contract months before exclusivity was set to expire); *In re Midtown Skating Corp.*, 3 B.R. 194 (Bankr. S.D.N.Y. 1980) (denying landlord's motion to have debtor-tenant assume or reject lease by time certain when doing so may "chill" debtor's ability to reach accord with creditors and confirm a plan); *In re Teligent, Inc.*, 268 B.R. 723 (Bankr. S.D.N.Y. 2001) (adjourning counterparty's motion to require debtor to immediately decide to assume or reject agreement and noting court had recently granted first extension of exclusivity). Accordingly, the School District's reliance on such caselaw is inapplicable.

5

11. Lastly, the School District's equitable arguments that this Court should compel the Debtors to reject the EDA Agreement because Sears allegedly has no further legal or economic interest in the EDA Agreement, or that the School District will allegedly suffer damages in event the EDA Agreement is not rejected, are also without merit and should be rejected.

12. Contrary to the School District's bald allegations, Sears has never disclaimed its legal interest in the EDA Agreement; only the right to receive, as the current developer, any EDA Funds for tax years 2018 and thereafter. See Amended Stipulation and Order, ¶ 2 ("Debtors agree to relinquish any right . . . in whole or in part, whether asserted or not, known or unknown, with respect to the EDA Funds consisting of property taxes levied for tax year 2018 that were extended and collected in calendar year 2019 in the Special Tax Allocation Fund . . . and otherwise, if applicable, relinquish any rights, claims or interests to any subsequent years' EDA Funds."). In fact, the Amended Stipulation and Order does not contain any language where Sears relinquishes (nor does the School District cite to any such language in its Motion) its legal or economic interests in the EDA Agreement. *See generally*, Amended Stipulation and Order.

13. Such interpretation is further supported by the parties' filings in the Illinois Action, specifically (a) the Debtors' Motion to Dismiss the School District's Fourth Amended Complaint, (b) the School District's Response in Opposition thereto (the "Response"), and (c) the Debtors' Reply in further support thereof. *See* Motion, Ex. A; Supplement,[4] Exs. B and C. In both of the Debtors' filings, Sears makes clear that while it has no further interest in the EDA Funds and in the Illinois Action, it remains a party to the EDA Agreement. On the other hand, the School District's Response contradicts its Motion and in fact confirms in several places that "Sears has

---

[4] On November 6, 2020, the School District filed a *Supplement* to the Motion [Dkt. No. 9071] attaching additional pleadings filed in the Illinois Action.

not rejected its executory interest in the EDA Agreement" and thus retains such interest.[5] See Response, Section and Header A. Specifically, the School District states:

(a) "In the event Transform withdraws its designation of the EDA Agreement for assumption and assignment, Transform will no longer have an interest in the agreement, and instead, *Sears will retain the authority to assume and assign or reject the EDA Agreement.* Whether or not Sears has contracted away certain rights to funds under the EDA Agreement is irrelevant; *Sears still maintains a controlling executory interest in the EDA Agreement.* Response, ¶ 16 (emphasis added);

(b) "Until Sears either assumes and assigns the EDA Agreement to Transform, or alternatively rejects the EDA Agreement, it retains an interest in the EDA Agreement. Transform's right to withdraw its designation of the EDA Agreement for assumption and Assignment is contemplated by the APA. *By extension, Sears' ability to assume and assign the EDA Agreement in the event of such a withdrawal is also contemplated by the APA*." Response, ¶ 17 (emphasis added).

(c) "The 'Effective Date' has not yet occurred and the 'motion to assume' is still pending. As a result, should Transform withdraw its designation of the EDA Agreement for assumption and assignment, or should that designation be denied by the Bankruptcy Court, *until the passage of the Plan Effective Date, Sears in theory could have the opportunity to assume and re-assign the EDA Agreement to another party*." Response, ¶ 17. (emphasis added).

14. Accordingly, the School District's has admitted in pleadings in the Illinois Action, and indeed, affirmatively argued, that Sears retains a legal and economic interest in the EDA Agreement and that such agreement may still have value for the Debtors in the event Transform withdraws its designation.

## II. The EDA Agreement Cannot be Deemed Rejected Pursuant to the Plan.

15. The School District is also not entitled to an order "deeming" the EDA Agreement rejected pursuant to the Plan because such relief, in substance, is an impermissible request to modify the Plan in violation of the Plan's express terms. By seeking such relief, the School District

---

[5] The School District's admissions in the Illinois Action are directly contrary to the purported "facts" set in the Motion. *See, e.g.,* Motion, ¶ 30 ("upon Transform's withdrawal of its designation of the EDA Agreement as a contract to be assumed and assigned under the Asset Purchase Agreement . . . the Debtors have no legal or economic interest in the Agreement, thus rendering assumption impracticable."); Motion, ¶ 33 ("[T]he Debtors have unequivocally released and relinquished all economic and legal rights under the [EDA] Agreement, leaving nothing to be assumed and/or assigned.").

7

is requesting this Court to ignore the plain language of a confirmed Plan and the express terms of the Bankruptcy Code in favor of a prospective settlement with Transform that is, among other things, not before this Court and conditioned upon the Debtors' rejection of the EDA Agreement pursuant to the terms of the Plan, "*as modified*." *See* Supplement, Ex. D. Such post-confirmation relief should be denied for the reasons set forth herein.

16. Section 17.4 of the Plan governs modifications to the Plan. Specifically, such section provides that solely "**the Debtors**" reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, and subject to the reasonable consent of the Creditors' Committee, to modify the Plan after entry of the Confirmation Order (as defined therein) "**in the manner provided for by section 1127 of the Bankruptcy Code . . . .**" Plan, § 17.4(a) (emphasis added). Similarly, the Debtors also retain the sole right to modify the Plan after entry of the Confirmation Order, but prior to the Effective Date, again with the reasonable consent of the Creditors' Committee, in order to make appropriate technical adjustments and modifications to the Plan. *Id.*, § 17.4(b). Thus, post-confirmation, Article XVII of the Plan governs modification of the Plan, including as it relates to the assumption or rejection of any executory contract and unexpired lease to which the Debtors are a party.

17. First, as expressly set forth in the Debtors' Plan, Section 1127(b) provides the sole means for modifying a confirmed chapter 11 plan. *See* Plan, § 17.4; *see also In re Rickel & Assocs., Inc.*, 260 B.R. 673, 677 (Bankr. S.D.N.Y. 2001) ("Section 1127(b) provides the sole means for modifying a confirmed plan.") (citations omitted). Section 1127(b) provides that "[t]he proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan[.]" 11 U.S.C. § 1127(b). Here, the School District is neither the Plan proponent, nor the Reorganized Debtor, and thus lacks standing required

8

to seek such modifications to the Plan.[6] *See, e.g., In re WorldCom, Inc.*, 351 B.R. 130, 134 n.2 (Bankr. S.D.N.Y. 2006) ("[O]nly the plan proponent or the reorganized debtor, not Seinfeld, could ask for a modification of the plan."); *Reserve Capital Corp. v. Levine*, 2007 WL 329179, at *5 (N.D.N.Y. Jan. 30, 2007) ("Only a plan proponent or debtor has standing to modify a confirmed plan.").

18. Second, even if the School District could propose modifications to the Plan causing the EDA Agreement to be deem rejected now (and it cannot), the School District must also comply with 11 U.S.C. § 1125. *See In re Baker*, 2005 WL 2105802, at *7 (E.D.N.Y. Aug. 31, 2005) (noting that the proponent of a modification of the plan "shall comply with section 1125 of this title with respect to the plan as modified."); *see also* 11 U.S.C. § 1127(c). Here, the School District has not complied (nor attempted to comply) with Section 1125 of the Bankruptcy Code, which would include demonstrating that the Plan, as modified, meets all of the requirements of Section 1125.

19. Finally, the School District cannot evade the requirements of Section 1127 by proposing that the Court alter the Plan's terms to reflect a settlement potentially reached between the School District and Transform. *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 208 B.R. 812 (S.D.N.Y. 1997) (overturning bankruptcy court's approval of settlement between debtor and contract party because settlement modified chapter 11 plan); *Rickel*, 260 B.R. at 677 (a party cannot circumvent Section 1127(b) and modify a plan simply by masking its request as one for alternative relief or otherwise seeking a modification of the confirmation order) (citations omitted). Nor does a bankruptcy court have the ability to modify a plan, sua sponte, or pursuant to its general equitable

---

[6] The School District, as a creditor of the Debtors' estate and who filed a proof of claim(s), is bound by the terms of the Plan. *See In re Frontier Ins. Grp., Inc.*, 585 B.R. 685, 693 (Bankr. S.D.N.Y. 2018) (J. Drain) (noting chapter 11 plan is binding upon debtor's creditors pursuant to statutory and common law claim preclusion).

powers under 11 U.S.C. § 105(a). *Rickel,* 260 B.R. at 678 ("A bankruptcy court cannot exercise its equitable powers outside of the confines of the Bankruptcy Code, or disregard its specific commands.") (citations omitted); *Baker*, 2005 WL 2105802, at *6 (noting that because the court is neither a plan proponent, nor a debtor, it does not have standing to order plan modifications sua sponte). That is exactly what the School District is asking this Court do, including based on a settlement that is not before this Court and is subject to several contingencies. The School District may have reached a settlement in principle with Transform regarding its designation right regarding the EDA Agreement, but the Court's acknowledgement or approval of that agreement cannot serve as the basis to modify the Debtors' Plan and deem the EDA Agreement immediately rejected thereunder. Accordingly, such relief should be overruled.

## **CONCLUSION**

20. For the reasons set forth herein, the Village requests that the Court enter an order denying the School District's Motion in its entirety.

Dated: November 11, 2020         VEDDER PRICE P.C.
       New York, New York

                                 By: */s/ Michael L. Schein*
                                     Michael L. Schein (MS-0241)
                                     1633 Broadway, 31st Floor
                                     New York, New York 10019
                                     Tel: (212) 407-6920
                                     Email: mschein@vedderprice.com

                                 *Counsel to The Village at Hoffman Estates*

10