WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jared R. Friedmann
Jacqueline Marcus
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION,** *et al.*, | : | |
| | : | **Case No. 18-23538 (RDD)** |
| | : | |
| Debtors. [1] | : | **(Jointly Administered)** |

---------------------------------------------------------------x

## DEBTORS' OPPOSITION TO THE MOTION OF COMMUNITY UNIT SCHOOL DISTRICT 300 TO DEEM THE ECONOMIC DEVELOPMENT AGREEMENT REJECTED OR, IN THE ALTERNATIVE, TO COMPEL DEBTORS TO REJECT THE AGREEMENT

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is c/o M-III Partners, LP, 1700 Broadway, 19th Floor, New York, NY 10019

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND ......................................................................................................3

    I.      The EDA Act and EDA Agreement.......................................................3

    II.     Assumption and Assignment of the EDA Agreement to Transform ......................4

    III.    The School District Litigation ...............................................................6

ARGUMENT ..........................................................................................................9

    I.      The Motion Should Be Denied Because The School District Lacks
          Standing. ............................................................................................9

        a.     The School District Lacks Standing Under Bankruptcy Code
              Section 365(d) and Relief is not Justified Under the Governing
              Legal Standards...........................................................................9

        b.     The School District Lacks Standing to Modify the Time for
              Assumption and Rejection Set Forth in the Plan. .....................11

    II.     The Motion Is Unsupported By The Facts.............................................14

CONCLUSION....................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alberts v. Humana Health Plan, Inc. (In re Greater Se. Cmty. Hosp. Corp. I)*,
    327 B.R. 26 (Bankr. D.D.C. 2005) ..........................................................................12

*In re Boylan Int'l, Ltd.*,
    452 B.R. 43 (Bankr. S.D.N.Y. 2011) .......................................................................14

*In re Calpine Corp.*,
    No. 05-60200 (BRL), 2008 WL 207841 (Bankr. S.D.N.Y. Jan. 24, 2008) .............13

*Carroll v. Rafael Galleries, Inc. (In re Altman)*,
    254 B.R. 509 (D. Conn. 2000) ................................................................................17

*In re Dana Corp.*,
    350 B.R. 144 (Bankr. S.D.N.Y. 2006) ................................................................9, 10

*In re Dana Corp.*,
    No. 06-10354 (BRL), 2007 WL 4589331 (Bankr. S.D.N.Y. Dec. 26, 2007) ..........12

*DJS Props., L.P. v. Simplot*,
    397 B.R. 493 (D. Idaho 2008) .................................................................................12

*In re Eastman Kodak Co.*,
    495 B.R. 618 (Bankr. S.D.N.Y. 2013) .....................................................................15

*In re Hawker Beechcraft, Inc.*,
    483 B.R. 424 (Bankr. S.D.N.Y. 2012) .....................................................................10

*In re Indu Craft Inc.*,
    No. 97-44958-RDD, 2011 WL 2619501 (Bankr. S.D.N.Y. July 1, 2011)
    (Drain, J.) ................................................................................................................13

*In re Innkeepers USA Tr.*,
    442 B.R. 227 (Bankr. S.D.N.Y. 2010) .....................................................................17

*In re Midtown Skating Corp.*,
    3 B.R. 194 (Bankr. S.D.N.Y. 1980) .........................................................................10

*Official Comm. of Unsecured Creditors v. Sabine Oil & Gas Corp. (In re Sabine
    Oil & Gas Corp.)*,
    No. 16-CV-2561 (JGK), 2016 WL 4203551 (S.D.N.Y. Aug. 9, 2016) ...................13

*In re Rickel & Assocs., Inc.*,
    260 B.R. 673 (Bankr. S.D.N.Y. 2001) .....................................................................13

*In re Riverside Nursing Home*,
    43 B.R. 682 (Bankr. S.D.N.Y. 1984) ................................................................. 9-10

*In re Worldcom, Inc.*,
    No. 02-13533 (AJG), 2006 WL 898029 (Bankr. S.D.N.Y. Mar. 9, 2006) ............................ 12

**Statutes**

20 ILCS 620/4(g) (2012) ................................................................................. 4

20 ILCS § 620/4.5 (2012) ............................................................................... 4

11 U.S.C. § 365 ........................................................................................ *passim*

11 U.S.C. §§ 704(a)(1), 1107(a) ......................................................................... 17

11 U.S.C. § 1123 ...................................................................................... 5, 12

11 U.S.C. § 1127(b) ................................................................................. 2, 13, 14

Ill. Public Act 097-0636 ................................................................................. 4

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, "**Sears**" or the "**Debtors**"), hereby submit this response in opposition to the *Motion of Community Unit School District 300 to Deem Economic Development Agreement Rejected Pursuant to the Debtors' Confirmed Chapter 11 Plan, or, in the Alternative, to Compel the Debtors to Reject the Agreement* (ECF No. 9061) (the "**Motion**").

## PRELIMINARY STATEMENT

1.    The Court should deny the Motion because Community School District 300 (the "**School District**") plainly lacks standing to seek any of the relief requested. Moreover, the School District has yet again blatantly misrepresented the facts.

2.    The School District seeks an order compelling immediate rejection of the EDA Agreement (as defined herein) pursuant to Section 365(d)(2) of the Bankruptcy Code, but that relief is only available to a party to an executory contract. The only parties to the EDA Agreement are the Debtors and the Village of Hoffman Estates (the "**Village**"), not the School District. Accordingly, the School District lacks standing to seek relief pursuant to Section 365(d)(2).

3.    The School District also lacks standing in connection with its request that the EDA Agreement be "deemed rejected" prior to the deadline set forth in the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors* (ECF No. 4476) (the "**Plan**"), which was confirmed by the Court on October 15, 2019 (ECF No. 5370-4), and gives the Debtors until the Effective Date (as defined in the Plan) to assume or reject executory contracts like the EDA Agreement. Motion ¶ 12; *see also* Plan ¶ 13.1. The School District fails to cite any legal basis for this relief, which effectively seeks modification of the Plan. But, only the "proponent

1

of a plan or the reorganized debtor" has standing to seek such relief under Section 1127(b) of the Bankruptcy Code. The School District is neither.

4.      Contrary the School District's misleading assertions, the Debtors retain significant legal and economic interests in the potentially lucrative EDA Agreement. Under the EDA Agreement, the Debtors had the right to receive annual disbursements of EDA Funds (as defined herein) through 2027, but not *only* that right. The Debtors' other rights under the EDA Agreement (and under the Bankruptcy Code) include the right to assign the EDA Agreement to a third party.

5.      In October 2019, the Debtors settled a dispute with the School District regarding distribution of 2017 EDA Funds, pursuant to which the Debtors relinquished their right to *personally* receive post-2017 EDA Funds (the "**2017 EDA Settlement**"). At the time, the Debtors expected Transform Holdco LLC ("**Transform**") to take assignment of the EDA Agreement, in which case Transform, and not the Debtors, would be eligible to receive future distributions. In connection with the 2017 EDA Settlement, the Debtors did not waive their right to assign the EDA Agreement to another party, nor the right of their assignee to receive EDA Funds. In fact, the 2017 EDA Settlement included an express carve-out for an assignee's right to collect future EDA Funds.

6.      Consequently, if Transform now elects to withdraw its designation of the EDA Agreement for assumption and assignment, the Debtors will have not only the right to assign the EDA Agreement to another party (which would be eligible to receive future distributions), but the obligation to do so in a manner that maximizes value for the estates. The School District's assertion that the Debtors have "no further legal or economic interest in the EDA Agreement" (Motion ¶ 5) is, therefore, demonstrably false.

7.      The School District's claim that the Debtors admitted they have no further interest in the EDA Agreement is likewise false. The School District's ongoing state-court litigation seeks

specific, limited relief, which would not directly affect the Debtors: namely, forfeiture of previously distributed EDA Funds (claims which the School District has already released against the Debtors) and a declaration and injunction regarding distributions of post-2017 EDA Funds (which would affect the Debtors' assignee, but not the Debtors). The Debtors moved to dismiss the state court litigation claims against them because the Debtors have no interest in the outcome of *that case*. The Debtors have never suggested that they have no legal or economic interest in the *EDA Agreement* itself.

8.      For the foregoing reasons, the Debtors respectfully request that the Court deny the Motion and award to the Debtors any other relief the Court deems appropriate.

## BACKGROUND[2]

### I.    The EDA Act and EDA Agreement

9.      In 1989, the Illinois legislature passed the Economic Development Area Tax Increment Allocation Act, 20 ILCS 620/1 et seq. (the "**EDA Act**"), to incentivize Sears to develop and move its corporate headquarters to the Village of Hoffman Estates, Illinois (the "**Village**"). In 1990, in accordance with the EDA Act, Sears and the Village executed an Economic Development Agreement (Friedmann Decl., Ex. 1 at 43-162) (the "**EDA Agreement**"). Under the EDA Act and the EDA Agreement, Sears, as the "Developer," is entitled to annual payment of certain property tax rebates ("**EDA Funds**") as compensation for obligations it incurred in developing the 788-acre Economic Development Area located within the Village, as long as certain requirements continue to be met. The EDA Act and the EDA Agreement remain in effect until 2027, unless terminated

---

[2] For a full summary of the factual background of the EDA Act, the EDA Agreement, and the numerous legal filings by the School District in state and federal courts during the course of these Chapter 11 proceedings, the Debtors refer the Court to the Debtors' *Motion for Turnover of Estate Assets* (ECF No. 2715) (the "**Turnover Motion**") and Reply in support thereof (ECF No. 3161) and the Debtors' Opposition to the School District's *Motion for Relief from the Automatic Stay* (ECF No. 1280). Only those facts which are directly relevant to the Motion are set forth herein.

early. *See* Ill. Public Act 097-0636, at Section 15-5, § 4(g) (amended text), *codified at* 20 ILCS 620/4(g) (2012). The only parties to the EDA Agreement are Sears and the Village; the School District is not a party. *See* EDA Agreement at 1.

10.     As of 2012, Sears had not yet been fully reimbursed for its development costs, and the EDA Act was amended to extend the period of reimbursement for up to 15 more years. *See* Act 0636, at Section 15-5, § 4(g) (amended text). The 2012 Amendment also added a section titled "Recapture," which provides for the Village to reduce the EDA Funds distributed to the Developer, *pro rata*, for any time period in which the Developer failed to maintain 4,250 jobs in the EDA. *See id.* § 4.5 (amended text), *codified at* 20 ILCS § 620/4.5 (2012).

## II.     Assumption and Assignment of the EDA Agreement to Transform

11.     On October 15, 2018 (the "**Commencement Date**"), each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code before this Court. After commencing these Chapter 11 proceedings, the Debtors negotiated and entered into an Asset Purchase Agreement ("**APA**") with Transform and certain of its affiliates on January 17, 2019. *See Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* (ECF No. 2507), Ex. B.

12.     Under the APA, Transform had the right to designate executory contracts for assumption and assignment for up to 60 days after the February 11, 2019 closing date—a period subsequently extended by the Court. *See* ECF Nos. 3008, 3171. In the event Transform later chose to withdraw its designation of an executory contract, the APA did not preclude the Debtors from reevaluating whether to assume or reject that contract after identifying potential third party interest

in the EDA Agreement. Nor did it provide that the contract would automatically be rejected if Transform declined to take an assignment.

13.    On May 2, 2019, Transform designated the EDA Agreement for assumption and assignment in accordance with the APA, thereby allowing it to step into Sears' shoes as the "Developer" under the EDA Agreement, and entitling Transform to all attendant rights. *See* ECF No. 3539. The School District objected to assumption and assignment, arguing, among other things, that the Debtors could not assume and assign the EDA Agreement without first curing the School District's $43 million claim concerning Sears' alleged breach of the EDA Agreement between 2013 and 2017. *See* ECF Nos. 3288, 3783.

14.    On October 15, 2019, the Court confirmed the Debtors' Plan. *See Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors and (II) Granting Related Relief* (ECF No. 5370-4). Among other things, paragraph 13.1 of the Plan provides:

> ***On the Effective Date***, except as otherwise provided in the Plan or Plan Supplement, ***each Executory Contract*** and Unexpired Lease ***not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected*** pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) as of the Effective Date is subject to a pending motion to assume such Unexpired Lease or Executory Contract.

Plan ¶ 13.1 (emphasis added). The Effective Date of the Plan has not yet occurred.

15.    On October 27, 2020—just five days before the Motion was filed—the School District provided the Debtors with a copy of a settlement agreement between the School District and Transform (Friedmann Decl., Ex. 2) (the "**Transform Settlement**"), which conditionally settles claims asserted by the School District against Transform in its ongoing state-court lawsuit in Cook County, Illinois Circuit Court, *Community Unit School District 300, et al. v. Village of Hoffman Estates, et al.*, No. 2018-CH-12683 (Ill. Cir. Ct.) (the "**Illinois Action**"). The Transform

Settlement provides that either (a) the Debtors must voluntarily reject the EDA Agreement, at which point Transform would withdraw its designation of the EDA Agreement for assumption and assignment; or (b) if the Debtors declined to reject the EDA Agreement, the School District 300 would file the instant Motion, and Transform would conditionally withdraw its designation of the EDA Agreement contingent on the Debtors' rejection. *See* Transform Settlement at 8-9.

16.    Notably, under the Transform Settlement, the School District would pay Transform $2.9 million in exchange for abandoning its efforts to assume the EDA Agreement. *Id.* The Transform Settlement offers no value to the Debtors in exchange for their rejection of the EDA Agreement. *See id.*

17.    The Debtors declined to voluntarily reject the EDA Agreement. Five days later, pursuant to the terms of the Transform Settlement, the School District filed the instant Motion.

**III.    The School District Litigation**

18.    Days before the Commencement Date, on October 10, 2018, the School District filed the Illinois Action against the Village and Sears, seeking, among other things, an order prohibiting the Village from distributing 2017 EDA Funds then being held by the Village in its Special Tax Allocation Fund pursuant to the EDA Act and the EDA Agreement. *See* Motion ¶ 14.

19.    On November 12, 2018, the School District filed a *Motion for Relief from the Automatic Stay or, in the Alternative, for Abstention* (ECF No. 652) (the "**Abstention Motion**") before this Court, seeking an order allowing it to prosecute its claims in the Illinois Action. Sears opposed that Motion. *See* ECF No. 1280. On February 28, 2019, the Debtors filed their Turnover Motion, seeking an order compelling turnover of approximately $9.7 million in 2017 EDA Funds being held by the Village. The Village did not oppose the Turnover Motion, but the School District opposed and, in the alternative, requested that the Court abstain from the issues raised therein and allow those issues to be litigated in its Illinois Action.

6

20.     At a hearing on April 18, 2019, this Court granted the School District's abstention request, based upon representations made by the School District's counsel (and disputed by Debtors' counsel) that the Cook County court would be able to adjudicate the matter "within 30 to 60 days" after the hearing, and any appellate proceedings could be completed "in less than four months." Apr. 18, 2019 Hr'g Tr. (ECF No. 5463) at 115:1-19, 158:22-159:18.

21.     Contrary to representations made by the School District's counsel, more than a year and a half later, the Illinois Action has not yet moved past the pleading stage, let alone completed trial-level and appellate proceedings.[3]

22.     On October 23, 2019, the Debtors, the Village, and the School District entered into the 2017 EDA Settlement, pursuant to which the School District agreed to release all claims against the Debtors and the Village with respect to the disputed 2017 EDA Funds, and to withdraw with prejudice any complaint, claim, or other litigation seeking to prevent the Debtors from receiving those Funds. *See Amended Stipulation and Order by and Among the Village of Hoffman Estates, the Debtors, and the Community Unit School District 300 Concerning 2017 EDA Funds Held in the Special Tax Allocation Fund* (ECF No. 5492) (the "**Stipulation and Order**") ¶ 1. The School District also dismissed with prejudice all monetary claims against the Debtors concerning EDA Funds from earlier years. *See id.* The Debtors, for their part, agreed to:

> [R]elinquish any right they may have, in whole or in part, whether asserted or not, known or unknown, with respect to EDA Funds consisting of property taxes levied for tax year 2018 that were extended and collected in calendar year 2019 in the Special Tax Allocation Fund (the "2018 EDA Funds") and otherwise, if applicable, relinquish any rights, claims or interests to any subsequent years' EDA Funds.

---

[3] During an August 2019 status conference, the Cook County court rebuked the School District's counsel for misleading this Court about how quickly the Illinois Action could be resolved. *See* Friedmann Decl., Ex. 3 (Aug. 15, 2019 Hr'g Tr.) at 20:8-21:16 (calling the "30 to 60 day" estimated "completely unrealistic" and characterizing the "notion to lead Judge Drain [into] believing that" as "so far afield."). The Cook County court noted that not only would trial-level proceedings take much longer than School District counsel claimed, but that any appellate process would likely take more than 18 months. *Id.* at 24:15-25:3.

*Id.* ¶ 2. The 2017 EDA Settlement also provided that "nothing in this Stipulation and Order shall waive, extinguish, or otherwise release the rights, if any, of Debtors' assignee to the EDA Agreement, as applicable, to EDA Funds levied for tax year 2018 or for any subsequent year." *Id.* ¶ 18. As reflected in the plain language of the 2017 EDA Settlement, therefore, the Debtors only relinquished their own right to personally receive post-2017 EDA Funds. They did not otherwise relinquish or waive any other rights they might have in the EDA Agreement itself, and the 2017 EDA Settlement specifically carved out the right of any assignee to receive post-2017 EDA Funds. The Debtors also did not concede that the School District's overly-restrictive interpretation of the jobs requirement in the EDA Act's Recapture provision—which underlies all of the School District's legal claims in the Illinois Action and before this Court—was correct.

23.     The School District then amended its complaint in the Illinois Action several more times—most recently in the Fourth Amended Complaint filed July 2, 2020 (Friedmann Decl., Ex. 1). Each time, the School District sought a declaration that Sears failed to comply with the EDA Act's jobs requirement from 2013 to 2017—years for which the School District had already released any claims against the Debtors—and in 2019, a year for which the Debtors had already relinquished any right to collect EDA Funds. *See id.*

24.     The Debtors moved to dismiss the Illinois Action, on the basis that (1) pursuant to the 2017 EDA Settlement, no monetary recovery was (or could be) sought from the Debtors for pre-2017 EDA Funds, and (2) that because the Debtors had relinquished their right to receive any post-2017 EDA Funds, they would not be affected by a declaration or injunction pertaining to post-2017 EDA Funds. *See* Motion, Ex. A (Debtors' *Motion to Dismiss Fourth Amended Complaint*) (ECF No. 9062) ¶¶ 1, 7-12; Motion, Ex. C (Debtors' *Reply in Further Support of Its Motion to Dismiss Fourth Amended Complaint*) (ECF No. 9071, at 34) at 2-4. In short, the Illinois Action

can have no direct effect on the Debtors because the Debtors are not subject to any pre-2017 monetary claims, and because they will not receive post-2017 EDA Funds regardless of whether the School District prevails. There is, therefore, no actual controversy between the School District and the Debtors as to the claims asserted in the Fourth Amended Complaint. The court has not yet ruled on the Debtors' motion to dismiss.

## ARGUMENT

### I.    The Motion Should Be Denied Because The School District Lacks Standing.

25.    As a threshold matter, the Motion should be denied because the School District lacks standing to seek any of the relief requested.

#### a.    The School District Lacks Standing Under Bankruptcy Code Section 365(d) and Relief is not Justified Under the Governing Legal Standards.

26.    The only statutory authority the School District cites for its requested relief is Section 365(d)(2) of the Bankruptcy Code (*see* Motion ¶¶ 27-32), but the School District lacks standing to compel rejection of the EDA Agreement because it is not a party to the agreement.

27.    Section 365(d)(2) provides that "the court, on the request of ***any party to such contract or lease***, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease." The EDA Agreement is a contract between Sears and the Village; the School District is not a party. The School District, therefore, plainly lacks standing to move under Section 365(d)(2). *See In re Riverside Nursing Home*, 43 B.R. 682, 684–85 (Bankr. S.D.N.Y. 1984) (holding that a creditor lacked standing to compel the debtor to assume or reject a lease under Section 365(d)(2), because the creditor was not a party to the lease, and had only been assigned the right to collect rent payments by the debtor's landlord).

28.    Not surprisingly, every single case the School District cites in support of its Section 365(d)(2) argument involved a motion by a ***party*** to the contract at issue. *See In re Dana Corp.*,

9

350 B.R. 144, 145 (Bankr. S.D.N.Y. 2006) (denying motion by the debtors' supplier to compel assumption or rejection of supply contracts to which the movant was a party and setting forth factors to be considered); *In re Hawker Beechcraft, Inc.*, 483 B.R. 424, 425-26 (Bankr. S.D.N.Y. 2012) (motion by licensor of intellectual property to compel assumption or rejection of licensing agreement to which the movant was a party); *In re Midtown Skating Corp.*, 3 B.R. 194, 195-96 (Bankr. S.D.N.Y. 1980) (motion by debtor's landlord to compel assumption or rejection of lease to which movant was a party). This is because "[i]n adopting 11 U.S.C. § 365(d)(2), Congress expressly rejected the concept that any party in interest may compel a debtor to assume or reject an executory contract or a lease . . . . only the other party to the lease or contract has standing to request the court to fix the time for its assumption or rejection." *In re Riverside Nursing Home*, 43 B.R. at 684–85. Accordingly, only the Village—the sole counterparty to the EDA Agreement— has standing under Section 365(d).  Notably, the Village has object to the relief requested in the Motion.  *See Objection of the Village of Hoffman Estates to Motion of Community Unit School District 300 to Deem Economic Development Agreement Rejected Pursuant to Debtors' Confirmed Chapter 11 Plan, or, in the Alternative, to Compel Debtors to Reject the Agreement* (ECF No. 9079).

29.    Even if the School District had standing, however, the factors set forth in *In re Dana* do not justify compelling rejection of the EDA Agreement here. The School District's argument that the fifth *Dana* factor justifies immediate rejection because Debtors have had "sufficient time to appraise [their] financial situation and the potential value of  the EDA Agreement" (Motion ¶ 35) is absurd; the Debtors learned of Transform's contingent intent to withdraw designation of the EDA Agreement just ***five days*** before the Motion was filed. *See* ¶¶ 15-17 *supra*.

30.     Similarly meritless is the School District's argument that the balance of harms justifies immediate rejection. *See* Motion ¶¶ 36-38. The School District's Motion, if granted, would deprive the Debtors of their right to explore whether they can monetize their rights under the EDA Agreement by finding a new assignee. That would in turn deprive the Debtors of a possible source of additional funds that can be used to fund distributions to creditors. The right to receive distributions pursuant to the EDA Agreement indisputably has significant value; indeed, the School District is willing to pay millions of dollars to Transform to give up assumption and assignment of the EDA Agreement, in an effort to terminate the EDA Agreement altogether. By contrast, the School District and other taxing districts will face no material harm if the Court enforces the terms of the Plan by giving the Debtors until the Effective Date to assume or reject the EDA Agreement. The Village will continue to collect and hold any EDA Funds in its Special Tax Allocation Funds, which will remain available for distribution pending the resolution of the Illinois Action.

31.     The School District's Motion should, therefore, be denied both because the School District lacks standing under Section 365(d)(2), and because, in any event, the School District has not demonstrated that such relief is warranted.

**b.      The School District Lacks Standing to Modify the Time for Assumption and Rejection Set Forth in the Plan.**

32.     The School District fails to cite any statutory authority or case law supporting its request that the Court deem the EDA Agreement rejected. *See* Motion ¶¶ 33, 40. In any event, because the requested relief would modify the Plan by shortening the Debtors' time to assume or reject executory contracts as provided under the Plan, it lacks standing to do so.

33.     The Plan provides that on the Effective Date, executory contracts not previously rejected, assumed, or assumed and assigned will be deemed automatically rejected, unless subject

to a pending motion to assume. *See* Plan ¶ 13.1. The Effective Date has not yet occurred, and neither the Plan nor the APA requires the Debtors to automatically reject an executory contract if—as proposed here—the contract was designated for assumption and assignment by Transform, but Transform subsequently withdraws that designation. *See* ¶¶ 11, 14 *supra*. Accordingly, pursuant to the Plan, the Debtors have until the Effective Date to assume and assign the EDA Agreement.

34.    Section 1123 of the Bankruptcy Code provides that a chapter 11 plan "may— subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section." 11 U.S.C. § 1123(b)(2). Under Section 1123, a chapter 11 plan can provide for post-confirmation assumption or rejection of executory contracts, as the Plan does here. *See, e.g.*, *In re Dana Corp.*, No. 06-10354 (BRL), 2007 WL 4589331, at *18, *27 (Bankr. S.D.N.Y. Dec. 26, 2007) (confirming plan that allowed the debtor to reject contracts post-confirmation if disputes over cure amounts were not decided in its favor, and which deemed contracts rejected except as provided in the plan, contract procedures, or "as requested in any motion filed on or prior to the Effective Date"); *cf. In re Worldcom, Inc.*, No. 02-13533 (AJG), 2006 WL 898029, at *2-4 (Bankr. S.D.N.Y. Mar. 9, 2006) (denying *nunc pro tunc* rejection of an executory contract post-confirmation because "the Plan itself has not provided the Debtors with the authority to seek post-confirmation rejection of the Alleged Contract, as is required by Section 1123(b)(2) of the Bankruptcy Code," and distinguishing cases in which the plan provided such authority).[4]

---

[4] *See also DJS Props., L.P. v. Simplot*, 397 B.R. 493, 498-99 (D. Idaho 2008) (holding that under Section 1123(b)(2), debtors may assume or reject an executory contract after plan confirmation so long as the plan provides a mechanism for doing so, and collecting cases); *Alberts v. Humana Health Plan, Inc. (In re Greater Se. Cmty. Hosp. Corp. I)*, 327 B.R. 26, 34 (Bankr. D.D.C. 2005) ("The Bankruptcy Code permits questions of assumption or rejection under a plan to be determined after confirmation of a plan calling for such post-confirmation determination.").

35.    The School District concedes, as it must, that the Plan "has functionally extended" the deadline for assumption and assignment. Motion ¶ 30. Yet, the School District seeks to have the Court deem the EDA Agreement rejected before the Effective Date notwithstanding the clear and unambiguous terms of paragraph 13.1 of the Plan. *Id*. The School District cites no statutory basis for this relief, nor does it cite any cases in which a court was asked to—must less agreed to— shorten the debtor's time for assumption or rejection of an executory contract as set forth in a confirmed plan.

36.    The reason for this is simple: under Section 1127(b) of the Bankruptcy Code, only "[t]he ***proponent of a plan or the reorganized debtor*** may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan." 11 U.S.C. § 1127(b) (emphasis added); *see also Official Comm. of Unsecured Creditors v. Sabine Oil & Gas Corp. (In re Sabine Oil & Gas Corp.)*, No. 16-CV-2561 (JGK), 2016 WL 4203551, at *4 (S.D.N.Y. Aug. 9, 2016) ("An objector to the plan does not have the power to seek a material modification to the confirmed plan."); *In re Calpine Corp.*, No. 05-60200 (BRL), 2008 WL 207841, at *6 (Bankr. S.D.N.Y. Jan. 24, 2008) (objecting shareholders were not proponents of a confirmed plan, and so lacked standing to seek modification). The School District, which is not a proponent of the Plan, lacks standing to seek modification of the Plan.

37.    To be sure, the School District does not describe its requested relief as a modification of the Plan. But, courts—including this Court—routinely look past a movant's characterization of relief sought, and reject motions that effectively seek impermissible modification of a confirmed chapter 11 plan regardless of how those motions are styled. *See, e.g.*, *In re Indu Craft Inc.*, No. 97-44958-RDD, 2011 WL 2619501, at *3 (Bankr. S.D.N.Y. July 1, 2011) (Drain, J.) (noting that Section 1127(b) "cannot be circumvented" by disguising a request

13

to modify the plan itself as a request to modify the confirmation order or under Bankruptcy Rule 9024); *aff'd*, No. 11 CIV. 5996 JMF, 2012 WL 3070387 (S.D.N.Y. July 27, 2012), *aff'd*, 580 F. App'x 33 (2d Cir. 2014); *In re Sabine Oil & Gas Corp.*, 2016 WL 4203551, at *3 (rejecting movant's characterization of its motion as one for a "stay," finding that it effectively sought to modify the plan); *In re Calpine Corp.*, 2008 WL 207841, at *6 ("While the Objecting Shareholders colloquially refer to the relief they seek in the Stay Motion as 'limited,' in reality they seek to materially modify the agreed to and confirmed Plan."); *In re Rickel & Assocs., Inc*., 260 B.R. 673, 677 (Bankr. S.D.N.Y. 2001) (denying a motion that ostensibly sought to "modify the Confirmation Order" because a party "cannot circumvent § 1127(b) and change the plan simply by calling its request a motion to modify the confirmation order").

38.     A party seeks "modification" of a plan when it seeks "an alteration of the legal relationships among the debtor and its creditors and other parties in interest," or "when the change to the plan affect[s] the legal relationship between them." *In re Boylan Int'l, Ltd*., 452 B.R. 43, 47 (Bankr. S.D.N.Y. 2011) (holding that a liquidating trustee's motion to extend the life of the debtor's liquidating trust for an additional two years was "a 'modification' for purposes of section 1127(b) because creditors will not benefit from the payment of proceeds for a further extended period of time"). Here, the School District seeks to amend the Plan deadline for assumption or rejection of executory contracts, which would have the effect of depriving the Debtors of their right to find a new assignee for the EDA Agreement. As such, the Motion improperly seeks post-confirmation plan modification, and should be denied based on the School District's lack of standing under Section 1127(b).

## II.     The Motion Is Unsupported By The Facts.

39.     The Motion also should be denied because it is premised on blatant misrepresentations of fact. The School District's entire argument hinges on the false assertion that

the Debtors admitted that they relinquished their economic and legal rights under the EDA Agreement. Motion ¶ 33. That is not the case at all.

40.     It is undisputed that *one of* Sears's rights under the EDA Agreement, as Developer, was to receive annual distribution of EDA Funds, provided certain criteria are satisfied, through 2027. *See* ¶¶ 9-10 *supra.* However, Sears possesses other rights as Developer under the EDA Agreement, including, *inter alia*, the right to assign the contract to a third party.[5]

41.     The Debtors only relinquished their own right to receive future EDA Funds in the 2017 EDA Settlement. *See* Stipulation and Order ¶ 2 (the Debtors relinquish their rights to be paid "***EDA Funds*** consisting of property taxes levied for tax year 2018 . . . and any subsequent years' ***EDA Funds***") (emphasis added). The 2017 EDA Settlement expressly protected the right of the Debtors' assignee to receive distributions from future EDA Funds. *See id.* ¶ 18; *see also* ¶ 22 *supra.*

42.     At the time of the 2017 EDA Settlement, the Debtors expected that Transform would be taking over the rights and obligations of the Developer under the EDA Agreement, including the right to receive future EDA Funds. Transform also shared this understanding, and stated that to the extent the Debtors assigned the EDA Agreement to Transform, "the EDA Funds levied after the Closing will constitute 'Acquired Assets' under the APA and become property of Transform. Accordingly, nothing in the [2017 EDA Settlement] is capable of waiving,

---

[5] The EDA Agreement itself sets forth specific circumstances under which the Developer's rights and obligations may be assigned to another party. *See* EDA Agreement Art. 18.1. Outside of bankruptcy, these provisions impose some limits on Sears' ability to assign the EDA Agreement. However, Section 365(f) of the Bankruptcy Code provides that debtors may assign executory contracts even if those contracts restrict or prohibit assignment. *See* 11 U.S.C. § 365(f)(1); *In re Eastman Kodak Co.*, 495 B.R. 618, 623 (Bankr. S.D.N.Y. 2013) ("It is well-accepted that the right to override an anti-assignment provision is one of a debtor's most valuable rights."). Accordingly, the Debtors may assign the EDA Agreement to a third party, notwithstanding any restrictions contained in the contract. Moreover, as the counterparty to the EDA, the Village could simply waive and/or modify any such restrictions in order to allow for an assignment to a third party. *See* EDA Agreement Art. 21. The School District would have no ability to interfere with or prevent such an assignment.

extinguishing or otherwise releasing Transform's rights to such funds." *Limited Objection and Reservation of Rights of Transform to Proposed Settlement* (ECF No. 5352) ¶ 9. As a result, the Debtors' relinquishment of any right to be paid future EDA Funds was largely academic; so long as Transform was going to assume the EDA Agreement, it was Transform, not the Debtors, that stood to receive post-assignment EDA Funds.

43.     The positions that the Debtors have taken in the Illinois Action are entirely consistent with the foregoing. The Illinois Action seeks a declaration that Sears was not in compliance with the requirements to receive EDA Funds prior to 2017, but the School District cannot seek monetary relief or disgorgement from Sears under the terms of the 2017 EDA Settlement. Similarly, the School District in the Illinois Action seeks to prevent the distribution of post-2017 EDA Funds to Transform—relief which would not directly affect the Debtors because they do not stand to receive post-2017 EDA Funds regardless of the outcome of the Illinois Action. Accordingly, the Debtors argued in the Illinois Action that they have "no legal interest *in this case*." *See* Motion to Dismiss ¶ 1 (emphasis added); *see also* Debtor's Reply in Support of Motion to Dismiss at 2, 3 ("Sears' mere status as a party to the EDA Agreement does not constitute a substantial interest *in this case*," and "Plaintiff's argument here is . . . devoid of any citation to law or analysis that would demonstrate that resolution of *this case* would impact a substantial interest of Sears.") (emphasis added).

44.     Contrary to the School District's mischaracterization, the Debtors' statements in the Illinois Action do not constitute an admission that the Debtors have no interest in the EDA Agreement. Motion ¶ 33; *see also Supplement to the Motion* (ECF No. 9071) at 2.[6] The Illinois

---

[6] Similarly, Sears' compliance with the EDA Act and the EDA Agreement is precisely the question which the Debtors sought to have this Court resolve in their Turnover Motion, which at the School District's insistence, the Court abstained from addressing and instead certified to the Cook County Court.

Action does not implicate the Debtors' right to assign the EDA Agreement to a third party in any way. Nor was that right implicated by the Stipulation and Order.

45.      If Transform were to withdraw its designation of the EDA Agreement, the Debtors would have the right to identify another party that might be willing to pay to have the EDA Agreement assigned to it pursuant to Section 365 of the Bankruptcy Code.[7]  Alternatively, if the School District is willing to pay Transform millions of dollars to cause the EDA Agreement to be terminated via rejection by the Debtors, then the Debtors have the right to explore whether an alternative arrangement is available that would provide some recovery for the Debtors' estates. Having determined not to take an assignment of the EDA Agreement, it is unclear on what basis, if any, Transform should be entitled to a multi-million dollar payment.

46.      On the other hand, it is axiomatic that the Debtors have a fiduciary duty to their creditors to maximize the value of all of their assets, which include the EDA Agreement. *See In re Innkeepers USA Tr.*, 442 B.R. 227, 235 (Bankr. S.D.N.Y. 2010) ("In a bankruptcy case, it is 'Bankruptcy 101' that a debtor and its board of directors owe fiduciary duties to the debtor's creditors to maximize the value of the estate, and each of the estates in a multi-debtor case."); *Carroll v. Rafael Galleries, Inc. (In re Altman)*, 254 B.R. 509, 515 (D. Conn. 2000) ("Under the Bankruptcy Code, the debtor-in-possession serves in place of the trustee and must seek to maximize assets of the Chapter 11 estate"); *see also* 11 U.S.C. §§ 704(a)(1), 1107(a) (debtor-in-possession has the duty to collect and reduce to money the property of the estate).

47.      In short, the School District's assertions that the Debtors lack any legal interest in the EDA Agreement are completely baseless and do not justify the relief requested in the Motion.

---

[7] As explained in detail in the Debtors' *Motion for Turnover of Estate Property* and reply in support thereof, the EDA Act gives the Developer the right to receive EDA Funds so long as 4,250 jobs are maintained within the Economic Development Area, whether or not they are direct employees of the Developer. As such, the EDA Agreement could carry significant potential value for another assignee.

## CONCLUSION

For the foregoing reasons, the Debtors respectfully request that the Court deny the Motion

and award the Debtors such other and further relief the Court deems appropriate.

Dated: November 11, 2020
   New York, New York

        */s/ Jared R. Friedmann*
        WEIL, GOTSHAL & MANGES LLP
        767 Fifth Avenue
        New York, New York  10153
        Telephone:  (212) 310-8000
        Facsimile:  (212) 310-8007
        Jared R. Friedmann
        Jacqueline Marcus
        Sunny Singh

        *Attorneys for Debtors*
        *and Debtors in Possession*