Hearing Date and Time:  Thursday, December 10, 2020 10:00 AM (Eastern Time)
Objection Date and Time:  Thursday, December 3, 2020 4:00 PM (Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jared R. Friedmann
Jacqueline Marcus
Jennifer Brooks Crozier

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                                  :
**In re**                                                         :        **Chapter 11**
                                                                  :
**SEARS HOLDINGS CORPORATION,** *et al.,*                         :        **Case No. 18-23538 (RDD)**
                                                                  :
        **Debtors.**[1]                                           :        **(Jointly Administered)**
                                                                  :
-------------------------------------------------------------------x

## NOTICE OF HEARING ON
## MOTION OF DEBTORS TO COMPEL TURNOVER OF ESTATE PROPERTY

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 130 W. 44nd St., 17th Fl., New York, NY 10036.

**PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "**Motion**"), of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), for entry of an order compelling turnover of estate funds, pursuant to sections 541 and 542 of chapter 11 of title 11 of the United States Code, section 157 of chapter 6 of title 28 of the United States Code, and section 1334 of chapter 85 of title 28 of the United States Code, 28 U.S.C. §§ 157 and 1334, as more fully set forth in the Motion, will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 118, 300 Quarropas Street, White Plains, New York, 10601-4140 (the "**Bankruptcy Court**") on **Thursday, December 10, 2020 at 10:00 a.m. (Eastern Time)** (the "**Hearing**"), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (the "**Objections**") to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 (ECF No. 405), so as to be filed and received no later than **Thursday, December 3, 2020 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

2

**PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

Dated: November 19, 2020
        New York, New York

/s/ Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Jared R. Friedmann
Jacqueline Marcus
Jennifer Brooks Crozier

*Attorneys for Debtors*
*and Debtors in Possession*

WEIL:\97704406\24\73217.0004

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jared R. Friedmann
Jacqueline Marcus
Jennifer Brooks Crozier

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
|  |  |
|---|---|
| **In re** : |  |
| : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION**, *et al.*, : |  |
| : | **Case No. 18-23538 (RDD)** |
| : |  |
| **Debtors.**[1] : | **(Jointly Administered)** |
| : |  |
| : |  |

-------------------------------------------------------------x

## MOTION OF DEBTORS TO COMPEL TURNOVER OF ESTATE PROPERTY

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 130 W. 44nd St., 17th Fl., New York, NY 10036.

# TABLE OF CONTENTS

**Page**

I.   Preliminary Statement ................................................................................................1

II.  Background ................................................................................................................2

    A.   The Debtors' Chapter 11 Cases and the Asset Purchase Agreement ......................2

    B.   The APA Litigation and the First and Second APA Settlement Agreements ..........3

    C.   The Litigation and Insurance Claims Dispute ........................................................4

    D.   The Debtors' Efforts to Recover the Proceeds of Their Litigation
        and Insurance Claims ............................................................................................5

    E.   The Purported Bases Upon Which Transform Now Refuses Either to
        Provide Information Concerning the Debtors' Closed Claims or Turn Over
        the Proceeds of the Debtors' Closed Claims ..........................................................7

III. Relief Requested ......................................................................................................10

IV.  Argument and Authorities ........................................................................................10

    A.   This Court Has the Authority to Compel Transform to Turn Over
        the Proceeds of the Debtors' Closed Claims ........................................................10

    B.   The Proceeds of the Debtors' Closed Claims Are Estate Property Subject
        to Turnover............................................................................................................11

        1.   Section 17(b) of the Second APA Settlement Agreement Does Not
            Release Transform from Its Obligation to Transfer to the Debtors
            the Proceeds of Any of the Debtors' Closed Claims It Has
            Recovered. ....................................................................................................12

        2.   The Debtors Did Not, in Section 18(a) of the Second APA
            Settlement Agreement, Waive Their Right to Recover the Proceeds
            of Any of the Debtors' Closed Claims from Transform. ............................14

V.   Conclusion ..............................................................................................................16

WEIL:\97704406\24\73217.0004

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Geron v. Peebler (In re Pali Holdings, Inc.)*,
    488 B.R. 841 (Bankr. S.D.N.Y. 2013)..............................................................................10, 11

*Kramer v. Mahia (In re Khan)*,
    No. 10-46901-ESS, 2014 WL 10474969 (E.D.N.Y. Dec. 24, 2014).......................................11

*In re Pali Holdings*,
    488 B.R. ................................................................................................................................11

*Zazzali v. Minert (In re DBSI, Inc.)*,
    468 B.R. 663 (Bankr. D. Del. 2011) ......................................................................................11

**Statutes**

11 U.S.C. §..................................................................................................................................11

11 U.S.C. § 362(a)(3)...................................................................................................................10

11 U.S.C. § 541(a) .......................................................................................................................10

11 U.S.C. § 542.............................................................................................................................10

11 U.S.C. § 542(a) ..................................................................................................................10, 16

28 U.S.C. §§ 157 and 1334 ..........................................................................................................11

28 U.S.C. §§ 157(a)-(b) and 1334(b)............................................................................................1

28 U.S.C. § 157(b) .........................................................................................................................2

28 U.S.C. § 157(b)(2)(A) .............................................................................................................11

28 U.S.C. § 157(b)(2)(E) .............................................................................................................11

28 U.S.C. §§ 1408 and 1409 ....................................................................................................11, 2

United States Code title 11 chapter 11 sections 541 and 542 ............................................. *passim*

United States Code title 28 chapter 6 section 157 ........................................................................2

Bankruptcy Code Section 541 ......................................................................................................10

ii

**Other Authorities**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 221 (1st ed. 2012) ........................................................................................................13

WEIL:\97704406\24\73217.0004

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), seek an order from this Court compelling the turnover of any and all proceeds of certain litigation and insurance claims belonging to the Debtors under the APA (as defined below) that Transform Holdco LLC ("**Transform**") received and is holding in violation of the APA, the Second APA Settlement Agreement (as defined below), and the automatic stay, and, in support of this motion, respectfully represent as follows:

## I.    Preliminary Statement

1.    On November 22, 2019, the Debtors filed with this Court a motion for turnover of estate property which, among other things, described how Transform had improperly deposited into its own bank accounts a number of property-tax refund checks made payable to Debtor entities, and how Transform was nevertheless refusing to turn over related amounts to the Debtors.  *See generally Motion of Debtors to Compel Turnover of Estate Property* [Docket Nos. 6084, 6085].  At the hearing on that motion, the Court made clear that, "if Transform just somehow said we're Sears and didn't have a right to say, we're Sears, then, yes, the money should be paid over."  *Dec. 13, 2019 Hr'g Tr.* [Docket No. 6244] 81:14-82:11; *see also id.* at 84:10-14 ("[A]ny refund that's made out to a debtor entity where Transform didn't buy the stock and . . . unless Transform can show a right to cash the check, it shouldn't have gone into the cash management system.  So that should be turned over.").  The Parties later settled the dispute in connection with the First APA Settlement Agreement (defined below).

2.    Almost one year later to the day, the Debtors again seek an order from this Court compelling Transform to turn over estate property.  No, it's not déjà vu.  Transform has,

again, deposited into its own bank accounts checks (this time, the proceeds of litigation and insurance claims belonging to the Debtors under the APA) made payable to Debtor entities. Transform, again, refuses to turn over related amounts to the Debtors.  And Transform, again, relies upon a baseless and illogical argument to justify its refusal to turn over funds that plainly belong to the Debtors' estate.

3.      This must stop.  Transform cannot continue, time and again, to convert the Debtors' property in contravention of the APA and the automatic stay.  The Debtors respectfully request that the Court put an end to Transform's wrongful conduct and enter an order (i) compelling Transform to turn over estate property and (ii) granting the Debtors such other and further relief, at law or in equity, to which they are entitled, including but not limited to their attorneys' fees incurred as a result of Transform's willful violation of the automatic stay.

## II.    Background

### A.    The Debtors' Chapter 11 Cases and the Asset Purchase Agreement

4.      On October 15, 2018, each of the Debtors filed voluntary petitions under chapter 11 of the United States Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), commencing a process to sell all or substantially all of the Debtors' assets and operations.

5.      On February 8, 2019, the Bankruptcy Court entered an *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Leases in Connection Therewith, and (IV) Granting Related Relief* [Docket No. 2507], approving the sale of substantially all of the assets of the Debtors to Transform (the "**Sale Transaction**") pursuant to that certain Asset Purchase Agreement dated as of January 17, 2019 by and among Transform and

the Debtors party thereto (as it has and may be amended, modified or otherwise waived, the "**APA**"). The Sale Transaction closed on February 11, 2019 at 12:01 a.m. Eastern Time. APA § 4.1.

### B.    The APA Litigation and the First and Second APA Settlement Agreements

6.    The Parties began litigating disputes related to the APA shortly after the Sale Transaction closed. They litigated that first round of complex APA-related disputes for almost a full year and, in the process, filed several lengthy motions, appeared for several hours-long hearings before the Bankruptcy Court, transmitted voluminous correspondence, and engaged in numerous calls and meetings (the "**APA Litigation**").

7.    Finally, on January 10, 2020, the Parties entered into a Settlement Agreement (the "**First APA Settlement Agreement**") pursuant to which the parties agreed, among other things, to fully and finally resolve those disputes comprising the APA Litigation that had not already been resolved by court order, ruling, or interim settlement. The Debtors moved the Bankruptcy Court for entry of an order pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure approving the First APA Settlement Agreement [Docket No. 6327] and, after notice and a hearing, the Bankruptcy Court entered an order granting the requested relief on January 28, 2020 [Docket No. 6413].

8.    Soon after the Bankruptcy Court approved the First APA Settlement Agreement, the Parties identified and began discussing a series of issues concerning the ownership, under the APA, of the right, title, and interest in or to several assets. *See Declaration of Brian Griffith in Support of the Debtors' Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019(a) For Entry of an Order Approving Second APA Settlement Agreement with Transform Holdco LLC* [Docket No. 8446] ("**Griffith Decl.**") ¶ 4. Although neither Party brought a related action in the Bankruptcy Court, the Parties, their counsel, and their advisors engaged in a diligent

3

effort over the course of several months to resolve these issues. *See id.* ¶ 6. After several rounds

of negotiation, the Parties arrived at an agreement concerning the principal terms of a second APA-

related settlement. *Id.* ¶ 7.

9.    On September 17, 2020, the Parties entered into a Settlement Agreement

(the "**Second APA Settlement Agreement**," or "**Agreement**") pursuant to which the Parties

agreed, among other things, to fully and finally resolve the above-described issues (as defined in

the Second APA Settlement Agreement, the "**Additional APA Disputes**"). The Debtors moved

the Bankruptcy Court for entry of an order pursuant to Rule 9019(a) of the Federal Rules of

Bankruptcy Procedure approving the Second APA Settlement Agreement [Docket No. 8445] and,

after notice and a hearing, the Bankruptcy Court entered an order granting the requested relief on

October 16, 2020 [Docket No. 9025] (the "**Order Approving the Second APA Settlement**

**Agreement**").

C.    **The Litigation and Insurance Claims Dispute**

10.    One of the Additional APA Disputes concerned the ownership, under the

APA, of the right, title, and interest in, to, or under a number of litigation and insurance claims (as

defined in the Second APA Settlement Agreement, the "**Litigation and Insurance Claims**"),

many of which predated even the commencement of the Debtors' chapter 11 cases. Transform

first brought the Litigation and Insurance Claims to the Debtors' attention in May 2020.

*Declaration of Jennifer Brooks Crozier in Support of Debtors' Motion to Compel Turnover of*

*Estate Property* filed substantially concurrently herewith ("**Crozier Decl.**") at Ex. A (May 20,

2020 Letter from L. Barefoot to J. Friedmann Re: *In re Sears Holdings Corp. et al.* (the "**Barefoot**

**Letter**")).

11.    The Barefoot Letter (i) stated that "Transform's property claims department

ha[d] been managing a number of affirmative litigation and insurance claims related to certain

WEIL:\97704406\24\73217.0004

properties;" (ii) attached schedules of those properties (Appendices A and B); and (iii) contended

that the "Debtors were entitled to ten *closed claims* listed in Appendix A *for a total recovery of*

*$614,018.94*, and fifteen *pending claims* listed in Appendix B . . . that Transform's property claims

department estimate[d would] yield total recovery of $509,979.00." *Id.* at 1 (emphasis added).

According to Transform, it was entitled to the remaining ninety-five claims. *See generally id.* The

Barefoot Letter distinguished between "closed claims" (listed in Appendix A) (the "**Closed**

**Claims**") and pending, or "open," claims (listed in Appendix B). *See id.* at App. A, B. Appendix

A indicated the "Actual Recovery" for each of the Closed Claims. *See id.* at App. A.

12.     The Parties ultimately agreed in the Second APA Settlement Agreement

that the Debtors were entitled to thirty-two (32) Litigation and Insurance Claims under the APA—

fourteen (14) of which were Closed Claims (the "**Debtors' Closed Claims**")—and that Transform

was entitled to eighty-eight (88) Litigation and Insurance Claims. Based on information provided

by Transform through counsel, the aggregate amount collected by Transform in respect of the

Debtors' Closed Claims totals $676,688.73. *See* Crozier Decl. ¶ 7 and Ex. E. Specifically, the

Parties agreed as follows:

> The Parties acknowledge and agree that any and all rights, title, or interest in, to, or
> under the Litigation and Insurance Claims listed in Category 1 of Schedule 1
> attached hereto belong to the Debtors under the APA. Transform releases, waives,
> and relinquishes to the Debtors any and all right, title, and interest in, to, or under
> each of the Litigation and Insurance Claim[s] listed in Category 1.

Second APA Settlement Agreement § 10(a), Schedule 1.

D.    **The Debtors' Efforts to Recover the Proceeds of Their Litigation and
      Insurance Claims**

13.     After entry of the Order Approving the Second APA Settlement Agreement,

the Debtors (by and through their financial advisor, M-III Partners ("**M-III**")) immediately

embarked upon an effort to recover the proceeds of their Litigation and Insurance Claims,

5

including the Debtors' Closed Claims, that Transform had acknowledged and agreed belonged to the Debtors under the APA. *See Declaration of William Gallagher in Support of Debtors' Motion to Compel Turnover* filed substantially concurrently herewith ("**Gallagher Decl.**") ¶ 7.

14.    But the Debtors quickly discovered, to their dismay, that Transform had actually recovered—and deposited into its bank accounts—the proceeds of at least some of the Debtors' Closed Claims. *Id.* ¶ 8. For example, on or around October 21, 2020, M-III confirmed that Transform had established a retainer account with one local counsel using the proceeds of the Titusville claim (the "**Titusville Retainer**"). *Id.* ¶ 9. M-III also learned, however, that (i) the Titusville Retainer had been used to pay for certain of *Transform's* legal expenses; (ii) Transform had deposited into its own bank accounts a $252,391 check from local counsel made out to Sears Roebuck & Co. (a Debtor entity) comprising a material portion of the proceeds of the Titusville claim (the "**Titusville Proceeds**"); and (iii) Transform had deposited into its bank accounts a $12,950 check from local counsel made out to Kmart Corporation (another Debtor entity) comprising the remaining proceeds of the St. Joseph claim (the "**St. Joseph Proceeds**"). *Id.* The attorney who has been retained as an ordinary course professional to litigate both cases, Mr. Robert Wilens of Thompson Brody & Kaplan, LLP,[1] provided information to M-III which evidenced that certain funds from the Titusville Proceeds and the St. Joseph Proceeds were deposited into Transform's bank accounts. *Id.* M-III obtained copies of two checks from Mr. Wilens which were drawn on his corporate trust account. The checks were the payments from the Titusville Proceeds and the St. Joseph Proceeds, and were made out to Sears Roebuck and Kmart, respectively, but the deposit account information included with the copies of the checks indicates that the checks were

---

[1] Mr. Wilens has been retained in accordance with the *Amended Order Authorizing Debtors to Employ Professionals Used in the Ordinary Course of Business Nunc Pro Tunc to the Commencement Date* (the "**OCP Order**") (ECF No. 2560). Thompson Brody & Kaplan's retention paperwork is filed at ECF No. 1036 in accordance with the OCP Order.

WEIL:\97704406\24\73217.0004

deposited into a Transform bank account. *Id.* It is clear that Transform employees received the checks from Mr. Wilens and deposited them into a Transform bank account rather than sending them to M-III for deposit into a Debtor bank account. *Id. See* Gallagher Decl. at Ex. A (copies of the checks with the deposit account information).

15.     M-III continued to investigate the disposition of the Debtors' Closed Claims as well as the distribution of any proceeds related to those Claims. *Id.* ¶ 10. Because the Debtors had transferred their books and records to Transform in connection with the Sale Transaction and because Transform's property claims department had been managing all of the Litigation and Insurance Claims post-Closing, Transform was M-III's primary (if not sole) source for such information. *Id.*

16.     On or around November 4, 2020, M-III contacted Transform for information concerning four of the Debtors' Closed Claims. *See id.* ¶ 11. Transform responded that it could no longer provide M-III with information concerning the Debtors' Closed Claims and that the Debtors should contact counsel for Transform regarding the Claims. *See id.*; *see also*, Gallagher Decl. at Ex. B (a copy of email correspondence). After that, Transform refused to provide M-III with any information concerning the Debtors' Closed Claims. *See id.* ¶ 12.

**E.      The Purported Bases Upon Which Transform Now Refuses Either to Provide Information Concerning the Debtors' Closed Claims or Turn Over the Proceeds of the Debtors' Closed Claims**

17.     On November 5, 2020, counsel for the Debtors emailed counsel for Transform for information concerning the four aforementioned Closed Claims. *See* Crozier Decl. at Ex. B (Nov. 5, 2020 Email from J. Crozier to S. Levander, et al. Re: In re Sears Holdings Corp.). Counsel for Transform responded shortly thereafter, asking to discuss the issue via telephone. *See id.* at Ex. B (Nov. 5, 2020 Email from S. O'Neal to J. Crozier, et al. Re: In Re Sears Holdings Corp., No. 18-25358 (Bankr. S.D.N.Y.)). Counsel for the Parties discussed the dispute that

7

evening and, the next day, counsel for the Debtors sent follow-up email correspondence to counsel for Transform which, among other things, (i) memorialized counsel's discussion; (ii) listed each of the Debtors' Closed Claims (by store number, store location, recovery, and date of loss); (iii) reiterated the Parties' agreement with respect to the Litigation and Insurance Claims; and (iv) requested that Transform confirm "(1) that Transform personnel will continue to provide the Debtors and their advisors with any information in their possession, custody, or control concerning, among other things, the disposition of the [Debtors'] Closed Claims and the distribution of any and all proceeds associated with the [Debtors'] Closed Claims and (2) that, to the extent Transform recovered the proceeds of any or all these Debtor-owned Closed Claims, Transform will promptly turn those proceeds over to the Debtors pursuant to the APA, the Second APA Settlement Agreement, and the provisions of the Bankruptcy Code." *Id.* at Ex. C (Nov. 6, 2020 Email from J. Crozier to S. O'Neal, S. Levander Re: Sears - Litigation and Insurance Claims/Closed Claims).

18.     Transform responded on November 10, 2020 and asserted that it had "no obligation to make any payment" to the Debtors "with regard to the Closed Claims." *Id.* at Ex. C (Nov. 10, 2020 Email from S. Levander to J. Crozier, et al. Re: Sears – Litigation and Insurance Claims/Closed Claims (the "**Levander Email**")).  Transform also asserted that it would not even provide information to the Debtors concerning the Debtors' Closed Claims unless the Debtors agreed to reimburse Transform for providing that information pursuant to the Transition Services Agreement between the Parties and Section 9(b) of the Second APA Settlement Agreement. *Id.* Transform predicated its continued failure and refusal to turn over the proceeds of the Debtors' Closed Claims upon two arguments. *Id.*

19.     First, Transform argued that, because the Parties agreed in Section 17(b) of Second APA Settlement Agreement that, for the reasons set forth in that provision (specifically, the netting of each Party's agreed-upon payments), "[n]either Party [would] be required to make any cash payment to the other Party ***pursuant to [the] Agreement***, except in connection with the Vornado Claims, the Altaquip Claims, and the Bayamon/Panama City Claims," Transform was not required to turn over the proceeds of the Debtors' Closed Claims to the Debtors, *id.* (emphasis added), notwithstanding the fact that the Parties agreed that those Claims belonged to the Debtors ***under the APA***.

20.     Second, Transform argued that the Debtors released their right to recover on the Debtors' Closed Claims in Section 18(a) of the Second APA Settlement Agreement, in which the Parties released, waived, and relinquished any and all claims "that any of the Parties have or may have against any of the other Parties . . . under, arising out of or in connection with the Additional APA Disputes," *id.*, notwithstanding the fact that the Parties agreed, in Section 18(b) of the Second APA Settlement Agreement, that "nothing in [the] Agreement ***(including, without limitation, Section 18(a))*** releases, waives, or prejudices the rights of any Party . . . to [] enforce this Agreement[.]"

21.     For the reasons discussed herein, each of these arguments is completely and utterly meritless.  Moreover, in advancing these arguments, Transform appears to acknowledge that, in negotiating the Second APA Settlement Agreement, it represented to the Debtors that the Closed Claims had "Actual Recover[ies]" when, in fact, Transform had actually recovered the proceeds of those Claims (even though it knew they belonged to the Debtors under the APA) and had no intention of ever turning them over to the Debtors.  The Debtors, therefore, seek relief from this Court pursuant to the APA, the Order Approving the Second APA Settlement Agreement, in

9

which the Court "retain[ed] jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of [the] Order;" 11 U.S.C. § 362(a)(3), and 11 U.S.C. § 542(a).

## III.    Relief Requested

22.    The proceeds of the Debtors' Closed Claims are estate property subject to turnover and to the automatic stay.  Transform continues to refuse to transfer those proceeds—which it has represented total $676,688.73—to the Debtors.  Accordingly, the Debtors seek an order form this Court compelling Transform to turn over the proceeds pursuant to 11 U.S.C. § 542(a) and granting the Debtors such other and further relief, at law or in equity, to which they are entitled, including but not limited to their attorneys' fees incurred as a result of Transform's willful violation of the automatic stay.

## IV.    Argument and Authorities

### A.    This Court Has the Authority to Compel Transform to Turn Over the Proceeds of the Debtors' Closed Claims.

23.    Section 541 of the Bankruptcy Code defines "property of the estate" broadly, including all "interests of the debtor in property" "wherever located and by whomever held." 11 U.S.C. § 541(a).  The Bankruptcy Code provides various tools to marshal the assets of an estate for the benefit of the estate's creditors.  One such tool is turnover, pursuant to 11 U.S.C. § 542. *See Geron v. Peebler (In re Pali Holdings, Inc.)*, 488 B.R. 841, 851 (Bankr. S.D.N.Y. 2013).  "A turnover action's essence is in bringing the estate's property into its custody" by invoking "the court's most basic equitable powers to gather and manage property of the estate."  *Id.*

24.    Section 542(a) provides that an entity in possession, custody, or control of estate property "shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate."  The party

WEIL:\97704406\24\73217.0004

seeking turnover of estate property must therefore show: "(1) the property is in the possession,
custody or control of another entity; (2) the property can be used in accordance with the provisions
of [11 U.S.C. §] 363; and (3) the property has more than inconsequential value to the debtor's
estate." *Kramer v. Mahia (In re Khan)*, No. 10-46901-ESS, 2014 WL 10474969, at *26 (E.D.N.Y.
Dec. 24, 2014) (quoting *Zazzali v. Minert (In re DBSI, Inc.),* 468 B.R. 663, 669 (Bankr. D. Del.
2011)).

25.     The Court has jurisdiction over turnover of estate property pursuant to
28 U.S.C. §§ 157 and 1334; this is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) (matters
concerning the administration of the estate) and 28 U.S.C. § 157(b)(2)(E) (orders to turn over
property of the estate).[2]  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**B.      The Proceeds of the Debtors' Closed Claims Are Estate Property Subject to
         Turnover.**

26.     The Debtors satisfy the three requirements for turnover set forth in Section
542: (1) at least some of the proceeds of the Debtors' Closed Claims are in the possession, custody,
and control of Transform (specifically, the Titusville Proceeds and the St. Joseph Proceeds);[3]
(2) the proceeds of the Debtors' Closed Claims can be used in accordance with the provisions of
Section 363; and (3) the proceeds of the Debtors' Closed Claims have substantial value to the
Debtors' Estate.  Notwithstanding, Transform persists in failing and refusing to turn over the
proceeds of the Debtors' Closed Claims or even to give the Debtors information about those
Claims so that the Debtors can begin to recover any proceeds that Transform may ***not*** be holding

---

[2] In *In re Pali Holdings, Inc.*, the United States Bankruptcy Court for the Southern District of New York explained
that, "[a]fter *Stern* [v. *Marshall*, 564 U.S. 462, 468 (2011)], it now is clear that whether a matter is 'core' as a statutory
matter is not dispositive of the bankruptcy judge's power, as a constitutional matter, to issue a final judgment in it.
But the reported post-*Stern* decisions have overwhelmingly held that bankruptcy judges can constitutionally enter
final judgments in turnover actions." *In re Pali Holdings*, 488 B.R. at 849–50.

[3] The Debtors reserve all legal and equitable rights and remedies with respect to the proceeds of the remaining Debtor-
owned Closed Claims.

WEIL:\97704406\24\73217.0004

(if any).  Transform, however, cannot colorably argue that the proceeds of the Debtors' Closed

Claims are not property of the Debtors' estates, and it cannot invoke Sections 17(b) or 18(a) of the

Second APA Settlement Agreement in a misguided effort to justify its conversion of estate

property.  Accordingly, the Court should order Transform to immediately turn over the proceeds

of the Debtors' Closed Claims to the Debtors.

> **1.** **Section 17(b) of the Second APA Settlement Agreement Does Not Release Transform from Its Obligation to Transfer to the Debtors the Proceeds of Any of the Debtors' Closed Claims It Has Recovered.**

27.    Transform argues that, pursuant to Section 17(b) of the Second APA

Settlement Agreement, it has no obligation to turn over to the Debtors the proceeds of claims that

(i) unquestionably belong to the Debtors ***under the APA***; (ii) the Parties expressly acknowledged

and agreed, in the Second APA Settlement Agreement, belong to the Debtors ***under the APA***; and

(iii) the Parties agreed, in the Second APA Settlement Agreement, Transform released, waived,

and relinquished any and all right, title, or interest in or to.  *See* Crozier Decl. at Ex. C (Levander

Email); *see also* Second APA Settlement Agreement § 10(a); APA §§ 2.1(p), 2.2(a), 2.2(b), 2.2(i).

This argument is so deeply flawed it hardly merits a response.

28.    First, the plain and unambiguous language of Section 17(b) makes clear

that, for the reasons set forth therein (discussed below), the Parties intended that "neither Party

[would] be required to make any cash payment to the other Party ***pursuant to [the] Agreement***,

except in connection with the Vornado Claims, the Altaquip Claims, and the Bayamon/Panama

City Claims . . . ."  Second APA Settlement Agreement § 17(b) (emphasis added).  A payment

from Transform to the Debtors comprising the proceeds of Closed Claims would not be a payment

pursuant to the Second APA Settlement Agreement; rather, such a payment would be made (and

should be made) pursuant to the APA and the automatic stay.

WEIL:\97704406\24\73217.0004

29.     The subject matter of Section 17(b) provides further support for the Debtors' position that the provision does not somehow obviate Transform's obligation to turn over estate property.  Transform has asked the Debtors (and will undoubtedly ask this Court) to interpret the cash-payment clause of Section 17(b) out of context.  When interpreted in its proper context, however, it is crystal clear that the Parties did not intend Section 17(b) to release Transform from its obligation to ever make any cash payment to the Debtors ever again.  Significantly, Section 17(b) is entitled "Netting of Payments."[4]  It provides:

> Netting of Payments.  Because, for purposes of this Agreement, without admitting any liability, (i) Transform has agreed it owes the Debtors $358,000 in connection with the Mexican Gains Taxes Dispute, $240,000 in connection with the SHC-Israel Employees Costs Dispute, and $125,000 in connection with the 2019 BPP Taxes Dispute ($723,000 in the aggregate); (ii) the Debtors have agreed that they owe Transform $1,036,000 in connection with the Buyer Transition Services Dispute and $61,000 in connection with the Sedgwick Fees Dispute ($1,097,000 in the aggregate); and (iii) Transform has agreed in Section 10(c) above that, in consideration of the Debtors' agreement to pay Transform forty percent (40%) of the net recovered proceeds on the Bayamon/Panama City Claims, the Debtors will be entitled to reduce the $1,036,000 they owe to Transform for Buyer Transition Services as set forth in paragraph 9(a) above by $374,000 (reducing the amount owed by the Debtors to Transform to $723,000 in the aggregate), neither Party shall be required to make any cash payment to the other Party pursuant to this Agreement, except in connection with the Vornado Claims, the Altaquip Claims, and the Bayamon/Panama City Claims as may be required pursuant to Sections 2 and 10(c) above, or in connection with any post-Execution Date Buyer Transition Services, as may be required pursuant to Section 9(b) above.

*Id.*  There is no question, therefore, that the Litigation and Insurance Claims were ***not*** included in the litany of payments that were subject to the netting of payments under the Second APA Settlement Agreement.

---

[4] Under the "title-and-headings" canon of construction, titles and headings are permissible indicators of meaning. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 221 (1st ed. 2012) (discussing the title-and-headings canon of construction).  (Unlike the APA, the Second APA Settlement Agreement contains no provision which indicates that the insertion of headings are for convenience only and should not be utilized in the construction or interpretation of the Agreement.)

WEIL:\97704406\24\73217.0004

30.    In short, "*[b]ecause, for purposes of [the Second APA Settlement]*
*Agreement*," the Parties were, **by design**, obligated to pay each other the same aggregate amount
($723,000), "neither Party [would] be required to make any cash payment to the other Party
***pursuant to [the] Agreement***, except in connection with the Vornado Claims, the Altaquip Claims,
and the Bayamon Panama/City Claims as [might] be required [by] Sections 2 and 10(c)" of the
Agreement.  *Id.* (emphasis added).  The purpose of this provision is plain: the Parties wanted to
make clear that, because the obligations on either side referenced in the provision were designed
to cancel each other out, and because the Parties therefore effectively owed each other the same
amount under the Agreement, it would be pointless for them to pay each other that amount in cash.
The plain and unambiguous terms of the provision come nowhere near suggesting that the Parties
intended to waive the Debtors' right to recover estate property owed to them under the APA or the
provisions of the Bankruptcy Code.

> **2.    The Debtors Did Not, in Section 18(a) of the Second APA Settlement
> Agreement, Waive Their Right to Recover the Proceeds of Any of the
> Debtors' Closed Claims from Transform.**

31.    Transform next urges that "Section 18(a) of the Second APA Settlement
Agreement further provides for a comprehensive and broad mutual release of any potential claims
under, arising out of, or in connection with the Closed Claims."  *See* Crozier Decl. at Ex. C
(Levander Email).  Specifically, Transform points out that the Additional APA Disputes include
the "Litigation and Insurance Claims Dispute," which is defined in Second APA Settlement
Agreement as "the Parties' disputes relating to the ownership of the Litigation and Insurance
Claims, and any other matters involving the Litigation and Insurance Claims that could have been
asserted by a Party as of the date hereof."  *Id.*  Transform then argues that, in Section 18(a) of the
Second APA Settlement Agreement, the Parties released, waived, and relinquished their right to
assert any claim, demand, or cause of action against each other (or each other's affiliates) "under,

arising out of, or in connection with the Additional APA Disputes." *Id.* For this reason, Transform says, "Transform has no obligation to make any cash payment related to the Closed Claims, and the Debtors have released any potential claims related to the Closed Claims." *Id.*

32.    Here, again, Transform is wrong.  The Parties agreed in the Second APA Settlement Agreement that "***any and all rights . . . in, to, or under the [Debtors' Closed Claims] belong to the Debtors under the APA***."  Second APA Settlement Agreement § 10(a) (emphasis added).  Those "rights" necessarily include the right to recover the proceeds of the Debtors' Closed Claims.  (Indeed, it is hard to conceive of any other rights associated with the Closed Claims that the Debtors might have acquired as a result of this section.)  The Parties also agreed that Transform would "release[], waive[], and relinquish[] to the Debtors any and all right, title, and interest in, to, or under each of the [Debtors' Closed Claims.]" *Id.*  That "release" plainly includes a release of the right to recover on (or hold) the proceeds of the Debtors' Closed Claims.

33.    In short, the Parties agreed in the Second APA Settlement Agreement that ***the Debtors have all the rights*** and ***Transform has no rights*** to the proceeds of the Debtors' Closed Claims.  If Transform received these proceeds but now refuses to turn them over, the Debtors are entitled to enforce that agreement.[5]  And nothing—including Section 18(a)'s mutual release—changes that.  The Parties made sure of it, when they agreed in Section 18(b) that:

> [f]or the avoidance of doubt, nothing in this Agreement ***(including, without limitation, <u>Section 18(a)</u>)*** releases, waives, or prejudices the rights of any Party or Released Party to [] enforce this Agreement[.]

*Id.* § 18(b) (emphasis added).

---

[5] Put another way, the instant dispute (concerning the right to recover on the Debtors' Closed Claims) is not some dispute ***related to*** the Additional APA Disputes that the Debtors waived their right to pursue in Section 18(a); rather, the instant dispute ***is the very dispute that the Second APA Settlement Agreement resolved***.  By arguing that the Debtors waived their right to pursue the dispute in Section 18(a), Transform effectively argues that the Debtors waived the right to enforce the Second APA Settlement Agreement itself.  This illogical argument, belied by the very terms of the Agreement, cannot succeed.

WEIL:\97704406\24\73217.0004

V.    <u>**Conclusion**</u>

34.    For the foregoing reasons, Debtors respectfully request that the Court enter an order compelling Transform to turn over the proceeds of the Debtors' Closed Claims, in the aggregate amount of $676,688.73, to the Debtors pursuant to 11 U.S.C. § 542(a) and granting the Debtors such other and further relief, at law or in equity, to which they are entitled, including but not limited to their attorneys' fees incurred as a result of Transform's willful violation of the automatic stay.

<u>**NOTICE**</u>

35.    Notice of this Motion will be provided in accordance with the procedures set forth in the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 (ECF No. 405) (the "**Amended Case Management Order**"). Notice has been provided to Transform.  The Debtors respectfully submit that no further notice is required.

36.    No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the

relief requested herein and such other and further relief as is just.

Dated: November 19, 2020
      New York, New York

                    */s/ Jacqueline Marcus*
                    WEIL, GOTSHAL & MANGES LLP
                    767 Fifth Avenue
                    New York, New York  10153
                    Telephone:  (212) 310-8000
                    Facsimile:  (212) 310-8007
                    Jared R. Friedmann
                    Jacqueline Marcus
                    Jennifer Brooks Crozier

                    *Attorneys for Debtors*
                    *and Debtors in Possession*

17

**Exhibit A**

**Proposed Order**

WEIL:\97704406\24\73217.0004

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                      :

In re                              :        **Chapter 11**

                                        :

**SEARS HOLDINGS CORPORATION,** *et al.*,  :        **Case No. 18-23538 (RDD)**

                                        :

              Debtors.[1]          :        **(Jointly Administered)**

                                        :

---------------------------------------------------------------x

## ORDER COMPELLING TURNOVER OF ESTATE PROPERTY

Upon the motion, dated November [19], 2020 (ECF No. [____]) (the "**Motion**")[2] of

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the

above-captioned chapter 11 cases (collectively, the "**Debtors**"), for entry of an order compelling

turnover of estate funds, pursuant to sections 541 and 542 of chapter 11 of title 11 of the United

States Code (the "**Bankruptcy Code**"); and the Court having jurisdiction to decide the Motion

and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 130 W. 44nd St., 17th Fl., New York, NY 10036.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

WEIL:\97704406\24\73217.0004

Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief sought in the Motion and the opportunity for a hearing thereon having been provided in accordance with the Amended Case Management Order; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion on December 10, 2020 (the "**Hearing**"); and upon the record of the Hearing, and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that such relief is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

## IT IS HEREBY ORDERED THAT:

1.      The Motion is granted to the extent set forth herein.

2.      Pursuant to sections 541 and 542 of the Bankruptcy Code, Transform Holdco LLC is hereby ordered and directed to turn over to the Debtors $676,688.73, representing the proceeds of the Debtors' Closed Claims that Transform has received, directly or indirectly.

3.      Transform shall pay to the Debtors all reasonable attorney's fees incurred by the Debtors in connection with seeking the relief requested in the Motion.

4.      The Debtors and Transform are each authorized to take all actions necessary to effectuate the relief granted in this Order.

WEIL:\97704406\24\73217.0004

5.      The Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2020
            White Plains, New York

                                        _____
                                        THE HONORABLE ROBERT D. DRAIN
                                        UNITED STATES BANKRUPTCY JUDGE

WEIL:\97704406\24\73217.0004