Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 18-23538-rdd

4

5    - - - - - - - - - - - - - - - - - - - - -x

6

7    In the Matter of:

8

9    SEARS HOLDINGS CORPORATION, et al.,

10

11              Debtors.

12

13    - - - - - - - - - - - - - - - - - - - - -x

14

15              United States Bankruptcy Court

16              300 Quarropas Street, Room 248

17              White Plains, New York 10601

18

19              November 20, 2020

20              2:30 PM

21

22    B E F O R E:

23    HON. ROBERT D. DRAIN

24    U.S. BANKRUPTCY JUDGE

25    18-23538-rdd Sears Holdings Corporation, et al.

```
 1    Ch 11

 2    2:30 PM

 3

 4    Notice of Adjournment of Hearing:  Notice of Rescheduling of

 5    November 18, 2020 Hearing to November 20, 2020 at 2:30 p.m.

 6    (EST)

 7

 8    TELEPHONIC HEARING re Motion to Compel:  Motion of Community

 9    Unit School District 300 to Deem Economic Development

10    Agreement Rejected Pursuant to the Debtors Confirmed Chapter

11    11 Plan, or, in the Alternative, to Compel the Debtors to

12    Reject the Agreement (related document(s)5492) (ECF #9061)

13

14    TELEPHONIC HEARING re Objection to Motion of Community Unit

15    School District 300 to Deem Economic Development Agreement

16    Rejected Pursuant to the Debtors Confirmed Chapter 11 Plan,

17    Or, In the Alternative, to Compel the Debtors to Reject the

18    Agreement (related document(s)9061) filed by Michael L.

19    Schein on behalf of Village of Hoffman Estates (ECF #9079)

20

21

22

23

24

25
```

Page 3

| | |
|---|---|
| 1 | TELEPHONIC HEARING re Debtors' Opposition to the Motion of |
| 2 | Community Unit School District 300 to Deem the Economic |
| 3 | Development Agreement Rejected or, in the Alternative, to |
| 4 | Compel Debtors to Reject the Agreement (related |
| 5 | document(s)9061) filed by Sunny Singh on behalf of Sears |
| 6 | Holdings Corporation (ECF #9082) |
| 7 | |
| 8 | Statement:  Exhibit A to Motion of Community Unit School |
| 9 | District to Deem Economic Development Agreement Rejected |
| 10 | Pursuant to the Debtors' Confirmed Chapter 11 Plan, or, in |
| 11 | the Alternative, to Compel the Debtors to Reject the |
| 12 | Agreement (related document(s)9061) filed by Allen G. Kadish |
| 13 | on behalf of Community Unit School District 300 (ECF #9062) |
| 14 | |
| 15 | Supplemental Statement:  Supplement to Motion of Community |
| 16 | Unit School District 300 to Deem Economic Development |
| 17 | Agreement Rejected Pursuant to the Debtors' Confirmed |
| 18 | Chapter 11 Plan, or, in the Alternative, to Compel the |
| 19 | Debtors to Reject the Agreement (related document(s)9061) |
| 20 | filed by Allen G. Kadish on behalf of Community Unit School |
| 21 | District 300 (ECF #9071) |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

Page 4

1    Declaration of Jared R. Friedmann in Support of the Debtors'

2    Opposition to the Motion of Community Unit School District

3    300 to Deem the Economic Development Agreement Rejected or,

4    in the Alternative, to Compel Debtors to Reject the

5    Agreement (related document(s)9082) filed by Sunny Singh on

6    behalf of Sears Holdings Corporation (ECF #9084)

7

8    Notice of Agenda of Matters Scheduled for Telephonic Hearing

9    on November 20, 2020 at 2:30 p.m.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Lisa Beck

Page 5

```
 1   A P P E A R A N C E S :

 2   WEIL, GOTSHAL & MANGES LLP

 3        Attorneys for Debtors and Debtors in Possession

 4        767 Fifth Avenue

 5        New York, NY 10153

 6

 7   BY:   JACQUELINE MARCUS, ESQ.

 8         JARED R. FRIEDMANN, ESQ.

 9         GARRET A. FAIL, ESQ.

10         (TELEPHONICALLY)

11

12   AKIN GUMP STRAUSS HAUER & FELD LLP

13        Attorneys for the Official Committee of Unsecured

14         Creditors

15        One Bryant Place

16        New York, NY 10036

17

18   BY:   PHILIP C. DUBLIN, ESQ.

19         SARA L. BRAUNER, ESQ.

20         ZACHARY D. LANIER, ESQ.

21         (TELEPHONICALLY)

22

23

24

25
```

Page 6

1    ARCHER & GREINER, P.C.

2         Attorneys for Community Unit School District 300

3         1211 Avenue of the Americas

4         New York, NY 10036

5

6    BY:  ALLEN G. KADISH, ESQ. (TELEPHONICALLY)

7

8    DLA PIPER

9         Attorneys for Transform Holdco LLC

10        444 West Lake Street

11        Suite 900

12        Chicago, IL

13

14   BY:  RICHARD A. CHESLEY, ESQ. (TELEPHONICALLY)

15

16   GAIR EBERHARD NELSON DEDINAS LTD

17        Attorneys for Schriesheim, Riecker and Huckins

18         (Adv. Case Sears Holdings v. Lampert et al - 19-08250)

19        1 East Wacker Drive

20        Suite 2600

21        Chicago, IL 6060

22

23   BY:  CHRIS GAIR, ESQ. (TELEPHONICALLY)

24

25

Page 7

1   GENSBURG CALANDRIELLO & KANTER, P.C.

2        Attorneys for Community Unit School District 300

3        200 West Adam Street

4        Chicago, IL 60606

5

6   BY:  MATTHEW T. GENSBURG, ESQ. (TELEPHONICALLY)

7

8   LAW OFFICE OF KORY ATKINSON

9        Attorneys for Community Unit School District 300

10       236 West Lake Street

11       Bloomingdale, IL 60108

12

13  BY:  KORY ATKINSON, ESQ. (TELEPHONICALLY)

14

15  ROBBINS SCHWARTZ

16       Attorneys for Community Unit School District 300

17       55 West Monroe Street

18       Chicago, IL 60603

19

20  BY:  KENNETH FLOREY, ESQ. (TELEPHONICALLY)

21

22

23

24

25

Page 8

1   VEDDER PRICE LLP

2        Attorneys for Village Hoffman Estates

3        1633 Broadway

4        31st Floor

5        New York, NY 10019

6

7   BY:   MICHAEL L. SCHEIN, ESQ. (TELEPHONICALLY)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              THE COURT:  Good afternoon.  This is Judge Drain.

3    And we're here in In re Sears Holdings Corporation, et al.

4    This is a completely telephonic hearing.  You should

5    identify yourself and your client the first time you speak.

6    It's also a good idea to do that if you speak later so we

7    can be sure the court reporter can put together your voice

8    with your name.

9              There's one authorized recording of this hearing.

10   It's taken by Court Solutions.  If you want a transcript,

11   you should contact our clerk's office to arrange for the

12   preparation of one.

13             You should keep your phone on mute at all times

14   unless you're speaking.  And, of course, unmute yourself

15   when you do want to speak.

16             So with that introduction, I have the agenda.

17   There's really, I think, just one matter on today's agenda.

18   The rest of the matters are adjourned.  So unless we --

19   unless someone wants to raise some other point first, why

20   don't we proceed to the motion of Community Unit School

21   District 300 which obviously -- which was a school district

22   to deem EDA agreement, or economic development agreement,

23   rejected pursuant to the debtors' confirmed Chapter 11 plan

24   or, in the alternative, to compel the debtors to reject the

25   agreement.

Page 10

1              So unless anyone wants to cover any other matter

2      before we turn to that motion, I think I should hear from

3      the school district counsel since it's their motion.

4              MR. GENSBURG:  Thank you, Your Honor.  Matt

5      Gensburg on behalf of the school district.  With me is Alan

6      Kadish from Archer & Griner and Kenneth Florey from Robbins

7      Schwartz.

8              Your Honor, this motion was filed for the basic

9      reason that Sears no longer has any economic interest in the

10     EDA agreement.  Further, other than Transform Holdco, there

11     is no one else that Sears could legally assign the EDA

12     agreement to.  And Transform Holdco, Your Honor, saw,

13     subject to resolution of this motion, has indicated it's

14     willing to withdraw its designation.

15             THE COURT:  Well, let's focus on that language

16     because I think that's the reason you filed it.  You have a

17     specific agreement with Transform Co (sic) which is in the

18     record.  So let's focus on paragraph 2 of that agreement.

19     Do you have that in front of you?

20             MR. GENSBURG:  I can get it, Your Honor.

21             THE COURT:  Okay.  I prefer focusing on the actual

22     facts as opposed to broad generalities.  And I think the

23     agreement is the first fact we should focus on.

24        (Pause)

25             THE COURT:  You should also get Section 13 of the

Page 11

```
1    plan in front of you since we'll be focusing on that, too.

2              MR. GENSBURG:  Yes, Judge.

3         (Pause)

4              MR. GENSBURG:  Sorry, Your Honor.  I'm trying to

5    track down the Transform agreement.

6              THE COURT:  Okay.

7         (Pause)

8              THE COURT:  It wasn't attached, I believe, to the

9    motion but it was attached as an exhibit to the declaration

10   of Jared Friedmann in support of the debtors' opposition to

11   the motion.

12             MR. GENSBURG:  Okay, Judge.  Thank you.

13             THE COURT:  Okay.  I'm not sure what exhibit it is

14   to that declaration.  Exhibit 2 to his declaration.

15        (Pause)

16             THE COURT:  Well, maybe I should just read it.

17   Okay?

18             MR. GENSBURG:  That's fine, Judge.

19             THE COURT:  All right.  So paragraph 2 of the

20   settlement agreement in the Cook County Chancery Division

21   litigation, which is undated on the signature page, and I

22   don't think has actually been -- well, the signature page is

23   undated.  I think there is reference in the record to the

24   fact that it actually was executed October 27, I believe.

25             But in any event, paragraph 2 of that settlement
```

Page 12

1    agreement, which is between the school district and

2    Transform, is headed "Actions to Implement Agreement".  And

3    then it says "Transform and the Plaintiffs agree that the

4    following actions will be taken to implement the terms of

5    this Settlement Agreement."  And then 2(a) says:

6              "Upon execution by Sears and District 300" --

7    that's the school district -- "of an Order and Stipulation

8    in the form attached to and included in this Agreement as

9    Exhibit A, stipulating to (i) Transform?s irrevocable

10   withdrawal of its designation of the EDA Agreement as an

11   executory contract to be assumed and assigned to Transform

12   pursuant to the terms of the APA; and (ii) Sears?

13   irrevocable rejection of the EDA Agreement pursuant to

14   Section 365 of the Bankruptcy Code and the terms of the

15   Plan, as the same has been modified and amended; then within

16   1 business day after Sears executes the EDA Stipulation,

17   Transform shall execute and Transform and [the school

18   district] shall file the EDA Stipulation with and for

19   approval by the Bankruptcy Court."

20             And then subparagraph (b) goes on to say:

21             " In the event that Sears does not execute the EDA

22   Stipulation by October 30, 2020, District 300 shall, no

23   later than November 3, 2020, file a motion in the Bankruptcy

24   Court, in form and substance reasonably satisfactory to each

25   of District 300 and Transform, to compel Sears to

Page 13

1    immediately reject the EDA Agreement upon Transform?s

2    withdrawal of its designation of the EDA Agreement as an

3    executory contract to be assumed and assigned to Transform

4    pursuant to the terms of the APA, and Transform shall,

5    concurrently with the filing of said motion, file a notice

6    in the Bankruptcy Court that it shall withdraw said

7    designation contingent on Sears? rejection."

8            And then "Within 1 business day after the...Court

9    grants [that motion]" -- this is in subparagraph (c) --

10   "...Plaintiffs as applicable and Transform shall request the

11   Court in the Illinois Action to enter, and Plaintiffs as

12   applicable and Transform shall diligently pursue, an Order

13   that is final and appealable per Rule 304(a) for the Village

14   to release the 55% Portion of the 2018 EDA Funds to the

15   Taxing Districts."

16           Paragraphs 3, 4 and 5 then lay out the

17   consideration that each side is providing to the other upon

18   the agreement becoming effective including ultimately the

19   potential for $2.9 million to be paid to Transform.

20           Now I gather that Sears never signed the

21   stipulation.  Correct?

22           MR. GENSBURG:  That's correct, Judge.

23           THE COURT:  Okay.  And has Transform filed a

24   notice that it shall withdraw the designation?

25           MR. GENSBURG:  It has, Your Honor.

1           THE COURT:  It has?  Because that's not attached

2    anywhere to any motion.

3           MR. GENSBURG:  It was -- my belief, Your Honor,

4    and Mr. Kadish can maybe confirm this, is that we filed a

5    supplement that included that statement.

6           THE COURT:  Well, there was a pleading filed on

7    November 15th as a reply.  Anyway, I haven't seen it.  Do we

8    have Transform's counsel on the phone?

9           No.  I guess not.

10          Okay.

11          MR. GENSBURG:  I believe it was, Your Honor.  And

12   I -- my recollection is it was filed by Transform in the

13   record.  And I believe --

14          THE COURT:  So why is --

15          MR. GENSBURG:  Go on.

16          THE COURT:  I'll take your word for it although I

17   don't actually have it here.  And indeed, the binder of

18   material -- actually, let me correct that.  Maybe I do -- I

19   have something called a "Supplement" here.  So let me look

20   for that.

21          MS. MARCUS:  Your Honor, this is Jacqueline Marcus

22   from Weil on behalf of the debtors.

23          THE COURT:  Right.

24          MS. MARCUS:  If I may help a little bit, we do

25   believe that Transform filed a notice.  They entitled it --

1    I think in the body it says it's a conditional withdrawal of

2    the designation.

3              THE COURT:  Okay.  So it hasn't really withdrawn.

4    It's conditioned on things happening vis-?-vis Sears, right?

5              MR. GENSBURG:  Yes, Judge.  It's conditioned --

6              THE COURT:  And that this is kind of -- I mean, it

7    has the right to withdraw under the APA.  Is there any

8    disagreement about that?

9              MR. GENSBURG:  No, Judge.

10             THE COURT:  Okay.  So why all these conditions?

11   Why are the conditions on top of that?

12             MR. GENSBURG:  Transform wanted to withdraw the

13   designation as part of a global settlement upon the debtor

14   formally rejecting the EDA agreement --

15             THE COURT:  Right.

16             MR. GENSBURG:  -- which is, I believe, Your Honor,

17   reflected in paragraph 2 that you just read.

18             THE COURT:  Right.  That seemed clear to me that

19   there was some extra value to either the district or

20   Transform -- and one could infer that some portion of the

21   2.9 million is attributable to it -- in this extra condition

22   happening.  Right?

23             MR. GENSBURG:  That's correct, Your Honor.  And

24   really --

25             THE COURT:  Okay.

Page 16

1            MR. GENSBURG:  And Mr. Florey can go into --

2            THE COURT:  So let's turn to the plan then.  All

3    right?  Because, of course, the plan is the governing

4    document.  And, in fact, it's binding on the parties.

5            Section 13. -- well, Section 13 of the plan deals

6    with executory contracts and unexpired leases.  It states:

7            "On the Effective Date" -- which is the effective

8    date of the plan, which I believe no one contends has

9    occurred yet -- "except as otherwise provided in the Plan or

10   Plan Supplement, each Executory Contract...not previously

11   rejected, assumed, or assumed and assigned shall be deemed

12   automatically rejected pursuant to sections 365 and 1123 of

13   the Bankruptcy Code..."

14           All right?  So just with regard to that clause,

15   the plan provides the contracts that have previously been

16   rejected, assumed or assumed and assigned shall be deemed

17   rejected.  Not before then.

18           And then it goes on to say:

19           "...unless such Executory Contract...(1) as of the

20   Effective Date is subject to a" -- as of the effective date

21   again -- "is subject to a pending motion to assume such

22   Unexpired Lease or Executory Contract (including, for the

23   avoidance of doubt, (i) any Unexpired Lease subject to a

24   consensual extension of the deadline..., and (ii) any

25   Executory Contract noticed for assumption and assignment

Page 17

1    with a pending objection that has not yet been resolved);

2    (2) is a contract, engagement letter that has been approved

3    by an order of the Bankruptcy Court, release, or other

4    agreement or document entered into in connection with the

5    Plan; or (3) is a D&O Policy or an Insurance Contract."

6            So I read this paragraph to say that, under the

7    plan, contracts that are not subject to a pending motion to

8    assume, or a pending objection that has not yet been

9    resolved with respect to a motion for assumption and

10   assignment, shall be deemed rejected but only deemed

11   rejected on the effective date.  And, of course, we're not

12   at the effective date.

13           Now, of course, Transform can withdraw its pending

14   -- its desire to have this contract assigned to it.  And

15   there's, in essence, an objection over that that is pending,

16   which would mean that if something else hasn't happened to

17   this contract before the effective date, it would be deemed

18   rejected on the effective date.  But it seems clear to me

19   that the parties have agreed to these conditions that we

20   started with by describing, in paragraph 2(b) and (c) of the

21   settlement agreement, and in Transform's notice of

22   withdrawal -- conditional notice of withdrawal -- because

23   they wanted to change this language and have the contract

24   actually be rejected not on the effective date but post-

25   confirmation and pre-effective date.  Right?  There's no

1    other reason to do this that I can see to put in these

2    conditions.

3          MR. GENSBURG:  Well, Your Honor, that's correct.

4          THE COURT:  Okay.

5          MR. GENSBURG:  But to keep --

6          THE COURT:  So then the question is, can that

7    happen?  Is that possible?  So let's focus on that.  What

8    permits that to happen?  What permits that condition to be

9    fulfilled?

10         MR. GENSBURG:  I'm not following, Your Honor --

11   Matt Gensburg.  Excuse me for not identifying myself.

12         THE COURT:  Well --

13         MR. GENSBURG:  I'm not following --

14         THE COURT:  -- your motion seeks two forms of

15   relief.  One is to have an order entered deeming the

16   contract rejected.  I don't see how that is possible under

17   the language of the plan that I just read to you which is

18   triggered by the effective date.  And we're not at the

19   effective date.

20         MR. GENSBURG:  Well, we are, Judge --

21         THE COURT:  We are --

22         MR. GENSBURG:  I'm sorry.

23         THE COURT:  Well, let me get out both of them

24   because I'm trying to make it clear -- I'm trying to make my

25   question clear to me.

Page 19

1            The other form of relief that you seek is relief

2    under 365(d)(2) of the Bankruptcy Code to compel the debtor

3    to assume or reject the agreement.

4            Now -- so why don't we address both of those two

5    arguments in the light of Section 13.1 of the plan?

6            MR. GENSBURG:  I will, Your Honor.  Matt Gensburg

7    on behalf of the school district.

8            So I think -- I think the way I visualize this --

9    we also have to consider what it means to go effective.  And

10   in that point that really hasn't been discussed, including

11   Article 14 of the plan, which states that the plan will go

12   effective -- will not go effective until the conditions

13   precedent have occurred, which they have not occurred.

14            THE COURT:  Well, I agree.

15            MR. GENSBURG:  And Your Honor's --

16            THE COURT:  The plan -- I don't think there's any

17   issue.  I don't think the debtors would dispute that the

18   Chapter 11 plan has not gone effective.  The effective date

19   has not occurred.  Right?

20            MR. GENSBURG:  Your Honor --

21            THE COURT:  The debtors don't dispute that, right?

22            MS. MARCUS:  No, Your Honor.  They don't dispute

23   that factually --

24            THE COURT:  Okay.  All right.

25            MR. GENSBURG:  And, Your Honor, paragraph 4 of the

Page 20

1    confirmation order, which states:  "The terms of the Plan,

2    the Plan Supplement, the Liquidating Trust Agreement, all

3    exhibits thereto, and all other relevant and necessary

4    documents shall be effective and binding as of the Effective

5    Date."

6           The fact of the matter is, this plan is not yet

7    binding on anyone because it hasn't gone effective.  That's

8    the common meaning of "effective date" in all contracts.

9    The date that the contract, and the plan certainly is a

10   contract, binds the parties.  And it hasn't.  Simply hasn't.

11          The Court in Dawes described it, Your Honor, as

12   the date that the obligations are -- kick in.

13          And so, what this created -- and this was over a

14   year ago.  What this creates is this void where the plan is

15   not yet binding on anyone because it hasn't gone effective

16   and yet, Sears is arguing but we're bound by the terms of

17   the plan.

18          THE COURT:  Well, but let -- can I interrupt you

19   for a second?  If that is the case that the plan

20   indisputably has been confirmed, where's their authority to

21   reject the agreement?

22          MR. GENSBURG:  Well, you have to also ask yourself

23   what's the consequence of it not going effective.

24          THE COURT:  Well, that's fine.

25          MR. GENSBURG:  I mean --

Page 21

1        THE COURT:  But again, 365, by plain terms, and

2    the Courts have already modified this by applying

3    1123(b)(2), but 365 itself provides that you can assume or

4    reject a contract before the confirmation.  And obviously,

5    now confirmation has occurred.  So where's the authority to

6    do it post-confirmation?

7        MR. GENSBURG:  Well, it's in 13.1 of the plan has

8    not gone effective.  I guess --

9        THE COURT:  You just told me that that provision

10   isn't binding.  So --

11       MR. GENSBURG:  I understand that.

12       THE COURT:  -- again, if you're looking to apply

13   365 without 1123 then the Code says you can only do it

14   before confirmation.

15       MR. GENSBURG:  Judge, Matt Gensburg.

16       I would be the first one to tell you that there's

17   a circularity here that's disturbing.  And in most cases,

18   this simply doesn't arise because the plans go effective

19   within 10 days, 14 days after it's confirmed and not a year

20   or over a year.

21       But that same circularity ties into your

22   discussion of 13.1 because what you're saying is --

23       THE COURT:  Well, all right.  Let me --

24       MR. GENSBURG:  -- if it has been --

25       THE COURT:  I'm going to interrupt you.  Let me --

Page 22

1    I'll accept your argument that the plan itself is not yet

2    controlling because it has not gone effective.  But doesn't

3    that just throw you back to 365 and the need to assume or

4    reject before the effective date?

5                MR. GENSBURG:  I think what it brings us back

6    to --

7                THE COURT:  I'm talking before the confirmation

8    date -- excuse me.  Before the confirmation date?

9                MR. GENSBURG:  Yes, sir.  I think where it brings

10   us back in a minimum is back to the Bankruptcy Code.  And if

11   the plan is not what's governing the relationships of the

12   parties -- and we know for a fact it's not -- your paragraph

13   4 in the confirmation order says it's not.  Their paragraph

14   14 in the plan says it's not.  No one is bound by this

15   agreement yet.

16               I don't know exactly why it hasn't gone effective.

17   I'm assuming these are decisions being made by debtor and

18   debtors' counsel and maybe the committee and other parties-

19   in-interest, but it hasn't.  And so, in that void, the only

20   thing that can govern is Section 365 of the Bankruptcy Code.

21               THE COURT:  Okay.  So --

22               MR. GENSBURG:  And --

23               THE COURT:  -- let's turn to 365(d)(2).  365(d)(2)

24   says, "In a case under chapter 11 of this title, the trustee

25   may assume or reject an executory contract...at any time

Page 23

1    before the confirmation of a plan."

2            MR. GENSBURG:  That's correct.

3            THE COURT:  The plan has been confirmed.  But the

4    plan's been confirmed.  And now you're asking to compel the

5    debtor to reject post-confirmation.

6            MR. GENSBURG:  That's all correct, Judge.  And I

7    think in this situation where we have this confusion that's

8    arising because of a plan that has not effective therefore

9    is not binding.  In order to avoid what appears to be an

10   authoritative void of what governs the parties, I think this

11   is exactly what Section 105(a) contemplates.  And I think

12   this is exactly the situation where the Court needs to

13   consider the equities of the situation to determine what's

14   appropriate.

15           So while Sears and The Village use the plan and

16   the argument that this is functionally -- you know, the plan

17   says when they can assume and the effective date hasn't

18   occurred so we can't force them to do this, yet that very

19   agreement is not binding on me or anyone.  Asking for it

20   both ways -- we're not bound by it but you are.  With

21   respect to this, you are.  That's not right.  And yet, I

22   understand this problem with 362 (sic) that references the

23   confirmation date.

24           But the second part of 362 is still also binding

25   which is that the Court has authority in appropriate

Page 24

1   circumstances to accelerate what other date exists.  And

2   I'll add, Judge, that Section 1123(b)(2) which is the

3   predicate for Sears doing what it's done with 13.1 which is

4   the ability to assume or reject pursuant to a plan, Section

5   1323 (sic) (b)(2) specifically says that it's subject to

6   Section 365.  That even when you're going to assume a

7   contract pursuant to the terms of a plan, it's still

8   pursuant to Section 365.  It doesn't say Section 365(a) or

9   (b).  It references 365 in its totality which would include,

10  I'd propose, 365(b)(2), at least the second portion of it.

11  The portion of 365(b)(2) authorizes this Court, upon

12  appropriate circumstances, to accelerate the date.  And we

13  believe, Judge --

14          THE COURT:  Well, can I interrupt you, though?

15  Again --

16          MR. GENSBURG:  Yes, sir.

17          THE COURT:  -- now you're arguing 1123 and the

18  plan.  I'm just -- you know, if you're going to do that, we

19  could do that.  But I'm just focusing on your first argument

20  which is that 1123 doesn't apply here because the plan isn't

21  effective which, to me, throws me back on the Code which

22  specifically states you can assume or reject as a debtor-in-

23  possession before confirmation of a plan.  And then turning

24  to 105(a) of the Code -- and the case law is crystal clear

25  on this -- the Court may issue an order that is necessary or

Page 25

1    appropriate to carry out the provision of the title not to

2    contradict the provisions of the title.  And here, the

3    provision that would be contradicted is the provision of

4    365(b)(2) that would require that assumption or rejection be

5    before confirmation of the plan.

6          Now I don't really know what to say in response to

7    that other than that.  You point to the second clause.  But

8    I don't see how one can direct a trustee to determine within

9    a specified time whether to assume or reject if the first

10   clause of this section says you can only do it before

11   confirmation.  It would seem to me that therefore the

12   logical reason -- reading of the second clause is shortening

13   the time to before confirmation.  But(b)(2) looks like a

14   grant of power.  And it says before confirmation of a plan.

15         Now Courts have ruled, including the Seventh

16   Circuit in the United Airlines cases that, under 1123, a

17   plan can provide for an extension of that time post-

18   confirmation if it specifically does.  And, of course, it

19   does say subject to but given the deadline in (d)(2), those

20   Courts -- and they're pretty well established law at this

21   point -- have read out that deadline, I think because the

22   plan is confirmed and it's binding.

23         But again, if you're going to contend that 1123

24   doesn't even apply because the plan isn't effective yet,

25   then I think you're stuck with (b)(2), 365(b)(2).

1            MR. GENSBURG:  Your Honor, so we've made this

2    argument in the alternative because -- but when you look at

3    it, you're struck by this inconsistency that is really

4    frustrating.  So -- and it becomes really clear when Sears

5    argues that we're bound by 13.1 because, like I said, that

6    creates this conundrum of, well, I guess some of it's

7    binding notwithstanding your Court's order and the

8    confirmation order, paragraph 4, notwithstanding --

9            THE COURT:  I --

10           MR. GENSBURG:  -- Article 14.

11           THE COURT:  Fine.  I'm accepting all of your

12   arguments on that point.  I'll hear Ms. Marcus on it.  But,

13   for example, I don't think at this point that the debtors

14   could take action contrary to the plan.  They have an

15   obligation to live up to the plan and in good faith seek its

16   effective date.  So I expect she'll probably be making that

17   argument to me.

18           But I'm accepting your point on that.  So I don't

19   need to hear you try to refute it anymore.  I'm just

20   focusing on 365(d)(2) now.

21           MR. GENSBURG:  Right.  So the alternative

22   argument, Your Honor, would be even if 13.1 somehow impacts

23   the school district, then 1123(b)(2) says that that

24   provision would still be subject to 365.

25           THE COURT:  All right.

Page 27

1              MR. GENSBURG:  And that's --

2              THE COURT:  We're going in circles.  I mean, look,

3    there are many cases that hold that you can use 1123 because

4    it's -- through a plan to have a contract be rejected or

5    assumed after the confirmation date.  Some of those

6    points --

7              MR. GENSBURG:  And I'm not disagreeing.

8              THE COURT:  -- even -- what?

9              MR. GENSBURG:  And I'm not disagreeing with that,

10   Judge.

11             THE COURT:  All right.  So --

12             MR. GENSBURG:  So the point is this.

13             THE COURT:  -- implicit in those cases -- and, in

14   fact, explicit in some of them, is attention with the

15   subject to language in 1123(b)(2) because if it really is

16   completely subject to 365, it means it's also subject to

17   365(d)(2) with temporal limitation on the -- that can't be

18   assumed or rejected by the confirmation -- after the

19   confirmation date.

20             Notwithstanding that, the Seventh Circuit in In re

21   UAL Corp., you know, the district court of the District of

22   Idaho and DJS Properties, L.P. v. Simplot and the bankruptcy

23   court in In re Gunter Hotel Associates from Texas, In re

24   Malden Mills, Inc. from Massachusetts.  And the cases that

25   they cite all say you could do it under 1123.  But again, I

Page 28

1   don't know why we're going over this because at one point,

2   you're trying to -- you're arguing, and hypothetically I'm

3   accepting your argument, that because the plan has not gone

4   effective, 1123 doesn't even come into it.  Paragraph 13.1

5   doesn't even come into it.  But I don't see how that helps

6   you because then you're stuck with 365(d)(2).

7            MR. GENSBURG:  So, Judge, let me try to clarify.

8   And I apologize that I haven't been very articulate here on

9   this 1123 premise.

10           If the premise is that, as an alternative, that we

11  are bound by 13.1 -- which the only way that arises is

12  through 1123(v)(2) which we accept.  And I also accept the

13  concept that 1123(b)(2) is the mechanism by which, as the

14  cases indicate as you noted, Your Honor, by which an

15  executory contract can be assumed and assigned or rejected

16  post-confirmation.  What happens is that this plan that's

17  plan that's been confirmed has made the new date rather than

18  the confirmation date, the date the plan's been confirmed,

19  the effective date.  But that doesn't mean that the second

20  part of 365(d)(2) is irrelevant which is the portion that

21  says, yes, there's a cutoff date here which, under 365(d)(2)

22  prior to the plan limitation would have been confirmation.

23  But the Court can, for cause shown, accelerate that date.

24  Now with the plan being confirmed, that date is not the

25  confirmation date but the effective date.  But the second

Page 29

1    portion of 365(d)(2) is still relevant which is the Court

2    has the authority, whether it's the confirmation or because

3    of the plan, the effective date, for cause shown, to

4    accelerate that date.

5              And in most scenarios where the effective date is

6    10 days, 14 days, it's not even relevant.  But in this

7    situation where there's conditions precedent which haven't

8    occurred, a year has gone by and it hasn't gone effective --

9    and we don't know when it will go effective.  It could be

10   next week.  It could be next month or in six months.

11             The concept that the Court has no authority to --

12   for cause shown, to protect the interest of nondebtor

13   parties in that scenario seems to me to be something that

14   was not contemplated by the chapters and I don't even think

15   it was contemplated by the parties of this agreement.

16             So -- the agreement being the plan.  And so, if,

17   in fact, we are bound, and this hasn't already been rejected

18   because it hasn't gone effective and the confirmation -- you

19   know, circular argument -- but we're bound by 13.1, okay.

20   Then the new cutoff date is the effective date.  But still,

21   the second part of 365(d)(2) governs which is, for cause

22   shown, Your Honor, we would argue that the Court has the

23   authority to accelerate it.  And again, given the delay -- I

24   mean, there's special reasons for that now.

25             THE COURT:  And what are the special reasons?

1            MR. GENSBURG:  Well, the special reasons, Judge,

2      are as follows.  And I may have Ken Florey, whose an expert

3      on the agreement, jump in.

4            But Sears simply has no economic interest in the

5      EDA agreement any longer.

6            THE COURT:  All right.  Let's --

7            MR. GENSBURG:  And this --

8            THE COURT:  I'm not talking about from the Sears

9      side.  And I've read the agreement, although you didn't

10     discuss this issue the first time.  And I've the assignment

11     provision.  So Mr. Florey can get into that with me if he

12     wants to but he needs to explain to me why he only cited the

13     one subparagraph defining "Developer" and not the fact that

14     Sears itself can assign the agreement.

15            I'm focusing on harm to your client.

16            MR. GENSBURG:  Yes, sir.  And I'm going to ask Mr.

17     Florey, if he can, Your Honor, to respond to the Court's

18     inquiry.

19            THE COURT:  Okay.

20            MR. FLOREY:  Good afternoon, Judge.  This is Ken

21     Florey on behalf of the school district.

22            Under the Illinois statute in EDA agreement, the

23     developer is limited to an entity that owns 100 acres or

24     more of real estate --

25            THE COURT:  I just said, sir, I am focusing on the

Page 31

1    harm to your client.

2              MR. FLOREY:  Judge --

3              THE COURT:  You have not -- you know, in a

4    pleading filed or served on the 16th, you raised new

5    arguments without reference to the agreement, which was not

6    attached, which I had to dig out.  Frankly, I think they

7    were misleading when I read the agreement itself.  But I

8    will not, at this point, focus on the debtors' end of

9    things.  One thing is clear to me.  You and Transform are

10   asking the debtor, and ultimately the debtor through me, to

11   take an action that may not be required for value to both of

12   you.  It's even been quantified.  $2.9 million.  So I'm not

13   really focusing on why this doesn't benefit Sears.  What I'm

14   focusing on is how are your clients harmed by the delay.

15             MR. FLOREY:  Judge, again, Ken Florey on behalf of

16   the school district.

17             Several things have happened.  As of October 1st,

18   all of Sears' former employees now are Transform employees.

19             THE COURT:  Yes.

20             MR. FLOREY:  Sears no longer --

21             THE COURT:  You may think this is unfair.  But I'm

22   going to ask this question to you one more time.  I am not

23   focusing on Sears.  I'm focusing on what is the harm to your

24   clients of further delay.

25             MR. FLOREY:  Your Honor, if you'll just --

Page 32

1          THE COURT:  I can't make it any clearer.  I don't

2     need to hear your arguments which you put in your supplement

3     for November 15th without the agreement being attached as to

4     why Sears won't benefit from this.  I don't need to hear

5     that.  Why I need to hear is how are your clients harmed.

6          MR. FLOREY:  The school district and every taxing

7     district is harmed because as soon as Sears no longer has

8     employees in the district, the district starts a dissolution

9     process.  That dissolution process is a two-step process.

10    The year in which the developer has no more employees starts

11    the dissolution.  One year after that, the Village has to

12    take -- mandatorily has to take steps to formally dissolve

13    the EDA district which allows all taxing districts to levy

14    taxes under the -- to assess and take advantage of assessed

15    value that is now on the taxuals.  So it's a two-year

16    process.

17          The harm to the school district and every taxing

18    district is if once that first step has occurred that Sears

19    no longer has employees, and if you delay the dissolution

20    process, a subsequent year passes.  If we get past January

21    1st, the EDA district can't be dissolved until 2022.  If

22    Your Honor grants our request today, it can lead in starting

23    the process which would mean a dissolution in 2021.

24          So what does that mean?  A year is significant in

25    assessing the value to the property taxes because then each

Page 33

1    taxing district has millions of dollars to spend on services

2    that are vitally needed, particularly in our COVID times;

3    the taxpayers will see a reduction in their tax bills

4    because there's now more assessed value to attach to for the

5    property tax levy; and every year that that new value is

6    placed on the tax rolls, it gets compounded, year after year

7    after year, based on the CPIU, consumer price index urban

8    under Illinois property tax code.

9             So --

10            THE COURT:  Can I -- these are not taxes on Sears,

11   right?

12            MR. FLOREY:  These  would be taxes on the

13   headquarters, former Sears headquarters and the entire EDA

14   district which includes Sears and multiple other properties.

15            THE COURT:  All right.  But that is then taxes

16   that Transform would pay for taxes on land that Transform

17   hasn't acquired that's still in the district, right, that

18   Sears still owns?

19            MR. FLOREY:  No.  I don't believe Sears owns any

20   more land in the district, Judge.  So this would be taxing

21   the former Sears headquarters now owned by Transform as well

22   as multiple other non-Sears-owned properties, other private

23   owner-owned properties.  It's one large district.  Sears is

24   the majority of that district but there are multiple other

25   properties.

Page 34

1          So when Sears -- we start the dissolution process

2      -- again, it's a two-year process, the first year that

3      there's a termination and there's no longer employees of the

4      developer; and then the subsequent year, it gets terminated

5      by the Village.  So whenever -- now that we're in that -- as

6      of October 1st, that the employee shift has occurred to

7      Transform and the developer is now Sears and they no longer

8      have employees, that starts -- that's the shock that starts

9      this dissolution process.  And that's why we're asking you

10     to take this extraordinary action in this calendar year,

11     Judge, because if we wait till the next calendar year, it

12     pushes the final dissolution from 2021 to 2022 and that's a

13     loss of millions of dollars in perpetuity under the Illinois

14     tax code because every year that the value goes on from the

15     EDA district to the tax rolls, not only does every taxing

16     district get to access that in that year, but every

17     subsequent year, that value is added as a multiplier in the

18     consumer price index.  So in perpetuity, this value gets

19     created.  Every year that's delayed, there's going to be

20     lost revenue accessible by the taxing bodies.

21          THE COURT:  Okay.  That's helpful.  Thank you.

22          So as far as the headquarters building is

23     concerned and the property that Transform has, it could

24     easily agree to waive that -- in fact, it has agreed except

25     for payments to be made to it, to waive that benefit, right?

Page 35

1    Just as Sears waived it for 2018?

2              MR. FLOREY:  I'm sorry.  Which benefit are you

3    asking -- would you be asking Transform to waive, Judge?

4              THE COURT:  The benefit under the EDA.  Their tax

5    savings that the EDA provides.  They can waive that.

6              MR. FLOREY:  First of all, they'd have to qualify

7    for it and I don't believe they're going to qualify for it.

8    So it's not the tax benefit that's at issue.  It's the

9    entire taxing district going from an EDA district to normal

10   property taxation.  It's a special --

11             THE COURT:  But what I'm saying is, it doesn't

12   apply to Transform in that district.  It would apply to

13   anyone else in that district.

14             MR. FLOREY:  No.  The benefit can only be accessed

15   by Transform or whoever owns Sears headquarters.

16             THE COURT:  Well, then why -- I don't understand

17   then why you're going through these conditions, why

18   Transform doesn't just agree to waive the benefit.

19             MR. FLOREY:  Because you can't -- just waiving the

20   benefit is not going to lead to the dissolution of the EDA

21   district, Judge.

22             THE COURT:  That's what Transform --

23             MR. FLOREY:  By Transform --

24             THE COURT:  Economically, they can agree to waive

25   it, can't they?  Isn't that the same thing?

Page 36

1              MR. FLOREY:  They could.

2              THE COURT:  Yeah.

3              MR. FLOREY:  But then they would still be in

4    the -- until they withdrew their designation, Judge, they'd

5    be the developer in waiting.  So once they've withdrawn that

6    designation, the developer name goes back to Sears.  Sears

7    is giving up all economic interest so now the developer --

8    Sears has no more employees.  So it's a really critical

9    step.  With the withdrawal of the designation, the developer

10   status goes to Transform which has lots of employees in the

11   district, back to Sears which has no employees in the

12   district, and having no employees in the district triggers a

13   dissolution process and the two-year step.

14             THE COURT:  But it doesn't seem to me to be an

15   imminent harm because for the year that you would lose --

16             MR. FLOREY:  Yes.

17             THE COURT:  -- if I didn't grant this relief,

18   Transform is perfectly capable of saying for that year we

19   waive the benefit.  All that money will go to the Village

20   and for reallocation as per the lawsuit.

21             MR. FLOREY:  So, Judge, it's not just --

22             THE COURT:  The way it looks to me -- it looks to

23   me that what is being actually bargained for here is part of

24   a condition is an additional right which is to accelerate

25   the termination of the EDA.

1           MR. FLOREY:  Judge, in your courtroom, we've been

2    fighting over this 55 percent right.  That's the 55 percent

3    of Transform's property tax bill.  That's they either get it

4    if they hit the numbers or we get it if they don't.  But

5    we're beyond that.  We're not talking about that benefit.

6    We're talking about the dissolution of the entire EDA

7    district which --

8           THE COURT:  Well, I know.

9           MR. FLOREY:  -- is worth --

10          THE COURT:  I know.  But as far as -- but that's

11   not Transform's to control.  What Transform can control is

12   the taxation of it.  So you're really asking for other

13   relief.  And you're asking the debtor to give up something.

14          MR. FLOREY:  The debtor has already given up all

15   economic interest in the stipulation with the school

16   district for --

17          THE COURT:  No, it has not.

18          MR. FLOREY:  -- the 2017 monies.

19          THE COURT:  I will rule on that right now.  It

20   clearly has not.  It gave up a right to the funds.  Period.

21          MR. FLOREY:  Judge, then you have to look at who

22   else can be an assignee.  So if Transform withdraws its

23   designation, it goes back to Sears.  Can Sears assign it to

24   any other entity?  And Mr. Gensburg can jump in 'cause we're

25   getting into his world.

Page 38

1              But under the EDA law, EDA act, there's no other

2     entity that can qualify as the developer because Transform

3     owns the property, the Sears headquarters.  This is all tied

4     to the Sears headquarters.

5              THE COURT:  None of that --

6              MR. FLOREY:  Sears --

7              THE COURT:  -- has been shown to me.  You have not

8     given me the EDA law.  You've given me none of that.  And

9     when you quote the agreement and when you quote the EDA law,

10    you're very careful to say things like "included", "within

11    the scope of" and then said of course we're a party.  So,

12    frankly, I don't believe you until I actually see it in

13    writing.

14             MR. FLOREY:  We can provide you --

15             THE COURT:  It looks like I shouldn't have

16    believed you that this would all take 30 to 60 days in state

17    court.

18             MR. FLOREY:  Judge, there has been -- the answer

19    to that question is these are the arguments we made in our

20    original motion and Sears along with the Village other than

21    addressing the arguments that you and Mr. Gensburg were

22    addressing, they did not refute any of the things I've just

23    stated, that the --

24             THE COURT:  Well, all right.  Then let's read

25    Section 18.1.

Page 39

1              "The term 'Developer', as used in Section 18.1" --

2      which is the section dealing with assignment -- "shall mean

3      only" -- you quoted only the portion dealing with (iv), "Any

4      entity to whom the Developer has conveyed a portion of the

5      Subject Property consisting of one hundred (100) acres or

6      more".  You didn't quote to me (a)(i):  Sears, Roebuck and

7      Co.; (a)(ii), "Any entity which is a parent, controlling

8      shareholder...or more...or Any entity which is owned, to the

9      extent of at least a fifty-one percent (51%) controlling

10     interest, by Sears..."

11              So why doesn't that make it the developer that's

12     able to assign under the agreement contrary to what you

13     argued in your November 15th response?

14              MR. FLOREY:  Judge, it could assign it to -- this

15     is all tied into the headquarters, to the property -- to the

16     100-acre requirement.  So Sears -- the only thing that can

17     be assigned --

18              THE COURT:  I read what you quoted to me in

19     paragraph 18, it says who can assign.  In your response, you

20     said it cannot be assigned to someone other than the owner

21     of the 100 acres which, frankly, is not what the section you

22     quoted pertains to.  That is who can assign.  But if you

23     actually turn to who can be an assignee, it includes partial

24     owners.

25              So, yes.  There may be some statute somewhere,

Page 40

1    which you haven't provided me with, that limits that.

2    But -- paragraph 18.1(p) refers to a portion of the subject

3    property limited to 100 acres.

4              So again, I come back to one fundamental point

5    which is that I have a plan that has not gone effective.

6    Under the plain terms of the Bankruptcy Code, an executory

7    contract cannot be assumed and assigned or rejected after

8    the confirmation date.  That rule is modified for confirmed

9    and arguably only an effective plan although it does say

10   just a plan can provide that.  In 1123(b)(2) and substantial

11   case law that distinguishes between plans that don't

12   specifically provide for assignment or -- assumption and

13   assignment or rejection including In re WorldCom, Inc.,

14   where Section 8.1 of the debtors' plan contained no language

15   reserving the right to seek rejection of contracts subject

16   to confirmation.  And to the contrary, plans that do, like

17   this plan, reserve the right to deal with extending the

18   rejection period.

19             Those are the two relevant documents.  And it

20   appears to me that what's going on here is two nondebtor

21   parties have gotten together to try to get value for

22   themselves by changing the Bankruptcy Code and changing the

23   plan to have the entire EDA be terminated.  They're trying

24   to take value from the estate.

25             If this plan does not go effective and I convert

Page 41

1    the case, or if this plan didn't provide for an extension of

2    the time to assume or reject, the agreement would just ride

3    through the bankruptcy.  And then if it went into a Chapter

4    7, there would be a brief period for the Chapter 7 trustee

5    to deal with it and then it would be deemed rejected.

6           So I think you're trying to create rights here.

7    And the reason you're doing it is that they're valuable and

8    they're right now in the hands of the debtor.  In fact, it

9    looks like there's significant consideration being paid to

10   follow this procedure.  But it's not being paid to the

11   debtor.  Normally, that's not the type of circumstance where

12   someone gets the right to accelerate the time to assume or

13   reject a contract.

14          MR. GENSBURG:  Judge, Matt Gensburg.  If I may

15   jump in.

16          Clearly, we see some value as Mr. Florey is trying

17   to explain to Your Honor arising from rejection of the

18   agreement.  And it was that value that these taxing

19   districts, including district 300, the school district, see

20   that led us to strike our agreement with Transform Holdco

21   because they're the designee and they could try to move

22   forward with that and we'd have to fight in the state court

23   and then back to Your Honor as we know from prior hearings

24   on this 365 assumption and rejection issue like here.  And

25   that'll substantial amount of time.  And this value, as Mr.

Page 42

1    Florey has tried to explain, clear value (indiscernible), to

2    the school districts getting this rejected this year and the

3    other taxing bodies rather than next year or the year after.

4    That far exceeds what we proposed to provide to Transform

5    Holdco.

6             The part where there's the disconnect is the

7    belief -- and this is obviously our fault -- that Sears

8    still retains some value in this agreement after it waived

9    any rights to the 2018 funds and all funds thereafter that

10   somehow it can still capture some value.  And I understand

11   where that's coming from.  It's from that stipulation where

12   it was specifically reserved that the right to assume and

13   assign to the debtors' assignee.  But that referred to --

14   not overtly, but was referring to Transform Holdco because

15   Transform Holdco was never a party to that stipulation order

16   entered in October.

17            Our effort to settle with Sears, and we thought we

18   had some -- everything with Sears in October, but because

19   Transform wasn't a party to the agreement and it already

20   designated it, we couldn't affect the rights under 9019.

21   Your Honor would never let us do that.  And the case law is

22   clear that could happen.  So we had to make sure that

23   Transform Holdco's interest in the EDA agreement was

24   preserved if it wanted to go forward.  And that's what that

25   language was.  But otherwise, Sears was walking away from

Page 43

1    all its interest in the EDA funds from 2018 on.  And EDA

2    funds are really the only economic driver behind the EDA

3    agreement.  And our fault is that we haven't made that clear

4    to the Court.

5            And so, the real question is -- and it's just two

6    questions.  One is after this October agreement, the

7    stipulation order, was it intended that Sears would retain

8    anything and was that referenced to debtors' assignee, a

9    reference to Transform Holdco or any potential assignee.

10   And then even if that was that reference in the stipulation

11   order to any potential assignee, could Sears at this stage

12   assign it to anyone other than Transform Holdco who has

13   indicated a willingness to withdraw its designation.  And

14   that's the 100-acre issue that was discussed and apparently

15   we didn't clearly define for Your Honor because we believe

16   that it can't.  There is no one else who could possibly be

17   an assignee for the EDA agreement.  If that's true then

18   there is no actual value here to Sears as they sort of

19   indicated in their motion to dismiss.  And therefore, the

20   inability for the school district and the library district

21   and the college district and the homeowners to get the

22   benefit of reduced taxes that will happen if the

23   headquarters go back online on the tax rolls at full value

24   will far exceed any possible harm, which is none, to Sears.

25   And that's why we filed the motion.  And, yes --

Page 44

```
 1              THE COURT:  I guess I have two responses to that

 2    and one question.  I still don't understand why that

 3    economic harm, at least in the near term 'cause that's all

 4    you're really addressing -- I think we could be fairly

 5    confident that the plan will go effective at some point in

 6    the reasonable future.  That economic harm could be dealt

 7    with very simply by having Transform do what Sears did and

 8    just claim any interest in the portion of the taxes that

 9    would otherwise come off of the back of the taxpayers for

10    the applicable year.

11              Secondly, if it were so clear that Sears has no

12    interest in this agreement, why go through the hoops of

13    paragraph 2.1 of the stipulation and settlement agreement?

14              The question I have, which we haven't addressed

15    yet, is how is the school district a party to the agreement

16    for purposes of Section 365(d)(2).  What I have in your

17    response is the following.  Paragraph 3 states:

18              "The Illinois General Assembly?s amendment to the

19    EDA Act in 2011 legislatively recrafted the EDA Agreement by

20    grafting onto the agreement...additional Parties" -- not

21    identified, although I can infer from the first sentence in

22    paragraph 4:

23              "Pursuant to the amendment, the Taxing Districts"

24    -- a capitalized term -- "now for the first time, directly

25    shared in property taxes generated by the EDA District."
```

Page 45

1    And it was really they shall be allocated to them.  I think

2    that was the language quoted.

3            And then paragraph 6 says -- acknowledges:  "The

4    EDA Agreement itself was never actually amended to reflect

5    these modifications."  Although when you look at Article 21

6    of the EDA agreement, it provides that -- it leaves to be

7    binding on the developer, it needs to be fully executed.

8            So again, other than having an interest, and it's

9    not clear to me how that interest is phrased since I haven't

10   been provided with what you're relying on -- how does having

11   an interest distinguish this situation into your being or

12   your client being a party to the agreement which is the

13   language Congress chose to use in 365(d)(2) rather than

14   party-in-interest.  It says, "on the request of any party to

15   such contract...[the Court] may order the [debtor-in-

16   possession] to determine within a specified period of time

17   whether to assume or reject such contract or lease."

18           Now even on the party-in-interest point, creditors

19   of a creditor, it is well established, are not parties-in-

20   interest.  But the statute says party to the agreement.  So

21   how is the school district even conferred with standing

22   under 365(d)(2)?

23           MR. GENSBURG:  So, Your Honor, under the original

24   EDA agreement, when the Village and Sears entered into that

25   agreement in 1989, it had a limited duration as we

Page 46

1    indicated.  And it was supposed to end in 2012.  That

2    original agreement didn't have any of the taxing parties,

3    taxing districts, as participants in the tax revenue.  That

4    agreement had it terminated in 2012 would have resulted in

5    $27 million in additional revenue for the taxing districts

6    of which the school district would have received 60 percent

7    of it or 54.4 million -- $15.4 million.

8            In 2011, when they amended the EDA Act to allow

9    for the extension for another 15 years, they made specific

10   reference to the taxing districts.  So for the first time

11   now, under the amendment, the taxing districts can share

12   directly in the property taxes generated by the EDA

13   district.  And for the first time, the Village of Hoffman

14   Estates needs to prepare annual reports to taxing districts

15   to talk about the performance of the EDA district.  And for

16   the first time, the taxing districts are told to meet

17   annually to review the effectiveness of the EDA district.

18           None of these things which existed -- now the

19   actual EDA agreement wasn't amended to reflect the

20   additional 15 years.  They just worked off a treaty to the

21   amendment for the EDA Act as an amendment to the agreement.

22   The very Act incorporates the taxing districts.  And so, we

23   believe, Your Honor, that based on that, they are

24   effectively parties to the amended agreement, effectively

25   parties --

1          THE COURT:  They're not signatories.  Are they

2     listed as a party or just a recipient of the fund which go

3     through the Village first, right?  That's how it works?

4          MR. GENSBURG:  Yes, sir.

5          THE COURT:  All right.  So they weren't a party at

6     the beginning.  It's now made clear in 2011 that the Village

7     has to report to them and, to the extent there was any doubt

8     before, the money and the respective proportion goes through

9     the Village to them.  And so, on that basis, you're arguing

10    that they're a third party beneficiary of the agreement.

11    Right?

12         MR. GENSBURG:  At a minimum, we're a third party

13    beneficiary.

14         THE COURT:  Well, how are they a party?  How are

15    they a party?  They're not said to be a party, right?

16         MR. GENSBURG:  Well, that's the point.  There is

17    no actual agreement extending beyond 2012.  There is no

18    agreement that you can see signatories that carry it for

19    another 15 years to 2027.  There isn't any.  And what

20    they've relied on, the Village, Sears, and everyone, is the

21    amendment to the agreement that makes specific reference to

22    the taxing districts.

23         THE COURT:  But it makes a reference but it

24    doesn't make them a party.  It makes -- it's like, you know,

25    it's like the cases that say that you will make the payment

Page 48

1    on a lease to the holder of the mortgage in certain

2    circumstances.  That doesn't make the holder of a mortgage a

3    party to the contract for purposes of 365(d)(2).  The

4    payment mechanism.

5              MR. GENSBURG:  Your Honor, so we believe that the

6    amendment does.  But if it doesn't, at a minimum, we're a

7    third party beneficiary --

8              THE COURT:  But --

9              MR. GENSBURG:  -- under --

10             THE COURT:  -- the Code doesn't say third party

11   beneficiary.  It says a party.  Do you have any cases to

12   support this argument?

13             MR. GENSBURG:  Well, what I can tell you, Your

14   Honor, is that third beneficiary could have the ability to

15   sue under a contract.

16             THE COURT:  Do you have any --

17             MR. GENSBURG:  That's standard --

18             THE COURT:  -- bankruptcy cases interpreting this

19   issue?

20             MR. GENSBURG:  Your Honor, I don't know of any and

21   we could find it if you would like.

22             THE COURT:  Well, I mean --

23             MR. GENSBURG:  But I don't believe --

24             THE COURT:  -- the debtors -- both the debtors and

25   the Village made this point.  And they actually did cite

Page 49

1   cases which I haven't seen refuted, including one by Judge

2   Schwartzberg.  And there are numerous others including in

3   the party-in-interest context such as, for example, In re

4   Martin Paint Stores, 199 B.R. 258 (Bankr. S.D.N.Y. 1996).

5            But, you know, it -- when someone's standing is

6   questioned and they come up with non-bankruptcy law

7   arguments dealing with a bankruptcy law issue as opposed to

8   where the Code refers you to state law, I don't know what --

9   I mean, I don't see how you have standing.

10           MR. GENSBURG:  Because a third party beneficiary

11  is a party with respect to the contract with all the

12  authority under state law to enforce that contract as if

13  they were a signatory.  There's nothing unique here with

14  respect to that right that they have, under state law, under

15  Bankruptcy Code.

16           THE COURT:  All right.  Why don't I hear briefly

17  from the other side or the other two -- the two objectors.

18           MR. FRIEDMANN:  Good afternoon, Your Honor.  Jared

19  Friedmann from Weil Gotshal on behalf of the debtors.  And

20  I'll be brief since a lot of these issues were already

21  addressed.

22           But the first point I was going to make which

23  you're discussing right now is that our view is the school

24  district plainly lacks standing to force the debtors to

25  reject an executory contract that it's not a party to.  You

Page 50

1    know, in addition to the fact that it's clearly not a party,

2    it really is about the farthest thing you can come up with

3    from being a third party beneficiary of this agreement.  And

4    in fact, the school district's own -- by their own admission

5    in the very first paragraph of their motion, EDA

6    agreement -- they say the EDA agreement is preventing it

7    from receiving tax funds that it would otherwise receive

8    impacting -- and if I quote them:  "not merely the 20,000

9    students in the School District, but all residents who live

10   or are served by the effected taxing authorities".  That's,

11   of course, why the school district is fighting to have this

12   agreement rejected and terminated and it's why the school

13   district is willing to pay Transform almost $2.9 million to

14   help terminate the EDA agreement.  They're not a

15   beneficiary; they're harmed by this agreement.  That's why

16   they want it to go away.

17          In terms of the timing issue, any monies that are

18   collected right now are not being distributed while there's

19   all these disputes going on.  And as Your Honor alluded to

20   earlier, the school district asked this Court to abstain

21   from ruling on the issue of what the requirements are in

22   order for Sears or its assignee to get the EDA funds that's

23   now sitting in Cook County and that issue is being addressed

24   there.

25          But while that issue is pending, that money is all

Page 51

1      just sitting in an account held by the Village earning

2      interest.  So no money is being lost.  Nothing's

3      disappearing.  Whatever money is being collected is all

4      sitting there and it will be allocated as appropriate once

5      the Court and the county determines whether or not it should

6      be distributed to Sears as assignee at this point or that

7      they have not met the criteria and therefore it would go to

8      the taxing districts.

9              You know, in terms of standing also, with respect

10     to altering the deadline and the plan under 1127, it's very

11     clear, in Section 1127, that the provision allows

12     post-confirmation modification of the plan until a

13     substantial consummation but only by the plan proponents

14     which, obviously, again the school district is not.  There's

15     nothing in Section 1127 that would give a non-proponent like

16     the school district standing to modify the plan deadline.

17     And there were --

18              THE COURT:  Well, can I interrupt you?

19              MR. FRIEDMANN:  Of course.

20              THE COURT:  The school district contends that the

21     plan doesn't govern because it hasn't gone effective.  So

22     they're relying on 365(d)(2).  Do you think that the plan is

23     controlling here?

24              MR. FRIEDMANN:  Yes.  It's absolutely controlling.

25     We have a confirmed plan and Section 17.2 of the plan

1    states:  "On the Effective Date, the Plan shall be deemed to

2    be substantially consummated under sections 1101 and 1127(b)

3    of the Bankruptcy Code."  So under that confirmed plan, by

4    definition, right now is when 1127(b) applies between the

5    confirmation and when there's substantial consummation which

6    is the effective date.  So the school district, of course,

7    had an opportunity to object to the plan deadlines and

8    everything that's in 13.1 when it objected to plan

9    confirmation on numerous other grounds.  Not on this ground.

10   And at this point, it's precluded from doing so.

11           The last point I just wanted to briefly address in

12   terms of the economic interest which we already heard Your

13   Honor rule on the extent of our economic interest, but in

14   terms of our ability to assign this agreement, I think what

15   the school district ignores -- and we actually have this in

16   our opposition in footnote 5 -- is that to the extent that

17   there are any restrictions on assignment of the EDA

18   agreement, obviously, under Section 365(f) of the Bankruptcy

19   Code, we may assign executory contracts even though those

20   contracts restrict their prohibited assignment.  For

21   example, under In re Eastman Kodak, 495 B.R. 618 (Bankr.

22   S.D.N.Y. 2013).

23           But beyond that, Article 21 of the EDA agreement

24   says that we can modify the contract.  So again, the school

25   district is not a counterparty to the EDA agreement but the

Page 53

1     Village is.  And so the Village could simply either waive

2     the assignment restrictions or agree and modify those

3     restrictions in order to provide for an assignment.  So, you

4     know, the notion that we -- in the event that Transform, I

5     guess, unconditionally decides that it wishes to withdraw

6     its designation of the EDA agreement for assumption and

7     assignment, we would at that point be able to assign it to

8     another party.  There very well may be interest in that.

9     Obviously, this is a very valuable agreement.

10              THE COURT:  Well, can I interrupt you on that --

11              MR. FRIEDMANN:  Please.

12              THE COURT:  -- point?  I think it's contended that

13    the entire parcel of land that's covered by the agreement is

14    now owned by Transform.  I don't know if that's true but

15    assume for the moment it is true.  Who and why would anyone

16    take an assignment of the agreement if they're not owning

17    the underlying land?  And why would the Village amend the

18    agreement to cover something that isn't there, i.e., it's

19    already owned by someone else?

20              MR. FRIEDMANN:  It's an excellent question.  And

21    the issue really is, it's the economic incentive that the

22    agreement has.  So the agreement -- it doesn't reward -- you

23    know, the benefit is not getting to be an EDA.  The benefit

24    is being able to get money from these tax rolls which really

25    are reimbursement back to Sears for all the investment that

Page 54

1    it made back when the EDA was initially developed.  So under

2    the EDA agreement, one the Village, as you correctly noted,

3    Your Honor, the money flows through the Village.  So under

4    that regime, the Village gets a certain amount of money

5    upfront which is part of the reason I believe the school

6    district is looking to terminate the agreement in its

7    entirety and not just have Transform waive its right to what

8    it gets because they would like to get rid of that piece

9    also.  So you have a Village first picks its share which I

10   believe is a little bit over $5 million a year.  Then after

11   that, you have the rest of the monies which you'll recall

12   from our prior argument gets divvied up 55 percent to Sears,

13   45 percent to the other taxing authorities.

14          So we believe that there may be a lot of interest

15   for a third party to come in and take assignment so that

16   they would be eligible to be able to receive that 55

17   percent.  And certainly, the Village would be interested in

18   helping us find an assignee because they would want to

19   protect their ability to get their $5 million.

20          I think, though, Your Honor, what --

21          THE COURT:  Well, could I ask you -- I'm sorry.

22   I'm sorry.

23          MR. FRIEDMANN:  Yeah.

24          THE COURT:  But could I ask you one follow-up

25   question on that?

Page 55

1              MR. FRIEDMANN:  Of course.

2              THE COURT:  Sears did waive its right to future --

3      I forget how it was phrased, the term --

4              MR. FRIEDMANN:  It would be the EDA funds going

5      forward after 2017.

6              THE COURT:  Yeah.  Future EDA funds after 2017.

7      So what is your response to the school district's argument

8      that any assignee would be bound by that waiver?

9              MR. FRIEDMANN:  Well, we were very careful in that

10     stipulation, Your Honor.  And I think that the school

11     district, you know, did acknowledge this, that there is a

12     provision -- they now say something it doesn't say.  But

13     paragraph 18 of that stipulation very clearly says that

14     "nothing in this Stipulation and Order shall waive,

15     extinguish, or otherwise release the rights, if any, of

16     Debtors? assignee to the EDA Agreement, as applicable, to

17     EDA Funds levied for tax year 2018 or for any subsequent

18     years".

19             So we were very careful in reaching that agreement

20     to protect that right going forward for whether it was

21     Transform or any other assignee that we might have in the

22     event that Transform were to withdraw its designation.

23             THE COURT:  Okay.  And in -- the settlement

24     agreement does elsewhere refer to Transform, right?  It

25     refers to -- I'm looking for it here but my recollection is

1          that --

2                    MR. GENSBURG:  It's referred to in paragraph 18,

3          Your Honor.

4                    THE COURT:  Yeah.  The parties themselves refer to

5          Transform in that agreement separately.

6                    MR. FRIEDMANN:  That is correct.

7                    THE COURT:  Okay.

8                    MR. FRIEDMANN:  Yeah.  The last point I was going

9          to make, Your Honor, is just -- you know, and I think it's

10         probably obvious to you what's going on here is that we've

11         got an agreement that's very valuable.  We've got this

12         somewhat complicated regime going on in the EDA district.

13         And there has been, you know, numerous discussions between

14         the parties to try to figure out what makes the most sense

15         going forward.  And really, you know, from our perspective,

16         this was just an effort, as Your Honor said it better than

17         I'm going to now, but essentially, for the school district

18         and to Transform to try to come up with a scheme where they

19         would be able to get the most value out of here including

20         taking away value that right now, valuable asset that

21         belongs to the estate.  And that's really -- obviously,

22         there's no legal basis for being able to do so.  They have

23         no standing for the relief they're seeking here.  And for

24         all those reasons, Your Honor, we would respectfully ask

25         that their motion be denied.

Page 57

1              THE COURT:  Okay.

2              MR. SCHEIN:  Your Honor --

3              MR. GENSBURG:  Your Honor --

4              MR. SCHEIN:  -- this is Michael Schein, Vedder

5     Price, on behalf of the Village, if I could have a couple

6     minutes?

7              THE COURT:  Sure.

8              MR. SCHEIN:  Your Honor, I won't repeat all that's

9     going on but I want to address a couple of points and one of

10    the questions you asked.

11             First of all, Your Honor, as you may recall when

12    you abstained and granted the school district to take this

13    litigation to the state court a year and a half ago, one of

14    the things that the state court had still not addressed

15    because, as we noted in our footnote, the district is still

16    stuck in first gear trying to get through on a complaint and

17    motion to dismiss.  There has been no determination contrary

18    to the district's counsel's statement.  There's been no

19    determination as to whether not employees but the terms

20    "job" -- there's been no determination what "jobs" means in

21    the statute, what the "EDA area" means in the statute and

22    what's the time frame in the statute.  Keep in mind, Your

23    Honor, the EDA Act was not designed just for -- is not only

24    applicable just to the Sears EDA.  The EDA Act would apply

25    to any other EDA developed in the state of Illinois.  And

Page 58

1    that's why it's drafted the way it's drafted.  That's why

2    the EDA agreement was created because it's created based on

3    compliance with the Act.  So that's why they won't be

4    parties to the agreement because the Act stands alone and is

5    applicable to any EDA agreement that would be in Illinois.

6            As to the jobs in the area, the EDA agreement, as

7    we interpret and we will presumably litigate before the

8    state court, covers more than the 100-acre corporate area.

9    It covers the entire agreement which is a multi-use

10   corporate park full of multiple owners of land and

11   developers within there.  And those developers may very well

12   be interested in taking assignment to this EDA, Your Honor.

13           In addition, separate and apart from this EDA

14   agreement, is an EDA plan that was developed side by side

15   with the agreement.  The debtors aren't a party to the plan

16   and it's not today but the plan contemplates expressly that

17   there could be multiple developers here.

18           So all we want to say is, Your Honor, as to

19   imminent harm, there is no imminent harm to the district --

20   school district here at all.  It is just simply an attempt,

21   as they made clear, if they don't get rid of the EDA

22   agreement before 12/31/20 then they've got another two years

23   on their hand under the dissolution provision even if it

24   gets dissolved, and that's not a presum -- that's not

25   assumed -- even under the dissolution provisions under the

1    EDA act.  So this is just, as the parties have said, their

2    last ditch effort here to grab value and take value away

3    that may very well be valued not only for the debtors but

4    for the Village and, most importantly, for the members of

5    the EDA for which I remind the Court in our footnote no one

6    in the school district resides in EDA.  No students, no

7    nothing.  This is a revenue benefit for all the taxing

8    district and it is simply the school district that is

9    seeking to take a money grab.

10            Thank you, Your Honor.

11            MR. GENSBURG:  Judge, Matt Gensburg.  Can I just

12   address one point?

13            THE COURT:  Sure.

14            MR. GENSBURG:  Thank you, Judge.

15            I just want to address the point of paragraph 18

16   of the amended stipulation and order that Mr. Friedmann

17   referenced as preserving the rights of Sears to assign this

18   to -- the EDA funds to anyone.  All I'm going to say is that

19   on the typical mechanisms of contract instruction, you look

20   at the whole agreement and not just a particular sentence,

21   the whole agreement as a complete document.  And here, this

22   document was entered in a date at a time after Sears' plan

23   had already been filed.  We had raised objections to the

24   plan and which was clear that Sears as an entity was no

25   longer operating.  It was liquidating.

Page 60

1              And so, the concept that Mr. Jared -- Mr.

2    Friedmann is suggesting that Sears was waiving any rights to

3    the 2018 EDA funds and future funds but not the right to

4    monetize those funds through an assignment seems absurd

5    because that means they gave up literally nothing.  They're

6    not operating any longer in terms of as a retail

7    establishment other than operating to the extent necessary

8    to complete the liquidation process.  And so --

9              THE COURT:  Can I interrupt you?  I mean, clearly,

10   they were monetizing it with Transform.  So there would need

11   to be a carve-out from the waiver to make it clear that the

12   waiver of the future EDA funds wouldn't apply to Transform

13   as an assignee --

14             MR. GENSBURG:  Exactly.

15             THE COURT:  -- right?

16             MR. GENSBURG:  Exactly.

17             THE COURT:  But even though this is an agreement

18   with Transform and that uses the defined term "Transform" in

19   a number of places as well as with the Village, the actual

20   language in paragraph 18 doesn't say Transform.  It says

21   "Debtors' assignee".

22             MR. GENSBURG:  Yes.  That's correct, Your Honor.

23   And the reason why that's there is because of the exact

24   reason you referenced.  Transform was not made a party to

25   this agreement.  And so there's nothing we could have done

Page 61

1    to impact -- assuming they could deal with the cure issues

2    and the other objections, impact their designation.  This

3    couldn't happen.  The Court wouldn't allow it.  And so to

4    have it be a carve-out for them.  And that was it.

5                THE COURT:  Well, but it isn't -- wait a minute.

6    It isn't limited to them.  It isn't limited to them.  It

7    doesn't say except with regard to the rights of Transform

8    under the asset purchase agreement.  It just says debtors'

9    assignee.

10               MR. GENSBURG:  Right.  It refers to a singular

11   debtor's assignee.  And if you read it as the present tense,

12   that would be Transform.  Or you could read it as the future

13   tense which means any assignee.  And -- but again, you have

14   to look at it in the context of the total agreement because

15   --

16               THE COURT:  You also look at it in the context of

17   Section 13.1 of the plan which is drafted -- I think the way

18   it's drafted to give the debtors flexibility until the

19   effective date to do something other than with Transform,

20   the way that provision reads.  When you parse through it,

21   that's what it does.

22               MR. GENSBURG:  If you interpret --

23               THE COURT:  And obviously, that was front and

24   center when the parties were drafting this settlement

25   agreement because one of the forms of consideration provided

Page 62

1   by the school district was withdrawing its objection to that

2   plan.

3           MR. GENSBURG:  Yes, sir.  But again, what -- in

4   waiving their rights to the 2018 EDA funds and future funds,

5   when they're liquidating and they simply could assign those

6   to monetize it that way, what waiver has actually occurred?

7   It just -- it's not what the parties intended.  And, yes, as

8   you look at things now, 20/20 hindsight afterwards, you can

9   say, well, that should have been drafted differently.  But

10  when you look at the total agreement and assuming that the

11  intent was to have agreement that made sense, they were

12  actually giving something up, and the fact that debtors'

13  assignee could be a present tense term or a future tense

14  term, but at that point in time it was a defined party,

15  which was Sears, which was Transform Holdco.  An entity

16  wasn't a party to the agreement we could impact anyway.  I

17  think that reflects the intent of the parties.

18          THE COURT:  Well, it was giving something up.  It

19  was giving up its right.  And, of course, there are

20  limitations on assignment as you have argued.  In other

21  words, they're not necessarily synonymous rights.

22          MR. GENSBURG:  For its rights, yes, but with the

23  concept that, however -- I guess the predicate for Sears is

24  however the assignor doesn't stand in the shoes of the

25  assignee.  The assignor will get -- even though Sears has

Page 63

1    given up its rights, which under normal law would mean that

2    any assignee doesn't have rights either, now the assignors

3    will have the rights.  That's the distinction that's sort of

4    illogical is that Sears -- especially in a liquidation

5    scenario, Sears isn't really giving up anything.  And that

6    wasn't the intent.  The intent was to protect Transform

7    Holdco should it be successful with this designation.

8              THE COURT:  Okay.  Well, I guess that negates all

9    the arguments you were making to me that Sears itself can't

10   assign because there's no assignee that could take it.

11             MR. GENSBURG:  We've made arguments in the

12   alternative, Judge.

13             THE COURT:  Right.  Okay.  All right.  Anything

14   else?

15             MR. GENSBURG:  No, sir.

16             THE COURT:  Okay.  All right.

17             I have a motion before me by the school district,

18   as I previously defined it, Community School District 300,

19   for relief in the alternative either to deem economic

20   development agreement (EDA) rejected pursuant to the

21   debtors' confirmed Chapter 11 plan or, in the alternative,

22   to compel the debtors to reject the agreement under Section

23   365(d)(2) of the Bankruptcy Code.

24             The context of this motion is that under an asset

25   purchase agreement with Transform Holdco, Sears agreed to

Page 64

1    sell substantially all of its assets to Transform Holdco

2    including its rights under designated executory contracts

3    which upon designation and approval on notice to the

4    nondebtor party or parties to the contract could be assigned

5    pursuant to Section 365 of the Bankruptcy Code.  Transform

6    Holdco designated the EDA as the contract to be assigned to

7    it as a piece of other ongoing litigation in this case

8    pertaining to Sears' rights under the EDA pursued by the

9    school district in the Chapter 11 case.  The school district

10   objected to that assignment which objection is still

11   pending.

12          They also made a motion to abstain from various

13   matters pending in the Sears bankruptcy case in front of me

14   in favor of litigation as it commenced pre-bankruptcy in

15   Cook County, Illinois pertaining to the school district's

16   argument that Sears was either in default under the EDA or

17   the school district was owed additional monies under the

18   flow-through provision of the EDA from the Village of

19   Hoffman Estates which was the actual party to the EDA and/or

20   Sears in terms of tax benefits that Sears would otherwise

21   receive under the EDA agreement.

22          I partially granted that motion to abstain and the

23   dispute largely moved back to the state court.  After

24   summary judgment litigation was initiated in the state

25   court, the debtor, the Village and the school district

Page 65

1    entered into a stipulation of settlement resolving as far as

2    the debtor was concerned its portion of the dispute

3    pertaining to rights to the disputed EDA fund.  And that

4    settlement was approved by me and after due notice on

5    October 23, 2019.  That left the Village and Transform

6    Holdco still as parties to the state court litigation.

7              Quite recently, I believe roughly a year later,

8    that is, October 27, 2020, the school district and Transform

9    has entered into a settlement agreement that, subject to

10   certain conditions, would resolve Transform's piece of the

11   state court litigation that pertains to rights to EDA funds

12   from and after 2017.  In the settlement stipulation with the

13   debtors and the school district, the debtors agreed to waive

14   their claims in respect of post-2017 EDA funds in return

15   for, among other things, the school district's withdrawal of

16   its objection of the confirmation of the debtors' Chapter 11

17   plan and a specified payment in respect of 2017 EDA funds,

18   in excess of $5 million to the debtors.

19             While it appears clear to me that the school

20   district and Transform could have entered into a similar

21   stipulation simply providing for the allocation of post-2017

22   EDA funds, which would have for the foreseeable future at

23   least relieved the burden on the taxpayers of the portion of

24   those funds that would go not to local revenue but rather to

25   Transform, they have actually agreed to something different

Page 66

1    which requires either agreement by the debtors to a

2    stipulation under which the debtors would reject the EDA

3    agreement pursuant to Section 365 of the Bankruptcy Code and

4    the terms of the plan which has been confirmed, or,

5    alternatively, would require a motion by the district, the

6    Court's entry of an order rejecting the EDA agreement.  It

7    is only on that condition that the settlement would be

8    proposed to the state court.  See paragraph 2 of the

9    Transform agreement with the school district, which is under

10   the heading "Actions to Implement Agreement".

11            Under that settlement agreement, assuming all

12   those conditions occur, and upon termination of the EDA

13   agreement, that is, under paragraphs 3, 4, and 5 and 6,

14   Transform would receive an aggregate of $2.9 million.  And

15   Transform would not seek any portion of the EDA funds or any

16   other funds related to the EDA district in the EDA agreement

17   thereafter.

18            It is of note that under the debtors' settlement,

19   prior settlement, with the school district to which

20   Transform was not a party, although the debtor or debtors

21   waived their right to further EDA funds after the 2017 EDA

22   funds payment, the parties agreed, in paragraph 18, that "

23   nothing in this Stipulation and Order shall waive,

24   extinguish, or otherwise release the rights, if any, of

25   Debtors? assignee to the EDA Agreement, as applicable, to

Page 67

1    EDA Funds levied for tax year 2018 or for any subsequent

2    years."

3              Parties in that settlement agreement certainly

4    understood the role of Transform with respect to the

5    assignment of the EDA agreement under the asset purchase

6    agreement.  And they refer to Transform Holdco by name in

7    paragraph 18.  But in the sentence I quoted, they do not.

8    They simply refer to "Debtors' assignee".

9              Moreover, the plain, as confirmed, in Section

10   31.1, provides that only on the effective date -- or "On the

11   Effective Date, except as otherwise provided in the Plan or

12   Plan Supplement, each Executory Contract" -- and the debtors

13   have always contended that the EDA is an executory contract

14   -- "...not previously rejected, assumed, or assumed and

15   assigned shall be deemed automatically rejected pursuant to

16   sections 365 and 1123 of the Bankruptcy Code, unless" either

17   there's a pending motion "as of the Effective Date... to

18   assume such...Contract...any Executory Contract noticed for

19   assumption and assignment [as] a pending objection that has

20   not yet been resolved."

21             It is clear to me therefore under the plan that

22   the plan reserves the right to reject executory contracts

23   through the effective date.  And the conditions to the

24   effective date are defined in the plan and it's acknowledged

25   by one and all that those conditions have not yet occurred.

Page 68

1    And that they would then be rejected on the effective date

2    unless there was a pending motion to assume the contract or

3    a pending objection with respect to assumption and

4    assignment that has not yet been resolved.

5            There is currently a pending motion to assume and

6    assign that was objected to by the district, as I stated.

7    But under the plain terms of Section 13.1 of the plan, there

8    is no limit on when such motions could be made other than

9    that they have to be pending as of the effective date or on

10   the effective date.  And if not, the contract would then be

11   deemed rejected.

12           It's clear to me from the language in 2.1 of the

13   Transform/district settlement agreement and the record of

14   this hearing that rather than simply allocate between

15   themselves the amount in dispute between themselves,

16   Transform and the district have sought further value in

17   their settlement agreement which would be derived from

18   Sears, or the debtors', rejection of the EDA.  The district

19   has been quite candid in saying that that frees up potential

20   additional significant value to the taxing authorities.  It

21   also appears to me to also take away significant value from

22   the Village of Hoffman Estates under the EDA.  And not only

23   the debtors who don't understand why they should confer such

24   value in return for getting nothing but also the Village of

25   Hoffman Estates have objected to the motion.

Page 69

1           It's clear that this motion's first basis for

2      relief, i.e., that the EDA agreement should be deemed

3      rejected under the plan is unsustainable.  I've noted the

4      plan itself reserves rejection by its terms to the effective

5      date of the plan subject to a further extension if a motion

6      to assume is pending on the effective date or there's an

7      objection that's unresolved to a motion for assumption and

8      assignment on the effective date.

9           So even though it appears that Transform has

10     conditionally agreed subject to the steps they've taken in

11     2.1 of its settlement agreement with the district to

12     withdraw its designation of its EDA as an assumed and

13     assigned contract to it, that would not lead to the

14     rejection of the contract, under Section 13.1, because the

15     effective date has not yet occurred.  That is, the effective

16     date of the plan has not occurred.

17          The Bankruptcy Code makes a distinction, as does

18     the plan, between confirmation of a plan and the effective

19     date of a plan.  When a plan is confirmed, it has a certain

20     status.  The plan proponent cannot change that status except

21     as provided for under Section 1127 of the Bankruptcy Code.

22     And no other party can modify the plan at all other than the

23     plan proponent or the reorganized debtor.  So in that sense,

24     the plan controls.  And certainly, the debtor has not

25     withdrawn the plan or sought to modify it, the debtor being

Page 70

1    the plan proponent and as defined in the plan, the

2    reorganized debtor.

3            So I deny the motion's request on the first

4    alternative basis for relief.

5            The motion also seeks a determination under

6    Section 365(d)(2) of the Bankruptcy Code -- or an order,

7    that is -- directing at this time that the debtor assume or

8    reject the EDA agreement.  There are a number of problems

9    with this alternative request for relief, however.  First,

10   as I've noted, the plan itself has been confirmed.  Section

11   365(d)(2) of the Bankruptcy Code says that "In a case under

12   chapter 11 of this title, the trustee" -- or debtor-in-

13   possession -- "may...reject an executory...at any time

14   before...confirmation of a plan but the court, on the

15   request of any party to such contract or lease, may order

16   the trustee to determine within a specified period of time

17   whether to assume or reject such contract or lease."

18           I'll repeat again the second clause.  "[O]n the

19   request of any party to such contract or lease, [the court]

20   may order the trustee to determine within a specified period

21   of time whether to assume or reject..."

22           The import of this rule is that normally debtors

23   have until confirmation of a plan to assume or reject an

24   executory contract or unexpired lease.  But that such

25   ability, under certain circumstances as developed in the

Page 71

1   case law, may be curtailed on motion by a party to the

2   contract to shorten the time to assume or reject.

3            The school district is not a named party to the

4   contract.  Plain and simple.  The contract is between one of

5   the debtors and the Village of Hoffman Estates.  It would

6   not therefore have standing under Section 365(d)(2) to make

7   such a motion.  See In re Riverside Nursing Home, 43 B.R.

8   682, 684-85 (Bankr. S.D.N.Y. 1984).

9            Congress in the Bankruptcy Code specifically used

10  the phrase "party to such contract" as opposed to a phrase

11  that uses another section to the Code, "party-in-interest".

12  Even when it uses the phrase "party-in-interest", the case

13  law is clear that that does not encompass a person or entity

14  who is merely concerned in the contract, i.e., a creditor of

15  the contract party, such as a mortgage holder that, under

16  certain circumstances, would have a right to lease payments

17  be made directly to it under its agreement with the lessor

18  to a debtor.  See, generally, the discussion in In re Martin

19  Paint Stores, 199 B.R. 258, 264 (Bankr. S.D.N.Y. 1996).

20           The district tries to get around this problem by

21  stating that the statute under which the EDA was enacted was

22  amended in 2011 to extend the term of the benefits of the

23  EDA and to explicitly set forth a mechanism for the Village

24  of Hoffman to distribute tax monies to various taxing

25  authorities apparently none of whom were specifically named.

Page 72

1    The amendment was not embodied in the contract itself which

2    has an amendment and integration provision in Article 21.

3    And I conclude that those facts do not elevate the district

4    to being a party to the EDA agreement as required for

5    standing under Section 365(d)(2).

6             In addition, under the initial clause of Section

7    365(d)(2), a Chapter 11 debtor may reject an executory

8    contract any time before confirmation of a plan.  As noted,

9    the plan here has been confirmed.  The motion was made well

10   after the confirmation date and therefore runs afoul of that

11   well recognized directive in Section 365(d)(2).

12            The district tries to get around that provision by

13   noting the second clause of the sentence which I'll read for

14   the third time, namely, "but the court on the request of any

15   party to such contract or lease may order the trustee to

16   determine within a specified period of time whether to

17   assume or reject such contract or lease".  The district

18   contends that that right to make a request transforms or

19   overcomes the time limitation in the first clause and

20   extends it effectively during the post-confirmation period.

21            I do not accept the logic of that argument.  It is

22   true that this plan has been in the stage between

23   confirmation and the effective date longer than many Chapter

24   11 plans.  But during that period, I believe that if

25   anything extends the time to assume or reject, it is the

Page 73

1      plan itself, as I've discussed in Section 13.1.

2              There's a fairly substantial body of case law that

3      harmonizes a right of a plan proponent in a plan, under

4      Section 1123(b)(2) of the Bankruptcy Code, to provide in a

5      plan that the plan "subject to section 365 of this title,

6      provide for the assumption, rejection, or assignment of any

7      executory contract or unexpired lease of the debtor not

8      previously rejected under such section" in a way that

9      extends the deadline to assume, reject or assume and assign

10     an executory contract notwithstanding the time limit in

11     Section 365(b)(2).  They find the ability to do that even

12     though Section 1123(b)(2) begins with the clause "subject to

13     section 365".  See, for example, ReGen Capital I, Inc. v.

14     UAL Corp., In re UAL Corp., 635 F.3d 312, 320-321 (7th Cir.

15     2010) amended by, although not materially so, ReGen Capital

16     I, Inc. v. UAL Corp., In re UAL Corp., 2011 U.S. App. LEXIS

17     26341 (7th Cir. April 13, 2011).  See also DJS Properties,

18     L.P. v. Simplot, 317 B.R. 493, 498-99 (D. Idaho 2008) and

19     the cases cited therein including In re Gunter Hotel

20     Associates, 96 B.R. 696 (Bankr. W.D. Texas 1988) and In re

21     Malden Mills Inc., 35 B.R. 71 (Bankr. D. Mass. 1983).

22              Ultimately, the theory behind these cases is if a

23     plan is confirmed because of the binding nature based on

24     both statutory and common law res judicata of a confirmed

25     plan, including under Section 1141 of the Bankruptcy Code,

Page 74

1    it can alter a specific provision of the Code setting forth

2    a deadline, like Section 365(d)(2) but only, of course, to

3    the extent provided in the plan.  That point is made clear

4    in In re WorldCom Inc. 2006 WL 89029 (Bankr. S.D.N.Y. March

5    9, 2006) at page 2 through 3 where Judge Gerber concluded

6    the executory contract would not be rejected post-

7    confirmation because the plan itself, which reserves certain

8    ability to deal with executory contracts post-confirmation,

9    i.e., to permit assumption of pending motions and

10   consideration of pending motions to reject, contact no

11   language reserving the right to seek rejection

12   post-confirmation.  And unlike Section 13.1 of the plan, the

13   right to assume or assign was not reserved except as

14   specifically provided through the effective date unless the

15   plan provided, by its plain terms, for the subsequent right

16   to reject before the effective date and post-confirmation.

17   Therefore, the gap is filled by Section 365(d)(2)'s

18   requirement that rejection be pre-confirmation.  Here, it

19   cannot be accelerated given the tie-in specifically to the

20   effective date in the plain terms of the plan.

21          Lastly, even if the district had standing to make

22   such a request under 365(d)(2), which it does not, even if

23   the Court had the ability to extend the rejection deadline

24   to a date post-confirmation other than the effective date as

25   provided in Section 13.1 of the plan, the motion does not

Page 75

1   satisfy the requirements to compel assumption or rejection

2   under the case law.  See In re Dana Corp., 350 B.R. 144

3   (Bankr. S.D.N.Y. 2006).

4           The factors listed in that case are not all

5   relevant here and they needn't be but they help to guide the

6   Court's decision.  They include:

7           The importance of the contract to the debtor's

8   business and reorganization;

9           The debtor's failure or ability to satisfy post-

10  petition obligations, including to the nondebtor contract

11  party; the nature of the interest at stake;

12          The balance of hurt to litigants and the good to

13  be achieved;

14          Whether the debtor has had sufficient time to

15  appraise its financial situation and potential value of its

16  assets in formulating the plan;

17          The safeguards afforded to litigants;

18          The damage that the nondebtor will suffer beyond

19  compensation available under the Bankruptcy Code;

20          Whether there is need for judicial determination

21  as to whether the executory contract exists;

22          Whether the exclusivity period has been

23  terminated;

24          Whether the action to be taken is so in derogation

25  of a congressional scheme that the Court may be said to be

Page 76

1   arbitrary; and then finally

2            The purpose of Chapter 11, which is to permit

3   successful rehabilitation of debtors.

4            Now again, these factors don't all need to

5   pertain.  For example, executory contract or an asset in a

6   liquidation case as well as evidenced by the assumption and

7   proposed assignment -- proposed assumption and assignment of

8   the EDA to Transform.  And I've already discussed the fact

9   that this is a third tier of reason why the motion's second

10  prong for relief failed, namely, the fact that a plan has

11  been confirmed and specifically carves out certain rights

12  with respect to the debtors' right to reject agreements up

13  to the effective date -- or as of the effective date,

14  rather, subject to the specific narrow exceptions -- colors

15  the entire analysis.

16           What is relevant here are two major factors which

17  I tried to take into account.  First is the time within

18  which the debtor has been given to evaluate what really are

19  new facts, a very recent proposed settlement, albeit

20  conditional, between the party that the debtor believed

21  would be taking the EDA, Transform, whereby now it appears

22  Transform would not be taking it, albeit on a conditional

23  basis.

24           Secondly, it is clear to me, as I said before as

25  part of this record, that there is real value in the

Page 77

1    agreement potentially to the debtors' estate as evidenced by

2    the extra relief by in their request now before me that

3    Transform and the district have conditioned their agreement

4    on.  Bankruptcy policy argues that that value should go to

5    the debtor unless there are strong countervailing

6    considerations.

7            I am certainly sympathetic to the taxing

8    authorities' desire to get from under the EDA structure

9    generally so that they will not have to make up for that tax

10   benefit difference on the backs of their taxpayers.

11   However, certainly in the relatively near term before the

12   effective date of the plan occurs, which then would, of

13   course, trigger, the rejection or assumption deadline under

14   the plan itself in Section 13.1, Transform and the district

15   could have eliminated that economic impact without trying to

16   force the debtors' hand and, secondarily, the Village of

17   Hoffman's hand with this motion simply by Transform's giving

18   up the value without imposing conditions on it during that

19   period.  They've chosen not to do that but instead to seek

20   this additional relief as far as the debtors' estate is

21   concerned.

22           So it does not appear to me that the district is,

23   if I deny this motion, suffering damage that it cannot

24   within its control with Transform resolve in the near term.

25   It's contended, although belatedly by a reply to the

Page 78

1    objection, that the debtor really doesn't have the ability,

2    either as a legal or as a practical matter, to assume and

3    assign an agreement with someone other than Transform.

4    Besides the fact that this issue was raised in their reply a

5    few days ago, it does not necessarily appear to me to be

6    true that that is the case.  First, as I noted at the

7    beginning of this ruling, it appears to me that in the

8    settlement agreement with the district, the debtor reserved

9    its rights to assign and then its waiver of 2018 and

10   thereafter EDA funds was personal to it and did not -- would

11   not apply to its assignee defined generically as opposed to

12   Transform or some Transform entity as contemplated by the

13   APA.

14          Secondly, the very structure and conditional

15   nature of the Transform/school district settlement agreement

16   pretty clearly suggests that those parties believe that the

17   debtor has real rights under the EDA agreement to have

18   economic value and that there is economic value in the

19   termination of those rights by a, as the agreement says,

20   irrevocable rejection of the EDA agreement.

21          Moreover, at least based on this record, it

22   appears to me, including my review of Section 18 of the EDA

23   agreement, that the agreement is currently assignable if

24   Transform would ever actually file and irrevocably show,

25   which it has not yet done, unconditionally, that is, its

1    withdrawal of the EDA as a contract to be assigned to it.

2          So although this is not required, I conclude that

3    even if one were to read into the plan, which would be the

4    only source for extending the deadline under Section

5    365(d)(2), an ability to compel rejection before the

6    effective date, which is provided nowhere in Section 13.1 of

7    the plan, even if one were to find standing under 365(d)(2)

8    that one would not on this record compel the debtors to

9    reject the EDA agreement.

10          So I will ask the debtors to submit an order

11   consistent with that ruling denying the motion.  You don't

12   have to formally settle it on counsel for the district and

13   counsel for the Village but you should circulate it to them

14   and/or cc them when you e-mail it to chambers.

15          I trust that the parties may well be able to

16   resolve this matter without much more litigation.  I have no

17   desire to increase the litigation load on the Cook County

18   Chancery Court or further litigation in this court.  And I

19   trust the parties don't either.  But at this point, it

20   appears to me that two parties to a dispute have tried to

21   resolve the dispute and on the backs of the debtor and the

22   Village of Hoffman Estates and, for the reasons I stated in

23   my ruling, that's just not going to work.

24          So I think that concludes today's hearing.  Is

25   there any question or anything else for today in the Sears

1    case?

2            MR. FRIEDMANN:  Nothing for the debtors, Your

3    Honor.  Thank you very much.

4            THE COURT:  Okay.  All right.  Very well.  So I'll

5    look for that order then.

6            MR. FRIEDMANN:  Thank you.

7            MR. FLOREY:  Thank you, Judge.

8            MR. GENSBURG:  Thank you, Your Honor.

9     (Whereupon, these proceedings were concluded at 4:56 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2

3                        R U L I N G S

4

5   DESCRIPTION                              PAGE      LINE

6   Motion of Community Unit School District 300    79        11

7     to deem economic development agreement

8     rejected or, in the alternative, to compel

9     debtors to reject agreement denied

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 82

1              C E R T I F I C A T I O N

2

3      I, Lisa Beck, certify that the foregoing transcript is a

4      true and accurate record of the proceedings.

5      Lisa Beck

       Digitally signed by Lisa Beck
       DN: cn=Lisa Beck, o, ou,
       email=digital@veritext.com, c=US
6      _____
       Date: 2020.11.30 11:35:12 -05'00'

7      Lisa Beck

8

9      Date:  November 30, 2020

10

11     Veritext Legal Solutions

12     330 Old Country Road

13     Suite 300

14     Mineola, NY 11501

15

16

17

18

19

20

21

22

23

24

25

[& - 493]                                                                      Page 1

**&**

**&** 5:2,12 6:1 7:1
10:6

**1**

**1** 6:19 12:16 13:8
16:19
**10** 21:19 29:6
**100** 30:23 39:5,16
39:21 40:3 43:14
58:8
**10019** 8:5
**10036** 5:16 6:4
**10153** 5:5
**105** 23:11 24:24
**10601** 1:17
**11** 2:1,11,16 3:10
3:18 9:23 19:18
22:24 63:21 64:9
65:16 70:12 72:7
72:24 76:2 81:6
**1101** 52:2
**1123** 16:12 21:3
21:13 24:2,17,20
25:16,23 26:23
27:3,15,25 28:4,9
28:12,13 40:10
67:16 73:4,12
**1127** 51:10,11,15
52:2,4 69:21
**1141** 73:25
**11501** 82:14
**12/31/20** 58:22
**1211** 6:3
**13** 10:25 16:5,5
73:17
**13.1** 19:5 21:7,22
24:3 26:5,22 28:4
28:11 29:19 52:8
61:17 68:7 69:14
74:12,25 77:14
79:6
**13.1.** 73:1

**1323** 24:5
**14** 19:11 21:19
22:14 26:10 29:6
**144** 75:2
**15** 46:9,20 47:19
**15.4** 46:7
**15th** 14:7 32:3
39:13
**1633** 8:3
**16th** 31:4
**17.2** 51:25
**18** 2:5 39:19 55:13
56:2 59:15 60:20
66:22 67:7 78:22
**18-23538** 1:3,25
**18.1** 39:1 40:2
**18.1.** 38:25
**19-08250** 6:18
**1983** 73:21
**1984** 71:8
**1988** 73:20
**1989** 45:25
**199** 49:4 71:19
**1996** 49:4 71:19
**1st** 31:17 32:21
34:6

**2**

**2** 10:18 11:14,19
11:25 12:5 15:17
17:2,20 19:2 21:3
22:23,23 24:2,5
24:10,11 25:4,13
25:19,25,25 26:20
26:23 27:15,17
28:6,12,13,20,21
29:1,21 40:10
44:16 45:13,22
48:3 51:22 63:23
66:8 70:6,11 71:6
72:5,7,11 73:4,11
73:12 74:2,5,17
74:22 79:5,7

**2.1** 44:13 68:12
69:11
**2.9** 13:19 15:21
31:12 50:13 66:14
**20** 1:19 2:5 4:9
**20,000** 50:8
**20/20** 62:8
**200** 7:3
**2006** 74:4,5 75:3
**2008** 73:18
**2010** 73:15
**2011** 44:19 46:8
47:6 71:22 73:16
73:17
**2012** 46:1,4 47:17
**2013** 52:22
**2017** 37:18 55:5,6
65:12,14,17,21
66:21
**2018** 13:14 35:1
42:9 43:1 55:17
60:3 62:4 67:1
78:9
**2019** 65:5
**2020** 1:19 2:5,5
4:9 12:22,23 65:8
82:9
**2021** 32:23 34:12
**2022** 32:21 34:12
**2027** 47:19
**21** 45:5 52:23 72:2
**23** 65:5
**236** 7:10
**248** 1:16
**258** 49:4 71:19
**2600** 6:20
**26341** 73:17
**264** 71:19
**27** 11:24 46:5 65:8
**2:30** 1:20 2:2,5
4:9

**3**

**3** 12:23 13:16 17:5
44:17 66:13 74:5
**30** 12:22 38:16
82:9
**300** 1:16 2:9,15
3:2,13,16,21 4:3
6:2 7:2,9,16 9:21
12:6,22,25 41:19
63:18 81:6 82:13
**304** 13:13
**31.1** 67:10
**312** 73:14
**317** 73:18
**31st** 8:4
**320-321** 73:14
**330** 82:12
**35** 73:21
**350** 75:2
**362** 23:22,24
**365** 12:14 16:12
19:2 21:1,3,13
22:3,20,23,23
24:6,8,8,9,10,11
25:4,25 26:20,24
27:16,17 28:6,20
28:21 29:1,21
41:24 44:16 45:13
45:22 48:3 51:22
52:18 63:23 64:5
66:3 67:16 70:6
70:11 71:6 72:5,7
72:11 73:5,11,13
74:2,17,22 79:5,7

**4**

**4** 13:16 19:25
22:13 26:8 44:22
66:13
**43** 71:7
**444** 6:10
**45** 54:13
**493** 73:18

**[495 - agreement]**                                        Page 2

| | | | |
|---|---|---|---|
| **495** 52:21 | **9071** 3:21 | **acres** 30:23 39:5 | **agree** 12:3 19:14 |
| **498-99** 73:18 | **9079** 2:19 | 39:21 40:3 | 34:24 35:18,24 |
| **4:56** 80:9 | **9082** 3:6 4:5 | **act** 38:1 44:19 | 53:2 |
| **5** | **9084** 4:6 | 46:8,21,22 57:23 | **agreed** 17:19 |
| | **96** 73:20 | 57:24 58:3,4 59:1 | 34:24 63:25 65:13 |
| **5** 13:16 52:16 | **a** | **action** 13:11 | 65:25 66:22 69:10 |
| 54:10,19 65:18 | | 26:14 31:11 34:10 | **agreement** 2:10 |
| 66:13 | **ability** 24:4 48:14 | 75:24 | 2:12,15,18 3:3,4,9 |
| **51** 39:9 | 52:14 54:19 70:25 | **actions** 12:2,4 | 3:12,17,19 4:3,5 |
| **54.4** 46:7 | 73:11 74:8,23 | 66:10 | 9:22,22,25 10:10 |
| **5492** 2:12 | 75:9 78:1 79:5 | **actual** 10:21 | 10:12,17,18,23 |
| **55** 7:17 13:14 37:2 | **able** 39:12 53:7,24 | 43:18 46:19 47:17 | 11:5,20 12:1,2,5,8 |
| 37:2 54:12,16 | 54:16 56:19,22 | 60:19 64:19 | 12:10,13 13:1,2 |
| **6** | 79:15 | **adam** 7:3 | 13:18 15:14 17:4 |
| | **absolutely** 51:24 | **add** 24:2 | 17:21 19:3 20:2 |
| **6** 45:3 66:13 | **abstain** 50:20 | **added** 34:17 | 20:21 22:15 23:19 |
| **60** 38:16 46:6 | 64:12,22 | **addition** 50:1 | 29:15,16 30:3,5,9 |
| **60108** 7:11 | **abstained** 57:12 | 58:13 72:6 | 30:14,22 31:5,7 |
| **6060** 6:21 | **absurd** 60:4 | **additional** 36:24 | 32:3 38:9 39:12 |
| **60603** 7:18 | **accelerate** 24:1,12 | 44:20 46:5,20 | 41:2,18,20 42:8 |
| **60606** 7:4 | 28:23 29:4,23 | 64:17 68:20 77:20 | 42:19,23 43:3,6 |
| **618** 52:21 | 36:24 41:12 | **address** 19:4 | 43:17 44:12,13,15 |
| **635** 73:14 | **accelerated** 74:19 | 52:11 57:9 59:12 | 44:19,20 45:4,6 |
| **682** 71:8 | **accept** 22:1 28:12 | 59:15 | 45:12,20,24,25 |
| **684-85** 71:8 | 28:12 72:21 | **addressed** 44:14 | 46:2,4,19,21,24 |
| **696** 73:20 | **accepting** 26:11 | 49:21 50:23 57:14 | 47:10,17,18,21 |
| **7** | 26:18 28:3 | **addressing** 38:21 | 50:3,6,6,12,14,15 |
| | **access** 34:16 | 38:22 44:4 | 52:14,18,23,25 |
| **7** 41:4,4 | **accessed** 35:14 | **adjourned** 9:18 | 53:6,9,13,16,18 |
| **71** 73:21 | **accessible** 34:20 | **adjournment** 2:4 | 53:22,22 54:2,6 |
| **767** 5:4 | **account** 51:1 | **admission** 50:4 | 55:16,19,24 56:5 |
| **79** 81:6 | 76:17 | **adv** 6:18 | 56:11 58:2,4,5,6,9 |
| **7th** 73:14,17 | **accurate** 82:4 | **advantage** 32:14 | 58:14,15,22 59:20 |
| **8** | **achieved** 75:13 | **affect** 42:20 | 59:21 60:17,25 |
| | **acknowledge** | **afforded** 75:17 | 61:8,14,25 62:10 |
| **8.1** 40:14 | 55:11 | **afoul** 72:10 | 62:11,16 63:20,22 |
| **89029** 74:4 | **acknowledged** | **afternoon** 9:2 | 63:25 64:21 65:9 |
| **9** | 67:24 | 30:20 49:18 | 66:1,3,6,9,10,11 |
| | **acknowledges** | **agenda** 4:8 9:16 | 66:13,16,25 67:3 |
| **9** 74:5 | 45:3 | 9:17 | 67:5,6 68:13,17 |
| **900** 6:11 | **acquired** 33:17 | **aggregate** 66:14 | 69:2,11 70:8 |
| **9019** 42:20 | **acre** 39:16 43:14 | **ago** 20:14 57:13 | 71:17 72:4 77:1,3 |
| **9061** 2:12,18 3:5 | 58:8 | 78:5 | 78:3,8,15,17,19 |
| 3:12,19 | | | |
| **9062** 3:13 | | | |

78:20,23,23 79:9
81:7,9
**agreements** 76:12
**airlines** 25:16
**akin** 5:12
**al** 1:9,25 6:18 9:3
**alan** 10:5
**albeit** 76:19,22
**allen** 3:12,20 6:6
**allocate** 68:14
**allocated** 45:1
51:4
**allocation** 65:21
**allow** 46:8 61:3
**allows** 32:13
51:11
**alluded** 50:19
**alter** 74:1
**altering** 51:10
**alternative** 2:11
2:17 3:3,11,18 4:4
9:24 26:2,21
28:10 63:12,19,21
70:4,9 81:8
**alternatively** 66:5
**amend** 53:17
**amended** 12:15
45:4 46:8,19,24
59:16 71:22 73:15
**amendment** 44:18
44:23 46:11,21,21
47:21 48:6 72:1,2
**americas** 6:3
**amount** 41:25
54:4 68:15
**analysis** 76:15
**annual** 46:14
**annually** 46:17
**answer** 38:18
**anymore** 26:19
**anyway** 14:7
62:16

**apa** 12:12 13:4
15:7 78:13
**apart** 58:13
**apologize** 28:8
**app** 73:16
**apparently** 43:14
71:25
**appealable** 13:13
**appear** 77:22 78:5
**appears** 23:9
40:20 65:19 68:21
69:9 76:21 78:7
78:22 79:20
**applicable** 13:10
13:12 44:10 55:16
57:24 58:5 66:25
**applies** 52:4
**apply** 21:12 24:20
25:24 35:12,12
57:24 60:12 78:11
**applying** 21:2
**appraise** 75:15
**appropriate**
23:14,25 24:12
25:1 51:4
**approval** 12:19
64:3
**approved** 17:2
65:4
**april** 73:17
**arbitrary** 76:1
**archer** 6:1 10:6
**area** 57:21 58:6,8
**arguably** 40:9
**argue** 29:22
**argued** 39:13
62:20
**argues** 26:5 77:4
**arguing** 20:16
24:17 28:2 47:9
**argument** 22:1
23:16 24:19 26:2
26:17,22 28:3

29:19 48:12 54:12
55:7 64:16 72:21
**arguments** 19:5
26:12 31:5 32:2
38:19,21 49:7
63:9,11
**arises** 28:11
**arising** 23:8 41:17
**arrange** 9:11
**article** 19:11
26:10 45:5 52:23
72:2
**articulate** 28:8
**asked** 50:20 57:10
**asking** 23:4,19
31:10 34:9 35:3,3
37:12,13
**assembly** 44:18
**assess** 32:14
**assessed** 32:14
33:4
**assessing** 32:25
**asset** 56:20 61:8
63:24 67:5 76:5
**assets** 64:1 75:16
**assign** 10:11
30:14 37:23 39:12
39:14,19,22 42:13
43:12 52:14,19
53:7 59:17 62:5
63:10 68:6 73:9
74:13 78:3,9
**assignable** 78:23
**assigned** 12:11
13:3 16:11,16
17:14 28:15 39:17
39:20 40:7 64:4,6
67:15 69:13 79:1
**assignee** 37:22
39:23 42:13 43:8
43:9,11,17 50:22
51:6 54:18 55:8
55:16,21 60:13,21

61:9,11,13 62:13
62:25 63:2,10
66:25 67:8 78:11
**assignment** 16:25
17:10 30:10 39:2
40:12,13 52:17,20
53:2,3,7,16 54:15
58:12 60:4 62:20
64:10 67:5,19
68:4 69:8 73:6
76:7,7
**assignor** 62:24,25
**assignors** 63:2
**associates** 27:23
73:20
**assume** 16:21
17:8 19:3 21:3
22:3,25 23:17
24:4,6,22 25:9
41:2,12 42:12
45:17 53:15 67:18
68:2,5 69:6 70:7
70:17,21,23 71:2
72:17,25 73:9,9
74:13 78:2
**assumed** 12:11
13:3 16:11,11,16
16:16 27:5,18
28:15 40:7 58:25
67:14,14 69:12
**assuming** 22:17
61:1 62:10 66:11
**assumption** 16:25
17:9 25:4 40:12
41:24 53:6 67:19
68:3 69:7 73:6
74:9 75:1 76:6,7
77:13
**atkinson** 7:8,13
**attach** 33:4
**attached** 11:8,9
12:8 14:1 31:6
32:3

**attempt** 58:20
**attention** 27:14
**attorneys** 5:3,13
6:2,9,17 7:2,9,16
8:2
**attributable**
15:21
**authoritative**
23:10
**authorities** 50:10
54:13 68:20 71:25
77:8
**authority** 20:20
21:5 23:25 29:2
29:11,23 49:12
**authorized** 9:9
**authorizes** 24:11
**automatically**
16:12 67:15
**available** 75:19
**avenue** 5:4 6:3
**avoid** 23:9
**avoidance** 16:23

**b**

**b** 1:22 12:20
17:20 21:3 24:2,5
24:9,10,11 25:4
25:13,25,25 26:23
27:15 28:13 40:10
52:2,4 73:4,11,12
**b.r.** 49:4 52:21
71:7,19 73:18,20
73:21 75:2
**back** 22:3,5,10,10
24:21 36:6,11
37:23 40:4 41:23
43:23 44:9 53:25
54:1 64:23
**backs** 77:10 79:21
**balance** 75:12
**bankr** 49:4 52:21
71:8,19 73:20,21
74:4 75:3

**bankruptcy** 1:1
1:15,24 12:14,19
12:23 13:6 16:13
17:3 19:2 22:10
22:20 27:22 40:6
40:22 41:3 48:18
49:6,7,15 52:3,18
63:23 64:5,13,14
66:3 67:16 69:17
69:21 70:6,11
71:9 73:4,25
75:19 77:4
**bargained** 36:23
**based** 33:7 46:23
58:2 73:23 78:21
**basic** 10:8
**basis** 47:9 56:22
69:1 70:4 76:23
**beck** 4:25 82:3,7
**becoming** 13:18
**beginning** 47:6
78:7
**begins** 73:12
**behalf** 2:19 3:5,13
3:20 4:6 10:5
14:22 19:7 30:21
31:15 49:19 57:5
**belatedly** 77:25
**belief** 14:3 42:7
**believe** 11:8,24
14:11,13,25 15:16
16:8 24:13 33:19
35:7 38:12 43:15
46:23 48:5,23
54:5,10,14 65:7
72:24 78:16
**believed** 38:16
76:20
**belongs** 56:21
**beneficiary** 47:10
47:13 48:7,11,14
49:10 50:3,15

**benefit** 31:13 32:4
34:25 35:2,4,8,14
35:18,20 36:19
37:5 43:22 53:23
53:23 59:7 77:10
**benefits** 64:20
71:22
**better** 56:16
**beyond** 37:5
47:17 52:23 75:18
**bill** 37:3
**bills** 33:3
**binder** 14:17
**binding** 16:4 20:4
20:7,15 21:10
23:9,19,24 25:22
26:7 45:7 73:23
**binds** 20:10
**bit** 14:24 54:10
**bloomingdale**
7:11
**bodies** 34:20 42:3
**body** 15:1 73:2
**bound** 20:16
22:14 23:20 26:5
28:11 29:17,19
55:8
**brauner** 5:19
**brief** 41:4 49:20
**briefly** 49:16
52:11
**brings** 22:5,9
**broad** 10:22
**broadway** 8:3
**bryant** 5:15
**building** 34:22
**burden** 65:23
**business** 12:16
13:8 75:8

**c**

**c** 5:1,18 9:1 13:9
17:20 82:1,1

**calandriello** 7:1
**calendar** 34:10,11
**called** 14:19
**candid** 68:19
**capable** 36:18
**capital** 73:13,15
**capitalized** 44:24
**capture** 42:10
**careful** 38:10 55:9
55:19
**carry** 25:1 47:18
**carve** 60:11 61:4
**carves** 76:11
**case** 1:3 6:18
20:19 22:24 24:24
40:11 41:1 42:21
64:7,9,13 70:11
71:1,12 73:2 75:2
75:4 76:6 78:6
80:1
**cases** 21:17 25:16
27:3,13,24 28:14
47:25 48:11,18
49:1 73:19,22
**cause** 28:23 29:3
29:12,21 37:24
44:3
**cc** 79:14
**center** 61:24
**certain** 48:1 54:4
65:10 69:19 70:25
71:16 74:7 76:11
**certainly** 20:9
54:17 67:3 69:24
77:7,11
**certify** 82:3
**ch** 2:1
**chambers** 79:14
**chancery** 11:20
79:18
**change** 17:23
69:20

**changing** 40:22
40:22
**chapter** 2:10,16
3:10,18 9:23
19:18 22:24 41:3
41:4 63:21 64:9
65:16 70:12 72:7
72:23 76:2
**chapters** 29:14
**chesley** 6:14
**chicago** 6:12,21
7:4,18
**chose** 45:13
**chosen** 77:19
**chris** 6:23
**cir** 73:14,17
**circles** 27:2
**circuit** 25:16
27:20
**circular** 29:19
**circularity** 21:17
21:21
**circulate** 79:13
**circumstance**
41:11
**circumstances**
24:1,12 48:2
70:25 71:16
**cite** 27:25 48:25
**cited** 30:12 73:19
**claim** 44:8
**claims** 65:14
**clarify** 28:7
**clause** 16:14 25:7
25:10,12 70:18
72:6,13,19 73:12
**clear** 15:18 17:18
18:24,25 24:24
26:4 31:9 42:1,22
43:3 44:11 45:9
47:6 51:11 58:21
59:24 60:11 65:19
67:21 68:12 69:1

71:13 74:3 76:24
**clearer** 32:1
**clearly** 37:20
41:16 43:15 50:1
55:13 60:9 78:16
**clerk's** 9:11
**client** 9:5 30:15
31:1 45:12
**clients** 31:14,24
32:5
**code** 12:14 16:13
19:2 21:13 22:10
22:20 24:21,24
33:8 34:14 40:6
40:22 48:10 49:8
49:15 52:3,19
63:23 64:5 66:3
67:16 69:17,21
70:6,11 71:9,11
73:4,25 74:1
75:19
**collected** 50:18
51:3
**college** 43:21
**colors** 76:14
**come** 28:4,5 40:4
44:9 49:6 50:2
54:15 56:18
**coming** 42:11
**commenced** 64:14
**committee** 5:13
22:18
**common** 20:8
73:24
**community** 2:8,14
3:2,8,13,15,20 4:2
6:2 7:2,9,16 9:20
63:18 81:6
**compel** 2:8,11,17
3:4,11,18 4:4 9:24
12:25 19:2 23:4
63:22 75:1 79:5,8
81:8

**compensation**
75:19
**complaint** 57:16
**complete** 59:21
60:8
**completely** 9:4
27:16
**compliance** 58:3
**complicated**
56:12
**compounded** 33:6
**concept** 28:13
29:11 60:1 62:23
**concerned** 34:23
65:2 71:14 77:21
**conclude** 72:3
79:2
**concluded** 74:5
80:9
**concludes** 79:24
**concurrently** 13:5
**condition** 15:21
18:8 36:24 66:7
**conditional** 15:1
17:22 76:20,22
78:14
**conditionally**
69:10
**conditioned** 15:4
15:5 77:3
**conditions** 15:10
15:11 17:19 18:2
19:12 29:7 35:17
65:10 66:12 67:23
67:25 77:18
**confer** 68:23
**conferred** 45:21
**confident** 44:5
**confirm** 14:4
**confirmation**
17:25 20:1 21:4,5
21:6,14 22:7,8,13
23:1,5,23 24:23

25:5,11,13,14,18
26:8 27:5,18,19
28:16,18,22,25
29:2,18 40:8,16
51:12 52:5,9
65:16 69:18 70:14
70:23 72:8,10,20
72:23 74:7,8,12
74:16,18,24
**confirmed** 2:10
2:16 3:10,17 9:23
20:20 21:19 23:3
23:4 25:22 28:17
28:18,24 40:8
51:25 52:3 63:21
66:4 67:9 69:19
70:10 72:9 73:23
73:24 76:11
**confusion** 23:7
**congress** 45:13
71:9
**congressional**
75:25
**connection** 17:4
**consensual** 16:24
**consequence**
20:23
**consider** 19:9
23:13
**consideration**
13:17 41:9 61:25
74:10
**considerations**
77:6
**consistent** 79:11
**consisting** 39:5
**consumer** 33:7
34:18
**consummated**
52:2
**consummation**
51:13 52:5

**contact** 9:11
74:10
**contained** 40:14
**contemplated**
29:14,15 78:12
**contemplates**
23:11 58:16
**contend** 25:23
**contended** 53:12
67:13 77:25
**contends** 16:8
51:20 72:18
**context** 49:3
61:14,16 63:24
**contingent** 13:7
**contract** 12:11
13:3 16:10,19,22
16:25 17:2,5,14
17:17,23 18:16
20:9,10 21:4
22:25 24:7 27:4
28:15 40:7 41:13
45:15,17 48:3,15
49:11,12,25 52:24
59:19 64:4,6
67:12,13,18,18
68:2,10 69:13,14
70:15,17,19,24
71:2,4,4,10,14,15
72:1,8,15,17 73:7
73:10 74:6 75:7
75:10,21 76:5
79:1
**contracts** 16:6,15
17:7 20:8 40:15
52:19,20 64:2
67:22 74:8
**contradict** 25:2
**contradicted** 25:3
**contrary** 26:14
39:12 40:16 57:17
**control** 37:11,11
77:24

**controlling** 22:2
39:7,9 51:23,24
**controls** 69:24
**conundrum** 26:6
**convert** 40:25
**conveyed** 39:4
**cook** 11:20 50:23
64:15 79:17
**corp** 27:21 73:14
73:14,16,16 75:2
**corporate** 58:8,10
**corporation** 1:9
1:25 3:6 4:6 9:3
**correct** 13:21,22
14:18 15:23 18:3
23:2,6 56:6 60:22
**correctly** 54:2
**counsel** 10:3 14:8
22:18 79:12,13
**counsel's** 57:18
**counterparty**
52:25
**countervailing**
77:5
**country** 82:12
**county** 11:20
50:23 51:5 64:15
79:17
**couple** 57:5,9
**course** 9:14 16:3
17:11,13 25:18
38:11 50:11 51:19
52:6 55:1 62:19
74:2 77:13
**court** 1:1,15 9:2,7
9:10 10:15,21,25
11:6,8,13,16,19
12:19,24 13:6,8
13:11,23 14:1,6
14:14,16,23 15:3
15:6,10,15,18,25
16:2 17:3 18:4,6
18:12,14,21,23

19:14,16,21,24
20:11,18,24 21:1
21:9,12,23,25
22:7,21,23 23:3
23:12,25 24:11,14
24:17,25 26:9,11
26:25 27:2,8,11
27:13,21,23 28:23
29:1,11,22,25
30:6,8,19,25 31:3
31:19,21 32:1
33:10,15 34:21
35:4,11,16,22,24
36:2,14,17,22
37:8,10,17,19
38:5,7,15,17,24
39:18 41:22 43:4
44:1 45:15 47:1,5
47:14,23 48:8,10
48:16,18,22,24
49:16 50:20 51:5
51:18,20 53:10,12
54:21,24 55:2,6
55:23 56:4,7 57:1
57:7,13,14 58:8
59:5,13 60:9,15
60:17 61:3,5,16
61:23 62:18 63:8
63:13,16 64:23,25
65:6,11 66:8
70:14,19 72:14
74:23 75:25 79:18
79:18 80:4
**court's** 26:7 30:17
66:6 75:6
**courtroom** 37:1
**courts** 21:2 25:15
25:20
**cover** 10:1 53:18
**covered** 53:13
**covers** 58:8,9
**covid** 33:2

**cpiu** 33:7
**create** 41:6
**created** 20:13
34:19 58:2,2
**creates** 20:14 26:6
**creditor** 45:19
71:14
**creditors** 5:14
45:18
**criteria** 51:7
**critical** 36:8
**crystal** 24:24
**cure** 61:1
**currently** 68:5
78:23
**curtailed** 71:1
**cutoff** 28:21 29:20

|  d  |
|---|

**d** 1:23 5:20 9:1
19:2 22:23,23
25:19 26:20 27:17
28:6,20,21 29:1
29:21 44:16 45:13
45:22 48:3 51:22
63:23 70:6,11
71:6 72:5,7,11
73:18,21 74:2,17
74:22 79:5,7 81:1
**d&o** 17:5
**damage** 75:18
77:23
**dana** 75:2
**date** 16:7,8,20,20
17:11,12,17,18,24
17:25 18:18,19
19:18 20:5,8,9,12
22:4,8,8 23:17,23
24:1,12 26:16
27:5,19 28:17,18
28:18,19,21,23,24
28:25,25 29:3,4,5
29:20,20 40:8
52:1,6 59:22

61:19 67:10,11,17
67:23,24 68:1,9
68:10 69:5,6,8,15
69:16,19 72:10,23
74:14,16,20,24,24
76:13,13 77:12
79:6 82:9
**dawes**  20:11
**day**  12:16 13:8
**days**  21:19,19
29:6,6 38:16 78:5
**deadline**  16:24
25:19,21 51:10,16
73:9 74:2,23
77:13 79:4
**deadlines**  52:7
**deal**  40:17 41:5
61:1 74:8
**dealing**  39:2,3
49:7
**deals**  16:5
**dealt**  44:6
**debtor**  15:13 19:2
22:17 23:5 24:22
31:10,10 37:13,14
41:8,11 45:15
64:25 65:2 66:20
69:23,24,25 70:2
70:7,12 71:18
72:7 73:7 75:14
76:18,20 77:5
78:1,8,17 79:21
**debtor's**  61:11
75:7,9
**debtors**  1:11 2:10
2:11,16,17 3:1,4
3:10,11,17,19 4:1
4:4 5:3,3 9:23,24
11:10 14:22 19:17
19:21 22:18 26:13
31:8 40:14 42:13
43:8 48:24,24
49:19,24 55:16

58:15 59:3 60:21
61:8,18 62:12
63:21,22 65:13,13
65:16,18 66:1,2
66:18,20,25 67:8
67:12 68:18,23
70:22 71:5 76:3
76:12 77:1,16,20
79:8,10 80:2 81:9
**decides**  53:5
**decision**  75:6
**decisions**  22:17
**declaration**  4:1
11:9,14,14
**dedinas**  6:16
**deem**  2:9,15 3:2,9
3:16 4:3 9:22
63:19 81:7
**deemed**  16:11,16
17:10,10,17 41:5
52:1 67:15 68:11
69:2
**deeming**  18:15
**default**  64:16
**define**  43:15
**defined**  60:18
62:14 63:18 67:24
70:1 78:11
**defining**  30:13
**definition**  52:4
**delay**  29:23 31:14
31:24 32:19
**delayed**  34:19
**denied**  56:25 81:9
**deny**  70:3 77:23
**denying**  79:11
**derived**  68:17
**derogation**  75:24
**described**  20:11
**describing**  17:20
**description**  81:5
**designated**  42:20
64:2,6

**designation**  10:14
12:10 13:2,7,24
15:2,13 36:4,6,9
37:23 43:13 53:6
55:22 61:2 63:7
64:3 69:12
**designed**  57:23
**designee**  41:21
**desire**  17:14 77:8
79:17
**determination**
57:17,19,20 70:5
75:20
**determine**  23:13
25:8 45:16 70:16
70:20 72:16
**determines**  51:5
**developed**  54:1
57:25 58:14 70:25
**developer**  30:13
30:23 32:10 34:4
34:7 36:5,6,7,9
38:2 39:1,4,11
45:7
**developers**  58:11
58:11,17
**development**  2:9
2:15 3:3,9,16 4:3
9:22 63:20 81:7
**difference**  77:10
**different**  65:25
**differently**  62:9
**dig**  31:6
**diligently**  13:12
**direct**  25:8
**directing**  70:7
**directive**  72:11
**directly**  44:24
46:12 71:17
**disagreeing**  27:7
27:9
**disagreement**
15:8

**disappearing**  51:3
**disconnect**  42:6
**discuss**  30:10
**discussed**  19:10
43:14 73:1 76:8
**discussing**  49:23
**discussion**  21:22
71:18
**discussions**  56:13
**dismiss**  43:19
57:17
**dispute**  19:17,21
19:22 64:23 65:2
68:15 79:20,21
**disputed**  65:3
**disputes**  50:19
**dissolution**  32:8,9
32:11,19,23 34:1
34:9,12 35:20
36:13 37:6 58:23
58:25
**dissolve**  32:12
**dissolved**  32:21
58:24
**distinction**  63:3
69:17
**distinguish**  45:11
**distinguishes**
40:11
**distribute**  71:24
**distributed**  50:18
51:6
**district**  1:2 2:9,15
3:2,9,13,16,21 4:2
6:2 7:2,9,16 9:21
9:21 10:3,5 12:1,6
12:7,18,22,25
15:19 19:7 26:23
27:21,21 30:21
31:16 32:6,7,8,8
32:13,17,18,21
33:1,14,17,20,23
33:24 34:15,16

35:9,9,12,13,21
36:11,12,12 37:7
37:16 41:19,19
43:20,20,21 44:15
44:25 45:21 46:6
46:13,15,17 49:24
50:9,11,13,20
51:14,16,20 52:6
52:15,25 54:6
55:11 56:12,17
57:12,15 58:19,20
59:6,8,8 62:1
63:17,18 64:9,9
64:17,25 65:8,13
65:20 66:5,9,16
66:19 68:6,13,16
68:18 69:11 71:3
71:20 72:3,12,17
74:21 77:3,14,22
78:8,15 79:12
81:6

**district's**  50:4
55:7 57:18 64:15
65:15

**districts**  13:15
32:13 41:19 42:2
44:23 46:3,5,10
46:11,14,16,22
47:22 51:8

**disturbing**  21:17

**ditch**  59:2

**division**  11:20

**divvied**  54:12

**djs**  27:22 73:17

**dla**  6:8

**document**  2:12,18
3:5,12,19 4:5 16:4
17:4 59:21,22

**documents**  20:4
40:19

**doing**  24:3 41:7
52:10

**dollars**  33:1 34:13

**doubt**  16:23 47:7

**drafted**  58:1,1
61:17,18 62:9

**drafting**  61:24

**drain**  1:23 9:2

**drive**  6:19

**driver**  43:2

**dublin**  5:18

**due**  65:4

**duration**  45:25

## e

**e**  1:22,22 5:1,1 9:1
9:1 79:14 81:1
82:1

**earlier**  50:20

**earning**  51:1

**easily**  34:24

**east**  6:19

**eastman**  52:21

**eberhard**  6:16

**ecf**  2:12,19 3:6,13
3:21 4:6

**economic**  2:9,15
3:2,9,16 4:3 9:22
10:9 30:4 36:7
37:15 43:2 44:3,6
52:12,13 53:21
63:19 77:15 78:18
78:18 81:7

**economically**
35:24

**eda**  9:22 10:10,11
12:10,13,16,18,21
13:1,2,14 15:14
30:5,22 32:13,21
33:13 34:15 35:4
35:5,9,20 36:25
37:6 38:1,1,8,9
40:23 42:23 43:1
43:1,2,17 44:19
44:19,25 45:4,6
45:24 46:8,12,15

46:17,19,21 50:5
50:6,14,22 52:17
52:23,25 53:6,23
54:1,2 55:4,6,16
55:17 56:12 57:21
57:23,24,24,25
58:2,5,6,12,13,14
58:21 59:1,5,6,18
60:3,12 62:4
63:20 64:6,8,16
64:18,19,21 65:3
65:11,14,17,22
66:2,6,12,15,16
66:16,21,21,25
67:1,5,13 68:18
68:22 69:2,12
70:8 71:21,23
72:4 76:8,21 77:8
78:10,17,20,22
79:1,9

**effected**  50:10

**effective**  13:18
16:7,7,20,20
17:11,12,17,18,24
17:25 18:18,19
19:9,12,12,18,18
20:4,4,7,8,15,23
21:8,18 22:2,4,16
23:8,17 24:21
25:24 26:16 28:4
28:19,25 29:3,5,8
29:9,18,20 40:5,9
40:25 44:5 51:21
52:1,6 61:19
67:10,11,17,23,24
68:1,9,10 69:4,6,8
69:15,15,18 72:23
74:14,16,20,24
76:13,13 77:12
79:6

**effectively**  46:24
46:24 72:20

**effectiveness**
46:17

**effort**  42:17 56:16
59:2

**either**  15:19 37:3
53:1 63:2,19
64:16 66:1 67:16
78:2 79:19

**elevate**  72:3

**eligible**  54:16

**eliminated**  77:15

**embodied**  72:1

**employee**  34:6

**employees**  31:18
31:18 32:8,10,19
34:3,8 36:8,10,11
36:12 57:19

**enacted**  71:21

**encompass**  71:13

**enforce**  49:12

**engagement**  17:2

**enter**  13:11

**entered**  17:4
18:15 42:16 45:24
59:22 65:1,9,20

**entire**  33:13 35:9
37:6 40:23 53:13
58:9 76:15

**entirety**  54:7

**entitled**  14:25

**entity**  30:23 37:24
38:2 39:4,7,8
59:24 62:15 71:13
78:12

**entry**  66:6

**equities**  23:13

**especially**  63:4

**esq**  5:7,8,9,18,19
5:20 6:6,14,23 7:6
7:13,20 8:7

**essence**  17:15

**essentially**  56:17

est  2:6
established  25:20
  45:19
establishment
  60:7
estate  30:24 40:24
  56:21 77:1,20
estates  2:19 8:2
  46:14 64:19 68:22
  68:25 71:5 79:22
et  1:9,25 6:18 9:3
evaluate  76:18
event  11:25 12:21
  53:4 55:22
evidenced  76:6
  77:1
exact  60:23
exactly  22:16
  23:11,12 60:14,16
example  26:13
  49:3 52:21 73:13
  76:5
exceed  43:24
exceeds  42:4
excellent  53:20
exceptions  76:14
excess  65:18
exclusivity  75:22
excuse  18:11 22:8
execute  12:17,21
executed  11:24
  45:7
executes  12:16
execution  12:6
executory  12:11
  13:3 16:6,10,19
  16:22,25 22:25
  28:15 40:6 49:25
  52:19 64:2 67:12
  67:13,18,22 70:13
  70:24 72:7 73:7
  73:10 74:6,8
  75:21 76:5

exhibit  3:8 11:9
  11:13,14 12:9
exhibits  20:3
existed  46:18
exists  24:1 75:21
expect  26:16
expert  30:2
explain  30:12
  41:17 42:1
explicit  27:14
explicitly  71:23
expressly  58:16
extend  71:22
  74:23
extending  40:17
  47:17 79:4
extends  72:20,25
  73:9
extension  16:24
  25:17 41:1 46:9
  69:5
extent  39:9 47:7
  52:13,16 60:7
  74:3
extinguish  55:15
  66:24
extra  15:19,21
  77:2
extraordinary
  34:10

**f**

f  1:22 52:18 82:1
f.3d  73:14
fact  10:23 11:24
  16:4 20:6 22:12
  27:14 29:17 30:13
  34:24 41:8 50:1,4
  62:12 76:8,10
  78:4
factors  75:4 76:4
  76:16
facts  10:22 72:3
  76:19

factually  19:23
fail  5:9
failed  76:10
failure  75:9
fairly  44:4 73:2
faith  26:15
far  34:22 37:10
  42:4 43:24 65:1
  77:20
farthest  50:2
fault  42:7 43:3
favor  64:14
feld  5:12
fifth  5:4
fifty  39:9
fight  41:22
fighting  37:2
  50:11
figure  56:14
file  12:18,23 13:5
  78:24
filed  2:18 3:5,12
  3:20 4:5 10:8,16
  13:23 14:4,6,12
  14:25 31:4 43:25
  59:23
filing  13:5
filled  74:17
final  13:13 34:12
finally  76:1
financial  75:15
find  48:21 54:18
  73:11 79:7
fine  11:18 20:24
  26:11
first  9:5,19 10:23
  21:16 24:19 25:9
  30:10 32:18 34:2
  35:6 44:21,24
  46:10,13,16 47:3
  49:22 50:5 54:9
  57:11,16 69:1
  70:3,9 72:19

76:17 78:6
flexibility  61:18
floor  8:4
florey  7:20 10:6
  16:1 30:2,11,17
  30:20,21 31:2,15
  31:15,20,25 32:6
  33:12,19 35:2,6
  35:14,19,23 36:1
  36:3,16,21 37:1,9
  37:14,18,21 38:6
  38:14,18 39:14
  41:16 42:1 80:7
flow  64:18
flows  54:3
focus  10:15,18,23
  18:7 31:8
focusing  10:21
  11:1 24:19 26:20
  30:15,25 31:13,14
  31:23,23
follow  41:10
  54:24
following  12:4
  18:10,13 44:17
follows  30:2
footnote  52:16
  57:15 59:5
force  23:18 49:24
  77:16
foregoing  82:3
foreseeable  65:22
forget  55:3
form  12:8,24 19:1
formally  15:14
  32:12 79:12
former  31:18
  33:13,21
forms  18:14 61:25
formulating  75:16
forth  71:23 74:1
forward  41:22
  42:24 55:5,20

56:15
**frame** 57:22
**frankly** 31:6
38:12 39:21
**frees** 68:19
**friedmann** 4:1 5:8
11:10 49:18,19
51:19,24 53:11,20
54:23 55:1,4,9
56:6,8 59:16 60:2
80:2,6
**front** 10:19 11:1
61:23 64:13
**frustrating** 26:4
**fulfilled** 18:9
**full** 43:23 58:10
**fully** 45:7
**functionally**
23:16
**fund** 47:2 65:3
**fundamental** 40:4
**funds** 13:14 37:20
42:9,9 43:1,2 50:7
50:22 55:4,6,17
59:18 60:3,3,4,12
62:4,4 65:11,14
65:17,22,24 66:15
66:16,21,22 67:1
78:10
**further** 10:10
31:24 66:21 68:16
69:5 79:18
**future** 44:6 55:2,6
60:3,12 61:12
62:4,13 65:22

**g**

**g** 3:12,20 6:6 9:1
81:3
**gair** 6:16,23
**gap** 74:17
**garret** 5:9
**gather** 13:20

**gear** 57:16
**general** 44:18
**generalities** 10:22
**generally** 71:18
77:9
**generated** 44:25
46:12
**generically** 78:11
**gensburg** 7:1,6
10:4,5,20 11:2,4
11:12,18 13:22,25
14:3,11,15 15:5,9
15:12,16,23 16:1
18:3,5,10,11,13
18:20,22 19:6,6
19:15,20,25 20:22
20:25 21:7,11,15
21:15,24 22:5,9
22:22 23:2,6
24:16 26:1,10,21
27:1,7,9,12 28:7
30:1,7,16 37:24
38:21 41:14,14
45:23 47:4,12,16
48:5,9,13,17,20
48:23 49:10 56:2
57:3 59:11,11,14
60:14,16,22 61:10
61:22 62:3,22
63:11,15 80:8
**gerber** 74:5
**getting** 37:25 42:2
53:23 68:24
**give** 37:13 51:15
61:18
**given** 25:19 29:23
37:14 38:8,8 63:1
74:19 76:18
**giving** 36:7 62:12
62:18,19 63:5
77:17
**global** 15:13

**go** 14:15 16:1 19:9
19:11,12 21:18
29:9 36:19 40:25
42:24 43:23 44:5
44:12 47:2 50:16
51:7 65:24 77:4
**goes** 12:20 16:18
34:14 36:6,10
37:23 47:8
**going** 20:23 21:25
24:6,18 25:23
27:2 28:1 30:16
31:22 34:19 35:7
35:9,17,20 40:20
49:22 50:19 55:4
55:20 56:8,10,12
56:15,17 57:9
59:18 79:23
**good** 9:2,6 26:15
30:20 49:18 75:12
**gotshal** 5:2 49:19
**gotten** 40:21
**govern** 22:20
51:21
**governing** 16:3
22:11
**governs** 23:10
29:21
**grab** 59:2,9
**grafting** 44:20
**grant** 25:14 36:17
**granted** 57:12
64:22
**grants** 13:9 32:22
**greiner** 6:1
**griner** 10:6
**ground** 52:9
**grounds** 52:9
**guess** 14:9 21:8
26:6 44:1 53:5
62:23 63:8
**guide** 75:5

**gump** 5:12
**gunter** 27:23
73:19

**h**

**half** 57:13
**hand** 58:23 77:16
77:17
**hands** 41:8
**happen** 18:7,8
42:22 43:22 61:3
**happened** 17:16
31:17
**happening** 15:4
15:22
**happens** 28:16
**harm** 30:15 31:1
31:23 32:17 36:15
43:24 44:3,6
58:19,19
**harmed** 31:14
32:5,7 50:15
**harmonizes** 73:3
**hauer** 5:12
**headed** 12:2
**heading** 66:10
**headquarters**
33:13,13,21 34:22
35:15 38:3,4
39:15 43:23
**hear** 10:2 26:12
26:19 32:2,4,5
49:16
**heard** 52:12
**hearing** 2:4,5,8,14
3:1 4:8 9:4,9
68:14 79:24
**hearings** 41:23
**held** 51:1
**help** 14:24 50:14
75:5
**helpful** 34:21
**helping** 54:18

| | | | |
|---|---|---|---|
| **helps** 28:5 | **hotel** 27:23 73:19 | **includes** 33:14 | **interpret** 58:7 |
| **hindsight** 62:8 | **huckins** 6:17 | 39:23 | 61:22 |
| **hit** 37:4 | **hundred** 39:5 | **including** 13:18 | **interpreting** |
| **hoffman** 2:19 8:2 | **hurt** 75:12 | 16:22 19:10 25:15 | 48:18 |
| 46:13 64:19 68:22 | **hypothetically** | 40:13 41:19 49:1 | **interrupt** 20:18 |
| 68:25 71:5,24 | 28:2 | 49:2 56:19 64:2 | 21:25 24:14 51:18 |
| 79:22 | | 73:19,25 75:10 | 53:10 60:9 |
| **hoffman's** 77:17 | **i** | 78:22 | **introduction** 9:16 |
| **hold** 27:3 | | **inconsistency** | **investment** 53:25 |
| **holdco** 6:9 10:10 | **i.e.** 53:18 69:2 | 26:3 | **irrelevant** 28:20 |
| 10:12 41:20 42:5 | 71:14 74:9 | **incorporates** | **irrevocable** 12:9 |
| 42:14,15 43:9,12 | **idaho** 27:22 73:18 | 46:22 | 12:13 78:20 |
| 62:15 63:7,25 | **idea** 9:6 | **increase** 79:17 | **irrevocably** 78:24 |
| 64:1,6 65:6 67:6 | **identified** 44:21 | **index** 33:7 34:18 | **issue** 19:17 24:25 |
| **holdco's** 42:23 | **identify** 9:5 | **indicate** 28:14 | 30:10 35:8 41:24 |
| **holder** 48:1,2 | **identifying** 18:11 | **indicated** 10:13 | 43:14 48:19 49:7 |
| 71:15 | **ignores** 52:15 | 43:13,19 46:1 | 50:17,21,23,25 |
| **holdings** 1:9,25 | **ii** 12:12 16:24 | **indiscernible** 42:1 | 53:21 78:4 |
| 3:6 4:6 6:18 9:3 | 39:7 | **indisputably** | **issues** 49:20 61:1 |
| **home** 71:7 | **il** 6:12,21 7:4,11 | 20:20 | **iv** 39:3 |
| **homeowners** | 7:18 | **infer** 15:20 44:21 | |
| 43:21 | **illinois** 13:11 | **initial** 72:6 | **j** |
| **hon** 1:23 | 30:22 33:8 34:13 | **initially** 54:1 | |
| **honor** 10:4,8,12 | 44:18 57:25 58:5 | **initiated** 64:24 | **jacqueline** 5:7 |
| 10:20 11:4 13:25 | 64:15 | **inquiry** 30:18 | 14:21 |
| 14:3,11,21 15:16 | **illogical** 63:4 | **instruction** 59:19 | **january** 32:20 |
| 15:23 18:3,10 | **immediately** 13:1 | **insurance** 17:5 | **jared** 4:1 5:8 |
| 19:6,20,22,25 | **imminent** 36:15 | **integration** 72:2 | 11:10 49:18 60:1 |
| 20:11 26:1,22 | 58:19,19 | **intended** 43:7 | **job** 57:20 |
| 28:14 29:22 30:17 | **impact** 61:1,2 | 62:7 | **jobs** 57:20 58:6 |
| 31:25 32:22 41:17 | 62:16 77:15 | **intent** 62:11,17 | **judge** 1:24 9:2 |
| 41:23 42:21 43:15 | **impacting** 50:8 | 63:6,6 | 11:2,12,18 13:22 |
| 45:23 46:23 48:5 | **impacts** 26:22 | **interest** 10:9 | 15:5,9 18:20 |
| 48:14,20 49:18 | **implement** 12:2,4 | 22:19 29:12 30:4 | 21:15 23:6 24:2 |
| 50:19 52:13 54:3 | 66:10 | 36:7 37:15 39:10 | 24:13 27:10 28:7 |
| 54:20 55:10 56:3 | **implicit** 27:13 | 42:23 43:1 44:8 | 30:1,20 31:2,15 |
| 56:9,16,24 57:2,3 | **import** 70:22 | 44:12 45:8,9,11 | 33:20 34:11 35:3 |
| 57:8,11,23 58:12 | **importance** 75:7 | 45:14,18,20 49:3 | 35:21 36:4,21 |
| 58:18 59:10 60:22 | **importantly** 59:4 | 51:2 52:12,13 | 37:1,21 38:18 |
| 80:3,8 | **imposing** 77:18 | 53:8 54:14 71:11 | 39:14 41:14 49:1 |
| **honor's** 19:15 | **inability** 43:20 | 71:12 75:11 | 59:11,14 63:12 |
| **hoops** 44:12 | **incentive** 53:21 | **interested** 54:17 | 74:5 80:7 |
| | **include** 24:9 75:6 | 58:12 | **judgment** 64:24 |
| | **included** 12:8 | | **judicata** 73:24 |
| | 14:5 38:10 | | |

judicial 75:20
jump 30:3 37:24
  41:15

**k**

kadish 3:12,20
  6:6 10:6 14:4
kanter 7:1
keep 9:13 18:5
  57:22
ken 30:2,20 31:15
kenneth 7:20 10:6
kick 20:12
kind 15:6
know 22:12,16
  23:16 24:18 25:6
  27:21 28:1 29:9
  29:19 31:3 37:8
  37:10 41:23 47:24
  48:20 49:5,8 50:1
  51:9 53:4,14,23
  55:11 56:9,13,15
kodak 52:21
kory 7:8,13

**l**

l 2:18 5:19 8:7
  81:3
l.p. 27:22 73:18
lacks 49:24
lake 6:10 7:10
lampert 6:18
land 33:16,20
  53:13,17 58:10
language 10:15
  17:23 18:17 27:15
  40:14 42:25 45:2
  45:13 60:20 68:12
  74:11
lanier 5:20
large 33:23
largely 64:23
lastly 74:21
law 7:8 24:24
  25:20 38:1,8,9

40:11 42:21 49:6
  49:7,8,12,14 63:1
  71:1,13 73:2,24
  75:2
lawsuit 36:20
lay 13:16
lead 32:22 35:20
  69:13
lease 16:22,23
  45:17 48:1 70:15
  70:17,19,24 71:16
  72:15,17 73:7
leases 16:6
leaves 45:6
led 41:20
left 65:5
legal 56:22 78:2
  82:11
legally 10:11
legislatively 44:19
lessor 71:17
letter 17:2
levied 55:17 67:1
levy 32:13 33:5
lexis 73:16
library 43:20
light 19:5
limit 68:8 73:10
limitation 27:17
  28:22 72:19
limitations 62:20
limited 30:23 40:3
  45:25 61:6,6
limits 40:1
line 81:5
liquidating 20:2
  59:25 62:5
liquidation 60:8
  63:4 76:6
lisa 4:25 82:3,7
listed 47:2 75:4
literally 60:5

litigants 75:12,17
litigate 58:7
litigation 11:21
  57:13 64:7,14,24
  65:6,11 79:16,17
  79:18
little 14:24 54:10
live 26:15 50:9
llc 6:9
llp 5:2,12 8:1
load 79:17
local 65:24
logic 72:21
logical 25:12
longer 10:9 30:5
  31:20 32:7,19
  34:3,7 59:25 60:6
  72:23
look 14:19 26:2
  27:2 37:21 45:5
  59:19 61:14,16
  62:8,10 80:5
looking 21:12
  54:6 55:25
looks 25:13 36:22
  36:22 38:15 41:9
lose 36:15
loss 34:13
lost 34:20 51:2
lot 49:20 54:14
lots 36:10

**m**

mail 79:14
major 76:16
majority 33:24
making 26:16
  63:9
malden 27:24
  73:21
mandatorily
  32:12
manges 5:2

march 74:4
marcus 5:7 14:21
  14:21,24 19:22
  26:12
martin 49:4 71:18
mass 73:21
massachusetts
  27:24
material 14:18
materially 73:15
matt 10:4 18:11
  19:6 21:15 41:14
  59:11
matter 1:7 9:17
  10:1 20:6 78:2
  79:16
matters 4:8 9:18
  64:13
matthew 7:6
mean 15:6 17:16
  20:25 27:2 28:19
  29:24 32:23,24
  39:2 48:22 49:9
  60:9 63:1
meaning 20:8
means 19:9 27:16
  57:20,21 60:5
  61:13
mechanism 28:13
  48:4 71:23
mechanisms
  59:19
meet 46:16
members 59:4
merely 50:8 71:14
met 51:7
michael 2:18 8:7
  57:4
million 13:19
  15:21 31:12 46:5
  46:7,7 50:13
  54:10,19 65:18
  66:14

millions   33:1
34:13
mills   27:24 73:21
mind   57:22
mineola   82:14
minimum   22:10
47:12 48:6
minute   61:5
minutes   57:6
misleading   31:7
modification
51:12
modifications
45:5
modified   12:15
21:2 40:8
modify   51:16
52:24 53:2 69:22
69:25
moment   53:15
monetize   60:4
62:6
monetizing   60:10
money   36:19 47:8
50:25 51:2,3
53:24 54:3,4 59:9
monies   37:18
50:17 54:11 64:17
71:24
monroe   7:17
month   29:10
months   29:10
mortgage   48:1,2
71:15
motion   2:8,8,14
3:1,8,15 4:2 9:20
10:2,3,8,13 11:9
11:11 12:23 13:5
13:9 14:2 16:21
17:7,9 18:14
38:20 43:19,25
50:5 56:25 57:17
63:17,24 64:12,22

66:5 67:17 68:2,5
68:25 69:5,7 70:5
71:1,7 72:9 74:25
77:17,23 79:11
81:6
motion's   69:1
70:3 76:9
motions   68:8 74:9
74:10
move   41:21
moved   64:23
multi   58:9
multiple   33:14,22
33:24 58:10,17
multiplier   34:17
mute   9:13

n

n   5:1 9:1 70:18
81:1,3 82:1
name   9:8 36:6
67:6
named   71:3,25
narrow   76:14
nature   73:23
75:11 78:15
near   44:3 77:11
77:24
necessarily   62:21
78:5
necessary   20:3
24:25 60:7
need   22:3 26:19
32:2,4,5 60:10
75:20 76:4
needed   33:2
needn't   75:5
needs   23:12 30:12
45:7 46:14
negates   63:8
nelson   6:16
never   13:20 42:15
42:21 45:4

new   1:2,17 5:5,16
6:4 8:5 28:17
29:20 31:4 33:5
76:19
non   33:22 49:6
51:15
nondebtor   29:12
40:20 64:4 75:10
75:18
normal   35:9 63:1
normally   41:11
70:22
note   66:18
noted   28:14 54:2
57:15 69:3 70:10
72:8 78:6
nothing's   51:2
notice   2:4,4 4:8
13:5,24 14:25
17:21,22 64:3
65:4
noticed   16:25
67:18
noting   72:13
notion   53:4
notwithstanding
26:7,8 27:20
73:10
november   1:19
2:5,5 4:9 12:23
14:7 32:3 39:13
82:9
number   60:19
70:8
numbers   37:4
numerous   49:2
52:9 56:13
nursing   71:7
ny   5:5,16 6:4 8:5
82:14

o

o   1:22 9:1 70:18
82:1
object   52:7
objected   52:8
64:10 68:6,25
objection   2:14
17:1,8,15 62:1
64:10 65:16 67:19
68:3 69:7 78:1
objections   59:23
61:2
objectors   49:17
obligation   26:15
obligations   20:12
75:10
obvious   56:10
obviously   9:21
21:4 42:7 51:14
52:18 53:9 56:21
61:23
occur   66:12
occurred   16:9
19:13,13,19 21:5
23:18 29:8 32:18
34:6 62:6 67:25
69:15,16
occurs   77:12
october   11:24
12:22 31:17 34:6
42:16,18 43:6
65:5,8
office   7:8 9:11
official   5:13
okay   10:21 11:6
11:12,13,17 13:23
14:10 15:3,10,25
18:4 19:24 22:21
29:19 30:19 34:21
55:23 56:7 57:1
63:8,13,16 80:4
old   82:12

once 32:18 36:5
  51:4
ongoing 64:7
online 43:23
operating 59:25
  60:6,7
opportunity 52:7
opposed 10:22
  49:7 71:10 78:11
opposition 3:1 4:2
  11:10 52:16
order 12:7 13:12
  17:3 18:15 20:1
  22:13 23:9 24:25
  26:7,8 42:15 43:7
  43:11 45:15 50:22
  53:3 55:14 59:16
  66:6,23 70:6,15
  70:20 72:15 79:10
  80:5
original 38:20
  45:23 46:2
overcomes 72:19
overtly 42:14
owed 64:17
owned 33:21,22
  33:23 39:8 53:14
  53:19
owner 33:23
  39:20
owners 39:24
  58:10
owning 53:16
owns 30:23 33:18
  33:19 35:15 38:3

**p**

p 5:1,1 9:1 40:2
p.c. 6:1 7:1
p.m. 2:5 4:9 80:9
page 11:21,22
  74:5 81:5
paid 13:19 41:9
  41:10

paint 49:4 71:19
paragraph 10:18
  11:19,25 15:17
  17:6,20 19:25
  22:12,13 26:8
  28:4 39:19 40:2
  44:13,17,22 45:3
  50:5 55:13 56:2
  59:15 60:20 66:8
  66:22 67:7
paragraphs 13:16
  66:13
parcel 53:13
parent 39:7
park 58:10
parse 61:20
part 15:13 23:24
  28:20 29:21 36:23
  42:6 54:5 76:25
partial 39:23
partially 64:22
participants 46:3
particular 59:20
particularly 33:2
parties 16:4 17:19
  20:10 22:12,18
  23:10 29:13,15
  40:21 44:20 45:19
  46:2,24,25 56:4
  56:14 58:4 59:1
  61:24 62:7,17
  64:4 65:6 66:22
  67:3 78:16 79:15
  79:19,20
party 38:11 42:15
  42:19 44:15 45:12
  45:14,14,18,20
  47:2,5,10,12,14
  47:15,15,24 48:3
  48:7,10,11 49:3
  49:10,11,25 50:1
  50:3 53:8 54:15
  58:15 60:24 62:14

62:16 64:4,19
  66:20 69:22 70:15
  70:19 71:1,3,10
  71:11,12,15 72:4
  72:15 75:11 76:20
passes 32:20
pause 10:24 11:3
  11:7,15
pay 33:16 50:13
payment 47:25
  48:4 65:17 66:22
payments 34:25
  71:16
pending 16:21
  17:1,7,8,13,15
  50:25 64:11,13
  67:17,19 68:2,3,5
  68:9 69:6 74:9,10
percent 37:2,2
  39:9 46:6 54:12
  54:13,17
perfectly 36:18
performance
  46:15
period 37:20
  40:18 41:4 45:16
  70:16,20 72:16,20
  72:24 75:22 77:19
permit 74:9 76:2
permits 18:8,8
perpetuity 34:13
  34:18
person 71:13
personal 78:10
perspective 56:15
pertain 76:5
pertaining 64:8
  64:15 65:3
pertains 39:22
  65:11
petition 75:10
philip 5:18

phone 9:13 14:8
phrase 71:10,10
  71:12
phrased 45:9 55:3
picks 54:9
piece 54:8 64:7
  65:10
piper 6:8
place 5:15
placed 33:6
places 60:19
plain 21:1 40:6
  67:9 68:7 71:4
  74:15,20
plainly 49:24
plains 1:17
plaintiffs 12:3
  13:10,11
plan 2:11,16 3:10
  3:18 9:23 11:1
  12:15 16:2,3,5,8,9
  16:10,15 17:5,7
  18:17 19:5,11,11
  19:16,18 20:1,2,6
  20:9,14,17,19
  21:7 22:1,11,14
  23:1,3,8,15,16
  24:4,7,18,20,23
  25:5,14,17,22,24
  26:14,15 27:4
  28:3,16,17,22,24
  29:3,16 40:5,9,10
  40:14,17,23,25
  41:1 44:5 51:10
  51:12,13,16,21,22
  51:25,25 52:1,3,7
  52:8 58:14,15,16
  59:22,24 61:17
  62:2 63:21 65:17
  66:4 67:11,12,21
  67:22,24 68:7
  69:3,4,5,16,18,18
  69:19,19,20,22,23

**[plan - read]**                                                                                        Page 15

69:24,25 70:1,1
70:10,14,23 72:8
72:9,22 73:1,3,3,5
73:5,23,25 74:3,7
74:12,15,20,25
75:16 76:10 77:12
77:14 79:3,7
**plan's** 23:4 28:18
**plans** 21:18 40:11
40:16 72:24
**pleading** 14:6
31:4
**please** 53:11
**pm** 1:20 2:2
**point** 9:19 19:10
25:7,21 26:12,13
26:18 27:12 28:1
31:8 40:4 44:5
45:18 47:16 48:25
49:22 51:6 52:10
52:11 53:7,12
56:8 59:12,15
62:14 74:3 79:19
**points** 27:6 57:9
**policy** 17:5 77:4
**portion** 13:14
15:20 24:10,11
28:20 29:1 39:3,4
40:2 44:8 65:2,23
66:15
**possession** 5:3
24:23 45:16 70:13
**possible** 18:7,16
43:24
**possibly** 43:16
**post** 17:24 21:6
23:5 25:17 28:16
51:12 65:14,21
72:20 74:6,8,12
74:16,24 75:9
**potential** 13:19
43:9,11 68:19
75:15

**potentially** 77:1
**power** 25:14
**practical** 78:2
**pre** 17:25 64:14
74:18
**precedent** 19:13
29:7
**precluded** 52:10
**predicate** 24:3
62:23
**prefer** 10:21
**premise** 28:9,10
**preparation** 9:12
**prepare** 46:14
**present** 61:11
62:13
**preserved** 42:24
**preserving** 59:17
**presum** 58:24
**presumably** 58:7
**pretty** 25:20
78:16
**preventing** 50:6
**previously** 16:10
16:15 63:18 67:14
73:8
**price** 8:1 33:7
34:18 57:5
**prior** 28:22 41:23
54:12 66:19
**private** 33:22
**probably** 26:16
56:10
**problem** 23:22
71:20
**problems** 70:8
**procedure** 41:10
**proceed** 9:20
**proceedings** 80:9
82:4
**process** 32:9,9,9
32:16,20,23 34:1
34:2,9 36:13 60:8

**prohibited** 52:20
**prong** 76:10
**properties** 27:22
33:14,22,23,25
73:17
**property** 32:25
33:5,8 34:23
35:10 37:3 38:3
39:5,15 40:3
44:25 46:12
**proponent** 51:15
69:20,23 70:1
73:3
**proponents** 51:13
**proportion** 47:8
**propose** 24:10
**proposed** 42:4
66:8 76:7,7,19
**protect** 29:12
54:19 55:20 63:6
**provide** 25:17
38:14 40:10,12
41:1 42:4 53:3
73:4,6
**provided** 16:9
40:1 45:10 61:25
67:11 69:21 74:3
74:14,15,25 79:6
**provides** 16:15
21:3 35:5 45:6
67:10
**providing** 13:17
65:21
**provision** 21:9
25:1,3,3 26:24
30:11 51:11 55:12
58:23 61:20 64:18
72:2,12 74:1
**provisions** 25:2
58:25
**purchase** 61:8
63:25 67:5

**purpose** 76:2
**purposes** 44:16
48:3
**pursuant** 2:10,16
3:10,17 9:23
12:12,13 13:4
16:12 24:4,7,8
44:23 63:20 64:5
66:3 67:15
**pursue** 13:12
**pursued** 64:8
**pushes** 34:12
**put** 9:7 18:1 32:2

**q**

**qualify** 35:6,7
38:2
**quantified** 31:12
**quarropas** 1:16
**question** 18:6,25
31:22 38:19 43:5
44:2,14 53:20
54:25 79:25
**questioned** 49:6
**questions** 43:6
57:10
**quite** 65:7 68:19
**quote** 38:9,9 39:6
50:8
**quoted** 39:3,18,22
45:2 67:7

**r**

**r** 1:22 4:1 5:1,8
9:1 81:3 82:1
**raise** 9:19
**raised** 31:4 59:23
78:4
**rdd** 1:3,25
**reaching** 55:19
**read** 11:16 15:17
17:6 18:17 25:21
30:9 31:7 38:24
39:18 61:11,12
72:13 79:3

reading 25:12
reads 61:20
real 30:24 43:5
  76:25 78:17
reallocation 36:20
really 9:17 15:3
  15:24 19:10 25:6
  26:3,4 27:15
  31:13 36:8 37:12
  43:2 44:4 45:1
  50:2 53:21,24
  56:15,21 63:5
  76:18 78:1
reason 10:9,16
  18:1 25:12 41:7
  54:5 60:23,24
  76:9
reasonable 44:6
reasonably 12:24
reasons 29:24,25
  30:1 56:24 79:22
recall 54:11 57:11
receive 50:7 54:16
  64:21 66:14
received 46:6
receiving 50:7
recipient 47:2
recognized 72:11
recollection 14:12
  55:25
record 10:18
  11:23 14:13 68:13
  76:25 78:21 79:8
  82:4
recording 9:9
recrafted 44:19
reduced 43:22
reduction 33:3
refer 55:24 56:4
  67:6,8
reference 11:23
  31:5 43:9,10
  46:10 47:21,23

referenced 43:8
  59:17 60:24
references 23:22
  24:9
referred 42:13
  56:2
referring 42:14
refers 40:2 49:8
  55:25 61:10
reflect 45:4 46:19
reflected 15:17
reflects 62:17
refute 26:19 38:22
refuted 49:1
regard 16:14 61:7
regen 73:13,15
regime 54:4 56:12
rehabilitation
  76:3
reimbursement
  53:25
reject 2:12,17 3:4
  3:11,19 4:4 9:24
  13:1 19:3 20:21
  21:4 22:4,25 23:5
  24:4,22 25:9 41:2
  41:13 45:17 49:25
  63:22 66:2 67:22
  70:8,13,17,21,23
  71:2 72:7,17,25
  73:9 74:10,16
  76:12 79:9 81:9
rejected 2:10,16
  3:3,9,17 4:3 9:23
  16:11,12,16,17
  17:10,11,18,24
  18:16 27:4,18
  28:15 29:17 40:7
  41:5 42:2 50:12
  63:20 67:14,15
  68:1,11 69:3 73:8
  74:6 81:8

rejecting 15:14
  66:6
rejection 12:13
  13:7 25:4 40:13
  40:15,18 41:17,24
  68:18 69:4,14
  73:6 74:11,18,23
  75:1 77:13 78:20
  79:5
related 2:12,18
  3:4,12,19 4:5
  66:16
relationships
  22:11
relatively 77:11
release 13:14 17:3
  55:15 66:24
relevant 20:3 29:1
  29:6 40:19 75:5
  76:16
relied 47:20
relief 18:15 19:1,1
  36:17 37:13 56:23
  63:19 69:2 70:4,9
  76:10 77:2,20
relieved 65:23
relying 45:10
  51:22
remind 59:5
reorganization
  75:8
reorganized
  69:23 70:2
repeat 57:8 70:18
reply 14:7 77:25
  78:4
report 47:7
reporter 9:7
reports 46:14
request 13:10
  32:22 45:14 70:3
  70:9,15,19 72:14
  72:18 74:22 77:2

require 25:4 66:5
required 31:11
  72:4 79:2
requirement
  39:16 74:18
requirements
  50:21 75:1
requires 66:1
res 73:24
rescheduling 2:4
reserve 40:17
reserved 42:12
  74:13 78:8
reserves 67:22
  69:4 74:7
reserving 40:15
  74:11
residents 50:9
resides 59:6
resolution 10:13
resolve 65:10
  77:24 79:16,21
resolved 17:1,9
  67:20 68:4
resolving 65:1
respect 17:9 23:21
  49:11,14 51:9
  65:14,17 67:4
  68:3 76:12
respectfully 56:24
respective 47:8
respond 30:17
response 25:6
  39:13,19 44:17
  55:7
responses 44:1
rest 9:18 54:11
restrict 52:20
restrictions 52:17
  53:2,3
resulted 46:4
retail 60:6

**retain**  43:7
**retains**  42:8
**return**  65:14
68:24
**revenue**  34:20
46:3,5 59:7 65:24
**review**  46:17
78:22
**reward**  53:22
**richard**  6:14
**rid**  54:8 58:21
**ride**  41:2
**riecker**  6:17
**right**  11:19 14:23
15:4,7,15,18,22
16:3,14 17:25
19:19,21,24 21:23
23:21 26:21,25
27:11 30:6 33:11
33:15,17 34:25
36:24 37:2,19,20
38:24 40:15,17
41:8,12 42:12
47:3,5,11,15
49:14,16,23 50:18
52:4 54:7 55:2,20
55:24 56:20 60:3
60:15 61:10 62:19
63:13,13,16 66:21
67:22 71:16 72:18
73:3 74:11,13,15
76:12 80:4
**rights**  41:6 42:9
42:20 55:15 59:17
60:2 61:7 62:4,21
62:22 63:1,2,3
64:2,8 65:3,11
66:24 76:11 78:9
78:17,19
**riverside**  71:7
**road**  82:12
**robbins**  7:15 10:6

**robert**  1:23
**roebuck**  39:6
**role**  67:4
**rolls**  33:6 34:15
43:23 53:24
**room**  1:16
**roughly**  65:7
**rule**  13:13 37:19
40:8 52:13 70:22
**ruled**  25:15
**ruling**  50:21 78:7
79:11,23
**runs**  72:10

**s**

**s**  2:12,18 3:5,12
3:19 4:5 5:1 9:1
12:9 13:1 44:18
74:17 81:3
**s.d.n.y.**  49:4 52:22
71:8,19 74:4 75:3
**safeguards**  75:17
**sara**  5:19
**satisfactory**  12:24
**satisfy**  75:1,9
**savings**  35:5
**saw**  10:12
**saying**  21:22
35:11 36:18 68:19
**says**  12:3,5 15:1
21:13 22:13,14,24
23:17 24:5 25:10
25:14 26:23 28:21
39:19 45:3,14,20
48:11 52:24 55:13
60:20 61:8 70:11
78:19
**scenario**  29:13
63:5
**scenarios**  29:5
**scheduled**  4:8
**schein**  2:19 8:7
57:2,4,4,8

**scheme**  56:18
75:25
**school**  2:9,15 3:2
3:8,13,16,20 4:2
6:2 7:2,9,16 9:20
9:21 10:3,5 12:1,7
12:17 19:7 26:23
30:21 31:16 32:6
32:17 37:15 41:19
42:2 43:20 44:15
45:21 46:6 49:23
50:4,9,11,12,20
51:14,16,20 52:6
52:15,24 54:5
55:7,10 56:17
57:12 58:20 59:6
59:8 62:1 63:17
63:18 64:9,9,15
64:17,25 65:8,13
65:15,19 66:9,19
71:3 78:15 81:6
**schriesheim**  6:17
**schwartz**  7:15
10:7
**schwartzberg**
49:2
**scope**  38:11
**sears**  1:9,25 3:5
4:6 6:18 9:3 10:9
10:11 12:6,12,16
12:21,25 13:7,20
15:4 20:16 23:15
24:3 26:4 30:4,8
30:14 31:13,18,20
31:23 32:4,7,18
33:10,13,14,18,19
33:21,22,23 34:1
34:7 35:1,15 36:6
36:6,8,11 37:23
37:23 38:3,4,6,20
39:6,10,16 42:7
42:17,18,25 43:7
43:11,18,24 44:7

44:11 45:24 47:20
50:22 51:6 53:25
54:12 55:2 57:24
59:17,22,24 60:2
62:15,23,25 63:4
63:5,9,25 64:8,13
64:16,20,20 68:18
79:25
**second**  20:19
23:24 24:10 25:7
25:12 28:19,25
29:21 70:18 72:13
76:9
**secondarily**  77:16
**secondly**  44:11
76:24 78:14
**section**  10:25
12:14 16:5,5 19:5
22:20 23:11 24:2
24:4,6,8,8 25:10
38:25 39:1,2,21
40:14 44:16 51:11
51:15,25 52:18
61:17 63:22 64:5
66:3 67:9 68:7
69:14,21 70:6,10
71:6,11 72:5,6,11
73:1,4,5,8,11,12
73:13,25 74:2,12
74:17,25 77:14
78:22 79:4,6
**sections**  16:12
52:2 67:16
**see**  18:1,16 25:8
28:5 33:3 38:12
41:16,19 47:18
49:9 66:8 71:7,18
73:13,17 75:2
**seek**  19:1 26:15
40:15 66:15 74:11
77:19
**seeking**  56:23
59:9

seeks  18:14 70:5
seen  14:7 49:1
sell  64:1
sense  56:14 62:11
  69:23
sentence  44:21
  59:20 67:7 72:13
separate  58:13
separately  56:5
served  31:4 50:10
services  33:1
set  71:23
setting  74:1
settle  42:17 79:12
settlement  11:20
  11:25 12:5 15:13
  17:21 44:13 55:23
  61:24 65:1,4,9,12
  66:7,11,18,19
  67:3 68:13,17
  69:11 76:19 78:8
  78:15
seventh  25:15
  27:20
share  46:11 54:9
shared  44:25
shareholder  39:8
she'll  26:16
shift  34:6
shock  34:8
shoes  62:24
shorten  71:2
shortening  25:12
show  78:24
shown  28:23 29:3
  29:12,22 38:7
sic  10:17 23:22
  24:5
side  13:17 30:9
  49:17 58:14,14
signatories  47:1
  47:18

signatory  49:13
signature  11:21
  11:22
signed  13:20
significant  32:24
  41:9 68:20,21
similar  65:20
simple  71:4
simplot  27:22
  73:18
simply  20:10
  21:18 30:4 44:7
  53:1 58:20 59:8
  62:5 65:21 67:8
  68:14 77:17
singh  3:5 4:5
singular  61:10
sir  22:9 24:16
  30:16,25 47:4
  62:3 63:15
sitting  50:23 51:1
  51:4
situation  23:7,12
  23:13 29:7 45:11
  75:15
six  29:10
solutions  9:10
  82:11
someone's  49:5
somewhat  56:12
soon  32:7
sorry  11:4 18:22
  35:2 54:21,22
sort  43:18 63:3
sought  68:16
  69:25
source  79:4
southern  1:2
speak  9:5,6,15
speaking  9:14
special  29:24,25
  30:1 35:10

specific  10:17
  46:9 47:21 74:1
  76:14
specifically  24:5
  24:22 25:18 40:12
  42:12 71:9,25
  74:14,19 76:11
specified  25:9
  45:16 65:17 70:16
  70:20 72:16
spend  33:1
stage  43:11 72:22
stake  75:11
stand  62:24
standard  48:17
standing  45:21
  49:5,9,24 51:9,16
  56:23 71:6 72:5
  74:21 79:7
stands  58:4
start  34:1
started  17:20
starting  32:22
starts  32:8,10
  34:8,8
state  38:16 41:22
  49:8,12,14 57:13
  57:14,25 58:8
  64:23,24 65:6,11
  66:8
stated  38:23 68:6
  79:22
statement  3:8,15
  14:5 57:18
states  1:1,15 16:6
  19:11 20:1 24:22
  44:17 52:1
stating  71:21
status  36:10 69:20
  69:20
statute  30:22
  39:25 45:20 57:21
  57:21,22 71:21

statutory  73:24
step  32:9,18 36:9
  36:13
steps  32:12 69:10
stipulating  12:9
stipulation  12:7
  12:16,18,22 13:21
  37:15 42:11,15
  43:7,10 44:13
  55:10,13,14 59:16
  65:1,12,21 66:2
  66:23
stores  49:4 71:19
strauss  5:12
street  1:16 6:10
  7:3,10,17
strike  41:20
strong  77:5
struck  26:3
structure  77:8
  78:14
stuck  25:25 28:6
  57:16
students  50:9 59:6
subject  10:13
  16:20,21,23 17:7
  24:5 25:19 26:24
  27:15,16,16 39:5
  40:2,15 65:9 69:5
  69:10 73:5,12
  76:14
submit  79:10
subparagraph
  12:20 13:9 30:13
subsequent  32:20
  34:4,17 55:17
  67:1 74:15
substance  12:24
substantial  40:10
  41:25 51:13 52:5
  73:2
substantially  52:2
  64:1

**successful** 63:7
76:3
**sue** 48:15
**suffer** 75:18
**suffering** 77:23
**sufficient** 75:14
**suggesting** 60:2
**suggests** 78:16
**suite** 6:11,20
82:13
**summary** 64:24
**sunny** 3:5 4:5
**supplement** 3:15
14:5,19 16:10
20:2 32:2 67:12
**supplemental**
3:15
**support** 4:1 11:10
48:12
**supposed** 46:1
**sure** 9:7 11:13
42:22 57:7 59:13
**sympathetic** 77:7
**synonymous**
62:21

**t**

**t** 7:6 82:1,1
**take** 14:16 26:14
31:11 32:12,12,14
34:10 38:16 40:24
53:16 54:15 57:12
59:2,9 63:10
68:21 76:17
**taken** 9:10 12:4
69:10 75:24
**talk** 46:15
**talking** 22:7 30:8
37:5,6
**tax** 33:3,5,6,8
34:14,15 35:4,8
37:3 43:23 46:3
50:7 53:24 55:17
64:20 67:1 71:24

77:9
**taxation** 35:10
37:12
**taxes** 32:14,25
33:10,12,15,16
43:22 44:8,25
46:12
**taxing** 13:15 32:6
32:13,17 33:1,20
34:15,20 35:9
41:18 42:3 44:23
46:2,3,5,10,11,14
46:16,22 47:22
50:10 51:8 54:13
59:7 68:20 71:24
77:7
**taxpayers** 33:3
44:9 65:23 77:10
**taxuals** 32:15
**telephonic** 2:8,14
3:1 4:8 9:4
**telephonically**
5:10,21 6:6,14,23
7:6,13,20 8:7
**tell** 21:16 48:13
**temporal** 27:17
**tense** 61:11,13
62:13,13
**term** 39:1 44:3,24
55:3 60:18 62:13
62:14 71:22 77:11
77:24
**terminate** 50:14
54:6
**terminated** 34:4
40:23 46:4 50:12
75:23
**termination** 34:3
36:25 66:12 78:19
**terms** 12:4,12,14
13:4 20:1,16 21:1
24:7 40:6 50:17
51:9 52:12,14

57:19 60:6 64:20
66:4 68:7 69:4
74:15,20
**texas** 27:23 73:20
**thank** 10:4 11:12
34:21 59:10,14
80:3,6,7,8
**theory** 73:22
**thereto** 20:3
**thing** 22:20 31:9
35:25 39:16 50:2
**things** 15:4 31:9
31:17 38:10,22
46:18 57:14 62:8
65:15
**think** 9:17 10:2,16
10:22 11:22,23
15:1 19:8,8,16,17
22:5,9 23:7,10,11
25:21,25 26:13
29:14 31:6,21
41:6 44:4 45:1
51:22 52:14 53:12
54:20 55:10 56:9
61:17 62:17 79:24
**third** 47:10,12
48:7,10,14 49:10
50:3 54:15 72:14
76:9
**thought** 42:17
**throw** 22:3
**throws** 24:21
**tie** 74:19
**tied** 38:3 39:15
**tier** 76:9
**ties** 21:21
**till** 34:11
**time** 9:5 22:25
25:9,13,17 30:10
31:22 41:2,12,25
44:24 45:16 46:10
46:13,16 57:22
59:22 62:14 70:7

70:13,16,21 71:2
72:8,14,16,19,25
73:10 75:14 76:17
**times** 9:13 33:2
**timing** 50:17
**title** 22:24 25:1,2
70:12 73:5
**today** 32:22 58:16
79:25
**today's** 9:17 79:24
**told** 21:9 46:16
**top** 15:11
**total** 61:14 62:10
**totality** 24:9
**track** 11:5
**transcribed** 4:25
**transcript** 9:10
82:3
**transform** 6:9
10:10,12,17 11:5
12:2,3,9,11,17,17
12:25 13:1,3,4,10
13:12,19,23 14:12
14:25 15:12,20
17:13 31:9,18
33:16,16,21 34:7
34:23 35:3,12,15
35:18,22,23 36:10
36:18 37:11,22
38:2 41:20 42:4
42:14,15,19,23
43:9,12 44:7
50:13 53:4,14
54:7 55:21,22,24
56:5,18 60:10,12
60:18,18,20,24
61:7,12,19 62:15
63:6,25 64:1,5
65:5,8,20,25 66:9
66:14,15,20 67:4
67:6 68:13,16
69:9 76:8,21,22
77:3,14,24 78:3

[transform - worked]                                                          Page 20

78:12,12,15,24
**transform's**  14:8
  17:21 37:3,11
  65:10 77:17
**transforms**  72:18
**treaty**  46:20
**tried**  42:1 76:17
  79:20
**tries**  71:20 72:12
**trigger**  77:13
**triggered**  18:18
**triggers**  36:12
**true**  43:17 53:14
  53:15 72:22 78:6
  82:4
**trust**  20:2 79:15
  79:19
**trustee**  22:24 25:8
  41:4 70:12,16,20
  72:15
**try**  26:19 28:7
  40:21 41:21 56:14
  56:18
**trying**  11:4 18:24
  18:24 28:2 40:23
  41:6,16 57:16
  77:15
**turn**  10:2 16:2
  22:23 39:23
**turning**  24:23
**two**  18:14 19:4
  32:9,15 34:2
  36:13 40:19,20
  43:5 44:1 49:17
  49:17 58:22 76:16
  79:20
**type**  41:11
**typical**  59:19

**u**

**u**  81:3
**u.s.**  1:24 73:16
**ual**  27:21 73:14
  73:14,16,16

**ultimately**  13:18
  31:10 73:22
**unconditionally**
  53:5 78:25
**undated**  11:21,23
**underlying**  53:17
**understand**  21:11
  23:22 35:16 42:10
  44:2 68:23
**understood**  67:4
**unexpired**  16:6,22
  16:23 70:24 73:7
**unfair**  31:21
**unique**  49:13
**unit**  2:9,14 3:2,8
  3:13,16,20 4:2 6:2
  7:2,9,16 9:20 81:6
**united**  1:1,15
  25:16
**unmute**  9:14
**unresolved**  69:7
**unsecured**  5:13
**unsustainable**
  69:3
**upfront**  54:5
**urban**  33:7
**use**  23:15 27:3
  45:13 58:9
**uses**  60:18 71:11
  71:12

**v**

**v**  6:18 27:22 28:12
  73:13,16,18
**valuable**  41:7
  53:9 56:11,20
**value**  15:19 31:11
  32:15,25 33:4,5
  34:14,17,18 40:21
  40:24 41:16,18,25
  42:1,8,10 43:18
  43:23 56:19,20
  59:2,2 68:16,20
  68:21,24 75:15

76:25 77:4,18
  78:18,18
**valued**  59:3
**various**  64:12
  71:24
**vedder**  8:1 57:4
**veritext**  82:11
**view**  49:23
**village**  2:19 8:2
  13:13 23:15 32:11
  34:5 36:19 38:20
  45:24 46:13 47:3
  47:6,9,20 48:25
  51:1 53:1,1,17
  54:2,3,4,9,17 57:5
  59:4 60:19 64:18
  64:25 65:5 68:22
  68:24 71:5,23
  77:16 79:13,22
**vis**  15:4,4
**visualize**  19:8
**vitally**  33:2
**voice**  9:7
**void**  20:14 22:19
  23:10

**w**

**w.d.**  73:20
**wacker**  6:19
**wait**  34:11 61:5
**waiting**  36:5
**waive**  34:24,25
  35:3,5,18,24
  36:19 53:1 54:7
  55:2,14 65:13
  66:23
**waived**  35:1 42:8
  66:21
**waiver**  55:8 60:11
  60:12 62:6 78:9
**waiving**  35:19
  60:2 62:4
**walking**  42:25

**want**  9:10,15
  50:16 54:18 57:9
  58:18 59:15
**wanted**  15:12
  17:23 42:24 52:11
**wants**  9:19 10:1
  30:12
**way**  19:8 28:11
  36:22 58:1 61:17
  61:20 62:6 73:8
**ways**  23:20
**we've**  26:1 37:1
  56:10,11 63:11
**week**  29:10
**weil**  5:2 14:22
  49:19
**went**  41:3
**west**  6:10 7:3,10
  7:17
**white**  1:17
**willing**  10:14
  50:13
**willingness**  43:13
**wishes**  53:5
**withdraw**  10:14
  13:6,24 15:7,12
  17:13 43:13 53:5
  55:22 69:12
**withdrawal**  12:10
  13:2 15:1 17:22
  17:22 36:9 65:15
  79:1
**withdrawing**  62:1
**withdrawn**  15:3
  36:5 69:25
**withdraws**  37:22
**withdrew**  36:4
**wl**  74:4
**word**  14:16
**words**  62:21
**work**  79:23
**worked**  46:20

[works - zachary]                                                                  Page 21

| | |
|---|---|
| **works**   47:3 | |
| **world**   37:25 | |
| **worldcom**   40:13 | |
| 74:4 | |
| **worth**   37:9 | |
| **writing**   38:13 | |

|  **x**  |
|---|

**x**   1:5,13 81:1

|  **y**  |
|---|

**yeah**   36:2 54:23
  55:6 56:4,8
**year**   20:14 21:19
  21:20 29:8 32:10
  32:11,15,20,24
  33:5,6,6,7 34:2,2
  34:4,10,11,14,16
  34:17,19 36:13,15
  36:18 42:2,3,3
  44:10 54:10 55:17
  57:13 65:7 67:1
**years**   46:9,20
  47:19 55:18 58:22
  67:2
**york**   1:2,17 5:5,16
  6:4 8:5

|  **z**  |
|---|

**zachary**   5:20