WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jared R. Friedmann
Jacqueline Marcus
Jennifer Brooks Crozier

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
: 
In re : Chapter 11
:
**SEARS HOLDINGS CORPORATION,** *et al.*, : Case No. 18-23538 (RDD)
:
Debtors.¹ : (Jointly Administered)
:
----------------------------------------------------------------x

# REPLY IN FURTHER SUPPORT OF
# MOTION OF DEBTORS TO COMPEL TURNOVER OF ESTATE PROPERTY

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 130 W. 44nd St., 17th Fl., New York, NY 10036.

## TABLE OF CONTENTS

I.   Preliminary Statement ................................................................................................ 1

II.  Argument .................................................................................................................. 2

    A.    The Plain and Unambiguous Language of the Second APA Settlement Agreement Makes Clear That the Debtors Did Not Waive Their Right to Receive the Proceeds of the Closed Claims ........................................................ 2

    B.    Parol Evidence Supports the Debtors' Argument That Section 17(b) of the Second APA Settlement Agreement Is a Narrow Netting Provision—Not a Broad Release of Transform's Obligation to Pay Any Amounts Due Under the APA ................................................................................................................ 6

    C.    The Closed Claims Are Not Associated With Any "Valuable Rights" Other Than Proceeds ....................................................................................................... 7

    D.    Transform's Objection Is Based At Least in Part Upon the Incorrect Assumption That the Debtors Knew That Transform Already Had Converted the Proceeds of the Closed Claims When the Parties Executed the Second APA Settlement Agreement ................................................................ 8

    E.    The Debtors Agree to Reduce the Amount Owed to $406,505.07 ..................... 9

    F.    Transform Is In Material Breach of the Second APA Settlement Agreement Which Excuses the Debtors from Further Performance of the Agreement ............................................................................................................ 10

III. Conclusion ............................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Callaman v. Powers*,
   199 N.Y. 268 (1910) ..................................................................................................................10

*Felix Frank Assocs., Ltd. v. Austin Drugs, Inc.*,
   111 F.3d 284 (2d Cir. 1997)......................................................................................................11

*Septembertide Pub., B.V. v. Stein & Day, Inc.*,
   884 F.2d 675 (2d Cir. 1989).......................................................................................................10

*In re Soundview Elite Ltd.*,
   543 B.R. 78 (Bankr. S.D.N.Y. 2016) ...........................................................................................2

*Wechsler v. Hunt Health Sys., Ltd.*,
   330 F. Supp. 2d 383 (S.D.N.Y. 2004)........................................................................................11

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

The Debtors seek an order from this Court compelling the turnover of any and all proceeds of certain litigation and insurance claims belonging to the Debtors under the APA that Transform received and is holding in violation of the APA, the Second APA Settlement Agreement, and the automatic stay, and, in further support of the Debtors' *Motion to Compel Turnover of Estate Property* [ECF No. 9106] (the "**Turnover Motion**"), respectfully represent as follows:[2]

I. **PRELIMINARY STATEMENT**

1. The many arguments advanced in Transform's lengthy objection to the Turnover Motion (the "**Objection**") can be boiled down to one: because Section 17(b) of the Second APA Settlement Agreement provides that "[n]either Party shall be required to make any cash payment to the other Party pursuant to this Agreement," Transform does not have to return to the Debtors the proceeds of Closed Claims that Transform converted before the Agreement was executed, notwithstanding the fact that the Agreement provides that the Closed Claims (and any and all rights to them) belong to the Debtors under the APA. Stated differently, Transform asks this Court to accept the ludicrous argument that an agreement which made clear that the proceeds of the Closed Claims belonged to the Debtors under the APA also ratified Transform's conversion of those proceeds.

2. As the Debtors argued in the Turnover Motion, this argument is belied by the plain and unambiguous language of the Second APA Settlement Agreement itself. Even if it were not, however, parol evidence demonstrates that the Parties understood that Section 17(b) would operate as a narrow netting provision—not a broad release of Transform's obligation to pay amounts owed

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Turnover Motion.

1

under the APA. The baseless arguments that Transform advances in support of its position abandon even the pretense of good faith. Accordingly, the Debtors seek relief from this Court, including an order directing Transform to turn over the proceeds of the Closed Claims and granting the Debtors such other and further relief that the Court deems just and proper, including but not limited to their attorneys' fees incurred as a result of Transform's willful violation of the automatic stay.[3]

## II.    ARGUMENT

### A.    The Plain and Unambiguous Language of the Second APA Settlement Agreement Makes Clear That the Debtors Did Not Waive Their Right to Receive the Proceeds of the Closed Claims.

3.    Section 10(a) of the Second APA Settlement Agreement provides, in pertinent part:

> The Parties acknowledge and agree that any and all rights, title, or interest in, to, or under the Litigation and Insurance Claims listed in Category 1 of Schedule 1 attached hereto[, including the Closed Claims,] belong to the Debtors **under the APA**.

Second APA Settlement Agreement § 10(a) (emphasis added). The inclusion of "under the APA" in the provision was not *pro forma*. The phrase is not included in Section 10(b), which allocates the Category 2 claims to Transform. *Id.* § 10(b). The same is true of the description of Section 10 set forth in the Debtors' *Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019(a) For*

---

[3] Transform points to a series of cases like *In re Soundview Elite Ltd.*, 543 B.R. 78 (Bankr. S.D.N.Y. 2016), to support its meritless argument that it did not violate the automatic stay. Obj. ¶¶ 35-36. In *Soundview Elite*, the United States Bankruptcy Court for the Southern District of New York explained that the turnover power may not be invoked "as a Trojan Horse for bringing garden variety contract claims; when the property in question is not already property of the estate; or when the turnover statute is used to recover assets with disputed title when the estate's claim of ownership is legitimately debatable." *Id.* at 97. The Debtors do no such thing. As discussed in the Turnover Motion, the property in question here falls squarely within the turnover power of this Court. Turnover Mot. ¶¶ 23-26. Transform cannot write itself out of its stay violation by claiming that title to the proceeds of the Closed Claims is in dispute; there is simply no "legitimate debate" concerning who owns these assets (the Debtors), who is holding them in violation of the automatic stay (Transform), and who is willfully failing and refusing to turn them over (Transform). Accordingly, the Debtors seek, and are entitled to, attorneys' fees incurred in connection with bringing the Turnover Motion.

2

*Entry of An Order Approving the Second APA Settlement Agreement* [ECF No. 8445] (the "**Motion for Approval**") (which Transform reviewed and approved, *see* Second APA Settlement Agreement § 17(a)). The Motion for Approval describes the Parties' agreement as follows: "[t]he Litigation and Insurance Claims listed in Category 1 of Schedule 1 belong to the Debtors ***under the APA***, and . . . [t]he Litigation and Insurance Claims listed in Category 2 of Schedule 1 belong to Transform[.]" Mot. for Approval at Part IV.B. This description further demonstrates that, in allocating the Category 1 claims to the Debtors in Section 10(a) of the Second APA Settlement Agreement, the Parties were not divvying up assets willy-nilly but rather acknowledging and agreeing in principle that the rights to the Category 1 claims belonged to the Debtors under the APA and that any obligation to turn them over to the Debtors (regardless of who owed that obligation) was owed pursuant to the APA. With that acknowledgement and agreement, the Debtors were then empowered to pursue such proceeds—from whomever was holding them—without having to navigate concerns about which party (Sears or Transform) was entitled to such proceeds and, pursuant to Section 20 of the Second APA Settlement Agreement, with Transform's cooperation.[4] With respect to any proceeds of Closed Claims held by Transform, this should have been easy.

4.      Because Transform's obligation to return the Closed-Claim proceeds to the Debtors is owed under the APA, Section 17(b) does not operate to release Transform from that obligation. Section 17(b) provides:

> <u>Netting of Payments</u>. Because, ***for purposes of this Agreement***, without admitting any liability, (i) Transform has agreed it owes the Debtors $358,000 in connection

---

[4] Section 20 of the Second APA Settlement Agreement states: "<u>Further Assurances</u>. Upon the Effective Date, the Parties shall use their reasonable best efforts to take, or cause to be taken, all appropriate action to do or cause to be done all things necessary under applicable law, and to execute and deliver such documents and other papers, in each case, as may be required to carry out the provisions of this Agreement and consummate and make effective the transactions contemplated hereby."

3

>   with the Mexican Gains Taxes Dispute, $240,000 in connection with the SHC-Israel Employees Costs Dispute, and $125,000 in connection with the 2019 BPP Taxes Dispute ($723,000 in the aggregate); (ii) the Debtors have agreed that they owe Transform $1,036,000 in connection with the Buyer Transition Services Dispute and $61,000 in connection with the Sedgwick Fees Dispute ($1,097,000 in the aggregate); and (iii) Transform has agreed in Section 10(c) above that, in consideration of the Debtors' agreement to pay Transform forty percent (40%) of the net recovered proceeds on the Bayamon/Panama City Claims, the Debtors will be entitled to reduce the $1,036,000 they owe to Transform for Buyer Transition Services as set forth in paragraph 9(a) above by $374,000 (reducing the amount owed by the Debtors to Transform to $723,000 in the aggregate), neither Party shall be required to make any cash payment to the other Party ***pursuant to this Agreement***, except in connection with the Vornado Claims, the Altaquip Claims, and the Bayamon/Panama City Claims as may be required pursuant to Sections 2 and 10(c) above, or in connection with any post-Execution Date Buyer Transition Services, as may be required pursuant to Section 9(b) above.

Second APA Settlement Agreement § 17(b) (emphasis added). The text of Section 17(b) makes it very clear that the Litigation and Insurance Claims were ***not*** included in the litany of payments that were subject to the netting of payments under the Second APA Settlement Agreement. *See* Turnover Mot. ¶¶ 29-30.

5.     Transform reiterates in its Objection the argument that the Debtors are barred from seeking turnover of the Closed-Claim proceeds because of the mutual release contained in Section 18(a) of the Second APA Settlement Agreement. Obj. ¶ 18. As discussed in the Turnover Motion, this argument is meritless. By pursuing Transform for turnover of the Closed-Claim proceeds, the Debtors are merely ***enforcing*** Section 10(a) of the Second APA Settlement Agreement, in which the Parties "acknowledge[d] and agree[d] that any and all rights, title, or interest in, to, or under the Litigation and Insurance Claims listed in Category 1 of Schedule 1 attached hereto belong to the Debtors under the APA." And, in Section 18(b) of the Second APA Settlement Agreement, the Parties expressly agreed that "nothing in [the] Agreement ***(including, without limitation, Section 18(a))*** releases, waives, or prejudices the rights of any Party . . . to [] enforce this Agreement . . . ." § 18(b) (emphasis added).

4

6. Transform also asserts that "[t]his dispute turns on a simple question of contract interpretation" and that "silence is determinative." Obj. ¶¶ 1, 16. On these two points, at least, Transform is correct. This dispute turns on the interpretation of the plain and unambiguous language of Section 10(a) of the Second APA Settlement Agreement. And nowhere in that provision (or, indeed, anywhere else in the Agreement) did the Parties say that Transform had recovered the proceeds of the Debtors' Closed Claims and was entitled to keep them. In fact, the provision says just the opposite: "Transform releases, waives, ***and relinquishes*** to the Debtors any and all right, title, and interest in, to, or under each of the Litigation and Insurance Claims listed in Category 1," which includes the Debtors' Closed Claims. Second APA Settlement Agreement § 10(a) (emphasis added). To relinquish something means to "give up, resign, or surrender" that thing.[5] Accordingly, to the extent Transform converted the proceeds of the Debtors' Closed Claims before the Parties executed the Second APA Settlement Agreement, Transform gave up, resigned, and surrendered any right to those proceeds to the Debtors upon execution of the Agreement.

7. The Second APA Settlement Agreement's silence with respect to Transform's conversion of the proceeds of the Debtors' Closed Claims is not the only meaningful omission here. Nowhere in Transform's twenty-four page Objection does it reproduce the language of Section 10(a) of the Agreement. Transform's silence with respect to the provision speaks volumes. Transform does not quote the text of Section 10(a) because that text, read as a whole and in the context of the entire agreement, plainly supports the Debtors' arguments.

---

[5] *Relinquish*, Oxford English Dictionary (available at https://www.oed.com/view/Entry/161967?redirectedFrom=relinquish).

5

    **B.**    **Parol Evidence Supports the Debtors' Argument That Section 17(b) of the Second APA Settlement Agreement Is a Narrow Netting Provision—Not a Broad Release of Transform's Obligation to Pay Any Amounts Due Under the APA.**

    8.    To the extent the Court is inclined to conclude that the language of Section 17(b) is ambiguous (and the Debtors submit that the Court should not), the parol evidence makes clear that the Parties intended Section 17(b) to operate as a narrow netting provision—not a broad release of any Transform obligation to turn over amounts owed under the APA. As the correspondence between counsel for Transform and counsel for the Debtors shows, the Debtors owed Transform approximately $1 million for services performed pursuant to the Transition Services Agreement. *See Supplemental Declaration of Jennifer Brooks Crozier in Support of Debtors' Motion to Compel Turnover of Estate Property*, filed concurrently herewith, at Ex. B (FRE 408 – WGM offer 7.29.20.DOCX). For almost a month prior to the execution of the Second APA Settlement Agreement, the Parties negotiated a variety of ways to offset that payable. *See generally id.* at Ex. A (July 10, 2020 to July 29, 2020 Email Chain Between and Among J. Friedmann and S. O'Neal, et al., Re: FRE 408 – Sears/Transform Settlement Proposal); Ex. B (FRE 408 – WGM offer 7.20.20.DOCX). Section 17(b)—the "Netting of Payments" provision—was the culmination of those negotiations.

    9.    The redlined "Summary of Payments" table in the draft term sheet attached to the Supplemental Crozier Declaration as Exhibit C illustrates one round of those negotiations. *Id.* at Ex. C (Redline – FRE 408 Sears 7.29.20.docx) at 3. In that table, counsel for the Debtors suggested that, because Transform owed the Debtors $723,000 in cash with respect to the Mexico Dividend, SHC-Israel Employee Costs, and 2019 BPP Taxes Disputes, and because the Debtors owed Transform approximately $1,097,168 in cash with respect to the Sedgwick Fees and the Buyer Transition Services Disputes, the Debtors would give Transform the rights to a certain, specified

pending claim if Transform would agree to treat the transfer of that claim as a $375,000 cash payment from the Debtors to Transform, thus reducing the amount owed by either party to the other to a *de minimis* amount. *Id.* The Summary Table makes no mention of the Litigation and Insurance Claims dispute and shows, unequivocally, that the netting of payments the Parties ultimately memorialized in Section 17(b) related only and specifically to the netting of the Parties' cash payments in connection with the five enumerated disputes. *Id.*

        **C.     The Closed Claims Are Not Associated With Any "Valuable Rights" Other Than Proceeds.**

        10.     Transform protests that its argument does not render Section 10(a) of the Second APA Settlement Agreement meaningless because the Closed Claims have "valuable rights" aside from the proceeds associated with them. Obj. ¶ 31. According to Transform, these "valuable rights" include the TBK Account (worth approximately $169,000—about one-quarter of the Closed Claims' total value) and "the right to any residual or contingent (*i.e.* future) value from the Closed Claims," whatever that might be. *Id.* The Debtors appreciate Transform now acknowledging that the amounts remaining in the TBK Account belong to the Debtors (which reduces the relief the Debtors seek in the Turnover Motion by that amount, *see infra*). But the so-called "residual or contingent value" associated with the Closed Claims or the "right to enforce the various settlement agreements" relating to the Closed Claims are effectively worthless. There is no question that the Parties intended the "rights" to the Litigation and Insurance Claims (including the Closed Claims) to refer first and foremost to the ***proceeds*** associated with those Claims. For example, when the Debtors described the Litigation and Insurance Claims in the Motion for Approval, they described them as "worth millions of dollars." Mot. for Approval ¶¶ 2, 24. It is simply not credible to argue that the Parties ***explicitly*** agreed in the Second APA Settlement Agreement that the fourteen Closed Claims belonged to Debtors but somehow

7

*implicitly* agreed that Transform could keep the proceeds of those Claims. The only reasonable reading of Section 10(a)—absent express language transferring ownership of the Closed-Claim proceeds to Transform (which does not exist)—is that the proceeds (wherever they may be) belong to the Debtors.

  **D.**  **Transform's Objection Is Based At Least in Part Upon the Incorrect Assumption That the Debtors Knew That Transform Already Had Converted the Proceeds of the Closed Claims When the Parties Executed the Second APA Settlement Agreement.**

  11.  Transform's objection is predicated, at least in part, upon the incorrect and self-serving assumption that the Debtors knew that Transform already had converted the proceeds of the Closed Claims—in direct contravention of this Court's prior warnings not to cash checks issued to Sears—when the Parties executed the Second APA Settlement Agreement. On the contrary, the Debtors did not know, and had no reason to know, that Transform had converted the proceeds of Closed Claims, and so the Debtors could not have knowingly agreed to cede those ill-gotten proceeds to Transform in the Second APA Settlement Agreement.

  12.  Transform's counsel began his May 20, 2020 letter by telling the Debtors that they were "entitled to ***ten closed claims . . . for a total recovery of $614,018.94*** . . . ." *Declaration of Jennifer Brooks Crozier In Support of Debtors' Motion to Compel Turnover of Estate Property* [ECF No. 9113] ("**Crozier Decl.**") at Ex. A (Barefoot Letter) at 1. He continued: "Transform is prepared to transfer these claims, or the proceeds thereof, to the Debtors . . . ." *Id.* Counsel did not write, though he could have, that the proceeds of the Closed Claims had already been recovered by Transform and were in its possession. *See generally id.* Instead, he indicated, first, that the Closed Claims had value (without distinguishing between present or future value) and, second, that Transform would transfer the claims (without distinguishing between closed or pending), or the proceeds thereof, to the Debtors. *Id.* at 1. The fact that the Debtors did not draw the distinction

8

Pg 12 of 15

between closed and pending claims that Transform now argues the Parties understood (i.e., that Transform had converted the proceeds of Closed Claims but that the proceeds of pending claims were still up for grabs) is illustrated by Schedule 1 to the Second APA Settlement Agreement, which lumps all of the Category 1 claims—closed and pending—together and sorts them by date, without regard to status or recovery.  *See* Second APA Settlement Agreement at Sched. 1.

13.     The fact is that there was no reason for the Debtors to assume (much less know) that Transform had ignored the substance of the Court's December 13, 2019 ruling and (again) deposited checks belonging to the Debtors into its own bank accounts.  *See* Crozier Decl. Ex. D (Dec. 13, 2019 Hr'g Tr.) at 82:8-83:18.  Transform certainly never said that it had done so—not in the Barefoot Letter and not when the Parties were negotiating the terms of the contract provisions at issue here.  The substance of the Second APA Settlement Agreement and Mr. Gallagher's declaration make clear that the Debtors believed that, once armed with the executed Agreement, they would embark upon attempting to recover the proceeds of the Litigation and Insurance Claims (whether closed or pending) from whomever was holding them.  *See Declaration of William Gallagher in Support of Debtors' Motion to Compel Turnover of Estate Property* [ECF No. 9108] ("**Gallagher Decl.**") at ¶¶ 6-7.  It was only when the Debtors began that process that they learned from Mr. Wilens that he had sent the Titusville and St. Joseph Proceeds to Transform and that Transform had deposited those proceeds into its own account.  *Id.* ¶¶ 8-9.

E.     **The Debtors Agree to Reduce the Amount Owed to $406,505.07.**

14.     Transform asserts that, "[e]ven if the Debtors were correct that the Second APA Settlement Agreement entitled them to a cash payment for the Closed Claims . . . , their requested $676,668.73 in funds must be reduced . . . ." Obj. ¶ 33.  As the Debtors explained in the Turnover Motion, on or around November 4, 2020, Transform ceased supplying the Debtors or their advisors with information concerning the Closed Claims (including which attorneys were litigating or had

9

litigated those claims on behalf of the Debtors). Gallagher Decl. ¶¶ 10-12. At that point, the Debtors knew (because Mr. Wilens had informed them) that Transform had converted the Titusville and St. Joseph Proceeds (and that some of those proceeds had been used to fund an attorney retainer account), but the Debtors had no way of knowing what had become of the other Closed-Claim proceeds. *See id.* ¶¶ 9-12 Accordingly, the Debtors sought the full amount of the Closed-Claim proceeds in their Turnover Motion. Given that (i) Transform has now acknowledged that $169,287.66 in the TBK Account belong to the Debtors and (ii) the Parties now agree that TBK spent $100,876 of the funds in the Account on "Debtor Claim Uses" (facts that, until very recently, were in dispute or at least unestablished), the Debtors are now prepared to reduce their demand to $406,505.07. *See* Obj. ¶¶ 31, 33-34.

      F.      **Transform Is In Material Breach of the Second APA Settlement Agreement Which Excuses the Debtors from Further Performance of the Agreement.**

15.      Finally, Transform argues that the Debtors have improperly failed to deliver the Indian Acquired Foreign Assets to Transform pursuant to the Second APA Settlement Agreement. *Id.* ¶ 38. The Debtors, however, are excused from further performance of their obligations under the Second APA Settlement Agreement (including the obligation to transfer the Indian Acquired Foreign Assets) because, by refusing to return to the Debtors the proceeds of Closed Claims that the Parties agreed belonged to the Debtors under the APA, Transform has materially breached and frustrated the purpose of the Second APA Settlement Agreement.

16.      Under New York law, a breach is "material" where the breach is "material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract." *Septembertide Pub., B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 678 (2d Cir. 1989) (quoting *Callaman v. Powers*, 199 N.Y. 268, 284 (1910)). In determining whether a breach is material, New York courts consider the following circumstances:

10

- "the extent to which the injured party will be deprived of the benefit which [it] reasonably expected;"

- "the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;"

- "the extent to which the party failing to perform or offer to perform will suffer forfeiture;"

- "the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;" and

- "the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing."

*Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 414 (S.D.N.Y. 2004) (quoting Rest. (Second) of Contracts, § 241(a)).

17.    Where a party to a contract materially breaches that contract, the counterparty is relieved of or excused from further performance. *Wechsler*, 330 F. Supp. 2d at 414 (citing *Felix Frank Assocs., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997)). In *Wechsler*, for example, the court held that a defendant's retention of the proceeds it collected on accounts it had sold to the plaintiff constituted a material breach. *Wechsler*, 330 F. Supp. 2d at 417 ("Failure to tender payment is generally deemed a material breach of a contract;" "By keeping all of the payments made on accounts sold to [the plaintiff], [the defendant] deprived [the plaintiff] of the benefit it reasonably expected, namely, the return of its advances plus factoring fees. [The defendant] thus materially breached the agreement.").

18.    Here, as in *Wechsler*, Transform has retained the proceeds it collected on claims it expressly acknowledged and agreed in the Second APA Settlement Agreement belong to the Debtors under the APA (despite knowing that the claims belong to the Debtors under the APA). By refusing to turn over those proceeds, Transform has deprived the Debtors of the benefit they reasonably expected from the Second APA Settlement Agreement, i.e., the ability to now collect

11

those settlement amounts. And the specious arguments that Transform has offered in defense of its wrongful conduct show, first, that there is no likelihood that Transform will cure its failure and, second, that Transform's behavior falls well short of the standards of good faith and fair dealing.

19. Accordingly, Transform has materially breached the Second APA Settlement Agreement, and the Debtors are excused from further performance of their obligations under the Agreement, including the obligation to transfer the Indian Acquired Foreign Assets. To be clear, however, the Debtors are ready, willing, and able to perform with respect to the Indian Acquired Foreign Assets should Transform comply with its obligations under the Second APA Settlement Agreement (or after they are ordered to do so).

### III. CONCLUSION

For all of the foregoing reasons, the Debtors respectfully request that the Bankruptcy Court grant this Turnover Motion and enter an order (i) directing Transform to turn over $406,505.07 to the Debtors and (ii) granting the Debtors such other and further relief, at law or in equity, to which they are entitled, including but not limited to their attorneys' fees incurred as a result of Transform's willful violation of the automatic stay.

Dated: December 8, 2020
    New York, New York

> /s/ Jacqueline Marcus
> WEIL, GOTSHAL & MANGES LLP
> 767 Fifth Avenue
> New York, New York 10153
> Telephone: (212) 310-8000
> Facsimile: (212) 310-8007
> Jared R. Friedmann
> Jacqueline Marcus
> Jennifer Brooks Crozier
>
> *Attorneys for Debtors*
> *and Debtors in Possession*