# Exhibit A

# NOTE

July 21, 1992                                         Garden City,    New York   11530

225-33 113th Drive, Queens Village, N.Y. 11429

**1.  BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 65,000.00           (this amount is called "principal") plus interest, to the order of the Lender. The Lender is
MIDCOAST MORTGAGE CORPORATION
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 8.750 %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(b) of this Note.

**3.  PAYMENTS**
**(A) Time and Place of Payments**
I will pay principal and interest by making payments every month.
I will make my monthly payments on the 1st day of each month beginning on September 1, 1992     . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on August 1, 2022       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."
I will make my monthly payments at 275 Broad Hollow Road, Melville, New York 11747               or at a different place if required by the Note Holder.
**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. $ 511.36               .

**4.  BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.
I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5.  LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**6.  BORROWER'S FAILURE TO PAY AS REQUIRED**
**(A) Late Charge for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of  15  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  2  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed(the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED.**

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Security Instrument. If Lender requires immediate payment in full under this Paragraph 17, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

*Mildred Rodgers* . . . . . . . . . . . . . (Seal)
MILDRED RODGERS                         -Borrower

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Seal)
                                        -Borrower

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Seal)
                                        -Borrower

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Seal)
                                        -Borrower

Without recourse pay to the order of

This_____ day of _____ 19___
MIDCOAST MORTGAGE CORPORATION

Vice President

Form 3233  10/91 (page 2 of 2 pages)

**STATE OF NEW YORK**

SS.:

**COUNTY OF Nassau**

On this 21st day of July, 1992 , before me personally came MILDRED RODGERS

to me personally known, and known to me to be the individuals described in and who executed the foregoing instrument, and duly acknowledged that she executed the same.

JOSEPH H. ROONEY
NOTARY PUBLIC, State of New York
No. 30-4507939
Qualified in Nassau County
Commission Expires Dec. 31, 1993

―――――――――――(Space Above This Line For Recording Data)―――――――――――

# MORTGAGE

## WORDS USED OFTEN IN THIS DOCUMENT

(A) "Security Instrument." This document, which is dated July 21, 1992          , will be called the "Security Instrument."

(B) "Borrower." MILDRED RODGERS

residing at 225-33 113th Drive, Queens Village, N.Y.

sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C) "Lender." MIDCOAST MORTGAGE CORPORATION
will be called "Lender." Lender is a corporation or association which exists under the laws of the State of New York.

Lender's address is 275 Broad Hollow Road, Melville, New York 11747

(D) "Note." The note signed by Borrower and dated July 21, 1992          will be called the "Note." The Note shows that I owe Lender SIXTY-FIVE THOUSAND  AND 00/100
Dollars (U.S. $ 65,000.00     ) plus interest.
I have promised to pay this debt in monthly payments and to pay the debt in full by August 1, 2022          .

(E) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."

(F) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

DIST.

SEC.
49
BLOCK
11244
LOT
31

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note;
(B) Pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 of this Security Instrument to protect the value of the Property and Lender's rights in the Property; and
(C) Keep all of my other promises and agreements under this Security Instrument.

**NEW YORK**—Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form3033   10/91   (page 1 of 10 pages)

PREMISES HEREIN IS OR WILL BE
IMPROVED BY A ONE OR TWO
FAMILY DWELLING ONLY

REEL 3377 PG 1149

Title No. 8803 72586 Q

## SCHEDULE A

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough and County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point on the Northerly side of 113th Drive, distant 320 feet Easterly from the corner formed by the intersection of the Northerly side of 113th Drive and the Easterly side of 225th Street, as said Drive and Street are laid out on a certain map, entitled, "Map of Hendrickson Colony, Fourth Ward, Borough of Queens," filed in the Queens County Clerk's now Register's Office on February 2, 1926 under Map No. 4819;

RUNNING THENCE Northerly at right angles to 113th Drive, 100 feet;

THENCE Easterly, parallel with 113th Drive 40 feet;

THENCE Southerly, again at right angles to 113th Drive, 100 feet to the Northerly side of 113th Drive;

THENCE Westerly along the Northerly side of 113th Drive, 40 feet to the point or place of BEGINNING.

**DESCRIPTION OF THE PROPERTY**

I give Lender rights in the Property described in (A) through (G) below:

(A) The Property which is located at 225-33 113th Drive
Queens Village, N.Y. 11429
Queens                County. It has the following legal description:                    .    This Property is in

-SEE ATTACHED SCHEDULE-

This mortgage is of real property principally improved or to be improved by a one or two family residence or dwelling only.

(B) All buildings and other improvements that are located on the Property described in subparagraph (A) of this section;
(C) All rights in other property that I have as owner of the Property described in subparagraph (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"
(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subparagraph (A) of this section;
(E) All fixtures that are now or in the future will be on the Property described in subparagraphs (A) and (B) of this section;
(F) All of the rights and property described in subparagraphs (B) through (E) of this section that I acquire in the future;
(G) All replacements of or additions to the Property described in subparagraphs (B) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**
I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**
This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary, to a limited extent, in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

### 1. BORROWER'S PROMISE TO PAY

I will pay to Lender on time principal and interest due under the Note and any prepayment and late charges due under the Note.

### 2. MONTHLY PAYMENTS FOR TAXES AND INSURANCE

#### (A) Borrower's Obligations

I will pay to Lender all amounts necessary to pay for taxes, assessments, water frontage charges and other similar charges, sewer rents, leasehold payments or ground rents (if any), hazard or property insurance covering the Property, and flood insurance (if any). If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, (i) I also will pay to Lender all amounts necessary to pay for mortgage insurance, and (ii) if, under Paragraph 8 below, instead of paying for mortgage insurance I am required to pay Lender an amount equal to the cost of mortgage insurance, I will pay this amount to Lender. I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless the law requires otherwise. I will make these payments on the same day that my monthly payments of principal and interest are due under the Note.

My payments under this Paragraph 2 will be for the items listed in (i) through (vi) below, which are called "Escrow Items":
(i) The estimated yearly taxes, assessments, water frontage charges and other similar charges, and sewer rents on the Property which under the law may be superior to this Security Instrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "lien";
(ii) The estimated yearly leasehold payments or ground rents on the Property (if any);
(iii) The estimated yearly premium for hazard or property insurance covering the Property;
(iv) The estimated yearly premium for flood insurance covering the Property (if any);
(v) The estimated yearly premium for mortgage insurance (if any); and
(vi) The estimated yearly amount I may be required to pay Lender under Paragraph 8 below instead of the payment of the estimated yearly premium for mortgage insurance (if any).

Lender will estimate from time to time the amount I will have to pay for Escrow Items by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless the law requires Lender to use another method for determining the amount I am to pay. The amounts that I pay to Lender for Escrow Items under this Paragraph 2 will be called the "Funds." The Funds are pledged as additional security for all Sums Secured.

The law puts limits on the total amount of Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender for a "federally related mortgage loan" could require me to place in an "escrow account" under the federal law called the "Real Estate Settlement Procedures Act of 1974," as that law may be amended from time to time. If there is another law that imposes a lower limit on the total amount of Funds Lender can collect and hold, Lender will be limited to the lower amount.

#### (B) Lender's Obligations

Lender will keep the Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Funds. Except as described in this Paragraph 2, Lender will use the Funds to pay the Escrow Items. Lender will give to me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Funds, for using the Funds to pay Escrow Items, for making a yearly analysis of my payment of Funds or for receiving, verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Funds and if the law permits Lender to make such a charge. Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with my loan, unless the law does not permit Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Funds unless either (i) Lender and I agree in writing, at the time I sign this Security Instrument, that Lender will pay interest on the Funds; or (ii) the law requires Lender to pay interest on the Funds.

#### (C) Adjustments to the Funds

Under the law, there is a limit on the amount of Funds Lender may hold. If the amount of Funds held by Lender exceeds this limit, then the law requires Lender to account to me in a special manner for the excess amount of Funds. There will be an excess amount if, at any time, the amount of Funds which Lender is holding or keeping is greater than the amount of Funds Lender is allowed to hold under the law.

REEL 3 3 7 7 PG 1 1 5 2

If, at any time, Lender has not received enough Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items in full. Lender will determine the number of monthly payments I have in which to pay that additional amount, but the number of payments will not be more than twelve.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Funds that are then being held by Lender. If, under Paragraph 21 below, Lender either acquires or sells the Property, then before the acquisition or sale, Lender will use any Funds which Lender is holding at the time of the acquisition or sale to reduce the Sums Secured.

## 3. APPLICATION OF BORROWER'S PAYMENTS

Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraphs 1 and 2 above in the following order and for the following purposes:
First, to pay any prepayment charges due under the Note;
Next, to pay the amounts due to Lender under Paragraph 2 above;
Next, to pay interest due;
Next, to pay principal due; and
Last, to pay any late charges due under the Note.

## 4. BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments, water frontage charges and other similar charges, sewer rents, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will do this either by making the payments to Lender that are described in Paragraph 2 above or, if I am not required to make payments under Paragraph 2, by making the payments on time to the person owed them. (In this Security Instrument, the word "person" means any person, organization, governmental authority or other party.) If I make direct payments, then promptly after making any of those payments I will give Lender a receipt which shows that I have done so. If I make payment to Lender under Paragraph 2, I will give Lender all notices or bills that I receive for the amounts due under this Paragraph 4.

I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give Borrower a notice identifying the superior lien. Borrower shall pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

## 5. BORROWER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE OR PROPERTY INSURANCE

I will obtain hazard or property insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage, including floods and flooding. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. If I do not maintain the insurance coverage described above, Lender may obtain insurance coverage to protect Lender's rights in the Property in accordance with Paragraph 7 below.

All of the insurance policies and renewals of those policies must include what is known as a "standard mortgage clause" to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "proceeds." The proceeds will be used to repair or to restore the damaged Property unless: (A) it is not economically feasible to make the repairs or restoration; or (B) the use of the proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (C) Lender and I have agreed in writing not to use the proceeds for that purpose. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the proceeds will be used to reduce the amount that I owe to Lender under the Note and under this Security Instrument. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

**Form 3033   10/91**   *(page 4 of 10 pages)*

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

If Lender acquires the Property under Paragraph 21 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

## 6. BORROWER'S OBLIGATIONS TO OCCUPY THE PROPERTY, TO MAINTAIN AND PROTECT THE PROPERTY, AND TO FULFILL ANY LEASE OBLIGATIONS; BORROWER'S LOAN APPLICATION

**(A) Borrower's Obligations to Occupy the Property**

I will occupy the Property and use the Property as my principal residence within sixty days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**(B) Borrower's Obligations to Maintain and Protect the Property**

I will keep the Property in good repair. I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate.

I will be "in default" under this Security Instrument if I fail to keep any promise or agreement made in this Security Instrument. I also will be in default under this Security Instrument if any civil or criminal action or proceeding for "forfeiture" (that is, a legal action or proceeding to require the Property, or any part of the Property, to be given up) is begun and Lender determines, in good faith, that this action or proceeding could result in a court ruling (i) that would require forfeiture of the Property or (ii) that would materially impair the lien of this Security Instrument or Lender's rights in the Property. I may correct the default by obtaining a court ruling that dismisses the legal action or proceeding, if Lender determines, in good faith, that this court ruling prevents forfeiture of my interests in the Property and also prevents any material impairment of (i) the lien created by this Security Instrument or (ii) Lender's rights in the Property. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Paragraph 18 below, even if Lender has required immediate payment in full.

**(C) Borrower's Obligations to Fulfill Any Lease Obligations**

If I do not own but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

**(D) Borrower's Loan Application**

If, during the application process for the loan that I promise to pay under the Note, I made false or inaccurate statements to Lender about information important to Lender in determining my eligibility for the loan, Lender will treat my actions as a default under this Security Instrument. False or inaccurate statements about information important to Lender would include a misrepresentation of my intentions to occupy the Property as a principal residence. This is just one example of a false or inaccurate statement of important information. Also, if during the loan application process I failed to provide Lender with information important to Lender in determining my eligibility for the loan, Lender will treat this as a default under this Security Instrument.

## 7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or forfeiture, or to enforce laws or regulations), Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this Paragraph 7, Lender does not have to do so.

I will pay to Lender any amounts, with interest, which Lender spends under this Paragraph 7. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the Note rate. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

## 8. MORTGAGE INSURANCE

If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, I will pay the premiums for the mortgage insurance. If, for any reason, the mortgage insurance coverage lapses or ceases to be in effect, I will pay the premiums for substantially equivalent mortgage insurance coverage. However, the cost of this mortgage insurance coverage must be substantially equivalent to the cost to me of the previous mortgage insurance coverage, and the alternate mortgage insurer must be approved by Lender.

If substantially equivalent mortgage insurance coverage is not available, Lender will establish a "loss reserve" as a substitute for the mortgage insurance coverage. I will pay to Lender each month an amount equal to one-twelfth of the yearly mortgage insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the mortgage insurance would have covered. Lender may choose to no longer require loss reserve payments, if mortgage insurance coverage again becomes available and is obtained. The mortgage insurance coverage must be in the amount and for the period of time required by Lender. The Lender must approve the insurance company providing the coverage.

I will pay the mortgage insurance premiums, or the loss reserve payments, until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law. Lender may require me to pay the premiums, or the loss reserve payments, in the manner described in Paragraph 2 above.

## 9. LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

## 10. AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY

A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking either is equal to, or greater than, the amount of the Sums Secured immediately before the taking, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by a fraction. That fraction is as follows: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

Unless Lender and I agree otherwise in writing or unless the law requires otherwise, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking is less than the amount of the Sums Secured immediately before the taking, the proceeds will be used to reduce the Sums Secured.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

REEL 3 3 7 7 PG 1 1 5 5

## 11. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS

### (A) Borrower's Obligations

Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this, however, that person and I will both still be fully obligated under the Note and under this Security Instrument.

Lender may allow those delays or changes for a person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Note or under this Security Instrument, even if Lender is requested to do so.

### (B) Lender's Rights

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 21 below to demand that I make immediate payment in full of the amount that I owe to Lender under the Note and under this Security Instrument.

## 12. OBLIGATIONS OF BORROWER AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS

Any person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (A) that person is signing this Security Instrument only to give that person's rights in the Property to Lender under the terms of this Security Instrument; and (B) that person is not personally obligated to pay the Sums Secured; and (C) that person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights or to modify or make any accommodations with regard to the terms of this Security Instrument or the Note without that person's consent.

## 13. LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

## 14. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at the address stated in the section above titled "Description of the Property." A notice will be given to me at a different address if I give Lender a notice of my different address. Any notice that must be given to Lender under this Security Instrument will be given by mailing it to Lender's address stated in subparagraph (C) of the section above titled "Words Used Often In This Document." A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

## 15. LAW THAT GOVERNS THIS SECURITY INSTRUMENT

This Security Instrument is governed by federal law and the law that applies in the place where the Property is located. If any term of this Security Instrument or of the Note conflicts with the law, all other terms of this Security Instrument and of the Note will still remain in effect if they can be given effect without the conflicting term. This means that any terms of this Security Instrument and of the Note which conflict with the law can be separated from the remaining terms, and the remaining terms will still be enforced.

## 16. BORROWER'S COPY

I will be given one conformed copy of the Note and of this Security Instrument.

**Form 3033    10/91**   *(page 7 of 10 pages)*

REEL 3377 PG 1156

## 17. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Security Instrument.

If Lender requires immediate payment in full under this Paragraph 17, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

## 18. BORROWER'S RIGHT TO HAVE LENDER'S ENFORCEMENT OF THIS SECURITY INSTRUMENT DISCONTINUED

Even if Lender has required immediate payment in full, I may have the right to have enforcement of this Security Instrument discontinued. I will have this right at any time before sale of the Property under any power of sale granted by this Security Instrument or at any time before a judgment has been entered enforcing this Security Instrument if I meet the following conditions:
(A) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if immediate payment in full had never been required; and
(B) I correct my failure to keep any of my other promises or agreements made in this Security Instrument; and
(C) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees; and
(D) I do whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this Security Instrument, and my obligations under the Note and under this Security Instrument continue unchanged.

If I fulfill all of the conditions in this Paragraph 18, then the Note and this Security Instrument will remain in full effect as if immediate payment in full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required immediate payment in full under Paragraph 17 above.

## 19. NOTE HOLDER'S RIGHT TO SELL THE NOTE OR AN INTEREST IN THE NOTE; BORROWER'S RIGHT TO NOTICE OF CHANGE OF LOAN SERVICER

The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I may not receive any prior notice of these sales.

The entity that collects my monthly payments due under the Note and this Security Instrument is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note; there also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. The law requires that I be given written notice of any change of the Loan Servicer. The written notice must be given in the manner required under Paragraph 14 above and under applicable law. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by the law.

## 20. CONTINUATION OF BORROWER'S OBLIGATIONS TO MAINTAIN AND PROTECT THE PROPERTY

The federal laws and the laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection are called "Environmental Laws." I will not do anything affecting the Property that violates Environmental Laws, and I will not allow anyone else to do so.

Environmental Laws classify certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Paragraph 20. These are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Laws and the substances considered hazardous for purposes of this Paragraph 20 are called "Hazardous Substances."

I will not permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property, and I will not allow anyone else to do so. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. However, I may permit the presence on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property, and I may use or store these small quantities on the Property. In addition, unless the law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

Form 3033   10/91   *(page 8 of 10 pages)*

REEL 3377 PG 1157

If I know of any investigation, claim, demand, lawsuit or other action by the government or by a private party involving the Property and any Hazardous Substance or Environmental Laws, I will promptly notify the Lender in writing. If the government notifies me (or I otherwise learn) that it is necessary to remove a Hazardous Substance affecting the Property or to take other remedial actions, I will promptly take all necessary remedial actions as required by Environmental Laws.

## 21. LENDER'S RIGHTS IF BORROWER FAILS TO KEEP PROMISES AND AGREEMENTS

Except as provided in Paragraph 17 above, if all of the conditions stated in subparagraphs (A), (B) and (C) of this Paragraph 21 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "immediate payment in full."

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require immediate payment in full under this Paragraph 21 only if all of the following conditions are met:

(A) I fail to keep any promise or agreement made in this Security Instrument, including the promises to pay when due the Sums Secured.

(B) Lender sends to me, in the manner described in Paragraph 14 above, a notice that states:
    (i) The promise or agreement that I failed to keep;
    (ii) The action that I must take to correct that default;
    (iii) A date by which I must correct the default. That date must be at least 30 days from the date on which the notice is given;
    (iv) That if I do not correct the default by the date stated in the notice, Lender may require immediate payment in full, and Lender or another person may acquire the Property by means of foreclosure and sale;
    (v) That if I meet the conditions stated in Paragraph 18 above, I will have the right to have Lender's enforcement of this Security Instrument discontinued and to have the Note and this Security Instrument remain fully effective as if immediate payment in full had never been required; and
    (vi) That I have the right in any lawsuit for foreclosure and sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have.

(C) I do not correct the default stated in the notice from Lender by the date stated in that notice.

## 22. LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT

When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records.

## 23. AGREEMENTS ABOUT NEW YORK LIEN LAW

I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Security Instrument is recorded, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a "trust fund"; and (B) use those amounts to pay for that construction or work before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Paragraph 23.

## 24. RIDERS TO THIS SECURITY INSTRUMENT

If one or more riders are signed by Borrower and recorded together with this Security Instrument, the promises and agreements of each rider are incorporated as a part of this Security Instrument. [Check applicable space(s)]

____ Adjustable Rate Rider ____ Condominium Rider ____ 1-4 Family Rider

____ Graduated Payment Rider ____ Planned Unit Development Rider ____ Biweekly Payment Rider

____ Balloon Rider ____ Rate Improvement Rider ____ Second Home Rider

__X__ Other(s) [specify]    Description Rider

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 10 of this Security Instrument and in any rider(s) signed by me and recorded with it.

Witnesses:

. . . . . . . . . . . . . . . . . . . . . . . .    *Mildred Rodgers* . . . . . . . . . . . . . . (Seal)
                                                      MILDRED RODGERS                -Borrower

. . . . . . . . . . . . . . . . . . . . . . . .    . . . . . . . . . . . . . . . . . . . . . . . . (Seal)
                                                                                      -Borrower

——————————————— [ Space Below This Line For Acknowledgment ] ———————————————

STATE OF NEW YORK   )   SS.:
COUNTY OF Nassau        )

On this 21st   day of July, 1992          , before me personally came
MILDRED RODGERS
to me known and known to me to be the individuals described in and who executed the foregoing instrument, and
she   acknowledged to me that she   executed the same.

                JOSEPH H. ROONEY
           NOTARY PUBLIC, State of New York
                   No. 30-4507939
              Qualified in Nassau County
           Commission Expires Dec. 31, 1993          _____
                                                            Notary Public

STATE OF NEW YORK
Title No.   C-8803-72586
MILDRED RODGERS
        -to-

MIDCOAST MORTGAGE CORPORATION                    Record and Return to:

                                                 MIDCOAST MORTGAGE CORPORATION
                                                 275 Broad Hollow Road
                                                 Melville, New York 11747

                                                 Form 3033  10/91  (page 10 of 10 pages)

LOC. VER.
BY ADDRESS



REEL 3311 FG 1159

RECEIVED
RECORDING TAX OF $1,275
Includes
Add'l Tax
CJ 9652

45052



RECORDING TAX

$1,275     RECORDED IN QUEENS COUNTY

OFFICE OF THE CITY REGISTER

1992 AUG 17  A 11: 39

WITNESS MY HAND
AND OFFICIAL SEAL

CITY REGISTER

Document Prepared by:
Whom Recorded Mail To:
DOCS
1. W. Lakeview St., Suite 390
Springfield, Ohio 45502
ATTN: POST PRODUCTION

Project No.: 1996-43
Assignor No.: 92403%
Assignee No.: 0017599700
Pool No.: 722435
PIN/Tax ID #
Investor No.: 1658446315106
25-3 117TH DR
Property Address:
QUEENS VILLAGE          NY          11429

RE:
LEGAL:
Film # C6

This space for Recorder's Use Only

## ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged,
**MIDCOAST MORTGAGE CORPORATION, A NEW YORK CORPORATION**
whose address is: **1001 West Cypress Creek Rd., Ste. 300, Ft. Lauderdale, FL 33309**
by these presents does convey, grant, bargain, sell, assign, transfer and set over to:
**PNC BANK, NATIONAL ASSOCIATION, F/K/A NATIONAL CITY BANK, NATIONAL ASSOCIATION**
whose address is: **78 North Fairway, Vernon Hills, IL 60061**
the described Mortgage, together with the certain note(s) described therein with all interest,
all liens, and any rights due or to become due thereon.
Said Mortgage is recorded in the State of **NEW YORK**                                County of
**QUEENS**                                                                                             as Document No.:
Official records on          **08/17/92**     /  /     in Book:  **3877**                          at Page:

1148          Original Loan Amount: $          **6500.00**          Loan Date:  **07/21/92**
Original Mortgagor:          **MILDRED RODGERS**

Original Mortgagee:          **MIDCOAST MORTGAGE CORPORATION**

Lot  031               Section  49               Block  11264

This assignment is not subject to Section 275 of the Real Property Law as it is an Assignment within the
six month period. **MIDCOAST MORTGAGE CORPORATION, A NEW YORK CORPORATION**, the undersigned, personally appointed the undersigned association, by its Board of Directors has caused this instrument to be executed by its duly authorized officers.

**DATE OF TRANSFER: 04/01/96          MIDCOAST MORTGAGE CORPORATION, A NEW
YORK CORPORATION**

Witness                                                                                      Officers:
**GEORGE DAMPMAN**                                                          **DEBRA L. GROTH**
                                                                                                    **VICE PRESIDENT**

Witness                                                                                      Attest:
**THERESA WALCHNER**                                                       **PENNY HOLKEMA**
                                                                                                    **ASSISTANT SECRETARY**

State of OHIO
County of CLARK
On 04/01/96          before me, **SHARON SMITH**
**DEBRA L. GROTH**          the VICE PRESIDENT          address being 1001 West Cypress Creek Rd., Ste. 300, Ft. Lauderdale, FL 33309
of MIDCOAST MORTGAGE CORPORATION, A NEW MORTGAGE CORPORATION          **VICE PRESIDENT**
proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to
the within instrument and acknowledged to me that (s)he executed the same in his/her authorized
capacity and that by his/her signature on the instrument, the entity upon behalf of which the
person acted, executed the instrument.

WITNESS my hand and seal.
**SHARON SMITH**
Notary Public, State of OHIO
My commission expires: 04/23/01



MIDCOAST MORTGAGE CORPORATION SEAL 1988 NEW YORK

431362224

EEL 4377 PG 2225

# CITY REGISTER RECORDING AND ENDORSEMENT PAGE
## QUEENS COUNTY
*(This page forms part of the instrument)*

THE FOREGOING INSTRUMENT WAS ENDORSED FOR THE RECORD AS FOLLOWS:

Record &
Return to:
J. S. LIMESTONE ST. SUITE 350
SPRINGFIELD, OHIO 45502

Title/Agent Company Name:
Title Company Number:

City Register
Serial Number ◆ 046045

Recording Fee $27.—

RECORDED IN QUEENS COUNTY
OFFICE OF THE CITY REGISTER

Witness My Hand and Official Seal

*[signature]*
City Register



### NYC DEPARTMENT OF FINANCE
### OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2007032101716001002E3C8E

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 2 |
|---|---|

**Document ID:** 2007032101716001     Document Date: 02-28-2007     Preparation Date: 04-30-2007
**Document Type:** ASSIGNMENT, MORTGAGE
**Document Page Count:** 1

| PRESENTER: | RETURN TO: |
|---|---|
| CLOSING USA | CLOSING USA |
| 250 MILE CROSSING BOULEVARD | 250 MILE CROSSING BOULEVARD |
| SUITE 4 | SUITE 4 |
| ROCHESTER, NY 14624 | ROCHESTER, NY 14624 |
| 585-454-1730 | 585-454-1730 |
| ds070019518 | ds070019518 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 11244 | 31 | Entire Lot | 225-33 113 DRIVE |

**Property Type:** DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

QUEENS    Year: 1992    **Reel:** 3377    **Page:** 1148

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| PNC BANK, N.A. | WELLS FARGO BANK, N.A. |
| 75 NORTH FAIRWAY | 11200 W. PARKLAND AVE. |
| VERNON HILLS, IL 60061 | MILWAUKEE, WI 53224 |

### FEES AND TAXES

| Mortgage | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 42.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed     05-03-2007 14:40
City Register File No.(CRFN):
       **2007000231269**

*Annette M. Hill*

*City Register Official Signature*

Section 49 Block 11244 Lot 31

## ASSIGNMENT OF MORTGAGE

KNOW THAT

**PNC Bank, N.A.**, a corporation, organized and existing under the laws of the United States of America, having an office at 75 North Fairway, Vernon Hills, IL 60061, Assignor,

in consideration of TEN AND 00/100 DOLLARS ($10.00) and other good and valuable consideration, paid by

**WELLS FARGO BANK, N.A.**, having an office at Washington Mutual Bank, 11200 W. Parkland Ave., Milwaukee, Wisconsin 53224, Assignee,

hereby assigns unto the assignee, a certain Mortgage dated July 21, 1992 made by Mildred Rodgers to Midcoast Mortgage Corporation in the principal sum of $65,000.00 and recorded in the Queens County Clerk's Office on August 17, 1992 in Reel 3377, page 1148. The mortgage was assigned to PNC Bank, N.A. by Assignment of Mortgage recorded July 12, 1996 in Reel 4377, Page 2224.

This mortgaged premises are known as 225-33 113th Drive, Queens Village, NY 11429

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

TOGETHER with the bond or note or obligation described in said mortgage, and the moneys due and to grow due thereon with the interest; TO HAVE AND TO HOLD the same unto the assignee and to the successors, legal representatives and assigns of the assignee forever.

The word "assignor" or "assignee" shall be construed as if it read "assignors" or "assignees" whenever the sense of this instrument so requires.

**IN WITNESS WHEREOF,** the assignor has duly executed this assignment, the _28_ day of _February_ in the year 2007.

PNC Bank, N.A.

BY: _____
JACOB C. TALTON   AVP

State of _PENNSYLVANIA_ )
County of _ALLEGHENY_ )ss.:

On the _28_ day of _FEBRUARY_ in the year _2007_ before me, the undersigned, personally appeared _JACOB C TALTON_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual(s) made such appearance before the undersigned in the City/Town of _PITTSBURGH_, State of _PENNSYLVANIA_.

SEAL

Notary Public _STEVEN PLOESCH_

AFTER RECORDING RETURN TO:

Closing USA, LLC
ATTN: Recording Dept.
250 Mile Crossing Blvd., Suite #4
Rochester, NY 14624

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Steven Ploesch, Notary Public
City Of Pittsburgh, Allegheny County
My Commission Expires Apr. 17, 2010
Member, Pennsylvania Association of Notaries



After recording please mail to:
PEIRSONPATTERSON, LLP
ATTN: RECORDING DEPT.
13750 OMEGA ROAD
DALLAS, TX 75244-4505

———————————————*[Space Above This Line For Recording Data]*———————————————

# NEW YORK ASSIGNMENT OF MORTGAGE

For Value Received, **WELLS FARGO BANK, N.A.**, the undersigned holder of a Mortgage (herein "Assignor"), whose address is **1 HOME CAMPUS, DES MOINES, IA  50328** does hereby grant, sell, assign, transfer and convey, unto **JPMORGAN CHASE BANK, NATIONAL ASSOCIATION**, (herein "Assignee"), whose address is **700 KANSAS LANE, MC 8000, MONROE, LA  71203**, all beneficial interest under a certain Mortgage dated **July 21, 1992** and recorded on **August 17, 1992**, made and executed by **MILDRED RODGERS**, to and in favor of **MIDCOAST MORTGAGE CORPORATION**, upon the following described property situated in **QUEENS** County, State of New York:
Property Address: **225-33 113TH DRIVE, QUEENS VILLAGE, NY 11429**

**BOROUGH: QUEENS  BLOCK: 11244  LOT: 31**

such Mortgage having been given to secure payment of **Sixty Five Thousand  and 00/100ths ($65,000.00)**, which Mortgage is of record in Book, Volume or Liber No. **3377**, at Page **1148** (or as No. N/A), in the Office of the County Clerk or Register of **QUEENS** County, State of New York. .

**CHAIN OF TITLE:**

**ASSIGNMENT: MIDCOAST MORTGAGE CORPORATION, A NEW YORK CORPORATION to PNC BANK, NATIONAL ASSOCIATION, A NATIONAL BANKING ASSOCIATION DATED 04/01/1996 RECORDED 07/12/1996 REEL 4377 PAGE 2224**

**ASSIGNMENT: PNC BANK, N.A. to WELLS FARGO BANK, N.A. DATED 02/28/2007 RECORDED 05/03/2007 CRFN 2007000231269**

**TWO ASSIGNMENTS BEING SUBMITTED SIMULTANEOUSLY TO BE RECORDED IN ORDER.**

**ASSIGNMENT to be recorded: WELLS FARGO BANK, N.A. to JPMORGAN CHASE BANK, NATIONAL ASSOCIATION**

**ASSIGNMENT to be recorded: JPMORGAN CHASE BANK, NATIONAL ASSOCIATION to FEDERAL NATIONAL MORTGAGE ASSOCIATION**

This assignment is not subject to the requirements of section two hundred seventy-five of the Real Property Law because it is an assignment within the secondary mortgage market.

---

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on 10/7/2015_____.

Assignor:
**WELLS FARGO BANK, N.A.**

By: _____
Kaying Vang

Its: **Vice President Loan Documentation**

## ACKNOWLEDGMENT

State of ~~Louisiana~~ Minnesota                §
                                                                         §
~~Parish of Ouachita~~ County of Dakota        §

On the 7th day of October_____ in the year 2015 before me, the undersigned, personally appeared __Kaying Vang_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_Elizabeth Peterson_____
Signature of Individual Taking Acknowledgment

**Elizabeth Britt Peterson**

Printed Name

Notary Public_____
Office of Individual Taking Acknowledgment

(Seal)

My Commission Expires: 01/31/18

ELIZABETH BRITT PETERSON
NOTARY PUBLIC - MINNESOTA
My Commission Expires
January 31, 2018

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2015122300774002001E0793

| **RECORDING AND ENDORSEMENT COVER PAGE** | | **PAGE 1 OF 3** |
|---|---|---|
| Document ID: **2015122300774002** | Document Date: 10-09-2015 | Preparation Date: 12-23-2015 |
| Document Type:  ASSIGNMENT, MORTGAGE | | |
| Document Page Count: 2 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| PEIRSON PATTERSON, LLP<br>4400 ALPHA RD<br>DALLAS, TX 75244<br>SUPPORT@SIMPLIFILE.COM | PEIRSONPATTERSON, LLP<br>13750 OMEGA ROAD<br>DALLAS, TX 75244<br>SUPPORT@SIMPLIFILE.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 11244 | 31 | Entire Lot | 225-33 113th  DRIVE |
| **Property Type:** | DWELLING ONLY - 1 FAMILY | | | |

### CROSS REFERENCE DATA

QUEENS          **Year:**  1992    **Reel:**  3377    **Page:**  1148

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| JPMORGAN CHASE BANK NATIONAL ASSOCIATION<br>700 KANSAS LANE MC 8000<br>MONROE, LA 71203 | FEDERAL NATIONAL MORTGAGE ASSOCIATION<br>14221 DALLAS PARKWAY, SUITE 100<br>DALLAS, TX 75254 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 47.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed          12-30-2015 11:47
City Register File No.(CRFN):
                          **2015000461697**

*City Register Official Signature*

After recording please mail to:
**PEIRSONPATTERSON, LLP**
**ATTN: RECORDING DEPT.**
**13750 OMEGA ROAD**
**DALLAS, TX 75244-4505**

―――――――――――――*[Space Above This Line For Recording Data]*―――――――――――――

# NEW YORK ASSIGNMENT OF MORTGAGE

For Value Received, **JPMorgan Chase Bank, National Association**, the undersigned holder of a Mortgage (herein "Assignor"), whose address is **700 KANSAS LANE, MC 8000, MONROE, LA  71203** does hereby grant, sell, assign, transfer and convey, unto **FEDERAL NATIONAL MORTGAGE ASSOCIATION**, (herein "Assignee"), whose address is **14221 DALLAS PARKWAY, SUITE 1000, DALLAS, TX  75254**, all beneficial interest under a certain Mortgage dated **July 21, 1992** and recorded on **August 17, 1992**, made and executed by **MILDRED RODGERS**, to and in favor of **MIDCOAST MORTGAGE CORPORATION**, upon the following described property situated in **QUEENS** County, State of New York:
Property Address: **225-33 113TH DRIVE, QUEENS VILLAGE, NY 11429**

**BOROUGH: QUEENS  BLOCK: 11244  LOT: 31**

such Mortgage having been given to secure payment of **Sixty Five Thousand  and 00/100ths ($65,000.00)**, which Mortgage is of record in Book, Volume or Liber No. **3377**, at Page **1148** (or as No. **N/A**), in the Office of the County Clerk or Register of **QUEENS** County, State of New York. .

**CHAIN OF TITLE:**

**ASSIGNMENT: MIDCOAST MORTGAGE CORPORATION, A NEW YORK CORPORATION to PNC BANK, NATIONAL ASSOCIATION, A NATIONAL BANKING ASSOCIATION DATED 04/01/1996 RECORDED 07/12/1996 REEL 4377 PAGE 2224**

**ASSIGNMENT: PNC BANK, N.A. to WELLS FARGO BANK, N.A. DATED 02/28/2007 RECORDED 05/03/2007 CRFN 2007000231269**

**TWO ASSIGNMENTS BEING SUBMITTED SIMULTANEOUSLY TO BE RECORDED IN ORDER.**

**ASSIGNMENT to be recorded: WELLS FARGO BANK, N.A. to JPMORGAN CHASE BANK, NATIONAL ASSOCIATION**

**ASSIGNMENT to be recorded: JPMORGAN CHASE BANK, NATIONAL ASSOCIATION to FEDERAL NATIONAL MORTGAGE ASSOCIATION**

This assignment is not subject to the requirements of section two hundred seventy-five of the Real Property Law because it is an assignment within the secondary mortgage market.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on *October 09, 2015* .

Assignor:
**JPMorgan Chase Bank, National Association**

By: *Melinda J. Craft*
Melinda J. Craft

Its: **Vice President**

**ACKNOWLEDGMENT**

State of **Louisiana**                  §
                                        §
Parish of **Ouachita**                  §

On the *9th* day of *October* in the year *2015* before me, the undersigned, personally appeared _____ Melinda J. Craft _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Signature of Individual Taking Acknowledgment

KATRINA MARIE JOHNSON   *-68375*
Printed Name

*Notary*
Office of Individual Taking Acknowledgment

(Seal)                           My Commission Expires: *lifetime*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2015122300774002001E0793

| **RECORDING AND ENDORSEMENT COVER PAGE** | | **PAGE 1 OF 3** |
|---|---|---|
| Document ID: **2015122300774002** | Document Date: 10-09-2015 | Preparation Date: 12-23-2015 |
| Document Type: ASSIGNMENT, MORTGAGE | | |
| Document Page Count: 2 | | |

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| PEIRSON PATTERSON, LLP<br>4400 ALPHA RD<br>DALLAS, TX 75244<br>SUPPORT@SIMPLIFILE.COM | PEIRSONPATTERSON, LLP<br>13750 OMEGA ROAD<br>DALLAS, TX 75244<br>SUPPORT@SIMPLIFILE.COM |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 11244 | 31 | Entire Lot | 225-33 113th DRIVE |
| Property Type: DWELLING ONLY - 1 FAMILY | | | | |

**CROSS REFERENCE DATA**

QUEENS      **Year:** 1992   **Reel:** 3377   **Page:** 1148

**PARTIES**

| **ASSIGNOR/OLD LENDER:** | **ASSIGNEE/NEW LENDER:** |
|---|---|
| JPMORGAN CHASE BANK NATIONAL ASSOCIATION<br>700 KANSAS LANE MC 8000<br>MONROE, LA 71203 | FEDERAL NATIONAL MORTGAGE ASSOCIATION<br>14221 DALLAS PARKWAY, SUITE 100<br>DALLAS, TX 75254 |

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| MTA: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| Additional MRT: | $ | 0.00 | Recorded/Filed      12-30-2015 11:47 | | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | | |
| Recording Fee: | $ | 47.00 | **2015000461697** | | |
| Affidavit Fee: | $ | 0.00 | | | |

*Annetta M. Hill*

***City Register Official Signature***

After recording please mail to:
PEIRSONPATTERSON, LLP
ATTN: RECORDING DEPT.
13750 OMEGA ROAD
DALLAS, TX 75244-4505

————————————————*[Space Above This Line For Recording Data]*————————— ▮▮▮▮▮

# NEW YORK ASSIGNMENT OF MORTGAGE

For Value Received, **JPMorgan Chase Bank, National Association**, the undersigned holder of a Mortgage (herein "Assignor"), whose address is **700 KANSAS LANE, MC 8000, MONROE, LA 71203** does hereby grant, sell, assign, transfer and convey, unto **FEDERAL NATIONAL MORTGAGE ASSOCIATION**, (herein "Assignee"), whose address is **14221 DALLAS PARKWAY, SUITE 1000, DALLAS, TX 75254**, all beneficial interest under a certain Mortgage dated **July 21, 1992** and recorded on **August 17, 1992**, made and executed by **MILDRED RODGERS**, to and in favor of **MIDCOAST MORTGAGE CORPORATION**, upon the following described property situated in **QUEENS** County, State of New York:
Property Address: **225-33 113TH DRIVE, QUEENS VILLAGE, NY 11429**

**BOROUGH: QUEENS  BLOCK: 11244  LOT: 31**

such Mortgage having been given to secure payment of **Sixty Five Thousand  and 00/100ths ($65,000.00)**, which Mortgage is of record in Book, Volume or Liber No. **3377**, at Page **1148** (or as No. **N/A**), in the Office of the County Clerk or Register of **QUEENS** County, State of New York. .

**CHAIN OF TITLE:**

**ASSIGNMENT: MIDCOAST MORTGAGE CORPORATION, A NEW YORK CORPORATION to PNC BANK, NATIONAL ASSOCIATION, A NATIONAL BANKING ASSOCIATION DATED 04/01/1996 RECORDED 07/12/1996 REEL 4377 PAGE 2224**

**ASSIGNMENT: PNC BANK, N.A. to WELLS FARGO BANK, N.A. DATED 02/28/2007 RECORDED 05/03/2007 CRFN 2007000231269**

**TWO ASSIGNMENTS BEING SUBMITTED SIMULTANEOUSLY TO BE RECORDED IN ORDER.**

**ASSIGNMENT to be recorded: WELLS FARGO BANK, N.A. to JPMORGAN CHASE BANK, NATIONAL ASSOCIATION**

**ASSIGNMENT to be recorded: JPMORGAN CHASE BANK, NATIONAL ASSOCIATION to FEDERAL NATIONAL MORTGAGE ASSOCIATION**

This assignment is not subject to the requirements of section two hundred seventy-five of the Real Property Law because it is an assignment within the secondary mortgage market.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on *October 09, 2015* .

Assignor:
**JPMorgan Chase Bank, National Association**

By: *Melinda J. Craft*
Melinda J. Craft

Its:    **Vice President**

**ACKNOWLEDGMENT**

State of **Louisiana**                    §
                                          §
Parish of **Ouachita**                    §

On the *9th* day of *October* in the year *2015* before me, the undersigned, personally appeared *Melinda J. Craft* , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Signature of Individual Taking Acknowledgment

KATRINA MARIE JOHNSON  -68375
Printed Name

*Notary*
Office of Individual Taking Acknowledgment

(Seal)

My Commission Expires: *Lifetime*



| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
| --- | --- |
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | |

2020110900626001001E9783

## RECORDING AND ENDORSEMENT COVER PAGE     PAGE 1 OF 3

| Document ID: 2020110900626001 | Document Date: 11-09-2020 | Preparation Date: 11-09-2020 |
| --- | --- | --- |
| Document Type: ASSIGNMENT, MORTGAGE | | |
| Document Page Count: 1 | | |

| PRESENTER: | RETURN TO: |
| --- | --- |
| LRCOVERSHEETS<br>4000 HORIZON WAY<br>IRVING, TX 75063<br>469-549-3278<br>LR.COVERSHEETS@MRCOOPER.COM | NATIONSTAR MORTGAGE DBA MR COOPER<br>8950 CYPRESS WATERS BLVD<br>COPPELL, TX 75019 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
| --- | --- | --- | --- | --- |
| QUEENS | 11244 | 31 | Entire Lot | 225-33 113TH DRIVE |

Property Type: DWELLING ONLY - 2 FAMILY

### CROSS REFERENCE DATA

QUEENS     **Year:** 1992   **Reel:** 3377   **Page:** 1148
☒ Additional Cross References on Continuation Page

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
| --- | --- |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION<br>8950 CYPRESS WATERS BLVD<br>COPPELL, TX 75019 | NATIONSTAR MORTGAGE LLC<br>8950 CYPRESS WATERS BLVD<br>COPPELL, TX 75019 |

☒ Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
| --- | --- | --- | --- | --- |
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 42.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2020110900626001001C9503

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 3 |
|---|---|

**Document ID:** 2020110900626001       Document Date: 11-09-2020
Document Type: ASSIGNMENT, MORTGAGE       Preparation Date: 11-09-2020

---

**CROSS REFERENCE DATA**
QUEENS **Year:** 1996     **Reel:** 4377    **Page:** 2224
**CRFN:** 2007000231269
**CRFN:** 2015000461696
**CRFN:** 2015000461697

---

**PARTIES**

**ASSIGNOR/OLD LENDER:**
NATIONSTAR MORTGAGE LLC
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

---

**PARTIES**

**ASSIGNEE/NEW LENDER:**
MR COOPER
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

Recording Requested By:
NATIONSTAR MORTGAGE DBA MR. COOPER

When Recorded Return To:

DOCUMENT ADMINISTRATION
NATIONSTAR MORTGAGE DBA MR. COOPER
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

Queens, New York

## CORPORATE ASSIGNMENT OF MORTGAGE

SELLER'S SERVICING #▮▮▮▮▮▮▮▮▮▮

Date of Assignment: November 9th, 2020
Assignor: FEDERAL NATIONAL MORTGAGE ASSOCIATION, BY NATIONSTAR MORTGAGE LLC, ITS
ATTORNEY-IN-FACT at 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019
Assignee: NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER at 8950 CYPRESS WATERS BLVD, COPPELL,
TX 75019
Executed By: MILDRED RODGERS  To: MIDCOAST MORTGAGE CORPORATION F/K/A MIDLANTIC HOME
MORTGAGE CORPORATION F/K/A COLONIAL MORTGAGEE CORPORATION
Date of Mortgage: 07/21/1992 Recorded:  08/17/1992  in Book/Reel/Liber: 3377 Page/Folio: 1148  In the County of
Queens, State of New York.

-Assigned Wholly by MIDCOAST MORTGAGE CORPORATION, A NEW YORK CORPORATION TO PNC BANK,
NATIONAL ASSOCIATION, A NATIONAL BANKING ASSOCIATION Dated: 04/01/1996 Recorded:  07/12/1996  in
Book/Reel/Liber: 4377 Page/Folio: 2224
-Assigned Wholly by PNC BANK, N.A. TO WELLS FARGO BANK N.A. Dated: 02/28/2007 Recorded:  05/03/2007
as Instrument No.: 2007000231269
-Assigned Wholly by WELLS FARGO BANK N.A. TO JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
Dated: 10/07/2015 Recorded:  12/30/2015  as Instrument No.: 2015000461696
-Assigned Wholly by JPMORGAN CHASE BANK, NATIONAL ASSOCIATION TO FEDERAL NATIONAL
MORTGAGE ASSOCIATION Dated: 10/09/2015 Recorded:  12/30/2015  as Instrument No.: 2015000461697

Section/Block/Lot NA/11244/31

Property Address: 225-33 113TH DRIVE, QUEENS VILLAGE, NY 11429
   This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an
assignment within the secondary mortgage market.

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $65,000.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.  IN WITNESS WHEREOF, the assignor has executed these presents the day and
year first above written:

   FEDERAL NATIONAL MORTGAGE ASSOCIATION, BY NATIONSTAR MORTGAGE LLC, ITS
ATTORNEY-IN-FACT
On November 9th, 2020

By:_____
MOHAMED S. HAMEED, Vice-President

STATE OF Texas
COUNTY OF Denton

On the 9th day of November in the year 2020 before me, the undersigned, personally appeared MOHAMED S.
HAMEED, Vice-President, personally known to me or proved to me on the basis of satisfactory evidence to be the
individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such
individual(s) made such appearance before the undersigned in the County of Denton, State of Texas.

WITNESS my hand and official seal,

SYLVIA RAMIREZ
Notary Expires: 03/07/2023 (#)131921660
Denton, Texas

SYLVIA RAMIREZ
Notary Public, State of Texas
Comm. Expires 03-07-2023
Notary ID 131921660

(This area for notarial seal)