**WOMBLE BOND DICKINSON (US) LLP**
811 Main Street, Suite 3130
Houston, Texas 77002
Telephone: (346) 998-7801
Facsimile: (346) 998-5901
Email: todd.atkinson@wbd-us.com
Todd A. Atkinson

*Counsel for NCR Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re                                                          :
                                                               :    **Chapter 11**
**SEARS HOLDINGS CORPORATION,** *et al.*,                      :
                                                               :    **Case No. 18-23538 (RDD)**
Debtors.[1]                                                    :
                                                               :    **(Jointly Administered)**
                                                               :
---------------------------------------------------------------x

## MOTION OF NCR CORPORATION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM

NCR Corporation ("NCR"), by its undersigned counsel, respectfully moves (the "Motion") the Court for allowance and payment of an administrative expense claim (the "Administrative Expense Claim") pursuant to § 503(b) of the United States Bankruptcy Code, 11

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

U.S.C. §§ 101— *et seq.* (the "Bankruptcy Code"). To the extent the Court determines to schedule the Motion for a hearing, NCR requests that the Court enter an Order, substantially in the form attached hereto as **Exhibit A**, granting NCR an administrative claim. In support of the Motion, NCR respectfully states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

2. The statutory predicates for the relief requested in the Motion are §§ 105(a) and 503(a) and (b) of the Bankruptcy Code.

## BACKGROUND

A. **The Debtors' Bankruptcy Cases**

3. On October 15, 2018 (the "Petition Date"), Sears Holding Corporation, together with certain of its affiliated companies (collectively, the "Debtors"), filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. These cases are currently pending in this Court and are being jointly administered for procedural purposes.

4. On October 15, 2019, the Court entered an order [Docket No. 5370] (the "Confirmation Order") confirming the Modified Second Amended Joint Chapter 11 Plan of the Debtors [Docket No. 4476] (the "Plan"). The Confirmation Order approved, among other things, an administrative expense program [Docket No. 5334] (the "Administrative Expense Claims Consent Program"). Under the Administrative Expense Claims Consent Program, each holder of an administrative expense claim could elect one of three options for treatment of its claim: (i) opt-in to the Administrative Expense Claims Consent Program to have the claim treated as an

2

"Opt-In Settled Admin Claim;" (ii) neither opt-in nor opt-out and have the claim treated as a "Non Opt-Out Settled Admin Claim;" or (iii) opt-out and have the claim treated as an "Opt-Out Administrative Expense Claim."

5. NCR chose to have the Administrative Expense Claim treated as an Opt-Out Administrative Expense Claim, pursuant to Voter ID#'s: 715487 and 715488, and E-Ballot ID#'s 182353801040530 and 182353801040531.

**B.   NCR Agreement**

6. On or about July 31, 1998, Sears, Roebuck and Co. ("Sears") and NCR entered into a Master Agreement (as amended, the "Agreement") pursuant to which NCR agreed to provide, among other things, maintenance and other critically necessary services to ensure the proper functioning of Sears' and its affiliated companies' point of sale terminals (the "Services").

7. The Debtors' point-of-sale terminals serviced and repaired by NCR included electronic units, cash drawers, printers, displays, and keyboards. Both prior to and after the Petition Date, NCR serviced the Debtors' hundreds of locations with point-of-sale terminals distributed across forty-nine states, Puerto Rico and Guam.

8. NCR provided the Services to the Debtors, consisting of all parts, labor, and travel expenses, 7 days a week between the hours of 8:00 a.m. and 8:00 p.m. The Debtors' help desk employees directly and explicitly requested the Services from NCR by opening a repair ticket within NCR's secure web-based portal named "MYNCR." The Debtors' help desk employees created work orders by keying in the appropriate information, including the Debtors' site location, unit in need of repair, serial number, and description of the problem. The Debtors' work order automatically created an electronic dispatch to the appropriate NCR field technician

3

and the work order remained open until the problem was resolved by NCR. The Debtors were provided access to update, cancel, or review all of their work orders.

9. To provide the Services for the Debtors after the Petition Date, NCR also maintained a database with the Debtors' site and equipment profile. In addition, as part of the Services, NCR provided the Debtors with a parts plan including all of the parts necessary to execute all of the necessary repairs. Under its logistics network, NCR leveraged its historical usage data to position parts within its central warehouse, over 100 local stocking centers, and within technician repair vehicles. In addition to the parts plan, the Services also included a staffing plan prepared by NCR and the placement of trained technicians throughout the United States to complete the Debtors' requested repairs.

10. As work orders were created by the Debtors during the bankruptcy case, NCR created a dispatch request which assigned a local field technician to the Debtors' work order. The technician then reviewed the request and traveled to the Debtors' location experiencing the problem. As a general matter, the technician met with the Debtors' manager-on-duty, identified the failed unit, provided troubleshooting, identified and retrieved required parts, completed the repair, tested, and verified the unit's operation with the Debtors' store personnel. Upon completion, the Debtors' work order was updated and closed by the NCR technician.

11. Further, to oversee effective service operations, NCR assigned an account support manager, providing the Debtors with a single point-of-contact for all of their service requirements. This manager reviewed daily work order requests, assisted field operations with part and resource assignments, conducted escalations, maintained proper client communications, reviewed invoicing, and provided monthly reporting, among other tasks.

12. After the Petition Date, NCR provided the Services to the Debtors by responding to and satisfying hundreds of the Debtor's separate work order requests as detailed in the worksheet and invoices attached hereto as **Exhibit B**. These requests, worked on and completed by NCR across the entire United States, Puerto Rico and Guam, allowed the Debtors to continue their operations after the Petition Date without disruption in the ordinary course. The attached invoices in the aggregate amount of **$251,250.84** represents the amount due NCR for the Services it performed for the Debtors during the post-petition period. *See* Invoices, attached hereto as **Exhibit B**.

### RELIEF REQUESTED

13. Under the Confirmation Order, all pending and subsequently filed administrative expense requests are adjourned until a date to be determined by the Debtors or the Liquidating Trust, as applicable, and the subject claimant, and any requests seeking allowance of administrative expense claims (already filed or subsequently filed) are to be treated as a "proof of an Administrative Expense Claim." *See* Confirmation Order, ¶ 51. Accordingly, this Motion is filed to provide the Debtors with notice of NCR's Administrative Expense Claim and to preserve such claim so that it may be allowed and paid.

### BASIS FOR RELIEF

14. Section 503(b) of the Bankruptcy Code provides, in pertinent part, that "there shall be allowed[] administrative expenses, . . . including the actual, necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 503(b)(l)(A). The actual, necessary costs and expenses of preserving the estate include claims "aris[ing] from a transaction with the debtor-in-possession [where] the consideration supporting the claimant's right to payment [is] beneficial to the debtor-in-possession in the operation of the business." *Calpine Corp. v. O'Brien*

5

*Envt'l Energy, Inc. (In re O'Brien Envt'l Energy, Inc.)*, 181 F.3d 527, 532-33 (3d Cir. 1999); *In re Babbs*, 265 B.R. 35 (Bank. S.D.N.Y. 2001). A claimant under § 503(b) bears the burden of establishing the requisite transaction with the estate and benefit to the estate by a preponderance of the evidence. *See In re ID Liquidation One, LLC*, 503 B.R. 392, 399 (Bankr. D. Del. 2013).

15. A debtor's acceptance of a non-debtor party's post-petition performance under an executory contract satisfies the transaction-with-the-estate requirement for administrative expense priority. *See, e.g.*, *In re Smurfit-Stone Container Corp.*, 425 B.R. 735, 741 (Bankr. D. Del. 2010) (emphasizing courts in that district "have consistently held that administrative expense priority is available to contract parties when the debtor enjoys the benefits of a contract pending assumption or rejection"); *ID Liquidation One, LLC*, 503 B.R. at 399 (same).

16. The benefit to the estate for services received by a debtor post-petition is measured by the "reasonable value" of the services provided by the non-debtor. *See ID Liquidation One*, 503 B.R. at 399 (citations omitted). Accordingly, "[p]ending assumption or rejection, a debtor must pay the 'reasonable value of the services received.'" *Id.* Where there is a contract, "there is a presumption that the contract terms and rate represent the reasonable value" of the services for purposes of § 503(b)(1). *Id.; see also In re Smurfit-Stone Container Corp.*, 425 B.R. at 741.

17. Here, the Debtors requested the Services from NCR on hundreds of separate occasions. The Services NCR provided to the Debtors post-petition were critical to the Debtors in the conduct of their business, allowing the Debtors to sell their merchandise through the point of sale equipment NCR serviced and repaired. NCR provided the Services to the Debtors pursuant to the terms of the Agreement. During the post-petition period, NCR provided the

Debtors the Services in accordance with the Agreement terms. The reasonable value for the Services equals $251,250.84.

18. Accordingly, the elements for allowance of an administrative expense are satisfied, and the Court should allow the Administrative Expense Claim in the amount of $251,250.84 on account of the Services NCR provided to the Debtors after the Petition Date.

19. The Court should also order payment of the Administrative Expense Claim upon the Effective Date of the Plan. *See* 11 U.S.C. § 1129(a)(9)(A).

20. Pursuant to the Confirmation Order and the Plan, this Motion is to be treated as proof of an administrative expense claim. *See* Confirmation Order, ¶ 51. Further, considering the requirement that all hearings be adjourned until such time as a hearing is required, and scheduled at the convenience of the Debtors or Liquidating Trust, the claimant and the Court, NCR is not requesting that a hearing be conducted on the Motion at this time.

## RESERVATION OF RIGHTS

21. NCR reserves the right to amend this Motion, or any of the claims asserted in the Debtors' cases, for any reason, including, without limitation, to the extent NCR learns: (i) of additional claims that it may have; (ii) that its claims are against a different Debtor entity; or (iii) that the nature of the claims is other than what NCR has already asserted. Nothing herein should be construed as a waiver of any of NCR's rights or defenses, which NCR hereby reserves.

## NOTICE OF NO PRIOR RELIEF REQUESTED

22. Notice of this Motion will be served on the Debtors, Transform Co. and the "Master Service List" (as those terms are defined in the Amended Order Implementing Certain Notice and Case Management Procedures [Docket No. 405]), and in the manner provided therein. NCR respectfully submits that no other or further notice need be provided.

23. Other than as set forth above, no previous application or request was made to this or any other court regarding the relief requested in this Motion.

## CONCLUSION

WHEREFORE, NCR respectfully requests that the Court enter an order, substantially in the form of the proposed order attached as **Exhibit A** hereto, (i) allowing NCR an administrative expense claim pursuant to § 503(b) of the Bankruptcy Code in the aggregate amount of no less than **$251,250.84**; (ii) directing payment of such administrative expense claim upon the effective date of the Debtors' Plan; and (iii) granting such other and further relief as is just and proper.

Dated: December 22, 2020                                   Respectfully submitted,

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Todd A. Atkinson*
Todd A. Atkinson (NY Bar No. 4970828)
811 Main Street, Suite 3130
Houston, Texas 77002
Telephone: (346) 998-7801
Facsimile:  (346) 998-5901
Email:      todd.atkinson@wbd-us.com

*Counsel for NCR Corporation*