| | |
|---|---|
| DAVIDOFF HUTCHER & CITRON LLP<br>605 Third Avenue<br>New York, New York 10158<br>(212) 557-7200<br>David H. Wander, Esq. (dhw@dhclegal.com)<br>Alexander R. Tiktin, Esq. (art@dhclegal.com)<br><br>*Attorneys for Pearl Global Industries Ltd.* | **Hearing Date and Time:**<br>January 21, 2021 at 10:00 a.m. |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDING CORPORATION, *et al.*, | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |

---------------------------------------------------------X

**REPLY BY PEARL GLOBAL INDUSTRIES LTD. IN SUPPORT OF APPLICATION FOR ALLOWANCE AND PAYMENT OF REASONABLE COMPENSATION, PURSUANT TO BANKRUPTCY CODE §§ 503(b)(3)(D) AND 503(b)(4), FOR MAKING A "SUBSTANTIAL CONTRIBUTION" IN THESE CASES**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Pearl Global Industries, Ltd. ("Pearl"), by its attorneys, Davidoff Hutcher & Citron LLP ("DHC"), submits this reply to the Debtors' objection dated January 14, 2021 ("Debtors Obj") [Doc 9233], the Creditors' Committee's joinder dated January 14, 2021 ("Committee Obj") [Doc. 9234], and the Administrative Expense Claims Representative's joinder dated January 14, 2021 ("Admin Rep. Obj") [Doc. 9235], and in further support of Pearl's application, pursuant §§ 503(b)(3)(D) and 503(b)(4) of Bankruptcy Code, for an order awarding and directing payment of reasonable compensation, as an administrative expense, based upon a "substantial contribution" by Pearl Global in these cases, and represents and says:

1

## PRELIMINARY STATEMENT

1. One issue raised by the Debtors and the creditor's committee in their objections to Pearl's Application is whether the $1,000,000 contribution by the professionals to the initial distribution fund for allowed administrative claimants, increasing it by 5% from $20,000,000 to $21,000,000, is a "*di minimis*" or "minimal" amount. Pearl submits that these million dollars represent a substantial contribution from the administrative creditors' perspective.

2. Another issue in dispute is whether Peal acted "purely" for its own benefit, as the objectors contend, or whether Pearl acted for the benefit of others and not just in its own self-interest. Pearl submits that the record is very clear in establishing Pearl's altruistic efforts in extracting a one million-dollar payment for the benefit of all allowed administrative claimants when Pearl settled its claims with the Debtors.

3. There also is the issue of reasonableness as to Pearl's request for $217,000 in fees and expenses. Pearl submits that these fees are reasonable, after consideration of the $1,000,000 contribution to the administrative creditor fund, as well as the billing rates of Pearl's counsel.

4. In sum, Pearl's opposition to the Plan brought about the confirmation of a more favorable plan and, for that, Pearl is entitled to a "substantial contribution" award under § 503(b). Of course, the Debtors, the Committee and other invested in the confirmed plan will argue that the improvements to the Plan – after Pearl cross-examined the Debtors' witnesses and argued vigorously at the confirmation hearing that the Plan was not feasible and would not become effective for an extended period – would have occurred anyway. A careful review of the transcripts of the confirmation hearing shows otherwise. Two attorneys stood up at the confirmation hearing for all administrative creditors and one of them was Pearl's counsel.[1]

---

[1] The other attorney, Joseph Sarachek, Esq., continued to argue for other administrative creditors, particularly the foreign vendors, on the second day of the confirmation hearing after the Pearl settlement was read into the record. TR2 156:11-158:10.

## THE OBJECTIONS

5.  The Debtors misconstrue the "theory" underlying Pearl's substantial contribution application:

> Pearl's Application rests on the theory that Pearl provided a substantial contribution with respect to the administrative claims Settlement Program approved in connection with confirmation of the Plan and Pearl's representation of numerous administrative creditors. This theory is incorrect. Pearl cannot claim any credit for the Settlement Program.

*See* Debtor's Objection, ¶¶ 2-5. Pearl Global does not claim any credit for the Settlement Program. The Debtor knows that and there is nothing in Pearl's application that argues otherwise. Everyone involved in the confirmation process knows that credit for the Settlement Program goes to Whitebox Asymmetic Partners, LP, Whitebox Multi-Strategy Partners, LP, Hain Capital Investors Master Fund, Ltd., and Cherokee Debt Acquisition, LLC and their counsel, Foley & Lardner LLP. *See Admin Rep. Obj,* ¶ 6. The Settlement Program was "the result of hard-fought negotiations between the Foley Group, the Debtors and the Creditors Committee. *Id.* That said, what was good for the Foley Group was not necessarily good for other administrative creditors, especially foreign vendors who held administrative claims under §§ 503(b)(1) and (9), and so Pearl opposed Settlement Program and everyone knows that.[2]

6.  The Debtors also mistakenly state that "Pearl was acting <u>solely</u> for its own interest and not for the benefit of all administrative creditors" by objecting to the Settlement Program. Debtors Obj, ¶ 2 (emphasis added). The record clearly shows otherwise.

7.  The Debtors' contention that "Pearl's determination to settle its Plan Objection in exchange for the allowance of its administrative expense claim, a waiver of potential preference

---

[2] What was good for the Foley Group, however, was not necessarily good for other administrative creditors, especially the Debtor's foreign vendors who held administrative claims under §§ 503(b)(1) and (9). Among other things, the Settlement Agreement left unresolved the *World Imports* issue to the detriment of many administrative creditors who then faced the Hobbesian choice of accepting an excessive discount on their allowed claims or missing out on either the initial distribution or the second distribution. With the Settlement Program procedures giving the Debtors the unilateral right to control the process, it became a take it or leave it proposition.

claims against Pearl <u>and a de minimis $1 million contribution from the professional fee escrow</u>, which the Court ultimately required on its own," demonstrates how Pearl was acting solely for its own interest, *Id.* (emphasis added), makes no sense.

8.  That said, putting aside the Debtors' comment that "the Court ultimately required on its own" the one-million-dollar contribution (which is unsupported by the record), the Debtors raise an interesting question: is the one-million-dollar contribution a *di minimis* amount in the context of the payments to administrative creditors in this case?

9.  For the retained professionals in this case, who have received several hundred million dollars in fees, their one-million-dollar contribution may be *di minimis*,[3] because it represents less than one-half of one percent (00.05%) of the fees and expenses they have been paid to date. But to the administrative creditors who have received only 28.3% on their allowed claims, the additional one million dollars is not *di minimis*. It is substantial. Wander Dec., ¶ 16.

10. The Debtors' contention that "[f]ollowing the meetings that Pearl attended, Pearl was purely focused on its individual recovery, not on a global resolution for administrative expense creditors generally," is without support and, moreover, is undercut by a review of the entire transcript of the first day of the confirmation hearings, and not the snippets from the beginning of the hearing that the Debtors take out of context. *See* Debtors Obj, ¶ 5. While Pearl's counsel tried to explain to the Court why the settlement construct was unfair to most of the administrative creditors, Pearl's counsel simply used Pearl's administrative claim as an example. TR1 at 38:25-39:1 (Here – let me explain, Your Honor. So – and I'll focus on Pearl Global."). And before that, when Pearl's counsel's appearance was first made on the record, Pearl's counsel discussed its ad hoc group and not just Pearl or the other two administrative creditors represented by DHC, stating: "… most of the

---

[3] The Creditors Committee characterizes the $1 million contribution as a "minimal increase." Creditors Committee Obj, ¶ 2.

4

administrative creditors have not been parties to the negotiations. And the settlement adversely affects them." TR1 at 36:10-12.

11. Even more telling of the fact that Pearl was not purely focused on its own recovery was the colloquy between Pearl's counsel and the Court regarding the automatic opt-in contained in the initial version of the Settlement Program:

> MR. WANDER: … And I would say if there's one thing I would request that Your Honor change, is not to have the automatic opt in. It's patently unfair to foreign vendors. You have people in Asia [and] other places who are the main suppliers. They don't have lawyers. They're not going to understand what the notice is.
>
> \*             \*             \*
>
> THE COURT: All right. Although you're doing that for someone other than your client, right? Because your client knows how to read and they've hired you, so that's really just –
>
> MR. WANDER: Correct. I'm saying –
>
> THE COURT: Okay.
>
> MR. WANDER: -- they're a lot – I'm saying based upon my discussions with a lot of –
>
> THE COURT: You know, let's – I don't need to hear from you on this point. You don't have standing on that point. You're pleading the cause of someone that you don't represent.
>
> MR. WANDER: Who doesn't have a lawyer, who –
>
> THE COURT: Fine. I get that. I've already taken that into account. But you don't have standing on it.

TR1 at 243:12-244:23.

12. The Debtors go on to question the reasonableness of the fees requested by Pearl, *see Debtor's Obj,* ¶ 7 but, clearly, that argument is without merit. First, the return on investment for the administrative creditors on Pearl's fee request is excellent: $217,000 in fees for a $1,000,000 payment. And that does not even take into consideration the additional $9,000,000 carved out from

5

the hold-back account. Moreover, with professional fees estimated to be in excess of $250,000,000, Pearl's fee request is less than 1/10th of 1% of those fees.

13. Notably, the Bankruptcy Code does not provide for a fiduciary to protect the interests of administrative creditors in an administratively insolvent chapter 11 case. Sometimes creditors and their counsel must play a "leadership role" when circumstances require them to " "perform[] functions that normally would have been undertaken by estate-compensated professionals, or that had to be performed because estate-compensated were not doing their job." *In re Bayou Group LLC*, 431 B.R 549, 563 (Bankr. S.D.N.Y. 2010).

14. Working "amicably" with Debtors' counsel, *see* Debtor's Obj, at ¶ 8, is not the litmus test for a substantial contribution. Nor can a substantial contribution be established merely by "extensive participation in the case." *In re Bayou Group LLC*, 431 B.R. at 561. Rather, a direct benefit that is "a substantial net benefit" must be established. *Id.* Here, there should be no doubt that Pearl provided a substantial net benefit by virtue of the one-million-dollar contribution to the initial distribution fund.

15. The continued confirmation hearing began with Debtors' counsel announcing the settlement of Pearl's plan objections and stating the terms on record. TR2 10:12-16. First, Pearl would receive an allowed, administrative claim of $1,130,000, *Id.* at 10:17-21, and, second, the estate would waive any potential preference claims against Pearl. *Id.* at 10:22-23. The third part of the settlement was:

> [a]n additional $1 million…will be contributed from the carveout to the estate for distribution in the initial distribution. So… under the consent program we had the initial distribution of $20 million, so now that will be $21 million and it will include this additional increment of $1 million from the carveout.

*Id.* at 10:23-11:4. Clearly, Pearl's settlement terms "le[d] directly to tangible benefits" for the administrative creditors. *See in re Best Prods. Co., Inc.* 173 B.R. 862, 866 (Bankr. S.D.N.Y. 1994); *In re Granite Partners, LP*, 213 B.R. 440, 447 (Bankr. S.D.N.Y. 1997) (observing that an

6

application under section 503(b) "must show a 'causal connection' between the service and the contribution") (citations omitted).

16. In addition to downplaying the $1 million payment by the professionals, characterizing it as "minimal," the Creditors Committee contends, without any support in the record, that the additional one million dollars would have been paid without Pearl's actions:

> [T]his minimal increase was nothing more than a timing tweak, as the $1 million otherwise would have been part of the second distribution to the same group of administrative creditors that took place eight months after the initial distribution. Whatever role Pearl or its counsel may have played in securing that change to the Plan, it did not create any new value for the estates or increase the ultimate recoveries of creditors.

Creditors Committee Objection, ¶ 2. A review of the transcripts of the confirmation hearing shows this not to be the case. The $1 million contribution by the professionals was a direct result of the Pearl settlement.

## **CONCLUSION**

17. This is the rare case where a creditor voluntarily plays a leadership role and the creditor's counsel represents more than its clients' interests and, together, they directly contribute to the estates' administration. Accordingly, Pearl's application for allowance and payment of reasonable compensation, pursuant to §§ 503(b)(3)(D) and (b)(4), based upon a substantial contribution should be granted in the amount of $217,263.

Dated: New York, New York
January 20, 2021

DAVIDOFF HUTCHER & CITRON LLP

By: /s/ David H. Wander
    David H. Wander, Esq.
    Alexander R. Tiktin, Esq.
605 Third Avenue
New York, New York 10158
(212) 557-7200
dhw@dhclegal.com
art@dhclegal.com

*Attorneys for Pearl Global Industries Ltd.*