DAVIDOFF HUTCHER & CITRON LLP
605 Third Avenue
New York, New York 10158
(212) 557-7200
David H. Wander, Esq. (dhw@dhclegal.com)
Alexander R. Tiktin, Esq. (art@dhclegal.com)
*Attorneys for Pearl Global Industries Ltd.*

**Hearing Date and Time:**
January 21, 2021 at 10:00 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDING CORPORATION, *et al.*, | Case No. 18-23538 (RDD) |
| Debtor. | (Jointly Administered) |

------------------------------------------------------------- X

**REPLY DECLARATION BY DAVID H. WANDER, ESQ. IN
SUPPORT OF APPLICATION BY PEARL GLOBAL INDUSTRIES
LTD. FOR ALLOWANCE AND PAYMENT OF REASONABLE
COMPENSATION, PURSUANT TO §§ 503(b)(3)(D) AND 503(b)(4)
OF THE BANKRUPTCY CODE, FOR MAKING A
"SUBSTANTIAL CONTRIBUTION" IN THESE CASES**

DAVID H. WANDER, declares under 28 U.S.C. § 1746:

1.     I am a partner with Davidoff Hutcher & Citron LLP ("DHC") and am admitted to practice before this Court. I submit this reply declaration to the Debtors' objection dated January 14, 2021 ("Debtors Obj") [Doc. 9233], the Creditors' Committee's joinder dated January 14, 2021 ("Committee Obj") [Doc. 9234], and the Administrative Expense Claims Representative's joinder dated January 14, 2021 ("Admin Rep. Obj") [Doc. 9235], and in further support of the application by Pearl Global Industries, Ltd. ("Pearl") for allowance and payment of reasonable compensation, pursuant to §§ 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code, for making a "substantial contribution" in these cases.

2. I submitted a prior declaration dated December 1, 2020 ("Wander Dec.") [Doc. 9131] in support of Pearl's application.

3. It is undisputed that, in early May of 2019, I formed an ad hoc group of administrative creditors; at that time, the Debtors had stopped paying many administrative creditors and the administrative solvency of this estate was in question; Debtors had filed a proposed disclosure statement for a plan of reorganization that was opposed by the official committee of unsecured creditors ("UCC"); Pearl Global was seeking payment of its administrative claims under §§ 503(b)(1) and (9); and the "World Imports" issue was looming over these cases as one of the key issues to determine the Debtors' administrative solvency. *See* Wander Dec., ¶ 5.

4. It is undisputed that I discussed the formation of an ad hoc group of unpaid administrative creditors with several attorneys representing foreign vendors with administrative claims. Wander Dec., ¶ 6.

5. It is undisputed that, during the next two weeks, I had many discussions with various attorneys representing foreign vendors. Wander Dec., ¶ 7.

6. It is undisputed that, in or about the third week of May of 2019, I contacted Debtors' counsel without success, and then contacted the UCC's counsel and we discussed the treatment of administrative creditors under a plan that would be proposed by the UCC. Wander Dec, ¶ 8.

7. It is undisputed that I received a proposed Term Sheet from UCC's counsel, discussed it with the UCC's counsel, and gave comments. Wander Dec, ¶ 9.

8. It is undisputed that, on May 29, 2019, I attended a chambers conference, along with attorneys for the Debtors and the UCC, and the Court was advised of my efforts on behalf of the ad hoc group, in addition to my representation of Pearl. Wander Dec, ¶ 10.

9. It is undisputed that, by June of 2019, there were approximately thirty-five (35) creditors in our ad hoc group. Wander Dec, ¶ 11.

10. It is undisputed that, in mid-July, I communicated with two attorneys at Foley & Lardner LLP ("Foley"), Erika Morabito, Esq. and Paul Labov, Esq., who had formed their own ad hoc group of administrative creditors, which was much smaller in number, consisting of a few claims traders, but was larger in total amount of claims, and we agreed to coordinate our efforts. Wander Dec, ¶ 12.

11. It is undisputed that, towards the end of July, Foley and I met with the Debtors and Creditors Committee to discuss administrative claim issues and that these discussions continued into August. Wander Dec, ¶¶ 13-15.

12. It is undisputed that Debtors' counsel circulated a proposed NDA to me and to Foley in early September; that there were extensive negotiations over the language before it was signed by us; and Debtors counsel thereafter sent us confidential information relating to the Debtors' assets and liabilities. Wander Dec, ¶ 16.

13. It is undisputed that, on September 9, Foley and I attended a settlement meeting with attorneys and other representatives for the Debtors and UCC; that we discussed the Debtors proposed treatment of administrative creditors under their plan; and, thereafter, I worked with Foley on a counterproposal. Wander Dec, ¶ 17.

14. It is undisputed that, on September 12, I attended a chambers conference relating to the upcoming confirmation hearing. Wander Dec, ¶ 18.

15. It is undisputed that, on September 16, I attended Foley's depositions of Debtors' confirmation witnesses; that I also reviewed a settlement construct by Foley and a revised

settlement proposal by the Debtors. During the next week, I communicated with Foley to prepare for the confirmation hearing and to discuss settlement negotiations. Wander Dec, ¶ 19.

16. After extensive settlement discussions with the Debtors attorneys and others, after the October 3 hearing, we reached an agreement that provided for an allowed claim of Pearl Global and, in addition, a $1 million contribution by professionals to the $20 million fund for the initial distribution to opt-in creditors, increasing the distribution to $21 million. For the retained professionals in this case, who have received several hundred million dollars in fees, their one-million-dollar contribution may be *de minimis*,[1] because it represents less than one-half of one percent (00.05%) of the fees and expenses they have been paid to date. But to the administrative creditors who have received only 28.3% on their allowed claims, the additional one million dollars is not *di minimis*. It is substantial.

17. It is undisputed that Foley began negotiating separately with the Debtors and that, on October 2, the day before the confirmation hearing, I was informed that Foley reached an agreement with the Debtors. Wander Dec, ¶ 20.

18. Pearl Global does not claim any credit for the Settlement Program. The Debtor knows that and there is nothing in Pearl's application that argues otherwise. Everyone involved in the confirmation process knows that credit for the Settlement Program goes to Whitebox Asymmetic Partners, LP, Whitebox Multi-Strategy Partners, LP, Hain Capital Investors Master Fund, Ltd., and Cherokee Debt Acquisition, LLC and their counsel, Foley & Lardner LLP. The Settlement Program was the result of hard-fought negotiations between the Foley Group, the Debtors and the Creditors Committee. That said, what was good for the Foley Group was not

---

[1] The Creditors Committee characterizes the $1 million contribution as a "minimal increase." Creditors Committee Obj, ¶ 2.

necessarily good for other administrative creditors, especially foreign vendors who held administrative claims under §§ 503(b)(1) and (9), and so Pearl opposed it and everyone knows that.

19. I was dissatisfied with the Settlement Program because it appeared to be yet another cudgel for the Debtors to use to beat upon the foreign vendors. The Debtors strategy, which was endorsed by the Creditors Committee, was to try and bridge the gap to administrative solvency by eliminating, or at least decreasing, foreign vendor claims as much as possible. Most significantly, the Settlement Program did not resolve the World Imports issue. It also gave the Debtors unilateral control over the dispute resolution process. Many, if not most, of the creditors ended up with a poor set of options, forced to accept large cuts to their allowed claims in order to share in the initial distribution of 28.3% or the second distribution.

20. The Debtors' contention that [f]ollowing the meetings that Pearl attended, Pearl was purely focused on its individual recovery, not on a global resolution for administrative expense creditors generally," is without support and, moreover, is undercut by a review of the entire transcript of the first day of the confirmation hearings, and not the snippets from the beginning of the hearing that the Debtors recite, out of context. *See* Debtors Obj, ¶ 5. While Pearl's counsel tried to explain to the Court why the settlement construct was unfair to most of the administrative creditors, Pearl's counsel simply used Pearl's administrative claim as an example. TR1 at 38:25-39:1 (Here – let me explain, Your Honor. So – and I'll focus on Pearl Global."). And before that, when Pearl's counsel's appearance was first made on the record, Pearl's counsel discussed its ad hoc group, and not just Pearl or the other two administrative creditors represented by DHC, stating: "… most of the administrative creditors have not been parties to the negotiations. And the settlement adversely affects them." TR1 at 36:10-12.

21. Even more telling of the fact that Pearl was not purely focused on its own recovery, is the colloquy between Pearl's counsel and the Court regarding the automatic opt-in contained in the initial version of the Settlement Program:

> MR. WANDER: ⋯ And I would say if there's one thing I would request that Your Honor change, is not to have the automatic opt in. It's patently unfair to foreign vendors. You have people in Asia [and] other places who are the main suppliers. They don't have lawyers. They're not going to understand what the notice is.
>
> \*              \*              \*
>
> THE COURT: All right. Although you're doing that for someone other than your client, right? Because your client knows how to read and they've hired you, so that's really just –
>
> MR. WANDER: Correct. I'm saying –
>
> THE COURT: Okay.
>
> MR. WANDER: -- they're a lot – I'm saying based upon my discussions with a lot of –
>
> THE COURT: You know, let's – I don't need to hear from you on this point. You don't have standing on that point. You're pleading the cause of someone that you don't represent.
>
> MR. WANDER: Who doesn't have a lawyer, who –
>
> THE COURT: Fine. I get that. I've already taken that into account. But you don't have standing on it.

TR1 at 243:12-244:23.

22. The Debtors also question the reasonableness of the fees requested by Pearl, *see* Debtor's Obj, ¶ 7, but, clearly, that argument is without merit. First, the return on investment for the administrative creditors on Pearl's fee request is excellent: $217,000 in fees for a $1,000,000 payment. And that does not even take into consideration the additional $9,000,000 carved out from

the hold-back account. Moreover, with professional fees estimated to be in excess of $250,000,000, Pearl's fee request is less than $1/10^{th}$ of 1% of those fees.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this January 20, 2021.

/s/ David H. Wander<br>David H. Wander