Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 18-23538-rdd

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   SEARS HOLDINGS CORPORATION, et al.,

8

9            Debtor.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12

13                   United States Bankruptcy Court

14                   300 Quarropas Street, Room 248

15                   White Plains, NY 10601

16

17                   January 21, 2021

18                   10:09 AM

19

20

21  B E F O R E :

22  HON ROBERT D. DRAIN

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  JUSTIN WALKER

Page 2

1    HEARING re Notice of Agenda of Matters Scheduled for

2    Telephonic Hearing on January 21, 2021 at 10:00 a.m.

3

4    Case Status Conference

5

6    Motion to Shorten Time (related document(s) 9130, 9131)

7    filed by David H. Wander on behalf of Pearl Global

8    Industries, Ltd. (ECF #9132)

9

10   Motion for Payment of Administrative Expenses APPLICATION OF

11   PEARL GLOBAL INDUSTRIES LTD. FOR ALLOWANCE AND PAYMENT OF

12   REASONABLE COMPENSATION, PURSUANT TO BANKRUPTCY CODE §§

13   503(b)(3)(D) AND 503(b)(4), FOR MAKING A SUBSTANTIAL

14   CONTRIBUTION IN THESE CASES. filed by David H. Wander (ECF

15   #9130)

16

17   Declaration BY DAVID H. WANDER, ESQ. IN SUPPORT OF

18   APPLICATION BY PEARL GLOBAL INDUSTRIES LTD. FOR ALLOWANCE

19   AND PAYMENT OF REASONABLE COMPENSATION, PURSUANT TO§§

20   503(b)(3)(D) AND 503(b)(4) OF THE BANKRUPTCY CODE, FOR

21   MAKING A SUBSTANTIAL CONTRIBUTION IN THESE CASES (related

22   document(s)9130) (ECF #9131)

23

24

25

1    Debtors' Objection to Substantial Contribution Application

2    of Pearl Global Industries Ltd. (related document(s) 9130)

3    filed by Sunny Singh on behalf of Sears Holdings

4    Corporation. (ECF #9233)

5

6    Joinder of the Official Committee of Unsecured Creditors to

7    Debtors' Objection to Substantial Contribution Application

8    of Pearl Global Industries Ltd. (related document(s) 9233,

9    9130) filed by Philip Dublin on behalf of Official Committee

10   of Unsecured Creditors of Sears Holdings Corporation, et al.

11   (ECF #9234)

12

13   Joinder of Gary Polkowitz, Administrative Expense Claims

14   Representative to Debtors' Objection to Substantial

15   Contribution Application of Pearl Global Industries Ltd.

16   (related document(s) 9233, 9130) filed by Carly Everhardt on

17   behalf of Gary Polkowitz. (ECF #9235)

18

19   REPLY BY PEARL GLOBAL INDUSTRIES LTD. IN SUPPORT OF

20   APPLICATION FOR ALLOWANCE AND PAYMENT OF REASONABLE

21   COMPENSATION, PURSUANT TO BANKRUPTCY CODE§§ 503(b)(3)(D) AND

22   503(b)(4), FOR MAKING A SUBSTANTIAL CONTRIBUTION IN THESE

23   CASES (related document(s) 9130) filed by David H. Wander on

24   behalf of Pearl Global Industries, Ltd. (ECF #9243)

25

Page 4

1    Declaration Reply Wander in support of substantial

2    contribution (related document(s) 9130) filed by David H.

3    Wander on behalf of Pearl Global Industries, Ltd. (ECF

4    #9244)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 5

1   A P P E A R A N C E S :

2

3   DAVIDOFF HUTCHER & CITRON LLP

4        Attorney for Pearl Global Industries, Ltd.

5        605 3rd Avenue

6        New York, NY 10158

7

8   BY:  DAVID H. WANDER

9

10   WEIL, GOTSHAL & MANGES LLP

11        Attorneys for the Debtors

12        767 Fifth Avenue

13        New York, NY 10153

14

15   BY:  SUNNY SINGH (TELEPHONICALLY)

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2                    P R O C E E D I N G S

 3              THE COURT:  Good morning.  This is Judge Drain.

 4     We're here on in re:  Sears Holding Corp., et al., for our

 5     regularly scheduled omnibus date.  This is a completely

 6     telephonic hearing.  You should identify yourself and your

 7     client the first time you speak.  It's a good idea to do so

 8     thereafter so that the court reporter and I can put together

 9     your voice with your name.

10              There's one authorized recording of this hearing.

11     It's taken by Court Solutions, which provides a copy of the

12     reporting to our clerk's office on a daily basis.  If you

13     want to obtain a transcript of today's hearing, you should

14     contact our clerk's office to arrange for the production of

15     one.  Because these hearings or this hearing is on -- is

16     completely telephonic, you should keep your phone on mute

17     unless you're speaking, at which point you should unmute

18     yourself, of course.

19              So, with that introduction, I have the amended

20     agenda for today's hearing provided by the Debtor's counsel

21     and I'm happy to go down that agenda.

22              MR. SINGH:  Thank you, Your Honor.  Good morning.

23     Sunny Singh, Weil Gotshal on behalf of the Debtors. Your

24     Honor, can you hear me okay?

25              THE COURT:  Yes, I can hear you fine.
```

Page 7

1           MR. SINGH:  Okay, thank you, Your Honor.  Your

2   Honor, I'm joined by my partner Garrett Fail this morning.

3   As Your Honor indicated, we did file the amended agenda, and

4   the first item is really a status update on getting to an

5   effective date.

6           Your Honor, we did file this morning on the docket

7   the report that I'm about to go through and did email it to

8   chambers as well, so Your Honor had an advanced copy before

9   this morning.  So, if it's okay with Your Honor, I'll kind

10  of just walk through it.  And, of course, if you have

11  questions, I'm happy to answer them at any time.

12          THE COURT:  That's fine.  I have a copy here.

13          MR. SINGH:  Okay, great.  So, Your Honor, just

14  picking up or starting off on page 2 of the presentation --

15  and, actually, before I do that, I would just note, Your

16  Honor, you know, we, the Debtors, and the restructuring

17  committee sort of worked on this obviously with M3.

18          You know, we do have an administrative claims

19  representative on the Creditors Committee but these are the

20  Debtor's estimates.  Not sort of -- we're not representing

21  on behalf of the administrative claims representative, for

22  example.  We'll work with Mr. Polkowitz, as we've been

23  doing, and his counsel to answer any questions, etc., after,

24  but these are the Debtor's numbers and estimates, Your

25  Honor.

1          THE COURT:  Okay.

2          MR. SINGH:  Your Honor, in terms of progress on

3   the administrative claims reconciliation in the program on

4   page 2, to date we've reconciled almost about 4,000 claims

5   and other requests for payment, eliminating $1.3 billion of

6   claims that were asserted and claiming entitlement to

7   administrative or priority status.  And we've allowed about

8   1,700 claims, Your Honor.

9          There's still ongoing disputes with respect to

10  roughly 50 claims.  49 here asserting about $11 million.

11  Excluding claims that -- you know, we've reconciled the

12  amounts but they have open preference issues.

13          So, Your Honor, if you look the chart below, which

14  hopefully provides a helpful summary to the Court and

15  parties, the first two lines under the Administrative

16  Consent Program deal with the opt in and non-opt out

17  creditors, the first sort of two categories.  The opt-ins

18  get up to 75 percent and the non-opt outs get up to 80

19  percent of their allowed claim.

20          And if you look all the way to the right, Your

21  Honor, you see the last three rows there show the allowed

22  amount post the settlement discount, roughly $99.3 million.

23  We've made two distributions to date of almost $40 million,

24  leaving for that group at least $59.5 million.

25          And then a few lines down, Your Honor, there's the

Page 9

1    opt-out group, you know, the folks that have not received

2    any payments opted out, so they're entitled to a full 100

3    cents, but entitled to that when we go effective.  The

4    asserted amount there, Your Honor, is 28.3 million and the

5    Debtor's estimates remain consistent with sort of what we've

6    had since the confirmation hearing at about $25 million.

7    So, roughly $90 million total when you take into -- some

8    disputed disclaims that are still ongoing that we think are

9    going to ultimately be allowed.

10            THE COURT:  Can I -- can I interrupt you here at

11   this point?

12            MR. SINGH:  Of course, Your Honor.

13            THE COURT:  You referred earlier to a group of

14   claims, administrative expense claims that have -- where the

15   dollar amount has been fixed but they're subject to

16   outstanding preference issues?

17            MR. SINGH:  Correct, Judge.

18            THE COURT:  I guess the question I have is --

19   first, I just want to confirm, they are not in the chart

20   itself, right?

21            MR. SINGH:  Well, you can see -- Your Honor, we

22   did account for them if you'd look right below the line that

23   says Total Opt-In and Allowed Non-Opt Out, it says,

24   "Reconciled claims subject to preference issues, about $4.1

25   million."  Do you see that number?

Page 10

1          THE COURT:  Okay.  Right, I see it.

2          MR. SINGH:  Yeah.

3          THE COURT:  So, that's a relatively small amount.

4          MR. SINGH:  Correct, Judge.

5          THE COURT:  And the preference issues obviously

6     would be a setoff to the extent that there would be a

7     preference determined or a settlement.

8          MR. SINGH:  That's right, Your Honor.

9          THE COURT:  And the 4.1 is before that, right?

10    It's --

11         MR. SINGH:  That's right.

12         THE COURT:  Okay.

13         MR. SINGH:  Right, that's what we've reconciled as

14    the amount on the claim.  There's a preference on top of

15    that.  And, you're right, Your Honor, as in most of these,

16    we sort of settled and came up with a net amount either of

17    the claim or a payment to the estate.

18         THE COURT:  Okay, very well.

19         MR. SINGH:  Yeah.  And right below that line, Your

20    Honor, just to close it out, you can see the remaining

21    disputed claims from an asserted amount of 11.4.  We believe

22    that it's going to be around $2.8 million in terms of the

23    reconciliation and the Debtor's amount.  So, we really, in

24    terms of reconciling and allowing administrative claims, are

25    in the homestretch, I would say, in terms of just claims

Page 11

1    resolution.

2              THE COURT:  Okay.

3              MR. SINGH:  Your Honor, in terms of progress --

4              THE COURT:  I'm sorry, this was -- this dollar

5    amount of total estimated allowed admins of 177 or so, do

6    you remember how that related to the estimate at the

7    confirmation hearing?

8              MR. SINGH:  Yes, Your Honor, and we actually have

9    a chart on that.  If you scroll down, I can go to it down

10   and then come back.  If you look at Slide 6, Your Honor,

11   this is the uses estimate, which shows you the confirmation

12   hearing estimates for claims, etc., that we were using at

13   the time of the hearing.

14             We also had the June status update and you can see

15   the estimates as of that date, and then sort of actual

16   today.  The answer to your question, Your Honor, is all of

17   the estimates are consistent and within the confirmation

18   hearing range.  When we were at 210 to 278 total, we're at

19   256.

20             And in the breakdown, we're actually, in terms of

21   503(b)(9)s and other admins, we're actually a little bit

22   lower than even our low range, Your Honor.  We're showing

23   about 83 million for 503(b)(9), the low range was 90.  And

24   for the other administrative expense claims, we were at

25   about estimating 50 million and they're showing now 42.1.

Page 12

1    So, we're a little bit ahead in terms of the confirmation

2    estimates of what the claims were going to be.

3            THE COURT:  Okay.  Thanks.

4            MR. SINGH:  You're welcome, Your Honor.  Just,

5    Your Honor, I'll scroll back up on Slide 3 just to summarize

6    the distributions that have been made for administrative

7    creditors.  So far there have been two:  the initial

8    distribution of 21 million, plus there was a second

9    distribution that commenced in August of last year of

10   roughly 19 million.  So, we have disbursed that amount.

11           We've got some uncashed checks and issues like

12   that, Your Honor, and disputed claims reserves, but we've

13   gotten 18.8 million ready for distribution out the door for

14   folks that are entitled to them.

15           THE COURT:  In the second distribution?

16           MR. SINGH:  Correct, Judge, in the second

17   distribution.

18           THE COURT:  Yeah, okay.

19           MR. SINGH:  Which included a catchup distribution

20   for those who didn't participate in the first to sort of

21   bring everybody parry.

22           THE COURT:  Right.

23           MR. SINGH:  So, Your Honor, if you look at Slide

24   4, this is really the key slide, I would say, for today's

25   presentation, which is the additional funds necessary to go

Page 13

1    effective.  And what we've shown here judge is the estimates

2    or sort of the numbers that were before you on the June

3    status conference and where we are today, and the variance,

4    so you can sort of see how we've been tracking during the

5    case.

6            Your Honor, the estimated cash -- and you can see

7    that up top -- is -- or I should say estimated assets, is

8    $39.2 million.  The cash line there is 16.8 after you take

9    into account total reserves, that's the net cash line.  And

10   I would just note, Your Honor, the 16.8, if you recall from

11   our Administrative Consent Program, there were sort of two

12   reserve accounts.

13           One was the $25 million for litigation trust

14   expenses, so that's not in this number.  That was segregated

15   and is being dealt with and administered.  And then the

16   other was $10 million, which we've noted in Footnote 1, for

17   a cash reserve account for estate expenses, etc., to assist

18   in going effective, that would not be distributed to

19   administrative creditors.

20           So, really, the sort of total available cash, when

21   you take into account that 10 million reserve, is 6.8.  Your

22   Honor --

23           THE COURT:  I'm sorry, 16.8?

24           MR. SINGH:  16.8 but there's two 10 millions, Your

25   Honor.

Page 14

1              THE COURT:  Minus the reserves?

2              MR. SINGH:  Correct, correct.

3              THE COURT:  Okay.

4              MR. SINGH:  It's a little confusing because

5    there's two 10 millions.  There's total reserves for the

6    estate for ongoing sort of administration expenses, etc.,

7    other disputes that we have, disputed claims -- that's 10

8    million.  And then we had a separate 10 million of the cash

9    reserve that's permitted under the Administrative Consent

10   Program.

11             So, really it's $20 million and that's how I get

12   to 6.8.  But the 16.8 includes that cash reserve that's not

13   really allocated for anything, it's just a permitted reserve

14   under the Consent Program.

15             THE COURT:  Okay.

16             MR. SINGH:  Your Honor, so really estimated cash

17   before you have certain tax appeals we're taking, the

18   preference claims, and what we use shorthand as the ESL

19   litigation, but really the sort of larger litigation that's

20   being handled by the Akin firm, and Mr. Dublin is on.  But

21   that -- estimated assets is $39.2 million.

22             The reduction, Your Honor, I would just note that

23   it sort of gets you to -- the $20.5 million reduction, it's

24   not like we've lost assets.  We've made a distribution of

25   almost 19 million, so that accounts for pretty much all of

Page 15

1    it.  But that's the delta.

2            We've projected here, Your Honor, in terms of

3    claims and then estimated uses or expenses, you can see

4    below.  The total remaining claims to be satisfied are

5    $109.1 million.  You know, that includes the Administrative

6    Consent Program, you know, $85 million, and just, Your

7    Honor, so you have the reconciliation, the 90 and 85, the

8    difference just is the $5 million of reserves that we have

9    for ongoing disputed claims.

10           The priority tax is 3 million. Your Honor, I just

11   want to note here, we were originally showing $15 million

12   but, as permitted under the plan, we can stretch out the

13   priority tax payments.  So, in terms of just going

14   effective, we only need $3 million.

15           It's not that the estimate of tax claims has been

16   reduced.  We just sort of adjusted our thinking and

17   clarified that for going effective you need three, although

18   the asserted amount is 15.  Or we think the estimated amount

19   is 15.

20           And then you've got the secured claim and the

21   priority nontax, which generally remain consistent, and we

22   just adjusted our estimate for what we think the claim is

23   allowed.

24           I would note, Your Honor, the secured creditor

25   obviously continues to maintain its claim at 18, and we are

Page 16

1    in discussions with them in hopes that we can try to come to

2    a resolution.

3              So, for claims purposes, Judge, what's remaining

4    and sort of the shortfall between current asset is 69.9.

5    We've included in here an estimate, assuming another year.

6    And I'm not here to suggest, Judge, that we intend to go

7    another year.

8              We just sort of projected those out and what that

9    would look like potentially.  And that's roughly $27.5

10   million of expenses, leaving you -- if we were to go

11   effective at the end of the year -- 97.3.  Now, we hope to

12   go effective much sooner than that.

13             I would note, Your Honor, we've already commenced

14   discussions with the administrative claims representative,

15   the Creditors Committee, to start thinking about ways to

16   accelerate the effective date and recognizing, of course,

17   really that at this point, as we sort of expected, the key

18   to going effective will be dependent on recoveries and

19   timing from remaining preference claims and the sort of

20   larger ESL litigation that's before Your Honor.

21             THE COURT:  Can I interrupt you again?

22             MR. SINGH:  Yes, of course.

23             THE COURT:  The estimated 27.5 million for post-

24   confirmation expenses for another year, that doesn't include

25   the $25 million, for want of a better term, litigation

Page 17

1    reserve, right, for ESL?

2            MR. SINGH:  Right, that's separate and apart.

3    This is -- this is the sort of other estate expenses, Your

4    Honor.

5            THE COURT:  And as far as preference claims or

6    preference litigation, that's really on a contingency fee --

7            MR. SINGH:  Correct, yeah.

8            THE COURT:  So, I'm puzzled by that amount.  I

9    understand that a lot of work has been done already on the

10   claims, and that obviously requires significant work by

11   professionals to deal with a billion and a half of

12   administrative expense claims that have been asserted and

13   other claims.

14           But it looks like, as you said, you're kind of at

15   the homestretch with that effort, and the remaining assets,

16   other than the litigation, are fairly -- you know, there's

17   real estate -- it's fairly de minimis.  I mean, a lot of

18   works' been done on those too, I think, at least as far as

19   the Calder sculpture is concerned.  So, what's going into

20   that $27 million number?

21           MR. SINGH:  So, Your Honor, there's a couple of

22   things that are making it up, and we may be a little too

23   conservative.  I'm very hopeful that we spend a lot less

24   than this amount.  But we did sort of -- and we are seeing

25   all of the fees trending down considerably.  There are a

1   couple of things that do remain, Your Honor, that sort of

2   are building into the expenses.

3         One, of course, we are expecting a negotiation

4   here and hopefully a resolution with the administrative

5   claims representative and other administrative creditors,

6   the Creditors Committee, etc., of trying to accelerate the

7   effective date and negotiate around that.  So, we do expect

8   there to be some work around case resolution.

9         In addition, Your Honor, you're right on the

10  preference claims, that that is all sort of contingency fee-

11  based, so there's really not much, if anything, of a

12  preference fee claim base in here.  But there are still some

13  other administrative expense claims that remain, so we do

14  have that.  On top of it we have remaining real estate

15  assets.  As you can see, I mean, we are down to sort of the

16  tail end of those.

17        So, it's a culmination of those things and you're

18  really looking at about maybe $2 million a month is kind of

19  where we were, and maybe that's a little too high, but

20  that's what we were expecting.  I really don't expect that

21  we're going to be spending all of the $27.5 million, but

22  that was what was building into the estimate.

23        THE COURT:  Okay, all right, thanks.

24        MR. SINGH:  Your Honor, post -- what we tried to

25  do on page 5, and I already kind of walked through it with

Page 19

1    you on page 6, is just to offer a bridge for Your Honor and

2    parties in terms of just sources and uses.  Kind of what we

3    were projecting at the confirmation date.  We also included

4    the estimates as of the May 30th status update and just what

5    we've collected through the estimate through the end.

6            Your Honor, I think the good news is at least that

7    sources have increased considerably in terms of estimates

8    and actuals.  From the confirmation date -- and this is

9    excluding the preference recoveries and the ESL-related

10   litigation -- have increased $60 million since where we were

11   at confirmation, and another $11 million from where we were

12   at the may hearing.

13           I think most -- or not most, I should say -- some

14   of that you can see is real estate proceeds.  We've already

15   collected -- and confirmation of this on the third line --

16   we were projecting 13.1 million.  We've already collected

17   14.1 and are expecting another $3.5 million.

18           We've had the ESL, or I should say transform -- I

19   apologize, Your Honor -- settlement that Your Honor approved

20   last year where we were able to pick up the utility deposit.

21   So, that went from 4.7 to $9 million.  And we've -- it also

22   includes the transform 503(b)(9) obligations that were

23   satisfied.  And you can sort of see here the deltas and the

24   differences from where we were able to pick up that

25   additional value.

Page 20

1          So, that kind of gets you from confirmation,

2     Judge, to where we are today in remaining assets -- of

3     course, excluding, again, as I mentioned, the preference

4     recoveries and what we refer to as the ESL litigation,

5     although obviously that's a much broader dispute.

6              THE COURT:  Right.

7              MR. SINGH:  And then, Your Honor, you've got the

8     uses line, which I touched upon earlier in response to Your

9     Honor's question.

10         What we've got really here are totally remaining

11    uses which do remain within the confirmation range.

12    Obviously, given that the case has taken longer than we all

13    had hoped and were expecting, there is the professional

14    fees, board fees, etc., have sort of continued.

15         I would note, Your Honor, it's not as if those are

16    expenses that would not had been incurred in large part

17    anyway.  I mean, a lot of that does relate to claims

18    reconciliation, resolving disputes in connection with making

19    distributions and sort of getting to the point where we've

20    gotten.  I'm not suggesting all of it would have been

21    incurred but certainly there is a big chunk in there that is

22    timing related.

23             THE COURT:  Right.

24             MR. SINGH:  Your Honor, and then finally we wanted

25    to just give a high-level update on avoidance recovery.

Page 21

1    Your Honor may have seen, or I'm sure you get the updates --

2    there are a lot of adversary proceedings.  Luckily, I don't

3    think you've had to handle much of that.  We've been dealing

4    with most of it directly in the background with

5    counterparties.

6            But approximately a third, I would say at this

7    point, of the preference matter just in terms of the number

8    of preference issues, have been settled, have been resolved,

9    resulting in about $40 million of value, which includes both

10   cash that's come in the door as well as administrative or

11   priority claims that have been waived.  So, sort of the

12   aggregate value that we've collected.

13           What we've got remaining, Judge, and complaints

14   are filed is another, I'd call it, about 1,100 matters, as

15   you can see from this chart.  Roughly, $600 million of gross

16   preference period transfers that are remaining after you

17   eliminate what the preference specialists have determined to

18   be ineligible for various reasons, such as assumption and

19   they're dealt with as part of cure or what's already been

20   settled.  So, still quite a bit of wood to chop there and

21   continue on, but we are making progress.

22           THE COURT:  Okay.  Can we go back to page 6 for a

23   second?

24           MR. SINGH:  Yes, Judge.

25           THE COURT:  What is the other liability to the

Page 22

1   expenses category?

2           MR. SINGH:  Your Honor, let me see if I can...

3   I'm not sure.  Let me see if I can get an answer to that

4   question from Mr. Murphy.  I don't recall exactly what that

5   line item included.

6           THE COURT:  Okay.

7           MR. SINGH:  But I will get Your Honor an answer.

8           THE COURT:  Okay.  All right.  You can just keep

9   going and he'll probably email you or --

10          MR. SINGH:  Yeah.  The luxury of remote, Your

11  Honor, is that I'll probably get a text or an email very

12  shortly.  So, Your Honor, just in terms of sort of the

13  remaining takeaways, the key takeaways here: our performance

14  and projections are consistent with what we've been

15  estimating throughout, although obviously we're here longer

16  and haven't gone effective longer than what we were hoping

17  and would have liked because of the challenges that remain

18  in the case.

19          Really emergence does remain, in terms of if we

20  were to just sort of come up with the cash to sort of, you

21  know, finalize the claims and make those distributions, does

22  remain heavily contingent on the -- because of the larger

23  ESL litigation and collection of preference recoveries.

24          I would note, Your Honor, we are, as I said

25  earlier, we've commenced discussions, productive discussions

Page 23

1    with the administrative representative and the Creditors

2    Committee to think about other ways to accelerate an

3    effective date and get this case to the finish line.  I

4    would say those are the very early stages but we're hopeful

5    that the parties can put their heads together, as we've done

6    before, and come up with the right answer.

7            In terms of remaining disputed claims, as I said,

8    Your Honor, there's not much left, thankfully.  I mean,

9    we've done a lot of work already but we are sort of ready to

10   finalize those reconciliations and get those finalized and

11   done.

12           So, Your Honor, that was the full presentation I

13   had this morning.  I'll get you an answer to your question.

14   I apologize.  But happy to answer any other questions Your

15   Honor may have.

16           THE COURT:  Okay.  Other than the one that you're

17   going to get a reaction from from Mr. Murphy, I don't have

18   any other questions.  I do note that I owe the parties a

19   ruling on the hundreds of pages of motions to dismiss in the

20   so-called ESL litigation and that will be coming fairly

21   soon.

22           But it's also, I think, fair to assume that that

23   litigation, unless settled and there may be incentive to

24   settle it on both sides, including insurers, won't be for

25   quite a long time.

1          So, it would seem to me that if there is to be a

2     way to promptly or reasonably promptly come up with

3     sufficient cash to go effective by paying the admin claims,

4     it would either have to be, as you were suggesting, as part

5     of some sort of agreement or through the preference

6     litigation.

7          MR. SINGH:  Yes, Your Honor.

8          THE COURT:  Okay.  Does anyone have any questions

9     for Mr. Singh or the Debtors?  No?  Okay, all right.  Thank

10    you for the update.  I guess we should expect one --

11         MR. SINGH:  Your Honor, probably -- yeah, I mean,

12    we'll try to do it sooner, Judge.  We'll try to do it

13    quarterly especially if there is a meaningful update for the

14    Court.  But, yes, certainly no later than May.

15         THE COURT:  Okay, very well, thanks.

16         MR. SINGH:  Thank you, Your Honor.

17         THE COURT:  All right. So, why don't we then just

18    continue down the agenda.  And at this point, it's not a

19    long agenda.  Most of the matters that are on it have been

20    adjourned.

21         MR. SINGH:  Correct, Judge.

22         THE COURT:  But I have actually the only matter to

23    be considered on today's agenda besides the report that you

24    just gave is the motion by Pearl Global Industries, Ltd. for

25    allowance and payment of a substantial contribution claim

Page 25

1   under Sections 503(b)(3)(d) and 503(b)(4), the Bankruptcy

2   Code.

3          MR. SINGH:  That's right, Your Honor.  That's the

4   only matter.  And I see Mr. Wander on the dashboard and so

5   I'll cede the podium to him to present his motion.

6          THE COURT:  Okay.  Before -- actually, before we

7   do that, and maybe this is just a -- maybe I just hit the

8   wrong button -- I do see that Mr. Harner from Ballard Spahr

9   might've raised his hand to speak.  Is that right, Mr.

10  Harner?  Sorry, I can't hear you.  You might be muted.

11         MR. HARNER:  Apologies, Your Honor, I had pressed

12  the hand raise successfully but not the unmute button.  It

13  was only for the purpose of asking to be excused, if I

14  could.

15         THE COURT:  Oh, that's fine.  That's fine, you

16  can.

17         MR. HARNER:  Thank you, Your Honor.

18         THE COURT:  And anyone else who's on the line for

19  something other than the Pearl motion under 503(b)(3) and

20  (4).  Before I hear from Mr. Wander, counsel for Pearl

21  Global Industries, let me just say that I think I've read

22  all the pleadings on this, which are the motion and

23  supporting affidavit with exhibits, of course, by Global,

24  the objection by the Debtor, the pleadings filed in support

25  of the objection by the administrative expense claims

Page 26

1   representative and by the Official Unsecured Creditors

2   Committee. And then Pearl Global's reply and the

3   accompanying affidavit by Mr. Wander. I don't think there's

4   anything filed in connection with this motion besides that,

5   but I've reviewed each of those documents.

6        So, Mr. Wander, if you want to go ahead.  You can

7   assume that I've reviewed those but you can supplement them

8   or rest on them or argue whatever you want to in support of

9   this motion.

10       MR. WANDER:  Thank you very much, Your Honor.

11   David Wander of Davidoff Hutcher & Citron, counsel for Pearl

12   Global.  Your Honor, I just want to highlight a few points.

13   And in the preliminary statement in Pearl's reply I set

14   forth what really are the questions raised by the objections

15   that have been filed.

16       The first one, and it's really kind of a

17   gatekeeping issue for Your Honor, is is a million dollars in

18   the context of the distribution to the administrative

19   creditors who've received in round numbers $40 million?  So,

20   that would represent 2.5 percent of the total funds that

21   have been paid to date.

22       And based on the status report by the Debtor, that

23   may be the only funds right now we see for possibly another

24   year that will have been paid, absent some change to the

25   plan that Debtor's counsel indicated may be under discussion

Page 27

1   with the administrative claims representative and the

2   Creditors Committee.

3           So, from the point of view of the administrative

4   creditors who've received the money -- and I represent one

5   who's received the money, that's Pearl Global -- I represent

6   several who have not received any money -- that's a

7   substantial amount.

8           In fact, if this case were to be very successful

9   and the people litigating against ESL get a tremendous

10  recovery, I believe the projections in the disclosure

11  statement for the possible distributions to unsecured

12  creditors is a couple of penny.  Maybe one penny, two

13  pennies, three pennies.

14          So, from the point of view of the creditors, not

15  the professionals, because as I say to them, I agree, a

16  million dollars to the professionals is -- the retained

17  professionals -- it's not a lot of money.  But I submit to

18  Your Honor that the million dollars that Pearl Global

19  negotiated when it settled its claim with no obligation to

20  try and get the million dollars for everyone, that that's a

21  substantial amount.

22          The second issue --

23          THE COURT:  Can I interrupt you on that?

24          MR. WANDER:  Yes, Your Honor.

25          THE COURT:  Maybe you're going to get to this in a

Page 28

1    minute but I thought the main point raised here was not that

2    a million dollars is insubstantial -- to most people, a

3    million dollars is a lot of money -- but rather that the

4    payment was merely a timing issue.  That if it wasn't paid

5    in distribution number one, it would have been paid in

6    distribution number two, i.e., the $18.4 million second

7    distribution would've been 19.4.  And, therefore, all you're

8    talking about is the time value of a million dollars between

9    the first distribution and the second one.

10           MR. WANDER:  Yes, Your Honor, I honestly didn't

11   understand that point because I negotiated for the million

12   dollars as part of the settlement of Pearl Global's claim.

13   Had I not done that, there would not be that million

14   dollars.

15           THE COURT:  Why is that?  Wouldn't it be simply

16   freed up for the next distribution?

17           MR. WANDER:  No, because that came from the

18   professionals.  That was their money that they were giving

19   up.  It was a contribution from them.  And if Your Honor may

20   recall, you had a colloquy with Debtor's counsel, Mr.

21   Schrock, talking about how his partners may not be too happy

22   with him.  You understood that.  By money -- at that time,

23   you were talking about the additional 9 million, I believe.

24           So, I, for lack of better words, grabbed a million

25   dollars from their pocket and Your Honor later in the

1    hearing at the second day of the confirmation hearing, you

2    added another 9 million.  So, that million dollars, Pearl

3    Global created that million dollars.  But for Pearl Global's

4    settlement, that wouldn't have been paid.  You would have --

5                THE COURT:  You don't think I might not have said

6    to Mr. Schrock in any event, you're going to have to hold

7    back and take a risk on 10 million instead of 9 million?

8                MR. WANDER:  But that money has not been paid.  If

9    Your Honor looks at the status report that the Debtor just

10   provided, you'll see the professional fee carve out funding

11   of $9 million, I believe, that's being held in reserve.  So,

12   that would've been 10 million.  That million dollars would

13   not have been paid in the second distribution.

14               THE COURT:  We're still talking about time value

15   of money, though, right?

16               MR. WANDER:  Right, that's money that would not

17   have been paid out at all by now and maybe never.

18               THE COURT:  Well, again, that's assuming that I

19   wouldn't have just had a round 10 million be held back by

20   the professionals because they're sort of expense creditors,

21   too.

22               MR. WANDER:  Correct, Your Honor.  They're

23   administrative creditors and they received a round number of

24   over 200 million.  If there's 50 -- there's 49.5 million in

25   the professional fee carve out funding that I'm looking at,

Page 30

1   which includes the 9 million.

2          So, yes, time value of money is important,

3   especially to the administrative creditors who hadn't been

4   paid for providing services during the bankruptcy or during

5   the 20 days before the bankruptcy.

6          So, the additional million, the additional 2.5

7   percent on a blended rate, Your Honor, is a significantly

8   amount that they've received and is probably all the will

9   have received for the next year.  So, that's for two years

10  after confirmation.

11         THE COURT:  Well, the federal judgment rate, $1

12  million over two years, is less than the amount you're

13  seeking.

14         MR. WANDER:  But the point is that the creditors

15  need that money.  So, the time value in theory doesn't

16  address the real needs of the creditors of this Debtor, who

17  supported the Chapter 11.  We're talking about the vendors

18  who continued to supply goods and services to the Debtor

19  with the expectation that they would be paid in the ordinary

20  course of business.  Now, Your Honor previously said --

21         THE COURT:  I understand all that, Mr. Wander, I'm

22  just focusing on the arguments back and forth as to whether

23  this sum was de minimis or not, or extraordinary.  And I

24  think we've had enough on it.  I understand your arguments.

25  I think you probably understand mine, and we can move on.

Page 31

1          MR. WANDER:  Thank you, Your Honor.  So, the next

2     point that was raised by the objections is whether Pearl was

3     acting purely for its own benefit as the objector's contend

4     --

5          THE COURT:  Well, the word purely is a red

6     herring, right?  Because that's not the standard when one

7     looks at benefit.

8          MR. WANDER:  Correct.

9          THE COURT:  They're two different points.  It's

10    primarily to benefit the client as opposed to purely.

11         MR. WANDER:  Correct.

12         THE COURT:  So, anyway -- but in any event --

13         MR. WANDER:  If I may, Your Honor?

14         THE COURT:  Yeah.

15         MR. WANDER:  You're correct, Your Honor.  The word

16    purely is a red herring.  It has really nothing to do with

17    the standard.  What the standard is a direct net benefit.

18    If I was simply advocating for Pearl and only for Pearl,

19    which is what happened in all of the cases that have been

20    cited -- none of the cases did a creditor altruistically try

21    and benefit others.

22         The law, the standard, is the direct benefit, not

23    indirect.  So, I submit there's nothing more direct than

24    getting money for all administrative creditors.  So, that's

25    the standard as Your Honor mentioned in Bayou --

1          THE COURT:  I'm sorry to interrupt you but there's

2     a second element to the standard besides a direct and

3     substantial net benefit to the creditors and/or the estate

4     as a whole -- and that phrase as a whole is important.

5          It is well-recognized -- and this is from the

6     Bayou case, too -- that, quote, "Creditors face an

7     especially difficult burden in passing the substantial

8     contribution test since they are presumed to act

9     primarily..." -- again, primarily, not purely --

10    "...primarily for their own interest.  And services

11    calculated primarily to benefit the client do not justify an

12    award, even if they also confer an indirect benefit on the

13    estate."  So, and that's articulated in many cases.

14         So, I think there are really two points here.  It

15    has to be a direct benefit, and if you want to say that

16    direct includes primarily for the estate and creditors as

17    opposed to primarily for the movant, then you can conflate

18    the two.  But who this work is for and the burden that a

19    movant faces on that issue I think is a factor that the

20    Court needs to consider, besides just whether there is a

21    material net benefit to the creditors and/or the estate as a

22    whole.

23         MR. WANDER:  Yes, Your Honor.  And this was

24    addressed actually by Judge Galgay -- if those -- some

25    people remember Judge Galgay, as I'm sure Your Honor does.

Page 33

1    It involved a case where Weil Gotshal was seeking a

2    substantial contribution, and I believe that was mentioned

3    in -- I believe it was Best Products, it may have been -- I

4    believe it was Judge Brozman's case for General Oil.  And in

5    this case, what Judge Galgay -- what was noted in the

6    decision was that when Weil Gotshal requested the

7    substantial contribution award, they did not include

8    services that directly benefitted their client.  And that's

9    what I did, Your Honor.

10         The fees that I'm seeking and the time records do

11   not include any services that were only for Pearl Global.

12   So, the services that Pearl Global is seeking payment for

13   are only those services that related to its actions for all

14   of the administrator creditors or, in particular, the

15   foreign vendor administrative creditors.

16         But in the end, when Pearl Global got the million

17   dollars, it got it for all administrative creditors with

18   allowed claims and it wasn't limited to any category.

19         So, I addressed that, Your Honor.  And so all the

20   services that Pearl Global is seeking payment for had to do

21   with forming the committee, organizing it, giving the

22   committee for a period -- I'm sorry, it wasn't a committee,

23   it was a group, our ad hoc group.  It was to give them a

24   seat at the negotiating table.  We had a seat for a while,

25   then it was to advocate for all administrative creditors,

1    other than professionals, at the confirmation hearing.  And

2    I spent several hours cross-examining the Debtor's

3    witnesses.  I believe I was the only one who cross-examined

4    in a fulsome manner the Debtor's witnesses.  And it provided

5    for a much more fulsome record.

6            And then after the first day, during the

7    continuation, I argued not just for Pearl Global but for all

8    the nonprofessional administrative creditors.  I can't -- in

9    looking at the cases, Your Honor, it's extraordinary what

10   Pearl Global did.  It's exactly, I submit, what the statute

11   is for.  And knowing that your --

12           THE COURT:  Can I interrupt you there?

13           MR. WANDER:  Sure.

14           THE COURT:  When you appeared at the confirmation

15   hearing, you appeared on behalf of Pearl Global and two

16   other entities, not on behalf of an ad hoc committee or a

17   group, right?  That's how you're listed, that's how you were

18   introduced --

19           MR. WANDER:  Correct.

20           THE COURT:  And let me just continue.  The

21   pleadings that were filed were on behalf of Pearl Global and

22   the other two clients that are listed in the Notice of

23   Appearance, right?

24           MR. WANDER:  Correct.

25           THE COURT:  And other members of this ad hoc group

Page 35

1    also appeared for their clients at the confirmation hearing,

2    like Mr. Sarachek.

3              MR. WANDER:  Yes, Your Honor.

4              THE COURT:  And, in contrast, Foley and Lardner

5    appeared on behalf of an ad hoc group or committee of admin

6    expense creditors, I think.

7              MR. WANDER:  Yeah.

8              THE COURT:  One last question.  There was never

9    any statement filed under Bankruptcy Rule 2019 by your firm

10   as a representative of this ad hoc group, right?

11             MR. WANDER:  Correct, Your Honor.  And if Your

12   Honor may recall, and it's in my declaration, before

13   confirmation, I attended several chambers conferences along

14   with Debtor's counsel and the committee, and I think one

15   before Foley and Lardner and I think one after they became

16   involved.  And I let Your Honor know when I appeared that I

17   was appearing for Pearl and also for an ad hoc group.  I

18   made that clear.  But --

19             THE COURT:  But formally you didn't do that,

20   right?  So, they wouldn't know that you were appearing on

21   their behalf.

22             MR. WANDER:  Your Honor, all the people in the

23   group knew throughout that I was advocating for everyone.

24   Weil Gotshal knew that --

25             THE COURT:  But we don't know what that group is

Page 36

1    and there was no 2019 statement filed, the purpose of which

2    is to make all of that clear.

3              MR. WANDER:  Well, Your Honor, again, I advised

4    Your Honor at the chambers conferences.  I had communicated

5    -- it was no secret to the Debtor.  I originally reached out

6    before Foley & Lardner was involved -- I originally reached

7    out to first the Debtor and then the Creditors Committee on

8    behalf of the group.

9              We negotiated over a term sheet with the

10   committee.  They knew I was representing -- not formally

11   representing -- I was organizing and advocating for a group

12   of approximately 35-40 foreign vendors.  The Debtor knew

13   this.

14             When I attended the meeting with the Debtor, the

15   committee and other representatives of the estate along with

16   Foley & Lardner, they knew I was coming, not as -- only as

17   Pearl Global's attorney; I was coming to represent the

18   group, the ad hoc group that I organized and it's been known

19   all along.

20             And then during the confirmation hearing -- and

21   this is in the reply papers -- at one point when I was

22   advocating for the non-opt out group, Your Honor said to me,

23   Mr. Wander, you have no standing to make that argument.  But

24   I made it for the others.  And in the beginning and during

25   my presentation when I was saying that a lot of the cash on

Page 37

1    hand should go to the administrative creditors, I was

2    arguing for everyone.

3              It's a well-known fact.  It's documented in the

4    record that while I formally was representing Pearl Global

5    and two other administrative creditors at that time,

6    everyone in the case knew I was there advocating for all of

7    the nonprofessional administrative creditors. And --

8              THE COURT:  Mr. Wander, you didn't have the

9    authority to bind anyone other than your client, right?

10             MR. WANDER:  Correct.  And that was clear to the

11   Debtor, the committee.  They knew I was acting as a conduit

12   for a group of creditors, a stakeholder group, that had

13   become the fulcrum creditor group.  So --

14             THE COURT:  Did you inform that whole group of

15   their ability to not accept the terms of the settlement that

16   Pearl Global negotiated?

17             MR. WANDER:  No, if Your Honor remembers, the

18   timing was the settlement construct was announced, I think,

19   two days before the confirmation hearing.  As of the

20   confirmation hearing, I hadn't even had a chance to really

21   review it because I was preparing for the hearing.  And then

22   it was a weekend that I negotiated and I think we showed up

23   on Monday, and Mr. Singh read the settlement into the

24   record.  And all I was doing was giving everything a million

25   dollars.

1          THE COURT:  And how much was the ad hoc -- were

2     the members of the ad hoc group informed of those

3     negotiations?

4          MR. WANDER:  I'm sorry, Your Honor?

5          THE COURT:  How much were the members of that ad

6     hoc group informed of your negotiations?

7          MR. WANDER:  Well, anyone who was listening in or

8     attending the confirmation hearing would've heard Your Honor

9     several times saying to me or Mr. Schrock, go in the hallway

10    and settle Pearl's claim, or why don't you settle with Mr.

11    Wander?  And that's how we left the hearing was Your Honor

12    basically saying to the Debtor and to me, go do your best to

13    settle this claim and Pear Global's objections.  So,

14    everyone who was listening in knew that.

15          But, no, over the next few days, I was dealing

16    with the Debtor with respect to their preference claim and I

17    spoke to the attorney at Ask who was handling that, and we

18    went over that, and that was encapsulated into the

19    settlement and the reduction of Pearl Global's claim from

20    approximately a million-5, to I think a million-130.

21          And Your Honor asked Mr. Singh on the record when

22    he announced the settlement whether that had been looked

23    into.  And Mr. Singh made it clear that they analyzed the

24    claim and they just weren't throwing the money at Pearl

25    Global to get rid of me.

1          So, everything was on the record and the people in

2     our group, they had their own counsel.  Everyone knew I was

3     playing a facilitating role, and that's what I did.  And

4     that is what I submit the statute is supposed to cover.

5     We're supposed to encourage, in appropriate cases, an

6     attorney doing something extraordinary.

7          I pointed out in my reply that there's no -- in

8     the Bankruptcy Code, there's no fiduciary to represent

9     administrative creditors in an administratively insolvent

10    case.

11         And so I think it's extraordinary what Pearl

12    Global did through their counsel, and they've had a direct

13    benefit.  And I think what I did and what Pearl Global did

14    should be applauded and not attacked.  And in the grand

15    scheme of this case with 200 million going to the

16    professionals and Pearl Global, you know, fighting against

17    the Debtor's counsel and the committee counsel to extract

18    value for all administrative creditors, that should be

19    applauded and it should be rewarded.

20         And for the million dollars that represents now

21    2.5 percent of what's been distributed, I submit that the

22    217,000 requests -- that's 215 in fees and approximately

23    2,000 in expenses -- is very reasonable.  I mean, it's

24    basically a 4.5 one return on the money.

25              THE COURT:  Okay.  Anything more?

Page 40

1         MR. WANDER:  I think what I just said, Your Honor,

2    and the papers -- if Your Honor has any other questions, or

3    I'll respond to any comments by the objectors.

4         THE COURT:  Okay.

5         MR. SINGH:  Good morning again, Your Honor. Sunny

6    Singh, Weil Gotshal, on behalf of the Debtors.  Your Honor,

7    the back and forth between Your Honor and Mr. Wander, you

8    covered actually a lot of points that I was going to raise,

9    so I will not repeat those.  I'll just highlight a couple of

10   issues, Your Honor.

11        As you noted, Your Honor, there was no 2019 ever

12   filed.  You know, Mr. Wander never had the ability to bind a

13   larger group of creditors and was certainly not representing

14   them, although I don't disagree that he was trying to

15   collect larger creditors so that he had a larger -- or they

16   had a larger voice in the case.  But that's not really the

17   standard, Your Honor.

18        And I would note -- and I really didn't intend to

19   get into all the back and forth of why negotiations broke

20   down -- but, frankly, once the Debtors realized that he did

21   not have a, quote-unquote, "ad hoc group" that he could

22   find, that was a significant factor for why it really didn't

23   make sense to continue communicating with him about a

24   settlement because it was a settlement to nowhere.

25        In terms of -- Your Honor, let me just address one

Page 41

1    factual point, his comments about the $9 million, and the

2    report we gave this morning, and the carve out.  The 9

3    million is separately listed but that does not mean that the

4    other funds were not moved over and would not have

5    ultimately been moved over.

6            Your Honor may recall that initially, as part of

7    the administrative claim settlement program that we agreed

8    to with the Foley group, the professionals had agreed to

9    move over $2 million.

10            That number was increased to $3 million after the

11    discussion and resolution with Mr. Wander.  That number is

12    already in the cash number in the line items because it had

13    already been moved over in sort of the way the confirmation

14    hearing estimates were.  And the 9 million was as a result

15    of Your Honor's ruing that subsequently came over and, to

16    correct what Mr. Wander said, has already been moved over.

17    So, Judge, there really was a total of 12 million that was

18    moved over.  And I would also note --

19            THE COURT:  That's fine.  When you say -- Mr.

20    Singh, when you say moved over, what do you mean?  Moved

21    over --

22            MR. SINGH:  I'm sorry, Your Honor, just to be

23    clear.  So, there was the professional fee escrow account

24    that was set up under the DIP order, where professionals

25    were providing estimates -- retained professionals were

Page 42

1    providing estimates for professional fees as they were being

2    incurred, and then they get trued up from time to time.

3            So, there are two accounts:  there's the

4    professional fee escrow account, and then there's the

5    Debtor's general operating accounts.  So, the professional

6    fee escrow account was segregated, held in trust exclusively

7    for the benefit of the professionals.

8            So, as part of the settlement with the Foley group

9    and then Pearl, $3 million was transferred voluntarily from

10   the professional fee escrow account in connection with the 2

11   million before confirmation, to move it over into the

12   general operating account so that it could be distributed.

13           Later, as Your Honor -- after Your Honor's ruling

14   regarding an additional incremental $9 million to be

15   transferred from the professional fee escrow account to the

16   general operating account -- and I would note, Your Honor,

17   your ruling just said, you know, if it's needed later.

18           The professionals just went ahead and moved it

19   right away and dealt with it in the confirmation order of,

20   you know, if there was a shortfall, how the sharing would

21   work.  But that was transferred from the professional fee

22   account, again, to the general operating account to satisfy

23   the various conditions under the Administrative Consent

24   Program.

25           So, including the, for example -- you know, we had

Page 43

1    to hit $25 million, which we didn't have at the time, for

2    the litigation trust funding, we had to hit the 10 million

3    for the cash reserve account, and then the excess was

4    distributed.

5             So, you know, all of those funds, 12 million in

6    total, were transferred from the professional fee account to

7    the general operating account and used for purposes of

8    satisfying the conditions under the Administrative Consent

9    Program and making distributions.

10            THE COURT:  So, I think both you and the committee

11   in its statement of support of the objection state that the

12   $1 million that Mr. Wander is referring to would have been

13   part of a second distribution anyway.  What is the -- what

14   is the basis for that statement then?

15            MR. SINGH:  Two bases, Your Honor:  One, we think

16   Your Honor would've required it anyway as part of the

17   ruling.

18            Two, Your Honor, the professional fee escrow

19   account is trued up from time to time as estimates become

20   actuals.  And I would report, Your Honor, that in subsequent

21   distributions and the second distribution in particular, an

22   incremental $7 million was moved over from the professional

23   fee account as estimates became actuals and we recognized

24   that there were some excess in there.

25            So, you know, over time, those amounts, we think -

1   - and they were moved over in the second distribution but

2   over time they would've been moved over anyway.

3            THE COURT:  Okay.  I.e., the reserves are not

4   permanent reserves.  They're adjusted based on actual --

5            MR. SINGH:  Exactly, exactly, Your Honor.

6            THE COURT:  -- quote on fees.

7            MR. SINGH:  Of course, exactly.  We estimate them

8   as we're going but, of course, once the professionals have

9   their final tallies and statements are filed, you know,

10  there's true ups in accordance with the DIP order.

11           THE COURT:  Okay.

12           MR. SINGH:  Your Honor, with those corrections to

13  the record, I would then sort of just go back to, you know,

14  the overall context in which Mr. Wander is appearing for

15  this claim.  And Your Honor knows the standard very well so

16  I'm not going to sort of sit here and repeat.

17           But I think there's a stark contrast, and when you

18  just look at the Bayou case where Your Honor awarded

19  substantial contribution applications and Judge Brozman's

20  decision in Best Products and the facts of the two cases,

21  and the distinctions and why she denied it, and I think this

22  all becomes very clear.

23           I mean, it's very extraordinary relief that Mr.

24  Wander is asking for.  I mean, you don't see a substantial

25  contribution application filed and let alone granted every

Page 45

1   day.  In Bayou, Your Honor had a fraud situation, right?

2   There was a group of creditors who authorized prior to the

3   filing because the Debtor was engaged in fraud and there was

4   sort of nobody looking out for the protection of those

5   unsecured creditors.

6         Not the case here, Your Honor.  Not even close.

7   We've got the Debtors who've had an independent

8   Restructuring Committee since day one of this case.  You've

9   got the Creditors Committee who have been all over the

10  issues since day one of the case.  And the issue of

11  administrative claims, Your Honor, has been on the table

12  since day one of the case, and everybody's been laser-

13  focused on it.

14        Your Honor will recall the painful hearing we had

15  with respect to the Transform sale and all of the back and

16  forth and the insistence that the Restructuring Committee

17  had in accepting that transaction as to whether the estate

18  would remain administratively solvent, and the disputes back

19  and forth we had with the committee with that.

20        And so I submit, Your Honor, that Mr. Wander's

21  saying, you know, there's no fiduciary for administrative

22  creditors is just absolutely wrong.  There's a Restructuring

23  Committee.  We represent the interest -- or they represent

24  the interest of all creditors of the estate.  And by no

25  means have they sort of overlooked the issues of

Page 46

1    administrative creditors.  I would say that that's probably

2    been one of the most singular, most focused issues in this

3    entire case.  You know, we frankly -- there's not some gap

4    or void by the retained professionals that Mr. Wander needed

5    to fill here.

6              So, Your Honor, that's Bayou.  They just didn't

7    have that and the group was focused on preserving assets.

8    They investigated causes of actions and turned that over to

9    a trustee that was ultimately appointed, and it resulted in

10   a real net benefit to the estate.

11             On the opposite end of the spectrum, you had Best

12   Products, which, coincidentally, was a group of trade

13   creditors.  One on the Creditors Committee, who was trying

14   to get its own counsel's fee -- not the Creditors Committee

15   counsel -- its own counsel's fees reimbursed for doing work

16   on behalf of trade creditors, and another who was organizing

17   a group of other trade creditors and said, well, I made some

18   objections to the plan and I put forward alternatives, and

19   that changed the outcome of the case because there were

20   incidental changes to the plan.

21             And Judge Brozman said, no, that's not enough for

22   substantial contribution.  You were primarily representing

23   the interest of your creditors.  And even if you had some

24   indirect benefit, that's not a substantial contribution.

25             And, Your Honor, I submit that's exactly what we

Page 47

1    have here.  We have best products, we don't have Bayou.  We

2    have a creditor who objected to the plan who ultimately

3    settled for its singular benefit and, yes, fine, there was a

4    million dollars that they insisted would come in that,

5    frankly, as I've pointed out, would have come in anyway.

6    And they were trying to coordinate with other creditors,

7    who, by the way, appeared through other counsel to just have

8    a larger leverage and voice in the case.

9            And, Your Honor, there's nothing unique about

10   that.  There's nothing remarkable about that to get a

11   substantial contribution claim.  That happens every single

12   day in bankruptcy cases.  It'd be a real slippery slope if

13   Mr. Wander's application is granted.  You know, why not the

14   other parties who objected to confirmation?  So, I really

15   don't think that there's anything unique that happened here,

16   and certainly not close to the heavy standard and the high

17   standard of a substantial contribution claim.

18           Your Honor, on the three items that Mr. Wander

19   points out in his papers as to why he's entitled to

20   substantial contribution claim, first and foremost, he

21   concedes he had absolutely nothing to do with the

22   Administrative Consent Program.  I think that's an important

23   concession.

24           Frankly, maybe we gave him too much benefit of

25   what he was trying to claim.  Because, you know, it's

Page 48

1   certainly more arguable if you had involvement in the

2   Administrative Consult Program that there was a substantial

3   contribution.  But he says, I had nothing to do with that.

4          So, then there's three things.  And at this point,

5   he really is hanging his hat on the million dollars that

6   were added to the initial distribution.  There's the --

7   well, he tries to allege that he had a lot to do, whether he

8   had something even to do with the change in the sort of non-

9   opt out treatment where creditors went from -- originally

10  the Debtors were proposing a 75 percent cap to an 80

11  percent.

12         And, Your Honor, if you go back, as I'm sure you

13  did, and you look at the confirmation hearing transcript, I

14  mean, it's clear as day.  One of the first issues after Mr.

15  Schrock describes the Administrative Consent Program and

16  anyone is even heard on any issues, Your Honor raises the

17  point that, you know, why have this separate class?  And you

18  started to ask about, you know, it's different from Toys and

19  some of the other cases, and what was the Debtor's

20  rationale, and the notice that would go out and all the back

21  and forth.

22         And following that conversation and that sort of

23  dialogue with the Court, the next day or immediately after

24  that when we could, we started to think about that. And the

25  next day when we were back before Your Honor, Mr. Schrock

Page 49

1    announced -- or I announced, excuse me, the change to the

2    treatment.  It had nothing to do with the objection or the

3    issues Mr. Wander was raising.

4           Similarly, Your Honor, although he has been on

5    attack of the retained professionals since he's been

6    involved in this case, which is fine -- I'm not here to

7    defend that -- but he had nothing to do with the $9 million

8    that Your Honor required in connection with your feasibility

9    ruling, right?  He was just saying, don't approve the

10   Administrative Consent Program, or if you're going to

11   approve it, move over 50 million or some ridiculous number

12   from the professional fee escrow just because it would be

13   more equitable to do that.

14          But Your Honor is the one that actually ruled,

15   based upon a feasibility determination that Your Honor made

16   after he settled, that that money may need to be available

17   and the professionals went ahead and moved it.  So, really,

18   no credit can be awarded to Mr. Wander or any linkage,

19   frankly, to that.

20          And then, finally, you've got the $1 million. And

21   putting aside the issue of -- let's just come back to the 1

22   million for a second, of how much it increased, if at all,

23   for anybody.

24          But the standard is there had to be a substantial

25   contribution, and Your Honor touched on this, to the

1    administration of the case.  Right?  Not just one little

2    issue or one, you know, sort of what we believe is a de

3    minimis increase that, at best, is a timing acceleration --

4    because, as I noted for Your Honor, it came over anyway.

5              But I don't see how it -- his actions advanced the

6    administration of the case.  He was objecting at

7    confirmation, which happens quite often in Chapter 11 cases,

8    and in resolution of that objection, the Debtors resolved

9    his claim and offered one other issue that he was focused

10   on.  And certainly nowhere near the amount that he was

11   originally requesting, and not something he was requesting

12   on behalf of all creditors, Your Honor.

13             As you noted, he appeared on behalf of Pearl and

14   two other creditors. It was not sort of negotiating on

15   behalf of a larger group of creditors.  So I just don't see

16   the linkage to the administration of the case, which is the

17   legal standard, and an incremental million dollars that was

18   sent out earlier than -- as I reported to Your Honor, than

19   it would have been.  Not that it never would have come in,

20   but just earlier than it would have been.

21             So, Your Honor, for those reasons, we would submit

22   that he has not satisfied his heavy burden to demonstrate a

23   substantial contribution to the case.

24             We think this is very, very different than Bayou

25   and, frankly, in line with all the other cases where

Page 51

1    substantial contribution applications were denied and for

2    good reason, Your Honor.  And for those reasons, we would

3    request that Your Honor deny the application.

4            THE COURT:  Okay.  All right, thank you.  Anyone

5    else have anything to say before I turn it back to Mr.

6    Wander?

7            MS. MORABITO:  Good morning, Your Honor.  This is

8    Erika Morabito, Foley & Lardner, on behalf of Gary Polkowitz

9    in his capacity as the administrative expense claims

10   representative.  Can you hear me okay?

11           THE COURT:  Yes, I can hear you fine, thanks.

12           MS. MORABITO:  Thank you, Your Honor.  Mr.

13   Polkowitz is also on the phone as well with me today.  Your

14   Honor, as you know, we filed a joinder to the Debtor's

15   objection to the substantial contribution application of

16   Pearl Global, and that can be found at Docket Number 9235.

17   And while we share many of the arguments you heard already

18   this morning by Mr. Singh as to why we believe this

19   application should be denied, and I'll try not to repeat any

20   of those, there are a few key points that the administrative

21   expense claims representative would like to make.

22           As Your Honor may recall, a significant and very

23   important part of the Administrative Expense Claims Consent

24   Program was something that was very heavily negotiated with

25   both the Debtors and the UCC prior to plan confirmation, was

Page 52

1    the requirement of the appointment of the admin

2    representative.  And it was important because he was

3    mandated with completing certain things that were set forth

4    in paragraph 52A7 and 52B of the confirmation order.

5              And Your Honor may recall because there was some

6    colloquy back and forth with Your Honor and myself about

7    those duties, and part of those were that the obligation of

8    the admin representative was to assist with the review and

9    analysis of the claims, the settlements and related

10   litigation.  And he was tasked to do that to ensure both

11   fairness in the process but also to help maximize the value

12   of the Debtor's estates.

13             And part of that was to ensure that the

14   administrative creditors, who agreed to accept less than the

15   100 cents on the dollar as part of that admin expense

16   program, was ultimately paid; and, equally important, to

17   help push this case to go effective as expeditiously as

18   possible.

19             Mr. Polkowitz was selected as the admin expense

20   claim representative on March 13th, so roughly about 10

21   months ago.  And as you heard earlier, in the short time and

22   through the hard work of Mr. Polkowitz, the UCC, and the

23   Debtors and others, many matters have been settled and two

24   significant distributions have been made to date to those

25   admin creditors who opted into the settlement program.

Page 53

1          That said, Your Honor, it is not lost on us to

2    spend over a year now since the plan was confirmed and those

3    same admin creditors have received less than 30 percent of

4    their allowed admin claim.  And, frankly, as you heard from

5    the Debtors themselves, it's unclear when and if another

6    distribution is forthcoming and when and if this plan will

7    go effective.

8          That said, we are optimistic about the plan going

9    effective.  We do think it's going to create -- it's going

10   to require creative hard work on the part of everybody

11   involved.  We continue to work closely with the Debtors and

12   the UCC and many admin creditors have reached out to us

13   throughout this process.

14         But this is why this is so important.  Like any

15   claim, seeking a priority status like what is being sought

16   here, this application of Pearl that's before the Court

17   needs to be carefully scrutinized.

18         As noted in the objection in both of the joinders

19   as well as the oral arguments and comments that the Court

20   made today, Mr. Polkowitz does not believe that Pearl has

21   met its burden to satisfy the stringent standard for relief

22   being sought.  And, in fact, we think the record

23   demonstrates that Pearl has failed to show that it has made

24   a direct substantial contribution to the Debtor's estate.

25   It would warrant it receiving a priority claim in the form

Page 54

1    of a substantial contribution.

2            Your Honor, on a personal level, I'm very fond of

3    Mr. Wander and certainly the passion he's shown in this

4    case.  I've gotten to know him quite well over the past year

5    and a half and I've been involved personally in the

6    negotiations with the Debtors, the UCC and many admin

7    creditors leading up to plan confirmation.

8            But when you read through the plan confirmation

9    transcript carefully and you look at his two declarations

10   that he filed, one for his application and one for his

11   reply, by his own admission, his client stopped being a

12   constructive part of a global solution almost a month before

13   plan confirmation.

14           And Pearl argued against both confirmation of the

15   plan and the Administrative Expense Claims Consent Program,

16   and that cost the estate significant dollars.  Pearl was not

17   left at the altar while some backdoor deal was cut.

18           But, rather, Pearl and Mr. Wander consciously made

19   the decision to not engage in any meaningful settlement

20   discussion that they felt did not give Pearl a homerun type

21   scenario.

22           Well, nobody in this case got a homerun.  In fact,

23   most everybody involved here left significant value on the

24   table and were forced to make concessions that they did not

25   want to make for the greater good of all the creditors in

1    this case.  And maybe that's why it as a good settlement in

2    the end and ultimately the Court approved it, but the Court

3    only approved it after the Court added further value to the

4    program.  It wasn't added by Pearl.

5         The ad hoc vendor group -- you asked the question

6    earlier about whether or not the ad hoc vendor group was

7    involved in the negotiations with Pearl and that we were

8    aware of the negotiations that were being made allegedly on

9    behalf of all the admin creditors.  We were not.

10        The $1 million, in our view, was done, when you

11   look at the transcript, at the urging of the Court.  And

12   that extra $1 million was a timing issue.  There's no cap on

13   the amount of money that would be paid to the admin

14   creditors except for the 80 and 75 percent case that was

15   negotiated.

16        In other words, that $20 million that became $21

17   million was not a settlement amount, it was not a cap that

18   was ultimately going to be distributed; it was just how much

19   was going to be distributed in the first interim

20   distribution before there were subsequent distributions.

21   And as Mr. Singh pointed out, it is a timing issue because

22   it was ultimately distributed and would have bene in the

23   second distribution.

24        So, in sum, Your Honor, while the administrative

25   expense claims representative will continue to look at every

Page 56

1   claim, as he has done so far, including any future

2   application for substantial contributions on a case-by-case

3   basis and, frankly, believes in certain circumstances

4   substantial contribution in this case may be warranted, he

5   does not feel that the facts in record before this Court

6   demonstrate that Pearl meets the stringent requirements of

7   Section 503(b)(3)(d) and 503(b)(4) of the Bankruptcy Code.

8   Pearl did not engage in extraordinary actions which led

9   directly to tangible benefits to the creditors, Debtors or

10  the estate.  As such, we believe the Pearl application

11  should be denied.

12          Your Honor, I have nothing further to add but I'm

13  happy to answer any questions you might have.

14          THE COURT:  No, that's fine, thanks.

15          MS. MORABITO:  Thank you, Your Honor.

16          THE COURT:  Okay, anyone else?  All right.  Mr.

17  Wander, do you have anything to say in reply or in response?

18          MR. WANDER:  Yes, Your Honor, thank you.  David

19  Wander of Davidoff Hutcher & Citron, counsel for Pearl

20  Global.  Your Honor, the Debtor and Ms. Morabito just made

21  some statements on the record that are not in any papers and

22  so I'd like to address those comments and tell Your Honor

23  what really happened with the negotiations with my group and

24  why the Debtor stopped negotiating with me and my group.

25  And here's really the overview, and it really gets down to

Page 57

1     world imports.

2           And what I'm going to touch on on this will also

3     address the comment by Mr. Singh about the Restructuring

4     Committee being a fiduciary and looking out for all

5     creditors including administrative creditors.

6           So, here's what happened.  After the hearing on

7     the 503(b)(1) motion, I believe it was either April 21st or

8     May 21st, and that involved several other attorneys -- the

9     issue of World Imports was not before the Court because

10    that's 503(b)(9), as everyone knows, and we were litigating

11    503(b)(1) and goods that were ordered prepetition and

12    delivered post-petition.

13          And in the colloquy between Your Honor and

14    counsel, Your Honor made some comments about Your Honor's

15    view on the world import's decision.  And Your Honor's

16    comments indicated that you looked favorably upon the lower

17    court decision that was reversed by the Third Circuit.

18          And so what happened after that is the Debtors --

19    and I believe with the Restructuring Committee -- they

20    decided that the best way they could address the

21    administrative insolvency issue was to attack the foreign

22    vendor claims on the World Imports issue and take a contrary

23    position.  And that actually, I submit based upon my

24    discussions with the Debtor, and the committee, and the

25    meetings I attended, it was no secret that their way of

Page 58

1    achieving an effective date was to object to all of the

2    World Import's vendors claims.  And it was a significant

3    amount of money.

4              Now, the proposal that I had that I went over with

5    the committee and that then, when I met with the Debtor and

6    the committee and Foley Lardner, I made it clear that World

7    Imports was an issue that needed to be resolved.  And that's

8    where the Foley group and my group, our interests were not

9    aligned.

10             Because the Foley group were, I believe, hedge

11   funds, claims traders that, you know -- people involved in

12   the large bankruptcies all know of Lightbox, and Hanes, and

13   Cherokee and they purchased non-foreign vendor trade claims.

14             So, for the Foley group, supporting the Debtor and

15   the committee's attack on the foreign vendors made sense to

16   them.  What I was suggesting is why don't all administrative

17   creditors take a 25 percent haircut, agree to support the

18   plan going effective, even though the admins wouldn't be

19   paid 100 cents, and give them whatever cash is available?

20             And had that been done, the plan would've been

21   effective and you would've had a lot less litigation.  But

22   it would've meant that the Debtors and the committee

23   would've had to give up on their attempts -- I think it was

24   like a 30 or $40 million number that they thought they could

25   knock down on the administrative foreign vendors.

1          And that's why I was no longer given a seat at the

2    table, and I allude to this or I mention this, Judge, in

3    Footnote 2 of the reply by Pearl Global.  What was good for

4    the Foley group was not necessarily good for other

5    administrative creditors, especially the foreign vendors.

6          So, that's why the Debtor, and committee, and the

7    Foley group teamed up.  It was not because I couldn't bind

8    my group.  Everybody knew that my group was different from

9    the Foley group.  The Foley firm had been retained by the

10   Lightbox, Cherokee and Hanes.  I believe they filed in 2019.

11   They're a formal group or committee, and they were being

12   paid by their client, presumably.

13         I had organized a group of foreign vendors and

14   some other administrative creditors, and many of them had

15   their counsel.

16         So, I want to be clear that that's why the

17   administrative foreign vendor group that I was representing

18   was no longer included.  And that's how they went forward

19   with the plan.

20         Now, one of the things the cases state -- this is

21   in Bayou and the other cases when they talk about

22   substantial contribution -- one of the things they mention

23   is a creditor who objects to a plan so that a better plan

24   can be confirmed.  And that is what happened here.

25         Pearl Global objected to the plan vigorously.  And

Page 60

1    I put on the record all of Pearl's objections.  And Pearl's

2    objections were the objections by all of the nonprofessional

3    administrative creditors.  Not enough cash was being paid to

4    the nonprofessionals.  Not wasn't being paid to Pearl.

5    Because I took a position that a rising tide lifts all

6    boats.  So, if I could do better for all of the

7    administrative creditors, that would help Pearl.

8           And so I argued to give more cash to the

9    administrative creditors.  I said the non-opt out -- no, I

10   said, in the beginning, the consent plan would bind

11   creditors who didn't opt out.  And I said a lot of them are

12   foreign vendors, they don't have lawyers.  I don't know if I

13   mentioned that they may not speak English but probably

14   that's the case.  And I made that point.  And that

15   subsequently was changed.

16          And I'm not taking sole credit for the changes to

17   the plan.  Your Honor identified some deficiencies in the

18   original settlement program.  That was only announced two

19   days or a day and a half before the confirmation hearing.

20          So, I'm checking my notes, Your Honor.  I just

21   want to make sure that I responded to the different points

22   and that was that Mr. Singh said I had no group that I could

23   bind; Ms. Morabito saying I was no longer involved in the

24   negotiations a few months before confirmation.

25          Actually, it was only about two weeks before the

Page 61

1    confirmation hearing that things split up and the Foley

2    group then reached their construct.

3              I didn't support the Administrative Consent

4    Program and that was clear.  But through my conduct at the

5    confirmation hearing, I submit, you ended up with, albeit a

6    flawed plan, it was a better plan.  And I submit that this

7    timing issue and the tweaking, it's all a red herring.

8    Because the million dollars that I included out of purely

9    altruistic motives that while I was settling Pearl Global's

10   claim, I was still doing whatever I could for all the other

11   creditors.  And that, to me, should satisfy the standard of

12   a substantial contribution of extraordinary effort.

13             Now, in preparing for today's hearing and going on

14   the docket, I saw that there's another fee application next

15   month when the professionals are going to be asking for, in

16   round numbers, Judge, another $7 million.

17             So, one must wonder why all of this objection to a

18   $215,000 free request for someone who, in addition to

19   settling their client's claim, got a million dollars for all

20   the other creditors.  They should be applauding what I did,

21   but for the fact I was a thorn in their side.

22             I objected to what they were doing.  I've been

23   critical of their conduct.  So, of course they're going to

24   object to my amazingly de minimis substantial fee

25   application. I mean, it's a rounding error on their fees.

Page 62

1            And I submit that what I did in this case -- all

2    Pearl Global.  And the record is clear that I was arguing,

3    advocating zealously for many months before confirmation and

4    during confirmation, not just for Pearl but for all of the -

5    -

6            THE COURT:  All right, Mr. Wander, I think we're

7    going over old ground and I don't want to interrogate you

8    again as to your authority, so I think we should wrap this

9    up.

10            MR. WANDER:  Your Honor, I just wrapped up.

11            THE COURT:  Okay.

12            MR. WANDER:  That was what I wanted to say, that I

13    advocated for all of the non-professional administrative

14    creditors.  I think that was extraordinary conduct.  The fee

15    application, the fee aspect is very reasonable, and I

16    submit, based on the record with the undisputed facts

17    basically, that the application should be granted.

18            THE COURT:  Okay, all right.  I have before me a

19    motion by Pearl Global Industries Ltd for allowance and

20    payment of a claim under Section 503(b)(3)(d) and 503(b)(4),

21    which provide that an administrative expense can include the

22    actual and necessary expenses on your three; it's other than

23    compensation or reimbursement specified in paragraph (4) of

24    the subsection.

25            Paragraph (4) refers to compensation for

Page 63

1    professional services and reimbursement for professionals of

2    Section 503(b) incurred by, in subsection (d), a creditor,

3    which Pearl Global is, in making a substantial contribution

4    in a case under Chapter 11 of this title.

5            And then again, Section 503(b)(4) provides for the

6    reasonable compensation of professional services, for

7    professional services rendered by an attorney whose expense

8    is allowable under subparagraph (d) of paragraph (3) of this

9    subsection, based on the time, the nature, the extent of the

10   value of such services and the cost of comparable services

11   other than in a case under this title, and reimbursement of

12   actual necessary expenses incurred by such attorney or

13   accountant.

14           The case law under Section 503(b)(3) and (4) is,

15   in this district and in the Second Circuit generally, well

16   developed at this point.  It's well discussed in a fairly

17   recent case by Judge Lord out of the Eastern District of New

18   York, In re. Hancock St., SML LLC, 2016 B.R. Lexis 3828

19   (Bankr. E.D.N.Y., Oct. 25, 2016).

20           There, Judge Lord notes, first, that a party

21   seeking administrative expense under -- or seeking allowance

22   and payment of administrative expenses under that section

23   must prove substantial contribution by a preponderance of

24   the evidence; that mere conclusory statements regarding

25   one's substantial contribution are insufficient for such

Page 64

1    involvement to be deemed compensable under the section; and

2    that the circumstances entailing a party to a substantial

3    contribution expense are case specific, fact intensive, and

4    unusual.  That's at page 19 of the decision.

5           She also states that courts in this circuit have

6    considered the following factors in determining whether a

7    party has made a substantial contribution under Section

8    503(b): one, whether the services benefited the estate

9    itself or all of the parties in the bankruptcy case; two,

10   whether the service resulted in a direct, significant, and

11   demonstratively positive benefit for the estate, and I will

12   add that most other courts have added the word net between

13   positive and benefit, i.e., positive net benefit for the

14   estate; and three, whether the services duplicated the

15   efforts of others, citing Bedford JV, LLC v. Sky Lofts, LLC,

16   2013 U.S. District Lexis 125965 (E.D.N.Y., Sept. 3, 2013).

17          She further notes, and this is consistent with the

18   case law including the cases that she cites, the substantial

19   contribution must be more than an incidental one arising

20   from activities the applicant has pursued in protecting his

21   or her own interest, citing In re. Dana Corp., 390 B.R. 100,

22   108 (Bankr. S.D.N.Y. 2008).  She goes further, again citing

23   the Dana case, to say creditors are presumed to act in their

24   own interest and thus, face an especially difficult burden

25   in meeting the substantial contribution test,

Page 65

1    notwithstanding the fact that mere self-interest in and of

2    itself does not preclude reimbursement.

3              Nevertheless, as she notes correctly, compensation

4    under Section 503 is, quote, "rare" close quote, and

5    requires, quote, "extraordinary circumstances when the

6    creditors involvement truly enhances the administration of

7    the estate," closed quote.  See also the cases cited for

8    that proposition in the opinion which carries over to page

9    20.

10             In light of all of those requirements, Judge Lord

11   notes further, cases finding that a creditor made a

12   substantial contribution generally involve a creditor

13   playing a leadership role that would normally be expected of

14   an estate compensated professional.  This includes

15   activities such as active facilitation and negotiation of a

16   confirmed plan or efforts to impose a plan -- or oppose a

17   plan that resulted in a more favorable one.

18             In that decision, the movant who represented a

19   creditor in the case like the movant here, alleged in that

20   his legal services in being involved in negotiation of a

21   confirmed plan and opposing the original plan that was filed

22   in support of a more favorable one warranted the admission -

23   - I'm sorry -- the allowance of a substantial contribution

24   claim.

25             Consistent with most cases that deny substantial

Page 66

1    contribution claims under similar facts -- in fact, frankly,

2    I think all cases -- where the movant was not the proponent

3    or draftsperson or a prime mover with respect to a plan or

4    the objections to a plan in which its objections resume

5    after adopted largely wholesale in the new plan.  Judge Lord

6    in the Hancock case found to the contrary, that the movant

7    had not done enough to warrant a substantial contribution

8    allowance.  See also In re. Westinghouse Electric Co., LLC,

9    2019 B.R. Lexis 2981 (Bankr. S.D.N.Y. Sept. 19, 2019).

10        The decision in In re. Bayou Group, LLC, 431 B.R.

11   549 (Bankr. S.D.N.Y. 2010) echoes substantially all of the

12   foregoing standards.  In that case, I note that certain

13   aspects of the term "substantial contribution" are well

14   recognized, i.e., that it is factual with the movant bearing

15   the burden by the preponderance of the evidence.

16        Moreover, that provisions establishing

17   administrative expenses should be construed narrowly and

18   administrative expenses kept to a minimum, citing among

19   other cases, In re. United States Lines, Inc., 103 B.R. 427,

20   429 (Bankr. S.D.N.Y. 1989), and Dana Corp. at 390 B.R. 108.

21        And then in the Bayou case, I went on to hold, or

22   state rather, at page 560:  "Accordingly, the integrity of

23   Section 503(b) can only be maintained by strictly limiting

24   compensation to extraordinary creditor actions which lead

25   directly to tangible benefits to the creditors, debtor or

Page 67

1   estate," citing among other case, In re. Best Products Co.,

2   Inc., 173 B.R. 862, 866 (Bankr. S.D.N.Y. 1994) and In re.

3   Granite Partners, 213 B.R. 440, 445 (Bankr. S.D.N.Y. 1997).

4         The Bayou case goes on to state at page 561:  "The

5   problem with all of these synonyms, i.e., concrete benefit,

6   direct significant, and demonstrative positive benefit, and

7   a contribution of this considerable in amount value or work,

8   in each case of debtor's estate, the creditors and, to the

9   extent relevant, the stockholders, is that they do little to

10   shed any real light on how to apply the direct benefit rule

11   in practice."

12         The decision goes on to note, however, that the

13   case law has narrowed the imprecision arising from the

14   statute's language to qualify the direct benefit must be a

15   substantial net benefit.  A direct benefit also cannot be

16   established merely by a movant's extensive participation in

17   the case or be based on services that duplicated those of

18   professionals already compensated by the estate, such as

19   counsel for the debtor or an official committee.

20         And again, as Judge Lord noted, the creditors face

21   an especially difficult burden in passing the substantial

22   contribution test since they are presumed to act primarily

23   for their own interests, and efforts undertaken by creditors

24   solely to further their own self-interests are not

25   compensable under Section 503(b), and services calculated

Page 68

1    primarily to benefit the client do not justify an award,

2    even if they also confer an indirect benefit on the estate.

3           In light of all of the foregoing, Bayou also notes

4    at page 561 that it is -- 503(b) awards are reserved for

5    those rare and extraordinary circumstances where the

6    creditors involvement truly enhances the administration of

7    the estate.  So I think again, Dana Corp., as well as two

8    other cases from the Southern District of New York.

9           The opinion goes on to state:  Thus, Section

10   503(b)(3)(d) and (b)(4) may not be used to buy off a pest

11   who did little, if anything, to advance, and in fact may

12   have impeded, the proper administration of the case, such as

13   where it is alleged that a settlement benefited not only the

14   creditor, but also others similarly situated, or where the

15   creditor, as was the case in Best Products Company, or the

16   creditor group was throughout the case merely an advocate

17   for its position on some issues of which it prevailed, on

18   some it didn't, but in all of the cases was looking after

19   its own interests.

20          In sum, again consistent with Judge Lord's opinion

21   in the Hancock St. case, Bayou states, "The majority of

22   cases allowing creditors substantial contribution claims

23   under Sections 503(b)(3)(d) and (b)(4) have therefore found

24   that the creditor played a leadership role that normally

25   would be expected of an estate compensated professional but

1   was not so performed."

2          Most have, consistent with pre-bankruptcy code

3   practice, involved a creditor who actively facilitated the

4   negotiation and successful confirmation of the Chapter 11

5   plan or in opposing a plan brought about the confirmation of

6   a more favorable one.  And even in other contexts, the

7   movant has performed functions that normally would have been

8   undertaken by estate compensated professionals when it had

9   to be performed because estate compensated professionals

10  were not doing their jobs.

11         In the Bayou case, I awarded a substantial

12  contribution claim for creditors who clearly acted on behalf

13  of all creditors in the case and performed an important

14  administrative role, where the debtor was, in essence, non-

15  existent because it had engaged in fraud and, therefore, the

16  movants assumed the mantle of, in large measure, the

17  professionals for the debtor in moving forward with the

18  plan.

19         As counsel for the debtors here have observed, a

20  contrary fact pattern appeared at In re. Best Products Co.,

21  Inc., 173 B.R. at 866, where the Court found that the mere

22  participation in a case which resulted in some results that

23  could arguably be viewed as favorable not only to the

24  creditors who made the motion, but parties-in-interest was

25  insufficient to warrant a substantial contribution aware,

1    given all of the foregoing requirements.

2         A similar point is made in In re. Brooke Corp., B-

3    R-O-O-K-E, 433 B.R. 856, 873 (Bankr. D. Kansas, Jan. 5,

4    2011), in contrasting the facts set forth in that case from

5    the facts in the Bayou case, and noting that in Bayou, the

6    committee expressly took upon itself the representation of

7    all the debtors' creditors.  In these cases, the movant

8    represented only two of the banks who held Brooke's

9    securitizations.  See also with regard to the general

10   standard, as well as how it is applied, In re. AMR Corp.,

11   2014 B.R. Lexis 3298 at pages 6 through 10, (Bankr. S.D.N.Y.

12   Aug. 4, 2014).

13        Here, it is clear to me, and frankly not even a

14   close call, that the movant has not carried its burden to

15   show an entitlement to allowance of a substantial

16   contribution claim under Sections 503(b)(3)(d) and (4).

17        It is asserted in the motion and supporting

18   affidavit, as well as the reply and reply affidavit, that

19   counsel for the movant organized an ad hoc group of

20   similarly situated administrative expense claimants and, for

21   their benefit, acted in these Chapter 11 cases to represent

22   the interests of the group in negotiations and thereafter in

23   objecting to the debtors' proposed Chapter 11 plan, which

24   included in it a proposed global administrative expense

25   claim procedure, and then negotiated a settlement thereafter

1    which modified that procedure in three respects, and in each

2    case, which the movant contends, provided a substantial

3    direct benefit for purposes of Section 503(b)(3)(d) and

4    (b)(4).

5           There are several problems with this argument.

6    First, the claimed benefit, or the benefit that is claimed

7    to have been conferred by the movant was not to all

8    creditors or to the debtors' estates in general or, frankly,

9    to the administration of the case and the case law and the

10   statute's own reference to the administration of the case

11   generally requires.

12          Instead, the claimed benefit was to a subset of

13   the administrative expense claimants in the case, namely

14   certain unidentified foreign vendors among or perhaps all of

15   the foreign vendors that had submitted administrative

16   expense claims in the case.

17          Moreover, it appears clear to me that the asserted

18   or the claimed benefit conferred was not substantial and

19   direct by any means or the result of the movant's efforts.

20   Three claimed benefits conferred are asserted: first, the

21   settlement negotiated on behalf of Pearl Global, in addition

22   to fixing Pearl Global's administrative expense claim and

23   its preference exposure under Section 547 of the Bankruptcy

24   Code provided for an increase by $1 million of the amount to

25   be paid in the initial distribution to administrative

Page 72

1    expense creditors who opted in to the administrative expense

2    claims settlement, a settlement that the claimant Pearl

3    Global had originally opposed but accepted as part of its

4    own settlement.

5             It is clear to me from the record in this case

6    that under the terms of the plan and the administrative

7    expense claims resolution settlement, that that extra $1

8    million would have been paid in not the first but the second

9    distribution, which was made approximately eight months

10   later under the administrative expense settlement negotiated

11   not by Pearl Global by its counsel, but instead by the ad

12   hoc committee of administrative expense creditors

13   represented by Foley & Lardner.

14             So the benefit to their debt was claimed here is

15   merely a benefit of an acceleration of $1 million payment by

16   eight months, the interest on which is considerably less

17   than, at any reasonable rate, the amount of the

18   administrative expense claim asserted here, which is in

19   excess of $217,000.

20             It is additionally alleged that Pearl Global and

21   its counsel had a direct role and the Court's having the

22   escrow for professional fees under the cash collateral and

23   DIP order reduced by $9 million, with that amount of money

24   instead being put into general funds for the performance of

25   the administrative expense program.

Page 73

1              It is clear to me from my recollections of the

2     confirmation hearing, as well as my review of the transcript

3     of that hearing, that, in fact, in keeping with my duties

4     under Section 1129(a) of the Bankruptcy Code, and more

5     specifically 1129(a)(9)(A) and 1129(a)(11), that for the

6     plan to satisfy the confirmation requirements, based on the

7     entire record for me, very little of which, if any, was

8     developed by Pearl Global, the plan required that amount of

9     money to go into general funds up front before I would enter

10    the order confirming the plan, albeit that the escrow was

11    one that is adjustable in the first place and would become

12    available later in any event.

13             A similar observation can be made with respect to

14    the third and last claimed benefit to have been conferred by

15    Pearl Global and its counsel, which was an increase in the

16    percentage distribution on account of administrative expense

17    claims under the administrative expense program in the plan

18    for so-called non-optout administrative expense creditors,

19    that is creditors who neither opted in to the administrative

20    expense program or affirmatively opted out of it.  This was,

21    therefore, a third group or a third subclass of

22    administrative expense creditors.  Originally, they would

23    receive the same 75 percent that the opt-in group received.

24             Simply based on my review of the plan and cases

25    where there were similar programs, such as the Toys 'R Us

1    plan, I did not see a logical basis for the same percentage

2    treatment or same percentage cap for those who opted in and

3    those who did nothing.  As a result of my comments at the

4    confirmation hearing, the cap for the non-optout class was

5    raised to 80 percent.

6            Again, I conclude based on the fact specific

7    analysis that is required that the actual and demonstrable

8    benefit to the debtors' estate, creditors -- and, of course,

9    not here -- but to the extent relevant, stockholders, and

10   that benefit being a substantial net benefit directly

11   attributable to Pearl Global and its counsels' actions

12   simply is not going to establish with regard to any of the

13   three claimed benefits provided here, even if I were to

14   conclude that a benefit to a subset of a class of

15   administrative expense creditors would satisfy the statute.

16           I will note that Pearl Global actually negotiated

17   the $1 million distribution as the advance distribution for

18   a subset of the subset, i.e., those who opted in to the

19   settlement, so it is even a more narrowly tailored benefit

20   and, therefore, even more remote from the type of benefit

21   that the case law and I believe congress contemplated in

22   these two sections of the Bankruptcy Code.

23           I think it's also important to note the context of

24   Pearl Global's efforts in this case, as asserted by it, to

25   be compensable under Section 503(b)(3)(d) and (b)(4).  Under

1    Section 1129(9)(a) of the Bankruptcy Code, unless an

2    administrative expense creditor consents to a different

3    treatment, the plan must pay all administrative expense

4    claims in full on the effective date.  That means that any

5    administrative expense creditor with a material claim has

6    considerable leverage over the confirmation process, i.e.,

7    it must be paid in full unless it agrees otherwise.  Each

8    creditor, therefore, has its own mini-veto over confirmation

9    if it appears that the debtor may not be able, under

10   reasonable projections, to pay all allowable administrative

11   expense claims in full on confirmation.

12           Counsel for Pearl Global noted during oral

13   argument that he viewed a rising tide lifts all boats and,

14   therefore, he was effectively negotiating for all

15   administrative expense creditors when seeking more money

16   from the debtor than was set forth in the administrative

17   claims process or procedure.

18           But, of course, at the same time since the debtor

19   cannot discriminate unless the creditor consents to such

20   discrimination under 1129(9)(a), raising the interests of

21   all creditors is, in fact, raising one's own interest in

22   this context and, in fact, increasing arguably the leverage

23   that one has, which to me means that the high burden to show

24   that Pearl Global was actually acting in the interests of

25   all creditors or even a subset of all creditors has not been

Page 76

1    carried here.

2            Finally, the record is clear that Pearl Vision

3    (sic) really was not acting formally for all creditors; it

4    did not assume that mantle.  It never represented anyone, or

5    its counsel never represented anyone more than it and the

6    other three creditors that it appeared on behalf of,

7    including, as stated in the transcript of the confirmation

8    hearing.  Indeed, other parties to this so-called group that

9    it organized appeared by their own counsel at the

10   confirmation hearing and continued to oppose confirmation

11   even after Pearl Vision (sic) settled.

12           It is clear for me that it did not have any

13   ability to bind any other creditor.  There's no formal

14   organizational documents referred to for the so-called ad

15   hoc group, Pearl Global did not speak for the so-called ad

16   hoc group, its counsel did not file the statement required

17   to be filed when representing such a group under Bankruptcy

18   Rule 2019, and it was not acting as a fiduciary for any of

19   those parties, not did it actually engage in negotiations in

20   which it kept any of those parties informed with respect to

21   the negotiations that led to its actual settlement, i.e.,

22   between the October 3 hearing and the adjourned confirmation

23   hearing that resumed on October 7.

24           It simply did not play the leadership role in

25   these cases that is generally required by the case law, nor

1    did it provide any contribution to the overall estate in

2    those rare cases, such as the McLean Industries case that I

3    previously cited, will at times justify an award under

4    Section 503(b)(1).  In other words, notwithstanding the

5    references repeatedly to its group or my group, there was no

6    such group that could have served as the fulcrum point for

7    negotiations, in contrast to the group represented by Foley

8    & Lardner and actually acting as a group.

9           So taking into account all of the foregoing and

10   recognizing that there's no direct significant and

11   demonstrable benefit to the estate, that the benefit exceeds

12   the costs of either the award itself or the costs to the

13   estate of getting the asserted benefit, that the party acted

14   primarily for its own benefit and not for the benefit of all

15   parties in the case or the estate or even to further the

16   administration of the case by furthering a global settlement

17   that would clearly bind all parties or at least form a

18   framework for binding all parties, and that it does not

19   appear to me that Pearl Global did all of this except on its

20   own behalf and, therefore, did not have and would not have

21   done this unless it had an expectation of reimbursement by

22   the estate, I conclude that the motion should be denied.

23          In addition to all the case law I've cited, those

24   factors all come out of the discussion of this section

25   generally in "Collier on Bankruptcy" at paragraphs 4301[5] -

Page 78

1    - that's brackets 5, bracket [a] bracket, and bracket [b]

2    bracket 16th Edition 2021.

3            Now, I should be clear, although I think this is

4    implicit, I am dealing solely with the right to a

5    substantial contribution claim under Section 503(b).  I am

6    not making any comment on the quality of Davidoff Hutcher &

7    Citron's work on behalf of its clients, Pearl Global and

8    others in these cases.  I am assuming that it has been paid

9    by them and that they are happy with its work because they

10   obtained a settlement that they agreed to.  But that is not

11   -- doing good work in a case, in other words, is not a basis

12   for charging the debtors' estate for that work.

13           Chapter 11 is a multiparty process.  I assume that

14   most law firms and lawyers who appear in Chapter 11 cases

15   will be doing good work for their clients, and that includes

16   taking actions that may result in improvements in the case

17   for not only their clients, but other clients, as well as at

18   times taking actions where they are ruled against.

19           But the standard here is far higher than that type

20   of work because in general, it's an extraordinary thing to

21   award a creditor or a firm administrative expense allowance

22   under Sections 503(b)(3)(d) and (4).

23           So I'll ask the debtors' counsel to submit an

24   order denying the motion.  You don't have to formally settle

25   it on Mr. Wander, but you should copy him, as well as

Page 79

1    counsel for the administrative expense claims representative

2    and the committee when you email it to chambers.

3         MR. SINGH:  Thank you, Your Honor.  We will do so.

4         THE COURT:  Okay.  I think that concludes the

5    agenda for today.

6         MR. SINGH:  That's right, Your Honor, that's all

7    we have on.  I did want to just go back and answer your -- I

8    did get an answer on your open question from the status

9    report regarding the other expense line item.  I did get an

10   email from Mr. Murphy.

11        Your Honor, a couple of things go into this

12   category.  One sort of relates to remaining real estate that

13   Sears continues to own, so insurance, real estate taxes and

14   the like.

15        There's also outstanding OCP costs that were

16   incurred during the case that still haven't been paid and

17   other sort of non- -- sort of estate retained, formally

18   retained professionals that were either ordinary course or,

19   you know, vendors and the like that continue to have some

20   obligations.

21        We've also got reserves or estimated amounts for

22   the administrative claims representative and its counsel,

23   and there's some vendor A/P remaining for the systems that,

24   you know, the estate continues to use, so that's a combined

25   line item for those various ongoing costs.

1          And again, it's projected out for a year only if

2     we go that long, but it's not -- just to show you what it

3     would be.  But obviously, if the case ends sooner, the

4     number would go down.

5          THE COURT:  Okay.  All right, thank you.  Okay,

6     very well.  I'll conclude the hearing then and hang up.

7     Thanks, everyone.

8          MR. SINGH:  Thank you, Your Honor.

9          (Whereupon these proceedings were concluded at

10    12:16 PM)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 81

1                     C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    Sonya Ledanski          Digitally signed by Sonya Ledanski Hyde
                             DN: cn=Sonya Ledanski Hyde, o, ou,
                             email=digital@veritext.com, c=US
7    Hyde                    Date: 2021.01.25 16:23:10 -05'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  January 25, 2021

| & | | | |
|---|---|---|---|
| **&**   5:3,10 26:11 36:6,16 51:8 56:19 72:13 77:8 78:6 | **14.1**   19:17<br>**15**   15:11,18,19<br>**16.8**   13:8,10,23,24 14:12<br>**16th**   78:2<br>**173**   67:2 69:21 | **213**   67:3<br>**215**   39:22<br>**215,000**   61:18<br>**217,000**   39:22 72:19 | **4,000**   8:4<br>**4.1**   9:24 10:9<br>**4.5**   39:24<br>**4.7**   19:21<br>**40**   8:23 21:9 26:19 58:24 |

| 1 | | | |
|---|---|---|---|
| **1**   13:16 30:11 43:12 49:20,21 55:10,12 57:7,11 71:24 72:7,15 74:17 77:4<br>**1,100**   21:14<br>**1,700**   8:8<br>**1.3**   8:5<br>**10**   13:16,21,24 14:5,7,8 29:7,12 29:19 43:2 52:20 70:11<br>**100**   9:2 52:15 58:19 64:21<br>**10153**   5:13<br>**10158**   5:6<br>**103**   66:19<br>**10601**   1:15<br>**108**   64:22 66:20<br>**109.1**   15:5<br>**10:00**   2:2<br>**10:09**   1:18<br>**11**   8:10 19:11 30:17 50:7 63:4 69:4 70:21,23 73:5 78:13,14<br>**11.4.**   10:21<br>**1129**   73:4,5,5 75:1 75:20<br>**11501**   81:23<br>**12**   41:17 43:5<br>**125965**   64:16<br>**12:16**   80:10<br>**13.1**   19:16<br>**130**   38:20<br>**13th**   52:20 | **177**   11:5<br>**18**   15:25<br>**18-23538**   1:3<br>**18.4**   28:6<br>**18.8**   12:13<br>**19**   12:10 14:25 64:4 66:9<br>**19.4.**   28:7<br>**1989**   66:20<br>**1994**   67:2<br>**1997**   67:3 | **21st**   57:7,8<br>**248**   1:14<br>**25**   9:6 13:13 16:25 43:1 58:17 63:19 81:25<br>**256**   11:19<br>**27**   17:20<br>**27.5**   16:9,23 18:21<br>**278**   11:18<br>**28.3**   9:4<br>**2981**   66:9 | **42.1.**   11:25<br>**427**   66:19<br>**429**   66:20<br>**4301**   77:25<br>**431**   66:10<br>**433**   70:3<br>**440**   67:3<br>**445**   67:3<br>**49**   8:10<br>**49.5**   29:24 |

| 2 | | | |
|---|---|---|---|
| | **2**   7:14 8:4 18:18 41:9 42:10 59:3<br>**2,000**   39:23<br>**2.5**   26:20 30:6 39:21<br>**2.8**   10:22<br>**20**   14:11 30:5 55:16 65:9<br>**20.5**   14:23<br>**200**   29:24 39:15<br>**2008**   64:22<br>**2010**   66:11<br>**2011**   70:4<br>**2013**   64:16,16<br>**2014**   70:11,12<br>**2016**   63:18,19<br>**2019**   35:9 36:1 40:11 59:10 66:9 66:9 76:18<br>**2021**   1:17 2:2 78:2 81:25<br>**21**   1:17 2:2 12:8 55:16<br>**210**   11:18 | | |

| 3 | | | |
|---|---|---|---|
| | **3**   2:13,20 3:21 12:5 15:10,14 25:1,19 41:10 42:9 56:7 62:20 63:8,14 64:16 68:10,23 70:16 71:3 74:25 76:22 78:22<br>**3.5**   19:17<br>**30**   53:3 58:24<br>**300**   1:14 81:22<br>**30th**   19:4<br>**3298**   70:11<br>**330**   81:21<br>**35-40**   36:12<br>**3828**   63:18<br>**39.2**   13:8 14:21<br>**390**   64:21 66:20<br>**3rd**   5:5 | | |

| 4 | | | |
|---|---|---|---|
| | **4**   2:13,20 3:22 12:24 25:1,20 56:7 62:20,23,25 63:5,14 68:10,23 70:12,16 71:4 74:25 78:22 | | |

| 5 | | | |
|---|---|---|---|
| | | **5**   15:8 18:25 38:20 70:3 77:25 78:1<br>**50**   8:10 11:25 29:24 49:11<br>**503**   2:13,13,20,20 3:21,22 11:21,23 19:22 25:1,1,19 56:7,7 57:7,10,11 62:20,20 63:2,5 63:14 64:8 65:4 66:23 67:25 68:4 68:10,23 70:16 71:3 74:25 77:4 78:5,22<br>**52a7**   52:4<br>**52b**   52:4<br>**547**   71:23<br>**549**   66:11<br>**560**   66:22<br>**561**   67:4 68:4<br>**59.5**   8:24 | |

| 6 | | | |
|---|---|---|---|
| | | | **6**   11:10 19:1 21:22 70:11<br>**6.8.**   13:21 14:12 |

**60**   19:10
**600**   21:15
**605**   5:5
**69.9.**   16:4

**7**

**7**   43:22 61:16
76:23
**75**   8:18 48:10
55:14 73:23
**767**   5:12

**8**

**80**   8:18 48:10
55:14 74:5
**83**   11:23
**85**   15:6,7
**856**   70:3
**862**   67:2
**866**   67:2 69:21
**873**   70:3

**9**

**9**   11:21,23 19:21
19:22 28:23 29:2
29:7,11 30:1 41:1
41:2,14 42:14
49:7 57:10 72:23
73:5 75:1,20
**90**   9:7 11:23 15:7
**9130**   2:6,15,22 3:2
3:9,16,23 4:2
**9131**   2:6,22
**9132**   2:8
**9233**   3:4,8,16
**9234**   3:11
**9235**   3:17 51:16
**9243**   3:24
**9244**   4:4
**97.3.**   16:11
**99.3**   8:22

**a**

**a.m.**   2:2
**ability**   37:15
40:12 76:13

**able**   19:20,24 75:9
**absent**   26:24
**absolutely**   45:22
47:21
**accelerate**   16:16
18:6 23:2
**acceleration**   50:3
72:15
**accept**   37:15
52:14
**accepted**   72:3
**accepting**   45:17
**accompanying**
26:3
**account**   9:22 13:9
13:17,21 41:23
42:4,6,10,12,15
42:16,22,22 43:3
43:6,7,19,23
73:16 77:9
**accountant**   63:13
**accounts**   13:12
14:25 42:3,5
**accurate**   81:4
**achieving**   58:1
**act**   32:8 64:23
67:22
**acted**   69:12 70:21
77:13
**acting**   31:3 37:11
75:24 76:3,18
77:8
**actions**   33:13 46:8
50:5 56:8 66:24
74:11 78:16,18
**active**   65:15
**actively**   69:3
**activities**   64:20
65:15
**actual**   11:15 44:4
62:22 63:12 74:7
76:21

**actuals**   19:8 43:20
43:23
**ad**   33:23 34:16,25
35:5,10,17 36:18
38:1,2,5 40:21
55:5,6 70:19
72:11 76:14,15
**add**   56:12 64:12
**added**   29:2 48:6
55:3,4 64:12
**addition**   18:9
61:18 71:21 77:23
**additional**   12:25
19:25 28:23 30:6
30:6 42:14
**additionally**
72:20
**address**   30:16
40:25 56:22 57:3
57:20
**addressed**   32:24
33:19
**adjourned**   24:20
76:22
**adjustable**   73:11
**adjusted**   15:16,22
44:4
**admin**   24:3 35:5
52:1,8,15,19,25
53:3,4,12 54:6
55:9,13
**administered**
13:15
**administration**
14:6 50:1,6,16
65:6 68:6,12 71:9
71:10 77:16
**administrative**
2:10 3:13 7:18,21
8:3,7,15 9:14
10:24 11:24 12:6
13:11,19 14:9
15:5 16:14 17:12

18:4,5,13 21:10
23:1 25:25 26:18
27:1,3 29:23 30:3
31:24 33:15,17,25
34:8 37:1,5,7 39:9
39:18 41:7 42:23
43:8 45:11,21
46:1 47:22 48:2
48:15 49:10 51:9
51:20,23 52:14
54:15 55:24 57:5
57:21 58:16,25
59:5,14,17 60:3,7
60:9 61:3 62:13
62:21 63:21,22
66:17,18 69:14
70:20,24 71:13,15
71:22,25 72:1,6
72:10,12,18,25
73:16,17,18,19,22
74:15 75:2,3,5,10
75:15,16 78:21
79:1,22
**administratively**
39:9 45:18
**administrator**
33:14
**admins**   11:5,21
58:18
**admission**   54:11
65:22
**adopted**   66:5
**advance**   68:11
74:17
**advanced**   7:8 50:5
**adversary**   21:2
**advised**   36:3
**advocate**   33:25
68:16
**advocated**   62:13
**advocating**   31:18
35:23 36:11,22
37:6 62:3

**affidavit** 25:23 26:3 70:18,18
**affirmatively** 73:20
**agenda** 2:1 6:20 6:21 7:3 24:18,19 24:23 79:5
**aggregate** 21:12
**ago** 52:21
**agree** 27:15 58:17
**agreed** 41:7,8 52:14 78:10
**agreement** 24:5
**agrees** 75:7
**ahead** 12:1 26:6 42:18 49:17
**akin** 14:20
**al** 1:7 3:10 6:4
**albeit** 61:5 73:10
**aligned** 58:9
**allege** 48:7
**alleged** 65:19 68:13 72:20
**allegedly** 55:8
**allocated** 14:13
**allowable** 63:8 75:10
**allowance** 2:11,18 3:20 24:25 62:19 63:21 65:23 66:8 70:15 78:21
**allowed** 8:7,19,21 9:9,23 11:5 15:23 33:18 53:4
**allowing** 10:24 68:22
**allude** 59:2
**altar** 54:17
**alternatives** 46:18
**altruistic** 61:9
**altruistically** 31:20

**amazingly** 61:24
**amended** 6:19 7:3
**amount** 8:22 9:4 9:15 10:3,14,16 10:21,23 11:5 12:10 15:18,18 17:8,24 27:7,21 30:8,12 50:10 55:13,17 58:3 67:7 71:24 72:17 72:23 73:8
**amounts** 8:12 43:25 79:21
**amr** 75:7
**analysis** 52:9 74:7
**analyzed** 38:23
**announced** 37:18 38:22 49:1,1 60:18
**answer** 7:11,23 11:16 22:3,7 23:6 23:13,14 56:13 79:7,8
**anybody** 49:23
**anyway** 20:17 31:12 43:13,16 44:2 47:5 50:4
**apart** 17:2
**apologies** 25:11
**apologize** 19:19 23:14
**appeals** 14:17
**appear** 77:19 78:14
**appearance** 34:23
**appeared** 34:14 34:15 35:1,5,16 47:7 50:13 69:20 76:6,9
**appearing** 35:17 35:20 44:14
**appears** 71:17 75:9

**applauded** 39:14 39:19
**applauding** 61:20
**applicant** 64:20
**application** 2:10 2:18 3:1,7,15,20 44:25 47:13 51:3 51:15,19 53:16 54:10 56:2,10 61:14,25 62:15,17
**applications** 44:19 51:1
**applied** 70:10
**apply** 67:10
**appointed** 46:9
**appointment** 52:1
**appropriate** 39:5
**approve** 49:9,11
**approved** 19:19 55:2,3
**approximately** 21:6 36:12 38:20 39:22 72:9
**april** 57:7
**arguable** 48:1
**arguably** 69:23 75:22
**argue** 26:8
**argued** 34:7 54:14 60:8
**arguing** 37:2 62:2
**argument** 36:23 71:5 75:13
**arguments** 30:22 30:24 51:17 53:19
**arising** 64:19 67:13
**arrange** 6:14
**articulated** 32:13
**aside** 49:21
**asked** 38:21 55:5
**asking** 25:13 44:24 61:15

**aspect** 62:15
**aspects** 66:13
**asserted** 8:6 9:4 10:21 15:18 17:12 70:17 71:17,20 72:18 74:24 77:13
**asserting** 8:10
**asset** 16:4
**assets** 13:7 14:21 14:24 17:15 18:15 20:2 46:7
**assist** 13:17 52:8
**assume** 23:22 26:7 76:4 78:13
**assumed** 69:16
**assuming** 16:5 29:18 78:8
**assumption** 21:18
**attack** 49:5 57:21 58:15
**attacked** 39:14
**attempts** 58:23
**attended** 35:13 36:14 57:25
**attending** 38:8
**attorney** 5:4 36:17 38:17 39:6 63:7,12
**attorneys** 5:11 57:8
**attributable** 74:11
**aug** 70:12
**august** 12:9
**authority** 37:9 62:8
**authorized** 6:10 45:2
**available** 13:20 49:16 58:19 73:12
**avenue** 5:5,12
**avoidance** 20:25

**award** 32:12 33:7
68:1 77:3,12
78:21
**awarded** 44:18
49:18 69:11
**awards** 68:4
**aware** 55:8 69:25

**b**

**b** 1:21 2:13,13,20
2:20 3:21,22
11:21,23 19:22
25:1,1,19 56:7,7
57:7,10,11 62:20
62:20 63:2,5,14
64:8 66:23 67:25
68:4,10,10,23,23
70:2,16 71:3,4
74:25,25 77:4
78:1,5,22
**b.r.** 63:18 64:21
66:9,10,19,20
67:2,3 69:21 70:3
70:11
**back** 11:10 12:5
21:22 29:7,19
30:22 40:7,19
44:13 45:15,18
48:12,20,25 49:21
51:5 52:6 79:7
**backdoor** 54:17
**background** 21:4
**ballard** 25:8
**bankr** 63:19
64:22 66:9,11,20
67:2,3 70:3,11
**bankruptcies**
58:12
**bankruptcy** 1:1
1:13,23 2:12,20
3:21 25:1 30:4,5
35:9 39:8 47:12
56:7 64:9 69:2
71:23 73:4 74:22

75:1 76:17 77:25
**banks** 70:8
**base** 18:12
**based** 18:11 26:22
44:4 49:15 57:23
62:16 63:9 67:17
73:6,24 74:6
**bases** 43:15
**basically** 38:12
39:24 62:17
**basis** 6:12 43:14
56:3 74:1 78:11
**bayou** 31:25 32:6
44:18 45:1 46:6
47:1 50:24 59:21
66:10,21 67:4
68:3,21 69:11
70:5,5
**bearing** 66:14
**bedford** 64:15
**beginning** 36:24
60:10
**behalf** 2:7 3:3,9
3:17,24 4:3 6:23
7:21 34:15,16,21
35:5,21 36:8 40:6
46:16 50:12,13,15
51:8 55:9 69:12
71:21 76:6 77:20
78:7
**believe** 10:21
27:10 28:23 29:11
33:2,3,4 34:3 50:2
51:18 53:20 56:10
57:7,19 58:10
59:10 74:21
**believes** 56:3
**bene** 55:22
**benefit** 31:3,7,10
31:17,21,22 32:3
32:11,12,15,21
39:13 42:7 46:10
46:24 47:3,24

64:11,13,13 67:5
67:6,10,14,15,15
68:1,2 70:21 71:3
71:6,6,12,18
72:14,15 73:14
74:8,10,10,14,19
74:20 77:11,11,13
77:14,14
**benefited** 64:8
68:13
**benefits** 56:9
66:25 71:20 74:13
**benefitted** 33:8
**best** 33:3 38:12
44:20 46:11 47:1
50:3 57:20 67:1
68:15 69:20
**better** 16:25 28:24
59:23 60:6 61:6
**big** 20:21
**billion** 8:5 17:11
**bind** 37:9 40:12
59:7 60:10,23
76:13 77:17
**binding** 77:18
**bit** 11:21 12:1
21:20
**blended** 30:7
**board** 20:14
**boats** 60:6 75:13
**bracket** 78:1,1,1,2
**brackets** 78:1
**breakdown** 11:20
**bridge** 19:1
**bring** 12:21
**broader** 20:5
**broke** 40:19
**brooke** 70:2
**brooke's** 70:8
**brought** 69:5
**brozman** 46:21
**brozman's** 33:4
44:19

**building** 18:2,22
**burden** 32:7,18
50:22 53:21 64:24
66:15 67:21 70:14
75:23
**business** 30:20
**button** 25:8,12
**buy** 68:10

**c**

**c** 5:1 6:1,2 81:1,1
**calculated** 32:11
67:25
**calder** 17:19
**call** 21:14 70:14
**called** 23:20 73:18
76:8,14,15
**can't** 25:10 34:8
**cap** 48:10 55:12
55:17 74:2,4
**capacity** 51:9
**carefully** 53:17
54:9
**carly** 3:16
**carried** 70:14
76:1
**carries** 65:8
**carve** 29:10,25
41:2
**case** 1:3 2:4 13:5
18:8 20:12 22:18
23:3 27:8 32:6
33:1,4,5 37:6
39:10,15 40:16
44:18 45:6,8,10
45:12 46:3,19
47:8 49:6 50:1,6
50:16,23 52:17
54:4,22 55:1,14
56:2,2,4 60:14
62:1 63:4,11,14
63:17 64:3,9,18
64:23 65:19 66:6
66:12,21 67:1,4,8

67:13,17 68:12,15
68:16,21 69:11,13
69:22 70:4,5 71:2
71:9,9,10,13,16
72:5 74:21,24
76:25 77:2,15,16
77:23 78:11,16
79:16 80:3
**cases** 2:14,21 3:23
31:19,20 32:13
34:9 39:5 44:20
47:12 48:19 50:7
50:25 59:20,21
64:18 65:7,11,25
66:2,19 68:8,18
68:22 70:7,21
73:24 76:25 77:2
78:8,14
**cash** 13:6,8,9,17
13:20 14:8,12,16
21:10 22:20 24:3
36:25 41:12 43:3
58:19 60:3,8
72:22
**catchup** 12:19
**categories** 8:17
**category** 22:1
33:18 79:12
**causes** 46:8
**cede** 25:5
**cents** 9:3 52:15
58:19
**certain** 14:17 52:3
56:3 66:12 71:14
**certainly** 20:21
24:14 40:13 47:16
48:1 50:10 54:3
**certified** 81:3
**challenges** 22:17
**chambers** 7:8
35:13 36:4 79:2
**chance** 37:20

**change** 26:24 48:8
49:1
**changed** 46:19
60:15
**changes** 46:20
60:16
**chapter** 30:17
50:7 63:4 69:4
70:21,23 78:13,14
**charging** 78:12
**chart** 8:13 9:19
11:9 21:15
**checking** 60:20
**checks** 12:11
**cherokee** 58:13
59:10
**chop** 21:20
**chunk** 20:21
**circuit** 57:17
63:15 64:5
**circumstances**
56:3 64:2 65:5
68:5
**cited** 31:20 65:7
77:3,23
**cites** 64:18
**citing** 64:15,21,22
66:18 67:1
**citron** 5:3 26:11
56:19
**citron's** 78:7
**claim** 8:19 10:14
10:17 15:20,22,25
18:12 24:25 27:19
28:12 38:10,13,16
38:19,24 41:7
44:15 47:11,17,20
47:25 50:9 52:20
53:4,15,25 56:1
61:10,19 62:20
65:24 69:12 70:16
70:25 71:22 72:18
75:5 78:5

**claimant** 72:2
**claimants** 70:20
71:13
**claimed** 71:6,6,12
71:18,20 72:14
73:14 74:13
**claiming** 8:6
**claims** 3:13 7:18
7:21 8:3,4,6,8,10
8:11 9:14,14,24
10:21,24,25 11:12
11:24 12:2,12
14:7,18 15:3,4,9
15:15 16:3,14,19
17:5,10,12,13
18:5,10,13 20:17
21:11 22:21 23:7
24:3 25:25 27:1
33:18 45:11 51:9
51:21,23 52:9
54:15 55:25 57:22
58:2,11,13 66:1
68:22 71:16 72:2
72:7 73:17 75:4
75:11,17 79:1,22
**clarified** 15:17
**class** 48:17 74:4
74:14
**clear** 35:18 36:2
37:10 38:23 41:23
44:22 48:14 58:6
59:16 61:4 62:2
70:13 71:17 72:5
73:1 76:2,12 78:3
**clearly** 69:12
77:17
**clerk's** 6:12,14
**client** 6:7 31:10
32:11 33:8 37:9
54:11 59:12 68:1
**clients** 34:22 35:1
78:7,15,17,17

**client's** 61:19
**close** 10:20 45:6
47:16 65:4 70:14
**closed** 65:7
**closely** 53:11
**code** 2:12,20 3:21
25:2 39:8 56:7
69:2 71:24 73:4
74:22 75:1
**coincidentally**
46:12
**collateral** 72:22
**collect** 40:15
**collected** 19:5,15
19:16 21:12
**collection** 22:23
**collier** 77:25
**colloquy** 28:20
52:6 57:13
**combined** 79:24
**come** 11:10 16:1
21:10 22:20 23:6
24:2 47:4,5 49:21
50:19 77:24
**coming** 23:20
36:16,17
**commenced** 12:9
16:13 22:25
**comment** 57:3
78:6
**comments** 40:3
41:1 53:19 56:22
57:14,16 74:3
**committee** 3:6,9
7:17,19 16:15
18:6 23:2 26:2
27:2 33:21,22,22
34:16 35:5,14
36:7,10,15 37:11
39:17 43:10 45:8
45:9,16,19,23
46:13,14 57:4,19
57:24 58:5,6,22

59:6,11 67:19
70:6 72:12 79:2
**committee's**
58:15
**communicated**
36:4
**communicating**
40:23
**company** 68:15
**comparable** 63:10
**compensable** 64:1
67:25 74:25
**compensated**
65:14 67:18 68:25
69:8,9
**compensation**
2:12,19 3:21
62:23,25 63:6
65:3 66:24
**complaints** 21:13
**completely** 6:5,16
**completing** 52:3
**concedes** 47:21
**concerned** 17:19
**concession** 47:23
**concessions** 54:24
**conclude** 74:6,14
77:22 80:6
**concluded** 80:9
**concludes** 79:4
**conclusory** 63:24
**concrete** 67:5
**conditions** 42:23
43:8
**conduct** 61:4,23
62:14
**conduit** 37:11
**confer** 32:12 68:2
**conference** 2:4
13:3
**conferences** 35:13
36:4

**conferred** 71:7,18
71:20 73:14
**confirm** 9:19
**confirmation** 9:6
11:7,11,17 12:1
16:24 19:3,8,11
19:15 20:1,11
29:1 30:10 34:1
34:14 35:1,13
36:20 37:19,20
38:8 41:13 42:11
42:19 47:14 48:13
50:7 51:25 52:4
54:7,8,13,14
60:19,24 61:1,5
62:3,4 69:4,5 73:2
73:6 74:4 75:6,8
75:11 76:7,10,10
76:22
**confirmed** 53:2
59:24 65:16,21
**confirming** 73:10
**conflate** 32:17
**confusing** 14:4
**congress** 74:21
**connection** 20:18
26:4 42:10 49:8
**consciously** 54:18
**consent** 8:16
13:11 14:9,14
15:6 42:23 43:8
47:22 48:15 49:10
51:23 54:15 60:10
61:3
**consents** 75:2,19
**conservative**
17:23
**consider** 32:20
**considerable** 67:7
75:6
**considerably**
17:25 19:7 72:16

**considered** 24:23
64:6
**consistent** 9:5
11:17 15:21 22:14
64:17 65:25 68:20
69:2
**construct** 37:18
61:2
**constructive**
54:12
**construed** 66:17
**consult** 48:2
**contact** 6:14
**contemplated**
74:21
**contend** 31:3
**contends** 71:2
**context** 26:18
44:14 74:23 75:22
**contexts** 69:6
**contingency** 17:6
18:10
**contingent** 22:22
**continuation** 34:7
**continue** 21:21
24:18 34:20 40:23
53:11 55:25 79:19
**continued** 20:14
30:18 76:10
**continues** 15:25
79:13,24
**contrary** 57:22
66:6 69:20
**contrast** 35:4
44:17 77:7
**contrasting** 70:4
**contribution** 2:14
2:21 3:1,7,15,22
4:2 24:25 28:19
32:8 33:2,7 44:19
44:25 46:22,24
47:11,17,20 48:3
49:25 50:23 51:1

51:15 53:24 54:1
56:4 59:22 61:12
63:3,23,25 64:3,7
64:19,25 65:12,23
66:1,7,13 67:7,22
68:22 69:12,25
70:16 77:1 78:5
**contributions**
56:2
**conversation**
48:22
**coordinate** 47:6
**copy** 6:11 7:8,12
78:25
**corp** 6:4 64:21
66:20 68:7 70:2
70:10
**corporation** 1:7
3:4,10
**correct** 9:17 10:4
12:16 14:2,2 17:7
24:21 29:22 31:8
31:11,15 34:19,24
35:11 37:10 41:16
**corrections** 44:12
**correctly** 65:3
**cost** 54:16 63:10
**costs** 77:12,12
79:15,25
**couldn't** 59:7
**counsel** 6:20 7:23
25:20 26:11,25
28:20 35:14 39:2
39:12,17,17 46:15
47:7 56:19 57:14
59:15 67:19 69:19
70:19 72:11,21
73:15 75:12 76:5
76:9,16 78:23
79:1,22
**counsels** 74:11
**counsel's** 46:14
46:15

counterparties 21:5
country 81:21
couple 17:21 18:1 27:12 40:9 79:11
course 6:18 7:10 9:12 16:16,22 18:3 20:3 25:23 30:20 44:7,8 61:23 74:8 75:18 79:18
court 1:1,13 6:3,8 6:11,25 7:12 8:1 8:14 9:10,13,18 10:1,3,5,9,12,18 11:2,4 12:3,15,18 12:22 13:23 14:1 14:3,15 16:21,23 17:5,8 18:23 20:6 20:23 21:22,25 22:6,8 23:16 24:8 24:14,15,17,22 25:6,15,18 27:23 27:25 28:15 29:5 29:14,18 30:11,21 31:5,9,12,14 32:1 32:20 34:12,14,20 34:25 35:4,8,19 35:25 37:8,14 38:1,5 39:25 40:4 41:19 43:10 44:3 44:6,11 48:23 51:4,11 53:16,19 55:2,3,11 56:5 56:14,16 57:9,17 62:6,11,18 69:21 79:4 80:5
court's 72:21
courts 64:5,12
cover 39:4
covered 40:8
create 53:9

created 29:3
creative 53:10
credit 49:18 60:16
creditor 15:24 31:20 37:13 47:2 59:23 63:2 65:11 65:12,19 66:24 68:14,15,16,24 69:3 75:2,5,8,19 76:13 78:21
creditors 3:6,10 7:19 8:17 12:7 13:19 16:15 18:5 18:6 23:1 26:1,19 27:2,4,12,14 29:20,23 30:3,14 30:16 31:24 32:3 32:6,16,21 33:14 33:15,17,25 34:8 35:6 36:7 37:1,5,7 37:12 39:9,18 40:13,15 45:2,5,9 45:22,24 46:1,13 46:13,14,16,17,23 47:6 48:9 50:12 50:14,15 52:14,25 53:3,12 54:7,25 55:9,14 56:9 57:5 57:5 58:17 59:5 59:14 60:3,7,9,11 61:11,20 62:14 64:23 65:6 66:25 67:8,20,23 68:6 68:22 69:12,13,24 70:7 71:8 72:1,12 73:18,19,22 74:8 74:15 75:15,21,25 75:25 76:3,6
critical 61:23
cross 34:2,3
culmination 18:17
cure 21:19

current 16:4
cut 54:17

d

d 1:22 2:13,20 3:21 6:1,2 25:1 56:7 62:20 63:2,8 68:10,23 70:3,16 71:3 74:25 78:22
daily 6:12
dana 64:21,23 66:20 68:7
dashboard 25:4
date 6:5 7:5 8:4 8:23 11:15 16:16 18:7 19:3,8 23:3 26:21 52:24 58:1 75:4 81:25
david 2:7,14,17 3:23 4:2 5:8 26:11 56:18
davidoff 5:3 26:11 56:19 78:6
day 29:1 34:6 45:1,8,10,12 47:12 48:14,23,25 60:19
days 30:5 37:19 38:15 60:19
de 17:17 30:23 50:2 61:24
deal 8:16 17:11 54:17
dealing 21:3 38:15 78:4
dealt 13:15 21:19 42:19
debt 72:14
debtor 1:9 25:24 26:22 29:9 30:16 30:18 36:5,7,12 36:14 37:11 38:12 38:16 45:3 56:20 56:24 57:24 58:5

58:14 59:6 66:25 67:19 69:14,17 75:9,16,18
debtor's 67:8
debtors 3:1,7,14 5:11 6:23 7:16 24:9 40:6,20 45:7 48:10 50:8 51:25 52:23 53:5,11 54:6 56:9 57:18 58:22 69:19 70:7 70:23 71:8 74:8 78:12,23
debtor's 6:20 7:20 7:24 9:5 10:23 26:25 28:20 34:2 34:4 35:14 39:17 42:5 48:19 51:14 52:12 53:24
decided 57:20
decision 33:6 44:20 54:19 57:15 57:17 64:4 65:18 66:10 67:12
declaration 2:17 4:1 35:12
declarations 54:9
deemed 64:1
defend 49:7
deficiencies 60:17
delivered 57:12
delta 15:1
deltas 19:23
demonstrable 74:7 77:11
demonstrate 50:22 56:6
demonstrates 53:23
demonstrative 67:6
demonstratively 64:11

**denied** 44:21 51:1
  51:19 56:11 77:22
**deny** 51:3 65:25
**denying** 78:24
**dependent** 16:18
**deposit** 19:20
**describes** 48:15
**determination**
  49:15
**determined** 10:7
  21:17
**determining** 64:6
**developed** 63:16
  73:8
**dialogue** 48:23
**didn't** 12:20
  28:10 35:19 37:8
  40:18,22 43:1
  46:6 60:11 61:3
**difference** 15:8
**differences** 19:24
**different** 31:9
  48:18 50:24 59:8
  60:21 75:2
**difficult** 32:7
  64:24 67:21
**dip** 41:24 44:10
  72:23
**direct** 31:17,22,23
  32:2,15,16 39:12
  53:24 64:10 67:6
  67:10,14,15 71:3
  71:19 72:21 77:10
**directly** 21:4 33:8
  56:9 66:25 74:10
**disagree** 40:14
**disbursed** 12:10
**disclaims** 9:8
**disclosure** 27:10
**discount** 8:22
**discriminate**
  75:19

**discrimination**
  75:20
**discussed** 63:16
**discussion** 26:25
  41:11 54:20 77:24
**discussions** 16:1
  16:14 22:25,25
  57:24
**dismiss** 23:19
**dispute** 20:5
**disputed** 9:8
  10:21 12:12 14:7
  15:9 23:7
**disputes** 8:9 14:7
  20:18 45:18
**distinctions** 44:21
**distributed** 13:18
  39:21 42:12 43:4
  55:18,19,22
**distribution** 12:8
  12:9,13,15,17,19
  14:24 26:18 28:5
  28:6,7,9,16 29:13
  43:13,21 44:1
  48:6 53:6 55:20
  55:23 71:25 72:9
  73:16 74:17,17
**distributions** 8:23
  12:6 20:19 22:21
  27:11 43:9,21
  52:24 55:20
**district** 1:2 63:15
  63:17 64:16 68:8
**docket** 7:6 51:16
  61:14
**document** 2:6,22
  3:2,8,16,23 4:2
**documented** 37:3
**documents** 26:5
  76:14
**doesn't** 16:24
  30:15

**doing** 7:23 37:24
  39:6 46:15 61:10
  61:22 69:10 78:11
  78:15
**dollar** 9:15 11:4
  52:15
**dollars** 26:17
  27:16,18,20 28:2
  28:3,8,12,14,25
  29:2,3,12 33:17
  37:25 39:20 47:4
  48:5 50:17 54:16
  61:8,19
**don't** 18:20 21:2
  22:4 23:17 24:17
  26:3 29:5 35:25
  38:10 40:14 44:24
  47:1,15 49:9 50:5
  50:15 58:16 60:12
  60:12 62:7
**door** 12:13 21:10
**draftsperson** 66:3
**drain** 1:22 6:3
**dublin** 3:9 14:20
**duplicated** 64:14
  67:17
**duties** 52:7 73:3

          **e**

**e** 1:21,21 5:1,1 6:1
  6:1,2,2 70:3 81:1
**e.d.n.y.** 63:19
  64:16
**earlier** 9:13 20:8
  22:25 50:18,20
  52:21 55:6
**early** 23:4
**eastern** 63:17
**ecf** 2:8,14,22 3:4
  3:11,17,24 4:3
**echoes** 66:11
**ecro** 1:25
**edition** 78:2

**effective** 7:5 9:3
  13:1,18 15:14,17
  16:11,12,16,18
  18:7 22:16 23:3
  24:3 52:17 53:7,9
  58:1,18,21 75:4
**effectively** 75:14
**effort** 17:15 61:12
**efforts** 64:15
  65:16 67:23 71:19
  74:24
**eight** 72:9,16
**either** 10:16 24:4
  57:7 77:12 79:18
**electric** 66:8
**element** 32:2
**eliminate** 21:17
**eliminating** 8:5
**email** 7:7 22:9,11
  79:2,10
**emergence** 22:19
**encapsulated**
  38:18
**encourage** 39:5
**ended** 61:5
**ends** 80:3
**engage** 54:19 56:8
  76:19
**engaged** 45:3
  69:15
**english** 60:13
**enhances** 65:6
  68:6
**ensure** 52:10,13
**entailing** 64:2
**enter** 73:9
**entire** 46:3 73:7
**entities** 34:16
**entitled** 9:2,3
  12:14 47:19
**entitlement** 8:6
  70:15

equally  52:16
equitable  49:13
erika  51:8
error  61:25
escrow  41:23 42:4
  42:6,10,15 43:18
  49:12 72:22 73:10
esl  14:18 16:20
  17:1 19:9,18 20:4
  22:23 23:20 27:9
especially  24:13
  30:3 32:7 59:5
  64:24 67:21
esq  2:17
essence  69:14
establish  74:12
established  67:16
establishing  66:16
estate  10:17 13:17
  14:6 17:3,17
  18:14 19:14 32:3
  32:13,16,21 36:15
  45:17,24 46:10
  53:24 54:16 56:10
  64:8,11,14 65:7
  65:14 67:1,8,18
  68:2,7,25 69:8,9
  74:8 77:1,11,13
  77:15,22 78:12
  79:12,13,17,24
estates  52:12 71:8
estimate  11:6,11
  15:15,22 16:5
  18:22 19:5 44:7
estimated  11:5
  13:6,7 14:16,21
  15:3,18 16:23
  79:21
estimates  7:20,24
  9:5 11:12,15,17
  12:2 13:1 19:4,7
  41:14,25 42:1
  43:19,23

estimating  11:25
  22:15
et  1:7 3:10 6:4
event  29:6 31:12
  73:12
everhardt  3:16
everybody  12:21
  53:10 54:23 59:8
everybody's
  45:12
evidence  63:24
  66:15
exactly  22:4 34:10
  44:5,5,7 46:25
examined  34:3
examining  34:2
example  7:22
  42:25
exceeds  77:11
excess  43:3,24
  72:19
excluding  8:11
  19:9 20:3
exclusively  42:6
excuse  49:1
excused  25:13
exhibits  25:23
existent  69:15
expect  18:7,20
  24:10
expectation  30:19
  77:21
expected  16:17
  65:13 68:25
expecting  18:3,20
  19:17 20:13
expeditiously
  52:17
expense  3:13 9:14
  11:24 17:12 18:13
  25:25 29:20 35:6
  51:9,21,23 52:15
  52:19 54:15 55:25

62:21 63:7,21
  64:3 70:20,24
  71:13,16,22 72:1
  72:1,7,10,12,18
  72:25 73:16,17,18
  73:20,22 74:15
  75:2,3,5,11,15
  78:21 79:1,9
expenses  2:10
  13:14,17 14:6
  15:3 16:10,24
  17:3 18:2 20:16
  22:1 39:23 62:22
  63:12,22 66:17,18
exposure  71:23
expressly  70:6
extensive  67:16
extent  10:6 63:9
  67:9 74:9
extra  55:12 72:7
extract  39:17
extraordinary
  30:23 34:9 39:6
  39:11 44:23 56:8
  61:12 62:14 65:5
  66:24 68:5 78:20

f

f  1:21 81:1
face  32:6 64:24
  67:20
faces  32:19
facilitated  69:3
facilitating  39:3
facilitation  65:15
fact  27:8 37:3
  53:22 54:22 61:21
  64:3 65:1 66:1
  68:11 69:20 73:3
  74:6 75:21,22
factor  32:19 40:22
factors  64:6 77:24
facts  44:20 56:5
  62:16 66:1 70:4,5

factual  41:1 66:14
fail  7:2
failed  53:23
fair  23:22
fairly  17:16,17
  23:20 63:16
fairness  52:11
far  12:7 17:5,18
  56:1 78:19
favorable  65:17
  65:22 69:6,23
favorably  57:16
feasibility  49:8,15
federal  30:11
fee  17:6 18:10,12
  29:10,25 41:23
  42:4,6,10,15,21
  43:6,18,23 46:14
  49:12 61:14,24
  62:14,15
feel  56:5
fees  17:25 20:14
  20:14 33:10 39:22
  42:1 44:6 46:15
  61:25 72:22
felt  54:20
fiduciary  39:8
  45:21 57:4 76:18
fifth  5:12
fighting  39:16
file  7:3,6 76:16
filed  2:7,14 3:3,9
  3:16,23 4:2 21:14
  25:24 26:4,15
  34:21 35:9 36:1
  40:12 44:9,25
  51:14 54:10 59:10
  65:21 76:17
filing  45:3
fill  46:5
final  44:9
finalize  22:21
  23:10

**finalized** 23:10
**finally** 20:24
  49:20 76:2
**find** 40:22
**finding** 65:11
**fine** 6:25 7:12
  25:15,15 41:19
  47:3 49:6 51:11
  56:14
**finish** 23:3
**firm** 14:20 35:9
  59:9 78:21
**firms** 78:14
**first** 6:7 7:4 8:15
  8:17 9:19 12:20
  26:16 28:9 34:6
  36:7 47:20 48:14
  55:19 63:20 71:6
  71:20 72:8 73:11
**fixed** 9:15
**fixing** 71:22
**flawed** 61:6
**focused** 45:13
  46:2,7 50:9
**focusing** 30:22
**foley** 35:4,15 36:6
  36:16 41:8 42:8
  51:8 58:6,8,10,14
  59:4,7,9,9 61:1
  72:13 77:7
**folks** 9:1 12:14
**following** 48:22
  64:6
**fond** 54:2
**footnote** 13:16
  59:3
**forced** 54:24
**foregoing** 66:12
  68:3 70:1 77:9
  81:3
**foreign** 33:15
  36:12 57:21 58:13
  58:15,25 59:5,13

59:17 60:12 71:14
  71:15
**foremost** 47:20
**form** 53:25 77:17
**formal** 59:11
  76:13
**formally** 35:19
  36:10 37:4 76:3
  78:24 79:17
**forming** 33:21
**forth** 26:14 30:22
  40:7,19 45:16,19
  48:21 52:3,6 70:4
  75:16
**forthcoming** 53:6
**forward** 46:18
  59:18 69:17
**found** 51:16 66:6
  68:23 69:21
**framework** 77:18
**frankly** 40:20
  46:3 47:5,24
  49:19 50:25 53:4
  56:3 66:1 70:13
  71:8
**fraud** 45:1,3
  69:15
**free** 61:18
**freed** 28:16
**front** 73:9
**fulcrum** 37:13
  77:6
**full** 9:2 23:12 75:4
  75:7,11
**fulsome** 34:4,5
**functions** 69:7
**funding** 29:10,25
  43:2
**funds** 12:25 26:20
  26:23 41:4 43:5
  58:11 72:24 73:9
**further** 55:3
  56:12 64:17,22

65:11 67:24 77:15
**furthering** 77:16
**future** 56:1

**g**

**g** 6:1,2
**galgay** 32:24,25
  33:5
**gap** 46:3
**garrett** 7:2
**gary** 3:13,17 51:8
**gatekeeping**
  26:17
**general** 33:4 42:5
  42:12,16,22 43:7
  70:9 71:8 72:24
  73:9 78:20
**generally** 15:21
  63:15 65:12 71:11
  76:25 77:25
**getting** 7:4 20:19
  31:24 77:13
**give** 20:25 33:23
  54:20 58:19,23
  60:8
**given** 20:12 59:1
  70:1
**giving** 28:18
  33:21 37:24
**global** 2:7,11,18
  3:2,8,15,19,24 4:3
  5:4 24:24 25:21
  25:23 26:12 27:5
  27:18 29:3 33:11
  33:12,16,20 34:7
  34:10,15,21 37:4
  37:16 38:25 39:12
  39:13,16 51:16
  54:12 56:20 59:3
  59:25 62:2,19
  63:3 70:24 71:21
  72:3,11,20 73:8
  73:15 74:11,16
  75:12,24 76:15

77:16,19 78:7
**global's** 71:22
  74:24
**global's** 26:2
  28:12 29:3 36:17
  38:13,19 61:9
**go** 6:21 7:7 9:3
  11:9 12:25 16:6
  16:10,12 21:22
  24:3 26:6 37:1
  38:9,12 44:13
  48:12,20 52:17
  53:7 73:9 79:7,11
  80:2,4
**goes** 64:22 67:4
  67:12 68:9
**going** 9:9 10:22
  12:2 13:18 15:13
  15:17 16:18 17:19
  18:21 22:9 23:17
  27:25 29:6 39:15
  40:8 44:8,16
  49:10 53:8,9,9
  55:18,19 57:2
  58:18 61:13,15,23
  62:7 74:12
**good** 6:3,7,22 19:6
  40:5 51:2,7 54:25
  55:1 59:3,4 78:11
  78:15
**goods** 30:18 57:11
**gotshal** 5:10 6:23
  33:1,6 35:24 40:6
**gotten** 12:13
  20:20 54:4
**grabbed** 28:24
**grand** 39:14
**granite** 67:3
**granted** 44:25
  47:13 62:17
**great** 7:13
**greater** 54:25

**gross** 21:15
**ground** 62:7
**group** 8:24 9:1,13
  33:23,23 34:17,25
  35:5,10,17,23,25
  36:8,11,18,18,22
  37:12,12,13,14
  38:2,6 39:2 40:13
  40:21 41:8 42:8
  45:2 46:7,12,17
  50:15 55:5,6
  56:23,24 58:8,8
  58:10,14 59:4,7,8
  59:8,9,11,13,17
  60:22 61:2 66:10
  68:16 70:19,22
  73:21,23 76:8,15
  76:16,17 77:5,5,6
  77:7,8
**guess** 9:18 24:10

### h

**h** 2:7,14,17 3:23
  4:2 5:8
**hadn't** 30:3 37:20
**haircut** 58:17
**half** 17:11 54:5
  60:19
**hallway** 38:9
**hancock** 63:18
  66:6 68:21
**hand** 25:9,12 37:1
**handle** 21:3
**handled** 14:20
**handling** 38:17
**hanes** 58:12 59:10
**hang** 80:6
**hanging** 48:5
**happened** 31:19
  47:15 56:23 57:6
  57:18 59:24
**happens** 47:11
  50:7

**happy** 6:21 7:11
  23:14 28:21 56:13
  78:9
**hard** 52:22 53:10
**harner** 25:8,10,11
  25:17
**hat** 48:5
**haven't** 22:16
**heads** 23:5
**hear** 6:24,25
  25:10,20 51:10,11
**heard** 38:8 48:16
  51:17 52:21 53:4
**hearing** 2:1,2 6:6
  6:10,13,15,20 9:6
  11:7,12,13,18
  19:12 29:1,1 34:1
  34:15 35:1 36:20
  37:19,20,21 38:8
  38:11 41:14 45:14
  48:13 57:6 60:19
  61:1,5,13 73:2,3
  74:4 76:8,10,22
  76:23 80:6
**hearings** 6:15
**heavily** 22:22
  51:24
**heavy** 47:16 50:22
**hedge** 58:10
**held** 29:11,19
  42:6 70:8
**help** 52:11,17
  60:7
**helpful** 8:14
**here's** 56:25 57:6
**herring** 31:6,16
  61:7
**he'll** 22:9
**he's** 47:19 49:5
  54:3
**high** 18:19 20:25
  47:16 75:23

**higher** 78:19
**highlight** 26:12
  40:9
**hit** 25:7 43:1,2
**hoc** 33:23 34:16
  34:25 35:5,10,17
  36:18 38:1,2,6
  40:21 55:5,6
  70:19 72:12 76:15
  76:16
**hold** 29:6 66:21
**holding** 6:4
**holdings** 1:7 3:3
  3:10
**homerun** 54:20
  54:22
**homestretch**
  10:25 17:15
**hon** 1:22
**honestly** 28:10
**honor** 6:22,24 7:1
  7:2,3,6,8,9,13,16
  7:25 8:2,8,13,21
  8:25 9:4,12,21
  10:8,15,20 11:3,8
  11:10,16,22 12:4
  12:5,12,23 13:6
  13:10,22,25 14:16
  14:22 15:2,7,10
  15:24 16:13,20
  17:4,21 18:1,9,24
  19:1,6,19,19 20:7
  20:15,24 21:1
  22:2,7,11,12,24
  23:8,12,15 24:7
  24:11,16 25:3,11
  25:17 26:10,12,17
  27:18,24 28:10,19
  28:25 29:9,22
  30:7,20 31:1,13
  31:15,25 32:23,25
  33:9,19 34:9 35:3
  35:11,12,16,22

**36:**3,4,22 37:17
  38:4,8,11,21 40:1
  40:2,5,6,7,10,11
  40:17,25 41:6,22
  42:13,16 43:15,16
  43:18,20 44:5,12
  44:15,18 45:1,6
  45:11,14,20 46:6
  46:25 47:9,18
  48:12,16,25 49:4
  49:8,14,15,25
  50:4,12,18,21
  51:2,3,7,12,14,22
  52:5,6 53:1 54:2
  55:24 56:12,15,18
  56:20,22 57:13,14
  60:17,20 62:10
  79:3,6,11 80:8
**honor's** 20:9
  41:15 42:13 57:14
  57:15
**hope** 16:11
**hoped** 20:13
**hopeful** 17:23
  23:4
**hopefully** 8:14
  18:4
**hopes** 16:1
**hoping** 22:16
**hours** 34:2
**hundreds** 23:19
**hutcher** 5:3 26:11
  56:19 78:6
**hyde** 4:25 81:3,8

### i

**i.e.** 28:6 44:3
  64:13 66:14 67:5
  74:18 75:6 76:21
**idea** 6:7
**identified** 60:17
**identify** 6:6
**immediately**
  48:23

**impeded** 68:12
**implicit** 78:4
**important** 30:2
  32:4 47:22 51:23
  52:2,16 53:14
  69:13 74:23
**imports** 57:1,9,22
  58:7
**import's** 57:15
  58:2
**impose** 65:16
**imprecision** 67:13
**improvements**
  78:16
**incentive** 23:23
**incidental** 46:20
  64:19
**include** 16:24
  33:7,11 62:21
**included** 12:19
  16:5 19:3 22:5
  59:18 61:8 70:24
**includes** 14:12
  15:5 19:22 21:9
  30:1 32:16 65:14
  78:15
**including** 23:24
  42:25 56:1 57:5
  64:18 76:7
**increase** 50:3
  71:24 73:15
**increased** 19:7,10
  41:10 49:22
**increasing** 75:22
**incremental** 42:14
  43:22 50:17
**incurred** 20:16,21
  42:2 63:2,12
  79:16
**independent** 45:7
**indicated** 7:3
  26:25 57:16

**indirect** 31:23
  32:12 46:24 68:2
**industries** 2:8,11
  2:18 3:2,8,15,19
  3:24 4:3 5:4 24:24
  25:21 62:19 77:2
**ineligible** 21:18
**inform** 37:14
**informed** 38:2,6
  76:20
**initial** 12:7 48:6
  71:25
**initially** 41:6
**ins** 8:17
**insisted** 47:4
**insistence** 45:16
**insolvency** 57:21
**insolvent** 39:9
**insubstantial** 28:2
**insufficient** 63:25
  69:25
**insurance** 79:13
**insurers** 23:24
**integrity** 66:22
**intend** 16:6 40:18
**intensive** 64:3
**interest** 32:10
  45:23,24 46:23
  64:21,24 65:1
  69:24 72:16 75:21
**interests** 58:8
  67:23,24 68:19
  70:22 75:20,24
**interim** 55:19
**interrogate** 62:7
**interrupt** 9:10
  16:21 27:23 32:1
  34:12
**introduced** 34:18
**introduction** 6:19
**investigated** 46:8
**involve** 65:12

**involved** 33:1
  35:16 36:6 49:6
  53:11 54:5,23
  55:7 57:8 58:11
  60:23 65:20 69:3
**involvement** 48:1
  64:1 65:6 68:6
**issue** 26:17 27:22
  28:4 32:19 45:10
  49:21 50:2,9
  55:12,21 57:9,21
  57:22 58:7 61:7
**issues** 8:12 9:16
  9:24 10:5 12:11
  21:8 40:10 45:10
  45:25 46:2 48:14
  48:16 49:3 68:17
**item** 7:4 22:5 79:9
  79:25
**items** 41:12 47:18
**it'd** 47:12
**it's** 6:7,11 7:9
  10:10,22 14:4,11
  14:13,23 15:15
  17:17 18:17 20:15
  23:22 24:18 26:16
  27:17 31:9 34:9
  34:10 35:12 36:18
  37:3,3 39:11,23
  42:17 44:23 47:25
  48:14,18 53:5,9,9
  61:7,25
**i'd** 21:14 56:22
**i'll** 7:9 12:5 22:11
  23:13 25:5 40:3,9
  51:19
**i'm** 6:21 7:2,7,11
  11:4 13:23 16:6
  17:8,23 20:20
  21:1 22:3 29:25
  30:21 32:1,25
  33:10,22 38:4
  41:22 44:16 48:12

  49:6 54:2 56:12
  57:2 60:16,20
**i've** 25:21 26:5,7
  47:5 54:4,5 61:22

**j**

**jan** 70:3
**january** 1:17 2:2
  81:25
**jobs** 69:10
**joinder** 3:6,13
  51:14
**joinders** 53:18
**joined** 7:2
**judge** 1:23 6:3
  9:17 10:4 12:16
  13:1 16:3,6 20:2
  21:13,24 24:12,21
  32:24,25 33:4,5
  41:17 44:19 46:21
  59:2 61:16 63:17
  63:20 65:10 66:5
  67:20 68:20
**judgment** 30:11
**june** 11:14 13:2
**justify** 32:11 68:1
  77:3
**justin** 1:25
**jv** 64:15

**k**

**k** 70:3
**kansas** 70:3
**keep** 6:16 22:8
**keeping** 73:3
**kept** 66:18 76:20
**key** 12:24 16:17
  22:13 51:20
**kind** 7:9 17:14
  18:18,25 19:2
  20:1 26:16
**knew** 35:23,24
  36:10,12,16 37:6
  37:11 38:14 39:2
  59:8

**knock** 58:25
**know** 7:16,18
  8:11 9:1 15:5,6
  17:16 22:21 35:16
  35:20,25 39:16
  40:12 42:17,20,25
  43:5,25 44:9,13
  45:21 46:3 47:13
  47:25 48:17,18
  50:2 51:14 54:4
  58:11,12 60:12
  79:19,24
**knowing** 34:11
**known** 36:18 37:3
**knows** 44:15
  57:10

**l**

**lack** 28:24
**language** 67:14
**lardner** 35:4,15
  36:6,16 51:8 58:6
  72:13 77:8
**large** 20:16 58:12
  69:16
**largely** 66:5
**larger** 14:19
  16:20 22:22 40:13
  40:15,15,16 47:8
  50:15
**laser** 45:12
**law** 31:22 63:14
  64:18 67:13 71:9
  74:21 76:25 77:23
  78:14
**lawyers** 60:12
  78:14
**lead** 66:24
**leadership** 65:13
  68:24 76:24
**leading** 54:7
**leaving** 8:24 16:10
**led** 56:8 76:21

**ledanski** 4:25 81:3
  81:8
**left** 23:8 38:11
  54:17,23
**legal** 50:17 65:20
  81:20
**let's** 49:21
**level** 20:25 54:2
**leverage** 47:8 75:6
  75:22
**lexis** 63:18 64:16
  66:9 70:11
**liability** 21:25
**lifts** 60:5 75:13
**light** 65:10 67:10
  68:3
**lightbox** 58:12
  59:10
**liked** 22:17
**limited** 33:18
**limiting** 66:23
**line** 9:22 10:19
  13:8,9 19:15 20:8
  22:5 23:3 25:18
  41:12 50:25 79:9
  79:25
**lines** 8:15,25
  66:19
**linkage** 49:18
  50:16
**listed** 34:17,22
  41:3
**listening** 38:7,14
**litigating** 27:9
  57:10
**litigation** 13:13
  14:19,19 16:20,25
  17:6,16 19:10
  20:4 22:23 23:20
  23:23 24:6 43:2
  52:10 58:21
**little** 11:21 12:1
  14:4 17:22 18:19

  50:1 67:9 68:11
  73:7
**llc** 63:18 64:15,15
  66:8,10
**llp** 5:3,10
**lofts** 64:15
**logical** 74:1
**long** 23:25 24:19
  80:2
**longer** 20:12
  22:15,16 59:1,18
  60:23
**look** 8:13,20 9:22
  11:10 12:23 16:9
  44:18 48:13 54:9
  55:11,25
**looked** 38:22
  57:16
**looking** 18:18
  29:25 34:9 45:4
  57:4 68:18
**looks** 17:14 29:9
  31:7
**lord** 63:17,20
  65:10 66:5 67:20
**lord's** 68:20
**lost** 14:24 53:1
**lot** 17:9,17,23
  20:17 21:2 23:9
  27:17 28:3 36:25
  40:8 48:7 58:21
  60:11
**low** 11:22,23
**lower** 11:22 57:16
**luckily** 21:2
**luxury** 22:10

**m**

**m3** 7:17
**main** 28:1
**maintain** 15:25
**maintained** 66:23
**majority** 68:21

**making** 2:13,21
  3:22 17:22 20:18
  21:21 43:9 63:3
  78:6
**mandated** 52:3
**manges** 5:10
**manner** 34:4
**mantle** 69:16 76:4
**march** 52:20
**material** 32:21
  75:5
**matter** 1:5 21:7
  24:22 25:4
**matters** 2:1 21:14
  24:19 52:23
**maximize** 52:11
**mclean** 77:2
**mean** 17:17 18:15
  20:17 23:8 24:11
  39:23 41:3,20
  44:23,24 48:14
  61:25
**meaningful** 24:13
  54:19
**means** 45:25
  71:19 75:4,23
**meant** 58:22
**measure** 69:16
**meeting** 36:14
  64:25
**meetings** 57:25
**meets** 56:6
**members** 34:25
  38:2,5
**mention** 59:2,22
**mentioned** 20:3
  31:25 33:2 60:13
**mere** 63:24 65:1
  69:21
**merely** 28:4 67:16
  68:16 72:15
**met** 53:21 58:5

**might've** 25:9
**million** 8:10,22,23
  8:24 9:4,6,7,25
  10:22 11:23,25
  12:8,10,13 13:8
  13:13,16,21 14:8
  14:8,11,21,23,25
  15:5,6,8,10,11,14
  16:10,23,25 17:20
  18:18,21 19:10,11
  19:16,17,21 21:9
  21:15 26:17,19
  27:16,18,20 28:2
  28:3,6,8,11,13,23
  28:24 29:2,2,3,7,7
  29:11,12,19,24
  29:24 30:1,6,12
  33:16 37:24 38:20
  38:20 39:15,20
  41:1,3,9,10,14,17
  42:9,11,14 43:1,2
  43:5,12,22 47:4
  48:5 49:7,11,20
  49:22 50:17 55:10
  55:12,16,17 58:24
  61:8,16,19 71:24
  72:8,15,23 74:17
**millions** 13:24
  14:5
**mine** 30:25
**mineola** 81:23
**mini** 75:8
**minimis** 17:17
  30:23 50:3 61:24
**minimum** 66:18
**minus** 14:1
**minute** 28:1
**modified** 71:1
**monday** 37:23
**money** 27:4,5,6,17
  28:3,18,22 29:8
  29:15,16 30:2,15
  31:24 38:24 39:24

49:16 55:13 58:3
  72:23 73:9 75:15
**month** 18:18
  54:12 61:15
**months** 52:21
  60:24 62:3 72:9
  72:16
**morabito** 51:7,8
  51:12 56:15,20
  60:23
**morning** 6:3,22
  7:2,6,9 23:13 40:5
  41:2 51:7,18
**motion** 2:6,10
  24:24 25:5,19,22
  26:4,9 57:7 62:19
  69:24 70:17 77:22
  78:24
**motions** 23:19
**motives** 61:9
**movant** 32:17,19
  65:18,19 66:2,6
  66:14 69:7 70:7
  70:14,19 71:2,7
**movant's** 67:16
  71:19
**movants** 69:16
**move** 30:25 41:9
  42:11 49:11
**moved** 41:4,5,13
  41:16,18,20,20
  42:18 43:22 44:1
  44:2 49:17
**mover** 66:3
**moving** 69:17
**multiparty** 78:13
**murphy** 22:4
  23:17 79:10
**mute** 6:16
**muted** 25:10

**n**

**n** 5:1 6:1,2 81:1
**name** 6:9
**narrowed** 67:13
**narrowly** 66:17
  74:19
**nature** 63:9
**near** 50:10
**necessarily** 59:4
**necessary** 12:25
  62:22 63:12
**need** 15:14,17
  30:15 49:16
**needed** 42:17 46:4
  58:7
**needs** 30:16 32:20
  53:17
**negotiate** 18:7
**negotiated** 27:19
  28:11 36:9 37:16
  37:22 51:24 55:15
  70:25 71:21 72:10
  74:16
**negotiating** 33:24
  50:14 56:24 75:14
**negotiation** 18:3
  65:15,20 69:4
**negotiations** 38:3
  38:6 40:19 54:6
  55:7,8 56:23
  60:24 70:22 76:19
  76:21 77:7
**neither** 73:19
**net** 10:16 13:9
  31:17 32:3,21
  46:10 64:12,13
  67:15 74:10
**never** 29:17 35:8
  40:12 50:19 76:4
  76:5
**nevertheless** 65:3
**new** 1:2 5:6,13
  63:17 66:5 68:8

**news** 19:6
**non** 8:16,18 9:23
  36:22 48:8 58:13
  60:9 62:13 69:14
  73:18 74:4 79:17
**nonprofessional**
  34:8 37:7 60:2
**nonprofessionals**
  60:4
**nontax** 15:21
**normally** 65:13
  68:24 69:7
**note** 7:15 13:10
  14:22 15:11,24
  16:13 20:15 22:24
  23:18 40:18 41:18
  42:16 66:12 67:12
  74:16,23
**noted** 13:16 33:5
  40:11 50:4,13
  53:18 67:20 75:12
**notes** 60:20 63:20
  64:17 65:3,11
  68:3
**notice** 2:1 34:22
  48:20
**noting** 70:5
**notwithstanding**
  65:1 77:4
**number** 9:25
  13:14 17:20 21:7
  28:5,6 29:23
  41:10,11,12 49:11
  51:16 58:24 80:4
**numbers** 7:24
  13:2 26:19 61:16
**ny** 1:15 5:6,13
  81:23

**o**

**o** 1:21 6:1,2 70:3,3
  81:1
**object** 58:1 61:24

[objected - pearl]                                                                    Page 15

**objected** 47:2,14
  59:25 61:22
**objecting** 50:6
  70:23
**objection** 3:1,7,14
  25:24,25 43:11
  49:2 50:8 51:15
  53:18 61:17
**objections** 26:14
  31:2 38:13 46:18
  60:1,2,2 66:4,4
**objectors** 40:3
**objector's** 31:3
**objects** 59:23
**obligation** 27:19
  52:7
**obligations** 19:22
  79:20
**observation** 73:13
**observed** 69:19
**obtain** 6:13
**obtained** 78:10
**obviously** 7:17
  10:5 15:25 17:10
  20:5,12 22:15
  80:3
**ocp** 79:15
**oct** 63:19
**october** 76:22,23
**offer** 19:1
**offered** 50:9
**office** 6:12,14
**official** 3:6,9 26:1
  67:19
**oh** 25:15
**oil** 33:4
**okay** 6:24 7:1,9,13
  8:1 10:1,12,18
  11:2 12:3,18 14:3
  14:15 18:23 21:22
  22:6,8 23:16 24:8
  24:9,15 25:6
  39:25 40:4 44:3

44:11 51:4,10
  56:16 62:11,18
  79:4 80:5,5
**old** 62:7 81:21
**omnibus** 6:5
**once** 40:20 44:8
**one's** 63:25 75:21
**ongoing** 8:9 9:8
  14:6 15:9 79:25
**open** 8:12 79:8
**operating** 42:5,12
  42:16,22 43:7
**opinion** 65:8 68:9
  68:20
**oppose** 65:16
  76:10
**opposed** 31:10
  32:17 72:3
**opposing** 65:21
  69:5
**opposite** 46:11
**opt** 8:16,16,17,18
  9:1,23,23 36:22
  48:9 60:9,11
  73:23
**opted** 9:2 52:25
  72:1 73:19,20
  74:2,18
**optimistic** 53:8
**optout** 73:18 74:4
**oral** 53:19 75:12
**order** 41:24 42:19
  44:10 52:4 72:23
  73:10 78:24
**ordered** 57:11
**ordinary** 30:19
  79:18
**organizational** 76:14
**organized** 36:18
  59:13 70:19 76:9
**organizing** 33:21
  36:11 46:16

**original** 60:18
  65:21
**originally** 15:11
  36:5,6 48:9 50:11
  72:3 73:22
**outcome** 46:19
**outs** 8:18
**outstanding** 9:16
  79:15
**overall** 44:14 77:1
**overlooked** 45:25
**overview** 56:25
**owe** 23:18

**p**

**p** 5:1,1 6:1,2
  79:23
**page** 7:14 8:4
  18:25 19:1 21:22
  64:4 65:8 66:22
  67:4 68:4
**pages** 23:19 70:11
**paid** 26:21,24
  28:4,5 29:4,8,13
  29:17 30:4,19
  52:16 55:13 58:19
  59:12 60:3,4
  71:25 72:8 75:7
  78:8 79:16
**painful** 45:14
**papers** 36:21 40:2
  47:19 56:21
**paragraph** 52:4
  62:23,25 63:8
**paragraphs** 77:25
**parry** 12:21
**part** 20:16 21:19
  24:4 28:12 41:6
  42:8 43:13,16
  51:23 52:7,13,15
  53:10 54:12 72:3
**participate** 12:20
**participation**
  67:16 69:22

**particular** 33:14
  43:21
**parties** 8:15 19:2
  23:5,18 47:14
  64:9 69:24 76:8
  76:19,20 77:15,17
  77:18
**partner** 7:2
**partners** 28:21
  67:3
**party** 63:20 64:2
  64:7 77:13
**passing** 32:7
  67:21
**passion** 54:3
**pattern** 69:20
**pay** 75:3,10
**paying** 24:3
**payment** 2:10,11
  2:19 3:20 8:5
  10:17 24:25 28:4
  33:12,20 62:20
  63:22 72:15
**payments** 9:2
  15:13
**pear** 38:13
**pearl** 2:7,11,18
  3:2,8,15,19,24 4:3
  5:4 24:24 25:19
  25:20 26:2,11
  27:5,18 28:12
  29:2,3 31:2,18,18
  33:11,12,16,20
  34:7,10,15,21
  35:17 36:17 37:4
  37:16 38:19,24
  39:11,13,16 42:9
  50:13 51:16 53:16
  53:20,23 54:14,16
  54:18,20 55:4,7
  56:6,8,10,19 59:3
  59:25 60:4,7 61:9
  62:2,4,19 63:3

71:21,22 72:2,11
72:20 73:8,15
74:11,16,24 75:12
75:24 76:2,11,15
77:19 78:7
**pearl's** 26:13
38:10 60:1,1
**pennies** 27:13,13
**penny** 27:12,12
**people** 27:9 28:2
32:25 35:22 39:1
58:11
**percent** 8:18,19
26:20 30:7 39:21
48:10,11 53:3
55:14 58:17 73:23
74:5
**percentage** 73:16
74:1,2
**performance**
22:13 72:24
**performed** 69:1,7
69:9,13
**period** 21:16
33:22
**permanent** 44:4
**permitted** 14:9,13
15:12
**personal** 54:2
**personally** 54:5
**pest** 68:10
**petition** 57:12
**philip** 3:9
**phone** 6:16 51:13
**phrase** 32:4
**pick** 19:20,24
**picking** 7:14
**place** 73:11
**plains** 1:15
**plan** 15:12 26:25
46:18,20 47:2
51:25 53:2,6,8
54:7,8,13,15

58:18,20 59:19,23
59:23,25 60:10,17
61:6,6 65:16,16
65:17,21,21 66:3
66:4,5 69:5,5,18
70:23 72:6 73:6,8
73:10,17,24 74:1
75:3
**play** 76:24
**played** 68:24
**playing** 39:3
65:13
**pleadings** 25:22
25:24 34:21
**plus** 12:8
**pm** 80:10
**pocket** 28:25
**podium** 25:5
**point** 6:17 9:11
16:17 20:19 21:7
24:18 27:3,14
28:1,11 30:14
31:2 36:21 41:1
48:4,17 60:14
63:16 70:2 77:6
**pointed** 39:7 47:5
55:21
**points** 26:12 31:9
32:14 40:8 47:19
51:20 60:21
**polkowitz** 3:13,17
7:22 51:8,13
52:19,22 53:20
**position** 57:23
60:5 68:17
**positive** 64:11,13
64:13 67:6
**possible** 27:11
52:18
**possibly** 26:23
**post** 8:22 16:23
18:24 57:12

**potentially** 16:9
**practice** 67:11
69:3
**pre** 69:2
**preclude** 65:2
**preference** 8:12
9:16,24 10:5,7,14
14:18 16:19 17:5
17:6 18:10,12
19:9 20:3 21:7,8
21:16,17 22:23
24:5 38:16 71:23
**preliminary**
26:13
**preparing** 37:21
61:13
**prepetition** 57:11
**preponderance**
63:23 66:15
**present** 25:5
**presentation** 7:14
12:25 23:12 36:25
**preserving** 46:7
**pressed** 25:11
**presumably** 59:12
**presumed** 32:8
64:23 67:22
**pretty** 14:25
**prevailed** 68:17
**previously** 30:20
77:3
**primarily** 31:10
32:9,9,10,11,16
32:17 46:22 67:22
68:1 77:14
**prime** 66:3
**prior** 45:2 51:25
**priority** 8:7 15:10
15:13,21 21:11
53:15,25
**probably** 22:9,11
24:11 30:8,25
46:1 60:13

**problem** 67:5
**problems** 71:5
**procedure** 70:25
71:1 75:17
**proceedings** 21:2
80:9 81:4
**proceeds** 19:14
**process** 52:11
53:13 75:6,17
78:13
**production** 6:14
**productive** 22:25
**products** 33:3
44:20 46:12 47:1
67:1 68:15 69:20
**professional**
20:13 29:10,25
41:23 42:1,4,5,10
42:15,21 43:6,18
43:22 49:12 62:13
63:1,6,7 65:14
68:25 72:22
**professionals**
17:11 27:15,16,17
28:18 29:20 34:1
39:16 41:8,24,25
42:7,18 44:8 46:4
49:5,17 61:15
63:1 67:18 69:8,9
69:17 79:18
**program** 8:3,16
13:11 14:10,14
15:6 41:7 42:24
43:9 47:22 48:2
48:15 49:10 51:24
52:16,25 54:15
55:4 60:18 61:4
72:25 73:17,20
**programs** 73:25
**progress** 8:2 11:3
21:21
**projected** 15:2
16:8 80:1

projecting   19:3
  19:16
projections   22:14
  27:10 75:10
promptly   24:2,2
proper   68:12
proponent   66:2
proposal   58:4
proposed   70:23
  70:24
proposing   48:10
proposition   65:8
protecting   64:20
protection   45:4
prove   63:23
provide   62:21
  77:1
provided   6:20
  29:10 34:4 71:2
  71:24 74:13
provides   6:11
  8:14 63:5
providing   30:4
  41:25 42:1
provisions   66:16
purchased   58:13
purely   31:3,5,10
  31:16 32:9 61:8
purpose   25:13
  36:1
purposes   16:3
  43:7 71:3
pursuant   2:12,19
  3:21
pursued   64:20
push   52:17
put   6:8 23:5 46:18
  60:1 72:24
putting   49:21
puzzled   17:8

**q**

qualify   67:14
quality   78:6
quarropas   1:14
quarterly   24:13
question   9:18
  11:16 20:9 22:4
  23:13 35:8 55:5
  79:8
questions   7:11,23
  23:14,18 24:8
  26:14 40:2 56:13
quite   21:20 23:25
  50:7 54:4
quote   32:6 40:21
  44:6 65:4,4,5,7

**r**

r   1:21 5:1 6:1,2
  70:3 73:25 81:1
raise   25:12 40:8
raised   25:9 26:14
  28:1 31:2 74:5
raises   48:16
raising   49:3 75:20
  75:21
range   11:18,22,23
  20:11
rare   65:4 68:5
  77:2
rate   30:7,11 72:17
rationale   48:20
rdd   1:3
reached   36:5,6
  53:12 61:2
reaction   23:17
read   25:21 37:23
  54:8
ready   12:13 23:9
real   17:17 18:14
  19:14 30:16 46:10
  47:12 67:10 79:12
  79:13

realized   40:20
really   7:4 10:23
  12:24 13:20 14:11
  14:13,16,19 16:17
  17:6 18:11,18,20
  20:10 22:19 26:14
  26:16 31:16 32:14
  37:20 40:16,18,22
  41:17 47:14 48:5
  49:17 56:23,25,25
  76:3
reason   51:2
reasonable   2:12
  2:19 3:20 39:23
  62:15 63:6 72:17
  75:10
reasonably   24:2
reasons   21:18
  50:21 51:2
recall   13:10 22:4
  28:20 35:12 41:6
  45:14 51:22 52:5
receive   73:23
received   9:1 26:19
  27:4,5,6 29:23
  30:8,9 53:3 73:23
receiving   53:25
recognized   32:5
  43:23 66:14
recognizing   16:16
  77:10
recollections   73:1
reconciled   8:4,11
  9:24 10:13
reconciliation   8:3
  10:23 15:7 20:18
reconciliations
  23:10
reconciling   10:24
record   34:5 37:4
  37:24 38:21 39:1
  44:13 53:22 56:5
  56:21 60:1 62:2

62:16 72:5 73:7
  76:2 81:4
recording   6:10
records   33:10
recoveries   16:18
  19:9 20:4 22:23
recovery   20:25
  27:10
red   31:5,16 61:7
reduced   15:16
  72:23
reduction   14:22
  14:23 38:19
refer   20:4
reference   71:10
references   77:5
referred   9:13
  76:14
referring   43:12
refers   62:25
regard   70:9 74:12
regarding   42:14
  63:24 79:9
regularly   6:5
reimbursed   46:15
reimbursement
  62:23 63:1,11
  65:2 77:21
relate   20:17
related   2:6,21 3:2
  3:8,16,23 4:2 11:6
  19:9 20:22 33:13
  52:9
relates   79:12
relatively   10:3
relevant   67:9 74:9
relief   44:23 53:21
remain   9:5 15:21
  18:1,13 20:11
  22:17,19,22 45:18
remaining   10:20
  15:4 16:3,19
  17:15 18:14 20:2

20:10 21:13,16
22:13 23:7 79:12
79:23
**remarkable** 47:10
**remember** 11:6
32:25
**remembers** 37:17
**remote** 22:10
74:20
**rendered** 63:7
**repeat** 40:9 44:16
51:19
**repeatedly** 77:5
**reply** 3:19 4:1
26:2,13 36:21
39:7 54:11 56:17
59:3 70:18,18
**report** 7:7 24:23
26:22 29:9 41:2
43:20 79:9
**reported** 50:18
**reporter** 6:8
**reporting** 6:12
**represent** 26:20
27:4,5 36:17 39:8
45:23,23 70:21
**representation**
70:6
**representative**
3:14 7:19,21
16:14 18:5 23:1
26:1 27:1 35:10
51:10,21 52:2,8
52:20 55:25 79:1
79:22
**representatives**
36:15
**represented** 65:18
70:8 72:13 76:4,5
77:7
**representing** 7:20
36:10,11 37:4
40:13 46:22 59:17

76:17
**represents** 39:20
**request** 51:3
61:18
**requested** 33:6
**requesting** 50:11
50:11
**requests** 8:5 39:22
**require** 53:10
**required** 43:16
49:8 73:8 74:7
76:16,25
**requirement** 52:1
**requirements**
56:6 65:10 70:1
73:6
**requires** 17:10
65:5 71:11
**reserve** 13:12,17
13:21 14:9,12,13
17:1 29:11 43:3
**reserved** 68:4
**reserves** 12:12
13:9 14:1,5 15:8
44:3,4 79:21
**resolution** 11:1
16:2 18:4,8 41:11
50:8 72:7
**resolved** 21:8 50:8
58:7
**resolving** 20:18
**respect** 8:9 38:16
45:15 66:3 73:13
76:20
**respects** 71:1
**respond** 40:3
**responded** 60:21
**response** 20:8
56:17
**rest** 26:8
**restructuring**
7:16 45:8,16,22
57:3,19

**result** 41:14 71:19
74:3 78:16
**resulted** 46:9
64:10 65:17 69:22
**resulting** 21:9
**results** 69:22
**resume** 66:4
**resumed** 76:23
**retained** 27:16
41:25 46:4 49:5
59:9 79:17,18
**return** 39:24
**reversed** 57:17
**review** 37:21 52:8
73:2,24
**reviewed** 26:5,7
**rewarded** 39:19
**rid** 38:25
**ridiculous** 49:11
**right** 8:20 9:20,22
10:1,8,9,11,13,15
10:19 12:22 17:1
17:2 18:9,23 20:6
20:23 22:8 23:6
24:9,17 25:3,9
26:23 29:15,16
31:6 34:17,23
35:10,20 37:9
42:19 45:1 49:9
50:1 51:4 56:16
62:6,18 78:4 79:6
80:5
**rising** 60:5 75:13
**risk** 29:7
**road** 81:21
**robert** 1:22
**role** 39:3 65:13
68:24 69:14 72:21
76:24
**room** 1:14
**roughly** 8:10,22
9:7 12:10 16:9
21:15 52:20

**round** 26:19
29:19,23 61:16
**rounding** 61:25
**rows** 8:21
**ruing** 41:15
**rule** 35:9 67:10
76:18
**ruled** 49:14 78:18
**ruling** 23:19
42:13,17 43:17
49:9

**s**

**s** 2:6,22 3:2,8,16
3:23 4:2 5:1 6:1,2
11:21
**s.d.n.y.** 64:22 66:9
66:11,20 67:2,3
70:11
**sale** 45:15
**sarachek** 35:2
**satisfied** 15:4
19:23 50:22
**satisfy** 42:22
53:21 61:11 73:6
74:15
**satisfying** 43:8
**saw** 61:14
**saying** 36:25 38:9
38:12 45:21 49:9
60:23
**says** 9:23,23 48:3
**scenario** 54:21
**scheduled** 2:1 6:5
**scheme** 39:15
**schrock** 28:21
29:6 38:9 48:15
48:25
**scroll** 11:9 12:5
**scrutinized** 53:17
**sculpture** 17:19
**sears** 1:7 3:3,10
6:4 79:13

**seat** 33:24,24 59:1
**second** 12:8,15,16
  21:23 27:22 28:6
  28:9 29:1,13 32:2
  43:13,21 44:1
  49:22 55:23 63:15
  72:8
**secret** 36:5 57:25
**section** 56:7 62:20
  63:2,5,14,22 64:1
  64:7 65:4 66:23
  67:25 68:9 71:3
  71:23 73:4 74:25
  75:1 77:4,24 78:5
**sections** 25:1
  68:23 70:16 74:22
  78:22
**secured** 15:20,24
**securitizations**
  70:9
**see** 8:21 9:21,25
  10:1,20 11:14
  13:4,6 15:3 18:15
  19:14,23 21:15
  22:2,3 25:4,8
  26:23 29:10 44:24
  50:5,15 65:7 66:8
  70:9 74:1
**seeing** 17:24
**seeking** 30:13
  33:1,10,12,20
  53:15 63:21,21
  75:15
**seen** 21:1
**segregated** 13:14
  42:6
**selected** 52:19
**self** 65:1 67:24
**sense** 40:23 58:15
**sent** 50:18
**separate** 14:8
  17:2 48:17

**separately** 41:3
**sept** 64:16 66:9
**served** 77:6
**service** 64:10
**services** 30:4,18
  32:10 33:8,11,12
  33:13,20 63:1,6,7
  63:10,10 64:8,14
  65:20 67:17,25
**set** 26:13 41:24
  52:3 70:4 75:16
**setoff** 10:6
**settle** 23:24 38:10
  38:10,13 78:24
**settled** 10:16 21:8
  21:20 23:23 27:19
  47:3 49:16 52:23
  76:11
**settlement** 8:22
  10:7 19:19 28:12
  29:4 37:15,18,23
  38:19,22 40:24,24
  41:7 42:8 52:25
  54:19 55:1,17
  60:18 68:13 70:25
  71:21 72:2,2,4,7
  72:10 74:19 76:21
  77:16 78:10
**settlements** 52:9
**settling** 61:9,19
**share** 51:17
**sharing** 42:20
**shed** 67:10
**sheet** 36:9
**short** 52:21
**shorten** 2:6
**shortfall** 16:4
  42:20
**shorthand** 14:18
**shortly** 22:12
**show** 8:21 53:23
  70:15 75:23 80:2

**showed** 37:22
**showing** 11:22,25
  15:11
**shown** 13:1 54:3
**shows** 11:11
**sic** 76:3,11
**side** 61:21
**sides** 23:24
**significant** 17:10
  40:22 51:22 52:24
  54:16,23 58:2
  64:10 67:6 77:10
**significantly** 30:7
**similar** 66:1 70:2
  73:13,25
**similarly** 49:4
  68:14 70:20
**simply** 28:15
  31:18 73:24 74:12
  76:24
**singh** 3:3 5:15
  6:22,23 7:1,13 8:2
  9:12,17,21 10:2,4
  10:8,11,13,19
  11:3,8 12:4,16,19
  12:23 13:24 14:2
  14:4,16 16:22
  17:2,7,21 18:24
  20:7,24 21:24
  22:2,7,10 24:7,9
  24:11,16,21 25:3
  37:23 38:21,23
  40:5,6 41:20,22
  43:15 44:5,7,12
  51:18 55:21 57:3
  60:22 79:3,6 80:8
**single** 47:11
**singular** 46:2 47:3
**sit** 44:16
**situated** 68:14
  70:20
**situation** 45:1

**sky** 64:15
**slide** 11:10 12:5
  12:23,24
**slippery** 47:12
**slope** 47:12
**small** 10:3
**sml** 63:18
**sole** 60:16
**solely** 67:24 78:4
**solution** 54:12
**solutions** 6:11
  81:20
**solvent** 45:18
**sonya** 4:25 81:3,8
**soon** 23:21
**sooner** 16:12
  24:12 80:3
**sorry** 11:4 13:23
  25:10 32:1 33:22
  38:4 41:22 65:23
**sort** 7:17,20 8:17
  9:5 10:16 11:15
  12:20 13:2,4,11
  13:20 14:6,19,23
  15:16 16:4,8,17
  16:19 17:3,24
  18:1,10,15 19:23
  20:14,19 21:11
  22:12,20,20 23:9
  24:5 29:20 41:13
  44:13,16 45:4,25
  48:8,22 50:2,14
  79:12,17,17
**sought** 53:15,22
**sources** 19:2,7
**southern** 1:2 68:8
**spahr** 25:8
**speak** 6:7 25:9
  60:13 76:15
**speaking** 6:17
**specialists** 21:17
**specific** 64:3 74:6

specifically 73:5
specified 62:23
spectrum 46:11
spend 17:23 53:2
spending 18:21
spent 34:2
split 61:1
spoke 38:17
st 63:18 68:21
stages 23:4
stakeholder 37:12
standard 31:6,17
  31:17,22,25 32:2
  40:17 44:15 47:16
  47:17 49:24 50:17
  53:21 61:11 70:10
  78:19
standards 66:12
standing 36:23
stark 44:17
start 16:15
started 48:18,24
starting 7:14
state 43:11 59:20
  66:22 67:4 68:9
stated 76:7
statement 26:13
  27:11 35:9 36:1
  43:11,14 76:16
statements 44:9
  56:21 63:24
states 1:1,13 64:5
  66:19 68:21
status 2:4 7:4 8:7
  11:14 13:3 19:4
  26:22 29:9 53:15
  79:8
statute 34:10 39:4
  74:15
statute's 67:14
  71:10
stockholders 67:9
  74:9

stopped 54:11
  56:24
street 1:14
stretch 15:12
strictly 66:23
stringent 53:21
  56:6
subclass 73:21
subject 9:15,24
submit 27:17
  31:23 34:10 39:4
  39:21 45:20 46:25
  50:21 57:23 61:5
  61:6 62:1,16
  78:23
submitted 71:15
subparagraph
  63:8
subsection 62:24
  63:2,9
subsequent 43:20
  55:20
subsequently
  41:15 60:15
subset 71:12
  74:14,18,18 75:25
substantial 2:13
  2:21 3:1,7,14,22
  4:1 24:25 27:7,21
  32:3,7 33:2,7
  44:19,24 46:22,24
  47:11,17,20 48:2
  49:24 50:23 51:1
  51:15 53:24 54:1
  56:2,4 59:22
  61:12,24 63:3,23
  63:25 64:2,7,18
  64:25 65:12,23,25
  66:7,13 67:15,21
  68:22 69:11,25
  70:15 71:2,18
  74:10 78:5

substantially
  66:11
successful 27:8
  69:4
successfully 25:12
sufficient 24:3
suggest 16:6
suggesting 20:20
  24:4 58:16
suite 81:22
sum 30:23 55:24
  68:20
summarize 12:5
summary 8:14
sunny 3:3 5:15
  6:23 40:5
supplement 26:7
supply 30:18
support 2:17 3:19
  4:1 25:24 26:8
  43:11 58:17 61:3
  65:22
supported 30:17
supporting 25:23
  58:14 70:17
supposed 39:4,5
sure 21:1 22:3
  32:25 34:13 48:12
  60:21
synonyms 67:5
systems 79:23

t

t 81:1,1
table 33:24 45:11
  54:24 59:2
tail 18:16
tailored 74:19
take 9:7 13:8,21
  29:7 57:22 58:17
takeaways 22:13
  22:13
taken 6:11 20:12

talk 59:21
talking 28:8,21,23
  29:14 30:17
tallies 44:9
tangible 56:9
  66:25
tasked 52:10
tax 14:17 15:10
  15:13,15
taxes 79:13
teamed 59:7
telephonic 2:2 6:6
  6:16
telephonically
  5:15
tell 56:22
term 16:25 36:9
  66:13
terms 8:2 10:22
  10:24,25 11:3,20
  12:1 15:2,13 19:2
  19:7 21:7 22:12
  22:19 23:7 37:15
  40:25 72:6
test 32:8 64:25
  67:22
text 22:11
thank 6:22 7:1
  24:9,16 25:17
  26:10 31:1 51:4
  51:12 56:15,18
  79:3 80:5,8
thankfully 23:8
thanks 12:3 18:23
  24:15 51:11 56:14
  80:7
that's 7:12 10:3,8
  10:11,13 13:9,14
  14:7,9,11,12,19
  15:1 16:9,20 17:2
  17:6 18:19,20
  20:5 21:10 25:3,3
  25:15,15 27:5,6

27:20 29:11,16,18
30:9 31:6,24
32:13 33:8 34:17
34:17 38:11 39:3
39:22 40:16 41:19
46:1,6,21,24,25
47:22 53:16 55:1
56:14 57:10 58:7
59:1,6,16,18
60:14
**theory** 30:15
**there's** 6:10 8:9
8:25 10:14 13:24
14:5,5 17:16,21
18:11 23:8 26:3
29:24,24 31:23
32:1 39:7,8 42:3,4
44:10,17 45:21,22
46:3 47:9,10,15
48:4,6 55:12
61:14
**they're** 9:2,15
11:25 21:19 29:20
29:22 31:9 44:4
59:11 61:23
**they've** 30:8
39:12
**thing** 78:20
**things** 17:22 18:1
18:17 48:4 52:3
59:20,22 61:1
79:11
**think** 9:8 15:18,22
17:18 19:6,13
21:3 23:2,22
25:21 26:3 29:5
30:24,25 32:14,19
35:6,14,15 37:18
37:22 38:20 39:11
39:13 40:1 43:10
43:15,25 44:17,21
47:15,22 48:24
50:24 53:9,22

58:23 62:6,8,14
66:2 68:7 74:23
78:3 79:4
**thinking** 15:16
16:15
**third** 19:15 21:6
57:17 73:14,21,21
**thorn** 61:21
**thought** 28:1
58:24
**three** 8:21 15:17
27:13 47:18 48:4
62:22 64:14 71:1
71:20 74:13 76:6
**throwing** 38:24
**tide** 60:5 75:13
**time** 2:6 6:7 7:11
11:13 23:25 28:8
28:22 29:14 30:2
30:15 33:10 37:5
42:2,2 43:1,19,19
43:25 44:2 52:21
63:9 75:18
**times** 38:9 77:3
78:18
**timing** 16:19
20:22 28:4 37:18
50:3 55:12,21
61:7
**title** 63:4,11
**today** 11:16 13:3
20:2 51:13 53:20
79:5
**today's** 6:13,20
12:24 24:23 61:13
**top** 10:14 13:7
18:14
**total** 9:7,23 11:5
11:18 13:9,20
14:5 15:4 26:20
41:17 43:6
**totally** 20:10

**touch** 57:2
**touched** 20:8
49:25
**toys** 48:18 73:25
**tracking** 13:4
**trade** 46:12,16,17
58:13
**traders** 58:11
**transaction** 45:17
**transcribed** 4:25
**transcript** 6:13
48:13 54:9 55:11
73:2 76:7 81:4
**transferred** 42:9
42:15,21 43:6
**transfers** 21:16
**transform** 19:18
19:22 45:15
**treatment** 48:9
49:2 74:2 75:3
**tremendous** 27:9
**trending** 17:25
**tried** 18:24
**tries** 48:7
**true** 44:10 81:4
**trued** 42:2 43:19
**truly** 65:6 68:6
**trust** 13:13 42:6
43:2
**trustee** 46:9
**try** 16:1 24:12,12
27:20 31:20 51:19
**trying** 18:6 40:14
46:13 47:6,25
**turn** 51:5
**turned** 46:8
**tweaking** 61:7
**two** 8:15,17,23
12:7 13:11,24
14:5 27:12 28:6
30:9,12 31:9
32:14,18 34:15,22
37:5,19 42:3

43:15,18 44:20
50:14 52:23 54:9
60:18,25 64:9
68:7 70:8 74:22
**type** 54:20 74:20
78:19

**u**

**u.s.** 1:23 64:16
**ucc** 51:25 52:22
53:12 54:6
**ultimately** 9:9
41:5 46:9 47:2
52:16 55:2,18,22
**uncashed** 12:11
**unclear** 53:5
**understand** 17:9
28:11 30:21,24,25
**understood** 28:22
**undertaken** 67:23
69:8
**undisputed** 62:16
**unidentified**
71:14
**unique** 47:9,15
**united** 1:1,13
66:19
**unmute** 6:17
25:12
**unquote** 40:21
**unsecured** 3:6,10
26:1 27:11 45:5
**unusual** 64:4
**update** 7:4 11:14
19:4 20:25 24:10
24:13
**updates** 21:1
**ups** 44:10
**urging** 55:11
**use** 14:18 79:24
**uses** 11:11 15:3
19:2 20:8,11
**utility** 19:20

**v**

**v**  64:15
**value**  19:25 21:9
 21:12 28:8 29:14
 30:2,15 39:18
 52:11 54:23 55:3
 63:10 67:7
**variance**  13:3
**various**  21:18
 42:23 79:25
**vendor**  33:15 55:5
 55:6 57:22 58:13
 59:17 79:23
**vendors**  30:17
 36:12 58:2,15,25
 59:5,13 60:12
 71:14,15 79:19
**veritext**  81:20
**veto**  75:8
**view**  27:3,14
 55:10 57:15
**viewed**  69:23
 75:13
**vigorously**  59:25
**vision**  76:2,11
**voice**  6:9 40:16
 47:8
**void**  46:4
**voluntarily**  42:9

**w**

**waived**  21:11
**walk**  7:10
**walked**  18:25
**walker**  1:25
**wander**  2:7,14,17
 3:23 4:1,3 5:8
 25:4,20 26:3,6,10
 26:11 27:24 28:10
 28:17 29:8,16,22
 30:14,21 31:1,8
 31:11,13,15 32:23
 34:13,19,24 35:3
 35:7,11,22 36:3

36:23 37:8,10,17
38:4,7,11 40:1,7
40:12 41:11,16
43:12 44:14,24
46:4 47:18 49:3
49:18 51:6 54:3
54:18 56:17,18,19
62:6,10,12 78:25
**wander's**  45:20
 47:13
**want**  6:13 9:19
 15:11 16:25 26:6
 26:8,12 32:15
 54:25 59:16 60:21
 62:7 79:7
**wanted**  20:24
 62:12
**warrant**  53:25
 66:7 69:25
**warranted**  56:4
 65:22
**wasn't**  28:4 33:18
 33:22 55:4 60:4
**way**  8:20 24:2
 41:13 47:7 57:20
 57:25
**ways**  16:15 23:2
**we've**  21:12 79:21
**weekend**  37:22
**weeks**  60:25
**weil**  5:10 6:23
 33:1,6 35:24 40:6
**welcome**  12:4
**went**  19:21 38:18
 42:18 48:9 49:17
 58:4 59:18 66:21
**weren't**  38:24
**westinghouse**
 66:8
**we'll**  7:22 24:12
 24:12
**we're**  6:4 7:20
 11:18,20,21,22

12:1 14:17 18:21
22:15 23:4 29:14
30:17 39:5 44:8
62:6
**we've**  7:22 8:4,7
 8:11,23 9:5 10:13
 12:11,12 13:1,4
 13:16 14:24,24
 15:2 16:5,13 19:5
 19:14,16,18,21
 20:10,19 21:3,13
 22:14,25 23:5,9
 30:24 45:7
**what's**  16:3 17:19
 21:19 39:21
**white**  1:15
**wholesale**  66:5
**who's**  25:18 27:5
**who've**  26:19 27:4
 45:7
**witnesses**  34:3,4
**wonder**  61:17
**won't**  23:24
**wood**  21:20
**word**  31:5,15
 64:12
**words**  28:24
 55:16 77:4 78:11
**work**  7:22 17:9,10
 18:8 23:9 32:18
 42:21 46:15 52:22
 53:10,11 67:7
 78:7,9,11,12,15
 78:20
**worked**  7:17
**works'**  17:18
**world**  57:1,9,15
 57:22 58:2,6
**wouldn't**  28:15
 29:4,19 35:20
 58:18
**would've**  28:7
 29:12 38:8 43:16

44:2 58:20,21,22
58:23
**wrap**  62:8
**wrapped**  62:10
**wrong**  25:8 45:22

**x**

**x**  1:4,10

**y**

**yeah**  10:2,19
 12:18 17:7 22:10
 24:11 31:14 35:7
**year**  12:9 16:5,7
 16:11,24 19:20
 26:24 30:9 53:2
 54:4 80:1
**years**  30:9,12
**york**  1:2 5:6,13
 63:18 68:8
**you'd**  9:22
**you'll**  29:10
**you're**  6:17 10:15
 12:4 17:14 18:9
 18:17 23:16 27:25
 28:7 29:6 30:12
 31:15 34:17 49:10
**you've**  15:20 20:7
 21:3 45:8 49:20

**z**

**zealously**  62:3