1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 18-23538-rdd

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    SEARS HOLDINGS CORPORATION,

8            Debtor.

9    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10    Adv. Case No. 20-07007-rdd

11    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12    SEARS HOLDINGS CORPORATION et al.,

13                Plaintiffs,

14            v.

15    TISCH et al.,

16                Defendants.

17    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

18    Adv. Case No. 19-08250-rdd

19    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

20    SEARS HOLDINGS CORPORATION et al.,

21                Plaintiffs,

22            v.

23    LAMPERT et al.,

24                Defendants.

25    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Page 2

```
 1                    United States Bankruptcy Court

 2                    300 Quarropas Street, Room 248

 3                    White Plains, NY 10601

 4

 5                    February 23, 2021

 6                    10:13 AM

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21   B E F O R E :

22   HON ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   JUSTIN WALKER
```

Page 3

1    HEARING re Notice of Agenda of Matters Scheduled for

2    Telephonic Hearing on February 23, 2021 at 10:00 a.m.

3

4    HEARING re Notice of Hearing on Interim Applications for

5    Allowance of Compensation and Reimbursement of Expenses on

6    February 23, 202 l at 10:00 a.m. (related

7    document(s)9179, 9191, 9181, 9185, 9180, 9183, 9182)

8

9    HEARING re Sixth Application of Weil, Gotshal & Manges LLP,

10   as Attorneys for the Debtors, for Interim Allowance of

11   Compensation for Professional Services Rendered and

12   Reimbursement of Actual and Necessary Expenses Incurred

13   Period: 7/1/2020 to 10/31/2020, fee:$2,006,207.00, expenses:

14   $153,835.61. filed by Weil, Gotshal & Manges LLP.

15   (ECF #9183)

16

17   HEARING re Fourth Interim Fee Application of Prime Clerk,

18   Administrative Advisor to the Debtors, for Compensation for

19   Services and Reimbursement of Expenses for the Period from

20   July 1, 2020 through October 31, 2020 Filed by Adam M. Adler

21   on behalf of Prime Clerk LLC. (ECF #9185)

22

23

24

25

1   HEARING re Sixth Interim Fee Application of Akin Gump

2   Strauss Hauer & Feld LLP as Counsel to the Official

3   Committee of Unsecured Creditors for Allowance of

4   Compensation for Services Rendered and Reimbursement of

5   Expenses for the Period: 7/1/2020 to  10/31/2020, fee:

6   $3,684,378.50, expenses: $4,083,695.70. filed by Akin Gump

7   Strauss Hauer & Feld LLP. (ECF #9180)

8

9   HEARING re Sixth Interim Application of FTI Consulting,

10   Inc., Financial Advisor to the Official Committee of

11   Unsecured Creditors of Sears Holdings Corporation, et al.,

12   for Interim Allowance of Compensation and Reimbursement of

13   Expenses for the Period: 7/1/2020 to 10/31/2020, fee:

14   $37,480.50, expenses: $140.00. filed by FTI Consulting, Inc.

15   (ECF #9181)

16

17   HEARING re Third Interim Fee Application of Herrick,

18   Feinstein LLP as Special Conflicts Counsel to the Official

19   Committee of Unsecured Creditors for Allowance of

20   Compensation for Services Rendered and Reimbursement of

21   Expenses for the Period of July I, 2020 Through and

22   Including October 31, 2020 filed by Herrick, Feinstein LLP.

23   (ECF #9179)

24

25

Page 5

1    HEARING re Second Application for Interim Professional

2    Compensation OF MORITT HOCK & HAMROFF LLP AS SPECIAL

3    CONFLICTS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED

4    CREDITORS FOR ALLOWANCE OF COMPENSATION FOR SERVICES

5    RENDERED AND REIMBURSEMENT OF EXPENSES, Period: 7/1/2020 to

6    10/3 1 /2020, fee:$273,3 71.00, expenses: $3,566.21 filed by

7    James P Chou. (ECF #9182)

8

9    HEARING re Fifth Joint Application of Paul E. Harner, as Fee

10   Examiner and Ballard Spahr LLP, as Counsel to the Fee

11   Examiner for Interim Allowance of Compensation for

12   Professional Services Rendered and Reimbursement of Actual

13   and Necessary Expenses Incurred Period: 7/1/2020 to

14   10/31/2020, fee:$348,947.00, expenses: $324.94. (ECF #9191)

15

16   HEARING re Adversary proceeding: 20-07007-rdd Sears Holdings

17   Corporation et al v. Tisch et al Motion to Consolidate for

18   Trial /NOTICE OF MOTION TO CONSOLIDATE RELATED ADVERSARY

19   PROCEEDINGS AND ENTER AN AMENDED SCHEDULING ORDER (ECF #76)

20

21

22

23

24

25

Page 6

1    HEARING re Adversary proceeding: 20-07007-rdd Sears Holdings

2    Corporation et al v. Tisch et al Objection to Motion

3    Objection of Defendant HSBC Bank Bermuda Limited to

4    Plaintiffs' Motion to Consolidate Related Adversary

5    Proceedings and Enter an Amended Scheduling Order (related

6    document(s)76) filed by Nickolas Karavolas on behalf of Bank

7    of Bermuda (ECF #79)

8

9    HEARING re Adversary proceeding: 20-07007-rdd Sears Holdings

10   Corporation et al v. Tisch et al Objection to Motion I

11   Limited Objection of the Non-Insider Defendants to Motion to

12   Consolidate Related Adversary Proceedings and Enter an

13   Amended Scheduling Order (related document(s)76) filed by

14   Melissa Boey on behalf of the Sears Non-Insider Defendant

15   Group. (ECF #85)

16

17   HEARING re Adversary proceeding: 20-07007-rdd Sears Holdings

18   Corporation et al v. Tisch et al Objection Notice of Joinder

19   in the Limited Objection of the Non-Insider Defendants to

20   the Motion to Consolidate the Related Adversary Proceedings,

21   and Enter an Amended Scheduling Order (related

22   document(s)85) filed by Daniel J. Guyder on behalf of HBOS

23   FINAL SALARY PENSION SCHEME. (ECF #86)

24

25

Page 7

1    HEARING re Adversary proceeding: 20-07007-rdd Sears Holdings

2    Corporation et al v. Tisch et al Objection Joinder to

3    Limited Objection of the Non-Insider Defendants to the

4    Motion to Consolidate Related Adversary Proceedings and

5    Enter an Amended Scheduling Order (related document(s)85)

6    filed by Bill Gussman on behalf of Andrew H Tisch, Daniel R

7    Tisch, Trustee of the Andrew H. Tisch (ECF #88)

8

9    HEARING re Adversary proceeding: 20-07007-rdd Sears Holdings

10   Corporation et al v. Tisch et al Objection /Joinder in

11   Limited Objection ofNon-Insider Defendants to Motion to

12   Consolidate (related document(s)85) filed by Hugh M.

13   McDonald on behalf of MUFG UNION BANK NA. (ECF #89)

14

15   HEARING re Adversary proceeding: 20-07007-rdd Sears Holdings

16   Corporation et al v. Tisch et al Objection /Joinder In

17   Limited Objection Of The Non-Insider Defendants To Motion To

18   Consolidate (related document(s)85) filed by Brian J.

19   Poronsky on behalf of GF TRADING LLC, HAP TRADING, LLC, RIEF

20   RMP LLC, RIEF Trading LLC.(ECF #90)

21

22

23

24

25

Page 8

1   HEARING re Adversary proceeding: 20-07007-rdd Sears Holdings

2   Corporation et al v. Tisch et al Objection to Motion Joinder

3   and Limited Objection of the Horizon and Prescott Defendants

4   to Motion to Consolidate Related Adversary Proceedings and

5   Enter an Amended Scheduling Order (related document(s)76)

6   filed by Robert Honeywell on behalf of HORIZON SPIN-OFF &

7   CORP. RESTRUCTURING FD., Kinetics Portfolio Trust, PRESCOTT

8   ASSOCIATES LP, PRESCOTT GENERAL PARTNERS LLC, PRESCOTT

9   INTERNATIONAL PARTNERS LP, PRESCOTT INVESTORS INC.

10  (ECF #91)

11

12  HEARING re Adversary proceeding: 20-07007-rdd Sears Holdings

13  Corporation et al v. Tisch et al Motion to Join Non-Insider

14  Defendants Motion to Consolidate Related Adversary

15  Proceedings and Enter an Amended Scheduling Order filed by

16  John B. Orenstein on behalf of AQR DELTA FUND, LP, AQR DELTA

17  MASTER ACCOUNT, L.P., AQR DELTA XN FUND, LP, AQR Delta

18  Sapphire Fund, LP. (ECF #93)

19

20

21

22

23

24

25

Page 9

1    HEARING re Adversary proceeding: 20-07007-rdd Sears Holdings

2    Corporation et al v. Tisch et al Response to Motion

3    /PLAINTIFFS OMNIBUS RESPONSE TO MOTIONS TO DISMISS (related

4    document(s)39, 62, 65, 48. 67, 60  69, 43, 64, 46, 61, 55)

5    filed by Joseph L. Steinfeld Jr. on behalf of Sears Holdings

6    Corporation, Sears, Roebuck and Co., The Official Committee

7    of Unsecured Creditors of Sears Holdings Corporation, et al.

8    (ECF #94)

9

10   HEARING re Adversary proceeding: 20-07007-rdd Sears Holdings

11   Corporation et al v. Tisch et al Reply to Motion /Plaintiffs

12   Reply Brief in Support of Their Motion to Consolidate

13   Related Adversary Proceedings and Enter an Amended

14   Scheduling Order (related document(s)76, 93) filed by Joseph

15   L. Steinfeld Jr. on behalf of Sears Holdings Corporation,

16   Sears, Roebuck and Co., The Official Committee of Unsecured

17   Creditors of Sears Holdings Corporation, et al. (ECF #95)

18

19   HEARING re Adversary proceeding: 19-08250-rdd Sears Holdings

20   Corporation et al v. Lampert et al Motion to Consolidate for

21   Trial/ NOTICE OF MOTION TO CONSOLIDATE RELATED ADVERSARY

22   PROCEEDINGS AND ENTER AN AMENDED SCHEDULING ORDER filed by

23   David M. Zensky on behalf of Sears Holdings Corporation

24   (ECF #232)

25

1   HEARING re Adversary proceeding: 19-08250-rdd Sears Holdings

2   Corporation et al v. Lampert et al Statement (related

3   document(s)232) filed by David M. Zensky on behalf of Big

4   Beaver of Florida Development, LLC, lnnovel Solutions, Inc.,

5   Kmart Corporation, Kmart Holding Corporation, Kma11 Stores

6   of Illinois, LLC, Kmart of Washington, LLC, MaxServ, Inc.,

7   SHC Desert Springs, LLC, STI Merchandising, Inc., Sears

8   Brands Business Unit Corp., Sears Brands, LLC, Sears

9   Development Co., Sears Holdings Corporation, Sears Holdings

10  Management Corp., Sears, Roebuck Acceptance Corp., Sears,

11  Roebuck and Co., Sears, Roebuck de Puerto Rico, Inc., The

12  Official Committee of Unsecured Creditors of Sears Holdings

13  Corporation, et al., acting on behalf of the Debtors'

14  Estates, Troy Coolidge No. 13, LLC. (ECF #233)

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 11

1    A P P E A R A N C E S :

2

3    WEIL GOTSHAL & MANGES LLP

4         Attorneys for Debtors

5         767 Fifth Avenue

6         New York, NY 10153

7

8    BY:  GARRETT FAIL

9         JACQUELINE MARCUS

10

11   BALLARD SPAHR LLP

12        Attorneys for Fee Examiner

13        1675 Broadway

14        New York, NY 10019

15

16   BY:  PAUL E. HARNER

17        TOBEY M. DALUZ

18

19   HERRICK, FEINSTEIN LLP

20        Attorneys for Official Committee of Unsecured Creditors

21        & Litigation Designees

22        Two Park Avenue

23        New York NY 10016

24

25   BY:  CHRISTOPHER CARTY

Page 12

```
 1    AKIN GUMP STRAUSS HAUER & FELD LLP

 2         Attorneys for Official Committee of Unsecured Creditors

 3         One Bryant Park

 4         New York, NY 10036

 5

 6    BY:  SARA BRAUNER

 7         DAVID ZANSKY

 8

 9    WILMER HALE LLP

10         Attorneys for Lampert et al.

11         7 World Trade Center

12         New York, NY 10007

13

14    BY:  DEAN CHAPMAN

15

16    MORGAN LEWIS

17         Attorneys for The Sears Non-Insider Defendant Group

18         1 Federal Street

19         Boston, MA 02110

20

21    BY:  SABIN WILLETT

22

23

24

25
```

Page 13

```
 1   PHILLIPS LYTLE
 2        Attorneys for HSBC Bank Bermuda Limited
 3        340 Madison Avenue
 4        New York, NY 10173
 5
 6   BY:  NICHOLAS KARAVOLAS
 7
 8   ALSO PRESENT TELEPHONICALLY:
 9
10   C. LEE WILSON
11   JASON FOUNTAIN
12   CARLY EVERHARDT
13   PHILIP ANKER
14   ALIX BROZMAN
15   NOAH LEVINE
16   JACQUELINE MARCUS
17   BEN PAULL
18   CHRISTOPHER STAUBLE
19   DAVID ZENSKY
20   LEE J. ROHN
21   PHILLIP C. DUBLIN
22   JOSEPH SZYDLO
23   RICHARD REDING
24   THOMAS ROSS HOOPER
25   KARA CASTEEL
```

1   JOSEPH STEINFELD

2   SHANNON GROSS

3   PAUL SCHWARTZBERG

4   NOVA ALINDOGAN

5   NAKISHA DUNCAN

6   MATTHEW GURGEL

7   SIDNEY P. LEVINSON

8   ERIC WEISGERBER

9   DANIEL SHAMAH

10  LAUREN WAGNER

11  JULIA FROST-DAVIES

12  PETER BUENGER

13  ROBERT HONEYWELL

14  JOHN MOLINO

15  MELISSA BOEY

16  ELLIOT MOSKOWITZ

17  WAYNE KELLNER

18  JOHN ORENSTEIN

19  RANDALL ADAMS

20  ROBERT ROSEN

21  VICTOR OBASAJU

22

23

24

25

1              P R O C E E D I N G S

2              THE COURT:  Good morning.  This is Judge Drain.

3      We are here in In Re Sears Holding Corp., et al. for the

4      February omnibus hearing.

5              This is being conducted completely telephonically.

6      You therefore should identify yourself and your client not

7      only the first time you speak, but thereafter so that the

8      court reporter and I can put together your voice with your

9      name.

10             There is one authorized recording of today's

11     calendar.  It's taken by Court Solutions, which provides a

12     copy and will do so today to our clerk's office.  If you

13     want a transcript of your hearing today, you should contact

14     the clerk's office to arrange for the production of one.

15             Finally, because this is a completely telephonic

16     calendar, you should keep your phone on mute unless of

17     course you're speaking, at which point you need to unmute

18     yourself.

19             So with that introduction, I have the amended

20     agenda filed by the Debtors and I'm happy to go down that

21     agenda in the order stated.

22             MR. FAIL:  Thank you, Your Honor.  Good morning.

23     For the record, Garrett Fail, Weil, Gotshal & Manges for the

24     debtors.  Are you able to hear me all right?

25             THE COURT:  Yes, I can hear you fine, thanks.

1        MR. FAIL:  Thank you, Your Honor.  I'm glad you

2   have the amended agenda filed late last night, at Docket

3   9310 for others following along.  There are eight items on

4   the agenda.  The first seven are interim fee applications.

5   In the past we've taken them collectively.  I suggest that

6   we do the same unless Your Honor has another preference.

7   They include Weil, Gotshal & Manges, Prime Clerk, Akin Gump,

8   FTI Consulting, Herrick Feinstein, Morritt, Hock and

9   Hamroff, and Mr. Harner as the fee examiner.  Those are the

10  seven that are going forward this morning on an uncontested

11  basis.

12        THE COURT:  Okay.

13        MR. FAIL:  I see a number of the professionals are

14  on the line if you have any questions.

15        THE COURT:  I have questions only on three.  But

16  why don't I begin to ask first whether there have been any

17  developments on any of these applications, i.e. any changes

18  to the amounts sought.

19        MR. FAIL:  We are not aware of any, Your Honor.

20  And I have a proposed order subject to today's hearing that

21  we could submit following the hearing.  But that's the only

22  reason we haven't submitted anything.

23        THE COURT:  Okay.  And I just want to confirm,

24  although I think it's clear from my review of his fee

25  application or his firm's fee application, Mr. Harner, you

Page 17

1   have reviewed each of these applications and they reflect

2   your input?

3              MR. HARNER:  Your Honor, we filed a, as we have

4   periodically done with each interim fee application hearing,

5   a status report that for some reason does not appear on this

6   morning's agenda.  So apologies if Your Honor did not see

7   that.  But we filed that a couple of weeks ago.

8              Among other things in that report, we indicated

9   that we are largely complete, reviewing all of the fee

10  applications through the fifth and the sixth reports will be

11  submitted to the various professionals in short order.  This

12  order, as the prior orders -- this proposed order to which

13  Mr. Fail refers, like the prior orders, does, however, put a

14  reservation of rights for us to complete that work and

15  likewise to continue our ongoing conversations with the

16  professionals about issues we may have identified.

17             THE COURT:  Okay.  Do you recommend any holdback

18  in light of that work, or are you content with the

19  reservation and the right to get disgorgement if you

20  conclude that an objection is warranted to any fee

21  application that I would be considering today?

22             MR. HARNER:  Your Honor, my response to that

23  question is the same as when you have inquired at prior

24  hearings when you have identified issues that need to be

25  resolved and it may result in adjustments to fees that were

1    either applied for or previously approved on an interim

2    basis by the Court.  We remain satisfied that the ability

3    and financial wherewithal of each of these firms to disgorge

4    if necessary is sufficient at this point in the cases.

5              THE COURT:  Okay.  All right.  I said I had three

6    questions, and why don't I just go through them.  First, on

7    the Weil Gotshal application, there is about 414 hours of

8    time on real property leases, Section 365 issues, cure

9    amounts.  I'm really -- this is more curiosity than

10   anything, although it may relate to the time spent.  Is this

11   work primarily with regard to leases that were neither

12   rejected nor assigned to the buyer under the APA?  I'm just

13   confused how --

14             MR. FAIL:  That is -- so I don't know that they're

15   necessarily all leases, but it does related to the Debtor's

16   additional sales of parcels, Your Honor.  And if my partner,

17   Jacqueline Marcus, wants to correct me, she can.  I know I

18   asked the question recently independently of this hearing.

19   But there was additional -- there is still additional real

20   estate work to wind down and to monetize additional parcels

21   and assets.  So it is not related to the Transform

22   transaction, or it's not --

23             THE COURT:  Okay.

24             MR. FAIL:  It's certainly not exclusively or

25   majority related to the Transform transaction from my

Page 19

1   understanding.

2          MS. MARCUS:  Your Honor, this is Jacqueline Marcus

3   from Weil, just to supplement on behalf of the Debtors.  The

4   real estate area has been one of the ones which I have been

5   primarily involved.  And Mr. Fail is correct.  Although our

6   task code is 365 and assumption or rejection, we've really

7   used that task code for all real-estate-related matters, and

8   that includes the sales of various parcels as well as

9   disputes that have arisen for the period of time when the

10  Debtors were in possession.  So I'll call it a little bit of

11  a catchall for real estate related matters.

12         THE COURT:  Okay.  That's helpful.  And then the

13  amounts that the Debtors are looking to realize on these

14  sales or the amounts that were at issue based on any claims

15  that the other parties might have, are those well in excess

16  of $378,000?

17         MS. MARCUS:  Yes, Your Honor.  There have been

18  actually several real estate dispositions that have been,

19  you know, in the several hundred thousand range, some more

20  than a million.  So they are kind of odds and ends, but they

21  have generated significant recoveries for the estate.

22         THE COURT:  Okay, thank you.  All right.  And then

23  on the Herrick application, first I'll note that most of the

24  time for this application is for the role of Herrick as

25  conflicts counsel in the joint reasserted causes of action.

Page 20

1    But a fair amount of time was also spent on the

2    investigation of the so-called MTN transactions.  And I

3    really haven't heard much about that in the last really over

4    a year, maybe more than over a year.  Is that matter still

5    ongoing?

6            MR. CARTY:  Your Honor, this is Christopher Carty

7    of Herrick Feinstein.  Yes, that investigation is still

8    ongoing, although we are getting towards the end of it.

9            THE COURT:  Okay.

10           MR. CARTY:  To be completed shortly.

11           THE COURT:  All right.  Okay, very well.  And then

12   lastly, the Akin Gump application has a very large number in

13   the expense category for litigation-related expenses.  I

14   understand the expenses for the e-discovery firm and service

15   and the like.  I just want to make sure there is a mechanism

16   in place -- and this really turns to Mr. Harner again -- for

17   review of the work which is an expense item by the

18   consulting firm hired by Akin.  I don't know what -- it's

19   really quite opaque as to what they're doing.  I don't know

20   if they are contract lawyers or what their role is.  I don't

21   think they're expert witnesses, although maybe I'm wrong

22   about that.  So maybe I should ask counsel from Akin Gump

23   first as to what it is generally that that consulting firm

24   has been doing.  And then secondly of Mr. Harner as to

25   whether there is a mechanism in place to review their work.

1              MS. BRAUNER:  Sure.  Good morning, Your Honor.

2    Sara Brauner, Akin Gump, on behalf of the Official

3    Committee.  Can you hear me?

4              THE COURT:  Yes, I can hear you fine, thanks.

5              MS. BRAUNER:  Excellent.  So I would turn it over

6    actually to the extent Your Honor would like some additional

7    information about the specifics about that workstream to my

8    partners who are both on the line, David Zensky and Dean

9    Chapman.  But I can assure Your Honor that, yes, we are

10   working with the fee examiner to make sure that he has the

11   relevant information about all of the professionals being

12   retained.  As Your Honor knows, because we are in this

13   interim period, we have a combination of the interim fee

14   protocols as well as the ability to retain professionals

15   under the confirmation order for purposes of the litigation

16   absent further approval of the Court.  So we are working

17   closely with the fee examiner to ensure that he has the

18   relevant information he needs to do that analysis.

19             And I would turn it over to Mr. Chapman or Mr.

20   Zensky to give Your Honor some more detail on the specifics

21   of that engagement.

22             THE COURT:  And again, I'm focusing on the Solomon

23   Page group category as opposed to the H5 category, which is

24   document management and e-discovery.

25             MS. BRAUNER:  Understood.

```
 1              THE COURT:  Or the expert witness category.  So

 2    it's really just the Solomon Page group.  So, yes, if you

 3    can tell me what it is, that would be great.

 4              MR. CHAPMAN:  Good morning, Your Honor.  Dean

 5    Chapman of Akin Gump.

 6              Solomon Page is our first-level document review

 7    contract attorney firm.  So we did not at Akin Gump do any

 8    of the first-level document review.  We turned that over to

 9    Solomon Page, which bills, you know, $55 an hour or

10    something in that level.

11              That work is now complete.  At least it was

12    complete as of November of December.  I'm not sure where we

13    are actually in submitting our invoices to the Court, but it

14    is done from our perspective, and we'll work with the fee

15    examiner of course to provide any additional information

16    that would be helpful to explain the particular documents

17    that were reviewed.

18              THE COURT:  Okay.  All right.  Does anyone have

19    anything further to say on any of these fee applications?  I

20    should program just state for the record they're for Weil

21    Gotshal, Prime Clerk, Akin Gump, FTI Consulting, Herrick

22    Feinstein, and Morritt Hock and Hamroff as well as the

23    seventh, which is Mr. Harner's application as fee examiner

24    and Ballard Spahr as counsel's application.

25              MR. HARNER:  Your Honor, it's Paul Harner as the
```

Page 23

1   fee examiner.  I just want to be responsive to your inquiry

2   and to the colloquy about the contract attorneys that have

3   been employed by Akin Gump.  We actually have inquired and

4   have had correspondence with Akin Gump, as Ms. Brauner

5   indicates, about that topic.  We recognize and have no

6   quarrel with the use, as is ordinary and usual in these

7   kinds of circumstances of contract attorneys to perform an

8   additional level of document review or other discovery.  And

9   we are also aware of the provision in the confirmation order

10  that provides the litigation trust with authority to retain

11  without further court approval those kinds of contract

12  lawyers.

13          The issue we have raised, however, is that the

14  expense of that has been presented thus far both in monthly

15  fee statements and in the interim fee applications as a

16  single line item.  And we have requested so that the fees

17  themselves may be appropriately reviewed for reasonableness,

18  additional detail, and time detail related to the services

19  of those contract lawyers understanding that they can be

20  retained without court authority, but that the approval of

21  their fees and any related expenses remain subject to court

22  review.

23          So we're working with Akin Gump on that issue, but

24  I wanted to assure the Court that we're aware of it and have

25  had a discussion with them about it.

1            THE COURT:  Okay, all right.  I think that's a

2    reasonable request.  I mean, I think obviously, as you say,

3    this is, now that it's been described to me, a fairly

4    typical expense incurred with respect to litigation that

5    involves significant document review.  On the other hand, I

6    think anyone considering a bill that would contain this line

7    item in it would want to know whether any particular

8    attorneys were, for example, billing for 22 hours a day or

9    the like, which just doesn't make sense and would lead to a

10   reduction.  So hopefully we are keeping time records and

11   that information will be provided shortly.

12            All right, anyone else on the fee applications?

13   Okay.

14            I have reviewed each of the applications, and my

15   questions about them have been satisfactorily answered on

16   today's record.  I believe that the work that has been done

17   and the expenses incurred are reasonable for purposes of

18   Section 331 of the Code.

19            The only issue in my mind after the questions on

20   the individual applications were addressed is whether there

21   should be any holdback at this point given the role of the

22   fee examiner.  But I'm satisfied by Mr. Harner's answer to

23   that question and the reservation in the proposed order that

24   his work and his ability to obtain any fruit from that work

25   if it turns out that he concludes, and then ultimately I

Page 25

1    conclude that time for prior applications and these

2    applications should be disallowed and expenses disallowed is

3    sufficiently preserved, both as a legal and a practical

4    matter.

5             So I'll grant each of the applications in the

6    amount sought on an interim basis, and the Debtor's counsel

7    can submit an order with the Schedules A and B attached

8    covering all seven of them.

9             MR. HARNER:  With that, Your Honor, may Ms. Daluz

10   and I please be excused?

11            THE COURT:  Yes.  And anyone else who is on for

12   just those applications can also be excused.

13            MR. HARNER:  Thank you, Your Honor.

14            MS. DALUZ:  Thank you, Your Honor.

15            THE COURT:  Okay.

16            MR. FAIL:  Thank you very much, Your Honor.  The

17   next item on the agenda I think is going to be handled by

18   Akin Gump.

19            THE COURT:  Right.

20            MR. CHAPMAN:  Good morning again, Your Honor.

21   Dean Chapman of Akin Gump.

22            I'm going to speak first on the consolidation

23   motion  more generally, and then I will turn it over to Kara

24   Casteel of ASK who will address the specific arguments

25   raised in opposition by various public shareholder action

Page 26

1    defendants who filed objections to the motion.

2              As I trust Your Honor is aware, the motion was

3    filed jointly in both the first action, that is to say the

4    insider action against Eddie Lampert and others that Akin

5    Gump is prosecuting, as well as the second action, that is

6    public shareholder action that ASK is prosecuting against

7    non-insider shareholders for fraudulent transfer.

8              Prior to filing the motion, we sent a proposed

9    order to defendants in both actions.  And after some

10   negotiation with the defendants in the first action, we were

11   able to come to terms on a consensual order, and that is the

12   order attached to the motion.  As a result, none of the

13   defendants in the insider or first action have filed any

14   opposition to the motion or the proposed order.

15             There were also negotiations with defendants in

16   the public shareholder action.  Plaintiffs did offer some

17   concessions to try to get to a consensual deal, but we were

18   unsuccessful there.  And as a result, now defendants have

19   filed various objections.  Defendants in the public

20   shareholder have filed various objections.

21             By way of some quick background, Your Honor, which

22   I think is helpful just to level-set where we stand, Akin

23   Gump, as you know, took over prosecution of the adversary

24   proceeding in October of 2019 after the plan was confirmed.

25   And then a month later, November 2019, filed the amended

Page 27

1    complaint, which remains the operative pleading in the

2    action.

3            Around that same time, we also began exploring, at

4    the direction of the litigation designees, the potential

5    follow-on lawsuit against Sears' public shareholders.  As

6    the Court is likely aware, the first action asserts

7    fraudulent transfer claims against Sears' controlling

8    insider shareholders relating to the Lands' End spinoff and

9    the Seritage rights offering.  And those insiders owned

10   about 75 percent of the stock of Sears Holdings at the

11   relevant times.  That's at least 25 percent of Sears

12   Holdings, shareholders who received the Lands' End shares

13   and the Seritage rights who would therefore also be liable

14   as recipients of fraudulent transfers.

15           Our task, starting last November of 2019, was to

16   take discovery pursuant to Rule 2004 to try and identify

17   those public shareholders in the event that the litigation

18   designees ultimately elected to file a lawsuit.

19           As you can imagine, it was a complex process to

20   try and identify the shareholders.  There were, you know,

21   tens of millions of shares outstanding, and those shares

22   were often held by financial institutions in street name on

23   behalf of underlying beneficial owners.  And of course it's

24   those beneficial owners that we needed to ultimately

25   identify.

1         Over the course of, you know, nine months or so,

2    Akin and our counsel at Morritt Hock served 127 subpoenas

3    aimed at identifying those public shareholders.  And as we

4    all know now, the litigation designees opted to proceed with

5    the lawsuit against those Sears public shareholders or

6    groups of affiliated Sears public shareholders who would

7    receive the benefit of $2 million or more from the Lands'

8    End or Seritage rights.  And then ASK was retained to

9    actually handle drafting of the complaint, service of that

10   complaint, and prosecution of the action.

11        The motion before you is for consolidation of the

12   two actions, the insider action filed by Akin and the public

13   shareholder action filed by ASK.  I won't belabor this

14   point, but in our view, consolidation of the two actions is

15   a no-brainer.  The underlying fraudulent transfer claims are

16   the same.  They're intentionally-constructed fraudulent

17   transfer claims relating to Lands' End and Seritage.  The

18   plaintiffs of the claim -- I'm sorry, the plaintiffs are the

19   same, the claims are the same, the discovery will be the

20   same, and the proofs at trial will be the same as well.

21        The only real difference between the two actions

22   is the defendants named, and of course any individualized

23   defenses those defendants might raise.  But for the sake of

24   judicial resources and estate resources and the need to

25   avoid duplicative depositions and so forth, we think

Page 29

1    consolidation makes a whole lot of sense in this case.

2            In addition to the consolidation, we've also

3    submitted to the Court our proposed order which includes a

4    schedule, a proposed schedule to govern discovery in the

5    consolidated cases.  As I mentioned at the outset, that

6    schedule was fully negotiated with the insider action

7    defendants in advance and reflects the deal stuck between us

8    and them.

9            With respect to written discovery, it allows for

10   written discovery to continue in the insider action, and

11   then for written discovery to commence immediately upon

12   entry in the public shareholder action.

13           As we note in the brief and as I think Your Honor

14   is aware, extensive written discovery has already been

15   obtained in the first action.  We have millions of documents

16   that we've obtained from defendants and third parties at

17   considerable expense.  And those documents are available to

18   any of the public shareholder action defendants who want

19   them immediately upon the execution by those defendants of a

20   document-sharing stipulation that we have put together.

21           With respect to depositions, there are a variety

22   of deadlines contained in the proposed schedule, but

23   briefly, 28 days after Your Honor finished his ruling on the

24   motions to dismiss in the insider action, the parties are to

25   exchange lists of proposed deponents.  A week later, they

Page 30

1    are to conduct a scheduling logistics conference regarding

2    depositions.  And then 45 days after that scheduling

3    conference, the actual deposition hearing may begin.  So

4    we're talking a total of 80 days between a decision on the

5    motions to dismiss and potential commencement of

6    depositions, fact depositions in the cases.

7              There aren't any other deadlines that have been

8    fixed in the schedule.  Instead, the parties are simply to

9    conduct a second case scheduling conference 150 days after

10   the first conference to discuss completing that discovery

11   and then proceeding into expert discovery as well.

12             So I'll pause there for a minute.  If Your Honor

13   has any questions, great.  But I think, you know, to state

14   the obvious, we view the schedule as being fair and

15   appropriate.  You know, it's unlikely to result in

16   depositions any time before the end of May, which we think

17   is at this point a more than fair compromise by plaintiffs.

18             Again, I'll pause and also turn it over to Kara

19   Casteel of ASK who can address some other things.

20             THE COURT:  Okay.  Well, I think maybe Ms. Casteel

21   is the right one to answer this question.  Under the

22   proposed schedule, the schedule proposed by the plaintiff,

23   document discovery in the second adversary would commence

24   upon entry of the order.  What is contemplated by the

25   plaintiff in the second proceeding by way of document

1   discovery of the defendants?

2           MS. CASTEEL:  Good morning, Your Honor.  This is

3   Kara Casteel of ASK.  And that's actually the question I

4   anticipated you to ask because I know that's the greatest

5   concern, at least what I can ascertain from the motions of

6   defendants.

7           Frankly, not a lot from the second action

8   defendants at the outset.  I think what we're most concerned

9   with is the factual issues with Computershare Inc. and

10  Computershare N.A.  My understanding is that there's already

11  been some discovery taken on Computershare for the Seritage

12  rights action or accounts as to what entities performed what

13  functions.  And there is a clear, you know, stack issue here

14  as to Computershare.  That's what we're most interested on.

15          Frankly, you know, part of the reason to

16  consolidate is that the same proofs at trial, the same facts

17  really relate to Sears' insolvency, badges of fraud of

18  Sears.  So I don't anticipate a lot of discovery on the

19  second action defendants here other than maybe confirming

20  they received the shares, you know, confirming the numbers

21  are right.  I don't anticipate taking any personal

22  jurisdiction discovery until if and when any personal

23  jurisdiction motions are filed, because frankly, that's a

24  waste of estate resources to put the cart before the horse.

25          So I think there has been concern there.  And

Page 32

1    maybe it was on us to perhaps clarify in our meet and

2    confers that we really are interested in getting discovery

3    on Computershare going first, and we'll see where we go with

4    the second action defendants.  But frankly, most f the

5    discovery has been done that we're interested in.

6              THE COURT:  Okay.  Now, obviously you've been

7    living with this, and I haven't.  What role is Computershare

8    playing here?

9              MS. CASTEEL:  Sure.  There's -- Sears contracted

10   with Computershare to perform the Lands' End dividend

11   duties.  And part of the motions to dismiss involved wither

12   or not Sears is a financial institution based on its

13   interactions with Computershare.  And a large material fact

14   issue here is whether the duties performed were

15   Computershare Inc. or Computershare N.A.  And that forms a

16   lot of our response as to why a motion to dismiss is

17   inappropriate at this time based on material fact issues as

18   to which entity was performing those functions.

19             THE COURT:  All right.  But Computershare -- is

20   Computershare a defendant in action number two?

21             MS. CASTEEL:  No, it is not, Your Honor.

22             THE COURT:  And you would be seeking discovery of

23   Computershare, not of the defendants then with respect to

24   those issues, those particular issues?

25             MS. CASTEEL:  Correct, Your Honor.  You know,

Page 33

1    there might be some preliminary discovery.  We haven't even

2    thought out the timing of it because there's no -- there's

3    no cutoff to discovery at this moment.  So, you know,

4    confirming that the share numbers are right and that they

5    did in fact receive the shares is not something that has to

6    be propounded immediately.  There's no sense of urgency as

7    much with that.  Really what we want to focus on is getting

8    out discovery to Computershare on the Lands' End transfers

9    in the same respect that they've already gotten discovery in

10   the first action as to the Seritage right transfers.

11           THE COURT:  Okay.  all right.  So I just want to

12   confirm -- I'm not sure which of you is the right one for

13   this, whether it's you, Ms. Castell, or Mr. Chapman.  Have

14   you at this point reached agreement on the document release

15   stipulation, document sharing stipulation, or is that still

16   being negotiated?

17           MR. CHAPMAN:  I think the answer is both of us.

18   This is Dean Chapman from Akin Gump.

19           The parties to the first action are signed

20   (indiscernible) sharing stipulation.  And with that, Kara,

21   you can speak to the second action.

22           MS. CASTEEL:  Yes.  So the form has been presented

23   to counsel in the second action.  My understanding is there

24   might be some non-substantive edits, as defendants sometimes

25   like to do.  But to date we haven't gotten back any proposed

Page 34

1    revisions yet as to it.  But plaintiffs stand ready to have

2    them executed and get over the documents from the first

3    action.

4              THE COURT:  Okay.  And then this is for Ms.

5    Casteel.  The proposed order contemplates, it says in

6    Paragraph 4B, that, quote, "The Plaintiffs shall commence

7    the process of providing documents produced in the first

8    action following execution of the document sharing

9    stipulation."  Is there a time limit on when that process

10   ends?  Again, I'm focusing on the next date, which as you

11   say, is not a date to complete document discovery, but

12   rather to designate or exchange lists of proposed deponents,

13   which is 28 days after the Court decides the motion to

14   dismiss, or if this is later, March 15th.

15             So one of the objections I think correctly points

16   out that this language, "Plaintiffs shall commence the

17   process" is somewhat open-ended.  And if you have to --

18   let's assume for example that I ruled on March 15th, the 28

19   days would start running then.  It would be hard for them,

20   conceivably they've argued, to even review if everything

21   were provided right away within 28 days to notify you of any

22   proposed witnesses.  But it would be that much harder if in

23   fact the documents weren't fully provided until say seven

24   days until that 28-day deadline ran.

25             MS. CASTEEL:  Understood, Your Honor.  And I'll

Page 35

1   take this chance to clarify the word commence.  We've been

2   working with the IT firm that Akin has employed regarding

3   some of these documents.  And my understanding -- and Mr.

4   Chapman can clarify or provide a little insight.  They stand

5   ready to provide immediate transfer, file downloads,

6   transfers, whatever is needed to get the documents in their

7   hands.  So the word commence is not intended to have some

8   sort of rolling discovery process.

9            THE COURT:  Okay.  It would all happen at once?

10           MS. CASTEEL:  Correct.  And maybe Mr. Chapman can

11   provide some insight on that.  But my understanding are the

12   documents are ready to go and it's just a matter of

13   connecting the right people with the IT firm and defense

14   counsel and getting them the documents they need.

15           THE COURT:  Okay.  And it's roughly 870,000 page?

16           MR. CHAPMAN:  This is Dean Chapman at Akin Gump.

17   It's going to be more than that.  There are -- let me look

18   at my notes here.  I would guess it's going to be around

19   five million documents.

20           THE COURT:  Okay.  All right.

21           MR. CHAPMAN:  And that is -- you know, the notion

22   of commencement, again, was never meant to suggest we were

23   going to delay or take time.  It's in our interest to move

24   as quickly as possible of course.

25           THE COURT:  Okay.

1          MR. CHAPMAN:  But it's just because there are a

2    lot of documents, it's difficult to say and we promise that

3    within 48 hours it will be done.  You know, to some extent

4    we are bound by the time it takes for the technology to

5    perform its function.

6          THE COURT:  For how long have the defendants in

7    the first action had access to those roughly five million

8    documents?

9          MR. CHAPMAN:  They've come in over time.  They

10   would have gotten -- at least the first say one-and-a-half

11   million in January or so of 2020.  The remainder would have

12   come in all by say May, June, July, the summer time period.

13         THE COURT:  Okay.  Okay.  All right.  So, Mr.

14   Chapman, I think you were done and Ms. Casteel was going to

15   address the objections in more detail.

16         MS. CASTEEL:  Yes, Your Honor.  I can speak to

17   them.

18         Your Honor already brought up discovery.  That was

19   obviously one of the largest objections shared by most of

20   the objectors, is that they didn't want discovery to start

21   until the motion to dismiss in the second action had been

22   decided.  I can address that more, Your Honor, but I think

23   perhaps the biggest objection was the thought that there

24   would be some large-scale discovery on defendants.

25   Plaintiffs don't intend that.  The main goal right now is to

Page 37

1    get started on discovery against -- preponderant to the

2    Computershare because that's the largest fact issue we have

3    remaining for the Lands' End transfers because those counts

4    weren't briefed in the first action in the motion to

5    dismiss, so the discovery process as to the Lands' End

6    shares didn't start yet.

7            The other objections, the three main objections

8    were should the actions be consolidated at all while the

9    motion to dismiss is pending.  And if they are consolidated,

10   how much, to what extent should they be consolidated.

11           As to the first objection, I think there's ample

12   reasons to consolidate these notwithstanding outstanding

13   motions to dismiss.  There's no prejudice to the motions to

14   dismiss if they're consolidated.  Rather, they'll be dealt

15   with.  Either the motions to dismiss will be granted or the

16   motions to dismiss will be denied and the case will move on.

17   So consolidating them at this time doesn't really have an

18   effect on the motion.

19           There is ample reason to consolidate the matters.

20   They involve the same underlying facts, they involve the

21   same plaintiff, they involve the same proofs at trial.  All

22   the reasons that, you know, caselaw has suggested that

23   discretion of the judge would warrant consolidating matters.

24           The other objection, the majority of defendants

25   did agree that consolidation in some form should occur.  But

Page 38

1    the largest group of defendants in the second action, the

2    non-insider defendants as they're called, they object to an

3    order that consolidates it generally without carving out a

4    reservation as to trial.  And it's Plaintiff's position that

5    the proposed order fully provides that the rights of any

6    party to sever defendants, sever accounts for trial at a

7    later date after discovery has been fleshed out if issues

8    come to light in litigation that would warrant it.  But it's

9    our position that a piecemeal order now that reserves that

10   isn't necessary.  The same proofs needed for both are going

11   to be at trial, the same witnesses that are deposed, the

12   same expert witnesses are going to be the same ones that

13   will be presented for trial.  You know, even if not all of

14   them are represented, even a small number are presented,

15   really the efficiencies of consolidation for pretrial

16   purposes warrant them for trial.

17          And again, no rights are waived here.  There is a

18   full right of any defendant to move at a later date to sever

19   for trial.  So it's our position that consolidation is

20   warranted here of the case, it's warranted for the entire

21   case, and that discovery should proceed apace.  And there's

22   plenty of time for the second action defendants to receive

23   the documents in advance of any depositions to be had.  You

24   know, there's ample time after a decision is made on the

25   motion to dismiss to provide lists and to start scheduling

Page 39

1    depositions.  I think the dates are the later of March 15th

2    or a decision on the order.  Even if a decision came out

3    March 15th, the earliest that depositions would occur is

4    June 3rd based on the timing in the proposed order.  And

5    we're in February now.  So given that there's defense groups

6    working together and they can, you know, they can benefit

7    from the work the first action counsel has already done

8    having access to these documents, we don't think there's

9    prejudice in commencing discovery upon entry of the

10   scheduling order.

11            THE COURT:  Has there been discussion of a joint

12   defense agreement to facilitate cooperation between the

13   action two defendants and the action one defendants?

14            MS. CASTEEL:  Your Honor, I don't know that

15   question myself.  I'm not sure if any defense counsel on

16   this call has any comments on that.

17            MR. WILLETT:  Good morning, Your Honor.  This is

18   Sabin Willett from Morgan Lewis.  We represent a group of 80

19   non-insider defendant funds in the second case.  And there

20   have been preliminary discussions about that.

21            THE COURT:  Okay.  And I appreciate the word

22   preliminary, and I know you're a careful lawyer.  You're

23   certainly free to say I can't answer that question now, but

24   I'll ask it anyway.  Have there been any insuperable

25   obstacles to a joint defense agreement that would allow you

1    to have strategy discussions with your opposite member or

2    members in action one, like Mr. Anker or any of his

3    colleagues at Debevoise, for example, and elsewhere?

4              MR. WILLETT:  Your Honor, again, Sabin Willett.  I

5    don't think so.  But the problem, if I can wade into it with

6    a couple of toes, the problem is not a fear that our clients

7    are going to get, you know, routine discovery requests about

8    whether they received shares.  The problem is the 5 million

9    documents that you have to catch up to somehow.  Even if

10   you're cooperating with the --

11             THE COURT:  No, I understand that.  I'm focused on

12   the five million documents, too.  But it seems to me that

13   the only real -- the most problematic issue here is the

14   identification of proposed deponents, which is 28 days from

15   the date of a ruling on the motions to dismiss in the first

16   action.  And it would seem to me the only way you could

17   really be reasonably comfortable that that time would

18   suffice is if you were able to sit down and really talk

19   through with the first action defendants' counsel the

20   process and thinking behind designating deponents.  It would

21   seem to me that your deponents would largely if not entirely

22   overlap with theirs.  But you'd have to obviously do your

23   due diligence.  And you couldn't deal with five million

24   documents in that period of time, I don't think.

25             MR. WILLETT:  Right, Your Honor.  And I probably -

1    - I'm sorry.

2           THE COURT:  And even if the clock started running

3    tomorrow if I entered the order, that would only add, you

4    know, a couple of weeks to that time.  Anyway, so that's

5    where I was going with that.

6           MR. WILLETT:  Well, Your Honor, this --

7           THE COURT:  I think if you have six months to

8    prepare for a deposition and even longer of course to

9    prepare for trial, that the five million documents would

10   present much, much less of a problem.  So I'm focused

11   primarily on the harder deadline of identifying deposition

12   witnesses.

13          MR. WILLETT:  Right, Your Honor.  I think the

14   colloquy has illustrated that there's actually not that much

15   difference between the parties.  What we have essentially

16   said is that we'd like this process that's outlined for case

17   one to begin after you have ruled on all of the motions.

18   Our hearing is March 12th.  Many of the issues are the same.

19   Some are not the same.  But if we can, you know, start down

20   a road after you have ruled, some or all of the outsiders

21   may not have to start down that road at all.  And we are in

22   that unique corner of the forest where you can get sued in a

23   situation where you lacked any agency and where all of the

24   actions, all the relevant actions are undertaken by others.

25   So some sympathy is warranted for the outsider defendant in

Page 42

1   a situation like this.

2            If we were able to persuade you on all of the

3   grounds for the motion, then none of them would have to

4   proceed with this substantial expense.  If we were able to

5   persuade you on half, say Seritage and not Lands' End, or

6   vice versa, then some of the outsiders would also not have

7   to undertake expense.  And so the --

8            THE COURT:  So if I -- let me make sure I

9   understand what you're saying, then.  So the real issue is

10  not with the deadlines in the proposed order so much as it

11  is that it runs from the dismissal or not dismissal

12  determination in respect to the first action motions to

13  dismiss.

14           MR. WILLETT:  Yes, Your Honor.

15           THE COURT:  But as long as those deadlines run

16  from the determination of both sets of motions, then,

17  particularly with some of the clarifications that we've gone

18  through this morning, this doesn't represent much of a

19  problem.

20           MR. WILLETT:  I think we can -- yes, I think we

21  can get on board if we're able to get past the hearing and

22  have in front of us your ruling on the motions.

23           THE COURT:  Okay.  I guess the one area where I

24  might disagree with you on that is the commencement of the

25  document production.  It really doesn't seem to me based on

1    what I've heard from the plaintiff's counsel that they're

2    actually looking for any material document production from

3    your clients or any of the other defendants, but rather just

4    from the third party on the nature of the agency.

5                    MR. WILLETT:  Yes.  May I speak to that, Your

6    Honor?

7                    THE COURT:  Okay.

8                    MR. WILLETT:  And I probably should caution as

9    well, we don't represent all of the defendants.  There are

10   others that --

11                   THE COURT:  No, I understand.  But all but one of

12   them have joined in your motion.  So --

13                   MR. WILLETT:  Right.

14                   THE COURT:  In your opposition I mean.

15                   MR. WILLETT:  So two points on that.  First, I

16   don't think that the discovery of Computershare will be

17   relevant, but that's only what I think, and I know it's not

18   controlling.

19                   I don't think we'd have any objection to them

20   starting document discovery of Computershare with regard to

21   Lands' End, which I think is what they want to do.  Or if

22   there's more on Seritage, we wouldn't object to that

23   starting now, either.

24                   And I should comment that the delay on the

25   protective order -- as Your Honor may know, every

Page 44

1    institution has its own house rules about discovery,

2    protective orders, and various rings that must be kissed and

3    folks in the office who have to be consulted.  And so sort

4    of wrangling a group this size -- I don't think that there

5    are any major problems, but wrangling the group on, you

6    know, what are the rules about document destruction after

7    the fact and things like that is just taking a little time.

8              THE COURT:  All right.  Okay.  So it seems to me

9    the real issue is 4C of the order, which we've already

10   talked about.

11             MR. WILLETT:  Yes, Your Honor.

12             THE COURT:  In particular, it's tracking off of a

13   ruling on the motions to dismiss in the first action.

14             MR. WILLETT:  Yes, Your Honor.

15             THE COURT:  Now, I know there is another objection

16   as opposed to one in which people have joined, which is --

17   which I haven't dealt with yet.  So I thought I would give

18   you an opportunity.  But I think I interrupted counsel for

19   the plaintiffs by going down this road, but I think it's

20   been productive.

21             Let me throw something else out that may be

22   productive.  My ruling on the motions to dismiss in the

23   first action obviously has been delayed.  In part it was

24   delayed because I got really busy towards the end of the

25   summer and beginning of the fall.  It also was delayed

1    because, frankly, I wanted to see how the insurance

2    litigation played out and in light of the stay order.   I

3    think the parties did, too.   And then of course this lawsuit

4    was started, i.e. the second action.   And the motions to

5    dismiss were filed in the second action, which are scheduled

6    to be heard on March 12th.

7              It is highly likely to me that I will rule on both

8    sets of motions to dismiss at the same time and that that

9    ruling I trust will be before the end of March.   So that may

10   -- and obviously there's no reason why you all would know

11   that, or even if you could guess that, wouldn't be sure of

12   it.   So that may affect people's thinking about this motion

13   and the discovery elements of it.   And I thought I would get

14   that out on the table.

15             But why don't I go back to Ms. Casteel and ask if

16   you have anything more to say.   I think you do.   I think I

17   interrupted you on the timing points.   But I expect you have

18   more to say than that.

19             MS. CASTEEL:   Your Honor, I frankly can't remember

20   if you interrupted me or not, but I agree that that was

21   something good to flesh out and talk about.   Because as we

22   were sitting here talking about it, we thought of one maybe

23   proposed compromise here, which is that my understanding is

24   counsel in the first action, they're ready to go, we've had

25   the discovery, they're ready to go on depositions, and don't

Page 46

1    want to unduly delay it after a decision on the motion to

2    dismiss.  That being said, we understand that there's a lot

3    of documents for the second action defendants to go through

4    notwithstanding the fact that certain joint defense

5    agreements might cut down on some of that work.

6          So, you know, if perhaps they had 30 to 60 more

7    days to propose additional deponents, that would solve the

8    solution here if the second action defendants got some

9    additional time.  Because if the first action parties

10   designate someone to be deposed, that really doesn't affect

11   the second action.  They can either agree and they can

12   participate in the deposition or they can decide it's not

13   relevant to them and not show up.  There's not really

14   prejudice by getting the process going.  There's also not an

15   end date to discovery under the scheduling order.

16         So if they need an additional 30 to 60 days to

17   continue going through documents and they decide as they do

18   that that there's more deponents that their depositions

19   should be taken, perhaps that's a solution here that allows

20   things to go forward and will also give them some more time

21   to go through these documents.

22         THE COURT:  Okay.  All right.  Did you have

23   anything more to say in response to the objections, or do

24   you want to hear argument --

25         MS. CASTEEL:  Your Honor, I guess I would just --

Page 47

1    I want to make clear that we think it would be appropriate

2    to have this timeline start from the decision in case one

3    and the omnibus motion in case two and to not delay these

4    matters any further by yet-to-be-filed personal jurisdiction

5    motions, if any, that might be forthcoming in the cases.

6             The first matter has been outstanding for some

7    time.  The second one, while filed later, was the result of

8    months of work.  These transactions aren't getting any

9    younger, and there's plenty of secured admin priority

10   creditors that, you know, are relying on these forums to

11   seek relief in the case, and we think it's appropriate to go

12   forward as soon as we can.

13            THE COURT:  Okay.  I'd like to throw something out

14   on the yet-to-be-filed jurisdictional motions to dismiss,

15   which is have the parties met and conferred as to the

16   probable bases for those motions?  I don't know if it's

17   subject matter jurisdiction, for example, or personal

18   jurisdiction, if it's just an issue that can be correct with

19   proper service.  Has there been any discussion as to what

20   those grounds would be?

21            MS. CASTEEL:  Your Honor, no.  We really haven't

22   gotten into it other than that, you know, the defendants

23   wanted to move forward with common issues as to all

24   defendants and reserve boutique issues as to their

25   defendants for a later date and time to conserve resources

Page 48

1    is my understanding.  So we haven't gotten into specific

2    arguments such as this defendant hasn't been properly

3    served, this defendant -- you know, the only one we've

4    briefly touched upon is one defendant that has some

5    sovereign immunity issues that is probably one that comes to

6    mind.  But I haven't gotten into the weeds with any

7    defendants on their specific claims.

8            THE COURT:  Okay.  Just one thing I was going to

9    raise with you, although both sides seem to want to put off

10   the issue of personal jurisdiction, is whether it would make

11   sense to have that meet and confer and to take, if it's

12   warranted, limited discovery on the jurisdictional issues

13   with respect to those parties that would conceivably raise

14   them.  So that if, for example, a schedule was going to be

15   moving forward, it wouldn't be further delayed by a

16   subsequent post motion process of taking discovery just on

17   jurisdictional issues.

18           MR. WILLETT:  Your Honor, Sabin Willett.  May I

19   respond?

20           MS. CASTEEL:  Sure.

21           THE COURT:  Okay.

22           MR. WILLETT:  This one you may recall we actually

23   requested a departure from the usual Rule 12 rule not to

24   have to bring these bespoke motions, and they typically are

25   personal jurisdiction or sovereign immunity now, in part

1    because they might become mooted if we were successful on

2    the global motion, and in part because they tend to prolong

3    things indefinitely.  So we didn't think that we could then

4    turn around and say, but the whole case needs to wait while

5    those things get resolved.

6            So at least our group -- and I don't speak for

7    every defendant -- but our group has not asked for any delay

8    in the case as a consequence of the -- and we do have some

9    clients who do have potential personal defenses like that.

10           THE COURT:  Okay.  But I think here -- and this is

11   I think the main difference between your objection and the

12   objection by HSBC Bermuda.  So maybe I should hear from

13   their counsel as well as Ms. Casteel on the point I've

14   raised.

15           MR. KARAVOLAS:  Yes, Your Honor.  Nicholas

16   Karavolas, Phillips Lytle, for HSBC Bank Bermuda.  And I was

17   actually just going to chime in.  So thank you, Your Honor.

18           We did have an initial discussion with Ms. Casteel

19   yesterday.  I don't want to go into the details because it

20   was partially, you know, a settlement discussion.  But we

21   did highlight that in addition to service issues, our client

22   does assert that there is a personal jurisdiction issue as

23   well to be dealt with.

24           We were not part of the stipulation that was -- we

25   were not a party to stipulation that was entered in late

1    December, and we thought that it made sense to ensure that

2    we were kind of narrowing the issues with counsel as far as

3    what our concerns are.  And there are other concerns, both

4    substantive and procedural, but we wanted to make sure that

5    those -- we had an initial discussion regarding those

6    concerns of our client.

7           And so I understand that there is still some

8    information being discovered through the holder of the

9    Seritage rights.  Obviously my client is impacted -- they're

10   being sued only in connection with the Seritage rights

11   transaction.  But there are some issues regarding identity

12   of the accountholder.  I understand from Plaintiff's counsel

13   that they're still in the process of obtaining that

14   information.  And I appreciate that, you know, they're kind

15   of tied to whatever information they're provided.  But in

16   the same instance, it seems as if at the end of the day when

17   the dust settles, we'll reach the conclusion that my client

18   wasn't, you know, the appropriate party to be sued here.

19          And, you know, our biggest concern really -- and I

20   might as well kind of go into a little bit on, you know,

21   what our objection is about.  But I think that the

22   consolidation and the discovery issues are interrelated.  I

23   don't think it was a coincidence that these issues were

24   brought to the forefront in the same motion.  I don't

25   necessarily have -- you know, I don't think we necessarily

Page 51

1    have any issue with consolidation of the actions, and we

2    understand the efficiencies to be served by bringing them

3    together.  But there is prejudice that comes with that.  And

4    it's clear from the proposed scheduling order that there

5    would be prejudice, especially to those parties that we

6    think would be asserting personal jurisdiction defenses in

7    this action.  To the extent that, you know, these are

8    parties that are not even subject to the jurisdiction of the

9    Court, that these -- you know, to engage in full-blown

10   discovery, you know, just to determine at some later point

11   that they're, you know, not subject to the jurisdiction of

12   the Court is unduly burdensome.  And it seems fundamentally

13   unfair to move in the procedure that, you know, the

14   plaintiffs have proposed. So we filed a separate --

15            THE COURT:  Well, let me push back on that.  Can I

16   push back on that?  I mean, I appreciate that one can raise

17   certain jurisdictional issues at any point in the case,

18   including on appeal.  But at the same time, it strikes me as

19   odd that one could say I'm going to raise it, and just by

20   saying it without actually doing it obtain a stay of all

21   discovery in the adversary proceeding.  That just doesn't --

22   I mean, that -- maybe it doesn't rise to the level of super-

23   secret double probation, but it kind of does.  I mean, I

24   think the caselaw deals with actual motions that have been

25   filed that are pending before a court where there's an

1    assertion of lack of jurisdiction and therefore a request to

2    stay discovery or opposition to discovery on that grounds.

3           But here, I think there's got to be some balance

4    between saying that you might have a basis to object to the

5    continuation of a lawsuit and for dismissal of it based on

6    jurisdictional grounds, and therefore just by saying it

7    precluding discovery.

8           So I guess I'm more in the camp of Mr. Willett on

9    this that, you know, those motions would have to be dealt

10   with, but it's kind of up to the movant to get them on so

11   that they don't have to spend more money on discovery, which

12   I think at this point we've pretty much narrowed down to not

13   discovery being taken of the movant -- I'm sorry, taken of

14   your client, but rather getting prepared for actions that

15   need to be taken at the earliest sometime this summer.

16          MR. KARAVOLAS:  I understand, Your Honor.

17   Nicholas Karavolas for HSBC Bank Bermuda.  And I would just,

18   you know, highlight that the request for the scheduling

19   order does not -- I appreciate counsel's comments on the

20   record regarding what discovery is anticipated in this

21   action, and I think that if that's the understanding, that's

22   a fair understanding.

23          However, I think it should be -- you know, there's

24   no real restriction on the taking of discovery in the

25   proposed order.  And once the cat's out of the bag, you

1   know, there's no way to really curtail that other than to

2   seek court intervention at some point later on.  But I do

3   appreciate the -- you know, I think it is helpful that

4   counsel did make the comment of what type of written

5   discovery would be anticipated in this case.

6           THE COURT:  Okay.  All right.  Does anyone -- I

7   appreciate there are a lot of people on the phone.  You all

8   should appreciate -- I haven't said it, but I have read the

9   pleadings on this, so there's no need to repeat the

10  pleadings.  But does anyone have anything more to say on

11  this motion or the objections?

12          MS. CASTEEL:  Your Honor, this is Kara --

13          THE COURT:  Go ahead, Ms. Casteel.

14          MS. CASTEEL:  Your Honor, Kara Casteel for ASK.  I

15  just wanted to point out that the parties, the second action

16  parties entered a stipulated scheduling order.  And I

17  appreciate HSBC didn't sign it, but we're honoring it as to

18  them, too.  Because obviously they preserved their personal

19  jurisdiction defense, if any.  So we are allowing them to be

20  under the stipulation.  We wouldn't assert they couldn't

21  object.  But it provides that any of these other defenses

22  have to be -- that the motions need to be filed within 30

23  days after the court rules on the omnibus motion.

24          I know you had brought up whether or not it made

25  sense to take some limited discovery as to personal

1    jurisdiction.  In terms of timing, we certainly don't look

2    to initiate it right away.  I would say that perhaps it

3    would make sense after ruling on the omnibus motion if this

4    matter proceeds forward and there are parties intending on

5    filing personal jurisdiction motions, it might make sense

6    for the parties to work together to extend that schedule

7    maybe 30 days to take some limited discovery and allow them

8    some time to file their motions after that discovery in

9    terms of timing.  But prior to a decision on the omnibus

10   motion, we're not looking to do any discovery on those

11   issues.

12           THE COURT:  Okay.  I think, Mr. Willett, you were

13   going to say something?

14           MR. WILLETT:  Yes, Your Honor.  Just two more

15   points from us this morning.  First, we haven't touched on

16   the consolidation for trial issue.  And I think the dispute

17   between the parties is whether to do it now with an unwind

18   later or to just -- as Ms. Casteel suggests, or to just wait

19   and see how the world looks after you have ruled and

20   whatever discovery is going to happen as had we started to

21   proceed.  I just can't quite understand what jumping the gun

22   now does for anyone.  There won't be any prejudice to

23   addressing this later.  Our opponents may well be correct,

24   but we just don't know yet.  So that's the first thing.

25           The second was I think that if Your Honor sort of

1   lays down the principle that the triggering event for the

2   review and deposition setup period would be ruling on both

3   motions, we could probably go back to our offices and come

4   up with a consensual order.

5             THE COURT:  Okay.

6             MR. WILLETT:  At least speaking from the

7   perspective of my group.  Thank you, Your Honor.

8             THE COURT:  Okay, that's helpful.  Thank you.  All

9   right.

10            Well, as a practical matter, that's what's going

11  to happen.  I find it hard to believe that I wouldn't rule

12  on one without at the same time ruling on the other set of

13  motions to dismiss.

14            Let me -- I reviewed the order carefully, the

15  proposed order, and I did want to discuss with you, since it

16  may well be that the parties do go back and work out a

17  consensual order, there are a couple of points I wanted to

18  discuss with you.

19            Obviously the lawyers working on this matter,

20  which includes the lawyers for the defendants in the first

21  action, are very capable and very experienced.  And they've

22  worked out the terms of this order.  So I don't want to be

23  mucking up the works.  But I do want to point out my

24  concerns about the following points.

25            Paragraph 4C states in the second sentence, "The

Page 56

1    parties shall conduct one or more meet-and-confers regarding

2    fact depositions."  And then it's the defined term, "The

3    deposition scheduling conference" regarding, among other

4    things, the identify of deponents, the logistics, the

5    length, conducted remotely if necessary, preliminary

6    schedule, no later than the date that is one week, seven

7    days, after the exchange date.

8            And I guess the issue I have there is how do you

9    know when that conference is done since it's more than one,

10   since D and E of Paragraph 4 trigger off of the conference,

11   the defined term.  I just think you need to have some

12   mechanism to trigger D and E.  It could be that outside

13   date, i.e. seven days after the exchange date.  But it's

14   probably a fairly minor point since it's only seven days,

15   but it doesn't quite fit in to D and E.

16           And I think you need to also provide for the

17   scheduling, just so you have it there, of at least one more

18   pretrial conference rather than the open-ended without any

19   court involvement in this.  I think F kind of does that,

20   because it refers to a case scheduling conference which is

21   not with the court.  But then it says, "and report back to

22   the Court", which doesn't really contemplate an additional

23   conference.

24           So I think you ought to consider at least

25   tentatively scheduling a conference, even if it's not

1   necessarily the conference that must occur after you're done

2   with discovery.  And you can provide that the parties can

3   adjourn that conference on consent if they've not completed

4   discovery.

5            And I guess to deal with Mr. Willett's point about

6   why consolidate now, I think it may make sense to have that

7   discovery -- I'm sorry, that pretrial conference include as

8   subject matter the issues to be considered at trial and

9   their order of consideration, and finally, whether there

10  should be any deconsolidation at that point just so that

11  there is a forum for a discussion on those issues before

12  people get deep into preparing for a trial.

13           So I would recommend that you work into this order

14  at least one formal pretrial conference with the Court for

15  two reasons.  One is basically at least a reality check in

16  this order as to when people think now, today, discovery

17  will be done and people can focus on the trial.  And two, a

18  date where some defendant can say, you know, now that we're

19  here, we think that the trial should be deconsolidated for

20  whatever reason.

21           And then I think you probably should clarify 4B as

22  to, you know, the -- the only process in 4B for releasing

23  the documents is a logistical process in getting it to the

24  right person on behalf of the defendant in each case.  And

25  probably some statement to the effect that any discovery

1    sought by the plaintiffs of the second action defendants

2    will be consistent with the representations made at the

3    hearing on the motion or materially consistent with it

4    pending the Court's determination of the motion to dismiss

5    in the second action.

6           And then I think it is a good idea to have a

7    second date for designating witnesses -- I'm sorry,

8    deponents for the second action defendants.  Although since

9    I believe both as a legal and practical matter it makes

10   sense to have C track off of a decision on the motions to

11   dismiss in both actions, that it doesn't need to be

12   materially longer than the 28 days.  You know, I would say

13   maybe another 30 days and -- unless the parties want to

14   agree on a somewhat longer period for the second action

15   defendants.

16          So those are my comments on the order.  I'm going

17   to give you my ruling and then people can come back to me if

18   any of those comments just doesn't make sense to them and

19   they want to persuade me or the other parties that we

20   shouldn't address it that way.

21          The motion really seeks two forms of relief, and

22   they are clearly related.  First, the motion by the

23   plaintiffs in both adversary proceedings, i.e. Sears Holding

24   Corp. et al. v. Edward Scott Lampert, et al. and Sears

25   Holding Corp., et al. v. (indiscernible) Tisch, et al.

1    Mainly, the motion seeks that those two adversary

2    proceedings be consolidated for purposes of Bankruptcy Rule

3    7042, which incorporates Federal Rule of Civil Procedure 42

4    which in 42(a) provides for the consolidation of actions

5    involving a common question of law or fact.

6            The second relief that the motion seeks is entry

7    of an order that not only consolidates the actions, but

8    provides for a timetable for discovery in the action.  The

9    motion has been objected to in part by a majority of the

10   defendants in action number two, that is the Tisch

11   proceeding.  It has not been objected to by the parties, the

12   defendants in action number one, the Lampert, et al.

13   adversary proceeding.

14           The objections, particularly the limited

15   objections, focus really at this point exclusively on the

16   timing aspect of the relief sought here with respect to

17   discovery, and more specifically as to the motion's request

18   that the parties shall exchange lists of proposed deponents

19   by the later of 28 days from the date the court issues an

20   order deciding the last of the motions to dismiss in the

21   first action, i.e. the Lampert action, and March 15, 2021,

22   the exchange date.  And then other timing provisions for

23   discovery track off of that exchange date.

24           The parties who either filed or joined in the

25   limited objections contend that given the pendency of the

Page 60

1    motions to dismiss in the second action, which are scheduled

2    for oral argument on March 12th, the exchange date should

3    track off of the later of the determination of the motions

4    to dismiss in the first and the second action.

5            The other objection, which is by HSBC Bank,

6    Bermuda branch, makes a second point, which is that it may

7    have a separate grounds for dismissal than the motion that

8    I'm going to hear on March 12th on jurisdictional grounds.

9    The plaintiffs have agreed previously that such a motion,

10   i.e. on jurisdictional grounds, can be made at a later time

11   and instead that that would apply to HSBC Bank Bermuda even

12   though it was not a party to that stipulated order.  HSBC

13   argues therefore that since it's not yet filed, motion to

14   dismiss might moot out the entire adversarial proceeding as

15   to if I should not enter any discovery order that would

16   implicate it with having either to provide discovery or

17   review the voluminous discovery that Paragraph 4B of the

18   proposed order contemplates being released upon entry of the

19   order by the plaintiff from the discovery taken in the first

20   action.

21           The standard for evaluating a motion to

22   consolidate under Rule 42(a) is not disputed by the parties.

23   It's laid out by the Second Circuit in Johnson v. Celotex

24   Corp, 899 F.2d 1281, 1285 (2d Cir. 1990), which states that

25   in the exercise of the court's discretion in determining

Page 61

1    whether actions should be consolidated in whole or in part,

2    the court needs to consider, quote, "Whether the specific

3    risks of prejudice and possible confusion are overborne by

4    the risk of inconsistent adjudications of common factual and

5    legal issues, but burden on parties' witnesses and available

6    judicial resources posed by multiple lawsuits, the length of

7    time required to conclude multiple suits as against a single

8    one, and the relative expense to all concerned of the single

9    trial, multiple trial alternatives."  See also In Re MF

10   Global Holdings Ltd., 464 B.R. 619, 623, (Bankr. S.D.N.Y.

11   2012).

12           Here, it is clear that with respect to two of the

13   transactions at issue in the first action, the same facts as

14   to the transactions are the subject matter of the second

15   action.  And therefore, with regard to requests to

16   consolidate the two actions, it appears clear to me, and I

17   believe also even clearer to the objectors, that the

18   presence of those common, factual, and to a very large

19   extent legal issues argue strongly for consolidation of the

20   two actions, starting with the discovery phase and subject

21   to a lookback after discovery is fully complete through

22   trial for the convenience of all parties and the orderly

23   determination of the underlying issues without risk of

24   inconsistent rulings and duplication of depositions and

25   other discovery and trial presentations.

1          I believe with a sufficient forum in the form of

2     an already-scheduled, i.e. to be scheduled in the order,

3     post-discovery pretrial conference consolidating the

4     matters, the adversary proceedings, now is warranted under

5     the facts considered by courts in this circuit.

6          The real issue, again, is the timing issue.  The

7     courts are clear that while one of the grounds for the

8     Supreme Court's adoption of the plausibility approach to

9     motions to dismiss is to curtail expensive and lengthy

10    discovery while not warranted by the face of the complaint.

11         The filing of a motion to dismiss does not per se

12    lead to the stay of discovery.  Courts have recognized an

13    exception where the motion to dismiss is premised upon a

14    jurisdictional grounds, which would clearly moot out the

15    relief sought, limiting discovery under those circumstances

16    to discovery as to the jurisdictional arguments raised in

17    the motion to dismiss to the extent they are fact-based.

18    But even there, the courts have been careful to say

19    notwithstanding dicta in Filus v. Lot Polish Airlines, which

20    was a sovereign immunity case ultimately, 907 F.2d 1328,

21    1332 (2d. Cir. 1990) that, quote, "A motion to dismiss does

22    not ultimately stay discovery except in cases covered by the

23    Private Securities Litigation Act.  Best discovery should

24    not be routinely stayed simply on the basis that a motion to

25    dismiss has been filed.  However, upon a showing of good

1   cause, a district court has considerable discretion to stay

2   discovery pursuant to Federal Rule of Civil Procedure 26(c),

3   and in some circumstances a pending motion to dismiss may

4   constitute good cause for a protective order staying

5   discovery.  A court determining whether to grant the stay of

6   discovery pending a motion must look to the particular

7   circumstances and posture of each case.  Courts consider,

8   one, the breadth of discovery sought, any prejudice that

9   would result, and three, the strength of the motion."

10          The O'Sullivan v. Deutsche Bank AG, 2018 U.S.

11   Dist. LEXIS 70418 *13-14 (S.D.N.Y Apr. 26, 2018) and the

12   cases cited therein, see also Judge Engelmayer's decision in

13   Campanelli v. Flagstar Bancorp Inc. 2019 U.S. Dist. LEXIS

14   211740 *5-7 (S.D.N.Y. Dec. 9, 2019), and Magistrate Judge

15   Wang's decision in Medina v. City of New York, 2020 U.S.

16   Dist. LEXIS 100456 *5-8 (S.D.N.Y. Jun. 8, 2020).

17          Here, I believe that the order as I suggested it

18   be revised sufficiently protects the prejudice that might

19   result to the second action defendants by the discovery

20   timetable that was initially proposed and that further

21   delaying discovery until a motion to dismiss on

22   jurisdictional grounds is ultimately filed, if ever, would

23   unduly prejudice the other parties to the adversary

24   proceeding and is not warranted.

25          As a practical matter, again, I've noted that it's

Page 64

1    highly likely that I will rule on the motions to dismiss

2    that are pending in the second action at the same time that

3    I rule on the motions to dismiss that were previously argued

4    and are sub judice in the first action.

5             So as a practical matter, the proposal in

6    Paragraph 4C would cover -- or the exchange date would

7    trigger off of a ruling in both actions, and there's no

8    reason not to provide for that now in the order so that

9    there is no doubt about that.

10            And as I've noted during oral argument, I think

11   the other changes to the order conceivably protect the

12   objecting defendants in action number two from any undue

13   prejudice in discovery.  That would take place before a

14   ruling on those two sets of motions to dismiss and with

15   respect to preparing for compliance with the deadlines that

16   are triggered off of the exchange date.

17            So subject to hearing from anyone if they think

18   that the proposed changes just simply don't make sense,

19   that's my ruling on this motion.

20            MR. CHAPMAN:  Your Honor, this is Dean Chapman

21   from Akin Gump.  Two quick observations.  First, I just

22   wanted to express our gratitude to the Court for giving us

23   some indication on where things stand with the motions to

24   dismiss.  It certainly helps resolve some uncertainty around

25   that.

1         Second, Your Honor, with respect to Section 4C,

2    you had raised a question about the fact that there is a

3    reference to one or more meet and confers, the defined term

4    deposition scheduling conference, you know, it might be

5    confusing.  We'll obviously go back and address this.  But

6    so the record is clear, plaintiff's position is that whether

7    or not the deposition scheduling conference is one meet and

8    confer or two meet and confers or whatever, all of those

9    meet and confers take place within seven days after the

10   exchange date in Section 4C.

11        THE COURT:  Right, okay.  (indiscernible) them.

12   You say that they'll have that conference.  And in any

13   event, the things in D and E occur -- they run off of seven

14   days after the exchange date.

15        MR. CHAPMAN:  That makes sense.

16        THE COURT:  Okay.  Anything else?  All right.

17        So as far as the pretrial conference that I'd like

18   you to build into this order, I want to be clear, that is

19   there as a holding date.  If the parties have good reason,

20   either together or someone can persuade me over other

21   parties' objection to move that conference, I am certainly

22   prepared to do that.  But I just think we need to have a

23   marker there so that parties really see some date that the

24   Court will hear as opposed to just getting an email report

25   that's also filed of where the parties are after their case

Page 66

1  scheduling conferences.

2          It's fine to have those case scheduling

3  conferences, don't get me wrong.  I want you to have those

4  so that when you have the pretrial conference, you can say

5  all right, we're done, we have all these issues resolved,

6  this is how we want the trial to proceed.  Or alternatively,

7  this is how most of us want to proceed, but the following

8  issues have arisen and there's a forum so the parties can

9  raise those issues in front of me.

10          So hopefully I'll have an order that's agreed on

11  this.  If it's not agreed, I'd like you to just submit the

12  order and let me know if someone has said that they want to

13  submit a proposed counterorder, which they should submit no

14  more than a couple of days after the order is emailed to

15  chambers if that -- you know, if that's (indiscernible) at

16  that point.  So I don't want to have another hearing on

17  this, just (indiscernible) on the proposed order -- orders

18  if someone can't agree to the actual form of order.

19          Any other questions, or does anyone have anything

20  more to say?  Okay.

21          Thank you all.  So I will look for that order,

22  hopefully (indiscernible).

23          That concludes today's calendar, I believe.  I

24  think all the other matters on the calendar, Mr. Fail, were

25  -- I'm not sure he's on.  Ms. Marcus -- Mr. Fail is -- all

Page 67

1    the other matters on the calendar were adjourned, correct?

2              MR. FAIL:  That's correct, Your Honor.  I was just

3    trying to unmute.

4              THE COURT:  Okay, very well.  So I will hang up at

5    this point.  Thank you all.

6              (Whereupon these proceedings were concluded)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 68

1                              **I N D E X**

2

3                              RULINGS

4                                              Page        Line

5

6

7     **Applications Granted**                    25          9

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 69

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  February 24, 2021