**Hearing Date and Time: April 27, 2021 at 10:00 AM (Eastern Time)**
**Objection Date and Time:  April 20, 2021 at 4:00 PM (Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus
Jared R. Friedmann
Jennifer Brooks Crozier

*Attorneys for Debtors*
*and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re                                              :
                                                   :      **Chapter 11**
**SEARS HOLDINGS CORPORATION**, *et al.*,          :
                                                   :      **Case No. 18-23538 (RDD)**
                                                   :
Debtors.[1]                                        :      **(Jointly Administered)**
---------------------------------------------------------------x

## NOTICE OF THE DEBTORS' THIRD MOTION
## TO ENFORCE THE ASSET PURCHASE AGREEMENT

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 1700 Broadway, 19th Fl., New York, NY 10019.

**PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "**Motion**") of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (the "**Debtors**"), for entry of an order enforcing the Asset Purchase Agreement against Transform Holdco LLC, as more fully set forth in the Motion, will be held before the Honorable Robert D. Drain, United States Bankruptcy Court Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 118, 300 Quarropas Street, White Plains, New York, 10601-4140 ("**Bankruptcy Court**"), on **Tuesday, April 27, 2021, at 10:00 a.m. (Eastern Time)** (the "**Hearing**").

**PLEASE TAKE FURTHER NOTICE** that objections and responses ("**Objections**"), if any, to the Motion must be asserted in writing; conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York; set forth the name of the objecting party, the basis for the Objection, and the specific grounds thereof; be filed with the Bankruptcy Court in accordance with the terms set forth in the Motion; and be served in accordance with the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 (Docket No. 405), so as to be so filed and received no later than **Tuesday, April 20, 2021, at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

**PLEASE TAKE FURTHER NOTICE** that if an Objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing and failure to appear may result in relief being granted or denied upon default.

Dated:  April 6, 2021
       New York, New York

                               */s/ **Jacqueline Marcus**
                               WEIL, GOTSHAL & MANGES LLP
                               767 Fifth Avenue
                               New York, New York  10153
                               Telephone:  (212) 310-8000
                               Facsimile:  (212) 310-8007
                               Jacqueline Marcus
                               Jared R. Friedmann
                               Jennifer Brooks Crozier

                               *Attorneys for Debtors*
                               *and Debtors in Possession*

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus
Jared R. Friedmann
Jennifer Brooks Crozier

*Attorneys for Debtors*
*and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
---------------------------------------------------------------x
In re                                          :
                                               :      Chapter 11
SEARS HOLDINGS CORPORATION, et al.,            :
                                               :      Case No. 18-23538 (RDD)
                                               :
                    Debtors¹                    :      (Jointly Administered)
---------------------------------------------------------------x
```

## DEBTORS' THIRD MOTION
## TO ENFORCE THE ASSET PURCHASE AGREEMENT

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 1700 Broadway, 19th Fl., New York, NY 10019.

## <u>TABLE OF CONTENTS</u>

**Page**

I.      **Preliminary Statement**.................................................................................1

II.     **Background** ....................................................................................................2

      A.      The Debtors' Chapter 11 Cases, the Sale, and the APA..........................2

      B.      Section 2.13(a) of the APA.....................................................................4

      C.      The Foreign Subsidiary Cash Dispute ...................................................7

III.    **Argument and Authorities** .............................................................................9

IV.     **Conclusion** ...................................................................................................12

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re DPH Holdings Corp.*,
    533 B.R. 20 (Bankr. S.D.N.Y. 2016) (Drain, J.)................................................................9, 11

*E.I. du Pont de Nemours and Co., Inc. v. Shell Oil Co.*,
    498 A.2d 1108 (Del. 1985) ................................................................9

*Lorillard Tobacco Co. v. Legacy Found.*,
    903 A.2d 728 (Del. 2006) ................................................................9

*Pellaton v. Bank of New York*,
    592 A.2d 473 (Del. 1991) ................................................................10

*Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.*,
    616 A.2d 1192 (Del. 1992) ................................................................10

*In re Sears Holdings Corp., et al.*,
    Case No. 18-23538 (RDD) (Feb. 7, 2019)................................................................7

**Statutes**

11 U.S.C. § 1107(a) ................................................................2

11 U.S.C. § 1108................................................................2

**Other Authorities**

*Deem*, Black's Law Dictionary (11th ed. 2019) ................................................................11

Fed. R. Bankr. P. 1015(b) ................................................................3

ii

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"),[1] file this Third Motion to Enforce the Asset Purchase Agreement (the "**Third Motion to Enforce**") and request that the Court enter an order: (i) compelling Transform Holdco LLC ("**Transform**" and, together with the Debtors, the "**Parties**") to effectuate the transfer to the Debtors of approximately $6.3 million, the amount held as of the Closing Date in bank accounts owned by the Debtors' former[2] Indian and Hong Kong subsidiaries (the "**Foreign Subsidiary Cash**")[3] in accordance with the terms of the Asset Purchase Agreement, dated as of January 17, 2019, by and among Transform, Sears Holdings Corporation, and Its Subsidiaries (as amended, restated, modified, or supplemented from time to time, the "**APA**") and (ii) granting the Debtors such other and further relief, at law or in equity, to which they are entitled, and, in support of the Third Motion to Enforce, respectfully represent as follows:

I.    **Preliminary Statement**

1.    On January 25, 2021, counsel for the Debtors requested that Transform take all necessary steps to effectuate the transfer to the Debtors of approximately $6.3 million in Foreign

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *(I) Motion to (A) Enforce Asset Purchase Agreement and Automatic Stay Against Transform Holdco LLC and (B) Compel Turnover of Estate Property, and (II) Response to Transform Holdco LLC's Motion to Assign Matter to Mediation* [Docket No. 2796] (the "**First Motion to Enforce**").

[2] As of the date hereof, notwithstanding the Parties' ongoing commercially reasonable efforts, the Debtors have not yet consummated the transfer to Transform of the Indian Acquired Foreign Assets. Nevertheless, as discussed herein, the Indian Acquired Foreign Assets have been operated for the sole benefit of Transform since the Closing Date, with Transform bearing all risk of loss and opportunity for gain in connection therewith. *See infra* at ¶ 12.

[3] The Debtors' former Indian and Hong Kong subsidiaries are "Foreign Subsidiaries" within the meaning of the APA, which provides that Foreign Subsidiaries are "Subsidiar[ies] of any Seller incorporated under any jurisdiction other than the United States of America and its territories, other than Sears RE." *See* APA § 1.1.

Subsidiary Cash that belongs to the Debtors under the plain terms of the APA. Transform refused, arguing that it had acquired the Foreign Subsidiary Cash under the APA. Specifically, Transform argued that a toggle mechanism that was included in an amended version of the APA permitted it to unilaterally change the economics of the APA and acquire Excluded Assets like the Foreign Subsidiary Cash.

2.        Transform is wrong. Under Section 2.13(a) of the APA as amended, which addresses the disposition of the Foreign Subsidiaries' assets, Transform only acquired "Acquired Foreign Assets," the definition of which specifically excludes "Excluded Assets" and includes only "assets of the type that would have been Acquired Assets had they been owned by the Sellers as of the Closing Date." Because the Foreign Subsidiary Cash is an Excluded Asset and would not have been an Acquired Asset had it been owned by the Sellers as of the Closing Date, Transform did not acquire it under the APA and it remained the property of the Debtors' estates. Accordingly, the Debtors respectfully request that the Court grant their Third Motion to Enforce and compel Transform to effectuate the immediate transfer of the Foreign Subsidiary Cash to the Debtors.

## II.    **Background**

### A.        **The Debtors' Chapter 11 Cases, the Sale, and the APA**

3.        Beginning on October 15, 2018 (the "**Commencement Date**") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.        On October 24, 2018, the United States Trustee for Region 2 appointed an official committee of unsecured creditors. No trustee or examiner has been appointed in these chapter 11

cases.

5.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

6.      On January 14, 2019, the Debtors conducted an auction for the sale of all or substantially all of their assets.  The Debtors selected the bid submitted by Transform and filed a copy of the executed APA on January 18, 2019.  *See Notice of Successful Bidder and Sale Hearing*, Jan. 18, 2019 [Docket No. 1730].

7.      The Court began hearings on the contested sale on February 4, 2019.  Evidence closed on February 6, 2019; the Court delivered a bench ruling approving the sale on February 7, 2019 and entered an order approving the sale on February 8, 2019.  *See Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief*, Feb. 8, 2019 [Docket No. 2507] (the "**Sale Order**").

8.      The sale closed at 12:01 a.m. Eastern time on February 11, 2019 (the "**Closing Date**").  In connection with the closing, the Debtors executed an amendment to the APA (the "**First Amendment**"), which they filed with the Court on February 14, 2019.  *See Notice of Filing Executed (I) Employee Lease Agreement, (II) Services Agreement, and (III) Amendment No. 1 to the Asset Purchase Agreement*, Feb. 14, 2019 [Docket No. 2599].[4]

9.      Under the Sale Order, the Bankruptcy Court "retain[ed] exclusive jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of [the] Sale Order

---

[4] The Debtors filed a substantially final draft of the First Amendment on February 7, 2019.  *See Notice of Filing Amendment to Asset Purchase Agreement*, Feb. 7, 2019 [Docket No. 2456].

and the Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder (and each of the agreements executed in connection therewith), to adjudicate disputes related to [the] Sale Order or the Asset Purchase Agreement (and such other related agreements, documents or other instruments) and to enforce the injunctions set forth [therein]." Sale Order ¶ 58. The Sale Order further provided "that the APA may be modified, amended or supplemented by the parties thereto . . . without further order of the Court; provided that any such modification, amendment or supplement does not materially change the terms of the [APA]." *Id.* ¶ 54.

B.      **Section 2.13(a) of the APA**

10.      Pursuant to Section 2.13(a) of the APA, as it appeared in the execution version of the agreement, Transform acquired certain of the Foreign Subsidiaries' assets—"Acquired Foreign Assets"—to be effected by means of an asset acquisition:

> On the Closing Date, Sellers shall use reasonable best efforts to cause each of the Foreign Subsidiaries to sell, transfer, assign, convey and deliver, or cause to be sold, transferred[,] assigned, conveyed and delivered to Buyer or the applicable Assignee, and Buyer or such applicable Assignee shall use reasonable best efforts to purchase, ***all right, title and interest of each of the Foreign Subsidiaries, in, to or under all assets, properties and rights Related to the Business other than the Excluded Assets and any other assets of the type that would have been Acquired Assets had they been owned by Sellers as of the Closing Date or any minority equity interests held by the Foreign Subsidiaries (collectively, the "Acquired Foreign Assets")***, in each case free and clear of any and all Encumbrances of any kind, nature or description and any Claims, other than Permitted Post-Closing Encumbrances.

*Asset Purchase Agreement Dated as of January 17, 2019 by and among Transform Holdco, LLC, Sears Holdings Corporation and Its Subsidiaries Parties Hereto*, Jan. 18, 2019 [Docket No. 1730 at pp. 70-71/315] at § 2.13(a) (emphasis added). The provision defines Acquired Foreign Assets to ***exclude*** Excluded Assets and ***include only*** "assets of the type that would have been Acquired Assets had they been owned by the Sellers as of the Closing Date." *Id.*

4

11.     Section 2.2(f) of the APA, in turn, provides that "'Excluded Assets' shall mean," among other things, "all cash and cash equivalents . . . including checks, commercial paper, treasury bills, certificates of deposit, and other bank deposits[,]" "except as otherwise expressly included as Acquired Assets."  The only cash expressly included as an Acquired Asset is "restricted cash," APA § 2.1(o), "cash collateral," *id.*, and "Store Cash," *id.* § 2.1(aa)).  Further, Section 2.1 of the APA expressly excludes assets like the Foreign Subsidiary Cash from the list of Acquired Assets: Section 2.1(ee) (which was included in the First Amendment) provides that "any bank accounts of the Sellers as may be agreed by Buyer and the Sellers prior to the Closing Date" are "Acquired Assets," but expressly excludes from that category of Acquired Assets "any cash in any such bank accounts."

12.     Section 2.13(a) also provides that, "[i]f the transfer of any Acquired Foreign Assets does not occur at the Closing Date," the Debtors and Transform "shall enter into such agreements as may be reasonably required to provide [Transform] . . . the benefit of such assets until such transfer is consummated."   APA § 2.13(a).   One such agreement was the Employee Lease Agreement, pursuant to which Transform leased the full-time services of the Foreign Subsidiaries' employees during the period between the Closing Date and the date upon which each Foreign Subsidiary was formally transferred to Transform.  *Employee Lease Agreement*, Feb. 14, 2019 [Docket No. 2599 at pp. 5-6, 9/509] at Recitals, § 1.8.  In this manner, the Parties ensured that Transform would acquire beneficial ownership of the Foreign Subsidiaries as of the Closing Date—enjoying the benefits and bearing the burdens of operating the Foreign Subsidiaries—even though the formal transfer of those entities might not be consummated until after the Closing Date.

13.     The Parties subsequently amended Section 2.13(a) by, among other things, adding a third sentence to the provision which permitted Transform to elect, following the Closing Date,

to acquire Acquired Foreign Assets by means of an equity acquisition instead of an asset acquisition.[5] The third sentence of the amended Section 2.13(a) reads as follows:

> If, at any time prior to the date that is sixty (60) days after the Closing Date, Buyer determines (in its sole discretion) and notifies the Seller that it is necessary or desirable to acquire all of the equity interests in any Foreign Subsidiary in lieu of the acquisition of assets and the assumption of liabilities contemplated by the first sentence of this Section 2.13(a), **_then the Sellers shall use reasonable best efforts to transfer such equity interests, which equity interests shall be deemed to be Acquired Foreign Assets_**.

*Amendment No. 1 to Asset Purchase Agreement*, Feb. 14, 2019 [Docket No. 2599 at pp. 194-195/509] at § 1.22 (emphasis added). The additional language in the third sentence makes clear that, should Transform elect to acquire the equity interests in the Foreign Subsidiaries, those equity interests would be **_deemed to be_** Acquired Foreign Assets. In other words, the equity interests would be treated as if they were Acquired Foreign Assets—*i.e.*, as excluding Excluded Assets (including all cash and cash equivalents pursuant to Section 2.2(f)) and including only those assets of the type that would have been Acquired Assets had they been held by the Sellers as of the Closing Date.

14.    The First Amendment contained several corresponding changes to the APA including (i) the addition of a second clause to the first sentence of Section 2.13(a) which further clarified that, should Transform elect to acquire Acquired Foreign Assets by means of an asset acquisition, Transform would be obligated to assume, perform, and discharge only "Liabilities (other than Excluded Liabilities) of the type that would have been Assumed Liabilities had the applicable Foreign Subsidiary been a Seller as of the Closing Date," *id.*, and (ii) the addition of a second clause to the last paragraph of Section 2.4 which provides that, should Transform elect to

---

[5] For the Court's convenience, the Debtors have attached hereto as **<u>Exhibit A</u>** a comparison of the original and amended Section 2.13(a), and as **<u>Exhibit B</u>** a clean copy of amended Section 2.13(a) as it appears in the First Amendment.

acquire Acquired Foreign Assets by means of an equity acquisition, Transform would be obligated to assume, perform, and discharge all of "the Liabilities of any entity that [was] an Acquired Foreign Asset," *id.* § 1.17.[6]

15.     The changes agreed to in the First Amendment to the APA reflected the Parties' agreement to allocate any risk associated with Transform's unilateral decision to proceed with an equity acquisition instead of an asset acquisition to Transform: if Transform acquired the Acquired Foreign Assets by means of an asset acquisition, Transform would assume only Liabilities of a type that would have been Assumed Liabilities had the Sellers been subject to them as of the Closing Date; if Transform acquired the Acquired Foreign Assets by means of an equity acquisition, Transform would assume all of the entities' Liabilities. *See* APA §§ 2.13(a), 2.4.  No matter which transaction structure Transform chose, however, Transform would only acquire Acquired Foreign Assets—and not Excluded Assets.

### C.      The Foreign Subsidiary Cash Dispute

16.     As the Court is well aware, since the Closing Date, the Debtors and Transform have engaged in one APA-related dispute after another, beginning with a dispute over whether Transform was obligated under the plain and unambiguous language of the APA to assume up to $166 million of Other Payables and all payment obligations with respect to Ordered Inventory. *See* Transcript of Hearing, *In re Sears Holdings Corp., et al.*, Case No. 18-23538 (RDD) (Feb. 7, 2019) [Docket No. 2886] at 241:7-242:17.  It was in the midst of one of these disputes—which was addressed in Second APA Settlement Agreement by and between the Parties [Docket No. 8445], dated September 17, 2020—that the Debtors and their advisors began to examine closely

---

[6] Notably, the Parties did not add a similar clause to the end of Section 2.1 of the APA ("Purchase and Sale of the Acquired Assets")—*i.e.*, a clause that provided that the Assets of any entity that was an Acquired Foreign Asset would be Acquired Assets.

the extent to which the Indian and Hong Kong subsidiaries had in fact held cash or cash equivalents as of the Closing Date.

17.     Specifically, in or around July 2020, the Debtors discovered that Sears-Israel employees had been drawing upon the Debtors' Israel cash reserves for salaries, benefits, and expenses and had thereby depleted those cash reserves by hundreds of thousands of dollars. The Debtors, by and through M-III Partners, LP ("**M-III**"), the Debtors' financial advisor, began to investigate the extent to which other Debtor or Debtor-related entities, including the Indian and Hong Kong subsidiaries, might have held cash or cash equivalents as of the Closing Date. The investigation was long, laborious, and complicated for a variety of reasons, including because M-III, which spearheaded the investigation, is heavily involved in the time-consuming, day-to-day business of administering the Debtors' estates and because Transform controls most of the information concerning the amounts held in these entities' bank accounts.

18.     Ultimately, M-III's investigation resulted in the discovery that the Indian and Hong Kong subsidiaries had indeed held large amounts of cash as of the Closing Date. According to bank records obtained by M-III during its investigation, there was $5,241,243 USD and $1,066,423 USD in the Indian bank accounts and Hong Kong bank accounts, respectively, as of the Closing Date. *See Declaration of Jennifer Brooks Crozier in Support of Debtors' Third Motion to Enforce the Asset Purchase Agreement* Ex. A (Foreign Subsidiary Account Statements) and Ex. B (Exchange Rate Tables), filed concurrently herewith. Despite the plain and unambiguous language of the APA, which carved out such cash from the scope of the Acquired Foreign Assets, those amounts, which total $6,307,666 USD, were never transferred to the Debtors. *Id.*

19.     Beginning in January 2021, counsel for the Debtors and Transform exchanged correspondence in which the Debtors requested that Transform take all necessary steps to

effectuate the transfer to the Debtors of the Foreign Subsidiary Cash.  Counsel for Transform responded by asserting, among other things, that, under 2.13(a) of the APA, Transform had acquired all of the assets (including the Foreign Subsidiary Cash) held by the Indian and Hong Kong subsidiaries.  Because Transform has persisted in its failure and refusal to transfer the Foreign Subsidiary Cash to the Debtors, the Debtors seek relief from this Court.

## III.  **Argument and Authorities**

20.    Under Delaware law, which governs the APA, *see* APA § 13.8, the primary objective in construing a contract is to give effect to the intent of the parties.  *Lorillard Tobacco Co. v. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006) (stating that "the role of a court is to effectuate the parties' intent").  The language of the parties, given its plain and ordinary meaning, is the best indication of the parties' intent.  *Id.* (explaining that when interpreting a contract the court is "constrained by a combination of the parties' words and the plain meaning of those words").  A contract must be construed as a whole, viewing each part in light of the others, which means that the intent of the parties may not be gathered from detached portions of a contract or from any clause or provision standing by itself.  *E.I. du Pont de Nemours and Co., Inc. v. Shell Oil Co.*, 498 A.2d 1108, 1113 (Del. 1985) ("The meaning inferred from a particular provision cannot control the meaning of the entire agreement if such an inference conflicts with the agreement's overall scheme or plan.").  And while a contract's plain meaning should provide the foundation for a court's interpretation, "a contract should not be interpreted to produce a result that is absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties."  *In re DPH Holdings Corp.*, 533 B.R. 20, 25 n.7, 27 (Bankr. S.D.N.Y. 2016) (Drain, J.) (applying New York law, but pointing out that, for contract interpretation purposes, there is no meaningful difference between Delaware and New York law).

21.    If the language of a contract is unambiguous, it should be given its plain and

ordinary meaning and enforced as written, without reference to extrinsic evidence. *See Pellaton v. Bank of New York*, 592 A.2d 473, 478 (Del. 1991) ("[I]f the instrument is clear and unambiguous on its face" the court may not consider external evidence to "interpret it or search for" the parties' intent.). "A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction." *Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992).

22.     Here, there can be no question that the Foreign Subsidiary Cash belongs to the Debtors under the unambiguous language of Sections 2.13(a), 2.2(f), and 2.1(ee) of the APA when those provisions are given their plain and ordinary meaning and when the APA is construed as a whole.  Under Section 2.13(a), regardless of whether Transform opted for an asset acquisition or an equity acquisition, it only acquired Acquired Foreign Assets, which are defined as excluding Excluded Assets and including only assets of the type that would have been Acquired Assets had they been owned by the Sellers as of the Closing Date.

23.     As underscored above, the third sentence of Section 2.13(a) that was added as part of the First Amendment to permit Transform to elect to acquire Acquired Foreign Assets (as defined) by means of an equity acquisition provides, in pertinent part, that, if Transform decides "in its sole discretion" to acquire the equity interests in any Foreign Subsidiary "in lieu of the acquisition of assets and the assumption of liabilities contemplated by the first sentence of . . . Section 2.13(a), *then the Sellers shall use reasonable best efforts to transfer such equity interests, which equity interests shall be deemed to be Acquired Foreign Assets*."  APA § 2.13(a) (emphasis added).

24.     The unambiguous language of that sentence makes clear that, should Transform elect to acquire the Debtors' equity interests in the Foreign Subsidiaries, those equity interests

would be "***deemed to be Acquired Foreign Assets***"—that is, treated as if they were Acquired

Foreign Assets and had the qualities of Acquired Foreign Assets (specifically, as excluding

Excluded Assets and including only those assets of the type that would have been Acquired Assets

had they been held by the Sellers as of the Closing Date).  *See Deem*, Black's Law Dictionary

(11th ed. 2019) (defining "deem" as "[t]o treat (something) as if [] it were really something else,

or [as if] it has qualities that it does not have").  Because the Foreign Subsidiary Cash is an

Excluded Asset and is not an asset of the type that would have been an Acquired Asset had it been

owned by the Sellers as of the Closing Date, it cannot be an Acquired Foreign Asset within the

meaning of the APA, and it continues to belong to the Debtors.

25.     By adding the third sentence of Section 2.13(a) to the APA, the Parties merely

intended to allow Transform to elect a different transaction structure.  The Parties clearly did not

intend to empower Transform to unilaterally reap a windfall at the expense of the Debtors'

estates—*i.e.*, to acquire all of the Foreign Subsidiaries' assets, including Excluded Assets (like the

Foreign Subsidiary Cash).  Such a reading of the third sentence of 2.13(a) would effect an "absurd,

commercially unreasonable" result.  *See In re DPH Holdings Corp.*, 533 B.R. at 27.

26.     In short, although Section 2.13(a) of the APA permitted Transform to elect to

acquire certain of the Foreign Subsidiaries' assets by means of an equity acquisition instead of an

asset acquisition, Section 2.13(a) makes clear that, no matter what transaction structure Transform

chose, Transform would acquire the same assets.  In either scenario, based upon the definition of

Acquired Foreign Assets, Transform would not acquire any Excluded Assets but rather only assets

of the type that would have been Acquired Assets had they been owned by the Sellers as of the

Closing Date.  *See* APA § 2.13(a); *see also* APA § 2.1(dd) (making the acquisition of "any

Acquired Foreign Assets" "subject to Section 2.13").  Because the Foreign Subsidiary Cash is an

Excluded Asset and is not an asset of the type that would have been an Acquired Asset had it been owned by the Sellers as of the Closing Date, it cannot be an Acquired Foreign Asset, and Transform did not acquire it pursuant to Section 2.13(a) of the APA. The Court should, therefore, order Transform to transfer the Foreign Subsidiary Cash to the Debtors.

## IV.   **Conclusion**

27.   For all of the foregoing reasons, the Debtors respectfully request that the Court grant the Third Motion to Enforce and enter an order compelling Transform to effectuate the transfer to the Debtors of $6,307,666 USD in Foreign Subsidiary Cash pursuant to Sections 2.13(a), 2.2(f), and 2.1(ee) of the Asset Purchase Agreement.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as is just.

Dated: April 6, 2021
New York, New York

/s/ *Jacqueline Marcus*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Jacqueline Marcus
Jared R. Friedmann
Jennifer Brooks Crozier

*Attorneys for Debtors*
*and Debtors in Possession*

## Exhibit A

### Comparison of Original and Amended Section 2.13(a)

(a)    On the Closing Date, **(i) the** Sellers shall use reasonable best efforts to cause each of the Foreign Subsidiaries to sell, transfer, assign, convey and deliver, or cause to be sold, transferred assigned, conveyed and delivered to Buyer or the applicable Assignee, and Buyer or such applicable Assignee shall use reasonable best efforts to purchase, all right, title and interest of each of the Foreign Subsidiaries, in, to or under all assets, properties and rights Related to the Business (other than the Excluded Assets) and any other assets of the type that would have been Acquired Assets had they been owned by **the** Sellers as of the Closing Date or ~~any~~ minority equity interests **in non-U.S. persons** held by ~~the Foreign~~ Subsidiaries **of the Seller (other than any Subsidiary who is a Seller (including, if agreed between Buyer and the Sellers, through transferring the equity of any such Subsidiaries holding such minority equity interests))** (collectively, the "Acquired Foreign Assets"), in each case free and clear of any and all Encumbrances of any kind, nature or description and any Claims, other than Permitted Post-Closing Encumbrances **and (ii) subject to and to the extent of the transfer of the Acquired Foreign Assets, Buyer shall assume, effective as of the Closing, and shall timely perform and discharge in accordance with their respective terms all Liabilities (other than Excluded Liabilities) of the type that would have been Assumed Liabilities had the applicable Foreign Subsidiary been a Seller as of the Closing Date**. If the transfer of any Acquired Foreign Assets does not occur at the Closing Date, Seller and Buyer shall use reasonable best efforts to complete such transfer as promptly as practicable ~~following the Closing Date~~ and shall enter into such agreements as may be reasonably required to provide Buyer or the Applicable Assignee the benefit of such assets until such transfer is consummated. **If, at any time prior to the date that is sixty (60) days after the Closing Date, Buyer determines (in its sole discretion) and notifies the Seller that it is necessary or desirable to acquire all of the equity interests in any Foreign Subsidiary in lieu of the acquisition of assets and the assumption of liabilities contemplated by the first sentence of this Section 2.13(a), then the Sellers shall use reasonable best efforts to transfer such equity interests, which equity interests shall be deemed to be Acquired Foreign Assets. If (i) the proposed transfer of any Acquired Foreign Assets triggers any right of first offer, right of first refusal or other preemptive right by a third party and (ii) such third party exercises such right of first offer, right of first refusal or other preemptive right, then the Sellers shall pay or cause to be paid to Buyer any consideration received by the Sellers or their Subsidiaries resulting from such exercise (and such transfer shall be deemed to satisfy the Sellers' obligation to sell, transfer, assign, convey or deliver the applicable Acquired Foreign Asset.**

## Exhibit B

## Amended Section 2.13(a)

(a)      On the Closing Date, (i) the Sellers shall use reasonable best efforts to cause each of the Foreign Subsidiaries to sell, transfer, assign, convey and deliver, or cause to be sold, transferred assigned, conveyed and delivered to Buyer or the applicable Assignee, and Buyer or such applicable Assignee shall use reasonable best efforts to purchase, all right, title and interest of each of the Foreign Subsidiaries, in, to or under all assets, properties and rights Related to the Business (other than the Excluded Assets) and any other assets of the type that would have been Acquired Assets had they been owned by the Sellers as of the Closing Date or minority equity interests in non-U.S. persons held by Subsidiaries of the Seller (other than any Subsidiary who is a Seller (including, if agreed between Buyer and the Sellers, through transferring the equity of any such Subsidiaries holding such minority equity interests)) (collectively, the "Acquired Foreign Assets"), in each case free and clear of any and all Encumbrances of any kind, nature or description and any Claims, other than Permitted Post-Closing Encumbrances and (ii) subject to and to the extent of the transfer of the Acquired Foreign Assets, Buyer shall assume, effective as of the Closing, and shall timely perform and discharge in accordance with their respective terms all Liabilities (other than Excluded Liabilities) of the type that would have been Assumed Liabilities had the applicable Foreign Subsidiary been a Seller as of the Closing Date. If the transfer of any Acquired Foreign Assets does not occur at the Closing Date, Seller and Buyer shall use reasonable best efforts to complete such transfer as promptly as practicable and shall enter into such agreements as may be reasonably required to provide Buyer or the Applicable Assignee the benefit of such assets until such transfer is consummated.  If, at any time prior to the date that is sixty (60) days after the Closing Date, Buyer determines (in its sole discretion) and notifies the Seller that it is necessary or desirable to acquire all of the equity interests in any Foreign Subsidiary in lieu of the acquisition of assets and the assumption of liabilities contemplated by the first sentence of this Section 2.13(a), then the Sellers shall use reasonable best efforts to transfer such equity interests, which equity interests shall be deemed to be Acquired Foreign Assets.  If (i) the proposed transfer of any Acquired Foreign Assets triggers any right of first offer, right of first refusal or other preemptive right by a third party and (ii) such third party exercises such right of first offer, right of first refusal or other preemptive right, then the Sellers shall pay or cause to be paid to Buyer any consideration received by the Sellers or their Subsidiaries resulting from such exercise (and such transfer shall be deemed to satisfy the Sellers' obligation to sell, transfer, assign, convey or deliver the applicable Acquired Foreign Asset.

**Exhibit C**

**Proposed Order**

**Hearing Date and Time: April 27, 2021 at 10:00 AM (Eastern Time)**
**Objection Date and Time:  April 20, 2021 at 4:00 PM (Eastern Time)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
In re                                                          :
                                                              :        **Chapter 11**
**SEARS HOLDINGS CORPORATION**, *et al.*,     :
                                                              :        **Case No. 18-23538 (RDD)**
                                                              :
         Debtors.[1]                                          :        **(Jointly Administered)**
-------------------------------------------------------------x

## ORDER GRANTING THE DEBTORS' THIRD MOTION
## TO ENFORCE THE ASSET PURCHASE AGREEMENT

Upon the motion dated _____, 2021 (Docket No. _____), and supporting declarations

(Docket Nos. ____, ____) (collectively, the "**Third Motion to Enforce**")[2] of Sears Holdings

Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned

chapter 11 cases (collectively, the "**Debtors**"), for entry of an order (the "**Order**") enforcing the

Asset Purchase Agreement, dated as of January 17, 2019, by and among Transform Holdco LLC,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 1700 Broadway, 19th Fl., New York, NY 10019.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the First Motion to Enforce.

Sears Holdings Corporation, and Its Subsidiaries (as amended, restated, modified, or supplemented from time to time, the "**APA**") and the Sale Order; and the Court having jurisdiction to consider the Third Motion to Enforce and the relief requested therein in accordance with 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Third Motion to Enforce and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief sought in the Third Motion to Enforce and the opportunity for a hearing thereon having been provided in accordance with the Amended Case Management Order; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Third Motion to Enforce on April 27, 2021 (the "**Hearing**"); and upon the record of the Hearing and all of the proceedings had before the Court; and, after due deliberation, the Court having determined that the legal and factual bases set forth in the Third Motion to Enforce establish just cause for the relief granted herein and that such relief is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; it is now, therefor,

**ORDERED THAT:**

1.      The Third Motion to Enforce is granted in its entirety; and

2.      Pursuant to the unambiguous terms of the APA, within seven (7) business days of the entry of this Order, Transform shall effectuate the transfer to the Debtors of $6,307,666 USD, representing the total amount of cash owed to the Debtors in respect of the Foreign Subsidiary Cash.

3.      This Court shall retain jurisdiction to hear and determine all matters arising from

or related to the implementation, interpretation, and/or enforcement of this Order.


Dated: _____, 2021
            White Plains, New York


                                        _____
                                        THE HONORABLE ROBERT D. DRAIN
                                        UNITED STATES BANKRUPTCY JUDGE