**Hearing Date and Time:  April 27, 2021 at 10:00 am (Eastern Time)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

In re                                                               :

SEARS HOLDINGS CORPORATION, *et al.*,        :

Debtors.[1]                                                       :

-----------------------------------------------------------------X

Chapter 11

Case No. 18-23538 (RDD)

(Jointly Administered)

## TRANSFORM HOLDCO LLC'S BRIEF IN OPPOSITION TO THE DEBTORS' THIRD MOTION TO ENFORCE THE ASSET PURCHASE AGREEMENT

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 130 W. 44nd St., 17th Fl., New York, NY 10036.

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ...................................................................................................... 3

ARGUMENT ........................................................................................................... 12

A.  Transform Acquired All of the Equity Interests in the Foreign
    Subsidiaries, Including the Cash in the Foreign Subsidiary Bank
    Accounts ......................................................................................................... 12

    a)  Transform Acquired the Cash in the Foreign Subsidiary Bank
           Accounts under the Plain Language of § 2.13(a) of the APA ........................ 12

    b)  The Debtors' Counterarguments Fail ............................................................ 13

B.  The Debtors Are Equitably Estopped and Barred by the Doctrine of
    Acquiescence  from Asserting This Demand for Cash in the Foreign
    Subsidiary Bank Accounts .............................................................................. 16

    a)  Equitable Estoppel ........................................................................................ 16

    b)  Acquiescence ................................................................................................ 17

CONCLUSION ......................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alta Berkeley VI C.V. v. Omneon, Inc.*,
41 A.3d 381 (Del. 2012) ...................................................................................... 12

*Flintkote Co. v. Aviva PLC*,
769 F.3d 215 (3d Cir. 2014)................................................................................. 16

*Klaassen v. Allegro Dev. Corp.*,
106 A.3d 1035 (Del. 2014) ............................................................................... 17-18

*Kuhn Constr., Inc. v. Diamond State Port Corp.*,
990 A.2d 393 (Del. 2010) ............................................................................... 13, 15

*Lehman Bros. Holdings Inc. v. Spanish Broad. Sys., Inc.*,
Civil Action No. 8321-VCG, 2014 WL 718430 (Del. Ch. Feb. 25, 2014)......................... 17

*Lorillard Tobacco Co. v. Am. Legacy Found.*,
903 A.2d 728 (Del. 2006) ...................................................................................... 13

*Matria Healthcare, Inc. v. Coral SR LLC*,
C.A. No. 2513-N, 2007 WL 763303 (Del. Ch. Mar. 1, 2007)........................................... 13

*Nevins v. Bryan*,
885 A.2d 233 (Del. Ch. 2005)................................................................................. 17

*Osborn ex rel. Osborn v. Kemp*,
991 A.2d 1153 (Del. 2010) ............................................................................... 12, 15

*Sunline Com. Carriers, Inc. v. CITGO Petroleum Corp.*,
206 A.3d 836 (Del. 2019) ...................................................................................... 12

## Other Authorities

Merriam-Webster's Dictionary, https://merriam-webster.com/dictionary/lieu .................. 13

## PRELIMINARY STATEMENT

1.      More than two years after the closing of the APA,[2] the Debtors now seek to rewrite the plain and unambiguous contractual language in an effort to seize cash from certain Foreign Subsidiary Bank Accounts (as defined below) following the transfer of "all equity interests" in these Foreign Subsidiaries[3] to Transform.   At its core, the Debtors' latest motion (Docket No. 9395) (the "Motion" or "Mot.") argues that a transaction whereby Transform acquired "all of the equity interests" in certain Foreign Subsidiaries means something other than Transform acquiring all of the assets and liabilities of those Foreign Subsidiaries, including cash held in the Foreign Subsidiary Bank Accounts at the time of closing.   Contrary to the Debtors' contrived arguments, nothing in the APA alters the mechanics of this commonly understood commercial transaction.

2.      Section 2.13 of the APA addresses the treatment of non-debtor Foreign Subsidiaries as part of the sale.   It provides Transform with two options to effectuate the transfer of these Foreign Subsidiaries.   Transform could either:   (i) acquire certain assets and assume limited liabilities of the Foreign Subsidiaries, consistent with the terms under which Transform would acquire certain assets and limited liabilities of the Debtors; or (ii) "acquire all of the equity interests in any Foreign Subsidiary in lieu of the acquisition of assets and assumption of liabilities."   The choice belonged solely to Transform.   For the Foreign Subsidiaries at issue in this Motion,

---

[2]      The APA refers to the Asset Purchase Agreement filed as Ex. B to the *Order (I) Approving the Asset Purchase Agreement among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection therewith and (IV) Granting Related Relief*, Docket No. 2507 (the "Sale Order"), as amended by the Amendment No. 1 to Asset Purchase Agreement filed as Ex. E to the *Notice of Filing Executed (I) Employee Lease Agreement, (II) Services Agreement, and (III) Amendment No. 1 to the Asset Purchase Agreement*, Docket No. 2599 (the "Notice of Filing of Amendment No. 1 to the APA").   All capitalized terms used but not defined herein shall have the meaning ascribed to them in the APA.

[3]      The Foreign Subsidiaries are Sears Sourcing India Private Limited, Sears IT and Management Services India Private Limited, Sears Global Technologies India Private Limited (the "Indian Subsidiaries"), Sears Holdings Global Sourcing Limited, International Sourcing & Logistics Limited, and Quality Assurance Laboratory Limited (the "Hong Kong Subsidiaries," and together with the Indian Subsidiaries, the "Foreign Subsidiaries").

Transform chose the latter option. By acquiring "all of the equity interests" in these Foreign Subsidiaries, it should be (and for two years was) uncontroversial that Transform acquired all of the assets and all the liabilities of these Foreign Subsidiaries, including the cash in the relevant bank accounts at the time of closing (the "Foreign Subsidiary Bank Accounts"). That is the only tenable plain language reading of Section 2.13(a) of the APA.

3.      For two years, the parties' course of dealing reflected this understanding. The Debtors never suggested that this cash belonged to the Debtors until recently, even though they had full access to the books and knew that these entities obviously had cash when they were purchased. None of the Debtors' previous "solvency trackers" filed with this Court ever suggested that this cash belonged to the Debtors even though the Debtors had every incentive to identify liquid assets to show their ability to pay administrative claims. Notably, the Debtors made Transform pay capital gains tax and interest on the cash in the Indian Subsidiaries' bank accounts. Now the Debtors claim that Transform did not acquire the cash in the Indian Subsidiaries' bank accounts even after Transform paid tax on that cash after electing to acquire all of the equity interests in those Subsidiaries.

4.      The Debtors' unnatural reading of the APA attempts to distort the plain text of the contract and ignores fundamental canons of contractual interpretation. Having abandoned two previous unnatural contract interpretation arguments in prior correspondence with Transform, the Debtors have now asserted a totally new argument (which is equally unnatural) and ask the Court to find that "all of the equity interests" of the Foreign Subsidiaries actually means only certain assets of the Foreign Subsidiaries. The Debtors' interpretation would mean that the second option provided in Section 2.13(a) – the one Transform actually chose – would yield a worse outcome

because Transform would be taking on additional liabilities as compared to the first option without additional assets to pay those liabilities.

5.    While the Court need go no further than a plain reading of the APA to deny this Motion, the Debtors' course of conduct also bars them from the relief they seek under the doctrines of equitable estoppel and acquiescence.  The Debtors said nothing about the cash in the Foreign Subsidiary Bank Accounts for two years, except when they required Transform to pay capital gains tax and interest on the cash they now claim.  Having done so, the Debtors may not equitably take this cash from Transform now.

## **BACKGROUND**

### A.    The APA Gives Transform the Option to Acquire "All of the Equity Interests" in the Foreign Subsidiaries

6.    On October 15, 2018, each of the Debtors filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York, commencing a process to sell all or substantially all of the Debtors' businesses and assets.  Transform and the Debtors executed the APA on January 17, 2019, and filed a substantially final draft of the first amendment to the APA on February 7, 2019.  *See Notice of Filing Amendment to the Asset Purchase Agreement* (Docket No. 2456).  That final draft included the exact language of § 2.13(a) that was ultimately included in the executed first amendment to the APA.  *See Notice of Filing Executed (I) Employee Lease Agreement, (II) Services Agreement, and (III) Amendment No. 1 to the Asset Purchase Agreement* at 355-56 (Docket No. 2599) (redline of the executed APA amendment).  On February 8, 2019, the Bankruptcy Court entered an order approving the sale of substantially all of the Debtors' assets to Transform.  The first amendment was executed on February 11, 2019, and the APA sale closed that same day (the "Closing Date").

7.    In full, § 2.13 of the APA, as amended, provides:

Section 2.13    Foreign Assets

(a) On the Closing Date, (i) the Sellers shall use reasonable best efforts to cause each of the Foreign Subsidiaries to sell, transfer, assign, convey and deliver, or cause to be sold, transferred assigned, conveyed and delivered to Buyer or the applicable Assignee, and Buyer or such applicable Assignee shall use reasonable best efforts to purchase, all right, title and interest of each of the Foreign Subsidiaries, in, to or under all assets, properties and rights Related to the Business (other than the Excluded Assets) and any other assets of the type that would have been Acquired Assets had they had been owned by the Sellers as of the Closing Date or minority equity interests in non-U.S. Persons held by Subsidiaries of the Seller (other than any Subsidiary who is a Seller (including, if agreed between Buyer and the Sellers, through transferring the equity of any such Subsidiaries holding such minority equity interests)) (collectively, the "Acquired Foreign Assets"), in each case free and clear of any and all Encumbrances of any kind, nature or description and any Claims, other than Permitted Post-Closing Encumbrances and (ii) subject to and to the extent of the transfer of the Acquired Foreign Assets, Buyer shall assume, effective as of the Closing, and shall timely perform and discharge in accordance with their respective terms all Liabilities (other than Excluded Liabilities) of the type that would have been Assumed Liabilities had the applicable Foreign Subsidiary been a Seller as of the Closing Date. If the transfer of any Acquired Foreign Assets does not occur at the Closing Date, Seller and Buyer shall use reasonable best efforts to complete such transfer as promptly as practicable and shall enter into such agreements as may be reasonably required to provide Buyer or the applicable Assignee the benefit of such assets until such transfer is consummated. If, at any time prior to the date that is sixty (60) days after the Closing Date, Buyer determines (in its sole discretion) and notifies the Seller that it is necessary or desirable to acquire all of the equity interests in any Foreign Subsidiary in lieu of the acquisition of assets and assumption of liabilities contemplated by the first sentence of this Section 2.13(a), then the Sellers shall use reasonable best efforts to transfer such equity interests, which equity interests shall be deemed to be Acquired Foreign Assets. If (i) the proposed transfer of any Acquired Foreign Assets triggers any right of first offer, right of first refusal or other preemptive right by a third party and (ii) such third party exercises such right of first offer, right of first refusal or other preemptive right, then the Sellers shall pay or cause to be paid to Buyer any consideration received by the Sellers or their Subsidiaries resulting from such exercise (and such transfer shall be deemed to satisfy the Sellers' obligation to sell, transfer, assign, convey or deliver the applicable Acquired Foreign Asset).

(b) If, at any time prior to the date that is sixty (60) days after the Closing Date, Buyer determines (in its sole discretion) and notifies the Seller that it is necessary or desirable to acquire other minority equity interests in non-U.S. Persons held by Subsidiaries of the Seller (other than any Subsidiary who is a Seller

(including, if agreed between Buyer and Sellers, through transferring the equity of any such Subsidiaries holding such minority equity interests)) so as to ensure that Buyer or the applicable Assignee shall be able to secure the benefit of the applicable Acquired Foreign Assets, Buyer may elect, by written notice delivered to the Sellers, to acquire such other minority equity interests directly from the Seller it being agreed by the Parties that such equity interests will be deemed to be Acquired Foreign Assets for the purposes of this Agreement. Following any such election, Buyer and the Seller shall promptly execute all documentation required to effectuate the purchase and sale of such other minority equity interests under applicable Law. If (i) the proposed transfer of any such other minority equity interests triggers any right of first offer, right of first refusal or other preemptive right by a third party and (ii) such third party exercises such right of first offer, right of first refusal or other preemptive right, then the Sellers shall pay or cause to be paid to Buyer any consideration received by the Sellers or their Subsidiaries resulting from such exercise (and such transfer shall be deemed to satisfy the Sellers' obligation to sell, transfer, assign, convey or deliver the applicable other minority equity interests).

(c) No purchase of Acquired Foreign Assets or equity interests pursuant to this Section 2.13 shall require the delivery of any additional consideration by Buyer; provided, that to the extent required by applicable Law (including, for the avoidance of doubt, Tax Law), Buyer and Seller shall in accordance with Section 9.3(d) either (i) allocate a portion of the Purchase Price to the purchase of such equity interests or (ii) provide for nominal consideration to be paid by Buyer to Sellers in an amount no greater than the minimum amount required by applicable Law.

8.    Under Section 2.13 of the APA, the Debtors have the obligation to "use reasonable best efforts" to transfer the Foreign Subsidiaries to Transform.  These subsidiaries included Sears Sourcing India Private Limited, Sears IT and Management Services India Private Limited, Sears Global Technologies India Private Limited (the "Indian Subsidiaries"), Sears Holdings Global Sourcing Limited, International Sourcing & Logistics Limited, and Quality Assurance Laboratory Limited (the "Hong Kong Subsidiaries," and together with the Indian Subsidiaries, the "Foreign Subsidiaries").

9.    Section 2.13(a) of the APA provides Transform with two options.  Transform could either:  (i) acquire certain assets and assume certain liabilities of the Foreign Subsidiaries, as contemplated by the first sentence of § 2.13(a); or (ii) "[i]f, at any time prior to the date that is

sixty (60) days after the Closing Date, Buyer determines (in its sole discretion) and notifies the Seller that it is necessary or desirable to acquire all of the equity interests in any Foreign Subsidiary in lieu of the acquisition of assets and assumption of liabilities contemplated by the first sentence of this Section 2.13(a), then the Sellers shall use reasonable best efforts to transfer such equity interests, which equity interests shall be deemed to be Acquired Foreign Assets," as contemplated by the third sentence of § 2.13(a).

B.    **Transform Elected to Acquire All of the Equity Interests in the Foreign Subsidiaries**

10.    Within 60 days of the Closing Date, on April 9, 2019, Transform elected the second option – to acquire "all of the equity interests" in the Foreign Subsidiaries. *Declaration of Charles W. Allen in Support of Transform Holdco LLC's Brief in Opposition to the Debtors' Third Motion to Enforce the Asset Purchase Agreement* ("Allen Decl."), Ex. A, Email from Kristen Arn-O'Rourke (Apr. 9, 2019) (providing notice that Transform "deemed it necessary and desirable to acquire all of the equity interests identified below as Acquired Foreign Assets," including "[a]ll equity interests held by Sellers or their Subsidiaries in each of" the Foreign Subsidiaries).    That same day, the Debtors confirmed receipt of Transform's election to acquire the equity interests in the Foreign Subsidiaries. *Id.*, Email from Francesca Cohen (Apr. 9, 2019) ("We confirm receipt of your notice.").

11.    Transform and the Debtors immediately proceeded to negotiate the relevant documents to consummate the transfer of the equity interests in the Foreign Subsidiaries. *See id.* The Debtors transferred the equity interests in the Hong Kong Subsidiaries to Transform on April 16, 2019.  Allen Decl., Ex. B, Share Purchase Agreement (Apr. 16, 2019) (the "Hong Kong SPA"). Under § 2.1 of the Hong Kong SPA, Transform acquired all of the equity interests in the Hong Kong subsidiaries. *Id.*  In effecting the transfer, the Debtors did not seek to carve out any assets

of the Hong Kong Subsidiaries, and specifically did not carve out the cash in the bank accounts. *Id.*

12.     Notwithstanding the Debtors' obligation to "use reasonable best efforts" to transfer its foreign subsidiaries to Transform, to date, more than two years later, the Debtors still have failed to effectuate the physical transfer of the equity interests in the Indian Subsidiaries to Transform, despite contractually agreeing to do so on multiple occasions.

### C.     Debtors Demand More Funds from Transform And Refuse to Transfer the Equity Interests in the Indian Subsidiaries

13.     As the Court is aware, the Debtors have had plenty of opportunities to raise this Foreign Subsidiary Bank Account issue over the last two years.  The Debtors have filed at least four motions to seek turnover from or enforce the APA against Transform, and the Debtors and Transform have each raised a broad array of disputes under the APA, many of which they have litigated before this Court.  *See, e.g.*, Docket Nos. 2796, 4029, 6084, 9106.

14.     Transform and the Debtors entered into a settlement agreement on January 10, 2020 to resolve a number of these disputes that had arisen under the APA (the "First APA Settlement Agreement").  Not long after the entry into the First APA Settlement Agreement, it became clear that there were additional unresolved disputes.  Among other things, there were disputes concerning whether Transform was obligated to pay (i) the gains tax that the India taxing authority would impose on the Debtors' transfer to Transform of the Debtors' equity in the Indian Subsidiaries (the "Indian Gains Tax"); and (ii) the per month interest charge that the India taxing authority would impose in connection with the Indian Gains Tax (the "Indian Interest Amount").

15.     Following months of negotiations, the parties executed a settlement agreement on September 17, 2020 (the "Second APA Settlement Agreement"), under which Transform agreed to pay the Indian Gains Tax and Indian Interest Amount in full.  Second APA Settlement

Agreement § 3(a) (Docket No. 8445).  As the Debtors have acknowledged, Transform paid these

taxes based on valuations that included the cash in the Indian Subsidiaries' bank accounts.  *See*

Allen Decl., Ex. F, Letter from Jennifer Brooks Crozier (Feb. 11, 2021) (offering to reimburse

Transform for the amount attributable to the cash in the Indian Subsidiaries' bank accounts).  In

return for Transform's payment of the Indian Gains Tax and Indian Interest Amount, the Debtors

agreed to "use commercially reasonable efforts to transfer to Transform [100%] of the equity in

the [Indian Subsidiaries]" within 30 days.  Second APA Settlement Agreement § 3(b).

16.    The Debtors did not do so.  Instead, on November 19, 2020, Debtors demanded that

Transform make a cash payment for $676,668.73 for the asserted aggregate amount of certain

closed litigation and insurance claims, and further demanded that if Transform did not make such

a cash payment, it would "treat Transform's refusal as a material breach of the Second APA

Settlement Agreement that relieves/excuses the Debtors from further performance, including of

the obligation to transfer the Indian [Subsidiaries] to Transform." *See Transform Holdco LLC's*

*Brief in Opposition to the Debtors' Motion to Compel Turnover of Estate Property*, Docket 9138

¶ 10.

17.    This dispute settled on December 30, 2020 (the "Third APA Settlement

Agreement").  Under the terms of the Third APA Settlement Agreement, the Debtors promised to

"use commercially reasonable efforts to transfer to Transform [100%] of the equity in the Indian

Acquired Foreign Assets" within 14 business days after receiving a $300,000 settlement payment

from Transform, which Transform paid in full on Friday, January 22, 2021.  Allen Decl., Ex. C,

Letter Agreement (Dec. 30, 2020).

### D.  The Debtors Assert Theories for Turnover of the Cash in the Foreign Subsidiary Bank Accounts That They Now Abandon

18.     The following Monday, January 25, 2021 – almost two years after the closing of the APA sale but just one business day after Transform had made the $300,000 settlement payment – the Debtors sent a letter to Transform that for the first time asserted they were entitled under the APA to the cash in the Foreign Subsidiary Bank Accounts.  Allen Decl., Ex. D, Letter from Jennifer Brooks Crozier (Jan. 25, 2021).  The Debtors have acknowledged that they strategically "held" this letter until after they received the $300,000 settlement payment.  Allen Decl., Ex. F, Letter from Jennifer Brooks Crozier at 4-5 (Feb. 11, 2021) ("[W]e admittedly held our letter for a couple of weeks until after we had confirmed receipt of that payment.").

19.     At no prior point had the Debtors demanded this cash from Transform.  Nor had the Debtors ever identified such cash as belonging to the estates.  For example, the Debtors never included these cash amounts in the "administrative solvency" trackers filed with the Court in connection with the solicitation and confirmation of the Plan.  *See, e.g.*, *Disclosure Statement for Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors*, Exhibit C (Docket No. 4478).  Nor did the Debtors include the cash amounts in the Foreign Subsidiary Bank Accounts in the sworn testimony of Brian Griffith filed with the Court in connection with the confirmation of the Plan.  *Declaration of Brian J. Griffith in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* (Docket No. 5148).  In fact, on January 21, 2021 – four days before the Debtors first claimed ownership of this cash – the Debtors filed a status update with the Court (Docket No. 9249) that made no reference to this cash as being property of the estates, even though this filing purportedly listed all of the Debtors' estimated remaining asset recoveries.  The Debtors' course of conduct over the course of nearly two years, at times when they had every incentive to

9

identify assets available to pay administrative creditors, clearly shows that they never viewed the cash as their property under the terms of the APA.

20.     The Debtors' and their advisors' inconsistency does not stop there.  Over the past few months, the Debtors have presented, and abandoned quickly, other frivolous arguments.  In their January 25 letter, the Debtors sought not only the cash in bank accounts of the Foreign Subsidiaries, but also the cash in bank accounts owned by the Debtors' former domestic Sparrow subsidiaries ("Sparrow Subsidiary Bank Accounts").  Allen Decl., Ex. D, Letter from Jennifer Brooks Crozier (Jan. 25, 2021).  The Debtors' initial theory was that the cash in the Foreign Subsidiary Bank Accounts and the Sparrow Subsidiary Bank Accounts belonged to the Debtors as Excluded Assets under § 2.2(f) of the APA.  *Id.*

21.     Section 2.2(f) of the APA limits the definition of "Excluded Assets" to the "right, title or interest of Sellers" in those assets.  As Transform pointed out in its response to the Debtors, neither the Foreign Subsidiaries nor Sparrow subsidiaries were parties to the APA, and therefore were not "Sellers" as defined in the APA.  Allen Decl., Ex. E, Letter from Sean O'Neal at 2 (Feb. 1, 2021).  Transform further made clear that it acquired "all of the equity interests" in the Foreign Subsidiaries under § 2.13(a) of the APA, and "all equity interests" in the Sparrow subsidiaries under § 2.1(s) of the APA, which meant that Transform had acquired all of the assets (and assumed all of the liabilities) of these subsidiaries, including any cash in the Foreign Subsidiary Bank Accounts and Sparrow Subsidiary Bank Accounts.  *Id.*

22.     Confronted with the plain language of the APA, the Debtors abandoned their initial argument, and pivoted to a second theory.  This time, the Debtors asserted (with no greater success) that they acquired the cash in the Foreign Subsidiary Bank Accounts and Sparrow Subsidiary Bank Accounts because, under their reading of the first sentence of APA § 2.13(a), Transform only

acquired "those assets that would have been Acquired Assets had the Sellers held them as of the Closing Date and would assume only those liabilities that would have been Assumed Liabilities had the Sellers been liable for them as of the Closing Date." Allen Decl., Ex. F, Letter from Jennifer Brooks Crozier at 2 (Feb. 11, 2021). The Debtors relied upon the "governing principle" of the APA that provided for a "balance struck between Acquired (and Excluded) Assets and Assumed (and Excluded) Liabilities," and argued that an equity transfer of the Foreign Subsidiaries would "upset [this] balance." *Id*.

23.     This argument fared no better. As an initial matter, Transform pointed out in its response that the Debtors' new theory had no applicability to the Sparrow subsidiaries because they were not Foreign Subsidiaries subject to § 2.13(a). Allen Decl., Ex. G, Letter from Sean O'Neal at 2 (Feb. 19, 2021).[4] More fundamentally, as to the Foreign Subsidiaries, the Debtors ignored that Transform had elected the second option to acquire "all of the equity interests" of the Foreign Subsidiaries, "in lieu of" certain of their assets and liabilities, and the plain meaning of this provision could not be distorted by the "balance" of the APA as a whole. *Id*. (citing *A.W. Fin. Servs., S.A. v. Empire Res.*, 981 A.2d 1114, 1131 (Del. 2009) ("[T]he applicable rules of construction [dictate] that specific provisions should prevail over general provisions.").

24.     The Debtors waited another six weeks and then filed this Motion to Enforce. Not only have the Debtors abandoned any claim to the cash in the Sparrow Subsidiary Bank Accounts, they have also abandoned their first two theories for relief. The Debtors now assert their *third* equally wrong theory – that "all of the equity interests" in § 2.13(a) somehow means "only those assets of the type that would have been Acquired Assets had they been held by the Sellers as of

---

[4]     The Debtors no longer seek cash from the Sparrow Subsidiaries' bank accounts.

the Closing Date." Mot. at 6.    Like the two theories that came before, the Debtors' latest reading

of the APA is nonsensical.

## ARGUMENT

### A. Transform Acquired All of the Equity Interests in the Foreign Subsidiaries, Including the Cash in the Foreign Subsidiary Bank Accounts

#### a) Transform Acquired the Cash in the Foreign Subsidiary Bank Accounts under the Plain Language of § 2.13(a) of the APA

25.    "To determine what contractual parties intended, Delaware courts start with the

text." *Sunline Com. Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d 836, 846 (Del. 2019).

Under Delaware law, courts interpreting contracts will "give effect to the plain-meaning of the

contract's terms and provisions." *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159-60 (Del.

2010).    "Unless there is ambiguity, Delaware courts interpret contract terms according to their

plain, ordinary meaning." *Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012).

26.    Section 2.13(a) of the APA presents Transform with a choice:    It may either

(i) purchase certain assets and assume certain liabilities of the Foreign Subsidiaries, or (ii) it may

"acquire all of the equity interests in any Foreign Subsidiary in lieu of the acquisition of assets and

assumption of liabilities contemplated by the first sentence of this Section 2.13(a)."    Here,

Transform chose the latter option by "notif[ying] the Seller that it is necessary or desirable to

acquire all of the equity interests" in the Foreign Subsidiaries.  APA § 2.13(a); Allen Decl., Ex. A.

27.    The Debtors do not and cannot argue that that the plain meaning of "all of the equity

interests in any Foreign Subsidiary" somehow creates an exception for the cash in a Foreign

Subsidiary's bank account.  "All of the equity interests" means what it says – and this case should

end there.

28.    For example, APA § 2.1(s) provides that Transform acquired "all of the equity

interests" in the Sparrow Subsidiaries.  Like any other equity or stock purchase, that plainly means

that Transform acquired all of the assets and liabilities of the Sparrow Subsidiaries, including the cash in those Subsidiaries' bank accounts. APA § 2.1(s); *see* Allen Decl., Ex. D (requesting turnover of cash in the Sparrow Subsidiary Bank Accounts); Allen Decl., Ex. E (pointing the Debtors to APA § 2.1(s)); Mot. (abandoning the Sparrow Subsidiary Bank Accounts argument).

29.     The Debtors' assertion that Transform acquired the same assets under both options presented in § 2.13(a) contravenes the plain language of APA § 2.13(a). Transform can elect to acquire "all of the equity interests" "*in lieu of*" the acquisition of certain assets and assumption of certain liabilities, which means that the former must be distinct from the latter. *See* Merriam-Webster's Dictionary, https://merriam-webster.com/dictionary/lieu (defining "in lieu of" as "in the place of; instead of"); *see also Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 738 (Del. 2006) ("Under well-settled case law, Delaware courts look to dictionaries for assistance in determining the plain meaning of terms which are not defined in a contract."). Debtors' current reading of APA § 2.13(a) simply ignores the key phrase, "in lieu of," which violates the fundamental canon of contract interpretation under Delaware law that each word be given effect. *See Matria Healthcare, Inc. v. Coral SR LLC*, C.A. No. 2513-N, 2007 WL 763303, at *6 (Del. Ch. Mar. 1, 2007) ("[W]hen possible, the Court should attempt to give effect to each term of the agreement."). The Debtors' interpretation would also render the second option to be mere surplusage, which violates a second fundamental canon of contract interpretation under Delaware law. *Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396-97 (Del. 2010) (a court interpreting a contract must "give each provision and term effect, so as not to render any part of the contract mere surplusage").

**b) The Debtors' Counterarguments Fail**

30.     The Debtors' primary counterargument focuses on the fact that § 2.13(a) provides that if Transform opted to acquire "all of the equity interests" of the Foreign Subsidiaries, then

those "equity interests shall be deemed to be Acquired Foreign Assets."  The Debtors argue that

"all of the equity interests" must "ha[ve] the qualities of Acquired Foreign Assets (specifically, as

excluding Excluded Assets and including only those assets of the type that would have been

Acquired Assets had they been held by the Sellers as of the Closing Date)."  Mot. at 11.  This

argument has no basis in the contractual language of the APA and contravenes fundamental

principles of contractual interpretation.

31.    The crux of the Debtors' Motion is a distortion of the meaning of "deemed," which

does not operate to transpose the qualities of "Acquired Foreign Assets" on "all of the equity

interests."  Rather, it establishes that when the defined term "Acquired Foreign Assets" is used

elsewhere in the APA, these equity interests will be included within that defined term.  For

example, APA § 2.1(dd) refers to the "Acquired Foreign Assets" as a category of "Acquired

Assets" that Transform acquired "free and clear of any and all Encumbrances of any kind."

Because the equity interests in the Foreign Subsidiaries are "deemed" to be "Acquired Foreign

Assets" in APA § 2.13(a), they are thereby "Acquired Assets" under § 2.1(dd).

32.    The Debtors' emphasis on the provision of APA § 2.4 that "the Liabilities of any

entity that is an Acquired Foreign Asset shall not be Excluded Liabilities" proves too much.  In

the context of an equity transfer, that provision simply stands for the straightforward proposition

that, "for the avoidance of doubt," in addition to all of the assets acquired by Transform as set forth

in § 2.13(a), Transform also acquired all of the liabilities when it acquired "all of the equity

interests" in the Foreign Subsidiaries.  In a footnote, the Debtors suggest that it is "notabl[e]" that

there is no similar clause at the end of APA § 2.1 that provided that the assets of any entity that

was an Acquired Foreign Asset would be Acquired Assets.  Mot. at 7 n.6.  But there is a reason

Debtors assigned this point to a footnote in their Motion, as there was no reason to amend APA

§ 2.1 where § 2.13(a) already provides that "all of the equity interests" are "Acquired Foreign Assets" that Transform acquired under APA § 2.1(dd).

33.     The Debtors next argue Transform's plain language interpretation of "all of the equity interests" would yield an absurd, commercially unreasonable result. Not so. First, by opting to acquire "all of the equity interests," Transform acquired not only assets that otherwise would have been Excluded Assets under APA § 2.2, but also assumed liabilities that otherwise would have been Excluded Liabilities under APA § 2.4. Second, Transform bargained for this option and the benefit of that bargain was included in the $5.2 billion purchase price. Finally, the Debtors' "absurd, commercially unreasonable" argument is foreclosed by the APA itself: Section 2.13(c) explicitly provides that "No purchase of . . . equity interest pursuant to this Section 2.13 shall require the delivery of any additional consideration by Buyer."

34.     The absurdity of Debtors' interpretation is manifest in their claim that "no matter what transaction structure Transform chose, Transform would acquire the same assets." Mot. at 11. Then why include the provision at all? The Debtors' extra-textual interpretation of the APA would render the entire third sentence of APA § 2.13(a) surplusage and present Transform with a false choice between two options that the Debtors purport would result in Transform acquiring the same assets. *See Kuhn*, 990 A.2d at 396-97 (a court interpreting a contract must "give each provision and term effect, so as not to render any part of the contract mere surplusage").

35.     The upshot of the Debtors' argument would be that while Transform was stuck with the same assets regardless of which option it chose, Transform elected the option that required it to assume *more* liabilities with no additional assets. Mot. at 11. Accepting the Debtors' argument would lead to a commercially unreasonable, absurd, and illogical result. *See Osborn*, 991 A.2d at

15

1160 ("An unreasonable interpretation produces an absurd result."). If this were the case, Transform would never have considered selecting the second option.

**B. The Debtors Are Equitably Estopped and Barred by the Doctrine of Acquiescence from Asserting This Demand for Cash in the Foreign Subsidiary Bank Accounts**

36.     To reject the Debtors' Motion, the Court need not look beyond the plain language of the APA, which clearly provides that Transform acquired "all of the equity interests" of the Foreign Subsidiaries, including the cash in the Foreign Subsidiary Bank Accounts. However, by waiting nearly two years to raise this matter for the first time, and after taking contrary positions to Transform's detriment (such as requiring Transform to pay capital gains tax and interest based on the cash they now claim), the Debtors are additionally barred from the relief sought in their Motion under the doctrines of equitable estoppel and acquiescence.

### a) Equitable Estoppel

37.     Under Delaware law, the doctrine of equitable estoppel applies "when a party by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to his detriment." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 223 (3d Cir. 2014). To establish estoppel, a party must demonstrate that: (i) it lacked knowledge or the means of obtaining knowledge of the truth of the facts in question; (ii) it reasonably relied on the conduct of the party against whom estoppel is claimed; and (iii) it suffered a prejudicial change of position as a result of their reliance. *Id.* (citing *Nevins v. Bryan*, 885 A.2d 233, 249 (Del. Ch. 2005)).

38.     Each element is met here. *First*, the Debtors made numerous representations to Transform and the Court that this cash was not property of the Debtors' estates. *See supra* ¶ 19. Most glaringly, the Debtors knew that Transform paid the Indian Capital Gains Tax and Indian Interest Amount based on a valuation of the Indian Subsidiaries that included the cash that the Debtors now claim. It is undisputed that Transform did not know the Debtors would take the

position that they retained the cash in the Foreign Subsidiary Bank Accounts until January 25, 2021, more than two years after the signing of the APA. *Second*, Transform reasonably relied on the Debtors' many representations to the Court and to Transform where the Debtors made no reference to the cash in Foreign Subsidiary Bank Accounts as belonging to the Debtors' estates, even though these documents purportedly identified all of the Debtors' estimated remaining asset recoveries. *See id.* *Third*, Transform suffered prejudice because the amount it paid in Indian Capital Gains Tax and Indian Interest Amount was based on the premise that Transform owned the cash in the Indian Subsidiaries' bank accounts.

### b) Acquiescence

39.    The Debtors' arguments are further barred by the doctrine of acquiescence. *See Lehman Bros. Holdings Inc. v. Spanish Broad. Sys., Inc.*, Civil Action No. 8321-VCG, 2014 WL 718430, at *9 (Del. Ch. Feb. 25, 2014) ("[I]naction or silence on the part of a plaintiff . . . can bar a plaintiff from relief."). A plaintiff is barred from relief based on its acquiescence in a complained-of act where it: "has full knowledge of its rights and the material facts and (1) remains inactive for a considerable time; or (2) freely does what amounts to recognition of the complained of act; or (3) acts in a manner inconsistent with the subsequent repudiation, which leads the other party to believe the act has been approved." *Klaassen v. Allegro Dev. Corp.*, 106 A.3d 1035, 1047 (Del. 2014). To show acquiescence, Transform does not need to prove conscious intent, nor does it need to show a change of position or resulting prejudice. *Id.*

40.    Here, the Debtors stayed silent for nearly two years despite having possessed full knowledge of their rights and the material facts since the Closing of the APA in February 2019. *See Nevins v. Bryan*, 885 A.2d 233, 246 (Del. Ch. 2005) (finding that silence for 13 months constituted being "inactive for a considerable time" for purposes of acquiescence). During that

time, the Debtors transferred the Hong Kong Subsidiaries to Transform without attempting to carve out the cash in those Subsidiaries' bank accounts, and required Transform to pay the Indian Capital Gains Tax and Indian Interest Amount based on a principle that the cash in the Indian Subsidiaries' bank accounts was acquired by Transform.  The Debtors thereby both recognized that this cash belonged to Transform and acted in a manner inconsistent with their subsequent repudiation.  *See Klaassen*, 106 A. 3d at 1047.

## **CONCLUSION**

41.    For the reasons stated above, Transform requests that the Court deny the Debtors' Third Motion to Enforce the Asset Purchase Agreement and order the Debtors to immediately consummate the transfer of equity interests in the Indian Subsidiaries to Transform.

Dated:  April 20, 2021
      New York, New York

**CLEARY GOTTLIEB STEEN &
HAMILTON LLP**

*/s/ Sean A. O'Neal*
Sean A. O'Neal
Andrew Weaver
Samuel Levander
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

*Counsel for Transform Holdco LLC*