# EXHIBIT B

*Execution Version*

# Share Purchase Agreement

**Kmart Overseas Corporation**
(as Seller)

**Transform Overseas Company LLC**
(as Buyer)

AND

**Transform Holdco LLC**
(soley for the purposes set forth in Section 2.2 hereof)

Certified True Copy

*[signature]*

Name: Robert A. Riecker
Title:   Director
Date:   April 16, 2019

## Table of Contents

1. Definitions and Interpretation ...................................................................................... 1
2. Sale and Purchase ....................................................................................................... 2
3. Purchase Price ............................................................................................................. 3
4. Completion ................................................................................................................... 3
5. Acknowledgments ........................................................................................................ 4
6. Duties, Costs and Expenses ........................................................................................ 5
7. General ........................................................................................................................ 5

**This Share Purchase Agreement** is made on 16 April 2019

**Parties:**

1. **Transform Overseas Company LLC**, a limited liability company incorporated under the laws of Delaware, United States of America, the registered office of which is at Corporate Trust Center, 1209 Orange Street, Wilmington, County of New Castle, Delaware 19801 ("**Buyer**");

2. **Kmart Overseas Corporation**, a corporation incorporated under the laws of Nevada, United States of America, the registered office of which is at 3333 Beverly Road, Hoffman Estates, IL 60179, U.S.A ("**Seller**"),

   (each of Buyer and Seller a "**Party**" and together the "**Parties**"), and

3. Solely for the purposes of Section 2.2 hereof, **Transform Holdco LLC**, a limited liability company incorporated under the laws of Delaware, United States of America, the registered office of which is at Corporate Trust Center, 1209 Orange Street, Wilmington, County of New Castle, Delaware 198013333 Beverly Road, Hoffman Estates, IL 60179, U.S.A ("**Transform US**").

**Recitals:**

A. On 17 January 2019, Transform US and Sears Holdings Corporation, a corporation incorporated under the laws of Delaware, United States of America ("**Sears US**") and its subsidiaries party thereto, entered into an asset purchase agreement (as amended, the "**Master APA**"), pursuant to which Sears US has agreed to use reasonable best efforts to sell or cause to be sold, and Transform US has agreed to use reasonable best efforts to purchase all right, title and interest in certain assets including the Company.

B. The Buyer is an indirect subsidiary of Transform US and the Seller is an indirect subsidiary of Sears US.

C. Pursuant to this Agreement, the Seller has agreed to sell and the Buyer has agreed to purchase the Sale Shares subject to and on the terms and conditions of the Master APA.

**IT IS AGREED BY THE PARTIES THAT: -**

# 1. Definitions and Interpretation

### 1.1. Definitions

In this Agreement:

Certain terms are defined as follows. Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Master APA.

**Agreement** means this share purchase agreement.

**Bangladesh Office** means, the Bangladesh representative office of Sears Holdings Global Sourcing Limited, the registered office of which is at Suvasto Suraiya Trade Centre (5th Floor), Plot #57, Block #B, Kemal Ataturk Avenue, Banani, Dhaka-1213.

**China Offices** means, collectively, the Shenzhen representative office of the Company (香港施乐百控股国际采购有限公司深圳代表处) with credibility code (9144030079255748XU) and the Shanghai representative office of the Company (香港施乐百控股国际采购有限公司上海代表处) with credibility code (91310000X072143273).

**Company** means Sears Holdings Global Sourcing Limited, a private company limited by shares incorporated under the laws of Hong Kong, the registered office of which is at 51/F., Office Tower, Langham Place, 8 Argyle Street, Mongkok, Kowloon, Hong Kong with company no. 8945.

1

**Company Liabilities** has the meaning ascribed to it under Clause 2.2.

**Completion** means the completion of the sale and purchase of the Sale Shares in accordance with Clause 4.

**Completion Date** means the date of Completion.

**Encumbrance** means a mortgage, charge, pledge, lien, encumbrance, security interest, title retention, preferential right, trust arrangement, contractual right of set off, or any other security arrangement or arrangement in favour of any person, whether registered or unregistered.

**Group** means, collectively, the Company (including the Bangladesh Office and the China Offices), International Sourcing, Quality Assurance and Sears Sourcing India, and each a "**Group Entity**",.

**Hong Kong** means the Hong Kong Special Administrative Region of The People's Republic of China.

**International Sourcing** means International Sourcing & Logistics Limited, a private company limited by shares incorporated under the laws of Hong Kong, the registered office of which is at 51/F., Office Tower, Langham Place, 8 Argyle Street, Mongkok, Kowloon, Hong Kong with company no. 2033148.

**Master APA** has the meaning ascribed to it under Recital A.

**Purchase Price Allocation** has the meaning ascribed to it under Clause 3.

**Quality Assurance** means Quality Assurance Laboratory Limited, a private company limited by shares incorporated under the laws of Hong Kong, the registered office of which is at 51/F., Office Tower, Langham Place, 8 Argyle Street, Mongkok, Kowloon, Hong Kong with company no. 2034765.

**Representatives** mean, in relation to a Party, all officers, employees, professional advisers, agents and attornyes of the Party or of its related bodies corporate.

**Sears Sourcing India** means Sears Sourcing India Private Ltd, a company incorporated under the provisions of the Indian Companies Act, 1956, existing under the laws of India and having its registered office at Ground Floor, Tower-1, Express Trade Tower-2, Plot No. B36, Sector-132, Noida, Uttar Pradesh – 201301, India.

**Sale Shares** means the four hundred (400) ordinary shares in the Company, being the entire issued share capital of the Company.

**USD** means the lawful currency of the United States of America.

    1.2.    **Interpretation**

In this Agreement, headings and boldings are for convenience only and do not affect the interpretation of this Agreement and, for the avoidance of doubt, unless the context otherwise requires, shall be interpreted in accordance with Section 1.2 of the Master APA.

## 2. Sale and Purchase

2.1. Effective on Completion, on the terms and subject to the conditions set forth in the Master APA, the Seller shall sell, transfer, assign, convey and deliver, and the Buyer shall purchase, free and clear of any and all Encumbrances of any kind, nature or description, the Sale Shares, including all rights that attach (or may in the future attach) to the Sale Shares including, in particular, the right to receive all dividends and distributions declared, made or paid on or after the Completion Date.

2.2. For the avoidance of doubt, on the terms and subject to the conditions set forth in the Master APA, from and after the Completion Date: (i) Transform US and Buyer, shall cause the timely performance and discharge in accordance with their

2

respective terms of all Liabilities of the Company, including all Liabilities (other than Excluded Liabilities) of the type that would have been Assumed Liabilities had the Company been a Seller under the Master APA as of the Closing Date (collectively, the "**Company Liabilities**"); and (ii) Sears US and Seller shall not be obligated in any way to pay or perform any Company Liabilities.

## 3. Purchase Price

The consideration for the Sale Shares shall be an allocation of the Purchase Price (as defined in the Master APA) in the amount of Sixty-Three Million US Dollars Only (USD $63,000,000.00) ("**Purchase Price Allocation**"), which is valued with reference to the fair market value of the Company.

## 4. Completion

### 4.1. Completion Date

Completion will become effective upon each of the instrument of transfer and the bought and sold notes being duly stamped by the Stamp Office of the Inland Revenue Department of Hong Kong.

### 4.2. Deliverables for Completion

Prior to or simultaneously herewith, the Parties have delivered the following items either to the other Party or to the Stamp Office of the Inland Revenue Department of Hong Kong, as applicable:

The Seller has delivered the following:

(a) The board resolution of the Company:

  (i) Approving the transfer of the Sale Shares in the Company,

  (ii) Authorising the update of the relevant registers of the Company, and

  (iii) Issuing a new share certificate to the Buyer and cancelling the existing share certificate in the name of the Seller;

(b) Duly executed instrument of transfer in respect of the Sale Shares;

(c) Duly executed bought and sold note in respect of the Sale Shares;

(d) The following supporting documents for the purposes of the stamp duty assessment:

  (i) A certified true copy of the board resolution referred to in Clause 4.2(a);

  (ii) A certified true copy of this Agreement,

  (iii) A certified true copy of the structure chart of the Company,

  (iv) A certified true copy of the articles of association of the Company,

  (v) A signed statement confirming that each Group Entity has not acquired any landed property, rights to acquire landed property or investments, and

  (vi) A certified true copy of the latest audited accounts of each Group Entity and the management accounts of each of the Company made up to a date within 3 months before the Completion Date.

The Buyer has delivered the following:

(a) Duly executed instrument of transfer in respect of the Sale Shares; and

(b)      Duly executed bought and sold note in respect of the Sale Shares.

### 4.3. Interdependence of Completion obligations

In respect of Completion:

(a)      The obligations of the Parties under this Agreement are interdependent;

(b)      All actions required to be performed will be taken to have occurred simultaneously on the Completion Date; and

(c)      The Buyer need not complete the purchase of any of the Sale Shares unless the purchase of all the Sale Shares is completed simultaneously.

## 5. Acknowledgments

### 5.1. Mutual Warranties

Each Party represents and warrants to the other Party (each as a separate warranty) that each of the warranties set out in this Clause 5.1 is true and accurate and not misleading at the date of this Agreement and the Completion Date:

(a)      it is validly existing under the law of its place of incorporation;

(b)      it has full power and authority to enter into and perform its obligations under this Agreement and to carry out the transaction contemplated by this Agreement;

(c)      it has taken all necessary action to authorise its execution, delivery and performance of this Agreement in accordance with its terms;

(d)      its obligations under this Agreement are legal, valid and binding, subject to any necessary stamping and registration, and are enforceable against it in accordance with their terms subject to applicable bankruptcy laws and equitable principles; and

(e)      the execution, delivery and performance of its obligations under this Agreement to which it is a party complies with:

         (i)      each law, regulation, authorisation, ruling, judgment, order or decree of any government agency; and

         (ii)      its constitution or other constituent documents.

### 5.2. Buyer's acknowledgments

The Buyer acknowledges and agrees that:

(a)      other than the warranties set out in Clause 5.1, the Seller makes no warranties or representations in relation to any matter arising out of or in connection with this Agreement and, without limiting this:

         (i)      the Seller has not made and no Representative of the Seller has made any warranty as to the accuracy of any forecast, budget, estimate, projection, statement of opinion or statement of intention provided to the Buyer or its Representatives before the date of this Agreement; and

         (ii)      the Buyer is not entering into this Agreement in reliance on, and it may not rely on, any forecast, budget, estimate, projection, statement of opinion, statement of intention or any other warranty, representation or other statement made or purporting to be made

4

    by or on behalf of the Seller, or its Representatives, other than the Warranties set out in Clause 5.1; and

(b)  the Company and the underlying business and assets of the Group are being transferred on an "as is" basis.

### 5.3. Mutual acknowledgments

The warranties set out in Clause 5.1 shall expire upon the Completion Date.

### 5.4. Master APA

The respective rights of the Parties with respect to the Sale Shares sold, conveyed, transferred, assigned and delivered hereby to the Buyer shall be governed by the Master APA, and nothing in this Agreement shall alter any Liability arising under the Master APA. If there is any conflict or inconsistency between the provisions of the Master APA and this Agreement, the provisions of the Master APA shall govern. Notwithstanding anything to the contrary in this Agreement, nothing herein is intended to, nor shall it, extend, amplify or otherwise alter any representation, warranty, covenant or obligation contained in the Master APA.

## 6. Duties, Costs and Expenses

### 6.1. Stamp duty

(a)  Subject to and on the terms and conditions of the Master APA, the Buyer shall prepare and submit all necessary documents to the Stamp Office of the Inland Revenue Department of Hong Kong and pay the stamp duty in respect of the execution, delivery and performance of this Agreement.

(b)  The Seller shall cooperate to assist Buyer with the stamping process, solely on the terms and conditions of the Master APA.

## 7. General

### 7.1. Governing law

(a)  This Agreement is governed by and construed in accordance with the laws of Hong Kong.

### 7.2. Amendment

No amendment, modification or discharge of this Agreement, and no waiver hereunder, shall be valid or binding unless set forth in writing and duly executed by each Party. Any such waiver shall constitute a waiver only with respect to the specific matter described in such writing and shall in no way impair the rights of the Party granting such waiver in any other respect or at any other time. Neither the waiver by any of the Parties of a breach of or a default under any of the provisions of this Agreement, nor the failure by any of the Parties, on one or more occasions, to enforce any of the provisions of this Agreement or to exercise any right or privilege hereunder shall be construed as a waiver of any other breach or default of a similar nature, or as a waiver of any of such provisions, rights or privileges hereunder. No course of dealing between or among the Parties shall be deemed effective to modify, amend or discharge any part of this Agreement or any rights to payment of any Party under or by reason of this Agreement.

### 7.3. Further assurances

The Parties hereto shall, and shall cause their respective Affiliates to execute, acknowledge and deliver all further conveyances, notices, assumptions, releases, consents, assurances, powers of attorney and such other instruments, and shall take such further actions, as may reasonably be necessary or appropriate to assure fully to the Buyer and its respective successors or permitted assigns, all of the Seller's rights, titles and interests in, to and under, the Sale Shares, and to assure fully to Seller and its

Affiliates and their respective successors and permitted assigns to make effective and carry out the purpose and intent of this Agreement.

### 7.4. Remedies; Rights of third parties

The sole and exclusive remedy of the Parties with respect to a breach of this Agreement shall be as set forth in the Master APA. This Agreement shall not confer any rights or remedies upon any Person other than Parties and their respective successors and permitted assigns (subject to Section 13.6 of the Master APA). A person who is not a party to this Agreement shall have no rights under the Contracts (Rights of Third Parties) Ordinance (Chapter 623 of the laws of Hong Kong) to rely upon or enforce any term of this Agreement.

### 7.5. Assignment

This Agreement shall be binding upon and inure to the benefit of Parties and their respective successors and permitted assigns (subject to Section 13.6 of the Master APA).

### 7.6. Counterparts

This Agreement may be executed in any number of counterparts (including via electronic transmission in portable document format (pdf)) with the same effect as if the signatures to each counterpart were upon a single instrument, and all such counterparts together shall be deemed an original of this Agreement. This Agreement shall become effective when, and only when, each Party shall have received a counterpart hereof signed by the other Party. Delivery of an executed counterpart hereof by means of electronic transmission in portable document format (pdf) shall have the same effect as delivery of a physically executed counterpart in person.

## Signing Page

**Executed** by the Parties as an agreement:

**SIGNED** by: _____

Name: Robert A. Riecker

Title: President

for and on behalf of

**Kmart Overseas Corporation**

in the presence of

Signature of witness: _____

Name of witness: Gina Merendino

Address: 3333 Beverly Rd, Hoffman Estates, IL 60179

Occupation: Administrative Assistant

**SIGNED** by: _____

Name: Robert A. Riecker

Title: Chief Financial Officer and Co-Chief Executive Officer

for and on behalf of

**Transform Overseas Company LLC**

in the presence of

Signature of witness: _____

Name of witness: Gina Merendino

Address: 3333 Beverly Rd, Hoffman Estates, IL 60179

Occupation: Administrative Assistant

Solely for the purposes of Section 2.2 hereof,

**SIGNED** by: _/s/ Harold Talisman_

Name: Harold Talisman

Title: Chief Financial Officer

for and on behalf of

**Transform Holdco LLC**

in the presence of

Signature of witness: _Julie A Munch_
Name of witness: JULIE A. MUNCH
Address: 1170 Kane Concourse Bay Harbor Islands, FL 33154
Occupation: EXECUTIVE ASSISTANT