**EXHIBIT C**

EXECUTION VERSION

# LETTER AGREEMENT

December 30, 2020

Sears Holdings Corporation
c/o M-III Partners, LLC
130 W. 42nd St., 17th Floor
New York, NY 10036
Attention: Mohsin Y. Meghji

Transform Holdco LLC
c/o ESL Investments, Inc.
1170 Kane Concourse, Suite 200
Bay Harbor Islands, FL 33154
Attention: Kunal S. Kamlani

On November 19, 2020, Sears Holdings Corporation ("**Sears**") and each of its debtor affiliates (collectively with Sears, the "**Debtors**") filed the *Motion of Debtors to Compel Turnover of Estate Property* [ECF No. 9106] (the "**Turnover Motion**") which sought, among other things, entry of an order directing Transform Holdco LLC ("**Transform**," together with the Debtors, the "**Parties**") to turn over approximately $676,668.73 to the Debtors, an amount that the Debtors asserted as representing the proceeds of fourteen (14) "closed" litigation and/or insurance claims listed in Category 1 of Schedule 1 to the Settlement Agreement between the Debtors and Transform dated as of September 17, 2020 (the "**Second APA Settlement Agreement**"), filed with the *Debtors' Motion Pursuant to Federal Rules of Bankruptcy Procedure 9019(a) for Entry of an Order Approving Second APA Settlement Agreement with Transform Holdco LLC* [ECF No. 8445] (the "**Closed-Claim Proceeds**"). *See* **Exhibit A** attached hereto.

On December 3, 2020, Transform filed an objection to the Turnover Motion [ECF No. 9138] (the "**Objection**"). In the Objection, Transform acknowledged and agreed that it had already relinquished to the Debtors the client trust account for the Debtors with Thompson Brody & Kaplan LLP (the "**TBK Account**"), which held $169,287.66 in respect of Closed-Claim Proceeds at the time of relinquishment. The Debtors subsequently acknowledged and agreed that $100,876 of the funds that had been disbursed from the TBK Account had been spent on the prosecution of claims that belong to the Debtors under the Second APA Settlement Agreement.

The Debtors and Transform have agreed to settle the dispute over the remaining $406,505.07 of Closed-Claim Proceeds upon the terms and conditions set forth in this agreement (the "**Letter Agreement**"):

    1.    On or by 5 business days after Transform receives the proceeds of the settlement described in **Exhibit B**, attached hereto, which Exhibit shall be redacted in any documents provided to third parties or filed with the Bankruptcy Court, Transform shall cause to be paid to the Debtors $300,000.00 in cash by wire transfer of immediately available funds (the "**Proceeds Payment**," and the date that such Proceeds Payment shall have been received by the Debtors, the "**Payment Date**") in accordance with the wire-transfer instructions attached hereto as **Exhibit C**, which Exhibit shall be redacted in any documents provided to third parties or filed with the Bankruptcy Court.

    2.    Upon the Payment Date, each of the Debtors, on behalf of itself, its controlled affiliates, and each and all of its and its affiliates' respective past and present successors and assigns or any entity asserting a claim released hereunder either through or on behalf of any such parties, shall forever release and discharge Transform and Transform's past, present and future agents, heirs, executors, administrators, conservators, successors, assigns, noteholders, participants, co-participants, direct and indirect parents,

principals, subsidiaries, affiliates, related companies, shareholders, interest holders, investors, members, partners (including, without limitation, general and limited partners), managers, directors, representatives, contractors, service providers, receivers, attorneys and beneficiaries, and the past, present, and future officers, directors, and employees from, against, and in respect of any and all past, present, and future claims, cross-claims, counterclaims, third-party claims, demands, liabilities, obligations, debts, liens, damages, losses, costs, expenses, controversies, actions, rights, suits, assessments, penalties, charges, indemnities, guaranties, promises, commitments, appeals, or causes of action of whatsoever nature, whether based in contract, tort or otherwise, whether in law or equity and whether direct or indirect, fixed or contingent, that any of the Parties have or may have against any of the other Parties since the beginning of time, under, arising out of or in connection with the claims asserted in the Turnover Motion (all of the foregoing, the "**Released Claims**"), which Released Claims shall include for the avoidance of doubt any right to claim an award of attorneys' fees or other costs and expenses incurred in, or in connection with, any of the foregoing.

3. The Debtors acknowledge and agree that Transform has provided them with confidential information regarding the Litigation and Insurance Claims (as defined in the Second APA Settlement Agreement), including but not limited to the estimated value of pending claims. The Debtors agree that, except as otherwise required by specific court order or other binding requirement of law, they shall not disclose any such confidential information related to the Litigation and Insurance Claims listed in Category 2 of Schedule 1 of the Second APA Settlement Agreement to any third party without prior written consent from Transform. The Debtors acknowledge and agree that, in the event of a violation of this confidentiality provision, Transform may seek preliminary and permanent injunctive relief, in addition to any other rights or remedies that may be available under the law. To the extent that the Debtors receive a demand or request for disclosure of any such confidential information, the Debtors shall immediately advise Transform of said demand or request and work in good faith with Transform to prevent and limit the scope of such disclosure.

4. Within three (3) business days of the Payment Date, the Debtors shall withdraw, with prejudice, the Turnover Motion.

5. Upon the Payment Date, Transform shall forever release and discharge the Debtors from any obligation to pay any fees to Transform as a result of or in connection with services rendered by Transform pursuant to the Services Agreement dated as of February 11, 2019 by and between the Debtors and Transform [ECF No. 2599] (as may be amended, restated, supplemented, or modified from time to time, the "**TSA**") between June 1, 2020 and October 31, 2020, as reflected in the invoice transmitted by Transform to counsel for the Debtors on November 30, 2020 (the "**June-October TSA Fees**"). For the avoidance of doubt, upon the Payment Date, the Debtors shall have no obligation to pay the June-October TSA Fees or any accrued or unpaid interest thereon.

6. Notwithstanding anything to the contrary herein and for the avoidance of doubt, any obligation of the Debtors to pay the June-October TSA Fees to Transform shall be tolled for the period beginning as of the effective date of this Letter Agreement and continuing until the Payment Date.

7. The Debtors will use commercially reasonable efforts to transfer to Transform one-hundred percent (100%) of the equity in the Indian Acquired Foreign Assets within fourteen (14) business days following the Payment Date.

8. Effective Date. This Letter Agreement shall become fully effective and binding upon each Party upon the satisfaction of each of the following conditions precedent (the "**Effective Date**"):

a. each Party shall have executed the signature page to this Letter Agreement;

  b.  the Debtors shall have prepared a notice in accordance with the *Order Authorizing and Approving Procedures for Settling De Minimis Affirmative Claims and Causes of Action of the Debtors* [ECF No. 3363] (the "**Settlement Order**") and shall have provided written notice thereof in accordance with the Settlement Order by no later than January 6, 2021;

  c.  the Debtors shall have obtained the Bankruptcy Court's approval of this Letter Agreement (or such approval shall have been deemed obtained) in accordance with the Settlement Order; and

  d.  there is no order, or any stay entered or having taken effect, prohibiting or otherwise delaying the transactions contemplated herein.

9.  <u>No Admission of Fault or Liability</u>.  This Letter Agreement is a compromise of disputed claims, and nothing contained herein shall be construed to be an admission of fault or liability on the part of any Party hereto, all such fault or liability being expressly denied by each such Party.

10.  <u>Governing Law</u>.  This Letter Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of New York.

11.  <u>Second APA Settlement Agreement Remains in Full Force</u>.  Except as otherwise specified herein, nothing in this Letter Agreement supersedes the terms, conditions, or provisions of the Second APA Settlement Agreement, and the Parties accept and continue to be bound by their obligations under the Second APA Settlement Agreement.

12.  <u>Termination</u>.  This Letter Agreement shall terminate automatically, and shall be null and void without any further action, if the Payment Date does not occur for any reason whatsoever on or before 5:00pm (prevailing Eastern time) on February 1, 2021 (or such other time mutually agreed in writing by the Parties), and the rights of the Parties shall be fully restored as if this Letter Agreement had never been executed.

*EXECUTION VERSION*

IN WITNESS WHEREOF, this Letter Agreement has been executed by each of the Parties, effective as of December 30, 2020.

**TRANSFORM HOLDCO LLC**

By: _/s/ Luke Valentino_

Name: Luke J. Valentino
Title:   General Counsel and Secretary

**SEARS HOLDINGS CORPORATION AND ITS DEBTOR AFFILIATES**

By: _____

Name: Mohsin Y. Meghji
Title:   Chief Restructuring Officer

[Signature Page to Letter Agreement]

*EXECUTION VERSION*

IN WITNESS WHEREOF, this Letter Agreement has been executed by each of the Parties, effective as of December 30, 2020.

**TRANSFORM HOLDCO LLC**

By: _____
    Name: Luke J. Valentino
    Title: General Counsel and Secretary

**SEARS HOLDINGS CORPORATION AND ITS DEBTOR AFFILIATES**

By: _____
    Name: Mohsin Y. Meghji
    Title: Chief Restructuring Officer

[Signature Page to Letter Agreement]