**EXHIBIT G**

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG
BEIJING · BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL

THOMAS J. MOLONEY
STEVEN M. LOEB
CRAIG B. BROD
NICOLAS GRABAR
HOWARD S. ZELBO
DAVID E. BRODSKY
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ANDRES DE LA CRUZ
DAVID C. LOPEZ
MICHAEL A. GERSTENZANG
LEV L. DASSIN
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
SUNG K. KANG
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
COLIN D. LLOYD
COREY M. GOODMAN
RISHI ZUTSHI
JANE VANLARE
DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
ABENA A. MAINOO
HUGH C. CONROY, JR.
JOSEPH LANZKRON
MAURICE R. GINDI
KATHERINE R. REAVES
RAHUL MUKHI
ELANA S. BRONSON
MANUEL SILVA
KYLE A. HARRIS
LINA BENSMAN
ARON M. ZUCKERMAN
RESIDENT PARTNERS

SANDRA M. ROCKS
JUDITH KASSEL
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
ANDREW WEAVER
HELENA K. GRANNIS
JOHN V. HARRISON
CAROLINE F. HAYDAY
NEIL R. MARKEL
KENNETH S. BLAZEJEWSKI
LAURA BAGARELLA
JONATHAN D.W. GIFFORD
SUSANNA E. PARKER
DAVID W.S. YUDIN
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

D: +1 212-225-2416
soneal@cgsh.com

CONFIDENTIAL

February 19, 2021

VIA E-MAIL

Jennifer Brooks Crozier
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153

Re: *In re Sears Holdings Corporation* (Bankr. S.D.N.Y.) (18-23538-rdd)

Dear Jennifer,

      We write in reply to your letter dated February 11, 2021 (the "**Response**") responding to our letter dated February 1, 2021 (the "**Letter**") concerning your January 25, 2021 demand (the "**Demand**") from Transform Holdco LLC ("**Transform**") for the transfer of cash held as of the Closing Date[1] in bank accounts (the "**Subsidiary Bank Accounts**") owned by Sears Sourcing India Private Limited, Sears IT and Management Services India Private Limited, Sears Global Technologies India Private Limited (the "**Indian Subsidiaries**"), Sears Holdings Global Sourcing Limited, International Sourcing & Logistics Limited, Quality Assurance Laboratory Limited (the "**Hong Kong Subsidiaries**," and together with the Indian Subsidiaries, the "**Foreign**

---

[1] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in that certain Asset Purchase Agreement, dated as of January 17, 2019 (as may be amended, restated, or amended and restated from time to time, including pursuant to that certain Amendment No. 1 to Asset Purchase Agreement dated February 11, 2019 (Docket No. 2456), and Amendment No. 2 to the Asset Purchase Agreement dated May 15, 2019 (Docket No. 3880), by the parties thereto) by and between Sears Holdings Corporation and certain of its subsidiaries and Transform Holdco LLC (the "**APA**").

Cleary Gottlieb Steen & Hamilton LLP or an affiliated entity has an office in each of the cities listed above.

**Subsidiaries**"), SRC Facilities LLC, SRC O.P. LLC, and SRC Real Estate, (TX) LLC (the "**Sparrow Subsidiaries**," and together with the Foreign Subsidiaries, the "**Subsidiaries**").

1. **<u>Debtors Have No Colorable Claim to Cash in the Subsidiary Bank Accounts</u>**

In the Demand, the Debtors asserted that the cash in the Sparrow Subsidiaries' and Foreign Subsidiaries' Bank Accounts was an Excluded Asset under § 2.2(f) of the APA, and therefore demanded that Transform transfer that cash to the Debtors. Your Response, however, abandons the Demand's principal argument and concedes that § 2.2(f) has no applicability here because the Subsidiaries are not "Sellers" as defined by the APA. *See* Response at 3 n.2. Instead, you now attempt to pivot to an equally implausible argument that the cash in the Subsidiary Bank Accounts belongs to the Debtors under § 2.13(a) of the APA.

As a threshold matter, this new theory does not apply to any cash held by the Sparrow Subsidiaries, which are not Foreign Subsidiaries subject to § 2.13(a). Given this new position, the Debtors' asserted amount of turnover ($6,817,438) must exclude the $509,772 allegedly held in the Sparrow Subsidiaries' Bank Accounts. Your continued assertion of an inflated number, without any justification, is just another example of your meritless, inconsistent and overreaching approach.

Your contrived reading of § 2.13(a) fares no better as to the cash in the Foreign Subsidiaries' Bank Accounts. Section 2.13(a) provides Transform with an option either to (i) acquire assets and assume liabilities of the Foreign Subsidiaries, as described in the first sentence of § 2.13(a), or (ii) "acquire all equity interests in any Foreign Subsidiary in lieu of the acquisition of assets and assumption of liabilities contemplated by the first sentence of this Section 2.13(a)." Transform opted for the latter. Nonetheless, the Response predominantly purports to interpret the first sentence of § 2.13(a) – the option that Transform did not select. To the extent helpful, I recommend you take a look at a dictionary, which defines "in lieu of" as "in the place of; instead of." *See* Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/lieu.

Turning to the operative sentence of § 2.13(a), the Debtors do not attempt to, and could not plausibly, argue that the plain meaning of "all of the equity interests in any Foreign Subsidiary" somehow creates an exception for cash in a Foreign Subsidiary's Bank Account. Instead, the Debtors attempt to distort this plain meaning by resorting to the "balance" or "purpose" of the APA as a whole. That argument falters based on the fundamental principle of contract interpretation that the specific governs the general. *See, e.g., A.W. Fin. Servs., S.A. v. Empire Res.*, 981 A.2d 1114, 1131 (Del. 2009) ("[T]he applicable rules of construction [dictate] that specific provisions should prevail over general provisions."). "[A]ll of the equity interests" means exactly what it says – it is not tacitly limited by any broad and undefined notion of "balance."

Your reliance on Mr. Kamlani's deposition testimony from more than two years ago smacks of desperation. As a threshold matter, this testimony is parol evidence inadmissible to modify the unambiguous contractual language of § 2.13(a). Moreover, Mr. Kamlani's testimony relates to Transform's assumption of the junior DIP balance; it does not mention the Subsidiary Bank Accounts and in no way has any relevance to the contractual interpretation of § 2.13(a). Nor could it have – Mr. Kamlani's testimony occurred on January 23, 2019, more than two weeks

before the First Amendment to the APA, which added the concept of acquiring the equity interests in the Foreign Subsidiaries to Section 2.13(a) of the APA, was even signed.

2. **Debtors Are Barred by Laches and Equitable Estoppel from Any Claim to Cash in the Subsidiary Bank Accounts**

In any event, the Debtors are not entitled to the cash in the Subsidiary Bank Accounts due to their unjustified and prejudicial delay in raising these arguments. Neither the Debtors' decision to "prioritize" other disputes nor the attempt to point the finger at the Debtors' own Finance Department is a legally cognizable basis that excuses this delay.

Your letter even admits that the Debtors acted duplicitously, prejudicing Transform by requiring Transform to pay Indian Gains Tax based on valuations provided by the Debtors that included the cash in the Indian Subsidiaries' bank accounts! You also conceded that the Debtors (and their advisors?) knowingly delayed raising this issue until after the Debtors pocketed $300,000 from the settlement of the Closed-Claims Dispute. The Debtors' bad faith and unreasonable delay foreclose them from raising these arguments for the first time now.

Nothing in your letter attempts to explain why you never included the Foreign Subsidiary Bank Accounts in any of the solvency trackers filed with the Court or in the myriad of pleadings filed with the Court in connection with various disputes with Transform (which, for the record, were not always successful). The only explanation for their omission is that at the time the Debtors drafted those materials, when they had every incentive to maximize their cash position, they never believed that these accounts were assets of the estates.

\* \* \*

For the reasons stated above, Transform has no obligation to transfer the cash held in the Subsidiary Bank Accounts. The Letter Agreement by and between Sears Holdings Corporation and Transform Holdco LLC, dated December 30, 2020, required the Debtors to transfer the equity in the Indian subsidiaries by February 11, 2021. By refusing to do so on the basis of this meritless demand for cash, the Debtors are in violation of their contractual obligations. Transform reserves all of its rights and defenses, including the pursuit of attorneys' fees and other costs in connection with responding to the Debtors' baseless allegations.

Sincerely,

Sean A. O'Neal

cc:  Jared R. Friedmann
     Jacqueline Marcus
     Naomi Munz
     Hayden Guthrie