Hearing Date and Time: May 25, 2021 at 10:00 a.m. (Eastern Time)
Objection Date and Time: May 13, 2021 at 4:00 p.m. (Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                    :

**In re**                    :       **Chapter 11**
                    :

**SEARS HOLDINGS CORPORATION, *et al.*,**   :       **Case No. 18-23538 (RDD)**
                    :

       **Debtors.**[1]          :       **(Jointly Administered)**
                    :

---------------------------------------------------------------x

## NOTICE OF HEARING ON MOTION OF DEBTORS TO
## <u>AMEND TERMS OF ENGAGEMENT OF PREFERENCE FIRMS</u>

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is c/o M-III Partners, L.P., 1700 Broadway, 19th Floor, New York, NY 10019.

**PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "**Motion**"), of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), for entry of an order authorizing the Debtors to amend the terms of the engagement of: (i) Stretto[2]; (ii) ASK LLP; and (iii) Katten Muchin Rosenman LLP (collectively, the "**Preference Firms**") pursuant to section(s) 105(a), 327, and 328 of the Bankruptcy Code, all as more fully set forth in the Motion, will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 118, 300 Quarropas Street, White Plains, New York, 10601-4140 (the "**Bankruptcy Court**") on **May 25, 2021 at 10:00 a.m. (Eastern Time)** (the "**Hearing**"), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (the "**Objections**") to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted pro hac vice, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 (ECF No. 405),

---

[2] On February 17, 2021, Bankruptcy Management Solutions d/b/a Stretto acquired substantially all of the assets of Acumen Recovery Services, LLC ("**Acumen**") and assumed Acumen's engagement agreement with the Debtors.

WEIL:\97911946\11\73217.0004

so as to be filed and received no later than **May 13, 2021 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

        **PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

        **PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

Dated:  May 5, 2021
      New York, New York

                        /s/  Jacqueline Marcus
                        WEIL, GOTSHAL & MANGES LLP
                        767 Fifth Avenue
                        New York, New York  10153
                        Telephone:  (212) 310-8000
                        Facsimile:  (212) 310-8007
                        Ray C. Schrock, P.C.
                        Jacqueline Marcus
                        Garrett A. Fail
                        Sunny Singh

                        *Attorneys for Debtors*
                        *and Debtors in Possession*

WEIL:\97911946\11\73217.0004

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                 :

**In re**                  :       **Chapter 11**
                 :

**SEARS HOLDINGS CORPORATION,** *et al.*,   :       **Case No. 18-23538 (RDD)**
                 :

**Debtors.**[1]           :       **(Jointly Administered)**
                 :

-------------------------------------------------------------x

## MOTION OF DEBTORS TO AMEND
## TERMS OF ENGAGEMENT OF PREFERENCE FIRMS

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is c/o M-III Partners, L.P., 1700 Broadway, 19th Floor, New York, NY 10019.

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation ("**Sears**") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

## General Background

1.    Beginning on October 15, 2018 (the "**Commencement Date**") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.    On October 24, 2018, the United States Trustee for Region 2 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**"). No trustee or examiner has been appointed in these chapter 11 cases.

3.    The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

4.    On February 8, 2019, the Bankruptcy Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of* Certain *Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* (ECF No. 2507), pursuant to which the Debtors sold substantially all their assets to Transform Holdco LLC ("**Transform**").

5.      On October 15, 2019, the Court confirmed the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* (the "**Plan**") (*see* ECF No. 5370) (the "**Confirmation Order**").  As of the date of filing this Motion, the Effective Date (as defined in the Plan) has not yet occurred.

## Jurisdiction

6.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C.  §§ 1408 and 1409.

## Retention of the Preference Firms

7.      Due to the size and nature of these chapter 11 cases, and the thousands of claims filed against the Debtors' estates, the Debtors previously sought, and obtained approval to retain Stretto,[2] ASK LLP ("**ASK**"), and Katten Muchin Rosenman LLP ("**Katten**," and collectively with Stretto and ASK, the "**Preference Firms**") to assist with data collection, defense analysis, and litigation assistance related to certain avoidance actions against non-insider, non-affiliate third parties and for claims arising under chapter 5 of the Bankruptcy Code (the "**Avoidance Actions**").

8.      On June 26, 2019, the Bankruptcy Court entered the *Order Authorizing the Employment and Retention of Acumen Recovery Services, LLC to Provide Preference Action Recovery and Analysis Services to the Debtors, Effective Nunc Pro Tunc to April 1, 2019* (ECF No. 4362) (the "**Stretto Retention Order**").  On June 27, 2019, the Bankruptcy Court entered the

---

[2] On February 17, 2021, Bankruptcy Management Solutions d/b/a Stretto acquired substantially all of the assets of Acumen Recovery Services, LLC ("**Acumen**") and assumed Acumen's engagement agreement with the Debtors.

*Order Authorizing the Employment of ASK LLP as Special Avoidance Action Counsel to the Debtors, Effective Nunc Pro Tunc to April 1, 2019* (ECF No. 4373) (the "**ASK Retention Order**"). On June 27, 2019, the Bankruptcy Court entered the *Order Authorizing the Employment and Retention of Katten Muchin Rosenman LLP as Special Avoidance Counsel for Debtors Nunc Pro Tunc to April 1, 2019* (ECF No. 4374), and on July 2, 2019, the Bankruptcy Court entered the *Amended Order Authorizing the Employment and Retention of Katten Muchin Rosenman LLP as Special Avoidance Counsel for Debtors Nunc Pro Tunc to April 1, 2019* (ECF No. 4413) (collectively, the "**Katten Retention Order**," and together with the Stretto Retention Order and the ASK Retention Order, the "**Retention Orders**").[3]

9.    Pursuant to the Retention Orders, the Preference Firms are to be compensated in accordance with the Contingency Fee Schedule (as defined in each of the Retention Orders), which is set forth more fully in the engagement letters entered into by the Debtors with the Preference Firms (the "**Engagement Letters**").   Copies of the Engagement Letters are annexed hereto as **Exhibit A**.

10.    The Preference Firms have requested a modification of the Contingency Fee Schedule, on the basis that several of the assumptions made in developing the Contingency Fee Schedule have turned out to be incorrect.   After further analysis, and negotiations with the Preference Firms and certain stakeholders, the Debtors have determined that a modification of the Contingency Fee Schedule is necessary and appropriate to maximize the value of the Avoidance Actions.

---

[3] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to such term in the Retention Orders.

## Relief Requested

11.     By this Motion, the Debtors respectfully request entry of an order pursuant to sections 105(a), 327, and 328 of the Bankruptcy Code authorizing the Debtors to amend the terms of the engagement of the Preference Firms and, specifically, the Contingency Fee Schedule.

12.     A proposed form of order granting the relief requested in the Motion is attached hereto as **Exhibit B** (the "**Proposed Order**").

## The Repricing Proposal

13.     On or about December 23, 2020, the Preference Firms sent the Debtors a proposal requesting a revised compensation arrangement.  The Preference Firms sought to increase their compensation due to various factors not known to the parties at the outset of the engagement. Specifically, the Preference Firms agreed to the Contingency Fee Schedule before the documentation and information necessary to accurately address the Avoidance Actions was available.  In addition, they alleged that a significant portion of the documentation and information provided to the Preference Firms prior to the engagement turned out to be inaccurate or incomplete, requiring additional time, money and resources to prosecute the Avoidance Actions.

14.     Similarly, the Preference Firms noted that they had not been fully apprised of the number of contracts that had been assumed by the Debtors and assigned to Transform, which necessarily reduced potential preference claims.  Additionally, the volume and amount of cash in advance payments was not known at the time the Contingency Fee Schedule was negotiated and there was little information regarding prepetition payments that the Debtors had made using treasury wires.  All of the foregoing factors, the Preference Firms asserted, reduced the aggregate amount recoverable in respect of Avoidance Actions and, at the same time, increased the amount of work associated with pursuing such claims.

15.    The initial proposal made by the Preference Firms was reviewed by the Debtors' professionals and the Debtors' Restructuring Committee.  While the Restructuring Committee agreed with the Preference Firms that some modification of the terms of the engagement was appropriate under the circumstances, the Restructuring Committee did not agree to the terms proposed by the Preference Firms.  Instead, the Restructuring Committee and the Debtors' advisors engaged in negotiations with the Preference Firms that resulted in an agreement on proposed revised terms (the "**Repricing Proposal**").

16.    The Debtors believe that the Repricing Proposal will result in aggregate compensation to the Preference Firms that is consistent with industry norms.  Specifically, beginning with recoveries realized after January 1, 2021, the Repricing Proposal provides that the commission percentage for the Preference Firms will start at 17.25% and increase by two (2%) percent after every $8.7 million of recoveries achieved collectively by the Preference Firms.  The step-up thresholds would be as follows:

| Tier | Greater than | Less than or equal to | Commission % |
|------|--------------|-----------------------|--------------|
| 1 | $0.00 | $8,728,892.00 | 17.25% |
| 2 | $8,728,892.00 | $17,457,784.00 | 19.25% |
| 3 | $17,457,784.00 | $26,186,676 | 21.25% |
| 4 | $26,186,676.00 | $34,915,568.00 | 23.25% |
| 5 | $34,915,568.00 | N/A | 25.25% |

17.    Moreover, as an incentive to meet the cumulative recovery targets over the next eighteen (18) month period commencing on January 1, 2021, there will be a *step-down* threshold of 50 basis points, to be applied to the revised commission rates.  If the Preference Firms do not obtain recoveries on the Avoidance Actions within certain projected time periods, their future commission will be reduced by 50 basis points (e.g., after 6 months, if the Tier 2 step-up is achieved but the aggregate recoveries do not exceed $13,093,338.00, the prospective commission

percentage would be reduced to 18.75% from 19.25%)[4].  The step-down thresholds would be as follows:

| Month | Threshold |
|-------|-----------|
| 6 | $13,093,338.00 |
| 12 | $26,186,676.00 |
| 18 | $39,280,014.00 |

18.    Finally, as an additional incentive to motivate the Preference Firms to expedite completion of the project, if gross recoveries above an agreed upon threshold from the Avoidance Actions are achieved by July 31, 2022, the Preference Firms will be entitled to a one-time $500,000 payment (the "**One-Time Payment**").  If earned, the One-Time Payment will be split between Stretto and Katten on the one hand, and ASK on the other, based on their respective shares of total collections obtained between January 1, 2021 and July 31, 2022.

## The Relief Requested Should Be Granted

19.    The Court may grant the relief requested herein pursuant to section 105(a) of the Bankruptcy Code, which provides a bankruptcy court with broad powers in the administration of a case under title 11.  Specifically, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" and further that "no provision of this title shall be construed to preclude the court from . . . taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules."  11 U.S.C. § 105(a).  *See, e.g.*, *Law v. Siegel*, 571 U.S. 415, 420-21 (2014) (holding that section 105(a) gives a bankruptcy court "statutory authority to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code'"); *Adelphia Bus. Solutions, Inc. v. Abnos*, 482

---

[4] The step-down would not apply to reduce the commission percentage below 17.25%.

F.3d 602, 609 (2d Cir. 2007) (recognizing a bankruptcy court's broad discretion pursuant to section 105(a) of the Bankruptcy Code to do what is necessary to meet the circumstances of a case); *In re Davis*, 170 F.3d 475, 492 (5th Cir. 1999) (stating that section 105 is "an omnibus provision phrased in such general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case"); *see also Gilman v. Continental Airlines*, 254 B.R. 93, 97 (Bankr. D. Del. 1998) (holding that section 105(a) gives a bankruptcy court discretion to issue any order, process or judgment that is "necessary or appropriate to carry out the purposes of the Bankruptcy Code, which was intended to provide protection to debtors."), *rev'd on other grounds*, 203 F.3d 203 (3rd Cir. 2000).

20.     The Repricing Proposal has been negotiated in good faith among the Preference Firms and the Debtors.  In addition, it has been vetted with the Administrative Claims Representative (as defined in the Plan), the Creditors' Committee, and the U.S. Trustee.  The Administrative Claims Representative and the Creditors' Committee have advised the Debtors that they do not oppose the relief requested herein.

21.     Modification of the terms of the engagement of the Preference Firms consistent with the Repricing Proposal will both provide the Preference Firms with fair and reasonable compensation for the important services they are rendering and, at the same time, motivate them to proceed apace with their efforts to generate much needed funds so that the Debtors can proceed to consummate the Plan.  In addition, the relief sought herein is consistent with the Engagement Letters.  Each Engagement Letter provides that, subject to the Court's approval, the Debtors shall have the discretion to increase the contingency fee percentages for the Preference Firms.  Given the amount of the potential recovery on the Avoidance Actions and the extensive efforts that have been undertaken by the Preference Firms to analyze, investigate,

prosecute, and settle the Avoidance Actions to date, the Debtors believe the modified terms of the engagement represent fair and reasonable compensation that is consistent with the best interests of the Debtors and all stakeholders.

### Notice

22.     Notice of this Motion will be provided in accordance with the procedures set forth in the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 (ECF No. 405) (the "**Amended Case Management Order**").  The Debtors respectfully submit that no further notice is required.

23.     No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order and such other and further relief as is just.

Dated: May 5, 2021
       New York, New York

/s/  Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**Exhibit A**

**Engagement Letters**



Joseph L. Steinfeld, Jr., Esq.

Direct Line 651 289 3850 | Mobile 703 626 7387 | jsteinfeld@askllp.com
2600 Eagan Woods Drive, Suite 400 | St. Paul, Minnesota | 55121
phone 651 406 9665 | fax 651 406 9676 | www.askllp.com

## CONFIDENTIAL

April 1, 2019

### *Via Email*

Mr. Mohsin Y. Meghji
Chief Restructuring Officer
Sears Holdings Corporation, *et al.*, Debtors
c/o M-III Partners, LP
130 West 42nd Street, 17th Fl.
New York, New York   10036

> **Re:**   ***Sears Holdings Corporation*, *et al.*, Case No.  18-23538 (RDD)**
> **Engagement Agreement for the Litigation of Avoidance Claims**

Dear Mr. Meghji:

This agreement sets forth the terms whereby ASK LLP ("ASK") will serve as special counsel for Sears Holdings Corporation and its affiliated debtors (the "Debtors") to analyze, prosecute and/or settle avoidance actions under chapter 5 of title 11 of the United States Code (the "Avoidance Actions") against non-insider non-affiliate transferees (the "Transferees") in the above captioned cases.

### Staffing of this Engagement

I will personally oversee the collection and litigation efforts undertaken by ASK and will be lead counsel along with my co-managing partner Edward Neiger and Kara Casteel, our case management partner in charge of Avoidance Action collections. We will utilize our staff of seasoned attorneys who have an average of ten years' experience working exclusively on avoidance actions. They in turn will be assisted by paralegals that have been collecting preferences and/or assisting in the litigation of preferences for more than fifteen years.

### Katten/Acumen

It is our understanding that the Debtors are also retaining Katten Muchin Rosenman LLP and Acumen Recovery Services, LLC (together, "Katten/Acumen") in connection with this matter. ASK's engagement is premised upon the Avoidance Actions being divided equally based on expected net recoveries, as determined by Katten/Acumen on the one hand, and ASK on the other hand in the manner directed by the Debtors.  ASK and Katten/Acumen have, to date, provided the Restructuring Committee of the Board of Directors of Sears Holdings Corporation (the "Restructuring Committee") with information concerning the allocation of the first 1000 Transferees between ASK and Katten/Acumen and will provide the Restructuring Committee with all future allocations promptly upon their completion by ASK and Katten/Acumen, but in all events subject to approval of the Restructuring Committee. The Avoidance Actions being prosecuted by

WEIL:\97029703\7\73217.0004

18-23538-rdd    Doc 4468    Filed 05/05/21    Entered 05/05/21 21:09:28    Main Document
Pg 15 of 41

ask | ATTORNEYS AT LAW

Dated as of April 1, 2019
Page 2

ASK shall hereinafter be referred to as the "<u>ASK Actions</u>" and the Avoidance Actions being prosecuted by Katten/Acumen shall be referred to as the "<u>Katten/Acumen Actions</u>."

## <u>Deliverables</u>

### A.    <u>Preference Analysis</u>

Provided the data is complete and transmitted to us in the format requested, we will produce a detailed preference analysis of all potential claims within 2-3 weeks of obtaining all of the data.

### B.    <u>Client Reports</u>

We provide at no additional cost customized reports that can be accessed online or be sent by email. We also will customize our online database to allow access to our database that instantly displays the collection status of the preference portfolio as a whole, or the status of an individual case.

### C.    <u>Recovery Work</u>

### 1.    <u>Pre-Suit</u>

ASK attempts to recover claims before an adversary proceeding is commenced and expenses are incurred. To procure settlements we send a demand package consisting of the following documents, all of which are to be pre-approved by you including the timing of the delivery of such demand packages:

- A multi-paged customized explanatory letter regarding the preference liability;
- A draft complaint; and
- A settlement offer and acceptance form.

Our professionals will attempt to make phone contact with every recipient of a preference demand to verify the package is in the right hands and to encourage the settlement option. As part of the settlement process we may share certain of our preference analysis reports.

### 2.    <u>Suit</u>

Once suit is authorized, we usually serve the following documents with the summons and complaint:

- Service cover letter; and
- Appropriate local forms such as a notice of dispute resolution alternatives.

Our professionals again attempt to make phone contact with every recipient of a lawsuit to verify the package is in the right hands and to encourage the settlement option.

**D.**     **Fees and Expenses**- **See Attached Addendum**


**E.**     **Remittances and Reports**

All proceeds recovered by ASK ("<u>ASK Gross Proceeds</u>") will be deposited into a segregated attorney trust account.  ASK will make monthly remittances, net of our fees and expenses, to the designated account.  We will also make wire transfers to the chosen account.  As part of the remittance, ASK will provide monthly reports to the Debtors, with a copy to counsel to the official committee of unsecured creditors ("<u>Creditors' Committee Counsel</u>"), summarizing settlements received and costs incurred in the prior month and its contingency fee percentage for each collection. Should ASK be required to remit in gross, then we expect payment of ASK's bill within 10 days of presentation, or as soon as practicable as allowed by the bankruptcy court.  ASK will also send monthly status reports to the Debtors, with a copy to Creditors' Committee Counsel, detailing the status of all pending cases that remain open for collection.  ASK will also provide the Debtors with weekly updates on the status of the Avoidance Actions.


**F.**     **Settlement Authority**

In order to assist the Debtors with the information necessary to make an informed decision, ASK will provide a settlement analysis spreadsheet and agrees to follow any instructions or settlement protocol that has been established.


**G**.     **Termination**

ASK may, in its sole discretion, terminate the engagement, in which case ASK shall be entitled to all fees and expenses earned as of the date of termination; <u>provided</u>, such fees and expenses shall be paid solely from the ASK Gross Proceeds.  The Debtors may, in their sole discretion, terminate the engagement. If the Debtors (or any successor thereof) terminate the engagement without cause, including termination caused by conversion of any case or cases with material Avoidance Actions to chapter 7 or appointment of a chapter 11 trustee in any such case or cases (provided, that the Debtors will use their reasonable best efforts to cause the chapter 11 trustee to continue ASK's engagement in accordance with their respective engagement letters), ASK shall be entitled to all fees and expenses earned as of the date of termination and all fees derived from the ASK Gross Proceeds for a period extending twelve months after the date of termination ("<u>Tail Compensation</u>"); <u>provided</u>, that the Debtors may immediately terminate the engagement and ASK shall not be entitled to any such Tail Compensation if, after execution of this agreement: (i) a determination, rule, guideline, decree, or, order or other statement of similar formality is issued by any court (or by a government agency finding or recommending that ASK not be permitted to serve as a professional for or advisor to a debtor, official committee or trustee or other fiduciary in a bankruptcy case, (ii)

18-23538-shl    Doc 2468    Filed 05/06/21    Entered 05/06/21 21:49:28    Main Document
Pg 17 of 41

ask. | ATTORNEYS AT LAW

Dated as of April 1, 2019
Page 4

the Restructuring Committee reasonably determines that ASK has generally failed to prosecute or has abandoned prosecution of the ASK Actions, or (iii) material harm to any Debtor results from ASK's gross negligence or willful misconduct. For the avoidance of doubt, Tail Compensation shall be determined using the same compensation fee structure as set forth below and in determining the amount of Tail Compensation to which ASK is entitled shall count all ASK Proceeds received prior to ASK's termination without cause.

*(remainder of page intentionally left blank)*

ask- | ATTORNEYS AT LAW
Dated as of April 1, 2019
Page 5

Please review this letter and, if it meets with your approval, return a counter-signed copy of this letter via email.

We are grateful for your trust and confidence.


Very truly yours,

ASK LLP

*[signature]*

Joseph L. Steinfeld, Jr., Esq.



cc:    Brian Griffith (bgriffith@miiipartners.com)
       William Murphy (wmurphy@miiipartners.com)
       M-III Advisory Partners, LP
       Ray C. Schrock, Esq.  (ray.schrock@weil.com)
       Sunny Singh, Esq. (sunny.singh@weil.com)
       Weil, Gotshal & Manges LLP


This letter and the Terms of Engagement are agreed to and effective as of the date first written above.

**SEARS HOLDINGS CORPORATION ON BEHALF OF ITSELF AND ITS DEBTOR AFFILIATES**


By: _____
Name: _____
Title:    MOHSIN Y. MEGHJI
          CHIEF RESTRUCTURING OFFICER

Dated as of April 1, 2019
Page 6

## Addendum - Fees and Expenses

### Fees

Our fee structure (including the success fee set forth below) is based on a contingency fee applied to the ASK Gross Proceeds.  "Gross Proceeds" is defined as the total recovery obtained by ASK from a preference target in cash and claim waiver value before the deduction of any reimbursable expenses in connection with prosecution of an ASK Action.  For the avoidance of doubt, the value of a claim waiver for purposes of counting toward ASK Gross Proceeds shall be limited to the amount that would—(i) be distributable to the claimant pursuant to an approved chapter 11 plan, or (ii) if no plan is approved, be the estimated recovery to the claimant pursuant to an approved plan disclosure statement—as if the waiver had not been obtained, not the gross amount of the claim; and further notwithstanding the inclusion of any non-cash recovery component used in calculating ASK Gross Proceeds, any payment to ASK shall be limited to the cash proceeds actually recovered from the ASK Actions.

Pre-Suit. ASK shall earn legal fees on a contingency basis of **7%** of the ASK Gross Proceeds obtained from a potential defendant of an Avoidance Action after ASK issues a demand letter but prior to initiating an Avoidance Action proceeding against such defendant.

Post Suit. ASK shall earn legal fees on a contingency basis of **10%** of the ASK Gross Proceeds obtained in connection with the settlement of any Avoidance Action after ASK initiates such Avoidance Action proceeding.

Success Fees. Once ASK recovers $25 million in ASK Gross Proceeds, ASK's Pre-Suit Fee shall be **retroactively** adjusted to **12%** of all past and future ASK Gross Proceeds and its Post Suit Fee shall be **retroactively** adjusted to **17%** all past and future ASK Gross Proceeds.

Once ASK recovers $50 million in ASK Gross Proceeds, ASK shall earn legal fees on a contingency basis of **20%** of the ASK Gross Proceeds above $50 million, provided, however, that this contingency fee applies only to ASK Gross Proceeds obtained within the first 18 months of the Bankruptcy Court's approval of ASK's engagement.

The Success fees will be paid by the Debtors immediately either by payment to ASK or by authorizing ASK to deduct these fees from any outstanding amounts currently in its attorney trust account waiting for distribution to the Debtors.

Subject to Bankruptcy Court approval, the Debtors (and any successor thereof, including a liquidating or litigation trustee or plan administrator) shall have the discretion to increase the contingency fee percentages set forth above and/or award a bonus to ASK.

ask | ATTORNEYS AT LAW

Dated as of April 1, 2019
Page 7

## Expenses

### ASK will Advance Expenses and Only Be Reimbursed From Collections

ASK will advance all fees and expenses and seek reimbursement only from collections. ASK will store all physical and electronic records without any charge.

### Reimbursed Expenses

Reasonable out of pocket expense items include, but are not limited to: reasonable expenses related to the importation of data, including the hiring of computer consultants to assist in the extraction of data, shipping costs of records, adversary, appellate, and other court filing fees; mediation fees, deposition expenses; entity name/officer verifications at $10.00 per entity; service of process (for writs, etc.); travel expenses, photocopying at 10 cents per page, postage, and telephone charges; witness fees and costs, and fees and costs associated with the domestication and collection of judgments. We will deduct our expenses and costs from the remittances at least once a month. In the event there are insufficient recoveries in a given month to cover the out of pocket expenses, ASK will record the deficiency and will deduct such deficiency from cash ASK Gross Proceeds obtained in the following month(s) to the extent available. For the avoidance of doubt, ASK will not be reimbursed for any expenses and costs exceeding ASK Gross Proceeds.

ASK is not responsible for any expert witness fees and expenses. ASK will work cooperatively with other retained professionals in these cases to avoid duplicative and/or competing efforts and will defer to you with respect to the decision(s) as to the hiring of experts. Retained experts (including, but not limited to, experts necessary to prove insolvency and/or to rebut objective defense industry experts) are to be separately employed and paid for by the Debtors and are not considered part of this proposal.

EXECUTION VERSION

## Acumen Recovery Services, LLC Engagement Agreement

This Agreement is entered into as of April 1, between Acumen Recovery Services, LLC ("**Acumen**") and Sears Holdings Corporation and its debtor affiliates in the jointly administered chapter 11 cases of *In re Sears Holdings Corporation, et al.*, Case No. 18-23538 (RDD) (the "**Bankruptcy Case**"), and their successors and assigns (collectively, the "**Client**"). In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

   (a) Acumen agrees to provide the Client, its attorneys, other professionals and advisors with services in anticipation of and in connection with litigation, including, but not limited to, analyzing, pursuing and/or settling certain avoidance actions against non-insider non-affiliate transferees arising under chapter 5 of title 11 of the United States Code and/or analogous state law assigned to Acumen or otherwise identified by the Client (collectively, the "**Preference Actions**") in connection with the Bankruptcy Case, and any other services agreed upon by the parties (all such services collectively, the "**Services.**")

   (b) The Client acknowledges and agrees that Acumen will often take direction from the Client's attorneys, representatives, employees, agents and/or professionals (collectively, the "**Client Parties**") with respect to providing the Services. The parties agree that Acumen may rely upon, and the Client agrees to be bound by, any requests, advice or information provided by the Client Parties to the same extent as if such requests, advice or information were provided by the Client.

   (c) While Acumen may facilitate Client's attorneys' ability to give legal advice and assisting the Client's attorneys in providing legal services, the Client agrees and understands that Acumen shall not provide the Client or any other party with legal advice.

2. **Fees and Expenses**

   (a) Acumen understands that the Client is separately retaining Katten Muchin Rosenman LLP ("**Katten**") as legal counsel in connection with the Preference Actions, on terms substantially similar to those described below, Katten and Acumen will work together to analyze and pursue the Preference Actions. In addition, the Client is retaining ASK LLP ("**ASK**") to analyze and pursue a separate group of avoidance actions (collectively with the Preference Actions, the "**Sears Actions**").

   (b) Client agrees that Acumen shall earn fees on a contingency basis equal to the following:

      i. <u>Tier 1</u>: If the total amount of the gross proceeds recovered on account of the Preference Actions (the "**Gross Proceeds**") obtained is less than $25 million, Acumen shall be paid 3.5% of the Gross Proceeds obtained in any Preference Action settled prior to the filing of a complaint and 3.5% of the Gross Proceeds obtained after the filing of a complaint.

      ii. <u>Tier 2</u>: If the total amount of Gross Proceeds obtained is between $25 million and $50 million, Acumen shall be paid 6% of the Gross Proceeds obtained in any Preference

ACUMEN
RECOVERY SERVICES

Action settled prior to the filing of a complaint and 6% of the proceeds obtained after the filing of a complaint, it being understood that the foregoing rates shall apply retroactively to all Gross Proceeds obtained in connection with the matter prior to the $25 million threshold being met (i.e., after the $25 million threshold is achieved, the foregoing percentages shall apply to all Gross Proceeds obtained, beginning with the first dollar of Gross Proceeds obtained).

iii.  Tier 3: If the total gross amount of Gross Proceeds obtained is more than $50 million, then (i) through and including the date that is eighteen (18) months after the date on which the Bankruptcy Court approves Katten's and Acumen's engagement (the "*Outside Date*"), Acumen shall be paid 10% of the gross proceeds obtained in any Preference Action settled prior to the filing of a complaint and 7% of the Gross Proceeds obtained after the filing of a complaint, and (ii) after the Outside Date, Acumen shall be paid 6% of the Gross Proceeds obtained in any Preference Action settled prior to the filing of a complaint and 6% of the Gross Proceeds obtained after the filing of a complaint, it being understood that the foregoing rates shall apply only to Gross Proceeds above $50 million.

iv.  Subject to Bankruptcy Court approval, the Board of Directors of Sears Holdings Corporation (prior to the effective date of a Chapter 11 plan) and the liquidating trustee (after the effective date of a Chapter 11 plan) shall have the discretion to increase the contingency fee percentages set forth above and/or award a bonus to Acumen.

(c) If payment-in-kind, a claim waiver or other non-cash consideration is a component of the resolution of a Preference Action, Acumen will receive credit for such consideration to the extent provided for herein. With respect to waivers of secured claims, administrative claims and other priority claims, the amount credited will be equal to 100% of the scheduled, agreed or allowed amount of the claim. With respect to waivers of general unsecured claims, the amount of such credit will be calculated based on the amount of the anticipated distribution to the applicable claimant under an approved chapter 11 plan or, if no plan has been approved, the estimated distribution pursuant to an approved plan disclosure statement, or otherwise, on the claim being waived, with such amount constituting the Gross Proceeds of the applicable Preference Action. *For example, if a transferee waives a $100,000.00 general unsecured claim, and the distribution on such claim would be(under a plan) or is anticipated to be (pursuant to a disclosure statement) 10%, the Gross Proceeds of the settlement attributed to the claim waiver would be $10,000.00.* With respect to payment-in-kind, or other non-cash consideration, the credit amount shall be approved by the Restructuring Committee of the Board of Directors of Sears Holdings Corporation (the "*Restructuring Committee*"). For the avoidance of doubt, notwithstanding the inclusion of any non-cash recovery component in calculating Gross Proceeds, any payment to Acumen shall be limited to the cash proceeds actually recovered from the Preference Actions.

(d) Out-of-pocket third-party expenses, including but not limited to, data transfer, storage and management, postage, travel expenses, entity verification fees, adversary proceeding and other court filing fees, process service fees and telephone charges, but shall not include secretarial or other labor costs, will be charged against the Gross Proceeds. Acumen will store all physical and electronic records without any charge.

2



(e)   The Client will be responsible for the payment of fees and expenses of Katten and ASK as well as other legal counsel that may be retained.  The Client shall pay the fees and expenses relating to mediation and expert witnesses, including any experts and other professionals required to respond to a defendant's "objective" ordinary course of business defense.  Acumen will defer to the Client, its attorneys and its advisors with respect to the decision to hire any experts, attorney's fees and expert witness fees.  Any experts or third-party professionals who are retained to prove insolvency or to respond to a defendant's "objective" ordinary course of business defense are to be separately retained and shall not be considered part of this engagement.

## 3.  Invoicing and Payment

(a)  Acumen will open up a segregated account in connection with this engagement (the "**Proceeds Account**").  Acumen will deduct expenses and costs from Gross Proceeds once per month. Acumen will make monthly remittances, net of Acumen/Katten's fees and expenses, to the designated recipient.  Acumen will also make wire transfers to the chosen account.  As part of the remittance, Katten and Acumen will provide monthly reports to the Client, with a copy to counsel to the official committee of unsecured creditors ("**Creditors' Committee Counsel**") summarizing settlements received and costs incurred in the prior month and its contingency fee percentage for each collection.  In the event there are insufficient Gross Proceeds in a given month to cover Acumen's expenses and costs, Acumen will record the deficiency and will deduct such deficiency from Gross Proceeds obtained in the following month(s) to the extent available.  For the avoidance of doubt, Acumen will not be reimbursed for any expenses and costs exceeding Gross Proceeds.  If Katten/Acumen is required to remit Gross Proceeds, then we expect payment of our respective invoices within 10 days of presentation, or as soon as practicable as allowed by the Bankruptcy Court.  Katten and Acumen will also send monthly status reports to the Client, with a copy to Creditors' Committee Counsel, detailing the status of all pending cases that remain open for collection.

## 4.  Confidentiality

(a)  The Client and Acumen agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b)  If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.

## 5.  Property Rights

Acumen reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other



information or property (collectively, the "***Property***") furnished by Acumen for itself or for use by the Client hereunder. Fees and expenses paid by the Client do not vest in the Client any rights in such Property. Such Property is only being made available for the Client's use during and in connection with the Services provided by Acumen hereunder.

## 6.  **Bank Accounts**

At the request of the Client or the Client Parties, Acumen shall be authorized to establish accounts with financial institutions in the name of and as agent for the Client, including the Proceeds Account.

## 7.  **Term and Termination**

(a)  This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein). "***Cause***" means (i) gross negligence or willful misconduct of Acumen or Katten that causes material harm to the Client, (ii) a determination, decree, rule, guideline, order or statement of similar formality is issued by any court or government agency finding or recommending that Acumen or Katten not be permitted to serve as a professional for or advisor to a debtor, official committee, trustee or other fiduciary in a bankruptcy case, or (iii) the Restructuring Committee reasonably determines that Acumen or Katten has generally failed to prosecute or has abandoned prosecution of the Preference Actions.

(b)  If the Client elects to terminate this agreement without Cause, including termination caused by conversion of any case or cases with material Preference Actions to chapter 7 or appointment of a chapter 11 trustee in any such case or cases (provided that the Debtors will use their reasonable best efforts to cause the chapter 11 trustee to continue Katten's and Acumen's engagement in accordance with their respective engagement letters), the Client will remain obligated to pay Acumen its contingency fee amount earned as of the date of termination and all fees based on recoveries in the Preference Actions for a period extending twelve months after the date of termination ("***Tail Compensation***"). If Acumen voluntarily terminates this agreement or Client terminates this agreement for Cause, Acumen shall be entitled to no fee payments hereunder, including the Tail Compensation, but shall be entitled to receive 100% of expenses and disbursements advanced, which amounts shall only be payable from, and at the time of the Client's receipt of, any cash proceeds actually recovered. For the avoidance of doubt, Tail Compensation shall be determined using the same compensation tiers as set forth above and in determining the amount of Tail Compensation to which Acumen is entitled shall count all Gross Proceeds received prior to Acumen's termination without cause.

## 8.  **Client Data**

(a)  The Client agrees, represents and warrants to Acumen that before delivery of any information to Acumen: (i) the Client has full authority to deliver such information to Acumen; and (ii) Acumen is authorized to use such information to perform Services hereunder.

(b)  Any data, storage media, programs or other materials furnished to Acumen by the Client may be retained by Acumen until the Services provided hereunder are paid in full. The Client shall remain liable for all fees and expenses incurred by Acumen under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Acumen. Any such disposal shall be in a manner requested by or acceptable to the Client.

4



## 9. Force Majeure

Whenever performance by Acumen of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Acumen's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## 10. Choice of Law

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 11. Integration; Severability; Modifications; Assignment

(a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Client and an officer of Acumen.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Acumen may assign this Agreement to a wholly-owned subsidiary or affiliate without the Client's consent.

## 12. Effectiveness of Counterparts

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

## 13. Notices

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

> If to Acumen:       Acumen Recovery Services, LLC
> 747 Third Avenue, 2nd Floor
> New York, NY 10017
> Attn: Michael A. Cohen
> Email: mcohen@acumenrecovery.com



If to the Client:        Sears Holdings Corporation
3333 Beverly Road
Hoffman Estates, IL 60179
Attn: Mohsin Y. Meghji
Chief Restructuring Officer
Email: mmeghji@miiipartners.com

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.


Acumen Recovery Services, LLC

By:   Michael A. Cohen
Title: Chief Executive Officer


**Sears Holding Corporation on behalf of itself and its Debtor Affiliates**

By:
Title:   M. Y. MEGHJI
         C. R. O.

6

# Katten

KattenMuchinRosenman LLP

575 Madison Avenue
New York, NY  10022-2585
212.940.8800 tel
www.kattenlaw.com

**STEVEN J. REISMAN**
sreisman@katten.com
212.940.8700 direct

Dated as of April 1, 2019

**VIA EMAIL: mmeghji@miiipartners.com**

Sears Holdings Corporation
3333 Beverly Road
Hoffman Estates, IL 60179
Attn: Mohsin Y. Meghji
Chief Restructuring Officer

Re:  **Engagement Agreement**

Dear Mo:

We are pleased to have the opportunity to serve as special counsel for Sears Holdings Corporation and its debtor affiliates in the jointly administered chapter 11 cases of *In re Sears Holdings Corporation, et al.*, Case No. 18-23538 (RDD) (collectively, the "Debtors" or the "Client")[1] with regard to providing advice and representation in connection with investigating, analyzing, prosecuting and/or settling avoidance actions arising under chapter 5 of the Bankruptcy Code and/or applicable state law against non-insider, non-affiliate transferees (collectively, the "Matter").  As previously disclosed, we will be working with Acumen Recovery Services, LLC ("Acumen") on this Matter.  This letter and the enclosed Terms of Engagement describe the basis on which Katten Muchin Rosenman LLP (the "Firm" or "Katten") shall provide legal services.

I will be the lawyer at the Firm with the primary responsibility for this Matter and understand that it is your expectation, as well as my own intention, that I be involved in managing all aspects of the Matter.  I will be assisted by my partners Theresa Foudy, Karen Dine, Jeff Friedman, and such other partner(s), associate(s), and other member(s) of the Firm as appropriate.

Please review the enclosed Terms of Engagement, with the assistance of independent counsel if you wish, and let me know if you have any questions about them.  If all the terms are satisfactory, please indicate your consent by signing this letter and returning it to me.  However, your continuing instructions in this Matter will amount to your acceptance of the terms of this letter, including the Terms of Engagement (collectively the "Terms").  All parties to this agreement agree that a digital signature shall be effective to prove each party's agreement to the Terms.  Furthermore, the parties agree that the Terms may be proven through an electronic copy

---

[1] After the effective date of the Debtors' Chapter 11 plan, Client shall refer to the Liquidating Trust responsible for administering and monetizing avoidance actions.

AUSTIN    CENTURY CITY    CHARLOTTE    CHICAGO    DALLAS    HOUSTON    LOS ANGELES
NEW YORK    ORANGE COUNTY    SAN FRANCISCO BAY AREA    SHANGHAI    WASHINGTON, DC
LONDON: KATTEN MUCHIN ROSENMAN UK LLP
A limited liability partnership including professional corporations



Sears Holding Corporation
Dated as of April 1, 2019
Page 2

in digital format, and that no "original" hard-copy document need be retained to prove the Terms.

As noted, Katten will be working with Acumen, a data analysis and advisory firm which focuses on data gathering, defense analysis and litigation support, in order to assist Katten in connection with investigating, analyzing, prosecuting and/or settling claims held by the Client against non-insider non-affiliate transferees arising under Section 547 of the Bankruptcy Code (collectively, the "Preference Actions" and such defendant transferees, collectively the "Transferees"). Acumen's fees and expenses shall be paid solely out of Katten/Acumen Proceeds (defined below) and shall not constitute expenses of Katten. Accordingly, the retention of Acumen will not result in any incremental fees or expenses to the Client.

It is our understanding that the Client is also retaining ASK LLP ("ASK") in connection with this Matter. Katten's engagement in this Matter is conditioned upon the Preference Actions being divided in the manner directed by the Debtors equally based on expected net recoveries, as determined by the Firm and Acumen in their reasonable discretion, between Katten and Acumen (together, "Katten/Acumen"), on the one hand, and ASK on the other hand. Preference Actions to be pursued by Katten/Acumen shall hereinafter be defined as "Katten/Acumen Actions", and Preference Actions to be pursued by ASK shall be defined as "ASK Actions". ASK and Katten/Acumen may agree to modify the list of ASK Actions and Katten/Acumen Actions with the approval of the Restructuring Committee of the Board of Directors of Sears Holdings Corporation (the "Restructuring Committee").

Throughout the engagement, to the extent practicable, given the circumstances of Client's chapter 11 cases, Client agrees to afford Katten and Acumen reasonable access to the Client's books and records and personnel who are knowledgeable about facts relevant to the Matter. Subject to the foregoing, Client shall reasonably cooperate, consult with, and provide all such information and documentation and access as may be reasonably requested by Katten and Acumen to enable Katten and Acumen to maximize the recovery on the Preference Actions.

Notwithstanding Paragraph IV of the Terms, Katten's fee arrangement in connection with investigating, analyzing, prosecuting and/or settling the Preference Actions shall be as set forth below:

1.  Any cash proceeds obtained in connection with the Katten/Acumen Actions (collectively, the "Katten/Acumen Proceeds") shall first be used to reimburse reasonable and documented non-labor, third-party expenses and costs of Katten and Acumen directly related to the prosecution, negotiation, or collection of Katten/Acumen Actions. Katten will store all physical and electronic records without any charge. Katten will deduct such expenses and costs from Katten/Acumen



Sears Holding Corporation
Dated as of April 1, 2019
Page 3

Proceeds once per month.  In the event there are insufficient Katten/Acumen Proceeds in a given month to cover such expenses and costs, Katten will record the deficiency and will deduct such deficiency from Katten/Acumen Proceeds obtained in the following month(s) to the extent available.  For the avoidance of doubt, Katten and Acumen will not be reimbursed for any expenses and costs exceeding Katten/Acumen Proceeds. For the avoidance of doubt, notwithstanding anything contained in the Terms, the Client, and not Katten or Acumen, shall be responsible for payment of expert witness fees and expenses.  Any experts or third-party professionals who are retained to prove insolvency or to respond to a defendant's "objective" ordinary course of business defense are to be separately retained and shall not be considered part of this engagement.  Katten and Acumen will defer to the Client and its other advisors with respect to the decision to retain any experts.

2.  Katten/Acumen Proceeds shall also include, without limitation, that certain portion of a claim against the Debtors' estates that is waived or settled in connection any Katten/Acumen Action, that would—(i) be distributable to the claimant pursuant to an approved chapter 11 plan, or (ii) if no plan is approved, be the estimated recovery to the claimant pursuant to an approved plan disclosure statement—as if the claim had not been waived.  For example, if a Transferee waives a $100,000 general unsecured claim, and the distribution on such claim would (under an approved plan) or is anticipated to be (under a disclosure statement) 10%, then the Katten/Acumen Proceeds on account such claim waiver would be $10,000.  With respect to waivers or settlements involving secured claims, administrative claims and other priority claims, the amount credited as Katten/Acumen Proceeds will be equal to 100% of the scheduled, agreed or allowed amount of such claims.  Katten and Acumen shall also receive credit in an amount approved by the Restructuring Committee for settlements involving payments-in-kind and other non-cash form of consideration.  For the avoidance of doubt, notwithstanding the inclusion of any non-cash recovery component used in calculating Katten/Acumen Proceeds, any payment to Katten/Acumen shall be limited to the cash proceeds actually recovered from the Katten/Acumen Actions.

3.  The contingency fees of Katten shall be paid in accordance with points 4, 5 and 6 below.

4.  After the expenses of Katten and Acumen have been paid in full, Katten/Acumen Proceeds shall be paid to Katten as follows:

    a.  Tier 1: If the total gross amount of Katten/Acumen Proceeds obtained is less than $25 million, Katten shall be paid **3.5%** of the gross proceeds obtained in



Sears Holding Corporation
Dated as of April 1, 2019
Page 4

any Katten/Acumen Action settled prior to the filing of a complaint and **6.5%** of the gross proceeds obtained after the filing of a complaint.

b. <u>Tier 2</u>: If the total gross amount of Katten/Acumen Proceeds obtained is between $25 million and $50 million (the "<u>Tier 2 Threshold</u>"), Katten shall be paid **6.0%** of the gross proceeds obtained in any Katten/Acumen Action settled prior to the filing of a complaint and **11.0%** of the gross proceeds obtained after the filing of a complaint, it being understood that the foregoing rates shall apply retroactively to all Katten/Acumen Proceeds obtained in connection with the Matter (*i.e.,* after the Tier 2 Threshold is achieved, the foregoing percentages shall apply to <u>all</u> Katten/Acumen Proceeds obtained, beginning with the first dollar of Katten/Acumen Proceeds obtained).

c. <u>Tier 3</u>: If the total gross amount of Katten/Acumen Proceeds obtained is more than $50 million, then (i) through and including the date that is eighteen (18) months after the date on which the Bankruptcy Court approves Katten's and Acumen's engagement (the "<u>Outside Date</u>"), Katten shall be paid **10.0%** of the gross proceeds obtained in any Katten/Acumen Action settled prior to the filing of a complaint and **13.0%** of the gross proceeds obtained after the filing of a complaint, and (ii) after the Outside Date, Katten shall be paid **6.0%** of the gross proceeds obtained in any Katten/Acumen Action settled prior to the filing of a complaint and **11.0%** of the gross proceeds obtained after the filing of a complaint, it being understood that the foregoing rates shall apply only to Katten/Acumen Proceeds above $50 million.

5. At any time during the Firm's engagement on the Matter, the Firm may, in its sole discretion, terminate the engagement, in which case Katten shall be entitled to all fees and expenses earned as of the date of termination; <u>provided</u>, such fees and expenses shall be paid solely from Katten/Acumen Proceeds. The Client may, in its sole discretion, terminate the engagement. If at any time during the Firm's engagement, the Client terminates the engagement without cause, including termination caused by conversion of any case or cases with material Preference Actions to chapter 7 or appointment of a chapter 11 trustee in any such case or cases (provided that the Debtors will use their reasonable best efforts to cause the chapter 11 trustee to continue Katten's and Acumen's engagement in accordance with their respective engagement letters), Katten shall be entitled to all fees and expenses earned as of the date of termination and all fees based on recoveries in the Katten/Acumen Actions for a period extending twelve months after the date of termination ("<u>Tail Compensation</u>"); <u>provided</u>, that the Debtors may immediately terminate the engagement and Katten shall not be entitled to any such Tail Compensation if, after



Sears Holding Corporation
Dated as of April 1, 2019
Page 5

execution of this agreement: (i) a determination, rule, guideline, decree, order or other statement of similar formality is issued by any court or government agency finding or recommending that Katten and/or Acumen not be permitted to serve as a professional for or advisor to a debtor, official committee, trustee or other fiduciary in a bankruptcy case, (ii) the Restructuring Committee reasonably determines that Katten and/or Acumen has generally failed to prosecute or has abandoned prosecution of the Katten/Acumen Actions, or (iii) material harm to any Debtor results from Katten's and/or Acumen's gross negligence or willful misconduct. For the avoidance of doubt, Tail Compensation shall be determined using the same compensation tiers as set forth above and in determining the amount of Tail Compensation to which Katten is entitled shall count all Katten/Acumen Proceeds received prior to Katten's termination without cause.

6.   Subject to Bankruptcy Court approval, the Board of Directors of Sears Holdings Corporation (prior to the effective date of a Chapter 11 plan) and the liquidating trustee (after the effective date of a Chapter 11 plan) shall have the discretion to increase the contingency fee percentages set forth above and/or award a bonus to Katten and/or Acumen.

All Katten/Acumen Proceeds will be deposited into a segregated account maintained by Acumen.  Acumen will make monthly remittances, net of Katten's and Acumen's fees and expenses, to the designated recipient.  If desired, Acumen will also make wire transfers to an account designated by the Debtors.  As part of the remittance, Katten and Acumen will provide monthly reports summarizing settlements received and costs incurred in the prior month and its contingency fee percentage for each collection to the Debtors, with a copy to counsel to the official committee of unsecured creditors (the "Creditors' Committee Counsel").  If Katten/Acumen is required to remit Katten/Acumen Proceeds in gross, then we expect payment of our respective invoices within 10 days of presentation, or as soon as practicable as allowed by the Bankruptcy Court.  Katten and Acumen will also send monthly status reports to the Debtors, with a copy to Creditors' Committee Counsel, detailing the status of all pending cases that remain open for collection.

At Client's request, Katten may agree to provide legal services to the Client outside the scope of the Matter.  Client shall compensate Katten for such services, if any, at the Firm's standard hourly rates or on other such other terms as may be agreed to between the Client and the Firm and disclosed in a supplemental affidavit filed with the Bankruptcy Court.

A schedule of the Firm's standard hourly rates is annexed as Exhibit A.  The Firm's disbursements that are billed on a per-unit basis are annexed as Exhibit B.  The Firm's wiring instructions are annexed as Exhibit C and the Firm's W-9 Taxpayer Certification is annexed as



**Katten**
KattenMuchinRosenman LLP

Sears Holding Corporation
Dated as of April 1, 2019
Page 6

Exhibit D.    Katten/Acumen and ASK have, to date, provided the Restructuring Committee with information concerning the allocation of the first 1000 Transferees between ASK and Katten/Acumen and will provide the Restructuring Committee with all future allocations promptly upon their completion by ASK and Katten/Acumen, but in all events subject to approval of the Restructuring Committee.

Thank you for allowing us the privilege of this representation.  We value and appreciate the trust and confidence you have placed in us and we assure you we will do our best to see that your expectations are satisfied.

My best.

Sincerely,

Steven J. Reisman

w/attachments

cc:    Brian Griffith (w/attachments, bgriffith@miiipartners.com)
William Murphy (w/attachments, wmurphy@miiipartners.com)
   M-III Advisory Partners, LP
Ray C. Schrock, Esq. (w/attachments, ray.schrock@weil.com)
Sunny Singh, Esq. (w/attachments, sunny.singh@weil.com)
   Weil, Gotshal & Manges LLP

This letter and the Terms of Engagement are agreed to and effective as of the date first written above.

**SEARS HOLDINGS CORPORATION ON BEHALF OF ITSELF AND
ITS DEBTOR AFFILIATES**

By: _____
    Name:
    Title:    M . Y . mEGHJI
          C . R . O .

**KATTEN MUCHIN ROSENMAN LLP**
**TERMS OF ENGAGEMENT**

The information below describes the terms that apply to the legal services provided for you by Katten Muchin Rosenman LLP (the "Firm"). We encourage you to discuss any of these Terms with us at any time. If modifications to the Terms are needed, you should discuss that with us so that agreement on changes can be reached and reduced to writing. All references to "you" or "your" means only the client or clients identified in our engagement letter. **Individuals or entities that are related to or affiliated with you, such as partners, officers, directors, stockholders, parent companies, related companies, or family members, are not clients, unless we otherwise agree in writing.**

I.    **Scope of Representation**. The scope of the work we will do for you is limited to the description stated in our engagement letter. Any changes or additions to the scope of our work, which we would be pleased to consider, must be agreed to and memorialized by letter or email. Unless that description states otherwise, **our engagement does not include responsibility for:** (1) review of your insurance policies to determine the possibility of coverage for our fees and costs or for the claim asserted against you, (2) notification of your insurance carriers about a matter, (3) advice to you about your disclosure obligations concerning a matter under the federal securities laws or any other applicable law, or (4) advice to you about tax issues that relate to a matter. If we agree to represent you in additional matters, we will do so in writing by letter or email, and the Terms of our engagement will remain the same for these additional matters unless changed by agreement in writing.

Additionally, if in response to your request or by requirement of lawful process we: testify; gather and/or produce documents; respond to document hold or production requests; or respond to any other requests in connection with possible, threatened or actual proceedings commenced by third parties that relate to our representation of you, you agree to pay us our reasonable fees and costs incurred.

II.    **Staffing.** Steven J. Reisman will have the primary responsibility for our relationship. We assign additional lawyers and other personnel when needed based upon the type of work and the appropriate experience level required.

III.    **Client Responsibilities.** You agree to provide us with all information that we believe is necessary or appropriate to fulfill our professional responsibilities in this Matter and to cooperate with us in matters such as fact investigation, preparation of pleadings, discovery responses, settlement conferences, etc. You will designate one or more persons to give us instructions and authority to receive our requests and inquiries. You further agree that without our express written consent, you will not use our name or the fact of your engagement of us in any form of advertising or solicitation of business.

IV.    **Financial Arrangements.**

A.    Fees and Expenses. Our fee and expense arrangements are set forth the engagement letter.

Expenses include items such as consultants, filing fees, court reporting fees, travel costs, overnight or other special mail services, messenger services, photocopies, long distance telephone, outgoing faxes, research service charges (e.g., LEXIS), and other special services such as document imaging. Certain of these charges are adjusted to include administrative and overhead expenses incurred by the Firm to provide the billed service. With respect to costs incurred and payable to third parties, such as court reporters, it is our usual policy to forward those bills to you for payment directly to the third party, and you agree to pay those fees directly to the provider. As an accommodation to you, however, we may advance those costs on your behalf and include them in our monthly bills. Some large disbursements may be forwarded to you for direct payment. Some charges may not be in the system at the time of monthly billing and will appear on a later bill. For the avoidance of doubt, and as set forth in the engagement letter, the Firm is not responsible for payment of expert witness fees and expenses.

B.    <u>Billing and Payment</u>. We reserve the right to terminate our representation of clients who do not pay promptly. We do not and cannot guarantee the outcome of any matter.

**V.    Electronic Communication.** The use of email can be an efficient means of communication, and we use it often in communicating with clients. Some clients also use instant messaging as a means of communication. However, these electronic communications can be delayed or blocked (for example, by anti-spam software) or otherwise not transmitted. You must not assume that an email or instant message sent to us was actually opened and read by us unless you receive a non-automated reply message indicating that we have read your message.

**VI.    Responses to Auditors' Inquiries.** We are frequently asked to provide information to auditing firms regarding client legal matters and we respond to those inquiries with the same level of care and professionalism used to handle the client's other legal work. We will accordingly charge for those services at the same rates. When you make a written request that we provide information to an auditing firm, we will deem your request to be your consent for us to disclose the requested information on your behalf. Additionally, when an auditing firm makes a written request for information on your behalf, that request will be deemed to be your consent for us to disclose that information to the auditing firm.

**VII.    Conclusion of Representation.** We may also terminate our representation for any reason consistent with rules of professional responsibility, including conflicts of interest or your failure to pay our fees and expenses. Our representation may also be terminated upon your request subject to the terms of the engagement letter. Following termination, any nonpublic information you have supplied to us which is retained by us will be kept confidential in accordance with applicable rules of professional responsibility. Once our representation is concluded, we will not be obligated to take any steps such as keeping track of deadlines, filing papers, pursuing appeals, or monitoring or advising you about changes in the law or circumstances that might bear upon the concluded matter.

US_139718377v1

**VIII.**   <u>**Disposition of Client Files**</u>.   Upon conclusion of your representation, we may return to you your original papers, documents and/or other property that you provided to the Firm during our engagement. You agree to accept the return of such documents and/or property.  If you so request, we will also provide to you, at your expense, copies or originals of your complete file.  We reserve the right to make, at our expense, copies of all documents generated or received by us in the course of our representation of you.  The Firm will not provide copies or originals of the Firm Administrative or Matter Administration files pertaining to the Matter, which will be retained by the Firm.  All such documents retained by the Firm, including client files (including any original documents and/or property that we attempted unsuccessfully to return to you) and Firm Administrative or Matter Administration files, will be transferred to the person responsible for administering our records retention program.  For various reasons, including the minimization of unnecessary storage expenses, we reserve the right to destroy or otherwise dispose of any documents or other materials retained by us within a reasonable time, but not less than seven (7) years after the Matter is closed.

3

**Exhibit A**
**Rates**

| **PROFESSIONALS** | **STANDARD RANGE** |
|---|---|
| Partner | $785 - $1,430 |
| Associate | $450 - $930 |
| Counsel and Special Staff | $665 - $1,035 |
| Of Counsel | $865 - $1,205 |
| Paralegal | $190 - $545 |

**Exhibit B**
**Per Unit Expenses**

| Description | Cost per page |
|---|---|
| Fax | $1.60 |
| Photocopy Costs | $  .20 |
| Photocopy – Wide Format | $1.00 |
| Color Printing / Copies | $  .25 |

5

## Exhibit B

## Proposed Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                              :

In re                         :        **Chapter 11**

                               :

**SEARS HOLDINGS CORPORATION,** *et al.*,    :        **Case No. 18-23538 (RDD)**

                               :

             **Debtors.**[1]          :        **(Jointly Administered)**

                               :        **(ECF No. [___])**

                               :

------------------------------------------------------------x

### ORDER GRANTING MOTION OF DEBTORS TO
### AMEND TERMS OF ENGAGEMENT OF PREFERENCE FIRMS

Upon the motion, dated May 5, 2021 (ECF No. [__]) (the "**Motion**") of Sears

Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-

captioned chapter 11 cases (collectively, the "**Debtors**"), for entry of an order pursuant to sections

105(a), 327, and 328 of title 11 of the United States Code (the "**Bankruptcy Code**"), authorizing

the Debtors to amend the terms of the engagement of the Preference Firms[2] all as more fully set

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is c/o M-III Partners, L.P., 1700 Broadway, 19th Floor, New York, NY 10019.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

forth in the Motion; and the Court having jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334(b) and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief requested in the Motion having been provided in accordance with the Amended Case Management Order; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion on May 25, 2021 (the "**Hearing**"); and upon the record of the Hearing, and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that the relief requested is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted to the extent set forth herein.

2.      In accordance with sections 105(a), 327, and 328 of the Bankruptcy Code, modification of the terms of the engagement of the Preference Firms to be consistent with the Repricing Proposal is approved and the Engagement Letters are hereby deemed modified to be consistent with the Repricing Proposal.

3.      To the extent that the terms of the Retention Orders or the Engagement Letters are inconsistent with the terms of this Order, the terms of this Order shall govern.

2

4.       The terms and conditions of the Engagement Letters, other than the compensation terms, shall remain unchanged.

5.       The terms and conditions of this Order are immediately effective and enforceable upon entry of this Order.

6.       The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

7.       This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2021
      White Plains, New York

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

3