UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>**SEARS HOLDINGS CORPORATION,** *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 18-23538 (RDD)<br><br>**(Jointly Administered)** |

### CLASS REPRESENTATIVES' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Pursuant to the *Third Amended Stipulation and Pre-Trial Scheduling Order Between Transform and Greene Class Action Plaintiffs* (ECF No. 9401) (the "Third Amended Stipulation"), Nina and Gerald Greene (the "Class Representatives"), by and through their undersigned counsel, hereby submit this Reply Memorandum of Law in further support of their *Motion for Relief from the Automatic Stay* (ECF No. 6212) (the "Motion"). In support of this Reply Memorandum of Law, the Class Representatives respectfully state as follows:

### PRELIMINARY STATEMENT

1. Class Representatives commenced the class action captioned *Greene v. Sears Protection Company, et al.*, U.S.D.C. N.D. Ill., Case No. 1:15-cv-02546 (the "Class Action") in March 2015, alleging that certain Master Protection Agreements ("MPAs") sold by Sears were illusory, insofar as customers were charged for "coverage" on products not actually eligible for coverage.

2. Two classes have been certified in the Class Action. *See* Motion, ¶¶ 12-14.

3. Class Representatives' Motion seeks relief from the automatic stay for the purpose of continuing prosecution of the Class Action, but with Transform Holdco LLC ("Transform"), Buyer in the Debtors' Chapter 11 cases, substituted as the defendant.

4. Transform has objected to the Motion. *See* ECF No. 6366 (the "Objection").

5. The parties' dispute centers on whether the Classes' claims are encompassed within the scope of liabilities assumed by Transform pursuant to the terms of the Asset Purchase Agreement dated as of January 17, 2019 (the "APA") between Transform and the Debtors, as approved by the Court on February 8, 2019. *See* ECF No. 2507 (the "Sale Order") (attaching the APA as Exhibit B).

6. The parties have engaged in limited discovery, and this matter is scheduled for an evidentiary hearing on May 14, 2021.[1]

7. For the reasons set forth herein (and in the Motion), Class Representatives respectfully submit that the plain meaning of § 2.3(e) of the APA establishes that the Classes' causes of action are among the liabilities for protection agreements that Transform assumed under the APA.

8. Alternatively, in the event the Court finds the APA ambiguous in this regard, there is no basis for concluding that the parties to the APA intended to exclude a specific group of protection agreement-holders (*i.e.*, the Class Members, who hold MPAs) from the scope of § 2.3(e), given that the Class Action was never discussed (or even known to the lead negotiators) during the negotiation of the APA.

## ARGUMENT

9. The primary objective in construing a contract is to give effect to the intent of the parties. *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006).[2] The best

---

[1] Pursuant to the Third Amended Stipulation, the parties will be submitting a joint exhibit book, which will also include deposition designations and counter-designations, to the Court by May 7, 2021.

[2] The APA is governed by Delaware law. *See* APA, § 13.8(a).

2

indication of the parties' intent is the language of the contract, given its plain and ordinary meaning. *Id.* (explaining that when interpreting a contract the court is "constrained by a combination of the parties' words and the plain meaning of those words"). The contract must be construed as a whole, giving effect to all its provisions. *Salamone v. Gorman*, 106 A.3d 354, 368 (Del. 2014).

10. If the language of the contract is unambiguous, it should be given its plain and ordinary meaning and enforced as written, without reference to extrinsic evidence. *See Pellaton v. Bank of New York*, 592 A.2d 473, 478 (Del. 1991) ("[I]f the instrument is clear and unambiguous on its face" the court may not consider external evidence to "interpret it or search for" the parties' intent.).

11. A contract will be considered ambiguous only if the provisions in controversy are "fairly susceptible of different interpretations or may have two or more different meanings." *Salamone*, 106 A.3d at 369. Delaware adheres to the "objective" theory of contracts, meaning that "a contract's construction should be that which would be understood by an objective, reasonable third party." *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010); *see also Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992) ("The true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.").

12. If the court determines that there is more than one reasonable interpretation of a disputed contract term, it may consider extrinsic evidence to resolve the ambiguity. *Salamone*, 106 A.3d at 374; *AT&T Corp. v. Lillis*, 953 A.2d 241, 253 (Del. 2008).

I. **SECTION 2.3(e) OF THE APA SHOULD BE ENFORCED ACCORDING TO ITS PLAIN AND ORDINARY MEANING, WHICH PROVIDES THAT TRANSFORM ASSUMED THE DEBTORS' LIABILITIES FOR PROTECTION AGREEMENTS SUCH AS THOSE AT ISSUE IN THE CLASS ACTION**

13. Section 2.3(e) sets forth the following as an Assumed Liability under the APA: "subject to Section 2.8(e) [of the APA], *all Liabilities for warranties and protection agreements or other services contracts* (other than warranties relating to Intellectual Property) *for the goods and services of Sellers sold or performed prior to the Closing*, including any Liabilities owed by [Sears Reinsurance Company Ltd.] to any Seller in respect of reinsurance of such warranties and protection agreements (the 'PA Liabilities')." *See* APA, § 2.3(e) (emphasis added).[3]

14. Thus, as the Court explained in its order approving the sale, "[p]ursuant to and in accordance with Section 2.3(e) of the [APA], the Buyer has expressly assumed [the Debtors'] obligations . . . with respect to warranties and protection agreements or other services contracts . . . for the goods and services of [Debtors] sold or performed prior to the Closing." Sale Order, ¶ 18.

15. Section 2.3(e), by its plain meaning, encompasses the Classes' claims concerning illusory MPAs sold by Sears prior to the Closing.

16. More particularly, the MPAs at issue are protection agreements sold by Sears prior to closing[4] and the Classes' causes of action fall within the APA's broad definition of "Liability."[5]

---

[3] There is no dispute that the conditions in § 2.8(e) were met as of June 17, 2019. *See* Motion, ¶ 25; Declaration of Kunal S. Kamlani (ECF No. 6367) ("Kamlani Decl."), ¶ 19.

[4] Copies of the Class Representatives' MPAs are attached as Exhibit A to their First Amended Class Action Complaint filed in the Class Action, which in turn is attached to the Motion as Exhibit B.

[5] The APA defines "Liability" broadly, to encompass: "any liability, indebtedness, debt, guaranty, claim, demand, loss, damage, deficiency, assessment, responsibility, Claim, Action, proceeding or obligation of whatever kind or nature (whether known or unknown, whether

4

1. **Transform's Arguments Concerning the Purported Meaning of the Word "For" Are Unavailing**

17. In an effort to limit the plain meaning of § 2.3(e), Transform argues that the use of the phrase "Liabilities *for*" (rather than "arising out of" or "relating to") in § 2.3(e) indicates an intention to exclude liabilities such as those in the Class Action. These arguments are baseless.

18. The primary claim in the Class Action is breach of contract.[6] Transform fails to explain how the phrase "Liabilities for . . . protection agreements" somehow operates to exclude claims for breach of that very agreement or for related claims pertaining directly to the contractual relationship.

19. The word "for" has no special meaning which operates to limit the scope of § 2.3(e) in the manner urged by Transform. *See For, The American Heritage Dictionary of the English Language* (5th ed. 2020), *available at* https://ahdictionary.com/word/search.html?q=for (definitions of "for" include, *inter alia*, "to indicate the object, aim, or purpose of an action or activity", "As a result of; because of", or "As regards; concerning").

2. **Transform's Attempt to Draw a Distinction Between "Customer-Facing Liabilities" and Other Types of Liabilities Is Not Supported By the Language of the APA**

20. Transform's Objection is littered with assertions that § 2.3(e) pertains only to obligations which were "customer-facing," concerned "performance," or related to customers who

---

asserted or unasserted, whether absolute or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, whether due or to become due, whether determined or determinable, whether choate or inchoate, whether secured or unsecured, whether matured or not yet matured) and including all costs, fees and expenses relating thereto." *See* APA, § 1.1; *see also id.* (defining "Action" to mean "any Claim, action, complaint, suit, litigation . . . legal proceeding . . . or other legal dispute," and defining "Claims" to broadly include "all rights to payment").

[6]  The Class Action also asserts claims for unjust enrichment and for consumer fraud under Pennsylvania law, based on the illusory nature of the challenged MPAs. *See* Motion, ¶¶ 13-14; Motion, Ex. B, First Amended Class Action Complaint, Counts I, II, and IV.

had a positive relationship with Sears (*see* Objection, ¶¶ 16, 29, 40), but the language of the APA contains no such limitations.

21. Rather, § 2.3(e) refers broadly to "all Liabilities for warranties and protection agreements or other services contracts . . . for the goods and services of [the Debtors] sold or performed prior to the Closing," and further defines "Liability" to include, among other things, *any* liability, indebtedness, claim, action, or "obligation of whatever kind or nature" – *including* contingent liabilities. *See* APA, §§ 1.1, 2.3(e).

22. The distinctions Transform attempts to draw are not supported by the language of the APA and should thus be rejected. *See In re Old Carco LLC*, 587 B.R. 809, 817 (Bankr. S.D.N.Y. 2018) (rejecting party's attempt to draw a distinction between different types of liabilities which was not supported by the language of the agreement).

### 3. Section 2.4(c), Pertaining to Certain Litigation-Related Excluded Liabilities, Does Not Apply Here Because the APA's Excluded Liability Provisions Are Subject To and Limited By the List of Assumed Liabilities

23. Transform argues that the Class Action is an Excluded Liability pursuant to Section 2.4(c) of the APA, which concerns certain liabilities arising from or related to pre-closing litigation. *See* APA, § 2.4(c).

24. Transform, however, ignores that the entirety of Section 2.4 applies only "*other than the Assumed Liabilities*" (*see* APA, § 2.4 (emphasis added)) – which, as set forth above, include liabilities for protection agreements such as Class Members' MPAs.

25. The inclusion of the phrase "other than the Assumed Liabilities" in Section 2.4's introductory language operates to restrict the scope of the Excluded Liabilities set forth in that section. *See Old Carco*, 587 B.R. at 818 (rejecting argument that excluded liability provision applied because entire section was qualified by the phrase "other than [a]ssumed [l]iabilities"). As

6

such, the Excluded Liabilities under Section 2.4 are "subject to and limited by" the liabilities Transform expressly assumed under Section 2.3, "rather than the other way around."  *Id.*

II. **ALTERNATIVELY, IN THE EVENT THAT THE COURT FINDS THE APA TO BE AMBIGUOUS, THE PAROL EVIDENCE CONFIRMS THAT THE CLASSES' CLAIMS WERE NOT EXCLUDED FROM TRANSFORM'S ASSUMPTION OF LIABILITIES FOR PROTECTION AGREEMENTS**

26. In the event the Court determines that § 2.3(e) is ambiguous with respect to whether Transform assumed liabilities with respect to the Class Action, it may examine extrinsic evidence to determine the contractual intent.  *Salamone*, 106 A.3d at 374.

27. Transform argues that the contract parties' failure to consider or account for the Classes' claims during negotiations provides evidence that they were excluded liabilities under the APA.  But here, an expressly-assumed category of liabilities is at issue.  As discussed above, Class Members' MPAs are among the type of protection agreements to which § 2.3(e) refers and the Classes' claims are Liabilities within the meaning of the APA.  Thus, the relevant question for purposes of the Court's analysis is whether the Classes' claims were somehow *excluded* from the scope of § 2.3(e).

28. In negotiating the Assumed Liabilities under the APA, Sears and Transform never discussed the Class Action.  *See* Declaration of Robert A. Riecker (ECF No. 6369) ("Riecker Decl."), ¶ 17 (Riecker statement that he is "not aware of any discussions between Transform and the Debtors" concerning existing protection agreement litigation); Kamlani Decl., ¶ 21 (Kamlani statement that he is "not aware of any discussion…" concerning litigation relating to assumed liabilities).

29. The individuals who led the negotiations on behalf of each party – Kunal Kamlani on behalf of Transform and Robert Riecker on behalf of the Debtors – had never heard of the Class

7

Action until Class Representatives filed the instant Motion.[7] *See, e.g.*, Riecker Dep. 8:10-13, 16:10-14[8]; *see also* Riecker Dep. 16:1-8, 30:13-17 (Riecker testimony that he is not familiar with the term "Master Protection Agreement").

30. Testimony concerning the subjective understandings of Sears or Transform is not probative for purposes of the Court's analysis here, because it is undisputed that they never discussed the Class Action or its relation to liabilities for protection agreements. *See Blankenship v. Alpha Appalachia Holdings, Inc.*, 2015 WL 3408255, at *17 (Del. Ch. May 28, 2015) (where parties never discussed term, testimony concerning their subjective understandings was "not probative" as to the parties' shared understanding).

31. Indeed, the only evidence concerning any discussion of limits contemplated for the scope of § 2.3(e) concerns an affirmance process that Transform and Sears negotiated to *remove* – in favor of the broadly-worded assumption of protection agreement liabilities reflected in the executed APA. *See* Kamlani Decl., ¶¶ 13, 16-17 (discussing contemplated affirmance process, which parties negotiated to remove); Riecker Decl., ¶¶ 13-15 (same).

32. Thus, no contract language or parol evidence reflects any agreement between Sears and Transform to exclude Class Members' MPAs from the scope of § 2.3(e).

33. Moreover, any purported discussions between Transform and Sears concerning "customer-facing" obligations versus other types of liabilities are not, as discussed above, reflected

---

[7] The Class Action is, however, identified in Schedule 6.14 to the APA. *See* APA, Sched. 6.14.

[8] Mr. Riecker's testimony will be offered into evidence in the form of deposition designations. Mr. Kamlani will be cross-examined live at the hearing before the Court on May 14, 2021.

in the language of the fully-integrated APA. Nor would a reasonable person read § 2.3(e)'s broadly-worded language to include such a distinction.

## CONCLUSION

For the reasons set forth above and in the Motion, Class Representatives respectfully request that the Court find that Transform assumed liabilities with respect to the Class Action pursuant to § 2.3(e) of the APA.

Dated: May 6, 2021

Respectfully submitted,

*/s/ Benjamin M. Mather*
Benjamin M. Mather, Esq.
Janice I. Daul, Esq.
KAUFMAN, COREN & RESS, P.C.
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA 19103
Tel: (215) 735-8700
*(Admitted Pro Hac Vice)*

*Attorneys for Class Representatives*
*Nina and Gerald Greene*