CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Attorneys for Transform Holdco LLC, Transform SR Protection LLC and Transform SR LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: <br><br> SEARS HOLDINGS CORPORATION, et al., <br><br> Debtors.[1] | Chapter 11 <br><br> Case No. 18-23538 (RDD) <br><br> (Jointly Administered) |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**TRANSFORM HOLDCO LLC'S REPLY TO THE
CLASS REPRESENTATIVES' MOTION FOR RELIEF FROM AUTOMATIC STAY**

Transform Holdco LLC ("Transform"), the buyer of substantially all of the assets of Sears Holdings Corporation and its affiliated Debtors (the "Debtors") pursuant to the APA (as defined below), together with Transform's affiliates Transform SR Protection LLC and Transform SR LLC, by their undersigned counsel, hereby submit this reply (the "Reply") in further support of *Transform Holdco LLC's Objection to the Class Representatives' Motion for Relief from the Automatic Stay* [Docket No 6366] (the "Objection") to the *Class Representatives' Motion for Relief from the Automatic Stay* [Docket No. 6212] (the "Motion") dated as of December 13, 2019. In support of this Reply, Transform, Transform SR Protection LLC and Transform SR LLC respectfully state as follows:

### PRELIMINARY STATEMENT

1. In February 2019, the Court approved the sale of substantially all of the Debtors' assets to Transform free and clear of all liens and claims to the full extent of Section 363 of the Bankruptcy Code. The understanding between the parties, memorialized in the APA, is clear that Transform agreed to assume a narrow subset of obligations in order to maintain customer relationships for a successful transition of the business between owners. One such obligation that Transform agreed to assume was the ongoing service of household items required under outstanding protection agreements purchased by Sears customers. The text of the APA makes clear that any obligations not explicitly assumed by Transform are excluded liabilities, and in particular, is explicit that litigation claims are excluded liabilities. APA § 2.5.

2. Nearly a year after the sale closed, plaintiffs in a class action lawsuit that was initiated in 2015 against certain Debtors (the "Class Action") filed the instant Motion asserting that Transform should be required to defend against a prepetition action relating to the protection

2

agreements. Having lost their defendants in the Class Action due to the Debtors' bankruptcy, Movants brought this lift stay motion, without any legitimate basis in the text of the APA, in an improper attempt to secure new defendants. Movants have since been granted ample opportunity for discovery to bolster their meritless claim but have failed to adduce any evidence that the parties to the APA intended for Transform to assume the liability for the Class Action. To the contrary, the mutual understanding of key negotiators of the APA confirms that Transform would never had agreed to assume any pre-existing litigation related to the acquired assets. Both the plain meaning of the APA and the parol evidence in this case show that Transform's obligation ends with servicing items covered by outstanding protection agreements and would under no circumstance extend to the Class Action.

## BACKGROUND

3. Transform respectfully refers the Court to the background set forth in the Objection, which provides a fulsome overview of all relevant facts.[2] Set forth below is a limited discussion of the background to this dispute relevant to the Reply.

4. On February 8, 2019, the Court approved the sale (the "Sale Order")[3] of substantially all of the Debtors' assets free and clear of all liens, claims and encumbrances to Transform pursuant to the terms of the approved asset purchase agreement.[4] In exchange for providing $5.2 billion in value, Transform received the assets it purchased "free and clear" of any and all liabilities other than those liabilities that were expressly assumed. Sale Order ¶¶ R,

---

[2] All capitalized terms used but not defined herein have the meaning ascribed to them in the Objection.

[3] *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* [Docket No. 2507].

[4] The asset purchase agreement is attached as Exhibit B to the Sale Order [Docket No. 2507-1] (as may be amended, restated or amended and restated from time to time, including pursuant to Amendment 1 [Docket No. 2599] and Amendment 2 [Docket No. 3880], the "APA").

3

19; APA § 2.1.  The sale closed on February 11, 2019 (the "Closing Date").[5]

5. The structure of the APA is consistent with the "free and clear" sale in that it includes a default rule that all liabilities not explicitly assumed by Transform are excluded from the sale (the "Excluded Liabilities").  See APA § 2.4.  Further, the APA sets forth a non-exhaustive list of Excluded Liabilities that specifically encompasses pre-existing litigation.[6]  The Class Action was listed in Schedule 6.14 to the APA as a litigation known to the parties and is therefore beyond any doubt included in "litigation" as used in the definition of Excluded Liabilities.

6. The limited universe of liabilities expressly assumed by Transform is set forth in Section 2.3 of the APA (the "Assumed Liabilities").  The purpose of the Assumed Liabilities was for Transform to assume only those obligations necessary for Transform to maintain customer relationships, which are critical to the success of the business. Kamlani Decl. ¶¶ 5, 11, 15; Riecker Decl. ¶¶ 12, 16.  To that end, Transform agreed to honor "all Liabilities *for* warranties and protection agreements or other services contracts . . . for the goods and services of Sellers sold or performed prior to the Closing, including any Liabilities owed by Sears Re to any Seller in respect of reinsurance of such warranties and protection agreements (the 'PA Liabilities')." APA § 2.3(e) (emphasis added).

---

[5] It is clear that at the time of the sale, the Class Action plaintiffs did not legitimately believe that Transform had assumed any liability relating to the Class Action.  After the Closing Date, on April 5, 2019, Class Action plaintiffs filed proof of claim numbers 14323, 14252 and 14256 against the Debtors' estates.  Although in the proofs of claim the Class Action plaintiffs purport to reserve the right to assert "any claim the [Class Action plaintiffs] have or may have against SPC, SRC, SHC, or any other Sears Affiliate," the proofs of claim make no mention of Transform or the APA.  *Cf.* Proof of Claim No. 14252 at page 5.  Moreover, the Class Action plaintiffs did not appear to be heard at the sale hearing.  The Class Action plaintiffs waited months to concoct the argument set forth in their motion, and their own behavior in not attempting to advance the litigation against Transform further confirms that they originally understood that Transform did not assume the litigation claims.

[6] *See* APA § 2.4(c) (Excluded Liabilities include Liabilities "arising from or related to any claim, Action, . . . suit, *litigation* or other proceeding . . . arising out of the Assumed Liabilities, the Acquired Assets or the operation of the Business prior to the Closing Date or relating to facts, actions, omissions, circumstances or conditions existing, occurring or accruing prior to the Closing Date against any Seller or its Affiliates.") (emphasis added).

4

7. The understanding of the parties was that any pre-existing litigation is an Excluded Liability. Neither the Debtors nor Transform viewed any section of the APA as providing for Transform's assumption of pre-existing litigation associated with the protection agreements. Kamlani Decl. ¶¶ 11, 17–22; Riecker Decl. ¶¶ 15–17. The $1.009 billion figure that the parties agreed was the estimated value of the assumed liability for protection agreements in no way included or accounted for the claims that the Class Action plaintiffs now seek to assert against Transform or its affiliates. Kamlani Decl. ¶ 23; Riecker Decl. ¶¶ 8–10, 16–17; Joint Exhibit 6 ("Loss Triangle Spreadsheet"); Riecker Deposition Tr. 20:15-21:14.

8. On March 2, 2021, the Court entered a scheduling order (the "<u>Second Amended Scheduling Order</u>")[7] providing for the continuation of discovery that had been suspended s*ine die* due to the COVID-19 pandemic. Pursuant to the Second Amended Scheduling Order, Movants deposed both Mr. Riecker and Mr. Kamlani with respect to their declarations filed in support of the Objection (the "<u>Declarations</u>"). During these depositions, Movants failed to elicit any testimony that would refute the statements made in the Declarations or give support to their arguments that Transform assumed their litigation claims.[8]

**ARGUMENT**

**I.   THE CLASS ACTION IS AN EXCLUDED LIABILITY UNDER THE PLAIN LANGUAGE OF THE APA**

9. Delaware law makes clear that when a "contract is clear and unambiguous," the court "will give effect to the plain-meaning of the contract's terms and provisions," *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159–60 (Del. 2010), with "'priority to the parties'

---

[7] *Second Amended Stipulation and Pre-Trial Scheduling Order Between Transform and Greene Class Action Plaintiffs* [Docket No. 9331].

[8] Mr. Riecker is unavailable to testify at the hearing on the Motion; the parties have therefore agreed to submit designations of his deposition testimony. Mr. Kamlani will be available at the hearing for cross-examination.

5

intentions as reflected in the four corners of the agreement,' construing the agreement as a whole and giving effect to all its provisions," *Salamone v. Gorman*, 106 A.3d 354, 368 (Del. 2014) (citation omitted). Here, the plain text of the APA is clear that all pre-existing litigation, including the Class Action, is an Excluded Liability and thus not was assumed by Transform.

10. Section 2.4 of the APA sets forth a default rule that any obligation not explicitly included as an Assumed Liability is an Excluded Liability. Pre-existing litigation, such as the Class Action, is specifically enumerated in the APA as one such Excluded Liability in Section 2.4(c). There can be no dispute that the Class Action clearly fits this definition.[9]

11. Notwithstanding the express categorization of all litigation claims as Excluded Liabilities, Movants argue that the Class Action is an Assumed Liability based on Section 2.3(e) of the APA, which states that Transform will assume "all Liabilities for warranties and protection agreements or other services contracts . . ." This argument fails for the following reasons.

12. First, the general definition of "Liabilities"[10] in the APA is superseded by the specific language of Excluded Liabilities per the canon of contract interpretation that the specific governs over the general. *See, e.g.*, *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005) (observing that established rules of contract construction require that "where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one"). While "Liability" is broadly defined and used throughout the APA in a variety of

---

[9] Movants argue that the language "other than the Assumed Liabilities" in Section 2.4 carves out the Class Action from the Excluded Liabilties; however, this argument is circular in that it assumes the Class Action is included in the Assumed Liabilities, which it is not.

[10] Section 1.1 of the APA defines "Liability" as "any liability, . . . Claim, Action, proceeding or obligation of whatever kind or nature (whether known or unknown, whether asserted or unasserted, whether absolute or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, whether due or to become due, whether determined or determinable, whether choate or inchoate, whether secured or unsecured, whether matured or not yet matured) and including all costs, fees and expenses relating thereto."

contexts, the term Excluded Liabilities refers specifically to pre-existing litigation as an obligation not assumed by Transform. Arguing that the Assumed Liabilities in Section 2.3(e) include pre-existing litigation based on the generic term "Liabilities" ignores the specific provision of the APA that explicitly excludes pre-existing litigation from all Assumed Liabilities.

13. Second, even assuming *arguendo* the general definition of Liabilities was not superseded by the specific definition of Excluded Liabilities, any "Claim", "Action" or "proceeding" encompassed in the definition of Liabilities would have to be "for" the protection agreements in order to be an Assumed Liability. *See* § 2.3(e) (Transform will assume "all Liabilities *for* warranties and protection agreements or other services contracts) (emphasis added). In contrast, any Liabilities "arising out of" the Assumed Liabilities or "relating to" actions or omissions occurring prior to the Closing Date are Excluded Liabilities. The Class Action asserts claims based on an alleged "dishonest business practice[s]" under state consumer protection laws relating to eligibility for coverage of certain household items under the protection agreements. *See* Joint Exhibit 2, First Amended Complaint ¶¶ 1, 23-31, 41. The Class Action does not itself constitute a liability "for" a protection agreement, but at best, one *related to* the protection agreements and is therefore an Excluded Liability.[11]

14. Third, the Class Action was listed as a known litigation in Schedule 6.14 to the APA and is thus specifically included as "litigation" in the definition of Excluded Liabilities. If the parties had intended to make the Class Action an obligation assumed by Transform, they would have explicitly done so. To the extent Movants rely on testimony that neither Mr. Riecker

---

[11] In the *Class Representatives' Reply Memorandum of Law in Further Support of Motion for Relief from the Automatic Stay* [Docket No. 9470] (the "Movants' Reply"), Movants argue that the word "for" "has no special meaning." ¶ 19. Clearly, the word "for" has a unique meaning, and can be distinguished in relation to alternative phrases such as "arising out of" or "relating to". Movants fail to articulate any support for their argument that "for" should be read to have the same, broad meaning as phrases such as "arising out of" or "relating to", and in fact, cite to the same dictionary definition used in Transform's Objection. Objection ¶ 37.

nor Mr. Kamlani were aware of the Class Action at the time of negotiating the APA, such a line of argument would actually support Transform's position that it would never have assumed any pre-existing litigation whether known or unknown.[12] As detailed in the Motion, the Class Action was stayed on the eve of briefing on summary judgment; Transform would never have unwittingly assumed the liability for the ongoing defense of the Class Action.

## II.     THE TRANSFROM ENTITIES ARE DISTINCT FROM THE DEBTORS

15.     The Motion appears to treat Transform and the Debtors as the same entity because Transform continues portions of the Debtors' business. *See* Motion ¶ 33 ("Class Representatives seek relief from the automatic stay for the purpose of substituting in the Buyer as defendant in the Class Action, due to the Buyer's assumption of obligations and liabilities relating to Sears' MPA business."). This undermines the value-maximizing purpose of a free and clear sale under Section 363. *See Douglas v. Stamco*, 363 F. App'x 100, 102–03 (2d Cir. 2010). Failing to properly delineate between Transform and the Debtors with respect to the Class Action also runs contrary to the plain meaning of the APA.[13]

16.     Movants note that ESL Investments, Inc. was the controlling shareholder of the Debtors and, together with its principals and affiliates, owns the majority of the equity in Transform without any attempt at explaining how this fact could be relevant to the Motion. *See* Motion, 6 n.5. A free and clear sale under Section 363 does not impose successor liability on the purchaser regardless of whether that purchaser was an insider of the Debtors.[14] The ownership

---

[12]     Section 2.4 of the APA states that Transform shall not be deemed to assume any Liabilities "of any kind or nature, known, *unknown*, contingent or otherwise . . ." (emphasis added).

[13]     *See* Sale Order ¶ 19 (the sale of the Debtors' assets pursuant to the terms of the APA was "free and clear of all Claims against the Debtors and the Acquired Assets owned by the Debtors . . . in accordance with section 363(f) of the Bankruptcy Code."); APA § 2.1

[14]     *See* Sale Order ¶ R ("All Persons having Claims of any kind or nature whatsoever against the Debtors or the Acquired Assets shall be forever barred, estopped and permanently enjoined from creating, perfecting, pursuing,

8

of Transform is irrelevant to the question of whether Transform assumed liability for the Class Action as part of the Court-approved free and clear sale pursuant to the APA.

### III. THE PAROL EVIDENCE SUPPORTS THE TREATMENT OF THE CLASS ACTION AS AN EXCLUDED LIABILITY

17. While the plain text of the APA is clear, to the extent the Court finds any ambiguity as to the scope of Assumed and Excluded Liabilities,[15] the parol evidence confirms that the parties to the APA never intended for Transform to assume pre-existing litigation. The basis for Transform assuming the protection agreement obligations was as a means of maintaining customer support for Transform's ongoing business. Kamlani Decl. ¶¶ 5–7, 9, 11–12, 15–18; Riecker Decl. ¶ 12. The scope of the obligations that Transform assumed for the protection agreements was limited to the ongoing service obligation that would be required in order to fulfill those contracts. Riecker Deposition Tr. 20:15 – 21:14. This is consistent with the purpose of maintaining customer support for the business and does not support Movants' theory that Transform agreed to assume liability for the Class Action.

18. Mr. Riecker's and Mr. Kamlani's level of knowledge of the Class Action at the time they were involved in negotiating the APA is irrelevant to whether it was assumed by Transform. The Class Action was included in Schedule 6.14 and was thus a litigation known to the APA parties even if it was not explicitly discussed by two of the negotiators. It is evident from their testimony that the parties did not intend for Transform to take on any pre-existing litigation with respect to the protection agreements or otherwise. Kamlani Decl. ¶¶ 9, 11, 21-23;

---

enforcing, attaching, collecting, recovering, or asserting such Claims against the Buyer or any of its assets, property, affiliates, successors, assigns, or the Acquired Assets.").

[15]    For example, to the extent the Court may find an arguable ambiguity in the meaning of the word "for" in Section 2.3(e) and whether it encompasses Movants' deceptive business practices claims, it would be entitled to consider parol evidence.

9

Riecker Decl. ¶ 17; Allen Decl. ¶¶ 7-8.[16] Further, the $1.009 billion valuation of the protection agreements was based on an estimated calculation of outstanding liabilities for the protection agreements prepared by the Debtors at the time of the sale transaction, and did not account in any way for the liabilities asserted in the Class Action. Kamlani Decl. ¶¶ 20–23; Riecker Decl. ¶¶ 16–17; Allen Decl. ¶ 8; Loss Triangle Spreadsheet.  Due to the competitive bid process, Transform had every incentive to make its bid as attractive as possible.  To the extent Transform had intended to assume liability for the Class Action it would have included an estimate for the litigation and related defense costs.

19. Movants do not point to any parol evidence supporting their assertion that the parties intended to *include* the Class Action in the scope of Assumed Liabilities.[17] As discussed above, the APA was structured so that all liabilities were excluded unless expressly assumed by Transform, consistent with the free and clear sale.

## CONCLUSION

20. For the reasons stated above, Transform, together with its affiliates Transform SR Protection LLC and Transform SR LLC, respectfully request that the Court enter an order denying the relief requested in the Motion and grant such other and further relief that it deems just and appropriate.[18]

---

[16] Movants argue that such testimony is not probative, relying on the *Blankenship v. Alpha Appalachia Holdings*; however, in that case the court stated that the parties never discussed the meaning of the underlying agreement when it was proposed or executed, such that contemporaneous parol evidence demonstrating a shared understanding did not in fact exist. No. CV 10610-CB, 2015 WL 3408255, at *17 (Del. Ch. May 28, 2015).  Here there is ample evidence that the APA was negotiated at length and the parties shared the understanding that pre-existing litigation was an Excluded Liability.  *See* Kamlani Decl. ¶¶ 21-23; Riecker Decl. ¶ 17.

[17] Further, Movants have failed to adduce evidence that the Master Protection Agreements that form the form the basis of the claims alleged in the First Amended Complaint are within the scope of protection agreements implicated by Section 2.3(e).

[18] Even if the Court grants the relief requested in the Motion, Transform and its affiliates reserve all rights and defenses as to the merits of the claims and causes of action asserted in the Class Action, including any arguments on the application of Federal Rule of Civil Procedure 25(c).

Dated: May 6, 2021
       New York, New York

                                     CLEARY GOTTLIEB STEEN & HAMILTON LLP

By:   /s/ Luke A. Barefoot
       Sean A. O'Neal
       Luke A. Barefoot
       One Liberty Plaza
       New York, NY 10006
       Telephone: (212) 225-2000
       Fax: (212) 225-3999

*Attorneys for Transform Holdco LLC, Transform SR Protection LLC and Transform SR LLC*

11