**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION**, *et al.*, | : | |
| | : | **Case No. 18-23538 (RDD)** |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |
| | : | |

---------------------------------------------------------------x

## DEBTORS' OBJECTION TO (1) KOOLATRON CORPORATION'S MOTION TO COMPEL PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND (2) KOOLATRON'S ADMINISTRATIVE EXPENSE CLAIMS

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, LLC (None); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 130 West 42nd Street, 17th Floor, New York, NY 10036.

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), hereby object to (1) *Koolatron Corporation's Motion to Compel Payment of Reserved Funds Held Pursuant to the Administrative Expense Claims Consent Program and Any Additional Amounts Due and Owing* (ECF No. 9417) (the "**Motion**"), and (2) the claims asserted by Koolatron Corporation ("**Koolatron**") seeking priority pursuant to Bankruptcy Code section 503(b)(9) ("**Asserted 503(b)(9) Claim**").

## Preliminary Statement

1.      The Debtors have reconciled more than 3,970 claims and other requests for payment of administrative claims.   The Debtors have been able to allow more than 1,669 administrative expense claims totaling approximately $127 million and had to disallow more than $1.3 billion of claims wrongly asserting entitlement to priority status.  The Debtors have done so efficiently and largely on a consensual basis – through informal information sharing and bi-lateral negotiation or through uncontested omnibus objections to claims.[2]

2.      The Administrative Expense Claims Consent Program[3] (the "**Program**") worked when creditors engaged with the Debtors to facilitate their claims' reconciliation. Koolatron refused to engage.  Now, without responding to the Debtors' requests for information and, more importantly, without providing the Debtors or the Court with the requisite evidence to

---

[2] In addition, after contested litigation, the Court disallowed two claims filed by Wilmington Trust asserting $1.5 billion.

[3] As defined and detailed in the *Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors and (II) Granting Related Relief* (ECF No. 5370) (the "**Confirmation Order**").  Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Confirmation Order.

2

satisfy Koolatron's burden, Koolatron asks the Court to allow a $756,245.02 administrative expense claim – a claim *larger than 97% of the claims allowed through the Program*. The Court cannot do so. The Court must instead deny the Motion.

3.      Koolatron has not produced documentation sufficient to show what goods the Debtors purportedly received or when the Debtors actually received goods such that Koolatron would be entitled to its Asserted 503(b)(9) Claim. Koolatron failed to meet its burden, and, as case law makes clear, the Debtors therefore have none.

4.      Koolatron refused to provide the Debtors with basic information outside of formal litigation and discovery processes. Of course the Debtors could have taken one-sided discovery of Koolatron pursuant to Bankruptcy Rule 2004 prior to filing this objection. But debtors do not have the burden to establish creditors' claims – and it would be a waste of limited estate resources to do so.[4] The Court can and should reduce Koolatron's claim on a summary basis without additional cost or delay – as the Court would in many cases (including this one) where creditors fail to support their claims. Creditor recalcitrance in chapter 11 cases should not be rewarded. Koolatron cannot force the Debtors to incur the costs of taking or defending discovery prior to a sufficiency hearing on this objection.[5] And Koolatron should not be permitted to amend its claim or supplement its Motion with additional factual allegations now. *See, e.g.*, *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 n. 5 (2d Cir. 2006) (Sotomayor, J.) (Court "generally do not consider arguments that are raised for the first time in a reply brief.").

---

[4] That is especially so in this case, where the Debtors sold substantially all of their assets and transferred all of their employees prior to the Bar Date (with only certain employees providing temporary transition services to Debtors prior to May 4, 2019), and access to historical information can be challenging.

[5] *See* ECF No. 3014 ¶ 7(v)  ("Discovery with respect to a Contested Claim will not be permitted until either (a) the Court has held a Sufficiency Hearing and determined that the Contested Claim states a claim that could be allowed and should not be dismissed pursuant to Bankruptcy Rule 7012 or (b) the Debtors have served the relevant Claimant a Notice of Merits Hearing with respect to the Contested Claim").

WEIL:\97976653\1\73217.0004

## Certain Relevant Background

5.       Beginning on October 15, 2018 and continuing thereafter, each of the Debtors commenced with the Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

6.       On January 17 and 18, 2019, Sears, Roebuck and Co. and Kmart Corporation filed a schedule of liabilities listing Koolatron as a prepetition creditor owed $156,896.81.  ECF No. 1629, 1711.

7.       On November 26, 2018, Koolatron filed proofs of claim asserting the $756,245.02 Asserted 503(b)(9) Claim and $267,629.86 in general unsecured claims against Kmart Corporation, Sears, Kmart Holding Corporation, and Kmart.com LLC (claim numbers 5372, 5381, 5398, 5401).  On April 5, 2019, Koolatron filed an identical proof of claim against Sears, Reobuck and Co. (claim number 13934 and collectively with the prior claims, the "**Proofs of Claim**").  The only documentation attached to the Proofs of Claim is a 24-page Koolatron-created "Accounts Receivable Aging" report (the "**Aging Report**") listing 131 purported invoices in support of the Asserted 503(b)(9) Claim and amounts purportedly owed for each.  No invoices were provided.  A copy of the Aging Report, annotated by the Debtors, is attached hereto as **Exhibit A**.

8.       The deadline for properly filing prepetition claims against the Debtors, including those asserting claims under Bankruptcy Code section 503(b)(9), was April 10, 2019 (the "**Bar Date**").  ECF No. 2676 (the "**Bar Date Order**").  The Court's Bar Date Order clearly provided that proofs of claim must "include supporting documentation (if voluminous, attach a summary) or an explanation as to why documentation is not available."  *Id.* ¶ 6(d).  The Bar Date Order further clearly provided that proofs of claim "must conform substantially to the Claim Form or Official Bankruptcy Form No. 410."  *Id.* at ¶ 6(a).  The official form proof of claim and the one

approved by this Court pursuant to the Bar Date Order likewise required creditors to include supporting information. *See* Modified Official Form 410 ("Attach redacted copies of any documents that support the claim, such as promissory notes, purchaser orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements.").

9.     On October 15, 2019, this Court entered the Confirmation Order, which approved the Program. Koolatron filed four ballots (the "**Ballots**") to opt in to the Program, each in the amount asserted in the Proofs of Claim, copies of which are attached hereto as **Exhibit B**. The Ballots contain no allegation of fact, documentary evidence, or other support for the claims asserted. *See id.* The Confirmation Order provided no deadline by which the Debtors were required to object to Koolatron's Proofs of Claim or Ballot.

10.    In their administration of the Program, the Debtors attempted to reconcile the Ballots and Proofs of Claim with the Debtors' books and records. The Debtors were able to match 107 of the 131 lines of purported invoices on the Aging Report. The Debtors determined that 99 of those invoices were for goods received by the Debtors within the priority period pursuant to section 503(b)(9). But the total amount of those 99 invoices was only $28,235.89.[6] The remaining eight invoices, totaling $800.68, were for services provided by Koolatron and as such, are not entitled to priority. The Debtors also identified $10,153.45 in credits owed by Koolatron to the Debtors, which offset a substantial portion of the Debtors' priority liability. The Debtors further identified $14,821.52 owed to Koolatron for post-petition invoices. In total, the Debtors' liability to Koolatron for priority claims was limited to $32,903.96, which the Debtors offered Koolatron in connection with the Program.

---

[6] All invoices the Debtors were able to match are highlighted in yellow in the Aging Report.

WEIL:\97976653\1\73217.0004

11.    The Debtors could not identify 24 of the 131 lines of purported invoices on the Aging Report.  The Debtors observe that 91.5% of the total amount claimed by Koolatron purportedly arises out of three anomalously large invoices totaling $692,120, of which the Debtors have no record.[7]  Koolatron did not even list a purchase order and invoice number for two of the three, for which it has asserted a total of $522,623.75.

### The Motion Should Be Denied and Koolatron's Claims Disallowed to the Extent Inconsistent with the Debtors Books and Records

12.    Section 503(b) of the Bankruptcy Code provides, in pertinent part, that:

> After notice and a hearing, there shall be allowed administrative expenses …, including … the value of any goods received by the debtor within 20 days before the date of commencement of a case under [title 11] in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

11 U.S.C. § 503(b)(9).

13.    There is no question that a claimant asserting administrative expense priority bears the burden of establishing their entitlement to such priority.  *See*, *e.g., In re Bethlehem Steel Corp.*, 479 F.3d 167, 172 (2d Cir. 2007) ("The burden of proving entitlement to priority payment as an administrative expense . . . rests with the party requesting it."); *In re Drexel Burnham Lambert Grp. Inc.*, 134 B.R. 482, 489 (Bankr. S.D.N.Y. 1991) ("The burden of establishing entitlement to priority rests with the claimant and should only be granted under extraordinary circumstances, to wit, when the parties seeking priority have sustained their burden of demonstrating that their services are actual and necessary to preserve the estate.") (quotation omitted).

14.    There is also no question that statutory priorities under the Bankruptcy Code are to be construed and awarded narrowly and consistent with the intent of the Bankruptcy Code.

---

[7] These anomalously-large invoices are highlighted in red in the Aging Report.

WEIL:\97976653\1\73217.0004

Bankruptcy courts across the country, including this Court, regularly overlay, and rely on, this important principle of statutory construction in interpreting section 503 of the Bankruptcy Code and claimants' rights to an administrative expense claim. *See, e.g.*, *Howard Delivery Serv. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 667, 669 (2006) (noting the longstanding principle that administrative claims "must be tightly construed" to accomplish the Bankruptcy Code's objective of equal distribution to creditors); *In re Bayou Grp., LLC*, 431 B.R. 549, 558 (Bankr. S.D.N.Y. 2010) (emphasizing "the general rule that priorities must be narrowly construed in light of the presumption in bankruptcy cases that the debtor's limited resources will be equally distributed among all unsecured creditors"); *In re A.C.E. Elevator Co., Inc.*, 347 B.R. 473, 479 (Bankr. S.D.N.Y. 2006) ("Because the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, statutory priorities are narrowly construed.") (quoting *Tr. of Amalgamated Ins. Fund v. McFarlin's Inc.*, 789 F.2d 98, 100 (2d Cir. 1986)).

15. A proof of claim executed and filed in accordance with the Bankruptcy Rules does not, by itself, constitute *prima facie* evidence of the validity and amount of the claim, and a claimant must "set forth the facts necessary to support the claim" in order to enjoy such a presumption. *In re Marino*, 90 B.R. 25, 28 (Bankr D. Conn. 1988) (holding that claimant's proof of claim was not entitled to the presumption of *prima facie* validity because it did not set forth the necessary facts); *see also In re Aiolova*, 2013 WL 5818893 (Bankr. S.D.N.Y. Oct. 29, 2013) ("If a proof of claim is not supported by the requisite documentation, it is not presumed to be *prima facie* valid."); *In re Allegheny Int'l Inc.*, 954 F.2d 167, 173 (3d Cir. 1992); *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991). If a claimant does not provide the necessary facts, "the claim is not considered *prima facie* valid, and the burden remains with the claimant to establish its

7

validity." *In re Motors Liquidation Co.*, No. 09-50026, 2012 WL 10864205, at *4 (Bankr. S.D.NY. Aug. 6., 2012); *aff'd sub nom. Shah v. Motors Liquidation Co. GUC Tr.*, No. 12 CIV. 8783 (JPO), 2013 WL 12085091 (S.D.N.Y. June 3, 2013), *aff'd sub nom. In re Motors Liquidation Co.*, 566 F. App'x 87 (2d Cir. 2014).[8]

16.    Moreover, Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1).

17.    As has been discussed many times in this case, among other requirements, claim under section 503(b)(9) requires that goods be "received by the debtor" within 20 days of the petition date. *See, e.g.*, *In re OW Bunker Holding North America Inc.*, 607 B.R. 32, 43-44 (Bankr. D. Conn. 2019) ("'received by the debtor' in section 503(b)(9) is either: (i) physical possession of the goods by the debtor; or (ii) constructive possession, when a bailee of the debtor physically possesses the goods."); *In re Sears Holding Corporation*, Case No. 18-23538, Hr'g. Tr. at 75:25, 76:1-3 (RDD) (Bankr. S.D.N.Y. April 23, 2020) (noting that "the issue here is whether they were physically delivered to Sears or [bailee] or agent for Sears" in considering an omnibus objection for administrative expense claims asserted under section 503(b)(9) of the Bankruptcy Code). Without any evidence or documentation to show physical receipt of the goods by Debtors (or even an assertion of what goods were delivered on what dates), Koolatron's claims and Motion must fail. *See In re Richfield Equities, L.L.C.*, 556 B.R. 313, 318 (Bankr. E.D. Mich. 2016) (denying a claimant's section 503(b)(9) claim in part when supported only by "invoices [that] lack

---

[8] If a claim contains sufficient facts necessary to establish *prima facie* validity, courts then employ a burden-shifting framework in which the burden shifts to the debtors to refute at least one allegation essential to the claim. *See, e.g.*, *In re Residential Capital, LLC*, 15 Civ. 3248, 2016 WL 796860, at *9 (S.D.N.Y. 2016). To the extent the Court allows Koolatron to supplement their deficient claims with facts sufficient to shift the burden to Debtors, the Debtors reserve all rights to contest factual allegations in the Proofs of Claim or Ballots.

any identifiable signature" and contain "no evidence within the documents of the proof of claim that the [d]ebtors received the goods.").

18.    The Bar Date for Koolatron's ability to request payment on account of prepetition claims has passed.  Koolatron put no documentation in the record (not in the Proofs of Claim, not in the Ballots, and not in the Motion) sufficient to allege (much less demonstrate) that the Debtors received *any* particular goods within the statutory priority period for section 503(b)(9).  The Debtors independently found sufficient support to evidence delivery of $28,235.89 in goods within the priority period.  It found no evidence for the remaining $727,208.50 claimed in unmatched invoices.[9]

19.    The Koolatron-created Aging Report, the sole description or documentation offered by Koolatron, is insufficient to show any receipt of any particular, validly-ordered goods.  Without more, the Debtors and the Court cannot determine the basis for the claim, and the Debtors therefore dispute liability for the amounts claimed.  But even assuming, *arguendo*, the Debtors could be liable to Koolatron for the amounts claimed, the Debtors and the Court cannot determine from Koolatron's submissions whether the Debtors received particular goods within the statutory priority period.  The Debtors and the Court cannot tell whether the dates listed on the Aging Report are alleging the date of invoice (which could be before a shipment), the date of shipment (which could be significantly before actual receipt by the Debtors), the date of delivery (which could be significantly after invoice or shipment), or the date on which payment is due (which could be 90-or-more days after receipt by the Debtors).  Additionally, for the anomalously-high invoices, which

---

[9] For the avoidance of doubt, the Debtors do not agree Koolatron is entitled to an Administrative Expense Claim for $28,235.89.  The Debtors have $10,153.45 of credits they are entitled to offset.  The claim allowable pursuant to the Program is no more than $18,082.44.

account for over 66% of the Asserted 503(b)(9) Claim, Koolatron failed even to list purchase order and invoice numbers.

20.    The Debtors' repeated requests for Koolatron to provide additional documentation and consensually reconcile its claims went unanswered (including unreturned emails on June 9, June 29, July 6, July 13, and September 20, and unreturned calls on multiple occasions).  Koolatron knew before it filed its Motion that the Debtors disputed Koolatron's asserted claims.

21.    By Koolatron's choice, the time for considering new information has passed.  By filing its Motion, Koolatron has asked the Court to review and rule on only the information currently before the Court: the Motion, the Proofs of Claim and the Ballots.  By filing this objection, the Debtors request the same.  Based on the foregoing, the Court must deny the Motion and reduce the priority portions of the Proofs of Claim and Ballots by $727,208.50 to allow only $28,235.89.  The Debtors are not required to pay creditors between distributions, and any amounts owed will be paid to Koolatron at the Program distribution following entry of a final order granting this Objection.

*[Remainder of Page Left Intentionally Blank]*

WEIL:\97976653\1\73217.0004

WHEREFORE the Debtors respectfully request that the Motion be denied and Koolatron's Proofs of Claim and Ballots be reduced.

Dated: May 18, 2021
     New York, New York

                             */s  Garrett A. Fail*
                             WEIL, GOTSHAL & MANGES LLP
                             767 Fifth Avenue
                             New York, New York  10153
                             Telephone:  (212) 310-8000
                             Facsimile:  (212) 310-8007
                             Ray C. Schrock, P.C.
                             Jacqueline Marcus
                             Garrett A. Fail
                             Sunny Singh

                             *Attorneys for Debtors*
                             *and Debtors in Possession*

WEIL:\97976653\1\73217.0004

## Exhibit A

**Aging Report**

| ACCOUNT | | | | | | | | | | | |
|---------|---|---|---|---|---|---|---|---|---|---|---|
| SEARS KMART | | | | | | | | | | 503 (b)(9) | |

| DOCUMENT | PO/RMA# | DATE | REP | AMOUNT | PAID | BALANCE | CURRENT | 1-30 DAYS | 31-60 DAYS | 61-90 DAYS | 91+ DAYS |
|----------|---------|------|-----|--------|------|---------|---------|-----------|------------|------------|----------|
| SI-1136388 | 557070 | 9/25/2018 | NASA | $570.00 | $0.00 | $570.00 | $570.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5054952 | 279241073 | 9/25/2018 | bbrewer | $91.00 | $0.00 | $91.00 | $91.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5054953 | 279227405 | 9/25/2018 | bbrewer | $159.99 | $0.00 | $159.99 | $159.99 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5054955 | 279224543 | 9/25/2018 | bbrewer | $159.99 | $0.00 | $159.99 | $159.99 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5054956 | 279216890 | 9/25/2018 | bbrewer | $70.00 | $0.00 | $70.00 | $70.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5054957 | 279214613 | 9/25/2018 | bbrewer | $28.00 | $0.00 | $28.00 | $28.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5054958 | 279211580 | 9/25/2018 | bbrewer | $17.00 | $0.00 | $17.00 | $17.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5054959 | 279210821 | 9/25/2018 | bbrewer | $114.71 | $0.00 | $114.71 | $114.71 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5054960 | 279200168 | 9/25/2018 | bbrewer | $159.99 | $0.00 | $159.99 | $159.99 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-1136389 | 08292261346 | 9/25/2018 | NASA | $1,018.80 | $0.00 | $1,018.80 | $1,018.80 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-1136390 | 08273674037 | 9/25/2018 | NASA | $2,749.20 | $0.00 | $2,749.20 | $2,749.20 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055004 | 279355496 | 9/26/2018 | bbrewer | $98.00 | $0.00 | $98.00 | $98.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055005 | 279343727 | 9/26/2018 | bbrewer | $134.96 | $0.00 | $134.96 | $134.96 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055006 | 279340418 | 9/26/2018 | bbrewer | $159.99 | $0.00 | $159.99 | $159.99 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055007 | 279318104 | 9/26/2018 | bbrewer | $97.49 | $0.00 | $97.49 | $97.49 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055008 | 279306371 | 9/26/2018 | bbrewer | $31.49 | $0.00 | $31.49 | $31.49 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055035 | 279430127 | 9/27/2018 | bbrewer | $14.00 | $0.00 | $14.00 | $14.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055036 | 279503186 | 9/27/2018 | bbrewer | $17.00 | $0.00 | $17.00 | $17.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055037 | 279447404 | 9/27/2018 | bbrewer | $125.30 | $0.00 | $125.30 | $125.30 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055038 | 279435698 | 9/27/2018 | bbrewer | $159.99 | $0.00 | $159.99 | $159.99 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055103 | 279858842 | 9/28/2018 | bbrewer | $11.00 | $0.00 | $11.00 | $11.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055104 | 279854603 | 9/28/2018 | bbrewer | $159.99 | $0.00 | $159.99 | $159.99 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055105 | 279833714 | 9/28/2018 | bbrewer | $97.49 | $0.00 | $97.49 | $97.49 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055107 | 279801035 | 9/28/2018 | bbrewer | $159.99 | $0.00 | $159.99 | $159.99 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-1136630 | WKEND 09 22 18 | 9/30/2018 | NASA | $926.00 | $0.00 | $926.00 | $0.00 | $926.00 | $0.00 | $0.00 | $0.00 |
| SI-1136631 | WKEND 09 29 18 | 9/30/2018 | NASA | $1,155.00 | $0.00 | $1,155.00 | $0.00 | $1,155.00 | $0.00 | $0.00 | $0.00 |
| SI-1136626 | WK END SEP 22 2018 | 9/30/2018 | NASA | $3,709.50 | $0.00 | $3,709.50 | $0.00 | $3,709.50 | $0.00 | $0.00 | $0.00 |
| SI-1136627 | WK END SEP 29 2018 | 9/30/2018 | NASA | $4,029.40 | $0.00 | $4,029.40 | $0.00 | $4,029.40 | $0.00 | $0.00 | $0.00 |
| SI-1136531 | 08273675065 | 9/30/2018 | NASA | $504.00 | $0.00 | $504.00 | $504.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-1136532 | 08275305243 | 9/30/2018 | NASA | $1,238.42 | $0.00 | $1,238.42 | $1,238.42 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-1136533 | 08292262165 | 9/30/2018 | NASA | $744.68 | $0.00 | $744.68 | $744.68 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-1136534 | 08305226065 | 9/30/2018 | NASA | $390.72 | $0.00 | $390.72 | $390.72 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-1136535 | 08305225238 | 9/30/2018 | NASA | $6,022.80 | $0.00 | $6,022.80 | $6,022.80 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-1136536 | 08289239937 | 9/30/2018 | NASA | $5,264.40 | $0.00 | $5,264.40 | $5,264.40 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-1136539 | 08292263161 | 9/30/2018 | NASA | $736.00 | $0.00 | $736.00 | $736.00 | $0.00 | $0.00 | $0.00 | $0.00 |

1

**ACCOUNT**

SEARS KMART

| DOCUMENT | PO/RMA# | DATE | REP | AMOUNT | PAID | BALANCE | CURRENT | 1-30 DAYS | 31-60 DAYS | 61-90 DAYS | 91+ DAYS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SI-1136540 | 08275306291 | 9/30/2018 | NASA | $1,217.86 | $0.00 | $1,217.86 | $1,217.86 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-1136541 | 08287247911 | 9/30/2018 | NASA | $745.48 | $0.00 | $745.48 | $745.48 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055190 | 280186613 | 10/1/2018 | bbrewer | $14.00 | $0.00 | $14.00 | $14.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055191 | 279893594 | 10/1/2018 | bbrewer | $159.99 | $0.00 | $159.99 | $159.99 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055192 | 280204520 | 10/1/2018 | bbrewer | $159.99 | $0.00 | $159.99 | $159.99 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055193 | 280181624 | 10/1/2018 | bbrewer | $119.00 | $0.00 | $119.00 | $119.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055194 | 280179635 | 10/1/2018 | bbrewer | $97.49 | $0.00 | $97.49 | $97.49 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055195 | 280172249 | 10/1/2018 | bbrewer | $14.00 | $0.00 | $14.00 | $14.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055196 | 280065905 | 10/1/2018 | bbrewer | $18.90 | $0.00 | $18.90 | $18.90 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055197 | 280043426 | 10/1/2018 | bbrewer | $98.00 | $0.00 | $98.00 | $98.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055198 | 280040450 | 10/1/2018 | bbrewer | $97.49 | $0.00 | $97.49 | $97.49 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055199 | 280030193 | 10/1/2018 | bbrewer | $52.46 | $0.00 | $52.46 | $52.46 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055200 | 280029821 | 10/1/2018 | bbrewer | $52.46 | $0.00 | $52.46 | $52.46 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055201 | 279975389 | 10/1/2018 | bbrewer | $11.00 | $0.00 | $11.00 | $11.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055202 | 279942809 | 10/1/2018 | bbrewer | $114.71 | $0.00 | $114.71 | $114.71 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055203 | 279937028 | 10/1/2018 | bbrewer | $63.00 | $0.00 | $63.00 | $63.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055204 | 279930140 | 10/1/2018 | bbrewer | $14.00 | $0.00 | $14.00 | $14.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055205 | 279882608 | 10/1/2018 | bbrewer | $125.30 | $0.00 | $125.30 | $125.30 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055251 | 280286192 | 10/2/2018 | bbrewer | $31.49 | $0.00 | $31.49 | $31.49 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055252 | 280277903 | 10/2/2018 | bbrewer | $37.46 | $0.00 | $37.46 | $37.46 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055298 | 280387601 | 10/3/2018 | bbrewer | $42.00 | $0.00 | $42.00 | $42.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055300 | 280290722 | 10/3/2018 | bbrewer | $97.49 | $0.00 | $97.49 | $97.49 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055302 | 280362248 | 10/3/2018 | bbrewer | $11.00 | $0.00 | $11.00 | $11.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055305 | 280329737 | 10/3/2018 | bbrewer | $14.00 | $0.00 | $14.00 | $14.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055308 | 280291373 | 10/3/2018 | bbrewer | $14.00 | $0.00 | $14.00 | $14.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055310 | 280228523 | 10/3/2018 | bbrewer | $139.99 | $0.00 | $139.99 | $139.99 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055312 | 280052960 | 10/3/2018 | bbrewer | $70.00 | $0.00 | $70.00 | $70.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055313 | 279897827 | 10/3/2018 | bbrewer | $70.00 | $0.00 | $70.00 | $70.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055351 | 280525982 | 10/4/2018 | bbrewer | $159.99 | $0.00 | $159.99 | $159.99 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055352 | 280506020 | 10/4/2018 | bbrewer | $119.00 | $0.00 | $119.00 | $119.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055353 | 280504328 | 10/4/2018 | bbrewer | $14.00 | $0.00 | $14.00 | $14.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055354 | 280474658 | 10/4/2018 | bbrewer | $21.00 | $0.00 | $21.00 | $21.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055355 | 280447886 | 10/4/2018 | bbrewer | $159.99 | $0.00 | $159.99 | $159.99 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055356 | 280181414 | 10/4/2018 | bbrewer | $20.97 | $0.00 | $20.97 | $20.97 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055415 | 279313625 | 10/5/2018 | bbrewer | $351.98 | $0.00 | $351.98 | $351.98 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055530 | 280864058 | 10/9/2018 | bbrewer | $14.00 | $0.00 | $14.00 | $14.00 | $0.00 | $0.00 | $0.00 | $0.00 |

2

ACCOUNT
SEARS KMART

| DOCUMENT | PO/RMA# | DATE | REP | AMOUNT | PAID | BALANCE | CURRENT | 1-30 DAYS | 31-60 DAYS | 61-90 DAYS | 91+ DAYS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SI-5055531 | 280670588 | 10/9/2018 | bbrewer | $35.00 | $0.00 | $35.00 | $35.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055532 | 280579259 | 10/9/2018 | bbrewer | $42.00 | $0.00 | $42.00 | $42.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055504 | 280741622 | 10/9/2018 | bbrewer | $11.00 | $0.00 | $11.00 | $11.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055505 | 280741121 | 10/9/2018 | bbrewer | $90.99 | $0.00 | $90.99 | $90.99 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055506 | 281019936 | 10/9/2018 | bbrewer | $182.00 | $0.00 | $182.00 | $182.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055507 | 280992084 | 10/9/2018 | bbrewer | $35.00 | $0.00 | $35.00 | $35.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055508 | 280977387 | 10/9/2018 | bbrewer | $70.00 | $0.00 | $70.00 | $70.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055509 | 280949175 | 10/9/2018 | bbrewer | $18.90 | $0.00 | $18.90 | $18.90 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055510 | 280934586 | 10/9/2018 | bbrewer | $14.00 | $0.00 | $14.00 | $14.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055511 | 280929750 | 10/9/2018 | bbrewer | $112.46 | $0.00 | $112.46 | $112.46 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055512 | 280929585 | 10/9/2018 | bbrewer | $18.90 | $0.00 | $18.90 | $18.90 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055513 | 280917806 | 10/9/2018 | bbrewer | $14.00 | $0.00 | $14.00 | $14.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055514 | 280897793 | 10/9/2018 | bbrewer | $182.00 | $0.00 | $182.00 | $182.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055515 | 280842110 | 10/9/2018 | bbrewer | $97.49 | $0.00 | $97.49 | $97.49 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055516 | 280842011 | 10/9/2018 | bbrewer | $159.99 | $0.00 | $159.99 | $159.99 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055517 | 280824500 | 10/9/2018 | bbrewer | $37.46 | $0.00 | $37.46 | $37.46 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055518 | 280815959 | 10/9/2018 | bbrewer | $35.00 | $0.00 | $35.00 | $35.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055519 | 280815815 | 10/9/2018 | bbrewer | $14.00 | $0.00 | $14.00 | $14.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055520 | 280802063 | 10/9/2018 | bbrewer | $11.00 | $0.00 | $11.00 | $11.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055521 | 280762115 | 10/9/2018 | bbrewer | $159.99 | $0.00 | $159.99 | $159.99 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055522 | 280729691 | 10/9/2018 | bbrewer | $37.46 | $0.00 | $37.46 | $37.46 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055523 | 280716638 | 10/9/2018 | bbrewer | $28.00 | $0.00 | $28.00 | $28.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055524 | 280693067 | 10/9/2018 | bbrewer | $159.99 | $0.00 | $159.99 | $159.99 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055525 | 280672262 | 10/9/2018 | bbrewer | $14.00 | $0.00 | $14.00 | $14.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055526 | 280657787 | 10/9/2018 | bbrewer | $11.00 | $0.00 | $11.00 | $11.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055527 | 280574312 | 10/9/2018 | bbrewer | $159.99 | $0.00 | $159.99 | $159.99 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055528 | 280566827 | 10/9/2018 | bbrewer | $159.99 | $0.00 | $159.99 | $159.99 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055529 | 280537631 | 10/9/2018 | bbrewer | $44.96 | $0.00 | $44.96 | $44.96 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-1136756 | 08273677678 | 10/9/2018 | NASA | $1,164.50 | $0.00 | $1,164.50 | $1,164.50 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-1136750 | 08287246910 | 10/9/2018 | NASA | $1,755.26 | $0.00 | $1,755.26 | $1,755.26 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-1136751 | 08273677658 | 10/9/2018 | NASA | $507.84 | $0.00 | $507.84 | $507.84 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-1136752 | 08275307520 | 10/9/2018 | NASA | $715.18 | $0.00 | $715.18 | $715.18 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-1136753 | 08287249086 | 10/9/2018 | NASA | $919.90 | $0.00 | $919.90 | $919.90 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-1136754 | 08292264315 | 10/9/2018 | NASA | $724.54 | $0.00 | $724.54 | $724.54 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-1136755 | 08305228144 | 10/9/2018 | NASA | $407.90 | $0.00 | $407.90 | $407.90 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-1136757 | 08275309063 | 10/9/2018 | NASA | $973.10 | $0.00 | $973.10 | $973.10 | $0.00 | $0.00 | $0.00 | $0.00 |

3

**ACCOUNT**

SEARS KMART

| DOCUMENT | PO/RMA# | DATE | REP | AMOUNT | PAID | BALANCE | CURRENT | 1-30 DAYS | 31-60 DAYS | 61-90 DAYS | 91+ DAYS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SI-1136758 | 08287250559 | 10/9/2018 | NASA | $1,106.90 | $0.00 | $1,106.90 | $1,106.90 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-1136759 | 08292265758 | 10/9/2018 | NASA | $866.78 | $0.00 | $866.78 | $866.78 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-1136760 | 08305229568 | 10/9/2018 | NASA | $448.88 | $0.00 | $448.88 | $448.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055590 | 281325387 | 10/10/2018 | bbrewer | $44.96 | $0.00 | $44.96 | $44.96 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055591 | 281100318 | 10/10/2018 | bbrewer | $17.00 | $0.00 | $17.00 | $17.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055592 | 280393055 | 10/10/2018 | bbrewer | $175.99 | $0.00 | $175.99 | $175.99 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055593 | 281316831 | 10/10/2018 | bbrewer | $11.00 | $0.00 | $11.00 | $11.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055594 | 281309814 | 10/10/2018 | bbrewer | $44.96 | $0.00 | $44.96 | $44.96 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055595 | 281301714 | 10/10/2018 | bbrewer | $37.46 | $0.00 | $37.46 | $37.46 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055596 | 281185530 | 10/10/2018 | bbrewer | $159.99 | $0.00 | $159.99 | $159.99 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055597 | 281129922 | 10/10/2018 | bbrewer | $42.00 | $0.00 | $42.00 | $42.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055598 | 281085351 | 10/10/2018 | bbrewer | $70.00 | $0.00 | $70.00 | $70.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055599 | 281073390 | 10/10/2018 | bbrewer | $159.99 | $0.00 | $159.99 | $159.99 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-5055600 | 281058348 | 10/10/2018 | bbrewer | $159.99 | $0.00 | $159.99 | $159.99 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-1136989 | 08273678466 | 10/12/2018 | NASA | $169,496.25 | $0.00 | $169,496.25 | $169,496.25 | $0.00 | $0.00 | $0.00 | $0.00 |
| SZ-0925-1014 | SEARS ZERO BOOKED ERROR | 10/15/2018 | | $1,560.00 | $0.00 | $1,560.00 | $1,560.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-INVS2018 | INVENTORY 10/13/2018 | 10/15/2018 | NASA | $69,302.00 | $0.00 | $69,302.00 | $69,302.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-INVK2018 | INVENTORY 10/13/2018 | 10/15/2018 | NASA | $453,321.75 | $0.00 | $453,321.75 | $453,321.75 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-1137588 | WKEND 10 06 18 | 10/24/2018 | NASA | $630.00 | $0.00 | $630.00 | $630.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-1137593 | WKEND 10 13 18 | 10/24/2018 | NASA | $397.00 | $0.00 | $397.00 | $397.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-1137599 | WKEND 10 20 18 | 10/24/2018 | NASA | $576.00 | $0.00 | $576.00 | $576.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-1137440 | WK END OCT 06 2018 | 10/24/2018 | NASA | $4,099.35 | $0.00 | $4,099.35 | $4,099.35 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-1137441 | WK END OCT 13 2018 | 10/24/2018 | NASA | $4,397.30 | $0.00 | $4,397.30 | $4,397.30 | $0.00 | $0.00 | $0.00 | $0.00 |
| SI-1137442 | WK END OCT 20 2018 | 10/24/2018 | NASA | $4,304.95 | $0.00 | $4,304.95 | $4,304.95 | $0.00 | $0.00 | $0.00 | $0.00 |
| **TOTALS FOR SEARS KMART** | | | | $756,245.07 | $0.00 | **$756,245.07** | $746,425.17 | $9,819.90 | $0.00 | $0.00 | $0.00 |

4

## **Exhibit B**

### **Ballots**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------x
                                                    :
**In re**                                           :         **Chapter 11**
                                                    :
**SEARS HOLDINGS CORPORATION**, *et al.*,           :         **Case No. 18-23538 (RDD)**
                                                    :
                  **Debtors.**[1]                   :         **(Jointly Administered)**
                                                    :
--------------------------------------------------------------x

NOTICE OF
**(I) BALLOT TO OPT-IN TO ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM AND**
 **(II) BALLOT TO OPT-OUT OF ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE
COMPLETING THE (I) OPT-IN BALLOT ATTACHED HERETO AS EXHIBIT A OR
(II) OPT-OUT BALLOT ATTACHED HERETO AS EXHIBIT B.**

**IF YOU DO NOT TAKE ANY ACTION, YOU WILL BE DEEMED TO BE BOUND BY THE
ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, BUT NOT ENTITLED TO THE
BENEFITS THAT WILL BE PROVIDED TO HOLDERS OF ADMINSTRATIVE EXPENSE CLAIMS
WHO TIMELY OPT IN TO THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, AS
DESCRIBED BELOW.**

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order Directing Joint Administration of Related Chapter 11 Cases* (ECF No. 118).  The location of the Debtors' service address is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

---

**IN ORDER FOR YOUR OPT-IN BALLOT OR OPT-OUT BALLOT TO BE EFFECTIVE,
THE APPLICABLE BALLOT MUST BE ACTUALLY RECEIVED BY
NOVEMBER 18, 2019,[2] AT 4:00 P.M. (PREVAILING EASTERN TIME)
(THE "OPT-IN/OPT-OUT DEADLINE").**

FAILURE TO OPT-IN TO THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM
BY COMPLETING AND TIMELY SUBMITTING AN OPT-IN BALLOT MEANS YOU WILL NOT BE
ENTITLED PARTICIPATE IN TO THE INITIAL DISTRIBUTION (AS DEFINED HEREIN).

FAILURE TO OPT-OUT OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM
BY COMPLETING AND TIMELY SUBMITTING AN OPT-OUT BALLOT WILL
BIND YOU TO THE TERMS OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM.

---

On October 15, 2019, the Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") entered an order confirming the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors* [ECF No. 5293] (the "**Plan**"),[3] approving, among other things, a proposed consent program for holders of Administrative Expense Claims (the "**Administrative Expense Claims Consent Program**") by and among the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), the Creditors' Committee and the Ad Hoc Vendor Group[4] [ECF No. 5370] (the "**Confirmation Order**").[5]

You are receiving the opt-in ballot (the "**Opt-In Ballot**"), attached hereto as **Exhibit A**, and the opt-out ballot (the "**Opt-Out Ballot**" and together with the Opt-In Ballot, the "**Election Ballots**"), attached hereto as **Exhibit B**, because, as a holder of an Administrative Expense Claim,[6] you are entitled to opt-in to or opt-out of the Administrative Expense Claims Consent Program.

**If you do not take any action, you will be deemed to have opted in and will be bound by the Administrative Expense Claims Consent Program, but not entitled to any benefits that will be provided to holders of Administrative Expense Claims who affirmatively opt-in to the Administrative Expense Claims Consent Program prior to the Opt-In/Opt-Out Deadline, namely, participation in an initial distribution of $21 million on or about December 1, 2019 to all holders of Administrative Expense Claims who opt-in to the Administrative Expense Claims Consent Program.**

All Holders of Administrative Expense Claims (other than the Ad Hoc Vendor Group that is deemed to have opted-in) have an option to opt-in to or opt-out of the Administrative Expense Claims Consent Program and releases contained therein. **The Creditors' Committee and the Debtors recommend that you _affirmatively opt-in_ to and do _not_ opt-out the Administrative Expense Claims Consent Program.**

---

[2] Thirty-three (33) days after service of this notice.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Confirmation Order or the Plan.

[4] The "**Ad Hoc Vendor Group**" means collectively, Whitebox Asymmetric Partners, LP, Whitebox Multi-Strategy Partners, LP, Hain Capital Investors Master Fund, Ltd., and Cherokee Debt Acquisition, LLC.

[5] Copies of the Plan, Confirmation Order, and the Administrative Expense Claims Consent Program Term Sheet may be accessed free of charge by visiting the website maintained by the Debtors' agent, Prime Clerk, LLC (the "**Claims and Noticing Agent**") at https://restructuring.primeclerk.com/sears.

[6] Specifically, you are receiving the Election Ballots because either (i) the Debtors believe you may be a Holder of an Administrative Expense Claim as of August 6, 2019 or (ii) you filed a proof of Administrative Expense Claim, filed a motion seeking allowance of an Administrative Expense Claim, or have otherwise asserted an Administrative Expense Claim in these Chapter 11 Cases.

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMHOLDERS WHO AFFIRMATIVELY OPT-IN

All holders of Allowed Administrative Expense Claims that affirmatively opt-in (the "**Opt-In Settled Admin Claims**") to the Administrative Expense Claims Consent Program prior to the Opt-In/Opt-Out Deadline shall receive, among other things:[7]

- Their pro rata share of $21 million ("**Initial Cash Pool**"), on or about December 1, 2019 (the percentage recovery, the "**Initial Recovery**");

- total recovery capped at 75% of the Allowed Administrative Expense Claim;

- such $21 million shall only be available to holders of Opt-In Settled Admin Claims who consensually agree with the Debtors to the Allowed amount of the Opt-In Settled Admin Claims;

- consensual reconciliation of the Allowed amount of Opt-In Settled Admin Claims (including on account of 503(b)(9) and 503(b)(1) issues regarding inducement, date of receipt, port of origin, etc., and any exposure on account of preference actions), to be completed within 30 days from the date of receipt of the Opt-In Ballot (the "**Expedited Reconciliation**");

- to the extent the Debtors, the Creditors' Committee, and the holder of the Opt-In Settled Admin Claim are unable to consensually resolve the Allowed amount, such resolution shall be subject to reconciliation on an agreed-upon schedule as reasonably agreed to by the Debtors, the Creditors' Committee, and the applicable holder of an Opt-In Settled Admin Claim;

- for the avoidance of doubt, any waiver or settlement of any preference action shall be considered on a case-by-case basis; and

- holders who do not agree with the Debtors and the Creditors' Committee on the Allowed amount of Opt-In Settled Admin Claims shall be deemed to hold a Non Opt-Out Settled Admin Claim.

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMHOLDERS WHO NEITHER OPT-IN NOR OPT-OUT

All Holders of an Allowed Administrative Expense Claim against the Debtors who neither (i) opt-in to the Administrative Expense Claims Consent Program nor (ii) opt-out of the Administrative Expense Claims Consent Program prior to the Opt-In/Opt-Out Deadline (the "**Non Opt-Out Settled Admin Claims**," and together with the Opt-In Settled Admin Claims, the "**Settled Administrative Expense Claims**") shall receive, among other things:

- its pro rata share of the Second Distribution, which will be shared only by other holders of Non Opt-Out Settled Admin Claims until they have received a percentage of distribution on their Non Opt-Out Settled Admin Claims that is equal to the Initial Recovery provided to holders of Opt-In Settled Claims;

- total recovery capped at 80% of the Allowed Administrative Expense Claim (together with the Initial Recovery, the "**Settled Admin Expense Claims Recovery**");

- Expedited Reconciliation to be completed within 30 days from the Opt-In/Opt-Out Deadline;

- to the extent the Debtors, the Creditors' Committee, and the holder of the Non Opt-Out Settled Admin Claim are unable to consensually resolve the Allowed amount, such resolution shall be subject to reconciliation on an agreed-upon schedule as reasonably agreed to by the Debtors, the Creditors' Committee, and the applicable holder of a Non Opt-Out Settled Admin Claim; and

- any waiver or settlement of any preference action shall be considered on a case-by-case basis.

**All holders of Administrative Expense Claims who do not opt out of the Administrative Expense Claims Consent Program** will be deemed to be satisfied in full on account of such claim once they have received payment in cash equal to (i) 75% of the applicable Allowed Administrative Expense Claim on account of Opt-In Settled Admin

---

[7] The following is an illustrative summary of the benefits of the Administrative Expense Claims Consent Program and is qualified in its entirety by reference to the applicable provisions in the Confirmation Order.

Claims, and (ii) 80% of the applicable Allowed Administrative Expense Claim on account of Non Opt-Out Settled Admin Claims.  Any Distributions made on account of Settled Administrative Expense Claims shall not be subject to disgorgement, including without limitation, upon any conversion or dismissal of the Chapter 11 Cases.  And upon entry of the Confirmation Order, all Settled Administrative Expense Claims shall be Allowed against the Debtors in these Chapter 11 Cases on a consolidated basis, or upon any conversion or dismissal of the Chapter 11 Cases.

**TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMHOLDERS WHO OPT-OUT**

If you **opt out of the Administrative Expense Claims Consent Program** prior to the Opt-In/Opt-Out Deadline, you will retain the right to receive payment of the Allowed 100% of your Administrative Expense Claim, but payment of your Administrative Expense Claim shall occur on the latest of (i) the Effective Date, (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim is Allowed, and (iii) the next Distribution Date after such Administrative Expense Claim is Allowed.  Holders of opt-out Claims will not be entitled to participate in the Initial Distribution, Second Distribution, or any further distribution until the Plan has become effective or the Settled Administrative Expense Claims have been satisfied.

**ADDITIONAL INFORMATION**

Pursuant to the Administrative Expense Claims Consent Program, holders bound by the Administrative Expense Claims Consent Program shall be paid in the following order of priority:  (1) Holders of Opt-In Settled Admin Claims of their pro rata share of the Initial Cash Pool; (2) Holders of Non Opt-Out Settled Admin Claims of their pro rata share up to a percentage recovery equal to the Initial Recovery; and (3) all Holders bound by the Administrative Expense Claims Consent Program of the remaining unpaid amount of their Allowed Administrative Expense Claims up to the Settled Admin Expense Claims Recovery.

Each Holder of a Settled Administrative Expense Claim also agrees (1) to support the Plan; and (2) that acceptance of and consent to the Administrative Expense Claims Consent Program will be deemed consent to the Plan, acceptance of the treatment under the Plan in satisfaction of section 1129(a)(9) of the Bankruptcy Code, and agreement to provides the releases included in the Administrative Expense Claims Consent Program.

**Treatment of Holders of Administrative Expense Claims
Under Administrative Expense Claims Consent Program**

|  | Opt-In Settled Admin Claims | Non Opt-Out Settled Admin Claims | Opt-Out Administrative Expense Claims |
|---|---|---|---|
| **Maximum Recovery on Account of Allowed Administrative Expense Claim** | 75% of Allowed Amount | 80% of Allowed Amount | 100% of Allowed Amount |
| **Participates in Distribution of $21 million Initial Cash Pool on or about December 1, 2019** | Yes | No | No |
| **Participates in Second Distribution** | No[8] | Yes | No |
| **Distribution on the Later of (i) the Effective Date, (ii) 30 days after Allowance of the Claim, and (iii) the next Distribution Date after Allowance of the Claim** | N/A | N/A | Yes |

---

[8] To the extent there are any amounts remaining for distribution after the Non Opt-out Settled Admin Claims have received the percentage recovery equal to the Initial Recovery, the Opt-In Settled Admin Claims shall share pro rata in such excess with the Non Opt-Out Settled Admin Claims.

4

| Claims Reconciliation to occur | Within 30 days of receipt of Opt-In Ballot | Within 30 days after Opt-In/Opt-Out Deadline | In ordinary course |
|---|---|---|---|

## INSTRUCTION FOR OPTING-IN OR OPTING-OUT

In order to **opt-in** to or **opt-out** of the Administrative Expense Claims Consent Program, you must complete, execute, and submit your Opt-In Ballot or Opt-Out Ballot to the Claims and Noticing Agent so that your Opt-In Ballot or Opt-Out Ballot is actually received by the Claims and Noticing Agent on or before the Opt-In/Opt-Out Deadline, which is **November 18, 2019, at 4:00 p.m.**, prevailing Eastern Time.

**You are strongly encouraged to review the Administrative Expense Claims Consent Program Term Sheet and the Plan before you make an election.  You may wish to seek legal advice concerning the Administrative Expense Claims Consent Program and the Election Ballots.**

**Acceptable Methods to Complete and Submit Your Election Ballots.**  You may elect to opt-in to or opt-out of the Administrative Expense Claims Consent Program by completing and submitting (i) an electronic Opt-In Ballot or Opt-Out Ballot through the dedicated, online portal maintained by the Claims and Noticing Agent ("**E-Ballot**") or (ii) one of the paper-copy Election Ballots (the "**Paper Election Ballots**").  In either case (E-Ballot or Paper Election Ballots), you must submit your Opt-In Ballot or Opt-Out Ballot to the Claims and Noticing Agent so that it is actually received by the Claims and Noticing Agent on or before the Opt-In/Opt-Out Deadlines.

## CERTAIN RISK FACTORS TO BE CONSIDERED

### 1.    Risks Related to Debtors' Ability to Make Distributions

#### (a)    Debtors' Assets Available for Distributions

As described in greater detail in the Griffith Declaration, Murphy Declaration, and Transier Declaration,[9] the Debtors' Assets as of the September 18, 2019 include approximately $173.5 million comprised of (i) approximately $50.1 million in cash on hand, (ii) $33.4 million on account of other Assets to be monetized, and (iii) approximately $97 million owed by Transform for the assumptions of 503(b)(9) Claims[10] (the "**Additional Asset Proceeds**"):

| Sources | | |
|---|---|---|
| Cash on Hand at 9/18/19 | $ | 50.1 |
| Calder Net Proceeds | | 10.0 |
| Real Estate Proceeds | | 13.1 |
| De Minimis Assets | | 5.3 |
| 2017 EDA Funds | | 5.0 |
| Transform 503(b)(9) Obligations | | 90.0 |
| **Total Sources** | **$** | **173.5** |

**In addition**, the Debtors believe they will receive significant recoveries from the proceeds of certain valuable litigation assets, including avoidance action arising under section 547 of the Bankruptcy Code or any comparable "preference" action arising under applicable non-bankruptcy law (collectively, the "**Preference Actions**"), certain

---

[9] *Declaration of Brian J. Griffith in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Liquidation of Sears Holdings Corporation and its Affiliated Debtors* (ECF No. 5148) (the "**Griffith Declaration**"), *Declaration of William Murphy in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Liquidation of Sears Holdings Corporation and its Affiliated Debtors* (ECF No. 5149) (the "**Murphy Declaration**"), *Declaration of William L. Transier in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Liquidation of Sears Holdings Corporation and its Affiliated Debtors* (ECF No. 5146) (the "**Transier Declaration**").

[10] The Debtors believe that pursuant to section 2.3(k)(ix) of the Asset Purchase Agreement, Transform is obligated to assume approximately $97 million on account of 503(b)(9) Claims.  The $90 million reflected herein ties to the $90 million of estimated 503(b)(9) Claims; to the extent the 503(b)(9) Claims are in excess of $90 million, Transform shall be liable to assume up to $97 million on account of 503(b)(9) Claims pursuant to the Asset Purchase Agreement.  Transform disputes that it owes such amounts to the Debtors.

prepetition related party transaction claims against ESL Investments, Inc. and its affiliates ("**ESL**") and other parties, and potential settlements with insurers with respect to claims against the D&O Policy (together the "**Litigation Proceeds**"), although there can be no assurance of any recovery:

- **Preference Actions**. The Debtors estimate that they will receive at least approximately $100 million in recoveries from Preference Actions out of an excess of $1.345 billion of gross total transfers in the preference window, which is consistent with comparable transactions where the average range of recoveries is from 11.4% if the gross total transfers pursued or, alternatively 23.7% of those transfers, net of subsequent new value. *See* Griffith Decl., ¶¶ 64-70.

- **ESL Litigation**. The Debtors' Restructuring Subcommittee and the Creditors' Committee both have investigated the prepetition related party transaction claims and concluded that such claims are meritorious. On April 17, 2019 the Restructuring Subcommittee, on behalf of certain of the Debtors, filed an adversary complaint against ESL Investments, Inc., its affiliates, various third parties, and certain of the Debtors' directors and officers (ECF No. 3278) (the "**Subcommittee Adversary Complaint**"), seeking over $2 billion in damages arising from certain prepetition related party transactions. *See* Transier Decl., ¶¶ 20-27. As of the date hereof, the Court has not heard any arguments or considered any evidence in connection with the Subcommittee Adversary Complaint. Current and prospective defendants dispute the validity of Claims asserted in the Subcommittee Adversary Complaint, and there is no assurance of any recovery.

- **D&O Insurance**. The Debtors believe they may be able to receive significant recoveries against available D&O Policies on account of Preserved Causes of Action against the Specified Directors and Officers. The Debtors believe that there is at least approximately $150 million of available directors and officers liability insurance that provides a source of recovery to the Debtor plaintiffs in the Subcommittee Adversary Complaint against parties (in their capacity as directors and/or officers) who are covered by such insurance. Certain defendants (such as ESL, Lampert and the Seritage parties) in the Subcommittee Adversary Complaint may also be liable for sums separate and apart from any available insurance coverage. *See* Transier Decl., ¶ 28. Certain insurers have disclaimed coverage under certain of the D&O Policies.

There can be no assurance that the Debtors will be able to successfully monetize their Assets in the projected amounts or when such Assets will be monetized. There is a risk that the Net Proceeds of Total Assets, including the Litigation Proceeds, may be significantly less than projected, which, in turn, could cause the amount and timing of Distributions to adversely change substantially. Further, unanticipated events and circumstances may affect the ultimate recoveries.

### (b)    Debtors' Estimate of Outstanding Claims on the Effective Date

The Debtors and their advisors have conducted an extensive analysis to estimate the Debtors' outstanding Claims pool and are continuing to review and analyze Claims. The Debtors have filed and intend to continue to file objections to Claims. In the aggregate, the Debtors believe that the sources above will be enough to satisfy the Debtors' estimate of outstanding Claims by the Effective Date:

| Uses | Low Claims | High Claims |
|---|---|---|
| Liquidating Trust funding | $ (25.0) | $ (25.0) |
| Remaining estate professional fees | (9.0) | (9.0) |
| 503(b)(9) | (90.0) | (155.0) |
| Other Admin Claims | (50.0) | (50.0) |
| Secured | (18.0) | (18.0) |
| Priority Tax | (15.0) | (18.0) |
| Priority Non-Tax | (3.0) | (3.0) |
| **Total Uses** | **$ (210.0)** | **$ (278.0)** |
| | | |
| **Total Potential Shortfall (without Litigation Proceeds)** | **$ (36.5)** | **$ (104.5)** |

But, there can be no assurance that the estimated Allowed amount of Claims will not be significantly more than projected, which, in turn, could cause the total recovery on Administrative Expense Claims to be lower. Some assumptions may not materialize, and unanticipated events and circumstances may affect the ultimate results. Therefore, the actual amount of Allowed Claims may vary from the Debtors' feasibility analysis, and the variation may be material.

(c)    **Distribution Funding Sources**

The Initial Cash Pool, the Second Distribution, additional pre-Effective Date distributions to Settled Administrative Expense Claims, and post-Effective Date Distributions to Opt-Out Claims, will be funded from the following sources, as follows:

| | Within three (3) Business Days of Entry of the Confirmation Order[11] | Post-Confirmation Date, Pre-Effective Date | Post-Effective Date |
|---|---|---|---|
| **Initial Cash Pool ($21 million) for the Initial Distribution to Opt-In Settled Admin Claims only** | $16 million funded from: (i) unrestricted cash on hand and (ii) a minimum of $3 million from the Carve-Out Account | $5 million from Additional Asset Proceeds *and/or* Litigation Proceeds (to occur prior to the Initial Distribution) | N/A |
| **Second Distribution to Non Opt-Out Settled Admin Claims[12]** | N/A | Subject to the Minimum Conditions,[13] from Additional Asset Proceeds *and/or* Litigation Proceeds | N/A |
| **Further Distribution(s) to Settled Admin Claims** | N/A | Subject to the Second Distribution, from Additional Asset Proceeds *and/or* Litigation Proceeds | N/A |
| **Distributions to Opt-Out Claims** | N/A | N/A | From Additional Asset Proceeds *and/or* Litigation Proceeds |

---

[11] Within three (3) Business Days of entry of the Confirmation Order, an additional (i) $15 million from cash on hand will be placed into the segregated Litigation Funding Account for funding of the litigation associated with the Jointly Asserted Causes of Action (the "**Litigation Funding**") and (ii) $5 million will be placed into the segregated Cash Reserve Account for post-Confirmation estate costs including, without limitation, additional professional fees of the Debtors' and the Creditors' Committee not included in the Carve-Out Account as of the entry of the Confirmation Order (the "**Cash Reserve**").

[12] To the extent there are any amounts remaining for distribution after the Non Opt-out Settled Admin Claims have received the percentage recovery equal to the Initial Recovery, the Opt-In Settled Admin Claims shall share pro rata in such excess with the Non Opt-Out Settled Admin Claims.

[13] The Second Distribution shall not occur until each of the until each of the following conditions is met: (i) a total of $25 million has been funded into the Litigation Funding Account in the aggregate, (ii) there has been a funding of $10 million in the aggregate in the Cash Reserve Account and (iii) the Segregated Account has an additional $10 million in cash (together, the "**Minimum Conditions**").

**2.      Risk of Non-Occurrence of Effective Date**

Although the Debtors believe that the Effective Date will occur soon after the Confirmation Date, there can be no assurance as to the timing of the Effective Date.  If the conditions precedent to the Effective Date set forth in the Plan have not occurred or have not been waived as set forth in Article X of the Plan or the Debtors are unable to pay their obligations as required under section 1129(a)(9) of the Bankruptcy Code, then the Confirmation Order may be vacated.  Any Distributions made on account of Settled Administrative Expense Claims shall not be subject to disgorgement, including without limitation, upon any conversion or dismissal of the Chapter 11 Cases.

**3.      Risks Related to the Causes of Action**

There is no guarantee as to the success of pursuing any Cause of Action.  The success of the Debtors and the Creditors' Committee or Liquidating Trust in pursuing any Cause of Action, as well as the expenses incurred in investigating and prosecuting the Causes of Action, may materially affect the recoveries for the holders of Allowed Claims.

**4.      No Legal or Tax Advice Is Provided by this Disclosure Statement**

The contents of this notice should not be construed as legal, business, or tax advice.  Each holder of a Claim should consult their own legal counsel and accountant as to legal, tax, and other matters concerning their Claim.  This notice may not be relied upon for any purpose other than to determine how to elect how to be treated under the Administrative Expense Claims Consent Program.

**5.      No Admission Made**

Nothing contained herein or in the Plan shall constitute an admission of, or shall be deemed evidence of, the tax or other legal effects of the Plan or Administrative Expense Claims Consent Program on the Debtors or holders of Claims or Interests.

For additional risk factors and considerations, including the position of Transform and/or ESL Parties, please review section VIII.A of the Disclosure Statement.  Should you wish to obtain a copy of the Disclosure Statement, Plan, Confirmation Order, the Administrative Expense Claims Consent Program Term Sheet, or any other documents in these Chapter 11 Cases, you should contact the Debtors' Claims and Noticing Agent, Prime Clerk LLC by: (a) visiting the Debtors' restructuring website at: https://restructuring.primeclerk.com/sears; (b) writing to Sears Admin. Claims Consent Prgm Ballot Processing, c/o Prime Clerk LLC, 850 Third Avenue, Suite 412, Brooklyn, New York 11232; and/or (c) emailing **searsinfo@primeclerk.com**.  You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.vaeb.uscourts.gov.

**<u>EXHIBIT A</u>**

**OPT-IN BALLOT**

**PLEASE FOLLOW THESE INSTRUCTIONS FOR SUBMITTING YOUR <u>OPT-IN ELECTION</u>. IF YOU ELECT TO OPT-IN TO THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, PLEASE COMPLETE, SIGN, AND TRANSMIT THIS OPT-IN BALLOT SO THAT IT IS *ACTUALLY RECEIVED* BY THE CLAIMS AND NOTICING AGENT ON OR BEFORE <u>NOVEMBER 18, 2019, AT 4:00 P.M. (PREVAILING EASTERN TIME)</u>**

**YOU MAY RETURN YOUR OPT-IN BALLOT IN THE PRE-ADDRESSED, PRE-PAID RETURN ENVELOPE PROVIDED OR VIA FIRST CLASS MAIL, HAND DELIVERY, OR OVERNIGHT COURIER, TO:**

**SEARS ADMIN. CLAIMS CONSENT PRGM BALLOT PROCESSING**
**C/O PRIME CLERK LLC**
**850 THIRD AVENUE, SUITE 412**
**BROOKLYN, NEW YORK 11232**

| To Submit Your Opt-In Ballot Via E-Ballot |
|---|
| To submit your Opt-In via E-Ballot, visit https://restructuring.primeclerk.com/sears. Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Opt-In Ballot.<br><br>IMPORTANT NOTE: You will need the following information to retrieve and submit your electronic Opt-In Ballot:<br>**Unique E-Ballot ID#:** 182353801014685<br><br>E-Ballot is the sole manner in which Opt-In will be accepted via electronic or online transmission. Opt-In Ballots submitted by facsimile, email or other means of electronic transmission will not be valid. Any Opt-In submitted through E-Ballot with the Holder's electronic signature will be deemed to be immediately legally valid and effective.<br><br>Please complete and submit an electronic Opt-In Ballot for each E-Ballot ID# you receive, as applicable.<br><br>Holders who cast an Opt-In using E-Ballot should NOT also submit a Paper Copy. |
| To Submit Your Opt-In Ballot Via Paper Copy |
| To submit your Opt-In via Paper Opt-In Ballot, complete items 1, 2, and 3 below and submit your Paper Opt-In Ballot in the pre-addressed, pre-paid return envelope provided or by first-class mail, hand delivery, or overnight courier to:<br>      Sears Admin. Claims Consent Prgm Ballot Processing<br>      c/o Prime Clerk LLC<br>      850 Third Avenue, Suite 412<br>      Brooklyn, New York 11232 |

<u>Item 1</u>. **Amount of Administrative Expense Claim(s).**

The undersigned hereby certifies that as of the date of completion of this Opt-In Ballot, the undersigned asserts it was the Holder of an Administrative Expense Claim(s) in the following aggregate amount:[1]

$ 756,245.02

---

[1] This amount should represent the amount of your previously-asserted Administrative Expense Claim(s). If the Debtors do not have a specific Administrative Expense Claim amount on file for you, the box in Item 1 of this Opt-In Ballot will be blank. For reference purposes, you should insert the relevant amount of your alleged Administrative Expense Claim; however, for the avoidance of doubt, this Opt-In Ballot is not to be used to assert your Administrative Expense Claim(s). For more information about asserting an Administrative Expense Claim(s), visit the Debtors' case

**Item 2. Administrative Expense Claims Consent Program Election.** You may elect to opt-in to the Administrative Expense Claims Consent Program by checking the box below and returning this Opt-In Ballot to the Claims and Noticing Agent on or before the Opt-In/Opt-Out Deadline pursuant to the instructions set forth herein.  If you return this Opt-In Ballot but do not check the box below or do not return this Opt-In Ballot, you will not be entitled to the Initial Distribution.  If you submit multiple Opt-In Ballots, your last timely received Opt-In Ballot shall control. Election to withhold consent is at your option.

 **THE HOLDER OF THE ADMINISTRATIVE EXPENSE CLAIM(S) SET FORTH IN ITEM 1 ELECTS TO OPT-IN TO THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM.**

**Item 3. Acknowledgments.** By signing this Opt-In Ballot, the undersigned Holder of an Administrative Expense Claim(s) identified in Item 1 above certifies that (i) it is the Holder of the Administrative Expense Claim(s) identified in Item 1 above or (ii) it has full power and authority to act on behalf of the Holder of the Administrative Expense Claim(s) identified in Item 1 above.

| |
|---|
| Jayson M. Macyda |
| Name |

Social Security or Federal Tax I.D. No. (optional)

**Signature:** *Jayson M. Macyda*
Jayson M. Macyda (Nov 16, 2019)

**Email:** generalcounsel@kykoglobal.com

| |
|---|
| Signature |

Attorney

| |
|---|
| If by Authorized Agent, Name and Title |

| |
|---|
| Name of Institution |

P.O. Box 87491

| |
|---|
| Street Address |

Canton, MI 48187

| |
|---|
| City, State, Zip Code |

| |
|---|
| Telephone Number |

generalcounsel@kykoglobal.com

| |
|---|
| Email Address |

November 16, 2019

| |
|---|
| Date Completed |

**If you elect to opt-in to the Administrative Expense Claims Consent Program, please return your Opt-In Ballot promptly.**  If you have any questions regarding this Opt-In Ballot or the procedures for opting out, please contact the Debtors' Claims and Noticing Agent, by: (a) visiting the Debtors' restructuring website at: https://restructuring.primeclerk.com/sears; (b) writing to Sears Admin. Claims Consent Prgm Ballot Processing, c/o Prime Clerk LLC, 850 Third Avenue, Suite 412, Brooklyn, New York 11232; and/or (c) emailing **searsinfo@primeclerk.com**.

| If the Claims and Noticing Agent does **not** actually receive the Opt-In Form on or before November 18, 2019, at 4:00 p.m., prevailing Eastern Time indicating your intent to opt-in to the Administrative Expense Claims Consent Program (and if the Opt-In/Opt-Out Deadline is not extended), your opt-in election will not be effective. |
|---|

website: https://restructuring.primeclerk.com/sears.  The Debtors reserve the right to dispute and validate the amount of your asserted Administrative Expense Claim(s).

4

## EXHIBIT B

**OPT-OUT BALLOT**

**PLEASE FOLLOW THESE INSTRUCTIONS FOR SUBMITTING YOUR <u>OPT-OUT ELECTION</u>.  IF YOU ELECT TO OPT-OUT OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, PLEASE COMPLETE, SIGN, DATE, AND TRANSMIT THIS OPT-OUT BALLOT SO THAT IT IS *ACTUALLY RECEIVED* BY THE CLAIMS AND NOTICING AGENT ON OR BEFORE <u>NOVEMBER 18, 2019, AT 4:00 P.M. (PREVAILING EASTERN TIME)</u>**

**IF YOU WOULD LIKE TO RECEIVE THE BENEFITS OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM AND DO NOT WISH TO OPT-OUT OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, YOU DO NOT NEED TO TAKE ANY FURTHER ACTION AT THIS TIME.**

**YOU MAY RETURN YOUR OPT-OUT BALLOT IN THE PRE-ADDRESSED, PRE-PAID RETURN ENVELOPE PROVIDED OR VIA FIRST CLASS MAIL, HAND DELIVERY, OR OVERNIGHT COURIER, TO:**

**SEARS ADMIN. CLAIMS CONSENT PRGM BALLOT PROCESSING
C/O PRIME CLERK LLC
850 THIRD AVENUE, SUITE 412
BROOKLYN, NEW YORK 11232**

| **To Submit Your Opt-Out Ballot Via E-Ballot** |
| --- |

To submit your Opt-Out via E-Ballot, visit https://restructuring.primeclerk.com/sears.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Opt-Out Ballot.

IMPORTANT NOTE: You will need the following information to retrieve and submit your electronic Opt-Out Ballot:

**Unique E-Ballot ID#:** 182353801014685

E-Ballot is the sole manner in which Opt-Out will be accepted via electronic or online transmission.  Opt-Out Ballots submitted by facsimile, email or other means of electronic transmission will not be valid.  Any Opt-Out submitted through E-Ballot with the Holder's electronic signature will be deemed to be immediately legally valid and effective.

Please complete and submit an electronic Opt-Out Ballot for each E-Ballot ID# you receive, as applicable.

Holders who cast an Opt-Out using E-Ballot should NOT also submit a Paper Copy.

| **To Submit Your Opt-Out Ballot Via Paper Copy** |
| --- |

To submit your Opt-Out via Paper Opt-Out Ballot, complete items 1, 2, and 3 below and submit your Paper Opt-Out Ballot in the pre-addressed, pre-paid return envelope provided or by first-class mail, hand delivery, or overnight courier to:

Sears Admin. Claims Consent Prgm Ballot Processing
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, New York 11232

**Item 1.  Amount of Administrative Expense Claim(s).**

The undersigned hereby certifies that as of the date of completion of this Opt-Out Ballot, the undersigned asserts it was the Holder of an Administrative Expense Claim(s) in the following aggregate amount:[1]

$ 756,245.02

**Item 2. Administrative Expense Claims Consent Program Election.** You may elect to opt-out of the Administrative Expense Claims Consent Program by checking the box below and returning this Opt-Out Ballot to the Claims and Noticing Agent on or before the Opt-In/Opt-Out Deadline pursuant to the instructions set forth herein.  If you return this Opt-Out Ballot but do not check the box below or do not return this Opt-Out Ballot, you will be bound by the Administrative Expense Claims Consent Program.  If you submit multiple Opt-Out Ballots, your last timely received Opt-Out Ballot shall control.  Election to withhold consent is at your option.

☐     **THE HOLDER OF THE ADMINISTRATIVE EXPENSE CLAIM(S) SET FORTH IN ITEM 1 ELECTS TO OPT-OUT OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM.**

**Item 3. Acknowledgments.** By signing this Opt-Out Ballot, the undersigned Holder of an Administrative Expense Claim(s) identified in Item 1 above certifies that (i) it is the Holder of the Administrative Expense Claim(s) identified in Item 1 above or (ii) it has full power and authority to act on behalf of the Holder of the Administrative Expense Claim(s) identified in Item 1 above.

Jayson M. Macyda
_____
Name

_____
Social Security or Federal Tax I.D. No. (optional)

Signature: *Jayson M. Macyda*
Jayson M. Macyda (Nov 16, 2019)
_____
Signature

Email: generalcounsel@kykoglobal.com
Attorney
_____
If by Authorized Agent, Name and Title

Attorney
_____
Name of Institution

_____
Street Address

P.O. Box 87491
_____
City, State, Zip Code

Canton, MI 48187
_____
Telephone Number

_____
Email Address

November 16, 2019
_____
Date Completed

---

[1] This amount should represent the amount of your previously-asserted Administrative Expense Claim(s).  If the Debtors do not have a specific Administrative Expense Claim amount on file for you, the box in Item 1 of this Opt-Out Ballot will be blank.  For reference purposes, you should insert the relevant amount of your alleged Administrative Expense Claim; however, for the avoidance of doubt, this Opt-Out Ballot is not to be used to assert your Administrative Expense Claim(s).  For more information about asserting an Administrative Expense Claim(s), visit the Debtors' case website: https://restructuring.primeclerk.com/sears.  The Debtors reserve the right to dispute and validate the amount of your asserted Administrative Expense Claim(s).

**If you elect to opt-out of the Administrative Expense Claims Consent Program, please return your Opt-Out Ballot promptly.**  If you have any questions regarding this Opt-Out Ballot or the procedures for opting out, please contact the Debtors' Claims and Noticing Agent, by: (a) visiting the Debtors' restructuring website at: https://restructuring.primeclerk.com/sears; (b) writing to Sears Admin. Claims Consent Prgm Ballot Processing, c/o Prime Clerk LLC, 850 Third Avenue, Suite 412, Brooklyn, New York 11232; and/or (c) emailing **searsinfo@primeclerk.com**.

> If the Claims and Noticing Agent does **not** actually receive the Opt-Out Ballot on or before November 18, 2019, at 4:00 p.m., prevailing Eastern Time indicating your intent to opt-out of the Administrative Expense Claims Consent Program (and if the Opt-In/Opt-Out Deadline is not extended), your opt-out election will not be effective.

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                 :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **SEARS HOLDINGS CORPORATION, *et al.*,** | : | **Case No. 18-23538 (RDD)** |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------x

**NOTICE OF**
**(I) BALLOT TO OPT-IN TO ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM AND**
**(II) BALLOT TO OPT-OUT OF ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM**

---

> **PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THE (I) OPT-IN BALLOT ATTACHED HERETO AS EXHIBIT A OR (II) OPT-OUT BALLOT ATTACHED HERETO AS EXHIBIT B.**
>
> **IF YOU DO NOT TAKE ANY ACTION, YOU WILL BE DEEMED TO BE BOUND BY THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, BUT NOT ENTITLED TO THE BENEFITS THAT WILL BE PROVIDED TO HOLDERS OF ADMINSTRATIVE EXPENSE CLAIMS WHO TIMELY OPT IN TO THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, AS DESCRIBED BELOW.**

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order Directing Joint Administration of Related Chapter 11 Cases* (ECF No. 118).  The location of the Debtors' service address is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**IN ORDER FOR YOUR OPT-IN BALLOT OR OPT-OUT BALLOT TO BE EFFECTIVE, THE APPLICABLE BALLOT MUST BE ACTUALLY RECEIVED BY NOVEMBER 18, 2019,[2] AT 4:00 P.M. (PREVAILING EASTERN TIME) (THE "OPT-IN/OPT-OUT DEADLINE").**

FAILURE TO OPT-IN TO THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM BY COMPLETING AND TIMELY SUBMITTING AN OPT-IN BALLOT MEANS YOU WILL NOT BE ENTITLED PARTICIPATE IN TO THE INITIAL DISTRIBUTION (AS DEFINED HEREIN).

FAILURE TO OPT-OUT OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM BY COMPLETING AND TIMELY SUBMITTING AN OPT-OUT BALLOT WILL BIND YOU TO THE TERMS OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM.

On October 15, 2019, the Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") entered an order confirming the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors* [ECF No. 5293] (the "**Plan**"),[3] approving, among other things, a proposed consent program for holders of Administrative Expense Claims (the "**Administrative Expense Claims Consent Program**") by and among the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), the Creditors' Committee and the Ad Hoc Vendor Group[4] [ECF No. 5370] (the "**Confirmation Order**").[5]

You are receiving the opt-in ballot (the "**Opt-In Ballot**"), attached hereto as <u>**Exhibit A**</u>, and the opt-out ballot (the "**Opt-Out Ballot**" and together with the Opt-In Ballot, the "**Election Ballots**"), attached hereto as <u>**Exhibit B**</u>, because, as a holder of an Administrative Expense Claim,[6] you are entitled to opt-in to or opt-out of the Administrative Expense Claims Consent Program.

**If you do not take any action, you will be deemed to have opted in and will be bound by the Administrative Expense Claims Consent Program, but not entitled to any benefits that will be provided to holders of Administrative Expense Claims who affirmatively opt-in to the Administrative Expense Claims Consent Program prior to the Opt-In/Opt-Out Deadline, namely, participation in an initial distribution of $21 million on or about December 1, 2019 to all holders of Administrative Expense Claims who opt-in to the Administrative Expense Claims Consent Program.**

All Holders of Administrative Expense Claims (other than the Ad Hoc Vendor Group that is deemed to have opted-in) have an option to opt-in to or opt-out of the Administrative Expense Claims Consent Program and releases contained therein. **The Creditors' Committee and the Debtors recommend that you <u>affirmatively opt-in</u> to and do <u>not</u> opt-out the Administrative Expense Claims Consent Program.**

---

[2] Thirty-three (33) days after service of this notice.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Confirmation Order or the Plan.

[4] The "**Ad Hoc Vendor Group**" means collectively, Whitebox Asymmetric Partners, LP, Whitebox Multi-Strategy Partners, LP, Hain Capital Investors Master Fund, Ltd., and Cherokee Debt Acquisition, LLC.

[5] Copies of the Plan, Confirmation Order, and the Administrative Expense Claims Consent Program Term Sheet may be accessed free of charge by visiting the website maintained by the Debtors' agent, Prime Clerk, LLC (the "**Claims and Noticing Agent**") at https://restructuring.primeclerk.com/sears.

[6] Specifically, you are receiving the Election Ballots because either (i) the Debtors believe you may be a Holder of an Administrative Expense Claim as of August 6, 2019 or (ii) you filed a proof of Administrative Expense Claim, filed a motion seeking allowance of an Administrative Expense Claim, or have otherwise asserted an Administrative Expense Claim in these Chapter 11 Cases.

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMHOLDERS WHO AFFIRMATIVELY OPT-IN

All holders of Allowed Administrative Expense Claims that affirmatively opt-in (the "**Opt-In Settled Admin Claims**") to the Administrative Expense Claims Consent Program prior to the Opt-In/Opt-Out Deadline shall receive, among other things:[7]

- Their pro rata share of $21 million ("**Initial Cash Pool**"), on or about December 1, 2019 (the percentage recovery, the "**Initial Recovery**");

- total recovery capped at 75% of the Allowed Administrative Expense Claim;

- such $21 million shall only be available to holders of Opt-In Settled Admin Claims who consensually agree with the Debtors to the Allowed amount of the Opt-In Settled Admin Claims;

- consensual reconciliation of the Allowed amount of Opt-In Settled Admin Claims (including on account of 503(b)(9) and 503(b)(1) issues regarding inducement, date of receipt, port of origin, etc., and any exposure on account of preference actions), to be completed within 30 days from the date of receipt of the Opt-In Ballot (the "**Expedited Reconciliation**");

- to the extent the Debtors, the Creditors' Committee, and the holder of the Opt-In Settled Admin Claim are unable to consensually resolve the Allowed amount, such resolution shall be subject to reconciliation on an agreed-upon schedule as reasonably agreed to by the Debtors, the Creditors' Committee, and the applicable holder of an Opt-In Settled Admin Claim;

- for the avoidance of doubt, any waiver or settlement of any preference action shall be considered on a case-by-case basis; and

- holders who do not agree with the Debtors and the Creditors' Committee on the Allowed amount of Opt-In Settled Admin Claims shall be deemed to hold a Non Opt-Out Settled Admin Claim.

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMHOLDERS WHO NEITHER OPT-IN NOR OPT-OUT

All Holders of an Allowed Administrative Expense Claim against the Debtors who neither (i) opt-in to the Administrative Expense Claims Consent Program nor (ii) opt-out of the Administrative Expense Claims Consent Program prior to the Opt-In/Opt-Out Deadline (the "**Non Opt-Out Settled Admin Claims**," and together with the Opt-In Settled Admin Claims, the "**Settled Administrative Expense Claims**") shall receive, among other things:

- its pro rata share of the Second Distribution, which will be shared only by other holders of Non Opt-Out Settled Admin Claims until they have received a percentage of distribution on their Non Opt-Out Settled Admin Claims that is equal to the Initial Recovery provided to holders of Opt-In Settled Claims;

- total recovery capped at 80% of the Allowed Administrative Expense Claim (together with the Initial Recovery, the "**Settled Admin Expense Claims Recovery**");

- Expedited Reconciliation to be completed within 30 days from the Opt-In/Opt-Out Deadline;

- to the extent the Debtors, the Creditors' Committee, and the holder of the Non Opt-Out Settled Admin Claim are unable to consensually resolve the Allowed amount, such resolution shall be subject to reconciliation on an agreed-upon schedule as reasonably agreed to by the Debtors, the Creditors' Committee, and the applicable holder of a Non Opt-Out Settled Admin Claim; and

- any waiver or settlement of any preference action shall be considered on a case-by-case basis.

**All holders of Administrative Expense Claims who do not opt out of the Administrative Expense Claims Consent Program** will be deemed to be satisfied in full on account of such claim once they have received payment in cash equal to (i) 75% of the applicable Allowed Administrative Expense Claim on account of Opt-In Settled Admin

---

[7] The following is an illustrative summary of the benefits of the Administrative Expense Claims Consent Program and is qualified in its entirety by reference to the applicable provisions in the Confirmation Order.

Claims, and (ii) 80% of the applicable Allowed Administrative Expense Claim on account of Non Opt-Out Settled Admin Claims. Any Distributions made on account of Settled Administrative Expense Claims shall not be subject to disgorgement, including without limitation, upon any conversion or dismissal of the Chapter 11 Cases. And upon entry of the Confirmation Order, all Settled Administrative Expense Claims shall be Allowed against the Debtors in these Chapter 11 Cases on a consolidated basis, or upon any conversion or dismissal of the Chapter 11 Cases.

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMHOLDERS WHO OPT-OUT

If you **opt out of the Administrative Expense Claims Consent Program** prior to the Opt-In/Opt-Out Deadline, you will retain the right to receive payment of the Allowed 100% of your Administrative Expense Claim, but payment of your Administrative Expense Claim shall occur on the latest of (i) the Effective Date, (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim is Allowed, and (iii) the next Distribution Date after such Administrative Expense Claim is Allowed. Holders of opt-out Claims will not be entitled to participate in the Initial Distribution, Second Distribution, or any further distribution until the Plan has become effective or the Settled Administrative Expense Claims have been satisfied.

## ADDITIONAL INFORMATION

Pursuant to the Administrative Expense Claims Consent Program, holders bound by the Administrative Expense Claims Consent Program shall be paid in the following order of priority: (1) Holders of Opt-In Settled Admin Claims of their pro rata share of the Initial Cash Pool; (2) Holders of Non Opt-Out Settled Admin Claims of their pro rata share up to a percentage recovery equal to the Initial Recovery; and (3) all Holders bound by the Administrative Expense Claims Consent Program of the remaining unpaid amount of their Allowed Administrative Expense Claims up to the Settled Admin Expense Claims Recovery.

Each Holder of a Settled Administrative Expense Claim also agrees (1) to support the Plan; and (2) that acceptance of and consent to the Administrative Expense Claims Consent Program will be deemed consent to the Plan, acceptance of the treatment under the Plan in satisfaction of section 1129(a)(9) of the Bankruptcy Code, and agreement to provides the releases included in the Administrative Expense Claims Consent Program.

### Treatment of Holders of Administrative Expense Claims
### Under Administrative Expense Claims Consent Program

| | Opt-In Settled Admin Claims | Non Opt-Out Settled Admin Claims | Opt-Out Administrative Expense Claims |
|---|---|---|---|
| **Maximum Recovery on Account of Allowed Administrative Expense Claim** | 75% of Allowed Amount | 80% of Allowed Amount | 100% of Allowed Amount |
| **Participates in Distribution of $21 million Initial Cash Pool on or about December 1, 2019** | Yes | No | No |
| **Participates in Second Distribution** | No[8] | Yes | No |
| **Distribution on the Later of (i) the Effective Date, (ii) 30 days after Allowance of the Claim, and (iii) the next Distribution Date after Allowance of the Claim** | N/A | N/A | Yes |

---

[8] To the extent there are any amounts remaining for distribution after the Non Opt-out Settled Admin Claims have received the percentage recovery equal to the Initial Recovery, the Opt-In Settled Admin Claims shall share pro rata in such excess with the Non Opt-Out Settled Admin Claims.

| Claims Reconciliation to occur | Within 30 days of receipt of Opt-In Ballot | Within 30 days after Opt-In/Opt-Out Deadline | In ordinary course |
|---|---|---|---|

### INSTRUCTION FOR OPTING-IN OR OPTING-OUT

In order to **opt-in** to or **opt-out** of the Administrative Expense Claims Consent Program, you must complete, execute, and submit your Opt-In Ballot or Opt-Out Ballot to the Claims and Noticing Agent so that your Opt-In Ballot or Opt-Out Ballot is actually received by the Claims and Noticing Agent on or before the Opt-In/Opt-Out Deadline, which is **November 18, 2019, at 4:00 p.m.**, prevailing Eastern Time.

**You are strongly encouraged to review the Administrative Expense Claims Consent Program Term Sheet and the Plan before you make an election.  You may wish to seek legal advice concerning the Administrative Expense Claims Consent Program and the Election Ballots.**

**Acceptable Methods to Complete and Submit Your Election Ballots.**  You may elect to opt-in to or opt-out of the Administrative Expense Claims Consent Program by completing and submitting (i) an electronic Opt-In Ballot or Opt-Out Ballot through the dedicated, online portal maintained by the Claims and Noticing Agent ("**E-Ballot**") or (ii) one of the paper-copy Election Ballots (the "**Paper Election Ballots**").  In either case (E-Ballot or Paper Election Ballots), you must submit your Opt-In Ballot or Opt-Out Ballot to the Claims and Noticing Agent so that it is actually received by the Claims and Noticing Agent on or before the Opt-In/Opt-Out Deadlines.

### CERTAIN RISK FACTORS TO BE CONSIDERED

1. **Risks Related to Debtors' Ability to Make Distributions**

    (a) **Debtors' Assets Available for Distributions**

As described in greater detail in the Griffith Declaration, Murphy Declaration, and Transier Declaration,[9] the Debtors' Assets as of the September 18, 2019 include approximately $173.5 million comprised of (i) approximately $50.1 million in cash on hand, (ii) $33.4 million on account of other Assets to be monetized, and (iii) approximately $97 million owed by Transform for the assumptions of 503(b)(9) Claims[10] (the "**Additional Asset Proceeds**"):

| Sources | | |
|---|---|---|
| Cash on Hand at 9/18/19 | $ | 50.1 |
| Calder Net Proceeds | | 10.0 |
| Real Estate Proceeds | | 13.1 |
| De Minimis Assets | | 5.3 |
| 2017 EDA Funds | | 5.0 |
| Transform 503(b)(9) Obligations | | 90.0 |
| **Total Sources** | **$** | **173.5** |

*In addition*, the Debtors believe they will receive significant recoveries from the proceeds of certain valuable litigation assets, including avoidance action arising under section 547 of the Bankruptcy Code or any comparable "preference" action arising under applicable non-bankruptcy law (collectively, the "**Preference Actions**"), certain

---

[9] *Declaration of Brian J. Griffith in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Liquidation of Sears Holdings Corporation and its Affiliated Debtors* (ECF No. 5148) (the "**Griffith Declaration**"), *Declaration of William Murphy in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Liquidation of Sears Holdings Corporation and its Affiliated Debtors* (ECF No. 5149) (the "**Murphy Declaration**"), *Declaration of William L. Transier in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Liquidation of Sears Holdings Corporation and its Affiliated Debtors* (ECF No. 5146) (the "**Transier Declaration**").

[10] The Debtors believe that pursuant to section 2.3(k)(ix) of the Asset Purchase Agreement, Transform is obligated to assume approximately $97 million on account of 503(b)(9) Claims.  The $90 million reflected herein ties to the $90 million of estimated 503(b)(9) Claims; to the extent the 503(b)(9) Claims are in excess of $90 million, Transform shall be liable to assume up to $97 million on account of 503(b)(9) Claims pursuant to the Asset Purchase Agreement.  Transform disputes that it owes such amounts to the Debtors.

prepetition related party transaction claims against ESL Investments, Inc. and its affiliates ("**ESL**") and other parties, and potential settlements with insurers with respect to claims against the D&O Policy (together the "**Litigation Proceeds**"), although there can be no assurance of any recovery:

- **Preference Actions**. The Debtors estimate that they will receive at least approximately $100 million in recoveries from Preference Actions out of an excess of $1.345 billion of gross total transfers in the preference window, which is consistent with comparable transactions where the average range of recoveries is from 11.4% if the gross total transfers pursued or, alternatively 23.7% of those transfers, net of subsequent new value. *See* Griffith Decl., ¶¶ 64-70.

- **ESL Litigation**. The Debtors' Restructuring Subcommittee and the Creditors' Committee both have investigated the prepetition related party transaction claims and concluded that such claims are meritorious. On April 17, 2019 the Restructuring Subcommittee, on behalf of certain of the Debtors, filed an adversary complaint against ESL Investments, Inc., its affiliates, various third parties, and certain of the Debtors' directors and officers (ECF No. 3278) (the "**Subcommittee Adversary Complaint**"), seeking over $2 billion in damages arising from certain prepetition related party transactions. *See* Transier Decl., ¶¶ 20-27. As of the date hereof, the Court has not heard any arguments or considered any evidence in connection with the Subcommittee Adversary Complaint. Current and prospective defendants dispute the validity of Claims asserted in the Subcommittee Adversary Complaint, and there is no assurance of any recovery.

- **D&O Insurance**. The Debtors believe they may be able to receive significant recoveries against available D&O Policies on account of Preserved Causes of Action against the Specified Directors and Officers. The Debtors believe that there is at least approximately $150 million of available directors and officers liability insurance that provides a source of recovery to the Debtor plaintiffs in the Subcommittee Adversary Complaint against parties (in their capacity as directors and/or officers) who are covered by such insurance. Certain defendants (such as ESL, Lampert and the Seritage parties) in the Subcommittee Adversary Complaint may also be liable for sums separate and apart from any available insurance coverage. *See* Transier Decl., ¶ 28. Certain insurers have disclaimed coverage under certain of the D&O Policies.

There can be no assurance that the Debtors will be able to successfully monetize their Assets in the projected amounts or when such Assets will be monetized. There is a risk that the Net Proceeds of Total Assets, including the Litigation Proceeds, may be significantly less than projected, which, in turn, could cause the amount and timing of Distributions to adversely change substantially. Further, unanticipated events and circumstances may affect the ultimate recoveries.

     **(b)**    **Debtors' Estimate of Outstanding Claims on the Effective Date**

The Debtors and their advisors have conducted an extensive analysis to estimate the Debtors' outstanding Claims pool and are continuing to review and analyze Claims. The Debtors have filed and intend to continue to file objections to Claims. In the aggregate, the Debtors believe that the sources above will be enough to satisfy the Debtors' estimate of outstanding Claims by the Effective Date:

| Uses | Low Claims | High Claims |
|---|---|---|
| Liquidating Trust funding | $ (25.0) | $ (25.0) |
| Remaining estate professional fees | (9.0) | (9.0) |
| 503(b)(9) | (90.0) | (155.0) |
| Other Admin Claims | (50.0) | (50.0) |
| Secured | (18.0) | (18.0) |
| Priority Tax | (15.0) | (18.0) |
| Priority Non-Tax | (3.0) | (3.0) |
| **Total Uses** | **$ (210.0)** | **$ (278.0)** |
| | | |
| **Total Potential Shortfall (without Litigation Proceeds)** | **$ (36.5)** | **$ (104.5)** |

But, there can be no assurance that the estimated Allowed amount of Claims will not be significantly more than projected, which, in turn, could cause the total recovery on Administrative Expense Claims to be lower. Some assumptions may not materialize, and unanticipated events and circumstances may affect the ultimate results. Therefore, the actual amount of Allowed Claims may vary from the Debtors' feasibility analysis, and the variation may be material.

### (c)    Distribution Funding Sources

The Initial Cash Pool, the Second Distribution, additional pre-Effective Date distributions to Settled Administrative Expense Claims, and post-Effective Date Distributions to Opt-Out Claims, will be funded from the following sources, as follows:

| | Within three (3) Business Days of Entry of the Confirmation Order[11] | Post-Confirmation Date, Pre-Effective Date | Post-Effective Date |
|---|---|---|---|
| **Initial Cash Pool ($21 million) for the Initial Distribution to Opt-In Settled Admin Claims only** | $16 million funded from: (i) unrestricted cash on hand and (ii) a minimum of $3 million from the Carve-Out Account | $5 million from Additional Asset Proceeds *and/or* Litigation Proceeds (to occur prior to the Initial Distribution) | N/A |
| **Second Distribution to Non Opt-Out Settled Admin Claims[12]** | N/A | Subject to the Minimum Conditions,[13] from Additional Asset Proceeds *and/or* Litigation Proceeds | N/A |
| **Further Distribution(s) to Settled Admin Claims** | N/A | Subject to the Second Distribution, from Additional Asset Proceeds *and/or* Litigation Proceeds | N/A |
| **Distributions to Opt-Out Claims** | N/A | N/A | From Additional Asset Proceeds *and/or* Litigation Proceeds |

---

[11] Within three (3) Business Days of entry of the Confirmation Order, an additional (i) $15 million from cash on hand will be placed into the segregated Litigation Funding Account for funding of the litigation associated with the Jointly Asserted Causes of Action (the "**Litigation Funding**") and (ii) $5 million will be placed into the segregated Cash Reserve Account for post-Confirmation estate costs including, without limitation, additional professional fees of the Debtors' and the Creditors' Committee not included in the Carve-Out Account as of the entry of the Confirmation Order (the "**Cash Reserve**").

[12] To the extent there are any amounts remaining for distribution after the Non Opt-out Settled Admin Claims have received the percentage recovery equal to the Initial Recovery, the Opt-In Settled Admin Claims shall share pro rata in such excess with the Non Opt-Out Settled Admin Claims.

[13] The Second Distribution shall not occur until each of the until each of the following conditions is met: (i) a total of $25 million has been funded into the Litigation Funding Account in the aggregate, (ii) there has been a funding of $10 million in the aggregate in the Cash Reserve Account and (iii) the Segregated Account has an additional $10 million in cash (together, the "**Minimum Conditions**").

**2.      Risk of Non-Occurrence of Effective Date**

Although the Debtors believe that the Effective Date will occur soon after the Confirmation Date, there can be no assurance as to the timing of the Effective Date.  If the conditions precedent to the Effective Date set forth in the Plan have not occurred or have not been waived as set forth in Article X of the Plan or the Debtors are unable to pay their obligations as required under section 1129(a)(9) of the Bankruptcy Code, then the Confirmation Order may be vacated.  Any Distributions made on account of Settled Administrative Expense Claims shall not be subject to disgorgement, including without limitation, upon any conversion or dismissal of the Chapter 11 Cases.

**3.      Risks Related to the Causes of Action**

There is no guarantee as to the success of pursuing any Cause of Action.  The success of the Debtors and the Creditors' Committee or Liquidating Trust in pursuing any Cause of Action, as well as the expenses incurred in investigating and prosecuting the Causes of Action, may materially affect the recoveries for the holders of Allowed Claims.

**4.      No Legal or Tax Advice Is Provided by this Disclosure Statement**

The contents of this notice should not be construed as legal, business, or tax advice.  Each holder of a Claim should consult their own legal counsel and accountant as to legal, tax, and other matters concerning their Claim.  This notice may not be relied upon for any purpose other than to determine how to elect how to be treated under the Administrative Expense Claims Consent Program.

**5.      No Admission Made**

Nothing contained herein or in the Plan shall constitute an admission of, or shall be deemed evidence of, the tax or other legal effects of the Plan or Administrative Expense Claims Consent Program on the Debtors or holders of Claims or Interests.

For additional risk factors and considerations, including the position of Transform and/or ESL Parties, please review section VIII.A of the Disclosure Statement.  Should you wish to obtain a copy of the Disclosure Statement, Plan, Confirmation Order, the Administrative Expense Claims Consent Program Term Sheet, or any other documents in these Chapter 11 Cases, you should contact the Debtors' Claims and Noticing Agent, Prime Clerk LLC by: (a) visiting the Debtors' restructuring website at: https://restructuring.primeclerk.com/sears; (b) writing to Sears Admin. Claims Consent Prgm Ballot Processing, c/o Prime Clerk LLC, 850 Third Avenue, Suite 412, Brooklyn, New York 11232; and/or (c) emailing **searsinfo@primeclerk.com**.  You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.vaeb.uscourts.gov.

SRF 36417

**<u>EXHIBIT A</u>**

**OPT-IN BALLOT**

**PLEASE FOLLOW THESE INSTRUCTIONS FOR SUBMITTING YOUR <u>OPT-IN ELECTION</u>. IF YOU ELECT TO OPT-IN TO THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, PLEASE COMPLETE, SIGN, DATE, AND TRANSMIT THIS OPT-IN BALLOT SO THAT IT IS *ACTUALLY RECEIVED* BY THE CLAIMS AND NOTICING AGENT ON OR BEFORE <u>NOVEMBER 18, 2019, AT 4:00 P.M. (PREVAILING EASTERN TIME)</u>**

**YOU MAY RETURN YOUR OPT-IN BALLOT IN THE PRE-ADDRESSED, PRE-PAID RETURN ENVELOPE PROVIDED OR VIA FIRST CLASS MAIL, HAND DELIVERY, OR OVERNIGHT COURIER, TO:**

**SEARS ADMIN. CLAIMS CONSENT PRGM BALLOT PROCESSING**
**C/O PRIME CLERK LLC**
**850 THIRD AVENUE, SUITE 412**
**BROOKLYN, NEW YORK 11232**

---

| **To Submit Your Opt-In Ballot Via E-Ballot** |
|---|

To submit your Opt-In via E-Ballot, visit https://restructuring.primeclerk.com/sears. Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Opt-In Ballot.

IMPORTANT NOTE: You will need the following information to retrieve and submit your electronic Opt-In Ballot:

**Unique E-Ballot ID#:** 182353801014686

E-Ballot is the sole manner in which Opt-In will be accepted via electronic or online transmission. Opt-In Ballots submitted by facsimile, email or other means of electronic transmission will not be valid. Any Opt-In submitted through E-Ballot with the Holder's electronic signature will be deemed to be immediately legally valid and effective.

Please complete and submit an electronic Opt-In Ballot for each E-Ballot ID# you receive, as applicable.

Holders who cast an Opt-In using E-Ballot should NOT also submit a Paper Copy.

| **To Submit Your Opt-In Ballot Via Paper Copy** |
|---|

To submit your Opt-In via Paper Opt-In Ballot, complete items 1, 2, and 3 below and submit your Paper Opt-In Ballot in the pre-addressed, pre-paid return envelope provided or by first-class mail, hand delivery, or overnight courier to:

> Sears Admin. Claims Consent Prgm Ballot Processing
> c/o Prime Clerk LLC
> 850 Third Avenue, Suite 412
> Brooklyn, New York 11232

<u>**Item 1**</u>.  **Amount of Administrative Expense Claim(s).**

The undersigned hereby certifies that as of the date of completion of this Opt-In Ballot, the undersigned asserts it was the Holder of an Administrative Expense Claim(s) in the following aggregate amount:[1]

$ 756,245.02

---

[1] This amount should represent the amount of your previously-asserted Administrative Expense Claim(s).  If the Debtors do not have a specific Administrative Expense Claim amount on file for you, the box in Item 1 of this Opt-In Ballot will be blank.  For reference purposes, you should insert the relevant amount of your alleged Administrative Expense Claim; however, for the avoidance of doubt, this Opt-In Ballot is not to be used to assert your Administrative Expense Claim(s).  For more information about asserting an Administrative Expense Claim(s), visit the Debtors' case

**Item 2. Administrative Expense Claims Consent Program Election.** You may elect to opt-in to the Administrative Expense Claims Consent Program by checking the box below and returning this Opt-In Ballot to the Claims and Noticing Agent on or before the Opt-In/Opt-Out Deadline pursuant to the instructions set forth herein. If you return this Opt-In Ballot but do not check the box below or do not return this Opt-In Ballot, you will not be entitled to the Initial Distribution. If you submit multiple Opt-In Ballots, your last timely received Opt-In Ballot shall control. Election to withhold consent is at your option.

 **THE HOLDER OF THE ADMINISTRATIVE EXPENSE CLAIM(S) SET FORTH IN ITEM 1 ELECTS TO OPT-IN TO THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM.**

**Item 3. Acknowledgments.** By signing this Opt-In Ballot, the undersigned Holder of an Administrative Expense Claim(s) identified in Item 1 above certifies that (i) it is the Holder of the Administrative Expense Claim(s) identified in Item 1 above or (ii) it has full power and authority to act on behalf of the Holder of the Administrative Expense Claim(s) identified in Item 1 above.

| |
|---|
| Jayson M. Macyda |
| Name |

Social Security or Federal Tax I.D. No. (optional)

**Signature:** *Jayson M. Macyda*
Jayson M. Macyda (Nov 16, 2019)

**Email:** generalcounsel@kykoglobal.com

Signature

Attorney

If by Authorized Agent, Name and Title

Name of Institution

P.O. Box 87491

Street Address

Canton, MI 48187

City, State, Zip Code

Telephone Number

generalcounsel@kykoglobal.com

Email Address

November 16, 2019

Date Completed

**If you elect to opt-in to the Administrative Expense Claims Consent Program, please return your Opt-In Ballot promptly.** If you have any questions regarding this Opt-In Ballot or the procedures for opting out, please contact the Debtors' Claims and Noticing Agent, by: (a) visiting the Debtors' restructuring website at: https://restructuring.primeclerk.com/sears; (b) writing to Sears Admin. Claims Consent Prgm Ballot Processing, c/o Prime Clerk LLC, 850 Third Avenue, Suite 412, Brooklyn, New York 11232; and/or (c) emailing **searsinfo@primeclerk.com**.

> If the Claims and Noticing Agent does **not** actually receive the Opt-In Form on or before November 18, 2019, at 4:00 p.m., prevailing Eastern Time indicating your intent to opt-in to the Administrative Expense Claims Consent Program (and if the Opt-In/Opt-Out Deadline is not extended), your opt-in election will not be effective.

---

website: https://restructuring.primeclerk.com/sears. The Debtors reserve the right to dispute and validate the amount of your asserted Administrative Expense Claim(s).

SRF 36417

## **EXHIBIT B**

**OPT-OUT BALLOT**

**PLEASE FOLLOW THESE INSTRUCTIONS FOR SUBMITTING YOUR** <u>OPT-OUT ELECTION</u>**.  IF YOU ELECT TO OPT-OUT OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, PLEASE COMPLETE, SIGN, DATE, AND TRANSMIT THIS OPT-OUT BALLOT SO THAT IT IS** *ACTUALLY RECEIVED* **BY THE CLAIMS AND NOTICING AGENT ON OR BEFORE** <u>NOVEMBER 18, 2019, AT 4:00 P.M. (PREVAILING EASTERN TIME)</u>

**IF YOU WOULD LIKE TO RECEIVE THE BENEFITS OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM AND DO NOT WISH TO OPT-OUT OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, YOU DO NOT NEED TO TAKE ANY FURTHER ACTION AT THIS TIME.**

**YOU MAY RETURN YOUR OPT-OUT BALLOT IN THE PRE-ADDRESSED, PRE-PAID RETURN ENVELOPE PROVIDED OR VIA FIRST CLASS MAIL, HAND DELIVERY, OR OVERNIGHT COURIER, TO:**

**SEARS ADMIN. CLAIMS CONSENT PRGM BALLOT PROCESSING**
**C/O PRIME CLERK LLC**
**850 THIRD AVENUE, SUITE 412**
**BROOKLYN, NEW YORK 11232**

| **To Submit Your Opt-Out Ballot Via E-Ballot** |
| --- |

To submit your Opt-Out via E-Ballot, visit https://restructuring.primeclerk.com/sears.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Opt-Out Ballot.

IMPORTANT NOTE: You will need the following information to retrieve and submit your electronic Opt-Out Ballot:

**Unique E-Ballot ID#:** 182353801014686

E-Ballot is the sole manner in which Opt-Out will be accepted via electronic or online transmission.  Opt-Out Ballots submitted by facsimile, email or other means of electronic transmission will not be valid.  Any Opt-Out submitted through E-Ballot with the Holder's electronic signature will be deemed to be immediately legally valid and effective.

Please complete and submit an electronic Opt-Out Ballot for each E-Ballot ID# you receive, as applicable.

Holders who cast an Opt-Out using E-Ballot should NOT also submit a Paper Copy.

| **To Submit Your Opt-Out Ballot Via Paper Copy** |
| --- |

To submit your Opt-Out via Paper Opt-Out Ballot, complete items 1, 2, and 3 below and submit your Paper Opt-Out Ballot in the pre-addressed, pre-paid return envelope provided or by first-class mail, hand delivery, or overnight courier to:

Sears Admin. Claims Consent Prgm Ballot Processing
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, New York 11232

<u>**Item 1.**</u>  **Amount of Administrative Expense Claim(s).**

The undersigned hereby certifies that as of the date of completion of this Opt-Out Ballot, the undersigned asserts it was the Holder of an Administrative Expense Claim(s) in the following aggregate amount:[1]

$ 756,245.02

<u>**Item 2.**</u> **Administrative Expense Claims Consent Program Election.** You may elect to opt-out of the Administrative Expense Claims Consent Program by checking the box below and returning this Opt-Out Ballot to the Claims and Noticing Agent on or before the Opt-In/Opt-Out Deadline pursuant to the instructions set forth herein.  If you return this Opt-Out Ballot but do not check the box below or do not return this Opt-Out Ballot, you will be bound by the Administrative Expense Claims Consent Program.  If you submit multiple Opt-Out Ballots, your last timely received Opt-Out Ballot shall control.  Election to withhold consent is at your option.

☐  **THE HOLDER OF THE ADMINISTRATIVE EXPENSE CLAIM(S) SET FORTH IN ITEM 1 ELECTS TO OPT-OUT OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM.**

<u>**Item 3.**</u> **Acknowledgments.** By signing this Opt-Out Ballot, the undersigned Holder of an Administrative Expense Claim(s) identified in Item 1 above certifies that (i) it is the Holder of the Administrative Expense Claim(s) identified in Item 1 above or (ii) it has full power and authority to act on behalf of the Holder of the Administrative Expense Claim(s) identified in Item 1 above.

Jayson M. Macyda
_____
Name

_____
Social Security or Federal Tax I.D. No. (optional)

**Signature:** *Jayson M. Macyda*
Jayson M. Macyda (Nov 16, 2019)
_____
Signature

**Email:** generalcounsel@kykoglobal.com
_____
If by Authorized Agent, Name and Title

Attorney
_____
Name of Institution

_____
Street Address

P.O. Box 87491
_____
City, State, Zip Code

Canton, MI 48187
_____
Telephone Number

_____
Email Address

November 16, 2019
_____
Date Completed

---

[1] This amount should represent the amount of your previously-asserted Administrative Expense Claim(s).  If the Debtors do not have a specific Administrative Expense Claim amount on file for you, the box in Item 1 of this Opt-Out Ballot will be blank.  For reference purposes, you should insert the relevant amount of your alleged Administrative Expense Claim; however, for the avoidance of doubt, this Opt-Out Ballot is not to be used to assert your Administrative Expense Claim(s).  For more information about asserting an Administrative Expense Claim(s), visit the Debtors' case website: https://restructuring.primeclerk.com/sears.  The Debtors reserve the right to dispute and validate the amount of your asserted Administrative Expense Claim(s).

**If you elect to opt-out of the Administrative Expense Claims Consent Program, please return your Opt-Out Ballot promptly.**  If you have any questions regarding this Opt-Out Ballot or the procedures for opting out, please contact the Debtors' Claims and Noticing Agent, by: (a) visiting the Debtors' restructuring website at: https://restructuring.primeclerk.com/sears; (b) writing to Sears Admin. Claims Consent Prgm Ballot Processing, c/o Prime Clerk LLC, 850 Third Avenue, Suite 412, Brooklyn, New York 11232; and/or (c) emailing **searsinfo@primeclerk.com**.

> If the Claims and Noticing Agent does **not** actually receive the Opt-Out Ballot on or before November 18, 2019, at 4:00 p.m., prevailing Eastern Time indicating your intent to opt-out of the Administrative Expense Claims Consent Program (and if the Opt-In/Opt-Out Deadline is not extended), your opt-out election will not be effective.

SRF 36417

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                          :
**In re**                                 :        **Chapter 11**
                                          :
**SEARS HOLDINGS CORPORATION**, *et al.*, :   **Case No. 18-23538 (RDD)**
                                          :
        **Debtors.**[1]                   :        **(Jointly Administered)**
                                          :
-------------------------------------------------------------x

**NOTICE OF**
**(I) BALLOT TO OPT-IN TO ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM AND**
**(II) BALLOT TO OPT-OUT OF ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM**

<div style="border:1px solid black">

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THE (I) OPT-IN BALLOT ATTACHED HERETO AS EXHIBIT A OR (II) OPT-OUT BALLOT ATTACHED HERETO AS EXHIBIT B.**

**IF YOU DO NOT TAKE ANY ACTION, YOU WILL BE DEEMED TO BE BOUND BY THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, BUT NOT ENTITLED TO THE BENEFITS THAT WILL BE PROVIDED TO HOLDERS OF ADMINSTRATIVE EXPENSE CLAIMS WHO TIMELY OPT IN TO THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, AS DESCRIBED BELOW.**

</div>

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order Directing Joint Administration of Related Chapter 11 Cases* (ECF No. 118).  The location of the Debtors' service address is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

> **IN ORDER FOR YOUR OPT-IN BALLOT OR OPT-OUT BALLOT TO BE EFFECTIVE,
> THE APPLICABLE BALLOT MUST BE ACTUALLY RECEIVED BY
> NOVEMBER 18, 2019,[2] AT 4:00 P.M. (PREVAILING EASTERN TIME)
> (THE "OPT-IN/OPT-OUT DEADLINE").**
>
> FAILURE TO OPT-IN TO THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM
> BY COMPLETING AND TIMELY SUBMITTING AN OPT-IN BALLOT MEANS YOU WILL NOT BE
> ENTITLED PARTICIPATE IN TO THE INITIAL DISTRIBUTION (AS DEFINED HEREIN).
>
> FAILURE TO OPT-OUT OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM
> BY COMPLETING AND TIMELY SUBMITTING AN OPT-OUT BALLOT WILL
> BIND YOU TO THE TERMS OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM.

On October 15, 2019, the Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") entered an order confirming the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors* [ECF No. 5293] (the "**Plan**"),[3] approving, among other things, a proposed consent program for holders of Administrative Expense Claims (the "**Administrative Expense Claims Consent Program**") by and among the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), the Creditors' Committee and the Ad Hoc Vendor Group[4] [ECF No. 5370] (the "**Confirmation Order**").[5]

You are receiving the opt-in ballot (the "**Opt-In Ballot**"), attached hereto as **Exhibit A**, and the opt-out ballot (the "**Opt-Out Ballot**" and together with the Opt-In Ballot, the "**Election Ballots**"), attached hereto as **Exhibit B**, because, as a holder of an Administrative Expense Claim,[6] you are entitled to opt-in to or opt-out of the Administrative Expense Claims Consent Program.

**If you do not take any action, you will be deemed to have opted in and will be bound by the Administrative Expense Claims Consent Program, but not entitled to any benefits that will be provided to holders of Administrative Expense Claims who affirmatively opt-in to the Administrative Expense Claims Consent Program prior to the Opt-In/Opt-Out Deadline, namely, participation in an initial distribution of $21 million on or about December 1, 2019 to all holders of Administrative Expense Claims who opt-in to the Administrative Expense Claims Consent Program.**

All Holders of Administrative Expense Claims (other than the Ad Hoc Vendor Group that is deemed to have opted-in) have an option to opt-in to or opt-out of the Administrative Expense Claims Consent Program and releases contained therein. **The Creditors' Committee and the Debtors recommend that you affirmatively opt-in to and do not opt-out the Administrative Expense Claims Consent Program.**

---

[2] Thirty-three (33) days after service of this notice.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Confirmation Order or the Plan.

[4] The "**Ad Hoc Vendor Group**" means collectively, Whitebox Asymmetric Partners, LP, Whitebox Multi-Strategy Partners, LP, Hain Capital Investors Master Fund, Ltd., and Cherokee Debt Acquisition, LLC.

[5] Copies of the Plan, Confirmation Order, and the Administrative Expense Claims Consent Program Term Sheet may be accessed free of charge by visiting the website maintained by the Debtors' agent, Prime Clerk, LLC (the "**Claims and Noticing Agent**") at https://restructuring.primeclerk.com/sears.

[6] Specifically, you are receiving the Election Ballots because either (i) the Debtors believe you may be a Holder of an Administrative Expense Claim as of August 6, 2019 or (ii) you filed a proof of Administrative Expense Claim, filed a motion seeking allowance of an Administrative Expense Claim, or have otherwise asserted an Administrative Expense Claim in these Chapter 11 Cases.

2

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMHOLDERS WHO AFFIRMATIVELY OPT-IN

All holders of Allowed Administrative Expense Claims that affirmatively opt-in (the "**Opt-In Settled Admin Claims**") to the Administrative Expense Claims Consent Program prior to the Opt-In/Opt-Out Deadline shall receive, among other things:[7]

- Their pro rata share of $21 million ("**Initial Cash Pool**"), on or about December 1, 2019 (the percentage recovery, the "**Initial Recovery**");

- total recovery capped at 75% of the Allowed Administrative Expense Claim;

- such $21 million shall only be available to holders of Opt-In Settled Admin Claims who consensually agree with the Debtors to the Allowed amount of the Opt-In Settled Admin Claims;

- consensual reconciliation of the Allowed amount of Opt-In Settled Admin Claims (including on account of 503(b)(9) and 503(b)(1) issues regarding inducement, date of receipt, port of origin, etc., and any exposure on account of preference actions), to be completed within 30 days from the date of receipt of the Opt-In Ballot (the "**Expedited Reconciliation**");

- to the extent the Debtors, the Creditors' Committee, and the holder of the Opt-In Settled Admin Claim are unable to consensually resolve the Allowed amount, such resolution shall be subject to reconciliation on an agreed-upon schedule as reasonably agreed to by the Debtors, the Creditors' Committee, and the applicable holder of an Opt-In Settled Admin Claim;

- for the avoidance of doubt, any waiver or settlement of any preference action shall be considered on a case-by-case basis; and

- holders who do not agree with the Debtors and the Creditors' Committee on the Allowed amount of Opt-In Settled Admin Claims shall be deemed to hold a Non Opt-Out Settled Admin Claim.

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMHOLDERS WHO NEITHER OPT-IN NOR OPT-OUT

All Holders of an Allowed Administrative Expense Claim against the Debtors who neither (i) opt-in to the Administrative Expense Claims Consent Program nor (ii) opt-out of the Administrative Expense Claims Consent Program prior to the Opt-In/Opt-Out Deadline (the "**Non Opt-Out Settled Admin Claims**," and together with the Opt-In Settled Admin Claims, the "**Settled Administrative Expense Claims**") shall receive, among other things:

- its pro rata share of the Second Distribution, which will be shared only by other holders of Non Opt-Out Settled Admin Claims until they have received a percentage of distribution on their Non Opt-Out Settled Admin Claims that is equal to the Initial Recovery provided to holders of Opt-In Settled Claims;

- total recovery capped at 80% of the Allowed Administrative Expense Claim (together with the Initial Recovery, the "**Settled Admin Expense Claims Recovery**");

- Expedited Reconciliation to be completed within 30 days from the Opt-In/Opt-Out Deadline;

- to the extent the Debtors, the Creditors' Committee, and the holder of the Non Opt-Out Settled Admin Claim are unable to consensually resolve the Allowed amount, such resolution shall be subject to reconciliation on an agreed-upon schedule as reasonably agreed to by the Debtors, the Creditors' Committee, and the applicable holder of a Non Opt-Out Settled Admin Claim; and

- any waiver or settlement of any preference action shall be considered on a case-by-case basis.

**All holders of Administrative Expense Claims who do not opt out of the Administrative Expense Claims Consent Program** will be deemed to be satisfied in full on account of such claim once they have received payment in cash equal to (i) 75% of the applicable Allowed Administrative Expense Claim on account of Opt-In Settled Admin

---

[7] The following is an illustrative summary of the benefits of the Administrative Expense Claims Consent Program and is qualified in its entirety by reference to the applicable provisions in the Confirmation Order.

Claims, and (ii) 80% of the applicable Allowed Administrative Expense Claim on account of Non Opt-Out Settled Admin Claims. Any Distributions made on account of Settled Administrative Expense Claims shall not be subject to disgorgement, including without limitation, upon any conversion or dismissal of the Chapter 11 Cases. And upon entry of the Confirmation Order, all Settled Administrative Expense Claims shall be Allowed against the Debtors in these Chapter 11 Cases on a consolidated basis, or upon any conversion or dismissal of the Chapter 11 Cases.

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMHOLDERS WHO OPT-OUT

If you **opt out of the Administrative Expense Claims Consent Program** prior to the Opt-In/Opt-Out Deadline, you will retain the right to receive payment of the Allowed 100% of your Administrative Expense Claim, but payment of your Administrative Expense Claim shall occur on the latest of (i) the Effective Date, (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim is Allowed, and (iii) the next Distribution Date after such Administrative Expense Claim is Allowed. Holders of opt-out Claims will not be entitled to participate in the Initial Distribution, Second Distribution, or any further distribution until the Plan has become effective or the Settled Administrative Expense Claims have been satisfied.

## ADDITIONAL INFORMATION

Pursuant to the Administrative Expense Claims Consent Program, holders bound by the Administrative Expense Claims Consent Program shall be paid in the following order of priority: (1) Holders of Opt-In Settled Admin Claims of their pro rata share of the Initial Cash Pool; (2) Holders of Non Opt-Out Settled Admin Claims of their pro rata share up to a percentage recovery equal to the Initial Recovery; and (3) all Holders bound by the Administrative Expense Claims Consent Program of the remaining unpaid amount of their Allowed Administrative Expense Claims up to the Settled Admin Expense Claims Recovery.

Each Holder of a Settled Administrative Expense Claim also agrees (1) to support the Plan; and (2) that acceptance of and consent to the Administrative Expense Claims Consent Program will be deemed consent to the Plan, acceptance of the treatment under the Plan in satisfaction of section 1129(a)(9) of the Bankruptcy Code, and agreement to provides the releases included in the Administrative Expense Claims Consent Program.

**Treatment of Holders of Administrative Expense Claims
Under Administrative Expense Claims Consent Program**

|  | Opt-In Settled Admin Claims | Non Opt-Out Settled Admin Claims | Opt-Out Administrative Expense Claims |
|---|---|---|---|
| **Maximum Recovery on Account of Allowed Administrative Expense Claim** | 75% of Allowed Amount | 80% of Allowed Amount | 100% of Allowed Amount |
| **Participates in Distribution of $21 million Initial Cash Pool on or about December 1, 2019** | Yes | No | No |
| **Participates in Second Distribution** | No[8] | Yes | No |
| **Distribution on the Later of (i) the Effective Date, (ii) 30 days after Allowance of the Claim, and (iii) the next Distribution Date after Allowance of the Claim** | N/A | N/A | Yes |

_____

[8] To the extent there are any amounts remaining for distribution after the Non Opt-out Settled Admin Claims have received the percentage recovery equal to the Initial Recovery, the Opt-In Settled Admin Claims shall share pro rata in such excess with the Non Opt-Out Settled Admin Claims.

| Claims Reconciliation to occur | Within 30 days of receipt of Opt-In Ballot | Within 30 days after Opt-In/Opt-Out Deadline | In ordinary course |
|---|---|---|---|

### INSTRUCTION FOR OPTING-IN OR OPTING-OUT

In order to **opt-in** to or **opt-out** of the Administrative Expense Claims Consent Program, you must complete, execute, and submit your Opt-In Ballot or Opt-Out Ballot to the Claims and Noticing Agent so that your Opt-In Ballot or Opt-Out Ballot is actually received by the Claims and Noticing Agent on or before the Opt-In/Opt-Out Deadline, which is **November 18, 2019, at 4:00 p.m.**, prevailing Eastern Time.

**You are strongly encouraged to review the Administrative Expense Claims Consent Program Term Sheet and the Plan before you make an election.  You may wish to seek legal advice concerning the Administrative Expense Claims Consent Program and the Election Ballots.**

**Acceptable Methods to Complete and Submit Your Election Ballots.**  You may elect to opt-in to or opt-out of the Administrative Expense Claims Consent Program by completing and submitting (i) an electronic Opt-In Ballot or Opt-Out Ballot through the dedicated, online portal maintained by the Claims and Noticing Agent ("**E-Ballot**") or (ii) one of the paper-copy Election Ballots (the "**Paper Election Ballots**").  In either case (E-Ballot or Paper Election Ballots), you must submit your Opt-In Ballot or Opt-Out Ballot to the Claims and Noticing Agent so that it is actually received by the Claims and Noticing Agent on or before the Opt-In/Opt-Out Deadlines.

### CERTAIN RISK FACTORS TO BE CONSIDERED

1.    **Risks Related to Debtors' Ability to Make Distributions**

(a)    **Debtors' Assets Available for Distributions**

As described in greater detail in the Griffith Declaration, Murphy Declaration, and Transier Declaration,[9] the Debtors' Assets as of the September 18, 2019 include approximately $173.5 million comprised of (i) approximately $50.1 million in cash on hand, (ii) $33.4 million on account of other Assets to be monetized, and (iii) approximately $97 million owed by Transform for the assumptions of 503(b)(9) Claims[10] (the "**Additional Asset Proceeds**"):

| Sources | | |
|---|---|---|
| Cash on Hand at 9/18/19 | $ | 50.1 |
| Calder Net Proceeds | | 10.0 |
| Real Estate Proceeds | | 13.1 |
| De Minimis Assets | | 5.3 |
| 2017 EDA Funds | | 5.0 |
| Transform 503(b)(9) Obligations | | 90.0 |
| **Total Sources** | **$** | **173.5** |

***In addition***, the Debtors believe they will receive significant recoveries from the proceeds of certain valuable litigation assets, including avoidance action arising under section 547 of the Bankruptcy Code or any comparable "preference" action arising under applicable non-bankruptcy law (collectively, the "**Preference Actions**"), certain

---

[9] *Declaration of Brian J. Griffith in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Liquidation of Sears Holdings Corporation and its Affiliated Debtors* (ECF No. 5148) (the "**Griffith Declaration**"), *Declaration of William Murphy in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Liquidation of Sears Holdings Corporation and its Affiliated Debtors* (ECF No. 5149) (the "**Murphy Declaration**"), *Declaration of William L. Transier in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Liquidation of Sears Holdings Corporation and its Affiliated Debtors* (ECF No. 5146) (the "**Transier Declaration**").

[10] The Debtors believe that pursuant to section 2.3(k)(ix) of the Asset Purchase Agreement, Transform is obligated to assume approximately $97 million on account of 503(b)(9) Claims.  The $90 million reflected herein ties to the $90 million of estimated 503(b)(9) Claims; to the extent the 503(b)(9) Claims are in excess of $90 million, Transform shall be liable to assume up to $97 million on account of 503(b)(9) Claims pursuant to the Asset Purchase Agreement.  Transform disputes that it owes such amounts to the Debtors.

prepetition related party transaction claims against ESL Investments, Inc. and its affiliates ("**ESL**") and other parties, and potential settlements with insurers with respect to claims against the D&O Policy (together the "**Litigation Proceeds**"), although there can be no assurance of any recovery:

- **Preference Actions**. The Debtors estimate that they will receive at least approximately $100 million in recoveries from Preference Actions out of an excess of $1.345 billion of gross total transfers in the preference window, which is consistent with comparable transactions where the average range of recoveries is from 11.4% if the gross total transfers pursued or, alternatively 23.7% of those transfers, net of subsequent new value. *See* Griffith Decl., ¶¶ 64-70.

- **ESL Litigation**. The Debtors' Restructuring Subcommittee and the Creditors' Committee both have investigated the prepetition related party transaction claims and concluded that such claims are meritorious. On April 17, 2019 the Restructuring Subcommittee, on behalf of certain of the Debtors, filed an adversary complaint against ESL Investments, Inc., its affiliates, various third parties, and certain of the Debtors' directors and officers (ECF No. 3278) (the "**Subcommittee Adversary Complaint**"), seeking over $2 billion in damages arising from certain prepetition related party transactions. *See* Transier Decl., ¶¶ 20-27. As of the date hereof, the Court has not heard any arguments or considered any evidence in connection with the Subcommittee Adversary Complaint. Current and prospective defendants dispute the validity of Claims asserted in the Subcommittee Adversary Complaint, and there is no assurance of any recovery.

- **D&O Insurance**. The Debtors believe they may be able to receive significant recoveries against available D&O Policies on account of Preserved Causes of Action against the Specified Directors and Officers. The Debtors believe that there is at least approximately $150 million of available directors and officers liability insurance that provides a source of recovery to the Debtor plaintiffs in the Subcommittee Adversary Complaint against parties (in their capacity as directors and/or officers) who are covered by such insurance. Certain defendants (such as ESL, Lampert and the Seritage parties) in the Subcommittee Adversary Complaint may also be liable for sums separate and apart from any available insurance coverage. *See* Transier Decl., ¶ 28. Certain insurers have disclaimed coverage under certain of the D&O Policies.

There can be no assurance that the Debtors will be able to successfully monetize their Assets in the projected amounts or when such Assets will be monetized. There is a risk that the Net Proceeds of Total Assets, including the Litigation Proceeds, may be significantly less than projected, which, in turn, could cause the amount and timing of Distributions to adversely change substantially. Further, unanticipated events and circumstances may affect the ultimate recoveries.

$(b)$    **Debtors' Estimate of Outstanding Claims on the Effective Date**

The Debtors and their advisors have conducted an extensive analysis to estimate the Debtors' outstanding Claims pool and are continuing to review and analyze Claims. The Debtors have filed and intend to continue to file objections to Claims. In the aggregate, the Debtors believe that the sources above will be enough to satisfy the Debtors' estimate of outstanding Claims by the Effective Date:

| Uses | Low Claims | High Claims |
|------|-----------:|------------:|
| Liquidating Trust funding | $ (25.0) | $ (25.0) |
| Remaining estate professional fees | (9.0) | (9.0) |
| 503(b)(9) | (90.0) | (155.0) |
| Other Admin Claims | (50.0) | (50.0) |
| Secured | (18.0) | (18.0) |
| Priority Tax | (15.0) | (18.0) |
| Priority Non-Tax | (3.0) | (3.0) |
| **Total Uses** | **$ (210.0)** | **$ (278.0)** |
| | | |
| **Total Potential Shortfall (without Litigation Proceeds)** | **$ (36.5)** | **$ (104.5)** |

But, there can be no assurance that the estimated Allowed amount of Claims will not be significantly more than projected, which, in turn, could cause the total recovery on Administrative Expense Claims to be lower. Some assumptions may not materialize, and unanticipated events and circumstances may affect the ultimate results. Therefore, the actual amount of Allowed Claims may vary from the Debtors' feasibility analysis, and the variation may be material.

### (c)   Distribution Funding Sources

The Initial Cash Pool, the Second Distribution, additional pre-Effective Date distributions to Settled Administrative Expense Claims, and post-Effective Date Distributions to Opt-Out Claims, will be funded from the following sources, as follows:

| | Within three (3) Business Days of Entry of the Confirmation Order[11] | Post-Confirmation Date, Pre-Effective Date | Post-Effective Date |
|---|---|---|---|
| **Initial Cash Pool ($21 million) for the Initial Distribution to Opt-In Settled Admin Claims only** | $16 million funded from: (i) unrestricted cash on hand and (ii) a minimum of $3 million from the Carve-Out Account | $5 million from Additional Asset Proceeds *and/or* Litigation Proceeds (to occur prior to the Initial Distribution) | N/A |
| **Second Distribution to Non Opt-Out Settled Admin Claims[12]** | N/A | Subject to the Minimum Conditions,[13] from Additional Asset Proceeds *and/or* Litigation Proceeds | N/A |
| **Further Distribution(s) to Settled Admin Claims** | N/A | Subject to the Second Distribution, from Additional Asset Proceeds *and/or* Litigation Proceeds | N/A |
| **Distributions to Opt-Out Claims** | N/A | N/A | From Additional Asset Proceeds *and/or* Litigation Proceeds |

---

[11] Within three (3) Business Days of entry of the Confirmation Order, an additional (i) $15 million from cash on hand will be placed into the segregated Litigation Funding Account for funding of the litigation associated with the Jointly Asserted Causes of Action (the "**Litigation Funding**") and (ii) $5 million will be placed into the segregated Cash Reserve Account for post-Confirmation estate costs including, without limitation, additional professional fees of the Debtors' and the Creditors' Committee not included in the Carve-Out Account as of the entry of the Confirmation Order (the "**Cash Reserve**").

[12] To the extent there are any amounts remaining for distribution after the Non Opt-out Settled Admin Claims have received the percentage recovery equal to the Initial Recovery, the Opt-In Settled Admin Claims shall share pro rata in such excess with the Non Opt-Out Settled Admin Claims.

[13] The Second Distribution shall not occur until each of the until each of the following conditions is met: (i) a total of $25 million has been funded into the Litigation Funding Account in the aggregate, (ii) there has been a funding of $10 million in the aggregate in the Cash Reserve Account and (iii) the Segregated Account has an additional $10 million in cash (together, the "**Minimum Conditions**").

**2.    Risk of Non-Occurrence of Effective Date**

Although the Debtors believe that the Effective Date will occur soon after the Confirmation Date, there can be no assurance as to the timing of the Effective Date.  If the conditions precedent to the Effective Date set forth in the Plan have not occurred or have not been waived as set forth in Article X of the Plan or the Debtors are unable to pay their obligations as required under section 1129(a)(9) of the Bankruptcy Code, then the Confirmation Order may be vacated.  Any Distributions made on account of Settled Administrative Expense Claims shall not be subject to disgorgement, including without limitation, upon any conversion or dismissal of the Chapter 11 Cases.

**3.    Risks Related to the Causes of Action**

There is no guarantee as to the success of pursuing any Cause of Action.  The success of the Debtors and the Creditors' Committee or Liquidating Trust in pursuing any Cause of Action, as well as the expenses incurred in investigating and prosecuting the Causes of Action, may materially affect the recoveries for the holders of Allowed Claims.

**4.    No Legal or Tax Advice Is Provided by this Disclosure Statement**

The contents of this notice should not be construed as legal, business, or tax advice.  Each holder of a Claim should consult their own legal counsel and accountant as to legal, tax, and other matters concerning their Claim.  This notice may not be relied upon for any purpose other than to determine how to elect how to be treated under the Administrative Expense Claims Consent Program.

**5.    No Admission Made**

Nothing contained herein or in the Plan shall constitute an admission of, or shall be deemed evidence of, the tax or other legal effects of the Plan or Administrative Expense Claims Consent Program on the Debtors or holders of Claims or Interests.

For additional risk factors and considerations, including the position of Transform and/or ESL Parties, please review section VIII.A of the Disclosure Statement.  Should you wish to obtain a copy of the Disclosure Statement, Plan, Confirmation Order, the Administrative Expense Claims Consent Program Term Sheet, or any other documents in these Chapter 11 Cases, you should contact the Debtors' Claims and Noticing Agent, Prime Clerk LLC by: (a) visiting the Debtors' restructuring website at: https://restructuring.primeclerk.com/sears; (b) writing to Sears Admin. Claims Consent Prgm Ballot Processing, c/o Prime Clerk LLC, 850 Third Avenue, Suite 412, Brooklyn, New York 11232; and/or (c) emailing **searsinfo@primeclerk.com**.  You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.vaeb.uscourts.gov.

**EXHIBIT A**

**OPT-IN BALLOT**

**PLEASE FOLLOW THESE INSTRUCTIONS FOR SUBMITTING YOUR <u>OPT-IN ELECTION</u>. IF YOU ELECT TO OPT-IN TO THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, PLEASE COMPLETE, SIGN, DATE, AND TRANSMIT THIS OPT-IN BALLOT SO THAT IT IS *ACTUALLY RECEIVED* BY THE CLAIMS AND NOTICING AGENT ON OR BEFORE <u>NOVEMBER 18, 2019, AT 4:00 P.M. (PREVAILING EASTERN TIME)</u>**

**YOU MAY RETURN YOUR OPT-IN BALLOT IN THE PRE-ADDRESSED, PRE-PAID RETURN ENVELOPE PROVIDED OR VIA FIRST CLASS MAIL, HAND DELIVERY, OR OVERNIGHT COURIER, TO:**

**SEARS ADMIN. CLAIMS CONSENT PRGM BALLOT PROCESSING**
**C/O PRIME CLERK LLC**
**850 THIRD AVENUE, SUITE 412**
**BROOKLYN, NEW YORK 11232**

| To Submit Your Opt-In Ballot Via E-Ballot |
|---|

To submit your Opt-In via E-Ballot, visit https://restructuring.primeclerk.com/sears. Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Opt-In Ballot.

IMPORTANT NOTE: You will need the following information to retrieve and submit your electronic Opt-In Ballot:

**Unique E-Ballot ID#:** 182353801039824

E-Ballot is the sole manner in which Opt-In will be accepted via electronic or online transmission. Opt-In Ballots submitted by facsimile, email or other means of electronic transmission will not be valid. Any Opt-In submitted through E-Ballot with the Holder's electronic signature will be deemed to be immediately legally valid and effective.

Please complete and submit an electronic Opt-In Ballot for each E-Ballot ID# you receive, as applicable.

Holders who cast an Opt-In using E-Ballot should NOT also submit a Paper Copy.

| To Submit Your Opt-In Ballot Via Paper Copy |
|---|

To submit your Opt-In via Paper Opt-In Ballot, complete items 1, 2, and 3 below and submit your Paper Opt-In Ballot in the pre-addressed, pre-paid return envelope provided or by first-class mail, hand delivery, or overnight courier to:

Sears Admin. Claims Consent Prgm Ballot Processing
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, New York 11232

<u>**Item 1**</u>. **Amount of Administrative Expense Claim(s).**

The undersigned hereby certifies that as of the date of completion of this Opt-In Ballot, the undersigned asserts it was the Holder of an Administrative Expense Claim(s) in the following aggregate amount:[1]

$ 756,245.02

---

[1] This amount should represent the amount of your previously-asserted Administrative Expense Claim(s). If the Debtors do not have a specific Administrative Expense Claim amount on file for you, the box in Item 1 of this Opt-In Ballot will be blank. For reference purposes, you should insert the relevant amount of your alleged Administrative Expense Claim; however, for the avoidance of doubt, this Opt-In Ballot is not to be used to assert your Administrative Expense Claim(s). For more information about asserting an Administrative Expense Claim(s), visit the Debtors' case

**Item 2. Administrative Expense Claims Consent Program Election.** You may elect to opt-in to the Administrative Expense Claims Consent Program by checking the box below and returning this Opt-In Ballot to the Claims and Noticing Agent on or before the Opt-In/Opt-Out Deadline pursuant to the instructions set forth herein. If you return this Opt-In Ballot but do not check the box below or do not return this Opt-In Ballot, you will not be entitled to the Initial Distribution. If you submit multiple Opt-In Ballots, your last timely received Opt-In Ballot shall control. Election to withhold consent is at your option.

 **THE HOLDER OF THE ADMINISTRATIVE EXPENSE CLAIM(S) SET FORTH IN ITEM 1 ELECTS TO OPT-IN TO THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM.**

**Item 3. Acknowledgments.** By signing this Opt-In Ballot, the undersigned Holder of an Administrative Expense Claim(s) identified in Item 1 above certifies that (i) it is the Holder of the Administrative Expense Claim(s) identified in Item 1 above or (ii) it has full power and authority to act on behalf of the Holder of the Administrative Expense Claim(s) identified in Item 1 above.

| | |
|---|---|
| Jayson M. Macyda | |
| Name | |
| | |
| Social Security or Federal Tax I.D. No. (optional) | |
| **Signature:** *Jayson M. Macyda* | |
| Jayson M. Macyda (Nov 16, 2019) | |
| **Email:** generalcounsel@kykoglobal.com | |
| Signature | |
| Attorney | |
| If by Authorized Agent, Name and Title | |
| | |
| Name of Institution | |
| P.O. Box 87491 | |
| Street Address | |
| Canton, MI 48187 | |
| City, State, Zip Code | |
| | |
| Telephone Number | |
| generalcounsel@kykoglobal.com | |
| Email Address | |
| November 16, 2019 | |
| Date Completed | |

**If you elect to opt-in to the Administrative Expense Claims Consent Program, please return your Opt-In Ballot promptly.** If you have any questions regarding this Opt-In Ballot or the procedures for opting out, please contact the Debtors' Claims and Noticing Agent, by: (a) visiting the Debtors' restructuring website at: https://restructuring.primeclerk.com/sears; (b) writing to Sears Admin. Claims Consent Prgm Ballot Processing, c/o Prime Clerk LLC, 850 Third Avenue, Suite 412, Brooklyn, New York 11232; and/or (c) emailing **searsinfo@primeclerk.com**.

> If the Claims and Noticing Agent does **not** actually receive the Opt-In Form on or before November 18, 2019, at 4:00 p.m., prevailing Eastern Time indicating your intent to opt-in to the Administrative Expense Claims Consent Program (and if the Opt-In/Opt-Out Deadline is not extended), your opt-in election will not be effective.

---

website: https://restructuring.primeclerk.com/sears. The Debtors reserve the right to dispute and validate the amount of your asserted Administrative Expense Claim(s).

SRF 36417

SRF 36417

**EXHIBIT B**

**OPT-OUT BALLOT**

**PLEASE FOLLOW THESE INSTRUCTIONS FOR SUBMITTING YOUR <u>OPT-OUT ELECTION</u>.  IF YOU ELECT TO OPT-OUT OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, PLEASE COMPLETE, SIGN, DATE, AND TRANSMIT THIS OPT-OUT BALLOT SO THAT IT IS *ACTUALLY RECEIVED* BY THE CLAIMS AND NOTICING AGENT ON OR BEFORE <u>NOVEMBER 18, 2019, AT 4:00 P.M. (PREVAILING EASTERN TIME)</u>**

**IF YOU WOULD LIKE TO RECEIVE THE BENEFITS OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM AND DO NOT WISH TO OPT-OUT OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, YOU DO NOT NEED TO TAKE ANY FURTHER ACTION AT THIS TIME.**

**YOU MAY RETURN YOUR OPT-OUT BALLOT IN THE PRE-ADDRESSED, PRE-PAID RETURN ENVELOPE PROVIDED OR VIA FIRST CLASS MAIL, HAND DELIVERY, OR OVERNIGHT COURIER, TO:**

**SEARS ADMIN. CLAIMS CONSENT PRGM BALLOT PROCESSING**
**C/O PRIME CLERK LLC**
**850 THIRD AVENUE, SUITE 412**
**BROOKLYN, NEW YORK 11232**

| To Submit Your Opt-Out Ballot Via E-Ballot |
| --- |

To submit your Opt-Out via E-Ballot, visit https://restructuring.primeclerk.com/sears.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Opt-Out Ballot.

IMPORTANT NOTE: You will need the following information to retrieve and submit your electronic Opt-Out Ballot:

**Unique E-Ballot ID#:** 182353801039824

E-Ballot is the sole manner in which Opt-Out will be accepted via electronic or online transmission.  Opt-Out Ballots submitted by facsimile, email or other means of electronic transmission will not be valid.  Any Opt-Out submitted through E-Ballot with the Holder's electronic signature will be deemed to be immediately legally valid and effective.

Please complete and submit an electronic Opt-Out Ballot for each E-Ballot ID# you receive, as applicable.

Holders who cast an Opt-Out using E-Ballot should NOT also submit a Paper Copy.

| To Submit Your Opt-Out Ballot Via Paper Copy |
| --- |

To submit your Opt-Out via Paper Opt-Out Ballot, complete items 1, 2, and 3 below and submit your Paper Opt-Out Ballot in the pre-addressed, pre-paid return envelope provided or by first-class mail, hand delivery, or overnight courier to:

Sears Admin. Claims Consent Prgm Ballot Processing
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, New York 11232

**Item 1. Amount of Administrative Expense Claim(s).**

The undersigned hereby certifies that as of the date of completion of this Opt-Out Ballot, the undersigned asserts it was the Holder of an Administrative Expense Claim(s) in the following aggregate amount:[1]

$ 756,245.02

**Item 2. Administrative Expense Claims Consent Program Election.** You may elect to opt-out of the Administrative Expense Claims Consent Program by checking the box below and returning this Opt-Out Ballot to the Claims and Noticing Agent on or before the Opt-In/Opt-Out Deadline pursuant to the instructions set forth herein. If you return this Opt-Out Ballot but do not check the box below or do not return this Opt-Out Ballot, you will be bound by the Administrative Expense Claims Consent Program. If you submit multiple Opt-Out Ballots, your last timely received Opt-Out Ballot shall control. Election to withhold consent is at your option.

☐ **THE HOLDER OF THE ADMINISTRATIVE EXPENSE CLAIM(S) SET FORTH IN ITEM 1 ELECTS TO OPT-OUT OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM.**

**Item 3. Acknowledgments.** By signing this Opt-Out Ballot, the undersigned Holder of an Administrative Expense Claim(s) identified in Item 1 above certifies that (i) it is the Holder of the Administrative Expense Claim(s) identified in Item 1 above or (ii) it has full power and authority to act on behalf of the Holder of the Administrative Expense Claim(s) identified in Item 1 above.

| Jayson M. Macyda |
| --- |
| Name |

| |
| --- |
| Social Security or Federal Tax I.D. No. (optional) |

**Signature:** *Jayson M. Macyda*
Jayson M. Macyda (Nov 16, 2019)

Signature

**Email:** generalcounsel@kykoglobal.com

| |
| --- |
| If by Authorized Agent, Name and Title |

| Attorney |
| --- |
| Name of Institution |

| |
| --- |
| Street Address |

| P.O. Box 87491 |
| --- |
| City, State, Zip Code |

| Canton, MI 48187 |
| --- |
| Telephone Number |

| |
| --- |
| Email Address |

| November 16, 2019 |
| --- |
| Date Completed |

---

[1] This amount should represent the amount of your previously-asserted Administrative Expense Claim(s). If the Debtors do not have a specific Administrative Expense Claim amount on file for you, the box in Item 1 of this Opt-Out Ballot will be blank. For reference purposes, you should insert the relevant amount of your alleged Administrative Expense Claim; however, for the avoidance of doubt, this Opt-Out Ballot is not to be used to assert your Administrative Expense Claim(s). For more information about asserting an Administrative Expense Claim(s), visit the Debtors' case website: https://restructuring.primeclerk.com/sears. The Debtors reserve the right to dispute and validate the amount of your asserted Administrative Expense Claim(s).

SRF 36417

**If you elect to opt-out of the Administrative Expense Claims Consent Program, please return your Opt-Out Ballot promptly.**  If you have any questions regarding this Opt-Out Ballot or the procedures for opting out, please contact the Debtors' Claims and Noticing Agent, by: (a) visiting the Debtors' restructuring website at: https://restructuring.primeclerk.com/sears; (b) writing to Sears Admin. Claims Consent Prgm Ballot Processing, c/o Prime Clerk LLC, 850 Third Avenue, Suite 412, Brooklyn, New York 11232; and/or (c) emailing **searsinfo@primeclerk.com**.

> If the Claims and Noticing Agent does **not** actually receive the Opt-Out Ballot on or before November 18, 2019, at 4:00 p.m., prevailing Eastern Time indicating your intent to opt-out of the Administrative Expense Claims Consent Program (and if the Opt-In/Opt-Out Deadline is not extended), your opt-out election will not be effective.

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                          :
```

**In re**                                :        **Chapter 11**

                                          :

**SEARS HOLDINGS CORPORATION**, *et al.*, :        **Case No. 18-23538 (RDD)**

                                          :

        **Debtors.**[1]                    :        **(Jointly Administered)**

                                          :

```
------------------------------------------------------------x
```

**NOTICE OF**
**(I) BALLOT TO OPT-IN TO ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM AND**
**(II) BALLOT TO OPT-OUT OF ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THE (I) OPT-IN BALLOT ATTACHED HERETO AS EXHIBIT A OR (II) OPT-OUT BALLOT ATTACHED HERETO AS EXHIBIT B.**

**IF YOU DO NOT TAKE ANY ACTION, YOU WILL BE DEEMED TO BE BOUND BY THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, BUT NOT ENTITLED TO THE BENEFITS THAT WILL BE PROVIDED TO HOLDERS OF ADMINSTRATIVE EXPENSE CLAIMS WHO TIMELY OPT IN TO THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, AS DESCRIBED BELOW.**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order Directing Joint Administration of Related Chapter 11 Cases* (ECF No. 118). The location of the Debtors' service address is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**IN ORDER FOR YOUR OPT-IN BALLOT OR OPT-OUT BALLOT TO BE EFFECTIVE,
THE APPLICABLE BALLOT MUST BE ACTUALLY RECEIVED BY
NOVEMBER 18, 2019,[2] AT 4:00 P.M. (PREVAILING EASTERN TIME)
(THE "OPT-IN/OPT-OUT DEADLINE").**

FAILURE TO OPT-IN TO THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM
BY COMPLETING AND TIMELY SUBMITTING AN OPT-IN BALLOT MEANS YOU WILL NOT BE
ENTITLED PARTICIPATE IN TO THE INITIAL DISTRIBUTION (AS DEFINED HEREIN).

FAILURE TO OPT-OUT OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM
BY COMPLETING AND TIMELY SUBMITTING AN OPT-OUT BALLOT WILL
BIND YOU TO THE TERMS OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM.

On October 15, 2019, the Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") entered an order confirming the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors* [ECF No. 5293] (the "**Plan**"),[3] approving, among other things, a proposed consent program for holders of Administrative Expense Claims (the "**Administrative Expense Claims Consent Program**") by and among the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), the Creditors' Committee and the Ad Hoc Vendor Group[4] [ECF No. 5370] (the "**Confirmation Order**").[5]

You are receiving the opt-in ballot (the "**Opt-In Ballot**"), attached hereto as **Exhibit A**, and the opt-out ballot (the "**Opt-Out Ballot**" and together with the Opt-In Ballot, the "**Election Ballots**"), attached hereto as **Exhibit B**, because, as a holder of an Administrative Expense Claim,[6] you are entitled to opt-in to or opt-out of the Administrative Expense Claims Consent Program.

**If you do not take any action, you will be deemed to have opted in and will be bound by the Administrative Expense Claims Consent Program, but not entitled to any benefits that will be provided to holders of Administrative Expense Claims who affirmatively opt-in to the Administrative Expense Claims Consent Program prior to the Opt-In/Opt-Out Deadline, namely, participation in an initial distribution of $21 million on or about December 1, 2019 to all holders of Administrative Expense Claims who opt-in to the Administrative Expense Claims Consent Program.**

All Holders of Administrative Expense Claims (other than the Ad Hoc Vendor Group that is deemed to have opted-in) have an option to opt-in to or opt-out of the Administrative Expense Claims Consent Program and releases contained therein. **The Creditors' Committee and the Debtors recommend that you affirmatively opt-in to and do not opt-out the Administrative Expense Claims Consent Program.**

---

[2] Thirty-three (33) days after service of this notice.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Confirmation Order or the Plan.

[4] The "**Ad Hoc Vendor Group**" means collectively, Whitebox Asymmetric Partners, LP, Whitebox Multi-Strategy Partners, LP, Hain Capital Investors Master Fund, Ltd., and Cherokee Debt Acquisition, LLC.

[5] Copies of the Plan, Confirmation Order, and the Administrative Expense Claims Consent Program Term Sheet may be accessed free of charge by visiting the website maintained by the Debtors' agent, Prime Clerk, LLC (the "**Claims and Noticing Agent**") at https://restructuring.primeclerk.com/sears.

[6] Specifically, you are receiving the Election Ballots because either (i) the Debtors believe you may be a Holder of an Administrative Expense Claim as of August 6, 2019 or (ii) you filed a proof of Administrative Expense Claim, filed a motion seeking allowance of an Administrative Expense Claim, or have otherwise asserted an Administrative Expense Claim in these Chapter 11 Cases.

### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMHOLDERS WHO AFFIRMATIVELY OPT-IN

All holders of Allowed Administrative Expense Claims <u>that affirmatively opt-in</u> (the "**Opt-In Settled Admin Claims**") to the Administrative Expense Claims Consent Program prior to the Opt-In/Opt-Out Deadline shall receive, among other things:[7]

- Their pro rata share of $21 million ("**Initial Cash Pool**"), on or about December 1, 2019 (the percentage recovery, the "**Initial Recovery**");

- total recovery capped at 75% of the Allowed Administrative Expense Claim;

- such $21 million shall only be available to holders of Opt-In Settled Admin Claims who consensually agree with the Debtors to the Allowed amount of the Opt-In Settled Admin Claims;

- consensual reconciliation of the Allowed amount of Opt-In Settled Admin Claims (including on account of 503(b)(9) and 503(b)(1) issues regarding inducement, date of receipt, port of origin, etc., and any exposure on account of preference actions), to be completed within 30 days from the date of receipt of the Opt-In Ballot (the "**Expedited Reconciliation**");

- to the extent the Debtors, the Creditors' Committee, and the holder of the Opt-In Settled Admin Claim are unable to consensually resolve the Allowed amount, such resolution shall be subject to reconciliation on an agreed-upon schedule as reasonably agreed to by the Debtors, the Creditors' Committee, and the applicable holder of an Opt-In Settled Admin Claim;

- for the avoidance of doubt, any waiver or settlement of any preference action shall be considered on a case-by-case basis; and

- holders who do not agree with the Debtors and the Creditors' Committee on the Allowed amount of Opt-In Settled Admin Claims shall be deemed to hold a Non Opt-Out Settled Admin Claim.

### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMHOLDERS WHO NEITHER OPT-IN NOR OPT-OUT

All Holders of an Allowed Administrative Expense Claim against the Debtors who <u>neither (i) opt-in to the Administrative Expense Claims Consent Program nor (ii) opt-out of the Administrative Expense Claims Consent Program</u> prior to the Opt-In/Opt-Out Deadline (the "**Non Opt-Out Settled Admin Claims**," and together with the Opt-In Settled Admin Claims, the "**Settled Administrative Expense Claims**") shall receive, among other things:

- its pro rata share of the Second Distribution, which will be shared only by other holders of Non Opt-Out Settled Admin Claims until they have received a percentage of distribution on their Non Opt-Out Settled Admin Claims that is equal to the Initial Recovery provided to holders of Opt-In Settled Claims;

- total recovery capped at 80% of the Allowed Administrative Expense Claim (together with the Initial Recovery, the "**Settled Admin Expense Claims Recovery**");

- Expedited Reconciliation to be completed within 30 days from the Opt-In/Opt-Out Deadline;

- to the extent the Debtors, the Creditors' Committee, and the holder of the Non Opt-Out Settled Admin Claim are unable to consensually resolve the Allowed amount, such resolution shall be subject to reconciliation on an agreed-upon schedule as reasonably agreed to by the Debtors, the Creditors' Committee, and the applicable holder of a Non Opt-Out Settled Admin Claim; and

- any waiver or settlement of any preference action shall be considered on a case-by-case basis.

**All holders of Administrative Expense Claims who do not opt out of the Administrative Expense Claims Consent Program** will be deemed to be satisfied in full on account of such claim once they have received payment in cash equal to (i) 75% of the applicable Allowed Administrative Expense Claim on account of Opt-In Settled Admin

---

[7] The following is an illustrative summary of the benefits of the Administrative Expense Claims Consent Program and is qualified in its entirety by reference to the applicable provisions in the Confirmation Order.

Claims, and (ii) 80% of the applicable Allowed Administrative Expense Claim on account of Non Opt-Out Settled Admin Claims. Any Distributions made on account of Settled Administrative Expense Claims shall not be subject to disgorgement, including without limitation, upon any conversion or dismissal of the Chapter 11 Cases. And upon entry of the Confirmation Order, all Settled Administrative Expense Claims shall be Allowed against the Debtors in these Chapter 11 Cases on a consolidated basis, or upon any conversion or dismissal of the Chapter 11 Cases.

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMHOLDERS WHO OPT-OUT

If you **opt out of the Administrative Expense Claims Consent Program** prior to the Opt-In/Opt-Out Deadline, you will retain the right to receive payment of the Allowed 100% of your Administrative Expense Claim, but payment of your Administrative Expense Claim shall occur on the latest of (i) the Effective Date, (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim is Allowed, and (iii) the next Distribution Date after such Administrative Expense Claim is Allowed. Holders of opt-out Claims will not be entitled to participate in the Initial Distribution, Second Distribution, or any further distribution until the Plan has become effective or the Settled Administrative Expense Claims have been satisfied.

## ADDITIONAL INFORMATION

Pursuant to the Administrative Expense Claims Consent Program, holders bound by the Administrative Expense Claims Consent Program shall be paid in the following order of priority: (1) Holders of Opt-In Settled Admin Claims of their pro rata share of the Initial Cash Pool; (2) Holders of Non Opt-Out Settled Admin Claims of their pro rata share up to a percentage recovery equal to the Initial Recovery; and (3) all Holders bound by the Administrative Expense Claims Consent Program of the remaining unpaid amount of their Allowed Administrative Expense Claims up to the Settled Admin Expense Claims Recovery.

Each Holder of a Settled Administrative Expense Claim also agrees (1) to support the Plan; and (2) that acceptance of and consent to the Administrative Expense Claims Consent Program will be deemed consent to the Plan, acceptance of the treatment under the Plan in satisfaction of section 1129(a)(9) of the Bankruptcy Code, and agreement to provides the releases included in the Administrative Expense Claims Consent Program.

### Treatment of Holders of Administrative Expense Claims
### Under Administrative Expense Claims Consent Program

|  | Opt-In Settled Admin Claims | Non Opt-Out Settled Admin Claims | Opt-Out Administrative Expense Claims |
|---|---|---|---|
| **Maximum Recovery on Account of Allowed Administrative Expense Claim** | 75% of Allowed Amount | 80% of Allowed Amount | 100% of Allowed Amount |
| **Participates in Distribution of $21 million Initial Cash Pool on or about December 1, 2019** | Yes | No | No |
| **Participates in Second Distribution** | No[8] | Yes | No |
| **Distribution on the Later of (i) the Effective Date, (ii) 30 days after Allowance of the Claim, and (iii) the next Distribution Date after Allowance of the Claim** | N/A | N/A | Yes |

---

[8] To the extent there are any amounts remaining for distribution after the Non Opt-out Settled Admin Claims have received the percentage recovery equal to the Initial Recovery, the Opt-In Settled Admin Claims shall share pro rata in such excess with the Non Opt-Out Settled Admin Claims.

4

| **Claims Reconciliation to occur** | Within 30 days of receipt of Opt-In Ballot | Within 30 days after Opt-In/Opt-Out Deadline | In ordinary course |

## INSTRUCTION FOR OPTING-IN OR OPTING-OUT

In order to **opt-in** to or **opt-out** of the Administrative Expense Claims Consent Program, you must complete, execute, and submit your Opt-In Ballot or Opt-Out Ballot to the Claims and Noticing Agent so that your Opt-In Ballot or Opt-Out Ballot is actually received by the Claims and Noticing Agent on or before the Opt-In/Opt-Out Deadline, which is **November 18, 2019, at 4:00 p.m.**, prevailing Eastern Time.

**You are strongly encouraged to review the Administrative Expense Claims Consent Program Term Sheet and the Plan before you make an election. You may wish to seek legal advice concerning the Administrative Expense Claims Consent Program and the Election Ballots.**

**Acceptable Methods to Complete and Submit Your Election Ballots.** You may elect to opt-in to or opt-out of the Administrative Expense Claims Consent Program by completing and submitting (i) an electronic Opt-In Ballot or Opt-Out Ballot through the dedicated, online portal maintained by the Claims and Noticing Agent ("**E-Ballot**") or (ii) one of the paper-copy Election Ballots (the "**Paper Election Ballots**"). In either case (E-Ballot or Paper Election Ballots), you must submit your Opt-In Ballot or Opt-Out Ballot to the Claims and Noticing Agent so that it is actually received by the Claims and Noticing Agent on or before the Opt-In/Opt-Out Deadlines.

## CERTAIN RISK FACTORS TO BE CONSIDERED

1. **Risks Related to Debtors' Ability to Make Distributions**

   (a) **Debtors' Assets Available for Distributions**

As described in greater detail in the Griffith Declaration, Murphy Declaration, and Transier Declaration,[9] the Debtors' Assets as of the September 18, 2019 include approximately $173.5 million comprised of (i) approximately $50.1 million in cash on hand, (ii) $33.4 million on account of other Assets to be monetized, and (iii) approximately $97 million owed by Transform for the assumptions of 503(b)(9) Claims[10] (the "**Additional Asset Proceeds**"):

| Sources | | |
|---|---:|---:|
| Cash on Hand at 9/18/19 | $ | 50.1 |
| Calder Net Proceeds | | 10.0 |
| Real Estate Proceeds | | 13.1 |
| De Minimis Assets | | 5.3 |
| 2017 EDA Funds | | 5.0 |
| Transform 503(b)(9) Obligations | | 90.0 |
| **Total Sources** | **$** | **173.5** |

***In addition***, the Debtors believe they will receive significant recoveries from the proceeds of certain valuable litigation assets, including avoidance action arising under section 547 of the Bankruptcy Code or any comparable "preference" action arising under applicable non-bankruptcy law (collectively, the "**Preference Actions**"), certain

---

[9] *Declaration of Brian J. Griffith in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Liquidation of Sears Holdings Corporation and its Affiliated Debtors* (ECF No. 5148) (the "**Griffith Declaration**"), *Declaration of William Murphy in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Liquidation of Sears Holdings Corporation and its Affiliated Debtors* (ECF No. 5149) (the "**Murphy Declaration**"), *Declaration of William L. Transier in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Liquidation of Sears Holdings Corporation and its Affiliated Debtors* (ECF No. 5146) (the "**Transier Declaration**").

[10] The Debtors believe that pursuant to section 2.3(k)(ix) of the Asset Purchase Agreement, Transform is obligated to assume approximately $97 million on account of 503(b)(9) Claims. The $90 million reflected herein ties to the $90 million of estimated 503(b)(9) Claims; to the extent the 503(b)(9) Claims are in excess of $90 million, Transform shall be liable to assume up to $97 million on account of 503(b)(9) Claims pursuant to the Asset Purchase Agreement. Transform disputes that it owes such amounts to the Debtors.

prepetition related party transaction claims against ESL Investments, Inc. and its affiliates ("**ESL**") and other parties, and potential settlements with insurers with respect to claims against the D&O Policy (together the "**Litigation Proceeds**"), although there can be no assurance of any recovery:

- **Preference Actions**. The Debtors estimate that they will receive at least approximately $100 million in recoveries from Preference Actions out of an excess of $1.345 billion of gross total transfers in the preference window, which is consistent with comparable transactions where the average range of recoveries is from 11.4% if the gross total transfers pursued or, alternatively 23.7% of those transfers, net of subsequent new value. *See* Griffith Decl., ¶¶ 64-70.

- **ESL Litigation**. The Debtors' Restructuring Subcommittee and the Creditors' Committee both have investigated the prepetition related party transaction claims and concluded that such claims are meritorious. On April 17, 2019 the Restructuring Subcommittee, on behalf of certain of the Debtors, filed an adversary complaint against ESL Investments, Inc., its affiliates, various third parties, and certain of the Debtors' directors and officers (ECF No. 3278) (the "**Subcommittee Adversary Complaint**"), seeking over $2 billion in damages arising from certain prepetition related party transactions. *See* Transier Decl., ¶¶ 20-27. As of the date hereof, the Court has not heard any arguments or considered any evidence in connection with the Subcommittee Adversary Complaint. Current and prospective defendants dispute the validity of Claims asserted in the Subcommittee Adversary Complaint, and there is no assurance of any recovery.

- **D&O Insurance**. The Debtors believe they may be able to receive significant recoveries against available D&O Policies on account of Preserved Causes of Action against the Specified Directors and Officers. The Debtors believe that there is at least approximately $150 million of available directors and officers liability insurance that provides a source of recovery to the Debtor plaintiffs in the Subcommittee Adversary Complaint against parties (in their capacity as directors and/or officers) who are covered by such insurance. Certain defendants (such as ESL, Lampert and the Seritage parties) in the Subcommittee Adversary Complaint may also be liable for sums separate and apart from any available insurance coverage. *See* Transier Decl., ¶ 28. Certain insurers have disclaimed coverage under certain of the D&O Policies.

There can be no assurance that the Debtors will be able to successfully monetize their Assets in the projected amounts or when such Assets will be monetized. There is a risk that the Net Proceeds of Total Assets, including the Litigation Proceeds, may be significantly less than projected, which, in turn, could cause the amount and timing of Distributions to adversely change substantially. Further, unanticipated events and circumstances may affect the ultimate recoveries.

(b)     **Debtors' Estimate of Outstanding Claims on the Effective Date**

The Debtors and their advisors have conducted an extensive analysis to estimate the Debtors' outstanding Claims pool and are continuing to review and analyze Claims. The Debtors have filed and intend to continue to file objections to Claims. In the aggregate, the Debtors believe that the sources above will be enough to satisfy the Debtors' estimate of outstanding Claims by the Effective Date:

| Uses | Low Claims | High Claims |
|---|---|---|
| Liquidating Trust funding | $ (25.0) | $ (25.0) |
| Remaining estate professional fees | (9.0) | (9.0) |
| 503(b)(9) | (90.0) | (155.0) |
| Other Admin Claims | (50.0) | (50.0) |
| Secured | (18.0) | (18.0) |
| Priority Tax | (15.0) | (18.0) |
| Priority Non-Tax | (3.0) | (3.0) |
| **Total Uses** | $ (210.0) | $ (278.0) |
| **Total Potential Shortfall (without Litigation Proceeds)** | $ (36.5) | $ (104.5) |

6

But, there can be no assurance that the estimated Allowed amount of Claims will not be significantly more than projected, which, in turn, could cause the total recovery on Administrative Expense Claims to be lower. Some assumptions may not materialize, and unanticipated events and circumstances may affect the ultimate results. Therefore, the actual amount of Allowed Claims may vary from the Debtors' feasibility analysis, and the variation may be material.

### (c)    Distribution Funding Sources

The Initial Cash Pool, the Second Distribution, additional pre-Effective Date distributions to Settled Administrative Expense Claims, and post-Effective Date Distributions to Opt-Out Claims, will be funded from the following sources, as follows:

| | Within three (3) Business Days of Entry of the Confirmation Order[11] | Post-Confirmation Date, Pre-Effective Date | Post-Effective Date |
|---|---|---|---|
| **Initial Cash Pool ($21 million) for the Initial Distribution to Opt-In Settled Admin Claims only** | $16 million funded from: (i) unrestricted cash on hand and (ii) a minimum of $3 million from the Carve-Out Account | $5 million from Additional Asset Proceeds *and/or* Litigation Proceeds (to occur prior to the Initial Distribution) | N/A |
| **Second Distribution to Non Opt-Out Settled Admin Claims[12]** | N/A | Subject to the Minimum Conditions,[13] from Additional Asset Proceeds *and/or* Litigation Proceeds | N/A |
| **Further Distribution(s) to Settled Admin Claims** | N/A | Subject to the Second Distribution, from Additional Asset Proceeds *and/or* Litigation Proceeds | N/A |
| **Distributions to Opt-Out Claims** | N/A | N/A | From Additional Asset Proceeds *and/or* Litigation Proceeds |

---

[11] Within three (3) Business Days of entry of the Confirmation Order, an additional (i) $15 million from cash on hand will be placed into the segregated Litigation Funding Account for funding of the litigation associated with the Jointly Asserted Causes of Action (the "**Litigation Funding**") and (ii) $5 million will be placed into the segregated Cash Reserve Account for post-Confirmation estate costs including, without limitation, additional professional fees of the Debtors' and the Creditors' Committee not included in the Carve-Out Account as of the entry of the Confirmation Order (the "**Cash Reserve**").

[12] To the extent there are any amounts remaining for distribution after the Non Opt-out Settled Admin Claims have received the percentage recovery equal to the Initial Recovery, the Opt-In Settled Admin Claims shall share pro rata in such excess with the Non Opt-Out Settled Admin Claims.

[13] The Second Distribution shall not occur until each of the until each of the following conditions is met: (i) a total of $25 million has been funded into the Litigation Funding Account in the aggregate, (ii) there has been a funding of $10 million in the aggregate in the Cash Reserve Account and (iii) the Segregated Account has an additional $10 million in cash (together, the "**Minimum Conditions**").

**2.      Risk of Non-Occurrence of Effective Date**

Although the Debtors believe that the Effective Date will occur soon after the Confirmation Date, there can be no assurance as to the timing of the Effective Date.  If the conditions precedent to the Effective Date set forth in the Plan have not occurred or have not been waived as set forth in Article X of the Plan or the Debtors are unable to pay their obligations as required under section 1129(a)(9) of the Bankruptcy Code, then the Confirmation Order may be vacated.  Any Distributions made on account of Settled Administrative Expense Claims shall not be subject to disgorgement, including without limitation, upon any conversion or dismissal of the Chapter 11 Cases.

**3.      Risks Related to the Causes of Action**

There is no guarantee as to the success of pursuing any Cause of Action.  The success of the Debtors and the Creditors' Committee or Liquidating Trust in pursuing any Cause of Action, as well as the expenses incurred in investigating and prosecuting the Causes of Action, may materially affect the recoveries for the holders of Allowed Claims.

**4.      No Legal or Tax Advice Is Provided by this Disclosure Statement**

The contents of this notice should not be construed as legal, business, or tax advice.  Each holder of a Claim should consult their own legal counsel and accountant as to legal, tax, and other matters concerning their Claim.  This notice may not be relied upon for any purpose other than to determine how to elect how to be treated under the Administrative Expense Claims Consent Program.

**5.      No Admission Made**

Nothing contained herein or in the Plan shall constitute an admission of, or shall be deemed evidence of, the tax or other legal effects of the Plan or Administrative Expense Claims Consent Program on the Debtors or holders of Claims or Interests.

For additional risk factors and considerations, including the position of Transform and/or ESL Parties, please review section VIII.A of the Disclosure Statement.  Should you wish to obtain a copy of the Disclosure Statement, Plan, Confirmation Order, the Administrative Expense Claims Consent Program Term Sheet, or any other documents in these Chapter 11 Cases, you should contact the Debtors' Claims and Noticing Agent, Prime Clerk LLC by: (a) visiting the Debtors' restructuring website at: https://restructuring.primeclerk.com/sears; (b) writing to Sears Admin. Claims Consent Prgm Ballot Processing, c/o Prime Clerk LLC, 850 Third Avenue, Suite 412, Brooklyn, New York 11232; and/or (c) emailing **searsinfo@primeclerk.com.**  You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.vaeb.uscourts.gov.

SRF 36417

## **EXHIBIT A**

**OPT-IN BALLOT**

**PLEASE FOLLOW THESE INSTRUCTIONS FOR SUBMITTING YOUR <u>OPT-IN ELECTION</u>. IF YOU ELECT TO OPT-IN TO THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, PLEASE COMPLETE, SIGN, DATE, AND TRANSMIT THIS OPT-IN BALLOT SO THAT IT IS *ACTUALLY RECEIVED* BY THE CLAIMS AND NOTICING AGENT ON OR BEFORE <u>NOVEMBER 18, 2019, AT 4:00 P.M. (PREVAILING EASTERN TIME)</u>**

**YOU MAY RETURN YOUR OPT-IN BALLOT IN THE PRE-ADDRESSED, PRE-PAID RETURN ENVELOPE PROVIDED OR VIA FIRST CLASS MAIL, HAND DELIVERY, OR OVERNIGHT COURIER, TO:**

**SEARS ADMIN. CLAIMS CONSENT PRGM BALLOT PROCESSING**
**C/O PRIME CLERK LLC**
**850 THIRD AVENUE, SUITE 412**
**BROOKLYN, NEW YORK 11232**

| **To Submit Your Opt-In Ballot Via E-Ballot** |
|---|
| To submit your Opt-In via E-Ballot, visit https://restructuring.primeclerk.com/sears.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Opt-In Ballot.<br><br>IMPORTANT NOTE: You will need the following information to retrieve and submit your electronic Opt-In Ballot:<br>**Unique E-Ballot ID#:** 182353801040394<br><br>E-Ballot is the sole manner in which Opt-In will be accepted via electronic or online transmission.  Opt-In Ballots submitted by facsimile, email or other means of electronic transmission will not be valid.  Any Opt-In submitted through E-Ballot with the Holder's electronic signature will be deemed to be immediately legally valid and effective.<br><br>Please complete and submit an electronic Opt-In Ballot for each E-Ballot ID# you receive, as applicable.<br><br>Holders who cast an Opt-In using E-Ballot should NOT also submit a Paper Copy. |
| **To Submit Your Opt-In Ballot Via Paper Copy** |
| To submit your Opt-In via Paper Opt-In Ballot, complete items 1, 2, and 3 below and submit your Paper Opt-In Ballot in the pre-addressed, pre-paid return envelope provided or by first-class mail, hand delivery, or overnight courier to:<br><br>Sears Admin. Claims Consent Prgm Ballot Processing<br>c/o Prime Clerk LLC<br>850 Third Avenue, Suite 412<br>Brooklyn, New York 11232 |

<u>**Item 1**</u>.  **Amount of Administrative Expense Claim(s).**

The undersigned hereby certifies that as of the date of completion of this Opt-In Ballot, the undersigned asserts it was the Holder of an Administrative Expense Claim(s) in the following aggregate amount:[1]

$ 756,245.02

---

[1] This amount should represent the amount of your previously-asserted Administrative Expense Claim(s).  If the Debtors do not have a specific Administrative Expense Claim amount on file for you, the box in Item 1 of this Opt-In Ballot will be blank.  For reference purposes, you should insert the relevant amount of your alleged Administrative Expense Claim; however, for the avoidance of doubt, this Opt-In Ballot is not to be used to assert your Administrative Expense Claim(s).  For more information about asserting an Administrative Expense Claim(s), visit the Debtors' case

**Item 2.** **Administrative Expense Claims Consent Program Election.** You may elect to opt-in to the Administrative Expense Claims Consent Program by checking the box below and returning this Opt-In Ballot to the Claims and Noticing Agent on or before the Opt-In/Opt-Out Deadline pursuant to the instructions set forth herein.  If you return this Opt-In Ballot but do not check the box below or do not return this Opt-In Ballot, you will not be entitled to the Initial Distribution.  If you submit multiple Opt-In Ballots, your last timely received Opt-In Ballot shall control.  Election to withhold consent is at your option.

 **THE HOLDER OF THE ADMINISTRATIVE EXPENSE CLAIM(S) SET FORTH IN ITEM 1 ELECTS TO OPT-IN TO THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM.**

**Item 3.** **Acknowledgments.** By signing this Opt-In Ballot, the undersigned Holder of an Administrative Expense Claim(s) identified in Item 1 above certifies that (i) it is the Holder of the Administrative Expense Claim(s) identified in Item 1 above or (ii) it has full power and authority to act on behalf of the Holder of the Administrative Expense Claim(s) identified in Item 1 above.

Jayson M. Macyda
_____
Name

_____
Social Security or Federal Tax I.D. No. (optional)

**Signature:** *Jayson M. Macyda*
Jayson M. Macyda (Nov 16, 2019)

**Email:** generalcounsel@kykoglobal.com
_____
Signature

Attorney
_____
If by Authorized Agent, Name and Title

_____
Name of Institution

P.O. Box 87491
_____
Street Address

Canton, MI 48187
_____
City, State, Zip Code

_____
Telephone Number

generalcounsel@kykoglobal.com
_____
Email Address

November 16, 2019
_____
Date Completed

**If you elect to opt-in to the Administrative Expense Claims Consent Program, please return your Opt-In Ballot promptly.**  If you have any questions regarding this Opt-In Ballot or the procedures for opting out, please contact the Debtors' Claims and Noticing Agent, by: (a) visiting the Debtors' restructuring website at: https://restructuring.primeclerk.com/sears; (b) writing to Sears Admin. Claims Consent Prgm Ballot Processing, c/o Prime Clerk LLC, 850 Third Avenue, Suite 412, Brooklyn, New York 11232; and/or (c) emailing **searsinfo@primeclerk.com**.

> If the Claims and Noticing Agent does **not** actually receive the Opt-In Form on or before November 18, 2019, at 4:00 p.m., prevailing Eastern Time indicating your intent to opt-in to the Administrative Expense Claims Consent Program (and if the Opt-In/Opt-Out Deadline is not extended), your opt-in election will not be effective.

---

website: https://restructuring.primeclerk.com/sears.  The Debtors reserve the right to dispute and validate the amount of your asserted Administrative Expense Claim(s).

SRF 36417

4

**<u>EXHIBIT B</u>**

**OPT-OUT BALLOT**

PLEASE FOLLOW THESE INSTRUCTIONS FOR SUBMITTING YOUR <u>OPT-OUT ELECTION</u>.  IF YOU ELECT TO OPT-OUT OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, PLEASE COMPLETE, SIGN, DATE, AND TRANSMIT THIS OPT-OUT BALLOT SO THAT IT IS *ACTUALLY RECEIVED* BY THE CLAIMS AND NOTICING AGENT ON OR BEFORE <u>NOVEMBER 18, 2019, AT 4:00 P.M. (PREVAILING EASTERN TIME)</u>

IF YOU WOULD LIKE TO RECEIVE THE BENEFITS OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM AND DO NOT WISH TO OPT-OUT OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM, YOU DO NOT NEED TO TAKE ANY FURTHER ACTION AT THIS TIME.

YOU MAY RETURN YOUR OPT-OUT BALLOT IN THE PRE-ADDRESSED, PRE-PAID RETURN ENVELOPE PROVIDED OR VIA FIRST CLASS MAIL, HAND DELIVERY, OR OVERNIGHT COURIER, TO:

SEARS ADMIN. CLAIMS CONSENT PRGM BALLOT PROCESSING
C/O PRIME CLERK LLC
850 THIRD AVENUE, SUITE 412
BROOKLYN, NEW YORK 11232

| To Submit Your Opt-Out Ballot Via E-Ballot |
|---|

To submit your Opt-Out via E-Ballot, visit https://restructuring.primeclerk.com/sears.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Opt-Out Ballot.

IMPORTANT NOTE: You will need the following information to retrieve and submit your electronic Opt-Out Ballot:

**Unique E-Ballot ID#:** 182353801040394

E-Ballot is the sole manner in which Opt-Out will be accepted via electronic or online transmission.  Opt-Out Ballots submitted by facsimile, email or other means of electronic transmission will not be valid.  Any Opt-Out submitted through E-Ballot with the Holder's electronic signature will be deemed to be immediately legally valid and effective.

Please complete and submit an electronic Opt-Out Ballot for each E-Ballot ID# you receive, as applicable.

Holders who cast an Opt-Out using E-Ballot should NOT also submit a Paper Copy.

| To Submit Your Opt-Out Ballot Via Paper Copy |
|---|

To submit your Opt-Out via Paper Opt-Out Ballot, complete items 1, 2, and 3 below and submit your Paper Opt-Out Ballot in the pre-addressed, pre-paid return envelope provided or by first-class mail, hand delivery, or overnight courier to:

Sears Admin. Claims Consent Prgm Ballot Processing
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, New York 11232

2

**Item 1.  Amount of Administrative Expense Claim(s).**

The undersigned hereby certifies that as of the date of completion of this Opt-Out Ballot, the undersigned asserts it was the Holder of an Administrative Expense Claim(s) in the following aggregate amount:[1]

> $ 756,245.02

**Item 2. Administrative Expense Claims Consent Program Election.** You may elect to opt-out of the Administrative Expense Claims Consent Program by checking the box below and returning this Opt-Out Ballot to the Claims and Noticing Agent on or before the Opt-In/Opt-Out Deadline pursuant to the instructions set forth herein.  If you return this Opt-Out Ballot but do not check the box below or do not return this Opt-Out Ballot, you will be bound by the Administrative Expense Claims Consent Program.  If you submit multiple Opt-Out Ballots, your last timely received Opt-Out Ballot shall control.  Election to withhold consent is at your option.

☐  **THE HOLDER OF THE ADMINISTRATIVE EXPENSE CLAIM(S) SET FORTH IN ITEM 1 ELECTS TO OPT-OUT OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM.**

**Item 3. Acknowledgments.** By signing this Opt-Out Ballot, the undersigned Holder of an Administrative Expense Claim(s) identified in Item 1 above certifies that (i) it is the Holder of the Administrative Expense Claim(s) identified in Item 1 above or (ii) it has full power and authority to act on behalf of the Holder of the Administrative Expense Claim(s) identified in Item 1 above.

Jayson M. Macyda
_____
Name

_____
Social Security or Federal Tax I.D. No. (optional)

**Signature:** *Jayson M. Macyda*
_____
Signature

**Email:** generalcounsel@kykoglobal.com

_____
If by Authorized Agent, Name and Title

Attorney
_____
Name of Institution

_____
Street Address

P.O. Box 87491
_____
City, State, Zip Code

Canton, MI 48187
_____
Telephone Number

_____
Email Address

November 16, 2019
_____
Date Completed

---

[1] This amount should represent the amount of your previously-asserted Administrative Expense Claim(s).  If the Debtors do not have a specific Administrative Expense Claim amount on file for you, the box in Item 1 of this Opt-Out Ballot will be blank.  For reference purposes, you should insert the relevant amount of your alleged Administrative Expense Claim; however, for the avoidance of doubt, this Opt-Out Ballot is not to be used to assert your Administrative Expense Claim(s).  For more information about asserting an Administrative Expense Claim(s), visit the Debtors' case website: https://restructuring.primeclerk.com/sears.  The Debtors reserve the right to dispute and validate the amount of your asserted Administrative Expense Claim(s).

3

SRF 36417

**If you elect to opt-out of the Administrative Expense Claims Consent Program, please return your Opt-Out Ballot promptly.**  If you have any questions regarding this Opt-Out Ballot or the procedures for opting out, please contact the Debtors' Claims and Noticing Agent, by: (a) visiting the Debtors' restructuring website at: https://restructuring.primeclerk.com/sears; (b) writing to Sears Admin. Claims Consent Prgm Ballot Processing, c/o Prime Clerk LLC, 850 Third Avenue, Suite 412, Brooklyn, New York 11232; and/or (c) emailing **searsinfo@primeclerk.com**.

> If the Claims and Noticing Agent does **not** actually receive the Opt-Out Ballot on or before November 18, 2019, at 4:00 p.m., prevailing Eastern Time indicating your intent to opt-out of the Administrative Expense Claims Consent Program (and if the Opt-In/Opt-Out Deadline is not extended), your opt-out election will not be effective.