KATTEN MUCHIN ROSENMAN LLP
Steven J. Reisman, Esq.
575 Madison Avenue
New York, NY 10022-2585
Telephone: (212) 940-8772
Email: sreisman@katten.com

KATTEN MUCHIN ROSENMAN LLP
Terence G. Banich, Esq. (admitted pro hac vice)
525 West Monroe Street
Chicago, IL 60661-3693
Telephone: (312) 902-5200
Email: terence.banich@katten.com

ASK LLP
Kara E. Casteel
Joseph L. Steinfeld, Jr.
2600 Eagan Woods Drive, Suite 400
Saint Paul, MN 55121
Telephone: (651) 406-9665
Email: kcasteel@askllp.com

Edward E. Neiger
Marianna Udem
60 East 42nd Street
New York, NY 10065
Telephone: (212) 267-7342
Email: eneiger@askllp.com

*Counsel for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Sears Holdings Corporation, *et al.*,[1] | Case No. 18-23538-RDD |
| Debtors. | (Jointly Administered) |

**STATEMENT OF PREFERENCE FIRMS IN SUPPORT OF**
**MOTION OF DBETORS TO AMEND TERMS OF**
**ENGAGEMENT OF PREFERENCE FIRMS**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Katten Muchin Rosenman LLP, ASK LLP, and Stretto (collectively, the "Preference Firms"), as special avoidance counsel and advisors to Sears Holding Corporation ("Sears") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), file this statement (the "Statement") in support of the *Motion of Debtors to Amend Terms of Engagement of Preference Firms* [Docket No. 9469] (the "Motion"). In support of the Statement, the Preference Firms respectfully represent as follows:

**Background**

1. On May 5, 2021, the Debtors filed the Motion, which seeks, among other things, entry of an order pursuant to sections 105(a), 327, and 328 of the Bankruptcy Code authorizing the Debtors to amend the terms of engagement of the Preference Firms, and specifically, the Contingency Fee Schedule.[2] All of the background facts set forth in the Motion are incorporated herein by reference.

2. On May 13, 2021, Mien Co. Ltd., Fuzhou Fushan Pneumatic Co., Ltd., A&A (Hk) Industrial Ltd., Vogue Tex, Giza Spinning and Weaving, Wing Hing, Helen Andrews, Ltd., Samil Solutions, Shanghai Fochier, Mingle Fashion, and Esjay International (together, the "Creditor Group") filed an objection [Docket No. 9490] to the Motion (the "Group Objection"). According to the Group Objection, the Creditor Group consists of administrative claimants that are "owed approximately $70 million." *See* Group Objection, ¶ 4.

3. On May 13, 2021, Orient Craft Limited ("Orient Craft," and collectively with the Creditor Group, the "Objecting Creditors") filed an objection [Docket No. 9492] to the Motion

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2

(the "Orient Craft Objection", and together with the Group Objection, the "Objections"). According to the Orient Craft Objection, Orient Craft is a foreign vendor with an "undisputed administrative claim" in the amount of $272,761.72. *See* Orient Craft Objection, ¶ 1. The Preference Firms have not prosecuted, or considered prosecuting, an Avoidance Action against Orient Craft.

## Argument

I.  **The Objecting Creditors fail to refute that the Repricing Proposal is necessary to continue maximizing value for the Debtors' estates.**

4.  At this stage of the chapter 11 cases, the Preference Firms' prosecution and settlement of Avoidance Actions is a primary source of value for the Debtors' estates. Over the course of their engagements, the Preference Firms have worked diligently to analyze, investigate, prosecute, and settle the Avoidance Actions, in order to provide maximal recoveries for the Debtors' estates and their creditors. The Objecting Creditors fail to assert—let alone establish—otherwise.

5.  As set forth in the Motion, in light of factors not known to the parties at the outset of the Preference Firms' engagements, the Contingency Fee Schedule approved by the Court has proven inadequate to appropriately compensate the Preference Firms for the work performed on behalf of the Debtors. Specifically, a significant portion of the documentation and information provided to the Preference Firms prior to their engagements proved to be inaccurate or incomplete, which has required additional time, money, and resources to prosecute the Avoidance Actions. Moreover, as stated in the Motion and set forth in further detail below, the Preference Firms were not fully apprised of a number of factors that reduced the available preference claims, including the number of contracts that had been assumed by the Debtors and assigned to Transform and the

volume and amount of cash-in-advance arrangements that the Debtors had with their vendors. *See* Motion, ¶ 14.

6. To ensure that the Preference Firms' compensation is consistent with industry norms and fairly reflects the value added to the Debtors' estates, the Preference Firms negotiated in good faith with the Debtors' professionals and the Restructuring Committee in order to agree upon the terms of the Repricing Proposal.

7. The Debtors then presented the Repricing Proposal to the Administrative Claims Representative, the Creditors' Committee, and the U.S. Trustee. The Administrative Claims Representative and the Creditors' Committee advised the Debtors that they do not oppose the relief requested in the Motion. *See* Motion, ¶ 20.

8. As stated in the Motion, the Repricing Proposal is clearly in the best interests of the Debtors' estates and their creditors, as it "will both provide the Preference Firms with fair and reasonable compensation for the important services they are rendering and, at the same time, motivate them to proceed apace with their efforts to generate much needed funds so that the Debtors can proceed to consummate the Plan." *See* Motion, ¶ 21.

9. The Repricing Proposal is the result of a good faith, arm's length negotiation between the Preference Firms and the Debtors' legal and financial representatives, and it is tailored to ensuring that the value of the Avoidance Actions – a key source of funds to the estates – is maximized.

10. It bears repeating that the Motion does not seek authority to pay the Preference Firms on an hourly basis. Rather, the Preference Firms are paid on a contingency fee basis, and the Repricing Proposal is intended to incentivize greater recoveries for the Debtors and their estates by altering the Preference Firms' compensation according to the amounts and timing of Avoidance

Action recoveries. The Objecting Creditors say precious little about these matters. Indeed, the Objections are largely non-responsive to the points the Debtors raise in support of the Motion, as discussed in greater detail below.

II. **The Group Objection fails to address the merits of the Repricing Proposal, and is based on false factual premises.**

11. The Creditor Group argues that the "body of the Motion fails to clearly delineate the existing fee arrangements and the proposed new fee arrangements and provides no sworn testimony for this Court to rule." *See* Group Objection, ¶ 1. The Creditor Group proceeds to argue that the "reason preference recovery is so poor is that it was the Debtors' ordinary course of business to pay vendors late. Therefore, vendors have valid defenses to the majority of the Debtors preference actions." *See id.*, ¶ 2. Finally, the Creditor Group objects to the relief sought in the Motion because "it will not get them paid faster or make them whole." *See id.*, ¶ 4.

12. Each of these arguments fails. As an initial matter, the Motion very clearly explains that the Preference Firms' existing fee arrangements were approved by this Court in the Retention Orders. *See* Motion, ¶ 8. Pursuant to the Retention Orders, the Preference Firms are to be compensated in accordance with the Contingency Fee Schedule. The Contingency Fee Schedule is included in the Preference Firms' Engagement Letters entered into with the Debtors, copies of which are annexed as Exhibit A to the Motion and were previously filed with each Preference Firm's retention application. In addition, the Repricing Proposal and the new fee arrangements included therein are set forth in detail in paragraphs 16 through 18 of the Motion. It is difficult to understand why the Creditor Group does not acknowledge these facts.

13. Each of the Engagement Letters, moreover, contains a clause stating that the Debtors shall have discretion to increase the contingency fee percentages paid to the Preference Firms and/or award a bonus to the Preference Firms, subject to the Court's approval. Each

5

Preference Firm's retention application was accompanied by a sworn declaration by a representative of the Preference Firm: for Katten, the declarant was Steven J. Reisman; for Stretto (then, Acumen), the declarant was Michael A. Cohen; and for ASK, the declarant was Joseph L. Steinfeld, Jr. (collectively, the "<u>Declarations</u>"). To the extent that the Creditor Group deems it necessary to review sworn testimony in connection with the Motion, it should refer to the Declarations.

14. The Creditor Group's remaining arguments fare no better. The assertion that the Preference Firms' recoveries to date are "so poor" because it was "the Debtors' ordinary course of business to pay vendors late" is inaccurate, unfounded and uninformed. To the extent that the Preference Firms' recoveries to date are less than initially anticipated, the likely reasons for that are clearly set forth in the Motion. These factors include, for example: (a) the Preference Firms were not fully apprised of the number of vendor contracts that were assumed by the Debtors and assigned to Transform, prior to agreeing to the initial pricing structure; and (b) the Preference Firms were unaware of the volume and amount of cash-in-advance payment arrangements that the Debtors had with their vendors. The premise of the Creditor Group's criticism of the preference recoveries to date is that they are intimately familiar with the Debtors' "ordinary course of business" payment practices with *each* of their pre-petition vendors, which numbered in the tens of thousands. That notion is preposterous and plainly not alleged with a good-faith factual basis.

15. Finally, the Objecting Creditors' complaint that the relief sought in the Motion "will not get them paid faster or make them whole" misses the point. For one thing, preference recoveries are not intended to benefit only administrative creditors, as the Creditor Group apparently forgets. And, more to the point, the Creditor Group's assertion is factually untrue. The Repricing Proposal is actually designed to incentivize the Preference Firms to continue to prosecute and settle the

Avoidance Actions so that *all* creditor recoveries—including those of the Creditor Group—are maximized.

16. The Creditor Group has given the Court no cognizable basis to deny the Motion. The Court should therefore overrule the Group Objection in its entirety.

**III.   The Orient Craft Objection is almost entirely non-germane to the Motion.**

17. Orient Craft argues that the Preference Firms' compensation structure should not be increased "until after the Plan becomes effective and Orient Craft's allowed administrative claim is paid in full." *See* Orient Craft Objection, ¶ 11. But that position fails to address the Repricing Proposal.

18. And it comes far too late. By opting out of the Administrative Expense Claims Consent Program (as defined in the Plan), Orient Craft agreed to receive distributions on account of its administrative claim *only* after the Settled Administrative Expense Claims Payout. To the extent Orient Craft takes issue with the opt-out status of its claim, that ship sailed long ago. Orient Craft should have interposed this objection during the Plan confirmation process.

19. Moreover, Orient Craft attacks the Motion as if the Preference Firms were asking to be paid on hourly basis using estate cash. That is obviously not the case. The Preference Firms have always been compensated on a contingency fee basis. That will not change under the Repricing Proposal. The Preference Firms will continue to be compensated on a commission basis only to the extent that they recover value for the Debtors' estates and their stakeholders. Accordingly, the Repricing Proposal is certainly in the best interest of the Debtors' estates and their creditors. The Orient Craft Objection should be overruled in its entirety.

[*Remainder of page left intentionally blank.*]

**Conclusion**

20. For the reasons set forth above and in the Motion, the Preference Firms respectfully request that the Court grant the relief requested in the Motion, overrule the Objections, and enter the Proposed Order attached thereto.

Dated: May 21, 2021
     New York, New York

*/s/ Terence G. Banich, Esq.*
KATTEN MUCHIN ROSENMAN LLP
Steven J. Reisman, Esq.
575 Madison Avenue
New York, NY 10022-2585
Telephone: (212) 940-8772
Email: sreisman@katten.com

Terence G. Banich, Esq. (admitted pro hac vice)
525 West Monroe Street
Chicago, IL 60661-3693
Telephone: (312) 902-5200
Email: terence.banich@katten.com

-and-

ASK LLP
Kara E. Casteel
Joseph L. Steinfeld, Jr.
2600 Eagan Woods Drive, Suite 400
Saint Paul, MN 55121
Telephone: (651) 406-9665
Email: kcasteel@askllp.com

Edward E. Neiger
Marianna Udem
60 East 42nd Street
New York, NY 10065
Telephone: (212) 267-7342
Email: eneiger@askllp.com

*Counsel for Debtors*
*and Debtors in Possession*