Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 18-23538-rdd

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   SEARS HOLDING CORPORATION,

8

9           Debtor.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                  United States Bankruptcy Court

13                  300 Quarropas Street, Room 248

14                  White Plains, NY 10601

15

16                  May 14, 2021

17                  2:07 PM

18

19

20

21  B E F O R E :

22  HON ROBERT D. DRAIN

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:   UNKNOWN

Page 2

1    HEARING re THE EVIDENTIARY HEARING ON SEARS HOLDING

2    CORPORATION WILL BE CONDUCTED USING ZOOM FOR GOVERNMENT

3    VIDEO CONFERENCING. THOSE THAT REQUIRE ACCESS TO THE HEARING

4    MUST EMAIL CHAMBERS AT RDD.CHAMBERS@NYSB.USCOURTS.GOV FOR

5    DIAL-IN AND ZOOM ACCESS CREDENTIALS.

6

7    HEARING re Order signed on 5/10/2021 Establishing Procedures

8    for Remote Evidentiary Hearing Beginning May 14, 2021 on the

9    Class Representatives Motion for Relief From the Automatic

10   Stay (related document(s)62 l 2), with hearing to be held on

11   5/14/2021 at 10:00 AM at Videoconference (ZoomGov) (ROD).

12   (ECF #9479)

13

14   HEARING re Evidentiary Hearing - re: Motion for Relief from

15   Stay filed by James P. Pagano on behalf of Movants/Class

16   Representatives Nina and Gerald Greene (ECF #6212) by

17   Stipulation and Pre-Trial Scheduling Order Signed on

18   3/2/2020 Among Transform Holdco LLC and Greene Class Action

19   Plaintiffs (related document(s)73 l 3, 6212)

20

21   HEARING re Notice of Hearing on Class Representatives Motion

22   for Relief from the Automatic Stay (related document(s)6212,

23   6366) (ECF #9452)

24

25

1    HEARING re Reply Memorandum of Law IN FURTHER SUPPORT OF

2    MOTION FOR RELIEF FROM THE AUTOMATIC STAY (related

3    document(s)6212) filed by Benjamin M Mather on behalf of

4    Nina & Gerald Greene. (ECF #9470)

5

6    HEARING re Reply to Motion I Transform Holdco LLC's Reply to

7    the Class Representatives' Motion for Relief from Automatic

8    Stay (related document 6366) (related document(s)62 l 2)

9    filed by Luke A Barefoot on behalf of Transform Holdco LLC,

10   Transform SR LLC, Transform SR Protection LLC. (ECF #9474)

11

12   HEARING re Supplemental Memorandum of Law in Opposition to

13   the Debtors' Third Motion to Enforce the Asset Purchase

14   Agreement (related document(s)9395) filed by Sean A. O'Neal

15   on behalf of Transform Holdco LLC. (ECF #9483)

16

17   HEARING re Declaration of Sean A. O'Neal in Support of

18   Transform Holdco LLC's Supplemental Memorandum of Law in

19   Opposition to the Debtors' Third Motion to Enforce the Asset

20   Purchase Agreement (related document(s)9483, 9395) filed by

21   Sean A. O'Neal on behalf of Transform Holdco LLC.

22   (ECF #9485)

23

24

25

Page 4

1    HEARING re Declaration of Keith Stopen in Support of

2    Transform Holdco LLC's Supplemental Memorandum of Law in

3    Opposition to the Debtors' Third Motion to Enforce the Asset

4    Purchase Agreement (related document(s)9483, 9395) filed by

5    Sean A. O'Neal on behalf of Transform Holdco LLC. (

6    ECF #9486)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

1   A P P E A R A N C E S :

2

3   CLEARY GOTTLIEB STEEN & HAMILTON LLP

4        Attorneys for Transform Holdco and its affiliates

5        One Liberty Plaza

6        New York, NY 10006

7

8   BY:  LUKE BAREFOOT (TELEPHONICALLY)

9

10  KAUFMAN ,COREN & REES, P.C.

11       Attorneys for Greene class representatives from the

12       Northern District of Illinois class litigation

13       Two Commerce Square, Suite 3900

14       2001 Market Street

15       Philadelphia, PA 19103

16

17  BY:  BEN MATHER (TELEPHONICALLY)

18       JANICE DAUL (TELEPHONICALLY)

19

20

21

22

23

24

25

Page 6

1                 P R O C E E D I N G S

2             THE COURT:  Okay.  Good afternoon, everyone.  This

3      is Judge Drain, and we are here in In re Sears Holding Corp.

4      et al, and more specifically for the evidentiary hearing on

5      the -- well, it really is misnamed.  But on the motion for

6      relief from stay filed by the movants class representatives,

7      Nina and Gerald Greene.

8             We had a conference on this matter in January of

9      2020 in which the parties agreed that the issue was whether

10     the continued pursuit of the class action litigation in the

11     Northern District of Illinois against an added party, i.e.

12     Transform Holdco, would violate the Court's order approving

13     the Asset Purchase Agreement between the Debtors and

14     Transform Holdco and therefore be prohibited.

15            The parties agreed at that conference that this

16     matter, if it couldn't otherwise be resolved by consent,

17     would be dealt with on an evidentiary hearing basis based on

18     the documents and, potentially, witness testimony.  And we

19     are here today under the amended pretrial orders consistent

20     with that agreement.  I have the joint exhibit book as well

21     as the witness declarations.  And unless there have been any

22     further developments, I'm prepared to proceed with the

23     evidentiary hearing.

24            Why don't I take the parties' appearances first.

25            MR. MATHER:  Good afternoon, Your Honor.  Ben

Page 7

1    Mather and Janice Daul on behalf of the Greene class

2    representatives from the Northern District of Illinois class

3    litigation.

4             THE COURT:  Good morning.

5             MR. BAREFOOT:  Good afternoon, Your Honor.  Luke

6    Barefoot, Cleary Gottlieb Steen & Hamilton LLC, on behalf of

7    Transform Holdco and its affiliates.  And I am joined by my

8    colleagues, Kristin Corbett and Jessica Metzger.

9             THE COURT:  Okay.  Good afternoon.  All right.  I

10   see Mr. Kamlani on the screen.  And of course for those

11   reading the transcript, this is a Zoom evidentiary hearing

12   under my prior orders. I gather that means that Mr. Kamlani

13   will be the first witness?

14            MR. BAREFOOT:  That's correct, Your Honor.  He

15   will be the first and only witness because Mr. Riecker is

16   unavailable and therefore his deposition designations were

17   submitted in lieu of live testimony.

18            THE COURT:  Okay.  And it's agreed that I can rely

19   on those deposition excerpts?

20            MR. MATHER:  Yes, Your Honor.

21            THE COURT:  Okay.

22            MR. BAREFOOT:  Together with his declaration as

23   his direct testimony.

24            THE COURT:  Okay.  And as far as Mr. Allen, who

25   also submitted a witness declaration?

Page 8

1           MR. BAREFOOT:  Your Honor, similarly, there's no

2    dispute with respect to Mr. Allen's declaration.

3           THE COURT:  So that's admitted as direct

4    testimony?

5           MR. BAREFOOT:  Correct, Your Honor.

6           THE COURT:  Okay.  And that's right, Mr. Mather?

7           MR. MATHER:  That's correct, Your Honor.

8           THE COURT:  Okay.  All right.  Very well.  So let

9    me just confirm one other thing consistent with the prior

10   orders leading up to this evidentiary hearing.  I have, as I

11   mentioned, the joint exhibit book.  And we've already

12   referred to Joint Exhibit 7, which is the designated

13   deposition transcript of Mr. Riecker.  That's R-i-e-c-k-e-r

14   for the court reporter.  An Mr. Riecker's declaration

15   appears at Tab 5, or is Exhibit 5.  I just want to confirm

16   that Exhibits 1, 2, 3, 4, 4 being the declaration of Mr.

17   Allen, and 6 are all admitted for the purposes of this

18   hearing.

19           MR. MATHER:  Yes, Your Honor.

20           MR. BAREFOOT:  That's correct, Your Honor.

21           THE COURT:  Both parties are saying yes.  All

22   right, very well.

23           So, Mr. Kamlani, would you raise your right hand,

24   please?

25           MR. KAMLANI:  Yes, Your Honor.

Page 9

```
 1              THE COURT:  Do you swear or affirm to tell the
 2    truth, the whole truth, and nothing but the truth, so help
 3    you God?
 4              MR. KAMLANI:  I do.
 5              THE COURT:  Okay.  And it's K-u-n-a-l, letter S,
 6    and then K-a-m-l-a-n-i.  That's your name, how it's spelled?
 7              MR. KAMLANI:  Yes.
 8              THE COURT:  Okay, thank you.  So, Mr. Kamlani, you
 9    have submitted a declaration in this contested matter.  It's
10    dated January 21, 2020.  Sitting here today and knowing that
11    it would be your direct testimony for this evidentiary
12    hearing, is there anything in it that you would wish to
13    change?
14              MR. KAMLANI:  No, Your Honor, there is nothing.
15              THE COURT:  Okay.  And as I understand it, the
16    parties have agreed that Mr. Kamlani's declaration is
17    admitted as his direct testimony.
18              MR. MATHER:  Yes, Your Honor.
19              THE COURT:  Okay.  So, Mr. Mather, would you like
20    to go ahead with cross-examination?
21              MR. MATHER:  I would, Your Honor.  It's going to
22    be fairly brief.  I just want to make a couple points.
23              THE COURT:  Okay, that's fine.
24                 CROSS-EXAMINATION OF KUNAL KAMLANI
25    BY MR. MATHER:
```

Page 10

1    Q    Mr. Kamlani, do you have -- good afternoon.

2    A    Afternoon.

3    Q    Do you have your exhibit book in front of you?

4    A    I do.

5    Q    Could you open it to Exhibit 1?

6    A    That would be the Asset Purchase Agreement?

7    Q    Yes.  I was just about to ask you to identify that

8    document.  Is it correct that you were involved in the

9    negotiations of this document on behalf of Transform Holdco

10   LLC?

11   A    Yes.

12   Q    Are you familiar with -- actually, strike that.  Mr.

13   Kamlani, let me turn you to or have you turn to Exhibit 2 in

14   your book.

15   A    I'm there.

16   Q    I'll represent for you that this is a copy of the first

17   amended class action complaint in the Greene v. Sears

18   lawsuit pending in the Northern District of Illinois.  Do

19   you see that?

20   A    I do.

21   Q    When did you first become aware of the class action

22   pending in federal court in Illinois?

23   A    I first became aware of it when my lawyers at Cleary

24   made me aware of it and suggested that I submit a

25   declaration to the Court on the matter.

Page 11

1    Q    And that's in specific relation to this proceeding

2    today, correct, Mr. Kamlani?

3    A    Yes, that's correct.

4    Q    So during the period that you were negotiating the

5    Asset Purchase Agreement, you were not aware in any sense of

6    the class action pending in the Northern District of

7    Illinois?

8    A    I don't recall being aware of it prior to the time that

9    I mentioned.

10   Q    Mr. Kamlani, what is ESL Investments?

11   A    It's a hedge fund.

12   Q    What is its relationship to Transform Holdco LLC?

13   A    It is the majority owner of Transform Holdco LLC.

14   Q    What was its relationship to Sears?

15        MR. BAREFOOT:   Objection.   At what period in time?

16   BY MR. MATHER:

17   Q    In the period running up to the filing of the

18   bankruptcy.

19   A    It was a significant equity holder as well as

20   debtholder in Sears.

21   Q    So are you familiar with a gentleman named Edward

22   Lampert?

23   A    I am.

24   Q    What is his role at ESL investments?

25   A    He is the founder and CEO of ESL Investments.

Page 12

```
 1   Q    Edward Lampert was the chairman and CEO of Sears for

 2   the period running up to when the bankruptcy was filed, is

 3   that correct?

 4   A    That is correct.

 5   Q    Okay.  Thank you, Mr. Kamlani.  I have no further

 6   questions.

 7            THE COURT:  Okay.  Any redirect?

 8            MR. BAREFOOT:  Very briefly, Your Honor.

 9            THE COURT:  Okay.

10              REDIRECT EXAMINATION OF KUNAL KAMLANI

11   BY MR. BAREFOOT:

12   Q    Mr. Kamlani, can I ask you to turn back to Exhibit 1,

13   please?

14   A    I am there.

15   Q    If I could draw your attention to the final page of the

16   exhibit, please, that bears the page number at the bottom

17   218.

18   A    I see it.

19   Q    And of the various principals and advisors that were

20   involved in negotiating the sale transaction on behalf of

21   Transform, who was responsible for reviewing and negotiating

22   the terms of this Schedule 6.14?

23   A    Our lawyers at Cleary were responsible for negotiating

24   the legal terms of the Asset Purchase Agreement as well as

25   all of the schedules.
```

Page 13

1    Q    And the first item on this schedule, sitting here

2    today, do you understand that to be the class action that is

3    at issue as a contested matter?

4    A    I do as of today, yes.

5    Q    So even if you were not personally aware of the

6    existence of this litigation at the time of negotiation of

7    the APA, what participants in the negotiation process on

8    behalf of Transform would have been aware of this

9    litigation?

10   A    Presumably my lawyers from Cleary.

11   Q    And just one final question, Mr. Kamlani.  To what

12   extent if any does your testimony in your declaration

13   concerning your intentions with respect to Section 2.3(e) of

14   the APA depend on the identification of these particular

15   claims in this class action?

16   A    Can we spend a minute on 2.3(e)?

17   Q    Of course.  Mr. Kamlani, if you could stay with what is

18   Exhibit 1 in your exhibit book and go to Page 40 of that

19   document at the bottom numeration.

20   A    (indiscernible).

21   Q    Sure.  To what extent if any does the testimony in your

22   declaration concerning the intention with respect to Section

23   2.3(e) of the APA depend on the identification of these

24   particular claims in the class action?

25   A    It doesn't.  It has nothing to do with the claims in

1    the class action.

2    Q    So your testimony would be the same regardless of

3    whether the claims were known to you or not specifically

4    known to you as of the time you were negotiating?

5    A    That is correct.

6              MR. BAREFOOT:  Nothing further, Your Honor.

7              THE COURT:  Okay.  Any recross on that, Mr.

8    Mather?

9              MR. MATHER:  No, Your Honor.

10             THE COURT:  All right.  Very well.  So, Mr.

11   Kamlani, I would normally say you can step down.  But since

12   you're on a screen, you can step away and turn off your

13   computer.  Although you can certainly feel free to listen

14   in.

15             All right.  Is there any additional evidence?  I'm

16   assuming not, because the hearing procedures order

17   contemplated, I think, the process where the evidence that's

18   currently before me would be submitted.  But I just want to

19   confirm.  Is there any other evidence that the parties want

20   to move for admission?

21             MR. MATHER:  No, Your Honor.

22             MR. BAREFOOT:  No, Your Honor.

23             THE COURT:  Okay.  All right.  So the factual

24   record for this evidentiary hearing is closed.  I obviously

25   have the benefit of the pleadings that were filed in this

Page 15

1    contested matter, the original notice of motion, Transform's

2    objection to the motion, the class representatives' reply,

3    and Transform's reply to that, I guess a sur-reply, Docket

4    Numbers 6212, 6366, 9470, and 9474.  But I'm happy to hear

5    brief oral argument as well.

6            MR. MATHER:  Of course, Your Honor.  As you noted

7    at the outset, our goal here as the class representatives is

8    to go back to the case in the Norther District of Illinois

9    and proceed against Transform Holdco LLC as the successor in

10   interest to the Debtor in the bankruptcy.  Our position is

11   that our claims have been assumed as part of the Asset

12   Purchase Agreement by Transform Holdco LLC.  We assert that

13   our certified classes and their definitions fit within the

14   definition of the "assumed liability" set forth in Section

15   2.3(e) in the Asset Purchase Agreement and that the

16   agreement in its plain and ordinary meaning, it takes that

17   result.

18           THE COURT:  Okay.  Okay.  And I gather since you

19   didn't submit any evidence as to the APA -- parol evidence

20   that is as to the APA's interpretation or the intent of the

21   parties -- and that's understandable since your clients

22   weren't parties to the agreement, but conceivably you could

23   have deposed Sears' representatives, for example, I'm

24   assuming that your view on the parol evidence, if we have to

25   get to it, is that it's inconclusive or doesn't support the

Page 16

1   interpretation of "assumed liabilities" that Transform has

2   offered up?

3          MR. MATHER:  That's correct, Your Honor.  To the

4   extent that Mr. Kamlani has testified that he was unaware at

5   the time that he was negotiating the agreement of our

6   lawsuit, his testimony regarding the intention or what

7   Section 2.3 or the "assumed liabilities" was supposed to

8   include or not include is not probative on that issue.

9          And to your point, Your Honor, we don't -- we

10  obviously have always taken the position since the inception

11  of this proceeding that this is a matter for the Court's

12  interpretation of the Asset Purchase Agreement.  And that

13  which the legal effect of Section 2.3(e) and related

14  provisions.

15         THE COURT:  Okay, thanks.

16         Mr. Barefoot?

17         MR. BAREFOOT:  Thank you, Your Honor.  I'll be

18  relatively brief, but I do if Your Honor would permit want

19  to just briefly walk through our arguments.

20         THE COURT:  Okay.

21         MR. BAREFOOT:  Your Honor, the sale order itself

22  recognizes at Paragraph S that a key inducement to

23  Transform's willingness to consummate the sale transaction

24  was that the acquired assets were purchased free and clear

25  and that Transform would not have consummated the sale if it

Page 17

1    were liable for the excluded liability.

2           Mr. Mather began his presentation by talking about

3    successor-in-interest liability.  But Paragraph M of the

4    sale order makes express that there is no theory under which

5    Transform can be viewed as the successor-in-interest to

6    Sears or can be held to any other liability theories based

7    on successor liability.

8           THE COURT:  Well, I don't think Mr. Mather would

9    dispute that.  I think when he referred to successor, he

10   meant successor because of the express assumption of

11   liabilities under 2.3 of the APA, not under any other

12   theories than that.

13          MR. BAREFOOT:  I just wanted to clarify since that

14   was --

15          THE COURT:  Right.  But I think that's right.

16   Right, Mr. Mather?

17          MR. MATHER:  Yes, that's correct, Judge.  Thank

18   you.

19          THE COURT:  All right.

20          MR. BAREFOOT:  So, Your Honor, just both based on

21   the plain text of the APA and the understanding of the

22   parties, there is really no basis to revisit that

23   understanding and characterize the class plaintiffs' claims

24   for deceptive business practices and other theories that

25   occurred before the closing as "assumed liabilities" now

Page 18

1    that we are years after the closing of the sale transaction.

2            So I'll walk briefly through our arguments first

3    on the plain text and then the parol evidence.

4            Section 2.3(e) provides that the "assumed

5    liabilities" include "liabilities for warranty and

6    protection agreements or other services contracts for the

7    goods and services of sellers sold or performed prior to the

8    closing."  Your Honor, I emphasize that the parties used the

9    words, "for warranty and protection agreements".

10           Now, the Plaintiffs argue that this use of the

11   word has no special meaning, but the structure of the APA

12   and the dictionary definitions that both parties rely on

13   suggest otherwise.  On the dictionary definitions, both

14   parties rely on the same dictionary definition from the

15   American Heritage Dictionary, under which "for" means, "used

16   to indicate the object, aim, or purpose of an action or

17   activity."  And in this way, Your Honor, Plaintiffs' claims

18   are not "for" the protection agreement liabilities.  They

19   may well "relate to" the protection agreement liabilities,

20   they may "arise from" the protection agreement liabilities

21   or have some other connection to the protection agreement

22   liabilities, but they are not those liabilities themselves.

23           And if you contrast the way that was carefully

24   worded and structured with other provisions of the APA where

25   the parties used broader language to describe the assumed

Page 19

1    liability, that's made clear.

2         If you just look at Section 2.3, Section 2.3(a)

3    covers all the liabilities of the seller and its

4    subsidiaries "arising out of the ownership of the acquired

5    assets after the closing date."

6         Section 2.3(b) provides that Transform will take

7    on liabilities "relating to the payment or performance of

8    obligations with respect to the assigned agreements."

9         Section 2.3C stands out because it does not have

10   broader connective words like relating to or arising out of.

11   It is solely the protection agreement liabilities

12   themselves.

13        But second, Your Honor, you can find no better

14   evidence of the parties' shared interpretation than in the

15   text of Section 2.4(c).  And that's where the parties

16   specifically addressed as distinct and "excluded

17   liabilities" the type of claims the plaintiffs are

18   asserting.  Section 2.4(c) provides -- and this is on Page

19   42 of the APA -- provides that "claims or litigation arising

20   out of the assumed liabilities, the acquired assets, or the

21   operation of the business prior to the closing date" are all

22   "excluded liabilities."

23        And there are two important canons of contractual

24   interpretation that means that the Court has to give meaning

25   and look to this language rather than the generic definition

1    of liability that the plaintiffs rely on.

2            First, Delaware courts have made clear that in

3    interpreting the contract, the Court must read and give

4    effect to the agreement as a whole.  Here, the parties

5    specifically addressed the separate treatment, litigation,

6    or claims that arise out of the assumed liabilities and the

7    acquired assets, as opposed to the treatment in Section

8    2.3(e), which is the liabilities for those claims.

9            If the Court were to accept the plaintiffs'

10   reading that by using the generic term liabilities,

11   Transform took on all litigation and claims that arise out

12   of those liabilities, the entirety of Section 2.4(c) would

13   have no meaning.  It would effectively be read out of the

14   contract.

15           And while Plaintiffs argue that the Court

16   shouldn't even reach this because the lead-in to Section 2.4

17   carves out excluded liabilities, that would have the effect

18   of giving this no meaning.  Transform's interpretation, by

19   contrast, gives meaning to both provisions reading the

20   contract as a whole.

21           I want to briefly address, Your Honor --

22           THE COURT:  Can we -- I'm sorry.  Can we spend a

23   little bit more time on that?  If you -- I'm focusing now on

24   2.4 as opposed to 2.3.  2.3 is the "assumed liability"

25   section, 2.4 is the "excluded liability" section.  And the

Page 21

1    introductory clause to the lettered subsections of 2.4 says

2    not a buyer, any affiliated buyer, or any assignee "shall

3    assume any liabilities of any sellers other than the assumed

4    liabilities."  And then it has the defined term, "(the

5    foregoing including the following, the "Excluded

6    Liabilitie's)".

7            So the class action representatives argue that all

8    of the excluded liabilities are qualified by the fact that

9    if something is an assumed liability, it doesn't fall into

10   the list of (a) through (r) of "excluded liabilities."  And

11   I just want to make sure I understand your response to that

12   because it went by fairly quickly, and I just want to make

13   sure I understand your rationale for saying that (c), which

14   I think arguably does provide that litigation claims for

15   claims arising prior to the closing date are excluded.  I

16   guess my question is why isn't that qualified, however, by

17   the exclusion from the exclusion of assumed liabilities.

18           MR. BAREFOOT:  Your Honor, it's because you have

19   to give meaning to the contract as a whole and you have to

20   interpret the contract so that you give meaning to every

21   phrase or clause.  So if you look at the two phrases

22   together in arriving at an interpretation of what the scope

23   of the assumed liabilities are, you have to take into

24   account that the parties specifically provided for different

25   treatment for claims and litigation that arises out of the

Page 22

1    assumed liabilities and the acquired assets, and separately

2    provided for treatment that is assumption of the liabilities

3    for those consumer protection agreements that are assumed

4    liabilities.  So if you read --

5              THE COURT:  So in essence you're saying that by

6    using different words, i.e. in 2.3(e) the word is "for" and

7    in 2.4(c) the words are "arising from or related to", the

8    parties actually made a distinction.

9              MR. BAREFOOT:  Precisely, Your Honor.  And if you

10   accept plaintiffs' interpretation that the assumption of

11   liabilities "for" is so broad that it captures the kinds of

12   claims they've brought in the class action, claims for

13   deceptive practices or unjust enrichment that in our view

14   arise out of the assumed liabilities or relate to the

15   operation of the business prior to the closing, you would

16   effectively read 2.4(c) out of the contract entirely.

17             THE COURT:  Although I'm assuming there may be

18   other types of litigation liabilities besides ones coming

19   from the assumed liabilities, right?

20             MR. BAREFOOT:  There may be, Your Honor.  But I

21   think you also have to think about the canon of the specific

22   versus the general.  Delaware courts are very clear that

23   where specific and general provisions arguable conflict, the

24   specific provision qualifies the meaning of the general.

25   And the term that plaintiffs rely on for the entire hook of

Page 23

1    their argument is the defined term "liability" which is used

2    broadly and repeatedly throughout the APA.  But the specific

3    circumstance of litigation or claims that arise out of the

4    assumed liabilities is specifically addressed by 2.4(c).

5              THE COURT:  Okay.

6              MR. BAREFOOT:  Your Honor, it might help if I talk

7    a little about the Old Carco/Chrysler case that plaintiffs

8    rely upon, because I think it actually underscores this.

9              Very similarly there, there was a carveout in the

10   lead-in to the APA discussion of excluded liabilities.  And

11   there the Court found that relying on the specific excluded

12   liability that the debtors had pointed to -- that the buyer

13   had pointed to -- would have led to internally inconsistent

14   results because it would have resulted in specifically

15   excluding something that in the assumed assets provisions

16   was already included.

17             We have the exact opposite result here.

18   Transform's interpretation is the one that leads to no

19   inconsistency and gives effect to all of the language in the

20   agreement.  Transform took on liabilities for the protection

21   agreements giving that one treatment as an assumed

22   liability, but had separate specific treatment for claims

23   arising out of those assumed liabilities, such as the class

24   action claim.

25             So, unlike the situation in Old Carco where there

Page 24

1    was a direct tension between the argument that the buyer was

2    asserting, by adopting our interpretation, you can harmonize

3    the two provisions and give effect to the contract as a

4    whole.

5           Your Honor, just a couple other observations and

6    then with your permission I'd like to move briefly to the

7    parol evidence.

8           THE COURT:  Okay.

9           MR. BAREFOOT:  I think it bears noting, Your

10   Honor, that the plaintiffs themselves operated nearly a year

11   after the closing of the sale as though the litigation had

12   not been assumed by Transform.  And in particular in April

13   2019, the plaintiffs filed a number of proofs of claim

14   against the Sears debtors, which is consistent with our

15   interpretation of the APA under which those were excluded

16   liabilities that were made with the estate.  And those

17   proofs of claim reserved rights against other Sears

18   affiliates and made other generic reservations of rights but

19   they nowhere contain any suggestion or reservation that the

20   liability could have been assumed by or asserted

21   (indiscernible).

22           THE COURT:  Well, I mean, they -- just because

23   Carco -- I'm sorry, just because Transform Holdco assumed

24   the liability doesn't relieve Sears of it.  Right?  I mean,

25   so they could file a proof of claim against Sears without

Page 25

1    showing that they don't have a claim against Transform.  On

2    the other hand, I guess there is something to be said about

3    the fact that the request to add Transform as a defendant to

4    the litigation was made in December of 2019 when the sale

5    order was entered in February of 2019.  So I guess there is

6    something to be said for that.

7              MR. BAREFOOT:  Your Honor, just then turning to

8    parol evidence.  To the extent the Court finds any ambiguity

9    in the text or any conflict between the different terms of

10   the APA such that it needs to reach parol evidence, I think

11   the parol evidence is uncontroverted that it was never the

12   intent of either Sears, whose testimony you have in the form

13   of Mr. Riecker as the lead negotiator, or Mr. Kamlani as the

14   lead negotiator on behalf of Transform, to assume liability

15   for the types of claims that are (indiscernible) the class

16   action.  They are in agreement that the intent behind

17   assuming liabilities for the consumer protection agreements

18   was consumer-facing to ensure business continuity and ensure

19   consumer confidence in the brand that Transform was

20   purchasing.

21             We've also included, Your Honor, as Exhibit 5 a

22   loss spreadsheet that shows how the parties arrived at the

23   estimate was used in the sale hearing proceedings of the

24   $1.009 billion in estimated liabilities for the consumer

25   protection agreements that were being assumed.

Page 26

1              And notwithstanding that Transform had every

2    incentive to include all possible forms of liability to make

3    its bid as attractive as possible, there was no reserve or

4    amount or any accounting for any liability with respect to

5    the class action in calculating that figure.  That evidence

6    is uncontroverted.

7              It's also important to note, Your Honor, that as I

8    mentioned, that $1.009 billion figure was not only something

9    that was shared between the parties, but it was squarely

10   placed before the Court with a description that comports

11   with the parties' understanding.  Specifically at the sale

12   hearing, the Debtor submitted into evidence the declaration

13   of Brandon Aebersold of Lazard.  That's at Docket Item 2335,

14   in which he testified that a component of the total

15   consideration of the sale was an approximate $1 billion of

16   protection agreement liability relating to consumer

17   warranties sold by Sears (indiscernible).  And there was

18   similar testimony to that effect throughout the record of

19   the sale.

20             Your Honor, the plaintiffs did have a full and

21   fair opportunity and did pursue both document discovery and

22   two depositions in addition to Mr. Kamlani's testimony

23   today.  And nothing they obtained in those efforts

24   undermines or calls into question any of the testimony on

25   intent from Mr. Kamlani or Mr. Riecker.  The only point

Page 27

1    they've seized on is that neither Mr. Kamlani nor Mr.

2    Riecker were specifically aware of this particular

3    litigation at the time they negotiated the Asset Purchase

4    Agreement, and in particular Section 2.3(e).

5           That does nothing, respectfully, to undermine the

6    strength of their parol evidence on the parties' shared

7    intent on the purpose and scope, and it does nothing to

8    suggest that the parties actually intended to assume

9    liability for this or any other claim.

10          And the case, Your Honor, on this point -- and

11   I'll note that Mr. Kamlani testified at the outset of the

12   hearing that nothing about the identification of this

13   particular class action does anything to change his

14   testimony concerning the intent.  The Plaintiffs in their

15   papers rely on a case, Your Honor, Alpha Natural Resources,

16   for the proposition that because they did not know about the

17   class action, their parol evidence testimony is not

18   probative.  But that case, if you look at it, is actually

19   quite inapposite.  There, the court found that the parties

20   never discussed the meaning or terms of the underlying

21   agreement when it was proposed or when it was executed.

22          Here, the testimony is uncontroverted that the

23   parties had significant discussions and negotiations around

24   not only the APA, but around the specific sections.  So the

25   fact that they didn't know about the specific litigation

Page 28

1    really has nothing to do with the strength of their

2    testimony on the intended scope of the sections at issue.

3    And their discussions and negotiations are with respect to

4    the scope -- in the first case the scope of consumer

5    protection liabilities and in the second case, the intent to

6    exclude any and all litigations regardless of whether they

7    were known or unknown.

8             Unless Your Honor has any further questions, I

9    don't have any other remarks at this time.

10            THE COURT:  I guess I just want to make sure I

11   understand what Transform believes it assumed.  I think what

12   it believes it assumed is the following.  If a purchaser or

13   contractor of Sears' goods or services, regardless whether

14   that was pre-closing of the APA or not, comes to assert a

15   claim under the warranty or the protection agreement post-

16   closing, Transform will be obligated to the extent that's a

17   valid claim.  Is that a fair summary of Transform's --

18            MR. BAREFOOT:  I believe it is, Your Honor.  And I

19   believe that dovetails with the language in 2.3(e) that

20   talks about liabilities for the goods and services of

21   sellers sold or performed prior to the closing.

22            THE COURT:  Okay.  So if, for example, one of the

23   members of the class has such a claim, Transform would honor

24   it?

25            MR. BAREFOOT:  Correct, Your Honor.

1            THE COURT:  What Transform believes it did not

2     assume would be claims arising pre-APA -- I mean demands for

3     honoring the warranty that were made pre-APA or rights for

4     breach of the warranty or protection agreement pre-APA.

5            MR. BAREFOOT:  Or related causes of action like,

6     you know, the treble damage consumer --

7            THE COURT:  Right, consumer protection causes of

8     action.

9            MR. BAREFOOT:  Or unjust enrichment.  Correct,

10    Your Honor.

11           THE COURT:  Okay.  All right.  Well, what I was

12    really focusing on is the first cause of action in the class

13    complaint, is a breach of contract claim.  But I think

14    that's for a pre-APA breach.

15           MR. BAREFOOT:  That's correct.

16           THE COURT:  If someone in that class said today I

17    have a washing machine that's covered by the protection

18    agreement and I'd like you to fix it, Transform would fix it

19    if it's covered by the protection agreement.

20           MR. BAREFOOT:  That's correct, Your Honor.  And I

21    think that's further underscored by the nature of the

22    complaint, which is that it alleges that there were

23    instances in which Transform sold consumer protection

24    agreements for goods it could not service.  So certainly

25    it's Transform's position, and Transform has been performing

Page 30

1    when a consumer who purchased a protection agreement prior

2    to the closing comes into a store and presents a good that

3    they claim is not working properly, they have been

4    performing to perform repairs or replace the item.

5           THE COURT:  Okay.  All right.  I don't think I

6    have any other questions for you.  Mr. Mather, do you want

7    to briefly respond to that argument?  Not just the last

8    point, but the whole argument.

9           MR. MATHER:  Thank you, Your Honor.  Yes.

10          I think you hit the nail on the head in terms of

11   asking these questions about what Transform thought that

12   they did acquire the massive purchase agreement in relation

13   to the master service -- master protection agreement in that

14   it shows how the assumed liabilities at 2.3(e) and the

15   definition of our class are intertwined in a way that they

16   can't get away from, Your Honor.  You know, our class

17   essentially in its material terms reads as such, "All

18   individuals who paid for aftermarket MPAs or products which

19   were not covered by nor eligible for coverage under the MPA

20   and did not receive a full refund."

21          So when they make their arguments about how they

22   are going to -- they've assumed liability in terms of

23   servicing the products, that's at the heart of what we sued

24   over, Your Honor.  They don't -- they received the money for

25   these master protection agreements and then they don't -- in

Page 31

1    certain circumstances end up not having coverage for certain

2    items that were listed on the agreement.  And in certain

3    circumstances when that occurs, then they don't refund the

4    money that's been paid pursuant to the agreement, and

5    therefore the agreements in and of themselves originally

6    were illusory.  And so there is a way in which the way that

7    they've written 23(e) is consistent with the excluded

8    liabilities in -- I'm sorry, 2.3(e) and 2.4 -- in that the

9    liabilities that they've assumed as part of the acquisition

10   of the master protection agreements are those services that

11   we claim in our lawsuit they, Sears had failed to provide as

12   a breach of contract to those agreements, and Transform is

13   essentially trying to get itself out from under those

14   contractual obligations for the members of our class moving

15   forward post Asset Purchase Agreement.

16          And I would also like to add, Your Honor, that if

17   there is a way the excluded liabilities at 2.4, as you

18   pointed out, could involve any litigation or liabilities

19   extending out of litigation relating to any of the assets

20   that were acquired as part of this agreement.  And there's a

21   much broader category than that which is set forth in

22   Section 2.3(e) which specifically relates to the warranties

23   and the liabilities that were assumed in relation to those.

24          THE COURT:  Well, I guess I want to come back --

25   obviously there is a breach of contract claim in the

Page 32

1    complaint.  But again, if the master protection agreement or

2    warranty doesn't cover the product, then I guess by

3    definition I don't see how it's a liability that's being

4    assumed.  And I think I heard Mr. Barefoot say that if the

5    warranty or master protection agreement does cover the

6    product, Transform will honor it.  So I don't think they are

7    -- I don't think there is an allegation -- maybe I'm wrong -

8    - that Transform hasn't honored it.

9            MR. MATHER:  Your Honor, traditionally people were

10   paying for Sears warranty coverage, believing that certain

11   items in their home were covered, only to learn after paying

12   for the coverage for years they weren't covered.  And they

13   made the claim Sears would say we never covered that

14   product.

15           THE COURT:  Right.  But that's not a contract.

16   That's not a breach of contract claim.  That may be a

17   consumer fraud claim or it may be a simple fraud claim,

18   although I don't think there's -- well, maybe -- let's just

19   say that I can understand saying, whether I grant a motion

20   or deny a motion to dismiss on the merits, but I can

21   understand the other causes of action in the complaint.  You

22   know, unjust enrichment, Pennsylvania Consumer Protection

23   and Consumer Fraud, Illinois Consumer Protection and

24   Consumer Fraud.

25           But you've described to me what Transform I think

Page 33

1    also has described to me as not being in Transform's view

2    what it assumed under the APA, it doesn't sound like a

3    breach of contract claim.

4         MR. MATHER:  Well, Your Honor, let me try to do it

5    this way.  Because I don't -- I'm not sure I'm being clear

6    enough.  The warranties would have a list of products in

7    your home that would be covered.  And you would be sold the

8    master protection agreement based on the number and specific

9    items that you wanted coverage for.  So if those items are

10   part of that agreement, then our breach of contract claim is

11   that if you have been collecting payments for that coverage

12   and then ultimately, for example, the refrigerator that was

13   listed on that coverage and part of the pricing for that

14   agreement wasn't in the end covered when you made the claim,

15   then we submit, and I think the court in Illinois would

16   agree, that that would be a viable breach of contract claim.

17        THE COURT:  But you just -- but I was with you up

18   to the point where you said it's then determined that it

19   wasn't covered.  Who determines that?

20        MR. MATHER:  So the consumer, who submits a claim

21   to Sears or presumably Transform and says that under my

22   warranty with you, my Sub-Zero refrigerator was covered and

23   it needs repair.

24        THE COURT:  Right.

25        MR. MATHER:  And that was part of the initial

Page 34

1   bargain that was designated at the time of purchase.  And

2   then whoever is fielding these at this point says, no,

3   actually whatever that was, we don't actually cover that

4   specific refrigerator.  That is the breach of contract that

5   we have asserted in that case.

6          THE COURT:  Well, but I guess I have two responses

7   to that.  First, when I read the complaint, I think what it

8   lays out is that -- and I'm looking here at Paragraphs 24

9   through 35 -- well, actually, there is another example on

10  37.  And I think what it sets out here is that the consumers

11  were misled into thinking that their product would be

12  covered, although there are additional limitations to

13  coverage in the agreement that are identified, that's in

14  Paragraph 28, and that if it turns out that the product

15  isn't covered, Sears will refund your money.

16         So I guess I'm having -- what I don't see is an

17  actual statement that that fact pattern constitutes a breach

18  of contract.  There's a -- when you get to the cause of

19  action, it says in Paragraph 44, "Defendants breached the

20  MPAs by failing to provide the benefits for which they

21  contracted and received payment."  But when you actually

22  read the facts, it doesn't really ever allege that.  It just

23  says that at best I think they left the impression, albeit

24  that that impression might be contradicted in the fine

25  print, that the product was covered when in fact that

Page 35

1    impression was inaccurate.  And that's not really a breach.

2            And then of course there is the issue of the

3    damages, which is just returning the money without interest

4    isn't enough.  But again, to me that doesn't sound like a

5    breach.  Again, it seems to me that if in fact Sears, or as

6    assumed by Transform, Transform does breach the agreement by

7    saying I'm not going to perform this where the agreement

8    actually requires performance, that would be a different

9    story and Transform would be liable for that.  Transform has

10   assumed that liability.

11           But not -- well, if -- let me back up.  Because

12   there is a timing element to this, too.  I do not see in the

13   agreement that Transform assumed a breach liability that

14   Sears had before the APA.  What Transform agreed to do is

15   that it agreed to perform under the master protection

16   agreements post-APA, even if the item was bought or the

17   service was provided by Sears pre-APA.  So it wouldn't be --

18   let's assume for the moment that Sears breached the

19   agreement, that the agreement really did say you are covered

20   because you bought this product and there were no carveouts,

21   nothing like that.  And Sears said, well, we're not going to

22   perform, we're just going to give you your money back.  That

23   would be a breach by Sears.  Let's assume for the moment

24   that's the case.  But I don't see because of the timing

25   references in 2.3 that Transform assumed that liability.

1    What it assumed was the obligation to perform under the

2    contract regardless whether the product was bought pre or

3    after the APA was entered into.  So I guess I'm still having

4    a hard time seeing how the interpretation by Transform

5    actually does subsume the complaint.  I think there is a

6    distinction between the causes of action asserted in the

7    complaint and Transform's interpretation.  That doesn't

8    necessarily mean Transform's interpretation is accurate, but

9    I think there is a difference between the liabilities

10   asserted in the complaint and the liabilities that Transform

11   says it's assuming.

12           MR. MATHER:  Your Honor, if I may, just to

13   redirect you back to the -- we have in our initial papers in

14   this proceeding that we filed in December of '19, we listed

15   -- we set forth in Paragraphs 13 and 14 the definitions of

16   the two classes that were certified in that court in

17   Illinois.  And the first -- the primary class -- and this

18   was on Page 4 if you have it --

19           THE COURT:  I have it here.

20           MR. MATHER:  Paragraph 13.  "With respect to the

21   breach of contract and unjust enrichment claims, the

22   following nationwide class has been certified:  All

23   individuals and entities who paid for aftermarket MPAs from

24   March 25, 2005 to the present, including post point-of-sale

25   purchases of coverage, purchases of coverage for products

Page 37

1    bought from a retailer other than Sears, and (indiscernible)

2    renewal coverage for products which were not covered by nor

3    eligible for coverage under the MPA and did not receive a

4    full refund."

5              THE COURT:  Okay.

6              MR. MATHER:  So that is a certified class under

7    breach of contract and unjust enrichment claims.

8              THE COURT:  Right.  But the class -- but they are

9    defined by those who were not covered by the MPA.  So I

10   don't see how that could be a breach of contract.

11             MR. MATHER:  Your Honor --

12             THE COURT:  Would it be covered by the MPA?

13             MR. MATHER:  Excuse me.  Forgive me.  Your Honor,

14   they purchased an MPA, right?  So they believed that they

15   were covered as part of that contractual arrangement.

16             THE COURT:  Okay.

17             MR. MATHER:  Only to find out later that they

18   weren't.  So it's not people that aren't covered, it's

19   people that believed that they were purchasing coverage.

20             THE COURT:  But -- all right.  But again, this is

21   in the past tense.  This is pre, I think, APA.  And so I

22   guess that's point one.  That would be a liability that

23   Sears would have.  And I guess point two is -- well, I

24   understand they did not receive a full refund because I

25   think even under -- that would be a breach of contract.

Page 38

```
1    Because I think Sears said if you're not covered, you're

2    entitled to a full refund.  So I understand that point.  So

3    I think it's really the timing point.

4           But again, I think if -- I don't see why that is

5    inconsistent with Transform's position that what they're

6    picking up are post-APA claims, which is normally what a

7    buyer would be picking up.  Although it could derive from

8    goods and services bought from Sears pre-APA.  But this

9    isn't derived from goods and services bought pre-APA, it's

10   derived from a breach by Sears pre-APA.

11          MR. MATHER:  Well, yes, Your Honor.  Although

12   because of the nature of the product at issue here, there

13   are people that would have bought potentially protection

14   agreements pre-APA and don't know that they are sitting on

15   illusory coverage that Transform may breach down the road.

16   And under their interpretation of the APA are now absolved

17   from any liability from them.

18          THE COURT:  Right, but I think that's a different

19   lawsuit.  That's a lawsuit against Transform for Transform

20   doing things contrary to the MPA post-closing.  Contrary to

21   the master protection agreement post-closing of the APA.

22          MR. MATHER:  Well, it's tricky, Your Honor,

23   because encompassed in our class is this idea that there are

24   people who purchased protection agreements from Sears who

25   have not triggered anything to date in terms of making a
```

Page 39

1    claim to know that they are illusory.  So those people are

2    in that class, too.  And I understand your point about that

3    would be -- and I've thought about this myself, about how

4    that would be another lawsuit against Transform.  But we

5    risk the possibility in terms of those individuals of

6    Transform coming back and relying on the Asset Purchase

7    Agreement because those people originally bought the master

8    protection agreement from Sears.

9             THE COURT:  No, but I think Transform acknowledges

10   -- I mean, we could confirm this again -- that if someone

11   has a claim under a master protection agreement or under a

12   protection agreement, it doesn't matter when they bought the

13   washing machine or received the service, you know, the oil

14   change or whatever from Sears as long as the claim, you

15   know, is for a repair today.  So, but if it's a claim for

16   something that Sears did before the Asset Purchase

17   Agreement, then they say, well, we didn't take that on,

18   which is logical.

19             I mean, no buyer really would take that on.

20   That's a different relationship because they're not

21   responsible for that; whereas, they want to be responsible

22   for ongoing repairs.  And I understand your point.  It may

23   be that when someone in the future says well, I'm covered,

24   and they say, you're not, and then refuse to do a refund, to

25   me, that's a breach under anyone's interpretation, but they

1    haven't -- there's no allegation they've done that.  This is

2    all based on Sears' conduct as opposed to Transform's, so I

3    think it is a different lawsuit.

4             MR. MATHER:  Your Honor, before I end my piece,

5    can I check with my colleague to make sure that there's

6    nothing she wants to --

7             THE COURT:  Yes.

8             MR. MATHER:  Your Honor, thank you.  I'm done,

9    unless you have any further questions for me.

10            THE COURT:  No, I don't think so.  Well, actually,

11   I did.  This is now a certified class, right?  Actually --

12            MR. MATHER:  Yes.

13            THE COURT:  -- two classes that are certified.  I

14   --

15            MR. MATHER:  That's right.

16            THE COURT:  -- had assumed that, but I just wanted

17   to make sure.  Okay.  Anything from you, Mr. Barefoot?

18            MR. BAREFOOT:  Your Honor, I just wanted to

19   briefly note that we're preserving our rights on the facts

20   and characterizations of allegations of the lawsuit and, you

21   know, nothing -- silence isn't an admission.

22            THE COURT:  Okay.  That's fair.  And again, I'm

23   not ruling on the lawsuit.  I'm just trying to understand

24   the claims and how they pertain to the two parties'

25   different interpretations of what Transform assumed as a

Page 41

1    liability under the Asset Purchase Agreement.

2          Okay.  I have a motion before me by Nina and

3    Gerald Greene as class representatives in respect of two

4    classes certified by the District Court for the Northern

5    District of Illinois in the class action that was pending

6    there before the commencement of the Sears Holdings

7    Corporation, et al. Chapter 11 case.

8          As originally styled, it was a motion for relief

9    from the automatic stay in the Sears case for leave to join

10   Transform Holdco as a defendant in the class action.

11   Transform Holdco is the purchaser, or was the purchaser, of

12   substantially all of Sears' assets pursuant to an Asset

13   Purchase Agreement, a copy of which is attached at Exhibit 1

14   or is admitted as Exhibit 1 in this contested matter.

15         I think the parties realize that the request for

16   stay relief was really an inapposite procedural vehicle, and

17   have now agreed and, certainly at least since the January

18   2020 conference before the Court, have agreed that the

19   dispute really goes to whether the action in the District

20   Court in the Northern District of Illinois can proceed

21   against Transform on the claims asserted in the action, in

22   light of Transform's having acquired the assets pursuant to

23   this Court's order, dated February 8, 2019, approving the

24   Asset Purchase Agreement and authorizing the sale of the

25   assets free and clear of liens, claims, interests, and

Page 42

1    encumbrances.

2              In that order, the Court, in addition to directing

3    that the sale be free and clear, provided, among other

4    things, in Paragraph 21, that following the closing of the

5    APA, "no holder of any claim against the Debtors or their

6    estates shall interfere with the buyer's title to or use and

7    enjoyment of the acquired assets based on or related to any

8    such claim or based on the actions the Debtors may take in

9    these Chapter 11 cases."

10             So, this contested matter, as it has stood since

11   January of 2020, really invokes the Court's power as the

12   gatekeeper of whether the litigation can proceed

13   notwithstanding the Court's free and clear order approving

14   the Asset Purchase Agreement.

15             Of course, every court has jurisdiction to

16   interpret its own orders, including sale orders.  See, for

17   example, Travelers Indemnity Company v. Bailey, 557 U.S.

18   137, 151 (2009), but more specifically, it's well recognized

19   in this Circuit and in this District that where there is a

20   free and clear sale order, the bankruptcy court acts as the

21   initial gatekeeper to determine whether a complaint, such as

22   the complaint that the movants would like to add Transform

23   to, would violate an enforceable provision of the sale

24   order.

25             If it would, then they may not proceed with the

Page 43

1    complaint as currently drafted.  If it would not, they would

2    be able to proceed in the appropriate non-bankruptcy forum,

3    presumably, the District of Illinois, in the class action

4    litigation.  See Overton v. FCA U.S., LLC (In re Old Carco,

5    LLC), 603 B.R. 877, 883 (S.D.N.Y. 2019), aff. 809 Fed. Appx.

6    36 (2nd Cir. 2020).

7             The issue here is a fairly narrow one.  It

8    involves the interpretation of primarily one provision of

9    the Asset Purchase Agreement appearing in Article 2.3

10   thereof, which is headed "Assumption of Liabilities."

11            The movants acknowledge that unless Transform

12   Holdco contractually assumed some or all of the liability

13   for the claims that they wish to assert against it in the

14   Northern District of Illinois class action, they would not

15   be able to proceed against Transform Holdco in that action,

16   and that is a correct assumption, i.e., even if they didn't

17   acknowledge that, that would be the case given that the free

18   and clear order very clearly provided that, except as

19   expressly assumed by Transform Holdco, the buyer, Transform

20   Holdco, takes free and clear with respect to all of the

21   assets, and further, has no successor liability.

22            See, for example, Paragraphs M, 19, 22, and 27 of

23   the free and clear order.  Frankly, sometimes bankruptcy

24   judges bridle at orders that are, as in this case, submitted

25   that are 83 pages long because they have redundant

Page 44

1   provisions, but nothing really is more important to a buyer

2   in a bankruptcy case than getting free and clear status and

3   being relieved of successor liability, obviously after due

4   notice and the opportunity for a hearing and the like.

5           And that, too, is acknowledged in the order as to

6   the importance to Transform Holdco, the buyer, of obtaining

7   free and clear status.  See Paragraph S of the order.

8           It's also recognized by the Second Circuit, among

9   other courts, that "free and clear", as used in the

10  Bankruptcy Code Section 363(f) means free and clear of all

11  claims flowing from the Debtors' ownership of the assets

12  that were sold, i.e., a broad reading of the statute.  See

13  In re Motors Liquidation Company, 829 F.3d 135, 154-56 (2nd

14  Cir. 2016).  As noted in that case and in other cases, that

15  includes tort claims and contract claims, even if they don't

16  give rise to a lien or some other property interest.  See

17  Douglas v. Stamco, 363 Fed. Appx. 100, 102-103 (2nd Cir.

18  2010), and In re Grumman Olson Industries, Inc., 467 B.R.

19  694, 702-03 (S.D.N.Y. 2012).

20          So, what we're asked to determine here, really, is

21  a matter of contract interpretation, i.e., did, in fact,

22  Transform Holdco in the Asset Purchase Agreement agree to

23  assume the liabilities asserted in the Northern District of

24  Illinois class action complaint, a copy of which is Joint

25  Exhibit 2, or, instead, did it assume only a limited subset

Page 45

1    of liabilities related to Sears' master protection

2    agreements, which in essence are optional service protection

3    agreements covering purchased products or services, similar

4    to a warranty.

5             The Asset Purchase Agreement is governed by

6    Delaware law to the extent that federal law does not apply,

7    and the parties, I believe, have assumed that Delaware law

8    controls here as far as contract interpretation is

9    concerned.  Even if they didn't, I would apply Delaware law

10   in light of the choice of law provision in the Asset

11   Purchase Agreement, Section 13.8(a).

12            Those principles are well understood and

13   articulated.  A good summary of the general principles

14   appears in JFE Steel Corp. v. ICI Americas, Inc., 797 F.

15   Supp. 2d 452, 469 (D. Del. 2011).  "Under Delaware law,

16   contract interpretation is a question of law.  A court

17   applying Delaware law to interpret a contract is to

18   effectuate the intent of the parties.  Accordingly, the

19   court must first determine whether a contract is unambiguous

20   as a matter of law.

21            "If the language of the contract is unambiguous,

22   the Court interprets the contract based on the plain meaning

23   of the language contained on the face of the document, and

24   indeed, the use of extrinsic evidence to interpret clear and

25   unambiguous language in a contract is not permitted.  A

Page 46

1    contract is ambiguous only if it is fairly or reasonably

2    susceptible to different interpretations.  If a contract is

3    unambiguous, the Court should interpret it as a matter of

4    law, making summary judgment potentially appropriate.

5            "Delaware principles of contract interpretation

6    also require the Court to read a contract as a whole and

7    give each provision and term effect so as not to render any

8    part of the contract mere surplusage.  Delaware adheres to

9    the objective theory of contracts, which means that a

10   contract should be interpreted as it would be understood by

11   an objective, reasonable third party.

12           "Finally, when two sophisticated parties bargain

13   at arms' length and enter into a contract, the presumption

14   is even stronger that the contract's language should guide

15   the Court's interpretation."  Internal citations and

16   quotations omitted.

17           As to ambiguity, the Court in Rhone-Poulenc Basic

18   Chemicals, Co. v. American Motorists Insurance Company, 616

19   A.2d 192, 195 (Del. 2011), stated "A contract is not

20   rendered ambiguous simply because the parties do not agree

21   upon its proper construction.  Rather, a contract is

22   ambiguous only when the provisions in controversy are

23   reasonably or fairly susceptible of different

24   interpretations or may have two or more different meanings.

25           "Ambiguity does not exist where the court can

Page 47

1  determine the meaning of a contract without any other guide

2  than a knowledge of the simple facts of which, from the

3  nature of language in general, its meaning depends.  Courts

4  will not torture contractual terms to impart ambiguity where

5  ordinary meaning leaves no room for uncertainty.  The true

6  test is not what the parties to the contract intended it to

7  mean, but what a reasonable person in the position of the

8  parties would have thought it meant" -- and I'm adding this

9  language, from its plain terms.  Again, quotations and

10  citations omitted.

11       The Rhone-Poulenc court also cites Steigler v.

12  Insurance Company of North America, 384 A.2d 398, 401 (Del.

13  1978), for the proposition that "contracts should be read to

14  accord with the reasonable expectations of a reasonable

15  purchaser."

16       As noted in those authorities, a court may resort

17  to extrinsic evidence to determine the meaning of a contract

18  only if it is ambiguous.  As stated in In re Safety-Kleen

19  Corp., 380 B.R. 716, 738 (Bankr. D. Del. 2008), "This

20  extrinsic evidence may include the structure of the

21  contract, the bargaining history, and the conduct of the

22  parties that reflects their understanding of the contract's

23  meaning."

24       The court goes on to cite In re Eagle Industries,

25  Inc. v. DeVilbiss Health Care, Inc., 702 A.2d 1228, 1233

Page 48

1    (Del. 1997) For the proposition that "in construing an

2    ambiguous contractual provision, a court may consider

3    evidence of prior agreements and communications of the

4    parties as well as trade usage or course of dealing."

5         The Safety-Kleen Corp. continues -- still at page

6    738 -- by stating, "Of these areas of inquiry, particular

7    importance is often placed on the conduct of the parties.

8    Courts of this state have long looked to relevant facts and

9    circumstances surrounding the contract including the actions

10   of the parties in ascertaining the intention of the parties.

11   Such actions are of great weight in determining the meaning

12   and applicability of the contract and lead the Court to a

13   presumptively correct interpretation."

14        The parties here each assert that the relevant

15   contract language and the operation of that language within

16   the entire agreement leads unambiguously to their respective

17   interpretations of which liabilities, as relevant here,

18   Transform Holdco actually assumed.

19        Transform Holdco has introduced evidence in the

20   event that I conclude that the contract is nevertheless

21   ambiguous, but I will address first whether the contract,

22   based on the objective, reasonable interpretation of its

23   plain terms, is, in fact, unambiguous on this point; and

24   based on my review of the APA, I conclude that indeed it is

25   not ambiguous as to which liabilities Transform Holdco

1    assumed.

2            First, I should, however, address the liabilities

3    or claims that are asserted in the class action complaint,

4    which again, appears at Exhibit 2 in the record, that is,

5    the first amended class action complaint.  That complaint

6    was commenced as a class action in 2015 against Sears

7    Protection Company, Sears Roebuck and Company, and Sears

8    Holdings Corporation alleging deceptive business practices

9    under Pennsylvania's Unfair Practices and Consumer

10   Protection law, 73 P.S. Section 201-2(4)(xxii), and a

11   violation of Illinois' Consumer Fraud Protection Act -- I'm

12   sorry, Consumer Fraud and Deceptive Practices Act, 815

13   Illinois Comp. Stat. 515 et seq.

14           In addition, it asserts breach of contract and

15   unjust enrichment claims against those parties.  All of the

16   claims relate to the defendants' so-called master protection

17   agreements or MPAs, which again, are optional service

18   protection agreements for which a customer of Sears would

19   pay relating to the company's obligation to repair and

20   service designated purchased products or related services.

21   They resemble a warranty, although they're prepaid optional

22   agreements.

23           It is asserted at Paragraphs 3 through 6 of the

24   complaints that "These service protection agreements were

25   deceptive and illusory because Sears did not, in fact,

1    provide the bargained for coverage of the products that the

2    agreements purported to cover.  Instead, without making an

3    initial determination about whether Sears would actually

4    provide for the products for which Sears was selling service

5    protection agreements, Sears collected money from plaintiffs

6    and, on information and belief, from other consumers for

7    products that Sears ultimately refused to service because

8    upon receiving the claim for service, Sears determined were

9    not actually covered."  That's a quote from Paragraph 3 of

10   the complaint.

11           The complaint goes on to state that "When

12   plaintiffs and the members of the class made claims for

13   service on products that the service agreements purported to

14   cover, Sears would make a determination of whether the

15   product on which the claim was made was one for which Sears

16   would actually offer service.

17           "If Sears then determined not to offer service,

18   Sears would offer to refund some of the money it had

19   collected from plaintiffs and members of the class for the

20   service agreements.  On information and belief, Sears does

21   not make efforts to determine whether it actually covers a

22   product the service agreements purport to cover until a

23   consumer makes a claim under the service agreement.

24           "Accordingly, unless a consumer makes a claim for

25   service on a product that Sears does not actually service,

Page 51

 1   Sears keeps the consumer's money even though Sears never

 2   would have serviced the purportedly covered product.  Thus,

 3   unless Sears is caught when a consumer makes a service

 4   claim, Sears effectively appropriates profits to itself by

 5   selling consumers meaningless service agreements and keeping

 6   their money.

 7           "Accordingly, through an unlawful course of

 8   conduct, Sears has, over the course of years, improperly and

 9   unilaterally breached the express and implied terms of its

10   standard form contract with plaintiffs and the class who are

11   purchasers of the protection agreements.  Defendants have

12   also taken monies from plaintiffs in the class to which

13   defendants had no right at law or in equity for alleged

14   service protection which was never provided."

15           That's all from Paragraphs 4 through 6 of the

16   complaint.  The complaint's factual allegations as to

17   support those contentions start at Paragraph 23 of the

18   complaint and, in essence, it appears to me, assert in

19   essence a bait-and-switch type of arrangement, whereby

20   customers are led to believe that the MPA covered the

21   product that they were buying although, in fact, it did not

22   or there were limitations to the coverage as to what was, in

23   fact, covered.

24           Those paragraphs run through Paragraph 41, from

25   Paragraph 23.  The class has since been certified in really

Page 52

1   two subclasses or two nationwide classes.  This is laid out

2   in the original motion to this Court and not disputed, and

3   that was done in a memorandum opinion and order from the

4   Illinois District Court from 2018, i.e., before the

5   commencement of this Chapter 11 case:

6             "With respect to the breach of contract and unjust

7   enrichment claims, the following nationwide class has been

8   certified.  All individuals and entities who paid for after-

9   market MPAs on March 25, 2005 to the present (including

10  post-point of sale purchases of coverage, purchases of

11  coverage for products bought from a retailer other than

12  Sears and/or subsequent renewals of coverage) for products

13  which were not covered by nor eligible for coverage under

14  the MPA and did not receive a full refund."

15            A second class was also certified in the same

16  memorandum opinion and order.  It comprises, with respect to

17  the Pennsylvania Unfair Trade Practices and Consumer

18  Protection law claim, the following Pennsylvania-only class:

19  "All residents of Pennsylvania who paid for after-market

20  MPAs on March 25, 2009 to the present (including post-point

21  of sale purchases of coverage, purchases of coverage bought

22  from a retailer other than Sears and/or subsequent renewals

23  of coverage) for products which were not covered by nor

24  eligible for coverage under the MPA and did not receive a

25  full refund."

1          Of course, implicit in that, I believe, and in the

2    fact that the litigation did not proceed to a determination

3    of liability at the time that Sears' Chapter 11 case started

4    and since then, since the automatic stay has remained in

5    place as to Sears, is that the court has not determined

6    whether assertion that products were not covered was,

7    indeed, a breach of contract or whether a refund was, in

8    fact, owed in such circumstances under the parties'

9    agreement or a breach of the Pennsylvania Unfair Trade

10   Practices and Consumer Protection law.

11          Transform Holdco purchased substantially all of

12   the Debtors' assets under an Asset Purchase Agreement dated

13   as of January 17, 2019, by and among Transform Holdco, LLC,

14   Sears Holdings Corporation, and its subsidiaries party

15   thereto.  That, again, is Joint Exhibit 1.

16          The APA provides in Section 2.1 that the acquired

17   assets shall be acquired "free and clear of any and all

18   encumbrances of any kind, nature, or description and any

19   claims," encumbrances and claims being defined terms as

20   found at Page 13 and 8 respectively, of the APA.  The

21   definition of claims in the APA mirrors the broad definition

22   in Section 101(5) of the Bankruptcy Code.  Clearly, the

23   claims asserted in the first amended complaint at J.,

24   Exhibit 2, would be encompassed by the definition of

25   "claims".

Page 54

1          The consideration provided by Transform Holdco in

2     return for the acquired assets included, among other things,

3     an assumption of specific -- and this is a defined term with

4     initial caps -- Assumed Liabilities, and it is this defined

5     term first used in Section 2.3 of the APA that the parties

6     are primarily fighting over.  2.3 begins by stating, "Upon

7     the terms and subject to the conditions of this agreement,

8     on the closing date, buyer or the applicable assignee shall

9     assume effective as of the closing and shall timely perform

10    and discharge in accordance with their respective terms the

11    following Liabilities" -- and liabilities is an upper case

12    term defined at Page 21, which incorporates the defined term

13    Claim as well as the defined term Action which appears at

14    Page 3, that defined term including litigation and legal

15    proceedings, and then that is collectively defined as the

16    Assumed Liabilities.

17          The first three categories of Assumed Liabilities

18    all pertain to liabilities arising on or after the closing

19    date or designated assignment date of the APA, and this is a

20    typical concept for an acquirer in a Chapter 11 sale.  It

21    takes on the obligations post-acquisition but does not want

22    to take on obligations that already existed or arose pre-

23    bankruptcy.

24          The key section in article -- or Section -- 2.3

25    for purposes of this dispute is Section 2.3(e) which states,

1    "Subject to Section 2.8(e)" -- which no party has believed

2    is relevant -- the buyer is assuming "all liabilities for

3    warranties and protection agreements or other services

4    contracts other than warranties relating to intellectual

5    property for the goods and services of sellers sold or

6    performed prior to the closing, including any liabilities

7    owed by Sears Re" -- that's one of the Sears affiliates,

8    Sears Re -- "to any seller in respect of reinsurance of such

9    warranties and protection agreements."  And that's a defined

10   term, the PA Liabilities.

11          Interestingly, under the Asset Purchase Agreement

12   free and clear Order, Transform did not receive an

13   assignment of those agreements, i.e., the PAs, the MPAs, or

14   warranties under Section 365 of the Bankruptcy Code.

15   Instead, it simply assumed the sellers' obligations pursuant

16   to and in accordance with Section 2.3(e) of the APA.  That's

17   found in Paragraph 18 of the free and clear Order.

18          That's clearly in distinction with a separate

19   defined term, Assigned Agreements, and that has relevance

20   here because one cannot assume and assign a contract under

21   the Bankruptcy Code that's executory unless one cures all

22   defaults under the agreement that were existing pre-

23   assignment.

24          Section 2.3(g) of the APA actually provided for

25   all cure costs solely with respect to the assigned

Page 56

1    agreements, i.e., the parties bargained for Transform to

2    pick up those pre-assignment cure costs, but the parties

3    chose not to have the MPAs and other warranty-like

4    agreements referred to in Section 2.3(e) be assumed under

5    365 as Assigned Agreements, but, rather, to treat them as

6    simply Assumed Liabilities "for", again, such warranties and

7    protection agreements.

8              Transform contends -- and this was made, I

9    believe, crystal clear on the record today -- that in

10   assuming such liabilities under Section 2.3(e), it agreed to

11   perform the MPAs and other similar warranties as covered in

12   that section regardless when the MPA was entered into or

13   when the good or service was provided to the customer, but

14   only on a going-forward basis, i.e., it did not agree to

15   assume claims against the sellers, i.e., including the three

16   defendants in the Illinois District Court class action for

17   their breach or liability, arising before the APA closing

18   date with respect to such warranties and protection

19   agreements or other service contracts.

20             Besides the plain language of Section 2.3(e),

21   which states that what is being assumed are all liabilities

22   "for" warranties or protection agreements or other service

23   contracts, as opposed to all liabilities "arising from or

24   related to" warranties and protection service agreements or

25   other services contracts for the goods and services seller

Page 57

```
1    sold or performed prior to the closing, transform points to

2    Section 2.4 of the APA, which is headed "Excluded

3    Liabilities."  That section begins by stating, "None of

4    buyer or any affiliate of buyer or any assignee shall assume

5    or be deemed to assume or become obligated hereunder in any

6    way to pay or perform any Liabilities" -- again the upper

7    case defined term -- "of any sellers or any of their

8    respective affiliates of any kind or nature, known, unknown,

9    contingent, or otherwise, whether direct or indirect,

10   matured or unmatured, other than the Assumed Liabilities

11   (the foregoing including the following, "the Excluded

12   Liabilities") which shall include the following

13   liabilities."

14           And among the following liabilities is set forth

15   in Section 2.4(c), "All liabilities arising from or related

16   to any claim, action, arbitration, audit, hearing,

17   investigation, suit, litigation, or other proceeding arising

18   out of the assumed liabilities, the acquired assets, or the

19   operation of the business prior to the closing date or

20   relating to facts, actions, omissions, circumstances, or

21   conditions existing, occurring, or accruing prior to the

22   closing date against any seller or its affiliates."

23           Just as with Section 2.3, many of the provisions,

24   including 2.4(a), 2.4(b), 2.4(d), as well as 2.4(c), make a

25   distinction between pre-closing date and post-closing date
```

1    liabilities: again, a logical distinction given the fact

2    that buyers do not want to assume liabilities, unless it's

3    obviously negotiated with their seller, in a bankruptcy case

4    for the pre-closing period.

5         The class representatives contend that, first, the

6    plain meaning of Section 2.3(e) is broad enough to subsume

7    not only the interpretation given it by Transform, but also

8    the claims asserted in their litigation.  They do so

9    notwithstanding that those claims are claims for Sears'

10   conduct and that that conduct includes, in addition to

11   breach of the MPAs also claims for unjust enrichment of

12   Sears, i.e., Sears kept the money that was paid in respect

13   of the MPAs, and for deceptive practices under the

14   Pennsylvania and Illinois consumer protection statutes.

15        They contend that the excluded assets provision

16   that I previously read is qualified in full by exclusion

17   from it, i.e., an exclusion from the exclusion, of any

18   Assumed Liabilities, so, they contend, it really does not

19   add anything to Transform's argument, given that the reading

20   of 2.3(e), as they read it, would subsume the liabilities

21   asserted in the class action complaint.

22        Based on my reading of these provisions, I

23   conclude, to the contrary, that the plain meaning of 2.3(e)

24   is that Transform assumed liabilities under the warranty and

25   protection agreements, including the MPAs, for products

1   covered by those agreements regardless whether they were

2   sold or the services were performed before or after the

3   closing of the APA, but that those obligations assumed are

4   only for ongoing, i.e., post-APA closing, performance, that

5   the use of the word "for" in Section 2.3(e) as opposed to

6   "arising from or related to", particularly when one reads

7   the different language of "arising from or relating to" in

8   2.4(c), I believe, makes it clear to a reasonable reader

9   that Transform was not assuming liabilities for Sears' or

10  any of the other two defendants' in the Northern District of

11  Illinois class action breach or other misconduct relating to

12  the MPAs referenced in the first amended complaint.

13          The claims in that complaint are all for, as far

14  as the actions complained of, pre-closing alleged misconduct

15  by the named defendants.  No misconduct post-closing by

16  Transform is asserted.

17          It is, of course, conceivable that there might be

18  such a claim against Transform if, in fact, Transform

19  breaches the MPAs post-closing, or if there is a contract

20  right to the return of money paid under the MPAs that

21  Transform refuses to return.  But those facts are not

22  alleged in the first amended complaint, and therefore it

23  appears to me that that liability, based on the plain

24  language of 2.3(e) of the APA, was not assumed, and

25  therefore, that the motion to name Transform as a party

Page 60

1   defendant to the Northern District of Illinois class action

2   must be denied.

3           The second provision of the agreement that has

4   attracted most of the parties' attention, i.e., 2.4(c), is,

5   to some extent, circular in that it excludes from the

6   exclusion the "assumed liabilities".  However, it appears to

7   me, that there is a clear and important difference between

8   the language in 2.3(e) with regard to that assumed

9   liability, which again, says assumed liabilities "for" or

10  liabilities "for" the protection agreements and warranties,

11  and 2.4(c), which refers to all liabilities arising from or

12  related to any claim prior to the closing date, and I think

13  that is an important distinction.

14          Thus, it appears to me that the holding in Bennett

15  v. FCA U.S., LLC (In re Old Carco, LLC), 587 B.R. 809

16  (Bankr. S.D.N.Y. 2018), where my colleague Judge Bernstein

17  had to interpret a somewhat similar dispute as to whether an

18  Asset Purchase Agreement agreed or provided for the buyer to

19  assume a liability or not, is not particularly helpful to

20  the movant class action representatives.  In that case, the

21  parties to the APA entered into a clear amendment to the

22  assumed liabilities provision in the APA.

23          I want to make sure that we're still on, because

24  the screen has gone blank.  Are we still on the sound?  Yes.

25  Okay.  I'm looking at --

Page 61

1          MR. BAREFOOT:  We can hear you find, Your Honor.

2          THE COURT:  Oh, good.  Very well.  Thank you.  The

3     amendment number four to the Master Transaction Agreement

4     whereby GM sold substantially all of its assets -- I'm

5     sorry, whereby Chrysler sold substantially all of its

6     assets, was clearly amended to add clearly defined "assumed

7     liability" that had not been in the agreement before.  Given

8     that addition, the interpretation offered by the buyer of

9     Chrysler's assets was clearly contradictory and inconsistent

10    with the parties' intentions, as evidenced by the amendment,

11    and, therefore, the reference to the assumed liabilities in

12    that provision could easily be interpreted to require

13    enforcement of Amendment No. 4.

14          Here, the difference in language between 2.4(c)

15    and 2.3(e) really requires, I believe, the opposite result,

16    which is that it appears clear that the parties made a

17    distinction between the excluded liabilities arising from or

18    related to the assumed liabilities and the assumed liability

19    as delineated at least in 2.3(e) which is more narrowly

20    drafted.  Again, I will also come back to the logical point

21    that it is highly unlikely that a buyer such as Transform

22    would agree to assume liabilities that don't involve an

23    ongoing relationship with a customer, such as the

24    liabilities in the first amended class action complaint.

25          The circumstances under which that would've been

Page 62

1    done would, to my mind, have been clearly touted as

2    additional consideration to the Debtors' estates as part of

3    the process, which was hotly contested by those objecting to

4    the APA, of seeking approval of the APA.

5              This is an important aspect of contract

6    interpretation, not really a parol evidence point, as

7    recognized by the Second Circuit in yet another automotive

8    bankruptcy case, In re Motors Liquidation Company, 943 F.3d

9    125, 132 (2nd. Cir. 2019), where the Circuit said

10   "Appellants offer no convincing reason why it was

11   commercially advantageous for New GM to contractually assume

12   claims for punitive damages, nor did they account for the

13   telling fact that when Section 2.3(a)(9) was amended, nobody

14   appears to have contemplated New GM assuming liabilities for

15   punitive damages.

16             "Furthermore, as the bankruptcy court observed,

17   the idea that New GM would silently choose to assume

18   inestimable millions of dollars in punitive damages is

19   inherent entirely implausible.  Accordingly, the terms of

20   the sale agreement reflect," and then the Circuit went on to

21   say, "and extrinsic evidence confirms that New GM did not

22   contractually assume claims for punitive damages based on

23   old GM's conduct."

24             I don't believe that I need to get to the parol

25   evidence on this point, as I've said, but I will note that

Page 63

1      that parol evidence in the form of the three declarations

2      whose admission as direct testimony has been confirmed, that

3      is of Mr. Kamlani, Mr. Allen, and Mr. Riecker, R-I-E-C-K-E-

4      R, all support the notion that when illustrating the

5      consideration's value for the assumption of liabilities at

6      approximately $1.1 billion, $1.009 billion of which were for

7      the assumption of liabilities for protection agreements like

8      the MPAs, the contingent litigation liabilities such as

9      those set out in the class action complaint were not

10     considered.

11             See, for example, Paragraph 7 of Mr. Allen's

12     declaration.  Mr. Allen is the associate at Cleary Gottlieb

13     Steen and Hamilton who was active in representing Transform

14     in its negotiation of the APA and, as Mr. Kamlani testified

15     on cross, would've known of the schedule which listed that

16     litigation, would've been aware of that litigation, Schedule

17     6.14 of the APA.

18             Similarly, Mr. Riecker, who was one of the lead

19     negotiators for Sears, acknowledged in his declaration again

20     that the -- that he does not believe there was any attempt

21     to have Transform assume pre-existing litigation associated

22     with the protection agreement liabilities.  That's in

23     Paragraph 17 of his declaration, and he echoes the valuation

24     point of the $1.009 billion for assumed liabilities on

25     Paragraph 10, as does Mr. Kamlani in his declaration.

Page 64

1          Now, both Mr. Kamlani and Mr. Riecker have

2     acknowledged in cross and in their -- in Mr. Riecker's

3     deposition testimony, respectively, that they were not

4     actually aware of the class action litigation when

5     negotiating the agreement.  However, I believe -- and again,

6     they're both sophisticated parties, without doubt -- an

7     intention to assume more than simply ongoing warranty

8     liabilities would've been a major concession by Transform in

9     the negotiations for which it would've wanted to take full

10    credit in order to justify the Court's approval of its

11    agreement over, among others, the Official Creditors

12    Committee's objection to it, and the fact that that

13    concession was not referenced in the testimony in support of

14    the agreement, and indeed the roughly $1 billion valuation

15    was echoed in the witness declaration of Mr. Aebersold from

16    the Debtors' investment banker Lazard as part of the

17    testimony in support of the APA, to me highlights and

18    reinforces the notion that this is not the type of liability

19    that a buyer would be expected to or would normally assume

20    under an Asset Purchase Agreement -- in any Asset Purchase

21    Agreement, but certainly from a debtor in bankruptcy.

22          So, the parol evidence, I believe, clearly

23    supports the interpretation that Transform is -- has put on

24    the agreement, and for that reason, if I were to find the

25    agreement to be ambiguous, the evidence would tend to

Page 65

1    confirm that the parties to the agreement intended to

2    operate as Transform has stated in its interpretation of it

3    for purposes of this contested matter.

4             So, I will deny the motion and ask Transform to

5    submit an order to chambers to that effect and stating that

6    the Court's free and clear.  Order precludes the class

7    representatives from joining Transform as the defendant in

8    the first amended complaint in the Northern District of

9    Illinois litigation or pursuing those claims against it.

10            You don't need to formally settle that order, but

11   obviously you should run it by Mr. Mather before you email

12   it to chambers and copy him on the email so that he can make

13   sure it's consistent with my ruling.  You don't need to put

14   this in the order, but again, as I stated during oral

15   argument, my ruling obviously does not preclude parties to

16   protection agreements from asserting their rights in those

17   agreements for Transform's own conduct post-closing.  But

18   that's really not what I believe that this complaint is

19   about.

20            So, are there any questions?

21            MR. BAREFOOT:  No, Your Honor, and we will submit

22   an order in accordance with instructions.

23            THE COURT:  Okay.  Thank you.  I obviously gave

24   the parties a fairly lengthy bench ruling.  I think they've

25   probably been waiting long enough, partly because of COVID

Page 66

1    and the like, to have this issue decided.  When I give a

2    lengthy bench ruling, I may go over the transcript, in

3    addition to correcting typos or the like, I may change a

4    sentence or two if I think that I said something inartfully.

5    If I do edit it, I will file it as a separate bench ruling,

6    not as the transcript, but the holding won't change, so I'll

7    look for that order.

8            MR. BAREFOOT:  Thank you, Your Honor.

9            MR. MATHER:  Thank you, Your Honor.

10           THE COURT:  You don't have to wait for the

11   transcript to submit the order.

12           MR. BAREFOOT:  Understood.

13           THE COURT:  I want to thank both of you for

14   organizing the hearing on this so efficiently and laying out

15   the issues under remote conditions.  Thank you.

16           MR. BAREFOOT:  Thank you, Your Honor.

17           (Whereupon these proceedings were concluded at

18   4:12 PM)

19

20

21

22

23

24

25

Page 67

1                          I N D E X

2

3                          RULINGS

4                                              Page        Line

5

6    Motion Denied                             65          1

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3          I, Sonya Ledanski Hyde, certified that the foregoing

4     transcript is a true and accurate record of the proceedings.

5     Sonya Ledanski          Digitally signed by Sonya Ledanski
                              Hyde

6     Hyde                    DN: cn=Sonya Ledanski Hyde, o, ou,
                              email=digital@veritext.com, c=US

7                             Date: 2021.06.04 09:13:11 -04'00'

8     Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20     Veritext Legal Solutions

21     330 Old Country Road

22     Suite 300

23     Mineola, NY 11501

24

25     Date:  June 3, 2021

| & | 2 | 2021  1:16 2:8 | 4:12  66:18 |
|---|---|---|---|

**&**   3:4 5:3,10 7:6

**1**

**1**   8:16 10:5 12:12
13:18 26:15 41:13
41:14 53:15 64:14
67:6
**1.009**   25:24 26:8
63:6,24
**1.1**   63:6
**10**   63:25
**100**   44:17
**10006**   5:6
**101**   53:22
**102-103**   44:17
**10601**   1:14
**10:00**   2:11
**11**   41:7 42:9 52:5
53:3 54:20
**11501**   68:23
**1228**   47:25
**1233**   47:25
**125**   62:9
**13**   36:15,20 53:20
**13.8**   45:11
**132**   62:9
**135**   44:13
**137**   42:18
**14**   1:16 2:8 36:15
**151**   42:18
**154-56**   44:13
**17**   53:13 63:23
**18**   55:17
**18-23538**   1:3
**19**   43:22
**19103**   5:15
**192**   46:19
**195**   46:19
**1978**   47:13
**1997**   48:1

**2**   2:10 3:8 8:16
10:13 44:25 49:4
53:24
**2.1**   53:16
**2.3**   13:13,16,23
15:15 16:7,13
17:11 18:4 19:2,2
19:6 20:8,24 22:6
27:4 28:19 30:14
31:8,22 35:25
43:9 54:5,6,24,25
55:16,24 56:4,10
56:20 57:23 58:6
58:20,23 59:5,24
60:8 61:15,19
62:13
**2.3.**   20:24
**2.3c**   19:9
**2.4**   19:15,18 20:12
20:16,24,25 21:1
22:7,16 23:4 31:8
31:17 57:2,15,24
57:24,24,24 59:8
60:4,11 61:14
**2.8**   55:1
**2001**   5:14
**2005**   36:24 52:9
**2008**   47:19
**2009**   42:18 52:20
**201-2**   49:10
**2010**   44:18
**2011**   45:15 46:19
**2012**   44:19
**2015**   49:6
**2016**   44:14
**2018**   52:4 60:16
**2019**   24:13 25:4,5
41:23 43:5 53:13
62:9
**2020**   6:9 9:10
41:18 42:11 43:6

68:25
**21**   9:10 42:4 54:12
**218**   12:17
**22**   43:22
**23**   31:7 51:17,25
**2335**   26:13
**24**   34:8
**248**   1:13
**25**   36:24 52:9,20
**27**   43:22
**28**   34:14
**2:07**   1:17
**2d**   45:15
**2nd**   43:6 44:13,17
62:9

| 3 |
|---|

**3**   2:19 8:16 49:23
50:9 54:14 68:25
**3/2/2020**   2:18
**300**   1:13 68:22
**330**   68:21
**35**   34:9
**36**   43:6
**363**   44:10,17
**365**   55:14 56:5
**37**   34:10
**380**   47:19
**384**   47:12
**3900**   5:13
**398**   47:12

| 4 |
|---|

**4**   8:16,16 36:18
49:10 51:15 61:13
**40**   13:18
**401**   47:12
**41**   51:24
**42**   19:19
**44**   34:19
**452**   45:15
**467**   44:18
**469**   45:15

| 5 |
|---|

**5**   8:15,15 25:21
53:22
**5/10/2021**   2:7
**5/14/2021**   2:11
**515**   49:13
**557**   42:17
**587**   60:15

| 6 |
|---|

**6**   8:17 49:23 51:15
**6.14**   12:22 63:17
**603**   43:5
**616**   46:18
**62**   2:10 3:8
**6212**   2:16,19,22
3:3 15:4
**6366**   2:23 3:8 15:4
**65**   67:6
**694**   44:19

| 7 |
|---|

**7**   8:12 63:11
**702**   47:25
**702-03**   44:19
**716**   47:19
**73**   2:19 49:10
**738**   47:19 48:6
**797**   45:14

| 8 |
|---|

**8**   41:23 53:20
**809**   43:5 60:15
**815**   49:12
**829**   44:13
**83**   43:25
**877**   43:5
**883**   43:5

| 9 |
|---|

**9**   62:13
**9395**   3:14,20 4:4
**943**   62:8

| | | | |
|---|---|---|---|
| **9452** 2:23 | 29:12 32:21 34:19 | 57:22 | 49:24 50:2,5,13 |
| **9470** 3:4 15:4 | 36:6 41:5,10,19 | **affirm** 9:1 | 50:20,22 51:5,11 |
| **9474** 3:10 15:4 | 41:21 43:3,14,15 | **aftermarket** | 55:3,9,13,19 56:1 |
| **9479** 2:12 | 44:24 49:3,5,6 | 30:18 36:23 | 56:4,5,7,19,22,24 |
| **9483** 3:15,20 4:4 | 54:13 56:16 57:16 | **afternoon** 6:2,25 | 58:25 59:1 60:10 |
| **9485** 3:22 | 58:21 59:11 60:1 | 7:5,9 10:1,2 | 63:7 65:16,17 |
| **9486** 4:6 | 60:20 61:24 63:9 | **agree** 33:16 44:22 | **ahead** 9:20 |

**a**

**a.2d** 46:19 47:12
   47:25
**able** 43:2,15
**absolved** 38:16
**accept** 20:9 22:10
**access** 2:3,5
**accord** 47:14
**account** 21:24
   62:12
**accounting** 26:4
**accruing** 57:21
**accurate** 36:8
   68:4
**acknowledge**
   43:11,17
**acknowledged**
   44:5 63:19 64:2
**acknowledges**
   39:9
**acquire** 30:12
**acquired** 16:24
   19:4,20 20:7 22:1
   31:20 41:22 42:7
   53:16,17 54:2
   57:18
**acquirer** 54:20
**acquisition** 31:9
   54:21
**act** 49:11,12
**action** 2:18 6:10
   10:17,21 11:6
   13:2,15,24 14:1
   18:16 21:7 22:12
   23:24 25:16 26:5
   27:13,17 29:5,8

64:4
**actions** 42:8 48:9
   48:11 57:20 59:14
**active** 63:13
**activity** 18:17
**acts** 42:20
**actual** 34:17
**add** 25:3 31:16
   42:22 58:19 61:6
**added** 6:11
**adding** 47:8
**addition** 26:22
   42:2 49:14 58:10
   61:8 66:3
**additional** 14:15
   34:12 62:2
**address** 20:21
   48:21 49:2
**addressed** 19:16
   20:5 23:4
**adheres** 46:8
**admission** 14:20
   40:21 63:2
**admitted** 8:3,17
   9:17 41:14
**adopting** 24:2
**advantageous**
   62:11
**advisors** 12:19
**aebersold** 26:13
   64:15
**aff** 43:5
**affiliate** 57:4
**affiliated** 21:2
**affiliates** 5:4 7:7
   24:18 55:7 57:8

46:20 56:14 61:22
**agreed** 6:9,15
   7:18 9:16 35:14
   35:15 41:17,18
   56:10 60:18
**agreement** 3:14
   3:20 4:4 6:13,20
   10:6 11:5 12:24
   15:12,15,16,22
   16:5,12 18:18,19
   18:20,21 19:11
   20:4 23:20 25:16
   26:16 27:4,21
   28:15 29:4,18,19
   30:1,12,13 31:2,4
   31:15,20 32:1,5
   33:8,10,14 34:13
   35:6,7,13,19,19
   38:21 39:7,8,11
   39:12,17 41:1,13
   41:24 42:14 43:9
   44:22 45:5,11
   48:16 50:23 53:9
   53:12 54:7 55:11
   55:22 60:3,18
   61:3,7 62:20
   63:22 64:5,11,14
   64:20,21,24,25
   65:1
**agreements** 18:6
   18:9 19:8 22:3
   23:21 25:17,25
   29:24 30:25 31:5
   31:10,12 35:16
   38:14,24 45:2,3
   48:3 49:17,18,22

**aim** 18:16
**al** 6:4 41:7
**albeit** 34:23
**allegation** 32:7
   40:1
**allegations** 40:20
   51:16
**allege** 34:22
**alleged** 51:13
   59:14,22
**alleges** 29:22
**alleging** 49:8
**allen** 7:24 8:17
   63:3,12
**allen's** 63:11
**allen's** 8:2
**alpha** 27:15
**ambiguity** 25:8
   46:17,25 47:4
**ambiguous** 46:1
   46:20,22 47:18
   48:2,21,25 64:25
**amended** 6:19
   10:17 49:5 53:23
   59:12,22 61:6,24
   62:13 65:8
**amendment** 60:21
   61:3,10,13
**america** 47:12
**american** 18:15
   46:18
**americas** 45:14
**amount** 26:4
**anyone's** 39:25
**apa** 13:7,14,23
   15:19 17:11,21

18:11,24 19:19
23:2,10 24:15
25:10 27:24 28:14
29:2,3,4,14 33:2
35:14,16,17 36:3
37:21 38:6,8,9,10
38:14,16,21 42:5
48:24 53:16,20,21
54:5,19 55:16,24
56:17 57:2 59:3,4
59:24 60:21,22
62:4,4 63:14,17
64:17
**apa's** 15:20
**appearances** 6:24
**appearing** 43:9
**appears** 8:15
45:14 49:4 51:18
54:13 59:23 60:6
60:14 61:16 62:14
**appellants** 62:10
**applicability**
48:12
**applicable** 54:8
**apply** 45:6,9
**applying** 45:17
**appropriate** 43:2
46:4
**appropriates** 51:4
**approval** 62:4
64:10
**approving** 6:12
41:23 42:13
**approximate**
26:15
**approximately**
63:6
**appx** 43:5 44:17
**april** 24:12
**arbitration** 57:16
**areas** 48:6
**aren't** 37:18

**arguable** 22:23
**arguably** 21:14
**argue** 18:10 20:15
21:7
**argument** 15:5
23:1 24:1 30:7,8
58:19 65:15
**arguments** 16:19
18:2 30:21
**arises** 21:25
**arising** 19:4,10,19
21:15 22:7 23:23
29:2 54:18 56:17
56:23 57:15,17
59:6,7 60:11
61:17
**arms** 46:13
**arose** 54:22
**arrangement**
37:15 51:19
**arrived** 25:22
**arriving** 21:22
**article** 43:9 54:24
**articulated** 45:13
**ascertaining**
48:10
**asked** 44:20
**asking** 30:11
**aspect** 62:5
**assert** 15:12 28:14
43:13 48:14 51:18
**asserted** 24:20
34:5 36:6,10
41:21 44:23 49:3
49:23 53:23 58:8
58:21 59:16
**asserting** 19:18
24:2 65:16
**assertion** 53:6
**asserts** 49:14
**asset** 3:13,19 4:3
6:13 10:6 11:5
12:24 15:11,15

16:12 27:3 31:15
39:6,16 41:1,12
41:24 42:14 43:9
44:22 45:5,10
53:12 55:11 60:18
64:20,20
**assets** 16:24 19:5
19:20 20:7 22:1
23:15 31:19 41:12
41:22,25 42:7
43:21 44:11 53:12
53:17 54:2 57:18
58:15 61:4,6,9
**assign** 55:20
**assigned** 19:8
55:19,25 56:5
**assignee** 21:2 54:8
57:4
**assignment** 54:19
55:13,23 56:2
**associate** 63:12
**associated** 63:21
**assume** 21:3
25:14 27:8 29:2
35:18,23 44:23,25
54:9 55:20 56:15
57:4,5 58:2 60:19
61:22 62:11,17,22
63:21 64:7,19
**assumed** 15:11,14
16:1,7 17:25 18:4
18:25 19:20 20:6
20:24 21:3,9,17
21:23 22:1,3,14
22:19 23:4,15,21
23:23 24:12,20,23
25:25 28:11,12
30:14,22 31:9,23
32:4 33:2 35:6,10
35:13,25 36:1
40:16,25 43:12,19
45:7 48:18 49:1
54:4,16,17 55:15

56:4,6,21 57:10
57:18 58:18,24
59:3,24 60:6,8,9
60:22 61:6,11,18
61:18 63:24
**assuming** 14:16
15:24 22:17 25:17
36:11 55:2 56:10
59:9 62:14
**assumption** 17:10
22:2,10 43:10,16
54:3 63:5,7
**attached** 41:13
**attempt** 63:20
**attention** 12:15
60:4
**attorneys** 5:4,11
**attracted** 60:4
**attractive** 26:3
**audit** 57:16
**authorities** 47:16
**authorizing** 41:24
**automatic** 2:9,22
3:2,7 41:9 53:4
**automotive** 62:7
**aware** 10:21,23
10:24 11:5,8 13:5
13:8 27:2 63:16
64:4

**b**

**b** 1:21 19:6 57:24
**b.r.** 43:5 44:18
47:19 60:15
**back** 12:12 15:8
31:24 35:11,22
36:13 39:6 61:20
**bailey** 42:17
**bait** 51:19
**banker** 64:16
**bankr** 47:19
60:16
**bankruptcy** 1:1
1:12,23 11:18

[bankruptcy - chemicals]                                                     Page 4

12:2 15:10 42:20
43:2,23 44:2,10
53:22 54:23 55:14
55:21 58:3 62:8
62:16 64:21
**barefoot** 3:9 5:8
7:5,6,14,22 8:1,5
8:20 11:15 12:8
12:11 14:6,22
16:16,17,21 17:13
17:20 21:18 22:9
22:20 23:6 24:9
25:7 28:18,25
29:5,9,15,20 32:4
40:17,18 61:1
65:21 66:8,12,16
**bargain** 34:1
46:12
**bargained** 50:1
56:1
**bargaining** 47:21
**based** 6:17 17:6
17:20 33:8 40:2
42:7,8 45:22
48:22,24 58:22
59:23 62:22
**basic** 46:17
**basis** 6:17 17:22
56:14
**bears** 12:16 24:9
**began** 17:2
**beginning** 2:8
**begins** 54:6 57:3
**behalf** 2:15 3:3,9
3:15,21 4:5 7:1,6
10:9 12:20 13:8
25:14
**belief** 50:6,20
**believe** 28:18,19
45:7 51:20 53:1
56:9 59:8 61:15
62:24 63:20 64:5
64:22 65:18

**believed** 37:14,19
55:1
**believes** 28:11,12
29:1
**believing** 32:10
**ben** 5:17 6:25
**bench** 65:24 66:2
66:5
**benefit** 14:25
**benefits** 34:20
**benjamin** 3:3
**bennett** 60:14
**bernstein** 60:16
**best** 34:23
**better** 19:13
**bid** 26:3
**billion** 25:24 26:8
26:15 63:6,6,24
64:14
**bit** 20:23
**blank** 60:24
**book** 6:20 8:11
10:3,14 13:18
**bottom** 12:16
13:19
**bought** 35:16,20
36:2 37:1 38:8,9
38:13 39:7,12
52:11,21
**brand** 25:19
**brandon** 26:13
**breach** 29:4,13,14
31:12,25 32:16
33:3,10,16 34:4
34:17 35:1,5,6,13
35:23 36:21 37:7
37:10,25 38:10,15
39:25 49:14 52:6
53:7,9 56:17
58:11 59:11
**breached** 34:19
35:18 51:9

**breaches** 59:19
**bridle** 43:24
**brief** 9:22 15:5
16:18
**briefly** 12:8 16:19
18:2 20:21 24:6
30:7 40:19
**broad** 22:11 44:12
53:21 58:6
**broader** 18:25
19:10 31:21
**broadly** 23:2
**brought** 22:12
**business** 17:24
19:21 22:15 25:18
49:8 57:19
**buyer** 21:2,2
23:12 24:1 38:7
39:19 43:19 44:1
44:6 54:8 55:2
57:4,4 60:18 61:8
61:21 64:19
**buyer's** 42:6
**buyers** 58:2
**buying** 51:21

**c**

**c** 5:1 6:1 8:13
19:15,18 20:12
21:13 22:7,16
23:4 57:15,24
59:8 60:4,11
61:14 63:3 68:1,1
**calculating** 26:5
**called** 49:16
**calls** 26:24
**canon** 22:21
**canons** 19:23
**can't** 30:16
**caps** 54:4
**captures** 22:11
**carco** 23:7,25
24:23 43:4 60:15

**care** 47:25
**carefully** 18:23
**carveout** 23:9
**carveouts** 35:20
**carves** 20:17
**case** 1:3 15:8 23:7
27:10,15,18 28:4
28:5 34:5 35:24
41:7,9 43:17,24
44:2,14 52:5 53:3
54:11 57:7 58:3
60:20 62:8
**cases** 42:9 44:14
**categories** 54:17
**category** 31:21
**caught** 51:3
**cause** 29:12 34:18
**causes** 29:5,7
32:21 36:6
**ceo** 11:25 12:1
**certain** 31:1,1,2
32:10
**certainly** 14:13
29:24 41:17 64:21
**certified** 15:13
36:16,22 37:6
40:11,13 41:4
51:25 52:8,15
68:3
**chairman** 12:1
**chambers** 2:4
65:5,12
**change** 9:13 27:13
39:14 66:3,6
**chapter** 41:7 42:9
52:5 53:3 54:20
**characterizations**
40:20
**characterize**
17:23
**check** 40:5
**chemicals** 46:18

choice 45:10
choose 62:17
chose 56:3
chrysler 23:7 61:5
chrysler's 61:9
cir 43:6 44:14,17
  62:9
circuit 42:19 44:8
  62:7,9,20
circular 60:5
circumstance
  23:3
circumstances
  31:1,3 48:9 53:8
  57:20 61:25
citations 46:15
  47:10
cite 47:24
cites 47:11
claim 23:24 24:13
  24:17,25 25:1
  27:9 28:15,17,23
  29:13 30:3 31:11
  31:25 32:13,16,17
  32:17 33:3,10,14
  33:16,20 39:1,11
  39:14,15 42:5,8
  50:8,15,23,24
  51:4 52:18 54:13
  57:16 59:18 60:12
claims 13:15,24
  13:25 14:3 15:11
  17:23 18:17 19:17
  19:19 20:6,8,11
  21:14,15,25 22:12
  22:12 23:3,22
  25:15 29:2 36:21
  37:7 38:6 40:24
  41:21,25 43:13
  44:11,15,15 49:3
  49:15,16 50:12
  52:7 53:19,19,21
  53:23,25 56:15

58:8,9,9,11 59:13
  62:12,22 65:9
clarify 17:13
class 2:9,15,18,21
  3:7 5:11,12 6:6,10
  7:1,2 10:17,21
  11:6 13:2,15,24
  14:1 15:2,7 17:23
  21:7 22:12 23:23
  25:15 26:5 27:13
  27:17 28:23 29:12
  29:16 30:15,16
  31:14 36:17,22
  37:6,8 38:23 39:2
  40:11 41:3,5,10
  43:3,14 44:24
  49:3,5,6 50:12,19
  51:10,12,25 52:7
  52:15,18 56:16
  58:5,21 59:11
  60:1,20 61:24
  63:9 64:4 65:6
classes 15:13
  36:16 40:13 41:4
  52:1
clause 21:1,21
clear 16:24 19:1
  20:2 22:22 33:5
  41:25 42:3,13,20
  43:18,20,23 44:2
  44:7,9,10 45:24
  53:17 55:12,17
  56:9 59:8 60:7,21
  61:16 65:6
clearly 43:18
  53:22 55:18 61:6
  61:6,9 62:1 64:22
cleary 5:3 7:6
  10:23 12:23 13:10
  63:12
clients 15:21
closed 14:24

closing 17:25 18:1
  18:8 19:5,21
  21:15 22:15 24:11
  28:14,16,21 30:2
  38:20,21 42:4
  54:8,9,18 55:6
  56:17 57:1,19,22
  57:25,25 58:4
  59:3,4,14,15,19
  60:12 65:17
code 44:10 53:22
  55:14,21
colleague 40:5
  60:16
colleagues 7:8
collected 50:5,19
collecting 33:11
collectively 54:15
come 31:24 61:20
comes 28:14 30:2
coming 22:18
  39:6
commenced 49:6
commencement
  41:6 52:5
commerce 5:13
commercially
  62:11
committee's
  64:12
communications
  48:3
comp 49:13
company 42:17
  44:13 46:18 47:12
  49:7,7 62:8
company's 49:19
complained 59:14
complaint 10:17
  29:13,22 32:1,21
  34:7 36:5,7,10
  42:21,22 43:1
  44:24 49:3,5,5

50:10,11 51:16,18
  53:23 58:21 59:12
  59:13,22 61:24
  63:9 65:8,18
complaint's 51:16
complaints 49:24
component 26:14
comports 26:10
comprises 52:16
computer 14:13
conceivable 59:17
conceivably 15:22
concept 54:20
concerned 45:9
concerning 13:13
  13:22 27:14
concession 64:8
  64:13
conclude 48:20,24
  58:23
concluded 66:17
conditions 54:7
  57:21 66:15
conduct 40:2
  47:21 48:7 51:8
  58:10,10 62:23
  65:17
conducted 2:2
conference 6:8,15
  41:18
conferencing 2:3
confidence 25:19
confirm 8:9,15
  14:19 39:10 65:1
confirmed 63:2
confirms 62:21
conflict 22:23
  25:9
connection 18:21
connective 19:10
consent 6:16
consider 48:2

consideration
26:15 54:1 62:2
consideration's
63:5
considered 63:10
consistent 6:19
8:9 24:14 31:7
65:13
constitutes 34:17
construction
46:21
construing 48:1
consumer 22:3
25:17,18,19,24
26:16 28:4 29:6,7
29:23 30:1 32:17
32:22,23,23,24
33:20 49:9,11,12
50:23,24 51:3
52:17 53:10 58:14
consumer's 51:1
consumers 34:10
50:6 51:5
consummate
16:23
consummated
16:25
contain 24:19
contained 45:23
contemplated
14:17 62:14
contend 58:5,15
58:18
contends 56:8
contentions 51:17
contested 9:9 13:3
15:1 41:14 42:10
62:3 65:3
contingent 57:9
63:8
continued 6:10
continues 48:5

continuity 25:18
contract 20:3,14
20:20 21:19,20
22:16 24:3 29:13
31:12,25 32:15,16
33:3,10,16 34:4
34:18 36:2,21
37:7,10,25 44:15
44:21 45:8,16,17
45:19,21,22,25
46:1,2,5,6,8,10,13
46:19,21 47:1,6
47:17,21 48:9,12
48:15,20,21 49:14
51:10 52:6 53:7
55:20 59:19 62:5
contract's 46:14
47:22
contracted 34:21
contractor 28:13
contracts 18:6
46:9 47:13 55:4
56:19,23,25
contractual 19:23
31:14 37:15 47:4
48:2
contractually
43:12 62:11,22
contradicted
34:24
contradictory
61:9
contrary 38:20,20
58:23
contrast 18:23
20:19
controls 45:8
controversy 46:22
convincing 62:10
copy 10:16 41:13
44:24 65:12
corbett 7:8

coren 5:10
corp 6:3 45:14
47:19 48:5
corporation 1:7
2:2 41:7 49:8
53:14
correct 7:14 8:5,7
8:20 10:8 11:2,3
12:3,4 14:5 16:3
17:17 28:25 29:9
29:15,20 43:16
48:13
correcting 66:3
costs 55:25 56:2
couldn't 6:16
country 68:21
couple 9:22 24:5
course 7:10 13:17
15:6 35:2 42:15
48:4 51:7,8 53:1
59:17
court 1:1,12 6:2
7:4,9,18,21,24 8:3
8:6,8,14,21 9:1,5
9:8,15,19,23
10:22,25 12:7,9
14:7,10,23 15:18
16:15,20 17:8,15
17:19 19:24 20:3
20:9,15,22 22:5
22:17 23:5,11
24:8,22 25:8
26:10 27:19 28:10
28:22 29:1,7,11
29:16 30:5 31:24
32:15 33:15,17,24
34:6 36:16,19
37:5,8,12,16,20
38:18 39:9 40:7
40:10,13,16,22
41:4,18,20 42:2
42:15,20 45:16,19
45:22 46:3,6,17

46:25 47:11,16,24
48:2,12 52:2,4
53:5 56:16 61:2
62:16 65:23 66:10
66:13
court's 41:23
42:11,13 46:15
64:10 65:6
courts 20:2 22:22
44:9 47:3 48:8
court's 6:12 16:11
cover 32:2,5 34:3
50:2,14,22
coverage 30:19
31:1 32:10,12
33:9,11,13 34:13
36:25,25 37:2,3
37:19 38:15 50:1
51:22 52:10,11,12
52:13,21,21,23,24
covered 29:17,19
30:19 32:11,12,13
33:7,14,19,22
34:12,15,25 35:19
37:2,9,12,15,18
38:1 39:23 50:9
51:2,20,23 52:13
52:23 53:6 56:11
59:1
covering 45:3
covers 19:3 50:21
covid 65:25
credentials 2:5
credit 64:10
creditors 64:11
cross 9:20,24
63:15 64:2
crystal 56:9
cure 55:25 56:2
cures 55:21
currently 14:18
43:1

**customer** 49:18 56:13 61:23
**customers** 51:20

## d

**d** 1:22 6:1 45:15 47:19 57:24 67:1
**damage** 29:6
**damages** 35:3 62:12,15,18,22
**date** 19:5,21 21:15 38:25 54:8 54:19,19 56:18 57:19,22,25,25 60:12 68:25
**dated** 9:10 41:23 53:12
**daul** 5:18 7:1
**dealing** 48:4
**dealt** 6:17
**debtholder** 11:20
**debtor** 1:9 15:10 26:12 64:21
**debtors** 3:13,19 4:3 6:13 23:12 24:14 42:5,8 44:11 53:12 62:2 64:16
**december** 25:4 36:14
**deceptive** 17:24 22:13 49:8,12,25 58:13
**decided** 66:1
**declaration** 3:17 4:1 7:22,25 8:2,14 8:16 9:9,16 10:25 13:12,22 26:12 63:12,19,23,25 64:15
**declarations** 6:21 63:1
**deemed** 57:5

**defaults** 55:22
**defendant** 25:3 41:10 60:1 65:7
**defendants** 34:19 49:16 51:11,13 56:16 59:15
**defendants'** 59:10
**defined** 21:4 23:1 37:9 53:19 54:3,4 54:12,12,13,14,15 55:9,19 57:7 61:6
**definition** 15:14 18:14 19:25 30:15 32:3 53:21,21,24
**definitions** 15:13 18:12,13 36:15
**del** 45:15 46:19 47:12,19 48:1
**delaware** 20:2 22:22 45:6,7,9,15 45:17 46:5,8
**delineated** 61:19
**demands** 29:2
**denied** 60:2 67:6
**deny** 32:20 65:4
**depend** 13:14,23
**depends** 47:3
**deposed** 15:23
**deposition** 7:16 7:19 8:13 64:3
**depositions** 26:22
**derive** 38:7
**derived** 38:9,10
**describe** 18:25
**described** 32:25 33:1
**description** 26:10 53:18
**designated** 8:12 34:1 49:20 54:19
**designations** 7:16
**determination** 50:3,14 53:2

**determine** 42:21 44:20 45:19 47:1 47:17 50:21
**determined** 33:18 50:8,17 53:5
**determines** 33:19
**determining** 48:11
**developments** 6:22
**devilbiss** 47:25
**dial** 2:5
**dictionary** 18:12 18:13,14,15
**didn't** 15:19 27:25
**difference** 36:9 60:7 61:14
**different** 21:24 22:6 25:9 35:8 38:18 39:20 40:3 40:25 46:2,23,24 59:7
**direct** 7:23 8:3 9:11,17 24:1 57:9 63:2
**directing** 42:2
**discharge** 54:10
**discovery** 26:21
**discussed** 27:20
**discussion** 23:10
**discussions** 27:23 28:3
**dismiss** 32:20
**dispute** 8:2 17:9 41:19 54:25 60:17
**disputed** 52:2
**distinct** 19:16
**distinction** 22:8 36:6 55:18 57:25 58:1 60:13 61:17
**district** 1:2 5:12 6:11 7:2 10:18

11:6 15:8 41:4,5 41:19,20 42:19 43:3,14 44:23 52:4 56:16 59:10 60:1 65:8
**docket** 15:3 26:13
**document** 2:10,19 2:22 3:3,8,8,14,20 4:4 10:8,9 13:19 26:21 45:23
**documents** 6:18
**doesn't** 13:25 15:25 21:9 24:24 32:2 33:2 34:22 35:4 36:7 39:12
**doing** 38:20
**dollars** 62:18
**don't** 6:24 11:8 16:9 17:8 25:1 28:9 30:5,24,25 31:3 32:3,6,7,18 33:5 34:3,16 35:24 37:10 38:4 38:14
**doubt** 64:6
**douglas** 44:17
**dovetails** 28:19
**drafted** 43:1 61:20
**drain** 1:22 6:3
**draw** 12:15
**due** 44:3

## e

**e** 1:21,21 5:1,1 6:1 6:1 8:13,13 13:13 13:16,23 15:15 16:13 18:4 20:8 22:6 27:4 28:19 30:14 31:7,8,22 54:25 55:1,16 56:4,10,20 58:6 58:20,23 59:5,24 60:8 61:15,19

63:3,3 67:1 68:1
**eagle** 47:24
**easily** 61:12
**ecf** 2:12,16,23 3:4
3:10,15,22 4:6
**echoed** 64:15
**echoes** 63:23
**ecro** 1:25
**edit** 66:5
**edward** 11:21
12:1
**effect** 16:13 20:4
20:17 23:19 24:3
26:18 46:7 65:5
**effective** 54:9
**effectively** 20:13
22:16 51:4
**effectuate** 45:18
**efficiently** 66:14
**efforts** 26:23
50:21
**either** 25:12
**element** 35:12
**eligible** 30:19 37:3
52:13,24
**email** 2:4 65:11,12
**emphasize** 18:8
**encompassed**
38:23 53:24
**encumbrances**
42:1 53:18,19
**enforce** 3:13,19
4:3
**enforceable** 42:23
**enforcement**
61:13
**enjoyment** 42:7
**enrichment** 22:13
29:9 32:22 36:21
37:7 49:15 52:7
58:11
**ensure** 25:18,18

**enter** 46:13
**entered** 25:5 36:3
56:12 60:21
**entire** 22:25 48:16
**entirely** 22:16
62:19
**entirety** 20:12
**entities** 36:23 52:8
**entitled** 38:2
**equity** 11:19
51:13
**esl** 11:10,24,25
**essence** 22:5 45:2
51:18,19
**essentially** 30:17
31:13
**establishing** 2:7
**estate** 24:16
**estates** 42:6 62:2
**estimate** 25:23
**estimated** 25:24
**et** 6:4 41:7 49:13
**event** 48:20
**evidence** 14:15,17
14:19 15:19,19,24
18:3 19:14 24:7
25:8,10,11 26:5
26:12 27:6,17
45:24 47:17,20
48:3,19 62:6,21
62:25 63:1 64:22
64:25
**evidenced** 61:10
**evidentiary** 2:1,8
2:14 6:4,17,23
7:11 8:10 9:11
14:24
**exact** 23:17
**examination** 9:20
9:24 12:10
**example** 15:23
28:22 33:12 34:9
42:17 43:22 63:11

**excerpts** 7:19
**exclude** 28:6
**excluded** 17:1
19:16,22 20:17,25
21:5,8,10,15
23:10,11 24:15
31:7,17 57:2,11
58:15 61:17
**excludes** 60:5
**excluding** 23:15
**exclusion** 21:17
21:17 58:16,17,17
60:6
**excuse** 37:13
**executed** 27:21
**executory** 55:21
**exhibit** 6:20 8:11
8:12,15 10:3,5,13
12:12,16 13:18,18
25:21 41:13,14
44:25 49:4 53:15
53:24
**exhibits** 8:16
**exist** 46:25
**existed** 54:22
**existence** 13:6
**existing** 55:22
57:21 63:21
**expectations**
47:14
**expected** 64:19
**express** 17:4,10
51:9
**expressly** 43:19
**extending** 31:19
**extent** 13:12,21
16:4 25:8 28:16
45:6 60:5
**extrinsic** 45:24
47:17,20 62:21

**f**

**f** 1:21 44:10 45:14
68:1
**f.3d** 44:13 62:8
**face** 45:23
**facing** 25:18
**fact** 21:8 25:3
27:25 34:17,25
35:5 44:21 48:23
49:25 51:21,23
53:2,8 58:1 59:18
62:13 64:12
**facts** 34:22 40:19
47:2 48:8 57:20
59:21
**factual** 14:23
51:16
**failed** 31:11
**failing** 34:20
**fair** 26:21 28:17
40:22
**fairly** 9:22 21:12
43:7 46:1,23
65:24
**fall** 21:9
**familiar** 10:12
11:21
**far** 7:24 45:8
59:13
**fca** 43:4 60:15
**february** 25:5
41:23
**fed** 43:5 44:17
**federal** 10:22 45:6
**feel** 14:13
**fielding** 34:2
**fighting** 54:6
**figure** 26:5,8
**file** 24:25 66:5
**filed** 2:15 3:3,9,14
3:20 4:4 6:6 12:2
14:25 24:13 36:14

filing 11:17
final 12:15 13:11
finally 46:12
find 19:13 37:17
  61:1 64:24
finds 25:8
fine 9:23 34:24
first 6:24 7:13,15
  10:16,21,23 13:1
  18:2 20:2 28:4
  29:12 34:7 36:17
  45:19 48:21 49:2
  49:5 53:23 54:5
  54:17 58:5 59:12
  59:22 61:24 65:8
fit 15:13
fix 29:18,18
flowing 44:11
focusing 20:23
  29:12
following 21:5
  28:12 36:22 42:4
  52:7,18 54:11
  57:11,12,14
foregoing 21:5
  57:11 68:3
forgive 37:13
form 25:12 51:10
  63:1
formally 65:10
forms 26:2
forth 15:14 31:21
  36:15 57:14
forum 43:2
forward 31:15
  56:14
found 23:11 27:19
  53:20 55:17
founder 11:25
four 61:3
frankly 43:23
fraud 32:17,17,23
  32:24 49:11,12

free 14:13 16:24
  41:25 42:3,13,20
  43:17,20,23 44:2
  44:7,9,10 53:17
  55:12,17 65:6
front 10:3
full 26:20 30:20
  37:4,24 38:2
  52:14,25 58:16
  64:9
fund 11:11
further 3:1 6:22
  12:5 14:6 28:8
  29:21 40:9 43:21
furthermore
  62:16
future 39:23

**g**

g 6:1 55:24
gatekeeper 42:12
  42:21
gather 7:12 15:18
general 22:22,23
  22:24 45:13 47:3
generic 19:25
  20:10 24:18
gentleman 11:21
gerald 2:16 3:4
  6:7 41:3
getting 44:2
give 19:24 20:3
  21:19,20 24:3
  35:22 44:16 46:7
  66:1
given 43:17 58:1,7
  58:19 61:7
gives 20:19 23:19
giving 20:18
  23:21
gm 61:4 62:11,14
  62:17,21
gm's 62:23

go 9:20 13:18 15:8
  66:2
goal 15:7
god 9:3
goes 41:19 47:24
  50:11
going 9:21 30:22
  35:7,21,22 56:14
good 6:2,25 7:4,5
  7:9 10:1 30:2
  45:13 56:13 61:2
goods 18:7 28:13
  28:20 29:24 38:8
  38:9 55:5 56:25
gottlieb 5:3 7:6
  63:12
governed 45:5
government 2:2
grant 32:19
great 48:11
greene 2:16,18
  3:4 5:11 6:7 7:1
  10:17 41:3
grumman 44:18
guess 15:3 21:16
  25:2,5 28:10
  31:24 32:2 34:6
  34:16 36:3 37:22
  37:23
guide 46:14 47:1

**h**

hamilton 5:3 7:6
  63:13
hand 8:23 25:2
happy 15:4
hard 36:4
harmonize 24:2
hasn't 32:8
head 30:10
headed 43:10 57:2
health 47:25
hear 15:4 61:1

heard 32:4
hearing 2:1,1,3,7
  2:8,10,14,14,21
  2:21 3:1,6,12,17
  4:1 6:4,17,23 7:11
  8:10,18 9:12
  14:16,24 25:23
  26:12 27:12 44:4
  57:16 66:14
heart 30:23
hedge 11:11
held 2:10 17:6
help 9:2 23:6
helpful 60:19
hereunder 57:17
heritage 18:15
highlights 64:17
highly 61:21
history 47:21
hit 30:10
holdco 2:18 3:6,9
  3:15,18,21 4:2,5
  5:4 6:12,14 7:7
  10:9 11:12,13
  15:9,12 24:23
  41:10,11 43:12,15
  43:19,20 44:6,22
  48:18,19,25 53:11
  53:13 54:1
holder 11:19 42:5
holding 1:7 2:1
  6:3 60:14 66:6
holdings 41:6
  49:8 53:14
home 32:11 33:7
hon 1:22
honor 6:25 7:5,14
  7:20 8:1,5,7,19,20
  8:25 9:14,18,21
  12:8 14:6,9,21,22
  15:6 16:3,9,17,18
  16:21 17:20 18:8
  18:17 19:13 20:21

21:18 22:9,20
23:6 24:5,10 25:7
25:21 26:7,20
27:10,15 28:8,18
28:23,25 29:10,20
30:9,16,24 31:16
32:6,9 33:4 36:12
37:11,13 38:11,22
40:4,8,18 61:1
65:21 66:8,9,16
**honored** 32:8
**honoring** 29:3
**hook** 22:25
**hotly** 62:3
**hyde** 4:25 68:3,8

**i**

**i.e.** 6:11 22:6
43:16 44:12,21
52:4 55:13 56:1
56:14,15 58:12,17
59:4 60:4
**ici** 45:14
**idea** 38:23 62:17
**identification**
13:14,23 27:12
**identified** 34:13
**identify** 10:7
**illinois** 5:12 6:11
7:2 10:18,22 11:7
15:8 32:23 33:15
36:17 41:5,20
43:3,14 44:24
49:11,13 52:4
56:16 58:14 59:11
60:1 65:9
**illusory** 31:6
38:15 39:1 49:25
**illustrating** 63:4
**impart** 47:4
**implausible** 62:19
**implicit** 53:1
**implied** 51:9

**importance** 44:6
48:7
**important** 19:23
26:7 44:1 60:7,13
62:5
**impression** 34:23
34:24 35:1
**improperly** 51:8
**inaccurate** 35:1
**inapposite** 27:19
41:16
**inartfully** 66:4
**incentive** 26:2
**inception** 16:10
**include** 16:8,8
18:5 26:2 47:20
57:12
**included** 23:16
25:21 54:2
**includes** 44:15
58:10
**including** 21:5
36:24 42:16 48:9
52:9,20 54:14
55:6 56:15 57:11
57:24 58:25
**inconclusive**
15:25
**inconsistency**
23:19
**inconsistent** 23:13
38:5 61:9
**incorporates**
54:12
**indemnity** 42:17
**indicate** 18:16
**indirect** 57:9
**indiscernible**
13:20 24:21 25:15
26:17 37:1
**individuals** 30:18
36:23 39:5 52:8

**inducement** 16:22
**industries** 44:18
47:24
**inestimable** 62:18
**information** 50:6
50:20
**inherent** 62:19
**initial** 33:25 36:13
42:21 50:3 54:4
**inquiry** 48:6
**instances** 29:23
**instructions** 65:22
**insurance** 46:18
47:12
**intellectual** 55:4
**intended** 27:8
28:2 47:6 65:1
**intent** 15:20 25:12
25:16 26:25 27:7
27:14 28:5 45:18
**intention** 13:22
16:6 48:10 64:7
**intentions** 13:13
61:10
**interest** 15:10
17:3,5 35:3 44:16
**interestingly**
55:11
**interests** 41:25
**interfere** 42:6
**internal** 46:15
**internally** 23:13
**interpret** 21:20
42:16 45:17,24
46:3 60:17
**interpretation**
15:20 16:1,12
19:14,24 20:18
21:22 22:10 23:18
24:2,15 36:4,7,8
38:16 39:25 43:8
44:21 45:8,16
46:5,15 48:13,22

58:7 61:8 62:6
64:23 65:2
**interpretations**
40:25 46:2,24
48:17
**interpreted** 46:10
61:12
**interpreting** 20:3
**interprets** 45:22
**intertwined** 30:15
**introduced** 48:19
**introductory** 21:1
**investigation**
57:17
**investment** 64:16
**investments** 11:10
11:24,25
**invokes** 42:11
**involve** 31:18
61:22
**involved** 10:8
12:20
**involves** 43:8
**isn't** 21:16 34:15
35:4 38:9
**issue** 6:9 13:3
16:8 28:2 35:2
38:12 43:7 66:1
**issues** 66:15
**item** 13:1 26:13
30:4 35:16
**items** 31:2 32:11
33:9,9
**it's** 7:18 9:5,6,9
9:21 11:11 15:25
21:18 29:19,25
32:3 33:18 36:11
37:18,18 38:3,9
38:22
**i'd** 24:6 29:18
**i'll** 10:16 16:17
18:2 27:11

**i'm** 6:22 10:15
14:15 15:4,23
20:22,23 22:17
24:23 31:8 32:7
33:5,5 34:8,16
35:7 36:3
**i've** 39:3

**j**

**j** 53:23
**james** 2:15
**janice** 5:18 7:1
**january** 6:8 9:10
41:17 42:11 53:13
**jessica** 7:8
**jfe** 45:14
**join** 41:9
**joined** 7:7
**joining** 65:7
**joint** 6:20 8:11,12
44:24 53:15
**judge** 1:23 6:3
17:17 60:16
**judges** 43:24
**judgment** 46:4
**june** 68:25
**jurisdiction** 42:15
**justify** 64:10

**k**

**k** 8:13 9:5,6 63:3
**kamlani** 7:10,12
8:23,25 9:4,7,8,14
9:24 10:1,13 11:2
11:10 12:5,10,12
13:11,17 14:11
16:4 25:13 26:25
27:1,11 63:3,14
63:25 64:1
**kamlani's** 9:16
26:22
**kaufman** 5:10
**keeping** 51:5
**keeps** 51:1

**keith** 4:1
**kept** 58:12
**key** 16:22 54:24
**kind** 53:18 57:8
**kinds** 22:11
**kleen** 47:18 48:5
**know** 27:16,25
29:6 30:16 32:22
38:14 39:1,13,15
40:21
**knowing** 9:10
**knowledge** 47:2
**known** 14:3,4
28:7 57:8 63:15
**kristin** 7:8
**kunal** 9:24 12:10

**l**

**l** 2:10,19 3:8 9:5,6
**laid** 52:1
**lampert** 11:22
12:1
**language** 18:25
19:25 23:19 28:19
45:21,23,25 46:14
47:3,9 48:15,15
56:20 59:7,24
60:8 61:14
**law** 3:1,12,18 4:2
45:6,6,7,9,10,15
45:16,17,20 46:4
49:10 51:13 52:18
53:10
**lawsuit** 10:18 16:6
31:11 38:19,19
39:4 40:3,20,23
**lawyers** 10:23
12:23 13:10
**laying** 66:14
**lays** 34:8
**lazard** 26:13
64:16
**lead** 20:16 23:10
25:13,14 48:12

63:18
**leading** 8:10
**leads** 23:18 48:16
**learn** 32:11
**leave** 41:9
**leaves** 47:5
**led** 23:13 51:20
**ledanski** 4:25 68:3
68:8
**left** 34:23
**legal** 12:24 16:13
54:14 68:20
**length** 46:13
**lengthy** 65:24
66:2
**letter** 9:5
**lettered** 21:1
**let's** 32:18 35:18
35:23
**liabilities** 16:1,7
17:11,25 18:5,5
18:18,19,20,22,22
19:3,7,11,17,20
19:22 20:6,8,10
20:12,17 21:3,4,8
21:10,17,23 22:1
22:2,4,11,14,18
22:19 23:4,10,20
22:23 24:16 25:17
25:24 28:5,20
30:14 31:8,9,17
31:18,23 36:9,10
43:10 44:23 45:1
48:17,25 49:2
54:4,11,11,16,17
54:18 55:2,6,10
56:6,10,21,23
57:3,6,10,12,13
57:14,15,18 58:1
58:2,18,20,24
59:9 60:6,9,10,11
60:22 61:11,17,18
61:22,24 62:14

63:5,7,8,22,24
64:8
**liabilitie's** 21:6
**liability** 15:14
17:1,3,6,7 19:1
20:1,24,25 21:9
23:1,12,22 24:20
24:24 25:14 26:2
26:4,16 27:9
30:22 32:3 35:10
35:13,25 37:22
38:17 41:1 43:12
43:21 44:3 53:3
56:17 59:23 60:9
60:19 61:7,18
64:18
**liable** 17:1 35:9
**liberty** 5:5
**lien** 44:16
**liens** 41:25
**lieu** 7:17
**light** 41:22 45:10
**limitations** 34:12
51:22
**limited** 44:25
**line** 67:4
**liquidation** 44:13
62:8
**list** 21:10 33:6
**listed** 31:2 33:13
36:14 63:15
**listen** 14:13
**litigation** 5:12
6:10 7:3 13:6,9
19:19 20:5,11
21:14,25 22:18
23:3 24:11 25:4
27:3,25 31:18,19
42:12 43:4 53:2
54:14 57:17 58:8
63:8,16,16,21
64:4 65:9

litigations  28:6
little  20:23 23:7
live  7:17
llc  2:18 3:9,10,10
  3:15,21 4:5 7:6
  10:10 11:12,13
  15:9,12 43:4,5
  53:13 60:15,15
llc's  3:6,18 4:2
llp  5:3
logical  39:18 58:1
  61:20
long  39:14 43:25
  48:8 65:25
look  19:2,25
  21:21 27:18 66:7
looked  48:8
looking  34:8
  60:25
loss  25:22
luke  3:9 5:8 7:5

**m**

m  3:3 9:6 17:3
  43:22
machine  29:17
  39:13
major  64:8
majority  11:13
making  38:25
  46:4 50:2
march  36:24 52:9
  52:20
market  5:14 52:9
  52:19
massive  30:12
master  30:13,13
  30:25 31:10 32:1
  32:5 33:8 35:15
  38:21 39:7,11
  45:1 49:16 61:3
material  30:17
mather  3:3 5:17
  6:25 7:1,20 8:6,7

8:19 9:18,19,21
9:25 11:16 14:8,9
14:21 15:6 16:3
17:2,8,16,17 30:6
30:9 32:9 33:4,20
33:25 36:12,20
37:6,11,13,17
38:11,22 40:4,8
40:12,15 65:11
66:9
matter  1:5 6:8,16
9:9 10:25 13:3
15:1 16:11 39:12
41:14 42:10 44:21
45:20 46:3 65:3
matured  57:10
mean  24:22,24
29:2 36:8 39:10
39:19 47:7
meaning  15:16
18:11 19:24 20:13
20:18,19 21:19,20
22:24 27:20 45:22
47:1,3,5,17,23
48:11 58:6,23
meaningless  51:5
meanings  46:24
means  7:12 18:15
19:24 44:10 46:9
meant  17:10 47:8
members  28:23
31:14 50:12,19
memorandum  3:1
3:12,18 4:2 52:3
52:16
mentioned  8:11
11:9 26:8
mere  46:8
merits  32:20
metzger  7:8
millions  62:18
mind  62:1

mineola  68:23
minute  13:16
mirrors  53:21
misconduct  59:11
59:14,15
misled  34:11
misnamed  6:5
moment  35:18,23
money  30:24 31:4
34:15 35:3,22
50:5,18 51:1,6
58:12 59:20
monies  51:12
morning  7:4
motion  2:9,14,21
3:2,6,7,13,19 4:3
6:5 15:1,2 32:19
32:20 41:2,8 52:2
59:25 65:4 67:6
motorists  46:18
motors  44:13 62:8
movant  60:20
movants  2:15 6:6
42:22 43:11
move  14:20 24:6
moving  31:14
mpa  30:19 37:3,9
37:12,14 38:20
51:20 52:14,24
56:12
mpas  30:18 34:20
36:23 49:17 52:9
52:20 55:13 56:3
56:11 58:11,13,25
59:12,19,20 63:8

**n**

n  5:1 6:1 9:5,6
67:1 68:1
nail  30:10
name  9:6 59:25
named  11:21
59:15

narrow  43:7
narrowly  61:19
nationwide  36:22
52:1,7
natural  27:15
nature  29:21
38:12 47:3 53:18
57:8
nearly  24:10
necessarily  36:8
need  62:24 65:10
65:13
needs  25:10 33:23
negotiated  27:3
58:3
negotiating  11:4
12:20,21,23 14:4
16:5 64:5
negotiation  13:6,7
63:14
negotiations  10:9
27:23 28:3 64:9
negotiator  25:13
25:14
negotiators  63:19
neither  27:1
never  25:11 27:20
32:13 51:1,14
nevertheless
48:20
new  1:2 5:6 62:11
62:14,17,21
nina  2:16 3:4 6:7
41:2
non  43:2
normally  14:11
38:6 64:19
north  47:12
norther  15:8
northern  5:12
6:11 7:2 10:18
11:6 41:4,20
43:14 44:23 59:10

60:1 65:8
**note** 26:7 27:11
40:19 62:25
**noted** 15:6 44:14
47:16
**notice** 2:21 15:1
44:4
**noting** 24:9
**notion** 63:4 64:18
**notwithstanding**
26:1 42:13 58:9
**number** 12:16
24:13 33:8 61:3
**numbers** 15:4
**numeration** 13:19
**ny** 1:14 5:6 68:23
**nysb.uscourts.gov**
2:4

**o**

**o** 1:21 6:1 68:1
**o'neal** 3:14,17,21
4:5
**object** 18:16
**objecting** 62:3
**objection** 11:15
15:2 64:12
**objective** 46:9,11
48:22
**obligated** 28:16
57:5
**obligation** 36:1
49:19
**obligations** 19:8
31:14 54:21,22
55:15 59:3
**observations** 24:5
**observed** 62:16
**obtained** 26:23
**obtaining** 44:6
**obviously** 14:24
16:10 31:25 44:3
58:3 65:11,15,23

**occurred** 17:25
**occurring** 57:21
**occurs** 31:3
**offer** 50:16,17,18
62:10
**offered** 16:2 61:8
**official** 64:11
**oh** 61:2
**oil** 39:13
**okay** 6:2 7:9,18,21
7:24 8:6,8 9:5,8
9:15,19,23 12:5,7
12:9 14:7,23
15:18,18 16:15,20
23:5 24:8 28:22
29:11 30:5 37:5
37:16 40:17,22
41:2 60:25 65:23
**old** 23:7,25 43:4
60:15 62:23 68:21
**olson** 44:18
**omissions** 57:20
**omitted** 46:16
47:10
**ones** 22:18
**ongoing** 39:22
59:4 61:23 64:7
**open** 10:5
**operate** 65:2
**operated** 24:10
**operation** 19:21
22:15 48:15 57:19
**opinion** 52:3,16
**opportunity**
26:21 44:4
**opposed** 20:7,24
40:2 56:23 59:5
**opposite** 23:17
61:15
**opposition** 3:12
3:19 4:3
**optional** 45:2
49:17,21

**oral** 15:5 65:14
**order** 2:7,17 6:12
14:16 16:21 17:4
25:5 41:23 42:2
42:13,20,24 43:18
43:23 44:5,7 52:3
52:16 55:12,17
64:10 65:5,6,10
65:14,22 66:7,11
**orders** 6:19 7:12
8:10 42:16,16
43:24
**ordinary** 15:16
47:5
**organizing** 66:14
**original** 15:1 52:2
**originally** 31:5
39:7 41:8
**outset** 15:7 27:11
**overton** 43:4
**owed** 53:8 55:7
**owner** 11:13
**ownership** 19:4
44:11

**p**

**p** 2:15 5:1,1 6:1
**p.c.** 5:10
**p.s.** 49:10
**pa** 5:15 55:10
**pagano** 2:15
**page** 12:15,16
13:18 19:18 36:18
48:5 53:20 54:12
54:14 67:4
**pages** 43:25
**paid** 30:18 31:4
36:23 52:8,19
58:12 59:20
**papers** 27:15
36:13
**paragraph** 16:22
17:3 34:14,19
36:20 42:4 44:7

50:9 51:17,24,25
55:17 63:11,23,25
**paragraphs** 34:8
36:15 43:22 49:23
51:15,24
**parol** 15:19,24
18:3 24:7 25:8,10
25:11 27:6,17
62:6,24 63:1
64:22
**part** 15:11 31:9
31:20 33:10,13,25
37:15 46:8 62:2
64:16
**participants** 13:7
**particular** 13:14
13:24 24:12 27:2
27:4,13 48:6
**particularly** 59:6
60:19
**parties** 6:9,15
8:21 9:16 14:19
15:21,22 17:22
18:8,12,14,25
19:15 20:4 21:24
22:8 25:22 26:9
27:8,19,23 40:24
41:15 45:7,18
46:12,20 47:6,8
47:22 48:4,7,10
48:10,14 49:15
53:8 54:5 56:1,2
60:4,21 61:10,16
64:6 65:1,15,24
**parties'** 6:24
19:14 26:11 27:6
**partly** 65:25
**party** 6:11 46:11
53:14 55:1 59:25
**pas** 55:13
**pattern** 34:17
**pay** 49:19 57:6

paying 32:10,11
payment 19:7
  34:21
payments 33:11
pending 10:18,22
  11:6 41:5
pennsylvania
  32:22 52:17,18,19
  53:9 58:14
pennsylvania's
  49:9
people 32:9 37:18
  37:19 38:13,24
  39:1,7
perform 30:4 35:7
  35:15,22 36:1
  54:9 56:11 57:6
performance 19:7
  35:8 59:4
performed 18:7
  28:21 55:6 57:1
  59:2
performing 29:25
  30:4
period 11:4,15,17
  12:2 58:4
permission 24:6
permit 16:18
permitted 45:25
person 47:7
personally 13:5
pertain 40:24
  54:18
philadelphia 5:15
phrase 21:21
phrases 21:21
pick 56:2
picking 38:6,7
piece 40:4
place 53:5
placed 26:10 48:7
plain 15:16 17:21
  18:3 45:22 47:9

48:23 56:20 58:6
  58:23 59:23
plains 1:14
plaintiffs 2:19
  18:10 19:17 20:1
  20:15 22:25 23:7
  24:10,13 26:20
  27:14 50:5,12,19
  51:10,12
plaintiffs' 17:23
  18:17 20:9 22:10
plaza 5:5
pleadings 14:25
please 8:24 12:13
  12:16
pm 1:17 66:18
point 16:9 26:25
  27:10 30:8 33:18
  34:2 36:24 37:22
  37:23 38:2,3 39:2
  39:22 48:23 52:10
  52:20 61:20 62:6
  62:25 63:24
pointed 23:12,13
  31:18
points 9:22 57:1
position 15:10
  16:10 29:25 38:5
  47:7
possibility 39:5
possible 26:2,3
post 28:15 31:15
  35:16 36:24 38:6
  38:20,21 52:10,20
  54:21 57:25 59:4
  59:15,19 65:17
potentially 6:18
  38:13 46:4
poulenc 46:17
  47:11
power 42:11
practices 17:24
  22:13 49:8,9,12

52:17 53:10 58:13
pre 2:17 28:14
  29:2,3,4,14 35:17
  36:2 37:21 38:8,9
  38:10,14 54:22
  55:22 56:2 57:25
  58:4 59:14 63:21
precisely 22:9
preclude 65:15
precludes 65:6
prepaid 49:21
prepared 6:22
present 36:24
  52:9,20
presentation 17:2
presents 30:2
preserving 40:19
presumably 13:10
  33:21 43:3
presumption
  46:13
presumptively
  48:13
pretrial 6:19
previously 58:16
pricing 33:13
primarily 43:8
  54:6
primary 36:17
principals 12:19
principles 45:12
  45:13 46:5
print 34:25
prior 7:12 8:9
  11:8 18:7 19:21
  21:15 22:15 28:21
  30:1 48:3 55:6
  57:1,19,21 60:12
probably 65:25
probative 16:8
  27:18
procedural 41:16

procedures 2:7
  14:16
proceed 6:22 15:9
  41:20 42:12,25
  43:2,15 53:2
proceeding 11:1
  16:11 36:14 57:17
proceedings
  25:23 54:15 66:17
  68:4
process 13:7
  14:17 62:3
product 32:2,6,14
  34:11,14,25 35:20
  36:2 38:12 50:15
  50:22,25 51:2,21
products 30:18,23
  33:6 36:25 37:2
  45:3 49:20 50:1,4
  50:7,13 52:11,12
  52:23 53:6 58:25
profits 51:4
prohibited 6:14
proof 24:25
proofs 24:13,17
proper 46:21
properly 30:3
property 44:16
  55:5
proposed 27:21
proposition 27:16
  47:13 48:1
protection 3:10
  18:6,9,18,19,20
  18:21 19:11 22:3
  23:20 25:17,25
  26:16 28:5,15
  29:4,7,17,19,23
  30:1,13,25 31:10
  32:1,5,22,23 33:8
  35:15 38:13,21,24
  39:8,11,12 45:1,2
  49:7,10,11,16,18

[protection - relevance]                                                    Page 15

49:24 50:5 51:11
51:14 52:18 53:10
55:3,9 56:7,18,22
56:24 58:14,25
60:10 63:7,22
65:16
**provide** 21:14
31:11 34:20 50:1
50:4
**provided** 21:24
22:2 35:17 42:3
43:18 51:14 54:1
55:24 56:13 60:18
**provides** 18:4
19:6,18,19 53:16
**provision** 22:24
42:23 43:8 45:10
46:7 48:2 58:15
60:3,22 61:12
**provisions** 16:14
18:24 20:19 22:23
23:15 24:3 44:1
46:22 57:23 58:22
**punitive** 62:12,15
62:18,22
**purchase** 3:13,20
4:4 6:13 10:6 11:5
12:24 15:12,15
16:12 27:3 30:12
31:15 34:1 39:6
39:16 41:1,13,24
42:14 43:9 44:22
45:5,11 53:12
55:11 60:18 64:20
64:20
**purchased** 16:24
30:1 37:14 38:24
45:3 49:20 53:11
**purchaser** 28:12
41:11,11 47:15
**purchasers** 51:11
**purchases** 36:25
36:25 52:10,10,21

52:21
**purchasing** 25:20
37:19
**purport** 50:22
**purported** 50:2
50:13
**purportedly** 51:2
**purpose** 18:16
27:7
**purposes** 8:17
54:25 65:3
**pursuant** 31:4
41:12,22 55:15
**pursue** 26:21
**pursuing** 65:9
**pursuit** 6:10
**put** 64:23 65:13

**q**

**qualified** 21:8,16
58:16
**qualifies** 22:24
**quarropas** 1:13
**question** 13:11
21:16 26:24 45:16
**questions** 12:6
28:8 30:6,11 40:9
65:20
**quickly** 21:12
**quite** 27:19
**quotations** 46:16
47:9
**quote** 50:9

**r**

**r** 1:21 5:1 6:1 8:13
8:13 21:10 63:3,4
68:1
**raise** 8:23
**rationale** 21:13
**rdd** 1:3
**rdd.chambers** 2:4
**reach** 20:16 25:10
**read** 20:3,13 22:4
22:16 34:7,22

46:6 47:13 58:16
58:20
**reader** 59:8
**reading** 7:11
20:10,19 44:12
58:19,22
**reads** 30:17 59:6
**realize** 41:15
**really** 6:5 17:22
28:1 29:12 34:22
35:1,19 38:3
39:19 41:16,19
42:11 44:1,20
51:25 58:18 61:15
62:6 65:18
**reason** 62:10
64:24
**reasonable** 46:11
47:7,14,14 48:22
59:8
**reasonably** 46:1
46:23
**recall** 11:8
**receive** 30:20 37:3
37:24 52:14,24
55:12
**received** 30:24
34:21 39:13
**receiving** 50:8
**recognized** 42:18
44:8 62:7
**recognizes** 16:22
**record** 14:24
26:18 49:4 56:9
68:4
**recross** 14:7
**redirect** 12:7,10
36:13
**redundant** 43:25
**rees** 5:10
**reference** 61:11
**referenced** 59:12
64:13

**references** 35:25
**referred** 8:12 17:9
56:4
**refers** 60:11
**reflect** 62:20
**reflects** 47:22
**refrigerator**
33:12,22 34:4
**refund** 30:20 31:3
34:15 37:4,24
38:2 39:24 50:18
52:14,25 53:7
**refuse** 39:24
**refused** 50:7
**refuses** 59:21
**regard** 60:8
**regarding** 16:6
**regardless** 14:2
28:6,13 36:2
56:12 59:1
**reinforces** 64:18
**reinsurance** 55:8
**relate** 18:19 22:14
49:16
**related** 2:10,19,22
3:2,8,8,14,20 4:4
16:13 22:7 29:5
42:7 45:1 49:20
56:24 57:15 59:6
60:12 61:18
**relates** 31:22
**relating** 19:7,10
26:16 31:19 49:19
55:4 57:20 59:7
59:11
**relation** 11:1
30:12 31:23
**relationship**
11:12,14 39:20
61:23
**relatively** 16:18
**relevance** 55:19

relevant 48:8,14
  48:17 55:2
relief 2:9,14,22
  3:2,7 6:6 41:8,16
relieve 24:24
relieved 44:3
rely 7:18 18:12,14
  20:1 22:25 23:8
  27:15
relying 23:11 39:6
remained 53:4
remarks 28:9
remote 2:8 66:15
render 46:7
rendered 46:20
renewal 37:2
renewals 52:12,22
repair 33:23
  39:15 49:19
repairs 30:4 39:22
repeatedly 23:2
replace 30:4
reply 3:1,6,6 15:2
  15:3,3
reporter 8:14
represent 10:16
representatives
  2:9,16,21 3:7 5:11
  6:6 7:2 15:7,23
  21:7 41:3 58:5
  60:20 65:7
representatives'
  15:2
representing
  63:13
request 25:3
  41:15
require 2:3 46:6
  61:12
requires 35:8
  61:15
resemble 49:21

reservation 24:19
reservations
  24:18
reserve 26:3
reserved 24:17
residents 52:19
resolved 6:16
resort 47:16
resources 27:15
respect 8:2 13:13
  13:22 19:8 26:4
  28:3 36:20 41:3
  43:20 52:6,16
  55:8,25 56:18
  58:12
respectfully 27:5
respective 48:16
  54:10 57:8
respectively 53:20
  64:3
respond 30:7
response 21:11
responses 34:6
responsible 12:21
  12:23 39:21,21
result 15:17 23:17
  61:15
resulted 23:14
results 23:14
retailer 37:1
  52:11,22
return 54:2 59:20
  59:21
returning 35:3
review 48:24
reviewing 12:21
revisit 17:22
rhone 46:17 47:11
riecker 7:15 8:13
  25:13 26:25 27:2
  63:3,18 64:1
riecker's 64:2

riecker's 8:14
right 7:9 8:6,8,22
  8:23 14:10,15,23
  17:15,15,16,19
  22:19 24:24 29:7
  29:11 30:5 32:15
  33:24 37:8,14,20
  38:18 40:11,15
  51:13 59:20
rights 24:17,18
  29:3 40:19 65:16
rise 44:16
risk 39:5
road 38:15 68:21
robert 1:22
rod 2:11
roebuck 49:7
role 11:24
room 1:13 47:5
roughly 64:14
ruling 40:23
  65:13,15,24 66:2
  66:5
rulings 67:3
run 51:24 65:11
running 11:17
  12:2

s
s 2:10,19,22 3:3,8
  3:14,20 4:4 5:1
  6:1 9:5 16:22 44:7
s.d.n.y. 43:5 44:19
  60:16
safety 47:18 48:5
sale 12:20 16:21
  16:23,25 17:4
  18:1 24:11 25:4
  25:23 26:11,15,19
  36:24 41:24 42:3
  42:16,20,23 52:10
  52:21 54:20 62:20
saying 8:21 21:13
  22:5 32:19 35:7

says 21:1 33:21
  34:2,19,23 36:11
  39:23 60:9
schedule 12:22
  13:1 63:15,16
schedules 12:25
scheduling 2:17
scope 21:22 27:7
  28:2,4,4
screen 7:10 14:12
  60:24
sean 3:14,17,21
  4:5
sears 1:7 2:1 6:3
  10:17 11:14,20
  12:1 17:6 24:14
  24:17,24,25 25:12
  26:17 31:11 32:10
  32:13 33:21 34:15
  35:5,14,17,18,21
  35:23 37:1,23
  38:1,8,10,24 39:8
  39:14,16 40:2
  41:6,9,12 45:1
  49:6,7,7,18,25
  50:3,4,5,7,8,14,15
  50:17,18,20,25
  51:1,1,3,4,8 52:12
  52:22 53:3,5,14
  55:7,7,8 58:9,12
  58:12 59:9 63:19
sears' 15:23 28:13
second 19:13 28:5
  44:8 52:15 60:3
  62:7
section 13:13,22
  15:14 16:7,13
  18:4 19:2,2,6,9,15
  19:18 20:7,12,16
  20:25,25 27:4
  31:22 44:10 45:11
  49:10 53:16,22
  54:5,24,24,25

[section - supp]                                                                                    Page 17

55:1,14,16,24
56:4,10,12,20
57:2,3,15,23 58:6
59:5 62:13
**sections** 27:24
28:2
**see** 7:10 10:19
12:18 32:3 34:16
35:12,24 37:10
38:4 42:16 43:4
43:22 44:7,12,16
63:11
**seeing** 36:4
**seeking** 62:4
**seized** 27:1
**seller** 19:3 55:8
56:25 57:22 58:3
**sellers** 18:7 21:3
28:21 55:5 56:15
57:7
**sellers'** 55:15
**selling** 50:4 51:5
**sense** 11:5
**sentence** 66:4
**separate** 20:5
23:22 55:18 66:5
**separately** 22:1
**seq** 49:13
**service** 29:24
30:13 35:17 39:13
45:2 49:17,20,24
50:4,7,8,13,13,16
50:17,20,22,23,25
50:25 51:3,5,14
56:13,19,22,24
**serviced** 51:2
**services** 18:6,7
28:13,20 31:10
38:8,9 45:3 49:20
55:3,5 56:25,25
59:2
**servicing** 30:23

**set** 15:14 31:21
36:15 57:14 63:9
**sets** 34:10
**settle** 65:10
**shared** 19:14 26:9
27:6
**shouldn't** 20:16
**showing** 25:1
**shows** 25:22 30:14
**signed** 2:7,17
**significant** 11:19
27:23
**silence** 40:21
**silently** 62:17
**similar** 26:18 45:3
56:11 60:17
**similarly** 8:1 23:9
63:18
**simple** 32:17 47:2
**simply** 46:20
55:15 56:6 64:7
**sitting** 9:10 13:1
38:14
**situation** 23:25
**sold** 18:7 26:17
28:21 29:23 33:7
44:12 55:5 57:1
59:2 61:4,5
**solely** 19:11 55:25
**solutions** 68:20
**somewhat** 60:17
**sonya** 4:25 68:3,8
**sophisticated**
46:12 64:6
**sorry** 20:22 24:23
31:8 49:12 61:5
**sound** 33:2 35:4
60:24
**southern** 1:2
**special** 18:11
**specific** 11:1
22:21,23,24 23:2
23:11,22 27:24,25

33:8 34:4 54:3
**specifically** 6:4
14:3 19:16 20:5
21:24 23:4,14
26:11 27:2 31:22
42:18
**spelled** 9:6
**spend** 13:16 20:22
**spreadsheet** 25:22
**square** 5:13
**squarely** 26:9
**sr** 3:10,10
**stamco** 44:17
**standard** 51:10
**stands** 19:9
**start** 51:17
**started** 53:3
**stat** 49:13
**state** 48:8 50:11
**stated** 46:19 47:18
65:2,14
**statement** 34:17
**states** 1:1,12
54:25 56:21
**stating** 48:6 54:6
57:3 65:5
**status** 44:2,7
**statute** 44:12
**statutes** 58:14
**stay** 2:10,15,22
3:2,8 6:6 13:17
41:9,16 53:4
**steel** 45:14
**steen** 5:3 7:6
63:13
**steigler** 47:11
**step** 14:11,12
**stipulation** 2:17
**stood** 42:10
**stopen** 4:1
**store** 30:2
**story** 35:9

**street** 1:13 5:14
**strength** 27:6 28:1
**strike** 10:12
**stronger** 46:14
**structure** 18:11
47:20
**structured** 18:24
**styled** 41:8
**sub** 33:22
**subclasses** 52:1
**subject** 54:7 55:1
**submit** 10:24
15:19 33:15 65:5
65:21 66:11
**submits** 33:20
**submitted** 7:17,25
9:9 14:18 26:12
43:24
**subsections** 21:1
**subsequent** 52:12
52:22
**subset** 44:25
**subsidiaries** 19:4
53:14
**substantially**
41:12 53:11 61:4
61:5
**subsume** 36:5
58:6,20
**successor** 15:9
17:3,5,7,9,10
43:21 44:3
**sued** 30:23
**suggest** 18:13
27:8
**suggested** 10:24
**suggestion** 24:19
**suit** 57:17
**suite** 5:13 68:22
**summary** 28:17
45:13 46:4
**supp** 45:15

**supplemental**
3:12,18 4:2
**support** 3:1,17
4:1 15:25 51:17
63:4 64:13,17
**supports** 64:23
**supposed** 16:7
**sur** 15:3
**sure** 13:21 21:11
21:13 28:10 33:5
40:5,17 60:23
65:13
**surplusage** 46:8
**surrounding** 48:9
**susceptible** 46:2
46:23
**swear** 9:1
**switch** 51:19

**t**

**t** 68:1,1
**tab** 8:15
**take** 6:24 19:6
21:23 39:17,19
42:8 54:22 64:9
**taken** 16:10 51:12
**takes** 15:16 43:20
54:21
**talk** 23:6
**talking** 17:2
**talks** 28:20
**telephonically** 5:8
5:17,18
**tell** 9:1
**telling** 62:13
**tend** 64:25
**tense** 37:21
**tension** 24:1
**term** 20:10 21:4
22:25 23:1 46:7
54:3,5,12,12,13
54:14 55:10,19
57:7

**terms** 12:22,24
25:9 27:20 30:10
30:17,22 38:25
39:5 47:4,9 48:23
51:9 53:19 54:7
54:10 62:19
**test** 47:6
**testified** 16:4
26:14 27:11 63:14
**testimony** 6:18
7:17,23 8:4 9:11
9:17 13:12,21
14:2 16:6 25:12
26:18,22,24 27:14
27:17,22 28:2
63:2 64:3,13,17
**text** 17:21 18:3
19:15 25:9
**thank** 9:8 12:5
16:17 17:17 30:9
40:8 61:2 65:23
66:8,9,13,15,16
**thanks** 16:15
**that's** 7:14 8:3,6,7
8:13,20 9:6,23
11:1,3 14:17
15:21 16:3 17:15
17:17 19:1,15
26:13 28:16 29:14
29:15,17,20,21
30:23 31:4 32:3
32:15,16 34:13
35:1,24 37:22
38:18,19
**theories** 17:6,12
17:24
**theory** 17:4 46:9
**thereof** 43:10
**thereto** 53:15
**there's** 8:1 31:20
32:18 34:18
**they're** 38:5

**they've** 22:12
27:1 30:22 31:7,9
**thing** 8:9
**things** 38:20 42:4
54:2
**think** 14:17 17:8,9
17:15 21:14 22:21
22:21 23:8 24:9
25:10 28:11 29:13
29:21 30:5,10
32:4,6,7,18,25
33:15 34:7,10,23
36:5,9 37:21,25
38:1,3,4,18 39:9
40:3,10 41:15
60:12 65:24 66:4
**thinking** 34:11
**third** 3:13,19 4:3
46:11
**thought** 30:11
39:3 47:8
**three** 54:17 56:15
63:1
**time** 11:8,15 13:6
14:4 16:5 20:23
27:3 28:9 34:1
36:4 53:3
**timely** 54:9
**timing** 35:12,24
38:3
**title** 42:6
**today** 6:19 9:10
11:2 13:2,4 26:23
29:16 39:15 56:9
**tort** 44:15
**torture** 47:4
**total** 26:14
**touted** 62:1
**trade** 48:4 52:17
53:9
**traditionally** 32:9
**transaction** 12:20
16:23 18:1 61:3

**transcribed** 4:25
**transcript** 7:11
8:13 66:2,6,11
68:4
**transform** 2:18
3:6,9,10,10,15,18
3:21 4:2,5 5:4
6:12,14 7:7 10:9
11:12,13 12:21
13:8 15:9,12 16:1
16:25 17:5 19:6
20:11 23:20 24:12
24:23 25:1,3,14
25:19 26:1 28:11
28:16,23 29:1,18
29:23,25 30:11
31:12 32:6,8,25
33:21 35:6,6,9,9
35:13,14,25 36:4
36:10 38:15,19,19
39:4,6,9 40:25
41:10,11,21 42:22
43:11,15,19,19
44:6,22 48:18,19
48:25 53:11,13
54:1 55:12 56:1,8
57:1 58:7,24 59:9
59:16,18,18,21,25
61:21 63:13,21
64:8,23 65:2,4,7
**transform's** 40:2
41:22 65:17
**transform's** 15:1
15:3 16:23 20:18
23:18 28:17 29:25
33:1 36:7,8 38:5
58:19
**travelers** 42:17
**treat** 56:5
**treatment** 20:5,7
21:25 22:2 23:21
23:22

**treble** 29:6
**trial** 2:17
**tricky** 38:22
**triggered** 38:25
**true** 47:5 68:4
**truth** 9:2,2,2
**try** 33:4
**trying** 31:13
   40:23
**turn** 10:13,13
   12:12 14:12
**turning** 25:7
**turns** 34:14
**two** 5:13 19:23
   21:21 24:3 26:22
   34:6 36:16 37:23
   40:13,24 41:3
   46:12,24 52:1,1
   59:10 66:4
**type** 19:17 51:19
   64:18
**types** 22:18 25:15
**typical** 54:20
**typos** 66:3

**u**

**u** 9:5
**u.s.** 1:23 42:17
   43:4 60:15
**ultimately** 33:12
   50:7
**unambiguous**
   45:19,21,25 46:3
   48:23
**unambiguously**
   48:16
**unavailable** 7:16
**unaware** 16:4
**uncertainty** 47:5
**uncontroverted**
   25:11 26:6 27:22
**underlying** 27:20
**undermine** 27:5

**undermines** 26:24
**underscored**
   29:21
**underscores** 23:8
**understand** 9:15
   13:2 21:11,13
   28:11 32:19,21
   37:24 38:2 39:2
   39:22 40:23
**understandable**
   15:21
**understanding**
   17:21,23 26:11
   47:22
**understood** 45:12
   46:10 66:12
**unfair** 49:9 52:17
   53:9
**unilaterally** 51:9
**united** 1:1,12
**unjust** 22:13 29:9
   32:22 36:21 37:7
   49:15 52:6 58:11
**unknown** 1:25
   28:7 57:8
**unlawful** 51:7
**unmatured** 57:10
**upper** 54:11 57:6
**usage** 48:4
**use** 18:10 42:6
   45:24 59:5

**v**

**v** 10:17 42:17 43:4
   44:17 45:14 46:18
   47:11,25 60:15
**valid** 28:17
**valuation** 63:23
   64:14
**value** 63:5
**various** 12:19
**vehicle** 41:16
**veritext** 68:20

**versus** 22:22
**viable** 33:16
**video** 2:3
**videoconference**
   2:11
**view** 15:24 22:13
   33:1
**viewed** 17:5
**violate** 6:12 42:23
**violation** 49:11

**w**

**wait** 66:10
**waiting** 65:25
**walk** 16:19 18:2
**want** 8:15 9:22
   14:18,19 16:18
   20:21 21:11,12
   28:10 30:6 31:24
   39:21 54:21 58:2
   60:23 66:13
**wanted** 17:13
   33:9 40:16,18
   64:9
**wants** 40:6
**warranties** 26:17
   31:22 33:6 55:3,4
   55:9,14 56:6,11
   56:18,22,24 60:10
**warranty** 18:5,9
   28:15 29:3,4 32:2
   32:5,10 33:22
   45:4 49:21 56:3
   58:24 64:7
**washing** 29:17
   39:13
**wasn't** 33:14,19
**way** 18:17,23
   30:15 31:6,6,17
   33:5 57:6
**weight** 48:11
**went** 21:12 62:20
**weren't** 15:22
   32:12 37:18

**we're** 35:21,22
**we've** 8:11 25:21
**white** 1:14
**willingness** 16:23
**wish** 9:12 43:13
**witness** 6:18,21
   7:13,15,25 64:15
**word** 18:11 22:6
   59:5
**worded** 18:24
**words** 18:9 19:10
   22:6,7
**working** 30:3
**would've** 61:25
   63:15,16 64:8,9
**wouldn't** 35:17
**written** 31:7
**wrong** 32:7

**x**

**x** 1:4,10 67:1
**xxii** 49:10

**y**

**year** 24:10
**years** 18:1 32:12
   51:8
**york** 1:2 5:6
**you're** 14:12 22:5
   38:1,1
**you've** 32:25

**z**

**zero** 33:22
**zoom** 2:2,5 7:11
**zoomgov** 2:11

**'**

**'19** 36:14