MICHAEL S. AMATO
RUSKIN MOSCOU FALTISCHEK, P.C.
East Tower, 15th Floor
1425 RXR Plaza
Uniondale, NY 11556-1425
(516) 663-6600

*Attorneys for Colonial Properties, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re                                                                         Chapter 11

SEARS HOLDINGS CORPORATION, et al.,[1]           Case No. 18-23538 (rdd)

                           Debtors.                                    (Jointly Administered)
-----------------------------------------------------------X

## RESPONSE OF COLONIAL PROPERTIES, LLC
## TO DEBTORS' TWENTY-NINTH OMNIBUS REJECTION OF CLAIMS

Colonial Properties, LLC ("Landlord") through their undersigned counsel, responds to the Debtors' Twenty-Ninth Omnibus Objection to Claims (the "Objection") and respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); SHC Licensed Business LLC (3718); and SHC Promotions LLC (9626). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

946285

**PRELIMINARY STATEMENT**

1. Colonial is the landlord of property that is subject to a lease dated December 1, 1983, as amended and extended from time to time (the "Lease") for certain non-residential real property located at 118 Waller Mill Road, Williamsburg, VA 23185 (the "Premises").

2. The Debtors failed to pay the rent due under the Lease for the month of February 2019. The Debtors also are required to pay all other charges under the Lease including, but not limited to, real estate taxes, maintenance, repairs and water charges, and all of Landlord's out-of-pocket counsel fees and expenses.

3. Finally, the Debtors subleased portions of the Premises. Landlord is entitled to immediate payment of all amounts collected by the Debtors from the subtenants ("Subtenants") subsequent to the rejection of the Premises. The Landlord seeks immediate payment of the unpaid post-Petition Date rent, additional rent and rent collected by the Debtors from the Subtenants pursuant to §§ 363(e) and 365(d)(3) of the Bankruptcy Code.[2]

**PROCEDURE**

4. On October 15, 2018 (the "Petition Date"), the Debtors and certain of their affiliates (the "Debtors") filed respective voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

5. Pursuant to that certain *Order Approving the Rejection of Unexpired Leases of Non-Residential Real Property and Abandonment of Property in Connection Therewith* (the "Rejection Order") (Dkt. 2805), the Debtors rejected the Lease as of February 26, 2019.

6. On October 15, 2019, the Court entered its *Order Confirming the Modified Second Amended Joint Chapter 11 Plan* (Dkt. 5293).

---

[2] The leased retail space is located in a "shopping center" as that term is used in § 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

2

946285

## JURISDICTION

7. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested in the Motion are §§ 105(a), 363(e), 365(d)(3) and 503(b)(1) of the Bankruptcy Code.

## BACKGROUND

8. The Debtors leased from the Landlord the entire Premises located at 118 Waller Mill Road, Williamsburg, VA 23185. A copy of the Lease is annexed hereto as Exhibit "A". The Lease requires the Debtors to pay monthly, among other charges, Base Rent for the use and occupancy of the Premises. The annual Base Rent for the Premises for the post-Petition Date period was $562,500 (Lease, Exhibit A, ¶ 6(iii)).

9. Pursuant to the Rejection Order, the Debtors rejected the Lease as of February 26, 2019 (the "Rejection Date"). As such, the Debtors are liable for use and occupancy of the Premises for the period through and including February 2019. Subsequent to the Petition Date, the Debtors made one (1) payment to the Landlord in the amount of $93,750 for the months of December 2018 and January 2019. A copy of check number 34000560, dated December 1, 2018, in the amount of $93,750 is annexed hereto as Exhibit "B". The Base Rent for the month of February 2019 in the amount of $46,875 remains unpaid.

10. In addition to the rent, the Debtors were obligated to pay:

    (i) Late payments for any installment of basic rent not paid within five (5) days after its due date in the amount of one (1%) percent per annum (Exhibit A, ¶ 6(c));

    (ii) All taxes and assessments (Exhibit A, ¶ 8);

    (iii) Attorneys' fees and expenses for any and all expenses arising from any failure by the Debtors to perform any of the

946285

agreements, terms, covenants and conditions of the lease (Exhibit A, ¶ 10).

11. Also, the Debtors occupied the entire shopping center at the Premises. Upon information and belief, the Debtors sublet portions of the Premises to eight (8) Subtenants. Landlord has been unable to obtain any information relating to security deposits, as well as rent paid by the Subtenants to the Debtors for the period subsequent to the Rejection Date. Based upon the foregoing, Landlord is entitled to payment of any and all rents and additional rents paid by the Subtenants to the Debtors for the period subsequent to the Rejection Date, together with any and all security deposits maintained by the Debtors for those Premises. A copy of a schedule of subleases entered into by the Debtors at the Premises is annexed hereto as Exhibit "C".

12. Pursuant to the Lease, the Debtors were responsible for the maintenance and repairs of the Premises during the Lease term.

13. Paragraph 11 of the Lease entitled "Maintenance and Repair" provides, in pertinent part:

> Maintenance and Repair. Lessee will, at its expense, maintain the Premises in good repair and condition, except for ordinary wear and tear, and will make all structural and non-structural, interior and exterior, foreseen and unforeseen and ordinary and extraordinary changes, replacements and repairs which may be required to keep the Premises in such good repair and condition, all of which shall be of quality at least equivalent to the original. Lessor shall not be required to maintain, repair or rebuild the Improvements or to maintain the Premises, and Lessee waives the right to make repairs at the expense of Lessor pursuant to any law at any time in effect.

(Lease, Exhibit A, ¶ 11).

14. Paragraph 12(b) entitled "Excluded Personal Property" permits the Debtors to have personal property at the Premises, however, the Debtors are responsible to repair any and all damage to the Premises caused by removal of any of the Debtors' personal property. (Lease,

4

946285

Exhibit A, ¶ 12(b)).

15. Subsequent to surrender of the Premises by the Debtors, Colonial obtained a Property Condition Assessment Report prepared by Professional Service Industries, Inc., dated as of April 24, 2019 ("Property Condition Report"). A copy of the Property Condition Report is annexed hereto as Exhibit "D".

16. The Property Condition Report lists required repairs as follows:

| Summary of Schedule of Material Physical Deficiencies | | | |
|---|---|---|---|
| Category | Description | Needs | |
| | | Immediate | Short-Term |
| **SITE** | | | |
| | Seal coat and restripe parking lot | | X |
| | Remove former Kmart tenant's signage | | X |
| **STRUCTURAL FRAME AND BUILDING ENVELOPE** | | | |
| | Masonry crack repairs | X | |
| | Remove mezzanine storage level in Kmart | X | |
| | Replace wood windows and doors | | X |
| **ROOFING** | | | |
| | Replace low-slope roofs | | X |
| | Repair gutter systems along entry canopies | X | |
| **INTERIOR ELEMENTS** | | | |
| | Allowance for repair of interior finishes including mold remediation | X | |
| | Perform asbestos survey | X | |
| **ADA ACCESSIBILITY ASSESSMENT** | | | |
| | Convert parking spaces to meet "Van Accessible" guidelines | X | |
| | Install proper signage at existing accessible parking spaces | X | |

(Property Condition Report, Exhibit "D", p. 2).

17. Pursuant to the Property Condition Report, the Debtors are liable to Colonial for maintenance and repairs in the amount of $1,630,686.60.

18. As such, there is currently due and owing from the Debtors to the Landlord: (i) the sum of $46,875 for unpaid post-Petition Date Rent; (ii) maintenance and repairs in the amount up

946285

to $1,630,686.60; (iii) late fees; (iv) accrued and unpaid real estate taxes in the amount of $13,352.50; (v) reasonable legal fees and expenses; and (vi) all monies collected from the Subtenants subsequent to Rejection Date, together with any and all security deposits paid by the Subtenants.

19.     On April 10, 2019, Landlord filed its Proof of Claim in the amount of $2,434,343.50 as and for its lease rejection damages pursuant to 11 U.S.C. § 502(b)(6).

20.     On November 15, 2019, Landlord filed its "opt out" ballot for the Administrative Expense Claim Process.

21.     On June 21, 2019, Landlord filed its Amended Motion of Colonial Properties, LLC to Compel Payment of Post-Petition Date Rent and Related Lease Obligations pursuant to 11 U.S.C. § 105(a), 363(3e), 365(d)(3) and 503(b)(1)(A) (Dkt. 4319).

### RESPONSE TO OBJECTION

22.     The Debtors, through their attorneys, request that Landlord's Administrative Claim as listed in the Objection be reduced because: (a) the claim is a not entitled to administrative priority; and (b) the claim pertains to Transform Holdco's liability.

23.     $1,630,686.60 of the claim is the result of Debtors' failure to satisfy their contractual obligations to adequately repair and maintain the Premises. Debtors' failure to adequately maintain and repair the Premises extended throughout the entirety of the post-Petition Date period prior to the Rejection Date.

24.     It is well settled that the Debtors are responsible to the Landlord for all maintenance and repairs to the Premises that accrued at and/or arose post-Petition Date. This Court, in *In Re Ames* had to determine whether common area maintenance ("CAM") charges incurred by a debtor arose pre or post-petition. *In re Ames Dep't Stores, Inc.*, 150 B.R. 107, 108 (Bankr. S.D.N.Y.

6

946285

1993). The court held that "those portions of the relevant CAM charges and real estate taxes which were incurred pre-petition are deemed a pre-petition claim. The remainder of those charges incurred post-petition shall be paid by Debtor immediately or as a post-petition administrative claim." *Id.* at 109. *See also In re BH S & B Holdings LLC*, 426 B.R. 478, 484–85 (Bankr. S.D.N.Y. 2010) (cleanup costs would "only be entitled to administrative priority if they were incurred as a result of a breach during the postpetition, prerejection period.")

25. The *Ames* court also held that, because it was unable to precisely determine which of the charges in dispute arose post-petition, the "parties [were] ordered to stipulate to those amounts which, in accordance with this opinion, arose pre-petition and post-petition," and that "[i]f the parties [were] unable to reach agreement within the next thirty (30) days, then they shall so notify the court, at which time the matter will be set for an evidentiary hearing." *In Re Ames*, 150 B.R. at 109.

26. Some or all of the aforementioned repair and maintenance costs were, in fact, incurred during the post-Petition Date, pre-rejection period, and are thus entitled to status as administrative expense claims, and should not be reduced. *Id.* at 109.

27. Pursuant to this Court's holding in *Ames*, both parties should agree to, in good faith, stipulate to those charges which incurred during the post-Petition Date period, and these costs should be given status as administrative expense claims. *Id.* at 110. If no such agreement can be reached, then Landlord respectfully requests that this Court schedule an evidentiary hearing to hear and determine which of the repair and maintenance obligations were incurred post-Petition Date. *Id.*

28. Based upon the foregoing Landlord is entitled to an Allowed Administrative Claim in the amount of:

946285

(i) $46,875 as and for rent for the period February 2019;

(ii) post-Petition Date unpaid real estate taxes in the amount of $13,352.50;

(iii) maintenance and repairs in an amount to be agreed upon by the parties or determined by the Court in an amount up to $1,630,686.60;

(iv) attorneys' fees and expenses in an amount to be agreed upon by the parties or determined by the Court;

(v) rent collected from the Subtenants subsequent to the Rejection Date; and

(vi) unapplied security deposits for the Subtenants at the Premises.

WHEREFORE, it is respectfully requested that the Debtor's objection to Colonial Properties' Claim be overruled and its Motion denied to such extent, and that Colonial Properties have such other and further relief as the Court deems just and proper.

Dated: Uniondale, New York
       June 16, 2021

RUSKIN MOSCOU FALTISCHEK, P.C.
*Attorneys for Colonial Properties, LLC*

By: _____
Michael S. Amato
1425 RXR Plaza
East Tower, 15th Floor
Uniondale, NY 11556-1425
(516) 663-6600

946285

8