Objection Deadline: June 30, 2021 at 4:00 p.m. (prevailing Eastern Time)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re                                                       :
                                                            :    Chapter 11
SEARS HOLDINGS CORPORATION, *et al.*,                       :
                                                            :    Case No. 18-23538 (RDD)
                                                            :
Debtors.[1]                                                 :    (Jointly Administered)
                                                            :
------------------------------------------------------------x

## NOTICE OF DE MINIMIS ASSET SALE
## OF ILLINOIS RETAILERS' OCCUPATION TAX CREDITS

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), pursuant to that certain *Order Authorizing and Establishing Procedures for De Minimis Asset Sales and De Minimis Asset Abandonments* entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on November 21, 2018 (ECF No. 856) (the "**Sale and Abandonment Order**"), propose to sell or transfer certain assets of the Debtors (the "**Assets**") to Albertsons Companies, Inc., on behalf of Jewel-Osco, Inc. (the "**Purchaser**") pursuant to the *Tax Credit Memorandum Purchase Agreement* dated June 15, 2021 (the "**Purchase Agreement**"). This Notice is being provided in accordance with and sets forth the information required under the Sale and Abandonment Order.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 1700 Broadway, 19th Floor, New York, NY 10019.

<u>Description of the Assets</u>.  The Assets consist of Illinois Retailers' Occupation Tax credits in the amount of $949,348.87 (the "**Credit Amount**") that Sears Procurement Services, Inc. ("**Seller**") is entitled to receive from the Illinois Department of Revenue (the "**Department**").

<u>Relationship of the Purchaser to the Debtors</u>.  The Purchaser does not have any relationship with the Debtors.

<u>Liens and Encumbrances on the Assets</u>.  The Debtors are not aware of any liens and/or encumbrances on the Assets.  To the extent that any party has liens or encumbrances on the Assets, any such lien or encumbrance will attach to the proceeds of the sale described herein.

<u>Material Economic Terms and Conditions of the Proposed Sale</u>.  The Debtors shall execute and deliver to the Department a Form ST-6 Claim for Prior Overpayment/Request for Action on a Credit Memorandum requesting that the Assets be assigned to Buyer, as well as all other documents and instruments deemed necessary by Buyer and Seller in order to effectuate the consummation of the transactions contemplated in the Purchase Agreement annexed hereto as **Exhibit 1**.  The purchase price for the Assets is $911,374.92, due within five (5) days following the earlier of Purchaser's receipt of (i) a Credit Memorandum issued by the Department to Purchaser reflecting that the credits have been assigned to Purchaser in accordance with the Purchase Agreement, or (ii) confirmation by the Department that the credits assigned to Purchaser have been applied to Purchaser's established or unpaid Illinois Retailers' Occupation Tax.

<u>Commission, Fees, or other Similar Expenses</u>:  The Debtors shall pay to Ryan, LLC a sales commission in the amount of 1% of the Credit Amount upon the closing of the proposed sale of the Assets.

<u>Procedures to Object to the Proposed Sale</u>.  Any objection to the proposed sale (an "**Objection**") must:  (i) be in writing; (ii) set forth the name of the objecting party; (iii) provide the basis for the Objection and the specific grounds therefor; (iv) be filed electronically with the Bankruptcy Court; and (v) be served on Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn:  Ray C. Schrock, P.C., Esq.; Jacqueline Marcus, Esq.; Garrett A. Fail, Esq.; and Sunny Singh, Esq.), as counsel to the Debtors **on or before June 30, 2021 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

If no Objections are filed with the Bankruptcy Court and served by the Objection Deadline in accordance with the terms of the Sale and Abandonment Order described above, then the Debtors may proceed with the sale in accordance with the terms of the Sale and Abandonment Order.

The Debtors may consummate the transaction prior to expiration of the applicable Objection Deadline if the Debtors obtain written consent to the transaction from (i) the Creditors' Committee; and (ii) any known affected creditor(s), including counsel to any creditor asserting a lien, claim, or encumbrance on the relevant De Minimis Assets.

**If an Objection is timely received and cannot be resolved consensually, then the sale will not be consummated absent further order of the Court.**

Dated: June 21, 2021
      New York, New York

/s/ *Jacqueline Marcus*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
*Attorneys for Debtors
and Debtors in Possession*

## Exhibit 1

**Purchase Agreement**

**TAX CREDIT MEMORANDUM PURCHASE AGREEMENT**

This Tax Credit Memorandum Purchase Agreement (this "Agreement") is made and entered into, as of the ____ day of _____, 2021 ("Effective Date"), by and between Sears Procurement Services, Inc. ("Seller"), and Albertsons Companies, Inc., on behalf of Jewel-Osco, Inc. ("Buyer").

**RECITALS:**

**WHEREAS**, the Illinois Department of Revenue (the "Department") has verified that Seller, is entitled to receive Illinois Retailers' Occupation Tax credits in the amount of **$949,348.87** in tax (the "Credit"), which is subject to the cash refund limitation established by the Department, such that all amounts of the Credit have been verified as credited amounts due to Seller; and

**WHEREAS**, pursuant to 86 Ill. Adm. Code 130.1505(a), Seller is permitted, and, pursuant to the terms and conditions of this Agreement, hereby desires, to make an assignment of all of the Credit to Buyer; and

**WHEREAS**, Seller desires to transfer and assign to Buyer, and Buyer desires to receive from Seller such transfer and assignment of the Credit, all in accordance with the terms and conditions herein contained.

**NOW, THEREFORE**, premises considered, in exchange for the mutual promises, covenants, duties, and obligations herein contained, as well as other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Buyer and Seller hereby agree as follows:

1. Assignment. On the terms and subject to the conditions of this Agreement, Seller agrees to sell, convey, transfer, and assign to Buyer, and Buyer agrees to purchase and acquire from Seller, all of Seller's right, title, and interest in and to the Credit. In connection therewith and subject to the terms and conditions of this Agreement, Seller agrees to execute and deliver to the Department a Form ST-6 Claim for Prior Overpayment/Request for Action on a Credit Memorandum (the "Request for Action") requesting that the Credit be assigned to Buyer, as well as all other documents and instruments deemed necessary by Buyer and Seller in order to effectuate the consummation of the transactions herein contemplated.

2. Purchase Price. In consideration of Seller's delivery of the Request for Action, as well as all Seller's other duties, covenants, and obligations hereunder, Buyer shall deliver to Seller the amount of Purchase Price (so called herein) due from Buyer as specified below, within five (5) days following the earlier of Buyer's receipt of (i) a Credit memorandum issued by the Illinois Department of Revenue ("Department") to Buyer reflecting that the Credit has been assigned to Buyer in accordance with this Agreement, or (ii) confirmation by the Department that the Credit assigned to Buyer pursuant to this Agreement has been applied to Buyer's established or unpaid Illinois Retailers' Occupation Tax. The Purchase Price shall be delivered to Seller

Sears Procurement Services, Inc. and Albertsons Companies, Inc.
Tax Credit Memorandum Purchase Agreement
Page 2

or to a party designated by Seller, at the address specified on the signature page to this Agreement, by wire transfer to the account and routing number as may be specified below, or in such other manner as may be directed by Seller.

Purchase Price:  $0.96 for each $1.00 of the Credit, equaling $911,374.92 in total.

<u>Seller Account Information</u>
Account Number:
ABA/Bank Routing Number:
Financial Institution:
Bank Phone Number:
Name on Account:

3. <u>Further Assurances and Cooperation, Etc</u>.  Seller and Buyer hereby further agree as follows: (a) Seller shall, from time to time after the execution of this Agreement (the "Closing Date"), upon reasonable request of Buyer, execute, acknowledge and deliver, and cause to be executed, acknowledged or delivered, all such further transfers, conveyances or assignments as may be reasonably required to effectuate the consummation of the transactions herein contemplated; (b) Buyer and Seller each agree to promptly deliver to the other the original of any mail or other communication received by such party after the Closing Date pertaining to the Credit, which should properly be the property or responsibility of the other; (c) Buyer and Seller each further agree from and after the Closing Date to promptly deliver to the other any monies, checks or other instruments of payment to which said party is entitled hereunder, together with a reasonable accounting therefor; (d) after the Closing Date, Seller and Buyer will each grant to the other, and their agents, subject to Section 4, below, access during normal business hours to any books and records then in their possession (or, to the extent such books and records are in the possession of Transform Holdco LLC, Seller will make reasonable efforts to promptly obtain such books and records and grant the Buyer access to such books and records), to the extent that information contained in such books and records relates to the Credit and obligations acquired or retained by such party and such information is reasonably necessary and appropriate for tax, accounting, regulatory, or other related purposes; and (e) Seller shall seek approval of the transactions herein in accordance with that certain Order Authorizing and Establishing Procedures For De Minimis Asset Sales and De Minimis Asset Abandonments (ECF No. 856) entered by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on November 21, 2018 (the "De Miminis Assets Order).

4. <u>Confidentiality</u>.  Each party covenants and agrees that the information furnished by either party, in connection with the transactions contemplated hereunder, shall be

Sears Procurement Services, Inc. and Albertsons Companies, Inc.
Tax Credit Memorandum Purchase Agreement
Page 3

held in strict confidence by the receiving party and is being furnished to such party only upon the terms and conditions described herein.  The receiving party further acknowledges and warrants that except as otherwise required to comply with the De Minimis Assets Order, this information will be kept confidential and will not be disclosed to any other person or entity, except the Department (or any other applicable taxing and/or regulatory authority), in connection with the transactions herein contemplated, and the receiving party's accountant, lawyer, and financial consultant who may be furnished such information for the purpose of advising such party as to the purchase of the Credit and to such of its employees and agents as reasonably require such information for purposes of performance of such party's obligation hereunder.  The receiving party further accepts full responsibility for assuring full compliance with all provisions of this Agreement by any employee, agent, or third party to which such party discloses any such information and for any harm, loss, or other liability suffered by the disclosing party from any breach of this Agreement by the receiving party.

5. <u>Buyer's Representations and Warranties</u>.  Buyer represents and warrants unto Seller as follows: (a) Buyer has full power and authority to execute, deliver, and consummate this Agreement, and no provisions exist in any contract, document, or other instrument to which Buyer is a party or by which Buyer is bound that would be violated by consummation of the transactions contemplated by this Agreement; (b) this Agreement has been duly authorized, executed and delivered by Buyer, and this Agreement constitutes the legal, valid and binding obligation of Buyer, enforceable in accordance with its terms, except as may be limited by bankruptcy, reorganization, insolvency and similar laws of general application relating to or affecting the enforcement of rights of creditors; and (c) Buyer acknowledges that it has sufficient knowledge and expertise in business and financial matters to evaluate the merits and risks associated with the transactions contemplated by this Agreement, and Buyer has made its decision to enter into this Agreement and to consummate the transactions contemplated hereby without relying upon any express or implied representations from Seller except as set forth in this Agreement.

6. <u>Seller's Representations and Warranties</u>.  Seller represents and warrants unto Buyer as follows:  (a) Seller owns all right, title, and interest in and to the Credit being assigned to Buyer herein, with full right and power to sell and assign such Credit as Seller may choose; (b) Seller has neither previously claimed a refund nor taken a credit on a return for taxes that constitute the Credit and are the subject of the Assignment herein contemplated, and Seller hereby covenants and agrees that Seller will not claim a refund or a credit for any such amounts constituting the Credit made the subject of the Assignment in the future; (c) there is no preceding pending to establish any unpaid liability against Seller pursuant to notice given of the Department's proposal to assess an amount against Seller as described in 86 Ill.

Sears Procurement Services, Inc. and Albertsons Companies, Inc.
Tax Credit Memorandum Purchase Agreement
Page 4

Admin. Code 130.1505(a)(1)(B); (d) there is no established assessment or admitted liability or interest or penalty unpaid by Seller as described in 86 Ill. Admin. Code 130.1505(a)(1)(C); (e) no other person(s) or entities have any claim, right, title, interest, or lien in, to, or on the Credit; (f) subject to compliance with the De Minimis Assets Order, Seller has full power and authority to execute, deliver, and consummate this Agreement, and no provisions exist in any contract, document, or other instrument to which Seller is a party or by which Seller is bound that would be violated by consummation of the transactions contemplated by this Agreement; (g) subject to compliance with the De Minimis Assets Order, this Agreement has been duly authorized, executed and delivered by Seller, and this Agreement constitutes the legal, valid and binding obligation of Seller, enforceable in accordance with its terms, except as may be limited by bankruptcy, reorganization, insolvency and similar laws of general application relating to or affecting the enforcement of rights of creditors; and (h) Seller acknowledges that it has sufficient knowledge and expertise in business and financial matters to evaluate the merits and risks associated with the transactions contemplated by this Agreement, and Seller has made its decision to enter into this Agreement and to consummate the transactions contemplated hereby without relying upon any express or implied representations from Buyer except as set forth in this Agreement.

7. <u>Indemnification of Buyer and Seller</u>.  From and after the Closing Date, Seller covenants and agrees to indemnify, defend, and hold harmless Buyer, its subsidiaries, owners, officers, directors, managers, partners, employees, agents and assigns, from and against any and all claims, suits, losses, judgments, damages, and liabilities including any legal, and other reasonable expenses incurred in connection with and any amount paid in settlement of any claim, action, suit, or proceeding (a "Loss", or collectively, the "Losses"), if such Losses arise out of any misrepresentation, breach of warranty, or breach of covenant by Seller to Buyer in this Agreement.  Further, from and after the Closing Date, Buyer covenants and agrees to indemnify, defend and hold harmless Seller subsidiaries, owners, officers, directors, managers, partners, employees, agents and assigns from and against, any and all Losses, if such Losses arise out of any misrepresentation, breach of warranty, or breach of covenant by Buyer to Seller in this Agreement.  These rights to indemnification are (a) in addition to any other right available to either party, including the right to sue a party hereunder for a misrepresentation, breach of warranty, or breach of covenant under this Agreement, and (b) subject to the indemnified party (i) notifying the indemnifying party promptly after notice of a Loss, and (ii) providing reasonable cooperation to the indemnifying party in the defense or settlement of a Loss.  Neither party shall, without the prior written consent of the other party, enter into any settlement or compromise of any Loss which does not include a complete release of such Loss against the other party or which requires any payment or admission of liability by the other party.

Sears Procurement Services, Inc. and Albertsons Companies, Inc.
Tax Credit Memorandum Purchase Agreement
Page 5

8. <u>General Provisions</u>.  In addition to the foregoing, the parties hereby agree as follows:

   a. <u>Survival of Representations, Warranties, and Covenants</u>.  The representations, warranties, covenants, and agreements of the parties contained in this Agreement or contained in any writing delivered pursuant to this Agreement shall survive the Closing Date.

   b. <u>Notices</u>.  All notices that are required or that may be given pursuant to the terms of this Agreement shall be in writing and shall be sufficient in all respects if given in writing and delivered personally or by registered or certified mail, return receipt requested, postage prepaid, to the address of each party as specified in the signature page to this Agreement.

   c. <u>Assignment of Agreement</u>.  This Agreement shall be binding on and inure to the benefit of the parties to this Agreement and their respective successors and permitted assigns.  This Agreement may not be assigned by either party without the written consent of the other party and any attempt to make an assignment without such consent is void.

   d. <u>Governing Law; Choice of Forum</u>.  This Agreement shall be construed and governed by the laws of the State of New York (without regard to conflict of laws doctrine).  The parties agree that the exclusive place of jurisdiction for any action, suit or proceeding relating to this Agreement shall be in the courts of the Southern District of New York, and each such party hereby irrevocably and unconditionally agrees to submit to the jurisdiction of such courts for purposes of any such action, suit or proceeding.

   e. <u>Amendments; Waiver</u>.  This Agreement may be amended only in writing by the mutual consent of all of the parties, evidenced by all necessary and proper corporate authority.  No waiver of any provision of this Agreement shall arise from any action or inaction of any party, except an instrument in writing expressly waiving the provision executed by the party entitled to the benefit of the provision.

   f. <u>Entire Agreement</u>.  This Agreement, together with any documents and exhibits given or delivered pursuant to this Agreement, constitutes the entire agreement between the Buyer and Seller.  Neither Buyer nor Seller shall be bound by any communications between them on the subject matter of this Agreement unless the communication is (i) in writing, (ii) bears a date contemporaneous with or subsequent to the date of this Agreement, and (iii)

Sears Procurement Services, Inc. and Albertsons Companies, Inc.
Tax Credit Memorandum Purchase Agreement
Page 6

> is agreed to by all parties to this Agreement. On execution of this Agreement, all prior agreements or understandings between Buyer and Seller shall be null and void.
>
> g. <u>Third Party Beneficiaries</u>. The representations, warranties, covenants and agreements contained in this Agreement are for the sole benefit of the parties hereto, and their respective successors and assigns, and they shall not be construed as conferring, and are not intended to confer, any rights on any other person or entity.
>
> h. <u>Expenses</u>. Except as otherwise specifically provided in this Agreement, each party will pay its own expenses incident to this Agreement and the transactions contemplated hereby, including legal and accounting fees and disbursements.
>
> i. <u>Counterparts; Facsimiles</u>. This Agreement may be executed in one or more counterparts, and by the parties hereto in separate counterparts, each of which when executed shall be deemed to be an original, but all of which taken together shall constitute one and the same agreement. Execution may be accomplished by delivery of original or facsimile copies of the signature page hereto; provided, however, that if execution is accomplished by delivery of facsimile copies, original signature pages shall be exchanged by the parties promptly after the Closing Date.

[Remainder of Page Intentionally Omitted; Signature Pages Follow]

Sears Procurement Services, Inc. and Albertsons Companies, Inc.
Tax Credit Memorandum Purchase Agreement
Page 7

**IN WITNESS WHEREOF**, this Agreement is entered into effective as of the Effective Date first set forth above.

| SELLER: | BUYER: |
|---|---|
| By: _[signature]_ | By: _[signature]_ |
| Name: Mr. Mohsin Y. Meghji | Name: Carrie A Cook |
| Title: Chief Restructuring Officer | Title: VP TAX |
| Date: June 15, 2021 | Date: 6/11/2021 |

Address:

Sears Holding Corporation
on behalf of:
Sears Procurement Services, Inc.
C/O
M-III Partners LLC
1700 Broadway 19th Floor
New York, NY  10019

Address:

Albertsons Companies, Inc.
On Behalf Of: Jewel Osco, Inc.
250 E. Parkcenter Blvd.
Boise, Idaho 83706