

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 18-235328-rdd

4   Adv. Case No. 19-08286-rdd

5   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6   In the Matter of:

7

8   SEARS HOLDINGS CORPORATION

9

10          Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   SAYVILLE MENLO LLC

13                 Plaintiff,

14          v.

15   TRANSFORM HOLDCO LLC ET AL

16                 Defendants.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

18

19                 United States Bankruptcy Court

20                 300 Quarropas Street, Room 248

21                 White Plains, NY 10601

22

23                 December 10, 2020

24                 10:04 AM

25

1    B E F O R E :

2    HON ROBERT D. DRAIN

3    U.S. BANKRUPTCY JUDGE

4

5    ECRO:   JUSTIN WALKER

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1    HEARING re Notice of Agenda of Matters Scheduled for

2    Telephonic Hearing on December 10, 2020 at 10:00 a.m.

3

4    HEARING re Final Fee Application of Deloitte & Touche LLP

5    for Compensation for Services Rendered and Reimbursement of

6    Expenses Incurred as Independent Auditor and Advisor for the

7    period: 10/15/2018 to 10/31/201 9, fee:$2,476,936.00,

8    expenses: $47,154.66 (ECF #9016)

9

10   Adversary proceeding: 19-08286-rdd Sayville Menlo LLC v.

11   Transform Holdco LLC et al

12   HEARING re Motion to Approve / Defendants Motion to Enforce

13   Order Granting in Part and Denying in Part Defendants Motion

14   to Dismiss the Amended Complaint with Prejudice (ECF #25)

15

16   Adversary proceeding: 19-08286-rdd Sayville Menlo LLC v.

17   Transform Holdco LLC et al

18   HEARING re Opposition Brief (related document(s)25) filed by

19   Anthony J D'Artiglio on behalf of Sayville Menlo LLC. (ECF

20   #30)

21

22   Adversary proceeding: 19-08286-rdd Sayville Menlo LLC v.

23   Transform Holdco LLC et al

24   HEARING re Order signed on I /9/2020 Granting in Part and

25   Denying in Part Defendant's Motion to Dismiss the Amended

1   Adversary Proceeding (Related Doc# 14) (ECF #23)

2   Adversary proceeding: 19-08286-rdd Sayville Menlo LLC v.

3   Transform Holdco LLC et al

4   HEARING re So Ordered Stipulation and Scheduling Order

5   Signed on 11/12/2020 Concerning the Defendant's Motion to

6   Enforce (ECF #29)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

**Page 5**

```
 1    A P P E A R A N C E S :

 2

 3    ANSELL GRIMM & AARON

 4          Attorney for Sayville Menlo, LLC

 5          365 Rifle Camp Road

 6          Woodland Park, NJ 07424

 7

 8    BY:   JOSHUA BAUCHNER (TELEPHONICALLY)

 9

10    CLEARY GOTTLIEB STEEN & HAMILTON LLP

11          Attorneys for Transform Holdco

12          One Liberty Plaza

13          New York, NY 10006

14

15    BY:   LUKE BAREFOOT (TELEPHONICALLY)

16          SAMUEL LEVANDER (TELEPHONICALLY)

17

18    WEIL GOTSHAL & MANGES

19          Attorneys for Debtors

20          767 Fifth Avenue

21          New York, NY 10153

22

23    BY:   JACQUELINE MARCUS

24          JENNIFER CROZIER

25          JARED FRIEDMANN
```

1    DELOITTE AND TOUCHE

2         Independent Auditor and Accounting Advisor for Debtor

3         30 Rockefeller Plaza, 41st Floor

4         New York, NY 10112

5

6    BY:  RONALD YOUNG

7

8    ALSO APPEARING TELEPHONICALLY:

9    PAUL HARNER, Fee examiner

10   TOBAY DALUZ

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 7

1                P R O C E E D I N G S

2           THE COURT:  Good morning.  This is Judge Drain.

3    We're here on a Sears omnibus day.  This hearing is

4    completely telephonic.  You should identify yourself and

5    your client, therefore, the first time that you speak.  It's

6    also a good idea to do that thereafter, so that the court

7    reporter can put together your voice with your name.

8           There's one authorized recording of today's

9    hearings.  It's taken by Court Solutions.  If you want to

10   order a transcript of your matter, you should contact our

11   clerk's office to arrange for the production of one.  Court

12   Solutions provides a copy of the recording to clerk's office

13   on a daily basis.

14           Because these hearings are all on a telephonic

15   basis, you should keep yourself on mute unless you speak, at

16   which point, of course, you should unmute yourself.

17           So, with that introduction, I have the revised

18   agenda that came in this morning.  I'm happy to go down

19   that; although, I'm happy to take any sort of initial report

20   as well if the Debtors' counsel wants to make one.

21           MS. MARCUS:  Good morning, Your Honor.  Jacqueline

22   Marcus, Weil Gotshal & Manges on behalf of the Debtors.

23           Actually, we didn't prepare any formal remarks

24   today, so we were just going to go right into the agenda,

25   which, as you know, based on the amended agenda, is rather

1    short.  The first matter on the agenda is the final fee

2    application of Deloitte and Touche, and Mr. Roland Young

3    from Deloitte will address the Court regarding that matter.

4             THE COURT:  Okay.

5             MR. YOUNG:  Good morning, Your Honor, Roland

6    Young, in-house counsel for Deloitte, representing Deloitte

7    and Touche.  Deloitte and Touche was retained as the

8    independent auditor and accounting advisor in this case,

9    performed services from the inception of the case through

10   October 31st, 2019.  In the final fee application, Deloitte

11   and Touche requested fees of $2,476,936 and expenses of

12   $47,154.66.  We did have extensive interaction with the fee

13   examiner throughout the case, and in the final fee

14   application, we noted a reduction of $125,000 related to the

15   -- primarily the fees in the first interim fee application.

16             Subsequent to the filing of the final fee

17   application, we had further interaction with the fee

18   examiner and agreed to an additional reduction, which is not

19   reflected on the fee application itself of $10,000 and those

20   relate primarily to the fees which are relatively modest in

21   the second and third interim fee application.

22             We have -- I have circulated a proposed order to

23   the fee examiner and to Debtors' counsel and once

24   everybody's signed on that -- off on that, would propose to

25   submit it to chambers for Your Honor.  Please let me know if

Page 9

1    there's any questions you might have regarding the fees.

2              THE COURT:  Okay.  And I'm assuming that no other

3    developments then, the additional reduction that you just

4    mentioned.

5              MR. YOUNG:  That's correct.

6              THE COURT:  Okay.  Did anyone else have anything

7    to say on the Deloitte final fee application?

8              MR. HARNER:  Your Honor, very briefly.  Good

9    morning.  It's Paul Harner as the fee examiner.  Just to --

10   for the Court's information, first of all, Mr. Young's

11   summary is absolutely correct.  That does reflect agreement

12   with the fee examiner after review of the various interim

13   applications and the final application, and I would also

14   just note for the Court's information, that Mr. Young and

15   his colleagues were very quickly responsive, not only to our

16   formal preliminary reports, but to our various concerns, and

17   the matters were easily resolved, so we appreciate their

18   cooperation.  Thank you, Your Honor.

19             THE COURT:  Okay.  Very well.  All right.  I have

20   reviewed the final application and also during the course of

21   the case dealt with the interim applications.  The vast bulk

22   of Deloitte's fees are for audit services.  Given the role

23   of the fee examiner in this case and my review of the

24   application, I will grant the application, which is

25   unopposed, in the revised amount sought.  Any issues I

Page 10

1   could've had on most of the work are well subsumed within

2   the $125,000 agreed reduction.

3        I did have some question about sort of the dribs

4   and drabs of the last period, but I think those are dealt

5   with by the additional agreed reduction of $10,000.  So,

6   counsel for Deloitte can email chambers the proposed order

7   with Schedules A and B laying out the interim and final

8   awards in those schedules.  You don't need --

9        MR. YOUNG:  Thank you, Your Honor.

10       THE COURT:  -- settle that on any -- you don't

11  need to formally settle that on anyone, but you should copy

12  Mr. Harner and Debtors' counsel when you send it, when you

13  email to chambers.

14       MR. YOUNG:  Very good.  Will do.  Thank you, Your

15  Honor.

16       THE COURT:  Okay, thank you.

17       MR. HARNER:  With that, Your Honor, may Ms. Daluz

18  and I be excused, please?

19       THE COURT:  Yes.  That's fine.

20       MS. DALUZ:  Thank you, Your Honor.

21       MR. HARNER:  Thank you, Your Honor.

22       MR. YOUNG:  I'll plan to hang up as well.  Thank

23  you again.

24       THE COURT:  Okay.

25       MS. MARCUS:  Jacqueline Marcus again, Your Honor.

Page 11

1    The next matter and the last matter, actually, is a matter

2    involving an adversary proceeding between Sayville Menlo,

3    LLC and Transform Holdco.  That will be handled by Mr.

4    Barefoot from Cleary, and Your Honor, I'd request that a

5    number of the Weil attorneys who are on this phone be

6    permitted to leave the call, since it doesn't affect the

7    Debtors.

8             THE COURT:  Sure, that's fine.

9             MS. MARCUS:  Thank you.

10            MR. BAREFOOT:  Good morning, Your Honor.  Luke

11   Barefoot from Cleary, Gottlieb, Steen, and Hamilton, LLP on

12   behalf of Transform Operating Stores.

13            THE COURT:  Morning.

14            MR. BAUCHNER:  And Good morning, Your Honor.

15   Joshua Bauchner with Ansell, Grimm, and Aaron on behalf of

16   Sayville Menlo, LLC.

17            THE COURT:  Morning.

18            MR. BAREFOOT:  -- Barefoot from Cleary for

19   Transform.  I just wanted to note as a housekeeping matter

20   that literally about one moment ago, I just saw a

21   supplemental or corrected memorandum of law filed in this

22   matter by Sayville.  I haven't had an opportunity to review

23   that, and so won't really be prepared at this hearing to

24   comment on that or what has changed in that, and would

25   propose --

```
 1              THE COURT:  Well, with that, is that in addition
 2    to the objection?
 3              MR. BAREFOOT:  Your Honor, it appears to be a
 4    corrected version of the objection that was filed, but I
 5    can't readily tell what has changed in the pleading that was
 6    just filed.
 7              THE COURT:  Mr. Bauchner --
 8              MR. BAUCHNER:  Your Honor --
 9              THE COURT:  -- is it just a correction for typos
10    and things of the objection?
11              MR. BAUCHNER:  Exactly, Your Honor.  To be
12    precise, on Page 13, the first sentence of Section 3 was
13    omitted.  It's an introductory sentence.  It's just to make
14    sure the record is clear.  We apologize.  We just discovered
15    it this morning in preparation for the hearing, but it
16    doesn't materially change anything here.  We just wanted to
17    --
18              THE COURT:  Okay.
19              MR. BAUCHNER:  -- add that introductory sentence
20    so that the record was clear.  But no --
21              THE COURT:  Okay.  Very well.
22              MR. BAUCHNER:  -- other significant moment.  Thank
23    you.
24              THE COURT:  All right.
25              MR. BAREFOOT:  Your Honor, Luke Barefoot from
```

Page 13

1   Cleary for Transform again.  Subject to Your Honor's

2   preference, I'd propose to proceed with a brief introductory

3   argument and turn it over to Sayville.

4          THE COURT:  All right.  I mean, you both can

5   assume that I've reviewed Transform's motion, Sayville's

6   objection, and Transform's reply, as well as the underlying

7   order that's at issue with regard to this motion, which is

8   my order, dated January 9, 2020, the transcript of the

9   December hearing that led to that order, and Mr.

10  D'Artiglio's letter to Justice Jamieson which I think

11  prompted the filing of this motion, which is dated October

12  28, 2020.

13         I've reviewed the other exhibits, too, but I view

14  those as the primary documents relevant to today's motion.

15         MR. BAREFOOT:  Understood, Your Honor, and I will

16  try to be as brief as possible, with that in mind.

17         THE COURT:  Okay.

18         MR. BAREFOOT:  Your Honor, Luke Barefoot again

19  from Cleary.  We're here this morning on the adversary

20  proceeding captioned Sayville Menlo v. Transform Operating

21  Stores, LLC, Case No. 19-08286.

22         On Transform's motion to enforce the January 2020

23  order dismissing with prejudice claims against Transform

24  that arose prior to the assumption and assignment, based on

25  Transform -- Sayville's failure to file an objection in

1    response to the cure notice as was required by this Court's

2    bidding procedures order.

3            I just want to emphasize that the relief that

4    Transform is seeking requires no factual determinations by

5    this Court, and only requires the Court to confirm what we

6    believe are the plain terms of the dismissal order, the

7    bidding procedures order, and Section 365 to prevent

8    Sayville's efforts to evade and collaterally attack the

9    dismissal order.

10           As the record reflects, Your Honor, since the time

11   of the dismissal order, the parties have recommenced the

12   state court litigation in accordance with the Court's

13   directions, but Sayville has advanced there, pursuant to the

14   letter to judge -- Justice Jamieson that Your Honor

15   referenced, what we believe is an untenable reading of the

16   dismissal order, under which, the only claims that would be

17   barred are those that the landlord specifically and formally

18   noticed as defaults prior to assumption and assignment.

19           That reading is at odds with the terms of the

20   bidding procedures order, the record of the proceedings

21   before this Court on the motion to dismiss, and the purpose

22   and structure of 365.  Specifically, the landlord's

23   interpretation would allow this landlord and other landlords

24   to remain silent and lie in wait to assert claims against

25   buyers in contravention of the protections of bidding

Page 15

1    procedures orders.

2            Very briefly, Your Honor, at base, the landlord's

3    core contention on the interpretation of the dismissal order

4    is refuted simply by reading the Court's rationale,

5    articulated from the bench, as to why it was granting the

6    motion to dismiss as to unasserted, pre-assignment defaults.

7            If you go to the transcript of the December 13th,

8    2019 hearing at 161 Line 2, the Court reasoned:  "I believe

9    that the landlord is now time barred to assert a claim for

10   damages or for specific performance, since the specific

11   performance can be quantified for breach of contract for

12   anything that could be said to be owing, either as a fixed

13   or unliquidated amount, i.e., necessary (sound drops) make

14   the claimed repairs pre-assignment."

15           The Court went on to say, at Page 161, 14 to 18:

16   "I'm going to grant the motion to dismiss with respect to

17   the contract claim for those pre-assignment amounts that

18   could have been asserted, either as a liquidated amount or

19   an amount that could be described and on a liquidated

20   basis."

21           It's important to note that the Court's rationale

22   turned on amounts that could have been asserted, not amounts

23   that were asserted or that could have said to be owing, not

24   amounts that had been asserted.  Nowhere did the Court's

25   rationale examine or turn on the terms of the lease, the

Page 16

1   mechanism for noticing defaults under the lease, if any, or

2   whether a default was formally noticed.  We believe this is

3   consistent with the decisions we cited in our papers of

4   other Courts that specifically reject contract

5   counterparties' efforts to employ this kind of a lie-in-wait

6   tactic.

7          Turning to the landlord's assertion that the

8   dismissal order's text itself supports its interpretation,

9   they focus on the fact that the dismissal order refers to

10  defaults under the lease.  First, it's important, Your

11  Honor, that the term default there is lower case, undefined.

12         Moreover, the reference to defaults under the

13  lease serves only to specify the source of the obligations,

14  not to create a loophole where defaults that weren't noticed

15  prior to assignment somehow were outside of the bidding

16  procedures order.

17         If you look at Paragraph 4 of the dismissal order,

18  it puts to rest any interpretation that the landlord is now

19  asserting.  It specifically holds that to the extent that

20  any repairs are required under the lease, all pre-assumption

21  costs shall be the sole responsibility of the plaintiff,

22  notwithstanding anything in the least to the contrary.  So,

23  the terms of the order specifically refute any suggestion

24  that the terms and mechanisms of the lease, rather than the

25  mechanisms of the bidding procedures order, governed.

Page 17

```
 1              Finally, Your Honor, the fact that the order does

 2    not expressly reference Section 365 of the Code does nothing

 3    to change this.  This is particularly the case where the

 4    dismissal order is itself based on an interpretation and

 5    enforcement of the bidding procedures order, which, by its

 6    expressed terms, was entered pursuant to the authority under

 7    Section 365.

 8              Your Honor, I'll just respond very briefly to the

 9    other contentions that the landlord raises in its opposition

10    papers.  First, Your Honor, the landlord asserts that to

11    enter the order that Transform is request, would interfere

12    with the state court's jurisdiction, but this Court's

13    dismissal order expressly retains jurisdiction to interpret

14    and enforce its own order, and this is particularly

15    important, Your Honor, where the dismissal order itself is

16    based on an interpretation of this Court's own bidding

17    procedures order.

18              While Transform is understandably reluctant to

19    burden this Court's docket, it was necessitated to avoid

20    plaintiff's efforts to evade or undermine the dismissal

21    order through collateral attacks in the state court.

22              Second, Your Honor, to the extent that the

23    plaintiff argues that Transform is judicially estopped from

24    arguing that certain defaults, in fact, arose prepetition,

25    they ignore the standard for judicial estoppel as well as
```

Page 18

1    the procedural posture of the dismissal order, which arose

2    on a motion to dismiss.  Of course, on a motion to dismiss,

3    Transform was required to accept the allegations in the

4    complaint as true, and can't be estopped from contesting

5    those allegations later when the facts educed in discovery

6    suggest otherwise.

7          The Court also never adopted or took any position

8    on the allegations, given the procedural posture of a motion

9    to dismiss.  The Court's colloquy at the hearing also made

10   express that the allegations were not the limit.  If you

11   look again at the transcript of the dismissal hearing, Page

12   151, Line 16, the Court expressly said, "And that number

13   isn't the cap on what is the landlord's.  If Transform can

14   show that, you know, in addition, these other costs were

15   there, pre-assignment, then that would be the landlord's,

16   too, because they weren't asserted."

17         Third, Your Honor, plaintiff's allegations of what

18   they call fraud on the Court not only lack evidence, but

19   they're simply neither here nor there, in terms of the issue

20   that's before the Court, which is the terms of the dismissal

21   order.  They focus specifically on a deposition of a

22   representative witness of Transform.

23         First, many of the inconsistencies that they point

24   to are between positions of the Debtors and positions of

25   Transform, which are distinct entities, and Transform has

Page 19

1    been found not to be a successor of the Debtors.  And at

2    base, all testimony amounts to is simply some shreds of

3    evidence that would support plaintiff's claims that default

4    did exist, but those pieces of testimony do nothing to

5    change the basis for this Court's holding that because these

6    defaults were not timely asserted, they're forever barred.

7            If anything, this testimony actually supports

8    Transform's conclusion because it suggests that the landlord

9    could have ascertained and asserted these claims in response

10   to the cure notice.

11           And very briefly, Your Honor, the final suggestion

12   by Sayville that the Court use this opportunity to

13   reconsider or revisit aspects of the decision in the

14   dismissal order is procedurally unproper six ways to Sunday.

15   First, it is clear that the time for reconsideration or for

16   appeal of that order has long since passed.  The landlord

17   took no efforts to timely assert a motion for

18   reconsideration or an appeal, and it certainly can't seek

19   affirmative relief in terms of untimely revisiting the

20   dismissal order through an opposition to a motion to

21   enforce.

22           Unless Your Honor has any questions, I'll cede the

23   podium to Sayville and reserve reply.

24           THE COURT:  Okay.

25           MR. BAUCHNER:  Thank you, Your Honor.  For the

Page 20

1    record, Joshua Bauchner with Ansell, Grimm, and Aaron for

2    Sayville.  Your Honor, the entirety of the defendant's

3    argument requires it to talk out of both sides of its mouth,

4    and it does so repeatedly.

5            As an initial matter, on Page 5, Paragraph 6 of

6    the reply brief, they say "Sayville argues that the

7    dismissal order is unambiguous and Transform agrees."  Well,

8    if that's the case, then why is Transform submitting a

9    revised order that materially changes the terms of the

10   original order?  If it's --

11           THE COURT:  That's a good --

12           MR. BAUCHNER:  -- unambiguous --

13           THE COURT:  That's a good point.  I think the

14   order is unambiguous, and perhaps the only order I should

15   issue is one that clarifies that unless the letter is

16   withdrawn, I will hold your firm and your client in contempt

17   of my order.  Does that solve that problem?  Did I lose you?

18   I think I may have lost him.  Mr. Barefoot, are you on the

19   line?

20           MR. BAREFOOT:  I am, Your Honor.

21           THE COURT:  Mr. Bauchner, are you on the line?

22           MR. BAREFOOT:  Yes, Your Honor, he still appears

23   on the Court Solutions dashboard.  I'm not sure what the

24   issue is.

25           THE COURT:  I'm not sure what happened there.

1    He's circled in gray now, though, opposed to --

2              CLERK:  Judge, it's me, Arthur.  I think we lost

3    him.

4              THE COURT:  Okay.

5              CLERK:  Because I have tried to unmute him, even

6    though I see him on the dashboard, but nothing is happening,

7    and --

8              THE COURT:  Well, try to -- make sure he's

9    unmuted.

10             CLERK:  Yeah, I have, and his box is totally gray

11   from the others.

12             THE COURT:  Yeah.  Well, I guess we're going to

13   have to wait until he gets back on.

14             CLERK:  Yes.  I'm going to see if we could get him

15   on the line again.  That's --

16             THE COURT:  Okay, thank you.

17             CLERK:  No problem, Judge.

18             THE COURT:  (indiscernible).  Well, I see Mr.

19   Bauchner's colleague, Mr. D'Artiglio.

20             MR. BAUCHNER:  Your Honor, I'm sorry.  This is

21   Joshua Bauchner.  The Court Solutions is telling us that you

22   put us on hold on my line --

23             THE COURT:  Well --

24             MR. BAUCHNER:  -- so we just held in --

25             THE COURT:  All right.

Page 22

1           MR. BAUCHNER:  -- Mr. D'Artiglio's line.  the last

2      thing we heard you say was that you agree your order is

3      ambiguous and it may be the only order that you needed to

4      issue?

5           THE COURT:  No, no.  I said it's unambiguous.

6           MR. BAUCHNER:  Unambiguous.  Yes, Your Honor.  My

7      point is that then court -- the Court Solutions reported you

8      put us on hold.  We haven't heard anything that you said

9      since then.

10          THE COURT:  I didn't.  I apologize for --

11          MR. BAUCHNER:  No, absolutely.  That's okay.

12     That's why we dialed in on Mr. D'Artiglio's line.

13          THE COURT:  Fine.

14          MR. BAUCHNER:  So, I just -- we haven't heard

15     anything --

16          THE COURT:  The question was -- okay.  So, I said

17     very little after that.  Just to repeat, I said that I agree

18     that my January 2020 order is unambiguous and it would seem

19     to me that rather than clarifying it, perhaps the right

20     result here should simply be an order that states that

21     unless the landlord withdraws the letter to Justice Jamieson

22     from October 21 and its position taken in that letter, which

23     it never took before me and can't take under my order, I

24     will hold it in contempt and sanction it.

25          Does that deal with the adding to the order issue?

1          MR. BAUCHNER:  Well, I don't know that it does,

2     Your Honor, because I don't know that what we're doing

3     doesn't comply with Your Honor's --

4          THE COURT:  Oh, it clearly does not comply with my

5     order, sir, and I'll get to that.  But I'm just addressing

6     your concern that somehow by adding addition language to the

7     order I would be changing the order.  And I don't want to

8     change the order, because I believe it's crystal clear.  So

9     that's my proposed solution for it.  You and Mr. Barefoot

10    can think about that solution.  But you can continue with

11    the rest of your argument.

12         MR. BAUCHNER:  Well, thank you.  I appreciate

13    that, and again, I apologize.  We thought we were on hold

14    and dialed in as quickly as we could again.

15         THE COURT:   That's fine.

16         MR. BAUCHNER:  Thank you.  Your Honor, the

17    language of the order is clear, and we agree, and it says

18    defaults under the lease and leases capitalized.  We'd also

19    note that that language defaults under the lease came from

20    the original proposed order from the defendant in this

21    action.  This is their proposed language, which the Court

22    adopted.

23         Now what we have here, Your Honor, and what

24    generated this concern initially, is a situation where the

25    Debtor affirmatively denied in affidavits submitted under

Page 24

1    the pain and penalties of perjury in the state court that

2    there were any need for repairs to the property.  A

3    representative from the Debtor, who is now testifying on

4    behalf of Transform, thereafter testified that there were

5    innumerable problems with the property and that the

6    affidavit that's submitted was false and that those defects

7    and defaults were affirmatively concealed from plaintiffs in

8    this action.

9              So, by the defendant's argue --

10             THE COURT:  Which action are you referring to?

11   Are you referring to the pre-petition state court action?

12             MR. BAUCHNER:  I'm referring to the pre-petition

13   state court action, which an affidavit was submitted by a --

14             THE COURT:  Okay.

15             MR. BAUCHNER:  -- a representative --

16             THE COURT:  Fine.  So how is that on fraud on this

17   Court?

18             MR. BAUCHNER:  Because in --

19             THE COURT:  Did you reread the transcript of the

20   hearing from --

21             MR. BAUCHNER:  Yes, we did, Your Honor --

22             THE COURT:  -- December of 2019?

23             MR. BAUCHNER:  Many times.

24             THE COURT:  Did you specifically read the section

25   where I told you, contrary to your assertion, that a cure

Page 25

1  notice is the Debtors' position in the bankruptcy case as to

2  what defaults are owing, and it is not anything more than

3  that?  So, I fail to see any basis for any contention that

4  there has been a fraud on this Court or that the argument

5  you're making now has any weight or merit whatsoever with

6  regard to the issue before me, which is merely an

7  interpretation of my order which enforced another one of my

8  orders which set a bar date for responding to cure notices.

9  So, don't waste any more time on that argument.

10        MR. BAUCHNER:  Your Honor, that's fine.  If the

11  fraud upon the Court is on the state court, we're happy to

12  take it up with the state court.  We, however, think that it

13  is compelling and important that the Debtor concealed from

14  this Court, because -- and maybe there is a fraud upon this

15  Court, Your Honor, in that regard.

16        If the Debtor knew of all of these defaults and

17  filed a cure notice with this Court that reflected zero cure

18  costs, we would respectfully submit, Your Honor, that if

19  they knew of those defaults and submitted that cure cost as

20  zero, that would reflect a fraud upon the bankruptcy court.

21        THE COURT:  It's not a pleading before the Court.

22  It initiates a response, which your client was perfectly

23  capable of doing, as we discussed at length during the

24  December 2019 hearing in light of, among other things, its

25  filing a proof of claim with respect to such defaults in

1    excess of 206 -- $760,000.

2              MR. BAUCHNER:  Your Honor --

3              THE COURT:  Don't waste my time on this argument

4    any more.

5              MR. BAUCHNER:  That's fine, Your Honor.  That's

6    fine.  So then maybe I just need to be clear, Your Honor,

7    because -- and I raised this concern initially that there

8    would be some confusion with the state court.  Is it the

9    Court's intention that whether we knew of a default or not,

10   prior to the assignment and whether those defaults were

11   affirmatively concealed or not, they are barred under Your

12   Honor's order?

13             THE COURT:  That is not the issue before me.

14             MR. BAUCHNER:  Your Honor, that is exactly what

15   they're proposed order suggests is the issue before you.

16             THE COURT:  And I am saying that what I am

17   prepared to deal with is your firm's outrageous letter to

18   Justice Jamieson raising an argument that literally wasn't

19   even raised before me, and after the fact, and completely

20   contrary to the extensive colloquy you and I had at the

21   December hearing, raise --

22             MR. BAUCHNER:  Your Honor --

23             THE COURT:  -- argument that is completely

24   unfounded, and I am shocked that you would do this, although

25   perhaps not, given the other arguments you've made in this

1    pleading and your commencement of the adversary proceeding

2    in this Court originally.

3              MR. BAUCHNER:  Well, I'm sorry --

4              THE COURT:  This is not a Court of ready, shoot,

5    aim.  You have to actually act procedurally correctly, and

6    you have not done so, repeatedly.  So, I think you're lucky

7    not to be held in contempt today.

8              MR. BAUCHNER:  Well, I certainly --

9              THE COURT:  I don't think you are a bankruptcy

10   lawyer, so I'm cutting you some slack on that, but we spent

11   about 20 minutes going through the rationale, with you

12   asking me questions and me answering them as to the

13   allocation of monetary costs that arose pre-assumption and

14   post-assumption.

15             There was literally not one speck of an issue as

16   to whether those were costs "after the calling of a default"

17   or upon the exercise of remedies of a default under the

18   lease, but rather the discussion was entirely consistent

19   with the plain language of Section 365 of the Bankruptcy

20   Code and how it has been interpreted, including by the

21   District judge whose name sits on my courthouse, Judge

22   Brieant in the AboveNet, SBC Telecom case.

23             No Court -- and I'm assuming this includes Justice

24   Jamieson, who's quite an excellent judge -- appreciates

25   someone gaming one Court against another, and that's exactly

Page 28

1    what you're doing here.

2              MR. BAUCHNER:  Your Honor, I'm sorry.  That is

3    certainly not our intent and I certainly apologize to the

4    Court if it sees it that way.

5              THE COURT:  Well, it is now crystal clear, so

6    unless you withdraw this contention, I will hold you in

7    contempt with regard to this letter.

8              MR. BAUCHNER:  Then, of course, Your Honor, we

9    will withdraw the letter.  The issue arose in the state

10   court action, and that's what necessitated the letter.  The

11   issue --

12             THE COURT:  It arose because you raised it.

13             MR. BAUCHNER:  No, Your Honor, it arose because

14   the same representative from the Debtor testifying on behalf

15   of Transform claims that previously there were no problems

16   with the property and then testified that they knew about

17   problems with the property the entire time.

18             THE COURT:  Do you understand the concept of a bar

19   date?  I assume you do, because that was the basis for my

20   January 9 order.

21             MR. BAUCHNER:  We certainly do, Your Honor.

22             THE COURT:  Your client was barred because it did

23   not assert a cure claim by the deadline set by the Court.

24   So, whether or not it lied before, the Debtor has the

25   benefit of that order, unless you seek some other form of

Page 29

1    relief, which you have not done.  It's that simple.  It

2    doesn't --

3                MR. BAUCHNER:  That --

4                THE COURT:  -- matter that there was a default.

5    You didn't assert it on a timely basis.

6                MR. BAUCHNER:  We understand that --

7                THE COURT:  What a bar date is, that's what the

8    whole hearing was about on December 13th, 2019, and that's

9    what my January 9th, 2020 order states.

10               MR. BAUCHNER:  We understand that, Your Honor --

11               THE COURT:  But to say that there was a default or

12   that there was a lie about whether there's default or not,

13   doesn't matter.  Your client was aware of the claim.  It

14   asserted a claim in the bankruptcy case.  We went through it

15   at great length at the December hearing.  My order is clear.

16   You cannot pursue a claim for pre-assumption costs.

17               MR. BAUCHNER:  We understand that, Your Honor.

18   We're not seeking to.  That's -- and maybe I'm not being

19   clear, and I apologize.

20               THE COURT:  Well, I don't --

21               MR. BAUCHNER:  Your Honor --

22               THE COURT:  At the same time, you're raising the

23   point that the Debtor contended there were no pre-assumption

24   costs, and now contends there were and it doesn't matter.

25   So, don't raise the point.  It doesn't matter because you're

1    time barred.

2              MR. BAUCHNER:  Your Honor, it's -- the issue is,

3    the issue that generated this, if I may, specifically

4    related to the septic tank, which Your Honor stated at Page

5    162, Line 13 of the transcript, was a post-assignment issue

6    and is "different default in terms of timing because it is

7    not part of the cure dispute and is a post-assignment

8    dispute."  That was a finding of this Court.  You said --

9              THE COURT:  Your letter of October 28th, makes no

10   distinction on those grounds.  It contends to the contrary

11   that the only defaults barred by my order, the bidding

12   procedures order, and -- frankly, doesn't even reference --

13   yeah, it does reference the January 9 order as well -- are

14   defaults that were actually given notice by the landlord,

15   and that's just wrong.  So --

16             MR. BAUCHNER:  And Your Honor --

17             THE COURT:  -- as far as the septic tank is

18   concerned, that issue was not a factual finding by me and it

19   is not an issue of judicial estoppel because contrary to the

20   statement in your pleading, Transform did not win on that

21   issue.  In fact, they lost on that issue because I declined

22   to take jurisdiction over it.  Now, it is possible, I

23   suppose, that Transform may be judicially estopped, i.e., by

24   making a judicial admission, although you've not argued

25   that, and it's quite possible they won't be, given the

Page 31

1    context of the matter before me, which was not on the facts.

2           So contrary to what you just said, there was no

3    factual findings by me.  It was based on a motion to dismiss

4    a complaint, and we all know that with a complaint, one

5    takes as true the averments in the complaint unless they're

6    contradicted facially by documents incorporated into the

7    complaint or otherwise necessary to the complaint.

8           So, you may have some argument there on a judicial

9    admission or, you know, on those grounds.  I don't know, but

10   that's not before me, either.  What is before me is your

11   attempt to argue to Justice Jamieson, withstanding my order,

12   that somehow only a noticed, as per the lease, default is

13   subject to the bar date and the bidding procedures order and

14   my January 9th, 2020 order, and that is completely and

15   utterly outrageous and completely contradicted by the entire

16   context of Section 365 -- which I'll get into in a lengthier

17   ruling in a minute -- the transcript of the hearing, and the

18   order itself.

19           MR. BAUCHNER:  Your Honor, I --

20           THE COURT:  I don't think I could've been any

21   clearer that the issue --

22           MR. BAUCHNER:  Your Honor --

23           THE COURT:  -- of allocating cost from what is

24   pre-assumption and from what is post-assumption, and if the

25   costs had arisen pre-assumption, they are barred by the

Page 32

1   failure to assert them in response to the cure notice.  If

2   they truly arise post assumption, then they're not barred

3   and Transform has to perform.

4          MR. BAUCHNER:  We understand that, Your Honor.

5   The problem is, in the state court proceeding, Transform is

6   arguing to the contrary and that's what engendered the pre-

7   motion request letter in the first instance.

8          In the state court proceeding, Transform is

9   arguing something entirely different than what Your Honor is

10  saying, and that's why they suddenly race back here, and I -

11  - respectfully, Your Honor, you don't have the benefit of

12  what's been happening in the state court proceeding, and I

13  appreciate that, but they are arguing that the definition of

14  pre-assumption costs includes any default, known or unknown,

15  to the landlord at any point in time, which we respectfully

16  submit, Your Honor, exceeds the bounds of your order and is

17  not what was intended by your order.

18         THE COURT:  That is not the subject of your letter

19  to Justice Jamieson and it's not before me today.

20         MR. BAUCHNER:  I understand that.  I'm simply

21  giving the Court some color as to what's happening in the

22  state court proceeding, and we apologize if our letter to

23  the state court was not clear in that regard, but that --

24         THE COURT:  It wasn't clear at all in that regard.

25         MR. BAUCHNER:  Fair enough, Your Honor.

1             THE COURT:  It was completely point.

2             MR. BAUCHNER:  Fair enough, Your Honor.

3             MR. BAREFOOT:  Your Honor, if I could -- if I

4     could briefly respond?  This is Luke Barefoot from Cleary.

5             THE COURT:  Well --

6             MR. BAUCHNER:  (indiscernible).

7             THE COURT:  -- Mr. Bauchner finish the rest of his

8     presentation.

9             MR. BAREFOOT:  I apologize.

10             MR. BAUCHNER:  Thank you, Your Honor.  So fine,

11     Your Honor.  We submit, the letter wasn't clear.  We

12     apologize.  We will withdraw it in accord with Your Honor's

13     directive.  That's not a problem.  The problem is, and this

14     was very directly addressed before Your Honor that we were

15     afraid that this Court's order would cause confusion in the

16     state court, which is now has.

17             And we appreciate Your Honor's perspective that

18     the order is unambiguous, and we agree.  But the issues that

19     have been presented to the state court by Transform, we

20     believe undermine precisely what this Court argued, which

21     was that these costs were a matter of allocation, which was

22     the Court's term.

23             And what they are now arguing in state court was

24     that every defect with the property, known or unknown to the

25     landlord, which is why we raised the notice provision, is a

Page 34

1    pre-assumption default and that everything was barred by

2    this Court's order, which we think ignores the plain terms

3    of this Court's order and ignores the bright line

4    distinction between the defined term pre-assumption costs

5    and post-assumption default.

6              They are now arguing in state court that

7    everything wrong with the property was a pre-assumption cost

8    barred by Your Honor's order.  They are now arguing that

9    everything was previously known -- and I know you don't want

10   to hear that it was concealed -- but that everything was

11   previously known as early as 2017 and '18, that everything

12   is a pre-assumption cost -- this is what their witness

13   testified to, Your Honor -- and that everything is just thus

14   barred.

15             And as Your Honor held, this was a matter of

16   allocation for the state court.  As Your Honor further held,

17   the ongoing deterioration of certain items was on -- was a

18   burden for Transform to identify, because anything that

19   arose, deterioration -- any deterioration that arose, excuse

20   me, after the assignment remains the responsibility of

21   Transform and that it was simply an allocation issue for the

22   Court to make those determinations.  For the state court,

23   excuse me, to make those determinations.

24             So again, we apologize if the language in the

25   letter wasn't clear in that regard, but that's what's

1    happening before the state court.  They are taking Your

2    Honor's order.  They're alleging everything wrong with the

3    property was known years ago, is a pre-assumption cost, and

4    everything is thus barred.  And was known to the Debtor,

5    Your Honor, notwithstanding that the Debtor at that time

6    submitted an affidavit to the Court to the contrary.

7            So, it's not just that the defendant is alleging

8    what the defendant knew.  The defendant is alleging what the

9    Debtor knew.  And so, Your Honor, I --

10           THE COURT:  It doesn't matter what the Debtor knew

11   as far as the bar date is concerned.  It doesn't matter.

12           MR. BAUCHNER:  We understand that for your

13   purposes, Your Honor.  We believe it matters in --

14           THE COURT:  It -- and it --

15           MR. BAUCHNER:  -- the state court.

16           THE COURT:  And it's my bar date.  It's my bar

17   date.

18           MR. BAUCHNER:  I understand --

19           THE COURT:  It doesn't matter.

20           MR. BAUCHNER:  Your Honor, I understand that it

21   matters in the state court proceeding, as you indicated

22   before because if the Debtor submitted an affidavit in the

23   state court proceeding claiming everything was fine with the

24   property and a representative -- the same representative

25   who's employed by the Debtor now testifying on behalf of

Page 36

1    Transform is testifying that the Debtor knew everything was

2    wrong, we think that has an impact on the state court

3    proceeding.

4              THE COURT:  It doesn't.

5              MR. BAUCHNER:  That's what this is about.

6              THE COURT:  As far as the claim being barred, it

7    doesn't.

8              MR. BAUCHNER:  We understand that, Your Honor.

9              THE COURT:  All that matters --

10             MR. BAUCHNER:  We understand it doesn't.

11             THE COURT:  -- is what your client knew or could

12   have known in order to file a cure claim.  That is all that

13   matters.

14             MR. BAUCHNER:  I agree with you, Your Honor.  What

15   we knew --

16             THE COURT:  What the Debtor knew or didn't know is

17   a complete red herring and it's barred.  It shouldn't be an

18   issue.  Your -- that's res judicata, based on my order.

19             MR. BAUCHNER:  Your Honor, I understand that.  We

20   understand that, Your Honor.

21             THE COURT:  So, stop raising it.

22             MR. BAUCHNER:  Well, it's barred by your order

23   here, but it's not -- as you pointed out, it's --

24             THE COURT:  It's res -- do you understand the

25   concept of res judicate?  It is barred, period.

1          MR. BAUCHNER:  Your Honor, we do understand the

2     concept.

3          THE COURT:  Well, then --

4          MR. BAUCHNER:  That's not --

5          THE COURT:  -- stop saying it's not.  It's a final

6     order.

7          MR. BAUCHNER:  Your Honor, I'm not --

8          THE COURT:  Barred --

9          MR. BAUCHNER:  Your Honor --

10          THE COURT:  -- from saying that somehow, because

11     the Debtor knew otherwise, the bar doesn't apply.  That's

12     just simply wrong.  What is --

13          MR. BAUCHNER:  Your Honor --

14          THE COURT:  -- potentially relevant and for the

15     state court to decide is whether your client knew or should

16     have known in a way to make a claim.  And frankly, it did

17     file a claim and there may or may not be evidence as to

18     specific other amounts which is an issue of fact for the

19     state court to decide, whether it knew or should have known

20     to make the claim.

21          MR. BAUCHNER:  We completely agree, Your Honor.

22     That's the point.  That's the exact opposite of what

23     Transform is arguing --

24          THE COURT:  Well, I --

25          MR. BAUCHNER:  -- in state court.

1           THE COURT:  You know what, I don't know what

2    they're arguing.  You haven't raised it until this,

3    literally, oral argument.  It's not the subject of your

4    letter that precipitated this motion before me, and frankly,

5    I don't have much confidence that you're telling me the

6    truth.  So, I don't know --

7           MR. BAUCHNER:  Your Honor --

8           THE COURT:  -- what the extra issue is other than

9    this septic tank issue, which we've already addressed.  And

10   the facts are there for the court to decide as to whether --

11   the state court, as to whether the landlord knew or should

12   have known of the existence of that problem and the need to

13   cure it, which certainly could be done with money, and

14   therefore it would fall within my order if it knew or

15   should've known about it before the cure date and -- or

16   didn't and couldn't have known about it before the cure

17   date.  It's a simple issue.

18           I don't know what other issues you're talking

19   about and I don't need to get into -- what I do need to make

20   clear to you, and I don't expect there to have to be another

21   motion on this, is that the bar order is binding.  And so,

22   what the Debtor knew or didn't know, doesn't matter.

23           MR. BAUCHNER:  Your Honor, what repairs were made

24   or were not made are relevant to the allocation in state

25   court.  That's the point.  And --

Page 39

 1                 THE COURT:  No, that's a new point you're raising,

 2      and it's enough.  Stop raising them.

 3                 MR. BAUCHNER:  Okay, Your Honor.  I don't think

 4      they're new points.  I think it's the exact argument we've

 5      made throughout the brief, and I don't think anything that

 6      I'm saying is new.  Everything we're raising with the Court

 7      is in the brief, and the concern here, again -- and this was

 8      raised during oral argument during our colloquy, Your Honor,

 9      was that this was going to cause confusion in state court,

10      and it now has, because they're arguing that everything is a

11      pre-assumption cost and that there is no allegation,

12      regardless of whether the Debtor knew or should have known

13      of it, and that --

14                 THE COURT:  I don't have any example of what

15      they're arguing.  I don't have a brief.  I don't have any

16      other pleading, so what you're telling me is just, as far as

17      I'm concerned, irrelevant and hot air.

18                 MR. BAUCHNER:  Well, I'm sorry, Your Honor.  We've

19      had a number of court conferences with the state court where

20      this has come up --

21                 THE COURT:  That's fine.

22                 MR. BAUCHNER:  Unfortunately, they --

23                 THE COURT:  But you're asking me to weigh in on

24      something that I have no factual basis to address.  So --

25                 MR. BAUCHNER:  We're not asking you to weigh in on

Page 40

1    -- we're not asking you to weigh in on anything, Your Honor.

2    We didn't make the application to this Court.  We're asking

3    --

4              THE COURT:  You're just -- you just said the real

5    issue here, i.e., before me, is that Transform is

6    misinterpreting my order in some way that you've not really

7    specified specifically except with regard to the septic tank

8    and I've addressed that point.  So, there's nothing --

9              MR. BAUCHNER:  Your Honor --

10             THE COURT:  -- more to discuss.

11             MR. BAUCHNER:  Your Honor, they're also

12   misrepresenting -- they're also raising issues concerning

13   the fire suppression system that they claim was a pre-

14   assumption cost.  I'm happy to go through the litany of

15   these things with you, Your Honor.

16             THE COURT:  No, you don't need to do it.  It is

17   really --

18             MR. BAUCHNER:  I --

19             THE COURT:  -- simple.  Point one, what the Debtor

20   knew or didn't know is irrelevant to the fact that the

21   bidding procedures order and the assumption order and my

22   January 9 order bar your client from asserting claims that

23   it knew or could have known by the cure claim asserting

24   deadline.  It's irrelevant.

25             Point two, if there is some claim that your client

Page 41

1    didn't know or couldn't have known with reasonable inquiry,

2    then I would assume, as Justice Jamieson would conclude,

3    that that is something that couldn't be barred because you

4    couldn't have known about it.

5          There's really no more beyond that, other than the

6    fact that, really separate and apart from that argument,

7    which to me, frankly, seems to be a way to deflect the

8    argument that actually is before me, this letter was sent

9    which asserts a completely different basis for covering or

10   trying to get your client out from under its failure to

11   assert a timely claims, which is the completely unfounded

12   assertion and really outrageous assertion that your client

13   would've had to have called a default under the lease for

14   that default to be barred by my order.

15          And that's just flat out wrong.

16          MR. BAUCHNER:  Your Honor, the two points you just

17   made are all we need, and thank you for that, because with

18   that, we could bring it to the state court and clarify the

19   entire issue, because -- and again, I appreciate Your

20   Honor's frustration with this, but what's happening in state

21   court is, I think, manifest and significant and I think

22   we've -- you've addressed it perfectly for us with what you

23   just said.  We can give that to Judge Jamieson and she can

24   proceed accordingly.  But it does run contrary to what

25   they've been arguing, and that's the concern.  We didn't

1    come before the Court for this relieve, Your Honor.  They

2    did.  We were simply --

3              THE COURT:  I can see why they did, given this

4    letter.

5              MR. BAUCHNER:  Well, Your Honor, we were arguing

6    in state court that pre-assumption costs were, as you said,

7    those which were known or should have been known to us, and

8    they've made the contrary argument that everything is a pre-

9    assumption cost, regardless of whether it was known or

10   could've been known, and that's --

11             THE COURT:  And I want to be clear, because I do

12   not want this misinterpreted, either, although there's no

13   reason it should be, because the transcript is crystal clear

14   on this.  I gave you about four examples from the December

15   transcript.  My order does not apply to just literally

16   liquidated costs.

17             It applies to bar pre-assumption costs that could

18   be described and ultimately liquidated, so that, for

19   example, if you would've asserted or you should've asserted

20   or the client should've asserted a cure cost of X plus any

21   additional amounts ultimately determined to have to be

22   applied to fix whatever the condition was, that was covered

23   by your proof of claim, for example.

24             So, it's not just the liquidated amount and I was

25   crystal clear that what was barred includes that

1    (indiscernible) amount as fixed by the Court that is

2    attributable to or allocatable to the pre-petition -- the

3    pre-assumption period.

4              MR. BAUCHNER:  We understand that, Your Honor.

5              THE COURT:  So, I don't expect there to be any

6    argument to the contrary of that, either.  I don't know

7    whether you would, but just to be safe, I'm reaffirming that

8    point, which I made at length in the transcript of the

9    December hearing.

10              MR. BAUCHNER:  We understand that, Your Honor.

11    Again, the issue is the known -- just like you said, Your

12    Honor.  Knew or should have known on the part of the

13    landlord.

14              THE COURT:  Okay.  That's fine.

15              MR. BAUCHNER:  And they're asserting something

16    otherwise in state court, which again --

17              THE COURT:  All right.

18              MR. BAUCHNER:  -- was the concern, and --

19              THE COURT:  All right.

20              MR. BAUCHNER:  -- we want to address --

21              THE COURT:  I will be clear.  If there's a

22    position taken contrary to that by your client in state

23    court, I will hold it in contempt.  I think there's

24    literally no excuse at this point.

25              MR. BAUCHNER:  Your Honor, and I would just hope

1    that if the same were true, that if Transform takes a

2    position contrary to that, they would be an issue as well,

3    because that's the concern here.

4                THE COURT:  Okay.

5                MR. BAUCHNER:  So, Your Honor, with that, I don't

6    know that you want to hear more from me on this, frankly.

7    So, we understand Your Honor's ruling and we're -- it is

8    exactly what we've been arguing in state court and we're

9    prepared to continue to argue that in state court, that it's

10   an issue of allocation.  It's an issue of what the landlord

11   should've known or could've known, and nothing more.  And

12   the -- we'll also raise the other issues and concerns with

13   respect to the affidavit that was submitted and the estoppel

14   issues in state court, because we completely agree, Your

15   Honor directed the state court to be the fact finder --

16               THE COURT:  No.

17               MR. BAUCHNER: -- with respect to --

18               THE COURT:  The affidavit has not relevance,

19   unless it actually misled your client.

20               MR. BAUCHNER:  Well, it --

21               THE COURT:  What the Debtor knew has no relevance,

22   and you count it as a fraud on the Court, and that's not

23   applicable because your client is barred regardless of what

24   the Debtor knew.

25               MR. BAUCHNER:  Your Honor, it did mislead us

Page 45

1    because their affidavit specifically said that --

2              THE COURT:  That's a separate --

3              MR. BAUCHNER:  -- conditions were --

4              THE COURT:  -- issue, but you cannot say that

5    somehow the Debtor committed a fraud on the Court that is

6    relevant to the bar date, other than the issue of what your

7    client knew.

8              MR. BAUCHNER:  We understand that, Your Honor.

9              THE COURT:  Or should have known.

10             MR. BAUCHNER:  Again --

11             THE COURT:  Well, again, that was not clear at all

12   in your pleadings, which simply referred to the fact that

13   the Debtor acted improperly, which --

14             MR. BAUCHNER:  Well, Your Honor, we believe that

15   an affidavit submitted to the state court under the pains

16   and penalties of perjury that contains misinformation is for

17   the state court to make a determination as to the

18   significance of that affidavit.  That's all I'm saying, with

19   respect to the affidavit, and if state court --

20             THE COURT:  It's not relevant to the bar.

21             MR. BAUCHNER:  We understand, Your Honor.

22             THE COURT:  The bar date.

23             MR. BAUCHNER:  We understand that.  It's relevant

24   to the allocation issue.  If they're claiming --

25             THE COURT:  It's relevant to what your client knew

1    or should have known.

2            MR. BAUCHNER:  Exactly right.  Exactly right, Your

3    Honor, and if they're telling us --

4            THE COURT:  It's not an issue of fraud on the

5    Court or sanctions that I should be awarding or anything

6    like that.

7            MR. BAUCHNER:  Completely agree, Your Honor --

8            THE COURT:  which is what you argued in your

9    objection, that somehow the Debtors' conduct should relieve

10   your client of the bar date --

11           MR. BAUCHNER:  Your Honor --

12           THE COURT:  -- the order, and that's just not --

13   it's not appropriate.

14           MR. BAUCHNER:  Your Honor, we're arguing that the

15   Debtors' conduct in the state court goes to the allocation

16   issue in state --

17           THE COURT:  Well, it doesn't.  It doesn't go to

18   the allocation issue at all.  It may go to the issue of what

19   your client knew or should have known, period, but nothing

20   else.

21           MR. BAUCHNER:  Agreed, Your Honor, and then what

22   we knew or should have known goes to the allocation issue.

23           THE COURT:  Only in that sense, and no other.

24           MR. BAUCHNER:  Agreed.  Agreed.

25           THE COURT:  Okay.

Page 47

1          MR. BAUCHNER:  That's the point, and we agree with

2    you that it's not before Your Honor as to the significance

3    of a potentially perjurious affidavit submitted in the state

4    court proceeding.  That's for the state --

5          THE COURT:  Well --

6          MR. BAUCHNER:  -- to address.

7          THE COURT:  I'm not sure I understand that.  I

8    guess you agree on that now, although you took up about five

9    pages of your pleading as well as submitting lengthy

10   exhibits and transcripts to the contrary, but I will ignore

11   those because you're asking me to.

12         MR. BAUCHNER:  Very good, Your Honor.  Like I said

13   before, I think we have said all we can say on this issue

14   and we understand the Court's ruling.

15         THE COURT:  Okay.  Mr. Barefoot, do you have

16   anything to add?

17         MR. BAREFOOT:  Your Honor, I just want to clarify

18   one point, which is that -- and I believe this is consistent

19   with Your Honor's ruling.  Transform is entitled through

20   discovery or otherwise, to develop a record on what

21   conditions existed and were known or could have been known

22   to the landlord.  And regardless of what was alleged in the

23   adversary complaint before this Court, if the facts

24   ultimately show that the septic tank, the fire suppression

25   system, or any other issues existed and could have been

1   asserted by the landlord in response to the cure notice,

2   those are barred, regardless of what was alleged in the

3   adversary complaint as to when they arose.

4           THE COURT:  No doubt.

5           MR. BAUCHNER:  Your Honor, just to be clear, could

6   have been asserted, depends on what we knew or should have

7   known.

8           THE COURT:  Well, of course, but that's what Mr.

9   Barefoot said, that they're entitled to take discovery on.

10          MR. BAUCHNER:  Understood.  Understood, Your

11  Honor, but we need to be very precise here, because it's not

12  just that it could have been asserted.  It's that we knew or

13  should have known about them, and they have taken discovery

14  on this issue --

15          THE COURT:  That's fine.

16          MR. BAUCHNER:  -- and --

17          THE COURT:  I mean, obviously, if the discovery

18  says we knew nothing about it and it was kept from us, you

19  know, we don't have access.  We don't inspect.  Pretty

20  clear.

21          MR. BAUCHNER:  Again, we agree, Your Honor.  It

22  was kept from us.  We were --

23          THE COURT:  Well, I don't know.  That's for

24  Justice Jamieson to decide.

25          MR. BAUCHNER:  Exactly right, which is exactly

Page 49

```
1    what we're hoping for her to decide, Your Honor, and that's

2    exactly what's happening in the state court now.

3              THE COURT:  All right.  Anything else?

4              MR. BAREFOOT:  Your Honor, just one point in terms

5    of this known or could have known standard.  Obviously,

6    there's a litany of cases in the mass tort context and

7    otherwise, where even if the claimant had no reason or basis

8    to know of the basis for a claim, if it was not asserted, it

9    still cannot be asserted.  So, I believe that it's a bit of

10   a red herring to focus on what the landlord knew.

11             THE COURT:  It's a red herring to focus just on

12   what the landlord knew, but if the landlord really had no

13   reason to know, I think that it's going to be hard to

14   justify that a bar date would be binding on someone in that

15   context.

16             MR. BAUCHNER:  And Your Honor, what Mr. Barefoot

17   said is the precise argument they're making in state court,

18   which you just acknowledged it would've been hard for us to

19   (indiscernible).  That's, again, the concern in the state

20   court proceeding, that it's -- regardless of what we knew or

21   could have known, it's (indiscernible).

22             THE COURT:  Okay.

23             MR. BAREFOOT:  Your Honor, how would you prefer

24   that we proceed in terms of settling an order?  I do --

25             THE COURT:  Well, let me --
```

1              MR. BAREFOOT:  -- have a concern --

2              THE COURT:  Let me give you my ruling, first.

3              MR. BAREFOOT:  Okay, Your Honor.

4              THE COURT:  I have before me a motion by Transform

5    Operating Stores, LLC for an order clarifying and enforcing

6    my order dated January 9, 2020 in this adversary proceeding

7    which, granted in part and denied in part, as set forth in

8    that order, Transform's motion under Bankruptcy Rule 7012,

9    incorporating Federal Rule of Civil Procedure 12(b)(6), to

10   dismiss the claims in the complaint, which sought payment by

11   Transform of amounts claimed to be owing under the lease

12   between Sayville Menlo, LLC, the plaintiff, and Transform as

13   assignee of the lease from the Debtor, Sears.

14              The primary basis for the relief sought by

15   Transform in that original motion was that the landlord,

16   Sayville, had failed to assert any cure costs by the

17   deadline set by the Court in its bidding procedures order of

18   November 19, 2018 appearing at Docket 816 as then

19   implemented through the Court's order authorizing the

20   assumption and the potential assignment of the lease to

21   Transform, appearing at ECF 3850.

22              The bidding procedures order provided that if a

23   cure amount was not asserted timely in response to the cure

24   notice, which was indisputably sent to Sayville, the cure

25   amount set forth on the notice would be binding and no

Page 51

1    further obligation under Section 365(b)(1) of a monetary

2    nature would be owed by the Debtor and its assignee,

3    Transform.

4          The Debtor put in its cure notice zero dollars

5    owing and concededly, there was no timely response to that

6    cure notice, and therefore, I concluded after a lengthy

7    hearing on the motion that took place in December of 2019

8    that all pre-assumption amounts owing would be barred, and

9    therefore, claims in respect of those amounts should be

10   dismissed.

11         I made it crystal clear in the order as I did

12   during the oral argument that pre-assumption costs include

13   any amounts required to cure defaults under the lease

14   arising prior to the assumption and assignment date, whether

15   they would be paid by a tenant directly to the landlord or

16   by the tenant to third parties to perform repairs and the

17   like.

18         The Bankruptcy Code provides, in Section

19   365(b)(1), that "If there has been a default in an unexpired

20   lease of the Debtor, the Trustee or Debtor in Possession may

21   not assume such lease unless, at the time of assumption of

22   such lease, the Trustee or Debtor in Possession cures or

23   provides adequate assurance that the Trustee will promptly

24   cure such default other than a default that is a breach of a

25   provision relating to the satisfaction of any provision

Page 52

1    other than a penalty rate or penalty provision relating to a

2    default arising from any failure to perform non-monetary

3    obligations under an unexpired lease of real property, if it

4    is impossible for the Trustee to cure such default by

5    performing non-monetary acts and, at and after the time of

6    assumption, except that if such default arises from a

7    failure to operate in accordance with a nonresidential real

8    property lease, then such default shall be cured by

9    performance at and after the time of assumption in

10   accordance with such lease, and pecuniary losses resulting

11   from such default shall be compensated in accordance with

12   the provisions of this paragraph," i.e., cured or there be a

13   provision of a prompt cure.

14           It was clear to me from the complaint and the

15   record of oral argument that the repair and other defaults

16   under the lease for purposes of the cure provision of the

17   Bankruptcy Code could all be dealt with by the payment of

18   money.  Indeed, the plaintiff landlord had filed a proof of

19   claim in respect of most of those asserted defaults,

20   asserting monetary amount of at least roughly $760,000, with

21   the reservation that might more be owed -- more might be

22   owed ultimately, once the claim was liquidated.

23           My order makes it, I believe, crystal clear that

24   any such amounts owing, regardless of any specific provision

25   of the lease notwithstanding, will be the responsibility of

Page 53

1    the plaintiff as far as there being pre-assumption costs,

2    because again, the bar date had been set and there was no

3    response to the cure notice filed by the Debtors that

4    asserted no cure amounts would be owing.

5            To fix the allocation as to any ongoing post-

6    assumption performance obligations that did not arise pre-

7    assumption and were not barred by the Court's prior orders,

8    the parties returned to state court.  The current motion

9    arose because of a letter dated October 28, 2020 to the

10   state court justice presiding over that litigation, the

11   Honorable Linda Jamieson, sent by counsel for the landlord.

12           It asserted, quite shockingly to me, given the

13   clarity of my January 9, 2020 order, the colloquy which was

14   extensive, and oral argument with the landlord's counsel,

15   and the fact that this point had never been raised before

16   me, that only defaults noticed by the landlord under

17   Paragraph 12.01 of the lease were covered by my order; i.e.,

18   to be barred, by my prior orders, the default would've had

19   to have been noticed formally by the landlord as set forth

20   in the lease.

21           As I stated, this argument was never raised before

22   me.  If it had been, it would've been immediately shot down.

23   The law is crystal clear that when Congress in the

24   Bankruptcy Code refers, in Section 365(b)(1) of the Code, to

25   a default in an unexpired lease, it is referring to a breach

Page 54

1   of the lease, not to the mechanics of setting out the

2   default.  It is a more generic term of default under the

3   lease.

4          To rule otherwise or to interpret the code

5   otherwise would be to permit, as Judge Brieant held in the

6   AboveNet case that I previously cited, to raise default

7   later, in essence, hiding in the weeds, which would limit a

8   Debtor's flexibility to determine whether to assume or

9   reject a lease.

10          Indeed, Judge Brieant described that argument in

11   the AboveNet case as "essentially frivolous."  AboveNet v.

12   SBC Telecom (2007 U.S. District Lexis 13651 at Pages 4-5

13   S.D.N.Y. February 27, 2007).  See also in re:  Metromedia

14   Fiber Network, Inc., 335 B.R. 41, 49-51 (Bankr. S.D.N.Y.

15   2005).

16          The whole point of a cure notice procedure is to

17   flag potential cure issues so that they can inform a

18   Debtor's, its creditor constituents', and ultimately the

19   Court's judgment as to whether a lease should be assumed or

20   not, given the likelihood of potential defaults and the

21   amount of them, to be followed up by a procedure to

22   actually, if the default is timely asserted, liquidate the

23   specific amount and provide for its cure or prompt cure, a

24   regime that the Bankruptcy Code requires that is independent

25   of and supersedes the regimen for calling a default under a

Page 55

1    lease under applicable non-bankruptcy law.

2           The letter never should've been sent and, as I

3    noted, I will grant the motion as follows.  I will hold that

4    the sending of the letter was a violation of a January 9,

5    2020 order, and if it is not promptly retracted, and if the

6    landlord fails to act in conformity with my ruling, I will

7    in the future hold it in contempt on due notice to the

8    landlord.

9           The objection to the motion asserts other points

10   that are either legally or procedurally incorrect or both.

11   I guess the first point I should address is the contention

12   11 months after the entry of the now obviously final January

13   9, 2020 order, that it was somehow incorrect as a matter of

14   law and should be vacated.  Of course, the time to make such

15   a motion under Federal Rule of Civil Procedure 59,

16   incorporated by Bankruptcy Rule 9023, has passed and there

17   was no attempt to make such a motion under Bankruptcy Rule

18   9024 incorporating Federal Rule of Civil Procedure 60.

19          Moreover, the contention is simply incorrect.  As

20   I noted from the plain language of the statute that I

21   previously quoted, if a performance obligation can be

22   quantified monetarily, it needs to be cured with money.  The

23   complaint and the proof of claim and the oral argument made

24   it clear that each of these obligations could be cured by

25   the payment of money.  The caselaw cited for this section of

1    the objection was, therefore, completely off point and, in

2    some cases, totally mis-cited.  Whether it's monetary or

3    non-monetary, the point is, must it be cured with money?  If

4    it must, then the bar date mechanism for responding to cure

5    notice needed to be responded to and here, that was the case

6    and it was not responded to.

7          In addition, the objection spent considerable ink

8    on the notion that the Debtor committed a fraud on the

9    court, not specifying which court.  It is clear to me that

10   the Debtor did not commit any fraud on this Court in any way

11   and it should've been clear to counsel for the landlord,

12   given the colloquy and oral argument in December of 2019, in

13   which I made it clear that a cure notice is the Debtors'

14   position on whether there is a cure or not, just as a

15   landlord's response to a cure notice is merely the

16   landlord's position on whether the cure amount is owing.

17         And ultimately, as set forth in the bidding

18   procedures order and the assumption order, the Court sorts

19   out the proper amount of cure, if there was a timely

20   response to the cure notice.

21         As far as whether there was a fraud on the state

22   court, again, that appears to me to be irrelevant and a red

23   herring as far as to whether the Debtor is somehow estopped

24   from relying upon the cure notice.  It set a date to assert

25   a cure claim.  The landlord's failure to assert a cure

Page 57

1    claim, unless it is excused for some reason applicable to

2    notices setting such dates, i.e., it did not know nor could

3    it have known of the existence of the claim, it has been

4    argued, the landlord would be barred, period.

5              Finally, it is argued that because at oral

6    argument in the December 2019 argument, counsel for

7    Transform assumed that the so-called septic tank default was

8    a post-assumption default.  Apparently as asserted in the

9    complaint, Transform should now be judicially estopped from

10   asserting that it was a pre-petition default.  I'm sorry,

11   pre-assumption default.  Clearly, and contrary to the

12   assertion in the objection, Transform should not be

13   judicially estopped from taking that position as required by

14   the case law going back to New Hampshire v. Maine, 532 U.S.

15   742, 749 (2011).

16             Judicial estoppel requires, among other things,

17   that the party to whom it would apply be taking a position

18   in front of a Court contrary to a position that it took in

19   front of another Court, upon which it prevailed.  Before me,

20   Transform did not prevail on this position.  Indeed, it lost

21   on this position because I concluded that I did not have

22   jurisdiction over the determination of the post-assumption

23   cure amount, and therefore, would not decide it.  I deferred

24   instead, to the state court or to the parties to work out

25   the amount.

Page 58

1          Obviously, given that the motion before me was one

2     to dismiss a complaint, that was not a factual finding by

3     this Court, but based upon the assertions in the complaint

4     and Transform's apparent understanding at that time, so

5     judicial estoppel, which was argued here, may not apply --

6     or does not apply.  Excuse me.  Whether any other doctrine

7     of estoppel applies, I doubt, but it's not an issue before

8     me.

9          So as far as the order is concerned, I don't need

10    any further reinterpretation of the order granting this

11    motion.  What precipitated the motion was the October 28th,

12    2020 letter and the order should state that that letter was

13    in violation of my January 9th, 2020 order and that I will

14    hold the landlord in contempt unless it is promptly

15    withdrawn, and the landlord does not take the position

16    asserted in that letter in the state court litigation.

17          So, Mr. Barefoot, I'd like you to prepare the

18    order, but I think it should be that simple.  It can refer

19    to my bench ruling.  You can provide Justice Jamieson with

20    the transcript, if you wish, but I don't think we need any

21    further interpretation of my order.

22          MR. BAREFOOT:  We will do so, Your Honor.  Might I

23    also suggest that Your Honor so order the record of the

24    proceedings today?

25          THE COURT:  Well, there's really no -- there's no

Page 59

1    such thing.  But again, I have a bench ruling.  I'll ask you

2    to send me the transcript so that I can make sure it doesn't

3    have typos or the like, and again, you can provide a copy of

4    that to Justice Jamieson.

5              MR. BAREFOOT:  We will do so, Your Honor.

6              THE COURT:  Okay.  Very well.  All right.

7    Anything else?

8              MS. MARCUS:   Your Honor --

9              MR. BAREFOOT:  Not from Transform, Your Honor.

10             MS. MARCUS:  That brings us to the end of today's

11   agenda.

12             THE COURT:  Okay, very well.  Ms. Marcus, I do

13   want to ask you, at the monthly omnibus hearings, from time

14   to time, Mr. Wander has said he wanted to hear the World

15   Imports issue or have me hear it, and I thought I had

16   scheduled it for this month.  Has that now been resolved or

17   do we need to check with someone else at Weil Gotshal?

18             MS. MARCUS:  I think my partner, Gary Fail may be

19   on, but I think he's in listen-only mode.  I'm pretty

20   certain it has not been resolved; although, perhaps relevant

21   objection has been withdrawn.  That's my --

22             THE COURT:  Okay.  All right.  I thought that I

23   had scheduled it for a hearing for this month, but maybe the

24   parties have moved it by agreement.  Anyway, one of my

25   clerks will check with Mr. Fail to follow up on the status

Page 60

1    of whether there are any remaining issues on that claim

2    objection dispute that are going to be teed up in the near

3    future.

4              MS. MARCUS:  Okay, Your Honor.  That would be

5    better.  Thank you.

6              THE COURT:  Okay.  Very well.  Thank you.  So, I'm

7    going to hang up at this point.  Thank you all.

8              MR. BAREFOOT:  Thank you, Your Honor.

9

10             (Whereupon these proceedings were concluded at

11   11:28 AM)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 61

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  December 11, 2020

| & | | | |
|---|---|---|---|

**&**  3:4 5:3,10,18
7:22

**0**

**07424**  5:6

**1**

**1**  51:1,19 53:24
**10**  1:23 3:2
**10,000**  8:19 10:5
**10/15/2018**  3:7
**10/31/201**  3:7
**10006**  5:13
**10112**  6:4
**10153**  5:21
**10601**  1:21
**10:00**  3:2
**10:04**  1:24
**11**  55:12 61:25
**11/12/2020**  4:5
**11501**  61:23
**11:28**  60:11
**12**  50:9
**12.01**  53:17
**125,000**  8:14 10:2
**13**  12:12 30:5
**13651**  54:12
**13th**  15:7 29:8
**14**  4:1 15:15
**151**  18:12
**16**  18:12
**161**  15:8,15
**162**  30:5
**18**  15:15 34:11
**18-235328**  1:3
**19**  50:18
**19-08286**  1:4 3:10
3:16,22 4:2 13:21

**2**

**2**  15:8
**2,476,936**  8:11
**2,476,936.00**  3:7

**20**  27:11
**2005**  54:15
**2007**  54:12,13
**2011**  57:15
**2017**  34:11
**2018**  50:18
**2019**  8:10 15:8
24:22 25:24 29:8
51:7 56:12 57:6
**2020**  1:23 3:2 13:8
13:12,22 22:18
29:9 31:14 50:6
53:9,13 55:5,13
58:12,13 61:25
**206**  26:1
**21**  22:22
**23**  4:1
**248**  1:20
**25**  3:14,18
**27**  54:13
**28**  13:12 53:9
**28th**  30:9 58:11
**29**  4:6

**3**

**3**  12:12
**30**  3:20 6:3
**300**  1:20 61:22
**31st**  8:10
**330**  61:21
**335**  54:14
**365**  5:5 14:7,22
17:2,7 27:19
31:16 51:1,19
53:24
**3850**  50:21

**4**

**4**  16:17
**4-5**  54:12
**41**  54:14
**41st**  6:3
**47,154.66**  3:8
**47,154.66.**  8:12

**49-51**  54:14

**5**

**5**  20:5
**532**  57:14
**59**  55:15

**6**

**6**  20:5 50:9
**60**  55:18

**7**

**7012**  50:8
**742**  57:15
**749**  57:15
**760,000**  26:1
52:20
**767**  5:20

**8**

**816**  50:18

**9**

**9**  3:7 13:8 28:20
30:13 40:22 50:6
53:13 55:4,13
**9/2020**  3:24
**9016**  3:8
**9023**  55:16
**9024**  55:18
**9th**  29:9 31:14
58:13

**a**

**a.m.**  3:2
**aaron**  5:3 11:15
20:1
**abovenet**  27:22
54:6,11,11
**absolutely**  9:11
22:11
**accept**  18:3
**access**  48:19
**accord**  33:12
**accounting**  6:2
8:8

**accurate**  61:4
**acknowledged**
49:18
**act**  27:5 55:6
**acted**  45:13
**action**  23:21 24:8
24:10,11,13 28:10
**acts**  52:5
**add**  12:19 47:16
**adding**  22:25 23:6
**addition**  12:1
18:14 23:6 56:7
**additional**  8:18
9:3 10:5 42:21
**address**  8:3 39:24
43:20 47:6 55:11
**addressed**  33:14
38:9 40:8 41:22
**addressing**  23:5
**adequate**  51:23
**admission**  30:24
31:9
**adopted**  18:7
23:22
**adv**  1:4
**advanced**  14:13
**adversary**  3:10,16
3:22 4:1,2 11:2
13:19 27:1 47:23
48:3 50:6
**advisor**  3:6 6:2
8:8
**affect**  11:6
**affidavit**  24:6,13
35:6,22 44:13,18
45:1,15,18,19
47:3
**affidavits**  23:25
**affirmative**  19:19
**affirmatively**
23:25 24:7 26:11
**afraid**  33:15

[agenda - authority]

**agenda** 3:1 7:18 7:24,25 8:1 59:11
**ago** 11:20 35:3
**agree** 22:2,17 23:17 33:18 36:14 37:21 44:14 46:7 47:1,8 48:21
**agreed** 8:18 10:2 10:5 46:21,24,24
**agreement** 9:11 59:24
**agrees** 20:7
**aim** 27:5
**air** 39:17
**ait** 39:17
**al** 1:15 3:11,17,23 4:3
**allegation** 39:11
**allegations** 18:3,5 18:8,10,17
**alleged** 47:22 48:2
**alleging** 35:2,7,8
**allocatable** 43:2
**allocating** 31:23
**allocation** 27:13 33:21 34:16,21 38:24 44:10 45:24 46:15,18,22 53:5
**allow** 14:23
**ambiguous** 22:3
**amended** 3:14,25 7:25
**amount** 9:25 15:13,18,19 42:24 43:1 50:23,25 52:20 54:21,23 56:16,19 57:23,25
**amounts** 15:17,22 15:22,24 19:2 37:18 42:21 50:11 51:8,9,13 52:24 53:4
**ansell** 5:3 11:15 20:1

**answering** 27:12
**anthony** 3:19
**anyway** 59:24
**apart** 41:6
**apologize** 12:14 22:10 23:13 28:3 29:19 32:22 33:9 33:12 34:24
**apparent** 58:4
**apparently** 57:8
**appeal** 19:16,18
**appearing** 6:8 50:18,21
**appears** 12:3 20:22 56:22
**applicable** 44:23 55:1 57:1
**application** 3:4 8:2,10,14,15,17 8:19,21 9:7,13,20 9:24,24 40:2
**applications** 9:13 9:21
**applied** 42:22
**applies** 42:17 58:7
**apply** 37:11 42:15 57:17 58:5,6
**appreciate** 9:17 23:12 32:13 33:17 41:19
**appreciates** 27:24
**appropriate** 46:13
**approve** 3:12
**argue** 24:9 31:11 44:9
**argued** 30:24 33:20 46:8 57:4,5 58:5
**argues** 17:23 20:6
**arguing** 17:24 32:6,9,13 33:23 34:6,8 37:23 38:2

**39**:10,15 41:25 42:5 44:8 46:14
**argument** 13:3 20:3 23:11 25:4,9 26:3,18,23 31:8 38:3 39:4,8 41:6,8 42:8 43:6 49:17 51:12 52:15 53:14 53:21 54:10 55:23 56:12 57:6,6
**arguments** 26:25
**arisen** 31:25
**arises** 52:6
**arising** 51:14 52:2
**arose** 13:24 17:24 18:1 27:13 28:9 28:12,13 34:19,19 48:3 53:9
**arrange** 7:11
**arthur** 21:2
**articulated** 15:5
**ascertained** 19:9
**asking** 27:12 39:23,25 40:1,2 47:11
**aspects** 19:13
**assert** 14:24 15:9 19:17 28:23 29:5 32:1 41:11 50:16 56:24,25
**asserted** 15:18,22 15:23,24 18:16 19:6,9 29:14 42:19,19,20 48:1 48:6,12 49:8,9 50:23 52:19 53:4 53:12 54:22 57:8 58:16
**asserting** 16:19 40:22,23 43:15 52:20 57:10
**assertion** 16:7 24:25 41:12,12

**57**:12
**assertions** 58:3
**asserts** 17:10 41:9 55:9
**assignee** 50:13 51:2
**assignment** 13:24 14:18 15:6,14,17 16:15 18:15 26:10 30:5,7 34:20 50:20 51:14
**assume** 13:5 28:19 41:2 51:21 54:8
**assumed** 54:19 57:7
**assuming** 9:2 27:23
**assumption** 13:24 14:18 16:20 27:13 27:14 29:16,23 31:24,24,25 32:2 32:14 34:1,4,5,7 34:12 35:3 39:11 40:14,21 42:6,9 42:17 43:3 50:20 51:8,12,14,21 52:6,9 53:1,6,7 56:18 57:8,11,22
**assurance** 51:23
**attack** 14:8
**attacks** 17:21
**attempt** 31:11 55:17
**attorney** 5:4
**attorneys** 5:11,19 11:5
**attributable** 43:2
**audit** 9:22
**auditor** 3:6 6:2 8:8
**authority** 17:6

**authorized** 7:8
**authorizing** 50:19
**avenue** 5:20
**averments** 31:5
**avoid** 17:19
**awarding** 46:5
**awards** 10:8
**aware** 29:13

**b**

**b** 2:1 10:7 50:9
  51:1,19 53:24
**b.r.** 54:14
**back** 21:13 32:10
  57:14
**bankr** 54:14
**bankruptcy** 1:1
  1:19 2:3 25:1,20
  27:9,19 29:14
  50:8 51:18 52:17
  53:24 54:24 55:1
  55:16,17
**bar** 25:8 28:18
  29:7 31:13 35:11
  35:16,16 37:11
  38:21 40:22 42:17
  45:6,20,22 46:10
  49:14 53:2 56:4
**barefoot** 5:15
  11:4,10,11,18,18
  12:3,25,25 13:15
  13:18,18 20:18,20
  20:22 23:9 33:3,4
  33:9 47:15,17
  48:9 49:4,16,23
  50:1,3 58:17,22
  59:5,9 60:8
**barred** 14:17 15:9
  19:6 26:11 28:22
  30:1,11 31:25
  32:2 34:1,8,14
  35:4 36:6,17,22
  36:25 37:8 41:3
  41:14 42:25 44:23

48:2 51:8 53:7,18
  57:4
**base** 15:2 19:2
**based** 7:25 13:24
  17:4,16 31:3
  36:18 58:3
**basis** 7:13,15
  15:20 19:5 25:3
  28:19 29:5 39:24
  41:9 49:7,8 50:14
**bauchner** 5:8
  11:14,15 12:7,8
  12:11,19,22 19:25
  20:1,12,21 21:20
  21:21,24 22:1,6
  22:11,14 23:1,12
  23:16 24:12,15,18
  24:21,23 25:10
  26:2,5,14,22 27:3
  27:8 28:2,8,13,21
  29:3,6,10,17,21
  30:2,16 31:19,22
  32:4,20,25 33:2,6
  33:7,10 35:12,15
  35:18,20 36:5,8
  36:10,14,19,22
  37:1,4,7,9,13,21
  37:25 38:7,23
  39:3,18,22,25
  40:9,11,18 41:16
  42:5 43:4,10,15
  43:18,20,25 44:5
  44:17,20,25 45:3
  45:8,10,14,21,23
  46:2,7,11,14,21
  46:24 47:1,6,12
  48:5,10,16,21,25
  49:16
**bauchner's** 21:19
**behalf** 3:19 7:22
  11:12,15 24:4
  28:14 35:25

**believe** 14:6,15
  15:8 16:2 23:8
  33:20 35:13 45:14
  47:18 49:9 52:23
**bench** 15:5 58:19
  59:1
**benefit** 28:25
  32:11
**better** 60:5
**beyond** 41:5
**bidding** 14:2,7,20
  14:25 16:15,25
  17:5,16 30:11
  31:13 40:21 50:17
  50:22 56:17
**binding** 38:21
  49:14 50:25
**bit** 49:9
**bounds** 32:16
**box** 21:10
**breach** 15:11
  51:24 53:25
**brieant** 27:22
  54:5,10
**brief** 3:18 13:2,16
  20:6 39:5,7,15
**briefly** 9:8 15:2
  17:8 19:11 33:4
**bright** 34:3
**bring** 41:18
**brings** 59:10
**bulk** 9:21
**burden** 17:19
  34:18
**buyers** 14:25

**c**

**c** 5:1 7:1 61:1,1
**call** 11:6 18:18
**called** 41:13 57:7
**calling** 27:16
  54:25
**camp** 5:5

**cap** 18:13
**capable** 25:23
**capitalized** 23:18
**captioned** 13:20
**case** 1:3,4 8:8,9,13
  9:21,23 13:21
  16:11 17:3 20:8
  25:1 27:22 29:14
  54:6,11 56:5
  57:14
**caselaw** 55:25
**cases** 49:6 56:2
**cause** 33:15 39:9
**cede** 19:22
**certain** 17:24
  34:17 59:20
**certainly** 19:18
  27:8 28:3,3,21
  38:13
**certified** 61:3
**chambers** 8:25
  10:6,13
**change** 12:16 17:3
  19:5 23:8
**changed** 11:24
  12:5
**changes** 20:9
**changing** 23:7
**check** 59:17,25
**circled** 21:1
**circulated** 8:22
**cited** 16:3 54:6
  55:25 56:2
**civil** 50:9 55:15,18
**claim** 15:9,17
  25:25 28:23 29:13
  29:14,16 36:6,12
  37:16,17,20 40:13
  40:23,25 42:23
  49:8 52:19,22
  55:23 56:25 57:1
  57:3 60:1

**claimant** 49:7
**claimed** 15:14
  50:11
**claiming** 35:23
  45:24
**claims** 13:23
  14:16,24 19:3,9
  28:15 40:22 41:11
  50:10 51:9
**clarifies** 20:15
**clarify** 41:18
  47:17
**clarifying** 22:19
  50:5
**clarity** 53:13
**clear** 12:14,20
  19:15 23:8,17
  26:6 28:5 29:15
  29:19 32:23,24
  33:11 34:25 38:20
  42:11,13,25 43:21
  45:11 48:5,20
  51:11 52:14,23
  53:23 55:24 56:9
  56:11,13
**clearer** 31:21
**clearly** 23:4 57:11
**cleary** 5:10 11:4
  11:11,18 13:1,19
  33:4
**clerk** 21:2,5,10,14
  21:17
**clerk's** 7:11,12
**clerks** 59:25
**client** 7:5 20:16
  25:22 28:22 29:13
  36:11 37:15 40:22
  40:25 41:10,12
  42:20 43:22 44:19
  44:23 45:7,25
  46:10,19
**code** 17:2 27:20
  51:18 52:17 53:24

53:24 54:4,24
**collateral** 17:21
**collaterally** 14:8
**colleague** 21:19
**colleagues** 9:15
**colloquy** 18:9
  26:20 39:8 53:13
  56:12
**color** 32:21
**come** 39:20 42:1
**commencement**
  27:1
**comment** 11:24
**commit** 56:10
**committed** 45:5
  56:8
**compelling** 25:13
**compensated**
  52:11
**compensation** 3:5
**complaint** 3:14
  18:4 31:4,4,5,7,7
  47:23 48:3 50:10
  52:14 55:23 57:9
  58:2,3
**complete** 36:17
**completely** 7:4
  26:19,23 31:14,15
  33:1 37:21 41:9
  41:11 44:14 46:7
  56:1
**comply** 23:3,4
**concealed** 24:7
  25:13 26:11 34:10
**concededly** 51:5
**concept** 28:18
  36:25 37:2
**concern** 23:6,24
  26:7 39:7 41:25
  43:18 44:3 49:19
  50:1
**concerned** 30:18
  35:11 39:17 58:9

**concerning** 4:5
  40:12
**concerns** 9:16
  44:12
**conclude** 41:2
**concluded** 51:6
  57:21 60:10
**conclusion** 19:8
**condition** 42:22
**conditions** 45:3
  47:21
**conduct** 46:9,15
**conferences** 39:19
**confidence** 38:5
**confirm** 14:5
**conformity** 55:6
**confusion** 26:8
  33:15 39:9
**congress** 53:23
**considerable** 56:7
**consistent** 16:3
  27:18 47:18
**constituents**
  54:18
**contact** 7:10
**contains** 45:16
**contempt** 20:16
  22:24 27:7 28:7
  43:23 55:7 58:14
**contended** 29:23
**contends** 29:24
  30:10
**contention** 15:3
  25:3 28:6 55:11
  55:19
**contentions** 17:9
**contesting** 18:4
**context** 31:1,16
  49:6,15
**continue** 23:10
  44:9
**contract** 15:11,17
  16:4

**contradicted** 31:6
  31:15
**contrary** 16:22
  24:25 26:20 30:10
  30:19 31:2 32:6
  35:6 41:24 42:8
  43:6,22 44:2
  47:10 57:11,18
**contravention**
  14:25
**cooperation** 9:18
**copy** 7:12 10:11
  59:3
**core** 15:3
**corporation** 1:8
**correct** 9:5,11
**corrected** 11:21
  12:4
**correction** 12:9
**correctly** 27:5
**cost** 25:19 31:23
  34:7,12 35:3
  39:11 40:14 42:9
  42:20
**costs** 16:21 18:14
  25:18 27:13,16
  29:16,24 31:25
  32:14 33:21 34:4
  42:6,16,17 50:16
  51:12 53:1
**could've** 10:1
  31:20 42:10 44:11
**counsel** 7:20 8:6
  8:23 10:6,12
  53:11,14 56:11
  57:6
**count** 44:22
**counterparties**
  16:5
**country** 61:21
**course** 7:16 9:20
  18:2 28:8 48:8
  55:14

[court - defendant's]                                                                                        Page 5

**court** 1:1,19 7:2,6
7:9,11 8:3,4 9:2,6
9:19 10:10,16,19
10:24 11:8,13,17
12:1,7,9,18,21,24
13:4,17 14:5,5,12
14:21 15:8,15
17:21 18:7,12,18
18:20 19:12,24
20:11,13,21,23,25
21:4,8,12,16,18
21:21,23,25 22:5
22:7,7,10,13,16
23:4,15,21 24:1
24:10,11,13,14,16
24:17,19,22,24
25:4,11,11,12,14
25:15,17,20,21,21
26:3,8,13,16,23
27:2,4,4,9,23,25
28:4,5,10,12,18
28:22,23 29:4,7
29:11,20,22 30:8
30:9,17 31:20,23
32:5,8,12,18,21
32:22,23,24 33:1
33:5,7,16,19,20
33:23 34:6,16,22
34:22 35:1,6,10
35:14,15,16,19,21
35:23 36:2,4,6,9
36:11,16,21,24
37:3,5,8,10,14,15
37:19,24,25 38:1
38:8,10,11,25
39:1,6,9,14,19,19
39:21,23 40:2,4
40:10,16,19 41:18
41:21 42:1,3,6,11
43:1,5,14,16,17
43:19,21,23 44:4
44:8,9,14,15,16
44:18,21,22 45:2

45:4,5,9,11,15,17
45:19,20,22,25
46:4,5,8,12,15,17
46:23,25 47:4,5,7
47:15,23 48:4,8
48:15,17,23 49:2
49:3,11,17,20,22
49:25 50:2,4,17
53:8,10 56:9,9,10
56:18,22 57:18,19
57:24 58:3,16,25
59:6,12,22 60:6
**court's** 9:10,14
14:1,12 15:4,21
15:24 17:12,12,16
17:19 18:9 19:5
26:9 33:15,22
34:2,3 47:14
50:19 53:7 54:19
**courthouse** 27:21
**courts** 16:4
**covered** 42:22
53:17
**covering** 41:9
**create** 16:14
**creditor** 54:18
**crozier** 5:24
**crystal** 23:8 28:5
42:13,25 51:11
52:23 53:23
**cure** 14:1 19:10
24:25 25:8,17,17
25:19 28:23 30:7
32:1 36:12 38:13
38:15,16 40:23
42:20 48:1 50:16
50:23,23,24 51:4
51:6,13,24 52:4
52:13,16 53:3,4
54:16,17,23,23
56:4,13,14,15,16
56:19,20,24,25,25
57:23

**cured** 52:8,12
55:22,24 56:3
**cures** 51:22
**current** 53:8
**cutting** 27:10

**d**

**d** 2:2 7:1
**d'artiglio** 3:19
21:19
**d'artiglio's** 13:10
22:1,12
**daily** 7:13
**daluz** 6:10 10:17
10:20
**damages** 15:10
**dashboard** 20:23
21:6
**date** 25:8 28:19
29:7 31:13 35:11
35:16,17 38:15,17
45:6,22 46:10
49:14 51:14 53:2
56:4,24 61:25
**dated** 13:8,11
50:6 53:9
**dates** 57:2
**day** 7:3
**deadline** 28:23
40:24 50:17
**deal** 22:25 26:17
**dealt** 9:21 10:4
52:17
**debtor** 1:10 6:2
23:25 24:3 25:13
25:16 28:14,24
29:23 35:4,5,9,10
35:22,25 36:1,16
37:11 38:22 39:12
40:19 44:21,24
45:5,13 50:13
51:2,4,20,20,22
56:8,10,23

**debtor's** 54:8,18
**debtors** 5:19 7:20
7:22 8:23 10:12
11:7 18:24 19:1
25:1 46:9,15 53:3
56:13
**december** 1:23
3:2 13:9 15:7
24:22 25:24 26:21
29:8,15 42:14
43:9 51:7 56:12
57:6 61:25
**decide** 37:15,19
38:10 48:24 49:1
57:23
**decision** 19:13
**decisions** 16:3
**declined** 30:21
**default** 16:2,11
19:3 26:9 27:16
27:17 29:4,11,12
30:6 31:12 32:14
34:1,5 41:13,14
51:19,24,24 52:2
52:4,6,8,11 53:18
53:25 54:2,2,6,22
54:25 57:7,8,10
57:11
**defaults** 14:18
15:6 16:1,10,12
16:14 17:24 19:6
23:18,19 24:7
25:2,16,19,25
26:10 30:11,14
51:13 52:15,19
53:16 54:20
**defect** 33:24
**defects** 24:6
**defendant** 23:20
35:7,8,8
**defendant's** 3:25
4:5 20:2 24:9

**defendants**  1:16
3:12,13
**deferred**  57:23
**defined**  34:4
**definition**  32:13
**deflect**  41:7
**deloitte**  3:4 6:1
8:2,3,6,6,7,10 9:7
10:6
**deloitte's**  9:22
**denied**  23:25 50:7
**denying**  3:13,25
**depends**  48:6
**deposition**  18:21
**described**  15:19
42:18 54:10
**deterioration**
34:17,19,19
**determination**
45:17 57:22
**determinations**
14:4 34:22,23
**determine**  54:8
**determined**  42:21
**develop**  47:20
**developments**  9:3
**dialed**  22:12
23:14
**different**  30:6
32:9 41:9
**directed**  44:15
**directions**  14:13
**directive**  33:13
**directly**  33:14
51:15
**discovered**  12:14
**discovery**  18:5
47:20 48:9,13,17
**discuss**  40:10
**discussed**  25:23
**discussion**  27:18
**dismiss**  3:14,25
14:21 15:6,16

18:2,2,9 31:3
50:10 58:2
**dismissal**  14:6,9
14:11,16 15:3
16:8,9,17 17:4,13
17:15,20 18:1,11
18:20 19:14,20
20:7
**dismissed**  51:10
**dismissing**  13:23
**dispute**  30:7,8
60:2
**distinct**  18:25
**distinction**  30:10
34:4
**district**  1:2 27:21
54:12
**doc**  4:1
**docket**  17:19
50:18
**doctrine**  58:6
**document**  3:18
**documents**  13:14
31:6
**doing**  23:2 25:23
28:1
**dollars**  51:4
**doubt**  48:4 58:7
**drabs**  10:4
**drain**  2:2 7:2
**dribs**  10:3
**drops**  15:13
**due**  55:7

**e**

**e**  2:1,1 5:1,1 7:1,1
61:1
**early**  34:11
**easily**  9:17
**ecf**  3:8,14,19 4:1,6
50:21
**ecro**  2:5
**educed**  18:5

**efforts**  14:8 16:5
17:20 19:17
**either**  15:12,18
31:10 42:12 43:6
55:10
**email**  10:6,13
**emphasize**  14:3
**employ**  16:5
**employed**  35:25
**enforce**  3:12 4:6
13:22 17:14 19:21
**enforced**  25:7
**enforcement**  17:5
**enforcing**  50:5
**engendered**  32:6
**enter**  17:11
**entered**  17:6
**entire**  28:17 31:15
41:19
**entirely**  27:18
32:9
**entirety**  20:2
**entities**  18:25
**entitled**  47:19
48:9
**entry**  55:12
**essence**  54:7
**essentially**  54:11
**estopped**  17:23
18:4 30:23 56:23
57:9,13
**estoppel**  17:25
30:19 44:13 57:16
58:5,7
**et**  1:15 3:11,17,23
4:3
**evade**  14:8 17:20
**everybody's**  8:24
**evidence**  18:18
19:3 37:17
**exact**  37:22 39:4
**exactly**  12:11
26:14 27:25 44:8

46:2,2 48:25,25
49:2
**examine**  15:25
**examiner**  6:9 8:13
8:18,23 9:9,12,23
**example**  39:14
42:19,23
**examples**  42:14
**exceeds**  32:16
**excellent**  27:24
**excess**  26:1
**excuse**  34:19,23
43:24 58:6
**excused**  10:18
57:1
**exercise**  27:17
**exhibits**  13:13
47:10
**exist**  19:4
**existed**  47:21,25
**existence**  38:12
57:3
**expect**  38:20 43:5
**expenses**  3:6,8
8:11
**express**  18:10
**expressed**  17:6
**expressly**  17:2,13
18:12
**extensive**  8:12
26:20 53:14
**extent**  16:19
17:22
**extra**  38:8

**f**

**f**  2:1 61:1
**facially**  31:6
**fact**  16:9 17:1,24
26:19 30:21 37:18
40:20 41:6 44:15
45:12 53:15
**facts**  18:5 31:1
38:10 47:23

[factual - hold]                                                                              Page 7

factual  14:4 30:18
  31:3 39:24 58:2
fail  25:3 59:18,25
failed  50:16
fails  55:6
failure  13:25 32:1
  41:10 52:2,7
  56:25
fair  32:25 33:2
fall  38:14
false  24:6
far  30:17 35:11
  36:6 39:16 53:1
  56:21,23 58:9
february  54:13
federal  50:9 55:15
  55:18
fee  3:4,7 6:9 8:1
  8:10,12,13,15,16
  8:17,19,21,23 9:7
  9:9,12,23
fees  8:11,15,20
  9:1,22
fiber  54:14
fifth  5:20
file  13:25 36:12
  37:17
filed  3:18 11:21
  12:4,6 25:17
  52:18 53:3
filing  8:16 13:11
  25:25
final  3:4 8:1,10,13
  8:16 9:7,13,20
  10:7 19:11 37:5
  55:12
finally  17:1 57:5
finder  44:15
finding  30:8,18
  58:2
findings  31:3
fine  10:19 11:8
  22:13 23:15 24:16

25:10 26:5,6
  33:10 35:23 39:21
  43:14 48:15
finish  33:7
fire  40:13 47:24
firm  20:16
firm's  26:17
first  7:5 8:1,15
  9:10 12:12 16:10
  17:10 18:23 19:15
  32:7 50:2 55:11
five  47:8
fix  42:22 53:5
fixed  15:12 43:1
flag  54:17
flat  41:15
flexibility  54:8
floor  6:3
focus  16:9 18:21
  49:10,11
follow  59:25
followed  54:21
follows  55:3
foregoing  61:3
forever  19:6
form  28:25
formal  7:23 9:16
formally  10:11
  14:17 16:2 53:19
forth  50:7,25
  53:19 56:17
found  19:1
four  42:14
frankly  30:12
  37:16 38:4 41:7
  44:6
fraud  18:18 24:16
  25:4,11,14,20
  44:22 45:5 46:4
  56:8,10,21
friedmann  5:25
frivolous  54:11

front  57:18,19
frustration  41:20
further  8:17
  34:16 51:1 58:10
  58:21
future  55:7 60:3

g

g  7:1
gaming  27:25
gary  59:18
generated  23:24
  30:3
generic  54:2
give  41:23 50:2
given  9:22 18:8
  26:25 30:14,25
  42:3 53:12 54:20
  56:12 58:1
giving  32:21
go  7:18,24 15:7
  40:14 46:17,18
goes  46:15,22
going  7:24 15:16
  21:12,14 27:11
  39:9 49:13 57:14
  60:2,7
good  7:2,6,21 8:5
  9:8 10:14 11:10
  11:14 20:11,13
  47:12
gotshal  5:18 7:22
  59:17
gottlieb  5:10
  11:11
governed  16:25
grant  9:24 15:16
  55:3
granted  50:7
granting  3:13,24
  15:5 58:10
gray  21:1,10
great  29:15

grimm  5:3 11:15
  20:1
grounds  30:10
  31:9
guess  21:12 47:8
  55:11

h

hamilton  5:10
  11:11
hampshire  57:14
handled  11:3
hang  10:22 60:7
happened  20:25
happening  21:6
  32:12,21 35:1
  41:20 49:2
happy  7:18,19
  25:11 40:14
hard  49:13,18
harner  6:9 9:8,9
  10:12,17,21
hear  34:10 44:6
  59:14,15
heard  22:2,8,14
hearing  3:1,2,4,12
  3:18,24 4:4 7:3
  11:23 12:15 13:9
  15:8 18:9,11
  24:20 25:24 26:21
  29:8,15 31:17
  43:9 51:7 59:23
hearings  7:9,14
  59:13
held  21:24 27:7
  34:15,16 54:5
herring  36:17
  49:10,11 56:23
hiding  54:7
hold  20:16 21:22
  22:8,24 23:13
  28:6 43:23 55:3,7
  58:14

holdco  1:15 3:11
  3:17,23 4:3 5:11
  11:3
holding  19:5
holdings  1:8
holds  16:19
hon  2:2
honor  7:21 8:5,25
  9:8,18 10:9,15,17
  10:20,21,25 11:4
  11:10,14 12:3,8
  12:11,25 13:15,18
  14:10,14 15:2
  16:11 17:1,8,10
  17:15,22 18:17
  19:11,22,25 20:2
  20:20,22 21:20
  22:6 23:2,16,23
  24:21 25:10,15,18
  26:2,5,6,14,22
  28:2,8,13,21
  29:10,17,21 30:2
  30:4,16 31:19,22
  32:4,9,11,16,25
  33:2,3,10,11,14
  34:13,15,16 35:5
  35:9,13,20 36:8
  36:14,19,20 37:1
  37:7,9,13,21 38:7
  38:23 39:3,8,18
  40:1,9,11,15
  41:16 42:1,5 43:4
  43:10,12,25 44:5
  44:15,25 45:8,14
  45:21 46:3,7,11
  46:14,21 47:2,12
  47:17 48:5,11,21
  49:1,4,16,23 50:3
  58:22,23 59:5,8,9
  60:4,8
honor's  13:1 23:3
  26:12 33:12,17
  34:8 35:2 41:20

44:7 47:19
honorable  53:11
hope  43:25
hoping  49:1
hot  39:17
house  8:6
housekeeping
  11:19
hyde  4:25 61:3,8

**i**

i.e.  15:13 30:23
  40:5 52:12 53:17
  57:2
idea  7:6
identify  7:4 34:18
ignore  17:25
  47:10
ignores  34:2,3
immediately
  53:22
impact  36:2
implemented
  50:19
important  15:21
  16:10 17:15 25:13
imports  59:15
impossible  52:4
improperly  45:13
inception  8:9
include  51:12
includes  27:23
  32:14 42:25
including  27:20
inconsistencies
  18:23
incorporated  31:6
  55:16
incorporating
  50:9 55:18
incorrect  55:10
  55:13,19
incurred  3:6

independent  3:6
  6:2 8:8 54:24
indicated  35:21
indiscernible
  21:18 33:6 43:1
  49:19,21
indisputably
  50:24
inform  54:17
information  9:10
  9:14
initial  7:19 20:5
initially  23:24
  26:7
initiates  25:22
ink  56:7
innumerable  24:5
inquiry  41:1
inspect  48:19
instance  32:7
intended  32:17
intent  28:3
intention  26:9
interaction  8:12
  8:17
interfere  17:11
interim  8:15,21
  9:12,21 10:7
interpret  17:13
  54:4
interpretation
  14:23 15:3 16:8
  16:18 17:4,16
  25:7 58:21
interpreted  27:20
introduction  7:17
introductory
  12:13,19 13:2
involving  11:2
irrelevant  39:17
  40:20,24 56:22
issue  13:7 18:19
  20:15,24 22:4,25

25:6 26:13,15
  27:15 28:9,11
  30:2,3,5,18,19,21
  30:21 31:21 34:21
  36:18 37:18 38:8
  38:9,17 40:5
  41:19 43:11 44:2
  44:10,10 45:4,6
  45:24 46:4,16,18
  46:18,22 47:13
  48:14 58:7 59:15
issues  9:25 33:18
  38:18 40:12 44:12
  44:14 47:25 54:17
  60:1
items  34:17

**j**

j  3:19
jacqueline  5:23
  7:21 10:25
jamieson  13:10
  14:14 22:21 26:18
  27:24 31:11 32:19
  41:2,23 48:24
  53:11 58:19 59:4
january  13:8,22
  22:18 28:20 29:9
  30:13 31:14 40:22
  50:6 53:13 55:4
  55:12 58:13
jared  5:25
jennifer  5:24
joshua  5:8 11:15
  20:1 21:21
judge  2:3 7:2
  14:14 21:2,17
  27:21,21,24 41:23
  54:5,10
judgment  54:19
judicata  36:18
judicate  36:25
judicial  17:25
  30:19,24 31:8

57:16 58:5

**judicially** 17:23
30:23 57:9,13

**jurisdiction** 17:12
17:13 30:22 57:22

**justice** 13:10
14:14 22:21 26:18
27:23 31:11 32:19
41:2 48:24 53:10
58:19 59:4

**justify** 49:14

**justin** 2:5

### k

**keep** 7:15

**kept** 48:18,22

**kind** 16:5

**knew** 25:16,19
26:9 28:16 35:8,9
35:10 36:1,11,15
36:16 37:11,15,19
38:11,14,22 39:12
40:20,23 43:12
44:21,24 45:7,25
46:19,22 48:6,12
48:18 49:10,12,20

**know** 7:25 8:25
18:14 23:1,2 31:4
31:9,9 34:9 36:16
38:1,1,6,18,22
40:20 41:1 43:6
44:6 48:19,23
49:8,13 57:2

**known** 32:14
33:24 34:9,11
35:3,4 36:12
37:16,19 38:12,15
38:16 39:12 40:23
41:1,4 42:7,7,9,10
43:11,12 44:11,11
45:9 46:1,19,22
47:21,21 48:7,13
49:5,5,21 57:3

### l

**lack** 18:18

**landlord** 14:17,23
15:9 16:18 17:9
17:10 19:8,16
22:21 30:14 32:15
33:25 38:11 43:13
44:10 47:22 48:1
49:10,12,12 50:15
51:15 52:18 53:11
53:16,19 55:6,8
56:11 57:4 58:14
58:15

**landlord's** 14:22
15:2 16:7 18:13
18:15 53:14 56:15
56:16,25

**landlords** 14:23

**language** 23:6,17
23:19,21 27:19
34:24 55:20

**law** 11:21 53:23
55:1,14 57:14

**lawyer** 27:10

**laying** 10:7

**lease** 15:25 16:1
16:10,13,20,24
23:18,19 27:18
31:12 41:13 50:11
50:13,20 51:13,20
51:21,22 52:3,8
52:10,16,25 53:17
53:20,25 54:1,3,9
54:19 55:1

**leases** 23:18

**leave** 11:6

**led** 13:9

**ledanski** 4:25 61:3
61:8

**legal** 61:20

**legally** 55:10

**length** 25:23
29:15 43:8

**lengthier** 31:16

**lengthy** 47:9 51:6

**letter** 13:10 14:14
20:15 22:21,22
26:17 28:7,9,10
30:9 32:7,18,22
33:11 34:25 38:4
41:8 42:4 53:9
55:2,4 58:12,12
58:16

**levander** 5:16

**lexis** 54:12

**liberty** 5:12

**lie** 14:24 16:5
29:12

**lied** 28:24

**light** 25:24

**likelihood** 54:20

**limit** 18:10 54:7

**linda** 53:11

**line** 15:8 18:12
20:19,21 21:15,22
22:1,12 30:5 34:3

**liquidate** 54:22

**liquidated** 15:18
15:19 42:16,18,24
52:22

**listen** 59:19

**litany** 40:14 49:6

**literally** 11:20
26:18 27:15 38:3
42:15 43:24

**litigation** 14:12
53:10 58:16

**little** 22:17

**llc** 1:12,15 3:10,11
3:16,17,19,22,23
4:2,3 5:4 11:3,16
13:21 50:5,12

**llp** 3:4 5:10 11:11

**long** 19:16

**look** 16:17 18:11

**lengthier** 31:16

**loophole** 16:14

**lose** 20:17

**losses** 52:10

**lost** 20:18 21:2
30:21 57:20

**lower** 16:11

**lucky** 27:6

**luke** 5:15 11:10
12:25 13:18 33:4

### m

**maine** 57:14

**making** 25:5
30:24 49:17

**manges** 5:18 7:22

**manifest** 41:21

**marcus** 5:23 7:21
7:22 10:25,25
11:9 59:8,10,12
59:18 60:4

**mass** 49:6

**materially** 12:16
20:9

**matter** 1:6 7:10
8:1,3 11:1,1,1,19
11:22 20:5 29:4
29:13,24,25 31:1
33:21 34:15 35:10
35:11,19 38:22
55:13

**matters** 3:1 9:17
35:13,21 36:9,13

**mean** 13:4 48:17

**mechanics** 54:1

**mechanism** 16:1
56:4

**mechanisms**
16:24,25

**memorandum**
11:21

**menlo** 1:12 3:10
3:16,19,22 4:2 5:4
11:2,16 13:20
50:12

**mentioned** 9:4
**merely** 25:6 56:15
**merit** 25:5
**metromedia**
  54:13
**mind** 13:16
**mineola** 61:23
**minute** 31:17
**minutes** 27:11
**mis** 56:2
**misinformation**
  45:16
**misinterpreted**
  42:12
**misinterpreting**
  40:6
**mislead** 44:25
**misled** 44:19
**misrepresenting**
  40:12
**mode** 59:19
**modest** 8:20
**moment** 11:20
  12:22
**monetarily** 55:22
**monetary** 27:13
  51:1 52:2,5,20
  56:2,3
**money** 38:13
  52:18 55:22,25
  56:3
**month** 59:16,23
**monthly** 59:13
**months** 55:12
**morning** 7:2,18
  7:21 8:5 9:9 11:10
  11:13,14,17 12:15
  13:19
**motion** 3:12,12,13
  3:25 4:5 13:5,7,11
  13:14,22 14:21
  15:6,16 18:2,2,8
  19:17,20 31:3

32:7 38:4,21 50:4
  50:8,15 51:7 53:8
  55:3,9,15,17 58:1
  58:11,11
**mouth** 20:3
**moved** 59:24
**mute** 7:15

**n**

**n** 5:1 7:1 61:1
**name** 7:7 27:21
**nature** 51:2
**near** 60:2
**necessary** 15:13
  31:7
**necessitated**
  17:19 28:10
**need** 10:8,11 24:2
  26:6 38:12,19,19
  40:16 41:17 48:11
  58:9,20 59:17
**needed** 22:3 56:5
**needs** 55:22
**neither** 18:19
**network** 54:14
**never** 18:7 22:23
  53:15,21 55:2
**new** 1:2 5:13,21
  6:4 39:1,4,6 57:14
**nj** 5:6
**non** 52:2,5 55:1
  56:3
**nonresidential**
  52:7
**note** 9:14 11:19
  15:21 23:19
**noted** 8:14 55:3
  55:20
**notice** 3:1 14:1
  19:10 25:1,17
  30:14 32:1 33:25
  48:1 50:24,25
  51:4,6 53:3 54:16
  55:7 56:5,13,15

56:20,24
**noticed** 14:18
  16:2,14 31:12
  53:16,19
**notices** 25:8 57:2
**noticing** 16:1
**notion** 56:8
**notwithstanding**
  16:22 35:5 52:25
**november** 50:18
**number** 11:5
  18:12 39:19
**ny** 1:21 5:13,21
  6:4 61:23

**o**

**o** 2:1 7:1 61:1
**objection** 12:2,4
  12:10 13:6,25
  46:9 55:9 56:1,7
  57:12 59:21 60:2
**obligation** 51:1
  55:21
**obligations** 16:13
  52:3 53:6 55:24
**obviously** 48:17
  49:5 55:12 58:1
**october** 8:10
  13:11 22:22 30:9
  53:9 58:11
**odds** 14:19
**office** 7:11,12
**oh** 23:4
**okay** 8:4 9:2,6,19
  10:16,24 12:18,21
  13:17 19:24 21:4
  21:16 22:11,16
  24:14 39:3 43:14
  44:4 46:25 47:15
  49:22 50:3 59:6
  59:12,22 60:4,6
**old** 61:21
**omitted** 12:13

**omnibus** 7:3
  59:13
**once** 8:23 52:22
**ongoing** 34:17
  53:5
**operate** 52:7
**operating** 11:12
  13:20 50:5
**opportunity**
  11:22 19:12
**opposed** 21:1
**opposite** 37:22
**opposition** 3:18
  17:9 19:20
**oral** 38:3 39:8
  51:12 52:15 53:14
  55:23 56:12 57:5
**order** 3:13,24 4:4
  7:10 8:22 10:6
  13:7,8,9,23 14:2,6
  14:7,9,11,16,20
  15:3 16:9,16,17
  16:23,25 17:1,4,5
  17:11,13,14,15,17
  17:21 18:1,21
  19:14,16,20 20:7
  20:9,10,14,14,17
  22:2,3,18,20,23
  22:25 23:5,7,7,8
  23:17,20 25:7
  26:12,15 28:20,25
  29:9,15 30:11,12
  30:13 31:11,13,14
  31:18 32:16,17
  33:15,18 34:2,3,8
  35:2 36:12,18,22
  37:6 38:14,21
  40:6,21,21,22
  41:14 42:15 46:12
  49:24 50:5,6,8,17
  50:19,22 51:11
  52:23 53:13,17
  55:5,13 56:18,18

58:9,10,12,13,18
58:21,23
**order's** 16:8
**ordered** 4:4
**orders** 15:1 25:8
53:7,18
**original** 20:10
23:20 50:15
**originally** 27:2
**outrageous** 26:17
31:15 41:12
**outside** 16:15
**owed** 51:2 52:21
52:22
**owing** 15:12,23
25:2 50:11 51:5,8
52:24 53:4 56:16

**p**

**p** 5:1,1 7:1
**page** 12:12 15:15
18:11 20:5 30:4
**pages** 47:9 54:12
**paid** 51:15
**pain** 24:1
**pains** 45:15
**papers** 16:3 17:10
**paragraph** 16:17
20:5 52:12 53:17
**park** 5:6
**part** 3:13,13,24,25
30:7 43:12 50:7,7
**particularly** 17:3
17:14
**parties** 14:11
51:16 53:8 57:24
59:24
**partner** 59:18
**party** 57:17
**passed** 19:16
55:16
**paul** 6:9 9:9
**payment** 50:10
52:17 55:25

**pecuniary** 52:10
**penalties** 24:1
45:16
**penalty** 52:1,1
**perfectly** 25:22
41:22
**perform** 32:3
51:16 52:2
**performance**
15:10,11 52:9
53:6 55:21
**performed** 8:9
**performing** 52:5
**period** 3:7 10:4
36:25 43:3 46:19
57:4
**perjurious** 47:3
**perjury** 24:1
45:16
**permit** 54:5
**permitted** 11:6
**perspective** 33:17
**petition** 24:11,12
43:2 57:10
**phone** 11:5
**pieces** 19:4
**place** 51:7
**plain** 14:6 27:19
34:2 55:20
**plains** 1:21
**plaintiff** 1:13
16:21 17:23 50:12
52:18 53:1
**plaintiff's** 17:20
18:17 19:3
**plaintiffs** 24:7
**plan** 10:22
**plaza** 5:12 6:3
**pleading** 12:5
25:21 27:1 30:20
39:16 47:9
**pleadings** 45:12

**please** 8:25 10:18
**plus** 42:20
**podium** 19:23
**point** 7:16 18:23
20:13 22:7 29:23
29:25 32:15 33:1
37:22 38:25 39:1
40:8,19,25 43:8
43:24 47:1,18
49:4 53:15 54:16
55:11 56:1,3 60:7
**pointed** 36:23
**points** 39:4 41:16
55:9
**position** 18:7
22:22 25:1 43:22
44:2 56:14,16
57:13,17,18,20,21
58:15
**positions** 18:24,24
**possession** 51:20
51:22
**possible** 13:16
30:22,25
**post** 27:14 30:5,7
31:24 32:2 34:5
53:5 57:8,22
**posture** 18:1,8
**potential** 50:20
54:17,20
**potentially** 37:14
47:3
**pre** 15:6,14,17
16:20 18:15 24:11
24:12 27:13 29:16
29:23 31:24,25
32:6,14 34:1,4,7
34:12 35:3 39:11
40:13 42:6,8,17
43:2,3 51:8,12
53:1,6 57:10,11
**precipitated** 38:4
58:11

**precise** 12:12
48:11 49:17
**precisely** 33:20
**prefer** 49:23
**preference** 13:2
**prejudice** 3:14
13:23
**preliminary** 9:16
**preparation**
12:15
**prepare** 7:23
58:17
**prepared** 11:23
26:17 44:9
**prepetition** 17:24
**presentation** 33:8
**presented** 33:19
**presiding** 53:10
**pretty** 48:19
59:19
**prevail** 57:20
**prevailed** 57:19
**prevent** 14:7
**previously** 28:15
34:9,11 54:6
55:21
**primarily** 8:15,20
**primary** 13:14
50:14
**prior** 13:24 14:18
16:15 26:10 51:14
53:7,18
**problem** 20:17
21:17 32:5 33:13
33:13 38:12
**problems** 24:5
28:15,17
**procedural** 18:1,8
**procedurally**
19:14 27:5 55:10
**procedure** 50:9
54:16,21 55:15,18

[procedures - reply]                                                                    Page 12

**procedures** 14:2,7
  14:20 15:1 16:16
  16:25 17:5,17
  30:12 31:13 40:21
  50:17,22 56:18
**proceed** 13:2
  41:24 49:24
**proceeding** 3:10
  3:16,22 4:1,2 11:2
  13:20 27:1 32:5,8
  32:12,22 35:21,23
  36:3 47:4 49:20
  50:6
**proceedings**
  14:20 58:24 60:10
  61:4
**production** 7:11
**prompt** 52:13
  54:23
**prompted** 13:11
**promptly** 51:23
  55:5 58:14
**proof** 25:25 42:23
  52:18 55:23
**proper** 56:19
**property** 24:2,5
  28:16,17 33:24
  34:7 35:3,24 52:3
  52:8
**propose** 8:24
  11:25 13:2
**proposed** 8:22
  10:6 23:9,20,21
  26:15
**protections** 14:25
**provide** 54:23
  58:19 59:3
**provided** 50:22
**provides** 7:12
  51:18,23
**provision** 33:25
  51:25,25 52:1,13
  52:16,24

**provisions** 52:12
**purpose** 14:21
**purposes** 35:13
  52:16
**pursuant** 14:13
  17:6
**pursue** 29:16
**put** 7:7 21:22 22:8
  51:4
**puts** 16:18

### q

**quantified** 15:11
  55:22
**quarropas** 1:20
**question** 10:3
  22:16
**questions** 9:1
  19:22 27:12
**quickly** 9:15
  23:14
**quite** 27:24 30:25
  53:12
**quoted** 55:21

### r

**r** 2:1 5:1 7:1 61:1
**race** 32:10
**raise** 26:21 29:25
  44:12 54:6
**raised** 26:7,19
  28:12 33:25 38:2
  39:8 53:15,21
**raises** 17:9
**raising** 26:18
  29:22 36:21 39:1
  39:2,6 40:12
**rate** 52:1
**rationale** 15:4,21
  15:25 27:11
**rdd** 1:3,4 3:10,16
  3:22 4:2
**read** 24:24
**readily** 12:5

**reading** 14:15,19
  15:4
**ready** 27:4
**reaffirming** 43:7
**real** 40:4 52:3,7
**really** 11:23 40:6
  40:17 41:5,6,12
  49:12 58:25
**reason** 42:13 49:7
  49:13 57:1
**reasonable** 41:1
**reasoned** 15:8
**recommenced**
  14:11
**reconsider** 19:13
**reconsideration**
  19:15,18
**record** 12:14,20
  14:10,20 20:1
  47:20 52:15 58:23
  61:4
**recording** 7:8,12
**red** 36:17 49:10
  49:11 56:22
**reduction** 8:14,18
  9:3 10:2,5
**refer** 58:18
**reference** 16:12
  17:2 30:12,13
**referenced** 14:15
**referred** 45:12
**referring** 24:10
  24:11,12 53:25
**refers** 16:9 53:24
**reflect** 9:11 25:20
**reflected** 8:19
  25:17
**reflects** 14:10
**refute** 16:23
**refuted** 15:4
**regard** 13:7 25:6
  25:15 28:7 32:23
  32:24 34:25 40:7

**regarding** 8:3 9:1
**regardless** 39:12
  42:9 44:23 47:22
  48:2 49:20 52:24
**regime** 54:24
**regimen** 54:25
**reimbursement**
  3:5
**reinterpretation**
  58:10
**reject** 16:4 54:9
**relate** 8:20
**related** 3:18 4:1
  8:14 30:4
**relating** 51:25
  52:1
**relatively** 8:20
**relevance** 44:18
  44:21
**relevant** 13:14
  37:14 38:24 45:6
  45:20,23,25 59:20
**relief** 14:3 19:19
  29:1 50:14
**relieve** 42:1 46:9
**reluctant** 17:18
**relying** 56:24
**remain** 14:24
**remaining** 60:1
**remains** 34:20
**remarks** 7:23
**remedies** 27:17
**rendered** 3:5
**repair** 52:15
**repairs** 15:14
  16:20 24:2 38:23
  51:16
**repeat** 22:17
**repeatedly** 20:4
  27:6
**reply** 13:6 19:23
  20:6

report 7:19
reported 22:7
reporter 7:7
reports 9:16
representative
  18:22 24:3,15
  28:14 35:24,24
representing 8:6
request 11:4
  17:11 32:7
requested 8:11
required 14:1
  16:20 18:3 51:13
  57:13
requires 14:4,5
  20:3 54:24 57:16
reread 24:19
res 36:18,24,25
reservation 52:21
reserve 19:23
resolved 9:17
  59:16,20
respect 15:16
  25:25 44:13,17
  45:19 51:9 52:19
respectfully 25:18
  32:11,15
respond 17:8 33:4
responded 56:5,6
responding 25:8
  56:4
response 14:1
  19:9 25:22 32:1
  48:1 50:23 51:5
  53:3 56:15,20
responsibility
  16:21 34:20 52:25
responsive 9:15
rest 16:18 23:11
  33:7
result 22:20
resulting 52:10

retained 8:7
retains 17:13
retracted 55:5
returned 53:8
review 9:12,23
  11:22
reviewed 9:20
  13:5,13
revised 7:17 9:25
  20:9
revisit 19:13
revisiting 19:19
rifle 5:5
right 7:24 9:19
  12:24 13:4 21:25
  22:19 43:17,19
  46:2,2 48:25 49:3
  59:6,22
road 5:5 61:21
robert 2:2
rockefeller 6:3
roland 8:2,5
role 9:22
ronald 6:6
room 1:20
roughly 52:20
rule 50:8,9 54:4
  55:15,16,17,18
ruling 31:17 44:7
  47:14,19 50:2
  55:6 58:19 59:1
run 41:24

**s**

s 3:18 5:1 7:1
s.d.n.y. 54:13,14
safe 43:7
samuel 5:16
sanction 22:24
sanctions 46:5
satisfaction 51:25
saw 11:20
saying 26:16
  32:10 37:5,10

39:6 45:18
says 23:17 48:18
sayville 1:12 3:10
  3:16,19,22 4:2 5:4
  11:2,16,22 13:3
  13:20 14:13 19:12
  19:23 20:2,6
  50:12,16,24
sayville's 13:5,25
  14:8
sbc 27:22 54:12
scheduled 3:1
  59:16,23
schedules 10:7,8
scheduling 4:4
sears 1:8 7:3
  50:13
second 8:21 17:22
section 12:12 14:7
  17:2,7 24:24
  27:19 31:16 51:1
  51:18 53:24 55:25
see 21:6,14,18
  25:3 42:3 54:13
seek 19:18 28:25
seeking 14:4
  29:18
sees 28:4
send 10:12 59:2
sending 55:4
sense 46:23
sent 41:8 50:24
  53:11 55:2
sentence 12:12,13
  12:19
separate 41:6
  45:2
septic 30:4,17
  38:9 40:7 47:24
  57:7
serves 16:13
services 3:5 8:9
  9:22

set 25:8 28:23
  50:7,17,25 53:2
  53:19 56:17,24
setting 54:1 57:2
settle 10:10,11
settling 49:24
shocked 26:24
shockingly 53:12
shoot 27:4
short 8:1
shot 53:22
should've 38:15
  42:19,20 44:11
  55:2 56:11
show 18:14 47:24
shreds 19:2
sides 20:3
signed 3:24 4:5
  8:24
significance 45:18
  47:2
significant 12:22
  41:21
silent 14:24
simple 29:1 38:17
  40:19 58:18
simply 15:4 18:19
  19:2 22:20 32:20
  34:21 37:12 42:2
  45:12 55:19
sir 23:5
sits 27:21
situation 23:24
six 19:14
slack 27:10
sole 16:21
solution 23:9,10
solutions 7:9,12
  20:23 21:21 22:7
  61:20
solve 20:17
sonya 4:25 61:3,8

sorry   21:20 27:3
  28:2 39:18 57:10
sort   7:19 10:3
sorts   56:18
sought   9:25 50:10
  50:14
sound   15:13
source   16:13
southern   1:2
speak   7:5,15
specific   15:10,10
  37:18 52:24 54:23
specifically   14:17
  14:22 16:4,19,23
  18:21 24:24 30:3
  40:7 45:1
specified   40:7
specify   16:13
specifying   56:9
speck   27:15
spent   27:10 56:7
standard   17:25
  49:5
state   14:12 17:12
  17:21 24:1,11,13
  25:11,12 26:8
  28:9 32:5,8,12,22
  32:23 33:16,19,23
  34:6,16,22 35:1
  35:15,21,23 36:2
  37:15,19,25 38:11
  38:24 39:9,19
  41:18,20 42:6
  43:16,22 44:8,9
  44:14,15 45:15,17
  45:19 46:15,16
  47:3,4 49:2,17,19
  53:8,10 56:21
  57:24 58:12,16
stated   30:4 53:21
statement   30:20
states   1:1,19
  22:20 29:9

status   59:25
statute   55:20
steen   5:10 11:11
stipulation   4:4
stop   36:21 37:5
  39:2
stores   11:12 13:21
  50:5
street   1:20
structure   14:22
subject   13:1 31:13
  32:18 38:3
submit   8:25 25:18
  32:16 33:11
submitted   23:25
  24:6,13 25:19
  35:6,22 44:13
  45:15 47:3
submitting   20:8
  47:9
subsequent   8:16
subsumed   10:1
successor   19:1
suddenly   32:10
suggest   18:6
  58:23
suggestion   16:23
  19:11
suggests   19:8
  26:15
suite   61:22
summary   9:11
sunday   19:14
supersedes   54:25
supplemental
  11:21
support   19:3
supports   16:8
  19:7
suppose   30:23
suppression   40:13
  47:24

sure   11:8 12:14
  20:23,25 21:8
  47:7 59:2
system   40:13
  47:25

### t

t   61:1,1
tactic   16:6
take   7:19 22:23
  25:12 30:22 48:9
  58:15
taken   7:9 22:22
  43:22 48:13
takes   31:5 44:1
talk   20:3
talking   38:18
tank   30:4,17 38:9
  40:7 47:24 57:7
teed   60:2
telecom   27:22
  54:12
telephonic   3:2 7:4
  7:14
telephonically   5:8
  5:15,16 6:8
tell   12:5
telling   21:21 38:5
  39:16 46:3
tenant   51:15,16
term   16:11 33:22
  34:4 54:2
terms   14:6,19
  15:25 16:23,24
  17:6 18:19,20
  19:19 20:9 30:6
  34:2 49:4,24
testified   24:4
  28:16 34:13
testifying   24:3
  28:14 35:25 36:1
testimony   19:2,4
  19:7

text   16:8
thank   9:18 10:9
  10:14,16,20,21,22
  11:9 12:22 19:25
  21:16 23:12,16
  33:10 41:17 60:5
  60:6,7,8
thing   22:2 59:1
things   12:10
  25:24 40:15 57:16
think   10:4 13:10
  20:13,18 21:2
  23:10 25:12 27:6
  27:9 31:20 34:2
  36:2 39:3,4,5
  41:21,21 43:23
  47:13 49:13 58:18
  58:20 59:18,19
third   8:21 18:17
  51:16
thought   23:13
  59:15,22
time   7:5 14:10
  15:9 19:15 25:9
  26:3 28:17 29:22
  30:1 32:15 35:5
  51:21 52:5,9
  55:14 58:4 59:13
  59:14
timely   19:6,17
  29:5 41:11 50:23
  51:5 54:22 56:19
times   24:23
timing   30:6
tobay   6:10
today   7:24 27:7
  32:19 58:24
today's   7:8 13:14
  59:10
told   24:25
tort   49:6
totally   21:10 56:2

[touche - zero]                                                                    Page 15

**touche**  3:4 6:1 8:2
    8:7,7,11
**transcribed**  4:25
**transcript**  7:10
    13:8 15:7 18:11
    24:19 30:5 31:17
    42:13,15 43:8
    58:20 59:2 61:4
**transcripts**  47:10
**transform**  1:15
    3:11,17,23 4:3
    5:11 11:3,12,19
    13:1,20,23,25
    14:4 17:11,18,23
    18:3,13,22,25,25
    20:7,8 24:4 28:15
    30:20,23 32:3,5,8
    33:19 34:18,21
    36:1 37:23 40:5
    44:1 47:19 50:4
    50:11,12,15,21
    51:3 57:7,9,12,20
    59:9
**transform's**  13:5
    13:6,22 19:8 50:8
    58:4
**tried**  21:5
**true**  18:4 31:5
    44:1 61:4
**truly**  32:2
**trustee**  51:20,22
    51:23 52:4
**truth**  38:6
**try**  13:16 21:8
**trying**  41:10
**turn**  13:3 15:25
**turned**  15:22
**turning**  16:7
**two**  40:25 41:16
**typos**  12:9 59:3

**u**

**u.s.**  2:3 54:12
    57:14
**ultimately**  42:18
    42:21 47:24 52:22
    54:18 56:17
**unambiguous**
    20:7,12,14 22:5,6
    22:18 33:18
**unasserted**  15:6
**undefined**  16:11
**underlying**  13:6
**undermine**  17:20
    33:20
**understand**  28:18
    29:6,10,17 32:4
    32:20 35:12,18,20
    36:8,10,19,20,24
    37:1 43:4,10 44:7
    45:8,21,23 47:7
    47:14
**understandably**
    17:18
**understanding**
    58:4
**understood**  13:15
    48:10,10
**unexpired**  51:19
    52:3 53:25
**unfortunately**
    39:22
**unfounded**  26:24
    41:11
**united**  1:1,19
**unknown**  32:14
    33:24
**unliquidated**
    15:13
**unmute**  7:16 21:5
**unmuted**  21:9
**unopposed**  9:25
**unproper**  19:14

**untenable**  14:15
**untimely**  19:19
**use**  19:12
**utterly**  31:15

**v**

**v**  1:14 3:10,16,22
    4:2 13:20 54:11
    57:14
**vacated**  55:14
**various**  9:12,16
**vast**  9:21
**veritext**  61:20
**version**  12:4
**view**  13:13
**violation**  55:4
    58:13
**voice**  7:7

**w**

**wait**  14:24 16:5
    21:13
**walker**  2:5
**wander**  59:14
**want**  7:9 14:3
    23:7 34:9 42:11
    42:12 43:20 44:6
    47:17 59:13
**wanted**  11:19
    12:16 59:14
**wants**  7:20
**waste**  25:9 26:3
**way**  28:4 37:16
    40:6 41:7 56:10
**ways**  19:14
**we've**  38:9 39:4
    39:18 41:22 44:8
**weeds**  54:7
**weigh**  39:23,25
    40:1
**weight**  25:5
**weil**  5:18 7:22
    11:5 59:17
**went**  15:15 29:14

**whatsoever**  25:5
**white**  1:21
**win**  30:20
**wish**  58:20
**withdraw**  28:6,9
    33:12
**withdrawn**  20:16
    58:15 59:21
**withdraws**  22:21
**withstanding**
    31:11
**witness**  18:22
    34:12
**woodland**  5:6
**work**  10:1 57:24
**world**  59:14
**would've**  41:13
    42:19 49:18 53:18
    53:22
**wrong**  30:15 34:7
    35:2 36:2 37:12
    41:15

**x**

**x**  1:5,11,17 42:20

**y**

**yeah**  21:10,12
    30:13
**years**  35:3
**york**  1:2 5:13,21
    6:4
**young**  6:6 8:2,5,6
    9:5,14 10:9,14,22
**young's**  9:10

**z**

**zero**  25:17,20
    51:4