## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>SEARS HOLDINGS CORPORATION, *et al*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-23538-RDD<br>Jointly Administered |

### DECLARATION OF KIMBERLY BLACK IN SUPPORT OF DEFENDANT'S MOTION TO ENFORCE ORDER (I) APPROVING THE ASSET PURCHASE AGREEMENT AMONG SELLERS AND BUYER, (II) AUTHORIZING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS, AND LEASES IN CONNECTION THEREWITH AND (IV) GRANTING RELATED RELIEF

I, Kimberly Black, declare under penalty of perjury as follows:

1.     I am an attorney duly admitted to practice in the State of New York, and I am an

associate of the law firm Cleary Gottlieb Steen & Hamilton LLP ("Cleary Gottlieb"), counsel for

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Transform SR Brands LLC and certain of its affiliates (collectively "Transform"). I respectfully submit this declaration in connection with the *Defendant's Motion to Enforce Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief*, filed contemporaneously herewith.

2.      Attached hereto as Exhibit A is a true and correct copy of the complaint filed on November 19, 2020 in *Arney v. Electrolux Home Products Inc. et al.*, Case No. 2020 L 012403 (Il. Cit. Ct. 2020) (the "Illinois Action").

3.      Attached hereto as Exhibit B is a true and correct copy of *Defendant Transform SR Brand LLC's 735 ILCS 5/2-619.1 Motion to Dismiss Plaintiff's Complaint* filed in the Illinois Action on May 19, 2021.

4.      Attached hereto as Exhibit C is a true and correct copy of *Plaintiff's Motion for Continuance of Defendant's Motion and Permit Discovery* filed in the Illinois Action on June 23, 2021.

5.      Attached hereto as Exhibit D is a true and correct copy of *Defendant Transform SR Brand LLC's Response to Plaintiff's Motion for Discovery* filed in the Illinois Action on June 23, 2021.

6.      Attached hereto as Exhibit E is a true and correct copy of the order entered in the Illinois Action on June 23, 2021 granting plaintiff's request to conduct discovery.

7.       Attached hereto as <u>Exhibit F</u> is a true and correct copy of an email thread between

the counsel for Transform in the Illinois Action, the Honorable Judge O'Hara of the Circuit

Court of Cook County, and counsel for the plaintiff in the Illinois Action, as of June 23, 2021.

8.       Attached hereto as <u>Exhibit G</u> is a true and correct copy of *Interrogatories Related*

*to Defendant's Motion to Dismiss Directed to Defendant, Transform SR Brands LLC,*

*Individually and d/b/a Sears* issued to Transform in the Illinois Action on June 30, 2021.

9.        Attached hereto as <u>Exhibit H</u> is a true and correct copy of *Request for Production*

*Related to Defendant's Motion to Dismiss Directed to Defendant, Transform SR Brands LLC,*

*Individually and d/b/a Sears* issued to Transform in the Illinois Action on June 30, 2021.


Executed on July 13, 2021 in New York, New York.


Respectfully submitted,


*/s/ Kimberly Black*
Kimberly Black
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

3

## EXHIBIT A

## CT Corporation

**Service of Process Transmittal**
12/07/2020
CT Log Number 538699933

**TO:**  Legal Operations B6-260b
Sears Holdings Corporation
3333 BEVERLY RD
HOFFMAN ESTATES, IL 60179-0001

**RE:**  **Process Served in Illinois**

**FOR:**  TRANSFORM SR BRANDS LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Diana M. Arney, Pltf. vs. Electrolux Home Products, Inc., et al., Dfts. // To: Transform SR Brands LLC, etc. |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # 2020L012403 |
| **NATURE OF ACTION:** | Product Liability Litigation - Manufacturing Defect |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Chicago, IL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 12/07/2020 at 10:28 |
| **JURISDICTION SERVED :** | Illinois |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 12/07/2020, Expected Purge Date: 12/12/2020<br><br>Image SOP<br><br>Email Notification,  Transform Legal  legalint@transformco.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>208 South LaSalle Street<br>Suite 814<br>Chicago, IL 60604<br>877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                          Mon, Dec 7, 2020

**Server Name:**              Michael Mitchell

| | |
|---|---|
| Entity Served | TRANSFORM SR BRANDS LLC |
| Agent Name | C T CORPORATION SYSTEM |
| Case Number | 2020 L 012403 |
| Jurisdiction | IL |



FILED DATE: 11/24/2020 2:20 PM    2020L012403

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | (08/01/18) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

DIANA M. ARNEY
_____

(Name all parties)                    Case No.    2020 L 012403
                                                    _____
            v.

ELECTROLUX HOME PRODUCTS INC. et
_____

☑ **SUMMONS**    ☐ **ALIAS SUMMONS**

To each Defendant:    TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS - REG AGENT: CT CORPORATION SYSTEM
208 SOUTH LASALLE STREET, SUITE 814, CHICAGO ILLINOIS 60604

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

**Summons - Alias Summons**                                    **(08/01/18) CCG 0001 B**

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first
create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm
to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://
www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

FILED DATE: 11/24/2020 2:20 PM   2020L012403

Atty. No.: 61090

Atty Name: TPMB LLC - Sean P. Murray

Atty. for: Plaintiff

Address: 225 West Wacker Drive, Suite 1650

City: Chicago

State: IL   Zip: 60606

Telephone: 312-586-1700

Primary Email: smurray@tpmblegal.com

Witness: _____

11/24/2020 2:20 PM DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with
Defendant or other person)

FILED DATE: 11/24/2220 2:20 PM    2020L012403

# CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

○ Richard J Daley Center
50 W Washington
Chicago, IL 60602

○ District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

○ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

○ District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

○ District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

○ District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

○ Domestic Violence Court
555 W Harrison
Chicago, IL 60607

○ Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

○ Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

## Daley Center Divisions/Departments

○ Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

◉ Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org

FILED
11/19/2020 1:35 P
DOROTHY BROW
CIRCUIT CLERK
COOK COUNTY, I
11200017

Attorney ID# 61090

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

|  |  |  |
|---|---|---|
| DIANA M. ARNEY, | ) | |
| Plaintiff, | ) | Case No.: 2020L012403 |
| v. | ) | |
| | ) | |
| ELECTROLUX HOME PRODUCTS, INC., | ) | |
| TRANSFORM SR BRANDS LLC, Individually | ) | |
| and d/b/a SEARS, and SEARS, ROEBUCK | ) | |
| AND CO., | ) | |
| Defendants. | ) | |

### COMPLAINT AT LAW

NOW COMES the Plaintiff, DIANA M. ARNEY, through her attorneys, TAXMAN, POLLOCK, MURRAY & BEKKERMAN, LLC, and complaining of Defendants, ELECTROLUX HOME PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and SEARS, ROEBUCK AND CO., alleges as follows:

### COUNT I
### ELECTROLUX HOME PRODUCTS, INC.
### STRICT PRODUCT LIABILITY – DEFECTIVE DESIGN

1.      That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.      That on and prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., was engaged in the business of designing, assembling, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, ELECTROLUX HOME PRODUCTS, INC., had, in fact, designed,

1

FILED DATE: 11/19/2020 1:35 PM    2020L012403

assembled, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.    That on and prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., had a duty to design, assemble, prepare, manufacture, maintain, advertise, distribute, supply, sell, and/or place for sale the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users.

4.    That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., sold its Electrolux ball-hitch designed clothes dryers to Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and/or Defendant, SEARS, ROEBUCK AND CO., for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.    That the aforementioned Defendant, ELECTROLUX HOME PRODUCTS, INC., participated in the design, assembly, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer, in that:

(a)    the subject dryer was designed, manufactured and sold with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source so that lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(b)    the subject dryer was designed, manufactured and sold with a combustible plastic air duct directly below the drum and combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum during its intended operation as a clothes dryer;

2

FILED DATE: 11/19/2020 1:35 PM    2020L012403

(c)    the subject dryer was designed, manufactured and sold so that particles of lint that accumulate and ignite behind the drum and within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and blower housing and/or the laundry load that has been dried in the drum;

(d)    the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

(e)    the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not serviceable by the homeowner;

(f)    the subject dryer was designed, manufactured and sold with combustible plastic components within which it was foreseeable that lint would accumulate and ignite;

(g)    the subject dryer was designed, manufactured and sold without adequate warning to the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(h)    the subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(i)    the subject dryer was designed, manufactured and sold without any warning contained on the clothes dryer regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(j)    the subject dryer was designed, manufactured and sold with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the subject dryer;

(k)    the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

(l)    the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, would not prevent the fire from escaping the dryer cabinet if they became ignited;

3

FILED DATE: 11/19/2020 1:35 PM    2020L012403

(m)     The subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk;

(n)     the subject dryer was designed, manufactured and sold in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

(o)     the subject dryer was designed, manufactured and sold with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use;

(p)     the subject dryer was designed and manufactured with improper component parts, including, but not limited to materials or lubricant near or at the dryer's ball hitch and/or bearing located behind the drum;

(q)     the subject dryer was designed and manufactured with improper component materials, including but not limited to the bearing that holds the dryer's drum in place, which can fail when subjected to lint accumulation; or

(r)     the subject dryer was an unreasonably dangerous product that is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics.

6.      That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

7.      That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

8.      That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA

4

M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

9.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, ELECTROLUX HOME PRODUCTS, INC., in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

### COUNT II
### ELECTROLUX HOME PRODUCTS, INC.
### STRICT PRODUCT LIABILITY – DEFECTIVE MANUFACTURE

1.    That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.    That on and prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., was engaged in the business of designing, assembling, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number

5

FILED DATE: 11/19/2020 1:35 PM    2020L012403

#41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, ELECTROLUX HOME PRODUCTS, INC., had, in fact, designed, assembled, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.    That on and prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., had a duty to design, assemble, prepare, manufacture, maintain, advertise, distribute, supply, sell, and/or place for sale the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.

4.    That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., sold its Electrolux ball-hitch designed clothes dryers to Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and/or Defendant, SEARS, ROEBUCK AND CO., for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.    That the aforementioned Defendant, ELECTROLUX HOME PRODUCTS, INC., participated in the design, assembly, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer, in that:

(a)    the subject dryer was designed, manufactured and sold with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source so that lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source

6

FILED DATE: 11/19/2020 1:35 PM    2020L012403

of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(b)    the subject dryer was designed, manufactured and sold with a combustible plastic air duct directly below the drum and combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum during its intended operation as a clothes dryer;

(c)    the subject dryer was designed, manufactured and sold so that particles of lint that accumulate and ignite behind the drum and within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and blower housing and/or the laundry load that has been dried in the drum;

(d)    the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

(e)    the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not serviceable by the homeowner;

(f)    the subject dryer was designed, manufactured and sold with combustible plastic components within which it was foreseeable that lint would accumulate and ignite;

(g)    the subject dryer was designed, manufactured and sold without adequate warning to the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(h)    the subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(i)    the subject dryer was designed, manufactured and sold without any warning contained on the clothes dryer regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(j)    the subject dryer was designed, manufactured and sold with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the subject dryer;

FILED DATE: 11/19/2020 1:35 PM   2020L012403

(k)   the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

(l)   the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, would not prevent the fire from escaping the dryer cabinet if they became ignited;

(m)  The subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk;

(n)   the subject dryer was designed, manufactured and sold in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

(o)   the subject dryer was designed, manufactured and sold with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use;

(p)   the subject dryer was designed and manufactured with improper component parts, including, but not limited to materials or lubricant near or at the dryer's ball hitch and/or bearing located behind the drum;

(q)   the subject dryer was designed and manufactured with improper component materials, including but not limited to the bearing that holds the dryer's drum in place, which can fail when subjected to lint accumulation; or

(r)   the subject dryers are an unreasonably dangerous product one that is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics.

6.   That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

8

FILED DATE: 11/19/2020 1:35 PM    2020L012403

7.     That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

8.     That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

9.     That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, ELECTROLUX HOME PRODUCTS, INC., in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

9

FILED DATE: 11/19/2020 1:35 PM    2020L012403

## COUNT III
## ELECTROLUX HOME PRODUCTS, INC.
## STRICT PRODUCT LIABILITY – FAILURE TO WARN

1.      That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.      That on and prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., was engaged in the business of designing, assembling, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, ELECTROLUX HOME PRODUCTS, INC., had, in fact, designed, assembled, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.      That on and prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., had a duty to design, assemble, prepare, manufacture, maintain, advertise, distribute, supply, sell, and/or place for sale the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users, and a duty to warn of the dangerous propensities of said product.

4.      That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., sold its Electrolux ball-hitch designed clothes dryers to Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and/or Defendant, SEARS, ROEBUCK AND CO., for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.      That the aforementioned Defendant, ELECTROLUX HOME PRODUCTS, INC., participated in the design, assembly, preparation, manufacturing, maintaining, advertising,

10

FILED DATE: 11/19/2020 1:35 PM    2020L012403

distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer, in that:

(a)    That said product was unreasonably dangerous in that the Defendant failed to warn consumers or users of the dangerous condition of said machine;

(b)    That said product was unreasonably dangerous in that the Defendant failed to provide warnings on the machine that the machine was a dangerous fire hazard;

(c)    That said product was unreasonably dangerous in that the Defendant failed to provide adequate and proper warnings;

(d)    That said product was unreasonably dangerous in that the Defendant failed to provide a warning that lint could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(e)    That said product was unreasonably dangerous in that the Defendant failed to warn that lint could accumulate and ignite in areas that are not visible or serviceable to the user;

(f)    That said product was unreasonably dangerous in that the Defendant failed to warn that the product is not serviceable by the homeowner;

(g)    That said product was unreasonably dangerous in that the Defendant failed to warn the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(h)    That said product was unreasonably dangerous in that the Defendant failed to warn of the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(i)    That said product was unreasonably dangerous in that the Defendant failed to warn of the known danger that lint can accumulate and ignite in areas

11

FILED DATE: 11/19/2020 1:35 PM    2020L012403

behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user; or

(j)     That said product was unreasonably dangerous in that the Defendant failed to warn the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk.

6.      That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

7.      That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

8.      That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

9.      That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for,

12

large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, ELECTROLUX HOME PRODUCTS, INC., in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

**COUNT IV**
**ELECTROLUX HOME PRODUCTS, INC.**
**NEGLIGENCE**

1.      That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.      That on and prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., was engaged in the business of designing, assembling, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, ELECTROLUX HOME PRODUCTS, INC., had, in fact, designed, assembled, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.      That on and prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., participated in the design, assembly, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and

FILED DATE: 11/19/2020 1:35 PM    2020L012403

FILED DATE: 11/19/2020 1:35 PM    2020L012403

foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer.

4.     That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., sold its Electrolux ball-hitch designed clothes dryers to Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and/or Defendant, SEARS, ROEBUCK AND CO., for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.     That on and prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., had a duty to use reasonable care in the design, assembly, preparation, manufacture, maintenance, advertisement, distribution, supply, sale and/or placement for sale of the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users, and had a duty to use reasonable care in placing into the stream of commerce, distributing, marketing, promoting, and selling of the product, and/or its appurtenances and component parts, that were not defective or unreasonably dangerous when put to use for which they were designed, manufactured, distributed and sold.

6.     That at the time, the Defendant, ELECTROLUX HOME PRODUCTS, INC., designed, assembled, prepared, manufactured, maintained, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances and component parts, the Defendant, ELECTROLUX HOME PRODUCTS, INC., knew or had reason to know of the danger associated with the Electrolux ball-hitch designed clothes dryer, and the manner and circumstance of Plaintiff DIANA M. ARNEY'S foreseeable use of the Electrolux ball-hitch designed clothes dryer, and all of its appurtenances and component parts.

7.     That the Defendant, ELECTROLUX HOME PRODUCTS, INC., breached its duty of care through one or more of the following acts or omissions:

14

FILED DATE: 11/19/2020 1:35 PM    2020L012403

(a)    Negligently and carelessly designed, manufactured and sold the subject dryer with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source of the clothes dryer so that lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(b)    Negligently and carelessly designed, manufactured and sold the subject dryer with a combustible plastic air duct directly below the drum and a combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum;

(c)    Negligently and carelessly designed, manufactured and sold the subject dryer so that particles of lint that accumulate and ignite within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and lower housing and/or the laundry load that has been dried in the drum;

(d)    Negligently and carelessly designed, manufactured and sold the subject dryer in a manner that accumulates lint in areas within the subject dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

(e)    Negligently and carelessly designed, manufactured and sold the subject dryer in a manner that lint accumulates in areas within the clothes dryer that are not serviceable by the user;

(f)    Negligently and carelessly designed, manufactured and sold the subject dryer with combustible plastic components, within which components it was foreseeable that lint would accumulate and ignite a fire when the particles of the lint came into contact with the clothes dryer's gas or electric heat source;

(g)    Negligently and carelessly designed, manufactured and sold the subject dryer without any way to contain a fire which may ignite;

(h)    Negligently and carelessly designed, manufactured and sold the subject dryer without conducting any fire risk studies on the design of the product;

(i)    Negligently and carelessly designed, manufactured and sold the subject dryer without conducting any lint accumulation studies during the design of the product;

(j)    Negligently and carelessly failed to advise or instruct appliance service personnel of a need to dismantle the subject dryer and to remove lint from behind the dryer drum and from within the combustible plastic air duct and blower housing;

15

FILED DATE: 11/19/2020 1:35 PM    2020L012403

(k)    Negligently and carelessly designed, manufactured and sold the subject dryer without adequate warning to the user that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(l)    Negligently and carelessly designed, manufactured and sold the subjects dryer without any warnings contained on the clothes dryer that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and /or blower housing, which areas are not visible to or serviceable by the user;

(m)    Negligently and carelessly designed, manufactured and sold the subject dryer with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the clothes dryer;

(n)    Negligently and carelessly designed, manufactured and sold the subject dryer with combustible plastic components which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

(o)    Negligently and carelessly designed, manufactured and sold the subject dryer with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use;

(p)    Negligently and carelessly designed, manufactured and sold the subject dryer in a defective manner because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

(q)    Negligently and carelessly designed, manufactured and sold the subject dryer with improper component parts, including, but not limited to materials or lubricant near or at the dryer's ball hitch and/or bearing located behind the drum;

(r)    Negligently and carelessly designed, manufactured and sold the subject dryer with improper component materials, including but not limited to the bearing that holds the dryer's drum in place, which can fail when subjected to lint accumulation;

(s)    Negligently and carelessly failed to advise the user of the necessity to remove the dryer drum of the subject dryer and remove all lint from behind the dryer drum;

(t)    Negligently and carelessly failed to issue a service bulletin on the subject dryer on the necessity to remove the dryer drum of the clothes dryer and remove all lint from behind the dryer drum;

(u)    Negligently and carelessly failed to provide a machine that was not an unreasonably dangerous product to an extent beyond that which would be contemplated by the

FILED DATE: 11/19/2020 1:35 PM    2020L012403

ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics;

(v)    Negligently and carelessly designed, manufactured, and sold the product, and/or its appurtenances and component parts, such that the Dryer was unreasonably dangerous;

(w)   Negligently and carelessly failed to design and manufacture a product that was not unreasonably dangerous;

(x)    Negligently and carelessly failed to provide safe and proper warning to consumers or users of the dangerous condition of said machine.

8.    That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

9.    That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

10.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

11.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to

17

FILED DATE: 11/19/2020 1:35 PM    2020L012403

suffer. Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, ELECTROLUX HOME PRODUCTS, INC., in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

## COUNT V
### TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS
### STRICT PRODUCT LIABILITY – DEFECTIVE DESIGN

1.      That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.      That on and prior to January 7, 2020, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, was engaged in the business of designing, assembling, installing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had, in fact, designed, assembled, installed, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.      That on and prior to January 7, 2020, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had a duty to design, assemble, install, prepare, manufacture,

18

maintain, advertise, distribute, supply, sell, and/or place for sale the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users.

4.      That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., designed, manufactured, and sold Electrolux ball-hitch designed clothes dryers to Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.      That the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had the right to examine its Kenmore line products that were manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC., to ensure they were designed and manufactured safely, and to approve product literature and warnings for Kenmore dryers manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC.

6.      That the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, held itself out as a manufacturer of the clothes dryer by allowing it be sold and advertised as a Kenmore dryer, with a Kenmore and/or Sears service manual, and a Kenmore and/or Sears warranty.

7.      That the aforementioned Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, participated in the design, assembly, installation, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer, in that:

(a)      the subject dryer was designed, manufactured and sold with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source so that

19

FILED DATE: 11/19/2020 1:35 PM    2020L012403

lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(b)     the subject dryer was designed, manufactured and sold with a combustible plastic air duct directly below the drum and combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum during its intended operation as a clothes dryer;

(c)     the subject dryer was designed, manufactured and sold so that particles of lint that accumulate and ignite behind the drum and within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and blower housing and/or the laundry load that has been dried in the drum;

(d)     the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

(e)     the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not serviceable by the homeowner;

(f)     the subject dryer was designed, manufactured and sold with combustible plastic components within which it was foreseeable that lint would accumulate and ignite;

(g)     the subject dryer was designed, manufactured and sold without adequate warning to the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(h)     the subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(i)     the subject dryer was designed, manufactured and sold without any warning contained on the clothes dryer regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(j)     the subject dryer was designed, manufactured and sold with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the

20

FILED DATE: 11/19/2020 1:35 PM    2020L012403

accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the subject dryer;

(k)     the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

(l)     the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, would not prevent the fire from escaping the dryer cabinet if they became ignited;

(m)     The subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk;

(n)     the subject dryer was designed, manufactured and sold in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

(o)     the subject dryer was designed, manufactured and sold with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use;

(p)     the subject dryer was designed and manufactured with improper component parts, including, but not limited to materials or lubricant near or at the dryer's ball hitch and/or bearing located behind the drum;

(q)     the subject dryer was designed and manufactured with improper component materials, including but not limited to the bearing that holds the dryer's drum in place, which can fail when subjected to lint accumulation; or

(r)     the subject dryer was an unreasonably dangerous product that is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics.

8.     That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was sold to the consumer by Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS.

21

FILED DATE: 11/19/2020 1:35 PM    2020L012403

9.     That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was installed by the agents, apparent agents, employees, and/or representatives of Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

10.     That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

11.     That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

12.     That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

13.     That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for,

22

FILED DATE: 11/19/2020 1:35 PM    2020L012403

large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

**COUNT VI**
**TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS**
**STRICT PRODUCT LIABILITY – DEFECTIVE MANUFACTURE**

1.      That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.      That on and prior to January 7, 2020, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, was engaged in the business of designing, assembling, installing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had, in fact, designed, assembled, installed, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.      That on and prior to January 7, 2020, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had a duty to design, assemble, install, prepare, manufacture, maintain, advertise, distribute, supply, sell, and/or place for sale the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users to an extent

23

FILED DATE: 11/19/2020 1:35 PM   2020L012403

beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.

4.    That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., designed, manufactured, and sold Electrolux ball-hitch designed clothes dryers to Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.    That the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had the right to examine its Kenmore line products that were manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC., to ensure they were designed and manufactured safely, and to approve product literature and warnings for Kenmore dryers manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC.

6.    That the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, held itself out as a manufacturer of the clothes dryer by allowing it be sold and advertised as a Kenmore dryer, with a Kenmore and/or Sears service manual, and a Kenmore and/or Sears warranty.

7.    That the aforementioned Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, participated in the design, assembly, installation, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer, in that:

(a)    the subject dryer was designed, manufactured and sold with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source so that

24

FILED DATE: 11/19/2020 1:35 PM    2020L012403

lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(b)    the subject dryer was designed, manufactured and sold with a combustible plastic air duct directly below the drum and combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum during its intended operation as a clothes dryer;

(c)    the subject dryer was designed, manufactured and sold so that particles of lint that accumulate and ignite behind the drum and within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and blower housing and/or the laundry load that has been dried in the drum;

(d)    the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

(e)    the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not serviceable by the homeowner;

(f)    the subject dryer was designed, manufactured and sold with combustible plastic components within which it was foreseeable that lint would accumulate and ignite;

(g)    the subject dryer was designed, manufactured and sold without adequate warning to the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(h)    the subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(i)    the subject dryers were designed, manufactured and sold without any warning contained on the clothes dryer regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(j)    the subject dryer was designed, manufactured and sold with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the

FILED DATE: 11/19/2020 1:35 PM    2020L012403

accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the subject dryer;

(k)    the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

(l)    the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, would not prevent the fire from escaping the dryer cabinet if they became ignited;

(m)    The subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk;

(n)    the subject dryer was designed, manufactured and sold in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

(o)    the subject dryer was designed, manufactured and sold with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use;

(p)    the subject dryer was designed and manufactured with improper component parts, including, but not limited to materials or lubricant near or at the dryer's ball hitch and/or bearing located behind the drum;

(q)    the subject dryer was designed and manufactured with improper component materials, including but not limited to the bearing that holds the dryer's drum in place, which can fail when subjected to lint accumulation; or

(r)    the subject dryer was an unreasonably dangerous product one that is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics.

8.    That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was sold to the consumer by Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS.

26

FILED DATE: 11/19/2020 1:35 PM    2020L012403

9.    That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was installed by the agents, apparent agents, employees, and/or representatives of Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

10.    That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

11.    That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

12.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

13.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for,

27

FILED DATE: 11/19/2020 1:35 PM    2020L012403

large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

**COUNT VII**
**TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS**
**STRICT PRODUCT LIABILITY – FAILURE TO WARN**

1.    That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.    That on and prior to January 7, 2020, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, was engaged in the business of designing, assembling, installing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had, in fact, designed, assembled, installed, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.    That on and prior to January 7, 2020, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had a duty to design, assemble, install, prepare, manufacture, maintain, advertise, distribute, supply, sell, and/or place for sale the aforesaid product and/or its

28

FILED DATE: 11/19/2020 1:35 PM    2020L012403

appurtenances and component parts so that it was not unreasonably dangerous to users, and a duty to warn of the dangerous propensities of said product.

4.    That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., designed, manufactured, and sold Electrolux ball-hitch designed clothes dryers to Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.    That the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had the right to examine its Kenmore line products that were manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC., to ensure they were designed and manufactured safely, and to approve product literature and warnings for Kenmore dryers manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC.

6.    That the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, held itself out as a manufacturer of the clothes dryer by allowing it be sold and advertised as a Kenmore dryer, with a Kenmore and/or Sears service manual, and a Kenmore and/or Sears warranty.

7.    That the aforementioned Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, participated in the design, assembly, installation, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer, in that:

(a)    That said product was unreasonably dangerous in that the Defendant failed to warn consumers or users of the dangerous condition of said machine;

29

FILED DATE: 11/19/2020 1:35 PM    2020L012403

(b)    That said product was unreasonably dangerous in that the Defendant failed to provide warnings on the machine that the machine was a dangerous fire hazard;

(c)    That said product was unreasonably dangerous in that the Defendant failed to provide adequate and proper warnings;

(d)    That said product was unreasonably dangerous in that the Defendant failed to provide a warning that lint could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(e)    That said product was unreasonably dangerous in that the Defendant failed to warn that lint could accumulate and ignite in areas that are not visible or serviceable to the user;

(f)    That said product was unreasonably dangerous in that the Defendant failed to warn that the product is not serviceable by the homeowner;

(g)    That said product was unreasonably dangerous in that the Defendant failed to warn the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(h)    That said product was unreasonably dangerous in that the Defendant failed to warn of the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(i)    That said product was unreasonably dangerous in that the Defendant failed to warn of the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(j)    That said product was unreasonably dangerous in that the Defendant failed to warn the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk.

FILED DATE: 11/19/2020 1:35 PM    2020L012403

8.      That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was sold to the consumer by Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS.

9.      That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

10.     That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was installed by the agents, apparent agents, employees, and/or representatives of Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

11.     That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

12.     That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

13.     That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and

31

FILED DATE: 11/19/2020 1:35 PM    2020L012403

affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

**COUNT VIII**
**TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS**
**NEGLIGENCE**

1.     That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.     That on and prior to January 7, 2020, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, was engaged in the business of designing, assembling, installing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had, in fact, designed, assembled, installed, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

32

FILED DATE: 11/19/2020 1:35 PM    2020L012403

3.     That on and prior to January 7, 2020, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, participated in the design, assembly, installation, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer.

4.     That on and prior to January 7, 2020, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had a duty to use reasonable care in the design, assembly, installation, preparation, manufacture, maintenance, advertisement, distribution, supply, sale and/or placement for sale of the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users, and had a duty to use reasonable care in placing into the stream of commerce, distributing, marketing, promoting, and selling of the product, and/or its appurtenances and component parts, that were not defective or unreasonably dangerous when put to use for which they were designed, manufactured, distributed and sold.

5.     That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., designed, manufactured, and sold Electrolux ball-hitch designed clothes dryers to Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, for Sears' Kenmore line of dryers, including the dryer involved in this case.

6.     That the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had the right to examine its Kenmore line products that were manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC., to ensure they were designed and manufactured

33

FILED DATE: 11/19/2020 1:35 PM    2020L012403

safely, and to approve product literature and warnings for Kenmore dryers manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC.

7.     That the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, held itself out as a manufacturer of the clothes dryer by allowing it be sold and advertised as a Kenmore dryer, with a Kenmore and/or Sears service manual, and a Kenmore and/or Sears warranty.

8.     That at the time, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, designed, assembled, installed, prepared, manufactured, maintained, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances and component parts, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, knew or had reason to know of the danger associated with the Electrolux ball-hitch designed clothes dryer, and the manner and circumstance of Plaintiff DIANA M. ARNEY'S foreseeable use of the Electrolux ball-hitch designed clothes dryer, and all of its appurtenances and component parts.

9.     That the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, breached its duty of care through one or more of the following acts or omissions:

(a)     Negligently and carelessly designed, manufactured and sold the subject dryer with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source of the clothes dryer so that lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(b)     Negligently and carelessly designed, manufactured and sold the subject dryer with a combustible plastic air duct directly below the drum and a combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum;

(c)     Negligently and carelessly designed, manufactured and sold the subject dryer so that particles of lint that accumulate and ignite within the heater pan can travel into

34

and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and lower housing and/or the laundry load that has been dried in the drum;

(d)   Negligently and carelessly designed, manufactured and sold the subject dryer in a manner that accumulates lint in areas within the subject dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

(e)   Negligently and carelessly designed, manufactured and sold the subject dryer in a manner that lint accumulates in areas within the clothes dryer that are not serviceable by the user;

(f)   Negligently and carelessly designed, manufactured and sold the subject dryer with combustible plastic components, within which components it was foreseeable that lint would accumulate and ignite a fire when the particles of the lint came into contact with the clothes dryer's gas or electric heat source;

(g)   Negligently and carelessly designed, manufactured and sold the subject dryer without any way to contain a fire which may ignite;

(h)   Negligently and carelessly designed, manufactured and sold the subject dryer without conducting any fire risk studies on the design of the product;

(i)   Negligently and carelessly designed, manufactured and sold the subject dryer without conducting any lint accumulation studies during the design of the product;

(j)   Negligently and carelessly failed to advise or instruct appliance service personnel of a need to dismantle the subject dryer and to remove lint from behind the dryer drum and from within the combustible plastic air duct and blower housing;

(k)   Negligently and carelessly designed, manufactured and sold the subject dryer without adequate warning to the user that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(l)   Negligently and carelessly designed, manufactured and sold the subjects dryer without any warnings contained on the clothes dryer that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and /or blower housing, which areas are not visible to or serviceable by the user;

(m)   Negligently and carelessly designed, manufactured and sold the subject dryer with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the clothes dryer;

35

FILED DATE: 11/19/2020 1:35 PM   2020L012403

FILED DATE: 11/19/2020 1:35 PM    2020L012403

(n)    Negligently and carelessly designed, manufactured and sold the subject dryer with combustible plastic components which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

(o)    Negligently and carelessly designed, manufactured and sold the subject dryer with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use

(p)    Negligently and carelessly designed, manufactured and sold the subject dryer in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

(q)    Negligently and carelessly designed, manufactured and sold the subject dryer with improper component parts, including, but not limited to materials or lubricant near or at the dryer's ball hitch and/or bearing located behind the drum;

(r)    Negligently and carelessly designed, manufactured and sold the subject dryer improper component materials, including but not limited to the bearing that holds the dryer's drum in place, which can fail when subjected to lint accumulation;

(s)    Negligently and carelessly failed to advise the user of the necessity to remove the dryer drum of the subject dryers and remove all lint from behind the dryer drum;

(t)    Negligently and carelessly failed to issue a service bulletin on the subject dryer on the necessity to remove the dryer drum of the clothes dryer and remove all lint from behind the dryer drum;

(u)    Negligently and carelessly failed to provide a machine that was not an unreasonably dangerous product to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics;

(v)    Negligently and carelessly designed, manufactured, and sold the product, and/or its appurtenances and component parts, such that the Dryer was unreasonably dangerous;

(w)    Negligently and carelessly failed to design and manufacture a product that was not unreasonably dangerous;

(x)    Negligently and carelessly failed to provide safe and proper warning to consumers or users of the dangerous condition of said machine;

(y)    Negligently and carelessly failed to properly and safely install the machine at the home of the consumer; or

36

FILED DATE: 11/19/2020 1:35 PM    2020L012403

(z)    Negligently and carelessly failed to install the machine with safe and proper venting;

10.    That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was sold to the consumer by Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS.

11.    That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was installed by the agents, apparent agents, employees, and/or representatives of Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

12.    That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

13.    That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

14.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

15.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff,

37

DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

**COUNT IX**
**SEARS, ROEBUCK AND CO.**
**STRICT PRODUCT LIABILITY – DEFECTIVE DESIGN**

1.     That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.     That on and prior to January 7, 2020, the Defendant, SEARS, ROEBUCK AND CO., was engaged in the business of designing, assembling, installing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, SEARS, ROEBUCK AND CO., had, in fact, designed, assembled, installed, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

FILED DATE: 11/19/2020 1:35 PM    2020L012403

FILED DATE: 11/19/2020 1:35 PM    2020L012403

3.    That on and prior to January 7, 2020, the Defendant, SEARS, ROEBUCK AND CO., had a duty to design, assemble, install, prepare, manufacture, maintain, advertise, distribute, supply, sell, and/or place for sale the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users.

4.    That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., designed, manufactured, and sold Electrolux ball-hitch designed clothes dryers to Defendant, SEARS, ROEBUCK AND CO., for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.    That the Defendant, SEARS, ROEBUCK AND CO., had the right to examine its Kenmore line products that were manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC., to ensure they were designed and manufactured safely, and to approve product literature and warnings for Kenmore dryers manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC.

6.    That the Defendant, SEARS, ROEBUCK AND CO., held itself out as a manufacturer of the clothes dryer by allowing it be sold and advertised as a Kenmore dryer, with a Kenmore and/or Sears service manual, and a Kenmore and/or Sears warranty.

7.    That the aforementioned Defendant, SEARS, ROEBUCK AND CO., participated in the design, assembly, installation, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer, in that:

39

FILED DATE: 11/19/2020 1:35 PM    2020L012403

(a)    the subject dryer was designed, manufactured and sold with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source so that lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(b)    the subject dryer was designed, manufactured and sold with a combustible plastic air duct directly below the drum and combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum during its intended operation as a clothes dryer;

(c)    the subject dryer was designed, manufactured and sold so that particles of lint that accumulate and ignite behind the drum and within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and blower housing and/or the laundry load that has been dried in the drum;

(d)    the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

(e)    the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not serviceable by the homeowner;

(f)    the subject dryer was designed, manufactured and sold with combustible plastic components within which it was foreseeable that lint would accumulate and ignite;

(g)    the subject dryer was designed, manufactured and sold without adequate warning to the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(h)    the subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(i)    the subject dryer was designed, manufactured and sold without any warning contained on the clothes dryer regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(j)    the subject dryer was designed, manufactured and sold with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the subject dryer;

(k)    the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

(l)    the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, would not prevent the fire from escaping the dryer cabinet if they became ignited;

(m)    The subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk;

(n)    the subject dryer was designed, manufactured and sold in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

(o)    the subject dryer was designed, manufactured and sold with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use;

(p)    the subject dryer was designed and manufactured with improper component parts, including, but not limited to materials or lubricant near or at the dryer's ball hitch and/or bearing located behind the drum;

(q)    the subject dryer was designed and manufactured with improper component materials, including but not limited to the bearing that holds the dryer's drum in place, which can fail when subjected to lint accumulation; or

(r)    the subject dryer was an unreasonably dangerous product that is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics.

8.    That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes

dryer was sold to the consumer by Defendant, SEARS, ROEBUCK AND CO.

FILED DATE: 11/19/2020 1:35 PM    2020L012403

FILED DATE: 11/19/2020 1:35 PM    2020L012403

9.      That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was installed by the agents, apparent agents, employees, and/or representatives of Defendant, SEARS, ROEBUCK AND CO. at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

10.     That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

11.     That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

12.     That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

13.     That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for,

42

FILED DATE: 11/19/2020 1:35 PM   2020L012403

large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, SEARS, ROEBUCK AND CO., in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

**COUNT X**
**SEARS, ROEBUCK AND CO.**
**STRICT PRODUCT LIABILITY – DEFECTIVE MANUFACTURE**

1.     That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.     That on and prior to January 7, 2020, the Defendant, SEARS, ROEBUCK AND CO., was engaged in the business of designing, assembling, installing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, SEARS, ROEBUCK AND CO., had, in fact, designed, assembled, installed, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.     That on and prior to January 7, 2020, the Defendant, SEARS, ROEBUCK AND CO., had a duty to design, assemble, install, prepare, manufacture, maintain, advertise, distribute, supply, sell, and/or place for sale the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users to an extent beyond that which would be

43

contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.

4.    That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., designed, manufactured, and sold Electrolux ball-hitch designed clothes dryers to Defendant, SEARS, ROEBUCK AND CO., for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.    That the Defendant, SEARS, ROEBUCK AND CO., had the right to examine its Kenmore line products that were manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC., to ensure they were designed and manufactured safely, and to approve product literature and warnings for Kenmore dryers manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC.

6.    That the Defendant, SEARS, ROEBUCK AND CO., held itself out as a manufacturer of the clothes dryer by allowing it be sold and advertised as a Kenmore dryer, with a Kenmore and/or Sears service manual, and a Kenmore and/or Sears warranty.

7.    That the aforementioned Defendant, SEARS, ROEBUCK AND CO., participated in the design, assembly, installation, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer, in that:

     (a)    the subject dryer was designed, manufactured and sold with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source so that lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source

44

FILED DATE: 11/19/2020 1:35 PM    2020L012403

of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(b)     the subject dryer was designed, manufactured and sold with a combustible plastic air duct directly below the drum and combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum during its intended operation as a clothes dryer;

(c)     the subject dryer was designed, manufactured and sold so that particles of lint that accumulate and ignite behind the drum and within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and blower housing and/or the laundry load that has been dried in the drum;

(d)     the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

(e)     the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not serviceable by the homeowner;

(f)     the subject dryer was designed, manufactured and sold with combustible plastic components within which it was foreseeable that lint would accumulate and ignite;

(g)     the subject dryer was designed, manufactured and sold without adequate warning to the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(h)     the subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(i)     the subject dryers were designed, manufactured and sold without any warning contained on the clothes dryer regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(j)     the subject dryer was designed, manufactured and sold with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the subject dryer;

45

FILED DATE: 11/19/2020 1:35 PM    2020L012403

FILED DATE: 11/19/2020 1:35 PM   2020L012403

(k)    the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

(l)    the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, would not prevent the fire from escaping the dryer cabinet if they became ignited;

(m)    The subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk;

(n)    the subject dryer was designed, manufactured and sold in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

(o)    the subject dryer was designed, manufactured and sold with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use;

(p)    the subject dryer was designed and manufactured with improper component parts, including, but not limited to materials or lubricant near or at the dryer's ball hitch and/or bearing located behind the drum;

(q)    the subject dryer was designed and manufactured with improper component materials, including but not limited to the bearing that holds the dryer's drum in place, which can fail when subjected to lint accumulation; or

(r)    the subject dryer was an unreasonably dangerous product one that is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics.

8.    That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was sold to the consumer by Defendant, SEARS, ROEBUCK AND CO.

9.    That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was installed by the agents, apparent agents, employees, and/or representatives of Defendant,

46

FILED DATE: 11/19/2020 1:35 PM   2020L012403

SEARS, ROEBUCK AND CO., at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

10.    That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

11.    That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

12.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

13.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

47

FILED DATE: 11/19/2020 1:35 PM   2020L012403

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, SEARS, ROEBUCK AND CO., in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

**COUNT XI**
**SEARS, ROEBUCK AND CO.**
**STRICT PRODUCT LIABILITY – FAILURE TO WARN**

1.     That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.     That on and prior to January 7, 2020, the Defendant, SEARS, ROEBUCK AND CO., was engaged in the business of designing, assembling, installing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, SEARS, ROEBUCK AND CO., had, in fact, designed, assembled, installed, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.     That on and prior to January 7, 2020, the Defendant, SEARS, ROEBUCK AND CO., had a duty to design, assemble, install, prepare, manufacture, maintain, advertise, distribute, supply, sell, and/or place for sale the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users, and a duty to warn of the dangerous propensities of said product.

4.     That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., designed, manufactured, and sold Electrolux ball-hitch designed clothes dryers to

48

FILED DATE: 11/19/2020 1:35 PM    2020L012403

Defendant, SEARS, ROEBUCK AND CO., for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.      That the Defendant, SEARS, ROEBUCK AND CO., had the right to examine its Kenmore line products that were manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC., to ensure they were designed and manufactured safely, and to approve product literature and warnings for Kenmore dryers manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC.

6.      That the Defendant, SEARS, ROEBUCK AND CO., held itself out as a manufacturer of the clothes dryer by allowing it be sold and advertised as a Kenmore dryer, with a Kenmore and/or Sears service manual, and a Kenmore and/or Sears warranty.

7.      That the aforementioned Defendant, SEARS, ROEBUCK AND CO., participated in the design, assembly, installation, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer, in that:

    (a)     That said product was unreasonably dangerous in that the Defendant failed to warn consumers or users of the dangerous condition of said machine;

    (b)     That said product was unreasonably dangerous in that the Defendant failed to provide warnings on the machine that the machine was a dangerous fire hazard;

    (c)     That said product was unreasonably dangerous in that the Defendant failed to provide adequate and proper warnings;

    (d)     That said product was unreasonably dangerous in that the Defendant failed to provide a warning that lint could migrate to and accumulate behind the

49

FILED DATE: 11/19/2020 1:35 PM    2020L012403

drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(e)  That said product was unreasonably dangerous in that the Defendant failed to warn that lint could accumulate and ignite in areas that are not visible or serviceable to the user;

(f)  That said product was unreasonably dangerous in that the Defendant failed to warn that the product is not serviceable by the homeowner;

(g)  That said product was unreasonably dangerous in that the Defendant failed to warn the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(h)  That said product was unreasonably dangerous in that the Defendant failed to warn of the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(i)  That said product was unreasonably dangerous in that the Defendant failed to warn of the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(j)  That said product was unreasonably dangerous in that the Defendant failed to warn the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk.

8.     That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was sold to the consumer by Defendant, SEARS, ROEBUCK AND CO.

9.     That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

50

FILED DATE: 11/19/2020 1:35 PM    2020L012403

10.    That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was installed by the agents, apparent agents, employees, and/or representatives of Defendant, SEARS, ROEBUCK AND CO., at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

11.    That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

12.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

13.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, SEARS, ROEBUCK AND CO., in a dollar amount to satisfy the jurisdictional

51

limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

## COUNT XII
## SEARS, ROEBUCK AND CO.
## NEGLIGENCE

1.    That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.    That on and prior to January 7, 2020, the Defendant, SEARS, ROEBUCK AND CO., was engaged in the business of designing, assembling, installing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, SEARS, ROEBUCK AND CO., had, in fact, designed, assembled, installed, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.    That on and prior to January 7, 2020, the Defendant, SEARS, ROEBUCK AND CO., participated in the design, assembly, installation, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer.

4.    That on and prior to January 7, 2020, the Defendant, SEARS, ROEBUCK AND CO., had a duty to use reasonable care in the design, assembly, installation, preparation, manufacture,

FILED DATE: 11/19/2020 1:35 PM    2020L012403

52

maintenance, advertisement, distribution, supply, sale and/or placement for sale of the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users, and had a duty to use reasonable care in placing into the stream of commerce, distributing, marketing, promoting, and selling of the product, and/or its appurtenances and component parts, that were not defective or unreasonably dangerous when put to use for which they were designed, manufactured, distributed and sold.

5.      That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., designed, manufactured, and sold Electrolux ball-hitch designed clothes dryers to Defendant, SEARS, ROEBUCK AND CO., for Sears' Kenmore line of dryers, including the dryer involved in this case.

6.      That the Defendant, SEARS, ROEBUCK AND CO., had the right to examine its Kenmore line products that were manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC., to ensure they were designed and manufactured safely, and to approve product literature and warnings for Kenmore dryers manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC.

7.      That the Defendant, SEARS, ROEBUCK AND CO., held itself out as a manufacturer of the clothes dryer by allowing it be sold and advertised as a Kenmore dryer, with a Kenmore and/or Sears service manual, and a Kenmore and/or Sears warranty.

8.      That at the time, the Defendant, SEARS, ROEBUCK AND CO., designed, assembled, installed, prepared, manufactured, maintained, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances and component parts, the Defendant, SEARS, ROEBUCK AND CO., knew or had reason to know of the danger associated with the Electrolux ball-hitch designed clothes dryer, and the manner and circumstance of Plaintiff DIANA

53

FILED DATE: 11/19/2020 1:35 PM    2020L012403

M. ARNEY'S foreseeable use of the Electrolux ball-hitch designed clothes dryer, and all of its

appurtenances and component parts.

    9.    That the Defendant, SEARS, ROEBUCK AND CO., breached its duty of care

through one or more of the following acts or omissions:

(a)    Negligently and carelessly designed, manufactured and sold the subject dryer with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source of the clothes dryer so that lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(b)    Negligently and carelessly designed, manufactured and sold the subject dryer with a combustible plastic air duct directly below the drum and a combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum;

(c)    Negligently and carelessly designed, manufactured and sold the subject dryer so that particles of lint that accumulate and ignite within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and lower housing and/or the laundry load that has been dried in the drum;

(d)    Negligently and carelessly designed, manufactured and sold the subject dryer in a manner that accumulates lint in areas within the subject dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

(e)    Negligently and carelessly designed, manufactured and sold the subject dryer in a manner that lint accumulates in areas within the clothes dryer that are not serviceable by the user;

(f)    Negligently and carelessly designed, manufactured and sold the subject dryer with combustible plastic components, within which components it was foreseeable that lint would accumulate and ignite a fire when the particles of the lint came into contact with the clothes dryer's gas or electric heat source;

(g)    Negligently and carelessly designed, manufactured and sold the subject dryer without any way to contain a fire which may ignite;

(h)    Negligently and carelessly designed, manufactured and sold the subject dryer without conducting any fire risk studies on the design of the product;

FILED DATE: 11/19/2020 1:35 PM   2020L012403

(i)    Negligently and carelessly designed, manufactured and sold the subject dryer without conducting any lint accumulation studies during the design of the product;

(j)    Negligently and carelessly failed to advise or instruct appliance service personnel of a need to dismantle the subject dryer and to remove lint from behind the dryer drum and from within the combustible plastic air duct and blower housing;

(k)    Negligently and carelessly designed, manufactured and sold the subject dryer without adequate warning to the user that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(l)    Negligently and carelessly designed, manufactured and sold the subjects dryer without any warnings contained on the clothes dryer that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and /or blower housing, which areas are not visible to or serviceable by the user;

(m)    Negligently and carelessly designed, manufactured and sold the subject dryer with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the clothes dryer;

(n)    Negligently and carelessly designed, manufactured and sold the subject dryer with combustible plastic components which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

(o)    Negligently and carelessly designed, manufactured and sold the subject dryer with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use

(p)    Negligently and carelessly designed, manufactured and sold the subject dryer in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

(q)    Negligently and carelessly designed, manufactured and sold the subject dryer with improper component parts, including, but not limited to materials or lubricant near or at the dryer's ball hitch and/or bearing located behind the drum;

(r)    Negligently and carelessly designed, manufactured and sold the subject dryer improper component materials, including but not limited to the bearing that holds the dryer's drum in place, which can fail when subjected to lint accumulation;

(s)    Negligently and carelessly failed to advise the user of the necessity to remove the dryer drum of the subject dryers and remove all lint from behind the dryer drum;

55

FILED DATE: 11/19/2020 1:35 PM    2020L012403

(t)     Negligently and carelessly failed to issue a service bulletin on the subject dryer on the necessity to remove the dryer drum of the clothes dryer and remove all lint from behind the dryer drum;

(u)     Negligently and carelessly failed to provide a machine that was not an unreasonably dangerous product to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics;

(v)     Negligently and carelessly designed, manufactured, and sold the product, and/or its appurtenances and component parts, such that the Dryer was unreasonably dangerous;

(w)    Negligently and carelessly failed to design and manufacture a product that was not unreasonably dangerous;

(x)     Negligently and carelessly failed to provide safe and proper warning to consumers or users of the dangerous condition of said machine;

(y)     Negligently and carelessly failed to properly and safely install the machine at the home of the consumer; or

(z)     Negligently and carelessly failed to install the machine with safe and proper venting;

10.     That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was sold to the consumer by Defendant, SEARS, ROEBUCK AND CO.

11.     That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was installed by the agents, apparent agents, employees, and/or representatives of Defendant, SEARS, ROEBUCK AND CO., at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

12.     That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

56

13.    That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

14.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

15.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, SEARS, ROEBUCK AND CO., in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

57

**COUNT XIII**
**ELECTROLUX HOME PRODUCTS, INC., TRANSFORM SR BRANDS LLC,**
**Individually and d/b/a SEARS, and DEFENDANT, SEARS, ROEBUCK AND CO.**
**JOINT VENTURE**

1.      That on and prior to January 7, 2020, the Defendants, ELECTROLUX HOME

PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and

SEARS, ROEBUCK AND CO., were engaged in a joint venture for the purpose of manufacturing,

designing, developing and selling a line of Electrolux ball-hitch designed clothes dryers that was

to be sold exclusively at Sears under the Sears' brand name, Kenmore.

2.      That on and prior to January 7, 2020, the Defendants, ELECTROLUX HOME

PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and

SEARS, ROEBUCK AND CO., associated to carry out a single, specific enterprise for profit.

3.      That on and prior to January 7, 2020, the Defendants, ELECTROLUX HOME

PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and

SEARS, ROEBUCK AND CO., associated to design, manufacture, and sell the Sears' Kenmore

line Electrolux ball-hitch designed clothes dryers for profit with the intent to engage in a joint

venture.

4.      That on and prior to January 7, 2020, the Defendants, ELECTROLUX HOME

PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and

SEARS, ROEBUCK AND CO., shared a community of interest, and contributed property,

finances, effort, skill, and/or knowledge to the joint venture.

5.      That on and prior to January 7, 2020, the Defendants, ELECTROLUX HOME

PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and

SEARS, ROEBUCK AND CO., shared propriety interest in the joint venture, shared the right to

govern the policy in connection therewith through shared control and management over the design,

58

FILED DATE: 11/19/2020 1:35 PM    2020L012403

FILED DATE: 11/19/2020 1:35 PM    2020L012403

manufacture, and sale of the Sears' Kenmore line Electrolux ball-hitch designed clothes dryers, and shared in profits and losses.

6.     That the Defendants, ELECTROLUX HOME PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and SEARS, ROEBUCK AND CO., jointly drafted, provided, reviewed, and/or approved, the manuals, instructions, and warnings on the machine, and were to jointly ensure that the manuals, instructions, and warnings were compliant with regulatory standards and were safe and proper.

7.     That the Defendants, ELECTROLUX HOME PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and SEARS, ROEBUCK AND CO., jointly designed, manufactured, tested, planned, inspected, approved, assembled, installed, prepared, maintained, advertised, distributed, supplied, and/or sold the Sears' Kenmore line Electrolux ball-hitch designed clothes dryers.

8.     That the Defendants, ELECTROLUX HOME PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and SEARS, ROEBUCK AND CO., are partners, and therefore, the knowledge possessed by one Defendant is imputed onto the other Defendant, including, but not limited to, knowledge of the personnel and processes related to the design, manufacturing, and knowledge of hazards of ball-hitch designed clothes dryers; knowledge that existing designs do not alleviate those hazards; knowledge that warnings in product literature are inadequate; and knowledge that reasonable alternative feasible design exists.

9.     That the Defendants, ELECTROLUX HOME PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and SEARS, ROEBUCK AND CO., are vicariously liable for each other's negligent acts and omissions as set forth in Counts I through XII above, incorporated and realleged as if fully set forth herein.

59

FILED DATE: 11/19/2020 1:35 PM    2020L012403

10.    That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

11.    That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

12.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

13.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendants, ELECTROLUX HOME PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and SEARS, ROEBUCK AND CO., in a dollar amount to satisfy

60

FILED DATE: 11/19/2020 1:35 PM    2020L012403

the jurisdictional limitation of this Court and such additional amounts as the jury and the Court

shall deem proper, and additionally costs of said suit.

_____
Attorneys for Plaintiff

Sean P. Murray
Julie L. Pustilnik
**TAXMAN, POLLOCK, MURRAY & BEKKERMAN, LLC**
225 W. Wacker, Suite 1650
Chicago, IL 60606
312-586-1700
smurray@tpmblegal.com
jpustilnik@tpmblegal.com

FILED
11/19/2020 1:35 P
DOROTHY BROW
CIRCUIT CLERK
COOK COUNTY, I
11200017

Attorney ID# 61090

FILED DATE: 11/19/2C20 1:35 PM  2020L012403

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

|  |  |  |
|---|---|---|
| DIANA M. ARNEY, | ) | |
|  | ) | Case No.: 2020L012403 |
| Plaintiff, | ) | |
| v. | ) | |
|  | ) | |
| ELECTROLUX HOME PRODUCTS, INC., | ) | |
| TRANSFORM SR BRANDS LLC, Individually | ) | |
| and d/b/a SEARS, and SEARS, ROEBUCK | ) | |
| AND CO. | ) | |
|  | ) | |
| Defendants. | | |

### ATTORNEY AFFIDAVIT

I, Sean P. Murray, being first duly sworn on oath, deposes and states that if I were called upon to testify, I would do so as follows:

1.      That I am an attorney at law licensed to practice in the State of Illinois.

2.      That I am an attorney with the law firm of TAXMAN, POLLOCK, MURRAY & BEKKERMAN, LLC, attorneys of record for the Plaintiff, DIANA M. ARNEY.

3.      That based upon the information available to me at the present time, the total amount of money damages sought in this matter exceeds $50,000.00.

4.      That this Affidavit is submitted in compliance with Supreme Court Rule 222(b).

FURTHER, Affiant, sayeth not.

_____
Sean P. Murray

SUBSCRIBED AND SWORN TO
before me this 19th day
of November 2020
_____
Notary Public

```
OFFICIAL SEAL
SHARI L ROSS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 05/16/21
```

**EXHIBIT B**

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
5/19/2021 1:27 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020L012403

13386504

FILED DATE: 5/19/2021 1:27 PM    2020L012403

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

DIANA M. ARNEY,                           )
                                          )
            Plaintiff,                    )
                                          )
      v.                                  )
                                          )    Case No.  20 L 012403
                                          )
ELECTORLUX HOME PRODUCTS, INC.,           )
TRANSFORM SR BRANDS LLC, Individually     )
and d/b/a SEARS, and SEARS, ROEBUCK AND   )
CO.,                                      )
                                          )
            Defendants.                   )

**DEFENDANT TRANSFORM SR BRAND LLC'S 735 ILCS 5/2-619.1**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

NOW COMES the Defendant **TRANSFORM SR BRANDS LLC** (hereinafter "Transform") and through its attorneys, O'HAGAN, MEYER LLC, and for its Motion to Dismiss pursuant to 735 ILCS 5/2-619.1 states as follows:

**INTRODUCTION**

Plaintiff brings this action against various Defendants for injuries allegedly sustained in an accident involving a dryer fire occurring on January 7, 2020. (Exhibit A, Plaintiff's Complaint). Plaintiff's alleges *inter alia* a product liability case arising from Electrolux/Sears/Transform's alleged design/manufacture/sale of the dryer at-issue. Sears filed for bankruptcy in 2018 and the bankruptcy proceedings are still pending. In 2019, Transform (with the approval of the US Bankruptcy Court) acquired some assets from Sears during its bankruptcy, but explicitly did not assume Sears' liabilities relating to the design/manufacture/sale of products prior to its acquisition of assets.

Plaintiff's Complaint should be dismissed pursuant to both 735 ILCS 5/2-615 and 735 ILCS 5/2-619(a)(9).  As it relates to 2-615, Plaintiff's Complaint does not allege facts as to the

1

FILED DATE: 5/19/2021 1:27 PM    2020L012403

actions taken by Transform as opposed to Sears or when the subject dryer was designed, manufactured, or even sold to Plaintiff. Such facts are material as Transform did not exist as a corporate entity until 2019. Alternatively, Plaintiff's Complaint should be dismissed with prejudice pursuant to 2-619(a)(9) as again, Transform did not exist until 2019 and if recovery is sought on a successor liability theory, Transform did not assume any of the relevant liabilities of Sears which form the basis of the present lawsuit.

## STANDARD OF LAW

735 ILCS 5/2-619.1 provides for combined motions to dismiss:

> Motions with respect to pleadings under Section 2-615, motions for involuntary dismissal or other relief under Section 2-619, and motions for summary judgment under Section 2-1005 may be filed together as a single motion in any combination. A combined motion, however, shall be in parts. Each part shall be limited to and shall specify that it is made under one of Sections 2-615, 2-619, or 2-1005. Each part shall also clearly show the points or grounds relied upon under the Section upon which it is based.

A motion to dismiss based on section 2–619 motion admits the legal sufficiency of the complaint and raises defects, defenses or other affirmative matter which appear on the face of the complaint or are established by external submissions which act to defeat the plaintiff's claim. *Schusse v. Pace Suburban Bus Div. of Reg'l Transp. Auth.*, 334 Ill. App. 3d 960, 963 (1st Dist. 2002).

A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face. 735 ILCS 5/2-615; *Marshall v. Burger King Corp.*, 222 Ill.2d 422, 429 (2006). §2-603 of the Illinois Code of Civil Procedure states, in relevant part, "all pleadings shall contain **a plain and concise statement of the pleader's cause of action**, counterclaim, defense, or reply." 735 ILCS 5/2-603(a) (emphasis added). Illinois is a fact pleading jurisdiction, and conclusions of law and conclusory factual allegations must be disregarded for the purposes of

2

FILED DATE: 5/19/2021 1:27 PM    2020L012403

a §2-615 Motion to Dismiss. *Chandler v. Illinois Central Railroad Co.*, 207 Ill.2d 331, 348 (2003); *Purmal v. Robert Wadington & Associates,* 354 Ill.App.3d 715, 720 (1st Dist. 2004). Additionally, when reviewing a motion to dismiss under §2-615, the Court deems admitted all well pleaded facts; however, **conclusions of law or allegations of fact unsupported by specific allegations are to be disregarded**. *Hume & Liechty Veterinary Association v. Hodes*, 259 Ill.App.3d 367, 369 (1st Dist. 1994) (emphasis added).

## BACKGROUND FACTS

Sears, Roebuck and Co. filed for Chapter 11 bankruptcy in the United States District Court, Southern District of New York on or about October 2018. Transform Holdco LLC[1] was not created until September 28, 2018. (Exhibit B, Delaware Corporation search for Transform Holdco LLC). Transform SR Brands, LLC is a subsidiary of Transform Holdco and was not created until January 23, 2019. (Exhibit C, Delaware Corporation search for Transform SR Brands, LLC). During the course of the Sears bankruptcy, Transform Holdco LLC purchased (with approval of the Bankruptcy Court) various assets from the Sears debtor. (Exhibit D, Order approving asset purchase). The subject dryer at-issue was purchased in November 2008. (Exhibit E, Records for sale of dryer); (Exhibit F, Affidavit of Julie Roman).

As of the date of this Motion, the Sears bankruptcy is still pending. As a result of this pending bankruptcy, Plaintiff voluntarily dismissed Sears on January 6, 2021. (Absent relief from the automatic stay extant under section 362 of the Bankruptcy Code, judicial actions and proceedings commenced against the debtor are "void ab initio." *Maritime Elec. Co., Inv. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir. 1991)). However, Plaintiff's suit continues against

---

[1] Transform SR LLC, Transform KM LLC, Transform SR Holdings LLC, and Transform SR Holding Management LLC are subsidiaries of Transform Holdco LLC. https://www.sec.gov/Archives/edgar/data/1548309/000154830919000045/sho8k-031819.htm

FILED DATE: 5/19/2021 1:27 PM    2020L012403

Transform under what appears to be a successor liability theory despite the fact that Transform did

not assume the relevant liabilities of Sears which would give rise to the instant lawsuit as evidenced

in the asset purchase agreement.

## ARGUMENT

I.    <u>Plaintiff's Complaint should be dismissed, or alternatively a more definite
statement made, as it lacks factual allegations regarding Transform's involvement
in the underlying product liability action (dismissal/amendment sought pursuant to
2-615).</u>

Plaintiff's Complaint at Law does not allege the date of purchase or date of manufacture

of the dryer at-issue. As elaborated in further detail below, date of purchase and/or date of

manufacture are material as the movant (Transform) did not exist as a corporate entity until 2019.

While Defendant has information or belief that the underlying transaction occurred sometime in

2008, it requests that the Complaint be amended to include factual allegations constituting a more

definite statement so that it can determine its defenses accordingly.

In addition, the Complaint lacks factual allegations as to the actions allegedly taken by

Transform as opposed to Sears. The Complaint contains identical boilerplate product liability

claims against both entities despite the fact that the Transform Defendant did not exist prior to

2019. Notably, the above information contained in the Background Facts section of the instant

motion is publicly available through filings either with the Federal Bankruptcy Court, Delaware

Corporation registry, or SEC filings. As such, it is not unreasonable to require Plaintiff to plead

some facts as to whether she is alleging that Transform directly played a role in the

design/manufacture/sale of the underlying dryer or if she is merely alleging some successor

liability arising from the purchase of various Sears assets in the course of the Sears bankruptcy.

Further, Transform should be dismissed pursuant to 2-615 because the Complaint does not

plead any facts as to how Transform purchased assets of Sears that encompassed the instant

4

FILED DATE: 5/19/2021 1:27 PM    2020L012403

lawsuit. The well-settled general rule is that a corporation that purchases the assets of another corporation is not liable for the debts or liabilities of the transferor corporation. *Vernon v. Schuster*, 179 Ill. 2d 338, 344–45 (1997). There are four exceptions to the general rule of successor corporate nonliability: (1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations. *Id.* The facts of *Vernon* are instructive. The plaintiff purchased a boiler from defendant, Diversey Heating (James Schuster was the sole proprietor). Schuster passed away and his son assumed business operations. Plaintiff argued that Diversey Heating failed to honor a warranty when the boiler malfunctioned after Schuster's death. The Illinois Supreme Court affirmed dismissal under 2-615 finding:

> We also note that plaintiffs did not allege that defendant falls within any of the other three exceptions to the rule of successor corporate nonliability. Plaintiffs did not allege that James Schuster and defendant agreed that defendant would assume James Schuster's liabilities and obligations. Plaintiffs did not allege and, logically, could not allege, that defendant consolidated or merged with James Schuster. Also, plaintiffs did not allege that James Schuster fraudulently transferred Diversey Heating to defendant to escape liability. We agree with the circuit court that, under the rule of successor corporate nonliability, defendant is not liable for the obligations of his father's sole proprietorship.

*Vernon v. Schuster*, 179 Ill. 2d 338, 349, 688 N.E.2d 1172, 1177 (1997)

Here, similar to the plaintiff in *Vernon*, Plaintiff fails to plead any of the above exceptions as to how Transform assumed the relevant liabilities of Sears which forms the basis of the instant lawsuit. For these reasons, Plaintiff's Complaint should be dismissed or alternatively amended (pursuant to 2-615) to include such relevant facts so that Defendant may be apprised of the nature of claims brought against it.

II.    <u>Plaintiff's Complaint should be dismissed as Transform did not exist at the time of the underlying allegations and otherwise did not assume the relevant liabilities of</u>

5

FILED DATE: 5/19/2021 1:27 PM    2020L012403

<u>Sears, Roebuck and Co. which form the basis of this lawsuit (dismissal sought
pursuant to 2-619(a)(9)).</u>

Transform should be dismissed pursuant to 2-619(a)(9) because (1) Transform did not exist
as an entity at the time of the alleged design/manufacture/sale of the underlying dryer and (2) the
asset purchase agreement clearly shows that Transform did not assume the asset purchase
agreement. See *Vernon v. Schuster*, 179 Ill. 2d 338, 344–45 (1997).

Here, the subject dryer was purchased in 2008. (Exhibit E, F). Axiomatically, any design,
manufacture, issuance of warnings, or sale would have occurred prior to 2008. Transform did not
exist at that time and was not formed until at least 10 years after that date. (Exhibit B and C,
Delaware Corporation Search results). Since Transform did not exist at the time of the underlying
allegations which form the basis of Plaintiff's lawsuit, Transform could not have possibly been
involved in the design/manufacture/sale of the subject dryer at-issue. As such, Transform should
be dismissed with prejudice on that basis alone.

In addition, the reasoning of *Vernon* should be extended under 2-619(a)(9) as the facts are
undisputable relating to successor liability. Specifically, the asset purchase agreement clearly
excluded purchase of liabilities relating to prior claims concerning design/manufacture/sale of
products. This agreement was approved by the United States Bankruptcy Court Southern District
of New York. (Exhibit D). Article II concerns the purchase and sale of acquired assets (Page 139).
Section 2.4 covers excluded liabilities; specifically, sections 2.4(a), (c), and (d) include the
following language:

Section 2.4 Excluded Liabilities.

None of Buyer, any Affiliate of Buyer or any Assignee shall assume, be deemed to
assume or become obligated hereunder in any way to pay or perform (whether as a
successor to any Seller or otherwise) any Liabilities of any Sellers or any of their
respective Affiliates of any kind or nature, known, unknown, contingent or
otherwise, whether direct or indirect, matured or unmatured, other than the

6

Assumed Liabilities, (the foregoing including the following, the "Excluded Liabilities") which shall include the following Liabilities:

(a) all Liabilities of the Seller or any of its Subsidiaries arising out of the ownership of the Acquired Assets or operation of the Business or the Acquired Assets prior to the Closing Date other than Cure Costs, Other Payables, the Assumed 503(b)(9) Claims, Severance Reimbursement Obligations, and Ordered Inventory;

(b) all Liabilities relating to the payment or performance of obligations arising solely out of facts or circumstances in existence prior to the Closing Date or Designation Assignment Date, as applicable, with respect to the Assigned Agreements;

(c) all Liabilities arising from or related to any claim, Action, arbitration, audit, hearing, investigation, suit, litigation or other proceeding (whether civil, criminal, administrative, investigative, or informal and whether pending or threatened or having any other status) arising out of the Assumed Liabilities, the Acquired Assets or the operation of the Business prior to the Closing Date or relating to facts, actions, omissions, circumstances or conditions existing, occurring or accruing prior to the Closing Date against any Seller or its Affiliates;

(d) **all Liabilities to the extent arising prior to the Closing Date or arising from or related to the operation of a Seller's business or any of Sellers' products or services, including any Liability relating to (i) design or manufacturing defects (whenever discovered) and (ii) warranties, product liability, safety or other Liability, in the cases of clauses (i) and (ii), relating to any product sold or manufactured by any Seller or any of its Affiliates;**

(Page 146 of the attached pdf, emphasis added).

Pursuant to the Federal Bankruptcy Order, the liabilities which form the basis of this present lawsuit were clearly excluded from purchase – namely section 2.4(d) for "Liabilities to the extent arising prior to the Closing Date or arising from or related to the operation of a Seller's business or any of Sellers' products or services, including any Liability relating to (i) design or manufacturing defects (whenever discovered) and (ii) warranties, product liability, safety or other Liability, in the cases of clauses (i) and (ii), relating to any product sold or manufactured by any Seller or any of its Affiliates."

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

In effect, Plaintiff's claim seeks recovery for alleged actions taken by Sears, Roebuck and Co. in the design/manufacture/sale of the dryer at issue. However, due to the fact that Sears is bankruptcy and under an automatic stay (per section 362(a) of Chapter 11 of the Bankruptcy Code), any such claims are barred. See *Maritime Elec. Co., Inv. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir. 1991) (Absent relief from the automatic stay extant under section 362 of the Bankruptcy Code, judicial actions and proceedings commenced against the debtor are "void ab initio.") Plaintiff's attempt to bypass the bankruptcy by litigating against the Transform entity which patently did not assume the liabilities of Sears entity relating to the subject dryer is improper and contrary to the Bankruptcy Code.

Further, based on the plain language of the Federal Order approving the asset purchases, none of the four *Vernon* exceptions are applicable. Again, the Asset Purchase Agreement expressly exempts purchases of liability and the proceedings and transfers occurred in a bankruptcy setting where there was no consolidation or merger. In addition, Transform was not a continuation of the seller as it was not a corporate continuation of Sears since Sears remains in bankruptcy. Finally, the transaction was not fraudulent as evidenced by the Federal Bankruptcy Court's approval Order. For these reasons, Transform should be dismissed with prejudice pursuant to Section 619(a)(9).

## CONCLUSION

Plaintiff's Complaint should be dismissed pursuant to 735 ILCS 5/2-615 as it lacks facts regarding the underlying transaction and involvement of the Transform vs. Sears entities as it relates to the design/manufacture/sale of the product. In addition, Plaintiff's Complaint should be dismissed with prejudice against Transform pursuant to 735 ILCS 5/2-619(a)(9) because it did not exist at the time of the underlying transactions (and therefore impossible to have taken part in the

design/manufacture/sale of the product) and otherwise did not assume the relevant debts/liabilities

which form the basis of this lawsuit of the bankrupt Sears entity.

O'HAGAN MEYER, LLC

By:     s/ Lucas Sun

_____

One of the Attorneys for Defendant
Transform SR Brands LLC

James P. Balog, Esq.
Lucas Sun, Esq.
O'Hagan Meyer, LLC
One East Wacker Drive, Suite 3400
Chicago, IL 60601
312-422-6100
jbalog@ohaganmeyer.com
lsun@ohaganmeyer.com

FILED
11/19/2020 1:35 P
DOROTHY BROW
CIRCUIT CLERK
COOK COUNTY, I
2020L012403

Attorney ID# 61090    11200017

FILED DATE: 5/19/2021 1:27 PM  2020L012403
FILED DATE: 11/19/2020 1:35 PM  2020L012403

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

DIANA M. ARNEY,                            )
                                           )
              Plaintiff,                   )    Case No.:  2020L012403
                                           )
v.                                         )
                                           )
ELECTROLUX HOME PRODUCTS, INC.,            )
TRANSFORM SR BRANDS LLC, Individually      )
and d/b/a SEARS, and SEARS, ROEBUCK        )
AND CO.,                                   )
                                           )
              Defendants.                  )

### COMPLAINT AT LAW

NOW COMES the Plaintiff, DIANA M. ARNEY, through her attorneys, TAXMAN,
POLLOCK, MURRAY & BEKKERMAN, LLC, and complaining of Defendants,
ELECTROLUX HOME PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and
d/b/a SEARS, and SEARS, ROEBUCK AND CO., alleges as follows:

### COUNT I
### ELECTROLUX HOME PRODUCTS, INC.
### STRICT PRODUCT LIABILITY – DEFECTIVE DESIGN

1.    That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint

was, a resident of the County of Cook and State of Illinois.

2.    That on and prior to January 7, 2020, the Defendant, ELECTROLUX HOME

PRODUCTS, INC., was engaged in the business of designing, assembling, preparing,

manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing

for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number

#41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior

to said date, the Defendant, ELECTROLUX HOME PRODUCTS, INC., had, in fact, designed,

1

FILED DATE: 5/19/2021 1:27 PM    2020L012403
FILED DATE: 11/19/2020 1:35 PM    2020L012403

assembled, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.    That on and prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., had a duty to design, assemble, prepare, manufacture, maintain, advertise, distribute, supply, sell, and/or place for sale the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users.

4.    That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., sold its Electrolux ball-hitch designed clothes dryers to Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and/or Defendant, SEARS, ROEBUCK AND CO., for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.    That the aforementioned Defendant, ELECTROLUX HOME PRODUCTS, INC., participated in the design, assembly, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer, in that:

(a)    the subject dryer was designed, manufactured and sold with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source so that lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(b)    the subject dryer was designed, manufactured and sold with a combustible plastic air duct directly below the drum and combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum during its intended operation as a clothes dryer;

2

FILED DATE: 5/19/2021 1:27 PM  2020L012403
FILED DATE: 11/19/2020 1:35 PM  2020L012403

(c)    the subject dryer was designed, manufactured and sold so that particles of lint that accumulate and ignite behind the drum and within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and blower housing and/or the laundry load that has been dried in the drum;

(d)    the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

(e)    the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not serviceable by the homeowner;

(f)    the subject dryer was designed, manufactured and sold with combustible plastic components within which it was foreseeable that lint would accumulate and ignite;

(g)    the subject dryer was designed, manufactured and sold without adequate warning to the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(h)    the subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(i)    the subject dryer was designed, manufactured and sold without any warning contained on the clothes dryer regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(j)    the subject dryer was designed, manufactured and sold with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the subject dryer;

(k)    the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

(l)    the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, would not prevent the fire from escaping the dryer cabinet if they became ignited;

3

FILED DATE: 5/19/2021 1:27 PM   2020L012403
FILED DATE: 11/19/2020 1:35 PM   2020L012403

(m)    The subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk;

(n)    the subject dryer was designed, manufactured and sold in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

(o)    the subject dryer was designed, manufactured and sold with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use;

(p)    the subject dryer was designed and manufactured with improper component parts, including, but not limited to materials or lubricant near or at the dryer's ball hitch and/or bearing located behind the drum;

(q)    the subject dryer was designed and manufactured with improper component materials, including but not limited to the bearing that holds the dryer's drum in place, which can fail when subjected to lint accumulation; or

(r)    the subject dryer was an unreasonably dangerous product that is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics.

6.    That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

7.    That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

8.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA

4

FILED DATE: 5/19/2021 1:27 PM   2020L012403
FILED DATE: 11/19/2020 1:35 PM   2020L012403

M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

9.     That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned.  Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer.  Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, ELECTROLUX HOME PRODUCTS, INC., in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

### COUNT II
### ELECTROLUX HOME PRODUCTS, INC.
### STRICT PRODUCT LIABILITY – DEFECTIVE MANUFACTURE

1.     That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.     That on and prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., was engaged in the business of designing, assembling, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number

FILED DATE: 5/19/2021 1:27 PM    2020L012403
FILED DATE: 11/19/2020 1:35 PM    2020L012403

#41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, ELECTROLUX HOME PRODUCTS, INC., had, in fact, designed, assembled, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.    That on and prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., had a duty to design, assemble, prepare, manufacture, maintain, advertise, distribute, supply, sell, and/or place for sale the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.

4.    That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., sold its Electrolux ball-hitch designed clothes dryers to Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and/or Defendant, SEARS, ROEBUCK AND CO., for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.    That the aforementioned Defendant, ELECTROLUX HOME PRODUCTS, INC., participated in the design, assembly, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer, in that:

    (a)    the subject dryer was designed, manufactured and sold with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source so that lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source

6

FILED DATE: 5/19/2021 1:27 PM  2020L012403
FILED DATE: 11/19/2020 1:35 PM  2020L012403

of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(b)     the subject dryer was designed, manufactured and sold with a combustible plastic air duct directly below the drum and combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum during its intended operation as a clothes dryer;

(c)     the subject dryer was designed, manufactured and sold so that particles of lint that accumulate and ignite behind the drum and within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and blower housing and/or the laundry load that has been dried in the drum;

(d)     the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

(e)     the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not serviceable by the homeowner;

(f)     the subject dryer was designed, manufactured and sold with combustible plastic components within which it was foreseeable that lint would accumulate and ignite;

(g)     the subject dryer was designed, manufactured and sold without adequate warning to the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(h)     the subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(i)     the subject dryer was designed, manufactured and sold without any warning contained on the clothes dryer regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(j)     the subject dryer was designed, manufactured and sold with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the subject dryer;

FILED DATE: 5/19/2021 1:27 PM    2020L012403
FILED DATE: 11/19/2020 1:35 PM    2020L012403

(k) the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

(l) the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, would not prevent the fire from escaping the dryer cabinet if they became ignited;

(m) The subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk;

(n) the subject dryer was designed, manufactured and sold in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

(o) the subject dryer was designed, manufactured and sold with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use;

(p) the subject dryer was designed and manufactured with improper component parts, including, but not limited to materials or lubricant near or at the dryer's ball hitch and/or bearing located behind the drum;

(q) the subject dryer was designed and manufactured with improper component materials, including but not limited to the bearing that holds the dryer's drum in place, which can fail when subjected to lint accumulation; or

(r) the subject dryers are an unreasonably dangerous product one that is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics.

6. That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

FILED DATE: 5/19/2021 1:27 PM    2020L012403
FILED DATE: 11/19/2020 1:35 PM    2020L012403

7.    That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

8.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

9.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned.  Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer.  Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, ELECTROLUX HOME PRODUCTS, INC., in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

FILED DATE: 5/19/2021 1:27 PM  2020L012403
FILED DATE: 11/19/2020 1:35 PM  2020L012403

## COUNT III
## ELECTROLUX HOME PRODUCTS, INC.
## STRICT PRODUCT LIABILITY – FAILURE TO WARN

1.      That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.      That on and prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., was engaged in the business of designing, assembling, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, ELECTROLUX HOME PRODUCTS, INC., had, in fact, designed, assembled, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.      That on and prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., had a duty to design, assemble, prepare, manufacture, maintain, advertise, distribute, supply, sell, and/or place for sale the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users, and a duty to warn of the dangerous propensities of said product.

4.      That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., sold its Electrolux ball-hitch designed clothes dryers to Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and/or Defendant, SEARS, ROEBUCK AND CO., for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.      That the aforementioned Defendant, ELECTROLUX HOME PRODUCTS, INC., participated in the design, assembly, preparation, manufacturing, maintaining, advertising,

10

FILED DATE: 5/19/2021 1:27 PM  2020L012403
FILED DATE: 11/19/2020 1:35 PM  2020L012403

distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer, in that:

 (a) That said product was unreasonably dangerous in that the Defendant failed to warn consumers or users of the dangerous condition of said machine;

 (b) That said product was unreasonably dangerous in that the Defendant failed to provide warnings on the machine that the machine was a dangerous fire hazard;

 (c) That said product was unreasonably dangerous in that the Defendant failed to provide adequate and proper warnings;

 (d) That said product was unreasonably dangerous in that the Defendant failed to provide a warning that lint could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

 (e) That said product was unreasonably dangerous in that the Defendant failed to warn that lint could accumulate and ignite in areas that are not visible or serviceable to the user;

 (f) That said product was unreasonably dangerous in that the Defendant failed to warn that the product is not serviceable by the homeowner;

 (g) That said product was unreasonably dangerous in that the Defendant failed to warn the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

 (h) That said product was unreasonably dangerous in that the Defendant failed to warn of the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

 (i) That said product was unreasonably dangerous in that the Defendant failed to warn of the known danger that lint can accumulate and ignite in areas

11

FILED DATE: 5/19/2021 1:27 PM   2020L012403
FILED DATE: 11/19/2020 1:35 PM   2020L012403

behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user; or

(j)   That said product was unreasonably dangerous in that the Defendant failed to warn the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk.

6.   That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

7.   That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

8.   That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

9.   That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for,

12

FILED DATE: 5/19/2021 1:27 PM  2020L012403
FILED DATE: 11/19/2020 1:35 PM  2020L012403

large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, ELECTROLUX HOME PRODUCTS, INC., in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

## COUNT IV
## ELECTROLUX HOME PRODUCTS, INC.
## NEGLIGENCE

1.      That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.      That on and prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., was engaged in the business of designing, assembling, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, ELECTROLUX HOME PRODUCTS, INC., had, in fact, designed, assembled, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.      That on and prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., participated in the design, assembly, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and

FILED DATE: 5/19/2021 1:27 PM   2020L012403
FILED DATE: 11/19/2020 1:35 PM   2020L012403

foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer.

4.      That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., sold its Electrolux ball-hitch designed clothes dryers to Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and/or Defendant, SEARS, ROEBUCK AND CO., for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.      That on and prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., had a duty to use reasonable care in the design, assembly, preparation, manufacture, maintenance, advertisement, distribution, supply, sale and/or placement for sale of the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users, and had a duty to use reasonable care in placing into the stream of commerce, distributing, marketing, promoting, and selling of the product, and/or its appurtenances and component parts, that were not defective or unreasonably dangerous when put to use for which they were designed, manufactured, distributed and sold.

6.      That at the time, the Defendant, ELECTROLUX HOME PRODUCTS, INC., designed, assembled, prepared, manufactured, maintained, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances and component parts, the Defendant, ELECTROLUX HOME PRODUCTS, INC., knew or had reason to know of the danger associated with the Electrolux ball-hitch designed clothes dryer, and the manner and circumstance of Plaintiff DIANA M. ARNEY'S foreseeable use of the Electrolux ball-hitch designed clothes dryer, and all of its appurtenances and component parts.

7.      That the Defendant, ELECTROLUX HOME PRODUCTS, INC., breached its duty of care through one or more of the following acts or omissions:

14

FILED DATE: 5/19/2021 1:27 PM  2020L012403
FILED DATE: 11/19/2020 1:35 PM  2020L012403

(a)    Negligently and carelessly designed, manufactured and sold the subject dryer with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source of the clothes dryer so that lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(b)    Negligently and carelessly designed, manufactured and sold the subject dryer with a combustible plastic air duct directly below the drum and a combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum;

(c)    Negligently and carelessly designed, manufactured and sold the subject dryer so that particles of lint that accumulate and ignite within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and lower housing and/or the laundry load that has been dried in the drum;

(d)    Negligently and carelessly designed, manufactured and sold the subject dryer in a manner that accumulates lint in areas within the subject dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

(e)    Negligently and carelessly designed, manufactured and sold the subject dryer in a manner that lint accumulates in areas within the clothes dryer that are not serviceable by the user;

(f)    Negligently and carelessly designed, manufactured and sold the subject dryer with combustible plastic components, within which components it was foreseeable that lint would accumulate and ignite a fire when the particles of the lint came into contact with the clothes dryer's gas or electric heat source;

(g)    Negligently and carelessly designed, manufactured and sold the subject dryer without any way to contain a fire which may ignite;

(h)    Negligently and carelessly designed, manufactured and sold the subject dryer without conducting any fire risk studies on the design of the product;

(i)    Negligently and carelessly designed, manufactured and sold the subject dryer without conducting any lint accumulation studies during the design of the product;

(j)    Negligently and carelessly failed to advise or instruct appliance service personnel of a need to dismantle the subject dryer and to remove lint from behind the dryer drum and from within the combustible plastic air duct and blower housing;

15

FILED DATE: 5/19/2021 1:27 PM   2020L012403
FILED DATE: 11/19/2020 1:35 PM   2020L012403

(k)     Negligently and carelessly designed, manufactured and sold the subject dryer
        without adequate warning to the user that lint can accumulate and ignite in areas
        behind the drum and within the combustible plastic air duct and/or blower housing,
        which areas are not visible to or serviceable by the user;

(l)     Negligently and carelessly designed, manufactured and sold the subjects dryer
        without any warnings contained on the clothes dryer that lint can accumulate and
        ignite in areas behind the drum and within the combustible plastic air duct and /or
        blower housing, which areas are not visible to or serviceable by the user;

(m)     Negligently and carelessly designed, manufactured and sold the subject dryer with
        front drum seals that failed to seal the drum from the surrounding cabinet and
        thereby promoted the accumulation of lint behind the drum and in the heater pan
        where it could be ignited by the gas or electric heat source of the clothes dryer;

(n)     Negligently and carelessly designed, manufactured and sold the subject dryer with
        combustible plastic components which Electrolux knew, or should have known,
        could ignite and permit the fire to escape the dryer cabinet;

(o)     Negligently and carelessly designed, manufactured and sold the subject dryer with
        a defective ball hitch and/or bearing, which Electrolux knew, or should have known
        would fail when subjected to lint accumulation during normal and foreseeable use;

(p)     Negligently and carelessly designed, manufactured and sold the subject dryer in a
        defective nature because the lubricant used at or near the ball hitch or ball bearing
        – which holds the dryer's drum in place – contained an improper lubricant that was
        or could be effected by lint accumulation and fail;

(q)     Negligently and carelessly designed, manufactured and sold the subject dryer with
        improper component parts, including, but not limited to materials or lubricant near
        or at the dryer's ball hitch and/or bearing located behind the drum;

(r)     Negligently and carelessly designed, manufactured and sold the subject dryer with
        improper component materials, including but not limited to the bearing that holds
        the dryer's drum in place, which can fail when subjected to lint accumulation;

(s)     Negligently and carelessly failed to advise the user of the necessity to remove the
        dryer drum of the subject dryer and remove all lint from behind the dryer drum;

(t)     Negligently and carelessly failed to issue a service bulletin on the subject dryer on
        the necessity to remove the dryer drum of the clothes dryer and remove all lint from
        behind the dryer drum;

(u)     Negligently and carelessly failed to provide a machine that was not an unreasonably
        dangerous product to an extent beyond that which would be contemplated by the

16

FILED DATE: 5/19/2021 1:27 PM   2020L012403
FILED DATE: 11/19/2020 1:35 PM   2020L012403

ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics;

(v)   Negligently and carelessly designed, manufactured, and sold the product, and/or its appurtenances and component parts, such that the Dryer was unreasonably dangerous;

(w)  Negligently and carelessly failed to design and manufacture a product that was not unreasonably dangerous;

(x)   Negligently and carelessly failed to provide safe and proper warning to consumers or users of the dangerous condition of said machine.

8.      That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

9.      That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

10.     That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

11.     That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to

17

FILED DATE: 5/19/2021 1:27 PM  2020L012403
FILED DATE: 11/19/2020 1:35 PM  2020L012403

suffer. Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, ELECTROLUX HOME PRODUCTS, INC., in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

## COUNT V
## TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS
## STRICT PRODUCT LIABILITY – DEFECTIVE DESIGN

1.    That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.    That on and prior to January 7, 2020, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, was engaged in the business of designing, assembling, installing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had, in fact, designed, assembled, installed, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.    That on and prior to January 7, 2020, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had a duty to design, assemble, install, prepare, manufacture,

FILED DATE: 5/19/2021 1:27 PM    2020L012403
FILED DATE: 11/19/2020 1:35 PM    2020L012403

maintain, advertise, distribute, supply, sell, and/or place for sale the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users.

4.    That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., designed, manufactured, and sold Electrolux ball-hitch designed clothes dryers to Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.    That the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had the right to examine its Kenmore line products that were manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC., to ensure they were designed and manufactured safely, and to approve product literature and warnings for Kenmore dryers manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC.

6.    That the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, held itself out as a manufacturer of the clothes dryer by allowing it be sold and advertised as a Kenmore dryer, with a Kenmore and/or Sears service manual, and a Kenmore and/or Sears warranty.

7.    That the aforementioned Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, participated in the design, assembly, installation, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer, in that:

(a)    the subject dryer was designed, manufactured and sold with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source so that

FILED DATE: 5/19/2021 1:27 PM    2020L012403
FILED DATE: 11/19/2020 1:35 PM    2020L012403

lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(b)     the subject dryer was designed, manufactured and sold with a combustible plastic air duct directly below the drum and combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum during its intended operation as a clothes dryer;

(c)     the subject dryer was designed, manufactured and sold so that particles of lint that accumulate and ignite behind the drum and within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and blower housing and/or the laundry load that has been dried in the drum;

(d)     the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

(e)     the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not serviceable by the homeowner;

(f)     the subject dryer was designed, manufactured and sold with combustible plastic components within which it was foreseeable that lint would accumulate and ignite;

(g)     the subject dryer was designed, manufactured and sold without adequate warning to the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(h)     the subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(i)     the subject dryer was designed, manufactured and sold without any warning contained on the clothes dryer regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(j)     the subject dryer was designed, manufactured and sold with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the

20

FILED DATE: 5/19/2021 1:27 PM   2020L012403
FILED DATE: 11/19/2020 1:35 PM   2020L012403

accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the subject dryer;

(k)    the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

(l)    the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, would not prevent the fire from escaping the dryer cabinet if they became ignited;

(m)    The subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk;

(n)    the subject dryer was designed, manufactured and sold in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

(o)    the subject dryer was designed, manufactured and sold with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use;

(p)    the subject dryer was designed and manufactured with improper component parts, including, but not limited to materials or lubricant near or at the dryer's ball hitch and/or bearing located behind the drum;

(q)    the subject dryer was designed and manufactured with improper component materials, including but not limited to the bearing that holds the dryer's drum in place, which can fail when subjected to lint accumulation; or

(r)    the subject dryer was an unreasonably dangerous product that is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics.

8.    That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was sold to the consumer by Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS.

FILED DATE: 5/19/2021 1:27 PM   2020L012403
FILED DATE: 11/19/2020 1:35 PM   2020L012403

9.      That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was installed by the agents, apparent agents, employees, and/or representatives of Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

10.     That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

11.     That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

12.     That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

13.     That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for,

22

FILED DATE: 5/19/2021 1:27 PM   2020L012403
FILED DATE: 11/19/2020 1:35 PM   2020L012403

large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

**COUNT VI**
**TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS**
**STRICT PRODUCT LIABILITY – DEFECTIVE MANUFACTURE**

1.    That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.    That on and prior to January 7, 2020, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, was engaged in the business of designing, assembling, installing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had, in fact, designed, assembled, installed, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.    That on and prior to January 7, 2020, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had a duty to design, assemble, install, prepare, manufacture, maintain, advertise, distribute, supply, sell, and/or place for sale the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users to an extent

FILED DATE: 5/19/2021 1:27 PM   2020L012403
FILED DATE: 11/19/2020 1:35 PM   2020L012403

beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.

4.    That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., designed, manufactured, and sold Electrolux ball-hitch designed clothes dryers to Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.    That the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had the right to examine its Kenmore line products that were manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC., to ensure they were designed and manufactured safely, and to approve product literature and warnings for Kenmore dryers manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC.

6.    That the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, held itself out as a manufacturer of the clothes dryer by allowing it be sold and advertised as a Kenmore dryer, with a Kenmore and/or Sears service manual, and a Kenmore and/or Sears warranty.

7.    That the aforementioned Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, participated in the design, assembly, installation, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer, in that:

    (a)    the subject dryer was designed, manufactured and sold with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source so that

24

FILED DATE: 5/19/2021 1:27 PM  2020L012403
FILED DATE: 11/19/2020 1:35 PM  2020L012403

lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(b)     the subject dryer was designed, manufactured and sold with a combustible plastic air duct directly below the drum and combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum during its intended operation as a clothes dryer;

(c)     the subject dryer was designed, manufactured and sold so that particles of lint that accumulate and ignite behind the drum and within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and blower housing and/or the laundry load that has been dried in the drum;

(d)     the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

(e)     the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not serviceable by the homeowner;

(f)     the subject dryer was designed, manufactured and sold with combustible plastic components within which it was foreseeable that lint would accumulate and ignite;

(g)     the subject dryer was designed, manufactured and sold without adequate warning to the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(h)     the subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas arc not visible to or serviceable by the user;

(i)     the subject dryers were designed, manufactured and sold without any warning contained on the clothes dryer regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(j)     the subject dryer was designed, manufactured and sold with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the

FILED DATE: 5/19/2021 1:27 PM  2020L012403
FILED DATE: 11/19/2020 1:35 PM  2020L012403

accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the subject dryer;

(k)    the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

(l)    the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, would not prevent the fire from escaping the dryer cabinet if they became ignited;

(m)    The subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk;

(n)    the subject dryer was designed, manufactured and sold in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

(o)    the subject dryer was designed, manufactured and sold with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use;

(p)    the subject dryer was designed and manufactured with improper component parts, including, but not limited to materials or lubricant near or at the dryer's ball hitch and/or bearing located behind the drum;

(q)    the subject dryer was designed and manufactured with improper component materials, including but not limited to the bearing that holds the dryer's drum in place, which can fail when subjected to lint accumulation; or

(r)    the subject dryer was an unreasonably dangerous product one that is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics.

8.    That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was sold to the consumer by Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS.

FILED DATE: 5/19/2021 1:27 PM    2020L012403
FILED DATE: 11/19/2020 1:35 PM    2020L012403

9.    That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was installed by the agents, apparent agents, employees, and/or representatives of Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

10.    That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

11.    That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

12.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

13.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for,

FILED DATE: 5/19/2021 1:27 PM    2020L012403
FILED DATE: 11/19/2020 1:35 PM    2020L012403

large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

### COUNT VII
### TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS
### STRICT PRODUCT LIABILITY – FAILURE TO WARN

1.    That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.    That on and prior to January 7, 2020, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, was engaged in the business of designing, assembling, installing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had, in fact, designed, assembled, installed, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.    That on and prior to January 7, 2020, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had a duty to design, assemble, install, prepare, manufacture, maintain, advertise, distribute, supply, sell, and/or place for sale the aforesaid product and/or its

28

FILED DATE: 5/19/2021 1:27 PM    2020L012403
FILED DATE: 11/19/2020 1:35 PM    2020L012403

appurtenances and component parts so that it was not unreasonably dangerous to users, and a duty to warn of the dangerous propensities of said product.

4.    That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., designed, manufactured, and sold Electrolux ball-hitch designed clothes dryers to Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.    That the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had the right to examine its Kenmore line products that were manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC., to ensure they were designed and manufactured safely, and to approve product literature and warnings for Kenmore dryers manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC.

6.    That the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, held itself out as a manufacturer of the clothes dryer by allowing it be sold and advertised as a Kenmore dryer, with a Kenmore and/or Sears service manual, and a Kenmore and/or Sears warranty.

7.    That the aforementioned Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, participated in the design, assembly, installation, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer, in that:

(a)    That said product was unreasonably dangerous in that the Defendant failed to warn consumers or users of the dangerous condition of said machine;

29

FILED DATE: 5/19/2021 1:27 PM  2020L012403
FILED DATE: 11/19/2020 1:35 PM  2020L012403

(b)     That said product was unreasonably dangerous in that the Defendant failed to provide warnings on the machine that the machine was a dangerous fire hazard;

(c)     That said product was unreasonably dangerous in that the Defendant failed to provide adequate and proper warnings;

(d)     That said product was unreasonably dangerous in that the Defendant failed to provide a warning that lint could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(e)     That said product was unreasonably dangerous in that the Defendant failed to warn that lint could accumulate and ignite in areas that are not visible or serviceable to the user;

(f)     That said product was unreasonably dangerous in that the Defendant failed to warn that the product is not serviceable by the homeowner;

(g)     That said product was unreasonably dangerous in that the Defendant failed to warn the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(h)     That said product was unreasonably dangerous in that the Defendant failed to warn of the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(i)     That said product was unreasonably dangerous in that the Defendant failed to warn of the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(j)     That said product was unreasonably dangerous in that the Defendant failed to warn the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk.

30

FILED DATE: 5/19/2021 1:27 PM  2020L012403
FILED DATE: 11/19/2020 1:35 PM  2020L012403

8.      That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was sold to the consumer by Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS.

9.      That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

10.     That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was installed by the agents, apparent agents, employees, and/or representatives of Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

11.     That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

12.     That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

13.     That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and

31

affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

**COUNT VIII**
**TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS**
**NEGLIGENCE**

1.      That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.      That on and prior to January 7, 2020, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, was engaged in the business of designing, assembling, installing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had, in fact, designed, assembled, installed, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

FILED DATE: 5/19/2021 1:27 PM  2020L012403
FILED DATE: 11/19/2020 1:35 PM  2020L012403

FILED DATE: 5/19/2021 1:27 PM   2020L012403
FILED DATE: 11/19/2020 1:35 PM   2020L012403

3.    That on and prior to January 7, 2020, the Defendant, TRANSFORM SR BRANDS

LLC, Individually and d/b/a SEARS, participated in the design, assembly, installation, preparation,

manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the

aforesaid product and/or its appurtenances and component parts, while said product, and/or its

appurtenances and component parts, was in an unreasonably dangerous condition with regard to

its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product,

and/or its appurtenances and component parts, left the control of the manufacturer.

4.    That on and prior to January 7, 2020, the Defendant, TRANSFORM SR BRANDS

LLC, Individually and d/b/a SEARS, had a duty to use reasonable care in the design, assembly,

installation, preparation, manufacture, maintenance, advertisement, distribution, supply, sale

and/or placement for sale of the aforesaid product and/or its appurtenances and component parts

so that it was not unreasonably dangerous to users, and had a duty to use reasonable care in placing

into the stream of commerce, distributing, marketing, promoting, and selling of the product, and/or

its appurtenances and component parts, that were not defective or unreasonably dangerous when

put to use for which they were designed, manufactured, distributed and sold.

5.    That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS,

INC., designed, manufactured, and sold Electrolux ball-hitch designed clothes dryers to

Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, for Sears'

Kenmore line of dryers, including the dryer involved in this case.

6.    That the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a

SEARS, had the right to examine its Kenmore line products that were manufactured by Defendant,

ELECTROLUX HOME PRODUCTS, INC., to ensure they were designed and manufactured

33

FILED DATE: 5/19/2021 1:27 PM   2020L012403
FILED DATE: 11/19/2020 1:35 PM   2020L012403

safely, and to approve product literature and warnings for Kenmore dryers manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC.

7.    That the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, held itself out as a manufacturer of the clothes dryer by allowing it be sold and advertised as a Kenmore dryer, with a Kenmore and/or Sears service manual, and a Kenmore and/or Sears warranty.

8.    That at the time, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, designed, assembled, installed, prepared, manufactured, maintained, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances and component parts, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, knew or had reason to know of the danger associated with the Electrolux ball-hitch designed clothes dryer, and the manner and circumstance of Plaintiff DIANA M. ARNEY'S foreseeable use of the Electrolux ball-hitch designed clothes dryer, and all of its appurtenances and component parts.

9.    That the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, breached its duty of care through one or more of the following acts or omissions:

(a)    Negligently and carelessly designed, manufactured and sold the subject dryer with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source of the clothes dryer so that lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(b)    Negligently and carelessly designed, manufactured and sold the subject dryer with a combustible plastic air duct directly below the drum and a combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum;

(c)    Negligently and carelessly designed, manufactured and sold the subject dryer so that particles of lint that accumulate and ignite within the heater pan can travel into

34

FILED DATE: 5/19/2021 1:27 PM  2020L012403
FILED DATE: 11/19/2020 1:35 PM  2020L012403

and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and lower housing and/or the laundry load that has been dried in the drum;

(d)     Negligently and carelessly designed, manufactured and sold the subject dryer in a manner that accumulates lint in areas within the subject dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

(e)     Negligently and carelessly designed, manufactured and sold the subject dryer in a manner that lint accumulates in areas within the clothes dryer that are not serviceable by the user;

(f)     Negligently and carelessly designed, manufactured and sold the subject dryer with combustible plastic components, within which components it was foreseeable that lint would accumulate and ignite a fire when the particles of the lint came into contact with the clothes dryer's gas or electric heat source;

(g)     Negligently and carelessly designed, manufactured and sold the subject dryer without any way to contain a fire which may ignite;

(h)     Negligently and carelessly designed, manufactured and sold the subject dryer without conducting any fire risk studies on the design of the product;

(i)     Negligently and carelessly designed, manufactured and sold the subject dryer without conducting any lint accumulation studies during the design of the product;

(j)     Negligently and carelessly failed to advise or instruct appliance service personnel of a need to dismantle the subject dryer and to remove lint from behind the dryer drum and from within the combustible plastic air duct and blower housing;

(k)     Negligently and carelessly designed, manufactured and sold the subject dryer without adequate warning to the user that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(l)     Negligently and carelessly designed, manufactured and sold the subjects dryer without any warnings contained on the clothes dryer that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and /or blower housing, which areas are not visible to or serviceable by the user;

(m)     Negligently and carelessly designed, manufactured and sold the subject dryer with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the clothes dryer;

FILED DATE: 5/19/2021 1:27 PM   2020L012403
FILED DATE: 11/19/2020 1:35 PM   2020L012403

(n)     Negligently and carelessly designed, manufactured and sold the subject dryer with combustible plastic components which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

(o)     Negligently and carelessly designed, manufactured and sold the subject dryer with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use

(p)     Negligently and carelessly designed, manufactured and sold the subject dryer in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

(q)     Negligently and carelessly designed, manufactured and sold the subject dryer with improper component parts, including, but not limited to materials or lubricant near or at the dryer's ball hitch and/or bearing located behind the drum;

(r)     Negligently and carelessly designed, manufactured and sold the subject dryer improper component materials, including but not limited to the bearing that holds the dryer's drum in place, which can fail when subjected to lint accumulation;

(s)     Negligently and carelessly failed to advise the user of the necessity to remove the dryer drum of the subject dryers and remove all lint from behind the dryer drum;

(t)     Negligently and carelessly failed to issue a service bulletin on the subject dryer on the necessity to remove the dryer drum of the clothes dryer and remove all lint from behind the dryer drum;

(u)     Negligently and carelessly failed to provide a machine that was not an unreasonably dangerous product to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics;

(v)     Negligently and carelessly designed, manufactured, and sold the product, and/or its appurtenances and component parts, such that the Dryer was unreasonably dangerous;

(w)     Negligently and carelessly failed to design and manufacture a product that was not unreasonably dangerous;

(x)     Negligently and carelessly failed to provide safe and proper warning to consumers or users of the dangerous condition of said machine;

(y)     Negligently and carelessly failed to properly and safely install the machine at the home of the consumer; or

FILED DATE: 5/19/2021 1:27 PM  2020L012403
FILED DATE: 11/19/2020 1:35 PM  2020L012403

(z)    Negligently and carelessly failed to install the machine with safe and proper venting;

10.    That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was sold to the consumer by Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS.

11.    That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was installed by the agents, apparent agents, employees, and/or representatives of Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

12.    That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

13.    That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

14.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

15.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff,

FILED DATE: 5/19/2021 1:27 PM    2020L012403
FILED DATE: 11/19/2020 1:35 PM    2020L012403

DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

### COUNT IX
### SEARS, ROEBUCK AND CO.
### STRICT PRODUCT LIABILITY – DEFECTIVE DESIGN

1.     That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.     That on and prior to January 7, 2020, the Defendant, SEARS, ROEBUCK AND CO., was engaged in the business of designing, assembling, installing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, SEARS, ROEBUCK AND CO., had, in fact, designed, assembled, installed, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

38

FILED DATE: 5/19/2021 1:27 PM  2020L012403
FILED DATE: 11/19/2020 1:35 PM  2020L012403

3.    That on and prior to January 7, 2020, the Defendant, SEARS, ROEBUCK AND CO., had a duty to design, assemble, install, prepare, manufacture, maintain, advertise, distribute, supply, sell, and/or place for sale the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users.

4.    That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., designed, manufactured, and sold Electrolux ball-hitch designed clothes dryers to Defendant, SEARS, ROEBUCK AND CO., for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.    That the Defendant, SEARS, ROEBUCK AND CO., had the right to examine its Kenmore line products that were manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC., to ensure they were designed and manufactured safely, and to approve product literature and warnings for Kenmore dryers manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC.

6.    That the Defendant, SEARS, ROEBUCK AND CO., held itself out as a manufacturer of the clothes dryer by allowing it be sold and advertised as a Kenmore dryer, with a Kenmore and/or Sears service manual, and a Kenmore and/or Sears warranty.

7.    That the aforementioned Defendant, SEARS, ROEBUCK AND CO., participated in the design, assembly, installation, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer, in that:

FILED DATE: 5/19/2021 1:27 PM    2020L012403
FILED DATE: 11/19/2020 1:35 PM    2020L012403

(a)    the subject dryer was designed, manufactured and sold with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source so that lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(b)    the subject dryer was designed, manufactured and sold with a combustible plastic air duct directly below the drum and combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum during its intended operation as a clothes dryer;

(c)    the subject dryer was designed, manufactured and sold so that particles of lint that accumulate and ignite behind the drum and within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and blower housing and/or the laundry load that has been dried in the drum;

(d)    the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

(e)    the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not serviceable by the homeowner;

(f)    the subject dryer was designed, manufactured and sold with combustible plastic components within which it was foreseeable that lint would accumulate and ignite;

(g)    the subject dryer was designed, manufactured and sold without adequate warning to the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(h)    the subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(i)    the subject dryer was designed, manufactured and sold without any warning contained on the clothes dryer regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

40

FILED DATE: 5/19/2021 1:27 PM  2020L012403
FILED DATE: 11/19/2020 1:35 PM  2020L012403

(j)    the subject dryer was designed, manufactured and sold with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the subject dryer;

(k)    the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

(l)    the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, would not prevent the fire from escaping the dryer cabinet if they became ignited;

(m)    The subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk;

(n)    the subject dryer was designed, manufactured and sold in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

(o)    the subject dryer was designed, manufactured and sold with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use;

(p)    the subject dryer was designed and manufactured with improper component parts, including, but not limited to materials or lubricant near or at the dryer's ball hitch and/or bearing located behind the drum;

(q)    the subject dryer was designed and manufactured with improper component materials, including but not limited to the bearing that holds the dryer's drum in place, which can fail when subjected to lint accumulation; or

(r)    the subject dryer was an unreasonably dangerous product that is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics.

8.    That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes

dryer was sold to the consumer by Defendant, SEARS, ROEBUCK AND CO.

41

FILED DATE: 5/19/2021 1:27 PM   2020L012403
FILED DATE: 11/19/2020 1:35 PM   2020L012403

9.     That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was installed by the agents, apparent agents, employees, and/or representatives of Defendant, SEARS, ROEBUCK AND CO. at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

10.     That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

11.     That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

12.     That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

13.     That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for,

FILED DATE: 5/19/2021 1:27 PM   2020L012403
FILED DATE: 11/19/2020 1:35 PM   2020L012403

large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, SEARS, ROEBUCK AND CO., in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

**COUNT X**
**SEARS, ROEBUCK AND CO.**
**STRICT PRODUCT LIABILITY – DEFECTIVE MANUFACTURE**

1.     That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.     That on and prior to January 7, 2020, the Defendant, SEARS, ROEBUCK AND CO., was engaged in the business of designing, assembling, installing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, SEARS, ROEBUCK AND CO., had, in fact, designed, assembled, installed, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.     That on and prior to January 7, 2020, the Defendant, SEARS, ROEBUCK AND CO., had a duty to design, assemble, install, prepare, manufacture, maintain, advertise, distribute, supply, sell, and/or place for sale the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users to an extent beyond that which would be

43

FILED DATE: 5/19/2021 1:27 PM  2020L012403
FILED DATE: 11/19/2020 1:35 PM  2020L012403

contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.

4.    That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., designed, manufactured, and sold Electrolux ball-hitch designed clothes dryers to Defendant, SEARS, ROEBUCK AND CO., for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.    That the Defendant, SEARS, ROEBUCK AND CO., had the right to examine its Kenmore line products that were manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC., to ensure they were designed and manufactured safely, and to approve product literature and warnings for Kenmore dryers manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC.

6.    That the Defendant, SEARS, ROEBUCK AND CO., held itself out as a manufacturer of the clothes dryer by allowing it be sold and advertised as a Kenmore dryer, with a Kenmore and/or Sears service manual, and a Kenmore and/or Sears warranty.

7.    That the aforementioned Defendant, SEARS, ROEBUCK AND CO., participated in the design, assembly, installation, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer, in that:

(a)    the subject dryer was designed, manufactured and sold with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source so that lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source

FILED DATE: 5/19/2021 1:27 PM  2020L012403
FILED DATE: 11/19/2020 1:35 PM  2020L012403

of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(b)    the subject dryer was designed, manufactured and sold with a combustible plastic air duct directly below the drum and combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum during its intended operation as a clothes dryer;

(c)    the subject dryer was designed, manufactured and sold so that particles of lint that accumulate and ignite behind the drum and within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and blower housing and/or the laundry load that has been dried in the drum;

(d)    the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

(e)    the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not serviceable by the homeowner;

(f)    the subject dryer was designed, manufactured and sold with combustible plastic components within which it was foreseeable that lint would accumulate and ignite;

(g)    the subject dryer was designed, manufactured and sold without adequate warning to the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(h)    the subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(i)    the subject dryers were designed, manufactured and sold without any warning contained on the clothes dryer regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(j)    the subject dryer was designed, manufactured and sold with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the subject dryer;

FILED DATE: 5/19/2021 1:27 PM   2020L012403
FILED DATE: 11/19/2020 1:35 PM   2020L012403

(k)     the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

(l)     the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, would not prevent the fire from escaping the dryer cabinet if they became ignited;

(m)    The subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk;

(n)     the subject dryer was designed, manufactured and sold in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

(o)     the subject dryer was designed, manufactured and sold with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use;

(p)     the subject dryer was designed and manufactured with improper component parts, including, but not limited to materials or lubricant near or at the dryer's ball hitch and/or bearing located behind the drum;

(q)     the subject dryer was designed and manufactured with improper component materials, including but not limited to the bearing that holds the dryer's drum in place, which can fail when subjected to lint accumulation; or

(r)     the subject dryer was an unreasonably dangerous product one that is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics.

8.     That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was sold to the consumer by Defendant, SEARS, ROEBUCK AND CO.

9.     That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was installed by the agents, apparent agents, employees, and/or representatives of Defendant,

FILED DATE: 5/19/2021 1:27 PM   2020L012403
FILED DATE: 11/19/2020 1:35 PM   2020L012403

SEARS, ROEBUCK AND CO., at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

10.    That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

11.    That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

12.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

13.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned.  Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer.  Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

47

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, SEARS, ROEBUCK AND CO., in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

## COUNT XI
## SEARS, ROEBUCK AND CO.
## STRICT PRODUCT LIABILITY – FAILURE TO WARN

1.      That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.      That on and prior to January 7, 2020, the Defendant, SEARS, ROEBUCK AND CO., was engaged in the business of designing, assembling, installing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, SEARS, ROEBUCK AND CO., had, in fact, designed, assembled, installed, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.      That on and prior to January 7, 2020, the Defendant, SEARS, ROEBUCK AND CO., had a duty to design, assemble, install, prepare, manufacture, maintain, advertise, distribute, supply, sell, and/or place for sale the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users, and a duty to warn of the dangerous propensities of said product.

4.      That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., designed, manufactured, and sold Electrolux ball-hitch designed clothes dryers to

48

FILED DATE: 5/19/2021 1:27 PM   2020L012403
FILED DATE: 11/19/2020 1:35 PM   2020L012403

Defendant, SEARS, ROEBUCK AND CO., for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.    That the Defendant, SEARS, ROEBUCK AND CO., had the right to examine its Kenmore line products that were manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC., to ensure they were designed and manufactured safely, and to approve product literature and warnings for Kenmore dryers manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC.

6.    That the Defendant, SEARS, ROEBUCK AND CO., held itself out as a manufacturer of the clothes dryer by allowing it be sold and advertised as a Kenmore dryer, with a Kenmore and/or Sears service manual, and a Kenmore and/or Sears warranty.

7.    That the aforementioned Defendant, SEARS, ROEBUCK AND CO., participated in the design, assembly, installation, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer, in that:

(a)    That said product was unreasonably dangerous in that the Defendant failed to warn consumers or users of the dangerous condition of said machine;

(b)    That said product was unreasonably dangerous in that the Defendant failed to provide warnings on the machine that the machine was a dangerous fire hazard;

(c)    That said product was unreasonably dangerous in that the Defendant failed to provide adequate and proper warnings;

(d)    That said product was unreasonably dangerous in that the Defendant failed to provide a warning that lint could migrate to and accumulate behind the

49

FILED DATE: 5/19/2021 1:27 PM    2020L012403
FILED DATE: 11/19/2020 1:35 PM    2020L012403

drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(e)     That said product was unreasonably dangerous in that the Defendant failed to warn that lint could accumulate and ignite in areas that are not visible or serviceable to the user;

(f)     That said product was unreasonably dangerous in that the Defendant failed to warn that the product is not serviceable by the homeowner;

(g)     That said product was unreasonably dangerous in that the Defendant failed to warn the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(h)     That said product was unreasonably dangerous in that the Defendant failed to warn of the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(i)     That said product was unreasonably dangerous in that the Defendant failed to warn of the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(j)     That said product was unreasonably dangerous in that the Defendant failed to warn the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk.

8.     That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was sold to the consumer by Defendant, SEARS, ROEBUCK AND CO.

9.     That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

FILED DATE: 5/19/2021 1:27 PM    2020L012403
FILED DATE: 11/19/2020 1:35 PM    2020L012403

10.    That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was installed by the agents, apparent agents, employees, and/or representatives of Defendant, SEARS, ROEBUCK AND CO., at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

11.    That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

12.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

13.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned.  Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer.  Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, SEARS, ROEBUCK AND CO., in a dollar amount to satisfy the jurisdictional

51

limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

## COUNT XII
## SEARS, ROEBUCK AND CO.
## NEGLIGENCE

1.    That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.    That on and prior to January 7, 2020, the Defendant, SEARS, ROEBUCK AND CO., was engaged in the business of designing, assembling, installing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, SEARS, ROEBUCK AND CO., had, in fact, designed, assembled, installed, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.    That on and prior to January 7, 2020, the Defendant, SEARS, ROEBUCK AND CO., participated in the design, assembly, installation, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer.

4.    That on and prior to January 7, 2020, the Defendant, SEARS, ROEBUCK AND CO., had a duty to use reasonable care in the design, assembly, installation, preparation, manufacture,

FILED DATE: 5/19/2021 1:27 PM    2020L012403
FILED DATE: 11/19/2020 1:35 PM    2020L012403

maintenance, advertisement, distribution, supply, sale and/or placement for sale of the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users, and had a duty to use reasonable care in placing into the stream of commerce, distributing, marketing, promoting, and selling of the product, and/or its appurtenances and component parts, that were not defective or unreasonably dangerous when put to use for which they were designed, manufactured, distributed and sold.

5.    That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., designed, manufactured, and sold Electrolux ball-hitch designed clothes dryers to Defendant, SEARS, ROEBUCK AND CO., for Sears' Kenmore line of dryers, including the dryer involved in this case.

6.    That the Defendant, SEARS, ROEBUCK AND CO., had the right to examine its Kenmore line products that were manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC., to ensure they were designed and manufactured safely, and to approve product literature and warnings for Kenmore dryers manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC.

7.    That the Defendant, SEARS, ROEBUCK AND CO., held itself out as a manufacturer of the clothes dryer by allowing it be sold and advertised as a Kenmore dryer, with a Kenmore and/or Sears service manual, and a Kenmore and/or Sears warranty.

8.    That at the time, the Defendant, SEARS, ROEBUCK AND CO., designed, assembled, installed, prepared, manufactured, maintained, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances and component parts, the Defendant, SEARS, ROEBUCK AND CO., knew or had reason to know of the danger associated with the Electrolux ball-hitch designed clothes dryer, and the manner and circumstance of Plaintiff DIANA

FILED DATE: 5/19/2021 1:27 PM    2020L012403
FILED DATE: 11/19/2020 1:35 PM    2020L012403

53

M. ARNEY'S foreseeable use of the Electrolux ball-hitch designed clothes dryer, and all of its appurtenances and component parts.

9.    That the Defendant, SEARS, ROEBUCK AND CO., breached its duty of care through one or more of the following acts or omissions:

(a)    Negligently and carelessly designed, manufactured and sold the subject dryer with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source of the clothes dryer so that lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(b)    Negligently and carelessly designed, manufactured and sold the subject dryer with a combustible plastic air duct directly below the drum and a combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum;

(c)    Negligently and carelessly designed, manufactured and sold the subject dryer so that particles of lint that accumulate and ignite within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and lower housing and/or the laundry load that has been dried in the drum;

(d)    Negligently and carelessly designed, manufactured and sold the subject dryer in a manner that accumulates lint in areas within the subject dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

(e)    Negligently and carelessly designed, manufactured and sold the subject dryer in a manner that lint accumulates in areas within the clothes dryer that are not serviceable by the user;

(f)    Negligently and carelessly designed, manufactured and sold the subject dryer with combustible plastic components, within which components it was foreseeable that lint would accumulate and ignite a fire when the particles of the lint came into contact with the clothes dryer's gas or electric heat source;

(g)    Negligently and carelessly designed, manufactured and sold the subject dryer without any way to contain a fire which may ignite;

(h)    Negligently and carelessly designed, manufactured and sold the subject dryer without conducting any fire risk studies on the design of the product;

FILED DATE: 5/19/2021 1:27 PM  2020L012403
FILED DATE: 11/19/2020 1:35 PM  2020L012403

54

FILED DATE: 5/19/2021 1:27 PM  2020L012403
FILED DATE: 11/19/2020 1:35 PM  2020L012403

(i)    Negligently and carelessly designed, manufactured and sold the subject dryer without conducting any lint accumulation studies during the design of the product;

(j)    Negligently and carelessly failed to advise or instruct appliance service personnel of a need to dismantle the subject dryer and to remove lint from behind the dryer drum and from within the combustible plastic air duct and blower housing;

(k)    Negligently and carelessly designed, manufactured and sold the subject dryer without adequate warning to the user that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(l)    Negligently and carelessly designed, manufactured and sold the subjects dryer without any warnings contained on the clothes dryer that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and /or blower housing, which areas are not visible to or serviceable by the user;

(m)    Negligently and carelessly designed, manufactured and sold the subject dryer with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the clothes dryer;

(n)    Negligently and carelessly designed, manufactured and sold the subject dryer with combustible plastic components which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

(o)    Negligently and carelessly designed, manufactured and sold the subject dryer with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use

(p)    Negligently and carelessly designed, manufactured and sold the subject dryer in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

(q)    Negligently and carelessly designed, manufactured and sold the subject dryer with improper component parts, including, but not limited to materials or lubricant near or at the dryer's ball hitch and/or bearing located behind the drum;

(r)    Negligently and carelessly designed, manufactured and sold the subject dryer improper component materials, including but not limited to the bearing that holds the dryer's drum in place, which can fail when subjected to lint accumulation;

(s)    Negligently and carelessly failed to advise the user of the necessity to remove the dryer drum of the subject dryers and remove all lint from behind the dryer drum;

FILED DATE: 5/19/2021 1:27 PM    2020L012403
FILED DATE: 11/19/2023 1:35 PM    2020L012403

(t)    Negligently and carelessly failed to issue a service bulletin on the subject dryer on the necessity to remove the dryer drum of the clothes dryer and remove all lint from behind the dryer drum;

(u)    Negligently and carelessly failed to provide a machine that was not an unreasonably dangerous product to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics;

(v)    Negligently and carelessly designed, manufactured, and sold the product, and/or its appurtenances and component parts, such that the Dryer was unreasonably dangerous;

(w)    Negligently and carelessly failed to design and manufacture a product that was not unreasonably dangerous;

(x)    Negligently and carelessly failed to provide safe and proper warning to consumers or users of the dangerous condition of said machine;

(y)    Negligently and carelessly failed to properly and safely install the machine at the home of the consumer; or

(z)    Negligently and carelessly failed to install the machine with safe and proper venting;

10.    That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was sold to the consumer by Defendant, SEARS, ROEBUCK AND CO.

11.    That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was installed by the agents, apparent agents, employees, and/or representatives of Defendant, SEARS, ROEBUCK AND CO., at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

12.    That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

56

FILED DATE: 5/19/2021 1:27 PM  2020L012403
FILED DATE: 11/19/2020 1:35 PM  2020L012403

13.    That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

14.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

15.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned.  Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer.  Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, SEARS, ROEBUCK AND CO., in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

57

FILED DATE: 5/19/2021 1:27 PM  2020L012403
FILED DATE: 11/19/2020 1:35 PM  2020L012403

## COUNT XIII
## ELECTROLUX HOME PRODUCTS, INC., TRANSFORM SR BRANDS LLC,
## Individually and d/b/a SEARS, and DEFENDANT, SEARS, ROEBUCK AND CO.
## JOINT VENTURE

1.      That on and prior to January 7, 2020, the Defendants, ELECTROLUX HOME

PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and

SEARS, ROEBUCK AND CO., were engaged in a joint venture for the purpose of manufacturing,

designing, developing and selling a line of Electrolux ball-hitch designed clothes dryers that was

to be sold exclusively at Sears under the Sears' brand name, Kenmore.

2.      That on and prior to January 7, 2020, the Defendants, ELECTROLUX HOME

PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and

SEARS, ROEBUCK AND CO., associated to carry out a single, specific enterprise for profit.

3.      That on and prior to January 7, 2020, the Defendants, ELECTROLUX HOME

PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and

SEARS, ROEBUCK AND CO., associated to design, manufacture, and sell the Sears' Kenmore

line Electrolux ball-hitch designed clothes dryers for profit with the intent to engage in a joint

venture.

4.      That on and prior to January 7, 2020, the Defendants, ELECTROLUX HOME

PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and

SEARS, ROEBUCK AND CO., shared a community of interest, and contributed property,

finances, effort, skill, and/or knowledge to the joint venture.

5.      That on and prior to January 7, 2020, the Defendants, ELECTROLUX HOME

PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and

SEARS, ROEBUCK AND CO., shared propriety interest in the joint venture, shared the right to

govern the policy in connection therewith through shared control and management over the design,

58

FILED DATE: 5/19/2021 1:27 PM  2020L012403
FILED DATE: 11/19/2020 1:35 PM  2020L012403

manufacture, and sale of the Sears' Kenmore line Electrolux ball-hitch designed clothes dryers, and shared in profits and losses.

6.    That the Defendants, ELECTROLUX HOME PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and SEARS, ROEBUCK AND CO., jointly drafted, provided, reviewed, and/or approved, the manuals, instructions, and warnings on the machine, and were to jointly ensure that the manuals, instructions, and warnings were compliant with regulatory standards and were safe and proper.

7.    That the Defendants, ELECTROLUX HOME PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and SEARS, ROEBUCK AND CO., jointly designed, manufactured, tested, planned, inspected; approved, assembled, installed, prepared, maintained, advertised, distributed, supplied, and/or sold the Sears' Kenmore line Electrolux ball-hitch designed clothes dryers.

8.    That the Defendants, ELECTROLUX HOME PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and SEARS, ROEBUCK AND CO., are partners, and therefore, the knowledge possessed by one Defendant is imputed onto the other Defendant, including, but not limited to, knowledge of the personnel and processes related to the design, manufacturing, and knowledge of hazards of ball-hitch designed clothes dryers; knowledge that existing designs do not alleviate those hazards; knowledge that warnings in product literature are inadequate; and knowledge that reasonable alternative feasible design exists.

9.    That the Defendants, ELECTROLUX HOME PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and SEARS, ROEBUCK AND CO., are vicariously liable for each other's negligent acts and omissions as set forth in Counts I through XII above, incorporated and realleged as if fully set forth herein.

FILED DATE: 5/19/2021 1:27 PM    2020L012403
FILED DATE: 11/19/2020 1:35 PM    2020L012403

10.    That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

11.    That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

12.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

13.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendants, ELECTROLUX HOME PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and SEARS, ROEBUCK AND CO., in a dollar amount to satisfy

FILED DATE: 5/19/2021 1:27 PM   2020L012403
FILED DATE: 11/19/2020 1:35 PM   2020L012403

the jurisdictional limitation of this Court and such additional amounts as the jury and the Court

shall deem proper, and additionally costs of said suit.

_____
Attorneys for Plaintiff

Sean P. Murray
Julie L. Pustilnik
**TAXMAN, POLLOCK, MURRAY & BEKKERMAN, LLC**
225 W. Wacker, Suite 1650
Chicago, IL 60606
312-586-1700
smurray@tpmblegal.com
jpustilnik@tpmblegal.com

11/19/2020 1:35 P
DOROTHY BROW
CIRCUIT CLERK
COOK COUNTY, I

Attorney ID# 61090 11200017

FILED DATE: 5/19/2021 1:27 PM  2020L012403
FILED DATE: 11/19/2020 1:35 PM  2020L012403

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| DIANA M. ARNEY, | ) |
| Plaintiff, | ) Case No.: 2020L012403 |
| v. | ) |
| ELECTROLUX HOME PRODUCTS, INC., | ) |
| TRANSFORM SR BRANDS LLC, Individually | ) |
| and d/b/a SEARS, and SEARS, ROEBUCK | ) |
| AND CO. | ) |
| Defendants. | ) |

### ATTORNEY AFFIDAVIT

I, Sean P. Murray, being first duly sworn on oath, deposes and states that if I were called upon to testify, I would do so as follows:

1. That I am an attorney at law licensed to practice in the State of Illinois.

2. That I am an attorney with the law firm of TAXMAN, POLLOCK, MURRAY & BEKKERMAN, LLC, attorneys of record for the Plaintiff, DIANA M. ARNEY.

3. That based upon the information available to me at the present time, the total amount of money damages sought in this matter exceeds $50,000.00.

4. That this Affidavit is submitted in compliance with Supreme Court Rule 222(b).

FURTHER, Affiant, sayeth not.

_____
Sean P. Murray

SUBSCRIBED AND SWORN TO
before me this 19th day
of November 2020.

_____
Notary Public

OFFICIAL SEAL
SHARI L ROSS
NOTARY PUBLIC · STATE OF ILLINOIS
MY COMMISSION EXPIRES 05/16/21

**Department of State: Division of Corporations**

Allowable Characters

| HOME | Entity Details |
|---|---|

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| File Number: | **7077051** | Incorporation Date / Formation Date: | **9/28/2018** (mm/dd/yyyy) |
|---|---|---|---|
| Entity Name: | **TRANSFORM HOLDCO LLC** | | |
| Entity Kind: | **Limited Liability Company** | Entity Type: | **General** |
| Residency: | **Domestic** | State: | **DELAWARE** |

**REGISTERED AGENT INFORMATION**

| Name: | **THE CORPORATION TRUST COMPANY** | | |
|---|---|---|---|
| Address: | **CORPORATION TRUST CENTER 1209 ORANGE ST** | | |
| City: | **WILMINGTON** | County: | **New Castle** |
| State: | **DE** | Postal Code: | **19801** |
| Phone: | **302-658-7581** | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status  ○ Status,Tax & History Information

[ Submit ]

[ View Search Results ]          [ New Entity Search ]

For help on a particular field click on the Field Tag to take you to the help area.

site map  |  privacy  |  about this site  |  contact us  |  translate  |  delaware.gov

Delaware.gov

Governor | General Assembly | Courts | Elected Officials | State Agencies

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Department of State: Division of Corporations**

Allowable Characters

**HOME**

| Entity Details |
| --- |

THIS IS NOT A STATEMENT OF GOOD STANDING

| | | | |
| --- | --- | --- | --- |
| File Number: | **7249897** | Incorporation Date / Formation Date: | **1/23/2019** (mm/dd/yyyy) |
| Entity Name: | **TRANSFORM SR BRANDS LLC** | | |
| Entity Kind: | **Limited Liability Company** | Entity Type: | **General** |
| Residency: | **Domestic** | State: | **DELAWARE** |

**REGISTERED AGENT INFORMATION**

| | | | |
| --- | --- | --- | --- |
| Name: | **THE CORPORATION TRUST COMPANY** | | |
| Address: | **CORPORATION TRUST CENTER 1209 ORANGE ST** | | |
| City: | **WILMINGTON** | County: | **New Castle** |
| State: | **DE** | Postal Code: | **19801** |
| Phone: | **302-658-7581** | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ◯ Status ◯ Status,Tax & History Information

Submit

View Search Results      New Entity Search

For help on a particular field click on the Field Tag to take you to the help area.

site map | privacy | about this site | contact us | translate | delaware.gov

FILED DATE: 5/19/2021 1:27 PM    2020L012403

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re                               :        **Chapter 11**

                                  :

**SEARS HOLDINGS CORPORATION,** *et al.,*     :        **Case No. 18-23538 (RDD)**

                                  :

                **Debtors.**[1]          :        **(Jointly Administered)**

------------------------------------------------------------x

## ORDER (I) APPROVING THE ASSET PURCHASE AGREEMENT AMONG SELLERS AND BUYER, (II) AUTHORIZING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS, AND <u>LEASES IN CONNECTION THEREWITH AND (IV) GRANTING RELATED RELIEF</u>

Upon the motion, dated November 1, 2018 (Docket No. 429) (the "<u>Sale Motion</u>"),[2] filed

by the above-captioned debtors and debtors in possession (the "<u>Debtors</u>") seeking, among other

things, the entry of an order (the "<u>Sale Order</u>"), pursuant to sections 105, 363 and 365 of the United

States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "<u>Bankruptcy Code</u>"), Rules 2002, 6004,

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2]    Capitalized terms used herein but not otherwise defined have the meanings given to them in the Asset Purchase Agreement (as defined below) or, if not defined in the Asset Purchase Agreement, the meanings given to them in the Sale Motion.

6006, 9007, and 9008 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and

Rules 6004-1, 6005-1 and 6006-1 of the Local Bankruptcy Rules for the United States Bankruptcy

Court for the Southern District of New York (the "<u>Local Rules</u>"), authorizing and approving the

sale of the Acquired Assets and the assumption and assignment of certain executory contracts and

unexpired leases of the Debtors in connection therewith; and the Court having entered this Court's

prior order, dated November 19, 2018 (Docket No. 816) including the schedule as revised by the

*Global Bidding Procedures Process Letter* filed with the Bankruptcy Court on November 21, 2018

(Docket No. 862) (together, the "<u>Bidding Procedures Order</u>"), approving competitive bidding

procedures for the Acquired Assets (the "<u>Bidding Procedures</u>") and granting certain related relief;

and Transform Holdco LLC (the "<u>Buyer</u>") having submitted the highest or otherwise best bid for

the Acquired Assets, as reflected in the Asset Purchase Agreement (as defined below); and the

Court having conducted a hearing on the Sale Motion (the "<u>Hearing</u>" or the "<u>Sale Hearing</u>")

commenced on February 4, 2019, at which time all interested parties were offered an opportunity

to be heard with respect to the Sale Motion; and the Court having reviewed and considered (i) the

Sale Motion and the exhibits thereto, (ii) the Asset Purchase Agreement, dated as of January 17,

2019 by and among the Buyer and the Sellers party thereto (including each Debtor and certain

other subsidiaries of Sears Holdings Corporation, the ("<u>Sellers</u>") (as may be amended, restated,

amended and restated from time to time, including pursuant to that certain Amendment No. 1 to

Asset Purchase Agreement, by and among the Buyer and the Sellers, the "<u>Asset Purchase</u>

<u>Agreement</u>"),[3] a copy of which is attached hereto as <u>Exhibit B</u>, whereby the Sellers have agreed,

subject to Court approval, among other things, to sell the Acquired Assets to the Buyer, including,

---

[3] Amendment No. 1 to the Asset Purchase Agreement was filed in substantially final form on February 7, 2019 at Docket No. 2456 (the "**APA Amendment**"). Upon closing and execution the Debtors will file the executed version of the APA Amendment with the Court.

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

without limitation, (x) the Assigned Agreements (including any Additional Contracts) that will be assumed and assigned to Buyer or designated, as applicable, each on the terms and conditions set forth in the Asset Purchase Agreement and (y) designation rights ("Designation Rights") for certain Designatable Leases (the sale of such Acquired Assets, collectively, the "Sale Transaction"), (iii) the Bidding Procedures Order and the record of the hearing before the Court on November 15, 2018 at which the Bidding Procedures Order was approved, (iv) the ability of the Buyer to submit its Credit Bid pursuant to Asset Purchase Agreement section 3.1(b) (the "Credit Bid"), (iv) the objections to the Sale Motion that have not been resolved or adjourned and all related pleadings, and (v) the record of the evidentiary Hearing before the Court commenced on February 4, 2019, at which the Court authorized the Buyer's Credit Bid (as approved pursuant to this Sale Order), including the arguments and representations of counsel made, and the evidence proffered or adduced, at the Hearing; and it appearing that due and sufficient notice of the Sale Motion, the Asset Purchase Agreement, the Bidding Procedures Order, and the form of this order (the "Sale Order") have been provided in accordance with the Bidding Procedures Order and the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 (Docket No. 405) (the "Amended Case Management Order"); and, except as otherwise provided for herein, all objections to the Sale Motion having been withdrawn, resolved, or overruled as provided in this Sale Order; and, after due deliberation and for the reasons stated in the Court's bench ruling at the Hearing, it appearing that the relief granted herein is in the best interests of the Debtors, their estates and creditors and all parties in interest in these chapter 11 cases; and good and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**

A.     **Fed. R. Bankr. P. 7052**.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  The Court's findings shall also include any oral findings of fact and conclusions of law made by the Court during or at the conclusion of the Sale Hearing.  This Sale Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

B.     **Jurisdiction and Venue**.  This Court has jurisdiction over the Sale Motion, the Sale Transaction and the property of the Debtors' estates, including the Acquired Assets, pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b), and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) that this Court can decide by a final order under the United States Constitution.  Venue of these chapter 11 cases and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.     **Statutory and Rule Predicates**.  The statutory and other legal predicates for the relief sought in the Sale Motion are sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014, Local Rules 6004-1, 6005-1 and 6006-1, and the Amended Guidelines for the Conduct of Asset Sales, Approved by Administrative Order Number 383 in the United States Bankruptcy Court for the Southern District of New York.

D.     **Final Order**.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  The Debtors have demonstrated compelling circumstances and a good,

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

sufficient, and sound business purpose and justification for the immediate approval and
consummation of the Sale Transaction as contemplated by the Asset Purchase Agreement.  In the
absence of a stay pending appeal, Buyer, being a good faith purchaser under section 363(m) of the
Bankruptcy Code, may close the sale contemplated by the Asset Purchase Agreement at any time
after entry of this Sale Order and shall not be subject to the stay provided by Bankruptcy Rules
6004(h) and 6006(d).

E.    **Notice and Opportunity to Object**.  Actual written notice of, and a fair and
reasonable opportunity to object to and to be heard with respect to the Sale Motion, the
Sale Transaction, the sale of the Acquired Assets that are owned by the Debtors free and clear of
any Claims (as defined below), the assumption and assignment of the Assigned Agreements, the
Auction, the Bidding Procedures, and the relief requested in the Sale Motion has been given, as
required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Amended Case
Management Order, and the Bidding Procedures Order.

F.    **Title to the Acquired Assets**.  The Acquired Assets that are owned by the Debtors
constitute property of the Debtors' estates and good title is vested in the Debtors' estates within
the meaning of section 541(a) of the Bankruptcy Code.  Except as provided in the Asset Purchase
Agreement, the Debtors are the sole and rightful owners of such Acquired Assets that are owned
by the Debtors with all right, title and interest to transfer and convey the Acquired Assets to the
Buyer, and no other person has any ownership right, title, or interests therein.

G.    **Sound Business Purpose**.  The Debtors have demonstrated good, sufficient, and
sound business purposes and justifications for approval of and entry into the Sale Motion, the Sale
Transaction, the Asset Purchase Agreement, and all related agreements (the "Related
Agreements").  The Debtors' entry into and performance under the Asset Purchase Agreement and

Related Agreements: (i) are a result of due deliberation by the Debtors and constitute a sound and reasonable exercise of the Debtors' business judgment consistent with their fiduciary duties; (ii) provide value to and are beneficial to the Debtors' estates, and are in the best interests of the Debtors and their estates, creditors and other parties in interest; and (iii) are reasonable and appropriate under the circumstances. The Debtors have demonstrated compelling circumstances for the Sale Transaction outside: (i) the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code and (ii) a plan of reorganization, in that, among other things, the immediate consummation of the Sale Transaction is necessary and appropriate to preserve and maximize the value of the Debtors' estates. Business justifications for the Sale Transaction include, but are not limited to, the following: (i) the Purchase Price set forth in the Asset Purchase Agreement constitutes the highest or otherwise best offer received for the Acquired Assets; (ii) the Asset Purchase Agreement and the transactions contemplated thereby present the best opportunity to maximize the value of the Acquired Assets, whether on a going concern basis or otherwise, and avoid decline and devaluation of the Acquired Assets that would occur in an immediate liquidation of the Acquired Assets; (iii) unless the Sale Transaction and all of the other transactions contemplated by the Asset Purchase Agreement are concluded expeditiously, as provided for pursuant to the Asset Purchase Agreement, recoveries to creditors will be diminished; and (iv) the value of the Debtors' estates will be maximized through the sale of the Acquired Assets pursuant to the Asset Purchase Agreement.

H. **Compliance with Bidding Procedures**. The Bidding Procedures were substantively and procedurally fair to all parties, including all potential bidders, and were the result of arms'-length negotiations. Further, the Bidding Procedures afforded notice and a full, fair, and reasonable opportunity for any Person to make a higher or otherwise better offer to purchase the

FILED DATE: 5/19/2021 1:27 PM    2020L012403

Acquired Assets.  The Debtors, ESL, the Buyer and their respective counsel and other advisors have complied with the Bidding Procedures and Bidding Procedures Order in all respects except as properly waived in the exercise of their fiduciary duties in accordance with such Procedures. The Buyer subjected its bid to the competitive Bidding Procedures approved by this Court and the Buyer was found eligible to participate in the Auction and was the Successful Bidder (as defined in the Bidding Procedures) for the Acquired Assets in accordance with the Bidding Procedures Order and Bidding Procedures.

I.    **Sale Process**.  (i) The Debtors and their advisors, including Lazard Frères & Co. LLC, engaged in a robust and extensive marketing and sale process through the postpetition sale process pursuant to the Bidding Procedures Order and the Bidding Procedures; (ii) the Debtors and their advisors conducted a fair and open sale process; (iii) the sale process, the Bidding Procedures and the Auction were non-collusive, duly noticed and provided a full, fair and reasonable opportunity for any entity to make an offer to purchase the Acquired Assets; and (iv) the process conducted by the Debtors pursuant to the Bidding Procedures obtained the highest or otherwise best value for the Acquired Assets for the Debtors and their estates, and any other transaction would not have yielded as favorable an economic result.

J.    **Fair Consideration; Highest or Best Value**.  The consideration to be paid by the Buyer under the Asset Purchase Agreement, including, without limitation, the Credit Bid Amount (as hereinafter defined) and the Credit Bid Release Consideration: (i) constitutes fair and reasonable consideration for the Acquired Assets; (ii) is the highest or best offer for the Acquired Assets; (iii) will provide a greater recovery for the Debtors' estates and creditors than would be provided by any other practically available alternative; (iv) constitutes fair and reasonably equivalent value and full and adequate consideration, under the Bankruptcy Code and the Uniform

FILED DATE: 5/19/2021 1:27 PM    2020L012403

Fraudulent Transfer Act; (v) constitutes fair consideration under the Uniform Fraudulent Conveyance Act; and (vi) constitutes reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.  Such consideration constitutes the highest or best bid for the Acquired Assets.  Under the facts and circumstances of these chapter 11 cases, the Purchase Price for the Acquired Assets is fair and reasonable.  Pursuant to Section 3.1(c) of the Asset Purchase Agreement, the Purchase Price may include cash in the amount of the outstanding obligations owed to lenders other than Buyer or its Affiliates as of the Closing Date under: (A) the IP/Ground Lease Term Loan Facility (the "IP/Ground Lease Buyout Amount"); (B) the FILO Facility (the "FILO Facility Buyout Amount"); and (C) the Real Estate Loan 2020 (the "Real Estate Loan 2020 Buyout Amount", together with the IP/Ground Lease Buyout Amount and the FILO Facility Buyout Amount, the "Buyout Amounts") unless such lender(s) provide written confirmation to the Sellers that such cash payment and the obligations owed to lenders by the Sellers under the IP/Ground Lease Term Loan Facility, the FILO Facility or the Real Estate Loan 2020, as applicable, are permanently waived and discharged against the Sellers.  Pursuant to Section 3.1 of the Asset Purchase Agreement, to the extent payable, each Buyout Amount, if applicable, shall be deposited and held in separate segregated accounts of the Debtors and the Liens of the lenders other than Buyer or its affiliates under the IP/Ground Lease Term Loan Facility, the FILO Facility or the Real Estate Loan 2020, as applicable, shall attach to the cash proceeds held in the applicable designated segregated account in the same order of priority and with the same validity, force and effect as the original Liens of such lenders, and such proceeds shall be released to such lenders within two (2) business days following the Closing Date and shall not otherwise be used by the Debtors without

FILED DATE: 5/19/2021 1:27 PM    2020L012403

further order of the Bankruptcy Court (the mechanic referred to in this sentence and the preceding sentence shall be referred to herein as the "Buyout Option").  Such Purchase Price, including the Credit Bid Amount, the Credit Bid Release Consideration, the Buyout Option, and other good and valuable consideration provided in connection with the Sale Transaction, constitutes the highest or best bid for the Acquired Assets.  Under the facts and circumstances of these chapter 11 cases, the Purchase Price for the Acquired Assets is fair and reasonable.

Without limiting the foregoing, no objection was raised to the Sale Motion on the basis that the creditors of any particular Debtor were improperly prejudiced by the proposed sale, including by the credit bid feature of the proposed sale.  Based on the evidence before the Court, the sale consideration under the proposed sale that does not constitute a credit bid constitutes adequate consideration for the Acquired Assets of each Debtor when added to the credit bid consideration, and such consideration does disadvantage the creditors of any particular Debtor except as permitted by the Bankruptcy Code.

K.    **ESL Secured Claims**.  In accordance with the Asset Purchase Agreement, effective upon the Closing Date ESL's Claims (as defined below) against the Debtors arising under the: (i) IP/Ground Lease Term Loan Facility; (ii) FILO Facility; (iii) Real Estate Loan 2020; (iv) Second Lien Term Loan; (v) Second Lien Line of Credit Facility; (vi) Second Lien PIK Notes; and (vii) Citi L/C Facility (together with the security interests securing any of the Claims of ESL described in the preceding sub-clauses (i)-(vii), collectively, the "ESL Claims"), shall each be deemed allowed for all purposes in these chapter 11 cases and under the Bankruptcy Code in the amounts set forth on Exhibit G to the Asset Purchase Agreement, as reduced by the Credit Bid set forth in Section 3.1(b) of the Asset Purchase Agreement.  Pursuant to Section 363(k) of the Bankruptcy Code and this Sale Order, ESL or, to the extent any of the ESL Claims are assigned to

FILED DATE: 5/19/2021 1:27 PM    2020L012403

9

FILED DATE: 5/19/2021 1:27 PM   2020L012403

Buyer prior to the Closing Date, Buyer is hereby authorized to credit bid (or cause to be credit bid) the ESL Claims and to use such ESL Claims as a portion of the Purchase Price (the "ESL Credit Bid Amount") as set forth in Section 3.1(b) of the Asset Purchase Agreement (subject, in the case of the security interest securing the Claims described in subclauses (iv), (v) and (vi) of this Paragraph K, anything in this Order to the contrary notwithstanding, to delivery of the written consent of the Collateral Agent for such security interest).  In addition, the transfer of Acquired Assets constituting "Collateral" under that certain Amended and Restated Security Agreement by and among Sears Holdings Corporation and Wilmington Trust, National Association in its capacity as Collateral Agent (the "Second Lien Collateral Agent") dated as of March 20, 2018 (as may be amended, restated, amended and restated or otherwise modified in accordance with its terms from time to time) (the "Second Lien Security Agreement") has been, or will be, directed by ESL as the "Required Secured Parties" under the Second Lien Security Agreement pursuant to one or more direction letters delivered to the Second Lien Collateral Agent (the "Second Lien Consent").  The Second Lien Consent binds all parties holding debt under the Second Lien Term Loan, Second Lien Line of Credit Facility and Second Lien PIK Notes in their capacity as such (collectively, the "Senior Second Lien Creditors", and their claims against the Debtors under such debt document, the "Senior Second Lien Claims").  The Senior Second Lien Claims shall be deemed allowed for all purposes in these chapter 11 cases and under the Bankruptcy Code, as reduced by any amounts included in the Credit Bid.  Pursuant to Section 363(k) of the Bankruptcy Code and this Sale Order, the Second Lien Collateral Agent is hereby authorized to credit bid the Senior Second Lien Claims as a portion of the Purchase Price (the "2L Credit Bid Amount", together with the ESL Credit Bid Amount (without duplication), the "Credit Bid Amount").  At the Auction, pursuant to the Asset

FILED DATE: 5/19/2021 1:27 PM    2020L012403

Purchase Agreement, the Buyer agreed to pay the Purchase Price, which includes the Credit Bid Amount.

L.    **Cyrus Claims**.  Effective upon the Closing Date, Cyrus' Claims (as defined below) arising under: (g) the Final Junior DIP Order[4] (the "Junior DIP Secured Obligations"[5]); (h) the Citi L/C Facility; (i) the Second Lien PIK Notes[6] (the "Cyrus Second Lien Notes Claims"); and (j) the IP/Ground Lease Term Loan Facility (the "Cyrus IP/GL Claims") together with the security interests securing any of the Claims described in the preceding sub-clauses (g)-(j), collectively the "Cyrus Claims"), shall each be deemed allowed for all purposes in these chapter 11 cases and under the Bankruptcy Code, as reduced by any amounts included in the Credit Bid.

M.    **No Successor or Other Derivative Liability**.  The sale and transfer of the Acquired Assets of the Debtors to the Buyer, including the assumption by the Debtors and assignment, transfer and/or sale to the Buyer of the Assigned Agreements, will not subject the Buyer or ESL to any liability (including any successor liability) under any laws, including any bulk-transfer laws, or any theory of successor or transferee liability, antitrust, environmental, product line, *de facto* merger or substantial continuity or similar theories, with respect to the operation of the Debtors' business prior to the Closing, and for each Assigned Agreement, the applicable Assumption Effective Date, except that, upon the Closing or such other date as specified in the Asset Purchase Agreement, the Buyer shall become liable for the applicable Assumed Liabilities.  The Buyer: (i) is not, and shall not be considered or deemed a mere continuation of,

---

[4]    The "Final Junior DIP Order" shall mean the *Final Junior DIP Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing and (B) Grant Secured Priming Liens and Superpriority Administrative Expense Claims; (II) Modifying the Automatic Stay; and (III) Granting Related Relief* (Docket No. 1436).

[5]    The "Junior DIP Secured Obligations" shall have the meaning ascribed to it in the Final Junior DIP Order.

[6]    As such term is defined in the *Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York* (Docket No. 3)*.

or successor to, the Debtors in any respect; (ii) has not, *de facto* or otherwise, merged with or into the Debtors; and (iii) is not a continuation or substantial continuation, and is not holding itself out as a mere continuation, of any of the Debtors or their respective estates, businesses or operations, or any enterprise of the Debtors and there is no continuity of enterprise between the Debtors and the Buyer. Accordingly, the Buyer is not and shall not be deemed a successor to the Debtors or their respective estates as a result of the consummation of the transactions contemplated by the Asset Purchase Agreement, and except with respect to any Assumed Liabilities or as otherwise set forth in the Asset Purchase Agreement, Buyer's acquisition of the Acquired Assets from the Debtors shall be free and clear of any "successor liability" claims of any nature whatsoever. Buyer would not purchase the Acquired Assets but for the protections against any claims based upon "successor liability" theories as specified herein. Notwithstanding the foregoing, nothing herein shall apply with respect to the Reserved Lease Issues.

N.     **Transition Agreements**.

(i)     The Services Agreement, as contemplated by the Asset Purchase Agreement, and as summarized on the record of the Sale Hearing, has been filed at Docket No. 2455 in a substantially final form, which is being negotiated by the parties and remains subject to a full reservation of rights among the parties.[7]

(ii)     The Employee Lease Agreement, as contemplated by the Asset Purchase Agreement has been filed at Docket No. 2453 in a substantially final form, which is being negotiated by the parties and remains subject to a full reservation of rights among the parties.[8]

---

[7] Upon closing and execution the Debtors will file the executed version of the Services Agreement with the Court.

[8] Upon closing and execution the Debtors will file the executed version of the Employee Lease Agreement with the Court.

FILED DATE: 5/19/2021 1:27 PM    2020L012403

O.    **Good Faith; No Collusion**.    The Asset Purchase Agreement and each of the Transactions were negotiated, proposed, and entered into by the Debtors, their management, their boards of directors or equivalent governing bodies, and representatives and the Buyer and its management, board of directors or equivalent governing body, officers, directors, employees, agents, members, managers and representatives, including ESL, in good faith, without collusion or fraud, and from arms'-length bargaining positions.    The Buyer is a "good faith purchaser" and the Buyer, and ESL are acting in good faith within the meaning of section 363(m) of the Bankruptcy Code and, as such, are entitled to all the protections afforded thereby through the date of the Hearing and in closing the proposed transaction.    In the absence of any Person obtaining a stay pending appeal, effective upon the Closing, it shall be deemed that neither the Debtors, ESL, nor the Buyer have engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code.    The Buyer and ESL have proceeded in good faith in all respects in that, among other things: (i) the Buyer, and ESL have recognized that the Debtors were free to deal with any other party in interest in acquiring the Acquired Assets; (ii) the Buyer, and ESL have complied with the applicable provisions of the Bidding Procedures Order; (iii) the Buyer's bid was subjected to competitive Bidding Procedures as set forth in the Bidding Procedures Order; and (iv) all payments to be made by the Buyer and all other material agreements or arrangements entered into by the Buyer, ESL and the Debtors in connection with the Sale Transaction have been disclosed and are appropriate. The sale price in respect of the Acquired Assets was not controlled by any agreement among potential bidders and neither the Debtors, ESL nor the Buyer have engaged in collusion, fraud, or any conduct that would cause or permit the Asset Purchase Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code or that

13

FILED DATE: 5/19/2021 1:27 PM    2020L012403

would prevent the application of section 363(m) of the Bankruptcy Code. Accordingly, neither the Asset Purchase Agreement nor the Sale Transaction may be avoided and no party shall be entitled to damages or other recovery pursuant to section 363(n) of the Bankruptcy Code. Specifically, neither ESL nor the Buyer has acted in a collusive manner with any Person or entity.

P. **Notice**. As evidenced by the certificates of service filed with the Court: (i) due, proper, timely, adequate, and sufficient notice of the Sale Motion, the Bidding Procedures (including the bidding process and the deadline for submitting bids and the Auction), the Sale Hearing, the Sale Transaction, the proposed Sale Order attached to the Asset Purchase Agreement, and the other relief requested in the Sale Motion was provided by the Debtors; (ii) such notice was good, sufficient, and appropriate under the particular circumstances and complied with the Bidding Procedures Order; and (iii) no other or further notice of the Sale Motion, the Sale Transaction, the Bidding Procedures, the Sale Hearing, the proposed Sale Order, or any of the relief requested in the Sale Motion, except as otherwise provided paragraphs FF.34 and FF.38 of this Sale Order, is required. With respect to Persons whose identities are not reasonably ascertained by the Debtors, in accordance with the Bidding Procedures Order, a notice containing the results of the Auction was published on the Prime Clerk website on January 18, 2019 (Docket No. 1730).

Q. **Cure Notice**. As evidenced by the certificates of service filed with the Court, and in accordance with the provisions of the Bidding Procedures Order, the Debtors have served, prior to the Sale Hearing, the Assumption and Assignment Notice (as defined in the Bidding Procedures Order) on each counterparty to a Potential Transferred Agreement, dated January 18, 2019, January 23, 2019, and January 31, 2019, which provided the Debtors' intent to assume and assign such Potential Transferred Agreements (to the extent the Potential Transferred Agreement is an

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

executory contract or lease) and notice of the related proposed Cure Costs upon each non-debtor counterparty to such Potential Transferred Agreements. The service of the Assumption and Assignment Notice was timely, good, sufficient and appropriate under the circumstances and no further notice need be given with respect to the Cure Costs for the assumption and assignment of the Assigned Agreements, including without limitation the Designatable Leases and any Additional Contracts that were listed as Potential Transferred Agreements; provided, however, that further notice is required as provided for in paragraphs FF.34 and FF.38 herein. *See Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* (Docket No. 1731); *see also Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* (Docket No. 1774); *see also Affidavits of Service* (Docket Nos. 1969, 2132, 2162); *see also Second Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction; see also Affidavit of Service* (Docket No. 2314); *see also Affidavit of Service* (Docket No. 2417) . All non-debtor parties to the Potential Transferred Agreements (to the extent the Potential Transferred Agreement is an executory contract or lease and was listed on the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* or *Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction*) have had a reasonable opportunity to object both to the Cure Costs listed on the applicable Assumption and Assignment Notice and, for Assigned Agreements other than Designatable Leases and Additional Contracts (to the extent the Additional Contracts are executory contracts), to the assumption and

15

assignment of the Assigned Agreements to the Buyer in accordance with the Bidding Procedures Order.

R.    **Satisfaction of Section 363(f) Standards**.  Except as expressly provided for in this Sale Order, the Debtors may sell the Acquired Assets that are owned by the Debtors free and clear of all liens, claims (including those that constitute a "claim" as defined in section 101(5) of the Bankruptcy Code), rights, liabilities, mortgages, deeds of trust, pledges, charges, security interests, of whatever kind or nature, rights of first refusal, rights of offset or recoupment, royalties, conditional sales or title retention agreements, hypothecations, preferences, debts, easements, suits, licenses, options, rights-of-recovery, judgments, orders and decrees of any court or foreign domestic governmental entity, taxes (including foreign, state and local taxes), covenants, restrictions, indentures, instruments, leases, options, off-sets, recoupments, claims for reimbursement or subrogation, contribution, indemnity or exoneration, encumbrances and other interests of any kind or nature whatsoever against any of the Debtors or the Acquired Assets owned by them, including, without limitation, any debts arising under or out of, in connection with, or in any way relating to, any acts or omissions, obligations, demands, guaranties, rights, contractual commitments, restrictions, product liability claims, environmental liabilities, employment or labor law claims or liabilities, employee pension or benefit plan claims, multiemployer benefit plan claims, retiree healthcare or life insurance claims or claims for taxes of or against any of the Debtors, any claims under, or trusts or liens created by, PACA,[9] and any derivative, vicarious, transferee or successor liability claims, alter ego claims, *de facto* merger claims, rights or causes of action (whether in law or in equity, under any law, statute, rule or regulation of the United

---

[9]    "PACA" means The Perishable Agricultural Commodities Act, 1930 (7 U.S.C. §§499a, et seq.) or the Packers and Stockyards Act (7 U.S.C. §§181 et seq.) or any similar state laws.

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

States, any state, territory, or possession thereof or the District of Columbia), whether arising prior

to or subsequent to the commencement of these chapter 11 cases, whether known or unknown,

contingent or matured, liquidated or unliquidated, choate or inchoate, filed or unfiled, scheduled

or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed,

recorded or unrecorded, contingent or non-contingent, material or non-material statutory or  non-

statutory, legal or equitable, and whether imposed by agreement, understanding, law, equity or

otherwise arising under or out of, in connection with, or in any way related to any of the Debtors,

any of the Debtors' interests in the Acquired Assets, the operation of any of the Debtors' businesses

before the effective time of the Closing and for each Assigned Agreement (subject to the payment

of Cure Costs as required under section 365(b) of the Bankruptcy Code), the applicable

Assumption Effective Date, pursuant to the Asset Purchase Agreement, or the transfer of any of

the Debtors' interests in the Acquired Assets to the Buyer, and all Excluded Liabilities;

(collectively, excluding any Assumed Liabilities, the "Claims"), because, in each case, one or more

of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied;

provided, however, that, nothing herein shall be deemed, or construed as, a ruling or determination

by this Court that the Assumed Liabilities encumber the Acquired Assets.  Without limiting the

generality of the foregoing, "Claims" shall include any and all liabilities or obligations whatsoever

arising under or out of, in connection with, or in any way relating to: (1) any of the employee

benefit plans, including any Claims related to unpaid contributions or current or potential

withdrawal or termination liability; (2) any of the Debtors' collective bargaining agreements; (3)

the Worker Adjustment and Retraining Notification Act of 1988; and (4) any of the Debtors'

current and former employees.  Those holders of Claims who did not timely object (or who

ultimately withdrew their objections, if any) to the Sale Transaction or the Sale Motion are deemed

FILED DATE: 5/19/2021 1:27 PM    2020L012403

to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Claims who did object that have an interest in the Acquired Assets could be compelled in a legal or equitable proceeding to accept money satisfaction of such Claim pursuant to section 363(f)(5) or fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are therefore adequately protected by having their Claims that constitute interests in the Acquired Assets, if any, attach solely to the proceeds of the Sale Transaction ultimately attributable to the property in which they have an interest, in the same order of priority and with the same validity, force and effect that such holders had prior to the Sale Transaction, subject to any defenses of the Debtors.  All Persons having Claims of any kind or nature whatsoever against the Debtors or the Acquired Assets shall be forever barred, estopped and permanently enjoined from creating, perfecting, pursuing, enforcing, attaching, collecting, recovering, or asserting such Claims against the Buyer or any of its assets, property, affiliates, successors, assigns, or the Acquired Assets.

S.    The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby if the sale of the Acquired Assets that are owned by the Debtors was not free and clear of all Claims, if the Buyer would, or in the future could, be liable for any such Claims, including, as applicable, certain liabilities related to the Business that will not be assumed by the Buyer, as described in the Asset Purchase Agreement, or if the Credit Bid Release or the Credit Bid were not components of the Sale Transaction.  A sale of the Acquired Assets owned by the Debtors other than one free and clear of all Claims would adversely impact the Debtors, their estates and their creditors, and would yield substantially less value for the Debtors' estates, with less certainty than the Sale Transaction.

T.    The total consideration to be provided under the Asset Purchase Agreement reflects the Buyer's reliance on this Sale Order to provide it, pursuant to sections 105(a) and 363(f) of the

Bankruptcy Code, with title to and possession of the Acquired Assets owned by the Debtors free and clear of all Claims (including, without limitation, any potential derivative, vicarious, transferee or successor liability claims).

U.      As of the Closing, the transfer of the Acquired Assets of the Debtors to the Buyer will be a legal, valid, and effective transfer of the Acquired Assets, and will vest the Buyer with all rights, title and interest of the Debtors in, and to, the Acquired Assets, free and clear of all Claims.

V.      **Assumption and Assignment of Assigned Agreements**.  The assumption and assignment of the Assigned Agreements are integral to the Asset Purchase Agreement, are in the best interests of the Debtors and their estates, and represent the valid and reasonable exercise of the Debtors' sound business judgment.  Specifically, the assumption and assignment of the Assigned Agreements (i) is necessary to sell the Acquired Assets to the Buyer, (ii) allows the Debtors to sell their business to the Buyer as a going concern, (iii) limits the losses suffered by counterparties to the Assigned Agreements, and (iv) maximizes the recoveries to other creditors of the Debtors by limiting the amount of claims against the Debtors' estates by avoiding the rejection of the Assigned Agreements.

W.      **Validity of the Transfer**.  As of the Closing, the transfer of the Acquired Assets to the Buyer will be a legal, valid and effective transfer of the Acquired Assets, and will vest the Buyer with all right, title and interest of the Debtors in and to the Acquired Assets, free and clear of all Claims against the Debtors.  The consummation of the Sale Transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) of the Bankruptcy Code and

FILED DATE: 5/19/2021 1:27 PM    2020L012403

all of the applicable requirements of such sections have been complied with in respect of the Sale Transaction.

X.   **Corporate Power and Authority.**  The Debtors (i) have full corporate or limited liability company (as applicable) power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the Sale Transaction has been duly and validly authorized by all necessary corporate or other action of the Debtors, (ii) have all of the corporate or limited liability company (as applicable) power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement, and (iii) upon entry of this Sale Order, other than as set forth in the Asset Purchase Agreement (including, without limitation, with respect to antitrust matters), need no consent or approval from any other person to consummate the Sale Transaction.

Y.   **Valid and Binding Contract.**  The Asset Purchase Agreement is a valid and binding contract between the Debtors and the Buyer and shall be enforceable pursuant to its terms. The Asset Purchase Agreement and Related Agreements were not entered into for the purpose of hindering, delaying or defrauding the Debtors' present or future creditors under the Bankruptcy Code or under laws of the United States, any state, territory, possession or the District of Columbia. None of the Debtors nor the Buyer is, or will be, entering into the Asset Purchase Agreement and transactions contemplated therein fraudulently (including with respect to statutory or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing) or for an otherwise improper purpose.  The Asset Purchase Agreement and the Sale Transaction itself, and the consummation thereof shall be specifically enforceable against and binding upon (without

FILED DATE: 5/19/2021 1:27 PM   2020L012403

posting any bond) the Debtors, and any chapter 7 or chapter 11 trustee appointed in these chapter 11 cases, and shall not be subject to rejection or avoidance by the foregoing parties or any other Person.

Z.    The Sale Transaction does not constitute a *de facto* plan of reorganization or liquidation as it does not propose to: (i) impair or restructure existing debt of, or equity interests in, the Debtors; (ii) impair or circumvent voting rights with respect to any plan proposed by the Debtors; (iii) circumvent chapter 11 safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or equity interests or extend debt maturities.  Entry into the Asset Purchase Agreement and the Sale Transaction neither impermissibly restructures the rights of the Debtors' creditors, nor impermissibly dictates the terms of a chapter 11 plan for the Debtors.  Entry into the Asset Purchase Agreement does not constitute a *sub rosa* chapter 11 plan.

AA.    **Valid and Binding Release**.  The proposed compromise and resolution embodied in the Credit Bid Release (as defined below and as reflected in Section 9.13 of the Asset Purchase Agreement) is reasonable and appropriate and a valid exercise of the Debtors' business judgment, and the consideration provided for in the Asset Purchase Agreement, including the Credit Bid Release Consideration and other good and valuable consideration provided to the Debtors and their Estates in connection with the Sale Transaction, constitutes fair and appropriate consideration for the Credit Bid Release.  The Credit Bid Release is required by the Buyer in order to enter into and perform in accordance with the Sale Transaction and providing such release is in the best interests of the Debtors, their estates, creditors and other parties in interest.  The Claims and causes of action released through the Credit Bid Release are complex and in the absence of the release would involve extended and expensive litigation, the outcome of which would be uncertain.

21

BB.    **Debtor Authorization of Non-Debtor Subsidiary Action or Inaction**.    The proposed Sale Transaction requires certain of the Debtors to take certain actions with respect to Sears Re, KCD IP, LLC, and the other Foreign Subsidiaries.  As further described in the Asset Purchase Agreement, the Sale Transaction contemplates the purchase of the KCD Notes effective upon receipt of the consent of the Bermuda Monetary Authority or any other applicable Bermuda regulatory authority, to authorize the sale of the KCD Notes to Buyer (the "KCD Notes Purchase"). The Asset Purchase Agreement includes other conditions with respect to the KCD Notes that have been satisfied.  First, Sears Re has agreed to be bound by the terms of the Asset Purchase Agreement prior to the deadline described therein.  Additionally, as further described in Section 9.14 of the Asset Purchase Agreement, and to the extent provided for in and in accordance with the Asset Purchase Agreement, the Sale Transaction contemplates certain restrictions upon Sellers' and their Affiliates' (including KCD IP, LLC's) ability to sell, transfer, assign, encumber, license, sublicense or otherwise grant certain rights or take or fail to take certain actions related to the KCD IP or to amend, terminate, renew, or fail to take certain actions with respect to, certain Contracts related to the KCD IP (the "KCD IP Restrictions").  In accordance with Section 9.14 of the Asset Purchase Agreement, Sellers caused KCD IP, LLC to agree to grant, effective as of the Closing, the Exclusive License (the "KCD Exclusive License Right").  The terms of the KCD Exclusive License Right shall be set forth in an exclusive license agreement, which agreement shall be executed contemporaneous with the Closing.  Prior to such time that the BMA Consent is obtained and pursuant to the Services Agreement, the Buyer shall provide services to the Sellers sufficient to perform the PA Liabilities in exchange for which the Sellers shall pay certain consideration to the Buyer (the "KCD Servicing Right").  Pursuant to Section 9.14 of the Asset Purchase Agreement, the Debtors have agreed to certain restrictions on Sellers' and their Affiliates ability

FILED DATE: 5/19/2021 1:27 PM    2020L012403

to sell, assign, or transfer in any way any equity interests in KCD IP, LLC without requiring a condition that the purchaser in such sale, assignment or transfer agrees to the limitations set forth in Section 9.14 therein (the "KCD Equity Transfer Restriction Right" and together with the KCD IP Restrictions, and the KCD Exclusive License Right, the "KCD IP Related Rights").  The Sellers' obligation to transfer the KCD Notes and the Buyer's obligation to assume the PA liabilities is dependent upon obtaining the BMA Consent.  Furthermore, the Sellers have agreed to use reasonable best efforts to cause each of the Foreign Subsidiaries to, among other things, sell, transfer, assign, convey and deliver, or cause to be sold, transferred, assigned, conveyed and delivered to the Buyer or the applicable Assignee, all right, title and interest of each of the Foreign Subsidiaries in, to or under the Acquired Foreign Assets, and, in certain circumstances, the Buyer may acquire all of the equity interests in any Foreign Subsidiary and minority equity interests held by non-U.S. Persons or Subsidiaries holding such minority equity interests (the "Foreign Assets Rights") as provided in the Asset Purchase Agreement.  Each of the KCD Notes Purchase, the KCD IP Related Rights and the Foreign Assets Rights are required by Buyer and are reasonable and appropriate exercises of the Debtors' business judgment and the consideration provided by the Buyer (including the assumption of the Assumed Liabilities) constitutes fair and appropriate consideration to the Debtors and the non-Debtor Sellers.

CC.    **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**.  The sale of the Acquired Assets must be approved and consummated promptly in order to preserve the value of the Acquired Assets.  Therefore, time is of the essence in consummating the Sale Transaction, and the Debtors and the Buyer intend to close the Sale Transaction as soon as reasonably practicable.  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Sale Transaction as

FILED DATE: 5/19/2021 1:27 PM    2020L012403

contemplated by the Asset Purchase Agreement. Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d) with regard to this Sale Order, except with respect to adjourned matters.

DD.    **Personally Identifiable Information**. As contemplated in the Bidding Procedures Order, and subject to the terms of this Sale Order, the sale to the Buyer under the Asset Purchase Agreement of any personally identifiable information (as such term is defined in section 101(41A) of the Bankruptcy Code) and private health information about individuals is either consistent with the privacy policy of the Debtors in effect on the date of commencement of these chapter 11 cases or consistent with the recommendations of the Consumer Privacy Ombudsman appointed in these chapter 11 cases, as may be modified by agreement of the Parties and the Consumer Privacy Ombudsman, and satisfies the requirements of section 363(b)(1)(A).

EE.    **Legal and Factual Bases**. The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

FF.    **Necessity of Order.** The Buyer would not consummate the transactions absent the relief provided for in this Sale Order.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT**:

1.    **Motion is Granted**. The Sale Motion and the relief requested therein to the extent not previously granted by this Court pursuant to the Bidding Procedures Order is granted and approved solely to the extent set forth herein.

2.    **Findings of Fact and Conclusions**. The Court's findings of fact and conclusions of law in the Bidding Procedures Order and the record of the hearing with respect to the Bidding Procedures Order are incorporated herein by reference.

3.    **Objections Overruled**.  All objections, to the Sale Motion or the relief requested

therein, and any joinders thereto, that have not been withdrawn with prejudice, waived, settled, or

otherwise resolved as announced to the Court at the Sale Hearing or by stipulation filed with the

Court, and all reservations of rights included therein, are hereby overruled on the merits and with

prejudice; provided that the objections filed to the proposed Cure Costs for the Contracts and

Leases on the Initial Assigned Agreements list attached hereto as Exhibit A are preserved and will

be treated in accordance with paragraph 29 of this Sale Order; provided further that: (i) all timely

filed objections to the assumption and assignment of a Contract or Lease that is not an Initial

Assigned Agreement, including, without limitation, as to adequate assurance of future

performance and to the payment of all amounts due and owing and performance of all other

obligations under a Contract or Lease, but not as to any other objections to approval of the Sale

Transaction itself pursuant to section 363 of the Bankruptcy Code, are adjourned and all parties'

rights as to such issues are fully preserved and will be determined if and to the extent the applicable

Contract or Lease is designated for assumption and assignment pursuant to the procedures

described in this Sale Order; (ii) no finding of fact or conclusion of law set forth herein with respect

to the assumption and assignment of the Initial Assigned Agreements shall apply, be binding upon,

be law of the case, or operate to collaterally estop any issue, with respect to the assumption and

assignment of any other Contract or Lease, other than with respect to the Initial Assigned

Agreements; (iii) no Contract or Lease with a Debtor other than the Initial Assigned Agreements

as set forth in Exhibit A shall be part of the Acquired Assets unless and until assumption and

assignment of such Contract or Lease is approved in accordance with the procedures in this Sale

Order; (iv) notwithstanding anything to the contrary herein, including, without limitation,

paragraphs M, R, FF.27, and 28, nothing in this Sale Order shall be a determination of the terms

and conditions of the assumption and assignment of any Contract or Lease not on <u>Exhibit A</u>, including, without limitation, the Assignee's obligations in connection with the same; and (v) notwithstanding anything herein or in the Asset Purchase Agreement or any related document to the contrary, all parties' rights are fully reserved with respect to (x) all issues relating to the Buyer's, any other Assignee's and/or the Debtors' obligations to comply with all terms, conditions, covenants and obligations, whether related to the pre- or post-assignment period and (y) the issues set forth in clauses (a) and (b) of paragraph 59 of this Order (the "<u>Reserved Lease Issues</u>"). All holders of Claims or other persons and entities (including any counterparties to Initial Assigned Agreements identified on <u>Exhibit A</u> hereto) that failed to timely object, or withdrew their objections to the Sale Motion, the Sale Transaction, or this Sale Order are deemed to consent to the relief granted herein for all purposes, including pursuant to section 363(f)(2) of the Bankruptcy Code, except to the extent that the procedures described herein provide otherwise. Each holder of any Claim against the Debtors, their estates, or any of the Acquired Assets owned by the Debtors: (i) has, subject to the terms and conditions of this Sale Order, consented to the Sale Transaction or is deemed to have consented to the Sale Transaction; (ii) could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such Claim; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code.

4.     **Notice**.  Notice of the Sale Motion and the Sale Hearing was adequate, appropriate, fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006, the Amended Case Management Order, and the Bidding Procedures Order.

5.     **Fair Purchase Price**.  The consideration provided by the Buyer under the Asset Purchase Agreement, including the portion of the Purchase Price that is the Credit Bid

FILED DATE: 5/19/2021 1:27 PM   2020L012403

Amount, the Credit Bid Release Consideration, and the Buyout Option is fair and reasonable and constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession or the District of Columbia.  The Credit Bid constitutes a valid, duly authorized credit bid and is proper under the Bidding Procedures Order, sections 363(b) and 363(k) of the Bankruptcy Code, the applicable Prepetition Loan Documents (as defined in the Final DIP Order) and applicable law.  The consideration given by the Buyer shall constitute valid and valuable consideration for the Credit Bid Release.

6.      **Approval of the Asset Purchase Agreement**.  Except as expressly provided herein with respect to the assumption and assignment of contracts and leases (other than Initial Assigned Agreements), the Asset Purchase Agreement, all ancillary documents filed therewith or described therein, the Credit Bid and all other transactions contemplated therein (including, but not limited to, all ancillary agreements contemplated thereby) and all of the terms and conditions thereof, including, without limitation, the Credit Bid pursuant to section 363(k) of the Bankruptcy Code of the Credit Bid Amount, are hereby approved.  The failure specifically to include any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement (including, but not limited to, all ancillary agreements and Related Agreements contemplated thereby) be authorized and approved in its entirety, except as provided herein.

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

7.    **Approval of the Credit Bid Release**.  As set forth in Section 9.13 of the Asset

Purchase Agreement:

(a)    Effective upon the Closing, in consideration for the payment by

Buyer of the Credit Bid Release Consideration, and other good and valuable consideration

provided to the Debtors and their estates by ESL in connection with the Transactions, each Debtor,

for itself and its estate, and on behalf of each of its Subsidiaries and controlled Affiliates (each of

the foregoing, a "Seller Releasing Party" and together, the "Seller Releasing Parties"), hereby

absolutely, unconditionally and irrevocably: (i) releases and forever discharges ESL from any and

all Released Estate Claims, whether foreseen or unforeseen, contingent or actual, and whether now

known or hereafter discovered, which any of the Seller Releasing Parties ever had or now may

have; and (ii) covenants that it shall not seek to disallow, subordinate, recharacterize, avoid,

challenge, dispute or collaterally attack the ESL Claims; provided, however, that the assertion of

any Claim other than a Released Estate Claim shall not be deemed to violate Section 9.13(a)(ii) of

the Asset Purchase Agreement.

(b)    Effective upon the Closing, the ESL Claims against the Debtors

shall each be deemed allowed for all purposes in the Bankruptcy Cases and under the Bankruptcy

Code in the amounts set forth on Exhibit G to the Asset Purchase Agreement, as reduced by the

credit bid set forth in Section 3.1(b) of the Asset Purchase Agreement.

(c)    After giving effect to the credit bid set forth in Section 3.1(b) of the

Asset Purchase Agreement, ESL shall be entitled to assert any deficiency Claims, Claims arising

under Section 507(b) of the Bankruptcy Code, or other Claims and causes of action that it may

have against the Debtors and their estates in the Chapter 11 Cases, provided that: (i) no Claims or

causes of action of ESL shall have recourse to, or any other right of recovery from, any Claims or

28

causes of action of the Debtors or their estates related to Lands' End, Inc., the "spin-off" (as such

term is defined in the Information Statement of Lands' End, Inc. dated March 18, 2014), Seritage

Growth Properties, Inc., Seritage Growth Properties, L.P, the "Transaction" (as that term is defined

in the registration statement on Form S-11 filed by Seritage Growth Properties, which registration

statement became effective on June 9, 2015), any Claim or cause of action involving any

intentional misconduct by ESL, or the proceeds of any of the foregoing; (ii) any ESL Claims

arising under Section 507(b) of the Bankruptcy Code shall be entitled to distributions of not more

than $50 million from the proceeds of any Claims or causes of action of the Debtors or their estates

other than the Claims and causes of action described in the preceding clause (c)(i); provided that,

in the event that, in the absence of this clause (c)(ii), any such proceeds to the Debtors or their

estates would have resulted in distributions in respect of such ESL Claims in excess of $50 million,

the right, on account of the ESL Claims, to receive such distributions in excess of $50 million shall

be treated as an unsecured claim and receive pro rata recoveries with general unsecured claims

other than the Claims and causes of action described in the preceding clause (c)(i); and (iii)

notwithstanding any order of the Bankruptcy Court to the contrary or section 1129 of the

Bankruptcy Code, it shall not be a condition to confirmation of any chapter 11 plan filed in the

Bankruptcy Cases that any ESL Claims arising under Section 507(b) of the Bankruptcy Code be

paid in full or in part.

        (d)       Section 9.13 of the Asset Purchase Agreement, and all statements or

negotiations relating hereto, shall be governed by Federal Rule of Evidence 408 and any

corresponding state rules of evidence. Without limiting the foregoing, neither Section 9.13 of the

Asset Purchase Agreement nor any statements or negotiations relating hereto shall be offered or

FILED DATE: 5/19/2021 1:27 PM    2020L012403

received in evidence in any proceeding for any purpose other than to enforce the terms of Section 9.13.

(e)     The release set forth in Section 9.13 of the Asset Purchase Agreement and in paragraphs 7(a)-(d) hereof shall be referred to herein as the "<u>Credit Bid Release</u>".  The Credit Bid Release is hereby approved in its entirety, and the Credit Bid Release Consideration and the other consideration provided by Buyer pursuant to the Asset Purchase Agreement is found to be fair consideration for the Credit Bid Release.  The Seller Releasing Parties and ESL are authorized and directed to perform under the Credit Bid Release pursuant to its terms and to take any and all actions, including, without limitation, execution and delivery of any documents or papers as may be reasonably necessary to perform or appropriate to implement their obligations arising under the Credit Bid Release.

8.     **Approval of Cyrus Release**.  Effective upon the Closing, each Seller Releasing Party, hereby absolutely, unconditionally and irrevocably: (i) releases and forever discharges the Cyrus Related Parties from any and all Released Cyrus Claims, whether foreseen or unforeseen, contingent or actual, and whether now known or hereafter discovered, which any of the Seller Releasing Parties ever had or now may have; and (ii) covenants that it shall not seek to disallow, subordinate, recharacterize, avoid, challenge dispute or collaterally attack the Cyrus Claims. "<u>Released Cyrus Claims</u>" shall mean any and all Claims and causes of action of the Debtors and their estates against the Cyrus Related Parties arising under (i) sections 363(k), 502(a) or 510(c) of the Bankruptcy Code; (ii) equitable principles of subordination or recharacterization; or (iii) any other applicable Law that could be asserted to challenge the allowance of the Cyrus Claims. Effective upon the Closing, the Cyrus Claims against the Debtors shall each be deemed allowed for all purposes in the Bankruptcy Cases and under the Bankruptcy Code, as reduced by any

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

amounts included in the Credit Bid.  After giving effect to the Credit Bid, the Cyrus Related Parties

shall be entitled to assert any deficiency Claims, Claims arising under Section 507(b) of the

Bankruptcy Code, or other Claims and causes of action that it may have against the Debtors and

their estates in the Chapter 11 Cases, subject to any defenses of the Debtors to any such claims

that might be asserted by Cyrus or any claims of the Debtors against Cyrus, including in connection

with any claims or causes of action relating to the medium term notes matters that are the subject

of Rule 2004 examination by the Debtors and the Creditors' Committee.  All such claims of the

Debtors and their estates are fully preserved (other than the Released Cyrus Claims).  For the

avoidance of doubt, the Cyrus Release shall be no broader than the Credit Bid Release set forth in

paragraph 7(a) of this Sale Order.  The release set forth in this paragraph shall be referred to herein

as the "Cyrus Release".  The Cyrus Release is hereby approved in its entirety and the consideration

provided by the Buyer pursuant to the Asset Purchase Agreement is found to be fair consideration

for the Cyrus Release.  The Seller Releasing Parties and the Cyrus Related Parties are authorized

and directed to perform under the Cyrus Release pursuant to its terms and to take any and all

actions, including, without limitation, execution and delivery of any documents or papers as may

be reasonably necessary to perform or appropriate to implement their obligations arising under the

Cyrus Release.

9.      **Discharge of Credit Bid Claims**.  Upon the Closing Date, the portion of the ESL

Claims and the Cyrus Claims that is used as part of the Credit Bid shall be deemed discharged

against the Debtors and satisfied in full.  For the avoidance of doubt, the ESL Claims and the Cyrus

Claims shall remain outstanding against the Debtors and their estates with respect to all amounts

other than the amount that is Credit Bid in accordance with Section 3.1(b) of the Asset Purchase

Agreement.

FILED DATE: 5/19/2021 1:27 PM    2020L012403

10.    **Approval of Debtor Authorization of Non-Debtor Subsidiary Action or Inaction**.  The Debtors are authorized and directed to perform their obligations in accordance with the Asset Purchase Agreement, their obligations with respect to the KCD Notes Purchase, the KCD IP Related Rights, and the Foreign Assets Rights, including to take any and all actions, including, without limitation, execution and delivery of any documents or papers as may be reasonably necessary to perform or appropriate to implement their obligations arising with respect to the KCD Notes Purchase, the KCD IP Related Rights, and the Foreign Assets Rights.  The Debtors are hereby authorized in accordance with section 105(a) of the Bankruptcy Code, to cause KCD IP, LLC to execute and deliver to Buyer, such documents or other instruments as may be necessary to license the KCD IP to the Buyer as provided in the Asset Purchase Agreement, subject in all respects to KCD's compliance with the terms of the KCD Prepetition Agreements and the KCD Indenture.  Notwithstanding anything provided for herein, nothing in this Order authorizes the assumption or assignment of any prepetition license agreements between KCD and any of the Sellers, as well as any agreements between KCD and Sears Holdings Management Corporation and/or Sears Brands Business Unit Corporation, or the Trademark Security Agreement between KCD and U.S. Bank, National Association ("KCD Indenture Trustee") (such agreements, collectively,  the "KCD Prepetition Agreements"). In the event the Debtors seek to assume or assign any or all of the KCD Prepetition Agreements in the future, such assumption or assignment may only be approved on not less than ten (10) days' notice to the KCD Indenture Trustee, Pension Benefit Guaranty Corporation, and all parties to such KCD Pre-Petition Agreements (as the case may be), and an opportunity for the KCD Indenture Trustee and such parties to object to any such assumption and assignment and any proposed cure amounts.  Furthermore, nothing in this Order in any way abridges, waives or modifies the rights of the KCD Indenture Trustee under or in

FILED DATE: 5/19/2021 1:27 PM    2020L012403

connection the KCD Indenture or the collateral provided thereunder or under the KCD Pre-Petition

Agreements. This Order is without prejudice to, and does not alter or amend the KCD Indenture

Trustee's rights or ability to take any action consistent with its duties or obligations arising under

the KCD Indenture or under the KCD Pre-Petition Agreements, and all such rights are expressly

preserved. Further, nothing in this Order shall prejudice or impact the rights of the holders of the

KCD Notes to exercise any rights they may have under the KCD Indenture, including without

limitation their right to direct the KCD Indenture Trustee.

11.    **Consummation of Sale Transaction**. Pursuant to sections 105, 363 and 365 of

the Bankruptcy Code, the Debtors, as well as their officers, employees and agents, are authorized

to enter into, execute, deliver and perform their obligations under and comply with the terms of

the Asset Purchase Agreement and the Related Agreements and to close and consummate the Sale

Transaction, including by taking any and all actions as may be reasonably necessary or desirable

to implement the Sale Transaction and each of the transactions contemplated thereby pursuant to

and in accordance with the terms and conditions of the Asset Purchase Agreement, the Related

Agreements, and this Sale Order.

(a)    Approval of Conversion of Subsidiaries. As set forth in Section

9.2(a) of the Asset Purchase Agreement, the Debtors are required (subject to certain qualifications

and exceptions) to take actions as instructed by Buyer in order to secure and preserve the

qualifications of certain of the transactions contemplated by the Asset Purchase Agreement as

reorganizations for U.S. federal income tax purposes in connection with which Buyer bears

responsibility for any consequential tax or costs. In accordance with such instructions, the Debtors

may be directed to convert any of the corporate subsidiaries of Sears Holding Corporation into

limited liability companies whether on or before the Closing Date of the Asset Purchase

Agreement or anytime afterwards. The Debtors are hereby authorized to convert any such corporate subsidiaries of Sears Holding Corporation to limited liability companies as directed by Buyer in accordance with Section 9.2(a) of the Asset Purchase Agreement.

(b) Approval of the Steps Described in Schedule 9.2. As set forth in Section 9.2(a) of the Asset Purchase Agreement, the Debtors are required (subject to certain qualifications and exceptions) to take actions as instructed by Buyer in order to secure and preserve the qualifications of certain of the transactions contemplated by the Asset Purchase Agreement as reorganizations for U.S. federal income tax purposes in connection with which Buyer bears responsibility for any consequential tax or costs. In accordance with such instructions, the Debtors are required to take the steps described in Schedule 9.2 of the Asset Purchase Agreement as soon as practicable after the Closing. The Debtors are hereby authorized to take the steps described in Schedule 9.2 of the Asset Purchase Agreement.

12.     The Debtors, their affiliates and their respective officers, employees and agents, are authorized to execute and deliver, and authorized to perform under, consummate and implement all additional instruments and documents that may be necessary or desirable to implement the Asset Purchase Agreement and Related Agreements, including the transfer and the assignment of all the Acquired Assets, and the assumption and assignment of all the Assigned Agreements, and to take all further actions as may be (i) reasonably requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer, or reducing to the Buyer's possession, the Acquired Assets or (ii) necessary or appropriate to the performance of the obligations contemplated by the Asset Purchase Agreement or to implement the Sale Transaction, including pursuant to this Sale Order, all without further order of the Court.

FILED DATE: 5/19/2021 1:27 PM    2020L012403

13.    All Persons that are currently in possession of some or all of the Acquired Assets are hereby directed to surrender possession of such Acquired Assets to the Buyer as of the Closing or at such later time as the Buyer reasonably requests.  To the extent required by the Asset Purchase Agreement, the Debtors agree to exercise commercially reasonable efforts to assist the Buyer in assuring that all Persons that are presently, or on the Closing Date may be, in possession of some or all of the Acquired Assets will surrender possession of the Acquired Assets to either (i) the Debtors before the Closing Date or (ii) the Buyer on or after the Closing Date.

14.    All Persons are prohibited from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Acquired Assets owned by the Debtors to the Buyer in accordance with the Asset Purchase Agreement and this Sale Order; provided that the foregoing restriction shall not prevent any party from appealing this Sale Order in accordance with applicable law or opposing any appeal of this Sale Order.

15.    Each Assignee has provided or will provide, as applicable, adequate assurance of future performance of and under the Initial Assigned Agreements, within the meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code.

16.    **Direction to Creditors and Parties in Interest**.  On the Closing, each of the Debtors' creditors and the holders of any Claims are authorized and directed to execute such documents and take all other actions as may be necessary to terminate, discharge or release their Claims in the Acquired Assets, if any, as such Claims may otherwise exist.

17.    **Direction to Government Agencies**.  Each and every filing agent, filing officer, title agent, recording agency, governmental department, secretary of state, federal, state and local official, and any other person and entity who may be required by operation of law, the duties of its office or contract, to accept, file, register, or otherwise record or release any documents or

FILED DATE: 5/19/2021 1:27 PM    2020L012403

instruments or who may be required to report or insure any title in or to the Acquired Assets, is

hereby authorized and directed to accept any and all documents and instruments necessary and

appropriate to consummate the Sale Transaction contemplated by the Asset Purchase Agreement

and approved by this Sale Order.  The Buyer and Seller are each authorized to designate a power

of attorney regarding the conveyance of properties in Puerto Rico for recording purposes which

properties may be described in such power of attorney including the following: (i) Fajardo:

Property registered at page 178 of volume 514 of Fajardo, Registry of Property of Puerto Rico,

property number 19,514; (ii) Guayama: Property registered at page 7 of volume 382 of Guayama,

Registry of Property of Puerto Rico, property number 13,562; and (iii) Río Piedras site 8975 is

composed of two properties: (x) property registered at page 221 of volume 466 of Monacillos,

Registry of Property of Puerto Rico San Juan V Section, property number 17,328, and (y) property

registered at page 181 of volume 302 of Río Piedras, Registry of the Property of Puerto Rico San

Juan V Section, property 9,717.

18.  **Assumption of Protection Agreement Obligations**.  Pursuant to and in

accordance with Section 2.3(e) of the Asset Purchase Agreement, the Buyer has expressly assumed

Sellers' obligations (the "Assumed Protection Agreement Obligations") with respect to warranties

and protection agreements or other services contracts (other than warranties relating to Intellectual

Property) for the goods and services of Sellers sold or performed prior to the Closing, including

any obligations owed by Sears Re to any Seller in respect of reinsurance of such warranties and

protection agreements (collectively, the "Assumed Protection Agreements").  To the fullest extent

permitted by applicable law, the Buyer is authorized to  operate in place of the Sellers with respect

to the Assumed Protection Agreements and to take any actions contemplated to be taken by the

Sellers thereunder, including collecting any amounts payable by any counterparty to any such

FILED DATE: 5/19/2021 1:27 PM    2020L012403

Assumed Protection Agreement and performing the Assumed Protection Agreement Obligations. The Court hereby orders that the Sellers and all other parties in interest shall cooperate in respect of Buyer's operation in place of the Sellers under the Assumed Protection Agreements, including, without limitation, by furnishing such documents or records as are necessary to the Buyer to perform the Assumed Protection Agreement Obligations without interruption. Moreover, except for good cause based on violations of Law unrelated to the assumption by the Buyer of the Assumed Protection Agreement Obligations occurring pursuant to the Asset Purchase Agreement and this Sale Order, no regulatory agency (including, without limitation, any state insurance regulator) shall interrupt Buyer's performance of the Assumed Protection Agreement Obligations from and after the Closing Date without first obtaining relief from this Court. The Buyer may continue to perform the Assumed Protection Agreement Obligations under any existing licenses or permits of the Sellers, with no interruption of the right of the Buyer to so perform, until any required licenses and permits have been transferred to the Buyer by Sellers, or new licenses and permits have been issued to the Buyer.

19.    **Transfer of the Acquired Assets Free and Clear**.  Pursuant to sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code, the Debtors are authorized to transfer the Acquired Assets owned by the Debtors, including, without limitation, Designated Agreements (as defined below) in accordance with the terms of the Asset Purchase Agreement and this Sale Order. The Acquired Assets shall be transferred to the Buyer in accordance with the terms of the Asset Purchase Agreement and this Sale Order, and upon the Closing, such transfer shall: (i) be valid, legal, binding and effective; (ii) vest the Buyer with all right, title and interest of the Debtors in the Acquired Assets; and (iii) be free and clear of all Claims against the Debtors and the Acquired Assets owned by the Debtors (including Claims of any Governmental Authority) in accordance

with section 363(f) of the Bankruptcy Code, with the net proceeds of the Sale Transaction from
the Acquired Assets upon which the DIP ABL Lenders (as defined in the Final DIP Order) have a
first lien being used to repay in full in cash all DIP ABL Secured Obligations (as defined in the
Final DIP Order) on the Closing and all other Claims (including, without limitation, contingent
indemnification obligations) that represent interests in property shall attach to the net proceeds of
the Sale Transaction, in the same order of their priority and with the same validity, force and effect
which they now have against the Acquired Assets, subject to any claims and defenses the Debtors
may possess with respect thereto, in each case immediately before the Closing.  The cash portion
of the Purchase Price, to the extent payable, that is paid in connection with a Buyout Option shall
be deposited and held in segregated accounts in accordance with Section 3.1 of the Asset Purchase
Agreement with the Liens of any lenders other than Buyer or Affiliates attaching to the cash
proceeds held in the applicable designated segregated account in the same order of priority and
with the same validity, force and effect as the original Liens of such lenders, and such proceeds
shall be released to such lenders within two (2) business days following the Closing Date and shall
not otherwise be used by the Debtors without further order of the Bankruptcy Court.
Notwithstanding anything to the contrary herein or in the Asset Purchase Agreement, nothing in
this Order shall approve the sale or transfer of any Acquired Assets of non-Debtors free and clear
of Claims pursuant to section 363(f) of the Bankruptcy Code. Notwithstanding the foregoing or
any other provision of this Sale Order or the Asset Purchase Agreement to the contrary, the transfer
of the Acquired Assets to the Buyer shall not be free and clear of, and shall not impair in any respect,
any (A) setoff or recoupment rights or other affirmative defenses to payment held by either: (1) any
party to an Initial Assigned Agreement (other than the Debtors), including, without limitation,
Cross Country Home Service, Inc., that timely filed an objection preserving such right or defense,

FILED DATE: 5/19/2021 1:27 PM    2020L012403

pursuant to the terms of such Assigned Agreements and applicable law, including without limitation any valid return and credit rights under such Assigned Agreements; (2) any party to an Assigned Agreement (other than the Debtors) that is not an Initial Assigned Agreement on Exhibit A that filed a timely objection preserving such right or defense, including, without limitation, the Amazon entities listed in the exhibits to the objection filed as Docket No. 1986 (collectively, "Amazon"), Cardinal Health 110, LLC ("CH 110"), Cardinal Health 112, LLC ("CH 112"), and Cardinal Health PR 120, Inc. ("CH PR 120," and together with CH 110 and CH 112, collectively hereinafter "Cardinal Health"), LG Electronics USA, Inc. ("LGEUS") and LG Electronics Alabama, Inc.(collectively with LGEUS and each individually, "LG") and Valvoline LLC, pursuant to the terms of such Assigned Agreements, (I) the  Alliance Agreement (as defined in  Limited Objection And Reservation of Rights Of LG Electronics USA, Inc. And LG Electronics Alabama, Inc.  To The Global Asset Sale Transaction;  Notice of Cure Costs and Potential Assumption And Assignment of Executory Contracts And Unexpired Leases in Connection With Global Sale Transaction; and Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transactions, Docket No. 2079 (the "LG Limited Objection and Reservation of Rights")), (II) the Kenmore Supply Agreement and MSA, as defined in the LG Limited Objection and Reservation of Rights, and (III) all other contracts giving rise to the Acquired Receivables, and/or (IV) applicable law, including without limitation, any valid return and credit rights; all amounts owing under the MSA; all rebates; credits; allowances; credit memos; and accruals under such Assigned Agreements and the other foregoing agreements, and the applicable non-Debtor counterparty shall subsequently provide a notice setting forth the monetary amount of rights of recoupment and setoff believed to be currently outstanding as of the time of receipt of the applicable

FILED DATE: 5/19/2021 1:27 PM    2020L012403

Designated Lease Notice or Designated Additional Contract Notice  to counsel for the Debtors and

the Buyer on or before eight (8) days after such non-Debtor counterparty's and such counterparty's

counsel's (if known) receipt of the applicable Designated Lease Notice or Designated Additional

Contract Notice (with any disputes over such amount resolved as provided in paragraph 35 of this

Sale Order), or (3) any party that filed a timely objection and is an obligor on any Acquired

Receivables,  including, without limitation, Amazon, Cardinal Health, LG and Valvoline LLC,

pursuant to the terms of the contracts giving rise to such Acquired Receivables and/or applicable

law, whether or not such contracts are being assumed and assigned by the Debtors to the Buyer,

including without limitation, any valid return, refund and credit rights; all amounts owing under

the MSA;   allowances; rebates; credits; credit memos; and accruals under such contracts, and (B)

rights of LGEUS to directly sell Sears Branded Products Safety Stock (as defined in the Kenmore

Supply Agreement) and/or Finished Goods (as defined in the Kenmore Supply Agreement) in

accordance with ¶8.C.ii and ¶8.F of the Kenmore Supply Agreement (as defined in the LG Limited

Objection and Reservation of Rights), including, without limitation, the obligations and

restrictions imposed on LGEUS thereunder.  Notwithstanding the foregoing, with respect to those

tenants and subtenants that filed an objection to the sale, all rights are reserved with respect to (i)

all tenants' or subtenants' rights to assert validly enforceable rights under section 365(h) or Section

363(e) of the Bankruptcy Code and applicable agreements and state law and objections to the

ability of the Debtors to assume and assign leases or sell real property free and clear of tenants' or

subtenants' interests under Section 363(f) of the Bankruptcy Code (and Debtors' or Buyers' rights

to contest such rights) and (ii) the Debtors' rights to assume or reject a lease or sublease where the

Debtor is the landlord or sub-landlord and all tenants' or subtenants' objections to the same,

including, without limitation, objections to the assumption and assignment of leases or the sale of

FILED DATE: 5/19/2021 1:27 PM   2020L012403

real property free and clear of tenants' or subtenants' rights and interests, whether under section 363(f) of the Bankruptcy Code or otherwise.  In the event that the parties are unable to resolve the issues in the pending objections, these issues will be set for hearing on a mutually convenient date after closing.  Notwithstanding anything in this Sale Order or otherwise to the contrary, any Acquired Assets or Designatable Leases that are subject to or encumbered by a lease or sublease held by a tenant or subtenant as applicable, remains subject to or encumbered by such lease or sublease on and after the Closing, subject to a further hearing on a date to be determined or an agreed upon resolution by such tenant or subtenant, the Debtors, and Buyer.

20.    This Sale Order: (i) shall be effective as a determination that, as of the Closing, all Claims against the Debtors have been unconditionally released, discharged and terminated as to the Acquired Assets, and that the conveyances and transfers described herein have been effected; and (ii) is and shall be binding upon and govern the acts of all persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, county and local officials and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that the Buyer is the assignee and owner of the Acquired Assets free and clear of all Claims, or who may be required to report or insure any title or state of title in or to any lease (all such entities being referred to as "Recording Officers").  All Recording Officers are authorized and specifically directed to strike recorded Claims against the Acquired Assets owned by the Debtors recorded prior to the date of this Sale Order.  A certified copy of this Sale Order may be filed with the appropriate Recording Officers to evidence cancellation of any recorded Claims against the Acquired Assets recorded prior to the date of this Sale Order.  All Recording

FILED DATE: 5/19/2021 1:27 PM    2020L012403

Officers are hereby directed to accept for filing any and all of the documents and instruments

necessary and appropriate to consummate the transactions contemplated by the Asset Purchase

Agreement.

21.    Following the Closing, no holder of any Claim against the Debtors or their estates

shall interfere with the Buyer's title to or use and enjoyment of the Acquired Assets based on or

related to any such Claim or based on any actions the Debtors may take in these chapter 11 cases.

22.    Except as expressly set forth herein or in the Asset Purchase Agreement, the Buyer

Related Parties and their successors and assigns shall have no liability for any Claim against the

Debtors or the Debtors' estates or Excluded Liabilities, whether known or unknown as of the

Closing Date, now existing or hereafter arising, whether fixed or contingent, whether derivatively,

vicariously, as a transferee, successor, alter ego, or otherwise, of any kind, nature or character

whatsoever, by reason of any theory of law or equity, including Claims or Excluded Liabilities

arising under, without limitation: (i) any employment or labor agreements or the termination

thereof relating to the Debtors; (ii) any pension, welfare, compensation or other employee benefit

plans, agreements, practices and programs, including, without limitation, any pension plan of or

related to any of the Debtors or any Debtor's affiliates or predecessors or any current or former

employees of any of the foregoing, including, without limitation, the Employee Plans and any

participation or other agreements related to the Employee Plans, or the termination of any of the

foregoing; (iii) the Debtors' business operations or the cessation thereof; (iv) any litigation

involving one or more of the Debtors; and (v) any employee, workers' compensation, occupational

disease or unemployment or temporary disability related law, including, without limitation, claims

that might otherwise arise under or pursuant to: (A) the Employee Retirement Income Security

Act of 1974, as amended; (B) the Fair Labor Standards Act; (C) Title VII of the Civil Rights Act

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

of 1964; (D) the Federal Rehabilitation Act of 1973; (E) the National Labor Relations Act; (F) the

Worker Adjustment and Retraining Notification Act of 1988; (G) the Age Discrimination and

Employee Act of 1967 and Age Discrimination in Employment Act, as amended; (H) the

Americans with Disabilities Act of 1990; (I) the Consolidated Omnibus Budget Reconciliation Act

of 1985; (J) the Multiemployer Pension Plan Amendments Act of 1980; (K) state and local

discrimination laws; (L) state and local unemployment compensation laws or any other similar

state and local laws; (M) state workers' compensation laws; (N) any other state, local or federal

employee benefit laws, regulations or rules or other state, local or federal laws, regulations or rules

relating to, wages, benefits, employment or termination of employment with any or all Debtors or

any predecessors; (O) any antitrust laws; (P) any product liability or similar laws, whether state or

federal or otherwise; (Q) any environmental laws, rules, or regulations, including, without

limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act,

42 U.S.C. §§ 9601, et seq., or similar state statutes; (R) PACA; (S) any bulk sales or similar laws;

(T) any federal, state or local tax statutes, regulations or ordinances, including, without limitation,

the Internal Revenue Code of 1986, as amended; and (U) any common law doctrine of *de facto*

merger or successor or transferee liability, successor-in-interest liability theory or any other theory

of or related to successor liability.

23.     If any Person that has filed financing statements, mortgages, mechanic's liens, *lis*

*pendens* or other documents or agreements evidencing Claims against or in the Debtors or the

Acquired Assets owned by the Debtors shall not have delivered to the Debtors prior to the Closing,

in proper form for filing and executed by the appropriate parties, termination statements,

instruments of satisfaction, or, as appropriate, releases of all Claims (collectively, the "Release

Documents") the Person has with respect to the Debtors or the Acquired Assets or otherwise, then

with regard to the Acquired Assets that are purchased by the Buyer pursuant to the Asset Purchase Agreement and this Sale Order: (i) the Debtors are hereby authorized and directed to, and the Buyer is hereby authorized to, execute and file such statements, instruments, releases and other documents on behalf of the person with respect to the Acquired Assets; (ii) the Buyer is hereby authorized to file, register or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Claims against the Acquired Assets; and (iii) the Buyer may seek in this Court or any other court to compel appropriate persons to execute termination statements, instruments of satisfaction, and releases of all Claims with respect to the Acquired Assets other than liabilities expressly assumed under the Asset Purchase Agreement; provided that, notwithstanding anything in this Sale Order or the Asset Purchase Agreement to the contrary, the provisions of this Sale Order shall be self-executing, and neither the Sellers nor Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order. This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, county or local government agency, department or office.

24.     On the Closing Date, and subject to the terms of this Sale Order, this Sale Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer by the Debtors of the Acquired Assets acquired under the Asset Purchase Agreement or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in all of the Debtors' right, title, and interest in and to the Acquired Assets to the Buyer.

25.     To the extent permitted by applicable Law and in accordance with the terms of the Asset Purchase Agreement and the Related Agreements, during the Management Services Period,

FILED DATE: 5/19/2021 1:27 PM    2020L012403

the applicable Sellers shall remain the manager, controller or operator of each Acquired Property, Occupancy Leased Premise and Sparrow Property solely to the limited extent required for any Permit applicable to such Acquired Property, Occupancy Leased Premise or Sparrow Property (in the case of the Sparrow Properties, solely to the extent of any Sellers' rights related to the Sparrow Properties) to remain effective (the "Management Services"). Notwithstanding the foregoing, to the fullest extent permitted by applicable Law, Buyer and its Affiliated Designees are appointed as agent of such Seller to manage, control and operate each of: (i) the Acquired Properties; (ii) Occupancy Leased Premises; and (iii) the Sparrow Properties (in the case of the Sparrow Properties, solely to the extent of any Sellers' rights related to the Sparrow Properties) at which Management Services are being provided (collectively, the "Managed Properties").  Pursuant to their appointment as Sellers' agent, Buyer and its Affiliated Designees shall be entitled to manage, control and operate each of the Managed Properties as they see fit in their sole discretion (in each case, subject to the terms and conditions of any applicable leases or Restrictive Covenants (as defined below)) and collect and retain all revenues generated by each Managed Property.  All existing licenses or permits applicable to the business shall remain in place for the Buyer's or its Applicable Designee or its Applicable Designee benefit until either new licenses and permits are obtained or existing licenses and permits are transferred in accordance with applicable administrative procedures and, in furtherance thereof, the Management Services to be provided to the Buyer and its Affiliated Designees pursuant to Section 8.8(b) of the Asset Purchase Agreement are hereby approved in their entirety.  Moreover, except for good cause based on violations of Law unrelated to the assumption by the Buyer and its Affiliated Designees of the existing licenses and permits applicable to the business occurring pursuant to the Asset Purchase Agreement and this Sale Order, no licensing or permitting authority or other regulatory agency shall interrupt Buyer's

FILED DATE: 5/19/2021 1:27 PM    2020L012403

45

or any Affiliated Designee's operation of the business from and after the Closing Date without first obtaining relief from this Court. To the extent that Buyer seeks to designate to any person other than Buyer, including Buyer's Affiliates, prior written notice shall be provided to any landlord of the applicable property.

      26.    **Transition Services**.

      (a)    Pursuant to the Asset Purchase Agreement, the Parties shall enter into a Services Agreement on the Closing Date pursuant to which, effective as of the Closing Date, Sellers shall provide to Buyer and Buyer shall provide to Sellers, as applicable, certain services for a transitional period following the Closing Date. The Buyer and the Sellers are hereby authorized to execute and deliver any additional documentation as contemplated by the Asset Purchase Agreement, and to perform all such other and further acts as may be required under or in connection with the Services Agreement, including executing the Services Agreement and performing and receiving services thereunder. The Debtors shall serve a copy of the Services Agreement upon all parties that provide services to the Debtors that are subject to the Services Agreement within two (2) Business Days of execution. A form of the Services Agreement (subject to modification in advance of execution) has been filed with the Court and was summarized to the Court at the Hearing. All such parties' rights are reserved, and if any such party raises an issue with respect to the terms of the Services Agreement, which cannot be resolved by agreement of the parties, such issue will be heard by the Court on an expedited basis.

      (b)    Pursuant to the Asset Purchase Agreement, the Parties shall execute, effective as of the Closing Date, the Occupancy Agreement and the Seller Occupancy Agreement pursuant to which Sellers shall provide Buyer and Buyer shall provide Sellers, as applicable, with the right to occupy and operate certain of the Acquired Assets and the Designated Leases following

46

the Closing Date.  The Buyer and the Sellers are hereby authorized to enter into, execute and deliver any additional documentation as contemplated by the Asset Purchase Agreement, with respect to the Occupancy Agreement and the Seller Occupancy Agreement and to perform all such other and further acts as may be required under or in connection with the Occupancy Agreement and the Seller Occupancy Agreement.

(c)    Notwithstanding any other provision of this Sale Order, if the Debtors, after the Closing, remain the owners of any pharmacy scripts, prescription lists or any Inventory (as defined in the Asset Purchase Agreement) consisting of prescription medication or related pharmaceutical Inventory (the "Pharmacy Collateral") or any other Acquired Assets solely to effect an orderly transition of such Acquired Assets to the Buyer (such Acquired Assets, including any Pharmacy Collateral, the "Transition Assets"), including, without limitation, to allow time to resolve regulatory or other legal issues, (i) such Transition Assets shall be free and clear of any and all Claims in accordance with the terms of this Sale Order as if such Transition Assets were transferred to the Buyer as of the Closing and (ii) the Debtors are hereby authorized to grant to the agent (the "Transform ABL Agent"), for the benefit of itself, the lenders and the other credit parties under the ABL Financing (as defined in the Asset Purchase Agreement) (collectively, the "Transform Credit Parties"), continuing, valid, binding and non-avoidable, automatically and properly perfected first priority liens on and security interests in the  Transition Assets to the same extent the Transform ABL Agent would have a lien in such Transition Assets had ownership been transferred to the Buyer at Closing (the "Transition Liens") as security for the full and prompt performance and payment when due (whether at stated maturity, by acceleration or otherwise) of all obligations under the financing documents evidencing the ABL Financing (the "Transform Financing Documents") and the Debtors shall honor the Transition Liens as if the

FILED DATE: 5/19/2021 1:27 PM    2020L012403

Debtors were parties to the Transform Financing Documents, and had granted the liens thereunder. The Transition Liens granted by the Debtors shall be deemed automatically and properly perfected valid and enforceable simultaneously with the occurrence of Closing pursuant to the terms of this Sale Order without the necessity of the execution of security agreements, control agreements, pledge agreements, financing statements, mortgages, schedules or other similar documents, or the possession or control of the Transform Credit Parties of any Transition Assets.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to (a) permit the Debtors to grant the Transition Liens and (b) permit the Transform Credit Parties to take any and all actions and exercise any and all remedies with respect to the Transition Liens as if such liens were granted under the Transform Financing Documents; *provided, however*, that the Buyer shall bear any costs incurred by the Debtors in connection with the Transition Liens, including participating in or responding to any enforcement actions taken by the Transform Credit Parties with respect to the Transition Assets or the Transition Liens.  Immediately upon transfer of any of the Transition Assets to the Buyer, (i) the Transition Assets so transferred shall become subject in all respects to the liens and security interests granted for the benefit of the Transform Credit Parties under the Transform Financing Documents and (ii) the respective Transition Lien over the applicable transferred Transition Assets shall terminate and be of no further force or effect against the Debtors.  The Debtors and their successors and assigns are hereby prohibited from granting any lien, mortgage, encumbrance or any other interest, other than the Transition Liens, on all or a portion of the Transition Assets, and any lien, mortgage, encumbrance, or any other interest in contravention of this paragraph, including any liens or claims related to adequate protection under the Final DIP Order (as defined below), the Junior DIP Order or any other order of this Court, shall be void *ab initio.*  The Court shall retain jurisdiction to enforce the Transition Liens and any

FILED DATE: 5/19/2021 1:27 PM    2020L012403

disputes among the Transform Credit Parties, the Debtors and/or the Buyer with respect to the Transition Liens.

(d)    Notwithstanding any other provision of this Sale Order, if the Debtors, after the Closing, remain the owners of any Acquired Assets that are collateral of the Real Estate Financing, solely to effect an orderly transition of such Acquired Assets to the Buyer (such Acquired Assets, the "Transition Real Estate Assets"), including, without limitation, to allow time to resolve regulatory or other legal issues, (i) such Transition Assets shall be free and clear of any and all Claims in accordance with the terms of this Sale Order as if such Transition Assets were transferred to the Buyer as of the Closing and (ii) the Debtors are hereby authorized to grant to the agent (the "Transform Real Estate Agent"), for the benefit of itself and the lenders under the Real Estate Financing (as defined in the Asset Purchase Agreement) (collectively, the "Transform Real Estate Credit Parties"), continuing, valid, binding and non-avoidable, automatically and properly perfected first priority liens on and security interests in the Transition Real Estate Assets to the same extent the Transform Real Estate Agent would have a lien in such Transition Real Estate Assets had ownership been transferred to the Buyer at Closing (the "Transition Real Estate Liens") as security for the full and prompt performance and payment when due (whether at stated maturity, by acceleration or otherwise) of all obligations under the financing documents evidencing the Real Estate Financing (the "Transform Real Estate Financing Documents") and the Debtors shall honor the Transition Real Estate Liens as if the Debtors were parties to the Transform Real Estate Financing Documents, and had granted the liens thereunder.  The Transition Real Estate Liens granted by the Debtors shall be deemed automatically and properly perfected and valid and enforceable simultaneously with the occurrence of Closing pursuant to the terms of this Sale Order without the necessity of the execution of security agreements, control agreements, pledge

agreements, financing statements, mortgages, schedules or other similar documents, or the possession or control of the Transform Credit Parties of any Transition Assets. The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to (a) permit the Debtors to grant the Transition Real Estate Liens and (b) permit the Transform Real Estate Credit Parties to take any and all actions and exercise any and all remedies with respect to the Transition Real Estate Liens as if such liens were granted under the Transform Real Estate Financing Documents; *provided, however*, that the Buyer shall bear any costs incurred by the Debtors in connection with participating in or responding to any enforcement actions taken by the Transform Real Estate Credit Parties with respect to the Transition Real Estate Assets or the Transition Real Estate Liens. Immediately upon transfer of any of the Transition Real Estate Assets to the Buyer, (i) the Transition Real Estate Assets so transferred shall become subject in all respects to the liens and security interests granted for the benefit of the Transform Real Estate Credit Parties under the Transform Real Estate Financing Documents and (ii) the respective Transition Real Estate Lien over the applicable transferred Transition Real Estate Assets shall terminate and be of no further force or effect against the Debtors. The Debtors and their successors and assigns are hereby prohibited from granting any lien, mortgage, encumbrance or any other interest, other than the Transition Real Estate Liens, on all or a portion of the Transition Real Estate Assets, and any lien, mortgage, encumbrance, or any other interest in contravention of this paragraph, including any liens or claims related to adequate protection under the Final DIP Order (as defined below), the Junior DIP Order or any other order of this Court, shall be void *ab initio.* The Court shall retain jurisdiction to enforce the Transition Real Estate Liens and any disputes among the Transform Real Estate Credit Parties, the Debtors and/or the Buyer with respect to the Transition Real Estate Liens.

(e)     Notwithstanding the foregoing, any liens granted under paragraphs 26(c) and (d), above, shall not include those unexpired leases of nonresidential real property where any lessor has consent rights over the granting of any such lien and/or the affected lease prohibits the granting of such lien but, in that event, shall include, and be limited to, the proceeds of the prospective disposition of those leases.

(f)     Any and all proceeds from the sale of Transition Assets, whenever arising, including all Pharmacy Receivables (as defined in the ABL Financing and the Transform Financing Documents) and Credit Card Receivables (collectively, the "Transition Proceeds") shall be treated as Acquired Assets and be free and clear of any and all liens and Claims in accordance with the terms of this Sale Order as if such Transition Proceeds were transferred to the Buyer as of the Closing, and shall automatically and without any further action become subject to the first priority liens and security interests of the Transform Credit Parties under the Transform Financing Documents pursuant to the terms of this Sale Order without the necessity of the execution of security agreements, control agreements, pledge agreements, financing statements, mortgages, schedules or other similar documents, or the possession or control of the Transform Credit Parties of any Transition Proceeds.

(g)     Pursuant to the Asset Purchase Agreement, the Parties shall enter into an Employee Lease Agreement on the Closing Date pursuant to which, effective as of the Closing Date, Sellers shall provide to the Buyer the services of certain Business Employees for a transitional period.  The Buyer and the Sellers are hereby authorized to execute and deliver any additional documentation as contemplated by the Asset Purchase Agreement, and to perform all such other and further acts as may be required under or in connection with the Employee Lease

51

Agreement, including executing the Employee Lease Agreement and performing and receiving services thereunder.

27. **No Successor or Other Derivative Liability**.  By virtue of the Sale Transaction, the Buyer Related Parties and their affiliates, successors and assigns shall not be deemed or considered to: (i) be a legal successor, or otherwise be deemed a successor to any of the Debtors; (ii) have, *de facto* or otherwise, merged with or into any or all Debtors; (iii) be consolidated with the Debtors or their estates; or (iv) be an alter ego or a continuation or substantial continuation, or be holding itself out as a mere continuation, of any of the Debtors or their respective estates, businesses or operations, or any enterprise of the Debtors, in each case by any law or equity, and the Buyer Related Parties have not assumed nor are they in any way responsible for any liability or obligation of the Debtors or the Debtors' estates, except with respect to the Assumed Liabilities. Except as expressly set forth in the Asset Purchase Agreement, the Buyer and its affiliates, successors and assigns shall have no successor, transferee or vicarious liability of any kind or character, including, without limitation, under any theory of foreign, federal, state or local antitrust, environmental, successor, tax, ERISA, assignee or transferee liability, labor, product liability, employment, *de facto* merger, substantial continuity, or other law, rule, regulation or doctrine, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, without limitation, liabilities on account of any taxes or other Governmental Authority fees, contributions or surcharges, in each case arising, accruing or payable under, out of, in connection with, or in any way relating to, the operation of the Acquired Assets prior to the Closing Date or arising based on actions of the Debtors taken after the Closing Date; provided, however, that nothing herein shall

FILED DATE: 5/19/2021 1:27 PM    2020L012403

limit the liability or obligations of Buyer or any Assignee of a Contract or Lease with respect to the Reserved Lease Issues.

28.    **Assumption and Assignment of Assigned Agreements**.  Subject to paragraph 29, and conditioned upon the occurrence of the Closing Date and paragraphs 33 to 43 with respect to Designatable Leases and Additional Contracts, the Debtors are hereby authorized in accordance with sections 105(a) and 365 of the Bankruptcy Code to assume and assign the Assigned Agreements to the Buyer free and clear of all Claims to the extent set forth in this Sale Order, and to execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Assigned Agreements to the Buyer as provided in the Asset Purchase Agreement.  With respect to each of the Assigned Agreements, the Buyer, in accordance with the provisions of the Asset Purchase Agreement, has cured or will cure before the Closing Date or the Assumption Effective Date, or have provided adequate assurance of the prompt cure after the Closing of, any monetary default required to be cured with respect to the Assigned Agreements under section 365(b)(1) of the Bankruptcy Code, and the Buyer has provided adequate assurance of future performance under the Assigned Agreements in satisfaction of sections 365(b) and 365(f) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the non-debtor counterparties to such Assigned Agreements.  Upon the applicable Assumption Effective Date with respect to an Assigned Agreement, the Buyer shall be fully and irrevocably vested with all rights, title and interest of the Debtors under such Assigned Agreement and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to breach of such Assigned Agreement occurring after such assumption and assignment to Buyer as provided in section 365(k).  Buyer acknowledges and agrees that from and after the applicable Assumption Effective Date with respect to an Assigned Agreement, subject to

and in accordance with the Asset Purchase Agreement, it shall comply with the terms of each of such Assigned Agreement in its entirety, including any indemnification obligations expressly contained in such Assigned Agreement that could arise as a result of events or omissions that occur from and after the Closing, unless any such provisions are not enforceable pursuant to the terms of this Sale Order.  The assumption by the Debtors and assignment to the Buyer of any Assigned Agreement shall not be a default under such Assigned Agreement.  In accordance with the terms of the Asset Purchase Agreement, with respect to liabilities from any Assumed 503(b)(9) Claims, Buyer shall not be obligated to make any payments in respect of such liabilities until the earlier of: (i) the date that is 120 days following the closing of the sale; and (ii) the date on which a chapter 11 plan is confirmed by the Court with respect to the Debtors; provided further in accordance with the terms of the Asset Purchase Agreement, that with respect to the liabilities from any Other Payables, Buyer shall not be obligated to make any payments in respect of such liabilities until the later of: (i) the Closing Date; and (ii) the date that the applicable obligation thereunder becomes due in the ordinary course of business; provided further, and for the avoidance of doubt, the Buyer's agreement to pay Assumed 503(b)(9) Claims, Specified Payables, or any other administrative or priority claim of the Sellers pursuant to the terms of the Asset Purchase Agreement is a general unsecured contractual obligation of the Buyer owed solely to the Sellers.

29.    Provided that assumption of a Contract has been approved by the Bankruptcy Court, all Cure Costs that have not been waived by, or as to which an objection has been filed by, or that have not been otherwise addressed in an alternate arrangement with, any non-debtor party to an Assigned Agreement shall be: (i) paid in cash by the Buyers, on or before the Assumption Effective Date as to the undisputed amounts and (ii) reserved against the establishment of a cash reserve as to any disputed cure amounts by Buyer at least two (2) days after the Assumption Effective Date

54

(a "Cure Cost Reserve") and paid promptly upon resolution of any such disputed Cure Cost; provided that to the extent a new agreement by and between the Buyer and the counterparty to the applicable Assigned Agreement is entered into, such agreement shall provide for the Buyer's payment of applicable Cure Costs in an amount agreed to by the Buyer and the counterparty, and any such agreement shall require the counterparty's waiver of any and all prepetition claims against the Debtors based on the Assigned Agreement, and any damage claims arising out of the rejection of any such Assigned Agreement, and the Debtors shall have no liability therefor in accordance with the terms of the Asset Purchase Agreement on the applicable Assumption Effective Date to the extent provided in section 365(k) of the Bankruptcy Code.  Payment of Cure Costs as required under section 365(b) of the Bankruptcy Code with respect to the Initial Assigned Agreements identified on Exhibit A hereto (including the Citi Card Agreement (as defined below)), shall: (i) be in full satisfaction and cure of any and all defaults under these Assigned Agreements, whether monetary or non-monetary; and (ii) compensate the non-Debtor counterparty for any actual pecuniary loss resulting from such defaults.  For the avoidance of doubt, and pursuant to Section 8.9 of the Asset Purchase Agreement, notwithstanding that certain Amended and Restated Master Lease Agreement (the "Sparrow Master Lease"), dated as of March 14, 2018, by and between certain of the Debtors, as lessee, and SRC O.P. LLC, SRC Facilities LLC and SRC Real Estate (TX), LLC, as lessors (collectively, the "Sparrow Entities") being designated an Initial Assigned Agreement, the Buyer reserves all of its rights with respect to any rent that was due and owing to the Sparrow Entities under the Sparrow Master Lease and that remains unpaid as of the Closing Date, and the Debtors reserve all of their rights and objections with respect thereto.

30.    The Debtors served all counterparties to the Initial Assigned Agreements, identified on Exhibit A hereto (including the Citi Card Agreement), with an Assumption and Assignment

Notice and the deadline to object to the Cure Costs and adequate assurance of future performance with respect to the Buyer has passed. Accordingly, unless an objection to the proposed Cure Costs or Adequate Assurance Information with respect to the Buyer was filed and served before the applicable deadline, each non-Debtor party to an Initial Assigned Agreement is forever barred, estopped and permanently enjoined from asserting against the Debtors or the Buyer, their affiliates, successors or assigns or the property of any of them, any default existing as of the date of the Sale Hearing if such default was not raised or asserted prior to or at the Sale Hearing.

31.    Nothing in this Sale Order shall affect the rights of the Buyer, to the extent such rights are provided in the Asset Purchase Agreement, to add or remove any Potential Transferred Agreement to or from the list of Assigned Agreements set forth in the Asset Purchase Agreement in accordance with the terms thereof. All of the requirements of sections 365(b) and 365(f), including without limitation, the demonstration of adequate assurance of future performance and Cure Costs required under the Bankruptcy Code have been satisfied for the assumption by the Debtors, and the assignment by the Debtors to the Buyer, solely with respect to the Initial Assigned Agreements identified on Exhibit A hereto (including the Citi Card Agreement). The Buyer has satisfied its adequate assurance of future performance requirements with respect to the Initial Assigned Agreements identified on Exhibit A hereto (including the Citi Card Agreement) and in connection therewith has presented sufficient evidence regarding the Buyer's business plan and demonstrated it is sufficiently capitalized to comply with the necessary obligations under the Initial Assigned Agreements, identified on Exhibit A hereto (including the Citi Card Agreement). All objections to the Debtors', Buyer's or any other Assignee's adequate assurance of financial performance that were timely filed (other than adequate assurance objections that related to the Initial Assigned Agreements identified on Exhibit A hereto (including the Citi Card Agreement)

56

are fully reserved pending further hearing of this Court and nothing in this Sale Order shall limit such objections in any respect.

32.    To the extent a counterparty to an Assigned Agreement failed to timely object to a Cure Cost, such Cure Cost has been and shall be deemed to be finally determined as of the Debtors' filing of the Assumption and Assignment Notice and any such counterparty shall be barred, and forever prohibited from challenging, objecting to or denying the validity and finality of the Cure Cost as of such dates.

33.    **Designation Rights Procedures**.  The Debtors are authorized, at the direction of the Buyer pursuant to the Asset Purchase Agreement, to seek to assume and to assign pursuant to sections 363 and 365 of the Bankruptcy Code, the Designatable Leases and any Additional Contracts that the Buyer designates for assumption and assignment in accordance with the Asset Purchase Agreement and this Sale Order including to a permitted Assignee, as applicable.  Each of the Designatable Leases and Additional Contracts (to the extent the Additional Contracts are executory contracts) constitutes an unexpired lease or executory contract within the meaning of section 365 of the Bankruptcy Code and, at the Buyer's election, will be deemed assumed and assigned by the Debtors on the Assumption Effective Date subject to compliance with and the procedures set forth in the Asset Purchase Agreement and herein.[10]  The assumption of any liabilities under a Designatable Lease or such Additional Contracts that are assumed by an Assignee shall constitute a legal, valid and effective delegation of all liabilities thereunder to the applicable Assignee and, following payment of all amounts required to be paid by agreement of the parties or an order of the Court, and except as expressly set forth in the Asset Purchase

---

[10] In the case of any conflict between the provisions of the Asset Purchase Agreement and this Order, this Order shall govern.

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

Agreement or this Sale Order, shall divest the Debtors of all liability with respect to such Designatable Lease or Additional Contract for any breach of such Designatable Lease or Additional Contract occurring after the applicable Designation Assignment Date or any breach of such Additional Contract after the applicable date on which such Additional Contract is assigned to the applicable Assignee in accordance with Section 2.9 of the Asset Purchase Agreement, in each case, to the extent provided in section 365(k) of the Bankruptcy Code.

34.     The Debtors served all counterparties to the Designatable Leases and Additional Contracts (to the extent the Additional Contracts are executory contracts) listed as Potential Transferred Agreements ("Designatable Contract Counterparties") with an Assumption and Assignment Notice and the deadline to object to the Cure Costs and adequate assurance of future performance with respect to the Buyer has passed.[11]  Accordingly, unless an objection to the proposed Cure Costs or Adequate Assurance Information with respect to the Buyer was filed and served before the applicable deadline (a "Filed Objection"), the applicable Designatable Contract Counterparty is forever barred from objecting to (i) the Cure Costs and from asserting any additional cure or other amounts with respect to the applicable Designatable Lease or Additional Contract in the event it is assumed and/or assigned by an Assignee, except to the extent such Cure Costs further accrue (being subject to further credits, debits, and adjustments in accordance with

---

[11] The Debtors served all counterparties to Potential Transferred Agreements (to the extent the Potential Transferred Agreement is an executory contract or lease and was listed on the Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction or Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction) with an Assumption and Assignment Notice and as of the date of entry of this Sale Order, the deadline to object to Cure Costs has passed.  See Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction (Docket No. 1731); see also Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction (Docket No. 1774); see also Affidavits of Service (Docket Nos. 1969, 2132, 2162); see also Second Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction; see also Affidavit of Service (Docket No. 2314); see also Affidavit of Service (Docket No. 2417).]

the terms of the applicable underlying Lease or Contract) following the Debtors' filing of the applicable Assumption and Assignment Notice or (ii) adequate assurance of future performance by the Buyer; provided, however, that in the event that an Additional Contract was not listed as a Potential Transferred Agreement, and accordingly, no Assumption and Assignment notice was served upon the applicable Designatable Contract Counterparty, such Designatable Contract Counterparty shall have eight (8) days after the date on which the applicable supplemental Assumption and Assignment Notice is filed with the Court and served on the applicable Designatable Contract Counterparty (the "Supplemental Additional Contract Cure Objection Deadline"), to: (a) object to the applicable proposed Cure Costs for such Additional Contract and the assumption and assignment of the Additional Contract (the "Supplemental Additional Contract Cure Cost Objection"); and (b) serve the Supplemental Additional Contract Cure Cost Objection (by email, facsimile or hand delivery) so that it is actually received by counsel for the Debtors and the Buyer on or before the Supplemental Additional Contract Cure Objection Deadline; provided, further, however that in the event that a Designatable Contract Counterparty timely asserted a Filed Objection such counterparty shall be permitted to object solely on the basis of an objection to cure costs for such Designatable Lease or Additional Contract or the assumption and assignment of the Designatable Lease or Additional Contract that could not have been raised in its prior objection, until the applicable Designatable Contract Assumption and Assignment Objection Deadline (as defined below).

35.    With respect to any Filed Objection, to the extent that the applicable Contract or Lease is designated for assumption and assignment, a Designated Lease Notice or Designated Additional Contract Notice, as applicable, shall be served on the Designatable Contract Counterparty, and the Buyer and the applicable counterparty shall have authority to compromise,

59

FILED DATE: 5/19/2021 1:27 PM    2020L012403

settle or otherwise resolve any Filed Objections without further order of the Court. If the Debtors, the Buyer and the applicable counterparty determine that the objection cannot be resolved without judicial intervention, then the Filed Objection will be determined by the Court (following request for a hearing by the Debtors and/or the Buyer and/or the applicable counterparty filed with the Court and on no less than ten (10) days' notice to the other party).

36.    Except as set forth in paragraphs 29 to 35, all Designatable Contract Counterparties' rights under section 365 with respect to the assumption and assignment of the Designatable Leases and Additional Contracts pursuant to the Bankruptcy Code (including, without limitation, as to the provision of adequate assurance of future performance if the Designatable Leases are designated to a third party or with respect to the provision of adequate assurance of future performance of the Buyer if a Filed Objection was timely served) are reserved pending delivery of a notice from Seller to the applicable Designatable Contract Counterparty (i) pursuant to Section 5.2(b) of the Asset Purchase Agreement (a "Designated Lease Notice") following Sellers' receipt of a Buyer Assumption Notice or (ii) promptly following Sellers' receipt of a notice indicating that an Additional Contract has been designated for assignment or assumption and assignment pursuant to Section 2.9 of the Asset Purchase Agreement (a "Designated Additional Contract Notice") and are subject to the procedures and provisions set forth in Paragraphs 37 to 44 and 59 below.

37.    Each Designated Lease Notice will set forth the following information, to the best of the Debtors' knowledge: (a) the street address of the real property that is the subject of such Designatable Lease; (b) the name and address of the counterparty of such Designatable Lease (and their counsel, if known); (c) a description of the deadlines and procedures for filing objections to the Designated Lease Notice; (d) the identity of the proposed assignee; (e) information intended to provide the counterparty to the Designatable Lease with adequate assurance of future

performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code, if and only if such Designatable Lease is proposed to be assigned to a third party and (f) the proposed Cure Costs associated with such Designatable Lease; provided, however, that if adequate assurance information is provided pursuant to this paragraph, such adequate assurance information shall be kept strictly confidential and not be used for any purpose other than to (a) evaluate whether adequate assurance requirements under Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3) have been satisfied, and (b) to support any objection to adequate assurance provided by any party including the Buyer and its affiliates.

38.     During the Designation Rights Period, the Buyer may designate any Designatable Lease or Additional Contract for assumption and assignment in accordance with the terms of the Asset Purchase Agreement and this Sale Order.  In such event, the Debtors shall file with the Court and serve on the applicable Designatable Contract Counterparty a Designated Lease Notice or Designated Additional Contract Notice, together with any applicable Assignment and Assumption of Lease or other applicable assignment agreement with respect to an Additional Contract.  If the proposed Assignee is not the Buyer, the Debtors shall also deliver to the applicable Designatable Contract Counterparty (and deliver by email or facsimile to counsel for the applicable Designatable Contract Counterparty, if such counsel has filed a notice of appearance in the Bankruptcy Cases) evidence of adequate assurance of future performance within the meaning of section 365 of the Bankruptcy Code with respect to the applicable Designatable Lease or Additional Contract that is proposed to be assumed and assigned to such Assignee.

39.     Any party seeking to object to the assumption and assignment of any Designatable Lease or Additional Contract to a proposed Assignee that is not the Buyer on any basis other than the Cure Costs (including, but not limited to, objections to adequate assurance of future

FILED DATE: 5/19/2021 1:27 PM    2020L012403

performance if such Designatable Leases are designated to a third party or with respect to the provision of adequate assurance of future performance of the Buyer if a Filed Objection was timely served), must (a) file a written objection in compliance with the Bankruptcy Rules and the Local Rules (a "Designatable Contract Assumption and Assignment Objection") with the Court, so that such objection is filed no later than eight (8) days after the date on which (i) the applicable Designated Lease Notice or Designated Additional Contract Notice is filed with the Court and (ii) evidence of adequate assurance of future performance required pursuant to the preceding sentence is served on the applicable Designatable Contract Counterparty (the "Designatable Contract Assumption and Assignment Objection Deadline"), and (b) serve the Designatable Contract Assumption and Assignment Objection (by email, facsimile or hand delivery) so that it is actually received by counsel for the Debtors and the Buyer on or before the Designatable Contract Assumption and Assignment Objection Deadline.

40.     If no Filed Objection has been filed, or Designatable Contract Assumption and Assignment Objection has been filed by the Designatable Contract Assumption and Assignment Objection Deadline, this Sale Order shall serve as approval of the assumption and assignment of the applicable Designatable Contract or Additional Contract.  If a Filed Objection has been filed, or a Designatable Contract Assumption and Assignment Objection is timely filed and not withdrawn or resolved, the Debtors, the Buyer and the objecting Designatable Contract Counterparty shall have authority to compromise, settle or otherwise resolve any objections without further order of the Court.  If the Debtors, the Buyer and the objecting Designatable Contract Counterparty determine that the objection cannot be resolved without judicial intervention, then the determination of the assumption and assignment of the Designatable Lease or Additional Contract will be determined by the Court on a date to be scheduled by any of the

Debtors, the Buyer or the objecting Designatable Contract Counterparty (which hearing date shall be no sooner than ten (10) business days following the date of filing of the Designated Lease Notice or Designated Additional Contract Notice), unless the Debtors, the Buyer and the applicable Designatable Contract Counterparty agree otherwise.

41.    Pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code, the Buyer shall, on the applicable Assumption Effective Date for a Designatable Lease or Additional Contract, cure all nonmonetary defaults solely to the extent required under section 365 of the Bankruptcy Code and pay to the applicable Designatable Contract Counterparty all undisputed Cure Costs and other such undisputed amounts required with respect to such Designatable Lease or Additional Contract, solely to the extent designated for assumption by the Sellers and assignment to Buyer by written notice from Buyer to Sellers delivered prior to the end of the Designation Rights Period (the "Designated Agreements").  Upon assumption and assignment of any Designated Agreement, the Debtors and the estates shall be relieved of any liability for breach of such Designated Agreement pursuant to section 365(k) of the Bankruptcy Code; provided that, except as expressly provided herein or in the Asset Purchase Agreement or Related Agreements, and except for any obligations in respect of the Reserved Lease Issues, neither the Buyer (except to the extent such obligations constitute Cure Costs) nor the applicable Assignee shall have any obligations under any Designated Agreement that is an Acquired Lease or related Assigned Agreement in respect of any portion of any year-end (or other) adjustment (including, without limitation, for royalties, rents, utilities, taxes, insurance, fees, any common area or other maintenance charges, promotional funds and percentage rent) arising under any of the Acquired Leases or any other Assigned Agreements for the calendar year in which the applicable Lease Assignment occurs attributable to (x) the portion of such calendar year occurring prior to such Lease Assignment or (y) for any previous

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM   2020L012403

calendar year, and the Sellers shall fully indemnify and hold harmless the Buyer and the applicable Assignee with respect thereto.

42.     Solely in connection with the Initial Assigned Agreements listed on Exhibit A, upon the applicable Assumption Effective Date, any provision in any Assigned Agreement that purports to declare a breach or default as a result of a change or transfer of control or any interest in respect of the Debtors is unenforceable and all Assigned Agreements shall remain in full force and effect notwithstanding assignment thereof.  Solely in connection with the Initial Assigned Agreements listed on Exhibit A, no sections or provisions of any Assigned Agreements, that in any way purport to: (i) prohibit, restrict, or condition the Debtors' assignment of such Assigned Agreement (including, but not limited to, the conditioning of such assignment on the consent of any non-debtor party to such Assigned Agreement); (ii) provide for the cancellation, or modification of the terms of the Assigned Agreement based on the filing of a bankruptcy case, the financial condition of the Debtors, or similar circumstances; (iii) provide for additional payments (e.g., so called "profit" sharing/splitting), penalties, fees, charges, or other financial accommodations in favor of the non-debtor third party to such Assigned Agreement upon assignment thereof; or (iv) provide for any rights of first refusal on a contract counterparty's part, or any recapture or termination rights in favor of a contract counterparty, or any right of a Landlord to take an assignment or sublease from a tenant, shall have any force or effect with respect to the grant and honoring of the Designation Rights or the rights under Section 2.9 of the Asset Purchase Agreement in accordance with this Sale Order and the Asset Purchase Agreement and assignments of Assigned Agreements by the Debtors in accordance therewith, because they constitute unenforceable antiassignment provisions under section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under section 365(e) of the Bankruptcy Code.  Upon assumption and assignment of any Designatable

Lease or Additional Contract pursuant to the procedures set forth herein and in the Asset Purchase Agreement, the applicable Assignee shall enjoy all of the rights and benefits, and shall assume all obligations, under each such Assigned Agreement as of the applicable Assumption Effective Date.

43.    Solely in connection with the Initial Assigned Agreements listed on Exhibit A, upon the applicable Assumption Effective Date, except as otherwise expressly agreed by the Buyer and the applicable Designatable Contract Counterparty, notwithstanding any provision in any Designatable Lease that purports to prohibit, restrict or condition such action, upon the assumption and assignment of such Designatable Lease to an Assignee in accordance with the terms of the Asset Purchase Agreement, (x) the applicable Assignee shall be authorized to: (i) use the applicable Lease Premises (as defined in the Asset Purchase Agreement), subject to section 365(b)(3) of the Bankruptcy Code, as a retail store (and related goods and services) upon consummation of the assumption and assignment of such Designatable Lease to such Assignee in accordance with the terms of the Asset Purchase Agreement; (ii) operate such Lease Premises under the Buyer's trade name or any other trade name which the Buyer owns or is authorized to use (including any of the Debtors' trade names); (iii) make such alterations and modifications to the applicable Lease Premises (including signage, together with appropriate changes to existing tenant signage in the respective shopping center or mall, including panels on all pylons, monuments, directional and other ground and off-premises signs where Sellers are presently represented) deemed necessary by such Assignee (subject to all applicable laws including all applicable municipal codes) as are necessary or desirable for such Assignee to conform such Lease Premises to the prototypical retail store (or such Assignee's typical retail store); (iv) remain "dark" with respect to such Lease Premises after such assumption and assignment until the date that is necessary to permit such Assignee to remodel, restock, re-fixture, change signage and/or until

FILED DATE: 5/19/2021 1:27 PM    2020L012403

completion of the work described in clause (iii) above (so long as such date is not more than one hundred fifty (150) days after the applicable Designation Assignment Date) or such later date as may be reasonably required for the restoration of the such Lease Premises following any applicable Casualty / Condemnation Event; and (v) exercise, utilize or take advantage of any renewal options and any other current or future rights, benefits, privileges, and options granted or provided to the Debtors under such Designated Agreement (including all of the same which may be described or designated as, or purport to be, "personal" to the Debtors or to a named entity in such Designated Agreement or to be exercisable only by the Debtors or by a named entity or an entity operating under a specific trade name)  and (y) neither the Buyer nor the applicable Assignee shall have any responsibility or liability for any Excluded Asset-Sale Taxes and Excluded Asset-Reorganization Taxes.  For the avoidance of doubt, all rights of the counterparties to any applicable Designatable Lease are fully reserved in connection with any of the foregoing actions.

44.    To the extent that any IP License is designated for assumption and assignment pursuant to Section 2.9 of the Asset Purchase Agreement, on the Assumption Effective Date, such agreement, including the rights and obligations thereunder, will be deemed to have been assumed and assigned to the Buyer as of the Closing Date.

45.    ***Ipso Facto* Clauses Ineffective**.  Except as otherwise specifically provided for by order of this Court or the Asset Purchase Agreement, the Assigned Agreements shall be transferred to, and remain in full force and effect for the benefit of, the Buyer or, for applicable Designated Agreements, the Assignee in accordance with their respective terms, including all obligations of the Buyer or, for applicable Designated Agreements, the Assignee as the assignee of the Assigned Agreements, notwithstanding any provision in any such Assigned Agreements (including, without limitation, those of the type described in sections 365(e)(1) and (f) of the Bankruptcy Code) that

FILED DATE: 5/19/2021 1:27 PM    2020L012403

prohibits, restricts or conditions such assignment or transfer. There shall be no, and all non-Debtor parties to any Assigned Agreements are forever barred and permanently enjoined from raising or asserting against the Debtors or the Buyer, any defaults, breach, claim, pecuniary loss, rent accelerations, escalations, assignment fees, increases or any other fees charged to the Buyer or the Debtors as a result of the assumption or assignment of the Assigned Agreements or the Closing.

46.    Except as otherwise specifically provided for by order of this Court, upon the Debtors' assignment of the Assigned Agreements to the Buyer under the provisions of this Sale Order and full payment of all Cure Costs as required under section 365(b) of the Bankruptcy Code, no default shall exist under any Assigned Agreements, and no counterparty to any Assigned Agreements shall be permitted to declare a default by any Debtor or the Buyer or otherwise take action against the Buyer as a result of any Debtor's financial condition, bankruptcy or failure to perform any of its obligations under the relevant Assigned Agreement. Any provision in an Assigned Agreement that prohibits or conditions the assignment of such Assigned Agreement or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, refuse to renew, or modify any term or condition upon such assignment, constitutes an unenforceable anti-assignment provision that is void and of no force and effect solely in connection with the transfer thereof pursuant to this Sale Order. The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assigned Agreement shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyer's rights to enforce every term and condition of the Assigned Agreement.

47.    **Statutory Mootness**. The Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and is hereby granted, the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy Code. The Sale

Transaction contemplated by the Asset Purchase Agreement is undertaken by the Buyer and ESL without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein of the Sale Transaction shall neither affect the validity of the Sale Transaction nor the transfer of the Acquired Assets owned by the Debtors to the Buyer, free and clear of Claims, unless such authorization is duly stayed before the Closing of the Sale Transaction pending such appeal.  The Debtors and the Buyer will be acting in good faith if they proceed to consummate the Sale Transaction at any time after entry of this Sale Order.

48.     **No Avoidance of Asset Purchase Agreement**.  Neither the Debtors nor the Buyer Related Parties have engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.  Accordingly, the Asset Purchase Agreement and the Sale Transaction shall not be avoidable under section 363(n) or chapter 5 of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) of the Bankruptcy Code in respect of the Asset Purchase Agreement or the Sale Transaction.

49.     **Waiver of Bankruptcy Rules 6004(h), 6006(d) and 7062**.  Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d) or 7062 or any applicable provisions of the Local Rules, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.  Time is of the essence in closing the Sale Transaction and the Debtors and the Buyer intend to close the Sale Transaction as soon as practicable.  Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing Date, or

FILED DATE: 5/19/2021 1:27 PM    2020L012403

risk its appeal will be foreclosed as moot. This Sale Order constitutes a final order upon which the Debtors and the Buyer are entitled to rely. This paragraph 49 shall not apply to Reserved Lease Issues.

50. **Personally Identifiable Information**. After appointment of the Consumer Privacy Ombudsman in these chapter 11 cases, in accordance with section 332 of the Bankruptcy Code, and after giving due consideration to the facts, circumstances and conditions of the Asset Purchase Agreement, as well as the report (as supplemented) of the Consumer Privacy Ombudsman filed with the Court which Buyer agrees to comply with, no showing was made that the sale of personally identifiable information or private health information contemplated in the Asset Purchase Agreement, subject to the terms of this Sale Order, would violate applicable nonbankruptcy law; provided that pre-Closing costs of the Consumer Privacy Ombudsman shall be borne equally between Buyer, on the one hand, and Sellers, on the other hand, to the extent such costs are incurred in relation to the Transactions.

51. **Distribution and Application of Sale Proceeds**.

(a)    At the Closing, the Buyer shall pay to the Sellers (in accordance with the terms of the Asset Purchase Agreement), the balance of the purchase price remaining due and owing under the Asset Purchase Agreement. The proceeds of the Sale Transaction shall be applied as provided in the *Final Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* (Docket No. 955) ("Final DIP Order"), including to repay at the Closing the DIP ABL Secured Obligations (as defined in the Final DIP Order) in full in cash from the sale of those Acquired Assets upon which the DIP

ABL Credit Parties have a first lien, including all costs and expenses of the DIP ABL Credit Parties

set forth in the applicable pay off letter, without the need for any professional for the DIP ABL

Credit Parties to deliver or serve any invoices to any other party (including those parties identified

in paragraph 19(f) of the Final DIP Order).  Notwithstanding the foregoing the Securities

Consideration shall be distributed as provided in Schedule 9.2 of the Asset Purchase Agreement.

The methodology for allocation of proceeds shall be as set forth in the Asset Purchase Agreement.

(b)    With respect to the Cyrus Claims: (i) up to $350 million of Junior

DIP Secured Obligations outstanding under the Junior DIP Order, including all fees, adequate

protection amounts due and owing, and interest thereon, may be rolled into a new financing of the

Buyer (the "Exit Financing Facility") on the Closing; and (ii) the Cyrus LC Facility Claims will

be rolled over into a new letter of credit facility with the Buyer, and such claims shall be deemed

satisfied and fully discharged against the Debtors.

(c)    If any order under section 1112 of the Bankruptcy Code is entered

in the cases, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy

Code), that this Sale Order, including the rights granted to Buyer hereunder, shall remain effective

and, notwithstanding such conversion or dismissal, shall remain binding on parties in interest.  This

Sale Order shall not be modified by any chapter 11 plan confirmed in the cases or by any

subsequent orders of the Court.

52.    **Binding Effect of Sale Order**.  The terms and provisions of the Asset Purchase

Agreement and this Sale Order shall be binding in all respects upon, and shall inure to the benefit

of, the Debtors, their estates and their creditors, non-debtor affiliates, any affected third parties, all

holders of equity interests in the Debtors, all holders of any claims, whether known or unknown,

against the Debtors, any holders of Claims against or on all or any portion of the Acquired Assets

FILED DATE: 5/19/2021 1:27 PM    2020L012403

owned by the Debtors, including, but not limited to all contract counterparties, leaseholders, governmental units, and any trustees, examiners, administrators, responsible officers, estate representatives, or similar entities for the Debtors, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' chapter 11 cases, and each of their respective affiliates, successors and assigns.  The Asset Purchase Agreement and the Sale Order shall inure to the benefit of the Debtors, their estates and creditors, the Buyer and their respective successors and assigns.   The Asset Purchase Agreement, the Sale Transaction and this Sale Order shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors or any trustee, examiner or receiver.

53.   **Conflicts; Precedence**.  In the event that there is a direct conflict between the terms of this Sale Order, the Asset Purchase Agreement, and any documents executed in connection therewith, the provisions contained in this Sale Order, the Asset Purchase Agreement and any documents executed in connection therewith shall govern, in that order.  Nothing contained in any chapter 11 plan hereafter confirmed in these chapter 11 cases, any order confirming such plan, or in any other order of any type or kind entered in these chapter 11 cases (including, without limitation, any order entered after any conversion of any or all of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code) or in any related proceeding shall alter, conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Sale Order.

54.   **Modification of Asset Purchase Agreement**.  The Asset Purchase Agreement and Related Agreements, documents or other instruments executed in connection therewith, may be modified, amended or supplemented by the parties thereto, in a writing signed by each party, and in accordance with the terms thereof, without further order of the Court; provided that any such

FILED DATE: 5/19/2021 1:27 PM    2020L012403

modification, amendment or supplement does not materially change the terms of the Asset Purchase Agreement or Related Agreements, documents or other instruments.

55.    **Bulk Sales; Taxes**.  No bulk sales law, bulk transfer law or similar law of any state or other jurisdiction (including those relating to taxes other than Transfer Taxes) shall apply in any way to the transactions contemplated by the Asset Purchase Agreement, the Sale Motion or this Sale Order.  Except as otherwise expressly provided in the Asset Purchase Agreement, all obligations of the Debtors relating to taxes, whether arising under any law, by the Asset Purchase Agreement, or otherwise, shall be the obligation of and fulfilled and paid by the Debtors.

56.    **Lease Deposits and Security**.  The Buyer shall not be required, pursuant to section 365(l) of the Bankruptcy Code or otherwise, to provide any additional deposit or security with respect to any Initial Assigned Agreement to the extent not previously provided by the Debtors. All timely Filed Objections that have asserted requests pursuant to section 365(l) of the Bankruptcy Code or otherwise, to provide any additional deposit or security with respect to any Assigned Agreement other than the Initial Assigned Agreements are hereby adjourned to a hearing at a future date with all parties' rights reserved.

57.    **Automatic Stay**.  The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Asset Purchase Agreement, and Related Agreements, documents or other instruments.   The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the provisions of this Sale Order.

58.    **Retention of Jurisdiction**.  This Court shall retain exclusive jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of this Sale Order and the Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder (and of

FILED DATE: 5/19/2021 1:27 PM    2020L012403

each of the agreements executed in connection therewith), to adjudicate disputes related to this Sale Order or the Asset Purchase Agreement (and such other related agreements, documents or other instruments) and to enforce the injunctions set forth herein.

59.    **Restrictive Covenants; Master Leases**.

(a)    Nothing herein or in the Asset Purchase Agreement or any related document shall authorize, absent further order of the Court or agreement among the Debtors or the Buyer, on the one hand, and the applicable non-Debtor counterparty, on the other hand, the sale of any real estate property owned by any of the Debtors, free and clear of (and shall not extinguish or otherwise diminish) any interests, covenants, or rights applicable to such real estate assets that limit or condition the permitted use of the property such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits (collectively, "Restrictive Covenants") that are not executory or that run with the land.  To the extent that the Debtors or any other party seek to assume and assign any real estate leases to which a Debtor is a party free and clear of any Restrictive Covenant, the Debtors or such party shall file a notice that describes the Restrictive Covenant that the party is seeking to extinguish or otherwise diminish and any non-Debtor counterparty to a Restrictive Covenant will have fourteen (14) calendar days from the filing and service of notice of such requested relief to file and serve an objection thereto; any such issues shall be determined by the Court or otherwise resolved consensually prior to the effectiveness of the assignment of any Lease, and all rights, remedies, and positions of all parties with respect to any such relief are preserved.

(b)    Nothing in this Sale Order, the Asset Purchase Agreement, or any other related agreements, documents or other instruments shall be deemed to authorize or shall be argued to permit the Debtors, the Buyer, or any Proposed Assignee, their agents or advisors to take

any action in connection with an unexpired master lease of nonresidential real property to which a Debtor is a party (each such lease, a "Master Lease") that is not in compliance with, or that would result in a default or breach under, such Master Lease, without an amendment to or waiver under such Master Lease, in accordance with its terms and all consents required for such amendment or waiver under such Master Lease.  To the extent that the Debtors or any other party seek to sever a Master Lease for any reason prior to an assumption and assignment of such Master Lease in accordance with the terms of this Sale Order, the Debtors shall file a notice that describes the nature and reason of such severing, and any non-Debtor counterparty to such Master Lease will have fourteen (14) calendar days from the filing and service of notice of such requested relief to file and serve an objection thereto; any such issues shall be determined by the Court or otherwise resolved consensually prior to the effectiveness of the assignment of any lease, and all rights, remedies, and positions of all parties with respect to any such relief are preserved.

60.    **Stand Alone L/C Facility**. As of the Closing Date, all obligations of the applicable Debtors with respect to the Letter of Credit and Reimbursement Agreement, dated as of December 28, 2016, among such Debtors, Citibank, N.A., as administrative agent and issuing bank (collectively, "Citi") and letter of credit lenders party thereto (the "LC lenders") (as amended from time to time, the "Citi Letter of Credit Agreement") shall be assumed by the applicable Buyer Affiliate, all obligations of any Debtor thereunder (other than any contingent obligations (including contingent indemnification obligations) that are not yet due and payable) shall be terminated and all collateral provided by the Debtors to secure such obligations shall be released (other than such liens securing contingent indemnification obligations in respect of the Citi Letter of Credit Agreement, which liens shall attach to the net proceeds of the Sale Transaction, in the same order of their priority and with the same validity, force and effect which they now have against the

FILED DATE: 5/19/2021 1:27 PM    2020L012403

Acquired Assets, subject to any claims and defenses the Debtors may possess with respect thereto, in each case immediately before the Closing).

61. **Existing Wells and BAML Letters of Credit**.  Notwithstanding the termination of the DIP ABL Facility (as defined in the Final DIP Order), each of the outstanding letters of credit issued by Bank of America, N.A. and Wells Fargo Bank, National Association, pursuant to the DIP ABL Facility, will remain outstanding after the Closing Date in accordance with their respective terms so long as such letters of credit are either (1) cash collateralized in an amount of up to 105% of the face amount of such letters of credit to secure the reimbursement obligations of the Debtors (and their successors and assigns) with respect to such letters of credit on the Closing Date, pursuant to one or more cash collateral agreements between the Buyer and each of Bank of America, N.A. and Wells Fargo Bank, National Association, as Issuing Lenders under the applicable cash collateral agreement (such letters of credit, the "Cash Collateralized Letters of Credit" and such cash collateral agreements, the "Cash Collateral Agreements"), and/or (2) backstopped in an amount of up to 105% of the face amount of such letters of credit to secure the reimbursement obligations of the Debtors (and their successors and assigns) with respect to such letters of credit on the Closing Date (such letters of credit, the "Backstopped Letters of Credit").  The security interests securing the obligations under the DIP ABL Facility, including the security interests securing obligations with respect to each letter of credit issued under the DIP ABL Facility, whether a Cash Collateralized Letter of Credit or a Backstopped Letter of Credit, will be terminated so that such obligations of any Debtors under the DIP ABL Facility are no longer secured by the collateral granted by the Debtors under the DIP ABL Facility, and all such obligations of such Debtors under the DIP ABL Facility will be terminated (other than (x) any contingent obligations that are not yet due and payable and (y) obligations with respect to the Cash

Collateralized Letters of Credit or Backstopped Letters of Credit, which in the case of this clause (y) are being cash collateralized or backstopped by the Buyers pursuant to this paragraph). For the avoidance of doubt, the cash collateral provided for the Cash Collateralized Letter of Credit shall not be property of the Debtors or their estates. The automatic stay imposed under section 362(a) of the Bankruptcy Code shall not apply to the Cash Collateral Agreements or the cash collateral provided therefor. The Buyer shall bear any costs incurred by the Debtors in connection with any Cash Collateralized Letters of Credit or Backstopped Letters of Credit, including any fees payable thereon. For the avoidance of doubt, the Debtors shall not be party to, nor have rights or obligations under, any letter of credit that backstops the Backstopped Letters of Credit.

62. **Direction to Creditors and Parties in Interest**.

(a)     In connection with the Credit Bid, each agent, trustee, collateral agent or similar person (each, a "Credit Bid Claim Agent") that is party to an indenture, credit agreement, security agreement or any similar document or instrument (each, a "Credit Bid Claim Document") in respect of the credit bid claims is authorized to execute such documents and take all other actions, in accordance with, and subject to the terms of, the applicable Credit Bid Claim Document, as may be necessary to facilitate the Credit Bid, including, without limitation, the *pro rata* allocation and distribution of equity securities of the Buyer (pro rata within each class of creditors), to all creditors holding any obligations of any one or more of the Debtors which are the subject of the Credit Bid (the "Credit Bid Obligations"), including without limitation, the non-ESL holders of the Credit Bid Obligations, and the acknowledgment of the reduction in principal amount of the remaining Credit Bid Obligations as a result of, and in the amount of, the Credit Bid, such reduction to be made *pro rata* to all holders of the Credit Bid Obligations by class of Creditor, including, without limitation, the non-ESL holders of the Credit Bid Obligations. Each

Credit Bid Claim Agent may rely fully on all amounts of equity securities of the Buyer delivered and allocated to it, and the amount of the reduction in the principal amount to be applied to the Credit Bid Obligations for which the Credit Bid Claim Agent is acting in such capacity, as certified by ESL or the Buyer and the applicable Debtor(s) in a written certificate (the "Certificate") to be delivered to the relevant Credit Bid Claim Agent at or prior to the Closing. The Credit Bid Claim Agent may, but shall not be obligated to, make any review or investigation of the accuracy of any of the calculations or numbers set forth in such Certificate. On the Closing Date, Buyer shall pay to each Credit Bid Claim Agent the reasonable fees and expenses invoiced on or prior to the Closing Date (including its reasonable attorneys' fees and disbursements) incurred in connection with the facilitation of the Credit Bid. Anything in this Sale Order to the contrary notwithstanding, nothing in this Order is intended to, or shall, modify or amend the terms and conditions of the Second Lien Security Agreement, all of which shall remain in full force and effect; provided, however, that this sentence shall not impact in any way the sale of the Acquired Assets (including, for the avoidance of doubt, the Transition Assets regardless of whether the Debtors retain title pursuant to the Transition Services Agreement) free and clear of all liens and Claims arising under, in connection with or in any way related to the Second Lien Security Agreement.

(b)    Each Credit Bid Claim Agent is hereby released and exculpated from any Claim, cause of action, obligation, suit, judgment, damage, demand, loss, or liability for any claim related to any act or omission in connection with, relating to, or arising out of, the Credit Bid and the facilitation thereof and any transaction contemplated in connection therewith, other than any such Claim, cause of action, obligation, suit, judgment, damage, demand, loss, or liability stemming from the actual fraud, willful misconduct, or gross negligence of any such Credit Bid Claims Agent.

FILED DATE: 5/19/2021 1:27 PM    2020L012403

63. **Citibank Credit Card Agreements**. Pursuant to this Order, the Debtors are assuming and assigning (i) that certain Second Amended and Restated Program Agreement, dated as of October 3, 2018 (the "Citibank Credit Card Program Agreement"), by and among Sears, Roebuck and Co., Sears Brands Business Unit Corporation, the Other Sears Parties (as defined therein) that are parties thereto, and Citibank, N.A. ("Citi"), (ii) the New Merchant Agreement (as defined in the Citibank Credit Card Program Agreement) and (iii) the Marketing Agreement (as defined in the Citibank Credit Card Program Agreement). The Citibank Credit Card Program Agreement, the New Merchant Agreement, and the Marketing Agreement are collectively referred to as the "Citibank Credit Card Agreements." Nothing in this Order, the Asset Purchase Agreement or any other Sale Transaction document, and neither the Sale Transaction itself nor any act taken in connection with the Sale Transaction, shall impair, invalidate, limit, waive, forfeit or otherwise render ineffective any right of Citi arising under or recognized by any Citibank Credit Card Agreement, including any right in accordance with the terms and conditions of the Citibank Credit Card Agreements to (x) to draw on the "Eligible Letter of Credit" funded under the Citibank Credit Card Program Agreement, in Citi's sole discretion, (a) to discharge or satisfy contingent liabilities arising under any Integrated Agreement (as defined in the Citibank Credit Card Program Agreement) or (b) to otherwise reimburse Citi for any losses arising out of amounts owing under any Integrated Agreement, in each case of (a) or (b), whether arising prior to, on, or after the Closing Date and whether owed by Seller or Buyer; (y) if such Eligible Letter of Credit is not renewed or replaced in accordance with Section 8.8 of the Citibank Credit Card Program Agreement, to draw on such Eligible Letter of Credit and maintain the reserve by retaining the amount of such draw; and (z) to recoup, setoff or deduct amounts owing to Citi under any of the

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

Citibank Credit Card Agreements in accordance with the terms thereof, in each case, whether such amounts owed arose prior to, on, or after the Closing Date and whether owed by Seller or Buyer.

64.    **Chubb**.  Notwithstanding anything to the contrary in the Motion, the Global Bidding Procedures, the Global Bidding Procedures Order, the Asset Purchase Agreement, any cure notice or assumption notice (including, but not limited to, any Assumption and Assignment Notice), or this Sale Order (i) none of the insurance policies or any related agreements (collectively, the "Chubb Insurance Contracts") issued by any of ACE American Insurance Company, ACE Fire Underwriters Insurance Company, ACE Property and Casualty Insurance Company, Indemnity Insurance Company of North America, Westchester Surplus Lines Insurance Company, Westchester Fire Insurance Company, Illinois Union Insurance Company, Federal Insurance Company, or their respective affiliates or successors (collectively, the "Chubb Companies"), or, except as set forth herein, any rights, benefits, claims, rights to payment and/or recoveries under the Chubb Insurance Contracts shall be sold, assigned or otherwise transferred to the Buyer in connection with the Global Asset Sale Transaction; and (ii) nothing shall alter, modify or otherwise amend the terms or conditions of the Chubb Insurance Contracts; provided, however, that to the extent any claim seeking insurance policy proceeds under any insurance policies included in the Chubb Insurance Contracts arises with respect to the Business or any Acquired Assets, the Debtors may pursue such claims for such insurance proceeds in accordance with the terms of the insurance policies included in the Chubb Insurance Contracts (and shall pursue such claims if requested by Buyer), and, if applicable, turn over to the Buyer any proceeds in respect of such claims in accordance with section 2.1(q) of the Asset Purchase Agreement (each, a "Proceed Turnover"); provided, further, however, that the Chubb Companies shall not have any duty to

effectuate a Proceed Turnover or liability related to a Proceed Turnover except as provided in the Chubb Insurance Contracts.

65.    **National Distribution Centers**.  Notwithstanding anything to the contrary herein, the proposed sale of the Kmart-owned property in Greensboro, North Carolina designated as property 30961 and leased to National Distribution Centers (NDC) shall be carved out from this Order, and the proposed sale of this property and all issues raised by NDC in its limited objection (Docket No. 1864) (the "NDC Limited Objection") and supplement thereto (Docket No. 2376) with respect to the Parking Lot Lease (as defined in the NDC Limited Objection) shall be adjourned for consideration on a future hearing date to be agreed by the parties.

66.    **Bank of America Agreements**.  Pursuant to this Sale Order, the Debtors are assuming and assigning certain agreements governing the issuance, administration, and servicing of certain credit cards and credit card programs and certain private label letters of credit (such agreements, the "Bank of America Program Agreements") by Bank of America, N.A. ("Bank of America").  Nothing in this Order, the Asset Purchase Agreement or any other Sale Transaction document, and neither the Sale Transaction itself nor any act taken in connection with the Sale Transaction, shall impair, invalidate, limit, waive, forfeit or otherwise render ineffective any right of Bank of America arising under or recognized by any of the Bank of America Program Agreements, including any right in accordance with the terms and conditions of the Bank of America Program Agreements, to (a) discharge or satisfy contingent liabilities arising under any Bank of America Program Agreement whether arising prior to, on, or after the Closing Date and whether owed by Seller or Buyer; (b) otherwise reimburse Bank of America for any losses arising out of amounts owing under any Bank of America Program Agreement whether arising prior to, on, or after the Closing Date and whether owed by Seller or Buyer; and (c) recoup, setoff or deduct

FILED DATE: 5/19/2021 1:27 PM    2020L012403

amounts owing to Bank of America under any of the Bank of America Program Agreements in accordance with the terms thereof, in each case, whether such amounts owed arose prior to, on, or after the Closing Date and whether owed by Seller or Buyer.  Further, Bank of America shall have no responsibility or liability for any service disruptions that might occur as a result of any account ownership changes or regulatory requirements that might result from the consummation of the Sale Transaction.

67.    **Governmental Units**.  Nothing in this Order or the Asset Purchase Agreement releases, nullifies, precludes or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations (including but not limited to  environmental laws or regulations), and any associated liabilities for penalties, damages, cost recovery, or injunctive relief that any entity would be subject to as the owner, lessor, lessee, or operator of the property after the date of entry of this Order.  Nothing contained in this Order or in the Asset Purchase Agreement shall in any way  diminish the obligation of any entity, including the Debtors, to comply with environmental laws.  Nothing in this Order or the Asset Purchase Agreement authorizes the transfer to the Buyer of any licenses, permits, registrations, or governmental authorizations and approvals without the Buyer's compliance with all applicable legal requirements under non-bankruptcy law governing such transfers.

68.    **Transition Use Limitation.**  No provision of this Sale Order, the Sale Motion, or the Asset Purchase Agreement shall authorize the Debtors or the Buyer as applicable to use any software or other intellectual property (the "Proprietary Information") owned by or licensed from, or any software-related services provided by, SAP Industries, Inc. and its affiliates SAP America, Inc. and Concur Technologies, Inc. (collectively, "SAP") and Oracle America, Inc. including its partner Rimini Street (collectively, "Oracle"), to the benefit of any other party under any Services

FILED DATE: 5/19/2021 1:27 PM   2020L012403

Agreement or otherwise to the extent prohibited by the contracts governing such Proprietary Information or software-related services.

69. **Consent.** No provision of this Sale Order, the Sale Motion, or the Asset Purchase Agreement shall authorize the Debtors or the Buyer as applicable to transfer or sell any Proprietary Information to the Buyer licensed from SAP, Oracle, Microsoft Corporation and its wholly-owned affiliates, Microsoft Licensing, GP, and Microsoft Online, Inc. (collectively, "Microsoft"), LinkedIn Corporation, as applicable, absent the consent of SAP, Oracle, Microsoft, or LinkedIn Corporation, as applicable, to the extent such consent is required under the applicable agreement and such provision is enforceable under applicable law.

70. **Pay-Down of Real Estate 2020 Loan**. Pursuant to Section 11.8 of the Asset Purchase Agreement, to the extent not previously provided, at least one (1) Business Day prior to the Closing Date, the Sellers shall provide to the agent under the Real Estate 2020 Loan all proceeds from the sale or other disposition of collateral pledged to secure the Real Estate 2020 Loan that were closed prior to the Closing Date, including, without limitation the proceeds held in a segregated account pursuant to paragraph 27 of the *Order (I) Approving the Sale of Certain Real Property, (II) Authorizing the Assumption and Assignment of Certain Unexpired Leases in Connection therewith, and (III) Granting Related Relief* (Docket No. 1393) (the "Cascade Paydown"). The Sellers are hereby authorized and directed to (i) make the Cascade Paydown at or prior to Closing and (ii) pay to Cascade Investment, L.L.C. at Closing an amount in cash to be specified in writing by Cascade Investment, L.L.C. and ESL, which payment shall be funded from (and shall not exceed) the Deposit Amount.

71. **Mortgage Adequate Protection**. Notwithstanding anything to the contrary contained herein or in the Asset Purchase Agreement or related documents, upon the closing of

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

the Sale Transaction, Relator Carl Ireland, as Administrator of the Estate of James Garbe, and the United States  (the "Mortgagees") as holders of liens on the real property known as Location #8975, Cupey Bajo, San Juan, Puerto Rico (the "Property") shall be entitled to a lien against the sale proceeds of the Property in the same order of priority as existing on the date of entry of this Sale Order and a superpriority administrative expense claim against the Debtors as adequate protection pursuant to sections 361, 363(e) and 507(b) of the Bankruptcy Code arising from the sale of such Property to satisfy any diminution of the value of such replacement lien post-Closing. All parties' rights to object to the priority, validity, amount, and extent of such asserted liens and superpriority claim or the obligations relating thereto are preserved.  The Debtors' and Mortgagees' rights as to the amount of the allocation of proceeds from the Sale Transaction to the Property and any valuation of the Property are preserved and any disputes shall be determined by the Bankruptcy Court, upon motion by any of the Debtors or the Mortgagees.

Dated:  February 8, 2019
        White Plains, New York

                            /s/Robert D. Drain
                        THE HONORABLE ROBERT D. DRAIN
                        UNITED STATES BANKRUPTCY JUDGE

FILED DATE: 5/19/2021 1:27 PM   2020L012403

# Exhibit A

## Initial Assigned Agreements

**Exhibit A**

**Assumption and Assignment Notice**
**Initial Assigned Agreements**

**Schedule 1 – Executory Contracts**

| No. | ECF No.[1] | Debtor | Counterparty | Contract Title | Contract No. | Debtors' Asserted Cure Amount | Disputed Amount |
|---|---|---|---|---|---|---|---|
| 1. | N/A | Sears Holdings Management Corporation | American Express Business Travel | Fin Services - American Express Card Acceptance - Amendment | Cw2338277 | $00.00 | No Objection Filed. |
| 2. | N/A | Sears Holdings Management Corporation | American Express Business Travel | Fin - American Express Travel Related Services Company Inc (Gbt Us Llc) - Master Services | Shclcw7058 | $00.00 | No Objection Filed. |
| 3. | N/A | Sears Holdings Management Corporation | American Express Travel Related Services Company, Inc. | American Express Card Acceptance Agreement | N/A | $00.00 | No Objection Filed. |
| 4. | N/A | Sears Holdings Management Corporation | American Express Travel Related Services Company, Inc. | Amendment To Agreement For American Express Card Acceptance | N/A | $00.00 | No Objection Filed. |
| 5. | 1835 | Sears Holdings Corporation | Sears Hometown And Outlet Stores, Inc. | Tax Sharing Agreement | N/A | $00.00 | Not disputed in objection. |

[1] This column reflects the ECF number of any applicable objection filed by the counterparty.

WEIL:\96911288\2\73217.0004

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 3 of 1120

| No. | ECF No.[1] | Debtor | Counterparty | Contract Title | Contract No. | Debtors' Asserted Cure Amount | Disputed Amount |
|---|---|---|---|---|---|---|---|
| 6. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | | N/A | $00.00 | Not disputed in objection. |
| 7. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Syw - Sears Hometown And Outlet Stores Inc - Retail Establishment Agreement - 2016 | Cw2323625 | $00.00 | Not disputed in objection. |
| 8. | 1893 | Sears Holdings Management Corporation | Cross Country Home Services (HMW) | HS OPS-Cross Country Home Service Inc – Agreement - 2014 | SHCLCW3606 | $00.00 | Not disputed in objection. |
| 9. | 1893 | Sears Roebuck and Co. | Cross Country Home Services (HMW) | | CW2340683 | $00.00 | Not disputed in objection. |
| 10. | 1893 | Sears Roebuck and Co. | Cross Country Home Services, Inc. | Home Services Agreement 2016 | | $00.00 | Not disputed in objection. |
| 11. | 1893 | Sears Holdings Management Corporation | Cross Country Home Services, Inc., Homesure Of America, Inc., Homesure Protection of. | Amended and Restated Total Home Management Program Agreement 2017 | | $00.00 | Not disputed in objection. |
| 12. | 1893 | Sears Holdings Management Corporation | Cross Country Home Services, Inc., Homesure Of America, Inc., Homesure Protection of. | Guarantee and Security Agreement | | $00.00 | Not disputed in objection. |
| 13. | 1893 | Sears Holdings Management Corporation | Cross Country Home Services, Inc., Homesure Of America, Inc., Homesure Protection of California Inc. and Homesure OF Virginia, Inc. | Third Party Warranty Agreement | | $00.00 | Not disputed in objection. |

2

WEIL:\96911288\2\73217.0004

| No. | ECF No.[1] | Debtor | Counterparty | Contract Title | Contract No. | Debtors' Asserted Cure Amount | Disputed Amount |
|---|---|---|---|---|---|---|---|
| 14. | 1893 | Sears Roebuck and Co. | Cross Country Home Services, Inc. | Fifth Amendment to Home Warranty Service Agreement | | $00.00 | Not disputed in objection. |
| 15. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Shop Your Way Rewards Retail Establishment Agreement & Amendment #2 | 396577 | $00.00 | Not disputed in objection. |
| 16. | 1835 | Sears, Roebuck And Co. | Sears Hometown And Outlet Stores, Inc. | Trademark License Agreement | 536493 | $00.00 | Not disputed in objection. |
| 17. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Office Space Lease | 431288 | $00.00 | Not disputed in objection. |
| 18. | 1835 | Innovel Solutions, Inc. | Sears Hometown And Outlet Stores, Inc. | Purchase Agreement For Excess And Salvage Merchandise | 534857 | $00.00 | Not disputed in objection. |
| 19. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Security Interest In Assets Of Sears Hometown And Outlet Stores, Inc. | N/A | $00.00 | Not disputed in objection. |
| 20. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment #1 To Employee Transition And Administrative Services Agreement | 509440 | $00.00 | Not disputed in objection. |
| 21. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Transition Of Sears Procurement Services | 546403 | $00.00 | Not disputed in objection. |
| 22. | 1835 | Sears Holdings Corporation | Sears Hometown And Outlet Stores, Inc. | Agreement And Authorization For Sho Franchisee Leasing Business | 537252 | $00.00 | Not disputed in objection. |
| 23. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment No. 10 To Service Agreement | 543771 | $00.00 | Not disputed in objection. |
| 24. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Service Level Agreement Between Sears Holdings Corporation And Sho | 509456 | $00.00 | Not disputed in objection. |
| 25. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Shop Your Way Rewards Retail Establishment Agreement | N/A | $00.00 | Not disputed in objection. |

3

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 5 of 1120

| No. | ECF No.[1] | Debtor | Counterparty | Contract Title | Contract No. | Debtors' Asserted Cure Amount | Disputed Amount |
|---|---|---|---|---|---|---|---|
| 26. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment No. 8 To Services Agreement | N/A | $00.00 | Not disputed in objection. |
| 27. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Services Agreement | | $00.00 | Not disputed in objection. |
| 28. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment No. 1 To Services Agreement | | $00.00 | Not disputed in objection. |
| 29. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment No. 2 To Services Agreement | | $00.00 | Not disputed in objection. |
| 30. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment No. 3 To Services Agreement | | $00.00 | Not disputed in objection. |
| 31. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment No. 4 To Services Agreement | | $00.00 | Not disputed in objection. |
| 32. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment No. 5 To Services Agreement | | $00.00 | Not disputed in objection. |
| 33. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment No. 6 To Services Agreement | | $00.00 | Not disputed in objection. |
| 34. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment No. 7 To Services Agreement | | $00.00 | Not disputed in objection. |
| 35. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment No. 9 To Services Agreement | | $00.00 | Not disputed in objection. |
| 36. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Employee Transition And Administrative Services Agreement | | $00.00 | Not disputed in objection. |
| 37. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment No. 1 To Shop Your Way Rewards Retail Establishment Agreement | | $00.00 | Not disputed in objection. |

4

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 6 of 1120

5

| No. | ECF No.[1] | Debtor | Counterparty | Contract Title | Contract No. | Debtors' Asserted Cure Amount | Disputed Amount |
|---|---|---|---|---|---|---|---|
| 38. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment #2 To Shop Your Way Rewards Retail Establishment Agreement | | $00.00 | Not disputed in objection. |
| 39. | 1835 | Sears Holdings Corporation | Sears Hometown And Outlet Stores, Inc. | Separation Agreement | | $00.00 | Not disputed in objection. |
| 40. | 1835 | Sears Holdings Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment No. 1 To Separation Agreement | | $00.00 | Not disputed in objection. |
| 41. | 1835 | Sears, Roebuck And Co. | Sears Hometown And Outlet Stores, Inc. | Amendment No. 1 To Trademark License Agreement | | $00.00 | Not disputed in objection. |
| 42. | 1835 | Sears Holdings Corporation | Sears Hometown And Outlet Stores, Inc. | Supplemental Agreement | | $00.00 | Not disputed in objection. |
| 43. | 1835 | Sears Holdings Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment No. 1 To Supplemental Agreement | | $00.00 | Not disputed in objection. |
| 44. | 1835 | Sears Brands, L.L.C. | Sears Hometown And Outlet Stores, Inc. | License And Intellectual Property Management Agreement | N/A | $00.00 | Not disputed in objection. |
| 45. | 1835 | Sears Holdings Corporation | Sears Hometown And Outlet Stores, Inc. | Tax Sharing Agreement | N/A | $00.00 | Not disputed in objection. |
| 46. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | | N/A | $00.00 | Not disputed in objection. |
| 47. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Syw - Sears Hometown And Outlet Stores Inc - Retail Establishment Agreement - 2016 | Cw2323625 | $00.00 | Not disputed in objection. |
| 48. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Shop Your Way Rewards Retail Establishment Agreement & Amendment #2 | 396577 | $00.00 | Not disputed in objection. |
| 49. | 1835 | Sears, Roebuck And Co. | Sears Hometown And Outlet Stores, Inc. | Trademark License Agreement | 536493 | $00.00 | Not disputed in objection. |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 7 of 1120

| No. | ECF No.[1] | Debtor | Counterparty | Contract Title | Contract No. | Debtors' Asserted Cure Amount | Disputed Amount |
|---|---|---|---|---|---|---|---|
| 50. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Office Space Lease | 431288 | $00.00 | Not disputed in objection. |
| 51. | N/A | Sears Holdings Management Corporation | First Data Corporation- 1000623488 \ Telecheck Services Inc | Lp Ops - Telecheck Services Inc - Warranty Service Agreement - 2008 | Shclcw5528 | $ 277,962[2] | No Objection Filed. |
| 52. | 2024 | Kmart Corporation | Dfs Services Llc, Successor In Interest To Discover Card Services, Inc. | Notice Of Changes Of Fees Under Merchant Services Agreement Dates November 15, 1987 | N/A | N/A | Not disputed in objection. |
| 53. | 2024 | Kmart Corporation | Discover Financial Services | Letter Of Amendment Dated 9/8/04 To The November 15, 1987 Merchant Services | N/A | N/A | Not disputed in objection. |
| 54. | 2024 | Kmart Corporation | Discover Financial Services | Letter Of Amendment Dated 9/9/03 To The November 15, 1987 Merchant Services | N/A | N/A | Not disputed in objection. |
| 55. | 2024 | Kmart Corporation | Discover Financial Services, Inc. | Supplemental Agreement | N/A | N/A | Not disputed in objection. |
| 56. | 2072 | Sears Holdings Corporation | Stanley Black & Decker, Inc. | Acquired Ip License Agreement | N/A | $00.00 | Not disputed in objection. |
| 57. | 1835 | Sears, Roebuck And Co. | Sears Hometown And Outlet Stores, Inc. | Amendment No. 1 To Trademark License Agreement | 509438 | $00.00 | Not disputed in objection. |
| 58. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment No. 9 To Services Agreement | 537250 | $00.00 | Not disputed in objection. |
| 59. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment No. 8 To Services Agreement | 534593 | $00.00 | Not disputed in objection. |

[2] Buyer reserves all rights to offset any cure costs against amounts owed by First Data Corporation to the Buyer.

6

WEIL:\96911288\2\73217.0004

| No. | ECF No.[1] | Debtor | Counterparty | Contract Title | Contract No. | Debtors' Asserted Cure Amount | Disputed Amount |
|---|---|---|---|---|---|---|---|
| 60. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment No. 7 To Services Agreement | 529128 | $00.00 | Not disputed in objection. |
| 61. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment No. 5 To Services Agreement | 525479 | $00.00 | Not disputed in objection. |
| 62. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment No. 6 To Services Agreement | 525037 | $00.00 | Not disputed in objection. |
| 63. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment No. 3 To Services Agreement | 511414 | $00.00 | Not disputed in objection. |
| 64. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment No. 4 To Services Agreement | 509441 | $00.00 | Not disputed in objection. |
| 65. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment No. 2 To Services Agreement | 459349 | $00.00 | Not disputed in objection. |
| 66. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment No. 1 To Services Agreement | 444110 | $00.00 | Not disputed in objection. |
| 67. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Services Agreement | 396576 | $00.00 | Not disputed in objection. |
| 68. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment #2 To Shop Your Way Rewards Retail Establishment Agreement | 547382 | $00.00 | Not disputed in objection. |
| 69. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment No. 1 To Shop Your Way Rewards Retail Establishment Agreement | 547382 | $00.00 | Not disputed in objection. |
| 70. | 1835 | Sears Holdings Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment No. 1 To Supplemental Agreement | 509445 | $00.00 | Not disputed in objection. |
| 71. | 1835 | Sears Holdings Corporation | Sears Hometown And Outlet Stores, Inc. | Supplemental Agreement | 444115 | $00.00 | Not disputed in objection. |

7

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 9 of 1120

| No. | ECF No.[1] | Debtor | Counterparty | Contract Title | Contract No. | Debtors' Asserted Cure Amount | Disputed Amount |
|---|---|---|---|---|---|---|---|
| 72. | 1835 | Sears Holdings Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment No. 1 To Separation Agreement | 444114 | $00.00 | Not disputed in objection. |
| 73. | 1835 | Sears Holdings Corporation | Sears Hometown And Outlet Stores, Inc. | Separation Agreement | 396575 | $00.00 | Not disputed in objection. |
| 74. | 1835 | Sears Holdings Management Corporation | Sears Hometown And Outlet Stores, Inc. | Amendment No. 8 To Services Agreement | (blank in notice) | $00.00 | Not disputed in objection. |
| 75. | N/A | Sears Brands Management Corporation | FLI Charge, Inc. | Patent License & Technology Agreement | N/A | $00.00 | No Objection Filed. |
| 76. | N/A | Kmart Corporation; Sears, Roebuck and Co. | ABG Sportcraft, L.L.C. | License Agreement, as amended through 4/5/2018 | | $00.00 | No Objection Filed. |
| 77. | 1821 | Sears Brands Management Corporation | Cleva North America, Inc. | License Agreement | N/A | $00.00 | Not disputed in objection with respect to this agreement. |
| 78. | N/A | Sears Brands Management Corporation | Drinkpod LLC | License Agreement | N/A | $1,675 | No Objection Filed. |
| 79. | N/A | Sears Brands Management Corporation | Permasteel, Inc. | License Agreement, as amended through August 28, 2017 | | | No Objection Filed. |
| 80. | N/A | Sears Brands Management Corporation | Gibson Overseas, Inc. | License Agreement | N/A | $7,889 | No Objection Filed. |
| 81. | N/A | Sears Brands Management Corporation | Algert Company | Distribution Agreement | | $00.00 | No Objection Filed. |
| 82. | N/A | Sears Brands Management Corporation | Globistic Co., Inc. | Distributorship Agreement | N/A | $00.00 | No Objection Filed. |
| 83. | N/A | Sears Brands Management Corporation | Homemart, S.A. | Retail Store License Agreement, as amended through [ ] | N/A | $00.00 | No Objection Filed. |

8

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 10 of 1120

| No. | ECF No.[1] | Debtor | Counterparty | Contract Title | Contract No. | Debtors' Asserted Cure Amount | Disputed Amount |
|---|---|---|---|---|---|---|---|
| 84. | N/A | Sears Brands Management Corporation | Distribuidora y Comercializadora Master Brands SpA – Chile | Distributorship Agreement | N/A | $00.00 | No Objection Filed. |
| 85. | N/A | Sears, Roebuck and Co. | Lands' End, Inc. and its Affiliates | Retail Operations Agreement | N/A | $00.00 | No Objection Filed. |
| 86. | N/A | Sears, Roebuck and Co; Sears Brands Management Corporation | Sears, Roebuck de Mexico, S.A. de C.V. | Amended and Restated Trademark License Agreement, as Amended through Jan. 1, 2010 | N/A | $00.00 | No Objection Filed. |
| 87. | 1835 | Sears, Roebuck and Co. | Sears Authorized Hometown Stores, LLC and franchise sublicensees | Store License Agreement, as amended July 10, 2017 | | $00.00 | No Objection Filed. |
| 88. | 1835 | Sears Roebuck and Co. | Sears Outlet Stores, L.L.C. and its franchisees | Store License Agreement, as amended through May 1, 2016 | | $00.00 | No Objection Filed. |
| 89. | N/A | Kmart Corporation | Route 66 Holdings, LLC | Amended and Restated License Agreement as amended through 5/12/2010 | N/A | $00.00 | No Objection Filed. |
| 90. | N/A | Sears International Marketing, Inc. | Sears, Roebuck de Mexico, S.A. DE C.V. | Amendment to Merchandise Sale Agreement Dated April 17, 1997 | N/A | $00.00 | No Objection Filed. |
| 91. | N/A | Sears Roebuck and Co. | Sears Home Appliance Showrooms, LLC | Store License Agreement | 396580 | $00.00 | No Objection Filed. |
| 92. | N/A | Sears, Roebuck and Co. | Sears International Marketing, Inc. and Sears, Roebuck de Mexico, S.A. de C.V. | Amendment to Merchandise Service and Quality Control Agreement dated April 28, 1997 | N/A | $00.00 | No Objection Filed. |
| 93. | N/A | Sears, Roebuck and Co., Sears Brands Management Corporation; Sears | Roebuck de Mexico, S.A de C.V.; Sears International Marketing, Inc. | Second Amendment to Merchandise Service and Quality Control Agreement | N/A | $00.00 | No Objection Filed. |

9

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 11 of 1120

| No. | ECF No.[1] | Debtor | Counterparty | Contract Title | Contract No. | Debtors' Asserted Cure Amount | Disputed Amount |
|---|---|---|---|---|---|---|---|
| 94. | N/A | Sears, Roebuck and Co., Sears Brands Management Corporation; Sears, | Roebuck de Mexico, S.A de C.V.; Sears International Marketing, Inc. | Third Amendment to Merchandise Service and Quality Control Agreement | N/A | $00.00 | No Objection Filed. |
| 95. | N/A | Sears, Roebuck and Co. | Sears International Marketing, Inc. and Sears, Roebuck de Mexico, S.A. de C.V. | Mexico Merchandise Service and Quality Control Agreement | N/A | $00.00 | No Objection Filed. |
| 96. | N/A | Sears Holdings Management Corporation | FIA Card Services NA | FIN– Bank of America N.A. – Statement of Work 1 to Card Service Agreement – 2011 | SHCLCW1617 | $00.00 | No Objection Filed. |
| 97. | N/A | Sears Holdings Management Corporation | FIA Card Services NA | FIN – Bank of America N.A. – Card Service Agreement - 2011 | SHCLCW1617 | $00.00 | No Objection Filed. |
| 98. | N/A | SEARS, ROEBUCK AND CO., AND SEARS BRANDS BUSINESS UNIT CORPORATION | CITIBANK, N.A. | AMENDED AND RESTATED MARKETING AGREEMENT | | $00.00 | No Objection Filed. |
| 99. | N/A | SEARS, ROEBUCK AND CO. | CITIBANK, N.A. | AMENDED AND RESTATED NEW MERCHANT AGREEMENT | | $00.00 | No Objection Filed. |
| 100. | N/A | SEARS BRANDS BUSINESS UNIT CORP; SEARS REOBUCK AND CO. | CITIBANK, N.A. | SECOND AMENDED AND RESTATED PROGRAM AGREEMENT | | $00.00 | No Objection Filed. |
| 101. | 1835 | Kmart Corporation; Sears Holdings Corporation; | Sears Hometown And Outlet Stores, Inc. | Amended And Restated Merchandising Agreement | 509443 | $00.00 | Cure Amount, if any, to be mutually agreed in each party's sole discretion. |
| 102. | 1835 | Sears, Roebuck And Co. | Sears Hometown And Outlet Stores, Inc. | Amendment To Amended And Restated Merchandising Agreement | | $00.00 | Cure Amount, if any, to be mutually agreed in |

10

FILED DATE: 5/19/2021 1:27 PM   2020L012403

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 12 of 1120

| No. | ECF No.[1] | Debtor | Counterparty | Contract Title | Contract No. | Debtors' Asserted Cure Amount | Disputed Amount |
|---|---|---|---|---|---|---|---|
| | | | | | | | each party's sole discretion. |
| 103. | 1835 | Sears, Roebuck And Co. | Sears Hometown And Outlet Stores, Inc. | Amendment No. 2 To The Amended And Restated Merchandising Agreement | | $00.00 | Cure Amount, if any, to be mutually agreed in each party's sole discretion. |
| 104. | 1835 | Sears, Roebuck And Co. | Sears Hometown And Outlet Stores, Inc. | Amendment No. 3 To The Amended And Restated Merchandising Agreement | | $00.00 | Cure Amount, if any, to be mutually agreed in each party's sole discretion. |
| 105. | 1835 | Sears, Roebuck And Co. | Sears Hometown And Outlet Stores, Inc. | Amendment No. 4 To The Amended And Restated Merchandising Agreement | | $00.00 | Cure Amount, if any, to be mutually agreed in each party's sole discretion. |
| 106. | N/A | Sears Holdings Corporation, Sears roebuck and Co., Kmart Corporation | Bank of America, N.A. | Lender Tri-Party Agreement Amended and Restated Agreement | | $00.00 | No Objection Filed. |
| 107. | N/A | Sears Holdings Corporation, Sears roebuck and Co., Kmart Corporation | Gordon Brothers Finance Company | Lender Tri-Party Agreement Amended and Restated Agreement | | $00.00 | No Objection Filed. |
| 108. | N/A | Sears Holdings Corporation, Sears roebuck and Co., Kmart Corporation | Sears Authorized Hometown Stores, LLC | Lender Tri-Party Agreement Amended and Restated Agreement | | $00.00 | No Objection Filed. |
| 109. | N/A | Sears Holdings Corporation, Sears roebuck and Co., Kmart Corporation | Sears Home Applicable Showrooms, LLC | Lender Tri-Party Agreement Amended and Restated Agreement | | $00.00 | No Objection Filed. |

11

WEIL:\96911288\2\73217.0004

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 13 of 1120

| No. | ECF No.[1] | Debtor | Counterparty | Contract Title | Contract No. | Debtors' Asserted Cure Amount | Disputed Amount |
|---|---|---|---|---|---|---|---|
| 110. | N/A | Sears Holdings Corporation, Sears roebuck and Co., Kmart Corporation | Sears Hometown And Outlet Stores, Inc. | Lender Tri-Party Agreement Amended and Restated Agreement | | $00.00 | No Objection Filed. |
| 111. | N/A | Sears Holdings Corporation, Sears roebuck and Co., Kmart Corporation | Sears Outlet Stores, LLC | Lender Tri-Party Agreement Amended and Restated Agreement | | $00.00 | No Objection Filed. |
| 112. | N/A | Sears Brands Management Corporation | Beijing Industrial Development | License Agreement | | $00.00 | No Objection Filed. |
| 113. | 2024 | Sears Roebuck and Co. | DFS Services LLC formerly Novus Services, Inc. | Master Services Agreement | | $00.00 | Not disputed in objection. |
| 114. | 2024 | Kmart Corporation | DFS Services LLC, successor in interest to Discover Card Services, Inc. | Master Services Agreement | | $00.00 | Not disputed in objection. |

12

WEIL:\96911288\2\73217.0004

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 14 of 1120

## Schedule 2 – Leases

| | ECF No. | Counterparty | Debtor | Contract Title | Contract No. | Cure Amount | Disputed Amount |
|---|---|---|---|---|---|---|---|
| 115. | N/A | SRC Facilities LLC | Kmart Corporation; Sears, Roebuck and Co. | Amended and Restated Master Lease Agreement | N/A | $00.00 | TBD[3] |
| 116. | N/A | SRC O.P LLC | Kmart Corporation; Sears, Roebuck and Co | Amended and Restated Master Lease Agreement | N/A | $00.00 | TBD[4] |

---

[3]   Sparrow entities reserve rights with respect to payment of post-petition rent under MLA with respect to dark stores.
[4]   Sparrow entities reserve rights with respect to payment of post-petition rent under MLA with respect to dark stores.

WEIL:\96911288\2\73217.0004

FILED DATE: 5/19/2021 1:27 PM    2020L012403

# Exhibit B

**Asset Purchase Agreement**

*EXECUTION VERSION*

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**ASSET PURCHASE AGREEMENT**

**DATED AS OF JANUARY 17, 2019**

**BY AND AMONG**

**TRANSFORM HOLDCO LLC,**

**SEARS HOLDINGS CORPORATION and**

**ITS SUBSIDIARIES PARTY HERETO**

# TABLE OF CONTENTS

**Page**

ARTICLE I DEFINITIONS ....................................................................................2
    Section 1.1    Definitions ............................................................2
    Section 1.2    Other Definitions and Interpretive Matters........................34

ARTICLE II PURCHASE AND SALE ...................................................................35
    Section 2.1    Purchase and Sale of the Acquired Assets....................35
    Section 2.2    Excluded Assets.................................................39
    Section 2.3    Assumption of Liabilities ...................................40
    Section 2.4    Excluded Liabilities ..........................................43
    Section 2.5    Year-End Adjustments.........................................45
    Section 2.6    Purchase and Sale of Designation Rights .....................45
    Section 2.7    Assignments...................................................46
    Section 2.8    Further Assurances ...........................................48
    Section 2.9    Additional Contracts .........................................49
    Section 2.10    Withholding .................................................50
    Section 2.11    Rejection of Outbound IP Licenses ........................50
    Section 2.12    Tax Reorganization.........................................50
    Section 2.13    Foreign Assets. ............................................51
    Section 2.14    Bulk Transfer Law .........................................52

ARTICLE III PURCHASE PRICE ........................................................................52
    Section 3.1    Purchase Price................................................52
    Section 3.2    Cash Deposit..................................................53
    Section 3.3    Closing Payment..............................................54
    Section 3.4    Reserved.....................................................54
    Section 3.5    Discharge of Assumed Liabilities After Closing..............54

ARTICLE IV CLOSING .......................................................................................54
    Section 4.1    Closing Date..................................................54
    Section 4.2    Buyer's Deliveries............................................54
    Section 4.3    Sellers' Deliveries...........................................55
    Section 4.4    Local Sale Agreements .......................................56

ARTICLE V DESIGNATION RIGHTS PERIOD...................................................56
    Section 5.1    Parties' Respective Obligations Before and During Designation
                Rights Period ...............................................56
    Section 5.2    Assumption ..................................................60
    Section 5.3    Election Not to Assume and Assign a Designatable Lease ...............61

ARTICLE VI REPRESENTATIONS AND WARRANTIES OF SELLERS ...........62

i

FILED DATE: 5/19/2021 1:27 PM   2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

# TABLE OF CONTENTS
(continued)

**Page**

Section 6.1    Organization and Good Standing ...................................................... 62
Section 6.2    Authority; Validity; Consents ........................................................... 62
Section 6.3    No Conflict ....................................................................................... 63
Section 6.4    Environmental Matters ..................................................................... 63
Section 6.5    Title to Acquired Assets ................................................................... 63
Section 6.6    Real Property .................................................................................... 64
Section 6.7    Taxes ................................................................................................. 65
Section 6.8    Brokers or Finders ............................................................................ 65
Section 6.9    Employee and Employee Plan Matters ............................................. 65
Section 6.10   Intellectual Property ......................................................................... 67
Section 6.11   Material Contracts ............................................................................ 69
Section 6.12   Seller SEC Reports ........................................................................... 70
Section 6.13   Financial Statements ........................................................................ 70
Section 6.14   Litigation .......................................................................................... 70
Section 6.15   No Other Representations or Warranties; No Survival .................... 70

ARTICLE VII REPRESENTATIONS AND WARRANTIES OF BUYER ............................. 71

Section 7.1    Organization and Good Standing; Organizational Documents;
               Ownership ........................................................................................ 71
Section 7.2    Authority; Validity; Consents ........................................................... 71
Section 7.3    No Conflict ....................................................................................... 72
Section 7.4    Financing; Availability of Funds ...................................................... 72
Section 7.5    Litigation .......................................................................................... 73
Section 7.6    Brokers or Finders ............................................................................ 73
Section 7.7    Condition of Acquired Assets; Representations ............................... 74
Section 7.8    No Survival ....................................................................................... 74

ARTICLE VIII ACTION PRIOR TO THE CLOSING DATE ............................................... 74

Section 8.1    Operations ......................................................................................... 74
Section 8.2    Bankruptcy Court Matters ................................................................ 78
Section 8.3    Registrations, Filings and Consents .................................................. 79
Section 8.4    Financing Assistance; Additional Information .................................. 81
Section 8.5    Financing ........................................................................................... 83
Section 8.6    Trade Payables .................................................................................. 84
Section 8.7    SHIP Purchase Agreement ................................................................ 85
Section 8.8    Transition Services Agreement; Management Services
               Agreement ........................................................................................ 85
Section 8.9    Sparrow Rent ..................................................................................... 86

ARTICLE IX ADDITIONAL AGREEMENTS ..................................................................... 86

Section 9.1    Access to Information ....................................................................... 86

## TABLE OF CONTENTS
(continued)

Page

Section 9.2        Tax-Related Undertakings and Characterization of the
                   Transaction. .................................................................86
Section 9.3        Miscellaneous Tax Matters..............................................88
Section 9.4        Payments Received ..........................................................90
Section 9.5        Post-Closing Books and Records and Personnel ..............90
Section 9.6        Confidentiality .................................................................91
Section 9.7        Employment Offers. .........................................................92
Section 9.8        Owned Real Property.......................................................95
Section 9.9        Title Matters.....................................................................96
Section 9.10       Use of Name .....................................................................97
Section 9.11       Apportionments ................................................................97
Section 9.12       Intercompany IP Agreement; Sublicenses.........................97
Section 9.13       Settlement and Release ....................................................97
Section 9.14       KCD IP Covenants. ..........................................................99
Section 9.15       Seritage Master Lease ...................................................102

ARTICLE X CONDITIONS PRECEDENT TO THE OBLIGATION OF BUYER TO
        CLOSE.........................................................................................102

Section 10.1       Accuracy of Representations ...........................................102
Section 10.2       Sellers' Performance.......................................................102
Section 10.3       No Material Adverse Effect .............................................103
Section 10.4       No Order ........................................................................103
Section 10.5       Governmental Authorizations..........................................103
Section 10.6       Sellers' Deliveries ..........................................................103
Section 10.7       Approval Order................................................................103
Section 10.8       KCD IP ...........................................................................103
Section 10.9       Inventory and Receivables...............................................103
Section 10.10      Outstanding DIP Indebtedness ........................................104

ARTICLE XI CONDITIONS PRECEDENT TO THE OBLIGATION OF SELLERS TO
        CLOSE.........................................................................................104

Section 11.1       Accuracy of Representations ...........................................104
Section 11.2       Buyer's Performance .......................................................104
Section 11.3       No Order .........................................................................104
Section 11.4       Governmental Authorizations..........................................104
Section 11.5       Buyer's Deliveries ..........................................................104
Section 11.6       Bidding Procedures Order ...............................................104
Section 11.7       Approval Order in Effect .................................................104
Section 11.8       Pay-Down of Real Estate 2020 Loan................................105

ARTICLE XII TERMINATION .......................................................................105

Section 12.1       Termination Events...........................................................105

FILED DATE: 5/19/2021 1:27 PM                                                                    2020L012403

FILED DATE: 5/19/2021 1:27 PM      2020L012403

# TABLE OF CONTENTS
(continued)

**Page**

Section 12.2      Effect of Termination ....................................................................107

Section 12.3      Termination and Adjustment Rights of Buyer as to Properties
                  and Related Acquired Assets ...........................................................107

ARTICLE XIII GENERAL PROVISIONS ..............................................................109

Section 13.1      Public Announcements ....................................................................109

Section 13.2      Notices ...........................................................................................109

Section 13.3      Amendment; Waiver........................................................................110

Section 13.4      Entire Agreement............................................................................110

Section 13.5      No Presumption as to Drafting ........................................................111

Section 13.6      Assignment .....................................................................................111

Section 13.7      Severability .....................................................................................111

Section 13.8      Governing Law; Consent to Jurisdiction and Venue; Jury Trial
                  Waiver.............................................................................................111

Section 13.9      Counterparts....................................................................................113

Section 13.10     Parties in Interest; No Third Party Beneficiaries .............................113

Section 13.11     Fees and Expenses ..........................................................................113

Section 13.12     Non-Recourse .................................................................................113

Section 13.13     Schedules; Materiality ....................................................................114

Section 13.14     Specific Performance ......................................................................114

## EXHIBITS

Exhibit A:        Approval Order

Exhibit B:        IP Assignment Agreement

Exhibit C:        IP Power of Attorney

Exhibit D:        Occupancy Agreement

Exhibit E:        Assignment and Assumption of Lease

Exhibit F:        Seller Retained Occupancy Agreement

Exhibit G:        Credit Bid Release Exhibit

## SCHEDULES

Schedule 1.1(a):      [*Reserved*]

Schedule 1.1(b):      [*Reserved*]

Schedule 1.1(c):      Excluded IT

Schedule 1.1(d):      IP/Ground Lease Property

Schedule 1.1(e):      Seller Knowledge Parties

Schedule 1.1(f):      Ordered Inventory

# TABLE OF CONTENTS
(continued)

**Page**

Schedule 1.1(g):     Other Payables

Schedule 1.1(h):     [*Reserved*]

Schedule 1.1(i):     Permitted Post- Closing Encumbrances

Schedule 1.1(j):     Permitted Pre-Closing Encumbrances

Schedule 1.1(k):     Specified Receivables

Schedule 1.1(l):     Warranty Receivables

Schedule 1.1(m):     GOB Leases

Schedule 1.1(n):     GOB Owned Stores

Schedule 1.1(o):     Operating Leases

Schedule 1.1(p):     Operating Owned Properties

Schedule 1.1(q):     Sparrow Properties

Schedule 2.1(a):     Intellectual Property

Schedule 2.1(q):     Proceeds Properties

Schedule 2.7(a):     Potential Transferred Agreements

Schedule 7.1:        Buyer Equity

FILED DATE: 5/19/2021 1:27 PM   2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement") is made as of January 17, 2019 (the "Effective Date"), by and between Transform Holdco LLC, a Delaware Limited Liability Company (together with any applicable Affiliated Designee (as defined below), "Buyer"), and Sears Holdings Corporation, a Delaware corporation ("SHC" or the "Seller" and together with each of its Subsidiaries party hereto, the "Sellers").

## RECITALS

WHEREAS, among other things, Sellers own and operate, through direct and indirect Subsidiaries:

(a)     a national network of retail stores and pharmacies under the "Sears" and "Kmart" brands as conducted at the Operating Owned Properties and the Operating Leased Properties (as defined below) and the supporting general and administrative functions related to such retail stores;

(b)     a national network of specialty stores, including under the "Sears Auto Centers" brand;

(c)     a business that provides various home services solutions, including product repair, repair parts and accessories under the "PartsDirect" brand, home improvement project services, franchise services in the residential home service sector, repair services under the "ServiceLive" brand or the "Sears Home Services" brand and home solution technology under the "Wally" brand;

(d)     the KCD Notes (as defined below) and the business of designing, researching, developing, testing, having made, procuring the manufacture of, packaging, selling, marketing and distributing products and services under the Kenmore Marks and the DieHard Marks and licensing the Kenmore Marks and the DieHard Marks to third parties (the "Kenmore/DieHard Business");

(e)     a business that distributes and sells appliances under the "Monark Premium Appliance Co." brand;

(f)     a business that provides home delivery and retail installation services, including for third party customers, freight management, truck-load solutions, warehousing and final-mile delivery services;

(g)     various websites under the sears.com and kmart.com banners;

(h)     a membership program for Sellers' members, including that offered under the "Shop Your Way" brand; and

(i)     the "Business" as defined in the SHIP Purchase Agreement  (as defined below),

(collectively, each of (a) through (h) above, (but, in the event that the SHIP Closing (as defined below) shall have occurred prior to the Closing Date, excluding the "Business" as defined in the SHIP Purchase Agreement), the "Business");

FILED DATE: 5/19/2021 1:27 PM          2020L012403

WHEREAS, on October 15, 2018, (the "Petition Date") (or, with respect to certain Sellers as applicable, following the Petition Date), Sellers filed voluntary petitions for relief (the "Filing") commencing cases under chapter 11 of the Bankruptcy Code (the "Bankruptcy Cases") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

WHEREAS, Sellers desire to sell to Buyer (or, in accordance with the terms set forth herein, an applicable Assignee (as defined below)) the Designation Rights (as defined below) and Acquired Assets (as defined below) and to transfer to Buyer the Assumed Liabilities (as defined below) and Buyer desires to purchase from Sellers the Designation Rights and Acquired Assets and to assume from Seller the Assumed Liabilities, in each case on the terms and subject to the conditions set forth in this Agreement;

WHEREAS, the Parties (as defined below) desire to consummate the proposed transactions as promptly as practicable after the Bankruptcy Court enters the Approval Order (as defined below), subject to the terms of this Agreement; and

WHEREAS, the Parties desire and intend that the transactions set forth in this Agreement, together with the Bankruptcy Plan (as defined below), will, unless Buyer elects otherwise pursuant to this Agreement, (i) constitute one or more plans of reorganization under section 368(a) of the Code (as defined below) and as qualifying as one or more reorganizations thereunder and (ii) satisfy the ownership requirements set forth in section 382(l)(5)(A)(ii) of the Code.

NOW, THEREFORE, in consideration of the premises and the mutual promises herein made, and in consideration of the representations, warranties and covenants herein contained, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged and intending to be legally bound hereby, the Parties agree as follows:

## ARTICLE I

## DEFINITIONS

Section 1.1    Definitions.  For purposes of this Agreement, the following terms have the meanings specified or referenced below.

"401(k) Plan" shall have the meaning set forth in Section 9.7(b).

"ABL Commitment Letter" shall mean the commitment letter (including all annexes, exhibits, schedules and other attachments thereto) among Buyer, Bank of America, N.A., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Citigroup Global Markets, Inc. and Royal Bank of Canada, dated as of the date hereof, as amended, supplemented or replaced in compliance with the terms hereof and thereof.

"ABL Financing" shall mean the financing incurred or intended to be incurred pursuant to the ABL Commitment Letter, including the borrowing of loans contemplated by the ABL Commitment Letter.

FILED DATE: 5/19/2021 1:27 PM     2020L012403

"ABL Financing Sources" shall mean the Financing Sources specified in clause (z) of the definition of "Financing Sources".

"Acquired Assets" shall have the meaning set forth in Section 2.1.

"Acquired Data" shall have the meaning set forth in Section 2.1(g).

"Acquired Equipment" shall mean, with respect to any Acquired Property, all Equipment to the extent located at or on the applicable Acquired Lease Premises or Owned Real Property.

"Acquired Foreign Assets" shall have the meaning set forth in Section 2.13(a).

"Acquired Improvements" shall mean, with respect to any Acquired Property, all Improvements located on or comprising the applicable Acquired Lease Premises or Owned Real Property.

"Acquired Intellectual Property" shall have the meaning set forth in Section 2.1(e).

"Acquired Inventory" shall mean (i) with respect to any Operating Leased Property, all Inventory which is located at or on the applicable Operating Lease Property as of the Closing Date, (ii) with respect to any Operating Owned Property, all Inventory which is located at or on the Operating Owned Property as of the Closing Date, (iii) with respect to any IP/Ground Lease Property, all Inventory which is located at or on the IP/Ground Lease Property as of the Closing Date and (iv) all other Inventory Related to the Business other than Inventory included in clause (ii) of the definition of Excluded Inventory.

"Acquired Lease" shall mean each Lease that is assumed by any Seller and assigned to Buyer pursuant to the terms of this Agreement.

"Acquired Lease Premises" shall mean the Lease Premises which is the subject of an Acquired Lease.

"Acquired Lease Rights" shall mean, with respect to an Acquired Lease, all real property rights and all other rights and interests of the tenant thereunder, including all options to renew, purchase, expand or lease (including rights of first refusal, first negotiation and first offer), and all credit for the prepaid rent associated therewith and all Security Deposits made in respect of such and any Improvements thereon.

"Acquired Property" shall mean (i) each Lease Premises which is subject to an Acquired Lease and (ii) each Owned Real Property.

"Acquired Receivables" shall mean (i) all Credit Card Accounts Receivable, (ii) all Pharmacy Receivables, (iii) the Specified Receivables and (iv) the Warranty Receivables.

"Action" shall mean any Claim, action, complaint, suit, litigation, arbitration, appeal, petition, inquiry, hearing, Order, decree, legal proceeding, investigation or other legal dispute, whether civil, criminal, administrative or otherwise, at law or in equity, by or before any Governmental Authority.

FILED DATE: 5/19/2021 1:27 PM   2020L012403

"ADA" shall have the meaning set forth in the definition of Law.

"Additional Contract" shall have the meaning set forth in Section 2.9.

"Affiliate" shall mean, with respect to any Person, any other Person directly or indirectly controlling, controlled by, or under common control with, such other Person. For purposes of this definition, "control" when used with respect to any Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise, and the terms "controlling" and "controlled" have correlative meanings. Notwithstanding the foregoing, (i) each Seller and its respective Subsidiaries, on the one hand, shall not, for the purposes of this Agreement, be deemed to be an "Affiliate" of ESL or Buyer or any of their respective Affiliates (excluding each Seller and its respective Subsidiaries), on the other hand, and (ii) Buyer, ESL and their Affiliates (excluding each Seller and its respective Subsidiaries), on the one hand, shall not, for the purposes of this Agreement, be deemed to be an "Affiliate" of Sellers or any of their respective Subsidiaries, on the other hand; and Buyer and ESL shall be deemed to be Affiliates of each other.

"Affiliated Designee" shall have the meaning set forth in Section 13.6.

"Aggregate DIP Shortfall Amount" shall mean, as of the Closing Date, an amount equal to $1,200,000,000 *less* the aggregate amounts required to be paid (net of any available cash) to fully satisfy the existing indebtedness of Sellers under both (i) the DIP Credit Agreement and (ii) the Junior DIP Term Loan Agreement.

"Agreement" shall have the meaning set forth in the Preamble.

"Agreement Assignment Notice" shall have the meaning set forth in Section 2.7(a)(ii).

"Allocation Schedule" shall have the meaning set forth in Section 9.3(d).

"Alternative Financing" shall have the meaning set forth in Section 8.5.

"Antitrust Actions" shall have the meaning set forth in Section 8.3(d).

"Antitrust Division" shall mean the Antitrust Division of the United States Department of Justice.

"Antitrust Laws" shall mean the Sherman Antitrust Act, the Clayton Antitrust Act of 1914, the HSR Act and all other federal, state and foreign statutes, rules, regulations, orders, decrees and other Laws and Orders that are designed or intended to prohibit, restrict or regulate actions having the purpose or effect of monopolization or restraint of trade or competition.

"Approval Order" shall mean an Order approving the Transactions entered by the Bankruptcy Court in the Bankruptcy Cases substantially in the form of Exhibit A attached hereto or in a form reasonably agreed by Buyer and Sellers prior to the Closing.

"Arbitrator" shall have the meaning set forth in the definition of Law.

18-23538-shl   Doc 9507   Filed 02/08/19   Entered 02/08/19 16:44:31   Exhibit A
Pg 254 of 1450

FILED DATE: 5/19/2021 1:27 PM          2020L012403

"Assigned Agreements" shall mean (i) the Citi Card Agreement, (ii) the Initial Assigned Agreements, (iii) the Designatable Leases, solely to the extent designated for assumption by the Sellers and assignment to Buyer by written notice from Buyer to Sellers delivered prior to the end of the Designation Rights Period, and (iv) such other Additional Contracts as Buyer elects to have assigned or assumed and assigned to Buyer in accordance with this Agreement.

"Assigned Plans and Permits" shall mean, with respect to any Acquired Assets, all Plans and Permits, if any, that are assignable pursuant to the applicable issuing Governmental Authority and are Related to such Acquired Asset.

"Assignee" shall mean, as to any Acquired Lease, Buyer or any other Person designated by Buyer in the applicable Buyer Assumption Notice.

"Assignment Actions" shall have the meaning set forth in Section 5.2(c).

"Assignment and Assumption of Lease" shall have the meaning set forth in Section 5.2(b).

"Assignment Instruments" shall have the meaning set forth in Section 5.2(c).

"Assumed 503(b)(9) Claims" shall mean all Liabilities against any of the Debtors arising under section 503(b)(9) of the Bankruptcy Code.

"Assumed Customer Credits" shall mean all Liabilities arising under, or relating to, (i) any existing customer loyalty program (*e.g.*, points, rewards, discounts, etc.) of any of Sellers or community marketing undertaken by any of Sellers, including Shop Your Way, and (ii) any Liability in respect of any gift cards, gift certificates, merchandise credits, return credits, customer membership or customer loyalty discount programs, coupons, groupons or other similar credits or programs issued by, on behalf of or in relation to Sellers since January 1, 2018.

"Assumed Liabilities" shall have the meaning set forth in Section 2.3.

"Assumed Property Tax Liabilities" shall mean all Liabilities for Property Taxes payable with respect to any Acquired Property for Pre-Assignment Tax Periods, not to exceed $135,000,000.

"Assumption Effective Date" shall mean, (i) with respect to the Initial Assigned Agreements, the Closing Date, (ii) with respect to the Designatable Leases, following the delivery of the applicable Buyer Assumption Notice, the earliest of (A) the deadline for objecting to assumption and assignment of such Lease, if no such objection is submitted and (B) the fifth (5th) Business Day following the date of resolution of any objection to assumption and assignment of such Lease, if any such objection is timely submitted and (iii) with respect to the Additional Contracts, the earliest of (A) the deadline for objecting to assumption and assignment of such Additional Contract, if no such objection is submitted and (B) the fifth (5th) Business Day following the date of resolution of any objection to assumption and assignment of such Additional Contract or to proposed Cure Costs, if any such objection is timely submitted.

"Auction" shall mean the auction undertaken pursuant to the Bidding Procedures Order.

5

18-23538-shl   Doc 6507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 255 of 1450

FILED DATE: 5/19/2021 1:27 PM                2020L012403

"<u>Avoidance Actions</u>" shall mean any and all claims for relief of Sellers under chapter 5 of the Bankruptcy Code, or state fraudulent conveyance, fraudulent transfer or other similar state laws.

"<u>Bankruptcy Cases</u>" shall have the meaning set forth in the Recitals.

"<u>Bankruptcy Code</u>" shall mean Title 11 of the United States Code, sections 101 <u>et</u> <u>seq.</u>

"<u>Bankruptcy Court</u>" shall have the meaning set forth in the Recitals.

"<u>Bankruptcy Plan</u>" shall mean the joint chapter 11 plan for the Sellers in the Bankruptcy Cases.

"<u>Bidding Procedures Order</u>" shall mean the Order approving the global bidding procedures entered by the Bankruptcy Court in the Bankruptcy Cases on November 19, 2018 (Docket No. 816).

"<u>BMA Consent</u>" shall have the meaning set forth in <u>Section 2.8(e)</u>.

"<u>Books and Records</u>" shall mean, with respect to Sellers, all documents, instruments, records and other written or electronic materials in whatever form or media (including all hard and electronic copies, CAD files and all discs, tapes and other media-storage data and materials containing such information, and including originals, if available) in the possession or control of Sellers in connection with, or relating to any Acquired Assets, any related Assumed Liabilities, or the operations of Sellers at any Acquired Property, or the operations of the shopping center in which such Acquired Property is located, including to the extent in Sellers' possession or control, all files, data, reports, surveys (ALTA and topographical), soil reports, title reports and title insurance policies (including copies of all underlying exception documents), physical inspection, engineering and asbestos reports, environmental tests, inspections and reports, insurance reports, schematic plans, site plans and drawings, mailing lists, supplier lists, customer lists, price lists, financial projections, marketing information and procedures, copies of Tax Returns to the extent related to the Acquired Assets, advertising and promotional materials, equipment records, warranty information, architects and engineers agreements, architectural and engineering plans and specifications, construction contracts, drawings, plans and specifications, records of operations, manuals of operations or business procedures and other similar procedures, including all policies and procedures for the protection of individual and consumer privacy (including all CAD files and all discs, tapes and other media-storage data containing such information). Without limiting the foregoing, with respect to any Acquired Property, the term "Books and Records" shall include, to the extent in the possession or control of a Seller, (a) the original file for the applicable Acquired Property, including the applicable Acquired Lease and any other related Assigned Agreements, which includes originals of the following: the fully executed Acquired Lease and any other related Assigned Agreements, together with all Exhibits, Schedules and Addenda thereto, and all amendments, modifications and supplements thereto; letter agreements; correspondence; renewal notices; estoppel certificates issued by any Seller or the landlord under any applicable Acquired Lease; estoppel certificates issued by any party under any applicable easement, operation and easement agreement, reciprocal easement agreement, declaration of covenants, conditions and restrictions or similar documents with respect to an Acquired Property (each, an "<u>OEA</u>");

FILED DATE: 5/19/2021 1:27 PM    2020L012403

accounting records; gross sales records to the extent reporting of gross sales is required pursuant to each such Acquired Lease; audit files (whether generated internally or by a third party); surveys of the Acquired Lease Premises or the common areas of the shopping center in which such Acquired Property is located with respect to compliance with Law; any OEA and all amendments, modifications and supplements thereto; the applicable Sellers' title insurance policy, together with legible copies of all exception documents; any agreements confirming the commencement date or other relevant dates in the Acquired Lease; recorded copies of any memorandum of lease; and lease abstracts, and (b) keys to such Acquired Property, security codes for such Acquired Property or any of such Acquired Property's building systems, any keys or security codes for parking and other common areas of any shopping centers in which such Acquired Property is located and any other document or information in the possession or control of any Seller useful or necessary to operate a retail store from the Acquired Lease Premises.  Notwithstanding the foregoing, the term "Books and Records" shall not include (i) personnel files with respect to any Seller employees who are not Transferred Employees, (ii) any information as to Seller employees that is prohibited by Law from being delivered by Sellers to Buyer (including (1) employee medical information protected by the Health Insurance Portability and Accountability Act of 1996, as amended, the ADA, the Family and Medical Leave Act of 1993, as amended, or the Genetic Information Nondiscrimination Act of 2008, as amended, (2) any Employment Eligibility Verification on Form I-9 and (3) any employee background reports), provided that Sellers shall inform Buyer of the general nature of the materials being withheld and, upon Buyer's request and at Buyer's sole cost and expense, reasonably cooperate with Buyer to provide such materials, in whole or in part, in a manner that would not result in the outcome described in this clause (ii), including by reasonably cooperating with Buyer to enter into additional agreements to the extent required to render the access to any personally identifiable information permissible under any applicable Law or contractual obligation, (iii) any non-disclosure or confidentiality, non-compete or non-solicitation agreements other than contemplated by Section 2.1(k) and (iv) the Retained Books and Records.

"Business" shall have the meaning set forth in the Recitals.

"Business Day" shall mean any day of the year, other than a Saturday or Sunday, on which national banking institutions in New York, New York are open to the public for conducting business and are not required or authorized by Law to remain closed.

"Business Employees" shall mean each employee who, as of the Closing Date, is primarily engaged in providing services in connection with, or in support of, the Business, including in any commercial or corporate function (excluding employees employed in the GOB Leased Stores, the GOB Owned Stores or at any distribution center which is announced for closing prior to the Closing Date and any employees who have been provided notice of termination by Sellers prior to the Closing Date).  The number of Business Employees is expected to total approximately 45,000 employees.

"Business Names" shall have the meaning set forth in the definition of Intellectual Property.

"Buyer" shall have the meaning set forth in the Preamble.

"Buyer Assumption Notice" shall have the meaning set forth in Section 5.2(a).

7

FILED DATE: 5/19/2021 1:27 PM    2020L012403

"Buyer Occupancy Costs" shall mean (i) with respect to any GOB Leased Stores, all Occupancy Expenses that are incurred, accrued or apportioned solely for the period commencing on the first calendar day following the GOB Period for such GOB Store and ending at the expiration of the Designation Rights Period for such GOB Store and (ii) with respect to any Operating Leased Property, all Occupancy Expenses that are incurred, accrued or apportioned solely for the period commencing on the Closing Date and ending at the expiration of the Designation Rights Period for such Operating Leased Property.

"Buyer Party Release" shall have the meaning set forth in Section 9.13.

"Buyer Rejection Notice" shall have the meaning set forth in Section 5.3(a).

"Buyer Related Party" shall mean (i) Buyer, (ii) ESL, (iii) the Cyrus Related Parties and (iv) any Person who is currently or formerly was a director, officer, employee, stockholder, member, limited partner, general partner, controlling person, manager, representative, attorney, agent or successors of Buyer, ESL or any of the Cyrus Related Parties.

"Buyer's Savings Plan" has the meaning given in Section 9.7(k)(i).

"Casualty / Condemnation Event" shall have the meaning set forth in Section 12.3(a).

"Challenge" shall have the meaning set forth in the definition of Final Order.

"Citi Card Agreement" shall mean the Second Amended and Restated Program Agreement, dated as of October 3, 2018, by and among Sears, Roebuck and Co., Sears Brands Business Unit Corporation, the Other Sears Parties, and Citibank, N.A., as may be amended from time to time.

"Citi L/C Facility" shall mean that certain letters of credit facility granted pursuant to that certain Letter of Credit and Reimbursement Agreement, dated as of December 28, 2016 (as at any time amended, restated, amended and restated, supplemented or otherwise modified), by and among Sears Roebuck Acceptance Corp. and Kmart Corporation, as borrowers, SHC, Citibank N.A. as administrative agent, and the financial institutions party thereto from time to time.

"Claims" shall mean all rights to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or rights to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, in each case, of whatever kind or description against any Person.

"Closing" shall have the meaning set forth in Section 4.1.

"Closing Date" shall have the meaning set forth in Section 4.1.

"Closing Legal Impediment" shall have the meaning set forth in Section 10.4.

"Closing Payment Amount" shall have the meaning set forth in Section 3.1(a).

8

18-23538-shl   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 250 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

"Code" shall mean the Internal Revenue Code of 1986, as amended.

"Commitment Letters" shall mean, collectively, the Cyrus Commitment Letter, the Debt Commitment Letter, the Real Estate Financing Commitment Letter and the Equity Commitment Letter.

"Competing Transaction" shall mean any direct or indirect financing, refinancing, acquisition, sale, divestiture (including by merger, acquisition or other business combination), public offering, recapitalization, business combination or reorganization, whether in one transaction or a series of related transactions, of or involving or implicating all or any material part of the Designation Rights, the Properties, the Leases, the Acquired Assets, the Assumed Liabilities or any Business (other than any such transaction or series of related transactions with Buyer or any Affiliate thereof) or any standalone plan of reorganization or liquidation for any Seller that does not contemplate the consummation of the Transactions.

"Compliant" shall mean, with respect to the written Required Information that has been or will be made available to Buyer by the Sellers or any of their respective representatives on their behalf in connection with the Transactions, that the Sellers' auditors have not withdrawn any audit opinion with respect to any financial statements contained in the Required Information for which they have provided an opinion (unless a new audit opinion is issued with respect to the financial statements for the applicable periods by such auditors or any other independent public accounting firm of national standing or otherwise reasonably acceptable to Buyer).

"Confidential Information" shall mean, with respect to any Person, all information of a confidential or proprietary nature (whether or not specifically labeled or identified as "confidential"), in any form or medium, which relates to such Person or their respective business relations and its respective business activities. Confidential Information includes, but is not limited to, the following: (i) internal business information (including historical and projected financial information and budgets and information relating to strategic and staffing plans and practices, business, training, marketing, promotional and sales plans and practices, cost, rate and pricing structures and accounting and business methods); (ii) identities and individual requirements of, and specific contractual arrangements with, such Person's customers, clients, distributors, vendors, service providers, independent contractors, joint venture partners and other business relations and their confidential information; (iii) trade secrets; and (iv) other non-public Intellectual Property.

"Confidentiality Agreement" shall mean the Confidentiality Agreement, dated as of May 15, 2018, by and between ESL Investments, Inc. and SHC.

"Consent" shall mean any consent, approval, concession, grant, waiver, exemption, license, entitlement, suitability determination, franchise, development right, certificate, variance, registration, permit, Order or other authorization of or notice of any Person.

"Contract" shall mean any contract, agreement, undertaking, lease, sublease, license, sublicense, sales order, purchase order or other instrument or commitment, whether written or oral (including commitments to enter into any of such) that purports to be binding on any Person or any part of its property (or subjects any such assets or property to an Encumbrance).

9

18-23538-shl    Doc 2507    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 259 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

"<u>Controlling Person</u>" shall mean ESL Investments, Inc., its Affiliates and their respective directors and officers.

"<u>Copyrights</u>" shall have the meaning set forth in the definition of Intellectual Property.

"<u>CPA Firm</u>" shall mean a national firm of independent public accountants as to which the Parties mutually agree. In the event the Parties do not mutually agree in a timely manner, the Bankruptcy Court shall determine the CPA Firm.

"<u>Credit Bid Release Consideration</u>" shall mean an amount of cash equal to Thirty-Five Million Dollars ($35,000,000).

"<u>Credit Card Accounts Receivable</u>" means each Account or Payment Intangible (each as defined in the UCC) together with all income, payments and proceeds thereof, owed by a credit card payment processor or an issuer of credit cards to a Seller resulting from charges by a customer of a Seller on credit cards processed by such processor or issued by such issuer in connection with the sale of goods by a Seller or services performed by a Seller, in each case in the ordinary course of its business.

"<u>Credit Card Claims</u>" means all claims arising from Seller's involvement as a class plaintiff in the class actions consolidated in the multi-district litigation In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation, No. 1:05-MD-01720 (E.D.N.Y.) against Visa Inc., Mastercard Inc., JPMorgan Chase & Co, Citigroup N.A., Bank of America N.A., and other defendants, alleging antitrust violations in relation to certain practices with respect to merchant processing fees and merchant processing agreements attributable to merchants that accepted Visa Inc. or Mastercard Inc. credit or debit cards beginning on January 1, 2004, and any proceeds thereof, including proceeds arising from any settlement with respect to the foregoing.

"<u>Cure Costs</u>" means all amounts payable in order to cure any monetary defaults required to be cured under section 365(b)(1) of the Bankruptcy Code or otherwise to effectuate, pursuant to the Bankruptcy Code, the assumption of the Assigned Agreements, whether as determined by the Bankruptcy Court or agreed to by the Buyer and the non-debtor counterparty to the applicable Assigned Agreement.

"<u>Current Fiscal Year</u>" shall mean, in relation to the Seller, the Seller's current fiscal beginning February 4, 2018.

"<u>Customer Data</u>" shall mean all data (including personal data and personally identifiable information) owned or controlled (meaning any data Sellers have the ability to transfer in compliance with applicable Law) by or on behalf of Sellers related to Sellers' customers, consumers or end users, including (i) customer, consumer and end user files and lists and contact information, (ii) purchasing, transaction and installation histories (namely, the product purchased, date of purchase, location of purchase, date of installation and whether a warranty was purchased), (iii) customer, consumer and end-user complaints and returns, (iv) customer, consumer or end user opt-outs, unsubscribe or opt-ins requests in relation to the use or processing of their information, (v) all analytics relating to any of the foregoing and other customer-based analyses or reports and

18-23538-shl   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Main Document
Pg 262 of 1450

FILED DATE: 5/19/2021 1:27 PM       2020L012403

(vi) all loyalty program data and participation information (including all information and data with respect to Shop Your Way).

"Cyrus Commitment Letter" shall mean the commitment letter (including all annexes, exhibits, schedules and other attachments thereto) among Buyer, the Cyrus Lender, the Sponsor and Citibank, N.A., dated as of the date hereof, as amended, supplemented or replaced in compliance with the terms hereof and thereof.

"Cyrus Financing" shall mean the debt financing incurred or intended to be incurred pursuant to the Cyrus Commitment Letter, including the borrowing of loans contemplated by the Cyrus Commitment Letter.

"Cyrus Lender" shall mean Cyrus Capital Partners, L.P.

"Cyrus Related Parties" shall mean the Cyrus Lender, its Affiliates and any of their respective directors, officers, or employees, in such capacities and in their individual capacities.

"Debt Commitment Letters" shall mean, collectively, the ABL Commitment Letter, the Cyrus Commitment Letter and the Real Estate Financing Commitment Letter.

"Debt Financing" shall mean, collectively, the ABL Financing, the Cyrus Financing and the Real Estate Financing.

"Debt Financing Documents" means the agreements, documents and certificates contemplated by the Debt Financing, including (a) all credit agreements, loan documents, debentures, notes, pledge and security documents, guarantees, mortgages, intercreditor agreements and other related documents pursuant to which the Debt Financing will be governed or contemplated by the Debt Commitment Letters and (b) officer, secretary, solvency, closing and perfection certificates, legal opinions, corporate organizational documents, good standing certificates, Lien searches, and resolutions contemplated by the Debt Commitment Letters or requested by the Financing Sources.

"Deposit Amount" shall have the meaning set forth in Section 3.2.

"Designatable Lease" shall mean each of (i) the GOB Leases and the Operating Leases and (ii) to the extent applicable to such leases and lease agreements, all non-disturbance agreements with fee owners or senior landlords, subordination, non-disturbance and attornment agreements, waivers and consents in favor of any Seller,  estoppel certificates from landlords under any of the Leases (to the extent assignable), and landlord waivers or other collateral access agreements in favor of any Seller or any asset-based lenders.

"Designated Sale Transaction" shall have the meaning set forth in Section 2.12(b).

"Designated Tax Advisor" shall mean Weil, Gotshal & Manges LLP, or Deloitte Tax LLP, as decided in the Sellers' discretion, or if neither of the foregoing is able to deliver a Tax Opinion, Cleary Gottlieb Steen & Hamilton LLP.

"Designation Assignment Date" shall have the meaning set forth in Section 5.2(d).

11

18-23538-shl Doc 2307 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 261 of 1450

"Designation Deadline" shall have the meaning set forth in Section 2.9.

"Designation Rights" shall mean the exclusive right to irrevocably select, identify and designate each Designatable Lease in respect of which Assignee will acquire all of Sellers' right, title and interest in and to the applicable Designatable Lease, together with all of Sellers' right, title and interest in and to certain assets related to such Designatable Lease, to the extent, but only to the extent, set forth in Article II, all in accordance with the terms and conditions of this Agreement.

"Designation Rights Period" shall mean, with respect to each Designatable Lease, the period commencing on the Closing Date and ending on the earliest of (i) five (5) Business Days after delivery of the applicable Buyer Rejection Notice, (ii) the date on which an applicable agreement is assumed and assigned to an Assignee, (iii) the date which is sixty (60) days after the Closing Date and (iv) May 3, 2019.

"DieHard Marks" shall mean the name "DIEHARD" and any name consisting of, containing or incorporating "DIEHARD", and all designs and logos associated therewith in each case, together with all variations thereof; and all Trademarks, Business Names, Domain Names and Media Accounts consisting of, containing or incorporating any of the foregoing.

"DIP Credit Agreement" means that certain Superpriority Senior Secured Debtor-in-Possession Asset Based Credit Agreement, dated as of November 29, 2018, among SHC, as holdings, Sears Roebuck Acceptance Corp. and Kmart Corporation, as borrowers, Bank of America, N.A., in its capacity as administrative agent and co-collateral agent, Wells Fargo Bank, National Association, in its capacity as co-collateral agent, and the lenders named therein, as in effect on the date hereof [Docket No. 955-1].

"Distribution Requirement" shall mean the requirement that each Seller (except if and to the extent (x) Buyer elects, in accordance with this Agreement, that the transactions set forth in this Agreement with respect to such Seller shall not be treated as a Tax Reorganization, or (y) if requested by such Seller, Designated Tax Advisor is unable to deliver a Tax Opinion that the transactions set forth in this Agreement with respect to such Seller may be treated as a Tax Reorganization) (i) shall distribute the Securities Consideration received by it to Persons qualifying as holders of "securities" of such Seller for purposes of section 354 of the Code, (ii) shall distribute all of the cash received pursuant to Section 3.1(a), as well as all of its other property pursuant to the Bankruptcy Plan, (iii) shall dissolve no later than the end of the third taxable year ending after the Closing Date, and (iv) during the period between the Closing Date and its dissolution, shall limit its activities to those which are merely for the purpose of liquidating its assets (which may include maintaining a going operation for the preservation of value, pending distribution or sale), winding up its affairs, resolving and paying its debts, and distributing any remaining assets (which may include a distribution to a non-corporate liquidating vehicle).

"Domain Names" shall have the meaning set forth in the definition of Intellectual Property.

"Effect" shall have the meaning set forth in the definition of "Material Adverse Effect."

"Effective Date" shall have the meaning set forth in the Preamble.

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-shl   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 264 of 1450

"Employee Plan" shall mean each "employee benefit plan" (as such term is defined in Section 3(3) of ERISA), whether or not subject to ERISA, and each other employee benefit plan, program, policy, or arrangement (including each stock purchase, stock option, restricted stock or other equity-based, severance, retention, change-of-control, bonus, deferred compensation, fringe benefit and other similar benefit plan, program, policy, or arrangement), in each case, that provides any kind of compensation or benefits to Business Employees or former employees of the Business or their dependents or beneficiaries or with respect to which Seller would reasonably be expected to have any Liability in respect of the Business Employees.

"Employment Laws" shall mean all Laws (including the WARN Act), now or at the applicable time in effect and regulating, respecting, concerning or relating directly or indirectly to employees, independent contractors, labor relations, workers' compensation, unemployment compensation, foreign workers employed in the United States, wages and hours, safety, compensation, worker classification or other workplace or employment standards or practices.

"Encumbrance" shall mean all mortgages, pledges, hypothecations, charges, liens, interests, debentures, trust deeds, claims and encumbrances of any type whatsoever (whether known or unknown, secured or unsecured or in the nature of setoff or recoupment, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or nonmaterial, disputed or undisputed, whether arising prior to or subsequent to the commencement of the Bankruptcy Cases, and whether imposed by agreement, understanding, Law, equity, or otherwise), including Claims, assignments by way of security or otherwise, security agreements and interests, conditional sales contracts or other title retention agreements, rights of first refusal, first negotiation or first offer, options to purchase or similar restrictions or obligations, instruments creating a security interest in the Acquired Assets or any part thereof or interest therein, and any agreements, leases, subleases, licenses, occupancy agreements, options, easements, rights of way, covenants, conditions, restrictions, declarations, defects in title, encroachments, exceptions or other encumbrances adversely affecting title to the Acquired Assets or any part thereof or interest therein.

"Environmental Laws" shall mean all applicable Laws relating to pollution or protection of human health or safety (to the extent related to exposure to Hazardous Substances) or the environment (including ambient air, water, surface water, groundwater, land surface, soil or subsurface) or natural resources, including applicable Laws relating to the generation, storage, transfer, transportation, investigation, cleanup, treatment, remediation, or use of, or release or threatened release into the environment of, any Hazardous Substances.

"Environmental Permits" shall mean all licenses, permits, variances, consents or certificates issued pursuant to Environmental Laws.

"Equipment" shall mean all machinery, equipment, appliances, supplies, furniture, fixtures, janitorial and cleaning equipment, partitions, desks, chairs, tables, telephone lines, cubicles, point-of-sale systems, graphics, branding, signs and signage (including any signs and signage on any buildings, pylons or monuments and any directional or other ground or off-premises signs and signage). For the avoidance of doubt, Improvements do not constitute Equipment.

13

FILED DATE: 5/19/2021 1:27 PM   2020L012403

"Equity Commitment Letter" shall have the meaning set forth in Section 7.4(a).

"Equity Financing" shall have the meaning set forth in Section 7.4(a).

"ERISA" shall mean the Employee Retirement Income Security Act of 1974, as amended, and all Laws issued thereunder.

"ERISA Affiliate" shall mean, with respect to any entity, trade or business, any other entity, trade or business that is, or was at the relevant time, a member of a group described in Section 414(b), (c), (m) or (o) of the Code or Section 4001(b)(1) of ERISA that includes or included the first entity, trade or business, or that is, or was at the relevant time, a member of the same "controlled group" as the first entity, trade or business pursuant to Section 4001(a)(14) of ERISA.

"ESL" shall mean ESL Investments, Inc., JPP, LLC, JPP II, LLC, Eddie S. Lampert and any of their respective directors, officers, or employees, in such capacities and in their individual capacities.

"Excluded Assets" shall have the meaning set forth in Section 2.2.

"Excluded Asset-Reorganization Taxes" shall mean any and all (i) Taxes imposed on or with respect to the Excluded Assets or the Excluded Liabilities for any taxable period, other than any Tax to the extent such Tax would have been reduced or eliminated had the Sellers' Tax attributes not transferred to Buyer (taking into account Tax attributes Sellers would have had if all transactions described in Article II were Designated Sale Transactions and respected as such by the Internal Revenue Service), (ii) Taxes imposed on or with respect to the Acquired Assets, the Acquired Properties, the Business or the Assumed Liabilities for any Pre-Assignment Tax Period (for the avoidance of doubt, other than amounts payable by Buyer under Section 5.1(b)), other than any Tax to the extent such Tax would have been reduced or eliminated had the Sellers' Tax attributes not transferred to Buyer (taking into account Tax attributes Sellers would have had if all transactions described in Article II were Designated Sale Transactions and respected as such by the Internal Revenue Service), (iii) Liabilities of Buyer or any of its Affiliates for Taxes described in clause (i) or (ii) hereof of any Sellers or their Affiliates as a transferee or successor, by contract, operation of law or otherwise, other than as part of any agreement entered into in the Ordinary Course of Business the primary purpose of which is not related to Tax and (iv) Taxes imposed on any earnings on the investment of the cash received pursuant to Section 3.1(a) pending its distribution pursuant to the Bankruptcy Plan.

"Excluded Asset-Sale Taxes" shall mean any and all (i) Taxes imposed on or payable by any Sellers or their Affiliates for any taxable period (whether starting or ending before or after the Closing Date) or with respect to any of the Acquired Assets, the Acquired Properties the Business or the Assumed Liabilities, other than amounts payable by Buyer under Section 5.1(b), and (ii) Liabilities of Buyer or any of its Affiliates for Taxes of any Sellers or their Affiliates as a transferee or successor, by contract, operation of law or otherwise, other than as part of any agreement entered into in the Ordinary Course of Business the primary purpose of which is not related to Tax. Notwithstanding anything to the contrary herein, "Excluded Asset-Sale Taxes" shall not include any Excluded Asset-Reorganization Taxes.

14

FILED DATE: 5/19/2021 1:27 PM   2020L012403

"Excluded Equipment" shall mean all Equipment other than the Acquired Equipment.

"Excluded Improvements" shall mean all Improvements other than the Acquired Improvements.

"Excluded Inventory" shall mean (i) all Inventory other than the Acquired Inventory, (ii) all Inventory held by Sellers which is located at any site which is not a Property and (iii) for the avoidance of doubt, all Inventory located at any GOB Store.

"Excluded IT" shall mean the Equipment and other assets set forth on Schedule 1.1(c).

"Excluded Liabilities" shall have the meaning set forth in Section 2.4.

"Exclusive License" shall mean the license agreement by and between KCD IP, LLC and Buyer as described in Section 9.14(b).

"Existing Financing Arrangements" shall mean the Citi L/C Facility, the DIP Credit Agreement, the FILO Facility, the IP/Ground Lease Term Loan Facility, the Junior DIP Term Loan Agreement, the Real Estate Loan 2020, the Second Lien Line of Credit Facility, the Second Lien Term Loan, the Second Lien PIK Notes and the Third Amended and Restated Credit Agreement.

"Expenses" shall mean (i) the Buyer Occupancy Costs, if applicable, and (ii) the reasonable and documented out-of-pocket fees, costs and expenses or other disbursements borne by any Seller or its Affiliates incurred or accruing (a) during the Designation Rights Period, to the extent Related to the Operating Leases or Operating Leased Stores, (b) to the extent Related to the GOB Leases or GOB Leased Stores incurred or accruing following the GOB Period for each such GOB Lease or GOB Leased Store, (c) after the Closing, to the extent related to an Additional Contract or any Operating Lease or Operating Leased Store or (d) as a result of Sellers being the tenant under the Designatable Lease or Additional Contract during, with respect to the GOB Leased Stores, the period commencing after the GOB Period for each such GOB Leased Store and ending at the expiration of the Designation Rights Period, and with respect to any Operating Leased Property, during the Designation Rights Period, and any reasonable and documented fees, costs and expenses incurred by any Seller or its Affiliates in connection with any transfer of a Designatable Lease to Purchaser following the Designation Rights Period, but in each case shall not, for the avoidance of doubt, include rejection damages or Cure Costs.

"Filing" shall have the meaning set forth in the Recitals.

"FILO Facility" shall mean the first-in, last-out tranche of debt under the Third Amended and Restated Credit Agreement (as amended by (i) that certain Fifth Amendment to Third Amended and Restated Credit Agreement, dated as of March 21, 2018, by and between, inter alios, Sears Roebuck Acceptance Corp. and Kmart Corporation, as borrowers, SHC, Bank of America, N.A., as administrative agent, co-collateral agent and lender, Wells Fargo Bank, National Association, as co-collateral agent and lender, and PNC Bank, National Association, Citibank N.A., Citizen Business Capital, and Regions Bank, as revolving lenders and (ii) that certain Sixth Amendment to Third Amended and Restated Credit Agreement, dated as of March 21, 2018, by and between, inter alios, Sears Roebuck Acceptance Corp. and Kmart Corporation, as borrowers,

15

SHC, Bank of America, N.A., as administrative agent and co-collateral agent, Wells Fargo Bank, National Association, as co-collateral agent, and Benefit Street 2018 LLC, JPP LLC and JPP II LLC as lenders).

"FILO Facility Buyout Amount" shall have the meaning set forth in Section 3.1(c).

"Final Order" shall mean an action taken or order issued by the applicable Governmental Authority (i) as to which no appeal, notice of appeal, motion to amend or make additional findings of fact, motion to alter or amend judgment, motion for rehearing or motion for new trial, request for stay, motion or petition for reconsideration, application or request for review, or other similar motion, application, notice or request (collectively, a "Challenge") has been timely filed, or, if any of the foregoing has been timely filed, it has been disposed of in a manner that upholds and affirms the subject order in all respects without the possibility for further Challenge thereon and (ii) as to which the time for instituting or filing a Challenge shall have expired.

"Financing" shall mean, collectively, the Debt Financing and the Equity Financing.

"Financing Sources" shall mean, with respect to (x) the Real Estate Financing, the Cyrus Lender and the Sponsor, (y) the Cyrus Financing, the Cyrus Lender, the Sponsor and Citibank, N.A. and (z) the ABL Financing, the Persons that have directly or indirectly committed to provide or otherwise entered into agreements in connection with the ABL Financing in connection with the transactions contemplated hereby pursuant to the ABL Commitment Letter, including the agents, arrangers and lenders party to the ABL Commitment Letter and/or the Debt Financing Documents relating to the ABL Financing, together with any of their respective Affiliates and their respective Affiliates' former, current or future officers, directors, employees, agents and representatives, direct or indirect shareholders or equity holders, managers, members and their respective successors and assigns, in each case in their capacities as such.

"Foreign Subsidiary" shall mean any Subsidiary of any Seller incorporated under any jurisdiction other than the United States of America and its territories, other than Sears RE.

"FTC" shall mean the Federal Trade Commission.

"GAAP" shall mean U.S. generally accepted accounting principles in effect from time to time.

"GOB Leases" shall mean each of (i) those leases or lease agreements (including ground leases) related to the real properties identified on Schedule 1.1(m) (together with all amendments, modifications, supplements and renewals thereof), and (ii) to the extent applicable to such leases and lease agreements, all non-disturbance agreements with fee owners or senior landlords, subordination, non-disturbance and attornment agreements, waivers and consents in favor of any Seller, estoppel certificates from landlords under any such leases and lease agreements (to the extent assignable), and landlord waivers or other collateral access agreements in favor of any Seller or any asset-based lenders.

"GOB Leased Store" shall mean the real property demised pursuant to a GOB Lease.

16

"GOB Owned Stores" shall mean the real property described in Schedule 1.1(n), including, in each case, all of the right, title and interest of Seller and its Subsidiaries to all Improvements located thereon and all easements and other rights and interests appurtenant thereto and any associated rights to parking.

"GOB Period" shall mean with respect to each GOB Leased Store, the period commencing on the Closing Date and ending on the date that Seller delivers written notice to Buyer that the "going-out-of-business" sale with respect to such GOB Leased Store has been completed and all inventory of Sellers has been removed from such GOB Leased Store. For the avoidance of doubt, Sellers may deliver any such notice on or prior to the Closing Date.

"GOB Stores" shall mean, individually or collectively as the context may require, the GOB Leased Stores and the GOB Owned Stores.

"Governmental Authority" shall mean any United States federal, state, municipal or local or any foreign government, governmental agency or authority, or regulatory or administrative authority, or any court, tribunal or judicial body having jurisdiction, including the Bankruptcy Court.

"Hazardous Substances" shall mean any material, substance or waste (solid, liquid, gaseous or combination thereof) defined, characterized or regulated as "hazardous," "toxic," "explosive," a "pollutant" or a "contaminant" under Environmental Laws, including asbestos or any substance containing asbestos, formaldehyde, polychlorinated biphenyls, lead paint and petroleum or petroleum products (including crude oil and any fraction thereof), and by-products of any or all of the foregoing.

"HSR Act" shall mean the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, and the relevant rules and regulations thereunder.

"HSR Filing" shall have the meaning set forth in Section 8.3(b).

"Improvements" shall mean all building systems (including HVAC, electrical, plumbing, mechanical, vertical transportation and other similar systems), leasehold alterations, improvements, structures, buildings, fixtures and equipment which are affixed to and constitute a part of any applicable real property. For the avoidance of doubt, Inventory are not Improvements.

"Inbound IP License" shall mean any Contract pursuant to which any Seller is granted any license, covenant not to sue or other rights to use any (i) Intellectual Property or (ii) data (including personal data and personally identifiable information); provided, however, that the term "Inbound IP License" shall not include any Outbound IP License.

"Initial Assigned Agreements" shall have the meaning set forth in Section 2.7(b).

"Initial Assigned Contract" shall have the meaning set forth in Section 2.7(b).

"Initial Assigned Lease" shall have the meaning set forth in Section 2.7(b).

17

FILED DATE: 5/19/2021 1:27 PM      2020L012403

"Intellectual Property" shall mean all intellectual property and other similar proprietary rights, anywhere in the world, whether registered or unregistered, including all rights in and to (i) all trademarks, service marks, logos, trade dress and other source identifiers and commercial indicia of origin, and all registrations and applications therefor, in each case together with the goodwill of the businesses in which the foregoing are used and all goodwill connected with the use of and symbolized by the foregoing (collectively the "Trademarks"), (ii) all trade names, fictitious business names, corporate names and d/b/a names, together with the goodwill of the businesses in which the foregoing are used and all goodwill connected with the use of and symbolized by the foregoing (collectively the "Business Names"), (iii) all domain names, URLs and IP addresses (collectively, such domain names and websites, the "Domain Names"), (iv) any social media accounts, identifiers and handles (collectively the "Media Accounts"), (v) trade secrets, know-how and confidential information, including proprietary rights in and to processes, methods, formulae, marketing and technical information, blueprints, quality assurance and control procedures, design tools and simulation capabilities (collectively, the "Know-How"), (vi) all patents and patent applications (including provisionals, continuations, divisionals, continuations-in-part, renewals, reissues, re-examinations, substitutions and extensions thereof), inventions and inventions disclosures (whether or not patentable)(collectively the "Patents"), (vii) all copyrights and registrations and applications therefor and works of authorship, moral rights, designs and mask work rights (collectively the "Copyrights"), (viii) all database rights and (ix) computer programs and applications and any other software (regardless of the stage of development or completion), including libraries, subroutines, protocols, toolsets, compilers, schematics, plugins, APIs and other components thereof, whether in source code, object code or other form, computerized databases and other computerized compilations and collections of data or information, user interfaces, command structures, report formats, templates, menus, buttons and icons, in each case, relating to computer programs or other software, and descriptions, flow charts, architectures, development tools and other materials used to design, plan, organize and develop any of the foregoing; and all related specifications and documentation (collectively, the "Software").

"Intellectual Property Related Documentation" shall mean each of the following to the extent existing as of the Closing Date and in Sellers' possession or control as of the Closing Date: (i) all correct and complete physical and electronic copies of all prosecution files and dockets, registration certificates, litigation files and related opinions of counsel and correspondence relating thereto for all issued, registered and applied-for items of Acquired Intellectual Property, (ii) all litigation files to the extent relating to Actions brought for the infringement, dilution, misappropriation or other violation of the Acquired Intellectual Property, (iii) all books, records, files, ledgers or similar documentation in Sellers' possession used to track, organize or maintain any of the Acquired Intellectual Property, (iv) a list of outstanding maintenance, renewal and prosecution deadlines with respect to the applied-for, registered or issued Acquired Intellectual Property that fall within ninety (90) days following the Closing Date and (v) copies of acquisitions agreements relating to acquisitions of the Acquired Intellectual Property.

"Intellectual Property Security Agreement" shall mean that certain Intellectual Property Security Agreement, dated January 4, 2018 (at any time amended, restated, amended and restated, supplemented or otherwise modified), by and among SHC, Sears Roebuck Acceptance Corp. and Kmart Corporation, as Borrowers, and the other guarantors party thereto, and the lenders named therein, in favor of JPP, LLC, as Agent.

18

FILED DATE: 5/19/2021 1:27 PM    2020L012403

"Intercompany IP Agreements" shall mean any Contract under which a Seller or an Affiliate of a Seller licenses or grants any license, covenant not to sue or other rights under any of the Acquired Intellectual Property to any other Seller(s) or Affiliate(s) of any Seller.

"Inventory" shall mean goods, other than farm products, reflected in the stock ledger of the Sellers as of any date of the determination thereof, which (A) are leased by a person as lessor, (B) are held by a person for sale or lease or to be furnished under a contract of service, (C) are furnished by a person under a contract of service or (D) consist of raw materials, work in process, or materials used or consumed in a business.

"Inventory Value" shall mean, with respect to any Inventory of the Sellers, the value of such Inventory valued at the lower of cost or market value on a basis consistent with the Sellers' current and historical accounting practice in effect on the date hereof, per the stock ledger (without giving effect to LIFO reserves and general ledger reserves for discontinued inventory, markdowns, intercompany profit, rebates and discounts, any cut off adjustments, revaluation adjustments, purchase price adjustments or adjustments with respect to the capitalization of buying, occupancy, distribution and other overhead costs reflected on the balance sheet of the Sellers in respect of Inventory).

"IP/Ground Lease Buyout Amount" shall have the meaning set forth in Section 3.1(c).

"IP/Ground Lease Property" shall mean the properties that are collateral under the IP/Ground Lease Term Loan Facility, as set forth on Schedule 1.1(d).

"IP/Ground Lease Term Loan Facility" shall mean the loan facility granted pursuant to that certain Term Loan Credit Agreement, dated as of January 4, 2018 (at any time amended, restated, amended and restated, supplemented or otherwise modified), by and between SHC, as holdings, Sears Roebuck Acceptance Corp. and Kmart Corporation, as borrowers, the guarantors party thereto from time to time, JPP LLC as agent, and JPP LLC, JPP II LLC, Cyrus Opportunities Master Fund II, Ltd., CRS Master Fund, L.P., Crescent 1, L.P., Canary SC Master Fund, L.P., Cyrus Select Opportunities Master Fund, Ltd., Cyrus Special Strategies Master Fund, LP, and Cyrus 1740 Master Funds, LP, as lenders.

"IP Assignment Agreement" shall mean the agreement substantially in the form attached hereto as Exhibit B, to be entered into by and between Sellers, on the one hand, and Buyer or its applicable Affiliates, on the other hand.

"IP License" shall mean each Inbound IP License and each Outbound IP License, and any agreement that constitutes an "IP License" as defined in the Intellectual Property Security Agreement, in each case, for the avoidance of doubt, including the KCD Agreements.

"IP Powers of Attorney" shall mean documents appointing attorneys for Buyer or Buyer's designees with full power to execute documents and take all other steps solely in connection with (i) effectuating and implementing the assignment of the Acquired Intellectual Property, (ii) perfecting Buyer's right, title and interest in, to and under the Acquired Intellectual Property pursuant to such assignment and (iii) as otherwise necessary for related bona fide purposes, in each of cases (i) through (iii) in the intellectual property offices of various jurisdictions around the

19

FILED DATE: 5/19/2021 1:27 PM   2020L012403

world, at or after the Closing, including, (A) with respect to the applied-for, issued or registered United States Intellectual Property, the power of attorney substantially as set forth in the form at Exhibit C and (B) with respect to any Intellectual Property included in the Acquired Intellectual Property that is issued, filed or registered in a jurisdiction outside of the United States, powers of attorney suitable for recording in each such jurisdiction with terms and conditions substantially similar to those set forth in Exhibit C, except for any different terms and conditions that would be necessary in a recordable power of attorney for the respective local jurisdiction.

"IT Systems" shall have the meaning set forth in Section 6.10(e).

"Junior DIP Consideration" shall mean evidence reasonably satisfactory to the Sellers that all obligations (including any accrued and unpaid interest) of the Sellers with respect to $350,000,000 aggregate principal amount outstanding under the Junior DIP Term Loan Agreement (or such lesser aggregate principal amount outstanding thereunder to the extent that the junior DIP facility under the Junior DIP Credit Agreement is not fully drawn as of the Closing Date) have been satisfied and released.

"Junior DIP Term Loan Agreement" shall mean that certain Superpriority Junior Lien Secured Debtor-in-Possession Credit Agreement dated as of November 29, 2018 by and among SHC, as holdings, Sears Roebuck Acceptance Corp. and Kmart Corporation, as borrowers, the several banks, financial institutions or other entities from time to time party thereto as Term Lenders thereunder and Cantor Fitzgerald Securities as administrative agent and collateral agent as filed with the Bankruptcy Court [Docket No. 951-2].

"KCD Agreements" shall mean all IP Licenses under which KCD IP, LLC or a Seller grants any license, sublicense, covenant not to sue or other rights under any KCD IP to any Seller prior to the Closing.

"KCD IP" shall mean any Intellectual Property owned by KCD IP, LLC as of the date hereof or as of the Closing.

"KCD Notes" shall mean the 6.90% KCD IP, LLC Asset-Backed Notes issued pursuant to the Indenture dated as of May 18, 2006, by KCD IP, LLC as Issuer and U.S. Bank National Association, as Trustee.

"Kenmore Marks" shall mean the name "KENMORE" and any name consisting of, containing or incorporating "KENMORE", and all designs and logos associated therewith, in each case, together with all variations thereof; and all Trademarks, Business Names, Domain Names and Media Accounts consisting of, containing or incorporating any of the foregoing.

"Kenmore/DieHard Business" shall have the meaning set forth in the Recitals.

"Kmart Marks" shall mean the name "KMART" and any name consisting of, containing or incorporating "KMART", and all designs and logos associated therewith, in each case, together with all variations thereof; and all Trademarks, Business Names, Domain Names and Media Accounts consisting of, containing or incorporating any of the foregoing.

FILED DATE: 5/19/2021 1:27 PM                                    2020L012403

"Knowledge" shall mean, with respect to any matter in question, in the case of Sellers, the knowledge after reasonable inquiry of the individuals set forth on Schedule 1.1(e) with respect to such matter.

"Know-How" shall have the definition set forth in the definition of Intellectual Property.

"L/C Facility Consideration" shall mean evidence reasonably satisfactory to the Sellers that all obligations of Sellers with respect to amounts outstanding or commitments under the Citi L/C Facility (but in no event with respect to a principal amount of greater than $271 million) have been satisfied and released, including as contemplated by the Cyrus Financing.

"Labeling and Marketing Materials" shall mean all product labeling, product advertising, marketing and promotional materials, training materials and other similar materials, in each case created or developed by or on behalf of a Seller.

"Law" shall mean any foreign or domestic law, statute, code, ordinance, rule, regulation, order, decision, judgment, writ, stipulation, award, injunction or decree by any Governmental Authority, including all Environmental Laws and the Americans with Disabilities Act, as amended ("ADA"), together with all final and unappealable awards or decisions by an arbitrator or arbitration panel ("Arbitrator") by which Sellers or any of the Properties, Leases or Acquired Assets is bound.

"Leases" shall mean collectively (i) the Initial Assigned Leases, and (ii) the Designatable Leases.

"Lease Premises" shall mean each of the Sellers' or its Subsidiaries' leased real properties that is an Initial Assigned Lease or a Designatable Lease.

"Liability" shall mean any liability, indebtedness, debt, guaranty, claim, demand, loss, damage, deficiency, assessment, responsibility, Claim, Action, proceeding or obligation of whatever kind or nature (whether known or unknown, whether asserted or unasserted, whether absolute or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, whether due or to become due, whether determined or determinable, whether choate or inchoate, whether secured or unsecured, whether matured or not yet matured) and including all costs, fees and expenses relating thereto.

"Lien" means any claim, mortgage, option, pledge, lien, encumbrance, title defect, preemptive right, restriction on transfer or other restriction of any kind (other than restrictions on transfer created under applicable securities laws, charge or other security interest).

"Managed Properties" shall have the meaning set forth in Section 8.8(b).

"Management Services" shall have the meaning set forth in Section 8.8(b).

"Management Services Period" shall mean the period commencing immediately following the Closing and (i) for each Acquired Property at which Management Services are being provided, upon (a) the earliest to occur of (1) the date that the applicable Seller receives written notice of termination from Buyer, (2) the six (6) month anniversary of the Closing Date or (3) such later

21

FILED DATE: 5/19/2021 1:27 PM                                                                                2020L012403

date as may be agreed by the Parties, and (ii) for each Occupancy Leased Premise, five (5) Business Days following the delivery by Buyer of a Buyer Rejection Notice with respect to such Occupancy Leased Premise.

"Management Services Reimbursements" shall have the meaning set forth in Section 8.8(b).

"Marketing Period" means the first period of fourteen (14) consecutive Business Days after the date of this Agreement and throughout each day of which Buyer shall have all of the Required Information and such Required Information is Compliant; provided that January 21, 2019 shall not be considered a Business Day for the purposes of calculating such fourteen (14) Business Day period.  Notwithstanding the foregoing, the Marketing Period shall not commence and shall be deemed not to have commenced if, on or prior to the completion of such fourteen (14) consecutive Business Day period, (i) Sellers (or any Affiliate thereof) have determined that a restatement of any financial information included in the Required Information is necessary or that such restatement is under consideration, in which case the Marketing Period shall be deemed not to commence unless and until any such restatement has been completed and the applicable Required Information has been amended or Sellers (or any Affiliate thereof) have determined that no restatement shall be required, or (ii) any Required Information would not be Compliant during such fourteen (14) Business Day period. Notwithstanding the provisions of this paragraph, the Marketing Period shall end on any earlier date on which the Debt Financing is consummated; provided, that if Sellers in good faith reasonably believe that they have delivered the Required Information that is Compliant to Buyer, they may deliver to Buyer a written notice to that effect (stating when they believe they completed such delivery), in which case such Required Information shall be deemed to have been delivered on the date specified in that notice, unless Buyer in good faith reasonably believes that Sellers have not completed delivery of the Required Information or that the Required Information is not Compliant and, within two (2) Business Days after receipt of such notice from Sellers, Buyer delivers a written notice to Sellers to that effect and stating with specificity which Required Information Sellers have not delivered or the reason for which the Required Information is not Compliant, in which case, the Marketing Period shall commence upon delivery to Buyer of such specified information or when such information is Compliant.

"Material Adverse Effect" shall mean any effect, change, condition, circumstance, development or event (any of the foregoing, an "Effect") that, individually or in the aggregate with all other Effects has had, or would reasonably be expected to have, a material adverse effect on (A) the assets, liabilities, properties, business or condition (financial or otherwise) of the Designation Rights, Acquired Assets and Assumed Liabilities taken as a whole, or (B)  Sellers' ability to consummate the Transactions pursuant to the terms hereof, in each case excluding any Effect that results from or arises out of: (i) the execution and delivery of this Agreement or the announcement thereof or the pendency or consummation of the Transactions; (ii)  any change in the United States or foreign economies or securities or financial markets generally; (iii) any change arising in connection with natural disasters, earthquakes, fire, flood, hurricane, tornado or other weather event, geopolitical conditions or any outbreak or escalation of hostilities or acts of terrorism or war, military actions or any escalation or material worsening of any such hostilities or acts of terrorism or war, military actions existing or underway as of the date hereof; (iv) any

22

FILED DATE: 5/19/2021 1:27 PM   2020L012403

effect, change or event that is otherwise generally applicable to the industries and markets in which Sellers operate; (v) changes in (or proposals to change) Laws or accounting regulations or principles; (vi) any action expressly contemplated by this Agreement; (vii) compliance with the terms of this Agreement; or (viii) the Bankruptcy Cases and reasonably anticipated Effects thereof on the Business, the Acquired Assets or the Designation Rights; <u>provided</u>, <u>however</u>, that in the case of the foregoing clauses (ii), (iii), (iv) or (v), any such Effect shall not be deemed to be excluded solely to the extent it has a materially disproportionate adverse effect on the assets, liabilities, properties, business or condition of the Sellers, taken as a whole, compared to other Persons similarly situated in the same industry.

"<u>Material Contracts</u>" shall have the meaning set forth in <u>Section 6.11(a)</u>.

"<u>Media Accounts</u>" shall have the meaning set forth in the definition of Intellectual Property.

"<u>Multiemployer Plan</u>" shall mean a "multiemployer plan" within the meaning of Section 3(37) or 4001(a)(3) of ERISA.

"<u>Non-Recourse Parties</u>" shall have the meaning set forth in <u>Section 13.12</u>.

"<u>Non-Represented Employees</u>" shall have the meaning set forth in <u>Section 9.7(a)</u>.

"<u>Occupancy Agreement</u>" shall mean that certain Occupancy Agreement substantially in the form attached hereto as Exhibit D.

"<u>Occupancy Expenses</u>" shall mean, with respect to any Lease Premises, all liquidated costs, expenses, obligations and liabilities under or in connection with the applicable Lease payable or paid by any Seller, including any and all mortgage payments, base rent, percentage rent, additional rent, CAM, utilities, Property Taxes and assessments, costs of continuing the level of maintenance and security required by this Agreement, a pro rata portion of insurance (including public liability and casualty insurance) attributable to such Lease or Lease Premises and all other categories of expenses, obligations and liabilities arising or accruing under or in connection with such Lease (whether or not billed by the applicable counterparty to such Lease). For the avoidance of doubt, Occupancy Expenses shall not include any Seller's costs and expenses of (a) any professionals retained in connection with the Bankruptcy Cases or (b) counsel of any kind except to the extent counsel is retained with respect to a Lease or Owned Real Property and not Sellers' other operations.

"<u>Occupancy Leased Premise</u>" has the meaning assigned thereto in the Occupancy Agreement.

"<u>OEA</u>" shall have the meaning set forth in the definition of Books and Records.

"<u>Operating Leases</u>" shall mean each of (i) those leases or lease agreements (including ground leases) related to the real properties identified on <u>Schedule 1.1(o)</u> (together with all amendments, modifications, supplements and renewals thereof), and (ii) to the extent applicable to such leases and lease agreements, all non-disturbance agreements with fee owners or senior

18-23538-shl   Doc 6587   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 273 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

landlords, subordination, non-disturbance and attornment agreements, waivers and consents in favor of any Seller, estoppel certificates from landlords under any such leases and lease agreements (to the extent assignable), and landlord waivers or other collateral access agreements in favor of any Seller or any asset-based lenders.

"Operating Leased Property" shall mean the real property demised pursuant to an Operating Lease.

"Operating Owned Property" shall mean the real property described in Schedule 1.1(p), including, in each case, all of the right, title and interest of Seller and its Subsidiaries to all Improvements located thereon and all easements and other rights and interests appurtenant thereto and any associated rights to parking.

"Order" shall mean any award, writ, injunction, judgment, order, decree, attachment, stay, stipulation, certification, determination, decision, verdict, ruling, subpoena, or award issued or entered by or with any Governmental Authority or Arbitrator (whether temporary, preliminary or permanent).

"Ordered Inventory" shall mean Inventory (other than Prepaid Inventory) of the type set forth on Schedule 1.1(f) that has been ordered by Sellers prior to the Closing Date but as to which Sellers have not taken title or delivery prior to the Closing Date.

"Ordinary Course of Business" shall mean the operation of the Business in the ordinary and usual course consistent with past practice as well as (and subject to) the Filing and all Orders entered in connection therewith.

"Other Payables" shall mean the accounts payable set forth on Schedule 1.1(g).

"Outbound IP License" shall mean any Contract pursuant to which any Seller has granted any license, covenant not to use or other rights under any (i) Acquired Intellectual Property or (ii) Acquired Data, in each case, whether or not, pursuant to such Contract, any Seller was granted any license, covenant not to sue or other rights to use any (A) Intellectual Property or (B) data (including personal data and personally identifiable information).

"Outside Date" shall have the meaning set forth in Section 12.1(a)(ii).

"Owned Real Property" shall mean (i) the GOB Owned Stores and (ii) the Operating Owned Properties.

"PA Liabilities" shall have the meaning set forth in Section 2.3(e).

"PA Liabilities Services Agreement" shall have the meaning set forth in Section 2.8(e).

"PartsDirect Marks" shall mean the name "PARTSDIRECT" and any name consisting of, containing or incorporating "PARTSDIRECT", and all designs and logos associated therewith, in each case, together with all variations thereof; and all Trademarks, Business Names, Domain Names and Media Accounts consisting of, containing or incorporating any of the foregoing.

24

"Party" or "Parties" shall mean, individually or collectively, Buyer and Sellers.

"Patents" shall have the meaning set forth in the definition of Intellectual Property.

"Payoff Letters" shall mean, with respect to the Third Amended and Restated Credit Facility, the FILO Facility, the DIP Credit Agreement and the Junior DIP Term Loan, payoff letters in form and substance reasonably satisfactory to Buyer (subject only to delivery of funds, as arranged by Buyer, the credit bids pursuant to Section 363(k) of the Bankruptcy Code described in Section 3.1(b)(ii) or other satisfaction), that provide for the full and unconditional release of any and all Liens and other security interests on the Acquired Assets (subject, in each case, only to delivery of funds as arranged by Buyer). To the extent required to effect the release in the previous sentence, such Payoff Letter shall include UCC-3 termination statements and fully executed short-form termination and release agreements with respect to any and all security interests in intellectual property that, when filed or recorded, as the case may be, will be sufficient to release any and all such security interests in intellectual property, and the authorization for the Sellers to file or record such documents (unless already filed concurrently with delivery of such Payoff Letter).

"Pending Inventory" shall mean the Ordered Inventory and the Prepaid Inventory.

"Permits" shall mean, with respect to any Lease Premises or Owned Real Property, all franchises, grants, authorizations, licenses, permits, easements, variances, exceptions, consents, certificates (including all certificates of occupancy), building permits, fire, health and safety permits, site plan approvals and all other planning approvals, zoning variances, conditional or special use permits (including for firearms or other special occupancies or uses), general assembly or general use permits or other similar documentation, and all Environmental Permits, approvals, clearances and Orders of a Governmental Authority.

"Permitted Encumbrances" shall mean Permitted Post-Closing Encumbrances and Permitted Pre-Closing Encumbrances.

"Permitted Post-Closing Encumbrances" shall mean (i) with respect to real property leased or owned by Sellers, zoning restrictions, building codes and other land use laws regulating the use or occupancy of real property, (ii) non-monetary encumbrances to the extent that the Approval Order does not in fact release any such Encumbrance upon Closing, (iii) any encumbrances on the interest of any landlord or sublandlord or underlying fee interest of any Acquired Lease and (iv) as otherwise set forth on Schedule 1.1(i).

"Permitted Pre-Closing Encumbrances" shall mean (i) with respect to real property leased or owned by Sellers,  zoning restrictions, building codes and other land use laws regulating the use or occupancy of real property and defects of title, easements, rights of way, covenants and restrictions, and any other encumbrance, in each case, that do not, individually or in the aggregate, materially affect the value and do not materially interfere with the use and operation of the assets to which they relate, (ii) other non-monetary Encumbrances that do not, individually or in the aggregate, materially interfere with the use or market value of the assets to which they relate or which will be cleared by the Bankruptcy Court, (iii) any encumbrances on the interest of any landlord or sublandlord or underlying fee interest of any Acquired Lease, (iv) non-exclusive licenses to Intellectual Property granted to customers, suppliers and other service providers of

25

Sellers to the extent necessary for their respective use of the products and services of the Business or for the provision of services to Sellers and its Subsidiaries in connection therewith and entered into in the Ordinary Course of Business, (v) liens for Taxes that are not delinquent or which are being contested in good faith by appropriate proceedings and with respect to which adequate reserves are being maintained to the extent required in accordance with GAAP, (vi) mechanics', carriers', workmen's, repairmen's or other similar liens arising or incurred in the Ordinary Course of Business for amounts which are (x) not due and payable and (y) not, individually or in the aggregate, material to the Business or the Acquired Assets, (vii) such other imperfections in title, charges, easements, restrictions and encumbrances which do not secure an obligation to pay money or materially interfere with the use or market value of the assets to which they relate and (viii) as otherwise set forth on Schedule 1.1(j).

"Person" shall mean any individual, corporation (including any non-profit corporation), partnership, limited liability company, joint venture, estate, trust, association, organization or other entity or Governmental Authority.

"Petition Date" shall have the meaning set forth in the Recitals.

"Pharmacy Receivables" means Accounts (as defined under the UCC) arising from the sale of prescription drugs or other Inventory which can be dispensed only through an order of a licensed professional (including, for the avoidance of doubt, for pharmacy scripts).

"Plans and Permits" shall mean, with respect to any Lease Premises or Owned Real Property, all related reports (including engineering and environmental), surveys (boundary and topographical), plans, blueprints and other schematics, franchises, grants, authorizations, licenses, permits, easements, variances, exceptions, consents, certificates (including all certificates of occupancy), building permits, fire, health and safety permits, site plan approvals and all other planning approvals, zoning variances, conditional or special use permits (including for firearms or other special occupancies or uses), general assembly or general use permits or other similar documentation, and all Environmental Permits, approvals, clearances and Orders of a Governmental Authority, together with all architect, engineer, contractor, vendor and supplier warranties and guarantees with respect to any of the foregoing and/or the related Improvements.

"Potential Acquired Assets" shall mean all assets of Seller of any kind that either (i) constitute an Acquired Asset (other than Leases or Contracts) or (ii) constitute Potential Transferred Agreements.

"Potential Transferred Agreement" shall mean (i) all Leases and (ii) all other Contracts Related to the Business to which a Seller is a party and all IP Licenses, excluding, in each case, this Agreement, the Approval Order, the Existing Financing Arrangements and any other Transaction Documents, and any engagement letters or agreements between any Seller and any estate professionals retained by such Seller. For the avoidance of doubt, the foregoing Leases and Contracts are required to be listed on the list provided by the Seller to Buyer within five (5) Business Days following the date hereof in accordance with Section 2.7.

"Pre-Assignment Tax Period" shall mean, with respect to any Acquired Asset, Acquired Property or Assumed Liability, any taxable period (or portion thereof) ending on or before the date

26

FILED DATE: 5/19/2021 1:27 PM                    2020L012403

on which (i) the sale, transfer, assignment, conveyance or delivery of, or relating to, such Acquired Asset or Acquired Property to Buyer (or an applicable Assignee) or (ii) the assumption of such Assumed Liability by Buyer (or an applicable Assignee), in each case, is consummated, which date shall be the Closing Date or the applicable Designation Assignment Date pursuant to the terms of this Agreement.

"Prepaid Inventory" shall mean all Inventory that has been paid for by Sellers prior to the Closing Date but as to which Sellers have not taken title or delivery as of the Closing Date.

"Prepaid Inventory Shortfall Amount" shall mean an amount equal to $147,000,000 less the amount of the Prepaid Inventory as of the Closing Date; provided, that if the Warranty Receivables Shortfall Amount is a negative number, the Prepaid Inventory Shortfall Amount shall be reduced by the absolute value of the Warranty Receivables Shortfall Amount.

"Proceeding" shall mean any claim, as defined in the Bankruptcy Code, action, arbitration, audit, hearing, investigation, litigation, or suit (whether civil criminal, administrative or investigative) commenced, brought, conducted, or heard by or before, or otherwise involving, any Governmental Authority.

"Product Catalogs and Manuals" shall mean all product catalogs, manuals and user guides, in each case created or developed by or on behalf of any Seller.

"Property" shall mean any (i) each Lease Premises and (ii) each Owned Real Property.

"Property Taxes" shall have the meaning set forth in Section 2.1(i).

"Purchase Price" shall have the meaning set forth in Section 3.1.

"Real Estate Financing" shall have the meaning set forth in Section 7.4(a).

"Real Estate Financing Commitment Letter" shall have the meaning set forth in Section 7.4(a).

"Real Estate Loan 2020" shall mean the loan extended pursuant to that certain Third Amended and Restated Loan Agreement, dated June 4, 2018 (as at any time amended, restated, amended and restated, supplemented or otherwise modified), among Sears, Roebuck and Co,, Kmart Stores of Illinois LLC, Kmart of Washington LLC, Kmart Corporation, SHC Desert Springs, LLC, Innovel Solutions, Inc., Sears Holdings Management Corporation, MaxServ, Inc., Troy Coolidge No 13, LLC, Sears Development Co. and Big Beaver of Florida Development, LLC, collectively as borrowers, SHC, as guarantor, JPP, LLC as agent, and JPP, LLC, JPP II LLC and Cascade Investment, L.L.C., as lenders.

"Real Estate Loan 2020 Buyout Amount" shall have the meaning set forth in Section 3.1(c).

"Related" to any business, asset or Liability, shall mean owned or held primarily by, required primarily for, or used, intended for use, leased or licensed, primarily in connection with,

FILED DATE: 5/19/2021 1:27 PM   2020L012403

or (in the case of Liabilities) to the extent accrued, reserved or incurred in connection with, such business, asset or Liability.

"Representative" shall mean, with respect to a particular Person, any director, officer, employee, agent, consultant, advisor or other representative of such Person, including legal counsel, accountants and financial advisors.

"Represented Employees" shall have the meaning set forth in Section 9.7.

"Required Information" means (x) the financial information regarding the Sellers necessary and requested in writing from the Sellers prior to the date hereof for Buyer to prepare the pro forma financial statements referenced in paragraph 5(i) of Exhibit C of the ABL Commitment Letter and (y) the financial statements regarding the Sellers referenced in paragraph 5(ii) of Exhibit C of the ABL Commitment Letter; (*provided*, that Buyer acknowledges that as of the date of this Agreement Buyer has received the financial information and financial statements referred to in clauses (x) and (y) of this definition).

"Retained Books and Records" shall mean (i) any documents that Sellers are required by applicable Law to retain, provided that a copy of such Books and Records that is also related to the Business, the Acquired Assets or the Assumed Liabilities shall be included in Books and Records, and Sellers shall redact from any copies included in the Retained Books and Records any information to the extent related to the Business, the Acquired Assets or the Assumed Liabilities to the extent permitted by applicable Law, (ii) corporate seals, minute books, charter documents, corporate stock record books, original Tax Returns and such other books and records, in each case, as pertaining to the organization, or share capitalization of any of Sellers,  (iii) any documents, instruments, records and other written or electronic material in whatever form or media exclusively related to any of the Excluded Assets or Excluded Liabilities, (iv) copies of any Books and Records or information Related to any Excluded Assets or Excluded Liabilities, provided that a copy of such Books and Records that is also related to the Business, the Acquired Assets or the Assumed Liabilities shall be included in Books and Records, (v) confidential personnel and medical records pertaining to current and former directors, officers, employees, consultants and independent contractors of the Sellers solely to the extent that a transfer of such information would be in violation of applicable Laws and provided that Sellers shall reasonably cooperate with Buyer to enter into any Contracts that Buyer may reasonably request in order to render the provision of such information compliant with all applicable Laws, (vi) documents relating to proposals to acquire the Business or the Acquired Assets or any part thereof by any Person other than Buyer, (vii) all documents prepared in connection with this Agreement or the Transactions and (viii) all documents primarily relating to the Bankruptcy Case and copies of all documents relating to the Bankruptcy Case.

"Sears Marks" shall mean the name "SEARS" and any name consisting of, containing or incorporating "SEARS", and all designs and logos associated therewith, in each case, together with all variations thereof; and all Trademarks, Business Names, Domain Names and Media Accounts consisting of, containing or incorporating any of the foregoing.

"Sears Re" shall mean Sears Reinsurance Company Ltd., a Bermuda Class 3 insurer.

28

18-23538-shl Doc 96487 Filed 07/13/21 Entered 07/13/21 18:26:44 Exhibit A
Pg 230 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

"Second Lien Credit Agreement" shall mean that certain Second Lien Credit Agreement, dated as of September 1, 2016 by and among Sears Roebuck Acceptance Corp. and Kmart Corporation, as borrowers, SHC, JPP LLC, as administrative agent and collateral administrator, JPP LLC and JPP II LLC, as lenders, and the guarantors party thereto from time to time.

"Second Lien Line of Credit Facility" shall mean the line of credit facility granted pursuant to an amendment to the Second Lien Credit Agreement.

"Second Lien Term Loan" shall mean the term loan granted pursuant to the Second Lien Credit Agreement.

"Second Lien PIK Notes" shall mean those certain 6 5/8% secured convertible notes due October 2019, issued by SHC pursuant to that certain Indenture, dated March 20, 2018 (as at any time amended, restated, amended and restated or otherwise modified) by and among SHC, as issuer, Computershare Trust Company, N.A., as trustee, and California Builder Appliances, Inc., Florida Builder Appliances, Inc., Kmart Corporation, Kmart Holding Corporation, Kmart Operations LLC, Sears Operations LLC, Sears, Roebuck and Co., Sears Holdings Management Corporation, Sears Home Improvement Products, Inc., Sears Roebuck Acceptance Corp., A&E Factory Service, LLC, A&E Home Delivery, LLC, A&E Lawn & Garden, LLC, A&E Signature Service, LLC, KLC, Inc., Kmart of Michigan, Inc., Private Brands, Ltd., Sears Brands Management Corporation, Sears Protection Company, Sears Protection Company (Florida) L.L.C., Sears Roebuck de Puerto Rico, Inc., SOE, Inc., Starwest, LLC, Kmart.com LLC, Kmart of Washington LLC, Kmart Stores of Illinois LLC, Kmart Stores of Texas LLC, and Mygofer LLC, as guarantors.

"Securities Consideration" means debt or equity securities in Buyer, in an amount and form to be determined by Buyer in an amount and form reasonably acceptable to Buyer, including as to subordination.

"Security Deposit Documents" shall have the meaning set forth in Section 2.1(o).

"Security Deposits" shall have the meaning set forth in Section 2.1(o).

"Seller" and "Sellers" shall have the meanings set forth in the Preamble.

"Seller Instructions" shall have the meaning set forth in Section 2.8(c).

"Seller Retained Occupancy Agreement" shall mean that certain Seller Retained Occupancy Agreement in the form attached hereto as Exhibit F.

"Seller SEC Reports" shall have the meaning set forth in Section 6.12.

"Seller Products" shall mean any product manufactured, sold, offered for sale or otherwise distributed by a Seller within the scope of the Business.

"Seller Releasing Party" shall have the meaning set forth in Section 9.13.

29

"Seller Services" shall mean any service of the type provided by a Seller within the scope of the Business.

"Seritage Master Lease" shall mean the Master Lease by and among Seritage SRC Finance LLC, Seritage KMT Finance LLC, Kmart Operations, LLC, and Sears Operations, LLC, dated as of July 7, 2015, as modified by the Side Letter to Master Lease, by and among Seritage SRC Finance LLC, Seritage KMT Finance LLC, Kmart Operations, LLC, and Sears Operations, LLC, dated as of July 7, 2015.

"Service Providers" shall mean the current and former directors, officers, employees, consultants and independent contractors of Sellers and their Affiliates.

"ServiceLive Marks" shall mean the name "SERVICELIVE" and any name consisting of, containing or incorporating "SERVICELIVE", and all designs and logos associated therewith, in each case, together with all variations thereof; and all Trademarks, Business Names, Domain Names and Media Accounts consisting of, containing or incorporating any of the foregoing.

"Severance Reimbursement Obligations" shall have the meaning set forth in Section 9.7(i).

"SHC" shall have the meaning set forth in the Preamble.

"SHIP Closing" shall mean the Closing (as defined in the SHIP Purchase Agreement).

"SHIP Purchase Agreement" means that certain SHIP Asset Purchase Agreement entered into as of November 2, 2018 by and between SHC, a Delaware corporation, and Service.com, Inc., a Delaware corporation (as may be amended from time to time).

"SHIP Purchase Agreement Assets" means the Transferred Assets (as defined in the SHIP Purchase Agreement).

"SHIP Purchase Agreement Liabilities" means the Assumed Liabilities (as defined in the SHIP Purchase Agreement).

"Shop Your Way Marks" shall mean the name "SHOP YOUR WAY" and any name consisting of, containing or incorporating "SHOP YOUR WAY", and all designs and logos associated therewith, in each case, together with all variations thereof; and all Trademarks, Business Names, Domain Names and Media Accounts consisting of, containing or incorporating any of the foregoing.

"Short Form Assignments" shall mean (i) with respect to any Trademarks, Patents or Copyrights issued, filed or registered in the United States and included in the Acquired Intellectual Property, agreements substantially in the form of Schedule 1, Schedule 2 or Schedule 3 of the IP Assignment Agreement, (ii) with respect to any Domain Names included in the Acquired Intellectual Property, an agreement substantially in the form of Schedule 4 of the IP Assignment Agreement and (iii) with respect to any Intellectual Property included in the Acquired Intellectual Property that is issued, filed or registered in a jurisdiction outside of the United States, an assignment agreement suitable for recording in the relevant jurisdictions with terms and conditions substantially similar to those set forth in Schedule 1, Schedule 2 or Schedule 3 of IP Assignment

30

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM          2020L012403

Agreement, except for any different terms and conditions that would be necessary in a recordable assignment agreement for the respective local jurisdiction, in each case of clauses (i) thorough (iii) to be entered into by and between a Seller, on the one hand, and Buyer or its applicable Affiliates, on the other hand (clauses (i) through (iii) shall include each of the issued, registered or applied-for items of Intellectual Property included in the Acquired Intellectual Property).

"<u>Smart Sense Marks</u>" shall mean the name "SMART SENSE" and any name consisting of, containing or incorporating "SMART SENSE", and all designs and logos associated therewith, in each case, together with all variations thereof; and all Trademarks, Business Names, Domain Names and Media Accounts consisting of, containing or incorporating any of the foregoing.

"<u>Software</u>" shall have the meaning set forth in the definition of Intellectual Property.

"<u>Sparrow Properties</u>" shall mean the real properties set forth on <u>Schedule 1.1(q)</u>.

"<u>Specified Receivables</u>" shall mean the accounts receivable set forth on <u>Schedule 1.1(k)</u>.

"<u>Specified Receivables Shortfall Amount</u>" shall mean an amount equal to $255,200,000 less the amount of the Specified Receivables delivered to Buyer at Closing.

"<u>Sponsor</u>" shall have the meaning set forth in Section 7.4<u>(a)</u>.

"<u>Straddle Period</u>" shall have the meaning set forth in Section 9.2<u>(d)</u>.

"<u>Store Cash</u>" shall mean any cash of the Sellers in the registers or otherwise held at any Operating Lease Property or any Operating Owned Property, in an amount not to exceed $17,000,000.

"<u>Subsidiary</u>" shall mean, with respect to any Person, any other Person where a majority of its outstanding voting or equity interests are held, directly, or indirectly through one or more intermediaries, by such Person.

"<u>Tax</u>" or "<u>Taxes</u>" shall mean any federal, state, provincial, local, municipal, foreign or other taxes, duties, levies, governmental charges or assessments or deficiencies thereof, including all income, alternative, minimum, franchise, capital stock, net worth, capital gains, profits, intangibles, gross receipts, value added, sales, use, goods and services, excise, customs, transfer, recording, occupancy, employment, unemployment, social security, payroll, withholding, estimated or other taxes, duties, levies or other governmental charges or assessments or deficiencies thereof (including all interest and penalties thereon and additions thereto), in each case imposed by any Governmental Authority.

"<u>Tax Opinion</u>" shall mean an opinion at a "more likely than not" or higher standard as to the tax consequences of any of the transactions described in <u>Article II</u>.

"<u>Tax Proceeding</u>" shall mean any audit, examination, investigation or other administrative or judicial proceeding with or against any Governmental Authority or otherwise with respect to Taxes.

"Tax Reorganization" shall have the meaning set forth in Section 2.12.

"Tax Result" shall mean (i) the minimization of the net amount of Taxes imposed on, and (ii) the maximization of the aggregate amount of the Tax attributes described in section 108(b)(2) of the Code available for utilization by, in each case, (x) Buyer or the group of affiliated corporations (within the meaning of section 1504(a) of the Code) of which Buyer is the parent (or a member) or (y) Buyer or any combined group of which it is a member for state Tax purposes.

"Tax Return" shall mean any return, declaration, report, claim for refund, information return or other document (including any related or supporting estimates, elections, schedules, statements, or information) filed with or required to be filed with any Governmental Authority in connection with the determination, assessment or collection of any Tax or the administration of any Laws, regulations or administrative requirements relating to any Tax.

"Third Amended and Restated Credit Agreement" shall mean that certain Third Amended and Restated Credit Agreement dated as of July 21, 2015 (as at any time amended, restated, amended and restated, supplemented or otherwise modified), by and among Sears Roebuck Acceptance Corp. and Kmart Corporation, as borrowers, SHC, Bank of America, N.A., as administrative agent, co-collateral agent and swingline lender, Wells Fargo Bank, National Association as co-collateral agent, Wells Fargo Bank, National Association as syndication agent, PNC Bank, National Association, Siemens Financial Services, Inc., Ally Bank and Citigroup Global Markets Inc. as co-documentation agents, Merrill Lynch Pierce, Fenner & Smith Incorporated, Wells Fargo Bank, National Association, as joint lead arrangers, and Merrill Lynch, Pierce, Fenner & Smith Incorporated, Wells Fargo Bank, National Association, PNC Bank, National Association and Citigroup Global Markets Inc. as joint bookrunners pursuant to which Third Amended and Restated Credit Agreement Sears Roebuck Acceptance Corp. and Kmart Corporation entered into two senior secured term loan facilities as well as a $1.5 billion asset-based revolving credit facility with a syndicate of lenders.

"Title Company" shall have the meaning set forth in Section 9.9.

"Titled Property" shall have the meaning set forth in Section 9.9.

"Trademarks" shall have the meaning set forth in the definition of Intellectual Property.

"Transaction Documents" shall mean this Agreement and any other agreements, instruments or documents entered into pursuant to this Agreement.

"Transactions" shall mean the transactions contemplated to be consummated by this Agreement and the Transaction Documents, including the purchase and sale of the Designation Rights and the Acquired Assets and the assumption of the Assumed Liabilities provided for in this Agreement.

"Transfer Taxes" shall have the meaning set forth in Section 9.3(a).

"Transferred Employees" shall have the meaning set forth in Section 9.7(a).

FILED DATE: 5/19/2021 1:27 PM                                                   2020L012403

"UCC" shall mean the Uniform Commercial Code as from time to time in effect in the State of Delaware.

"Wally Marks" shall mean the name "WALLY" and any name consisting of, containing or incorporating "WALLY", and all designs and logos associated therewith, in each case, together with all variations thereof; and all Trademarks, Business Names, Domain Names and Media Accounts consisting of, containing or incorporating any of the foregoing.

"WARN Act" shall mean the Worker Adjustment and Retraining Notification Act of 1988, as amended, any similar Law (including any similar local, state or non-U.S. notice requirement relating to the termination of employees), and the rules and regulations thereunder.

"Warranty Receivables" shall mean those certain accounts receivable set forth on Schedule 1.1(l).

"Warranty Receivables Shortfall Amount" shall mean an amount equal to $53,600,000 less the amount of the Warranty Receivables delivered to Buyer at Closing; provided, that if the Prepaid Inventory Shortfall Amount is a negative number, the Warranty Receivables Shortfall Amount shall be reduced by the absolute value of the Prepaid Inventory Shortfall Amount.

"Weatherbeater Marks" shall mean the name "WEATHERBEATER" and any name consisting of, containing or incorporating "WEATHERBEATER", and all designs and logos associated therewith, in each case, together with all variations thereof; and all Trademarks, Business Names, Domain Names and Media Accounts consisting of, containing or incorporating any of the foregoing.

Section 1.2    Other Definitions and Interpretive Matters.

(a)    Unless otherwise indicated to the contrary in this Agreement by the context or use thereof:

(i)    When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded.  If the last day of such period is a day other than a Business Day, the period in question shall end on the next succeeding Business Day.

(ii)    Any reference in this Agreement to "dollars" or "$" means U.S. dollars.

(iii)    Unless the context otherwise requires, all capitalized terms used in the Exhibits and Schedules shall have the respective meanings assigned in this Agreement.  No reference to or disclosure of any item or other matter in the Exhibits and Schedules shall be construed as an admission or indication that such item or other matter is material or that such item or other matter is required to be referred to or disclosed in the Exhibits and Schedules.  No disclosure in the Exhibits and Schedules relating to any possible breach or violation of any Contract or Law shall be construed as an admission or indication that any such breach or violation exists or has actually occurred.  Solely to the extent any Schedule

33

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 35 of 110

FILED DATE: 5/19/2021 1:27 PM      2020L012403

is related to any representation or warranty contained in this Agreement, any information, item or other disclosure set forth in any Schedule shall be deemed to have been set forth in all other applicable Schedules relating to representations or warranties contained in this Agreement if the relevance of such disclosure to such other Schedule is reasonably apparent on the face of such disclosure.  All Exhibits and Schedules attached or annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein.

(iv)    Any reference in this Agreement to gender includes all genders, and words importing the singular number also include the plural and vice versa.

(v)    The provision of a table of contents, the division of this Agreement into Articles, Sections and other subdivisions and the insertion of headings are for convenience of reference only and shall not affect or be utilized in the construction or interpretation of this Agreement.  All references in this Agreement to any "Section," "Article," "Schedule," or "Exhibit" are to the corresponding Section, Article, Schedule, or Exhibit of or to this Agreement unless otherwise specified.

(vi)    Words such as "herein," "hereof" and "hereunder" refer to this Agreement as a whole and not merely to a subdivision in which such words appear, unless the context otherwise requires.

(vii)    The word "extent" and the phrase "to the extent" when used in this Agreement shall mean the degree to which a subject or other thing extends, and such word or phrase shall not merely mean "if."

(viii)    The word "including" or any variation thereof means "including, without limitation," and shall not be construed to limit any general statement that it follows to the specific or similar items or matters immediately following it.

(ix)    References to "any" shall mean "any and all," and "or" is used in the inclusive sense of "and/or."

(b)    <u>No Strict Construction</u>.  Buyer, on the one hand, and Sellers, on the other hand, participated jointly in the negotiation and drafting of this Agreement, and, in the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as jointly drafted by Buyer, on the one hand, and Sellers, on the other hand, and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any provision of this Agreement.  Without limitation as to the foregoing, no rule of strict construction construing ambiguities against the draftsperson shall be applied against any Person with respect to this Agreement.

34

FILED DATE: 5/19/2021 1:27 PM    2020L012403

## ARTICLE II

## PURCHASE AND SALE

Section 2.1    Purchase and Sale of the Acquired Assets.    Upon the terms and subject to the conditions of this Agreement, and subject to Section 2.6 and Article V with respect to the Designation Rights and Designatable Leases, and Section 2.7(d), Section 2.9 and Article V with respect to Additional Contracts, on the Closing Date, Sellers shall sell, transfer, assign, convey and deliver, or cause to be sold, transferred, assigned, conveyed and delivered, to Buyer or the applicable Assignee, and Buyer or such applicable Assignee shall purchase, all right, title and interest of Sellers, in, to or under all assets, properties and rights Related to the Business other than the Excluded Assets, and the following assets, properties and rights (collectively, the "Acquired Assets") free and clear of any and all Encumbrances of any kind, nature or description and any Claims, in each case other than Permitted Post-Closing Encumbrances and those rights subject to Section 365(n) of the Bankruptcy Code to the extent applicable:

(a)    the Assigned Agreements and the Designation Rights;

(b)    all Acquired Lease Rights;

(c)    all Owned Real Property;

(d)    all Acquired Inventory, all Acquired Receivables, all Acquired Equipment and all Acquired Improvements;

(e)    all Intellectual Property owned (whether solely or jointly with others) by Sellers, including (i) the Sears Marks, the Kmart Marks, the Shop Your Way Marks, the ServiceLive Marks, the PartsDirect Marks, the Wally Marks, the Smart Sense Marks, the Weatherbeater Marks, the Kenmore Marks registered or applied for outside of the United States and the DieHard Marks registered or applied for outside of the United States, (ii) the Trademarks, listed on Schedule 2.1(a)(i) attached hereto, (iii) the Business Names listed on Schedule 2.1(a)(ii) attached hereto, (iv) the Patents listed on Schedule 2.1(a)(iii) attached hereto, (v) the Copyrights listed on Schedule 2.1(a)(iv) attached hereto, (vi) the Domain Names listed on Schedule 2.1(a)(v) attached hereto, (vii) the Media Accounts listed on Schedule 2.1(a)(vi) attached hereto and (viii) all Intellectual Property that constitutes "Collateral" as defined in the Intellectual Property Security Agreement (collectively, the "Acquired Intellectual Property"), in each case of the foregoing together with the rights (A) to sue and recover damages and obtain equitable relief for past, present and future infringement, misappropriation, dilution or other violation thereof, (B) to collect past and future royalties and other payments thereunder, (C) to claim priority thereon under any Law, (D) to prosecute, register, maintain and defend such Intellectual Property before any public or private agency, office or registrar and (E) to fully and entirely stand in the place of Sellers, as applicable, in all matters related thereto; for the avoidance of doubt, Buyer and Sellers hereby acknowledge and agree that as of the Closing Date, Buyer shall be the successor in interest to each of the businesses of Sellers to which the Trademarks included in the Acquired Intellectual Property pertain, and such businesses shall be ongoing and existing;

18-23538-shl   Doc 9648-7   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 285 of 1450

(f)     all goodwill and other intangible assets associated with or connected to the Business or symbolized by any of the Acquired Intellectual Property and all goodwill of the businesses in which the Trademarks and Business Names included in the Acquired Intellectual Property are used and all goodwill connected with the use of and symbolized by the foregoing;

(g)     (i) all data owned or controlled (meaning any data Sellers have the ability to transfer in compliance with applicable Law) by any of the Sellers and contained in Sellers' IT Systems, data centers or databases stored by third parties on behalf of Sellers or otherwise collected, accessed, acquired, stored, protected, used, re-used or otherwise processed by or on behalf of a Seller to the extent the sale or transfer of such data is not in contravention with applicable Law or any of any Seller's applicable privacy policies or contractual restrictions, (ii) Customer Data to the extent the sale or transfer of such Customer Data is not in contravention with applicable Law or any of any Seller's applicable privacy policies or contractual restrictions and (iii) all other data that constitutes "Collateral" as defined in the Intellectual Property Security Agreement, to the extent the sale or transfer of such data is not in contravention with applicable Law or any of any Seller's applicable privacy policies or contractual restrictions (the data described in this clause (iii), together with the data described in clauses (i) and (ii), the "Acquired Data");

(h)     any Claims, causes of action, claims, rights of recovery or rights of set-off arising under any IP Licenses included in the Assigned Agreements on or after the Closing Date, and the right to collect past and future royalties and other payments, as well as prepaid expenses of Sellers thereunder;

(i)     any and all real (including real estate taxes, assessments and related governmental impositions both general and special imposed under the laws of any one or more jurisdictions in which the applicable Lease Premises is located against the land, buildings and other improvements), personal and intangible property Taxes ("Property Taxes") that are prepaid with respect to such Acquired Lease or any other related Acquired Assets; provided, that such Property Taxes are Assumed Liabilities or Liabilities for which Buyer is otherwise responsible hereunder;

(j)     any interest in or right to any refund, rebate or credit of Taxes that are Assumed Liabilities or for which Buyer is otherwise responsible hereunder including (for the avoidance of doubt) any such refund, rebate or credit of a Tax that becomes payable or available to Sellers in the future in respect of a Tax previously paid or otherwise incurred by Buyer pursuant to Section 3.5;

(k)     all rights (but not obligations) of Sellers under any non-disclosure or confidentiality, non-compete or non-solicitation agreements, to the extent any such agreement relates to the Business or any Acquired Asset;

(l)     all assignable Assigned Plans and Permits that are Related to the Business;

(m)     any and all Books and Records (which, with respect to any electronic forms thereof, may be copies) and any and all Intellectual Property Related Documentation;

(n)     all Labeling and Marketing Materials and Product Catalogs and Manuals owned by Sellers;

36

FILED DATE: 5/19/2021 1:27 PM   2020L012403

(o)　any and all rights of Sellers in and to any restricted cash, security deposits, letters of credit, escrow deposits and cash collateral, including cash collateral given to obtain or maintain letters of credit and cash drawn or paid on letters of credit, utility deposits, performance, payment or surety bonds, credits, allowance, prepaid rent or other assets, charges, setoffs, prepaid expenses, other prepaid items and other security (collectively, "Security Deposits"), together with all contracts, agreements or documents evidencing or related to the same (collectively, "Security Deposit Documents"), in each case to the extent related to any Acquired Asset;

(p)　any and all Claims (other than returns of merchandise for warranty claims (except, for the avoidance of doubt, to the extent comprising Assumed Liabilities) and excluding any Claims Related to an Excluded Asset or Excluded Liability) of Sellers as of the Closing to the extent related to the Business or any Acquired Asset;

(q)　subject to Section 5.1(a)(v), Section 5.1(a)(vi) and Section 9.8(c), any and all insurance proceeds, warranty proceeds, condemnation awards or other compensation in respect of loss or damage to the Business or any Acquired Asset (and any right or claim of Sellers to any such proceeds, awards or other compensation), in each case, to the extent relating to a casualty occurring prior to, on or after the date hereof, and whether received prior to, on or after Closing Date, but less any proceeds in respect of the Acquired Assets set forth on Schedule 2.1(q) in an aggregate amount not to exceed $13,000,000.

(r)　subject to Section 2.8(e), the KCD Notes from Sears Re as Seller;

(s)　all equity interests of SRC O.P. LLC owned by SRC Sparrow 2 LLC as Seller; provided, that if either (i) SRC Sparrow 2 LLC has filed a petition for relief commencing a case under chapter 11 of the Bankruptcy Code for the purpose of selling such equity interests in SRC O.P. LLC, and Buyer or its Affiliate has purchased such equity interests pursuant to a chapter 11 plan of reorganization or a sale of assets pursuant to section 363(m) of the Bankruptcy Code or (ii) Buyer shall have acquired the Sparrow Properties pursuant to foreclosure, then Buyer shall be deemed to have purchased the equity interests in SRC O.P. LLC described in this subsection (s);

(t)　all Actions and other rights, rebates, refunds, audits, rights of recovery, rights of setoff, rights of recoupment, rights of reimbursement, rights of indemnity or contribution and other similar rights (known and unknown, matured and unmatured, accrued or contingent, regardless of whether such rights are currently exercisable) against any Person, including all warranties, representations, guarantees, indemnities and other contractual claims (express, implied or otherwise), in each case to the extent related to the Business or any Acquired Asset (excluding for the avoidance of doubt, any Claims arising under any Transaction Document), including, subject to the terms and conditions of the SHIP Purchase Agreement and applicable Law, if the SHIP Closing shall have occurred prior to the Closing Date, the indemnities set forth in Section 6.08(b) and Section 6.08(e) of the SHIP Purchase Agreement;

(u)　all Contracts Related to the Business (i) that include a manufacturer's warranty relating to Seller Products or Seller Services and (ii) relating to repair services provided by the Business in relation to Seller Products or Seller Services;

(v)　the Buyer Party Release;

37

(w)    all assets, properties and rights that constitute "Collateral" as defined in the Intellectual Property Security Agreement, other than data which is the subject of Section 2.1(g); and Intellectual Property which is the subject of Section 2.1(e);

(x)    the right to receive the Pending Inventory;

(y)    the Credit Card Claims;

(z)    either (i) the SHIP Purchase Agreement Assets, if the SHIP Closing shall not have occurred prior to the Closing Date (in which circumstance, for the avoidance of doubt, any Owned Real Property (as defined in the SHIP Purchase Agreement) shall be deemed Operating Owned Property, and all Leased Real Property (as defined in the SHIP Purchase Agreement) shall be deemed Operating Leased Property), or (ii) any and all proceeds received by Sellers pursuant to the SHIP Purchase Agreement, if the SHIP Closing shall have occurred prior to the Closing Date;

(aa)    the Store Cash;

(bb)    to the extent permitted by Law, all licenses or permits granted by any Governmental Authority held by Sellers that are necessary for the provision or assumption of the PA Liabilities; and

(cc)    any proceeds from the sale or other disposition of the collateral pledged to secure the applicable debt obligations with respect to the credit bids set forth in Section 3.1(b) to which the holders of Claims secured by such collateral has attached.

Section 2.2    Excluded Assets.    Nothing contained herein shall be deemed to sell, transfer, assign, convey or deliver, or cause to be sold, transferred, assigned, conveyed or delivered, any right, title or interest of Sellers in, to or under the Excluded Assets.  "Excluded Assets" shall mean:

(a)    any Contract that is not an Assigned Agreement;

(b)    any lease, sublease or similar agreement that is not a Lease and any Designatable Lease that is not designated for assumption by the Seller and assignment to Buyer pursuant to the terms of this Agreement;

(c)    any real property interest of any kind or nature that is not Related to Owned Real Property or the Assigned Leases;

(d)    all Excluded Inventory, all Excluded Equipment and all Excluded Improvements;

(e)    this Agreement and the other Transaction Documents;

(f)    except as otherwise expressly included as Acquired Assets, all cash and cash equivalents (including any cash of the Sellers in the registers or otherwise held at any Operating Lease Property or any Operating Owned Property in excess of Store Cash), including checks, commercial paper, treasury bills, certificates of deposit and other bank deposits;

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-shl   Doc 9507-1   Filed 02/08/21   Entered 02/08/21 16:14:32   Exhibit A
Pg 288 of 1450

FILED DATE: 5/19/2021 1:27 PM          2020L012403

(g)     the Retained Books and Records;

(h)     any interest in or right to any refund, rebate or credit of Excluded Asset-Reorganization Taxes (including, for the avoidance of doubt, with respect to any Taxes for which Sellers remain liable); provided, however, that if Buyer makes the election under Section 2.12(b) to treat all the transactions described in this Article II as Designated Sale Transactions (resulting in no transfer of Sellers' Tax attributes to Buyer), then this Section 2.2(h) shall also include any interest in or right to any refund, rebate or credit of Excluded Asset-Sale Taxes;

(i)     all Claims and Proceedings of Sellers (other than Claims described in Section 2.1(p));

(j)     all Avoidance Actions;

(k)     the Excluded IT;

(l)     except as otherwise expressly included as Acquired Assets, all shares of capital stock or other equity interests of any Seller or Subsidiary of the Seller or securities convertible into or exchangeable or exercisable for shares of capital stock or other equity interests of any Seller, Subsidiary of the Seller or any other Person;

(m)     all Employee Plans, including any assets, trust agreements or other funding Contracts related thereto;

(n)     all bank accounts;

(o)     any accounts receivable other than the Acquired Receivables;

(p)     if the SHIP Purchase Agreement shall have terminated prior to the Closing Date, all rights of any Seller to (i) the Deposit Escrow Amount (as defined in the SHIP Purchase Agreement) or (ii) any other claims against Buyer (as defined in the SHIP Purchase Agreement); and

(q)     the SHIP Asset Purchase Agreement Assets (if the SHIP Closing shall have occurred prior to the Closing Date).

Section 2.3     Assumption of Liabilities.  Upon the terms and subject to the conditions of this Agreement, on the Closing Date Buyer, or the applicable Assignee, shall assume, effective as of the Closing, and shall timely perform and discharge in accordance with their respective terms, the following Liabilities (collectively, the "Assumed Liabilities"):

(a)     all Liabilities of the Seller or any of its Subsidiaries arising out of the ownership of the Acquired Assets or operation of the Business or the Acquired Assets on or after the Closing Date that are Related to any Acquired Asset;

(b)     all Liabilities arising on or after the Closing Date or Designation Assignment Date, as applicable, relating to the payment or performance of obligations with respect to the Assigned Agreements;

39

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 16:44:31    Exhibit A
Pg 289 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

(c)    all Liabilities arising on or after the Closing Date from or related to any Claim, Action, arbitration, audit, hearing, investigation, suit, litigation or other proceeding (whether civil, criminal, administrative, investigative, or informal and whether pending or threatened or having any other status) arising out of the Assumed Liabilities, the Acquired Assets or the operation of the Business on or after the Closing Date (but not prior to the Closing Date) or relating to facts, actions, omissions, circumstances or conditions existing, occurring or accruing on or after the Closing Date (but not prior to the Closing Date) that are Related to the Acquired Assets or the Assumed Liabilities;

(d)    Buyer's obligation to pay the Buyer Occupancy Costs;

(e)    subject to Section 2.8(e), all Liabilities for warranties and protection agreements or other services contracts (other than warranties relating to Intellectual Property) for the goods and services of Sellers sold or performed prior to the Closing, including any Liabilities owed by Sears Re to any Seller in respect of reinsurance of such warranties and protection agreements (the "PA Liabilities");

(f)    all Assumed Customer Credits;

(g)    all Cure Costs solely with respect to the Assigned Agreements;

(h)    all Excluded Asset-Sale Taxes (except if otherwise provided in Section 2.4(i));

(i)    all Liabilities resulting from actions or inactions taken by the Sellers or any Affiliate of Sellers in compliance with Section 9.2;

(j)    all Liabilities with respect to the Transferred Employees (i) to the extent arising as a result of an event, action or omission that occurs on or following the Closing or (ii) expressly assumed by Buyer and its Subsidiaries pursuant to Section 9.7;

(k)    the Severance Reimbursement Obligations, Assumed 503(b)(9) Liabilities, Other Payables and all payment obligations with respect to the Ordered Inventory; provided, that:

(i)    Buyer shall not be required to make any payments with respect to the Other Payables until the later of (1) the Closing Date and (2) the date that the applicable obligation thereunder becomes due in the Ordinary Course of Business;

(ii)    Buyer shall not be required to make any payments with respect to Assumed 503(b)(9) Liabilities until the earlier of (1) the date that is 120 days following the Closing Date and (2) the date on which a chapter 11 plan of reorganization is confirmed by the Bankruptcy Court with respect to the Debtors;

(iii)    Buyer's obligations with respect to the Severance Reimbursement Obligations shall not exceed $43,000,000 in the aggregate, and notwithstanding Section 2.3(k)(i), the timing of such reimbursement shall be made in accordance with Section 9.7(i);

40

(iv)    Buyer's obligations with respect to the Assumed 503(b)(9) Claims shall not exceed $139,000,000 in the aggregate;

(v)    Buyer's obligations with respect to the Other Payables shall not exceed $166,000,000 in the aggregate;

(vi)    In the event that the Aggregate DIP Shortfall Amount is a positive number, Buyer's obligations to assume the Liabilities described in this clause (k) shall be reduced dollar for dollar by the Aggregate DIP Shortfall Amount in the following order, until the aggregate amount of all such reductions is equal to the Aggregate DIP Shortfall Amount: *first*, the Severance Reimbursement Obligations, *second*, the Other Payables and *third*, the Assumed 503(b)(9) Claims.  The allocation of any reduction determined in accordance with the previous sentence of (A) the amount of the Assumed 503(b)(9) Claims among any specific Assumed 503(b)(9) Claims and (B) the amount of the Other Payables among any specific Other Payables shall be determined by Buyer in its sole discretion;

(vii)    In the event that the Specified Receivables Shortfall Amount is a positive number, Buyer's obligations to assume the Severance Reimbursement Obligations and the Assumed 503(b)(9) Claims shall be reduced dollar for dollar by the Specified Receivables Shortfall Amount in the following order, until the aggregate amount of all such reductions is equal to the Specified Receivables Shortfall Amount: *first*, the Severance Reimbursement Obligations and *second*, the Assumed 503(b)(9) Claims.  The allocation of any reduction determined in accordance with the previous sentence of the amount of the Assumed 503(b)(9) Claims among any specific Assumed 503(b)(9) Claims shall be determined by Buyer in its sole discretion;

(viii)    In the event that the Warranty Receivables Shortfall Amount is a positive number, Buyer's obligations to assume the Severance Reimbursement Obligations and the Assumed 503(b)(9) Claims shall be reduced dollar for dollar by the Warranty Receivables Shortfall Amount in the following order, until the aggregate amount of all such reductions is equal to the Warranty Receivables Shortfall Amount: *first*, the Severance Reimbursement Obligations and *second*, the Assumed 503(b)(9) Claims.  The allocation of any reduction determined in accordance with the previous sentence of the amount of the Assumed 503(b)(9) Claims among any specific Assumed 503(b)(9) Claims shall be determined by Buyer in its sole discretion;

(ix)    In the event that the Prepaid Inventory Shortfall Amount is a positive number, Buyer's obligations to assume the Severance Reimbursement Obligations and the Assumed 503(b)(9) Claims shall be reduced dollar for dollar by the Prepaid Inventory Shortfall Amount in the following order, until the aggregate amount of all such reductions is equal to the Prepaid Inventory Shortfall Amount: *first*, the Severance Reimbursement Obligations and *second*, the Assumed 503(b)(9) Claims.  The allocation of any reduction determined in accordance with the previous sentence of the amount of the Assumed 503(b)(9) Claims among any specific Assumed 503(b)(9) Claims shall be determined by Buyer in its sole discretion; and

FILED DATE: 5/19/2021 1:27 PM    2020L012403

41

18-23538-shl   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:34   Exhibit A
Pg 291 of 1450

(x)     Notwithstanding anything to the contrary herein or in the Approval Order, and for the avoidance of doubt, the Buyer's agreement to pay Assumed 503(b)(9) Claims, Specified Payables, or any other administrative or priority claim of the Sellers pursuant to the terms hereof is a general unsecured contractual obligation of the Buyer owed solely to the Sellers.

(l)     the Assumed Property Tax Liabilities;

(m)     the SHIP Purchase Agreement Liabilities (if the SHIP Closing shall not have occurred prior to the Closing Date);

(n)     all Liabilities relating to amounts required to be paid by Buyer under the Transaction Documents; and

(o)     all Liabilities arising prior to, at or after the Closing Date under or pursuant to any Environmental Law relating to the presence of Hazardous Substances at, on, in, under or migrating to or from any Acquired Asset.

Section 2.4     Excluded Liabilities.     None of Buyer, any Affiliate of Buyer or any Assignee shall assume, be deemed to assume or become obligated hereunder in any way to pay or perform (whether as a successor to any Seller or otherwise) any Liabilities of any Sellers or any of their respective Affiliates of any kind or nature, known, unknown, contingent or otherwise, whether direct or indirect, matured or unmatured, other than the Assumed Liabilities, (the foregoing including the following, the "Excluded Liabilities") which shall include the following Liabilities:

(a)     all Liabilities of the Seller or any of its Subsidiaries arising out of the ownership of the Acquired Assets or operation of the Business or the Acquired Assets prior to the Closing Date other than Cure Costs, Other Payables, the Assumed 503(b)(9) Claims, Severance Reimbursement Obligations, and Ordered Inventory;

(b)     all Liabilities relating to the payment or performance of obligations arising solely out of facts or circumstances in existence prior to the Closing Date or Designation Assignment Date, as applicable, with respect to the Assigned Agreements;

(c)     all Liabilities arising from or related to any claim, Action, arbitration, audit, hearing, investigation, suit, litigation or other proceeding (whether civil, criminal, administrative, investigative, or informal and whether pending or threatened or having any other status) arising out of the Assumed Liabilities, the Acquired Assets or the operation of the Business prior to the Closing Date or relating to facts, actions, omissions, circumstances or conditions existing, occurring or accruing prior to the Closing Date against any Seller or its Affiliates;

(d)     all Liabilities to the extent arising prior to the Closing Date or arising from or related to the operation of a Seller's business or any of Sellers' products or services, including any Liability relating to (i) design or manufacturing defects (whenever discovered) and (ii) warranties, product liability, safety or other Liability, in the cases of clauses (i) and (ii), relating to any product sold or manufactured by any Seller or any of its Affiliates;

42

FILED DATE: 5/19/2021 1:27 PM   2020L012403

(e)      all Liabilities in respect of any indebtedness of any Seller or guaranty obligations relating to any such Indebtedness of any Seller;

(f)      all Liabilities (i) under the Employee Plans, including all Liabilities in respect of (A) any compensation earned by any Business Employee or otherwise accrued or payable to or with respect to any Business Employee prior to the Closing, unless expressly assumed by Buyer pursuant to Section 9.7, and (B) any Taxes related thereto, (ii) relating to (A) all current and former employees of Seller and Service Providers and its Subsidiaries (including the Business Employees) to the extent arising as a result of an event, action or omission that occurs prior to the Closing and (B) all current and former employees of Seller and Service Providers and its Subsidiaries who do not become Transferred Employees (except to the extent subject to the Severance Reimbursement Obligations) and (iii) those Liabilities relating to the Transferred Employees expressly retained by Seller pursuant to Section 9.7;

(g)      except as otherwise provided for in Section 2.3(o), all Liabilities of the Seller or any of its Subsidiaries relating to (i) fines or penalties arising from noncompliance with Environmental Laws occurring prior to the Closing Date, including (ii) Claims for personal injury or property damage related to exposure occurring prior to the Closing Date to Hazardous Substances present at, on, in, under or migrating to or from any Acquired Asset or (iii) the offsite disposal of Hazardous Substances occurring prior to the Closing Date;

(h)      any Excluded Asset-Reorganization Taxes;

(i)      if (A) Buyer makes the election under Section 2.12(b) to treat all the transactions described in this Article II as Designated Sale Transactions (resulting in no transfer of Sellers' Tax attributes to Buyer), (B) such transactions do not result in a transfer of substantially all of Sellers' Tax attributes to Buyer solely as a result of Sellers' failure to make good faith efforts to comply with Section 9.2(a), or (C) the Internal Revenue Service successfully asserts (for which assertion there is a final determination), that none of Sellers' Tax attributes transferred to Buyer, Excluded Asset-Sale Taxes (but in the case of clause (C) in respect of a Tax arising in any period prior to any such final determination, only to the extent Sellers actually obtain a refund or other current economic Tax reduction in respect of the applicable Taxes); provided, however, that if Buyer makes the election under Section 2.12(b) to treat all the transactions described in this Article II as Designated Sale Transactions and the Internal Revenue Service successfully asserts that a transfer of any such Tax attributes to Buyer shall have occurred notwithstanding such Buyer election, then Excluded Asset-Sale Taxes shall not be an Excluded Liability to the extent any such tax would have been reduced or eliminated had the Sellers' Tax attributes not transferred to Buyer (taking into account Tax attributes Sellers would have had if all transactions described in Article II were Designated Sale Transactions and respected as such by the Internal Revenue Service);

(j)      all Liabilities with respect to any brokerage or finders' fees or agents' commissions or other similar payment in connection with the Transactions incurred by any Seller;

(k)      all Liabilities under this Agreement or any documents or instruments executed and delivered by Seller and its Affiliates pursuant to this Agreement;

43

(l)     all Liabilities relating to or arising, whether before, on or after the Closing Date or, subject to <u>Article V</u>, any applicable Designation Assignment Date, out of, or in connection with, the Excluded Assets;

(m)    all Liabilities in respect of any gift cards, gift certificates, merchandise credits, return credits, customer membership or customer loyalty discount programs, coupons, groupons or other similar credits or programs issued by, on behalf of or in relation to Sellers other than the Assumed Customer Credits;

(n)     all Liabilities related to or arising from, whether before, on or after the Closing Date, use by Sellers of any of the Trademarks or Business Names included in the Acquired Intellectual Property pursuant to <u>Section 9.10</u>;

(o)     except as otherwise provided in this Agreement, all Liabilities for the rejection of any Contract to which a Seller is a party;

(p)     the SHIP Purchase Agreement Liabilities (if the SHIP Closing shall have occurred prior to the Closing Date);

(q)     other than the liabilities assumed in accordance with Section 2.3(g) (Cure Costs) and 2.3(k) (Severance Reimbursement Obligations, Assumed 503(b)(9) Liabilities and Other Payables and the payment obligations with respect to the Ordered Inventory), accounts payable incurred in the Ordinary Course of Business existing on the Closing Date (including (i) invoiced amounts payable and (ii) accrued but uninvoiced accounts payable); and

(r)     the claims underlying the mechanics' liens identified in Section 2 of <u>Schedule 6.5</u>.

For the avoidance of doubt, all Taxes of any Seller shall be Assumed Liabilities, regardless of the time and circumstances giving rise to any such Taxes, except for any Tax expressly excluded under <u>Section 2.2(h)</u> or <u>Section 2.4(i)</u>.

Section 2.5    <u>Year-End Adjustments</u>.  For the avoidance of doubt, notwithstanding anything to the contrary set forth in this Agreement, neither Buyer nor any Assignee shall have any obligations in respect of any portion of any year-end (or other) adjustment (including for royalties, rents, utilities, Taxes, insurance, fees, any common area or other maintenance charges, promotional funds and percentage rent) arising under any of the Acquired Leases or any other Assigned Agreements for the calendar year in which the  applicable Lease Assignment occurs that is attributable to (x) the portion of such calendar year occurring prior to such Lease Assignment or (y)  any previous calendar year, and Sellers shall fully indemnify and hold harmless Buyer and the applicable Assignee with respect thereto.  Buyer shall be solely responsible for any of the matters described in the preceding sentence for the portion of the calendar year in which the Closing Date occurs following each applicable Lease Assignment and all subsequent calendar years, and Buyer shall fully indemnify and hold Sellers harmless with respect thereto. Following the applicable Lease Assignment Date, except as expressly set forth in this Agreement or the Approval Order, Sellers shall have no further liabilities or obligations with respect to each of the Acquired Leases and the other Assigned Agreements (including obligations related to royalties rents, utilities, Taxes, insurance and common area maintenance, regardless of when due and payable), and Sellers

44

FILED DATE: 5/19/2021 1:27 PM    2020L012403

shall be released from all such obligations and Buyer shall indemnify and hold harmless Sellers with respect thereto.

Section 2.6    Purchase and Sale of Designation Rights.  Upon the terms and subject to the conditions of this Agreement and the Approval Order, on the Closing Date, Sellers shall sell, transfer, assign and convey, or cause to be sold, transferred, assigned and conveyed, to Buyer, and Buyer shall purchase from Sellers, the Designation Rights.  For the avoidance of doubt, the sale, transfer, assignment and conveyance of the Designation Rights provided for herein on the Closing Date shall not effectuate a sale, transfer, assignment or conveyance of any Designatable Lease to Buyer or any other Assignee, which shall only be effectuated on a Designation Assignment Date; provided, that, notwithstanding the foregoing, Buyer shall be responsible for all Expenses arising under or related to any Designatable Lease from and after the Closing Date until, if applicable, the rejection of such Designatable Lease in accordance with this Agreement.  Subject to the terms and conditions of this Agreement, the Approval Order and the requirements of section 365(b) of the Bankruptcy Code, Buyer shall have the right to designate itself or, with the consent of Seller, any other Person as the Assignee to which a Designatable Lease is to be assumed and assigned.  The Designation Rights shall terminate upon the expiration of the Designation Rights Period.

Section 2.7    Assignments.

(a)    Potential Transferred Agreements.

(i)    Schedule 2.7(a) contains a list of all Potential Transferred Agreements (including, to the extent in the possession or control of any Seller, the underlying agreements).  Subject to section 365 of the Bankruptcy Code, Buyer may elect to have the Potential Transferred Agreements assigned to Buyer or assumed by Seller and assigned to Buyer on the applicable Assumption Effective Date (which shall be deemed to be "Assigned Agreements" in accordance with the definition thereof). At Buyer's reasonable request, Seller shall make reasonably available to Buyer the appropriate employees of Seller necessary to discuss the Potential Transferred Agreements.

(ii)    To the extent a Potential Transferred Agreement is an executory contract or lease, as soon as practicable after the date hereof, Seller shall file a notice of assignment and assumption (an "Agreement Assignment Notice") with the Bankruptcy Court and serve such notice via electronic or first class mail on each counterparty to a Potential Transferred Agreement that is an executory contract or lease, consistent with the terms of the Bidding Procedures Order.  The Agreement Assignment Notice shall identify all Potential Transferred Agreements that are executory contracts or leases and related to the Acquired Assets that Sellers believe may be assigned or assumed and assigned in connection with the sale of the Acquired Assets and set forth a good faith estimate of the amount of the Cure Costs applicable to each such Contract (and if no Cure Cost is estimated to be applicable with respect to any particular Contract, the amount of such Cure Cost designated for such Contract shall be "$0.00").

(b)    Initial Assigned Agreements.

45

FILED DATE: 5/19/2021 1:27 PM    2020L012403

(i)      As soon as practicable after delivery of the list of Potential Transferred Agreements by the Seller but no later than five (5) Business Days following such delivery, Buyer shall deliver to the Seller a list of those Potential Transferred Agreements proposed to be assigned to Buyer or assumed by Seller and assigned to Buyer on the Closing Date (the Contracts on such list, the "Initial Assigned Contracts", the Leases on such list (including, to the extent applicable to such Leases, all non-disturbance agreements with fee owners or senior landlords, subordination, non-disturbance and attornment agreements, waivers and consents in favor of any Seller,  estoppel certificates from landlords (to the extent assignable), and landlord waivers or other collateral access agreements in favor of any Seller or any asset-based lenders) the "Initial Assigned Leases", and together the "Initial Assigned Agreements").

(ii)      Following delivery of the list of Initial Assigned Agreements and to the extent consistent with the Bidding Procedures Order, at any time prior to the second (2nd) Business Day prior to the Closing Date, Buyer will be entitled, after consultation with the Sellers, to add (x) any Initial Assigned Agreement  to the list of Excluded Assets by providing written notice thereof to Sellers, and any Initial Assigned Agreement so added will cease to be an Initial Assigned Agreement and will be deemed to be an Excluded Asset (and all Liabilities thereunder Excluded Liabilities) for all purposes hereunder or (y) any Potential Transferred Agreement to the list of Initial Assigned Agreements so long as (1) it is not a Contract to be assumed or available to be assumed pursuant to any other sale previously approved by the Bankruptcy Court in connection with the Bankruptcy Cases; and (2) it is prior to the entry of a Final Order of the Bankruptcy Court approving the rejection of such Contract, in each case subject to the non-Debtor party to such Contract receiving information evidencing Buyer's adequate assurance of future performance and having an opportunity to object consistent with the Bidding Procedures Order and the Approval Order.  No change referred to in this Section 2.7(b)(i) shall reduce or increase the amount of the Purchase Price, except to the extent of any increase or decrease in the assumption of the Assumed Liabilities, including Cure Costs, as a result of the Potential Transferred Agreements being added to or removed from the list of Acquired Leases or Assigned Agreements by Buyer.

(iii)      On the Closing Date, pursuant to section 365 of the Bankruptcy Code and the Approval Order, and subject to consent if applicable Law requires it, Sellers shall assume and assign to Buyer the Initial Assigned Agreements and Buyer shall pay all Cure Costs with respect to such Initial Assigned Agreements to the appropriate counterparty or establish a reserve for disputed cure amounts in accordance with the Bidding Procedures Order and Approval Order.

(c)      Designatable Leases.  On each Assumption Effective Date, pursuant to section 365 of the Bankruptcy Code and the Approval Order, Sellers shall assume and assign to the applicable Assignee any Designatable Lease so designated by Buyer for assumption and assignment in accordance with the terms of this Agreement, and Buyer shall pay all or be responsible for Cure Costs with respect to such Designatable Leases.

(d)      Additional Contracts.  On each applicable Assumption Effective Date, and in no event later than the date that is five (5) Business Days following the Designation Deadline,

46

FILED DATE: 5/19/2021 1:27 PM    2020L012403

pursuant to section 365 of the Bankruptcy Code, the Approval Order, and any other applicable Order, Sellers shall assume and assign to the applicable Assignee any Additional Contract that Buyer designates for assumption and assignment in accordance with <u>Section 2.9</u>, and Buyer shall pay all Cure Costs with respect to such Additional Contract and all Expenses related to or arising under such Additional Contract after the Closing Date.

(e)     <u>Adequate Assurance and Consents</u>.   Notwithstanding anything to the contrary herein, Sellers shall not be obligated to assume and assign any Lease or Contract pursuant to this <u>Section 2.7</u> with respect to which Buyer fails to satisfy the Bankruptcy Court as to adequate assurance of future performance or for which Consent is required to assume and assign such Lease or Contract and such Consent has not been obtained; <u>provided</u>, <u>however</u>, that the Parties shall use their commercially reasonable best efforts to obtain all such Consents.

Section 2.8     <u>Further Assurances</u>.

(a)     On and after the Closing Date, each of the Sellers and Buyer shall use its commercially reasonable efforts  to further give full effect to, evidence and record the assignments, waivers, ratifications, consents and agreements granted herein, and, Sellers shall, upon Buyer's request, assist Buyer in a commercially reasonable way to obtain, maintain, enforce and defend any rights specified to be owned by or assigned to a Seller, including by testifying in any legal Proceedings, executing all lawful papers and making all rightful oaths required or necessary to aid Buyer or its successors or assigns in obtaining and enforcing its right, title and interest in, to and under the Acquired Assets, including in connection with the IP Assignment Agreement and the Short Form Assignments and in complying with all requirements of the applicable social media sites and Domain Name registrars.

(b)     On each Designation Assignment Date, Seller shall, upon the request of Buyer or the applicable Assignee, execute and deliver to such Assignee such instruments of transfer as shall be reasonably necessary or desirable to vest in such Assignee title to the applicable Designatable Leases and related Acquired Lease Rights, Acquired Improvements and all other related Acquired Assets required hereunder to be transferred on such Designation Assignment Date (and evidence the assumption by Seller, and the assignment by Seller to the applicable Assignee, of such Designatable Leases), and Seller, on the one hand, and such Assignee, on the other hand, shall (and Buyer shall use commercially reasonable efforts to cause each Assignee to) take (or cause to be taken) all appropriate action, do (or cause to be done) all things necessary under applicable Law, and execute and deliver such instruments and documents, in each case as may be reasonably requested and reasonably necessary or desirable to consummate the Transactions at or after the Designation Assignment Date. In furtherance and not in limitation of the foregoing, in the event that any of the Acquired Assets shall not have been conveyed at Closing or on the applicable Designation Assignment Date, as applicable, Seller shall convey such Acquired Assets to Buyer or such Assignee, as applicable, as promptly as practicable after the Closing or on the applicable Designation Assignment Date, as applicable.  As promptly as practicable following the date on which Buyer is permitted to receive Customer Data constituting "personally identifiable information" (as defined in the Bankruptcy Code) that was not transferred on the Closing Date, Seller shall deliver to Buyer a copy of the Customer Data constituting Acquired Data to an extent and in a format mutually agreeable to Seller and Buyer that is readable, useable, indexed and

searchable and, if any portion of such Customer Data is encrypted, the necessary decryption tools and keys to read such materials contemporaneously.

(c)      Not later than ten (10) days prior to  the Closing Date, Sellers shall instruct all of Sellers' outside counsel responsible for maintaining, prosecuting or renewing any of the Acquired Intellectual Property (i) that the ownership of the Acquired Intellectual Property will be assigned to Buyer as of the Closing Date, (ii) to keep all Acquired Intellectual Property (as relevant to such counsel) in full force and effect, including by filing and documentation and paying any fees required therefor, (iii) to release to Buyer or counsel designated by Buyer at locations to be designated by Buyer copies of all the tangible embodiments of the Intellectual Property Related Documentation existing as of the Closing Date and in such counsel's possession, and (iv) that Buyer or counsel designated by Buyer may contact such Sellers' counsel for coordination relative to further prosecution of the Acquired Intellectual Property at Buyer's expense (such correspondence, "Seller Instructions").  Sellers shall also include in the Seller Instructions any other information that Buyer reasonably instructs Sellers to include that is communicated to Sellers prior to the Closing Date.

(d)      If after the Closing (i) Buyer or any of its Affiliates holds or is otherwise liable for any Excluded Assets or Excluded Liabilities or (ii) any Seller or any of their respective Affiliates holds any Acquired Assets or Assumed Liabilities, Buyer or the applicable Seller will, and will cause their respective controlled Affiliates to, and will use commercially reasonable efforts to cause their other Affiliates to, (including through the execution and delivery of all appropriate transfer documents) promptly transfer (or cause to be transferred) such Assets or assume, pay or reimburse (or cause to be assumed, paid or reimbursed) such Liabilities to or from (as the case may be) the other party for no additional consideration.  Prior to any such transfer, the party receiving or possessing any such asset will hold it in trust for such other party.

(e)      Notwithstanding anything to the contrary contained in this Agreement, Seller shall not transfer the KCD Notes to Buyer, and Buyer shall not assume the PA Liabilities from Seller, unless and until Seller has received the requisite consent of the Bermuda Monetary Authority or any other applicable Bermuda regulatory authority to the transfer of the KCD Notes (the "BMA Consent").  Immediately following receipt of the BMA Consent, the transfer of the KCD Notes and the assumption of the PA Liabilities shall take place simultaneously.  From the Closing Date until such time as the transfer of the KCD Notes and the assumption of the PA Liabilities occurs, pursuant to a services agreement to be in a form reasonably agreed to be in a form reasonably agreed to by Sellers and Buyer (the "PA Liabilities Services Agreement"), (i) Buyer shall provide services to the applicable Sellers sufficient to enable Sellers to perform the PA Liabilities and (ii) in consideration for such services, Sellers shall pay to Buyer an amount equal to the aggregate of all amounts paid by Buyer to Sellers with respect to any licenses under which Buyer licenses the KCD IP.

Section 2.9      Additional Contracts.  If, at any time prior to the date that is sixty (60) days after the Closing Date, but in no event later than May 3, 2019 (the "Designation Deadline"), Buyer so determines as to any Contract that is Related to the Acquired Assets or is an IP License, in each case but is not an Initial Assigned Contract (other than (i) any lease of non-residential real property and (ii) any Excluded Asset set forth in Section 2.2) (each, an "Additional Contract"), Buyer may elect, after consultation with the Sellers, by written notice delivered to Sellers, to designate for assignment or assumption and assignment any Additional Contract for no additional consideration.

48

FILED DATE: 5/19/2021 1:27 PM      2020L012403

 Upon the designation of any such Additional Contract as an Assigned Agreement pursuant to this Section 2.9, Sellers will use their reasonable best efforts to assume and assign to the applicable Assignee such Additional Contract so long as the Buyer pays all Expenses accrued post-Closing and all Cure Costs associated with such Additional Contract; provided, however, that nothing herein shall be deemed or construed to obligate Sellers to retain, or refrain from rejecting or terminating any Lease or Contract after the Designation Deadline that does not constitute an Assigned Agreement.  Notwithstanding anything to the contrary herein, Sellers shall not be obligated to assume and assign any Contract pursuant to this Section 2.9 with respect to which Buyer fails to satisfy the Bankruptcy Court as to adequate assurance of future performance or for which Consent is required to assume and assign such Additional Contract and such Consent has not been obtained, provide that the Parties shall use their reasonable best efforts to obtain all such Consents.

Section 2.10   Withholding.  Notwithstanding anything in this Agreement to the contrary, Buyer shall be entitled to deduct and withhold from any amounts otherwise payable pursuant to this Agreement but only to the extent of such amounts as may be required to be deducted and withheld by Buyer with respect to the making of such payments under applicable U.S. federal, state or local or foreign laws, and any such withheld amount shall be properly paid by Buyer to the appropriate Governmental Authority. To the extent that amounts are so deducted and withheld and properly paid to the appropriate Governmental Authority, such deducted and withheld amounts shall be treated for all purposes of this Agreement as having been paid to Sellers or any other Person in respect of which such deduction and withholding was made.

Section 2.11   Rejection of Outbound IP Licenses.  Prior to the Closing Date, subject to section 365(n) of the Bankruptcy Code, Sellers shall file a motion to reject, and take all actions (including actions required under section 365 of the Bankruptcy Code) reasonably necessary to reject any Outbound IP Licenses included in the Potential Transferred Agreements that (i) are executory Contracts and (ii) are not designated by Buyer for assignment or assumption and assignment as an Assigned Agreement in accordance with the terms of this Agreement or for solely assumption pursuant to Section 9.14(d). Without limiting the foregoing, promptly following the Designation Deadline, Sellers shall file a motion to reject, and take all actions (including actions required under section 365 of the Bankruptcy Code) reasonably necessary to reject, any Outbound IP Licenses that (x) are not included in the Potential Transferred Agreements, (y) are executory Contracts and (z) are not designated by Buyer for assignment or assumption and assignment as an Assigned Agreement in accordance with the terms of this Agreement or for solely assumption pursuant to Section 9.14(d).

Section 2.12   Tax Reorganization.

(a)     The Parties intend that the transactions set forth in this Agreement, as structured and implemented as described in Section 9.2(a), together with the Bankruptcy Plan (as defined below), will, unless and except to the extent that Buyer elects otherwise with respect to a particular Seller or Sellers pursuant to Section 2.12(b), (i) constitute one or more plans of reorganization under section 368(a) of the Code (as defined below) and (ii) as qualifying as one or more reorganizations thereunder (a "Tax Reorganization").

49

(b)     Buyer may, at any time on or before the earlier of (i) 15 days prior to the effective date of the Bankruptcy Plan and (ii) December 1, 2019, elect, by providing to Sellers written notice of its election, to treat one or more of the transactions (each, a "Designated Sale Transaction") set forth in this Agreement as not qualifying as a Tax Reorganization, which election shall be effective unless Designated Tax Advisor cannot provide a Tax Opinion that such Designated Sale Transaction can be completed in a manner that would not be treated as a "reorganization" within the meaning of section 368 of the Code; provided, however, that in connection with any such Buyer election to treat all the transactions described in this Article II as Designated Sale Transactions (resulting in no transfer of Sellers' Tax attributes to Buyer), the Parties shall, if requested by Sellers in writing, identify a business of the Sellers that would become part of the Excluded Assets and consider in good faith any other changes to the structure of the transaction that are reasonable and necessary as a commercial, bankruptcy law and other legal matter to achieve that result. If Buyer does not elect pursuant to this Section 2.12(b) to treat all the transactions described in this Article II as Designated Sale Transactions (resulting in no transfer of Sellers' Tax attributes to Buyer), or any such election is not effective, then Buyer and Sellers shall continue to comply with Section 9.2(a).

(c)     Each Tax Opinion shall be based on representations reasonably requested by Designated Tax Advisor to be provided by each of Buyer and Sellers in the form of a representation letter, and each such representation must continue to be true and accurate in all material respects as of immediately before such Tax Opinion is issued. To the extent requested by Designated Tax Advisor, each of Sellers and Buyer shall confirm to Designated Tax Advisor the accuracy and completeness, as of immediately before such Tax Opinion is issued, of the applicable representation letter. For the avoidance of doubt, and notwithstanding anything to the contrary set forth in this Agreement, (i) reliance by Sellers on any Tax Opinion requested or otherwise required pursuant to this Agreement shall not affect Buyer's liability for Taxes that are Assumed Liabilities and (ii) the inability or failure to deliver or receive any Tax Opinion requested or otherwise required pursuant to this Agreement shall not delay or in any way interfere with the consummation and closing of the Transactions. Notwithstanding anything to the contrary set forth in this Agreement, any transaction or transactions (including any transaction described in clause (B) of Section 9.2(a)) in respect of which any Tax Opinion is not or cannot be delivered as otherwise required under this Agreement (other than a Tax Opinion described in Section 2.12(b)) shall be deemed to be a Designated Sale Transaction.

Section 2.13     Foreign Assets.

(a)     On the Closing Date, Sellers shall use reasonable best efforts to cause each of the Foreign Subsidiaries to sell, transfer, assign, convey and deliver, or cause to be sold, transferred assigned, conveyed and delivered to Buyer or the applicable Assignee, and Buyer or such applicable Assignee shall use reasonable best efforts to purchase, all right, title and interest of each of the Foreign Subsidiaries, in, to or under all assets, properties and rights Related to the Business other than the Excluded Assets and any other assets of the type that would have been Acquired Assets had they been owned by Sellers as of the Closing Date or any minority equity interests held by the Foreign Subsidiaries (collectively, the "Acquired Foreign Assets"), in each case free and clear of any and all Encumbrances of any kind, nature or description and any Claims, other than Permitted Post-Closing Encumbrances. If the transfer of any Acquired Foreign Assets does

FILED DATE: 5/19/2021 1:27 PM     2020L012403

FILED DATE: 5/19/2021 1:27 PM   2020L012403

not occur at the Closing Date, Seller and Buyer shall use reasonable best efforts to complete such transfer as promptly as practicable following the Closing Date and shall enter into such agreements as may be reasonably required to provide Buyer or the applicable Assignee the benefit of such assets until such transfer is consummated.

(b)       If, at any time prior to the date that is sixty (60) days after the Closing Date, but in no event later than May 3, 2019, Buyer determines (in its sole discretion) that it is necessary or desirable to acquire other minority equity interests in non-U.S. Persons held by Subsidiaries of Seller (other than any Subsidiary who is a Seller) so as to ensure that Buyer or the applicable Assignee shall be able to secure the benefit of the applicable Acquired Foreign Assets, Buyer may elect, by written notice delivered to Sellers, to acquire such equity interests directly from Seller. Following any such election, Buyer and Seller shall promptly execute all documentation required to effectuate the purchase and sale of such equity interests under applicable Law.

(c)       No purchase of Acquired Foreign Assets or equity interests pursuant to this Section 2.13 shall require the delivery of any additional consideration by Buyer; provided, that to the extent required by applicable Law (including, for the avoidance of doubt, Tax Law), Buyer and Seller shall in accordance with Section 9.3(d) either (i) allocate a portion of the Purchase Price to the purchase of such equity interests or (ii) provide for nominal consideration to be paid by Buyer to Sellers in an amount no greater than the minimum amount required by applicable Law.

Section 2.14   Bulk Transfer Law.  The Parties intend that pursuant to Section 363(f) of the Bankruptcy Code, the transfer of the Acquired Assets shall be free and clear of any security interests in the Acquired Assets, including any liens or claims arising out of the bulk transfer Laws. In furtherance of the foregoing, each Party hereby waives, to the fullest extent permitted by applicable Law, compliance by the Parties with the "bulk sales," "bulk transfers" or similar Laws in all applicable jurisdictions in respect of the Transactions (including under any applicable Tax Laws).

# ARTICLE III

# PURCHASE PRICE

Section 3.1   Purchase Price.  The aggregate purchase price for the purchase, sale, assignment and conveyance of Sellers' right, title and interest in, to and under the Acquired Assets shall consist of the following (collectively, the "Purchase Price"):

(a)       cash in an amount (the "Closing Payment Amount") equal to:

(i)       $1,408,450,000; plus

(ii)       an amount in cash equal to the Store Cash as of 12:00 a.m. New York City time on the Closing Date; plus

(iii)       the Credit Bid Release Consideration; less

51

FILED DATE: 5/19/2021 1:27 PM                    2020L012403

(iv)     the aggregate amount of (A) the credit bid set forth in <u>Section 3.1(b)(ii)</u> *plus* (B) the credit bid set forth in <u>Section 3.1(b)(iv)</u>, *plus* (C) the FILO Facility Buyout Amount (if any);

(b)     subject to Bankruptcy Court approval, a credit bid pursuant to Section 363(k) of the Bankruptcy Code of:

(i)     all outstanding obligations held by Buyer and its Affiliates as of the Closing Date under the IP/Ground Lease Term Loan Facility, *plus*

(ii)     all outstanding obligations held by Buyer and its Affiliates as of the Closing Date under the FILO Facility, *plus*

(iii)     obligations held by Buyer and its Affiliates as of the Closing Date under the Real Estate Loan 2020 in an amount equal to $544,000,000, *plus*

(iv)     obligations held by Buyer and its Affiliates as of the Closing Date in an aggregate amount equal to $433,450,000 under (x) the Second Lien Term Loan; (y) the Second Lien Line of Credit Facility; and (z) the Second Lien PIK Notes,

in the case of each of (i), (ii), (iii) and (iv) in exchange for the collateral pledged to secure the applicable debt obligations, including any proceeds from the sale or other disposition of such collateral prior to the Closing Date to which the Liens securing such debt obligations are attached, in the same order of priority and with the same validity, force and effect as the original Liens; *plus*

(c)     cash in the amount of the outstanding obligations owed to lenders other than Buyer or its Affiliates as of the Closing Date under (i) the IP/Ground Lease Term Loan Facility (the "<u>IP/Ground Lease Buyout Amount</u>"), (ii) the FILO Facility (the "<u>FILO Facility Buyout Amount</u>"), and (iii) the Real Estate Loan 2020 (the "<u>Real Estate Loan 2020 Buyout Amount</u>"), unless such lender(s) provide written confirmation to the Sellers that such cash payment and the obligations owed to lenders by the Seller under the IP/Ground Lease Term Loan Facility, the FILO Facility or the Real Estate Loan 2020, as applicable, are permanently waived and discharged against the Sellers; *plus*

(d)     the Securities Consideration;

(e)     the Junior DIP Consideration;

(f)     the L/C Facility Consideration; and

(g)     the assumption by Buyer of the Assumed Liabilities in accordance with <u>Section 3.5</u>.

To the extent payable, the IP/Ground Lease Buyout Amount, the FILO Facility Buyout Amount and the Real Estate Loan 2020 Buyout Amount shall each be deposited and held in separate segregated accounts of the Debtors and the Liens of the lenders other than Buyer or its Affiliates under IP/Ground Lease Term Loan Facility, the FILO Facility or the Real Estate Loan 2020, as applicable, shall attach to the cash proceeds held in the applicable designated segregated account

52

18-23538-shl    Doc 2507    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 374 of 1450

in the same order of priority and with the same validity, force and effect as the original Liens of such lenders, and such proceeds shall be released to such lenders within two business days following the Closing Date and shall not otherwise be used by the Debtors without further order of the Bankruptcy Court.

Section 3.2    <u>Cash Deposit</u>.  On or prior to January 9, 2019, Buyer paid an aggregate amount in cash equal to $120,000,000 (the "<u>Deposit Amount</u>") by wire transfer of immediately available funds into an escrow account maintained by Citibank, N.A. as Escrow Agent.  Buyer's and Sellers' right to retain the Deposit Amount in the event of a termination of this Agreement shall be governed by <u>Section 12.2</u>.

Section 3.3    <u>Closing Payment</u>.

(a)    At the Closing, Buyer shall:

(i)    pay to Sellers by wire transfer of immediately available funds into one or more accounts designated by Sellers an amount in cash equal to the Closing Payment Amount *less* the Deposit Amount *plus* any amounts payable pursuant to Section 3.1(c); and

(ii)    deliver the Securities Consideration to the Sellers.

Section 3.4    <u>Reserved</u>.

Section 3.5    <u>Discharge of Assumed Liabilities After Closing</u>.  From and after the later of the Closing or the applicable Assumption Effective Date, Buyer shall pay, perform, discharge and satisfy the Assumed Liabilities from time to time and as such Assumed Liabilities become due and payable or are required to be performed, discharged or satisfied, in each case in accordance with their respective terms.

**ARTICLE IV**

**CLOSING**

Section 4.1    <u>Closing Date</u>.  The closing of the sale, transfer, assignment, conveyance and delivery of the Designation Rights and Sellers' right, title and interest in, to and under the Acquired Assets by Sellers to Buyer contemplated hereby (the "<u>Closing</u>") shall take place at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, or at such other place or time as Buyer and Sellers may mutually agree, on the third (3rd) Business Day following satisfaction or waiver of the conditions set forth in Article X and Article XI (other than those conditions that by their nature are to be satisfied by actions taken at the Closing, but subject to the satisfaction or waiver of such conditions at the Closing).  Notwithstanding the immediately preceding sentence, if the Marketing Period has not ended at the time of the satisfaction or waiver of the conditions set forth in Article X and Article XI (other than those conditions that by their nature are to be satisfied by actions taken at the Closing, but subject to the satisfaction or waiver of such conditions at the Closing), then the Closing shall occur instead on the date that is the earlier to occur of (x) any Business Day as may be specified by Buyer on no less than two (2) Business

FILED DATE: 5/19/2021 1:27 PM    2020L012403

53

FILED DATE: 5/19/2021 1:27 PM    2020L012403

Days' prior written notice to Sellers and (y) two (2) Business Days following the final day of the Marketing Period.  The date and time at which the Closing actually occurs is referred to as the "Closing Date."

Section 4.2    Buyer's Deliveries.  At the Closing, Buyer shall deliver to Sellers:

(a)    the Closing Payment Amount *less* the Deposit Amount in accordance with Section 3.3;

(b)    the Securities Consideration;

(c)    the certificates of Buyer to be received by Sellers pursuant to Sections 11.1 and 11.2;

(d)    the Occupancy Agreement, duly executed by Buyer;

(e)    the PA Liabilities Services Agreement, duly executed by Buyer; and

(f)    such assignments and other good and sufficient instruments of assumption and transfer, in form reasonably satisfactory to Sellers and Buyer, which are reasonably requested by Seller to (i) transfer to Buyer all the right, title and interest of Sellers in, to or under the Acquired Assets to be acquired on the Closing Date in accordance with this Agreement and (ii) properly give effect to Buyer's assumption of all of the Assumed Liabilities in accordance with this Agreement.

Section 4.3    Sellers' Deliveries.  At the Closing, Sellers shall deliver to Buyer:

(a)    a copy of the Approval Order entered by the Bankruptcy Court;

(b)    the certificates of Sellers to be received by Buyer pursuant to Sections 10.1 and 10.2;

(c)    a certificate of non-foreign status executed by each Seller (or, if a Seller is a disregarded entity for U.S. federal income Tax purposes, by the Person treated as the owner of such Seller for U.S. federal income Tax purposes) that is a "United States person" within the meaning of Section 7701(a)(30) of the Code, substantially in the form of the sample certification in Treasury Regulations Section 1.1445-2(b)(2)(iv)(B);

(d)    all items required to be delivered pursuant to Section 9.9;

(e)    a quit-claim deed to be recorded with respect to the Owned Real Property;

(f)    such assignments and other good and sufficient instruments of assumption and transfer, in form reasonably satisfactory to Sellers and Buyer, which are reasonably requested by Buyer to (i) transfer to Buyer all the right, title and interest of Sellers in, to or under the Acquired Assets to be acquired on the Closing Date in accordance with this Agreement and (ii) properly give effect to Buyer's assumption of all of the Assumed Liabilities in accordance with this Agreement;

54

(g)    all Intellectual Property Related Documentation;

(h)    all tangible embodiments of the Acquired Intellectual Property, including all (i) Software object code and source code related thereto, (ii) all materials and documentation (in electronic and editable form, to the extent existing in such form) necessary for the use, modification, manufacture, sale and other exploitation of the Acquired Intellectual Property, to the extent not included in Intellectual Property Related Documentation, (iii) all content made available on or through any websites and webpages accessed through any Domain Names or Medical Accounts included in the Acquired Intellectual Property and all other audio-visual or written materials (including such archival materials) produced by or on behalf of Sellers, (iv) all Labeling and Marketing Materials and (v) all Product Catalogs and Manuals;

(i)    to the extent the sale and transfer of such data is not in contravention with applicable Law, all Acquired Data in the format in which it exists and, if any portion of such Acquired Data is encrypted, the necessary decryption tools and keys to read such materials contemporaneously;

(j)    a counterpart of the IP Assignment Agreement, duly executed by each applicable Seller;

(k)    unless otherwise agreed in writing by the Parties between signing and Closing, a counterpart of each Short Form Assignment, duly executed by each applicable Seller;

(l)    a counterpart of each IP Power of Attorney, duly executed by each applicable Seller;

(m)    the Occupancy Agreement, duly executed by the applicable Sellers;

(n)    the PA Liabilities Services Agreement, duly executed by the applicable Sellers;

(o)    the Payoff Letters (including UCC terminations or authorization to file UCC terminations and other filings); and

(p)    subject to Section 2.8(e), certificates representing the KCD Notes in proper form for transfer, free and clear of all Liens.

Section 4.4    Local Sale Agreements.  Subject to the terms and conditions hereof, to the extent necessary or desirable to effect the Closing on the terms hereof, Buyer or applicable Assignee and relevant Sellers shall, enter into such agreements or instruments, including a sale agreement and quit-claim deed for the Owned Real Property and bills of sale and/or assignment and assumption agreements, providing for the sale, transfer, assignment or other conveyance to Buyer or applicable Assignee, in accordance with the requirements of applicable local Law.

## ARTICLE V

## DESIGNATION RIGHTS PERIOD

Section 5.1    Parties' Respective Obligations Before and During Designation Rights Period.

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 18:46:34 Exhibit A
Pg 305 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

(a)  <u>Sellers' Obligations</u>.

(i)  Sellers shall pay when due any and all Occupancy Expenses with respect to each Lease Premises and the related Lease solely to the extent arising during the period commencing on the Petition Date through, in the case of any Operating Leased Property, the Closing Date, and in the case of any GOB Leased Store, the end of the GOB Period for such GOB Leased Store, at such times and in such amounts as are required under the terms of the applicable Lease and any other applicable agreement pertaining to such Property. Sellers shall not pay any amount due from Sellers pursuant to any provision of this Agreement using any security deposit associated with any Lease Premises, Lease or other Lease Premises-related agreement or, to the extent so paid prior to Closing, Buyer, as Buyer's sole remedy, will be entitled to a credit against the Purchase Price for any amounts so applied (except that Buyer shall be entitled to invoke other remedies if such credit is not duly applied at Closing).

(ii)  From the date hereof through (A) the Closing Date with respect to each Operating Leased Property and (B) the end of the applicable GOB Period with respect to each GOB Leased Store, Sellers shall use commercially reasonable efforts to maintain and preserve each Lease Premises, each Lease and all related Potential Acquired Assets in a condition substantially similar to their condition as of October 15, 2018, other than reasonable wear and tear, casualty and condemnation (which shall be governed by <u>Section 12.3</u>). During the Designation Rights Period, Sellers shall not without Buyer's consent, and shall not solicit any other Person to, (A) sell, transfer, assign, convey, lease, license, mortgage, pledge or otherwise encumber any Lease Premises, related Lease or related Potential Acquired Asset (other than sales of Inventory by Buyer in accordance with <u>Section 5.1(c)</u>, Permitted Encumbrances and any applicable statutory liens (solely to the extent that such Lease or related Potential Acquired Asset will be transferred free and clear of such statutory liens pursuant to the Approval Order)), (B) amend, supplement or modify in any fashion (or terminate or enter into) any Designatable Lease (provided that Sellers shall use reasonable best efforts to comply with instructions from Buyer as to the renewal (or lack of renewal) of each Lease that comes up for renewal), (C) grant or terminate any other interests in any Lease Premises, related Lease or related Potential Acquired Asset (other than sales of Inventory located at such Lease Premises in the Ordinary Course of Business), (D) cancel or compromise any claim or waive or release any right, in each case that is related to any Lease Premises or any related Potential Acquired Assets (for the avoidance of doubt, other than any Excluded Assets), (E) except following receipt of a Buyer Rejection Notice in accordance with <u>Section 5.3</u>, seek or obtain an order approving rejection of a Designatable Lease (which, shall in no way affect Sellers' rights to seek or obtain an order approving rejection in connection with any of Sellers' assets other than the Lease Premises), (F) take any action with respect to Taxes or Tax matters that is not in the Ordinary Course of Business that could reasonably be expected to result in (I) an Encumbrance on any Lease Premises or related Potential Acquired Assets (unless such Lease or related Potential Acquired Asset will be transferred free and clear of such Encumbrances pursuant to the applicable Lease Assignment Order) or (II) an increase in the Tax Liability of Buyer or any of its Affiliates, or (G) enter into any agreement or commitment to take any action prohibited by this <u>Section 5.1(a)(ii)</u>.

56

18-23538-shl    Doc 2507    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 306 of 1450

(iii)    From the date hereof through the end of the Designation Rights Period, Sellers shall continue to make available to Buyer the data room made available to Buyer prior to the date hereof, and Sellers shall use commercially reasonable efforts to post to such data room copies of all material notices received by Sellers with respect to any Designatable Leases during the Designation Rights Period.  From the date hereof through the end of the Designation Rights Period, subject to the terms of the Occupancy Agreement, Sellers shall make available to Buyer reasonable access to the Lease Premises for the Designatable Leases at such times as Buyer or its agents may reasonably request, provided that prior to the Closing Date there is no unreasonable interference with Sellers' use and occupancy.

(iv)    From the date hereof through the (A) Closing with respect to the Initial Assigned Leases and (B) the end of the Designation Rights Period with respect to the Designatable Leases, Sellers shall reasonably cooperate with Buyer at no cost, expense or Liability to Sellers with regard to all negotiations between Buyer and the landlords under the applicable Leases, but Sellers will not be required to enter into any agreements with such landlords or expend any costs in connection with such negotiations  (other than any costs that Buyer has agreed in writing to reimburse Seller).

(v)    With respect to the Lease Premises which Leases are Designatable Leases, Sellers shall continue all existing insurance policies with respect to such Lease Premises or policies providing similar coverage to the extent available at commercially reasonable rates during the Designation Rights Period and in all instances shall maintain all insurance required to be maintained under any Lease, and shall use commercially reasonable efforts to cause Buyer to be named as a loss payee or additional insured, as applicable, with respect to all such policies, which premiums and other amounts due to such insurance companies to maintain such insurance policies during the Designation Rights Period shall be Occupancy Expenses.  Sellers shall (i) hold in escrow all insurance recoveries and all warranty and condemnation proceeds received or receivable after the date hereof with respect to such Lease Premises or such related Leases for events occurring during the Designation Rights Period, and (ii) following the Designation Rights Period shall pay any such recoveries or proceeds to Buyer to the extent relating to any Acquired Lease.  In connection with any payment of recoveries or proceeds under this Section 5.1(a)(v), (i) such payment of recoveries or proceeds shall not include any recoveries or proceeds to the extent attributable to lost rents or similar costs applicable to any period prior to the Closing or paid in connection with repair, restoration or replacement during such period, and (ii) to the extent that Buyer has received written notice thereof in reasonable detail not less than fifteen (15) days prior to the end of the Designation Rights Period, such payment of recoveries or proceeds shall be reduced by the amount of (x) all actual and documented, reasonable out of pocket repair costs incurred by Sellers in connection with the repair or restoration of such damage or destruction, (y) all actual and documented, reasonable out of pocket collection costs of Sellers respecting any awards or other proceeds, and (z) any amounts required to be paid (and solely to the extent actually paid) by Sellers or the insurance company to the applicable landlord under the Lease, if applicable, or to such landlord's lender as required pursuant to any of such lender's financing, as applicable.  For the avoidance of doubt, the costs of such policies allocable to, in the case of the GOB

FILED DATE: 5/19/2021 1:27 PM        2020L012403

Leased Stores for the period following the end of the GOB Period for each such GOB Leased Store and in the case of the Owned Leased Stores following the Closing Date, shall be borne by Buyer and shall otherwise be borne by Sellers.  During the Designation Rights Period, Sellers shall use commercially reasonable efforts to provide Buyer with notice of any Casualty / Condemnation Event within three (3) Business Days of the occurrence of such Casualty / Condemnation Event.

(vi)     From the date hereof through the end of the Designation Rights Period, at Buyer's specific written request, and at no cost, expense or Liability to Sellers, Sellers will take such actions as Buyer may reasonably request to cause each landlord under the Designatable Leases to perform such party's covenants, agreements and obligations (including repair and maintenance obligations and obligations to maintain insurance with respect to such Lease Premises and any shopping center or mall in which any such Lease Premises is located) under the respective Designatable Leases.

(vii)     From the date hereof through the Closing Date, Sellers shall perform repairs and maintenance and provide security services at the Properties in substantially the same manner and to the same extent in place as of the date hereof (for the avoidance of doubt, the costs of providing such repairs, maintenance and security services prior to the Closing Date shall be borne by Sellers.

(viii)     From the date hereof through the end of the Designation Rights Period, Sellers shall maintain, as an Occupancy Expense, the effectiveness of and, to the extent expiring, renew, all Plans and Permits with regard to the Properties.

(b)     Buyer's Obligations.

(i)     Buyer shall pay (or reimburse Sellers) (subject to the restrictions set forth herein) all Expenses with respect to the Designatable Leases.

(ii)     Buyer will, as soon as reasonably practicable, but in no event later than the Designation Deadline, identify to Seller any Designatable Leases that Buyer has determined will not be designated for assumption and assignment pursuant to the Designation Rights and Seller shall be free to dispose of such Designatable Leases in its sole discretion.

(c)     Operation of Lease Premises.

(i)     The operation of the Lease Premises related to the (A) Operating Leased Property during the Designation Rights Period and (b) with respect to each GOB Leased Store following the end of the applicable GOB Period for each such GOB Leased Store and ending at the end of the Designation Rights Period,  shall in each case be governed by an Occupancy Agreement in the form attached hereto as Exhibit D, and Buyer shall conduct such operation pursuant to such Occupancy Agreement, including the sale of the Acquired Inventory at such Lease Premises related to the Designatable Leases, as Buyer determines in its sole discretion, including by (A) conducting liquidation sales at any or all of such

FILED DATE: 5/19/2021 1:27 PM          2020L012403

Lease Premises related to the Designatable Leases or (B) operating the Lease Premises pursuant to the Occupancy Agreement.

(ii)     The operation of the GOB Owned Stores during the GOB Period shall be governed by the Seller Retained Occupancy Agreement and Seller shall conduct such operation pursuant to such Seller Retained Occupancy Agreement as Seller determines in its sole discretion.

Section 5.2     Assumption.

(a)     Following Closing, at any time on or prior to the Designation Deadline, Buyer shall have the right, which right may be exercised at any time and from time to time, in consultation with the Sellers, to designate such Designatable Lease for assumption and assignment and shall provide notice to Sellers executed by Buyer and the Assignee (a "Buyer Assumption Notice") of Buyer's election to require Sellers to assume such Designatable Leases and assign the same to the Assignee identified in such Buyer Assumption Notice; provided that Buyer shall pay all Cure Costs associated with any assumption and assignment of any such Designatable Leases in accordance with the terms of Section 2.7; provided further, that the Assignee shall agree, pursuant to the Buyer Assumption Notice, to assume Buyer's obligations under this Agreement in relation to the relevant Designatable Lease. The Buyer Assumption Notice shall provide the following information: (1) the Designatable Leases being assumed and assigned and (2) the identity of the applicable Assignee(s).

(b)     Within five (5) Business Days following the date upon which Buyer delivers a Buyer Assumption Notice to Sellers with respect to any Designatable Lease, together with a related assignment agreement substantially in the form attached hereto as Exhibit E (the "Assignment and Assumption of Lease") executed by the applicable Assignee, Sellers shall (1) deliver to Buyer and such Assignee a fully executed Assignment and Assumption of Lease and (2) file with the Bankruptcy Court and serve on the applicable lessor(s) and other appropriate notice parties (as applicable) a notice, and shall seek entry by the Bankruptcy Court of the Approval Order in respect of the Designatable Leases subject to such Buyer Assumption Notice; provided, that, in no event shall any Designation Assignment Date be prior to the Inventory Date. As of the applicable Designation Assignment Date, except for such obligations and liabilities with respect to such Designatable Leases and the related Lease Premises arising during the Designation Rights Period and except for Buyer's obligations specifically set forth in this Agreement, as between Buyer and the Assignee, Buyer shall have no further obligation or Liability with respect to such Designatable Lease or the related Lease Premises (including any obligation to continue to pay Expenses with respect thereto) and Assignee shall thereafter be solely responsible for all amounts payable or other obligations or liabilities that may be owed in connection with such Designatable Lease or the related Lease Premises; provided, however, that nothing in this sentence shall affect Sellers' rights against Buyer with respect to such Designatable Lease or the Lease Premises as set forth in this Agreement.

(c)     Upon Buyer's request prior to the last day of the Designation Rights Period (provided that the Assignee shall have notified Sellers as to the particular Assignment Instruments and Assignment Actions to be delivered and taken at least two (2) Business Days prior thereto), Sellers shall deliver to the applicable Assignee instruments reasonably necessary or desirable (as

59

FILED DATE: 5/19/2021 1:27 PM    2020L012403

reasonably agreed between Sellers and Assignee) providing for the assignment, conveyance and delivery to such Assignee of the applicable Designatable Lease, together with the related Acquired Assets, in each case free and clear of all Encumbrances of any and every kind, nature and description, other than Permitted Encumbrances (the "Assignment Instruments") and shall otherwise take such actions as are reasonably necessary or desirable (as reasonably agreed by Seller and such Assignee) in order to cause such sale, transfer, assignment, conveyance and delivery to become effective (collectively, the "Assignment Actions"); provided, however, that Buyer shall be solely responsible for all Cure Costs in accordance with the terms of this Agreement.

(d)     The effective date of the sale, transfer, assignment, conveyance and delivery by Sellers to such Assignee of a Designatable Lease and related assets pursuant to this Agreement and the applicable Assignment and Assumption of Lease shall be the "Designation Assignment Date" with respect to such Lease and related assets.

(e)     With respect to any Designatable Lease designated in a Buyer Assumption Notice:

(i)     Sellers, at no cost, expense or Liability to Sellers, and Buyer shall each use (and Buyer shall use commercially reasonable efforts to cause Assignee to use) commercially reasonable efforts to accomplish, and shall fully cooperate with each other in, the resolution of any objections to the proposed assumption and assignment of such Designatable Lease and related assets;

(ii)     Buyer shall cause Assignee to provide evidence (A) of adequate assurance of future performance within the meaning of section 365 of the Bankruptcy Code, (B) that Assignee is a good faith purchaser for purposes of section 363(m) of the Bankruptcy Code, including, in both cases, through the provision of such financial information and/or the filing of such affidavits or declarations with the Bankruptcy Court as may reasonably be requested by Sellers, or (C) any other information as may be required by the Bidding Procedures Order; and

(iii)     Buyer shall pay or be responsible for all Cure Costs and Expenses and pay and perform the other obligations of Buyer set forth in this Agreement.

(f)     Except as otherwise set forth in this Article V, each Person shall bear their own costs and expenses in respect of obtaining entry of the Approval Order and otherwise implementing the sale, transfer, assignment, conveyance and delivery of the applicable Lease and related assets to the applicable Assignee, including the filing and prosecution of any motions or other papers with respect to the same.

Section 5.3     Election Not to Assume and Assign a Designatable Lease.

(a)     At any time before the date that is five (5) Business Days on or before the Designation Deadline, Buyer shall in accordance with the terms of this Agreement provide notice to Sellers (each such notice, a "Buyer Rejection Notice") of Buyer's election not to have such Designatable Lease assumed and assigned.

FILED DATE: 5/19/2021 1:27 PM        2020L012403

(b)        Within five (5) Business Days following the date upon which Buyer delivers a Buyer Rejection Notice to Sellers with respect to the applicable Lease, Buyer shall vacate the applicable Property and deliver to Sellers the keys to such Property, if in the possession of Buyer. As of the date that is the later of (i) the date Buyer vacates the applicable Property and delivers to Sellers the keys to such Property, if in the possession of Buyer and (ii) five (5) Business Days after the date of the Buyer Rejection Notice, Buyer shall have no further obligation or liability with respect to the applicable Lease, Contract or Lease Premises, except with respect to obligations and liabilities with respect to such Lease, Contract, or Lease Premises arising during the Designation Rights Period, and Sellers shall thereafter be solely responsible for all amounts payable or other obligations or liabilities that may be owed in connection with such Lease, Contract or Lease Premises.

## ARTICLE VI

## REPRESENTATIONS AND WARRANTIES OF SELLERS

Except as set forth in the Schedules delivered as of the date hereof by Sellers to Buyer and except as relates to a matter involving a Buyer Related Party (as to which no representation or warranty is being made), Sellers hereby, jointly and severally, represent and warrant to Buyer that the statements contained in this Article VI are true and correct as of the date hereof:

Section 6.1        Organization and Good Standing.  Each Seller is an entity duly organized, validly existing and in good standing under the Laws of the jurisdiction of its organization.  Subject to the limitations imposed on such Seller as a result of the Filing, each Seller has the requisite corporate, partnership or limited liability company power and authority to own or lease and to operate and use its properties and to carry on its business as now conducted.  Each Seller is duly qualified or licensed to do business and is in good standing in each jurisdiction where a Property is located where the character of its business or the nature of its properties requires such qualification or licensing, except where the failure to be so qualified or licensed or to be in good standing would not reasonably be expected to have a Material Adverse Effect.

Section 6.2        Authority; Validity; Consents.   Each Seller has, subject to requisite Bankruptcy Court approval, as applicable, the requisite corporate, partnership or limited liability company power and authority necessary to enter into and perform its obligations under this Agreement and the other Transaction Documents to which it is, or will become, a party and to consummate the Transactions.  This Agreement has been duly and validly executed and delivered by each Seller and each other Transaction Document required to be executed and delivered by Sellers at any time will be duly and validly executed and delivered by each Seller.  Subject to requisite Bankruptcy Court approval, as applicable, this Agreement and (when duly executed by Sellers) the other Transaction Documents constitute, with respect to each Seller, the legal, valid and binding obligations of such Seller, enforceable against such Seller in accordance with their respective terms, except as such enforceability is limited by bankruptcy, insolvency, reorganization, moratorium or similar laws now or hereafter in effect relating to creditors' rights generally or general principles of equity.  Subject to, and after giving effect to, requisite Bankruptcy Court approval (including the Approval Order) no Seller is required to give any notice to, make any filing with or obtain any consent from any Person (including any Governmental Authority) in connection with the execution and delivery of this Agreement and the other

Transaction Documents or the consummation or performance of any of the Transactions, except for (i) expiration or termination of any applicable waiting periods under the HSR Act and (ii) such notices, filings and consents, the failure of which to provide, make or obtain, would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.

Section 6.3    No Conflict.  When the Approval Order and the consents and other actions described in Section 6.2 have been obtained and taken, the execution and delivery of this Agreement and the other Transaction Documents and the consummation of the Transactions will not result in the material breach of any of the terms and provisions of, or constitute a default under, or conflict with, or require consent or the giving of a notice under, or cause any acceleration of any obligation of Sellers under (a) any Order, (b) any Law or (c) the organizational documents of any Seller except, with respect to (a) or (b), as would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.

Section 6.4    Environmental Matters.  Except as would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect, to Sellers' Knowledge, (i) none of the Acquired Properties has been used by any Person as a landfill or storage, treatment, or disposal site for any type of Hazardous Substance or non-hazardous solid wastes as defined under the Resource Conservation and Recovery Act of 1976, as amended, in a manner which would reasonably be expected to result in any Seller incurring liabilities under Environmental Laws; (ii) the use by each Seller of the Acquired Properties is, and since the beginning of the Current Fiscal Year has been, in compliance with all Environmental Laws and Environmental Permits, except for such non-compliance that has not been, and would reasonably be expected to result in any Seller incurring liabilities under Environmental Laws; and (iii) none of the Acquired Assets is subject to any pending Action alleging that any Acquired Assets or Seller, with respect to the Acquired Assets,  is in violation of any Environmental Law or Environmental Permit that would reasonably be expected to result in any Seller incurring liabilities under Environmental Laws.  Since the beginning of the Current Fiscal Year, the Sellers have not received any written notice threatening any Action alleging that any Seller is in violation of any Environmental Law or Environmental Permit in respect of any Acquired Property that would reasonably be expected, individually or in the aggregate, to have a Material Adverse Effect.

Section 6.5    Title to Acquired Assets.

(a)    Except as would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect, Sellers (directly or indirectly) have good  title to, or, in the case of Potential Acquired Assets that are leased by Sellers, a valid leasehold interest in, all of the Potential Acquired Assets, free and clear of all Encumbrances, except for Permitted Encumbrances.

(b)    Sellers shall (i) with respect to the Owned Real Property, the Business and the Acquired Assets, upon delivery to Buyer on the Closing Date of the instruments of transfer contemplated by Section 4.3 and (ii) with respect to any Potential Acquired Assets related to any Acquired Lease Premises, upon delivery to the applicable Assignee of the instruments of transfer contemplated by an applicable Assignment and Assumption of Lease, and in each case subject to the terms of the Approval Order, thereby transfer to Buyer or the applicable Assignee, as applicable, good (and, in the case of owned real property, marketable fee simple) title to, or, in the

62

FILED DATE: 5/19/2021 1:27 PM    2020L012403

case of Potential Acquired Assets that are leased by Sellers, a valid leasehold interest in, all of the Potential Acquired Assets, free and clear of all Encumbrances, except for Permitted Encumbrances.

Section 6.6  Real Property.

(a)  Except as would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect, Sellers have good and marketable fee title to the Owned Real Property, free and clear of all liens (except for Permitted Encumbrances).  None of the Owned Real Property is subject to any leases or tenancies or other rights of occupancy.

(b)  Except as would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect, (i) there is no pending condemnation proceeding, administrative action or judicial proceeding of any type relating to the Owned Real Property or other matters affecting adversely the current use, occupancy or value of the Owned Real Property and (ii) neither the current use of the Owned Real Property nor the operations of Sellers violates any applicable legal requirements.

(c)  The Initial Assigned Leases and the Designatable Leases constitute all leases and material Security Deposit Documents with respect to any real property for the Lease Premises.  On or before the date hereof, Sellers have delivered or made available to Buyer true and complete copies of all Leases and Security Deposit Documents for the Lease Premises (it being agreed that, while Sellers shall use reasonable best efforts to deliver or make available to Buyer all such documents, Sellers shall not be deemed to have breached this representation if, in the case of Security Deposit Documents, lease amendments, non-disturbance agreements, subordination, non-disturbance and attornment agreements, waivers and consents in favor of any Seller and estoppel certificates from landlords, Sellers shall have only delivered or made available to Buyer true and complete copies of only those of the same which are material). There are no material agreements, understandings or undertakings pertaining to the Leases, the Security Deposits, the Security Deposit Documents, the Sellers' leasehold interest in the Properties, the Lease Premises or Sellers' use or occupation of the Lease Premises or any portion thereof which are in Sellers' possession which have not been disclosed to Buyer or made available in the data room made available to Buyer prior to the date hereof.  To Sellers' Knowledge, no Person that is not a Seller has any right to possess, use or occupy the Lease Premises.

(d)  Each of the Leases is legal, valid, binding and enforceable against Sellers party thereto and, to Sellers' Knowledge, against each other party thereto, in accordance with its terms (except for any direct or indirect restriction, limitation or condition on Sellers' assignment of the Leases to Buyer which shall not be of any force or effect pursuant to the Approval Order), and, subject to the entry of the Approval Order and payment of the Cure Costs and other than solely as a result of the filing of the Bankruptcy Cases or the financial condition of Holdings or its Subsidiaries, to Sellers' Knowledge, no event of default currently exists thereunder by any counterparty thereto, and no event has occurred thereunder that after the giving of notice or the passage of any applicable cure period or both would constitute an event of default of Sellers or, to Sellers' Knowledge, any other party thereto, and no Seller has delivered or received any written notice from the other party to any such Lease of the termination or surrender thereof, and the Leases have not been amended, modified or supplemented, except to the extent, in each case as

63

FILED DATE: 5/19/2021 1:27 PM    2020L012403

described in this <u>Section 6.6(d)</u>, that the failure of the same to be true would not in the aggregate reasonably be expected to have a Material Adverse Effect.

(e)    There are no pending condemnation or eminent domain proceedings or any proceedings in lieu thereof against any of the Lease Premises, Owned Real Property or any part thereof, except to the extent that the failure of the same to be true would not in the aggregate have a Material Adverse Effect.

Section 6.7    <u>Taxes</u>.  There are no Encumbrances for Taxes on any of the Potential Acquired Assets other than statutory liens for current Taxes not yet delinquent or Taxes being contested in good faith. Each Seller has timely filed or caused to be timely filed with the appropriate Governmental Authority all material Tax Returns required to be filed by or on behalf of such seller with respect to or in connection with the Acquired Assets, the Properties, Business and the Assumed Liabilities.  Such Tax Returns are true, complete and accurate in all material respects.  Other than any Taxes the timely payment of which is precluded by the Bankruptcy Case, each Seller has paid and discharged in full all material amount of Taxes payable by or on behalf of such Seller.  None of the Acquired Assets include or consist of an interest in any partnership, corporation or other regarded entity for U.S. federal, state or local income tax purposes. No Tax Proceeding is pending or has been threatened in writing against or with respect to any Seller in connection with the Potential Acquired Assets, the Properties, the Seller's business or the Assumed Liabilities.  Each Seller has complied in all material respects with all applicable Laws (including information reporting requirements) relating to the collection, withholding and remittance of Taxes with respect to or in connection with the Acquired Assets, the Properties, the Seller's business and the Assumed Liabilities.

Section 6.8    <u>Brokers or Finders</u>.  Sellers have not incurred any obligation or liability, contingent or otherwise, for brokerage or finders' fees or agents' commissions or other similar payment in connection with this Agreement, the other Transaction Documents or the Transactions for which Buyer is or will become liable.

Section 6.9    <u>Employee and Employee Plan Matters</u>.

(a)    No Seller is party to any collective bargaining, works council or similar Contract with any labor organization, union or association.  No labor organization or group of employees of Sellers has made a pending demand for recognition or certification, and there are no representation or certification proceedings or petitions seeking a representation proceeding presently pending or, to the Knowledge of Sellers, threatened to be brought or filed, with the National Labor Relations Board or any other labor relations tribunal or authority.  There is no pending labor dispute, strike, controversy, slowdown, work stoppage or lockout pending or, to the Knowledge of Sellers, threatened, against the Business or any Seller in connection with the Business, except as would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.  There are no pending labor union grievances or unfair labor practices against any Seller, except as would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.

(b)    Sellers are in compliance in all material respects with all Employment Laws.  There are no pending employment-related lawsuits or administrative actions alleging violations of

64

FILED DATE: 5/19/2021 1:27 PM    2020L012403

Employment Laws against any Seller in state or federal court or pending with any Government Authority (including the U.S. Equal Employment Opportunity Commission, the U.S. Department of Labor or any equivalent state or local agencies charged with investigating or adjudicating employee claims concerning alleged violations of Employment Laws), except as would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.

(c)     Each Employee Plan that is intended to be a qualified under Section 401(a) of the Code has either received a favorable determination letter from the Internal Revenue Service or may rely on a favorable opinion letter issued by the Internal Revenue Service and, to the Knowledge of Sellers, nothing has occurred since the date of such determination or opinion letter that would reasonably be expected to adversely affect such qualification.  Each Employee Plan has been established, operated and administered in compliance with its terms and applicable Laws (including ERISA and the Code), except as would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.  All contributions or other amounts payable by Sellers with respect to each Employee Plan in respect of current or prior plan years have been timely paid or accrued in accordance with applicable accounting standards.

(d)     There are no actions, suits, audits or investigations by any Governmental Authority, termination proceedings or other claims (except routine claims for benefits payable under the Employee Plans) pending or, to the Knowledge of Sellers,  threatened, other than any such investigations, proceedings or claims that would not individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.

(e)     No Employee Plan is subject to Section 302 or Title IV of ERISA or Section 412, 430, or 4971 of the Code.  During the immediately preceding six (6) years, no Liability under Section 302 or Title IV of ERISA has been incurred by Sellers or their respective ERISA Affiliates or their respective predecessors that has not been satisfied in full, and no condition exists that presents a risk to Sellers or any such ERISA Affiliates of incurring any such Liability.

(f)     Neither Sellers nor any of their respective ERISA Affiliates has, at any time during the preceding six (6) years, contributed to, been obligated to contribute to or had any Liability (including any contingent Liability) with respect to any Multiemployer Plan or a plan that has two or more contributing sponsors, at least two of whom are not under common control, within the meaning of Section 4063 of ERISA, and no condition exists that presents a risk to Sellers or any such ERISA Affiliates of incurring any such Liability.

(g)     Neither the execution and delivery of this Agreement nor the consummation of the Transactions will (either alone or in conjunction with any other event): (i) entitle any current or former employee, officer, director or independent contractor of any Seller to any payment or benefit (or result in the funding of any such payment or benefit) under any Employee Plan; (ii) increase the amount of any compensation, equity award or other benefits otherwise payable by any Seller under any Employee Plan; (iii) result in the acceleration of the time of payment, funding or vesting of any compensation, equity award or other benefits under any Employee Plan; or (iv) result in any "excess parachute payment" (within the meaning of Section 280G of the Code) becoming due to any current or former employee, officer, director or independent contractor of any Seller.

Section 6.10    Intellectual Property.

(a)    Set forth in Schedule 6.10(a) is a correct and complete list of all issued Patents, registered Trademarks, registered Copyrights, Domain Names and Media Accounts, and as applicable, all applications for each of the foregoing, which are owned by a Seller as of the date hereof or as of the Closing Date, including for each registered, issued or applied-for item: (i) the registered owner (and, if different, the legal owner) of the item, (ii) the jurisdiction in which the item is issued or registered or which any application for issuance or registration has been filed, (iii) the respective issuance, registration or application number of such item, (iv) the date of application and issuance or registration of the item, as applicable, and (v) with respect to Domain Names, the relevant domain name registrar and paid-until date.

(b)    With respect to each item of Acquired Intellectual Property, including each item identified in Schedule 6.10(a):

(i)    Sellers exclusively own all right, title and interest in and to each such Acquired Intellectual Property free and clear of any Encumbrance and from any Contract that restricts Sellers' right to use the Acquired Intellectual Property, in each case, except Permitted Pre-Closing Encumbrances; for the avoidance of doubt, Schedule 6.10(b)(i) shall identify the co-owner(s) of each item of Acquired Intellectual Property and the agreements under which any Seller and the co-owner(s) share ownership of such Intellectual Property;

(ii)    the item is not subject to any outstanding material Order, not including any outstanding objection, rejection or refusal issued by the United States Patent and Trademark Office or the foreign equivalent thereof in connection with the prosecution or examination of a patent or trademark application; and

(iii)    to Sellers' Knowledge, each issued Patent and registered Trademark (excluding those registered Trademarks that are currently in the grace period) is valid, subsisting and enforceable and duly registered or issued, as applicable, in the name of a Seller.

(c)    Except as would not, individually or in the aggregate, reasonably be expected to be material to the Business or the ownership or operation of the Acquired Assets, to Sellers' Knowledge: (i) neither the operation of the Business nor the Acquired Assets (other than the Acquired Inventory) is infringing, misappropriating, diluting or violating or have, since the beginning of the Current Fiscal Year, infringed upon, misappropriated, diluted or otherwise violated, any Intellectual Property of any other Person, (ii) since the beginning of the Current Fiscal Year, no Seller has received any written charge, complaint, claim, demand, or notice (including in the form of "cease and desist" letters, indemnification claims or "invitation to license" offers) alleging any such infringement, misappropriation, dilution or violation, nor is there any Action pending or threatened relating to the same, and (iii) since the beginning of the Current Fiscal Year, no Person has initiated or threatened any Action challenging the validity, enforceability or ownership of any Acquired Intellectual Property.  To the Knowledge of Sellers, no Person has infringed upon, misappropriated, diluted or otherwise violated any of the Acquired Intellectual Property in any material respect.

66

FILED DATE: 5/19/2021 1:27 PM   2020L012403

(d)     To the extent any current or former officers, directors, employees, contractors and consultants of Sellers have made contributions for or on behalf of Sellers to the creation or development of any Intellectual Property that is material to the operations of Sellers, Sellers own the entire right, title and interest in such contributions.

(e)     Since the beginning of the Current Fiscal Year, there has been no material failure or other material substandard performance of any servers, computer hardware, networks, Software, databases, telecommunications systems, interfaces or related systems (collectively, "IT Systems") of Sellers, which has caused any material disruption to the operation of any of Sellers' businesses. Sellers have taken commercially reasonable (i) steps to provide for the backup and recovery of data and commercially reasonable disaster recovery plans, procedures and facilities of IT Systems included in the Potential Acquired Assets and, as applicable, have taken commercially reasonable steps to implement such plans and procedures and (ii) actions to protect the integrity and security of IT Systems included in the Potential Acquired Assets, the information stored thereon and Acquired Data from unauthorized use or access by third parties and from viruses and contaminants. Since the beginning of the Current Fiscal Year, and to the Knowledge of Sellers, since January 1, 2017, there have been no material unauthorized intrusions or breaches of the security of the IT Systems (including any ransomware attack), nor any material loss or breach of, or unauthorized access to, any data, in each case with respect to IT Systems or data that relate to the Potential Acquired Assets.

(f)     Sellers have taken commercially reasonable steps to protect and preserve the secrecy and confidentiality of all information and materials that derive independent economic value from not being generally known to the public and all Know-How of third parties which was provided to a Seller under confidentiality obligations. Sellers have not (A) deposited or agreed to deposit any source code of Software the rights to which are included in the Potential Acquired Assets into a source code escrow or (B) disclosed or agreed to disclose or delivered or agreed to deliver such source code to any Person, other than disclosures made pursuant to clause (B) to Persons who are subject to confidentiality obligations which restrict their use and disclosure of such source code to other Persons not bound by confidentiality restrictions, and no Person has any contractual right to receive such source code.

(g)     Except as would not, individually or in the aggregate, reasonably be expected to be material to the Business or the ownership or operation of the Acquired Assets, since the beginning of the Current Fiscal Year, and to the Knowledge of Sellers, since January 1, 2017, (i) Sellers have complied with all applicable Laws and contractual obligations relating to the collection, transfer, storage, disposal, use, processing and disclosure of the Customer Data included in the Acquired Data, and (ii) to the Knowledge of Sellers, there have been no losses or thefts of Customer Data or any other data held by or on behalf of Sellers, and in each case, included in the Acquired Data. Since January 1, 2016, Sellers have not received any unresolved written notice, request or written claim from any Person, including any Governmental Authority, concerning the material violation of any applicable Laws relating to the collection, transfer, storage, disposal, use, processing or disclosure of personally identifiable information, and, to the Knowledge of Sellers, no investigation by any Governmental Authority regarding a violation of such Laws is pending or threatened, in each case, solely as related to the Potential Acquired Assets.

67

Section 6.11   Material Contracts.

(a)   Schedule 6.11 sets forth all of the following Orders or Contracts to which any Seller is a party or by which it is bound and that are currently in effect (or by which the Potential Acquired Assets may be bound or affected) other than the Leases (collectively, whether or not disclosed on Schedule 6.11, the "Material Contracts"):

(i)   with any labor union or association representing any Employees of any Seller;

(ii)   for the sale after the date hereof of any Potential Acquired Asset owned or used by Sellers for consideration in excess of $15,000,000;

(iii)   relating to the pending acquisition by any Seller of any operating business or the capital stock of any other Person;

(iv)   which is an IP License with respect to which annual payments or consideration furnished by or to Sellers pursuant to such IP License with respect to the Business is in excess of fifteen million dollars ($15,000,000) in the Current Fiscal Year (other than, (A) in the case of Inbound IP Licenses, (x) off-the-shelf, non-customized computer programs, and (y) non-exclusive licenses granted by suppliers and other service providers of Sellers, in each case, to the extent necessary to use, sell and offer to sell the products and services of such suppliers or service providers, as applicable, and entered into in the Ordinary Course of Business; and (B) in the case of Outbound IP Licenses, non-exclusive licenses to customers, suppliers, vendors and other service providers of Sellers, in each case to the extent necessary for their respective use of the products and services of the Business or for the manufacture of products on behalf of Sellers or provision of services to Sellers in connection therewith and entered into in the Ordinary Course of Business);

(v)   which involve any Potential Transferred Agreement (other than purchase orders entered into in the Ordinary Course of Business) the performance of which involves payment by or to any of Sellers of consideration in excess of $15,000,000 over the Current Fiscal Year and which cannot be canceled by notice of ninety (90) days or fewer without penalty or payment; and

(vi)   which regard the employment, services, consulting, termination or severance from employment relating to or for the material benefit of any director, officer, employee, independent contractor or consultant of any Seller and require annual payments by any Seller in excess of $400,000.

(b)   Sellers have delivered to Buyer true and complete copies of such Material Contracts and any and all amendments, modifications, supplements, exhibits and restatements thereto and thereof in effect as of the date of this Agreement; provided, however, that Sellers shall not be required to deliver any Material Contract or amendment, modification, supplement, exhibit or restatement thereto that cannot be located notwithstanding the reasonable efforts of Sellers to locate such document if and only if such Material Contract is not an Assigned Agreement.

68

FILED DATE: 5/19/2021 1:27 PM          2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

(c)     Each Material Contract is in full force and effect, has not been amended, modified or supplemented and is the valid and binding obligation of the Seller party thereto, and to the Knowledge of Sellers, each other party thereto, in each case except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar Laws now or hereafter in effect relating to creditor's rights generally or general principles of equity.

(d)     If any Material Contract were to be designated by Buyer for assignment as an Assigned Agreement, upon entry of the Approval Order and payment of the Cure Costs, no Seller is in breach or in default under any Material Contract.

Section 6.12   Seller SEC Reports.  Since the beginning of the Current Fiscal Year, SHC has filed or furnished (as applicable) all forms, reports, schedules, statements and other documents with the SEC that have been required to be filed or furnished (as applicable) by it under applicable Laws prior to the date hereof (all such forms, reports, schedules, statements and other documents, as amended and supplemented, and together with all exhibits and schedules thereto, the "Seller SEC Reports"). As of its filing date (or, if amended or superseded by a filing prior to the date of this Agreement, on the date of such amended or superseded filing), (a) each Seller SEC Report complied as to form in all material respects with the applicable requirements of the Securities Act, the Exchange Act or the Sarbanes-Oxley Act, as the case may be (including, in each case, the rules and regulations promulgated thereunder), each as in effect on the date such Seller SEC Report was filed, and (b) each Seller SEC Report did not contain any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made therein, in light of the circumstances under which they were made, not misleading.

Section 6.13   Financial Statements.  The consolidated financial statements of SHC and its Subsidiaries included or incorporated by reference into the Seller SEC Reports have been prepared in accordance with GAAP consistently applied during the periods and at the dates involved (except as may be indicated in the notes thereto or, with respect to any unaudited interim financial statements, the absence of footnote disclosures and other presentation items and normal year-end audit adjustments or as permitted by the SEC's rules and forms), comply as to form in all material respects with applicable accounting requirements and the published rules and regulations of the SEC with respect thereto and fairly present in all material respects the consolidated financial position of SHC and its Subsidiaries as of the dates thereof and the consolidated results of operations and cash flows for the periods then ended.

Section 6.14   Litigation.  Except as would not reasonably be expected, individually or in the aggregate, to have a Material Adverse Effect, there are no Actions pending or, to the knowledge of Sellers, threatened before, or by any Governmental Authority against any Seller with respect to the Business.

Section 6.15   No Other Representations or Warranties; No Survival.  Except for the representations and warranties contained in this Article VI (subject to the disclosures set forth on the Schedules) and in the other Transactions Documents, as applicable, neither Sellers nor any other Person on behalf of Sellers makes any express or implied representation or warranty with respect to Sellers, its Subsidiaries, the Business, the Acquired Assets, the Assumed Liabilities, the Transactions or with respect to any information provided by or on behalf of Sellers to Buyer and Seller disclaims any other representations or warranties, whether made by Seller, any Affiliate of

69

FILED DATE: 5/19/2021 1:27 PM    2020L012403

Seller or any of their respective officers, directors, employees, agents or representatives.  Except for the representations and warranties contained in this <u>Article VI</u> and in the other Transactions Documents, as applicable,  the Sellers (a) expressly disclaim and negate any representation or warranty, expressed or implied, at common law, by statute, or otherwise, relating to the condition of the Acquired Assets (including any implied or expressed warranty of merchantability or fitness for a particular purpose, or of conformity to models or samples of materials) and (b) disclaim all liability and responsibility for any representation, warranty, projection, forecast, statement, or information made, communicated, or furnished (orally or in writing) to Buyer or its Affiliates or their respective representatives (including any opinion, information, projection, or advice that may have been or may be provided to Buyer by any Representative of Seller or any of its Affiliates).  It is expressly acknowledged and agreed that Sellers make no representations or warranties to Buyer regarding the success or profitability of the Business or with respect to the assets, liabilities or business of the Business (as defined in the SHIP Purchase Agreement).  The representations and warranties of Sellers will expire upon the Closing Date.

## ARTICLE VII

## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer hereby represents and warrants to Sellers that the statements contained in this <u>Article VII</u> are true and correct as of the date hereof:

Section 7.1    <u>Organization and Good Standing; Organizational Documents; Ownership</u>. Buyer is a limited liability company, duly organized, validly existing and in good standing under the laws of the State of Delaware.  Buyer has the requisite power and authority to own or lease and to operate and use its properties and the Acquired Assets and to carry on its business as now conducted and the Business.  Buyer has delivered to Seller true and correct copies of the organizational documents of Buyer in effect as of the date hereof.  All of the equity interests in Buyer as of the date hereof are owned of record and beneficially as set forth on <u>Schedule 7.1</u>.

Section 7.2    <u>Authority; Validity; Consents</u>.  Buyer has the requisite power and authority necessary to enter into and perform its obligations under this Agreement and the other Transaction Documents to which it is a party and to consummate the Transactions.  The execution, delivery and performance of this Agreement by Buyer and the consummation by Buyer of the Transactions have been duly and validly authorized by all requisite corporate, partnership or limited liability company actions in respect thereof.  This Agreement has been duly and validly executed and delivered by Buyer and each other Transaction Document required to be executed and delivered by Buyer at any time will be duly and validly executed and delivered by Buyer.  This Agreement and (when duly executed by Buyer) the other Transaction Documents constitute the legal, valid and binding obligation of Buyer, enforceable against Buyer in accordance with their respective terms, except as such enforceability is limited by bankruptcy, insolvency, reorganization, moratorium or similar Laws now or hereafter in effect relating to creditors' rights generally or general principles of equity.  Subject to requisite Bankruptcy Court approval, as applicable, Buyer is not and will not be required to give any notice to or obtain any consent from any Person in connection with the execution and delivery of this Agreement and the other Transaction Documents to which it is a party or the consummation or performance of any of the Transactions, except for (a) expiration or termination of any applicable waiting periods under the HSR Act and

70

(b) such notices, filings and consents, the failure of which to provide, make or obtain, would not, individually or in the aggregate, have a material adverse effect on Buyer's right or ability to consummate the Transactions. There are no consents of any Buyer Related Party required for the execution, delivery and performance of the Transaction Documents and the consummation of the Transactions, including for the satisfaction of any condition set forth in <u>Article X</u> or <u>Article XI</u>.

Section 7.3 <u>No Conflict</u>. When the consents and other actions described in <u>Section 7.2</u> have been obtained and taken, the execution and delivery of this Agreement and the other Transaction Documents and the consummation of the Transactions will not result in the breach of any of the terms and provisions of, or constitute a default under, or materially conflict with, or require consent or the giving of a notice under, or cause any acceleration of any material obligation of Buyer under (a) any organizational documents of Buyer, (b) any Order or (c) any Law, except to the extent any such default, conflict or consent would not affect in any material respect Buyer's ability to consummate the Transactions.

Section 7.4 <u>Financing; Availability of Funds</u>.

(a) Buyer shall deliver to Sellers concurrently herewith or prior to the execution of this Agreement a true, correct and complete copies of:

(i) an executed equity commitment letter (the "<u>Equity Commitment Letter</u>") to Buyer from ESL Investments, Inc. (the "<u>Sponsor</u>"), including all annexes, exhibits, schedules and other attachments thereto, dated as of the date hereof, pursuant to which the Sponsor has committed to provide Buyer with equity financing in the amount set forth therein (the "<u>Equity Financing</u>") for the purpose of funding the Transactions;

(ii) an executed mortgage loan commitment letter (the "<u>Real Estate Financing Commitment Letter</u>") to Buyer from the Cyrus Lender and the Sponsor, including all annexes, exhibits, schedules and other attachments thereto, dated as of the date hereof, pursuant to which Cyrus and the Sponsor have committed to provide Buyer with real estate mortgage financing in the amount set forth therein (the "<u>Real Estate Financing</u>") for the purpose of funding the Transactions;

(iii) the executed Cyrus Commitment Letter; and

(iv) the executed ABL Commitment Letter and the related fee letter (provided that fees, economics and other provisions which are customarily redacted in connection with acquisitions of this type may be redacted in a customary manner (to the extent any such provisions would not adversely affect the conditionality, enforceability, or availability of the amount of the Debt Financing necessary to consummate the Transactions)).

(b) As of the date hereof, the Commitment Letters are in full force and effect and have not been withdrawn or terminated or otherwise amended or modified in any respect. As of the date hereof, the Commitment Letters are a legal, valid and binding obligation of Buyer and, to the knowledge of Buyer, the other parties thereto (subject to applicable bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and similar Laws affecting creditors' rights generally and to general principles of equity). As of the date hereof, (x) there are no side letters or

71

FILED DATE: 5/19/2021 1:27 PM          2020L012403

other agreements, contracts or arrangements to which Buyer or any of its Affiliates is a party relating to the Financing that could affect the availability of the amount of the Financing funded on the Closing Date necessary to consummate the Transactions and (y) there are no conditions precedent or other contingencies related to the funding the Financing that could adversely affect the availability of the Financing or the timing of the Closing, other than as expressly set forth in the Commitment Letters. Buyer has fully paid any and all commitment fees or other fees required by the Commitment Letters to be paid by it on or prior to the date of this Agreement. Assuming the satisfaction of the conditions set forth in <u>Article X</u>, as of the date hereof, Buyer has no reason to believe that any of the conditions to the Financing in the Commitment Letters will not be satisfied. As of the date hereof, Buyer is not aware of any fact or occurrence that, with or without notice, lapse of time or both, would reasonably be expected to result in the Financing not being available on a timely basis in order to consummate the Transactions.

(c)     Assuming (i) the accuracy of the representations and warranties set forth in Article VI of this Agreement and (ii) the performance by Sellers of their respective obligations hereunder in a manner sufficient to satisfy the condition specified in <u>Section 10.2</u>, the net proceeds from the Financing will be sufficient to consummate the Transactions, including the payment by Buyer of all obligations pursuant to <u>this Agreement</u> and any fees and expenses payable by Buyer on the Closing Date (including in respect of the Debt Financing).

(d)     The obligations of Buyer under this Agreement are not contingent on the availability of the Debt Financing.

(e)     Buyer owns of record and beneficially obligations in the amount it is credit bidding under <u>Section 3.1(b)</u> and a sufficient amount of the aggregate obligations outstanding under the Second Lien Term Loan, Second Lien Line of Credit Facility and the Second Lien PIK Notes to direct the Second Lien Trustee to credit bid 100% of such amount as provided in <u>Section 3.1(b)(iv)</u>.

Section 7.5     <u>Litigation</u>.  There are no Proceedings pending or, to the knowledge of Buyer, threatened, or to which Buyer is otherwise a party before any Governmental Authority, that would affect in any material respect Buyer's ability to perform its obligations under this Agreement or any other Transaction Documents or to consummate the Transactions.

Section 7.6     <u>Brokers or Finders</u>.  Except for any brokers utilized by Buyer in the normal course of business (which brokers shall be compensated, if at all, by Buyer), neither Buyer nor any Person acting on behalf of Buyer has paid or become obligated to pay any fee or commission to any broker, finder, investment banker, agent or intermediary for or on account of the Transactions for which Sellers are or will become liable, and Buyer shall hold harmless and indemnify Sellers from any claims with respect to any such fees or commissions.

Section 7.7     <u>Condition of Acquired Assets; Representations</u>.

(a)     Notwithstanding anything contained in this Agreement to the contrary, Buyer acknowledges and agrees that Sellers are not making any representations or warranties whatsoever, express or implied, beyond those expressly given by Sellers in <u>Article VI</u> (subject to the disclosures set forth on the Schedules), and Buyer acknowledges and agrees that the Acquired Assets are being transferred on an "as is", "where is" basis.  Buyer acknowledges and accepts the

72

disclaimers made by Sellers in <u>Section 6.16</u>.   Buyer acknowledges that it has conducted to its
satisfaction its own independent investigation of the Business, the Acquired Assets and Assumed
Liabilities and, in making the determination to proceed with the Transactions, Buyer has relied
solely on the results of its own independent investigation.   In connection with Buyer's
investigation, Buyer has received or may receive from Sellers certain projections, forward-looking
statements and other forecasts and certain business plan information.   Buyer acknowledges that
Sellers make no representation or warranty with respect to forward-looking estimates, projections,
forecasts or plans (including the reasonableness of the assumptions underlying such estimates,
projections, forecasts or plans).   Buyer acknowledges that there are uncertainties inherent in
attempting to make such estimates, projections and other forecasts and plans, that Buyer is familiar
with such uncertainties, that Buyer is taking full responsibility for making its own evaluation of
the adequacy and accuracy of all estimates, projections and other forecasts and plans so furnished
to it (including the reasonableness of the assumptions underlying such estimates, projections,
forecasts or plans), and that Buyer shall have no claim against anyone with respect thereto.
Accordingly, Buyer acknowledges that Sellers make no representation or warranty with respect to
such estimates, projections, forecasts or plans (including the reasonableness of the assumptions
underlying such estimates, projections, forecasts or plans) or the success or profitability of the
Business.

Section 7.8    <u>No Survival</u>.  The representations and warranties of Buyer will expire upon
the Closing Date.

**ARTICLE VIII**

**ACTION PRIOR TO THE CLOSING DATE**

Section 8.1    <u>Operations</u>.

(a)    From the date hereof and prior to the Closing, except (i) as required by applicable
Law, (ii) as expressly contemplated by this Agreement or (iii) with the prior written consent of
Buyer (which consent shall not be unreasonably withheld, delayed or conditioned), Sellers
covenant and agree to comply with applicable Law in all material respects and to use commercially
reasonable efforts to conduct their business in the Ordinary Course of Business (taking into
account Sellers' status as debtors-in-possession), including (A) to maintain and preserve the
Potential Acquired Assets in their condition as of October 15, 2018 (including by using
commercially reasonable efforts to comply with instructions from Buyer as to the renewal (or lack
of renewal) of each Lease and other Potential Transferred Agreement that comes up for renewal),
other than reasonable wear and tear, casualty and condemnation (which shall be governed by
<u>Section 12.3</u>), and sales of Inventory in the Ordinary Course of Business, (B) by using
commercially reasonable efforts to cause the landlord under the respective Leases and any
applicable counterparty under the Outbound IP Licenses and any other Potential Transferred
Agreements to perform such parties' covenants, agreements and obligations under the respective
Leases, Outbound IP Licenses and other Potential Transferred Agreements and (C) managing
Inventory in the Ordinary Course of Business, including with regard to Inventory in transit and
Inventory located in distribution centers (and for the avoidance of doubt, Sellers shall not delay
taking delivery of Inventory that would be Acquired Inventory on the Closing Date if delivery of
such Inventory were managed in the Ordinary Course of Business prior to the Closing Date;

73

18-23538-shl   Doc 9507   Filed 02/08/19   Entered 02/08/19 16:44:31   Exhibit A
Pg 323 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

provided, that Sellers shall be permitted to reasonably manage the amount of Inventory in consultation with Buyer in order to satisfy the condition set forth in Section 10.9 and Section 10.10 as of the Closing).   Sellers shall promptly notify Buyer of (x) any notice or other written communication from any Person alleging that the consent of such Person is or may be required in connection with the consummation of the Transactions; and (y) the commencement of any material Proceedings related to the business conducted by Sellers, the Designations Rights or the Potential Acquired Assets; provided, however, that the delivery of any notice pursuant to this Section 8.1(a) will not (A) limit or otherwise affect any remedies available to Buyer or Sellers, or (B) be deemed to amend or supplement any Schedule or prevent or cure any misrepresentations or breach of representation or warranty.

(b)      Without limiting the generality of the foregoing, from the date hereof and prior to the Closing, Sellers covenant and agree:

(i)      not to sell, lease (as lessor), license (as licensor), transfer or otherwise dispose of, or mortgage or pledge, or voluntarily impose or suffer to be imposed any Encumbrance (other than Permitted Pre-Closing Encumbrances) on, any Potential Acquired Assets (excluding the Acquired Intellectual Property and Acquired Data, which are addressed below), other than sales of Inventory in the Ordinary Course of Business;

(ii)      not to assign, transfer, otherwise dispose of or convey any Patent, Trademark, registered or applied-for Copyright or Domain Name included in the Acquired Intellectual Property, or any other material Acquired Intellectual Property or any Acquired Data, except, with respect to the purging of any Acquired Data, as required by the consumer privacy ombudsman or the Bankruptcy Court; provided Sellers provide Buyer written notice describing the steps that Sellers plan to take in order to accomplish such requirement, at least five (5) Business Days prior to any response that would violate this covenant absent such requirement;

(iii)      not to allow to lapse, abandon, cancel, fail to renew or fail to continue to prosecute, protect or defend any (A) Patent, Trademark, registered or applied-for Copyright or Domain Name included in the Acquired Intellectual Property, or any other material Acquired Intellectual Property, in each case, other than registered Trademarks (x) that Sellers have ceased to use and intend not to resume use of and (y) that have entered the grace period for renewal, or (B) Acquired Data, except, with respect to the purging of any Acquired Data, as required by the consumer privacy ombudsman or the Bankruptcy Court; provided Sellers provide Buyer written notice describing the steps that Sellers plan to take in order to accomplish such requirement, at least five (5) Business Days prior to any response that would violate this covenant absent such requirement;

(iv)      not to license or grant any Person any rights to any Acquired Intellectual Property or any Acquired Data (other than, in each case, non-exclusive licenses granted to customers, vendors, suppliers and other service providers of Sellers to the extent necessary for their respective use of the products and services of Sellers or for the provision of services to Sellers in connection therewith and entered into in the Ordinary Course of Business);

74

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:31   Exhibit A
Pg 336 of 1450

(v)     not to modify any privacy policies, notices or statements in a manner that (A) limits the ability or right of a Seller to sell and transfer the Acquired Data to Buyer, or (B) limits the use of the Acquired Data by Buyer after the Closing;

(vi)    not to settle, pay, discharge or satisfy any material Action that, in each case, would constitute a Potential Acquired Asset (for the avoidance of doubt, other than any Excluded Assets) or Assumed Liability where such settlement, payment, discharge or satisfaction would impose any restrictions or limitations upon the operation of Sellers' business or any Acquired Assets, whether before or after the Closing Date;

(vii)   not to cancel or compromise any claim or waive or release any right related to any Potential Acquired Asset (for the avoidance of doubt, other than any Excluded Assets);

(viii)  except as required by Section 8.1(a) or permitted under Section 8.1(b)(iv) with respect to Outbound IP Licenses, not to amend, supplement, modify, terminate or enter into any Leases, Outbound IP Licenses (under which a Seller is a licensor) or other Potential Transferred Agreements;

(ix)    unless required by Law, not to take any action, without the consent of Buyer (which may not be unreasonably delayed, conditioned or denied), with respect to Taxes or Tax matters that is not in the Ordinary Course Of Business and that (A) would materially adversely affect the Potential Acquired Assets, the Properties, Business and the Assumed Liabilities or (B) otherwise could reasonably be expected to increase the Tax Liability of Buyer or any of its Affiliates;

(x)     to use commercially reasonable efforts to cause any applicable counterparty under the IP Licenses included in the Assigned Agreements to perform such party's covenants, agreements and obligations under such IP Licenses, including with respect to quality control;

(xi)    not to grant or terminate any other interests in any Potential Acquired Asset (other than sales of Inventory in the Ordinary Course of Business);

(xii)   not to seek or obtain an order approving rejection of a Lease or other Potential Transferred Agreement;

(xiii)  not to issue any gift cards, gift certificates, merchandise credits, return credits, customer membership or customer loyalty discount programs, coupons, groupons or other similar credits or programs at a discount or pursuant to any promotion that would result in any Seller receiving less than face value in such issuance;

(xiv)   not to (A) increase the annual level of compensation payable or to become payable by any Seller to any director or officer of any Seller, except in the Ordinary Course of Business, (B) increase the annual level of compensation payable or to become payable by any Seller to any other employee of any Seller, except in the Ordinary Course of Business, (C) grant any unusual or extraordinary bonus, benefit or other direct or indirect

75

18-23538-shl   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 325 of 1450

compensation to any director, officer or employee except as authorized by the Bankruptcy Court, (D) increase the coverage or benefits available under any (or create any new) Employee Plan (E) take any action (other than a termination of employment in accordance with clause (xiv) of this Section 8.1(b)), whether in writing or otherwise, that has or could reasonably be expected to have the effect of increasing in any manner the liability of the Buyer or any Seller for any severance or other post-termination payments or benefits otherwise payable or due to any individual or group of individuals, or otherwise enhancing, or accelerating the timing of, such payment or benefit or accelerating the funding thereof, or (F) enter into any employment, deferred compensation, severance, consulting, noncompetition or similar agreement to which any Seller is a party or involving a director, officer or employee of any Seller, except, in each case, as required by applicable Law from time to time in effect or by any of the Employee Plans as in effect on the date hereof;

(xv)     not to terminate the employment of any director, officer or employee of any Seller other than in the Ordinary Course of Business;

(xvi)    not to enter into, modify or terminate any labor or collective bargaining agreement or, through negotiation or otherwise, make any commitment or incur any liability to any labor organization with respect to any Potential Acquired Asset;

(xvii)   not to permit Sears Re to (A) pay any dividend or distribution, (B) issue any debt or equity securities or (C) take any of the actions described in this Section 8.1(b) with respect to its assets or Contracts; and

(xviii)  not to enter into any agreement or commitment to take any action prohibited by this Section 8.1(b).

(c)      Without in any way limiting any Party's rights or obligations under this Agreement, the Parties understand and agree that (i) nothing contained in this Agreement shall give Buyer, directly or indirectly, the right to control or direct the operations of Sellers, Sellers' business or the Properties prior to the applicable Closing Date and (ii) prior to the Closing Date, Sellers shall exercise, consistent with, and subject to, the terms and conditions of this Agreement, complete control and supervision over the operations of Sellers, the Business and the Properties to the extent permitted by Law, including taking into account Sellers' status as debtors-in-possession in the Bankruptcy Case.  Notwithstanding anything herein to the contrary, Sellers shall be permitted to take all actions that are necessary or desirable to comply with the WARN Act, including providing any notices required under the WARN Act, and no such actions shall constitute a violation of this Section 8.1.

Section 8.2    Bankruptcy Court Matters.

(a)      Reserved.

(b)      Bankruptcy Court Filings and Approvals.

(i)      Buyer agrees that it will promptly furnish such affidavits or other documents or information for filing with the Bankruptcy Court as are reasonably requested by Sellers

FILED DATE: 5/19/2021 1:27 PM      2020L012403

to assist Sellers in obtaining entry of the Approval Order, including a finding of adequate assurance of future performance by Buyer. Sellers shall provide Buyer with advance drafts of any motions, pleadings or Bankruptcy Court filings relating to the sale of the Acquired Assets or the Approval Order no later than two (2) Business Days prior to the date Sellers intend to file such motion, pleading or Bankruptcy Court filing to the extent practicable (or, to the extent not practicable, as soon as reasonably practicable prior to the filing of such pleading). Buyer may file or join in any motion, pleading or Bankruptcy Court filing in support or seeking approval of, and reply to any response or objection to, the sale of the Acquired Assets hereunder, and the Approval Order.

(ii)     Sellers shall file such motions or pleadings as may be appropriate or necessary to assume and assign the Assigned Agreements and to determine the amount of the Cure Costs; provided, that subject to Section 2.7, Section 2.9 and Section 5.2, nothing herein shall preclude Sellers from filing such motions, including from and after the Petition Date, to reject any Contracts that are not Assigned Agreements.

(iii)     This Agreement is subject to approval by the Bankruptcy Court and the consideration by Sellers of higher or better Competing Transactions.

(iv)     Sellers and Buyer acknowledge that Buyer (or any applicable Assignee) must provide adequate assurance of future performance under the Assigned Agreements to be assigned by Sellers, and Buyer hereby agrees to provide such adequate assurance to the extent required under the Bankruptcy Code and the Bidding Procedures Order, including by demonstrating financial wherewithal to pay Cure Costs.

(v)     Buyer and Sellers shall reasonably cooperate as requested by the consumer privacy ombudsman appointed in these Bankruptcy Cases and shall use commercially reasonable efforts to take actions recommended by such ombudsman pursuant to 11 U.S.C. § 332 in any report authored by such ombudsman and approved or adopted by the Bankruptcy Court in the Approval Order.

(vi)     After entry of the Approval Order, Sellers shall not take any action which is intended to, or fail to take any action the intent of which failure to act is to, result in the reversal, voiding, modification or staying of the Approval Order.

(vii)     If applicable, Sellers shall cause any plan of reorganization or liquidation approved in the Bankruptcy Cases to permit assumption  of Sellers' executory contracts and unexpired leases of real property through the end of the Designation Rights Period.

(c)     Back-Up Bidder. Sellers and Buyer agree that, in the event that Buyer is not the winning bidder at the Auction, if (i) Buyer submits the second highest or second best bid at the Auction or the terms of this Agreement constitute the second highest or best bid, and (ii) Sellers give written notice to Buyer on or before the tenth (10th) Business Day prior to the Outside Date, stating that Sellers (A) failed to consummate the sale of the Acquired Assets with the winning bidder, and (B) terminated the purchase agreement with the winning bidder, Buyer shall promptly consummate the Transactions upon the terms and conditions as set forth herein, including the Purchase Price.

FILED DATE: 5/19/2021 1:27 PM     2020L012403

(d)     Bankruptcy Milestones. The Parties will use reasonable best efforts to comply with the following milestones:

(i)     to obtain entry of the Approval Order by the Bankruptcy Court on or before February 8, 2019 (subject to Bankruptcy Court availability).

(ii)     to close the Transactions on or before February 19, 2019.

Section 8.3     Registrations, Filings and Consents.

(a)     Subject to the Parties' additional obligations under this Section 8.3, each Party shall use its respective reasonable best efforts and, as applicable, cooperate with the other Parties, to take, or cause to be taken, all appropriate action, and to do, or cause to be done, all things reasonably necessary, proper or advisable under Laws to consummate and make effective the Transactions, including using its respective reasonable best efforts (i) to fulfill all conditions to the other Party's obligation to effect the Closing in Article X, (ii) to execute, acknowledge and deliver in proper form any further documents, certificates, agreements and other writings, and take such other action as such other Party may reasonably require, in order to effectively carry out the intent of the Transaction Documents, (iii) to make or cause to be made all registrations, filings, notifications, submissions and applications with, to give all notices to and to obtain any consents, governmental transfers, approvals, orders, qualifications and waivers from any Governmental Authority necessary for the consummation of the Transactions and (iv) not take any action that could reasonably be expected to have the effect of delaying, impairing or impeding the receipt of any such consents, approvals or waivers.

(b)     The Parties shall duly file with the FTC and the Antitrust Division the notification and report forms (each an "HSR Filing"), that may be required under the HSR Act necessary to consummate the Transactions, as promptly as possible and in no event later than January 18, 2019, including with respect to Buyer causing to be filed by its Affiliates and interest holders any HSR Filings necessary to consummate the Transactions.  If an HSR Filing is required, each Party shall cooperate with the other Party to the extent necessary to assist the other Party in the preparation of its HSR Filing, to request early termination of the waiting period required by the HSR Act with respect to the HSR Filing and, if requested, to promptly amend or furnish additional information under its HSR Filing. Each Party shall as practicable comply with any Laws that are applicable to any of the Transactions and pursuant to which any consent, approval, order or authorization of, or registration, declaration or filing with, any Governmental Authority is necessary.  Subject to applicable Laws and the preservation of any applicable attorney-client privilege, the Parties shall promptly furnish to each other all such information as is necessary to prepare any such registration, declaration or filing. The Parties shall have joint decision-making authority with respect to the strategy for obtaining any necessary consents, approvals, orders or authorizations from any Governmental Authority, including under any Antitrust Laws.  Neither Buyer nor Sellers, nor their respective counsel, shall independently participate in any substantive call or meeting with any Governmental Authority regarding the Transactions without giving the other Party or its counsel prior notice of such call or meeting and, to the extent permitted by such Governmental Authority, the opportunity to attend and/or participate.  In furtherance of the foregoing and to the extent permitted by applicable Law: (i) each Party shall notify the other, as far in advance as practicable, of any material or substantive communication or inquiry it or any of

78

its Affiliates or Subsidiaries intends to make with any Governmental Authority relating to the matters that are the subject of this <u>Section 8.3</u>; (ii) prior to submitting or making any such communication or inquiry, such Party shall provide the other Party and its counsel a reasonable opportunity to review, and shall consider in good faith the comments of the other Party in connection with, any such communication or inquiry; (iii) promptly following the submission or making such communication or inquiry, provide the other Party with a copy of any such communication or inquiry, if in written form; and (iv) consult with the other Party in connection with any inquiry, hearing, investigation or litigation by, or negotiations with, any Governmental Authority relating to the Transactions, including the scheduling of, and strategic planning for, any meetings with any Governmental Authority relating thereto. In exercising the foregoing cooperation rights, Buyer and Sellers each shall act reasonably and as promptly as reasonably practicable. Notwithstanding the foregoing, materials provided pursuant to this <u>Section 8.3</u> may be reasonably redacted (A) to remove references concerning the valuation of the Transactions, (B) as necessary to comply with contractual arrangements, (C) as necessary to address reasonable privilege concerns or (D) as otherwise required by Law. The Parties shall bear their own costs and expenses incurred with respect to the preparation of their respective filings contemplated in this <u>Section 8.3(b)</u>, <u>provided</u>, <u>however</u>, that Buyer shall pay the filing fees, if any, in connection therewith.

(c)      Each of Seller and Buyer agrees that it will (and will cause its Affiliates to), if necessary to enable the Parties to consummate the Transactions, use reasonable best efforts to defend against any Actions that would prevent, delay or challenge the Transaction Documents or the consummation of the Transactions, including by seeking to vacate or reverse any temporary restraining order, preliminary injunction or other legal restraint or prohibition entered or imposed (or which becomes reasonably foreseeable to be entered or imposed) by any court or other Governmental Authority that is not yet final and nonappealable, in order that the Transactions shall occur as promptly as reasonably practicable and in any event no later than the Outside Date.

(d)      Buyer shall, at Buyer's sole cost, take, or cause to be taken, any and all actions and do, or cause to be done, any and all things necessary, proper or advisable to avoid, eliminate and resolve each and every impediment and obtain all Consents required to permit the satisfaction of the conditions in <u>Section 10.4</u>, <u>Section 10.5</u>, <u>Section 11.3</u>, and <u>Section 11.4</u>, as promptly as reasonably practicable and in any event no later than the Outside Date, including by offering and causing its Affiliates to offer to: (i) sell or otherwise dispose of, or hold separate and agree to sell or otherwise dispose of specific assets or categories of assets or businesses constituting the Business or any of the Acquired Assets or any other assets or businesses owned by Buyer or its Affiliates; (ii) terminate any existing relationships and contractual rights and obligations of Buyer or its Affiliates including, after the Closing, the Business or any of the Acquired Assets; (iii) amend or terminate such existing licenses or other intellectual property agreements and to enter into such new licenses or other intellectual property agreements; (iv) take any and all actions and make any and all behavioral commitments, whether or not they limit or modify Buyer's or its Affiliates' rights of ownership in, or ability to conduct the business of, one or more of its or their operations, divisions, businesses, product lines, customers or assets, including, after the Closing, the Business or any of the Acquired Assets; and (v) enter into agreements, including with the relevant Governmental Authority, giving effect to the foregoing clauses (i) through (iv) (such actions in clauses (i) through (v), "<u>Antitrust Actions</u>"); <u>provided</u>, that such Antitrust Actions are conditioned

79

upon and become effective only from and after the Closing. In furtherance of the foregoing, prior to the Closing, Buyer shall keep Sellers reasonably informed of all matters, discussions and activities relating to any of the matters described in or contemplated by clauses (i) through (v) of this Section 8.3(d).

(e)    Notwithstanding anything herein to the contrary, neither Buyer nor Seller, without the other Party's prior written consent, shall (i) enter into any timing, settlement or similar agreement, or otherwise agree or commit to any arrangement that would have the effect of extending, suspending, lengthening or otherwise tolling the expiration or termination of the waiting period applicable to the Transactions under the HSR Act or any Antitrust Laws, or (ii) enter into any timing or similar agreement, or otherwise agree or commit to any arrangement, that would bind or commit the Parties not to complete the Transactions (or that would otherwise prevent or prohibit the Parties from completing the Transactions).

Section 8.4    Financing Assistance; Additional Information.

(a)    From the date hereof to earlier of (x) the date this Agreement is terminated in accordance with its terms and (y) the Closing Date, Sellers shall provide to Buyer and shall use reasonable best efforts to cause its officers, employees and advisors to provide to Buyer, such cooperation as is customary for financings of the type contemplated by the Debt Commitment Letters and as is reasonably requested by Buyer in connection with arranging and obtaining the Debt Financing, which cooperation includes using reasonable best efforts to (i) cause the participation by one or more representatives of senior management in a reasonable number of meetings, due diligence sessions and presentations upon reasonable prior notice and in reasonably convenient locations, (ii) reasonably assist Buyer and the ABL Financing Sources with the preparation of (A) one or more customary bank information memoranda (and, to the extent necessary, additional information memoranda that do not include material non-public information), (B) customary materials for rating agency presentations, (C) syndication materials, (D) lender presentations and (E) other customary marketing and similar documents, each in connection with the syndication and marketing of the ABL Financing (including customary authorization and representation letters), (iii) furnish to Buyer and the ABL Financing Sources, on a timely basis, the Required Information and such other customary financial and other pertinent information regarding Sellers (including information regarding the business, operations and financial projections thereof) as may be reasonably requested by Buyer to assist in the preparation of a customary confidential information memorandum or other customary information documents used in financings of the type contemplated by the ABL Commitment Letter, (iv) cooperate with the Buyer's and the ABL Financing Sources' reasonable evaluation of the applicable Sellers for the purpose of establishing collateral arrangements (including conducting, at the Buyer's sole cost and expense, appraisals and field audits contemplated by the ABL Commitment Letter and providing information reasonably requested with respect to inventory, receivables, cash management and accounting systems, deposit accounts and related assets and procedures), in each case, to the extent customary in asset-based revolving credit facilities (including by providing Buyer and the Financing Sources with reasonable and customary access to the books and records, properties and applicable representatives of Sellers), (v) (A) reasonably cooperate with the marketing efforts of Buyer and the Financing Sources for any portion of the Debt Financing and (B) ensure that the syndication efforts for the ABL Financing benefit materially from the existing

80

FILED DATE: 5/19/2021 1:27 PM                    2020L012403

FILED DATE: 5/19/2021 1:27 PM        2020L012403

banking relationships of the Sellers, (vi) permit the use by Buyer and its Affiliates of the Sellers' logos and/or Trademarks included in the Acquired Assets in connection with the syndication of the Debt Financing, provided that such logos and/or marks are used in a manner that is not intended, or reasonably likely, to harm or disparage Sellers, (vii) cause the taking of corporate actions by the Sellers that are necessary to permit the consummation of the Financing on the Closing Date as are reasonably requested by Buyer, (viii) facilitate the release and termination, effective upon the Closing, of liens and security interests, including obtaining customary release letters (including delivery of draft Payoff Letters at least three (3) Business Days prior to the anticipated Closing Date), lien terminations and releases and other similar documents as may reasonably be requested by Buyer and (ix) execute and deliver any documents as reasonably requested by Buyer as are customary in financings of such type and as are accurate, and otherwise facilitate the pledging of and granting, recording and perfection of security interests in share certificates, securities and other collateral (including releasing any Liens on the Acquired Assets in connection with any existing indebtedness of Sellers) and the obtaining of appraisals, surveys and title insurance as reasonably requested by Buyer; it being understood and agreed that (A) no such corporate action will take effect prior to the Closing and (B) any such corporate action will only be required of the directors, members, partners, managers or officers of the Sellers who retain their respective positions as of the Closing; provided that no obligation of Sellers shall be effective until the Closing Date; provided, however, that nothing herein shall require Sellers to (A) waive or amend any terms of this Agreement or cause any condition to Closing set forth in Article X to not be satisfied or otherwise cause any breach of this Agreement, (B) authorize, execute, and/or deliver any certificate, document or instrument pursuant to the Debt Financing that will be effective prior to the Closing Date, (C) take any action that would conflict with any applicable Law, the organizational documents of Sellers or result in the contravention of, or would reasonably be expected to result in the violation or breach of, or default under, any Material Contract to which any of Sellers is a party or (D) prepare, assist in the preparation of, or otherwise provide any information that is not in the possession or control of Sellers or any other information to the extent such disclosure (x) may result in a waiver of attorney-client privilege, work product doctrine or similar privilege, provided that Sellers shall use reasonable best efforts to provide such information in a form or manner that would not waive such legal privilege (including by redacting or otherwise not disclosing any portion thereof the disclosure of which would jeopardize such privilege) or (y) would violate any confidentiality obligation of Sellers.

(b)      Sellers shall not be required to pay any commitment fees or other fees or make any other payment (other than reasonable out-of-pocket costs) or incur any other liability or provide or agree to provide any indemnity in connection with the Debt Financing or any of the foregoing that would be effective prior to the Closing. Buyer shall promptly reimburse Sellers for all out-of-pocket costs and expenses (including attorneys' fees) incurred by Sellers or any of their Affiliates in connection with the cooperation of the Sellers contemplated by this Section 8.4 and shall indemnify and hold harmless Sellers, their Affiliates and their respective representatives from and against any and all losses suffered or incurred by any of them of any type in connection with the arrangement of any Financing and any information used in connection therewith, except in the event such loss or damage arises out of or results from the gross negligence, willful misconduct or bad faith by Sellers or their Affiliates or, in each case, their respective representatives.

Section 8.5      Financing.

18-23538-shl    Doc 9607-1    Filed 07/08/19    Entered 07/08/19 16:31:32    Exhibit A
Pg 331 of 1450

(a)    Buyer shall use its reasonable best efforts to take, or cause to be taken, all actions and to do, or cause to be done, as promptly as possible, all things necessary, advisable or desirable to (i) satisfy on a timely basis all terms, conditions, representations and warranties applicable to Buyer set forth in the Commitment Letters (including any flex provisions) (or, if deemed advisable by Buyer, seek a waiver of conditions applicable to Buyer contained in the Commitment Letters) (and, for the avoidance of doubt, this clause (i) shall have no effect where the failure to satisfy such terms, conditions, representations and warranties results directly from the Sellers' failure to furnish the Required Information or breach of their obligations hereunder in a manner that would cause the condition in <u>Section 10.2</u> not to be satisfied), (ii) maintain in effect the Commitment Letters through the Closing Date (as such may be amended, supplemented, modified and replaced in accordance with the terms hereof), (iii) negotiate and enter into Debt Financing Documents and enforce its rights under the Debt Commitment Letters (other than pursuant to any Action taken prior to the satisfaction or waiver of the conditions set forth in Article X and Article XI hereunder) and (iv) upon satisfaction of the conditions set forth in the Commitment Letters, consummate the Financing at the Closing; <u>provided</u>, however, that, if all or any portion of funds in the amounts and on the terms set forth in the Debt Commitment Letters become, or would be reasonably expected to become, unavailable to Buyer on the terms and conditions set forth therein (including any "flex" provisions related thereto) and such portion is reasonably required to fund the transactions contemplated by this Agreement and all fees, expenses and other amounts contemplated to be paid (or caused to be paid) by Buyer pursuant to this Agreement, in each case other than as a result of a breach by Sellers of any representation, warranty or covenant contained in this agreement in a manner that would cause the conditions in <u>Section 10.1</u> or Section 10.2 not to be satisfied, Buyer shall use its reasonable best efforts to obtain substitute alternative financing (the "<u>Alternative Financing</u>") for all or such portion of such funds to the extent so unavailable, (i) in amounts and otherwise on terms and conditions no less favorable to Buyer than as set forth in the applicable Debt Commitment Letter and (ii) that does not expand upon the conditions precedent or contingencies to funding the Financing on the Closing Date as set forth in the applicable Debt Commitment Letter or Debt Financing Documents with respect to the Alternative Financing; <u>provided</u>, <u>further</u>, that, if Buyer proceeds with Alternative Financing, it shall be subject to the same obligations with respect to such Alternative Financing as set forth in this <u>Section 8.5</u> as with respect to the Debt Financing. For the avoidance of doubt, references to the "<u>Debt Commitment Letter</u>" shall include such document as permitted or required by this <u>Section 8.5</u> for such Alternative Financing from the time of such substitution.

(b)    Buyer shall provide prompt written notice of (i) any material breach or default (or any event or circumstance that, with or without notice, lapse of time or both, would reasonably be expected to give rise to any material breach or default) by Buyer under the Commitment Letters, or to the knowledge of Buyer, any other party to the Commitment Letters or definitive agreement related thereto and (ii) receipt by Buyer of any written notice or other written communication from any party to the Commitment Letters with respect to any actual or threatened material breach, default, termination or repudiation by any party to the Commitment Letters or any definitive agreement related thereto or any provision of the Financing or any definitive agreement related thereto (including any proposal by any Financing Source to withdraw, terminate, reduce the amount of financing necessary to consummate the transactions contemplated hereby or materially delay the timing of the financing contemplated by Commitment Letters). Buyer shall not consent to (i) any replacement, amendment or waiver of any provision or remedy under any Commitment

82

FILED DATE: 5/19/2021 1:27 PM    2020L012403

Letter (including, for the avoidance of doubt, any provision of any fee letter or engagement letter related thereto) without Sellers' prior written consent if such replacement, amendment or waiver (A) reduces the aggregate amount of the Financing (including by changing the amount of fees to be paid or original issue discount thereof, unless, in the case of the Debt Commitment Letters, any such change is matched from Alternative Financing to the extent required or permitted pursuant to Section 8.5(a)), unless such portion is not reasonably required to fund the transactions contemplated by this Agreement or (B) imposes new or additional conditions precedent or changes the conditions precedent to the Financing or otherwise changes the terms of the Financing, in each case, in a manner that would reasonably be expected to delay in any material respect or prevent the Closing or make the funding of the Financing materially less likely to occur or adversely impact in any material respect Buyer's ability to enforce its rights under any such Commitment Letter or to consummate the transactions contemplated hereby (for the avoidance of doubt, it is understood that, subject to the limitations set forth in this Section 8.5, Buyer may amend the Debt Commitment Letters to add lenders, lead arrangers, bookrunners, syndication agents or similar entities, but if and only if the addition of such additional parties, individually or in the aggregate, and together with any amendments or modifications to such Debt Commitment Letter in connection therewith, would not result in the occurrence of a modification to such Commitment Letter prohibited by this clause (i)) and (ii) termination of such Commitment Letter prior to the Closing Date (unless, in the case of the Debt Commitment Letter, Buyer has arranged for Alternative Financing to the extent permitted or required by Section 8.5(a)).  Buyer shall provide to Sellers copies of any commitment letter associated with a replacement Financing or Alternative Financing as well as any amendment or waiver of any Commitment Letter. For the avoidance of doubt, references to "Commitment Letter" shall include as such Commitment Letter is modified in accordance with this Section 8.5(b) from the time of such modification.

Section 8.6    Trade Payables.  The Sellers shall make all payments in respect of payables of the Business (including rent payments and sales taxes) arising from the date of this Agreement until the Closing Date in all material respects on a timely basis and shall otherwise manage the accounts payable of the business in accordance with the Sellers' cash management policies and practices (as in effect prior to the Petition Date) in the Ordinary Course of Business; provided that Seller's obligations pursuant to this Section 8.6 with respect to taxes are limited to taxes that are not Assumed Liabilities. Within fourteen (14) days following the date hereof, the Sellers shall deliver to Buyer an initial report containing an aging report for all payables of the Business allocated by vendor. For the period following the date of this Agreement until the Closing Date, Sellers shall make their employees and advisors (including the Chief Restructuring Officer) reasonably available (during business hours) upon reasonable advance notice from Buyer to answer any questions Buyer may have, and provide such additional information Buyer may reasonably request, with respect to any accrued payables of the Business.

Section 8.7    SHIP Purchase Agreement.  From the date hereof until the earlier of (a) the SHIP Closing or (b) any Termination (as defined in the SHIP Purchase Agreement), Sellers shall not amend or modify the SHIP Purchase Agreement or waive any rights under the SHIP Purchase Agreement without the prior written consent of Buyer.

Section 8.8    Transition Services Agreement; Management Services Agreement.

(a)     The Parties shall work together in good faith and use their respective reasonable best efforts to agree as to the terms of, and execute, a transition services agreement pursuant to which Sellers shall provide Buyer and Buyer shall provide Sellers, as applicable, with certain services for a transitional period following the Closing Date.

(b)     To the extent permitted by applicable Law, during the Management Services Period, the applicable Sellers shall remain the manager, controller or operator of each Acquired Property, Occupancy Leased Premise and Sparrow Property solely to the limited extent required for any Permit applicable to such Acquired Property, Occupancy Leased Premise or Sparrow Property (in the case of the Sparrow Properties, solely to the extent of any Sellers' rights related to the Sparrow Properties) to remain effective  (the "Management Services").  Notwithstanding the foregoing, to the fullest extent permitted by applicable Law, each of the Sellers hereby appoints Buyer and its Affiliated Designees as agent of such Seller to manage, control and operate each of (i) the Acquired Properties, (ii) Occupancy Leased Premises and (iii) the Sparrow Properties (in the case of the Sparrow Properties, solely to the extent of any Sellers' rights related to the Sparrow Properties) at which Management Services are being provided (collectively, the "Managed Properties").  Pursuant to their appointment as Sellers' agent, Buyer and its Affiliated Designees shall be entitled to manage, control and operate each of the Managed Properties as they see fit in their sole discretion and collect and retain all revenues generated by each Managed Property.  In furtherance thereof, the Parties acknowledge and agree that Sellers shall have no economic interest in the Managed Properties other than the right to receive the Management Services Reimbursements.  As consideration for the provision of the Management Services, Buyer shall reimburse Sellers, or cause Sellers to be reimbursed, for any reasonable and documented out-of-pocket costs, fees and expenses incurred at any time in providing the Management Services, including any income and other taxes incurred by Seller and its Subsidiaries in respect of the payment and receipt of such reimbursement (the "Management Services Reimbursements") and indemnify the Sellers from any Liability arising from the provision of the Management Services, except for any such Liability arising from gross negligence or willful misconduct of the Sellers.  For the avoidance of doubt, all employees of the Managed Properties shall be employed by Buyer or its Affiliated Designee and no Seller shall have any authority to take action as an employer with respect to any such employee or to enter into any Contract on behalf of Buyer or any Affiliated Designee.

Section 8.9    Sparrow Rent.  Sellers shall pay on the Closing Date all accrued and unpaid rent to each of SRC O.P. LLC, SRC Facilities LLC and SRC Real Estate (TX), LLC that are not "dark" stores.  All parties' rights with respect to rent at the "dark" stores shall be reserved.

## ARTICLE IX

## ADDITIONAL AGREEMENTS

Section 9.1    Access to Information.  Sellers agree that, prior to the Closing Date, Buyer shall be entitled, through its officers, employees and representatives (including legal advisors, Financing Sources, consultants, appraisers and accountants), to make such investigation of the properties (including non-invasive environmental site assessments), businesses and operations of Sellers' businesses (including any of the Properties) and such examination of the Books and Records of Sellers' businesses, the Acquired Assets and the Assumed Liabilities as is reasonable

84

(and reasonably requested) and to make extracts and copies of such Books and Records. Any such investigation and examination shall be conducted in a reasonable manner (and shall not unreasonably interfere with the operations of Sellers), during regular business hours upon reasonable advance notice and under reasonable circumstances and shall be subject to any applicable restrictions under applicable Law. Sellers shall cause the officers, employees, consultants, agents, accountants, attorneys and other representatives of Sellers to reasonably cooperate with Buyer and Buyer's representatives in connection with such investigation and examination, and Buyer and Buyer's representatives shall reasonably cooperate with Sellers and Sellers' representatives and Buyer and Buyer's representatives shall, at all times and at the discretion of Sellers, take all reasonable measures to minimize any disruption to Sellers' business. Notwithstanding anything herein to the contrary, no such investigation or examination shall be permitted to the extent that it would (x) require any Seller to disclose information subject to attorney-client privilege, provided that Sellers shall use reasonable best efforts to provide information in response to such an investigation or examination in a form or manner that would not waive such attorney-client privilege (including by redacting or otherwise not disclosing any portion thereof the disclosure of which would jeopardize such privilege) or (y) conflict with any confidentiality obligations to which the Sellers or any of their Subsidiaries are bound.

Section 9.2   Tax-Related Undertakings and Characterization of the Transaction.

(a)   Unless Buyer makes the election under Section 2.12(b) to treat all the transactions described in Article II as Designated Sale Transactions (resulting in no transfer of Sellers' Tax attributes to Buyer): (1) Buyer shall provide to Sellers detailed instructions as to steps to take (or not take) in order to secure and preserve the qualification of any of the transactions set forth in this Agreement as a Tax Reorganization (except if and to the extent Buyer determines otherwise, in accordance with Section 2.12(b), in respect of a given transaction or a particular Seller) and to achieve the Tax Result, including, without limitation, with respect to (i) repayment, cancellation or settlement of, or other actions with respect to, intercompany accounts after the approval of the Bankruptcy Plan and on or before the Closing Date, (ii) the merger of any of Sellers' Subsidiaries with another Sellers' Subsidiaries after the approval of the Bankruptcy Plan and on or before the Closing Date or conversion of any of Sellers' Subsidiaries into limited liability companies with effect after the approval of the Bankruptcy Plan and on or before the Closing Date, (iii) the filing of any Tax elections to treat any such Subsidiaries as disregarded entities for U.S. federal income tax purposes with effect after the approval of the Bankruptcy Plan and on or before the Closing Date or otherwise taking such action to establish that such Subsidiaries have liquidated for tax purposes after the approval of the Bankruptcy Plan and on or before the Closing Date, (iv) implementation of the Distribution Requirement in a manner that is consistent with section 507 of the Bankruptcy Code, (v) satisfaction of the ownership requirements set forth in section 382(l)(5)(A)(ii) of the Code, and (vi) any other instructions that in the reasonable opinion of tax counsel for Buyer are necessary or desirable to ensure the qualification of the Tax Reorganization and the achievement of the Tax Result, and Sellers shall follow such instructions; provided that (A) such instructions shall not limit Sellers' discretion or actions in respect of (x) operating the Business and its other Assets in the Ordinary Course of Business and in compliance with the other provisions of this Agreement for all periods through the Closing Date, (y) disposing of any of its Assets if and to the extent permitted under the other provisions of this Agreement (z) taking or refraining from taking any action required by this Agreement or under the law, including if such

85

actions would be inconsistent with its obligations under the Bankruptcy Code, (B) if requested by Sellers, Buyer's tax counsel shall deliver to Sellers a Tax Opinion that each and any such transaction (other than any Designated Sale Transactions) qualifies as a Tax Reorganization, and (C) nothing herein shall affect Buyer's liability for Taxes that are Assumed Liabilities; (2) subject to the preceding clause (1), Sellers agree to cooperate with Buyer in order that, for federal income Tax purposes, the transactions effected pursuant to this Agreement, together with the distributions made by, and liquidation of, Sellers pursuant to the Bankruptcy Plan, are treated as one or more plans of reorganization under section 368 of the Code and as qualifying as one or more reorganizations under section 368(a)(1)(G) of the Code (except if and to the extent Buyer determines otherwise, in accordance with Section 2.12(b), in respect of a given transaction or a particular Seller); and (3) any Tax Return in respect of a Tax imposed on any Seller for which Buyer is liable hereunder shall be prepared by Buyer, a copy of such Tax Return shall be provided to SHC at least thirty (30) days prior to the due date thereof, Buyer shall consider in good faith any reasonable comments provided by Sellers, Sellers shall, if necessary for filing, properly execute any such Tax Return, and Buyer shall timely and properly file any such Tax Return and pay the amount of any Taxes shown due on any such Tax Return.

(b)     Sellers agree that (i) Buyer will suffer irreparable damage and harm in the event that any Seller does not comply with Section 9.2(a) or any instructions properly given by Buyer thereunder and that, although monetary damages may be available for such a breach, monetary damages would be an inadequate remedy therefor and (ii) Buyer shall be entitled to an injunction or injunctions against any non-compliance with, and to seek specific performance of, the agreements and covenants set forth in Section 9.2(a) and any instructions properly given by Buyer thereunder.

(c)     Buyer (or its regarded owner for U.S. federal income Tax purposes, if applicable) shall make (if not previously made) a valid election, effective on or prior to the Closing Date, to be classified as an association taxable as a corporation for U.S. federal income Tax purposes (unless one or more Affiliated Designees shall acquire all of the Acquired Assets and assume all of the Assumed Liabilities). Buyer shall cause any Affiliated Designee (or its regarded owner for U.S. federal income Tax purposes, if applicable) to be classified as a corporation or an association taxable as a corporation for U.S. federal income Tax purposes at all times during the period beginning on the Closing Date and ending on the effective date of the Bankruptcy Plan.

(d)     For purposes of this Agreement, (x) Taxes (other than Property Taxes) imposed on or with respect to any the Acquired Assets, the Acquired Properties, the Business or the Assumed Liabilities with respect to a taxable period that commences on or prior to and ends after the Closing Date or the applicable Designation Assignment Date, as applicable (a "Straddle Period"), shall be allocated to the Pre-Assignment Tax Period based on a "closing of the books" method as of the end of the Closing Date or the applicable Designation Assignment Date, as applicable, and (y) Property Taxes for a Straddle Period shall be allocated to the Pre-Assignment Tax Period by multiplying the amount of such Property Taxes for the entire Straddle Period by a fraction, the numerator of which is the number of days during the Straddle Period that are in the Pre-Assignment Tax Period and the denominator of which is the number of days in the entire Straddle Period.

(e)     Notwithstanding anything to the contrary contained herein, from and after the Closing the Buyer will indemnify and hold each Seller (and its Affiliates) harmless from and

FILED DATE: 5/19/2021 1:27 PM     2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

against, and pay to such Seller (without duplication) the amount of any Taxes that are Assumed Liabilities.

Section 9.3    Miscellaneous Tax Matters.

(a)    Any sales, use, property transfer or gains, documentary, stamp, registration, recording or similar Tax (including, for certainty, goods and services tax, harmonized sales tax and land transfer tax) imposed on or payable in connection with the sale, transfer, assignment, conveyance or delivery of the Designation Rights, the Acquired Assets or the Assumed Liabilities (or any Excluded Asset pursuant to Section 2.8(d)) ("Transfer Taxes") shall be borne solely by Buyer.  Sellers and Buyer shall use reasonable efforts and cooperate in good faith in all matters relating to such Transfer Taxes (including with respect to the application of any exemption therefrom or reduction thereof). Buyer shall prepare and, except to the extent required by applicable Law to be filed by Sellers, Buyer shall file all necessary Tax Returns or other documents with respect to all such Transfer Taxes; provided, however, that in the event any such Tax Return requires execution by the other Party, the preparing Party shall prepare and deliver to the other Party a copy of such Tax Return at least three (3) Business Days before the due date thereof, and such other Party shall promptly execute such Tax Return and return it for filing. If Seller is required to file any such Tax Return, no later than three (3) Business Days before the due date of such Tax Return Buyer shall pay to Sellers the amount of Transfer Taxes shown on such Tax Return. Subject to the other provisions of this Agreement, the Parties shall reasonably cooperate with each other in any reasonable and lawful arrangement designed to minimize any applicable Transfer Taxes.

(b)    Buyer and Sellers agree to furnish or cause to be furnished to each other, upon request, as promptly as practicable, such information and assistance relating to the Acquired Assets, the Properties, the Business or the Assumed Liabilities as is reasonably necessary for the filing of all Tax Returns, the making of any election relating to Taxes, and the preparation, prosecution or defense of or for any Tax Proceeding. Unless Buyer makes the election under Section 2.12(b) to treat all the transactions described in Article II as Designated Sale Transactions (resulting in no transfer of Sellers Tax attributes to Buyer), to the extent not addressed by the foregoing, Buyer and Sellers shall also furnish or cause to be furnished to each other all documentation and information of Sellers' or any of their Affiliates as reasonably requested in connection with (i) the treatment of the Transactions as one or more reorganizations under section 368 of the Code and/or in connection with qualifying for the application of section 382(l)(5) of the Code and (ii) the Tax basis, losses and credits (including carryovers), income, gains, deductions and other attributes or Tax items of Buyer or an Assignee that are dependent in whole or in part by the treatment of any such Tax item in any Pre-Assignment Tax Period.  Any out-of-pocket expenses incurred in furnishing such information or assistance pursuant to this Section 9.3(b) shall be borne by the Party requesting it. Furthermore, except for any refund, asset or amount described in Section 2.2(h), Sellers shall pay (or cause to be paid) to Buyer any Tax refund  actually received by Sellers or any Affiliate of Sellers  that is an Acquired Asset, and any such refunds credited against future Taxes of the Sellers or their Subsidiaries (including any interest paid thereon and net of any reasonable out-of-pocket costs and any Taxes incurred in respect of the receipt thereof). Upon Buyer's reasonable request and at Buyer's sole cost and expense, Sellers shall (A) file (or cause to be filed) all Tax Returns (including amended Tax Returns) or other documents required to obtain such refunds and (B) take any such other action as may be reasonable and practicable to

87

preserve Sellers' ability to file a refund claim for any Tax year. Any payments required to be made under this <u>Section 9.3(b)</u> shall be made in immediately available funds, to an account or accounts as directed by Buyer, within ten (10) days after the actual receipt of the refund or the application of any such refunds as a credit against a future tax of Sellers or any Affiliate of Sellers.

(c)     Buyer shall pay (or cause to be paid) to Sellers any Tax refund, asset or amount described in <u>Section 2.2(h)</u> that is actually received by any Subsidiary of any Seller that is an Acquired Asset, Buyer or any Affiliate of Buyer, and any such refunds or amount credited against future Taxes to which any Subsidiary of any Seller that is an Acquired Asset, Buyer or any Affiliate of Buyer become entitled (including any interest paid thereon and net of any reasonable out-of-pocket costs and any Taxes incurred in respect of the receipt thereof). Upon Sellers' reasonable request and at Sellers' sole cost and expense, Buyer shall (A) file (or cause to be filed) all Tax Returns (including amended Tax Returns) or other documents required to obtain such refunds and (B) take any such other action as may be reasonable and practicable to preserve Buyer's ability to file a refund claim for any Tax year. Any payments required to be made under this <u>Section 9.3(c)</u> shall be made in immediately available funds, to an account or accounts as directed by Sellers, within ten (10) days after the actual receipt of the refund or the application of any such refunds as a credit against a future tax of any Subsidiary of any Seller that is an Acquired Asset, Buyer or any Affiliate of Buyer.

(d)     As soon as practicable (and in any event within ninety (90) days) after the Closing Date, Buyer shall deliver to Sellers a schedule allocating the Purchase Price (including any Assumed Liabilities treated as consideration for the Acquired Assets for Tax purposes) (the "<u>Allocation Schedule</u>"). The Allocation Schedule shall allocate the Purchase Price among the Sellers and among the Acquired Assets acquired from each Seller, and shall be prepared in accordance with Section 1060 of the Code if Buyer makes the election under <u>Section 2.12(b)</u> to treat all the transactions described in <u>Article II</u> as Designated Sale Transactions (resulting in no transfer of Sellers' Tax attributes to Buyer), and in any case shall be prepared in accordance with applicable law to the extent necessary to comply with reporting in respect of applicable Transfer Taxes. The Allocation Schedule shall be deemed final unless Sellers notify Buyer in writing that Sellers object to one or more items reflected in the Allocation Schedule within forty-five (45) days after delivery of the Allocation Schedule. In the event of any such objection, Buyer and Sellers shall negotiate in good faith to resolve such dispute; provided, however, that if Buyer and Sellers are unable to resolve any dispute with respect to the Allocation Schedule within sixty (60) days after the delivery of the Allocation Schedule, such dispute shall be resolved by the CPA Firm. The fees and expenses of the CPA Firm in connection therewith shall be borne equally by Buyer and Sellers. Each of Buyer and Sellers agrees to file its respective federal, state and local Tax returns in accordance with the Allocation Schedule, and any adjustments to the Purchase Price pursuant to this <u>Section 9.3</u> shall be allocated in a manner consistent with the Allocation Schedule. For the avoidance of doubt, the Parties shall cooperate in determining the portion of the Purchase Price allocable to the Acquired Assets that are subject to a Transfer Tax prior to the due date of the Tax Return required to be filed in connection with such Transfer Taxes; provided, that if the parties do not agree with respect to such determination, such matter shall be resolved in accordance with the determination of the CPA Firm; provided further, that such Tax Return will be adjusted, as applicable, consistent with the procedures described above, to reflect any adjustments to the allocated Purchase Price.

88

FILED DATE: 5/19/2021 1:27 PM          2020L012403

Section 9.4    <u>Payments Received</u>.  Sellers, on the one hand, and Buyer, on the other hand, each agree that, after the Closing, each will hold and will promptly transfer and deliver to the other, from time to time as and when received by them, any cash, checks with appropriate endorsements (using their best efforts not to convert such checks into cash) or other property that they may receive on or after the Closing which properly belongs to the other in accordance with the terms of this Agreement and will account to the other for all such receipts.

Section 9.5    <u>Post-Closing Books and Records and Personnel</u>.  For twelve (12) months after the end of the Designation Rights Period, (a) neither Buyer nor any Seller shall dispose of or destroy any of the business records and files of the Properties or relating to any Acquired Assets and (b) Buyer and Sellers (including, for clarity, any trust established under a chapter 11 plan of Sellers or any other successors of Sellers) shall allow each other, any applicable Assignee and the Representatives of any of the foregoing reasonable access during normal business hours, and upon reasonable advance notice and to the extent permitted by applicable Law, to all employees, files, the Books and Records and other materials included in the Potential Acquired Assets for purposes relating to the Bankruptcy Case, the wind-down of the operations of Sellers, the functions of any such trusts or successors, or other reasonable business purposes, including Tax matters, litigation, or potential litigation, each as it relates to the Potential Acquired Assets or the Assumed Liabilities, and Buyer and Sellers (including any such trust or successors) and such Representatives shall have the right to make copies of any such files, books, records and other materials.  In addition, from and after the Closing Date or the applicable Designation Assignment Date for a period of sixty (60) days, Sellers will permit Buyer, any applicable Assignee and their respective Representatives access to such personnel of Sellers during normal business hours as Buyer or any applicable Assignee may reasonably request to assist with the transfer of the applicable Acquired Assets (including any related Assigned Plans and Permits), provided that nothing in this <u>Section 9.5</u> shall prohibit Sellers from ceasing operations or winding up their affairs following the end of the Designation Rights Period.  Following the end of the Designation Rights Period, nothing in the foregoing shall be construed to prevent Sellers from winding down their operations and dissolving their business entities as is determined by Sellers (in their sole discretion) to be in their best interests.

Section 9.6    <u>Confidentiality</u>.

(a)    The terms of the Confidentiality Agreement shall continue in full force and effect until the Closing, at which time Buyer's and Seller's obligations under the Confidentiality Agreement shall terminate.

(b)    The Parties shall (i) treat and hold as confidential all Confidential Information of the other Parties and their Affiliates (which, as such term is used in this <u>Section 9.6(b)</u> shall mean the information provided to the receiving Party by or on behalf of a disclosing Party in connection with this Agreement and the other Transaction Documents and the Transactions) and (ii) not disclose any such Confidential Information a disclosing Party to any other Person without the prior written consent of such disclosing Party, in each case for so long as such information remains Confidential Information.  In the event any receiving Party is requested or required (by oral or written request for information or documents in any legal proceeding, interrogatory, subpoena, civil investigative demand or similar process or by applicable Law) to disclose any Confidential Information of a disclosing Party provided in accordance with this <u>Section 9.6(b)</u>, then such

89

FILED DATE: 5/19/2021 1:27 PM    2020L012403

receiving Party shall, to the extent legally permitted, notify the disclosing Party promptly of the request or requirement so the disclosing Party, at its expense, may seek an appropriate protective Order or waive compliance with this Section 9.6(b). If, in the absence of a protective Order or receipt of a waiver hereunder, the receiving Party is, on the advice of counsel, compelled to disclose such Confidential Information, the applicable receiving Party may so disclose such Confidential Information; provided that the applicable receiving Party shall use commercially reasonable efforts to obtain reliable assurance that confidential treatment will be accorded to such Confidential Information. Notwithstanding the foregoing, the provisions of this Section 9.6(b) shall not prohibit the disclosure of Confidential Information by the receiving Party to the extent reasonably required (i) to comply with applicable Law or any regulatory authority or self-regulatory organization having jurisdiction or of which a Party is a member, (ii) in connection with asserting any rights or remedies or performing any obligations under this Agreement or any of the Transaction Documents or (iii) to such Party's Affiliates and Representatives. Notwithstanding the foregoing, the provisions of this Section 9.6(b) shall not apply to information that (A) is or becomes publicly available other than as a result of a disclosure by any receiving Party in violation of this Agreement, (B) is or becomes available to a receiving Party on a non-confidential basis from a source that, to the receiving Party's knowledge, is not prohibited from disclosing such information by a legal, contractual or fiduciary obligation, or (C) is or has been independently developed by a receiving Party. For the avoidance of doubt, following the Closing, all Confidential Information relating to the Business, the Acquired Assets or the Assumed Liabilities shall be deemed to be Confidential Information of Buyer.

Section 9.7    Employment Offers.

(a)    Buyer shall make an offer of employment to any Business Employee represented by a labor union and whose terms and conditions of employment are covered by a collective bargaining agreement ("Represented Employees") using reasonable best efforts to comply with the requirements of any such collective bargaining agreement. For any Business Employee not represented by a labor union ("Non-Represented Employees"), Buyer shall, or shall cause any of its Subsidiaries to, (i) no later than five (5) days prior to the Closing Date, use reasonable best efforts to provide a written offer of employment in a comparable position to, effective as of 11:59 p.m., local time, on the Closing Date each of such Business Employees, or (ii) to the extent required by and in accordance with applicable Law, enter into employment agreements with each of such Business Employees. Those Business Employees, including both Represented Employees and Non-Represented Employees, who accept such offer of employment on or before the Closing Date in accordance with the provisions of such offer and continue employment with Buyer or any of its Subsidiaries, shall be referred to as "Transferred Employees."

(b)    Subject to the last sentence of this Section 9.7(b) and except as otherwise expressly provided in this Section 9.7(b), with respect to each Transferred Employee who remains employed by Buyer or any of its Subsidiaries, Buyer shall, or shall cause any of its Subsidiaries to, provide for the period commencing on the Closing Date and ending on the last day of the Sellers' fiscal year ending in 2020, subject to such Transferred Employee's continued employment with Buyer or any of its Subsidiaries (as applicable) (i) (A) base salary or hourly wage rate and (B) a target short-term cash incentive opportunity, in each of (A) and (B), that is at least equal to the base salary or wages and target short-term cash incentive opportunity, respectively, provided to such

90

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-shl   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 340 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

Transferred Employee immediately prior to the Closing Date and (ii) a group health and welfare plan and, subject to and in accordance with <u>Section 9.7(k)</u>, a 401(k) plan, qualified under Sections 401(a) and 401(k) of the Code ("<u>401(k) Plan</u>"), that are substantially comparable in the aggregate to the group health and welfare plan and 401(k) Plan under which such Transferred Employee participates as of the date hereof.  For the avoidance of doubt, (x) the terms of this <u>Section 9.7(b)</u> shall apply notwithstanding anything to the contrary in any non-solicitation or similar agreement currently entered into by Buyer or any of its Affiliates and Sellers and (y) from and after the date hereof, no such non-solicitation or similar agreement by Buyer and any Seller or any affiliate thereof entered into prior to the date hereof shall prevent Buyer from hiring (or seeking to hire) any employee of Sellers.  The Parties agree to cooperate in good faith to coordinate the establishment of benefit plans and arrangements so as to satisfy the obligations set forth in this <u>Section 9.7(b)(ii)</u>.

(c)     Except as otherwise provided under the terms of the applicable Employee Plan, each Transferred Employee shall be given credit for all service with Sellers under all employee benefit plans, programs and policies and fringe benefits of the Business or Buyer or any of its Subsidiaries in which they become participants (i) for purposes of eligibility, participation, and vesting (but not benefit accruals), and (ii) with respect to any vacation and severance plans, programs or arrangements of Buyer or its Subsidiaries, for purposes of determining the level of benefits except to the extent such crediting would result in duplication of benefits with respect to the same period of service.

(d)     If a Transferred Employee becomes eligible to participate in a medical, dental or health plan of Buyer (or its Subsidiaries), Buyer shall, or shall cause its Subsidiaries to, to the extent permitted by (x) applicable Law and (y) the terms of the applicable medical, dental or health plan of Buyer or any of its Subsidiaries in which the Transferred Employee participates following the Closing, cause the plan provider of such plan to (i) waive any preexisting condition limitations to the extent such pre-existing condition limitations would not have been applicable under the applicable medical, dental or health plans of Sellers as of immediately prior to the Closing Date and (ii) credit any complete or partial satisfaction of any deductible and out-of-pocket expenses incurred by the Transferred Employee and his or her dependents under the applicable Seller's or its Subsidiaries' medical, dental or health plans during the portion of the calendar year in which the Closing Date occurs.  Buyer agrees to use commercially reasonable efforts to cause a medical, dental and health plan provider to provide such waivers and credits contemplated by the first (1st) sentence of this <u>Section 9.7(d)</u>.  If a Transferred Employee becomes eligible to participate in a group term life insurance plan maintained by Buyer or its Subsidiaries, Buyer shall use commercially reasonable efforts to cause such plan to waive any medical certification for such Transferred Employee up to the amount of coverage the Transferred Employee had under the life insurance plan of Sellers (but subject to any limits on the maximum amount of coverage under Buyer's life insurance plan).

(e)     Except as required by Law or an applicable bargaining agreement or as otherwise agreed in writing by the Parties, Buyer or any of its Subsidiaries shall provide severance and other separation benefits to each Transferred Employee terminated by Buyer or any of its Subsidiaries within the period commencing on the Closing Date and ending on the last day of the Sellers' fiscal year ending in 2020 that are at least equal to the severance and other separation benefits provided

by Seller and its Subsidiaries to such Transferred Employee as in effect immediately prior to the Petition Date, it being understood that such severance and other separation benefits do not include any long-term incentive, equity incentive, defined benefit pension or retiree welfare or life insurance benefits.

(f)     Except as prohibited by applicable Law, each offer letter shall provide that by accepting employment with Buyer the Business Employee is acknowledging that Buyer is assuming, and Buyer shall assume all vacation days and other paid time off accrued but not yet taken by each Transferred Employee through the Closing Date, in accordance with their terms as of the date hereof.  To the extent that applicable Law prohibits a Transferred Employee's vacation from being assumed by Buyer and requires that a Transferred Employee to be paid for any vacation days and other paid time off accrued but not yet taken by such Transferred Employee as of the Closing Date without regard to any acknowledgement by such Transferred Employee to the contrary, Sellers shall pay each Transferred Employee for such vacation days.

(g)     Sellers agree to pay to the Transferred Employees any bonus (including any related payroll Taxes) that such Transferred Employees would have been paid had they remained employees of Sellers through the date the bonus in respect of the fiscal year ending February 2, 2019.

(h)     Buyer and Seller agree to cooperate in good faith to ensure that Transferred Employees do not experience a break in health coverage from and after the Closing Date. Buyer shall take commercially reasonable efforts to provide or make available the health coverage required by Section 4980B of the Code available with respect to any individual who is an "M&A Qualified Beneficiary" (as defined in Treasury Regulation Section 54.49806-9 (Q&A 4) of the Code) as the result of the consummation of the Transactions.

(i)     From and after the Closing Date, subject in all respects to the limitations set forth in Section 2.3(k), Buyer shall, within thirty (30) days following written demand by the Seller, with such supporting documentation as the Buyer shall reasonably request, reimburse the Sellers for the payment of any cash severance or other cash separation pay, and Seller's portion of any related employment and payroll Taxes, made by any Seller to any employee of any Seller whose employment with any of the Sellers terminated following the Petition Date or terminates on, or following the Closing Date (it being understood that this does not include any Transferred Employees who shall have become the employees of Buyer and its Subsidiaries and shall be covered by Buyer's obligations as set forth in Section 9.7(b)), to the extent of the cash severance or other cash separation pay that has been paid on or following the Petition Date and prior to the Closing Date or would have been due and payable had such employee's employment been terminated by any of the Sellers immediately prior to the date hereof (the reimbursement Liabilities of Buyer set forth in this Section 9.7(i), including with respect to any related employment and payroll Taxes, the "Severance Reimbursement Obligations").

(j)     Sellers shall retain liability for all medical, dental and health claims incurred by Transferred Employees (and their dependents) under the employee welfare benefit plans of Sellers prior to the Closing.  Buyer shall be liable for all medical, dental and health claims incurred by Transferred Employees (and their dependents) under the employee welfare benefit plans of Buyer or any of its Subsidiaries on or after the Closing.  For purposes of this Section 9.7(j), a claim shall

92

be deemed to have been incurred on the date on which the medical or other treatment or service was rendered and not the date of the inception of the related illness or injury or the date of submission of a claim related thereto; provided, that claims relating to a hospital confinement that begins on or before the Closing but continues thereafter shall be treated as incurred before the Closing. Notwithstanding anything herein to the contrary, with respect to any Business Employee who becomes a Transferred Employee following the Closing, any reference in this Section 9.7(j) to the Closing will be deemed to be references to the date such Business Employee becomes a Transferred Employee.

(k)    U.S. Savings Plan.

(i)    As soon as practicable following the Closing Date, Buyer shall, or shall cause its Subsidiaries to, establish a new savings plan or designate an existing savings plan qualified under Section 401(a) of the Code and including a cash or deferred feature under Section 401(k) of the Code and a related trust thereunder which shall be exempt under Section 501(a) of the Code ("Buyer's Savings Plan") that will permit participation by all Transferred Employees who are participating in Seller's or its Subsidiaries' 401(k) Plan ("Seller's Savings Plan") as of the Closing Date.

(ii)    No assets or liabilities of Seller's Savings Plan shall be transferred to Buyer's Savings Plan, other than in connection with a rollover of a Transferred Employee's account balance under Seller's Savings Plan. Except as could reasonably be expected to cause the Buyer's Savings Plan to cease to qualify under Section 401(a) and 401(k) of the Code or cause the trust to cease to be qualified under Section 501(a) of the code or otherwise result in the Buyer or its Affiliates incurring any penalties thereunder, Buyer shall permit the Transferred Employees to roll over into Buyer's Savings Plan any rollover distribution (in cash or loan notes of any "eligible rollover distribution" (within the meaning of Section 402(c)(4) of the Code)). Effective as of the Closing, Seller shall and shall cause it Subsidiaries to take any action necessary to ensure that the accounts of each Transferred Employee in Seller's Savings Plan shall be fully vested and nonforfeitable.

(l)    The Parties acknowledge and agree that all provisions contained in this Section 9.7 are included for the sole benefit of the respective Parties and shall not create any right (i) in any other person, including any Business Employees, Transferred Employees, current or former employees of Seller, any participant in any Employee Plan or any compensation or benefit plan, program, agreement or arrangement of Buyer or its Subsidiaries or any beneficiary thereof or (ii) in any other person, to continued employment with Buyer or its Subsidiaries or particular compensation or benefits coverage in any compensation or benefit plan, program, agreement or arrangement of Buyer or its Subsidiaries. The provisions of this Section 9.7 shall not constitute an amendment to any Employee Plan or any plan, program, agreement or arrangement maintained by Buyer or any of its Subsidiaries.

(m)    Sellers and Buyer hereby agree to follow the "alternate procedure" for employment tax reporting as provided in Section 5 of Rev. Proc. 2004-53, 2004-34 I.R.B. 320 for each Transferred Employee and to cooperate with each other in furtherance thereof. Provided that Sellers provide Buyer with all necessary payroll records for the calendar year which includes the date on which the Transferred Employee commences employment with Buyer, Buyer, and not

93

Sellers, shall furnish a Form W-2 to each Transferred Employee, disclosing all wages and other compensation paid for such calendar year, and taxes withheld therefrom.

Section 9.8    Owned Real Property.

(a)    Seller shall pay when due any and all Occupancy Expenses with respect to each Owned Real Property solely to the extent arising during the period commencing on the Petition Date through the Closing Date.

(b)    From the date hereof through the Closing Date, Seller shall use commercially reasonable efforts to maintain and preserve each Owned Real Property and all related Acquired Assets in a condition substantially similar to the their present condition. Prior to Closing, Seller shall not without Buyer's consent, and shall not solicit any other Person to, (A) sell, transfer, assign, convey, lease, license, mortgage, pledge or otherwise encumber any Owned Real Property or related Acquired Asset (other than sales of Inventory in accordance with the terms of this Agreement, Permitted Encumbrances and any applicable statutory liens (solely to the extent that such Owned Real Property or related Acquired Asset will be transferred free and clear of such statutory liens pursuant to the applicable transfer document)), (B) grant or terminate any other interests in any Owned Real Property or related Acquired Asset, (C) cancel or compromise any claim or waive or release any right, in each case that is related to any Owned Real Property or any related Acquired Assets (for the avoidance of doubt, other than any Excluded Assets), (D) take any action with respect to Taxes or Tax matters that could reasonably be expected to result in an Encumbrance on any Owned Real Property or related Acquired Assets (other than Permitted Encumbrances) or (E) enter into any agreement or commitment to take any action prohibited by this Section 9.8(b).

(c)    From and after the date hereof through Closing, Sellers shall bear the risk of loss or damage to the Owned Real Property and Seller shall continue all insurance policies with respect to the Owned Real Property or policies providing substantially similar coverages to the extent available at commercially reasonable rates (and in all instances without any reductions in the amounts of available coverage), including comprehensive public liability, casualty and umbrella liability insurance, and shall cause Buyer to be named as a loss payee or additional insured, as applicable, with respect to all such policies.  Seller shall pay to Buyer on the Closing Date all insurance recoveries and all warranty and condemnation proceeds received or receivable after the date hereof with respect to the Owned Real Property.  In connection with any payment of recoveries or proceeds under this Section 9.8(c), (i) such payment of recoveries or proceeds shall not include any recoveries or proceeds to the extent attributable to lost rents or similar costs applicable to any period prior to the Closing or paid in connection with repair, restoration or replacement during such period, and (ii) to the extent that Buyer has received written notice thereof in reasonable detail not less than fifteen (15) days prior to the Closing, such payment of recoveries or proceeds shall be reduced by the amount of (x) all actual and documented, reasonable out of pocket repair costs incurred by Sellers in connection with the repair or restoration of such damage or destruction, (y) all actual and documented, reasonable out of pocket collection costs of Sellers respecting any awards or other proceeds, and (z) any amounts required to be paid (and solely to the extent actually paid) by Sellers or the insurance company to the applicable landlord under the Lease, if applicable, or to such landlord's lender as required pursuant to any of such lender's financing, as applicable.

94

Section 9.9    Title Matters.  Buyer, at its own discretion and sole expense, may order preliminary title reports from a nationally recognized title company (the "Title Company") with respect to any of the Leased Premises or Owned Real Property (the property covered by such reports being referred to herein as the "Titled Property").  Seller shall at no cost, expense or Liability to Seller, cooperate in good faith with Buyer and the Title Company in connection with the compilation of title to the Titled Property and in connection with any efforts by Buyer to obtain title insurance policies pursuant thereto on behalf of itself and/or its lender, including, in the case of any efforts by Buyer to obtain lender's title insurance policies on behalf of its lender, by providing reasonable affidavits and other similar instruments as are reasonably required by the Title Company for the deletion of any standard or printed exceptions in such lender's title insurance policies that are customarily deleted by virtue of a seller delivering such instruments in commercial real estate transactions in the state or province in which the Titled Property which is the subject of such lender's title insurance policy is located. Subject to the foregoing proviso, such cooperation by Seller and its Subsidiaries shall include providing Buyer and the Title Company copies of, with respect to Titled Property, reasonably requested existing surveys, maps, existing title reports and title insurance policies and true and complete copies of the encumbrance documents identified therein, to the extent the same are in the possession of Seller or its Subsidiaries and are not publicly available.

Section 9.10    Use of Name.  Sellers agree that they shall (i) as soon as practicable after the Closing Date and in any event within six (6) months following the Closing Date, cease to make use of the Trademarks included in the Acquired Intellectual Property and change the Business Names of all of their applicable Affiliates to a Business Name that does not consist of, contain or incorporate any Trademarks included in the Acquired Intellectual Property, provided that as soon as practicable after the Closing Date and in any event within thirty (30) days following the Closing Date, Sellers shall cease to make use of the Trademarks included in the Acquired Intellectual Property in connection with the Business and (ii) as promptly as practicable after the Closing Date, file a motion with the Bankruptcy Court to amend the caption of the Bankruptcy Cases to reflect a change in the name of the Sellers in accordance with the foregoing clause (i) and (ii) immediately after the Closing, cease to hold themselves out as having any affiliation with the Acquired Assets.  Sellers shall promptly deliver to Buyer any relevant documentation evidencing such name change, including any name change amendment and name change notice filed with or submitted to any Governmental Authority in each jurisdiction in which such Seller or Affiliates of Seller is qualified to do business.  Nothing in this Section 9.10 shall prohibit Sellers' use of such Trademarks to the extent that such use (a) is required by Law to wind down Sellers' estate or (b) constitutes nominative or descriptive fair use under United States Laws, which refers to Sellers and would not cause confusion as to the origin of a good or service, including in accurately stating the historical relationship between Sellers and Buyer for information purposes (and in a non-Trademark manner) in historical, tax and similar records.

Section 9.11    Apportionments.  All charges and fees payable for telephone services, water, sewer rents heat, steam, electric power, gas and other utilities, at the price charged by the suppliers, including any taxes thereon and based upon applicable meter readings, where available, made on or immediately prior to or immediately after the Closing Date (and credits therefor to the extent paid prior to the Closing Date) that relate to Owned Real Property shall be apportioned

95

FILED DATE: 5/19/2021 1:27 PM   2020L012403

between Sellers, on the one hand, and Buyer, on the other hand, as of midnight on the Closing Date for the period that begins prior to the Closing Date and ends after the Closing Date.

Section 9.12   Intercompany IP Agreement; Sublicenses.   As of the Closing Date, all Intercompany IP Agreements and all sublicenses to any Person thereunder, in each case that are not assigned to Buyer or assumed and assigned in accordance with this Agreement, shall be, and are hereby, automatically terminated.   Sellers shall take all necessary actions to cause such licenses, grants or sublicenses that are not terminated by virtue of the foregoing sentence to be terminated at the Closing Date.   The foregoing provision shall not affect any sublicenses under which neither any Seller nor any Affiliate of any Seller is the sublicensee, unless such sublicense is terminable without cause by a Seller pursuant to its terms.

Section 9.13   Settlement and Release.

(a)   Effective upon the Closing, in exchange for the payment by Buyer of the Credit Bid Release Consideration and other good and valuable consideration provided to the Debtors and their estates by ESL in connection with the Transactions, each Debtor, for itself and its estate, and on behalf of each of its Subsidiaries and controlled Affiliates (each of the foregoing, a "Seller Releasing Party"), hereby absolutely, unconditionally and irrevocably (i) releases and forever discharges ESL from any and all Released Estate Claims, whether foreseen or unforeseen, contingent or actual, and whether now known or hereafter discovered, which any of the Seller Releasing Parties ever had or now may have, and (ii) covenants that it shall not seek to disallow, subordinate, recharacterize, avoid, challenge, dispute or collaterally attack the ESL Claims, provided however that the assertion of any Claim other than a Released Estate Claim shall not be deemed to violate this Section 9.13(a)(ii).

(b)   Effective upon the Closing, ESL's Claims against the Debtors arising under (i) the IP/Ground Lease Term Loan Facility; (ii) the FILO Facility; (iii) the Real Estate Loan 2020; (iv) the Second Lien Term Loan; (v) the Second Lien Line of Credit Facility; (vi) the Second Lien PIK Notes and (vii) the Citi L/C Facility (together with the any security interests securing any of the Claims described in the preceding sub-clauses (c)(i)-(vi), collectively, the "ESL Claims") shall each be deemed allowed for all purposes in the Bankruptcy Cases and under the Bankruptcy Code in the amounts set forth on Exhibit G, as reduced by the credit bid set forth in Section 3.1(b).

(c)   After giving effect to the credit bid set forth in Section 3.1(b), ESL shall be entitled to assert any deficiency Claims, Claims arising under Section 507(b) of the Bankruptcy Code, or other Claims and causes of action that it may have against the Debtors and their estates in the Chapter 11 Cases, provided that (i) no Claims or causes of action of ESL shall have recourse to, or any other right of recovery from, any Claims or causes of action of the Debtors or their estates related to Lands' End, Inc., the "spin-off" (as such term is defined in the Information Statement of Lands' End, Inc. dated March 18, 2014), Seritage Growth Properties, Inc., Seritage Growth Properties, L.P., the "Transaction" (as that term is defined in the registration statement on Form S-11 filed by Seritage Growth Properties, which registration statement became effective on June 9, 2015), any Claim or cause of action involving any intentional misconduct by ESL, or the proceeds of any of the foregoing, (ii) any ESL Claims arising under Section 507(b) of the Bankruptcy Code shall be entitled to distributions of not more than $50 million from the proceeds of any Claims or causes of action of the Debtors or their estates other than the Claims and causes of action described

96

in the preceding clause (c)(i); provided that, in the event that, in the absence of this clause (c)(ii), any such proceeds to the Debtors or their estates would have resulted in distributions in respect of such ESL Claims in excess of $50 million, the right to receive such distributions in excess of $50 million shall be treated as an unsecured claim and receive pro rata recoveries with general unsecured claims other than the Claims and causes of action described in the preceding clause (c)(i), and (iii) notwithstanding any order of the Bankruptcy Court to the contrary or section 1129 of the Bankruptcy Code, it shall not be a condition to confirmation of any chapter 11 plan filed in the Bankruptcy Cases that any ESL Claims arising under Section 507(b) of the Bankruptcy Code be paid in full or in part.

(d)　　This Section 9.13, and all statements or negotiations relating hereto, shall be governed by Federal Rule of Evidence 408 and any corresponding state rules of evidence. Without limiting the foregoing, neither this Section 9.13 nor any statements or negotiations relating hereto shall be offered or received in evidence in any proceeding for any purpose other than to enforce the terms of this Section 9.13.

(e)　　For the purposes of this Section 9.13, the terms set out below shall be defined as follows:

(i)　　"Debtors" means each of the debtors and debtors in possession in the Bankruptcy Cases, including the Sellers.

(ii)　　"Released Estate Claims" means any and all Claims and causes of action of the Debtors and their estates against ESL arising under (i) sections 363(k), 502(a) or 510(c) of the Bankruptcy Code, (ii) equitable principles of subordination or recharacterization, or (iii) any other applicable Law that could be asserted to challenge the allowance of the ESL Claims pursuant to section 9.13(c). For the avoidance of doubt the Released Estate Claims do not include any other Claims or causes of action of the Debtors or their estates against ESL or any other Person, including but not limited to any Claims or causes of action (i) for constructive or actual fraudulent transfer under 11 U.S.C. 544(b) or 550(a) or any applicable state or federal law, for breach of fiduciary duty (including any Claims for breach of fiduciary duty in connection with the incurrence of any debt described on Exhibit G), or for illegal dividend under 8 Del. C. 170-174 or any other state law; (ii) that are related to Lands' End, Inc., the "spin-off" (as such term is defined in the Information Statement of Lands' End, Inc. dated March 18, 2014), Seritage Growth Properties, Inc., Seritage Growth Properties, L.P, or the "Transaction" (as that term is defined in the registration statement on Form S-11 filed by Seritage Growth Properties, which registration statement became effective on June 9, 2015), or (iii) that have been asserted by or on behalf of any party in interest in the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 cases captioned In the Matter of a Plan of Compromise or Arrangement of Sears Canada Inc., 9370-2751 Quebec Inc., 191020 Canada Inc., The Cut Inc., Sears Contact Services Inc., Initium Logistics Services Inc., Initium Commerce Labs Inc., Initium Trading and Sourcing Corp., Sears Floor Covering Centers Inc., 173470 Canada Inc., 2497089 Ontario Inc., 6988741 Canada Inc., 10011711 Canada Inc., 1592580 Ontario Limited, 955041 Alberta Ltd., 4201531 Canada Inc., 168886 Canada Inc., and 3339611 Canada Inc., Ontario Superior Court of Justice Court File No.:. CV-17-11846-00CL.

97

FILED DATE: 5/19/2021 1:27 PM    2020L012403

Section 9.14    KCD IP Covenants.

(a)    Commencing as of the date hereof (and, for the avoidance of doubt, continuing after the Closing Date), Sellers shall not, and shall cause all of their Affiliates (including KCD IP, LLC) not to, (i) sell, transfer, assign, encumber, allow to lapse, abandon, cancel, fail to renew, fail to continue to prosecute, protect or defend, or otherwise dispose of or convey, any KCD IP, (ii) license, sublicense or grant any Person (other than Buyer and its Affiliates) any rights to, as applicable, any KCD IP or (iii) amend, renew or terminate (or fail to exercise termination rights or option rights with respect to) any Contract pursuant to which any Seller or any of its Affiliates has granted, prior to the date hereof, any license, sublicense, covenant not to sue or other rights under any KCD IP, in each case of the foregoing without the prior written consent of Buyer in its sole discretion. Sellers shall not, and shall cause all of their Affiliates not to, sell, assign, or in any way transfer any equity interests in KCD IP, LLC without requiring as a condition of such sale, assignment or transfer that the purchaser of such equity interests agree to the limitations set forth in this Section 9.14, and any sale, assignment or transfer in violation of this Section 9.14 shall be null and void *ab initio*.

(b)    As soon as reasonably practicable after the date hereof and in any event prior to the Closing Date, Sellers shall use reasonable best efforts to cause KCD IP, LLC to grant, effective as of the Closing, a perpetual, irrevocable (provided that, if Buyer commits a material breach of its obligations under the Exclusive License and KCD IP, LLC gives notice to Buyer specifying the basis for termination and Buyer fails to cure, resolve or remediate the basis for the breach within ninety (90) days after such notice is provided, KCD IP, LLC may convert the exclusive license granted under the Exclusive License to a non-exclusive license; and provided, further, that if Buyer fails to cure, resolve or remediate the basis for such material breach within one hundred twenty (120) days after such notice is provided, KCD IP, LLC may, upon notice to Buyer, suspend the license with respect to the uses that cause the material breach until such cure, resolution or remediation has been effected), worldwide, sublicensable (in connection with uses and sublicensees of the same type and scope as those for which sublicenses were granted by Sellers under the KCD IP prior to the date hereof and, subject to the consent of KCD IP, LLC, such consent not to be unreasonably withheld, conditioned or delayed, in connection with other uses and sublicensees), transferable (A) in whole to an Affiliate of Buyer or (B) in connection with a sale of assets, properties, rights or businesses associated with the Kenmore Marks included in the KCD IP or with the DieHard Marks included in the KCD IP, provided that all of the rights and obligations under the applicable license grant are assigned, and provided further that such third party assumes in writing all of the applicable rights and responsibilities of Buyer under the Exclusive License) exclusive license (but subject to (i) any licenses under the KCD IP in effect as of the Closing Date and (ii) if the SHIP Closing shall have occurred prior to the Closing Date, the license to Service.com in the form of Exhibit E of the SHIP Purchase Agreement contemplated to be entered into in connection with the SHIP Purchase Agreement) to Buyer under all of the KCD IP used or held for use by Sellers as of the date hereof (including, for the avoidance of doubt, the Kenmore Marks and the DieHard Marks, in each case owned by KCD IP, LLC) for all purposes in connection with the Buyer's businesses (including the Business) and the natural evolutions thereof. The Exclusive License shall include the same quality control provisions as set forth in the Kenmore License Agreement, dated as of March 18, 2006, by and between KCD IP, LLC and KMART Corporation, as amended by that certain First Amendment to Kenmore License

FILED DATE: 5/19/2021 1:27 PM     2020L012403

Agreement dated as of November 29, 2009 and that certain Second Amendment to Kenmore License Agreement dated as of March 7, 2012 and shall provide that KCD IP, LLC, as licensor, will continue to maintain its rights to enforce, maintain and defend the Intellectual Property licensed under the Exclusive License in the first instance; provided that Buyer shall have the right to independently enforce, maintain and defend the applicable KCD IP if the business or businesses of Buyer of its Affiliates would otherwise be materially adversely affected.  The Exclusive License shall otherwise be in the form proposed by Buyer and any additional terms (other than the terms set forth  above) must be reasonably acceptable to Sellers (Sellers' review and approval not to be unreasonably withheld, delayed or conditioned, provided that it shall not be unreasonable for Sellers to not accept any such additional terms that they reasonably consider render the license a sale, transfer or other disposition of all or substantially all of the assets of KCD IP, LLC). The Exclusive License shall be subject to royalties equal to those in effect as of the date hereof under (x) with respect to the Kenmore Marks, the Kenmore License Agreement, dated as of March 18, 2006, by and between KCD IP, LLC and KMART Corporation, as amended by that certain First Amendment to Kenmore License Agreement dated as of November 29, 2009 and that certain Second Amendment to Kenmore License Agreement dated as of March 7, 2012 and (y) with respect to the DieHard Marks, the DieHard License Agreement, dated as of March 18, 2006, by and between KCD IP, LLC and KMART Corporation, as amended by that certain First Amendment to DieHard License Agreement dated as of November 29, 2009 and that certain Second Amendment to DieHard License Agreement dated as of March 7, 2012, provided that the terms of the Exclusive License taken collectively shall not constitute a sale, transfer or other disposition of all or substantially all of the assets of KCD IP, LLC.

(c)     In the event that, despite Sellers' reasonable best efforts, KCD IP, LLC has not agreed to grant Buyer the Exclusive License effective as of the Closing Date by the date that is ten (10) days prior to the Closing, and provided that any such delay is not due to Buyer's acts or omissions, then at Buyer's election, Sellers shall, prior to the Closing, use reasonable best efforts to obtain any Consent from KCD IP, LLC necessary to assign to Buyer those KCD Agreements that are designated for assignment and assumption by written notice of Buyer pursuant to this Agreement, and assume and assign such KCD Agreements in accordance with this Agreement (such that such KCD Agreements are Assigned Agreements as contemplated herein).

(d)     In the event that, despite Sellers' reasonable best efforts, KCD IP, LLC's Consent described in the above clause (c) is not obtained by the date that is five (5) days prior to the Closing, and provided that any such delay is not due to Buyer's acts or omissions, then (i) Sellers shall, prior to the Closing, assume all KCD Agreements that provide Sellers with the right to sublicense KCD IP to Buyer that are designated only for assumption by written notice of Buyer and (ii) effective as of the Closing Date, Sellers hereby grant to Buyer, a perpetual, irrevocable, worldwide, royalty-bearing (as described in Section 9.14(b)), further sublicensable, transferable, non-exclusive sublicense under all of the KCD IP used or held for use by Sellers as of the date hereof (including, for the avoidance of doubt, the Kenmore Marks and the DieHard Marks, in each case owned by KCD IP, LLC) for all purposes in connection with the businesses of Buyer (including the Business) and the natural evolutions thereof, provided that to the extent Sellers cannot grant the foregoing, Sellers hereby grant to Buyer a non-exclusive sublicense of the broadest scope that Sellers can grant under all the KCD Agreements assumed by Sellers pursuant to this clause (d). For the purpose of this Section 9.14(d)(ii), any such sublicense granted to Buyer is subject to (x)

any licenses under the KCD IP in effect as of the Closing Date and (y) if the SHIP Closing shall have occurred prior to the Closing, the license to Service.com in the form of Exhibit E of the SHIP Purchase Agreement contemplated to be entered into in connection with the SHIP Purchase Agreement), and shall be of the broadest scope that Sellers can grant under, and subject to the terms of the relevant KCD Agreement.  Buyer shall ensure that its use of the KCD IP, as provided in this Section 9.14(d), shall only be with respect to goods and services of a substantially similar level of quality to the goods and services with respect to which Sellers used the KCD IP prior to the Closing.  For the avoidance of doubt, (i) Sellers shall not reject, seek to terminate or agree to terminate the KCD Agreements assumed pursuant to this Section 9.14(d) or amend or agree to amend such Contracts in any manner that narrows any of the licenses thereunder and (ii) to the extent that Sellers cease to exist or the KCD Agreements assumed pursuant to this Section 9.14(d) expire or terminate, the sublicense granted herein shall survive.

(e)    Solely with respect to the Exclusive License or any sublicense granted pursuant to Section 9.14(d)(ii), Buyer agrees that (A) Sellers and their Affiliates (including KCD IP, LLC) shall have no responsibility for claims by third parties arising out of, or relating to, Buyer's use of the KCD IP in any manner and (B) in addition to any and all remedies, from and after the Closing, Buyer shall indemnify, defend and hold harmless Sellers and their Affiliates (including KCD IP, LLC), for so long as any Seller or Affiliate of Seller is in existence, from and against any and all third party claims that may arise out of use of such KCD IP by or on behalf of Buyer or any of its Affiliates or assignees, in each case other than claims that the KCD IP infringes or otherwise violates the Intellectual Property of any third party.  Except as provided in the foregoing sentence, all Intellectual Property licensed under Section 9.14(b) or Section 9.14(d)(ii) is licensed "as-is" with all faults, without warranty of any kind (whether express, implied, statutory or otherwise), and Seller does not make, and Buyer hereby specifically disclaims, any representations or warranties (whether express or implied, statutory or otherwise).  For the avoidance of doubt, with respect to Section 9.14(c), the allocation of the foregoing shall be determined by the applicable KCD Agreements that are designated for assignment and assumption by written notice of Buyer pursuant to this Agreement.

(f)    For clarity, and not in limitation of the foregoing, Buyer (or its applicable designee) may grant a security interest in any or all of its rights and benefits under Section 9.14(b), Section 9.14(c) or Section 9.14(d) for collateral purposes to the Financing Sources in connection with the Debt Financing.

Section 9.15    Seritage Master Lease.  Any assignment and assumption of Seritage Master Lease shall be an assignment and assumption of such Seritage Master Lease in its entirety, except as otherwise agreed by the landlord under the Seritage Master Lease.

# ARTICLE X

# CONDITIONS PRECEDENT TO THE OBLIGATION OF BUYER TO CLOSE

Buyer's obligation to consummate the Transactions is subject to the satisfaction or waiver, as of the Closing, of each of the following conditions; provided, however, that Buyer may not rely on the failure of any condition set forth in this Article X if such failure was caused by Buyer's

failure to comply with any provision of this Agreement or if such failure was caused by any action or failure to act by Seller at the direction of any Buyer Related Party:

Section 10.1   <u>Accuracy of Representations</u>.  The representations and warranties of Sellers contained in <u>Article VI</u> shall be true and correct as of the Closing Date as though made on and as of the Closing Date (except that those representations and warranties which address matters only as of a particular date need only be true and correct as of such date); <u>provided</u>, <u>however</u>, that the condition in this <u>Section 10.1</u> shall be deemed to be satisfied so long as any failure of such representations and warranties to be true and correct (without giving effect to any limitation as to "materiality" or "Material Adverse Effect" set forth therein), individually or in the aggregate, has not had and would not reasonably be expected to have a Material Adverse Effect.  Buyer shall have received a certificate of Sellers, signed by a duly authorized officer of Sellers, to that effect.

Section 10.2   <u>Sellers' Performance</u>.  Sellers shall have performed and complied with in all material respects the covenants and agreements that Sellers are required to perform or comply with pursuant to this Agreement at or prior to the Closing, and Buyer shall have received a certificate of Sellers to such effect signed by a duly authorized officer thereof.

Section 10.3   <u>No Material Adverse Effect</u>.  Since the date of this Agreement, there shall not have been any Effect that, individually or in the aggregate, has had or could reasonably be expected to have a Material Adverse Effect.

Section 10.4   <u>No Order</u>.  No Governmental Authority shall have enacted, issued, promulgated or entered any Order which is in effect and has the effect of making illegal or otherwise prohibiting the consummation of the Transactions (a "<u>Closing Legal Impediment</u>").

Section 10.5   <u>Governmental Authorizations</u>.  Any applicable waiting period required by the HSR Act and any extensions thereof, or any timing agreements, understandings or commitments obtained by request or other action of the FTC and/or the Antitrust Division, as applicable, shall have expired or been terminated.

Section 10.6   <u>Sellers' Deliveries</u>.  Without limiting <u>Section 10.2</u>, each of the deliveries required to be made to Buyer pursuant to <u>Section 4.3</u> have been so delivered, except for such deliveries which, by their nature, cannot be made on or prior to the Closing.

Section 10.7   <u>Approval Order</u>.  The Bankruptcy Court shall have entered the Approval Order, and the Approval Order shall be in full force and effect and shall not have been stayed, vacated or modified.

Section 10.8   <u>KCD IP</u>.

(a)      Sellers shall have (i) caused KCD IP, LLC to grant the Exclusive License in accordance with <u>Section 9.14(b)</u>, (ii) obtained any Consent of KCD IP, LLC required under <u>Section 9.14(c)</u> and assigned to Buyer as of the Closing Date all KCD Agreements referenced therein or (iii) assumed all KCD Agreements effective as of the Closing Date that provide Sellers with the right to sublicense KCD IP to Buyer that are designated only for assumption by written notice of Buyer in accordance with <u>Section 9.14(d)</u>.

101

(b)     KCD IP, LLC shall not have voluntarily filed for bankruptcy under the Bankruptcy Code.

Section 10.9    Inventory and Receivables.  The aggregate amount of (i) the Inventory Value of the Acquired Inventory (excluding any Pending Inventory), (ii) the amounts due to Seller with respect to (A) the Credit Card Accounts Receivable and (iii) the Pharmacy Receivables shall be at least $1,657,000,000.  To the extent that the aggregate amount of items (i) through (iii) in the foregoing sentence exceeds $1,657,000,000 on the Closing Date, Sellers may reduce such amount to be equal to $1,657,000,000 by *first*, transferring (at Sellers' expense and in consultation with Buyer) Inventory that would otherwise be Acquired Inventory to a GOB Leased Store or a GOB Owned Store or any other location designated by Sellers that is not a Property, until the Inventory Value of the Acquired Inventory is equal to $1,553,000,000 and *second*, retaining as an Excluded Asset the oldest of any Credit Card Accounts Receivable or Pharmacy Receivables.

Section 10.10   Outstanding DIP Indebtedness.  The aggregate amount required to be paid to fully satisfy the existing indebtedness of Sellers under (a) the DIP Credit Agreement shall be no greater than $850,000,000 and (b) the Junior DIP Term Loan shall be no greater than $350,000,000 (exclusive of any accrued and unpaid interest thereon).

## ARTICLE XI

## CONDITIONS PRECEDENT TO THE OBLIGATION OF SELLERS TO CLOSE

Sellers' obligation to consummate the Transactions is subject to the satisfaction or waiver, as of the Closing, of each of the following conditions; provided, however, that Seller may not rely on the failure of any condition set forth in this Article XI if such failure was caused by Seller's failure to comply with any provision of this Agreement:

Section 11.1    Accuracy of Representations.  The representations and warranties of Buyer contained in Article VII shall be true and correct as of the Closing Date as though made on and as of the Closing Date (except that those representations and warranties which address matters only as of a particular date need only be true and correct as of such date); provided, however, that the condition in this Section 11.1 shall be deemed to be satisfied so long as any failure of such representations and warranties to be true and correct (without giving effect to any limitation as to "materiality" or "material adverse effect" set forth therein), individually or in the aggregate, has not had and would not reasonably be expected to prevent or materially impair the ability of Buyer to perform, or to consummate the Transactions.  Sellers shall have received a certificate of Buyer, signed by a duly authorized officer of Buyer, to that effect.

Section 11.2    Buyer's Performance.  Buyer shall have performed and complied with in all material respects the covenants and agreements that Buyer is required to perform or comply with pursuant to this Agreement at or prior to the Closing, and Sellers shall have received a certificate of Buyer to such effect signed by a duly authorized officer thereof.

Section 11.3    No Order.  No Closing Legal Impediment shall be in effect.

102

FILED DATE: 5/19/2021 1:27 PM    2020L012403

Section 11.4    <u>Governmental Authorizations</u>.  Any applicable waiting period required by the HSR Act and any extensions thereof, or any timing agreements, understandings or commitments obtained by request or other action of the FTC and/or the Antitrust Division, as applicable, shall have expired or been terminated.

Section 11.5    <u>Buyer's Deliveries</u>.  Each of the deliveries required to be made to Sellers pursuant to <u>Section 4.2</u> shall have been so delivered, except for such deliveries which, by their nature, cannot be made on or prior to the Closing.

Section 11.6    <u>Bidding Procedures Order</u>.  The Bankruptcy Court shall have entered the Bidding Procedures Order, and such Order shall not have been stayed, vacated or modified.

Section 11.7    <u>Approval Order in Effect</u>.  The Bankruptcy Court shall have entered the Approval Order and the Approval Order shall be in full force and effect and shall not have been stayed, vacated or modified.

Section 11.8    <u>Pay-Down of Real Estate 2020 Loan</u>.  To the extent not previously provided, at least two (2) Business Days prior to the Closing Date, the Sellers shall provide to the agent under the Real Estate 2020 Loan all proceeds from the sale or other disposition of collateral pledged to secure the Real Estate 2020 Loan that were closed prior to the Closing Date, including, without limitation the proceeds held in a segregated account pursuant to paragraph 27 of the *Order (I) Approving the Sale of Certain Real Property, (II) Authorizing the Assumption and Assignment of Certain Unexpired Leases in Connection therewith, and (III) Granting Related Relief* [Docket No. 1393].

## ARTICLE XII

## TERMINATION

Section 12.1    <u>Termination Events</u>.  Anything contained in this Agreement to the contrary notwithstanding, this Agreement may be terminated at any time prior to the Closing:

(a)    by either Sellers or Buyer:

(i)    if the Bankruptcy Court shall have determined that it will not enter the Approval Order or if a Governmental Authority of competent jurisdiction shall have enacted, issued, promulgated, enforced or entered any final and non-appealable applicable Law (including any Order) which is in effect and has the effect of making the Transactions illegal or otherwise restraining or prohibiting consummation of the Transactions and which is not satisfied, resolved or preempted by the Approval Order; <u>provided</u>, <u>however</u>, that the right to terminate this Agreement pursuant to this <u>Section 12.1(a)(i)</u> shall not be available to any Party whose material breach of any of its representations, warranties, covenants or agreements contained herein results in or causes such event;

(ii)    if the Closing shall not have occurred by 11:59 p.m. New York City time on February 19, 2019 (the "<u>Outside Date</u>"); <u>provided</u>, <u>however</u>, that the right to terminate this Agreement pursuant to this <u>Section 12.1(a)(ii)</u> shall not be available to any Party whose

103

FILED DATE: 5/19/2021 1:27 PM    2020L012403

material breach of any of its representations, warranties, covenants or agreements contained herein results in the failure of the Closing to be consummated by such time;

(iii)    if Sellers accept or agree to any Competing Transaction or upon approval by the Bankruptcy Court of, or the filing by or on behalf of any Seller of a motion or other request to approve, a Competing Transaction; provided, however, that if Seller, pursuant to Section 8.2(c) and the Bidding Procedures Order, has designated Buyer as a "Back-Up Bidder," then Buyer shall not be permitted to terminate this Agreement prior to the Outside Date except as consistent with the terms of Section 8.2(c) and the Bidding Procedures Order; or

(iv)    by mutual written consent of Sellers and Buyer.

(b)    by Buyer:

(i)    in the event of any breach by any Seller of any of its agreements, covenants, representations or warranties contained herein that would result in the failure of a condition set forth in Section 10.1 or Section 10.2 to be satisfied, and the failure of Sellers to cure such breach by the earlier of (A) the Outside Date and (B) the date that is fifteen (15) days after receipt of a notice in writing from Buyer of their intention to exercise their rights under this Section 12.1(b)(i) as a result of such breach; provided, however, that that the right to terminate this Agreement pursuant to this Section 12.1(b)(i) shall not be available to Buyer if Buyer is in breach of any of its representations, warranties, covenants or agreements contained herein in a manner that would result in the failure of a condition set forth in Article XI to be satisfied;

(ii)    if any of the Bankruptcy Cases is dismissed or converted to a case under chapter 7 of the Bankruptcy Code;

(iii)    if the Bankruptcy Court has not approved the consummation of the Transactions on or before February 8, 2019, or if the Approval Order has not been entered on or before February 8, 2019 subject to Bankruptcy Court availability (or is vacated or stayed as of such date); or

(iv)    if Sears Re shall not have agreed to be bound by all of the terms of this Agreement as a Seller hereunder by delivering a signature page in the form attached hereto by 11:59 p.m. New York City time on January 22, 2019. For the avoidance of doubt, it is the intent of the Parties that this Agreement shall be binding on each of the Parties (other than Sears Re) notwithstanding that Sears Re has not yet delivered its signature page hereto.

(c)    by Sellers:

(i)    in the event of any breach by Buyer of any of its agreements, covenants, representations or warranties contained herein that would result in the failure of a condition set forth in Section 11.1 or Section 11.2 to be satisfied, and the failure of Buyer to cure such breach by the earlier of (A) the Outside Date and (B) the date that is fifteen (15) days after receipt of a notice in writing from Sellers of their intention to exercise their rights

104

FILED DATE: 5/19/2021 1:27 PM    2020L012403

under this <u>Section 12.1(c)(i)</u> as a result of such breach; <u>provided</u>, <u>however</u>, that that the right to terminate this Agreement pursuant to this <u>Section 12.1(c)(i)</u> shall not be available to Seller if Sellers are themselves in breach of any of their representations, warranties, covenants or agreements contained herein, in each case in a manner that results in the failure of a condition set forth in <u>Article X</u> to be satisfied;

(ii)    if the Bankruptcy Court has not approved the consummation of the Transactions on or before February 8, 2019, or if the Approval Order has not been entered on or before February 8, 2019 subject to Bankruptcy Court availability (or is vacated or stayed as of such date); or

(iii)    if (A) all of the conditions set forth in <u>Article X</u> have been satisfied (other than those conditions that by their nature are to be satisfied by actions taken at the Closing, but which would be satisfied if the Closing Date were the date of such termination, or would have been satisfied, assuming the Closing had in fact occurred), (B) Buyer failed to consummate the transactions contemplated by this Agreement by the time set forth in <u>Section 4.1</u>, (C) Sellers have irrevocably confirmed to Buyer in writing that all the conditions in <u>Article XI</u> have been satisfied (or that it is willing to waive any unsatisfied conditions set forth in <u>Article XI</u>) and that Sellers have indicated to Buyer in writing that Sellers are ready, willing and able to consummate the transactions contemplated by this Agreement, (D) Sellers have given Buyer written notice at least two (2) Business Days prior to such termination stating Sellers' intention to terminate this Agreement pursuant to this Section 12.1(c)(iii), and (E) Buyer fails to consummate the transactions contemplated by this Agreement within such two (2) Business Day period.

Section 12.2    <u>Effect of Termination</u>.

(a)    Subject to the first sentence of Section 12.2(b), in the event of any termination of this Agreement pursuant to Section 12.1, this Agreement (other than the provisions set forth in this Section 12.2, Section 12.3 and Article XIII) shall forthwith become null and void and be deemed of no further force and effect. Subject to Section 12.2(b) and the provisions set forth in the immediately preceding sentence, there shall be no liability or obligation thereafter on the part of any Party. Notwithstanding the foregoing, subject to the second sentence of Section 12.2(b), any such termination shall not limit any Party's liability for any willful and material breach prior to the time of such termination. For purposes of this Agreement, "willful and material breach" means a material inaccuracy or breach of any material representation, warranty or covenant or other agreement set forth in this Agreement that is a consequence of an act or failure to act by or on behalf of the breaching Party with knowledge that the taking of such act or failure to take such act would, or would reasonably be expected to, result in a breach of this Agreement. In the event of any valid termination of this Agreement pursuant to Section 12.1 (other than a termination by Sellers pursuant to Section 12.1(c)(i) or Section 12.1(c)(iii)), Sellers shall promptly (and in no event later than two (2) Business Days following such termination) return to Buyer the Deposit Amount and any other deposit delivered by Buyer to Sellers pursuant to the Bidding Procedures Order. Notwithstanding anything to the contrary in this Agreement, the maximum liability of the Seller and its Subsidiaries under this Agreement shall not exceed $30,000,000 (except in the case of a willful and material breach, in which event such maximum liability shall not exceed $120,000,000).

FILED DATE: 5/19/2021 1:27 PM    2020L012403

(b)    In the event of any valid termination of this Agreement by Sellers pursuant to Section 12.1(c)(i) or Section 12.1(c)(iii), then Sellers, as Sellers' sole and exclusive remedy as a result of such termination, shall have the right to retain the Deposit Amount, if any. Notwithstanding anything to the contrary in this Agreement, the maximum liability of Buyer under this Agreement shall not exceed the Deposit Amount.

Section 12.3    Termination and Adjustment Rights of Buyer as to Properties and Related Acquired Assets.

(a)    If a material portion of any Lease Premises, a material portion of any Owned Real Property, or a material portion of the Potential Acquired Assets related to the Lease Premises is materially damaged or destroyed, or the physical condition thereof is materially and adversely changed (including as a result of failure of proper repair or maintenance or environmental contamination that occurs from and after the date hereof), or any Lease Premises or Owned Real Property is subject to a condemnation or other governmental taking of a material portion thereof or any shopping center in which a Lease Premises is located is damaged, destroyed or condemned such that the operations of such Lease Premises are materially and adversely affected at any time from the date of this Agreement up to and including the Closing (each of the foregoing, a "Casualty / Condemnation Event"), Sellers shall provide prompt written notice of such Casualty / Condemnation Event to Buyer.  Buyer shall elect within ten (10) days after notice of such Casualty / Condemnation Event from Sellers, together with Sellers' best estimate of the net amount of insurance proceeds and/or condemnation award available to Buyer pursuant to Section 12.3(b) (including any deductions pursuant to Section 12.3(b)), to either (A) in the case of a Lease Premises, acquire Designation Rights with respect to such Lease Premises at the Closing or, in the case of Owned Real Property, acquire such Owned Real Property at the Closing and, in either case, Sellers shall assign to Buyer any right Sellers have to any insurance proceeds or condemnation award or proceeds relating to such Casualty/Condemnation Event at the Closing (including any insurance proceeds actually received by Sellers with respect to such Casualty/Condemnation Event, but less, as provided in Section 5.1(a)(v), (x) any amounts used by any Seller for restoration, repair or replacement and (y) any recoveries or proceeds to the extent attributable to lost rents or similar costs applicable to any period prior to the Closing) or (B) in the case of a Lease Premises, decline to acquire Designation Rights with respect to such Lease Premises or, in the case of Owned Real Property, decline to acquire such Owned Real Property, in which case the Purchase Price shall not be reduced (but, in the case of Owned Real Property, Seller shall assign to Buyer any right Sellers have to any insurance proceeds or condemnation award relating to any such Casualty/Condemnation Event at Closing). For the avoidance of doubt, Casualty / Condemnation Events that are subject to this  Section 12.3(a) are only those occurring during the period from the date of this Agreement up to and including the Closing.  Additionally, in the case of any Owned Real Property or Leased Real Property with respect to which a claim for damages to buildings or fixtures is pending as of the date of this Agreement, Sellers shall assign to Buyer any right Sellers have to any insurance proceeds relating to such claim and any amounts actually received in respect of such claim, other than any insurance proceeds in respect of the Acquired Assets set forth on Schedule 2.1(q) in an aggregate amount not to exceed $13,000,000, and the Purchase Price shall not be reduced.

106

(b)     In connection with any assignment of awards, proceeds or insurance under this Section 12.3, (i) such assignment of proceeds or awards shall not include any awards, proceeds or insurance to the extent attributable to lost rents or similar costs applicable to any period prior to the applicable Closing or paid in connection with repair, restoration or replacement during such period, and (ii) to the extent that Buyer has received written notice thereof in reasonable detail not less than fifteen (15) days prior to the Closing, such assignment of proceeds or awards shall be reduced by the amount of (x) all actual and documented, reasonable out-of-pocket repair costs incurred by Sellers in connection with the repair or restoration of such damage or destruction, (y) all actual and documented, reasonable out-of-pocket collection costs of Sellers respecting any awards or other proceeds, and (z) any amounts required to be paid (and solely to the extent actually paid) by Sellers or the insurance company to the applicable landlord under the Lease, if applicable, or to such landlord's lender as required pursuant to any of such lender's financing, as applicable.

(c)     Buyer shall have the right, prior to Closing, to decline to acquire (i) Designation Rights with respect to any Lease and related Potential Acquired Assets or (ii) any Acquired Assets, in each case if and only if any Consent from any Person (other than a Governmental Authority) has not been obtained from such Person or has not otherwise been provided for pursuant to the Approval Order, the absence of which prevents the acquisition or exercise of the Designation Rights with respect to such Lease and related Potential Acquired Assets or the acquisition of such Acquired Assets; provided, that if the failure to obtain such Consent is curable, Sellers shall have until the earlier of (i) the Closing Date or (ii) ten (10) days after receipt of Buyer's notice of intent to terminate to obtain such Consent; and provided, (c) further that, for the avoidance of doubt, the provisions of this Section 12.3(d) shall not apply with respect to any license (incoming or outgoing) of any Intellectual Property.

## ARTICLE XIII

## GENERAL PROVISIONS

Section 13.1     Public Announcements.  Except as required by applicable Law (including any Order by the Bankruptcy Court) or pursuant to filings by Sellers with, or in any proceeding before, the Bankruptcy Court, neither Sellers nor Buyer shall issue any press release, or make any public announcement concerning this Agreement or the Transactions, without first consulting the other Party or Parties.

Section 13.2     Notices.  Any notice, consent or other communication required or permitted under this Agreement shall be in writing and shall be delivered (a) in person, (b) via e-mail or (c) by a nationally recognized courier for overnight delivery service.  A notice or communication shall be deemed to have been effectively given (i) if in person, upon personal delivery to the Party to whom the notice is directed, (ii) if via e-mail, on the date of successful transmission and (iii) if by nationally recognized courier, one Business Day after delivery to such courier.  Rejection or other refusal to accept or inability to deliver because of changed address of which no notice has been received shall also constitute receipt.  Any such notice, election, demand, request or response shall be addressed as follows:

If to Sellers, then to:
Sears Holdings Corporation

107

3333 Beverly Road
Hoffman Estates, IL 60179
Attention: General Counsel
E-mail: counsel@searshc.com

with a copy (which shall not constitute notice) to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attention: Ray C. Schrock, P.C., Ellen J. Odoner, Gavin Westerman and Sunny Singh
E-mail:  Ray.Schrock@weil.com; Ellen.Odoner@weil.com; Gavin.Westerman@weil.com; Sunny.Singh@weil.com

If to Buyer, then to:
Transform Holdco LLC
c/o ESL Partners, Inc..
1170 Kane Concourse, Suite 200
Bay Harbor Islands, FL 33154
Attention:  Kunal S. Kamlani and Harold Talisman
Facsimile:  (305) 864-1370
E-mail: kunal@eslinvest.com; harold@eslinvest.com

with a copy (which shall not constitute notice) to:

Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
Attention:  Christopher E. Austin, Benet J. O'Reilly and Sean A. O'Neal
E-mail: caustin@cgsh.com; boreilly@cgsh.com; soneal@cgsh.com

Section 13.3  Amendment; Waiver.  No amendment, modification or discharge of this Agreement, and no waiver hereunder, shall be valid or binding unless set forth in writing and duly executed by each Party; provided that this Section 13.3, Section 13.6, Section 13.8, Section 13.10 or Section 13.12, in each case as such Sections relate to the Financing Sources, may not be amended in a manner adverse to the Financing Sources without the prior written consent of the applicable Financing Source under the applicable Debt Commitment Letter.  Any such waiver shall constitute a waiver only with respect to the specific matter described in such writing and shall in no way impair the rights of the Party granting such waiver in any other respect or at any other time.  Neither the waiver by any of the Parties of a breach of or a default under any of the provisions of this Agreement, nor the failure by any of the Parties, on one or more occasions, to enforce any of the provisions of this Agreement or to exercise any right or privilege hereunder shall be construed as a waiver of any other breach or default of a similar nature, or as a waiver of any of such provisions, rights or privileges hereunder.  No course of dealing between or among the Parties shall be deemed effective to modify, amend or discharge any part of this Agreement or any rights to payment of any Party under or by reason of this Agreement.

108

FILED DATE: 5/19/2021 1:27 PM  2020L012403

FILED DATE: 5/19/2021 1:27 PM     2020L012403

Section 13.4  <u>Entire Agreement</u>.  This Agreement (including the Schedules and the Exhibits), the Confidentiality Agreement and the other Transaction Documents contain all of the terms, conditions and representations and warranties agreed to by the Parties relating to the subject matter of this Agreement and supersede all prior and contemporaneous agreements, understandings, negotiations, correspondence, undertakings and communications of the Parties or their representatives, oral or written, respecting such subject matter.  The representations, warranties, covenants and agreements contained in this Agreement (including the Schedules and the Exhibits) and the other Transaction Documents are intended, among other things, to allocate the economic cost and the risks inherent in the Transactions, including risks associated with matters as to which the party making such representations and warranties has no knowledge or only incomplete knowledge, and such representations and warranties may be qualified by disclosures contained in the Schedules.  Consequently, Persons other than the Parties may not rely upon the representations and warranties in this Agreement as characterizations of actual facts or circumstances as of the date of this Agreement or as of any other date.

Section 13.5  <u>No Presumption as to Drafting</u>.  Each of the Parties acknowledges that it has been represented by legal counsel in connection with this Agreement and the other Transaction Documents and the Transactions.  Accordingly, any rule of law or any legal decision that would require interpretation of any claimed ambiguities in this Agreement or the Transaction Documents against the drafting party has no application and is expressly waived.

Section 13.6  <u>Assignment</u>.  Subject to Buyer's express rights of assignment with respect to any Assignee, this Agreement, and the rights, interests and obligations hereunder, shall not be assigned by any Party by operation of Law or otherwise without the express written consent of the other Parties (which consent maybe granted or withheld in the sole discretion of such other Party); <u>provided</u>, <u>however</u>, that Buyer shall be permitted, upon prior notice to Sellers but without consent of Sellers, to assign all or any part of its rights or obligations hereunder to an Affiliate (an "<u>Affiliated Designee</u>"); <u>provided</u> that such assignment would not reasonably be expected to prevent or materially impair or delay the consummation of the Transactions or otherwise be materially adverse to Sellers; <u>provided</u> <u>further</u> Buyer shall be permitted to, at or after the Closing, collaterally assign its rights under this Agreement for purposes of creating a security interest or otherwise assigning collateral to the Financing Sources in connection with the Debt Financing; <u>provided</u> <u>further</u> that that no such assignment shall relieve Buyer of any of its obligations under this Agreement.

Section 13.7  <u>Severability</u>.  The provisions of this Agreement shall be deemed severable, and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of the other provisions hereof.  If any provision of this Agreement, or the application thereof to any Person or any circumstance, is invalid or unenforceable, (a) a suitable and equitable provision shall be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision and (b) the remainder of this Agreement and the application of such provision to other Persons or circumstances shall not be affected by such invalidity or unenforceability.

Section 13.8  <u>Governing Law; Consent to Jurisdiction and Venue; Jury Trial Waiver</u>.

(a)     Except to the extent the mandatory provisions of the Bankruptcy Code apply, this Agreement and all claims or causes of action (whether in contract or in tort, in law or in equity or granted by statute) that may be based upon, arise out of or relate to this Agreement or the negotiation, execution or performance of this Agreement (including any claim or cause of action based upon, arising out of or related to any representation or warranty made in or in connection with this Agreement or as an inducement to enter into this Agreement) shall be governed by, and construed in accordance with, the procedural and substantive laws of the State of Delaware applicable to Contracts made and to be performed entirely in such state without regard to principles of conflicts or choice of laws or any other Law that would make the laws of any other jurisdiction other than the State of Delaware applicable hereto.  Notwithstanding anything herein to the contrary, all claims or causes of action (whether in contract or tort) brought against the Financing Sources that may be based upon, arise out of or relate to this Agreement or the negotiation, execution or performance of this Agreement (including any claim or cause of action based upon, arising out of or related to any representation or warranty made in or in connection with this Agreement), including any dispute arising out of or relating in any way to the Financing or the performance thereof or the transactions contemplated thereby, shall be governed by the Laws of the State of New York, without giving effect to any choice of law or conflict of law rules or provisions (whether of the State of New York or any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of New York.

(b)     Without limitation of any Party's right to appeal any Order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may be based upon, arise out of or relate to this Agreement, any breach or default hereunder, or the Transactions and (ii) any and all claims relating to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent and submit to the exclusive jurisdiction and venue of the Bankruptcy Court and irrevocably waive the defense of an inconvenient forum to the maintenance of any such Proceeding; provided, however, that, if the Bankruptcy Case is closed, all Proceedings based upon, arising out of or relating to this Agreement shall be heard and determined in the Delaware Court of Chancery and any state appellate court therefrom within the State of Delaware (or in the event (but only in the event) that such court does not have subject matter jurisdiction over such Proceeding in the United States District Court for the District of Delaware and any federal appellate court therefrom, and the Parties hereby (a) irrevocably and unconditionally submit to the exclusive jurisdiction of the Delaware Court of Chancery and any state appellate court therefrom within the State of Delaware (or in the event (but only in the event) that such court does not have subject matter jurisdiction over such Proceeding in the United States District Court for the District of Delaware and any federal appellate court therefrom) with respect to all Proceedings based upon, arising out of or relating to this Agreement and the Transactions (whether in contract or in tort, in law or in equity or granted by statute); (b) agree that all claims with respect to any such Proceeding shall be heard and determined in such courts and agrees not to commence any Proceeding relating to this Agreement or the Transactions (whether in contract or in tort, in law or in equity or granted by statute) except in such courts; (c) irrevocably and unconditionally waive any objection to the laying of venue of any Proceeding based upon, arising out of or relating to this Agreement or the Transactions and irrevocably and unconditionally waives the defense of an inconvenient forum; and (d) agree that a final judgment in any such Proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Law.  The Parties

agree that any violation of this Section 13.8(b) shall constitute a material breach of this Agreement and shall constitute irreparable harm. The parties hereto agree that a final judgment in any such action or proceeding shall be conclusive and may be enforced in any other jurisdiction by suit on the judgment or in any other manner provided by applicable Law. Notwithstanding anything to the contrary contained in this Agreement, each of the Parties agrees that it will not bring or support any person in any Proceeding of any kind or description, whether in law or in equity, whether in contract or in tort or otherwise, against any of the Financing Sources in any way relating to this Agreement or any of the transaction contemplated by this Agreement, including any dispute arising out of or relating in any way to the Debt Commitment Letter or the performance thereof or the financings contemplated thereby, in any forum other than the federal and New York state courts located in the Borough of Manhattan within the City of New York and any appellate courts therefrom.

(c)     EACH PARTY HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY PROCEEDING DIRECTLY OR INDIRECTLY BASED UPON, ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER IN CONTRACT OR IN TORT, IN LAW OR IN EQUITY OR GRANTED BY STATUTE). EACH PARTY (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTY HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 13.8.

Section 13.9   Counterparts.   This Agreement may be executed in any number of counterparts (including via electronic transmission in portable document format (pdf)) with the same effect as if the signatures to each counterpart were upon a single instrument, and all such counterparts together shall be deemed an original of this Agreement. This Agreement shall become effective when, and only when, each Party shall have received a counterpart hereof signed by the other Party. Delivery of an executed counterpart hereof by means of electronic transmission in portable document format (pdf) shall have the same effect as delivery of a physically executed counterpart in person.

Section 13.10   Parties in Interest; No Third Party Beneficiaries.   Except as set forth in Section 13.12, nothing in this Agreement shall confer any rights, benefits, remedies, obligations, liabilities or claims hereunder upon any Person not a Party or a permitted assignee of a Party; provided that the Financing Sources are intended third party beneficiaries of this Section 13.10, Section 13.6, Section 13.8 and Section 13.12.

Section 13.11   Fees and Expenses.   The Parties agree that, except as otherwise expressly provided in this Agreement, each Party shall bear and pay all costs, fees and expenses that it incurs, or which may be incurred on its behalf, in connection with this Agreement and the Transactions. The pre-Closing costs of any privacy ombudsman shall be borne equally between Buyer, on the one hand, and Sellers, on the other hand, to the extent such costs are incurred in relation to the Transactions.

111

FILED DATE: 5/19/2021 1:27 PM    2020L012403

Section 13.12 <u>Non-Recourse</u>. All Claims and Liabilities that may be based upon, in respect of, arise under, out or by reason of, be connected with or relate in any manner to this Agreement, the negotiation, execution or performance of this Agreement (including any representation or warranty made in connection with or as an inducement to this Agreement) or the Transactions may be made only against (and are those solely of) the Persons that are expressly identified as Parties to this Agreement. No other Person, including any Buyer Related Party (other than Buyer) or any of the Parties' Affiliates, directors, officers, employees, incorporators, members, partners, managers, stockholders, agents, attorneys, or representatives of, or any financial advisors or lenders to (including the Financing Sources in their capacities as such), any of the foregoing (together, the "<u>Non-Recourse Parties</u>") shall have any liabilities for any Claims or Liabilities arising under, out of, in connection with, or related in any manner to, this Agreement, the Transactions or the Debt Financing or based on, in respect of, or by reason of, this Agreement or its negotiation, execution, performance or breach, whether at law, in equity, in contract, in tort or otherwise.

Section 13.13 <u>Schedules; Materiality</u>. The inclusion of any matter in any Schedule shall be deemed to be an inclusion for all purposes of this Agreement, to the extent that the relevance of such disclosure to any Section is readily apparent from the text of such disclosure, but inclusion therein shall not be deemed to constitute an admission, or otherwise imply, that any such matter is material or creates a measure for materiality for purposes of this Agreement. The disclosure of any particular fact or item in any Schedule shall not be deemed an admission as to whether the fact or item is "material" or would constitute a "Material Adverse Effect."

Section 13.14 <u>Specific Performance</u>. The Parties acknowledge and agree that (a) irreparable injury, for which monetary damages, even if available, would not be an adequate remedy, will occur in the event that any of the provisions of this Agreement are not performed in accordance with the specific terms hereof or are otherwise breached, and (b) the non-breaching Party or Parties shall therefore be entitled, in addition to any other remedies that may be available, to obtain (without the posting of any bond) specific performance of the terms of this Agreement by the breaching Party or Parties. If any Proceeding is brought by the non-breaching Party or Parties to enforce this Agreement, the Party in breach shall waive the defense that there is an adequate remedy at Law.

[Signature pages follow]

112

FILED DATE: 5/19/2021 1:27 PM    2020L012403

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed and delivered by their duly authorized representatives, all as of the Effective Date.

**TRANSFORM HOLDCO LLC**

By: _____

Name:        Edward S. Lampert

Title:        Chief Executive Officer

*[Signature Page to Asset Purchase Agreement]*

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**Sears Holdings Corporation**

By: _____

Name:          Robert A. Riecker

Title:          Chief Financial Officer

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**Kmart Holding Corporation**

By:

Name:          Robert A. Riecker

Title:          Chief Financial Officer &
                Director

**Kmart Operations LLC**

By:

Name:     Robert A. Riecker

Title:     Chief Financial Officer &
           Director

FILED DATE: 5/19/2021 1:27 PM     2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Sears Operations LLC**

By:

Name:        Robert A. Riecker

Title:        Chief Financial Officer &
            Director

[Signature Page to Asset Purchase Agreement]

18-23538-shl    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 367 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Sears, Roebuck and Co.**

By:

Name:      Robert A. Riecker

Title:       Chief Financial Officer,
President & Director

[Signature Page to Asset Purchase Agreement]

**ServiceLive, Inc.**

By:

Name:        Robert A. Riecker

Title:        Chief Financial Officer &
             Director

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM  2020L012403

**SHC Licensed Business LLC**

By:

Name:     Robert A. Riecker

Title:    **Chief Financial Officer of Kmart Corporation,
          its Member**

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**A&E Factory Service, LLC**

By:  _____

Name:        Robert A. Riecker

Title:        Vice President & Director

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**A&E Home Delivery, LLC**

By:

Name:       Robert A. Riecker

Title:        Vice President & Director

[Signature Page to Asset Purchase Agreement]

**A&E Lawn & Garden, LLC**

By: _____

Name:        Robert A. Riecker

Title:        Vice President & Director

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**A&E Signature Service, LLC**

By:

Name:          Robert A. Riecker

Title:          Vice President & Director

[Signature Page to Asset Purchase Agreement]

**FBA Holdings Inc.**

By: _____

Name:            Robert A. Riecker

Title:            Chief Financial Officer &
                 Director

FILED DATE: 5/19/2021 1:27 PM        2020L012403

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**Innovel Solutions, Inc.**

By: _____

Name:        Robert A. Riecker

Title:        Chief Financial Officer &
             Director

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Kmart Corporation**

By:

Name:     Robert A. Riecker

Title:      Chief Financial Officer &
Director

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM 2020L012403

**MaxServ, Inc.**

By: _____

Name:      Robert A. Riecker

Title:      Vice President & Director

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Private Brands, Ltd.**

By: _____

Name:      Robert A. Riecker

Title:      Vice President & Director

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**Sears Development Co.**

By: _____

Name:          Robert A. Riecker

Title:          President & Director

[Signature Page to Asset Purchase Agreement]

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 16:14:32 Exhibit A
Pg 381 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**Sears Holdings Management Corporation**

By: _____

Name:     Robert A. Riecker

Title:      President & Director

[Signature Page to Asset Purchase Agreement]

18-23538-shl   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:14:32   Exhibit
Pg 383 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**Sears Home & Business Franchises, Inc.**

By: _____

Name:        Robert A. Riecker

Title:        Vice President & Director

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Sears Home Improvement Products, Inc.**

By: _____

Name:          Robert A. Riecker

Title:          President & Director

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Sears Insurance Services, L.L.C.**

By: _____

Name:        Robert A. Riecker

Title:        Chief Financial Officer

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**Sears Procurement Services, Inc.**

By:

Name:        Robert A. Riecker

Title:        Vice President

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Sears Protection Company**

By: _____

Name:        Robert A. Riecker

Title:        Vice President

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Sears Protection Company (PR), Inc.**

By: _____

Name:      Robert A. Riecker

Title:      Vice President

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Sears Roebuck Acceptance Corp.**

By: _____

Name: Robert A. Riecker

Title: Chief Financial Officer &
Director

[Signature Page to Asset Purchase Agreement]

Sears, Roebuck de Puerto Rico, Inc.

By: _____

Name:        Robert A. Riecker

Title:        Vice President & Director

FILED DATE: 5/19/2021 1:27 PM   2020L012403

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**SYW Relay LLC**

By: _____

Name:     Robert A. Riecker

Title:     **Chief Financial Officer of Sears, Roebuck and Co., its Member**

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**Wally Labs LLC**

By: _____

Name:        Robert A. Riecker

Title:        Vice President

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**SHC Promotions LLC**

By: _____

Name:        Robert A. Riecker

Title:         Chief Financial Officer

[Signature Page to Asset Purchase Agreement]

**Big Beaver of Florida Development, LLC**

By: _____

Name:        Robert A. Riecker

Title:        President

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 393 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**California Builder Appliances, Inc.**

By: _____

Name:          Robert A. Riecker

Title:          Chief Financial Officer &
                Director

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Florida Builder Appliances, Inc.**

By: _____

Name:    Robert A. Riecker

Title:     Chief Financial Officer & Director

[Signature Page to Asset Purchase Agreement]

**KBL Holding Inc.**

By: _____

Name:        Robert A. Riecker

Title:        Vice President & Director

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**Kmart of Michigan, Inc.**

By: _____

Name:      Robert A. Riecker

Title:      Vice President & Director

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Kmart of Washington LLC**

By: _____

Name:    Robert A. Riecker

Title:    **Chief Financial Officer of Kmart Corporation,
its Member**

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Kmart of Illinois LLC**

By: _____

Name:        Robert A. Riecker

Title:        **Chief Financial Officer of Kmart Corporation,
its Member**

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Kmart Stores of Texas LLC**

By:

Name:          Robert A. Riecker

Title:         **Chief Financial Officer of Kmart Corporation, its Member**

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**MyGofer LLC**

By: _____

Name:          Robert A. Riecker

Title:          **Chief Financial Officer of Kmart Corporation,
its Member**

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Sears Brands Business Unit Corporation**

By:

Name:       Robert A. Riecker

Title:       Vice President & Director

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Sears Holdings Publishing Company, LLC**

By: _____

Name:        Robert A. Riecker

Title:        Vice President

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Sears Protection Company (Florida), L.L.C.**

By: _____

Name:        Robert A. Riecker

Title:         Vice President

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**SHC Desert Springs, LLC**

By:

Name:      Robert A. Riecker

Title:      **Chief Financial Officer of Kmart Corporation, its Member**

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**SOE, Inc.**

By: _____

Name:       Robert A. Riecker

Title:       President & Director

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**StarWest, LLC**

By: _____

Name:      Robert A. Riecker

Title:      President & Director

[Signature Page to Asset Purchase Agreement]

**STI Merchandising, Inc.**

By: _____

Name:     Robert A. Riecker

Title:      President & Director

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Troy Coolidge No. 13, LLC**


By: _____


Name:    Robert A. Riecker

Title:    **Chief Financial Officer of Kmart Corporation,
its Member**

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**BlueLight.com, Inc. .**

By:

Name:     Robert A. Riecker

Title:     Vice President & Director

[Signature Page to Asset Purchase Agreement]

18-23538-shl    Doc 2507    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 410 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Sears Brands, L.L.C.**

By: _____

Name:       Robert A. Riecker

Title:       Vice President & Manager

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM 2020L012403

**Sears Buying Services, Inc.**

By: _____

Name:    Robert A. Riecker

Title:    President & Director

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Kmart.com LLC**

By: _____

Name:        Robert A. Riecker

Title:        **Vice President of BlueLight.com, Inc.,
            its Member**

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Sears Brands Management Corporation**

By:

Name:        Robert A. Riecker

Title:        Vice President & Director

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**KLC, Inc.**

By: _____

Name:    Robert A. Riecker

Title:    Vice President & Director

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**SRe Holding Corporation**

By:

Name:        Robert A. Riecker

Title:        Vice President & Director

[Signature Page to Asset Purchase Agreement]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**SRC Sparrow 2 LLC**

By: _____

Name:        Robert A. Riecker

Title:        President & Director

[Signature Page to Asset Purchase Agreement]

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 16:43:32    Exhibit A

IN WITNESS WHEREOF, Sears Reinsurance Company Ltd., a Bermuda Class 3 insurer, has caused this Agreement to be executed and delivered by its duly authorized representatives, and hereby agrees to be bound by all of the terms of this Agreement as a Seller hereunder.

**Sears Reinsurance Company Ltd.**

By: _____

Name:    ROBERT J. PHELAN

Title:    PRESIDENT

Its duly authorized officer

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 190 of 1120

## **Exhibit A**

**Approval Order**

**[Intentionally Omitted]**

FILED DATE: 5/19/2021 1:27 PM   2020L012403

FILED DATE: 5/19/2021 1:27 PM          2020L012403

## Exhibit B

## FORM OF

## IP ASSIGNMENT AGREEMENT

**THIS IP ASSIGNMENT AGREEMENT** ("Assignment"), effective as of [●] ("Effective Date")[1], is made and entered into by and among Sears Holdings Corporation, a corporation organized and existing under the laws of Delaware ("SHC") and each of its Subsidiaries party hereto[2] (all such Subsidiaries and together with SHC, "Assignors"), on the one hand, and [●][3], a [●] organized and existing under the laws of [●] ("Assignee"), on the other hand (each a "Party", and collectively, the "Parties").

**WHEREAS**, pursuant to that certain Asset Purchase Agreement, dated as of [●], by and among Assignors and [Assignee together with any applicable Affiliated Designees][4] (the "Purchase Agreement"), Sellers agreed to sell, transfer, assign, convey and deliver, and [Assignee together with any applicable Affiliated Designees][5] agreed to purchase, the Acquired Assets, including the Acquired Intellectual Property, in each case on the terms and subject to the conditions contained in the Purchase Agreement;

**WHEREAS,** Assignors are the owners of the Acquired Intellectual Property, including, without limitation, each of the Trademarks set forth on Exhibit A-1 hereto, each of the Business Names set forth on Exhibit A-2 hereto, each of the Patents set forth on Exhibit A-3 hereto, each of the Copyrights set forth on Exhibit A-4 hereto, each of the Domain Names set forth on Exhibit A-5 hereto and each of the Media Accounts set forth on Exhibit A-6 hereto (in each case, as applicable, together with all goodwill of the businesses in which the foregoing are used and all goodwill connected with the use of and symbolized by the foregoing);

**WHEREAS**, the Acquired Intellectual Property is included in the Acquired Assets;

**WHEREAS**, as required in the Purchase Agreement, Assignors hereby desire to sell, transfer, assign, convey and deliver to Assignee their entire worldwide right, title and interest

---

[1] **Note to Draft:** Effective Date of this Assignment will be the Closing Date.

[2] **Note to Draft**: Every Subsidiary that is party to the Purchase Agreement, should also be party to this Assignment, as this Assignment effectuates the transfer of all Acquired Intellectual Property (whether registered or unregistered).

[3] **Note to Draft**: Prior to the Closing, Transform Holdco LLC may designate (i) itself as Assignee, (ii) itself and an Affiliated Designee to each receive a portion of the Acquired Intellectual Property, in which case, a separate assignment agreement in the form hereof will be executed for each of Transform Holdco LLC and such assignee, (iii) itself and more than one Affiliated Designee to each receive a portion of the Acquired Intellectual Property, in which case, a separate assignment agreement in the form hereof will be executed for each of Transform Holdco LLC and each such assignee or (iv) more than one Affiliated Designee to each receive a portion of the Acquired Intellectual Property, in which case, a separate assignment agreement in the form hereof will be executed for each such Affiliate.

[4] **Note to Draft**: If Assignee is not Transform Holdco LLC, this bracketed language should be replaced with "Transform Holdco LLC together with any applicable Affiliate Designees, including Assignee".

[5] **Note to Draft**: If Assignee is not Transform Holdco LLC, this bracketed language should be replaced with "Transform Holdco LLC together with any applicable Affiliate Designees, including Assignee".

18-23538-rdd   Doc 2307-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 421 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

in, to and under the Acquired Intellectual Property; and

**WHEREAS**, Assignee desires to acquire the Acquired Intellectual Property from Assignors.

**NOW, THEREFORE**, in consideration of the premises and covenants hereinafter contained, in consideration of the representations, warranties and covenants contained in the Purchase Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties desire to enter into this Assignment on the terms set forth herein.

Intending to be legally bound, the Parties agree as follows:

1.      Unless otherwise defined herein, all capitalized terms used herein shall have the meanings ascribed to such terms in the Purchase Agreement.

2.      As of the Effective Date, Assignors hereby irrevocably sell, convey, assign and transfer to Assignee, and its successors and assigns, their entire worldwide right, title and interest in, to and under the Acquired Intellectual Property free and clear of all Encumbrances (other than Permitted Encumbrances), the same to be held and enjoyed by Assignee for its own use and enjoyment and the use and enjoyment of its successors, assigns and other legal representatives as fully and entirely as the same would have been held and enjoyed by Assignors if this IP Assignment Agreement had not been made, together with (A) the rights to all causes of action (whether known or unknown or whether currently pending, filed or otherwise) and other enforcement rights under, or on account of, any of the Acquired Intellectual Property, including the right to sue and recover damages and obtain equitable relief for past, present and future infringement, misappropriation, dilution or other violation, (B) all rights to collect past and future income, royalties, damages and other payments now or hereafter due or payable under or on account of any of the Acquired Intellectual Property, (C) the right to prosecute, register, maintain and defend the Acquired Intellectual Property before any public or private agency, office or registrar, (D) the right, if any, to claim priority based on the filing dates of the Acquired Intellectual Property under any Law, including under the International Convention for the Protection of Industrial Property, the Patent Cooperation Treaty, the European Patent Convention, the Paris Convention and all other treaties of like purposes, (E) the right to fully and entirely stand in the place of Assignors in all matters related to the Acquired Intellectual Property, (F) all other rights corresponding to the Acquired Intellectual Property throughout the respective countries in which Assignors hold rights in the Acquired Intellectual Property and (G) all goodwill of the businesses in which the foregoing are used and all goodwill connected with the use of and symbolized by the foregoing.  This foregoing assignment is intended to be an absolute assignment and not by way of security.

3.      This Assignment is binding upon, and inures to the benefit of, the Parties and their respective legal representatives, successors and assigns.

4.      The respective rights of Assignor and Assignee with respect to the Acquired Intellectual Property sold, conveyed, transferred, assigned and delivered hereby to the

2

Assignee shall be governed exclusively by the Purchase Agreement, and nothing in this Assignment shall alter any Liability arising under the Purchase Agreement, which shall (without limiting the generality of the foregoing) govern, and shall contain the sole and exclusive representations and warranties of the Parties with respect to such Acquired Intellectual Property. If there is any conflict or inconsistency between the provisions of the Purchase Agreement and this Assignment, the provisions of the Purchase Agreement shall govern.  Notwithstanding anything to the contrary in this Assignment, nothing herein (other than Section 6, Section 7 and Section 8) is intended to, nor shall it, extend, amplify or otherwise alter any representation, warranty, covenant or obligation contained in the Purchase Agreement.

5.     Except to the extent the mandatory provisions of the Bankruptcy Code apply, this Assignment and all claims or causes of action (whether in contract or in tort, in law or in equity or granted by statute) that may be based upon, arise out of or relate to this Assignment or the negotiation, execution or performance of this Assignment (including any claim or cause of action based upon, arising out of or related to any representation or warranty made in or in connection with this Assignment or as an inducement to enter into this Assignment) shall be governed by, and construed in accordance with, the laws of the State of Delaware applicable to Contracts made and to be performed entirely in such state without regard to principles of conflicts or choice of laws or any other Law that would make the laws of any other jurisdiction other than the State of Delaware applicable hereto.

6.     Upon reasonable request by Assignee, the applicable Assignors will timely execute and deliver any additional documents (including those referenced in Section 7 below) and take such other actions as may be necessary or desirable to record or memorialize the assignments of the Acquired Intellectual Property set forth herein, or to vest or perfect in Assignee such right, title, and interest in, to and under the Acquired Intellectual Property.  If Assignee is unable for any reason to secure any Assignor's signature to any document it is entitled to hereunder (including those referenced in Section 7 below), each Assignor hereby irrevocably designates and appoints Assignee, and Assignee's duly authorized officers, agents and representatives, as its agents and attorneys-in-fact with full power of substitution to act for and on the behalf and instead of such Assignor, to execute and file any such document or documents and to do all other lawfully permitted acts to further the purposes of this Assignment with the same legal force and effect as if executed by such Assignor.  Assignors shall not enter into any agreement in conflict with this Assignment.

7.     Each Assignor agrees that (i) with respect to any Trademarks, Patents or Copyrights issued, filed or registered in the United States and included in the Acquired Intellectual Property, at Closing, it will enter into an assignment agreement substantially in the form set forth in Schedule 1, Schedule 2 or Schedule 3, as applicable, (ii) with respect to any Domain Names included in the Acquired Intellectual Property, at Closing, it will enter into an agreement substantially in the form of Schedule 4 and (iii) with respect to any Intellectual Property included in the Acquired Intellectual Property that is issued, filed or registered in a jurisdiction outside of the United States, at Closing, it will enter into an assignment agreement suitable for recording in the relevant jurisdictions with terms and conditions substantially similar to those set forth in Schedule 1, Schedule 2 or Schedule 3, as applicable, except for any different

3

terms and conditions that would be necessary in a recordable assignment agreement for the respective local jurisdiction.

8.      Assignee shall be responsible for the preparation and filing of such additional documents that may be reasonably necessary to record or perfect Assignee's right, title and interest in, to and under the Acquired Intellectual Property (including with any applicable Governmental Authorities) and for any and all costs, expenses and fees associated with the recordation or perfection of the sale, conveyance, transfer and assignment to Assignee of the Acquired Intellectual Property at the United States Patent and Trademark Office, and each of the corresponding entities or agencies in any applicable foreign countries or multinational authorities.  Assignors and Assignee shall each pay their own costs with respect to any notarization, legalization and other equivalent actions required on such Party's behalf for the execution and recordation of any document it is entitled to under Section 6 or Section 7 hereof.

9.      No amendment, modification or discharge of this Assignment, and no waiver hereunder, shall be valid or binding unless set forth in writing and duly executed by each Party.  Any such waiver shall constitute a waiver only with respect to the specific matter described in such writing and shall in no way impair the rights of the Party granting such waiver in any other respect or at any other time.  Neither the waiver by any of the Parties of a breach of or a default under any of the provisions of this Assignment, nor the failure by any of the Parties, on one or more occasions, to enforce any of the provisions of this Assignment or to exercise any right or privilege hereunder shall be construed as a waiver of any other breach or default of a similar nature, or as a waiver of any of such provisions, rights or privileges hereunder.  No course of dealing between or among the Parties shall be deemed effective to modify, amend or discharge any part of this Assignment or any rights to payment of any Party under or by reason of this Assignment.

10.     This Assignment may be executed and delivered in any number of counterparts (including by facsimile transmission or other means of electronic transmission, such as by electronic mail in "pdf" form) with the same effect as if the signatures to each counterpart were upon a single instrument, each of which when executed shall be deemed to be an original and all such counterparts together shall be deemed an original of this Assignment.  Delivery of an executed counterpart hereof by means of electronic transmission in portable document format (pdf) shall have the same effect as delivery of a physically executed counterpart in person.

11.     Section 13.4 (Entire Agreement), Section 13.7 (Severability), Section 13.8(c) (Waiver of Jury Trial) and Section 13.14 (Specific Performance) of the Purchase Agreement are incorporated herein by reference, *mutatis mutandis*.  In this Assignment, (i) whenever the word "including" is used, it is deemed to be followed by the words "without limitation" and (ii) "or" is used in the inclusive sense of "and/or".

[Signature pages follow]

4

IN WITNESS WHEREOF, the Parties, through their authorized representatives, have caused this Assignment to be duly executed and delivered as of the Effective Date.

ASSIGNOR[6]:

**[•]**

By: _____
Name:
Title:

FILED DATE: 5/19/2021 1:27 PM   2020L012403

---

[6] **Note to Draft**:  This signature block should be duplicated for each applicable Assignor (each Seller under the Purchase Agreement).

[Signature Page to IP Assignment Agreement]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

ASSIGNEE:

**[●]**

By: _____
Name:
Title:

[Signature Page to IP Assignment Agreement]

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 425 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

# EXHIBIT A

## ACQUIRED IP

[Exhibit A to mirror the schedules of registered, issued and applied-for Trademarks, Patents, Copyrights, Domain Names, and Business Names and Media Accounts, in each case included on Schedule 2.1(a) of the Purchase Agreement, provided that Exhibit A shall also include any registered, issued or applied-for Trademarks, Patents, Copyrights, Domain Names, Business Names or Media Accounts included in the Acquired Intellectual Property identified after signing and not listed on Schedule 2.1(a)(i)-(vi) of the Purchase Agreement.]

[Exhibit A to IP Assignment Agreement]

18-23538-rdd    Doc 2507    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 426 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

## SCHEDULE 1

## FORM OF

## TRADEMARK ASSIGNMENT AGREEMENT

This TRADEMARK ASSIGNMENT AGREEMENT, effective as of [●] ("**Effective Date**"), is between [●][7] ("**Assignor**") and [●][8] ("**Assignee**").

## W I T N E S S E T H:

WHEREAS, Sears Holdings Corporation, a corporation organized and existing under the laws of Delaware ("SHC", together with each of its Subsidiaries party thereto, the "**Sellers**") and [Assignee][9] have entered into that certain Asset Purchase Agreement, dated [●] (the "**Purchase Agreement**"), pursuant to which Sellers have agreed to sell, convey, transfer, assign and deliver to Assignee, and [Assignee together with any applicable Affiliated Designees][10] have agreed to purchase from Sellers, all of their respective right, title and interest in, to and under all Trademarks included in the Acquired Intellectual Property, including without limitation those trademark registrations and applications for registration listed in Exhibit A (such Trademarks, the "**Transferred Marks**"), and all goodwill of the businesses in which the foregoing are used and all goodwill connected with the use of and symbolized by the foregoing;

WHEREAS, Assignor is the owner of the Transferred Marks and all goodwill of the businesses in which the foregoing are used and all goodwill connected with the use of and symbolized by the foregoing;

WHEREAS, [Assignee][11] will be, as of the Effective Date, the successor in interest to the business of Assignor to which the Transferred Marks pertain, and such business is ongoing and existing; and

WHEREAS, pursuant to the Purchase Agreement, Assignor agrees to sell, convey, transfer, assign and deliver to Assignee, and Assignee wishes to acquire from Assignor, Assignor's entire

---

[7] **Note to Draft**: To duplicate the short-form and replace Assignor with each Assignor listed as a record owner of the Trademarks under Schedule 2.1(a)(i) to the Purchase Agreement (or the record owner of any other registered or applied-for Trademarks included in the Acquired Intellectual Property identified after signing and not listed on Schedule 2.1(a)(i)).

[8] **Note to Draft**: Prior to the Closing, Transform Holdco LLC may designate (i) itself as Assignee, (ii) itself and an Affiliated Designee to each receive a portion of the Transferred Marks, in which case, a separate short-form assignment agreement in the form hereof will be executed for each of Transform Holdco LLC and such assignee, (iii) itself and more than one Affiliated Designee to each receive a portion of the Transferred Marks, in which case, a separate short-form assignment agreement in the form hereof will be executed for each of Transform Holdco LLC and each such assignee or (iv) more than one Affiliated Designee to each receive a portion of the Transferred Marks, in which case, a separate short-form assignment agreement in the form hereof will be executed for each such Affiliate.

[9] **Note to Draft**: To adjust the party if Assignee is not Transform Holdco LLC.

[10] **Note to Draft**: If Assignee is not Transform Holdco LLC, this bracketed language should be replaced with "Transform Holdco LLC together with any applicable Affiliate Designees".

[11] **Note to Draft**: To adjust the party if Assignee is not Transform Holdco LLC.

[Schedule 1 to IP Assignment Agreement]

FILED DATE: 5/19/2021 1:27 PM   2020L012403

right, title and interest in, to and under the Transferred Marks, and all goodwill of the businesses in which the foregoing are used and all goodwill connected with the use of and symbolized by the foregoing.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises and agreements contained in this Trademark Assignment Agreement, in the Purchase Agreement, in the IP Assignment Agreement and in the other Transaction Documents, and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1.      Assignment.  Pursuant to and subject to the terms and conditions of the Purchase Agreement, Assignor, as of the Effective Date, hereby irrevocably sells, conveys, transfers and assigns to Assignee, and its successors and assigns, and Assignee hereby accepts, Assignor's entire right, title and interest in, to and under the Transferred Marks, and any renewals thereof, all registrations that have been or may be granted thereon, all applications for registrations thereof, all common law rights thereto and all goodwill of the businesses in which the foregoing are used and all goodwill connected with the use of and symbolized by the foregoing, for Assignee's own use and enjoyment, and for the use and enjoyment of Assignee's successors, assigns and other legal representatives, as fully and entirely as the same would have been held and enjoyed by Assignor if this Trademark Assignment Agreement had not been made, together with (A) the rights to all causes of action (whether known or unknown or whether currently pending, filed or otherwise) and other enforcement rights under, or on account of, any of the Transferred Marks, including the right to sue and recover damages and obtain equitable relief for past, present and future infringement, misappropriation, dilution or other violation, (B) all rights to collect past and future income, royalties, damages and other payments now or hereafter due or payable under or on account of any of the Transferred Marks, (C) the right, if any, to claim priority based on the filing dates of the Transferred Marks under any Law, (D) the right to prosecute, register, maintain and defend the Transferred Marks before any public or private agency, office or registrar, (E) the right to fully and entirely stand in the place of Assignor in all matters related to the Transferred Marks and (F) all other rights corresponding to the Transferred Marks throughout the respective countries in which Assignor holds rights in the Transferred Marks.  This foregoing assignment is intended to be an absolute assignment and not by way of security.

2.      Cooperation.  (A) Assignor shall, at its expense, timely take all reasonable actions and execute and deliver all documents that Assignee may reasonably request to effect the terms of this Trademark Assignment Agreement and to perfect Assignee's title in, to and under the Transferred Marks.

(B) If Assignee is unable for any reason to secure Assignor's signature to any document it is entitled to under Section 2(A) hereof, Assignor hereby irrevocably designates and appoints Assignee, and Assignee's duly authorized officers, agents and representatives, as its agents and attorneys-in-fact with full power of substitution to act for and on the behalf and instead of Assignor, to execute and file any such document or documents and to do all other lawfully permitted acts to effect the terms of this Trademark Assignment Agreement with the same legal force and effect as if executed by Assignor.  Assignor shall not enter into any agreement in conflict with this Trademark Assignment Agreement.

2

3.     Recordation.  Assignee shall be responsible for the preparation and filing of such additional documents that may be reasonably necessary to record or perfect Assignee's right, title and interest in, to and under the Transferred Marks (including with any applicable Governmental Authorities) and for any and all costs, expenses and fees associated with the recordation or perfection of the sale, conveyance, transfer and assignment to Assignee of the Transferred Marks at the United States Patent and Trademark Office, and each of the corresponding entities or agencies in any applicable foreign countries or multinational authorities.  Assignor and Assignee shall each pay its own costs with respect to any notarization, legalization and other equivalent actions required on such party's behalf for the execution and recordation of this Trademark Assignment Agreement and any other document provided pursuant to Section 2(A) hereof.  Assignor hereby authorizes the Director of Patents and Trademarks in the United States Patent and Trademark Office, and the corresponding entities or agencies in any applicable foreign countries or multinational authorities, to record Assignee as the assignee and owner of the Transferred Marks, and to deliver to Assignee and to Assignee's attorneys, agents, representatives, successors or assigns, all official documents and communications as may be warranted by this Trademark Assignment Agreement.

4.     Governing Law; Venue; Jury Trial.  Except to the extent the mandatory provisions of the Bankruptcy Code apply, this Assignment and all claims or causes of action (whether in contract or in tort, in law or in equity or granted by statute) that may be based upon, arise out of or relate to this Assignment or the negotiation, execution or performance of this Assignment (including any claim or cause of action based upon, arising out of or related to any representation or warranty made in or in connection with this Assignment or as an inducement to enter into this Assignment) shall be governed by, and construed in accordance with, the laws of the State of Delaware applicable to Contracts made and to be performed entirely in such state without regard to principles of conflicts or choice of laws or any other Law that would make the laws of any other jurisdiction other than the State of Delaware applicable hereto.  The venue and waiver of jury trial provisions of Section 13.8 of the Purchase Agreement are incorporated herein by reference, *mutatis mutandis*.

5.     General Provisions.  All capitalized terms used in this Trademark Assignment Agreement and not defined herein shall have the meanings set forth in the Purchase Agreement.  Whenever the word "including" is used in this Trademark Assignment Agreement, it shall be deemed to be followed by the words "without limitation" and whenever the word "or" is used in this Trademark Assignment Agreement, it is used in the inclusive sense of "and/or."  This Trademark Assignment Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same instrument.  Delivery of an executed counterpart of a signature page to this Trademark Assignment Agreement by facsimile or electronic mail shall be as effective as delivery of a manually executed counterpart of this Trademark Assignment Agreement.  This Trademark Assignment Agreement, along with its Exhibit, the IP Assignment Agreement, the other Transaction Documents, the Purchase Agreement and the Schedules and Exhibits of the IP Assignment Agreement, the other Transaction Documents and the Purchase Agreement, constitute the entire understanding and agreement of the parties hereto with respect to the subject matter hereof and supersede all prior and contemporaneous agreements or understandings, inducements or conditions, express or implied, written or oral, between and among the parties with respect to the subject matter hereof.  This Trademark Assignment Agreement may not be

3

FILED DATE: 5/19/2021 1:27 PM    2020L012403

amended, modified, supplemented, changed or waived in any manner except by a writing signed by all parties hereto. The failure of any party to enforce any terms or provisions of this Trademark Assignment Agreement shall not waive any of its rights under such terms or provisions. Each of the parties shall be entitled to injunctive or other equitable relief to prevent or cure breaches of this Trademark Assignment Agreement and, in addition to any other remedy to which they are entitled at Law or in equity, to enforce specifically the terms and provisions hereof, such remedy being in addition to any other remedy to which any party may be entitled at Law or in equity. This Trademark Assignment Agreement is binding upon and inures to the benefit of the parties hereto and their respective successors and assigns. In the event of any conflict between the Purchase Agreement and this Trademark Assignment Agreement, the provisions of the Purchase Agreement shall control.

**[Remainder of this page intentionally left blank]**

4

FILED DATE: 5/19/2021 1:27 PM    2020L012403

WHEREFORE, Assignor and Assignee have duly executed this Trademark Assignment Agreement on the date indicated below.

Date: _____ __, _____

**ASSIGNOR**

By _____
    Name:
    Title:

State of _____      )
                           ss.:
County of _____       )

On the ___ day of _____ in the year _____ before me, the undersigned, a Notary Public in and for said State, personally appeared, _____personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is signed on the preceding instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which this individual acted, executed the instrument.

_____
Notary Public

My commission expires: _____

Dated: _____

[Signature Page to Trademark Assignment Agreement]

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 403 of 1420

FILED DATE: 5/19/2021 1:27 PM   2020L012403

Date: _____ __, _____

**ASSIGNEE**

By _____
   Name:
   Title:

[Signature Page to Trademark Assignment Agreement]

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**EXHIBIT A**

**TRANSFERRED MARKS**[12]

| Trademark | Owner | Application Number | Application Date | Registration Number | Registration Date |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

---

[12] **Note to Draft**:  Exhibit A shall be populated with those Trademarks listed on Schedule 2.1(a)(i) to the Purchase Agreement, provided that Exhibit A shall also include any registered or applied-for Trademarks included in the Acquired Intellectual Property identified after signing and not listed on Schedule 2.1(a)(i).

[Exhibit A to Trademark Assignment Agreement]

18-23538-rdd    Doc 2507    Filed 02/08/19    Entered 02/08/19 16:14:32    Exhibit A
Pg 433 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

## SCHEDULE 2

## FORM OF

## PATENT ASSIGNMENT AGREEMENT

This PATENT ASSIGNMENT AGREEMENT, effective as of [●] ("**Effective Date**"), is between [●][13] ("**Assignor**") and [●][14] ("**Assignee**").

### W I T N E S S E T H:

WHEREAS, Sears Holdings Corporation, a corporation organized and existing under the laws of Delaware ("SHC", together with each of its Subsidiaries party thereto, the "**Sellers**") and [Assignee][15] have entered into that certain Asset Purchase Agreement, dated [●] (the "**Purchase Agreement**"), pursuant to which Sellers have agreed to sell, convey, transfer, assign and deliver to Assignee, and [Assignee together with any applicable Affiliated Designees][16] have agreed to purchase from Sellers, all of their respective right, title and interest in, to and under all patents and patent applications included in the Acquired Intellectual Property, including without limitation those patent and patent applications listed in Exhibit A (such patents and patent applications, the "**Transferred Patents**");

WHEREAS, Assignor is the owner of the Transferred Patents; and

WHEREAS, pursuant to the Purchase Agreement, Assignor agrees to sell, convey, transfer, assign and deliver to Assignee, and Assignee wishes to acquire from Assignor, Assignor's entire right, title and interest in, to and under the Transferred Patents.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises and agreements contained in this Patent Assignment Agreement, in the Purchase Agreement, in the IP Assignment Agreement and in the other Transaction Documents, and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

---

[13] **Note to Draft**: To duplicate the short-form and replace Assignor with each Assignor listed as a record owner of the Patents under Schedule 2.1(a)(iii) to the Purchase Agreement (or the record owner of any other registered or applied-for Patents included in the Acquired Intellectual Property identified after signing and not listed on Schedule 2.1(a)(iii)).

[14] **Note to Draft**: Prior to the Closing, Transform Holdco LLC may designate (i) itself as Assignee, (ii) itself and an Affiliated Designee to each receive a portion of the Transferred Patents, in which case, a separate short-form assignment agreement in the form hereof will be executed for each of Transform Holdco LLC and such assignee, (iii) itself and more than one Affiliated Designee to each receive a portion of the Transferred Patents, in which case, a separate short-form assignment agreement in the form hereof will be executed for each of Transform Holdco LLC and each such assignee or (iv) more than one Affiliated Designee to each receive a portion of the Transferred Patents, in which case, a separate short-form assignment agreement in the form hereof will be executed for each such Affiliate.

[15] **Note to Draft**: To adjust the party if Assignee is not Transform Holdco LLC.

[16] **Note to Draft**: If Assignee is not Transform Holdco LLC, this bracketed language should be replaced with "Transform Holdco LLC together with any applicable Affiliate Designees".

[Schedule 2 to IP Assignment Agreement]

FILED DATE: 5/19/2021 1:27 PM   2020L012403

1.   <u>Assignment</u>.  Pursuant to and subject to the terms and conditions of the Purchase Agreement, Assignor, as of the Effective Date, hereby irrevocably sells, conveys, transfers and assigns to Assignee, and its successors and assigns, and Assignee hereby accepts, Assignor's entire right, title and interest in, to and under the Transferred Patents, including the inventions claimed therein and any reissues, reexaminations, divisionals, continuations, continuations-in-part, extensions, provisionals, substitutions and counterparts of such Transferred Patents already granted and which may be granted therefrom, for Assignee's own use and enjoyment, and for the use and enjoyment of Assignee's successors, assigns and other legal representatives, as fully and entirely as the same would have been held and enjoyed by Assignor if this Patent Assignment Agreement had not been made, together with (A) the rights to all causes of action (whether known or unknown or whether currently pending, filed or otherwise) and other enforcement rights under, or on account of, any of the Transferred Patents, including the right to sue and recover damages and obtain equitable relief for past, present and future infringement, misappropriation or other violation, (B) all rights to collect past and future income, royalties, damages and other payments now or hereafter due or payable under or on account of any of the Transferred Patents, (C) the right, if any, to claim priority based on the filing dates of the Transferred Patents under any Law, including under the International Convention for the Protection of Industrial Property, the Patent Cooperation Treaty, the European Patent Convention, the Paris Convention and all other treaties of like purposes, (D) the right to prosecute, register, maintain and defend the Transferred Patents before any public or private agency, office or registrar, (E) the right to fully and entirely stand in the place of Assignor in all matters related to the Transferred Patents and (F) all other rights corresponding to the Transferred Patents throughout the respective countries in which Assignor holds rights in the Transferred Patents.  This foregoing assignment is intended to be an absolute assignment and not by way of security.

2.   <u>Cooperation</u>.  (A) Assignor shall, at its expense, timely take all reasonable actions and execute and deliver all documents that Assignee may reasonably request to effect the terms of this Patent Assignment Agreement and to perfect Assignee's title in, to and under the Transferred Patents.

(B) If Assignee is unable for any reason to secure Assignor's signature to any document it is entitled to under <u>Section 2(A)</u> hereof, Assignor hereby irrevocably designates and appoints Assignee, and Assignee's duly authorized officers, agents and representatives, as its agents and attorneys-in-fact with full power of substitution to act for and on the behalf and instead of Assignor, to execute and file any such document or documents and to do all other lawfully permitted acts to effect the terms of this Patent Assignment Agreement with the same legal force and effect as if executed by Assignor.  Assignor shall not enter into any agreement in conflict with this Patent Assignment Agreement.

3.   <u>Recordation</u>.  Assignee shall be responsible for the preparation and filing of such additional documents that may be reasonably necessary to record or perfect Assignee's right, title and interest in, to and under the Transferred Patents (including with any applicable Governmental Authorities), and for any and all costs, expenses and fees associated with the recordation or perfection of the sale, conveyance, transfer and assignment to Assignee of the Transferred Patents at the United States Patent and Trademark Office, and each of the

2

FILED DATE: 5/19/2021 1:27 PM   2020L012403

corresponding entities or agencies in any applicable foreign countries or multinational authorities.  Assignor and Assignee shall each pay its own costs with respect to any notarization, legalization and other equivalent actions required on such party's behalf for the execution and recordation of this Patent Assignment Agreement and any other document it is entitled to under Section 2(A) hereof.  Assignor hereby authorizes the Director of Patents and Trademarks in the United States Patent and Trademark Office, and the corresponding entities or agencies in any applicable foreign countries or multinational authorities, to record Assignee as the assignee and owner of the Transferred Patents, and to deliver to Assignee and to Assignee's attorneys, agents, representatives, successors or assigns, all official documents and communications as may be warranted by this Patent Assignment Agreement.

       4.     <u>Governing Law; Venue; Jury Trial</u>.  Except to the extent the mandatory provisions of the Bankruptcy Code apply, this Assignment and all claims or causes of action (whether in contract or in tort, in law or in equity or granted by statute) that may be based upon, arise out of or relate to this Assignment or the negotiation, execution or performance of this Assignment (including any claim or cause of action based upon, arising out of or related to any representation or warranty made in or in connection with this Assignment or as an inducement to enter into this Assignment) shall be governed by, and construed in accordance with, the laws of the State of Delaware applicable to Contracts made and to be performed entirely in such state without regard to principles of conflicts or choice of laws or any other Law that would make the laws of any other jurisdiction other than the State of Delaware applicable hereto..  The venue and waiver of jury trial provisions of <u>Section 13.8</u> of the Purchase Agreement are incorporated herein by reference, *mutatis mutandis*.

       5.     <u>General Provisions</u>.  All capitalized terms used in this Patent Assignment Agreement and not defined herein shall have the meanings set forth in the Purchase Agreement.  Whenever the word "including" is used in this Patent Assignment Agreement, it shall be deemed to be followed by the words "without limitation" and whenever the word "or" is used in this Patent Assignment Agreement, it is used in the inclusive sense of "and/or."  This Patent Assignment Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same instrument.  Delivery of an executed counterpart of a signature page to this Patent Assignment Agreement by facsimile or electronic mail shall be as effective as delivery of a manually executed counterpart of this Patent Assignment Agreement.  This Patent Assignment Agreement, along with its Exhibit, the IP Assignment Agreement, the other Transaction Documents, the Purchase Agreement and the Schedules and Exhibits of the IP Assignment Agreement, the other Transaction Documents and the Purchase Agreement, constitute the entire understanding and agreement of the parties hereto with respect to the subject matter hereof and supersede all prior and contemporaneous agreements or understandings, inducements or conditions, express or implied, written or oral, between and among the parties with respect to the subject matter hereof.  This Patent Assignment Agreement may not be amended, modified, supplemented, changed or waived in any manner except by a writing signed by all parties hereto.  The failure of any party to enforce any terms or provisions of this Patent Assignment Agreement shall not waive any of its rights under such terms or provisions.  Each of the parties shall be entitled to injunctive or other equitable relief to prevent or cure breaches of this Patent Assignment Agreement and, in addition to any other remedy to which they are entitled at Law or in equity, to enforce

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 15:44:32   Exhibit A

FILED DATE: 5/19/2021 1:27 PM   2020L012403

specifically the terms and provisions hereof, such remedy being in addition to any other remedy to which any party may be entitled at Law or in equity.  This Patent Assignment Agreement is binding upon and inures to the benefit of the parties hereto and their respective successors and assigns.  In the event of any conflict between the Purchase Agreement and this Patent Assignment Agreement, the provisions of the Purchase Agreement shall control.

**[Remainder of this page intentionally left blank]**

18-23538-rdd Doc 2307 Filed 02/06/19 Entered 02/06/19 16:44:32 Exhibit A
Pg 409 of 1150

FILED DATE: 5/19/2021 1:27 PM    2020L012403

WHEREFORE, Assignor and Assignee have duly executed this Patent Assignment Agreement on the date indicated below.

Date: _____ __, _____

**ASSIGNOR**

By  _____
Name:
Title:

State of _____      )
                                          ss.:
County of _____      )

On the ___ day of _____ in the year _____ before me, the undersigned, a Notary Public in and for said State, personally appeared, _____personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is signed on the preceding instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which this individual acted, executed the instrument.

_____
Notary Public

My commission expires: _____

Dated: _____

[Signature Page to Patent Assignment Agreement]

FILED DATE: 5/19/2021 1:27 PM   2020L012403

Date: _____ __, _____

**ASSIGNEE**

By _____

Name:

Title:

[Signature Page to Patent Assignment Agreement]

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 15:44:32   Exhibit A
Pg 111 of 1450

FILED DATE: 5/19/2021 1:27 PM          2020L012403

# EXHIBIT A

## TRANSFERRED PATENTS[17]

| Patent | Owner | Application Number | Application Date | Patent Number | Issue Date |
|--------|-------|--------------------|------------------|---------------|------------|
|        |       |                    |                  |               |            |

---

[17] **Note to Draft**: Exhibit A shall be populated with those Patents listed on Schedule 2.1(a)(iii) to the Purchase Agreement Disclosure Schedules, provided that Exhibit A shall also include any issued or applied-for patents included in the Acquired Intellectual Property identified after signing and not listed on Schedule 2.01(a).

[Exhibit A to Patent Assignment Agreement]

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**SCHEDULE 3**

**FORM OF**

**COPYRIGHT ASSIGNMENT AGREEMENT**

This COPYRIGHT ASSIGNMENT AGREEMENT, effective as of [●] ("**Effective Date**"), is between [●][18] ("**Assignor**") and [●] [19] ("**Assignee**").

W I T N E S S E T H :

WHEREAS, Sears Holdings Corporation, a corporation organized and existing under the laws of Delaware ("**SHC**", together with each of its Subsidiaries party thereto, the "**Sellers**") and [Assignee][20] have entered into that certain Kenmore Asset Purchase Agreement, dated [●] (the "**Purchase Agreement**"), pursuant to which Sellers have agreed to sell, convey, transfer, assign and deliver to Assignee, and [Assignee together with any applicable Affiliated Designees][21] have agreed to purchase from Sellers, all of their respective right, title and interest in, to and under all copyright registrations and applications for registration included in the Acquired Intellectual Property, including without limitation those copyright registrations and applications for registration listed in Exhibit A (such copyrights, the "**Transferred Copyrights**");

WHEREAS, Assignor is the owner of the Transferred Copyrights; and

WHEREAS, pursuant to the Purchase Agreement, Assignor agrees to sell, convey, transfer, assign and deliver to Assignee, and Assignee wishes to acquire from Assignor, Assignor's entire right, title and interest in, to and under the Transferred Copyrights.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises and agreements contained in this Copyright Assignment Agreement, in the Purchase Agreement, in the IP Assignment Agreement and in the other Transaction Documents, and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1. <u>Assignment</u>. Pursuant to and subject to the terms and conditions of the Purchase Agreement, Assignor, as of the Effective Date, hereby irrevocably sells, conveys,

---

[18] **Note to Draft**: To duplicate the short-form and replace Assignor with each Assignor listed as a record owner of the Copyrights under Schedule 2.1(a)(iv) to the Purchase Agreement (or the record owner of any other registered or applied-for Copyrights included in the Acquired Intellectual Property identified after signing and not listed on Schedule 2.1(a)(iv)).

[19] **Note to Draft**: Prior to the Closing, Transform Holdco LLC may designate (i) itself as Assignee, (ii) itself and an Affiliated Designee to each receive a portion of the Transferred Copyrights, in which case, a separate short-form assignment agreement in the form hereof will be executed for each of Transform Holdco LLC and such assignee, (iii) itself and more than one Affiliated Designee to each receive a portion of the Transferred Copyrights, in which case, a separate short-form assignment agreement in the form hereof will be executed for each of Transform Holdco LLC and each such assignee or (iv) more than one Affiliated Designee to each receive a portion of the Transferred Copyrights, in which case, a separate short-form assignment agreement in the form hereof will be executed for each such Affiliate.

[20] **Note to Draft**: To adjust the party if Assignee is not Transform Holdco LLC.

[21] **Note to Draft**: If Assignee is not Transform Holdco LLC, this bracketed language should be replaced with "Transform Holdco LLC together with any applicable Affiliate Designees".

18-23538-shl   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:14:32   Exhibit A
Pg 413 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

transfers and assigns to Assignee, and its successors and assigns, and Assignee hereby accepts, Assignor's entire right, title and interest in, to and under the Transferred Copyrights, and any renewals or extensions thereof, all registrations that have been or may be granted thereon, all applications for registration, together with all rights derived therefrom, including all statutory and contractual rights and any moral rights that Assignor has the ability to assign, for Assignee's own use and enjoyment, and for the use and enjoyment of Assignee's successors, assigns and other legal representatives, as fully and entirely as the same would have been held and enjoyed by Assignor if this Copyright Assignment Agreement had not been made, together with (A) the rights to all causes of action (whether known or unknown or whether currently pending, filed or otherwise) and other enforcement rights under, or on account of, any of the Transferred Copyrights, including the right to sue and recover damages and obtain equitable relief for past, present and future infringement, misappropriation or other violation, (B) all rights to collect past and future income, royalties, damages and other payments now or hereafter due or payable under or on account of any of the Transferred Copyrights, (C) the right to prosecute, register, maintain and defend the Transferred Copyrights before any public or private agency, office or registrar, (D) the right to fully and entirely stand in the place of Assignor in all matters related to the Transferred Copyrights and (E) all other rights corresponding to the Transferred Copyrights throughout the respective countries in which Assignor holds rights in the Transferred Copyrights. This foregoing assignment is intended to be an absolute assignment and not by way of security.

2.    <u>Cooperation</u>.  (A) Assignor shall, at its expense, timely take all reasonable actions and execute and deliver all documents that Assignee may reasonably request to effect the terms of this Copyright Assignment Agreement and to perfect Assignee's title in, to and under the Transferred Copyrights.

(B) If Assignee is unable for any reason to secure Assignor's signature to any document it is entitled to under <u>Section 2(A)</u> hereof, Assignor hereby irrevocably designates and appoints Assignee, and Assignee's duly authorized officers, agents and representatives, as its agents and attorneys-in-fact with full power of substitution to act for and on the behalf and instead of Assignor, to execute and file any such document or documents and to do all other lawfully permitted acts to effect the terms of this Copyright Assignment Agreement with the same legal force and effect as if executed by Assignor.  Assignor shall not enter into any agreement in conflict with this Copyright Assignment Agreement.

3.    <u>Recordation</u>.  Assignee shall be responsible for the preparation and filing of such additional documents that may be reasonably necessary to record or perfect Assignee's right, title and interest in, to and under the Transferred Copyrights (including with any applicable Governmental Authorities), and for any and all costs, expenses and fees associated with the recordation or perfection of the sale, conveyance, transfer and assignment to Assignee of the Transferred Copyrights at the U.S. Copyright Office, and each of the corresponding entities or agencies in any applicable foreign countries or multinational authorities. Assignor and Assignee shall each pay its own costs with respect to any notarization, legalization and other equivalent actions required on such party's behalf for the execution and recordation of this Copyright Assignment Agreement and any other document it is entitled to under Section 2(A) hereof. Assignor hereby authorizes the Register of Copyrights of the United States, and the corresponding entities or agencies in any applicable foreign countries or multinational authorities, to record Assignee as the assignee and owner of the Transferred Copyrights, and to

2

FILED DATE: 5/19/2021 1:27 PM     2020L012403

deliver to Assignee and to Assignee's attorneys, agents, representatives, successors or assigns, all official documents and communications as may be warranted by this Copyright Assignment Agreement, including Certificates of Copyright in the Transferred Copyrights.

       4.    <u>Governing Law; Venue; Jury Trial</u>. Except to the extent the mandatory provisions of the Bankruptcy Code apply, this Assignment and all claims or causes of action (whether in contract or in tort, in law or in equity or granted by statute) that may be based upon, arise out of or relate to this Assignment or the negotiation, execution or performance of this Assignment (including any claim or cause of action based upon, arising out of or related to any representation or warranty made in or in connection with this Assignment or as an inducement to enter into this Assignment) shall be governed by, and construed in accordance with, the laws of the State of Delaware applicable to Contracts made and to be performed entirely in such state without regard to principles of conflicts or choice of laws or any other Law that would make the laws of any other jurisdiction other than the State of Delaware applicable hereto.. The venue and waiver of jury trial provisions of Section 13.8 of the Purchase Agreement are incorporated herein by reference, *mutatis mutandis*.

       5.    <u>General Provisions</u>. All capitalized terms used in this Copyright Assignment Agreement and not defined herein shall have the meanings set forth in the Purchase Agreement. Whenever the word "including" is used in this Copyright Assignment Agreement, it shall be deemed to be followed by the words "without limitation" and whenever the word "or" is used in this Copyright Assignment Agreement, it is used in the inclusive sense of "and/or." This Copyright Assignment Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Copyright Assignment Agreement by facsimile or electronic mail shall be as effective as delivery of a manually executed counterpart of this Copyright Assignment Agreement. This Copyright Assignment Agreement, along with its Exhibit, the IP Assignment Agreement, the other Transaction Documents, the Purchase Agreement and the Schedules and Exhibits of the IP Assignment Agreement, the other Transaction Documents and the Purchase Agreement, constitute the entire understanding and agreement of the parties hereto with respect to the subject matter hereof and supersede all prior and contemporaneous agreements or understandings, inducements or conditions, express or implied, written or oral, between and among the parties with respect to the subject matter hereof. This Copyright Assignment Agreement may not be amended, modified, supplemented, changed or waived in any manner except by a writing signed by all parties hereto. The failure of any party to enforce any terms or provisions of this Copyright Assignment Agreement shall not waive any of its rights under such terms or provisions. Each of the parties shall be entitled to injunctive or other equitable relief to prevent or cure breaches of this Copyright Assignment Agreement and, in addition to any other remedy to which they are entitled at Law or in equity, to enforce specifically the terms and provisions hereof, such remedy being in addition to any other remedy to which any party may be entitled at Law or in equity. This Copyright Assignment Agreement is binding upon and inures to the benefit of the parties hereto and their respective successors and assigns. In the event of any conflict between the Purchase Agreement and this Copyright Assignment Agreement, the provisions of the Purchase Agreement shall control.

**[Remainder of this page intentionally left blank]**

3

FILED DATE: 5/19/2021 1:27 PM   2020L012403

WHEREFORE, Assignor and Assignee have duly executed this Copyright Assignment Agreement on the date indicated below.

Date: _____ __, _____

**ASSIGNOR**

By _____

Name:

Title:

State of _____   )

ss.:

County of _____   )

On the ___ day of _____ in the year _____ before me, the undersigned, a Notary Public in and for said State, personally appeared, _____personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is signed on the preceding instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which this individual acted, executed the instrument.

_____

Notary Public

My commission expires: _____

Dated: _____

[Signature Page to Copyright Assignment Agreement]

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 216 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

Date: _____ \_\_, _____

**ASSIGNEE**

By _____
Name:
Title:

[Signature Page to Copyright Assignment Agreement]

18-23538-rdd Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 445 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

# EXHIBIT A

## **TRANSFERRED COPYRIGHTS**[22]

| Copyright | Owner | Application Number | Application Date | Registration Number | Registration Date |
|-----------|-------|--------------------|-----------------|--------------------|-------------------|
|           |       |                    |                 |                    |                   |

---

[22] **Note to Draft**: Exhibit A shall be populated with those Copyrights listed on Schedule 2.1(a)(iv) to the Purchase Agreement, provided that Exhibit A shall also include any registered or applied-for Copyright included in the Acquired Intellectual Property identified after signing and not listed on Schedule 2.1(a)(iv).

[Exhibit A to Copyright Assignment Agreement]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

## SCHEDULE 4

## FORM OF

## DOMAIN NAME ASSIGNMENT AGREEMENT

This DOMAIN NAME ASSIGNMENT AGREEMENT, effective as of [●] ("**Effective Date**"), is between [●][23] ("**Assignor**") and [●][24] ("**Assignee**").

W I T N E S S E T H:

WHEREAS, Sears Holdings Corporation, a corporation organized and existing under the laws of Delaware ("SHC", together with each of its Subsidiaries party thereto, the "**Sellers**") and [Assignee][25] have entered into that certain Asset Purchase Agreement, dated [●] (the "**Purchase Agreement**"), pursuant to which Sellers have agreed to sell, convey, transfer, assign and deliver to Assignee, and [Assignee together with any applicable Affiliated Designees][26] have agreed to purchase from Sellers, all of their respective right, title and interest in, to and under all Internet domain names included in the Acquired Intellectual Property, including without limitation those Internet domain names listed in Exhibit A (such Domain Names, the "**Transferred Domain Names**");

WHEREAS, Assignor is the registered owner of the Transferred Domain Names; and

WHEREAS, pursuant to the Purchase Agreement, Assignor agrees to sell, convey, transfer, assign and deliver to Assignee, and Assignee wishes to acquire from Assignor, Assignor's entire right, title and interest in, to and under the Transferred Domain Names.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises and agreements contained in this Domain Names Assignment Agreement, in the Purchase Agreement, in the IP Assignment Agreement and in the other Transaction Documents, and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1.    Assignment.  Pursuant to and subject to the terms and conditions of the Purchase Agreement, Assignor, as of the Effective Date, hereby irrevocably sells, conveys, transfers and assigns to Assignee, and its successors and assigns, and Assignee hereby accepts,

---

[23] **Note to Draft**: To duplicate the short-form and replace Assignor with each Assignor listed as a record owner of the Domain Names under Schedule 2.1(a)(v) to the Purchase Agreement (or the record owner of any other Domain Names included in the Acquired Intellectual Property identified after signing and not listed on Schedule 2.1(a)(v)).
[24] **Note to Draft**:  Prior to the Closing, Transform Holdco LLC may designate (i) itself as Assignee, (ii) itself and an Affiliated Designee to each receive a portion of the Transferred Domain Names, in which case, a separate short-form assignment agreement in the form hereof will be executed for each of Transform Holdco LLC and such assignee, (iii) itself and more than one Affiliated Designee to each receive a portion of the Transferred Domain Names, in which case, a separate short-form assignment agreement in the form hereof will be executed for each of Transform Holdco LLC and each such assignee or (iv) more than one Affiliated Designee to each receive a portion of the Transferred Domain Names, in which case, a separate short-form assignment agreement in the form hereof will be executed for each such Affiliate.
[25] **Note to Draft**:  To adjust the party if Assignee is not Transform Holdco LLC.
[26] **Note to Draft**:  If Assignee is not Transform Holdco LLC, this bracketed language should be replaced with "Transform Holdco LLC together with any applicable Affiliate Designees".

18-23538-shl   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:14:32   Exhibit A
Pg 419 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

Assignor's entire right, title and interest in, to and under the Transferred Domain Names, together with all rights derived therefrom, including statutory and contractual rights, for Assignee's own use and enjoyment, and for the use and enjoyment of Assignee's successors, assigns and other legal representatives, as fully and entirely as the same would have been held and enjoyed by Assignor if this Domain Name Assignment Agreement had not been made, together with (A) the rights to all causes of action (whether known or unknown or whether currently pending, filed or otherwise) and other enforcement rights under, or on account of, any of the Transferred Domain Names (B) all rights to collect past and future income, royalties, damages and other payments nor or hereafter due or payable under or on account of any of the Transferred Domain Names, (C) the right to fully and entirely stand in the place of Assignor in all matters related to the Transferred Domain Names and (D) all other rights corresponding to the Transferred Domain Names.  This foregoing assignment is intended to be an absolute assignment and not by way of security.

2.        <u>Cooperation</u>.  (A) Assignor shall, at its expense, timely take all reasonable actions and execute and deliver all documents (including affidavits, testimonies, declarations, oaths, samples, exhibits and specimens) that Assignee may reasonably request to effect the terms of this Domain Name Assignment Agreement and to assist Assignee in changing the registrant, technical and administrative contact information for the Transferred Domain Names with the applicable domain name registrars to such information of Assignee's choice (including, without limitation, by delivering to Assignee any and all applicable user names and passwords for any accounts related to the Transferred Domain Names to enable Assignee to assume control of the Transferred Domain Names) and in obtaining, securing, maintaining and enforcing its rights in, to and under the Transferred Domain Names worldwide.

(B) If Assignee is unable for any reason to secure Assignor's signature to any document it is entitled to under <u>Section 2(A)</u> hereof, Assignor hereby irrevocably designates and appoints Assignee, and Assignee's duly authorized officers, agents and representatives, as its agents and attorneys-in-fact with full power of substitution to act for and on the behalf and instead of Assignor, to execute and file any such document or documents and to do all other lawfully permitted acts to effect the terms of this Domain Name Assignment Agreement with the same legal force and effect as if executed by Assignor.  Assignor shall not enter into any agreement in conflict with this Domain Name Assignment Agreement.

3.        <u>Governing Law; Venue; Jury Trial</u>.  Except to the extent the mandatory provisions of the Bankruptcy Code apply, this Assignment and all claims or causes of action (whether in contract or in tort, in law or in equity or granted by statute) that may be based upon, arise out of or relate to this Assignment or the negotiation, execution or performance of this Assignment (including any claim or cause of action based upon, arising out of or related to any representation or warranty made in or in connection with this Assignment or as an inducement to enter into this Assignment) shall be governed by, and construed in accordance with, the laws of the State of Delaware applicable to Contracts made and to be performed entirely in such state without regard to principles of conflicts or choice of laws or any other Law that would make the laws of any other jurisdiction other than the State of Delaware applicable hereto.  The venue and waiver of jury trial provisions of Section 13.8 of the Purchase Agreement are incorporated herein by reference, *mutatis mutandis*.

FILED DATE: 5/19/2021 1:27 PM     2020L012403

4.     <u>General Provisions</u>.  All capitalized terms used in this Domain Name Assignment Agreement and not defined herein shall have the meanings set forth in the Purchase Agreement.  Whenever the word "including" is used in this Domain Name Assignment Agreement, it shall be deemed to be followed by the words "without limitation" and whenever the word "or" is used in this Domain Name Assignment Agreement, it is used in the inclusive sense of "and/or."  This Domain Name Assignment Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same instrument.  Delivery of an executed counterpart of a signature page to this Domain Name Assignment Agreement by facsimile or electronic mail shall be as effective as delivery of a manually executed counterpart of this Domain Name Assignment Agreement.  This Domain Name Assignment Agreement, along with its Exhibit, the IP Assignment Agreement, the other Transaction Documents, the Purchase Agreement and the Schedules and Exhibits of the IP Assignment Agreement, the other Transaction Documents and the Purchase Agreement, constitute the entire understanding and agreement of the parties hereto with respect to the subject matter hereof and supersede all prior and contemporaneous agreements or understandings, inducements or conditions, express or implied, written or oral, between and among the parties with respect to the subject matter hereof.  This Domain Name Assignment Agreement may not be amended, modified, supplemented, changed or waived in any manner except by a writing signed by all parties hereto.  The failure of any party to enforce any terms or provisions of this Domain Name Assignment Agreement shall not waive any of its rights under such terms or provisions.  Each of the parties shall be entitled to injunctive or other equitable relief to prevent or cure breaches of this Domain Name Assignment Agreement and, in addition to any other remedy to which they are entitled at Law or in equity, to enforce specifically the terms and provisions hereof, such remedy being in addition to any other remedy to which any party may be entitled at Law or in equity.  This Domain Name Assignment Agreement is binding upon and inures to the benefit of the parties hereto and their respective successors and assigns.  In the event of any conflict between the Purchase Agreement and this Domain Name Assignment Agreement, the provisions of the Purchase Agreement shall control.

**[Remainder of this page intentionally left blank]**

18-23538-shl   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 221 of 1120

FILED DATE: 5/19/2021 1:27 PM    2020L012403

WHEREFORE, Assignor and Assignee have duly executed this Domain Name Assignment Agreement on the date indicated below.

Date: _____ __, _____

**ASSIGNOR**

By    _____

Name:

Title:

State of _____    )

                       ss.:

County of _____    )

On the ___ day of _____ in the year _____ before me, the undersigned, a Notary Public in and for said State, personally appeared, _____personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is signed on the preceding instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which this individual acted, executed the instrument.

_____

Notary Public

My commission expires: _____

Dated: _____

[Signature Page to Domain Name Assignment Agreement]

FILED DATE: 5/19/2021 1:27 PM   2020L012403

Date: _____ __, _____

**ASSIGNEE**

By _____

Name: 

Title: 

[Signature Page to Domain Name Assignment Agreement]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

# EXHIBIT A

## TRANSFERRED DOMAIN NAMES[27]

| Domain Name |
| --- |
|  |

---

[27] **Note to Draft**:  Exhibit A shall be populated with those Domain Names listed on Schedule 2.1(a)(v) to the Purchase Agreement, provided that Exhibit A shall also include any registered or applied-for Domain Names included in the Acquired Intellectual Property identified after signing and not listed on Schedule 2.1(a)(v).

[Exhibit A to Domain Name Assignment Agreement]

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit
Pg 452 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

## Exhibit C

## FORM OF

## POWER OF ATTORNEY

[●][1] ("<u>Assignor</u>") hereby appoints Transform Holdco LLC ("**Assignee**") and its successors, assigns and transferees (such appointment being coupled with an interest) as its true and lawful agent and attorney-in-fact, with the authority and the full power of substitution, in the name and stead of Assignor but on behalf and for the benefit of Assignee, to take and execute in the name of Assignor any and all actions and documents that may be deemed proper to effectuate, consummate, record, perfect or confirm the assignment, transfer, conveyance and delivery to Assignee of all intellectual property owned by Assignor, including the trademark registrations and applications set forth on <u>Schedule A</u> (the "**Listed Trademarks**"), the patents and patent applications set forth on <u>Schedule B</u> (the "**Listed Patents**"), the copyright registrations and applications set forth on <u>Schedule C</u> (the "**Listed Copyrights**"), the domain names set forth on <u>Schedule D</u> (the "**Listed Domain Names**"), the social media accounts, identifiers and handles set forth on <u>Schedule E</u> (the "**Listed Media Accounts**") and the trade names, fictitious business names, corporate names and d/b/a names set forth on <u>Schedule F</u> (the "**Listed Business Names**").  This Power of Attorney includes the authority to delegate, and to appoint attorneys and agents.

This document is effective as of [●][2].  This Power of Attorney does not prevent or restrict Assignor in any manner from acting on its own behalf with respect to taking and executing any and all actions and documents that may be deemed proper to effectuate, consummate, record, perfect or confirm the assignment, transfer, conveyance and delivery to Assignee of all such intellectual property.

Assignor hereby ratifies and confirms whatever Assignee does or purports to do in good faith in the exercise of any power conferred by this Power of Attorney.  Assignor declares that a person who deals with Assignee may accept a written statement signed by Assignee, its delegates,

---

[1] **Note to Draft**: To duplicate this Power of Attorney and replace Assignor with each Assignor listed as a record owner of the Trademarks, Patents, Copyrights, Domain Names and Media Accounts set forth Schedule 2.1(a) to the Purchase Agreement (or the record owner of any other registered , issued or applied-for Intellectual Property included in the Acquired Intellectual Property identified after signing and not listed on Schedule 2.1(a)).

[2] **Note to Draft**:  The effective date of this Power of Attorney shall be the Closing Date.

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 2 of 14

FILED DATE: 5/19/2021 1:27 PM   2020L012403

attorneys, or agents, to the effect that this Power of Attorney has not been revoked as conclusive evidence of that fact.

Assignee hereby agrees to indemnify, defend and hold harmless Assignor, for so long as Assignor is in existence, from and against any and all losses resulting from third party claims that arise out of Assignee's acts in the exercise of any power conferred solely by this Power of Attorney.

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 456 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

      WHEREFORE, Assignor has duly executed this Power of Attorney on the date indicated below.

Date: _____ __, _____

                                          **ASSIGNOR**

                                     By _____

                                           Name:

                                           Title:

State of _____  )

                     ss.:

County of _____  )

On the ___ day of _____ in the year _____ before me, the undersigned, a Notary Public in and for said State, personally appeared, _____ personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is signed on the preceding instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which this individual acted, executed the instrument.

                                        _____
                                        Notary Public

My commission expires: _____

Dated: _____

                                  [Signature Page to Power of Attorney]

## Schedule A

## LISTED TRADEMARKS[3]

---

[3] **Note to Draft**:  Schedule A shall be populated with those Trademarks listed on Schedule 2.1(a)(i) to the Purchase Agreement, provided that Schedule A shall also include any registered or applied-for Trademark included in the Acquired Intellectual Property identified after signing and not listed on Schedule 2.1(a)(i).

[Schedule A to Power of Attorney]

FILED DATE: 5/19/2021 1:27 PM  2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

## Schedule B

## LISTED PATENTS[4]

---

[4] **Note to Draft**:  Schedule B shall be populated with those Patents listed on Schedule 2.1(a)(iii) to the Purchase Agreement, provided that Schedule B shall also include any issued or applied-for Patent included in the Acquired Intellectual Property identified after signing and not listed on Schedule 2.1(a)(iii).

[Schedule B to Power of Attorney]

FILED DATE: 5/19/2021 1:27 PM   2020L012403

## Schedule C

## LISTED COPYRIGHTS[5]

---

[5] **Note to Draft**:  Schedule C shall be populated with those Copyrights listed on Schedule 2.01(a)(iv) to the Purchase Agreement, provided that Schedule C shall also include any registered or applied-for Copyright included in the Acquired Intellectual Property identified after signing and not listed on Schedule 2.1(a)(iv).

[Schedule C to Power of Attorney]

**Schedule D**

**LISTED DOMAIN NAMES**[6]

---

[6] **Note to Draft**:  Schedule D shall be populated with those Domain Names listed on Schedule 2.1(a)(v) to the Purchase Agreement, provided that Schedule D shall also include any Domain Names included in the Acquired Intellectual Property identified after signing and not listed on Schedule 2.1(a)(v).

[Schedule D to Power of Attorney]

FILED DATE: 5/19/2021 1:27 PM  2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

## Schedule E

## LISTED MEDIA ACCOUNTS[7]

---

[7] **Note to Draft**:  Schedule E shall be populated with those Media Accounts listed on Schedule 2.1(a)(vi) to the Purchase Agreement, provided that Schedule E shall also include any Media Accounts included in the Acquired Intellectual Property identified after signing and not listed on Schedule 2.1(a)(vi).

[Schedule E to Power of Attorney]

FILED DATE: 5/19/2021 1:27 PM   2020L012403

## **Schedule F**

## **LISTED BUSINESS NAMES**[8]

---

[8] **Note to Draft**:  Schedule F shall be populated with those Business Names listed on Schedule 2.1(a)(ii) to the Purchase Agreement, provided that Schedule F shall also include any Business Names included in the Acquired Intellectual Property identified after signing and not listed on Schedule 2.1(a)(ii).

[Schedule F to Power of Attorney]

FILED DATE: 5/19/2021 1:27 PM        2020L012403

## Exhibit D

## OCCUPANCY AGREEMENT

**THIS OCCUPANCY AGREEMENT** ("<u>Occupancy Agreement</u>") is effective as of the [●] day of [●], 2018, by and between Sears Holdings Corporation, a Delaware corporation ("<u>Licensor</u>") and [●] ("<u>Licensee</u>").

## RECITALS:

A.      Licensor and Licensee are parties to that certain Asset Purchase Agreement dated as of [●], 2018 (the "<u>Purchase Agreement</u>") pursuant to which the Licensor agreed to sell to the Licensee the Designation Rights and the Acquired Assets and to transfer to Licensee the Assumed Liabilities and the Licensee agreed to purchase from the Licensor the Designation Rights and the Acquired Assets and to assume from the Licensor the Assumed Liabilities, in each case on the terms and subject to the conditions set forth in the Purchase Agreement.

B.      Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Purchase Agreement.

C.      The transactions contemplated by the Purchase Agreement were consummated on the date hereof ("<u>Closing Date</u>");

D.      Prior to the Closing Date, the Business and one or more affiliates of Licensor occupied the Leased Properties related to the Designatable Leases.

E.      Pursuant to <u>Section 5.1(c)</u> of the Purchase Agreement, the operation of the Lease Premises for each of the Leased Properties associated with the (x) Operating Leased Stores during the Designation Rights Period and (y) GOB Leased Stores following the end of the applicable GOB Period for each such GOB Leased Stores until the end of the Designation Rights Period (collectively, the "<u>Occupancy Leased Premises</u>") will be governed by the terms of this Occupancy Agreement.

**NOW THEREFORE**, in consideration of the foregoing recitals, the mutual covenants and agreements set forth herein, Licensor and Licensee do hereby agree as follows:

1.      <u>Grant of License</u>.  Licensor hereby grants to Licensee an exclusive license to use and occupy the Occupancy Leased Premises during the Term (as defined below).  It is hereby specifically acknowledged and agreed to by both Licensor and Licensee that this

[AM_ACTIVE 401039999_2]

Occupancy Agreement is not intended to negate or supersede the terms of the Purchase Agreement nor are the terms of the Purchase Agreement intended to negate or supersede the terms of this Occupancy Agreement, and to the extent of any conflict, the terms of the Purchase Agreement shall govern and control.

2.      Use.

(a)     The Occupancy Leased Premises may be used by Licensee in a manner that is substantially similar to the manner in which the Occupancy Leased Premises were used for the operation of the Business immediately prior to the Closing Date; provided, that for the avoidance of doubt, Licensee shall not be required to conduct business in the GOB Leased Stores in any manner following the end of the GOB Period.  Subject to the terms of the Purchase Agreement, Licensee shall comply with all federal, state and local governmental laws, rules, regulations and ordinances applicable to Licensee's use and/or occupancy of the Occupancy Leased Premises during the Term (collectively, the "Applicable Laws") and with any leases or other agreements affecting Licensor's rights with respect to the Occupancy Leased Premises.  During the Designation Rights Period, Licensee will be permitted to operate the Occupancy Leased Premises pursuant to this Occupancy Agreement.

3.      Term.  The term of this Occupancy Agreement (the "Term") shall, with respect to each Operating Leased Store commence on the Closing Date and with respect to each GOB Leased Store commence on the day immediately following the end of the GOB Period, and shall, in each case case, expire with respect to each Occupancy Leased Premises upon the expiration of the Designation Rights Period as set forth in the Purchase Agreement.

4.      Consideration.  Licensee shall not have any obligation to pay any compensation to Licensor for the use and/or occupancy of the Occupancy Leased Premises during the Term other than that set forth in the Purchase Agreement.

5.      Expenses; Condition of Occupancy Leased Premises.  Licensee shall pay directly (or reimburse Licensor) for all Expenses incurred in connection with the Occupancy Leased Premises during the Term solely in accordance with Section 5.1(b) the Purchase Agreement. Licensee agrees, at its sole cost and expense, to (i) repair any damage to the Occupancy Leased Premises that arises as a result of a casualty event occurring during the Term and (ii) maintain the Occupancy Leased Premises during the Term in a condition substantially similar to that existing as of the Closing Date; provided, that for the avoidance of doubt, Licensee shall not be required to conduct business in the GOB Leased Stores in any manner following the end of the GOB Period.

6.      Alterations.  During the Term, Licensee shall not make any material alterations to or undertake any material construction at the Occupancy Leased Premises, including modifications to the exterior of the building and signage, without the prior written approval of Licensor, such approval not to be unreasonably withheld, delayed or conditioned.

2

[AM_ACTIVE 401039999_2]

FILED DATE: 5/19/2021 1:27 PM      2020L012403

18-23538-shl   Doc 9507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 463 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

7.     Liens.  During the Term, Licensee shall keep the Occupancy Leased Premises and appurtenant easements free from any liens (other than Permitted Post-Closing Encumbrances) for any labor or material furnished to Licensee in connection with any work performed at the Occupancy Leased Premises by Licensee or its contractors or agents during the Term, except that Licensee shall have the right to contest the validity or amount of any such lien provided that Licensee shall maintain adequate reserves with respect to the same contest, to the extent required in accordance with GAAP.

8.     Surrender.  If the Designatable Lease for any Occupancy Leased Premises does not become designated for assumption and assignment pursuant to a Buyer Assumption Notice on or before the end of the Designation Rights Period in accordance with [Section 5.2] of the Purchase Agreement, then upon expiration of the Term, Licensee shall remove all Acquired Inventory and other personal property from the Occupancy Leased Premises prior to expiration of the Term and shall deliver possession of the Occupancy Leased Premises to Licensor with all Inventory and other personal property removed and otherwise in substantially the same condition as existed on the Closing Date.  Any Licensee's property left on the Occupancy Leased Premises after expiration of the Term shall be deemed abandoned and Licensor shall have no Liability with respect thereto and Licensor may dispose of and/or demolish any such property without compensation to Licensee.

9.     As Is.   Subject to the terms of the Purchase Agreement, Licensee hereby acknowledges that Licensee accepts the Occupancy Leased Premises in "AS IS" condition without any representation or warranty of any kind.  Licensee has performed and is relying solely on its own investigation or independent inquires as to the condition of the Occupancy Leased Premises or Licensee has elected to waive any right to perform its own investigation or independent inquiries as to the condition of the Occupancy Leased Premises and agrees that, except as set forth in the Purchase Agreement, Licensee is not relying on any representation of Licensor regarding the physical condition of the Occupancy Leased Premises, any environmental matters affecting the Occupancy Leased Premises or regarding the suitability of the Occupancy Leased Premises for any particular purpose.  [Subject to the terms of the Purchase Agreement, ]Licensee agrees to accept the Property from Licensor in such condition.

10.     Risk of Loss.  Licensee shall bear the responsibility and Liability for any loss of or damage to any Inventory or any of Licensee's property located at, on or about the Occupancy Leased Premises during the Term.

11.     Insurance, Indemnity.

(a)     Licensor shall have the sole obligation to maintain insurance with respect to the Occupancy Leased Premises during the Term and during the Term Licensor shall maintain casualty, Liability and other insurance with respect to the Occupancy Leased Premises that is substantially similar to the insurance coverage maintained by Licensor with respect to the Occupancy Leased Premises prior to the date of the Purchase Agreement.

3

[AM_ACTIVE 401039999_2]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

(b)    Licensee shall indemnify and hold Licensor and Licensor's parents, subsidiaries and affiliated companies and their respective officers, directors, shareholders, agents, employees, invitees, customers, guests, contractors or subcontractors (collectively, "Licensor Parties") harmless from and against all claims, actions, losses, damages, costs and expenses (including without limitation all reasonable attorney's fees and court costs), and Liabilities (except those caused by the willful misconduct or grossly negligent acts or omissions of Licensor after the Closing Date), arising out of Licensee's use and occupancy of the Occupancy Leased Premises, including without limitation, any of same arising out of actual or alleged injury to or death of any person or loss of or damage to property in or on the Occupancy Leased Premises, in each case solely during the Term.    The terms of this paragraph shall survive the termination of this Occupancy Agreement.

12.    Destruction (Fire or Other Cause) and Eminent Domain.    In the event of casualty or taking of all of any part of the Occupancy Leased Premises under the power of eminent domain, all insurance recoveries and all warranty and condemnation proceeds received or receivable during the Term with respect to such Occupancy Leased Premises shall be held in escrow with a depository institution selected by Licensor and Licensee solely in their reasonable discretion, and immediately following the Designation Rights Period, such depository institution shall either (i) pay any such recoveries or proceeds to Licensee to the extent relating to any Designatable Lease that is an Acquired Lease or (ii) pay any such recoveries or proceeds to Licensor to the extent relating to any Designatable Lease that is not an Acquired Lease.    During the Term, Licensee will use commercially reasonable efforts to provide Licensor with prompt notice of any Casualty/Condemnation Event.

13.    Assignment.    Except as otherwise provided in the Purchase Agreement, during the Term of this Occupancy Agreement, Licensee shall not assign this Occupancy Agreement or further license the use and/or occupancy of all or any part of the Occupancy Leased Premises.

14.    Notices.    Any notice, consent or other communication required or permitted under this Agreement shall be in writing and shall be delivered (a) in person, (b) via e-mail or (c) by a nationally recognized courier for overnight delivery service.    A notice or communication shall be deemed to have been effectively given (i) if in person, upon personal delivery to the Party to whom the notice is directed, (ii) if via e-mail, on the date of successful transmission and (iii) if by nationally recognized courier, one Business Day after delivery to such courier.    Rejection or other refusal to accept or inability to deliver because of changed address of which no notice has been received shall also constitute receipt.    Any such notice, election, demand, request or response shall be addressed as follows:

If to Licensee:    Sears Holdings Corporation
3333 Beverly Road, Dept. 824RE
Hoffman Estates, Illinois  60179
Attn: General Counsel; Senior Vice President
and President, Real Estate

4

[AM_ACTIVE 401039999_2]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

Email: counsel@searshc.com; [●]

| Copy to (which shall not constitute notice): | Sears Holdings Corporation<br>3333 Beverly Road, Dept. 824RE<br>Hoffman Estates, Illinois  60179<br>Attn: Associate General Counsel, Real Estate<br>Email: [●] |
|---|---|

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attention: Ray C. Schrock, P.C., Ellen J. Odoner, Gavin Westerman and Sunny Singh
E-mail:  Ray.Schrock@weil.com;
Ellen.Odoner@weil.com;
Gavin.Westerman@weil.com;
Sunny.Singh@weil.com

If to Licensor:          [●]

| Copy to (which shall not constitute notice): | Cleary Gottlieb Steen & Hamilton LLP<br>One Liberty Plaza<br>New York, NY 10006<br>Attention:  Christopher E. Austin, Benet J. O'Reilly, Sean A. O'Neal and Joseph Lanzkron<br>E-mail: caustin@cgsh.com; boreilly@cgsh.com; soneal@cgsh.com, jlanzkron@cgsh.com |
|---|---|

or to any other address furnished in writing by either party, provided that, any change of address furnished shall comply with the notice requirements of this Section 14.

15.     Licensor Access.  During the Term of this Occupancy Agreement, Licensor shall only be permitted access to the Occupancy Leased Premises in the event of an emergency or as otherwise reasonably requested by Licensor by reasonable notice to Licensee, provided that there is no unreasonable interference with Licensee's use and occupancy of the Occupancy Leased Premises (taking into account the nature of the emergency).

16.     Miscellaneous.

[AM_ACTIVE 401039999_2]

18-23538-shl    Doc 2507    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 456 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

     (c)    <u>Voluntary Agreement</u>.  The parties have read this Occupancy Agreement and the mutual releases contained in it, and on advice of counsel they have freely and voluntarily entered into this Occupancy Agreement.

     (d)    <u>Governing Law.</u>  This Occupancy Agreement shall be construed and enforceable in accordance with the laws indicated in Section 13.8(a) of the Purchase Agreement. Any lawsuit brought by Licensor or Licensee against the other must comply with the requirements of [Section 13.7] of the Purchase Agreement.

     (e)    <u>Consent to Jurisdiction</u>.  Without limitation of any party's right to appeal any Order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Occupancy Agreement and to decide any claims or disputes which may be based upon, arise out of or relate to this Occupancy Agreement, any breach or default hereunder, or the transactions contemplated hereby and (ii) any and all claims relating to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent and submit to the exclusive jurisdiction and venue of the Bankruptcy Court and irrevocably waive the defense of an inconvenient forum to the maintenance of any such Proceeding; <u>provided</u>, <u>however</u>, that, if the Bankruptcy Case is closed, all Proceedings based upon, arising out of or relating to this Occupancy Agreement shall be heard and determined in a Delaware state court or a federal court sitting in the State of Delaware, and the parties hereby (a) irrevocably and unconditionally submit to the exclusive jurisdiction of the Delaware Court of Chancery and any state appellate court therefrom within the State of Delaware (or in the event (but only in the event) that such court does not have subject matter jurisdiction over such Proceeding in the United States District Court for the District of Delaware) with respect to all Proceedings based upon, arising out of or relating to this Occupancy Agreement and the transactions contemplated hereby (whether in contract or in tort, in law or in equity or granted by statute); (b) agree that all claims with respect to any such Proceeding shall be heard and determined in such courts and agrees not to commence any Proceeding relating to this Occupancy Agreement or the transactions contemplated hereby (whether in contract or in tort, in law or in equity or granted by statute) except in such courts; (c) irrevocably and unconditionally waive any objection to the laying of venue of any Proceeding based upon, arising out of or relating to this Occupancy Agreement or the transactions contemplated hereby and irrevocably and unconditionally waives the defense of an inconvenient forum; and (d) agree that a final judgment in any such Proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Law. The Parties agree that any violation of this <u>Section 16(b)</u> shall constitute a material breach of this Occupancy Agreement and shall constitute irreparable harm.  Notwithstanding anything to the contrary contained in this Occupancy Agreement or in the Purchase Agreement, each of the Parties agrees that it will not bring or support any person in any Proceeding of any kind or description, whether in law or in equity, whether in contract or in tort or otherwise, against any of the Debt Financing Sources in any way relating to this Occupancy Agreement or the Purchase Agreement or any of the transactions contemplated by either, including any dispute arising out of or relating in any way to the Debt Commitment Letter or the performance thereof or the financings contemplated thereby, in any forum other than the federal and New York state courts located in the Borough of Manhattan within the City of New York and any appellate courts therefrom. The Debt Financing Sources are intended third party beneficiaries of this Section 16(b).

6

[AM_ACTIVE 401039999_2]

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 459 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

(f)    WAIVER OF TRIAL BY JURY; INJUNCTION.  LICENSOR AND LICENSEE EACH HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY PROCEEDING DIRECTLY OR INDIRECTLY BASED UPON, ARISING OUT OF OR RELATING TO THIS OCCUPANCY AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER IN CONTRACT OR IN TORT, IN LAW OR IN EQUITY OR GRANTED BY STATUTE).  EACH OF LICENSOR AND LICENSEE (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER SUCH PARTY HAVE BEEN INDUCED TO ENTER INTO THIS OCCUPANCY AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 16(c).  THE DEBT FINANCING SOURCES ARE INTENDED THIRD PARTY BENEFICIARIES OF THIS SECTION 16(c).

(g)    Agreements.  This Occupancy Agreement together with the Purchase Agreement and the other Transaction Documents constitutes the entire agreement between Licensee and Licensor with respect to the subject matter hereof, and there are no other covenants, agreements, promises, terms, provisions, conditions, undertakings, or understandings, either oral or written, between them concerning the Occupancy Leased Premises other than those herein and therein set forth.  Nothing in this Occupancy Agreement shall alter any Liability arising under the Purchase Agreement.  If there is any conflict or inconsistency between the provisions of the Purchase Agreement and this Occupancy Agreement, the provisions of the Purchase Agreement shall govern.

(h)    Amendment; Waiver.  No amendment, modification or discharge of this Occupancy Agreement, and no waiver hereunder, shall be valid or binding unless set forth in writing and duly executed by Licensee and Licensor.  Any such waiver shall constitute a waiver only with respect to the specific matter described in such writing and shall in no way impair the rights of the party granting such waiver in any other respect or at any other time.  Neither the waiver by any of the Licensee or Licensor of a breach of or a default under any of the provisions of this Occupancy Agreement, nor the failure by any of the parties, on one or more occasions, to enforce any of the provisions of this Occupancy Agreement or to exercise any right or privilege hereunder shall be construed as a waiver of any other breach or default of a similar nature, or as a waiver of any of such provisions, rights or privileges hereunder.  No course of dealing between or among the parties shall be deemed effective to modify, amend or discharge any part of this Occupancy Agreement or any rights to payment of any party under or by reason of this Occupancy Agreement.

(i)    Headings.  The headings, captions, numbering system, etc., are inserted only as a matter of convenience and may under no circumstances be considered in interpreting the provisions of this Occupancy Agreement.

[AM_ACTIVE 401039999_2]

18-23538-shl   Doc 2307   Filed 02/06/19   Entered 02/06/19 16:14:32   Exhibit A
Pg 468 of 1450

(j)      Binding Effect.  All of the provisions of this Occupancy Agreement are hereby made binding upon and shall inure to the benefit of the personal representatives, heirs, successors, and assigns of both parties hereto.

(k)      Counterparts.   This Agreement may be executed in any number of counterparts (including via electronic transmission in portable document format (pdf)) with the same effect as if the signatures to each counterpart were upon a single instrument, and all such counterparts together shall be deemed an original of this Occupancy Agreement.  This Occupancy Agreement shall become effective when, and only when, each party shall have received a counterpart hereof signed by the other party.  Delivery of an executed counterpart hereof by means of electronic transmission in portable document format (pdf) shall have the same effect as delivery of a physically executed counterpart in person.

(l)      Construction.   This Occupancy Agreement shall not be construed more strictly against one party than against the other merely by virtue of the fact that the Occupancy Agreement may have been prepared primarily by counsel for one of the parties, it being recognized that both Licensor and Licensee have contributed substantially and materially to the preparation to this Occupancy Agreement.

(m)      Time is of the Essence. Time is of the essence with respect to the timeliness of all obligations of Licensor and Licensee under this Occupancy Agreement.

(n)      No Recording.  Neither Licensor nor Licensee shall record this Occupancy Agreement.

(o)      Exculpation. Notwithstanding anything to the contrary contained herein, no officer, director, shareholder, employee, agent, manager, member or partner of Licensor or Licensee or any other Non-Recourse Party shall have any personal Liability with respect to any of the obligations contained herein.  The provisions of this Section 16(n) shall survive the expiration of the Designation Rights Period or any earlier termination of this Occupancy Agreement.

(p)      Savings Clause.  To the extent any agreement to which Licensor or its Subsidiaries is a party prohibits or limits the ability of Licensor to enter into this Occupancy Agreement or limits the rights which may be granted pursuant to this Occupancy Agreement, then the rights granted pursuant to this Occupancy Agreement will automatically and without further action be limited to the maximum rights that may be granted in compliance with such other agreement and Licensor and Licensee will cooperate in all reasonable respects in order to grant to Licensee the material benefits intended to be provided pursuant to this Occupancy Agreement and remain in compliance with such other agreement.

(q)      17.      Severability. The provisions of this Occupancy Agreement shall be deemed severable, and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of the other provisions hereof.  If any provision of this Occupancy Agreement, or the application thereof to any Person or any circumstance, is invalid or unenforceable, (a) a suitable and equitable provision shall be substituted therefor in order to carry

8

FILED DATE: 5/19/2021 1:27 PM       2020L012403

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 441 of 1150

FILED DATE: 5/19/2021 1:27 PM   2020L012403

out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision and (b) the remainder of this Occupancy Agreement and the application of such provision to other Persons or circumstances shall not be affected by such invalidity or unenforceability.

*[Signatures Appear on Following Page.]*

9

[AM_ACTIVE 401039999_2]

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**LICENSEE**:

[_____], a [_____]

By:_____

Name: _____

Title_____

[Signature Page to Occupancy Agreement]

[AM_ACTIVE 401039999_2]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**LICENSOR**:
[**SEARS HOLDINGS CORPORATION**, a Delaware corporation]

By:_____

Name: _____

Title_____

[Signature Page to Occupancy Agreement]

[AM_ACTIVE 401039999_2]

WEIL:\96868117\7\73217.0004

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Exhibit E**


**FORM ASSIGNMENT AND ASSUMPTION OF LEASE**


**Sears Store #[_____] – [City], [State]**

Between

**[_____]**

as Assignor

and


**Transform Holdco LLC**,

a Delaware Limited Liability Company

as Assignee


Dated: [_____ __, 2019]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

## ASSIGNMENT AND ASSUMPTION OF LEASE

THIS ASSIGNMENT AND ASSUMPTION OF LEASE (the "Assignment") is made effective as of this ___ day of _____, 2019 ("Effective Date"), by and [_____, a _____] ("Assignor") and Transform Holdco LLC, a Delaware Limited Liability Company ("Assignee" and together with Assignor, individually a "Party" and collectively, the "Parties").

## RECITALS

WHEREAS, Assignor is a direct or indirect subsidiary of Sears Holdings Corporation, a Delaware corporation ("Sears");

WHEREAS, Sears and Assignee are parties to that certain Asset Purchase Agreement dated as of [_____ __], 2019 (the "Purchase Agreement") (capitalized terms used but not otherwise defined herein have the meanings given to such terms in the Purchase Agreement);

WHEREAS, Assignor, as tenant, is a party to that certain lease agreement described in **Exhibit A** attached hereto and incorporated herein by reference (the "Assumed Lease"); and

WHEREAS, pursuant to the Assumed Lease, Assignor leases space within certain premises (the "Demised Premises"), as more particularly described in the Assumed Lease; and

WHEREAS, pursuant to the Purchase Agreement, Assignor has agreed that Assignor or one or more of its subsidiaries shall sell, convey, transfer and assign certain assets and liabilities, including the Assumed Lease and, subject to the provisions of the Purchase Agreement, all liabilities arising thereunder, to the extent such liabilities arise or accrue on or after the date hereof (the "Assumed Lease Liabilities"), and Assignee has agreed that Assignee shall purchase the Assumed Lease and assume the Assumed Lease Liabilities.

WHEREAS, subject to the provisions of the Purchase Agreement, Assignor shall retain and remain responsible for all liabilities arising under the Assumed Lease, solely to the extent such liabilities arise or accrue prior to the date hereof (the "Excluded Lease Liabilities").

WHEREAS, pursuant to this Assignment, Assignee shall assume and become responsible for the Assumed Lease and the Assumed Lease Liabilities.

NOW, THEREFORE, in consideration of the Demised Premises and covenants hereinafter contained, in consideration of the representations, warranties and covenants contained in the Purchase Agreement, and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the Parties hereto desire to enter into this Assignment on the terms set forth herein.

Intending to be legally bound, the Parties hereto agree as follows:

1.    The recitals set forth above are accurate, represent the intent of the parties hereto and are incorporated herein by reference.

2.    Effective as of the date hereof, Assignor does hereby irrevocably grant, bargain, sell, assign, transfer and set over unto Assignee and Assignee hereby purchases, acquires, and accepts from Assignor, all of Assignor's right, title and interest in and to and its obligations under the Assumed Lease.  Effective as of the date hereof, Assignee hereby assumes and becomes responsible for all

FILED DATE: 5/19/2021 1:27 PM    2020L012403

of the Assumed Lease Liabilities, but not the Excluded Lease Liabilities, and does hereby assume and agree to perform all of the obligations of Landlord under the Assumed Lease.

3.      Assignor and the Assignee shall, and shall cause their respective affiliates to execute, acknowledge and deliver all further conveyances, notices, assumptions, releases, consents, assurances, powers of attorney and such other instruments, and shall take such further actions, as may reasonably be necessary or appropriate to assure fully to the Assignee and its respective successors or permitted assigns, all of the Assignor's rights, titles and interests in, to and under, the Assumed Lease, and to assure fully to Assignor and its affiliates and their respective successors and permitted assigns, the assumption of the Assumed Lease Liabilities and to otherwise make effective and carry out the purpose and intent of this Assignment.

4.      This Assignment shall be binding upon and inure to the benefit of the Assignee and Assignor and their respective successors and permitted assigns.

5.      Each party hereto represents and warrants that it has full authority to enter into and perform this Assignment without the consent or approval of any other person or entity and it has the full and complete authority to bind such party.

6.      This Assignment may be executed in counterparts, each of which shall be deemed to be an original and all of which, collectively, shall be deemed to constitute one and the same Assignment.  This Assignment may also be executed by.pdf file transmission via electronic mail, and .pdf file signatures shall have the same force and effect as originals, provided however, any party delivering a .pdf file signature will, upon request by the receiving party, deliver an original signature.

7.      No modification, waiver, amendment, discharge or change of this Assignment shall be valid unless the same is in writing and signed by the party against which enforcement of such modification, waiver, amendment, discharge or change is or may be sought.

8.      This Assignment is executed and delivered pursuant to the Purchase Agreement.  In the event of a conflict between the terms and conditions of this Assignment and the terms and conditions of the Purchase Agreement, the terms and conditions of the Purchase Agreement shall govern, supersede and prevail.

9.      This Assignment shall be governed by the Laws of the state in which the Demised Premises are located, except to the extent that the Laws of such state are superseded by the Bankruptcy Code.

*[The remainder of this page is intentionally left blank; Signature Page Follows]*

WEIL:\96869652\3\73217.0004

FILED DATE: 5/19/2021 1:27 PM   2020L012403

IN WITNESS WHEREOF, the parties have executed this Assignment as of the date set forth above.


**ASSIGNOR:**


[_____]
a [_____]


By: _____
Name:
Title:

18-23538-rdd   Doc 2307-1   Filed 02/06/19   Entered 02/06/19 16:44:32   Exhibit A
Pg 248 of 1450

IN WITNESS WHEREOF, the parties have executed this Assignment as of the date set forth above.


**ASSIGNEE:**


**Transform Holdco LLC**,
a Delaware Limited Liability Company


By: _____
Name:
Title:

FILED DATE: 5/19/2021 1:27 PM   2020L012403

18-23538-rdd   Doc 2507   Filed 02/06/19   Entered 02/06/19 16:44:32   Exhibit A
Pg 449 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

## EXHIBIT A

## The Assumed Lease

Lease dated [_____] by and between [_____], as Landlord, and [_____],
as Tenant, as the same may have been heretofore amended.

A-1

WEIL:\96869652\3\73217.0004

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Exhibit F**

**SELLER RETAINED OCCUPANCY AGREEMENT**

**THIS SELLER RETAINED OCCUPANCY AGREEMENT** ("Occupancy Agreement") is effective as of the [●] day of [●], 2019, by and between [●] ("Licensor") and [Sears Holdings Corporation, a Delaware corporation] ("Licensee").

**RECITALS:**

A.       Licensor and Licensee are parties to that certain Asset Purchase Agreement dated as of [●], 2019 (the "Purchase Agreement") pursuant to which the Licensee agreed to sell to the Licensor (or an affiliate of Licensor) the Acquired Assets and to transfer to Licensor (or an affiliate of Licensor) the Assumed Liabilities and the Licensor (or an affiliate of Licensor) agreed to purchase from the Licensee the Acquired Assets and to assume from the Licensee the Assumed Liabilities, in each case on the terms and subject to the conditions set forth in the Purchase Agreement.

B.       Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Purchase Agreement.

C.       Prior to the Closing Date, the Business and one or more affiliates of Licensee occupied the Owned Real Property.

D.       The transactions contemplated by the Purchase Agreement were consummated on the date hereof ("Closing Date") and title to all of the Owned Real Property was conveyed on the Closing Date to Licensor or an affiliate of Licensor;

D.       Because employees and Inventory not being transferred to Licensor and its affiliates will remain located at those Stores included in the Owned Real Property which are identified on Schedule 1 attached hereto (the "GOB Owned Stores"), Licensor and Licensee desire to enter into this Occupancy Agreement in order to set forth the terms by which Licensee shall operate the GOB Owned Stores for a period commencing on the Closing Date and ending at the end of the GOB Period with respect to each GOB Owned Store.

**NOW THEREFORE**, in consideration of the foregoing recitals, the mutual covenants and agreements set forth herein, Licensor and Licensee do hereby agree as follows:

[AM_ACTIVE 401039999_2]

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 16:14:31    Exhibit A
Pg 451 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

1.    <u>Grant of License</u>.  Licensor hereby grants to Licensee an exclusive license to use and occupy the GOB Owned Stores during the Term (as defined below).  It is hereby specifically acknowledged and agreed to by both Licensor and Licensee that this Occupancy Agreement is not intended to negate or supersede the terms of the Purchase Agreement nor are the terms of the Purchase Agreement intended to negate or supersede the terms of this Occupancy Agreement, and to the extent of any conflict, the terms of the Purchase Agreement shall govern and control.

2.    <u>Use</u>.

(a)    The GOB Owned Stores may be used by Licensee in a manner that is substantially similar to the manner in which the GOB Owned Stores were used for the operation of the Business immediately prior to the Closing Date and in addition Licensee may conduct "going out of business" sales at the GOB Owned Stores. Subject to the terms of the Purchase Agreement, Licensee shall comply with all federal, state and local governmental laws, rules, regulations and ordinances applicable to Licensee's use and/or occupancy of the GOB Owned Stores during the Term (collectively, the "<u>Applicable Laws</u>") and with any leases or other agreements in effect on the date hereof with respect to the GOB Owned Stores.  During the period commencing on the Closing Date and ending at the end of the GOB Period. Licensee shall be permitted to operate the GOB Owned Stores pursuant to this Occupancy Agreement.

3.    <u>Term</u>.  The term of this Occupancy Agreement (the "<u>Term</u>") shall commence on the Closing Date and shall expire with respect to each GOB Owned Store upon the expiration of the GOB Period for each such GOB Owned Store.

4.    <u>Consideration</u>.  Licensee shall not have any obligation to pay any compensation to Licensor for the use and/or occupancy of the GOB Owned Stores during the Term.

5.    <u>Expenses; Condition of Occupancy Leased Premises</u>.  Licensee shall pay directly (or reimburse Licensor) for all Expenses incurred in connection with the GOB Owned Stores in accordance with Section 5.1(a) of the Purchase Agreement during the Term with respect to each such GOB Owned Store.  Licensee agrees, at its sole cost and expense, to repair any damage to the Occupancy Leased Premises that arises as a result of a casualty event occurring during the Term applicable to each GOB Owned Store and to maintain the GOB Owned Stores during the Term in a condition substantially similar to that existing as of the Closing Date.  Licensor shall not be responsible for the cost of any Expenses incurred with respect to any GOB Owned Store during the Term applicable to each GOB Owned Store.

6.    <u>Alterations</u>.  During the Term of this Occupancy Agreement, Licensee shall not make any material alterations to or undertake any material construction at the GOB Owned Stores, including modifications to the exterior of the building and signage, without the prior written approval of Licensor, which such approval may be withheld or granted in Licensor's sole discretion.

2

[AM_ACTIVE 401039999_2]

7.      Liens.  During the Term, Licensee shall keep the GOB Owned Stores and appurtenant easements free from any liens (other than Permitted Encumbrances) for any labor or material furnished to Licensee in connection with any work performed at the GOB Owned Stores by Licensee or its contractors or agents during the Term, except that Licensee shall have the right to contest the validity or amount of any such lien provided that Licensee shall maintain adequate reserves with respect to the same contest, to the extent required in accordance with GAAP.

8.   Surrender.  Licensee shall remove all of its Inventory, other personal property and employees from each GOB Owned Store prior to expiration of the Term applicable to each GOB Owned Store and shall deliver possession of such GOB Owned Store to Licensor with all of Licensee's Inventory, other personal property and employees removed and otherwise in substantially the same condition as existed on the Closing Date.  Any Licensee's property left at any GOB Owned Store after expiration of the Term applicable to each GOB Owned Store shall be deemed abandoned and Licensor shall have no Liability with respect thereto and Licensor may dispose of and/or demolish any such property without compensation to Licensee.

9.      As Is.  Subject to the terms of the Purchase Agreement, Licensee hereby acknowledges that Licensee accepts the GOB Owned Stores in "AS IS" condition without any representation or warranty of any kind.  Licensee is relying solely on its own investigation or independent inquires, or its own history as the owner of the same properties, as to the condition of the GOB Owned Stores and Licensee agrees that Licensee is not relying on any representation of Licensor regarding the physical condition of the GOB Owned Stores, any environmental matters affecting the GOB Owned Stores or regarding the suitability of the GOB Owned Stores for any particular purpose.  Licensee agrees to accept the GOB Owned Stores from Licensor in such condition.

10.      Risk of Loss.  Licensee shall bear the responsibility and Liability for any loss of or damage to any of Licensee's Inventory or any of Licensee's property located at, on or about the GOB Owned Stores during the Term.

11.      Insurance, Indemnity.

(a)      Licensor shall have the sole obligation to maintain casualty insurance with respect to the GOB Owned Stores during the Term and during the Term Licensor shall maintain casualty, liability and other insurance with respect to the GOB Owned Stores.

(b)      Licensee shall indemnify and hold Licensor and Licensor's parents, subsidiaries and affiliated companies and their respective officers, directors, shareholders, agents, employees, invitees, customers, guests, contractors or subcontractors (collectively, "Licensor Parties") harmless from and against all claims, actions, losses, damages, costs and expenses (including without limitation all reasonable attorney's fees and court costs), and Liabilities (except those caused by the willful misconduct or grossly negligent acts or omissions of Licensor after the Closing Date), arising out of Licensee's use and occupancy of the GOB Owned Stores, including without limitation, any of same arising out of actual or alleged injury to or death of any person or loss of or damage to property in or on the GOB Owned Stores, in each case, solely during the Term

3

WEIL:\96873966\2\73217.0004

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 233 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

applicable to each GOB Owned Store.  The terms of this paragraph shall survive the termination of this Occupancy Agreement.

12.    <u>Destruction (Fire or Other Cause) and Eminent Domain</u>.  In the event of casualty or taking of all or any part of any GOB Owned Store under the power of eminent domain, all insurance recoveries and all warranty and condemnation proceeds received or receivable after the Closing Date with respect to such GOB Owned Store shall be paid to Licensor and used by Licensor as it determines in its sole discretion.  During the Terms of this Occupancy Agreement, Licensee shall use commercially reasonable efforts to provide Licensor with prompt notice of any Casualty/Condemnation Event.

13.    <u>Assignment</u>.  During the Term of this Occupancy Agreement, Licensee shall not assign this Occupancy Agreement or further license the use and/or occupancy of all or any part of the GOB Owned Stores.

14.    <u>Notices</u>.  Any notice, consent or other communication required or permitted under this Agreement shall be in writing and shall be delivered (a) in person, (b) via e-mail or (c) by a nationally recognized courier for overnight delivery service.  A notice or communication shall be deemed to have been effectively given (i) if in person, upon personal delivery to the Party to whom the notice is directed, (ii) if via e-mail, on the date of successful transmission and (iii) if by nationally recognized courier, one Business Day after delivery to such courier.  Rejection or other refusal to accept or inability to deliver because of changed address of which no notice has been received shall also constitute receipt.  Any such notice, election, demand, request or response shall be addressed as follows:

|  |  |
|---|---|
| If to Licensee: | Sears Holdings Corporation<br>3333 Beverly Road, Dept. 824RE<br>Hoffman Estates, Illinois  60179<br>Attn: General Counsel; Senior Vice President<br>and President, Real Estate<br>Email: counsel@searshc.com; [●] |
| Copy to (which shall not constitute notice): | Sears Holdings Corporation<br>3333 Beverly Road, Dept. 824RE<br>Hoffman Estates, Illinois  60179<br>Attn: Associate General Counsel, Real Estate<br>Email: [●] |
|  | Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, New York 10153<br>Attention: Ray C. Schrock, P.C., Ellen J.<br>Odoner, Gavin Westerman and Sunny Singh<br>E-mail:  Ray.Schrock@weil.com; |

4

[AM_ACTIVE 401039999_2]

FILED DATE: 5/19/2021 1:27 PM   2020L012403

Ellen.Odoner@weil.com;
Gavin.Westerman@weil.com;
Sunny.Singh@weil.com

If to Licensor:              [●]

Copy to (which shall not    Cleary Gottlieb Steen & Hamilton LLP
constitute notice):         One Liberty Plaza
                            New York, NY 10006
                            Attention:  Christopher E. Austin, Benet J.
                            O'Reilly, Sean A. O'Neal and Joseph
                            Lanzkron
                            E-mail: caustin@cgsh.com;
                            boreilly@cgsh.com; soneal@cgsh.com,
                            jlanzkron@cgsh.com

or to any other address furnished in writing by either party, provided that, any change of address
furnished shall comply with the notice requirements of this Section 14.

15.    Licensor Access.  During the Term of this Occupancy Agreement,
Licensor shall be permitted access to the GOB Owned Stores in the event of an emergency or as
otherwise reasonably requested by Licensor by reasonable notice to Licensee, provided that there
is no unreasonable interference with Licensee's use and occupancy of the GOB Owned Stores
(taking into account the nature of the emergency).

16.    Miscellaneous.

(a)    Voluntary Agreement.  The parties have read this Occupancy Agreement
and the mutual releases contained in it, and on advice of counsel they have freely and voluntarily
entered into this Occupancy Agreement.

(b)    Governing Law. This Occupancy Agreement shall be construed and
enforceable in accordance with the laws indicated in Section 13.8(a) of the Purchase Agreement.
Any lawsuit brought by Licensor or Licensee against the other must comply with the requirements
of Section 13.7 of the Purchase Agreement.

(c)    Consent to Jurisdiction.  Without limitation of any party's right to appeal
any Order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to
enforce the terms of this Occupancy Agreement and to decide any claims or disputes which may
be based upon, arise out of or relate to this Occupancy Agreement, any breach or default hereunder,
or the transactions contemplated hereby and (ii) any and all claims relating to the foregoing shall
be filed and maintained only in the Bankruptcy Court, and the parties hereby consent and submit
to the exclusive jurisdiction and venue of the Bankruptcy Court and irrevocably waive the defense

5

[AM_ACTIVE 401039999_2]

FILED DATE: 5/19/2021 1:27 PM    2020L012403

of an inconvenient forum to the maintenance of any such Proceeding; provided, however, that, if the Bankruptcy Case is closed, all Proceedings based upon, arising out of or relating to this Occupancy Agreement shall be heard and determined in a Delaware state court or a federal court sitting in the State of Delaware, and the parties hereby (a) irrevocably and unconditionally submit to the exclusive jurisdiction of the Delaware Court of Chancery and any state appellate court therefrom within the State of Delaware (or in the event (but only in the event) that such court does not have subject matter jurisdiction over such Proceeding in the United States District Court for the District of Delaware) with respect to all Proceedings based upon, arising out of or relating to this Occupancy Agreement and the transactions contemplated hereby (whether in contract or in tort, in law or in equity or granted by statute); (b) agree that all claims with respect to any such Proceeding shall be heard and determined in such courts and agrees not to commence any Proceeding relating to this Occupancy Agreement or the transactions contemplated hereby (whether in contract or in tort, in law or in equity or granted by statute) except in such courts; (c) irrevocably and unconditionally waive any objection to the laying of venue of any Proceeding based upon, arising out of or relating to this Occupancy Agreement or the transactions contemplated hereby and irrevocably and unconditionally waives the defense of an inconvenient forum; and (d) agree that a final judgment in any such Proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Law. The Parties agree that any violation of this Section 16(b) shall constitute a material breach of this Occupancy Agreement and shall constitute irreparable harm.  Notwithstanding anything to the contrary contained in this Occupancy Agreement or in the Purchase Agreement, each of the Parties agrees that it will not bring or support any person in any Proceeding of any kind or description, whether in law or in equity, whether in contract or in tort or otherwise, against any of the Debt Financing Sources in any way relating to this Occupancy Agreement or the Purchase Agreement or any of the transactions contemplated by either, including any dispute arising out of or relating in any way to the Debt Commitment Letter or the performance thereof or the financings contemplated thereby, in any forum other than the federal and New York state courts located in the Borough of Manhattan within the City of New York and any appellate courts therefrom. The Debt Financing Sources are intended third party beneficiaries of this Section 16(b).

(d)

WAIVER OF TRIAL BY JURY; INJUNCTION.  LICENSOR AND LICENSEE EACH HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY PROCEEDING DIRECTLY OR INDIRECTLY BASED UPON, ARISING OUT OF OR RELATING TO THIS OCCUPANCY AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER IN CONTRACT OR IN TORT, IN LAW OR IN EQUITY OR GRANTED BY STATUTE).  EACH OF LICENSOR AND LICENSEE (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER SUCH PARTY HAVE BEEN INDUCED TO ENTER INTO THIS OCCUPANCY AGREEMENT BY, AMONG OTHER

6

WEIL:\96873966\2\73217.0004

THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS <u>SECTION 16(c)</u>. THE DEBT FINANCING SOURCES ARE INTENDED THIRD PARTY BENEFICIARIES OF THIS SECTION 16(c).

(e)     <u>Agreements</u>.  This Occupancy Agreement together with the Purchase Agreement and the other Transaction Documents constitutes the entire agreement between Licensee and Licensor with respect to the subject matter hereof, and there are no other covenants, agreements, promises, terms, provisions, conditions, undertakings, or understandings, either oral or written, between them concerning the GOB Owned Stores other than those herein and therein set forth.  Nothing in this Occupancy Agreement shall alter any Liability arising under the Purchase Agreement.  If there is any conflict or inconsistency between the provisions of the Purchase Agreement and this Occupancy Agreement, the provisions of the Purchase Agreement shall govern.

(f)     <u>Amendment; Waiver</u>.  No amendment, modification or discharge of this Occupancy Agreement, and no waiver hereunder, shall be valid or binding unless set forth in writing and duly executed by Licensee and Licensor.  Any such waiver shall constitute a waiver only with respect to the specific matter described in such writing and shall in no way impair the rights of the party granting such waiver in any other respect or at any other time.  Neither the waiver by any of the Licensee or Licensor of a breach of or a default under any of the provisions of this Occupancy Agreement, nor the failure by any of the parties, on one or more occasions, to enforce any of the provisions of this Occupancy Agreement or to exercise any right or privilege hereunder shall be construed as a waiver of any other breach or default of a similar nature, or as a waiver of any of such provisions, rights or privileges hereunder.  No course of dealing between or among the parties shall be deemed effective to modify, amend or discharge any part of this Occupancy Agreement or any rights to payment of any party under or by reason of this Occupancy Agreement.

(g)     <u>Headings</u>.  The headings, captions, numbering system, etc., are inserted only as a matter of convenience and may under no circumstances be considered in interpreting the provisions of this Occupancy Agreement.

(h)     <u>Binding Effect</u>.  All of the provisions of this Occupancy Agreement are hereby made binding upon and shall inure to the benefit of the personal representatives, heirs, successors, and assigns of both parties hereto.

(i)     <u>Counterparts</u>.     This Agreement may be executed in any number of counterparts (including via electronic transmission in portable document format (pdf)) with the same effect as if the signatures to each counterpart were upon a single instrument, and all such counterparts together shall be deemed an original of this Occupancy Agreement.  This Occupancy Agreement shall become effective when, and only when, each party shall have received a counterpart hereof signed by the other party.  Delivery of an executed counterpart hereof by means of electronic transmission in portable document format (pdf) shall have the same effect as delivery of a physically executed counterpart in person.

7

[AM_ACTIVE 401039999_2]

FILED DATE: 5/19/2021 1:27 PM   2020L012403

(j)  Construction.  This Occupancy Agreement shall not be construed more strictly against one party than against the other merely by virtue of the fact that the Occupancy Agreement may have been prepared primarily by counsel for one of the parties, it being recognized that both Licensor and Licensee have contributed substantially and materially to the preparation to this Occupancy Agreement.

(k)  Time is of the Essence. Time is of the essence with respect to the timeliness of all obligations of Licensor and Licensee under this Occupancy Agreement.

(l)  No Recording.  Neither Licensor nor Licensee shall record this Occupancy Agreement.

(m)  Exculpation. Notwithstanding anything to the contrary contained herein, no officer, director, shareholder, employee, agent, manager, member or partner of Licensor or Licensee or any other Non-Recourse Party shall have any personal Liability with respect to any of the obligations contained herein.  The provisions of this Section 16(n) shall survive the expiration of the Term or any earlier termination of this Occupancy Agreement.

(n)  Savings Clause.  To the extent any agreement to which Licensor or its Subsidiaries is a party prohibits or limits the ability of Licensor to enter into this Occupancy Agreement or limits the rights which may be granted pursuant to this Occupancy Agreement, then the rights granted pursuant to this Occupancy Agreement shall automatically and without further action be limited to the maximum rights that may be granted in compliance with such other agreement and Licensor and Licensee shall cooperate in all reasonable respects in order to grant to Licensee the material benefits intended to be provided pursuant to this Occupancy Agreement and remain in compliance with such other agreement.

(o)  17.  Severability.  The provisions of this Occupancy Agreement shall be deemed severable, and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of the other provisions hereof.  If any provision of this Occupancy Agreement, or the application thereof to any Person or any circumstance, is invalid or unenforceable, (a) a suitable and equitable provision shall be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision and (b) the remainder of this Occupancy Agreement and the application of such provision to other Persons or circumstances shall not be affected by such invalidity or unenforceability.

*[Signatures Appear on Following Page.]*

8

WEIL:\96873966\2\73217.0004

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**LICENSEE**:

[**SEARS HOLDINGS CORPORATION**, a Delaware corporation]

By:_____

Name: _____

Title_____

[Signature Page to Occupancy Agreement]

[AM_ACTIVE 401039999_2]

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**LICENSOR**:

[_____], a [_____]



By:_____

Name: _____

Title_____



[Signature Page to Occupancy Agreement]

[AM_ACTIVE 401039999_2]

18-23538-rdd   Doc 2507-1   Filed 02/06/19   Entered 02/06/19 15:44:32   Exhibit A
Pg 488 of 1120

## Schedule 1

[GOB Owned Stores]

[Signature Page to Occupancy Agreement]

[AM_ACTIVE 401039999_2]

FILED DATE: 5/19/2021 1:27 PM   2020L012403

FILED DATE: 5/19/2021 1:27 PM     2020L012403

### Exhibit G
### ESL's Allowed Claims Against the Debtors

| Loan Facility | Allowed Amount Owed to ESL (as Defined in the Asset Purchase Agreement) Amounts as of October 15, 2018[1] |
|---|---|
| IP/Ground Lease Term Loan Facility | $187,327,014[2] |
| FILO Facility | $70,560,076.93 |
| Real Estate Loan 2020 | $726,483,196.21 |
| Second Lien Term Loan | $318,610,234 |
| Second Lien Line of Credit Facility | $507,072,878.33 |
| Second Lien PIK Notes | $21,346,945 |
| Citi L/C Facility | $108,410,464.44 |

---

[1] Amounts owed to ESL as to each claim listed are not less than the amounts set forth herein and may include additional claims for post-petition interest and all reasonable out-of-pocket expenses, including legal fees incurred by ESL by reason of the enforcement and protection of its rights in accordance with the applicable loan terms, plus any contingent and/or unliquidated claims not presently ascertainable.  In the event that the Buyer or its affiliates purchase any additional obligations outstanding under any of the debt facilities listed in this Exhibit G prior to the Closing, the allowed amount in the right hand column shall be increased by the amount of the additional purchased debt obligations.

[2] On January 3, 2019, ESL purchased $31,887,343 of obligations outstanding under the IP/ Ground Lease Term Loan Facility, which amount is included in the total of amount of ESL's allowed claim on this Exhibit G

[AM_ACTIVE 401043136_2]

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**SCHEDULES**

**TO**

**ASSET PURCHASE AGREEMENT**

**DATED AS OF JANUARY 17, 2019**

**BY AND AMONG**

**TRANSFORM HOLDCO LLC**

**AND**

**SEARS HOLDINGS CORPORATION**

FILED DATE: 5/19/2021 1:27 PM    2020L012403

## SCHEDULES

These schedules (the "Schedules") are being furnished by Sears Holdings Corporation ( "Seller") to Transform Holdco LLC ("Buyer"), in connection with the execution and delivery of that certain Asset Purchase Agreement dated as of January 17, 2019 by and between Seller and Buyer (the "Agreement"). All capitalized terms used in these Schedules without definition shall have the respective meanings assigned to them in the Agreement.

Any matter disclosed in any Schedule shall be deemed to have also been disclosed in each other Schedule to which the applicability of such disclosure is reasonably apparent on its face. The inclusion of any matter in any Schedule shall expressly not be deemed to constitute an admission by either Party or otherwise imply that any such matter is material, has a Material Adverse Effect or creates a measure for, or further defines the meaning of, materiality or Material Adverse Effect and their correlative terms for the purposes of the Agreement. The inclusion of any matter in any Schedule shall expressly not be deemed constitute an admission by either Party or otherwise imply that such matter will in fact exceed any applicable threshold limitation set forth in the Agreement and shall not be construed as an admission by the disclosing party of any non-compliance with, or violation of, any third party rights (including Intellectual Property rights) or any applicable law of any Governmental Authority.

These Schedules shall not be construed as, are not intended to constitute, and shall not be construed as constituting, representations or warranties of the Seller nor shall these Schedules be construed as expanding the scope of any of the representations or warranties of the Seller contained in the Agreement.

The headings herein are for reference purposes only and shall not in any way affect the meaning or interpretation of the Agreement.

Seller does not assume any responsibility to any person that is neither a Party nor a third party beneficiary of the Agreement for the accuracy of any information contained herein. The information contained in the Schedules was not prepared or disclosed with a view to its potential disclosure to any such person that is neither a Party nor a third party beneficiary of the Agreement. This information is disclosed in confidence for the purposes contemplated in the Agreement.

**Schedule 1.1(a)**

[Reserved]

FILED DATE: 5/19/2021 1:27 PM   2020L012403

18-23538-shl Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 493 of 1450

**Schedule 1.1(b)**

[Reserved]

FILED DATE: 5/19/2021 1:27 PM   2020L012403

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 206 of 1120

## Schedule 1.1(c)

### Excluded IT

1.  None.

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**Schedule 1.1(d)**

**IP/Ground Lease Property**

|     | Store Number | Locations |
| --- | --- | --- |
| 1.  | 1044 | Jersey City/Newport, NJ |
| 2.  | 1924 | Valley Stream, NY |
| 3.  | 1114 | Brooklyn, NY |
| 4.  | 1094 | Hackensack, NJ |
| 5.  | 1368 | Concord, CA |
| 6.  | 1378 | Orange, CA |
| 7.  | 1288 | Stockton, CA |
| 8.  | 1304 | Silver Spring, MD |
| 9.  | 1048 | Pasadena, CA |
| 10. | 1494 | Moorestown, NJ |
| 11. | 1758 | Escondido, CA |
| 12. | 1333 | Poughkeepsie, NY |
| 13. | 2148 | Kahului Maui, HI |
| 14. | 1765 | Palm Beach Gardens, FL |
| 15. | 1309 | Downey, CA |
| 16. | 30962 | Groveport, OH |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

### Schedule 1.1(e)

**Seller Knowledge Parties**

1. Robert A. Riecker, Chief Financial Officer, Sears Holdings Corporation.

2. Solely with respect to the representations and warranties contained in <u>Section 6.6</u> of the Agreement, Jane Borden, President, Real Estate, Sears Holdings Corporation.

3. Solely with respect to the representations and warranties contained in <u>Section 6.10</u> of the Agreement, Peter Boutros, Chief Brand Officer, Sears Holdings Corporation and Greg Russell, CIO, President Member Technology, Sears Holdings Corporation.

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A

**Schedule 1.1(f)**

**Ordered Inventory**

| Ordered Inventory as of January 7th, 2019 | | | | | |
|---|---|---|---|---|---|
| | **Domestic** | | **Imports** | | **Total** |
| Total on Order | $ 120,193,318 | $ | 157,735,211 | $ | 277,928,529 |
| Less: Paid in Transit | (50,000,000) | | - | | (50,000,000) |
| Less: On The Water | - | | (61,370,908) | | (61,370,908) |
| Ordered Inventory | $ 70,193,318 | $ | 96,364,303 | $ | 166,557,621 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-shl Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:31 Exhibit A
Pg 490 of 1450

**Schedule 1.1(g)**

**Other Payables**

1.  See Annex 9, attached.

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

*($ in millions)*

| Assumed Accounts Payable | |
| --- | --- |
| Assumed Accounts Payable | $166.0 |
| **Total** | **$166.0** |

**Schedule 1.1(h)**

[Reserved]

FILED DATE: 5/19/2021 1:27 PM  2020L012403

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 573 of 1450

## Schedule 1.1(i)

### Permitted Post-Closing Encumbrances

1. Liens with respect to consigned goods in Puerto Rico.

2. Certain Sellers are parties to consignment agreements with respect to which no UCC filings have been filed.

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM   2020L012403

## Schedule 1.1(j)

### Permitted Pre-Closing Encumbrances

1. Any liens in favor of Cantor Fitzgerald Securities, as collateral agent for the secured parties pursuant to that certain Superpriority Junior Lien Secured Debtor-in-Possession Credit Agreement, dated November 29, 2018, among Sears Holdings Corporation, Sears Roebuck Acceptance Corp., Kmart Corporation, the lenders party thereto and Cantor Fitzgerald.

2. Any liens in favor of Bank of America, N.A., as Control Co-Collateral Agent pursuant to that certain Superpriority Senior Secured Debtor-in-Possession Asset-Based Credit Agreement, dated November 29, 2018, among Sears Holdings Corporation, Sears Roebuck Acceptance Corp., Kmart Corporation, the lenders party thereto, the issuing lenders party thereto, Bank of America, N.A., as administrative agent, co-collateral agent and swingline lender, Wells Fargo Bank, National Association, as co-collateral agent and syndication agent, Citigroup Global Markets Inc., as documentation agent, Merrill Lynch, Pierce, Fenner & Smith Incorporated and Citibank, N.A., And Wells Fargo Bank, National Association, as joint lead arrangers and bookrunners.

3. Any liens in favor of Pension Benefit Guaranty Corporation ("PBGC") resulting from the Pension Plan Protection and Forbearance Agreement, dated March 18, 2016 (as amended, restated, amended and restated, supplemented or otherwise modified on or prior to the Effective Date), between, among others, Sears Holdings Corporation and PBGC.

4. Any liens in favor of JPP, LLC, as collateral agent for the secured parties pursuant to that certain Term Loan Credit Agreement, dated as of January 4, 2018 (as amended, supplemented, or otherwise modified on or prior to the Effective Date), by and among, inter alios, Sears Holdings Corporation, as holdings, Sears, Roebuck and Co. and Kmart Corporation, as borrowers, the subsidiaries of Sears Holdings Corporation party thereto, the lenders party thereto from time to time, and JPP, LLC as administrative and collateral agent.

5. Any liens in favor of JPP, LLC, as agent for the secured parties pursuant to that certain Third Amended and Restated Loan Agreement, dated as of June 4, 2018 (as amended, supplemented, or otherwise modified on or prior to the Effective Date), by and among, inter alios, Sears Holdings Corporation, as guarantor, its subsidiaries party thereto as borrowers, JPP, LLC, as agent, and the lenders party thereto.

6. Any liens in favor of JPP, LLC, as administrative agent for the secured parties, as successor in interest to UBS AG, Stamford Branch, LLC, for the secured parties pursuant to that certain Credit Agreement, dated as of March 14, 2018 (as amended, supplemented, or otherwise modified on or prior to the Effective Date), by and among, inter alios, SRC O.P. LLC, SRC Facilities LLC and SR Real Estate (TX) LLC, as the borrowers, the lenders party thereto and UBS AG, Stamford Branch, LLC as administrative agent.

7. Any liens in favor of JPP, LLC, as administrative agent for the secured parties pursuant to that certain Mezzanine Loan Agreement, dated as of March 14, 2018 (as amended, supplemented, or otherwise modified on or prior to the Effective Date), by and among SRC Sparrow 2 LLC, as borrower, JPP, LLC and JPP II, LLC as lenders, and JPP, LLC, as administrative agent.

8. Any liens in favor of U.S. Bank National Association, as trustee for the secured parties pursuant to that certain Indenture, dated as of May 18, 2006 (as amended, supplemented, or otherwise modified on or prior to the Effective Date), by KCD IP, LLC as issuer and U.S. Bank National Association, as trustee with respect to 6.90% KCD IP, LLC Asset-Backed Notes.

9. Any liens in favor of Wilmington Trust, National Association, as collateral agent for secured parties pursuant to (i) that certain Indenture, dated as of October 12, 2010 (as amended, supplemented, or otherwise modified on or prior to the Effective Date), among Sears Holdings Corporation, the

FILED DATE: 5/19/2021 1:27 PM    2020L012403

guarantors party thereto and Wilmington Trust, National Association (successor to Wells Fargo
Bank, National Association) as trustee and collateral agent, governing the 6 5/8% Senior Secured
Notes, (ii) that certain Indenture, dated as of March 20, 2018 (as amended, supplemented, or
otherwise modified from time to time on or prior to the Effective Date), by and among Sears
Holdings Corporation, the guarantors party thereto and Computershare Trust Company, N.A., as
trustee, governing the 6 5/8% Senior Secured Convertible PIK Toggle Notes and (iii) that certain
Second Lien Credit Agreement, dated as of September 1, 2016 (as amended, supplemented, or
otherwise modified on or prior to the Effective Date), by and among, inter alios, Sears Holdings
Corporation, as holdings, Sears, Roebuck and Co. and Kmart Corporation, as borrowers, the lenders
party thereto, and JPP, LLC as administrative agent and collateral administrator.

10. Any liens in favor of Bank of America, N.A., as co-collateral agent for the secured parties pursuant
to that certain Third Amended and Restated Credit Agreement, dated as of July 21, 2015 (as
amended, supplemented or otherwise modified on or prior to the Effective Date), by and among,
inter alios, Sears Holdings Corporation, as holdings, Sears, Roebuck and Co. and Kmart
Corporation, as borrowers, the lenders party thereto, and Bank of America, N.A., as agent.

11. Liens with respect to consigned good in Puerto Rico.

12. Certain Loan Parties are parties to consignment agreement with respect to which no UCC filings
have been filed.

13. Any liens in favor of the secured parties pursuant to that certain Letter of Credit and Reimbursement
Agreement, dated as of December 28, 2016 (as amended, supplemented or otherwise modified on
or prior to the Effective Date), by and among Sears Holdings Corporation, Sears, Roebuck and Co.,
Kmart Corporation, the financial institutions party thereto from time to time as L/C lenders, and
Citibank N.A., as administrative agent and issuing bank.

14. Any encumbrances affecting the real properties that secure the IP/GL Loan as disclosed in the
lenders' loan policies for title insurance issued by Chicago Title Insurance Company and/or its
affiliates in connection with the making of the IP/GL Loan.

15. Any encumbrances affecting the real properties that secure that certain Third Amended and
Restated Loan Agreement, dated as of June 4, 2018 (as amended, supplemented, or otherwise
modified on or prior to the Effective Date), by and among, inter alios, Sears Holdings
Corporation, as guarantor, its subsidiaries party thereto as borrowers, JPP, LLC, as agent, and the
lenders party thereto (the loans made pursuant to such Credit Agreement, the "Dove Loan"). as
disclosed in the lenders' loan policies for title insurance issued by Chicago Title Insurance
Company and/or its affiliates in connection with the making of the Dove Loan.

16. Any encumbrances affecting the real properties that secure the Sparrow Mortgage Loan as
disclosed in the lenders' loan policies for title insurance issued by Chicago Title Insurance
Company and/or its affiliates in connection with the making of the Sparrow Mortgage Loan.

17. Any liens in favor of the secured parties pursuant to that certain Letter of Credit and Reimbursement
Agreement, dated as of December 28, 2016 (as amended, supplemented or otherwise modified on
or prior to the Effective Date), by and among Sears Holdings Corporation, Sears, Roebuck and Co.,
Kmart Corporation, the financial institutions party thereto from time to time as L/C lenders, and
Citibank N.A., as administrative agent and issuing bank.

18. All encumbrances identified on the title policies, commitment and reports  and surveys listed below:

*[Remainder of page intentionally left blank]*

18-23538-rdd Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 576 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

WEIL:\96826275\11\73217.0003

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 277 of 1120

| | RE ID | ST | City | 10K Own/L/GL | Policy (P), Commitment (C), Other (R) | Title Company | Date | Policy or Commitment Number | Surveyor | Date of Survey | Survey No. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. | 108910 | AK | Anchorage(Sur) | Owned | P | Transamerica | 1/12/1970 | 69-10278-0 | Dickinson, Oswald & Associates | 10/13/1969 | N/A |
| 2. | 8106 | AL | Birmingham | Owned | P | Lawyers Title | 5/31/1977 | J21971 | - | - | - |
| 3. | 113600 | AL | Riverchase | Owned | C | CTIC | 3/30/2018 | 21800633 | CARR | 3/13/2018 | 18.0302 |
| 4. | 30957 | AR | Springdale | Owned | C | Chicago Title | 11/12/2018 | 21802099 | - | - | - |
| 5. | 68235 | AZ | Phoenix | Owned | C | Chicago Title | 11/9/2018 | 21802088 | - | - | - |
| 6. | 1588 | AZ | Phoenix-Metro Ctr | Owned | C | Chicago Title | 11/29/2018 | 21800634 | - | - | - |
| 7. | 228800 | CA | Antioch | Owned | C | CTIC | 3/23/2018 | 21800640 | Slooten | 3/9/2018 | 10685-02 |
| 8. | 1228 | CA | Arden | Owned | C | Chicago Title | 11/21/2018 | 21800639 | - | - | - |
| 9. | 126800 | CA | Buena Park | Owned/Lease* | P | FATIC | 10/5/2016 | 801871 | -- | -- | -- |
| 10. | 1598 | CA | City of Industry | Owned | P | Title Insurance and Trust Company | 12/22/1972 | 7139913 | - | - | - |
| 11. | 44900 | CA | DELANO | Owned | C | CTIC | 3/23/2018 | 21800635 | Slooten | 3/3/2016 | 10571-01 |
| 12. | 485700 | CA | Desert Hot Springs | Owned | C | CTIC | 3/23/2018 | 21800644 | ALS | 3/29/2018 | 117-18 |
| 13. | 8038 | CA | El Cajon | Owned | P | Security | 7/13/1970 | A-452987 | - | - | - |
| 14. | 120900 | CA | Long Beach | Owned | C | CTIC | 3/19/2018 | 21800638 | Bock/Clark | 11/23/2016 | 7201600160 |
| 15. | 106800 | CA | Palmdale | Owned | C | CTIC | 3/19/2018 | 21800637 | SiteTech | 3/15/2018 | N/A |

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 278 of 1120

| | RE ID | ST | City | 10K Own/L/GL | Policy (P), Commitment (C), Other (R) | Title Company | Date | Policy or Commitment Number | Surveyor | Date of Survey | Survey No. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 16. | 336800 | CA | Redlands | Owned | C | CTIC | 3/23/2018 | 21800641 | ALS | 12/23/2016 | 160-16 |
| 17. | 178800 | CA | Richmond | Owned | C | FATIC | 4/24/2015 | 700526-62 | Bock/Clark | 5/26/2015 | 201403456-056 |
| 18. | 1788 | CA | Richmond | Owned | C | Lawyers Title | 9/2/1987 | 100717 | - | - | - |
| 19. | 8098 | CA | San Bernardino | Owned | C | Chicago Title | 11/14/2018 | 21701755 | - | - | - |
| 20. | 127800 | CA | Torrance | Owned/GL* | P | FATIC | 8/24/2010 | 347950 | -- | -- | -- |
| 21. | 3968 | CA | Wasco | Owned | P | First American | 7/20/1990 | KER-1071352 | Lars Andersen & Associates, Inc. | 32921 | 89-157 |
| 22. | 2451 | CO | Greely | Owned | P | First American | 11/2/2015 | 5011408-700526-66 | - | - | - |
| 23. | 127100 | CO | Littleton/Denver | Owned | C | CTIC | 4/2/2018 | 21800647 | Inter-Mountain | 4/2/2018 | 18-9004 |
| 24. | 128100 | CO | Pueblo | Owned | C | CTIC | 3/26/2018 | 21800648 | ESC | 3/9/2018 | 17036-S |
| 25. | 183100 | CO | Thornton | Owned | C | CTIC | 3/30/2018 | 21800649 | Inter-Mountain | 3/12/2018 | 17-9029 |
| 26. | 144300 | CT | Manchester | Owned | C | CTIC | 4/4/2018 | 21800652 | Flynn/CYR | 5/15/2017 | 4-39-190 |
| 27. | 1043 | CT | Meriden | Owned | C | Chicago Title | 11/30/2018 | 21800650 | - | - | - |
| 28. | 1263 | CT | Waterbury | Owned | C | Chicago Title | 11/29/2018 | 21800651 | - | - | - |
| 29. | 185300 | DE | Wilmington | Owned | C | CTIC | 4/4/2018 | 21800653 | Spartan | 5/11/2017 | N/A |
| 30. | 1255 | FL | Citrus Park | Owned | P | Lawyers Title | 7/27/1998 | 136-00-837327 | - | - | - |

WEIL:\96826275\11\73217.0003

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 279 of 1120

| | RE ID | ST | City | 10K Own/L/GL | Policy (P), Commitment (C), Other (R) | Title Company | Date | Policy or Commitment Number | Surveyor | Date of Survey | Survey No. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 31. | 105500 | FL | Coral Springs | Owned | C | CTIC | 3/26/2018 | 21800656 | Altamax | 3/13/2018 | 902005 |
| 32. | 107500 | FL | Daytona Beach | Owned | C | Lawyers | 7/19/1974 | N434748 | -- | -- | -- |
| 33. | 1075 | FL | Daytona Beach | Owned | P | Lawyers Title | 7/19/1974 | N434748 | Phillips, Wine & Phillips, Inc. | Not legible | Not legible |
| 34. | 31930 / 4767 / 52518 | FL | Hialeah | Owned | C | First American | 7/30/1998 | FA-C-1945 | Ludovici & Orange | 34641 | 9028K |
| 35. | 7435 / 7008 | FL | Hialeah | Owned | P | CTIC | 3/17/1995 | 10 5120 106 00000009 | Fortin, Leavy, Skiles, Inc. | 34736 | 950187 |
| 36. | 31930 | FL | Hialeah | Owned | C | Chicago Title | 11/2/2018 | 21802096 | - | - | - |
| 37. | 1635 | FL | Jacksonville | Owned | P | CTIC | 5/26/1981 | 10 044 01 00409 | - | - | - |
| 38. | 4019 | FL | Melbourne | Owned | C | Chicago Title | 11/29/2018 | 21802107 | - | - | - |
| 39. | 117500 | FL | Merritt Island | Owned | C | CTIC | 3/28/2018 | 21800657 | Altamax | 3/15/2016 | 902004 |
| 40. | 829200 | FL | Ocala | Owned | C | Chicago Title | 3/30/2018 | 21800668 | Altamax | 3/10/2018 | 902007 |
| 41. | 148500 | FL | Orange Pk | Owned | C | CTIC | 3/28/2018 | 21800661 | Bock/Clark | 3/27/2018 | 9201800100 |
| 42. | 128500 | FL | Orlando-South | Owned | C | CTIC | 3/28/2018 | 21800659 | Altamax | 3/25/2018 | 902015 |

WEIL:96826275\11\73217.0003

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 280 of 1120

| | RE ID | ST | City | 10K Own/L/GL | Policy (P), Commitment (C), Other (R) | Title Company | Date | Policy or Commitment Number | Surveyor | Date of Survey | Survey No. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 43. | 288500 | FL | Port Richey | Owned | C | CTIC | 3/19/2018 | 21800663 | Altamax | 3/10/2018 | 901999 |
| 44. | 1555 | FL | Sanford | Owned | P | CTIC | 8/24/1997 | FL 014 04 N 58986B | Professional Engineering Consultants, Inc. | 34312 | 50C-01-1.8 |
| 45. | 213500 | FL | Sebring | Owned | C | Ok | 6/12/2018 | 21801223 | -- | -- | -- |
| 46. | 8245 | FL | Seminole | Owned | C | First American | 11/27/2013 | 5011612-NCS-646445-CHI2 | - | - | - |
| 47. | 101500 | FL | Vero Beach | Owned | C | CTIC | 3/29/2018 | 21800655 | ASI | 3/30/2018 | N/A |
| 48. | 2815 | GA | Albany | Owned | P | Lawyers Title | 6/14/1974 | M425873 | - | - | - |
| 49. | 284500 | GA | Athens | Owned | C | CTIC | 3/21/2018 | 21800677 | Moreland | 12/22/2017 | 17386-90 |
| 50. | 103500 | GA | Augusta | Owned | C | CTIC | 3/20/2018 | 21800670 | Moreland | 11/17/2017 | 17349-002 |
| 51. | 2065 | GA | Brunswick | Owned | P | CTIC | 3/21/1985 | O194662 | - | - | - |
| 52. | 109500 | GA | Douglasville | Owned | C | CTIC | 3/20/2018 | 21800671 | Moreland | 11/15/2017 | 11245-01 |
| 53. | 115500 | GA | Kennesaw | Owned | C | CTIC | 3/20/2018 | 21800672 | Garmon | 12/22/2017 | 2017-36 |
| 54. | 1565 | GA | Morrow/Southlake | Owned | C | Chicago Title | 11/25/2018 | 21800673 | | | - |

WEIL:\96826276\11\73217.0003

| | RE ID | ST | City | 10K Own/L/GL | Policy (P), Commitment (C), Other (R) | Title Company | Date | Policy or Commitment Number | Surveyor | Date of Survey | Survey No. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 55. | 875500 | GA | TUCKER | Owned | C | CTIC | 3/26/2018 | 21800678 | Moreland, Altobelli Assoc. | 3/12/2018 | 17349-04 |
| 56. | 770500 | GU | Tamuning | Owned | C | CTIC | 7/24/2018 | 21801466 | Pineda | 9/19/2018 | N/A |
| 57. | 7439 | IA | Council Bluff | Owned | P | Fidelity National Title | 4/10/1992 | O-103889 | - | - | - |
| 58. | 1012 and 8112 | IA | Des Moines, Iowa | Owned | C | Chicago Title | 11/30/2018 | 21800679 | - | - | - |
| 59. | 11720 | IL | Bloomingdale | Owned | C | CTIC | 4/10/2018 | 21800683 | JLH | 11/16/2017 | N/A |
| 60. | 61510/1510 | IL | Calumet City | Owned | P | CTIC | 8/3/1964 | 53-70-141 | - | - | - |
| 61. | 61030/1030 | IL | Chicago | Owned | P | CTIC | 12/21/1984 | 69-74-495 | - | - | - |
| 62. | 30920/4235 | IL | Chicago | Owned | P | Lawyers Title | 12/16/2003 | 03-10184 | - | - | - |
| 63. | 26987/9824/1987 | IL | Chicago | Owned | P | First American | 9/27/2001 | CC200257 | Landmark Engineering Corporation | 36762 | 00-08-041-R |
| 64. | 184000 | IL | Chicago Ridge | Owned | C | CTIC | 4/3/2018 | 21800688 | JLH | 12/22/2017 | N/A |
| 65. | 2632 | IL | Fairview Hts | Owned | C | Lawyers Title | 3/20/1998 | 173504-1 | Sherrill Associates | 36082 | 21459 |
| 66. | 49000 | IL | HOFFMAN EST | Owned | C | CTIC | 3/20/2018 | 18006243NC | Sarko | 4/2/2018 | 130975.1 8R00 |

WEIL\9682627511\173217.0003

| | RE ID | ST | City | 10K Own/L/GL | Policy (P), Commitment (C), Other (R) | Title Company | Date | Policy or Commitment Number | Surveyor | Date of Survey | Survey No. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 67. | 828900 | IL | Manteno | Owned | C | CTIC | 3/23/2018 | 21800693 | Sherrill Associates | 3/9/2018 | 18010101 |
| 68. | 132100 | IL | Peoria | Owned | C | CTIC | 4/6/2018 | 21800684 | Sarko | 3/9/2018 | N/A |
| 69. | 2121 | IL | Peru | Owned | C | Chicago Title | 11/27/2018 | 21800689 | - | - | - |
| 70. | 2360 | IL | Quincy | Owned | C | Chicago Title | 12/13/2018 | 21800690 | - | - | - |
| 71. | 31914 /4938 | IL | Round Lake Beach | Owned | C | First American | 11/8/2004 | NCS-72282-CHI1 | Joseph A. Schudt & Associates | 35590 | 9220-233 |
| 72. | 157000 | IL | Schaumburg | Owned | C | CTIC | 3/20/2018 | 18006246NC | Geodetic | 12/15/2017 | N/A |
| 73. | 1780 | IL | Springfield, Illinois | Owned | C | Chicago Title | 11/30/2018 | 21800686 | - | - | - |
| 74. | 31900 /3105 | IL | Sterling | Owned | P | First American | 1/7/2008 | NCS-322276-CHI1 | - | - | - |
| 75. | 182000 | IL | West Dundee | Owned | C | CTIC | 3/27/2018 | 18006248NC | JLH | 10/19/2017 | N/A |
| 76. | 1600 | IN | Castleton | Owned | C | Chicago Title | 11/26/2018 | 21800695 | - | - | - |
| 77. | 26185 /9445 | IN | Clarksville | Owned | P | First American | 12/28/1999 | 5715753 | - | - | - |
| 78. | 165000 | IN | Merrillville | Owned | C | CTIC | 3/21/2018 | 21800696 | JAS | 12/19/2017 | N/A |
| 79. | 2290 | IN | Michigan City, Indiana | Owned | C | Chicago Title | 11/16/2018 | 21800699 | - | - | - |
| 80. | 180000 | IN | Mishawaka | Owned | C | CTIC | 3/23/2018 | 21800698 | LFA | 12/12/2017 | 133-85 |
| 81. | 26711 /1680 | IN | Washington Sq | Owned | P | Lawyers Title | 12/21/1973 | 125730 | - | - | - |

WEIL:\96826275\11\73217.0003

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 283 of 1120

| | RE ID | ST | City | 10K Own/L/GL | Policy (P), Commitment (C), Other (R) | Title Company | Date | Policy or Commitment Number | Surveyor | Date of Survey | Survey No. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 82. | 8171 | KS | Overland Park | Owned | C | Chicago Title | 11/19/2018 | 21802157 | - | - | - |
| 83. | 1642 | KS | Topeka | Owned | C | Chicago Title | 11/12/2018 | 21800700 | - | - | - |
| 84. | 1730 | KY | Florence | Owned | C | Chicago Title | 12/3/2018 | 21800701 | - | - | - |
| 85. | 2087 | LA | Alexandria, Louisiana | Owned | C | Chicago Title | 11/26/2018 | 21800707 | - | - | - |
| 86. | 114700 | LA | Baton Rouge | Owned | C | CTIC | 3/23/2018 | 21800705 | Dading/Marques | 4/13/2018 | N/A |
| 87. | 2677 | LA | Bossier City, Louisiana | Owned | C | Chicago Title | 11/26/2018 | 21800708 | - | - | - |
| 88. | 26736 or 1086 | LA | Cortana | Owned | C | Chicago Title | 12/5/2018 | 21800703 | - | - | - |
| 89. | 1116 | LA | Monroe, Louisiana | Owned | C | Chicago Title | 11/26/2018 | 21800704 | - | - | - |
| 90. | 1077 | LA | Shreveport | Owned | C | Chicago Title | 11/26/2018 | 21800702 | - | - | - |
| 91. | 343300 | MA | Holyoke | Owned | C | CTIC | 4/4/2018 | 21800714 | OSM | 1/4/2017 | 20160998 |
| 92. | 110400 | MA | Marlborough | Owned | C | CTIC | 4/4/2018 | 21800711 | Merrimack | 3/10/2018 | 11283AL03 |
| 93. | 103300 | MA | N Attleboro | Owned | C | CTIC | 4/2/2018 | 21800709 | OSM | 3/9/2018 | 20171044 |
| 94. | 925500 | MA | Palmer | Owned | P | Lawyers | 7/27/1980 | K 744046 | -- | -- | -- |
| 95. | 2934 | MA | Silver City Galleria, Massachusetts | Owned | C | Chicago Title | 12/26/2018 | 21800713 | - | - | - |
| 96. | 1093 | MA | Springfield | Owned | P | Hampden County | 11/2/1964 | F1380 | | | |

WEIL\96826275\11\73217.0003

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 284 of 1120

| | RE ID | ST | City | 10K Own/L/GL | Policy (P), Commitment (C), Other (R) | Title Company | Date | Policy or Commitment Number | Surveyor | Date of Survey | Survey No. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 97. | 163400 | MD | Baltimore-West | Owned | C | CTIC | 3/30/2018 | 21800716 | Precision | 12/21/2017 | N/A |
| 98. | 185400 | MD | Parkville | Owned | C | CTIC | 4/4/2018 | 21800718 | Precision | 12/21/2017 | N/A |
| 99. | 107400 | MD | Waldorf | Owned | C | CTIC | 3/28/2018 | 21800715 | Dewberry | 12/14/2017 | 50099780 |
| 100. | 6303 | ME | Bangor | Owned | C | Chicago Title | 11/21/2018 | 21802159 | - | - | - |
| 101. | 218300 | ME | So Portland | Owned | C | CTIC | 4/2/2018 | 21800314 | Owen Haskell | 3/26/2018 | 2016-098 |
| 102. | 2040 | MI | Battle Creek, Michigan | Owned | C | Chicago Title | 11/29/2018 | 21800730 | - | - | - |
| 103. | 938500 | MI | Clio | Owned | C | CTIC | 3/29/2018 | 21800734 | Geodetic | 3/12/2018 | N/A |
| 104. | 1700 | MI | Dearborn, Michigan | Owned | C | Chicago Title | 11/16/2018 | 21800727 | - | - | - |
| 105. | 1100 | MI | Flint | Owned | P | Lawyers Title | 1/22/1969 | F-40793 | - | - | - |
| 106. | 101100 | MI | Grandville | Owned | C | CTIC | 3/28/2018 | 21800720 | Michigan Surveying | 3/9/2018 | 17-167 |
| 107. | 30918 | MI | Jackson | Owned | C | Chicago Title | 11/20/2018 | 21802110 | - | - | - |
| 108. | 146000 | MI | Livonia | Owned | C | CTIC | 3/2/2018 | 21800725 | Michigan Surveying | 5/24/2014 | 16-188.017 |
| 109. | 119200 | MI | Muskegon | Owned | C | CTIC | 3/30/2018 | 21800724 | Williams &Works | 12/19/2017 | N/A |
| 110. | 176000 | MI | Novi | Owned | C | CTIC | 3/26/2018 | 21800729 | Geodetic | 12/15/2017 | N/A |
| 111. | 111000 | MI | Portage | Owned | C | CTIC | 5/7/2018 | 21800723 | Geodetic | 3/9/2018 | N/A |

WEIL:\96826275\11\73217.0003

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 285 of 1120

| | RE ID | ST | City | 10K Own/L/GL | Policy (P), Commitment (C), Other (R) | Title Company | Date | Policy or Commitment Number | Surveyor | Date of Survey | Survey No. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 112. | 159000 | MI | Saginaw | Owned | C | CTIC | 4/2/2018 | 21800726 | Kem-Tec | 3/13/2018 | N/A |
| 113. | 1720 | MI | Sterling Heights | Owned | C | Chicago Title | 12/17/2018 | 21800728 | - | - | - |
| 114. | 2180 | MI | Traverse City, Michigan | Owned | C | Chicago Title | 12/28/2018 | 21800731 | - | - | - |
| 115. | 384800 | MI | Troy | Owned | C | Chicago Title | 12/17/2018 | 21800736 | - | - | - |
| 116. | 420600 | MI | Warren | Owned | C | CTIC | 3/21/2018 | 21800732 | Michigan Surveying | 3/29/2018 | 18-114.066 |
| 117. | 1032 | MN | Brooklyn Ctr | Owned | C | Chicago Title | 12/6/2018 | 21802229 | - | - | - |
| 118. | 870200 | MN | MINNEAPOLIS | Owned | C | CTIC | 3/20/2018 | 21800738 | Egan, Field & Nowak, Inc. | 12/21/2017 | 133.22 |
| 119. | 182200 | MO | Cape Girardeau | Owned | C | CTIC | 3/30/2018 | 21800745 | L.I. Smith | 3/12/2018 | 170392 |
| 120. | 112100 | MO | Independence | Owned | C | CTIC | 4/4/2018 | 21800740 | Kaw Valley | 3/26/2018 | B18S3480 |
| 121. | 117100 | MO | Springfield | Owned | C | CTIC | 3/27/2018 | 21800741 | J-Mark Surveying | 3/13/2018 | 17-545 |
| 122. | 118200 | MO | St Peters | Owned | C | CTIC | 3/30/2018 | 21800742 | Massmann | 3/12/2018 | 17055.00.001 |
| 123. | 1306 | MS | Hattiesburg, Mississippi | Owned | C | Chicago Title | 11/29/2018 | 21800747 | - | - | - |
| 124. | 61106 / 1106 | MS | Jackson | Owned | P | CTIC | 2/18/1977 | JO12962 | - | - | - |
| 125. | 1166 | MS | Meridian, Mississippi | Owned/GL | C | Chicago Title | 11/30/2018 | 21800746 | - | - | - |
| 126. | 30949 | MS | Natchez | Owned | C | Chicago Title | 11/26/2018 | 21802162 | - | - | - |

WEIL\96826275\11\73217.0003

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 286 of 1120

| | RE ID | ST | City | 10K Own/L/GL | Policy (P), Commitment (C), Other (R) | Title Company | Date | Policy or Commitment Number | Surveyor | Date of Survey | Survey No. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 127. | 3213 | MS | Southaven | Owned | C | Chicago Title | 11/21/2018 | 21802161 | - | - | - |
| 128. | 2242 | MT | Billings | Owned | C | CTIC | 3/17/1980 | Not specified | - | - | - |
| 129. | 116500 | NC | Concord | Owned | C | CTIC | 3/20/2018 | 21800750 | Donaldson/Garrett | 3/12/2018 | N/A |
| 130. | 147500 | NC | Durham | Owned | P | Ticor | 7/20/2001 | 990027712 | -- | -- | -- |
| 131. | 30961 | NC | Greensboro | Owned | C | Chicago Title | 11/19/2018 | 21802114 | - | - | - |
| 132. | 217500 | NC | Greenville | Owned | C | CTIC | 3/20/2018 | 21800755 | Jimmy F. Cain | 3/9/2018 | N/A |
| 133. | 251500 | NC | Hickory | Owned | C | CTIC | 3/19/2018 | 21800756 | David B. Jordan | 3/13/2018 | 43.22 |
| 134. | 160500 | NC | Raleigh | Owned | C | CTIC | 3/16/2018 | 21800752 | KCI | 3/9/2018 | N/A |
| 135. | 1712 | ND | Grand Forks, North Dakota | Owned | C | Chicago Title | 11/27/2018 | 21800758 | - | - | - |
| 136. | 219100 | NE | Lincoln | Owned | C | CTIC | 4/4/2018 | 21800760 | JEO | 3/9/2018 | R160856 |
| 137. | 1022 | NE | Omaha | Owned | C | Chicago Title | 12/6/2018 | 21800759 | - | - | - |
| 138. | 1554 | NJ | Hamilton Center, New Jersey (Mays Landing) | Owned/GL | C | Chicago Title | 11/19/2018 | 21800762 | - | - | - |
| 139. | 1734 | NJ | Lawrenceville | Owned | C | Chicago Title | 11/27/2018 | 21802163 | - | - | - |
| 140. | 161400 | NJ | Livingston | Owned | C | CTIC | 4/2/2018 | 21800763 | Crest | 3/9/2018 | N5623 |
| 141. | 131400 | NJ | New Brunswick | Owned | C | CTIC | 3/23/2018 | 21800761 | Landpoint | 3/9/2018 | 17-1454 |

WEIL:\96826276\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 287 of 1120

| | RE ID | ST | City | 10K Own/L/GL | Policy (P), Commitment (C), Other (R) | Title Company | Date | Policy or Commitment Number | Surveyor | Date of Survey | Survey No. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 142. | 1744 | NJ | Ocean | Owned | P | CTIC | 11/7/1975 | 31-911-04-00266 | - | - | - |
| 143. | 176400 | NJ | Rockaway | Owned | C | CTIC | 4/8/2018 | 21800766 | Professional Surveying | 3/9/2018 | N/A |
| 144. | 2374 | NJ | Vineland | Owned | C | First American | 12/2/2003 | 03-37091-110 | - | - | - |
| 145. | 1717 | NM | Cottonwood, New Mexico | Owned | C | Chicago Title | 12/27/2018 | 21800769 | - | - | - |
| 146. | 6298 | NV | Sparks | Owned | C | Chicago Title | 11/27/2018 | 21802163 | - | - | - |
| 147. | 1353 | NY | De Witt/Syracuse | Owned | P | Monroe Title and Insurance Corporation | 11/13/1995 | 201-010785 | - | - | - |
| 148. | 472600 | NY | Jamestown | Owned | C | CTIC | 3/1/2018 | 21800773 | Lehr | 4/2/2018 | 18-C-44 |
| 149. | 136400 | NY | Lake Grove | Owned | C | CTIC | 3/30/2018 | 7404-000242 | Lehr | 3/31/2018 | 16-B-83 |
| 150. | 1514 | NY | Niagara Falls | **Owned** | C | Chicago Title | 11/12/2018 | 21802116 | - | - | - |
| 151. | 8254 | NY | Rochester | Owned | P | First American | 1/19/1996 | Y0036980 | MRB group | 35051 | 942-373-R2B |
| 152. | 1370 | OH | Eastland | Owned | P | Commonwealth | 9/9/1971 | N247959 | - | - | - |
| 153. | 2940 | OH | Franklin | Owned | P | CTIC | 11/12/1975 | 36 062 17 00015 | - | - | - |
| 154. | 201000 | OH | Mansfield | Owned | C | CTIC | 3/22/2018 | 21800780 | LMS | 3/9/2018 | B-170742 |
| 155. | 171000 | OH | No Olmsted | Owned | C | CTIC | 3/23/2018 | 21800778 | North Coast Geomatics | 3/9/2018 | NCG 1369 |
| 156. | 1610 | OH | Northgate | Owned | P | Lawyers Title | 3/17/1971 | T655887 | - | - | - |

WEIL:\96826275\11\73217.0003

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 288 of 1120

| | RE ID | ST | City | 10K Own/L/GL | Policy (P), Commitment (C), Other (R) | Title Company | Date | Policy or Commitment Number | Surveyor | Date of Survey | Survey No. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 157. | 239000 | OH | Springfield | Owned | C | CTIC | 3/27/2018 | 21800781 | Judge Engineering | 10/23/2017 | 10061 |
| 158. | 1051 | OH | Strongsville/South Park, Ohio | Owned | C | Chicago Title | 11/22/2018 | 21800775 | - | - | - |
| 159. | 112000 | OH | Tuttle Crossing | Owned | C | CTIC | 4/6/2018 | 21800776 | IBI Group | 3/9/2018 | - |
| 160. | 8305 | OH | Warren | Owned | P | First American | 10/10/2007 | NCS-249329-CHI1 | - | - | - |
| 161. | 1261 | OK | Midwest City | Owned | P | Lawyers Title | 8/1/1977 | K249446 | - | - | - |
| 162. | 122400 | PA | Harrisburg | Owned | C | CTIC | 3/19/2018 | 21800785 | SAS | 3/28/2018 | SRN 1606 |
| 163. | 1863 | PA | Johnstown | Owned | P | Commonwealth | 11/9/1992 | 101-675327 | - | - | - |
| 164. | 352900 | PA | Pittsburgh | Owned | C | CTIC | 3/12/2018 | 21800788 | MDM | 3/20/2018 | 7592 |
| 165. | 1293 | PA | Robinson Twp | Owned | P | First American | 11/3/2000 | 118598 | Not legible | 36749 | Not legible |
| 166. | 135400 | PA | Willow Grove | Owned | C | CTIC | 3/26/2018 | 21800787 | SAS | 3/26/2018 | SRN1501 |
| 167. | 939400 | PR | Fajardo | Owned | P | Am Land | 1/27/1999 | 53-0002-04-006203 | -- | -- | -- |
| 168. | 385300 | PR | Guayama | Owned | C | Hato Rey | 12/7/1992 | 13562 | -- | -- | -- |
| 169. | 2305 | SC | Anderson, South Carolina | Owned | C | Chicago Title | 4/5/2018 | 21800792 | - | - | - |

WEIL:96826275\11\73217.0003

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 289 of 1120

| | RE ID | ST | City | 10K Own/L/GL | Policy (P), Commitment (C), Other (R) | Title Company | Date | Policy or Commitment Number | Surveyor | Date of Survey | Survey No. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 170. | 159500 | SC | Greenville | Owned | C | CTIC | 3/16/2018 | 21800790 | Site Design, Inc. | 3/9/2018 | N/A |
| 171. | 179500 | SC | Myrtle Beach | Owned | C | CTIC | 3/31/2018 | 21800791 | Freeland-Clinkscales | 3/19/2018 | H38114 |
| 172. | 1545 | SC | Spartanburg, South Carolina | Owned | C | Chicago Title | 12/7/2018 | 21800789 | - | - | - |
| 173. | 30941/7306 | SD | Sioux Falls | Owned | P | First American | 7/16/2007 | CO 866158 | - | - | - |
| 174. | 1315 | TN | Chattanooga | Owned | C | Chicago Title | 12/5/2018 | 21800795 | - | - | - |
| 175. | 314700 | TN | Kingsport | Owned | C | CTIC | 3/30/2018 | 21800797 | Barrett Surveying | 3/23/2018 | N/A |
| 176. | 1675 | TN | Knoxville East Town | Owned | P | Title Insurance Company of Minnesota | 3/27/1986 | AZ-551986 | - | - | - |
| 177. | 446 | TN | Memphis | Owned | C | Chicago Title | 11/15/2018 | 21701113 | - | - | - |
| 178. | 26596 | TN | Memphis/Hickory | Owned | C | Chicago Title | 12/7/2018 | 21802129 | - | - | - |
| 179. | 1216 | TN | Memphis/Southland | Owned | P | Commercie Title Guaranty Company | 7/31/1964 | MS-121572 | - | - | - |
| 180. | 130700 | TX | Abilene | Owned | C | CTIC | 4/12/2018 | 21800807 | Landpoint | 3/9/2018 | 17-1455 |
| 181. | 143700 | TX | Arlington/Parks | Owned | C | CTIC | 3/26/2018 | 21800815 | Benchmark Group | 3/7/2017 | 1730003 |
| 182. | 1487 | TX | Austin, Texas | Owned | C | Chicago Title | 12/12/2018 | 21800819 | - | - | - |
| 183. | 140700 | TX | Beaumont | Owned | C | CTIC | 2/20/2018 | 21800814 | Thomas Land | 3/9/2018 | 16490 |

WEIL\96826275\117\3217.0003

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 290 of 1120

| | RE ID | ST | City | 10K Own/L/GL | Policy (P), Commitment (C), Other (R) | Title Company | Date | Policy or Commitment Number | Surveyor | Date of Survey | Survey No. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 184. | 249700 | TX | Brownsville | Owned | C | CTIC | 4/6/2018 | 21800822 | Guzman & Munoz | 3/12/2018 | N/A |
| 185. | 2547 | TX | College Station, Texas | Owned | C | Chicago Title | 11/18/2018 | 21800823 | - | - | - |
| 186. | 121700 | TX | Corpus Christi | Owned | C | CTIC | 2/23/2018 | 21501922 | SGC | 3/13/2018 | N/A |
| 187. | 2587 | TX | Denton, Texas | Owned | C | Chicago Title | 11/26/2018 | 21800825 | - | - | - |
| 188. | 8247 | TX | Dickinson | Owned | P | Lawyers Title Insurance Corporation | 1/21/1998 | 113-00-002984 | - | - | - |
| 189. | 1027 | TX | El Paso, Texas | Owned | C | Chicago Title | 11/29/2018 | 21800800 | - | - | - |
| 190. | 8217 | TX | Ft. Worth+1209 | Owned | C | Chicago Title | 11/27/2018 | 21800828 | - | - | - |
| 191. | 871700 | TX | HOUSTON | Owned | C | CTIC | 3/28/2018 | 21800829 | Thomas Land | 3/9/2018 | 16397 |
| 192. | 8137 | TX | Houston | Owned | C | Lawyers Title Insurance Corporation | 5/23/1983 | 4876-83 | - | - | - |
| 193. | 6874 | TX | Houston | Owned | P | Lawyers Title Insurance Corporation | 6/9/1998 | 90-00-494623 | - | - | - |
| 194. | 8167 | TX | Houston | Owned | P | Steward Title Guaranty Company | 11/4/1969 | 9240-J | - | - | - |
| 195. | 61237 | TX | Houston | Owned | C | Chicago Title | 11/15/2018 | 4715002318A | - | - | - |
| 196. | 14470 | TX | Hulen | Owned | C | CTIC | 3/26/2018 | 21800818 | Benchmark Group | 3/12/2018 | 1730041 |
| 197. | 141700 | TX | Humble | Owned | C | CTIC | 3/28/2018 | 21800815 | Thomas Land | 3/12/2018 | 16435 |

WEIL\96826275117321770003

| | RE ID | ST | City | 10K Own/L/GL | Policy (P), Commitment (C), Other (R) | Title Company | Date | Policy or Commitment Number | Surveyor | Date of Survey | Survey No. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 198. | 129700 | TX | Hurst | Owned | C | CTIC | 3/26/2018 | 21800806 | Benchmark Group | 3/9/2018 | 1730040 |
| 199. | 224700 | TX | Laredo | Owned | C | CTIC | 3/26/2018 | 21800821 | SGC | 3/9/2018 | N/A |
| 200. | 118700 | TX | Mesquite-Town East | Owned | C | CTIC | 3/28/2018 | 21800803 | Benchmark Group | 3/9/2018 | 1730039 |
| 201. | 117600 | TX | Pasadena | Owned | C | CTIC | 3/28/2018 | 21800802 | Town and Country | 3/12/2018 | 17-1516 |
| 202. | 1267 | TX | Ridgmar-Fort Worth, Texas | Owned | C | Chicago Title | 11/27/2018 | 21800805 | - | - | - |
| 203. | 142700 | TX | Rolling Oaks | Owned | C | CTIC | 3/27/2018 | 21800816 | SGC | 3/9/2018 | N/A |
| 204. | 49027 | TX | Round Rock | Owned | C | First American | 5/22/2008 | 354541-CH12 | Dupont | 35453 | A-609 |
| 205. | 2332 | TX | San Antonio | Owned | P | Mission Title | 10/13/2016 | 1603063-02 | ALTA/NS PS | 42599 | Not legible |
| 206. | 219700 | TX | Texas City | Owned | C | CTIC | 3/27/2018 | 21800820 | Rekha Engineering | 3/9/2018 | 1017-3917 |
| 207. | 137700 | TX | Willowbook | Owned | C | CTIC | 3/28/2018 | 21800812 | Town and Country | 3/13/2018 | 17-0235 |
| 208. | 102300 | VA | Loudoun/Dulles | Owned | C | CTIC | 4/4/2018 | 21800832 | Urban | 4/5/2016 | |
| 209. | 2671 / 7518 | VA | Newport News | Owned | P | Commonwealth | 11/29/1994 | 101792 | - | - | - |
| 210. | 197400 | VA | Roanoke | Owned | C | CTIC | 4/3/2018 | 21800833 | Berkley Howell | 12/27/2016 | 160111 |
| 211. | 3544 | VA | Salem | Owned | P | First American | 10/26/2007 | 308898-CH12 | - | - | - |

WEIL\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM   2020L012403

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 292 of 1120

| | RE ID | ST | City | 10K Own/L/GL | Policy (P), Commitment (C), Other (R) | Title Company | Date | Policy or Commitment Number | Surveyor | Date of Survey | Survey No. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 212. | 229900 | WA | Aberdeen | Owned | P | Pioneer | 12/23/1980 | Z177716 | -- | -- | -- |
| 213. | 372200 | WA | Burlington | Owned | C | CTIC | 3/30/2018 | 21800840 | Terramark | 12/2/2016 | 5188-20105 |
| 214. | 103800 | WA | E Valley | Owned | C | CTIC | 3/29/2018 | 21800835 | Duryea | 3/13/2018 | 17-2269 |
| 215. | 221900 | WA | Lacey/Olympia | Owned | C | CTIC | 3/30/2018 | 21800838 | Terramark | 3/9/2018 | N/A |
| 216. | 230900 | WA | Silverdale | Owned | C | CTIC | 3/30/2018 | 21800839 | All County Surveyors | 3/9/2018 | N/A |
| 217. | 102900 | WA | Spokane | Owned | C | CTIC | 3/29/2018 | 21800834 | Duryea | 3/9/2018 | 08-1375 2017 |
| 218. | 414700 | WA | Spokane | Owned | C | CTIC | 3/15/2018 | 21800841 | Terramark | 3/9/2018 | N/A |
| 219. | 6579 | WA | Spokane | Owned | C | Lawyers Title Insurance Corporation | 10/7/1992 | 92-0355 | - | - | - |
| 220. | 209200 | WI | Appleton | Owned | C | CTIC | 3/27/2018 | 21800842 | Lampert-Lee | 3/28/2018 | 18-37 |
| 221. | 4395 | WI | Cudahy | Owned | C | ALTA | 4/12/2004 (mark-up) | 1173527 | - | - | - |
| 222. | 308800 | WI | Kenosha | Owned | C | CTIC | 3/20/2018 | 21800845 | JLH | 3/27/2018 | 18-260-105 |
| 223. | 2432 | WI | La Crosse | Owned | C | Chicago Title | 12/3/2018 | 21800844 | - | - | - |
| 224. | 223200 | WI | Madison-East | Owned | C | CTIC | 4/2/2018 | 21800843 | Sarko | 3/29/2018 | 45.22 |

WEIL\96826275\11\73217.0003

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 293 of 1120

| | RE ID | ST | City | 10K Own/L/GL | Policy (P), Commitment (C), Other (R) | Title Company | Date | Policy or Commitment Number | Surveyor | Date of Survey | Survey No. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 225. | 180400 | WV | Barboursville | Owned | C | CTIC | 4/2/2018 | 21800847 | Eastham & Associates | 3/22/2018 | N/A |

19. Each of the Encumbrances listed below:

| | Debtor | Place of Filing | Type of filing found | Secured Party | Collateral | Original File Date | Original File Number | Amendment/Continuation File Date | Amendment/Continuation File Number |
|---|---|---|---|---|---|---|---|---|---|
| 1. | California Builder Appliances, Inc. | CA Secretary of State | UCC-1 | Maytag Appliances Sales Company | PMSI inventory | 9/22/00 | 0027760879 | 6/10/02 7/08/02 7/6/05 5/18/10 3/27/15 | 0216 2C0017 0219 0C0069 05/70332234 10-72320757 15-74569635 |
| 2. | Florida Builder Appliances, Inc. | DE Secretary of State | UCC-1 | U.S. Bank Equipment Finance, a division of U.S. Bank National Association | Specific equipment | 7-16-18 | 20184851396 | 7-19-18 | 20184952046 |
| 3. | Innovel Solutions, Inc. | DE Secretary of State | UCC-1 | Captive Finance Solutions, LLC | Leased equipment | 12/24/14 | 2014 5241856 | N/A | N/A |
| 4. | Innovel Solutions, Inc. | DE Secretary of State | UCC-1 | LG Electronics U.S.A., Inc. | Inventory that the Debtor holds as bailee under agreement between | 1/13/17 | 2017 0301009 | N/A | N/A |

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 294 of 1120

| | Debtor | Place of Filing | Type of filing found | Secured Party | Collateral | Original File Date | Original File Number | Amendment /Continuation File Date | Amendment/Continuation File Number |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | the Debtor and the secured party | | | | |
| 5. | Kmart Corporation | IL Secretary of State | UCC-1 | Abrim Enterprises, Inc. | Consigned inventory | 09/22/16 | 21733199 | N/A | N/A |
| 6. | Kmart Corporation | IL Secretary of State | UCC-1 | Joseph Enterprises Inc. | PMSI inventory | 9/27/17 | 22744488 | N/A | N/A |
| 7. | Kmart Corporation | IL Secretary of State | UCC-1 | Royal Consumer Products LLC | Poster board and foam board | 11/18/14 | 19811727 | N/A | N/A |
| 8. | Kmart Corporation | MI Department of State | UCC-1 | State Street Bank and Trust Company/U.S. Bank National Association | Precautionary filing; parties intended to be a true lease | 5-16-02 | D910941 | 1-22-07 1-31-07 1-18-12 1-26-17 | 2007012057-9 2007017707-3 2012009674-3 2017012600048 9 -4 |
| 9. | Kmart Corporation | MI Department of State | UCC-1 | The Bank of New York, as Note Trustee | Precautionary filing; parties intended to be a true lease | 5-28-02 | D915512 | 2-12-07 3-19-07 1-18-12 5-27-12 2-3-17 | 2007024132-3 2007043214-0 2012009204-8 2012077131-5 2017020300016 9 -1 |

WEIL:\9682627\11\73217.0003

| | Debtor | Place of Filing | Type of filing found | Secured Party | Collateral | Original File Date | Original File Number | Amendment /Continuation File Date | Amendment/Continuation File Number |
|---|---|---|---|---|---|---|---|---|---|
| 10. | Kmart Corporation | MI Department of State | UCC-1 | Horizon Group USA, Inc. | Consigned inventory | 4-13-09 | 2009054475-9 | 4-1-13 11-1-13 | 2013045352-7 2013157896-4 |
| 11. | Kmart Corporation | MI Department of State | UCC-1 | Clover Technologies Group, LLC | Consigned inventory | 7-11-12 | 2012099717-3 | 3-3-17 | 2017030300786 -1 |
| 12. | Kmart Corporation | MI Department of State | UCC-1 | Abrim Enterprises, Inc. | Consigned inventory | 9/22/16 | 20160920009 30-0 | N/A | N/A |
| 13. | Kmart Corporation | MI Department of State | UCC-1 | ACCO Brands USA LLC | Consigned inventory | 11/1/16 | 20161101007 96-0 | N/A | N/A |
| 14. | Kmart Corporation | MI Department of State | UCC-1 | ACCO Brands USA LLC | Consigned inventory | 11/2/16 | 201611020004 27-2 | N/A | N/A |
| 15. | Kmart Corporation | MI Department of State | UCC-1 | American Greetings Corporation | Consigned inventory | 5/6/03 | 2003087025-3 | 5/5/08 4/26/13 8/22/16 4/25/18 | 2008069511-2 2013059416-9 2016115608-1 2018042500041 4 -7 |
| 16. | Kmart Corporation | MI Department of State | UCC-1 | American Greetings Corporation | Consigned inventory | 5/7/03 | 2003087053-2 | 5/5/08 4/26/13 | 2008069512-4 2013059415-7 2016115609-3 |

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 296 of 1120

| Debtor | Place of Filing | Type of filing found | Secured Party | Collateral | Original File Date | Original File Number | Amendment /Continuation File Date | Amendment/Continuation File Number |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | 8/22/16 4/25/18 | 2018042500416-5 |
| 17. Kmart Corporation | MI Department of State | UCC-1 | Aneri Jewels L.L.C. | Consigned inventory | 12/30/15 | 2015178917-9 | N/A | N/A |
| 18. Kmart Corporation | MI Department of State | UCC-1 | Aneri Jewels, L.L.C. | Consigned inventory | 9/17/14 | 2014135693-0 | 12/11/15 | 2015171608-7 |
| 19. Kmart Corporation | MI Department of State | UCC-1 | Beauty Gem, Inc. | Consigned inventory | 6/19/12 | 2012088753-6 | 10/04/16 1/31/17 | 2016104000429-9 2017013100492-0 |
| 20. Kmart Corporation | MI Department of State | UCC-1 | Bio-Lab, Inc. | Consigned inventory | 1/23/07 | 2007012556-7 | 1/23/12 11/02/16 | 2012011696-3 2016110200040 9-6 |
| 21. Kmart Corporation | MI Department of State | UCC-1 | Combine International, Inc. (d/b/a I.L. MFG Co., Shan Corporation and/or NSM Corp.) | Consigned inventory | 8/28/08 | 2008135282-6 | 6/26/13 4/10/18 | 2013093663-4 2018041000085 2-1 |
| 22. Kmart Corporation | MI Department of State | UCC-1 | Early Morning LLC | Consigned inventory | 1/19/18 | 2018011900072 8-9 | N/A | N/A |

WEIL:\96826275\11\73217.0003

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 297 of 1120

| Debtor | Place of Filing | Type of filing found | Secured Party | Collateral | Original File Date | Original File Number | Amendment/Continuation File Date | Amendment/Continuation File Number |
|---|---|---|---|---|---|---|---|---|
| 23. | Kmart Corporation | MI Department of State | UCC-1 | ET Enterprises Distributors, Inc. | Consigned apparel and visor merchandise. Total $54,846.00 | 7/29/16 | 2016105914-8 | N/A | N/A |
| | Sears, Roebuck and Co./Sears Holdings Management, Inc. | | | | | | | | |
| 24. | Kmart Corporation | MI Department of State | UCC-1 | Hilco Wholesale Solutions, LLC | Consigned inventory | 3/18/16 | 2016037312-9 | N/A | N/A |
| 25. | Kmart Corporation | MI Department of State | UCC-1 | Homecare Labs, Inc. | Consigned inventory | 1/23/07 | 2007012558-1 | 1/23/12 11/02/16 | 201201169-9 2016110200041 2-0 |
| 26. | Kmart Corporation | MI Department of State | UCC-1 | Kama-Schachter Jewelry, Inc. | Consigned inventory | 9/20/16 | 2016092000098 78-2 | N/A | N/A |
| 27. | Kmart Corporation | MI Department of State | UCC-1 | LM Farms, LLC | Consigned inventory | 1/19/18 | 2018011900076 26-1 | N/A | N/A |

WEIL:\96826275\11\73217.0003

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 298 of 1120

| | Debtor | Place of Filing | Type of filing found | Secured Party | Collateral | Original File Date | Original File Number | Amendment/Continuation File Date | Amendment/Continuation File Number |
|---|---|---|---|---|---|---|---|---|---|
| 28. | Kmart Corporation | MI Department of State | UCC-1 | Lucent Jewelers, Inc. N.D. Gems Inc. | Consigned inventory | 2/2/17 | 201702020010 80-3 | N/A | N/A |
| 29. | Kmart Corporation | MI Department of State | UCC-1 | Mantua Manufacturing Co. | Consigned inventory | 10/2/18 | 201810020011 08-6 | N/A | N/A |
| 30. | Kmart Corporation | MI Department of State | UCC-1 | Maxcolor LLC | Consigned inventory | 9/7/17 | 201709070003 78-6 | N/A | N/A |
| 31. | Kmart Corporation | MI Department of State | UCC-1 | Mill Creek Entertainment, LLC | Consigned inventory | 10/29/14 | 2014155704-9 | N/A | N/A |
| 32. | Kmart Corporation | MI Department of State | UCC-1 | MJ Holding Company, LLC | Consigned inventory | 12/01/09 | 2009169240-0 | 7/13/12 6/28/13 6/3/14 | 2012100886-4 2013095152-3 2014079863-2 |
| 33. | Kmart Corporation | MI Department of State | UCC-1 | NCR Corporation | PMSI inventory | 3/12/09 | 2009037776-6 | 2/28/14 | 2014029466-0 |
| 34. | Kmart Corporation | MI Department of State | UCC-1 | Plus Mark LLC | PMSI inventory | 10/4/16 | 201610120005 41-9 | N/A | N/A |

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 299 of 1120

| | Debtor | Place of Filing | Type of filing found | Secured Party | Collateral | Original File Date | Original File Number | Amendment /Continuation File Date | Amendment/Continuation File Number |
|---|---|---|---|---|---|---|---|---|---|
| 35. | Kmart Corporation | MI Department of State | UCC-1 | Richline Group, Inc. | Consigned inventory | 10/23/14 | 2014153071-4 | N/A | N/A |
| 36. | Kmart Corporation | MI Department of State | UCC-1 | Riverstone USA LLC | Consigned inventory | 10/31/16 | 201611140002 97-8 | N/A | N/A |
| 37. | Kmart Corporation | MI Department of State | UCC-1 | Rosy Blue, Inc. | Consigned inventory | 9/10/13 | 2013131226-5 | 3/14/18 | 20180314001201-7 |
| 38. | Kmart Corporation | MI Department of State | UCC-1 | Royal Consumer Products LLC | Poster board and foam board | 12/16/14 | 2014178469-6 | N/A | N/A |
| 39. | Kmart Corporation | MI Department of State | UCC-1 | S&J Diamond Corp. Disons GEMS, Inc. | Consigned inventory | 8/05/15 | 2015111249-3 | N/A | N/A |
| 40. | Kmart Corporation | MI Department of State | UCC-1 | Sakar International, Inc. | Consigned inventory | 9/30/14 | 2014141770-2 | N/A | N/A |
| 41. | Kmart Corporation | MI Department of State | UCC-1 | Scents of Worth, Inc. | Consigned inventory | 12/20/13 | 2013179478-4 | N/A | N/A |

| | Debtor | Place of Filing | Type of filing found | Secured Party | Collateral | Original File Date | Original File Number | Amendment/Continuation File Date | Amendment/Continuation File Number |
|---|---|---|---|---|---|---|---|---|---|
| 42. | Kmart Corporation | MI Department of State | UCC-1 | Shaghal Ltd. | Consigned inventory | 10/01/15 | 2015137503-3 | N/A | N/A |
| 43. | Kmart Corporation | MI Department of State | UCC-1 | Shanti Corporation D/B/A Vijay Gold Designs | Consigned inventory | 9/18/13 | 2013135456-6 | 8/07/18 | 2018807000509-4 |
| 44. | Kmart Corporation | MI Department of State | UCC-1 | The News Group, L.P. | PMSI inventory | 2/23/18 | 201802230005 73-3 | N/A | N/A |
| 45. | Kmart Corporation | MI Department of State | UCC-1 | Tiger Capital Group, LLC | Consigned inventory | 2/08/18 | 201802080005 47-9 | N/A | N/A |
| 46. | Kmart Corporation | MI Department of State | UCC-1 | Twentieth Century Fox Home Entertainment LLC | Consigned inventory | 4/27/17 | 201704270011 83-6 | N/A | N/A |
| 47. | Kmart Corporation | MI Department of State | UCC-1 | Verbatim Americas LLC | Consigned inventory | 5/13/14 | 201406809 5-0 | N/A | N/A |
| 48. | Kmart Corporation | MI Department of State | UCC-1 | Vijaydimon (USA) Inc. | Consigned inventory | 9/13/13 | 2013133133-0 | 8/07/18 | 2018807000510-0 |

WEIL:\96826275\11\73217.0003

| | Debtor | Place of Filing | Type of filing found | Secured Party | Collateral | Original File Date | Original File Number | Amendment/Continuation File Date | Amendment/Continuation File Number |
|---|---|---|---|---|---|---|---|---|---|
| 49. | Kmart Corporation/Kmart of Michigan, Inc. | MI Department of State | UCC-1 | Jacmel Jewelry Inc. | Consigned inventory | 10/27/14 | 2014154479-9 | N/A | N/A |
| 50. | Kmart Corporation/Sears, Roebuck and Co.,/Sears Holdings Management Corporation./Sears Holdings Corporation | IL Secretary of State | UCC-1 | Chapal Zenray Inc. | Consigned inventory | 11/05/14 | 019779882 | N/A | N/A |
| 51. | Kmart Holding Corporation/ Sears Holdings Corporation | IL Secretary of State | UCC-1 | RGGD, Inc. D/B/A Crystal Art Gallery | Framed art and wall décor | 03/26/12 | 17136976 | 03/08/17 | 9467438 |
| 52. | Kmart of Michigan, Inc. | MI Department of State | UCC-1 | Bio-Lab, Inc. | Consigned inventory | 1/23/07 | 2007012557-9 | 1/23/12 11/02/11 11/02/16 | 2012011697-5 2016110200414-8 |

WEIL:\96826276\11\73217.0003

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 302 of 1120

| | Debtor | Place of Filing | Type of filing found | Secured Party | Collateral | Original File Date | Original File Number | Amendment /Continuation File Date | Amendment/Continuation File Number |
|---|---|---|---|---|---|---|---|---|---|
| 53. | Kmart of Michigan, Inc. | MI Department of State | UCC-1 | Homecare Labs, Inc. | Consigned inventory | 1/23/07 | 2007012559-3 | 1/23/12 11/02/16 | 2012011701-6 2016110200041 9-3 |
| 54. | Kmart of Washington LLC | WA Secretary of State | UCC-1 | Bio-Lab, Inc. | Consigned inventory | 1/23/07 | 2007-024-4055-9 | 1/23/12 11/02/16 | 2012-023-5218-2 2016-307-2158-1 |
| 55. | Kmart of Washington LLC | WA Secretary of State | UCC-1 | HomeCare Labs, Inc. | Consigned inventory | 1/23/07 | 2007-024-4054-2 | 1/23/12 11/02/16 | 2012-023-5219-9 2016-307-2157-4 |
| 56. | Kmart of Washington LLC | WA Secretary of State | UCC-1 | Jacmel Jewelry Inc. | Consigned inventory | 10/27/14 | 2014-300-2219-2 | N/A | N/A |
| 57. | Kmart Operations LLC | DE Secretary of State | UCC-1 | American Greetings Corporation | PMSI inventory | 7/1/15 | 2015 2834785 | 8/22/16 | 2016509264 6 |
| 58. | Kmart Operations LLC | DE Secretary of State | UCC-1 | RX Gear, LLC | Consigned inventory | 7/31/15 | 20153333670 | N/A | N/A |
| 59. | Kmart Operations LLC | DE Secretary of State | UCC-1 | Work 'N Gear, LLC | Consigned inventory | 07/31/15 | 20153333647 | N/A | N/A |

WEIL\96826276\11\73217.0003

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 303 of 1120

| | Debtor | Place of Filing | Type of filing found | Secured Party | Collateral | Original File Date | Original File Number | Amendment /Continuation File Date | Amendment/Continuation File Number |
|---|---|---|---|---|---|---|---|---|---|
| 60. | Kmart Operations LLC/Sears Operation LLC/ Sears Holdings Corporation | DE Secretary of State | UCC-1 | Lucent Jewelers, Inc. N.D. Gems Inc. | Consigned inventory | 4/18/18 | 2018630396 | N/A | N/A |
| 61. | Kmart Operations LLC/Sears Operations LLC/Sears, Roebuck and Co. | IL Secretary of state | UCC-1 | D-Link Systems, Inc. | Consigned inventory | 10/16/14 | 19726150 | 6/26/15 | 09363045 |
| 62. | Kmart Stores of Illinois LLC | IL Secretary of State | UCC-1 | Bio-Lab, Inc. | Consigned inventory | 1/23/07 | 11741681 | 1/23/12 11/02/16 | 009157193 009444896 |
| 63. | Kmart Stores of Illinois LLC | IL Secretary of State | UCC-1 | HomeCare Labs, Inc. | Consigned inventory | 1/23/07 | 11741703 | 1/23/12 11/02/16 | 009157194 009444897 |
| 64. | Kmart Stores of Illinois LLC | IL Secretary of State | UCC-1 | Jacmel Jewelry Inc. | Consigned inventory | 10/27/14 | 19751392 | N/A | N/A |

WEIL:\96826275\11\73217.0003

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 304 of 1120

| | Debtor | Place of Filing | Type of filing found | Secured Party | Collateral | Original File Date | Original File Number | Amendment /Continuation File Date | Amendment/Continuation File Number |
|---|---|---|---|---|---|---|---|---|---|
| 65. | Kmart Stores of Texas LLC | TX Secretary of State | UCC-1 | Bio-Lab, Inc. | Consigned inventory | 1/29/07 | 07-0003108756 | 1/23/12 11/02/16 | 12-00023888 16-00358725 |
| 66. | Kmart Stores of Texas LLC | TX Secretary of State | UCC-1 | HomeCare Labs, Inc. | Consigned inventory | 1/23/07 | 07-0002446699 | 1/23/12 11/02/16 | 12-00023886 16-00358729 |
| 67. | Kmart Stores of Texas LLC | TX Secretary of State | UCC-1 | Jacmel Jewelry Inc. | Consigned inventory | 10/27/14 | 14-0034360314 | N/A | N/A |
| 68. | Sears Brand Management Corporation | DE Secretary of State | UCC-1 | Early Morning LLC | Consigned inventory | 1/18/18 | 20180425047 | N/A | N/A |
| 69. | Sears Brand Management Corporation | DE Secretary of State | UCC-1 | Hilco Wholesale Solutions, LLC | Consigned inventory | 3/18/16 | 2016165229 | N/A | N/A |
| 70. | Sears Brand Management Corporation | DE Secretary of State | UCC-1 | LM Farms, LLC | Consigned inventory | 1/18/18 | 20180424727 | N/A | N/A |
| 71. | Sears Brand Management Corporation | DE Secretary of State | UCC-1 | Riverstone USA LLC | Consigned inventory | 10/28/16 | 20166659104 | N/A | N/A |

WEIL\96826276\11\73217.0003

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 305 of 1120

| | Debtor | Place of Filing | Type of filing found | Secured Party | Collateral | Original File Date | Original File Number | Amendment /Continuation File Date | Amendment/Continuation File Number |
|---|---|---|---|---|---|---|---|---|---|
| 72. | Sears Brand Management Corporation | DE Secretary of State | UCC-1 | Shaghal Ltd. | Consigned inventory | 10/1/15 | 2015442397 | N/A | N/A |
| 73. | Sears Brand Management Corporation/Sears Holdings Management Corporation/Sears Holdings Corporation | DE Secretary of State | UCC-1 | Tiger Capital Group, LLC | Consigned inventory | 2/8/18 | 20180915161 | N/A | N/A |
| 74. | Sears Holdings Corporation | DE Secretary of State | UCC-1 | Aneri Jewels, L.L.C | Consigned inventory | 12/29/15 | 2015631038 | N/A | N/A |
| 75. | Sears Holdings Corporation | DE Secretary of State | UCC-1 | Bracketron, Inc. | Consigned inventory | 3/22/16 | 20161715067 | N/A | N/A |
| 76. | Sears Holdings Corporation | DE Secretary of State | UCC-1 | Mantua Manufacturing Co. | Consigned inventory | 10/2/18 | 20186813873 | N/A | N/A |
| 77. | Sears Holdings Corporation | DE Secretary of State | UCC-1 | Riverstone USA LLC | Consigned inventory | 10/28/16 | 20166658916 | N/A | N/A |

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 306 of 1120

| | Debtor | Place of Filing | Type of filing found | Secured Party | Collateral | Original File Date | Original File Number | Amendment /Continuation File Date | Amendment/Continuation File Number |
|---|---|---|---|---|---|---|---|---|---|
| 78. | Sears Holdings Corporation | DE Secretary of State | UCC-1 | Rosy Blue, Inc. | Consigned inventory | 9/10/13 | 20133515278 | 3/13/18 | 20181727904 |
| 79. | Sears Holdings Corporation | DE Secretary of State | UCC-1 | Shaghal Ltd. | Consigned inventory | 10/1/15 | 20154442603 | N/A | N/A |
| 80. | Sears Holdings Corporation | DE Secretary of State | UCC-1 | Shanti Corporation D/B/A Vijay Gold Designs | Consigned inventory | 9/17/13 | 20133616209 | 8/6/18 | 20185411505 |
| 81. | Sears Holdings Corporation | DE Secretary of State | UCC-1 | Soft Air USA Inc. | Consigned inventory | 5/19/17 | 20173319099 | N/A | N/A |
| 82. | Sears Holdings Corporation | DE Secretary of State | UCC-1 | Suberi Brothers, LLC | Consigned inventory | 3/12/13 | 20130947524 | 3/12/18 | 20181692199 |
| 83. | Sears Holdings Corporation | DE Secretary of State | UCC-1 | Vijaydimon (USA) Inc. | Consigned inventory | 9/12/13 | 20133564060 | 8/6/18 | 20185411547 |
| 84. | Sears Holdings Corporation | IL Secretary of State | UCC-1 | MaxMark, Inc. | Consigned inventory | 3/03/17 | 022163000 | N/A | N/A |

WEIL:\96826275\11\73217.0003

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 307 of 1120

| | Debtor | Place of Filing | Type of filing found | Secured Party | Collateral | Original File Date | Original File Number | Amendment /Continuation File Date | Amendment/Continuation File Number |
|---|---|---|---|---|---|---|---|---|---|
| 85. | Sears Holdings Corporation/Kmart Holding Corporation | DE Secretary of State | UCC-1 | RGGD, Inc. d/b/a Crystal Art Gallery | Consigned inventory | 3/16/12 | 2012026733 | 3/06/17 | 20171481271 |
| 86. | Sears Holdings Corporation/Kmart Holding Corporation | IL Secretary of State | UCC-1 | RGGD, Inc, d/b/a Crystal Art Gallery | Consigned inventory | 3/26/14 | 01713697 | 3/8/17 | 009467438 |
| 87. | Sears Holdings Corporation/Sears Holdings Management Corporation | DE Secretary of State | UCC-1 | Aneri Jewels, L.L.C. | Consigned inventory | 9/17/14 | 20143714227 | 12/10/15 | 20155946255 |
| 88. | Sears Holdings Corporation/Sears Holdings Management Corporation | DE Secretary of State | UCC-1 | Combine International, Inc.(d/b/a I.L. MFG Co., Shan Corporation and/or NSM Corp.) | Consigned inventory | 8/28/08 | 2008293810 | 5/19/09 6/26/13 4/10/18 | 20091581823 20132463777 2018243505l |
| 89. | Sears Holdings Corporation/S | DE Secretary of State | UCC-1 | Sun Diamond, Inc. d/b/a Sun Source | Consigned inventory | 8/13/14 | 20143244829 | N/A | N/A |

WEIL:\96826275\11\73217.0003

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 308 of 1120

| | Debtor | Place of Filing | Type of filing found | Secured Party | Collateral | Original File Date | Original File Number | Amendment /Continuation File Date | Amendment/Continuation File Number |
|---|---|---|---|---|---|---|---|---|---|
| | ears Holdings Management Corporation | | | | | | | | |
| 90. | Sears Holdings Corporation/Sears Holdings Management Corporation | DE Secretary of State | UCC-1 | Suberi Brothers, LLC | Consigned inventory | 3/12/18 | 20181687009 | N/A | N/A |
| 91. | Sears Holdings Corporation/Sears Holdings Management Corporation/Sears Holdings Inc. | DE Secretary of State | UCC-1 | The Luxe Group Inc. | Consigned inventory | 12/05/16 | 20167514852 | N/A | N/A |
| 92. | Sears Holdings Management Corporation | DE Secretary of State | UCC-1 | Abrim Enterprises, Inc. | Consigned inventory | 9/23/16 | 20165840119 | N/A | N/A |
| 93. | Sears Holdings | DE Secretary of State | UCC-1 | Aneri Jewels, L.L.C | Consigned inventory | 12/29/15 | 20156311178 | N/A | N/A |

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 309 of 1120

| Debtor | Place of Filing | Type of filing found | Secured Party | Collateral | Original File Date | Original File Number | Amendment/Continuation File Date | Amendment/Continuation File Number |
|---|---|---|---|---|---|---|---|---|
| Management Corporation | | | | | | | | |
| 94. Sears Holdings Management Corporation | DE Secretary of State | UCC-1 | Canon Financial Services, Inc. | Leased or financed equipment | 12/19/14 | 20145172150 | N/A | N/A |
| 95. Sears Holdings Management Corporation | DE Secretary of State | UCC-1 | Canon Financial Services, Inc. | Leased or financed equipment | 12/29/15 | 2015630884 | N/A | N/A |
| 96. Sears Holdings Management Corporation | DE Secretary of State | UCC-1 | Cross Country Home Services, Inc., on behalf of itself and as Agent | Receivables under THM program documents (with HomeSure vendors) | 11/1/17 | 20177234570 | N/A | N/A |
| 97. Sears Holdings Management Corporation | DE Secretary of State | UCC-1 | Hewlett-Packard Financial Services Company | Leased or financed equipment | 8/4/14 | 20143096716 | N/A | N/A |
| 98. Sears Holdings Management Corporation | DE Secretary of State | UCC-1 | Jacmel Jewelry Inc. | Consigned inventory | 10/27/14 | 2014299681 | N/A | N/A |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM   2020L012403

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 310 of 1120

| | Debtor | Place of Filing | Type of filing found | Secured Party | Collateral | Original File Date | Original File Number | Amendment /Continuation File Date | Amendment/Continuation File Number |
|---|---|---|---|---|---|---|---|---|---|
| 99. | Sears Holdings Management Corporation | DE Secretary of State | UCC-1 | Kama-Schachter Jewelry, Inc. | Consigned inventory | 9/19/16 | 20165726466 | N/A | N/A |
| 100. | Sears Holdings Management Corporation | DE Secretary of State | UCC-1 | Mantua Manufacturing Co. | Consigned inventory | 10/2/18 | 20186813626 | N/A | N/A |
| 101. | Sears Holdings Management Corporation | DE Secretary of State | UCC-1 | Plymouth Packaging, Inc. dba Box on Demand | Specific machinery | 10/13/16 | 2016629564 4 | N/A | N/A |
| 102. | Sears Holdings Management Corporation | DE Secretary of State | UCC-1 | Three Point Capital, LLC | Tax credit from State of IL | 10/5/16 | 20166110884 | N/A | N/A |
| 103. | Sears Holdings Management Corporation | DE Secretary of State | UCC-1 | Twentieth Century Fox Home Entertainment LLC | Consigned inventory | 4/27/17 | 20172761630 | N/A | N/A |
| 104. | Sears Holdings Management Corporation | IL Secretary of State | UCC-1 | Abrim Enterprises, Inc. | Consigned inventory | 9/22/16 | 21733121 | N/A | N/A |

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 311 of 1120

| | Debtor | Place of Filing | Type of filing found | Secured Party | Collateral | Original File Date | Original File Number | Amendment /Continuation File Date | Amendment/Continuation File Number |
|---|---|---|---|---|---|---|---|---|---|
| 105. | Sears Holdings Management Corporation | IL Secretary of State | UCC-1 | Allure Gems LLC | Consigned inventory | 10/21/16 | 21810061 | N/A | N/A |
| 106. | Sears Holdings Management Corporation | IL Secretary of State | UCC-1 | MaxMark Inc. | Consigned inventory | 10/17/13 | 18685485 | N/A | N/A |
| 107. | Sears Holdings Management Corporation/Sears Holdings Corporation | DE Secretary of State | UCC-1 | Suberi Brothers, LLC | Consigned inventory | 3/12/13 | 20130947813 | 3/12/18 5  3/13/18 | 2018 1692199  2018 1733290 |
| 108. | Sears Home & Business Franchises, Inc. | DE Secretary of State | UCC-1 | U.S. Bank Equipment Finance, a division of U.S. Bank National Association | Specific equipment | 12-8-15 | 20155868921 | N/A | N/A |
| 109. | Sears Home & Business Franchises, Inc. | DE Secretary of State | UCC-1 | VAR Resources, LLC | Specific equipment | 3-22-17 | 20171866307 | N/A | N/A |

WEIL:\9682\6275\11\73217.0003

| | Debtor | Place of Filing | Type of filing found | Secured Party | Collateral | Original File Date | Original File Number | Amendment /Continuation File Date | Amendment/Continuation File Number |
|---|---|---|---|---|---|---|---|---|---|
| 110. | Sears Home Improvement Products, Inc. | PA Secretary of Commonwealth | UCC-1 | Toyota Industries Commercial Finance, Inc. | Specific machinery | 1/20/17 | 2017012000854 | N/A | N/A |
| 111. | Sears Operations LLC | DE Secretary of State | UCC-1 | American Greetings Corporation | PMSI inventory | 7/1/2015 | 20152834777 | 8/22/16 | 2016 5092653 |
| 112. | Sears Operations LLC | DE Secretary of State | UCC-1 | RX Gear, LLC | Consigned inventory | 7/31/15 | 20153333522 | N/A | N/A |
| 113. | Sears Operations LLC | DE Secretary of State | UCC-1 | Seiko Corporation of America | Consigned inventory | 8/26/15 | 20153752911 | N/A | N/A |
| 114. | Sears Operations LLC | DE Secretary of State | UCC-1 | Work 'N Gear, LLC | Consigned inventory | 7/31/15 | 20153333423 | N/A | N/A |
| 115. | Sears Roebuck and Co. | NY Department of State | UCC-1 | Seiko Corporation of America | Consigned inventory | 9-20-13 | 201309208382954 | 8-10-18 | 201809108411994 |
| 116. | Sears, Roebuck and Co. | IL Secretary of State | UCC-1 | Abrim Enterprises, Inc. | Consigned inventory | 9/22/16 | 021732508 | N/A | N/A |

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 313 of 1120

| | Debtor | Place of Filing | Type of filing found | Secured Party | Collateral | Original File Date | Original File Number | Amendment/Continuation File Date | Amendment/Continuation File Number |
|---|---|---|---|---|---|---|---|---|---|
| 117. | Sears, Roebuck and Co. | IL Secretary of State | UCC-1 | Crown Credit Company | Equipment | 10/6/14 | 019695123 | N/A | N/A |
| 118. | Sears, Roebuck and Co. | IL Secretary of State | UCC-1 | Dell Financial Services, L.P. | Computer equipment | 6/23/00 | 004231060 | 5/26/05 4/30/10 11/18/10 5/29/15 | 008764570 009042080 009078848 009359027 |
| 119. | Sears, Roebuck and Co. | IL Secretary of State | UCC-1 | Richline Group, Inc. | Consigned inventory | 10/23/14 | 019744515 | N/A | N/A |
| 120. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Abrim Enterprises, Inc. | Consigned inventory | 9/22/16 | 201609228377179 | N/A | N/A |
| 121. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | American Greetings Corporation | PMSI inventory | 7/1/15 | 201507015725202 | 8/22/16 | 2016082260017 40 |
| 122. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Aneri Jewels, Inc. | Consigned inventory | 12/29/15 | 201512296458142 | N/A | N/A |
| 123. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Lucent Jewelers, Inc. | Consigned inventory | 9/11/14 | 201409118353324 | 8/10/15 | 2015081083060 68 |

WEIL:\96826275\11\73217.0003

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 314 of 1120

| | Debtor | Place of Filing | Type of filing found | Secured Party | Collateral | Original File Date | Original File Number | Amendment /Continuation File Date | Amendment/Continuation File Number |
|---|---|---|---|---|---|---|---|---|---|
| 124. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Beauty Gem, Inc. | Consigned inventory | 8/10/11 | 201108100433869 | 4/15/16 10/4/16 | 20160415017693 0 20161004047734 4 |
| 125. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Bio-Lab, Inc. | Consigned inventory | 1/23/07 | 200701230055253 | 1/23/12 12/2/16 | 20120123508723 2 20161202057156 0 |
| 126. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Combine International, Inc. (d/b/a I.L. Mft. Co, Shan Corporation and/or NSM Corp. | Consigned inventory | 8/28/08 | 200808280601486 | 6/27/13 4/10/18 | 20130627035956 3 20180410016628 6 |
| 127. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Cross Country Home Services, Inc., on behalf of itself and as agent | Receivables under THM program documents (with HomeSure vendors) | 11/1/17 | 201711010534407 | N/A | N/A |
| 128. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Early Morning LLC | Consigned inventory | 1/19/18 | 201801190029719 | N/A | N/A |
| 129. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Envisions LLC | Consigned inventory | 3/31/17 | 201703318132790 | N/A | N/A |

WEIL:\96826275\11\73217.0003

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 315 of 1120

| | Debtor | Place of Filing | Type of filing found | Secured Party | Collateral | Original File Date | Original File Number | Amendment /Continuation File Date | Amendment/Continuation File Number |
|---|---|---|---|---|---|---|---|---|---|
| 130. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | ET Enterprises Distributors, Inc. | Consigned apparel and visor merchandise, total $54,846.00 | 8/11/16 | 201608110386101 | N/A | N/A |
| 131. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Gold LLC | Consigned inventory | 6/20/13 | 201306205672669 | 5/11/18 | 20180511558040 9 |
| 132. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Hilco Wholesale Solutions, LLC | Consigned inventory | 3/18/16 | 20160188106670 | N/A | N/A |
| 133. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | HomeCare Labs, Inc. | Consigned inventory | 1/23/07 | 200701230055241 | 1/23/12 12/2/16 | 2012012350872 4 2016120205715 2 |
| 134. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Jacmel Jewelry Inc. | Consigned inventory | 10/27/14 | 201410270600834 | N/A | N/A |
| 135. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Kama-Schachter Jewelry, Inc. | Consigned inventory | 9/19/16 | 201609196110859 | N/A | N/A |
| 136. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Lands' End Inc. | Consigned inventory | 1/27/17 | 201701270037999 | N/A | N/A |

WEIL:\9682627511\7\73217.0003

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 316 of 1120

| | Debtor | Place of Filing | Type of filing found | Secured Party | Collateral | Original File Date | Original File Number | Amendment /Continuation File Date | Amendment/Continuation File Number |
|---|---|---|---|---|---|---|---|---|---|
| 137. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | LM Farms, LLC | Consigned inventory | 1/19/18 | 201801190029721 | N/A | N/A |
| 138. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Mantua Manufacturing Co. | Consigned inventory | 10/2/18 | 201810028451499 | N/A | N/A |
| 139. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Maxcolor LLC | Consigned inventory | 9/6/17 | 201709068382318 | N/A | N/A |
| 140. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | NMHG Financial Services, Inc. | Leased equipment | 1/14/10 | 201001145039567 | 8/19/14 | 201408195885473 |
| 141. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | PAJ, Inc. | Consigned inventory | 10/23/13 | 201310238426034 | 5/20/14 7/28/14 9/25/14 12/12/14 1/20/15 2/11/15 2/25/15 4/1/15 5/26/15 | 201405208192056 201407288290826 201409258374391 201412128486689 201501208021186 201502118051411 201502258067291 |

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 317 of 1120

| # | Debtor | Place of Filing | Type of filing found | Secured Party | Collateral | Original File Date | Original File Number | Amendment/Continuation File Date | Amendment/Continuation File Number |
|---|--------|-----------------|----------------------|---------------|------------|--------------------|-----------------------|----------------------------------|--------------------------------------|
| 142. | Sears, Roebuck and Co. | | | | | | | | 201504018114487 201505268197264 |
| 144. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Riverstone USA LLC | Consigned inventory | 11/10/16 | 201611100538286 | N/A | N/A |
| 146. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Rosy Blue, Inc. | Consigned inventory | 8/23/13 | 201308230481633 | 2/28/18 | 201802280096569 |
| 147. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | S&J Diamond Corp. Disons Gems, Inc. | Consigned inventory | 8/5/15 | 201508050398618 | N/A | N/A |
| 148. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Sakar International, Inc. | Consigned inventory | 9/30/14 | 201409308380725 | N/A | N/A |
| 149. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Shaghal Ltd. | Consigned inventory | 10/1/15 | 201510018378394 | N/A | N/A |
| | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Shanti Corporation d/b/a Vijay Gold Designs | Consigned inventory | 9/17/13 | 201309170529052 | 8/7/18 | 201808070371826 |

WEIL:\96826275\11\73217.0003

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 318 of 1120

| | Debtor | Place of Filing | Type of filing found | Secured Party | Collateral | Original File Date | Original File Number | Amendment /Continuation File Date | Amendment/Continuation File Number |
|---|---|---|---|---|---|---|---|---|---|
| 150. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Suberi Brothers, LLC | Consigned inventory | 3/12/13 | 201303125262 415 | 3/12/18 | 2018031252954 76 |
| 151. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Aneri Jewels, L.L.C. | Consigned inventory | 9/17/14 | 201409175988 722 | 12/10/15 | 2015121063887 02 |
| 152. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Sun Diamond, Inc. | Consigned inventory | 10/08/09 | 200910085908 309 | 8/13/14 | 2014081358613 44 |
| 153. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Thompson Tractor Co., Inc. | Caterpillar tractor | 3/5/15 | 201503058082 566 | N/A | N/A |
| 154. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Tiger Capital Group, LLC | Consigned inventory | 2/8/18 | 201802080062 302 | N/A | N/A |
| 155. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Twentieth Century Fox Home Entertainment LLC | Consigned inventory | 4/27/17 | 201704270202 869 | N/A | N/A |
| 156. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Vijaydimon (USA) Inc. | Consigned inventory | 6/22/15 | 201506220309 221 | N/A | N/A |

WEIL:\96826275\11\73217.0003

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 319 of 1120

| | Debtor | Place of Filing | Type of filing found | Secured Party | Collateral | Original File Date | Original File Number | Amendment /Continuation File Date | Amendment/Continuation File Number |
|---|---|---|---|---|---|---|---|---|---|
| 157. | Sears, Roebuck and Co. | NY Department of State | UCC-1 | Vijaydimon (USA) Inc. | Consigned inventory | 9/13/13 | 201309130523 646 | 8/7/18 | 201808070371814 |

WEIL:\9682627511\17\73217.0003

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**Schedule 1.1(k)**

**Specified Receivables**

1.  See Annex 11, attached.

FILED DATE: 5/19/2021 1:27 PM   2020L012403

*($ in millions)*

## Assumed Vendor Receivables

| Account Name | Amount |
|---|---|
| A/P Vendor Reclass Post | $52.6 |
| Return Merchandise Receivable | 59.9 |
| A/R Customer Receivables | 41.5 |
| ████████████ | |
| Wholesale A/R Receivables | 22.8 |
| A/R Ncc-Oem | 10.3 |
| 09987 Sears One Card Clearance | 6.3 |
| 08500 Finance Related Exp | 6.8 |
| ███████████████ | ████ |
| A/R Wex Commercial Credit | 3.4 |
| A/R - Other Companies | 3.5 |
| A/R New Account Bounty | 2.7 |
| A/R Credit Sales Revenue | 2.5 |
| A/R Ncc-Ae | 2.8 |
| Parts Direct | 2.3 |
| A/R - Merchandise Allowance | 2.1 |
| A/R Vendor Allowance - Import | 1.7 |
| A/R - Sub-Tenants | 1.9 |
| A/R - Coupons | 1.0 |
| A/R - Store Receivable | 1.3 |
| █████████████ | ████ |
| A/R 3Rd Party Retail Installat | 0.6 |
| Accrued Over/Shortages | 0.5 |
| A/R - Freight Claims | 0.5 |
| ███████████ | ████ |
| A/R - Wic | 0.2 |
| A/R - Loans And Advances | 0.1 |
| Service Contracts Pa | 0.1 |
| A/R - Bad Checks | 0.1 |
| All Other Recievables | 30.0 |
| **Total Available Receivables[1]** | **$255.2** |

1. Net of Allowance for Bad Debt

18-23538-rdd    Doc 2507    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 522 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

## Schedule 1.1(l)

**Warranty Receivables**

1.  See Annex 12, attached.

FILED DATE: 5/19/2021 1:27 PM   2020L012403

*($ in millions)*

Assumed CCHS Receivable

**Total**

18-23538-shl   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:31   Exhibit A

**Schedule 1.1(m)**

**GOB Leases**

| Store# | City | State | Fee Type |
|--------|------|-------|----------|
| 9711 | Russellville | AR | Lease |
| 1169 | Chandler | AZ | Lease |
| 1078 | Mesa/East | AZ | Lease |
| 1768 | Paradise Vly | AZ | Lease |
| 1708 | Phoenix-Desert Sky | AZ | Lease |
| 2047 | Sierra Vista | AZ | Lease |
| 4996 | Tucson | AZ | GL |
| 4996 | Tucson | AZ | GL |
| 2078 | Yuma | AZ | Lease |
| 9608 | Auburn | CA | Lease |
| 1318 | Bakersfield | CA | Lease |
| 3834 | Burbank | CA | Lease |
| 3834 | Burbank | CA | Lease |
| 1518 | Cerritos | CA | Lease |
| 3945 | Delano | CA | Lease |
| 1988 | El Centro | CA | Lease |
| 1408 | Florin | CA | Lease |
| 2298 | Merced | CA | Lease |
| 1618 | Modesto | CA | Lease |
| 2138 | Santa Barbara | CA | Lease |
| 1658 | Santa Rosa | CA | Lease |
| 3174 | Stockton | CA | Lease |
| 3828 | Temecula | CA | GL |
| 1221 | Chapel Hills | CO | Lease |
| 1221 | Chapel Hills | CO | Lease |
| 1111 | Colorado Springs | CO | GL |
| 1111 | Colorado Springs | CO | GL |
| 1071 | Lakewood | CO | Lease |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| 3216 | Vernon | CT | Lease |
| 1193 | Waterford | CT | Lease |
| 1755 | Boynton Beach | FL | Lease |
| 2565 | Bradenton | FL | Lease |
| 4893 | Ellenton | FL | Lease |
| 4893 | Ellenton | FL | Lease |
| 2315 | Jensen Bch(Stuart) | FL | Lease |
| 1955 | Lakeland | FL | Lease |
| 2245 | Melbourne | FL | Lease |
| 1006 | Ocala | FL | Lease |
| 2145 | Port Charlotte | FL | Lease |
| 2145 | Port Charlotte | FL | Lease |
| 1585 | Tallahassee | FL | GL |
| 1745 | Tampa/Westshore | FL | Lease |
| 2505 | Covington | GA | Lease |
| 2505 | Covington | GA | Lease |
| 2422 | Sioux City | IA | Lease |
| 9309 | Webster City | IA | Lease |
| 1229 | Boise | ID | Lease |
| 2278 | Idaho Falls | ID | Lease |
| 3371 | Chicago | IL | Lease |
| 1640 | Elk Grove Vlg | IL | GL |
| 1640 | Elk Grove Vlg | IL | GL |
| 1740 | Joliet | IL | Lease |
| 4297 | Mokena | IL | Lease |
| 2990 | Rockford-Cherryvale | IL | Lease |
| 2990 | Rockford-Cherryvale | IL | Lease |
| 9030 | Peru | IN | Lease |
| 9030 | Peru | IN | Lease |
| 1161 | Wichita-Town East | KS | GL |
| 1226 | Metairie | LA | Lease |

FILED DATE: 5/19/2021 1:27 PM     2020L012403

| 1226 | Metairie | LA | Lease |
|------|----------|----|----|
| 4810 | Metairie | LA | Lease |
| 4810 | Metairie | LA | Lease |
| 1403 | Natick | MA | Lease |
| 3256 | Baltimore | MD | Lease |
| 1424 | Bethesda | MD | Lease |
| 2034 | Bowie | MD | Lease |
| 1844 | Columbia | MD | Lease |
| 1773 | Prince Frederick | MD | Lease |
| 1773 | Prince Frederick | MD | Lease |
| 9521 | Madawaska | ME | Lease |
| 3380 | Waterville | ME | Lease |
| 1390 | Ann Arbor | MI | Lease |
| 1250 | Lincoln Park | MI | Lease |
| 1722 | Bloomington | MN | GL |
| 1112 | Minnetonka | MN | Lease |
| 4351 | Rochester | MN | Lease |
| 4351 | Rochester | MN | Lease |
| 1052 | St Paul | MN | Lease |
| 9353 | Crystal City | MO | Lease |
| 9353 | Crystal City | MO | Lease |
| 4304 | Florissant | MO | Lease |
| 9520 | Gulfport | MS | Lease |
| 9520 | Gulfport | MS | Lease |
| 2106 | Tupelo | MS | Lease |
| 3886 | Asheville | NC | Lease |
| 3886 | Asheville | NC | Lease |
| 1045 | Durham-Northgate | NC | Lease |
| 9619 | Morehead City | NC | Lease |
| 9619 | Morehead City | NC | Lease |
| 9549 | Morganton | NC | Lease |

18-23538-shl   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 555 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| 9549 | Morganton | NC | Lease |
|------|-----------|----|-------|
| 1375 | Winston Salem | NC | Lease |
| 4022 | Grand Forks | ND | Lease |
| 4022 | Grand Forks | ND | Lease |
| 9319 | Alliance | NE | Lease |
| 9319 | Alliance | NE | Lease |
| 2421 | Grand Island | NE | Lease |
| 1041 | Omaha | NE | GL |
| 2663 | Portsmouth | NH | Lease |
| 1464 | Deptford | NJ | Lease |
| 1574 | Middletown | NJ | Lease |
| 3071 | Toms River | NJ | Lease |
| 3071 | Toms River | NJ | Lease |
| 1287 | Coronado | NM | Lease |
| 1828 | Las Vegas | NV | GL |
| 1328 | Las Vegas(Blvd) | NV | Lease |
| 1328 | Las Vegas(Blvd) | NV | Lease |
| 9274 | Greenwich | NY | Lease |
| 9274 | Greenwich | NY | Lease |
| 7065 | Horseheads | NY | Lease |
| 9381 | Huntington | NY | Lease |
| 1414 | Nanuet | NY | Lease |
| 1894 | Rochester | NY | GL |
| 2173 | Saratoga | NY | Lease |
| 2683 | Watertown | NY | Lease |
| 7677 | Wellsville | NY | Lease |
| 1944 | Yorktown Hts | NY | Lease |
| 3013 | Cleveland | OH | Lease |
| 3013 | Cleveland | OH | Lease |
| 9096 | Fostoria | OH | Lease |
| 9096 | Fostoria | OH | Lease |

18-23538-rdd  Doc 2507  Filed 02/08/19  Entered 02/08/19 16:44:32  Exhibit A
Pg 556 of 1450

| 2001 | Piqua | OH | GL |
|------|-------|----|----|
| 1210 | Polaris | OH | Lease |
| 2311 | Norman | OK | Lease |
| 1151 | Tulsa Woodland Hls | OK | Lease |
| 3839 | Corvallis | OR | Lease |
| 3839 | Corvallis | OR | Lease |
| 2179 | Medford | OR | Lease |
| 1079 | Washington Sq | OR | Lease |
| 2494 | Altoona | PA | Lease |
| 2494 | Altoona | PA | Lease |
| 7746 | Carlisle | PA | Lease |
| 4113 | Erie | PA | Lease |
| 4113 | Erie | PA | Lease |
| 1714 | Greensburg | PA | GL |
| 1644 | Lancaster | PA | GL |
| 4064 | North Versailles | PA | Lease |
| 3527 | Philadelphia | PA | Lease |
| 1484 | Reading | PA | Lease |
| 2074 | Stroudsburg | PA | Lease |
| 4858 | Caguas | PR | Lease |
| 3896 | San German | PR | Lease |
| 4490 | San Juan | PR | Lease |
| 2807 | Rock Hill | SC | Lease |
| 7043 | Rock Hill | SC | Lease |
| 7062 | Sumter | SC | Lease |
| 7062 | Sumter | SC | Lease |
| 4170 | Rapid City | SD | Lease |
| 4170 | Rapid City | SD | Lease |
| 1146 | Cordova | TN | Lease |
| 1386 | Goodlettsville | TN | GL |
| 2036 | Jackson | TN | Lease |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 2036 | Jackson | TN | Lease |
|------|---------|----|-------|
| 2156 | Maryville | TN | Lease |
| 2226 | Murfreesboro | TN | Lease |
| 9735 | Sevierville | TN | Lease |
| 9735 | Sevierville | TN | Lease |
| 1387 | Amarillo | TX | Lease |
| 1387 | Amarillo | TX | Lease |
| 1357 | Austin/Barton Creek | TX | Lease |
| 1080 | Frisco | TX | Lease |
| 1277 | Ingram | TX | Lease |
| 2147 | Irving | TX | Lease |
| 2487 | Killeen | TX | Lease |
| 2487 | Killeen | TX | Lease |
| 2557 | Longview | TX | Lease |
| 1247 | Lubbock | TX | Lease |
| 2637 | Port Arthur | TX | Lease |
| 1207 | Richardson | TX | Lease |
| 1227 | Southwest Ctr | TX | Lease |
| 1367 | Waco | TX | Lease |
| 1367 | Waco | TX | Lease |
| 2435 | Charlottesville | VA | Lease |
| 2435 | Charlottesville | VA | Lease |
| 1575 | Hampton | VA | Lease |
| 2329 | Kennewick(Pasco) | WA | Lease |
| 2329 | Richland | WA | Lease |
| 1130 | Janesville | WI | GL |
| 3692 | Oconomowoc | WI | Lease |
| 3692 | Oconomowoc | WI | Lease |
| 4188 | Charleston | WV | Lease |
| 4736 | Casper | WY | Lease |

**Schedule 1.1(n)**

**GOB Owned Stores**

| Store # | City | State |
|---|---|---|
| 1075 | Daytona Beach | FL |
| 2885 | Port Richey | FL |
| 1475 | Durham | NC |
| 2191 | Lincoln | NE |
| 1216 | Memphis/Southland | TN |
| 2092 | Appleton | WI |
| 4395 | Cudahy | WI |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Schedule 1.1(o)**

**Operating Leases**

| Store# | City | State | Fee Type |
|--------|------|-------|----------|
| 2027 | Wasilla | AK | GL |
| 8706 | Birmingham | AL | Lease |
| 2306 | Gadsden | AL | Lease |
| 49003 | Mobile | AL | Lease |
| 2796 | Tuscaloosa | AL | GL |
| 2126 | Hot Springs | AR | Lease |
| 8941 | Little Rock | AR | Lease |
| 1206 | North Little Rock | AR | Lease |
| 1798 | Glendale | AZ | Lease |
| 30938 | Glendale | AZ | Lease |
| 3707 | Lake Havasu City | AZ | Lease |
| 7088 | Mesa | AZ | Lease |
| 8778 | Phoenix | AZ | Lease |
| 2218 | Prescott | AZ | Lease |
| 5865 | Scottsdale | AZ | Lease |
| 61901 | Scottsdale | AZ | GL |
| 49028 | Tempe | AZ | Lease |
| 5880 | Tempe | AZ | Lease |
| 1728 | Tucson | AZ | GL |
| 49011 | Tucson | AZ | Lease |
| 8937 | Tucson | AZ | Lease |
| 5866 | Tucson (Marana) | AZ | Lease |
| 4762 | Antioch | CA | Lease |
| 7619 | Atascadero | CA | Lease |
| 1018 | Baldwin Hills | CA | Lease |
| 8901 | Benicia | CA | Lease |
| 7653 | Big Bear Lake | CA | Lease |
| 7756 | Bishop | CA | Lease |

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| 1008 | Boyle | CA | Lease |
|------|-------|-----|-------|
| 1638 | Brea | CA | Lease |
| 1268 | Buena Park | CA | Lease |
| 1838 | Burbank | CA | GL |
| 7165 | Camarillo | CA | Lease |
| 1678 | Carlsbad | CA | GL |
| 3086 | Chico | CA | Lease |
| 1358 | Chula Vista | CA | Lease |
| 1098 | Clovis | CA | Lease |
| 1368 | Concord | CA | GL |
| 7098 | Concord | CA | Lease |
| 5798 | Concord-Mcphails | CA | Lease |
| 1388 | Costa Mesa | CA | Lease |
| 4047 | Costa Mesa | CA | Lease |
| 5382 | Costa Mesa | CA | Lease |
| 1309 | Downey | CA | GL |
| 2728 | Downey | CA | GL |
| 1758 | Escondido | CA | GL |
| 2628 | Eureka | CA | Lease |
| 3725 | Freedom | CA | GL |
| 1208 | Fresno | CA | Lease |
| 8366 | Fresno | CA | Lease |
| 8913 | Fresno | CA | Lease |
| 1088 | Glendale | CA | GL |
| 9746 | Grass Valley | CA | Lease |
| 2656 | Hanford | CA | Lease |
| 1248 | Hayward | CA | Lease |
| 4457 | Hayward | CA | GL |
| 5689 | Hayward | CA | Lease |
| 2028 | Hemet | CA | GL |
| 3748 | Hollister | CA | GL |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 4819 | Lakeport | CA | Lease |
|------|----------|----|-------|
| 8258 | Lakewood | CA | Lease |
| 3982 | Lemoore | CA | Lease |
| 9328 | Long Beach | CA | GL |
| 8253 | Mcclellan | CA | Lease |
| 7390 | Mckinleyville | CA | Lease |
| 8868 | Milpitas | CA | Lease |
| 8780 | Mira Loma | CA | Lease |
| 8928 | Mira Loma(Jurupa Vl) | CA | Lease |
| 3345 | Modesto | CA | Lease |
| 1748 | Montclair | CA | Lease |
| 1998 | Montebello | CA | Lease |
| 1868 | Moreno Vly | CA | Lease |
| 1168 | No Hollywood | CA | Lease |
| 4421 | North Hollywood | CA | Lease |
| 1508 | Northridge | CA | Lease |
| 3842 | Oakdale | CA | Lease |
| 3483 | Ontario | CA | Lease |
| 8287 | Ontario | CA | Lease |
| 8729 | Ontario | CA | Lease |
| 1378 | Orange | CA | GL |
| 1968 | Palm Desert | CA | Lease |
| 2798 | Palm Desert | CA | GL |
| 9551 | Paradise | CA | Lease |
| 1048 | Pasadena | CA | GL |
| 3501 | Petaluma | CA | Lease |
| 3531 | Pinole | CA | Lease |
| 7471 | Placerville | CA | Lease |
| 1019 | Pleasanton | CA | Lease |
| 3678 | Ramona | CA | Lease |
| 5668 | Rancho Cordova | CA | Lease |

18-23538-rdd  Doc 9507-1  Filed 02/08/19  Entered 02/08/19 16:44:32  Exhibit A

FILED DATE: 5/19/2021 1:27 PM  2020L012403

| 1818 | Rancho Cucamonga | CA | GL |
|---|---|---|---|
| 4349 | Redwood City | CA | Lease |
| 1298 | Riverside | CA | Lease |
| 4706 | Riverside | CA | Lease |
| 7175 | Riverside | CA | Lease |
| 5784 | Rohnert Park | CA | Lease |
| 8768 | Sacramento | CA | Lease |
| 1688 | Salinas | CA | Lease |
| 3412 | Salinas | CA | Lease |
| 1398 | San Bernardino | CA | Lease |
| 1478 | San Bruno | CA | Lease |
| 62529 | San Diego | CA | Lease |
| 8748 | San Diego | CA | Lease |
| 31882 | San Diego | CA | Lease |
| 5000 | San Francisco | CA | Lease |
| 8398 | San Jose | CA | Lease |
| 1488 | San Jose-Eastridge | CA | Lease |
| 30969 | San Leandro | CA | Lease |
| 5787 | San Rafael - Mcphails | CA | Lease |
| 8369 | Santa Ana | CA | Lease |
| 8808 | Santa Ana | CA | Lease |
| 5764 | Santa Clara | CA | Lease |
| 2088 | Santa Maria | CA | Lease |
| 7639 | Santa Paula | CA | Lease |
| 9797 | Scotts Valley | CA | GL |
| 9153 | South Lake Tahoe | CA | Lease |
| 1288 | Stockton | CA | GL |
| 8708 | Stockton | CA | Lease |
| 8758 | Sylmar | CA | Lease |
| 4751 | Tehachapi | CA | Lease |
| 1108 | Temecula | CA | Lease |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 3127 | Temple City | CA | Lease |
| 1278 | Torrance | CA | GL |
| 2059 | Tracy | CA | Lease |
| 62538 | Tustin | CA | Lease |
| 3018 | Valencia | CA | Lease |
| 1148 | Ventura | CA | Lease |
| 2829 | Victorville | CA | Lease |
| 2068 | Visalia | CA | Lease |
| 9761 | Visalia | CA | Lease |
| 1189 | West Covina | CA | Lease |
| 3235 | West Covina | CA | Lease |
| 9489 | West Hills | CA | Lease |
| 1149 | Whittier | CA | Lease |
| 2238 | Yuba City | CA | Lease |
| 1141 | Aurora | CO | Lease |
| 8290 | Brighton | CO | Lease |
| 1131 | Centennial | CO | Lease |
| 4224 | Denver | CO | Lease |
| 1467 | Ft Collins | CO | GL |
| 7329 | Loveland | CO | Lease |
| 4453 | Pueblo | CO | Lease |
| 1303 | Danbury | CT | Lease |
| 1014 | Enfield | CT | Lease |
| 1134 | Milford | CT | Lease |
| 3495 | Milford | CT | Lease |
| 7109 | Watertown | CT | Lease |
| 4807 | Bear | DE | Lease |
| 4456 | Bridgeville | DE | Lease |
| 2654 | Dover | DE | Lease |
| 7725 | Rehoboth Beach | DE | Lease |
| 3873 | Wilmington | DE | Lease |

18-23538-shl   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 566 of 1150

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| 3317 | Boca Raton | FL | Lease |
| 5958 | Bonita Springs Showroom | FL | Lease |
| 6820 | Boynton Beach | FL | GL |
| 7321 | Bradenton | FL | Lease |
| 1007 | Brandon | FL | Lease |
| 2485 | Brooksville | FL | GL |
| 1125 | Coral Gables | FL | Lease |
| 1715 | Doral(Miami) | FL | Lease |
| 7067 | Fort Myers | FL | Lease |
| 1195 | Ft Lauderdale | FL | GL |
| 1495 | Ft Myers | FL | Lease |
| 5863 | Ft Myers | FL | Lease |
| 8972 | Ft Myers | FL | Lease |
| 8990 | Ft Pierce | FL | Lease |
| 3424 | Gainesville | FL | Lease |
| 1345 | Hialeah/Westland | FL | Lease |
| 3818 | Hollywood | FL | Lease |
| 425 | Jacksonville | FL | Lease |
| 7979 | Jacksonville | FL | Lease |
| 9614 | Key Largo | FL | Lease |
| 2215 | Key West | FL | Lease |
| 4725 | Key West | FL | Lease |
| 49012 | Lake Mary | FL | Lease |
| 3269 | Lantana | FL | Lease |
| 2745 | Leesburg | FL | Lease |
| 9224 | Marathon | FL | Lease |
| 3074 | Miami | FL | Lease |
| 3793 | Miami | FL | Lease |
| 4728 | Miami | FL | Lease |
| 8065 | Miami | FL | Lease |
| 5991 | Miami - Showroom | FL | Lease |

18-23538-rdd    Doc 2507    Filed 02/08/19    Entered 02/08/19 16:44:31    Exhibit A
Pg 565 of 1450

| 1365 | Miami/Cutler Rdg | FL | Lease |
| 2056 | Mry Est/Ft Wltn Bch | FL | Lease |
| 2695 | Naples | FL | Lease |
| 5237 | Oakland Park | FL | Lease |
| 8864 | Ocala | FL | Lease |
| 1456 | Oviedo | FL | GL |
| 1765 | Palm Beach Gardens | FL | GL |
| 2805 | Panama City | FL | Lease |
| 1775 | Pembroke Pines | FL | Lease |
| 31918 | Pembroke Pines | FL | Lease |
| 8066 | Pensacola | FL | Lease |
| 8957 | Pensacola | FL | Lease |
| 1205 | Pompano Beach | FL | Lease |
| 5962 | Pompano Beach | FL | Lease |
| 5976 | Sarasota | FL | Lease |
| 4355 | St. Petersburg | FL | Lease |
| 8815 | Sunrise | FL | Lease |
| 8895 | Tampa | FL | Lease |
| 1066 | The Avenues | FL | Lease |
| 7294 | Vero Beach | FL | Lease |
| 5959 | West Palm Bch | FL | Lease |
| 5185 | Winter Park | FL | Lease |
| 8825 | Winter Park | FL | Lease |
| 1385 | Atlanta | GA | Lease |
| 3713 | Covington | GA | Lease |
| 3978 | Peachtree City | GA | Lease |
| 8872 | Pendergrass | GA | Lease |
| 1305 | Savannah | GA | Lease |
| 8902 | Savannah | GA | Lease |
| 1578 | Aiea Oahu-Pearl Rdg | HI | Lease |
| 8049 | Hilo | HI | GL |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

WEIL:\96826275\11\73217.0003

18-23538-rdd   Doc 9507   Filed 02/06/15   Entered 02/06/15 16:44:32   Exhibit A
Pg 566 of 1450

| 2388 | Hilo(Sur) | HI | Lease |
| 1681 | Honolulu | HI | Lease |
| 8158 | Honolulu | HI | GL |
| 2148 | Kahului Maui(Sur) | HI | GL |
| 1738 | Kaneohe(Sur) | HI | GL |
| 8818 | Pearl City | HI | GL |
| 9220 | Algona | IA | Lease |
| 7767 | Charles City | IA | Lease |
| 9222 | Cherokee | IA | Lease |
| 3447 | Clive | IA | Lease |
| 3097 | Council Bluffs | IA | Lease |
| 45113 | Des Moines | IA | Lease |
| 8711 | Boise | ID | Lease |
| 7033 | Lewiston | ID | Lease |
| 7006 | Twin Falls | ID | Lease |
| 8844 | Bloomington | IL | Lease |
| 4381 | Bridgeview | IL | Lease |
| 2936 | Chicago | IL | GL |
| 4214 | Des Plaines | IL | Lease |
| 8555 | Elk Grove Village | IL | Lease |
| 8730 | Granite City | IL | Lease |
| 8720 | Melrose Park | IL | Lease |
| 1212 | N Riverside | IL | Lease |
| 8262 | Naperville | IL | Lease |
| 1290 | Niles | IL | Lease |
| 9348 | Norridge | IL | Lease |
| 1300 | Oakbrook | IL | Lease |
| 4433 | Quincy | IL | Lease |
| 8871 | Romeoville | IL | Lease |
| 8934 | Romeoville | IL | Lease |
| 7289 | Steger | IL | Lease |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

FILED DATE: 5/19/2021 1:27 PM  2020L012403

| 30936 | Tinley Park | IL | GL |
| 8017 | Elwood | IN | Lease |
| 9124 | Elwood | IN | Lease |
| 8013 | Fort Wayne | IN | Lease |
| 1830 | Ft Wayne | IN | Lease |
| 1470 | Greenwood | IN | Lease |
| 9354 | Griffith | IN | Lease |
| 3251 | Indianapolis | IN | GL |
| 8750 | Indianapolis | IN | Lease |
| 3823 | Jasper | IN | Lease |
| 7243 | Kokomo | IN | Lease |
| 7246 | Richmond | IN | Lease |
| 8014 | South Bend | IN | Lease |
| 2600 | Terre Haute | IN | Lease |
| 7042 | Valparaiso | IN | GL |
| 9122 | Warsaw | IN | Lease |
| 4215 | Kansas City | KS | Lease |
| 8273 | Lawrence | KS | Lease |
| 8420 | Olathe | KS | Lease |
| 7169 | Salina | KS | Lease |
| 8081 | Wichita | KS | Lease |
| 2546 | Bowling Green | KY | Lease |
| 3029 | Erlanger | KY | Lease |
| 7229 | Grayson | KY | Lease |
| 24015 | Louisville | KY | Lease |
| 8920 | Louisville | KY | Lease |
| 1790 | Louisville-Okolona | KY | Lease |
| 3941 | Russell Springs | KY | Lease |
| 7255 | Somerset | KY | Lease |
| 8896 | Gonzales | LA | Lease |
| 8736 | Harahan | LA | Lease |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 7223 | Metairie | LA | Lease |
|------|----------|----|-------|
| 7104 | Acton | MA | Lease |
| 1213 | Auburn | MA | Lease |
| 3288 | Billerica | MA | Lease |
| 1283 | Braintree | MA | GL |
| 4407 | Brockton | MA | Lease |
| 1223 | Brockton-Westgate | MA | GL |
| 4444 | Fitchburg | MA | Lease |
| 1243 | Hanover | MA | Lease |
| 2323 | Hyannis | MA | Lease |
| 3040 | Hyannis | MA | Lease |
| 1133 | Leominster | MA | Lease |
| 2373 | No Dartmouth | MA | Lease |
| 1053 | Saugus | MA | Lease |
| 3486 | Somerville | MA | Lease |
| 9692 | Webster | MA | Lease |
| 8851 | Westwood | MA | Lease |
| 1725 | Annapolis | MD | Lease |
| 2823 | Baltimore/E Pt | MD | Lease |
| 1374 | Bel Air | MD | GL |
| 8814 | Columbia | MD | Lease |
| 2774 | Cumberland | MD | Lease |
| 7713 | Edgewater | MD | Lease |
| 2664 | Frederick | MD | Lease |
| 3131 | Frederick | MD | Lease |
| 1754 | Gaithersburg | MD | Lease |
| 1013 | Glen Burnie | MD | GL |
| 3172 | Hagerstown | MD | Lease |
| 3798 | Hyattsville | MD | Lease |
| 3654 | Oxon Hill | MD | Lease |
| 3807 | Prince Frederick | MD | Lease |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 1304 | Silver Spring | MD | GL |
| 4399 | Silver Spring | MD | Lease |
| 7673 | Stevensville | MD | Lease |
| 2963 | Westminster | MD | Lease |
| 3021 | Auburn | ME | Lease |
| 7133 | Augusta | ME | Lease |
| 2203 | Brunswick | ME | Lease |
| 3155 | Belleville | MI | Lease |
| 3820 | Charlevoix | MI | Lease |
| 9557 | Grayling | MI | Lease |
| 3819 | Hastings | MI | Lease |
| 2050 | Jackson | MI | Lease |
| 3308 | Lake Orion | MI | Lease |
| 1170 | Lansing | MI | Lease |
| 8830 | Livonia | MI | Lease |
| 9693 | Marine City | MI | Lease |
| 3841 | Marshall | MI | Lease |
| 7031 | Menominee | MI | GL |
| 7068 | Midland | MI | Lease |
| 9593 | Oscoda | MI | Lease |
| 6232 | Roseville | MI | Lease |
| 8982 | Saginaw | MI | Lease |
| 3379 | Waterford Twp. | MI | Lease |
| 8949 | Wayland | MI | Lease |
| 1092 | Westland | MI | GL |
| 8134 | Wyoming | MI | Lease |
| 8162 | Eden Prairie | MN | Lease |
| 9689 | International Falls | MN | Lease |
| 3405 | Minneapolis | MN | GL |
| 3059 | St. Paul | MN | Lease |
| 30956 | West St. Paul | MN | GL |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| 7021 | Cape Girardeau | MO | Lease |
| 7323 | Fenton | MO | Lease |
| 1042 | Joplin | MO | GL |
| 3239 | Kansas City | MO | GL |
| 7324 | O'Fallon | MO | Lease |
| 8701 | Riverside | MO | Lease |
| 62707 | Springfield | MO | GL |
| 4026 | St. Joseph | MO | Lease |
| 7719 | Columbus | MS | Lease |
| 88776 | Olive Branch | MS | Lease |
| 9808 | Hamilton | MT | Lease |
| 7030 | Kalispell | MT | Lease |
| 4112 | Asheville | NC | Lease |
| 2105 | Burlington | NC | Lease |
| 8319 | Charlotte | NC | Lease |
| 8822 | Charlotte | NC | Lease |
| 7208 | Clemmons | NC | Lease |
| 1405 | Fayetteville | NC | Lease |
| 2225 | Goldsboro | NC | Lease |
| 1335 | Greensboro | NC | GL |
| 8704 | Greensboro | NC | Lease |
| 2755 | Jacksonville | NC | Lease |
| 3744 | Kill Devil Hills | NC | GL |
| 1646 | Pineville | NC | Lease |
| 3667 | Raleigh | NC | Lease |
| 4450 | Raleigh | NC | Lease |
| 7385 | Raleigh | NC | Lease |
| 3808 | Statesville | NC | Lease |
| 7626 | Waynesville | NC | Lease |
| 3116 | Wilmington | NC | Lease |
| 4272 | Bismarck | ND | Lease |

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| 4057 | Fargo | ND | Lease |
| 4353 | Minot | ND | Lease |
| 45114 | Omaha | NE | Lease |
| 2023 | Concord | NH | Lease |
| 3175 | Hooksett | NH | Lease |
| 8703 | Kingston | NH | Lease |
| 2443 | Manchester | NH | Lease |
| 1313 | Nashua | NH | Lease |
| 1003 | Salem | NH | Lease |
| 4448 | Salem | NH | Lease |
| 7048 | West Lebanon | NH | Lease |
| 3438 | Avenel | NJ | Lease |
| 7177 | Belleville | NJ | Lease |
| 1204 | Freehold | NJ | Lease |
| 3393 | Glassboro | NJ | Lease |
| 1094 | Hackensack | NJ | GL |
| 1044 | Jersey Cty/Newport | NJ | GL |
| 3499 | Kearny | NJ | Lease |
| 1494 | Moorestown | NJ | GL |
| 78714 | Secaucus | NJ | Lease |
| 9463 | Somers Point | NJ | GL |
| 8835 | Swedesboro | NJ | Lease |
| 4478 | Trenton | NJ | Lease |
| 7602 | Wall | NJ | Lease |
| 8380 | Wall Township | NJ | Lease |
| 1434 | Wayne | NJ | Lease |
| 3056 | Wayne | NJ | Lease |
| 4470 | West Long Branch | NJ | Lease |
| 9413 | West Orange | NJ | Lease |
| 3202 | Westwood | NJ | Lease |
| 1684 | Woodbridge | NJ | GL |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| 8905 | Albuquerque | NM | Lease |
|---|---|---|---|
| 2597 | Farmington | NM | Lease |
| 7035 | Farmington | NM | Lease |
| 7016 | Hobbs | NM | Lease |
| 2527 | Las Cruces | NM | Lease |
| 3301 | Santa Fe | NM | Lease |
| 1709 | Henderson | NV | GL |
| 2754 | Henderson | NV | GL |
| 3592 | Las Vegas | NV | Lease |
| 5864 | Las Vegas | NV | Lease |
| 8970 | Las Vegas | NV | Lease |
| 1668 | Las Vegas(Meadows) | NV | Lease |
| 5779 | Reno - Mcphails | NV | Lease |
| 26741 | Amherst | NY | GL |
| 4741 | Batavia | NY | Lease |
| 9589 | Bath | NY | Lease |
| 3862 | Bohemia | NY | GL |
| 9423 | Bridgehampton | NY | Lease |
| 7654 | Bronx | NY | GL |
| 9420 | Bronx | NY | Lease |
| 1114 | Brooklyn | NY | GL |
| 3415 | Buffalo | NY | Lease |
| 1984 | Buffalo/Hamburg | NY | Lease |
| 8854 | Cheektowaga | NY | Lease |
| 2626 | College Point | NY | GL |
| 4871 | Farmingville | NY | GL |
| 2744 | Horseheads/Elmira | NY | GL |
| 2584 | Lakewood | NY | Lease |
| 9415 | Mahopac | NY | Lease |
| 1404 | Massapequa | NY | GL |
| 2741 | Massapequa | NY | GL |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 4034 | Mattydale | NY | Lease |
|------|-----------|-----|-------|
| 8959 | Menands | NY | Lease |
| 7749 | New York | NY | Lease |
| 7777 | New York | NY | Lease |
| 2593 | Newburgh | NY | Lease |
| 4123 | Niagara Falls | NY | Lease |
| 1333 | Poughkeepsie | NY | GL |
| 8102 | Rochester | NY | Lease |
| 3600 | Schenectady | NY | Lease |
| 7676 | Sidney | NY | Lease |
| 1624 | Staten Island | NY | Lease |
| 8753 | Syosset | NY | Lease |
| 1924 | Valley Stream | NY | GL |
| 1584 | Victor | NY | Lease |
| 9392 | West Seneca | NY | Lease |
| 1674 | White Plains | NY | Lease |
| 9416 | White Plains | NY | Lease |
| 1733 | Yonkers | NY | Lease |
| 9414 | Yorktown Heights | NY | Lease |
| 7383 | Barberton | OH | Lease |
| 3286 | Brunswick | OH | Lease |
| 1410 | Canton | OH | Lease |
| 1810 | Cincinnati-Eastgate | OH | Lease |
| 8790 | Cleveland | OH | Lease |
| 8712 | Columbus | OH | Lease |
| 8862 | Columbus | OH | Lease |
| 1560 | Dayton Mall | OH | Lease |
| 7209 | East Liverpool | OH | Lease |
| 7595 | Gahanna | OH | Lease |
| 7397 | Grove City | OH | Lease |
| 30962 | Groveport | OH | Lease |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 7644 | Harrison | OH | Lease |
|---|---|---|---|
| 1081 | Heath | OH | GL |
| 7477 | Marietta | OH | Lease |
| 4257 | Middleburg Heights | OH | Lease |
| 8918 | Monroe | OH | Lease |
| 1564 | Niles | OH | Lease |
| 3243 | North Canton | OH | Lease |
| 3243 | North Canton | OH | Lease |
| 1280 | Springdale | OH | GL |
| 2104 | St Clairsville | OH | Lease |
| 3142 | Tallmadge | OH | Lease |
| 4782 | Clinton | OK | Lease |
| 8931 | Oklahoma City | OK | Lease |
| 4363 | Tulsa | OK | Lease |
| 4455 | Beaverton | OR | Lease |
| 8883 | Eugene | OR | Lease |
| 1119 | Happy Valley | OR | Lease |
| 8228 | Portland | OR | Lease |
| 8841 | Portland | OR | Lease |
| 2715 | Salem | OR | Lease |
| 2119 | Salem(Lancaster) | OR | Lease |
| 3888 | The Dalles | OR | Lease |
| 3361 | Allentown | PA | Lease |
| 8744 | Allentown | PA | Lease |
| 4150 | Altoona | PA | Lease |
| 8875 | Altoona | PA | Lease |
| 1454 | Bensalem/Crnwls Hts | PA | Lease |
| 9161 | Berwick | PA | Lease |
| 24411 | Bridgeville | PA | Lease |
| 1711 | Camp Hill | PA | Lease |
| 3225 | Chambersburg | PA | Lease |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 8781 | Chambersburg | PA | Lease |
| 7293 | Clifton Heights | PA | Lease |
| 3911 | Columbia | PA | Lease |
| 3737 | Doylestown | PA | Lease |
| 2124 | Dubois | PA | Lease |
| 7192 | Easton | PA | Lease |
| 3266 | Edwardsville | PA | Lease |
| 3963 | Elizabethtown | PA | Lease |
| 9662 | Ephrata | PA | Lease |
| 1073 | Exton | PA | GL |
| 8873 | Gouldsboro | PA | Lease |
| 2244 | Hanover | PA | Lease |
| 3597 | Holmes | PA | Lease |
| 7470 | Hummelstown | PA | Lease |
| 1064 | Langhrn/Oxford Vly | PA | Lease |
| 7699 | Lebanon | PA | Lease |
| 7372 | Leechburg | PA | Lease |
| 3884 | Matamoras | PA | Lease |
| 1654 | Media | PA | GL |
| 433 | Middletown | PA | Lease |
| 8275 | Morrisville | PA | Lease |
| 7083 | New Castle | PA | Lease |
| 4054 | New Kensington | PA | Lease |
| 1834 | North Wales | PA | GL |
| 9409 | Phoenixville | PA | Lease |
| 4010 | Pittsburgh | PA | Lease |
| 8724 | Pittsburgh | PA | Lease |
| 9438 | Pleasant Hills | PA | Lease |
| 1034 | Ross Park | PA | Lease |
| 8976 | Royersford | PA | Lease |
| 3136 | Shillington | PA | Lease |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 2605 | State College | PA | Lease |
| 8962 | Steelton | PA | Lease |
| 9539 | Thorndale | PA | Lease |
| 4713 | Towanda | PA | Lease |
| 3954 | Walnutport | PA | Lease |
| 2114 | Washington | PA | Lease |
| 7374 | West Chester | PA | Lease |
| 1154 | Whitehall | PA | Lease |
| 443 | Wilkes-Barre[1] | PA | Lease |
| 3268 | Wilkes-Barre | PA | Lease |
| 3390 | Williamsport | PA | Lease |
| 3810 | Willow Street | PA | Lease |
| 3949 | Wind Gap | PA | Lease |
| 4732 | Aguadilla | PR | Lease |
| 7566 | Arecibo | PR | Lease |
| 1915 | Bayamon | PR | GL |
| 7570 | Bayamon | PR | Lease |
| 7788 | Bayamon | PR | Lease |
| 1085 | Caguas | PR | Lease |
| 7419 | Caguas | PR | Lease |
| 1925 | Carolina | PR | Lease |
| 7665 | Carolina | PR | Lease |
| 7446 | Cayey | PR | Lease |
| 2085 | Fajardo | PR | Lease |
| 2675 | Guayama | PR | Lease |
| 7768 | Guaynabo | PR | Lease |
| 2355 | Hatillo(Arecibo) | PR | GL |
| 1905 | Hato Rey | PR | GL |
| 7783 | Hato Rey | PR | GL |
| 7842 | Hato Rey | PR | Lease |

---

[1] **Note to Draft**: This store will be a GOB store as of Closing.

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 3993 | Juana Diaz | PR | Lease |
|------|------------|-----|-------|
| 1935 | Mayaguez | PR | GL |
| 1935 | Mayaguez | PR | Lease |
| 3882 | Mayaguez | PR | Lease |
| 2385 | Naranjito | PR | Lease |
| 1945 | Ponce | PR | Lease |
| 1945 | Ponce | PR | Lease |
| 7741 | Ponce | PR | Lease |
| 4844 | Rio Piedras | PR | Lease |
| 4494 | Trujillo Alto | PR | Lease |
| 7784 | Vega Alta | PR | Lease |
| 7752 | Yauco | PR | Lease |
| 4016 | Greenville | SC | Lease |
| 8846 | Greenville | SC | Lease |
| 8858 | Ladson | SC | Lease |
| 7616 | Lexington | SC | Lease |
| 7274 | Mauldin | SC | Lease |
| 4141 | West Columbia | SC | Lease |
| 7241 | Bartlett | TN | Lease |
| 1115 | Chattanooga | TN | Lease |
| 8037 | Chattanooga | TN | Lease |
| 2335 | Clarksville | TN | Lease |
| 2265 | Johnson City | TN | Lease |
| 7460 | Knoxville | TN | Lease |
| 8947 | Knoxville | TN | Lease |
| 9621 | Lebanon | TN | Lease |
| 8756 | Memphis | TN | Lease |
| 8206 | Nashville | TN | Lease |
| 1395 | West Town | TN | Lease |
| 1137 | Austin | TX | Lease |
| 1327 | Baytown | TX | Lease |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 30954 | Brownsville | TX | Lease |
|---|---|---|---|
| 8870 | Dallas | TX | Lease |
| 1317 | El Paso | TX | Lease |
| 8021 | El Paso | TX | Lease |
| 8907 | Garland | TX | Lease |
| 8807 | Grapevine | TX | Lease |
| 2537 | Harlingen | TX | Lease |
| 4389 | Mcallen | TX | Lease |
| 7972 | Mcallen | TX | Lease |
| 1067 | Memorial | TX | Lease |
| 8922 | Pflugersville | TX | Lease |
| 1629 | Pharr | TX | Lease |
| 1097 | San Antonio | TX | Lease |
| 8747 | San Antonio | TX | Lease |
| 9507 | San Antonio | TX | Lease |
| 1127 | Shepherd | TX | Lease |
| 2077 | Tyler | TX | Lease |
| 2617 | Victoria | TX | Lease |
| 8948 | Salt Lake Cty | UT | Lease |
| 9794 | St. George | UT | Lease |
| 1888 | West Jordan | UT | Lease |
| 1284 | Alexandria | VA | Lease |
| 3471 | Chesapeake | VA | Lease |
| 8838 | Chesapeake | VA | Lease |
| 1274 | Chesterfield | VA | GL |
| 8823 | Dulles | VA | Lease |
| 1814 | Fairfax | VA | Lease |
| 1024 | Falls Church | VA | Lease |
| 2694 | Fredericksburg | VA | Lease |
| 2395 | Manassas | VA | GL |
| 8836 | Richmond | VA | Lease |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| 7415 | Springfield | VA | Lease |
|---|---|---|---|
| 3785 | Tabb | VA | Lease |
| 7717 | Waynesboro | VA | Lease |
| 7259 | Williamsburg | VA | Lease |
| 2784 | Winchester | VA | Lease |
| 7413 | Frederiksted | VI | Lease |
| 3972 | St. Croix | VI | Lease |
| 3829 | St. Thomas | VI | Lease |
| 7793 | St. Thomas | VI | Lease |
| 1463 | Burlington | VT | GL |
| 45061 | Colchester | VT | Lease |
| 3133 | Bellingham | WA | Lease |
| 2049 | Everett | WA | Lease |
| 8709 | Kent | WA | Lease |
| 8897 | Kent | WA | Lease |
| 2330 | Puyallup | WA | Lease |
| 36692 | Seattle | WA | Lease |
| 8004 | Spokane | WA | Lease |
| 9480 | Spokane | WA | Lease |
| 1139 | Tukwila | WA | GL |
| 2029 | Union Gap | WA | GL |
| 7034 | Walla Walla | WA | Lease |
| 8968 | Janesville | WI | Lease |
| 7648 | Mauston | WI | Lease |
| 8220 | New Berlin | WI | Lease |
| 3851 | Racine | WI | Lease |
| 7649 | Ripon | WI | Lease |
| 3750 | Waupaca | WI | Lease |
| 8782 | Waupaca | WI | Lease |
| 6375 | Bridgeport | WV | Lease |
| 4442 | Charleston | WV | Lease |

18-23538-shl   Doc 2307   Filed 02/06/19   Entered 02/06/19 16:44:32   Exhibit A
Pg 582 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| 3484 | Elkview | WV | Lease |
|------|---------|----|----|
| 3724 | Scott Depot | WV | Lease |
| 2304 | Westover/Morgantown | WV | Lease |
| 2341 | Casper | WY | Lease |
| 7139 | Jackson | WY | Lease |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**Schedule 1.1(p)**

**Operating Owned Properties**

| Store# | City | State |
|--------|------|-------|
| 8722 | Anchorage(Sur) | AK |
| 8106 | Birmingham | AL |
| 1136 | Riverchase | AL |
| 30957 | Springdale | AR |
| 68235 | Phoenix | AZ |
| 1588 | Phoenix-Metro Ctr | AZ |
| 2288 | Antioch | CA |
| 1598 | City of Industry | CA |
| 449 | Delano | CA |
| 4857 | Desert Hot Springs | CA |
| 8038 | El Cajon | CA |
| 1209 | Long Beach | CA |
| 1068 | Palmdale | CA |
| 3368 | Redlands | CA |
| 1788 | Richmond | CA |
| 8098 | San Bernardino | CA |
| 3968 | Wasco | CA |
| 2451 | Greeley | CO |
| 1271 | Littleton/Denver | CO |
| 1443 | Manchester | CT |
| 1853 | Wilmington | DE |
| 1255 | Citrus Park | FL |
| 1055 | Coral Springs | FL |
| 31930 | Hialeah | FL |
| 7435 | Hialeah | FL |
| 1635 | Jacksonville | FL |
| 4019 | Melbourne | FL |
| 1175 | Merritt Island | FL |
| 8292 | Ocala | FL |

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 582 of 1450
FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | |
|---|---|---|
| 1485 | Orange Pk | FL |
| 1285 | Orlando-South | FL |
| 1555 | Sanford | FL |
| 2135 | Sebring | FL |
| 8245 | Seminole | FL |
| 1015 | Vero Beach | FL |
| 2815 | Albany | GA |
| 2065 | Brunswick | GA |
| 8035 | College Park | GA |
| 3978 | Peachtree City | GA |
| 7705 | Tamuning | GU |
| 7439 | Council Bluff | IA |
| 61510 | Calumet City | IL |
| 26987 | Chicago | IL |
| 30920 | Chicago | IL |
| 61030 | Chicago | IL |
| 2632 | Fairview Hts | IL |
| 490 | Hoffman Est | IL |
| 30927 | Macomb | IL |
| 470 | Manteno | IL |
| 8289 | Manteno | IL |
| 30900 | New Lenox | IL |
| 31914 | Round Lake Beach | IL |
| 31900 | Sterling | IL |
| 26185 | Clarksville | IN |
| 61540 | Indianapolis | IN |
| 8171 | Overland Park | KS |
| 3433 | Holyoke | MA |
| 9255 | Palmer | MA |
| 1093 | Springfield | MA |
| 6303 | Bangor | ME |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | |
|---|---|---|
| 2183 | So Portland | ME |
| 9385 | Clio | MI |
| 1100 | Flint | MI |
| 30918 | Jackson | MI |
| 1460 | Livonia | MI |
| 1590 | Saginaw | MI |
| 38480 | Troy | MI |
| 4206 | Warren | MI |
| 1032 | Brooklyn Center | MN |
| 2500 | Duluth | MN |
| 1121 | Independence | MO |
| 61106 | Jackson | MS |
| 30949 | Natchez | MS |
| 3213 | Southaven | MS |
| 2242 | Billings | MT |
| 30961 | Greensboro | NC |
| 30961 | Greensboro | NC |
| 1744 | Ocean | NJ |
| 2374 | Vineland | NJ |
| 6298 | Sparks | NV |
| 1353 | De Witt/Syracuse | NY |
| 4726 | Jamestown | NY |
| 1364 | Lake Grove | NY |
| 1514 | Niagara Falls | NY |
| 8254 | Rochester | NY |
| 26731 | Dublin | OH |
| 1370 | Eastland | OH |
| 2940 | Franklin | OH |
| 1610 | Northgate | OH |
| 8305 | Warren | OH |
| 1261 | Midwest City | OK |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| 1224 | Harrisburg | PA |
| 1863 | Johnstown | PA |
| 1293 | Robinson Twp | PA |
| 1354 | Willow Grove | PA |
| 9394 | Fajardo | PR |
| 3853 | Guayama | PR |
| 8935 | Rio Piedras | PR |
| 8975 | Rio Piedras | PR |
| 1795 | Myrtle Beach | SC |
| 30941 | Sioux Falls | SD |
| 1675 | Knoxville East Town | TN |
| 30934 | Memphis | TN |
| 26596 | Memphis/Hickory | TN |
| 1437 | Arlington/Parks | TX |
| 8247 | Dickinson | TX |
| 61237 | Houston | TX |
| 6874 | Houston | TX |
| 8137 | Houston | TX |
| 8167 | Houston | TX |
| 49027 | Round Rock | TX |
| 2332 | San Antonio | TX |
| 1023 | Loudoun/Dulles | VA |
| 26717 | Newport News | VA |
| 1974 | Roanoke | VA |
| 3544 | Salem | VA |
| 8345 | Virginia Beach | VA |
| 2299 | Aberdeen | WA |
| 3722 | Burlington | WA |
| 6579 | Spokane | WA |
| 3088 | Kenosha | WI |
| 2432 | La Crosse | WI |

| 2232 | Madison-East | WI |
| 8725 | Vandenbroek | WI |
| 1804 | Barboursville | WV |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-shl    Doc 9507-1    Filed 02/08/19    Entered 02/08/19 16:44:31    Exhibit A
Pg 586 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Schedule 1.1(q)**

**Sparrow Properties**

| Store # | City | State |
|---------|------|-------|
| 1228 | Arden | CA |
| 1281 | Pueblo | CO |
| 1831 | Thornton | CO |
| 1043 | Meriden | CT |
| 1263 | Waterbury | CT |
| 2845 | Athens | GA |
| 1035 | Augusta | GA |
| 1095 | Douglasville | GA |
| 1155 | Kennesaw | GA |
| 1565 | Morrow(Southlake) | GA |
| 8755 | Tucker | GA |
| 2760 | Davenport | IA |
| 1012 | Des Moines | IA |
| 1172 | Bloomingdale | IL |
| 1840 | Chicago Ridge | IL |
| 1321 | Peoria | IL |
| 2121 | Peru | IL |
| 2360 | Quincy | IL |
| 1570 | Schaumburg | IL |
| 1780 | Springfield | IL |
| 1820 | West Dundee | IL |
| 1600 | Indianapolis | IN |
| 1680 | Indianapolis | IN |
| 1650 | Merrillville | IN |
| 2290 | Michigan City | IN |
| 1800 | Mishawaka | IN |
| 1642 | Topeka | KS |
| 1730 | Florence | KY |
| 2087 | Alexandria | LA |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 1086 | Baton Rouge | LA |
|------|-------------|-----|
| 1147 | Baton Rouge | LA |
| 2677 | Bossier City | LA |
| 1116 | Monroe | LA |
| 1077 | Shreveport | LA |
| 1223 | Brockton-Westgate | MA |
| 1104 | Marlborough | MA |
| 1033 | N Attleboro | MA |
| 2934 | Taunton | MA |
| 1634 | Baltimore-West | MD |
| 1854 | Parkville | MD |
| 1074 | Waldorf | MD |
| 2040 | Battle Creek | MI |
| 1700 | Dearborn | MI |
| 1011 | Grandville | MI |
| 9693 | Marine City | MI |
| 1192 | Muskegon | MI |
| 1760 | Novi | MI |
| 1110 | Portage | MI |
| 1720 | Sterling Hts | MI |
| 2180 | Traverse City | MI |
| 1092 | Westland | MI |
| 8702 | Minneapolis | MN |
| 1822 | Cape Girardeau | MO |
| 1042 | Joplin | MO |
| 1171 | Springfield | MO |
| 1182 | St Peters | MO |
| 1222 | St. Louis | MO |
| 1306 | Hattiesburg | MS |
| 1166 | Meridian | MS |
| 1165 | Concord | NC |

18-23538-rdd   Doc 2307   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 588 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| 2175 | Greenville | NC |
|------|------------|-----|
| 2515 | Hickory | NC |
| 1605 | Raleigh | NC |
| 1712 | Grand Forks | ND |
| 1022 | Oakview | NE |
| 1734 | Lawrenceville | NJ |
| 1614 | Livingston | NJ |
| 1554 | Mays Landing | NJ |
| 1314 | New Brunswick | NJ |
| 1764 | Rockaway | NJ |
| 1717 | Albuquerque | NM |
| 2010 | Mansfield | OH |
| 1710 | No Olmsted | OH |
| 2390 | Springfield | OH |
| 1051 | Strongsville | OH |
| 1120 | Tuttle Crossing | OH |
| 2305 | Anderson | SC |
| 1595 | Greenville | SC |
| 1545 | Spartanburg | SC |
| 1315 | Chattanooga | TN |
| 1307 | Abilene | TX |
| 1487 | Austin | TX |
| 1407 | Beaumont | TX |
| 2497 | Brownsville | TX |
| 2547 | College Station | TX |
| 1217 | Corpus Christi | TX |
| 2587 | Denton | TX |
| 1027 | El Paso | TX |
| 1317 | El Paso | TX |
| 1267 | Fort Worth | TX |
| 8217 | Fort Worth | TX |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 8717 | Houston | TX |
|------|---------|-----|
| 1447 | Hulen | TX |
| 1417 | Humble | TX |
| 1297 | Hurst | TX |
| 2247 | Laredo | TX |
| 1187 | Mesquite-Town East | TX |
| 1176 | Pasadena | TX |
| 1427 | Rolling Oaks | TX |
| 8147 | San Antonio | TX |
| 2197 | Texas City | TX |
| 1377 | Willowbook | TX |
| 1038 | E Valley | WA |
| 2219 | Lacey/Olympia | WA |
| 2309 | Silverdale | WA |
| 1029 | Spokane | WA |
| 1139 | Tukwila | WA |
| 2029 | Union Gap | WA |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Schedule 2.1(a)**

**Acquired Intellectual Property[2]**

**Schedule 2.1(a)(i) - Trademarks**

    1.   See Annex 1, attached.

**Schedule 2.1(a)(ii) – Business Names**

    1.   See Annex 2, attached.

**Schedule 2.1(a)(iii) - Patents**

    1.   See Annex 3, attached.

**Schedule 2.1(a)(iv) - Copyrights**

    1.   See Annex 4, attached.

**Schedule 2.1(a)(v) – Domain Names**

    1.   See Annex 5, attached.

**Schedule 2.1(a)(vi) – Media Accounts**

**Facebook**

https://www.facebook.com/sears
https://www.facebook.com/kmart
https://www.facebook.com/shopyourway/
https://www.facebook.com/searsauto/
https://www.facebook.com/SearsHomeServices
https://www.facebook.com/SearsPartsDirect
https://www.facebook.com/kenmore/
https://www.facebook.com/DieHard/

**Instagram**

https://www.instagram.com/kenmoreappliances/
https://www.instagram.com/sears/

---

[2] **Note to Draft**:  Each of the items of Intellectual Property in *each of the tabs* of Annex 1, Annex 2, Annex 3, Annex 4 and Annex 5 shall be included in the Acquired Intellectual Property.

18-23538-shl Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 583 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

https://www.instagram.com/kmart/
https://www.instagram.com/shopyourway/
https://www.instagram.com/searsauto/
https://www.instagram.com/searsholdings/

## LinkedIn

https://www.linkedin.com/company/sears-roebuck-and-co./
https://www.linkedin.com/company/kmart/
https://www.linkedin.com/company/shop-yourway/
https://www.linkedin.com/company/sears-auto-centers/
https://www.linkedin.com/company/sears-home-services/
https://www.linkedin.com/company/innovel-solutions/
https://www.linkedin.com/company/sears-holdings-corporation/

## Pinterest

https://www.pinterest.com/Sears/
https://www.pinterest.com/Kmart/
https://www.pinterest.com/searshomeexpert/
https://www.pinterest.com/Kenmore/

## Twitter

https://twitter.com/sears
https://twitter.com/kmart
https://twitter.com/ShopYourWay
https://twitter.com/SearsAuto
https://twitter.com/SearsHomeExpert
https://twitter.com/partsdirect
https://twitter.com/SearsHoldings
https://twitter.com/SearsOutlet
https://twitter.com/SearsCares
https://twitter.com/KmartCares
https://twitter.com/SearsDeals
https://twitter.com/KmartDeals
https://twitter.com/kenmore
https://twitter.com/DieHardBattery

## YouTube

https://www.youtube.com/user/Sears
https://www.youtube.com/user/Kmart
https://www.youtube.com/user/shopyourway
https://www.youtube.com/user/SearsAuto

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 584 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

https://www.youtube.com/user/SearsHomeService
https://www.youtube.com/channel/UCyneGks78mAm0QCLMPTmAaA
https://www.youtube.com/user/SearsHoldingsVideo
https://www.youtube.com/user/Kenmore
https://www.youtube.com/user/diehard


All social media handles and other social media identifiers for the foregoing social media accounts (e.g., @Sears) are hereby incorporated.

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| Image | Country | MarkName | Application Number |
|---|---|---|---|
| | United States | 1-800-4-MY-HOME | 75/307136 |
| | United States | 1-800-4-MY-HOME | 85/164590 |
| | United States | 1-800-MY-SEARS | 78/134461 |
| | United States | 1-888-SU-HOGAR | 76/207909 |
|  | United States | A (STYLIZED) | 78/803773 |
|  A BRIGHTER WAY TO MANAGE YOUR MONEY | United States | A BRIGHTER WAY TO MANAGE YOUR MONEY | 85/599013 |
| | United States | A&E | 76/410644 |
| | United States | A&E FACTORY SERVICE | 78/097160 |
| | United States | A&E FACTORY SERVICE | 78/313706 |
|  a&e | United States | A&E with Design | 76/410645 |
| | United States | ACCOUNTCARE | 76/163594 |
| | United States | ACCOUNTCARE PLUS | 77/308236 |
| | United States | ADRIANNE | 87/060732 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

|  | United States | ALPHALINE | 85/977174 |
|---|---|---|---|
|  | United States | ALPHALINE ENTERTAINMENT | 85/282683 |
| ALWAYS PUSH FORWARD | United States | ALWAYS PUSH FORWARD | 85/707423 |
|  | United States | AMARA | 87/060735 |
|  | United States | AMERICAN FARE | 74/706615 |
|  | United States | AMERICA'S CAR CARE PLACE | 77/639153 |
|  | United States | AMERICA'S CAR CARE PLACE | 76/192255 |
|  | United States | AMPLIFY | 77/862811 |
|  | United States | AMPLIFY | 77/982942 |
|  | United States | AMPLIFY | 77/924766 |
|  | United States | AMPLIFY (STYLIZED WITH DESIGN) | 77/983024 |
|  | United States | AMPLIFY (STYLIZED WITH DESIGN) | 77/931566 |
|  | United States | AMPLIFY LOGO (LIGHTNING BOLT DESIGN) | 77/983023 |
|  | United States | AMPLIFY LOGO (LIGHTNING BOLT DESIGN) | 77/931573 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | United States | ANDREA | 87/060733 |
|---|---|---|---|
| | United States | APOSTROPHE | 73/748679 |
| | United States | APOSTROPHE | 76/194554 |
| appliance select | United States | APPLIANCE SELECT (STYLIZED WITH ARCH DESIGN) | 78/587789 |
| Appliance Select | United States | APPLIANCE SELECT (STYLIZED WITH DESIGN) | 74/578279 |
| | United States | ASSURELINK | 85/349259 |
| | United States | ATHLETECH | 78/801436 |
| ATHLETECH | United States | ATHLETECH (STYLIZED) | 75/795788 |
| | United States | ATTENTION | 76/612023 |
| ATTENTION | United States | ATTENTION | 77/322859 |
| B | United States | B (Stylized) | 87/085472 |
| | United States | BASIC EDITIONS | 76/625908 |
| | United States | BBQ PRO | 78/778433 |
| | United States | BDAAS | 85/513024 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A
Pg 596 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| | United States | BECAUSE PICTURES ARE MADE TO BE SHARED | 76/097531 |
|  | United States | BETTER PROCESS, BIGGER BUZZ | 87/294932 |
| | United States | BIG K MART (Stylized with Design) | 75/502210 |
| | United States | BLUELIGHT | 76/132609 |
| | United States | BLUELIGHT | 76/132660 |
| | United States | BLUELIGHT | 77/047108 |
| | United States | BLUELIGHT | 77/832265 |
| | United States | BLUELIGHT SPECIAL | 73/279158 |
| | United States | BOGO A GOGO | 86/907032 |
| | United States | BOLD SPIRIT | 73/784127 |
| | United States | BOTANICAL DREAM | 86/043320 |
| | United States | BRAG | 86/652797 |
| | United States | BUB | 87/149155 |
| | United States | BUB HUB | 87/182748 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| bub | United States | BUB logo | 87/182711 |
| | United States | BUNDLE UP | 85/922978 |
| | United States | BUNDLZ | 87/033557 |
| (butterfly design) | United States | BUTTERFLY DESIGN | 77/233710 |
| | United States | CAMPSIDE FLANNEL | 85/555278 |
| | United States | CANYON RIVER BLUES | 74/370050 |
| | United States | CANYON RIVER BLUES | 73/826577 |
| | United States | CANYON RIVER BLUES | 75/009479 |
| | United States | CANYONRIVERBLUES | 76/361344 |
| | United States | CARE BEYOND THE COUNTER | 87/060754 |
| | United States | CAT & CO. | 86/982641 |
| | United States | CAT & CO. | 86/406354 |
| | United States | CAT & CO. | 86/406352 |
| Cat & Co. | United States | CAT & CO. and Design | 86/982643 |

18-23538-rdd Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
|  | United States | CAT & CO. and Design | 86/406370 |
|  | United States | CAT & CO. and Design | 86/406361 |
| | United States | CHAMPION BREED | 77/857500 |
| | United States | CHAMPION BREED | 85/013530 |
|  | United States | CLEARWATER and Design | 86/403189 |
| | United States | COBBIE | 71/147573 |
| | United States | COBBIE CUDDLERS | 73/247509 |
| | Puerto Rico | COBBIE CUDDLERS | 68606 |
| | United States | COLOR SWITCH PLUS | 85/884403 |
|  | United States | COLOR SWITCH PLUS with Design | 86/427224 |
| | United States | COLORMATE | 75/208617 |
| | United States | COLORMATE | 75/209542 |
| | United States | COLORMATE | 77/056410 |
| | United States | COMPANION | 76/377333 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | United States | CONNECTED SOLUTIONS | 86/208110 |
|---|---|---|---|
| CONNECTED SOLUTIONS | United States | CONNECTED SOLUTIONS and Design | 86/274141 |
| | United States | COVERSHIELD | 86/324717 |
| COVERSHIELD ESTD 2015 | United States | COVERSHIELD ESTD 2015 and Design | 86/589194 |
| | United States | COVINGTON | 78/088021 |
| | United States | COVINGTON | 78/092912 |
| COVINGTON | United States | COVINGTON (STYLIZED WITH DESIGN) | 76/397341 |
| | United States | COZY UPS | 86/607166 |
| | United States | CRB | 75/430924 |
| | United States | CUPCAKE | 85/349185 |
| | United States | DATATOUCH | 85/482642 |
| | United States | DAVID TAYLOR | 74/531139 |
| | United States | DEAL FLASH | 86/255505 |
| | United States | DEAL HEIST | 86/045441 |

18-23538-rdd    Doc 2507    Filed 02/08/19    Entered 02/08/19 15:44:32    Exhibit A
Pg 572 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| DEALS CENTER | United States | DEALS CENTER | 85/770583 |
| DECORATE IT FORWARD | United States | DECORATE IT FORWARD | 85/634189 |
| DEFENSE COTTON | United States | DEFENSE COTTON | 85/591268 |
| DESIGNED AND CREATED TO MEET THE DEMANDS OF CHAMPIONS | United States | DESIGNED AND CREATED TO MEET THE DEMANDS OF CHAMPIONS | 85/418988 |
| DESIGNED TO PERFORM AND EXPLORE | United States | DESIGNED TO PERFORM AND EXPLORE | 85/507855 |
| | United States | DESTINATION DAD | 86/293906 |
| | United States | DIET-TRIM | 75/441180 |
| | United States | DIRECT DRIVE | 75/712612 |
| DISCOUNTS & DOLLAR DEALS & MORE | United States | DISCOUNTS & DOLLAR DEALS & MORE | 85/779529 |
| | United States | DOG WITH COLLAR DESIGN | 85/198561 |
| | United States | DOLLARPALOOZA | 86/803216 |
| | United States | DONNER & BLITZEN, INCORPORATED | 85/981160 |
| | United States | DR. SMART | 86/764531 |
| | United States | DREAMS MATTER | 86/679495 |

18-23538-rdd Doc 2307-1 Filed 02/08/19 Entered 02/08/19 16:44:31 Exhibit A

FILED DATE: 5/19/2021 1:27 PM     2020L012403

| | | | |
|---|---|---|---|
| DREAMSMATTER (with Eyelash Logo) | United States | DREAMSMATTER (with Eyelash Logo) | 86/679534 |
| | United States | EARN YOUR WAY | 85/505026 |
| | United States | EARN. REDEEM. REPEAT. | 85/548566 |
| | United States | EASTER JUBILEE | 85/369359 |
| | United States | EASY LIVING | 73/009577 |
| | United States | ELK WOODS | 78/879618 |
| | United States | ELLA ROSE | 85/348388 |
| | United States | ENCHANTED BRILLIANCE | 85/209007 |
| | United States | ENDLESS SMILES. AMAZING POSSIBILITIES. | 85/513235 |
| | United States | ENDURA-FOAM | 85/122011 |
| ERECEIPTS | United States | ERECEIPTS with Design | 85/506513 |
| | United States | ESSENTIAL GARDEN | 86/035431 |
| | United States | ESSENTIAL HOME | 76/617219 |
| | United States | ESSENTIAL HOME | 77/403121 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A Pg 602 of 1450
FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | United States | ESSENTIAL HOME | 77/980108 |
|---|---|---|---|
| | United States | EVERY PAIR EARNS POINTS | 86/045425 |
| | United States | EVERYTHING YOU NEED. SAME DAY. | 85/349239 |
| | United States | EXPLORING MY AMERICA | 85/348235 |
| | United States | EXPRESSIONS | 75/796250 |
| | United States | FITSTUDIO | 85/211768 |
| | United States | FLAVOR FACTOR | 85/113209 |
| | United States | FLEETHANDLER | 77/570357 |
| | United States | FLEETHANDLER | 85/351301 |
| | United States | FLEXCORE | 78/088156 |
| | United States | FLEXJEANS | 73/393223 |
| | United States | FLEXSLAX | 73/392354 |
| | United States | FORECAST | 72/129412 |
| | United States | FORECAST MONTREAL | 87/288897 |

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:31   Exhibit A
Pg 603 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| | United States | FORECAST ST. PETERSBURG | 87/288932 |
| | United States | FOUNT | 86/819680 |
| | United States | FREE FRIDAY FIX | 86/862074 |
| | United States | FREEBIE SATURDAY | 86/780449 |
| | United States | FRESH LOOK | 73/163343 |
| | United States | FUN ON THE RUN! | 86/273202 |
| | United States | GARAGE HEAD | 87/488349 |
| | United States | GARAGE HEAD CLUB | 87/488419 |
| | United States | GARAGE HEAD DIY | 87/488524 |
| | United States | GARAGE HEAD LIFE | 87/488431 |
| | United States | GARAGE HEAD PRO | 87/488507 |
| | United States | GARAGE HEADS | 87/488538 |
| | United States | GARAGE HEADZ | 87/488546 |
| | United States | GARDEN OASIS | 78/164545 |

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | United States | GARDEN OASIS | 78/164844 |
|---|---|---|---|
| | United States | GET IN.  GET MORE. | 86/040313 |
| | United States | GIVE BACK TO THE STREET. GIVE BACK TO THE GAME. | 85/552350 |
| | United States | GOPASS | 85/456576 |
| | United States | GRAND HARBOR | 86/029205 |
| GRAND LUXE | United States | GRAND LUXE | 85/661217 |
| GRAND RESORT | United States | GRAND RESORT | 85/687818 |
| | United States | GRAND RESORT | 85/929977 |
| | United States | GRAND RESORT COLLECTION | 85/432798 |
|  | United States | GREEN LEADERSHIP TEAM SEARS HOLDINGS and Design | 85/137760 |
| | United States | GREY WOLF | 86/551640 |
| | United States | GRILLING IS HAPPINESS | 85/427246 |
| | United States | GUARDSMAN | 72/298253 |
| | United States | HALOGEN | 85/370513 |

| | | | |
|---|---|---|---|
| | United States | HAUNTED HALL | 85/970532 |
| | United States | HERITAGE NATION | 85/198586 |
| | United States | HEROES AT HOME | 77/150797 |
| | United States | HEROES AT HOME | 77/887701 |
| | United States | HOUSE EXPERTS FOR HOMEOWNERS | 86/725743 |
| | United States | HOW TO-DO IS DONE TODAY | 77/843129 |
| I♥COMFORT | United States | I COMFORT (with Heart Design) | 73/453800 |
| | United States | IMAGE ESSENTIALS | 76/056084 |
| | United States | IMAGE ESSENTIALS | 77/276403 |
| | United States | IMX COLLECTIVE | 87/402685 |
| | United States | ISLAND CLUB | 74/345672 |
| ISLANDER | United States | ISLANDER | 85/646335 |
| | United States | IT'S ABOUT TIME | 76/136939 |
| | United States | JEWELED JUBILEE | 85/214346 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A
Pg 576 of 1450

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | | | |
|---|---|---|---|
| | United States | JOSIE | 87/060738 |
| | United States | JUST CRAFTZ | 86/227446 |
| JUST DREAMZ | United States | JUST DREAMZ | 85/619304 |
| | United States | JUST KIDZ | 78/816929 |
| | United States | JUST SPLASH | 87/586160 |
|  | United States | K (STYLIZED) | 78/456446 |
| K DOLLAR | United States | K DOLLAR | 85/772905 |
|  | United States | K DOLLAR and Design (B&W) | 85/772890 |
|  | United States | K DOLLAR and Design (Color) | 85/772813 |
|  | United States | K KMART and Design (2004 Logo) | 78/425206 |
|  | United States | K KMART SUPERCENTER and Design (2004 Logo Red) | 77/547439 |
| | Virgin Islands (U.S.) | K MART | 8038 |
| | United States | K MART | 72/139867 |
| | Puerto Rico | K MART | 6949 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| | United States | K WASH | 77/896580 |
| | United States | KIDS PLAY | 75/929084 |
| | United States | KMART | 78/647764 |
| KMART | United States | KMART | 78/724261 |
| | United States | KMART | 78/920275 |
| kmart | United States | KMART (STYLIZED) | 86/565441 |
| kmart | United States | KMART (STYLIZED) | 78/459322 |
|  | United States | KMART and Design (1990 Logo Red) | 74/088966 |
|  | Virgin Islands (U.S.) | KMART and Design (1990 Logo) | n/a |
|  | United States | KMART and Design (1990 Logo) | 85/942361 |
|  | United States | KMART and Design (1990 Logo) | 74/088961 |
| | United States | KMART FOR KIDS | 77/734680 |
| | United States | KMART KARES | 86/035423 |
| | United States | KNIGHTS BRIDGE | 73/470384 |

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 15:44:32   Exhibit A
Pg 608 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | United States | KNIGHTSBRIDGE | 73/426604 |
|---|---|---|---|
| | United States | LAURA SCOTT | 86/642458 |
| | United States | LAURA SCOTT | 77/983156 |
| | United States | LAURA SCOTT | 77/871268 |
| | United States | LAYAWAY & GO | 87/008539 |
| LAYAWAY ANGELS | United States | LAYAWAY ANGELS | 85/502063 |
| | United States | LEATHER CONNECTION | 76/114299 |
| | United States | LET THE FUN BEGIN | 85/514155 |
| LIE LIKE A RUG | United States | LIE LIKE A RUG | 85/629837 |
| | United States | LIFE IS RIDICULOUSLY AWESOME | 86/780605 |
| liQR | United States | LIQR LOGO | 86/460239 |
| | United States | LITTLE ONES | 74/102348 |
| | United States | LITTLE ONES | 75/922300 |
| | United States | LITTLE ONES | 85/072681 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | United States | LITTLE WONDERS | 75/409982 |
|---|---|---|---|
| | United States | LIVE. EXPLORE. DISCOVER. | 85/524113 |
| | United States | LOCAL AD FACEOFF | 85/405105 |
| | United States | LOVE, ME | 85/358510 |
|  | United States | LOVE, ME (STYLIZED WITH DESIGN) | 85/358519 |
| | United States | MADRES Y COMADRES | 85/976382 |
|  | United States | MADRES Y COMADRES (STYLIZED WITH DESIGN) | 85/976390 |
| | United States | MARK JASON | 75/572833 |
| | United States | MASON GREEN | 86/029202 |
| | United States | MEMBER ASSIST | 85/851315 |
|  | United States | MEMBER ASSIST ICON | 85/886915 |
| | United States | MEMO-TECH | 85/122020 |
| | United States | METAPHOR | 76/008200 |
| | United States | METAPHOR | 86/642417 |

18-23538-rdd Doc 2507-1 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A
Pg 610 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| | United States | METAPHOR | 85/453435 |
| | United States | METASCALE | 85/513037 |
| | United States | METASCALE (STYLIZED WITH DESIGN) | 85/539466 |
| | United States | MIDNIGHT CLEAR | 85/273167 |
| | United States | MONARK (MONARCH) | 86/534583 |
| | United States | MONARK [MONARCH] | 85/498892 |
| | United States | MONARK Logo | 87/808891 |
| | United States | MONEY CAN'T BUY STYLE | 85/300993 |
| | United States | MONEYHUB | 85/976422 |
| | United States | MONEYHUB | 85/363426 |
| | United States | MONEYHUB (STYLIZED WITH DESIGN) | 85/976611 |
| | United States | MONEYHUB (STYLIZED WITH DESIGN) | 85/539489 |
| | United States | MOUNTAIN RAPIDS | 85/534876 |
| | United States | MY (STYLIZED WITH DESIGN) | 77/983092 |

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 611 of 1120

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | United States | MY SEARS | 77/694158 |
|---|---|---|---|
| | United States | MYGOFER | 78/908508 |
| | United States | MYGOFER | 77/462221 |
| | United States | MYGOFER | 77/628420 |
| | United States | MYGOFER | 77/578637 |
|  | United States | MYGOFER (STYLIZED WITH DESIGN) | 77/654166 |
| | United States | MYGOFER EXPRESS | 86/037645 |
|  | United States | MYGOFER EXPRESS and Design | 86/037660 |
| | United States | MYTHOUGHTS | 77/982025 |
| | United States | NEW ADDITIONS MATERNITY | 87/288829 |
| | United States | NICE TOUCH | 73/392292 |
|  | United States | NORTHWEST TERRITORY | 74/315754 |
| | United States | NORTHWEST TERRITORY | 85/932526 |
| | United States | NORTHWEST TERRITORY | 85/378846 |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| | United States | NOW + HERE | 86/356869 |
| | United States | NOW + HERE | 85/349280 |
| | United States | OCEAN AIR | 87/087280 |
| | United States | OCEAN AIR | 87/082864 |
| | United States | ONE LESS TRIP TO GET WHAT YOU NEED | 86/219117 |
| | United States | ONE STORE. ONE STOP. ONE SUPER IDEA. | 77/605366 |
| | United States | PARTNERS IN TRANSFORMATION | 86/273288 |
| | United States | PARTS DIRECT | 76/223501 |
| | United States | PARTSDIRECT | 77/514782 |
| PartsDirect | United States | PARTSDIRECT (Stylized) | 75/527476 |
| | United States | PASSALONG | 85/461610 |
| | United States | PASSION FOREVER | 77/522707 |
| | United States | PERFORMANCE SNAPSHOT | 86/327069 |
| | United States | PERFORMER | 73/163344 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | United States | PERSONAL IDENTITY | 75/328511 |
|---|---|---|---|
| PERSONAL SHOPPER | United States | PERSONAL SHOPPER BY SHOP YOUR WAY | 85/565643 |
| | United States | PERSONAL SHOPPER BY SHOP YOUR WAY (STYLIZED WITH DESIGN) | 85/565617 |
| | United States | PETK | 77/178268 |
| | United States | PIPER | 85/349093 |
| | United States | PIPER & BLUE | 77/318986 |
| | United States | PLATINUM 1460 | 86/285514 |
| PLATINUM 1460 | United States | PLATINUM 1460 (Stylized) | 86/285529 |
| | United States | PLAYTIME. ANYTIME. | 85/445091 |
| | United States | PLUS | 78/073600 |
| PLUS START | United States | PLUS START | 75/231650 |
| | United States | PLUS START | 85/768127 |
| | United States | POINTS FOR PROGRESS | 85/969544 |
| | United States | POINTS. PRIZES. PLAY! | 85/944180 |

18-23538-rdd   Doc 2307   Filed 02/08/19   Entered 02/08/19 15:44:32   Exhibit A
Pg 556 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | United States | POWER AHEAD | 87/686154 |
|---|---|---|---|
| | United States | POWERED BY SERVICELIVE | 87/085872 |
| | United States | PRAIRIE STONE | 74/221666 |
| | United States | PRETTY IN PAVÉ | 85/286586 |
| | United States | PRISM WHITE | 86/147467 |
| | United States | R1893 | 86/941824 |
| | United States | REAL LEADS. REAL WORK. REAL MONEY! | 85/565557 |
| | United States | REAL SPORT | 86/652820 |
| | United States | REDEEM YOUR WAY | 85/565573 |
| | United States | RESPONSE | 73/782928 |
| ROADHANDLER | United States | ROADHANDLER | 85/680989 |
| | United States | ROEBUCK & CO. | 85/270351 |
| | United States | ROEBUCK & CO. | 85/977422 |
| | United States | ROEBUCKS | 75/111087 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | United States | RULES OF THE ROAD | 86/077076 |
|---|---|---|---|
|  | United States | SAFETRAX | 74/635389 |
| | United States | SAFETRAX SHOE SOLE DESIGN | 77/199075 |
| | United States | SCARY SUITE | 85/947946 |
| | United States | SEARS | 86/259405 |
| | United States | SEARS | 86/152834 |
| | United States | SEARS | 73/733829 |
| | United States | SEARS | 78/190585 |
| | United States | SEARS | 78/315317 |
| | United States | SEARS | 78/315345 |
| | United States | SEARS | 78/315357 |
| | United States | SEARS | 74/160857 |
| | Guam | SEARS | SM-800-92-133 |
| sears | United States | sears (Stylized in lowercase font) | 85/706978 |

18-23538-rdd Doc 2307 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 556 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| | United States | SEARS (STYLIZED WITH DESIGN) | 78/496792 |
| | United States | SEARS (STYLIZED WITH DESIGN; BLUE AND RED) | 78/496864 |
| | United States | SEARS (Stylized with Storefront Design) | 75/698498 |
| | United States | SEARS (stylized) | 86/843757 |
| | United States | SEARS (STYLIZED) | 73/733998 |
| | United States | SEARS (STYLIZED) | 76/341374 |
| | United States | SEARS (STYLIZED) | 78/504405 |
| | United States | SEARS (STYLIZED) | 77/615019 |
| | United States | SEARS (STYLIZED; BLUE AND WHITE) | 77/600304 |
| | United States | SEARS (STYLIZED; BLUE AND WHITE) | 77/614972 |
| | United States | SEARS (STYLIZED; WHITE WITH BLUE BACKGROUND) | 77/600298 |
| | United States | SEARS APPLIANCE & HARDWARE | 85/086881 |
| | United States | SEARS AUTHORIZED HOMETOWN STORES | 77/589720 |
| | United States | SEARS AUTO CENTER | 77/854654 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A Pg 589 of 1150

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | United States | SEARS BLUE APPLIANCE CREW | 77/558243 |
|---|---|---|---|
| | United States | SEARS BLUE ELECTRONICS CREW | 77/558253 |
| | United States | SEARS BLUE SERVICE CREW | 77/558337 |
| | United States | SEARS CARD | 75/767723 |
| | United States | SEARS CENTRE | 78/557517 |
| Sears Centre | United States | SEARS CENTRE (STYLIZED WITH DESIGN) | 78/660159 |
| | United States | SEARS COMMERCIAL ONE | 78/718875 |
| | United States | SEARS CONNECT | 78/146411 |
| | United States | SEARS GLOBAL TECHNOLOGY | 86/345488 |
| | United States | SEARS GRAND | 78/205115 |
| | United States | SEARS HARDWARE | 85/576053 |
| | United States | SEARS HOME APPLIANCE SHOWROOM | 77/718790 |
| | United States | SEARS HOME APPLIANCE SHOWROOM | 77/718929 |
| | United States | SEARS HOMETOWN STORE | 77/623993 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | United States | SEARS MAINTENANCE ADVANTAGE | 77/813386 |
|---|---|---|---|
| | United States | SEARS MARKETPLACE | 77/899157 |
| | United States | SEARS PREMIER CARD | 75/706773 |
| | United States | SEARS ULTRA CARE | 75/342022 |
| | United States | SEARS-O-PEDIC | 76/189785 |
| | United States | SEARS-O-PEDIC | 72/023841 |
| | United States | SEGNO | 86/408751 |
| | United States | SEGNO SYSTEMS | 86/408760 |
| SENSES | United States | SENSES | 78/630024 |
| | United States | SERITAGE | 85/982134 |
| SERVEYOURWAY | United States | SERVEYOURWAY | 85/629853 |
| | United States | SERVICE WITH A HEALTHY DOSE OF CARE | 86/501243 |
| | United States | SERVICELIVE | 77/832260 |
| | United States | SERVICELIVE | 85/351671 |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | United States | SERVICELIVE DIRECT | 86/631093 |
|---|---|---|---|
| SERVING YOUR COMMUNITY YOUR WAY | United States | SERVING YOUR COMMUNITY YOUR WAY | 85/629862 |
| | United States | SHEER INTRIGUE | 76/233896 |
| | United States | SHIP MY PANTS | 85/906035 |
| | United States | SHO | 86/244913 |
| SHOP SMARTer | United States | SHOP SMARTER (Stylized) | 87/288956 |
| | United States | SHOP YOUR WAY | 85/968007 |
| | United States | SHOP YOUR WAY | 85/519001 |
| | United States | SHOP YOUR WAY | 85/814301 |
| SHOP YOUR WAY | United States | SHOP YOUR WAY and Design | 85/814007 |
| SHOP YOUR WAY | United States | SHOP YOUR WAY and Design | 85/814269 |
| SHOP YOUR WAY | United States | SHOP YOUR WAY and Design (new logo) | 85/968005 |
| SHOP YOUR WAY | United States | SHOP YOUR WAY and Design (new logo) | 85/968274 |
| | United States | SHOP YOUR WAY HEALTH | 86/164233 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM      2020L012403

| | | | |
|---|---|---|---|
| SHOP YOUR WAY MAX | United States | SHOP YOUR WAY MAX | 85/588080 |
| | United States | SHOP YOUR WAY PERSONAL SHOPPER | 85/565631 |
| SHOP YOUR WAY REWARDS | United States | SHOP YOUR WAY REWARDS with Design | 85/470521 |
| | United States | SHOPARAZZI | 86/854138 |
| | United States | SHOPBOLT | 87/021883 |
| SHOPIN | United States | SHOPIN | 85/784614 |
| SHOP'IN | United States | SHOP'IN | 85/787396 |
| shopin | United States | SHOP'IN and Design | 85/811470 |
| | United States | SHOPYOURWAY | 77/807216 |
| | United States | SHOPYOURWAY | 77/962501 |
| | United States | SHOS | 86/244916 |
| | United States | SIMPLY EMMA | 86/849562 |
| | United States | SIMPLY EMMA | 86/754384 |
| | United States | SIMPLY OUTDOORS | 85/604126 |

18-23538-rdd Doc 2307 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A
Pg 621 of 1120

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| | United States | SIMPLY OUTDOORS | 78/694895 |
| | United States | SIMPLY SATIN | 87/085488 |
| | United States | SIMPLY STYLED | 86/849574 |
| | United States | SK2 | 85/714282 |
|  | United States | SK2 APPAREL & Design | 85/714285 |
| | United States | SMALL WONDERS | 76/620528 |
| | United States | SMART PLAN | 76/555654 |
| | United States | SMART PLAN | 77/843134 |
| | United States | SMART PLAN | 85/144984 |
| | United States | SMART SENSE | 86/408705 |
| | United States | SMART SENSE | 77/983048 |
| | United States | SMART SENSE | 77/982852 |
| | United States | SMART SENSE | 85/976167 |
| | United States | SMART SENSE | 77/735593 |

18-23538-rdd  Doc 2507  Filed 02/08/19  Entered 02/08/19 16:44:32  Exhibit A
Pg 624 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | United States | SMART SENSE | 77/983567 |
|---|---|---|---|
|  | United States | SMART SENSE (STYLIZED WITH DESIGN) | 77/983371 |
|  | United States | SMART SENSE (STYLIZED WITH DESIGN) | 77/983270 |
| | United States | SOFT SHAPE | 73/752726 |
|  | United States | SOLE DESIGN (1) | 78/632155 |
| | United States | SOUNDBOARD | 86/977877 |
|  | United States | SOUNDBOARD and Design | 86/977876 |
| | United States | SPARKLE & TUX | 86/907030 |
| | United States | SPECTRUM PLUS | 78/477583 |
| | United States | SPECTRUM PLUS | 77/022344 |
| | United States | STANDARDS OF EXCELLENCE | 78/477718 |
|  | United States | STEER HEAD DESIGN | 74/589858 |
| | United States | STERLING CREATIONS | 74/161306 |
| | United States | STRATABEE | 87/294924 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| | United States | STREET LIGHTS | 75/278964 |
| STRUCTURE | Virgin Islands (U.S.) | STRUCTURE | n/a |
| STRUCTURE | Virgin Islands (U.S.) | STRUCTURE | n/a |
| STRUCTURE | United States | STRUCTURE | 73/789164 |
| STRUCTURE | United States | STRUCTURE | 74/027665 |
| STRUCTURE | United States | STRUCTURE | 85/924102 |
| STUDIO S | United States | STUDIO S | 85/349464 |
| STUDIO S | United States | STUDIO S | 85/349475 |
| style sip | United States | STYLE SIP (STYLIZED WITH DESIGN) | 85/080459 |
| STYLESIP | United States | STYLESIP | 85/080448 |
| SUMMER SIZZLERS | United States | SUMMER SIZZLERS | 85/516315 |
| | United States | SUPER 6 | 86/948344 |
| Super K | United States | SUPER KMART (STYLIZED WITH DESIGN; RED, BLUE AND ORANGE) | 75/509608 |
| SUSTAINABLE SOLUTIONS FROM OUR HOME TO YOURS | United States | SUSTAINABLE SOLUTIONS FROM OUR HOME TO YOURS | 85/209015 |

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 596 of 1150

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| | United States | SUTTON ROWE | 87/517824 |
| SYW MAX | United States | SYW MAX | 85/588089 |
| (bee logo) | United States | TASKER BEE LOGO | 87/288810 |
| | United States | TASKERBEE | 87/294881 |
| | United States | TEAM PRIDE | 73/708625 |
| TEAR-A-SIZE | United States | TEAR-A-SIZE | 85/244119 |
| TEXAS STEER | United States | TEXAS STEER | 74/269368 |
| | United States | THE BORROWING HUB | 87/182729 |
| | United States | THE GIVING HAT | 86/704679 |
| | United States | THE GREAT FIND | 86/095722 |
| THE GREAT INDOORS | United States | THE GREAT INDOORS | 75/284245 |
| the great indoors | United States | THE GREAT INDOORS STYLIZED | 76/341382 |
| | United States | THE PET BOUTIQUE AT SEARS | 86/600986 |
| THE PETITE SUITE | United States | THE PETITE SUITE | 85/013550 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 625 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| | United States | THE ROAD IS YOURS | 85/874268 |
| THE TOP 10 ADVANTAGE | United States | THE TOP 10 ADVANTAGE | 85/434202 |
| | United States | THERMO CORE | 87/067087 |
| | United States | THIS IS HOW I MALL | 86/924287 |
| THOM MCAN | United States | THOM MCAN | 75/434542 |
| THOM MCAN | Puerto Rico | THOM MCAN | 8616 |
| Thom McAn | Virgin Islands (U.S.) | THOM MCAN (STYLIZED) | n/a |
| Thom McAn | United States | THOM MCAN (STYLIZED) | 71/287086 |
| Thom McAn | United States | THOM MCAN (STYLIZED) | 72/148742 |
| THOM MCAN ULTRA FLEX | United States | THOM MCAN ULTRA FLEX | 78/435424 |
| | United States | THREE SILHOUETTES OF FLYING DUCKS DESIGN | 85/516337 |
| TIME SAVED MOMENTS MADE | United States | TIME SAVED, MOMENTS MADE. | 85/349221 |
| TKS | United States | TKS | 77/205552 |
| TKS | United States | TKS THE KIDS SOURCE THE KIDS SOURCE | 77/209995 |

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 626 of 1450

FILED DATE: 5/19/2021 1:27 PM        2020L012403

| | | | |
|---|---|---|---|
| TM | United States | TM (Stylized) | 75/814058 |
| TOOL TERRITORY | United States | TOOL TERRITORY | 75/611075 |
| TOTALLY GHOUL | United States | TOTALLY GHOUL | 77/022035 |
| TOUGHSKINS | United States | TOUGHSKINS | 73/298156 |
| TOUGHSKINS | United States | TOUGHSKINS | 78/647760 |
| TRADER BAY | United States | TRADER BAY | 78/912398 |
| TRADITION | United States | TRADITION | 85/076386 |
| TRADITION CHARMS | United States | TRADITION CHARMS | 85/169937 |
| | United States | TRAILHANDLER | 87/486168 |
| | United States | TRENDS READER | 86/039396 |
| TRIM A HOME | United States | TRIM A HOME | 77/334679 |
| TRIM A HOME | United States | TRIM A HOME WITH DESIGN | 77/833228 |
| TRIMMING TRADITIONS | United States | TRIMMING TRADITIONS | 85/981161 |
| | United States | TROPICAL ESCAPE | 75/251598 |

18-23538-rdd Doc 2507 Filed 02/06/19 Entered 02/06/19 16:44:31 Exhibit A
Pg 699 of 1120

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | United States | TRUSTED SERVICE EXPERTS, CONNECT WITH CONFIDENCE | 85/932531 |
|---|---|---|---|
|  | United States | TRY ON and Design | 86/019064 |
| | United States | TURBO HEAT DRY | 85/972556 |
| | United States | TWO HEARTS | 78/322216 |
| | United States | TWO HEARTS | 85/984136 |
| ULTIMATE FOOTBALL EXPERIENCE | United States | ULTIMATE FOOTBALL EXPERIENCE | 77/212224 |
| UNSUNG HEROES | United States | UNSUNG HEROES | 85/070482 |
|  | United States | UPSIDE DOWN SHOPPING CART DESIGN | 77/982632 |
|  | United States | UPSIDE DOWN SHOPPING CART DESIGN | 77/983088 |
|  | United States | UPSIDE DOWN SHOPPING CART DESIGN | 77/667432 |
| VEDERE LE STELLE | United States | VEDERE LE STELLE | 85/208986 |
| | United States | VITA-SMART | 74/093561 |
| | United States | WALLY | 87/049921 |
| | United States | WALLY | 86/130188 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| | United States | WALLY | 86/130185 |
| wally | United States | WALLY (Stylized) | 87/049968 |
| | United States | WALLY RAPID RESPONSE | 87/085865 |
| | United States | WALLYHOME | 87/050054 |
| | United States | WE DO GOOD BETTER | 87/289105 |
| WE DRIVE GREEN. WE USE PROPANE. | United States | WE DRIVE GREEN. WE USE PROPANE. | 85/568910 |
| WEATHERBEATER | United States | WEATHERBEATER (SLANTED) | 73/170774 |
| WEATHERBEATER ULTRA | United States | WEATHERBEATER ULTRA | 76/010359 |
| WEATHERHANDLER | United States | WEATHERHANDLER | 73/174892 |
| WEATHERHANDLER | United States | WEATHERHANDLER | 76/069899 |
| | United States | WEATHERWISE | 75/314243 |
| WHERE AMERICA LEARNS TO DRIVE | United States | WHERE AMERICA LEARNS TO DRIVE | 75/767722 |
| WHEREVER YOU BOUGHT IT - WE'LL REPAIR IT | United States | WHEREVER YOU BOUGHT IT - WE'LL REPAIR IT | 77/914675 |
| | United States | WIN IT! | 86/862101 |

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 629 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| WIN YOUR WAY | United States | WIN YOUR WAY | 85/675988 |
| | United States | WISH BOOK | 73/452509 |
| WONDERKIDS | United States | WONDERKIDS | 76/620348 |
| WONDERKIDS | United States | WONDERKIDS | 77/319086 |
| wonderkids | United States | WONDERKIDS (WITH DOG DESIGN) | 85/198573 |
| | United States | SEARS MAINTENANCE ADVANTAGE | 77/812463 |
| | United States | WEATHERBEATER | 78/272774 |
| | United States | WEATHERBEATER | 78/302869 |
| | United States | WONDERLITE | 75/389690 |
| WORK YOUR WAY | United States | WORK YOUR WAY | 85/707419 |
| WRAP YOURSELF IN PURE COMFORT | United States | WRAP YOURSELF IN PURE COMFORT | 75/921212 |
| | United States | WRAPPED IN RADIANCE | 86/754428 |
| X-CARGO | United States | X-CARGO | 85/294388 |
| XTREME REDEEM | United States | XTREME REDEEM | 85/045168 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

|  | United States | ZOE | 87/060747 |
|---|---|---|---|
| FABULOUSLY SIZED | United States | FABULOUSLY SIZED | 87/657788 |
| SEARS HOME IMPROVEMENT | United States | SEARS HOME IMPROVEMENT | 87/648226 |
| SEARS HOME IMPROVEMENT PRODUCTS | United States | SEARS HOME IMPROVEMENT PRODUCTS | 87/648261 |
| sears HOME IMPROVEMENT PRODUCTS | United States | SEARS HOME IMPROVEMENT PRODUCTS with House Design | 87/648245 |
| sears HOME IMPROVEMENT | United States | SEARS HOME IMPROVEMENT with House Design | 87/648219 |
| Sears Home Services | United States | SEARS HOME SERVICES | 87/628969 |
| sears HOME SERVICES | United States | SEARS HOME SERVICES (Stylized with Design) | 87/628983 |
| SYW RELAY | United States | SHOP YOUR WAY RELAY | 87/245749 |
| SYW RELAY | United States | SYW RELAY | 87/245703 |
| WALLYPRO | United States | WALLYPRO | 87/626806 |
|  | United States | GARAGE READY | 87/310023 |
|  | United States | LIVEMORE | 87/632835 |
| innovel | United States | INNOVEL | 88/097921 |

FILED DATE: 5/19/2021 1:27 PM     2020L012403

| | | | |
|---|---|---|---|
| | United States | LOVE WHERE YOU LIVE LOGO | 88/185361 |
| | United States | MMMM MONARK PREMIUM APPLIANCE CO | 87/808924 |
| | United States | MMMM MONARK | 87/809191 |
| | United States | MMMM MONARK | 87/812053 |
| AMERICA'S WORKBOOT HEADQUARTERS | United States | AMERICA'S WORKBOOT HEADQUARTERS | 87/876858 |
| SO, SEARS THE DEAL | United States | SO, SEARS THE DEAL | 88/037092 |
| SEARING HOT SALE | United States | SEARING HOT SALE | 88/037119 |
| SEARS PARTSDIRECT | United States | SEARS PARTSDIRECT | 88/050631 |
| sears PARTSDIRECT | United States | SEARS PARTSDIRECT | 88/050661 |
| INNOVEL | United States | INNOVEL | 88/097894 |
| | United States | SATIN CARESS | 75/192037 |
| | United States | TRICYCLE DESIGN | 85/976799 |
| | United States | TROPICAL ESCAPE | 75/251596 |
| HERITAGE NATION | United States | HERITAGE NATION | 85/976800 |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

*- items denoted with an asterisk are assigned solely to the extent of Sellers' right, title or interest the...

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Application Date | Registration Number | Registration Date | Owner |
|---|---|---|---|
| 06/11/1997 | 2382062 | 09/05/2000 | SEARS BRANDS, L.L.C. |
| 10/29/2010 | 4050628 | 11/01/2011 | SEARS BRANDS, L.L.C. |
| 06/10/2002 | 2691207 | 02/25/2003 | SEARS BRANDS, L.L.C. |
| 02/09/2001 | 2620231 | 09/17/2002 | SEARS BRANDS, L.L.C. |
| 01/31/2006 | 3232805 | 04/24/2007 | SEARS BRANDS, L.L.C. |
| 04/16/2012 | 4463390 | 01/07/2014 | SEARS BRANDS, L.L.C. |
| 05/21/2002 | 2811413 | 02/03/2004 | SEARS BRANDS, L.L.C. |
| 12/07/2001 | 2748806 | 08/05/2003 | SEARS BRANDS, L.L.C. |
| 10/15/2003 | 2941732 | 04/19/2005 | SEARS BRANDS, L.L.C. |
| 05/21/2002 | 2811414 | 02/03/2004 | SEARS BRANDS, L.L.C. |
| 11/10/2000 | 2610542 | 08/20/2002 | SEARS BRANDS, L.L.C. |
| 10/19/2007 | 3677156 | 09/01/2009 | SEARS BRANDS, L.L.C. |
| 06/05/2016 | | | SEARS BRANDS, L.L.C. |

18-23538-shl Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 634 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 05/28/2010 | 4203780 | 09/04/2012 | SEARS BRANDS, L.L.C. |
| 03/31/2011 | 4056014 | 11/15/2011 | SEARS BRANDS, L.L.C. |
| 08/20/2012 | 4429782 | 11/05/2013 | SEARS BRANDS, L.L.C. |
| 06/05/2016 | 5297538 | 09/26/2017 | SEARS BRANDS, L.L.C. |
| 07/27/1995 | 2091873 | 08/26/1997 | SEARS BRANDS, L.L.C. |
| 12/23/2008 | 3738907 | 01/19/2010 | SEARS BRANDS, L.L.C. |
| 01/10/2001 | 2667384 | 12/24/2002 | SEARS BRANDS, L.L.C. |
| 11/02/2009 | 4096586 | 02/07/2012 | SEARS BRANDS, L.L.C. |
| 02/01/2010 | 4119054 | 03/27/2012 | SEARS BRANDS, L.L.C. |
| 02/01/2010 | 4415096 | 10/08/2013 | SEARS BRANDS, L.L.C. |
| 02/08/2010 | 4126018 | 04/10/2012 | SEARS BRANDS, L.L.C. |
| 02/09/2010 | 4418845 | 10/15/2013 | SEARS BRANDS, L.L.C. |
| 02/09/2010 | 4135999 | 05/01/2012 | SEARS BRANDS, L.L.C. |
| 02/09/2010 | 4418846 | 10/15/2013 | SEARS BRANDS, L.L.C. |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 635 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 06/05/2016 | 5282352 | 09/05/2017 | SEARS BRANDS, L.L.C. |
| 08/29/1988 | 1540405 | 05/23/1989 | SEARS BRANDS, L.L.C. |
| 01/16/2001 | 2664261 | 12/17/2002 | SEARS BRANDS, L.L.C. |
| 03/15/2005 | 3070804 | 03/21/2006 | SEARS BRANDS, L.L.C. |
| 09/26/1994 | 1922712 | 09/26/1995 | SEARS BRANDS, L.L.C. |
| 06/17/2011 | 4317745 | 04/09/2013 | SEARS BRANDS, L.L.C. |
| 01/27/2006 | 3236497 | 05/01/2007 | SEARS BRANDS, L.L.C. |
| 09/10/1999 | 2355382 | 06/06/2000 | SEARS BRANDS, L.L.C. |
| 09/13/2004 | 3069838 | 03/21/2006 | SEARS BRANDS, L.L.C. |
| 11/06/2007 | 3680515 | 09/08/2009 | SEARS BRANDS, L.L.C. |
| 06/27/2016 | | | SEARS BRANDS, L.L.C. |
| 12/21/2004 | 3350644 | 12/11/2007 | SEARS BRANDS, L.L.C. |
| 12/21/2005 | 3232768 | 04/24/2007 | SEARS BRANDS, L.L.C. |
| 01/10/2012 | 4560681 | 07/01/2014 | SEARS BRANDS, L.L.C. |

18-23538-rdd    Doc 2507    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 636 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 07/26/2000 | 2586341 | 06/25/2002 | SEARS BRANDS, L.L.C. |
| 01/10/2017 | | | SEARS BRANDS, L.L.C. |
| 06/15/1998 | 2288771 | 10/26/1999 | SEARS BRANDS, L.L.C. |
| 09/20/2000 | 2592739 | 07/09/2002 | SEARS BRANDS, L.L.C. |
| 09/20/2000 | 2650295 | 11/12/2002 | SEARS BRANDS, L.L.C. |
| 11/17/2006 | 3600811 | 04/07/2009 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 3862866 | 10/19/2010 | SEARS BRANDS, L.L.C. |
| 09/24/1980 | 1179644 | 11/24/1981 | SEARS BRANDS, L.L.C. |
| 02/12/2016 | 5346916 | 11/28/2017 | SEARS BRANDS, L.L.C. |
| 03/02/1989 | 1631672 | 01/15/1991 | SEARS BRANDS, L.L.C. |
| 08/20/2013 | 4501791 | 03/25/2014 | SEARS BRANDS, L.L.C. |
| 06/05/2015 | 5138248 | 02/07/2017 | SEARS BRANDS, L.L.C. |
| 08/24/2016 | 5254478 | 08/01/2017 | SEARS BRANDS, L.L.C. |
| 09/26/2016 | | | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 09/26/2016 | 5254603 | 08/01/2017 | SEARS BRANDS, L.L.C. |
| 05/03/2013 | 4554532 | 06/24/2014 | SEARS BRANDS, L.L.C. |
| 05/11/2016 | | | SEARS BRANDS, L.L.C. |
| 07/19/2007 | 3531920 | 11/11/2008 | SEARS BRANDS, L.L.C. |
| 02/28/2012 | 4625300 | 10/21/2014 | SEARS BRANDS, L.L.C. |
| 03/22/1993 | 1836244 | 05/10/1994 | SEARS BRANDS, L.L.C. |
| 09/21/1989 | 1687912 | 05/19/1992 | SEARS BRANDS, L.L.C. |
| 10/24/1995 | 2006147 | 10/08/1996 | SEARS BRANDS, L.L.C. |
| 01/21/2002 | 2666208 | 12/24/2002 | SEARS BRANDS, L.L.C. |
| 06/06/2016 | 5282354 | 09/05/2017 | SEARS BRANDS, L.L.C. |
| 09/25/2014 | 5365661 | 12/26/2017 | SEARS BRANDS, L.L.C. |
| 09/25/2014 | 5541235 | 08/14/2018 | SEARS BRANDS, L.L.C. |
| 09/25/2014 | 5111890 | 01/03/2017 | SEARS BRANDS, L.L.C. |
| 09/25/2014 | 5267027 | 08/15/2017 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 09/25/2014 | 5541236 | 08/14/2018 | SEARS BRANDS, L.L.C. |
| 09/25/2014 | 5111891 | 01/03/2017 | SEARS BRANDS, L.L.C. |
| 10/26/2009 | 3872292 | 11/09/2010 | SEARS BRANDS, L.L.C. |
| 04/14/2010 | 3986818 | 06/28/2011 | SEARS BRANDS, L.L.C. |
| 09/23/2014 | 4839704 | 10/27/2015 | SEARS BRANDS, L.L.C. |
| 05/12/1921 | 151287 | 01/24/1922 | SEARS BRANDS, L.L.C. |
| 01/24/1980 | 1168509 | 09/08/1981 | SEARS BRANDS, L.L.C. |
| 04/26/2006 | 68606 | 06/21/2007 | SEARS BRANDS, L.L.C. |
| 03/22/2013 | 4645857 | 11/25/2014 | SEARS BRANDS, L.L.C. |
| 10/17/2014 | 4865521 | 12/08/2015 | SEARS BRANDS, L.L.C. |
| 12/05/1996 | 2353952 | 05/30/2000 | SEARS BRANDS, L.L.C. |
| 12/06/1996 | 2191817 | 09/29/1998 | SEARS BRANDS, L.L.C. |
| 12/04/2006 | 3257650 | 07/03/2007 | SEARS BRANDS, L.L.C. |
| 03/02/2002 | 2645755 | 11/05/2002 | SEARS BRANDS, L.L.C. |

18-23538-shl   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 02/28/2014 | 4640090 | 11/18/2014 | SEARS BRANDS, L.L.C. |
| 05/07/2014 | 4715039 | 04/07/2015 | SEARS BRANDS, L.L.C. |
| 06/30/2014 | 4788635 | 08/11/2015 | SEARS BRANDS, L.L.C. |
| 04/07/2015 | 4858512 | 11/24/2015 | SEARS BRANDS, L.L.C. |
| 10/11/2001 | 2804694 | 01/13/2004 | SEARS BRANDS, L.L.C. |
| 11/13/2001 | 2791051 | 12/09/2003 | SEARS BRANDS, L.L.C. |
| 04/18/2002 | 2744641 | 07/29/2003 | SEARS BRANDS, L.L.C. |
| 04/23/2015 | 5037407 | 09/06/2016 | SEARS BRANDS, L.L.C. |
| 02/09/1998 | 2289907 | 11/02/1999 | SEARS BRANDS, L.L.C. |
| 06/17/2011 | 4269013 | 01/01/2013 | SEARS BRANDS, L.L.C. |
| 11/29/2011 | 4290035 | 02/12/2013 | SEARS BRANDS, L.L.C. |
| 05/31/1994 | 2065389 | 05/27/1997 | SEARS BRANDS, L.L.C. |
| 04/17/2014 | 4740601 | 05/19/2015 | SEARS BRANDS, L.L.C. |
| 08/22/2013 | 4630880 | 11/04/2014 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| 11/02/2012 | 4435081 | 11/19/2013 | SEARS BRANDS, L.L.C. |
|---|---|---|---|
| 05/24/2012 | 4401203 | 09/10/2013 | SEARS BRANDS, L.L.C. |
| 04/06/2012 | 4485739 | 02/18/2014 | SEARS BRANDS, L.L.C. |
| 09/09/2011 | 4339415 | 05/21/2013 | SEARS BRANDS, L.L.C. |
| 01/03/2012 | 4296419 | 02/26/2013 | SEARS BRANDS, L.L.C. |
| 05/28/2014 | 4681141 | 02/03/2015 | SEARS BRANDS, L.L.C. |
| 02/26/1998 | 2249344 | 06/01/1999 | SEARS BRANDS, L.L.C. |
| 05/24/1999 | 2381986 | 08/29/2000 | SEARS BRANDS, L.L.C. |
| 11/14/2012 | 4367824 | 07/16/2013 | SEARS BRANDS, L.L.C. |
| 12/15/2010 | 4172424 | 07/10/2012 | SEARS BRANDS, L.L.C. |
| 10/29/2015 | 5125523 | 01/17/2017 | SEARS BRANDS, L.L.C. |
| 11/15/2012 | 4512718 | 04/08/2014 | SEARS BRANDS, L.L.C. |
| 09/22/2015 | 5062226 | 10/18/2016 | SEARS BRANDS, L.L.C. |
| 06/30/2015 | 4881655 | 01/05/2016 | SEARS BRANDS, L.L.C. |

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 641 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| 06/30/2015 | 4991536 | 07/05/2016 | SEARS BRANDS, L.L.C. |
|---|---|---|---|
| 12/28/2011 | 4290104 | 02/12/2013 | SEARS BRANDS, L.L.C. |
| 02/21/2012 | 4437125 | 11/19/2013 | SEARS BRANDS, L.L.C. |
| 07/12/2011 | 4303576 | 03/19/2013 | SEARS BRANDS, L.L.C. |
| 12/26/1973 | 1000445 | 12/31/1974 | SEARS BRANDS, L.L.C. |
| 05/09/2006 | 3209198 | 02/13/2007 | SEARS BRANDS, L.L.C. |
| 06/16/2011 | 4505705 | 04/01/2014 | SEARS BRANDS, L.L.C. |
| 01/03/2011 | 4061492 | 11/22/2011 | SEARS BRANDS, L.L.C. |
| 01/10/2012 | 4419180 | 10/15/2013 | SEARS BRANDS, L.L.C. |
| 09/02/2010 | 4013837 | 08/16/2011 | SEARS BRANDS, L.L.C. |
| 12/30/2011 | 4294497 | 02/26/2013 | SEARS BRANDS, L.L.C. |
| 08/12/2013 | 4650055 | 12/02/2014 | SEARS BRANDS, L.L.C. |
| 10/21/2004 | 3655079 | 07/14/2009 | SEARS BRANDS, L.L.C. |
| 02/21/2008 | 4035294 | 10/04/2011 | SEARS BRANDS, L.L.C. |

18-23538-shl  Doc 2507-1  Filed 02/08/19  Entered 02/08/19 16:44:32  Exhibit A
Pg 642 of 1450

FILED DATE: 5/19/2021 1:27 PM  2020L012403

| | | | |
|---|---|---|---|
| 02/21/2008 | 3862126 | 10/12/2010 | SEARS BRANDS, L.L.C. |
| 08/22/2013 | 4630878 | 11/04/2014 | SEARS BRANDS, L.L.C. |
| 06/17/2011 | 4215050 | 09/25/2012 | SEARS BRANDS, L.L.C. |
| 06/16/2011 | 4174140 | 07/17/2012 | SEARS BRANDS, L.L.C. |
| 09/10/1999 | 2408351 | 11/28/2000 | SEARS BRANDS, L.L.C. |
| 01/06/2011 | 4071896 | 12/13/2011 | SEARS BRANDS, L.L.C. |
| 08/23/2010 | 4013792 | 08/16/2011 | SEARS BRANDS, L.L.C. |
| 09/15/2008 | 3998531 | 07/19/2011 | SEARS BRANDS, L.L.C. |
| 06/21/2011 | 4196883 | 08/28/2012 | SEARS BRANDS, L.L.C. |
| 10/12/2001 | 2660906 | 12/10/2002 | SEARS BRANDS, L.L.C. |
| 09/29/1982 | 1260083 | 12/06/1983 | SEARS BRANDS, L.L.C. |
| 09/29/1982 | 1260080 | 12/06/1983 | SEARS BRANDS, L.L.C. |
| 10/07/1961 | 735838 | 08/14/1962 | SEARS BRANDS, L.L.C. |
| 01/04/2017 | 5586933 | 10/16/2018 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 01/04/2017 | 5586934 | 10/16/2018 | SEARS BRANDS, L.L.C. |
| 11/13/2015 | 5324434 | 10/31/2017 | SEARS BRANDS, L.L.C. |
| 12/30/2015 | 5117464 | 01/10/2017 | SEARS BRANDS, L.L.C. |
| 10/07/2015 | 5197525 | 05/02/2017 | SEARS BRANDS, L.L.C. |
| 03/23/1978 | 1115105 | 03/20/1979 | SEARS BRANDS, L.L.C. |
| 05/06/2014 | 4645256 | 11/25/2014 | SEARS BRANDS, L.L.C. |
| 06/14/2017 | | | SEARS BRANDS, L.L.C. |
| 06/14/2017 | | | SEARS BRANDS, L.L.C. |
| 06/14/2017 | | | SEARS BRANDS, L.L.C. |
| 06/14/2017 | | | SEARS BRANDS, L.L.C. |
| 06/14/2017 | | | SEARS BRANDS, L.L.C. |
| 06/14/2017 | | | SEARS BRANDS, L.L.C. |
| 06/14/2017 | | | SEARS BRANDS, L.L.C. |
| 09/16/2002 | 2814970 | 02/17/2004 | SEARS BRANDS, L.L.C. |

18-23538-shl   Doc 2307   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 09/17/2002 | 2810511 | 02/03/2004 | SEARS BRANDS, L.L.C. |
| 08/16/2013 | 4642219 | 11/18/2014 | SEARS BRANDS, L.L.C. |
| 02/24/2012 | 4311799 | 04/02/2013 | SEARS BRANDS, L.L.C. |
| 10/26/2011 | 4396822 | 09/03/2013 | SEARS BRANDS, L.L.C. |
| 08/05/2013 | 4881990 | 01/05/2016 | SEARS BRANDS, L.L.C. |
| 06/26/2012 | 4377586 | 07/30/2013 | SEARS BRANDS, L.L.C. |
| 07/26/2012 | 4402575 | 09/17/2013 | SEARS BRANDS, L.L.C. |
| 05/13/2013 | 4700440 | 03/10/2015 | SEARS BRANDS, L.L.C. |
| 09/27/2011 | 4255023 | 12/04/2012 | SEARS BRANDS, L.L.C. |
| 09/24/2010 | 4321400 | 04/16/2013 | SEARS BRANDS, L.L.C. |
| 03/03/2015 | 5464869 | 05/08/2018 | SEARS BRANDS, L.L.C. |
| 09/20/2011 | 4258798 | 12/11/2012 | SEARS BRANDS, L.L.C. |
| 05/15/1968 | 865339 | 02/25/1969 | SEARS BRANDS, L.L.C. |
| 07/13/2011 | 4193131 | 08/21/2012 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 06/26/2013 | 4720816 | 04/14/2015 | SEARS BRANDS, L.L.C. |
| 12/15/2010 | 4292824 | 02/19/2013 | SEARS BRANDS, L.L.C. |
| 04/06/2007 | 3481593 | 08/05/2008 | SEARS BRANDS, L.L.C. |
| 12/07/2009 | 4016471 | 08/23/2011 | SEARS BRANDS, L.L.C. |
| 08/14/2015 | 5009775 | 07/26/2016 | SEARS BRANDS, L.L.C. |
| 10/07/2009 | 3923915 | 02/22/2011 | SEARS BRANDS, L.L.C. |
| 11/21/1983 | 1325978 | 03/19/1985 | SEARS BRANDS, L.L.C. |
| 05/24/2000 | 2623010 | 09/24/2002 | SEARS BRANDS, L.L.C. |
| 09/11/2007 | 3803588 | 06/15/2010 | SEARS BRANDS, L.L.C. |
| 04/07/2017 | | | SEARS BRANDS, L.L.C. |
| 01/06/1993 | 1792700 | 09/14/1993 | SEARS BRANDS, L.L.C. |
| 06/07/2012 | 4686597 | 02/17/2015 | SEARS BRANDS, L.L.C. |
| 09/29/2000 | 2590786 | 07/09/2002 | SEARS BRANDS, L.L.C. |
| 01/10/2011 | 4214668 | 09/25/2012 | SEARS BRANDS, L.L.C. |

18-23538-shl   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 646 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 06/06/2016 | 5297539 | 09/26/2017 | SEARS BRANDS, L.L.C. |
| 03/20/2014 | 4778276 | 07/21/2015 | SEARS BRANDS, L.L.C. |
| 05/08/2012 | 4389161 | 08/20/2013 | SEARS BRANDS, L.L.C. |
| 02/16/2006 | 3260401 | 07/10/2007 | SEARS BRANDS, L.L.C. |
| 08/28/2017 | | | SEARS BRANDS, L.L.C. |
| 07/26/2004 | 3514052 | 10/07/2008 | SEARS BRANDS, L.L.C. |
| 11/06/2012 | 4367646 | 07/16/2013 | SEARS BRANDS, L.L.C. |
| 11/06/2012 | 4367644 | 07/16/2013 | SEARS BRANDS, L.L.C. |
| 11/06/2012 | 4338821 | 05/21/2013 | SEARS BRANDS, L.L.C. |
| 05/26/2004 | 3048959 | 01/24/2006 | SEARS BRANDS, L.L.C. |
| 08/14/2008 | 3630204 | 06/02/2009 | SEARS BRANDS, L.L.C. |
| 01/15/2003 | 8038 | 01/15/2003 | SEARS BRANDS, L.L.C. |
| 03/14/1962 | 743912 | 01/15/1963 | SEARS BRANDS, L.L.C. |
| 01/15/2003 | 6949 | 01/15/2003 | SEARS BRANDS, L.L.C. |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 12/18/2009 | 3929806 | 03/08/2011 | SEARS BRANDS, L.L.C. |
| 02/28/2000 | 2414215 | 12/19/2000 | SEARS BRANDS, L.L.C. |
| 06/09/2005 | 3093223 | 05/16/2006 | SEARS BRANDS, L.L.C. |
| 09/30/2005 | 3141789 | 09/12/2006 | SEARS BRANDS, L.L.C. |
| 06/29/2006 | 3297947 | 09/25/2007 | SEARS BRANDS, L.L.C. |
| 03/16/2015 | 4831893 | 10/13/2015 | SEARS BRANDS, L.L.C. |
| 07/30/2004 | 3366601 | 01/08/2008 | SEARS BRANDS, L.L.C. |
| 08/17/1990 | 1695014 | 06/16/1992 | SEARS BRANDS, L.L.C. |
| | 7996 | 08/25/1992 | SEARS BRANDS, L.L.C. |
| 05/24/2013 | 4443914 | 12/03/2013 | SEARS BRANDS, L.L.C. |
| 08/17/1990 | 1710545 | 08/25/1992 | SEARS BRANDS, L.L.C. |
| 05/12/2009 | 4006632 | 08/02/2011 | SEARS BRANDS, L.L.C. |
| 08/12/2013 | 4553309 | 06/17/2014 | SEARS BRANDS, L.L.C. |
| 03/15/1984 | 1516436 | 12/13/1988 | SEARS BRANDS, L.L.C. |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 45:44:32 Exhibit A Pg 648 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 05/19/1983 | 1508211 | 10/11/1988 | SEARS BRANDS, L.L.C. |
| 05/27/2015 | 4926040 | 03/29/2016 | SEARS BRANDS, L.L.C. |
| 11/12/2009 | 4161660 | 06/19/2012 | SEARS BRANDS, L.L.C. |
| 11/12/2009 | 4206318 | 09/11/2012 | SEARS BRANDS, L.L.C. |
| 04/20/2016 | 5174921 | 04/04/2017 | SEARS BRANDS, L.L.C. |
| 12/22/2011 | 4518202 | 04/22/2014 | SEARS BRANDS, L.L.C. |
| 08/22/2000 | 2487368 | 09/11/2001 | SEARS BRANDS, L.L.C. |
| 01/11/2012 | 4419183 | 10/15/2013 | SEARS BRANDS, L.L.C. |
| 05/18/2012 | 4250202 | 11/27/2012 | SEARS BRANDS, L.L.C. |
| 10/07/2015 | 5228845 | 06/20/2017 | SEARS BRANDS, L.L.C. |
| 11/20/2014 | | | SEARS BRANDS, L.L.C. |
| 10/01/1990 | 1653420 | 08/13/1991 | SEARS BRANDS, L.L.C. |
| 02/18/2000 | 2414190 | 12/19/2000 | SEARS BRANDS, L.L.C. |
| 06/28/2010 | 3925185 | 03/01/2011 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 12/23/1997 | 2439772 | 04/03/2001 | SEARS BRANDS, L.L.C. |
| 01/24/2012 | 4329155 | 04/30/2013 | SEARS BRANDS, L.L.C. |
| 08/23/2011 | 4212695 | 09/25/2012 | SEARS BRANDS, L.L.C. |
| 06/28/2011 | 4203416 | 09/04/2012 | SEARS BRANDS, L.L.C. |
| 06/28/2011 | 4203417 | 09/04/2012 | SEARS BRANDS, L.L.C. |
| 05/12/2011 | 4133253 | 04/24/2012 | SEARS BRANDS, L.L.C. |
| 05/12/2011 | 4286356 | 02/05/2013 | SEARS BRANDS, L.L.C. |
| 10/19/1998 | 2305971 | 01/04/2000 | SEARS BRANDS, L.L.C. |
| 08/05/2013 | 4874847 | 12/22/2015 | SEARS BRANDS, L.L.C. |
| 02/15/2013 | 4406773 | 09/24/2013 | SEARS BRANDS, L.L.C. |
| 03/26/2013 | 4472552 | 01/21/2014 | SEARS BRANDS, L.L.C. |
| 09/02/2010 | 4605715 | 09/16/2014 | SEARS BRANDS, L.L.C. |
| 03/24/2000 | 2729666 | 06/24/2003 | SEARS, ROEBUCK AND CO. |
| 05/27/2015 | 4966231 | 05/24/2016 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 10/21/2011 | 4377125 | 07/30/2013 | SEARS BRANDS, L.L.C. |
| 01/10/2012 | 4411684 | 10/01/2013 | SEARS BRANDS, L.L.C. |
| 02/10/2012 | 4411724 | 10/01/2013 | SEARS BRANDS, L.L.C. |
| 03/22/2011 | 4111143 | 03/13/2012 | SEARS BRANDS, L.L.C. |
| 02/13/2015 | 5223609 | 06/13/2017 | SEARS BRANDS, L.L.C. |
| 12/19/2011 | 4146821 | 05/22/2012 | SEARS BRANDS, L.L.C. |
| 02/23/2018 | 5575256 | 10/02/2018 | SEARS BRANDS, L.L.C. |
| 04/21/2011 | 4172732 | 07/10/2012 | SEARS BRANDS, L.L.C. |
| 07/05/2011 | 4155828 | 06/05/2012 | SEARS BRANDS, L.L.C. |
| 07/05/2011 | 4269048 | 01/01/2013 | SEARS BRANDS, L.L.C. |
| 02/10/2012 | 4484627 | 02/18/2014 | SEARS BRANDS, L.L.C. |
| 02/10/2012 | 4483318 | 02/18/2014 | SEARS BRANDS, L.L.C. |
| 02/06/2012 | 4311676 | 04/02/2013 | SEARS BRANDS, L.L.C. |
| 01/13/2010 | 4147410 | 05/22/2012 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | | | |
|---|---|---|---|
| 03/18/2009 | 4006597 | 08/02/2011 | SEARS BRANDS, L.L.C. |
| 06/14/2006 | 3559110 | 01/06/2009 | SEARS BRANDS, L.L.C. |
| 04/30/2008 | 3530939 | 11/11/2008 | SEARS BRANDS, L.L.C. |
| 12/08/2008 | 3929026 | 03/08/2011 | SEARS BRANDS, L.L.C. |
| 09/25/2008 | 4342790 | 05/28/2013 | SEARS BRANDS, L.L.C. |
| 01/22/2009 | 3931620 | 03/15/2011 | SEARS BRANDS, L.L.C. |
| 08/14/2013 | 4517532 | 04/22/2014 | SEARS BRANDS, L.L.C. |
| 08/14/2013 | 4517533 | 04/22/2014 | SEARS BRANDS, L.L.C. |
| 04/29/2009 | 3986747 | 06/28/2011 | SEARS BRANDS, L.L.C. |
| 01/04/2017 | 5444362 | 04/10/2018 | SEARS BRANDS, L.L.C. |
| 09/29/1982 | 1260079 | 12/06/1983 | SEARS BRANDS, L.L.C. |
| 09/21/1992 | 1770115 | 05/11/1993 | SEARS BRANDS, L.L.C. |
| 05/15/2013 | 4898921 | 02/09/2016 | SEARS BRANDS, L.L.C. |
| 07/22/2011 | 4234937 | 10/30/2012 | SEARS BRANDS, L.L.C. |

18-23538-shl   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 08/04/2014 | 4667747 | 01/06/2015 | SEARS BRANDS, L.L.C. |
| 06/17/2011 | 4621448 | 10/14/2014 | SEARS BRANDS, L.L.C. |
| 06/28/2016 | 5262423 | 08/08/2017 | SEARS BRANDS, L.L.C. |
| 06/24/2016 | 5257625 | 08/01/2017 | SEARS BRANDS, L.L.C. |
| 03/12/2014 | 4597296 | 09/02/2014 | SEARS BRANDS, L.L.C. |
| 10/31/2008 | 3631185 | 06/02/2009 | SEARS BRANDS, L.L.C. |
| 05/06/2014 | 4767115 | 07/07/2015 | SEARS BRANDS, L.L.C. |
| 03/12/2001 | 2590073 | 07/02/2002 | SEARS BRANDS, L.L.C. |
| 07/03/2008 | 3662758 | 08/04/2009 | SEARS BRANDS, L.L.C. |
| 07/29/1998 | 2341996 | 04/11/2000 | SEARS BRANDS, L.L.C. |
| 11/01/2011 | 4219701 | 10/02/2012 | SEARS BRANDS, L.L.C. |
| 07/15/2008 | 3775568 | 04/13/2010 | SEARS BRANDS, L.L.C. |
| 07/02/2014 | 4914554 | 03/08/2016 | SEARS BRANDS, L.L.C. |
| 03/23/1978 | 1114324 | 03/06/1979 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 07/22/1997 | 2239671 | 04/13/1999 | SEARS BRANDS, L.L.C. |
| 03/09/2012 | 4440882 | 11/26/2013 | SEARS BRANDS, L.L.C. |
| 03/09/2012 | 4440881 | 11/26/2013 | SEARS BRANDS, L.L.C. |
| 05/10/2007 | 3499758 | 09/09/2008 | SEARS BRANDS, L.L.C. |
| 06/17/2011 | 4739289 | 05/19/2015 | SEARS BRANDS, L.L.C. |
| 11/01/2007 | 3673722 | 08/25/2009 | SEARS BRANDS, L.L.C. |
| 05/19/2014 | 4758664 | 06/23/2015 | SEARS BRANDS, L.L.C. |
| 05/19/2014 | 4767195 | 07/07/2015 | SEARS BRANDS, L.L.C. |
| 10/12/2011 | 4142753 | 05/15/2012 | SEARS BRANDS, L.L.C. |
| 07/12/2001 | 2603010 | 07/30/2002 | SEARS BRANDS, L.L.C. |
| 01/27/1997 | 2217728 | 01/12/1999 | SEARS BRANDS, L.L.C. |
| 10/31/2012 | 4431246 | 11/12/2013 | SEARS BRANDS, L.L.C. |
| 06/25/2013 | 4696679 | 03/03/2015 | SEARS BRANDS, L.L.C. |
| 05/28/2013 | 4462589 | 01/07/2014 | SEARS BRANDS, L.L.C. |

18-23538-shl   Doc 9507-1   Filed 02/08/15   Entered 02/08/19 45:44:32   Exhibit A
Pg 654 of 1150

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 11/15/2017 | 5464681 | 05/08/2018 | SEARS BRANDS, L.L.C. |
| 06/28/2016 | | | SEARS BRANDS, L.L.C. |
| 11/15/1991 | 1779400 | 06/29/1993 | SEARS BRANDS, L.L.C. |
| 04/05/2011 | 4234728 | 10/30/2012 | SEARS BRANDS, L.L.C. |
| 12/18/2013 | 4713612 | 03/31/2015 | SEARS BRANDS, L.L.C. |
| 03/16/2016 | 5336121 | 11/14/2017 | SEARS BRANDS, L.L.C. |
| 03/09/2012 | 4315894 | 04/09/2013 | SEARS BRANDS, L.L.C. |
| 06/05/2015 | 5138249 | 02/07/2017 | SEARS BRANDS, L.L.C. |
| 03/09/2012 | 4315895 | 04/09/2013 | SEARS BRANDS, L.L.C. |
| 02/27/1989 | 1609697 | 08/14/1990 | SEARS BRANDS, L.L.C. |
| 07/18/2012 | 4341399 | 05/28/2013 | SEARS BRANDS, L.L.C. |
| 03/18/2011 | 4739275 | 05/19/2015 | SEARS BRANDS, L.L.C. |
| 03/18/2011 | 4223428 | 10/09/2012 | SEARS BRANDS, L.L.C. |
| 05/28/1996 | 2040785 | 02/25/1997 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| 09/27/2013 | 4633890 | 11/04/2014 | SEARS BRANDS, L.L.C. |
| 02/18/1995 | 2007108 | 10/08/1996 | SEARS BRANDS, L.L.C. |
| 06/07/2007 | 3411150 | 04/08/2008 | SEARS BRANDS, L.L.C. |
| 05/31/2013 | 4606604 | 09/16/2014 | SEARS BRANDS, L.L.C. |
| 04/22/2014 | 4771363 | 07/14/2015 | SEARS BRANDS, L.L.C. |
| 12/26/2013 | 4797713 | 08/25/2015 | SEARS BRANDS, L.L.C. |
| 06/13/1988 | 1563683 | 10/31/1989 | SEARS BRANDS, L.L.C. |
| 12/03/2002 | 2764442 | 09/16/2003 | SEARS BRANDS, L.L.C. |
| 10/17/2003 | 2982911 | 08/09/2005 | SEARS BRANDS, L.L.C. |
| 10/17/2003 | 2922885 | 02/01/2005 | SEARS BRANDS, L.L.C. |
| 10/17/2003 | 2916293 | 01/04/2005 | SEARS BRANDS, L.L.C. |
| 04/27/1991 | 1726260 | 10/20/1992 | SEARS BRANDS, L.L.C. |
| 04/06/2010 | SM-800-92-133 | 04/06/2010 | SEARS BRANDS, L.L.C. |
| 08/17/2012 | 4327638 | 04/30/2013 | SEARS BRANDS, L.L.C. |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 10/08/2004 | 2985557 | 08/16/2005 | SEARS BRANDS, L.L.C. |
|---|---|---|---|
| 10/08/2004 | 2989790 | 08/30/2005 | SEARS BRANDS, L.L.C. |
| 05/05/1999 | 2321954 | 02/22/2000 | SEARS BRANDS, L.L.C. |
| 12/09/2015 | 4946363 | 04/26/2016 | SEARS BRANDS, L.L.C. |
| 06/13/1988 | 1529006 | 03/07/1989 | SEARS BRANDS, L.L.C. |
| 11/23/2001 | 2621139 | 09/17/2002 | SEARS BRANDS, L.L.C. |
| 10/22/2004 | 2985558 | 08/16/2005 | SEARS BRANDS, L.L.C. |
| 11/14/2008 | 3809026 | 06/29/2010 | SEARS BRANDS, L.L.C. |
| 10/24/2008 | 3711219 | 11/17/2009 | SEARS BRANDS, L.L.C. |
| 11/14/2008 | 3721025 | 12/08/2009 | SEARS BRANDS, L.L.C. |
| 10/24/2008 | 3707791 | 11/10/2009 | SEARS BRANDS, L.L.C. |
| 07/16/2010 | 4008504 | 08/09/2011 | SEARS BRANDS, L.L.C. |
| 10/09/2008 | 4056660 | 11/15/2011 | SEARS BRANDS, L.L.C. |
| 10/22/2009 | 3872281 | 11/09/2010 | SEARS BRANDS, L.L.C. |

18-23538-rdd    Doc 2507    Filed 02/08/19    Entered 02/08/19 15:44:32    Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 08/28/2008 | 4368761 | 07/16/2013 | SEARS BRANDS, L.L.C. |
|---|---|---|---|
| 08/28/2008 | 4368762 | 07/16/2013 | SEARS BRANDS, L.L.C. |
| 08/28/2008 | 4358242 | 06/25/2013 | SEARS BRANDS, L.L.C. |
| 08/03/1999 | 2472234 | 07/24/2001 | SEARS BRANDS, L.L.C. |
| 02/01/2005 | 3269333 | 07/24/2007 | SEARS BRANDS, L.L.C. |
| 06/28/2005 | 3269653 | 07/24/2007 | SEARS BRANDS, L.L.C. |
| 09/22/2005 | 3138842 | 09/05/2006 | SEARS BRANDS, L.L.C. |
| 07/23/2002 | 2849347 | 06/01/2004 | SEARS BRANDS, L.L.C. |
| 07/23/2014 | 4923563 | 03/22/2016 | SEARS BRANDS, L.L.C. |
| 01/20/2003 | 2858971 | 06/29/2004 | SEARS BRANDS, L.L.C. |
| 03/21/2012 | 4459694 | 12/31/2013 | SEARS BRANDS, L.L.C. |
| 04/21/2009 | 3911703 | 01/25/2011 | SEARS BRANDS, L.L.C. |
| 04/21/2009 | 3795495 | 06/01/2010 | SEARS BRANDS, L.L.C. |
| 12/01/2008 | 3850796 | 09/21/2010 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | | | |
|---|---|---|---|
| 08/26/2009 | 3849503 | 09/21/2010 | SEARS BRANDS, L.L.C. |
| 12/22/2009 | 4214341 | 09/25/2012 | SEARS BRANDS, L.L.C. |
| 05/14/1999 | 2478456 | 08/14/2001 | SEARS BRANDS, L.L.C. |
| 08/16/1997 | 2162240 | 06/02/1998 | SEARS BRANDS, L.L.C. |
| 01/04/2001 | 2580209 | 06/11/2002 | SEARS BRANDS, L.L.C. |
| 02/06/1957 | 649324 | 07/30/1957 | SEARS, ROEBUCK AND CO. |
| 09/29/2014 | 5023146 | 08/16/2016 | SEARS BRANDS, L.L.C. |
| 09/29/2014 | 5256637 | 08/01/2017 | SEARS BRANDS, L.L.C. |
| 05/14/2005 | 4176116 | 07/17/2012 | SEARS BRANDS, L.L.C. |
| 01/08/2013 | 4577331 | 07/29/2014 | SEARS BRANDS, L.L.C. |
| 05/18/2012 | 4356650 | 06/25/2013 | SEARS BRANDS, L.L.C. |
| 01/12/2015 | 4777269 | 07/21/2015 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 4103467 | 02/28/2012 | SEARS BRANDS, L.L.C. |
| 06/21/2011 | 4096095 | 02/07/2012 | SEARS BRANDS, L.L.C. |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A Pg 659 of 1450

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | | | |
|---|---|---|---|
| 05/15/2015 | 4994597 | 07/05/2016 | SEARS BRANDS, L.L.C. |
| 05/18/2012 | 4393548 | 08/27/2013 | SEARS BRANDS, L.L.C. |
| 04/03/2001 | 2760739 | 09/09/2003 | SEARS BRANDS, L.L.C. |
| 04/16/2013 | 4436525 | 11/19/2013 | SEARS BRANDS, L.L.C. |
| 04/07/2014 | | | SEARS BRANDS, L.L.C. |
| 01/04/2017 | | | SEARS BRANDS, L.L.C. |
| 06/24/2013 | 4902260 | 02/16/2016 | SEARS BRANDS, L.L.C. |
| 01/18/2012 | 4491639 | 03/04/2014 | SEARS BRANDS, L.L.C. |
| 01/02/2013 | 4729840 | 05/05/2015 | SEARS BRANDS, L.L.C. |
| 01/02/2013 | 4368595 | 07/16/2013 | SEARS BRANDS, L.L.C. |
| 01/02/2013 | 4729839 | 05/05/2015 | SEARS BRANDS, L.L.C. |
| 06/24/2013 | 5241716 | 07/11/2017 | SEARS BRANDS, L.L.C. |
| 06/24/2013 | 4729909 | 05/05/2015 | SEARS BRANDS, L.L.C. |
| 01/13/2014 | 4698239 | 03/10/2015 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 04/03/2012 | 4437175 | 11/19/2013 | SEARS BRANDS, L.L.C. |
| 03/09/2012 | 4437148 | 11/19/2013 | SEARS BRANDS, L.L.C. |
| 11/11/2011 | 4142804 | 05/15/2012 | SEARS BRANDS, L.L.C. |
| 12/18/2015 | 5271986 | 08/22/2017 | SEARS BRANDS, L.L.C. |
| 05/02/2016 | 5226232 | 06/20/2017 | SEARS BRANDS, L.L.C. |
| 11/20/2012 | 4473621 | 01/28/2014 | SEARS BRANDS, L.L.C. |
| 11/26/2012 | 4468884 | 01/21/2014 | SEARS BRANDS, L.L.C. |
| 12/27/2012 | 4468999 | 01/21/2014 | SEARS BRANDS, L.L.C. |
| 08/18/2009 | 3843975 | 09/07/2010 | SEARS BRANDS, L.L.C. |
| 03/18/2010 | 3860725 | 10/12/2010 | SEARS BRANDS, L.L.C. |
| 04/07/2014 | | | SEARS BRANDS, L.L.C. |
| 12/15/2015 | 5481492 | 05/29/2018 | SEARS BRANDS, L.L.C. |
| 09/11/2015 | 5106143 | 12/20/2016 | SEARS BRANDS, L.L.C. |
| 04/20/2012 | 4574204 | 07/29/2014 | SEARS BRANDS, L.L.C. |

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:44:32    Exhibit A
Pg 663 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 08/17/2005 | 3123600 | 08/01/2006 | SEARS BRANDS, L.L.C. |
| 06/27/2016 | 5267401 | 08/15/2017 | SEARS BRANDS, L.L.C. |
| 12/15/2015 | 5106414 | 12/20/2016 | SEARS BRANDS, L.L.C. |
| 08/27/2012 | 4363730 | 07/09/2013 | SEARS BRANDS, L.L.C. |
| 08/27/2012 | 4413310 | 10/08/2013 | SEARS BRANDS, L.L.C. |
| 11/15/2004 | 3125410 | 08/08/2006 | SEARS BRANDS, L.L.C. |
| 10/10/2003 | 3104379 | 06/13/2006 | SEARS BRANDS, L.L.C. |
| 10/07/2009 | 4107195 | 03/06/2012 | SEARS BRANDS, L.L.C. |
| 10/05/2010 | 4206585 | 09/11/2012 | SEARS BRANDS, L.L.C. |
| 09/29/2014 | 4735230 | 05/12/2015 | SEARS BRANDS, L.L.C. |
| 05/13/2009 | 4191082 | 08/14/2012 | SEARS BRANDS, L.L.C. |
| 05/13/2009 | 4109427 | 03/06/2012 | SEARS BRANDS, L.L.C. |
| 02/16/2011 | 4113165 | 03/13/2012 | SEARS BRANDS, L.L.C. |
| 05/13/2009 | 4641406 | 11/18/2014 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 05/13/2009 | 4436788 | 11/19/2013 | SEARS BRANDS, L.L.C. |
|---|---|---|---|
| 02/09/2010 | 4429072 | 11/05/2013 | SEARS BRANDS, L.L.C. |
| 02/09/2010 | 4268601 | 01/01/2013 | SEARS BRANDS, L.L.C. |
| 09/19/1988 | 1538257 | 05/09/1989 | SEARS BRANDS, L.L.C. |
| 05/19/2005 | 3214242 | 02/27/2007 | SEARS BRANDS, L.L.C. |
| 02/26/2015 | 4960435 | 05/17/2016 | SEARS BRANDS, L.L.C. |
| 02/26/2015 | 4960434 | 05/17/2016 | SEARS BRANDS, L.L.C. |
| 02/12/2016 | 5125730 | 01/17/2017 | SEARS BRANDS, L.L.C. |
| 09/02/2004 | 3005980 | 10/11/2005 | SEARS BRANDS, L.L.C. |
| 10/16/2006 | 3458667 | 07/01/2008 | SEARS BRANDS, L.L.C. |
| 09/02/2004 | 3070314 | 03/21/2006 | SEARS BRANDS, L.L.C. |
| 10/25/1994 | 1923802 | 10/03/1995 | SEARS BRANDS, L.L.C. |
| 04/26/1991 | 1688984 | 05/26/1992 | SEARS BRANDS, L.L.C. |
| 01/10/2017 | | | SEARS BRANDS, L.L.C. |

18-23538-shl   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| 04/22/1997 | 2191991 | 09/29/1998 | SEARS BRANDS, L.L.C. |
| 07/21/1994 | 6788 | 08/08/1994 | SEARS BRANDS, L.L.C. |
| 12/11/2009 | 7730 | 12/11/2009 | SEARS BRANDS, L.L.C. |
| 03/24/1989 | 1567276 | 11/21/1989 | SEARS BRANDS, L.L.C. |
| 02/12/1990 | 1673086 | 01/21/1992 | SEARS BRANDS, L.L.C. |
| 05/06/2013 | 4685367 | 02/10/2015 | SEARS BRANDS, L.L.C. |
| 06/17/2011 | 4196865 | 08/28/2012 | SEARS BRANDS, L.L.C. |
| 06/17/2011 | 4196866 | 08/28/2012 | SEARS BRANDS, L.L.C. |
| 07/08/2010 | 4226185 | 10/16/2012 | SEARS BRANDS, L.L.C. |
| 07/08/2010 | 4222361 | 10/09/2012 | SEARS BRANDS, L.L.C. |
| 01/13/2012 | 4534001 | 05/20/2014 | SEARS BRANDS, L.L.C. |
| 03/22/2016 | 5201343 | 05/09/2017 | SEARS BRANDS, L.L.C. |
| 06/29/1998 | 2270689 | 08/17/1999 | SEARS BRANDS, L.L.C. |
| 01/03/2011 | 4218552 | 10/02/2012 | SEARS BRANDS, L.L.C. |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 07/06/2017 | | | SEARS BRANDS, L.L.C. |
| 04/03/2012 | 4467083 | 01/14/2014 | SEARS BRANDS, L.L.C. |
| 01/04/2017 | | | SEARS BRANDS, L.L.C. |
| 01/10/2017 | | | SEARS BRANDS, L.L.C. |
| 02/02/1988 | 1521334 | 01/17/1989 | SEARS BRANDS, L.L.C. |
| 02/16/2011 | 4136676 | 05/01/2012 | SEARS BRANDS, L.L.C. |
| 04/28/1992 | 1741441 | 12/22/1992 | SEARS BRANDS, L.L.C. |
| 09/26/2016 | 5425390 | 03/13/2018 | SEARS BRANDS, L.L.C. |
| 07/25/2015 | 5023930 | 08/16/2016 | SEARS BRANDS, L.L.C. |
| 10/18/2013 | 4547429 | 06/10/2014 | SEARS BRANDS, L.L.C. |
| 05/01/1997 | 2279783 | 09/21/1999 | SEARS, ROEBUCK AND CO. |
| 11/24/2001 | 2621140 | 09/17/2002 | SEARS, ROEBUCK AND CO. |
| 04/17/2015 | 4859015 | 11/24/2015 | SEARS BRANDS, L.L.C. |
| 04/14/2010 | 4050134 | 11/01/2011 | SEARS BRANDS, L.L.C. |

18-23538-shl Doc 2307 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 665 of 1450

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | | | |
|---|---|---|---|
| 03/12/2013 | 4507642 | 04/01/2014 | SEARS BRANDS, L.L.C. |
| 09/28/2011 | 4289842 | 02/12/2013 | SEARS BRANDS, L.L.C. |
| 06/10/2016 | | | SEARS BRANDS, L.L.C. |
| 03/01/2016 | 5045566 | 09/20/2016 | SEARS BRANDS, L.L.C. |
| 11/27/1997 | 2226046 | 02/23/1999 | SEARS BRANDS, L.L.C. |
| 04/13/1953 | 8616 | 04/13/1953 | SEARS BRANDS, L.L.C. |
| 03/23/1953 | 8083 | 03/23/1953 | SEARS BRANDS, L.L.C. |
| 07/13/1929 | 263939 | 11/12/1929 | SEARS BRANDS, L.L.C. |
| 07/11/1962 | 751033 | 06/11/1963 | SEARS BRANDS, L.L.C. |
| 06/16/2004 | 3107818 | 06/20/2006 | SEARS BRANDS, L.L.C. |
| 01/13/2012 | 4310294 | 03/26/2013 | SEARS BRANDS, L.L.C. |
| 06/17/2011 | 4222815 | 10/09/2012 | SEARS BRANDS, L.L.C. |
| 06/13/2007 | 3465829 | 07/15/2008 | SEARS BRANDS, L.L.C. |
| 06/19/2007 | 3474921 | 07/29/2008 | SEARS BRANDS, L.L.C. |

18-23538-shl Doc 6507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 10/04/1999 | 2459206 | 06/12/2001 | SEARS BRANDS, L.L.C. |
| 12/22/1998 | 2396430 | 10/17/2000 | SEARS BRANDS, L.L.C. |
| 10/16/2006 | 3429201 | 05/20/2008 | SEARS BRANDS, L.L.C. |
| 02/23/1981 | 1226733 | 02/08/1983 | SEARS BRANDS, L.L.C. |
| 06/09/2005 | 3395928 | 03/11/2008 | SEARS BRANDS, L.L.C. |
| 06/20/2006 | 3607740 | 04/14/2009 | SEARS BRANDS, L.L.C. |
| 07/01/2010 | 3991156 | 07/05/2011 | SEARS BRANDS, L.L.C. |
| 11/05/2010 | 4007644 | 08/02/2011 | SEARS BRANDS, L.L.C. |
| 06/13/2017 | | | SEARS BRANDS, L.L.C. |
| 08/15/2013 | 4693574 | 02/24/2015 | SEARS BRANDS, L.L.C. |
| 11/20/2007 | 3909451 | 01/18/2011 | SEARS BRANDS, L.L.C. |
| 09/23/2009 | 3956492 | 05/10/2011 | SEARS BRANDS, L.L.C. |
| 11/15/2012 | 4516470 | 04/15/2014 | SEARS BRANDS, L.L.C. |
| 03/04/1997 | 2116473 | 11/25/1997 | SEARS BRANDS, L.L.C. |

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 669 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 05/15/2013 | 4554579 | 06/24/2014 | SEARS BRANDS, L.L.C. |
| 07/24/2013 | 4475342 | 01/28/2014 | SEARS BRANDS, L.L.C. |
| 06/28/2013 | 4693036 | 02/24/2015 | SEARS BRANDS, L.L.C. |
| 11/03/2003 | 3117924 | 07/18/2006 | SEARS BRANDS, L.L.C. |
| 05/31/2013 | 4993737 | 07/05/2016 | SEARS BRANDS, L.L.C. |
| 06/21/2007 | 3603303 | 04/07/2009 | SEARS BRANDS, L.L.C. |
| 06/24/2010 | 4014794 | 08/23/2011 | SEARS BRANDS, L.L.C. |
| 02/10/2009 | 4091582 | 01/24/2012 | SEARS BRANDS, L.L.C. |
| 02/10/2009 | 4154584 | 06/05/2012 | SEARS BRANDS, L.L.C. |
| 02/10/2009 | 4338948 | 05/21/2013 | SEARS BRANDS, L.L.C. |
| 01/03/2011 | 4071885 | 12/13/2011 | SEARS BRANDS, L.L.C. |
| 09/04/1990 | 1757532 | 03/09/1993 | SEARS BRANDS, L.L.C. |
| 05/25/2016 | | | SEARS BRANDS, L.L.C. |
| 11/26/2013 | 4724745 | 04/21/2015 | SEARS BRANDS, L.L.C. |

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:44:32    Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 11/26/2013 | 4724744 | 04/21/2015 | SEARS BRANDS, L.L.C. |
| 05/25/2016 | | | SEARS BRANDS, L.L.C. |
| 06/28/2016 | | | SEARS BRANDS, L.L.C. |
| 05/25/2016 | | | SEARS BRANDS, L.L.C. |
| 01/04/2017 | | | SEARS BRANDS, L.L.C. |
| 03/14/2012 | 4365549 | 07/09/2013 | SEARS BRANDS, L.L.C. |
| 05/17/1978 | 1119042 | 05/29/1979 | SEARS BRANDS, L.L.C. |
| 03/28/2000 | 2495828 | 10/09/2001 | SEARS, ROEBUCK AND CO. |
| 06/19/1978 | 1130813 | 02/12/1980 | SEARS BRANDS, L.L.C. |
| 06/14/2000 | 2652443 | 11/19/2002 | SEARS BRANDS, L.L.C. |
| 06/24/1997 | 2206735 | 12/01/1998 | SEARS BRANDS, L.L.C. |
| 08/03/1999 | 2488741 | 09/11/2001 | SEARS BRANDS, L.L.C. |
| 01/19/2010 | 3948853 | 04/19/2011 | SEARS BRANDS, L.L.C. |
| 12/30/2015 | 5341343 | 11/21/2017 | SEARS BRANDS, L.L.C. |

18-23538-rdd    Doc 2507    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 07/13/2012 | 4437309 | 11/19/2013 | SEARS BRANDS, L.L.C. |
| 11/14/1983 | 1380332 | 01/28/1986 | SEARS BRANDS, L.L.C. |
| 11/12/2004 | 3361170 | 01/01/2008 | SEARS BRANDS, L.L.C. |
| 11/01/2007 | 3873766 | 11/09/2010 | SEARS BRANDS, L.L.C. |
| 12/15/2010 | 4195344 | 08/21/2012 | SEARS BRANDS, L.L.C. |
| 08/25/2009 | 3849502 | 09/21/2010 | SEARS BRANDS, L.L.C. |
| 07/10/2003 | 3303363 | 10/02/2007 | SEARS BRANDS, L.L.C. |
| 09/19/2003 | 3349266 | 12/04/2007 | SEARS BRANDS, L.L.C. |
| 11/13/1997 | 2464800 | 07/03/2001 | SEARS BRANDS, L.L.C. |
| 08/20/2012 | 4313078 | 04/02/2013 | SEARS BRANDS, L.L.C. |
| 02/17/2000 | 2583188 | 06/18/2002 | SEARS BRANDS, L.L.C. |
| 09/11/2015 | 5065637 | 10/18/2016 | SEARS BRANDS, L.L.C. |
| 04/13/2011 | 4042174 | 10/18/2011 | SEARS BRANDS, L.L.C. |
| 05/21/2010 | 4429091 | 11/05/2013 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 06/06/2016 | 5282353 | 09/05/2017 | SEARS BRANDS, L.L.C. |
|---|---|---|---|
| 10/24/2017 | 5598823 | 11/06/2018 | SEARS BRANDS, L.L.C. |
| 10/17/2017 | 5620299 | 12/04/2018 | SEARS BRANDS, L.L.C. |
| 10/17/2017 | 5625398 | 12/11/2018 | SEARS BRANDS, L.L.C. |
| 10/17/2017 | 5625397 | 12/11/2018 | SEARS BRANDS, L.L.C. |
| 10/17/2017 | 5620298 | 12/04/2018 | SEARS BRANDS, L.L.C. |
| 09/29/2017 | 5609736 | 11/20/2018 | SEARS BRANDS, L.L.C. |
| 09/29/2017 | 5609737 | 11/20/2018 | SEARS BRANDS, L.L.C. |
| 11/22/2016 | 5640229 | 01/01/2019 | SEARS BRANDS, L.L.C. |
| 11/22/2016 | 5640229 | 01/01/2019 | SEARS BRANDS, L.L.C. |
| 09/28/2017 | 5604496 | 11/13/2018 | SEARS BRANDS, L.L.C. |
| 01/23/2017 | | | SEARS BRANDS, L.L.C. |
| 10/04/2017 | | | SEARS BRANDS, L.L.C. |
| 08/29/2018 | | | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 11/07/2018 | | | SEARS BRANDS, L.L.C. |
| 02/23/2018 | | | SEARS BRANDS, L.L.C. |
| 02/23/2018 | | | SEARS BRANDS, L.L.C. |
| 02/27/2018 | | | SEARS BRANDS, L.L.C. |
| 04/13/2018 | | | SEARS BRANDS, L.L.C. |
| 07/13/2018 | | | SEARS BRANDS, L.L.C. |
| 07/13/2018 | | | SEARS BRANDS, L.L.C. |
| 07/24/2018 | | | SEARS BRANDS, L.L.C. |
| 07/24/2018 | | | SEARS BRANDS, L.L.C. |
| 08/29/2018 | | | SEARS BRANDS, L.L.C. |
| 11/04/1996 | 2177884* | 08/04/1998 | SEARS BRANDS, L.L.C. |
| 04/01/2011 | 4188173* | 08/07/2012 | SEARS BRANDS, L.L.C. |
| 03/04/1997 | 2191477* | 09/22/1998 | SEARS BRANDS, L.L.C. |
| 12/15/2010 | 4180918* | 07/24/2012 | SEARS BRANDS, L.L.C. |

18-23538-rdd    Doc 2507    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A

rein.  No representation or warranty is made with respect to the Trademarks denoted with an asterisk.

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 16:14:34 Exhibit A
Pg 673 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Image | Country | MarkName | Application Number |
|-------|---------|----------|--------------------|
| KMART | Albania | KMART | 168 |
| COEXIST | Argentina | COEXIST | 3080417 |
| COEXIST | Argentina | COEXIST | 3080416 |
| COEXIST | Argentina | COEXIST | 3080414 |
| COEXIST | Argentina | COEXIST | 3080412 |
| KMART | Argentina | KMART | 2973687 |
|  | Argentina | SEARS | 2965251 |
|  | Argentina | SEARS | 2965250 |
|  | Argentina | SEARS | 2977273 |
|  | Argentina | SEARS | 2965249 |
|  | Argentina | SHOP YOUR WAY | 3221969 |
|  | Argentina | SHOP YOUR WAY | 3221970 |
|  | Aruba | K MART | 89120413 |

18-23538-rdd    Doc 2507    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 674 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| KMART | Aruba | KMART | 94081517 |
| KMART | Aruba | KMART | 110421.18 |
| | Aruba | KMART (1990 LOGO) | 94081519 |
| | Aruba | SEARS | IM-961105.14 |
| STRUCTURE | Aruba | STRUCTURE | 94062323 |
| | Australia | ALL-PRO | 331313 |
| | Australia | ASHLEY TAYLOR | 498369 |
| BLUELIGHT | Australia | BLUELIGHT | 868989 |
| | Australia | BLUELIGHT.COM | 840688 |
| | Australia | COBBIE | 112326 |
| | Australia | COBBIE | n/a |
| | Australia | COBBIE CUDDLERS | 363277 |
| | Australia | COMFORT LITES | 836259 |
| | Australia | E.Z. STRIDER | 772253 |

18-23538-rdd Doc 2507-7 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 675 of 1150

FILED DATE: 5/19/2021 1:27 PM 2020L012403

|  | Australia | FOCAL | 334637 |
|---|---|---|---|
|  | Australia | GUARDSMAN | 1534600 |
|  | Australia | KSUPERFOOD | 427546 |
|  | Australia | KSUPERFOOD | 427545 |
|  | Australia | PERFORMER | 324240 |
|  | Australia | PURE BEACH | 836260 |
|  | Australia | ROADHANDLER | 1534591 |
|  | Australia | RX FOR COMFORT (AND DESIGN) | 839432 |
|  | Australia | SAFETRAX | 772251 |
| SHOP YOUR WAY | Australia | SHOP YOUR WAY and Design (new logo) | 1627586 |
|  | Australia | SUPER K | 427547 |
| THOM MCAN | Australia | THOM MCAN | 871193 |
| THOM MCAN | Australia | THOM MCAN | 772252 |
| TOUGHSKINS | Australia | TOUGHSKINS | 1426754 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| *Walkables* | Australia | WALKABLES (STYLIZED) | 836261 |
| | Austria | COBBIE STYLIZED | AM4626/88 |
| | Austria | KMART (1990 LOGO) | 421890 |
| | Austria | SEARS | 263543A |
| | Bahamas | COBBIE CUDDLERS | 11450 |
| KMART | Bahamas | KMART | 15340 |
| KMART | Bahamas | KMART | 15341 |
| | Bahamas | SEARS ROEBUCK | 3316 |
| | Bahamas | SEARS ROEBUCK | 3127 |
| | Bahamas | SEARS ROEBUCK | 3357 |
| STRUCTURE | Bahamas | STRUCTURE | 17295 |
| STRUCTURE | Bahamas | STRUCTURE | 16596 |
| KMART | Bahrain | KMART | 847/93 |
| KMART | Bangladesh | KMART | 37312 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:31 Exhibit A
Pg 649 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| KMART (1990 LOGO image) | Bangladesh | KMART (1990 LOGO) | 37311 |
| STRUCTURE | Bangladesh | STRUCTURE | 40455 |
| KMART | Barbados | KMART | 2097 |
| KMART | Barbados | KMART | 2098 |
| KMART | Barbados | KMART | 2107 |
| KMART | Barbados | KMART | 2102 |
| KMART | Barbados | KMART | 2106 |
| KMART | Barbados | KMART | 2099 |
| KMART | Barbados | KMART | 2105 |
| KMART | Barbados | KMART | 2104 |
| KMART & DESIGN image | Barbados | KMART & DESIGN | 2108 |
| | Barbados | SUPER KMART CENTER | 2109 |
| KMART | Belarus | KMART | 133482 |
| | Benelux | COBBIE | 64503 |

18-23538-rdd Doc 2507-1 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A
Pg 450 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| KMART | Benelux | KMART | 801993 |
| *(Kmart logo)* | Benelux | KMART (1990 LOGO RED) | 750685 |
| | Benelux | SEARS | 263543A |
| STRUCTURE | Benelux | STRUCTURE | 829 435 |
| Thom McAn | Benelux | THOM MCAN (Stylized) | 607 |
| KMART | Bermuda | KMART | 25464 |
| SEARS HOMETOWN STORE | Bermuda | SEARS HOMETOWN STORE | 51975 |
| GALAXY | Bolivia | GALAXY | C-85144 |
| GALAXY | Bolivia | GALAXY | 387C-85143 |
| | Bolivia | K MART | 3093-2001 |
| | Bolivia | SEARS | C-37075 |
| | Bolivia | SEARS | 00352-2010 |
| | Bolivia | SEARS ROEBUCK | RC-773 |
| STRUCTURE | Bolivia | STRUCTURE | 1728 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| STRUCTURE | Bolivia | STRUCTURE | 1728 |
| GALAXY | Bosnia-Herzegovina | GALAXY | UP-5490/00 |
| | Bosnia-Herzegovina | SEARS | 263543A |
| | Brazil | CANYON RIVER BLUES | 830424679 |
| | Brazil | COBBIE CUDDLERS | 812471032 |
| KMART | Brazil | KMART | 817866574 |
| KMART | Brazil | KMART | 818213752 |
| | Brazil | SEARS | 811234940 |
| | Brazil | SEARS | 910112053 |
| | Brazil | SEARS | 910112100 |
| | Brazil | SEARS | 910112169 |
| | Brazil | SEARS | 910112193 |
| | Brazil | SEARS | 910112231 |
| | Brazil | SEARS | 910207364 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 682 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

|  | Brazil | SEARS | 910207372 |
|---|---|---|---|
|  | Brazil | SEARS | 910207399 |
|  | Brazil | SHOP YOUR WAY | 840393261 |
|  | Brazil | SHOP YOUR WAY | 840393288 |
| STRUCTURE | Brazil | STRUCTURE | 830413618 |
| Thom McAn | Brazil | THOM MCAN (STYLIZED) | 474080 |
| TOUGHSKINS | Brazil | TOUGHSKINS | 830427910 |
|  | Bulgaria | KMART (1990 LOGO) | 21301 |
| STRUCTURE | Bulgaria | STRUCTURE | 12547 |
| mart K | Cambodia | KMART (LOGO) | 2867 |
|  | Canada | 1.800.4.MY.HOME | 1518349 |
|  | Canada | 1.800.LE.FOYER | 1518350 |
|  | Canada | 1-800-LE-FOYER | 1060010 |
|  | Canada | 1-866-FLY-SEARS | 1209836 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:14:32 Exhibit A
Pg 683 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | Canada | A&E FACTORY SERVICE & DESIGN 1 | 1377718 |
|---|---|---|---|
| | Canada | A&E FACTORY SERVICE & DESIGN 2 | 1377719 |
| | Canada | A&E FACTORY SERVICE & DESIGN 3 | 1377769 |
| | Canada | ALARMES RÉSIDENTIELLES SEARS | 1351746 |
| | Canada | ALARMES RÉSIDENTIELLES SEARS (AND DESIGN) | 1366755 |
| ALPHALINE | Canada | ALPHALINE | 1483437 |
| | Canada | ASHLEY TAYLOR COLLECTION | 586151 |
| | Canada | ATTENDEZ-VOUS A PLUS | 728497 |
| | Canada | AVANTAJEUNE | 696537 |
| | Canada | BALLOONS | 1192249 |
| | Canada | BATH SHOP COLORMATES (AND DESIGN) | 406333 |
| | Canada | BECAUSE LIFE JUST GETS BETTER | 1087205 |
| | Canada | BENCHMADE | 416445 |
| | Canada | BILLETTERIE PREMIÈRE DU CLUB SEARS (AND DESIGN) | 1015596 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | Canada | BLUEPRINT | 1815233 |
|---|---|---|---|
| | Canada | BLUEPRINT @ SEARS | 1815235 |
| | Canada | BLUEPRINT AT SEARS | 1815234 |
| | Canada | BONNES AFFAIRES DE TOUTE CONFIANCE | 1399122 |
| | Canada | BRAND CENTRAL | 626437 |
| | Canada | BRAND CENTRAL SEARS (AND DESIGN) | 626438 |
| | Canada | CAFÉ DU CATALOGUE SEARS (AND DESIGN) | 1168445 |
| | Canada | CANADA'S NATIONAL CATALOGUE SEARS | 683278 |
| CARRIAGE COURT | Canada | CARRIAGE COURT | 526851 |
| | Canada | CENTRE DU FOYER SEARS | 862771 |
| | Canada | CENTRE DU FOYER SEARS (AND DESIGN) | 1024794 |
| | Canada | CENTRE MULTIMARQUES SEARS | 802137 |
| | Canada | CHAQUE VOYAGE APPORTE UNE RÉCOMPENSE | 1407946 |
| | Canada | CHOIX. SERVICES. RÉCOMPENSES. | 1105456 |

18-23538-rdd Doc 2507-7 Filed 02/08/19 Entered 02/08/19 16:14:32 Exhibit A
Pg 683 of 1450

FILED DATE: 5/19/2021 1:27 PM     2020L012403

| | Canada | CLEANSCAPE | 1465339 |
|---|---|---|---|
| | Canada | CLEARPATH | 1469878 |
| | Canada | CLUB DES FUTURES MAMANS | 698156 |
| | Canada | CLUB DES FUTURES MAMANS (AND DESIGN) 1 | 752157 |
| | Canada | CLUB DES FUTURES MAMANS (AND DESIGN) 2 | 1134639 |
| | Canada | CLUB DES FUTURES MAMANS AVANTAJEUNE (AND DESIGN) | 1018548 |
| | Canada | CLUB FAMILLE EN FÊTE SEARS | 1122829 |
| | Canada | CLUB FAMILLE EN FÊTE SEARS (AND DESIGN) | 1122828 |
| | Canada | CLUB SEARS (AND DESIGN) | 808663 |
| | Canada | CLUB SEARS C'EST TOUT A VOTRE AVANTAGE | 675975 |
| | Canada | CLUB-VACANCE KMART | 725037 |
| | Canada | COBBIE CUDDLERS | 464954 |
| | Canada | COBBIE CUDDLERS | 1192250 |
| | Canada | COBBIES | 299744 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 684 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| COLORMATE | Canada | COLORMATE | 1465152 |
|---|---|---|---|
|  | Canada | COLORMATE and Design | 1474751 |
|  | Canada | COLORMATE KIDS | 1465326 |
|  | Canada | COLORMATE KIDS (AND DESIGN) | 1465332 |
|  | Canada | COLORMATES | 435299 |
|  | Canada | COLOURS | 1150246 |
|  | Canada | COME SEE THE MANY SIDES OF SEARS | 853113 |
|  | Canada | COME SEE THE SOFTER SIDE OF SEARS | 853112 |
|  | Canada | COMFORT TOUCH | 1091228 |
|  | Canada | COMPANION | 1034472 |
|  | Canada | COMPANION AND DESIGN (HAMMER) | 1034471 |
|  | Canada | CONCEPT @ SEARS | 1812996 |
|  | Canada | CONCEPT AT SEARS | 1812993 |
|  | Canada | CONFIANCE. ENTRE VOS MAINS. | 1472005 |

18-23538-shl Doc 2507-7 Filed 02/08/19 Entered 02/08/19 16:14:32 Exhibit A
Pg 685 of 1450
FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | Canada | COULEURS | 1150247 |
|---|---|---|---|
| | Canada | COUNTRY INN | 216959 |
| COVINGTON | Canada | COVINGTON | 1140681 |
| | Canada | DÉCOUVREZ LES JOYEUX CÔTÉS DE SEARS | 866723 |
| | Canada | DÉCOUVREZ TOUS LES CÔTÉS DE SEARS | 866718 |
| | Canada | DÉCOUVREZ TOUT CE QUI EST EN SOLDE CHEZ SEARS | 866719 |
| | Canada | DÉCOUVREZ UN AUTRE CÔTÉ DE SEARS | 866720 |
| | Canada | DEFI CLIMAT | 442506 |
| | Canada | DES MARQUES DE CHOIX A VOTRE MAGASIN DE CONFIANCE | 815546 |
| | Canada | DES PRIX HORS PAIR!! | 1215599 |
| | Canada | DES PRODUITS ET SERVICES DE TOUTE CONFIANCE | 892159 |
| | Canada | DIRT DETECTOR | 778349 |
| | Canada | DIVISION COMMERCIALE DES PIECES SEARS | 836031 |
| | Canada | DOCKMATES | 844136 |

18-23538-rdd Doc 2307 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A Pg 686 of 1450

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| **DOCKMATES** | Canada | DOCKMATES & DESIGN | 844135 |
|---|---|---|---|
| | Canada | DO-IT YOURSELF (AND DESIGN) | 490849 |
| | Canada | DRAGON DESIGN | 636284 |
| | Canada | ECO CARE | 1177812 |
| | Canada | ELEGANCE | 778508 |
| | Canada | EN TOUTE SÉCURITÉ GRÂCE Â VOTRE ENTREPRISE DE CONFIANCE | 1367250 |
| | Canada | EVERY TRIP HAS ITS REWARDS | 1407947 |
| | Canada | EXPECT MORE | 723337 |
| | Canada | EXPECT MORE FROM SEARS | 723339 |
| | Canada | FABRIC MASTER | 341044 |
| | Canada | FAITES-LE VOUS-MÊME (AND DESIGN) | 490847 |
| | Canada | FESTIVAL DE THEATRE SEARS DE L'ONTARIO (AND DESIGN) | 827530 |
| | Canada | FLOWER DESIGN | 1428821 |
| | Canada | FLOWERS BY SEARS | 715789 |

FILED DATE: 5/19/2021 1:27 PM       2020L012403

| | Canada | FONDS DE CREANCES DE SEARS CANADA | 696398 |
|---|---|---|---|
| | Canada | FRANCPARLER SEARS | 881682 |
| FRESH 'N CLEAN | Canada | FRESH'N CLEAN | 1339654 |
| | Canada | FSX (AND DESIGN) | 1115431 |
| | Canada | FUTURES MAMAN | 765558 |
| GALAXY | Canada | GALAXY | 887285 |
| | Canada | GARDEN OASIS | 1395956 |
| | Canada | GARDEN OASIS (AND DESIGN) | 1460949 |
| | Canada | GRATIFICATION SEARS QUELQUE CHOSE POUR TOUS (STYLIZED) | 1156327 |
| | Canada | GREAT NEWS FROM SEARS (AND DESIGN) | 623815 |
| | Canada | GREAT VALUE FROM THE COMPANY YOU TRUST | 1399124 |
| | Canada | GUARDSMAN | 0241275 |
| | Canada | HARMONY HOUSE | 0234946 |
| | Canada | HE4T | 1265726 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | Canada | HILLARY | 447064 |
|---|---|---|---|
| | Canada | HO HO BEANS | 882503 |
| | Canada | HOMART | 196289 |
| | Canada | I LOVE COMFORT | 1465513 |
| | Canada | I LOVE COMFORT (STYLIZED AND DESIGN) | 1344534 |
| | Canada | INCREDICELL | 506799 |
| | Canada | INTERPLAN SEARS | 781995 |
| | Canada | INTERPLAN SEARS & DESIGN | 787759 |
| | Canada | JACLYN SMITH | 563328 |
|  | Canada | K (Stylized) | 1227015 |
| | Canada | K KMART and Design (2004 Logo) | 1227016 |
| | Canada | K MART | 287994 |
| | Canada | K MART ADVERTISING | 673439 |
| | Canada | K MART ASSISTANCE ROUTIÈRE | 690008 |

18-23538-rdd   Doc 2307   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | Canada | K MART FOOD | 287993 |
|---|---|---|---|
| | Canada | KIDVANTAGE | 694929 |
| KMART | Canada | KMART | 699045 |
|  | Canada | KMART and Design (1990 Logo) | 680983 |
| | Canada | KMART DESIGN | 699046 |
| | Canada | KMART TRAVEL CLUB DESIGN | 715366 |
|  | Canada | LA GARANTIE POUR TOUJOURS (AND DESIGN) | 1039694 |
| | Canada | LA JOIE DU PARTAGE CHEZ SEARS | 742980 |
| | Canada | LA VIE À SON MEILLEUR | 1087206 |
| | Canada | LAUNDRY PLUS + | 1434631 |
| | Canada | L'AVENIR DES JEUNES SEARS (AND DESIGN) | 1159440 |
| | Canada | LE CATALOGUE DU CANADA SEARS | 683279 |
| | Canada | LE GRAND COFFRE A JOUETS | 423213 |
| | Canada | LE MEILLEUR CHOIX | 762957 |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | Canada | LE MONDE EST A VOUS | 892157 |
|---|---|---|---|
| | Canada | LE RESTAURANT COUNTRY INN (AND DESIGN) | 400837 |
| | Canada | LES BELLES ANNEES | 688995 |
| | Canada | LES BELLES ANNÉES (STYLIZED) | 1087052 |
| | Canada | LOCATION DE VOITURES SEARS | 493825 |
| | Canada | LOUIS | 1033409 |
| | Canada | LUNETTERIE BOUTIQUE SEARS | 1010206 |
| | Canada | LUNETTERIE SEARS | 1013102 |
| | Canada | LXI SERIES | 453163 |
| | Canada | MAILBOX DESIGN | 1178569 |
| | Canada | MASTERPIECE | 727095 |
| | Canada | MATCHMATES | 455925 |
| | Canada | MATURE OUTLOOK | 688996 |
| | Canada | MATURE OUTLOOK (STYLIZED) | 1087033 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A Pg 691 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

|  | Canada | MODEL'S CLUB | 859361 |
|---|---|---|---|
|  | Canada | MOTHER TO BE | 765282 |
|  | Canada | MOTHER TO BE FUTURE MAMAN (AND DESIGN) | 807251 |
|  | Canada | MOUNTAIN DESIGN | 1465329 |
|  | Canada | MW (AND MAPLE LEAF DESIGN) | 428298 |
|  | Canada | NEW OUTLOOK | 1090112 |
|  | Canada | OAKTON | 568640 |
| OASIS | Canada | OASIS | 1433187 |
|  | Canada | OFF PRICE EVERYDAY!! | 1081070 |
|  | Canada | PASSEPORT DE VOYAGES SEARS | 1226707 |
|  | Canada | PASSEPORT DE VOYAGES SEARS (AND DESIGN) | 1232115 |
|  | Canada | PET DRUM | 1465336 |
|  | Canada | PET DRUM (AND DESIGN) | 1465319 |
|  | Canada | PET HANDI-MATE | 1465515 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | Canada | PET POWER MATE | 1465516 |
|---|---|---|---|
| | Canada | PETPOWERMATE (STYLIZED) | 1465697 |
| | Canada | POLAR FREEZE | 1344326 |
| | Canada | POWER PATH SYSTEM | 778350 |
| | Canada | PRODUITS DE RENOVATION GARANTIS PAR SEARS PARLEZ A UNE | REGISTERED |
| | Canada | PRODUITS DE RENOVATION GARANTIS PAR SEARS UNE CONNAISSANCE | REGISTERED |
| | Canada | PROGRAMME L'AVENIR DES JEUNES SEARS | 862373 |
| | Canada | PURESOURCE | 1339655 |
| | Canada | QUELQUE CHOSE POUR TOUS | 1170127 |
| | Canada | RECOMPENSEZ-VOUS PARTEZ EN VOYAGE! | 1557255 |
| | Canada | ROADHANDLER | 0391151 |
| | Canada | ROADHANDLER MAXIMIZER PLUS | 1123058 |
| | Canada | ROADMATES | 453603 |
| | Canada | ROUGH HOUSERS | 451201 |

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

|  | Canada | S.S. KRESGE | 418261 |
|---|---|---|---|
|  | Canada | SCCF (AND DESIGN) | 699196 |
|  | Canada | SCORE TRUST | 1103773 |
|  | Canada | SEARS | 601282 |
|  | Canada | SEARS | 671397 |
|  | Canada | SEARS | 699587 |
|  | Canada | SEARS | 634750 |
|  | Canada | SEARS | 758681 |
|  | Canada | SEARS | 724229 |
|  | Canada | SEARS | 513788 |
|  | Canada | SEARS | 645101 |
|  | Canada | SEARS | 769071 |
|  | Canada | SEARS | 476403 |
|  | Canada | SEARS | 373353 |

18-23538-rdd Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:34 Exhibit A Pg 686 of 1120

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | Canada | SEARS | 664146 |
|---|---|---|---|
| | Canada | SEARS | 817112 |
| | Canada | SEARS | 898411 |
|  | Canada | SEARS & MAPLE LEAF DESIGN | 1810585 |
| | Canada | SEARS (AND DEALER STORE DESIGN) | 1012452 |
| | Canada | SEARS (AND MAPLE LEAF DESIGN) | 1379825 |
|  | Canada | SEARS (STYLIZED W/BLACK BACKGROUND) | 535349 |
|  | Canada | SEARS (STYLIZED) 2 | 1141474 |
| | Canada | SEARS ACTIVE | 1831464 |
| | Canada | SEARS ACTIVE | 1800770 |
|  | Canada | SEARS AUTO CARE (AND DESIGN) | 1103370 |
| | Canada | SEARS BABY | 1225301-01 |
| | Canada | SEARS BABY | 1225301 |
| | Canada | SEARS BABY (AND DESIGN) | 1110612 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

|  | Canada | SEARS BEAUTY | 1802379 |
|---|---|---|---|
|  | Canada | SEARS BEST | 369899 |
|  | Canada | SEARS BRAND CENTRAL and Design | 830617 |
|  | Canada | SEARS CANADA CHARITABLE FOUNDATION | 699195 |
|  | Canada | SEARS CANADA RECEIVABLES TRUST | 693388 |
|  | Canada | SEARS CATALOGUE CAFÉ (AND DESIGN) | 1168444 |
|  | Canada | SEARS CATALOGUE CLEARANCE | 409132 |
|  | Canada | SEARS CATALOGUE DE LIQUIDATION | 409133 |
|  | Canada | SEARS CHEZ NOUS | 1226705 |
|  | Canada | SEARS CHEZ NOUS (STYLIZED AND DESIGN) | 1232121 |
|  | Canada | SEARS CLASSIC | 1800769 |
|  | Canada | SEARS CLUB (AND DESIGN) | 808662 |
|  | Canada | SEARS CLUB JUST FOR YOU | 1034199 |
|  | Canada | SEARS CLUB MEMBERSHIP IS VERY REWARDING | 675976 |

18-23538-shl   Doc 2507   Filed 02/08/19   Entered 02/08/19 15:11:32   Exhibit A
Pg 696 of 1450

FILED DATE: 5/19/2021 1:27 PM     2020L012403

| | Canada | SEARS CLUB PRESENTS PREMIÈRE BOX OFFICE (AND DESIGN) | 1015595 |
|---|---|---|---|
| | Canada | SEARS COLLECTION POUR ENFANTS (AND DESIGN) | 858199 |
| | Canada | SEARS COMMERCIAL PARTS DIVISION | 836032 |
| | Canada | SEARS CONNECT (AND DESIGN) 3 | 1420490 |
| | Canada | SEARS DÉCOR | 1184490 |
| | Canada | SEARS DIRECT AU CLIENT! À TEMPS, À DOMICILE! (AND DESIGN) | 1377128 |
| | Canada | SEARS DIRECT TO YOU (AND DESIGN) | 880101 |
| | Canada | SEARS DIRECT TO YOU! RIGHT TO YOU, RIGHT ON TIME! (AND DESIGN) | 1377131 |
| | Canada | SEARS DIRECTEMENT À VOUS (AND DESIGN) | 880102 |
| | Canada | SEARS DIVISION | 514049 |
| | Canada | SEARS EASYTALK | 876636 |
| | Canada | SEARS ECO | 759778 |
| | Canada | SEARS ELECTRONICS (AND DESIGN) | 755033 |
| | Canada | SEARS ÉLECTRONIQUE (AND DESIGN) | 755032 |

18-23538-rdd Doc 2507-1 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A
Pg 697 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | Canada | SEARS FAMILY FIRST CLUB | 1119889 |
|---|---|---|---|
| | Canada | SEARS FAMILY FIRST CLUB (AND DESIGN) | 1119890 |
| | Canada | SEARS FOR MY HOME | 1108775 |
| | Canada | SEARS FOR MY HOME (AND DESIGN) | 1108784 |
| | Canada | SEARS GUARANTEED HOME IMPROVEMENTS SOMEONE YOU KNOW | 697493 |
| | Canada | SEARS GUARANTEED HOME IMPROVEMENTS TALK TO SOMEONE YOU KNOW | 697496 |
| | Canada | SEARS HOME | 1164110 |
| | Canada | SEARS HOME | 1164110-01 |
| | Canada | SEARS HOME ALARM | 1351745 |
| | Canada | SEARS HOME ALARM (AND DESIGN) | 1366754 |
| | Canada | SEARS HOME SHOPPING (AND DESIGN) | 749441 |
| | Canada | SEARS HOMECENTRAL | 862778 |
| | Canada | SEARS HOMECENTRAL (AND DESIGN) | 1024793 |
| | Canada | SEARS HOMESECURITY (AND DESIGN) | 1144131 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | Canada | SEARS INCENTIVES SOMETHING FOR EVERYONE (AND DESIGN) | 1156326 |
|---|---|---|---|
| | Canada | SEARS KIDS | 1800773 |
| | Canada | SEARS KIDS COLLECTION (AND DESIGN) | 858198 |
|  | Canada | SEARS KIDS COLLECTION POUR ENFANTS (AND DESIGN) | 1018549 |
| | Canada | SEARS LABORATORY TESTED (AND DESIGN) | 556750 |
| | Canada | SEARS MAN | 1800772 |
| | Canada | SEARS ONTARIO DRAMA FESTIVAL (AND DESIGN) | 827531 |
| | Canada | SEARS OPTICAL CENTRE | 1105458 |
| | Canada | SEARS OUTDOOR | 1800768 |
| | Canada | SEARS OUTLET STORE....OFF PRICE EVERDAY!! | 892464 |
| | Canada | SEARS PASSPORT TO TRAVEL | 1226706 |
| | Canada | SEARS PASSPORT TO TRAVEL (AND DESIGN) | 1232113 |
| | Canada | SEARS PHONEPLAN | 780267 |
| | Canada | SEARS PHONEPLAN GUARANTEED SERVICE. GUARANTEED | 787760 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:31 Exhibit A
Pg 699 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | Canada | SEARS POUR MA MAISON | 1108783 |
|---|---|---|---|
| | Canada | SEARS POUR MA MAISON (AND DESIGN) | 1108782 |
| | Canada | SEARS REQUEST BABY REGISTRY (AND DESIGN) | 889806 |
| | Canada | SEARS REQUEST GIFT REGISTRY (AND DESIGN) | 1012451 |
| | Canada | SEARS REQUEST WEDDING REGISTRY (AND DESIGN) | 889804 |
| | Canada | SEARS SATISFACTION GUARANTEED (AND DESIGN) | 742900 |
| | Canada | SEARS SIGNATURE | 1132811 |
| | Canada | SEARS TRAVEL (AND DESIGN) | 1178572 |
| | Canada | SEARS VACATION HOT SPOTS | 1156330 |
| | Canada | SEARS WELCOME HOME | 1226704 |
| | Canada | SEARS WELCOME HOME (STYLIZED AND DESIGN) | 1232114 |
| | Canada | SEARS WHERE WE CARE ENOUGH TO SHARE | 710877 |
| | Canada | SEARS with 5 Star Design | 892465 |
| | Canada | SEARS WOMAN | 1800771 |

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:14:32   Exhibit A
Pg 472 of 1150

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | Canada | SEARS YOUNG FUTURES (AND DESIGN) | 1159441 |
|---|---|---|---|
| | Canada | SEARS YOUNG FUTURES PROGRAM | 862374 |
| | Canada | SEARS-0-PEDIC COMFORT PLUS | 1034201 |
| | Canada | SEARSCONNECT | 871798 |
|  | Canada | SEARSCONNECT (AND DESIGN) 2 | 1122827 |
| | Canada | SEARS-O-PEDIC (AND DESIGN) | 1031015 |
| | Canada | SEARS-O-PEDIC COMFORT | 1034202 |
|  | Canada | SEARSXPRESS (AND DESIGN) | 1156324 |
| | Canada | SÉCURITÉ AU FOYER SEARS (AND DESIGN) | 1144132 |
| | Canada | SECURITY ... FROM THE COMPANY YOU TRUST | 1367249 |
| | Canada | SENSOR TOUCH | 414303 |
|  | Canada | SERVICE AUTO SEARS (AND DESIGN) | 1107210 |
| | Canada | SERVICE FROM THE COMPANY YOU TRUST | 1105459 |
| | Canada | SERVICE YOU CAN TRUST | 774959 |

18-23538-rdd Doc 2507-7 Filed 02/08/19 Entered 02/08/19 16:14:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM          2020L012403

| | Canada | SERVICELIVE | 1919628 |
|---|---|---|---|
| | Canada | SILVERGUARD | 429380 |
| | Canada | SILVERGUARD ESPRIT | 728498 |
| | Canada | SIMPLE & FACILE | 421695 |
| | Canada | SIMPSONS-SEARS (Stylized) | 0219812 |
| | Canada | SK (AND DESIGN) | 1161880 |
| | Canada | SK (STYLIZED) | 1429531 |
| | Canada | SLUICEMASTER | 626278 |
| | Canada | SMARTFIT | 1339661 |
| | Canada | SOFT HEAT | 589110 |
| | Canada | SOMETHING FOR EVERYONE | 1170215 |
| | Canada | SOUHAITS SEARS (STYLIZED AND DESIGN) | 886992 |
| | Canada | SOUHAITS SEARS LISTE DE CADEAUX (STYLIZED AND DESIGN) | 1012450 |
| | Canada | SOUHAITS SEARS LISTE DE MARIAGE (STYLIZED AND DESIGN) | 889805 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:31 Exhibit A
Pg 702 of 1450

FILED DATE: 5/19/2021 1:27 PM          2020L012403

| | | | |
|---|---|---|---|
| | Canada | SOUHAITS SEARS LISTE POUR BEBE (STYLIZED AND DESIGN) | 889807 |
| | Canada | SPLIT2FIT | 1265725 |
| | Canada | STEADYRIDER RT | 473638 |
| | Canada | STITCH'N TIME | 879040 |
| | Canada | SUPERPLUSH II (AND DESIGN) | 449484 |
| | Canada | SURF ZONE | 625915 |
| TEXAS STEER | Canada | TEXAS STEER | 1092736 |
| | Canada | THE BIG TOY CHEST | 423212 |
| | Canada | THE BRANDS YOU WANT AT THE STORE YOU TRUST | 756240 |
| | Canada | THE FASHION PLACE | 422887 |
| | Canada | THE LABEL OF CONFIDENCE | 406335 |
| | Canada | THE SLEEP SHOP BY SEARS | 1800767 |
| THOM MCAN | Canada | THOM MCAN | 1022277 |
| | Canada | TOUGHMATES | 451155 |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 703 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

|  | Canada | TREE AND TENT DESIGN | 447065 |
|--|--------|----------------------|--------|
|  | Canada | TRIO (AND DESIGN) | 1178571 |
|  | Canada | TROUVEZ TOUT @ SEARS.CA | 1377137 |
|  | Canada | TWIN SKINS | 439465 |
|  | Canada | ULTRACARE | 1171570 |
|  | Canada | UN SERVICE DE TOUTE CONFIANCE | 1105457 |
|  | Canada | VACANCES SEARS POINTS CHAUDS | 1156331 |
|  | Canada | VOYAGES SEARS (AND DESIGN) | 1178570 |
|  | Canada | WAITING GAME CLUB | 372428 |
|  | Canada | WAITING GAME CLUB (AND BABY DESIGN) | 752158 |
|  | Canada | WAITING GAME CLUB (AND TEDDY BEAR DESIGN) | 1134640 |
|  | Canada | WALLY | 1678377 |
|  | Canada | WE GIVE YOU THE WORLD | 866797 |
|  | Canada | WEATHERBEATER | REGISTERED |

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | | | |
|---|---|---|---|
| WEATHERHANDLER | Canada | WEATHERHANDLER | 744017 |
| | Canada | WHISPER BELT | 1053100 |
| | Canada | WHISPERTONE | 1335828 |
| | Canada | WONDERLITE | 1409866 |
| | Canada | WWW.SEARS.CA | 1033410 |
| | Canada | YOU'LL FIND IT @ SEARS.CA | 1377135 |
| | Canada | YOUR CARD OF CHOICE | 738196 |
| | Canada | YOUR LOWEST PRICE IS A KMART PRICE | 711246 |
| GALAXY | Chile | GALAXY | 512112 |
| KMART | Chile | KMART | 265372 |
| KMART | Chile | KMART | 265369 |
| KMART | Chile | KMART | 265371 |
| KMART | Chile | KMART | 265373 |
| KMART | Chile | KMART | 265370 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| **KMART** | Chile | KMART | 265368 |
| | Chile | SEARS ROEBUCK S.A. | 824.934 |
| | Chile | SEARS.CL | n/a |
| **STRUCTURE** | Chile | STRUCTURE | 285617 |
| **STRUCTURE** | Chile | STRUCTURE | 256616 |
| | China P.R. | ALPHALINE | 11987659 |
| | China P.R. | ALPHALINE | 11987658 |
| | China P.R. | COBBIE | 598198 |
| | China P.R. | COBBIE (IN CHINESE CHARACTERS) | 659719 |
| | China P.R. | COBBIE CUDDLERS | 3682844 |
| **COVINGTON** | China P.R. | COVINGTON | 1040197 |
| | China P.R. | K (Stylized) | 4248712 |
| | China P.R. | K (Stylized) | 4248710 |
| | China P.R. | K STYLIZED | 4248711 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A
Pg 706 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | China P.R. | KMART | 766745 |
|---|---|---|---|
| | China P.R. | KMART | 1065000 |
| | China P.R. | KMART | 4248708 |
| | China P.R. | KMART | 23444553 |
| | China P.R. | KMART & K | 4248714 |
| | China P.R. | KMART & K | 4248715 |
| | China P.R. | KMART (Stylized; Lower Case) | 4248709 |
| | China P.R. | KMART (Stylized; Lower Case) | 4248707 |
| | China P.R. | KMART K DESIGN | 4248713 |
| METAPHOR | China P.R. | METAPHOR | 10267766 |
| | China P.R. | METAPHOR | 14006761 |
| | China P.R. | METAPHOR | 14006762 |
| | China P.R. | METAPHOR | 14006763 |
| | China P.R. | METAPHOR | 14006764 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

|  | China P.R. | METAPHOR (Stylized) | 14006758 |
|---|---|---|---|
|  | China P.R. | METAPHOR (Stylized) | 14006759 |
|  | China P.R. | METAPHOR (Stylized) | 14006760 |
|  | China P.R. | METAPHOR (Stylized) | 10268152 |
|  | China P.R. | METAPHOR STYLIZED | 10268155 |
|  | China P.R. | NORTH PASS | 3412026 |
|  | China P.R. | SAFETRAX | 25300544 |
|  | China P.R. | SEARS | 138316 |
|  | China P.R. | SEARS | 22780333 |
|  | China P.R. | SEARS ROEBUCK | 138315 |
| SHOP YOUR WAY | China P.R. | SHOP YOUR WAY and Design | 14648785 |
| SHOP YOUR WAY | China P.R. | SHOP YOUR WAY and Design | 26984288 |
| STRUCTURE | China P.R. | STRUCTURE | 90022554 |
|  | China P.R. | THOM MCAN (CHINESE CHARACTERS - TUO MA KEN) | 1557252 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | China P.R. | THOM MCAN (STYLIZED) | 1280743 |
|---|---|---|---|
| | China P.R. | TWO HEARTS | 4051084 |
| | China P.R. | TWO HEARTS | 6387456 |
| | China P.R. | TWO HEARTS | 15529051 |
| | Colombia | CANYON RIVER BLUES | 9113199 |
| | Colombia | COBBIE CUDDLERS | 01-28008 |
| KMART | Colombia | KMART | 94058937 |
| KMART | Colombia | KMART | 58980 |
| | Colombia | SEARS | 261916 |
| | Colombia | SEARS (AND DEVICE) | 350206 |
| | Colombia | SEARS (AND DEVICE) | 92 350207 |
| | Colombia | SEARS (AND DEVICE) | 92 350208 |
| | Colombia | SEARS (ENSEÑA) [COMMERCIAL NAME] | 231168 |
| | Colombia | SEARS (ENSEÑA) RAILROAD DESIGN [COMMERCIAL NAME] | 237260 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 709 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| | Colombia | SEARS [COMMERCIAL NAME] | 133927 |
| STRUCTURE | Colombia | STRUCTURE | 96022689 |
| STRUCTURE | Colombia | STRUCTURE | n/a |
| THOM MCAN | Colombia | THOM MCAN | 4071932 |
| BLUELIGHT SPECIAL | Community Trademark | BLUELIGHT SPECIAL | 2203347 |
| | Community Trademark | CANYON RIVER BLUES | 17707 |
| COVINGTON | Community Trademark | COVINGTON | 1040197 |
| DELVER | Community Trademark | DELVER | 8562829 |
| GALAXY | Community Trademark | GALAXY | 1890227 |
| kmart | Community Trademark | K KMART and Design (2004 Logo) | 3975737 |
| KMART | Community Trademark | KMART | 235556 |
| kmart | Community Trademark | KMART (STYLIZED) | 3975497 |
| | Community Trademark | SAFETRAX | 7433981 |
| | Community Trademark | SAFETYTRAX | 7216518 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| | Community Trademark | SEARS | 3406279 |
| SEARS | Community Trademark | SEARS (STYLIZED) | 917369 |
| THE GREAT INDOORS | Community Trademark | THE GREAT INDOORS | 1685395 |
| THOM MCAN | Community Trademark | THOM MCAN | 7216575 |
| TOUGHSKINS | Community Trademark | TOUGHSKINS | 1017889 |
| | Community Trademark | WALLY | 012907465 |
| BASIC EDITIONS | Costa Rica | BASIC EDITIONS | 8053-2001 |
| | Costa Rica | COBBIE CUDDLERS | 8060-2001 |
| EXPRESSIONS | Costa Rica | EXPRESSIONS | 8063-2001 |
| JOX | Costa Rica | JOX STYLIZED | 49226 |
| KMART | Costa Rica | KMART | 2011-3569 |
| | Costa Rica | KMART (1990 LOGO) [COMMERCIAL NAME] | 77042 |
| | Costa Rica | KMART [COMMERCIAL NAME] | 87324 |
| | Costa Rica | KMART and Design (1990 Logo Red) | 20020006830 |

18-23538-rdd Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 711 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | Costa Rica | NORTH PASS | 8085-2001 |
|---|---|---|---|
| NORTHWEST TERRITORY | Costa Rica | NORTHWEST TERRITORY | 8084-2001 |
| | Costa Rica | SAFETRAX | 8069-2001 |
| | Costa Rica | SEARS | n/a |
| | Costa Rica | SEARS | 54573 |
| | Costa Rica | SEARS | 37770 |
| | Costa Rica | SEARS | 37773 |
| | Costa Rica | SEARS | 37763 |
| | Costa Rica | SEARS | n/a |
| TEXAS STEER | Costa Rica | TEXAS STEER | 8075-2001 |
| THOM MCAN | Costa Rica | THOM MCAN | 5176-2002 |
| COVINGTON | Croatia | COVINGTON | 1040197 |
| | Croatia | SEARS | Z980551A |
| | Croatia | SEARS | 263543A |

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | | | |
|---|---|---|---|
| STRUCTURE | Croatia | STRUCTURE | Z934064A |
| KMART | Cuba | KMART | 125594 |
| | Cuba | KMART & DESIGN | 129894 |
| GALAXY | Cyprus | GALAXY | 58229 |
| GALAXY | Cyprus | GALAXY | 58230 |
| | Czech Republic | GALAXY | 159419 |
| | Czech Republic | SEARS | 0-132339 |
| | Czech Republic | SEARS | 263543A |
| STRUCTURE | Czech Republic | STRUCTURE | 59805 |
| | Denmark | COBBIE | 6242/1988 |
| | Denmark | JOX | VA 1976 05089 |
|  | Denmark | KMART and Design (1990 Logo) | VA199006333 |
| STRUCTURE | Denmark | STRUCTURE | VA 2000 04635 |
| | Dominican Republic | COBBIE CUDDLERS | 2003-36078 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | Dominican Republic | JOX | n/a |
|---|---|---|---|
| KMART | Dominican Republic | KMART | n/a |
| KMART | Dominican Republic | KMART | n/a |
| KMART | Dominican Republic | KMART | n/a |
| K mart | Dominican Republic | KMART & DESIGN | n/a |
| mart K | Dominican Republic | KMART (1990 LOGO RED) | 200281116 |
| | Dominican Republic | SEARS | n/a |
| | Dominican Republic | SEARS | n/a |
| | Dominican Republic | SEARS | n/a |
| SEARS HOMETOWN STORE | Dominican Republic | SEARS HOMETOWN STORE | 2011-16844 |
| THOM MCAN | Dominican Republic | THOM MCAN | 2003-36079 |
| COLORMATE | Ecuador | COLORMATE | 87161 |
| KMART | Ecuador | KMART | 177559 |
| | Ecuador | KMART & DESIGN | 5454 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A
Pg 456 of 1450

FILED DATE: 5/19/2021 1:27 PM        2020L012403

|  | Ecuador | LIFE STYLER | 87165 |
|---|---|---|---|
|  | Ecuador | SEARS | 8 |
|  | Ecuador | SEARS | 45 |
|  | Ecuador | SEARS | 225452 |
|  | Ecuador | SEARS, ROEBUCK AND CO. | 18 |
| **STRUCTURE** | Ecuador | STRUCTURE | 48354 |
| **THOM MCAN** | Ecuador | THOM MCAN | 74906 |
| COVINGTON | Egypt | COVINGTON | 1040197 |
|  | Egypt | SEARS | 57757 |
|  | Egypt | SEARS | 57768 |
|  | Egypt | SEARS | 57761 |
|  | Egypt | SEARS | 263543A |
| **STRUCTURE** | Egypt | STRUCTURE | 135454 |
| **TEXAS STEER** | Egypt | TEXAS STEER | 122475 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| BASIC EDITIONS | El Salvador | BASIC EDITIONS | E-16737/01 |
|---|---|---|---|
| | El Salvador | COBBIE CUDDLERS | E-16739/01 |
| EXPRESSIONS | El Salvador | EXPRESSIONS | E-16740/01 |
| | El Salvador | ISLAND CLUB | E-16680-01 |
| JUST KIDZ | El Salvador | JUST KIDZ | 2010101667 |
| KMART | El Salvador | KMART | 475494 |
| | El Salvador | KMART [COMMERCIAL NAME] | E-1366-93 |
| KMART | El Salvador | KMART [Commercial Name] | E-409-93 |
| | El Salvador | NORTH PASS | E-16683-01 |
| NORTHWEST TERRITORY | El Salvador | NORTHWEST TERRITORY | E-16741/01 |
| | El Salvador | SAFETRAX | E-16685-01 |
| | El Salvador | SEARS | 762-97 |
| | El Salvador | SEARS | n/a |
| | El Salvador | SEARS | 230 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 456 of 1450
FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | | | |
|---|---|---|---|
| | El Salvador | SEARS ROEBUCK | 2009095844 |
| STRUCTURE | El Salvador | STRUCTURE | 1994001583 |
| STRUCTURE | El Salvador | STRUCTURE | 1994001584 |
| STRUCTURE | El Salvador | STRUCTURE | 1994001586 |
| STRUCTURE | El Salvador | STRUCTURE | 1994001587 |
| TEXAS STEER | El Salvador | TEXAS STEER | E-41970-04 |
| THOM MCAN | El Salvador | THOM MCAN | 97Book94 |
| | Estonia | SEARS | 9801076 |
| | Finland | SEARS | T198101940 |
| STRUCTURE | Finland | STRUCTURE | T200003612 |
| | France | COBBIE CUDDLERS | 96652167 |
| COMPANION | France | COMPANION | 33203778 |
| | France | K MART | 663190 |
| Kmart | France | KMART and Design (1990 Logo) | 1728755 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| | France | SEARS | 10131 |
| | France | SEARS | 959887 |
| | France | SEARS | 263543A |
| STRUCTURE | France | STRUCTURE | 293590 |
| | French Polynesia | COBBIE CUDDLERS | 96652167 |
| | French Polynesia | SEARS | 10131 |
| STRUCTURE | Gaza | STRUCTURE | 4892 |
| STRUCTURE | Gaza | STRUCTURE | 4893 |
| | Germany | COBBIE CUDDLERS | U 7337 25WZ |
| COMPANION | Germany | COMPANION | 30328599.0/12 |
| | Germany | KMART & DESIGN | 1188406 |
| | Germany | SEARS | 263543A |
| | Germany | STRUCTURE AND DESIGN | L34 679/25 Wz |
| THOM MCAN | Germany | THOM MCAN | M 37 392/25 WZ |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 490 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

|  | Ghana | SEARS | 21479 |
|---|---|---|---|
| BLUELIGHT | Great Britain | BLUELIGHT | 2264462 |
|  | Great Britain | BLUELIGHT.COM | n/a |
|  | Great Britain | COBBIE CUDDLERS | 2115174 |
|  | Great Britain | K MART STYLIZED & KEY DESIGN | 1002366 |
| ROADHANDLER | Great Britain | ROADHANDLER | 1444231 |
|  | Great Britain | SEARS ROEBUCK | 1102481 |
|  | Great Britain | SEARS, ROEBUCK AND CO. | 1272841 |
|  | Great Britain | SEARS, ROEBUCK AND CO. | 1292023 |
| STRUCTURE | Great Britain | STRUCTURE | 1468446 |
| THOM MCAN | Great Britain | THOM MCAN | 2309532 |
| STRUCTURE | Greece | STRUCTURE | 120461 |
|  | Grenada | KMART & KEY LOGO | n/a |
|  | Guam | SEARS | SM-800-92-133 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| **BASIC EDITIONS** | Guatemala | BASIC EDITIONS | 2001-07296 |
| | Guatemala | COBBIE CUDDLERS | 2001-07300 |
| **COLORMATE** | Guatemala | COLORMATE | 2000-5887 |
| **COLORMATE** | Guatemala | COLORMATE | 144445 |
| | Guatemala | DOCKMATES | 2001-07301 |
| GALAXY | Guatemala | GALAXY | 143953 |
| GALAXY | Guatemala | GALAXY | 143998 |
| | Guatemala | ISLAND CLUB | 2001-07305 |
| | Guatemala | JOX | R-002592-2009 |
| KMART | Guatemala | KMART | 1997-003323 |
| KMART | Guatemala | KMART | M-002316-2011 |
|  | Guatemala | KMART & DESIGN | 2009 |
|  | Guatemala | KMART (1990 LOGO RED) | 36967 |
| | Guatemala | LIFESTYLER | 1999-03892 |

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 720 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | Guatemala | NORTH PASS | 2001-07308 |
|---|---|---|---|
| NORTHWEST TERRITORY | Guatemala | NORTHWEST TERRITORY | 2001-07309 |
| | Guatemala | SAFETRAX | 2001-07311 |
| | Guatemala | SEARS | 48279 |
| | Guatemala | SEARS | 48290 |
| | Guatemala | SEARS | 48339 |
| | Guatemala | SEARS | M-1786-2000 |
| | Guatemala | SEARS | 1999-03884 |
| | Guatemala | SEARS | 3610-2000 |
| | Guatemala | SEARS | 48275 |
| | Guatemala | SEARS | 48283 |
| | Guatemala | SEARS | 1977-009749 |
| | Guatemala | SEARS [COMMERCIAL NAME] | 1999-04966 |
| | Guatemala | STRUCTURE (TRADE NAME) | 1041-2000 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | Country | Brand | Number |
|---|---|---|---|
| TEXAS STEER | Guatemala | TEXAS STEER | 2001-07315 |
| THOM MCAN | Guatemala | THOM MCAN | 2001-07316 |
| | Haiti | K MART | n/a |
| | Haiti | SEARS, ROEBUCK AND CO. | 204/16 |
| STRUCTURE | Haiti | STRUCTURE | n/a |
| BASIC EDITIONS | Honduras | BASIC EDITIONS | 4226-01 |
| | Honduras | COBBIE CUDDLERS | 4230-01 |
| | Honduras | ISLAND CLUB | 4236-01 |
| | Honduras | K MART | n/a |
| KMART | Honduras | KMART | 1023994 |
| mart K | Honduras | KMART & DESIGN | 1025994 |
| NORTHWEST TERRITORY | Honduras | NORTHWEST TERRITORY | 4240-01 |
| | Honduras | SAFETRAX | 4243-01 |
| | Honduras | SEARS | 33619-09 |

18-23538-rdd Doc 2507-7 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 722 of 1450

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | Honduras | STRUCTURE | 2776/94 |
|---|---|---|---|
| | Honduras | THOM MCAN | 29508-11 |
| | Honduras | THOM MCAN | 5075-2001 |
| | Hong Kong | ALPHALINE | 302484252AA |
| | Hong Kong | ALPHALINE | 302484252AB |
| | Hong Kong | CARRIAGE COURT | B2333/1988 |
| | Hong Kong | COBBIES | 780/1978 |
| | Hong Kong | GALAXY | 21412/2000 |
| | Hong Kong | GALAXY | 21411/2000 |
| | Hong Kong | K MART AND LOGO | 2001B06061 |
| | Hong Kong | KMART | 9212390 |
| | Hong Kong | SEARS | 833/1978 |
| | Hong Kong | STRUCTURE | 3689/90 |
| | Hong Kong | THOM MCAN | 199813030 |

18-23538-rdd Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 723 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| TRADER BAY | Hong Kong | TRADER BAY | 1593/87 |
| | Hungary | SEARS | M9801322 |
| | Hungary | SEARS | 263543A |
| STRUCTURE | Hungary | STRUCTURE | 4388/90 |
| KMART | Iceland | KMART | 105/1994 |
| KMART | India | KMART | 1500838 |
| | India | SEARS | 437376B |
| | India | SEARS | 1239290 |
| | India | SEARS GLOBAL TECHNOLOGY | 1225053 |
| | India | STRUCTURE AND DESIGN | 571183 |
|  | Indonesia | KMART and Design (1990 Logo) | R00200402349-02351 |
|  | Indonesia | KMART and Design (1990 Logo) | V00200402347-02349 |
|  | Indonesia | KMART and Design (1990 Logo) | R00200402348-02350 |
| STRUCTURE | Indonesia | STRUCTURE | R002011006969 |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
|  | Indonesia | STRUCTURE (stylized with design) | R002008006380 |
| COVINGTON | International | COVINGTON | 1040197 |
| | International | SEARS | 263543A |
| | International | SEARS GLOBAL TECHNOLOGY | 1225053 |
| | International | SHOP YOUR WAY | 1151272 |
| TOUGHSKINS | International | TOUGHSKINS | 1017889 |
| | Ireland | KMART | 1993/04267 |
| STRUCTURE | Ireland | STRUCTURE | 94/3592 |
| | Israel | K MART | 48676 |
|  | Israel | KMART (1990 LOGO RED) | 77328 |
|  | Israel | SHOP YOUR WAY and Design (new logo) | 266654 |
| STRUCTURE | Israel | STRUCTURE | 80147 |
| | Italy | COBBIE CUDDLERS | MI2014C007825 |
| | Italy | K MART | 36975C/88 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | Italy | SEARS | MI2006C003597 |
|---|---|---|---|
| | Italy | SEARS | 263543A |
| | Italy | SEARS ROEBUCK | MI2006C003596 |
| STRUCTURE | Italy | STRUCTURE | MI2000C006374 |
| STRUCTURE | Italy | STRUCTURE | 20714 C/90 |
| THOM MCAN | Italy | THOM MCAN | MI2006C004588 |
| KMART | Jamaica | KMART | 27289 |
| | Jamaica | SEARS | 60866 |
| STRUCTURE | Jamaica | STRUCTURE | 25/1551 |
| BLUELIGHT | Japan | BLUELIGHT | 2001-023843 |
| COVINGTON | Japan | COVINGTON | 1040197 |
| KMART | Japan | KMART | 871971994 |
| Kmart K ケーマート | Japan | KMART (1990 LOGO) WITH KATAKANA | 872051994 |
| | Japan | NORTH PASS | 2002-99054 |

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | Japan | SAFETRAX | 2008-101226 |
|---|---|---|---|
| | Japan | SEARS | 25045/97 |
| | Japan | SEARS | 187345/97 |
| | Japan | SEARS (KATAKANA CHARACTERS) | 23862/98 |
| | Japan | SEARS ROEBUCK | H09-035087 |
| | Japan | SHOP YOUR WAY | 1151272 |
| STRUCTURE | Japan | STRUCTURE | 65336/94 |
| | Japan | SUPER DIEHARD | 21192/95 |
| THOM MCAN | Japan | THOM MCAN | 56-012859 |
| THOM MCAN | Japan | THOM MCAN | 2001-33165 |
| THOM MCAN | Japan | THOM MCAN | 62-026864 |
| Thom McAn | Japan | THOM MCAN (STYLIZED) | n/a |
| | Jordan | KMART (LOGO) | 33493 |
| STRUCTURE | Jordan | STRUCTURE | 61449 |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| STRUCTURE | Jordan | STRUCTURE | 35879 |
| GALAXY | Kenya | GALAXY | 50864 |
| GALAXY | Kenya | GALAXY | 50865 |
| | Kenya | HILLARY | 55114 |
| STRUCTURE | Kuwait | STRUCTURE | 29446 |
| | Latvia | SEARS | M-98-671 |
| | Liberia | SEARS | n/a |
| | Liberia | SEARS | 91078/853 |
| | Liechtenstein | SEARS | 263543A |
| | Liechtenstein | SEARS FINANCIAL NETWORK | 91 1029 WZ L |
| | Macao | K MART | 8797-M |
| KMART | Macao | KMART | 14327 |
| STRUCTURE | Macao | STRUCTURE | 10818-M |
| GALAXY | Macedonia | GALAXY | Z-20001174 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| KMART | Macedonia | KMART | 99994 |
| | Macedonia | SEARS | 263543A |
| | Malaysia | K MART | MB92910 |
| | Malaysia | SEARS | 87/05633 |
| | Malaysia | SEARS ROEBUCK | 87/05535 |
| | Malaysia | SEARS ROEBUCK | 87005536 |
| | Malaysia | SEARS ROEBUCK | 87005534 |
| | Malaysia | SEARS ROEBUCK | 87005530 |
| | Malaysia | SEARS ROEBUCK | 87005533 |
| | Malaysia | SEARS ROEBUCK | 87005537 |
| STRUCTURE | Malaysia | STRUCTURE | 94/07750 |
| Thom McAn | Malaysia | THOM MCAN (STYLIZED) | 85002007 |
| GALAXY | Malta | GALAXY | 32318 |
| GALAXY | Malta | GALAXY | 32319 |

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 531 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| **KMART** | Malta | KMART LOGO | 22286 |
| **STRUCTURE** | Mauritius | STRUCTURE | 99119225 |
| **ALPHALINE** | Mexico | ALPHALINE | 1096865 |
| **ALPHALINE** | Mexico | ALPHALINE | 1096867 |
| **APOSTROPHE** | Mexico | APOSTROPHE | 238992 |
| | Mexico | APOSTROPHE | 1663592 |
| **ATHLETECH** | Mexico | ATHLETECH | 181148 |
| **BASIC EDITIONS** | Mexico | BASIC EDITIONS | 181152 |
| | Mexico | CANYON RIVER BLUES | 92911 |
| | Mexico | CLUB INFANTIL SEARS (AND DESIGN) | 1035246 |
| COVINGTON | Mexico | COVINGTON | 550114 |
| COVINGTON | Mexico | COVINGTON | 550115 |
| **CRB** | Mexico | CRB | 1102962 |
| | Mexico | CROSSROADS | 1035250 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A
Pg 582 of 1450

FILED DATE: 5/19/2021 1:27 PM          2020L012403

| | | | |
|---|---|---|---|
| DELVER | Mexico | DELVER | 1021703 |
| DELVER | Mexico | DELVER | 1021718 |
| ELK WOODS | Mexico | ELK WOODS | 1035245 |
| | Mexico | GUARDSMAN | 1337701 |
| | Mexico | INTIMATE EXPRESSIONS | 142359 |
| | Mexico | JUST KIDZ | 1079108 |
| | Mexico | K MART and Design | 169904 |
| | Mexico | KMART | 586078 |
| | Mexico | LIFE STYLER | 247202 |
| | Mexico | LIFE STYLER | 247205 |
| NORTHWEST TERRITORY | Mexico | NORTHWEST TERRITORY | 180993 |
| NORTHWEST TERRITORY | Mexico | NORTHWEST TERRITORY | 181338 |
| | Mexico | PIO PIO PIO PIO PABELLON PALANCO (AND DESIGN) | 1035258 |
| | Mexico | PIO PIO PIO PIO PABELLON PALANCO (AND DESIGN) | 1035257 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | Mexico | PRIME FIT (AND DESIGN) | 1035259 |
|---|---|---|---|
|  | Mexico | S & Design | 1659865 |
|  | Mexico | S & Design | 1659867 |
|  | Mexico | S & Design | 1659866 |
| | Mexico | SEARS | 1035292 |
| | Mexico | SEARS | 1035293 |
| | Mexico | SEARS | 290802 |
| | Mexico | SEARS | 1035266 |
| | Mexico | SEARS | 1035285 |
| | Mexico | SEARS | 1035284 |
| | Mexico | SEARS | 1035283 |
| | Mexico | SEARS | 1035281 |
| | Mexico | SEARS | 1035280 |
| | Mexico | SEARS | 1035275 |

18-23538-rdd Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 584 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

|  | Mexico | SEARS | 1035276 |
|---|---|---|---|
|  | Mexico | SEARS | 1035291 |
|  | Mexico | SEARS | 1035267 |
|  | Mexico | SEARS | 1035286 |
|  | Mexico | SEARS | 1035260 |
|  | Mexico | SEARS | 1035278 |
|  | Mexico | SEARS | 1035265 |
|  | Mexico | SEARS | 1035264 |
|  | Mexico | SEARS | 1035263 |
|  | Mexico | SEARS | 1035262 |
|  | Mexico | SEARS | 1035261 |
|  | Mexico | SEARS | 1035272 |
|  | Mexico | SEARS | 1035271 |
|  | Mexico | SEARS | 1035270 |

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 15:44:32   Exhibit A
Pg 533 of 1120

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | Mexico | SEARS | 1035279 |
|---|---|---|---|
| | Mexico | SEARS | 1035273 |
| | Mexico | SEARS | 1035288 |
| | Mexico | SEARS | 1035287 |
| **SEARS** **SEARS** | Mexico | Sears & Design | 1659862 |
| | Mexico | Sears & Design | 1659864 |
| | Mexico | SEARS GOLD | 46395 |
| | Mexico | SEARS GOLDEN | 46397 |
| | Mexico | SEARS O PEDIC | 92880 |
| | Mexico | SEARS ROEBUCK | 290803 |
| | Mexico | SHOP YOUR WAY | 1339116 |
| | Mexico | SHOP YOUR WAY | 1339117 |
| | Mexico | THOM MCAN & DESIGN | 557420 |
| **KENMORE** | Micronesia | KENMORE (CAUTIONARY PUB.) | n/a |

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 506 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | Moldova | KMART | 001518 |
|---|---|---|---|
| KMART | Moldova | KMART | 1517 |
| | Moldova | KMART (1990 Logo) | 001519 |
| COVINGTON | Monaco | COVINGTON | 1040197 |
| | Monaco | SEARS | 263543A |
| STRUCTURE | Monaco | STRUCTURE | 15605 |
| STRUCTURE | Montenegro | STRUCTURE | Z-2126/1990 |
| COVINGTON | Morocco | COVINGTON | 1040197 |
| KMART | Morocco | KMART | 51562 |
| KMART | Morocco | KMART | 9177 |
| | Morocco | SEARS | 263543A |
| STRUCTURE | Morocco | STRUCTURE | n/a |
| | Namibia | COBBIE CUDDLERS | 79/739 |
| | Namibia | K MART | 1983/0788 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 535 of 1150

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | Nepal | STRUCTURE | 11392/052 |
|---|---|---|---|
| | New Zealand | 5-WAY FIT | 666864 |
| | New Zealand | COBBIE CUDDLERS | 141058 |
| | New Zealand | FREE SPIRIT | 176999 |
| | New Zealand | PURE BEACH | 670295 |
| | New Zealand | SAFETRAX | 298061 |
| | New Zealand | SHOP YOUR WAY | 1151272 |
| SHOP YOUR WAY | New Zealand | SHOP YOUR WAY and Design (new logo) | 999377 |
| STRUCTURE | New Zealand | STRUCTURE | 238135 |
| STRUCTURE | New Zealand | STRUCTURE | 238134 |
| | New Zealand | THE PERFORMER | 194540 |
| THOM MCAN | New Zealand | THOM MCAN | 298062 |
| TOUGHSKINS | New Zealand | TOUGHSKINS | 814691 |
| BASIC EDITIONS | Nicaragua | BASIC EDITIONS | 2001/03609 |

18-23538-rdd Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 536 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | Nicaragua | COBBIE CUDDLERS | 2001/03613 |
|---|---|---|---|
| COLORMATE | Nicaragua | COLORMATE | 2000/05079 |
| | Nicaragua | DOCKMATES | 2001/03614 |
| EXPRESSIONS | Nicaragua | EXPRESSIONS | 2001/03615 |
| | Nicaragua | ISLAND CLUB | 2001/03619 |
| | Nicaragua | JOX | 2001-03798 |
| | Nicaragua | K MART | 2003/0996 |
|  | Nicaragua | KMART (1990 Logo Red) | 1990-01137 |
| | Nicaragua | LIFESTYLER | 2000/05080 |
| | Nicaragua | NORTH PASS | 2001/03622 |
| NORTHWEST TERRITORY | Nicaragua | NORTHWEST TERRITORY | 2001/03623 |
| | Nicaragua | SAFETRAX | 2001/03626 |
| | Nicaragua | SEARS | 2000/05081 |
| THOM MCAN | Nicaragua | THOM MCAN | 2001/04384 |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| **THOM MCAN** | Nicaragua | THOM MCAN | 2001/03631 |
| | Nigeria | K MART | 34017 |
| | Nigeria | K MART | 34018 |
| | Nigeria | K MART | 34015 |
| | Nigeria | SEARS | 25440 |
| | Nigeria | SEARS | 32722 |
| | Nigeria | SEARS | 32724 |
| | Nigeria | SEARS ROEBUCK | 32734/78/3 |
| | Norway | KMART | 832491 |
| | Norway | KMART & DESIGN | 912714 |
| | Norway | KMART (2004 LOGO) | 200408218 |
| | Norway | KMART (Stylized; Lower Case) | 200408196 |
|  | Norway | SHOP YOUR WAY and Design (new logo) | 201407430 |
| | Oman | K MART | 4257 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

|  | Pakistan | SEARS | 88198 |
|---|---|---|---|
|  | Pakistan | SEARS | 88202 |
|  | Pakistan | SEARS | 88207 |
|  | Pakistan | SEARS | 87695 |
|  | Pakistan | SEARS | 88205 |
|  | Pakistan | SEARS | 88257 |
|  | Pakistan | SEARS | 88200 |
|  | Pakistan | SEARS | 88254 |
|  | Pakistan | SEARS | 88209 |
| STRUCTURE | Pakistan | STRUCTURE | 139484 |
| STRUCTURE | Pakistan | STRUCTURE | 139483 |
| STRUCTURE | Pakistan | STRUCTURE | 139620 |
|  | Panama | ACTIVES | 118098 |
|  | Panama | BAYBERRY & CO. | 118100 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

|  | Panama | BLUE HILL TRADING CO. | 118102 |
|---|---|---|---|
|  | Panama | BODY CO. | 118101 |
|  | Panama | CARA MIA | 118898 |
|  | Panama | COBBIE CUDDLERS | 118103 |
| COLORMATE | Panama | COLORMATE | 75364 |
| COLORMATE | Panama | COLORMATE | 88958 |
|  | Panama | DOCKMATES | 118104 |
|  | Panama | E.Z. STRIDER | 118105 |
|  | Panama | EXPLORERS | 118106 |
| EXPRESSIONS | Panama | EXPRESSIONS | 118107 |
|  | Panama | FIRESIDE | 118108 |
|  | Panama | FUN STEPS | 118109 |
|  | Panama | ISLAND CLUB | 118110 |
|  | Panama | KINSMAN | 118111 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 512 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| KMART | Panama | KMART | 24363 |
| K mart | Panama | KMART (1990 LOGO RED) | 57674 |
| | Panama | LOVE MATES | 118112 |
| | Panama | NORTH PASS | 118113 |
| NORTHWEST TERRITORY | Panama | NORTHWEST TERRITORY | 118114 |
| | Panama | OLYMPIAN | 118115 |
| | Panama | SAFETRAX | 118116 |
| | Panama | SEARS | 84159 |
| | Panama | SEARS | 88963 |
| | Panama | SOFT KICKS | 118117 |
| STRUCTURE | Panama | STRUCTURE | 75577 |
| | Panama | SURF MOC | 118118 |
| TEXAS STEER | Panama | TEXAS STEER | 118119 |
| THOM MCAN | Panama | THOM MCAN | 118120 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| | Panama | UPSTAGE | 118121 |
| *Walkables* | Panama | WALKABLES (STYLIZED) | 118122 |
| | Panama | WINDHAM | 118123 |
| | Panama | WOODBRIDGE | 118124 |
| | Paraguay | FOOTACTION | 19503 |
| | Paraguay | FOOTACTION | 19502 |
| | Paraguay | K MART | 266130 |
| | Paraguay | KMART | 36634/2005 |
| | Paraguay | SEARS | 31617 |
| | Paraguay | SEARS | 31618 |
| | Paraguay | SEARS | 31620 |
| | Paraguay | SEARS | 31619 |
| STRUCTURE | Paraguay | STRUCTURE | 29884 |
| | Peru | CANYON RIVER BLUES | 402141 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| **KMART** | Peru | KMART | 163836 |
| | Peru | KMART (1990 LOGO) | 163837 |
| | Peru | SEARS | 721000 |
| | Peru | SEARS | 721002 |
| | Peru | SEARS | 721001 |
| **SEARS** | Peru | SEARS (Stylized) | 721003 |
| **THOM MCAN** | Peru | THOM MCAN | 611724 |
| | Poland | COBBIE STYLIZED | Z106034 |
| | Poland | SEARS | Z-185921 |
| **STRUCTURE** | Poland | STRUCTURE | 228309 |
| **JUST KIDZ** | Portugal | JUST KIDZ | 480354 |
| | Portugal | JUST KIDZ BY SEARS | 480355 |
| | Portugal | SEARS | 11175 |
| | Portugal | SEARS | 124569 W |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 513 of 1120

FILED DATE: 5/19/2021 1:27 PM          2020L012403

| | | | |
|---|---|---|---|
| | Portugal | SEARS | 124568 Z |
| | Portugal | SEARS | 124567 Y |
| | Portugal | SEARS | 263543A |
| SEARS | Portugal | SEARS (STYLIZED) | 124585 W |
| SEARS | Portugal | SEARS (STYLIZED) | 124574 X |
| SEARS | Portugal | SEARS (STYLIZED) | 124573 V |
| SEARS | Portugal | SEARS (STYLIZED) | 124570 S |
| | Puerto Rico | COBBIE CUDDLERS | 68606 |
| | Puerto Rico | K MART | 6949 |
| THOM MCAN | Puerto Rico | THOM MCAN | 8616 |
| | Romania | K MART | 14020 |
| SEARS | Romania | SEARS (STYLIZED) | 25547 |
| STRUCTURE | Romania | STRUCTURE | M200002244 |
| | Russian Federation | SEARS | 140225 |

FILED DATE: 5/19/2021 1:27 PM     2020L012403

| | | | |
|---|---|---|---|
| | Russian Federation | SEARS | 98708030 |
| STRUCTURE | Russian Federation | STRUCTURE | 2000726294 |
| | San Marino | SEARS | 263543A |
| COLORMATE | Saudi Arabia | COLORMATE | 8045 |
| | Saudi Arabia | K MART and Design (in Red) | 245/17 |
| KMART | Saudi Arabia | K-MART | 133/83 |
| | Saudi Arabia | SEARS (English and Arabic/Latin Characters) | 10097 |
| | Saudi Arabia | SEARS (English and Arabic/Latin Characters) | 10098 |
| STRUCTURE | Saudi Arabia | STRUCTURE | 26711 |
| COVINGTON | Serbia-Montenegro | COVINGTON | 1040197 |
| | Serbia-Montenegro | SEARS | 263543A |
| STRUCTURE | Serbia-Montenegro | STRUCTURE | Z-2126/1990 |
| COVINGTON | Singapore | COVINGTON | 1040197 |
| GALAXY | Singapore | GALAXY | T00/18300B |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A Pg 517 of 1120

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| STRUCTURE | Singapore | STRUCTURE | T9106133I |
| STRUCTURE | Singapore | STRUCTURE | T99/00463F |
| THOM MCAN | Singapore | THOM MCAN | 275/85 |
| | Slovak Republic | SEARS | 263543A |
| STRUCTURE | Slovak Republic | STRUCTURE | 59805 |
| | Slovenia | SEARS | Z-9870498 |
| | South Africa | COBBIE CUDDLERS | 79/2744 |
| JUST KIDZ | South Africa | JUST KIDZ | 2011/05283 |
| JUST KIDZ | South Africa | JUST KIDZ | 2011/05282 |
| JUST KIDZ | South Africa | JUST KIDZ | 2011/05281 |
| JUST KIDZ | South Africa | JUST KIDZ | 2011/04048 |
| JUST KIDZ | South Africa | JUST KIDZ | 2011/05284 |
| | South Africa | JUST KIDZ BY SEARS | 2011/04049 |
| | South Africa | JUST KIDZ BY SEARS | 2011/05288 |

18-23538-rdd Doc 2507-1 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A
Pg 516 of 1150

FILED DATE: 5/19/2021 1:27 PM     2020L012403

| | South Africa | JUST KIDZ BY SEARS | 2011/05285 |
|---|---|---|---|
| | South Africa | JUST KIDZ BY SEARS | 2011/05286 |
| | South Africa | JUST KIDZ BY SEARS | 2011/05287 |
| | South Africa | K MART | 1976/03638 |
| KMART | South Africa | KMART | 92/3370 |
| KMART | South Africa | KMART | 1976/03640 |
| | South Africa | KMART & DESIGN | 90/7115 |
| | South Africa | KMART & DESIGN | 90/7116 |
| KMART | South Africa | KMART LOGO | 92/3141 |
| | South Africa | SEARS | B77/4884 |
| | South Africa | SEARS | B77/4885 |
| | South Africa | SEARS | B77/4882 |
| | South Africa | SEARS | 2017/02359 |
| | South Africa | SHOP YOUR WAY | 2013/00659 |

18-23538-shl Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 519 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| | South Africa | SHOP YOUR WAY | 2013/00660 |
| STRUCTURE | South Africa | STRUCTURE | 2000/02680 |
| | South Korea | COBBIE CUDDLERS | 40-2003-18555 |
| | South Korea | COBBIES | 741/1983 |
| COVINGTON | South Korea | COVINGTON | 1040197 |
| KMART | South Korea | KMART | 5120081952 |
| | South Korea | SEARS | 87-19613 |
| | South Korea | SEARS | 87-19615 |
| | South Korea | SEARS | 50-2008-256 |
| | South Korea | SEARS | 50-2009-2226 |
| | South Korea | SEARS | 87-19612 |
| | South Korea | SEARS | 50-2008-01414 |
| | South Korea | SEARS | 87-1743 |
| | South Korea | SEARS | 87-20455 |

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| STRUCTURE | South Korea | STRUCTURE | 40-2011-40648 |
|---|---|---|---|
| JUST KIDZ | Spain | JUST KIDZ | 2973551(3) |
| JUST KIDZ | Spain | JUST KIDZ | 2971507 |
| | Spain | JUST KIDZ BY SEARS | 2971508(3) |
| | Spain | JUST KIDZ BY SEARS | 2973554(8) |
| KMART | Spain | KMART | 1779391 |
| mart K | Spain | KMART (1990 LOGO RED) | 2449497 |
| | Spain | SEARS | 528667 |
| | Spain | SEARS ROEBUCK | 528670 |
| STRUCTURE | Spain | STRUCTURE | 2356116 |
| Thom McAn | Spain | THOM MCAN (Stylized) | 455887 |
| | Sri Lanka | SEARS | 47248 |
| STRUCTURE | Sri Lanka | STRUCTURE | 70144 |
| KMART | St. Lucia | KMART | 761994 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | St. Lucia | KMART | 741994 |
|---|---|---|---|
| KMART | St. Lucia | KMART | 741994 |
| KMART | St. Lucia | KMART | 751994 |
| | St. Lucia | KMART (1990 LOGO) | 971994 |
| | St. Lucia | KMART (1990 LOGO) | 961994 |
| | St. Lucia | SUPER KMART CENTER | 88/1994 |
| | St. Lucia | SUPER KMART CENTER | 89/1994 |
| | Sweden | K MART | 82-1360 |
| THOM MCAN | Sweden | THOM MCAN | 1665/66 |
| | Switzerland | COBBIE | 6407 |
| GALAXY | Switzerland | GALAXY | 11542/2000 |
| KMART | Switzerland | KMART | 28482004 |
| KMART | Switzerland | KMART | 414219949 |
| | Switzerland | KMART & K | 28492004 |
| | Switzerland | SEARS | 263543A |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| | Switzerland | SEARS FINANCIAL NETWORK | 7247/1991.6 |
| | Switzerland | SHOP YOUR WAY | 1151272 |
| | Switzerland | SHOP YOUR WAY and Design (new logo) | 57982/2014 |
| | Switzerland | STRUCTURE | 4120/1994.0 |
| | Taiwan | CARRIAGE COURT | 86010075 |
| | Taiwan | COBBIE CUDDLER COLLECTION | 8122654 |
| | Taiwan | COBBIE CUDDLERS | 7032047 |
| | Taiwan | COLORMATE | 90052394 |
| | Taiwan | COLORMATE | 91053303 |
| | Taiwan | COLORMATE | 90052395 |
| | Taiwan | COLORMATE | 90052393 |
| | Taiwan | COMFORT LITES | 8834226 |
| | Taiwan | COMFORT LITES | 77329 |
| | Taiwan | K (Stylized) | 93039796 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 553 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | Taiwan | KMART | 93039798 |
|---|---|---|---|
| KMART | Taiwan | KMART | 83056599 |
| | Taiwan | KMART | 83055678 |
| | Taiwan | KMART & DESIGN (KAI MA IN CHINESE) | 83056598 |
| | Taiwan | KMART & K DESIGN | 93039793 |
| | Taiwan | MARIO DE GERARD | 077000862 |
| | Taiwan | SEARS | 86012366 |
| | Taiwan | SEARS | 87043482 |
| | Taiwan | SEARS | 690013488 |
| | Taiwan | SEARS | 69003689 |
| | Taiwan | SEARS | 86006787 |
| | Taiwan | SHOP YOUR WAY | 102002926 |
| | Taiwan | SHOP YOUR WAY and Design (new logo) | 103032711 |
| | Taiwan | SOHO | 8834225 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| | Taiwan | SOHO | 414294 |
| STRUCTURE | Taiwan | STRUCTURE | 79/020039 |
| STRUCTURE | Taiwan | STRUCTURE | 89027192 |
| THOM MCAN | Taiwan | THOM MCAN | 7413476 |
| | Thailand | COBBIE | 228688 |
| | Thailand | ROEBUCKS | 357987 |
| | Thailand | SEARS | 308730 |
| STRUCTURE | Thailand | STRUCTURE | 269367 |
| Thom McAn | Thailand | THOM MCAN (STYLIZED) | 278854 |
| | Trinidad & Tobago | SAFETRAX | 32611 |
| | Trinidad & Tobago | SEARS | B11396 |
| | Trinidad & Tobago | SEARS | 42012 |
| SEARS HOMETOWN STORE | Trinidad & Tobago | SEARS HOMETOWN STORE | 42011 |
| TEXAS STEER | Trinidad & Tobago | TEXAS STEER | 32613 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:34 Exhibit A
Pg 553 of 1150

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| **THOM MCAN** | Trinidad & Tobago | THOM MCAN | 32615 |
| COVINGTON | Turkey | COVINGTON | 1040197 |
| | Turkey | SEARS | 113365 |
| STRUCTURE | Turkey | STRUCTURE | 35886 |
| COVINGTON | Ukraine | COVINGTON | 1040197 |
| | Ukraine | SEARS | 98051885/T |
| STRUCTURE | Ukraine | STRUCTURE | 94083024 |
| | United Arab Emirates | KMART | 15489 |
| STRUCTURE | United Arab Emirates | STRUCTURE | 8517 |
| | Uruguay | K MART | n/a |
| | Uruguay | SEARS | 324796 |
| STRUCTURE | Uruguay | STRUCTURE | 333633 |
| | Venezuela | K MART | 1986-001784 |
| KMART | Venezuela | KMART | 1515194 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| | Venezuela | KMART | 1994-015147 |
| | Venezuela | SEARS | 9240/83 |
| | Vietnam | COBBIE | 11148 |
| COVINGTON | Vietnam | COVINGTON | 1040197 |
| KMART | Vietnam | KMART | 8492 |
| | Vietnam | KMART (1990 Logo) | 8494 |
| | Vietnam | SEARS | 263543A |
| STRUCTURE | Vietnam | STRUCTURE | 20922 |
| | Virgin Islands (U.S.) | K MART | 8038 |
|  | Virgin Islands (U.S.) | KMART and Design (1990 Logo) | n/a |
| STRUCTURE | Virgin Islands (U.S.) | STRUCTURE | n/a |
| STRUCTURE | Virgin Islands (U.S.) | STRUCTURE | n/a |
| Thom McAn | Virgin Islands (U.S.) | THOM MCAN (STYLIZED) | n/a |
| STRUCTURE | West Bank | STRUCTURE | 5514 |

| | | | |
|---|---|---|---|
| STRUCTURE | West Bank | STRUCTURE | 5513 |
| | Grenada | KMART & KEY LOGO | |
| | Panama | OLYMPIAN | |
| STRUCTURE | Indonesia | STRUCTURE (stylized with design) | |
| | Canada | WEATHERBEATER | |
| | Trinidad & Tobago | KMART (1990 LOGO) | |
| | St. Lucia | KMART (KEY LOGO) | |
| STRUCTURE | Malaysia | STRUCTURE | |

*- items denoted with an asterisk are assigned solely to the extent of Sellers' right, title or interest therein

FILED DATE: 5/19/2021 1:27 PM   2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Application Date | Registration Number | Registration Date | Owner |
|---|---|---|---|
| 03/11/1992 | 5367 | 10/04/1994 | SEARS BRANDS, L.L.C. |
| 04/15/2011 | 2512982 | 07/06/2012 | SEARS BRANDS, L.L.C. |
| 04/15/2011 | 2597520 | 10/07/2013 | SEARS BRANDS, L.L.C. |
| 04/15/2011 | 2512981 | 07/06/2012 | SEARS BRANDS, L.L.C. |
| 04/15/2011 | 2512980 | 07/06/2012 | SEARS BRANDS, L.L.C. |
| 01/21/2010 | 2406374 | 11/12/2010 | SEARS BRANDS, L.L.C. |
| 04/18/1997 | 2438056 | 05/03/2011 | SEARS BRANDS, L.L.C. |
| 04/18/1997 | 2438057 | 05/03/2011 | SEARS BRANDS, L.L.C. |
| 04/18/1997 | 2519523 | 08/21/2012 | SEARS BRANDS, L.L.C. |
| 04/18/1997 | 2502478 | 05/07/2012 | SEARS BRANDS, L.L.C. |
| 01/16/2013 | 2643765 | 04/25/2014 | SEARS BRANDS, L.L.C. |
| 01/16/2013 | 2643766 | 04/25/2014 | SEARS BRANDS, L.L.C. |
| 12/04/1989 | 14654 | 03/14/1990 | KMART CORPORATION |

18-23538-shl    Doc 2507    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 559 of 1450

| | | | |
|---|---|---|---|
| 08/15/1994 | 16965 | 09/26/1994 | SEARS BRANDS, L.L.C. |
| 04/21/2011 | 29749 | 10/03/2011 | SEARS BRANDS, L.L.C. |
| 08/15/1994 | 16967 | 09/26/1994 | SEARS BRANDS, L.L.C. |
| 11/05/1996 | 18269 | 01/15/1997 | SEARS BRANDS, L.L.C. |
| 06/23/1994 | 16817 | 07/11/1994 | SEARS BRANDS, L.L.C. |
| 04/10/1979 | 331313 | 04/10/1979 | KMART CORPORATION |
| 10/27/1988 | 498369 | 10/27/1988 | KMART CORPORATION |
| 03/13/2001 | 868989 | 08/13/2001 | SEARS BRANDS, L.L.C. |
| 06/28/2000 | 840688 | 01/08/2001 | SEARS BRANDS, L.L.C. |
| 12/01/1952 | 112326 | 12/01/1952 | SEARS BRANDS, L.L.C. |
| 04/21/1958 | 136638 | 04/21/1958 | SEARS BRANDS, L.L.C. |
| 07/23/1981 | 363277 | 07/23/1981 | SEARS BRANDS, L.L.C. |
| 05/23/2000 | 836259 | 05/23/2000 | SEARS BRANDS, L.L.C. |
| 09/04/1998 | 772253 | 01/21/2002 | SEARS BRANDS, L.L.C. |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | | | |
|---|---|---|---|
| 06/27/1979 | 334637 | 06/27/1979 | SEARS BRANDS, L.L.C. |
| 01/08/2013 | 1534600 | 08/20/2013 | SEARS BRANDS, L.L.C. |
| 05/28/1985 | 427546 | 05/28/1985 | SEARS BRANDS, L.L.C. |
| 05/28/1985 | 427545 | 05/28/1985 | SEARS BRANDS, L.L.C. |
| 11/20/1978 | 324240 | 11/20/1978 | SEARS BRANDS, L.L.C. |
| 05/23/2000 | 836260 | 04/30/2001 | SEARS BRANDS, L.L.C. |
| 01/08/2013 | 1534591 | 09/04/2013 | SEARS BRANDS, L.L.C. |
| 06/19/2000 | 839432 | 06/19/2000 | SEARS BRANDS, L.L.C. |
| 09/04/1998 | 772251 | 09/04/1998 | SEARS BRANDS, L.L.C. |
| 06/10/2014 | 1627586 | 02/06/2015 | SEARS BRANDS, L.L.C. |
| 05/28/1985 | 427547 | 05/28/1985 | SEARS BRANDS, L.L.C. |
| 03/30/2001 | 871193 | 12/17/2001 | SEARS BRANDS, L.L.C. |
| 09/04/1998 | 772252 | 04/30/1999 | SEARS BRANDS, L.L.C. |
| 05/23/2011 | 1426754 | 10/30/2013 | SEARS BRANDS, L.L.C. |

18-23538-shl Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:11:32 Exhibit A
Pg 531 of 1120

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 05/23/2000 | 836261 | 04/17/2001 | SEARS BRANDS, L.L.C. |
| 10/14/1988 | 123638 | 01/25/1989 | SEARS BRANDS, L.L.C. |
| 08/17/1990 | 133342 | 10/29/1990 | KMART CORPORATION |
| 12/18/1962 | 263543A | 12/18/1962 | SEARS BRANDS, L.L.C. |
| 10/29/1984 | 11450 | 10/29/1984 | SEARS BRANDS, L.L.C. |
| 06/18/1992 | 15340 | 06/18/1992 | KMART CORPORATION |
| 06/18/1992 | 15341 | 06/18/1992 | KMART CORPORATION |
| 05/20/1960 | 3316 | 05/20/1960 | SEARS, ROEBUCK AND CO. |
| 08/05/1987 | 3127 | 08/05/1987 | SEARS BRANDS, L.L.C. |
| 07/22/1960 | 3357 | 07/22/1960 | SEARS BRANDS, L.L.C. |
| 05/24/1995 | 17295 | 10/28/1996 | SEARS BRANDS, L.L.C. |
| 07/15/1994 | 16596 | 07/15/1994 | SEARS BRANDS, L.L.C. |
| 07/28/1993 | 1197 | 07/28/1993 | SEARS BRANDS, L.L.C. |
| 03/21/1993 | 37312 | 03/21/1993 | KMART CORPORATION |

18-23538-shl  Doc 9648-7  Filed 02/08/19  Entered 02/08/19 15:44:32  Exhibit A
Pg 532 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 03/21/1993 | 37311 | 03/21/1993 | KMART CORPORATION |
| 04/27/1994 | 40455 | 04/27/1994 | SEARS BRANDS, L.L.C. |
| 10/19/1994 | 81/7816 | 09/09/1998 | KMART CORPORATION |
| 10/19/1994 | 81/7819 | 09/09/1998 | KMART CORPORATION |
| 10/19/1994 | 81/7820 | 09/09/1998 | KMART CORPORATION |
| 10/19/1994 | 81/7825 | 09/09/1998 | KMART CORPORATION |
| 10/19/1994 | 81/7821 | 09/09/1998 | KMART CORPORATION |
| 10/19/1994 | 81/7818 | 09/09/1998 | KMART CORPORATION |
| 10/19/1994 | 81/7822 | 09/09/1998 | KMART CORPORATION |
| 10/19/1994 | 81/7823 | 09/09/1998 | KMART CORPORATION |
| 10/19/1994 | 817828 | 09/09/1998 | SEARS BRANDS, L.L.C. |
| 10/19/1994 | 81/7827 | 09/09/1998 | SEARS, ROEBUCK AND CO. |
| 12/24/1993 | 2690 | 12/24/1993 | SEARS BRANDS, L.L.C. |
| 09/09/1988 | 453259 | 09/09/1988 | SEARS BRANDS, L.L.C. |

18-23538-shl Doc 9507-1 Filed 02/08/19 Entered 02/08/19 15:44:31 Exhibit A
Pg 563 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 08/18/1993 | 536624 | 08/18/1993 | SEARS BRANDS, L.L.C. |
| 08/17/1990 | 487749 | 08/17/1990 | KMART CORPORATION |
| 12/18/1962 | 263543A | 12/18/1962 | SEARS BRANDS, L.L.C. |
| 06/22/1994 | 552634 | 06/22/1994 | SEARS BRANDS, L.L.C. |
| 02/05/1971 | 9062 | 02/05/1971 | SEARS BRANDS, L.L.C. |
| 10/13/1993 | 25464 | 02/13/1997 | SEARS BRANDS, L.L.C. |
| 08/20/2012 | 51975 | 05/03/2013 | SEARS BRANDS, L.L.C. |
| 01/15/2001 | 80959-A | 10/01/2001 | SEARS BRANDS, L.L.C. |
| 01/15/2001 | 80958-A | 10/01/2001 | SEARS BRANDS, L.L.C. |
| 09/04/2001 | 91275-A | 01/22/2004 | SEARS BRANDS, L.L.C. |
| 01/15/2001 | 84339A | 03/25/1980 | SEARS BRANDS, L.L.C. |
| 02/04/2010 | 124567-C | 12/15/2010 | SEARS BRANDS, L.L.C. |
| 02/06/1980 | 82885-A | 07/14/1980 | SEARS BRANDS, L.L.C. |
| 06/09/1994 | C-60662 | 02/26/1996 | SEARS BRANDS, L.L.C. |

18-23538-shl Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 552 of 1450
FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 06/09/1994 | C-60663 | 02/26/1996 | SEARS BRANDS, L.L.C. |
| 09/28/2000 | BAZ004530 | 09/28/2000 | SEARS BRANDS, L.L.C. |
| 12/18/1962 | 263543A | 12/18/1962 | SEARS BRANDS, L.L.C. |
| 10/16/2009 | 830424679 | 10/09/2012 | SEARS BRANDS, L.L.C. |
| 03/18/1986 | 812471032 | 05/10/1988 | SEARS BRANDS, L.L.C. |
| 05/11/1994 | 817866574 | 07/02/1996 | KMART CORPORATION |
| 12/13/1994 | 818213752 | 10/01/1996 | KMART CORPORATION |
| 07/14/1983 | 811234940 | 10/23/1984 | SEARS BRANDS, L.L.C. |
| 10/09/2015 | | | SEARS BRANDS, L.L.C. |
| 10/09/2015 | | | SEARS BRANDS, L.L.C. |
| 10/09/2015 | | | SEARS BRANDS, L.L.C. |
| 10/09/2015 | | | SEARS BRANDS, L.L.C. |
| 10/09/2015 | | | SEARS BRANDS, L.L.C. |
| 10/30/2015 | | | SEARS BRANDS, L.L.C. |

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 763 of 1450
FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 10/30/2015 | | | SEARS BRANDS, L.L.C. |
| 10/30/2015 | | | SEARS BRANDS, L.L.C. |
| 01/16/2013 | 840393261 | 12/29/2015 | SEARS BRANDS, L.L.C. |
| 01/16/2013 | 840393288 | 12/29/2015 | SEARS BRANDS, L.L.C. |
| 10/06/2009 | 830413618 | 11/21/2017 | SEARS BRANDS, L.L.C. |
| 12/11/1968 | 3859223 | 12/11/1968 | SEARS BRANDS, L.L.C. |
| 10/22/2009 | 830427910 | 10/09/2012 | SEARS BRANDS, L.L.C. |
| 08/31/1992 | 2241 | 06/01/1993 | SEARS BRANDS, L.L.C. |
| 11/01/1990 | 19662 | 12/18/1992 | SEARS BRANDS, L.L.C. |
| 04/19/1993 | 2865 | 04/23/1993 | SEARS BRANDS, L.L.C. |
| 03/09/2011 | TMA873032 | 03/11/2014 | SEARS BRANDS, L.L.C. |
| 03/09/2011 | TMA873035 | 03/11/2014 | SEARS BRANDS, L.L.C. |
| 05/23/2000 | 561970 | 05/14/2002 | SEARS BRANDS, L.L.C. |
| 03/16/2004 | 639520 | 05/10/2005 | SEARS BRANDS, L.L.C. |

18-23538-shl   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 556 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 01/02/2008 | TMA 741665 | 06/09/2009 | SEARS BRANDS, L.L.C. |
| 01/02/2008 | TMA 741664 | 06/09/2009 | SEARS BRANDS, L.L.C. |
| 01/02/2008 | TMA741663 | 06/09/2009 | SEARS BRANDS, L.L.C. |
| 06/14/2007 | 730126 | 12/04/2008 | SEARS BRANDS, L.L.C. |
| 10/09/2007 | 730519 | 12/09/2008 | SEARS BRANDS, L.L.C. |
| 06/02/2010 | TMA853024 | 06/11/2013 | SEARS BRANDS, L.L.C. |
| 06/16/1987 | TMA347774 | 11/10/1988 | KMART CORPORATION |
| 05/10/1993 | 433706 | 09/23/1994 | SEARS BRANDS, L.L.C. |
| 01/07/1992 | 409539 | 03/12/1993 | SEARS BRANDS, L.L.C. |
| 09/30/2003 | TMA640549 | 05/26/2005 | SEARS BRANDS, L.L.C. |
| 01/19/1977 | 235816 | 09/07/1979 | SEARS BRANDS, L.L.C. |
| 01/22/2001 | 606486 | 03/29/2004 | SEARS BRANDS, L.L.C. |
| 10/11/1977 | 236367 | 10/05/1979 | SEARS BRANDS, L.L.C. |
| 05/18/1999 | 544506 | 05/04/2001 | SEARS BRANDS, L.L.C. |

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 565 of 1150

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 12/20/2016 | | | SEARS BRANDS, L.L.C. |
| 12/20/2016 | | | SEARS BRANDS, L.L.C. |
| 12/20/2016 | | | SEARS BRANDS, L.L.C. |
| 06/11/2008 | 747226 | 09/09/2009 | SEARS BRANDS, L.L.C. |
| 03/01/1989 | 407864 | 02/12/1993 | SEARS BRANDS, L.L.C. |
| 03/01/1989 | 418403 | 10/22/1993 | SEARS BRANDS, L.L.C. |
| 02/18/2003 | 607281 | 04/07/2004 | SEARS BRANDS, L.L.C. |
| 06/04/1991 | 408390 | 02/19/1993 | SEARS BRANDS, L.L.C. |
| 08/14/1984 | 302634 | 05/10/1985 | SEARS BRANDS, L.L.C. |
| 11/28/1997 | 538436 | 12/07/2000 | SEARS BRANDS, L.L.C. |
| 08/05/1999 | TMA545014 | 05/14/2001 | SEARS BRANDS, L.L.C. |
| 01/19/1996 | 491793 | 03/23/1998 | SEARS BRANDS, L.L.C. |
| 08/20/2008 | 797522 | 05/13/2011 | SEARS BRANDS, L.L.C. |
| 06/07/2001 | 584217 | 06/23/2003 | SEARS BRANDS, L.L.C. |

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 15:44:32   Exhibit A
Pg 536 of 1150

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 01/11/2010 | 782659 | 11/17/2010 | SEARS BRANDS, L.L.C. |
| 02/17/2010 | 799411 | 06/07/2011 | SEARS BRANDS, L.L.C. |
| 02/03/1992 | 409556 | 03/12/1993 | SEARS BRANDS, L.L.C. |
| 04/12/1994 | 442881 | 05/12/1995 | SEARS BRANDS, L.L.C. |
| 03/19/2002 | 600166 | 01/21/2004 | SEARS BRANDS, L.L.C. |
| 06/10/1999 | 595363 | 11/20/2003 | SEARS BRANDS, L.L.C. |
| 11/21/2001 | 618520 | 09/02/2004 | SEARS BRANDS, L.L.C. |
| 11/21/2001 | 618234 | 08/31/2004 | SEARS BRANDS, L.L.C. |
| 04/01/1996 | 479473 | 08/04/1997 | SEARS BRANDS, L.L.C. |
| 02/01/1991 | 398089 | 05/08/1992 | SEARS BRANDS, L.L.C. |
| 03/18/1993 | TMA428368 | 06/03/1994 | STI MERCHANDISING, INC. |
| 02/04/1981 | 266514 | 02/12/1982 | SEARS BRANDS, L.L.C. |
| 09/30/2003 | 640264 | 05/20/2005 | SEARS BRANDS, L.L.C. |
| 09/22/1966 | TMA155543 | 02/16/1968 | SEARS BRANDS, L.L.C. |

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:14:34   Exhibit A
Pg 559 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| 01/08/2010 | 782661 | 11/17/2010 | SEARS BRANDS, L.L.C. |
| 03/26/2010 | TMA831916 | 09/13/2012 | SEARS BRANDS, L.L.C. |
| 01/11/2010 | TMA842327 | 02/05/2013 | SEARS BRANDS, L.L.C. |
| 01/11/2010 | TMA842272 | 02/05/2013 | SEARS BRANDS, L.L.C. |
| 02/02/1979 | 253558 | 12/05/1980 | SEARS BRANDS, L.L.C. |
| 08/20/2002 | 607210 | 04/07/2004 | SEARS BRANDS, L.L.C. |
| 08/08/1997 | 511359 | 04/29/1999 | SEARS BRANDS, L.L.C. |
| 08/08/1997 | 512861 | 07/15/1999 | SEARS BRANDS, L.L.C. |
| 01/30/2001 | 664336 | 05/16/2006 | SEARS BRANDS, L.L.C. |
| 11/02/1999 | TMA587532 | 08/20/2003 | SEARS BRANDS, L.L.C. |
| 11/02/1999 | TMA545837 | 05/30/2001 | SEARS BRANDS, L.L.C. |
| 12/07/2016 | | | SEARS BRANDS, L.L.C. |
| 12/07/2016 | | | SEARS BRANDS, L.L.C. |
| 03/05/2010 | TMA802236 | 07/15/2011 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 08/20/2002 | 606991 | 04/05/2004 | SEARS BRANDS, L.L.C. |
| 10/20/1952 | 45377 | 10/20/1952 | SEARS BRANDS, L.L.C. |
| 05/10/2002 | TMA659194 | 02/16/2006 | SEARS BRANDS, L.L.C. |
| 01/20/1998 | 502276 | 10/15/1998 | SEARS BRANDS, L.L.C. |
| 01/20/1998 | 502305 | 10/15/1998 | SEARS BRANDS, L.L.C. |
| 01/20/1998 | 508223 | 02/22/1999 | SEARS BRANDS, L.L.C. |
| 01/20/1998 | 502873 | 10/26/1998 | SEARS BRANDS, L.L.C. |
| 07/25/1979 | 244316 | 05/02/1980 | SEARS BRANDS, L.L.C. |
| 06/18/1996 | 479051 | 07/25/1997 | SEARS BRANDS, L.L.C. |
| 05/04/2004 | 634544 | 03/07/2005 | SEARS BRANDS, L.L.C. |
| 10/02/1998 | 527250 | 05/02/2000 | SEARS BRANDS, L.L.C. |
| 03/22/1995 | 467480 | 12/11/1996 | SEARS BRANDS, L.L.C. |
| 02/10/1997 | 533301 | 09/25/2000 | SEARS BRANDS, L.L.C. |
| 05/02/1997 | TMA499080 | 08/24/1998 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 05/02/1997 | TMA498989 | 08/24/1998 | SEARS BRANDS, L.L.C. |
| 08/12/1982 | 285893 | 12/16/1983 | SEARS BRANDS, L.L.C. |
| 07/14/1989 | 398146 | 05/15/1992 | SEARS BRANDS, L.L.C. |
| 05/13/2003 | 614647 | 07/12/2004 | SEARS BRANDS, L.L.C. |
| 03/22/1995 | 456102 | 03/22/1996 | SEARS BRANDS, L.L.C. |
| 10/12/2007 | TMA822375 | 04/18/2012 | SEARS BRANDS, L.L.C. |
| 08/20/2008 | 797523 | 05/13/2011 | SEARS BRANDS, L.L.C. |
| 02/24/1993 | 429988 | 07/01/1994 | SEARS BRANDS, L.L.C. |
| 02/24/1993 | 429989 | 07/01/1994 | SEARS BRANDS, L.L.C. |
| 03/17/1971 | TMA182308 | 04/07/1972 | SEARS BRANDS, L.L.C. |
| 08/12/1982 | 285892 | 12/16/1983 | SEARS BRANDS, L.L.C. |
| 11/01/1996 | 489877 | 02/13/1998 | SEARS BRANDS, L.L.C. |
| 02/24/2009 | 767394 | 05/19/2010 | SEARS BRANDS, L.L.C. |
| 10/29/1992 | 431035 | 07/29/1994 | SEARS BRANDS, L.L.C. |

18-23538-shl   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 01/06/1992 | 424938 | 03/11/1994 | SEARS BRANDS, L.L.C. |
| 06/17/1998 | 531048 | 08/11/2000 | SEARS BRANDS, L.L.C. |
| 03/16/2007 | 719896 | 07/30/2008 | SEARS BRANDS, L.L.C. |
| 09/13/2001 | 621673 | 10/05/2004 | SEARS BRANDS, L.L.C. |
| 09/30/1994 | 454897 | 03/01/1996 | SEARS BRANDS, L.L.C. |
| 08/13/1998 | 549344 | 08/06/2001 | SEARS BRANDS, L.L.C. |
| 05/16/2008 | 751207 | 10/27/2009 | SEARS BRANDS, L.L.C. |
| 11/30/2009 | 781059 | 10/28/2010 | SEARS BRANDS, L.L.C. |
| 10/21/2002 | 606906 | 04/02/2004 | SEARS BRANDS, L.L.C. |
| 01/24/1989 | 390772 | 11/29/1991 | SEARS BRANDS, L.L.C. |
| 06/11/2008 | 746266 | 08/26/2009 | SEARS BRANDS, L.L.C. |
| 06/17/1957 | TMA109125 | 01/17/1958 | SEARS BRANDS, L.L.C. |
| 03/17/1956 | TMA106021 | 03/08/1957 | SEARS BRANDS, L.L.C. |
| 07/21/2005 | 664613 | 05/18/2006 | SEARS BRANDS, L.L.C. |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 543 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 11/22/1979 | 254014 | 12/19/1980 | SEARS BRANDS, L.L.C. |
| 06/24/1998 | 522936 | 02/11/2000 | SEARS BRANDS, L.L.C. |
| 08/05/1947 | 27884 | 08/05/1947 | GGP/HOMART, INC. |
| 01/12/2010 | 782712 | 11/17/2010 | SEARS BRANDS, L.L.C. |
| 04/23/2007 | 708082 | 02/22/2008 | SEARS BRANDS, L.L.C. |
| 07/14/1983 | 306220 | 08/23/1985 | SEARS BRANDS, L.L.C. |
| 05/04/1995 | 465859 | 11/06/1996 | SEARS BRANDS, L.L.C. |
| 07/18/1995 | 469536 | 01/23/1997 | SEARS BRANDS, L.L.C. |
| 05/27/1986 | 346108 | 10/07/1988 | KMART CORPORATION |
| 08/16/2004 | TMA695625 | 09/05/2007 | STI MERCHANDISING, INC. |
| 08/16/2004 | 695626 | 09/05/2007 | STI MERCHANDISING, INC. |
| 03/11/1965 | 142039 | 09/24/1965 | STI MERCHANDISING, INC. |
| 01/04/1991 | 404525 | 11/06/1992 | STI MERCHANDISING, INC. |
| 09/20/1991 | 413398 | 06/11/1993 | STI MERCHANDISING, INC. |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM     2020L012403

| | | | |
|---|---|---|---|
| 03/11/1965 | 153151 | 09/15/1967 | STI MERCHANDISING, INC. |
| 12/05/1991 | 409519 | 03/12/1993 | SEARS BRANDS, L.L.C. |
| 02/17/1992 | 425575 | 03/25/1994 | STI MERCHANDISING, INC. |
| 04/29/1991 | 440725 | 03/24/1995 | STI MERCHANDISING, INC. |
| 02/17/1992 | 419190 | 11/05/1993 | STI MERCHANDISING, INC. |
| 10/23/1992 | 425360 | 03/18/1994 | STI MERCHANDISING, INC. |
| 12/15/1999 | 577926 | 03/21/2003 | SEARS BRANDS, L.L.C. |
| 12/07/1993 | 437002 | 12/09/1994 | SEARS BRANDS, L.L.C. |
| 12/22/2000 | 577820 | 03/20/2003 | SEARS BRANDS, L.L.C. |
| 04/15/2009 | 767540 | 05/20/2010 | SEARS BRANDS, L.L.C. |
| 11/19/2002 | 607183 | 04/07/2004 | SEARS BRANDS, L.L.C. |
| 06/04/1991 | 408011 | 02/12/1993 | SEARS BRANDS, L.L.C. |
| 04/06/1978 | 241765 | 03/21/1980 | SEARS BRANDS, L.L.C. |
| 09/01/1994 | 451256 | 12/01/1995 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM     2020L012403

| | | | |
|---|---|---|---|
| 10/02/1998 | 523230 | 02/16/2000 | SEARS BRANDS, L.L.C. |
| 08/03/1976 | 229253 | 07/28/1978 | SEARS BRANDS, L.L.C. |
| 08/30/1991 | 433311 | 09/16/1994 | SEARS BRANDS, L.L.C. |
| 12/21/2000 | 608096 | 04/20/2004 | SEARS BRANDS, L.L.C. |
| 11/02/1982 | 282491 | 08/19/1983 | SEARS BRANDS, L.L.C. |
| 10/25/1999 | 546456 | 06/12/2001 | SEARS BRANDS, L.L.C. |
| 03/29/1999 | 539641 | 01/15/2001 | SEARS BRANDS, L.L.C. |
| 04/23/1999 | 539857 | 01/17/2001 | SEARS BRANDS, L.L.C. |
| 05/01/1980 | 259394 | 05/29/1981 | SEARS BRANDS, L.L.C. |
| 05/21/2003 | 622397 | 10/13/2004 | SEARS BRANDS, L.L.C. |
| 04/20/1993 | 433108 | 09/09/1994 | SEARS BRANDS, L.L.C. |
| 07/09/1980 | 254732 | 01/09/1981 | SEARS BRANDS, L.L.C. |
| 08/30/1991 | 417562 | 10/01/1993 | SEARS BRANDS, L.L.C. |
| 12/21/2000 | 606455 | 03/29/2004 | SEARS BRANDS, L.L.C. |

18-23538-shl   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 546 of 1450
FILED DATE: 5/19/2021 1:27 PM   2020L012403

| 10/22/1997 | TMA563036 | 06/05/2002 | SEARS BRANDS, L.L.C. |
|---|---|---|---|
| 09/30/1994 | 484165 | 10/17/1997 | SEARS BRANDS, L.L.C. |
| 03/15/1996 | 470844 | 02/12/1997 | SEARS BRANDS, L.L.C. |
| 01/11/2010 | TMA840600 | 01/18/2013 | SEARS BRANDS, L.L.C. |
| 08/08/1978 | 254269 | 12/24/1980 | SEARS BRANDS, L.L.C. |
| 01/24/2001 | 602243 | 02/16/2004 | SEARS BRANDS, L.L.C. |
| 08/29/1986 | 352515 | 03/03/1989 | SEARS BRANDS, L.L.C. |
| 04/01/2009 | 767973 | 05/27/2010 | SEARS BRANDS, L.L.C. |
| 11/01/2000 | 595398 | 11/21/2003 | SEARS BRANDS, L.L.C. |
| 08/11/2004 | 649697 | 10/05/2005 | SEARS BRANDS, L.L.C. |
| 09/29/2004 | 645719 | 08/16/2005 | SEARS BRANDS, L.L.C. |
| 01/11/2010 | 782713 | 11/17/2010 | SEARS BRANDS, L.L.C. |
| 01/11/2010 | 782715 | 11/17/2010 | SEARS BRANDS, L.L.C. |
| 01/12/2010 | 782710 | 11/17/2010 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 01/12/2010 | 782709 | 11/17/2010 | SEARS BRANDS, L.L.C. |
| 01/13/2010 | 782707 | 11/17/2010 | SEARS BRANDS, L.L.C. |
| 04/20/2007 | 706946 | 02/08/2008 | SEARS BRANDS, L.L.C. |
| 03/22/1995 | 462620 | 08/30/1996 | SEARS BRANDS, L.L.C. |
| ISSUED | 697497 | 01/23/1992 | SEARS BRANDS, L.L.C. |
| ISSUED | 697500 | 01/23/1992 | SEARS BRANDS, L.L.C. |
| 11/25/1997 | 532287 | 09/07/2000 | SEARS BRANDS, L.L.C. |
| 03/16/2007 | 708104 | 02/22/2008 | SEARS BRANDS, L.L.C. |
| 03/06/2003 | 615729 | 07/26/2004 | SEARS BRANDS, L.L.C. |
| 12/20/2011 | TMA853207 | 06/12/2013 | SEARS BRANDS, L.L.C. |
| 10/31/1975 | TMA215679 | 08/27/1976 | SEARS BRANDS, L.L.C. |
| 11/23/2001 | 606937 | 04/02/2004 | SEARS BRANDS, L.L.C. |
| 05/13/1980 | 262256 | 09/04/1981 | SEARS BRANDS, L.L.C. |
| 03/13/1980 | 250307 | 09/12/1980 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 11/25/1977 | TMA243658 | 04/18/1980 | STI MERCHANDISING, INC. |
| 02/19/1992 | 409249 | 03/05/1993 | SEARS BRANDS, L.L.C. |
| 05/24/2001 | 608521 | 04/26/2004 | SEARS BRANDS, L.L.C. |
| 02/22/1988 | 366768 | 03/16/1990 | SEARS BRANDS, L.L.C. |
| 11/15/1990 | 429302 | 06/24/1994 | SEARS BRANDS, L.L.C. |
| 02/24/1992 | 416030 | 08/27/1993 | SEARS BRANDS, L.L.C. |
| 06/19/1989 | 395780 | 03/20/1992 | SEARS BRANDS, L.L.C. |
| 07/06/1994 | 444167 | 06/16/1995 | SEARS BRANDS, L.L.C. |
| 03/09/1993 | 423143 | 02/04/1994 | SEARS BRANDS, L.L.C. |
| 12/13/1983 | 304115 | 06/28/1985 | SEARS BRANDS, L.L.C. |
| 11/17/1989 | 390462 | 11/22/1991 | SEARS BRANDS, L.L.C. |
| 11/21/1994 | 454374 | 02/16/1996 | SEARS BRANDS, L.L.C. |
| 10/05/1981 | 320300 | 11/07/1986 | SEARS BRANDS, L.L.C. |
| 03/13/1974 | 419045 | 11/05/1993 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 08/10/1990 | 406731 | 01/08/1993 | SEARS BRANDS, L.L.C. |
| 07/05/1996 | 489566 | 02/10/1998 | SEARS BRANDS, L.L.C. |
| 12/03/1998 | 523013 | 02/14/2000 | SEARS BRANDS, L.L.C. |
| 11/22/2016 | TMA996101 | 05/07/2018 | SEARS BRANDS, L.L.C. |
| 04/19/1999 | 538454 | 12/07/2000 | SEARS BRANDS, L.L.C. |
| 01/18/2008 | 740924 | 05/28/2009 | SEARS BRANDS, L.L.C. |
| 01/24/1985 | TMA329344 | 06/26/1987 | SEARS BRANDS, L.L.C. |
| 05/22/2002 | 612209 | 06/07/2004 | SEARS BRANDS, L.L.C. |
| 04/06/2017 | | | SEARS BRANDS, L.L.C. |
| 09/16/2016 | | | SEARS BRANDS, L.L.C. |
| 05/22/2001 | 590672 | 09/24/2003 | SEARS BRANDS, L.L.C. |
| 09/16/2016 | | | SEARS BRANDS, L.L.C. |
| 07/29/2004 | 647642 | 09/08/2005 | SEARS BRANDS, L.L.C. |
| 07/25/2001 | 619322 | 09/13/2004 | SEARS BRANDS, L.L.C. |

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A

FILED DATE: 5/19/2021 1:27 PM        2020L012403

| | | | |
|---|---|---|---|
| 09/28/2016 | | | SEARS BRANDS, L.L.C. |
| 11/15/1973 | 351165 | 02/10/1989 | SEARS BRANDS, L.L.C. |
| 12/03/1996 | 484196 | 10/17/1997 | SEARS BRANDS, L.L.C. |
| 02/19/1992 | 416026 | 08/27/1993 | SEARS BRANDS, L.L.C. |
| 11/12/1991 | 424092 | 03/04/1994 | SEARS BRANDS, L.L.C. |
| 02/18/2003 | 607280 | 04/07/2004 | SEARS BRANDS, L.L.C. |
| 04/04/1977 | 346003 | 10/07/1988 | SEARS BRANDS, L.L.C. |
| 04/04/1977 | 346004 | 10/07/1988 | SEARS BRANDS, L.L.C. |
| 08/11/2004 | 642987 | 06/27/2005 | SEARS BRANDS, L.L.C. |
| 09/29/2004 | 679131 | 01/09/2007 | SEARS BRANDS, L.L.C. |
| 09/16/2016 | | | SEARS BRANDS, L.L.C. |
| 04/01/1996 | 480689 | 08/15/1997 | SEARS BRANDS, L.L.C. |
| 10/29/1999 | 547033 | 06/21/2001 | SEARS BRANDS, L.L.C. |
| 02/01/1991 | 403252 | 10/02/1992 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 05/18/1999 | 553832 | 11/15/2001 | SEARS BRANDS, L.L.C. |
|---|---|---|---|
| 10/08/1997 | 505250 | 12/08/1998 | SEARS BRANDS, L.L.C. |
| 02/10/1997 | 529328 | 06/16/2000 | SEARS BRANDS, L.L.C. |
| 12/03/2008 | 783876 | 12/01/2010 | SEARS BRANDS, L.L.C. |
| 07/28/2003 | 634801 | 03/09/2005 | SEARS BRANDS, L.L.C. |
| 12/21/2007 | 740193 | 05/14/2009 | SEARS BRANDS, L.L.C. |
| 06/01/1998 | 521304 | 01/12/2000 | SEARS BRANDS, L.L.C. |
| 12/21/2007 | 740029 | 05/13/2009 | SEARS BRANDS, L.L.C. |
| 06/01/1998 | 521267 | 01/11/2000 | SEARS BRANDS, L.L.C. |
| 12/19/1983 | 304882 | 07/19/1985 | SEARS BRANDS, L.L.C. |
| 04/29/1998 | 522533 | 01/31/2000 | SEARS BRANDS, L.L.C. |
| 07/19/1994 | 459976 | 07/05/1996 | SEARS BRANDS, L.L.C. |
| 05/19/1994 | 460694 | 08/02/1996 | SEARS BRANDS, L.L.C. |
| 05/19/1994 | 460693 | 08/02/1996 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 10/30/2001 | 618951 | 09/08/2004 | SEARS BRANDS, L.L.C. |
| 10/30/2001 | 619302 | 09/13/2004 | SEARS BRANDS, L.L.C. |
| 07/06/2001 | 595467 | 11/21/2003 | SEARS BRANDS, L.L.C. |
| 07/06/2001 | 621576 | 10/04/2004 | SEARS BRANDS, L.L.C. |
| 01/23/1992 | 411539 | 04/23/1993 | SEARS BRANDS, L.L.C. |
| 01/23/1992 | 411540 | 04/23/1993 | SEARS BRANDS, L.L.C. |
| 01/08/2003 | 607140 | 04/06/2004 | SEARS BRANDS, L.L.C. |
| 09/16/2016 | | | SEARS BRANDS, L.L.C. |
| 06/14/2007 | 730125 | 12/04/2008 | SEARS BRANDS, L.L.C. |
| 10/09/2007 | 730517 | 12/09/2008 | SEARS BRANDS, L.L.C. |
| 03/15/1994 | 454618 | 02/23/1996 | SEARS BRANDS, L.L.C. |
| 11/28/1997 | 551400 | 09/24/2001 | SEARS BRANDS, L.L.C. |
| 08/05/1999 | 551428 | 09/24/2001 | SEARS BRANDS, L.L.C. |
| 06/18/2002 | 607316 | 04/08/2004 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 10/21/2002 | 606907 | 04/02/2004 | SEARS BRANDS, L.L.C. |
| 09/16/2016 | | | SEARS BRANDS, L.L.C. |
| 10/08/1997 | 505142 | 12/07/1998 | SEARS BRANDS, L.L.C. |
| 06/10/1999 | 587350 | 08/19/2003 | SEARS BRANDS, L.L.C. |
| 02/03/1986 | 391065 | 12/06/1991 | SEARS BRANDS, L.L.C. |
| 09/16/2016 | | | SEARS BRANDS, L.L.C. |
| 11/01/1996 | 489920 | 02/13/1998 | SEARS BRANDS, L.L.C. |
| 06/07/2001 | 590596 | 09/23/2003 | SEARS BRANDS, L.L.C. |
| 09/16/2016 | | | SEARS BRANDS, L.L.C. |
| 10/06/1998 | 542101 | 03/08/2001 | SEARS BRANDS, L.L.C. |
| 08/11/2004 | 645726 | 08/16/2005 | SEARS BRANDS, L.L.C. |
| 09/29/2004 | 646221 | 08/19/2005 | SEARS BRANDS, L.L.C. |
| 04/12/1995 | 469209 | 01/21/1997 | SEARS BRANDS, L.L.C. |
| 07/18/1995 | 472070 | 03/05/1997 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 07/06/2001 | 595354 | 11/20/2003 | SEARS BRANDS, L.L.C. |
| 07/06/2001 | 619321 | 09/13/2004 | SEARS BRANDS, L.L.C. |
| 09/09/1998 | 525034 | 03/15/2000 | SEARS BRANDS, L.L.C. |
| 04/19/1999 | 534577 | 10/13/2000 | SEARS BRANDS, L.L.C. |
| 09/09/1998 | 525409 | 03/21/2000 | SEARS BRANDS, L.L.C. |
| 12/08/1993 | 456215 | 03/29/1996 | SEARS BRANDS, L.L.C. |
| 03/04/2002 | 608769 | 04/28/2004 | SEARS BRANDS, L.L.C. |
| 05/21/2003 | 619091 | 09/10/2004 | SEARS BRANDS, L.L.C. |
| 10/21/2002 | 592132 | 10/10/2003 | SEARS BRANDS, L.L.C. |
| 08/11/2004 | 642438 | 06/20/2005 | SEARS BRANDS, L.L.C. |
| 09/29/2004 | 677480 | 11/22/2006 | SEARS BRANDS, L.L.C. |
| 08/12/1992 | 425004 | 03/11/1994 | SEARS BRANDS, L.L.C. |
| 10/06/1998 | 517818 | 10/13/1999 | SEARS BRANDS, L.L.C. |
| 09/16/2016 | | | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 11/19/2002 | 607181 | 04/07/2004 | SEARS BRANDS, L.L.C. |
| 11/25/1997 | 532213 | 09/06/2000 | SEARS BRANDS, L.L.C. |
| 10/29/1999 | 548015 | 07/12/2001 | SEARS BRANDS, L.L.C. |
| 03/10/1998 | 540775 | 02/05/2001 | SEARS BRANDS, L.L.C. |
| 11/21/2001 | 591785 | 10/07/2003 | SEARS BRANDS, L.L.C. |
| 10/01/1999 | 547865 | 07/09/2001 | SEARS BRANDS, L.L.C. |
| 10/29/1999 | 548016 | 07/12/2001 | SEARS BRANDS, L.L.C. |
| 10/21/2002 | 587318 | 08/18/2003 | SEARS BRANDS, L.L.C. |
| 06/18/2002 | 607487 | 04/13/2004 | SEARS BRANDS, L.L.C. |
| 10/12/2007 | 730521 | 12/09/2008 | SEARS BRANDS, L.L.C. |
| 08/16/1977 | 227608 | 05/05/1978 | SEARS BRANDS, L.L.C. |
| 06/21/2001 | 590806 | 09/25/2003 | SEARS BRANDS, L.L.C. |
| 06/07/2001 | 595182 | 11/19/2003 | SEARS BRANDS, L.L.C. |
| 02/08/1995 | 455088 | 03/08/1996 | SEARS BRANDS, L.L.C. |

18-23538-shl    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:44:32    Exhibit A
Pg 534 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 09/12/2018 | | | SEARS BRANDS, L.L.C. |
| 09/06/1978 | 246310 | 06/06/1980 | SEARS BRANDS, L.L.C. |
| 05/10/1993 | 434015 | 09/30/1994 | SEARS BRANDS, L.L.C. |
| 03/01/1978 | 252029 | 11/04/1980 | SEARS BRANDS, L.L.C. |
| 05/21/1953 | UCA45597 | 05/21/1953 | SEARS BRANDS, L.L.C. |
| 12/11/2002 | 619355 | 09/14/2004 | SEARS BRANDS, L.L.C. |
| 03/03/2009 | 793962 | 03/28/2011 | SEARS BRANDS, L.L.C. |
| 02/28/1989 | 371257 | 07/27/1990 | SEARS BRANDS, L.L.C. |
| 03/16/2007 | 708134 | 02/22/2008 | SEARS BRANDS, L.L.C. |
| 08/05/1987 | 351285 | 02/10/1989 | SEARS BRANDS, L.L.C. |
| 03/06/2003 | 622755 | 10/19/2004 | SEARS BRANDS, L.L.C. |
| 08/11/1998 | 541627 | 02/27/2001 | SEARS BRANDS, L.L.C. |
| 04/19/1999 | 538456 | 12/07/2000 | SEARS BRANDS, L.L.C. |
| 09/09/1998 | 525410 | 03/21/2000 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 09/09/1998 | 526174 | 03/30/2000 | SEARS BRANDS, L.L.C. |
| 07/21/2005 | 664611 | 05/18/2006 | SEARS BRANDS, L.L.C. |
| 08/05/1981 | 268026 | 04/08/1982 | SEARS BRANDS, L.L.C. |
| 05/21/1998 | 523213 | 02/16/2000 | SEARS BRANDS, L.L.C. |
| 01/31/1980 | 254189 | 12/24/1980 | SEARS BRANDS, L.L.C. |
| 02/22/1989 | 379147 | 02/01/1991 | SEARS BRANDS, L.L.C. |
| 02/14/2001 | 674089 | 10/03/2006 | SEARS BRANDS, L.L.C. |
| 04/06/1978 | 241764 | 03/21/1980 | SEARS BRANDS, L.L.C. |
| 06/06/1994 | 457795 | 05/24/1996 | SEARS BRANDS, L.L.C. |
| 03/30/1978 | 232713 | 04/12/1979 | SEARS BRANDS, L.L.C. |
| 01/19/1977 | 229082 | 07/14/1978 | SEARS BRANDS, L.L.C. |
| 09/16/2016 | | | SEARS BRANDS, L.L.C. |
| 07/14/1999 | 623117 | 10/21/2004 | SEARS BRANDS, L.L.C. |
| 03/12/1980 | 253658 | 12/05/1980 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 11/22/1979 | 258020 | 04/24/1981 | SEARS BRANDS, L.L.C. |
| 05/21/2003 | 730515 | 12/09/2008 | SEARS BRANDS, L.L.C. |
| 12/21/2007 | 740083 | 05/13/2009 | SEARS BRANDS, L.L.C. |
| 05/09/1979 | 248650 | 07/25/1980 | SEARS BRANDS, L.L.C. |
| 03/19/2003 | 610063 | 05/11/2004 | SEARS BRANDS, L.L.C. |
| 06/07/2001 | 595153 | 11/19/2003 | SEARS BRANDS, L.L.C. |
| 10/21/2002 | 592131 | 10/10/2003 | SEARS BRANDS, L.L.C. |
| 05/21/2003 | 619056 | 09/09/2004 | SEARS BRANDS, L.L.C. |
| 02/12/1974 | 224623 | 12/09/1977 | SEARS BRANDS, L.L.C. |
| 04/12/1994 | 442882 | 05/12/1995 | SEARS BRANDS, L.L.C. |
| 03/19/2002 | 598940 | 01/09/2004 | SEARS BRANDS, L.L.C. |
| 05/26/2014 | | | SEARS BRANDS, L.L.C. |
| 01/15/1998 | 509778 | 03/22/1999 | SEARS BRANDS, L.L.C. |
| ISSUED | 485357 | 04/06/1982 | SEARS BRANDS, L.L.C. |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 589 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 12/22/1993 | 448571 | 10/06/1995 | SEARS BRANDS, L.L.C. |
| 03/31/2000 | 582493 | 05/27/2003 | SEARS BRANDS, L.L.C. |
| 02/16/2007 | 705724 | 01/25/2008 | SEARS BRANDS, L.L.C. |
| 09/08/2008 | TMA820603 | 03/23/2012 | SEARS BRANDS, L.L.C. |
| 10/25/1999 | 546988 | 06/21/2001 | SEARS BRANDS, L.L.C. |
| 12/21/2007 | 740028 | 05/13/2009 | SEARS BRANDS, L.L.C. |
| 10/01/1993 | 451066 | 12/01/1995 | SEARS BRANDS, L.L.C. |
| 08/18/1992 | TMA418342 | 10/15/1993 | STI MERCHANDISING, INC. |
| 12/20/2000 | 927237 | 09/28/2001 | SEARS BRANDS, L.L.C. |
| 11/23/1994 | 817899 | 12/18/1997 | SEARS BRANDS, L.L.C. |
| 11/23/1994 | 824988 | 11/04/1997 | SEARS BRANDS, L.L.C. |
| 11/23/1994 | 814508 | 11/04/1997 | SEARS BRANDS, L.L.C. |
| 11/23/1994 | 817898 | 12/18/1997 | SEARS BRANDS, L.L.C. |
| 11/23/1994 | 814507 | 11/04/2007 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 11/23/1994 | 825091 | 01/21/1998 | SEARS BRANDS, L.L.C. |
| 06/18/2008 | 841638 | 02/17/2009 | SEARS BRANDS, L.L.C. |
| 06/14/2011 | 636.588 | 06/14/2011 | SEARS BRANDS, L.L.C. |
| 09/13/1994 | 848549 | 11/10/1998 | SEARS BRANDS, L.L.C. |
| 09/13/1994 | 937988 | 11/26/2001 | SEARS BRANDS, L.L.C. |
| 01/04/2013 | 11987659 | 06/21/2014 | SEARS BRANDS, L.L.C. |
| 01/04/2013 | 11987658 | 11/14/2017 | SEARS BRANDS, L.L.C. |
| 06/20/1991 | 598198 | 06/10/1992 | SEARS BRANDS, L.L.C. |
| 08/27/1992 | 659719 | 09/28/1993 | SEARS BRANDS, L.L.C. |
| 08/21/2003 | 3682844 | 04/14/2006 | SEARS BRANDS, L.L.C. |
| 05/18/2010 | | | SEARS BRANDS, L.L.C. |
| 09/01/2004 | 4248712 | 12/21/2007 | SEARS BRANDS, L.L.C. |
| 09/01/2004 | 4248710 | 04/28/2008 | SEARS BRANDS, L.L.C. |
| 09/01/2004 | 4248711 | 10/07/2008 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 12/30/1993 | 766745 | 09/14/1995 | SEARS BRANDS, L.L.C. |
| 12/11/1993 | 1065000 | 07/28/1997 | SEARS BRANDS, L.L.C. |
| 09/01/2004 | 4248708 | 10/07/2008 | SEARS BRANDS, L.L.C. |
| 04/07/2017 | 23444553 | 03/21/2018 | SEARS BRANDS, L.L.C. |
| 09/01/2004 | 4248714 | 10/07/2008 | SEARS BRANDS, L.L.C. |
| 09/01/2004 | 4248715 | 12/21/2007 | SEARS BRANDS, L.L.C. |
| 09/01/2004 | 4248709 | 08/28/2007 | SEARS BRANDS, L.L.C. |
| 09/01/2004 | 4248707 | 02/07/2008 | SEARS BRANDS, L.L.C. |
| 09/01/2004 | 4248713 | 04/28/2008 | SEARS BRANDS, L.L.C. |
| 12/05/2011 | 10267766 | 08/14/2014 | SEARS BRANDS, L.L.C. |
| 02/10/2014 | 14006761 | 10/28/2015 | SEARS BRANDS, L.L.C. |
| 02/10/2014 | 14006762 | 09/21/2016 | SEARS BRANDS, L.L.C. |
| 02/10/2014 | 14006763 | 02/28/2016 | SEARS BRANDS, L.L.C. |
| 02/10/2014 | 14006764 | 08/21/2016 | SEARS BRANDS, L.L.C. |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 02/10/2014 | 14006758 | 10/28/2015 | SEARS BRANDS, L.L.C. |
| 02/10/2014 | 14006759 | 06/07/2015 | SEARS BRANDS, L.L.C. |
| 02/10/2014 | 14006760 | 02/28/2016 | SEARS BRANDS, L.L.C. |
| 12/05/2011 | 10268152 | 10/14/2015 | SEARS BRANDS, L.L.C. |
| 12/05/2011 | 10268155 | 04/07/2014 | SEARS BRANDS, L.L.C. |
| 12/20/2002 | 3412026 | 11/14/2004 | SEARS BRANDS, L.L.C. |
| 07/13/2017 | 25300544 | 07/14/2018 | SEARS BRANDS, L.L.C. |
| 02/20/1979 | 138316 | 07/05/1980 | SEARS BRANDS, L.L.C. |
| 02/09/2017 | 22780333 | 02/21/2018 | SEARS BRANDS, L.L.C. |
| | 138315 | 07/05/1980 | SEARS BRANDS, L.L.C. |
| 07/03/2014 | 14648785 | 02/21/2016 | SEARS BRANDS, L.L.C. |
| 10/20/2017 | | | SEARS BRANDS, L.L.C. |
| 06/11/1990 | 555868 | 06/20/1991 | SEARS BRANDS, L.L.C. |
| 03/21/2000 | 1557252 | 04/21/2001 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 10/20/1997 | 1280743 | 06/07/1999 | SEARS BRANDS, L.L.C. |
| 05/08/2004 | 4051084 | 11/07/2007 | SEARS BRANDS, L.L.C. |
| 11/19/2007 | 6387456 | 05/14/2010 | SEARS BRANDS, L.L.C. |
| 10/17/2014 | 15529051 | 12/07/2015 | SEARS BRANDS, L.L.C. |
| 10/13/2009 | 400302 | 04/13/2010 | SEARS BRANDS, L.L.C. |
| 04/09/2001 | 270945 | 06/26/2003 | SEARS BRANDS, L.L.C. |
| 12/29/1994 | 181671 | 06/29/1995 | SEARS BRANDS, L.L.C. |
| 12/29/1994 | 248717 | 02/28/2002 | SEARS BRANDS, L.L.C. |
| 10/21/1986 | 96850 | 02/14/1987 | SEARS BRANDS, L.L.C. |
| 11/06/1991 | 143314 | 10/25/1993 | SEARS BRANDS, L.L.C. |
| 11/06/1991 | 143315 | 10/25/1993 | SEARS BRANDS, L.L.C. |
| 11/06/1991 | 143323 | 10/25/1993 | SEARS BRANDS, L.L.C. |
| 04/06/1984 | 3693 | 05/28/1986 | SEARS BRANDS, L.L.C. |
| 09/26/1984 | 3692 | 05/28/1986 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 06/16/1972 | 216 | 10/20/1972 | SEARS BRANDS, L.L.C. |
|---|---|---|---|
| 05/07/1996 | 242760 | 08/23/2001 | SEARS BRANDS, L.L.C. |
|  | 235149 | 02/05/2001 | SEARS BRANDS, L.L.C. |
| 07/27/2004 | 294977 | 02/23/2005 | SEARS BRANDS, L.L.C. |
| 04/24/2001 | 2203347 | 06/11/2002 | SEARS BRANDS, L.L.C. |
| 04/01/1996 | 17707 | 04/01/1996 | SEARS BRANDS, L.L.C. |
| 05/18/2010 | 1040197 | 05/18/2010 | SEARS BRANDS, L.L.C. |
| 09/21/2009 | 8562829 | 03/16/2010 | SEARS BRANDS, L.L.C. |
| 10/06/2000 | 1890227 | 10/06/2000 | SEARS BRANDS, L.L.C. |
| 08/09/2004 | 3975737 | 03/27/2008 | SEARS BRANDS, L.L.C. |
| 04/01/1996 | 235556 | 12/11/1998 | KMART CORPORATION |
| 08/09/2004 | 3975497 | 11/04/2005 | SEARS BRANDS, L.L.C. |
| 12/03/2008 | 7433981 | 01/26/2011 | SEARS BRANDS, L.L.C. |
| 09/05/2008 | 7216518 | 05/22/2009 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| 10/21/2003 | 3406279 | 04/11/2008 | SEARS BRANDS, L.L.C. |
|---|---|---|---|
| 08/27/1998 | 917369 | 09/27/2000 | SEARS BRANDS, L.L.C. |
| 06/01/2000 | 1685395 | 03/20/2002 | SEARS, ROEBUCK AND CO. |
| 09/05/2008 | 7216575 | 05/21/2009 | SEARS BRANDS, L.L.C. |
| 10/20/2009 | 1017889 | 10/20/2009 | SEARS BRANDS, L.L.C. |
| 05/26/2014 | 012907465 | 10/17/2014 | SEARS BRANDS, L.L.C. |
| 10/26/2001 | 134464 | 08/16/2002 | SEARS BRANDS, L.L.C. |
| 10/26/2001 | 134469 | 08/16/2002 | SEARS BRANDS, L.L.C. |
| 10/26/2001 | 135214 | 09/17/2002 | SEARS BRANDS, L.L.C. |
| 01/26/1979 | 59512 | 10/13/1981 | SEARS BRANDS, L.L.C. |
| 04/14/2011 | 214683 | 12/14/2011 | SEARS BRANDS, L.L.C. |
| 08/23/1990 | 77042 | 09/10/1991 | SEARS BRANDS, L.L.C. |
| 09/14/1994 | 87324 | 06/10/1994 | SEARS BRANDS, L.L.C. |
| 09/30/2002 | 149936 | 10/08/2004 | SEARS BRANDS, L.L.C. |

18-23538-rdd    Doc 2507    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 506 of 1150

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 10/26/2001 | 134561 | 08/20/2002 | SEARS BRANDS, L.L.C. |
| 10/26/2001 | 135215 | 09/17/2002 | SEARS BRANDS, L.L.C. |
| 10/26/2001 | 134434 | 08/16/2002 | SEARS BRANDS, L.L.C. |
| 05/18/1988 | 46773 | 10/22/1988 | SEARS BRANDS, L.L.C. |
| 04/17/1988 | 54573 | 10/17/1988 | SEARS BRANDS, L.L.C. |
| 05/18/1988 | 46771 | 10/22/1988 | SEARS BRANDS, L.L.C. |
| 05/18/1988 | 46673 | 10/03/1988 | SEARS BRANDS, L.L.C. |
| 05/18/1988 | 46764 | 10/19/1988 | SEARS BRANDS, L.L.C. |
| 05/13/1988 | 46671 | 10/03/1988 | SEARS BRANDS, L.L.C. |
| 10/26/2001 | 134558 | 08/20/2002 | SEARS BRANDS, L.L.C. |
| 07/31/2002 | 140152 | 08/19/2003 | SEARS BRANDS, L.L.C. |
| 05/18/2010 | 1040197 | 05/18/2010 | SEARS BRANDS, L.L.C. |
| 05/07/1998 | Z980551 | 11/11/1998 | SEARS BRANDS, L.L.C. |
| 12/18/1962 | 263543A | 12/18/1962 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 10/31/1990 | Z934064 | 10/31/1990 | SEARS BRANDS, L.L.C. |
| 12/20/1994 | 122048 | 06/22/1995 | SEARS BRANDS, L.L.C. |
| 12/23/1994 | 122057 | 06/22/1995 | SEARS BRANDS, L.L.C. |
| 10/27/2000 | 58229 | 10/27/2000 | SEARS BRANDS, L.L.C. |
| 10/27/2000 | 58230 | 10/27/2000 | SEARS BRANDS, L.L.C. |
| 09/26/2000 | 236976 | 09/20/2001 | SEARS BRANDS, L.L.C. |
| 04/29/1998 | 219788 CR | 08/23/1999 | SEARS BRANDS, L.L.C. |
| 12/18/1962 | 263543A | 12/18/1962 | SEARS BRANDS, L.L.C. |
| 12/20/1990 | 169848 | 12/20/1990 | SEARS BRANDS, L.L.C. |
| 09/09/1988 | 2204/1990 | 04/06/1990 | SEARS BRANDS, L.L.C. |
| 11/29/1976 | VR1978 03242 | 10/06/1978 | SEARS BRANDS, L.L.C. |
| 08/16/1990 | VR199105092 | 08/16/1991 | SEARS BRANDS, L.L.C. |
| 11/06/2000 | VR 2001 03089 | 07/19/2001 | SEARS BRANDS, L.L.C. |
| 06/05/2003 | 137031 | 08/30/2003 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 07/24/1978 | 27751 | 07/24/1978 | SEARS BRANDS, L.L.C. |
|---|---|---|---|
|  | 76825 | 03/15/1995 | SEARS BRANDS, L.L.C. |
|  | 76900 | 03/15/1995 | KMART CORPORATION |
|  | 76809 | 03/15/1995 | SEARS BRANDS, L.L.C. |
|  | 76934 | 03/15/1995 | KMART CORPORATION |
| 01/29/2002 | 129505 | 04/30/2002 | SEARS BRANDS, L.L.C. |
|  | 18438 | 03/13/1970 | SEARS BRANDS, L.L.C. |
|  | 1070 | 06/15/1971 | SEARS BRANDS, L.L.C. |
|  | 18441 | 03/16/1970 | SEARS BRANDS, L.L.C. |
| 07/08/2011 | 190553 | 10/18/2011 | SEARS BRANDS, L.L.C. |
| 06/05/2003 | 137033 | 08/30/2003 | SEARS BRANDS, L.L.C. |
| 04/29/1998 | 2663 | 12/23/1999 | SEARS BRANDS, L.L.C. |
| 11/10/2006 | 200807 | 08/13/2007 | SEARS BRANDS, L.L.C. |
| 07/31/1986 | 612-87 | 11/26/1987 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 04/29/1998 | 2664 | 12/23/1999 | SEARS BRANDS, L.L.C. |
| 07/13/1966 | 3 | 03/27/1967 | SEARS, ROEBUCK AND CO. |
| 11/04/1966 | 2908 | 08/03/1982 | SEARS BRANDS, L.L.C. |
| 01/25/2010 | 1893-11 | 01/25/2010 | SEARS BRANDS, L.L.C. |
| 11/04/1966 | 2907 | 01/28/1983 | SEARS, ROEBUCK AND CO. |
| 06/17/1994 | 1086/95 | 11/30/1995 | SEARS BRANDS, L.L.C. |
| 01/08/1997 | 5747-98 | 10/06/1998 | SEARS, ROEBUCK AND CO. |
| 05/18/2010 | 1040197 | 05/18/2010 | SEARS BRANDS, L.L.C. |
| 07/24/1980 | 57757 | 07/24/1980 | SEARS BRANDS, L.L.C. |
| 07/24/1980 | 57768 | 07/24/1980 | SEARS BRANDS, L.L.C. |
| 07/24/1980 | 57761 | 04/14/1988 | SEARS BRANDS, L.L.C. |
| 12/18/1962 | 263543A | 12/18/1962 | SEARS BRANDS, L.L.C. |
| 08/19/2000 | 135454 | 07/15/2007 | SEARS BRANDS, L.L.C. |
| 03/20/1999 | 122475 | 03/20/1999 | SEARS, ROEBUCK AND CO. |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A
Pg 570 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 08/10/2001 | 81Book184 | 06/07/2004 | SEARS BRANDS, L.L.C. |
| 08/10/2001 | 234Book181 | 01/22/2004 | SEARS BRANDS, L.L.C. |
| 08/10/2001 | 221Book181 | 01/21/2004 | SEARS BRANDS, L.L.C. |
| 08/08/2001 | 80Book184 | 06/07/2004 | SEARS BRANDS, L.L.C. |
| 06/14/2010 | 24Book169 | 06/01/2011 | SEARS BRANDS, L.L.C. |
| 12/15/1994 | 10Book38 | 10/22/1996 | SEARS BRANDS, L.L.C. |
| 04/27/1993 | 44Book8 | 07/13/2000 | KMART CORPORATION |
| 11/08/1993 | 16Book6 | 08/31/1998 | KMART CORPORATION |
| 08/08/2001 | 107Book182 | 02/23/2004 | SEARS BRANDS, L.L.C. |
| 08/08/2001 | 135Book182 | 02/26/2004 | SEARS BRANDS, L.L.C. |
| 08/08/2001 | 23Book183 | 03/25/2004 | SEARS BRANDS, L.L.C. |
| 02/03/1997 | 170Book73 | 03/25/1998 | SEARS BRANDS, L.L.C. |
| 02/07/1986 | 162Book115 | 05/16/1988 | SEARS BRANDS, L.L.C. |
| 12/01/1980 | 230Book90 | 10/20/1981 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | | | |
|---|---|---|---|
| 09/09/2009 | 37Book150 | 05/13/2010 | SEARS BRANDS, L.L.C. |
| 05/03/1994 | 188Book75 | 04/27/1998 | Structureco, Inc. (Record Owner); Sears Brands, L.L.C. (Legal Owner) |
| 05/03/1994 | 187Book75 | 04/27/1998 | Structureco, Inc. (Record Owner); Sears Brands, L.L.C. (Legal Owner) |
| 05/03/1994 | 185Book75 | 04/27/1998 | Structureco, Inc. (Record Owner); Sears Brands, L.L.C. (Legal Owner) |
| 05/03/1994 | 186Book75 | 04/27/1998 | Structureco, Inc. (Record Owner); Sears Brands, L.L.C. (Legal Owner) |
| 07/20/2004 | 100Book37 | 04/18/2005 | SEARS BRANDS, L.L.C. |
| 06/24/1982 | 97Book94 | 06/24/1982 | SEARS BRANDS, L.L.C. |
| 05/19/1998 | 30504 | 03/27/2000 | SEARS BRANDS, L.L.C. |
| 05/05/1981 | 88274 | 03/05/1984 | SEARS BRANDS, L.L.C. |
| 10/13/2000 | 225170 | 09/30/2002 | SEARS BRANDS, L.L.C. |
| 11/10/2006 | 96652167 | 11/10/2006 | SEARS BRANDS, L.L.C. |
| 01/13/2003 | 33203778 | 01/13/2003 | SEARS BRANDS, L.L.C. |
| 05/02/1983 | 1234789 | 10/14/1983 | SEARS BRANDS, L.L.C. |
| 09/25/1990 | 1728755 | 09/25/1990 | KMART CORPORATION |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 03/30/1966 | 1342550 | 02/13/1986 | SEARS BRANDS, L.L.C. |
| 10/10/1988 | 1493043 | 10/10/1988 | SEARS BRANDS, L.L.C. |
| 12/18/1962 | 263543A | 12/18/1962 | SEARS BRANDS, L.L.C. |
| 06/24/1991 | 1673013 | 06/24/1991 | SEARS BRANDS, L.L.C. |
| 11/10/2006 | 96652167 | 11/10/2006 | SEARS BRANDS, L.L.C. |
| 03/30/1966 | 1342550 | 02/13/1986 | SEARS BRANDS, L.L.C. |
| 07/21/1997 | 4892 | 06/03/1998 | SEARS BRANDS, L.L.C. |
| 07/21/1997 | 4893 | 06/03/1998 | SEARS BRANDS, L.L.C. |
| 09/13/1988 | 1140415 | 05/30/1989 | SEARS BRANDS, L.L.C. |
| 06/05/2003 | 30328599.0/12 | 09/22/2003 | SEARS BRANDS, L.L.C. |
| 08/17/1990 | 1188406 | 08/17/1993 | KMART CORPORATION |
| 12/18/1962 | 263543A | 12/18/1962 | SEARS BRANDS, L.L.C. |
| 05/22/1991 | 2032785 | 03/19/1993 | SEARS BRANDS, L.L.C. |
| 03/16/1973 | 927538 | 02/04/1975 | SEARS BRANDS, L.L.C. |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:37 Exhibit A
Pg 873 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 10/27/1978 | 21479 | 10/27/1978 | SEARS, ROEBUCK AND CO. |
| 03/16/2001 | 2264462 | 05/30/2003 | SEARS BRANDS, L.L.C. |
| 01/09/2001 | 2257427B | 12/14/2001 | SEARS BRANDS, L.L.C. |
| 11/08/1996 | 2115174 | 05/30/1997 | SEARS BRANDS, L.L.C. |
| 11/25/1972 | 1002371 | 11/25/1972 | SEARS BRANDS, L.L.C. |
| 10/17/1990 | 1444231 | 07/23/1993 | SEARS BRANDS, L.L.C. |
| 10/05/1978 | 1102481 | 10/05/1978 | SEARS BRANDS, L.L.C. |
| 10/01/1986 | 1272841 | 10/01/1986 | SEARS BRANDS, L.L.C. |
| 11/18/1986 | 1292023 | 11/18/1986 | SEARS BRANDS, L.L.C. |
| 06/25/1991 | 1468446 | 08/16/1996 | SEARS BRANDS, L.L.C. |
| 09/02/2002 | 2309532 | 09/02/2002 | SEARS BRANDS, L.L.C. |
| 08/12/1994 | 120461 | 09/17/1997 | SEARS BRANDS, L.L.C. |
| 11/25/1972 | 61/1992 | 11/25/1972 | SEARS BRANDS, L.L.C. |
| 04/06/2010 | SM-800-92-133 | 04/06/2010 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 10/05/2001 | 118138 | 06/11/2002 | SEARS BRANDS, L.L.C. |
| 10/05/2001 | 118131 | 06/11/2002 | SEARS BRANDS, L.L.C. |
| 07/20/2000 | 119931 | 09/11/2002 | SEARS BRANDS, L.L.C. |
| 01/24/2006 | 144445 | 08/21/2006 | SEARS BRANDS, L.L.C. |
| 10/05/2001 | 118132 | 06/11/2002 | SEARS BRANDS, L.L.C. |
| 01/13/2006 | 143953 | 08/01/2006 | SEARS BRANDS, L.L.C. |
| 01/13/2006 | 143998 | 08/02/2006 | SEARS BRANDS, L.L.C. |
| 10/05/2001 | 118135 | 06/11/2002 | SEARS BRANDS, L.L.C. |
|  | 3710120089 | 06/05/1979 | SEARS BRANDS, L.L.C. |
| 05/05/1997 | 90389198192 | 05/05/1998 | KMART CORPORATION |
| 03/21/2011 | 186951 | 02/04/2013 | SEARS BRANDS, L.L.C. |
| 03/16/1995 | 83132 | 03/02/1997 | SEARS BRANDS, L.L.C. |
| 08/16/1990 | 65073 | 09/17/1991 | SEARS BRANDS, L.L.C. |
| 05/18/1999 | 99402 | 10/01/1999 | SEARS, ROEBUCK AND CO. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 10/05/2001 | 118479 | 06/25/2002 | SEARS, ROEBUCK AND CO. |
| 10/05/2001 | 118142 | 06/11/2002 | SEARS, ROEBUCK AND CO. |
| 10/05/2001 | 118126 | 06/11/2002 | SEARS BRANDS, L.L.C. |
| 04/21/1978 | 34389/10/84 | 04/21/1978 | SEARS, ROEBUCK AND CO. |
| 04/21/1978 | 34394/15/84 | 04/21/1978 | SEARS, ROEBUCK AND CO. |
| 04/28/1978 | 34482/103/84 | 04/28/1978 | SEARS, ROEBUCK AND CO. |
| 03/09/2000 | 108278 | 11/21/2000 | SEARS, ROEBUCK AND CO. |
| 05/14/1999 | 99403 | 10/01/1999 | SEARS BRANDS, L.L.C. |
| 05/12/2000 | 107055 | 10/18/2000 | SEARS, ROEBUCK AND CO. |
| 04/21/1978 | 34386/7/84 | 04/21/1978 | SEARS, ROEBUCK AND CO. |
| 04/21/1978 | 34388/9/84 | 04/21/1978 | SEARS, ROEBUCK AND CO. |
| 01/01/1977 | 34390/11/84 | 04/21/1978 | SEARS, ROEBUCK AND CO. |
| 06/21/1999 | 10780 | 06/21/2000 | SEARS BRANDS, L.L.C. |
| 02/10/2000 | 11155 | 02/16/2001 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 10/05/2001 | 118124 | 06/11/2002 | SEARS, ROEBUCK AND CO. |
| 10/05/2001 | 118115 | 06/11/2002 | SEARS BRANDS, L.L.C. |
| 10/10/1979 | 174/177 | 03/29/1982 | SEARS BRANDS, L.L.C. |
| 10/04/1980 | 204/16 | 10/04/1980 | SEARS BRANDS, L.L.C. |
| 11/05/2006 | 379/152 | 11/05/2006 | SEARS BRANDS, L.L.C. |
| 10/02/2001 | 84384 | 06/07/2002 | SEARS BRANDS, L.L.C. |
| 10/05/2001 | 84396 | 06/07/2002 | SEARS BRANDS, L.L.C. |
| 10/02/2001 | 84397 | 06/07/2002 | SEARS BRANDS, L.L.C. |
| 08/29/1980 | 132 | 11/04/1981 | SEARS BRANDS, L.L.C. |
| 12/29/1994 | 62896 | 09/14/1995 | SEARS BRANDS, L.L.C. |
| 12/29/1994 | 2226 | 09/14/1995 | SEARS BRANDS, L.L.C. |
| 10/05/2001 | 84386 | 06/07/2002 | SEARS BRANDS, L.L.C. |
| 10/02/2001 | 84282 | 05/31/2002 | SEARS BRANDS, L.L.C. |
| 11/23/2009 | 16933 | 10/18/2011 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| 04/13/1994 | 60933 | 01/11/1995 | SEARS BRANDS, L.L.C. |
|---|---|---|---|
| 07/07/2000 | 82549 | 09/12/2001 | SEARS BRANDS, L.L.C. |
| 12/07/2001 | 93048 | 01/11/2005 | SEARS BRANDS, L.L.C. |
| 01/02/2013 | 302484252AA | 03/26/2014 | SEARS BRANDS, L.L.C. |
| 01/02/2013 | 302484252AB | 06/04/2014 | SEARS BRANDS, L.L.C. |
| 04/27/1988 | 1989B3148 | 10/20/1989 | SEARS BRANDS, L.L.C. |
| 04/27/1978 | 19790220 | 04/27/1978 | SEARS BRANDS, L.L.C. |
| 09/26/2000 | 01912/2002 | 09/26/2000 | SEARS BRANDS, L.L.C. |
| 09/26/2000 | 13675/2001 | 09/26/2000 | SEARS BRANDS, L.L.C. |
| 06/17/1992 | 2001B06061 | 05/23/2001 | SEARS BRANDS, L.L.C. |
| 06/17/1992 | 1995B10607 | 12/18/1995 | SEARS BRANDS, L.L.C. |
| 05/05/1978 | 19810059 | 05/05/1985 | SEARS BRANDS, L.L.C. |
| 05/08/1990 | 1995B08541 | 10/12/1995 | SEARS BRANDS, L.L.C. |
| 08/27/1997 | 199813030 | 08/27/1997 | SEARS BRANDS, L.L.C. |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 04/01/1987 | 1988B0240 | 04/01/1987 | SEARS, ROEBUCK AND CO. |
| 04/08/1998 | 159648 | 02/10/2000 | SEARS BRANDS, L.L.C. |
| 12/18/1962 | 263543A | 12/18/1962 | SEARS BRANDS, L.L.C. |
| 11/05/1990 | 131978 | 07/23/1992 | SEARS BRANDS, L.L.C. |
| 02/07/1994 | 794/1994 | 09/27/1994 | SEARS BRANDS, L.L.C. |
| 11/02/2006 | 1500838 | 03/23/2010 | KMART CORPORATION |
| 05/06/1985 | 437376B | 05/06/1985 | SEARS BRANDS, L.L.C. |
| 09/23/2003 | 1239290 | 09/23/2003 | SEARS BRANDS, L.L.C. |
| 07/28/2014 | 1225053 | 07/28/2014 | SEARS BRANDS, L.L.C. |
| 04/13/1992 | 571183 | 08/31/1992 | SEARS BRANDS, L.L.C. |
| 04/25/2004 | IDM000017905 | 09/29/2004 | KMART CORPORATION |
| 04/25/2004 | IDM000016299 | 09/16/2004 | KMART CORPORATION |
| 04/25/2004 | IDM000017904 | 09/29/2004 | KMART CORPORATION |
| 07/29/1991 | IDM000332406 | 04/04/2001 | SEARS BRANDS, L.L.C. |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:37 Exhibit A
Pg 807 of 1450

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | | | |
|---|---|---|---|
| 07/27/2008 | IDM000197801 | 03/12/2009 | SEARS BRANDS, L.L.C. |
| 05/18/2010 | 1040197 | 05/18/2010 | SEARS BRANDS, L.L.C. |
| 12/18/1962 | 263543A | 12/18/1962 | SEARS BRANDS, L.L.C. |
| 07/28/2014 | 1225053 | 07/28/2014 | SEARS BRANDS, L.L.C. |
| 01/09/2013 | 1151272 | 01/09/2013 | SEARS BRANDS, L.L.C. |
| 10/20/2009 | 1017889 | 10/20/2009 | SEARS BRANDS, L.L.C. |
| 07/01/1996 | 216089 | 07/01/1996 | SEARS BRANDS, L.L.C. |
| 06/14/1994 | 160612 | 10/25/1995 | SEARS BRANDS, L.L.C. |
| 09/20/1979 | 48676 | 09/20/1986 | SEARS BRANDS, L.L.C. |
| 08/21/1990 | 77328 | 11/03/1994 | SEARS BRANDS, L.L.C. |
| 07/09/2014 | 266654 | 05/05/2016 | SEARS BRANDS, L.L.C. |
| 06/24/1991 | 80147 | 09/04/1994 | SEARS BRANDS, L.L.C. |
| 10/31/1984 | 1603798 | 10/31/1984 | SEARS BRANDS, L.L.C. |
| 10/19/1988 | 1324140 | 10/16/1991 | KMART CORPORATION |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 03/20/1986 | 302006901401623 | 07/16/2009 | SEARS BRANDS, L.L.C. |
|---|---|---|---|
| 12/18/1962 | 263543A | 12/18/1962 | SEARS BRANDS, L.L.C. |
| 03/20/1986 | 302006901401622 | 07/16/2009 | SEARS BRANDS, L.L.C. |
| 05/31/2000 | 1255574 | 05/03/2000 | SEARS BRANDS, L.L.C. |
| 05/24/1990 | 1255573 | 12/10/1992 | SEARS BRANDS, L.L.C. |
| 04/27/1966 | 302006901409068 | 07/23/2009 | SEARS BRANDS, L.L.C. |
| 10/18/1994 | 27289 | 10/18/1994 | SEARS BRANDS, L.L.C. |
| 07/30/2012 | 60866 | 03/18/2013 | SEARS BRANDS, L.L.C. |
| 06/14/1994 | B28060 | 06/14/1994 | SEARS BRANDS, L.L.C. |
| 03/15/2001 | 4618051 | 11/01/2002 | SEARS BRANDS, L.L.C. |
| 05/18/2010 | 1040197 | 05/18/2010 | SEARS BRANDS, L.L.C. |
| 08/30/1994 | 4042216 | 08/15/1997 | SEARS BRANDS, L.L.C. |
| 08/30/1994 | 4042217 | 08/15/1997 | SEARS BRANDS, L.L.C. |
| 11/22/2002 | 4695424 | 07/25/2003 | SEARS BRANDS, L.L.C. |

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 12/16/2008 | 5246433 | 07/10/2009 | SEARS BRANDS, L.L.C. |
| 03/07/1997 | 4163354 | 07/03/1998 | SEARS BRANDS, L.L.C. |
| 12/18/1997 | 4361477 | 02/10/2000 | SEARS BRANDS, L.L.C. |
| 03/20/1998 | 4364822 | 03/03/2000 | SEARS BRANDS, L.L.C. |
| 03/31/1997 | 4158863 | 06/19/1998 | SEARS BRANDS, L.L.C. |
| 01/09/2013 | 1151272 | 01/09/2013 | SEARS BRANDS, L.L.C. |
| 06/30/1994 | 3317277 | 05/30/1997 | SEARS BRANDS, L.L.C. |
| 03/07/1995 | 3370595 | 10/23/1998 | SEARS, ROEBUCK AND CO. |
| 02/20/1981 | 1922852 | 12/24/1986 | SEARS BRANDS, L.L.C. |
| 04/10/2001 | 4577190 | 06/14/2002 | SEARS, ROEBUCK AND CO. |
| 03/12/1987 | 2237471 | 06/28/1990 | SEARS, ROEBUCK AND CO. |
| | 2281132 | 11/30/1990 | SEARS BRANDS, L.L.C. |
| 02/08/1993 | 33493 | 10/26/1993 | KMART CORPORATION |
| 06/20/2000 | 61449 | 09/15/2002 | SEARS BRANDS, L.L.C. |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 08/15/1994 | 35879 | 06/29/1995 | SEARS BRANDS, L.L.C. |
| 11/15/2000 | 50864 | 02/01/2003 | SEARS BRANDS, L.L.C. |
| 11/15/2000 | 50865 | 11/15/2000 | SEARS, ROEBUCK AND CO. |
| 10/06/2003 | 55114 | 10/06/2003 | SEARS BRANDS, L.L.C. |
| 09/26/1994 | 27143 | 12/16/1997 | SEARS BRANDS, L.L.C. |
| 04/09/1998 | M44186 | 08/20/1999 | SEARS BRANDS, L.L.C. |
| 10/09/1978 | 00286/2008 | 10/09/1978 | SEARS BRANDS, L.L.C. |
| 10/09/1978 | 91078/853 | 10/09/1978 | SEARS BRANDS, L.L.C. |
| 12/18/1962 | 263543A | 12/18/1962 | SEARS BRANDS, L.L.C. |
| 12/20/1991 | 8292 | 06/15/1992 | SEARS BRANDS, L.L.C. |
| 01/11/1988 | 8797-M | 09/29/1988 | SEARS BRANDS, L.L.C. |
| 12/19/1994 | 14327 | 10/04/1995 | SEARS BRANDS, L.L.C. |
| 06/28/1991 | 11025 | 05/05/1999 | SEARS BRANDS, L.L.C. |
| 09/27/2000 | 9847 | 01/01/2002 | SEARS, ROEBUCK AND CO. |

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | | | |
|---|---|---|---|
| 04/05/1994 | 03618 | 04/05/1994 | SEARS BRANDS, L.L.C. |
| 12/18/1962 | 263543A | 12/18/1962 | SEARS BRANDS, L.L.C. |
| 11/10/1981 | MB92910 | 06/05/2003 | SEARS BRANDS, L.L.C. |
| 11/25/1987 | 87/05633 | 11/25/1987 | SEARS BRANDS, L.L.C. |
| 11/18/1987 | 87/05535 | 11/18/1987 | SEARS BRANDS, L.L.C. |
| 11/18/1987 | 87005536 | 11/18/1987 | SEARS BRANDS, L.L.C. |
| 11/18/1987 | 87005534 | 11/18/1987 | SEARS BRANDS, L.L.C. |
| 11/18/1987 | 87005530 | 11/18/1987 | SEARS BRANDS, L.L.C. |
| 11/18/1987 | 87005533 | 11/18/1987 | SEARS BRANDS, L.L.C. |
| 11/18/1987 | 87005537 | 11/18/1987 | SEARS BRANDS, L.L.C. |
| 08/27/1994 | 94/07750 | 10/11/1996 | SEARS BRANDS, L.L.C. |
| 05/14/1985 | 85002007 | 07/30/1991 | SEARS BRANDS, L.L.C. |
| 09/29/2000 | 32318 | 09/29/2000 | SEARS BRANDS, L.L.C. |
| 09/29/2000 | 32319 | 09/29/2000 | SEARS BRANDS, L.L.C. |

18-23538-rdd Doc 2507-1 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 04/05/1993 | 22286 | 04/05/1993 | SEARS BRANDS, L.L.C. |
| 08/18/1995 | 12992/1995 | 03/29/1996 | SEARS BRANDS, L.L.C. |
| 06/15/2010 | 1182835 | 10/06/2010 | SEARS BRANDS, L.L.C. |
| 06/15/2010 | 1182836 | 10/06/2010 | SEARS BRANDS, L.L.C. |
| 08/01/1995 | 503119 | 08/31/1995 | SEARS BRANDS, L.L.C. |
| 10/01/2015 | 1609516 | 02/02/2016 | SEARS BRANDS, L.L.C. |
| 10/21/1993 | 472608 | 09/07/1994 | KMART CORPORATION |
| 10/21/1993 | 447589 | 11/29/1993 | KMART CORPORATION |
| 08/03/1990 | 415249 | 06/02/1992 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 1141922 | 02/09/2010 | SEARS BRANDS, L.L.C. |
| 06/05/2002 | 788088 | 06/05/2002 | SEARS BRANDS, L.L.C. |
| 06/05/2002 | 788089 | 06/05/2002 | SEARS BRANDS, L.L.C. |
| 07/08/2010 | 1170021 | 07/22/2010 | SEARS BRANDS, L.L.C. |
| 03/11/2010 | 1160991 | 05/28/2010 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 07/22/2009 | 1143028 | 02/15/2010 | SEARS BRANDS, L.L.C. |
| 07/22/2009 | 1115890 | 08/17/2009 | SEARS BRANDS, L.L.C. |
| 09/25/2009 | 1141645 | 02/08/2010 | SEARS BRANDS, L.L.C. |
| 01/08/2013 | 1367607 | 05/15/2013 | SEARS BRANDS, L.L.C. |
| 06/17/1992 | 435048 | 06/02/1993 | SEARS BRANDS, L.L.C. |
| 03/31/2010 | 1324752 | 10/30/2012 | SEARS BRANDS, L.L.C. |
| 06/08/1993 | 441408 | 09/07/1993 | SEARS BRANDS, L.L.C. |
| 01/31/2003 | 791848 | 05/21/2003 | SEARS BRANDS, L.L.C. |
| 11/03/1995 | 512770 | 12/12/1995 | SEARS BRANDS, L.L.C. |
| 11/03/1995 | 512772 | 12/12/1995 | SEARS BRANDS, L.L.C. |
| 10/20/1993 | 462594 | 06/06/1994 | KMART CORPORATION |
| 10/22/1993 | 447606 | 11/29/1993 | KMART CORPORATION |
| 09/22/2009 | 1141923 | 02/09/2010 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 1142186 | 02/10/2010 | SEARS BRANDS, L.L.C. |

18-23538-shl   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 856 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| 09/22/2009 | 1141924 | 02/09/2010 | SEARS BRANDS, L.L.C. |
|---|---|---|---|
| 09/22/2015 | 1598893 | 12/11/2015 | SEARS BRANDS, L.L.C. |
| 09/22/2015 | 1598895 | 12/11/2015 | SEARS BRANDS, L.L.C. |
| 09/22/2015 | 1598894 | 12/11/2015 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 1141668 | 02/08/2010 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 1141669 | 02/08/2010 | SEARS BRANDS, L.L.C. |
| 03/25/1997 | 547639 | 04/29/1997 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 1184148 | 10/15/2010 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 1141664 | 02/08/2010 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 1141663 | 02/08/2010 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 1184149 | 10/15/2010 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 1141662 | 02/08/2010 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 1141661 | 02/08/2010 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 1141657 | 02/08/2010 | SEARS BRANDS, L.L.C. |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 555 of 1120

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 09/22/2009 | 1141658 | 02/08/2010 | SEARS BRANDS, L.L.C. |
|---|---|---|---|
| 09/22/2009 | 1141667 | 02/08/2010 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 1141652 | 02/08/2010 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 1141665 | 02/08/2010 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 1141648 | 02/08/2010 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 1141659 | 02/08/2010 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 1141651 | 02/08/2010 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 1141650 | 02/08/2010 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 1184147 | 10/15/2010 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 1184146 | 10/15/2010 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 1141649 | 02/08/2010 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 1141655 | 02/08/2010 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 1141654 | 02/08/2010 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 1141653 | 02/08/2010 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 09/22/2009 | 1141660 | 02/08/2010 | SEARS BRANDS, L.L.C. |
|---|---|---|---|
| 09/22/2009 | 1141656 | 02/08/2010 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 1141666 | 02/08/2010 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 1184425 | 10/18/2010 | SEARS BRANDS, L.L.C. |
| 09/22/2015 | 1598891 | 12/11/2015 | SEARS BRANDS, L.L.C. |
| 09/22/2015 | 1598892 | 12/11/2015 | SEARS BRANDS, L.L.C. |
| 08/02/1988 | 404735 | 02/04/1992 | SEARS BRANDS, L.L.C. |
| 12/19/1990 | 413131 | 12/19/2000 | SEARS BRANDS, L.L.C. |
| 08/20/1975 | 202152 | 04/26/1977 | SEARS BRANDS, L.L.C. |
| 03/25/1997 | 547640 | 04/29/1997 | SEARS BRANDS, L.L.C. |
| 01/11/2013 | 1418362 | 12/06/2013 | SEARS BRANDS, L.L.C. |
| 01/11/2013 | 1457141 | 05/26/2014 | SEARS BRANDS, L.L.C. |
| 07/29/2002 | 766674 | 10/31/2002 | SEARS BRANDS, L.L.C. |
| 03/21/2011 | 15 | 08/26/2013 | SEARS BRANDS, L.L.C. |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 859 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 04/01/1994 | 2520 | 11/13/1995 | SEARS BRANDS, L.L.C. |
| 04/01/1994 | 470 | 04/01/1994 | SEARS BRANDS, L.L.C. |
| 04/01/1994 | 2521 | 11/13/1995 | SEARS BRANDS, L.L.C. |
| 05/18/2010 | 1040197 | 05/18/2010 | SEARS BRANDS, L.L.C. |
| 12/18/1962 | 263543A | 12/18/1962 | SEARS BRANDS, L.L.C. |
| 07/13/1994 | 94.15554 | 09/15/1994 | SEARS BRANDS, L.L.C. |
| 10/31/1990 | 06486PP | 06/29/1992 | SEARS BRANDS, L.L.C. |
| 05/18/2010 | 1040197 | 05/18/2010 | SEARS BRANDS, L.L.C. |
| 06/18/1993 | 51562 | 06/18/1993 | SEARS BRANDS, L.L.C. |
| 07/07/1993 | 9177 | 11/30/1993 | SEARS BRANDS, L.L.C. |
| 12/18/1962 | 263543A | 12/18/1962 | SEARS BRANDS, L.L.C. |
| 07/25/1994 | 54395 | 07/25/1994 | SEARS BRANDS, L.L.C. |
| 06/14/1979 | 79/739 | 06/14/1979 | SEARS BRANDS, L.L.C. |
| 08/10/1983 | 1983/0788 | 08/10/1983 | SEARS BRANDS, L.L.C. |

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:44:32    Exhibit A
Pg 890 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 02/23/1996 | 11392/052 | 02/23/1996 | SEARS BRANDS, L.L.C. |
|---|---|---|---|
| 10/23/2002 | 666864 | 04/24/2003 | SEARS BRANDS, L.L.C. |
| 03/09/1982 | 141058 | 03/06/1991 | SEARS BRANDS, L.L.C. |
| 01/13/1988 | 176999 | 01/13/1988 | SEARS, ROEBUCK AND CO. |
| 12/16/2002 | 670295 | 06/19/2003 | SEARS BRANDS, L.L.C. |
| 09/10/1998 | 298061 | 11/12/1999 | SEARS BRANDS, L.L.C. |
| 01/09/2013 | 1151272 | 01/09/2013 | SEARS BRANDS, L.L.C. |
| 06/10/2014 | 999377 | 12/11/2014 | SEARS BRANDS, L.L.C. |
| 06/21/1994 | 238135 | 06/19/1998 | SEARS BRANDS, L.L.C. |
| 06/21/1994 | 238134 | 06/19/1998 | SEARS BRANDS, L.L.C. |
| 07/10/1989 | 194540 | 07/10/1989 | KMART CORPORATION |
| 09/10/1998 | 298062 | 02/17/1999 | SEARS BRANDS, L.L.C. |
| 10/22/2009 | 814691 | 04/22/2010 | SEARS BRANDS, L.L.C. |
| 10/04/2001 | 53903 C.C. | 05/21/2002 | SEARS BRANDS, L.L.C. |

18-23538-shl Doc 9507-5 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 891 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 10/04/2001 | 54238 C.C. | 06/06/2002 | SEARS BRANDS, L.L.C. |
| 11/20/2000 | 51578 C.C. | 10/16/2001 | SEARS BRANDS, L.L.C. |
| 10/04/2001 | 53899 C.C. | 05/21/2002 | SEARS BRANDS, L.L.C. |
| 10/04/2001 | 53898 C.C. | 05/21/2002 | SEARS BRANDS, L.L.C. |
| 10/04/2001 | 54137 C.C. | 05/28/2002 | SEARS BRANDS, L.L.C. |
| 10/16/2001 | 54476 C.C. | 06/14/2002 | SEARS BRANDS, L.L.C. |
| 06/12/2003 | 15482 | 09/05/1983 | SEARS BRANDS, L.L.C. |
| 01/28/1994 | 24918 C.C. | 01/28/1994 | SEARS BRANDS, L.L.C. |
| 11/20/2000 | 51577 | 10/16/2001 | SEARS BRANDS, L.L.C. |
| 10/04/2001 | 54141 C.C. | 05/28/2002 | SEARS, ROEBUCK AND CO. |
| 10/04/2001 | 54140 C.C. | 05/28/2002 | SEARS, ROEBUCK AND CO. |
| 10/04/2001 | 54144 C.C. | 05/28/2002 | SEARS BRANDS, L.L.C. |
| 11/20/2000 | 51576 C.C. | 10/16/2001 | SEARS BRANDS, L.L.C. |
| 12/10/2001 | 54508 LM | 06/19/2002 | SEARS, ROEBUCK AND CO. |

18-23538-shl    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 10/04/2001 | 54150 C.C. | 05/28/2002 | SEARS, ROEBUCK AND CO. |
| 10/18/1978 | 34017/78 | 01/18/1984 | KMART CORPORATION |
| 10/18/1978 | 34018/78 | 03/06/1986 | KMART CORPORATION |
| 10/18/1978 | 34015/78 | 10/18/1978 | KMART CORPORATION |
| 04/09/1982 | 25440 | 04/09/1982 | SEARS BRANDS, L.L.C. |
| 05/01/1978 | 32722 | 05/01/1978 | SEARS BRANDS, L.L.C. |
| 05/01/1978 | 32724 | 05/01/1978 | SEARS BRANDS, L.L.C. |
| 05/01/1978 | 32734 | 05/01/1978 | SEARS BRANDS, L.L.C. |
| 08/04/1983 | 118558 | 09/13/1984 | SEARS BRANDS, L.L.C. |
| 05/30/1991 | 154079 | 12/23/1992 | SEARS BRANDS, L.L.C. |
| 08/10/2004 | 227885 | 08/29/2005 | SEARS BRANDS, L.L.C. |
| 08/10/2004 | 227993 | 09/06/2005 | SEARS BRANDS, L.L.C. |
| 06/26/2014 | 279686 | 01/07/2015 | SEARS BRANDS, L.L.C. |
| 05/13/1990 | 4257 | 04/11/2000 | KMART CORPORATION |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 11/11/1985 | 88198 | 11/11/1985 | SEARS BRANDS, L.L.C. |
| 11/11/1985 | 88202 | 11/11/1985 | SEARS BRANDS, L.L.C. |
| 11/11/1985 | 88207 | 11/11/1985 | SEARS BRANDS, L.L.C. |
| 09/29/1985 | 87695 | 09/29/1985 | SEARS BRANDS, L.L.C. |
| 11/11/1985 | 88205 | 11/11/1985 | SEARS BRANDS, L.L.C. |
| 11/17/1985 | 88257 | 11/17/1985 | SEARS BRANDS, L.L.C. |
| 11/11/1985 | 88200 | 11/11/1985 | SEARS BRANDS, L.L.C. |
| 11/11/1985 | 88254 | 11/11/1985 | SEARS BRANDS, L.L.C. |
| 11/11/1985 | 88209 | 11/11/1985 | SEARS BRANDS, L.L.C. |
| 01/16/1997 | 139484 | 01/16/1997 | SEARS BRANDS, L.L.C. |
| 01/16/1997 | 139483 | 05/11/2004 | SEARS BRANDS, L.L.C. |
| 01/27/1997 | 139620 | 02/21/2003 | SEARS BRANDS, L.L.C. |
| 11/13/2001 | 11809801 | 11/13/2001 | SEARS BRANDS, L.L.C. |
| 11/13/2001 | 118100 | 06/02/2003 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 11/13/2001 | 118102 | 06/02/2003 | SEARS BRANDS, L.L.C. |
| 11/13/2001 | 118101 | 11/13/2001 | SEARS BRANDS, L.L.C. |
| 12/28/2001 | 118898 | 06/19/2003 | SEARS BRANDS, L.L.C. |
| 11/13/2001 | 118103 | 06/02/2003 | SEARS BRANDS, L.L.C. |
| 04/28/1995 | 75364 | 08/06/1996 | SEARS BRANDS, L.L.C. |
| 07/23/1997 | 88958 | 07/09/1999 | SEARS BRANDS, L.L.C. |
| 11/13/2001 | 118104 01 | 06/02/2003 | SEARS BRANDS, L.L.C. |
| 11/13/2001 | 118105 | 06/02/2003 | SEARS BRANDS, L.L.C. |
| 11/13/2001 | 118106 | 06/02/2003 | SEARS BRANDS, L.L.C. |
| 11/13/2001 | 118107 01 | 06/02/2003 | SEARS BRANDS, L.L.C. |
| 11/13/2001 | 118108 01 | 06/02/2003 | SEARS BRANDS, L.L.C. |
| 11/13/2001 | 118109 | 06/07/2003 | SEARS BRANDS, L.L.C. |
| 11/13/2001 | 118110 01 | 06/02/2003 | SEARS BRANDS, L.L.C. |
| 11/13/2001 | 118111 | 11/13/2001 | SEARS BRANDS, L.L.C. |

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| 04/16/1980 | 1556 | 09/09/1980 | KMART CORPORATION |
|---|---|---|---|
| 08/12/1991 | 57674 | 10/02/1992 | SEARS BRANDS, L.L.C. |
| 11/13/2001 | 118112 | 06/02/2003 | SEARS BRANDS, L.L.C. |
| 11/13/2001 | 118113 | 06/02/2003 | SEARS BRANDS, L.L.C. |
| 11/13/2001 | 118114 | 05/22/2003 | SEARS BRANDS, L.L.C. |
| 11/13/2001 | 118115 | 05/22/2003 | SEARS BRANDS, L.L.C. |
| 11/13/2001 | 118116 | 05/22/2003 | SEARS BRANDS, L.L.C. |
| 11/15/1996 | 84159 | 08/11/1998 | SEARS BRANDS, L.L.C. |
| 07/23/1997 | 88963 | 07/09/1999 | SEARS BRANDS, L.L.C. |
| 11/13/2001 | 118117 | 02/12/2003 | SEARS BRANDS, L.L.C. |
| 05/15/1995 | 75577 | 05/15/1995 | SEARS BRANDS, L.L.C. |
| 11/13/2001 | 118118 | 05/22/2003 | SEARS BRANDS, L.L.C. |
| 11/13/2001 | 118119 | 07/07/2003 | SEARS BRANDS, L.L.C. |
| 11/13/2001 | 118120 01 | 05/22/2003 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 11/13/2001 | 118121 01 | 05/22/2003 | SEARS BRANDS, L.L.C. |
| 11/13/2001 | 118122 01 | 05/23/2003 | SEARS BRANDS, L.L.C. |
| 11/13/2001 | 118123 01 | 05/22/2003 | SEARS BRANDS, L.L.C. |
| 11/13/2001 | 118124 | 05/22/2003 | SEARS BRANDS, L.L.C. |
| 08/27/1998 | 330454 | 09/03/1999 | SEARS BRANDS, L.L.C. |
| 08/27/1998 | 330455 | 09/03/1999 | SEARS BRANDS, L.L.C. |
| 12/15/2003 | 412767 | 12/15/2003 | KMART CORPORATION |
| 11/29/2005 | 453693 | 12/27/2005 | SEARS BRANDS, L.L.C. |
| 11/02/1981 | 362520 | 11/02/1981 | SEARS BRANDS, L.L.C. |
| 11/02/1981 | 362521 | 11/02/1981 | SEARS BRANDS, L.L.C. |
| 11/02/1981 | 362523 | 11/02/1981 | SEARS BRANDS, L.L.C. |
| 11/02/1981 | 362522 | 11/02/1981 | SEARS BRANDS, L.L.C. |
| 06/08/1994 | 448357 | 10/11/1996 | SEARS BRANDS, L.L.C. |
| 10/13/2009 | 163079 | 04/15/2010 | SEARS BRANDS, L.L.C. |

18-23538-shl   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 10/10/2002 | 6264 | 08/10/1992 | SEARS BRANDS, L.L.C. |
| 10/10/2002 | 9964 | 08/10/1992 | SEARS BRANDS, L.L.C. |
| 09/19/2017 | 259123 | 12/18/2017 | SEARS BRANDS, L.L.C. |
| 09/19/2017 | 104760 | 12/19/2017 | SEARS BRANDS, L.L.C. |
| 09/19/2017 | | | SEARS BRANDS, L.L.C. |
| 09/19/2017 | 104759 | 12/19/2017 | SEARS BRANDS, L.L.C. |
| 10/14/2004 | 105094 | 04/29/2005 | SEARS BRANDS, L.L.C. |
| 02/13/1992 | 77531 | 04/30/1994 | SEARS BRANDS, L.L.C. |
| 04/16/1998 | 138438 | 05/29/2002 | SEARS BRANDS, L.L.C. |
| 12/04/2000 | 155778 | 10/01/2004 | SEARS BRANDS, L.L.C. |
| 03/11/2011 | 480354 | 08/11/2011 | SEARS BRANDS, L.L.C. |
| 03/11/2011 | 480355 | 03/11/2011 | SEARS BRANDS, L.L.C. |
| 05/22/1964 | 124566 X | 11/06/1968 | SEARS BRANDS, L.L.C. |
| 05/22/1964 | 124569 | 11/07/1968 | SEARS BRANDS, L.L.C. |

18-23538-shl   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 826 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 05/22/1964 | 124568 Z | 11/07/1968 | SEARS BRANDS, L.L.C. |
| 05/22/1964 | 124567 Y | 11/06/1968 | SEARS BRANDS, L.L.C. |
| 12/18/1962 | 263543A | 12/18/1962 | SEARS BRANDS, L.L.C. |
| 05/22/1964 | 124585 | 11/07/1968 | SEARS BRANDS, L.L.C. |
| 05/22/1964 | 124574 | 11/07/1968 | SEARS BRANDS, L.L.C. |
| 05/22/1964 | 124573 | 11/07/1968 | SEARS BRANDS, L.L.C. |
| 05/22/1964 | 124570 | 11/07/1968 | SEARS BRANDS, L.L.C. |
| 04/26/2006 | 68606 | 06/21/2007 | SEARS BRANDS, L.L.C. |
| 01/15/2003 | 6949 | 01/15/2003 | SEARS BRANDS, L.L.C. |
| 04/13/1953 | 8616 | 04/13/1953 | SEARS BRANDS, L.L.C. |
| 12/12/1983 | 13201 | 12/12/1983 | SEARS BRANDS, L.L.C. |
| 10/30/1991 | 19386 | 10/30/1991 | SEARS BRANDS, L.L.C. |
| 05/16/2000 | 43498 | 05/16/2000 | SEARS BRANDS, L.L.C. |
| 07/24/1991 | 102951 | 03/05/1992 | SEARS BRANDS, L.L.C. |

18-23538-shl   Doc 9507   Filed 02/08/15   Entered 02/08/19 16:44:32   Exhibit A
Pg 827 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 05/12/1998 | 185597 | 05/07/2000 | SEARS BRANDS, L.L.C. |
| 10/17/2000 | 217700 | 07/25/2002 | SEARS BRANDS, L.L.C. |
| 12/18/1962 | 263543A | 12/18/1962 | SEARS BRANDS, L.L.C. |
| 12/23/2002 | 705/7 | 11/30/2003 | SEARS BRANDS, L.L.C. |
| 06/03/1991 | 141101575 | 12/02/1991 | KMART CORPORATION |
| 06/17/1986 | 133/83 | 07/25/1994 | SEARS BRANDS, L.L.C. |
| 10/15/1989 | 220/37 | 06/19/1990 | SEARS, ROEBUCK AND CO. |
| 10/15/1989 | 236/44 | 04/30/1991 | SEARS, ROEBUCK AND CO. |
| 10/07/1994 | 341/70 | 05/29/1995 | SEARS BRANDS, L.L.C. |
| 05/18/2010 | 1040197 | 05/18/2010 | SEARS BRANDS, L.L.C. |
| 12/18/1962 | 263543A | 12/18/1962 | SEARS BRANDS, L.L.C. |
| 10/31/1990 | 37046 | 06/29/1992 | SEARS BRANDS, L.L.C. |
| 05/18/2010 | 1040197 | 05/18/2010 | SEARS BRANDS, L.L.C. |
| 10/18/2000 | T00/18300B | 01/01/2002 | SEARS BRANDS, L.L.C. |

18-23538-shl  Doc 2507  Filed 02/08/19  Entered 02/08/19 16:44:31  Exhibit A
Pg 830 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 06/28/1991 | T9106133I | 06/28/1991 | SEARS BRANDS, L.L.C. |
| 01/15/1999 | T99/00463F | 05/05/2003 | SEARS BRANDS, L.L.C. |
| 01/22/1982 | T8500278D | 01/22/1982 | SEARS, ROEBUCK AND CO. |
| 12/18/1962 | 263543A | 12/18/1962 | SEARS BRANDS, L.L.C. |
| 12/20/1990 | 169848 | 04/20/1992 | SEARS BRANDS, L.L.C. |
| 04/14/1998 | 9870498 | 12/30/1998 | SEARS BRANDS, L.L.C. |
| 05/28/1979 | 79/2744 | 12/03/1980 | SEARS BRANDS, L.L.C. |
| 03/08/2011 | 2011/05283 | 01/14/2013 | SEARS BRANDS, L.L.C. |
| 03/08/2011 | 2011/05282 | 01/14/2013 | SEARS BRANDS, L.L.C. |
| 03/08/2011 | 2011/05281 | 01/14/2013 | SEARS BRANDS, L.L.C. |
| 02/24/2011 | 2011/04048 | 01/02/2013 | SEARS BRANDS, L.L.C. |
| 03/08/2011 | 2011/05284 | 01/14/2013 | SEARS BRANDS, L.L.C. |
| 02/24/2011 | 2011/04049 | 10/01/2012 | SEARS BRANDS, L.L.C. |
| 03/08/2011 | 2011/05288 | 01/14/2013 | SEARS BRANDS, L.L.C. |

18-23538-rdd    Doc 2507    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 831 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 03/08/2011 | 2011/05285 | 01/14/2013 | SEARS BRANDS, L.L.C. |
| 03/08/2011 | 2011/05286 | 01/14/2013 | SEARS BRANDS, L.L.C. |
| 03/08/2011 | 2011/05287 | 01/14/2013 | SEARS BRANDS, L.L.C. |
| 07/19/1976 | 1976/03638 | 07/19/1976 | SEARS BRANDS, L.L.C. |
| 04/22/1992 | 92/3370 | 04/22/1992 | SEARS BRANDS, L.L.C. |
| 07/19/1976 | 1976/03640 | 03/13/1979 | SEARS BRANDS, L.L.C. |
| 08/17/1990 | 90/7115 | 06/30/1994 | SEARS BRANDS, L.L.C. |
| 08/17/1990 | 90/7116 | 07/13/1994 | SEARS BRANDS, L.L.C. |
| 04/13/1992 | 92/3141 | 11/22/1994 | SEARS BRANDS, L.L.C. |
| 11/03/1977 | B77/4884 | 11/03/1977 | SEARS BRANDS, L.L.C. |
| 11/03/1977 | B77/4885 | 11/03/1977 | SEARS BRANDS, L.L.C. |
| 11/03/1977 | B77/4882 | 11/03/1977 | SEARS BRANDS, L.L.C. |
| 01/27/2017 | | | SEARS BRANDS, L.L.C. |
| 01/11/2013 | 2013/00659 | 09/26/2014 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 01/11/2013 | 2013/00660 | 09/26/2014 | SEARS BRANDS, L.L.C. |
| 02/21/2000 | 2000/02680 | 02/21/2000 | SEARS BRANDS, L.L.C. |
| 04/24/2003 | 595518 | 10/11/2004 | SEARS BRANDS, L.L.C. |
| 01/20/1983 | 96502 | 11/11/1983 | SEARS BRANDS, L.L.C. |
| 05/18/2010 | 1040197 | 05/18/2010 | SEARS BRANDS, L.L.C. |
| 04/06/1995 | 42427 | 06/02/1998 | KMART CORPORATION |
| 10/15/1987 | 40-160950 | 10/18/1988 | SEARS BRANDS, L.L.C. |
| 10/15/1987 | 40-161096 | 10/20/1988 | SEARS BRANDS, L.L.C. |
| 12/31/1987 | 52231 | 01/04/1988 | SEARS BRANDS, L.L.C. |
| 10/15/1987 | 166701 | 01/18/1989 | SEARS BRANDS, L.L.C. |
| 10/15/1987 | 40-162088 | 11/11/1988 | SEARS BRANDS, L.L.C. |
| 12/31/1987 | 40-052415 | 01/12/1978 | SEARS BRANDS, L.L.C. |
| 12/31/1987 | 40-052416 | 01/12/1978 | SEARS BRANDS, L.L.C. |
| 10/28/1987 | 169812 | 05/11/1989 | SEARS BRANDS, L.L.C. |

18-23538-shl  Doc 2507  Filed 02/08/19  Entered 02/08/19 16:44:32  Exhibit A
Pg 831 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 07/27/2011 | 40-0938834 | 10/26/2012 | SEARS BRANDS, L.L.C. |
| 03/09/2011 | 2973551 | 10/03/2011 | SEARS BRANDS, L.L.C. |
| 02/25/2011 | 2971507 | 06/21/2011 | SEARS BRANDS, L.L.C. |
| 02/25/2011 | 2971508 | 06/14/2011 | SEARS BRANDS, L.L.C. |
| 03/09/2011 | 2973554 | 10/03/2011 | SEARS BRANDS, L.L.C. |
| 09/10/1993 | 1779391 | 02/03/1995 | SEARS BRANDS, L.L.C. |
| 01/18/2002 | 2449497 | 06/20/2002 | SEARS BRANDS, L.L.C. |
| 03/22/1967 | 528667 | 07/29/1976 | SEARS BRANDS, L.L.C. |
| 03/22/1967 | 528670 | 09/25/1968 | SEARS BRANDS, L.L.C. |
| 11/07/2000 | 2356116 | 05/21/2001 | SEARS BRANDS, L.L.C. |
| 09/25/1964 | 455887 | 03/06/1965 | SEARS BRANDS, L.L.C. |
| 03/01/1984 | 47248 | 03/01/1984 | SEARS BRANDS, L.L.C. |
| 05/03/1994 | 70144 | 12/22/1995 | SEARS BRANDS, L.L.C. |
| 04/07/1994 | 761994 | 07/21/1994 | KMART CORPORATION |

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 16:44:37    Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 04/07/1994 | 741994 | 07/21/1994 | KMART CORPORATION |
| 04/07/1994 | 751994 | 07/21/1994 | KMART CORPORATION |
| 04/12/1994 | 971994 | 07/25/1994 | KMART CORPORATION |
| 04/12/1994 | 961994 | 07/25/1994 | KMART CORPORATION |
| 04/08/1994 | 88/1994 | 07/25/1994 | KMART CORPORATION |
| 04/08/1994 | 89/1994 | 07/25/1994 | KMART CORPORATION |
| 03/03/1982 | 182642 | 08/06/1982 | KMART CORPORATION |
| 04/19/1966 | 120076 | 06/22/1967 | SEARS BRANDS, L.L.C. |
| 09/09/1988 | P-366533 | 07/24/2001 | SEARS BRANDS, L.L.C. |
| 09/25/2000 | 483765 | 09/25/2000 | SEARS BRANDS, L.L.C. |
| 08/12/2004 | 528218 | 12/14/2004 | SEARS BRANDS, L.L.C. |
| 06/15/1994 | 423732 | 06/15/1994 | SEARS BRANDS, L.L.C. |
| 08/12/2004 | 528219 | 12/14/2004 | SEARS BRANDS, L.L.C. |
| 12/18/1962 | 263543A | 12/18/1962 | SEARS BRANDS, L.L.C. |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 10/28/1991 | 395116 | 10/28/1991 | SEARS BRANDS, L.L.C. |
| 01/09/2013 | 1151272 | 01/09/2013 | SEARS BRANDS, L.L.C. |
| 07/09/2014 | 667733 | 12/23/2014 | SEARS BRANDS, L.L.C. |
| 06/15/1994 | 422912 | 06/15/1994 | SEARS BRANDS, L.L.C. |
| 03/04/1997 | 793285 | 01/16/1998 | SEARS BRANDS, L.L.C. |
| 04/16/1992 | 576016 | 05/11/1992 | SEARS BRANDS, L.L.C. |
| 09/11/1991 | 177413 | 04/16/1992 | SEARS BRANDS, L.L.C. |
| 12/24/2001 | 1025143 | 12/01/2002 | SEARS BRANDS, L.L.C. |
| 12/19/2002 | 1063938 | 11/01/2003 | SEARS BRANDS, L.L.C. |
| 12/24/2001 | 1030558 | 01/16/2003 | SEARS BRANDS, L.L.C. |
| 12/24/2001 | 1028485 | 01/01/2003 | SEARS BRANDS, L.L.C. |
| 07/14/1999 | 917913 | 12/01/2000 | SEARS BRANDS, L.L.C. |
| 10/01/1988 | 416354 | 10/01/1988 | SEARS BRANDS, L.L.C. |
| 08/27/2004 | 1188100 | 12/16/2005 | SEARS BRANDS, L.L.C. |

18-23538-shl Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 834 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 08/27/2004 | 1184933 | 12/01/2005 | SEARS BRANDS, L.L.C. |
| 09/02/1994 | 80831 | 02/01/1996 | SEARS BRANDS, L.L.C. |
| 08/29/1994 | 81565 | 03/01/1996 | KMART CORPORATION |
| 09/02/1994 | 84593 | 08/01/1996 | SEARS BRANDS, L.L.C. |
| 08/27/2004 | 1188099 | 12/16/2005 | SEARS BRANDS, L.L.C. |
| 01/09/1988 | 414302 | 09/16/1988 | SEARS BRANDS, L.L.C. |
| 03/14/1997 | 797937 | 03/01/1998 | SEARS BRANDS, L.L.C. |
| 09/03/1998 | 118471 | 12/01/1999 | SEARS BRANDS, L.L.C. |
| 06/11/1980 | 142720 | 11/01/1980 | SEARS BRANDS, L.L.C. |
| 02/21/1980 | 135797 | 07/01/1980 | SEARS BRANDS, L.L.C. |
| 02/11/1997 | 794749 | 02/01/1998 | SEARS BRANDS, L.L.C. |
| 01/16/2013 | 01682717 | 12/16/2014 | SEARS BRANDS, L.L.C. |
| 06/10/2014 | 1698227 | 03/16/2015 | SEARS BRANDS, L.L.C. |
| 12/01/2000 | 917912 | 12/01/2000 | SEARS BRANDS, L.L.C. |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 835 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 06/22/1998 | 414294 | 09/16/1998 | SEARS BRANDS, L.L.C. |
| 05/10/1990 | 515780 | 02/28/1991 | SEARS BRANDS, L.L.C. |
| 05/16/2000 | 969121 | 11/16/2001 | SEARS BRANDS, L.L.C. |
| 04/04/1985 | 345394 | 11/16/1986 | SEARS BRANDS, L.L.C. |
| 06/02/1992 | KOR8095 | 06/02/1992 | SEARS BRANDS, L.L.C. |
| 04/09/1998 | Kor 96876 | 04/09/1998 | SEARS BRANDS, L.L.C. |
| 05/24/1996 | SM5327 | 05/24/1996 | SEARS BRANDS, L.L.C. |
| 07/29/1994 | Kor34422 | 09/18/1995 | SEARS BRANDS, L.L.C. |
| 01/18/1985 | Kor24490 | 01/18/1985 | SEARS BRANDS, L.L.C. |
| 01/22/2002 | 32611 | 04/18/2006 | SEARS BRANDS, L.L.C. |
| 06/13/1979 | B11396 | 04/11/1985 | SEARS BRANDS, L.L.C. |
| 03/12/2010 | 42012 | 01/28/2011 | SEARS BRANDS, L.L.C. |
| 03/12/2010 | 42011 | 01/21/2011 | SEARS BRANDS, L.L.C. |
| 01/22/2002 | 32613 | 05/23/2005 | SEARS, ROEBUCK AND CO. |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:37 Exhibit A
Pg 836 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 01/22/2002 | 32615 | 01/06/2005 | SEARS, ROEBUCK AND CO. |
| 05/18/2010 | 1040197 | 05/18/2010 | SEARS BRANDS, L.L.C. |
| 10/01/1989 | 113365 | 10/01/1989 | SEARS BRANDS, L.L.C. |
| 10/14/1994 | 155685 | 10/14/1994 | SEARS BRANDS, L.L.C. |
| 05/18/2010 | 1040197 | 05/18/2010 | SEARS BRANDS, L.L.C. |
| 05/15/1998 | 22444 | 01/15/2002 | SEARS BRANDS, L.L.C. |
| 08/23/1994 | 12104 | 06/07/1999 | SEARS BRANDS, L.L.C. |
| 03/27/1996 | 34261 | 10/28/2002 | SEARS BRANDS, L.L.C. |
| 11/16/1994 | 7100 | 11/25/1996 | SEARS BRANDS, L.L.C. |
| | 431820 | 01/31/2002 | SEARS BRANDS, L.L.C. |
| 07/28/2000 | 419150 | 02/02/2001 | SEARS BRANDS, L.L.C. |
| 08/30/2001 | 430588 | 01/17/2002 | SEARS BRANDS, L.L.C. |
| 02/17/1986 | D023917 | 06/06/1988 | KMART CORPORATION |
| 11/14/1994 | 3762 | 02/09/1996 | SEARS BRANDS, L.L.C. |

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 837 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 11/14/1994 | P188735 | 04/26/1996 | SEARS BRANDS, L.L.C. |
| 11/16/1983 | 20670D | 05/19/1986 | SEARS BRANDS, L.L.C. |
| 03/12/1993 | 9362 | 03/12/1993 | SEARS BRANDS, L.L.C. |
| 05/18/2010 | 1040197 | 05/18/2010 | SEARS BRANDS, L.L.C. |
| 07/24/1992 | 7417 | 02/12/1993 | SEARS BRANDS, L.L.C. |
| 07/24/1992 | 7419 | 02/12/1993 | SEARS BRANDS, L.L.C. |
| 12/18/1962 | 263543A | 12/18/1962 | SEARS BRANDS, L.L.C. |
| 12/06/1994 | 33197 | 01/28/2000 | SEARS BRANDS, L.L.C. |
| 01/15/2003 | 8038 | 01/15/2003 | SEARS BRANDS, L.L.C. |
| | 7996 | 08/25/1992 | SEARS BRANDS, L.L.C. |
| 07/21/1994 | 6788 | 08/08/1994 | SEARS BRANDS, L.L.C. |
| 12/11/2009 | 7730 | 12/11/2009 | SEARS BRANDS, L.L.C. |
| 03/23/1953 | 8083 | 03/23/1953 | SEARS BRANDS, L.L.C. |
| 08/30/1997 | 5514 | 09/11/2001 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 08/30/1997 | 5513 | 09/11/2001 | SEARS BRANDS, L.L.C. |
|---|---|---|---|
| | 611992 | 11/25/1972 | KMART CORPORATION |
| | 118115 | 5/22/2003 | SEARS BRANDS, L.L.C. |
| | IDM000197801 | 3/12/2009 | SEARS BRANDS, L.L.C. |
| | 274233 | 11/26/1982 | SEARS BRANDS, L.L.C. |
| | 22528* | 6/7/1997 | SEARS BRANDS, L.L.C. |
| | 153/1988* | 12/30/1988 | KMART CORPORATION |
| | 97018575* | 3/30/2002 | SEARS BRANDS, L.L.C. |

n.  No representation or warranty is made with respect to the Trademarks denoted with an asterisk.

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Image | Country | MarkName | Application Number |
|---|---|---|---|
| | United States | GALAXY | 88/003014 |
| | United States | GALAXY | 88/031954 |
| | United States | COOL EDGE | 87/601358 |
| | United States | ACCELA CHILL | 86/227419 |
| | United States | ACCELA HEAT | 86/411788 |
| | United States | ACCELA ICE | 86/227429 |
| | United States | ACCELA SOAK | 86/453248 |
| | United States | ACCELA STEAM | 86/906903 |
| | United States | ACCELA WASH | 86/227412 |
| | United States | ACCELA-WASH | 85/382224 |
| ACCELER-ICE | United States | ACCELER-ICE | 78/496339 |
| | United States | ACTIVE FINISH | 86/227551 |
| | United States | ACTIVE RINSE | 85/489737 |

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 612 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| | United States | ACTIVE SPRAY | 85/489722 |
| | United States | ADAPT-N-STORE | 86/246179 |
| | United States | AIR GUARD | 77/154867 |
| Air Guard | United States | AIR GUARD (STYLIZED WITH DESIGN) | 77/753455 |
| | United States | AIRFLOW | 85/661207 |
| | United States | ALFIE | 86/792218 |
| | United States | ANSWERS ON CALL | 85/977243 |
| | United States | BE AMAZING | 87/180244 |
| | United States | CAPTIVE AIR | 73/114194 |
| | United States | CLEANFLOW | 85/169947 |
| | United States | CLOUD OF STEAM DESIGN | 77/767338 |
| | United States | COLD CLEAN | 77/730518 |
| Coldspot | United States | COLDSPOT (Stylized) | 71/573683 |
| | United States | COOKMORE | 86/032969 |

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 613 of 1150

FILED DATE: 5/19/2021 1:27 PM   2020L012403

|  | United States | CRISPERKEEPER | 85/564238 |
|---|---|---|---|
|  | United States | CROSSOVER | 86/398483 |
|  | United States | DUAL ACTION | 73/158390 |
|  | United States | EASYCUT | 86/662277 |
|  | United States | ELITE | 76/399091 |
|  | United States | EVENHEAT | 75/390201 |
|  | United States | EVO | 78/143440 |
|  | United States | EVOFLEX | 86/396155 |
|  | United States | EVOLUTION TECHNOLOGY | 77/076327 |
|  | United States | FREEZE FRESH | 86/669838 |
|  | United States | GENIUSCOOL | 77/966829 |
| HANDI-MATE | United States | HANDI-MATE | 85/642716 |
|  | United States | ILLUMALIGHT | 85/053995 |
| INTUITION | United States | INTUITION | 76/407395 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | United States | K and Semi-Circle Design | 77/154297 |
|---|---|---|---|
| KENMORE | Puerto Rico | KENMORE | 13039 |
| KENMORE | Puerto Rico | KENMORE | 13040 |
| KENMORE | Puerto Rico | KENMORE | 13038 |
| KENMORE | Puerto Rico | KENMORE | 13042 |
| KENMORE | Puerto Rico | KENMORE | 13041 |
| KENMORE | Guam | KENMORE | n/a |
| KENMORE | Northern Mariana Islands | KENMORE (CAUTIONARY PUB.) | n/a |
| | United States | LEAF WITH DRIPPING WATER DROP DESIGN | 77/769048 |
| | United States | LEAF WITH ELECTRICAL PLUG DESIGN | 77/753489 |
| | United States | MAGIC BLUE | 76/097515 |
| | United States | MAGNA-TORQUE | 86/411800 |
| | United States | MICROCLEAN | 86/476987 |
| | United States | PERFORMANCE STARTS HERE | 86/408719 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
|  | United States | PLUS SIGN INSIDE TWO ROTATING CIRCLES DESIGN | 77/767113 |
| | United States | POP-N-GO | 86/907022 |
| **POWERMATE** | United States | POWERMATE | 85/642743 |
| | United States | POWER-MATE | 72/086338 |
| | United States | PROGRESSIVE | 78/304580 |
| | United States | QUIET PAK | 86/411791 |
| | United States | RECIPE RECALL | 76/095556 |
|  | United States | S INSIDE STARBURST DESIGN (Sanitize Design No. 2) | 85/028602 |
| **SEAL-N-SAVE** | United States | SEAL-N-SAVE | 76/247920 |
| | United States | SELECT CLEAN | 76/095557 |
| | United States | SIMPLE SELECT | 86/411812 |
| | United States | SMART DISPLAY | 77/819884 |
| | United States | SMART MOTION | 77/829997 |
| | United States | SMART REACH | 75/307422 |

18-23538-rdd  Doc 2307-1  Filed 02/08/19  Entered 02/08/19 16:44:31  Exhibit A
Pg 816 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | United States | SMART WASH | 86/906917 |
|---|---|---|---|
| | United States | SMARTSENSE | 78/622986 |
| | United States | SMARTWASH | 76/282061 |
| | United States | STAINBOOST | 77/947131 |
| | United States | STAIR GRIP | 78/242631 |
| | United States | STAY FRESH | 85/002247 |
| | United States | STEAM TREAT | 85/421259 |
| | United States | STEAM TREAT | 77/385888 |
| | United States | STEAMCARE | 77/147053 |
| | United States | STRATUS | 86/408698 |
| SWIVEL+ STEERING SYSTEM | United States | SWIVEL+ STEERING SYSTEM | 85/121993 |
| | United States | TESTED FOR LIVING | 85/913837 |
| | United States | TILT-N-STORE | 86/067326 |
| TILT-N-TAKE | United States | TILT-N-TAKE | 85/351304 |

| | United States | TIME WASH/DRY ICON DESIGN | 85/440015 |
|---|---|---|---|
| TIMED OXI | United States | TIMED OXI | 77/156001 |
| TREAT DIRT LIKE DIRT | United States | TREAT DIRT LIKE DIRT | 85/675810 |
| TURBO BOIL | United States | TURBO BOIL | 77/154883 |
| TURBOZONE | United States | TURBOZONE | 78/308091 |
| TURBOZONE | United States | TURBOZONE (Stylized with Design) | 78/397278 |
| | United States | TURBOZONE REACH | 86/460285 |
| ULTRA CARE | United States | ULTRA CARE | 78/816888 |
| ULTRA PLUS | United States | ULTRA PLUS | 76/341381 |
| | United States | ULTRA PLUSH | 86/871697 |
| | United States | ULTRA WASH | 75/214562 |
| | United States | WRINKLE GUARD | 72/327960 |

*- items denoted with an asterisk are assigned solely to the extent of Sellers' right, title or interest the

FILED DATE: 5/19/2021 1:27 PM 2020L012403

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| Application Date | Registration Number | Registration Date | Owner |
|---|---|---|---|
| 06/15/2018 | | | SEARS BRANDS, L.L.C. |
| 07/10/2018 | | | SEARS BRANDS, L.L.C. |
| 09/08/2017 | | | SEARS BRANDS, L.L.C. |
| 03/20/2014 | 5301801 | 10/03/2017 | SEARS BRANDS, L.L.C. |
| 10/01/2014 | 5151614 | 02/28/2017 | SEARS BRANDS, L.L.C. |
| 03/20/2014 | 4983742 | 06/21/2016 | SEARS BRANDS, L.L.C. |
| 11/13/2014 | 5124846 | 01/17/2017 | SEARS BRANDS, L.L.C. |
| 02/12/2016 | 5272077 | 08/22/2017 | SEARS BRANDS, L.L.C. |
| 03/20/2014 | 4863867 | 12/01/2015 | SEARS BRANDS, L.L.C. |
| 07/27/2011 | 4227123 | 10/16/2012 | SEARS BRANDS, L.L.C. |
| 10/07/2004 | 3028145 | 12/13/2005 | SEARS BRANDS, L.L.C. |
| 03/20/2014 | 4860404 | 11/24/2015 | SEARS BRANDS, L.L.C. |
| 12/07/2011 | 4332616 | 05/07/2013 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 12/07/2011 | 4266970 | 01/01/2013 | SEARS BRANDS, L.L.C. |
| 04/08/2014 | 4951925 | 05/03/2016 | SEARS BRANDS, L.L.C. |
| 04/12/2007 | 3613002 | 04/28/2009 | SEARS BRANDS, L.L.C. |
| 06/05/2009 | 4032058 | 09/27/2011 | SEARS BRANDS, L.L.C. |
| 06/26/2012 | 4272370 | 01/08/2013 | SEARS BRANDS, L.L.C. |
| 10/19/2015 | 5092644 | 11/29/2016 | SEARS BRANDS, L.L.C. |
| 07/29/2010 | 4223418 | 10/09/2012 | SEARS BRANDS, L.L.C. |
| 09/22/2016 | 5351693 | 12/05/2017 | SEARS BRANDS, L.L.C. |
| 01/31/1977 | 1076806 | 11/08/1977 | SEARS BRANDS, L.L.C. |
| 11/05/2010 | 4054033 | 11/08/2011 | SEARS BRANDS, L.L.C. |
| 06/24/2009 | 4023220 | 09/06/2011 | SEARS BRANDS, L.L.C. |
| 05/06/2009 | 3942338 | 04/05/2011 | SEARS BRANDS, L.L.C. |
| 02/10/1949 | 538081 | 02/20/1951 | SEARS BRANDS, L.L.C. |
| 08/08/2013 | 4497940 | 03/18/2014 | SEARS BRANDS, L.L.C. |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:31 Exhibit A
Pg 848 of 1450

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | | | |
|---|---|---|---|
| 03/08/2012 | 4210047 | 09/18/2012 | SEARS BRANDS, L.L.C. |
| 09/18/2014 | 4723772 | 04/21/2015 | SEARS BRANDS, L.L.C. |
| 02/13/1978 | 1120878 | 06/26/1979 | SEARS BRANDS, L.L.C. |
| 06/15/2015 | 5042320 | 09/13/2016 | SEARS BRANDS, L.L.C. |
| 04/23/2002 | 2878325 | 08/31/2004 | SEARS BRANDS, L.L.C. |
| 11/14/1997 | 2241382 | 04/20/1999 | SEARS BRANDS, L.L.C. |
| 07/12/2002 | 2713614 | 05/06/2003 | SEARS BRANDS, L.L.C. |
| 09/16/2014 | 4864205 | 12/01/2015 | SEARS BRANDS, L.L.C. |
| 01/04/2007 | 4045617 | 10/25/2011 | SEARS BRANDS, L.L.C. |
| 06/22/2015 | 4994701 | 07/05/2016 | SEARS BRANDS, L.L.C. |
| 03/24/2010 | 4102869 | 02/21/2012 | SEARS BRANDS, L.L.C. |
| 06/04/2012 | 4288457 | 02/12/2013 | SEARS BRANDS, L.L.C. |
| 06/03/2010 | 4099720 | 02/14/2012 | SEARS BRANDS, L.L.C. |
| 05/09/2002 | 2795795 | 12/16/2003 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 04/11/2007 | 3676954 | 09/01/2009 | SEARS BRANDS, L.L.C. |
| 01/29/1964 | 13039 | 05/14/1965 | SEARS BRANDS, L.L.C. |
| 01/29/1964 | 13040 | 05/14/1965 | SEARS BRANDS, L.L.C. |
| 01/29/1964 | 13038 | 05/14/1965 | SEARS BRANDS, L.L.C. |
| 01/29/1964 | 13042 | 05/14/1965 | SEARS BRANDS, L.L.C. |
| 01/29/1964 | 13041 | 05/14/1965 | SEARS BRANDS, L.L.C. |
| 04/06/2010 | TPC800270824 | 04/06/2010 | SEARS BRANDS, L.L.C. |
| 02/18/2011 | 19 | 02/18/2011 | SEARS BRANDS, L.L.C. |
| 06/26/2009 | 4023226 | 09/06/2011 | SEARS BRANDS, L.L.C. |
| 06/05/2009 | 4313296 | 04/02/2013 | SEARS BRANDS, L.L.C. |
| 07/27/2000 | 2611585 | 08/27/2002 | SEARS BRANDS, L.L.C. |
| 10/01/2014 | 5129499 | 01/24/2017 | SEARS BRANDS, L.L.C. |
| 12/10/2014 | 5073860 | 11/01/2016 | SEARS BRANDS, L.L.C. |
| 09/29/2014 | 4735231 | 05/12/2015 | SEARS BRANDS, L.L.C. |

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 852 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 06/24/2009 | 4023219 | 09/06/2011 | SEARS BRANDS, L.L.C. |
| 02/12/2016 | 5272078 | 08/22/2017 | SEARS BRANDS, L.L.C. |
| 06/04/2012 | 4323302 | 04/23/2013 | SEARS BRANDS, L.L.C. |
| 11/30/1959 | 698071 | 05/24/1960 | SEARS BRANDS, L.L.C. |
| 09/24/2003 | 2881790 | 09/07/2004 | SEARS BRANDS, L.L.C. |
| 10/01/2014 | 4998957 | 07/12/2016 | SEARS BRANDS, L.L.C. |
| 07/24/2000 | 2590642 | 07/09/2002 | SEARS BRANDS, L.L.C. |
| 05/03/2010 | 4210511 | 09/18/2012 | SEARS BRANDS, L.L.C. |
| 04/28/2001 | 2684527 | 02/04/2003 | SEARS BRANDS, L.L.C. |
| 07/24/2000 | 2590643 | 07/09/2002 | SEARS BRANDS, L.L.C. |
| 10/01/2014 | 4865470 | 12/08/2015 | SEARS BRANDS, L.L.C. |
| 09/03/2009 | 4251703 | 11/27/2012 | SEARS BRANDS, L.L.C. |
| 09/18/2009 | 3930216 | 03/08/2011 | SEARS BRANDS, L.L.C. |
| 06/12/1997 | 2223731 | 02/16/1999 | SEARS BRANDS, L.L.C. |

18-23538-rdd  Doc 2507-1  Filed 02/08/19  Entered 02/08/19 16:44:32  Exhibit A
Pg 853 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 02/12/2016 | | | SEARS BRANDS, L.L.C. |
| 05/04/2005 | 3442322 | 06/03/2008 | SEARS BRANDS, L.L.C. |
| 07/09/2001 | 2719906 | 05/27/2003 | SEARS BRANDS, L.L.C. |
| 03/01/2010 | 4007011 | 08/02/2011 | SEARS BRANDS, L.L.C. |
| 04/28/2003 | 3046762 | 01/17/2006 | SEARS BRANDS, L.L.C. |
| 03/30/2010 | 4347065 | 06/04/2013 | SEARS BRANDS, L.L.C. |
| 09/13/2011 | 4284713 | 02/05/2013 | SEARS BRANDS, L.L.C. |
| 01/31/2008 | 3641402 | 06/16/2009 | SEARS BRANDS, L.L.C. |
| 04/03/2007 | 3612995 | 04/28/2009 | SEARS BRANDS, L.L.C. |
| 09/29/2014 | 4864269 | 12/01/2015 | SEARS BRANDS, L.L.C. |
| 09/02/2010 | 4136256 | 05/01/2012 | SEARS BRANDS, L.L.C. |
| 04/24/2013 | 4554474 | 06/24/2014 | SEARS BRANDS, L.L.C. |
| 09/17/2013 | 4642336 | 11/18/2014 | SEARS BRANDS, L.L.C. |
| 06/21/2011 | 4101906 | 02/21/2012 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 10/05/2011 | 4174493 | 07/17/2012 | SEARS BRANDS, L.L.C. |
| 04/13/2007 | 3570427 | 02/03/2009 | SEARS BRANDS, L.L.C. |
| 07/12/2012 | 4508896 | 04/08/2014 | SEARS BRANDS, L.L.C. |
| 04/12/2007 | 3616587 | 05/05/2009 | SEARS BRANDS, L.L.C. |
| 10/01/2003 | 2988131 | 08/23/2005 | SEARS BRANDS, L.L.C. |
| 04/06/2004 | 2993358 | 09/06/2005 | SEARS BRANDS, L.L.C. |
| 11/20/2014 | 4914889 | 03/08/2016 | SEARS BRANDS, L.L.C. |
| 02/16/2006 | 3290551 | 09/11/2007 | SEARS BRANDS, L.L.C. |
| 11/23/2001 | 2996264 | 09/20/2005 | SEARS BRANDS, L.L.C. |
| 01/11/2016 | 5083962 | 11/15/2016 | SEARS BRANDS, L.L.C. |
| 12/17/1996 | 2150459 | 04/14/1998 | SEARS BRANDS, L.L.C. |
| 05/21/1969 | 885824 | 02/10/1970 | SEARS BRANDS, L.L.C. |

erein.  No representation or warranty is made with respect to the Trademarks denoted with an asterisk.

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 853 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| Image | Country | MarkName | Application Number |
|---|---|---|---|
| KENMORE | Anguilla | KENMORE | 4718 |
| DIEHARD | Antigua | DIEHARD | 2025 |
| KENMORE | Argentina | KENMORE | 3181489 |
| KENMORE | Argentina | KENMORE | 3181488 |
| KENMORE | Aruba | KENMORE | IM-961105.15 |
| KENMORE | Aruba | KENMORE | 81127.22 |
| DIEHARD | Australia | DIEHARD | 734577 |
| DIEHARD | Australia | DIEHARD | 663683 |
| DIEHARD | Australia | DIEHARD | 1324203 |
| KENMORE | Australia | KENMORE | 1380865 |
| KENMORE | Australia | KENMORE | 736708 |
| KENMORE | Australia | KENMORE | 575457 |
| KENMORE | Australia | KENMORE | 575458 |

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 826 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| Kenmore | Australia | KENMORE STYLIZED | 128520 |
| DIEHARD | Austria | DIEHARD | AM 3148/86 |
| KENMORE | Austria | KENMORE | AM876/63 |
| KENMORE | Bahamas | KENMORE | 32261 |
| KENMORE | Bahamas | KENMORE | 9468 |
| KENMORE | Bahrain | KENMORE | 21137 |
| KENMORE | Barbados | KENMORE | 6930 |
| KENMORE | Barbados | KENMORE | 81/25232 |
| KENMORE | Belize | KENMORE | 4874 |
| KENMORE | Belize | KENMORE | 4871 |
| KENMORE | Belize | KENMORE | 5902.08 |
| KENMORE | Belize | KENMORE | 4872 |
| KENMORE | Benelux | KENMORE | 561407 |
| DIEHARD | Bermuda | DIEHARD | 9934 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 827 of 1420

FILED DATE: 5/19/2021 1:27 PM  2020L012403

| | | | |
|---|---|---|---|
| KENMORE | Bermuda | KENMORE | 8910 |
| KENMORE | Bermuda | KENMORE | 9938 |
| KENMORE | Bermuda | KENMORE | 9939 |
| DIEHARD | Bolivia | DIEHARD | C-79060 |
| KENMORE | Bolivia | KENMORE | C-37051/55959A |
| KENMORE | Bolivia | KENMORE | C-85142 |
| KENMORE | Bolivia | KENMORE | C-85144 |
| KENMORE | Bolivia | KENMORE | 390 |
| KENMORE | Bosnia-Herzegovina | KENMORE | UP-5491/00 |
| KENMORE | Bosnia-Herzegovina | KENMORE | 240688 |
| DIEHARD | Brazil | DIEHARD | 819434701 |
| DIEHARD | Brazil | DIEHARD | 830410740 |
| KENMORE | Brazil | KENMORE | 200011910 |
| KENMORE | Brazil | KENMORE | 831113197 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | Brazil | KENMORE | 831113219 |
|---|---|---|---|
| KENMORE | Brazil | KENMORE | 820947911 |
| KENMORE | Brazil | KENMORE | 200011871 |
| KENMORE | Brazil | KENMORE | 820907944 |
| KENMORE | British Virgin Islands | KENMORE | 3700 |
| KENMORE | Bulgaria | KENMORE | 51576 |
| | Canada | ACCELER-ICE | 1144398 |
| Coldspot | Canada | COLDSPOT (Stylized) | 539500 |
| DIEHARD | Canada | DIEHARD | 334797 |
| | Canada | DIEHARD GOLD | 670641 |
| DUAL ACTION | Canada | DUAL-ACTION | 593050 |
| ELITE | Canada | ELITE | 409142 |
| | Canada | ENVIRONNEMENT DU FOYER KENMORE (AND DESIGN) | 862677 |
| | Canada | HANDI-CLEAN | 770089 |

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| HANDI-MATE JR. | Canada | HANDI-MATE JR. | 1465514 |
| INTUITION | Canada | INTUITION | 1465324 |
| KENMORE | Canada | KENMORE | 196285 |
| | Canada | KENMORE (AND DESIGN) | 832789 |
| | Canada | KENMORE CLASSIC CHOICES | 694930 |
| | Canada | KENMORE ECONOMIZER 5 | 699191 |
| Kenmore ELITE | Canada | KENMORE ELITE & DESIGN (HORIZONTAL) | 1467007 |
| | Canada | KENMORE ELITE (AND DESIGN) 3 | 1035068 |
| | Canada | KENMORE HANDI-MATE JR. | 1105978 |
| | Canada | KENMORE HANDI-MATE JUNIOR | 741392 |
| | Canada | KENMORE HOME ENVIRONMENT CLEANER AIR & WATER (AND DESIGN) | 862679 |
| | Canada | KENMORE PREMALITE | 1392258 |
| KENMORE PRO | Canada | KENMORE PRO | 1344331 |
| | Canada | KENMORE SMART REACH | 1026517 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| Kenmore | Canada | KENMORE STYLIZED V2 | 1467006 |
| | Canada | KENMORE TRUE SIMMER | 0324769 |
| | Canada | KENMORE ULTIMA | 751331 |
| | Canada | KENMORE ULTRA FILTER | 1110041 |
| | Canada | KENMORE ULTRA SOFT | 1110042 |
| | Canada | POWERMATE | 435994 |
| | Canada | POWER-MATE | 473237 |
| QUICKCLEAN PERFORMANCE | Canada | QUICKCLEAN PERFORMANCE & Design | 1735612 |
| | Canada | QUIETGUARD | 1225018 |
| STAIR GRIP | Canada | STAIR GRIP | 1465519 |
| TURBOZONE | Canada | TURBOZONE | 1265727 |
| | Canada | ULTRA WAVE | 1144397 |
| | Canada | WRINKLE GUARD | 341048 |
| KENMORE | Caribbean Netherlands | KENMORE | 5216 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| **KENMORE** | Caribbean Netherlands | KENMORE | 5215 |
| **DIEHARD** | Chile | DIEHARD | 426536 |
| **KENMORE** | Chile | KENMORE | 837780 |
| *Kenmore* | Chile | KENMORE and Design | 626735 |
| *Kenmore* | Chile | KENMORE and Design | 626738 |
| | Chile | KENMORE.CL | n/a |
| **DIEHARD** | China P.R. | DIEHARD | 1917550 |
| | China P.R. | DIEHARD | 1150179 |
| | China P.R. | DIEHARD & DIEHARD IN CHINESE CHARACTERS | 3382156 |
| | China P.R. | DIEHARD & DIEHARD IN CHINESE CHARACTERS | 1714027 |
| **KENMORE** | China P.R. | KENMORE | 380084 |
| **KENMORE** | China P.R. | KENMORE | 380083 |
| **KENMORE** | China P.R. | KENMORE | 3656132 |
| **KENMORE** | China P.R. | KENMORE | 138314 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A
Pg 832 of 1420

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| KENMORE | China P.R. | KENMORE | 1166880 |
| | China P.R. | KENMORE (Chinese Characters) | 12171982 |
| | China P.R. | KENMORE (Chinese Characters) | 12182532 |
| | China P.R. | KENMORE (Chinese Characters) | 12182531 |
| | China P.R. | KENMORE (Chinese Characters) | 12182530 |
| | China P.R. | ULTRA CARE | 12476817 |
| | China P.R. | ULTRA CARE | 12476818 |
| DIEHARD | Colombia | DIEHARD | 1996-006859 |
| KENMORE | Colombia | KENMORE | 274217 |
| KENMORE | Colombia | KENMORE | 274209 |
| KENMORE | Colombia | KENMORE | 274218 |
| KENMORE | Colombia | KENMORE | 274219 |
| DIEHARD | Community Trademark | DIEHARD | 9308933 |
| DIEHARD | Community Trademark | DIEHARD | 89946 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| **KENMORE** | Community Trademark | KENMORE | 90845 |
| **DIEHARD** | Costa Rica | DIEHARD | 105632 |
| **KENMORE** | Costa Rica | KENMORE | 93590 |
| **KENMORE** | Costa Rica | KENMORE | 93944 |
| **KENMORE** | Costa Rica | KENMORE | 17287 |
| **KENMORE** | Costa Rica | KENMORE | 17288 |
| **KENMORE** | Costa Rica | KENMORE | 17289 |
| **KENMORE** | Costa Rica | KENMORE | 10362-2008 |
| **DIEHARD** | Croatia | DIEHARD | Z980552A |
| **KENMORE** | Croatia | KENMORE | Z20001348A |
| **KENMORE** | Croatia | KENMORE | 240688 |
| **KENMORE** | Curacao | KENMORE | D-900164 |
| **KENMORE** | Curacao | KENMORE | 3444 |
| **KENMORE** | Cyprus | KENMORE | 58231 |

18-23538-rdd Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | | | |
|---|---|---|---|
| KENMORE | Cyprus | KENMORE | 58232 |
| DIEHARD | Czech Republic | DIEHARD | 112614 |
| KENMORE | Czech Republic | KENMORE | O-159420 |
| KENMORE | Czech Republic | KENMORE | 240688 |
| DIEHARD | Denmark | DIEHARD | 6124/1986 |
| KENMORE | Denmark | KENMORE | VA200004049 |
| DIEHARD | Dominican Republic | DIEHARD | n/a |
| KENMORE | Dominican Republic | KENMORE | 2008-36936 |
| KENMORE | Dominican Republic | KENMORE | 29598 |
| KENMORE | Dominican Republic | KENMORE | 9427 |
| KENMORE | Dominican Republic | KENMORE | 9424 |
| KENMORE | Dominican Republic | KENMORE | 9421 |
| DIEHARD | Ecuador | DIEHARD | 851 |
| KENMORE | Ecuador | KENMORE | 2012 |

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | | | |
|---|---|---|---|
| KENMORE | Ecuador | KENMORE | 9811 |
| KENMORE | Ecuador | KENMORE | 207753 |
| KENMORE | Egypt | KENMORE | 57779 |
| KENMORE | Egypt | KENMORE | 57777 |
| | El Salvador | COLDSPOT | 5385 |
| DIEHARD | El Salvador | DIEHARD | E-1030/96 |
| KENMORE | El Salvador | KENMORE | 5371 |
| KENMORE | El Salvador | KENMORE | 5372 |
| MY FIRST KENMORE | El Salvador | MY FIRST KENMORE | 2010101665 |
| DIEHARD | Estonia | DIEHARD | 9801074 |
| KENMORE | Estonia | KENMORE | 9801075 |
| DIEHARD | Finland | DIEHARD | T198603477 |
| | France | KENMORE | 4410482 |
| | French Polynesia | KENMORE | 4410482 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 856 of 1420

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| DIEHARD | Germany | DIEHARD | S43751 |
| KENMORE | Ghana | KENMORE | 21398 |
| KENMORE | Ghana | KENMORE | 21399 |
| DIEHARD | Great Britain | DIEHARD | 1279455 |
| DIEHARD | Great Britain | DIEHARD | 2527954 |
| KENMORE | Great Britain | KENMORE | 836755 |
| KENMORE | Great Britain | KENMORE | 836753 |
| KENMORE | Grenada | KENMORE | 85/2005 |
| KENMORE | Grenada | KENMORE | 84/2005 |
| KENMORE | Guadeloupe | KENMORE (CAUTIONARY PUB.) | n/a |
| KENMORE | Guam | KENMORE | n/a |
| DIEHARD | Guatemala | DIEHARD | M-9182-5 |
| DIEHARD | Guatemala | DIEHARD | M-9135-5 |
| KENMORE | Guatemala | KENMORE | 1955-09026 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| KENMORE | Guatemala | KENMORE | 1955-09016 |
|---------|-----------|---------|------------|
| KENMORE | Guatemala | KENMORE | 7801 |
| KENMORE | Guatemala | KENMORE | 1955-09017 |
| DIEHARD | Guyana | DIEHARD | 17071A |
| KENMORE | Guyana | KENMORE | 21019 |
| KENMORE | Guyana | KENMORE | 21018 |
| DIEHARD | Haiti | DIEHARD | N/A |
| DIEHARD | Honduras | DIEHARD | 1718/96 |
| KENMORE | Honduras | KENMORE | 22573-11 |
| KENMORE | Honduras | KENMORE | 29676 |
| KENMORE | Honduras | KENMORE | 27246-10 |
| KENMORE | Honduras | KENMORE | 41962 |
| KENMORE | Honduras | KENMORE | 135010 |
| KENMORE | Honduras | KENMORE | 135210 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A
Pg 856 of 1450

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | | | |
|---|---|---|---|
| **KENMORE** | Honduras | KENMORE | 135310 |
| **KENMORE** | Honduras | KENMORE | 135410 |
| **DIEHARD** | Hong Kong | DIEHARD | 27931/2000 |
| **KENMORE** | Hong Kong | KENMORE | 228/83 |
| | Hong Kong | KENMORE (CHINESE CHARACTERS) | 15716/92 |
| **DIEHARD** | Hungary | DIEHARD | M96 02008 |
| **KENMORE** | Hungary | KENMORE | M0005184 |
| **KENMORE** | Hungary | KENMORE | 240688 |
| | India | DIEHARD | 3484480 |
| | India | DIEHARD | 3484478 |
| | India | DIEHARD | 3484477 |
| | India | DIEHARD | 3484479 |
| **KENMORE** | India | KENMORE | 979440 |
| **KENMORE** | India | KENMORE | 1678006 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 859 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| **KENMORE** | India | KENMORE | 979441 |
| **KENMORE** | India | KENMORE | 2159108 |
| | Indonesia | DIEHARD | D002014047556 |
| | Indonesia | DIEHARD | D002014047559 |
| **KENMORE** | Indonesia | KENMORE | D002008042433 |
| | Indonesia | KENMORE | D002014047553 |
| | Indonesia | KENMORE | D002014047555 |
| **DIEHARD** | International | DIEHARD | 1150179 |
| **KENMORE** | International | KENMORE | 240688 |
| **KENMORE** | International | KENMORE | 1166880 |
| **DIEHARD** | Israel | DIEHARD | 78887 |
| **KENMORE** | Israel | KENMORE | 121227 |
| **KENMORE** | Israel | KENMORE | 121226 |
| **KENMORE** | Italy | KENMORE | MI2013C001664 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | Italy | KENMORE | 41837C/89 |
|---|---|---|---|
| DIEHARD | Jamaica | DIEHARD | 9/1824 |
| KENMORE | Jamaica | KENMORE | 52865 |
| KENMORE | Jamaica | KENMORE | 11821 |
| KENMORE | Jamaica | KENMORE | 13509 |
| KENMORE | Jamaica | KENMORE | 11823 |
| DIEHARD | Japan | DIEHARD | 216518/1988 |
| DIEHARD | Japan | DIEHARD | 1150179 |
| KENMORE | Japan | KENMORE | 703546/1992 |
| KENMORE | Japan | KENMORE | 555799-2 |
| KENMORE | Japan | KENMORE | 879197 |
| | Japan | KENMORE ELITE | 4398086 |
| | Japan | KENMORE IN KATAKANA | 225339/1987 |
| KENMORE | Jordan | KENMORE | 23530 |

18-23538-rdd Doc 2307 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 841 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| **KENMORE** | Kenya | KENMORE | 50926 |
| **KENMORE** | Kenya | KENMORE | 50925 |
| **DIEHARD** | Kuwait | DIEHARD | 35425 |
| **KENMORE** | Kuwait | KENMORE | 98734 |
| **KENMORE** | Kuwait | KENMORE | 36606 |
| **KENMORE** | Kuwait | KENMORE | 35423 |
| **KENMORE** | Kuwait | KENMORE | 36605 |
| **DIEHARD** | Latvia | DIEHARD | M-98-656 |
| **KENMORE** | Latvia | KENMORE | M-98-657 |
| **DIEHARD** | Liberia | DIEHARD | 20493 |
| **KENMORE** | Liechtenstein | KENMORE | 240688 |
| **DIEHARD** | Lithuania | DIEHARD | ZP-16197 |
| **KENMORE** | Lithuania | KENMORE | 98-1376 |
| **DIEHARD** | Macao | DIEHARD | 728 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| KENMORE | Macedonia | KENMORE | Z-20001175 |
|---|---|---|---|
| KENMORE | Macedonia | KENMORE | 240688 |
| KENMORE | Malaysia | KENMORE | 8021171 |
| KENMORE | Malaysia | KENMORE | 85002356 |
| KENMORE | Malaysia | KENMORE | 85002357 |
| KENMORE | Malaysia | KENMORE | 85002359 |
| | Malaysia | KENMORE (CHINESE CHARACTERS) | 92-06679 |
| KENMORE | Malta | KENMORE | 32320 |
| KENMORE | Malta | KENMORE | 32321 |
| KENMORE | Marshall Islands | KENMORE (CAUTIONARY PUB.) | n/a |
| DIEHARD | Mexico | DIEHARD | 1038482 |
| DIEHARD | Mexico | DIEHARD | 247195 |
| | Mexico | KENMORE | 1035252 |
| | Mexico | KENMORE | 1035256 |

FILED DATE: 5/19/2021 1:27 PM  2020L012403

| | | | |
|---|---|---|---|
| KENMORE | Mexico | KENMORE | 1035253 |
| KENMORE | Mexico | KENMORE | 67576 |
| KENMORE | Mexico | KENMORE | 67577 |
| KENMORE | Mexico | KENMORE | 1035255 |
| MY FIRST KENMORE | Mexico | MY FIRST KENMORE | 1079110 |
| KENMORE | Micronesia | KENMORE (CAUTIONARY PUB.) | n/a |
| KENMORE | Monaco | KENMORE | 240688 |
| KENMORE | Montenegro | KENMORE | 240688 |
| KENMORE | Morocco | KENMORE | 240688 |
| DIEHARD | New Zealand | DIEHARD | 813754 |
| DIEHARD | New Zealand | DIEHARD | 246109 |
| | New Zealand | KENMORE | 830497 |
| DIEHARD | Nicaragua | DIEHARD | 1996-04266 |
| KENMORE | Nicaragua | KENMORE | 2015260 |

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| KENMORE | Nicaragua | KENMORE | 1012535 |
|---------|-----------|---------|---------|
| KENMORE | Nicaragua | KENMORE | 2008-03817 |
| KENMORE | Nigeria | KENMORE | 25505 |
| KENMORE | Nigeria | KENMORE | 32727 |
| KENMORE | Northern Mariana Islands | KENMORE (CAUTIONARY PUB.) | n/a |
| DIEHARD | Norway | DIEHARD | 863619 |
| KENMORE | Norway | KENMORE | 80824 |
| KENMORE | Oman | KENMORE | 14934 |
| KENMORE | Pakistan | KENMORE | 335432 |
| KENMORE | Pakistan | KENMORE | 335434 |
| KENMORE | Pakistan | KENMORE | 335433 |
| DIEHARD | Panama | DIEHARD | 74287 |
| DIEHARD | Panama | DIEHARD | 74283 |
| KENMORE | Panama | KENMORE | 873 |

18-23538-rdd Doc 2507-1 Filed 02/06/19 Entered 02/06/19 16:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| KENMORE | Panama | KENMORE | 177855 |
| KENMORE | Panama | KENMORE | 74530 |
| KENMORE | Panama | KENMORE | 74531 |
| KENMORE | Panama | KENMORE | 6583 |
| KENMORE | Panama | KENMORE | 6630 |
| DIEHARD | Paraguay | DIEHARD | 17161 |
| DIEHARD | Peru | DIEHARD | 156540 |
| KENMORE | Peru | KENMORE | 628615 |
| KENMORE | Peru | KENMORE | 628616 |
| KENMORE | Peru | KENMORE | 628617 |
| | Philippines | KENMORE | 4-2014-00012593 |
| DIEHARD | Poland | DIEHARD | Z-185922 |
| KENMORE | Poland | KENMORE | Z-98126 |
| KENMORE | Portugal | KENMORE | 143869 N |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:31 Exhibit A Pg 846 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| **KENMORE** | Portugal | KENMORE | 124368 P |
| **KENMORE** | Portugal | KENMORE | 124369 R |
| **KENMORE** | Puerto Rico | KENMORE | 13039 |
| **KENMORE** | Puerto Rico | KENMORE | 13040 |
| **KENMORE** | Puerto Rico | KENMORE | 13038 |
| **KENMORE** | Puerto Rico | KENMORE | 13042 |
| **KENMORE** | Puerto Rico | KENMORE | 13041 |
| **KENMORE** | Qatar | KENMORE | 16091 |
| **KENMORE** | Romania | KENMORE | 240688 |
| **DIEHARD** | Russian Federation | DIEHARD | 95702819 |
| **KENMORE** | Russian Federation | KENMORE | 140227 |
| **KENMORE** | Russian Federation | KENMORE | 2000724724 |
| **KENMORE** | Samoa | KENMORE | 5547 |
| **KENMORE** | San Marino | KENMORE | 240688 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:14:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | Country | Mark | Number |
|---|---|---|---|
| DIEHARD | Saudi Arabia | DIEHARD (English and Arabic/Latin Characters) | 10119 |
| KENMORE | Saudi Arabia | KENMORE | 136301 |
| KENMORE | Saudi Arabia | KENMORE (English and in Arabic/Latin Characters) | 10106 |
| KENMORE | Saudi Arabia | KENMORE (English and in Arabic/Latin Characters) | 220/45 |
| KENMORE | Saudi Arabia | KENMORE (English and in Arabic/Latin Characters) | 220/44 |
| KENMORE | Serbia-Montenegro | KENMORE | 240688 |
| DIEHARD | Singapore | DIEHARD | T01/00050E |
| KENMORE | Singapore | KENMORE | T0017203E |
| KENMORE | Singapore | KENMORE | S/71282 |
| KENMORE | Singapore | KENMORE | S/71281 |
| KENMORE | Singapore | KENMORE | T00/17204C |
| KENMORE | Singapore | KENMORE | S/71283 |
| 楷 模 | Singapore | KENMORE (CHINESE CHARACTERS) | B6646/92 |
| 楷 模 | Singapore | KENMORE (CHINESE CHARACTERS) | 7049/92 |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 846 of 1420

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | | | |
|---|---|---|---|
| KENMORE | Sint Maarten | KENMORE | 6230 |
| KENMORE | Sint Maarten | KENMORE | 12916 |
| DIEHARD | Slovak Republic | DIEHARD | O-POZ-1281-9 |
| KENMORE | Slovak Republic | KENMORE | O-3752-2000 |
| KENMORE | Slovak Republic | KENMORE | 240688 |
| DIEHARD | Slovenia | DIEHARD | Z-9670996 |
| KENMORE | Slovenia | KENMORE | Z-200071481 |
| KENMORE | Slovenia | KENMORE | 240688 |
| DIEHARD | South Africa | DIEHARD | 83/4595 |
| KENMORE | South Africa | KENMORE | B77/4878 |
| KENMORE | South Africa | KENMORE | B77/B4880 |
| KENMORE | South Africa | KENMORE | B77/4879 |
| DIEHARD | South Korea | DIEHARD | 99-16526 |
| DIEHARD | South Korea | DIEHARD | 87-1716 |

FILED DATE: 5/19/2021 1:27 PM  2020L012403

| | | | |
|---|---|---|---|
| KENMORE | South Korea | KENMORE | 96-4534 |
| KENMORE | South Korea | KENMORE | 40-2011-0017287 |
| KENMORE | South Korea | KENMORE | 96-4533 |
| KENMORE | South Korea | KENMORE | 85-9067 |
| DIEHARD | Spain | DIEHARD | 1163657 |
| KENMORE | Spain | KENMORE | 423434 |
| KENMORE | St. Lucia | KENMORE | n/a |
| KENMORE | St. Vincent | KENMORE | 216/2010 |
| KENMORE | Surinam | KENMORE | 19939 |
| DIEHARD | Sweden | DIEHARD | 86-6984 |
| KENMORE | Sweden | KENMORE | 2928/62 |
| DIEHARD | Switzerland | DIEHARD | 5997 |
| KENMORE | Switzerland | KENMORE | 1658 |
| DIEHARD | Taiwan | DIEHARD | 82033570 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 15:14:32 Exhibit A Pg 650 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| **DIEHARD** | Taiwan | DIEHARD | 82033569 |
| **DIEHARD** | Taiwan | DIEHARD | 82033568 |
| **DIEHARD** | Taiwan | DIEHARD | 80004890 |
| | Taiwan | DIEHARD (ENGLISH AND CHINESE CHARACTERS) | 79017139 |
| **KENMORE** | Taiwan | KENMORE | 86029253 |
| **KENMORE** | Taiwan | KENMORE | 650002452 |
| **KENMORE** | Taiwan | KENMORE | 71006294 |
| **KENMORE** | Taiwan | KENMORE | 86029260 |
| **KENMORE** | Taiwan | KENMORE | 65002451 |
| 楷 模 | Taiwan | KENMORE (CHINESE CHARACTERS) | 80051623 |
| KENMORE 楷 模 | Taiwan | KENMORE (IN ENGLISH AND CHINESE) | 86029261 |
| KENMORE 楷 模 | Taiwan | KENMORE (IN ENGLISH AND CHINESE) | 86029254 |
| KENMORE 楷 模 | Taiwan | KENMORE (IN ENGLISH AND CHINESE) | 79037247 |
| | Taiwan | KENMORE ELITE | 89064124 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

|  | Taiwan | SEARS KENMORE (in Chinese Characters) | 92058794 |
|---|---|---|---|
|  | Taiwan | SEARS KENMORE (in Chinese Characters) | 92058790 |
|  | Taiwan | SEARS KENMORE (in Chinese Characters) | 92058792 |
|  | Taiwan | SEARS KENMORE (in Chinese Characters) | 92058796 |
| **ULTRA PLUS** | Taiwan | ULTRA PLUS | 100011535 |
| **DIEHARD** | Thailand | DIEHARD | 357174 |
| **KENMORE** | Thailand | KENMORE | 513821 |
| **KENMORE** | Tonga | KENMORE | TO/M/09/02084 |
| **DIEHARD** | Trinidad & Tobago | DIEHARD | 28928 |
| **KENMORE** | Trinidad & Tobago | KENMORE | 40411 |
| **KENMORE** | Trinidad & Tobago | KENMORE | 11395 |
| **KENMORE** | Turkey | KENMORE | 2000027611 |
| **DIEHARD** | Ukraine | DIEHARD | 98051887/T |
| **KENMORE** | Ukraine | KENMORE | 98051886 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| **KENMORE** | United Arab Emirates | KENMORE | 20472 |
| **KENMORE** | United Arab Emirates | KENMORE | 126070 |
| **KENMORE** | United Arab Emirates | KENMORE | 40624 |
| | United Arab Emirates | KENMORE ELITE | 159968 |
| **DIEHARD** | Uruguay | DIEHARD | 486.542 |
| **KENMORE** | Uruguay | KENMORE | 421153 |
| **KENMORE** | Uruguay | KENMORE | 222742 |
| **KENMORE** | Uruguay | KENMORE | 395.472 |
| | Venezuela | COLDSPOT | 24257 |
| **DIEHARD** | Venezuela | DIEHARD | 002864-84 |
| **KENMORE** | Venezuela | KENMORE | 6389 |
| **KENMORE** | Venezuela | KENMORE | 22617 |
| **KENMORE** | Venezuela | KENMORE | 222 |
| **KENMORE** | Venezuela | KENMORE | 6390 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A Pg 883 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| KENMORE | Vietnam | KENMORE | 240688 |
|---------|---------|---------|--------|
| KENMORE | Cayman Islands | KENMORE | 836755 |

*- items denoted with an asterisk are assigned solely to the extent of Sellers' right, title or interest therein

18-23538-shl    Doc 2307    Filed 02/08/19    Entered 02/08/19 15:44:32    Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Application Date | Registration Number | Registration Date | Owner |
|---|---|---|---|
| 02/26/2009 | 4718 | 11/08/2011 | SEARS BRANDS, L.L.C. |
| 02/18/1999 | 2025 | 03/08/2000 | SEARS BRANDS, L.L.C. |
| 08/02/2012 | 2607863 | 11/19/2013 | SEARS BRANDS, L.L.C. |
| 08/02/2012 | 2607862 | 11/19/2013 | SEARS BRANDS, L.L.C. |
| 11/04/1996 | 18270 | 01/15/1997 | SEARS BRANDS, L.L.C. |
| 11/27/2008 | 27721 | 01/29/2009 | SEARS BRANDS, L.L.C. |
| 05/15/1997 | 734577 | 05/15/1997 | SEARS BRANDS, L.L.C. |
| 06/09/1995 | 663683 | 06/09/1995 | SEARS BRANDS, L.L.C. |
| 10/02/2009 | 1324203 | 05/12/2010 | SEARS BRANDS, L.L.C. |
| 08/30/2010 | 1380865 | 04/14/2011 | SEARS BRANDS, L.L.C. |
| 06/12/1997 | 736708 | 06/12/1997 | SEARS BRANDS, L.L.C. |
| 03/27/1992 | 575457 | 03/27/1992 | SEARS BRANDS, L.L.C. |
| 03/27/1992 | 575458 | 03/27/1992 | SEARS BRANDS, L.L.C. |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 07/23/1956 | A128520 | 07/23/1956 | SEARS BRANDS, L.L.C. |
| 10/01/1986 | 115126 | 01/21/1987 | SEARS BRANDS, L.L.C. |
| 04/08/1963 | 50499 | 06/27/1983 | SEARS BRANDS, L.L.C. |
| 11/24/2008 | 32261 | 07/18/2013 | SEARS BRANDS, L.L.C. |
| 06/07/1979 | 9468 | 06/07/1979 | SEARS BRANDS, L.L.C. |
| 10/22/1996 | 21137 | 10/22/1996 | SEARS, ROEBUCK AND CO. |
| 06/08/1979 | 81/5153 | 06/08/1996 | SEARS BRANDS, L.L.C. |
| 10/20/2008 | 81/25232 | 05/17/2012 | SEARS BRANDS, L.L.C. |
| 07/11/1962 | 4874 | 07/11/1962 | SEARS BRANDS, L.L.C. |
| 07/11/1962 | 4871 | 07/11/1962 | SEARS BRANDS, L.L.C. |
| 12/17/2008 | 5902.08 | 04/20/2009 | SEARS BRANDS, L.L.C. |
| 07/11/1962 | 4872 | 07/11/1962 | SEARS BRANDS, L.L.C. |
| 12/09/1983 | 109904 | 12/09/1983 | SEARS BRANDS, L.L.C. |
| 03/05/1982 | 9934 | 03/05/1982 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 08/31/1979 | 8910 | 09/05/1979 | SEARS BRANDS, L.L.C. |
| 03/05/1989 | 9938 | 03/05/1989 | SEARS BRANDS, L.L.C. |
| 03/05/1982 | 9939 | 03/05/1982 | SEARS BRANDS, L.L.C. |
| 09/11/1997 | 77554-A | 06/06/2000 | SEARS BRANDS, L.L.C. |
| 01/15/2001 | A-40699 | 03/25/1980 | SEARS BRANDS, L.L.C. |
| 01/15/2001 | 80960-A | 10/01/2001 | SEARS BRANDS, L.L.C. |
| 01/15/2001 | 84658-A | 03/25/1980 | SEARS BRANDS, L.L.C. |
| 01/15/2001 | 80961-A | 10/01/2001 | SEARS BRANDS, L.L.C. |
| 09/28/2000 | BAZ004531 | 04/16/2006 | SEARS BRANDS, L.L.C. |
| 02/27/1961 | 240688 | 02/27/1961 | SEARS BRANDS, L.L.C. |
| 08/26/1996 | 819434701 | 04/06/1999 | SEARS BRANDS, L.L.C. |
| 09/29/2009 | 830410740 | 08/14/2012 | SEARS BRANDS, L.L.C. |
| 07/16/1998 | 200011910 | 07/17/2001 | SEARS BRANDS, L.L.C. |
| 07/07/2011 | 831113197 | 09/02/2014 | SEARS BRANDS, L.L.C. |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:31 Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 07/07/2011 | 831113219 | 09/02/2014 | SEARS BRANDS, L.L.C. |
| 07/31/1998 | 820947911 | 07/17/2001 | SEARS BRANDS, L.L.C. |
| 07/16/1998 | 200011871 | 07/17/2001 | SEARS BRANDS, L.L.C. |
| 07/16/1998 | 820907944 | 07/17/2001 | SEARS BRANDS, L.L.C. |
| 12/30/2008 | 5007 | 06/28/2009 | SEARS BRANDS, L.L.C. |
| 09/27/2000 | 40767 | 01/01/2002 | SEARS BRANDS, L.L.C. |
| 06/20/2002 | 592070 | 10/09/2003 | SEARS BRANDS, L.L.C. |
| 04/03/1985 | 313292 | 04/18/1986 | SEARS BRANDS, L.L.C. |
| 07/20/1970 | TMA179516 | 11/12/1971 | SEARS BRANDS, L.L.C. |
| 11/16/1990 | TMA396704 | 04/03/1992 | SEARS BRANDS, L.L.C. |
| 10/08/1987 | 345429 | 09/30/1988 | SEARS BRANDS, L.L.C. |
| 04/04/1977 | 296265 | 10/19/1984 | SEARS BRANDS, L.L.C. |
| 11/27/1997 | 533136 | 09/21/2000 | SEARS BRANDS, L.L.C. |
| 12/05/1994 | 456001 | 03/22/1996 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 01/12/2010 | 782711 | 11/17/2010 | SEARS BRANDS, L.L.C. |
| 01/11/2010 | 782714 | 11/17/2010 | SEARS BRANDS, L.L.C. |
| 08/05/1947 | 27933 | 08/05/1947 | SEARS BRANDS, L.L.C. |
| 01/03/1997 | 490679 | 03/02/1998 | SEARS BRANDS, L.L.C. |
| 12/05/1991 | 428087 | 06/03/1994 | SEARS BRANDS, L.L.C. |
| 02/19/1992 | 424594 | 03/04/1994 | SEARS BRANDS, L.L.C. |
| 01/26/2010 | TMA942914 | 07/11/2016 | SEARS BRANDS, L.L.C. |
| 11/05/1999 | 634375 | 03/04/2005 | SEARS BRANDS, L.L.C. |
| 06/11/2001 | 594715 | 11/13/2003 | SEARS BRANDS, L.L.C. |
| 11/15/1993 | 444974 | 07/07/1995 | SEARS BRANDS, L.L.C. |
| 11/27/1997 | 533304 | 09/25/2000 | SEARS BRANDS, L.L.C. |
| 04/21/2008 | 744624 | 08/04/2009 | SEARS BRANDS, L.L.C. |
| 04/20/2007 | 708081 | 02/22/2008 | SEARS BRANDS, L.L.C. |
| 08/23/1999 | TMA569192 | 10/21/2002 | SEARS BRANDS, L.L.C. |

18-23538-shl   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:31   Exhibit A
Pg 889 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 01/26/2010 | tma942907 | 07/11/2016 | SEARS BRANDS, L.L.C. |
| 08/01/1969 | TMA169885 | 07/03/1970 | SEARS BRANDS, L.L.C. |
| 04/06/1994 | 442197 | 04/21/1995 | SEARS BRANDS, L.L.C. |
| 07/20/2001 | 583479 | 06/11/2003 | SEARS BRANDS, L.L.C. |
| 07/20/2001 | 607359 | 04/08/2004 | SEARS BRANDS, L.L.C. |
| 02/19/1979 | 251850 | 10/24/1980 | SEARS BRANDS, L.L.C. |
| 07/27/1981 | 274802 | 12/10/1982 | SEARS BRANDS, L.L.C. |
| 07/03/2015 | | | KMART CORPORATION |
| 07/27/2004 | 650971 | 10/20/2005 | SEARS BRANDS, L.L.C. |
| 01/12/2010 | 782708 | 11/17/2010 | SEARS BRANDS, L.L.C. |
| 07/21/2005 | 664614 | 05/18/2006 | SEARS BRANDS, L.L.C. |
| 06/20/2002 | 607484 | 04/13/2004 | SEARS BRANDS, L.L.C. |
| 03/17/1971 | TMA182309 | 04/07/1972 | SEARS BRANDS, L.L.C. |
| 10/09/2011 | 5216 | 10/09/2011 | SEARS, ROEBUCK AND CO. |

18-23538-shl   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 888 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| 10/09/2011 | 5215 | 10/09/2011 | SEARS BRANDS, L.L.C. |
|---|---|---|---|
| 09/08/1998 | 848551 | 11/10/1998 | SEARS, ROEBUCK AND CO. |
| 08/04/1998 | 859677 | 09/23/1998 | SEARS BRANDS, L.L.C. |
| 10/31/2003 | 1159754 | 02/17/2005 | SEARS BRANDS, L.L.C. |
| 10/31/2003 | 1156538 | 01/18/2005 | SEARS BRANDS, L.L.C. |
| 07/06/2010 | n/a | 07/06/2010 | SEARS BRANDS, L.L.C. |
| 02/01/2001 | 1917550 | 04/28/2005 | SEARS BRANDS, L.L.C. |
| 08/10/2012 | | | SEARS BRANDS, L.L.C. |
| 11/26/2002 | 3382156 | 03/14/2004 | SEARS BRANDS, L.L.C. |
| 01/31/2001 | 1714027 | 02/14/2002 | SEARS BRANDS, L.L.C. |
| 07/05/1980 | 380084 | 07/05/1980 | SEARS BRANDS, L.L.C. |
| 07/05/1980 | 380083 | 07/05/1980 | SEARS BRANDS, L.L.C. |
| 08/01/2003 | 3656132 | 03/14/2005 | SEARS BRANDS, L.L.C. |
| 07/05/1980 | 138314 | 07/05/1980 | SEARS BRANDS, L.L.C. |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A
Pg 881 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 10/25/2012 | | | SEARS BRANDS, L.L.C. |
| 02/16/2013 | 12171982 | 07/28/2014 | SEARS BRANDS, L.L.C. |
| 02/21/2013 | 12182532 | 08/07/2014 | SEARS BRANDS, L.L.C. |
| 02/21/2013 | 12182531 | 08/07/2014 | SEARS BRANDS, L.L.C. |
| 02/21/2013 | 12182530 | 08/07/2014 | SEARS BRANDS, L.L.C. |
| 04/24/2013 | 12476817 | 09/28/2014 | SEARS BRANDS, L.L.C. |
| 04/24/2013 | 12476818 | 09/28/2014 | SEARS BRANDS, L.L.C. |
| 08/21/1996 | 188471 | 08/21/1996 | SEARS BRANDS, L.L.C. |
| 08/05/1987 | 23378 | 01/26/1988 | SEARS BRANDS, L.L.C. |
| 08/05/1987 | 23378-C | 01/26/1988 | SEARS BRANDS, L.L.C. |
| 08/05/1987 | 23378-B | 01/26/1988 | SEARS BRANDS, L.L.C. |
| 08/05/1987 | 23378-A | 01/26/1988 | SEARS BRANDS, L.L.C. |
| 08/11/2010 | 9308933 | 02/03/2011 | SEARS BRANDS, L.L.C. |
| 04/01/1996 | 89946 | 07/16/1999 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| 04/01/1996 | 90845 | 07/19/1999 | SEARS BRANDS, L.L.C. |
| 01/17/1997 | 101383 | 05/27/1997 | SEARS BRANDS, L.L.C. |
| 10/25/1995 | 93590 | 10/25/1995 | SEARS BRANDS, L.L.C. |
| 11/22/1995 | 93944 | 11/22/1995 | SEARS BRANDS, L.L.C. |
| 12/03/1985 | 17287 | 12/03/1985 | SEARS BRANDS, L.L.C. |
| 12/03/1985 | 17288 | 12/03/1985 | SEARS BRANDS, L.L.C. |
| 11/03/1955 | 17289 | 12/03/1985 | SEARS BRANDS, L.L.C. |
| 10/16/2008 | 186498 | 02/09/2009 | SEARS BRANDS, L.L.C. |
| 05/07/1998 | Z980552 | 11/18/1998 | SEARS BRANDS, L.L.C. |
| 09/28/2000 | Z20001348 | 09/28/2000 | SEARS BRANDS, L.L.C. |
| 02/27/1961 | 240688 | 02/27/1961 | SEARS BRANDS, L.L.C. |
| 04/14/2009 | 14421 | 04/14/2009 | SEARS BRANDS, L.L.C. |
| 06/13/1957 | 07458 | 06/13/1957 | SEARS BRANDS, L.L.C. |
| 10/27/2000 | 58231 | 10/27/2000 | SEARS, ROEBUCK AND CO. |

18-23538-shl    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 885 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 10/27/2000 | 58232 | 10/27/2000 | SEARS, ROEBUCK AND CO. |
| 06/27/1996 | 204946 | 10/31/1997 | SEARS BRANDS, L.L.C. |
| 09/26/2000 | 240124 | 09/26/2000 | SEARS BRANDS, L.L.C. |
| 02/27/1961 | 240688 | 02/27/1961 | SEARS BRANDS, L.L.C. |
| 09/23/1986 | 2264/1988 | 06/10/1988 | SEARS BRANDS, L.L.C. |
| 09/27/2000 | VR200005431 | 11/23/2000 | SEARS BRANDS, L.L.C. |
| 01/15/1996 | 81515 | 01/15/1996 | SEARS BRANDS, L.L.C. |
| 10/17/2008 | 171976 | 01/15/2009 | SEARS BRANDS, L.L.C. |
| 10/17/1979 | 29598 | 10/17/1979 | SEARS BRANDS, L.L.C. |
| 03/30/1956 | 9427 | 03/30/1956 | SEARS BRANDS, L.L.C. |
| 03/31/1956 | 9424 | 03/31/1956 | SEARS BRANDS, L.L.C. |
| 03/31/1956 | 9421 | 03/31/1956 | SEARS BRANDS, L.L.C. |
| 01/07/1982 | 3816 | 05/17/1982 | SEARS BRANDS, L.L.C. |
| 05/16/1967 | 3817 | 02/12/1968 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | | | |
|---|---|---|---|
| 04/03/1990 | 175 | 07/25/1995 | SEARS BRANDS, L.L.C. |
| 11/27/2008 | 82793 | 04/06/2009 | SEARS BRANDS, L.L.C. |
| 07/24/1980 | 57779 | 07/24/1980 | SEARS BRANDS, L.L.C. |
| 07/24/1980 | 57777 | 01/31/1988 | SEARS BRANDS, L.L.C. |
| 03/03/1958 | 5385Book23 | 03/03/1958 | SEARS BRANDS, L.L.C. |
| 03/05/1996 | 104Book191 | 01/09/2007 | SEARS BRANDS, L.L.C. |
| 02/10/1958 | 5371Book23 | 02/20/1958 | SEARS BRANDS, L.L.C. |
| 02/10/1958 | 5372Book23 | 02/20/1958 | SEARS BRANDS, L.L.C. |
| 06/14/2010 | 237Book171 | 07/18/2011 | SEARS BRANDS, L.L.C. |
| 05/19/1998 | 30003 | 01/10/2000 | SEARS BRANDS, L.L.C. |
| 05/19/1998 | 30004 | 01/10/2000 | SEARS BRANDS, L.L.C. |
| 09/02/1986 | 101349 | 04/20/1988 | SEARS BRANDS, L.L.C. |
| 12/05/2017 | 174410482 | 12/05/2017 | SEARS BRANDS, L.L.C. |
| 12/05/2017 | 174410482 | 12/05/2017 | SEARS BRANDS, L.L.C. |

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 15:44:32   Exhibit A

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 09/01/1986 | 1114454 | 11/17/1987 | SEARS BRANDS, L.L.C. |
| 10/27/1978 | 21398 | 10/27/1985 | SEARS BRANDS, L.L.C. |
| 10/27/1978 | 21399 | 10/27/1985 | SEARS BRANDS, L.L.C. |
| 09/15/1986 | 1279455 | 10/21/1988 | SEARS BRANDS, L.L.C. |
| 10/06/2009 | 2527954 | 04/09/2010 | SEARS BRANDS, L.L.C. |
| 07/11/1962 | 836755 | 07/11/1962 | SEARS BRANDS, L.L.C. |
| 07/11/1962 | 836753 | 07/11/1962 | SEARS BRANDS, L.L.C. |
| 07/11/2007 | 85/2005 | 07/11/2007 | SEARS BRANDS, L.L.C. |
| 07/11/2007 | 84/2005 | 07/11/2007 | SEARS BRANDS, L.L.C. |
| 03/09/2011 | 918 | 03/09/2011 | SEARS BRANDS, L.L.C. |
| 04/06/2010 | TPC800270824 | 04/06/2010 | SEARS BRANDS, L.L.C. |
| 12/12/1995 | 97303 | 08/10/1999 | SEARS BRANDS, L.L.C. |
| 12/11/1995 | 96401 | 06/15/1999 | SEARS BRANDS, L.L.C. |
| | 9604 | 03/23/1956 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

|  | 9561 B/34/34 | 03/15/1956 | SEARS BRANDS, L.L.C. |
|---|---|---|---|
| 07/07/1980 | 40715 | 01/05/1981 | SEARS BRANDS, L.L.C. |
|  | 9562 | 03/15/1956 | SEARS BRANDS, L.L.C. |
| 11/10/1998 | 17071A | 02/24/2004 | SEARS, ROEBUCK AND CO. |
| 09/06/2005 | 21019 | 08/31/2009 | SEARS BRANDS, L.L.C. |
| 09/06/2005 | 21018 | 08/31/2009 | SEARS BRANDS, L.L.C. |
| 10/25/1989 | 254/169 | 07/09/1990 | SEARS BRANDS, L.L.C. |
| 02/20/1996 | 70273 | 12/16/1997 | SEARS BRANDS, L.L.C. |
| 07/07/2011 | 117817 | 11/07/2011 | SEARS BRANDS, L.L.C. |
| 04/10/1979 | 29676 | 07/02/1981 | SEARS BRANDS, L.L.C. |
| 09/08/2010 | 114850 | 01/17/2011 | SEARS BRANDS, L.L.C. |
| 07/07/1983 | 41962 | 07/07/1983 | SEARS BRANDS, L.L.C. |
| 02/10/1970 | 16584 | 02/10/1970 | SEARS BRANDS, L.L.C. |
| 02/10/1970 | 16583 | 02/10/1970 | SEARS BRANDS, L.L.C. |

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 02/10/1970 | 16582 | 02/10/1970 | SEARS BRANDS, L.L.C. |
| 02/10/1970 | 16592 | 02/10/1970 | SEARS BRANDS, L.L.C. |
| 12/28/2000 | 200109457 | 12/28/2000 | SEARS BRANDS, L.L.C. |
| 01/25/1983 | 1986B0677AA | 01/25/1983 | SEARS BRANDS, L.L.C. |
| 09/11/1992 | 1997B02083AA | 09/11/1992 | SEARS BRANDS, L.L.C. |
| 06/21/1996 | 145821 | 07/18/1997 | SEARS BRANDS, L.L.C. |
| 09/29/2000 | 175319 | 01/01/2002 | SEARS BRANDS, L.L.C. |
| 02/27/1961 | 240688 | 02/27/1961 | SEARS BRANDS, L.L.C. |
| 02/15/2017 | 3484480 | 10/10/2017 | SEARS BRANDS, L.L.C. |
| 02/15/2017 | 3484478 | 08/01/2017 | SEARS BRANDS, L.L.C. |
| 02/15/2017 | | | SEARS BRANDS, L.L.C. |
| 02/15/2017 | | | SEARS BRANDS, L.L.C. |
| 12/26/2000 | 979440 | 06/21/2005 | SEARS BRANDS, L.L.C. |
| 04/21/2008 | 1678006 | 07/20/2011 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | | | |
|---|---|---|---|
| 12/26/2000 | 979441 | 12/26/2000 | SEARS BRANDS, L.L.C. |
| 06/13/2011 | 2159108 | 09/25/2016 | SEARS BRANDS, L.L.C. |
| 10/17/2014 | IDM000551103 | 11/07/2016 | SEARS BRANDS, L.L.C. |
| 10/17/2014 | IDM000551104 | 11/07/2016 | SEARS BRANDS, L.L.C. |
| 11/28/2008 | IDM000259992 | 07/19/2010 | SEARS BRANDS, L.L.C. |
| 10/17/2014 | IDM000551102 | 11/07/2016 | SEARS BRANDS, L.L.C. |
| 10/17/2014 | | | SEARS BRANDS, L.L.C. |
| 08/10/2012 | 1150179 | 08/10/2012 | SEARS BRANDS, L.L.C. |
| 02/27/1961 | 240688 | 02/27/1961 | SEARS BRANDS, L.L.C. |
| 10/25/2012 | 1166880 | 10/25/2012 | SEARS BRANDS, L.L.C. |
| 01/29/1991 | 78887 | 02/02/1994 | SEARS BRANDS, L.L.C. |
| 07/23/1998 | 121227 | 12/15/1999 | SEARS BRANDS, L.L.C. |
| 07/23/1998 | 121226 | 12/15/1999 | SEARS BRANDS, L.L.C. |
| 02/22/1983 | 1530581 | 10/27/1986 | SEARS BRANDS, L.L.C. |

18-23538-shl  Doc 2507-1  Filed 02/08/19  Entered 02/08/19 16:44:32  Exhibit A
Pg 889 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 09/27/1989 | 1254835 | 05/18/1992 | SEARS BRANDS, L.L.C. |
| 03/01/1996 | B30500 | 05/06/1998 | SEARS BRANDS, L.L.C. |
| 10/17/2008 | 52865 | 04/22/2010 | SEARS BRANDS, L.L.C. |
| 03/18/1967 | 11821 | 03/18/1967 | SEARS BRANDS, L.L.C. |
| 03/18/1967 | 13509 | 03/18/1967 | SEARS BRANDS, L.L.C. |
| 03/18/1967 | 11823 | 03/18/1967 | SEARS BRANDS, L.L.C. |
| 06/06/1975 | 1374730 | 02/27/1979 | SEARS BRANDS, L.L.C. |
| 08/10/2012 | 1150179 | 08/10/2012 | SEARS BRANDS, L.L.C. |
| 07/04/1982 | 970301 | 07/04/1982 | SEARS BRANDS, L.L.C. |
| 09/21/1960 | 555799-2 | 09/21/1960 | SEARS BRANDS, L.L.C. |
| 11/11/1970 | 879197 | 11/11/1970 | SEARS BRANDS, L.L.C. |
| 07/07/2000 | 4398086 | 07/07/2000 | SEARS BRANDS, L.L.C. |
| 08/08/1974 | 1334521 | 05/15/1978 | SEARS BRANDS, L.L.C. |
| 01/28/1988 | 25174 | 01/28/1988 | SEARS BRANDS, L.L.C. |

18-23538-shl    Doc 2507    Filed 02/08/19    Entered 02/08/19 15:44:32    Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 11/15/2000 | 50926 | 11/15/2000 | SEARS BRANDS, L.L.C. |
| 11/15/2000 | 50925 | 11/15/2000 | SEARS BRANDS, L.L.C. |
| 12/24/1996 | 32200 | 06/16/2001 | SEARS BRANDS, L.L.C. |
| 10/26/2008 | 81389 | 08/25/2009 | SEARS BRANDS, L.L.C. |
| 05/21/1997 | 32912 | 06/16/2001 | SEARS BRANDS, L.L.C. |
| 12/24/1996 | 32234 | 12/24/1996 | SEARS BRANDS, L.L.C. |
| 05/21/1997 | 32879 | 06/16/2001 | SEARS BRANDS, L.L.C. |
| 04/08/1998 | M43889 | 06/20/1999 | SEARS BRANDS, L.L.C. |
| 04/08/1998 | M43890 | 06/20/1999 | SEARS BRANDS, L.L.C. |
| 04/17/1978 | 00125/2008 | 04/17/1978 | SEARS BRANDS, L.L.C. |
| 02/27/1961 | 240688 | 02/27/1961 | SEARS BRANDS, L.L.C. |
| 07/08/1994 | 25931 | 11/13/1997 | SEARS BRANDS, L.L.C. |
| 04/30/1998 | 37282 | 02/18/2000 | SEARS BRANDS, L.L.C. |
| 09/03/1987 | 00728-M | 11/06/1995 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| 09/27/2000 | 10032 | 01/01/2002 | SEARS, ROEBUCK AND CO. |
|---|---|---|---|
| 02/27/1961 | 240688 | 02/27/1961 | SEARS, ROEBUCK AND CO. |
| 10/23/2008 | 8021171 | 04/29/2010 | SEARS BRANDS, L.L.C. |
| 05/31/1985 | 85002356 | 05/31/1985 | SEARS BRANDS, L.L.C. |
| 05/31/1985 | 85002357 | 05/31/1985 | SEARS BRANDS, L.L.C. |
| 05/31/1985 | 85002359 | 05/31/1985 | SEARS BRANDS, L.L.C. |
| 09/22/1992 | 92006679 | 09/22/1992 | SEARS BRANDS, L.L.C. |
| 09/29/2000 | 32320 | 09/29/2000 | SEARS BRANDS, L.L.C. |
| 09/29/2000 | 32321 | 09/29/2000 | SEARS BRANDS, L.L.C. |
| 03/11/2011 | 31 | 08/23/2013 | SEARS BRANDS, L.L.C. |
| 10/05/2009 | 1168276 | 07/13/2010 | SEARS BRANDS, L.L.C. |
| 11/03/1995 | 511093 | 11/28/1995 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 1141646 | 02/08/2010 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 1141647 | 02/08/2010 | SEARS BRANDS, L.L.C. |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | | | |
|---|---|---|---|
| 09/22/2009 | 1184144 | 10/15/2010 | SEARS BRANDS, L.L.C. |
| 03/31/1955 | 83344 | 01/01/1956 | SEARS BRANDS, L.L.C. |
| 03/31/1955 | 81992 | 03/06/1956 | SEARS BRANDS, L.L.C. |
| 09/22/2009 | 1184145 | 10/15/2010 | SEARS BRANDS, L.L.C. |
| 03/31/2010 | 1153992 | 04/21/2010 | SEARS BRANDS, L.L.C. |
| 03/21/2011 | 15 | 08/26/2013 | SEARS BRANDS, L.L.C. |
| 02/27/1981 | 240688 | 02/27/1961 | SEARS BRANDS, L.L.C. |
| 02/27/1961 | 240688 | 02/27/1961 | SEARS BRANDS, L.L.C. |
| 02/27/1961 | 240688 | 02/27/1961 | SEARS BRANDS, L.L.C. |
| 10/05/2009 | 813754 | 04/08/2010 | SEARS BRANDS, L.L.C. |
| 02/23/1995 | 246109 | 02/23/1995 | SEARS BRANDS, L.L.C. |
| 09/15/2010 | 830497 | 05/15/2011 | SEARS BRANDS, L.L.C. |
| 12/06/1996 | 36620CC | 02/27/1998 | SEARS BRANDS, L.L.C. |
| 07/16/1980 | 15260CC | 06/25/1983 | SEARS BRANDS, L.L.C. |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A

| | | | |
|---|---|---|---|
| 03/15/1963 | 12535 | 06/10/1963 | SEARS BRANDS, L.L.C. |
| 10/23/2008 | 2010089492LM | 03/04/2010 | SEARS BRANDS, L.L.C. |
| 05/14/1975 | 25505 | 05/14/1975 | SEARS BRANDS, L.L.C. |
| 05/01/1978 | 32727 | 12/05/1991 | SEARS BRANDS, L.L.C. |
| 02/18/2011 | 19 | 02/18/2011 | SEARS BRANDS, L.L.C. |
| 09/12/1986 | 131307 | 01/07/1988 | SEARS BRANDS, L.L.C. |
| 11/04/1963 | 70394 | 11/09/1986 | SEARS BRANDS, L.L.C. |
| 12/22/1996 | 14934 | 12/22/1996 | SEARS BRANDS, L.L.C. |
| 03/01/2013 | 335432 | 02/02/2016 | SEARS BRANDS, L.L.C. |
| 03/01/2013 | | | SEARS BRANDS, L.L.C. |
| 03/01/2013 | | | SEARS BRANDS, L.L.C. |
| 05/20/1996 | 74287 | 05/20/1996 | SEARS BRANDS, L.L.C. |
| 05/20/1996 | 74283 | 05/20/1996 | SEARS BRANDS, L.L.C. |
| 03/21/1990 | 24441 | 03/21/1990 | SEARS BRANDS, L.L.C. |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 12/12/2008 | 177855 | 12/12/2008 | SEARS BRANDS, L.L.C. |
| 01/20/1990 | 74530 | 01/20/1990 | SEARS BRANDS, L.L.C. |
| 01/20/1990 | 74531 | 01/20/1990 | SEARS BRANDS, L.L.C. |
| 01/20/1960 | 6583 | 01/20/2000 | SEARS BRANDS, L.L.C. |
| 05/04/1960 | 6630 | 05/04/1960 | SEARS BRANDS, L.L.C. |
| 08/20/1996 | 337511 | 01/19/2000 | SEARS BRANDS, L.L.C. |
| 04/13/1982 | 45735 | 09/17/1982 | SEARS BRANDS, L.L.C. |
| 09/07/1995 | 33971 | 09/07/1990 | SEARS BRANDS, L.L.C. |
| 05/23/1990 | 36315 | 08/10/1990 | SEARS BRANDS, L.L.C. |
| 07/31/1990 | 33670 | 08/10/1990 | SEARS BRANDS, L.L.C. |
| 10/10/2014 | 4-2014-00012593 | 05/21/2015 | SEARS BRANDS, L.L.C. |
| 04/16/1998 | 128602 | 03/30/2001 | SEARS BRANDS, L.L.C. |
| 04/05/1991 | R-72556 | 12/23/1993 | SEARS BRANDS, L.L.C. |
| 07/26/1967 | 143869 | 08/20/1968 | SEARS BRANDS, L.L.C. |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A Pg 903 of 1450

FILED DATE: 5/19/2021 1:27 PM     2020L012403

| | | | |
|---|---|---|---|
| 05/13/1964 | 124368 | 04/18/1968 | SEARS BRANDS, L.L.C. |
| 05/13/1964 | 124369 | 04/18/1968 | SEARS BRANDS, L.L.C. |
| 01/29/1964 | 13039 | 05/14/1965 | SEARS BRANDS, L.L.C. |
| 01/29/1964 | 13040 | 05/14/1965 | SEARS BRANDS, L.L.C. |
| 01/29/1964 | 13038 | 05/14/1965 | SEARS BRANDS, L.L.C. |
| 01/29/1964 | 13042 | 05/14/1965 | SEARS BRANDS, L.L.C. |
| 01/29/1964 | 13041 | 05/14/1965 | SEARS BRANDS, L.L.C. |
| 12/12/1996 | 16091 | 12/12/1996 | SEARS BRANDS, L.L.C. |
| 02/27/1961 | 240688 | 02/27/1961 | SEARS BRANDS, L.L.C. |
| 03/16/1995 | 141794 | 05/17/1996 | SEARS BRANDS, L.L.C. |
| 07/24/1991 | 102953 | 03/05/1992 | SEARS BRANDS, L.L.C. |
| 09/27/2000 | 213339 | 01/01/2002 | SEARS BRANDS, L.L.C. |
| 01/05/2009 | 5547 | 01/21/2010 | SEARS BRANDS, L.L.C. |
| 02/27/1961 | 240688 | 02/27/1961 | SEARS BRANDS, L.L.C. |

18-23538-shl    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 904 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 10/15/1989 | 220/46 | 06/19/1990 | SEARS BRANDS, L.L.C. |
|---|---|---|---|
| 10/18/2008 | 1113/19 | 12/14/2009 | SEARS BRANDS, L.L.C. |
| 10/15/1989 | 220/43 | 06/19/1990 | SEARS BRANDS, L.L.C. |
| 10/16/1989 | 220/45 | 06/19/1990 | SEARS BRANDS, L.L.C. |
| 10/16/1989 | 220/44 | 06/19/1990 | SEARS BRANDS, L.L.C. |
| 02/27/1961 | 240688 | 02/27/1961 | SEARS BRANDS, L.L.C. |
| 01/02/2001 | T01/00050E | 01/01/2002 | SEARS BRANDS, L.L.C. |
| 09/29/2000 | T0017203E | 09/29/2000 | SEARS BRANDS, L.L.C. |
| 04/22/1977 | T7771282D | 04/22/1984 | SEARS BRANDS, L.L.C. |
| 04/22/1977 | T7771281F | 04/22/1984 | SEARS BRANDS, L.L.C. |
| 09/29/2000 | T00/17204C | 09/29/2000 | SEARS BRANDS, L.L.C. |
| 04/22/1977 | T7771283B | 04/22/1984 | SEARS BRANDS, L.L.C. |
| 08/31/1992 | T9206646F | 08/31/1992 | SEARS BRANDS, L.L.C. |
| 09/16/1992 | T9207049H | 09/16/1992 | SEARS BRANDS, L.L.C. |

18-23538-shl    Doc 2507    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 905 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| 12/31/2001 | 6230 | 01/16/2002 | SEARS BRANDS, L.L.C. |
| 04/14/2009 | 12916 | 12/16/2009 | SEARS BRANDS, L.L.C. |
| 07/04/1996 | 185092 | 04/19/1999 | SEARS BRANDS, L.L.C. |
| 12/15/2000 | 200283 | 12/15/2000 | SEARS BRANDS, L.L.C. |
| 02/27/1961 | 240688 | 02/27/1961 | SEARS BRANDS, L.L.C. |
| 07/22/1996 | 9670996 | 06/20/1997 | SEARS BRANDS, L.L.C. |
| 09/27/2000 | 200071481 | 09/27/2000 | SEARS BRANDS, L.L.C. |
| 02/27/1961 | 240688 | 02/27/1961 | SEARS BRANDS, L.L.C. |
| 07/08/1983 | 83/4595 | 07/08/1983 | SEARS BRANDS, L.L.C. |
| 11/03/1977 | B77/4878 | 11/03/1987 | SEARS BRANDS, L.L.C. |
| 11/03/1977 | B77/4880 | 11/03/1987 | SEARS BRANDS, L.L.C. |
| 11/03/1977 | B77/4879 | 11/03/1977 | SEARS BRANDS, L.L.C. |
| 05/17/1999 | 466232 | 03/07/2000 | SEARS BRANDS, L.L.C. |
| 01/27/1987 | 153955 | 05/06/1998 | SEARS BRANDS, L.L.C. |

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:31   Exhibit A

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 02/08/1996 | 378839 | 10/21/1997 | SEARS BRANDS, L.L.C. |
| 04/04/2011 | 40-0926945 | 07/11/2012 | SEARS BRANDS, L.L.C. |
| 02/08/1996 | 393949 | 02/03/1998 | SEARS BRANDS, L.L.C. |
| 05/29/1985 | 125821 | 05/20/1986 | SEARS BRANDS, L.L.C. |
| 10/13/1986 | 1163657 | 08/20/1987 | SEARS BRANDS, L.L.C. |
| 05/10/1963 | 423434 | 11/24/1964 | SEARS BRANDS, L.L.C. |
| 12/11/2008 | TM/2008/000361 | 09/02/2009 | SEARS BRANDS, L.L.C. |
| 11/17/2010 | 216/2010 | 07/28/2011 | SEARS BRANDS, L.L.C. |
| 12/01/2005 | 19939 | 12/01/2005 | SEARS BRANDS, L.L.C. |
| 09/16/1986 | 209490 | 03/11/1988 | SEARS BRANDS, L.L.C. |
| 04/26/1983 | 105983 | 04/26/1983 | SEARS BRANDS, L.L.C. |
| 09/25/1986 | P-349920 | 09/25/1986 | SEARS BRANDS, L.L.C. |
| 03/29/1963 | 326771 | 03/28/1983 | SEARS BRANDS, L.L.C. |
| 07/12/1993 | 627610 | 01/16/1994 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM        2020L012403

| 07/12/1993 | 635941 | 03/16/1994 | SEARS BRANDS, L.L.C. |
| 07/12/1993 | 634030 | 03/01/1994 | SEARS BRANDS, L.L.C. |
| 01/31/1991 | 530755 | 08/01/1991 | SEARS BRANDS, L.L.C. |
| 04/24/1990 | 501213 | 10/01/1990 | SEARS BRANDS, L.L.C. |
| 06/12/1997 | 819260 | 10/01/1998 | SEARS BRANDS, L.L.C. |
| 03/22/1976 | 83661 | 08/01/1976 | SEARS BRANDS, L.L.C. |
| 03/04/1982 | 195999 | 11/01/1982 | SEARS BRANDS, L.L.C. |
| 06/12/1997 | 826293 | 11/16/1998 | SEARS BRANDS, L.L.C. |
| 03/22/1976 | 84840 | 10/02/1976 | SEARS BRANDS, L.L.C. |
| 11/14/1991 | 558005 | 04/15/1992 | SEARS BRANDS, L.L.C. |
| 06/12/1997 | 826294 | 11/16/1998 | SEARS BRANDS, L.L.C. |
| 06/12/1997 | 819261 | 10/01/1998 | SEARS BRANDS, L.L.C. |
| 08/23/1990 | 522364 | 05/01/1991 | SEARS BRANDS, L.L.C. |
| 11/03/2000 | 978809 | 01/01/2002 | SEARS BRANDS, L.L.C. |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | | | |
|---|---|---|---|
| 10/03/2003 | 1110615 | 07/16/2004 | SEARS BRANDS, L.L.C. |
| 10/03/2003 | 1111143 | 07/16/2004 | SEARS BRANDS, L.L.C. |
| 10/03/2003 | 1111144 | 07/16/2004 | SEARS BRANDS, L.L.C. |
| 10/03/2003 | 1111145 | 07/16/2004 | SEARS BRANDS, L.L.C. |
| 03/10/2011 | 1483705 | 11/16/2011 | SEARS BRANDS, L.L.C. |
| 05/29/1978 | KOR72504 | 05/29/1978 | SEARS BRANDS, L.L.C. |
| 03/18/2003 | Kor187736 | 03/18/2003 | SEARS BRANDS, L.L.C. |
| 01/13/2009 | 1747 | 12/03/2010 | SEARS BRANDS, L.L.C. |
| 11/05/1998 | 28928 | 11/25/1999 | SEARS, ROEBUCK AND CO. |
| 10/24/2008 | 40411 | 11/27/2009 | SEARS BRANDS, L.L.C. |
| 06/13/1979 | 11395 | 07/18/1983 | SEARS BRANDS, L.L.C. |
| 12/20/2000 | 2000027611 | 01/01/2002 | SEARS BRANDS, L.L.C. |
| 05/15/1998 | 22446 | 01/15/2002 | SEARS BRANDS, L.L.C. |
| 05/15/1998 | 22445 | 01/15/2002 | SEARS BRANDS, L.L.C. |

18-23538-shl   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:34   Exhibit A
Pg 981 of 1150

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | | |
|---|---|---|---|
| 03/01/1997 | 14228 | 03/21/1998 | SEARS BRANDS, L.L.C. |
| 02/19/2009 | 148774 | 12/27/2011 | SEARS BRANDS, L.L.C. |
| 01/21/2001 | 30758 | 02/12/2002 | SEARS BRANDS, L.L.C. |
| 07/14/2011 | 148775 | 09/25/2012 | SEARS BRANDS, L.L.C. |
| 08/08/2017 | | | SEARS BRANDS, L.L.C. |
| 09/26/2000 | 421153 | 04/05/2001 | SEARS BRANDS, L.L.C. |
| 09/06/1988 | 395.463 | 09/06/1988 | SEARS BRANDS, L.L.C. |
| 08/04/1998 | 306069 | 09/06/1988 | SEARS BRANDS, L.L.C. |
| 11/20/1991 | F-167370 | 08/19/1994 | SEARS, ROEBUCK AND CO. |
| 04/04/1984 | 123348-F | 05/16/1986 | SEARS BRANDS, L.L.C. |
| 09/20/1979 | F103059 | 09/06/1983 | SEARS BRANDS, L.L.C. |
| 05/11/1965 | 22617 | 05/11/1965 | SEARS BRANDS, L.L.C. |
| 01/14/1981 | F110129 | 09/11/1984 | SEARS BRANDS, L.L.C. |
| 09/20/1979 | F103055 | 09/06/1983 | SEARS BRANDS, L.L.C. |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:31 Exhibit A
Pg 352 of 1150

| | | | |
|---|---|---|---|
| 02/27/1961 | 240688 | 02/27/1961 | SEARS BRANDS, L.L.C. |
| 39274 | 836755* | 39904 | SEARS BRANDS, L.L.C. |

n.  No representation or warranty is made with respect to the Trademarks denoted with an asterisk.

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Entity Name |
| --- |
| A&E Factory Service, LLC |
| A&E Home Delivery, LLC |
| A&E Lawn & Garden, LLC |
| A&E Signature Service, LLC |
| Big Beaver Development Corporation |
| Big Beaver of Florida Development, LLC |
| BlueLight.com, Inc. |
| Bub, LLC |
| California Builder Appliances, Inc. |
| Crystal Lake JV LLC |
| FBA Holdings Inc. |
| Florida Builder Appliances, Inc. |
| Inmuebles SROM, S.A. de C.V. |
| Innovel Solutions, Inc. |
| International Sourcing & Logistics Limited |
| KBL Holding Inc. |
| KCD IP, LLC |
| KLC, Inc. |
| Kmart Corporation |
| Kmart Corporation of Illinois, Inc. |
| Kmart Holding Corporation |
| Kmart International Services, Inc. |
| Kmart of Michigan, Inc. |
| Kmart of Washington LLC |
| Kmart Operations LLC |
| Kmart Operations of Michigan LLC |
| Kmart Overseas Corporation |
| Kmart Stores of Illinois LLC |
| Kmart Stores of Texas LLC |
| Kmart.com LLC |
| Manage My Home Inc. |
| MaxServ, Inc. |
| MetaScale LLC |
| MyGofer LLC |
| Naples Joint Venture |
| Private Brands, Ltd. |
| Quality Assurance Laboratory Limited |
| Ravenswood1010, LLC |
| Red Road Joint Venture |
| RichRelevance, Inc. |
| S.F.P.R., Inc. |
| Sears Authorized Independent Auto Centers LLC |
| Sears Brands Business Unit Corporation |
| Sears Brands Management Corporation |
| Sears Brands, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM  2020L012403

Sears Buying Services, Inc.
Sears Canada Holdings Corp.
Sears Canada Inc.
Sears Development Co.
Sears Financial Holding Corporation
Sears Global Technologies India Private Limited
Sears Global Technology Services LLC
Sears Grand, LLC
Sears Holdings Corporation
Sears Holdings Global Sourcing Limited
Sears Holdings Management Corporation
Sears Holdings Mauritius Holding Company
Sears Holdings Publishing Company, LLC
Sears Home & Business Franchises, Inc.
Sears Home Improvement Products, Inc.
Sears Home Services, L.L.C.
Sears Insurance Services, L.L.C.
Sears International (Barbados), Inc.
Sears International Holdings Corp.
Sears IT & Management Services India Private Limited
Sears Mexico Holdings Corp.
Sears Operadora Mexico, S.A. de C.V.
Sears Operations LLC
Sears Procurement Services, Inc.
Sears Protection Company
Sears Protection Company (Florida), L.L.C.
Sears Protection Company (PR), Inc.
Sears Reinsurance Company Ltd.
Sears Roebuck Acceptance Corp.
Sears Shop at Home Services, Inc.
Sears Sourcing India Private Limited
Sears World Trade Comercial Limitada
Sears, Roebuck and Co.
Sears, Roebuck de Puerto Rico, Inc.
Searsvale Acquisition LLC
ServiceLive Solutions Ltd.
ServiceLive, Inc.
SHC Charitable Promotions LLC
SHC Desert Springs, LLC
SHC Financial, LLC
SHC Israel Ltd.
SHC Licensed Business LLC
SHC Promotions LLC
SHMC Beverly Group LLC
Shop Your Way, Inc.
SOE, Inc.

18-23538-shl  Doc 2507  Filed 02/08/19  Entered 02/08/19 16:44:32  Exhibit A
Pg 335 of 1450

FILED DATE: 5/19/2021 1:27 PM  2020L012403

SRC Crystal Lake LLC

SRC Facilities LLC

SRC Harlem North Redevelopment, LLC

SRC O.P. LLC

SRC Real Estate (TX), LLC

SRC Sparrow 1 LLC

SRC Sparrow 2 LLC

SRe Holding Corporation

ST Holdings, Inc.

StarWest, LLC

STATE INTERACTIVE LLC

STI Merchandising, Inc.

SYW Relay LLC

The Sears-Roebuck Foundation

Troy Coolidge No. 1, LLC

Troy Coolidge No. 10, LLC

Troy Coolidge No. 12, LLC

Troy Coolidge No. 13, LLC

Troy Coolidge No. 14, LLC

Troy Coolidge No. 15, LLC

Troy Coolidge No. 17, LLC

Troy Coolidge No. 18, LLC

Troy Coolidge No. 2, LLC

Troy Coolidge No. 22, LLC

Troy Coolidge No. 30, LLC

Troy Coolidge No. 32, LLC

Troy Coolidge No. 4, LLC

Troy Coolidge No. 42, LLC

Troy Coolidge No. 46, LLC

Troy Coolidge No. 5, LLC

Troy Coolidge No. 50, LLC

Troy Coolidge No. 53, LLC

Troy Coolidge No. 62, LLC

Troy Coolidge No. 7, LLC

Wally Labs LLC

Monark of California

Monark Premium Appliance Co. of California

Monark Holdings Inc.

Monark

Monark Premium Appliance Co.

Big Kmart

Little Caesars

Super K

Super Kmart Center

KMI, Inc.

Big Kmart

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 956 of 1420

FILED DATE: 5/19/2021 1:27 PM   2020L012403

Austin Technology Center

MXSV, Inc.

Evoke Productions

SHMC, Inc.

Kenmore Direct

Sears Home Services

Sears New York Insurance Agency

Sears Oklahoma Insurance Agency

Sears #1284

Sears Auto Center

Sears Auto Center #6582

Sears Protection Company Inc.

A&E Factory Service

FitStudio by Sears

Kenmore Direct

Sears Auto Centers

Sears Grand

Sears Home&Life

Sears Merchandise Group

ServiceLive Direct

shopyourway.com

The Great Indoors

Monark Premium Appliance Co. of Arizona

Westar Kitchen and Bath

Westar Kitchen and Bath, LLC

FILED DATE: 5/19/2021 1:27 PM        2020L012403

| Country | Application Number | Application Date | Patent Number | Grant Date |
|---|---|---|---|---|
| United States | 13/926383 | 06/25/2013 | | |
| United States | 14/620311 | 02/12/2015 | | |
| United States | 14/943192 | 11/17/2015 | | |
| United States | 15/236077 | 08/12/2016 | | |
| United States | 15/293273 | 10/13/2016 | | |
| United States | 15/295822 | 10/17/2016 | | |
| United States | 15/652781 | 07/18/2017 | | |
| United States | 09/943095 | 08/30/2001 | 6519874 | 02/18/2003 |
| United States | 09/636181 | 08/10/2000 | 6523840 | 02/25/2003 |
| United States | 09/894157 | 06/27/2001 | 6543601 | 04/08/2003 |
| United States | 09/750529 | 12/28/2000 | 6557285 | 05/06/2003 |
| United States | 09/833329 | 04/12/2001 | 6677689 | 01/13/2004 |
| United States | 10/340024 | 01/10/2003 | 6679506 | 01/20/2004 |
| United States | 09/833316 | 04/12/2001 | 6698597 | 03/02/2004 |
| United States | 10/155977 | 05/28/2002 | 6708874 | 03/23/2004 |
| United States | 10/350656 | 01/24/2003 | 6725999 | 04/27/2004 |
| United States | 09/713868 | 11/16/2000 | 6980969 | 12/27/2005 |
| United States | 10/278343 | 10/23/2002 | 7072884 | 07/04/2006 |
| United States | 10/877131 | 06/25/2004 | 7152343 | 12/26/2006 |
| United States | 10/462240 | 06/16/2003 | 7334852 | 02/26/2008 |
| United States | 12/038315 | 02/27/2008 | 7963441 | 06/21/2011 |
| United States | 12/539219 | 08/11/2009 | 8015068 | 09/06/2011 |
| United States | 11/809825 | 06/01/2007 | 8033034 | 10/11/2011 |
| United States | 12/360879 | 01/28/2009 | 8146268 | 04/03/2012 |
| United States | 12/500924 | 07/10/2009 | 8215500 | 07/10/2012 |

18-23538-shl  Doc 2307  Filed 02/08/19  Entered 02/08/19 16:44:32  Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| United States | 13/194406 | 07/29/2011 | 8301504 | 10/30/2012 |
| United States | 12/175298 | 07/17/2008 | 8417552 | 04/09/2013 |
| United States | 12/268103 | 11/10/2008 | 8438070 | 05/07/2013 |
| United States | 13/191918 | 07/27/2011 | 8566167 | 10/22/2013 |
| United States | 13/086903 | 04/14/2011 | 8590786 | 11/26/2013 |
| United States | 13/298762 | 11/17/2011 | 8626348 | 01/07/2014 |
| United States | 12/476370 | 06/02/2009 | 8651374 | 02/18/2014 |
| United States | 13/004331 | 01/11/2011 | 8676660 | 03/18/2014 |
| United States | 13/889023 | 05/07/2013 | 8744921 | 06/03/2014 |
| United States | 12/850722 | 08/05/2010 | 8789750 | 07/29/2014 |
| United States | 12/180247 | 07/25/2008 | 8813398 | 08/26/2014 |
| United States | 12/962947 | 12/08/2010 | 8818876 | 08/26/2014 |
| United States | 12/579913 | 10/15/2009 | 8863409 | 10/21/2014 |
| United States | 13/494758 | 06/12/2012 | 8930134 | 01/06/2015 |
| United States | 13/584540 | 08/13/2012 | 9037559 | 05/19/2015 |
| United States | 13/756206 | 01/31/2013 | 9047631 | 06/02/2015 |
| United States | 13/589689 | 08/20/2012 | 9058367 | 06/16/2015 |
| United States | 12/645639 | 12/23/2009 | 9141989 | 09/22/2015 |
| United States | 13/273459 | 10/14/2011 | 9143896 | 09/22/2015 |
| United States | 13/545243 | 07/10/2012 | 9256472 | 02/09/2016 |
| United States | 14/183123 | 02/18/2014 | 9256872 | 02/09/2016 |
| United States | 13/442501 | 04/09/2012 | 9256902 | 02/09/2016 |
| United States | 14/039955 | 09/27/2013 | 9294554 | 03/22/2016 |
| United States | 13/826128 | 03/14/2013 | 9330413 | 05/03/2016 |
| United States | 12/718376 | 03/05/2010 | 9361637 | 06/07/2016 |
| United States | 13/971431 | 08/20/2013 | 9390459 | 07/12/2016 |

18-23538-shl    Doc 9507    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 919 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| United States | 14/663805 | 03/20/2015 | 9443262 | 09/13/2016 |
| United States | 13/364441 | 02/02/2012 | 9451576 | 09/20/2016 |
| United States | 12/622803 | 11/20/2009 | 9460422 | 10/04/2016 |
| United States | 14/476935 | 09/04/2014 | 9558503 | 01/31/2017 |
| United States | 12/886060 | 09/20/2010 | 9576323 | 02/21/2017 |
| United States | 13/523050 | 06/14/2012 | 9672559 | 06/06/2017 |
| United States | 13/494426 | 06/12/2012 | 9704166 | 07/11/2017 |
| United States | 13/886065 | 05/02/2013 | 9710844 | 07/18/2017 |
| United States | 13/757485 | 02/01/2013 | 9799057 | 10/24/2017 |
| United States | 15/177570 | 06/09/2016 | 9811853 | 11/07/2017 |
| United States | 14/330894 | 07/14/2014 | 9898771 | 02/20/2018 |
| United States | 13/547910 | 07/12/2012 | 9959567 | 05/01/2018 |
| United States | 13/248155 | 09/29/2011 | 9971388 | 05/15/2018 |
| United States | 14/206913 | 03/12/2014 | 9972042 | 05/15/2018 |
| United States | 13/483959 | 05/30/2012 | 9978048 | 05/22/2018 |
| United States | 15/084001 | 03/29/2016 | 9996869 | 06/12/2018 |
| United States | 15/175740 | 06/07/2016 | 10064062 | 08/28/2018 |
| United States | 14/705570 | 05/06/2015 | 10089588 | 10/02/2018 |
| United States | 14/933243 | 11/05/2015 | 10107709 | 10/23/2018 |
| United States | 14/966701 | 12/11/2015 | 10127590 | 11/13/2018 |
| United States | 14/087601 | 11/22/2013 | 10135749 | 11/20/2018 |
| United States | 15/077792 | 03/22/2016 | 10135912 | 11/20/2018 |
| United States | 29/147600 | 08/31/2001 | D494346 | 08/17/2004 |
| United States | 29/209636 | 07/19/2004 | D509654 | 09/20/2005 |
| United States | 29/209221 | 07/12/2004 | D563086 | 03/04/2008 |
| United States | 29/280236 | 05/22/2007 | D571089 | 06/17/2008 |

18-23538-shl Doc 9643-7 Filed 07/13/21 Entered 07/13/21 18:26:44 Exhibit A
Pg 918 of 1450

FILED DATE: 5/19/2021 1:27 PM          2020L012403

| United States | 29/288177 | 06/01/2007 | D584032 | 01/06/2009 |
|---|---|---|---|---|
| United States | 29/296842 | 10/30/2007 | D597748 | 08/11/2009 |
| United States | 29/337956 | 06/02/2009 | D619603 | 07/13/2010 |
| United States | 29/337957 | 06/02/2009 | D619604 | 07/13/2010 |
| United States | 29/337959 | 06/02/2009 | D619605 | 07/13/2010 |
| United States | 29/337960 | 06/02/2009 | D619606 | 07/13/2010 |
| United States | 29/337964 | 06/02/2009 | D619607 | 07/13/2010 |
| United States | 29/337962 | 06/02/2009 | D620021 | 07/20/2010 |
| United States | 29/357461 | 03/12/2010 | D633570 | 03/01/2011 |
| United States | 29/358023 | 03/22/2010 | D644649 | 09/06/2011 |
| United States | 29/344266 | 09/25/2009 | D669087 | 10/16/2012 |
| United States | 29/423926 | 06/06/2012 | D681325 | 05/07/2013 |
| United States | 29/417672 | 04/06/2012 | D698136 | 01/28/2014 |
| United States | 29/417677 | 04/06/2012 | D717033 | 11/11/2014 |
| United States | 29/417680 | 04/06/2012 | D718921 | 12/09/2014 |
| United States | 29/417673 | 04/06/2012 | D724296 | 03/17/2015 |
| United States | 29/462243 | 07/31/2013 | D730399 | 05/26/2015 |
| United States | 29/453694 | 05/01/2013 | D731540 | 06/09/2015 |
| United States | 29/462327 | 08/01/2013 | D731551 | 06/09/2015 |
| United States | 29/462232 | 07/31/2013 | D731553 | 06/09/2015 |
| United States | 29/462347 | 08/01/2013 | D733743 | 07/07/2015 |
| United States | 29/462352 | 08/01/2013 | D733749 | 07/07/2015 |
| United States | 29/462241 | 07/31/2013 | D733755 | 07/07/2015 |
| United States | 29/462325 | 08/01/2013 | D734345 | 07/14/2015 |
| United States | 29/462343 | 08/01/2013 | D734767 | 07/21/2015 |
| United States | 29/462344 | 08/01/2013 | D734777 | 07/21/2015 |

18-23538-shl    Doc 9507-1    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 919 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| United States | 29/462345 | 08/01/2013 | D734778 | 07/21/2015 |
| United States | 29/453693 | 05/01/2013 | D736805 | 08/18/2015 |
| United States | 29/462986 | 08/12/2013 | D737322 | 08/25/2015 |
| United States | 29/465600 | 08/29/2013 | D739436 | 09/22/2015 |
| United States | 29/464419 | 08/15/2013 | D739876 | 09/29/2015 |
| United States | 29/453690 | 05/01/2013 | D741883 | 10/27/2015 |
| United States | 29/462329 | 08/01/2013 | D746298 | 12/29/2015 |
| United States | 29/462334 | 08/01/2013 | D746299 | 12/29/2015 |
| United States | 29/462331 | 08/01/2013 | D746842 | 01/05/2016 |
| United States | 29/462341 | 08/01/2013 | D746843 | 01/05/2016 |
| United States | 29/462349 | 08/01/2013 | D748117 | 01/26/2016 |
| United States | 29/462328 | 08/01/2013 | D750657 | 03/01/2016 |
| United States | 29/537079 | 08/21/2015 | D752642 | 03/29/2016 |
| United States | 29/537083 | 08/21/2015 | D753180 | 04/05/2016 |
| United States | 29/462326 | 08/01/2013 | D755813 | 05/10/2016 |
| United States | 29/462311 | 08/01/2013 | D758379 | 06/07/2016 |
| United States | 29/462308 | 08/01/2013 | D759035 | 06/14/2016 |
| United States | 29/462310 | 08/01/2013 | D759036 | 06/14/2016 |
| United States | 29/462324 | 08/01/2013 | D759037 | 06/14/2016 |
| United States | 29/462337 | 08/01/2013 | D759038 | 06/14/2016 |
| United States | 29/464418 | 08/15/2013 | D759112 | 06/14/2016 |
| United States | 29/462296 | 08/01/2013 | D759715 | 06/21/2016 |
| United States | 29/462303 | 08/01/2013 | D761848 | 07/19/2016 |
| United States | 29/462306 | 08/01/2013 | D761849 | 07/19/2016 |
| United States | 29/462323 | 08/01/2013 | D761850 | 07/19/2016 |
| United States | 29/462354 | 08/01/2013 | D761851 | 07/19/2016 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| United States | 29/462355 | 08/01/2013 | D761852 | 07/19/2016 |
|---|---|---|---|---|
| United States | 29/462357 | 08/01/2013 | D761853 | 07/19/2016 |
| United States | 29/462249 | 07/31/2013 | D762235 | 07/26/2016 |
| United States | 29/462351 | 08/01/2013 | D763313 | 08/09/2016 |
| United States | 29/462333 | 08/01/2013 | D764537 | 08/23/2016 |
| United States | 29/462245 | 07/31/2013 | D764545 | 08/23/2016 |
| United States | 29/550609 | 01/05/2016 | D765123 | 08/30/2016 |
| United States | 29/462342 | 08/01/2013 | D771121 | 11/08/2016 |
| United States | 29/554484 | 02/11/2016 | D773516 | 12/06/2016 |
| United States | 29/554476 | 02/11/2016 | D789946 | 06/20/2017 |
| United States | 29/554480 | 02/11/2016 | D789947 | 06/20/2017 |
| United States | 29/554492 | 02/11/2016 | D789948 | 06/20/2017 |
| United States | 29/554493 | 02/11/2016 | D789949 | 06/20/2017 |
| United States | 29/550612 | 01/05/2016 | D789961 | 06/20/2017 |
| United States | 29/554483 | 02/11/2016 | D789984 | 06/20/2017 |
| United States | 29/554501 | 02/11/2016 | D790587 | 06/27/2017 |
| United States | 29/554470 | 02/11/2016 | D791168 | 07/04/2017 |
| United States | 29/554489 | 02/11/2016 | D791169 | 07/04/2017 |
| United States | 29/554494 | 02/11/2016 | D791170 | 07/04/2017 |
| United States | 29/554503 | 02/11/2016 | D791171 | 07/04/2017 |
| United States | 29/554459 | 02/11/2016 | D791180 | 07/04/2017 |
| United States | 29/554469 | 02/11/2016 | D791181 | 07/04/2017 |
| United States | 29/554481 | 02/11/2016 | D791816 | 07/11/2017 |
| United States | 29/554487 | 02/11/2016 | D791817 | 07/11/2017 |
| United States | 29/554497 | 02/11/2016 | D791818 | 07/11/2017 |
| United States | 29/554496 | 02/11/2016 | D792445 | 07/18/2017 |

18-23538-shl   Doc 9507-2   Filed 02/08/19   Entered 02/08/19 16:44:34   Exhibit A
Pg 933 of 1150

| United States | 29/554500 | 02/11/2016 | D792446 | 07/18/2017 |
|---------------|-----------|------------|---------|------------|
| United States | 29/462987 | 08/12/2013 | D792454 | 07/18/2017 |
| United States | 29/462305 | 08/01/2013 | D792461 | 07/18/2017 |
| United States | 29/554475 | 02/11/2016 | D793425 | 08/01/2017 |
| United States | 29/554479 | 02/11/2016 | D793426 | 08/01/2017 |
| United States | 29/554499 | 02/11/2016 | D793427 | 08/01/2017 |
| United States | 29/554843 | 02/16/2016 | D795287 | 08/22/2017 |
| United States | 29/583673 | 11/08/2016 | D795924 | 08/29/2017 |
| United States | 29/554472 | 02/11/2016 | D797117 | 09/12/2017 |
| United States | 29/554463 | 02/11/2016 | D801388 | 10/31/2017 |
| United States | 29/556548 | 03/01/2016 | D815122 | 04/10/2018 |
| United States | 12/011106 | 01/23/2008 | | |
| United States | 12/175250 | 07/17/2008 | | |
| United States | 12/175210 | 07/17/2008 | | |
| United States | 11/875354 | 10/19/2007 | | |
| United States | 13/086949 | 04/14/2011 | | |
| United States | 12/261441 | 10/30/2008 | | |
| United States | 12/755702 | 04/07/2010 | | |
| United States | 12/859625 | 08/19/2010 | | |
| United States | 14/060327 | 10/22/2013 | | |
| United States | 13/284162 | 10/28/2011 | | |
| United States | 13/323037 | 12/12/2011 | | |
| United States | 13/249588 | 09/30/2011 | | |
| United States | 13/248513 | 09/29/2011 | | |
| United States | 13/486831 | 06/01/2012 | | |
| United States | 13/443613 | 04/10/2012 | | |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| United States | 13/668256 | 11/03/2012 | | |
|---|---|---|---|---|
| United States | 13/526013 | 06/18/2012 | | |
| United States | 13/495228 | 06/13/2012 | | |
| United States | 13/664104 | 10/30/2012 | | |
| United States | 13/956978 | 08/01/2013 | | |
| United States | 14/218319 | 03/18/2014 | | |
| United States | 13/910216 | 06/05/2013 | | |
| United States | 13/896841 | 05/17/2013 | | |
| United States | 14/831218 | 08/20/2015 | | |
| United States | 14/321450 | 07/01/2014 | | |
| United States | 14/034875 | 09/24/2013 | | |
| United States | 14/036359 | 09/25/2013 | | |
| United States | 14/750507 | 06/25/2015 | | |
| United States | 14/024318 | 09/11/2013 | | |
| United States | 14/815524 | 07/31/2015 | | |
| United States | 14/062040 | 10/24/2013 | | |
| United States | 13/800722 | 03/13/2013 | | |
| United States | 13/770142 | 02/19/2013 | | |
| United States | 13/844814 | 03/16/2013 | | |
| United States | 14/202980 | 03/10/2014 | | |
| United States | 14/212977 | 03/14/2014 | | |
| United States | 14/268425 | 05/02/2014 | | |
| United States | 14/288530 | 05/28/2014 | | |
| United States | 14/025336 | 09/12/2013 | | |
| United States | 14/059204 | 10/21/2013 | | |
| United States | 14/335540 | 07/18/2014 | | |

18-23538-shl   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:31   Exhibit A

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| United States | 14/496794 | 09/25/2014 | | |
|---|---|---|---|---|
| United States | 29/611042 | 07/18/2017 | | |
| United States | 14/136095 | 12/20/2013 | | |
| United States | 14/075121 | 11/08/2013 | | |
| United States | 14/148042 | 01/06/2014 | | |
| United States | 14/166064 | 01/28/2014 | | |
| United States | 14/178348 | 02/12/2014 | | |
| United States | 14/104070 | 12/12/2013 | | |
| United States | 14/083815 | 11/19/2013 | | |
| United States | 14/084903 | 11/20/2013 | | |
| United States | 14/321328 | 07/01/2014 | | |
| United States | 14/693263 | 04/22/2015 | | |
| United States | 14/286270 | 05/23/2014 | | |
| United States | 14/201363 | 03/07/2014 | | |
| United States | 14/638256 | 03/04/2015 | | |
| United States | 14/444457 | 07/28/2014 | | |
| United States | 14/660034 | 03/17/2015 | | |
| United States | 14/509777 | 10/08/2014 | | |
| United States | 14/940389 | 11/13/2015 | | |
| United States | 14/644689 | 03/11/2015 | | |
| United States | 15/010891 | 01/29/2016 | | |
| United States | 14/800111 | 07/15/2015 | | |
| United States | 15/147537 | 05/05/2016 | | |
| United States | 15/153965 | 05/13/2016 | | |
| United States | 14/928460* | 42307 | | |
| United States | 29/554467* | 02/11/2016 | | |

| United States | 62/594196* | 12/04/2017 | | |

*- items denoted with an asterisk are assigned solely to the extent of Selle

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Owner |
| --- |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 926 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 899 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| |
|---|
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |

18-23538-shl Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 730 of 1150

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| |
|---|
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 933 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| SEARS BRANDS, L.L.C. |
| --- |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:31   Exhibit A

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| |
|---|
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 933 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| SEARS BRANDS, L.L.C. |
|---|
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

SEARS BRANDS, L.L.C.

ers' right, title or interest therein.   N

| Title |
|---|
| SYSTEMS AND METHODS FOR SCAN, TRY AND BUY |
| SYSTEM, APPARATUS, AND MEDIA FOR CHANGING STATE OF AN INTERNET OF THINGS (IOT) DEV |
| SENSOR FOR DETECTING PRESENSE, OCCUPANCY, AND/OR MOTION AND RELATED SYSTEMS AND M |
| SYSTEMS AND METHODS FOR ONLINE FRAUD DETECTION |
| SMART HOME DELIVERY SERVICES |
| BROADCASE MODE FOR NON-PAIRED DEVICES AND CRITICAL MESSAGES |
| OBJECT DRIVEN NEWSFEED |
| SHOCK ABSORBENT FOOTWEAR ASSEMBLY |
| COMBINED SHOPPING CART/STROLLER |
| UNLOADING APPARATUS |
| HANGING SIGN AND SUPPORT |
| STORE FIXTURE POWER DISTRIBUTION SYSTEM |
| COMBINED SHOPPING CART/STROLLER |
| VERTICAL MERCHANDISE DISPLAY UNIT |
| CARTON WITH FINGER HOLES |
| UNLOADING APPARATUS |
| METHOD AND APPARATUS FOR ALLOWING INTERNET BASED PURCHASES BASED ON TEMPORARY ( CARD NUMBER |
| COMPUTER SYSTEM AND METHOD OF DISPLAYING PRODUCT SEARCH RESULTS |
| FOOTWEAR SYSTEM |
| MULTIPLE CONFIGURATION SHELVING SYSTEM FOR DISPLAYING AUDIO VISUAL COMPONENTS |
| SYSTEM AND METHOD FOR PROVIDING SELF SERVICE CHECKOUT AND PRODUCT DELIVERY USING A DEVICE |
| SYSTEMS AND METHODS FOR MANAGING ORDERS MADE VIA A COMPUTER NETWORK |
| SHOE WITH DETACHABLE AND FLEXIBLE HEEL STRAP |
| SHOE HAVING AN AIR CUSHIONING SYSTEM |
| HANGING DEVICE FOR RESEALABLE STORAGE BAGS |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| |
|---|
| SYSTEMS AND METHODS FOR MANAGING ORDERS MADE VIA A COMPUTER NETWORK |
| ELECTRONIC SELECT PROVIDER NETWORK |
| EXCHANGING VALUE BETWEEN A SERVICE BUYER AND A SERVICE PROVIDER |
| SYSTEM AND METHOD FOR USING DATA POINTS COLLECTED FROM A CUSTOMER TO PROVIDE CUST... SPECIFIC OFFERINGS |
| SYSTEM AND METHOD FOR USING A MOBILE DEVICE TO LOCATE A FOLLOWED ITEM IN A RETAIL ST... |
| METHODS AND SYSTEMS FOR COMMUNITY ENERGY MANAGEMENT |
| SYSTEM AND METHOD FOR PAYMENT CARD INDUSTRY ENTERPRISE ACCOUNT NUMBER ELIMINAT... |
| SYSTEM AND METHOD FOR PROVIDING A STREAMLINED CHECKOUT PROCESS |
| EXCHANGING VALUE BETWEEN A SERVICE BUYER AND A SERVICE PROVIDER |
| SYSTEM AND METHOD FOR USING A MOBILE DEVICE TO FOLLOW A PRICE FOR AN ITEM |
| THREE-DIMENSION GIFT CARD ASSEMBLY |
| SYSTEM AND METHOD FOR FACILITATING THE PURCHASE OF PRODUCTS DETERMINED TO BE USEFU... PERFORMANCE OF A TASK |
| SHOE HAVING AN AIR CUSHIONING BED |
| SYSTEMS AND METHODS FOR HIGH-PRECISION INDOOR POSITIONING, NAVIGATION AND SHOPPI... BEHAVIOR PROFILING |
| FILE SYSTEM QUEUE |
| CUSTOMER ASSISTANCE PLATFORM |
| METHODS AND SYSTEMS FOR STAGING AND PROPAGATING DATA |
| SYSTEMS AND METHODS FOR USING A SOCIAL NETWORK TO PROVIDE PRODUCT RELATED INFORM... |
| SYSTEMS AND METHODS FOR PROVIDING A DISTRIBUTED MOBILE CALL CENTER FOR A SERVIC... ESTABLISHMENT |
| SYSTEM AND METHOD FOR ECONOMICAL MIGRATION OF LEGACY APPLICATIONS FROM MAINFRAM... DISTRIBUTED PLATFORMS |
| SYSTEM AND METHOD FOR PAYMENT CARD INDUSTRY ENTERPRISE ACCOUNT NUMBER ELIMINAT... |
| NON-TRANSITORY COMPUTER-READABLE MEDIA FOR PRESENTING PRODUCT RECOMMENDATIO... |
| INTEGRATED EXPERIENCE FOR APPLICATIONS WITHIN A MOBILE APPLICATION |
| CHECKOUT AND/OR ORDERING SYSTEMS AND METHODS |
| SYSTEM AND METHOD FOR PROVIDING DIAGNOSTIC SERVICES |
| METHOD AND SYSTEM FOR USER BASED ROUTING |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-rdd   Doc 2307   Filed 02/08/19   Entered 02/08/19 16:14:32   Exhibit A

| |
|---|
| MERCHANDISE RESERVATION SYSTEM, APPARATUS, AND MEDIA |
| METHODS AND SYSTEMS FOR PROVIDING LOCATION BASED ASSISTANCE VIA A MOBILE DEVIC |
| SYSTEMS AND METHODS FOR MANAGING TO-DO LIST TASK ITEMS TO AUTOMATICALLY SUGGEST AN PURCHASING ITEMS VIA A COMPUTER NETWORK |
| MATCHING MOBILE DEVICE TO TRANSACTION AND/OR CUSTOMER ACCOUNT |
| SYSTEM FOR FACILITATING MULTI-CHANNEL PURCHASE OF FSA ELIGIBLE ITEMS |
| METHODS AND SYSTEMS FOR A DIGITAL INTERFACE FOR DISPLAYING RETAIL SEARCH RESULT |
| METHODS AND SYSTEMS FOR PROVIDING CUSTOM ERROR PAGES FOR RETAIL APPLICATIONS |
| OBJECT DRIVEN NEWSFEED |
| SYSTEMS AND METHODS FOR CREATING AND MANAGING MARKETING APPLICATIONS, EVENTS PROMOTIONS, AND PUBLICATIONS |
| METHOD AND SYSTEM FOR USER BASED ROUTING |
| SYSTEM AND METHOD FOR FACILITATING THE PURCHASE OF PRODUCTS DETERMINED TO BE USEFU PERFORMANCE OF A TASK |
| SYSTEMS AND METHODS OF TARGETED INTERACTIONS FOR INTEGRATED RETAIL APPLICATION |
| ENERGY MANAGEMENT UNIT WITH DIAGNOSTIC CAPABILITIES |
| RECOMMENDATIONS BASED ON EXPLICIT USER SIMILARITY |
| METHODS AND SYSTEMS FOR CONNECTED SALES ASSOCIATE SERVICES |
| METHODS AND SYSTEMS FOR PROVIDING PERSONAL SHOPPING SERVICES |
| SYSTEM AND METHOD FOR AUTOMATICALLY AND SECURELY REGISTERING AN INTERNET OF THINGS |
| SYSTEM AND METHOD SUPPORTING ONGOING WORKER FEEDBACK |
| WATER SENSORS WITH MULTI-VALUE OUTPUTS AND ASSOCIATED SYSTEMS AND METHODS |
| METHODS AND SYSTEMS SUPPORTING ONLINE SHOPPING AS A SHARED AND SOCIAL ACTIVIT |
| MAINFRAME MIGRATION TOOLS |
| INTEGRATED EXPERIENCE FOR APPLICATIONS WITHIN A MOBILE APPLICATION |
| PATTERN ON A SHOE SOLE |
| CARD HOLDER |
| TREAD PATTERN |
| FOOTWEAR OUTSOLE |

FILED DATE: 5/19/2021 1:27 PM        2020L012403

18-23538-shl Doc 9648-7 Filed 07/13/21 Entered 07/13/21 18:26:44 Exhibit A
Pg 938 of 1450

FILED DATE: 5/19/2021 1:27 PM        2020L012403

| |
|---|
| SHOE UPPER WITH DETACHABLE AND FLEXIBLE HEEL STRAP |
| GARMENT HANGER |
| COMPUTER USER INTERFACE FOR A DISPLAY SCREEN |
| COMPUTER USER INTERFACE FOR A DISPLAY SCREEN |
| COMPUTER USER INTERFACE FOR A DISPLAY SCREEN |
| COMPUTER USER INTERFACE FOR A DISPLAY SCREEN |
| COMPUTER USER INTERFACE FOR A DISPLAY SCREEN |
| COMPUTER USER INTERFACE FOR A DISPLAY SCREEN |
| IN-STORE DISPLAY SIGN |
| USER INTERFACE FOR A SCHEDULER |
| COMPUTER DISPLAY SCREEN PORTION WITH GRAPHICAL USER INTERFACE FOR MANAGING A COMPUTER SUPPORTED TO-DO-LIST |
| HOLSTER FOR A MOBILE DEVICE |
| SHOE SOLE INSERT |
| SHOE OUTSOLE AND INSERT |
| SHOE MIDSOLE AND INSERT |
| SHOE OUTSOLE |
| DISPLAY SCREEN OR PORTION THEREOF WITH AN ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH AN ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH AN ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH AN ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH A SET OF ICONS |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH A SET OF ICONS |
| DISPLAY SCREEN OR PORTION THEREOF WITH AN ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |

FILED DATE: 5/19/2021 1:27 PM                                                                    2020L012403

| |
|---|
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH AN ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH ANIMATED GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH AN ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH AN ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH AN ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH AN ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH AN ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH AN ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH AN ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH AN ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH AN ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH AN ICON |

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| |
|---|
| DISPLAY SCREEN OR PORTION THEREOF WITH AN ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH AN ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH A SET OF ICONS |
| DISPLAY SCREEN OR PORTION THEREOF WITH AN ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH AN ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH AN ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH AN ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH TRANSITIONAL GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH TRANSITIONAL GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH TRANSITIONAL GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH TRANSITIONAL GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH TRANSITIONAL GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH TRANSITIONAL GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH TRANSITIONAL GRAPHICAL USER INTERFACE |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A Pg 941 of 1450

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| |
|---|
| DISPLAY SCREEN OR PORTION THEREOF WITH TRANSITIONAL GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH A SET OF ICONS |
| DISPLAY SCREEN OR PORTION THEREOF WITH AN ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH TRANSITIONAL GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH AN ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| SOCIAL NETWORK SEARCHING WITH BREADCRUMBS |
| ESTABLISHING A BUYER/SERVICE PROVIDER RELATIONSHIP ELECTRONICALLY |
| PROFILING SERVICE PROVIDER COMPANIES & TECHNICIANS |
| SYSTEM AND METHOD FOR MAKING THIRD PARTY PICKUP AVAILABLE TO RETAIL CUSTOMERS |
| SYSTEM AND METHOD FOR HANDLING AN OFFER TO PURCHASE A FOLLOWED ITEM |
| GROUPING SERVICE ORDERS IN AN ELECTRONIC SERVICES MARKETPLACE |
| ONLINE SOCIAL NETWORKING SYSTEM FOR CONDUCTING COMMERCE |
| SYSTEMS AND METHODS FOR PROVIDING A MULTI-CHANNEL RETAIL LAYAWAY SERVICE |
| SYSTEM AND METHOD FOR USING DATA POINTS COLLECTED FROM A CUSTOMER TO PROVIDE CUSTOMER SPECIFIC OFFERINGS |
| SYSTEM AND METHOD FOR USING DATA POINTS COLLECTED FROM A CUSTOMER TO PROVIDE CUSTOMER SPECIFIC OFFERINGS |
| SYSTEMS AND METHODS FOR DISTRIBUTING CUSTOMIZABLE AND SHAREABLE TIERED OFFERS |
| SYSTEM AND METHOD FOR PROVIDING LOCALIZED PRODUCT OFFERINGS PUBLICATIONS |
| SYSTEMS AND METHODS FOR MANAGING RETURNS OR EXCHANGES MADE VIA A COMPUTER NETWORK |
| METHODS AND SYSTEMS FOR CONNECTED SALES ASSOCIATE SERVICES |
| METHODS AND SYSTEMS FOR PROVIDING ONLINE GROUP SHOPPING SERVICES |

FILED DATE: 5/19/2021 1:27 PM     2020L012403

| |
|---|
| GIFT REGISTRY |
| METHODS AND SYSTEMS FOR REPORTING ORGANIZATIONAL HIERARCHY |
| SYSTEMS AND METHODS FOR DETERMINING OFFER ELIGIBILITY USING A PREDICATE LOGIC TREE AGAINST SETS OF INPUT DATA |
| METHOD AND SYSTEM FOR EMERGENT DATA PROCESSING |
| CONTESTS AND SWEEPSTAKES |
| OUT-OF-STORE PURCHASE ROUTING SYSTEMS, METHODS, AND MEDIA |
| SYSTEMS AND METHODS FOR PROVIDING AN E-COMMERCE SLIP CART |
| SYSTEMS AND METHODS FOR MANAGING LAYAWAY PAYMENTS |
| ORDER FULFILLMENT SYSTEMS AND METHODS WITH CUSTOMER LOCATION TRACKING |
| METHODS AND SYSTEMS FOR AN E-COMMERCE PROMOTIONS PLATFORM |
| METHOD AND SYSTEM FOR PROVIDING ALTERNATIVE RESULT FOR AN ONLINE SEARCH PREVIOUSLY NO RESULT |
| METHOD AND SYSTEM FOR GESTURE-BASED CROSS CHANNEL COMMERCE AND MARKETING |
| SALES PROMOTION USING PRODUCT COMPARISON |
| APPLICATIONS ON TOP OF A WEB SITE |
| SOCIAL PRODUCT PROMOTION |
| SCALABLE TRAINING |
| PROXIMITY NAVIGATION |
| TRUCK INVENTORY LOCATOR |
| E-PUB CREATOR |
| SYSTEMS AND METHODS FOR PROVIDING AND ACCESSING VISUAL PRODUCT REPRESENTATIONS PROJECT |
| JOINT GIFT REGISTRY |
| LEARNING MANAGEMENT SYSTEM |
| CONSUMER GAME SYSTEM |
| PLANOGRAM ATTRIBUTE RESOLUTION |
| METHOD AND SYSTEM FOR OPTIMIZING VALUE OF CONSUMER OFFERS |
| METHOD AND SYSTEM FOR MIGRATING DATA BETWEEN SYSTEMS WITHOUT DOWNTIME |

FILED DATE: 5/19/2021 1:27 PM        2020L012403

| METHOD AND SYSTEM FOR USING SOCIAL MEDIA FOR PREDICTIVE ANALYTICS IN AVAILABLE-TO-PR SYSTEMS |
| DISPLAY SCREEN OR PORTION THEREOF WITH A SET OF ICONS |
| METHOD AND SYSTEM FOR CREATING STEP BY STEP PROJECTS |
| WIRELESS IDENTIFIER DEVICE ENABLED INTERACTIVE CONSUMER EXPERIENCE |
| CONSUMER GAME |
| METHOD AND SYSTEM FOR AUTOMATED SELECTION OF TARGETED PRIZES |
| METHOD AND SYSTEM FOR DETERMINING LEVEL OF INFLUENCE IN A SOCIAL E-COMMERCE ENVIRO |
| PRODUCT AND CONTENT ASSOCIATION |
| HEURISTIC CUSTOMER CLUSTERING |
| CUSTOMER CLUSTERING USING INTEGER PROGRAMMING |
| SYSTEM AND METHOD FOR PERSONALIZED ADD-ON PURCHASE |
| SYSTEM AND METHOD FOR PROVIDING DYNAMIC PRODUCT OFFERINGS |
| MERCHANDISE PICKUP SYSTEM, METHOD, AND MEDIA FOR ALLIED MERCHANTS |
| MERCHANDISE RETURN AND/OR EXCHANGE SYSTEMS, METHODS, AND MEDIA |
| SYSTEM AND METHOD PROVIDING EXPERT AUDIENCE TARGETING |
| METHOD AND SYSTEM FOR AUTOMATED TARGETED POLLING VIA AN E-COMMERCE PROMOTIONS PL |
| SYSTEM AND METHOD PROVIDING PERSONALIZED RECOMMENDATIONS |
| MEMBER PROFILES AND ASSOCIATED SYSTEMS, METHODS, AND MEDIA |
| METHODS AND SYSTEMS SUPPORTING CROWD-SOURCED PROXY SHOPPING VIA AN E-COMMER PLATFORM |
| LOYALTY PROGRAM SYSTEM, APPARATUS, AND MEDIA |
| SYSTEM AND METHOD FOR USING CROWDSOURCED PERSONALIZED RECOMMENDATIONS |
| SYSTEM AND METHOD FOR ON-LINE GAME BASED ON CONSUMER WISH LIST |
| REQUEST FULFILLMENT SYSTEM, METHOD, AND MEDIA |
| METHOD AND SYSTEM ENABLING CROWDSOURCED PEER TO PEER PRODUCT RENTAL |
| METHOD AND SYSTEM FOR PROVIDING BENEFITS TO RETAIL CONSUMERS |
| DISPLAY SCREEN OR PORTION THEREOF WITH ICON |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 716 of 1150

---

AIR AGITATOR NOZZLE SYSTEM

---

No representation or warranty is made with respect to the Patents denoted with an asterisk.

18-23538-shl Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM      2020L012403

| Country | Status | Application Number | Application Date |
|---|---|---|---|
| Australia | FILED | 2013274744 | 05/29/2013 |
| Australia | FILED | 2018256665 | 05/29/2013 |
| Australia | FILED | 2015215908 | 08/20/2015 |
| Australia | DOCKETED | | |
| Australia | DOCKETED | | |
| Australia | DOCKETED | | |
| Brazil | DOCKETED | | |
| Brazil | DOCKETED | | |
| Brazil | DOCKETED | | |
| Canada | FILED | 2883081 | 05/02/2013 |
| Canada | GRANTED | 2715547 | 09/27/2010 |
| Canada | FILED | 2714783 | 09/14/2010 |
| Canada | GRANTED | 2744629 | 06/28/2011 |
| Canada | GRANTED | 2756215 | 10/24/2011 |
| Canada | GRANTED | 2756174 | 10/24/2011 |
| Canada | FILED | 2771743 | 03/19/2012 |
| Canada | FILED | 2853789 | 10/19/2012 |
| Canada | GRANTED | 2771745 | 03/19/2012 |
| Canada | FILED | 2860020 | 01/29/2013 |
| Canada | FILED | 2853459 | 10/19/2012 |
| Canada | GRANTED | 2792131 | 10/11/2012 |
| Canada | FILED | 2862861 | 02/01/2013 |
| Canada | FILED | 2880895 | 04/08/2013 |
| Canada | GRANTED | 147791 | 10/04/2012 |
| Canada | GRANTED | 147792 | 10/04/2012 |

FILED DATE: 5/19/2021 1:27 PM       2020L012403

| Canada | GRANTED | 147793 | 10/04/2012 |
| Canada | GRANTED | 147794 | 10/04/2012 |
| Canada | FILED | 2878463 | 04/09/2013 |
| Canada | FILED | 2841332 | 01/30/2014 |
| Canada | GRANTED | 148884 | 12/04/2012 |
| Canada | FILED | 2876423 | 05/29/2013 |
| Canada | FILED | 2880492 | 08/01/2013 |
| Canada | GRANTED | 2853539 | 06/05/2014 |
| Canada | GRANTED | 2853029 | 05/30/2014 |
| Canada | GRANTED | 2855476 | 07/02/2014 |
| Canada | FILED | 2853035 | 05/30/2014 |
| Canada | FILED | 2846025 | 03/13/2014 |
| Canada | GRANTED | 2845268 | 03/10/2014 |
| Canada | FILED | 2850938 | 05/05/2014 |
| Canada | GRANTED | 153722 | 11/01/2013 |
| Canada | GRANTED | 153721 | 11/01/2013 |
| Canada | GRANTED | 153723 | 11/01/2013 |
| Canada | FILED | 2868196 | 10/21/2014 |
| Canada | GRANTED | 2869053 | 10/30/2014 |
| Canada | FILED | 2935414 | 01/05/2015 |
| Canada | FILED | 2880206 | 01/27/2015 |
| Canada | FILED | 2874614 | 12/12/2014 |
| Canada | GRANTED | 2901395 | 08/24/2015 |
| Canada | FILED | 2898218 | 07/23/2015 |
| Canada | FILED | 2907052 | 10/05/2015 |
| Canada | FILED | 2936121 | 07/14/2016 |

18-23538-shl Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A Pg 919 of 1150

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | | | |
|---|---|---|---|
| Canada | DOCKETED | | |
| Canada | DOCKETED | | |
| Canada | DOCKETED | | |
| Canada | DOCKETED | | |
| China P.R. | FILED | 2014105156514 | 09/29/2014 |
| China P.R. | DOCKETED | | |
| China P.R. | DOCKETED | | |
| China P.R. | FILED | 2018306626893 | 11/21/2018 |
| China P.R. | FILED | 2018306627330 | 11/21/2018 |
| EPC | FILED | 13784468.4 | 05/02/2013 |
| EPC | FILED | 18206602.7 | 05/02/2013 |
| EPC | FILED | 13744232.3 | 02/01/2013 |
| EPC | FILED | 13776283.7 | 04/08/2013 |
| EPC | FILED | 13776245.6 | 04/09/2013 |
| EPC | FILED | 14153301.8 | 01/30/2014 |
| EPC | FILED | 13804077.9 | 05/29/2013 |
| EPC | FILED | 13831386.1 | 08/07/2013 |
| EPC | FILED | 14158945.7 | 03/11/2014 |
| EPC | FILED | 15182750.8 | 08/27/2015 |
| EPC | FILED | 15157798.8 | 03/05/2015 |
| European Community Design | GRANTED | 001388631-0001 | 11/01/2013 |
| European Community Design | GRANTED | 001388631-0002 | 11/01/2013 |
| European Community Design | GRANTED | 001388631-0003 | 11/01/2013 |
| European Community Design | GRANTED | 001388631-0004 | 11/01/2013 |
| European Community Design | GRANTED | 001388631-0005 | 11/01/2013 |
| European Community Design | GRANTED | 001388631-0006 | 11/01/2013 |

18-23538-shl Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A Pg 948 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | | |
|---|---|---|---|
| European Community Design | DOCKETED | | |
| European Community Design | DOCKETED | | |
| European Community Design | DOCKETED | | |
| European Community Design | DOCKETED | | |
| India | FILED | 6458/DELNP/2014 | 02/01/2013 |
| India | FILED | 199/DELNP/2015 | 07/01/2013 |
| India | FILED | 2046/DEL/2014 | 07/19/2014 |
| India | FILED | 3718/DEL/2015 | 11/13/2015 |
| India | FILED | 201614008678 | 03/11/2016 |
| Mexico | GRANTED | MX/a/2014/012278 | 04/09/2013 |
| Mexico | FILED | MX/a/2014/002932 | 03/11/2014 |
| Mexico | FILED | MX/a/2015/009659 | 07/27/2015 |
| Mexico | FILED | MX/a/2016/009277 | 07/15/2016 |
| Mexico | DOCKETED | | |
| Mexico | DOCKETED | | |
| Mexico | DOCKETED | | |
| Mexico | DOCKETED | | |
| PCT | FILED | PCT/US2013/039307 | 05/02/2013 |
| PCT | FILED | PCT/US2012/061021 | 10/19/2012 |
| PCT | FILED | PCT/US2013/023551 | 01/29/2013 |
| PCT | FILED | PCT/US2013/023563 | 01/29/2013 |
| PCT | FILED | PCT/US2012/061024 | 10/19/2012 |
| PCT | FILED | PCT/US2012/069064 | 12/12/2012 |
| PCT | FILED | PCT/US2013/024326 | 02/01/2013 |
| PCT | FILED | PCT/US2013/035591 | 04/08/2013 |
| PCT | FILED | PCT/US2013/035708 | 04/09/2013 |

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| PCT | FILED | PCT/US2013/042994 | 05/29/2013 |
|---|---|---|---|
| PCT | FILED | PCT/US2013/053218 | 08/01/2013 |
| PCT | FILED | PCT/US2013/048926 | 07/01/2013 |
| PCT | FILED | PCT/US2013/053968 | 08/07/2013 |
| PCT | FILED | PCT/US2015/010150 | 01/05/2015 |
| PCT | FILED | PCT/US2017/051144 | 09/12/2017 |
| South Africa | FILED | A2018/01740 | 11/12/2018 |
| South Africa | FILED | A2018/01741 | 11/12/2018 |
| South Africa | FILED | A2018/01736 | 11/12/2018 |
| South Africa | FILED | A2018/01742 | 11/12/2018 |
| Australia | | | |
| EPC | | 14199354.3* | 12/19/2014 |
| Mexico | | MX/a/2015/014120* | 10/07/2015 |
| PCT | | PCT/US2015/060982* | 11/17/2015 |
| PCT | | PCT/US2015/059175* | 11/05/2015 |

*- items denoted with an asterisk are assigned solely to the

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 952 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| Patent Number | Grant Date | Owner |
|---|---|---|
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| 2715547 | 01/02/2018 | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| 2744629 | 10/11/2016 | SEARS BRANDS, L.L.C. |
| 2756215 | 02/28/2017 | SEARS BRANDS, L.L.C. |
| 2756174 | 11/08/2016 | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| 2771745 | 10/11/2016 | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| 2792131 | 10/25/2016 | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| 147791 | 10/10/2013 | SEARS BRANDS, L.L.C. |
| 147792 | 10/10/2013 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | | |
|---|---|---|
| 147793 | 10/10/2013 | SEARS BRANDS, L.L.C. |
| 147794 | 10/10/2013 | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| 148884 | 07/24/2014 | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| 2853539 | 11/07/2017 | SEARS BRANDS, L.L.C. |
| 2853029 | 10/24/2017 | SEARS BRANDS, L.L.C. |
| 2855476 | 01/03/2017 | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| 2845268 | 03/28/2017 | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| 153722 | 08/18/2014 | SEARS BRANDS, L.L.C. |
| 153721 | 08/18/2014 | SEARS BRANDS, L.L.C. |
| 153723 | 08/18/2014 | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| 2869053 | 01/02/2018 | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| 2901395 | 10/24/2017 | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

|  |  |  |
|---|---|---|
|  |  | SEARS BRANDS, L.L.C. |
|  |  | SEARS BRANDS, L.L.C. |
|  |  | SEARS BRANDS, L.L.C. |
|  |  | SEARS BRANDS, L.L.C. |
|  |  | SEARS BRANDS, L.L.C. |
|  |  | SEARS BRANDS, L.L.C. |
|  |  | SEARS BRANDS, L.L.C. |
|  |  | SEARS BRANDS, L.L.C. |
|  |  | SEARS BRANDS, L.L.C. |
|  |  | SEARS BRANDS, L.L.C. |
|  |  | SEARS BRANDS, L.L.C. |
|  |  | SEARS BRANDS, L.L.C. |
|  |  | SEARS BRANDS, L.L.C. |
|  |  | SEARS BRANDS, L.L.C. |
|  |  | SEARS BRANDS, L.L.C. |
|  |  | SEARS BRANDS, L.L.C. |
|  |  | SEARS BRANDS, L.L.C. |
|  |  | SEARS BRANDS, L.L.C. |
|  |  | SEARS BRANDS, L.L.C. |
|  |  | SEARS BRANDS, L.L.C. |
| 001388631-0001 | 11/01/2013 | SEARS BRANDS, L.L.C. |
| 001388631-0002 | 11/01/2013 | SEARS BRANDS, L.L.C. |
| 001388631-0003 | 11/01/2013 | SEARS BRANDS, L.L.C. |
| 001388631-0004 | 11/01/2013 | SEARS BRANDS, L.L.C. |
| 001388631-0005 | 11/01/2013 | SEARS BRANDS, L.L.C. |
| 001388631-0006 | 11/01/2013 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | |
|---|---|---|
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| 2046/DEL/2014 | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| n/a | 05/04/2018 | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | |
|---|---|---|
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| 150144* | 12/16/2002 | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |
| | | SEARS BRANDS, L.L.C. |

e extent of Sellers' right, title or interest therein.  No representatic

18-23538-rdd   Doc 2307-1   Filed 02/06/19   Entered 02/06/19 16:44:31   Exhibit A

FILED DATE: 5/19/2021 1:27 PM                    2020L012403

| Title |
|-------|
| SYSTEMS AND METHODS FOR DETERMINING OFFER ELIGIBILITY USING A PREDICATE LOGIC TREE AGAINST SETS OF INPUT DATA |
| SYSTEMS AND METHODS FOR DETERMINING OFFER ELIGIBILITY USING A PREDICATE LOGIC TREE AGAINST SETS OF INPUT DATA |
| MATCHING MOBILE DEVICE TO TRANSACTION AND/OR CUSTOMER ACCOUNT |
| STAND MIXER |
| MIXER BOWL |
| MIXER SPLASH GUARD |
| STAND MIXER |
| MIXER BOWL |
| MIXER SPLASH GUARD |
| OBJECT DRIVEN NEWSFEED |
| SYSTEM AND METHOD FOR USING A MOBILE DEVICE TO FOLLOW A PRICE FOR AN ITEM |
| SYSTEMS AND METHODS FOR USING A SOCIAL NETWORK TO PROVIDE PRODUCT RELATED INFORMATION |
| SYSTEMS AND METHODS FOR PROVIDING A MULTI-CHANNEL RETAIL LAYAWAY SERVICE |
| SYSTEM AND METHOD FOR FACILITATING THE PURCHASE OF PRODUCTS DETERMINED TO BE USEFUL IN THE PERFORMANCE OF A TASK |
| SYSTEM AND METHOD FOR PROVIDING A STREAMLINED CHECKOUT PROCESS |
| METHODS AND SYSTEMS FOR DEVICE MANAGEMENT WITH SHARING AND PROGRAMMING CAPABILITIES |
| SYSTEM AND METHOD FOR USING DATA POINTS COLLECTED FROM A CUSTOMER TO PROVIDE CUSTOMER SPECIFIC OFFERINGS |
| METHODS AND SYSTEMS FOR COUPON SERVICE APPLICATIONS |
| METHODS AND SYSTEMS FOR PROVIDING PERSONAL SHOPPING SERVICES |
| SYSTEMS AND METHODS FOR DISTRIBUTING CUSTOMIZABLE AND SHAREABLE TIERED OFFERS |
| SYSTEMS AND METHODS FOR PROVIDING A DISTRIBUTED MOBILE CALL CENTER FOR A SERVICE ESTABLISHMENT |
| SYSTEMS AND METHOD FOR CREATING AND MANAGING MARKETING APPLICATIONS, EVENTS, PROMOTIONS, AND PUBLICATIONS |
| SYSTEM AND METHOD FOR PRESENTING PRODUCT RECOMMENDATIONS |
| COMBINED SHOE OUTSOLE AND INSERT |
| SHOE SOLE INSERT |

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A

| |
|---|
| SHOE OUTSOLE |
| COMBINED SHOE OUTSOLE AND INSERT |
| METHODS AND SYSTEMS FOR PROVIDING ONLINE GROUP SHOPPING SERVICES |
| CUSTOMER ASSISTANCE PLATFORM |
| HOLSTER FOR A MOBILE DEVICE |
| SYSTEMS AND METHODS FOR DETERMINING OFFER ELIGIBILITY USING A PREDICATE LOGIC TREE AGAINST SETS OF INPUT DATA |
| CONTESTS AND SWEEPSTAKES |
| SYSTEMS AND METHODS FOR PROVIDING AN E-COMMERCE SLIP CART |
| ORDER FULFILLMENT SYSTEMS AND METHODS WITH CUSTOMER LOCATION TRACKING |
| METHODS AND SYSTEMS FOR SWEEPSTAKES PLATFORM |
| SYSTEMS AND METHODS FOR SCAN, TRY AND BUY |
| RECOMMENDATIONS BASED ON EXPLICIT USER SIMILARITY |
| SYSTEMS AND METHODS FOR PROVIDING AND ACCESSING VISUAL PRODUCT REPRESENTATIONS OF A PROJECT |
| LEARNING MANAGEMENT SYSTEM |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH AN ICON |
| METHOD AND SYSTEM FOR OPTIMIZING VALUE OF CONSUMER OFFERS |
| METHOD AND SYSTEM FOR CREATING STEP BY STEP PROJECTS |
| CONSUMER GAME |
| METHOD AND SYSTEM FOR AUTOMATED SELECTION OF TARGETED PRIZES |
| PRODUCT AND CONTENT ASSOCIATION |
| MATCHING MOBILE DEVICE TO TRANSACTION AND/OR CUSTOMER ACCOUNT |
| METHOD AND SYSTEM FOR AUTOMATED TARGETED POLLING VIA AN E-COMMERCE PROMOTIONS PLATFORM |
| MEMBER PROFILES AND ASSOCIATED SYSTEMS, METHODS, AND MEDIA |
| SYSTEM AND METHOD FOR ON-LINE GAME BASED ON CONSUMER WISH LIST |

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 529 of 1120

FILED DATE: 5/19/2021 1:27 PM                2020L012403

| |
|---|
| STAND MIXER |
| OVATION STAND MIXER |
| MIXER BOWL |
| MIXER SPLASH GUARD |
| METHOD AND SYSTEM FOR USING SOCIAL MEDIA FOR PREDICTIVE ANALYTICS IN AVAILABLE-TO-PROMISE SYSTEMS |
| STAND MIXER |
| OVATION STAND MIXER |
| MIXER BOWL |
| SPLASH GUARD |
| OBJECT DRIVEN NEWSFEED |
| OBJECT DRIVEN NEWSFEED |
| SYSTEMS AND METHOD FOR CREATING AND MANAGING MARKETING APPLICATIONS, EVENTS, PROMOTIONS, AND PUBLICATIONS |
| SYSTEM AND METHOD FOR PRESENTING PRODUCT RECOMMENDATIONS |
| METHODS AND SYSTEMS FOR PROVIDING ONLINE GROUP SHOPPING SERVICES |
| CUSTOMER ASSISTANCE PLATFORM |
| SYSTEMS AND METHODS FOR DETERMINING OFFER ELIGIBILITY USING A PREDICATE LOGIC TREE AGAINST SETS OF INPUT DATA |
| METHODS AND SYSTEMS FOR STAGING AND PROPAGATING DATA |
| SYSTEMS AND METHODS FOR PROVIDING AND ACCESSING VISUAL PRODUCT REPRESENTATIONS OF A PROJECT |
| MATCHING MOBILE DEVICE TO TRANSACTION AND/OR CUSTOMER ACCOUNT |
| SYSTEM AND METHOD PROVIDING EXPERT AUDIENCE TARGETING |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH GRAPHICAL USER INTERFACE |
| DISPLAY SCREEN OR PORTION THEREOF WITH AN ICON |
| DISPLAY SCREEN OR PORTION THEREOF WITH AN ICON |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| |
|---|
| STAND MIXER |
| OVATION STAND MIXER |
| MIXER BOWL |
| MIXER SPLASH GUARD |
| SYSTEMS AND METHOD FOR CREATING AND MANAGING MARKETING APPLICATIONS, EVENTS, PROMOTIONS, AND PUBLICATIONS |
| SYSTEM AND METHOD FOR ECONOMICAL MIGRATION OF LEGACY APPLICATIONS FROM MAINFRAME AND DISTRIBUTED PLATFORMS |
| METHOD AND SYSTEM FOR MIGRATING DATA BETWEEN SYSTEMS WITHOUT DOWNTIME |
| METHODS AND SYSTEMS SUPPORTING CROWD-SOURCED PROXY SHOPPING VIA AN E-COMMERCE PLATFORM |
| LOYALTY PROGRAM SYSTEM, APPARATUS, AND MEDIA |
| METHODS AND SYSTEMS FOR PROVIDING ONLINE GROUP SHOPPING SERVICES |
| SYSTEMS AND METHODS FOR PROVIDING AND ACCESSING VISUAL PRODUCT REPRESENTATIONS OF A PROJECT |
| METHOD AND SYSTEM FOR AUTOMATED TARGETED POLLING VIA AN E-COMMERCE PROMOTIONS PLATFORM |
| SYSTEM AND METHOD FOR ON-LINE GAME BASED ON CONSUMER WISH LIST |
| STAND MIXER |
| OVATION STAND MIXER |
| MIXER BOWL |
| MIXER SPLASH GUARD |
| OBJECT DRIVEN NEWSFEED |
| SYSTEM AND METHOD FOR USING DATA POINTS COLLECTED FROM A CUSTOMER TO PROVIDE CUSTOMER SPECIFIC OFFERINGS |
| SYSTEMS AND METHODS FOR DISCLOSING TARGET ELEMENTS IN HIGH DEFINITION IMAGES |
| METHODS AND SYSTEMS FOR PROVIDING PERSONAL SHOPPING SERVICES |
| SHAREABLE TIERED OFFERS |
| SYSTEMS AND METHODS FOR DISTRIBUTING CUSTOMIZABLE AND SHAREABLE TIERED OFFERS |
| SYSTEMS AND METHOD FOR CREATING AND MANAGING MARKETING APPLICATIONS, EVENTS, PROMOTIONS, AND PUBLICATIONS |
| SYSTEM AND METHOD FOR PRESENTING PRODUCT RECOMMENDATIONS |
| METHODS AND SYSTEMS FOR PROVIDING ONLINE GROUP SHOPPING SERVICES |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| SYSTEMS AND METHODS FOR DETERMINING OFFER ELIGIBILITY USING A PREDICATE LOGIC TREE AGAINST SETS OF INPUT DATA |
| :---: |
| CONTESTS AND SWEEPSTAKES |
| SYSTEM AND METHOD FOR ECONOMICAL MIGRATION OF LEGACY APPLICATIONS FROM MAINFRAME AND DISTRIBUTED PLATFORMS |
| METHODS AND SYSTEMS FOR STAGING AND PROPAGATING DATA |
| CONSUMER GAME |
| REFRIGERATION DEVICE WITH GESTURE-CONTROLLED DISPENSER |
| STAND MIXER |
| STAND MIXER |
| MIXER BOWL |
| MIXER SPLASH GUARD |
| INSOLE CUSHION |
| METHOD AND SYSTEM FOR CREATING STEP BY STEP PROJECTS |
| MEMBER PROFILES AND ASSOCIATED SYSTEMS, METHODS, AND MEDIA |
| SENSOR FOR DETECTING PRESENSE, OCCUPANCY, AND/OR MOTION AND RELATED SYSTEMS AND METHODS |
| WATER SENSORS WITH MULTI-VALUE OUTPUTS AND ASSOCIATED SYSTEMS AND METHODS |

on or warranty is made with respect to the Patents denoted with an asterisk.

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Country | Application Number | Application Date | Patent Number | Grant Date |
|---|---|---|---|---|
| United States | 15/967017 | 04/30/2018 | | |
| United States | 16/020237 | 06/27/2018 | | |
| United States | 16/158952 | 10/12/2018 | | |
| United States | 62/594472 | 12/04/2017 | | |
| United States | 62/593593 | 12/01/2017 | | |
| United States | 16/012317 | 06/19/2018 | | |
| United States | 29/648576 | 05/22/2018 | | |
| United States | 29/648578 | 05/22/2018 | | |
| United States | 29/648579 | 05/22/2018 | | |
| United States | 29/663880 | 09/19/2018 | | |
| United States | 29/663882 | 09/19/2018 | | |
| United States | 29/664089 | 09/21/2018 | | |
| United States | 13/998540 | 11/07/2013 | | |
| United States | 13/735865 | 01/07/2013 | | |
| United States | 13/953436 | 07/29/2013 | | |
| United States | 16/029902 | 07/09/2018 | | |
| United States | 14/559692 | 12/03/2014 | | |
| United States | 14/927932 | 10/30/2015 | | |
| United States | 15/820664 | 11/22/2017 | | |
| United States | 14/980369 | 12/28/2015 | | |
| United States | 15/041434 | 02/11/2016 | | |
| United States | 15/413664 | 01/24/2017 | | |
| United States | 15/471514 | 03/28/2017 | | |
| United States | 15/486130 | 04/12/2017 | | |
| United States | 15/486148 | 04/12/2017 | | |

18-23538-shl    Doc 9507    Filed 02/08/19    Entered 02/08/19 16:14:31    Exhibit A
Pg 961 of 1450

FILED DATE: 5/19/2021 1:27 PM        2020L012403

| United States | 15/581843 | 04/28/2017 | | |
| United States | 14/517640 | 10/17/2014 | | |
| United States | 13/438592 | 04/03/2012 | | |
| United States | 15/205298 | 07/08/2016 | | |
| United States | 15/408686 | 01/18/2017 | | |
| United States | 09/161335 | 09/25/1998 | 6202425 | 03/20/2001 |
| United States | 12/778269 | 05/12/2010 | 8349430 | 01/08/2013 |
| United States | 12/476721 | 06/02/2009 | 8362906 | 01/29/2013 |
| United States | 12/728389 | 03/22/2010 | 8397406 | 03/19/2013 |
| United States | 13/692321 | 12/03/2012 | 8558686 | 10/15/2013 |
| United States | 12/841592 | 07/22/2010 | 8683645 | 04/01/2014 |
| United States | 13/692016 | 12/03/2012 | 8752311 | 06/17/2014 |
| United States | 13/351918 | 01/17/2012 | 8761361 | 06/24/2014 |
| United States | 12/851340 | 08/05/2010 | 8813287 | 08/26/2014 |
| United States | 12/951883 | 11/22/2010 | 8876366 | 11/04/2014 |
| United States | 13/421603 | 03/15/2012 | 9129302 | 09/08/2015 |
| United States | 13/351880 | 01/17/2012 | 9203263 | 12/01/2015 |
| United States | 13/661762 | 10/26/2012 | 9206985 | 12/08/2015 |
| United States | 13/283943 | 10/28/2011 | 9225766 | 12/29/2015 |
| United States | 13/421423 | 03/15/2012 | 9438678 | 09/06/2016 |
| United States | 13/834157 | 03/15/2013 | 9474430 | 10/25/2016 |
| United States | 12/852250 | 08/06/2010 | 9585520 | 03/07/2017 |
| United States | 14/332136 | 07/15/2014 | 9617675 | 04/11/2017 |
| United States | 15/355551 | 11/18/2016 | 9774195 | 09/26/2017 |
| United States | 14/840893 | 08/31/2015 | 9778010 | 10/03/2017 |
| United States | 14/970047 | 12/15/2015 | 9810524 | 11/07/2017 |

18-23538-shl    Doc 9507    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 954 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| United States | 15/000486 | 01/19/2016 | 9844175 | 12/19/2017 |
|---|---|---|---|---|
| United States | 13/462474 | 05/02/2012 | 9953278 | 04/24/2018 |
| United States | 14/491703 | 09/19/2014 | 9958893 | 05/01/2018 |
| United States | 15/485930 | 04/12/2017 | 9970229 | 05/15/2018 |
| United States | 15/260635 | 09/09/2016 | 10010955 | 07/03/2018 |
| United States | 14/146450 | 01/02/2014 | 10027078 | 07/17/2018 |
| United States | 15/147588 | 05/05/2016 | 10036588 | 07/31/2018 |
| United States | 15/355345 | 11/18/2016 | 10128668 | 11/13/2018 |
| United States | 29/321001 | 07/09/2008 | D593509 | 06/02/2009 |
| United States | 29/320998 | 07/09/2008 | D594423 | 06/16/2009 |
| United States | 29/321000 | 07/09/2008 | D595670 | 07/07/2009 |
| United States | 29/321004 | 07/09/2008 | D595671 | 07/07/2009 |
| United States | 29/320999 | 07/09/2008 | D597038 | 07/28/2009 |
| United States | 29/321002 | 07/09/2008 | D600216 | 09/15/2009 |
| United States | 29/341573 | 08/07/2009 | D612195 | 03/23/2010 |
| United States | 29/341569 | 08/07/2009 | D613009 | 03/30/2010 |
| United States | 29/343685 | 09/17/2009 | D614012 | 04/20/2010 |
| United States | 29/343694 | 09/17/2009 | D614013 | 04/20/2010 |
| United States | 29/335848 | 04/23/2009 | D614925 | 05/04/2010 |
| United States | 29/341605 | 08/10/2009 | D617512 | 06/08/2010 |
| United States | 29/341604 | 08/10/2009 | D618871 | 06/29/2010 |
| United States | 29/355331 | 02/05/2010 | D623468 | 09/14/2010 |
| United States | 29/366653 | 07/28/2010 | D631691 | 02/01/2011 |
| United States | 29/368384 | 08/23/2010 | D645484 | 09/20/2011 |
| United States | 29/341572 | 08/07/2009 | D646859 | 10/11/2011 |
| United States | 29/368385 | 08/23/2010 | D654516 | 02/21/2012 |

18-23538-shl Doc 9648-7 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 963 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| United States | 29/385306 | 02/11/2011 | D654757 | 02/28/2012 |
| United States | 29/385309 | 02/11/2011 | D654758 | 02/28/2012 |
| United States | 29/390665 | 04/28/2011 | D683739 | 06/04/2013 |
| United States | 29/390667 | 04/28/2011 | D683740 | 06/04/2013 |
| United States | 29/446428 | 02/22/2013 | D693175 | 11/12/2013 |
| United States | 29/446430 | 02/22/2013 | D694581 | 12/03/2013 |
| United States | 29/391504 | 05/10/2011 | D695977 | 12/17/2013 |
| United States | 29/449478 | 03/15/2013 | D709725 | 07/29/2014 |
| United States | 29/468858 | 10/03/2013 | D715044 | 10/14/2014 |
| United States | 29/341555 | 08/07/2009 | D721918 | 02/03/2015 |
| United States | 29/448645 | 03/13/2013 | D739618 | 09/22/2015 |
| United States | 29/528358 | 05/28/2015 | D764230 | 08/23/2016 |
| United States | 29/528307 | 05/28/2015 | D764890 | 08/30/2016 |
| United States | 29/528342 | 05/28/2015 | D765459 | 09/06/2016 |
| United States | 29/528308 | 05/28/2015 | D767326 | 09/27/2016 |
| United States | 29/528304 | 05/28/2015 | D767648 | 09/27/2016 |
| United States | 29/528367 | 05/28/2015 | D769673 | 10/25/2016 |
| United States | 29/528397 | 05/28/2015 | D770839 | 11/08/2016 |
| United States | 29/528382 | 05/28/2015 | D773232 | 12/06/2016 |
| United States | 29/528339 | 05/28/2015 | D773917 | 12/13/2016 |
| United States | 29/528355 | 05/28/2015 | D776703 | 01/17/2017 |
| United States | 29/528311 | 05/28/2015 | D778099 | 02/07/2017 |
| United States | 29/528310 | 05/28/2015 | D778111 | 02/07/2017 |
| United States | 29/568155 | 06/15/2016 | D779303 | 02/21/2017 |
| United States | 29/528374 | 05/28/2015 | D781127 | 03/14/2017 |
| United States | 29/465402 | 08/27/2013 | D781510 | 03/14/2017 |

18-23538-shl   Doc 9507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 964 of 1450

| United States | 29/528384 | 05/28/2015 | D781648 | 03/21/2017 |
| United States | 29/528337 | 05/28/2015 | D782873 | 04/04/2017 |
| United States | 29/569849 | 06/30/2016 | D786651 | 05/16/2017 |
| United States | 29/528402 | 05/28/2015 | D789740 | 06/20/2017 |
| United States | 29/528371 | 05/28/2015 | D790946 | 07/04/2017 |
| United States | 29/571792 | 07/21/2016 | D795312 | 08/22/2017 |
| United States | 29/528391 | 05/28/2015 | D797504 | 09/19/2017 |
| United States | 29/528377 | 05/28/2015 | D798108 | 09/26/2017 |
| United States | 29/528345 | 05/28/2015 | D798661 | 10/03/2017 |
| United States | 29/528347 | 05/28/2015 | D798662 | 10/03/2017 |
| United States | 29/573448 | 08/05/2016 | D802230 | 11/07/2017 |
| United States | 29/586727 | 12/06/2016 | D817066 | 05/08/2018 |
| United States | 29/583675 | 11/08/2016 | D817067 | 05/08/2018 |
| United States | 29/648605 | 05/22/2018 | | |
| United States | 29/648572 | 05/22/2018 | | |
| United States | 29/472441 | 11/12/2013 | D748431 | 02/02/2016 |
| United States | 14/323585* | 07/03/2014 | | |
| United States | 15/637250* | 06/29/2017 | | |
| United States | 62/594328* | 12/04/2017 | | |
| United States | 62/594211* | 12/04/2017 | | |
| United States | 14/948575* | 11/23/2015 | | |

*- items denoted with an asterisk are assigned solely to the extent of Selle

FILED DATE: 5/19/2021 1:27 PM   2020L012403

18-23538-shl Doc 962507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 965 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Owner |
| --- |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |

18-23538-shl Doc 9507 Filed 02/08/19 Entered 02/08/19 16:44:31 Exhibit A
Pg 966 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| SEARS BRANDS, L.L.C. |
|---|
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A
Pg 967 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| SEARS BRANDS, L.L.C. |
|---|
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 968 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM      2020L012403

| |
|---|
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |
| SEARS BRANDS, L.L.C. |

ers' right, title or interest therein.  N

FILED DATE: 5/19/2021 1:27 PM          2020L012403

| Title |
| --- |
| METHOD AND SYSTEM FOR ENABLING WIRELESS CONTROL IN TOOLS BY USE OF PORTABLE POWER SUPPLY SYSTEMS WITH EMBEDDED COMMUNICATION COMPONENTS |
| DOOR ALARM SYSTEM AND REFRIGERATION DEVICE |
| CHARGER, CHARGE INDICATOR, AND ASSOCIATED METHODS |
| PERSONAL HEATER |
| HEATING DEVICE |
| SIMPLE AND ASSISTED MECHANISM FOR REGISTERING AN INTERNET-OF-THINGS (IOT) DEVICE |
| EGG SEPARATOR |
| MIXER FUNNEL |
| GRATER |
| STAND MIXER |
| STAND MIXER |
| MIXER BOWL |
| METHODS AND SYSTEMS FOR DEVICE MANAGEMENT WITH SHARING AND PROGRAMMING CAPABILITY |
| PROGRAMMABLE POWER TOOL WITH BRUSHLESS DC MOTOR |
| SLIDABLE BIN WITHIN A REFRIGERATOR DRAWER |
| SLIDE BATTERY AND POWER TOOL FOR USE WITH BOTH SLIDE AND POST BATTERIES |
| BUCKET WASHING ATTACHMENT |
| POSITION FEEDBACK CONTROL METHOD AND POWER TOOL |
| LAWN MOWING APPARATUS WITH MOWER DECK ALIGNMENT SENSORS |
| APPARATUS WITH HAND GRIP AND METHOD MOUNTING HAND GRIP |
| MULTI-MODE AIR COMPRESSOR PRESSURE POWER SWITCH |
| REDUNDANT ACTUATION LOCK DECOUPLING SYSTEM AND METHODS OF USE |
| PORTABLE POWER TOOL,  BATTERY PACK, AND CELL CONFIGURATIONS FOR SAME |
| ERGONOMIC GRIPPING MECHANISMS OF A HANDHELD AIR MOVEMENT APPARATUS |
| ERGONOMIC GRIPPING MECHANISMS OF AN ELECTRIC CUTTING APPARATUS |

18-23538-rdd Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:41:32 Exhibit A
Pg 943 of 1450

| |
|---|
| POWER TOOL WITH INTEGRATED MEASUREMENT DEVICE AND ASSOCIATED METHODS |
| BUCKET MIXER INSERT |
| METHODS AND SYSTEMS FOR CONNECTED SALES ASSOCIATE SERVICES |
| METHOD AND SYSTEM TO DYNAMICALLY OBFUSCATE A WEB SERVICE INTERFACE |
| COMPRESSIBLE CONTACTS FOR INTERFACING CHARGER |
| NON-COMPRESSION CASCADE REFRIGERATION SYSTEM FOR CLOSED REFRIGERATED SPACE |
| PADDING SYSTEM FOR PROTECTING A HOME APPLIANCE |
| REMOTE CONTROL DEVICE THAT USES COLOR TO INDICATE CHANGE IN STATUS |
| SYSTEM AND METHOD FOR USING COLOR TO INDICATE A STATE OF A HOME APPLIANCE, SUCH AS A |
| REMOTE CONTROL DEVICE THAT USES COLOR TO INDICATE CHANGE IN STATUS |
| VACUUM CLEANING DEVICE WITH AIR QUALITY MONITORING SYSTEM |
| SYSTEM AND METHOD FOR USING COLOR TO INDICATE A STATE OF A HOME APPLIANCE, SUCH AS A |
| MANAGEMENT UNIT WITH MICROPHONE |
| AUTOMATED LAUNDRY SYSTEM |
| THROUGH-HEAD STAND MIXER |
| METHODS AND SYSTEMS FOR COUPON SERVICE APPLICATIONS |
| METHODS AND SYSTEMS FOR PROVIDING AN APPLIANCE HYBRID MODE |
| INTEGRATED COOKTOP ASSEMBLY |
| SYSTEMS AND METHODS FOR PROVIDING SMART APPLIANCES |
| METHODS AND SYSTEMS FOR APPLIANCE COMMUNITY SERVICE MANAGEMENT |
| FIXED FULL COVERAGE WASH SYSTEM FOR DISHWASHERS |
| STAND MIXER WITH CORDLESS KITCHEN APPLIANCE |
| AUTOMATED LAUNDRY SYSTEM |
| SYSTEMS AND METHODS FOR PROVIDING CONDUCTIVE CHARGING WITH MULTIPLE TERMINAL CONSTELLATIONS |
| RETRACTABLE TAPE MEASURE AND SECURING SAME |
| POWER TOOL WITH OPTICAL MEASUREMENT DEVICE |

FILED DATE: 5/19/2021 1:27 PM     2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| |
|---|
| LAWN MOWING APPARATUS WITH MOWER DECK ALIGNMENT SENSORS |
| SYSTEM AND METHODS FOR INTERACTING WITH NETWORKED HOME APPLIANCES |
| METHOD AND SYSTEM FOR ENABLING WIRELESS CONTROL IN TOOLS BY USE OF PORTABLE POWER SUPPLY SYSTEMS WITH EMBEDDED COMMUNICATION COMPONENTS |
| GARAGE DOOR OPENER SYSTEM WITH AUTO-CLOSE |
| MITER SAW ASSEMBLY WITH DETACHABLE CIRCULAR SAW |
| SLIDE BATTERY AND POWER TOOL FOR USE WITH BOTH SLIDE AND POST BATTERIES |
| DOOR ALARM SYSTEM AND REFRIGERATION DEVICE |
| CHARGER, CHARGE INDICATOR, AND ASSOCIATED METHODS |
| REMOTE CONTROL |
| REMOTE CONTROL |
| REMOTE CONTROL |
| REMOTE CONTROL |
| REMOTE CONTROL |
| REMOTE CONTROL |
| STAND MIXER |
| WASHING MACHINE |
| APPLIANCE HANDLE |
| APPLIANCE HANDLE |
| DUAL WHEEL PIZZA CUTTER |
| WASHING MACHINE |
| WASHING MACHINE |
| STAND MIXER HEAD |
| STAND MIXER |
| ICE DISPENSER PADDLE |
| WASHING MACHINE DOOR AND WINDOW |
| ICE DISPENSER PADDLE |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-rdd Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:31 Exhibit A
Pg 973 of 1450

| GRILL |
| --- |
| GRILL |
| APPLIANCE DISPLAY SCREEN WITH A GRAPHICAL USER INTERFACE |
| APPLIANCE DISPLAY SCREEN WITH A GRAPHICAL USER INTERFACE |
| COOKTOP |
| COOKTOP - MULTIPLE BURNER |
| WASHING MACHINE |
| MOBILE GRILLING UNIT |
| HOLSTER FOR A MOBILE DEVICE |
| COLORED ACCENT FOR AN APPLIANCE USER INTERFACE |
| DISHWASHER CONTROL PANEL |
| WARMER DRAWER |
| APPLIANCE HANDLE |
| COOKTOP |
| COOKTOP |
| REFRIGERATOR |
| MICROWAVE |
| OVEN |
| OVEN |
| OVEN KNOB |
| DISHWASHER GRAPHICAL USER INTERFACE |
| COOKTOP |
| COOKTOP GRATE |
| OVEN KNOB |
| APPLIANCE HANDLE ENDCAP |
| WASHING MACHINE |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| |
|---|
| OVEN CONTROL PANEL |
| RADIANT COOKTOP |
| OVEN KNOB |
| OVEN CONTROL PANEL |
| APPLIANCE HANDLE |
| REFRIDGERATOR DISPENSER |
| OVEN COOKTOP GRATE |
| OVEN COOKTOP |
| COOKTOP GRATE |
| COOKTOP |
| DISHWASHER |
| OVEN |
| OVEN |
| MIXER BOWL |
| SPLASH GUARD |
| COOKTOP |
| REFRIGERATOR WITH A TOP SURFACE HAVING A NOTCHED PROFILE FOR PROVIDING ADDITIONAL ST CAPACITY |
| ONBOARD MEASURING SYSTEM FOR MITER SAWS |
| STICK VACUUM WITH INDEXING VACUUM HEAD ASSEMBLY |
| TWO-IN-ONE UPRIGHT VACUUM |
| INTEGRATED COOKTOP ASSEMBLY |

No representation or warranty is made with respect to the Patents denoted with an asterisk.

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Country | Status | Application Number | Application Date | Patent Number |
|---|---|---|---|---|
| Australia | FILED | 2015258168 | 11/16/2015 | |
| Australia | FILED | 2016222406 | 08/31/2016 | |
| Australia | FILED | 2016244217 | 10/11/2016 | |
| Australia | FILED | 2016250420 | 10/27/2016 | |
| Australia | FILED | 2016273904 | 12/14/2016 | |
| Australia | FILED | 2017200518 | 01/25/2017 | |
| Australia | DOCKETED | | | |
| Australia | DOCKETED | | | |
| Australia | DOCKETED | | | |
| Brazil | DOCKETED | | | |
| Brazil | DOCKETED | | | |
| Brazil | DOCKETED | | | |
| Canada | GRANTED | 136371 | 07/15/2010 | 136371 |
| Canada | GRANTED | 136370 | 07/15/2010 | 136370 |
| Canada | GRANTED | 136376 | 07/15/2010 | 136376 |
| Canada | GRANTED | 141174 | 06/28/2011 | 141174 |

18-23538-shl Doc 2307 Filed 02/06/19 Entered 02/06/19 16:44:32 Exhibit A Pg 946 of 1420

FILED DATE: 5/19/2021 1:27 PM        2020L012403

| Canada | GRANTED | 141173 | 06/28/2011 | 141173 |
|--------|---------|--------|------------|--------|
| Canada | GRANTED | 2714804 | 09/14/2010 | 2714804 |
| Canada | GRANTED | 2744650 | 06/28/2011 | 2744650 |
| Canada | GRANTED | 137295 | 09/27/2010 | 137295 |
| Canada | GRANTED | 2722201 | 11/23/2010 | 2722201 |
| Canada | GRANTED | 2754233 | 09/29/2011 | 2754233 |
| Canada | FILED | 2788352 | 08/30/2012 | |
| Canada | GRANTED | 142795 | 10/20/2011 | 142795 |
| Canada | GRANTED | 142796 | 10/20/2011 | 142796 |
| Canada | GRANTED | 2758814 | 11/18/2011 | 2758814 |
| Canada | GRANTED | 2771471 | 03/19/2012 | 2771471 |
| Canada | GRANTED | 2756475 | 10/31/2011 | 2756475 |
| Canada | GRANTED | 2800792 | 01/04/2013 | 2800792 |
| Canada | FILED | 2941582 | 01/04/2013 | |
| Canada | GRANTED | 2801725 | 01/14/2013 | 2801725 |
| Canada | GRANTED | 2912079 | 11/16/2015 | 2912079 |
| Canada | GRANTED | 2940626 | 08/30/2016 | 2940626 |

18-23538-shl Doc 9507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 949 of 1450

| | | | | |
|---|---|---|---|---|
| Canada | GRANTED | 2944209 | 10/04/2016 | 2944209 |
| Canada | FILED | 2946915 | 10/28/2016 | |
| Canada | FILED | 2951613 | 12/13/2016 | |
| Canada | FILED | 2955963 | 01/24/2017 | |
| Canada | DOCKETED | | | |
| Canada | DOCKETED | | | |
| Canada | DOCKETED | | | |
| Canada | DOCKETED | | | |
| Canada | DOCKETED | | | |
| Canada | DOCKETED | | | |
| China P.R. | FILED | 2015106051069 | 09/21/2015 | |
| China P.R. | FILED | 2015107925991 | 11/17/2015 | |
| China P.R. | FILED | 201610798018X | 08/31/2016 | |
| China P.R. | FILED | 2016108877561 | 10/11/2016 | |
| China P.R. | FILED | 2015108502778 | 11/27/2015 | |
| China P.R. | FILED | 2016111613643 | 12/15/2016 | |
| China P.R. | FILED | 2017100632522 | 01/25/2017 | |

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | | | | |
|---|---|---|---|---|
| China P.R. | FILED | N/A | 09/12/2017 | |
| China P.R. | FILED | N/A | 09/12/2017 | |
| China P.R. | DOCKETED | | | |
| China P.R. | DOCKETED | | | |
| China P.R. | FILED | 2018306627877 | 11/21/2018 | |
| EPC | GRANTED | 11187324.6 | 10/31/2011 | 2448220 |
| EPC | FILED | 15156791.4 | 02/26/2015 | |
| EPC | GRANTED | 16172686.4 | 02/26/2015 | 3088113 |
| EPC | FILED | 16172700.3 | 02/26/2015 | |
| EPC | FILED | 15185473.4 | 09/16/2015 | |
| EPC | FILED | 15194982.3 | 11/17/2015 | |
| EPC | FILED | 16186661.1 | 08/31/2016 | |
| EPC | GRANTED | 16193401.3 | 10/11/2016 | 3165871 |
| EPC | FILED | 16195989.5 | 10/27/2016 | |
| EPC | FILED | 16204082.8 | 12/14/2016 | |
| EPC | FILED | 17153121.3 | 01/25/2017 | |
| EPC | FILED | N/A | 09/12/2017 | |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| EPC | FILED | N/A | 09/12/2017 | |
|---|---|---|---|---|
| European Community Design | DOCKETED | | | |
| European Community Design | DOCKETED | | | |
| European Community Design | DOCKETED | | | |
| European Community Design | DOCKETED | | | |
| European Community Design | DOCKETED | | | |
| European Community Design | DOCKETED | | | |
| Germany | GRANTED | 602011041858.0 | 10/31/2011 | 2448220 |
| Germany | GRANTED | 16172686.4 | 02/26/2015 | 602015015290.5 |
| Germany | GRANTED | 16193401.3 | 10/11/2016 | 602016004262.2 |
| Great Britain | GRANTED | 11187324.6 | 10/31/2011 | 2448220 |
| India | FILED | 201611007792 | 03/05/2016 | |
| Mexico | FILED | MX/a/2015/015865 | 11/17/2015 | |
| Mexico | FILED | MX/a/2016/011269 | 08/31/2016 | |
| Mexico | FILED | MX/a/2016/013316 | 10/10/2016 | |
| Mexico | FILED | MX/a/2016/014196 | 10/28/2016 | |
| Mexico | GRANTED | MX/a/2016/016559 | 12/14/2016 | n/a |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 982 of 1150

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Mexico | DOCKETED | | | |
|---|---|---|---|---|
| Mexico | DOCKETED | | | |
| Mexico | DOCKETED | | | |
| Mexico | DOCKETED | | | |
| Mexico | DOCKETED | | | |
| Mexico | DOCKETED | | | |
| PCT | FILED | PCT/US2017/027581 | 04/14/2017 | |
| PCT | FILED | PCT/US2017/027585 | 04/14/2017 | |
| PCT | FILED | PCT/US2017/051100 | 09/12/2017 | |
| PCT | FILED | PCT/US2017/51103 | 09/12/2017 | |
| PCT | FILED | PCT/US2018/027044 | 04/11/2018 | |
| PCT | FILED | PCT/US2018/12023 | 01/02/2018 | |
| PCT | FILED | PCT/US2018/026880 | 04/10/2018 | |
| South Africa | FILED | A2018/01737 | 11/12/2018 | |
| South Africa | FILED | A2018/01738 | 11/12/2018 | |
| South Africa | FILED | A2018/01743 | 11/12/2018 | |
| South Korea | FILED | 10-2015-0094992 | 07/03/2015 | |
| EPC | FILED | 13849710.2 | 10/04/2013 | |

18-23538-rdd Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 983 of 1450

| PCT | FILED | PCT/US2013/063395 | 10/04/2013 | |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:31   Exhibit A
Pg 982 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| Grant Date | Owner |
| --- | --- |
|  | SEARS BRANDS, L.L.C. |
|  | SEARS BRANDS, L.L.C. |
|  | SEARS BRANDS, L.L.C. |
|  | SEARS BRANDS, L.L.C. |
|  | SEARS BRANDS, L.L.C. |
|  | SEARS BRANDS, L.L.C. |
|  | SEARS BRANDS, L.L.C. |
|  | SEARS BRANDS, L.L.C. |
|  | SEARS BRANDS, L.L.C. |
|  | SEARS BRANDS, L.L.C. |
|  | SEARS BRANDS, L.L.C. |
|  | SEARS BRANDS, L.L.C. |
| 02/07/2011 | SEARS BRANDS, L.L.C. |
| 02/07/2011 | SEARS BRANDS, L.L.C. |
| 02/07/2011 | SEARS BRANDS, L.L.C. |
| 01/20/2012 | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 01/20/2012 | SEARS BRANDS, L.L.C. |
| 04/25/2017 | SEARS BRANDS, L.L.C. |
| 08/12/2014 | SEARS BRANDS, L.L.C. |
| 04/28/2011 | SEARS BRANDS, L.L.C. |
| 02/10/2015 | SEARS BRANDS, L.L.C. |
| 11/24/2015 | SEARS BRANDS, L.L.C. |
|  | SEARS BRANDS, L.L.C. |
| 05/16/2012 | SEARS BRANDS, L.L.C. |
| 05/16/2012 | SEARS BRANDS, L.L.C. |
| 07/14/2015 | SEARS BRANDS, L.L.C. |
| 04/25/2017 | SEARS BRANDS, L.L.C. |
| 05/24/2016 | SEARS BRANDS, L.L.C. |
| 10/25/2016 | SEARS BRANDS, L.L.C. |
|  | SEARS BRANDS, L.L.C. |
| 05/17/2016 | SEARS BRANDS, L.L.C. |
| 12/12/2017 | SEARS BRANDS, L.L.C. |
| 10/02/2018 | SEARS BRANDS, L.L.C. |

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 984 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| 10/02/2018 | SEARS BRANDS, L.L.C. |
|------------|----------------------|
|            | SEARS BRANDS, L.L.C. |
|            | SEARS BRANDS, L.L.C. |
|            | SEARS BRANDS, L.L.C. |
|            | SEARS BRANDS, L.L.C. |
|            | SEARS BRANDS, L.L.C. |
|            | SEARS BRANDS, L.L.C. |
|            | SEARS BRANDS, L.L.C. |
|            | SEARS BRANDS, L.L.C. |
|            | SEARS BRANDS, L.L.C. |
|            | SEARS BRANDS, L.L.C. |
|            | SEARS BRANDS, L.L.C. |
|            | SEARS BRANDS, L.L.C. |
|            | SEARS BRANDS, L.L.C. |
|            | SEARS BRANDS, L.L.C. |
|            | SEARS BRANDS, L.L.C. |
|            | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | |
|---|---|
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| 09/27/2017 | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| 08/22/2018 | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| 07/25/2018 | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | |
|---|---|
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| 09/27/2017 | SEARS BRANDS, L.L.C. |
| 08/22/2018 | SEARS BRANDS, L.L.C. |
| 07/25/2018 | SEARS BRANDS, L.L.C. |
| 09/27/2017 | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| 09/10/2018 | SEARS BRANDS, L.L.C. |

18-23538-rdd Doc 2307 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | SEARS BRANDS, L.L.C. |
|---|---|
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |
| | SEARS BRANDS, L.L.C. |

| | SEARS BRANDS, L.L.C. |
|---|---|

FILED DATE: 5/19/2021 1:27 PM   2020L012403

18-23588-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A
Pg 981 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| Title |
|-------|
| ONBOARD MEASURING SYSTEM FOR MITER SAWS |
| RETRACTABLE TAPE MEASURE AND SECURING SAME |
| HORIZONTAL-REEL TAPE MEASURE |
| POSITION FEEDBACK CONTROL METHOD AND POWER TOOL |
| POWER TOOL WITH OPTICAL MEASUREMENT DEVICE |
| REDUNDANT ACTUATION LOCK DECOUPLING MECHANISM |
| EGG SEPARATOR |
| MIXER FUNNEL |
| GRATER |
| EGG SEPARATOR |
| MIXER FUNNEL |
| GRATER |
| WASHING MACHINE DOOR AND WINDOW |
| WASHING MACHINE |
| WASHING MACHINE DOOR AND WINDOW |
| GRILL |

18-23538-shl Doc 2507-5 Filed 02/08/19 Entered 02/08/19 16:44:31 Exhibit A
Pg 982 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| |
|---|
| GRILL |
| SYSTEM AND METHOD FOR PROVIDING DIAGNOSTIC SERVICES |
| VACUUM CLEANING DEVICE WITH AIR QUALITY MONITORING SYSTEM |
| STAND MIXER (WITH BOWL LIFT) |
| THROUGH-HEAD STAND MIXER |
| ENERGY MANAGEMENT UNIT WITH DIAGNOSTIC CAPABILITIES |
| SYSTEM AND METHOD FOR REMOVING DENTS FROM A DENTED SURFACE |
| WASHING MACHINE |
| WASHING MACHINE |
| METHODS AND SYSTEMS FOR COMMUNITY ENERGY MANAGEMENT |
| METHODS AND SYSTEMS FOR APPLIANCE COMMUNITY SERVICE MANAGEMENT |
| SYSTEMS AND METHODS FOR PROVIDING SMART APPLIANCES |
| PROGRAMMABLE PORTABLE POWER TOOL WITH BRUSHLESS DC MOTOR |
| PROGRAMMABLE PORTABLE POWER TOOL WITH BRUSHLESS DC MOTOR |
| MANAGEMENT UNIT WITH MICROPHONE |
| ONBOARD MEASURING SYSTEM FOR MITER SAWS |
| RETRACTABLE TAPE MEASURE AND SECURING SAME |

18-23538-rdd    Doc 2307-1    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| |
|---|
| HORIZONTAL-REEL TAPE MEASURE |
| POSITION FEEDBACK CONTROL METHOD AND POWER TOOL |
| POWER TOOL WITH OPTICAL MEASUREMENT DEVICE |
| REDUNDANT ACTUATION LOCK DECOUPLING SYSTEM AND METHODS OF USE |
| EGG SEPARATOR |
| MIXER FUNNEL |
| GRATER |
| UPPER PORTION OF MIXER IN LOWERED AND RAISED POSITION |
| STAND MIXER (LOWER PORTION) |
| MIXER BOWL |
| METHOD AND SYSTEM FOR ENABLING WIRELESS CONTROL IN TOOLS BY USE OF PORTABLE POWER SUPPLY SYSTEMS WITH EMBEDDED COMMUNICATION COMPONENTS |
| ONBOARD MEASURING SYSTEM FOR MITER SAWS |
| RETRACTABLE TAPE MEASURE AND SECURING SAME |
| HORIZONTAL-REEL TAPE MEASURE |
| POSITION FEEDBACK CONTROL |
| POWER TOOL WITH OPTICAL MEASUREMENT DEVICE |
| A REDUNDANT ACTUATION LOCK APPARATUS |

SYSTEMS AND METHODS FOR PROVIDING CONDUCTIVE CHARGING WITH MULTIPLE TERMINAL CONSTELLATIONS

CHARGER, CHARGE INDICATOR, AND ASSOCIATED METHODS

EGG SEPARATOR

MIXER FUNNEL

GRATER

SYSTEMS AND METHODS FOR PROVIDING SMART APPLIANCES

MITER SAW ASSEMBLY WITH DETACHABLE CIRCULAR SAW

MITER SAW ASSEMBLY WITH DETACHABLE CIRCULAR SAW

MITER SAW ASSEMBLY WITH DETACHABLE CIRCULAR SAW

METHOD AND SYSTEM FOR ENABLING WIRELESS CONTROL IN TOOLS BY USE OF PORTABLE POWER SUPPLY SYSTEMS WITH EMBEDDED COMMUNICATION COMPONENTS

ONBOARD MEASURING SYSTEM FOR MITER SAWS

RETRACTABLE TAPE MEASURE AND SECURING SAME

HORIZONTAL-REEL TAPE MEASURE

POSITION FEEDBACK CONTROL METHOD AND POWER TOOL

POWER TOOL WITH OPTICAL MEASUREMENT DEVICE

REDUNDANT ACTUATION LOCK DECOUPLING MECHANISM

SYSTEMS AND METHODS FOR PROVIDING CONDUCTIVE CHARGING WITH MULTIPLE TERMINAL CONSTELLATIONS

18-23538-rdd Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 993 of 1450

| |
|---|
| CHARGER, CHARGE INDICATOR, AND ASSOCIATED METHODS |
| EGG SEPARATOR |
| MIXER FUNNEL |
| GRATER |
| UPPER PORTION OF MIXER IN LOWERED AND RAISED POSITION |
| STAND MIXER (LOWER PORTION) |
| MIXER BOWL |
| SYSTEMS AND METHODS FOR PROVIDING SMART APPLIANCES |
| MITER SAW ASSEMBLY WITH DETACHABLE CIRCULAR SAW |
| HORIZONTAL-REEL TAPE MEASURE |
| SYSTEMS AND METHODS FOR PROVIDING SMART APPLIANCES |
| METHOD AND SYSTEM TO DYNAMICALLY GENERATE A WEB SERVICES INTERFACE THEREBY PREVENTING UNSOLICITED REQUESTS FROM REACHING THE WEB SERVICE RUNNING IN APPLICATION SERVER AND NEGATIVELY IMPACTING THE APPLICATION PERFORMANCE |
| ONBOARD MEASURING SYSTEM FOR MITER SAWS |
| RETRACTABLE TAPE MEASURE AND SECURING SAME |
| HORIZONTAL-REEL TAPE MEASURE |
| POSITION FEEDBACK CONTROL METHOD AND POWER TOOL |
| POWER TOOL WITH OPTICAL MEASUREMENT DEVICE |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| |
|---|
| EGG SEPARATOR |
| MIXER FUNNEL |
| GRATER |
| UPPER PORTION OF MIXER IN LOWERED AND RAISED POSITION |
| STAND MIXER (LOWER PORTION) |
| MIXER BOWL |
| ERGONOMIC GRIPPING MECHANISMS OF A HANDHELD AIR MOVEMENT APPARATUS |
| ERGONOMIC GRIPPING MECHANISMS OF AN ELECTRIC CUTTING APPARATUS |
| SYSTEMS AND METHODS FOR PROVIDING CONDUCTIVE CHARGING WITH MULTIPLE TERMINAL CONSTELLATIONS |
| CHARGER, CHARGE INDICATOR, AND ASSOCIATED METHODS |
| POWER TOOL WITH INTEGRATED MEASUREMENT DEVICE AND ASSOCIATED METHODS |
| COMPRESSIBLE CONTACTS FOR INTERFACING CHARGER |
| GARAGE DOOR OPENER SYSTEM WITH AUTO-CLOSE |
| EGG SEPARATOR |
| MIXER FUNNEL |
| GRATER |
| REFRIGERATOR WITH A TOP SURFACE HAVING A NOTCHED PROFILE FOR PROVIDING ADDITIONAL STORAGE CAPACITY |
| INTEGRATED COOKTOP ASSEMBLY |

18-23538-rdd Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 987 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

INTEGRATED COOKTOP ASSEMBLY

| Owner | Full Title | Registration Number |
|-------|-----------|---------------------|
| Sears, Roebuck and Co. | Interpretation of consumer credit : prepared by Economic Research and Business Analysis Division, Sears, Roebuck and Company. | CSN0003864 |
| Sears, Roebuck and Co. | Interpretation of consumer credit / prepared by Economic Research and Business Analysis Division, Sears, Roebuck and Company. | CSN0003864 |
| Sears, Roebuck and Co. | Interpretation of consumer credit / prepared by Economic Research and Business Analysis Division, Sears, Roebuck and Company. | CSN0003864 |
| Sears, Roebuck and Co. | Interpretation of consumer credit / prepared by Economic Research and Business Analysis Division, Sears, Roebuck and Company. | CSN0003864 |
| Sears, Roebuck and Co. | Interpretation of consumer credit / prepared by Economic Research and Business Analysis Division, Sears, Roebuck and Company. | CSN0003864 |
| Sears, Roebuck and Co. | Interpretation of consumer credit / prepared by Economic Research and Business Analysis Division, Sears, Roebuck and Company. | CSN0003864 |
| Sears, Roebuck and Co. | Interpretation of consumer credit / prepared by Economic Research and Business Analysis Division, Sears, Roebuck and Company. | CSN0003864 |
| Sears, Roebuck and Co. | Interpretation of consumer credit / prepared by Economic Research and Business Analysis Division, Sears, Roebuck, and Company. | CSN0003864 |
| Sears, Roebuck and Co. | Interpretation of consumer credit / prepared by Economic Research and Business Analysis Division, Sears, Roebuck, and Company. | CSN0003864 |
| Sears, Roebuck and Co. | Interpretation of consumer credit / prepared by Economic Research and Business Analysis Division, Sears, Roebuck, and Company. | CSN0003864 |
| Sears, Roebuck and Co. | Interpretation of consumer credit / prepared by Economic Research and Business Analysis Division, Sears, Roebuck, and Company. | CSN0003864 |
| Sears, Roebuck and Co. | Interpretation of consumer credit / prepared by Economic Research and Business Analysis Division, Sears, Roebuck, and Company. | CSN0003864 |
| Sears, Roebuck and Co. | Interpretation of consumer credit / prepared by Economic Research and Business Analysis Division, Sears, Roebuck, and Company. | CSN0003864 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0006950 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0006950 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0006950 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0006950 |
| Sears, Roebuck and Co. | Sears : catalog. | CSN0006951 |
| Sears, Roebuck and Co. | Sears : catalog. | CSN0006951 |
| Sears, Roebuck and Co. | Sears : catalog. | CSN0006951 |
| Sears, Roebuck and Co. | Sears : catalog. | CSN0006951 |
| Sears, Roebuck and Co. | Sears : [catalog. | CSN0006951 |
| Sears, Roebuck and Co. | Sears : [catalog. | CSN0006951 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Owner | Full Title | Registration Number |
|---|---|---|
| Sears, Roebuck and Co. | Sears ... apparel catalog of half sizes and women's sizes. | CSN0006952 |
| Sears, Roebuck and Co. | Sears ... apparel catalog of half sizes and women's sizes. | CSN0006952 |
| Sears, Roebuck and Co. | Sears ... camera and photographic supplies catalog. | CSN0006955 |
| Sears, Roebuck and Co. | Sears catalog of accessories for mobile homes : our most complete selection ever of accessories to help beautify your mobile home, inside and out. | CSN0006956 |
| Sears, Roebuck and Co. | Sears ... catalog of camping and recreational vehicle equipment. | CSN0006957 |
| Sears, Roebuck and Co. | Sears ... catalog of imported car accessories and replacement parts. | CSN0006958 |
| Sears, Roebuck and Co. | Sears ... catalog of replacement parts and accessories for Jeep and other 4-wheel drive vehicles and vans. | CSN0006959 |
| Sears, Roebuck and Co. | Sears ... farm and ranch catalog. | CSN0006962 |
| Sears, Roebuck and Co. | Sears ... farm and ranch catalog. | CSN0006962 |
| Sears, Roebuck and Co. | Sears ... farm and ranch catalog. | CSN0006962 |
| Sears, Roebuck and Co. | Sears ... farm and ranch catalog. | CSN0006962 |
| Sears, Roebuck and Co. | Sears summer. | CSN0006966 |
| Sears, Roebuck and Co. | Sears summer. | CSN0006966 |
| Sears, Roebuck and Co. | Sears spring/summer men's apparel catalog for . : big and tall sizes. | CSN0006967 |
| Sears, Roebuck and Co. | Sears spring/summer men's apparel catalog for . : big and tall sizes. | CSN0006967 |
| Sears, Roebuck and Co. | Sears : wish book for the ... holiday season. | CSN0013578 |
| Sears, Roebuck and Co. | Sears : wish book for the ... holiday season. | CSN0013578 |
| Sears, Roebuck and Co. | Sears : wish book for the ... holiday season. | CSN0013579 |
| Sears, Roebuck and Co. | Sears : wish book for the ... holiday season. | CSN0013579 |
| Sears, Roebuck and Co. | Sears : catalog. | CSN0013580 |
| Sears, Roebuck and Co. | Sears : catalog. | CSN0013580 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0013580 |
| Sears, Roebuck and Co. | Sears : wish book for the ... holiday season. | CSN0013581 |
| Sears, Roebuck and Co. | Sears : wish book for the ... holiday season. | CSN0013581 |
| Sears, Roebuck and Co. | Sears : wish book for the ... holiday season. | CSN0013582 |
| Sears, Roebuck and Co. | Sears : wish book for the ... holiday season. | CSN0013582 |
| Sears, Roebuck and Co. | Sears : wish book for the ... holiday season. | CSN0013583 |
| Sears, Roebuck and Co. | Sears : wish book for the ... holiday season. | CSN0013583 |
| Sears, Roebuck and Co. | Sears : wish book for the ... holiday season. | CSN0013584 |
| Sears, Roebuck and Co. | Sears : wish book for the ... holiday season. | CSN0013584 |
| Sears, Roebuck and Co. | Sears : wish book for the ... holiday season. | CSN0013585 |
| Sears, Roebuck and Co. | Sears : wish book for the ... holiday season. | CSN0013585 |
| Sears, Roebuck and Co. | Sears : wish book for the ... holiday season. | CSN0013586 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Owner | Full Title | Registration Number |
|---|---|---|
| Sears, Roebuck and Co. | Sears : catalog. | CSN0013587 |
| Sears, Roebuck and Co. | Sears : catalog. | CSN0013587 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0013587 |
| Sears, Roebuck and Co. | Sears : catalog. | CSN0013588 |
| Sears, Roebuck and Co. | Sears : catalog. | CSN0013588 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0013588 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0013589 |
| Sears, Roebuck and Co. | Sears : catalog. | CSN0013589 |
| Sears, Roebuck and Co. | Sears : catalog. | CSN0013589 |
| Sears, Roebuck and Co. | Sears : catalog. | CSN0013589 |
| Sears, Roebuck and Co. | Sears : catalog. | CSN0013589 |
| Sears, Roebuck and Co. | Sears : catalog. | CSN0013589 |
| Sears, Roebuck and Co. | Sears : catalog. | CSN0013589 |
| Sears, Roebuck and Co. | Sears : catalog. | CSN0013589 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0013589 |
| Sears, Roebuck and Co. | Sears. | CSN0013590 |
| Sears, Roebuck and Co. | Sears. | CSN0013590 |
| Sears, Roebuck and Co. | Sears. | CSN0013590 |
| Sears, Roebuck and Co. | Sears. | CSN0013591 |
| Sears, Roebuck and Co. | Sears. | CSN0013591 |
| Sears, Roebuck and Co. | Sears. | CSN0013591 |
| Sears, Roebuck and Co. | Sears. | CSN0013592 |
| Sears, Roebuck and Co. | Sears. | CSN0013592 |
| Sears, Roebuck and Co. | Sears. | CSN0013592 |
| Sears, Roebuck and Co. | Sears. | CSN0013593 |
| Sears, Roebuck and Co. | Sears. | CSN0013593 |
| Sears, Roebuck and Co. | Sears. | CSN0013593 |
| Sears, Roebuck and Co. | Sears : catalog. | CSN0013593 |
| Sears, Roebuck and Co. | Sears. | CSN0013594 |
| Sears, Roebuck and Co. | Sears. | CSN0013594 |
| Sears, Roebuck and Co. | Sears. | CSN0013594 |
| Sears, Roebuck and Co. | Sears. | CSN0013595 |
| Sears, Roebuck and Co. | Sears. | CSN0013595 |
| Sears, Roebuck and Co. | Sears. | CSN0013595 |
| Sears, Roebuck and Co. | Sears. | CSN0013595 |
| Sears, Roebuck and Co. | Sears. | CSN0013596 |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| Owner | Full Title | Registration Number |
|---|---|---|
| Sears, Roebuck and Co. | Sears. | CSN0013596 |
| Sears, Roebuck and Co. | Sears. | CSN0013596 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0013597 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0013597 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0013597 |
| Sears, Roebuck and Co. | Sears hunting ... catalog. | CSN0013601 |
| Sears, Roebuck and Co. | Sears hunting ... catalog. | CSN0013601 |
| Sears, Roebuck and Co. | Sears hunting ... catalog. | CSN0013601 |
| Sears, Roebuck and Co. | Sears hunting ... catalog. | CSN0013601 |
| Sears, Roebuck and Co. | Sears ... men's apparel catalog of big and tall sizes. | CSN0013602 |
| Sears, Roebuck and Co. | Sears ... men's apparel catalog of big and tall sizes. | CSN0013602 |
| Sears, Roebuck and Co. | Sears western catalog. | CSN0013606 |
| Sears, Roebuck and Co. | Sears western catalog. | CSN0013606 |
| Sears, Roebuck and Co. | Sears western catalog. | CSN0013607 |
| Sears, Roebuck and Co. | Sears western catalog. | CSN0013607 |
| Sears, Roebuck and Co. | Winter sprots apparel and equipment catalog. | CSN0014595 |
| Sears, Roebuck and Co. | Boating and fishing catalog for . : sports center / Sears. | CSN0015335 |
| Sears, Roebuck and Co. | Boating and fishing catalog for . : sports center / Sears. | CSN0015335 |
| Sears, Roebuck and Co. | Boating and fishing catalog for . : sports center / Sears. | CSN0015336 |
| Sears, Roebuck and Co. | Boating and fishing catalog for . : sports center / Sears. | CSN0015336 |
| Sears, Roebuck and Co. | Boating and fishing catalog for . : sports center / Sears. | CSN0015337 |
| Sears, Roebuck and Co. | Sears : summer ... : catalog. | CSN0018465 |
| Sears, Roebuck and Co. | Sears : summer ... : catalog. | CSN0018465 |
| Sears, Roebuck and Co. | Sears : summer ... : catalog. | CSN0018465 |
| Sears, Roebuck and Co. | Sears : summer ... : catalog. | CSN0018466 |
| Sears, Roebuck and Co. | Sears : summer ... : catalog. | CSN0018466 |
| Sears, Roebuck and Co. | Sears : summer ... : catalog. | CSN0018466 |
| Sears, Roebuck and Co. | Sears : summer ... : catalog. | CSN0018467 |
| Sears, Roebuck and Co. | Sears : summer ... : catalog. | CSN0018467 |
| Sears, Roebuck and Co. | Sears : summer ... : catalog. | CSN0018467 |
| Sears, Roebuck and Co. | Sears : summer ... : catalog. | CSN0018468 |
| Sears, Roebuck and Co. | Sears : summer ... : catalog. | CSN0018468 |
| Sears, Roebuck and Co. | Sears : summer ... : catalog. | CSN0018469 |
| Sears, Roebuck and Co. | Sears : summer ... : catalog. | CSN0018469 |
| Sears, Roebuck and Co. | Sears : summer ... : catalog. | CSN0018469 |
| Sears, Roebuck and Co. | Sears : summer ... : catalog. | CSN0018470 |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| Owner | Full Title | Registration Number |
|---|---|---|
| Sears, Roebuck and Co. | Sears : summer ... : catalog. | CSN0018470 |
| Sears, Roebuck and Co. | Sears business equipment and supply catalog... | CSN0018476 |
| Sears, Roebuck and Co. | Sears business equipment and supply catalog... | CSN0018476 |
| Sears, Roebuck and Co. | Sears business equipment and supply catalog... | CSN0018476 |
| Sears, Roebuck and Co. | Sears business equipment and supply catalog... | CSN0018477 |
| Sears, Roebuck and Co. | Sears business equipment and supply catalog... | CSN0018477 |
| Sears, Roebuck and Co. | Sears business equipment and supply catalog... | CSN0018477 |
| Sears, Roebuck and Co. | Sears business equipment and supply catalog... | CSN0018478 |
| Sears, Roebuck and Co. | Sears business equipment and supply catalog... | CSN0018478 |
| Sears, Roebuck and Co. | Sears business equipment and supply catalog... | CSN0018478 |
| Sears, Roebuck and Co. | Sears business equipment and supply catalog... | CSN0018479 |
| Sears, Roebuck and Co. | Sears business equipment and supply catalog... | CSN0018479 |
| Sears, Roebuck and Co. | Sears ... catalog of accessories and replacement parts for imported cars and pickup trucks. | CSN0018480 |
| Sears, Roebuck and Co. | Sears ... catalog of accessories and replacement parts for imported cars and pickup trucks. | CSN0018481 |
| Sears, Roebuck and Co. | Sears ...catalog of accessories for mobile homes : a complete selection of items to help make your mobile home more functional, more beautiful. | CSN0018482 |
| Sears, Roebuck and Co. | Sears ...catalog of accessories for mobile homes : a complete selection of items to help make your mobile home more functional, more beautiful. | CSN0018482 |
| Sears, Roebuck and Co. | Sears ...catalog of accessories for mobile homes : a complete selection of items to help make your mobile home more functional, more beautiful. | CSN0018482 |
| Sears, Roebuck and Co. | Sears ...catalog of accessories for mobile homes : a complete selection of items to help make your mobile home more functional, more beautiful. | CSN0018483 |
| Sears, Roebuck and Co. | Sears ...catalog of accessories for mobile homes : a complete selection of items to help make your mobile home more functional, more beautiful. | CSN0018483 |
| Sears, Roebuck and Co. | Sears ...catalog of accessories for mobile homes : a complete selection of items to help make your mobile home more functional, more beautiful. | CSN0018483 |
| Sears, Roebuck and Co. | Sears ...catalog of accessories for mobile homes : a complete selection of items to help make your mobile home more functional, more beautiful. | CSN0018484 |
| Sears, Roebuck and Co. | Sears ...catalog of accessories for mobile homes : a complete selection of items to help make your mobile home more functional, more beautiful. | CSN0018484 |
| Sears, Roebuck and Co. | Sears ...catalog of accessories for mobile homes : a complete selection of items to help make your mobile home more functional, more beautiful. | CSN0018484 |
| Sears, Roebuck and Co. | Sears ...catalog of accessories for mobile homes : a complete selection of items to help make your mobile home more functional, more beautiful. | CSN0018485 |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| Owner | Full Title | Registration Number |
|-------|-----------|---------------------|
| Sears, Roebuck and Co. | Sears ... catalog of accessories for mobile homes : a complete selection of items to help make your mobile home more functional, more beautiful. | CSN0018485 |
| Sears, Roebuck and Co. | Sears ... catalog of accessories for mobile homes : a complete selection of items to help make your mobile home more functional, more beautiful. | CSN0018485 |
| Sears, Roebuck and Co. | Sears ... catalog of accessories for mobile homes : a complete selection of items to help make your mobile home more functional, more beautiful. | CSN0018486 |
| Sears, Roebuck and Co. | Sears ... catalog of accessories for mobile homes : a complete selection of items to help make your mobile home more functional, more beautiful. | CSN0018486 |
| Sears, Roebuck and Co. | Sears ... catalog of accessories for mobile homes : a complete selection of items to help make your mobile home more functional, more beautiful. | CSN0018486 |
| Sears, Roebuck and Co. | Sears ... catalog of accessories for mobile homes : a complete selection of items to help make your mobile home more functional, more beautiful. | CSN0018487 |
| Sears, Roebuck and Co. | Sears ... catalog of accessories for mobile homes : a complete selection of items to help make your mobile home more functional, more beautiful. | CSN0018487 |
| Sears, Roebuck and Co. | Sears ... catalog of parts and accessories for recreational vehicles. | CSN0018488 |
| Sears, Roebuck and Co. | Sears ... catalog of parts and accessories for recreational vehicles. | CSN0018489 |
| Sears, Roebuck and Co. | Sears floorcoverings ... | CSN0018491 |
| Sears, Roebuck and Co. | Sears ... farm and ranch catalog. | CSN0018492 |
| Sears, Roebuck and Co. | Sears ... farm and ranch catalog. | CSN0018492 |
| Sears, Roebuck and Co. | Sears ... farm and ranch catalog. | CSN0018493 |
| Sears, Roebuck and Co. | Sears ... farm and ranch catalog. | CSN0018493 |
| Sears, Roebuck and Co. | Sears ... farm and ranch catalog. | CSN0018494 |
| Sears, Roebuck and Co. | Sears ... farm and ranch catalog. | CSN0018494 |
| Sears, Roebuck and Co. | Sears ... farm and ranch catalog. | CSN0018495 |
| Sears, Roebuck and Co. | Sears ... farm and ranch catalog. | CSN0018495 |
| Sears, Roebuck and Co. | Sears ... farm and ranch catalog. | CSN0018495 |
| Sears, Roebuck and Co. | Uniforms ... | CSN0019020 |
| Sears, Roebuck and Co. | Uniforms ... | CSN0019020 |
| Sears, Roebuck and Co. | Uniforms ... | CSN0019021 |
| Sears, Roebuck and Co. | Uniforms ... | CSN0019021 |
| Sears, Roebuck and Co. | Men's apparel catalog of big and tall sizes. | CSN0021878 |
| Sears, Roebuck and Co. | Sears : wish book for the ... holiday season. | CSN0022957 |
| Sears, Roebuck and Co. | Sears ... camera and photographic supplies catalog. | CSN0022961 |
| Sears, Roebuck and Co. | Sears ... camera and photographic supplies catalog. | CSN0022961 |
| Sears, Roebuck and Co. | Sears ... camera and photographic supplies catalog. | CSN0022961 |
| Sears, Roebuck and Co. | Sears ... camera and photographic supplies catalog. | CSN0022961 |

| Owner | Full Title | Registration Number |
|---|---|---|
| Sears, Roebuck and Co. | Sears ... camera and photographic supplies catalog. | CSN0022961 |
| Sears, Roebuck and Co. | Sears Craftman tools : ... catalog of power and hand tools. | CSN0022963 |
| Sears, Roebuck and Co. | Sears ... home health care / Sears, Roebuck and Company. | CSN0022965 |
| Sears, Roebuck and Co. | Winter sports apparel and equipment catalog : [catalog F7562]. | CSN0023688 |
| Sears, Roebuck and Co. | Winter sports apparel and equipment catalog. | CSN0023688 |
| Sears, Roebuck and Co. | Boating and fishing catalog for . / Sears. | CSN0024365 |
| Sears, Roebuck and Co. | Catalog of parts and accessories for vans, pickups, R V's, 4 W D's. | CSN0024611 |
| Sears, Roebuck and Co. | Catalog of parts and accessories for vans, pickups, R V's, 4 W D's. | CSN0024612 |
| Sears, Roebuck and Co. | Catalog of parts and accessories for vans, pickups, R V's, 4 W D's. | CSN0024613 |
| Sears, Roebuck and Co. | Sears. | CSN0027419 |
| Sears, Roebuck and Co. | Sears. | CSN0027419 |
| Sears, Roebuck and Co. | Sears. | CSN0027420 |
| Sears, Roebuck and Co. | Sears. | CSN0027420 |
| Sears, Roebuck and Co. | Sears. | CSN0027421 |
| Sears, Roebuck and Co. | Sears. | CSN0027421 |
| Sears, Roebuck and Co. | Sears. | CSN0027422 |
| Sears, Roebuck and Co. | Sears. | CSN0027422 |
| Sears, Roebuck and Co. | Sears ... catalog of made to measure window fashions. | CSN0027427 |
| Sears, Roebuck and Co. | Sears ... catalog of made to measure window fashions. | CSN0027427 |
| Sears, Roebuck and Co. | Sears floorcoverings ... | CSN0027429 |
| Sears, Roebuck and Co. | Sears floorcoverings ... | CSN0027429 |
| Sears, Roebuck and Co. | Sears floorcoverings ... | CSN0027429 |
| Sears, Roebuck and Co. | Sears ... farm and ranch catalog. | CSN0027430 |
| Sears, Roebuck and Co. | Sears ... men's apparel catalog of big and tall sizes. | CSN0027435 |
| Sears, Roebuck and Co. | Sears ... men's apparel catalog of big and tall sizes. | CSN0027435 |
| Sears, Roebuck and Co. | Uniforms . : for women and men engaged in medical, laboratory, restaurant, and hair styling services / Sears. | CSN0027973 |
| Sears, Roebuck and Co. | Uniforms . : for women and men engaged in medical, laboratory, restaurant, and hair styling services / Sears. | CSN0027973 |
| Sears, Roebuck and Co. | Uniforms . : for women and men engaged in medical, laboratory, restaurant, and hair styling services / Sears. | CSN0027973 |
| Sears, Roebuck and Co. | Uniforms . : for women and men engaged in medical, laboratory, restaurant, and hair styling services / Sears. | CSN0027973 |
| Sears, Roebuck and Co. | Uniforms . : for women and men engaged in medical, laboratory, restaurant, and hair styling services / Sears. | CSN0027973 |

| Owner | Full Title | Registration Number |
|---|---|---|
| Sears, Roebuck and Co. | Uniforms . : for women and men engaged in medical, laboratory, restaurant, and hair styling services / Sears. | CSN0027973 |
| Sears, Roebuck and Co. | Uniforms . : for women and men engaged in medical, laboratory, restaurant, and hair styling services / Sears. | CSN0027973 |
| Sears, Roebuck and Co. | Uniforms . : our complete selection in the sizes, styles, and fabrics you want!. | CSN0027973 |
| Sears, Roebuck and Co. | Uniforms . : our complete selection in the sizes, styles, and fabrics you want!. | CSN0027973 |
| Sears, Roebuck and Co. | Uniforms . : our complete selection in the sizes, styles, and fabrics you want!. | CSN0027973 |
| Sears, Roebuck and Co. | Apparel catalog for big and tall men. | CSN0028549 |
| Sears, Roebuck and Co. | Apparel catalog for big and tall men. | CSN0028549 |
| Sears, Roebuck and Co. | Home health care : catalog / Sears, Roebuck and Company. | CSN0029828 |
| Sears, Roebuck and Co. | Home health care : catalog / Sears, Roebuck and Company. | CSN0029828 |
| Sears, Roebuck and Co. | Home health care : catalog / Sears, Roebuck and Company. | CSN0029828 |
| Sears, Roebuck and Co. | Home health care : catalog / Sears, Roebuck and Company. | CSN0029828 |
| Sears, Roebuck and Co. | Home health care : catalog / Sears, Roebuck and Company. | CSN0029828 |
| Sears, Roebuck and Co. | Home health care : catalog / Sears, Roebuck and Company. | CSN0029828 |
| Sears, Roebuck and Co. | Home health care : America's largest catalog of hospital-quality items for the home. | CSN0029828 |
| Sears, Roebuck and Co. | Pacific coaster / editor, Veronica F. Gunnerson ... [et al.]. | CSN0030758 |
| Sears, Roebuck and Co. | Pacific coaster / editor, Veronica F. Gunnerson ... [et al.]. | CSN0030758 |
| Sears, Roebuck and Co. | Sears : wish book for the ... holiday season. | CSN0031224 |
| Sears, Roebuck and Co. | Sears : wish book for the ... holiday season. | CSN0031225 |
| Sears, Roebuck and Co. | Sears : wish book for the ... holiday season. | CSN0031226 |
| Sears, Roebuck and Co. | Sears : wish book for the ... holiday season. | CSN0031227 |
| Sears, Roebuck and Co. | Sears : wish book for the ... holiday season. | CSN0031228 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0031229 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0031229 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0031230 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0031230 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0031230 |
| Sears, Roebuck and Co. | Sears western catalog... | CSN0031237 |
| Sears, Roebuck and Co. | Sears western catalog... [Philadelphia-Boston ed.]. | CSN0031238 |
| Sears, Roebuck and Co. | Office supplies and equipment ... catalog. | CSN0034564 |
| Sears, Roebuck and Co. | Office supplies and equipment ... catalog. | CSN0034564 |

| Owner | Full Title | Registration Number |
|---|---|---|
| Sears, Roebuck and Co. | Office supplies and equipment ... catalog. | CSN0034565 |
| Sears, Roebuck and Co. | Office supplies and equipment ... catalog. | CSN0034565 |
| Sears, Roebuck and Co. | Office supplies and equipment ... catalog. | CSN0034566 |
| Sears, Roebuck and Co. | Office supplies and equipment ... catalog. | CSN0034566 |
| Sears, Roebuck and Co. | Sears : summer ... : catalog. | CSN0035129 |
| Sears, Roebuck and Co. | Sears boating and fishing catalog for .. | CSN0035133 |
| Sears, Roebuck and Co. | Sears boating and fishing catalog for .. | CSN0035133 |
| Sears, Roebuck and Co. | Sears boating and fishing catalog for .. | CSN0035134 |
| Sears, Roebuck and Co. | Sears boating and fishing catalog for .. | CSN0035134 |
| Sears, Roebuck and Co. | Sears boating and fishing catalog for .. | CSN0035135 |
| Sears, Roebuck and Co. | Sears boating and fishing catalog for .. | CSN0035135 |
| Sears, Roebuck and Co. | Sears ... farm & ranch catalog. | CSN0035137 |
| Sears, Roebuck and Co. | Sears ... farm & ranch catalog. | CSN0035138 |
| Sears, Roebuck and Co. | Sears ... farm & ranch catalog. | CSN0035139 |
| Sears, Roebuck and Co. | Sears Rec ... vehicle parts and accessories catalog. | CSN0035142 |
| Sears, Roebuck and Co. | Sears Rec ... vehicle parts and accessories catalog. | CSN0035143 |
| Sears, Roebuck and Co. | Sears West / editor, Veronica F. Gunnerson. | CSN0035147 |
| Sears, Roebuck and Co. | Sears West / editor, Veronica F. Gunnerson. | CSN0035147 |
| Sears, Roebuck and Co. | Sears West / editor, Veronica F. Gunnerson. | CSN0035147 |
| Sears, Roebuck and Co. | Sears West / editor, Veronica F. Gunnerson. | CSN0035147 |
| Sears, Roebuck and Co. | Sears : Wish Book : catalog. | CSN0038929 |
| Sears, Roebuck and Co. | Sears : Wish Book : catalog. | CSN0038929 |
| Sears, Roebuck and Co. | Sears : Wish Book : catalog. | CSN0038929 |
| Sears, Roebuck and Co. | Sears : Wish Book : catalog. | CSN0038930 |
| Sears, Roebuck and Co. | Sears : Wish Book : catalog. | CSN0038930 |
| Sears, Roebuck and Co. | Sears : Wish Book : catalog. | CSN0038931 |
| Sears, Roebuck and Co. | Sears : Wish Book : catalog. | CSN0038931 |
| Sears, Roebuck and Co. | Sears : Wish Book : catalog. | CSN0038931 |
| Sears, Roebuck and Co. | Sears : Wish Book : catalog. | CSN0038931 |
| Sears, Roebuck and Co. | Sears : Wish Book : catalog. | CSN0038931 |
| Sears, Roebuck and Co. | Sears : Wish Book : catalog. | CSN0038931 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0038932 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0038932 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0038932 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0038932 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0038932 |

| Owner | Full Title | Registration Number |
|---|---|---|
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0038932 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0038932 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0038932 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0038932 |
| Sears, Roebuck and Co. | Winter sports apparel and equipment catalog / Sears, Roebuck, and Company. | CSN0039616 |
| Sears, Roebuck and Co. | Accessories for mobile homes. | CSN0039757 |
| Sears, Roebuck and Co. | Accessories for mobile homes. | CSN0039757 |
| Sears, Roebuck and Co. | Apparel for big and tall men : catalog. | CSN0039897 |
| Sears, Roebuck and Co. | Apparel for big and tall men : catalog. | CSN0039897 |
| Sears, Roebuck and Co. | Apparel for big and tall men : catalog. | CSN0039897 |
| Sears, Roebuck and Co. | Especially for mother and baby. | CSN0040699 |
| Sears, Roebuck and Co. | Floorcoverings. | CSN0040814 |
| Sears, Roebuck and Co. | Made-to-your-measure window fashions : catalog. | CSN0041423 |
| Sears, Roebuck and Co. | Rec vehicles. | CSN0042081 |
| Sears, Roebuck and Co. | Sears : catalog. | CSN0042220 |
| Sears, Roebuck and Co. | Sears : catalog. | CSN0042220 |
| Sears, Roebuck and Co. | Sears : catalog. | CSN0042221 |
| Sears, Roebuck and Co. | Sears : catalog. | CSN0042221 |
| Sears, Roebuck and Co. | Sears : catalog. | CSN0042221 |
| Sears, Roebuck and Co. | Sears : catalog. | CSN0042222 |
| Sears, Roebuck and Co. | Sears : catalog. | CSN0042222 |
| Sears, Roebuck and Co. | Sears : catalog. | CSN0042222 |
| Sears, Roebuck and Co. | Sears : summer ... : catalog. | CSN0042223 |
| Sears, Roebuck and Co. | Sears : summer ... : catalog. | CSN0042223 |
| Sears, Roebuck and Co. | Sears : summer ... : catalog. | CSN0042224 |
| Sears, Roebuck and Co. | Sears : summer ... : catalog. | CSN0042225 |
| Sears, Roebuck and Co. | Sears : summer ... : catalog. | CSN0042225 |
| Sears, Roebuck and Co. | Apparel plus hard-to-find items for big and tall men : [GJ ... key letter : catalog]. | CSN0043029 |
| Sears, Roebuck and Co. | Boating and fishing. | CSN0043206 |
| Sears, Roebuck and Co. | Boating and fishing. | CSN0043206 |
| Sears, Roebuck and Co. | Boating and fishing. | CSN0043206 |
| Sears, Roebuck and Co. | Boating and fishing. | CSN0043206 |
| Sears, Roebuck and Co. | Boating and fishing. | CSN0043207 |
| Sears, Roebuck and Co. | Boating and fishing. | CSN0043207 |
| Sears, Roebuck and Co. | Boating and fishing. | CSN0043207 |

| Owner | Full Title | Registration Number |
|---|---|---|
| Sears, Roebuck and Co. | Boating and fishing. | CSN0043207 |
| Sears, Roebuck and Co. | Boating and fishing. | CSN0043207 |
| Sears, Roebuck and Co. | Boating and fishing. | CSN0043207 |
| Sears, Roebuck and Co. | Especially for cooks. | CSN0043844 |
| Sears, Roebuck and Co. | Especially for cooks. | CSN0043844 |
| Sears, Roebuck and Co. | Farm and ranch. | CSN0043878 |
| Sears, Roebuck and Co. | Farm and ranch. | CSN0043878 |
| Sears, Roebuck and Co. | Farm and ranch. | CSN0043878 |
| Sears, Roebuck and Co. | Farm and ranch. | CSN0043878 |
| Sears, Roebuck and Co. | Fashions in women's and half sizes. | CSN0043889 |
| Sears, Roebuck and Co. | Fashions in women's and half sizes. | CSN0043889 |
| Sears, Roebuck and Co. | Fashions in women's and half sizes. | CSN0043889 |
| Sears, Roebuck and Co. | Fashions in women's and half sizes. | CSN0043889 |
| Sears, Roebuck and Co. | Office supplies and equipment. | CSN0044920 |
| Sears, Roebuck and Co. | Office supplies and equipment. | CSN0044920 |
| Sears, Roebuck and Co. | Office supplies and equipment. | CSN0044920 |
| Sears, Roebuck and Co. | Office supplies and equipment. | CSN0044920 |
| Sears, Roebuck and Co. | Western : catalog. | CSN0045781 |
| Sears, Roebuck and Co. | Western : catalog. | CSN0045781 |
| Sears, Roebuck and Co. | Accessories for your mobile home or manufactured home. | CSN0045954 |
| Sears, Roebuck and Co. | Accessories for your mobile home or manufactured home. | CSN0045954 |
| Sears, Roebuck and Co. | Boating and fishing. | CSN0046215 |
| Sears, Roebuck and Co. | Carpeting. | CSN0046346 |
| Sears, Roebuck and Co. | Carpeting ; and decorator rugs, vinyl sheet goods, cushions, installation accessories : ideas for your home. | CSN0046346 |
| Sears, Roebuck and Co. | Carpeting ; and decorator rugs, vinyl sheet goods, cushions, installation accessories : ideas for your home. | CSN0046346 |
| Sears, Roebuck and Co. | Especially for home owners. | CSN0046792 |
| Sears, Roebuck and Co. | Farm and garden. | CSN0046833 |
| Sears, Roebuck and Co. | Farm and garden. | CSN0046834 |
| Sears, Roebuck and Co. | Recreational vehicle and camping equipment. --1983-. | CSN0047948 |
| Sears, Roebuck and Co. | Recreational vehicle and camping equipment. --1983-. | CSN0047948 |
| Sears, Roebuck and Co. | Recreational vehicle and camping equipment. --1983-. | CSN0047948 |
| Sears, Roebuck and Co. | Recreational vehicle and camping equipment. --1983-. | CSN0047948 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0048076 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0048076 |

| Owner | Full Title | Registration Number |
|---|---|---|
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0048076 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0048076 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0048077 |
| Sears, Roebuck and Co. | Sears : summer catalog...... | CSN0049734 |
| Sears, Roebuck and Co. | Especially for mother to be & baby. | CSN0049734 |
| Sears, Roebuck and Co. | Especially for mother to be & baby. | CSN0051019 |
| Sears, Roebuck and Co. | Power and hand tools. | CSN0051019 |
| Sears, Roebuck and Co. | Power and hand tools. | CSN0051019 |
| Sears, Roebuck and Co. | Power and hand tools. | CSN0051019 |
| Sears, Roebuck and Co. | Power and hand tools. | CSN0051019 |
| Sears, Roebuck and Co. | Power and hand tools. | CSN0051019 |
| Sears, Roebuck and Co. | Power and hand tools. | CSN0051019 |
| Sears, Roebuck and Co. | Sears : Wish Book : [catalog]. | CSN0051314 |
| Sears, Roebuck and Co. | Sears calling : featuring over 250 phone products from Sears, A T & T, I T T, Magnavox, Panasonic, Phone-Mate, G T E, and others. | CSN0051316 |
| Sears, Roebuck and Co. | Sear, Roebuck, and Company annual report ... | CSN0051320 |
| Sears, Roebuck and Co. | Sear, Roebuck, and Company annual report ... | CSN0051320 |
| Sears, Roebuck and Co. | Stitch 'n' latch crafts. | CSN0051469 |
| Sears, Roebuck and Co. | Toys. | CSN0051646 |
| Sears, Roebuck and Co. | Big and tall men. | CSN0052269 |
| Sears, Roebuck and Co. | Big and tall men. | CSN0052269 |
| Sears, Roebuck and Co. | Big and tall men. | CSN0052269 |
| Sears, Roebuck and Co. | Big and tall men. | CSN0052269 |
| Sears, Roebuck and Co. | Big and tall men. | CSN0052269 |
| Sears, Roebuck and Co. | Farm, ranch, and garden. | CSN0052916 |
| Sears, Roebuck and Co. | Farm, ranch, and garden. | CSN0052916 |
| Sears, Roebuck and Co. | Fix it up headquarters for your mobile home or manufactured home. | CSN0052965 |
| Sears, Roebuck and Co. | Ideas for your home : appliances. | CSN0053307 |
| Sears, Roebuck and Co. | Ideas for your home : kitchen & bath. | CSN0053308 |
| Sears, Roebuck and Co. | Ideas for your home : kitchen and bath. | CSN0053308 |
| Sears, Roebuck and Co. | Ideas for your home : kitchen and bath. | CSN0053308 |
| Sears, Roebuck and Co. | Ideas for your home : kitchen and bath. | CSN0053308 |
| Sears, Roebuck and Co. | Sears : spring, summer : [catalog]. | CSN0054425 |
| Sears, Roebuck and Co. | Sears : spring, summer : [catalog]. | CSN0054425 |
| Sears, Roebuck and Co. | Sears : spectacular spring/summer catalog values. | CSN0054426 |
| : Sears, Roebuck and Co. | Sears : spring, summer : [catalog]. | CSN0054427 |

| Owner | Full Title | Registration Number |
|---|---|---|
| Sears, Roebuck and Co. | Sears : spring, summer : [catalog]. | CSN0054427 |
| Sears, Roebuck and Co. | Sears : spring, summer : [catalog]. | CSN0054427 |
| Sears, Roebuck and Co. | Sears : spring, summer : [catalog]. | CSN0054427 |
| Sears, Roebuck and Co. | Sears : spectacular winter catalog : apparel, home fashions, appliances, electronics sale. | CSN0054428 |
| Sears, Roebuck and Co. | Sears : spectacular winter catalog : apparel, home fashions, appliances, electronics sale. | CSN0054428 |
| Sears, Roebuck and Co. | Sears : spectacular winter catalog : apparel, home fashions, appliances, electronics sale. | CSN0054429 |
| Sears, Roebuck and Co. | Sears : spectacular winter catalog : apparel, home fashions, appliances, electronics sale. | CSN0054429 |
| Sears, Roebuck and Co. | Cameras and photo/video equipment : catalog. | CSN0055372 |
| Sears, Roebuck and Co. | Fashions, women's and half sizes. | CSN0055886 |
| Sears, Roebuck and Co. | Home health care resource. | CSN0056110 |
| Sears, Roebuck and Co. | Home health care resource. | CSN0056111 |
| Sears, Roebuck and Co. | Home health care resource. | CSN0056112 |
| Sears, Roebuck and Co. | Home health care resource. | CSN0056113 |
| Sears, Roebuck and Co. | Home health care resource. | CSN0056114 |
| Sears, Roebuck and Co. | Home health care resource. | CSN0056115 |
| Sears, Roebuck and Co. | Home health care resource. | CSN0056116 |
| Sears, Roebuck and Co. | Home health care resource. | CSN0056117 |
| Sears, Roebuck and Co. | Home health care resource. | CSN0056118 |
| Sears, Roebuck and Co. | Home health care resource. | CSN0056119 |
| Sears, Roebuck and Co. | Home health care resource. | CSN0056120 |
| Sears, Roebuck and Co. | Home health care resource. | CSN0056121 |
| Sears, Roebuck and Co. | Home health care resource. | CSN0056122 |
| Sears, Roebuck and Co. | Home health care resource. | CSN0056123 |
| Sears, Roebuck and Co. | Home health care resource. | CSN0056124 |
| Sears, Roebuck and Co. | Home health care resource : catalog. | CSN0056125 |
| Sears, Roebuck and Co. | Home health care resource. | CSN0056126 |
| Sears, Roebuck and Co. | Home health care resource. | CSN0056127 |
| Sears, Roebuck and Co. | Home health care resource. | CSN0056128 |
| Sears, Roebuck and Co. | Men's work clothes : catalog. | CSN0056570 |
| Sears, Roebuck and Co. | Mother-to-be and baby. | CSN0056657 |
| Sears, Roebuck and Co. | Mother-to-be and baby. | CSN0056657 |
| Sears, Roebuck and Co. | Mother-to-be and baby. | CSN0056657 |

| Owner | Full Title | Registration Number |
|---|---|---|
| Sears, Roebuck and Co. | Sears : Wish Book : [catalog]. | CSN0057258 |
| Sears, Roebuck and Co. | Sears : Wish Book : [catalog]. | CSN0057258 |
| Sears, Roebuck and Co. | Sears : Wish Book : [catalog]. | CSN0057258 |
| Sears, Roebuck and Co. | Sears : Wish Book : [catalog]. | CSN0057258 |
| Sears, Roebuck and Co. | Stith, latch & other crafts. | CSN0057423 |
| Sears, Roebuck and Co. | America's catalog headquarters for replacement merchandise for your mobile home. | CSN0058008 |
| Sears, Roebuck and Co. | Farm, ranch, and estate. | CSN0058939 |
| Sears, Roebuck and Co. | Farm, ranch, and estate. | CSN0058939 |
| Sears, Roebuck and Co. | Farm, ranch, and estate. | CSN0058939 |
| Sears, Roebuck and Co. | Home health care resource. | CSN0059196 |
| Sears, Roebuck and Co. | Home health care resource. | CSN0059196 |
| Sears, Roebuck and Co. | Industrial products catalog : Sears contract sales. | CSN0059323 |
| Sears, Roebuck and Co. | Industrial products catalog : Sears contract sales. | CSN0059323 |
| Sears, Roebuck and Co. | Office equipment and supplies. | CSN0059949 |
| Sears, Roebuck and Co. | Office equipment and supplies. | CSN0059949 |
| Sears, Roebuck and Co. | Office equipment and supplies. | CSN0059949 |
| Sears, Roebuck and Co. | Office equipment and supplies. | CSN0059949 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0060448 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0060448 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0060448 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0060448 |
| Sears, Roebuck and Co. | Sears : [catalog]. | CSN0060448 |
| Sears, Roebuck and Co. | Crafts. | CSN0061775 |
| Sears, Roebuck and Co. | Ideas for your home : home comfort. | CSN0062384 |
| Sears, Roebuck and Co. | In your size : for men 5 ft. 7 in. and under. | CSN0062408 |
| Sears, Roebuck and Co. | In your size big and tall men. | CSN0062409 |
| Sears, Roebuck and Co. | In your size big and tall men. | CSN0062409 |
| Sears, Roebuck and Co. | In your size big and tall men. | CSN0062409 |
| Sears, Roebuck and Co. | In your size petites. | CSN0062410 |
| Sears, Roebuck and Co. | In your size petites. | CSN0062410 |
| Sears, Roebuck and Co. | In your size petites. | CSN0062410 |
| Sears, Roebuck and Co. | In your size women's and half sizes. | CSN0062411 |
| Sears, Roebuck and Co. | In your size women's and half sizes. | CSN0062411 |
| Sears, Roebuck and Co. | In your size women's and half sizes. | CSN0062411 |
| Sears, Roebuck and Co. | In your size workwear. | CSN0062412 |

| Owner | Full Title | Registration Number |
|---|---|---|
| Sears, Roebuck and Co. | In your size workwear. | CSN0062412 |
| Sears, Roebuck and Co. | Motorcycle and A T V parts and accessories. | CSN0062813 |
| Sears, Roebuck and Co. | Ideas for your home : carpeting and no-wax vinyl flooring. | CSN0065294 |
| Sears, Roebuck and Co. | Ideas for your home : heating and cooling. | CSN0065295 |
| Sears, Roebuck and Co. | Ideas for your home : mobile home. | CSN0065296 |
| Sears, Roebuck and Co. | In your size for men 5 feet, 7 inches and under. | CSN0065317 |
| Sears, Roebuck and Co. | In your size uniforms. | CSN0065318 |
| Sears, Roebuck and Co. | In your size uniforms. | CSN0065318 |
| Sears, Roebuck and Co. | In your size uniforms. | CSN0065318 |
| Sears, Roebuck and Co. | Motorcycle accessories and apparel : catalog. | CSN0065782 |
| Sears, Roebuck and Co. | Motorcycle accessories and apparel : catalog. | CSN0065782 |
| Sears, Roebuck and Co. | Motorcycle accessories and apparel : catalog. | CSN0065782 |
| Sears, Roebuck and Co. | Van, R V trailer and camping equipment : catalog. | CSN0066673 |
| Sears, Roebuck and Co. | 4x4, off-road pickup and camping equipment : catalog. | CSN0066835 |
| Sears, Roebuck and Co. | 4x4, off-road pickup and camping equipment : catalog. | CSN0066835 |
| Sears, Roebuck and Co. | Infants 'n' toddlers. | CSN0068093 |
| Sears, Roebuck and Co. | Infants 'n' toddlers. | CSN0068093 |
| Sears, Roebuck and Co. | Cooling : catalog. | CSN0070301 |
| Sears, Roebuck and Co. | Home health care products. | CSN0070869 |
| Sears, Roebuck and Co. | Home health care products. | CSN0070869 |
| Sears, Roebuck and Co. | Sears : home, hardware & leisure. | CSN0072137 |
| Sears, Roebuck and Co. | Sears : home, hardware & leisure. | CSN0072137 |
| Sears, Roebuck and Co. | Sears : home, hardware & leisure. | CSN0072137 |
| Sears, Roebuck and Co. | Sears : home, hardware & leisure. | CSN0072138 |
| Sears, Roebuck and Co. | Sears : home, hardware & leisure. | CSN0072138 |
| Sears, Roebuck and Co. | Sears. | CSN0072139 |
| Sears, Roebuck and Co. | Sears. | CSN0072139 |
| Sears, Roebuck and Co. | Van, R V and camping equipment : catalog. | CSN0072574 |
| Sears, Roebuck and Co. | Van, R V and camping equipment : catalog. | CSN0072574 |
| Sears, Roebuck and Co. | Heating : catalog. | CSN0073862 |
| Sears, Roebuck and Co. | Petites. | CSN0074643 |
| Sears, Roebuck and Co. | Sears : wish book for kids : America's greatest toy catalog. | CSN0074944 |
| Sears, Roebuck and Co. | Sears : wish book. | CSN0074944 |
| Sears, Roebuck and Co. | Sears : wish book. | CSN0074944 |
| Sears, Roebuck and Co. | Women's and half sizes. | CSN0075429 |

| Owner | Full Title | Registration Number |
|---|---|---|
| Sears, Roebuck and Co. | Health care : America's largest catalog assortment of hospital-quality merchandise. | CSN0076694 |
| Sears, Roebuck and Co. | Health care : America's largest catalog assortment of hospital-quality merchandise. | CSN0076694 |
| Sears, Roebuck and Co. | Health care : America's largest catalog assortment of hospital-quality merchandise. | CSN0076694 |
| Sears, Roebuck and Co. | Mobile home accessories : the largest catalog selection anywhere of products specifically designed for your mobile home. | CSN0077241 |
| Sears, Roebuck and Co. | Sears : America's favorite catalog. | CSN0077872 |
| Sears, Roebuck and Co. | Sears : America's favorite catalog. | CSN0077873 |
| Sears, Roebuck and Co. | Sears : America's favorite catalog. | CSN0077873 |
| Sears, Roebuck and Co. | Sears : America's favorite catalog. | CSN0080621 |
| Sears, Roebuck and Co. | Sears : America's favorite catalog. | CSN0080621 |
| Sears, Roebuck and Co. | Sears : America's favorite catalog. | CSN0080621 |
| Sears, Roebuck and Co. | Mature Outlook / editor, Ed Kittrell ... [et al.]. | CSN0082660 |
| Sears, Roebuck and Co. | Mature Outlook / editor, Ed Kittrell ... [et al.]. | CSN0082660 |
| Sears, Roebuck and Co. | Mobile home : the largest catalog selection of products designed for mobile homes : specialog. | CSN0082725 |
| Sears, Roebuck and Co. | Mobile home : the largest catalog selection of products designed for mobile homes : specialog. | CSN0082725 |
| Sears, Roebuck and Co. | Office : essentials for your home or business : specialog. | CSN0082876 |
| Sears, Roebuck and Co. | Sears boating : we sell more boats and motors than any other retailer in America!. | CSN0083306 |
| Sears, Roebuck and Co. | Style : Sears catalog. | CSN0083447 |
| Sears, Roebuck and Co. | Style : Sears catalog. | CSN0083447 |
| Sears, Roebuck and Co. | Style : Sears catalog. | CSN0083447 |
| Sears, Roebuck and Co. | Sears : home, hardware, auto & leisure. | CSN0085913 |
| Sears, Roebuck and Co. | Sears : home, hardware, auto, and leisure : catalog. | CSN0085913 |
| Sears, Roebuck and Co. | Focus big & tall. | CSN0087265 |
| Sears, Roebuck and Co. | Focus, home update : Sears catalog. | CSN0087266 |
| Sears, Roebuck and Co. | Focus, home update : Sears catalog. | CSN0087266 |
| Sears, Roebuck and Co. | Sears : the great American Wish Book. | CSN0088355 |
| Sears, Roebuck and Co. | Sears : the great American Wish Book. | CSN0088355 |
| Sears, Roebuck and Co. | Sears : the great American Wish Book. | CSN0088355 |
| Sears, Roebuck and Co. | Sears catalog style. | CSN0088356 |
| Sears, Roebuck and Co. | Focus back to summer : Sears catalog. | CSN0089562 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Owner | Full Title | Registration Number |
|---|---|---|
| Sears, Roebuck and Co. | Sears : catalog. | CSN0090609 |
| Sears, Roebuck and Co. | Sears today. | CSN0090611 |
| Sears, Roebuck and Co. | Big and tall : styles to fit your size, big & tall plus regular : Sears catalog. | CSN0093593 |
| Sears, Roebuck and Co. | Automotive. | CSN0095661 |
| Sears, Roebuck and Co. | Sears … annual : catalog. | CSN0097366 |
| Sears, Roebuck and Co. | Sears … annual : catalog. | CSN0097366 |
| Sears, Roebuck and Co. | Sears : the great American Wish Book. | CSN0099567 |
| Sears, Roebuck and Co. | Sears connection : your link to the good life. | CSN0135867 |
| Sears, Roebuck and Co. | Sears connection : your link to the good life. | CSN0135867 |
| Sears, Roebuck de Puerto Rico, Inc. | Sears tiene de todo. | PA000021096 |
| Sears-Roebuck Foundation | Growing up, growing older / produced by Richard Whiting ; directed by Phil Alden Robinson. | PA000108820 |
| Sears, Roebuck and Co. | Not the triumph, but the struggle / produced by Universal Studios. | PA000195521 |
| Sears-Roebuck Foundation | USArt--the gift of ourselves / produced by Universal Studios ; produced by Bruce Seth Green ; written, directed, and edited by Stephen Judson. | PA000228198 |
| Sears, Roebuck and Co. | "Should be" grand opening. | PA000594541 |
| Sears, Roebuck and Co. | "Incredible"--sustaining. | PA000594542 |
| Sears, Roebuck and Co. | National home appliance sale / arr. Gerald Alters. | PAu000101135 |
| Sears, Roebuck and Co. | National home appliance sale / arr. Gerald Alters. | PAu000101135 |
| Sears, Roebuck and Co. | Road talker : 30 sec. | PAu000101136 |
| Sears, Roebuck and Co. | Road talker : 30 sec. | PAu000101136 |
| Sears, Roebuck and Co. | Sears national home appliance. | PAu000118786 |
| Sears, Roebuck and Co. | Sears national home appliance. | PAu000118786 |
| Sears, Roebuck and Co. | Sears Open Home--City girl : City girl / arr. Gerald Alters. | PAu000522936 |
| Sears, Roebuck and Co. | Sears Open Home--City girl : City girl / arr. Gerald Alters. | PAu000522936 |
| Sears, Roebuck and Co. | Take another look. | PAu002364362 |
| Sears, Roebuck and Co. | Take another look. | PAu002364362 |
| Sears, Roebuck and Co. | Sears 1951 Christmas book--Chicago. | RE000040181 |
| Sears, Roebuck and Co. | Sears 1951 Christmas book--Minneapolis. | RE000040182 |
| Sears, Roebuck and Co. | Sears 1951 Christmas book--Kansas City. | RE000040183 |
| Sears, Roebuck and Co. | Sears 1951 Christmas book--Philadelphia. | RE000040184 |
| Sears, Roebuck and Co. | Sears 1951 Christmas book--Boston. | RE000040185 |
| Sears, Roebuck and Co. | Sears 1951 Christmas book--Atlanta. | RE000040186 |
| Sears, Roebuck and Co. | Sears 1951 Christmas book--Memphis. | RE000040187 |
| Sears, Roebuck and Co. | Sears 1951 Christmas book--Dallas. | RE000040188 |
| Sears, Roebuck and Co. | Sears 1951 Christmas book--Seattle. | RE000040189 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Owner | Full Title | Registration Number |
|---|---|---|
| Sears, Roebuck and Co. | Sears 1951 Christmas book--LosAngeles. | RE000040190 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company, spring and summer 1951--Minneapolis. | RE000041164 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company, spring and summer 1951--Memphis. | RE000041165 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company, spring and summer 1951--Greensboro. | RE000041166 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company, spring and summer 1951--Chicago. | RE000041167 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company, spring and summer 1951--Seattle. | RE000041168 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company, spring and summer 1951--Dallas. | RE000041169 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company, spring and summer 1951--Boston. | RE000041170 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company, spring and summer 1951--Atlanta. | RE000041171 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company, spring and summer 1951--Kansas City. | RE000041172 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company, spring and summer 1951--Philadelphia. | RE000041173 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company, spring and summer 1951--LosAngeles. | RE000041174 |
| Sears, Roebuck and Co. | Sears 1951 spring-summer catalog--Dallas. | RE000041175 |
| Sears, Roebuck and Co. | Sears 1951 spring-summer catalog--Memphis. | RE000041176 |
| Sears, Roebuck and Co. | Sears 1951 spring-summer catalog--Greensboro. | RE000041177 |
| Sears, Roebuck and Co. | Sears 1951 spring-summer catalog--Seattle. | RE000041178 |
| Sears, Roebuck and Co. | Sears 1951 spring-summer catalog--Philadelphia. | RE000041179 |
| Sears, Roebuck and Co. | Sears 1951 spring-summer catalog--Kansas City. | RE000041180 |
| Sears, Roebuck and Co. | Sears 1951 spring-summer catalog--Boston. | RE000041181 |
| Sears, Roebuck and Co. | Sears 1951 spring-summer catalog--Atlanta. | RE000041182 |
| Sears, Roebuck and Co. | Sears 1951 spring-summer catalog--Chicago. | RE000041183 |
| Sears, Roebuck and Co. | Sears 1951 spring-summer catalog--Minneapolis. | RE000041184 |
| Sears, Roebuck and Co. | Sears 1951 spring-summer catalog--LosAngeles. | RE000041185 |
| Sears, Roebuck and Co. | Fall and winter 1951-Sears, Roebuck and Company, Chicago. | RE000041186 |
| Sears, Roebuck and Co. | Fall and winter 1951-Sears, Roebuck and Company, Memphis. | RE000041187 |
| Sears, Roebuck and Co. | Fall and winter 1951-Sears, Roebuck and Company, Greensboro. | RE000041188 |
| Sears, Roebuck and Co. | Fall and winter 1951-Sears, Roebuck and Company, Atlanta. | RE000041189 |
| Sears, Roebuck and Co. | Fall and winter 1951-Sears, Roebuck and Company, Boston. | RE000041190 |
| Sears, Roebuck and Co. | Fall and winter 1951-Sears, Roebuck and Company, LosAngeles. | RE000041191 |
| Sears, Roebuck and Co. | Fall and winter 1951-Sears, Roebuck and Company, Dallas. | RE000041192 |
| Sears, Roebuck and Co. | Fall and winter 1951-Sears, Roebuck and Company, Kansas City. | RE000041193 |
| Sears, Roebuck and Co. | Fall and winter 1951-Sears, Roebuck and Company, Seattle. | RE000041194 |
| Sears, Roebuck and Co. | Fall and winter 1951-Sears, Roebuck and Company, Philadelphia. | RE000041195 |
| Sears, Roebuck and Co. | Fall and winter 1951-Sears, Roebuck and Company, Minneapolis. | RE000041196 |
| Sears, Roebuck and Co. | Sears 1951 Christmas book, Greensboro, North Carolina. | RE000045480 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company, spring and summer 1952--Chicago. | RE000067700 |

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 786 of 1120

| Owner | Full Title | Registration Number |
|---|---|---|
| Sears, Roebuck and Co. | Sears, Roebuck and Company, spring and summer 1952--Kansas City. | RE000067701 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company, spring and summer 1952--Seattle. | RE000067702 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company, spring and summer 1952--Boston. | RE000067703 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company, spring and summer 1952--Greensboro. | RE000067704 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company, spring and summer 1952--Atlanta. | RE000067705 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company, spring and summer 1952--Philadelphia. | RE000067706 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company, spring and summer 1952--Dallas. | RE000067707 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company, spring and summer 1952--Minneapolis. | RE000067708 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company, spring and summer 1952--Memphis. | RE000067709 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company, spring and summer 1952--LosAngeles. | RE000067710 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company (Minneapolis) fall and winter 1952. | RE000067711 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company (Chicago) fall and winter 1952. | RE000067712 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company (Dallas) fall and winter 1952. | RE000067713 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company (Atlanta) fall and winter 1952. | RE000067714 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company (Greensboro) fall and winter 1952. | RE000067715 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company (Memphis) fall and winter 1952. | RE000067716 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company (Philadelphia) fall and winter 1952. | RE000067717 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company (LosAngeles) fall and winter 1952. | RE000067718 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company (Seattle) fall and winter 1952. | RE000067719 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company (Kansas City) fall and winter 1952. | RE000067720 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company (Boston) fall and winter 1952. | RE000067721 |
| Sears, Roebuck and Co. | Sears 1952 Christmas book--Dallas. | RE000067722 |
| Sears, Roebuck and Co. | Sears 1952 Christmas book--Kansas City. | RE000067723 |
| Sears, Roebuck and Co. | Sears 1952 Christmas book--LosAngeles. | RE000067724 |
| Sears, Roebuck and Co. | Sears 1952 Christmas book--Boston. | RE000067725 |
| Sears, Roebuck and Co. | Sears 1952 Christmas book--Minneapolis. | RE000067726 |
| Sears, Roebuck and Co. | Sears 1952 Christmas book--Greensboro. | RE000067727 |
| Sears, Roebuck and Co. | Sears 1952 Christmas book--Philadelphia. | RE000067728 |
| Sears, Roebuck and Co. | Sears 1952 Christmas book--Atlanta. | RE000067729 |
| Sears, Roebuck and Co. | Sears 1952 Christmas book--Seattle. | RE000067730 |
| Sears, Roebuck and Co. | Sears 1952 Christmas book--Chicago. | RE000067731 |
| Sears, Roebuck and Co. | Sears 1952 Christmas book--Memphis. | RE000067732 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company--spring and summer 1953--Atlanta. | RE000078705 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company--spring and summer 1953--Minneapolis. | RE000078706 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company--spring and summer 1953--Kansas City. | RE000078707 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company--spring and summer 1953--Boston. | RE000078708 |

| Owner | Full Title | Registration Number |
|-------|-----------|---------------------|
| Sears, Roebuck and Co. | Sears, Roebuck and Company--spring and summer 1953--Philadelphia. | RE000078709 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company--spring and summer 1953--Chicago. | RE000078710 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company--spring and summer 1953--Dallas. | RE000078711 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company--spring and summer 1953--Memphis. | RE000078712 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company--spring and summer 1953--Seattle. | RE000078713 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company--spring and summer 1953--Greensboro. | RE000078714 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company--spring and summer 1953--LosAngeles. | RE000078715 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company--fall and winter 1953--Boston. | RE000078716 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company--fall and winter 1953--Philadelphia. | RE000078717 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company--fall and winter 1953--Chicago. | RE000078718 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company--fall and winter 1953--LosAngeles. | RE000078719 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company--fall and winter 1953--Atlanta. | RE000078720 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company--fall and winter 1953--Greensboro. | RE000078721 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company--fall and winter 1953--Memphis. | RE000078722 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company--fall and winter 1953--Kansas City. | RE000078723 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company--fall and winter 1953--Minneapolis. | RE000078724 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company--fall and winter 1953--Dallas. | RE000078725 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company--fall and winter 1953--Seattle. | RE000078726 |
| Sears, Roebuck and Co. | Sears 1953 Christmas book--Minneapolis. | RE000078727 |
| Sears, Roebuck and Co. | Sears 1953 Christmas book--Chicago. | RE000078728 |
| Sears, Roebuck and Co. | Sears 1953 Christmas book--Boston. | RE000078729 |
| Sears, Roebuck and Co. | Sears 1953 Christmas book--Kansas City. | RE000078730 |
| Sears, Roebuck and Co. | Sears 1953 Christmas book--Atlanta. | RE000078731 |
| Sears, Roebuck and Co. | Sears, Roebuck and Company--Memphis. | RE000078732 |
| Sears, Roebuck and Co. | Sears 1953 Christmas book--Seattle. | RE000078733 |
| Sears, Roebuck and Co. | Sears 1953 Christmas book--Greensboro. | RE000078734 |
| Sears, Roebuck and Co. | Sears 1953 Christmas book--Philadelphia. | RE000078735 |
| Sears, Roebuck and Co. | Sears 1953 Christmas book--Dallas. | RE000078736 |
| Sears, Roebuck and Co. | Sears 1953 Christmas book--LosAngeles. | RE000078737 |
| Sears, Roebuck and Co. | Sears 1954 spring and summer (Minneapolis) | RE000118304 |
| Sears, Roebuck and Co. | Sears 1954 spring and summer (Greensboro) | RE000118305 |
| Sears, Roebuck and Co. | Sears 1954 spring and summer (LosAngeles) | RE000118306 |
| Sears, Roebuck and Co. | Sears 1954 spring and summer (Boston) | RE000118307 |
| Sears, Roebuck and Co. | Sears 1954 spring and summer (Seattle) | RE000118308 |
| Sears, Roebuck and Co. | Sears 1954 spring and summer (Memphis) | RE000118309 |
| Sears, Roebuck and Co. | Sears 1954 Christmas book (Philadelphia, abridged) | RE000118310 |

| Owner | Full Title | Registration Number |
|---|---|---|
| Sears, Roebuck and Co. | Sears 1954 Christmas book (Boston, abridged) | RE000118311 |
| Sears, Roebuck and Co. | Sears 1954 fall and winter (Seattle) | RE000118312 |
| Sears, Roebuck and Co. | Sears 1954 fall and winter (Atlanta) | RE000118313 |
| Sears, Roebuck and Co. | Sears 1954 spring and summer (Atlanta) | RE000118314 |
| Sears, Roebuck and Co. | Sears 1954 Christmas book (Minneapolis) | RE000118315 |
| Sears, Roebuck and Co. | Sears 1954 Christmas book (Boston) | RE000118316 |
| Sears, Roebuck and Co. | Sears 1954 Christmas book (Kansas City) | RE000118317 |
| Sears, Roebuck and Co. | Sears 1954 Christmas book (Philadelphia) | RE000118318 |
| Sears, Roebuck and Co. | Sears 1954 Christmas book (Chicago) | RE000118319 |
| Sears, Roebuck and Co. | Sears 1954 Christmas book (Greensboro) | RE000118320 |
| Sears, Roebuck and Co. | Sears 1954 fall and winter (Chicago) | RE000118321 |
| Sears, Roebuck and Co. | Sears 1954 spring and summer (Chicago) | RE000118322 |
| Sears, Roebuck and Co. | Sears 1954 fall and winter (Memphis) | RE000118323 |
| Sears, Roebuck and Co. | Sears 1954 fall and winter (LosAngeles) | RE000118324 |
| Sears, Roebuck and Co. | Sears 1954 fall and winter--Kansas City. | RE000118325 |
| Sears, Roebuck and Co. | Sears 1954 fall and winter--Dallas. | RE000118326 |
| Sears, Roebuck and Co. | Sears 1954 fall and winter--Philadelphia. | RE000118327 |
| Sears, Roebuck and Co. | Sears 1954 fall and winter--Minneapolis. | RE000118328 |
| Sears, Roebuck and Co. | Sears 1954 fall and winter--Boston. | RE000118329 |
| Sears, Roebuck and Co. | Sears 1954 fall and winter--Greensboro. | RE000118330 |
| Sears, Roebuck and Co. | Sears 1954 spring and summer--Dallas. | RE000118331 |
| Sears, Roebuck and Co. | Sears 1954 spring and summer--Philadelphia, Pa. | RE000118332 |
| Sears, Roebuck and Co. | Sears 1954 spring and summer--Kansas City. | RE000118333 |
| Sears, Roebuck and Co. | Sears 1954 Christmas book--LosAngeles. | RE000118334 |
| Sears, Roebuck and Co. | Sears 1954 Christmas book--Seattle. | RE000118335 |
| Sears, Roebuck and Co. | Sears 1954 Christmas book--Dallas. | RE000118336 |
| Sears, Roebuck and Co. | Sears 1954 Christmas book--Memphis. | RE000118337 |
| Sears, Roebuck and Co. | Sears 1954 Christmas book--Atlanta. | RE000118338 |
| Sears, Roebuck and Co. | Sears 1955, spring and summer (Atlanta, Georgia) | RE000152657 |
| Sears, Roebuck and Co. | Sears 1955, spring and summer (Seattle) | RE000152658 |
| Sears, Roebuck and Co. | Sears 1955, spring and summer (Greensboro) | RE000152659 |
| Sears, Roebuck and Co. | Sears 1955, spring and summer (Minneapolis, Minnesota) | RE000152660 |
| Sears, Roebuck and Co. | Sears 1955, spring and summer (Philadelphia) | RE000152661 |
| Sears, Roebuck and Co. | Sears 1955, spring and summer (Chicago) | RE000152662 |
| Sears, Roebuck and Co. | Sears 1955, spring and summer (Memphis) | RE000152663 |
| Sears, Roebuck and Co. | Sears 1955, spring and summer (Dallas) | RE000152664 |

| Owner | Full Title | Registration Number |
|-------|-----------|---------------------|
| Sears, Roebuck and Co. | Sears 1955, spring and summer (Boston) | RE000152665 |
| Sears, Roebuck and Co. | Sears 1955, spring and summer (Kansas City) | RE000152666 |
| Sears, Roebuck and Co. | Sears 1955, spring and summer (LosAngeles) | RE000152667 |
| Sears, Roebuck and Co. | Pattern for progress. Fall & winter 1955 (Chicago) | RE000152668 |
| Sears, Roebuck and Co. | Pattern for progress. Fall & winter 1955 (Atlanta) | RE000152669 |
| Sears, Roebuck and Co. | Pattern for progress. Fall & winter 1955 (LosAngeles) | RE000152670 |
| Sears, Roebuck and Co. | Pattern for progress. Fall & winter 1955 (Boston) | RE000152671 |
| Sears, Roebuck and Co. | Pattern for progress. Fall & winter 1955 (Kansas City) | RE000152672 |
| Sears, Roebuck and Co. | Pattern for progress. Fall & winter 1955 (Dallas) | RE000152673 |
| Sears, Roebuck and Co. | Pattern for progress. Fall & winter 1955 (Philadelphia) | RE000152674 |
| Sears, Roebuck and Co. | Pattern for progress. Fall & winter 1955 (Seattle) | RE000152675 |
| Sears, Roebuck and Co. | Pattern for progress. Fall & winter 1955 (Minneapolis) | RE000152676 |
| Sears, Roebuck and Co. | Pattern for progress. Fall & winter 1955 (Memphis) | RE000152677 |
| Sears, Roebuck and Co. | Pattern for progress. Fall & winter 1955 (Greensboro) | RE000152678 |
| Sears, Roebuck and Co. | Sears 1955 Christmas book (Philadelphia) | RE000152679 |
| Sears, Roebuck and Co. | Sears 1955 Christmas book (Philadelphia) | RE000152680 |
| Sears, Roebuck and Co. | Sears 1955 Christmas book (Dallas) | RE000152681 |
| Sears, Roebuck and Co. | Sears 1955 Christmas book (Greensboro) | RE000152682 |
| Sears, Roebuck and Co. | Sears 1955 Christmas book (Chicago) | RE000152683 |
| Sears, Roebuck and Co. | Sears 1955 Christmas book (Chicago) | RE000152684 |
| Sears, Roebuck and Co. | Sears 1955 Christmas book (Minneapolis) | RE000152685 |
| Sears, Roebuck and Co. | Sears 1955 Christmas book (Minneapolis) | RE000152686 |
| Sears, Roebuck and Co. | Sears 1955 Christmas book (Seattle) | RE000152687 |
| Sears, Roebuck and Co. | Sears 1955 Christmas book (Seattle) | RE000152688 |
| Sears, Roebuck and Co. | Sears 1955 Christmas book (Memphis) | RE000152689 |
| Sears, Roebuck and Co. | Sears 1955 Christmas book (Memphis) | RE000152690 |
| Sears, Roebuck and Co. | Sears 1955 Christmas book (Atlanta) | RE000152691 |
| Sears, Roebuck and Co. | Sears 1955 Christmas book (Boston) | RE000152692 |
| Sears, Roebuck and Co. | Sears 1955 Christmas book (LosAngeles) | RE000152693 |
| Sears, Roebuck and Co. | Sears 1955 Christmas book (Kansas City) | RE000152694 |
| Sears, Roebuck and Co. | Sears 1956 spring and summer (Chicago) | RE000191469 |
| Sears, Roebuck and Co. | Sears 1956 spring and summer (Philadelphia) | RE000191470 |
| Sears, Roebuck and Co. | Sears 1956 spring and summer (Boston) | RE000191471 |
| Sears, Roebuck and Co. | Sears 1956 spring and summer (LosAngeles) | RE000191472 |
| Sears, Roebuck and Co. | Sears 1956 spring and summer (Greensboro) | RE000191473 |
| Sears, Roebuck and Co. | Sears 1956 spring and summer (Seattle) | RE000191474 |

| Owner | Full Title | Registration Number |
|---|---|---|
| Sears, Roebuck and Co. | Sears 1956 spring and summer--Dallas. | RE000191475 |
| Sears, Roebuck and Co. | Sears 1956 spring and summer--Kansas City. | RE000191476 |
| Sears, Roebuck and Co. | Sears 1956 spring and summer--Minneapolis. | RE000191477 |
| Sears, Roebuck and Co. | Sears 1956 spring and summer--Atlanta. | RE000191478 |
| Sears, Roebuck and Co. | Sears 1956 spring and summer--Memphis. | RE000191479 |
| Sears, Roebuck and Co. | Sears 1956 fall and winter--Philadelphia. | RE000191480 |
| Sears, Roebuck and Co. | Sears 1956 fall and winter--Atlanta. | RE000191481 |
| Sears, Roebuck and Co. | Sears 1956 fall and winter--Kansas City. | RE000191482 |
| Sears, Roebuck and Co. | Sears 1956 fall and winter--Seattle. | RE000191483 |
| Sears, Roebuck and Co. | Sears 1956 fall and winter--Chicago. | RE000191484 |
| Sears, Roebuck and Co. | Sears 1956 fall and winter--Dallas. | RE000191485 |
| Sears, Roebuck and Co. | Sears 1956 fall and winter--Minneapolis. | RE000191486 |
| Sears, Roebuck and Co. | Sears 1956 fall and winter--Greensboro. | RE000191487 |
| Sears, Roebuck and Co. | Sears 1956 fall and winter--LosAngeles. | RE000191488 |
| Sears, Roebuck and Co. | Sears 1956 fall and winter--Memphis. | RE000191489 |
| Sears, Roebuck and Co. | Sears 1956 fall and winter--Boston. | RE000191490 |
| Sears, Roebuck and Co. | Sears 1956 Christmas book--Memphis. | RE000191491 |
| Sears, Roebuck and Co. | Sears 1956 Christmas book--Philadelphia. | RE000191492 |
| Sears, Roebuck and Co. | Sears 1956 Christmas book--Greensboro. | RE000191493 |
| Sears, Roebuck and Co. | Sears 1956 Christmas book--Kansas City. | RE000191494 |
| Sears, Roebuck and Co. | Sears 1956 Christmas book--Seattle. | RE000191495 |
| Sears, Roebuck and Co. | Sears 1956 Christmas book--Chicago. | RE000191496 |
| Sears, Roebuck and Co. | Sears 1956 Christmas book--Dallas. | RE000191497 |
| Sears, Roebuck and Co. | Sears 1956 Christmas book--LosAngeles. | RE000191498 |
| Sears, Roebuck and Co. | Sears 1956 Christmas book--Minneapolis. | RE000191499 |
| Sears, Roebuck and Co. | Sears 1956 Christmas book--Atlanta. | RE000191500 |
| Sears, Roebuck and Co. | Sears 1956 Christmas book--Boston. | RE000191501 |
| Sears, Roebuck and Co. | It's always in fashion to shop at Sears. Spring and summer 1957 (Minneapolis) | RE000243002 |
| Sears, Roebuck and Co. | It's always in fashion to shop at Sears. Spring and summer 1957 (Kansas City) | RE000243003 |
| Sears, Roebuck and Co. | It's always in fashion to shop at Sears. Spring and summer 1957 (Philadelphia) | RE000243004 |
| Sears, Roebuck and Co. | It's always in fashion to shop at Sears. Spring and summer 1957 (Memphis) | RE000243005 |
| Sears, Roebuck and Co. | It's always in fashion to shop at Sears. Spring and summer 1957 (Boston) | RE000243006 |
| Sears, Roebuck and Co. | It's always in fashion to shop at Sears. Spring and summer 1957 (Atlanta) | RE000243007 |

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 791 of 1120

| Owner | Full Title | Registration Number |
|---|---|---|
| Sears, Roebuck and Co. | It's always in fashion to shop at Sears. Spring and summer 1957 (Dallas) | RE000243008 |
| Sears, Roebuck and Co. | It's always in fashion to shop at Sears. Spring and summer 1957 (LosAngeles) | RE000243009 |
| Sears, Roebuck and Co. | It's always in fashion to shop at Sears. Spring and summer 1957 (Chicago) | RE000243010 |
| Sears, Roebuck and Co. | It's always in fashion to shop at Sears. Spring and summer 1957 (Seattle) | RE000243011 |
| Sears, Roebuck and Co. | It's always in fashion to shop at Sears. Spring and summer 1957 (Greensboro) | RE000243012 |
| Sears, Roebuck and Co. | Sears, Roebuck, and Company. Fall and winter 1957 (Atlanta) | RE000243013 |
| Sears, Roebuck and Co. | Sears, Roebuck, and Company. Fall and winter 1957 (Kansas City) | RE000243014 |
| Sears, Roebuck and Co. | Sears, Roebuck, and Company. Fall and winter 1957 (Philadelphia) | RE000243015 |
| Sears, Roebuck and Co. | Sears, Roebuck, and Company. Fall and winter 1957 (Memphis) | RE000243016 |
| Sears, Roebuck and Co. | Sears, Roebuck, and Company. Fall and winter 1957 (Chicago) | RE000243017 |
| Sears, Roebuck and Co. | Sears, Roebuck, and Company. Fall and winter 1957 (Minneapolis) | RE000243018 |
| Sears, Roebuck and Co. | Sears, Roebuck, and Company. Fall and winter 1957 (Seattle) | RE000243019 |
| Sears, Roebuck and Co. | Sears, Roebuck, and Company. Fall and winter 1957 (Dallas) | RE000243020 |
| Sears, Roebuck and Co. | Sears, Roebuck, and Company. Fall and winter 1957 (Boston) | RE000243021 |
| Sears, Roebuck and Co. | Sears, Roebuck, and Company. Fall and winter 1957 (Greensboro) | RE000243022 |
| Sears, Roebuck and Co. | Sears, Roebuck, and Company. Fall and winter 1957 (LosAngeles) | RE000243023 |
| Sears, Roebuck and Co. | Sears Christmas book 1957 (Philadelphia) | RE000243024 |
| Sears, Roebuck and Co. | Sears Christmas book 1957 (Seattle) | RE000243025 |
| Sears, Roebuck and Co. | Sears Christmas book 1957, LosAngeles. | RE000243026 |
| Sears, Roebuck and Co. | Sears Christmas book 1957, Greensboro. | RE000243027 |
| Sears, Roebuck and Co. | Sears Christmas book 1957, Chicago. | RE000243028 |
| Sears, Roebuck and Co. | Sears Christmas book 1957, Boston. | RE000243029 |
| Sears, Roebuck and Co. | Sears Christmas book 1957, Kansas City. | RE000243030 |
| Sears, Roebuck and Co. | Sears Christmas book 1957, Minneapolis. | RE000243031 |
| Sears, Roebuck and Co. | Sears Christmas book 1957, Atlanta. | RE000243032 |
| Sears, Roebuck and Co. | Sears Christmas book 1957, Memphis. | RE000243033 |
| Sears, Roebuck and Co. | Sears Christmas book 1957, Dallas. | RE000243034 |
| Sears, Roebuck and Co. | Sears spring and summer 1958 (Chicago) | RE000280603 |
| Sears, Roebuck and Co. | Sears spring and summer 1958 (Philadelphia) | RE000280604 |
| Sears, Roebuck and Co. | Sears spring and summer 1958 (Boston) | RE000280605 |
| Sears, Roebuck and Co. | Sears spring and summer 1958 (Seattle) | RE000280606 |
| Sears, Roebuck and Co. | Sears spring and summer 1958 (Memphis) | RE000280607 |
| Sears, Roebuck and Co. | Sears spring and summer 1958 (Atlanta) | RE000280608 |
| Sears, Roebuck and Co. | Sears spring and summer 1958 (Kansas City) | RE000280609 |

| Owner | Full Title | Registration Number |
|---|---|---|
| Sears, Roebuck and Co. | Sears spring and summer 1958 (Dallas) | RE000280610 |
| Sears, Roebuck and Co. | Sears spring and summer 1958 (Los Angeles) | RE000280611 |
| Sears, Roebuck and Co. | Sears spring and summer 1958 (Greensboro) | RE000280612 |
| Sears, Roebuck and Co. | Sears fall and winter (Greensboro) 1958. | RE000280613 |
| Sears, Roebuck and Co. | Sears spring and summer 1958 (Minneapolis) | RE000280614 |
| Sears, Roebuck and Co. | Sears fall and winter (Seattle) 1958. | RE000280615 |
| Sears, Roebuck and Co. | Sears fall and winter (Dallas) 1958. | RE000280616 |
| Sears, Roebuck and Co. | Sears fall and winter (Philadelphia) 1958. | RE000280617 |
| Sears, Roebuck and Co. | Sears fall and winter (Minneapolis) 1958. | RE000280618 |
| Sears, Roebuck and Co. | Sears fall and winter (Los Angeles) 1958. | RE000280619 |
| Sears, Roebuck and Co. | Sears fall and winter (Chicago) 1958. | RE000280620 |
| Sears, Roebuck and Co. | Sears fall and winter (Boston) 1958. | RE000280621 |
| Sears, Roebuck and Co. | Sears fall and winter (Memphis) 1958. | RE000280622 |
| Sears, Roebuck and Co. | Sears fall and winter 1958 (Atlanta) | RE000280623 |
| Sears, Roebuck and Co. | Sears fall and winter (Kansas City) 1958. | RE000280624 |
| Sears, Roebuck and Co. | Sears Christmas book, 1958 (Philadelphia, Pa.) | RE000280625 |
| Sears, Roebuck and Co. | Sears Christmas book 1958, Chicago, Il. | RE000280626 |
| Sears, Roebuck and Co. | Sears Christmas book 1958, Boston, Ma. | RE000280627 |
| Sears, Roebuck and Co. | Sears Christmas book 1958, Kansas City, Mo. | RE000280628 |
| Sears, Roebuck and Co. | Sears Christmas book 1958, Greensboro, N. C. | RE000280629 |
| Sears, Roebuck and Co. | Sears Christmas book 1958, Minneapolis, Mn. | RE000280630 |
| Sears, Roebuck and Co. | Sears Christmas book 1958, Los Angeles, Ca. | RE000280631 |
| Sears, Roebuck and Co. | Sears Christmas book 1958, Seattle, Wa. | RE000280632 |
| Sears, Roebuck and Co. | Sears Christmas book 1958, Memphis, Tn. | RE000280633 |
| Sears, Roebuck and Co. | Sears Christmas book 1958, Atlanta, Ga. | RE000280634 |
| Sears, Roebuck and Co. | Sears Christmas book 1958, Dallas. | RE000280635 |
| Sears, Roebuck and Co. | Sears Christmas book, 1959 (Atlanta) | RE000324823 |
| Sears, Roebuck and Co. | Sears Christmas book, 1959 (Memphis) | RE000324824 |
| Sears, Roebuck and Co. | Sears Christmas book, 1959 (Greensboro) | RE000324825 |
| Sears, Roebuck and Co. | Sears Christmas book, 1959 (Minneapolis) | RE000324826 |
| Sears, Roebuck and Co. | Sears Christmas book, 1959 (Kansas City) | RE000324827 |
| Sears, Roebuck and Co. | Sears Christmas book, 1959 (Chicago) | RE000324828 |
| Sears, Roebuck and Co. | Sears Christmas book, 1959 (Philadelphia) | RE000324829 |
| Sears, Roebuck and Co. | Sears Christmas book, 1959 (Boston) | RE000324830 |
| Sears, Roebuck and Co. | Sears Christmas book, 1959, Los Angeles. | RE000324831 |
| Sears, Roebuck and Co. | Sears Christmas book, 1959, Seattle. | RE000324832 |

| Owner | Full Title | Registration Number |
|---|---|---|
| Sears, Roebuck and Co. | Sears Christmas book, 1959, Dallas. | RE000324833 |
| Sears, Roebuck and Co. | Sears spring and summer 1959, Seattle. | RE000324834 |
| Sears, Roebuck and Co. | Sears spring and summer 1959, Philadelphia. | RE000324835 |
| Sears, Roebuck and Co. | Sears spring and summer 1959, Greensboro. | RE000324836 |
| Sears, Roebuck and Co. | Sears spring and summer 1959, Philadelphia. | RE000324837 |
| Sears, Roebuck and Co. | Sears spring and summer 1959, Chicago. | RE000324838 |
| Sears, Roebuck and Co. | Sears spring and summer 1959, Dallas. | RE000324839 |
| Sears, Roebuck and Co. | Sears spring and summer 1959, Atlanta. | RE000324840 |
| Sears, Roebuck and Co. | Sears spring and summer 1959, Los Angeles. | RE000324841 |
| Sears, Roebuck and Co. | Sears spring and summer 1959, Kansas City. | RE000324842 |
| Sears, Roebuck and Co. | Sears spring and summer 1959, Boston. | RE000324843 |
| Sears, Roebuck and Co. | Sears spring and summer 1959, Minneapolis. | RE000324844 |
| Sears, Roebuck and Co. | Sears spring and summer 1959, Memphis. | RE000324845 |
| Sears, Roebuck and Co. | Sears fall and winter 1959, Greensboro. | RE000324846 |
| Sears, Roebuck and Co. | Sears fall and winter 1959, Seattle. | RE000324847 |
| Sears, Roebuck and Co. | Sears fall and winter 1959, Kansas City. | RE000324848 |
| Sears, Roebuck and Co. | Sears fall and winter 1959, Minneapolis. | RE000324849 |
| Sears, Roebuck and Co. | Sears fall and winter 1959, Los Angeles. | RE000324850 |
| Sears, Roebuck and Co. | Sears fall and winter 1959, Atlanta. | RE000324851 |
| Sears, Roebuck and Co. | Sears fall and winter 1959, Memphis. | RE000324852 |
| Sears, Roebuck and Co. | Sears fall and winter 1959, Chicago. | RE000324853 |
| Sears, Roebuck and Co. | Sears fall and winter 1959, Philadelphia. | RE000324854 |
| Sears, Roebuck and Co. | Sears fall and winter 1959, Boston. | RE000324855 |
| Sears, Roebuck and Co. | Sears (Dallas) Fall and winter 1959. | RE000324856 |
| Sears, Roebuck and Co. | Sears spring through summer 1960 (Kansas City) | RE000366076 |
| Sears, Roebuck and Co. | Sears spring through summer 1960 (Boston) | RE000366077 |
| Sears, Roebuck and Co. | Sears spring through summer 1960 (Dallas) | RE000366078 |
| Sears, Roebuck and Co. | Sears spring through summer 1960 (Seattle) | RE000366079 |
| Sears, Roebuck and Co. | Sears spring through summer 1960 (Minneapolis) | RE000366080 |
| Sears, Roebuck and Co. | Sears spring through summer 1960 (Atlanta) | RE000366081 |
| Sears, Roebuck and Co. | Sears spring through summer 1960 (Memphis) | RE000366082 |
| Sears, Roebuck and Co. | Sears spring through summer 1960 (Chicago) | RE000366083 |
| Sears, Roebuck and Co. | Sears spring through summer 1960 (Greensboro) | RE000366084 |
| Sears, Roebuck and Co. | Sears spring through summer 1960 (Los Angeles) | RE000366085 |
| Sears, Roebuck and Co. | Sears spring through summer 1960 (Philadelphia) | RE000366086 |
| Sears, Roebuck and Co. | Sears fall and winter 1960 (Greensboro) | RE000366087 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Owner | Full Title | Registration Number |
|---|---|---|
| Sears, Roebuck and Co. | Sears fall and winter 1960 (Philadelphia) | RE000366088 |
| Sears, Roebuck and Co. | Sears fall and winter 1960 (Dallas) | RE000366089 |
| Sears, Roebuck and Co. | Sears fall and winter 1960 (Boston) | RE000366090 |
| Sears, Roebuck and Co. | Sears fall and winter 1960 (Los Angeles) | RE000366091 |
| Sears, Roebuck and Co. | Sears fall and winter 1960 (Atlanta) | RE000366092 |
| Sears, Roebuck and Co. | Sears fall and winter 1960 (Kansas City) | RE000366093 |
| Sears, Roebuck and Co. | Sears fall and winter 1960 (Seattle) | RE000366094 |
| Sears, Roebuck and Co. | Sears fall and winter 1960 (Minneapolis) | RE000366095 |
| Sears, Roebuck and Co. | Sears fall and winter 1960 (Memphis) | RE000366096 |
| Sears, Roebuck and Co. | Sears fall and winter 1960 (Chicago) | RE000366097 |
| Sears, Roebuck and Co. | Sears 1960 Christmas book (Dallas) | RE000366098 |
| Sears, Roebuck and Co. | Sears 1960 Christmas book (Greensboro) | RE000366099 |
| Sears, Roebuck and Co. | Sears 1960 Christmas book (Seattle) | RE000366100 |
| Sears, Roebuck and Co. | Sears 1960 Christmas book (Minneapolis) | RE000366101 |
| Sears, Roebuck and Co. | Sears 1960 Christmas book (Atlanta) | RE000366102 |
| Sears, Roebuck and Co. | Sears 1960 Christmas book (Memphis) | RE000366103 |
| Sears, Roebuck and Co. | Sears 1960 Christmas book (Los Angeles) | RE000366104 |
| Sears, Roebuck and Co. | Sears 1960 Christmas book (Chicago) | RE000366105 |
| Sears, Roebuck and Co. | Sears 1960 Christmas book (Philadelphia) | RE000366106 |
| Sears, Roebuck and Co. | Sears 1960 Christmas book (Boston) | RE000366107 |
| Sears, Roebuck and Co. | Sears 1960 Christmas book (Kansas City) | RE000366108 |
| Sears, Roebuck and Co. | Sears fall and winter, 1961 (Los Angeles) | RE000429528 |
| Sears, Roebuck and Co. | Sears fall and winter, 1961 (Kansas City) | RE000429529 |
| Sears, Roebuck and Co. | Sears fall and winter, 1961 (Boston, Ma.) | RE000429530 |
| Sears, Roebuck and Co. | Sears fall and winter, 1961 (Dallas) | RE000429531 |
| Sears, Roebuck and Co. | Sears fall and winter, 1961 (Chicago, IL) | RE000429532 |
| Sears, Roebuck and Co. | Sears Christmas book, 1961 (Memphis) | RE000429533 |
| Sears, Roebuck and Co. | Sears Christmas book, 1961 (Los Angeles) | RE000429534 |
| Sears, Roebuck and Co. | Sears Christmas book, 1961 (Greensboro) | RE000429535 |
| Sears, Roebuck and Co. | Sears Christmas book, 1961 (Seattle) | RE000429536 |
| Sears, Roebuck and Co. | Sears Christmas book, 1961 (Atlanta) | RE000429537 |
| Sears, Roebuck and Co. | Sears Christmas book, 1961 (Dallas) | RE000429538 |
| Sears, Roebuck and Co. | Sears Christmas book, 1961 (Kansas City) | RE000429539 |
| Sears, Roebuck and Co. | Sears Christmas book, 1961 (Minneapolis) | RE000429540 |
| Sears, Roebuck and Co. | Sears Christmas book, 1961 (Chicago, IL) | RE000429541 |
| Sears, Roebuck and Co. | Sears Christmas book, 1961 (Philadelphia) | RE000429542 |

| Owner | Full Title | Registration Number |
|---|---|---|
| Sears, Roebuck and Co. | Sears Christmas book, 1961 (Boston) | RE000429543 |
| Sears, Roebuck and Co. | Sears fall and winter, 1961 (Memphis) | RE000429544 |
| Sears, Roebuck and Co. | Sears fall and winter, 1961 (Seattle) | RE000429545 |
| Sears, Roebuck and Co. | Sears fall and winter, 1961 (Minneapolis) | RE000429546 |
| Sears, Roebuck and Co. | Sears fall and winter, 1961 (Atlanta) | RE000429547 |
| Sears, Roebuck and Co. | Sears fall and winter, 1961 (Philadelphia, Pa.) | RE000429548 |
| Sears, Roebuck and Co. | Sears fall and winter, 1961 (Greensboro) | RE000429549 |
| Sears, Roebuck de Puerto Rico, Inc. | Sears tiene de todo. | SR000005368 |
| Sears, Roebuck and Co. | Voyage of Columbus in his own words. | SR000144926 |
| Sears, Roebuck and Co. | Handbook of taps, dies and threading accessories. | TX000085545 |
| Sears, Roebuck and Co. | Sears home health care : [no. F7308]. | TX000211222 |
| Sears, Roebuck and Co. | Quick facts, router bits and accessories. | TX000377530 |
| Sears, Roebuck and Co. | Car service. | TX000548526 |
| Sears, Roebuck and Co. | Interpretation of consumer credit : no. 100, February 23, 1983 / prepared by Economic Research and Business Analysis Division, Department 902P, Sears, Roebuck, and Company. | TX0001087068 |
| Sears, Roebuck and Co. | Handbook of taps, dies, and threading accessories. | TX000152913 |
| Sears, Roebuck and Co. | Personnel policy manual. | TX0001625263 |
| Sears, Roebuck and Co. | ERC procedures manual. | TX0001663083 |
| Sears, Roebuck and Co. | Focus toys, games & more : Sears catalog. | TX0002707558 |
| Sears, Roebuck and Co. | Sear catalog focus, the complete baby store. | TX0002763385 |
| Sears, Roebuck and Co. | Sears catalog focus boating. | TX0002763386 |
| Sears, Roebuck and Co. | Sears catalog focus farm & ranch. | TX0002763387 |
| Sears, Roebuck and Co. | Sears catalog focus interiors. | TX0002789928 |
| Sears, Roebuck and Co. | Sears catalog focus. | TX0002789929 |
| Sears, Roebuck and Co. | Sears catalog focus great American style. | TX0002789930 |
| Sears, Roebuck and Co. | Sears catalog--style. | TX0002895538 |
| Sears, Roebuck and Co. | Sears catalog--focus, big & tall. | TX0002895539 |
| Sears, Roebuck and Co. | Complete baby store : Sears catalog. | TX0002925907 |
| Sears, Roebuck and Co. | Sears catalog style for the holidays. | TX0002925915 |
| Sears, Roebuck and Co. | Sears catalog style. | TX0002925916 |
| Sears, Roebuck and Co. | Sears catalog workwear. | TX0002925917 |
| Sears, Roebuck and Co. | Sears catalog health care. | TX0002925918 |
| Sears, Roebuck and Co. | Sears today, October 1990. | TX0002931518 |
| Sears, Roebuck and Co. | Great American autumn book. | TX0003277084 |

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 796 of 1120

| Owner | Full Title | Registration Number |
|---|---|---|
| Sears, Roebuck and Co. | Viaje de Colon en sus propias palabras : un libro tridimensional / escrito por Stacie Strong ; ilustrado por Michael Welply ; disenado por Jon Z. Haber ; ingenieria de papel por Rodger Smith ; traducido al espanol por Susana Agami-Serrano. | TX0003464499 |
| Sears, Roebuck and Co. | Voyage of Columbus in his own words : a pop-up book / written by Stacie Strong ; illustrated by Michael Welply ; designed by Jon Z. Haber ; paper engineering by Rodger Smith. | TX0003464500 |
| Sears, Roebuck and Co. | [Sears sales circular/November 1997] | TX0004753145 |
| Sears, Roebuck and Co. | Fill your home with beautiful music & memories. | TX0005529102 |
| Sears Brands, L.L.C. | Tribute to military families : letters of thanks from our nation's children. | TX0006002926 |
| Sears Brands, L.L.C. | Power sport battery feature benefits. | TX0006439630 |
| Sears Brands, L.L.C. | June 7, 2005--message from the chairman. | TX0006580007 |
| Sears Brands, L.L.C. | September 8, 2005--message from the chairman. | TX0006580008 |
| Sears Brands, L.L.C. | December 6, 2005--message from the chairman. | TX0006580009 |
| Sears Brands, L.L.C. | March 15, 2006--message from the chairman. | TX0006580010 |
| Sears, Roebuck and Co. | Sears property tax system III : SPTS PRGS PRN ver. 1.0. | TXu001268424 |
| Sears Brands, L.L.C. | Early opening specials. | TXu000325166 |
| Sears, Roebuck and Co. | Kirkland : no. 4855. | VA000053286 |
| Sears, Roebuck and Co. | Kirkland : no. 4855. | VA000053286 |
| Sears, Roebuck and Co. | Gobi desert : [no. D-5004] | VA0000087481 |
| Sears, Roebuck and Co. | Gobi desert : [no. D-5004] | VA0000087481 |
| Sears, Roebuck and Co. | Rose stripe : [no. 5016] | VA0000087482 |
| Sears, Roebuck and Co. | Rose stripe : [no. 5016] | VA0000087482 |
| Sears, Roebuck and Co. | Rose garden : [no. 5015] | VA0000087483 |
| Sears, Roebuck and Co. | Rose garden : [no. 5015] | VA0000087483 |
| Sears, Roebuck and Co. | Mums : [no. D-5006] | VA0000087484 |
| Sears, Roebuck and Co. | Mums : [no. D-5006] | VA0000087484 |
| Sears, Roebuck and Co. | Gobi : [no. D-5002] | VA0000087485 |
| Sears, Roebuck and Co. | Gobi : [no. D-5002] | VA0000087485 |
| Sears, Roebuck and Co. | Gobi stripe : [no. D-5003] | VA0000087487 |
| Sears, Roebuck and Co. | Gobi stripe : [no. D-5003] | VA0000087487 |
| Sears, Roebuck and Co. | Winter flower : [no. D-5005] | VA0000087488 |
| Sears, Roebuck and Co. | Winter flower : [no. D-5005] | VA0000087488 |
| Sears, Roebuck and Co. | Seascape : [no. D-5007] | VA0000087489 |
| Sears, Roebuck and Co. | Seascape : [no. D-5007] | VA0000087489 |
| Kmart Corporation | Crazy bird. | VA0000207055 |

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 797 of 1120

| Owner | Full Title | Registration Number |
|-------|-----------|---------------------|
| Kmart Corporation | Handy dog. | VA000207056 |
| Kmart Corporation | Sleepy dog. | VA000207057 |
| Kmart Corporation | Inept dog. | VA000207058 |
| Kmart Corporation | Loveable monkey. | VA000207059 |

Page 30 of 60

Page 31 of 60

| Registration Date |
| --- |
| 1978 |
| 1979 |
| 1980 |
| 1981 |
| 1982 |
| 1983 |
| 1984 |
| 1985 |
| 1986 |
| 1987 |
| 1988 |
| 1989 |
| 1990 |
| 1978 |
| 1979 |
| 1980 |
| 1981 |
| 1979 |
| 1980 |
| 1981 |
| 1984 |
| 1977 |
| 1978 |

Page 32 of 60

| Registration Date |
| --- |
| 1979 |
| 1978 |
| 1978 |
| 1978 |
| 1978 |
| 1978 |
| 1978 |
| 1979 |
| 1980 |
| 1981 |
| 1978 |
| 1978 |
| 1978 |
| 1978 |
| 1978 |
| 1978 |
| 1979 |
| 1978 |
| 1979 |
| 1979 |
| 1980 |
| 1978 |
| 1978 |
| 1979 |
| 1978 |
| 1979 |
| 1978 |
| 1979 |
| 1978 |
| 1979 |
| 1978 |
| 1979 |
| 1978 |

| Registration Date |
| --- |
| 1979 |
| 1980 |
| 1978 |
| 1979 |
| 1980 |
| 1978 |
| 1979 |
| 1980 |
| 1981 |
| 1982 |
| 1983 |
| 1984 |
| 1985 |
| 1986 |
| 1978 |
| 1977 |
| 1978 |
| 1979 |
| 1979 |
| 1977 |
| 1978 |
| 1977 |
| 1978 |
| 1979 |
| 1977 |
| 1978 |
| 1979 |
| 1980 |
| 1979 |
| 1977 |
| 1978 |
| 1977 |
| 1978 |
| 1979 |
| 1980 |
| 1977 |

| Registration Date |
| --- |
| 1978 |
| 1979 |
| 1978 |
| 1979 |
| 1980 |
| 1978 |
| 1979 |
| 1980 |
| 1981 |
| 1979 |
| 1978 |
| 1979 |
| 1978 |
| 1978 |
| 1979 |
| 1978 |
| 1979 |
| 1980 |
| 1979 |
| 1980 |
| 1979 |
| 1979 |
| 1980 |
| 1981 |
| 1979 |
| 1980 |
| 1981 |
| 1979 |
| 1980 |
| 1981 |
| 1979 |
| 1980 |
| 1979 |
| 1980 |
| 1981 |
| 1979 |

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 802 of 1120

Page 35 of 60

| Registration Date |
| --- |
| 1980 |
| 1978 |
| 1979 |
| 1980 |
| 1978 |
| 1979 |
| 1980 |
| 1978 |
| 1979 |
| 1980 |
| 1978 |
| 1979 |
| 1979 |
| 1979 |
| 1979 |
| 1980 |
| 1981 |
| 1979 |
| 1980 |
| 1981 |
| 1979 |
| 1980 |
| 1981 |
| 1979 |

Page 36 of 60

| Registration Date |
|---|
| 1980 |
| 1981 |
| 1979 |
| 1980 |
| 1981 |
| 1979 |
| 1980 |
| 1979 |
| 1979 |
| 1979 |
| 1979 |
| 1980 |
| 1979 |
| 1980 |
| 1979 |
| 1980 |
| 1979 |
| 1980 |
| 1981 |
| 1978 |
| 1979 |
| 1978 |
| 1979 |
| 1979 |
| 1979 |
| 1979 |
| 1980 |
| 1981 |
| 1982 |

Page 37 of 60

| Registration Date |
|---|
| 1983 |
| 1979 |
| 1979 |
| 1979 |
| 1980 |
| 1980 |
| 1980 |
| 1980 |
| 1980 |
| 1979 |
| 1980 |
| 1979 |
| 1980 |
| 1979 |
| 1980 |
| 1979 |
| 1980 |
| 1980 |
| 1981 |
| 1979 |
| 1980 |
| 1981 |
| 1980 |
| 1979 |
| 1980 |
| 1979 |
| 1980 |
| 1981 |
| 1982 |
| 1983 |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 805 of 1120

Page 38 of 60

| Registration Date |
| --- |
| 1984 |
| 1985 |
| 1987 |
| 1988 |
| 1989 |
| 1980 |
| 1981 |
| 1980 |
| 1981 |
| 1982 |
| 1984 |
| 1985 |
| 1986 |
| 1991 |
| 1980 |
| 1981 |
| 1980 |
| 1980 |
| 1980 |
| 1980 |
| 1981 |
| 1980 |
| 1981 |
| 1982 |
| 1980 |
| 1980 |
| 1980 |
| 1981 |

| Registration Date |
| --- |
| 1980 |
| 1981 |
| 1980 |
| 1981 |
| 1981 |
| 1980 |
| 1981 |
| 1980 |
| 1981 |
| 1980 |
| 1981 |
| 1981 |
| 1981 |
| 1981 |
| 1981 |
| 1981 |
| 1982 |
| 1983 |
| 1985 |
| 1981 |
| 1982 |
| 1983 |
| 1981 |
| 1982 |
| 1981 |
| 1982 |
| 1983 |
| 1984 |
| 1986 |
| 1987 |
| 1981 |
| 1982 |
| 1983 |
| 1984 |
| 1985 |

Page 40 of 60

| Registration Date |
| --- |
| 1986 |
| 1987 |
| 1990 |
| 1992 |
| 1981 |
| 1981 |
| 1982 |
| 1981 |
| 1982 |
| 1983 |
| 1982 |
| 1982 |
| 1982 |
| 1982 |
| 1981 |
| 1982 |
| 1981 |
| 1982 |
| 1983 |
| 1981 |
| 1982 |
| 1982 |
| 1983 |
| 1982 |
| 1982 |
| 1983 |
| 1982 |
| 1981 |
| 1982 |
| 1987 |
| 1988 |
| 1981 |
| 1982 |
| 1983 |

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 808 of 1120

Page 41 of 60

| Registration Date |
| --- |
| 1984 |
| 1985 |
| 1986 |
| 1982 |
| 1983 |
| 1982 |
| 1986 |
| 1987 |
| 1989 |
| 1982 |
| 1983 |
| 1984 |
| 1985 |
| 1981 |
| 1982 |
| 1983 |
| 1984 |
| 1982 |
| 1983 |
| 1983 |
| 1987 |
| 1983 |
| 1983 |
| 1984 |
| 1985 |
| 1983 |
| 1983 |
| 1983 |
| 1983 |
| 1984 |
| 1985 |
| 1986 |
| 1982 |
| 1983 |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

FILED DATE: 5/19/2021 1:27 PM  2020L012403

| Registration Date |
| --- |
| 1984 |
| 1985 |
| 1983 |
| 1983 |
| 1983 |
| 1983 |
| 1984 |
| 1985 |
| 1986 |
| 1989 |
| 1990 |
| 1991 |
| 1983 |
| 1983 |
| 1983 |
| 1984 |
| 1983 |
| 1983 |
| 1983 |
| 1984 |
| 1985 |
| 1987 |
| 1989 |
| 1983 |
| 1984 |
| 1984 |
| 1984 |
| 1985 |
| 1986 |
| 1987 |
| 1984 |
| 1985 |
| 1984 |
| 1983 |

Page 43 of 60

| Registration Date |
| --- |
| 1984 |
| 1985 |
| 1986 |
| 1983 |
| 1984 |
| 1983 |
| 1984 |
| 1984 |
| 1984 |
| 1984 |
| 1984 |
| 1984 |
| 1984 |
| 1984 |
| 1984 |
| 1984 |
| 1984 |
| 1984 |
| 1984 |
| 1984 |
| 1984 |
| 1984 |
| 1984 |
| 1984 |
| 1984 |
| 1984 |
| 1984 |
| 1984 |
| 1985 |
| 1986 |

| Registration Date |
|---|
| 1984 |
| 1985 |
| 1986 |
| 1987 |
| 1984 |
| 1985 |
| 1984 |
| 1985 |
| 1986 |
| 1984 |
| 1985 |
| 1984 |
| 1985 |
| 1984 |
| 1985 |
| 1986 |
| 1987 |
| 1984 |
| 1985 |
| 1986 |
| 1987 |
| 1988 |
| 1985 |
| 1985 |
| 1985 |
| 1985 |
| 1986 |
| 1987 |
| 1985 |
| 1986 |
| 1987 |
| 1985 |
| 1986 |
| 1987 |
| 1985 |

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 812 of 1120

Page 45 of 60

| Registration Date |
| --- |
| 1986 |
| 1985 |
| 1986 |
| 1986 |
| 1986 |
| 1986 |
| 1985 |
| 1986 |
| 1987 |
| 1986 |
| 1987 |
| 1988 |
| 1986 |
| 1986 |
| 1987 |
| 1986 |
| 1987 |
| 1987 |
| 1986 |
| 1987 |
| 1987 |
| 1988 |
| 1989 |
| 1986 |
| 1987 |
| 1986 |
| 1987 |
| 1987 |
| 1988 |
| 1987 |
| 1987 |
| 1988 |
| 1990 |
| 1987 |

| Registration Date |
|---|
| 1988 |
| 1989 |
| 1990 |
| 1988 |
| 1988 |
| 1988 |
| 1993 |
| 1988 |
| 1991 |
| 1992 |
| 2000 |
| 2001 |
| 1989 |
| 1990 |
| 1989 |
| 1989 |
| 1988 |
| 1989 |
| 1990 |
| 1989 |
| 1990 |
| 1990 |
| 1989 |
| 1990 |
| 1989 |
| 1990 |
| 1991 |
| 1990 |
| 1990 |

| Registration Date |
| --- |
| 1990 |
| 1990 |
| 1991 |
| 1992 |
| 1991 |
| 1992 |
| 1992 |
| 2001 |
| 2002 |
| 1978 |
| 1981 |
| 1978 |
| 1976 |
| 1992 |
| 1992 |
| 1979 |
| 1979 |
| 1979 |
| 1979 |
| 1979 |
| 1983 |
| 1983 |
| 1998 |
| 1998 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |

| Registration Date |
| --- |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1951 |
| 1952 |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

Page 49 of 60

| Registration Date |
| --- |
| 1952 |
| 1952 |
| 1952 |
| 1952 |
| 1952 |
| 1952 |
| 1952 |
| 1952 |
| 1952 |
| 1952 |
| 1952 |
| 1952 |
| 1952 |
| 1952 |
| 1952 |
| 1952 |
| 1952 |
| 1952 |
| 1952 |
| 1952 |
| 1952 |
| 1952 |
| 1952 |
| 1952 |
| 1952 |
| 1952 |
| 1952 |
| 1952 |
| 1952 |
| 1953 |
| 1953 |
| 1953 |
| 1953 |

Page 50 of 60

| Registration Date |
| --- |
| 1953 |
| 1953 |
| 1953 |
| 1953 |
| 1953 |
| 1953 |
| 1953 |
| 1953 |
| 1953 |
| 1953 |
| 1953 |
| 1953 |
| 1953 |
| 1953 |
| 1953 |
| 1953 |
| 1953 |
| 1953 |
| 1953 |
| 1953 |
| 1953 |
| 1953 |
| 1953 |
| 1953 |
| 1953 |
| 1953 |
| 1953 |
| 1954 |
| 1954 |
| 1954 |
| 1954 |
| 1954 |
| 1954 |

Page 51 of 60

| Registration Date |
| --- |
| 1954 |
| 1954 |
| 1954 |
| 1954 |
| 1954 |
| 1954 |
| 1954 |
| 1954 |
| 1954 |
| 1954 |
| 1954 |
| 1954 |
| 1954 |
| 1954 |
| 1954 |
| 1954 |
| 1954 |
| 1954 |
| 1954 |
| 1954 |
| 1954 |
| 1954 |
| 1954 |
| 1954 |
| 1954 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |

Page 52 of 60

| Registration Date |
|---|
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1955 |
| 1956 |
| 1956 |
| 1956 |
| 1956 |
| 1956 |
| 1956 |

Page 53 of 60

| Registration Date |
|---|
| 1956 |
| 1956 |
| 1956 |
| 1956 |
| 1956 |
| 1956 |
| 1956 |
| 1956 |
| 1956 |
| 1956 |
| 1956 |
| 1956 |
| 1956 |
| 1956 |
| 1956 |
| 1956 |
| 1956 |
| 1956 |
| 1956 |
| 1956 |
| 1956 |
| 1956 |
| 1956 |
| 1956 |
| 1956 |
| 1957 |
| 1957 |
| 1957 |
| 1957 |
| 1957 |
| 1957 |

Page 54 of 60

| Registration Date |
|---|
| 1957 |
| 1957 |
| 1957 |
| 1957 |
| 1957 |
| 1957 |
| 1957 |
| 1957 |
| 1957 |
| 1957 |
| 1957 |
| 1957 |
| 1957 |
| 1957 |
| 1957 |
| 1957 |
| 1957 |
| 1957 |
| 1957 |
| 1957 |
| 1957 |
| 1957 |
| 1957 |
| 1957 |
| 1958 |
| 1958 |
| 1958 |
| 1958 |
| 1958 |
| 1958 |

Page 55 of 60

| Registration Date |
|---|
| 1958 |
| 1958 |
| 1958 |
| 1958 |
| 1958 |
| 1958 |
| 1958 |
| 1958 |
| 1958 |
| 1958 |
| 1958 |
| 1958 |
| 1958 |
| 1958 |
| 1958 |
| 1958 |
| 1958 |
| 1958 |
| 1958 |
| 1958 |
| 1958 |
| 1958 |
| 1958 |
| 1958 |
| 1959 |
| 1959 |
| 1959 |
| 1959 |
| 1959 |
| 1959 |
| 1959 |
| 1959 |

Page 56 of 60

| Registration Date |
| --- |
| 1959 |
| 1959 |
| 1959 |
| 1959 |
| 1959 |
| 1959 |
| 1959 |
| 1959 |
| 1959 |
| 1959 |
| 1959 |
| 1959 |
| 1959 |
| 1959 |
| 1959 |
| 1959 |
| 1959 |
| 1959 |
| 1959 |
| 1959 |
| 1959 |
| 1959 |
| 1959 |
| 1959 |
| 1960 |
| 1960 |
| 1960 |
| 1960 |
| 1960 |
| 1960 |
| 1960 |
| 1960 |
| 1960 |
| 1960 |
| 1960 |

Page 57 of 60

| Registration Date |
| --- |
| 1960 |
| 1960 |
| 1960 |
| 1960 |
| 1960 |
| 1960 |
| 1960 |
| 1960 |
| 1960 |
| 1960 |
| 1960 |
| 1960 |
| 1960 |
| 1960 |
| 1960 |
| 1960 |
| 1960 |
| 1960 |
| 1960 |
| 1960 |
| 1960 |
| 1961 |
| 1961 |
| 1961 |
| 1961 |
| 1961 |
| 1961 |
| 1961 |
| 1961 |
| 1961 |
| 1961 |
| 1961 |
| 1961 |
| 1961 |
| 1961 |

| Registration Date |
| --- |
| 1961 |
| 1961 |
| 1961 |
| 1961 |
| 1961 |
| 1961 |
| 1961 |
| 1977 |
| 1991 |
| 1978 |
| 1978 |
| 1979 |
| 1980 |
| 1983 |
| 1984 |
| 1985 |
| 1985 |
| 1989 |
| 1990 |
| 1990 |
| 1990 |
| 1990 |
| 1990 |
| 1990 |
| 1990 |
| 1990 |
| 1990 |
| 1990 |
| 1990 |
| 1990 |
| 1991 |

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 15:14:32    Exhibit A
Pg 826 of 1120

| Registration Date |
| --- |
| 1991 |
| 1991 |
| 1997 |
| 2001 |
| 2004 |
| 2006 |
| 2005 |
| 2005 |
| 2005 |
| 2006 |
| 1988 |
| 2005 |
| 1980 |
| 1980 |
| 1981 |
| 1981 |
| 1981 |
| 1981 |
| 1981 |
| 1981 |
| 1981 |
| 1981 |
| 1981 |
| 1981 |
| 1981 |
| 1981 |
| 1981 |
| 1985 |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| Registration Date |
|---|
| 1985 |
| 1985 |
| 1985 |
| 1985 |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

18-23538-rdd    Doc 2507-1    Filed 02/06/19    Entered 02/06/19 16:44:31    Exhibit A
Pg 1056 of 1420

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Domain Name | Registration Date | Paid Until Date |
|---|---|---|
| 15forfamilies.com | 2-Oct-08 | 2-Oct-20 |
| 1800diehard.com | 26-Jul-13 | 26-Jul-19 |
| 2011shcvendorsummit.com | 19-Apr-11 | 19-Apr-19 |
| 3-sears.com | 11-Jun-02 | 11-Jun-19 |
| 4myhome.com | 16-Mar-98 | 15-Mar-19 |
| 50footparty.com | 18-Aug-11 | 18-Aug-19 |
| 50ftparty.com | 3-Aug-11 | 3-Aug-19 |
| 5321syw.app | 10-May-18 | 10-May-20 |
| 5321syw.com | 10-May-18 | 10-May-20 |
| 8004myhome.com | 21-Jun-05 | 21-Jun-20 |
| 800formyhome.com | 30-Aug-10 | 30-Aug-20 |
| 88sears.com | 6-Nov-99 | 6-Nov-20 |
| 88sears.net | 30-Jun-00 | 30-Jun-19 |
| 88searshc.com | 26-Sep-06 | 25-Jul-19 |
| 90daygenerics.com | 30-Oct-07 | 30-Oct-19 |
| aafes-delivery.com | 26-Apr-12 | 25-Apr-20 |
| aandefactoryservice.com | 18-Feb-02 | 18-Feb-20 |
| aandepartsdirect.com | 20-Oct-99 | 20-Oct-19 |
| aandesignatureservice.com | 20-Oct-99 | 20-Oct-19 |
| aboutsears.com | 20-Jan-03 | 20-Jan-19 |
| acandcoolingrepairbysears.com | 21-Sep-11 | 21-Sep-19 |
| acandcoolingservicebysears.com | 21-Sep-11 | 21-Sep-19 |
| accountcareplus.com | 8-Apr-08 | 8-Apr-20 |
| aecommercialparts.com | 14-Apr-08 | 14-Apr-20 |
| aefactoryservice.com | 18-Feb-02 | 18-Feb-20 |
| aefactoryservicemiami.com | 2-Feb-10 | 2-Feb-20 |
| aeinstallation.com | 14-Dec-10 | 14-Dec-18 |
| aepartsdirect.com | 20-Oct-99 | 20-Oct-19 |
| aerecallservice.com | 1-Jul-09 | 1-Jul-19 |
| aerepairmiami.com | 2-Feb-10 | 2-Feb-20 |
| aerepairserviceofmiami.com | 2-Feb-10 | 2-Feb-20 |
| aesignatureservice.com | 20-Oct-99 | 20-Oct-19 |
| agencystate.co | 15-Oct-12 | 14-Oct-20 |
| aisle5.com | 27-Nov-05 | 27-Nov-18 |
| aisle-5.com | 12-Sep-08 | 12-Sep-20 |
| alentertainment.com | 8-Jul-10 | 8-Jul-20 |
| alfiesucks.com | 21-Sep-16 | 21-Sep-20 |
| alfiesucks.net | 21-Sep-16 | 21-Sep-20 |
| alfiesucks.org | 21-Sep-16 | 21-Sep-20 |
| allaboutairquality.com | 10-Jan-14 | 10-Jan-20 |
| allaboutenergyefficiency.com | 10-Jan-14 | 10-Jan-20 |
| allabouthvacsystems.com | 10-Jan-14 | 10-Jan-20 |
| allaboutkitchenremodeltradeoffs.com | 10-Jan-14 | 10-Jan-20 |
| allaboutkitchenremodeltrends.com | 10-Jan-14 | 10-Jan-20 |
| allaboutremodelingvalue.com | 10-Jan-14 | 10-Jan-20 |

18-23538-shl Doc 9507-1 Filed 02/08/19 Entered 02/08/19 20:44:31 Exhibit A Pg 1057 of 1120

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | |
|---|---|---|
| allcraftsmanparts.com | 9-Nov-12 | 9-Nov-20 |
| allfilterbrands.com | 10-Aug-12 | 10-Aug-20 |
| allkenmoreparts.com | 9-Nov-12 | 9-Nov-20 |
| allpartsallbrands.com | 12-Jan-12 | 12-Jan-20 |
| allrefrigeratorparts.com | 10-Aug-12 | 10-Aug-20 |
| allsearcredit.com | 23-Nov-12 | 23-Nov-18 |
| allsearscredit.biz | 11-Jun-07 | 10-Jun-19 |
| allsearscredit.com | 11-Jun-07 | 11-Jun-19 |
| allsearscredit.net | 12-Jun-07 | 12-Jun-19 |
| allsnowblowerparts.com | 9-Nov-12 | 9-Nov-20 |
| allthingsautomotivesears.com | 3-Apr-12 | 3-Apr-19 |
| allwasherdryerparts.com | 9-Nov-12 | 9-Nov-20 |
| alphaline.com | 7-Jul-96 | 6-Jul-19 |
| alphalineaccessories.com | 2-Jun-10 | 2-Jun-20 |
| alphalinebluray.com | 2-Jun-10 | 2-Jun-20 |
| alphalinedvd.com | 2-Jun-10 | 2-Jun-20 |
| alphalineelectronics.com | 2-Jun-10 | 2-Jun-20 |
| alphalineentertainment.com | 16-Jun-10 | 16-Jun-20 |
| alphaline-entertainment.com | 16-Nov-10 | 16-Nov-20 |
| alphalineentertainment.net | 16-Jun-10 | 16-Jun-20 |
| alphalineentertainment.org | 16-Jun-10 | 16-Jun-20 |
| alphalineentertainment.us | 16-Jun-10 | 15-Jun-20 |
| alphalineereader.com | 2-Jun-10 | 2-Jun-20 |
| alphalinegaming.com | 2-Jun-10 | 2-Jun-20 |
| alphalineproducts.com | 2-Jun-10 | 2-Jun-20 |
| alphalinetv.com | 2-Jun-10 | 2-Jun-20 |
| alwaysgn.com | 17-Nov-09 | 17-Nov-19 |
| alwaysgoodnews.com | 5-Jun-07 | 5-Jun-19 |
| api-delivery.com | 24-Oct-12 | 24-Oct-20 |
| appliancematchmaker.com | 9-Sep-09 | 9-Sep-19 |
| appliancerepairsears.com | 13-Mar-09 | 13-Mar-20 |
| applianceselect.com | 23-Mar-00 | 23-Mar-20 |
| applianceselect.net | 23-Mar-00 | 23-Mar-20 |
| applianceselect.org | 23-Mar-00 | 23-Mar-20 |
| appliancessears.com | 19-Aug-14 | 19-Aug-20 |
| aprovechaloquetienes.com | 17-Oct-11 | 17-Oct-19 |
| aquatal-delivery.com | 26-Apr-12 | 25-Apr-20 |
| armadillo.xyz | 7-Jan-15 | 8-Jan-22 |
| arrivelounge.biz | 11-Aug-09 | 10-Aug-19 |
| arrivelounge.com | 15-Apr-08 | 15-Apr-20 |
| arrivelounge.net | 11-Aug-09 | 11-Aug-21 |
| askmonark.com | 21-Sep-15 | 21-Sep-20 |
| asmarterwaytomow.com | 6-Sep-16 | 6-Sep-20 |
| assemblyq.com | 26-Feb-09 | 26-Feb-19 |
| athletic-attic.com | 8-Apr-08 | 8-Apr-20 |
| athleticattic.org | 5-Apr-01 | 5-Apr-20 |
| athletic-attic.org | 5-Apr-01 | 5-Apr-20 |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | |
|---|---|---|
| atlantaappliancecontractors.com | 3-Oct-12 | 3-Oct-20 |
| atlantaappliancepros.com | 3-Oct-12 | 3-Oct-20 |
| atlantaappliancerepair247.com | 3-Oct-12 | 3-Oct-20 |
| atlantaappliancerepairmen.com | 3-Oct-12 | 3-Oct-20 |
| atlantacontractorconnect.com | 3-Oct-12 | 3-Oct-20 |
| atlantadoorrepair.com | 3-Oct-12 | 3-Oct-20 |
| atlantahandymanpros.com | 3-Oct-12 | 3-Oct-20 |
| atlantahomepaintingservices.com | 3-Oct-12 | 3-Oct-20 |
| atlantahomerepaircontractors.com | 3-Oct-12 | 3-Oct-20 |
| atlantahomerepairservices.com | 3-Oct-12 | 3-Oct-20 |
| atlantarepaircontractor.com | 3-Oct-12 | 3-Oct-20 |
| atlantarepaircontractors.com | 3-Oct-12 | 3-Oct-20 |
| atlantawasherdryerrepair.com | 3-Oct-12 | 3-Oct-20 |
| atriumoutlets.com | 18-May-12 | 18-May-19 |
| attackof50ftparty.com | 18-Aug-11 | 18-Aug-19 |
| attackofthe50ftparty.com | 18-Aug-11 | 18-Aug-19 |
| awesometool.com | 30-Jun-06 | 30-Jun-19 |
| babyme.com | 17-Oct-97 | 16-Oct-20 |
| babymepoints.com | 8-Jun-10 | 8-Jun-20 |
| babypointssweeps.com | 8-Jun-10 | 8-Jun-20 |
| backtoschoolpoints.com | 8-Jun-10 | 8-Jun-20 |
| backyardpro.org | 6-Jun-08 | 6-Jun-20 |
| bagsarebetter.com | 26-Jun-12 | 26-Jun-20 |
| bathremodelingbysears.com | 10-Sep-11 | 10-Sep-19 |
| bcrebates.com | 1-Mar-00 | 1-Mar-20 |
| benowandhere.com | 23-Jun-10 | 23-Jun-20 |
| bestdallasairconditioningrepair.com | 3-Feb-12 | 3-Feb-20 |
| besthandymandallas.com | 3-Feb-12 | 3-Feb-20 |
| bestinstallteam.com | 14-Feb-12 | 14-Feb-20 |
| bestrepairteam.com | 14-Feb-12 | 14-Feb-20 |
| besttexashandyman.com | 3-Feb-12 | 3-Feb-20 |
| bethesanta.com | 25-Jun-10 | 25-Jun-20 |
| bigandtallcatalog.com | 9-Dec-03 | 9-Dec-18 |
| bigkibosh.com | 26-Feb-09 | 26-Feb-19 |
| bigkmart.com | 24-Apr-02 | 24-Apr-20 |
| big-kmart.com | 30-Jan-00 | 30-Jan-20 |
| billionpoints.com | 21-May-10 | 21-May-20 |
| bloomingdale-kmart.com | 15-May-15 | 15-May-19 |
| blueappliancecrew.com | 1-Dec-08 | 1-Dec-18 |
| blueautocrew.com | 23-Jun-08 | 23-Jun-20 |
| bluecarcrew.com | 23-Jun-08 | 23-Jun-20 |
| blueclimatecrew.com | 24-Oct-08 | 24-Oct-20 |
| bluecrew.tv | 23-Nov-10 | 23-Nov-20 |
| bluecrewheadquarters.com | 27-Apr-10 | 27-Apr-20 |
| bluecrewhq.com | 17-Jul-09 | 17-Jul-19 |
| bluecrewhq.tv | 23-Nov-10 | 23-Nov-20 |
| bluefitcrew.com | 6-Dec-10 | 6-Dec-18 |

FILED DATE: 5/19/2021 1:27 PM                                    2020L012403

| | | |
|---|---|---|
| bluehomecrew.com | 23-Jun-08 | 23-Jun-20 |
| bluehousecrew.com | 23-Jun-08 | 23-Jun-20 |
| bluehq.com | 1-Oct-08 | 1-Oct-20 |
| bluelight.com | 2-Oct-06 | 1-Dec-18 |
| bluelight.com.mx | 8-Jan-02 | 7-Jan-20 |
| bluelight.com.pr | 6-Mar-06 | 5-May-19 |
| bluelight.net.pr | 6-Mar-06 | 5-May-19 |
| bluelight.org.pr | 6-Mar-06 | 5-May-19 |
| bluelights.com | 24-Oct-06 | 23-Dec-18 |
| bluelightspecial.com | 28-Nov-06 | 15-Nov-19 |
| bluelite.com | 23-Oct-06 | 21-Dec-18 |
| bluepowercrew.com | 20-Oct-08 | 20-Oct-20 |
| blueservicecrew.com | 3-Aug-09 | 3-Aug-19 |
| blueservicescrew.com | 3-Aug-09 | 3-Aug-19 |
| bluetoolcrew.com | 25-Mar-10 | 25-Mar-20 |
| brandcentral.biz | 27-Mar-02 | 26-Mar-20 |
| brandcentral.com | 26-Apr-96 | 27-Apr-19 |
| brandcentral.info | 26-Jul-01 | 26-Jul-20 |
| brandpartsdirect.com | 13-Jun-12 | 13-Jun-20 |
| bridalpoints.com | 8-Jun-10 | 8-Jun-20 |
| bubapp.com | 20-Oct-16 | 20-Oct-20 |
| bubit.com | 13-Jul-12 | 13-Jul-19 |
| bumpingsantas.com | 29-Oct-10 | 29-Oct-20 |
| bumpinsantas.com | 29-Oct-10 | 29-Oct-20 |
| cabinetrefacingbysears.com | 10-Sep-11 | 10-Sep-19 |
| camcordermatchmaker.com | 5-Oct-09 | 5-Oct-19 |
| cameramatchmaker.com | 21-Oct-03 | 21-Oct-20 |
| canyonriverblues.com | 30-Apr-96 | 1-May-19 |
| canyonriverblues.net | 30-Sep-98 | 29-Sep-19 |
| canyonriverblues.org | 30-Sep-98 | 29-Sep-19 |
| catandcopet.com | 12-Jun-15 | 12-Jun-19 |
| celestialstardiamond.com | 29-Aug-03 | 29-Aug-19 |
| celestialstarjewelry.com | 29-Aug-03 | 29-Aug-19 |
| championbreedpet.com | 12-Jun-15 | 12-Jun-19 |
| checkoffyourhoneydolist.com | 9-Feb-09 | 9-Feb-19 |
| checktheatlas.com | 16-May-18 | 16-May-20 |
| chefrachelleboucher.com | 25-Aug-10 | 25-Aug-20 |
| chimneybuster.com | 4-Oct-10 | 4-Oct-20 |
| ciproductrepair.com | 12-May-10 | 12-May-20 |
| cleverassembly.com | 16-Jan-09 | 16-Jan-19 |
| cleverexistence.com | 21-Jan-09 | 21-Jan-19 |
| cleverlot.com | 16-Jan-09 | 16-Jan-19 |
| cleversal.com | 16-Jan-09 | 16-Jan-19 |
| cleversue.com | 16-Jan-09 | 16-Jan-19 |
| cleverwherever.com | 16-Jan-09 | 16-Jan-19 |
| coatsforkids.org | 9-Jul-98 | 8-Jul-20 |
| comfortfleece.com | 3-Mar-00 | 3-Mar-20 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 20:44:32 Exhibit A
Pg 952 of 1143

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| Domain | Date 1 | Date 2 |
|---|---|---|
| commerceservicebysears.com | 21-Feb-12 | 21-Feb-20 |
| commerceservicesbysears.com | 21-Feb-12 | 21-Feb-20 |
| comsearscard.com | 8-Dec-12 | 8-Dec-18 |
| connectedsolutions.com | 25-Oct-06 | 25-Oct-20 |
| consesso.com | 26-Feb-09 | 26-Feb-19 |
| consumershomeclub.com | 17-Aug-06 | 28-Jul-20 |
| contr-shc.com | 10-Apr-09 | 10-Apr-19 |
| cookandgather.com | 7-Jul-08 | 7-Jul-20 |
| cookgather.com | 7-Jul-08 | 7-Jul-20 |
| cookmore.com | 9-May-00 | 9-May-20 |
| copasears.com | 3-May-01 | 3-May-20 |
| cordless-weed-wacker.com | 11-Feb-11 | 11-Feb-19 |
| cordlessweedwacker.org | 17-May-10 | 17-May-19 |
| cordlessweedwacker.us | 21-Jun-11 | 20-Jun-19 |
| crewblue.co.uk | 8-Aug-08 | 8-Aug-20 |
| crewblue.com | 23-Jun-08 | 23-Jun-20 |
| crushmystyle.com | 31-Mar-10 | 31-Mar-20 |
| crushurstyle.com | 10-May-10 | 10-May-20 |
| crushyourstyle.com | 6-May-10 | 6-May-20 |
| csearscard.com | 21-Jul-12 | 21-Jul-20 |
| | | |
| dallasairconditioningrepaironline.com | 3-Feb-12 | 3-Feb-20 |
| dallasairconditioningrepairs.com | 3-Feb-12 | 3-Feb-20 |
| dallasairconditioningrepairshop.com | 3-Feb-12 | 3-Feb-20 |
| dallasairconditioningrepairsite.com | 3-Feb-12 | 3-Feb-20 |
| dallasappliancecontractors.com | 14-Nov-12 | 14-Nov-20 |
| dallasappliancepro.com | 14-Nov-12 | 14-Nov-20 |
| dallasappliancerepair247.com | 14-Nov-12 | 14-Nov-20 |
| dallasappliancerepairman.com | 14-Nov-12 | 14-Nov-20 |
| dallasbestdryerrepair.com | 3-Feb-12 | 3-Feb-20 |
| dallasbestrefrigeratorrepair.com | 3-Feb-12 | 3-Feb-20 |
| dallascommercialrefrigeratorrepair.com | 3-Feb-12 | 3-Feb-20 |
| dallascommercialwasherrepair.com | 3-Feb-12 | 3-Feb-20 |
| dallascontractorconnect.com | 14-Nov-12 | 14-Nov-20 |
| dallasdoorrepair.com | 14-Nov-12 | 14-Nov-20 |
| dallas-dryer-repair.com | 3-Feb-12 | 3-Feb-20 |
| dallasdryerrepairs.com | 3-Feb-12 | 3-Feb-20 |
| dallashandymanrepairs.com | 14-Nov-12 | 14-Nov-20 |
| dallashomepaintingservices.com | 14-Nov-12 | 14-Nov-20 |
| dallashomerepaircontractors.com | 14-Nov-12 | 14-Nov-20 |
| dallashomerepairservices.com | 14-Nov-12 | 14-Nov-20 |
| dallas-refrigerator-repair.com | 3-Feb-12 | 3-Feb-20 |
| dallasrefrigeratorrepairman.com | 14-Nov-12 | 14-Nov-20 |
| dallasrefrigeratorrepairs.com | 3-Feb-12 | 3-Feb-20 |
| dallasrefrigeratorrepairsite.com | 3-Feb-12 | 3-Feb-20 |
| dallasrepaircontractor.com | 14-Nov-12 | 14-Nov-20 |

18-23538-shl   Doc 9307   Filed 02/08/21   Entered 02/08/21 16:44:32   Exhibit A
Pg 1061 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | |
|---|---|---|
| dallasrepaircontractors.com | 14-Nov-12 | 14-Nov-20 |
| dallaswasherdryerrepair.com | 14-Nov-12 | 14-Nov-20 |
| dallas-washer-repair.com | 3-Feb-12 | 3-Feb-20 |
| dallaswasherrepairservice.com | 3-Feb-12 | 3-Feb-20 |
| deepcleanexperts.com | 20-May-00 | 20-May-19 |
| deliveringluxury.com | 8-May-15 | 8-May-19 |
| deliveryinstallation.net | 28-Feb-12 | 28-Feb-20 |
| deliveryinstalltioninfo.net | 28-Feb-12 | 28-Feb-20 |
| dellver.com | 10-Mar-10 | 10-Mar-20 |
| delver.biz | 17-Feb-08 | 16-Feb-19 |
| delver.com | 13-Oct-96 | 12-Oct-19 |
| delver.eu | 24-Jul-09 | 24-Jul-19 |
| delver.us | 17-Feb-08 | 16-Feb-19 |
| delverblog.com | 10-Mar-10 | 10-Mar-20 |
| delveredit.com | 5-Apr-10 | 5-Apr-20 |
| delvering.com | 22-Jul-08 | 22-Jul-19 |
| delvering.net | 22-Jul-08 | 22-Jul-19 |
| delveringit.com | 5-Apr-10 | 5-Apr-20 |
| delverit.com | 5-Apr-10 | 5-Apr-20 |
| delvertv.com | 10-Mar-10 | 10-Mar-20 |
| delvore.com | 10-Mar-10 | 10-Mar-20 |
| delvre.com | 3-May-08 | 3-May-19 |
| delvver.com | 10-Mar-10 | 10-Mar-20 |
| dhpowerahead.com | 17-Nov-17 | 17-Nov-19 |
| diehard.biz | 27-Mar-02 | 26-Mar-20 |
| diehard.clothing | 5-Feb-14 | 5-Feb-20 |
| diehard.co | 22-Feb-12 | 21-Feb-19 |
| diehard.com | 20-Mar-97 | 21-Mar-19 |
| diehard.deals | 22-Sep-14 | 22-Sep-19 |
| diehard.eu | 1-Apr-06 | 1-Apr-20 |
| diehard.gifts | 4-Nov-14 | 4-Nov-19 |
| diehard.info | 26-Jul-01 | 26-Jul-20 |
| diehard.net | 30-Sep-98 | 29-Sep-20 |
| diehard.org | 30-Sep-98 | 29-Sep-20 |
| diehard.repair | 25-Mar-14 | 25-Mar-19 |
| diehard.shoes | 24-Feb-14 | 24-Feb-19 |
| diehard.support | 19-Mar-14 | 18-Mar-19 |
| diehard.us | 19-Apr-02 | 18-Apr-19 |
| diehard500.com | 14-Aug-98 | 13-Aug-20 |
| diehardauto.com | 19-Jan-17 | 19-Jan-19 |
| diehardautocenter.com | 19-Jan-17 | 19-Jan-19 |
| diehardautocenters.com | 19-Jan-17 | 19-Jan-19 |
| diehardbatteries.com | 7-Oct-98 | 6-Oct-19 |

18-23538-shl   Doc 9507   Filed 02/08/19   Entered 02/08/19 16:44:31   Exhibit A
Pg 1062 of 1450
FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | |
|---|---|---|
| diehard-batteries.com | 28-Oct-99 | 28-Oct-20 |
| diehardbattery.com | 7-Oct-98 | 6-Oct-19 |
| diehard-battery.com | 28-Oct-99 | 28-Oct-20 |
| diehardlifestyle.com | 7-Jul-16 | 7-Jul-19 |
| diehardpowerahead.com | 17-Nov-17 | 17-Nov-19 |
| diehardracingleague.com | 13-Apr-04 | 13-Apr-20 |
| diehardsd.com | 14-Jun-13 | 14-Jun-19 |
| diehardtire.com | 27-Jul-16 | 27-Jul-20 |
| diehardtires.com | 27-Jul-16 | 27-Jul-20 |
| diypartsdirect.com | 13-Jun-12 | 13-Jun-20 |
| domores.com | 11-Apr-07 | 11-Apr-19 |
| dreamsmatter.com | 29-Jun-14 | 29-Jun-19 |
| dreamsmatteratsears.com | 15-Apr-15 | 15-Apr-19 |
| dumorehouse.com | 25-Apr-07 | 25-Apr-19 |
| dumores.com | 11-Apr-07 | 11-Apr-19 |
| dumoresfamily.com | 25-Apr-07 | 25-Apr-19 |
| duracart.org | 6-Jun-08 | 6-Jun-20 |
| duraset.org | 6-Jun-08 | 6-Jun-20 |
| eblon.biz | 17-Jan-14 | 16-Jan-19 |
| eblon.co.in | 21-Jan-14 | 21-Jan-20 |
| eblon.net | 12-Nov-13 | 12-Nov-19 |
| eblontech.com | 12-Nov-13 | 12-Nov-19 |
| eblontechnologies.com | 12-Nov-13 | 12-Nov-19 |
| eco-sears.com | 8-Jun-10 | 8-Jun-20 |
| eddielampert.net | 11-Feb-11 | 11-Feb-19 |
| eddielampert.org | 11-Feb-11 | 11-Feb-19 |
| eddielampert.tel | 14-Feb-11 | 13-Feb-19 |
| eddielampert.us | 11-Feb-11 | 10-Feb-19 |
| ejobleads.com | 9-Feb-09 | 9-Feb-19 |
| electronicmatchmaker.com | 8-Sep-09 | 8-Sep-19 |
| electronicsmatchmaker.com | 8-Sep-09 | 8-Sep-19 |
| emtsrs.com | 8-Feb-08 | 8-Feb-20 |
| entrydoorsbysears.com | 10-Sep-11 | 10-Sep-19 |
| essentials-to-go.com | 17-Jun-05 | 17-Jun-19 |
| essentialstogo.net | 21-Jun-05 | 21-Jun-17 |
| eultracare.com | 17-Mar-08 | 17-Mar-20 |
| everyfilter.com | 10-Aug-12 | 10-Aug-20 |
| evokeclient.com | 3-Sep-14 | 3-Sep-20 |
| evokedam.com | 21-Jul-14 | 21-Jul-20 |
| evokeimaging.net | 16-Aug-13 | 16-Aug-19 |
| evokephotos.com | 16-Aug-13 | 16-Aug-19 |
| evokeproduction.net | 16-Aug-13 | 16-Aug-19 |
| evokeproduction.org | 16-Aug-13 | 16-Aug-19 |
| evoke-productions.com | 15-Jul-13 | 15-Jul-19 |
| evokeproductions.net | 16-Aug-13 | 16-Aug-19 |
| evokeservices.com | 16-Aug-13 | 16-Aug-19 |
| evokevideography.com | 16-Aug-13 | 16-Aug-19 |

18-23538-shl Doc 9507 Filed 02/08/19 Entered 02/08/19 26:44:32 Exhibit A Pg 1063 of 1450

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | | |
|---|---|---|
| exchangein5.com | 24-Sep-12 | 24-Sep-20 |
| exploringmyamerica.com | 11-May-10 | 11-May-20 |
| exploringmyamerica.net | 11-May-10 | 11-May-20 |
| fashionathletic.com | 3-May-02 | 3-May-19 |
| fbaweb.com | 25-Nov-02 | 25-Nov-19 |
| feet.com | 10-May-95 | 11-May-20 |
| fiftyfootparty.com | 18-Aug-11 | 18-Aug-19 |
| find15forfamily.com | 2-Oct-08 | 2-Oct-20 |
| firsthispanicheritagescholarship.com | 9-Sep-09 | 9-Sep-19 |
| fitpride.com | 24-Nov-10 | 24-Nov-18 |
| fitribe.com | 1-Dec-10 | 1-Dec-18 |
| fitstudio.com | 22-Apr-03 | 22-Apr-20 |
| flipthemegaphone.com | 24-Aug-10 | 24-Aug-20 |
| flooringbysears.com | 10-Sep-11 | 10-Sep-19 |
| flooringbysearshomeservices.com | 10-Sep-11 | 10-Sep-19 |
| floridabuilderappliance.com | 25-Nov-02 | 25-Nov-19 |
| floridabuilderappliances.com | 9-Aug-00 | 9-Aug-19 |
| flowersbysears.com | 29-Mar-00 | 29-Mar-19 |
| fountit.com | 26-Oct-15 | 26-Oct-19 |
| fridge.parts | 10-Jul-14 | 10-Jul-19 |
| friendsandshopping.com | 27-Apr-06 | 27-Apr-20 |
| friendsandshopping.net | 27-Apr-06 | 27-Apr-20 |
| fromstate.com | 17-Oct-12 | 17-Oct-20 |
| frugaliscious.com | 24-Jun-09 | 24-Jun-19 |
| frugalphoria.com | 26-Jun-09 | 26-Jun-19 |
| frugchic.com | 26-Jun-09 | 26-Jun-19 |
| frugflair.com | 26-Jun-09 | 26-Jun-19 |
| frugnation.com | 14-May-09 | 14-May-19 |
| g02sears.com | 19-Apr-13 | 19-Apr-19 |
| gamingmatchmaker.com | 8-Sep-09 | 8-Sep-19 |
| garagedoorsears.com | 21-Apr-16 | 21-Apr-20 |
| garageheadclub.com | 25-Apr-17 | 25-Apr-19 |
| garageheaddiy.com | 25-Apr-17 | 25-Apr-19 |
| garageheadlife.com | 25-Apr-17 | 25-Apr-19 |
| garageheadpro.com | 25-Apr-17 | 25-Apr-19 |
| garageheads.club | 20-Dec-17 | 20-Dec-19 |
| garageheads.net | 20-Dec-17 | 20-Dec-19 |
| garageheads.org | 20-Dec-17 | 20-Dec-19 |
| garageheadz.com | 25-Apr-17 | 25-Apr-19 |
| garageofknowledge.com | 18-Jun-08 | 18-Jun-20 |
| genericsplus.com | 2-Jun-04 | 2-Jun-20 |
| georgiaappliancerepair.com | 3-Oct-12 | 3-Oct-20 |
| getitdonehere.com | 23-Sep-09 | 23-Sep-19 |
| getjobleads.com | 9-Feb-09 | 9-Feb-19 |
| getjobleadsnow.com | 9-Feb-09 | 9-Feb-19 |
| getthingsfixednow.com | 9-Feb-09 | 9-Feb-19 |
| giftmatchmaker.com | 23-Nov-09 | 23-Nov-19 |

18-23538-shl Doc 9507-1 Filed 02/08/19 Entered 02/08/19 26:44:32 Main Document Exhibit A
Pg 1064 of 1120

FILED DATE: 5/19/2021 1:27 PM     2020L012403

| | | |
|---|---|---|
| girlidentity.com | 17-Jul-00 | 17-Jul-19 |
| girlidentity.net | 17-Jul-00 | 17-Jul-19 |
| girlidentity.org | 17-Jul-00 | 17-Jul-19 |
| globalbrandexchange.net | 19-Feb-10 | 19-Feb-20 |
| gnn.com | 22-Jun-93 | 6-Nov-20 |
| gnngoodnewsnow.biz | 14-Aug-09 | 13-Aug-19 |
| gnngoodnewsnow.com | 14-Aug-09 | 14-Aug-19 |
| gnngoodnewsnow.org | 14-Aug-09 | 14-Aug-19 |
| gnnnet.com | 1-Oct-08 | 1-Oct-19 |
| gnnonline.com | 25-May-06 | 25-May-19 |
| go2sears.com | 26-Nov-12 | 26-Nov-19 |
| godelver.com | 10-Mar-10 | 10-Mar-20 |
| goferme.com | 15-May-06 | 15-May-20 |
| goferservice.com | 15-May-06 | 15-May-20 |
| goferservicebureau.com | 22-Sep-08 | 22-Sep-20 |
| gojobleads.com | 9-Feb-09 | 9-Feb-19 |
| gonowandhere.com | 23-Jun-10 | 23-Jun-20 |
| goodlifegreatprice.com | 29-Apr-03 | 29-Apr-19 |
| goodnewsnow.biz | 14-Aug-09 | 13-Aug-19 |
| goodnewsnow.org | 21-Nov-02 | 20-Nov-19 |
| goodnewsondemand.com | 11-Nov-09 | 11-Nov-19 |
| gpsmatchmaker.com | 16-Jul-08 | 16-Jul-19 |
| grabandgofer.com | 9-Oct-08 | 9-Oct-20 |
| grabandgopher.com | 9-Oct-08 | 9-Oct-20 |
| grabngofer.com | 9-Oct-08 | 9-Oct-20 |
| grabngopher.com | 9-Oct-08 | 9-Oct-20 |
| greatindoors.com | 23-Jul-97 | 22-Jul-20 |
| greatindoors.net | 30-Sep-98 | 29-Sep-20 |
| greatindoors.org | 30-Sep-98 | 29-Sep-20 |
| green-sears.com | 8-Jun-10 | 8-Jun-20 |
| greywolfpet.com | 12-Jun-15 | 12-Jun-19 |
| grillingishappiness.com | 22-Mar-12 | 22-Mar-20 |
| halogencard.com | 30-Dec-10 | 30-Dec-18 |
| halogencash.com | 30-Dec-10 | 30-Dec-18 |
| halogenmoney.com | 30-Dec-10 | 30-Dec-18 |
| halogenprepaid.com | 30-Dec-10 | 30-Dec-18 |
| hasconnection.com | 14-Apr-09 | 14-Apr-19 |
| heatingandcoolingbysears.com | 10-Sep-11 | 10-Sep-19 |
| hireaninstaller.com | 9-Feb-09 | 9-Feb-19 |
| hireaservicepro.com | 9-Feb-09 | 9-Feb-19 |
| hireatechnow.com | 9-Feb-09 | 9-Feb-19 |
| holidaysecret.com | 30-Aug-06 | 30-Aug-20 |
| homebathremodeling.com | 10-Sep-11 | 10-Sep-19 |
| homecentral.info | 26-Jul-01 | 26-Jul-20 |
| homeimprovementsbysears.com | 10-Sep-11 | 10-Sep-19 |
| honeydont.com | 20-Jun-07 | 20-Jun-20 |
| honeydontlist.com | 27-Oct-08 | 27-Oct-20 |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 26:44:32 Exhibit A Pg 1065 of 1120

| | | |
|---|---|---|
| honeydontlist.net | 27-Oct-08 | 27-Oct-20 |
| houstonappliancecontractors.com | 14-Nov-12 | 14-Nov-20 |
| houstonappliancepro.com | 14-Nov-12 | 14-Nov-20 |
| houstonappliancerepair247.com | 14-Nov-12 | 14-Nov-20 |
| houstonappliancerepairamn.com | 14-Nov-12 | 14-Nov-20 |
| houstoncontractorconnect.com | 14-Nov-12 | 14-Nov-20 |
| houstondoorrepairman.com | 14-Nov-12 | 14-Nov-20 |
| houstonhandymanrepairs.com | 14-Nov-12 | 14-Nov-20 |
| houstonhomepaintingservices.com | 14-Nov-12 | 14-Nov-20 |
| houstonhomerepaircontractors.com | 14-Nov-12 | 14-Nov-20 |
| houstonhomerepairexperts.com | 14-Nov-12 | 14-Nov-20 |
| houstonrefrigeratorrepairman.com | 14-Nov-12 | 14-Nov-20 |
| houstonrepaircontractor.com | 14-Nov-12 | 14-Nov-20 |
| houstonrepaircontractors.com | 14-Nov-12 | 14-Nov-20 |
| houstonwasherdryerrepairs.com | 14-Nov-12 | 14-Nov-20 |
| howtodoisdonetoday.com | 18-Dec-09 | 18-Dec-19 |
| howtodoisdonetoday.net | 18-Dec-09 | 18-Dec-19 |
| howwascheckout.com | 12-Jul-13 | 12-Jul-19 |
| htsconnection.com | 14-Apr-09 | 14-Apr-19 |
| idiehard.com | 18-Jan-11 | 18-Jan-19 |
| ihatethegreatindoors.com | 3-Dec-02 | 3-Dec-19 |
| ikenmore.com | 18-Jan-11 | 18-Jan-19 |
| ikmart.com | 1-Apr-02 | 1-Apr-20 |
| ilovemykmart.com | 6-Feb-07 | 6-Feb-20 |
| imaginemystyle.com | 14-May-09 | 14-May-19 |
| impactdam.com | 15-Nov-12 | 15-Nov-20 |
| impactdam.net | 15-Nov-12 | 15-Nov-20 |
| imxcollective.com | 27-Mar-17 | 27-Mar-19 |
| independentsearsautocenters.com | 15-Oct-09 | 15-Oct-19 |
| infinitefilters.com | 10-Aug-12 | 10-Aug-20 |
| info-grip.com | 16-Sep-10 | 16-Sep-20 |
| innovelsolutions.co | 2-Jul-14 | 1-Jul-20 |
| innovelsolutions.com | 2-Jul-14 | 2-Jul-20 |
| innovelsolutions.net | 2-Jul-14 | 2-Jul-20 |
| innovelsolutions.org | 2-Jul-14 | 2-Jul-20 |
| insidesears.com | 19-Nov-02 | 19-Nov-19 |
| isears.com | 30-Jan-00 | 30-Jan-19 |
| iseers.com | 4-Dec-08 | 4-Dec-18 |
| ishopitell.com | 1-May-09 | 1-May-19 |
| ishopntell.com | 1-May-09 | 1-May-19 |
| isyourrefrigeratorrunning.com | 22-Jan-07 | 22-Jan-19 |
| itgsearshc.com | 12-May-14 | 12-May-20 |
| itsgn.com | 11-Nov-09 | 11-Nov-19 |
| jacksarrow.com | 16-Sep-08 | 16-Sep-20 |
| jfffamily.com | 12-Sep-02 | 12-Sep-19 |
| jobsatsears.com | 18-Apr-00 | 18-Apr-20 |
| justforfeet.com | 22-Aug-97 | 21-Aug-19 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-rdd  Doc 2507  Filed 02/08/19  Entered 02/08/19 16:44:31  Exhibit A
Pg 1066 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | |
|---|---|---|
| justforfeet.net | 5-Apr-01 | 5-Apr-20 |
| justforfeet.org | 5-Apr-01 | 5-Apr-20 |
| justforfeetfamily.com | 12-Sep-02 | 12-Sep-19 |
| justforfeetsucks.com | 1-May-02 | 1-May-19 |
| justgn.com | 11-Nov-09 | 11-Nov-19 |
| justkidz.com | 3-Apr-00 | 3-Apr-19 |
| justkidztoys.com | 22-Jan-10 | 22-Jan-20 |
| kcdbrands.com | 21-Feb-11 | 21-Feb-19 |
| kcdpat.com | 11-Feb-14 | 11-Feb-20 |
| k-conceirge.com | 2-Feb-04 | 2-Feb-19 |
| kconcierge.com | 31-Jan-06 | 5-Jan-19 |
| k-concierge.com | 28-Nov-06 | 5-Jan-19 |
| kenmire.com | 23-Nov-12 | 23-Nov-18 |
| kenmore.com | 31-Mar-99 | 31-Mar-19 |
| kenmore.deals | 22-Sep-14 | 22-Sep-19 |
| kenmore.eu | 27-Mar-06 | 27-Mar-20 |
| kenmore.gifts | 4-Nov-14 | 4-Nov-19 |
| kenmore.info | 26-Jul-01 | 26-Jul-20 |
| kenmore.kitchen | 21-Feb-14 | 21-Feb-19 |
| kenmore.net | 5-May-98 | 4-May-20 |
| kenmore.repair | 25-Mar-14 | 25-Mar-19 |
| kenmore.support | 19-Mar-14 | 18-Mar-19 |
| kenmore.technology | 27-Jan-15 | 27-Jan-19 |
| kenmore.tv | 21-Jan-11 | 21-Jan-20 |
| kenmore.us | 19-Apr-02 | 18-Apr-19 |
| kenmore15.com | 2-Oct-08 | 2-Oct-20 |
| kenmorealfie.com | 19-Sep-16 | 19-Sep-20 |
| kenmorecommercial.com | 10-Nov-08 | 10-Nov-20 |
| kenmoreconnect.com | 22-May-12 | 22-May-20 |
| kenmoredirect.com | 29-Aug-17 | 29-Aug-19 |
| kenmoredirect.info | 29-Aug-17 | 29-Aug-19 |
| kenmoredirect.net | 29-Aug-17 | 29-Aug-19 |
| kenmoredirect.org | 29-Aug-17 | 29-Aug-19 |
| kenmoreelite.com | 16-Nov-01 | 16-Nov-20 |
| kenmoreelite51capacity.com | 12-Feb-13 | 12-Feb-19 |
| kenmoreelite51speed.com | 12-Feb-13 | 12-Feb-19 |
| kenmoreelite51steam.com | 12-Feb-13 | 12-Feb-19 |
| kenmore-eparts.com | 28-Mar-00 | 28-Mar-19 |
| kenmoregeniustips.com | 5-Oct-10 | 5-Oct-20 |
| kenmoreinnovation.com | 17-Nov-08 | 17-Nov-20 |
| kenmorelivestudio.com | 19-Feb-10 | 19-Feb-20 |
| kenmoremilitarywater.com | 17-Nov-09 | 17-Nov-19 |
| kenmoren.com | 23-Nov-12 | 23-Nov-18 |
| kenmoreparts.com | 7-Apr-03 | 7-Apr-20 |
| kenmoreparts.net | 1-Dec-99 | 1-Dec-18 |

18-23538-shl   Doc 9507-7   Filed 02/08/19   Entered 02/08/19 26:44:32   Exhibit A
Pg 1067 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | |
|---|---|---|
| kenmorepowercord.com | 16-Sep-15 | 16-Sep-19 |
| kenmoresmart.com | 24-May-16 | 24-May-20 |
| kenmorestudio.com | 1-Dec-09 | 1-Dec-19 |
| kenmoretake15.com | 2-Oct-08 | 2-Oct-20 |
| kenmorewater.com | 2-Feb-01 | 2-Feb-19 |
| kenmorewaterheaters.com | 21-Oct-02 | 21-Oct-20 |
| kenomore.com | 23-Nov-12 | 23-Nov-18 |
| kermore.com | 23-Nov-12 | 23-Nov-18 |
| kidvantage.com | 14-May-98 | 13-May-20 |
| kidvantage.net | 14-May-98 | 13-May-19 |
| kidvantage.org | 14-May-98 | 13-May-19 |
| kidvantageclub.com | 30-Sep-08 | 30-Sep-19 |
| kinfomail.com | 16-Nov-06 | 15-Jan-20 |
| kitchenandplumbing.com | 21-Apr-11 | 21-Apr-20 |
| kitchenremodelingbysears.com | 10-Sep-11 | 10-Sep-19 |
| kmart.ai | 16-Jul-18 | 16-Jul-20 |
| kmart.asia | 26-Sep-10 | 26-Sep-19 |
| kmart.cl | 31-Oct-00 | 29-Nov-20 |
| k-mart.cl | 13-Jul-06 | 11-Aug-20 |
| kmart.clothing | 5-Feb-14 | 5-Feb-20 |
| kmart.club | 14-Sep-15 | 13-Sep-19 |
| kmart.com | 19-Oct-06 | 18-Dec-18 |
| kmart.com.pr | 1-Feb-02 | 1-Feb-19 |
| kmart.coupons | 17-Aug-15 | 17-Aug-20 |
| kmart.credit | 27-Aug-14 | 26-Aug-19 |
| kmart.creditcard | 26-Aug-14 | 26-Aug-19 |
| kmart.deals | 22-Sep-14 | 22-Sep-19 |
| kmart.delivery | 3-Feb-15 | 3-Feb-20 |
| kmart.discount | 19-Aug-14 | 19-Aug-20 |
| | | |
| kmart.eu | 12-Aug-06 | 12-Aug-20 |
| kmart.fashion | 10-Apr-15 | 10-Apr-20 |
| kmart.finance | 3-Sep-14 | 3-Sep-19 |
| kmart.financial | 28-Jul-14 | 28-Jul-19 |
| kmart.gen.tr | 10-Dec-01 | 9-Dec-19 |
| kmart.gifts | 4-Nov-14 | 4-Nov-19 |
| kmart.jobs | 15-Sep-05 | 15-Sep-19 |
| kmart.kitchen | 10-Feb-14 | 10-Feb-19 |
| kmart.live | 28-Mar-18 | 28-Mar-20 |
| kmart.mobi | 15-Jun-06 | 15-Jun-19 |
| kmart.net | 8-May-98 | 7-May-19 |
| kmart.net.pr | 1-Feb-02 | 1-Feb-19 |
| kmart.org | 21-Nov-06 | 16-Dec-19 |
| k-mart.org | 30-Nov-05 | 24-Nov-19 |
| kmart.org.pr | 22-Feb-02 | 22-Feb-19 |
| kmart.pr | 6-Jan-14 | 6-Jan-19 |

18-23538-shl Doc 9507-7 Filed 02/26/19 Entered 02/26/19 16:44:31 Exhibit A
Pg 1068 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | |
|---|---|---|
| kmart.sale | 28-Mar-18 | 28-Mar-20 |
| kmart.services | 11-Mar-15 | 11-Mar-19 |
| kmart.shoes | 24-Feb-14 | 24-Feb-19 |
| kmart.store | 6-Jun-16 | 6-Jun-19 |
| kmart.support | 19-Mar-14 | 18-Mar-19 |
| kmart.systems | 26-Jan-15 | 26-Jan-19 |
| kmart.tienda | 27-May-14 | 27-May-19 |
| kmart.tv | 4-Sep-06 | 4-Sep-20 |
| k-mart.us | 7-Feb-12 | 6-Feb-20 |
| kmart2go.com | 17-Apr-09 | 17-Apr-21 |
| kmart3662.com | 10-Oct-09 | 10-Oct-19 |
| kmart3dtelevision.com | 8-Jun-10 | 8-Jun-20 |
| kmart3dtelevisons.com | 8-Jun-10 | 8-Jun-20 |
| kmart3dtv.com | 8-Jun-10 | 8-Jun-20 |
| kmart3dtvs.com | 8-Jun-10 | 8-Jun-20 |
| kmart50ftparty.com | 18-Aug-11 | 18-Aug-19 |
| kmartasc.com | 30-Mar-11 | 29-Mar-20 |
| kmartasia.asia | 10-Feb-11 | 10-Feb-20 |
| kmartasia.co | 10-Feb-11 | 9-Feb-20 |
| kmartasia.net | 10-Feb-11 | 10-Feb-20 |
| kmartauto.com | 5-May-09 | 5-May-20 |
| kmartautomotive.com | 30-Apr-09 | 30-Apr-19 |
| kmartbbguns.info | 24-Feb-11 | 24-Feb-19 |
| kmartbestcustomer.com | 13-Nov-08 | 13-Nov-20 |
| kmartbillionpoints.com | 1-Jun-10 | 1-Jun-20 |
| kmartbirthday.com | 24-Jul-13 | 24-Jul-19 |
| kmartbluebonus.com | 14-Jun-07 | 14-Jun-19 |
| kmartbluelight.com | 31-Mar-09 | 31-Mar-20 |
| kmartbonus.com | 14-Jun-07 | 14-Jun-19 |
| kmartbonusrewards.com | 21-Jun-07 | 21-Jun-20 |
| kmartbooks.com | 19-May-11 | 19-May-19 |
| kmartboxers.com | 18-Feb-04 | 18-Feb-20 |
| kmartbusinessgiftcards.com | 20-Apr-10 | 20-Apr-20 |
| kmartcabintent.info | 24-Feb-11 | 24-Feb-19 |
| kmart-cameras.net | 26-May-06 | 7-Mar-19 |
| kmartcampingtents.info | 24-Feb-11 | 24-Feb-19 |
| kmartchoices.com | 17-Jun-10 | 17-Jun-20 |
| kmartchoices.info | 17-Jun-10 | 17-Jun-20 |
| kmartchoices.mobi | 17-Jun-10 | 17-Jun-20 |
| kmartchoices.net | 17-Jun-10 | 17-Jun-20 |
| kmartchoices.org | 17-Jun-10 | 17-Jun-19 |
| kmartchoices.us | 17-Jun-10 | 16-Jun-20 |
| kmartcollectibles.com | 29-Jun-11 | 29-Jun-19 |
| kmartcollector.com | 29-Jun-11 | 29-Jun-19 |
| kmartcomplaints.com | 10-Jan-10 | 10-Jan-20 |
| kmartcomplaints.net | 10-Jan-10 | 10-Jan-20 |
| kmartcomplaints.org | 10-Jan-10 | 10-Jan-20 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | |
|---|---|---|
| kmartconcierge.com | 3-Feb-11 | 3-Feb-19 |
| kmartcorp.com | 7-Feb-00 | 7-Feb-20 |
| kmartcorporategiftcards.com | 27-Oct-10 | 27-Oct-20 |
| kmartcouponcode.info | 24-Feb-11 | 24-Feb-19 |
| kmartcoupons.info | 24-Feb-11 | 24-Feb-19 |
| kmartcreditcard.org | 10-Sep-12 | 10-Sep-19 |
| kmartcreditcardapplication.com | 13-Jun-09 | 13-Jun-20 |
| kmartcurtains.info | 24-Feb-11 | 24-Feb-19 |
| kmart-deals.com | 4-Apr-04 | 4-Apr-19 |
| kmart-deals.net | 1-May-06 | 17-Feb-19 |
| kmart-delivery.com | 26-Apr-12 | 25-Apr-20 |
| kmartdesign.com | 24-Feb-09 | 24-Feb-20 |
| kmartdev.com | 12-Sep-05 | 12-Sep-19 |
| kmartdigitalad.com | 21-Apr-11 | 21-Apr-19 |
| kmartdiscounts.com | 8-Jun-10 | 8-Jun-20 |
| kmarteasypay.com | 17-Jun-10 | 17-Jun-20 |
| kmartexpress.com | 10-Nov-09 | 10-Nov-19 |
| kmartfashion.com | 5-Nov-10 | 5-Nov-20 |
| kmartfeedback.com | 24-Aug-07 | 24-Aug-20 |
| kmartfuninthesungame.com | 25-Apr-14 | 25-Apr-20 |
| kmartgamer.com | 27-Apr-10 | 27-Apr-20 |
| kmart-games.com | 29-Jun-06 | 29-Jun-20 |
| kmartgaming.com | 27-Apr-10 | 27-Apr-20 |
| kmartgarden.info | 9-Feb-04 | 9-Feb-20 |
| kmartgardenclub.com | 20-Feb-12 | 20-Feb-20 |
| kmartgift.info | 15-Nov-08 | 15-Nov-20 |
| kmartgiftcard.com | 18-Nov-04 | 5-Feb-20 |
| kmart-giftcard.com | 30-Jul-09 | 30-Jul-19 |
| kmartgiftcardnow.com | 7-Nov-08 | 7-Nov-20 |
| kmartgiftcards.com | 16-Feb-08 | 16-Feb-19 |
| kmartgrocery.com | 9-May-08 | 9-May-19 |
| kmarthalloweenparty.com | 25-Aug-11 | 25-Aug-19 |
| kmarthalogen.com | 15-Jul-11 | 15-Jul-19 |
| kmarthome.com | 19-Jan-05 | 19-Jan-19 |
| kmartinflatablemattress.info | 24-Feb-11 | 24-Feb-19 |
| kmartisp.com | 26-Jul-01 | 26-Jul-19 |
| kmartkids.com | 5-Feb-10 | 5-Feb-20 |
| kmartkidsfurniture.info | 24-Feb-11 | 24-Feb-19 |
| kmartkitchencurtains.info | 24-Feb-11 | 24-Feb-19 |
| kmartkommunity.biz | 18-Mar-03 | 17-Mar-19 |
| kmartkommunity.com | 18-Mar-03 | 18-Mar-20 |
| kmartkommunity.info | 18-Mar-03 | 18-Mar-19 |
| kmartkommunity.net | 18-Mar-03 | 18-Mar-19 |
| kmartkommunity.org | 18-Mar-03 | 18-Mar-19 |
| kmartkommunity.us | 18-Mar-03 | 17-Mar-19 |
| kmartkreator.com | 17-Aug-12 | 17-Aug-20 |
| kmartlayaway.com | 10-Jul-07 | 10-Jul-20 |

18-23538-shl    Doc 9507-1    Filed 02/08/19    Entered 02/08/19 16:44:31    Exhibit A
Pg 1079 of 1120

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | |
|---|---|---|
| kmartlayaway.info | 18-Oct-08 | 18-Oct-20 |
| kmartlink2life.com | 26-Oct-11 | 26-Oct-20 |
| kmartlink2life.net | 26-Oct-11 | 26-Oct-20 |
| kmartlink2life.org | 26-Oct-11 | 26-Oct-20 |
| kmartlinktolife.com | 26-Oct-11 | 26-Oct-20 |
| kmart-link-to-life.com | 26-Oct-11 | 26-Oct-20 |
| kmartlinktolife.net | 26-Oct-11 | 26-Oct-20 |
| kmart-link-to-life.net | 26-Oct-11 | 26-Oct-20 |
| kmartlinktolife.org | 26-Oct-11 | 26-Oct-20 |
| kmart-link-to-life.org | 26-Oct-11 | 26-Oct-19 |
| kmartlive.com | 8-Jun-10 | 8-Jun-20 |
| kmartlocal.com | 22-Feb-12 | 22-Feb-20 |
| kmartlocalad.com | 21-Apr-11 | 21-Apr-19 |
| kmartlookbook.com | 23-Mar-10 | 23-Mar-20 |
| kmartmarketplace.com | 26-Jul-07 | 26-Jul-19 |
| kmartmedia.com | 16-Feb-06 | 16-Feb-20 |
| kmartmoneyhub.com | 15-Jul-11 | 15-Jul-19 |
| kmartmyway.com | 16-Jan-09 | 16-Jan-19 |
| kmartonline.net | 1-Dec-09 | 1-Dec-19 |
| kmart-online-pharmacy.com | 13-Feb-16 | 13-Feb-20 |
| kmartoptions.com | 17-Jun-10 | 17-Jun-20 |
| kmartpal.com | 19-Apr-11 | 19-Apr-19 |
| kmartparts.com | 11-Sep-07 | 11-Sep-19 |
| kmart-parts.com | 11-Sep-07 | 11-Sep-19 |
| k-martparts.com | 11-Sep-07 | 11-Sep-19 |
| k-mart-parts.com | 11-Sep-07 | 11-Sep-19 |
| kmartpersonalshopper.com | 31-Jan-11 | 31-Jan-19 |
| kmartpharmacy.com | 26-Nov-05 | 26-Nov-19 |
| kmart-pharmacy.com | 16-Nov-04 | 16-Nov-19 |
| k-martpharmacy.com | 26-Sep-07 | 26-Sep-19 |
| kmartpharmacy.net | 26-Sep-07 | 26-Sep-19 |
| kmart-pharmacy.net | 22-Jul-10 | 22-Jul-20 |
| kmartpharmacy.org | 26-Sep-07 | 26-Sep-19 |
| kmartplaza.com | 14-May-10 | 14-May-20 |
| kmartpoints.com | 28-Jun-10 | 28-Jun-20 |
| kmartportraitstudio.com | 31-Mar-09 | 31-Mar-20 |
| kmartpr.com | 28-Aug-05 | 28-Aug-19 |
| kmartprepaid.com | 14-Nov-06 | 14-Nov-19 |
| kmartprintablecoupons.com | 19-Nov-11 | 19-Nov-19 |
| kmartpromo.com | 17-Jun-05 | 17-Jun-19 |
| kmartproperties.com | 1-Dec-09 | 1-Dec-19 |
| kmartproperty.com | 1-Dec-09 | 1-Dec-19 |
| kmartrealestate.com | 12-Jun-00 | 12-Jun-20 |
| kmartrebates.com | 19-Aug-14 | 19-Aug-20 |
| kmartreward.com | 22-Sep-06 | 22-Sep-19 |
| kmartrewards.com | 11-Sep-06 | 11-Sep-19 |
| kmartsale.com | 13-Nov-09 | 13-Nov-19 |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 26:44:31 Exhibit A Pg 1073 of 1150

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | |
|---|---|---|
| kmartshipmypants.com | 16-Apr-13 | 16-Apr-19 |
| kmartshowercurtains.info | 24-Feb-11 | 24-Feb-19 |
| kmartsmart.com | 9-Jan-09 | 9-Jan-19 |
| kmartsmartreward.com | 9-Jan-09 | 9-Jan-19 |
| kmartsmartrewards.com | 9-Jan-09 | 9-Jan-19 |
| kmartsocial.com | 31-Jan-11 | 31-Jan-19 |
| kmartsolutioncard.biz | 11-Jun-07 | 10-Jun-19 |
| kmartsolutioncard.com | 12-Jun-07 | 12-Jun-19 |
| kmartsolutioncard.net | 12-Jun-07 | 12-Jun-19 |
| kmartsolutioncards.biz | 11-Jun-07 | 10-Jun-19 |
| kmartsolutioncards.com | 12-Jun-07 | 12-Jun-19 |
| kmartsolutioncards.net | 12-Jun-07 | 12-Jun-19 |
| kmartsolutionmastercard.biz | 11-Jun-07 | 10-Jun-19 |
| kmartsolutionmastercard.com | 12-Jun-07 | 12-Jun-19 |
| kmartsolutionmastercard.net | 12-Jun-07 | 12-Jun-19 |
| kmartsolutionscard.biz | 11-Jun-07 | 10-Jun-19 |
| kmartsolutionscard.com | 12-Jun-07 | 12-Jun-19 |
| kmartsolutionscard.net | 12-Jun-07 | 12-Jun-19 |
| kmartsolutionscards.biz | 11-Jun-07 | 10-Jun-19 |
| kmartsolutionscards.com | 12-Jun-07 | 12-Jun-19 |
| kmartsolutionscards.net | 12-Jun-07 | 12-Jun-19 |
| kmartsolutionsmastercard.biz | 11-Jun-07 | 10-Jun-19 |
| kmartsolutionsmastercard.com | 12-Jun-07 | 12-Jun-19 |
| kmartsolutionsmastercard.net | 12-Jun-07 | 12-Jun-19 |
| kmartspanishhub.com | 22-Aug-11 | 22-Aug-19 |
| kmart-store.com | 8-May-06 | 21-Feb-20 |
| kmartstorelocator.info | 24-Feb-11 | 24-Feb-19 |
| kmartstores.info | 24-Feb-11 | 24-Feb-19 |
| kmartswingsets.info | 24-Feb-11 | 24-Feb-19 |
| kmarttrueblue.com | 14-Jun-07 | 14-Jun-19 |
| kmarttvstands.info | 24-Feb-11 | 24-Feb-19 |
| kmartweeklyad.info | 24-Feb-11 | 24-Feb-19 |
| kmartwine.com | 20-Jul-06 | 20-Jul-20 |
| kmartwines.com | 23-Oct-07 | 23-Oct-20 |
| kmartwireless.com | 17-Mar-09 | 17-Mar-20 |
| kmconcierge.com | 31-Jan-06 | 5-Jan-19 |
| kmrt.cm | 2-Mar-16 | 2-Mar-20 |
| kmsourcing.com.hk | 16-Jul-14 | 16-Jul-20 |
| kmsourcing.net | 15-Jul-14 | 15-Jul-20 |
| kmtsourcing.com | 15-Jul-14 | 15-Jul-20 |
| kmtsourcing.com.hk | 16-Jul-14 | 16-Jul-20 |
| kmtsourcing.net | 15-Jul-14 | 15-Jul-20 |
| knmore.com | 23-Nov-12 | 23-Nov-18 |

| | | |
|---|---|---|
| knowstate.co | 15-Oct-12 | 14-Oct-20 |
| landsend.jobs | 15-Sep-05 | 15-Sep-19 |
| landsendmarketplace.com | 25-Jul-07 | 25-Jul-19 |
| landsendmyway.com | 16-Jan-09 | 16-Jan-19 |
| latinasmart.net | 27-Apr-11 | 27-Apr-19 |
| latinasmart.org | 27-Apr-11 | 27-Apr-19 |
| lauderdaleaefactoryservice.com | 1-Mar-10 | 1-Mar-20 |
| lawnmower.parts | 9-Aug-15 | 9-Aug-20 |
| layawayangel.com | 3-Mar-09 | 3-Mar-19 |
| layawayangel.net | 3-Mar-09 | 3-Mar-19 |
| layawayangel.org | 4-Mar-09 | 4-Mar-19 |
| layawayangels.com | 3-Mar-09 | 3-Mar-19 |
| layawayangels.net | 3-Mar-09 | 3-Mar-19 |
| layawayangels.org | 4-Mar-09 | 4-Mar-19 |
| lemarketplace.com | 25-Jul-07 | 25-Jul-19 |
| letsgetfitclub.com | 6-Dec-10 | 6-Dec-18 |
| littleonesbrand.com | 12-Jun-15 | 12-Jun-19 |
| livejobleads.com | 9-Feb-09 | 9-Feb-19 |
| livenowandhere.com | 23-Jun-10 | 23-Jun-20 |
| locateapplianceparts.com | 11-Sep-07 | 11-Sep-19 |
| loginsearscreditcard.com | 28-Mar-18 | 28-Mar-20 |
| madrescomadres.com | 29-Mar-11 | 29-Mar-19 |
| madresycomadres.com | 29-Mar-11 | 29-Mar-19 |
| makeovertheugliestroom.com | 1-Jul-10 | 1-Jul-20 |
| managemyanniversary.com | 1-Aug-06 | 1-Aug-20 |
| managemyantiques.com | 20-Jul-06 | 20-Jul-20 |
| managemyappointment.com | 1-Aug-06 | 1-Aug-20 |
| managemyattic.com | 20-Jul-06 | 20-Jul-20 |
| managemyautomobile.com | 23-Jul-09 | 23-Jul-19 |
| managemybaby.com | 1-Aug-06 | 1-Aug-19 |
| managemybasement.com | 20-Jul-06 | 20-Jul-20 |
| managemybathroom.com | 20-Jul-06 | 20-Jul-19 |
| managemybedrooms.com | 20-Jul-06 | 20-Jul-19 |
| managemybird.com | 1-Aug-06 | 1-Aug-19 |
| managemybirthday.com | 1-Aug-06 | 1-Aug-19 |
| managemyblog.com | 17-Aug-06 | 22-Mar-20 |
| managemyboat.com | 1-Aug-06 | 1-Aug-19 |
| managemybreakfast.com | 1-Aug-06 | 1-Aug-19 |
| managemybudgeting.com | 1-Aug-06 | 1-Aug-20 |
| managemycar.com | 10-Oct-00 | 10-Oct-19 |
| managemycards.com | 17-Aug-06 | 14-Feb-20 |
| managemycat.com | 1-Aug-06 | 1-Aug-20 |
| managemycharitycontributions.com | 1-Aug-06 | 1-Aug-20 |
| managemychildren.com | 20-Jul-06 | 20-Jul-20 |
| managemychristmas.com | 20-Jul-06 | 20-Jul-20 |
| managemycloset.com | 20-Jul-06 | 20-Jul-20 |
| managemycottage.com | 17-Aug-06 | 22-Mar-20 |

18-23538-rdd Doc 2507-1 Filed 02/06/19 Entered 02/06/19 16:44:31 Exhibit A
Pg 1073 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | |
|---|---|---|
| managemydad.com | 17-Aug-06 | 22-Mar-20 |
| managemydecor.com | 17-Aug-06 | 5-Jul-20 |
| managemydesktoppc.com | 7-Dec-09 | 7-Dec-19 |
| managemydigitallife.com | 27-Nov-07 | 27-Nov-19 |
| managemydinner.com | 1-Aug-06 | 1-Aug-20 |
| managemydinnerparty.com | 1-Aug-06 | 1-Aug-20 |
| managemydinnerreservations.com | 1-Aug-06 | 1-Aug-20 |
| managemydog.com | 1-Aug-06 | 1-Aug-19 |
| managemydonations.com | 20-Jul-06 | 20-Jul-20 |
| managemyeducation.com | 1-Aug-06 | 1-Aug-20 |
| managemyelectronics.com | 20-Jul-06 | 20-Jul-20 |
| managemyentertainment.com | 1-Aug-06 | 1-Aug-20 |
| managemyexercise.com | 1-Aug-06 | 1-Aug-20 |
| managemyexerciseroom.com | 20-Jul-06 | 20-Jul-20 |
| managemyeyes.com | 1-Aug-06 | 1-Aug-20 |
| managemyfashion.com | 17-Aug-06 | 22-Mar-20 |
| managemyfather.com | 1-Aug-06 | 1-Aug-20 |
| managemyfish.com | 1-Aug-06 | 1-Aug-20 |
| managemyfitnessroom.com | 20-Jul-06 | 20-Jul-20 |
| managemyfriends.com | 1-Aug-06 | 1-Aug-20 |
| managemyfuneral.com | 21-Jul-06 | 21-Jul-20 |
| managemygadgets.com | 1-Aug-06 | 1-Aug-20 |
| managemygame.com | 17-Aug-06 | 27-Mar-20 |
| managemygameroom.com | 20-Jul-06 | 20-Jul-20 |
| managemygames.com | 1-Aug-06 | 1-Aug-20 |
| managemygarage.com | 1-Aug-06 | 1-Aug-20 |
| managemygarden.ca | 13-Apr-04 | 13-Apr-19 |
| managemygarden.com | 17-Aug-06 | 13-Apr-20 |
| managemygiftcards.com | 20-Jul-06 | 20-Jul-20 |
| managemygiftgiving.com | 20-Jul-06 | 20-Jul-19 |
| managemygraduation.com | 1-Aug-06 | 1-Aug-19 |
| managemygrandparents.com | 1-Aug-06 | 1-Aug-19 |
| managemygreenlife.com | 7-Dec-09 | 7-Dec-19 |
| managemyguestlist.com | 1-Aug-06 | 1-Aug-19 |
| managemyhealthandbeauty.com | 1-Aug-06 | 1-Aug-19 |
| managemyhobbies.com | 1-Aug-06 | 1-Aug-19 |
| managemyhobby.com | 20-Jul-06 | 20-Jul-20 |
| managemyholidays.com | 20-Jul-06 | 20-Jul-19 |
| managemyhome.ca | 2-Oct-00 | 16-May-20 |
| managemyhome.com | 28-Aug-06 | 3-Sep-20 |
| managemyhomeimprovements.com | 1-Aug-06 | 1-Aug-20 |
| managemyhomeservices.com | 20-Jul-06 | 20-Jul-20 |
| managemyhometheater.com | 20-Jul-06 | 20-Jul-20 |
| managemyhousecleaning.com | 1-Aug-06 | 1-Aug-20 |
| managemyhousekeeping.com | 1-Aug-06 | 1-Aug-20 |
| managemyhousewarming.com | 1-Aug-06 | 1-Aug-20 |
| managemyhvac.com | 20-Jul-06 | 20-Jul-20 |

18-23538-rdd  Doc 2307  Filed 02/06/19  Entered 02/06/19 26:44:34  Exhibit A
Pg 1074 of 1450

FILED DATE: 5/19/2021 1:27 PM  2020L012403

| | | |
|---|---|---|
| managemyillness.com | 17-Aug-06 | 22-Mar-20 |
| managemyjewelry.com | 20-Jul-06 | 20-Jul-20 |
| managemykid.com | 1-Aug-06 | 1-Aug-20 |
| managemykids.com | 17-Aug-06 | 13-May-20 |
| managemykitchen.com | 1-Aug-06 | 1-Aug-20 |
| managemylaptoppc.com | 7-Dec-09 | 7-Dec-19 |
| managemylawn.com | 20-Jul-06 | 20-Jul-20 |
| managemylife.com | 9-Nov-03 | 9-Nov-20 |
| managemylifr.com | 28-Mar-18 | 28-Mar-20 |
| managemylook.com | 3-Dec-09 | 3-Dec-19 |
| managemylunch.com | 1-Aug-06 | 1-Aug-20 |
| managemymachine.com | 7-Dec-09 | 7-Dec-19 |
| managemymail.ca | 6-Apr-05 | 6-Apr-19 |
| managemymedia.com | 17-Aug-06 | 22-Mar-20 |
| managemymedicinecabinet.com | 20-Jul-06 | 20-Jul-20 |
| managemymom.com | 17-Aug-06 | 22-Mar-19 |
| managemymother.com | 1-Aug-06 | 1-Aug-20 |
| managemymove.ca | 27-Mar-04 | 27-Mar-19 |
| managemymove.com | 5-Sep-06 | 27-Mar-19 |
| managemymovietickets.com | 1-Aug-06 | 1-Aug-20 |
| managemynewborn.com | 1-Aug-06 | 1-Aug-20 |
| managemynuptials.com | 7-Dec-09 | 7-Dec-19 |
| managemyoffice.com | 1-Aug-06 | 1-Aug-20 |
| managemyoutdooractivities.com | 1-Aug-06 | 1-Aug-20 |
| managemyownersmanuals.com | 20-Jul-06 | 20-Jul-20 |
| managemypantry.com | 20-Jul-06 | 20-Jul-20 |
| managemyparty.com | 1-Aug-06 | 1-Aug-19 |
| managemypersonalcare.com | 1-Aug-06 | 1-Aug-19 |
| managemypersonalgrooming.com | 1-Aug-06 | 1-Aug-19 |
| managemypet.com | 17-Aug-06 | 13-May-19 |
| managemypets.com | 1-Aug-06 | 1-Aug-20 |
| managemyphysicaltherapy.com | 1-Aug-06 | 1-Aug-20 |
| managemyplanning.com | 1-Aug-06 | 1-Aug-20 |
| managemypoints.com | 17-Aug-06 | 22-Mar-19 |
| managemyprom.com | 1-Aug-06 | 1-Aug-20 |
| managemyrecipes.com | 1-Aug-06 | 1-Aug-20 |
| managemyregistry.com | 1-Aug-06 | 1-Aug-20 |
| managemyrelocation.com | 1-Aug-06 | 1-Aug-20 |
| managemyremodel.com | 1-Aug-06 | 1-Aug-20 |
| managemyreservations.com | 1-Aug-06 | 1-Aug-20 |
| managemyride.com | 7-Aug-07 | 7-Aug-19 |
| managemyscreeningroom.com | 20-Jul-06 | 20-Jul-20 |
| managemysearch.com | 17-Aug-06 | 11-Jan-19 |
| managemyservice.com | 17-Aug-06 | 22-Mar-19 |
| managemyshape.com | 17-Aug-06 | 22-Mar-19 |
| managemyshopping.com | 17-Aug-06 | 22-Mar-20 |
| managemysmokingcessation.com | 1-Aug-06 | 1-Aug-20 |

18-23538-shl   Doc 9507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 1075 of 1120

| | | |
|---|---|---|
| managemysongs.com | 21-Aug-06 | 22-Mar-20 |
| managemysports.com | 17-Aug-06 | 22-Mar-20 |
| managemystorage.com | 20-Jul-06 | 20-Jul-19 |
| managemysummer.com | 20-Jul-06 | 20-Jul-20 |
| managemysustainability.com | 8-Dec-09 | 8-Dec-19 |
| managemytaxdocs.com | 20-Jul-06 | 20-Jul-20 |
| managemyteenager.com | 1-Aug-06 | 1-Aug-20 |
| managemytoddler.com | 8-Dec-09 | 8-Dec-19 |
| managemytools.com | 1-Aug-06 | 1-Aug-20 |
| managemytoys.com | 23-Oct-07 | 23-Oct-19 |
| managemytrip.com | 17-Aug-06 | 13-May-20 |
| managemytruck.com | 1-Aug-06 | 1-Aug-20 |
| managemyutilities.com | 17-Aug-06 | 14-Feb-20 |
| managemyvacation.com | 17-Aug-06 | 22-Mar-20 |
| managemyvacationhome.com | 1-Aug-06 | 1-Aug-20 |
| managemyvaluables.com | 20-Jul-06 | 20-Jul-20 |
| managemyvehicle.com | 17-Aug-06 | 14-May-20 |
| managemywallet.com | 5-May-09 | 5-May-20 |
| managemywarranties.com | 20-Jul-06 | 20-Jul-20 |
| managemyweddingceremony.com | 7-Dec-09 | 7-Dec-19 |
| managemyweddingplanning.com | 7-Dec-09 | 7-Dec-19 |
| managemyweekend.com | 1-Aug-06 | 1-Aug-20 |
| managemyweight.com | 18-Jan-04 | 18-Jan-19 |
| managemyweightloss.com | 1-Aug-06 | 1-Aug-20 |
| managemyyard.com | 1-Aug-06 | 1-Aug-20 |
| mangemysustainability.com | 7-Dec-09 | 7-Dec-19 |
| mangemytoddler.com | 1-Aug-06 | 1-Aug-20 |
| manysidesofme.com | 9-Aug-10 | 9-Aug-20 |
| manysidesofyou.com | 1-Jul-10 | 1-Jul-20 |
| mcx-delivery.com | 22-May-14 | 22-May-20 |
| mediagoto.com | 3-Apr-02 | 3-Apr-20 |
| meetthedumores.com | 11-Apr-07 | 11-Apr-19 |
| memomaison.ca | 25-Mar-04 | 25-Mar-19 |
| memomaison.com | 28-Aug-06 | 5-Dec-18 |
| metascale.biz | 16-Feb-12 | 15-Feb-20 |
| metascale.com | 19-Jan-05 | 19-Jan-19 |
| metascale.info | 16-Feb-12 | 16-Feb-20 |
| metascale.mobi | 22-Feb-12 | 22-Feb-20 |
| metascale.net | 17-Jan-12 | 17-Jan-20 |
| miamiaefactoryservice.com | 2-Feb-10 | 2-Feb-20 |
| miamiaeservices.com | 2-Feb-10 | 2-Feb-20 |
| militarykenmorewater.com | 16-Nov-09 | 16-Nov-19 |
| misscoolbeans.com | 14-May-09 | 14-May-19 |
| mmyh.ca | 6-Apr-04 | 6-Apr-19 |
| monarchappliance.com | 4-Dec-14 | 4-Dec-18 |
| monarchfl.com | 8-May-15 | 8-May-19 |
| monarchhome.com | 26-Oct-08 | 26-Oct-19 |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | |
|---|---|---|
| monarchluxuryappliance.com | 8-May-15 | 8-May-19 |
| monarchluxuryappliances.com | 8-May-15 | 8-May-19 |
| monarkappliance.co | 18-Nov-14 | 17-Nov-20 |
| monarkapplianceco.com | 4-Dec-14 | 4-Dec-18 |
| monarkappliancecompany.com | 4-Dec-14 | 4-Dec-18 |
| monarkappliances.co | 18-Nov-14 | 17-Nov-20 |
| monarkappliances.com | 4-Dec-14 | 4-Dec-18 |
| monarkapplianceshowroom.com | 4-Dec-14 | 4-Dec-18 |
| monarkapplianceshowrooms.com | 4-Dec-14 | 4-Dec-18 |
| monarkaz.com | 8-May-15 | 8-May-19 |
| monarkca.com | 8-May-15 | 8-May-19 |
| monarkcares.com | 21-Sep-15 | 21-Sep-19 |
| monarkfl.com | 8-May-15 | 8-May-19 |
| monarkhome.com | 4-Dec-14 | 4-Dec-18 |
| monarkkitchen.com | 4-Dec-14 | 4-Dec-18 |
| monarkkitchenappliances.com | 4-Dec-14 | 4-Dec-18 |
| monarkkitchenshowroom.com | 4-Dec-14 | 4-Dec-18 |
| monarkkitchenshowrooms.com | 4-Dec-14 | 4-Dec-18 |
| monarklife.com | 18-Nov-14 | 18-Nov-20 |
| monarkliving.com | 18-Nov-14 | 18-Nov-20 |
| monarkluxuryappliance.co | 18-Nov-14 | 17-Nov-20 |
| monarkluxuryappliance.com | 4-Dec-14 | 4-Dec-18 |
| monarkluxuryappliances.co | 18-Nov-14 | 17-Nov-20 |
| monarkluxuryappliances.com | 4-Dec-14 | 4-Dec-18 |
| monarkpremiumappliance.co | 18-Nov-14 | 17-Nov-20 |
| monarkpremiumappliance.com | 4-Dec-14 | 4-Dec-18 |
| monarkpremiumappliances.co | 18-Nov-14 | 17-Nov-20 |
| monarkpremiumappliances.com | 4-Dec-14 | 4-Dec-18 |
| monarkshowroom.com | 4-Dec-14 | 4-Dec-18 |
| monarkshowrooms.com | 4-Dec-14 | 4-Dec-18 |
| monarksurvey.com | 21-Sep-15 | 21-Sep-19 |
| monarkusa.com | 18-Mar-15 | 18-Mar-19 |
| moneycantbuystyle.com | 24-Nov-08 | 24-Nov-19 |
| moregreenacrossamerica.com | 8-Mar-10 | 8-Mar-20 |
| morejobleads.com | 9-Feb-09 | 9-Feb-19 |
| morevaluesmorechristmas.com | 12-Aug-09 | 12-Aug-21 |
| morrowridge.com | 25-May-07 | 25-May-19 |
| movementmovement.com | 17-Feb-13 | 17-Feb-20 |
| movingpointssweeps.com | 8-Jun-10 | 8-Jun-20 |
| mowingacrossamerica.com | 2-Feb-10 | 2-Feb-20 |
| mrbluelight.xxx | 6-Dec-11 | 6-Dec-20 |
| mrscoolbeans.com | 14-May-09 | 14-May-19 |
| msegno.net | 27-May-14 | 27-May-20 |
| mxshc.com | 17-Jan-14 | 17-Jan-20 |
| myaaahome.com | 15-Sep-05 | 15-Sep-19 |
| mycountrywidehome.com | 21-Sep-05 | 21-Sep-19 |
| mydelver.com | 13-Apr-08 | 13-Apr-20 |

18-23538-shl   Doc 92507   Filed 01/08/19   Entered 02/06/19 26:44:31   Exhibit A
Pg 1077 of 1450

FILED DATE: 5/19/2021 1:27 PM          2020L012403

| | | |
|---|---|---|
| mydelvers.com | 10-Mar-10 | 10-Mar-20 |
| mydiydisasterproject.com | 27-May-10 | 27-May-20 |
| myelectronicsmatchmaker.com | 11-Jan-10 | 11-Jan-20 |
| myfirstkenmore.com | 13-May-10 | 13-May-20 |
| myfriendspend.com | 16-Jun-09 | 16-Jun-19 |
| mygofer.com | 4-Apr-04 | 4-Apr-19 |
| my-gofer.com | 6-Feb-08 | 6-Feb-19 |
| mygofer.delivery | 3-Feb-15 | 3-Feb-20 |
| my-gofer.info | 19-Apr-12 | 19-Apr-20 |
| mygofer2go.com | 26-Mar-09 | 26-Mar-19 |
| mygoferatkmart.com | 3-Dec-09 | 3-Dec-19 |
| mygoferatsears.com | 3-Dec-09 | 3-Dec-19 |
| mygofers.com | 12-May-06 | 12-May-20 |
| mygoferservice.com | 12-Apr-07 | 12-Apr-20 |
| mygoferservicebureau.com | 22-Sep-08 | 22-Sep-20 |
| mygopher.com | 28-Jan-99 | 28-Jan-19 |
| mygopheratkmart.com | 3-Dec-09 | 3-Dec-19 |
| mygopheratsears.com | 3-Dec-09 | 3-Dec-19 |
| myimageessentials.com | 12-Jun-15 | 12-Jun-19 |
| mykitchendrawer.com | 7-Jun-99 | 7-Jun-20 |
| mykmart.com | 14-May-99 | 14-May-19 |
| my-kmart.com | 11-Dec-04 | 11-Dec-18 |
| myownredwood.com | 19-Jan-08 | 19-Jan-20 |
| myperfectwardrobe.com | 29-Mar-07 | 29-Mar-19 |
| myphotos.com | 9-Apr-96 | 10-Apr-20 |
| mysear.com | 23-Nov-12 | 23-Nov-18 |
| mysears.com | 20-Nov-03 | 20-Nov-18 |
| mysearscard.com | 7-Aug-01 | 7-Aug-19 |
| mysearsfitclub.com | 11-May-10 | 11-May-20 |
| mysearshc.com | 9-Feb-05 | 9-Feb-19 |
| mysearsholding.com | 10-Feb-05 | 10-Feb-19 |
| mysearsholdingco.com | 10-Feb-05 | 10-Feb-19 |
| mysearsholdings.com | 9-Feb-05 | 9-Feb-19 |
| mysearsholdingsco.com | 9-Feb-05 | 9-Feb-19 |
| mysearshome.com | 15-Aug-06 | 5-Apr-20 |
| mysearsmobile.com | 8-Feb-16 | 8-Feb-20 |
| mysearsoptical.com | 3-Feb-04 | 3-Feb-19 |
| mysearsreward.com | 22-Jul-08 | 22-Jul-20 |
| mysearsrewards.com | 27-Jul-07 | 27-Jul-20 |
| mysegno.co | 27-May-14 | 26-May-20 |
| mysegno.com | 27-Mar-14 | 27-Mar-20 |
| mysegno.org | 27-May-14 | 27-May-20 |
| myshccommunity.com | 21-Mar-07 | 21-Mar-19 |
| myshccommunity.net | 29-Mar-07 | 29-Mar-20 |
| myshccommunity.org | 29-Mar-07 | 29-Mar-20 |
| myshccomuninty.com | 29-Mar-07 | 29-Mar-19 |
| myshccomuninty.net | 29-Mar-07 | 29-Mar-20 |

18-23538-shl Doc 2507 Filed 02/06/19 Entered 02/06/19 16:44:32 Exhibit A
Pg 1078 of 1420

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | |
|---|---|---|
| myshccomuninty.org | 29-Mar-07 | 29-Mar-20 |
| myshcommunity.com | 29-Mar-07 | 29-Mar-19 |
| myshcommunity.net | 29-Mar-07 | 29-Mar-20 |
| myshcommunity.org | 29-Mar-07 | 29-Mar-20 |
| myshcomunity.com | 29-Mar-07 | 29-Mar-19 |
| myshcomunity.net | 29-Mar-07 | 29-Mar-20 |
| myshcomunity.org | 29-Mar-07 | 29-Mar-20 |
| mytravelershomeguide.com | 21-Aug-06 | 1-May-20 |
| mywholehome.com | 17-Aug-06 | 24-Apr-20 |
| mywishbook.com | 3-Aug-04 | 3-Aug-19 |
| nationalclaimcenters.com | 2-Feb-10 | 2-Feb-20 |
| nationalclaimscenters.com | 1-Feb-10 | 1-Feb-20 |
| needitinstallednow.com | 9-Feb-09 | 9-Feb-19 |
| negativeandpositive.com | 25-Apr-07 | 25-Apr-19 |
| negative-and-positive.com | 25-Apr-07 | 25-Apr-19 |
| new-delivery.com | 26-Apr-12 | 25-Apr-20 |
| newdelvers.com | 10-Mar-10 | 10-Mar-20 |
| newsearscatalogue.com | 6-Nov-08 | 6-Nov-20 |
| newsearscatalogue.net | 6-Nov-08 | 6-Nov-20 |
| nexcom-delivery.com | 26-Apr-12 | 25-Apr-20 |
| northredwood.com | 19-Jan-08 | 19-Jan-20 |
| northwestterritory.com | 5-Feb-01 | 5-Feb-19 |
| nuestragente.com | 8-Sep-98 | 7-Sep-19 |
| offersears.com | 26-Jan-12 | 26-Jan-20 |
| offersears1.com | 11-Sep-12 | 11-Sep-20 |
| offersears10.com | 17-Nov-14 | 17-Nov-20 |
| offersears2.com | 11-Sep-12 | 11-Sep-20 |
| offersears3.com | 11-Sep-12 | 11-Sep-20 |
| offersears4.com | 11-Sep-12 | 11-Sep-20 |
| offersears5.com | 17-Nov-14 | 17-Nov-20 |
| offersears6.com | 17-Nov-14 | 17-Nov-20 |
| offersears7.com | 17-Nov-14 | 17-Nov-20 |
| offersears8.com | 17-Nov-14 | 17-Nov-20 |
| offersears9.com | 17-Nov-14 | 17-Nov-20 |
| offersywr.com | 26-Jan-12 | 26-Jan-20 |
| offersywr2.com | 17-Nov-14 | 17-Nov-20 |
| onestate.co | 15-Oct-12 | 14-Oct-20 |
| onlygn.com | 11-Nov-09 | 11-Nov-19 |
| opencountryapparel.com | 10-Apr-00 | 10-Apr-20 |
| opencountryboots.com | 5-Apr-00 | 5-Apr-20 |
| opencountrycasuals.com | 10-Apr-00 | 10-Apr-20 |
| opencountryshoes.com | 5-Apr-00 | 5-Apr-20 |
| orangeandblackfriday.com | 17-Aug-12 | 17-Aug-20 |
| originalpartsdirect.com | 13-Jun-12 | 13-Jun-20 |
| ourgreenfields.com | 19-Jan-08 | 19-Jan-20 |
| ownasears.com | 15-Aug-11 | 15-Aug-19 |
| ownasearsfranchise.com | 26-May-08 | 26-May-19 |

18-23538-rdd Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 1031 of 1120

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | |
|---|---|---|
| ownasearsstore.com | 15-Aug-11 | 15-Aug-19 |
| ownasearstore.com | 30-Aug-11 | 30-Aug-19 |
| pacificbay.org | 6-Jun-08 | 6-Jun-20 |
| packupthepoints.com | 8-Jun-10 | 8-Jun-20 |
| parentpal.net | 25-Sep-15 | 25-Sep-19 |
| partneryourway.com | 16-Nov-11 | 16-Nov-19 |
| partsatsears.com | 10-Jan-12 | 10-Jan-20 |
| partsdirect.com | 11-Jan-99 | 11-Jan-19 |
| partsdirect.info | 26-Jul-01 | 26-Jul-20 |
| partsdirectstore.com | 14-Mar-14 | 14-Mar-20 |
| partsdirectstore-content.com | 12-Aug-14 | 12-Aug-20 |
| partsdirectstore-dev.com | 14-Mar-14 | 14-Mar-20 |
| partsdirectstore-test.com | 14-Mar-14 | 14-Mar-20 |
| partsinthemail.com | 14-Nov-12 | 14-Nov-20 |
| personalcatalogcloud.com | 10-Jun-14 | 10-Jun-20 |
| personalclothingadvisor.com | 26-Oct-05 | 26-Oct-20 |
| personalfitnessequipmentadvisor.com | 26-Oct-05 | 26-Oct-20 |
| personalgarageadvisor.com | 26-Oct-05 | 26-Oct-20 |
| personalhomedecoradvisor.com | 26-Oct-05 | 26-Oct-20 |
| personalhomefashionsadvisor.com | 26-Oct-05 | 26-Oct-20 |
| personalhomegymadvisor.com | 26-Oct-05 | 26-Oct-20 |
| personalhometheateradvisor.com | 26-Oct-05 | 26-Oct-20 |
| personalkitchenadvisor.com | 26-Oct-05 | 26-Oct-20 |
| personallaundryadvisor.com | 26-Oct-05 | 26-Oct-20 |
| personallaundryroomadvisor.com | 26-Oct-05 | 26-Oct-20 |
| personallawncareadvisor.com | 26-Oct-05 | 26-Oct-20 |
| personaloccasions.com | 20-Oct-98 | 19-Oct-19 |
| personal-occasions.com | 20-Oct-98 | 19-Oct-19 |
| personaloutfitadvisor.com | 26-Oct-05 | 26-Oct-20 |
| personalpatioadvisor.com | 26-Oct-05 | 26-Oct-20 |
| personalretailcloud.com | 2-Sep-14 | 2-Sep-20 |
| personalshopper.app | 8-May-18 | 8-May-20 |
| personaltireadvisor.com | 26-Oct-05 | 26-Oct-20 |
| personaltooladvisor.com | 26-Oct-05 | 26-Oct-20 |
| personaltractorandmoweradvisor.com | 26-Oct-05 | 26-Oct-20 |
| personsalcatalogcloud.com | 10-Jun-14 | 10-Jun-20 |
| petboutiqueatsears.com | 29-May-14 | 29-May-20 |
| piperandblue.com | 20-Feb-08 | 20-Feb-20 |
| piperblue.com | 20-Feb-08 | 20-Feb-20 |
| placemysearsclaim.com | 3-Apr-14 | 3-Apr-20 |
| planmythings.com | 1-Jun-09 | 1-Jun-19 |
| playdateplace.com | 4-Feb-11 | 4-Feb-19 |
| policylogin.com | 12-Apr-01 | 12-Apr-19 |
| popupcollection.com | 12-Dec-16 | 12-Dec-18 |
| portraitpreview.com | 25-Jun-97 | 24-Jun-20 |

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:31   Exhibit A
Pg 1080 of 1450

| | | |
|---|---|---|
| positive-and-negative.com | 25-Apr-07 | 25-Apr-19 |
| power-ahead.com | 17-Nov-17 | 17-Nov-19 |
| powerahead-diehard.com | 17-Nov-17 | 17-Nov-19 |
| poweredahead.com | 9-Nov-17 | 9-Nov-19 |
| poweringahead.com | 10-Oct-14 | 10-Oct-20 |
| powersahead.com | 9-Nov-17 | 9-Nov-19 |
| premierbrandsshowcase.com | 25-Aug-15 | 25-Aug-19 |
| premiumapplianceoutlet.com | 21-Sep-10 | 21-Sep-20 |
| premiumapplianceoutlet.net | 21-Sep-10 | 21-Sep-20 |
| premiumapplianceoutlet.org | 21-Sep-10 | 21-Sep-20 |
| premiumplumbingoutlet.com | 25-Oct-10 | 25-Oct-19 |
| premiumplumbingoutlet.net | 25-Oct-10 | 25-Oct-19 |
| premiumplumbingoutlet.org | 25-Oct-10 | 25-Oct-19 |
| primeroenlafamilia.com | 12-Aug-09 | 12-Aug-21 |
| primerohispanicheritagescholarship.com | 9-Sep-09 | 9-Sep-19 |
| productfilters.com | 10-Aug-12 | 10-Aug-20 |
| productrepairservices.com | 12-May-10 | 12-May-20 |
| protegemvp.com | 17-Dec-08 | 17-Dec-19 |
| providerrecruitment.com | 9-Feb-09 | 9-Feb-19 |
| purchaseapplianceparts.com | 11-Sep-07 | 11-Sep-19 |
| rabutler.com | 25-May-07 | 25-May-19 |
| readysetholidy.com | 28-Sep-06 | 28-Sep-19 |
| reallifewardrobe.com | 29-Mar-07 | 29-Mar-19 |
| realwardrobe.com | 29-Mar-07 | 29-Mar-19 |
| redwoodfields.com | 19-Jan-08 | 19-Jan-20 |
| redysetholiday.com | 28-Sep-06 | 28-Sep-19 |
| refirgerator.parts | 25-Jun-14 | 25-Jun-19 |
| refrigeratorbrandparts.com | 10-Aug-12 | 10-Aug-20 |
| reimagineyourself.com | 11-Jan-08 | 11-Jan-19 |
| replacementmarketplace.com | 3-Apr-09 | 3-Apr-19 |
| replacementwindowsbysears.com | 10-Sep-11 | 10-Sep-19 |
| requestserviceslive.com | 9-Feb-09 | 9-Feb-19 |
| retireessears.com | 28-Feb-01 | 28-Feb-19 |
| returnin5.com | 24-Sep-12 | 24-Sep-20 |
| returnsflow.com | 11-Sep-12 | 11-Sep-20 |
| ridenss.com | 26-Mar-09 | 26-Mar-20 |
| roadhandler.com | 30-Apr-96 | 1-May-19 |
| roofingbysears.com | 10-Sep-11 | 10-Sep-19 |
| roomsforkidscatalog.com | 9-Dec-03 | 9-Dec-18 |
| sacfportal.com | 16-Nov-11 | 16-Nov-19 |
| sacfranchise.com | 15-Oct-09 | 15-Oct-19 |
| saerhsc.com | 28-Mar-18 | 28-Mar-20 |
| safetraxfootwear.com | 30-Dec-09 | 30-Dec-19 |
| sanfranciscoappliancecontractors.com | 14-Nov-12 | 14-Nov-20 |
| sanfranciscoappliancepros.com | 14-Nov-12 | 14-Nov-20 |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | |
|---|---|---|
| sanfranciscoappliancerepair247.com | 14-Nov-12 | 14-Nov-20 |
| sanfranciscoappliancerepairman.com | 14-Nov-12 | 14-Nov-20 |
| sanfranciscocontractorconnect.com | 14-Nov-12 | 14-Nov-20 |
| sanfranciscodoorrepair.com | 14-Nov-12 | 14-Nov-20 |
| sanfranciscohandymanpros.com | 14-Nov-12 | 14-Nov-20 |
| sanfranciscohomepaintingservices.com | 14-Nov-12 | 14-Nov-20 |
| sanfranciscohomerepaircontractors.com | 14-Nov-12 | 14-Nov-20 |
| sanfranciscohomerepairservices.com | 14-Nov-12 | 14-Nov-20 |
| sanfranciscorefrigeratorrepair.com | 14-Nov-12 | 14-Nov-20 |
| sanfranciscorepaircontractor.com | 14-Nov-12 | 14-Nov-20 |
| sanfranciscorepaircontractors.com | 14-Nov-12 | 14-Nov-20 |
| sanfranciscowasherdryerrepair.com | 14-Nov-12 | 14-Nov-20 |
| savvyflair.com | 26-Jun-09 | 26-Jun-19 |
| savvyshopconnect.com | 14-May-09 | 14-May-19 |
| savvyshoppersunite.com | 14-May-09 | 14-May-19 |
| sea.rs | 6-Nov-09 | 6-Nov-18 |
| sealscard.com | 23-Nov-12 | 23-Nov-18 |
| sear.com | 24-Aug-98 | 23-Aug-20 |
| searautocenter.com | 24-May-08 | 24-May-19 |
| searcad.com | 6-Dec-12 | 6-Dec-18 |
| searcanada.com | 29-Dec-02 | 29-Dec-18 |
| searcard.com | 7-Mar-02 | 7-Mar-19 |
| searcards.com | 7-Feb-03 | 7-Feb-19 |
| searchgrip.com | 29-Sep-10 | 29-Sep-20 |
| searcommercial.com | 23-Nov-12 | 23-Nov-18 |
| searcommercialparts.com | 23-Nov-12 | 23-Nov-18 |
| searcredit.com | 17-Jul-03 | 17-Jul-19 |
| searcreditscore.com | 6-Aug-09 | 6-Aug-19 |
| searcreditscores.com | 6-Aug-09 | 6-Aug-19 |
| searessential.com | 9-Dec-04 | 9-Dec-18 |
| searessentials.com | 9-Dec-04 | 9-Dec-18 |
| searfinancial.com | 23-Nov-12 | 23-Nov-18 |
| seargaragedoor.com | 23-Oct-07 | 23-Oct-19 |
| seargaragedoors.com | 21-Sep-07 | 21-Sep-19 |
| seargrand.com | 7-Apr-03 | 7-Apr-19 |
| searhardwarestores.com | 23-Nov-12 | 23-Nov-18 |
| searhomeimprovements.com | 8-Dec-12 | 8-Dec-18 |
| searhometownstores.com | 23-Nov-12 | 23-Nov-18 |
| searmastercardsolutions.com | 7-Dec-12 | 7-Dec-18 |
| searoulet.com | 16-Oct-12 | 16-Oct-20 |
| searoutlet.com | 27-Nov-05 | 27-Nov-19 |
| searoutletstore.com | 16-Oct-12 | 16-Oct-20 |
| searportraitstudio.com | 9-Dec-02 | 9-Dec-18 |
| sears.biz | 27-Mar-02 | 26-Mar-20 |
| sears.cleaning | 9-Jun-14 | 9-Jun-19 |

| | | |
|---|---|---|
| sears.clothing | 5-Feb-14 | 5-Feb-20 |
| sears.co.il | 16-Mar-09 | 17-Mar-19 |
| sears.co.nz | 12-Apr-11 | 11-Apr-19 |
| sears.com | 19-Feb-92 | 20-Feb-20 |
| sears.com.pl | 8-Jul-10 | 8-Jul-19 |
| sears.com.pr | 3-May-10 | 3-May-20 |
| sears.com.ro | 1-Jan-96 | 1-Jun-19 |
| sears.com.tr | 11-Apr-11 | 10-Apr-19 |
| sears.com.tw | 11-Apr-11 | 11-Apr-19 |
| sears.contractors | 10-Feb-14 | 10-Feb-19 |
| sears.coupons | 17-Aug-15 | 17-Aug-20 |
| sears.credit | 8-Jan-15 | 8-Jan-20 |
| sears.creditcard | 8-Jan-15 | 8-Jan-20 |
| sears.deals | 22-Sep-14 | 22-Sep-19 |
| sears.delivery | 3-Feb-15 | 3-Feb-20 |
| sears.discount | 19-Aug-14 | 19-Aug-19 |
| sears.do | 12-Oct-10 | 12-Oct-20 |
| sears.enterprises | 17-Feb-14 | 17-Feb-19 |
| | | |
| sears.eu | 29-Oct-06 | 29-Oct-20 |
| sears.fashion | 10-Apr-15 | 10-Apr-20 |
| sears.fi | 5-Nov-10 | 5-Nov-20 |
| sears.finance | 3-Sep-14 | 3-Sep-19 |
| sears.financial | 8-Jan-15 | 8-Jan-20 |
| sears.florist | 1-Apr-14 | 1-Apr-19 |
| sears.gifts | 4-Nov-14 | 4-Nov-19 |
| sears.gr | 10-Oct-10 | 9-Oct-20 |
| sears.holdings | 24-Jun-15 | 24-Jun-19 |
| sears.info | 31-Jul-01 | 30-Jul-20 |
| sears.je | 31-Dec-00 | 31-Dec-18 |
| sears.jobs | 15-Sep-05 | 15-Sep-19 |
| sears.kitchen | 10-Feb-14 | 10-Feb-19 |
| sears.mobi | 15-Jun-06 | 15-Jun-20 |
| sears.name | 9-Jan-02 | 15-Jan-19 |
| sears.ph | 8-Oct-10 | 7-Oct-20 |
| sears.photography | 3-Feb-14 | 3-Feb-19 |
| sears.plumbing | 5-Feb-14 | 5-Feb-20 |
| sears.pr | 11-Aug-10 | 11-Aug-19 |
| sears.ro | 1-Jan-96 | 1-Jun-19 |
| sears.services | 1-Jul-14 | 1-Jul-19 |
| sears.shoes | 24-Feb-14 | 24-Feb-19 |
| sears.support | 19-Mar-14 | 18-Mar-19 |
| sears.technology | 26-Jan-15 | 26-Jan-19 |
| sears.tienda | 27-May-14 | 27-May-19 |
| sears.tools | 8-Jan-15 | 8-Jan-19 |
| sears.tt | 19-Oct-10 | 19-Oct-21 |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 26:44:32 Exhibit A Pg 1083 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | |
|---|---|---|
| sears.tv | 4-Sep-06 | 4-Sep-20 |
| sears.us | 16-May-02 | 15-May-19 |
| sears.vacations | 19-May-14 | 19-May-19 |
| sears.website | 7-Jul-16 | 7-Jul-19 |
| sears.xn--ses554g | 5-Jan-15 | 5-Nov-19 |
| sears2go.com | 22-Sep-08 | 22-Sep-20 |
| sears88.com | 22-Nov-02 | 22-Nov-18 |
| searsabd.com | 24-Jan-07 | 24-Jan-20 |
| searsac.com | 25-Oct-02 | 25-Oct-20 |
| searsacandheating.com | 21-Sep-11 | 21-Sep-19 |
| searsacrd.com | 21-Jul-12 | 21-Jul-20 |
| searsadvantage.ca | 6-Apr-18 | 6-Apr-20 |
| searsadvantage.com | 15-Nov-12 | 15-Nov-20 |
| searsadvantage.info | 15-Nov-12 | 15-Nov-20 |
| searsairductcleaning.ca | 21-May-04 | 21-May-19 |
| searsairductcleaning.com | 31-Jul-00 | 31-Jul-19 |
| searsalliance.com | 29-May-18 | 29-May-20 |
| searsallthingsautomotive.info | 3-Apr-12 | 3-Apr-19 |
| searsallthingsautomotive.net | 3-Apr-12 | 3-Apr-19 |
| searsallthingsautomotive.org | 3-Apr-12 | 3-Apr-19 |
| searsamericandream.com | 5-Aug-03 | 5-Aug-19 |
| searsamericandreamcampaign.com | 11-Feb-03 | 11-Feb-20 |
| searsamericanhomeowner.com | 6-Apr-04 | 6-Apr-20 |
| searsandrobuck.com | 29-Dec-02 | 29-Dec-18 |
| searsapplaincerepairservice.com | 21-Jul-10 | 21-Jul-20 |
| searsappliance.com | 6-Mar-99 | 6-Mar-19 |
| sears-appliance.com | 27-Apr-09 | 27-Apr-20 |
| searsappliance.org | 18-Apr-13 | 18-Apr-19 |
| searsapplianceoutlet.com | 9-Nov-05 | 9-Nov-20 |
| searsapplianceparts.com | 26-Apr-01 | 26-Apr-19 |
| searsappliancerepair.biz | 27-Apr-09 | 26-Apr-20 |
| sears-appliance-repair.com | 24-Jun-14 | 24-Jun-19 |
| searsappliancerepair.info | 27-Apr-09 | 27-Apr-20 |
| searsappliancerepair.org | 27-Apr-09 | 27-Apr-20 |
| searsappliancerepairservice.com | 23-Jul-10 | 23-Jul-20 |
| searsappliances.ca | 6-Apr-18 | 6-Apr-20 |
| searsappliances.com | 5-Mar-99 | 5-Mar-19 |
| searsapplianceshowroom.com | 20-Apr-09 | 20-Apr-19 |
| searsapplianceshowrooms.com | 18-Mar-09 | 18-Mar-19 |
| searsapplicancerepair.com | 5-Jun-12 | 5-Jun-20 |
| searsarchives.com | 12-Apr-02 | 12-Apr-19 |
| searsarena.com | 22-Feb-06 | 22-Feb-20 |
| searsarrivelounge.biz | 11-Aug-09 | 10-Aug-19 |
| searsarrivelounge.com | 5-Jun-09 | 5-Jun-19 |
| searsarrivelounge.net | 11-Aug-09 | 11-Aug-21 |
| searsassociatefeedback.com | 24-Mar-17 | 24-Mar-19 |
| searsassoicateinterview.com | 24-Mar-17 | 24-Mar-19 |

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| | | |
|---|---|---|
| searsathome.com | 2-Dec-02 | 2-Dec-18 |
| searsatriumfeedback.com | 5-Jun-13 | 5-Jun-19 |
| searsautlet.com | 5-Feb-12 | 5-Feb-19 |
| searsauto.com | 1-Sep-99 | 1-Sep-20 |
| searsauto.info | 14-Mar-14 | 14-Mar-20 |
| searsauto.jobs | 15-Sep-05 | 15-Sep-19 |
| searsautocenter.com | 23-Jan-05 | 23-Jan-20 |
| searsautocenterfranchise.com | 8-Oct-09 | 8-Oct-19 |
| searsautocenterofdavenport.com | 22-Mar-11 | 22-Mar-19 |
| searsautocenterofeastwindsor.com | 22-Mar-11 | 22-Mar-19 |
| searsautocenterofhopewell.com | 22-Mar-11 | 22-Mar-19 |
| searsautocenteroflandsdale.com | 22-Mar-11 | 22-Mar-19 |
| searsautocenterofmiddletown.com | 22-Mar-11 | 22-Mar-19 |
| searsautocenterofpinellaspark.com | 22-Mar-11 | 22-Mar-19 |
| searsautocenterofrichmond.com | 22-Mar-11 | 22-Mar-19 |
| searsautocenteroftaylor.com | 22-Mar-11 | 22-Mar-19 |
| searsautocenterofwarren.com | 22-Mar-11 | 22-Mar-19 |
| searsautocenterofwestchicago.com | 22-Mar-11 | 22-Mar-19 |
| searsautocenterreply.com | 16-Dec-10 | 16-Dec-19 |
| searsautocenters.com | 1-Sep-99 | 1-Sep-19 |
| searsautocommercial.com | 6-Apr-10 | 6-Apr-20 |
| searsautofeedback.com | 23-Jan-13 | 23-Jan-19 |
| searsautofranchise.com | 15-Oct-09 | 15-Oct-19 |
| searsautomotive.com | 24-Jul-02 | 24-Jul-20 |
| searsautomotiveaccessories.com | 25-Oct-01 | 25-Oct-19 |
| searsautomotivecatalog.com | 17-Feb-00 | 17-Feb-19 |
| searsautomotivecenter.com | 16-Sep-05 | 16-Sep-19 |
| searsautopart.com | 23-Nov-12 | 23-Nov-18 |
| searsautoparts.com | 1-Sep-99 | 1-Sep-19 |
| searsautoreply.com | 29-Jun-11 | 29-Jun-19 |
| searsbabyregistry.com | 17-Jun-09 | 17-Jun-20 |
| searsbath.com | 7-Sep-11 | 7-Sep-20 |
| searsbathremodeling.com | 10-Sep-11 | 10-Sep-19 |
| searsbc.com | 23-Feb-09 | 23-Feb-19 |
| searsbestcustomer.com | 13-Nov-08 | 13-Nov-20 |
| searsbigandtall.com | 22-Jan-01 | 22-Jan-20 |
| searsbigswitch.com | 26-Apr-10 | 26-Apr-20 |
| searsbigtall.com | 27-Nov-02 | 27-Nov-18 |
| searsbill.com | 5-Jun-00 | 5-Jun-19 |
| searsbillionpoints.com | 1-Jun-10 | 1-Jun-20 |
| searsblackhistory.com | 9-Jan-03 | 9-Jan-19 |
| searsblinds.com | 2-Jul-13 | 2-Jul-19 |
| searsblueappliancecrew.com | 1-Dec-08 | 1-Dec-18 |
| searsbluebloggercrew.com | 3-Feb-11 | 3-Feb-19 |
| searsblueclimatecrew.com | 24-Oct-08 | 24-Oct-20 |
| searsbluecrew.com | 3-Nov-08 | 3-Nov-20 |
| searsbluecrew.tv | 23-Nov-10 | 23-Nov-20 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Domain | Date 1 | Date 2 |
|---|---|---|
| searsbluecrewcontest.ca | 23-May-18 | 23-May-20 |
| searsbluecrewcontest.com | 1-Jun-18 | 1-Jun-20 |
| searsbluecrewheadquarters.com | 13-Jan-10 | 13-Jan-20 |
| searsbluecrewhq.com | 13-Jan-10 | 13-Jan-20 |
| searsbluecrewhq.tv | 23-Nov-10 | 23-Nov-20 |
| searsbluehq.com | 13-Jan-10 | 13-Jan-20 |
| searsbluepowercrew.com | 20-Oct-08 | 20-Oct-20 |
| searsblueservice.com | 24-Mar-09 | 24-Mar-19 |
| searsblueservicecrew.com | 23-Feb-09 | 23-Feb-19 |
| searsblueservicescrew.com | 23-Feb-09 | 23-Feb-19 |
| searsbook.com | 20-Nov-06 | 20-Nov-19 |
| searsbrandcentral.com | 24-Apr-99 | 24-Apr-20 |
| searsbrandcentral.net | 17-Aug-01 | 17-Aug-19 |
| searsbrands.com | 14-Jan-03 | 14-Jan-20 |
| searsbsc.com | 23-Feb-09 | 23-Feb-19 |
| searsbusinessgiftcards.com | 20-Apr-10 | 20-Apr-20 |
| searsbuyerprotection.com | 1-May-09 | 1-May-19 |
| searscabinetrefacing.com | 10-Sep-11 | 10-Sep-19 |
| searscadr.com | 21-Jul-12 | 21-Jul-20 |
| searscal.com | 30-Oct-02 | 30-Oct-20 |
| searscallcenterjobs.net | 5-Mar-14 | 5-Mar-20 |
| searscalls.com | 14-Aug-07 | 14-Aug-20 |
| searscanadacharitablefoundation.com | 13-Jun-18 | 13-Jun-20 |
| searscanadafoundation.com | 13-Jun-18 | 13-Jun-20 |
| searscard.com | 22-Apr-99 | 22-Apr-19 |
| sears-card.com | 3-Jul-02 | 3-Jul-19 |
| searscardcomm.com | 16-Jun-16 | 16-Jun-20 |
| searscardd.com | 15-Jul-12 | 15-Jul-20 |
| searscardrewards.com | 16-Oct-06 | 20-Oct-20 |
| searscards.com | 16-Jul-03 | 16-Jul-20 |
| searscares.com | 4-Mar-09 | 4-Mar-19 |
| searscarf.com | 21-Jul-12 | 21-Jul-20 |
| searscarpet.com | 22-Jun-98 | 21-Jun-19 |
| searscarpetandairductcleaning.com | 18-Dec-03 | 18-Dec-19 |
| searscarpetandductcleaning.com | 18-Dec-03 | 18-Dec-19 |
| searscarpetandupholstery.com | 23-Oct-06 | 23-Oct-19 |
| searscarpetandupholsterycare.com | 18-Dec-03 | 18-Dec-19 |
| searscarpetandupholsterycleaning.com | 18-Dec-03 | 18-Dec-19 |
| searscarpetanduphostery.com | 18-Oct-06 | 18-Oct-20 |
| searscarpetcare.com | 19-May-00 | 19-May-19 |
| searscarpetcleaning.com | 22-Apr-99 | 22-Apr-19 |
| searscatalog.com | 3-Sep-98 | 2-Sep-19 |
| searscatalog.net | 23-Oct-08 | 23-Oct-20 |
| searscataloge.com | 16-Sep-05 | 16-Sep-19 |
| searscatalogs.com | 27-Sep-00 | 27-Sep-20 |

18-23538-shl   Doc 9507-1   Filed 02/08/19   Entered 02/08/19 26:44:31   Exhibit A
Pg 1086 of 1120

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | |
|---|---|---|
| searscatalogue.com | 2-Dec-06 | 2-Dec-18 |
| searscatalogue.net | 23-Oct-08 | 23-Oct-20 |
| searscatd.com | 15-Jul-12 | 15-Jul-20 |
| searscatlog.com | 29-Dec-02 | 29-Dec-18 |
| searscenter.com | 15-Apr-05 | 15-Apr-20 |
| searscenterarena.com | 22-Oct-06 | 22-Oct-19 |
| searscentral.com | 21-Jan-03 | 21-Jan-19 |
| searscentre.com | 31-Jan-05 | 31-Jan-20 |
| searscentrearena.com | 9-Mar-06 | 9-Mar-20 |
| searscharge.com | 29-Dec-02 | 29-Dec-19 |
| searscharities.com | 24-Jul-13 | 24-Jul-19 |
| searschefchallenge.com | 6-Apr-10 | 6-Apr-20 |
| searschicagohistory.com | 14-May-01 | 14-May-19 |
| searschoiceawards.com | 10-May-04 | 10-May-19 |
| searschoicerewards.com | 16-Jul-01 | 16-Jul-19 |
| searschoices.com | 17-Jun-10 | 17-Jun-20 |
| searsclean.ca | 6-Apr-18 | 6-Apr-20 |
| searsclean.com | 9-Feb-04 | 9-Feb-19 |
| searscleaning.com | 23-Sep-99 | 23-Sep-19 |
| searscleaningservices.com | 18-Oct-06 | 18-Oct-20 |
| searsclearance.com | 25-Jun-04 | 25-Jun-20 |
| searsclothesdryerventcleaning.com | 18-Oct-06 | 18-Oct-20 |
| searsclothing.ca | 6-Apr-18 | 6-Apr-20 |
| searsclothing.com | 22-Apr-99 | 22-Apr-20 |
| searsclub.com | 13-Jun-18 | 13-Jun-20 |
| searscollector.com | 29-Jun-11 | 29-Jun-19 |
| searscollege.com | 26-Jun-06 | 26-Jun-20 |
| searscom.com | 30-Nov-00 | 30-Nov-18 |
| searscomfort.com | 8-Jun-10 | 8-Jun-20 |
| searscommerceservices.com | 21-Feb-12 | 21-Feb-20 |
| searscommercial.com | 28-Sep-04 | 28-Sep-19 |
| searscommercialfitness.com | 15-Feb-10 | 15-Feb-20 |
| searscommercialfootwear.com | 30-Dec-09 | 30-Dec-19 |
| searscommercialmarketplace.com | 30-Oct-09 | 30-Oct-19 |
| searscommercialpart.com | 23-Nov-12 | 23-Nov-18 |
| searscommercialparts.com | 14-Apr-08 | 14-Apr-20 |
| searscommercialpro.com | 14-Apr-11 | 14-Apr-19 |
| searscommercials.com | 23-Nov-12 | 23-Nov-18 |
| searscommercialweatherization.com | 7-Oct-09 | 7-Oct-19 |
| searscomplaints.biz | 2-Mar-09 | 1-Mar-20 |
| searscomplaints.com | 2-Mar-09 | 2-Mar-20 |
| searscomplaints.info | 2-Mar-09 | 2-Mar-20 |
| searscomplaints.net | 2-Mar-09 | 2-Mar-20 |
| searscomplaints.org | 2-Mar-09 | 2-Mar-20 |
| searscomplaints.us | 2-Mar-09 | 1-Mar-20 |
| searsconcierge.ca | 18-Apr-18 | 18-Apr-20 |
| searsconnect.com | 5-May-00 | 5-May-20 |

18-23538-shl   Doc 9257   Filed 02/06/19   Entered 02/06/19 16:44:32   Exhibit A
Pg 1087 of 1120

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | |
|---|---|---|
| searsconnectlongdistance.com | 24-Jul-03 | 24-Jul-19 |
| searsconnectwireless.com | 24-Jul-03 | 24-Jul-19 |
| searscontractor.com | 4-Jun-07 | 4-Jun-19 |
| searscontractors.com | 4-Jun-07 | 4-Jun-19 |
| searscontractsales.com | 17-Jul-04 | 17-Jul-19 |
| searscontrelecancer.ca | 6-Apr-18 | 6-Apr-20 |
| searscore.com | 16-Jan-13 | 16-Jan-19 |
| searscorp.com | 27-Oct-04 | 27-Oct-19 |
| searscorporatecard.com | 2-Sep-16 | 2-Sep-20 |
| searscorporategiftcards.com | 27-Oct-10 | 27-Oct-20 |
| searscoupon.com | 9-Jul-08 | 9-Jul-20 |
| searscrditcard.com | 6-Dec-12 | 6-Dec-18 |
| searscrditscore.com | 16-Jan-13 | 16-Jan-19 |
| searscredit.com | 12-Apr-00 | 12-Apr-20 |
| sears-credit.com | 17-Jul-03 | 17-Jul-19 |
| searscreditcard.com | 14-Nov-02 | 14-Nov-19 |
| searscreditcard.info | 21-Jul-08 | 20-Jul-19 |
| searscreditcard-online.com | 19-May-16 | 19-May-20 |
| searscreditcenter.com | 5-Sep-08 | 5-Sep-20 |
| searscreditreport.com | 16-Jan-13 | 16-Jan-19 |
| searscreditscore.com | 6-Aug-09 | 6-Aug-19 |
| searscreditscore.net | 6-Aug-09 | 6-Aug-19 |
| searscreditscore.org | 6-Aug-09 | 6-Aug-19 |
| searscreditscores.com | 6-Aug-09 | 6-Aug-19 |
| searscreditscores.net | 6-Aug-09 | 6-Aug-19 |
| searscreditscores.org | 6-Aug-09 | 6-Aug-19 |
| searscrushmystyle.com | 31-Mar-10 | 31-Mar-20 |
| searscrushurstyle.com | 10-May-10 | 10-May-20 |
| searscrushyourstyle.com | 6-May-10 | 6-May-20 |
| searscustomcabinetrefacing.com | 10-Sep-11 | 10-Sep-19 |
| searscustomkitchenremodeling.com | 10-Sep-11 | 10-Sep-19 |
| searscustommeasuredwindows.com | 10-Sep-11 | 10-Sep-19 |
| searscustomwindowcoverings.ca | 6-Apr-18 | 6-Apr-20 |
| searsdealer.com | 9-Sep-04 | 9-Sep-20 |
| searsdealerflyer.com | 1-Sep-06 | 1-Sep-19 |
| searsdealers.com | 28-May-02 | 28-May-20 |
| searsdealerstores.biz | 16-Nov-01 | 18-Nov-20 |
| searsdealerstores.com | 10-Feb-99 | 10-Feb-19 |
| searsdecking.ca | 6-Apr-18 | 6-Apr-20 |
| searsdecking.com | 6-Apr-18 | 6-Apr-20 |
| searsdelivery.ca | 6-Apr-18 | 6-Apr-20 |
| sears-delivery.com | 23-Apr-13 | 23-Apr-19 |
| sears-delivery-api.com | 24-Oct-12 | 24-Oct-20 |
| searsdental.com | 18-Jun-01 | 18-Jun-20 |
| searsdental.mobi | 26-Sep-06 | 26-Sep-20 |
| searsdentalcenter.com | 29-May-09 | 29-May-20 |
| searsdepartmentstore.com | 9-Jan-02 | 9-Jan-20 |

18-23538-shl   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 1088 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | |
|---|---|---|
| searsdeptstore.com | 6-Aug-08 | 6-Aug-20 |
| searsdeviceprotection.com | 11-Dec-14 | 11-Dec-18 |
| searsdiehard.com | 18-Jun-99 | 18-Jun-20 |
| searsdigital.com | 11-Oct-01 | 11-Oct-19 |
| searsdigitalad.com | 21-Apr-11 | 21-Apr-19 |
| searsdirect.com | 29-Nov-02 | 29-Nov-18 |
| searsdiscounttiresandautosupplies.com | 30-Oct-09 | 30-Oct-19 |
| searsdiy.com | 10-Jan-12 | 10-Jan-20 |
| searsdoordesigner.com | 16-Mar-09 | 16-Mar-19 |
| searsdoors.com | 6-Feb-13 | 6-Feb-19 |
| searsdrivingschool.com | 30-Sep-98 | 29-Sep-19 |
| sears-drivingschool.com | 4-Mar-98 | 3-Mar-19 |
| searsdrivingschools.com | 5-Jan-00 | 5-Jan-19 |
| searsdrivingschools.mobi | 26-Sep-06 | 26-Sep-20 |
| searsdryerventcleaning.com | 18-Oct-06 | 18-Oct-20 |
| searsduct.com | 28-Mar-17 | 28-Mar-19 |
| searsductcleaning.ca | 21-May-04 | 21-May-19 |
| searsductcleaning.com | 25-Apr-02 | 25-Apr-20 |
| searseasypay.com | 17-Jun-10 | 17-Jun-20 |
| sears-eco.com | 8-Jun-10 | 8-Jun-20 |
| searsecommercejobs.com | 10-Jul-13 | 10-Jul-19 |
| searsecuador.com | 22-Feb-99 | 22-Feb-19 |
| searsefficientwindows.com | 10-Sep-11 | 10-Sep-19 |
| searselectronics.ca | 6-Apr-18 | 6-Apr-20 |
| searselectronics.com | 31-Jul-07 | 31-Jul-19 |
| searselements.com | 21-Jan-03 | 21-Jan-19 |
| searsenespanol.com | 2-Jul-02 | 2-Jul-19 |
| searsentryandstormdoors.com | 10-Sep-11 | 10-Sep-19 |
| searsentrydoors.com | 10-Sep-11 | 10-Sep-19 |
| sears-eparts.com | 28-Mar-00 | 28-Mar-19 |
| searsepersonaltraining.com | 4-Jan-11 | 4-Jan-19 |
| searservices.com | 21-Feb-12 | 21-Feb-20 |
| searsessential.com | 9-Dec-04 | 9-Dec-18 |
| searsessentials.com | 9-Dec-04 | 9-Dec-18 |
| searsessentialstogo.com | 17-Jun-05 | 17-Jun-19 |
| searseveryday.com | 17-Sep-04 | 17-Sep-20 |
| searsexpress.com | 21-Jan-03 | 21-Jan-19 |
| searsextremeproducts.com | 5-Jul-06 | 5-Jul-20 |
| searseyecare.com | 20-Feb-08 | 20-Feb-19 |
| searsfacescancer.ca | 6-Apr-18 | 6-Apr-20 |
| searsfacescancer.com | 6-Apr-18 | 6-Apr-20 |
| searsfacingcancer.ca | 6-Apr-18 | 6-Apr-20 |
| searsfamilycentral.com | 21-Jan-03 | 21-Jan-19 |
| searsfashionoutlet.com | 2-Mar-10 | 2-Mar-20 |
| searsfashions.com | 20-Jun-11 | 20-Jun-19 |
| searsfcraclassaction.com | 7-Feb-13 | 7-Feb-20 |

18-23538-rdd    Doc 2507    Filed 02/08/19    Entered 02/08/19 16:44:31    Exhibit A
Pg 1089 of 1450

| | | |
|---|---|---|
| searsfeedback.com | 28-Aug-06 | 28-Aug-20 |
| sears-feedback.com | 30-Jul-11 | 30-Jul-19 |
| searsfeedback-help.com | 13-Jun-08 | 13-Jun-20 |
| searsfinancial.ca | 24-Feb-10 | 24-Feb-20 |
| searsfinancial.com | 1-Dec-00 | 1-Dec-18 |
| searsfinancialservices.com | 13-Jun-18 | 13-Jun-20 |
| searsfinejewelryrepair.com | 27-May-11 | 27-May-19 |
| searsfitclub.com | 24-Mar-10 | 24-Mar-20 |
| searsfitnessexperience.com | 11-May-10 | 11-May-20 |
| searsfloor.com | 13-Jun-18 | 13-Jun-20 |
| searsfloorcare.com | 19-May-00 | 19-May-19 |
| searsflooring.com | 13-Jun-18 | 13-Jun-20 |
| searsfloors.ca | 25-Apr-18 | 25-Apr-20 |
| searsflowers.com | 4-Aug-98 | 3-Aug-19 |
| searsfootball09.com | 7-Aug-09 | 7-Aug-19 |
| searsfootballchallenge.com | 13-Aug-07 | 13-Aug-19 |
| searsfootballexperience.com | 7-Aug-09 | 7-Aug-19 |
| searsfootballtour.com | 7-Aug-09 | 7-Aug-19 |
| searsfoundation.com | 13-Jun-18 | 13-Jun-20 |
| searsfranchise.com | 3-Apr-08 | 3-Apr-20 |
| searsfranchisebusiness.com | 20-Aug-08 | 20-Aug-20 |
| searsfranchises.com | 26-May-08 | 26-May-19 |
| searsfranchising.com | 20-Aug-08 | 20-Aug-20 |
| sears-games.com | 28-Apr-06 | 28-Apr-20 |
| searsgarage.com | 4-Oct-09 | 4-Oct-19 |
| searsgaragedoor.com | 23-Apr-07 | 23-Apr-19 |
| sears-garagedoor.com | 24-Mar-11 | 24-Mar-19 |
| searsgaragedoordesigner.com | 16-Mar-09 | 16-Mar-19 |
| searsgaragedoorinstallation.com | 29-Dec-05 | 29-Dec-18 |
| searsgaragedooropener.com | 23-Apr-07 | 23-Apr-19 |
| searsgaragedooropeners.com | 29-Dec-05 | 29-Dec-18 |
| searsgaragedoorrepair.com | 29-Dec-05 | 29-Dec-18 |
| sears-garagedoor-repairs.com | 24-Mar-11 | 24-Mar-19 |
| searsgaragedoors.com | 29-Dec-05 | 29-Dec-18 |
| sears-garagedoors.com | 24-Mar-11 | 24-Mar-19 |
| searsgaragedoors.net | 18-Apr-08 | 18-Apr-19 |
| searsgaragedoorsandmore.com | 29-Dec-05 | 29-Dec-18 |
| searsgaragedoorservice.com | 29-Dec-05 | 29-Dec-18 |
| searsgarages.com | 9-Sep-10 | 9-Sep-20 |
| searsgardencenter.com | 30-Mar-00 | 30-Mar-19 |
| searsgargedoors.com | 23-Nov-12 | 23-Nov-18 |
| searsgiftcard.com | 20-Mar-00 | 20-Mar-20 |
| searsgiftcard.net | 17-May-01 | 17-May-19 |
| searsgiftregistry.com | 13-Aug-03 | 13-Aug-20 |
| searsgifts.com | 16-Nov-01 | 16-Nov-19 |
| searsglobalsourcing.com | 4-Apr-14 | 4-Apr-20 |
| searsglobaltech.com | 17-Nov-11 | 17-Nov-19 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-shl   Doc 2507   Filed 02/06/19   Entered 02/06/19 26:44:31   Exhibit A
Pg 1090 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | |
|---|---|---|
| searsglobaltechnology.com | 17-Nov-11 | 17-Nov-19 |
| searsgnn.com | 12-Jan-09 | 12-Jan-19 |
| searsgold.com | 2-Dec-02 | 2-Dec-19 |
| searsgoodlifegreatprice.com | 29-Apr-03 | 29-Apr-19 |
| searsgrand.com | 21-Jan-03 | 21-Jan-19 |
| searsgrand.net | 7-Apr-03 | 7-Apr-19 |
| searsgrand.org | 7-Apr-03 | 7-Apr-19 |
| searsgrande.com | 7-Apr-03 | 7-Apr-19 |
| searsgreatindoors.com | 16-Sep-05 | 16-Sep-19 |
| searsgreatkitchens.com | 7-Jan-00 | 7-Jan-20 |
| searshandyhelper.com | 5-Dec-12 | 5-Dec-18 |
| searshandyman.com | 29-Jun-11 | 29-Jun-20 |
| searshandymanexperts.com | 5-Dec-12 | 5-Dec-18 |
| searshandymansolutions.com | 5-Dec-12 | 5-Dec-18 |
| searshardware.com | 15-May-00 | 15-May-19 |
| searshardware.net | 5-May-98 | 4-May-19 |
| searshardware.org | 5-May-98 | 4-May-19 |
| searshardwarefeedback.com | 30-Mar-09 | 30-Mar-20 |
| searshardwarestore.com | 23-Nov-12 | 23-Nov-18 |
| searshardwarestores.com | 20-Jan-10 | 20-Jan-20 |
| searshardwoodfloorcleaning.com | 26-Oct-11 | 26-Oct-20 |
| searshas.com | 10-Sep-09 | 10-Sep-19 |
| searshasparts.com | 10-Jan-12 | 10-Jan-20 |
| searshc.ai | 16-Jul-18 | 16-Jul-20 |
| searshc.co.il | 28-Apr-09 | 28-Apr-19 |
| searshc.com | 17-Feb-05 | 17-Feb-19 |
| searshc.net | 17-Feb-05 | 17-Feb-19 |
| searshc-il.com | 27-Apr-09 | 27-Apr-19 |
| searsheadquarters.com | 7-Mar-08 | 7-Mar-19 |
| searshealthandwellness.com | 11-Dec-01 | 11-Dec-19 |
| searshearing.com | 16-Jul-02 | 16-Jul-20 |
| searshearing.mobi | 26-Sep-06 | 26-Sep-20 |
| searsheating.ca | 6-Apr-18 | 6-Apr-20 |
| searsheatingandac.com | 10-Sep-11 | 10-Sep-19 |
| searsheatingandair.com | 21-Mar-01 | 21-Mar-20 |
| searsheatingandairconditioning.com | 21-Mar-01 | 21-Mar-20 |
| searsheatingandcooling.ca | 6-Apr-18 | 6-Apr-20 |
| searsheatingandcooling.com | 21-Mar-01 | 21-Mar-20 |
| searsheatingandcoolingexperts.com | 10-Sep-11 | 10-Sep-19 |
| searsheatingandcoolingrepair.com | 21-Sep-11 | 21-Sep-19 |
| searsheatingandcoolingservice.com | 10-Sep-11 | 10-Sep-19 |
| searsheating-coolingatlanta.com | 18-Jan-11 | 18-Jan-19 |
| searsheating-coolingbaltimore.com | 18-Jan-11 | 18-Jan-19 |
| searsheating-coolingchicago.com | 20-Jun-13 | 20-Jun-19 |
| searsheating-coolingdallas.com | 20-Jan-11 | 20-Jan-19 |
| searsheating-coolinghouston.com | 18-Jan-11 | 18-Jan-19 |
| searsheating-coolingnj.com | 27-Jan-11 | 27-Jan-19 |

18-23538-shl Doc 2507-1 Filed 02/06/19 Entered 02/06/19 26:44:32 Exhibit A
Pg 1091 of 1450

| | | |
|---|---|---|
| searsheating-coolingrichmond.com | 20-Jun-13 | 20-Jun-19 |
| searsheating-coolingsacramento.com | 20-Jun-13 | 20-Jun-19 |
| searshld.com | 22-Mar-05 | 22-Mar-20 |
| searsho.com | 31-Jul-12 | 31-Jul-20 |
| sears-holding.com | 5-Sep-11 | 5-Sep-19 |
| searsholdingcorporation.com | 15-Apr-08 | 15-Apr-19 |
| searsholdingllc.com | 18-Jul-12 | 18-Jul-19 |
| searsholdings.co.il | 25-Mar-09 | 25-Mar-19 |
| sears-holdings.co.il | 25-Mar-09 | 25-Mar-19 |
| searsholdings.com | 17-Nov-04 | 17-Nov-19 |
| searsholdings.in | 4-Sep-09 | 4-Sep-19 |
| searsholdings.jobs | 15-Sep-05 | 15-Sep-19 |
| searsholdingsalumni.com | 22-Jun-09 | 22-Jun-19 |
| searsholdingsarchives.com | 22-Jun-07 | 22-Jun-17 |
| searsholdingsindia.co.in | 30-Jan-17 | 30-Jan-19 |
| searsholdingsindia.com | 4-Sep-09 | 4-Sep-19 |
| searsholdingsindia.in | 30-Jan-17 | 30-Jan-19 |
| searsholdingsisrael.com | 16-Mar-09 | 16-Mar-19 |
| searsholiday.com | 7-Jul-06 | 7-Jul-20 |
| searshome.com | 6-Feb-99 | 6-Feb-19 |
| searshome101.com | 6-Apr-04 | 6-Apr-20 |
| searshomeandlife.com | 30-Aug-18 | 30-Aug-20 |
| searshomeappliancecenter.com | 2-Apr-09 | 2-Apr-19 |
| searshomeapplianceshowroom.com | 2-Apr-09 | 2-Apr-19 |
| searshomeapplianceshowrooms.com | 23-Apr-09 | 23-Apr-19 |
| searshomeappplianceshowrooms.com | 20-Jan-16 | 20-Jan-20 |
| searshomecenter.com | 2-Nov-98 | 1-Nov-19 |
| sears-homecenter.com | 2-Nov-98 | 1-Nov-19 |
| searshomecentral.com | 23-Jul-97 | 22-Jul-20 |
| searshomecentral.net | 5-May-98 | 4-May-19 |
| searshomecentral.org | 5-May-98 | 4-May-19 |
| searshomecentralheatingandairconditioning.com | 21-Mar-01 | 21-Mar-20 |
| searshomecentralheatingandcooling.com | 21-Mar-01 | 21-Mar-20 |
| searshomecentralhvac.com | 21-Mar-01 | 21-Mar-20 |
| searshomeconnect.com | 14-Jun-99 | 14-Jun-20 |
| searshomeconnection.com | 23-Mar-00 | 23-Mar-20 |
| searshomefurniture.com | 8-Jun-09 | 8-Jun-20 |
| searshomehealthcare.com | 16-Sep-99 | 16-Sep-20 |
| searshomeimprovements.ca | 18-Apr-18 | 18-Apr-20 |
| searshomemaintenance.com | 6-Apr-04 | 6-Apr-20 |
| searshomemaintenancesolutions.com | 5-Dec-12 | 5-Dec-18 |
| searshomerepair.com | 29-Jun-04 | 29-Jun-20 |
| searshomerepair101.com | 6-Apr-04 | 6-Apr-20 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-shl Doc 9507 Filed 02/08/21 Entered 02/08/21 16:44:31 Exhibit A
Pg 004 of 1120

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | |
|---|---|---|
| searshomes.com | 8-Apr-09 | 8-Apr-19 |
| searshomesecurity.ca | 6-Apr-18 | 6-Apr-20 |
| searshomeservice.com | 21-Jun-00 | 21-Jun-20 |
| searshomeservicehomewarranty.com | 3-Jun-14 | 3-Jun-20 |
| searshomeservices.com | 16-Jun-06 | 16-Jun-20 |
| sears-home-services.com | 11-Jul-11 | 11-Jul-19 |
| searshomeservices.io | 12-Mar-15 | 12-Mar-20 |
| searshomeservicesbathrooms.com | 1-Nov-11 | 1-Nov-19 |
| searshomeservicescabinets.com | 1-Nov-11 | 1-Nov-19 |
| searshomeservicescountertops.com | 1-Nov-11 | 1-Nov-19 |
| searshomeservicesdoors.com | 1-Nov-11 | 1-Nov-19 |
| searshomeservicesflooring.com | 10-Sep-11 | 10-Sep-19 |
| searshomeservicesheatingandcooling.com | 1-Nov-11 | 1-Nov-19 |
| searshomeserviceshomewarranty.com | 5-May-14 | 5-May-20 |
| searshomeserviceskitchens.com | 1-Nov-11 | 1-Nov-19 |
| searshomeserviceswindows.com | 10-Sep-11 | 10-Sep-19 |
| searshometownandoutlet.com | 6-Jun-12 | 6-Jun-20 |
| searshometownfeedback.com | 30-Mar-09 | 30-Mar-20 |
| searshometownstore.com | 8-Jun-10 | 8-Jun-20 |
| searshometownstores.com | 1-Dec-08 | 1-Dec-18 |
| searshomewarranty.com | 27-Apr-11 | 27-Apr-19 |
| searshomewarrantyplan.com | 14-May-14 | 14-May-20 |
| searshopyourwayreward.com | 7-Aug-09 | 7-Aug-19 |
| searshousekeeping.com | 26-Sep-13 | 26-Sep-19 |
| searshts.com | 10-Sep-09 | 10-Sep-19 |
| searshvac.ca | 6-Apr-18 | 6-Apr-20 |
| searshvac.com | 5-Jun-00 | 5-Jun-19 |
| searshvac.org | 5-Jun-00 | 5-Jun-19 |
| searshwp.com | 10-Jun-04 | 10-Jun-20 |
| searsimprovements.com | 12-Mar-12 | 12-Mar-20 |
| searsindia.co.in | 18-Jan-16 | 18-Jan-20 |
| searsinsulatedgaragedoor.com | 29-Dec-05 | 29-Dec-18 |
| searsinsuranceservices.com | 28-Sep-05 | 28-Sep-19 |
| searsintranet.com | 23-Jun-07 | 23-Jun-19 |
| searsinvestments.com | 12-Jan-12 | 12-Jan-19 |
| searsipmanagement.com | 14-Jan-03 | 14-Jan-20 |
| searsir.com | 29-Jan-13 | 29-Jan-19 |
| searsisrael.com | 16-Mar-09 | 16-Mar-19 |
| sears-israel.com | 16-Mar-09 | 16-Mar-19 |
| searsjewelry.com | 17-Feb-00 | 17-Feb-19 |
| searsjewelryandwatchrepair.com | 27-May-11 | 27-May-19 |
| searsjewelrycare.com | 27-May-11 | 27-May-19 |
| searsjewelrycareplan.com | 27-May-11 | 27-May-19 |
| searsjewelryrepair.com | 27-May-11 | 27-May-19 |
| searskenmore.com | 28-Aug-03 | 28-Aug-20 |

18-23538-shl   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 26:44:32   Exhibit A
Pg 1093 of 1150

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | |
|---|---|---|
| searskidroom.com | 2-Mar-06 | 2-Mar-20 |
| searskids.com | 24-Nov-02 | 24-Nov-18 |
| searskidsroom.com | 17-Nov-02 | 17-Nov-20 |
| searskitchenremodeling.com | 10-Sep-11 | 10-Sep-19 |
| sears-kmartbeca.com | 9-Sep-09 | 9-Sep-19 |
| sears-kmart-beca.com | 9-Sep-09 | 9-Sep-19 |
| sears-kmartscholarship.com | 9-Sep-09 | 9-Sep-19 |
| sears-kmart-scholarship.com | 9-Sep-09 | 9-Sep-19 |
| searslab.com | 13-Sep-02 | 13-Sep-20 |
| searslab1.com | 9-Jun-14 | 9-Jun-20 |
| searslabs.com | 16-May-00 | 16-May-20 |
| searslandsend.com | 19-Jan-08 | 19-Jan-19 |
| searslayaway.com | 16-Sep-10 | 16-Sep-19 |
| searsleatherconnection.com | 22-Jan-01 | 22-Jan-19 |
| searslink2life.com | 26-Oct-11 | 26-Oct-20 |
| searslink2life.net | 26-Oct-11 | 26-Oct-20 |
| searslink2life.org | 26-Oct-11 | 26-Oct-20 |
| searslinktolife.com | 26-Oct-11 | 26-Oct-20 |
| sears-link-to-life.com | 26-Oct-11 | 26-Oct-20 |
| searslinktolife.net | 26-Oct-11 | 26-Oct-20 |
| sears-link-to-life.net | 26-Oct-11 | 26-Oct-20 |
| searslinktolife.org | 26-Oct-11 | 26-Oct-20 |
| sears-link-to-life.org | 26-Oct-11 | 26-Oct-20 |
| searslocal.com | 22-Feb-12 | 22-Feb-20 |
| searslocalad.com | 21-Apr-11 | 21-Apr-19 |
| searslock.com | 3-Oct-13 | 3-Oct-19 |
| searsloyaltyrewards.ca | 6-Apr-18 | 6-Apr-20 |
| searsmaid.com | 26-Sep-13 | 26-Sep-19 |
| searsmaids.com | 10-Dec-13 | 10-Dec-19 |
| searsmaidservice.com | 26-Sep-13 | 26-Sep-19 |
| searsmaidservices.com | 26-Sep-13 | 26-Sep-19 |
| searsmaidsolutions.com | 26-Sep-13 | 26-Sep-19 |
| searsmanagemyaccount.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemyantiques.com | 20-Jul-06 | 20-Jul-19 |
| searsmanagemyattic.com | 20-Jul-06 | 20-Jul-19 |
| searsmanagemyauto.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemybasement.com | 20-Jul-06 | 20-Jul-19 |
| searsmanagemybathroom.com | 20-Jul-06 | 20-Jul-19 |
| searsmanagemybedrooms.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemycalendar.com | 22-Aug-06 | 22-Aug-19 |
| searsmanagemycar.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemychildren.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemychristmas.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemycloset.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemydonations.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemyexerciseroom.com | 20-Jul-06 | 20-Jul-19 |
| searsmanagemyfinances.com | 20-Jul-06 | 20-Jul-19 |

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 1094 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | |
|---|---|---|
| searsmanagemyfitnessroom.com | 20-Jul-06 | 20-Jul-19 |
| searsmanagemyfuneral.com | 21-Jul-06 | 21-Jul-20 |
| searsmanagemygameroom.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemygarden.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemygiftcards.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemygiftgiving.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemyhobby.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemyholidays.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemyhome.com | 8-Aug-06 | 5-Apr-19 |
| searsmanagemyhomeservices.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemyhometheater.com | 20-Jul-06 | 20-Jul-19 |
| searsmanagemyhvac.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemyjewelry.com | 20-Jul-06 | 20-Jul-19 |
| searsmanagemylawn.com | 20-Jul-06 | 20-Jul-20 |
| | | |
| searsmanagemymedicinecabinet.com | 20-Jul-06 | 20-Jul-19 |
| searsmanagemymoney.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemymusic.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemyownersmanuals.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemypantry.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemyparents.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemypool.com | 22-Aug-06 | 22-Aug-19 |
| searsmanagemyprescriptions.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemyride.com | 7-Aug-07 | 7-Aug-19 |
| searsmanagemyscreeningroom.com | 20-Jul-06 | 20-Jul-19 |
| searsmanagemystorage.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemysummer.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemytaxdocs.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemyvacation.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemyvaluables.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemyvehicle.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemywardrobe.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemywarranties.com | 20-Jul-06 | 20-Jul-20 |
| searsmanagemywedding.com | 21-Jul-06 | 21-Jul-20 |
| searsmangemyelectronics.com | 20-Jul-06 | 20-Jul-20 |
| searsmarketplace.com | 25-Jul-07 | 25-Jul-19 |
| searsmartchoice.com | 15-Aug-02 | 15-Aug-20 |
| searsmastecard.com | 6-Dec-12 | 6-Dec-18 |
| searsmastercad.com | 7-Dec-12 | 7-Dec-18 |
| searsmastercar.com | 6-Dec-12 | 6-Dec-18 |
| searsmastercard.com | 22-May-00 | 22-May-20 |
| searsmastercardsolution.com | 6-Dec-12 | 6-Dec-18 |
| searsmastercreditcard.com | 6-Dec-12 | 6-Dec-18 |
| searsmastersolutioncard.com | 6-Dec-12 | 6-Dec-18 |
| searsmedia.com | 2-Sep-03 | 2-Sep-20 |
| sears-mobile.com | 30-Apr-14 | 30-Apr-20 |
| searsmobile.net | 8-Feb-16 | 8-Feb-20 |

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 25:44:32   Exhibit A
Pg 1095 of 1120

FILED DATE: 5/19/2021 1:27 PM     2020L012403

| | | |
|---|---|---|
| searsmodernhomes.com | 11-Sep-00 | 11-Sep-20 |
| searsmoney.com | 1-Dec-00 | 1-Dec-18 |
| searsmortgages.com | 6-Apr-18 | 6-Apr-20 |
| searsmovers.com | 31-Aug-10 | 31-Aug-20 |
| searsmyhome.com | 11-Jul-06 | 11-Jul-20 |
| searsmyrate.com | 17-Feb-03 | 17-Feb-19 |
| searsmyreward.com | 12-Nov-08 | 12-Nov-20 |
| searsmyrewards.com | 12-Nov-08 | 12-Nov-20 |
| searsmyway.com | 16-Jan-09 | 16-Jan-19 |
| searsnationalbank.com | 28-Oct-01 | 28-Oct-19 |
| searsnewsroom.com | 1-Nov-04 | 1-Nov-19 |
| searsnext.com | 21-Jan-03 | 21-Jan-19 |
| searsnextra.com | 21-Jan-03 | 21-Jan-19 |
| searsoflittleton.com | 28-Mar-13 | 28-Mar-19 |
| searsolutionmaster.com | 7-Dec-12 | 7-Dec-18 |
| searsolutionscreditcard.com | 6-Dec-12 | 6-Dec-18 |
| searsolutionsmaster.com | 7-Dec-12 | 7-Dec-18 |
| searsolutionsmastercards.com | 6-Dec-12 | 6-Dec-18 |
| searsolutionsmc.com | 7-Dec-12 | 7-Dec-18 |
| searsopitical.com | 23-Nov-12 | 23-Nov-18 |
| searsoptical.biz | 5-Oct-01 | 6-Nov-20 |
| sears-optical.biz | 5-Oct-01 | 6-Nov-20 |
| searsoptical.com | 30-May-96 | 29-May-19 |
| searsoptical.info | 11-Sep-01 | 11-Sep-19 |
| sears-optical.info | 12-Sep-01 | 12-Sep-19 |
| searsoptical.mobi | 26-Sep-06 | 26-Sep-20 |
| searsoptical.net | 3-Mar-03 | 3-Mar-19 |
| searsoptical.org | 3-Mar-03 | 3-Mar-19 |
| searsoptical.ws | 20-Jul-07 | 20-Jul-19 |
| searsoptical50thanniversarysweeps.com | 8-Mar-11 | 8-Mar-19 |
| searsopticalcontacts.com | 3-May-05 | 3-May-19 |
| searsorientalrugs.com | 15-Nov-13 | 15-Nov-19 |
| searsoulet.ca | 30-May-18 | 30-May-20 |
| searsoultlet.com | 16-Oct-12 | 16-Oct-20 |
| searsoutdoorliving.com | 16-May-12 | 16-May-19 |
| searsoutdoorstyle.com | 9-May-12 | 9-May-20 |
| searsoutlat.com | 16-Oct-12 | 16-Oct-20 |
| searsoutleat.com | 16-Oct-12 | 16-Oct-20 |
| searsoutles.com | 16-Oct-12 | 16-Oct-20 |
| searsoutlest.com | 16-Oct-12 | 16-Oct-20 |
| searsoutlet.com | 28-Feb-04 | 28-Feb-19 |
| searsoutlet.org | 22-Jan-09 | 22-Jan-19 |
| searsoutlet.us | 12-Jun-09 | 11-Jun-19 |
| searsoutletcenter.com | 7-Feb-11 | 7-Feb-19 |
| searsoutlet-delivery.com | 4-Oct-12 | 4-Oct-20 |
| searsoutletfeedback.com | 30-Mar-09 | 30-Mar-20 |

18-23538-shl Doc 9507 Filed 03/20/21 Entered 03/20/21 16:44:31 Exhibit A
Pg 1096 of 1120

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | |
|---|---|---|
| searsoutletflyer.com | 28-Jan-09 | 28-Jan-19 |
| searsoutletonline.com | 10-Mar-11 | 10-Mar-19 |
| searsoutletonline.net | 10-Mar-11 | 10-Mar-19 |
| searsoutlets.com | 18-Oct-03 | 18-Oct-20 |
| searsoutlets.net | 1-Dec-08 | 1-Dec-18 |
| searsoutlets.org | 3-Dec-08 | 3-Dec-18 |
| searsoutletstore.com | 3-Oct-03 | 3-Oct-20 |
| searsoutliet.com | 16-Oct-12 | 16-Oct-20 |
| searsoutlite.com | 16-Oct-12 | 16-Oct-20 |
| searsoutloet.com | 16-Oct-12 | 16-Oct-20 |
| searsoverheadgaragedoor.com | 29-Dec-05 | 29-Dec-18 |
| searsownershipopportunities.com | 15-Aug-11 | 15-Aug-19 |
| searspartesdirect.com | 23-Nov-12 | 23-Nov-18 |
| searspartner.com | 15-Aug-11 | 15-Aug-19 |
| searspartnershipadvantage.com | 16-Mar-01 | 16-Mar-20 |
| searsparts.com | 22-Apr-99 | 22-Apr-19 |
| sears-parts.com | 10-Jun-02 | 10-Jun-19 |
| searsparts.net | 11-Sep-07 | 11-Sep-19 |
| searspartsderect.com | 23-Nov-12 | 23-Nov-18 |
| searspartsdirecgt.com | 28-Mar-18 | 28-Mar-20 |
| searspartsdirecr.com | 23-Nov-12 | 23-Nov-18 |
| searspartsdirect.com | 13-Oct-98 | 12-Oct-19 |
| searspartsdirect.net | 11-Sep-07 | 11-Sep-19 |
| searspartsdirectapis.com | 27-Dec-12 | 27-Dec-18 |
| searspartsfeedback.com | 28-Apr-14 | 28-Apr-20 |
| searspartsguru.com | 21-Nov-11 | 21-Nov-19 |
| sears-parts-online.com | 13-Jan-10 | 13-Jan-20 |
| searspartssite.com | 28-Feb-09 | 29-Feb-20 |
| searspatternlibrary.com | 8-Sep-14 | 8-Sep-20 |
| searspersonalized.com | 1-Aug-08 | 1-Aug-20 |
| searspersonaloccasions.com | 3-Aug-01 | 3-Aug-20 |
| searspersonalshopper.com | 31-Jan-11 | 31-Jan-19 |
| searspersonaltraining.com | 4-Jan-11 | 4-Jan-19 |
| searspetboutique.com | 29-May-14 | 29-May-20 |
| searsphoto.com | 1-Feb-00 | 1-Feb-19 |
| sears-photo.com | 11-Jun-02 | 11-Jun-19 |
| searsphotos.com | 8-Mar-00 | 8-Mar-19 |
| sears-photos.com | 24-Sep-14 | 24-Sep-20 |
| searsphotos.mobi | 26-Sep-06 | 26-Sep-22 |
| searsphotos.net | 8-Mar-00 | 8-Mar-20 |
| searsphotosandmemories.com | 13-Jun-18 | 13-Jun-20 |
| searsplacemyclaim.com | 20-Oct-16 | 20-Oct-20 |
| searsplus.com | 21-Jan-03 | 21-Jan-19 |
| searspoints.com | 28-Jun-10 | 28-Jun-20 |
| searsportaits.com | 27-Nov-02 | 27-Nov-18 |
| searsportrait.com | 23-Jan-96 | 24-Jan-19 |
| sears-portrait.com | 23-Jan-96 | 24-Jan-19 |

18-23538-shl    Doc 2507    Filed 02/06/19    Entered 02/06/19 26:44:34    Exhibit A
Pg 1097 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | |
|---|---|---|
| searsportrait.mobi | 26-Sep-06 | 26-Sep-20 |
| searsportraits.com | 28-Mar-00 | 28-Mar-19 |
| searsportraitstudio.com | 17-May-14 | 17-May-20 |
| searsportriatstudio.com | 2-Dec-02 | 2-Dec-18 |
| searsportrit.com | 27-Nov-02 | 27-Nov-18 |
| searspotraitstudio.com | 18-Nov-02 | 18-Nov-20 |
| searspowertools.com | 11-Jan-09 | 11-Jan-19 |
| searspr.com | 14-Mar-02 | 14-Mar-20 |
| searspro.com | 16-Jun-03 | 16-Jun-20 |
| searspromociones.com | 21-Jun-02 | 21-Jun-19 |
| searsproperties.com | 1-Dec-09 | 1-Dec-19 |
| searsproperty.com | 1-Dec-09 | 1-Dec-19 |
| searsprovider.com | 6-Apr-07 | 4-Jun-20 |
| searspsrtsdirect.com | 23-Nov-12 | 23-Nov-18 |
| searspulse.com | 21-Jan-03 | 21-Jan-19 |
| searsravivevotrestyle.ca | 23-May-18 | 23-May-20 |
| searsravivevotrestyle.com | 30-May-18 | 30-May-20 |
| searsrefreshyourstyle.ca | 23-May-18 | 23-May-20 |
| searsrefreshyourstyle.com | 30-May-18 | 30-May-20 |
| searsrefrigeratorparts.com | 7-Oct-14 | 7-Oct-20 |
| sears-remotes.com | 13-Jan-10 | 13-Jan-20 |
| searsrenovationdufoyer.ca | 18-Apr-18 | 18-Apr-20 |
| sears-rent-a-car.com | 24-Sep-96 | 23-Sep-20 |
| searsrentalcar.com | 11-Jun-02 | 11-Jun-20 |
| searsrentaltruck.com | 11-Jun-02 | 11-Jun-20 |
| searsrentatruck.com | 11-Jun-02 | 11-Jun-20 |
| sears-rent-a-truck.com | 24-Sep-96 | 23-Sep-20 |
| sears-repair.com | 27-Apr-09 | 27-Apr-20 |
| searsrepair.jobs | 15-Sep-05 | 15-Sep-19 |
| searsrepair.net | 14-Sep-09 | 14-Sep-19 |
| searsrepair.org | 19-Aug-14 | 19-Aug-20 |
| searsreply.com | 23-Feb-04 | 23-Feb-19 |
| searsresidentialgaragedoor.com | 29-Dec-05 | 29-Dec-18 |
| searsresidentiels.ca | 11-Apr-18 | 11-Apr-20 |
| searsresidentiels.com | 9-Apr-18 | 9-Apr-20 |
| searsrewadcenter.com | 28-Mar-18 | 28-Mar-20 |
| searsreward.com | 27-Dec-08 | 27-Dec-18 |
| searsrewardmyway.com | 22-Jan-09 | 22-Jan-19 |
| searsrewards.com | 26-Nov-05 | 26-Nov-18 |
| searsrewardsmyway.com | 22-Jan-09 | 22-Jan-19 |
| searsrobuck.com | 9-Jan-02 | 9-Jan-20 |
| searsrocks.com | 7-Aug-09 | 7-Aug-19 |
| searsroebuck.com | 26-Apr-99 | 26-Apr-20 |
| searsroebuck.net | 8-Jul-12 | 8-Jul-19 |
| searsroebuck.org | 15-Jun-00 | 15-Jun-20 |
| searsroebuckandco.com | 10-Jan-99 | 10-Jan-19 |
| searsroebuckandcompany.com | 10-Jan-99 | 10-Jan-19 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | |
|---|---|---|
| searsroebuckstoresinc.com | 10-Feb-00 | 10-Feb-19 |
| searsroofingexperts.com | 10-Sep-11 | 10-Sep-19 |
| searsroofingsystems.com | 10-Sep-11 | 10-Sep-19 |
| searsroomforkids.com | 7-Jan-00 | 7-Jan-20 |
| searsroster.com | 29-Apr-14 | 29-Apr-20 |
| searsrug.com | 15-Nov-13 | 15-Nov-19 |
| searsruggallery.com | 14-Nov-13 | 14-Nov-19 |
| searsrugs.com | 14-Nov-13 | 14-Nov-19 |
| searssalute.com | 21-Jan-03 | 21-Jan-19 |
| searssandandgravel.com | 3-Aug-12 | 3-Aug-19 |
| searssearch.com | 28-Oct-04 | 28-Oct-19 |
| searssellerresource.com | 19-Apr-13 | 19-Apr-19 |
| searssellerresources.com | 29-Nov-12 | 29-Nov-18 |
| searssensations.com | 21-Jan-03 | 21-Jan-19 |
| searsservice.com | 29-Sep-04 | 29-Sep-19 |
| searsservicelive.com | 18-Feb-09 | 18-Feb-19 |
| searsservices.com | 6-Aug-08 | 6-Aug-20 |
| sears-services.com | 11-Jun-09 | 11-Jun-19 |
| searsservicesresidentiels.ca | 11-Apr-18 | 11-Apr-20 |
| searsservicesresidentiels.com | 9-Apr-18 | 9-Apr-20 |
| searsshipdirect.ca | 18-Apr-18 | 18-Apr-20 |
| searsshipdirect.com | 17-Apr-18 | 17-Apr-20 |
| sears-sho.com | 6-Aug-12 | 6-Aug-20 |
| searsshopathome.com | 4-Aug-04 | 4-Aug-20 |
| searsshops.com | 25-Feb-13 | 25-Feb-19 |
| searsshopyourway.com | 22-Jan-09 | 22-Jan-19 |
| searsshopyourwayrewards.com | 22-Jan-09 | 22-Jan-19 |
| searsshowplace.com | 2-Nov-98 | 1-Nov-19 |
| sears-showplace.com | 2-Nov-98 | 1-Nov-19 |
| searssidingandwindows.com | 22-Apr-99 | 22-Apr-19 |
| searssidingexperts.com | 10-Sep-11 | 10-Sep-19 |
| searssignature.com | 21-Jan-03 | 21-Jan-19 |
| searssimply.com | 21-Jan-03 | 21-Jan-19 |
| searssmartchoice.com | 22-Jan-01 | 22-Jan-20 |
| searssocial.com | 31-Jan-11 | 31-Jan-19 |
| searssoloutionsmastercard.com | 6-Dec-12 | 6-Dec-18 |
| searssolutinscards.com | 6-Dec-12 | 6-Dec-18 |
| searssolutioncard.biz | 11-Jun-07 | 10-Jun-19 |
| searssolutioncard.com | 12-Jun-07 | 12-Jun-19 |
| searssolutioncard.net | 12-Jun-07 | 12-Jun-19 |
| searssolutioncards.biz | 11-Jun-07 | 10-Jun-19 |
| searssolutioncards.com | 12-Jun-07 | 12-Jun-19 |
| searssolutioncards.net | 12-Jun-07 | 12-Jun-19 |
| searssolutionmastercard.biz | 17-Sep-07 | 16-Sep-19 |
| searssolutionmastercard.com | 12-Jun-07 | 12-Jun-19 |
| searssolutionmastercard.net | 12-Jun-07 | 12-Jun-19 |
| searssolutionsaccept.com | 7-Oct-11 | 7-Oct-19 |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 20:44:34 Exhibit A
Pg 071 of 110

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | |
|---|---|---|
| searssolutionscard.biz | 11-Jun-07 | 10-Jun-19 |
| searssolutionscard.com | 12-Jun-07 | 12-Jun-19 |
| searssolutionscard.net | 12-Jun-07 | 12-Jun-19 |
| searssolutionscards.biz | 11-Jun-07 | 10-Jun-19 |
| searssolutionscards.com | 11-Jun-07 | 11-Jun-19 |
| searssolutionscards.net | 12-Jun-07 | 12-Jun-19 |
| searssolutionsmasercard.com | 7-Dec-12 | 7-Dec-18 |
| searssolutionsmaster.biz | 11-Jun-07 | 10-Jun-19 |
| searssolutionsmaster.com | 16-Oct-12 | 16-Oct-20 |
| searssolutionsmastercad.com | 6-Dec-12 | 6-Dec-18 |
| searssolutionsmastercard.biz | 17-Sep-07 | 16-Sep-19 |
| searssolutionsmastercard.com | 12-Jun-07 | 12-Jun-19 |
| searssolutionsmastercard.net | 12-Jun-07 | 12-Jun-19 |
| searssolutionsmastercrad.com | 7-Dec-12 | 7-Dec-18 |
| searssolutionsmastercrd.com | 7-Dec-12 | 7-Dec-18 |
| searssolutionsmastrcard.com | 7-Dec-12 | 7-Dec-18 |
| searssolutionsmastrecard.com | 7-Dec-12 | 7-Dec-18 |
| searssolutionsmstercard.com | 7-Dec-12 | 7-Dec-18 |
| searssolutionsrewards.biz | 9-Jul-07 | 8-Jul-19 |
| searssolutionsrewards.com | 10-Jul-07 | 10-Jul-19 |
| searssolutionsrewards.net | 10-Jul-07 | 10-Jul-19 |
| searssolutiosmastercard.com | 7-Dec-12 | 7-Dec-18 |
| searssolutoinsrewards.biz | 29-Apr-08 | 28-Apr-19 |
| searssolutonmastercard.biz | 11-Jun-07 | 10-Jun-19 |
| searsspecialitysizes.ca | 6-Apr-18 | 6-Apr-20 |
| searsspecialitysizes.com | 6-Apr-18 | 6-Apr-20 |
| searssshopyourwayreward.com | 22-Jan-09 | 22-Jan-19 |
| searsssolutionscards.com | 6-Dec-12 | 6-Dec-18 |
| searsssolutionsmastercard.com | 6-Dec-12 | 6-Dec-18 |
| searsstore.com | 25-Oct-00 | 25-Oct-20 |
| searsstoreopportunities.com | 15-Aug-11 | 15-Aug-19 |
| searsstoreownership.com | 15-Aug-11 | 15-Aug-19 |
| searsstorepartner.com | 15-Aug-11 | 15-Aug-19 |
| searsstudio.com | 15-Nov-02 | 15-Nov-20 |
| searsstyle.com | 14-Jun-11 | 14-Jun-19 |
| sears-style.com | 20-Jun-11 | 20-Jun-19 |
| searsstyleguide.com | 7-Oct-10 | 7-Oct-20 |
| searsstyles.com | 20-Jun-11 | 20-Jun-19 |
| searssurvey.com | 23-Feb-07 | 23-Feb-19 |
| searssurveys.com | 23-Mar-07 | 23-Mar-19 |
| searstechnologyservices.com | 17-Nov-11 | 17-Nov-19 |
| searstechprotect.com | 26-Oct-15 | 26-Oct-19 |
| searstechservices.com | 21-Dec-11 | 21-Dec-19 |
| searstentsale.com | 17-Mar-05 | 17-Mar-20 |
| searstesting.com | 5-Dec-12 | 5-Dec-18 |
| searstire.com | 10-Nov-04 | 10-Nov-19 |
| searstires.com | 13-Mar-03 | 13-Mar-19 |

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 26:44:31 Exhibit A
Pg 372 of 1120

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | |
|---|---|---|
| searstix.com | 20-Oct-07 | 20-Oct-19 |
| searstodoparati.com | 15-Aug-00 | 15-Aug-20 |
| searstodoparati.net | 15-Aug-00 | 15-Aug-20 |
| searstodoparati.org | 15-Aug-00 | 15-Aug-20 |
| sears-tools.com | 11-Jun-02 | 11-Jun-19 |
| searstour.com | 7-Aug-09 | 7-Aug-19 |
| searstoutlets.org | 1-Dec-08 | 1-Dec-18 |
| searstower.net | 25-Apr-03 | 25-Apr-19 |
| searstoys.com | 22-Apr-99 | 22-Apr-20 |
| searstoyshop.com | 24-Sep-10 | 24-Sep-20 |
| searstravel.biz | 3-Oct-13 | 2-Oct-19 |
| searstravel.com | 16-Jul-97 | 15-Jul-20 |
| sears-travel.com | 13-Jun-18 | 13-Jun-20 |
| searstravel.net | 3-Oct-13 | 3-Oct-19 |
| searstravel.org | 3-Oct-13 | 3-Oct-19 |
| searstravel.us | 3-Oct-13 | 2-Oct-19 |
| searstravelpr.com | 21-Aug-05 | 21-Aug-20 |
| searstreadmills.com | 16-Sep-05 | 16-Sep-19 |
| searstriadjobs.com | 1-Jun-01 | 1-Jun-20 |
| searstruckrental.com | 11-Jun-02 | 11-Jun-20 |
| searstyle.com | 20-Jun-11 | 20-Jun-19 |
| searstyles.com | 20-Jun-11 | 20-Jun-19 |
| searsu.tv | 16-Feb-11 | 16-Feb-19 |
| searsuniversity.tv | 16-Feb-11 | 16-Feb-19 |
| searsunsungheroes.com | 19-May-10 | 19-May-20 |
| searsvacation.com | 3-Aug-01 | 3-Aug-19 |
| searsvacations.biz | 3-Oct-13 | 2-Oct-19 |
| searsvacations.com | 3-Aug-01 | 3-Aug-19 |
| searsvacations.net | 3-Oct-13 | 3-Oct-19 |
| searsvacations.org | 3-Oct-13 | 3-Oct-19 |
| searsvacations.us | 3-Oct-13 | 2-Oct-19 |
| searsvard.com | 21-Jul-12 | 21-Jul-20 |
| searsvehicleplan.com | 11-Jan-12 | 11-Jan-20 |
| searsvehicleprotect.com | 11-Jan-12 | 11-Jan-20 |
| searsvehicleprotectionplan.com | 11-Jan-12 | 11-Jan-20 |
| searsvehicleprotectplan.com | 11-Jan-12 | 11-Jan-20 |
| searsvendor.com | 24-Mar-09 | 24-Mar-19 |
| searsvirtualhome.com | 26-Oct-05 | 26-Oct-20 |
| searsvision.biz | 5-Oct-01 | 6-Nov-20 |
| searsvision.com | 2-Aug-00 | 2-Aug-20 |
| searsvision.info | 13-Sep-01 | 13-Sep-19 |
| searsvisioncenter.biz | 5-Oct-01 | 6-Nov-20 |
| searsvisioncenter.com | 2-Aug-00 | 2-Aug-20 |
| searsvisioncenters.biz | 5-Oct-01 | 6-Nov-20 |
| searsvisioncenters.com | 24-Jul-00 | 24-Jul-20 |
| searsvp.com | 11-Jan-12 | 11-Jan-20 |
| searsvpp.com | 11-Jan-12 | 11-Jan-20 |

18-23538-shl    Doc 9507-1    Filed 02/06/15    Entered 02/06/19 16:44:31    Exhibit A
Pg 373 of 1120

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | |
|---|---|---|
| searswatchandjewelryrepair.com | 7-Jan-10 | 7-Jan-20 |
| searswatchandjewelryservice.com | 1-Nov-12 | 1-Nov-20 |
| searswaterheaters.com | 18-Sep-08 | 18-Sep-20 |
| searswebshop.com | 25-Feb-13 | 25-Feb-19 |
| searswebshops.com | 25-Feb-13 | 25-Feb-19 |
| searswebstore.com | 25-Feb-13 | 25-Feb-19 |
| searswebstores.com | 25-Feb-13 | 25-Feb-19 |
| searswheels.com | 18-Apr-09 | 18-Apr-19 |
| searswhereelse.com | 17-Aug-01 | 17-Aug-20 |
| searswhereelse.us | 19-Apr-02 | 18-Apr-19 |
| searswindowcoverings.com | 13-Jun-18 | 13-Jun-20 |
| searswindows.ca | 6-Apr-18 | 6-Apr-20 |
| searswine.com | 25-Mar-09 | 25-Mar-19 |
| searswines.com | 24-Mar-09 | 24-Mar-19 |
| searswireless.com | 21-Mar-09 | 21-Mar-19 |
| searswishbook.com | 4-May-98 | 3-May-20 |
| searswishbook.net | 30-Sep-98 | 29-Sep-19 |
| searswishbook.org | 30-Sep-98 | 29-Sep-19 |
| searswomansview.com | 22-Jan-01 | 22-Jan-20 |
| searswomanview.com | 2-Oct-02 | 2-Oct-20 |
| searswomensview.com | 2-Oct-02 | 2-Oct-20 |
| searswoodfloorcleaning.com | 26-Oct-11 | 26-Oct-20 |
| searsworkwear.com | 22-Jan-01 | 22-Jan-19 |
| searsyardguru.com | 11-Feb-10 | 11-Feb-20 |
| searsyourreward.com | 17-Feb-09 | 17-Feb-19 |
| searsyourrewards.com | 13-Feb-09 | 13-Feb-19 |
| seascreditcard.com | 15-Jul-12 | 15-Jul-20 |
| seashomeservices.com | 23-Nov-12 | 23-Nov-18 |
| seasmastercard.com | 6-Dec-12 | 6-Dec-18 |
| seatsoutlet.com | 16-Oct-12 | 16-Oct-20 |
| seatspartsdirect.com | 23-Nov-12 | 23-Nov-18 |
| securiteaufoyersears.ca | 6-Apr-18 | 6-Apr-20 |
| seearscard.com | 15-Jul-12 | 15-Jul-20 |
| seeriq.com | 10-Nov-08 | 10-Nov-20 |
| seersant.com | 10-Nov-08 | 10-Nov-20 |
| seersiq.com | 10-Nov-08 | 10-Nov-20 |
| seersoutlet.com | 16-Oct-12 | 16-Oct-20 |
| seersratio.com | 10-Nov-08 | 10-Nov-20 |
| segno.systems | 15-May-14 | 15-May-20 |
| segnolearning.co | 27-May-14 | 26-May-20 |
| segnolearning.com | 27-Mar-14 | 27-Mar-20 |
| segnolearning.net | 27-May-14 | 27-May-20 |
| segnolearning.org | 27-May-14 | 27-May-20 |
| segnolrs.com | 8-Oct-14 | 8-Oct-20 |
| segnoscore.co | 27-May-14 | 26-May-20 |
| segnoscore.com | 27-May-14 | 27-May-20 |
| segnoscore.net | 27-May-14 | 27-May-20 |

18-23538-shl   Doc 9507   Filed 02/08/19   Entered 02/08/19 20:20:44   Main Document   Exhibit A
Pg 374 of 1120

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | |
|---|---|---|
| segnoscore.org | 27-May-14 | 27-May-20 |
| segnosystems.co | 27-May-14 | 26-May-20 |
| segnosystems.com | 26-Feb-14 | 26-Feb-20 |
| segnosystems.net | 27-May-14 | 27-May-20 |
| segnosystems.org | 27-May-14 | 27-May-20 |
| semantictec.com | 24-Jun-11 | 24-Jun-19 |
| semingo.com | 12-Oct-06 | 12-Oct-19 |
| serarspartsdirect.com | 23-Nov-12 | 23-Nov-18 |
| seritagegrowth.com | 12-Dec-14 | 12-Dec-19 |
| seritagegrowthproperties.com | 12-Dec-14 | 12-Dec-19 |
| seritageproperties.com | 12-Dec-14 | 12-Dec-19 |
| seritagerealty.com | 21-May-12 | 21-May-20 |
| seritagerealtytrust.com | 21-May-12 | 21-May-20 |
| sersoptical.com | 23-Nov-12 | 23-Nov-18 |
| serssolutionscards.com | 6-Dec-12 | 6-Dec-18 |
| serveyourway.com | 16-Sep-13 | 16-Sep-19 |
| serviceline.us | 25-Aug-09 | 24-Aug-19 |
| servicelive.biz | 27-Feb-09 | 26-Feb-19 |
| servicelive.com | 22-Aug-04 | 22-Aug-19 |
| servicelive.contractors | 10-Feb-14 | 10-Feb-19 |
| servicelive.mobi | 28-Aug-07 | 28-Aug-19 |
| servicelive.net | 4-Jun-03 | 4-Jun-20 |
| servicelive.org | 24-Jul-07 | 24-Jul-19 |
| servicelive.plumbing | 19-Feb-14 | 19-Feb-20 |
| servicelive.repair | 25-Mar-14 | 25-Mar-19 |
| servicelive.tv | 8-Dec-09 | 8-Dec-19 |
| servicelive.us | 27-Feb-09 | 26-Feb-19 |
| servicelivedirect.com | 1-May-15 | 1-May-19 |
| serviceliveenterprise.com | 8-Dec-08 | 8-Dec-18 |
| serviceliveenterprise.net | 8-Dec-08 | 8-Dec-18 |
| servicelivelead.com | 23-May-11 | 23-May-19 |
| servicelivelead.net | 23-May-11 | 23-May-19 |
| serviceliveleads.com | 23-May-11 | 23-May-19 |
| serviceliveleads.net | 23-May-11 | 23-May-19 |
| serviceliveonline.com | 22-Jun-10 | 22-Jun-20 |
| serviceliveportal.co.uk | 31-Jul-09 | 31-Jul-19 |
| serviceliveportal.com | 31-Jul-09 | 31-Jul-19 |
| serviceliveportal.com.mx | 31-Jul-09 | 30-Jul-19 |
| serviceliveportal.net | 31-Jul-09 | 31-Jul-19 |
| serviceliveportal.org | 31-Jul-09 | 31-Jul-19 |
| serviceliveportal.us | 31-Jul-09 | 30-Jul-19 |
| serviceorderportal.com | 19-Nov-12 | 19-Nov-20 |
| serviceprorecruitment.com | 9-Feb-09 | 9-Feb-19 |
| servicesfinancierssears.ca | 18-Apr-18 | 18-Apr-20 |
| servicesfinancierssears.com | 16-Apr-18 | 16-Apr-20 |
| servicesresidentielssears.ca | 18-Apr-18 | 18-Apr-20 |
| servicesresidentielssears.com | 13-Apr-18 | 13-Apr-20 |

18-23538-shl    Doc 9607    Filed 02/26/15    Entered 02/26/19 26:44:3    Exhibit A
Pg 373 of 1120

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | |
|---|---|---|
| shc.ai | 16-Jul-18 | 16-Jul-20 |
| shc.cm | 15-Oct-16 | 15-Oct-19 |
| shc.jobs | 15-Sep-05 | 15-Sep-19 |
| shcconnect.com | 19-Dec-11 | 19-Dec-19 |
| shc-contr.com | 10-Apr-09 | 10-Apr-19 |
| shccontractor.com | 24-Mar-09 | 24-Mar-19 |
| shcdam.com | 21-Jul-14 | 21-Jul-20 |
| shcdigitaljournal.com | 19-Dec-11 | 19-Dec-19 |
| shcdigitaljourney.com | 21-Dec-11 | 21-Dec-19 |
| shcdju.com | 21-Dec-11 | 21-Dec-19 |
| shcfactorycompliance.com | 12-Feb-08 | 12-Feb-20 |
| shcfacts.com | 26-Jul-10 | 26-Jul-20 |
| shcfirstscholarship.com | 9-Sep-09 | 9-Sep-19 |
| shchr.com | 17-Aug-06 | 17-Aug-19 |
| shc-il.com | 21-Apr-09 | 21-Apr-19 |
| shcisrael.com | 16-Mar-09 | 16-Mar-19 |
| shc-israel.com | 16-Mar-09 | 16-Mar-19 |
| shcmarketplace.com | 25-Jul-07 | 25-Jul-19 |
| shcpartner.com | 30-Mar-09 | 30-Mar-19 |
| shcprimerobeca.com | 21-Aug-09 | 21-Aug-19 |
| shcrealestate.com | 14-May-15 | 14-May-19 |
| shcrealty.com | 1-Dec-09 | 1-Dec-19 |
| shcretirees.com | 11-Oct-07 | 11-Oct-19 |
| shcscholarship.com | 12-Aug-09 | 12-Aug-21 |
| shcsummit.com | 19-Apr-11 | 19-Apr-19 |
| shcvendor.com | 24-Mar-09 | 24-Mar-19 |
| shcvendorsummit.com | 8-Apr-10 | 8-Apr-19 |
| shearscard.com | 21-Jul-12 | 21-Jul-20 |
| shld.net | 17-Feb-05 | 17-Feb-19 |
| shldc.com | 18-Mar-05 | 18-Mar-20 |
| shldcorp.com | 9-Aug-11 | 9-Aug-19 |
| shldrealestate.com | 8-May-08 | 8-May-20 |
| shldreb.com | 8-May-08 | 8-May-20 |
| shoapplianceandhardwarestores.com | 11-Jun-14 | 11-Jun-20 |
| shoapplianceshowrooms.com | 11-Jun-14 | 11-Jun-20 |
| shohardware.com | 23-Jul-14 | 23-Jul-20 |
| shohardwarestores.com | 11-Jun-14 | 11-Jun-20 |
| shohomeappliance.com | 23-Jul-14 | 23-Jul-20 |
| shohomeapplianceshowroom.com | 23-Jul-14 | 23-Jul-20 |
| shohomeapplianceshowrooms.com | 11-Jun-14 | 11-Jun-20 |
| shohometown.com | 23-Jul-14 | 23-Jul-20 |
| shohometownstores.com | 11-Jun-14 | 11-Jun-20 |
| shomyway.com | 28-Sep-12 | 28-Sep-19 |
| shooutlet.com | 23-Jul-14 | 23-Jul-20 |
| shooutletstores.com | 11-Jun-14 | 11-Jun-20 |
| shopatshoemart.com | 29-Dec-99 | 29-Dec-19 |
| shopfount.com | 26-Oct-15 | 26-Oct-19 |

18-23538-shl   Doc 9507-1   Filed 06/08/21   Entered 06/08/21 18:26:44   Exhibit A
Pg 376 of 1120

FILED DATE: 5/19/2021 1:27 PM          2020L012403

| | | |
|---|---|---|
| shopin.me | 11-Feb-13 | 11-Feb-19 |
| shopkmart.com | 11-Nov-01 | 11-Nov-19 |
| shopmywayreward.com | 23-Nov-12 | 23-Nov-18 |
| shopnowandhere.com | 7-May-10 | 7-May-19 |
| shopper.com.pr | 7-Apr-11 | 7-Apr-19 |
| shopper.pr | 11-Apr-11 | 11-Apr-19 |
| shopperrecap.com | 24-Sep-12 | 24-Sep-20 |
| shoppers.com.pr | 7-Apr-11 | 7-Apr-19 |
| shoppetell.com | 28-Apr-09 | 28-Apr-19 |
| shoppeyourway.com | 30-Jun-12 | 30-Jun-20 |
| shopptell.com | 28-Apr-09 | 28-Apr-19 |
| shoppyourway.com | 23-Nov-12 | 23-Nov-18 |
| shop-sears.com | 11-Jun-02 | 11-Jun-19 |
| shopsearsfeedback.com | 21-Aug-13 | 21-Aug-19 |
| shopyoirway.com | 18-Feb-16 | 18-Feb-20 |
| shopyouraway.com | 23-Nov-12 | 23-Nov-18 |
| shopyourawy.com | 18-Apr-13 | 18-Apr-19 |
| shopyourday.com | 23-Nov-12 | 23-Nov-18 |
| shopyoursway.com | 23-Nov-12 | 23-Nov-18 |
| shopyourwat.com | 23-Nov-12 | 23-Nov-18 |
| shopyourway.app | 8-May-18 | 8-May-20 |
| shopyourway.asia | 23-Sep-13 | 23-Sep-19 |
| shopyourway.clothing | 5-Feb-14 | 5-Feb-20 |
| shopyourway.co | 11-Feb-12 | 10-Feb-20 |
| shopyourway.com | 4-Nov-98 | 3-Nov-20 |
| shopyourway.coupons | 17-Aug-15 | 17-Aug-20 |
| shopyourway.credit | 27-Aug-14 | 26-Aug-19 |
| shopyourway.creditcard | 26-Aug-14 | 26-Aug-19 |
| shopyourway.deals | 22-Sep-14 | 22-Sep-19 |
| shopyourway.delivery | 3-Feb-15 | 3-Feb-20 |
| shopyourway.discount | 19-Aug-14 | 19-Aug-19 |
| shopyourway.eu | 23-Sep-13 | 23-Sep-19 |
| shopyourway.fashion | 10-Apr-15 | 10-Apr-20 |
| shopyourway.finance | 3-Sep-14 | 3-Sep-19 |
| shopyourway.fitness | 19-Aug-14 | 19-Aug-19 |
| shopyourway.gifts | 4-Nov-14 | 4-Nov-19 |
| shopyourway.shoes | 24-Feb-14 | 24-Feb-19 |
| shopyourway.social | 29-Apr-14 | 29-Apr-19 |
| shopyourway.store | 28-Mar-18 | 28-Mar-20 |
| shopyourway.support | 19-Mar-14 | 18-Mar-19 |
| shopyourway.tienda | 27-May-14 | 27-May-19 |
| shopyourway.tv | 27-Jan-11 | 27-Jan-19 |
| shopyourway.website | 28-Mar-18 | 28-Mar-20 |
| shopyourway-apps.com | 18-Apr-14 | 18-Apr-20 |
| shopyourwayeewards.com | 19-Apr-13 | 19-Apr-19 |

18-23538-shl Doc 9047 Filed 07/13/21 Entered 07/13/21 18:26:44 Exhibit A
Pg 375 of 1420

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | |
|---|---|---|
| shopyourwayhealth.com | 4-Sep-13 | 4-Sep-19 |
| shopyourwaylocal.biz | 8-Jun-12 | 7-Jun-20 |
| shopyourway-local.biz | 8-Jun-12 | 7-Jun-20 |
| shopyour-waylocal.biz | 8-Jun-12 | 7-Jun-20 |
| shop-yourwaylocal.biz | 8-Jun-12 | 7-Jun-20 |
| shop-your-way-local.biz | 8-Jun-12 | 7-Jun-20 |
| shopyourwaylocal.com | 12-Apr-12 | 12-Apr-20 |
| shopyourway-local.com | 8-Jun-12 | 8-Jun-20 |
| shopyour-waylocal.com | 8-Jun-12 | 8-Jun-20 |
| shop-yourwaylocal.com | 8-Jun-12 | 8-Jun-20 |
| shop-your-way-local.com | 8-Jun-12 | 8-Jun-20 |
| shopyourwaylocal.net | 8-Jun-12 | 8-Jun-20 |
| shopyourway-local.net | 8-Jun-12 | 8-Jun-20 |
| shopyour-waylocal.net | 8-Jun-12 | 8-Jun-20 |
| shop-yourwaylocal.net | 8-Jun-12 | 8-Jun-20 |
| shop-your-way-local.net | 8-Jun-12 | 8-Jun-20 |
| shopyourwaymax.com | 24-Sep-12 | 24-Sep-20 |
| shopyourwayonline.com | 7-Dec-14 | 7-Dec-20 |
| shopyourwaypoints.com | 4-Jan-16 | 4-Jan-20 |
| shopyourwayrelay.com | 5-Oct-16 | 5-Oct-20 |
| shopyourwayrelayservices.com | 5-Oct-16 | 5-Oct-20 |
| shopyourwayrevards.com | 23-Nov-12 | 23-Nov-18 |
| shopyourwayreward.com | 22-Jan-09 | 22-Jan-19 |
| shopyourwayrewards.com | 22-Jan-09 | 22-Jan-19 |
| shopyourwayrewareds.com | 10-Jul-14 | 10-Jul-20 |
| shopyourwayreweards.com | 2-Apr-13 | 2-Apr-19 |
| shopyourwayrewrads.com | 23-Nov-12 | 23-Nov-18 |
| shopyourwayshoes.biz | 24-Jul-14 | 23-Jul-20 |
| shopyourwayshoes.ca | 24-Jul-14 | 24-Jul-20 |
| shopyourwayshoes.com | 17-Jul-14 | 17-Jul-20 |
| shopyourwayshoes.info | 24-Jul-14 | 24-Jul-20 |
| shopyourwayshoes.me | 24-Jul-14 | 24-Jul-20 |
| shopyourwayshoes.mobi | 24-Jul-14 | 24-Jul-20 |
| shopyourwayshoes.net | 17-Jul-14 | 17-Jul-20 |
| shopyourwayshoes.org | 24-Jul-14 | 24-Jul-20 |
| shopyourwayshoes.shoes | 28-Jul-14 | 28-Jul-20 |
| shopyourwayshoes.us | 24-Jul-14 | 23-Jul-20 |
| shopyourwayshoes.ws | 24-Jul-14 | 24-Jul-20 |
| shopyourwayshop.org | 17-Jul-14 | 17-Jul-20 |
| shopyourwaysweepstakes.com | 11-Jan-13 | 11-Jan-19 |
| shopyourwey.com | 23-Nov-12 | 23-Nov-18 |
| shopyourwyarewards.com | 23-Nov-12 | 23-Nov-18 |
| shopyouwaylocal.biz | 8-Jun-12 | 7-Jun-20 |
| shopyouway-local.biz | 8-Jun-12 | 7-Jun-20 |
| shopyou-waylocal.biz | 8-Jun-12 | 7-Jun-20 |
| shop-youwaylocal.biz | 8-Jun-12 | 7-Jun-20 |
| shop-you-way-local.biz | 8-Jun-12 | 7-Jun-20 |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | |
|---|---|---|
| shopyouwaylocal.com | 8-Jun-12 | 8-Jun-20 |
| shopyouway-local.com | 8-Jun-12 | 8-Jun-20 |
| shopyou-waylocal.com | 8-Jun-12 | 8-Jun-20 |
| shop-youwaylocal.com | 8-Jun-12 | 8-Jun-20 |
| shop-you-way-local.com | 8-Jun-12 | 8-Jun-20 |
| shopyouwaylocal.net | 8-Jun-12 | 8-Jun-20 |
| shopyouway-local.net | 8-Jun-12 | 8-Jun-20 |
| shopyou-waylocal.net | 8-Jun-12 | 8-Jun-20 |
| shop-youwaylocal.net | 8-Jun-12 | 8-Jun-20 |
| shop-you-way-local.net | 8-Jun-12 | 8-Jun-20 |
| shopyouwayreward.com | 23-Nov-12 | 23-Nov-18 |
| shopyway.biz | 17-Jun-13 | 16-Jun-19 |
| shopyway.co | 17-Jun-13 | 16-Jun-19 |
| shopyway.com | 17-Jun-13 | 17-Jun-19 |
| shopyway.info | 17-Jun-13 | 17-Jun-19 |
| shopyway.ly | 21-Jun-13 | 21-Jun-19 |
| shopyway.me | 17-Jun-13 | 17-Jun-19 |
| shopyway.org | 17-Jun-13 | 17-Jun-19 |
| shos.com | 27-Dec-00 | 27-Dec-18 |
| shosappliance.com | 23-Jul-14 | 23-Jul-20 |
| shosapplianceandhardwarestores.com | 11-Jun-14 | 11-Jun-20 |
| shosapplianceshowrooms.com | 11-Jun-14 | 11-Jun-20 |
| shoshardware.com | 23-Jul-14 | 23-Jul-20 |
| shoshardwarestores.com | 11-Jun-14 | 11-Jun-20 |
| shoshomeappliance.com | 23-Jul-14 | 23-Jul-20 |
| shoshomeapplianceshowroom.com | 23-Jul-14 | 23-Jul-20 |
| shoshomeapplianceshowrooms.com | 11-Jun-14 | 11-Jun-20 |
| shoshometown.com | 23-Jul-14 | 23-Jul-20 |
| shoshometownstores.com | 11-Jun-14 | 11-Jun-20 |
| shosoutlet.com | 23-Jul-14 | 23-Jul-20 |
| shosoutletstores.com | 11-Jun-14 | 11-Jun-20 |
| shostores.com | 13-Aug-12 | 13-Aug-20 |
| shotownsquare.com | 25-Mar-14 | 25-Mar-20 |
| showuswhatyougot.com | 24-Feb-05 | 24-Feb-20 |
| shpoyourway.com | 23-Nov-12 | 23-Nov-18 |
| shyway.com | 29-Dec-11 | 29-Dec-19 |
| shy-way.com | 5-Feb-14 | 5-Feb-20 |
| sidingbysears.com | 10-Sep-11 | 10-Sep-19 |
| silverunicorn.com | 1-Feb-04 | 1-Feb-20 |
| simplesears.com | 3-Aug-06 | 3-Aug-19 |
| simplesearscollege.com | 3-Aug-06 | 3-Aug-19 |
| simplycampus.com | 4-May-06 | 4-May-20 |
| simplygarage.com | 4-May-06 | 4-May-20 |
| simplysears.com | 6-Jul-06 | 1-Apr-19 |
| simplysearscollege.com | 22-Jun-06 | 22-Jun-20 |
| simplysearsforcollege.com | 5-Sep-06 | 21-May-20 |

18-23538-rdd  Doc 2507  Filed 02/08/19  Entered 02/08/19 20:14:32  Exhibit A
Pg 373 of 1120

FILED DATE: 5/19/2021 1:27 PM  2020L012403

| | | |
|---|---|---|
| simplysearsholiday.com | 26-Jun-06 | 26-Jun-20 |
| sisterhoodofshopping.com | 13-Feb-09 | 13-Feb-19 |
| sisterhoodofshopping.info | 13-Feb-09 | 13-Feb-19 |
| sisterhoodofshopping.mobi | 13-Feb-09 | 13-Feb-19 |
| sisterhoodofshopping.net | 13-Feb-09 | 13-Feb-19 |
| sisterhoodofshopping.org | 13-Feb-09 | 13-Feb-19 |
| sisterhoodofsmartershopping.com | 13-Feb-09 | 13-Feb-19 |
| sisterhoodofsmartershopping.info | 13-Feb-09 | 13-Feb-19 |
| sisterhoodofsmartershopping.mobi | 13-Feb-09 | 13-Feb-19 |
| sisterhoodofsmartershopping.net | 13-Feb-09 | 13-Feb-19 |
| sisterhoodofsmartershopping.org | 13-Feb-09 | 13-Feb-19 |
| slconnect.com | 3-Apr-00 | 3-Apr-19 |
| smartassist.com | 3-Oct-03 | 3-Oct-20 |
| smartershoppersunite.com | 15-Apr-09 | 15-Apr-19 |
| smartlatina.net | 27-Apr-11 | 27-Apr-19 |
| smart-meets-style.com | 16-Jul-09 | 16-Jul-19 |
| smartnsavvy.com | 14-May-09 | 14-May-19 |
| smartsense.com | 13-Oct-96 | 12-Oct-20 |
| smartsensebrand.com | 12-Jun-15 | 12-Jun-19 |
| smartshoppersunite.com | 15-Apr-09 | 15-Apr-19 |
| sociallot.com | 26-Feb-09 | 26-Feb-19 |
| socialtog.com | 26-Feb-09 | 26-Feb-19 |
| soesupply.com | 22-Oct-04 | 22-Oct-20 |
| solutionscards.biz | 11-Jun-07 | 10-Jun-19 |
| solutionscards.com | 12-Jun-07 | 12-Jun-19 |
| solutionscards.net | 12-Jun-07 | 12-Jun-19 |
| southbeachaefactoryservice.com | 1-Mar-10 | 1-Mar-20 |
| spdcommercial.com | 14-Oct-99 | 14-Oct-19 |
| spothesteal.com | 27-Sep-06 | 17-Aug-19 |
| spotthesteal.com | 27-Sep-06 | 17-Aug-19 |
| sr3.com | 23-Jan-03 | 23-Jan-20 |
| sracweb.com | 3-Aug-99 | 3-Aug-19 |
| ssearscard.com | 15-Jul-12 | 15-Jul-20 |
| ssearshc.com | 28-Mar-18 | 28-Mar-20 |
| standardsofexcellence.com | 28-Oct-98 | 27-Oct-20 |
| starreviewers.com | 10-Jul-14 | 10-Jul-20 |
| statuator.com | 31-Jan-13 | 31-Jan-19 |
| stopbydriveon.com | 15-Mar-12 | 15-Mar-20 |
| store-kmart.com | 28-Mar-18 | 28-Mar-20 |
| streamsights.at | 8-Mar-12 | 7-Mar-19 |
| streamsights.biz | 8-Mar-13 | 7-Mar-19 |
| streamsights.co | 8-Mar-13 | 7-Mar-19 |
| streamsights.in | 8-Mar-13 | 8-Mar-19 |
| streamsights.info | 8-Mar-13 | 8-Mar-19 |
| streamsights.me | 8-Mar-13 | 8-Mar-19 |
| streamsights.mobi | 8-Mar-13 | 8-Mar-19 |
| streamsights.net | 8-Mar-13 | 8-Mar-19 |

18-23538-rdd    Doc 2507    Filed 02/06/19    Entered 02/06/19 16:44:31    Exhibit A
Pg 306 of 1120

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | |
|---|---|---|
| streamsights.org | 8-Mar-13 | 8-Mar-19 |
| streamsights.us | 8-Mar-13 | 7-Mar-19 |
| streamsights.ws | 8-Mar-13 | 8-Mar-19 |
| structure.com | 1-Mar-95 | 2-Mar-19 |
| structure.us | 19-Apr-02 | 18-Apr-20 |
| structureco.com | 1-Mar-95 | 2-Mar-19 |
| studioservicesdigital.com | 10-Aug-12 | 10-Aug-20 |
| studioservicesdigital.net | 10-Aug-12 | 10-Aug-20 |
| studioservicesdigitalassets.com | 17-Aug-12 | 17-Aug-20 |
| studioservicesdigitalassets.net | 17-Aug-12 | 17-Aug-20 |
| stylemeetssmart.com | 13-Jul-09 | 13-Jul-19 |
| style-meets-smart.com | 16-Jul-09 | 16-Jul-19 |
| stylemoves.com | 28-May-09 | 28-May-19 |
| stylesip.com | 19-May-10 | 19-May-20 |
| stylesippics.com | 27-Jul-11 | 27-Jul-19 |
| superkmart.com | 1-Apr-99 | 1-Apr-19 |
| s-way.com | 2-Sep-04 | 2-Sep-19 |
| syw.app | 8-May-18 | 8-May-20 |
| syw.biz | 20-Jun-04 | 19-Jun-19 |
| syw.co | 20-Dec-10 | 19-Dec-19 |
| syw.com | 23-Apr-98 | 22-Apr-19 |
| syw.info | 30-Apr-13 | 30-Apr-20 |
| syw.net | 7-Apr-02 | 7-Apr-19 |
| syw.us | 19-Nov-02 | 18-Nov-20 |
| syw.website | 28-Mar-18 | 28-Mar-20 |
| syw5321.app | 10-May-18 | 10-May-20 |
| syw5321.com | 10-May-18 | 10-May-20 |
| sywanalytics.com | 3-Oct-16 | 3-Oct-20 |
| sywcard.app | 10-May-18 | 10-May-20 |
| sywcard.com | 10-May-18 | 10-May-20 |
| sywcoupons.com | 17-Aug-15 | 17-Aug-19 |
| sywhealth.com | 12-Mar-14 | 12-Mar-20 |
| sywl.biz | 8-Jun-12 | 7-Jun-20 |
| sywlocal.biz | 8-Jun-12 | 7-Jun-20 |
| sywlocal.com | 12-Apr-12 | 12-Apr-20 |
| sywlocal.net | 8-Jun-12 | 8-Jun-20 |
| sywmail.com | 4-Oct-12 | 4-Oct-20 |
| sywmail.info | 4-Oct-12 | 4-Oct-20 |
| sywmail.net | 4-Oct-12 | 4-Oct-20 |
| sywmail.org | 4-Oct-12 | 4-Oct-20 |
| sywr.cm | 16-Jan-17 | 16-Jan-19 |
| sywr.com | 18-Nov-01 | 18-Nov-20 |
| sywrelay.com | 5-Oct-16 | 5-Oct-20 |
| sywrelayservices.com | 5-Oct-16 | 5-Oct-20 |
| sywrewards.com | 8-Feb-15 | 8-Feb-20 |
| sywsave.com | 17-Aug-15 | 17-Aug-19 |
| sywspeedplatform.com | 7-Sep-17 | 7-Sep-19 |

18-23538-shl    Doc 96487    Filed 07/13/21    Entered 07/13/21 18:26:44    Exhibit A
Pg 1109 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | | |
|---|---|---|
| sywsweeps.com | 13-Mar-14 | 13-Mar-20 |
| sywsweepsblog.com | 23-Mar-16 | 23-Mar-20 |
| take15forfamily.com | 2-Oct-08 | 2-Oct-20 |
| takethechefchallenge.com | 22-Jul-10 | 22-Jul-20 |
| tarjetaparati.com | 4-Jan-01 | 4-Jan-19 |
| taskerbee.com | 25-Apr-14 | 25-Apr-20 |
| teamuptostopbullying.com | 16-Jul-12 | 16-Jul-20 |
| teamuptostopbullying.org | 16-Jul-12 | 16-Jul-20 |
| tellkmart.com | 5-Jun-15 | 5-Jun-19 |
| tellsears.com | 5-Jun-15 | 5-Jun-19 |
| testing-delivery.com | 4-Oct-12 | 4-Oct-20 |
| texas-steer.com | 28-Feb-00 | 28-Feb-20 |
| texassteergames.com | 2-Jun-05 | 2-Jun-20 |
| texassteerpoker.com | 2-Jun-05 | 2-Jun-20 |
| tgi.biz | 27-Mar-02 | 26-Mar-20 |
| tgi.info | 20-Sep-01 | 19-Sep-20 |
| tgishopyourway.com | 16-Sep-09 | 16-Sep-19 |
| tgi-shopyourway.com | 16-Sep-09 | 16-Sep-19 |
| thebestinstallteam.com | 14-Feb-12 | 14-Feb-20 |
| thebestrepairteam.com | 14-Feb-12 | 14-Feb-20 |
| thebodyshopatsears.com | 26-Apr-00 | 26-Apr-19 |
| thecelestialstardiamond.com | 29-Aug-03 | 29-Aug-19 |
| theclimatecrew.com | 24-Oct-08 | 24-Oct-20 |
| thecustomeriswhyiamhere.com | 28-Feb-12 | 28-Feb-20 |
| thediehards.co | 23-Jan-14 | 22-Jan-20 |
| thedumorehouse.com | 25-Apr-07 | 25-Apr-19 |
| thedumores.com | 11-Apr-07 | 11-Apr-20 |
| thegarageheads.com | 11-May-17 | 11-May-19 |
| thegreatindoors.ca | 13-Nov-00 | 1-Dec-19 |
| thegreatindoors.com | 11-Dec-97 | 10-Dec-19 |
| thegreatindoors.info | 26-Jul-01 | 26-Jul-20 |
| thegreatindoors.jobs | 15-Sep-05 | 15-Sep-19 |
| thegreatindoors.mobi | 27-Jun-06 | 27-Jun-20 |
| thegreatindoors.us | 19-Apr-02 | 18-Apr-19 |
| thegreatindoorsmastercard.com | 7-Aug-01 | 7-Aug-20 |
| thegreatindoorsstinks.com | 3-Dec-02 | 3-Dec-19 |
| thegreatindoorssuck.com | 3-Dec-02 | 3-Dec-19 |
| thegreatindoorssucks.com | 23-Aug-02 | 23-Aug-19 |
| thegreatindoorstore.com | 9-Dec-02 | 9-Dec-18 |
| thegreatindoorsucks.com | 3-Dec-02 | 3-Dec-19 |
| themanysidesofme.com | 23-Jun-10 | 23-Jun-20 |
| thenewphotostudioatsears.com | 10-Oct-13 | 10-Oct-19 |
| thenewsearscatalogue.com | 6-Nov-08 | 6-Nov-20 |
| thenewsearscatalogue.net | 6-Nov-08 | 6-Nov-20 |
| thepartcounter.com | 29-Jul-08 | 29-Jul-20 |
| thepartscounter.com | 29-Jul-08 | 29-Jul-20 |
| thepetboutiqueatsears.com | 29-May-14 | 29-May-20 |

18-23538-shl   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:31   Exhibit A
Pg 332 of 1150

FILED DATE: 5/19/2021 1:27 PM     2020L012403

| | | |
|---|---|---|
| thephotostudioatsears.com | 10-Oct-13 | 10-Oct-19 |
| theresmoretovalue.com | 17-Feb-09 | 17-Feb-19 |
| thesearsbigswitch.com | 26-Apr-10 | 26-Apr-20 |
| thesearscatalog.com | 16-Jan-08 | 16-Jan-20 |
| thesearsfitclub.com | 24-Mar-10 | 24-Mar-20 |
| thesoftersideofsears.com | 30-Apr-96 | 1-May-20 |
| thisisstate.com | 17-Oct-12 | 17-Oct-20 |
| thommcan.com | 9-Dec-97 | 8-Dec-19 |
| thommcanshoecare.com | 3-Oct-03 | 3-Oct-20 |
| todoparati.com | 29-Dec-99 | 29-Dec-18 |
| todoparati.info | 26-Jul-01 | 26-Jul-20 |
| todoparati.us | 19-Apr-02 | 18-Apr-19 |
| togofer.com | 9-Oct-08 | 9-Oct-20 |
| togopher.com | 9-Oct-08 | 9-Oct-20 |
| tool.parts | 9-Aug-15 | 9-Aug-20 |
| tooladvantage.com | 29-Jan-99 | 29-Jan-19 |
| toolterritory.com | 3-Feb-99 | 3-Feb-19 |
| topdelvers.com | 10-Mar-10 | 10-Mar-20 |
| tophandymandallas.com | 3-Feb-12 | 3-Feb-20 |
| toughskins.com | 14-Apr-00 | 14-Apr-20 |
| toughskins.net | 14-Apr-00 | 14-Apr-20 |
| toughskins.org | 14-Apr-00 | 14-Apr-20 |
| traditioncertifieddiamonds.com | 11-Nov-02 | 11-Nov-19 |
| traditioncharms.com | 4-Mar-11 | 4-Mar-19 |
| traditiondiamonds.com | 30-Apr-03 | 30-Apr-19 |
| travelershomeguide.com | 22-Aug-06 | 1-May-19 |
| treadmils.com | 3-Apr-05 | 3-Apr-19 |
| treatdirtlikedirt.com | 6-Jul-12 | 6-Jul-20 |
| turfwarstrivia.com | 17-May-11 | 17-May-19 |
| tvmatchmaker.com | 8-Aug-02 | 8-Aug-19 |
| uskrct.com | 10-Oct-06 | 8-Dec-18 |
| uststkrc.com | 10-Oct-06 | 8-Dec-18 |
| varickstreetdesign.com | 25-Aug-10 | 25-Aug-20 |
| vederelestelle.com | 4-Mar-11 | 4-Mar-19 |
| vinylsidingbysears.com | 10-Sep-11 | 10-Sep-19 |
| vita-smart.com | 28-Nov-06 | 15-Nov-20 |
| voyagesears.com | 13-Jun-18 | 13-Jun-20 |
| voyage-sears.com | 13-Jun-18 | 13-Jun-20 |
| voyagessears.com | 13-Jun-18 | 13-Jun-20 |
| voyages-sears.com | 13-Jun-18 | 13-Jun-20 |
| wallaroo.xyz | 8-Sep-15 | 8-Sep-21 |
| wallyguard.com | 13-Nov-15 | 13-Nov-19 |
| wallyhealth.com | 12-Nov-15 | 12-Nov-19 |
| wallyho.me | 23-Nov-15 | 23-Nov-19 |
| wallyhome.co | 24-Nov-15 | 23-Nov-19 |
| wallyhomereport.com | 16-Nov-15 | 16-Nov-19 |

18-23538-shl   Doc 9507-1   Filed 02/08/21   Entered 02/08/21 16:44:31   Exhibit A
Pg 333 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | |
|---|---|---|
| wallyhomeservices.com | 16-Nov-15 | 16-Nov-19 |
| wallylabs.net | 15-Apr-16 | 15-Apr-20 |
| wallylabs.org | 15-Apr-16 | 15-Apr-20 |
| wallylabsllc.com | 15-Apr-16 | 15-Apr-20 |
| wallymonitoring.com | 27-Apr-16 | 27-Apr-20 |
| wallyoncall.com | 27-Apr-16 | 27-Apr-20 |
| wallyprotect.com | 13-Nov-15 | 13-Nov-19 |
| wallyrapidresponse.com | 27-Apr-16 | 27-Apr-20 |
| wallyresponse.com | 27-Apr-16 | 27-Apr-20 |
| wallysecure.com | 13-Nov-15 | 13-Nov-19 |
| wallyservices.com | 27-Apr-16 | 27-Apr-20 |
| wallyvault.com | 13-Nov-15 | 13-Nov-19 |
| wardrobedelight.com | 29-Mar-07 | 29-Mar-19 |
| wardrobeexpert.com | 29-Mar-07 | 29-Mar-19 |
| wardrobehaven.com | 29-Mar-07 | 29-Mar-19 |
| wardrobeheaven.com | 29-Mar-07 | 29-Mar-19 |
| wattsstreetdesign.com | 24-Jul-12 | 24-Jul-20 |
| wearnowandhere.com | 23-Jun-10 | 23-Jun-20 |
| weatherbeater.com | 1-Nov-01 | 1-Nov-19 |
| weatherbeater.net | 26-Jun-03 | 26-Jun-19 |
| weatherbeater.org | 12-Jun-03 | 12-Jun-19 |
| weatherhandler.com | 14-Apr-00 | 14-Apr-20 |
| weatherhandler.org | 14-Apr-00 | 14-Apr-20 |
| weddingpointssweeps.com | 8-Jun-10 | 8-Jun-20 |
| weeklyelectronicdeal.com | 30-Dec-09 | 30-Dec-19 |
| weeklyelectronicdeals.com | 30-Dec-09 | 30-Dec-19 |
| weeklyelectronicsdeal.com | 30-Dec-09 | 30-Dec-19 |
| weeklyelectronicsdeals.com | 30-Dec-09 | 30-Dec-19 |
| weeklyelectronicssteal.com | 8-Feb-10 | 8-Feb-20 |
| weeklyelectronicssteals.com | 8-Feb-10 | 8-Feb-20 |
| weeklyelectronicsteal.com | 8-Feb-10 | 8-Feb-20 |
| weeklyelectronicsteals.com | 8-Feb-10 | 8-Feb-20 |
| weelittleweb.com | 31-Aug-98 | 30-Aug-19 |
| wegetthepicture.com | 15-Oct-98 | 14-Oct-19 |
| westar-sw.com | 30-Sep-96 | 29-Sep-20 |
| westernhawk.com | 6-Jun-08 | 6-Jun-20 |
| westernhawk.org | 6-Jun-08 | 6-Jun-20 |
| whatisyourwish.com | 23-Aug-07 | 23-Aug-20 |
| whereelse.us | 19-Apr-02 | 18-Apr-19 |
| whereitbegins.com | 7-Mar-07 | 7-Mar-19 |
| wherestylemeetssmart.com | 12-May-09 | 12-May-19 |
| wherewishesbegin.com | 5-Oct-07 | 5-Oct-19 |
| wholehome.us | 19-Apr-02 | 18-Apr-19 |
| winit.app | 8-May-18 | 8-May-20 |
| winitblog.com | 24-Mar-16 | 24-Mar-20 |
| wishbig.com | 7-May-04 | 7-May-19 |
| wishbook.com | 12-May-98 | 11-May-20 |

18-23538-shl   Doc 6507-1   Filed 01/26/19   Entered 02/06/19 16:44:31   Exhibit A
Pg 334 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | | |
|---|---|---|
| wishbook.info | 26-Jul-01 | 26-Jul-20 |
| wishbook.net | 6-Nov-98 | 5-Nov-19 |
| wishbook.org | 30-Sep-98 | 29-Sep-19 |
| wishbook.us | 19-Apr-02 | 18-Apr-19 |
| wishsphere.com | 12-May-08 | 12-May-20 |
| womansview.com | 15-Jul-01 | 15-Jul-20 |
| womansviewcatalog.com | 9-Dec-03 | 9-Dec-18 |
| womenshomeguide.com | 17-Aug-06 | 14-May-20 |
| woowooweb.com | 1-Jul-99 | 1-Jul-20 |
| workwhatyougot.com | 17-Oct-11 | 17-Oct-19 |
| wwgnn.com | 13-Apr-09 | 13-Apr-20 |
| www3sears.com | 12-Oct-04 | 12-Oct-19 |
| wwwdelver.com | 10-Mar-10 | 10-Mar-20 |
| wwwgnn.com | 13-Apr-09 | 13-Apr-20 |
| wwwlgnn.com | 13-Apr-09 | 13-Apr-20 |
| wwwsearschoicerewardscom.com | 24-Jan-11 | 24-Jan-20 |
| wwwsearshc.com | 28-Mar-18 | 28-Mar-20 |
| wwwsearsmastercard.com | 16-Oct-12 | 16-Oct-20 |
| wwwsearsportraitstudio.com | 23-Jun-05 | 23-Jun-20 |
| wwwsearssolutions.com | 6-Dec-12 | 6-Dec-18 |
| wwwsearssolutionscard.com | 6-Dec-12 | 6-Dec-18 |
| wwwsearssolutionsmastercard.com | 16-Oct-12 | 16-Oct-20 |
| wwwservicelive.com | 8-Oct-09 | 8-Oct-20 |
| yourbusters.com | 20-May-15 | 20-May-19 |
| yourpersonalshoppersite.com | 18-Feb-09 | 18-Feb-19 |
| yourpointsyourchoice.com | 14-Apr-10 | 14-Apr-20 |
| yoursearshomepro.com | 28-Mar-18 | 28-Mar-20 |
| attention.xxx* | 6-Dec-11 | |
| bestofblue.xxx* | 6-Dec-11 | |
| blueembrace.xxx* | 6-Dec-11 | |
| bluelight.xxx* | 6-Dec-11 | |
| bluelightspecial.xxx* | 6-Dec-11 | |
| bushwacker.xxx* | 6-Dec-11 | |
| comfortfit.xxx* | 6-Dec-11 | |
| cominghome.xxx* | 6-Dec-11 | |
| cozy-time.xxx* | 6-Dec-11 | |
| endurable.xxx* | 6-Dec-11 | |
| heroesathome.xxx* | 6-Dec-11 | |
| justkidz.xxx* | 6-Dec-11 | |
| kidsplay.xxx* | 6-Dec-11 | |
| kmart.xxx* | 6-Dec-11 | |
| nicetouch.xxx* | 6-Dec-11 | |
| passionforever.xxx* | 6-Dec-11 | |
| sears.xxx* | 6-Dec-11 | |
| texassteer.xxx* | 6-Dec-11 | |

18-23538-rdd  Doc 2507-1  Filed 02/08/19  Entered 02/08/19 16:44:32  Exhibit A
Pg 335 of 1120

| | |
|---|---|
| toolterritory.xxx* | 6-Dec-11 |
| toughskins.xxx* | 6-Dec-11 |
| trustinyourhands.xxx* | 6-Dec-11 |

*- items denoted with an asterisk are assigned solely to the extent of Sellers' right, title

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Reg Organization | Domain Name Registrar |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

18-23538-shl   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:31   Exhibit A
Pg 337 of 1220

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Holcim IP Ltd | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears, Roebuck and Co. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

18-23538-shl    Doc 2507    Filed 02/08/19    Entered 02/08/19 16:44:31    Exhibit A
Pg 1118 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | Corporation Service Company (UK) Limited |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| | |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| | |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. (legal owner) via CSC's local agent Corporation Service Company (UK) Limited (record owner) | Corporation Service Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. (legal owner) via CSC's local agent Corporation Service Company (UK) Limited (record owner) | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

18-23538-shl   Doc 9507-1   Filed 02/08/19   Entered 02/08/19 16:44:31   Exhibit A
Pg 1120 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears, Roebuck and Co. | CSC Corporate Domains, Inc. |
| Sears, Roebuck and Co. | CSC Corporate Domains, Inc. |
| Sears, Roebuck and Co. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears, Roebuck and Co. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. (legal owner) via CSC's local agent Corporation Service Company (UK) Limited (record owner) | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Global |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. (legal owner) via CSC's local agent Corporation Service Company (UK) Limited (record owner) | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| KMART of Michigan, Inc. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | |
|---|---|
| Kmart Corporation | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | Corporation Service Company |
| SEARS BRANDS, L.L.C. (legal owner) via CSC's local agent IP MIRROR (HONG KONG) LIMITED (record owner) | IP Mirror Pte. Ltd. |
| SEARS BRANDS, L.L.C. | IP Mirror Pte. Ltd. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. (legal owner) via CSC's local agent IP MIRROR (HONG KONG) LIMITED (record owner) | IP Mirror Pte. Ltd. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears Canada Inc. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears Canada Inc. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears Canada Inc. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears Canada Inc. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears Canada Inc. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

18-23538-shl    Doc 9607    Filed 02/08/19    Entered 02/08/19 16:44:34    Exhibit A
Pg 366 of 1450

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

18-23538-shl Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:31 Exhibit A
Pg 1136 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-shl    Doc 9507-1    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 136 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| | |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| | |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CRI DOMAINS |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

18-23538-shl   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 112 of 120

| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | Warsaw Data Center sp. z o.o. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains Corporation Service Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. (legal owner) via CSC's local agent Corporation Service Company (UK) Limited (record owner) | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears, Roebuck and Co. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | Corporation Service Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears Canada Inc. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears Canada Inc. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears Canada Inc. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| | |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| | |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

18-23538-shl   Doc 9507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 116 of 120

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears Canada Inc. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears Canada Inc. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears Canada Inc. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears Canada Inc. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears Canada Inc. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears Canada Inc. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

18-23538-shl   Doc 9507-1   Filed 02/08/19   Entered 02/08/19 18:45:32   Exhibit A
Pg 1146 of 1450

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| | |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears Canada Inc. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears Canada Inc. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears Canada Inc. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears Canada Inc. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Global |
| SEARS BRANDS, L.L.C. | Communigal Communication Ltd |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears Canada Inc. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears Canada Inc. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | Communigal Communication Ltd |
| SEARS BRANDS, L.L.C. | Communigal Communication Ltd |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears Canada Inc. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears Canada Inc. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears Canada Inc. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

18-23538-shl    Doc 2507    Filed 02/08/19    Entered 02/08/19 18:26:44    Exhibit A
Pg 154 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Luxottica Retail | CSC Corporate Domains, Inc. |
| | |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

18-23538-shl    Doc 9507    Filed 02/08/19    Entered 02/08/19 16:44:34    Exhibit A
Pg 1155 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears Canada Inc. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-shl Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A Pg 159 of 450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears Canada Inc. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears Canada Inc. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

18-23538-shl   Doc 2507   Filed 02/08/19   Entered 02/08/19 18:26:34   Exhibit A
Pg 1160 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | Corporation Service Company (UK) Limited |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Global |
| SEARS BRANDS, L.L.C. | Corporation Service Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

18-23538-shl Doc 9507-1 Filed 02/08/15 Entered 02/08/19 06:44:32 Exhibit A Pg 1164 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. (legal owner) via CSC's local agent Corporation Service Company (UK) Limited (record owner) | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears Canada Inc. | CSC Corporate Domains (Canada) Company |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-shl    Doc 9507-1    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 167 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM     2020L012403

| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

18-23538-shl    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 16:44:34    Exhibit A
Pg 1167 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears, Roebuck and Co. | CSC Corporate Domains, Inc. |
| Sears, Roebuck and Co. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Sears Canada Inc. | CSC Corporate Domains (Canada) Company |
| Sears, Roebuck and Co. | CSC Corporate Domains, Inc. |
| Sears, Roebuck and Co. | CSC Corporate Domains, Inc. |
| Sears, Roebuck and Co. | CSC Corporate Domains, Inc. |
| Sears, Roebuck and Co. | CSC Corporate Domains, Inc. |
| Sears, Roebuck and Co. | CSC Corporate Domains, Inc. |
| Sears, Roebuck and Co. | CSC Corporate Domains, Inc. |
| Sears, Roebuck and Co. | CSC Corporate Domains, Inc. |
| Sears, Roebuck and Co. | CSC Corporate Domains, Inc. |
| Sears, Roebuck and Co. | CSC Corporate Domains, Inc. |
| Sears, Roebuck and Co. | CSC Corporate Domains, Inc. |
| Sears, Roebuck and Co. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| | |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Footstar Corporation (Record Owner); SEARS BRAND L.L.C. (Legal Owner) | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| Kmart Corporation | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
|---|---|
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | CSC Corporate Domains, Inc. |
| SEARS BRANDS, L.L.C. | |
| SEARS BRANDS, L.L.C. | |
| SEARS BRANDS, L.L.C. | |
| SEARS BRANDS, L.L.C. | |
| SEARS BRANDS, L.L.C. | |
| SEARS BRANDS, L.L.C. | |
| SEARS BRANDS, L.L.C. | |
| SEARS BRANDS, L.L.C. | |
| Footstar Corporation (Record Owner); SEARS BRAND L.L.C. (Legal Owner) | |
| SEARS BRANDS, L.L.C. | |
| SEARS BRANDS, L.L.C. | |
| SEARS BRANDS, L.L.C. | |
| SEARS BRANDS, L.L.C. | |
| SEARS BRANDS, L.L.C. | |
| SEARS BRANDS, L.L.C. | |
| SEARS BRANDS, L.L.C. | |
| Footstar Corporation (Record Owner); SEARS BRAND L.L.C. (Legal Owner) | |

18-23538-rdd    Doc 2507    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 943 of 1120

SEARS BRANDS, L.L.C.
SEARS BRANDS, L.L.C.
SEARS BRANDS, L.L.C.

e or interest therein.  No representation or warranty is made with respect to the Domain Names der

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-shl Doc 2307-1 Filed 02/06/19 Entered 02/06/19 16:44:32 Exhibit A
Pg 974 of 1120

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Reg Country**

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

18-23538-shl    Doc 2507    Filed 02/06/19    Entered 02/06/19 16:44:31    Exhibit A
Pg 173 of 450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-rdd Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 976 of 1120

FILED DATE: 5/19/2021 1:27 PM    2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-rdd    Doc 2307    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 1175 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-rdd Doc 2307-1 Filed 02/06/19 Entered 02/06/19 16:44:31 Exhibit A
Pg 976 of 1120

FILED DATE: 5/19/2021 1:27 PM    2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

US
US
US
US
US
US
US
US
US
US

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

FILED DATE: 5/19/2021 1:27 PM    2020L012403

US
US
US
US
US
US
US
US
US
US
US

GB
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

GB
US
US
US
US
US
US
US
US
US
US
US
US
US

FILED DATE: 5/19/2021 1:27 PM   2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-rdd    Doc 2507    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 331 of 1120

FILED DATE: 5/19/2021 1:27 PM    2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-rdd   Doc 2307-1   Filed 02/06/19   Entered 02/06/19 16:44:32   Exhibit A
Pg 332 of 1120

FILED DATE: 5/19/2021 1:27 PM   2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-rdd Doc 2507-1 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A
Pg 553 of 1120
FILED DATE: 5/19/2021 1:27 PM    2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-shl Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 554 of 1120

FILED DATE: 5/19/2021 1:27 PM   2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

GB
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:31   Exhibit A
Pg 183 of 1120

FILED DATE: 5/19/2021 1:27 PM   2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

GB
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-shl    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 364 of 1120

FILED DATE: 5/19/2021 1:27 PM    2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-shl    Doc 2307    Filed 02/06/19    Entered 02/06/19 16:44:31    Exhibit A
Pg 185 of 450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
XX
US
US

18-23538-shl Doc 2307 Filed 02/08/19 Entered 02/08/19 16:44:31 Exhibit A
Pg 186 of 1120

FILED DATE: 5/19/2021 1:27 PM    2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-rdd Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:31 Exhibit A
Pg 187 of 450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

HK

US

US

HK

US

US

18-23538-rdd   Doc 2307-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 966 of 1120

FILED DATE: 5/19/2021 1:27 PM   2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:31   Exhibit A
Pg 961 of 1120

FILED DATE: 5/19/2021 1:27 PM   2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
CA
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-rdd    Doc 2507    Filed 02/08/19    Entered 02/08/19 15:44:31    Exhibit A
Pg 392 of 1120

FILED DATE: 5/19/2021 1:27 PM    2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
CA
US
US
US
US
CA
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:31 Exhibit A
Pg 391 of 1120

FILED DATE: 5/19/2021 1:27 PM    2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
CA
US
US
US
US
US
US
US
US
US
US
CA
US
US
US

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 904 of 1120

FILED DATE: 5/19/2021 1:27 PM   2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:31   Exhibit A
Pg 103 of 1120

FILED DATE: 5/19/2021 1:27 PM   2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:31   Exhibit A
Pg 596 of 1120

FILED DATE: 5/19/2021 1:27 PM   2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-rdd Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:34 Exhibit A
Pg 397 of 1120

FILED DATE: 5/19/2021 1:27 PM    2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

US
US
US
US
US
US
US
US
US
US
US

18-23538-rdd   Doc 2307-1   Filed 02/08/19   Entered 02/08/19 16:44:31   Exhibit A
Pg 186 of 1120

FILED DATE: 5/19/2021 1:27 PM   2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

US
US

18-23538-shl Doc 2507-1 Filed 02/08/19 Entered 02/08/19 15:44:32 Exhibit A
Pg 1197 of 1420

FILED DATE: 5/19/2021 1:27 PM    2020L012403

US
US
US
US
US

US

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 576 of 1120

FILED DATE: 5/19/2021 1:27 PM   2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

GB
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-rdd   Doc 2307   Filed 02/06/19   Entered 02/06/19 16:44:31   Exhibit A
Pg 171 of 1120

FILED DATE: 5/19/2021 1:27 PM   2020L012403

US
US
US
US
US
US
US
US
US
US
US
CA
US
US
CA
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
CA
US
US
US
US
US
US
US
US
US
US
US

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:31 Exhibit A
Pg 1200 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

FILED DATE: 5/19/2021 1:27 PM    2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

US
US
US
US
US
US
US
US

18-23538-shl   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:34   Exhibit A
Pg 374 of 1420

FILED DATE: 5/19/2021 1:27 PM   2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
CA
US
US
US
US
US
CA
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-shl    Doc 2507-1    Filed 02/06/19    Entered 02/06/19 16:44:32    Exhibit A
Pg 373 of 1120

FILED DATE: 5/19/2021 1:27 PM    2020L012403

US
US
US
US
US
CA
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
CA
US
US
US
US
US
CA
US
CA
US
US
US
US
US
US

FILED DATE: 5/19/2021 1:27 PM   2020L012403

US
US
US
US
US
US

US
US
US
US
US
US
US
US
US
US
CA
US
US
US
US
US
US
CA
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
CA
US
CA
US
US
US
US

FILED DATE: 5/19/2021 1:27 PM   2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-rdd    Doc 2507-1    Filed 02/08/19    Entered 02/08/19 16:44:31    Exhibit A
Pg 1206 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
CA
US
US
US
CA
US
US
US
US
US
US
US
US
US
US
US

18-23538-shl   Doc 2307   Filed 02/06/19   Entered 02/06/19 15:44:32   Exhibit A
Pg 1208 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

US
CA
US
US
US
US
US
US
US
US
US
US

US

US
US
US
US
US
US
US
US
US
US
US
US
CA
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-shl   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:31   Exhibit A
Pg 301 of 1120

FILED DATE: 5/19/2021 1:27 PM   2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
CA
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-rdd  Doc 2507  Filed 02/08/19  Entered 02/08/19 16:44:31  Exhibit A
Pg 932 of 1120

FILED DATE: 5/19/2021 1:27 PM  2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

FILED DATE: 5/19/2021 1:27 PM   2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-shl   Doc 2507   Filed 02/06/19   Entered 02/06/19 16:44:31   Exhibit A
Pg 1212 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-shl Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 933 of 1120

FILED DATE: 5/19/2021 1:27 PM   2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-shl   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:34   Exhibit A
Pg 936 of 1120

FILED DATE: 5/19/2021 1:27 PM   2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

FILED DATE: 5/19/2021 1:27 PM   2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
CA
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-rdd Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 936 of 1120

FILED DATE: 5/19/2021 1:27 PM    2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

FILED DATE: 5/19/2021 1:27 PM   2020L012403

US
US
US
US
US
US
US
US
US
US
US
CA
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
CA
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-shl   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 936 of 1120

FILED DATE: 5/19/2021 1:27 PM   2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
CA
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-rdd Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 1219 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-shl Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 931 of 1120

FILED DATE: 5/19/2021 1:27 PM    2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

GB
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-rdd    Doc 2307-1    Filed 02/06/19    Entered 02/06/19 16:44:32    Exhibit A
Pg 931 of 1120

FILED DATE: 5/19/2021 1:27 PM    2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
CA
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

FILED DATE: 5/19/2021 1:27 PM   2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-rdd Doc 2507-1 Filed 02/06/19 Entered 02/06/19 15:44:32 Exhibit A
Pg 1223 of 1420

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-rdd Doc 2307-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 1224 of 1450

FILED DATE: 5/19/2021 1:27 PM 2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

FILED DATE: 5/19/2021 1:27 PM   2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
CA
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-rdd Doc 2507-1 Filed 02/06/19 Entered 02/06/19 16:44:31 Exhibit A
Pg 1226 of 1120

FILED DATE: 5/19/2021 1:27 PM    2020L012403

US

US

US

US

US

US

US


US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

US

18-23538-shl Doc 2507-1 Filed 02/06/19 Entered 02/06/19 16:44:32 Exhibit A
Pg 1237 of 1420

FILED DATE: 5/19/2021 1:27 PM    2020L012403

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 1200 of 1450

US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US
US

US
US
US
US
US
US
US
US
US

US

18-23538-rdd   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 1229 of 1450

US
US
US


noted with an asterisk.

FILED DATE: 5/19/2021 1:27 PM   2020L012403

18-23538-rdd   Doc 2507-1   Filed 02/06/19   Entered 02/06/19 15:44:32   Exhibit A

FILED DATE: 5/19/2021 1:27 PM   2020L012403

FILED DATE: 5/19/2021 1:27 PM 2020L012403

**Schedule 2.1(q)**

**Proceeds Properties**

**INSURED: Sears Holdings Corporation**
**POLICY TERM: 6/1/17 - 6/1/18**
**DOL: 9-20-2017**
**Loss: Hurricane Maria, CAT 1745**
**VERICLAIM FILE NO.:**



| Market | Claim Number | Market % |
|--------|--------------|----------|

| Total | | 100.00% |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Schedule 2.7(a)**

**Potential Transferred Agreements**

[To be provided by Sellers within 5 Business Days of signing.]

103

18-23538-rdd    Doc 2507    Filed 02/06/19    Entered 02/06/19 16:44:32    Exhibit A

**Schedule 6.1**

**Organization and Good Standing**

1.   None.

FILED DATE: 5/19/2021 1:27 PM    2020L012403

104

<u>Schedule 6.2</u>

**Authority; Validity; Consents**

1.  Approval of the Bermuda Monetary Authority is required for Sears Reinsurance Company, Ltd. to be able to provide its consent.

2.  Sears Protection Company Florida may require approval from the Florida Insurance Company Agency.

3.  Any approval required under or related to the transfer of the Acquired Foreign Assets or the equity in any Foreign Subsidiary.

4.  Any approval required from any Governmental Authority under the following contracts:

    a.  Ecom – Illinois Department of Commerce and Economic Opportunity – Edge Tax Credit Agreement, dated as of October 26, 2012, by and between Sears Holdings Management Corporation and Illinois Department of Commerce and Economic Opportunity.

    b.  Sears Commercial – Michigan State University – 1855 Place-Sales Order, by and between Sears, Roebuck and Co. and Michigan State University.

    c.  Sears Commercial – Michigan State University – B2 & C2 Contract Rider, by and between Sears, Roebuck and Co. and Michigan State University.

    d.  Sears Commercial – Michigan State University – D1 & D2 Sales Order, by and between Sears, Roebuck and Co. and Michigan State University.

    e.  Sears Commercial – Michigan State University – 1855 Place Phase II B1 & C1 – Sales Order, by and between Sears, Roebuck and Co. and Michigan State University.

    f.  Sears Commercial – Michigan State University – A Bldg. – Sales Order, by and between Sears, Roebuck and Co. and Michigan State University.

    g.  Request for Proposals, by and between Innovel Solutions, Inc. and Navy Exchange Service Command, as amended.

    h.  Request for Proposals, by and between Sears Holdings Corporation and Navy Exchange Service Command, as amended.

    i.  Request for Proposals, by and between Sears Holdings Management Corporation and Navy Exchange Service Command, as amended.

    j.  Use and Dissemination Agreement, dated as of July 19, 2018, by and between Sears Holdings Management Corporation and New York State Division of Criminal Justice Services.

    k.  Master Lease, by and between Sears Holdings Management Corporation and Ohio Teachers Retirement.

    l.  Sales Order, by and between Sears, Roebuck and Co. and Portland Community Housing.

    m.  Agreement, by and between Sears, Roebuck and Co. and State of Illinois, Department of Transportation.

    n.  Offshore Department of Economic Development and Commerce Weatherization Assistance Program and Liheap Weatherization Assistance Program, by and between Sears, Roebuck de Puerto Rico and State Office of Energy Policy of Puerto Rico.

    o.  Sales Order, by and between Sears, Roebuck and Co. and The University of Mexico.

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

p.   Services Agreement, dated as of August 8, 2020, by and between Sears Holdings Management Corporation and United States Postal Service.

q.   2016 Sears Naming Rights Agreement, by and between Sears, Roebuck and Co. and Village of Hoffman Estates.

r.   2016 Sears Naming Rights Agreement, dated as of April 27, 2016, by and between Sears, Roebuck and Co. and Village of Hoffman Estates.

s.   Renewal Application for Lottery Retailer's License, dated as of June 22, 2016, by and between Kmart Corporation and Arizona Lottery, as amended.

t.   Arkansas Scholarship Lottery Retailer Contract, dated as of February 8, 2016, by and between Kmart Corporation and Office of the Arkansas Lottery, as amended.

u.   Delaware State Lottery Retailer Agreement, dated as of October 1, 2010, by and between Kmart Corporation and Delaware State Lottery.

v.   Retailer Contract, dated as of March 21, 2016, by and between Kmart Corporation and Florida Lottery.

w.   Retailer Contract, dated as of December 28, 1994, by and between Kmart Corporation and Georgia Lottery Corporation.

x.   Idaho Lottery Retailer Contract, dated as of November 19, 2012, by and between Kmart Corporation and Idaho State Lottery.

y.   Retailer Agreement for the Sale of Lottery Products, dated as of September 30, 2013, by and between Kmart Corporation and State Lottery Commission of Indiana.

z.   Kansas Lottery – Retailer All Games Contract, dated as of September 10, 2013, by and between Kmart Corporation and Kansas Lottery, as amended.

aa.  Kentucky Lottery Retailer License Agreement, dated as of May 19, 2017, by and between Kmart Corporation and Kentucky Lottery Corporation.

bb.  Maine State Lottery Application to Sell Lottery Tickets, dated as of June 15, 2012, by and between Kmart Corporation and Maine State Lottery, as amended.

cc.  [Retailer Lottery License], dated as of June 12, 2017, by and between Kmart Corporation and State of Michigan – Bureau of State Lottery.

dd.  Minnesota State Lottery Retailer Contract for Chain Accounts, dated as of November 15, 2016, by and between Kmart Corporation and Minnesota State Lottery.

ee.  Missouri Lottery Contract Agreement, dated as of November 7, 2016, by and between Kmart Corporation and Missouri Lottery.

ff.  Master Corporate Conditions of Licensing, dated as of December 11, 2013, by and between Kmart Corporation and Montana Lottery.

gg.  New Mexico Lottery Retailer Contract, dated as of June 12, 2015, by and between Kmart Corporation and New Mexico Lottery Authority, as amended.

hh.  New York Lottery Retailer License Agreement, dated as of September 12, 2016, by and between Kmart Operations, LLC and New York State Division of the Lottery.

ii.  North Carolina Education Lottery Retailer Agreement, dated as of May 7, 2008, by and between Kmart Corporation and North Carolina Education Lottery, as amended.

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

jj. Retailer Contract, dated as of December 18, 2003, by and between Kmart Corporation and Tennessee Lottery Corporation.

kk. Virginia Lottery Retailer Contract, dated as of March 7, 2000, by and between Kmart Corporation and Lottery Commonwealth of Virginia – State Lottery Department.

ll. Lottery Retailer Contract Terms and Conditions – Renewal Application, dated as of December 27, 2016, by and between Kmart Corporation and Wisconsin Department of Revenue – Lottery Division.

mm. Nondisclosure Agreement, dated as of August 23, 2017, by and between Sears Holding Management Corporation and United States Postal Service, as amended.

nn. 2016 Sears Naming Rights Agreement, dated as of May 9, 2016, by and between Sears, Roebuck and Co. and Village of Hoffman Estates.

oo. Use & Dissemination Agreement, dated as of August 31, 2018, by and between NYS Division of Criminal Justice Services and Sears Holdings.

pp. Edge Tax Credit Agreement, dated as of October 26, 2012, by and between the State of Illinois, acting by and through its Department of Commerce and Economic Opportunity, and Sears Holdings Management Corporation.

5. Collective Bargaining Agreement between Sears, Roebuck and Co. Detroit, MI and Teamsters Local Union No. 243 (Livonia, MI) requires that prior to the conclusion of any sale, conveyance, assignment, or transfer of operations the Employer provide the Union sixty (60) days advance written notice.

6. Collective Bargaining Agree between Sears, Roebuck and Co. and Teamsters Local Union No. 243 (Detroit, MI) requires that prior to the conclusion of any sale, transaction, conveyance, assignment, or transfer of operations the Employer provide the Union thirty (30) days advance written notice.

7. Superpriority Junior Lien Secured Debtor-in-Possession Credit Agreement, dated November 29, 2018, by and among Sears Holdings Corporation, Sears Roebuck Acceptance Corp., Kmart Corporation, the several banks, financial institutions or entities from time to time party thereto as term lenders, and Cantor Fitzgerald Securities, as administrative agent.

8. Debtor-in-Possession Guarantee and Collateral Agreement, dated November 29, 2018, by and among Sears Holdings Corporation, Sears Roebuck and Co., Sears Roebuck Acceptance Corp., Kmart Holding Corporation, Kmart Corporation and Cantor Fitzgerald Securities, as collateral agent.

9. Superpriority Senior Secured Debtor-in-Possession Asset-Based Credit Agreement, dated November 29, 2018, by and among Sears Holdings Corporation, Sears Roebuck Acceptance Corp., Kmart Corporation, the banks, financial institutions and other institutional lenders party thereto as revolving lenders or term lenders, Bank of America, N.A., as administrative agent, Wells Fargo Bank, National Association, as co-collateral agent and syndication agent, Citigroup Global Markets Inc. as documentation agent, Merrill Lynch, Pierce, Fenner & Smith Incorporation, Citibank, N.A. and Wells Fargo Bank, National Association, as joint lead arrangers and bookrunners.

10. Debtor-in-Possession Guarantee and Collateral Agreement, dated November 29, 2018, by and among Sears Holdings Corporation, Sears Roebuck and Co., Sears Roebuck Acceptance Corp.,

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

Kmart Holding Corporation, Kmart Corporation, and Bank of America, N.A. and Wells Fargo Bank, National Association, as co-collateral agents.

11. Term Loan Credit Agreement, dated January 4, 2018, by and among Sears Holdings Corporation, Sears Roebuck Acceptance Corp., Kmart Corporation, each of Sears Holdings Corporation's other direct or indirect  domestic subsidiaries that is or otherwise becomes party thereto, and JPP, LLC, as collateral agent.

12. Intellectual Property Security Agreement, dated January 4, 2018, by and between Sears Holdings Corporation, Sears Roebuck Acceptance Corp., Kmart Corporation, and each of Sears Holdings Corporations other direct or indirect domestic subsidiaries that is or otherwise becomes party thereto, and JPP, LLC, as collateral agent.

13. Certain permits may require consent for transfer to the Buyer, including, but not limited to, liquor licenses, pharmacy licenses, business licenses, contractor licenses, food retail licenses and service contract registrations.

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

## Schedule 6.3

### No Conflict

**Schedule 6.3(c)**

1. Limited Liability Company Agreement of SHC Desert Springs LLC, dated as of February 29, 2008, by Kmart Corporation, as the Member, and Sears, Roebuck and Co., as a Springing Member.

2. Limited Liability Company Operating Agreement of KCD IP, LLC, dated as of May 18, 2006, by Sears Brands, LLC, as the Member.

3. Limited Liability Company Agreement of SRC Sparrow 1 LLC, dated as of March 14, 2018, by Sears, Roebuck and Co., as the Member.

4. Limited Liability Company Agreement of SRC Sparrow 2 LLC, dated as of March 14, 2018, by SRC Sparrow 1 LLC, as the Member, Jennifer A. Schwartz, as Springing Member 1, and Ricardo Beausoleil, as Springing Member 2.

5. Limited Liability Company Agreement of SRC O.P. LLC, dated as of March 14, 2018, by SRC Sparrow 2 LLC, as the Member, Jennifer A. Schwartz, as Springing Member 1, and Ricardo Beausoleil, as Springing Member 2.

6. Limited Liability Company Agreement of SRC Facilities LLC, dated as of March 14, 2018, by SRC O.P. LLC, as the Member, Jennifer A. Schwartz, as Springing Member 1, and Ricardo Beausoleil, as Springing Member 2.

7. Limited Liability Company Agreement of SRC Real Estate (TX), LLC, dated as of March 14, 2018, by SRC Facilities LLC, as the Member, Jennifer A. Schwartz, as Springing Member 1, and Ricardo Beausoleil, as Springing Member 2.

8. Any approval required under the organizational documents of any non-U.S. Seller.

9. Certain permits may require consent for transfer to the Buyer, including, but not limited to, liquor licenses, pharmacy licenses, business licenses, contractor licenses, food retail licenses and service contract registrations.

WEIL:\96826275\11\73217.0003

18-23538-shl  Doc 2307-1  Filed 02/06/19  Entered 02/06/19 16:44:32  Exhibit A
Pg 1239 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

## Schedule 6.4

### Environmental Matters

1.  On November 7, 2018, SRC Facilities received a notice of violation of hazardous waste storage and handling requirements from the County of Sacramento concerning the location at 1601 Arden Way, Sacramento, CA.

2.  On November 1, 2018, Kmart Corporation received a notice of violation of flammable liquid storage requirements from the Western Lakes Fire District concerning the location at 1450 Summit Ave., Oconomowoc, WI.

3.  On October 18, 2018, Innovel Solutions Inc. received a notice of violation related to late annual stormwater reporting from the Santa Ana Regional Water Quality Control Board concerning the location at 5691 E. Philadelphia St., Ontario, CA.

4.  Seller or a subsidiary has reported releases at the following locations and currently is undertaking investigation, remediation or monitoring or is otherwise awaiting agency feedback on a submitted report:

| Unit | City | State | Unit Type | Project | Regulator |
|------|------|-------|-----------|---------|-----------|
| 6418 | Jacksonville | NC | Sears Roebuck and Co | Remedial action | NCDEQ |
| 1300 | Oakbrook | IL | Sears Operations LLC | Remedial action | IEPA |
| 1365 | Miami/Cutler Rdg | FL | Sears Operations LLC | Remedial action | DERM |
| 1045 | Durham-Northgate | NC | Sears Roebuck and Co | Remedial action | NCDEQ |
| 1053 | Saugus | MA | Sears Operations LLC | Remedial action | MADEP |
| 1345 | Hialeah/Westland | FL | Sears Operations LLC | Remedial action | FDEP |
| 1125 | Coral Gables | FL | Sears Roebuck and Co | Groundwater sampling - annual | DERM |
| 1248 | Hayward | CA | Sears Roebuck and Co | Groundwater sampling - annual | San Francisco Bay Regional Water Quality Control Board |

110

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 6636 | Key West | FL | Sears Roebuck and Co | Groundwater sampling - annual | FDEP |
| 6218 | Aiea Oahu | HI | Sears Roebuck and Co | Hydraulic Lifts | Hawaii Department of Health |
| 1195 | Ft Lauderdale | FL | Sears Roebuck and Co | Used Oil | FDEP |
| 6854 | Hackensack | NJ | Sears Roebuck and Co | Heating Oil | NJDEP |
| 1570 | Schaumburg | IL | SRC Facilities LLC | Gasoline | IEPA |
| 8975 | Rio Piedras | PR | Sears Roebuck De Puerto Rico, Inc | Used Oil | Puerto Rico Environmental Quality Board |
| 475 | Jacksonville | FL | Innovel Solutions, Inc | Mixed | FDEP |
| 8137 | Houston | TX | Sears Roebuck and Co | Gasoline | TCEQ PST Division |
| 3127 | Temecula | CA | Kmart | Remedial action | |
| 425 | Jacksonville | FL | Sears Roebuck and Co | Gasoline | FDEP |
| 1205 | Pompano Beach | FL | Sears Roebuck and Co | Gasoline Hydraulic lifts | |
| 3380 | Waterville | ME | Kmart | Remedial action | |
| 1328 | Las Vegas | NV | Sears Roebuck and Co | Gasoline | |
| 2065 | Brunswick | GA | Sears Roebuck and Co | Remedial action | |
| 1100 | Flint | MI | Sears Roebuck and Co | Remedial action | |
| 1106 | Jackson | MI | Sears Roebuck and Co | Remedial action | |
| 2374 | Vineland | NJ | Sears Roebuck and Co | Gasoline | |
| 1610 | Northgate | OH | Sears Roebuck and Co | Gasoline | |
| 8137 | Houston | TX | Sears Roebuck and Co | Gasoline | |
| 1077 | Shreveport | LA | Sears Roebuck and Co | Gasoline | |
| 2040 | Battle Creek | MI | Sears Roebuck and Co | | |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM   2020L012403

## Schedule 6.5

### Title to Acquired Assets

1. Schedule 1.1(j) is incorporated herein by reference.

2. The following mechanic's liens have been alleged or asserted against the Potential Acquired Assets:

| RE ID | ST | Name | Address | Detail | Lien Claim Amt |
|-------|-----|------|---------|--------|----------------|
| 108800 | CA | Glendale | 236 N Central Ave | Northstar Recovery Services, Lien | $130,158.00 |
| 384200 | CA | Oakdale | 175 Maag Avenue | Northstar Recovery Services, Lien | $7,802.56 |
| 110800 | CA | Temecula | 40710 Winchester Rd | ICE Builders, Lien | $130,158.00 |
| 472500 | FL | Key West | 2928 North Roosevelt Blvd | Simon Roofing & Sheet Metal Corp. lien | $26,558.15 |
| 130000 | IL | Oakbrook | 2 Oakbrook Ctr | NetRelevance Lien $228,939.15  Continental Electrical Construction Lien $55,547.00;  CRB Commercial Interiors, Inc. $115,934.25;  NIR Roof Care, Inc. Lien $29,210.00 | $429,630.40 |
| 305900 | MN | St. Paul | 245 E Maryland Ave | Northland Mechanical Contractors, Lien | $9,918.90 |
| 275500 | NC | Jacksonville | 344 Jacksonville Mall | Northstar Recovery Services, Lien | $29,682.98 |
| 143400 | NJ | Wayne | 50 Route 46 | Schindler Elevator Corp. Lien | $56,866.00 |
| 166800 | NV | Las Vegas (Meadows) | 4000 Meadow Ln | ICE Builders, Lien for $847,301.01; Gray ICE Builders, Lien for $7,098.88; Construction Group International, Lien for $26,466.00; Holm Electric LV LLC, Lien for $76,217.45 | $957,083.34 |
| 399300 | PR | Juana Diaz | State Rd 149&State Rd 584 | Retail Contractors of Puerto Rico; Juana Diaz, PR - Hurricane repairs; letter ceasing work until we renegotiate terms. Letter sent by | 0 |

112

18-23538-rdd  Doc 2507  Filed 02/08/19  Entered 02/08/19 16:44:32  Exhibit A
Pg 1242 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| RE ID | ST | Name | Address | Detail | Lien Claim Amt |
|---|---|---|---|---|---|
| | | | | Michael Doron, PE - Dir. of Construction[3] | |
| 157000 | IL | Schaumburg | 2 Woodfield Mall | Northstar Recovery Services, Lien | $34,493.96 |
| 472600 | NY | Jamestown | 975 Fairmount Ave | Guy Roofing Inc, Lien | $27,670.00 |
| 179500 | SC | Myrtle Beach | 1200 Coastal Grand Circle | Guy Roofing Inc, Lien | $25,440 |
| 224700 | TX | Laredo | 5300 San Dario Ave | The Brandt Companies, Lien | $10,738.50 |
| 45113 | IA | Des Moines | 1605 NE 58th Ave | Northstar Recovery Services, Lien | $52,458.71 |
| 1052 | MN | St. Paul | | Northland Mechanical Contractor's Lien | $2,237.00 |
| 1112 | MN | Minnetonka | | Northland Mechanical Contractor's Lien | $5,373.81 |
| 1137 | TX | Austin | | Northstar Recovery Services | $10,616.98 |
| 1484 | PA | Reading | | NetRelevance Mechanics Lien | $1,268.40 |
| 1668 | NV | Las Vegas (Meadows) | | Ice Builder's Mechanic's Lien | $847,301.01 |
| 1668 | NV | Las Vegas (Meadows) | | Grey Ice Builders | $7,098.88 |
| 1668 | NV | Las Vegas (Meadows) | | Construction Grp Int'l | $26,466.00 |
| 1668 | NV | Las Vegas (Meadows) | | Holm Electric LV LLC | $76,217.45 |

---

[3] Amount of claim not provided.

113

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| RE ID | ST | Name | Address | Detail | Lien Claim Amt |
|-------|-----|------|---------|--------|----------------|
| 1668 | NV | Las Vegas (Meadows) | | Ice Builders | $22,500.00 |
| 1944 | NY | Yorktown Hts | | NetRelevance Mechanics Lien | $97,640.51 |
| 1944 | NY | Yorktown Hts | | Healy Electric Contracting | $107,471.10 |
| 1944 | NY | Yorktown Hts | | Sun industrial Inc./Peter Gisondi & Co. Inc. | $44,073.93 |
| 2147 | TX | Irving | | Northstar Recovery Services Mechanics Lien | $15,307.69 |
| 2147 | TX | Irving | | The Brandt Companies, LLC | $11,899.00 |
| 2605 | PA | State College | | NetRelevance Mechanics Lien | $996.40 |
| 470 | IL | Manteno | | N.L.M.S., Inc. Mechanics Lien (Manteno Property A: #440 and #470) | $154,376.10 |
| 1032 | MN | Brooklyn Center | | Northland Mechanical Contractor's Lien | $5,372.81 |
| 1634 | FL | Jacksonville | | Northstar Recovery Services | $14,444.15 |
| 1634 | FL | Jacksonville | | Northstar Recovery Services | $52,658.79 |
| 2451 | CO | Greely | | Northstar Recovery Services | $90,409.99 |
| 2451 | CO | Greely | | Exteriors By Design Inc. | $244,475.65 |

114

FILED DATE: 5/19/2021 1:27 PM   2020L012403

## Schedule 6.6

### Real Property

### Schedule 6.6(a)

1. Schedule 6.5 is incorporated herein by reference.

2. The following is a list of tenancies applicable to the Owned Real Property:

| Store # | City | ST | Tenant Legal Entity Name | Tenant Sq. Ft | Tenant Lease Year Executed | Tenant Lease Expiration Date |
|---|---|---|---|---|---|---|
| 490 | Hoffman Estates | IL | Board of Trustees of Northern Illinois University (d/b/a Niu Parking) | N/A | 2016 | 6/30/2020 |
| 490 | Hoffman Estates | IL | Sprintcom Inc. (DBA "Sprint") | | 2000 | 11/7/2018* |
| 490 | Hoffman Estates | IL | Kum Cha Truscott (DBA "Evergreen Cleaners") | 626 | 2003 | 11/30/2018 * |
| 490 | Hoffman Estates | IL | Sears Auto Center (Atrium) | 656 | 2007 | MTM |
| 490 | Hoffman Estates | IL | Hairstylist Management Systems, Inc | 983 | 2009 | MTM |
| 490 | Hoffman Estates | IL | International Business Machines Corporation | 210 | 1999 | 12/31/2019 |
| 490 | Hoffman Estates | IL | Sedgwick Claims Management Services, Inc. | 23,350 | 2009 | 7/31/2021 |
| 490 | Hoffman Estates | IL | Hoffman Estates Latus, LLC (DBA "Sbarro") | 1,000 | 2011 | 11/30/2021 |
| 490 | Hoffman Estates | IL | Panda Express, Inc. | 1,000 | 2011 | 7/24/2021 |
| 490 | Hoffman Estates | IL | Sears Hometown & Outlet Stores, Inc. | 35,942 | 2012 | 10/31/2022 |
| 490 | Hoffman Estates | IL | The Salvation Army | | 2013 | 6/30/2099 |
| 490 | Hoffman Estates | IL | RH Tax and Financial Services d/b/a "Jackson Hewitt" | 366 | 2015 | 8/31/2020 |
| 490 | Hoffman Estates | IL | Sears Hometown & Outlet Stores, Inc. | 5,017 | 2016 | MTM |
| 490 | Hoffman Estates | IL | Squadhelp, Inc. (DBA "Leapmatrix Inc.") | 365 | 2016 | 12/31/2018 * |
| 490 | Hoffman Estates | IL | David L. Templer Insurance Agency, LLC | 462 | 2008 | 9/30/2020 |
| 490 | Hoffman Estates | IL | Bright Horizon's | 19,500 | 2017 | 8/31/2022 |

115

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Store # | City | ST | Tenant Legal Entity Name | Tenant Sq. Ft | Tenant Lease Year Executed | Tenant Lease Expiration Date |
|---|---|---|---|---|---|---|
| 490 | Hoffman Estates | IL | Fifth Third Bank | | 2017 | 12/31/2020 |
| 490 | Hoffman Estates | IL | (DBA "ST Messaging Services (formerly Skytel)") | | | MTM |
| 490 | Hoffman Estates | IL | T-Mobile | N/A | 3/1/2016 | 1/31/2021 |
| 1011 | Grandville | MI | Lands' End, Inc. | 4,621 | 2014 | 1/31/2020 |
| 1023 | Dulles/ Loudoun County | VA | Lands' End, Inc. | 9,535 | 2014 | 1/31/2019 |
| 1029 | Spokane | WA | Price Spokane Limited Partnership | | 1999 | 9/26/2040 |
| 1029 | Spokane | WA | Lands' End, Inc. | 6,049 | 2014 | 1/31/2019 |
| 1033 | North Attleboro | MA | Lands' End, Inc. | 7,609 | 2014 | 1/31/2019 |
| 1068 | Palmdale | CA | Antelope Valley Mall Developers | 983,699 | 1989 | 12/31/2059 |
| 1068 | Palmdale | CA | Metro Floors Inc. | 18,000 | 1996 | 10/31/2022 |
| 1074 | Waldorf/St Charles | MD | Lands' End, Inc. | 8,771 | 2014 | 1/31/2020 |
| 1075 | Daytona Beach | FL | Volusia Mall LLC (Developer) | | 2001 | 12/31/2018 * |
| 1110 | Portage | MI | Lands' End, Inc. | 5,178 | 2014 | 1/31/2020 |
| 1120 | Columbus | OH | Lands' End, Inc. | 8,374 | 2014 | 1/31/2020 |
| 1136 | Hoover (Birmingham) | AL | Lands' End, Inc. | 4,215 | 2014 | 1/31/2020 |
| 1155 | Kennesaw | GA | Lands' End, Inc. | 8,086 | 2014 | 1/31/2019 |
| 1171 | Springfield | MO | Lands' End, Inc. | 4,748 | 2014 | 1/31/2020 |
| 1182 | St Peters | MO | Lands' End, Inc. | 8,004 | 2014 | 1/31/2019 |
| 1187 | Mesquite | TX | Boot Barn (FKA Sheplers, Inc.) | | 1981 | 7/31/2020 |
| 1192 | Muskegon | MI | Lands' End, Inc. | 4,261 | 2014 | 1/31/2020 |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| Store # | City | ST | Tenant Legal Entity Name | Tenant Sq. Ft | Tenant Lease Year Executed | Tenant Lease Expiration Date |
|---|---|---|---|---|---|---|
| 1224 | Harrisburg | PA | Penrac, LLC (DBA "Enterprise Rent-A-Car") | 29 Parking Spaces | 2007 | 4/30/2022 |
| 1224 | Harrisburg | PA | Rare Hospitality International, Inc. c/o Darden Restaurants Inc. (DBA "Longhorn Steakhouse") | 14,132 | 2012 | 4/30/2024 |
| 1224 | Harrisburg | PA | Lands' End, Inc. | 7,435 | 2014 | 1/31/2019 |
| 1268[4] | Buena Park | CA | Newkoa, LLC | 542 Parking Spaces | 1980 | 9/30/2049 |
| 1268 | Buena Park | CA | Newkoa, LLC | | 2013 | 9/30/2019 |
| 1271 | Littleton | CO | Lands' End, Inc. | 5,885 | 2014 | 1/31/2020 |
| 1278[5] | Torrance | CA | Fourth Searsvale Properties Inc | | 1979 | |
| 1278 | Torrance | CA | Del Amo Mills LP | 87,800 | 1980 | 6/30/2049 |
| 1278 | Torrance | CA | First States Investors Realty LLC | 35,000 | 1983 | 6/30/2019 |
| 1278 | Torrance | CA | Lands' End, Inc. | 7,489 | 2014 | 1/31/2020 |
| 1285 | Orlando-South | FL | Promenade II (DBA "Florida Mall Hotel") | | 2011 | 10/31/2022 |
| 1297 | Hurst | TX | Simon Property Group (Texas) LP | 1.788 acres | 1999 | 8/2/2038 |
| 1297 | Hurst | TX | Chesapeake Exploration LLC | 10.875 acres | 2011 | 5/10/2038 |
| 1314 | New Brunswick | NJ | OTB Acquisitions | 1.56 acres | 1996 | 2/28/2023 |
| 1314 | New Brunswick | NJ | HOP New Brunswick (DBA "Houlihan's") | | 2002 | 11/30/2023 |
| 1314 | New Brunswick | NJ | Lands' End, Inc. | 7,107 | 2014 | 1/31/2020 |
| 1314 | New Brunswick | NJ | Cellco Partnership (DBA "Verizon Wireless") | 13 | 2014 | 1/31/2020 |
| 1354 | Willow Grove | PA | Lands' End, Inc. | 8,635 | 2014 | 1/31/2019 |

[4] Owned/Lease
[5] Owned/Ground Lease

117

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| Store # | City | ST | Tenant Legal Entity Name | Tenant Sq. Ft | Tenant Lease Year Executed | Tenant Lease Expiration Date |
|---|---|---|---|---|---|---|
| 1354 | Willow Grove | PA | Primark Us Corp. | 77,615 | 2014 | 10/30/2024 |
| 1364 | Lake Grove | NY | Lands' End, Inc. | 7,133 | 2014 | 1/31/2019 |
| 1407 | Beaumont | TX | Parkdale Mall | | | |
| 1443 | Manchester | CT | Lands' End, Inc. | 6,482 | 2014 | 1/31/2019 |
| 1447 | Hulen | TX | Xto Energy Inc | 14.11 acres | 2008 | 10/22/2050 |
| 1447 | Ft Worth | TX | Lands' End, Inc. | 4,387 | 2014 | 1/31/2019 |
| 1460 | Livonia | MI | Lands' End, Inc. | 5,116 | 2014 | 1/31/2020 |
| 1475 | Durham | NC | Lands' End, Inc. | 7,596 | 2014 | 1/31/2020 |
| 1570 | Schaumburg | IL | Namco entertainment Inc. (DBA "Level 257") | 41,960 | 2013 | 2/28/2025 |
| 1570 | Schaumburg | IL | Lands' End, Inc. | 6,552 | 2014 | 1/31/2020 |
| 1590 | Saginaw | MI | Central Florida Restaurants Inc | 86,876 | 2001 | 11/30/2021 |
| 1595 | Greenville | SC | Forever 21Retail, Inc. (Winter 2014) | 15,481 | 2012 | 8/31/2023 |
| 1595 | Greenville | SC | Lands' End, Inc. | 5,742 | 2014 | 1/31/2019 |
| 1605 | Raleigh | NC | Lands' End, Inc. | 7,204 | 2014 | 1/31/2019 |
| 1614 | Livingston | NJ | Lands' End, Inc. | 8,270 | 2014 | 1/31/2019 |
| 1634 | Baltimore | MD | Security Square Associates | | 1997 | 9/30/2022 |
| 1650 | Merrillville | IN | Gary Joint Venture | | 1987 | 9/17/2039 |
| 1710 | North Olmsted | OH | Steak and Ale of OH, Inc. | | | |
| 1710 | North Olmsted | OH | George Group-Great Northern Ltd (DBA "Harry Buffalo Restaurant & Lounge") | 6,342 | 2009 | 8/31/2019 |
| 1710 | North Olmsted | OH | Star-West Great Northern Mall LLC | | 2013 | 11/30/2023 |
| 1710 | North Olmsted | OH | Lands' End, Inc. | 8,789 | 2014 | 1/31/2020 |

WEIL:\96826275\11\73217.0003

18-23538-shl    Doc 2307    Filed 02/08/19    Entered 02/08/19 16:44:31    Exhibit A
Pg 1248 of 1450

| Store # | City | ST | Tenant Legal Entity Name | Tenant Sq. Ft | Tenant Lease Year Executed | Tenant Lease Expiration Date |
|---------|------|-----|--------------------------|---------------|----------------------------|------------------------------|
| 1760 | Novi | MI | Lands' End, Inc. | 8,769 | 2014 | 1/31/2019 |
| 1764 | Rockaway | NJ | Raymours Furniture Company, Inc | 38,678 | 2015 | 8/31/2026 |
| 1800 | Mishawaka | IN | Lands' End, Inc. | 5,927 | 2014 | 1/31/2020 |
| 1804 | Barboursville | WV | Lands' End, Inc. | 8,441 | 2014 | 1/31/2019 |
| 1853 | Wilmington | DE | Lands' End, Inc. | 8,415 | 2014 | 1/31/2019 |
| 1854 | Parkville | MD | Lands' End, Inc. | 7,928 | 2014 | 1/31/2020 |
| 1974 | Roanoke | VA | Cheddars Casual Café | 20,447 | 2010 | 10/31/2020 |
| 2092 | Appleton | WI | Lands' End, Inc. | 5,792 | 2014 | 1/31/2020 |
| 2183 | S Portland | ME | Maine Mall | | 1982 | |
| 2183 | S Portland | ME | OTB Acquisition LLC (DBA "On the Border #146") | 6,585 | 1999 | 11/30/2019 |
| 2183 | So Portland | ME | Lands' End, Inc. | 5,564 | 2014 | 1/31/2019 |
| 2191 | Lincoln | NE | Bair / Superior Pointe? | See docs | See docs | See docs |
| 2191 | Lincoln | NE | McDonald's Corporation | | 1981 | 8/4/2081 |
| 2191 | Lincoln | NE | A.T. Thomas Jewelers | 5,000 | 2005 | 6/30/2025 |
| 2191 | Lincoln | NE | GMRI, Inc. | 2.01 acres | 2012 | 10/31/2022 |
| 2309 | Silverdale | WA | Kitsap Mall, LLC | 1.75 acres | 1984 | 8/7/2024 |
| 2309 | Silverdale | WA | Lands' End, Inc. | 4,226 | 2014 | 1/31/2019 |
| 2497 | Brownsville | TX | CBL & Asssociates Management Inc | 119,790 | 2000 | |
| 3088 | Kenosha | WI | Albor Restaurant Group, LLC (DBA "Taco Bell") | 2,646 | 1994 | 4/30/2031 |
| 3088 | Kenosha | WI | Dollar Tree Stores, Inc #3811 | 10,520 | 2002 | 5/31/2018* |
| 3088 | Kenosha | WI | Limitless PCS, Inc. (DBA "Metro PCS") | 1,600 | 2015 | 3/3/2020 |
| 3433 | Holyoke | MA | D'Angelo's Restaurant | 1,800 | 1983 | 6/30/2024 |

119

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-shl   Doc 2507   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A

| Store # | City | ST | Tenant Legal Entity Name | Tenant Sq. Ft | Tenant Lease Year Executed | Tenant Lease Expiration Date |
|---|---|---|---|---|---|---|
| 3433 | Holyoke | MA | Taco Bell | 2,850 | 2010 | 11/30/2030 |
| 3433 | Holyoke | MA | Sears Outlet Stores, LLC | 18,012 | 2012 | 12/31/2018 * |
| 3699 | Apple Valley | CA | Blessing Nails | 800 | 1994 | 12/31/2021 |
| 3699 | Apple Valley | CA | Mina Patel d/b/a Smoke 4 Less | 800 | 2007 | 10/31/2021 |
| 3699 | Apple Valley | CA | Ye Old Tyme Barber Shoppe | 1,000 | 2006 | 9/30/2022 |
| 3722 | Burlington | WA | Payless Shoe Source, Inc. #653 | 3,600 | 1989 | 6/30/2020 |
| 3722 | Burlington | WA | Phan Thuy Anh & Nguyen Vu Tan (DBA "Hi-Tek") | 1,200 | 2008 | 6/30/2021 |
| 3722 | Burlington | WA | Rent-A-Center West, Inc. | 1,720 | 2011 | 3/31/2021 |
| 3722 | Burlington | WA | PACIFIC NW PROPERTIES I | 3,600 | 2016 | 1/31/2099 |
| 4857 | Desert Hot Springs | CA | Yucaipa Trading Co., Inc. (DBA "Rio Ranch Market") | 27,917 | 2017 | 1/31/2027 |
| 6298 | Sparks | NV | Sears Outlet Stores, LLC | 20,098 | 2012 | 12/31/2022 |
| 8702 | Minneapolis | MN | Rail Way Restoration Inc | 10,500 | 2003 | 8/31/2019 |
| 8702 | Minneapolis | MN | Oopegard Vending | 835 | 2007 | 4/30/2019 |
| 8702 | Minneapolis | MN | Sears Home Improvement Products, Inc. (Embedded) | 15,300 | | |
| 8717 | Houston | TX | Holliday Door & Gate, LLC | 12,000 | 2003 | 2/28/2019 |
| 8717 | Houston | TX | Sears Outlet Stores, LLC | 82,593 | 2012 | 12/31/2022 |
| 8755 | Tucker | GA | Sears Outlet Stores, LLC | 133,404 | 2012 | 12/31/2022 |
| 8975 | Rio Piedras | PR | Sears Outlet Stores, LLC | 36,472 | 2012 | 12/31/2022 |
| 9255 | Palmer | MA | Gil's Gym and Racquet Health Club LLC | 18,512 | 2006 | 11/30/2018 * |
| 9394 | Fajardo | PR | AutoZone Puerto Rico, Inc. | 10,530 | 2013 | 1/31/2024 |
| 1310 | Elyria | OH | Red Lobster | 59,300 | | 8/31/2027 |
| 1610 | Cincinnati Northgate | OH | Lands' End, Inc. | 5,933 | | 1/31/2019 |

120

FILED DATE: 5/19/2021 1:27 PM   2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Store # | City | ST | Tenant Legal Entity Name | Tenant Sq. Ft | Tenant Lease Year Executed | Tenant Lease Expiration Date |
|---|---|---|---|---|---|---|
| 3544 | Salem (Store Closing) | VA | West Main Hair Salon | 1,120 | | 1/31/2019 |
| 3544 | Salem (Store Closing) | VA | Sally Beauty Company, Inc. | 1,600 | | 11/30/2020 |
| 3544 | Salem (Store Closing) | VA | Ups Store | 1,600 | | 9/30/2018* |
| 3544 | Salem (Store Closing) | VA | Chick-Fil-A Inc | 33,799 | | 4/30/2022 |
| 4395 | Cudahy | WI | Sears Outlet Stores, LLC | 21,070 | | 12/31/2020 |
| 8245 | St. Petersburg | FL | Sears Outlet Stores, LLC | 58,617 | | 9/30/2022 |
| 8254 | Rochester | NY | Sears Home Improvement Products, Inc. (Embedded) | 500 | | |
| 8345 | Virginia Beach | VA | Sears Home Improvement Products, Inc. (Embedded) | 1,500 | | |
| 8935 | Rio Piedras | PR | Sears Home Improvement Products, Inc. (Embedded) | 4,813 | | |
| 26185 | Clarksville | IN | Peddlers Mall | 108,813 | | 12/31/2019 |
| 26731 | Dublin | OH | AT&T | 2,435 | | 3/31/2028 |
| 26731 | Dublin | OH | Sport Clips | 1,200 | | 4/30/2028 |
| 26731 | Dublin | OH | Starbucks | 2,050 | | 1/31/2029 |
| 26731 | Dublin | OH | Zoup! | 2,100 | | 12/31/2028 |
| 30934 | N Memphis | TN | First Tennessee Bank | 4,338 | | 1/31/2022 |
| 30961 | Grensboro | NC | National Distribution Centers, LLC | 1,546,815 | | 1/31/2022 |
| 61540 | Indianapolis | IN | Cinema Veterans LLC – Keep For Tax Tracking Purpose | 236,190 | | |
| 1012 | Des Moines | IA | ABBELL CREDIT CORPORATION | | | 11/5/28 |
| 1012 | Des Moines | IA | LAMAR COMPANY LLC | 300 | | 11/5/28 |
| 1077 | Shreveport | LA | Mall St Vincent LP | | | 12/31/24 |
| 1730 | Florence | KY | Lands' End, Inc. | 6,338 | | 1/31/19 |

121

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| Store # | City | ST | Tenant Legal Entity Name | Tenant Sq. Ft | Tenant Lease Year Executed | Tenant Lease Expiration Date |
|---------|------|----|--------------------------|---------------|----------------------------|------------------------------|
| 2290 | Michigan City | IN | First Source Bank | 40,950 | | 12/31/22 |
| 2934 | Taunton | MA | Silver City Galleria | | | 10/31/55 |
| 8217 | Ft. Worth | TX | Sears Home Improvement Products, Inc. (Embedded) | 3,500 | | |

*Recently Expired

122

3. The leases for the foregoing tenancies have been provided in the data rooms operated by the Company on the Intralinks platform.

4. The following is a list of licenses applicable to the Owned Real Property or Lease Premises

| RE ID | City | State/ Locality | SHC Format | Close Date | Active Licensed Businesses in Store |
|-------|------|-----------------|------------|------------|--------------------------------------|
| 1206 | North Little Rock | AR | Sears FLS | | Universal Vending, Avis/Budget Car Rental |
| 49028 | Tempe | AZ | Call Center | | Universal Vending |
| 49011 | Tucson | AZ | Call Center | | Universal Vending |
| 1768 | Paradise Vly | AZ | Sears FLS | 1/20/2019 | Luxottica Optical, Universal Vending |
| 1798 | Glendale | AZ | Sears FLS | | Luxottica Optical, Picture People Portrait, Universal Vending |
| 2218 | Prescott | AZ | Sears FLS | | Luxottica Optical, Universal Vending, Avis/Budget Car Rental |
| 4996 | Tucson | AZ | Kmart | 3/24/2019 | Western Union, Cardtronics ATM, Lottery, Universal Vending, NEN Amusement Vending, Distributech |
| 8253 | McClellan | CA | RTG CTR | | Universal Vending |
| 8258 | Lakewood | CA | RSVC | | Universal Vending |
| 8369 | Santa Ana | CA | RSVC | | Universal Vending removed 1/31/18 |
| 3531 | Pinole | CA | Kmart | | Western Union, Cardtronics ATM, Lottery, Universal Vending, KeyMe, Dacra Glass |
| 7165 | Camarillo | CA | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, KeyMe |
| 3834 | Burbank | CA | Kmart | 3/24/2019 | Western Union, Lottery, Universal Vending, KeyMe, Coinstar |
| 2138 | Santa Barbara | CA | Sears FLS | 1/20/2019 | Universal Vending |
| 31882 | San Diego | CA | Kmart | x/x/xx | Kmart 4290 closed |
| 1868 | Moreno Vly | CA | Sears FLS | | Luxottica Optical, Universal Vending, Avis/Budget Car Rental |
| 1968 | Palm Desert | CA | Sears FLS | | Luxottica Optical, Universal Vending |
| 1148 | Ventura | CA | Sears FLS | | Repair & Wear Watch Repair, Universal Vending |
| 1189 | West Covina | CA | Sears FLS | | Luxottica Optical, Universal Vending |
| 3501 | Paradise | CA | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending |
| 3235 | West Covina | CA | Kmart | | Universal Money ATM, Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Coinstar |

123

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| RE ID | City | State/ Locality | SHC Format | Close Date | Active Licensed Businesses in Store |
|---|---|---|---|---|---|
| 4047 | Costa Mesa | CA | Kmart | | Western Union, Universal Money ATM, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Coinstar |
| 9328 | Livermore | CA | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass, Coinstar |
| 3828 | Temecula | CA | Kmart | 1/20/2019 | Western Union, Lottery, Universal Vending, NEN Amusement Vending |
| 2728 | Downey | CA | Sears Auto Center | | Universal Vending |
| 2798 | Palm Desert | CA | Sears Auto Center | | Universal Vending |
| 3127 | Temecula | CA | Kmart | | Western Union, Universal Money ATM, Lottery, Universal Vending, NEN Amusement vending, KeyMe |
| 1221 | Chapel Hills | CO | Sears FLS | 3/24/2019 | Universal Vending, Avis/Budget Car Rental |
| 1111 | Colorado Springs | CO | Sears FLS | 3/24/2019 | Luxottica Optical, Universal Vending, Keyless Key Shop |
| 7725 | Rehoboth Beach | DE | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Avis/Budget Car Rental |
| 425 | Jacksonville | FL | RRC | | Universal Vending |
| 2315 | Jensen Bch(Stuart) | FL | Sears FLS | 1/20/2019 | Luxottica Optical, Universal Vending |
| 2145 | Port Charlotte | FL | Sears FLS | 3/24/2019 | Luxottica Optical, Universal Vending |
| 1755 | Boynton Beach | FL | Sears FLS | 1/20/2019 | Luxottica Optical, Action Time Watch Repair, Universal Vending, Avis/Budget Car Rental, iCan Health Benefits |
| 4893 | Ellenton | FL | Kmart | 3/24/2019 | Western Union, Intelicom Wireless, Cardtronics ATM, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 7321 | Bradenton | FL | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 1495 | Ft Myers | FL | Sears FLS | | Luxottica Optical, Action Time Watch Repair, Universal Vending, Avis/Budget Car Rental |
| 6820 | Boynton Beach | FL | Sears Auto Center | | Universal Vending |
| 2505 | Covington | GA | Sears FLS | 3/24/2019 | Luxottica Optical |

124

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:31 Exhibit A

| RE ID | City | State/ Locality | SHC Format | Close Date | Active Licensed Businesses in Store |
|---|---|---|---|---|---|
| 8158 | Honolulu | HI | SVC CTRL | | Universal Vending |
| 2278 | Idaho Falls | ID | Sears FLS | 1/20/2019 | Luxottica Optical, Universal Vending |
| 7289 | Steger | IL | Kmart | | Western Union, Universal Money ATM, Universal Vending, Dacra Glass |
| 3371 | Chicago | IL | Kmart | 1/20/2019 | Western Union, Universal Money ATM, Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass, Coinstar |
| 2990 | Rockford-Cherryvale | IL | Sears FLS | 3/24/2019 | Luxottica Optical, Universal Vending, Avis/Budget Car Rental |
| 1640 | Elk Grove Vlg | IL | Sears FLS | 3/24/2019 | Universal Vending |
| 2936 | Chicago | IL | Sears Auto Center | | Universal Vending |
| 9030 | Peru | IN | Kmart | 3/24/2019 | Western Union, Lottery, Universal Vending, NEN Amusement Vending |
| 1226 | Metairie | LA | Sears FLS | 3/24/2019 | Luxottica Optical, Universal Vending, Avis/Budget Car Rental |
| 4810 | Metairie | LA | Kmart | 3/24/2019 | Western Union, Cardtronics ATM, Universal Vending, NEN Amusement Vending, Dacra Glass, Coinstar |
| 3288 | Billerica | MA | Kmart | | Western Union, Cardtronics ATM, Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Coinstar |
| 1424 | Bethesda | MD | Sears FLS | 1/20/2019 | Luxottica Optical, Universal Vending, Keyless Key Shop |
| 1754 | Gaithersburg | MD | Sears FLS | | Luxottica Optical, Jackson Hewitt Tax, Universal vending, Avis/Budget Car Rental |
| 3131 | Frederick | MD | Kmart | | Western Union, Universal Vending, NEN Amusement Vending, Dcara Glass, Coinstar |
| 1773 | Prince Frederick | MD | Sears FLS | 3/24/2019 | Luxottica Optical, Picture People Portrait, Universal Vending |
| 3380 | Waterville | ME | Kmart | 1/20/2019 | Western Union, Cardtronics ATM, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 6232 | Roseville | MI | Sears Auto Center | | Universal Vending |
| 4351 | Rochester | MN | Kmart | 3/24/2019 | Western Union, Universal Money ATM, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 9353 | Crystal City | MO | Kmart | 3/24/2019 | Western Union, Lottery, Universal Vending, |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| RE ID | City | State/ Locality | SHC Format | Close Date | Active Licensed Businesses in Store |
|---|---|---|---|---|---|
| | | | | | NEN Amusement Vending, Dacra Glass |
| 2106 | Tupelo | MS | Sears FLS | 1/20/2019 | Luxottica Optical, Universal Vending |
| 9520 | Gulfport | MS | Kmart | 3/24/2019 | Western Union, Universal Vending |
| 9619 | Morehead City | NC | Kmart | 3/24/2019 | Western Union, Lottery, Universal Vending, NEN Amusement Vending |
| 1375 | Winston Salem | NC | Sears FLS | 1/20/2019 | Luxottica Optical, Universal Vending, Avis/Budget Car Rental |
| 3886 | Asheville | NC | Kmart | 3/24/2019 | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 9549 | Morganton | NC | Kmart | 3/24/2019 | Western Union, Lottery, Universal Vending, NEN Amusement Vending |
| 4022 | Grand Forks | ND | Kmart | 3/24/2019 | Western Union, Cardtronics ATM, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 9319 | Alliance | NE | Kmart | 3/24/2019 | Western Union, Universal Vending, Coinstar |
| 2421 | Grand Island | NE | Sears FLS | 1/20/2019 | Universal Vending |
| 1313 | Nashua | NH | Sears FLS | | Picture People Portrait, Universal Vending |
| 3071 | Toms River | NJ | Kmart | 3/24/2019 | Universal Money ATM, Universal Vending, NEN Amusement Vending, Distributech, Coinstar |
| 2597 | Farmington | NM | Sears FLS | | Universal Vending |
| 1668 | Las Vegas(Meadows) | NV | Sears FLS | | Luxottica Optical, Picture People Portrait, Repair & Wear Watch Repair, Universal Vending |
| 1328 | Las Vegas(Blvd) | NV | Sears FLS | 3/24/2019 | Universal Vending |
| 1828 | Las Vegas | NV | Sears FLS | 1/20/2019 | Luxottica Optical, Ignazio Lanzafame Watch Repair, Universal Vending |
| 9274 | Greenwich | NY | Kmart | 3/24/2019 | Western Union, Lottery, Universal Vending |
| 2173 | Saratoga | NY | Sears FLS | 1/20/2019 | Universal Vending |
| 2683 | Watertown | NY | Sears FLS | 1/20/2019 | Luxottica Optical, Universal Vending |
| 9381 | Huntington | NY | Kmart | 1/20/2019 | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Distributech, Coinstar |
| 1624 | Sidney | NY | Sears FLS | | Universal Vending |
| 2626 | College Point | NY | Sears Auto Center | | Universal Vending |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| RE ID | City | State/ Locality | SHC Format | Close Date | Active Licensed Businesses in Store |
|-------|------|-----------------|------------|------------|-------------------------------------|
| 2741 | Massapequa | NY | Sears Auto Center | | Universal Vending |
| 3013 | Cleveland | OH | Kmart | 3/24/2019 | Western Union, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass |
| 9096 | Fostoria | OH | Kmart | 3/24/2019 | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 3142 | Tallmadge | OH | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 1280 | Springdale | OH | Sears FLS | 8/5/2018 | Family Dental Care Associates is still temporarily operating in the closed FLS |
| 2001 | Piqua | OH | Sears FLS | 1/20/2019 | Luxottica Optical, Universal Vending |
| 3243 | North Canton | OH | Kmart | | Western Union, Cardtronics ATM, Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass |
| 3839 | Corvallis | OR | Kmart | 3/24/2019 | Western Union, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 2715 | Salem | OR | Sears Auto Center | | Universal Vending |
| 2074 | Stroudsburg | PA | Sears FLS | 1/20/2019 | Luxottica Optical, Universal Vending |
| 2494 | Altoona | PA | Sears FLS | 3/24/2019 | Luxottica Optical, Beauty Express Hair Salon, Universal Vending |
| 1484 | Reading | PA | Sears FLS | 1/20/2019 | Luxottica Optical, Universal Vending |
| 2605 | State College | PA | Sears Auto Center | | Universal Vending |
| 4113 | Erie | PA | Kmart | 3/24/2019 | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 3527 | Philadelphia | PA | Kmart | 1/20/2019 | Western Union, Universal Money ATM, Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Distributech, Dacra Glass |
| 1154 | Whitehall | PA | Sears FLS | | Luxottica Optical, Beltone Hearing, Universal Vending |
| 3361 | Allentown | PA | Kmart | 1/31/2019 | Western Union, Cardtronics ATM, Lottery, Universal Vending, N EN Amusement Vending, KeyMe, Coinstar |
| 4064 | North Versailles | PA | Kmart | 1/20/2019 | Western Union, Lottery, Universal Vending, NN Amusement Vending, KeyMe, Dacra Glass, Parking Lot (JDM Structures) |
| 7293 | Chambersburg | PA | Kmart | | Western Union, Lottery, Universal Vending, N |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| RE ID | City | State/ Locality | SHC Format | Close Date | Active Licensed Businesses in Store |
|---|---|---|---|---|---|
| | | | | | EN Amusement Vending, KeyMe, Dacra Glass, Distributech, Coinstar |
| 1834 | North Versailles | PA | Sears FLS | | Luxottica Optical, Universal Vending |
| 1935 | Mayaguez | PR | Sears FLS | | Mayaguez Optical, Hearing Aid Associates, S elect Salons Hair Salons, Universal Vending, T ravel Concepts, Avis/Budget Car Rental, Banco Popular ATM, Blanco Velez Men's Suits, Universal Sunglasses, Libreria Mundo Escovar Books |
| 3896 | San German | PR | Kmart | 1/20/2019 | Western Union, Banco Popular ATM, Universal vending, NEN Amusement Vending, Coinstar, MCS Advantage |
| 4490 | San Juan | PR | Kmart | 1/20/2019 | Western Union, Banco Popular ATM, Lottery, Universal Vending, NEN Amusement Vending, H&R Block Tax, Coinstar, Yogen Fruz, Mini Gold Watch Repair, MCS Advantage, MMM Holdings |
| 4858 | Caguas | PR | Kmart | 1/20/2019 | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Coinstar, MCS Advantage, MMM Holdings |
| 3853 | Guayama | PR | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, H&R Block Tax, Parking Lot (Auto-Lux Mobile Car Wash), MCS Advantage, Triple-S Salud, MMM Holdings |
| 7062 | Sumter | SC | Kmart | 3/24/2019 | Western Union, Cardtronics ATM, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 2807 | Rock Hill | SC | Sears FLS | 1/20/2019 | Luxottica Optical, Universal Vending, Avis/Budget Car Rental |
| 4170 | Rapid City | SD | Kmart | 3/24/2019 | Western Union, Cardtronics ATM, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 2036 | Jackson | TN | Sears FLS | 3/24/2019 | Luxottica Optical, Universal Vending |
| 9735 | Sevierville | TN | Kmart | 3/24/2019 | Western Union, Cardtronics ATM, Lottery, Universal Vending, NEN Amusement Vending |
| 2226 | Murfreesboro | TN | Sears FLS | 1/20/2019 | Universal Vending |
| 2156 | Maryville | TN | Sears FLS | 1/20/2019 | Universal Vending |
| 9507 | San Antonio | TX | MSO | | Universal Vending |
| 2557 | Longview | TX | Sears FLS | 1/20/2019 | Universal Vending |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| RE ID | City | State/Locality | SHC Format | Close Date | Active Licensed Businesses in Store |
|---|---|---|---|---|---|
| 1387 | Amarillo | TX | Sears FLS | 3/24/2019 | Universal Vending, Avis/Budget Car Rental |
| 1367 | Waco | TX | Sears FLS | 3/24/2019 | Luxottica Optical, Universal Vending |
| 2487 | Killeen | TX | Sears FLS | 3/24/2019 | Universal Vending |
| 2435 | Charlottesville | VA | Sears FLS | 3/24/2019 | Universal Vending, Avis/Budget Car Rental |
| 3750 | Waupaca | WI | Kmart | | Western Union, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 3692 | Oconomowoc | WI | Kmart | 3/24/2019 | Western Union, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass, Distributech |
| 6375 | Bridgeport | WV | Sears Auto Center | | Universal Vending |
| 1788 | Richmond | CA | Sears FLS | | Luxottica Optical, Jackson Hewitt Tax, Universal Vending |
| 1075 | Daytona Beach | FL | Sears FLS | 3/24/2019 | Luxottica Optical, Action Time Watch Repair, Universal Vending |
| 470 | Manteno | IL | CDFC | | Universal Vending |
| 2632 | Fairview Hts | IL | Sears Auto Center | 1/19/2018 | Universal Vending |
| 1475 | Durham | NC | Sears FLS | 3/24/2019 | Universal Vending |
| 1216 | Memphis/Southland | TN | Sears FLS | 1/20/2019 | Universal Vending, Avis/Budget Car Rental |
| 4395 | Cudahy | WI | Kmart | 1/20/2019 | Western Union, Cardtronics ATM, Lottery, Universal vending, NEN Amusement Vending, Dacra Glass, Distributech |
| 8217 | Ft. Worth | TX | | | Universal Vending |
| 8147 | San Antonio | TX | | | Universal Vending |
| 100700 | Brandon | FL | Sears FLS | | Luxottica Optical, Action Time Watch Repair, Universal Vending, Avis/Budget Car Rental |
| 100800 | Boyle | CA | Sears FLS | | Luxottica Optical, Picture People Portrait, H&R Block Tax, Universal Vending, Hugo Gonzalez Watch Repair |
| 101300 | Glen Burnie | MD | Sears FLS | | Luxottica Optical, Universal Vending |
| 101800 | Baldwin Hills | CA | Sears FLS | | Luxottica Optical, Universal Vending, KeyMe |
| 102400 | Falls Church | VA | Sears FLS | | Luxottica Optical, Universal Vending, KeyMe |

WEIL:\96826275\11\73217.0003

18-23538-shl   Doc 9648-7   Filed 07/13/21   Entered 07/13/21 18:26:44   Exhibit A

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| RE ID | City | State/ Locality | SHC Format | Close Date | Active Licensed Businesses in Store |
|---|---|---|---|---|---|
| 104100 | Omaha | NE | Sears FLS | 3/24/2019 | Universal Vending |
| 104200 | Joplin | MO | Sears FLS | | Universal Vending |
| 104400 | Jersey City/Newport | NJ | Sears FLS | | Luxottica Optical, Jackson Hewitt Tax, Universal Vending, KeyMe |
| 104500 | Durham-Northgate | NC | Sears FLS | | Universal Vending |
| 104800 | Pasadena | CA | Sears FLS | | Luxottica Optical, Picture People Portrait, Repair and Wear Watch Repair, Universal Vending |
| 105300 | Saugus | MA | Sears FLS | | Universal Vending, Avis/Budget Car Rental |
| 106600 | The Avenues | FL | Sears FLS | | Luxottica Optical, Nadar Zarou Watch Repair, Universal Vending |
| 107300 | Exton | PA | Sears FLS | | Universal Vending |
| 108100 | Heath | OH | Sears FLS | | Luxottica Optical, Universal Vending |
| 108500 | Caguas | PR | Sears FLS | | Hearing Associates Hearing Aids, Select Salons Hair Salon, Universal Vending, Travel Concepts, Banco Popular ATM, Universal Sunglasses, Liberia Mundo Escolar Books |
| 108800 | Glendale | CA | Sears FLS | | Luxottica Optical, Repair and Wear Watch Repair, Universal Vending |
| 109200 | Westland | MI | Sears FLS | | Luxottica Optical, Easy Method Driving School |
| 109400 | Hackensack | NJ | Sears FLS | | Universal Vending, Keyless Key Shop |
| 109700 | San Antonio | TX | Sears FLS | | Luxottica Optical, Universal Vending |
| 109800 | Clovis | CA | Sears FLS | | Luxottica Optical, Universal Vending |
| 110800 | Temecula | CA | Sears FLS | | Luxottica Optical, Universal Vending |
| 111100 | Colorado Springs | CO | Sears FLS | | Luxottica Optical, Universal Vending, Keyless Key Shop |
| 111400 | Brooklyn | NY | Sears FLS | | Luxottica Optical, Universal Vending, KeyMe (with Kmart in basement with Western Union, Lottery) |
| 112500 | Coral Gables | FL | Sears FLS | | Luxottica Optical, Action Time Watch Repair, Universal Vending, Avis/Budget Car Rental |
| 112700 | Shepherd | TX | Sears FLS | | Luxottica Optical, Universal Vending, Outside Key Shop |
| 113300 | Leominster | MA | Sears FLS | | Luxottica Optical, Universal Vending |
| 113900 | Tukwila | WA | Sears FLS | | Luxottica Optical, Universal Vending |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| RE ID | City | State/ Locality | SHC Format | Close Date | Active Licensed Businesses in Store |
|-------|------|-----------------|------------|------------|-------------------------------------|
| 114100 | Aurora | CO | Sears FLS | | Universal Vending |
| 114800 | Ventura | CA | Sears FLS | | Repair and Wear Watch Repair, Universal Vending |
| 114900 | Whittier | CA | Sears FLS | | Luxottica Optical, Beltone Hearing, Universal Vending, KeyMe |
| 115400 | Whitehall | PA | Sears FLS | | Luxottica Optical, Beltone Hearing, Universal Vending |
| 116100 | Wichita-Town East | KS | Sears FLS | 3/24/2019 | Luxottica Optical, Universal Vending, Avis/Budget Car Rental, Safelite Auto Glass |
| 116800 | No Hollywood | CA | Sears FLS | | Luxottica Optical, Universal Vending |
| 117000 | Lansing | MI | Sears FLS | | Luxottica Optical, Jackson Hewitt Tax, Universal Vending, Keyless Key Shop |
| 118900 | West Covina | CA | Sears FLS | | Luxottica Optical, Universal Vending |
| 119500 | Ft Lauderdale | FL | Sears FLS | | Action Time Watch Repair, Universal Vending |
| 120400 | Freehold | NJ | Sears FLS | | Beltone Hearing, Universal Vending |
| 120600 | North Little Rock | AR | Sears FLS | | Universal Vending, Avis/Budget Car Rental |
| 120700 | Richardson | TX | Sears FLS | 3/24/2019 | Universal Vending, SSES Driving School |
| 120800 | Fresno | CA | Sears FLS | | Repair and Wear Watch Repair, Universal Vending |
| 121000 | Polaris | OH | Sears FLS | 3/24/2019 | Luxottica Optical, Universal Vending |
| 121200 | N Riverside | IL | Sears FLS | | Luxottica Optical, Picture People Portrait, Universal Vending, KeyMe |
| 121300 | Auburn | MA | Sears FLS | | Luxottica Optical, Universal Vending |
| 122100 | Chapel Hills | CO | Sears FLS | 3/24/2019 | Universal Vending, Avis/Budget Car Rental |
| 122300 | Brockton-Westgate | MA | Sears FLS | | Universal Vending |
| 122600 | Metairie | LA | Sears FLS | 3/24/2019 | Luxottica Optical, Jackson Hewitt Tax, Universal Vending, Avis/Budget Car Rental |
| 124300 | Hanover | MA | Sears FLS | | Universal Vending |
| 124800 | Hayward | CA | Sears FLS | | Luxottica Optical, Ansari Mohsen Dental, Repair and Wear Watch Repair, Beauty Express Hair Salon, Universal Vending |
| 126800 | Buena Park | CA | Sears FLS | | Luxottica Optical, Repair and Wear Watch Repair, Universal Vending, KeyMe |
| 127400 | Chesterfield | VA | Sears FLS | | Universal Vending |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| RE ID | City | State/ Locality | SHC Format | Close Date | Active Licensed Businesses in Store |
|---|---|---|---|---|---|
| 127800 | Torrance | CA | Sears FLS | | Luxottica Optical, Picture People Portrait, Repair and Wear Watch Repair, Universal Vending, Avis/Budget Car Rental, KeyMe |
| 128300 | Braintree | MA | Sears FLS | | Luxottica Optical, Universal Vending |
| 128400 | Alexandria | VA | Sears FLS | | Universal vending, Avis/Budget Car Rental, KeyMe |
| 128800 | Stockton | CA | Sears FLS | | Luxottica Optical, Universal Vending, KeyMe |
| 129800 | Riverside | CA | Sears FLS | | Luxottica Optical, Universal Vending |
| 130000 | Oakbrook | IL | Sears FLS | | Repair and Wear Watch Repair, Universal Vending |
| 130300 | Danbury | CT | Sears FLS | | Luxottica Optical, Universal Vending |
| 130400 | Silver Spring | MD | Sears FLS | | Luxottica Optical, Picture People Portrait, Far East Watch Repair, Andy Melwani Formalwear, Avis/Budget Car Rental |
| 130900 | Downey | CA | Sears FLS | | Luxottica Optical, Avedis Ovayan Watch Repair, Universal Vending |
| 131300 | Nashua | NH | Sears FLS | | Picture People Portrait, Universal vending |
| 131700 | El Paso | TX | Sears FLS | | Luxottica Optical, Wilhemine Torres Watch Repair, Universal Vending, Distributech |
| 132800 | Las Vegas(Blvd) | NV | Sears FLS | 3/24/2019 | Universal Vending |
| 133300 | Poughkeepsie | NY | Sears FLS | | Luxottica Optical, Universal Vending |
| 133500 | Greensboro | NC | Sears FLS | | Universal Vending |
| 134500 | Hialeah/Westland | FL | Sears FLS | | Luxottica Optical, Jackson Hewitt Tax, Action Time Watch Repair, Universal Vending, Avis/Budget Car Rental |
| 135800 | Chula Vista | CA | Sears FLS | | Luxottica Optical, Repair and Wear Watch Repair, Beauty Express Hair Salon, Universal Vending |
| 136500 | Miami/Cutler Rdg | FL | Sears FLS | | Luxottica Optical, Action Time Watch Repair, Universal Vending, Avis/Budget Car Rental |
| 136700 | Waco | TX | Sears FLS | 3/24/2019 | Luxottica Optical, Universal vending |
| 136800 | Concord | CA | Sears FLS | | Luxottica Optical, Picture People Portrait, Visant Jadia Watch Repair, Universal Vending, Avis/Budget Car Rental |
| 137400 | Bel Air | MD | Sears FLS | | Luxottica Optical, Universal Vending |
| 137800 | Orange | CA | Sears FLS | | Luxottica Optical, Universal Vending |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| RE ID | City | State/Locality | SHC Format | Close Date | Active Licensed Businesses in Store |
|---|---|---|---|---|---|
| 138600 | Goodlettsville | TN | Sears FLS | 3/24/2019 | Luxottica Optical, Universal Vending |
| 138700 | Amarillo | TX | Sears FLS | 3/24/2019 | Universal Vending, Avis/Budget Car Rental |
| 139800 | San Bernardino | CA | Sears FLS | | Luxottica Optical, Universal Vending |
| 140400 | Massapequa | NY | Sears FLS | | Universal Vending |
| 141000 | Canton | OH | Sears FLS | | Luxottica Optical, HMS Salons, Universal Vending |
| 143400 | Wayne | NJ | Sears FLS | | Luxottica Optical, Beauty Express Hair Salon, Universal Vending, Avis/Budget Car Rental, Keyless Key Shop |
| 145600 | Oviedo | FL | Sears FLS | | Luxottica Optical, John Zarou Watch Repair, Universal Vending |
| 146300 | Burlington | VT | Sears FLS | | Universal Vending |
| 147800 | San Bruno | CA | Sears FLS | | Luxottica Optical, Picture People Portrait, Eddy Lim Dental, Inna Maze Watch Repair, Universal Vending, Avis/Budget Car Rental, KeyMe |
| 148800 | San Jose-Eastridge | CA | Sears FLS | | Luxottica Optical, Picture People Portrait, Roberto Paras Watch Repair, Universal Vending, Avis/Budget Car Rental, KeyMe |
| 149400 | Moorestown | NJ | Sears FLS | | Luxottica Optical, Beauty Express Hair Salon, Universal Vending |
| 149500 | Ft Myers | FL | Sears FLS | | Luxottica Optical, Action Time Watch Repair, Universal Vending, Avis/Budget Car Rental |
| 150800 | Northridge | CA | Sears FLS | | Luxottica Optical, Picture People Portrait, Repair and Wear Watch Repair, Universal Vending |
| 157800 | Aiea Oahu-Pearl Rdg | HI | Sears FLS | | Luxottica Optical, Hilo Hearing Aids, Repair and Wear Watch Repair, Bon Jon Formalwear, Universal Vending, Zippy's Restaurant, Cardtronics ATM, Hawaii Pacific Credit Union, Cingula Wireless Cell Phone Tower |
| 158500 | Tallahassee | FL | Sears FLS | 3/24/2019 | Luxottica Optical, Universal Vending |
| 162400 | Staten Island | NY | Sears FLS | | Universal Vending |
| 162900 | Pharr | TX | Sears Small Store | | Universal Vending |
| 164000 | Fairview Hts | IL | Sears FLS | 3/24/2019 | Universal Vending |
| 164400 | Lancaster | PA | Sears FLS | 3/24/2019 | Luxottica Optical, Universal Vending, Avis/Budget Car Rental |
| 165400 | Media | PA | Sears FLS | | Luxottica Optical, Universal Vending, Avis/Budget Car Rental |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| RE ID | City | State/ Locality | SHC Format | Close Date | Active Licensed Businesses in Store |
|---|---|---|---|---|---|
| 166800 | Las Vegas(Meadows) | NV | Sears FLS | | Luxottica Optical, Picture People Portrait, Repair and Wear Watch Repair, Universal Vending |
| 167400 | White Plains | NY | Sears FLS | | Beauty Express Hair Salon, Universal Vending, Nailport Nail Salon, KeyMe |
| 167800 | Carlsbad | CA | Sears FLS | | Luxottica Optical, Repair and Wear Watch Repair, Universal Vending |
| 168100 | Honolulu | HI | Sears Small Store | | Universal Vending |
| 168400 | Woodbridge | NJ | Sears FLS | | Luxottica Optical, Universal Vending |
| 168800 | Salinas | CA | Sears FLS | | Luxottica Optical, Far East Watch Repair, Universal Vending |
| 171100 | Camp Hill | PA | Sears Small Store | | Universal Vending |
| 171400 | Greensburg | PA | Sears FLS | 3/24/2019 | Luxottica Optical, Jackson Hewitt Tax, Beauty Express Hair Salon, Universal Vending, Lottery |
| 172200 | Bloomington | MN | Sears FLS | 3/24/2019 | Luxottica Optical, Universal Vending, Coffee & Tea by Lee Restaurant |
| 172500 | Annapolis | MD | Sears FLS | | Luxottica Optical, Picture People Portrait, HMS Hair Salon, Universal Vending |
| 172800 | Tucson | AZ | Sears FLS | | Picture People Portrait, Jorge Valencia Watch Repair, Universal Vending |
| 173300 | Yonkers | NY | Sears FLS | | Luxottica Optical, Picture People Portrait, Jackson Hewitt Tax, Universal Vending, KeyMe |
| 173800 | Kaneohe(Sur) | HI | Sears FLS | | Luxottica Optical, Bon Jon Formalwear, Universal Vending, Cingula Wireless Cell Phone Tower |
| 174500 | Tampa/Westshore | FL | Sears FLS | 3/24/2019 | Luxottica Optical, Universal Vending |
| 174800 | Montclair | CA | Sears FLS | | Luxottica Optical, Universal Vending, Avis/Budget Car Rental |
| 175400 | Gaithersburg | MD | Sears FLS | | Luxottica Optical, Jackson Hewitt Tax, Universal Vending, Avis/Budget Car Rental |
| 175800 | Escondido | CA | Sears FLS | | Luxottica Optical, Picture People Portrait, Universal Vending |
| 176500 | Palm Beach Gardens | FL | Sears FLS | | Luxottica Optical, Karin Krause Watch Repair, Universal Vending, iCan Health Benefits |
| 177300 | Salisbury | MD | Sears FLS | 3/24/2019 | Luxottica Optical, Picture People Portrait, Universal Vending |
| 177500 | Pembroke Pines | FL | Sears FLS | | Luxottica Optical, Action Time Watch Repair, Universal Vending, Avis/Budget Car Rental |
| 179800 | Glendale | AZ | Sears FLS | | Luxottica Optical, Picture People Portrait, Universal Vending |
| 181000 | Cincinnati-Eastgate | OH | Sears FLS | | Luxottica Optical, Family Care Dental, Universal Vending |

134

FILED DATE: 5/19/2021 1:27 PM     2020L012403

| RE ID | City | State/ Locality | SHC Format | Close Date | Active Licensed Businesses in Store |
|---|---|---|---|---|---|
| 181800 | Rancho Cucamonga | CA | Sears FLS | | Luxottica Optical, Picture People Portrait, Atanacio Enrices Watch Repair, Universal Vending |
| 183400 | North Wales | PA | Sears FLS | | Luxottica Optical, Universal Vending |
| 183800 | Burbank | CA | Sears FLS | | Luxottica Optical, Jackson Hewitt Tax, Universal Vending |
| 186800 | Moreno Vly | CA | Sears FLS | | Luxottica Optical, Universal Vending, Avis/Budget Car Rental |
| 189400 | Rochester | NY | Sears FLS | | Luxottica Optical, Avis/Budget Car Rental |
| 190500 | Hato Rey | PR | Sears FLS | | Mayaguez Optical, Hearing Associates Hearing Aids, Centro Tecnico Watch Repair, Universal Vending, Select Salons Hair Salon, Travel Concepts, Avis/Budget Car Rental, Deli Plus, Yogen Fruz, Direct Distribution, Academia des Artes Manales, Blanco Veles Suits, Mariangely Class-Arand Perez Gift Wrap, PR Teloco, Universal Sunglasses, Burger King |
| 191500 | Bayamon | PR | Sears FLS | | Mayaguez Optical, Hearing Associates Hearing Aids, Select Salons Hair Salon, Travel Concepts, BMJ Foods, Banco Popular ATM, Deli Plus, Yogen Fruz, Blanco Velez Suits, Universal Sunglasses |
| 192400 | Valley Stream | NY | Sears FLS | | Luxottica Optical, Universal Vending, KeyMe |
| 192500 | Carolina | PR | Sears FLS | | Hearing Associates Hearing Aids, Select Salons Hair Salon, Universal Vending, Travel Concepts, Banco Popular ATM, Yogen Fruz, Blanco Velez Suits, Rocketfix Mobile, Universal Sunglasses |
| 193500 | Mayaguez | PR | Sears FLS | | Mayaguez Optical, Hearing Associates Hearing Aids, Select Salons Hair Salon, Universal Vending, Travel Concepts, Avis/Budget Car Rental, Banco Popular ATM, Blanco Velez Suits, Universal Sunglasses |
| 194500 | Ponce | PR | Sears FLS | | Mayaguez Optical, Hearing Associates Hearing Aids, Select Salons Hair Salon, Universal Vending, Travel Concepts, Avis/Budget Car Rental, Yogen Fruz, Blanco Velez Suits., PR Telco, Rocketfix Mobile |
| 196800 | Palm Desert | CA | Sears FLS | | Luxottica Optical, Universal Vending |
| 198400 | Buffalo/Hamburg | NY | Sears FLS | | Luxottica Optical, Universal Vending |
| 202300 | Concord | NH | Sears FLS | | US Vision Optical, Universal Vending |
| 202700 | Wasilla | AK | Sears FLS | | Universal Vending |
| 202800 | Hemet | CA | Sears FLS | | Luxottica Optical, Universal Vending |

135

| RE ID | City | State/ Locality | SHC Format | Close Date | Active Licensed Businesses in Store |
|---|---|---|---|---|---|
| 202900 | Union Gap | WA | Sears FLS | | Universal Vending |
| 203600 | Jackson | TN | Sears FLS | 3/24/2019 | Luxottica Optical, Universal Vending |
| 204900 | Everett | WA | Sears FLS | | Luxottica Optical, Universal Vending |
| 205900 | Tracy | CA | Sears FLS | | Luxottica Optical, Universal Vending |
| 206800 | Visalia | CA | Sears FLS | | Luxottica Optical, Universal Vending, Parking Lot - Famers Market - Angela Warkenton-Wakley |
| 208500 | Fajardo | PR | Sears FLS | | Mayaguez Optical, Universal Vending, Travel Concepts |
| 208800 | Santa Maria | CA | Sears FLS | | Universal Vending |
| 210400 | St Clairsville | OH | Sears FLS | | Luxottica Optical, Ohio Valley Family Dental, Universal Vending |
| 210500 | Burlington | NC | Sears FLS | | Universal Vending |
| 211400 | Washington | PA | Sears FLS | | Luxottica Optical, Universal Vending, Avis/Budget Car Rental |
| 214500 | Port Charlotte | FL | Sears FLS | 3/24/2019 | Luxottica Optical, Universal Vending |
| 214800 | Kahului Maui(Sur) | HI | Sears FLS | | Universal Vending |
| 217900 | Medford | OR | Sears FLS | 3/24/2019 | Universal Vending |
| 220300 | Brunswick | ME | Sears FLS | | US Vision, Universal Vending |
| 221500 | Key West | FL | Sears FLS | | Luxottica Optical, Mama's Rock and Sand Garden Center |
| 221800 | Prescott | AZ | Sears FLS | | Luxottica Optical, Universal Vending, Avis/Budget Car Rental |
| 223800 | Yuba City | CA | Sears FLS | | Luxottica Optical, Universal Vending |
| 226500 | Johnson City | TN | Sears FLS | | Universal Vending |
| 232900 | Kennewick(Pasco) | WA | Sears FLS | 3/24/2019 | Universal Vending, Avis/Budget Car Rental |
| 235500 | Hatillo(Arecibo) | PR | Sears FLS | | Hearing Associates Hearing Aids, Universal Vending, Travel Concepts, Banco Popular ATM, Blanco Velez Suits, Universal Sunglasses |
| 237300 | No Dartmouth | MA | Sears FLS | | Luxottica optical, Universal Vending |
| 238800 | Hilo(Sur) | HI | Sears FLS | | Universal Vending |
| 239500 | Manassas | VA | Sears FLS | | Picture People Portrait, Universal Vending, Avis/Budget Car Rental |

136

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| RE ID | City | State/ Locality | SHC Format | Close Date | Active Licensed Businesses in Store |
|---|---|---|---|---|---|
| 242200 | Sioux City | IA | Sears FLS | 3/24/2019 | Universal Vending |
| 243500 | Charlottesville | VA | Sears FLS | 3/24/2019 | Universal Vending, Avis/Budget Car Rental |
| 248500 | Brooksville | FL | Sears FLS | | Luxottica Optical, Heavenly Jewelry on Earth Watch Repair, Universal Vending |
| 248700 | Killeen | TX | Sears FLS | 3/24/2019 | Universal Vending |
| 249400 | Altoona | PA | Sears FLS | 3/24/2019 | Luxottica Optical, Beauty Express Hair Salon, Universal Vending |
| 250500 | Gainesville | GA | Sears FLS | 3/24/2019 | Luxottica Optical |
| 252700 | Las Cruces | NM | Sears FLS | | Universal Vending, Avis/Budget Car Rental |
| 259300 | Newburgh | NY | Sears FLS | | Universal Vending |
| 259700 | Farmington | NM | Sears FLS | | Universal Vending |
| 262800 | Eureka | CA | Sears FLS | | Universal Vending |
| 263700 | Port Arthur | TX | Sears FLS | 3/24/2019 | Universal Vending |
| 266400 | Frederick | MD | Sears FLS | | Luxottica Optical, Jackson Hewitt Tax, Universal Vending, Keyless Key Shop |
| 267500 | Guayama | PR | Sears FLS | | Universal Vending |
| 269400 | Fredericksburg | VA | Sears FLS | | Universal Vending |
| 274400 | Horseheads/Elmira | NY | Sears FLS | | Luxottica Optical, Universal Vending |
| 274500 | Leesburg | FL | Sears FLS | | Luxottica Optical, Action Time Watch Repair, Universal Vending |
| 275500 | Jacksonville | NC | Sears FLS | | Luxottica Optical, Universal Vending |
| 277400 | Cumberland | MD | Sears FLS | | Luxottica Optical |
| 278400 | Winchester | VA | Sears FLS | | Universal Vending |
| 282900 | Victorville | CA | Sears FLS | | Luxottica Optical, Doribel Pleitez Watch Repair, Universal Vending |
| 299000 | Rockford-Cherryvale | IL | Sears FLS | 3/24/2019 | Luxottica Optical, Avis/Budget Car Rental |
| 301300 | Cleveland | OH | Kmart | 3/24/2019 | Western Union, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass |
| 302100 | Auburn | ME | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending |

137

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| RE ID | City | State/ Locality | SHC Format | Close Date | Active Licensed Businesses in Store |
|-------|------|-----------------|------------|------------|-------------------------------------|
| 302900 | Erlanger | KY | Kmart | | Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 304000 | Hyannis | MA | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, Coinstar |
| 305600 | Wayne | NJ | Kmart | | Western Union, ATM (Universal Money), Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass, Distributech, Coinstar |
| 305900 | St. Paul | MN | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Coinstar |
| 307100 | Toms River | NJ | Kmart | 3/24/2019 | Universal Money ATM, Universal Vending, NEN Amusement Vending, Distributech, Coinstar |
| 307400 | Miami | FL | Kmart | | Western Union, Intelicome Wireless, Lottery, Universal Vending, NEN Amusement Vending |
| 308600 | Chico | CA | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass |
| 312700 | Temple City | CA | Kmart | | Western Union, ATM (Universal Money), Lottery, Universal Vending, NEN Amusement Vending, KeyMe |
| 313100 | Frederick | MD | Kmart | | Western Union, Universal Vending, NEN Amusement Vending, Dacra Glass, Coinstar |
| 313600 | Shillington | PA | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Distributech |
| 314200 | Tallmadge | OH | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Coinstar |
| 315500 | Belleville | MI | Kmart | | Western Union, ATM (Universal Money), NEN Amusement Vending, Dacra Glass, Distributech, Coinstar |
| 317200 | Hagerstown | MD | Kmart | | ATM (Universal Money), Lottery, Universal Vending, NEN Amusement Vending, Coinstar |
| 317400 | Stockton | CA | Kmart | 3/24/2019 | Western Union, Cardtronics ATM, Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Coinstar |
| 317500 | Hooksett | NH | Kmart | | Western Union, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 320200 | Westwood | NJ | Kmart | | Western Union, ATM (Universal Money), Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass, Distributech, Coinstar |
| 321600 | Vernon | CT | Kmart | 3/24/2019 | Western Union, Cardtronics ATM, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 322500 | Chambersburg | PA | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Distributech, Euro-Tech |

138

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| RE ID | City | State/Locality | SHC Format | Close Date | Active Licensed Businesses in Store |
|---|---|---|---|---|---|
| 323500 | West Covina | CA | Kmart | | ATM (Universal Money), Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Coinstar |
| 324300 | North Canton | OH | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass |
| 325600 | Baltimore | MD | Kmart | 3/24/2019 | Western Union, Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Coinstar |
| 326600 | Edwardsville | PA | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Coinstar |
| 326800 | Wilkes-Barre | PA | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Coinstar |
| 326900 | Lantana | FL | Kmart | | Western Union, Lottery, Universal Vending, Dacra Glass, Coinstar |
| 328600 | Brunswick | OH | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass, Euro-Tech |
| 328800 | Billerica | MA | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Coinstar |
| 330100 | Santa Fe | NM | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Distributech |
| 331700 | Boca Raton | FL | Kmart | | Western Union, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass, Coinstar |
| 337900 | Waterford Twp. | MI | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass, Coinstar |
| 339000 | Williamsport | PA | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 340500 | Minneapolis | MN | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, Coinstar |
| 341200 | Salinas | CA | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, KeyMe |
| 341500 | Buffalo | NY | Kmart | | Western Union, ATM (Universal Money), Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass, Coinstar |
| 343800 | Avenel | NJ | Kmart | | Western Union, ATM (Universal Money), Universal Vending, KeyMe, Distributech, Coinstar |
| 347100 | Chesapeake | VA | Kmart | | Western Union, ATM (Universal Money), Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass, Coinstar |
| 348400 | Elkview | WV | Kmart | | Western Union, ATM (Cardtronics), Universal Vending |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM     2020L012403

| RE ID | City | State/ Locality | SHC Format | Close Date | Active Licensed Businesses in Store |
|-------|------|-----------------|------------|------------|-------------------------------------|
| 348600 | Somerville | MA | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Coinstar |
| 349900 | Kearny | NJ | Kmart | | Western Union, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass, Distributech, Coinstar |
| 350100 | Petaluma | CA | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending |
| 359200 | Las Vegas | NV | Kmart | | Western Union, Nevada Gaming, ATM (Universal Money), Universal Vending, NEN Amusement Vending, KeyMe, Distributech |
| 359700 | Holmes | PA | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass, Distributech, Coinstar |
| 366700 | Raleigh | NC | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 367800 | Ramona | CA | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending |
| 369200 | Oconomowoc | WI | Kmart | 3/24/2019 | Western Union, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass, Distributech |
| 370700 | Lake Havasu City | AZ | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Distributech, Coinstar |
| 372500 | Freedom | CA | Kmart | | Western Union, ATM (Cardtronics), Universal Vending, NEN Amusement Vending, Coinstar |
| 373700 | Doylestown | PA | Kmart | | Western Union, ATM (Universal Money), Universal Vending, NEN Amusement Vending, Dacra Glass, Coinstar |
| 374400 | Kill Devil Hills | NC | Kmart | | Western Union, ATM (Cardtronics), Universal Vending, NEN Amusement Vending |
| 374800 | Hollister | CA | Kmart | | Western Union, ATM (Cardtronics), Lottery, NEN Amusement Vending, KeyMe, Dacra Glass |
| 375000 | Waupaca | WI | Kmart | | Western Union, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 378500 | Tabb | VA | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass, Distributech |
| 379800 | Hyattsville | MD | Kmart | | Western Union, ATM (Universal Money), Universal Vending, NEN Amusement Vending, KeyMe, Coinstar, Parking Lot (CW & Sons) |
| 381000 | Willow Street | PA | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Distributech, Euro-Tech |
| 381800 | Hollywood | FL | Kmart | | Western Union, Intelicom Wireless, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Coinstar |
| 381900 | Hastings | MI | Kmart | | Western Union, ATM (Cardtronics), NEN Amusement Vending, Dacra Glass |

140

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| RE ID | City | State/ Locality | SHC Format | Close Date | Active Licensed Businesses in Store |
|-------|------|-----------------|------------|------------|--------------------------------------|
| 382900 | St. Thomas | VI | Kmart | | Western Union, Lottery, Universal Vending |
| 383400 | Burbank | CA | Kmart | 3/24/2019 | Western Union, Lottery, Universal Vending, KeyMe, Coinstar |
| 383900 | Corvallis | OR | Kmart | 3/24/2019 | Western Union, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 384100 | Marshall | MI | Kmart | | Western Union, ATM (Cardtronics), Lottery, NEN Amusement Vending, Dacra Glass |
| 384200 | Oakdale | CA | Kmart | | Western Union, ATM (Cardtronics), Universal Vending, NEN Amusement Vending |
| 385100 | Racine | WI | Kmart | | Western Union, ATM (Cardtronics), Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass, Distributech |
| 386200 | Bohemia | NY | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass, Distributech, Coinstar |
| 387300 | Wilmington | DE | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass, Distributech, Coinstar |
| 388200 | Mayaguez | PR | Kmart | | Western Union, ATM (Banco Popular), Lottery, Universal Vending, NEN Amusement Vending, Coinstar, Yogen Fruz, Travel Concepts, MCS Advantage, Triple-S Salud |
| 388600 | Asheville | NC | Kmart | 3/24/2019 | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 388800 | The Dalles | OR | Kmart | | Western Union, ATM (Cardtronics, Universal Vending, NEN Amusement Vending |
| 391100 | Columbia | PA | Kmart | | Western Union, ATM (Universal Money), Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Distributech |
| 394900 | Wind Gap | PA | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Euro-Tech |
| 395400 | Walnutport | PA | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Euro-Tech, Coinstar |
| 396300 | Elizabethtown | PA | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Distributech |
| 397200 | St. Croix | VI | Kmart | | Western Union, Lottery, Universal Vending |
| 399300 | Juana Diaz | PR | Kmart | | Western Union, ATM (Banco Popular), Lottery, Universal Vending, NEN Amusement Vending, Coinstar, MCS Advantage, Triple-S Salud |
| 401600 | Greenville | SC | Kmart | | Western Union, ATM (Cardtronics), Universal Vending, NEN Amusement Vending |
| 402200 | Grand Forks | ND | Kmart | 3/24/2019 | Western Union, Cardtronics ATM, Universal Vending, NEN Amusement Vending, Dacra Glass |

WEIL:\96826275\11\73217.0003

| RE ID | City | State/ Locality | SHC Format | Close Date | Active Licensed Businesses in Store |
|---|---|---|---|---|---|
| 403400 | Mattydale | NY | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Coinstar |
| 404700 | Costa Mesa | CA | Kmart | | Western Union, ATM (Universal Money), Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Coinstar |
| 405700 | Fargo | ND | Kmart | | Western Union, ATM (Cardtronics), Universal Vending, NEN Amusement Vending, Dacra Glass |
| 411300 | Erie | PA | Kmart | 3/24/2019 | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 414100 | West Columbia | SC | Kmart | | Western Union, Universal Vending, NEN Amusement Vending, KeyMe |
| 417000 | Rapid City | SD | Kmart | 3/24/2019 | Western Union, Cardtronics ATM, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 421400 | Des Plaines | IL | Kmart | | Western Union, Universal Vending, NEN Amusement Vending, KeyMe, Coinstar |
| 427200 | Bismarck | ND | Kmart | | Western Union, ATM (Cardtronics), Universal Vending, NEN Amusement Vending, Parking Lot (Off The Hook Seafood) |
| 429700 | Moline | IL | Kmart | 1/6/2019 | Western Union, Cardtronics ATM, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 434900 | Redwood City | CA | Kmart | | Western Union, Lottery, Universal Vending, KeyMe, Coinstar, Parking Lot (rePlanet) |
| 435100 | Rochester | MN | Kmart | 3/24/2019 | Western Union, Universal Money ATM, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 435300 | Minot | ND | Kmart | | Western Union, ATM (Cardtronics), Universal Vending, NEN Amusement Vending, Dacra Glass |
| 435500 | St. Petersburg | FL | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass, Coinstar |
| 438100 | Bridgeview | IL | Kmart | | Western Union, Universal Vending, NEN Amusement Vending, Coinstar |
| 438900 | McAllen | TX | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, Distributech, Coinstar |
| 439900 | Silver Spring | MD | Kmart | | Western Union, Universal Vending, NEN Amusement Vending, KeyMe, Coinstar |
| 440700 | Brockton | MA | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Coinstar |
| 442100 | North Hollywood | CA | Kmart | | Western Union, ATM (Universal Money), Lottery, Universal Vending, Coinstar, Parking Lot (Imperial Auto Body) |
| 444200 | Charleston | WV | Kmart | | Western Union, ATM (Cardtronics), Universal Vending, NEN Amusement Vending, Dacra Glass |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM   2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| RE ID | City | State/Locality | SHC Format | Close Date | Active Licensed Businesses in Store |
|---|---|---|---|---|---|
| 444800 | Salem | NH | Kmart | | Western Union, Universal Vending, NEN Amusement Vending, Coinstar |
| 445300 | Pueblo | CO | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Parking Lot (Ramblin Express) |
| 445700 | Hayward | CA | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Coinstar |
| 447000 | West Long Branch | NJ | Kmart | | Western Union, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass, Distributech, Coinstar |
| 447800 | Trenton | NJ | Kmart | | Western Union, Universal Vending, NEN Amusement Vending, KeyMe, Distributech, Coinstar |
| 449400 | Trujillo Alto | PR | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Coinstar, MCS Advantage, Triple-S Salud |
| 471300 | Towanda | PA | Kmart | | Western Union, ATM (Universal Money), Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 472500 | Key West | FL | Kmart | | Western Union, Intelicom Wireless, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, Coinstar |
| 472800 | Miami | FL | Kmart | | Western Union, Intelicome Wireless, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Coinstar, Restaurant (El Paraiso De Los Jugos) |
| 473200 | Aguadilla | PR | Kmart | | Western Union, AMT (Banco Popular), Lottery, Universal Vending, NEN Amusement Vending, Coinstar, MCS Advantage, Triple-S Salud |
| 475100 | Tehachapi | CA | Kmart | | Western Union, ATM (Cardtronics). Lottery, Universal Vending, NEN Amusement Vending |
| 478200 | Clinton | OK | Kmart | | Western Union, ATM (Cardtronics), NEN Amusement Vending, Dacra Glass |
| 480700 | Bear | DE | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Distributech, Coinstar |
| 481000 | Metairie | LA | Kmart | 3/24/2019 | Western Union, Cardtronics ATM, Universal Vending, NEN Amusement Vending, Coinstar |
| 481900 | Lakeport | CA | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, Coinstar |
| 484400 | Rio Piedras | PR | Kmart | | Western Union, ATM (Banco Popular), Lottery, Universal Vending, NEN Amusement Vending, Coinstar, MCS Advantage, Triple-S Salud |
| 487100 | Farmingville | NY | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass, Distributech, Coinstar, Nightingale Medical |

143

WEIL:\96826275\11\73217.0003

| RE ID | City | State/ Locality | SHC Format | Close Date | Active Licensed Businesses in Store |
|-------|------|------------------|-------------|-------------|--------------------------------------|
| 499600 | Tucson | AZ | Kmart | 3/24/2019 | Western Union, Cardtronics ATM, Lottery, Universal Vending, NEN Amusement Vending, Distributech |
| 700600 | Twin Falls | ID | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending |
| 701600 | Hobbs | NM | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending |
| 703000 | Kalispell | MT | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 703100 | Menominee | MI | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 703300 | Lewiston | ID | Kmart | | Western Union, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 703400 | Walla Walla | WA | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 703500 | Farmington | NM | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending |
| 704200 | Valparaiso | IN | Kmart | | Western Union, ATM (Universal Money), Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 704800 | West Lebanon | NH | Kmart | | Western Union, ATM (Cardtronics), NEN Amusement Vending |
| 706200 | Sumter | SC | Kmart | 3/24/2019 | Western Union, Cardtronics ATM, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 706500 | Horseheads | NY | Kmart | 3/24/2019 | Western Union, Cardtronics ATM, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 706800 | Midland | MI | Kmart | | Western Union, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 708300 | New Castle | PA | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending |
| 709800 | Concord | CA | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Coinstar |
| 710400 | Acton | MA | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 710900 | Watertown | CT | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending |
| 713300 | Augusta | ME | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 713900 | Jackson | WY | Kmart | | ATM (Cardtronics), Universal Vending |
| 716500 | Camarillo | CA | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, KeyMe |
| 717500 | Riverside | CA | Kmart | | Western Union, ATM (Universal Money), Lottery, Universal Vending, Coinstar |

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| RE ID | City | State/ Locality | SHC Format | Close Date | Active Licensed Businesses in Store |
|---|---|---|---|---|---|
| 717700 | Belleville | NJ | Kmart | | Western Union, ATM (Universal Money), Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass, Distributech, Coinstar |
| 719200 | Easton | PA | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass, Coinstar |
| 720800 | Clemmons | NC | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 724300 | Kokomo | IN | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Euro-Tech |
| 724600 | Richmond | IN | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 725500 | Somerset | KY | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 729300 | Clifton Heights | PA | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass, Distributech, Coinstar |
| 729400 | Vero Beach | FL | Kmart | | Western Union, Universal Vending, NEN Amusement Vending, Dacra Glass, Coinstar |
| 732100 | Bradenton | FL | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 732900 | Loveland | CO | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Distributech |
| 737200 | Leechburg | PA | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 737400 | West Chester | PA | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Distributech |
| 738300 | Barberton | OH | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass, Coinstar |
| 739000 | McKinleyville | CA | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending |
| 739700 | Grove City | OH | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Euro-Tech, Parking Lot (JDM Structures) |
| 741300 | Frederiksted | VI | Kmart | | Western Union, Lottery, Universal Vending |
| 741900 | Caguas | PR | Kmart | | Western Union, ATM (Banco Popular), Lottery, Universal Vending, NEN Amusement Vending, Coinstar |
| 744600 | Cayey | PR | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Coinstar, MCS Advantage, Triple-S Salud |
| 747700 | Marietta | OH | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 756600 | Arecibo | PR | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Coinstar, MCS Advantage, Triple-S Salud |

145

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| RE ID | City | State/ Locality | SHC Format | Close Date | Active Licensed Businesses in Store |
|---|---|---|---|---|---|
| 757000 | Bayamon | PR | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Coinstar, Yogen Fruz, MCS Advantage, Triple-S Salud |
| 760200 | Wall | NJ | Kmart | | Western Union, ATM (Universal Money), Universal Vending, NEN Amusement Vending, KeyMe, Distributech, Coinstar |
| 761600 | Lexington | SC | Kmart | | Western Union, NEN Amusement Vending, KeyMe, Dacra Glass |
| 761900 | Atascadero | CA | Kmart | | Western Union, Lottery, Universal Money |
| 762600 | Waynesville | NC | Kmart | | Western Union, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass |
| 763900 | Santa Paula | CA | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Coinstar |
| 764400 | Harrison | OH | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 764800 | Mauston | WI | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Coinstar |
| 764900 | Ripon | WI | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacar Glass, Coinstar |
| 765300 | Big Bear Lake | CA | Kmart | | Western Union, ATM (Universal Money), Lottery, Universal Vending, NEN Amusement Vending |
| 765400 | Bronx | NY | Kmart | | ATM (Universal Money), Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass |
| 766500 | Carolina | PR | Kmart | | Western Union, ATM (Banco Popular), Lottery, Universal Vending, NEN Amusement Vending, Coinstar, MCS Advantage, Triple-S Salud |
| 767300 | Stevensville | MD | Kmart | | Western Union, ATM (Universal Money), NEN Amusement Vending, Dacra Glass, Coinstar |
| 767600 | Sidney | NY | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 767700 | Wellsville | NY | Kmart | 3/24/2019 | Western Union, Universal Money ATM, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 769900 | Lebanon | PA | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Distributech |
| 771300 | Edgewater | MD | Kmart | | Western Union, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass, Coinstar |
| 772500 | Rehoboth Beach | DE | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Avis/Budget Car Rental |
| 774100 | Ponce | PR | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Coinstar, Parking Lot (Auto-Lux Mobile Car Wash), MCS Advantage, Triple-S Salud |
| 774900 | New York | NY | Kmart | | Western Union, ATM (Universal Money), Lottery, Universal Vending, NEN Amusement Vending |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| RE ID | City | State/ Locality | SHC Format | Close Date | Active Licensed Businesses in Store |
|---|---|---|---|---|---|
| 775200 | Yauco | PR | Kmart | | Western Union, ATM (Banco Popular), Lottery, Universal Vending, NEN Amusement Vending, Coinstar, Yogen Fruz, MCS Advantage, Triple-S Salud |
| 775600 | Bishop | CA | Kmart | | Western Union, ATM (Universal Money), Lottery, Coinstar |
| 776700 | Charles City | IA | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending |
| 776800 | Guaynabo | PR | Kmart | | Western Union, ATM (Banco Popular), Lottery, Universal Vending, NEN Amusement Vending, Coinstar, MCS Advantage, Triple-S Salud |
| 777700 | New York | NY | Kmart | | Western Union, ATM (Universal Money), Lottery, Universal Vending, NEN Amusement Vending, KeyMe |
| 778300 | Hato Rey | PR | Kmart | | Western Union, ATM (Banco Popular), Lottery, Universal Vending, NEN Amusement Vending, Coinstar, Travel Concepts, MCS Advantage, Triple-S Salud |
| 778400 | Vega Alta | PR | Kmart | | Western Union, ATM (Banco Popular), Lottery, Universal Vending, NEN Amusement Vending, Coinstar |
| 778800 | Bayamon | PR | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Coinstar, Travel Concepts, MCS Advantage, Triple-S Salud |
| 779300 | St. Thomas | VI | Kmart | | Western Union, Lottery, Universal Vending |
| 803700 | Chattanooga | TN | Repair Center | | Universal Vending |
| 820600 | Nashville | TN | SVC District | | Universal Vending |
| 870900 | Kent | WA | DDC | | Universal Vending |
| 875300 | Syosset | NY | MDO | | Universal Vending |
| 877800 | Phoenix | AZ | DOS Inventory | | Universal Vending |
| 879000 | Cleveland | OH | MDO | | Universal Vending |
| 881500 | Sunrise | FL | MDO | | Universal Vending |
| 882300 | Dulles | VA | MDO | | Universal Vending |
| 882500 | Winter Park | FL | MDO | | Universal Vending |
| 887100 | Romeoville | IL | DDC | | Universal Vending |
| 887300 | Gouldsboro | PA | DDC | | Universal Vending |
| 889500 | Tampa | FL | MDO | | Universal Vending |
| 897000 | Las Vegas | NV | Mixload | | Universal Vending |
| 903000 | Peru | IN | Kmart | 3/24/2019 | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |

147

| RE ID | City | State/ Locality | SHC Format | Close Date | Active Licensed Businesses in Store |
|---|---|---|---|---|---|
| 909600 | Fostoria | OH | Kmart | 3/24/2019 | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 912200 | Warsaw | IN | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 912400 | Elwood | IN | Kmart | | Western Union, ATM (Universal Money), Lottery, Universal Vending, NEN Amusement Vending, Euro-Tech |
| 915300 | South Lake Tahoe | CA | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement, Distributech |
| 916100 | Berwick | PA | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 922000 | Algona | IA | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Coinstar |
| 922400 | Marathon | FL | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending |
| 927400 | Greenwich | NY | Kmart | 3/24/2019 | Western Union, Lottery, Universal Vending |
| 931900 | Alliance | NE | Kmart | 3/24/2019 | Western Union, Universal vending, Coinstar |
| 932800 | Long Beach | CA | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass, Coinstar |
| 935300 | Crystal City | MO | Kmart | 3/24/2019 | Western Union, Lottery, Universal Vending, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 941300 | West Orange | NJ | Kmart | | Western Union, ATM (Universal Money), Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass, Distributech, Coinstar |
| 941400 | Yorktown Heights | NY | Kmart | | Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Coinstar |
| 941600 | White Plains | NY | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, KeyMe, Dacra Glass |
| 942000 | Bronx | NY | Kmart | | Western Union, ATM (Universal Money), Lottery, Universal Vending, NEN Amusement Vending, KeyMe |
| 942300 | Bridgehampton | NY | Kmart | | Lottery, Universal Vending, KeyMe |
| 946300 | Somers Point | NJ | Kmart | | Western Union, Universal Vending, NEN Amusement Vending, Dacra Glass, Distributech |
| 952000 | Gulfport | MS | Kmart | 3/24/2019 | Western Union, Universal Vending |
| 954900 | Morganton | NC | Kmart | 3/24/2019 | Western Union, Lottery, Universal Vending, NEN Amusement Vending |
| 955100 | Paradise | CA | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending |
| 955700 | Grayling | MI | Kmart | | Western Union, ATM (Cardtronics), NEN Amusement Vending |
| 958900 | Bath | NY | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM

2020L012403

| RE ID | City | State/ Locality | SHC Format | Close Date | Active Licensed Businesses in Store |
|-------|------|-----------------|------------|------------|-------------------------------------|
| 959300 | Oscoda | MI | Kmart | | Western Union, ATM (Cardtronics), Universal Vending, NEN Amusement Vending |
| 960800 | Auburn | CA | Kmart | 3/24/2019 | Western Union, Cardtronics ATM, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass |
| 961400 | Key Largo | FL | Kmart | | Western Union, Intelicom Wireless, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, Coinstar |
| 961900 | Morehead City | NC | Kmart | 3/24/2019 | Western Union, Lottery, Universal Vending, NEN Amusement Vending |
| 962100 | Lebanon | TN | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Distributech |
| 966200 | Ephrata | PA | Kmart | | Western Union, ATM (Universal Money), Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Distributech |
| 968900 | International Falls | MN | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Coinstar |
| 969200 | Webster | MA | Kmart | | Western Union, ATM (Cardtronics), Lottery, Universal Vending, NEN Amusement Vending, Dacra Glass, Coinstar |
| 969300 | Marine City | MI | Kmart | | Western Union, Universal Vending, NEN Amusement Vending |
| 973500 | Sevierville | TN | Kmart | 3/24/2019 | Western Union, Cardtronics ATM, Lottery, Universal Vending, NEN Amusement Vending |
| 974600 | Grass Valley | CA | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending |
| 979400 | St. George | UT | Kmart | | Western Union, Universal Vending, NEN Amusement |
| 979700 | Scotts Valley | CA | Kmart | | Western Union, Lottery, Universal Vending, KeyMe |
| 980800 | Hamilton | MT | Kmart | | Western Union, Lottery, Universal Vending, NEN Amusement Vending |
| 7871400 | Secaucus | NJ | MDO | | Universal Vending |
| 8877600 | Olive Branch | MS | DDC | | Universal Vending |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM      2020L012403

**Schedule 6.6(b)**

1.  The following condemnation matters are pending with respect to the Owned Real Property:

| RE ID | ST | Name | Address | Detail |
|---|---|---|---|---|
| 157000 | IL | Schaumburg | 2 Woodfield Mall | There is a threatened condemnation at Schaumburg IL S#1570. Permanent ROW and TCE for road widening. |
| 117100 | MO | Springfield | 2825 S Glenstone Ave | Road widening – ROW and TCE. |
| 171000 | OH | No Olmsted | 5000 Great Northern Mall | City needs easement to complete traffic signal and pedestrian signal improvements. |
| 2374 | NJ | Vineland | 8 W. Landis Avenue | Sewer authority requested easement and deposited $6,808.02 with court for value of easement. On 10/03/18, authority increased offer to $8K. |
| 9676 | OH | Streetsboro | 9059 State Route 14 | City threatening taking for highway improvement and offered $9,405 for value of taking. Buyer has been informed of taking. |
| 116500 | NC | Concord | 1480 Concord Pkwy N | Sears not a named party to condemnation action as rights are with mall developer per Declaration. Sears to determine if it wants to pursue an inverse condemnation action. |
| 1012 | IA | De Moines | | Taking of 1,848 square feet does not appear to affect or owned or leased parcels. |
| 2677 | LA | Bossier City | | Sewer right of way acquisition (condemnation). |
| 1077 | LA | Shreveport | | City needing permanent and temporary servitude re upgrading and replacement of sewer line. City is under consent decree with federal government to complete the project. |
| 2374 | NJ | Vineland | | Potential condemnation by the local Landis Sewer Authority |

WEIL:\96826275\11\73217.0003

| RE ID | ST | Name | Address | Detail |
|---|---|---|---|---|
| 1012 | IA | | | Eminent domain action.  Sears receipted a notice of appraisement of damages and time for appeal. |

2.   The following litigation matters are pending or threatened with respect to the Owned Real Property:

| RE ID | STATE | CITY | ADDRESS | DESCRIPTION |
|---|---|---|---|---|
| | CA | Arden | | [Potential] Claim by mall owner that attempts to sell violate his ROFR |
| 02374 | NJ | Viceland | | Sears, Roebuck and Co. v. (Commercial Development Company) |
| 09676 | OH | Streetsboro | | Sears, Roebuck and Co. v. City of Streetsboro |
| 44900 | CA | Delano | Delano Industrial Park | Kmart Corporation v. Marketing & Printing Solutions Inc. |
| 485700 | CA | Desert Hot Springs | 14011 Palm Drive | [Potential] |
| 184000 | IL | Chicago Ridge | 6501 95th St | Sears, Roebuck and Co. v. DentalCare Partners, Inc., et al. |
| 157000 | IL | Schaumburg | 2  Woodfield Mall | Sears, Roebuck and Co. v. DentalCare Partners, Inc., et al. |
| 182000 | IL | West Dundee | 5000 Spring Hill Mall | Sears, Roebuck and Co. v. DentalCare Partners, Inc., et al. |
| 146000 | MI | Livonia | 29500 7 Mile Rd | Sears, Roebuck and Co. v. DentalCare Partners, Inc., et al. |
| 176000 | MI | Novi | 27600 Novi Rd | Sears, Roebuck and Co. v. DentalCare Partners, Inc., et al. |
| 116500 | NC | Concord | 1480 Concord Pkwy N | Department of Transportation v. Carolina Mall, LLC, et al. |
| 112000 | OH | Dublin | 5053 Tuttle Crossing Blvd | Sears, Roebuck and Co. v. DentalCare Partners, Inc., et al. |
| 171000 | OH | North Olmsted | 5000 Great Northern Mall | Sears, Roebuck and Co. v. DentalCare Partners, Inc., et al. |
| 1155 | GA | Kennesaw | 400 Ernest W Barrett Pkwy Nw | Claimant: Cathy Dunham |
| 3088 | WI | Kenosha | 4100 52Nd St | Claimant: Scott Carter |
| 1650 | IN | Merriville | 2300 Southlake Mall | Claimant: Rosemarie Ksiazek |

151

3.   The following listing is of pending property claims, for damages to buildings and FF&E, at the Owned Real Property:

| Unit | Address | Loss City | Loss State | Property Group | 10K Owned / L/GL | Date of Loss | Claim Property: Claim Property Number | Estimated Loss to Building and FF&E |
|------|---------|-----------|------------|----------------|------------------|--------------|---------------------------------------|--------------------------------------|
| 01027 | | El Paso | TX | | | 9/6/2018 | P1809065106 | 600,000 |
| 01315 | | Chattanooga | TN | | | 12/28/2018 | P1812285002 | 1,000 |
| 01224 | 4600 Jonestown Road | Harrisburg | PA | Open Store | Owned | 11/11/2018 | P18111250690001 | 2,500 |
| 03853 | Puerto Rico Hwy 3 | Guayama | PR | Open Store | Owned | 9/21/2017 | P17092250390001 | 5,493,436 |
| 02191 | 6400 O Street | Lincoln | NE | Open Store | Owned | 11/24/2018 | P18112650090001 | 5,000 |
| 02191 | 6400 O Street | Lincoln | NE | Open Store | Owned | 11/21/2018 | P18112650080001 | 1,000 |
| 02515 | 1940 U.S. Highway 70 SE | Hickory | NC | Open Store | Owned | 11/26/2018 | P18112650350001 | 1,000 |
| 01590 | 4900 Fashion Square Mall | Saginaw | MI | Open Store | Owned | 11/14/2018 | P18111450170001 | 500 |
| 04206 | 2000 Ten Mile Road | Warren | MI | Open Store | Owned | 9/20/2018 | P18092050810001 | 500 |
| 03368 | 1625 West Redlands | Redlands | CA | Open Store | Owned | 11/7/2018 | P18110850780001 | 0 |
| 45056 a/k/a 8975 | Road #176 KM 0.5 Cupey Bajo | Rio Piedras | PR | Non-Retail | Owned | 9/21/2017 | P17092150880001 | 1,100,000 |
| 01314 | 51 U.S. Highway 1 | New Brunswick | NJ | Open Store | Owned | 9/9/2018 | P18090950440001 | 1,000 |
| 45056 a/k/a 8975 | Road #176 KM 0.5 Cupey Bajo | Rio Piedras | PR | Non-Retail | Owned | 10/16/2017 | P17101650110001 | 0 |
| 01377 | 7925 Fm 1960 Road West | Houston | TX | Open Store | Owned | 11/3/2018 | P18110350160001 | 5,000 |
| 08292 | 655 West 52nd Avenue | Ocala | FL | Non-Retail | Owned | 9/12/2017 | P17091550250001 | 120,000 |
| 01075 | 1700 West International Speedway Boulevard | Daytona Beach | FL | Open Store | Owned | 9/10/2017 | P17100650940001 | 4,500 |
| 01217 | 1305 Airline Road | Corpus Christi | TX | Open Store | Owned | 10/19/2018 | P18101950020001 | 25,000 |

152

FILED DATE: 5/19/2021 1:27 PM   2020L012403

FILED DATE: 5/19/2021 1:27 PM 2020L012403

| Unit | Address | Loss City | Loss State | Property Group | 10K Owned / L/GL | Date of Loss | Claim Property: Claim Property Number | Estimated Loss to Building and FF&E |
|---|---|---|---|---|---|---|---|---|
| 01027 | | El Paso | TX | | | 9/6/2018 | P1809065106 | 600,000 |
| 01315 | | Chattanooga | TN | | | 12/28/2018 | P1812285002 | 1,000 |
| 01364 | 4 Smith Haven Mall | Lake Grove | NY | Open Store | Owned | 7/16/2018 | P18071750770001 | |
| 01175 | 777 E. Merritt Island Causeway | Merritt Island | FL | Open Store | Owned | 9/12/2017 | P17091250280001 | 20,000 |

4. The following are alleged unresolved code violations with respect to the Potential Acquired Assets:

| Unit | Address | City | State | Comment |
|---|---|---|---|---|
| 1018 | 3755 Santa Rosalia Dr | Baldwin Hills | CA | Fire code issues related to Reg 4/Threatened default by LL |
| 1674 | 100 Main St | White Plains | NY | Notice of Violation/Escalator/Elevator not operable. |
| 3711 | 1550 S. Burlington Blvd | Burlington | WA | Numerous fire code violations |
| 49027 | | Round Rock | TX | Inspection deficiencies in Fire alarm; repairs currently scheduled. |
| 68235 | | Phoenix | AZ | Citation/City of Phoenix - Pending dismissal from AZ Court/no fines, violations have been cleared. |

5. The following issues affect the status of Owned Real Property

| Store | Unit # | City | State | Status |
|---|---|---|---|---|
| MDO | 8975 | Rio Piedras | PR | 2 year Co-Occupancy License Agreement being granted to Service.com upon SHIP APA Closing |

**Schedule 6.6(c)**

1. Seller has made available leases and security deposit documents in Intralinks.

2. The following is a list of tenancies applicable to the Lease Premises.

153

| Store # | City | ST | Tenant Legal Entity Name | Tenant Sq. Ft | Tenant Lease Year Executed | Tenant Lease Expiration Date |
|---|---|---|---|---|---|---|
| 1013 | Glen Burnie | MD | Lands' End, Inc. | 8,050 | 2014 | 1/31/2020 |
| 1024 | Falls Church | VA | Bill Page Imports, Inc. | 200 Parking Spaces | 2014 | 9/30/2020 |
| 1024 | Falls Church | VA | Lands' End, Inc. | 7,472 | 2014 | 1/31/2020 |
| 1044 | Jersey Cty/Newport | NJ | Lands' End, Inc. | 5,411 | 2014 | 1/31/2020 |
| 1048 | Pasadena | CA | FR Hastings Ranch, LLC | | 1984 | 4/29/2024 |
| 1048 | Pasadena | CA | HomeGoods, Inc. | 28,113 | 2012 | 4/29/2024 |
| 1048 | Pasadena | CA | Lands' End, Inc. | 7,168 | 2014 | 1/31/2020 |
| 1053 | Saugus | MA | Lands' End, Inc. | 5,565 | 2014 | 1/31/2020 |
| 1073 | Exton | PA | Lands' End, Inc. | 9,039 | 2014 | 10/5/2019 |
| 1088 | Glendale | CA | Star Parking Management, Inc. | | 2015 | 4/30/2021 |
| 1092 | Westland(Detroit) | MI | Auto Accessories USA | 15,324 | 2018 | 4/30/2022 |
| 1094 | Hackensack | NJ | ALDI Inc (Pennsylvania) | 55,718 | 2014 | 5/31/2032 |
| 1111 | Colorado Spgs | CO | Univest-Btc S&R LLC | | 2004 | 11/30/2025 |
| 1125 | Miami | FL | Goodwill Industries Of South Florida | 208 | 2014 | 2/28/2019 |
| 1133 | Leominster | MA | Lands' End, Inc. | 7,483 | 2014 | 1/31/2020 |
| 1139 | Tukwila | WA | Lands' End, Inc. | 7,216 | 2014 | 1/31/2020 |
| 1148 | Ventura | CA | Lands' End, Inc. | 6,691 | 2014 | 1/31/2020 |
| 1154 | Whitehall | PA | Lands' End, Inc. | 7,401 | 2014 | 1/31/2020 |
| 1170 | Lansing | MI | Lands' End, Inc. | 9,553 | 2014 | 11/30/2019 |
| 1195 | Ft Lauderdale | FL | Greenstar Corp | 26,000 | 1954 | 2/28/2026 |
| 1210 | Columbus/Polaris | OH | Lands' End, Inc. | 6,611 | 2014 | 1/31/2020 |
| 1213 | Auburn | MA | Lands' End, Inc. | 7,269 | 2014 | 1/31/2019 |

154

FILED DATE: 5/19/2021 1:27 PM   2020L012403

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| Store # | City | ST | Tenant Legal Entity Name | Tenant Sq. Ft | Tenant Lease Year Executed | Tenant Lease Expiration Date |
|---|---|---|---|---|---|---|
| 1221 | Colorado Springs | CO | Lands' End, Inc. | 5,076 | 2014 | 1/31/2019 |
| 1243 | Hanover | MA | Lands' End, Inc. | 11,168 | 2014 | 1/31/2019 |
| 1248 | Hayward | CA | Wells Fargo Bank | 4,247 | 1975 | 10/1/2018 |
| 1248 | Hayward | CA | Sears Outlet Stores, LLC | 48,434 | 2012 | 1/31/2022 |
| 1268[6] | Buena Park | CA | Newkoa, LLC | 542 Parking Spaces | 1980 | 9/30/2049 |
| 1268 | Buena Park | CA | Newkoa, LLC | | 2013 | 9/30/2019 |
| 1274 | Richmond/Chesterfield | VA | Lands' End, Inc. | 7,551 | 2014 | 1/31/2020 |
| 1278[7] | Torrance | CA | Fourth Searsvale Properties Inc | | 1979 | |
| 1278 | Torrance | CA | Del Amo Mills LP | 87,800 | 1980 | 6/30/2049 |
| 1278 | Torrance | CA | First States Investors Realty LLC | 35,000 | 1983 | 6/30/2019 |
| 1278 | Torrance | CA | Lands' End, Inc. | 7,489 | 2014 | 1/31/2020 |
| 1283 | Braintree | MA | Lands' End, Inc. | 8,694 | 2014 | 1/31/2020 |
| 1283 | Braintree | MA | Primark Us Corp. | 70,816 | 2014 | 11/30/2024 |
| 1284 | Alexandria | VA | Lands' End, Inc. | 9,608 | 2014 | 1/31/2020 |
| 1288 | Stockton | CA | Weberstown Mall LLC | 3,480 | 1985 | 1/31/2023 |
| 1304 | Silver Spring | MD | Lands' End, Inc. | 4,973 | 2014 | 1/31/2019 |
| 1309 | Downey | CA | Macerich Stonewood LLC | | 2002 | 1/31/2051 |
| 1313 | Nashua | NH | Lands' End, Inc. | 7,573 | 2014 | 1/31/2019 |
| 1317 | El Paso | TX | Celina Development Company | 3,856 | 1981 | 6/30/2020 |
| 1333 | Poughkeepsie | NY | Lands' End, Inc. | 5,523 | 2014 | 1/31/2019 |

[6] Owned/Lease
[7] Owned/Ground Lease

155

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| Store # | City | ST | Tenant Legal Entity Name | Tenant Sq. Ft | Tenant Lease Year Executed | Tenant Lease Expiration Date |
|---|---|---|---|---|---|---|
| 1335 | Greensboro | NC | Chick-Fil-A Inc | 54,450 | 2001 | 1/31/2023 |
| 1335 | Greensboro | NC | Whole Foods Market Inc. | 34,364 | 2010 | 1/31/2028 |
| 1335 | Greensboro | NC | Lands' End, Inc. | 5,856 | 2014 | 1/31/2020 |
| 1368 | Concord | CA | Thomas A Morabito Trustee & Francis J Morabito, Trustee of the Morabito Family Trust Dated 4-14-88 | 18,000 | 1985 | 10/30/2061 |
| 1368 | Concord | CA | Sun Valley Associates | | 2005 | 10/19/2026 |
| 1368 | Concord | CA | Lands' End, Inc. | 9,947 | 2014 | 1/31/2019 |
| 1374 | Bel Air | MD | Macy's, Inc. | 24,599 | 2003 | 9/30/2021 |
| 1374 | Bel Air | MD | Lands' End, Inc. | 6,517 | 2014 | 1/31/2020 |
| 1378 | Orange | CA | The Village at Orange, LLC | 28,600 | 1993 | 5/31/2024 |
| 1378 | Orange | CA | 24 Hour Fitness USA Inc. | 54,462 | 2011 | 2/29/2024 |
| 1378 | Orange | CA | Lutheran High School of Orange County | 100 Parking Spaces | 2012 | 6/30/2019 |
| 1404 | Massapequa | NY | Lands' End, Inc. | 6,997 | 2014 | 1/31/2020 |
| 1463 | Burlington | VT | Lands' End, Inc. | 7,315 | 2014 | 1/31/2020 |
| 1478 | San Bruno | CA | Lands' End, Inc. | 8,698 | 2014 | 1/31/2019 |
| 1494 | Moorestown | NJ | Lands' End, Inc. | 8,126 | 2014 | 1/31/2020 |
| 1644 | Lancaster | PA | Lands' End, Inc. | 8,635 | 2014 | 1/31/2020 |
| 1654 | Media | PA | Lands' End, Inc. | 8,919 | 2014 | 1/31/2020 |
| 1654 | Media | PA | Granite Run Buick GMC | | 2017 | 12/31/2018 |
| 1684 | Woodbridge | NJ | Cellco Partnership | 8,070 | 1987 | 7/31/2021 |
| 1722 | Bloomington | MN | Lands' End, Inc. | 8,564 | 2014 | 1/31/2020 |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM     2020L012403

| Store # | City | ST | Tenant Legal Entity Name | Tenant Sq. Ft | Tenant Lease Year Executed | Tenant Lease Expiration Date |
|---|---|---|---|---|---|---|
| 1725 | Annapolis | MD | Lands' End, Inc. | 8,588 | 2014 | 1/31/2019 |
| 1733 | Yonkers | NY | Lands' End, Inc. | 6,664 | 2014 | 1/31/2020 |
| 1754 | Gaithersburg | MD | Lands' End, Inc. | 8,839 | 2014 | 1/31/2020 |
| 1754 | Gaithersburg | MD | Sears Home Improvement Products, Inc. (Embedded) | 10,000 | | |
| 1810 | Cincinnati | OH | Lands' End, Inc. | 8,305 | 2014 | 1/31/2020 |
| 1834 | North Wales | PA | Lands' End, Inc. | 9,819 | 2014 | 1/31/2020 |
| 1984 | Buffalo/Hamburg | NY | Lands' End, Inc. | 8,118 | 2014 | 1/31/2019 |
| 2023 | Concord | NH | Lands' End, Inc. | 6,718 | 2014 | 1/31/2019 |
| 2027 | Wasilla | AK | Lands' End, Inc. | 7,063 | 2014 | 1/31/2019 |
| 2049 | Everett | WA | Brixton Everett, LLC | | 2008 | 12/31/2018 |
| 2049 | Everett | WA | Brixton Everett, LLC | | 2015 | 6/30/2019 |
| 2085 | Fajardo | PR | Sears, Roebuck de Puerto Rico, Inc. | 24,536 | 1986 | 9/30/2023 |
| 2373 | No Dartmouth | MA | Lands' End, Inc. | 4,076 | 2014 | 1/31/2019 |
| 2395 | Manassas | VA | Lands' End, Inc. | 7,407 | 2014 | 6/14/2019 |
| 2435 | Charlottesville | VA | Lands' End, Inc. | 6,125 | 2014 | 1/31/2020 |
| 2694 | Fredericksburg | VA | Lands' End, Inc. | 5,347 | 2014 | 1/31/2020 |
| 3029 | Erlanger | KY | Sinkula Investments, Ltd. | 3,500 | 1984 | 10/31/2022 |
| 3029 | Erlanger | KY | EDGEWOOD PLAZA HOLDINGS, LLC | | | 11/30/2022 |
| 3040 | Hyannis | MA | The Paper Store, LLC | | 2017 | 3/31/2023 |
| 3074 | Miami | FL | Split rent for AmFoods | | 0 | 6/30/2022 |
| 3074 | Miami | FL | AmFoods LLLC | 2,430 | 1987 | 6/30/2022 |
| 3127 | Temple City | CA | H. Demirjian, Inc. | 5,151 | 2014 | 11/30/2022 |

157

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Store # | City | ST | Tenant Legal Entity Name | Tenant Sq. Ft | Tenant Lease Year Executed | Tenant Lease Expiration Date |
|---|---|---|---|---|---|---|
| 3136 | Shillington | PA | Amelia's LLC | | 2013 | 7/31/2019 |
| 3172 | Hagerstown | MD | Fazou's Restaurant | 3,246 | 2000 | 9/30/2019 |
| 3235 | West Covina | CA | Sears Outlet Stores, LLC | 17,310 | 2012 | 4/20/2022 |
| 3235 | West Covina | CA | Filza Khan | 3,400 | 2015 | 3/31/2022 |
| 3286 | Brunswick | OH | GREF II REIT,LLC | | 0 | 12/31/2019 |
| 3286 | Brunswick | OH | Jud's Best Discount Muffler & Brake, Inc. | 3,035 | 2010 | 3/30/2020 |
| 3379 | Waterford | MI | Lou Dallo | 3,701 | 2008 | 2/28/2021 |
| 3412 | Salinas | CA | Rexfor Title, Inc. | | 2013 | 1/31/2034 |
| 3471 | Chesapeake | VA | Sears Outlet Stores, LLC | 33,137 | 2012 | 10/31/2020 |
| 3499 | Kearny | NJ | Modell's NJ II., Inc. | | 2013 | 4/30/2021 |
| 3725 | Watsonville/Freedom | CA | Dora M. Espindola (DBA "Designing Cut") | 1,050 | 1994 | 6/30/2018 |
| 3725 | Watsonville/Freedom | CA | Advance America, Cash Advance Centers of California LLC | 1,400 | 1998 | 1/31/2021 |
| 3725 | Watsonville/Freedom | CA | Foodmaker, Inc. (DBA "Jack in the Box") | 2,800 | 1998 | 7/30/2019 |
| 3725 | Watsonville/Freedom | CA | Louis Hong D.D.S (DBA "Freedom Dental") | 1,750 | 2000 | 7/31/2020 |
| 3725 | Watsonville/Freedom | CA | Richard E. Turner and Joanne K. Turner (DBA "The 99 Cent Store") | 2,800 | 2007 | 10/31/2018 |
| 3725 | Watsonville/Freedom | CA | Tina Dang (DBA "D&L Nails") | 1,366 | 2007 | 1/31/2021 |
| 3725 | Watsonville/Freedom | CA | Hein Thuy le and Hoa Le (DBA "Whispering Pines Dry Cleaners") | 1,200 | 2014 | 2/28/2019 |
| 3725 | Watsonville/Freedom | CA | Split rent for The 99 Cent Store | | | 10/31/2018 |
| 3748 | Hollister | CA | Crystal TV, Inc. / Radio Shack Licensed Dealer | 2,300 | 2007 | 3/31/2020 |

158

FILED DATE: 5/19/2021 1:27 PM     2020L012403

| Store # | City | ST | Tenant Legal Entity Name | Tenant Sq. Ft | Tenant Lease Year Executed | Tenant Lease Expiration Date |
|---|---|---|---|---|---|---|
| 3748 | Hollister | CA | VIP Wireless, Inc., MetroPCS Authorized Dealer | 2,800 | 2016 | 10/21/2020 |
| 3785 | Tabb | VA | Chick-Fil-A Inc. | 54,860 | 2000 | 3/31/2021 |
| 3785 | Tabb | VA | Kroger Limited Partnership I | 92,348 | 2014 | 9/30/2033 |
| 3785 | Tabb | VA | Kroger Limited Partnership I | 37,650 | 2014 | 9/30/2033 |
| 3785 | Tabb | VA | Restaurant Property Investors II LLC c/o Burger Busters Inc. (DBA "Taco Bell") | 38,768 | 2015 | 9/30/2033 |
| 4022 | Grand Forks | ND | Hometown Automotive Repair LLC | 4,620 | 2010 | 8/31/2019 |
| 4057 | Fargo | ND | NDM Restaurants (DBA "Burger King") | 5,000 | 1976 | 6/30/2018 |
| 4057 | Fargo | ND | Dakota Tire Service, Inc | 4,000 | 2004 | 3/31/2019 |
| 4113 | Erie | PA | Erie Physicians Network ~ UPMC, Inc | 7,760 | 2008 | 11/30/2020 |
| 4170 | Rapid City | SD | MTS Enterprises LLC (DBA "Tiretech") | 2,914 | 2010 | 2/28/2019 |
| 4214 | Des Plaines | IL | (DBA "Eddies Restaurant CO") | 3,205 | 1988 | 7/31/2022 |
| 4214 | Des Plaines | IL | The Twins Group, Inc. (DBA "Taco Bell") | | 1988 | 10/31/2018 |
| 4214 | Des Plaines | IL | (DBA "Quick Service Auto") | 4,192 | 2008 | 11/30/2022 |
| 4214 | Des Plaines | IL | Split rent w/ ML for Eddie's Restaurant Co.- Lasalle Bank Na Trust #54625 D | | | 7/31/2022 |
| 4272 | Bismarck | ND | McDonalds Corp. | 5,000 | 1984 | 8/20/2020 |
| 4272 | Bismarck | ND | Split rent for Mc Donald's | | | 10/31/2019 |
| 4351 | Rochester | MN | Salvation Army | 20,000 | 2004 | 11/30/2020 |
| 4381 | Bridgeview | IL | Sears Outlet Stores, LLC | 11,576 | 2012 | 1/31/2021 |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Store # | City | ST | Tenant Legal Entity Name | Tenant Sq. Ft | Tenant Lease Year Executed | Tenant Lease Expiration Date |
|---|---|---|---|---|---|---|
| 4389 | Mc Allen | TX | Big Lots Stores Inc #01544B | 22,755 | 2000 | 11/30/2019 |
| 4399 | Silver Springs | MD | DavCo Food, Inc. (DBA "Wendy's) | 2,453 | 1990 | 10/31/2018 |
| 4421 | North Hollywood | CA | Successor in interest to Pic N Save (DBA "Big Lots Stores Inc.") | 20,000 | 1970 | 3/31/2021 |
| 4421 | North Hollywood | CA | Paul Jardin of USA, Inc. (DBA "3 Day Suit Broker") | 11,000 | 1986 | 3/30/2021 |
| 4478 | Trenton/Hamilton | NJ | Brixmor Operating Partnership | | | 6/30/2020 |
| 4494 | Trujillo Alto | PR | RD Management Corporation | 4,100 | 1985 | 5/31/2024 |
| 7030 | Kalispell | MT | Burger King Corporation | 4,000 | 1999 | 5/5/2020 |
| 7030 | Kalispell | MT | Split Rent for Burger King Sublease | | 1999 | 5/5/2020 |
| 7030 | Kalispell | MT | Evergreen Chamber of Commerce | | 2013 | 7/31/2019 |
| 7033 | Lewiston | ID | Split rent for Wendy's outlot | | 0 | 2/28/2015 |
| 7033 | Lewiston | ID | Dale F. Nagy/Picadilly Investment Properties (DBA "Wendy's) | 3,000 | 1984 | 2/28/2015 |
| 7042 | Valparaiso | IN | BR Associates Inc (DBA "Long John Silver Seafood Shoppes") | 35,875 | 1977 | 12/31/2018 |
| 7783 | San Juan (Hato Rey) | PR | Marketing & Printing Solutions, Inc. | 695 | 2010 | 11/30/2018 |
| 8206 | Nashville | TN | Sears Outlet Stores, LLC | 70,227 | 2012 | 12/31/2022 |
| 8262 | Naperville | IL | Dart Warehouse Corporation | | 2011 | 12/31/2020 |
| 8273 | Lawrence | KS | (DBA "Berry Plastics Corporation") | 100 Parking Spaces | 2013 | 10/15/2018 |
| 8724 | Pittsburgh | PA | Sears Outlet Stores, LLC | 44,215 | 2012 | 12/31/2022 |
| 8744 | Allentown | PA | Fedex Ground Package System Inc | 50 Trailers | 2015 | 1/31/2019 |

WEIL:\96826275\11\73217.0003

| Store # | City | ST | Tenant Legal Entity Name | Tenant Sq. Ft | Tenant Lease Year Executed | Tenant Lease Expiration Date |
|---|---|---|---|---|---|---|
| 8768 | Sacramento | CA | Sears Outlet Stores, LLC | 43,063 | 2012 | 12/31/2018 |
| 8818 | Pearl City | HI | Bethany Korean United Methodist Church | 9,096 | 2011 | 4/30/2021 |
| 8818 | Pearl City | HI | Sears Outlet Stores, LLC | 28,978 | 2012 | 12/31/2022 |
| 8937 | Tucson | AZ | Sims Recycling Solutions Inc. | 6,000 | 2012 | 12/31/2020 |
| 9413 | West Orange | NJ | Dollar Tree Stores, Inc. #3811 | 10,280 | 1981 | 1/31/2022 |
| 9413 | West Orange | NJ | Eyeglass Service Industries, Inc. | 800 | 1981 | 10/31/2014 |
| 9413 | West Orange | NJ | Staples, Inc. #0168 | 19,740 | 1988 | 2/28/2017 |
| 9420 | Bronx | NY | David's Check Cashing, Inc. | 722 | 2008 | 11/20/2018 |
| 9420 | Bronx | NY | G-Maxx Home of Bruckner, LLC | 5,138 | 2009 | 10/31/2014 |
| 9420 | Bronx | NY | Sears, Roebuck and Co. | 2,736 | 2018 | 11/30/2023 |
| 9420 | Bronx | NY | Burlington Coat Factory of California LLC | | 2018 | |
| 9423 | Bridgehampton | NY | Lands' End, Inc. | | 2014 | 1/31/2016 |
| 9693 | Marine City | MI | Frank Koehldorfer (DBA "Marine City Auto Care") | 3,216 | 2010 | 2/28/2019 |
| 1280 | Springdale | OH | Tri-County Mall LLC | 4,316 | | 7/31/2024 |
| 2138 | Santa Barbara | CA | Sprint PCS Assets, LLC | | | 6/30/2019 |
| 3018 | Valencia | CA | Magic Auto Center | 4,406 | | 3/30/2022 |
| 3018 | Valencia | CA | McDonalds Corp L/C 004-1368 | 5,000 | | 5/31/2022 |
| 3018 | Valencia | CA | Simply Discount Furniture | 79,699 | | 5/31/2022 |
| 3116 | Wilmington (Store Closing) | NC | Jack A. Sneeden Corporation | 5,604 | | 6/30/2023 |
| 3239 | Kansas City | MO | Zeller Auto Repair | 4,201 | | 8/31/2020 |
| 3239 | Kansas City | MO | Advance America | 1,480 | | 1/31/2020 |

161

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| Store # | City | ST | Tenant Legal Entity Name | Tenant Sq. Ft | Tenant Lease Year Executed | Tenant Lease Expiration Date |
|---|---|---|---|---|---|---|
| 3239 | Kansas City | MO | Barbers Plus | 1,600 | | 12/31/2018* |
| 3239 | Kansas City | MO | H & R Block | 2,400 | | 4/30/2019 |
| 3239 | Kansas City | MO | Big Bowl Pho | 2,400 | | 4/30/2022 |
| 3239 | Kansas City | MO | Papa John's | 2,000 | | 6/30/2021 |
| 3239 | Kansas City | MO | Tasty Thai | 2,000 | | 3/31/2020 |
| 3361 | Allentown | PA | Floreff LLC & Nathan & Alison LLC | | | 5/31/2023 |
| 3371 | Chicago | IL | AGC Addison Owner, LLC | | | 4/1/2019 |
| 3447 | Clive | IA | At Home Stores, LLC | 90,000 | | 1/31/2021 |
| 3483 | Ontario | CA | Wolf Family Series LP | 11,000 | | 5/31/2020 |
| 3793 | Miami | FL | Goodwill | 208 | | 9/30/2019 |
| 4064 | N Versailles | PA | Burger King Corporation | 2,750 | | 11/24/2020 |
| 4215 | Kansas City | KS | Xiao Jun Song and Liu Y Lin | 11,408 | | 1/31/2019 |
| 4433 | Quincy | IL | Gengenbacher Ice Shack | | | 10/31/2018* |
| 4450 | Raleigh | NC | Choice Auto Repair | 4,581 | | 9/30/2021 |
| 4450 | Raleigh | NC | Grand Slam USA | 20,000 | | 9/30/2021 |
| 4455 | Beaverton | OR | Glowing Greens, LLC | 20,000 | | 7/31/2018 |
| 4455 | Beaverton | OR | Beaverton Mart Company | | | 8/31/2022 |
| 4455 | Beaverton | OR | Carr Auto Group | | | 4/30/2019 |
| 7067 | Ft. Meyers | FL | Floor & Decor | 75,200 | | 8/31/2026 |
| 7259 | Williamsburg | VA | New Oriental Crafts, LLC | 3,200 | | 10/31/2019 |
| 7259 | Williamsburg | VA | H & R Block | 1,600 | | 4/30/2019 |
| 7259 | Williamsburg | VA | International Styles | 1,200 | | 9/30/2019 |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| Store # | City | ST | Tenant Legal Entity Name | Tenant Sq. Ft | Tenant Lease Year Executed | Tenant Lease Expiration Date |
|---|---|---|---|---|---|---|
| 7259 | Williamsburg | VA | New Oriental Crafts, LLC | 2,000 | | 10/31/2019 |
| 7259 | Williamsburg | VA | Tu Tienda and Gifts | 5,160 | | 8/30/2019 |
| 7259 | Williamsburg | VA | Williamsburg Peking Corp | 9,560 | | 9/30/2019 |
| 7274 | Mauldin | SC | Mauldin at Butler, LLC (Hughes Development) | | | 3/31/2019 |
| 7324 | O'Fallon | MO | At Home Stores, LLC | 87,314 | | 11/29/2020 |
| 8065 | Miami | FL | Miami Hotel Enterprise LLC | 50 Parking Spaces | | 11/14/2019 |
| 8065 | Miami | FL | Sears Home Improvement Products, Inc. (Embedded) | 1,000 | | |
| 8398 | San Jose | CA | Beacon Sales Acquisition, Inc. | 37,500 | | 10/31/2023 |
| 9348 | Norridge | IL | Darden/Longhorn Steakhouse | | | 3/31/2021 |
| 9354 | Griffin | IN | El Centro Mall, Ltd. | | | |
| 30936 | Tinley Park | IL | Bettenhausen Automotive | 250 Parking Spaces | | 8/6/2018* |
| 30936 | Tinley Park | IL | Ziegler Nissan of Orland Park | 250 Parking Spaces | | 3/20/2019 |
| 30938 | Glendale | AZ | Living Spaces | 126,164 | | 4/30/2024 |
| 30969 | San Leandro | CA | Living Spaces | 91,905 | | 11/30/2022 |
| 31882 | San Diego | CA | Lucky Star Seafood Restaurant | 11,000 | | 4/30/2019 |
| 31882 | San Diego | CA | Northgate Gonzalez Markets | 41,371 | | 7/31/2023 |
| 31882 | San Diego | CA | Burlington Coat Factory | 63,900 | | 2/28/2025 |
| 61901 | Scottsdale | AZ | Living Spaces Furniture, LLC | 133,120 | | 9/30/2024 |
| 62529 | San Diego | CA | Zion Market San Diego Inc. | 94,500 | | 12/31/2023 |
| 62707 | Springfield | MO | David's Bridal Inc | 12,370 | | 1/31/2019 |

163

2. The following is a list of security deposits applicable to the:

### A. Owned Real Property

| PS Unit# | Lease | City | State | Landlord/Tenant name | Paid (Received) Amount |
|---|---|---|---|---|---|
| Sears | | | | | |
| | | | | | |
| 3966 | 29976 | APPLE VALLEY | CA | VIRGINIA BARNICOAT AND DAVID B | (1,166.67) |
| 3966 | 33059 | APPLE VALLEY | CA | MINA PATEL DBA APPLE VALLEY SM | (1,806.00) |
| 3966 | 35548 | APPLE VALLEY | CA | DIEM HONG NGO | (340.00) |
| 3966 | 35548 | APPLE VALLEY | CA | DIEM HONG NGO | (525.85) |
| 01314 | 01314 01C | NEW BRUNSWICK | NJ | NEW BRUNSWICK RESTAURANT LLC | (21,666.66) |
| 01710 | 01710 01C | NORTH OLMSTED | OH | GEORGE GROUP - GREAT NORTHERN LTD, AN OHIO LTD | (22,183.98) |
| 02183 | 02183 01B | S PORTLAND | ME | OTB ACQUISITION LLC | (22,500.00) |
| 45115 | 08702 43A | MINNEAPOLIS | MN | BEAUPRE AERIAL EQUIPMENT | (3,333.00) |
| 45162 | 08717 48D | HOUSTON | TX | HOLLIDAY DOOR & GATE LLC | (3,500.00) |
| 26731 | 26731 08B | MANAKIN SABOT | VA | SAWYER BUSINESS GROUP INC | (3,585.00) |
| | | | | | |
| Kmart | | | | | |
| 3088 | 36116 | KENOSHA | WI | METRO PCS | (1,800.00) |
| 3722 | 35477 | BURLINGTON | WA | RENT-A-CENTER WEST, INC. | (3,734.13) |
| 3722 | 35457 | BURLINGTON | WA | HI-TEK NAILS | (4,234.00) |
| 9255 | 34822 | PALMER | MA | GIL'S GYM AND RACQUET HEALTH C | (14,997.75) |
| 26185 | 35269 | CLARKSVILLE | IN | PEDDLERS MALL, LLC | (19,000.00) |
| 3544 | 35422 | SALEM | VA | WEST MAIN HAIR SALON | (1,866.66) |
| 3544 | 34984 | SALEM | VA | NAIL TIPS | (1,251.00) |
| 3544 | 34988 | SALEM | VA | UPS STORE | (1,533.33) |
| 30934 | 35159 | MEMPHIS | TN | TENNESSEE CASH CONNECTION, LLC | (1,498.00) |

### B. Leased Properties

| PS Unit# | Lease | City | State | Landlord/Tenant name | Paid (Received) Amount |
|---|---|---|---|---|---|
| Sears | | | | | |
| | | | | | |

164

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM 2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 25016 | 25016 44D | COLUMBUS | OH | BROWNING POLARIS, LLC | 18,657.74 |
|---|---|---|---|---|---|
| 07595 | 07595 16A | GAHANNA | OH | MHI OHIO CC III LLC | 4,331.25 |
| 01678 | 01678 10A | CARLSBAD | CA | RPI CARLSBAD, L.P. | 75,000.00 |
| 45145 | 08901 48A | BENICIA | CA | ICON NEWCO POOL 1 SF NON-BUS PARKS | 57,912.24 |
| 45146 | 08868 48A | MILPITAS | CA | PSB N CA INDUSTRIAL PORTFOLIO LLC | 23,233.69 |
| 7979 | 07979 15B | JACKSONVILLE | FL | TOWN CENTER STORAGE | 37,200.00 |
| 45359 | 08004 48D | SPOKANE | WA | NEW AFC REALITY LLC | 12,467.00 |
| 45415 | 08709 73B | KENT | WA | CENTERPOINT PROPERTIES TRUST | 553,922.66 |
| 9507 | 09507 11B | SAN ANTONIO | TX | COPT SA TECHNOLOGY C | 56,669.92 |
| 08162 | 08162 15B | EDEN PRAIRIE | MN | EDEN PRAIRIE ASSOCIATES LLC | 6,560.25 |
| 01092 | 01092 05A | WAYNE | MI | AUTO ACCESSORIES USA INC | (14,600.00) |
| 45167 | 08818 48C | PEARL CITY | HI | BETHANY KOREAN UNITED METHODIST CHURCH | (22,740.00) |
| 8369 | 08369 15E | SANTA ANA | CA | ATLAS INTERNATIONAL INC | (22,650.00) |
| 8398 | 08398 15B | SAN JOSE | CA | ROOFING SUPPLY GROUP - BAY AREA LLC | (50,000.00) |
|  |  |  |  |  |  |
| **Kmart** |  |  |  |  |  |
| 3127 | 36019 | TEMPLE CITY | CA | CROWN CITY AUTOMOTIVE | (12,997.70) |
| 3235 | 36970 | WEST COVINA | CA | PURRFECT AUTO SERVICE | (10,999.00) |
| 3286 | 35669 | BRUNSWICK | OH | JUD'S BEST DISCOUNT MUFFLER & | (2,100.00) |
| 3379 | 35119 | WATERFORD | MI | M & L AUTO | (4,934.66) |
| 3725 | 29334 | FREEDOM | CA | RICHARD & JOANNE TURNER (99 CE | (6,160.00) |
| 3725 | 29336 | FREEDOM | CA | JOSE & DORA ESPINDOLA (DESIGN | (2,730.00) |
| 3725 | 29337 | FREEDOM | CA | LOUIS HONG D.D.S | (3,500.00) |
| 3725 | 29343 | FREEDOM | CA | ADVANCE AM CASH CENTERS | (1,540.00) |
| 3725 | 34757 | FREEDOM | CA | D&L NAILS | (4,917.60) |
| 3725 | 35894 | FREEDOM | CA | WHISPERING PINES DRY CLEANERS | (2,000.00) |
| 3748 | 29345 | HOLLISTER | CA | CRYSTAL TV, INC. | (2,875.00) |
| 3748 | 37149 | HOLLISTER | CA | VIP WIRELESS, INC. | (7,466.66) |
| 4022 | 35363 | GRAND FORKS | ND | HOMETOWN AUTOMOTIVE REPAIR LLC | (2,310.00) |
| 4057 | 33593 | FARGO | ND | DAKOTA TIRE SERVICE, INC | (4,400.00) |
| 4113 | 35763 | ERIE | PA | ERIE PHYSICIANS NETWORK-UPMC, | (8,907.50) |
| 4170 | 35306 | RAPID CITY | SD | TIRETECH | (1,214.17) |
| 4214 | 35045 | DES PLAINES | IL | QUICK SERVICE AUTO | (7,685.34) |
| 4351 | 34636 | ROCHESTER | MN | SALVATION ARMY | (5,000.00) |

WEIL:\96826275\11\73217.0003

18-23538-shl    Doc 2507    Filed 02/08/19    Entered 02/08/19 16:31:31    Exhibit A
Pg 1295 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 9420 | 35597 | BRONX | NY | G-MAXX HOME OF BRUCKNER, LLC | (22,936.57) |
| 9420 | 27016 | BRONX | NY | DAVID'S CHECK CASHING, INC | (7,600.00) |
| 9693 | 35463 | MARINE CITY | MI | MARINE CITY AUTO CARE | (4,598.88) |
| 3018 | 35326 | VALENCIA | CA | MAGIC AUTO CENTER | (11,015.00) |
| 3127 | 36019 | TEMPLE CITY | CA | CROWN CITY AUTOMOTIVE | (12,997.70) |
| 3235 | 36970 | WEST COVINA | CA | PURRFECT AUTO SERVICE | (10,999.00) |
| 3239 | 35458 | KANSAS CITY | MO | KEN ZELLER/ZELLER AUTO REPAIR, | (6,301.50) |
| 3239 | 33598 | KANSAS CITY | MO | TASTY THAI | (1,666.67) |
| 3239 | 33602 | KANSAS CITY | MO | BARBERS PLUS | (700.00) |
| 3239 | 33603 | KANSAS CITY | MO | ADVANCE AMERICA CASH | (1,171.67) |
| 3239 | 35643 | KANSAS CITY | MO | RG THRIFT STORE LLC | (2,800.00) |
| 3239 | 35950 | KANSAS CITY | MO | M & D ENTERPRISES, INC. | (6,144.00) |
| 4022 | 35363 | GRAND FORKS | ND | HOMETOWN AUTOMOTIVE REPAIR LLC | (2,310.00) |
| 4113 | 35763 | ERIE | PA | ERIE PHYSICIANS NETWORK-UPMC, | (8,907.50) |
| 4170 | 35306 | RAPID CITY | SD | TIRETECH | (1,214.17) |
| 4215 | 27610 | KANSAS CITY | KS | XIAO JUN SONG AND LIU Y LIN | (5,000.00) |
| 4351 | 34636 | ROCHESTER | MN | SALVATION ARMY | (5,000.00) |
| 4450 | 35061 | RALEIGH | NC | CHOICE AUTO REPAIR | (6,489.72) |
| 4455 | 35839 | BEAVERTON | OR | GLOWING GREEN, LLC | (8,000.00) |
| 7259 | 29383 | WILLIAMSBURG | VA | WILLIAMSBURG PEKING CORP | (15,817.62) |
| 7259 | 34571 | WILLIAMSBURG | VA | KING'S CREEK PLANTATION LLC | (2,000.00) |
| 7259 | 35465 | WILLIAMSBURG | VA | NEW ORIENTAL CRAFTS, LLC | (2,500.00) |
| 7259 | 35722 | WILLIAMSBURG | VA | DPE INC, | (2,400.00) |

3. The Following issues affect the status of Lease Premises.

| Store | Unit # | City | State | Status |
|-------|--------|------|-------|--------|
| Kmart | 30938 | Glendale | AZ | Lease renewal sent extending term to 04/30/2024. |
| Sears | 1098 | Clovis | CA | A 60 day stay letter was sent and Seller exercised its 5 year renewal option |

166

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Store | Unit # | City | State | Status |
|-------|--------|------|-------|--------|
| Kmart | 7390 | McKinleyville | CA | At landlord, Seritage's, request, Seller, as tenant, has signed a bifurcated lease but Seller has not received countersignature by landlord (Seritage likely selling property). |
| Sears | 2829 | Victorville | CA | A 60 day stay letter was sent and Seller exercised its 5 year renewal option |
| Sears | 2068 | Visalia | CA | Lease amendment pending re setting of rent amounts for 3 year renewal option as lease provides for renewal rent to be set at FMV (current lease expires 05/31/19); At landlord, Seritage's, request, Seller, as tenant, has signed a bifurcated lease but Seller has not received countersignature by landlord (Seritage likely selling property). |
| Sears | 8065 | Miami | FL | 6 month Co-Occupancy License Agreement being granted to Service.com upon SHIP APA Closing |
| MDO | 8920 | Louisville | KY | Renewal was due by 10/30/18.  10/31/18 letter to landlord re BK and reservation of right to exercise renewal. LL sent notice dated 12/1/18 terminating tenant renewal |
| Sears | 1053 | Saugus | MA | Landlord has issued a notice of partial recapture. |
| Sears | 1754 | Gaithersburg | MD | 6 month Co-Occupancy License Agreement being granted to Service.com upon SHIP APA Closing |
| Kmart | 7035 | Farmington | NM | Seller and Seritage, landlord, have signed a bifurcated lease (Seritage likely selling property). |
| Kmart | 7016 | Hobbs | NM | Seller and Seritage, landlord, have signed a bifurcated lease (Seritage likely selling property); landlord has issued a notice of partial recapture. |
| Kmart | 4871 | Farmingville | NY | A 60 day stay letter was sent and Seller exercised its 5 year renewal option, however, LL is contesting the validity of the renewal notice. |

167

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Store | Unit # | City | State | Status |
|-------|--------|------|-------|--------|
| | 5864 | Las Vegas | NV | Term of lease expired 08/31/18; lease provides that tenancy goes to month to month after term expires.  Negotiating new lease with Landlord. |
| Kmart | 3266 | Edwardsville | PA | A 60 day stay letter was sent and Seller exercised its 5 year renewal option |
| Kmart | 3268 | Wilkes Barre | PA | A 60 day stay letter was sent and Seller exercised its 5 year renewal option, however, LL is contesting the validity of the renewal notice |
| Sears | 2355 | Hatillo | PR | A 60 day stay letter was sent and Seller exercised its 5 year renewal option. |
| Sears | 1905 | San Juan | PR | 2 year Co-Occupancy License Agreement being granted to Service.com upon SHIP APA Closing |
| Sears | 1575 | Hampton | VA | At landlord, Seritage's, request, Seller, as tenant, has signed a bifurcated lease but Seller has not received countersignature by landlord (Seritage likely selling property). |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM   2020L012403

## Schedule 6.6(d)

1. The following lease defaults have been alleged against the Leased Properties and remain unresolved:

| RE ID | ST | Name | Address | Detail |
|-------|-----|------|---------|--------|
| 704200 | IN | Valparaiso | 2801 Calumet Ave | Default Notice – Alleged failure to pay ATM rent of $15, 638.71 and 2016 RE Taxes of $34,886.76, and 2017 taxes owed for $9,230.90 |
| 885100 | MA | Westwood | 349 University Ave | Default Notice – Alleged failure to pay rent |
| 980800 | MT | Hamilton | 1235 North First Street | Default Notice - October rent NSF and returned. |
| 720800 | NC | Clemmons | 2455 Lewisville-Clemmon | Deferred Maintenance Notice – alleged failure to maintain: parking lot, exterior walls, curbs, down spouts, bollards. |
| 487100 | NY | Farmingville | 2280 North Ocean Ave. | Default Notice – Alleged failure to properly maintain Premises and portions of the Common Area. Landlord is seeking an order by the BK Court declaring that the automatic stay is inapplicable to the lease in question based on an alleged default by Tenant and asserts that the lease expired by its terms on October 23, 2018. Landlord is arguing that because the lease terminated by its terms on October 23, 2018, the automatic stay does not apply to the lease in question and Landlord is seeking a declaration from the Court stating as such and that the lease is not property of the Debtors' estates. |
| 882300 | VA | Dulles | 45065 Old Ox Rd | Default Notice – Alleged failure to maintain building. |
| 883600 | VA | Richmond | 4100 Tomlyn St | Default Notice - Failure to pay CAM |
| 173800 | HI | Kaneohe(Sur) | 46-056 Kamehameha Hwy | Default Notice – Nonpayment of rent |
| 777700 | NY | New York | 770 Broadway | Rent Dispute |
| 932800 | CA | Long Beach | 2900 Bellflower Blvd | Possible lease default alleged; |
| 700600 | ID | Twin Falls | 2258 Addison Ave East | Landlord claims Tenant has breached lease by (i) building addition over property line and (ii) obligations related to installation and removal of underground storage |

169

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| RE ID | ST | Name | Address | Detail |
|-------|-----|------|---------|--------|
|  |  |  |  | tanks. Landlord has filed motion in BK proceeding to compel the Debtors to reject the lease associated with this location or, in the alternative, establish a deadline by which the Debtors must assume and cure all defaults or reject the lease. |
| 2537 | TX | Harlington |  | Rent dispute with Landlord re correct amount of rent that is owed, including utility charges |
| 30961 | NC | Greensboro |  | Dispute regarding maintenance of roof |
| 3725 | CA | Freedom | 1702 Freedom Boulevard | Dispute regarding payment of additional rent and delivery of subtenant rent reports. |
| 3202 | NJ | Westwood | 700-732 Broadway | Alleged failure to pay additional rent for real-estate taxes in the amount of $119,799.29. |

2. With respect to factual matters that could give rise to an event of default after the giving of notice and the passage of any applicable cure period, Item 16 of Schedule 6.5 is hereby incorporated by reference.

3. The following listing is of pending property claims for damage to buildings and FF&E at the Lease Premises, which could give rise to an event of default after the giving of notice and the passage of time:

| Unit | Address | Loss City | Loss State | Property Group | 10K Owned / L/GL | Date of Loss | Claim Property: Claim Property Number | Estimated Loss to Building and FF&E |
|------|---------|-----------|------------|----------------|------------------|--------------|---------------------------------------|-------------------------------------|
| 03692 |  | Oconomowoc | WI |  |  | 8/31/2018 | P1808315017 | 1,000 |
| 03750 |  | Waupaca | WI |  |  | 9/20/2018 | P1809215022 | 1,000 |
| 01575 |  | Newport News | VA |  |  | 10/12/2018 | P1810125008 | 3,000 |
| 01814 |  | Fairfax | VA |  |  | 10/26/2018 | P181026578 | 0 |
| 02147 |  | Irving | TX |  |  | 2/21/2018 | P1802215013 | 1,000,000 |
| 01247 |  | Lubbock | TX |  |  | 5/30/2018 | P1806085128 | 1,276,710.45 |
| 03853 |  | Guayama | PR |  |  | 9/21/2017 | P1709225039 | 5,493,436 |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Unit | Address | Loss City | Loss State | Property Group | 10K Owned / L/GL | Date of Loss | Claim Property: Claim Property Number | Estimated Loss to Building and FF&E |
|------|---------|-----------|------------|----------------|------------------|--------------|---------------------------------------|--------------------------------------|
| 04490 | | Guaynabo | PR | | | 9/20/2017 | P1709215105 | 15,939 |
| 03896 | | San German | | | | 9/20/2017 | P1710115032 | 1,360,000.45 |
| 01935 | | Mayaguez | PR | | | 9/20/2017 | P1710025033 | 191,843.39 |
| 07293 | | Clifton Heights | PA | | | 12/13/2018 | P1812135064 | 10,000 |
| 01154 | | Whitehall | PA | | | 9/4/2018 | P1809055062 | 3,000 |
| 03527 | | Philadelphia | PA | | | 11/16/18 | P1811165001 | 2,500 |
| 02494 | | Altoona | PA | | | 1/5/2019 | P1901065007 | 0 |
| 03600 | | Schenectady | NY | | | 10/9/2018 | P1810115031 | 1,000 |
| 01668 | | Las Vegas | NV | | | 11/13/2018 | P1811135043 | 7,500 |
| 04112 | | Asheville | NC | | | 9/13/2018 | P1809135056 | 1,000 |
| 04450 | | Raleigh | NC | | | 12/10/2018 | P1812105001 | 0 |
| 08319 | | Charlotte | NC | | | 11/29/2018 | P1811295040 | 500 |
| 01403 | | Natick | MA | | | 12/19/2018 | P1812215036 | 0 |
| 03288 | | Billerica | MA | | | 1/6/2019 | P1901075009 | 0 |
| 04215 | | Kansas City | KS | | | 8/31/2018 | P1809055014 | 1,000 |
| 01740 | | Joliet | IL | | | 12/21/2018 | P1812215050 | 1,000 |
| 02805 | | Panama City | FL | | | 10/10/2018 | P1811095002 | 0 |
| 07321 | | Bradenton | FL | | | 9/12/2017 | P1709185056 | 10,000 |
| 04893 | | Ellenton | FL | | | 9/10/2017 | P1709115098 | 3,123.18 |
| 03424 | | Gainesville | FL | | | 12/7/2018 | P1812075016 | 500 |
| 01755 | | Boynton Beach | FL | | | 9/11/17 | P1709125057 | 17,263 |
| 03235 | | West Covina | CA | | | 12/7/18 | P1812075016 | 500 |

171

18-23538-shl Doc 2507 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A
Pg 1301 of 1450

FILED DATE: 5/19/2021 1:27 PM    2020.012403

| Unit | Address | Loss City | Loss State | Property Group | 10K Owned / L/GL | Date of Loss | Claim Property: Claim Property Number | Estimated Loss to Building and FF&E |
|------|---------|-----------|------------|----------------|------------------|--------------|---------------------------------------|-------------------------------------|
| 01408 | | Sacramento | CA | | | 11/3/2018 | P1811035047 | 500 |
| 01618 | | Modesto | CA | | | 6/18/2018 | P1806195001 | 242,000 |
| 03483 | | Ontario | CAN | | | 10/22/2018 | P1810235033 | 1,000 |
| 03405 | 10 W. Lake Street | Minneapolis | MN | Open Store | GL | 9/29/2018 | P181009503 50001 | 1,000 |
| 01085 | Intersection of State Roads Pr 1 & Pr 156 | Caguas | PR | Open Store | Lease | 9/6/2017 | P170908509 90001 | 0 |
| 02675 | Road 3 KM.L34.7 | Guayama | PR | Open Store | Lease | 9/21/2017 | P170922504 50001 | 1,566,308 |
| 07788 | Pr 167 & Las Cumbres | Bayamon | PR | Open Store | Lease | 9/20/2017 | P170922506 50001 | 849,407 |
| 07419 | Rafael Cordero & Hwy 30 | Caguas | PR | Open Store | Lease | 9/20/2017 | P170922506 20001 | 292,399 |
| 07570 | Plaza Rio Hondo & Comerio Ave | Bayamon | PR | Open Store | Lease | 9/21/2017 | P170922505 10001 | 222,810 |
| 07741 | 2643 Ponce Bypass | Ponce | PR | Open Store | Lease | 9/20/2017 | P170922506 40001 | 278,379 |
| 03829 | 26-A Tutu Park Mall | St Thomas | VI | Open Store | Lease | 9/6/2017 | P170920500 90001 | 1 |
| 01024 | 6211 Leesburg Pike | Falls Church | VA | Open Store | Lease | 8/31/2018 | P180901500 60001 | |
| 45091 a/k/a 8720 | 2065 George Street | Melrose | IL | Non-Retail | Lease | 11/3/2018 | P181103503 10001 | 0 |
| 01668 | 4000 Meadow Lane | Las Vegas | NV | Open Store | Lease | 11/13/2018 | P181113504 30001 | 7,500 |
| 04457 | 26231 Mission Blvd. | Hayward | CA | Open Store | GL | 12/1/2018 | P181201505 00001 | 500 |
| 01274 | 11500 Midlothian Turnpike | Richmond | VA | Open Store | GL | 12/3/2018 | P181204500 40001 | 500 |
| 04457 | 26231 Mission Blvd. | Hayward | CA | Open Store | GL | 9/20/2018 | P180920509 20001 | 1,000 |
| 07566 | State Road 2 Km 80.2 | Arecibo | PR | Open Store | Lease | 10/7/2018 | P181008500 50001 | 7,000 |
| 07639 | 895 Faulkner Road | Santa Paula | CA | Open Store | Lease | 11/9/2018 | P181109502 10001 | 500 |
| 02355 | 506 Calle Truncado | Hatillo | PR | Open Store | GL | 7/25/2018 | P180725511 80001 | |

172

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Unit | Address | Loss City | Loss State | Property Group | 10K Owned / L/GL | Date of Loss | Claim Property: Claim Property Number | Estimated Loss to Building and FF&E |
|---|---|---|---|---|---|---|---|---|
| 01765 | 3101 PGA Blvd. | Palm Beach Gardens | FL | Open Store | GL | 10/1/2018 | P18100151320001 | 1,000 |
| 07570 | Plaza Rio Holdo & Comerio Ave. | Bayamon | PR | Open Store | Lease | 8/20/2018 | P18082050710001 | 200 |
| 09551 | 6600 Clark Road | Paradise | CA | Open Store | Lease | 11/8/2018 | P18110850480001 | 10,000 |
| 07413 | Remainder Matriculate #1 | St Croix | VI | Open Store | Lease | 11/11/2018 | P18111250390001 | 15,000 |
| 45168 a/k/a 8825 | 3825 Forsyth Road | Winter Park | FL | Non-Retail | Lease | 11/27/2018 | P18112850030001 | 5,000 |
| 04389 | 1801 South 10th Street | Mc Allen | TX | Open Store | Lease | 10/31/2018 | P18103150520001 | 500 |
| 01905 | Avenue F D Roosevelt | San Juan | PR | Open Store | GL | 9/20/2017 | P17092150980001 | 166,151 |
| 04732 | Road 2 Km 126.5 | Aquadilla | PR | Open Store | Lease | 9/20/2017 | P17101250240001 | 75,789 |
| 03842 | 175 Maag Avenue | Oakdale | CA | Open Store | Lease | 11/30/2018 | P18113050460001 | 1,000 |
| 45438 a/k/a 8870 | 1600 Roe Street | Dallas | TX | Non-Retail | Lease | 11/19/2018 | P18112150160001 | 0 |
| 01644 | 200 Park City Center | Lancaster | PA | Open Store | GL | 11/13/2018 | P18111350010001 | 150,000 |
| 01935 | 975 Hostos Avenue | Mayaguez | PR | Open Store | GL | 9/20/2017 | P17100250330001 | 191,843 |
| 03317 | 1401 West Palmetto Park Road | Boca Raton | FL | Open Store | Lease | 9/9/2017 | P17091150720001 | 2,000 |
| 04893 | 6126 Highway 301 | Ellentown | FL | Open Store | Lease | 9/10/2017 | P17091150980001 | 3,123 |
| 09614 | 101399 Overseas Highway | Key Largo | FL | Open Store | Lease | 9/12/2017 | P17091251450001 | 10,000 |
| 07665 | 65th Infantry Avenue | Carolina | PR | Open Store | Lease | 9/20/2017 | P17092151070001 | 1,203,431 |
| 07783 | Pr #22 & Pr #18 | San Juan | PR | Open Store | GL | 9/20/2017 | P17092151020001 | 1,003,158 |
| 07321 | 7321 Manatee Avenue West | Bradenton | FL | Open Store | Lease | 9/12/2017 | P17091850560001 | 10,000 |
| 02027 | 1000 S. Seward Meridian Road | Wasilla | AK | Open Store | GL | 11/30/2018 | P18113050430001 | 20,000 |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| Unit | Address | Loss City | Loss State | Property Group | 10K Owned / L/GL | Date of Loss | Claim Property: Claim Property Number | Estimated Loss to Building and FF&E |
|------|---------|-----------|------------|----------------|------------------|--------------|---------------------------------------|-------------------------------------|
| 07793 | 9000 Lockhart Gardens S/C; Suite 1 | St Thomas | VI | Open Store | Lease | 9/25/2017 | P171003507 50001 | 0 |
| 03993 | State Road 1498 & State Road 584 | Juana Diaz | PR | Open Store | Lease | 9/20/2017 | P171003506 50001 | 75,769 |
| 01274 | 11500 Midlothian Turnpike | Richmond | VA | Open Store | GL | 9/17/2018 | P180918501 00001 | 2,500 |
| 03692 | 1450 Summit Avenue | Oconomowoc | WI | Open Store | Lease | 8/31/2018 | P180831501 70001 | 1,000 |
| 07713 | 3207 Solomons Island Road | Edgewater | MD | Open Store | Lease | 11/22/2018 | P181123505 70001 | 1,000 |
| 01085 | Intersection of State Rd Pr 1 & Pr 156 | Caguas | PR | Open Store | Lease | 9/21/2017 | P170925500 40001 | 3,571,007 |
| 07566 | State Road 2 KM 80.2 | Arecibo | PR | Open Store | Lease | 10/4/2018 | P181009506 00001 | 0 |
| 07566 | State Road 2 KM 80.2 | Arecibo | PR | Open Store | Lease | 10/6/2018 | P181009506 00001 | 0 |
| 03750 | 830 West Fulton Street | Waupaca | WI | Open Store | Lease | 9/20/2018 | P180921502 20001 | 1,000 |
| 07255 | 411 Russell Dyche Highway | Somerset | KY | Open Store | Lease | 11/29/2018 | P181206500 70001 | |
| 02694 | 100 Spotsylvania Mall | Fredericksburg | VA | Open Store | Lease | 5/18/2018 | P180519500 40001 | |
| 02694 | 100 Spotsylvania Mall | Fredericksburg | VA | Open Store | Lease | 4/26/2018 | P180427502 10001 | |
| 03266 | U.S. Route 11 Mark Plaza | Kingston | PA | Open Store | Lease | 9/13/2018 | P180913501 80001 | 9,000 |
| 03235 | 730 South Orange | West Covina | CA | Open Store | Lease | 12/7/2018 | P181207501 50001 | 500 |
| 07749 | 250 West 34th Street | New York | NY | Open Store | Lease | 12/7/2018 | P181207500 80001 | 1,000 |
| 03269 | 1201 South Dixie | Lantana | FL | Open Store | Lease | 9/13/2017 | P170913504 10001 | 2,500 |
| 07566 | State Road 2 Km 80.2 | Arecibo | PR | Open Store | Lease | 9/21/2017 | P170925502 10001 | 384,627 |
| 04844 | 9410 Avenue Los Romeros | Rio Piedras | PR | Open Store | Lease | 9/21/2017 | P170925501 80001 | 313,403 |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Unit | Address | Loss City | Loss State | Property Group | 10K Owned / L/GL | Date of Loss | Claim Property: Claim Property Number | Estimated Loss to Building and FF&E |
|---|---|---|---|---|---|---|---|---|
| 07793 | 9000 Lockhart Gardens S/C; Suite 1 | St Thomas | VI | Open Store | Lease | 10/22/2017 | P17102550240001 | 0 |
| 07793 | 9000 Lockhart Gardens S/C; Suite 1 | St Thomas | VI | Open Store | Lease | 9/21/2017 | P17092550220001 | 175,000 |
| 01154 | 1259 Whitehall Mall | Whitehall | PA | Open Store | Lease | 9/4/2018 | P18090550620001 | 3,000 |
| 01984 | South 3701 McKinley Parkway | Buffalo | NY | Open Store | Lease | 11/27/2018 | P18120150130001 | 32,412 |
| 01925 | Caroline S/C | Carolina | PR | Open Store | Lease | 9/6/2017 | P17090751060001 | 2,500 |
| 03829 | 26-A Tutu Park Mall | St Thomas | VI | Open Store | Lease | 9/21/2017 | P17092550120001 | 1 |
| 45577 a/k/a 7385 | 819 E. Six Forks Road | Raleigh | NC | Non-Retail | Lease | 1/11/2018 | P18011250460001 | 45,000 |
| 01654 | 1067 West Baltimore Pike | Media | PA | Open Store | GL | 8/28/2018 | P18082850460001 | 1,000 |
| 07793 | 9000 Lockhart Gardens S/C; Suite 1 | St Thomas | VI | Open Store | Lease | 9/6/2017 | P17090651250001 | 300,000 |
| 03829 | 26-A Tutu Park Mall | St Thomas | VI | Open Store | Lease | 9/6/2017 | P17090651220001 | 5,007,517 |
| 01365 | 20701 SW 112th Avenue | Miami | FL | Open Store | Lease | 9/10/2017 | P17091250480001 | 26,668 |
| 01345 | 1625 West 49th Street | Hialeah | FL | Open Store | Lease | 9/11/2017 | P17091250870001 | 545 |

175

WEIL:\96826275\11\73217.0003

18-23538-rdd   Doc 2307-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 177 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**Schedule 6.6(e)**

1.  Items 1 and 2 of Schedule 6.6(b) are incorporated herein by reference.

2.  The following condemnation matters are pending with respect to the Leased Properties:

| RE ID | ST | Name | Address | Detail |
|---|---|---|---|---|
| 724600 | IN | Richmond | 3150 National Road West | Taking of less than ½ acre. |
| 340500 | MN | Minneapolis | 10 W Lake Street | Taking for easement for County Streetscaping project.  Notice of Condemnation and Quick Taking filed 3/2017. |
| 774900 | NY | New York | 250 W. 34th St | Threatened condemnation by the Metropolitan Transit Authority |
| 1012 | IA | De Moines | | Taking of 1,848 square feet does not appear to affect or owned or leased parcels. |
| 2677 | LA | Bossier City | | Sewer right of way acquisition (condemnation). |
| 1077 | LA | Shreveport | | City needing permanent and temporary servitude re upgrading and replacement of sewer line.  City is under consent decree with federal government to complete the project. |
| 2374 | NJ | Vineland | | Potential condemnation by the local Landis Sewer Authority |
| 1684 | NJ | Woodbridge | | Potential condemnation by State of New Jersey. State has offered $291. |

3.  The following litigation matters are pending or threatened with respect to the Lease Premises:

| STORE NO. | STATE | CITY | ADDRESS | DESCRIPTION |
|---|---|---|---|---|

WEIL:\96826275\11\73217.0003

18-23538-shl   Doc 2307   Filed 02/06/19   Entered 02/06/19 16:44:32   Exhibit A
Pg 1306 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| 101800 | CA | Baldwin Hills | 3755 Santa Rosalia Dr | [Potential] |
|---|---|---|---|---|
| 100800 | CA | Boyle | 2650 E Olympic Blvd | [Potential] |
| 183800 | CA | Burbank | 111 E Magnolia Blvd | Cabrera, Gabriela v. Sears, Roebuck and Co. and Does 1-20 |
| 932800 | CA | Long Beach | 2900 Bellflower Blvd | [Potential] |
| 323500 | CA | West Covina | 730 South Orange | Cabrera, Gabriela v. Kmart Corporation and Does 1-20 |
| 176500 | FL | Palm Beach Gardens | 3101 PGA Blvd | Sears #1765 (Palm Beach Gardens, FL) v. Forbes.  Case dismissed without prejudice and may be re-filed. |
| 173800 | HI | Kaneohe(Sur) | 46-056 Kamehameha Hwy | [Potential] |
| 703300 | ID | Lewiston | 1815-21St St | The Joseph P. McCann and Frances E. McCann Family Trust of Lewiston Idaho 8351 v. Kmart Corporation |
| 700600 | ID | Twin Falls | 2258 Addison Ave East | Motion filed by landlord in bankruptcy court. |
| 130000 | IL | Oakbrook | 2 Oakbrook Ctr | Sears, Roebuck and Co. v. DentalCare Partners, Inc., et al. |
| 109200 | MI | Westland | 35000 Warren Rd | Sears, Roebuck and Co. v. DentalCare Partners, Inc., et al. |
| 340500 | MN | Minneapolis | 10 W Lake Street | Boitnott, Jerald v. K-Mart Corporation d/b/a K-Mart |
| 307100 | NJ | Toms River | 213 Highway 37 E | Raven Associates v. Sears Holdings, Kmart Corporation, et al.  Case No. C-126-15; Ocean County, Superior Court of New Jersey  [On Appeal] |
| 143400 | NJ | Wayne | 50 Route 46 | State of New Jersey, by the Commissioner of Transportation v. Willowbrook Mall, LLC; Sears, Roebuck and Co.; et al. |
| 386200 | NY | Bohemia | 5151 Sunrise Hwy | Sayville Menlo, LLC v. Sears Holdings Management Corporation |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 942000 | NY | Bronx | 1998 Bruckner Blvd | Kmart #9420 (Bruckner Plaza, Bronx, NY) v. Vornado Realty Trust |
| 942000 | NY | Bronx | 1998 Bruckner Blvd | Kmart Corporation #9420 v. Lens Lab Express, Inc. |
| 111400 | NY | Brooklyn | 2307 Beverley Rd | Flatbush Center Parking LLC v. Sears Holding Corp. (ARB) AAA Arbitration Case No. 02-18-0001-6118 |
| 487100 | NY | Farmingville | 2280 North Ocean Ave. | Motion has been filed in the bankruptcy case initially; may become a separate suit |
| 777700 | NY | New York | 770 Broadway | [Potential] |
| 941600 | NY | White Plains | 399 Tarrytown Rd | Cerbone of Naples Inc., et al v. Sears Holdings Management, et al. |
| 141000 | OH | Canton | 4100 Belden Village Mall | Sears, Roebuck and Co. v. DentalCare Partners, Inc., et al. |
| 171400 | PA | Greensburg | 5256 Route 30 | Sears, Roebuck and Co. v. DentalCare Partners, Inc., et al. |
| 757000 | PR | Bayamon | Plaza Rio Hondo & Comerio Ave | Kmart Corporation v. Marketing & Printing Solutions Inc. |
| 778800 | PR | Bayamon | Pr 167 & Las Cumbres | Kmart Corporation v. Marketing & Printing Solutions Inc. |
| 778300 | PR | Hato Rey | Pr #22 & Pr #18 | Kmart Corporation v. Marketing & Printing Solutions Inc. |
| 348400 | WV | Elkview | I-79/Us 43 Crossings Mall | Kmart Corporation v. Tara Retail Group |
| 4706 | CA | Riverside | | Claimant: Christina Lagunas |
| 1357 | TX | Austin/Barton Creek | | Claimant: MaryLou Trigo |
| 2306 | AL | Gadsden | | Claimant: Karen Hogeland |
| 3793 | FL | Miami | | Claimant: Oneida Lazo |
| 4123 | NY | Niagara Falls | | Claimant: Nancy Burkhart |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| 1464 | NJ | Deptford | | Claimant: Natalie Parker |
|---|---|---|---|---|
| 3424 | FL | Gainesville | | Claimant: Angela Powell |
| 1414 | NY | Nanuet | | Claimant: Patrizia Proscia |
| 1955 | FL | Lakeland | | Claimant: Mary Miller |
| 9348 | IL | Norridge | | Claimant: Miroslav Stevanovic |
| 2990 | IL | Rockford-Cherryvale | | Claimant: Leonor Jaimes |
| 4706 | CA | Riverside | | Claimant: Trinity Annan |
| 3818 | FL | Hollywod | 3800 Oakwood Blvd | Claimant: Julia Hernandez |
| 1758 | CA | Escondido | 210 E Via Rancho Pkwy | Claimant: Mary Senic |
| 7139 | WY | Jackson | 510 S Hwy 89 | Claimant: Martha McCravey |
| 3592 | NV | Las Vegas | 5051 E Bonanza Rd | Claimant: Felix Counterman |
| 1226 | LA | Metairie | 4400 Veterans Mem Blvd | Claimant: Rhonda Christopher |
| 4272 | ND | Bismarck | 2625 State St | Claimant: Frances Grueneich |
| 4272 | ND | Bismarck | 2625 State St | Claimant: Vivian Hilken |
| 3862 | NY | Bohemia | 5151 Sunrise Hwy | Claimant: Vivian Romanowski |
| 4421 | CA | North Hollywood | 13007 Sherman Way | Claimant: Karen Barrientos |
| 7192 | PA | Easton | 320 South 25Th Street | Claimant: Blanca Hernandez |
| 3873 | DE | Wilmington | 4700 Limestone Road | Claimant: Linda Cronk |
| 1300 | IL | Oakbrook | 2 Oakbrook Ctr | Claimant: Zayna Abdeldeen |
| 3954 | PA | Walnutport | 400 North Best Ave | Claimant: Rita Erschen |
| 8287 | CA | Ontario | 5600 East Airport Rd | Claimant: Inocencio Ibarra |
| 1733 | NY | Yonkers | Rte 87(Ny St) & Cross Ct Pkwy | Claimant: Eunice Tuitt |
| 1212 | IL | N Riverside | 7503 W Cermak Rd | Claimant: Genoveva Diego |

179

18-23538-rdd   Doc 2307-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A
Pg 1309 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| 3972 | VI | St. Croix | Sunny Isle S/C, Space #1 | Claimant: Joanna Samuel |
|---|---|---|---|---|
| 2219 | WA | Lacey/Olympia | 651 Sleater Kinney Rd Se 1300 | Claimant: Tabitha Priest |
| 7654 | NY | Bronx | 300 Baychester Avenue | Claimant: Abel Santiago |
| 2990 | IL | Rockford-Cherryvale | 7200 Harrison Ave | Claimant: Jaimes Leonor |
| 3818 | FL | Hollywood | 3800 Oakwood Blvd | Claimant: Heidie Mulato |
| 4389 | TX | Mcallen | 1801 South 10Th Street | Claimant: Olga Hernandez |
| 7413 | VI | Frederiksted | Remainder Matriculate #1 | Claimant: Aquita Williams |
| 3972 | VI | St. Croix | Sunny Isle S/C, Space #1 | Claimant: O'Rosia Figueroa |
| 3829 | VI | St. Thomas | 26 – A Tutu Park Mall | Claimant: Andlib Salem |
| 7616 | SC | Lexington | 748 W Main Street | Claimant: Michelle Peele |
| 1560 | OH | Dayton Mall | | (ADA) Access Center for Independent Living, et al. v. WP Glimcher Inc., et al. [Sears #1560] |
| 3235 | CA | West Covina | | (ADA) Cabrera, Gabriela v. Kmart Corporation and Does 1 - 20 |
| 4047 | CA | Costa Mesa | | (ADA) Von Trapp, Debra v. Kmart Store #4047 |
| 4490 | PR | San Juan | | Marketing & Printing Solutions v. Kmart Operations, LLC and Kmart Corporation |

4.   The following subrogation and/or indemnification claims have been alleged by Sellers against third parties with respect to damage to the:

   **A.   *Owned Real Property***

180

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Debtor | Unit | Address | City | State | SCH Format | 10K Owned/ L/GL | Defendant Name | Recover | Jurisdiction | Court Case Number |
|---|---|---|---|---|---|---|---|---|---|---|
|  | 01720 |  | Sterling Heights | MI |  |  |  |  |  |  |
|  | 01012 |  | Des Moines | IA |  |  | North American Roofing |  | Iowa District Court for Polk County | LACL 140725 |
|  | 01171 | 2825 S. Glenstone Ave | Springfield | MO | Sears | Owned |  | Yes |  |  |
|  | 01364 | 4 Smith Haven Mall | Lake Grove | NY | Sears | Owned | Biscayne Roofing | Yes |  |  |
|  | 01217 | 1305 Airline Road | Corpus Christi | TX | Sears | Owned | Geico | Yes |  |  |
|  | 01074 | 11170 Mall Circle | Waldorf | MD | Sears | Owned | Integrated Service Mgt. (ISM) | Yes |  |  |
|  | S490 | 3333 Beverly Road | Hoffman Estates | IL | Office | Owned | Madhuri Matta/ Nationwide Ins. | Yes |  |  |
|  | 01217 | 1305 Airline Road | Corpus Christi | TX | Sears | Owned | Firetrol Ins. Carrier: US HDI Global | Yes |  |  |
|  | 01634 | 6901 Security Square Blvd. | Baltimore | MD | Sears | Owned |  | Yes |  |  |
|  | 01307 | 4310 Buffalo Gap Road | Abilene | TX | Sears | Owned |  | Yes |  |  |
|  | 01224 | 4600 Jonestown Road | Harrisburg | PA | Sears | Owned |  | Yes |  |  |

WEIL:\96826275\11\73217.0003

| Debtor | Unit | Address | City | State | SCH Format | 10K Owned/ L/GL | Defendant Name | Recover | Jurisdiction | Court Case Number |
|---|---|---|---|---|---|---|---|---|---|---|
|  | 01354 | 2500 W. Moreland Road | Willow Grove | PA | Sears | Owned |  | Yes |  |  |

### A.  Leased Properties:

| Debtor | Unit | Address | City | State | SCH Format | 10K Owned/ L/GL | Defendant Name | Recover | Jurisdiction | Court Case Number |
|---|---|---|---|---|---|---|---|---|---|---|
|  | 07223 |  | Metairie | LA |  |  | Swift |  |  |  |
|  | 01470 |  | Greenwood | IN |  |  | Kimco |  |  |  |
|  | 01844 |  | Columbia | MD |  |  | RCC |  |  |  |
|  | 01071 |  | Lakewood | CO |  |  | Central Mutual Insurance /Debra Molinaro |  |  |  |
|  | 02617 |  | Victoria | TX |  |  |  |  |  |  |
|  | 02173 |  | Saratoga | NY |  |  | Wilton Mall, LLC c/o The Macerich Company |  |  |  |
|  | 04026 |  | St Joseph | MO |  |  | Mart Plaza, LLC |  |  |  |
|  | 01017 |  | Lakewood | CO |  |  |  |  |  |  |
|  | 01844 |  | Columbia | MD |  |  |  |  |  |  |
|  | 02435 |  | Charlottesville | VA |  |  | Swift Transportation |  |  |  |
|  | 09520 |  | Gulfport | MS |  |  |  |  |  |  |
|  | 01388 |  | Costa Mesa | CA |  |  | S-Tract, LLC |  |  |  |
|  | 02078 |  | Yuma | AZ |  |  | Allstate Insurance Company / Maria Urquijo |  |  |  |

182

FILED DATE: 5/19/2021 1:27 PM   2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Debtor | Unit | Address | City | State | SCH Format | 10K Owned/ L/GL | Defendant Name | Recover | Jurisdiction | Court Case Number |
|---|---|---|---|---|---|---|---|---|---|---|
| | 02278 | | Idaho Falls | ID | | | USI | | | |
| | 03235 | | West Covina | CA | | | | | | |
| | 01968 | | Palm Desert | CA | | | Kellermeyer Bergensons Services, LLC. | | | |
| | 04433 | | Quincy | IL | | | Twister Services | | | |
| | 01618 | | Modesto | CA | | | | | | |
| | 01137 | | Austin | TX | | | | | | |
| | 01388 | | Costa Mesa | CA | | | | | | |
| | 01247 | | LUBBOCK | TX | | | LUBBOCK | | | |
| | 01935 | | MAYAGUEZ | PR | | | | | | |
| | 01111 | | COLORADO SPRINGS | CO | | | Jeremy Coe, vehicle owner, Kaelin Coe, driver, Safeco Ins. Y8382197. | | | |
| | 04170 | | Rapid City | IA | | | | | | |
| | 01814 | | Fairfax | VA | | | Capital Demolition LLC | | | |
| | 09415 | | Mahopac | NY | | | Heidenberg Properties | | | |
| Kmart Corporation | 04026 | | ST JOSEPH | MO | | | Mart Plaza, LLC c/o GJ Realty | Yes | Circuit Court of Buchanan County | 18BU-CV04503 |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Debtor | Unit | Address | City | State | SCH Format | 10K Owned/ L/GL | Defendant Name | Recover | Jurisdiction | Court Case Number |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | , Missouri | |
| Innovel and Sears Roebuck and Company | 8872 | 580 Raco Parkway | Pendergrass | GA | Distrib. Center | Lease | Jackson County Water & Sewage Authority | Yes | Superior Court of Jackson County State of Georgia | 15CV0516 |
| Sears Roebuck & Co | 08830 | 12001 Sears Avenue | Livonia | MI | Logistics | Lease | Frigidaire | Yes | Circuit Court of Cook County Illinois | 2018-L-004825 in IL + 17-010869 in MI |
| Sears Roebuck & Co | 01925 | Carolina S/C | Carolina | PR | Sears | Lease | Atlas Roofing | Yes | US Dist Court for the Dist of Puerto Rico | 3:15-cv-01645 |
| Sears Roebuck & Co | 01915 | Avennida Aguas Buenas | Bayamon | PR | Sears | GL | Atlas Roofing | Yes | United States District Court for the District of Puerto Rico | 3:18-cv-01649 |
| Kmart Corp. | 03484 | I-79/US 43 | Elkview | WV | Kmart | Lease | Tara Retail Group | Yes | US Bankruptcy Court for the Northern District of WV | 1:17-bk-00057 |

184

WEIL:\96826275\11\73217.0003

| Debtor | Unit | Address | City | State | SCH Format | 10K Owned/L/GL | Defendant Name | Recover | Jurisdiction | Court Case Number |
|---|---|---|---|---|---|---|---|---|---|---|
| | 01066 | 10302 Southside Blvd | Jacksonville | FL | Sears | Lease | | Yes | | |
| | 03972 | Sunny Isle S/C, Space #1 | St Croix | VI | Kmart | Lease | Sunny Isle Shopping Center, Inc. | Yes | | |
| | 07192 | 320 South 25th Street | Easton | PA | Kmart | Lease | | Yes | | |
| | 03707 | 1870 McCulloch Blvd. | Lake Havasu City | AZ | Kmart | Lease | Mather Brothers Ice | Yes | | |
| | 04494 | 200 Carr 181 | Trujillo Alto | PR | Kmart | Lease | | Yes | | |
| | 07139 | 510 S. Hwy 89 | Jackson | WY | Kmart | Lease | | Yes | | |
| | 09420 | 1998 Bruckner Blvd. | Bronx | NY | Kmart | Lease | Diversified | Yes | | |
| | 04170 | 111 E. North Street | Rapid City | SD | Kmart | Lease | | Yes | | |
| | 01111 | 2050 Southgate Road | Colorado Springs | CO | Sears | GL | Jeremy Coe, vehicle owner, Kaelin Coe, driver, Safeco Ins. Y8382197. | Yes | | |
| | 07006 | 2258 Addison Ave. East | Twin Falls | ID | Kmart | Lease | Minor, Dominic M. Farag. Janice Kroeger, Sr. | Yes | | |

185

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Debtor | Unit | Address | City | State | SCH Format | 10K Owned/ L/GL | Defendant Name | Recover | Jurisdiction | Court Case Number |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Deputy Prosecuting Atty, Twin Falls County, Idaho. | | | |
| | 01935 | 975 Hostos Ave | Mayaguez | PR | Sears | GL | | Yes | | |
| | 07192 | 320 South 25th Street | Easton | PA | Kmart | Lease | | Yes | | |
| | 01968 | 72-880 Highway 111 | Palm Desert | CA | Sears | Lease | Kellermeyer Bergensons Services, LLC. | Yes | | |
| | 01248 | 660 W. Winton Ave. | Hayward | CA | Sears | Lease | | Yes | | |
| | 03235 | 730 South Orange | West Covina | CA | Kmart | Lease | | Yes | | |
| Sears Roebuck & Co | 02694 | 100 Spotsylvania Mall | Fredericksburg | VA | Sears | Lease | Spotsylvania Mall Company c/o The Cafaro Company | Yes | Court of Common Pleas Trumball County, Ohio | 2018 cv 1614 |
| | 03972 | Sunny Isle S/C, Space #1 | St Croix | VI | Kmart | Lease | Sunny Isle Shopping Center, Inc. | Yes | | |
| | 09520 | 12057-A Hwy 49 | Gulfport | MS | Kmart | Lease | | Yes | | |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| Debtor | Unit | Address | City | State | SCH Format | 10K Owned/ L/GL | Defendant Name | Recover | Jurisdiction | Court Case Number |
|---|---|---|---|---|---|---|---|---|---|---|
|  | 02435 | 1531 Rio Road E. | Charlottesville | VA | Sears | Lease | Swift Transportation | Yes |  |  |
|  | 01674 | 100 Main Street | White Plains | NY | Sears | Lease | Manager Realty, LLC c/o Pacific Retail Capital Partners | Yes |  |  |
|  | 03873 | 4700 Limestone Road | Wilmington | DE | Kmart | Lease |  | Yes |  |  |
|  | 09224 | 5561 Overseas Highway | Marathon | FL | Kmart | Lease |  | Yes |  |  |
|  | 03592 | 5051 E. Bonanza Road | Las Vegas | NV | Kmart | Lease | Lange | Yes |  |  |
|  | 01008 | 2650 E. Olympic Blvd. | Los Angeles | CA | Sears | Lease |  | Yes |  |  |
|  | 01008 | 2650 E. Olympic Blvd. | Los Angeles | CA | Sears | Lease |  | Yes |  |  |
|  | 07653 | 42126 Big Bear Boulevard | Big Bear Lake | CA | Kmart | Lease | NorthStar Recovery Services Chubb | Yes |  |  |
|  | 01674 | 100 Main Street | White Plains | NY | Sears | Lease |  | Yes |  |  |
|  | 07383 | 241 Wooster Road North | Barberton | OH | Kmart | Lease | Danny Greenwade Ontario Bradley 3rd Defendant | Yes |  |  |

187

18-23538-rdd   Doc 2507   Filed 02/06/19   Entered 02/06/19 16:44:32   Exhibit A
Pg 1339 of 1450

FILED DATE: 5/19/2021 1:27 PM   2020L012403

188

FILED DATE: 5/19/2021 1:27 PM    2020L012403

## Schedule 6.7

### Taxes

Sears Reinsurance Company, Ltd is a regarded entity for U.S. federal income tax purposes.

**State Sales Tax Audits**

| Company Name | State | Audit Period | Status/Audit Issues / Proposed Assessment |
|---|---|---|---|
| A & E FACTORY SERVICES | CA | 01/12/2012-12/31/2014 | Field work beginning |
| A & E FACTORY SERVICES | PA | 1/01/2009 - 12/31/2012 | $2.6m proposed assessment; being appealed |
| A & E FACTORY SERVICES | SC | 1/12/2015-12/31/2018 | Awaiting contact from auditor |
| A & E FACTORY SERVICES | TN | 12/01/2008 - 1/31/2012 | Awaiting contact from auditor |
| A & E SIGNATURE SERVICES | CA | 01/01/12-12/31/14 | Field work beginning |
| KMART CORP | AR | 10/01/2013-09/30/2016 | Audit under way, no workpapers received |
| KMART CORP | FL | 05/01/2015-04/30/2018 | Fixed assets and expense reviewed with auditor proposing $60k liability.  Sales review has started. |
| KMART CORP | MI | TBD | Audit not yet started |
| KMART CORP | NJ | 01/01/14-12/31/17 | Fixed assets reviewed. |
| KMART CORP | PA | 1/1/15 - 8/1/18 | Audit under way, no workpapers received |
| KMART CORP | TX | 1/1/15-12/31/18 | Audit just starting |
| KMART OPERATIONS LLC | AR | 04/01/15-09/30/16 | Audit under way, no workpapers received |
| KMART OPERATIONS LLC | NV | 10/01/15-09/30/18 | Audit just starting |
| KMART OPERATIONS LLC | NY | 6/1/2015 - 11/30/2017 | Agreed/settled amount $363,381.96 |
| KMART STORES OF TEXAS | TX | 1/1/15-10/31/2018 | Audit just starting |
| SEARS ROEBUCK | AR | 10/01/2013-09/30/2016 | Audit under way, no workpapers received |
| SEARS ROEBUCK | AR | 10/01/2013-09/30/2016 | Audit under way, no workpapers received |
| SEARS ROEBUCK | CA | 01/01/2012 - present | Audit under way, no workpapers received: purchases & bad debt to be examined |

189

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| SEARS ROEBUCK | CA | 10/01/07 - 12/31/11 | Audit is being protested on credit card bad debt, penalty & interest of $600k, share 50% of exposure with Citibank |
| --- | --- | --- | --- |
| SEARS ROEBUCK | CO City of Castle Rock | 10/1/15-9/30/18 | Audit under way, no workpapers received |
| SEARS ROEBUCK | CO City of Lakewood | 4/1/15-3/31/18 | Proposed assessment of $70,426 |
| SEARS ROEBUCK | CT | 1/1/16-12/31/18 | Audit under way, no workpapers received |
| SEARS ROEBUCK | IL | 01/01/2013-06/30/2015 | Received assessment for $923,769. Being protested. |
| SEARS ROEBUCK | IL | 01/01/2016-06/30/2018 | Audit just starting |
| SEARS ROEBUCK | KS | 8/1/2015-7/31/2018 | Audit in progress; no work papers yet |
| SEARS ROEBUCK | KS | 08/01/2015-07/31/2018 | Audit in progress; no work papers yet |
| SEARS ROEBUCK | KS | 08/01/2015-07/31/2018 | Audit in progress; no work papers yet |
| SEARS ROEBUCK | MA | 07-01-14 - 09-30-16 | $300K assessment |
| SEARS ROEBUCK | MN | 9/01/2011 - 12/31/2015 | Audit in progress; no work papers yet |
| SEARS ROEBUCK | NC | 3/1/2016-2/28/2019 | Audit just starting |
| SEARS ROEBUCK | NJ | 01/01/14-12/31/17 | Audit just starting. |
| SEARS ROEBUCK | NV | 10/01/15-09/30/18 | Audit just starting |
| SEARS ROEBUCK | NV | 10/01/15-09/30/18 | Audit just starting |
| SEARS ROEBUCK | TN | 01/01/2011-06/30/2016 | Audit under way, no workpapers received |
| SEARS ROEBUCK | TX | 11/01/07 - 9/30/11 | Audit assessment and offsetting refund claim on credit card bad debt issue is being investigated by the State, share 50% of exposure with Citibank. |
| SEARS ROEBUCK | TX | 10/01/11 - 12/31/15 | Audit assessment and offsetting refund claim on credit card bad debt issue is being investigated by the State, share 50% of exposure with Citibank. |
| SEARS HOLDINGS CORP | OH | 01/01/15 - 12/31/17 | Commercial activity tax (CAT) audit; information provided for examination, no work papers yet |
| SEARS LOGISTICS SERVICES (INNOVEL) | PA | 01/01/13-06/30/16 | Audit under way, no workpapers received. |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| SEARS LOGISTICS SERVICES (INNOVEL) | TX | 1/1/17-10/31/18 | Audit just starting |
|---|---|---|---|
| SEARS OPERATIONS LLC | AR | 04/01/15-09/30/16 | Audit under way, no workpapers received |
| SEARS OPERATIONS LLC | CO City of Lakewood | 7/1/15-3/31/18 | Assessment of $45,735 |
| SEARS OPERATIONS LLC | FL | 07/01/15-06/30/18 | Audit not started. |
| SEARS OPERATIONS LLC | MA | 3/1/15 to 5/31/18 | Audit just starting |
| SEARS OPERATIONS LLC | NV | 10/01/15-09/30/18 | Audit just starting |
| SEARS OPERATIONS LLC | TX | 5/1/15 to 9/30/18 | Audit just starting |
| SEARS OPERATIONS LLC | NY | 6/1/2015 - 11/30/2017 | Agreed/settled amount $256,866.73 |
| SEARS PROCUREMENT COMPANY | NJ | 07/01/13-06/30/17 | Proposed assessment of $50,000 |
| SEARS PROCUREMENT SERVICES | NV | 10/01/15-09/30/18 | Audit just starting |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**State Income Tax Audits**

| Company Name | State | Audit Period | Status |
|---|---|---|---|
| Sears Reinsurance Co | NJ | 2000-2017 | Nexus audit in process |
| Sears, Kmart etc. (NJ filers) | NJ | 2013-2016 | In-process |
| Sears Combined Group | NY | 2015-2016 | In-process |
| Sears Logistics Services (Innovel) | CO | 2014-2017 | In-process |
| Kmart Holdings & Subs | CO | 2014-2017 | In-process |
| Sears Kmart etc. (AL filers) | AL | 2016-2017 | In-process |
| Sears Kmart etc. (GA filers) | GA | 2014-2016 | In-process |

192

FILED DATE: 5/19/2021 1:27 PM   2020L012403

### Schedule 6.8[8]

**Brokers or Finders**

1. Engagement Letter by and between the Special Committee of the Board of Directors of Sears Holdings Corporation and Centerview Partners LLC, dated as of April 28, 2018 (as may be amended from time to time).

2. Letter Agreement by and between Lazard Freres & Co. LLC and Sears Holdings Corporation, dated as of October 11, 2018 (as may be amended from time to time).

3. Real Estate Services Agreement by and between A&G Realty Partners, LLC, dated November 6, 2018 (as may be amended from time to time).

4. Engagement Letter by and between JLL Valuation & Advisory Services, LLC and Sears Holdings Corporation dated November 28, 2018 (as may be amended from time to time).

5. Real Estate Advisory Services Agreement (December 2018 Sales Process for Real Estate) by and between Sears Holdings Corporation and Jones Lang LaSalle Americas, Inc. dated December 6, 2018 (as may be amended from time to time).

6. Real Estate Advisory Services Agreement by and between Sears Holdings Corporation and Jones Lang LaSalle Americas, Inc. dated December 6, 2018 (as may be amended from time to time).

7. Items 10-45 from Schedule 6.11(a)(2) are hereby incorporated by reference.

---

[8] **Note to Draft**: The agreements represent the current agreements for Seller to pay brokerage or finders' fees, as applicable. Buyer has not agreed to pay any amounts under these agreements.

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

### Schedule 6.9

**Employee and Employee Plan Matters**

#### Schedule 6.9(a)

1. Sears, Roebuck & Co, Respondent and Local 881, United Food and Commercial Workers, Charging Party, Case No. 13-CA-191829.
2. Sears, Roebuck & Co, Respondent and Local 881, United Food and Commercial Workers, Charging Party, Case No. 13-CA-191829, NLRB (unfair labor practice charge pending appeals filed October and November 2018).
   Collective Bargaining Agreements
3. :

| Business Unit | Loan Party or other Subsidiary | Union | Contract Term |
|---|---|---|---|
| Supply Chain | Kmart Corporation – Logistics – RDC – Manteno, IL | IBT #705 | 2/5/18 - 1/31/21 |
| Supply Chain | Kmart Corporation – Logistics – RDC – Morrisville, PA | UAW #8275 | 9/11/16 - 3/8/20 |
| Supply Chain | Kmart Corporation – Logistics – RDC – Warren, OH | UAW #1112 | 9/2/15 - 9/8/18[9] |
| Home Services | Sears Roebuck – PRS – Detroit, MI | IBT #243 | 10/19/17 - 10/18/20 |
| Supply Chain | Sears Roebuck – MDO – Livonia, MI | IBT #243 | 10/26/17 - 10/26/20 |
| Auto | Sears Roebuck – Auto Center – Fairview Heights, IL | UFCW #881 | 3/25/18 - 3/27/21 |
| Retail | Sears Roebuck – Retail – Fairview Heights, IL | UFCW #881 | 3/25/18 - 3/27/21 |
| Home Services | Sears Roebuck – PRS – Akron, OH | IBT #348 | 5/19/18 - 5/18/21 |
| Home Services | Sears Roebuck – PRS – Cleveland, OH | UFCW #880 | 2/1/16 - 1/31/19 |
| Home Services | Sears Roebuck – PRS – Philadelphia, PA | IBT #107 | 7/15/11 - 7/14/15 |
| Supply Chain | Kmart Corporation – Logistics –- RSC – Chambersburg, PA | UNITE # 196 | 3/3/18 - 3/6/21 |
| Supply Chain | Kmart Corporation – Distribution Center – Mira Loma, CA | UNITE # 512 | 1/13/18 - 12/26/20 |
| Supply Chain | Sears Roebuck – MDO – Sacramento, CA | IBT #150 | 11/5/18 - 10/31/21 |
| Home Services | Sears Roebuck – PRS – St. Louis, MO | IBT #688 | 11/1/17 - 10/31/20 |
| Supply Chain | Sears Roebuck – DDC – Kent, WA | IBT # 174 | 11/1/16 - 10/31/19 |

---

[9] **Note to Draft**: Unit is operating under an Extension of the 2015-2018 contract; extended until 3/31/19. Unit announced for closing on 11/6. They anticipate operations will cease by mid-February. Bargaining of the effects of the closure are underway. Upon closure of unit, the contract will be void.

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| Business Unit | Loan Party or other Subsidiary | Union | Contract Term |
|---|---|---|---|
| Supply Chain | Sears Roebuck – MDO – Kent, WA | IBT # 174 | 12/4/16 – 9/30/19 |
| Home Services | Sears Roebuck – PRS – Fairview Heights, IL | UFCW #881 | 3/25/18 - 3/27/21 |
| Home Services | Sears Roebuck – PRS – McMurray (Pittsburgh), PA | USW 5852-28 | 1/1/17 - 12/31/19 |
| Home Services | Sears Roebuck – PRS – Toledo, OH | IBEW #8 | 2/1/18 – 1/31/21 |

**Schedule 6.9(b)**

1. Afzal, Massoud et al. v. Sears, Roebuck and Co., et al., BC 631074, Los Angeles Superior Court (Aug. 23, 2016).

2. Doe, John, James and Jane v. Sears Holdings Corporation; Kmart Corporation; Rebecca Van Hattem and Does 1-25, inclusive, C18-01719, Superior Court Cal. (Aug. 28, 2018).

3. Kmart Corporation v. National Retirement Fund, 01-16-0003-2951, AAA Arbitration.

**Schedule 6.9(c)**

1. SHC confirms as stated below and described in our annual reports:

   • Pension Plans

      o On July 14, 2015, the Company received notice from the U.S. Department of Labor, Employee Benefits Administration, Chicago Regional Office ("EBSA-Chicago") that EBSA-Chicago opened an investigation to determine whether any violations of ERISA occurred with respect to the Legacy Plan covering the period from January 1, 2012 through the present. EBSA-Chicago has indicated that it will not assess penalties against the Company or the Legacy Plan, but has requested that the Company enhance its administrative process for contacting participants eligible to commence benefits and commencing their benefits accordingly.

**Schedule 6.9(d)**

1. Sears Holdings Pension Plan – Department of Labor audit regarding missing participants is outstanding – SHIP notified of audit on July 10, 2015.

2. Sears Holdings Savings Plan – IRS audit regarding missing participants is outstanding – SHIP notified of audit on February 1, 2016.

**Schedule 6.9(e)**

1. Sears Holdings Pension Plan 1

2. Sears Holdings Pension Plan 2

WEIL:\96826275\11\73217.0003

18-23538-rdd Doc 2507-1 Filed 02/08/19 Entered 02/08/19 16:44:32 Exhibit A

FILED DATE: 5/19/2021 1:27 PM 2020L012403

**Schedule 6.9(f)**

1. Liability to Multiemployer Plan: Kmart Corporation incurred withdrawal liability in connection with its 2015 withdrawal from the National Retirement Fund.

**Schedule 6.9(g)**

1. Participant Letter (bonus payment) – Key Employee Retention Plan

2. Participant Letter (bonus payment) – Sears Holding Corporation Key Employee Incentive Plan

3. 

4.

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

**Schedule 6.10**

**Intellectual Property**

**Schedule 6.10(a)**

**Issued or Applied-For Patents**

Schedule 2.1(a)(iii) is hereby incorporated by reference.

**Registered or Applied-For Trademarks**

Schedule 2.1(a)(i) is hereby incorporated by reference.

**Registered or Applied-For Copyrights**

Schedule 2.1(a)(iv) is hereby incorporated by reference.

**Domain Names**

Schedule 2.1(a)(v) is hereby incorporated by reference.

**Media Accounts**

Schedule 2.1(a)(vi) is hereby incorporated by reference.

**Schedule 6.10(b)(i)**

| Patent Application No. | Patent No. | Description |
|---|---|---|
| 09/636181 | 6523840 | No recorded assignment from Ohio Steel to Sears |
| 10/340024 | 6679506 | Same as previous case (continuation) |
| 12/011106 | | No recorded assignment from Delver Comm'n to SHC Israel |
| 13/004331 | | No recorded assignment from inventor Klondick; filed petition during prosecution to proceed without him.  The USPTO granted Sellers' petition and awarded the application Rule 1.47(a) status on May 23, 2011. |
| 13/283943 | 9225766 | No recorded assignment from inventor Lash; filed petition during prosecution to proceed without him. The USPTO granted Sellers' petition and awarded the application Rule 1.47(a) status on May 18, 2012. |
| 13/421423 | 9438678 | No recorded assignment from inventors Kozolowski and Monnie; filed petition during prosecution to proceed without them. The USPTO granted Sellers' petition and awarded the application Rule 1.47(a) status on February 13, 2013. |
| 13/421603 | 9129302 | No recorded assignment from inventor Lucas |
| 13/826128 | 9330413 | No recorded assignment from inventor Lyons |
| 13/910216 | | No recorded assignment from inventors |
| 13/926383 | | No recorded assignment from inventors |

WEIL:\96826275\11\73217.0003

| 13/998540 | | No recorded assignment from inventor Lucas |
| 14/083815 | | No recorded assignment from inventor Tamir |
| 14/084903 | | No recorded assignment from inventor Tamir |
| 29/209636 | D509654 | No recorded assignment from Kmart of Michigan to Sears |
| 29/528304 | D767648 | No recorded assignment from inventors Ogg and Lee |
| 29/528339 | D773917 | No recorded assignment from inventors Green and Burgess |
| 29/554459 | D791180 | No recorded assignment from inventor Sun |
| 29/554463 | D801388 | No recorded assignment from inventor Sun |
| 29/554469 | D791181 | No recorded assignment from inventor Sun |
| 29/554470 | D791168 | No recorded assignment from inventor Sun |
| 29/554472 | D797117 | No recorded assignment from inventor Sun |
| 29/554475 | D793425 | No recorded assignment from inventor Sun |
| 29/554476 | D789946 | No recorded assignment from inventor Sun |
| 29/554479 | D793426 | No recorded assignment from inventor Sun |
| 29/554480 | D789947 | No recorded assignment from inventor Sun |
| 29/554481 | D791816 | No recorded assignment from inventor Sun |
| 29/554483 | D789984 | No recorded assignment from inventor Sun |
| 29/554484 | D773516 | No recorded assignment from inventor Sun |
| 29/554487 | D791817 | No recorded assignment from inventor Sun |
| 29/554489 | D791169 | No recorded assignment from inventor Sun |
| 29/554492 | D789948 | No recorded assignment from inventor Sun |
| 29/554493 | D789949 | No recorded assignment from inventor Sun |
| 29/554494 | D791170 | No recorded assignment from inventor Sun |
| 29/554496 | D792445 | No recorded assignment from inventor Sun |
| 29/554497 | D791818 | No recorded assignment from inventor Sun |
| 29/554499 | D793427 | No recorded assignment from inventor Sun |
| 29/554500 | D792446 | No recorded assignment from inventor Sun |
| 29/554501 | D790587 | No recorded assignment from inventor Sun |
| 29/554503 | D791171 | No recorded assignment from inventor Sun |
| 29/554843 | D795287 | No recorded assignment from inventor Sun |
| 29/571792 | D795312 | No recorded assignment from inventors Ogg and Lee |

Encumbrances

1. First Amended and Restated Sublicense Agreement, dated April 1, 2005, by and between Sears Intellectual Property Management Company and Sears, Roebuck and Co.

2. License and Intellectual Property Management Agreement, dated February 1, 2003, by and between Sears Brands, LLC and Sears Intellectual Property Management Company.

3. Trademark License Agreement, dated December 14, 2001, by and between Sears, Roebuck and Co., and A&E Factory Service, LLC.

4. Amended and Restated License Agreement, dated January 29, 2007, by and between Sears Brands, L.L.C., as successor in interest to the trademark rights of Kmart of Michigan, Inc., and Kmart Corporation.

5. Sublicense Agreement, dated February 9, 2010, by and between Sears Brands Business Unit Corporation and Kmart Corporation.

6. License Agreement, dated January 29, 2007, by and between Sears Brands, L.L.C., as a successor in interest to the trademark rights of Kmart of Michigan, Inc., and Kmart.com LLC.

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

7.  License Agreement, dated January 29, 2007, by and between Sears Brands, L.L.C., and Kmart of Michigan, Inc.

8.  License Agreement, dated January 29, 2007, by and between Sears Brands, L.L.C., as successor in interest to the trademark rights of Kmart of Michigan, Inc. and Kmart of Washington LLC.

9.  License Agreement, dated January 29, 2007, by and between Sears Brands, L.L.C., as a successor in interest to the trademark rights of Kmart of Michigan, Inc., and Kmart Stores of Illinois LLC.

10. License Agreement, dated January 29, 2007, by and between Sears Brands, L.L.C., as a successor in interest to the trademark rights of Kmart of Michigan, Inc., and Kmart Stores of Texas LLC.

11. Sublicense Agreement, dated February 9, 2010, by and between Kmart Corporation and MyGofer LLC.

12. Sublicense Agreement, dated September 22, 2008, by and between Sears Brands Business Unit Corporation and Sears Brands Management Corporation as amended by First Amendment to Sublicense Agreement, dated November 24, 2008, and Second Amendment to Sublicense Agreement, dated April 30, 2012.

13. Sublicense Agreement, dated February 9, 2010, by and between Sears Brands Business Unit Corporation and Sears Holdings Management Corporation.

14. Sublicense Agreement, dated February 9, 2010, by and between Sears, Roebuck and Co. and Sears Home Improvement Products, Inc.

15. First Amended and Restated Sublicense Agreement, dated April 1, 2005, by and between Sears Brands Business Unit Corporation and Sears, Roebuck and Co. as amended by Amendment 1 to First Amended and Restated Sublicense Agreement, dated May 1, 2006, and Amendment 2 to First Amended and Restated Sublicense Agreement, dated January 1, 2008.

16. Corporate Name Agreement, dated April 21, 2010, by and between Sears, Roebuck and Co. and Sears, Roebuck de Puerto Rico, Inc.

17. Sublicense Agreement, dated April 21, 2010, by and between Sears, Roebuck and Co. and Sears, Roebuck de Puerto Rico, Inc.

18. Sublicense Agreement, dated November 20, 2007, by and between Sears Intellectual Property Management Corporation and ServiceLive, Inc.

19. Retail Store License Agreement, dated January 1, 2014, by and between Sears Brands Management Corporation and Homemart, S.A.

20. License Agreement, dated June 23, 2017, by and between Sears Brands Management Corporation and Cleva North America, Inc.

21. License Agreement, dated December 2017, by and between Sears Brands Management Corporation and Drinkpod LLC.

22. License Agreement, dated February 2, 2017, as amended May 30, 2017 and August 28, 2017, by and between Sears Brands Management Corporation and Permasteel, Inc.

23. License Agreement (DieHard Portable Power Products), dated January 10, 2014, by and between Sears Brands Management Corporation and Schumacher Electric Corporation, as amended by Amendment #1 to License Agreement for DieHard Portable Power Products, dated January 31, 2018, and Amendment #2 to License Agreement for DieHard Portable Power Products, dated October 25, 2018.

24. License Agreement, dated June 15, 2017, by and between Sears Brand Management Corporation and Dorcy International, Inc.

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

25. License Agreement, dated February 20, 2018, by and between Sears Brands Management Corporation and Andrew J. Consulting, Inc., as amended by Amendment #1 to License Agreement, dated April 4, 2018.

26. Brand Sales Agreement, dated November 23, 2005, by and between Sears, Roebuck and Co. and Orchard Supply Hardware LLC.

27. Amended and Restated Trademark License Agreement, dated April 17, 2002, by and among Sears, Roebuck and Co., Sears Brands Management Corporation, and Sears, Roebuck de Mexico, S.A. de C.V.; as amended by Amendment to Amended and Restated Trademark License Agreement, dated October 1, 2009, and Second Amendment to Amended and Restated Trademark License Agreement, dated January 1, 2010.

28. License Agreement, dated December 2016, as amended May 29, 2017, by and between Sears Holdings Management Corporation and Beijing Industrial Development Co., Ltd.

29. License Agreement, dated August 2, 2018, by and between Sears Brands Management Corporation and Gibson Overseas, Inc.

30. Label Trade Credit Program Agreement, dated April 20, 2011, by and between Sears Holdings Management Corporation and Bluetarp Financial, Inc.

31. Amended and Restated Merchandising Agreement, dated May 1, 2016, by and among, Roebuck and Co., Kmart Corporation, Sears Holdings Corporation, Sears Hometown Outlet Stores, Inc., Sears Authorized Hometown Stores, LLC and Sears Outlet Stores L.L.C., as amended by Amendment to Amended and Restated Merchandising Agreement, dated March 8, 2017, Amendment No. 2 to Amended and Restated Merchandising Agreement, dated July 10, 2017, and Amendment No. 3 to Amended and Restated Merchandising Agreement, dated December 15, 2017.

32. Trademark License Agreement, dated August 8, 2012, by and between Sears, Roebuck and Co. and Sears Hometown and Outlet Stores, Inc., as amended by Amendment No. 1 to Trademark License Agreement, dated October 11, 2012.

33. Amended and Restated Agreement, dated February 16, 2018, by and among Sears Holding Corporation, Sears, Roebuck and Co., Kmart Corporation, Sears Hometown and Outlet Stores, LLC, Sears Outlet Stores, L.L.C., Sears Home Appliance Showrooms, LLC, Bank of America, N.A., and Gordon Brothers Finance Company, as agent.

34. Store License Agreement, dated August 8, 2012, by and between Sears, Roebuck and Co. and Sears Authorized Hometown Stores, LLC, as amended by Amendment No. 1 to Store License Agreement, dated July 10, 2017.

35. Store License Agreement, dated August 8, 2012, by and between Sears Roebuck and Co. and Sears Home Appliance Showrooms, LLC.

36. Store License Agreement, dated August 8, 2012, by and between Sears Roebuck and Co. and Sears Outlet Stores, L.L.C., as amended by Amendment No. 1 to Store License Agreement (Outlet), dated October 6, 2013, and Amendment No. 2 to Store License Agreement (Outlet) dated May 1, 2016.

37. Retail Operations Agreement, dated April 4, 2014, by and between Sears, Roebuck and Co. and Lands' End, Inc., as amended by the Letter Agreement, dated July 23, 2018.

38. License and Services Agreement, dated October 28, 2016, by and between Afero, Inc. and Sears Brands Management Corporation.

WEIL:\96826275\11\73217.0003

39. Master License and Services Agreement, dated September 12, 2017, by and between Afero, Inc. and Sears Brands Management Corporation.

40. Superpriority Junior Lien Secured Debtor-in-Possession Credit Agreement, dated November 29, 2018, by and among Sears Holdings Corporation, Sears Roebuck Acceptance Corp., Kmart Corporation, the several banks, financial institutions or entities from time to time party thereto as term lenders, and Cantor Fitzgerald Securities, as administrative agent.

41. Debtor-in-Possession Guarantee and Collateral Agreement, dated November 29, 2018, by and among Sears Holdings Corporation, Sears Roebuck and Co., Sears Roebuck Acceptance Corp., Kmart Holding Corporation, Kmart Corporation and Cantor Fitzgerald Securities, as collateral agent.

42. Superpriority Senior Secured Debtor-in-Possession Asset-Based Credit Agreement, dated November 29, 2018, by and among Sears Holdings Corporation, Sears Roebuck Acceptance Corp., Kmart Corporation, the banks, financial institutions and other institutional lenders party thereto as revolving lenders or term lenders, Bank of America, N.A., as administrative agent, Wells Fargo Bank, National Association, as co-collateral agent and syndication agent, Citigroup Global Markets Inc. as documentation agent, Merrill Lynch, Pierce, Fenner & Smith Incorporation, Citibank, N.A. and Wells Fargo Bank, National Association, as joint lead arrangers and bookrunners.

43. Debtor-in-Possession Guarantee and Collateral Agreement, dated November 29, 2018, by and among Sears Holdings Corporation, Sears Roebuck and Co., Sears Roebuck Acceptance Corp., Kmart Holding Corporation, Kmart Corporation, and Bank of America, N.A. and Wells Fargo Bank, National Association, as co-collateral agents.

44. Term Loan Credit Agreement, dated January 4, 2018, by and among Sears Holdings Corporation, Sears Roebuck Acceptance Corp., Kmart Corporation, each of Sears Holdings Corporation's other direct or indirect domestic subsidiaries that is or otherwise becomes party thereto, and JPP, LLC, as collateral agent.

45. Intellectual Property Security Agreement, dated January 4, 2018, by and between Sears Holdings Corporation, Sears Roebuck Acceptance Corp., Kmart Corporation, and each of Sears Holdings Corporations other direct or indirect domestic subsidiaries that is or otherwise becomes party thereto, and JPP, LLC, as collateral agent.

46. Exclusive Distributorship Agreement, dated August 31, 2017, by and between Sears Brands Management Corporation and Distribuidora y Comercializadora Master Brands SpA.

47. Distributorship Agreement, dated January 25, 2018, by and between Sears Brands Management Corporation and Globistic Company, Inc.

48. Distributorship Agreement, as amended February 7, 2018, by and between Sears Brands Management Corporation and ANSA McAL (US) Inc.

49. Distributorship Agreement, dated June 7, 2017, by and between Sears Brands Management Corporation and Algert Company.

50. Second Amended and Restated Program Agreement, dated October 3, 2018, by and among Sears, Roebuck and Co., Sears Brands Business Unit Corporation, Sears Brands,

51. Sellers' form of Sears Garage Door Services Franchise Agreement for the sale, installation and repair of garage doors and garage door openers (the "Garage Door Business") may restrict Sellers from operating, or granting to a licensee the right to operate, a Garage Door Business on a stand-alone basis (without any additional products included in such sale, installation or repair) within the applicable franchised territory under certain trademarks owned or licensed, and used,

FILED DATE: 5/19/2021 1:27 PM   2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

18-23538-shl    Doc 2507    Filed 02/08/19    Entered 02/08/19 16:44:32    Exhibit A
Pg 1331 of 1450

promoted and licensed by Sears Home & Business Franchises, Inc. for the term of such agreement.

52. On July 26, 1995 the entity Plaza Lama recorded itself before the Central Bank of the Dominican Republic as the exclusive distributor for products sold under the trademarks Kenmore, and DieHard (the "Products") in the Dominican Republic based on a number of documents and invoices from Cargil International Corp., the authorized regional distributor at that time. The recordation expressly recognizes Plaza Lama as the "exclusive distributor" in the Dominican Republic. For a two (2) year period beginning on February 20, 2007, Plaza Lama distributed Products in the Dominican Republic, in the absence of any written distribution agreement, but in February of 2009, Sears informed Plaza Lama that it had assigned its sales and marketing of Products to the entity Ansa McAL. Plaza Lama stopped distributing Products and requested to purchase directly from Sears. In November of 2011, Plaza Lama contacted Ansa McAL and claimed exclusive distribution rights in the Dominican Republic under Local Law 173 and requested that Ansa McAL cease distribution of Products through other companies. The disagreement led Sears to file a lawsuit against Plaza Lama in a court of first instance (the "Court") in the Dominican Republic, and Plaza Lama counterclaimed. On September 20, 2017, the Court ruled that Plaza Lama held exclusive distribution rights to Products in the Dominican Republic. Sears is currently considering whether to appeal the Court's ruling.

**Schedule 6.10(c)**

(ii)    Alleged infringement of third-party IP

- C&D Letters:

| Sending Party | Date Received | Overview of Claim |
|---|---|---|
| Combe Inc. | 11/13/18 | Alleging that Kmart's feminine wash product, which states "ODOR BLOCK PROTECTION" on its label, infringes Combe's registered trademark ODOR BLOCK, used in connection with its Vagisil product |
| Emeline Tate-Robertson | 11/16/2018 | Alleging that certain bike helmets and bedding sold by Kmart infringe ETR's alleged copyright rights in her "jagged glass" artwork; no indication that the work is registered |
| Airstream, Inc. | 12/7/18 | Alleging that Sears's inflatable Christmas decoration of a trailer infringes Airstream's registered trademark AIRSTREAM and trade dress rights in the design of its trailers |

- Actions pending:

| Court | Docket Number | Description | Filed |
|---|---|---|---|
| U.S. District - Michigan Western | 1:14cv83 | Rohn et al. v. Viacom International, Inc. et al. | 01/23/2014 |
| U.S. District - Texas Eastern | 6:16cv33 | Tinnus Enterprises, LLC et al. v. Telebrands Corp. | 01/26/2016 |
| U.S. District - Texas Eastern | 6:16cv34 | Tinnus Enterprises, LLC v. Wal-Mart Stores, Inc. | 01/26/2016 |
| U.S. District - Oregon | 3:15cv171 | Trailers Intl, LLC et al. v. Mastercraft Tools Florida, Inc. et al. | 01/30/2015 |

| U.S. District - New York Southern | 1:14cv1254 | The Fashion Exchange LLC v. Hybrid Promotions, LLC et al. | 02/26/2014 |
| U.S. District - Florida Southern | 9:18cv80296 | Aspen Licensing International, Inc. v. Sears Holdings Management Corp. et al. | 03/08/2018 |
| U.S. District - Illinois Northern | 1:18cv1885 | Grecia v. Sears Holdings Corporation | 03/15/2018 |
| U.S. District - New Jersey | 3:13cv1944 | Richmond v. Ningbo Hangshun Electrical Co., Ltd. et al. | 03/27/2013 |
| U.S. District - Texas Eastern | 6:17cv199 | Tinnus Enterprises, LLC et al. v. Bed Bath & Beyond Inc., et al. | 04/03/2017 |
| U.S. District - California Central | 2:18cv3556 | Gold Value International Textile, Inc. v. Ax Paris USA, LLC et al. | 04/26/2018 |
| U.S. District - Minnesota | 0:09cv1091 | Aviva Sports, Inc. v. Fingerhut Direct Marketing, Inc., et al. | 05/11/2009 |
| U.S. District - New Mexico | 1:15cv406 | Shive v. Amazon.Com, Inc. et al. | 05/12/2015 |
| U.S. District - California Central | 2:17cv3665 | L.A. Gem and Jewelry Design, Inc. v. Sears Holdings Management Corporation et al. | 05/16/2017 |
| U.S. District - Texas Eastern | 2:18cv228 | Flectere LLC v. Sears Brands, L.L.C. | 05/24/2018 |
| U.S. District - Texas Eastern | 2:18cv275 | Unoweb Virtual, LLC v. Sears Holdings Corp. | 07/09/2018 |
| U.S. District - New York Southern | 1:18cv6281 | GCE International, Inc. v. Kmart Corporation | 07/11/2018 |
| U.S. District - New York Southern | 1:18cv6812 | Graham v. RWTW, LLC et al. | 07/30/2018 |
| U.S. District - California Central | 2:17cv6226 | Benavidez v. Kmart Corporation et al. | 08/23/2017 |
| U.S. District - New York Southern | 1:17cv7097 | Bulski v. Tanya Creations, LLC, et al. | 09/18/2017 |
| U.S. District - California Central | 2:17cv7151 | Deckers Outdoor Corporation v. Sears, Roebuck and Co., et al. | 09/27/2017 |
| U.S. District - California Central | 2:17cv7151 | Deckers Outdoor Corporation v. Sears, Roebuck and Co., et al. | 09/27/2017 |
| U.S. District - Texas Eastern | 6:18cv569 | Tinnus Enterprises, LLC et al. v. Sears Holding Corp. | 10/31/2018 |
| U.S. District - California Central | 2:17cv9046 | Universal Dyeing and Printing Inc. v. Walmart Inc., et al. | 12/15/2017 |
| U.S. District - New York Southern | 1:17cv9840 | Standard Fabrics International, Inc. v. Project 28 Clothing, LLC et al. | 12/15/2017 |

(iii)

Third Party Challenges to the Validity of Acquired Intellectual Property

| Country | Type of Proceeding | Other Party | Marks at Issue |
| --- | --- | --- | --- |
| Brazil | Third Party Opposing Sears Mark | Limpeza | SEARS (App. No. 910112100) in Class 11 |

FILED DATE: 5/19/2021 1:27 PM   2020L012403

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM   2020L012403

| Brazil | Third Party Seeking to Cancel of Sears's Registration | Limpeza | SEARS (Reg. No. 811234940) in Class 35 |
| Brazil | Third Party Opposing Sears Mark | Limpeza | SEARS (App. No. 910112053) in Class 09 |
| Brazil | Third Party Opposing Sears Mark | Limpeza | SEARS (App. No. 910112169 in Class 21 |
| Brazil | Third Party Opposing Sears Mark | Limpeza | SEARS (App. No. 910112193) in Class 24 |
| Brazil | Third Party Opposing Sears Mark | Limpeza | SEARS (App. No. 910112231) in Class 25 |
| Brazil | Third Party Opposing Sears Mark | Limpeza | SEARS (App. No. 910207364) in Class 07 |
| Brazil | Third Party Opposing Sears Mark | Limpeza | SEARS (App. No. 910207372) in Class 28 |
| Brazil | Third Party Opposing Sears Mark | Limpeza | SEARS (App. No. 910207399) in Class 36 |

With respect to the last sentence of Section 6.10(c) only:

1. Rob Gerlach, Divisional VP – Loyalty Marketing for SHC, is serving in the Middle East on a nine-month military deployment.  In early October 2018, Mr. Gerlach e-mailed Eddie Lampert a video (https://www.youtube.com/watch?v=Md5BiPn0b-k) showing a retail store in Kuwait bearing the SEARS logo.  After some internal investigation, it was determined that the store belonged to Al Husawi Group, a former Sears distributor.  Sears forwarded the materials to its outside IP counsel, who contacted an IP firm in Kuwait to discuss potential next steps – including sending a cease and desist letter.  At this point, Sears has not contacted Al Husawi regarding this issue.

2. In connection with the Proceedings listed below, the applicable third parties have used and filed to register the following Marks at Issue:

| Country | Type of Proceeding | Other Party | Marks at Issue |
|---|---|---|---|
| Brazil | Opposition of Third-Party Mark | Limpeza | SEARS (App. No. 909339708) in Class 35 |
| Brazil | Opposition of Third-Party Mark | Limpeza | SEARS (App. No. 909498865) in Class 07 |
| Brazil | Opposition of Third-Party Mark | Limpeza | SEARS (App. No. 909420670 ) in Class 09 |
| Brazil | Opposition of Third-Party Mark | Limpeza | SEARS (App. No. 909420742) in Class 11 |
| Brazil | Opposition of Third-Party Mark | Limpeza | SEARS (App. No. 909420777) in Class 21 |
| Brazil | Opposition of Third-Party Mark | Limpeza | SEARS (App. No. 909420807) in Class 24 |
| Brazil | Opposition of Third-Party Mark | Limpeza | SEARS (App. No. 909420815) in Class 25 |
| Brazil | Opposition of Third-Party Mark | Limpeza | SEARS (App. No. 909498938) in Class 28 |
| Brazil | Opposition of Third-Party Mark | Limpeza | SEARS (App. No. 909499128) in Class 36 |

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

| India | Opposition of Third-Party Mark | K. ANAND t/as CEARS MARKETING | CEARS (App. No. 1421296) in Class 11 |
| India | Opposition of Third-Party Mark | Kmart Retail India Pvt. Ltd. | K KIDS MART and Design (App. No. 1641668) in Class 35 |
| India | Opposition of Third-Party Mark | K MART TOURS (P) LTD. | K MART TOURS (P) LTD. (App. No. 1865978) in Class 39 |
| India | Opposition of Third-Party Mark | Aggarwal Enterprises | K-Mark (App. No. 1166777) in Class 24 |
| India | Opposition of Third-Party Mark | Besta Cosmetics Ltd. | Kmart and Design (App. No. 1132511) in Class 5 |
| India | Opposition of Third-Party Mark | Sear Energy Pvt. Ltd. | SEAR ENERGY (App. No. 1584141) in Class 9 |
| India | Opposition of Third-Party Mark | Ashok K Chhabra d/b/a Sears Enterprises | SEARS (App. No. 2474429) in Class 35 |
| India | Opposition of Third-Party Mark | Sears Industries | SEARS (Appl. No. 2342129) in Class 21 |
| Peru | Cancellation of Third-Party Registration | Corporacion Electronica Internacional S.A.C. | SEARS (App. No. 713022-2017) in Class 11 |

**Schedule 6.10(e)**

1. In mid-March 2018, [24]7.ai, a company that provides online support services to Sears and Kmart, notified Sears, as well as a number of other companies, that [24]7.ai had experienced a security incident in the fall of 2017.  Sears believes this incident involved unauthorized access to less than 100,000 of Sears and Kmart customers' credit card information.  After [24]7.ai informed Sears, Sears notified the credit card companies in order to prevent potential fraud, and launched an investigation with federal law enforcement authorities, Sears banking partners, and IT security firms.

   As a result of the investigation, Sears discovered that an unauthorized individual incorporated a malicious script into code used by [24]7.ai to provide services on Sears.com and Kmart.com, which collected the names, addresses, and payment card information of customers who placed or attempted to place orders on the Sears.com or Kmart.com websites between September 27, 2017 and October 12, 2017, and entered their payment card information manually on the checkout screen. Sears notified credit card companies in order to prevent potential fraud, and launched a further investigation with federal law enforcement authorities, Sears banking partners and IT security firms.  Sears sent emails and letters to affected customers notifying them of the breach, and released a press release to notify any other customer who attempted to place this type of order but had their payment card declined that such customer could also potentially be affected by the incident. Such press release notified affected customers of their rights under certain state and federal privacy regulations. Sears provided information regarding the incident to the Attorney General, and there are no outstanding requests at this time. [24]7.ai has fully remediated the vulnerabilities that enabled the unauthorized access, and Sears's CIO, Greg Russell and a third party auditor inspected [24]/7.ai's systems and practices at [24]7.ai's facilities. In addition, Sears

205

obtained the PFI (Verizon) report and [24]7.ai's report from Crowdstrike, which also outlined all actions taken by [24]7.ai to remedy the situation.

2.  In February 2017, a third party gained access to a small number of employee enterprise ID accounts, through phishing attacks. The third party changed these employees' direct deposit account information.  The Company discovered the attempt, prevented any loss, and has fully remediated this particular situation including by requiring all employees to reset their enterprise passwords.

## Schedule 6.10(g)

1.  In 2018, Sears Protection Company received a generic reminder email from New York Department of Financial Services that was sent to all Covered Entities who had not yet submitted a certificate of compliance pursuant to 23 NYCRR 500 (the New York Department of Financial Services Cybersecurity Regulation). Sellers have not yet submitted such certificate of compliance, and are currently working with outside counsel to review and modify (if necessary) the cybersecurity programs, policies and practices of Sears Protection Company to ensure that Sears Protection Company is fully in compliance with 23 NYCRR 500, and to submit the certificate of compliance with a view toward submitting such certificate prior to the Closing. Sears Protection Company has not received a claim from any third party, including from the New York Department of Financial Services, in connection with any aspect of its compliance with 23 NYCRR 500.

## Schedule 6.10(g)(ii)

1.  Item 1 of Schedule 6.10(e) is incorporated herein by reference.

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

## Schedule 6.11
## Material Contracts

### Schedule 6.11(a)

### (i)

1. The collective bargaining agreements set forth in <u>Schedule 6.9(a)</u> are hereby incorporated by reference.

### (ii)

1. Real Estate Sale Contract, dated as of November 29, 2018, by and between Sears, Roebuck and Co. and Other Seller Parties Named Herein and Amerco Real Estate Company, as amended.

2. Real Estate Contract, dated as of May 4, 2018, by and between KMART Corporation ("<u>Seller</u>") and Amerco Real Estate Company ("<u>Purchaser</u>"), as amended by that certain Amendment to Real Estate Contract, dated as of December 14, 2018, by and between Seller and Purchaser.

3. Contract for Purchase and Sale of Property, dated as of June 4, 2018, by and between Sears, Roebuck and Co. ("<u>Seller</u>") and LGR Investments, Ltd. ("<u>Purchaser</u>"), as amended by that certain First Amendment to Contract for Purchase and Sale of Property, dated as of September 10, 2018, by and between Seller and LGR Investments, Ltd., as amended by that certain Second Amendment to Contract for Purchase and Sale of Property, dated as of November 30, 2018, by and between Seller and Purchaser.

4. Real Estate Sale Contract, dated as of September 27, 2018, by and between SRC Facilities LLC ("<u>Seller</u>") and Onward Investors Value Fund, L.P. ("<u>Purchaser</u>"), as amended by that certain Amendment to Real Estate Contract, dated as of October 29, 2018, by and between Seller and Purchaser, as amended by that certain Second Amendment to Real Estate Contract, dated as of November 2, 2018, by and between Seller and Purchaser, as amended by that certain Third Amendment to Real Estate Contract, dated as of November 9, 2018, by and between Seller and Purchaser, and as amended by that certain Fourth Amendment to Real Estate Contract dated as of November 26, 2018.

5. Real Estate Sale Contract, dated as of September 28, 2018, by and between KMART Corporation ("<u>Seller</u>") and New Generation Properties, LLC ("<u>Purchaser</u>"), as amended by that certain Amendment to Real Estate Contract, dated as of December 10, 2018, by and between Seller and Purchaser.

6. Real Estate Sale Contract, dated as of August 13, 2018, by and between Sears, Roebuck and Co. ("<u>Seller</u>") and Stonecrest Resorts, LLC, as predecessor in interest to Fitness Central SPE, LLC ("<u>Purchaser</u>"), as amended by that certain Amendment to Real Estate Contract, dated as of January 8, 2019, by and between Seller and Purchaser.

7. Real Estate Sale Contract, dated as of May 23, 2028, by and between KMART Corporation and Troy Coolidge No. 7, LLC, collectively, as seller and Rise Holdings, LLC, as purchaser.

8. Real Estate Sale Contract, dated as of July 25, 2018, by and between Troy Coolidge No. 10, LLC, KMART Corporation, and Sears, Roebuck and Co. (collectively, "<u>Seller</u>") and Industrial Commercial Properties LLC ("<u>Purchaser</u>"), as amended by that certain First Amendment to Real Estate Sale Contract, dated as of September 24, 2028, by and between Seller and Purchaser, as amended by that certain Second Amendment to Real Estate Contract, dated as of December 19, 2018, by and between Seller and Purchaser.

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

9. Real Estate Sale Contract, dated as of December 27, 2018, by and between Sears, Roebuck and Co. and TQ Investments, LLC.

10. Exclusive Listing Agreement, dated as of December 13, 2018, by and between Sears Holding Corporation and Holliday GP Corp.

11. Exclusive Listing Agreement, dated as of December 11, 2018, by and between Sears Holding Corporation and KPM Realty Advisors.

12. Exclusive Listing Agreement, dated as of December 12, 2018, by and between Sears Holding Corporation and Stokas Realty Advisors, LLC.

13. Exclusive Listing Agreement, dated as of December 13, 2018, by and between Sears Holding Corporation and Pinpoint Retail Company, LLC.

14. Exclusive Listing Agreement, dated as of December 12, 2018, by and between Sears Holding Corporation and JBRS Realty, LLC.

15. Exclusive Listing Agreement, dated as of December 11, 2018, by and between Sears Holding Corporation and Hurd Real Estate Services, LLC and LANE4 Property Group, Inc.

16. Exclusive Listing Agreement, dated as of December 11, 2018, by and between Sears Holding Corporation and LANE4 Property Group, Inc.

17. Exclusive Listing Agreement, dated as of December 2018, by and between Sears Holding Corporation and Colliers International, MN., LLC.

18. Exclusive Listing Agreement, dated as of December 11, 2018, by and between Sears Holding Corporation and Investors Realty, Inc.

19. Exclusive Listing Agreement, dated as of December 2018, by and between Sears Holding Corporation and Morton G. Thalhimer, Inc.

20. Exclusive Listing Agreement, dated as of December 17, 2018, by and between Sears Holding Corporation and Venture Commercial Real Estate, LLC.

21. Exclusive Listing Agreement, dated as of December 12, 2018, by and between Sears Holding Corporation and R.I. Properties, Inc.

22. Exclusive Listing Agreement, dated as of December 11, 2018, by and between Sears Holding Corporation and Legend Partners, LLP.

23. Exclusive Listing Agreement, dated as of December 12, 2018, by and between Sears Holding Corporation and SullivanHayes Companies, NE, LLC.

24. Exclusive Listing Agreement, dated as of January 4, 2019, by and between Sears Holding Corporation and Legend Partners II

25. Exclusive Listing Agreement, dated as of December 12, 2018, by and between Sears Holding Corporation and Wm, Bourdoures Co.

26. Exclusive Listing Agreement, dated as of December 12, 2018, by and between Sears Holding Corporation and Southplace Properties, Inc.

27. Exclusive Listing Agreement, dated as of December 28, 2018, by and between Sears Holding Corporation and Legend Partners, LLC.

28. Exclusive Listing Agreement, dated as of December 17, 2018, by and between Sears Holding Corporation and Jones Lang La Salle America, Inc.

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

29. Exclusive Listing Agreement, dated as of December 20, 2018, by and between Sears Holding Corporation and The Trilogy Group, LLC.

30. Exclusive Listing Agreement, dated as of December 11, 2018, by and between Sears Holding Corporation and Metro Commercial Real Estate.

31. Exclusive Listing Agreement, dated as of December 19, 2018, by and between Sears Holding Corporation and Baker Storey McDonald Properties, Inc.

32. Exclusive Listing Agreement, dated as of December 11, 2018, by and between Sears Holding Corporation and TRIO Commercial Property Group, LLC.

33. Exclusive Listing Agreement, dated as of December 2018, by and between Sears Holding Corporation and Metro Commercial Real Estate, Inc.

34. Exclusive Listing Agreement, dated as of December 2018, by and between Sears Holding Corporation and Metro Commercial Real Estate, Inc.

35. Exclusive Listing Agreement, dated as of December 12, 2018, by and between Sears Holding Corporation and Stokas Realty Advisors, LLC.

36. Exclusive Listing Agreement, dated as of December 11, 2018, by and between Sears Holding Corporation and Howard Hanna WNY, Inc.

37. Exclusive Listing Agreement, dated as of December 12, 2018, by and between Sears Holding Corporation and The Chambers Group, LLC.

38. Exclusive Listing Agreement, dated as of December 11, 2018, by and between Sears Holding Corporation and The Dartmouth Company.

39. Exclusive Listing Agreement, dated as of December 26, 2018, by and between Sears Holding Corporation and SRSA Commercial Real Estate, Inc.

40. Exclusive Listing Agreement, dated as of December 11, 2018, by and between Sears Holding Corporation and Avision Young Florida, LLC.

41. Exclusive Listing Agreement, dated as of December 10, 2018, by and between Sears Holding Corporation and NMERA, Inc.

42. Exclusive Listing Agreement, dated as of December 14, 2018, by and between Sears Holding Corporation and Gehrki Commercial Real Estate.

43. Exclusive Listing Agreement, dated as of December 11, 2018, by and between Sears Holding Corporation and Edge Real Estate Group, LLC.

44. Exclusive Listing Agreement, dated as of December 28, 2018, by and between Sears Holding Corporation and Legend Partners, LLC

45. Exclusive Listing Agreement, dated as of December 2018, by and between Sears Holding Corporation and Jones Lang La Salle America, Inc.

**(iii)**

1. None.

**(iv)**

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

1. Kenmore License Agreement, dated May 18, 2006, by and between KCD IP, LLC and Sears, Roebuck and Co, as amended by First Amendment to Kenmore License Agreement, made effective as of November 29, 2009, Second Amendment to Kenmore License Agreement, dated March 7, 2012 and Third Amendment to Kenmore License Agreement, dated April 24, 2017.

2. Amended and Restated Merchandising Agreement, effective May 1, 2016, as amended March 8, 2017, July 10, 2017 and December 15, 2017, by and between Sears, Roebuck and Co., Kmart Corporation, and Sears Holdings Corporation, and Sears Hometown and Outlet Stores, Inc., Sears Authorized Hometown Stores, LLC, and Sears Outlet Stores, L.L.C.

3. The following Contracts, to the extent annual payments or consideration furnished by or to Sellers pursuant to such Contract is in excess of $15,000,000:

   a. First Amended and Restated Sublicense Agreement, dated April 1, 2005, by and between Sears Intellectual Property Management Company and Sears, Roebuck and Co.

   b. License and Intellectual Property Management Agreement, dated February 1, 2003, by and between Sears Brands, LLC and Sears Intellectual Property Management Company.

   c. Trademark License Agreement, dated December 14, 2001, by and between Sears, Roebuck and Co., and A&E Factory Service, LLC.

   d. Amended and Restated License Agreement, dated January 29, 2007, by and between Sears Brands, L.L.C., as successor in interest to the trademark rights of Kmart of Michigan, Inc., and Kmart Corporation.

   e. Sublicense Agreement, dated February 9, 2010, by and between Sears Brands Business Unit Corporation and Kmart Corporation.

   f. License Agreement, dated January 29, 2007, by and between Sears Brands, L.L.C., as a successor in interest to the trademark rights of Kmart of Michigan, Inc., and Kmart.com LLC.

   g. License Agreement, dated January 29, 2007, by and between Sears Brands, L.L.C., and Kmart of Michigan, Inc.

   h. License Agreement, dated January 29, 2007, by and between Sears Brands, L.L.C., as successor in interest to the trademark rights of Kmart of Michigan, Inc. and Kmart of Washington LLC.

   i. License Agreement, dated January 29, 2007, by and between Sears Brands, L.L.C., as a successor in interest to the trademark rights of Kmart of Michigan, Inc., and Kmart Stores of Illinois LLC.

   j. License Agreement, dated January 29, 2007, by and between Sears Brands, L.L.C., as a successor in interest to the trademark rights of Kmart of Michigan, Inc., and Kmart Stores of Texas LLC.

   k. Sublicense Agreement, dated February 9, 2010, by and between Kmart Corporation and MyGofer LLC.

   l. Sublicense Agreement, dated September 22, 2008, by and between Sears Brands Business Unit Corporation and Sears Brands Management Corporation as amended by First Amendment to Sublicense Agreement, dated November 24, 2008, and Second Amendment to Sublicense Agreement, dated April 30, 2012.

   m. Sublicense Agreement, dated February 9, 2010, by and between Sears Brands Business Unit Corporation and Sears Holdings Management Corporation.

WEIL:\96826275\11\73217.0003

n.  Sublicense Agreement, dated February 9, 2010, by and between Sears, Roebuck and Co. and Sears Home Improvement Products, Inc.

o.  First Amended and Restated Sublicense Agreement, dated April 1, 2005, by and between Sears Brands Business Unit Corporation and Sears, Roebuck and Co. as amended by Amendment 1 to First Amended and Restated Sublicense Agreement, dated May 1, 2006, and Amendment 2 to First Amended and Restated Sublicense Agreement, dated January 1, 2008.

p.  Corporate Name Agreement, dated April 21, 2010, by and between Sears, Roebuck and Co. and Sears, Roebuck de Puerto Rico, Inc.

q.  Sublicense Agreement, dated April 21, 2010, by and between Sears, Roebuck and Co. and Sears, Roebuck de Puerto Rico, Inc.

r.  Sublicense Agreement, dated November 20, 2007, by and between Sears Intellectual Property Management Corporation and ServiceLive, Inc.

**(v)**

1.  Transportation Agreement dated as of July 25, 2013, as amended, by and between Sears Logistics Services, Inc. and Circle 8 Logistics, Inc.

2.  Supply Agreement for Auto Repair Parts, dated as of October 1, 2011, by and between Sears, Roebuck and Co. and AutoZone Parts, Inc., AutoZone Operations, Inc., AutoZone Northeast, Inc., AutoZone West, Inc., AutoZone Stores, Inc., AutoZone Puerto Rico, Inc., AutoZone Texas, L.P., and AutoZone Mississippi, Inc.

3.  Master Outsourced Services Agreement, dated as of January 5, 2012, as amended, by and between Sears Holdings Management Corporation and Tata America International Corporation.

4.  Transportation Agreement, dated as of July 27, 2007, as amended, by and between Sears Logistics Services, Inc. and AFN, LLC.

5.  Service Contract, dated as of May 1, 2018, by and between Innovel Solutions, Inc.; KMART Corporation; Sears, Roebuck and Co; Sears Roebuck de Puerto Rico, Inc; Sears Puerto Rico and Maersk Inc. As agent to A.P. Moller-Maersk A/S trading under the name of MAERSK LINE.

6.  Transportation Agreement, dated January 26, 2017, Innovel Solutions, Inc. and Echo Global Logistics, Inc.

7.  Transportation Agreement, dated as of April 1, 1998, as amended, by and between Sears Logistics Services, Inc. and Heartland Express Inc., of Iowa.

8.  Transportation Agreement, dated as of April 1, 1998, as amended, by and between Sears Logistics Services, Inc. and Dart International.

9.  Transportation Agreement, dated as of April 1, 1998, as amended, by and between Sears Logistics Services, Inc. and Hub Group Operations Management, a division of Hub Group Associates, Inc.

10. Transportation Agreement, dated as of February 27, 2018, as amended, by and between Innovel Solutions, Inc., formerly known as Sears Logistics Services, Inc. and Swift Transportation Co. of Arizona, LLC.

11. Master Services Agreement, dated as of April 1, 2014, as amended, by and between Sears Holdings Management Corporation on behalf of itself and its Affiliates and iCrossing, Inc.

12. Transportation Agreement, dated as of July 12, 2005, as amended by and between Sears Logistics Services, Inc. and Intermodal Sales Corp.

FILED DATE: 5/19/2021 1:27 PM    2020L012403

13. Warehouse Operating Agreement, dated as of June 1, 2014, by and between Sears Logistics Services, Inc. and 3PD, Inc.

14. Home Delivery & Shuttle Carrier Agreement, dated as of April 20, 2014, by and between Sears Roebuck and Co. and 3PD, Inc.

15. Home Delivery & Shuttle Carrier Agreement, dated as of April 20, 2014, by and between Sears Logistics Services, Inc. and XPO Last Mile, Inc.

16. Home Delivery & Shuttle Carrier Agreement, dated as of February 8, 2015, as amended, by and between Innovel Solutions, Inc. and XPO Last Mile, Inc.

17. Warehouse Operating Agreement, dated as of August 3, 2014, by and between Sears Logistics Services, Inc. and XPO Last Mile, Inc.

18. Warehouse Operating Agreement, dated as of February 8, 2015, by and between Sears Logistics Services, Inc. and XPO Last Mile, Inc.

19. Home Delivery & Shuttle Carrier Agreement, dated as of February 15, 2015, as amended, by and between Sears Roebuck and Co. and XPO Last Mile, Inc.

20. Distribution and Supply Agreement, dated as of September 6, 2003, as amended, by and between KMART Corporation including its subsidiaries and affiliates and McLane Company, Inc.

21. Master Purchase Agreement, dated as of November 8, 2017, by and between Sears, Roebuck and Co. d/b/a Sears Commercial and Cardinal Group Construction LLC.

22. Service Agreement, dated as of October 1, 2012, as amended, by and between A&E Factory Service, LLC and General Electric Company.

23. Supply Agreement, dated as of November 1, 2010, as amended, by and between Sears, Roebuck and Co., Kmart Corporation and Sears Brands Management and Apex Tool Group, LLC, Lea Way Hand Tool Limited, and Danaher Tool Limited.

24. Master Consulting and Professional Services Agreement, dated as of February 1, 2011, by and between Sears Holdings Management Corporation and UPS Professional Services, Inc.

25. Master Outsourced Services Agreement, dated as of September 1, 2012, as amended, by and between Sears Holdings Management Corporation and Sitel Operating Corporation.

26. Master Outsourced Services Agreement, dated as of January 1, 2017, by and between Sears Holdings Management Corporation and Sitel Operating Corporation.

27. Advertising Agency Agreement, dated as of March 1, 2014, as amended, by and between Sears Holdings Management Corporation and Havas Worldwide Chicago, Inc.

28. A&R IBM Customer Agreement, dated as of September 28, 2012, by and between Sears Holdings Management Corporation and IBM.

29. Waste Hauling Master Services Agreement, dated as of January 20, 2015, by and between Sears, Roebuck and Co., Kmart Corporation, Sears Roebuck de Puerto Rico, Inc., Sears Logistics Services, Inc. Sears Home Improvement Products, Inc. and Sears Hometown and Outlet Stores, Inc. and Waste Management National Services, Inc., as amended.

30. Transportation Agreement, dated as of May 31, 2001, by and between Sears Logistics Services, Inc. and Knight Transportation, Inc., as amended.

31. Universal Terms and Conditions dated as of August 18, 2006 by and between Sears Holdings Management Corporation and Husqvarna Outdoor Products, Inc.

FILED DATE: 5/19/2021 1:27 PM     2020L012403

WEIL:\96826275\11\73217.0003

32. Universal Terms and Conditions dated as of December 6, 2004 by and between Sears, Roebuck and Co. and Hasbro, Inc.

33. Universal Terms and Conditions dated as of January 12, 2010 by and between Sears Holdings Management Corporation and Zhongshan Galanz Consumer Electric Appliances Co. Ltd.

34. Universal Terms and Conditions dated as of July 15, 2004 by and between Sears, Roebuck and Co. and Mattel Sales Corp.

35. Universal Terms and Conditions dated as of May 23, 2008 by and between Sears Holdings Management Corporation and Permasteel, Inc.

36. Universal Terms and Conditions dated as of August 4, 2001 by and between Sears holdings Management Corporation and Prudent International Ltd.

37. Universal Terms and Conditions dated as of December 7, 2004 by and between Sears, Roebuck and Co. and Hasbro, Inc.

38. Universal Terms and Conditions dated as of December 15, 2001 by and between Sears Holdings Management Corporation and Samsung Electronics America, Inc., as amended.

39. Universal Terms and Conditions dated as of October 1, 2007 by and between Sears Holdings Management Corporation and Samsung Electronics America, Inc.

40. Universal Terms and Conditions dated as of September 21, 2006 by and between Sears Holdings Management Corporation and Samsung Electronics Co., Ltd.

41. Universal Terms and Conditions dated as of September 28, 2007 by and among Sears, Roebuck and Co., Kmart Corporation, all other subsidiaries of Sears Holdings Corporation, and Samsung Electronics America, Inc., as amended.

42. Supply Agreement for Garage Door Operators and Accessories Dated as of January 1, 2010 by and among Kmart Corporation, Sears, Roebuck and Co., Sears Brands Management Corporation and The Chamberlain Group, Inc., as amended.

43. Vendor Agreement to Supply Fixtures dated as of July 29, 2013 by and between Sears, Roebuck and Co. and Samsung Electronics America, Inc.

44. Vendor Agreement to Supply Fixtures dated as of October 10, 2008 by and between Sears, Roebuck and Co. and Samsung Electronics America, Inc.

45. Vendor Agreement to Supply Fixtures dated as of February 26, 2010 by and among Kmart Corporation, Sears, Roebuck and Co., and Samsung Electronics America, Inc.

46. Vendor Agreement to Supply Fixtures dated as of January 20, 2008 by and among Kmart Corporation, Sears, Roebuck and Co., and Samsung Electronics America, Inc.

47. Vendor Agreement to Supply Fixtures dated as of September 1, 2009 by and among Kmart Corporation, Sears, Roebuck and Co., and Samsung Electronics America, Inc.

48. Vendor Agreement to Supply Fixtures dated as of August 16, 2011 by and among Kmart Corporation, Sears, Roebuck and Co., and Samsung Electronics America, Inc.

49. Product Evaluation Agreement dated as of May 10, 2013 by and between Sears Holdings Management Corporation and Samsung Electronics America, Inc.

50. Subsidy Agreement dated as of July 25, 2014 by and among Sears Roebuck and Co., Kmart Corporation, other subsidies of Sears Holdings Corporation, including Sears Brands Management Corporation, and One World Technologies, Inc.

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

FILED DATE: 5/19/2021 1:27 PM    2020L012403

51. Amended and Restated Merchandising Agreement, dated May 1, 2016, by and among, Roebuck and Co., Kmart Corporation, Sears Holdings Corporation, Sears Hometown Outlet Stores, Inc., Sears Authorized Hometown Stores, LLC and Sears Outlet Stores L.L.C., as amended by Amendment to Amended and Restated Merchandising Agreement, dated March 8, 2017, Amendment No. 2 to Amended and Restated Merchandising Agreement, dated July 10, 2017, and Amendment No. 3 to Amended and Restated Merchandising Agreement, dated December 15, 2017.

52. Master Services Agreement, dated as of November 24, 2015, by and between Innovel Solutions, Inc. and Costco Wholesale Corporation.

53. B2B Agreement, dated as of May 1, 2014, by and between Sears Holdings Management Corporation and American Home Shield.

**(vi)**



WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403



**Schedule 6.11(c)**

1. Blackhawk Network Inc. has shut off the Sellers' ability to activate gift cards post-bankruptcy under the Gift Card Marketing Services Agreement, dated as of February 10, 2003, by and between Blackhawk Network, Inc. and SHC Promotions, L.L.C., as amended. The Sellers have removed all gift cards from their sales floors.

2. Sellers have provided notice of termination of the Protection Agreement Benefit Administration services under the Master Outsourced Services Agreement, dated as of January 1, 2017, by and between Sears Holdings Management Corporation and Sitel Operating Corporation.

**Schedule 6.11(d)**

1. Universal Terms and Conditions – Michelin, dated as of June 13, 2014, by and between Sears Holdings Management Corporation and Michelin North America, as amended.

2. Supply Agreement for Tool Storage and Accessories, dated as of August 1, 2012, by and between Sears Holdings Management Corporation and Waterloo Industries, Inc.

3. Master Outsourced Services Agreement, dated as of January 5, 2012, by and between Sears Holdings Management Corporation and Tata America International Corporation, as amended.

4. Master Services Agreement, dated as of April 1, 2014, by and between Sears Holdings Management Corporation on behalf of itself and its Affiliates and iCrossing, Inc., as amended.

5. Direct to Customer Terms and Conditions, dated as of March 1, 2013, by and between Sears Holdings Management Corporation and VF Jeanswear Limited Partnership, as amended.

6. Direct to Customer Terms and Conditions, dated as of April 18, 2013, by and between Sears Holdings Management Corporation (together with its Affiliates) and Hanesbrands, Inc.

7. Universal Terms and Conditions, dated as of May 4, 2007, by and between Kmart Corporation (together with its subsidiaries), Sears, Roebuck and Co. (together with its subsidiaries) and all other subsidiaries of Sears Holdings Management Corporation and Hanesbrands, Inc.

8. Project Services Agreement, dated as of February 15, 2011, by and between Sears Holdings Management Corporation and The Procter & Gamble Distributing LLC.

9. Universal Terms and Conditions – International, dated as of November 12, 2007, by and between Sears Holdings Management Corporation and Hangzhou GreatStar Industrial Co., Ltd.

WEIL:\96826275\11\73217.0003

10. Supply Agreement for Tool Storage and Accessories, dated as of August 1, 2012, by and between Sears Holdings Management Corporation and Waterloo Industries, Inc.

11. Master Services Agreement, dated as of April 1, 2014, by and between Sears Holdings Management Corporation on behalf of itself and its Affiliates and iCrossing, Inc., as amended.

12. Universal Terms and Conditions, dated as of September 3, 1996, by and between Sears Roebuck and Co. and Wolverine World Wide Inc.

13. Letter Agreement, dated as of September 28, 2005, by and between Sears Roebuck and Co. and Wolverine World Wide Inc.

14. Vendor Terms Exception Request, dated as of June 13, 2018, by and between Sears Roebuck and Co. and Wolverine World Wide Inc.

15. Amended and Restated Sears Holdings and IBM Customer Agreement, dated as of September 28, 2012, by and between Sears Holdings Management Corporation and International Business Machines Corporation.

16. Amended and Restated Master Agreement for Outsourcing and Transport Services, dated as of February 22, 2012, by and between Sears Holdings Management Corporation and AT&T Corp.

17. Amended and Restated Master Services Agreement, dated as of July 7, 2014, by and between Innovel Solutions, Inc. f/k/a Sears Logistics Services, Inc. and UPS Supply Chain Solutions, Inc., as amended.

18. Master Services Agreement, dated as of September 1, 2012, by and between Sears Holdings Management Corporation and Sitel Operating Corporation.

19. Universal Terms and Conditions, dated as of March 27, 1998, by and between Sears Holdings Management Corporation and Icon Health & Fitness Inc.

20. Diehard Supply, Sales Agent and Servicing Agreement for Batteries dated as of September 1, 2014 by and among Kmart Corporation, Sears, Roebuck and Co., Sears Brands Management Corporation and East Penn Manufacturing Co., as amended.

21. Alliance Agreement for Home Appliances dated as of May 19, 2008 by and among Kmart Corporation, Sears, Roebuck and Co., LG Electronics, Inc., and LG Electronics USA Inc., as amended.

22. Supply Agreement for Lawn Power Tools dated as of February 3, 2008 by and among Sears, Roebuck and Co., Kmart Corporation, Sears Canada Inc., Husqvarna Outdoor Products Inc., and Husqvarna Canada Corp., as amended.

23. Supply Agreement for Tractors and Mowers dated as of November 16, 2009 by and among Sears, Roebuck and Co., Kmart Corporation, Sears Brands Management Corporation, and Husqvarna Consumer Outdoor Products N.A., Inc., as amended.

24. Supply Agreement for Tractors, Mowers, and Tillers effective as of January 1, 2009 by and among Sears, Roebuck and Co., Kmart Corporation, Sears internationals Marketing Inc., and Husqvarna Consumer Outdoor Products N.A., Inc.

25. Strategic Sourcing Supply Agreement for Tractors and Mowers dated as of December 9, 2003 by and between Sears, Roebuck and Co. and Electrolux Home Products Inc.

26. Supply Agreement for Auto Tires dated as of May 1, 2016 by and between Sears, Roebuck and Co. and Hankook Tire America Corp., as amended.

27. Direct to Customer Terms and Conditions dated as of December 1, 2011 by and between Sears Holdings Management Corporation and Permasteel, Inc.

FILED DATE: 5/19/2021 1:27 PM   2020L012403

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM   2020L012403

28. A&R Blackhawk Network Alliance Partners Agreement, dated as of February 1, 2013, by and between Blackhawk Network, Inc. and SHC Promotions, L.L.C., as amended.

29. Gift Card Marketing Services Agreement, dated as of February 10, 2003, by and between Blackhawk Network, Inc. and SHC Promotions, L.L.C., as amended.

30. Professional Seller Program, dated as of June 29, 2017, by and among Sears Protection Company, Amazon Services LLC, and Amazon Payments, Inc.

31. Vendor Terms and Conditions, dated as of May 25, 2017, by and between Amazon Fulfillment Services, Inc. and Sears Brands Management Corporation, as amended.

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM   2020L012403

## Schedule 6.14

### Litigation

1. Nina Greene and Gerald Greene v. Sears Protection Company, Sears, Roebuck and Co., Sears Holdings Corporation, Case Number 1:15 cv 02546, US District Court for Northern District of Illinois Eastern Division, served March 26 2015.

2. Schedule 6.10(c)(ii) and Schedule 6.10(c)(iii) are incorporated herein by reference.

WEIL:\96826275\11\73217.0003

18-23538-rdd   Doc 2507-1   Filed 02/08/19   Entered 02/08/19 16:44:32   Exhibit A

FILED DATE: 5/19/2021 1:27 PM   2020L012403

**Schedule 7.1**

**Equity Interests in Buyer**

1. Transform Holdco LLC is a Delaware limited liability company
2. The sole owner of Transform Holdco LLC is ESL Investments, Inc., a Delaware Corporation
3. The sole owner of ESL Investments, Inc. is Edward S. Lampert

WEIL:\96826275\11\73217.0003

FILED DATE: 5/19/2021 1:27 PM    2020L012403

```
NPJ26600 - 02          NPS- Display Merchandise Item Sales Detail          05/17/2021
DIANA ARNEY                                        (708)754-6468 Loc: 1 ET:    CC:H


        Mdse code : DRYER1YRP3        Mdse desc : DRYER FHP, GAS


            Salescheck number   : 093003705365

            Salescheck date     : 11 28 2008 (MM DD CCYY)

            Item sales amount   : 535.99

            Item discount amount : 0.00

            Item tax amount     : 33.50

            Item tax percentage : 6.250



R9999 Item pricing from POS

F3=Exit F12=Prev screen
```

```
NPJ26217- 56    NPS - View/update Merchandise Items List          05/17/21
Type the Action Code and Row Number below. Then press Enter.
Action code:  _   (1=Add item      2=View/change item   3=Delete item
              4=Crt Site SO/Sears  5=Crt Shop SO/Sears  6=Display SO
Row Number :     7=Crt Site SO/A&E 8=Crt Shop SO/A&E 9=Crt Install SO)
(S = 3rd Party Store Stock)
Premier Customer                    Home phone  Can also be reached at
DIANA ARNEY                         (708)754-6468      (708)856-2915
# NONE -325 W JOE ORR RD                                        ET:
CHICAGO HTS    IL   60411 1656              Segment CD
Cross Streets: NONE                                     More:   +
                            Purch/    Svc          Cvg      Pnd
Row Mdse Description        Model Number  Recvd    Type  Cvg Exp Dt Svc
001 DISHWASHER, ULTRA WASH  66517415    11/20/92 SITE   CC
002 DRYER,GAS WOW           464MDG3000AW 03/12/99 SITE   CC
003 DRYER FHP, GAS          41798042700  11/29/08 SITE   CC
004 FREEZER,13.7' UPRIGHT   2539244410   12/19/95 SITE   CC
005 MOWER, ROTARY           00037825     06/01/87 SHOP   CC
006 OTR/MICROWAVE BUILT-IN               09/06/97 SITE   CC
007 RANGE,1YR,0400/U600     3627361891   11/20/92 SITE   CC
Different Repair Address  N (Y/N) Override  N (Y/N) Override Cd    (C=Contractor)


Enter  F1=Help  F3=Exit  F7=Bkwd  F8=Fwd  F12=Prev screen
```

FILED DATE: 5/19/2021 1:27 PM    2020L012403

```
NPS14305 - 25          NPS - Display Pending Service Order              05/17/21

DIANA ARNEY                                    (708)754-6468
# NONE -325 W JOE ORR RD                 CHICAGO HTS    IL  60411 1656

Type the row number of the service order to be displayed.  Then press Enter.
   Row number . .  _                                        More (      )

            Date        Service    Svc Order   Status      Merchandise       NCR
Row #   Call Taken      Unit #      Number      Code        Description       Inq








0050 Pending service order(s) do not exist.

Command ===>     (1=View mdse list,  2=View cust menu)
Enter  F1=Help  F3=Exit  F5=Refresh  F7=Bkwd  F8=Fwd  F9=Command
PF10=View history  F12=Prev screen
```

FILED DATE: 5/19/2021 1:27 PM    2020L012403

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| DIANA M. ARNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No. 20 L 012403 |
| | ) | |
| ELECTORLUX HOME PRODUCTS, INC., | ) | |
| TRANSFORM SR BRANDS LLC, Individually | ) | |
| and d/b/a SEARS, and SEARS, ROEBUCK AND | ) | |
| CO., | ) | |
| | ) | |
| Defendants. | ) | |

**AFFIDAVIT IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

1. I, Julie Roman, am over 18 years of age, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I acquired personal knowledge of these facts in my role as Assistant Secretary for Transform Midco LLC, a subsidiary of Transform Holdco LLC. Transform SR Brands LLC (Defendant) is a subsidiary of Transform Midco LLC.

3. Based on records available to Transform, the subject dryer was purchased from Sears Roebuck and Co. in November 2008. (Exhibit E to Defendant's Motion to Dismiss).

4. Exhibits B and C are true and accurate copies of public filings/State of Delaware registrations. These documents show that Transform Holdco LLC was incorporated/formed in 2018 and Transform SR Brands LLC was incorporated/formed in 2019.

5. The Order Approving Asset Purchase Agreement (Exhibit D to Defendant's Motion to Dismiss) is a true and accurate copy of the February 8, 2019 Order in Federal Case No. 18-23538 pending in the United States Bankruptcy Court, Southern District of New York.

FILED DATE: 5/19/2021 1:27 PM   2020L012403

## **CERTIFICATION**

Under penalties as provided by law pursuant to 735 ILCS 5/1-109, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that the undersigned believes the same to be true.

Date: _May 18, 2021_

_Julie Roman_
Julie Roman

**EXHIBIT C**

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION**

| | | |
|---|---|---|
| DIANA M. ARNEY, | ) | |
| | ) | Case No.: 2020 L 012403 |
| Plaintiff, | ) | |
| | ) | Calendar A |
| v. | ) | |
| | ) | |
| ELECTROLUX HOME PRODUCTS, INC., | ) | |
| and TRANSFORM SR BRANDS LLC, | ) | |
| Individually and d/b/a SEARS, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION FOR CONTINUANCE OF DEFENDANT'S MOTION AND
PERMIT DISCOVERY**

NOW COMES the Plaintiff, DIANA M. ARNEY, by and through her attorneys, TAXMAN, POLLOCK, MURRAY & BEKKERMAN, LLC, in her Motion for Continuance of Defendant's Motion to Dismiss and Permit Discovery, states as follows:

1.     This matter arises out of a products liability action involving a clothes dryer that ignited and started a house fire, causing severe and permanent injuries to the Plaintiff, Diana Arney, including including respiratory distress, requiring prolonged hospitalizations and in-patient care at skilled nursing facilities.

2.     Plaintiff filed suit against Defendant Transform SR Brands LLC alleging strict product liabilty, negligence, and joint venture.

3.     Defendant Transform SR Brands LLC filed a Motion to Dismiss Plaintiff's Complaint pursuant to 735 ILC 5/2-619.1 based primarily upon successor corporation non-liability.

4.     Pursuant to Illinois law, there are four exceptions to successor corporate non-liability: (1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent

purpose of escaping liability for the seller's obligations. *Digiulio v. Goss Inten. Corp.*, 389 Ill. App. 3d 1052 (1st Dist. 2009).

5.      The material facts necessary to examine the above exceptions and respond to Defendant's Motion, such as the identity of ownership, officers, directors, management, shareholders, and stock, and whether there is a continuation of the seller's business operations, etc., are not available to Plaintiff. *Vernon v. Schuster*, 179 Ill. 2d 338 (1997).

6.      The material facts necessary to examine those exceptions and respond to Defendant's Motion are within the knowledge of Defendant, an adverse party, and thus, Plaintiff is unable to procure affidavits from witnesses within Defendant's control.

7.      Plaintiff believes written interrogatories and document requests directed to Defendant will allow her to learn the material facts necessary to respond to Defendant's Motion to Dismiss, including, but not limited to identity of ownership, officers, directors, management, shareholders, and stock, etc., and whether there is a continuation of the seller's business operations. Plaintiff further believes that written discovery will reveal the names of witnesses with knowledge of the above material facts, and Plaintiff will need the depositions of these individuals.

8.      Pursuant to Illinois Supreme Court Rule 191(b), Plaintiff is seeking leave to conduct written discovery, request documents, and take depositions on the referenced above issues before responding to Defendant's Motion.

9.      Plaintiff's Counsel has provided an affidavit pursuant to Supreme Court Rule 191(b), attached as Exhibit A.

WHEREFORE, and for each and all of the foregoing reasons, Plaintiff respectfully requests that his Honorable Court enter an Order continuing Defendant's Motion to Dismiss and permit Plaintiff to conduct written discovery, request documents, and take depositions, if necessary, to respond to Defendant's Motion to Dismiss.

2

Respectfully Submitted,

_____
Attorneys for Plaintiff

Sean P. Murray
Julie L. Pustilnik
**TAXMAN, POLLOCK, MURRAY & BEKKERMAN, LLC**
225 W. Wacker, Suite 1650
Chicago, IL 60606
312-586-1700
smurray@tpmblegal.com
jpustilnik@tpmblegal.com

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

DIANA M. ARNEY,                        )
                                       )
                Plaintiff,             )    Case No.: 2020 L 012403
v.                                     )
                                       )    Calendar A
                                       )
ELECTROLUX HOME PRODUCTS, INC.,        )
and TRANSFORM SR BRANDS LLC,           )
Individually and d/b/a SEARS,          )
                                       )
                Defendants.            )

## ATTORNEY AFFIDAVIT

I, Julie Pustilnik, being first duly sworn on oath, deposes and states that if I were called upon to testify, I would do so as follows:

1.      That I am an attorney at law licensed to practice in the State of Illinois.

2.      That I am an attorney with the law firm of TAXMAN, POLLOCK, MURRAY & BEKKERMAN, LLC, attorneys of record for the Plaintiff, DIANA M. ARNEY.

3.      That Defendant TRANSFORM SR BRANDS LLC filed a Motion to Dismiss Plaintiff's Complaint pursuant to 735 ILC 5/2-619.1 based primarily upon successor corporation non-liability.

4.      That there are four exceptions to successor corporate non-liability, (1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations. *Digiulio v. Goss Inten. Corp.*, 389 Ill. App. 3d 1052 (1st Dist. 2009).

5.      That the material facts necessary to examine those exceptions and respond to Defendant's Motion, such as the identity of ownership, officers, directors, management,

1

shareholders, and stock, and whether there is a continuation of the seller's business operations, etc., are not available to Plaintiff. *Vernon v. Schuster*, 179 Ill. 2d 338 (1997).

6.    That the material facts necessary to examine those exceptions and respond to Defendant's Motion are within the knowledge of Defendant, an adverse party, and thus, Plaintiff is unable to procure affidavits from witnesses within Defendant's control.

7.    That Plaintiff believes written interrogatories, document requests, and depositions, will allow her to learn the material facts necessary to respond to Defendant's Motion to Dismiss, including, but not limited to identity of ownership, officers, directors, management, shareholders, and stock, etc., and whether there is a continuation of the seller's business operations.

8.    That Plaintiff believes written discovery will reveal the names of witnesses with knowledge of the above material facts, and Plaintiff will need the depositions of these individuals.

9.    That this Affidavit is submitted in compliance with Supreme Court Rule 191(b).


FURTHER, Affiant, sayeth not.

_____
Julie L. Pustilnik


SUBSCRIBED AND SWORN TO
before me this ____ day
of _____ 2021.
_____
Notary Public

OFFICIAL SEAL
CHRISTINE M KINNERK
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/09/24

2

**<u>EXHIBIT D</u>**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

DIANA M. ARNEY,                                    )
                                                   )
                        Plaintiff,                 )
        v.                                         )
                                                   )        Case No.  20 L 012403
                                                   )
ELECTORLUX HOME PRODUCTS, INC.,                    )
TRANSFORM SR BRANDS LLC, Individually              )
and d/b/a SEARS, and SEARS, ROEBUCK AND            )
CO.,                                               )
                                                   )
                        Defendants.                )

## DEFENDANT TRANSFORM SR BRAND LLC'S
## RESPONSE TO PLAINTIFF'S MOTION FOR DISCOVERY

NOW COMES the Defendant **TRANSFORM SR BRANDS LLC** (hereinafter "Transform") and through its attorneys, O'HAGAN, MEYER LLC, and for its Response to Plaintiff's Motion for Discovery states as follows:

1.     This matter involves a product liability claim involving a dryer purchased sometime in 2008.

2.     Plaintiff alleges that various Defendants *inter alia* negligently designed, manufactured, or sold the product at-issue.

3.     Plaintiff has voluntarily dismissed Sears, Roebuck and Co., as a result of Sears' pending bankruptcy and the automatic stay under section 362 of the Bankruptcy Code, "judicial actions and proceedings commenced against the debtor are "void ab initio." *Maritime Elec. Co., Inv. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir. 1991).

4.     On May 19, 2021, Defendant filed a 2-619.1 Motion to Dismiss, premised on (1) the fact Plaintiff's Complaint does not allege what actions Transform SR Brands LLC undertook relating to the design, manufacture, or sale of the dryer – facts which are especially important as

1

Transform SR Brands LLC was not created/formed as an entity until 2018; and (2) that if Plaintiff's Complaint is actually grounded in a successor liability theory of recovery (albeit not pled in that manner), dismissal is still required as Transform did not assume the liabilities of Sears as it relates to this legal action.

5.      On May 26, 2021, Defendant's Motion to Dismiss was e-mailed to the Court. (Exhibit A, E-mail chain from May 26, 2021 through June 3, 2021).

6.      On May 26, 2021, Plaintiff requested 7 days to evaluate the motion. (Exhibit A).

7.      On June 3, 2021, Plaintiff requested leave to engage in discovery pertaining to Defendant's Motion to Dismiss. (Exhibit B).

8.      On June 3, 2021, Defense Counsel e-mailed the following objection to the Court to Plaintiff's request:

Judge O'Hara

Counsel's e-mail is accurate as to the issues raised in the MTD.

However, my issue (for Defendant Transform) is that the current complaint simply alleges that my client, Transform, is liable because it undertook some design/manufacture/sale issue of a dryer prior to 2008.... but Transform did not even exist as a corporate entity until 2018-2019.

Based on that set of facts alone, my motion should be granted (possibly without prejudice and for Plaintiff to have leave to re-plead the actual corporate successor liability theory). Notably, as it stands now, the Complaint does not actually have any such explicit allegations or corporate successor liability. My MTD argument is only premised in part on what their theory of recovery likely entails.

I just do not want my client to be open to a fishing expedition of discovery without first solidifying what the claims against Transform arise from (not saying that counsel will actually engage in such acts). Without knowing exactly what the theory of recovery is against Transform, it is premature to engage in discovery.

I believe the proper procedural steps here would be to either grant the 619.1 with/without prejudice, amend the complaint to solidify what theory of recovery is sought (e.g., if they're still claiming a non-existent entity participated in the design/manufacture/sale or if they're

actually claiming a corporate successor liability theory), and then proceed with discovery on any 619 issue as necessary.

9.     No briefing schedule or ruling has been entered on Defendant's Motion to Dismiss.

10.     Defendant's position remains the same as the objection in Defense Counsel's e-mail from June 3, 2021.

11.     Specifically, Plaintiff's request for discovery is premature. The Complaint – as it stands – has no allegations of actual successor liability as it relates to the Transform entity. (See Plaintiff's Complaint).

12.     Defendant contends that it is entitled to relief under 2-615 and 2-619(a)(9) as the Complaint is entirely devoid of allegations of corporate successor liability.

13.     Plaintiff appears to agree *sub silentio* that her theory of liability against Transform is indeed corporate successor liability. If this is the case, then Plaintiff should be required to plead such allegations in an Amended Complaint.

14.     Such a re-pleading is necessary to define the claims against Transform so that any potential future discovery can be tailored to these issues. Without defining/clarifying the claims actually being brought against Defendant, allowing discovery would open Defendant to a potential fishing expedition.

15.     Furthermore, if amendments to the Complaint are made, Defendant may have additional arguments and/or amendments to its Motion to Dismiss as necessary.

16.     Again, Defendant's Motion to Dismiss is not solely a 2-619 Motion to Dismiss. It first argues a 2-615 theory that the Complaint is inadequately pled against Transform. At a minimum, this section of the Motion should be ruled upon by the Court prior to engaging in any discovery.

WHEREFORE, Defendant **TRANSFORM SR BRANDS LLC**, requests that this Court deny Plaintiff's Motion for Discovery as premature, rule on Defendant's Motion to Dismiss, or alternatively order Plaintiff to amend her Complaint consistent with the claims currently being made, and for all other relief it deems reasonable and necessary.

O'HAGAN MEYER, LLC

By:     s/ Lucas Sun
_____
One of the Attorneys for Defendant
Transform SR Brands LLC

James P. Balog, Esq.
Lucas Sun, Esq.
O'Hagan Meyer, LLC
One East Wacker Drive, Suite 3400
Chicago, IL 60601
312-422-6100
jbalog@ohaganmeyer.com
lsun@ohaganmeyer.com

| From: | Lucas Sun |
|---|---|
| To: | Julie Pustilnik; LAW CALAcc (OCJ) |
| Cc: | Emani Evans; Sean Murray; Christine Kinnerk |
| Subject: | Re: Arney v. Sears- 20 L 012403 (Motion to Dismiss) |
| Date: | Thursday, June 3, 2021 12:53:23 PM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.jpg |
| | Outlook-2vm3xvfh.png |

Judge O'Hara

Counsel's e-mail is accurate as to the issues raised in the MTD.

However, my issue (for Defendant Transform) is that the current complaint simply alleges that my client, Transform, is liable because it undertook some design/manufacture/sale issue of a dryer prior to 2008.... but Transform did not even exist as a corporate entity until 2018-2019.

Based on that set of facts alone, my motion should be granted (possibly without prejudice and for Plaintiff to have leave to re-plead the actual corporate successor liability theory). Notably, as it stands now, the Complaint does not actually have any such explicit allegations or corporate successor liability. My MTD argument is only premised in part on what their theory of recovery likely entails.

I just do not want my client to be open to a fishing expedition of discovery without first solidifying what the claims against Transform arise from (not saying that counsel will actually engage in such acts). Without knowing exactly what the theory of recovery is against Transform, it is premature to engage in discovery.

I believe the proper procedural steps here would be to either grant the 619.1 with/without prejudice, amend the complaint to solidify what theory of recovery is sought (e.g., if they're still claiming a non-existent entity participated in the design/manufacture/sale or if they're actually claiming a corporate successor liability theory), and then proceed with discovery on any 619 issue as necessary.

Lucas Sun
ASSOCIATE ATTORNEY

One E Wacker Dr. | Suite 3400 | Chicago | IL | 60601
DIRECT 312.422.6154 | CELL 630.234.4645



Alexandria, VA • Boston • Charlotte • Chicago • Detroit • Los Angeles • Orange County, CA
Philadelphia • Richmond • San Francisco • Washington D.C. • Wilmington, DE

**From:** Julie Pustilnik <jpustilnik@tpmblegal.com>
**Sent:** Thursday, June 3, 2021 12:36 PM
**To:** Lucas Sun <LSun@ohaganmeyer.com>; LAW CALAcc (OCJ) <Law.Calacc@cookcountyil.gov>

**Cc:** Emani Evans <EEvans@ohaganmeyer.com>; Sean Murray <smurray@tpmblegal.com>; Christine Kinnerk <ckinnerk@tpmblegal.com>

**Subject:** [EXTERNAL] RE: Arney v. Sears- 20 L 012403 (Motion to Dismiss)

Your Honor,

Defendant's Motion is primarily based upon successor corporation nonliability. However, there are four exceptions to successor corporate nonliability:

1. where there is an express or implied agreement of assumption;
2. where the transaction amounts to a consolidation or merger of the purchaser or seller corporation;
3. where the purchaser is merely a continuation of the seller; or
4. where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations.

*Digiulio v. Goss Inten. Corp.*, 389 Ill. App. 3d 1052 (1st Dist. 2009).

The material facts necessary to examine those exceptions, such as the identity of officers, directors, management, business operations, etc., are not available to Plaintiff. Therefore, Plaintiff is requesting written discovery, document production, and potentially depositions on these issues, as is permissible under Illinois Supreme Court Rule 191(b), which allows parties to submit interrogatories, take depositions, or request documents in the context of answering a 2-619 Motion to dismiss.

Thank you again for your consideration of these matters,

Julie

**Julie Levinson Pustilnik**



225 West Wacker, Suite 1650, Chicago, Illinois 60606
Tel: (312)586-1700 / Dir: (312)586-1717 / Fax: (312)586-1701
www.tpmblegal.com

**From:** Lucas Sun <LSun@ohaganmeyer.com>
**Sent:** Thursday, June 3, 2021 10:21 AM
**To:** Julie Pustilnik <jpustilnik@tpmblegal.com>; LAW CALAcc (OCJ) <Law.Calacc@cookcountyil.gov>
**Cc:** Emani Evans <EEvans@ohaganmeyer.com>; Sean Murray <smurray@tpmblegal.com>; Christine Kinnerk <ckinnerk@tpmblegal.com>
**Subject:** Re: Arney v. Sears- 20 L 012403 (Motion to Dismiss)

Judge

Defendant would object at this point to this request as our motion is a 619.1. Perhaps if this Court were to find the 615 aspect were denied then this request could potentially be appropriate. However, as the motion is based on both 615/619, discovery would not be warranted yet if the 615 were granted.

Lucas Sun
ASSOCIATE ATTORNEY
One E Wacker Dr. | Suite 3400 | Chicago | IL | 60601
DIRECT 312.422.6154 | CELL 630.234.4645



Alexandria, VA • Boston • Charlotte • Chicago • Detroit • Los Angeles • Orange County, CA
Philadelphia • Richmond • San Francisco • Washington D.C. • Wilmington, DE

**From:** Julie Pustilnik <jpustilnik@tpmblegal.com>
**Sent:** Thursday, June 3, 2021 9:06 AM
**To:** LAW CALAcc (OCJ) <Law.Calacc@cookcountyil.gov>
**Cc:** Emani Evans <EEvans@ohaganmeyer.com>; Lucas Sun <LSun@ohaganmeyer.com>; Sean Murray <smurray@tpmblegal.com>; Christine Kinnerk <ckinnerk@tpmblegal.com>
**Subject:** [EXTERNAL] RE: Arney v. Sears- 20 L 012403 (Motion to Dismiss)

Good Morning Your Honor,
We have reviewed Defendant's Motion. In order to respond, Plaintiff requests leave to conduct written discovery on the issues raised in the Motion, and possibly take depositions based on what arises in this written discovery. We ask for 14 days to issue written, by 6/17/21.
Thank you,
Julie

### Julie Levinson Pustilnik



225 West Wacker, Suite 1650, Chicago, Illinois 60606
Tel: (312)586-1700 / Dir: (312)586-1717 / Fax: (312)586-1701
www.tpmblegal.com

**From:** LAW CALAcc (OCJ) <Law.Calacc@cookcountyil.gov>
**Sent:** Thursday, May 27, 2021 8:57 AM
**To:** Julie Pustilnik <jpustilnik@tpmblegal.com>
**Cc:** Emani Evans <EEvans@ohaganmeyer.com>; Lucas Sun <LSun@ohaganmeyer.com>; Sean Murray <smurray@tpmblegal.com>; Christine Kinnerk <ckinnerk@tpmblegal.com>
**Subject:** Re: Arney v. Sears- 20 L 012403 (Motion to Dismiss)

Yes, please provide an email status to the Court on June 3 as to the plaintiff's position.

**From:** Julie Pustilnik <jpustilnik@tpmblegal.com>
**Date:** Wednesday, May 26, 2021 at 3:51 PM
**To:** LAW CALAcc (OCJ) <Law.Calacc@cookcountyil.gov>
**Cc:** Emani Evans <EEvans@ohaganmeyer.com>, Lucas Sun <LSun@ohaganmeyer.com>, Sean Murray <smurray@tpmblegal.com>, Christine Kinnerk <ckinnerk@tpmblegal.com>
**Subject:** RE: Arney v. Sears- 20 L 012403 (Motion to Dismiss)

**External Message Disclaimer**
This message originated from an external source. Please use proper judgment and caution when opening attachments, clicking links, or responding to this email.

Thank you, Your Honor. Defendant's Motion with the accompanying exhibits was over 1200 pages.
May we have 7 days, until June 3, 2021 to review the motion and the exhibits and determine how

we wish to proceed?

Thank you,

Julie

**Julie Levinson Pustilnik**



225 West Wacker, Suite 1650, Chicago, Illinois 60606
Tel: (312)586-1700 / Dir: (312)586-1717 / Fax: (312)586-1701
www.tpmblegal.com

**From:** LAW CALAcc (OCJ) <Law.Calacc@cookcountyil.gov>
**Sent:** Wednesday, May 26, 2021 12:26 PM
**To:** Julie Pustilnik <jpustilnik@tpmblegal.com>
**Cc:** Emani Evans <EEvans@ohaganmeyer.com>; Lucas Sun <LSun@ohaganmeyer.com>; Sean Murray <smurray@tpmblegal.com>; Christine Kinnerk <ckinnerk@tpmblegal.com>
**Subject:** Re: Arney v. Sears- 20 L 012403 (Motion to Dismiss)

Of course, apologies for the confusion.

**From:** Julie Pustilnik <jpustilnik@tpmblegal.com>
**Date:** Wednesday, May 26, 2021 at 11:04 AM
**To:** LAW CALAcc (OCJ) <Law.Calacc@cookcountyil.gov>
**Cc:** Emani Evans <EEvans@ohaganmeyer.com>, Lucas Sun <LSun@ohaganmeyer.com>, Sean Murray <smurray@tpmblegal.com>, Christine Kinnerk <ckinnerk@tpmblegal.com>
**Subject:** RE: Arney v. Sears- 20 L 012403 (Motion to Dismiss)



**External Message Disclaimer**
This message originated from an external source. Please use proper judgment and caution when opening attachments, clicking links, or responding to this email.

Good morning Your Honor,

Apologies, I was not copied on the e-mail from Defendant to the Court. I have reached out to Defense Counsel for a copy of the Motion, and it was just forwarded to me. May I have a brief opportunity to review the Motion before responding?

Thank you,

Julie Pustilnik

**Julie Levinson Pustilnik**



225 West Wacker, Suite 1650, Chicago, Illinois 60606
Tel: (312)586-1700 / Dir: (312)586-1717 / Fax: (312)586-1701
www.tpmblegal.com

**From:** "LAW CALAcc (OCJ)" <Law.Calacc@cookcountyil.gov>
**Date:** May 26, 2021 at 10:29:43 AM CDT

**To:** Emani Evans <EEvans@ohaganmeyer.com>
**Cc:** Lucas Sun <LSun@ohaganmeyer.com>, Sean Murray <smurray@tpmblegal.com>
**Subject: Re: Arney v. Sears- 20 L 012403 (Motion to Dismiss)**

Plaintiff's counsel: What is your position on the motion?

**From:** Emani Evans <EEvans@ohaganmeyer.com>
**Date:** Wednesday, May 26, 2021 at 9:57 AM
**To:** LAW CALAcc (OCJ) <Law.Calacc@cookcountyil.gov>
**Cc:** Lucas Sun <LSun@ohaganmeyer.com>, 'smurray@tpmblegal.com'
<smurray@tpmblegal.com>
**Subject:** Arney v. Sears- 20 L 012403 (Motion to Dismiss)

**External Message Disclaimer**
This message originated from an external source. Please use proper judgment and caution when opening attachments, clicking links, or responding to this email.

Good morning Judge Ohara,
Attached please find the Defendant's Motion to Dismiss Plaintiff's Complaint.
Counsel, to respond or object to this Motion, please email response or objection to
LAW.CALAcc@cookcountyil.gov after 11:00 AM on the date set forth above, with a cc
to all attorneys of record as listed here: If no response or objection is emailed before
4:00 PM on the date set forth above, the Court will rule on the Motion and enter an
order.
Thank you,
**Emani Evans**
Legal Assistant
One E Wacker Dr. | Suite 3400 | Chicago | IL | 60601
PH 312.422.6100 | DIR 312.422.6130 | FX 312.422.6110



Chicago • Los Angeles • Washington D.C. • Philadelphia • Wilmington, DE • Richmond VA •
Alexandria, VA

FILED
11/19/2020 1:35 P
DOROTHY BROW
CIRCUIT CLERK
COOK COUNTY, I
11200017
Attorney ID# 61090

FILED DATE: 11/19/2020 1:35 PM    2020L012403

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

DIANA M. ARNEY,          )
                      )  Case No.: **2020L012403**
      Plaintiff,      )
                      )
v.                    )
                      )
ELECTROLUX HOME PRODUCTS, INC.,  )
TRANSFORM SR BRANDS LLC, Individually )
and d/b/a SEARS, and SEARS, ROEBUCK  )
AND CO.,              )
                      )
      Defendants.

## COMPLAINT AT LAW

NOW COMES the Plaintiff, DIANA M. ARNEY, through her attorneys, TAXMAN,
POLLOCK, MURRAY & BEKKERMAN, LLC, and complaining of Defendants,
ELECTROLUX HOME PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and
d/b/a SEARS, and SEARS, ROEBUCK AND CO., alleges as follows:

### COUNT I
### ELECTROLUX HOME PRODUCTS, INC.
### STRICT PRODUCT LIABILITY – DEFECTIVE DESIGN

1.    That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint
was, a resident of the County of Cook and State of Illinois.

2.    That on and prior to January 7, 2020, the Defendant, ELECTROLUX HOME
PRODUCTS, INC., was engaged in the business of designing, assembling, preparing,
manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing
for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number
#41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior
to said date, the Defendant, ELECTROLUX HOME PRODUCTS, INC., had, in fact, designed,

FILED DATE: 11/19/2020 1:35 PM    2020L012403

assembled, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.    That on and prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., had a duty to design, assemble, prepare, manufacture, maintain, advertise, distribute, supply, sell, and/or place for sale the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users.

4.    That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., sold its Electrolux ball-hitch designed clothes dryers to Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and/or Defendant, SEARS, ROEBUCK AND CO., for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.    That the aforementioned Defendant, ELECTROLUX HOME PRODUCTS, INC., participated in the design, assembly, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer, in that:

(a)    the subject dryer was designed, manufactured and sold with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source so that lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(b)    the subject dryer was designed, manufactured and sold with a combustible plastic air duct directly below the drum and combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum during its intended operation as a clothes dryer;

2

(c)     the subject dryer was designed, manufactured and sold so that particles of lint that accumulate and ignite behind the drum and within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and blower housing and/or the laundry load that has been dried in the drum;

(d)     the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

(e)     the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not serviceable by the homeowner;

(f)     the subject dryer was designed, manufactured and sold with combustible plastic components within which it was foreseeable that lint would accumulate and ignite;

(g)     the subject dryer was designed, manufactured and sold without adequate warning to the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(h)     the subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(i)     the subject dryer was designed, manufactured and sold without any warning contained on the clothes dryer regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(j)     the subject dryer was designed, manufactured and sold with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the subject dryer;

(k)     the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

(l)     the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, would not prevent the fire from escaping the dryer cabinet if they became ignited;

3

FILED DATE: 11/19/2020 1:35 PM    2020L012403

FILED DATE: 11/19/2020 1:35 PM    2020L012403

(m)    The subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk;

(n)    the subject dryer was designed, manufactured and sold in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

(o)    the subject dryer was designed, manufactured and sold with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use;

(p)    the subject dryer was designed and manufactured with improper component parts, including, but not limited to materials or lubricant near or at the dryer's ball hitch and/or bearing located behind the drum;

(q)    the subject dryer was designed and manufactured with improper component materials, including but not limited to the bearing that holds the dryer's drum in place, which can fail when subjected to lint accumulation; or

(r)    the subject dryer was an unreasonably dangerous product that is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics.

6.    That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

7.    That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

8.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA

4

M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

9.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, ELECTROLUX HOME PRODUCTS, INC., in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

## COUNT II
## ELECTROLUX HOME PRODUCTS, INC.
## STRICT PRODUCT LIABILITY – DEFECTIVE MANUFACTURE

1.    That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.    That on and prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., was engaged in the business of designing, assembling, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number

5

FILED DATE: 11/19/2020 1:35 PM   2020L012403

#41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, ELECTROLUX HOME PRODUCTS, INC., had, in fact, designed, assembled, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.     That on and prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., had a duty to design, assemble, prepare, manufacture, maintain, advertise, distribute, supply, sell, and/or place for sale the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.

4.     That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., sold its Electrolux ball-hitch designed clothes dryers to Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and/or Defendant, SEARS, ROEBUCK AND CO., for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.     That the aforementioned Defendant, ELECTROLUX HOME PRODUCTS, INC., participated in the design, assembly, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer, in that:

(a)     the subject dryer was designed, manufactured and sold with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source so that lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source

6

FILED DATE: 11/19/2020 1:35 PM   2020L012403

of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(b)    the subject dryer was designed, manufactured and sold with a combustible plastic air duct directly below the drum and combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum during its intended operation as a clothes dryer;

(c)    the subject dryer was designed, manufactured and sold so that particles of lint that accumulate and ignite behind the drum and within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and blower housing and/or the laundry load that has been dried in the drum;

(d)    the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

(e)    the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not serviceable by the homeowner;

(f)    the subject dryer was designed, manufactured and sold with combustible plastic components within which it was foreseeable that lint would accumulate and ignite;

(g)    the subject dryer was designed, manufactured and sold without adequate warning to the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(h)    the subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(i)    the subject dryer was designed, manufactured and sold without any warning contained on the clothes dryer regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(j)    the subject dryer was designed, manufactured and sold with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the subject dryer;

7

FILED DATE: 11/19/2020 1:35 PM    2020L012403

(k)   the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

(l)   the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, would not prevent the fire from escaping the dryer cabinet if they became ignited;

(m)   The subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk;

(n)   the subject dryer was designed, manufactured and sold in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

(o)   the subject dryer was designed, manufactured and sold with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use;

(p)   the subject dryer was designed and manufactured with improper component parts, including, but not limited to materials or lubricant near or at the dryer's ball hitch and/or bearing located behind the drum;

(q)   the subject dryer was designed and manufactured with improper component materials, including but not limited to the bearing that holds the dryer's drum in place, which can fail when subjected to lint accumulation; or

(r)   the subject dryers are an unreasonably dangerous product one that is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics.

6.   That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

8

7.    That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

8.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

9.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned.  Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer.  Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, ELECTROLUX HOME PRODUCTS, INC., in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

9

## COUNT III
## ELECTROLUX HOME PRODUCTS, INC.
## STRICT PRODUCT LIABILITY – FAILURE TO WARN

1.      That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.      That on and prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., was engaged in the business of designing, assembling, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, ELECTROLUX HOME PRODUCTS, INC., had, in fact, designed, assembled, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.      That on and prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., had a duty to design, assemble, prepare, manufacture, maintain, advertise, distribute, supply, sell, and/or place for sale the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users, and a duty to warn of the dangerous propensities of said product.

4.      That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., sold its Electrolux ball-hitch designed clothes dryers to Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and/or Defendant, SEARS, ROEBUCK AND CO., for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.      That the aforementioned Defendant, ELECTROLUX HOME PRODUCTS, INC., participated in the design, assembly, preparation, manufacturing, maintaining, advertising,

10

distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer, in that:

(a) That said product was unreasonably dangerous in that the Defendant failed to warn consumers or users of the dangerous condition of said machine;

(b) That said product was unreasonably dangerous in that the Defendant failed to provide warnings on the machine that the machine was a dangerous fire hazard;

(c) That said product was unreasonably dangerous in that the Defendant failed to provide adequate and proper warnings;

(d) That said product was unreasonably dangerous in that the Defendant failed to provide a warning that lint could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(e) That said product was unreasonably dangerous in that the Defendant failed to warn that lint could accumulate and ignite in areas that are not visible or serviceable to the user;

(f) That said product was unreasonably dangerous in that the Defendant failed to warn that the product is not serviceable by the homeowner;

(g) That said product was unreasonably dangerous in that the Defendant failed to warn the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(h) That said product was unreasonably dangerous in that the Defendant failed to warn of the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(i) That said product was unreasonably dangerous in that the Defendant failed to warn of the known danger that lint can accumulate and ignite in areas

11

FILED DATE: 11/19/2020 1:35 PM    2020L012403

FILED DATE: 11/19/2020 1:35 PM    2020L012403

behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user; or

(j)     That said product was unreasonably dangerous in that the Defendant failed to warn the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk.

6.     That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

7.     That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

8.     That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

9.     That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for,

12

large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, ELECTROLUX HOME PRODUCTS, INC., in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

**COUNT IV**
**ELECTROLUX HOME PRODUCTS, INC.**
**NEGLIGENCE**

1.      That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.      That on and prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., was engaged in the business of designing, assembling, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, ELECTROLUX HOME PRODUCTS, INC., had, in fact, designed, assembled, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.      That on and prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., participated in the design, assembly, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and

13

FILED DATE: 11/19/2020 1:35 PM    2020L012403

FILED DATE: 11/19/2020 1:35 PM    2020L012403

foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer.

4.    That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., sold its Electrolux ball-hitch designed clothes dryers to Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and/or Defendant, SEARS, ROEBUCK AND CO., for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.    That on and prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., had a duty to use reasonable care in the design, assembly, preparation, manufacture, maintenance, advertisement, distribution, supply, sale and/or placement for sale of the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users, and had a duty to use reasonable care in placing into the stream of commerce, distributing, marketing, promoting, and selling of the product, and/or its appurtenances and component parts, that were not defective or unreasonably dangerous when put to use for which they were designed, manufactured, distributed and sold.

6.    That at the time, the Defendant, ELECTROLUX HOME PRODUCTS, INC., designed, assembled, prepared, manufactured, maintained, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances and component parts, the Defendant, ELECTROLUX HOME PRODUCTS, INC., knew or had reason to know of the danger associated with the Electrolux ball-hitch designed clothes dryer, and the manner and circumstance of Plaintiff DIANA M. ARNEY'S foreseeable use of the Electrolux ball-hitch designed clothes dryer, and all of its appurtenances and component parts.

7.    That the Defendant, ELECTROLUX HOME PRODUCTS, INC., breached its duty of care through one or more of the following acts or omissions:

14

FILED DATE: 11/19/2020 1:35 PM    2020L012403

(a)    Negligently and carelessly designed, manufactured and sold the subject dryer with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source of the clothes dryer so that lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(b)    Negligently and carelessly designed, manufactured and sold the subject dryer with a combustible plastic air duct directly below the drum and a combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum;

(c)    Negligently and carelessly designed, manufactured and sold the subject dryer so that particles of lint that accumulate and ignite within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and lower housing and/or the laundry load that has been dried in the drum;

(d)    Negligently and carelessly designed, manufactured and sold the subject dryer in a manner that accumulates lint in areas within the subject dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

(e)    Negligently and carelessly designed, manufactured and sold the subject dryer in a manner that lint accumulates in areas within the clothes dryer that are not serviceable by the user;

(f)    Negligently and carelessly designed, manufactured and sold the subject dryer with combustible plastic components, within which components it was foreseeable that lint would accumulate and ignite a fire when the particles of the lint came into contact with the clothes dryer's gas or electric heat source;

(g)    Negligently and carelessly designed, manufactured and sold the subject dryer without any way to contain a fire which may ignite;

(h)    Negligently and carelessly designed, manufactured and sold the subject dryer without conducting any fire risk studies on the design of the product;

(i)    Negligently and carelessly designed, manufactured and sold the subject dryer without conducting any lint accumulation studies during the design of the product;

(j)    Negligently and carelessly failed to advise or instruct appliance service personnel of a need to dismantle the subject dryer and to remove lint from behind the dryer drum and from within the combustible plastic air duct and blower housing;

15

(k)     Negligently and carelessly designed, manufactured and sold the subject dryer
without adequate warning to the user that lint can accumulate and ignite in areas
behind the drum and within the combustible plastic air duct and/or blower housing,
which areas are not visible to or serviceable by the user;

(l)     Negligently and carelessly designed, manufactured and sold the subjects dryer
without any warnings contained on the clothes dryer that lint can accumulate and
ignite in areas behind the drum and within the combustible plastic air duct and /or
blower housing, which areas are not visible to or serviceable by the user;

(m)     Negligently and carelessly designed, manufactured and sold the subject dryer with
front drum seals that failed to seal the drum from the surrounding cabinet and
thereby promoted the accumulation of lint behind the drum and in the heater pan
where it could be ignited by the gas or electric heat source of the clothes dryer;

(n)     Negligently and carelessly designed, manufactured and sold the subject dryer with
combustible plastic components which Electrolux knew, or should have known,
could ignite and permit the fire to escape the dryer cabinet;

(o)     Negligently and carelessly designed, manufactured and sold the subject dryer with
a defective ball hitch and/or bearing, which Electrolux knew, or should have known
would fail when subjected to lint accumulation during normal and foreseeable use;

(p)     Negligently and carelessly designed, manufactured and sold the subject dryer in a
defective nature because the lubricant used at or near the ball hitch or ball bearing
– which holds the dryer's drum in place – contained an improper lubricant that was
or could be effected by lint accumulation and fail;

(q)     Negligently and carelessly designed, manufactured and sold the subject dryer with
improper component parts, including, but not limited to materials or lubricant near
or at the dryer's ball hitch and/or bearing located behind the drum;

(r)     Negligently and carelessly designed, manufactured and sold the subject dryer with
improper component materials, including but not limited to the bearing that holds
the dryer's drum in place, which can fail when subjected to lint accumulation;

(s)     Negligently and carelessly failed to advise the user of the necessity to remove the
dryer drum of the subject dryer and remove all lint from behind the dryer drum;

(t)     Negligently and carelessly failed to issue a service bulletin on the subject dryer on
the necessity to remove the dryer drum of the clothes dryer and remove all lint from
behind the dryer drum;

(u)     Negligently and carelessly failed to provide a machine that was not an unreasonably
dangerous product to an extent beyond that which would be contemplated by the

16

ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics;

(v)    Negligently and carelessly designed, manufactured, and sold the product, and/or its appurtenances and component parts, such that the Dryer was unreasonably dangerous;

(w)    Negligently and carelessly failed to design and manufacture a product that was not unreasonably dangerous;

(x)    Negligently and carelessly failed to provide safe and proper warning to consumers or users of the dangerous condition of said machine.

8.    That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

9.    That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

10.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

11.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to

17

FILED DATE: 11/19/2020 1:35 PM    2020L012403

FILED DATE: 11/19/2020 1:35 PM    2020L012403

suffer. Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, ELECTROLUX HOME PRODUCTS, INC., in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

**COUNT V**
**TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS**
**STRICT PRODUCT LIABILITY – DEFECTIVE DESIGN**

1.      That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.      That on and prior to January 7, 2020, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, was engaged in the business of designing, assembling, installing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had, in fact, designed, assembled, installed, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.      That on and prior to January 7, 2020, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had a duty to design, assemble, install, prepare, manufacture,

18

FILED DATE: 11/19/2020 1:35 PM    2020L012403

maintain, advertise, distribute, supply, sell, and/or place for sale the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users.

4.    That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., designed, manufactured, and sold Electrolux ball-hitch designed clothes dryers to Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.    That the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had the right to examine its Kenmore line products that were manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC., to ensure they were designed and manufactured safely, and to approve product literature and warnings for Kenmore dryers manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC.

6.    That the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, held itself out as a manufacturer of the clothes dryer by allowing it be sold and advertised as a Kenmore dryer, with a Kenmore and/or Sears service manual, and a Kenmore and/or Sears warranty.

7.    That the aforementioned Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, participated in the design, assembly, installation, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer, in that:

(a)    the subject dryer was designed, manufactured and sold with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source so that

19

FILED DATE: 11/19/2020 1:35 PM    2020L012403

lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(b)     the subject dryer was designed, manufactured and sold with a combustible plastic air duct directly below the drum and combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum during its intended operation as a clothes dryer;

(c)     the subject dryer was designed, manufactured and sold so that particles of lint that accumulate and ignite behind the drum and within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and blower housing and/or the laundry load that has been dried in the drum;

(d)     the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

(e)     the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not serviceable by the homeowner;

(f)     the subject dryer was designed, manufactured and sold with combustible plastic components within which it was foreseeable that lint would accumulate and ignite;

(g)     the subject dryer was designed, manufactured and sold without adequate warning to the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(h)     the subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(i)     the subject dryer was designed, manufactured and sold without any warning contained on the clothes dryer regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(j)     the subject dryer was designed, manufactured and sold with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the

20

FILED DATE: 11/19/2020 1:35 PM    2020L012403

accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the subject dryer;

(k)  the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

(l)  the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, would not prevent the fire from escaping the dryer cabinet if they became ignited;

(m)  The subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk;

(n)  the subject dryer was designed, manufactured and sold in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

(o)  the subject dryer was designed, manufactured and sold with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use;

(p)  the subject dryer was designed and manufactured with improper component parts, including, but not limited to materials or lubricant near or at the dryer's ball hitch and/or bearing located behind the drum;

(q)  the subject dryer was designed and manufactured with improper component materials, including but not limited to the bearing that holds the dryer's drum in place, which can fail when subjected to lint accumulation; or

(r)  the subject dryer was an unreasonably dangerous product that is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics.

8.    That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was sold to the consumer by Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS.

FILED DATE: 11/19/2020 1:35 PM   2020L012403

9.     That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was installed by the agents, apparent agents, employees, and/or representatives of Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

10.    That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

11.    That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

12.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

13.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for,

22

large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

**COUNT VI**
**TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS**
**STRICT PRODUCT LIABILITY – DEFECTIVE MANUFACTURE**

1.    That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.    That on and prior to January 7, 2020, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, was engaged in the business of designing, assembling, installing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had, in fact, designed, assembled, installed, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.    That on and prior to January 7, 2020, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had a duty to design, assemble, install, prepare, manufacture, maintain, advertise, distribute, supply, sell, and/or place for sale the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users to an extent

FILED DATE: 11/19/2020 1:35 PM    2020L012403

23

FILED DATE: 11/19/2020 1:35 PM   2020L012403

beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.

4.     That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., designed, manufactured, and sold Electrolux ball-hitch designed clothes dryers to Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.     That the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had the right to examine its Kenmore line products that were manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC., to ensure they were designed and manufactured safely, and to approve product literature and warnings for Kenmore dryers manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC.

6.     That the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, held itself out as a manufacturer of the clothes dryer by allowing it be sold and advertised as a Kenmore dryer, with a Kenmore and/or Sears service manual, and a Kenmore and/or Sears warranty.

7.     That the aforementioned Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, participated in the design, assembly, installation, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer, in that:

(a)     the subject dryer was designed, manufactured and sold with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source so that

24

lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(b)    the subject dryer was designed, manufactured and sold with a combustible plastic air duct directly below the drum and combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum during its intended operation as a clothes dryer;

(c)    the subject dryer was designed, manufactured and sold so that particles of lint that accumulate and ignite behind the drum and within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and blower housing and/or the laundry load that has been dried in the drum;

(d)    the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

(e)    the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not serviceable by the homeowner;

(f)    the subject dryer was designed, manufactured and sold with combustible plastic components within which it was foreseeable that lint would accumulate and ignite;

(g)    the subject dryer was designed, manufactured and sold without adequate warning to the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(h)    the subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(i)    the subject dryers were designed, manufactured and sold without any warning contained on the clothes dryer regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(j)    the subject dryer was designed, manufactured and sold with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the

FILED DATE: 11/19/2020 1:35 PM    2020L012403

FILED DATE: 11/19/2020 1:35 PM    2020L012403

accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the subject dryer;

(k)     the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

(l)     the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, would not prevent the fire from escaping the dryer cabinet if they became ignited;

(m)     The subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk;

(n)     the subject dryer was designed, manufactured and sold in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

(o)     the subject dryer was designed, manufactured and sold with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use;

(p)     the subject dryer was designed and manufactured with improper component parts, including, but not limited to materials or lubricant near or at the dryer's ball hitch and/or bearing located behind the drum;

(q)     the subject dryer was designed and manufactured with improper component materials, including but not limited to the bearing that holds the dryer's drum in place, which can fail when subjected to lint accumulation; or

(r)     the subject dryer was an unreasonably dangerous product one that is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics.

8.     That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was sold to the consumer by Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS.

26

9.    That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was installed by the agents, apparent agents, employees, and/or representatives of Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

10.    That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

11.    That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

12.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

13.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for,

27

FILED DATE: 11/19/2020 1:35 PM    2020L012403

FILED DATE: 11/19/2020 1:35 PM    2020L012403

large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

## COUNT VII
## TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS
## STRICT PRODUCT LIABILITY – FAILURE TO WARN

1.     That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.     That on and prior to January 7, 2020, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, was engaged in the business of designing, assembling, installing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had, in fact, designed, assembled, installed, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.     That on and prior to January 7, 2020, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had a duty to design, assemble, install, prepare, manufacture, maintain, advertise, distribute, supply, sell, and/or place for sale the aforesaid product and/or its

28

appurtenances and component parts so that it was not unreasonably dangerous to users, and a duty to warn of the dangerous propensities of said product.

4.    That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., designed, manufactured, and sold Electrolux ball-hitch designed clothes dryers to Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.    That the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had the right to examine its Kenmore line products that were manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC., to ensure they were designed and manufactured safely, and to approve product literature and warnings for Kenmore dryers manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC.

6.    That the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, held itself out as a manufacturer of the clothes dryer by allowing it be sold and advertised as a Kenmore dryer, with a Kenmore and/or Sears service manual, and a Kenmore and/or Sears warranty.

7.    That the aforementioned Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, participated in the design, assembly, installation, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer, in that:

(a)    That said product was unreasonably dangerous in that the Defendant failed to warn consumers or users of the dangerous condition of said machine;

29

FILED DATE: 11/19/2020 1:35 PM    2020L012403

(b)     That said product was unreasonably dangerous in that the Defendant failed to provide warnings on the machine that the machine was a dangerous fire hazard;

(c)     That said product was unreasonably dangerous in that the Defendant failed to provide adequate and proper warnings;

(d)     That said product was unreasonably dangerous in that the Defendant failed to provide a warning that lint could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(e)     That said product was unreasonably dangerous in that the Defendant failed to warn that lint could accumulate and ignite in areas that are not visible or serviceable to the user;

(f)     That said product was unreasonably dangerous in that the Defendant failed to warn that the product is not serviceable by the homeowner;

(g)     That said product was unreasonably dangerous in that the Defendant failed to warn the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(h)     That said product was unreasonably dangerous in that the Defendant failed to warn of the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(i)     That said product was unreasonably dangerous in that the Defendant failed to warn of the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(j)     That said product was unreasonably dangerous in that the Defendant failed to warn the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk.

FILED DATE: 11/19/2020 1:35 PM    2020L012403

8.      That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was sold to the consumer by Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS.

9.      That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

10.     That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was installed by the agents, apparent agents, employees, and/or representatives of Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

11.     That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

12.     That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

13.     That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and

31

FILED DATE: 11/19/2020 1:35 PM    2020L012403

affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

**COUNT VIII**
**TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS**
**NEGLIGENCE**

1.    That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.    That on and prior to January 7, 2020, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, was engaged in the business of designing, assembling, installing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, had, in fact, designed, assembled, installed, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

32

FILED DATE: 11/19/2020 1:35 PM    2020L012403

3.      That on and prior to January 7, 2020, the Defendant, TRANSFORM SR BRANDS

LLC, Individually and d/b/a SEARS, participated in the design, assembly, installation, preparation,

manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the

aforesaid product and/or its appurtenances and component parts, while said product, and/or its

appurtenances and component parts, was in an unreasonably dangerous condition with regard to

its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product,

and/or its appurtenances and component parts, left the control of the manufacturer.

4.      That on and prior to January 7, 2020, the Defendant, TRANSFORM SR BRANDS

LLC, Individually and d/b/a SEARS, had a duty to use reasonable care in the design, assembly,

installation, preparation, manufacture, maintenance, advertisement, distribution, supply, sale

and/or placement for sale of the aforesaid product and/or its appurtenances and component parts

so that it was not unreasonably dangerous to users, and had a duty to use reasonable care in placing

into the stream of commerce, distributing, marketing, promoting, and selling of the product, and/or

its appurtenances and component parts, that were not defective or unreasonably dangerous when

put to use for which they were designed, manufactured, distributed and sold.

5.      That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS,

INC., designed, manufactured, and sold Electrolux ball-hitch designed clothes dryers to

Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, for Sears'

Kenmore line of dryers, including the dryer involved in this case.

6.      That the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a

SEARS, had the right to examine its Kenmore line products that were manufactured by Defendant,

ELECTROLUX HOME PRODUCTS, INC., to ensure they were designed and manufactured

33

FILED DATE: 11/19/2020 1:35 PM    2020L012403

safely, and to approve product literature and warnings for Kenmore dryers manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC.

7.      That the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, held itself out as a manufacturer of the clothes dryer by allowing it be sold and advertised as a Kenmore dryer, with a Kenmore and/or Sears service manual, and a Kenmore and/or Sears warranty.

8.      That at the time, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, designed, assembled, installed, prepared, manufactured, maintained, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances and component parts, the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, knew or had reason to know of the danger associated with the Electrolux ball-hitch designed clothes dryer, and the manner and circumstance of Plaintiff DIANA M. ARNEY'S foreseeable use of the Electrolux ball-hitch designed clothes dryer, and all of its appurtenances and component parts.

9.      That the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, breached its duty of care through one or more of the following acts or omissions:

(a)      Negligently and carelessly designed, manufactured and sold the subject dryer with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source of the clothes dryer so that lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(b)      Negligently and carelessly designed, manufactured and sold the subject dryer with a combustible plastic air duct directly below the drum and a combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum;

(c)      Negligently and carelessly designed, manufactured and sold the subject dryer so that particles of lint that accumulate and ignite within the heater pan can travel into

34

and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and lower housing and/or the laundry load that has been dried in the drum;

(d)     Negligently and carelessly designed, manufactured and sold the subject dryer in a manner that accumulates lint in areas within the subject dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

(e)     Negligently and carelessly designed, manufactured and sold the subject dryer in a manner that lint accumulates in areas within the clothes dryer that are not serviceable by the user;

(f)     Negligently and carelessly designed, manufactured and sold the subject dryer with combustible plastic components, within which components it was foreseeable that lint would accumulate and ignite a fire when the particles of the lint came into contact with the clothes dryer's gas or electric heat source;

(g)     Negligently and carelessly designed, manufactured and sold the subject dryer without any way to contain a fire which may ignite;

(h)     Negligently and carelessly designed, manufactured and sold the subject dryer without conducting any fire risk studies on the design of the product;

(i)     Negligently and carelessly designed, manufactured and sold the subject dryer without conducting any lint accumulation studies during the design of the product;

(j)     Negligently and carelessly failed to advise or instruct appliance service personnel of a need to dismantle the subject dryer and to remove lint from behind the dryer drum and from within the combustible plastic air duct and blower housing;

(k)     Negligently and carelessly designed, manufactured and sold the subject dryer without adequate warning to the user that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(l)     Negligently and carelessly designed, manufactured and sold the subjects dryer without any warnings contained on the clothes dryer that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and /or blower housing, which areas are not visible to or serviceable by the user;

(m)     Negligently and carelessly designed, manufactured and sold the subject dryer with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the clothes dryer;

35

FILED DATE: 11/19/2020 1:35 PM    2020L012403

(n)  Negligently and carelessly designed, manufactured and sold the subject dryer with combustible plastic components which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

(o)  Negligently and carelessly designed, manufactured and sold the subject dryer with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use

(p)  Negligently and carelessly designed, manufactured and sold the subject dryer in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

(q)  Negligently and carelessly designed, manufactured and sold the subject dryer with improper component parts, including, but not limited to materials or lubricant near or at the dryer's ball hitch and/or bearing located behind the drum;

(r)  Negligently and carelessly designed, manufactured and sold the subject dryer improper component materials, including but not limited to the bearing that holds the dryer's drum in place, which can fail when subjected to lint accumulation;

(s)  Negligently and carelessly failed to advise the user of the necessity to remove the dryer drum of the subject dryers and remove all lint from behind the dryer drum;

(t)  Negligently and carelessly failed to issue a service bulletin on the subject dryer on the necessity to remove the dryer drum of the clothes dryer and remove all lint from behind the dryer drum;

(u)  Negligently and carelessly failed to provide a machine that was not an unreasonably dangerous product to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics;

(v)  Negligently and carelessly designed, manufactured, and sold the product, and/or its appurtenances and component parts, such that the Dryer was unreasonably dangerous;

(w)  Negligently and carelessly failed to design and manufacture a product that was not unreasonably dangerous;

(x)  Negligently and carelessly failed to provide safe and proper warning to consumers or users of the dangerous condition of said machine;

(y)  Negligently and carelessly failed to properly and safely install the machine at the home of the consumer; or

36

FILED DATE: 11/19/2020 1:35 PM    2020L012403

FILED DATE: 11/19/2020 1:35 PM   2020L012403

(z)     Negligently and carelessly failed to install the machine with safe and proper venting;

10.     That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was sold to the consumer by Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS.

11.     That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was installed by the agents, apparent agents, employees, and/or representatives of Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

12.     That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

13.     That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

14.     That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

15.     That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff,

FILED DATE: 11/19/2020 1:35 PM     2020L012403

DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

**COUNT IX**
**SEARS, ROEBUCK AND CO.**
**STRICT PRODUCT LIABILITY – DEFECTIVE DESIGN**

1.     That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.     That on and prior to January 7, 2020, the Defendant, SEARS, ROEBUCK AND CO., was engaged in the business of designing, assembling, installing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, SEARS, ROEBUCK AND CO., had, in fact, designed, assembled, installed, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

38

FILED DATE: 11/19/2020 1:35 PM    2020L012403

3.    That on and prior to January 7, 2020, the Defendant, SEARS, ROEBUCK AND CO., had a duty to design, assemble, install, prepare, manufacture, maintain, advertise, distribute, supply, sell, and/or place for sale the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users.

4.    That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., designed, manufactured, and sold Electrolux ball-hitch designed clothes dryers to Defendant, SEARS, ROEBUCK AND CO., for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.    That the Defendant, SEARS, ROEBUCK AND CO., had the right to examine its Kenmore line products that were manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC., to ensure they were designed and manufactured safely, and to approve product literature and warnings for Kenmore dryers manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC.

6.    That the Defendant, SEARS, ROEBUCK AND CO., held itself out as a manufacturer of the clothes dryer by allowing it be sold and advertised as a Kenmore dryer, with a Kenmore and/or Sears service manual, and a Kenmore and/or Sears warranty.

7.    That the aforementioned Defendant, SEARS, ROEBUCK AND CO., participated in the design, assembly, installation, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer, in that:

39

(a)     the subject dryer was designed, manufactured and sold with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source so that lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(b)     the subject dryer was designed, manufactured and sold with a combustible plastic air duct directly below the drum and combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum during its intended operation as a clothes dryer;

(c)     the subject dryer was designed, manufactured and sold so that particles of lint that accumulate and ignite behind the drum and within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and blower housing and/or the laundry load that has been dried in the drum;

(d)     the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

(e)     the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not serviceable by the homeowner;

(f)     the subject dryer was designed, manufactured and sold with combustible plastic components within which it was foreseeable that lint would accumulate and ignite;

(g)     the subject dryer was designed, manufactured and sold without adequate warning to the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(h)     the subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(i)     the subject dryer was designed, manufactured and sold without any warning contained on the clothes dryer regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

40

FILED DATE: 11/19/2020 1:35 PM    2020L012403

FILED DATE: 11/19/2020 1:35 PM    2020L012403

(j)    the subject dryer was designed, manufactured and sold with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the subject dryer;

(k)    the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

(l)    the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, would not prevent the fire from escaping the dryer cabinet if they became ignited;

(m)    The subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk;

(n)    the subject dryer was designed, manufactured and sold in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

(o)    the subject dryer was designed, manufactured and sold with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use;

(p)    the subject dryer was designed and manufactured with improper component parts, including, but not limited to materials or lubricant near or at the dryer's ball hitch and/or bearing located behind the drum;

(q)    the subject dryer was designed and manufactured with improper component materials, including but not limited to the bearing that holds the dryer's drum in place, which can fail when subjected to lint accumulation; or

(r)    the subject dryer was an unreasonably dangerous product that is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics.

8.    That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes

dryer was sold to the consumer by Defendant, SEARS, ROEBUCK AND CO.

41

9.    That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was installed by the agents, apparent agents, employees, and/or representatives of Defendant, SEARS, ROEBUCK AND CO. at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

10.    That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

11.    That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

12.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

13.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for,

FILED DATE: 11/19/2020 1:35 PM    2020L012403

42

large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, SEARS, ROEBUCK AND CO., in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

**COUNT X**
**SEARS, ROEBUCK AND CO.**
**STRICT PRODUCT LIABILITY – DEFECTIVE MANUFACTURE**

1.      That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.      That on and prior to January 7, 2020, the Defendant, SEARS, ROEBUCK AND CO., was engaged in the business of designing, assembling, installing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, SEARS, ROEBUCK AND CO., had, in fact, designed, assembled, installed, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.      That on and prior to January 7, 2020, the Defendant, SEARS, ROEBUCK AND CO., had a duty to design, assemble, install, prepare, manufacture, maintain, advertise, distribute, supply, sell, and/or place for sale the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users to an extent beyond that which would be

43

FILED DATE: 11/19/2020 1:35 PM    2020L012403

contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.

4.      That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., designed, manufactured, and sold Electrolux ball-hitch designed clothes dryers to Defendant, SEARS, ROEBUCK AND CO., for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.      That the Defendant, SEARS, ROEBUCK AND CO., had the right to examine its Kenmore line products that were manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC., to ensure they were designed and manufactured safely, and to approve product literature and warnings for Kenmore dryers manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC.

6.      That the Defendant, SEARS, ROEBUCK AND CO., held itself out as a manufacturer of the clothes dryer by allowing it be sold and advertised as a Kenmore dryer, with a Kenmore and/or Sears service manual, and a Kenmore and/or Sears warranty.

7.      That the aforementioned Defendant, SEARS, ROEBUCK AND CO., participated in the design, assembly, installation, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer, in that:

(a)      the subject dryer was designed, manufactured and sold with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source so that lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source

44

FILED DATE: 11/19/2020 1:35 PM    2020L012403

of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(b)    the subject dryer was designed, manufactured and sold with a combustible plastic air duct directly below the drum and combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum during its intended operation as a clothes dryer;

(c)    the subject dryer was designed, manufactured and sold so that particles of lint that accumulate and ignite behind the drum and within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and blower housing and/or the laundry load that has been dried in the drum;

(d)    the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

(e)    the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not serviceable by the homeowner;

(f)    the subject dryer was designed, manufactured and sold with combustible plastic components within which it was foreseeable that lint would accumulate and ignite;

(g)    the subject dryer was designed, manufactured and sold without adequate warning to the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(h)    the subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(i)    the subject dryers were designed, manufactured and sold without any warning contained on the clothes dryer regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(j)    the subject dryer was designed, manufactured and sold with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the subject dryer;

45

FILED DATE: 11/19/2020 1:35 PM    2020L012403

(k)    the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

(l)    the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, would not prevent the fire from escaping the dryer cabinet if they became ignited;

(m)    The subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk;

(n)    the subject dryer was designed, manufactured and sold in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

(o)    the subject dryer was designed, manufactured and sold with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use;

(p)    the subject dryer was designed and manufactured with improper component parts, including, but not limited to materials or lubricant near or at the dryer's ball hitch and/or bearing located behind the drum;

(q)    the subject dryer was designed and manufactured with improper component materials, including but not limited to the bearing that holds the dryer's drum in place, which can fail when subjected to lint accumulation; or

(r)    the subject dryer was an unreasonably dangerous product one that is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics.

8.    That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was sold to the consumer by Defendant, SEARS, ROEBUCK AND CO.

9.    That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was installed by the agents, apparent agents, employees, and/or representatives of Defendant,

46

SEARS, ROEBUCK AND CO., at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

10.    That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

11.    That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

12.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

13.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned.  Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer.  Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

47

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, SEARS, ROEBUCK AND CO., in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

**COUNT XI**
**SEARS, ROEBUCK AND CO.**
**STRICT PRODUCT LIABILITY – FAILURE TO WARN**

1.      That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.      That on and prior to January 7, 2020, the Defendant, SEARS, ROEBUCK AND CO., was engaged in the business of designing, assembling, installing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, SEARS, ROEBUCK AND CO., had, in fact, designed, assembled, installed, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.      That on and prior to January 7, 2020, the Defendant, SEARS, ROEBUCK AND CO., had a duty to design, assemble, install, prepare, manufacture, maintain, advertise, distribute, supply, sell, and/or place for sale the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users, and a duty to warn of the dangerous propensities of said product.

4.      That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., designed, manufactured, and sold Electrolux ball-hitch designed clothes dryers to

FILED DATE: 11/19/2020 1:35 PM    2020L012403

48

FILED DATE: 11/19/2020 1:35 PM    2020L012403

Defendant, SEARS, ROEBUCK AND CO., for Sears' Kenmore line of dryers, including the dryer involved in this case.

5.      That the Defendant, SEARS, ROEBUCK AND CO., had the right to examine its Kenmore line products that were manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC., to ensure they were designed and manufactured safely, and to approve product literature and warnings for Kenmore dryers manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC.

6.      That the Defendant, SEARS, ROEBUCK AND CO., held itself out as a manufacturer of the clothes dryer by allowing it be sold and advertised as a Kenmore dryer, with a Kenmore and/or Sears service manual, and a Kenmore and/or Sears warranty.

7.      That the aforementioned Defendant, SEARS, ROEBUCK AND CO., participated in the design, assembly, installation, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer, in that:

    (a)   That said product was unreasonably dangerous in that the Defendant failed to warn consumers or users of the dangerous condition of said machine;

    (b)   That said product was unreasonably dangerous in that the Defendant failed to provide warnings on the machine that the machine was a dangerous fire hazard;

    (c)   That said product was unreasonably dangerous in that the Defendant failed to provide adequate and proper warnings;

    (d)   That said product was unreasonably dangerous in that the Defendant failed to provide a warning that lint could migrate to and accumulate behind the

drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(e)    That said product was unreasonably dangerous in that the Defendant failed to warn that lint could accumulate and ignite in areas that are not visible or serviceable to the user;

(f)    That said product was unreasonably dangerous in that the Defendant failed to warn that the product is not serviceable by the homeowner;

(g)    That said product was unreasonably dangerous in that the Defendant failed to warn the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(h)    That said product was unreasonably dangerous in that the Defendant failed to warn of the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(i)    That said product was unreasonably dangerous in that the Defendant failed to warn of the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(j)    That said product was unreasonably dangerous in that the Defendant failed to warn the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk.

8.    That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was sold to the consumer by Defendant, SEARS, ROEBUCK AND CO.

9.    That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

50

FILED DATE: 11/19/2020 1:35 PM    2020L012403

FILED DATE: 11/19/2020 1:35 PM    2020L012403

10.    That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was installed by the agents, apparent agents, employees, and/or representatives of Defendant, SEARS, ROEBUCK AND CO., at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

11.    That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

12.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

13.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, SEARS, ROEBUCK AND CO., in a dollar amount to satisfy the jurisdictional

51

limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

## COUNT XII
## SEARS, ROEBUCK AND CO.
## NEGLIGENCE

1.      That the Plaintiff, DIANA M. ARNEY, is, and at all times relevant to this Complaint was, a resident of the County of Cook and State of Illinois.

2.      That on and prior to January 7, 2020, the Defendant, SEARS, ROEBUCK AND CO., was engaged in the business of designing, assembling, installing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, and/or placing for sale a certain product and/or its appurtenances and component parts, Kenmore Model Number #41798042700, commonly known as an Electrolux ball-hitch designed clothes dryer, and that prior to said date, the Defendant, SEARS, ROEBUCK AND CO., had, in fact, designed, assembled, installed, prepared, manufactured, maintained, provided, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances.

3.      That on and prior to January 7, 2020, the Defendant, SEARS, ROEBUCK AND CO., participated in the design, assembly, installation, preparation, manufacturing, maintaining, advertising, distribution, supplying, sale and/or placing for sale of the aforesaid product and/or its appurtenances and component parts, while said product, and/or its appurtenances and component parts, was in an unreasonably dangerous condition with regard to its acknowledged, intended, and foreseeable uses, and was so at the time the aforesaid product, and/or its appurtenances and component parts, left the control of the manufacturer.

4.      That on and prior to January 7, 2020, the Defendant, SEARS, ROEBUCK AND CO., had a duty to use reasonable care in the design, assembly, installation, preparation, manufacture,

52

FILED DATE: 11/19/2020 1:35 PM    2020L012403

maintenance, advertisement, distribution, supply, sale and/or placement for sale of the aforesaid product and/or its appurtenances and component parts so that it was not unreasonably dangerous to users, and had a duty to use reasonable care in placing into the stream of commerce, distributing, marketing, promoting, and selling of the product, and/or its appurtenances and component parts, that were not defective or unreasonably dangerous when put to use for which they were designed, manufactured, distributed and sold.

5.      That prior to January 7, 2020, the Defendant, ELECTROLUX HOME PRODUCTS, INC., designed, manufactured, and sold Electrolux ball-hitch designed clothes dryers to Defendant, SEARS, ROEBUCK AND CO., for Sears' Kenmore line of dryers, including the dryer involved in this case.

6.      That the Defendant, SEARS, ROEBUCK AND CO., had the right to examine its Kenmore line products that were manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC., to ensure they were designed and manufactured safely, and to approve product literature and warnings for Kenmore dryers manufactured by Defendant, ELECTROLUX HOME PRODUCTS, INC.

7.      That the Defendant, SEARS, ROEBUCK AND CO., held itself out as a manufacturer of the clothes dryer by allowing it be sold and advertised as a Kenmore dryer, with a Kenmore and/or Sears service manual, and a Kenmore and/or Sears warranty.

8.      That at the time, the Defendant, SEARS, ROEBUCK AND CO., designed, assembled, installed, prepared, manufactured, maintained, advertised, distributed, supplied, and/or placed for sale the aforesaid product and/or its appurtenances and component parts, the Defendant, SEARS, ROEBUCK AND CO., knew or had reason to know of the danger associated with the Electrolux ball-hitch designed clothes dryer, and the manner and circumstance of Plaintiff DIANA

53

FILED DATE: 11/19/2020 1:35 PM  2020L012403

FILED DATE: 11/19/2020 1:35 PM   2020L012403

M. ARNEY'S foreseeable use of the Electrolux ball-hitch designed clothes dryer, and all of its appurtenances and component parts.

9.   That the Defendant, SEARS, ROEBUCK AND CO., breached its duty of care through one or more of the following acts or omissions:

(a)   Negligently and carelessly designed, manufactured and sold the subject dryer with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source of the clothes dryer so that lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

(b)   Negligently and carelessly designed, manufactured and sold the subject dryer with a combustible plastic air duct directly below the drum and a combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum;

(c)   Negligently and carelessly designed, manufactured and sold the subject dryer so that particles of lint that accumulate and ignite within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and lower housing and/or the laundry load that has been dried in the drum;

(d)   Negligently and carelessly designed, manufactured and sold the subject dryer in a manner that accumulates lint in areas within the subject dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

(e)   Negligently and carelessly designed, manufactured and sold the subject dryer in a manner that lint accumulates in areas within the clothes dryer that are not serviceable by the user;

(f)   Negligently and carelessly designed, manufactured and sold the subject dryer with combustible plastic components, within which components it was foreseeable that lint would accumulate and ignite a fire when the particles of the lint came into contact with the clothes dryer's gas or electric heat source;

(g)   Negligently and carelessly designed, manufactured and sold the subject dryer without any way to contain a fire which may ignite;

(h)   Negligently and carelessly designed, manufactured and sold the subject dryer without conducting any fire risk studies on the design of the product;

54

(i)   Negligently and carelessly designed, manufactured and sold the subject dryer without conducting any lint accumulation studies during the design of the product;

(j)   Negligently and carelessly failed to advise or instruct appliance service personnel of a need to dismantle the subject dryer and to remove lint from behind the dryer drum and from within the combustible plastic air duct and blower housing;

(k)   Negligently and carelessly designed, manufactured and sold the subject dryer without adequate warning to the user that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(l)   Negligently and carelessly designed, manufactured and sold the subjects dryer without any warnings contained on the clothes dryer that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and /or blower housing, which areas are not visible to or serviceable by the user;

(m)   Negligently and carelessly designed, manufactured and sold the subject dryer with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the clothes dryer;

(n)   Negligently and carelessly designed, manufactured and sold the subject dryer with combustible plastic components which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

(o)   Negligently and carelessly designed, manufactured and sold the subject dryer with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use

(p)   Negligently and carelessly designed, manufactured and sold the subject dryer in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

(q)   Negligently and carelessly designed, manufactured and sold the subject dryer with improper component parts, including, but not limited to materials or lubricant near or at the dryer's ball hitch and/or bearing located behind the drum;

(r)   Negligently and carelessly designed, manufactured and sold the subject dryer improper component materials, including but not limited to the bearing that holds the dryer's drum in place, which can fail when subjected to lint accumulation;

(s)   Negligently and carelessly failed to advise the user of the necessity to remove the dryer drum of the subject dryers and remove all lint from behind the dryer drum;

FILED DATE: 11/19/2020 1:35 PM    2020L012403

(t)     Negligently and carelessly failed to issue a service bulletin on the subject dryer on the necessity to remove the dryer drum of the clothes dryer and remove all lint from behind the dryer drum;

(u)     Negligently and carelessly failed to provide a machine that was not an unreasonably dangerous product to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics;

(v)     Negligently and carelessly designed, manufactured, and sold the product, and/or its appurtenances and component parts, such that the Dryer was unreasonably dangerous;

(w)     Negligently and carelessly failed to design and manufacture a product that was not unreasonably dangerous;

(x)     Negligently and carelessly failed to provide safe and proper warning to consumers or users of the dangerous condition of said machine;

(y)     Negligently and carelessly failed to properly and safely install the machine at the home of the consumer; or

(z)     Negligently and carelessly failed to install the machine with safe and proper venting;

10.    That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was sold to the consumer by Defendant, SEARS, ROEBUCK AND CO.

11.    That prior to January 7, 2020, the aforesaid Electrolux ball-hitch designed clothes dryer was installed by the agents, apparent agents, employees, and/or representatives of Defendant, SEARS, ROEBUCK AND CO., at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

12.    That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

56

13.    That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

14.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

15.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendant, SEARS, ROEBUCK AND CO., in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

57

FILED DATE: 11/19/2020 1:35 PM    2020L012403

## COUNT XIII
## ELECTROLUX HOME PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and DEFENDANT, SEARS, ROEBUCK AND CO. JOINT VENTURE

1.  That on and prior to January 7, 2020, the Defendants, ELECTROLUX HOME PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and SEARS, ROEBUCK AND CO., were engaged in a joint venture for the purpose of manufacturing, designing, developing and selling a line of Electrolux ball-hitch designed clothes dryers that was to be sold exclusively at Sears under the Sears' brand name, Kenmore.

2.  That on and prior to January 7, 2020, the Defendants, ELECTROLUX HOME PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and SEARS, ROEBUCK AND CO., associated to carry out a single, specific enterprise for profit.

3.  That on and prior to January 7, 2020, the Defendants, ELECTROLUX HOME PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and SEARS, ROEBUCK AND CO., associated to design, manufacture, and sell the Sears' Kenmore line Electrolux ball-hitch designed clothes dryers for profit with the intent to engage in a joint venture.

4.  That on and prior to January 7, 2020, the Defendants, ELECTROLUX HOME PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and SEARS, ROEBUCK AND CO., shared a community of interest, and contributed property, finances, effort, skill, and/or knowledge to the joint venture.

5.  That on and prior to January 7, 2020, the Defendants, ELECTROLUX HOME PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and SEARS, ROEBUCK AND CO., shared propriety interest in the joint venture, shared the right to govern the policy in connection therewith through shared control and management over the design,

58

manufacture, and sale of the Sears' Kenmore line Electrolux ball-hitch designed clothes dryers, and shared in profits and losses.

      6.     That the Defendants, ELECTROLUX HOME PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and SEARS, ROEBUCK AND CO., jointly drafted, provided, reviewed, and/or approved, the manuals, instructions, and warnings on the machine, and were to jointly ensure that the manuals, instructions, and warnings were compliant with regulatory standards and were safe and proper.

      7.     That the Defendants, ELECTROLUX HOME PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and SEARS, ROEBUCK AND CO., jointly designed, manufactured, tested, planned, inspected, approved, assembled, installed, prepared, maintained, advertised, distributed, supplied, and/or sold the Sears' Kenmore line Electrolux ball-hitch designed clothes dryers.

      8.     That the Defendants, ELECTROLUX HOME PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and SEARS, ROEBUCK AND CO., are partners, and therefore, the knowledge possessed by one Defendant is imputed onto the other Defendant, including, but not limited to, knowledge of the personnel and processes related to the design, manufacturing, and knowledge of hazards of ball-hitch designed clothes dryers; knowledge that existing designs do not alleviate those hazards; knowledge that warnings in product literature are inadequate; and knowledge that reasonable alternative feasible design exists.

      9.     That the Defendants, ELECTROLUX HOME PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and SEARS, ROEBUCK AND CO., are vicariously liable for each other's negligent acts and omissions as set forth in Counts I through XII above, incorporated and realleged as if fully set forth herein.

FILED DATE: 11/19/2020 1:35 PM    2020L012403

10.    That on January 7, 2020, the aforesaid product and/or its appurtenances and component parts was in use for its intended purpose of clothes drying at a residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

11.    That on January 7, 2020, the Plaintiff, DIANA M. ARNEY, was living in the residential home located at or near 325 W. Joe Orr Road, in the City of Chicago Heights, County of Cook, and State of Illinois.

12.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, while DIANA M. ARNEY was inside the home, the subject dryer ignited and started a fire in the residence, causing DIANA M. ARNEY to suffer severe and permanent injuries.

13.    That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions of said product and/or its appurtenances and component parts, the Plaintiff, DIANA M. ARNEY, then and there sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to her usual duties and affairs, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, DIANA M. ARNEY, demands judgment against the Defendants, ELECTROLUX HOME PRODUCTS, INC., TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, and SEARS, ROEBUCK AND CO., in a dollar amount to satisfy

60

FILED DATE: 11/19/2020 1:35 PM   2020L012403

the jurisdictional limitation of this Court and such additional amounts as the jury and the Court

shall deem proper, and additionally costs of said suit.

_____

Attorneys for Plaintiff

Sean P. Murray
Julie L. Pustilnik
**TAXMAN, POLLOCK, MURRAY & BEKKERMAN, LLC**
225 W. Wacker, Suite 1650
Chicago, IL 60606
312-586-1700
smurray@tpmblegal.com
jpustilnik@tpmblegal.com

61

FILED
11/19/2020 1:35 P
DOROTHY BROW
CIRCUIT CLERK
COOK COUNTY, I
11200017

Attorney ID# 61090

FILED DATE: 11/19/2C20 1:35 PM  2020L012403

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

DIANA M. ARNEY,                          )
                                         )
        Plaintiff,                  )    Case No.:   2020L012403
                                         )
v.                                       )
                                         )
ELECTROLUX HOME PRODUCTS, INC.,          )
TRANSFORM SR BRANDS LLC, Individually    )
and d/b/a SEARS, and SEARS, ROEBUCK      )
AND CO.                                  )
                                         )
        Defendants.                 )

### ATTORNEY AFFIDAVIT

    I, Sean P. Murray, being first duly sworn on oath, deposes and states that if I were called upon to testify, I would do so as follows:

    1.    That I am an attorney at law licensed to practice in the State of Illinois.

    2.    That I am an attorney with the law firm of TAXMAN, POLLOCK, MURRAY & BEKKERMAN, LLC, attorneys of record for the Plaintiff, DIANA M. ARNEY.

    3.    That based upon the information available to me at the present time, the total amount of money damages sought in this matter exceeds $50,000.00.

    4.    That this Affidavit is submitted in compliance with Supreme Court Rule 222(b).

    FURTHER, Affiant, sayeth not.

_____
Sean P. Murray

SUBSCRIBED AND SWORN TO
before me this 19th day
of November 2020

_____
Notary Public

OFFICIAL SEAL
SHARI L ROSS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 05/16/21

**EXHIBIT E**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

DIANA M. ARNEY,                            )
                                           )
                Plaintiff,                 )    Case No.: 2020 L 012403
                                           )
v.                                         )    Calendar A
                                           )
ELECTROLUX HOME PRODUCTS, INC.,            )
and TRANSFORM SR BRANDS LLC,               )
Individually and d/b/a SEARS,              )
                                           )
                Defendants.                )

## O R D E R

THIS CAUSE coming to be heard on Plaintiff's Motion for Continuance of Defendant's

Motion to Dismiss and Permit Discovery, due notice given and the Court having been fully

advised,

IT IS HEREBY ORDERED:

1)      Plaintiff's Motion for Continuance of Defendant's Motion to Dismiss and Permit

Discovery is Granted;

2)      Defendant TRANSFORM SR BRANDS LLC's Motion to Dismiss is entered and

continued;

3)      Plaintiff is granted leave to conduct written discovery, request documents, and take

depositions, if necessary, to respond to Defendant TRANSFORM SR BRANDS LLC's Motion to

Dismiss.

**TAXMAN, POLLOCK, MURRAY**
**& BEKKERMAN, LLC**
225 West Wacker, Suite 1650
Chicago, Illinois 60606
Tel: (312)586-1700
Attorney ID# 61090

Date

ENTERED: _____
                Judge              Judge's No.

ENTERED
Judge James N. O'Hara - 1983

JUN 2 3 2021

IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

**EXHIBIT F**

## Lucas Sun

| | |
|---|---|
| **From:** | Lucas Sun |
| **Sent:** | Wednesday, June 23, 2021 12:16 PM |
| **To:** | LAW CALAcc (OCJ); Christine Kinnerk |
| **Cc:** | Sean Murray; Julie Pustilnik; James Balog; Courtenay.jalics@tuckerellis.com; Jay.shultz@tuckerellis.com; Emani Evans |
| **Subject:** | Re: Arney vs. Electrolux Home Products, Inc. et al; 2020 L 012403; CAL A- Plain. Mt. for Cont. Def. Mt. and Permit Discovery |

Thank you Judge - I understand that part about the motion to dismiss.

My issue arises from the fact that the discovery that Plaintiff is seeking concerning the successor liability theory of recovery - **cannot possibly be at-issue** based on the relevant portion of the bankruptcy order.

The Federal Bankruptcy Court explicitly found that there can be no successor liability, so how can discovery be allowed on an issue that is already legally resolved? This is a collateral estoppel issue at this point. These are not my representations on behalf of my client - I am citing a legally binding Federal Bankruptcy Order for these final findings.

Lucas Sun
ASSOCIATE ATTORNEY

One E Wacker Dr.  | Suite 3400  | Chicago  |  IL  | 60601
DIRECT 312.422.6154  | CELL 630.234.4645



Alexandria, VA • Boston • Charlotte • Chicago • Detroit • Los Angeles • Orange County, CA
Philadelphia • Richmond • San Francisco • Washington D.C. • Wilmington, DE

**From:** LAW CALAcc (OCJ) <Law.Calacc@cookcountyil.gov>
**Sent:** Wednesday, June 23, 2021 12:03 PM
**To:** Lucas Sun <LSun@ohaganmeyer.com>; Christine Kinnerk <ckinnerk@tpmblegal.com>
**Cc:** Sean Murray <smurray@tpmblegal.com>; Julie Pustilnik <jpustilnik@tpmblegal.com>; James Balog <JBalog@ohaganmeyer.com>; Courtenay.jalics@tuckerellis.com <Courtenay.jalics@tuckerellis.com>; Jay.shultz@tuckerellis.com <Jay.shultz@tuckerellis.com>; Emani Evans <EEvans@ohaganmeyer.com>
**Subject:** [EXTERNAL] RE: Arney vs. Electrolux Home Products, Inc. et al; 2020 L 012403; CAL A- Plain. Mt. for Cont. Def. Mt. and Permit Discovery

Counsel:
Your motion has not been denied. The purpose of allowing discovery on your motion is for the parties to exchange information. No ruling has been made on your motion because the plaintiff (and the Court) needs discovery before making a final determination as to whether to agree or disagree with your representations.

**From:** Lucas Sun [mailto:LSun@ohaganmeyer.com]
**Sent:** Wednesday, June 23, 2021 11:50 AM
**To:** LAW CALAcc (OCJ); Christine Kinnerk
**Cc:** Sean Murray; Julie Pustilnik; James Balog; Courtenay.jalics@tuckerellis.com; Jay.shultz@tuckerellis.com; Emani Evans
**Subject:** Re: Arney vs. Electrolux Home Products, Inc. et al; 2020 L 012403; CAL A- Plain. Mt. for Cont. Def. Mt. and Permit Discovery

---

**External Message Disclaimer**
This message originated from an external source. Please use proper judgment and caution when opening attachments, clicking links, or responding to this email.

---

Dear Judge O'Hara.

I just wanted to clarify an issue that I raised in my Motion to Dismiss about the successor liability theory that Plaintiff is seeking discovery on.

We have a Federal Bankruptcy order that specifically finds that there is "No successor or other derivative liability." Is my understanding correct that we are to disregard the legal findings of the Federal Bankruptcy Court? (relevant portion attached).

M.    <u>No Successor or Other Derivative Liability</u>.    The sale and transfer of the

Acquired Assets of the Debtors to the Buyer, including the assumption by the Debtors and

assignment, transfer and/or sale to the Buyer of the Assigned Agreements, will not subject the

Buyer or ESL to any liability (including any successor liability) under any laws, including any

bulk-transfer laws, or any theory of successor or transferee liability, antitrust, environmental,

product line, *de facto* merger or substantial continuity or similar theories, with respect to the

operation of the Debtors' business prior to the Closing, and for each Assigned Agreement, the

applicable Assumption Effective Date, except that, upon the Closing or such other date as specified

in the Asset Purchase Agreement, the Buyer shall become liable for the applicable Assumed

Liabilities.    The Buyer: (i) is not, and shall not be considered or deemed a mere continuation of,

---

[4]    The "<u>Final Junior DIP Order</u>" shall mean the *Final Junior DIP Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing and (B) Grant Secured Priming Liens and Superpriority Administrative Expense Claims; (II) Modifying the Automatic Stay; and (III) Granting Related Relief* (Docket No. 1436).

[5]    The "<u>Junior DIP Secured Obligations</u>" shall have the meaning ascribed to it in the Final Junior DIP Order.

[6]    As such term is defined in the *Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York* (Docket No. 3).

11

or successor to, the Debtors in any respect; (ii) has not, *de facto* or otherwise, merged with or into

the Debtors; and (iii) is not a continuation or substantial continuation, and is not holding itself out

as a mere continuation, of any of the Debtors or their respective estates, businesses or operations,

or any enterprise of the Debtors and there is no continuity of enterprise between the Debtors and

the Buyer.    Accordingly, the Buyer is not and shall not be deemed a successor to the Debtors or

their respective estates as a result of the consummation of the transactions contemplated by the

Asset Purchase Agreement, and except with respect to any Assumed Liabilities or as otherwise set

forth in the Asset Purchase Agreement, Buyer's acquisition of the Acquired Assets from the

Debtors shall be free and clear of any "successor liability" claims of any nature whatsoever.    Buyer

would not purchase the Acquired Assets but for the protections against any claims based upon

Lucas Sun
ASSOCIATE ATTORNEY

One E Wacker Dr. | Suite 3400 | Chicago | IL | 60601
DIRECT 312.422.6154 | CELL 630.234.4645



Alexandria, VA • Boston • Charlotte • Chicago • Detroit • Los Angeles • Orange County, CA
Philadelphia • Richmond • San Francisco • Washington D.C. • Wilmington, DE

---

**From:** LAW CALAcc (OCJ) <Law.Calacc@cookcountyil.gov>
**Sent:** Wednesday, June 23, 2021 11:37 AM
**To:** Lucas Sun <LSun@ohaganmeyer.com>; Christine Kinnerk <ckinnerk@tpmblegal.com>
**Cc:** Sean Murray <smurray@tpmblegal.com>; Julie Pustilnik <jpustilnik@tpmblegal.com>; James Balog
<JBalog@ohaganmeyer.com>; Courtenay.jalics@tuckerellis.com <Courtenay.jalics@tuckerellis.com>;
Jay.shultz@tuckerellis.com <Jay.shultz@tuckerellis.com>; Emani Evans <EEvans@ohaganmeyer.com>
**Subject:** [EXTERNAL] RE: Arney vs. Electrolux Home Products, Inc. et al; 2020 L 012403; CAL A- Plain. Mt. for Cont. Def.
Mt. and Permit Discovery

Apologies for the confusion. The Court has considered the objections raised. Over the defense's objection,
the order previously entered stands and the motion is held in abeyance pending discovery. 14 days to
issue discovery.

---

**From:** Lucas Sun [mailto:LSun@ohaganmeyer.com]
**Sent:** Wednesday, June 23, 2021 11:24 AM
**To:** LAW CALAcc (OCJ); Christine Kinnerk
**Cc:** Sean Murray; Julie Pustilnik; James Balog; Courtenay.jalics@tuckerellis.com; Jay.shultz@tuckerellis.com; Emani Evans
**Subject:** Re: Arney vs. Electrolux Home Products, Inc. et al; 2020 L 012403; CAL A- Plain. Mt. for Cont. Def. Mt. and
Permit Discovery

---

**External Message Disclaimer**
This message originated from an external source. Please use proper judgment and caution when opening
attachments, clicking links, or responding to this email.

---

Judge O'Hara

I just sent a Response to this Motion. My understanding was that the motion was "presented" at 10 a.m. and we
would have an opportunity to voice any objections/request a Response afterwards/prior to entry of the Order?

Lucas Sun
ASSOCIATE ATTORNEY

One E Wacker Dr. | Suite 3400 | Chicago | IL | 60601
DIRECT 312.422.6154 | CELL 630.234.4645



Alexandria, VA • Boston • Charlotte • Chicago • Detroit • Los Angeles • Orange County, CA
Philadelphia • Richmond • San Francisco • Washington D.C. • Wilmington, DE

**From:** LAW CALAcc (OCJ) <Law.Calacc@cookcountyil.gov>
**Sent:** Wednesday, June 23, 2021 11:19 AM
**To:** Christine Kinnerk <ckinnerk@tpmblegal.com>
**Cc:** Sean Murray <smurray@tpmblegal.com>; Julie Pustilnik <jpustilnik@tpmblegal.com>; James Balog <JBalog@ohaganmeyer.com>; Lucas Sun <LSun@ohaganmeyer.com>; eevans@ohaganmeyer.com <eevans@ohaganmeyer.com>; Courtenay.jalics@tuckerellis.com <Courtenay.jalics@tuckerellis.com>; Jay.shultz@tuckerellis.com <Jay.shultz@tuckerellis.com>
**Subject:** [EXTERNAL] Re: Arney vs. Electrolux Home Products, Inc. et al; 2020 L 012403; CAL A- Plain. Mt. for Cont. Def. Mt. and Permit Discovery

ORDER ATTACHED

---

**From:** Christine Kinnerk <ckinnerk@tpmblegal.com>
**Sent:** Wednesday, June 23, 2021 10:00 AM
**To:** LAW CALAcc (OCJ) <Law.Calacc@cookcountyil.gov>
**Cc:** Sean Murray <smurray@tpmblegal.com>; Julie Pustilnik <jpustilnik@tpmblegal.com>; jbalog@ohaganmeyer.com <jbalog@ohaganmeyer.com>; LSun@ohaganmeyer.com <LSun@ohaganmeyer.com>; eevans@ohaganmeyer.com <eevans@ohaganmeyer.com>; Courtenay.jalics@tuckerellis.com <Courtenay.jalics@tuckerellis.com>; Jay.shultz@tuckerellis.com <Jay.shultz@tuckerellis.com>
**Subject:** RE: Arney vs. Electrolux Home Products, Inc. et al; 2020 L 012403; CAL A- Plain. Mt. for Cont. Def. Mt. and Permit Discovery

---

### External Message Disclaimer
This message originated from an external source. Please use proper judgment and caution when opening attachments, clicking links, or responding to this email.

Dear Judge O'Hara,

Attached please find Plaintiff's Motion for Continuance of Defendant's Motion and Permit Discovery which we respectfully request to be entered in the above matter. All parties have received proper notice and are cc'd on this email.

Thank you,

Christine Kinnerk
Assistant to Sean P. Murray
**Taxman, Pollock, Murray & Bekkerman, LLC**
225 West Wacker Drive
Suite 1650
Chicago, IL  60606
Main:  (312) 586-1700
Direct: (312)586-1719
Fax:  (312) 586-1701

**From:** Christine Kinnerk
**Sent:** Friday, April 30, 2021 8:55 AM

**To:** 'LAW.CALAcc@cookcountyil.gov' <LAW.CALAcc@cookcountyil.gov>
**Cc:** Sean Murray <smurray@tpmblegal.com>; Julie Pustilnik <jpustilnik@tpmblegal.com>;
'Courtenay.jalics@tuckerellis.com' <Courtenay.jalics@tuckerellis.com>; 'Jay.shultz@tuckerellis.com'
<Jay.shultz@tuckerellis.com>; 'jbalog@ohaganmeyer.com' <jbalog@ohaganmeyer.com>; 'LSun@ohaganmeyer.com'
<LSun@ohaganmeyer.com>; 'eevans@ohaganmeyer.com' <eevans@ohaganmeyer.com>
**Subject:** RE: Arney vs. Electrolux Home Products, Inc. et al; 2020 L 012403; CAL A- Plaintiff's Rt. Mt. for Entry of HIPAA
Qualified Protective Order

Dear Judge O'Hara,

Attached please find Plaintiff's Routine Motion for Entry of HIPAA Qualified Protective Order which we
respectfully request to be entered in the above matter. All parties have received proper notice and are cc'd on
this email.

Thank you,

Christine Kinnerk
Assistant to Sean P. Murray
**Taxman, Pollock, Murray & Bekkerman, LLC**
225 West Wacker Drive
Suite 1650
Chicago, IL  60606
Main:  (312) 586-1700
Direct: (312)586-1719
Fax:  (312) 586-1701

---

**From:** Christine Kinnerk
**Sent:** Tuesday, January 5, 2021 9:25 AM
**To:** LAW.CALAcc@cookcountyil.gov
**Cc:** Sean Murray <smurray@tpmblegal.com>; Julie Pustilnik <jpustilnik@tpmblegal.com>
**Subject:** Arney vs. Electrolux Home Products, Inc. et al; 2020 L 012403; CAL A; Plain. Mt. to Vol Dismiss Defendant

Dear Judge O'Hara,

Attached please find Plaintiff's Routine Motion to Voluntary Dismiss Defendant Sears, Roebuck & Company
and Order which we respectfully request to be entered in the above matter. No appearances have been filed to
date. Please let me know if you need anything further.

**\*\*PLEASE NOTE OUR FIRM'S NEW SUITE NUMBER\***

Thank you,

Christine Kinnerk
Assistant to Sean P. Murray
**Taxman, Pollock, Murray & Bekkerman, LLC**

225 West Wacker Drive
Suite 1650
Chicago, IL  60606
Main:  (312) 586-1700
Direct: (312)586-1719
Fax:  (312) 586-1701

**<u>EXHIBIT G</u>**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| DIANA M. ARNEY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2020 L 012403 |
| | ) | |
| v. | ) | CAL A |
| | ) | |
| ELECTROLUX HOME PRODUCTS, INC., and | ) | |
| TRANSFORM SR BRANDS LLC, Individually | ) | |
| and d/b/a SEARS, | ) | |
| | ) | |
| Defendants. | ) | |

### INTERROGATORIES RELATED TO DEFENDANT'S MOTION TO DISMISS DIRECTED TO DEFENDANT, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS

TO:    James P. Balog, Esq
       Lucas Sun
       O'HAGEN MEYER, LLC
       One East Wacker Drive, Suite 3400
       Chicago, Illinois 60601
       jbalog@ohagenmeyer.com
       lsun@ohagenmeyer.com
       [Attorneys for Transform SR Brands LLC]

CC:    Courtenay Youngblood Jalics
       James R. Shultz
       TUCKER ELLIS LLP
       233 South Wacker Drive, Suite 6950
       Chicago, Illinois 60606
       Courtenay.jalics@tuckerellis.com
       Jay.shultz@tuckerellis.com
       [Attorneys for Electrolux Home Products, Inc.]

Sean P. Murray
Julie L. Pustilnik
**TAXMAN, POLLOCK, MURRAY & BEKKERMAN, LLC**
225 W. Wacker, Suite 1650
Chicago, IL  60606
312-586-1700
smurray@tpmblegal.com
jpustilnik@tpmblegal.com

NOW COMES the Plaintiff, DIANA M. ARNEY, by her attorneys, TAXMAN, POLLOCK, MURRAY & BEKKERMAN LLC, and pursuant to Supreme Court Rule 213, requests the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, to answer, under oath, the following Interrogatories related to Defendant's Motion to Dismiss within twenty-eight (28) days:

1.    Please state the full name, business address, and job title of the person answering these interrogatories, and, if different, state the full name, business address, and job title of the person signing these Interrogatory Answers.

**ANSWER:**

2.    Please identify each and every member, officer, director, and owner of Transform SR Brands LLC from 2019 to the present, and for each individual identified, state their title.

**ANSWER:**

3.    Please identify each and every member, officer, director, and owner of Transform Holdco LLC from 2018 to the present, and for each individual identified, state their title.

**ANSWER:**

4.    Please identify each and every member, officer, director, and owner of Sears, Roebuck and Co. in 2017 and 2018, and for each individual identified, state their title.

**ANSWER:**

5.    Please identify each and every shareholder and/or stockholder of Transform SR Brands LLC from 2019 to the present.

**ANSWER:**

6.    Please identify each and every shareholder and/or stockholder of Transform Holdco LLC from 2018 to the present.

**ANSWER:**

7.    Please identify each and every shareholder and/or stockholder of Sears, Roebuck and Co. in 2017 and 2018.

**ANSWER:**

8.    Please define the business operations of Transform SR Brands LLC.

**ANSWER:**

9.    Please define the business operations of Sears, Roebuck and Co.

**ANSWER:**

10.    Please identify each and every Transform SR Brands LLC location.

**ANSWER:**

11.    Please identify each and every Sears, Roebuck and Co. location in 2017 and 2018.

**ANSWER:**

12.    Please identify the name, address, and title of each and every of Sears, Roebuck and Co. employee that remained employed by Transform Holdco LLC or Transform SR Brands LLC following the bankruptcy filing.

**ANSWER:**

13.    Please identify the address and manager of each and every Sears, Roebuck and Co. store that remained open following the bankruptcy filing.

**ANSWER:**

14.    Please identify the address and manager of each and every Sears, Roebuck and Co. store that is now owned, operated, or managed by Transform Holdco LLC or Transform SR Brands LLC.

**ANSWER:**

15.    Please identify the type of business in which Transform SR Brands LLC conducts.

**ANSWER:**

16.    Please identify the type of business in which Transform Holdco LLC conducts.

**ANSWER:**

17.    Please identify the type of business in which Sears, Roebuck and Co. conducted.

**ANSWER:**

18.    Please identify each and every Transform SR Brands LLC supplier.

**ANSWER:**

      19.    Please identify each and every Sears, Roebuck and Co. supplier.

**ANSWER:**

      20.    Please identify each and every manager Transform SR Brands LLC from 2019 to the present.

**ANSWER:**

      21.    Please identify each and every manager of Transform Holdco LLC from 2018 to the present.

**ANSWER:**

      22.    Please identify each and every manager of Sears, Roebuck and Co. in 2017 and 2018.

**ANSWER:**

_____
Attorneys for Plaintiff


Sean P. Murray
Julie L. Pustilnik
**TAXMAN, POLLOCK, MURRAY & BEKKERMAN, LLC**
225 W. Wacker, Suite 1650
Chicago, IL  60606
312-586-1700
smurray@tpmblegal.com
jpustilnik@tpmblegal.com

**EXHIBIT H**

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | | |
|---|---|---|
| DIANA M. ARNEY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2020 L 012403 |
| | ) | |
| v. | ) | CAL A |
| | ) | |
| ELECTROLUX HOME PRODUCTS, INC., and | ) | |
| TRANSFORM SR BRANDS LLC, Individually | ) | |
| and d/b/a SEARS, | ) | |
| | ) | |
| Defendants. | ) | |

**REQUEST FOR PRODUCTION RELATED TO DEFENDANT'S MOTION TO DISMISS**
**DIRECTED TO DEFENDANT, TRANSFORM SR BRANDS LLC,**
**Individually and d/b/a SEARS**

TO:    James P. Balog, Esq
       Lucas Sun
       O'HAGEN MEYER, LLC
       One East Wacker Drive, Suite 3400
       Chicago, Illinois 60601
       jbalog@ohagenmeyer.com
       lsun@ohagenmeyer.com
       [Attorneys for Transform SR Brands LLC]

CC:    Courtenay Youngblood Jalics
       James R. Shultz
       TUCKER ELLIS LLP
       233 South Wacker Drive, Suite 6950
       Chicago, Illinois 60606
       Courtenay.jalics@tuckerellis.com
       Jay.shultz@tuckerellis.com
       [Attorneys for Electrolux Home Products, Inc.]

Sean P. Murray
Julie L. Pustilnik
**TAXMAN, POLLOCK, MURRAY & BEKKERMAN, LLC**
225 W. Wacker, Suite 1650
Chicago, IL  60606
312-586-1700
smurray@tpmblegal.com
jpustilnik@tpmblegal.com

1

NOW COMES the Plaintiff, DIANA M. ARNEY, by her attorneys, TAXMAN, POLLOCK, MURRAY & BEKKERMAN LLC, and propounds the following Request to Produce related to Defendant's Motion to Dismiss to be answered under oath by the Defendant, TRANSFORM SR BRANDS LLC, Individually and d/b/a SEARS, within 28 days:

1.  Any and all organizational charts of Transform SR Brands LLC from 2019 to the present.

**RESPONSE:**

2.  Any and all organizational charts of Transform Holdco LLC from 2018 to the present.

**RESPONSE:**

3.  Any and all organizational charts of Sears, Roebuck and Co. from 2017 and 2018.

**RESPONSE:**

4.  Any and all Articles of Incorporation of Transform SR Brands LLC from 2019 to the present.

**RESPONSE:**

5.  Any and all Articles of Incorporation of Transform Holdco LLC from 2018 to the present.

**RESPONSE:**

6.  Any and all Articles of Incorporation of Sears, Roebuck and Co. from 2017 and 2018.

**RESPONSE:**

7.  Any and all origination documents of Transform SR Brands LLC from 2019 to the present.

**RESPONSE:**

8.  Any and all origination documents of Transform Holdco LLC from 2018 to the present.

**RESPONSE:**

9.  Any and all origination documents of Sears, Roebuck and Co. from 2017 and 2018.

10. Any and all Annual Reports of Transform SR Brands LLC from 2019 to the present.

**RESPONSE:**

11. Any and all Annual Reports of Transform Holdco LLC from 2018 to the present.

**RESPONSE:**

12. Any and all Annual Reports of Sears, Roebuck and Co. in 2017 and 2018.

**RESPONSE:**

13. Any and all documents reflecting the corporate structure of Transform SR Brands LLC, including documents that identify any owners or subsidiaries from 2019 to the present.

**RESPONSE:**

14. Any and all documents reflecting the corporate structure of Transform Holdco LLC, including documents that identify any owners or subsidiaries from 2018 to the present.

**RESPONSE:**

15. Any and all documents reflecting the corporate structure of Sears, Roebuck and Co., including documents that identify any owners or subsidiaries from 2017 and 2018.

**RESPONSE:**

16. Any and all original and current Operating Agreements or other governing documents for Transform SR Brands LLC.

**RESPONSE:**

17. Any and all original and current Operating Agreements or other governing documents for Transform Holdco LLC.

**RESPONSE:**

18. Any and all Operating Agreements or other governing documents for Sears, Roebuck and Co.

**RESPONSE:**

19. Any and all asset purchase agreements between Transform SR Brands LLC, Transform Holdco LLC, and Sears, Roebuck and Co.

**RESPONSE:**

20. Any and all stock purchase agreements between Transform SR Brands LLC, Transform Holdco LLC, and Sears, Roebuck and Co.

**RESPONSE:**

21. Any and all documents that demonstrate how Transform SR Brands LLC and/or Transform Holdco LLC became successor to Sears, Roebuck and Co.

**RESPONSE:**

22. Any and all written agreements between Transform SR Brands LLC, Transform Holdco LLC, and Sears, Roebuck and Co.

**RESPONSE:**

23. Any and all communications relating to Transform SR Brands LLC and/or Transform Holdco LLC becoming successor to Sears, Roebuck and Co.

**RESPONSE:**

You are hereby requested to seasonably supplement any response to the extent of documents, objects or tangible things which subsequently come to the producing party's possession or control or become known to that party.

It is further requested that you or your attorneys, in compliance with this Request to Produce, shall furnish an Affidavit stating whether the production is complete in accordance with this Request to Produce and provided in Illinois Supreme Court Rule 214.

_____
Attorneys for Plaintiff

Sean P. Murray
Julie L. Pustilnik
**TAXMAN, POLLOCK, MURRAY & BEKKERMAN, LLC**
225 W. Wacker, Suite 1650
Chicago, IL  60606
312-586-1700
smurray@tpmblegal.com
jpustilnik@tpmblegal.com

4