Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 18-23538-rdd

4   Adv. Case No. 20-06982-rdd

5   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6   In the Matter of:

7

8   SEARS HOLDINGS CORPORATION,

9

10          Debtor.

11  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12  KMART HOLDING CORPORATION et al.,

13              Plaintiffs,

14          v.

15  WINIADAEWOO ELECTRONICS AMERICA INC.,

16              Defendant.

17  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

18

19              United States Bankruptcy Court

20              300 Quarropas Street, Room 248

21              White Plains, NY 10601

22

23              July 27, 2021

24              10:30 AM

25

1    B E F O R E :

2    HON ROBERT D. DRAIN

3    U.S. BANKRUPTCY JUDGE

4

5    ECRO: JUSTIN WALKER

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1   HEARING re Debtors' Update on Progress Toward Effective Date

2

3   HEARING re Adversary proceeding: 20-06982-rdd Kmart Holding

4   Corporation et al v. Winiadaewoo Electronics America Inc.

5   Motion to Compel Document Production and Interrogatory

6   Responses filed by Perry R Clark on behalf ofWiniadaewoo

7   Electronics America Inc. (ECF #13)

8   Affidavit: Declaration of Perry Clark in Support of Motion

9   to Compel (related document(s) 13) Filed by Perry R Clark on

10   behalf of Winiadaewoo Electronics America Inc ..

11   (Attachments: # 1 Exhibit Debtors Kmart's Interrogatory

12   Responses# 2 Exhibit Debtor Sears Interrogatory Responses# 3

13   Exhibit Debtor Kmart's Responses to Document Requests# 4

14   Exhibit Debtor Sears' Responses to Document Requests# 5

15   Exhibit Privilege Log# 6 Exhibit Letter from Debtors'

16   Counsel to Court)(Clark, Perry) (ECF #14)

17

18   HEARING re Adversary proceeding: 20-06982-rdd Kmart Holding

19   Corporation et al v. Winiadaewoo Electronics America Inc.

20   Plaintiffs' Objection to Winiadaewoo Electronics America,

21   Inc.'s Motion to Compel (related document(s) 13) filed by

22   Steven J. Reisman on behalf of Kmart Holding

23   Corporation, Sears, Roebuck and Co. (ECF # 16)

24

25

Page 4

1    HEARING re Adversary proceeding: 20-06982-rdd Kmart Holding

2    Corporation et al v. Winiadaewoo Electronics America Inc.

3    Reply In Support of Motion to Compel Document Production and

4    Interrogatory Responses (related document(s) 13) filed by

5    Perry R Clark on behalf of Winiadaewoo Electronics America

6    Inc .. (Clark, Perry) (ECF # 17)

7

8    HEARING re Adversary proceeding: 20-06982-rdd Kmart Holding

9    Corporation et al v. Winiadaewoo Electronics America Inc.

10   Letter re Discovery Dispute Filed by Perry R Clark on behalf

11   of Winiadaewoo Electronics America Inc. (ECF # 18)

12

13   HEARING re Adversary proceeding: 20-06982-rdd Kmart Holding

14   Corporation et al v. Winiadaewoo Electronics America Inc.

15   Letter in Response to Defendant's letter dated May 21, 2021

16   (related document(s)18) Filed by Steven J. Reisman on behalf

17   of Kmart Holding Corporation, Sears, Roebuck and Co. (ECF

18   #20)

19

20

21

22

23

24

25

1   HEARING re Motion to Compel /Motion to Enforce Order (I)

2   Approving the Asset Purchase Agreement Among Sellers and

3   Buyer, (II) Authorizing the Sale of Certain of the Debtors

4   Assets Free and Clear of Liens, Claims, Interests and

5   Encumbrances, (III) Authorizing the Assumption and

6   Assignment of Certain Executory Contracts, and Leases in

7   Connection Therewith and (IV) Granting Related Relief (ECF

8   #9647)

9

10  HEARING re Declaration of Kimberly Black in Support of

11  Defendant's Motion to Enforce Order

12  (related to #9647) (ECF #9648)

13

14  HEARING re Certificate of No Objection Pursuant to LR 9075-2

15  Regarding Order Enforcing the Order (I) Approving the Asset

16  Purchase Agreement Among Sellers and Buyers, (II)

17  Authorizing the Sale of Certain of the Debtors' Assets Free

18  and Clear of Liens, Claims, Interests and Encumbrances,

19  (III) Authorizing the Assumption and Assignment of Certain

20  Executory Contracts, and Leases in Connection Therewith and

21  (IV) Granting Related Relief (related document(s)9647, 9648)

22  Filed by Luke A Barefoot on behalf of Transform SR Brands

23  LLC. (ECF #9673)

24

25

1    HEARING re Notice of Hearing on Objection and Motion for

2    Extension of Time to File an Appeal filed by James Edmond

3    Smith (ECF #9641)

4

5    HEARING re Debtors' Objection to Motion to Extend Time to

6    Appeal (related document(s)9641) filed by Garrett A. Fail on

7    behalf of Sears Holdings Corporation. (ECF #9664)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 7

```
 1   A P P E A R A N C E S :

 2

 3   WEIL, GOTSHAL & MANGES LLP

 4         Attorneys for the Debtors

 5         767 Fifth Avenue

 6         New York, NY 10153

 7

 8   BY:  GARRETT A. FAIL

 9

10   CLEARY GOTTLIEB STEEN & HAMILTON LLP

11         Attorneys for Transform Holdco LLC

12         One Liberty Plaza

13         New York, NY 10006

14

15   BY:  LUKE BAREFOOT

16

17   QUINN EMANUEL URQUHART SULLIVAN, LLP

18         Attorneys for Gary Polkowitz

19         1300 I Street, NW, Suite 900

20         Washington, DC 20005

21

22   BY:  ERIK L. MORABITO

23

24   JAMES E. SMITH, Pro Se

25
```

 1 │ ALSO PRESENT TELEPHONICALLY:

 2 │

 3 │ TERENCE BANICH

 4 │ SARA BRAUNER

 5 │ JENNIFER BROOKS CROZIER

 6 │ TOBEY DALUZ

 7 │ LARI DIERKS

 8 │ PAUL HARNER

 9 │ DOMINIC LITZ

10 │ JACQUELINE MARCUS

11 │ VINCENT MARRIOTT

12 │ BRITTANY NELSON

13 │ GARY POLKOWITZ

14 │ KELSEY ROBINS

15 │ JOSEPH E. SARACHEK

16 │ ALEXANDER TIKTIN

17 │ DAVID H. WANDER

18 │ PHILIP WEINTRAUB

19 │ DAVID ZENSKY

20 │ PERRY R. CLARK

21 │ STEVEN J. REISMAN

22 │ PHILLIP D. ANKER

23 │ NATAN BANE

24 │ KIMBERLY BLACK

25 │ KEVIN ECKHARDT

Page 9

1   UDAY GORREPATI

2   JACK HARRIS

3   CHLOE A. JASPER

4   JENNIFER S. KOOCKOGEY-LAJOIE

5   LAYA MAHESHWARI

6   MITCHELL J. MCVEIGH

7   JONATHAN H. MILLER

8   BEN PAULL

9   ALLYSON PIERCE

10  JAMES R. SHULTZ

11  MATTHEW SKRZYNSKI

12  CHRISTOPHER STAUBLE

13  JOSEPH SZYDLO

14  UDAY GORREPATI

15  JAMES SMITH

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              THE COURT:  Okay, good morning.  This is Judge

3    Drain.  We're here In re Sears Holdings Corporation, et al.

4    I have the amended agenda for today's omnibus hearing and

5    I'm happy to go down that agenda in order as it's stated.

6              So I think the first matter on the agenda is the

7    status conference, including the Debtors' update on progress

8    toward the effective date for the confirmed Chapter 11 plan.

9    Related to that filed this morning was a written status

10   update by the Debtors dated today, which I've had a brief

11   opportunity to review.

12             MR. FAIL:  Thank you, Your Honor.  You cut out at

13   least on my end and I apologize.  This is Garrett Fail from

14   Weil Gotshal.  Are you able to hear me?

15             THE COURT:  Yes.

16             MR. FAIL:  Excellent.  Are you able to see me?

17             THE COURT:  Yes.

18             MR. FAIL:  Thank you.  As one matter of

19   housekeeping before jump into the status conference, which

20   is listed as item number one on the agenda, which we filed

21   at Docket 9677.

22             If I could turn the podium over to Mr. Barefoot

23   from Cleary, there's one item that I think we can take off

24   the agenda for today.

25             THE COURT:  Okay.

1          MR. FAIL:  It might be efficient.  Thank you,

2     Judge.

3          MR. BAREFOOT:  Thank you, Mr. Fail.  Good morning,

4     Your Honor.

5          THE COURT:  Good morning.

6          MR. BAREFOOT:  Your Honor, Luke Barefoot from

7     Cleary Gottlieb for Transform Holdco and its affiliates.  I

8     just briefly wanted to item number three on the agenda,

9     which is Docket item 9647, Transform's motion to enforce the

10    sale order.

11         THE COURT:  Right.

12         MR. BAREFOOT:  And with Your Honor's permission,

13    I'd just like to propose a path forward on that item.

14         THE COURT:  You can go ahead, Mr. Barefoot.  I'm

15    sorry.  Who is speaking?

16         MR. SMITH:  James Edmond Smith, and I saw that

17    motion that they filed and they're asking for the budget

18    that is requested on my request, which --

19         THE COURT:  Mr. Smith, you're speaking on a

20    different motion.  The matter that Mr. Barefoot is

21    addressing doesn't pertain to you.  It pertains to a

22    different matter.

23         You can go ahead, Mr. Barefoot.

24         MR. SMITH:  Okay, I apologize.  Just the amount

25    they were asking for --

Page 12

1              THE COURT:  Mr. Smith, I will cut you off if you

2      continue to interrupt.  The matter that you are addressing

3      that involves you is not the matter we're discussing now.

4      It will come up as item five on the agenda.  This is item

5      three.

6              MR. SMITH:  Thank you.

7              THE COURT:  You can go ahead, Mr. Barefoot.

8              MR. BAREFOOT:  I apologize, Your Honor.  Pursuant

9      to communications with Your Honor's chambers yesterday

10     following the filing of our certificate of no objection, we

11     are in the process of seeking confirmation that counsel for

12     the plaintiff in the Illinois state court action that's at

13     issue in the motion to enforce is authorized and was

14     authorized to receive service of the motion on behalf of the

15     plaintiff.  And we sought that confirmation, but as of this

16     morning, we do not yet have it.

17              So what I would suggest, subject to Your Honor's

18     views, is that we adjourn the motion to the next omnibus

19     hearing and pursue in parallel two options.  First,

20     Transform would continue to seek confirmation that

21     plaintiff's counsel was authorized to receive service of the

22     motion to enforce.  And if we receive that, we would file

23     evidence of that confirmation with an amended certificate of

24     no objection.

25              Second, in the alternative, we would re-notice the

Page 13

1   motion for the next omnibus hearing and file an affidavit of

2   service reflecting service of the motion and the amended

3   notice of hearing on plaintiff at their last known address

4   individually.

5              THE COURT:  Right, that's fine.  That procedure is

6   fine.  As you noted, my concern was that the certificate of

7   service showed just service on counsel in the state court

8   action and counsel had not appeared in this case and it

9   wasn't clear whether the counsel was generally authorized to

10  receive service with respect to a motion like this, so that

11  two track approach is fine.

12             MR. BAREFOOT:  Understood, Your Honor.

13             THE COURT:  And consistent with my normal

14  practice, if there are no objections and I see that amended

15  certificate of service or confirmation, then we don't need

16  to have a hearing.  You can submit the order with backup

17  materials, and in all likelihood, it'll be entered.

18             MR. BAREFOOT:  Thank you, Your Honor.  We will do

19  so.

20             THE COURT:  Okay, very well.

21             MR. BAREFOOT:  With Your Honor's permission, may I

22  be excused from the remainder of the hearing?

23             THE COURT:  Yes, sure, that's fine.

24             MR. BAREFOOT:   Thank you, Your Honor.

25             MR. FAIL:  Okay, Your Honor.  Garrett Fail, Weil

1    Gotshal for the Debtors again.

2               What I'll propose to do is walk the Court and

3    parties through a presentation that we filed on the docket

4    at ECF No. 9680.  It's an update from the last presentation

5    that we made on April 27th in accordance with the

6    confirmation order.

7               I'll start off with an update on the progress of

8    administrative, priority, and secured claims reconciliation.

9    To date, the Debtors have reconciled more than 4,443 opt-in

10   and non-opt-out and opt-out administrative claims.  That's

11   up approximately 473 from our April report.

12              The Debtors have expunged or reclassified to a

13   non-hundred cent claim approximately $2.5 billion of claims

14   asserting entitlement to administrative, priority, or

15   secured status, and we have objections pending to eliminate

16   an additional $1.1 billion of secured claims.  That's up

17   from $1.3 million in our April report.

18              We've allowed to date approximately 1,788

19   administrative claims, up 120 from our last report.

20              We're disputing currently through objections 40

21   non-opt-out claims that assert approximately $6.3 million.

22   This excludes allowed claims that we're holding

23   distributions for where there are outstanding preference

24   issues only.  The 40 is down from our April report and these

25   should be the total remaining population of opt-ins and non-

Page 15

1       opt-out claims, Your Honor.

2                   In terms of the opt-outs, the Debtors have reduced

3       their estimate as a result of objections and further

4       analysis.  We've reduced our estimate of the ultimate

5       allowed amount of those by an additional $7 million.

6                   In terms of distributions, Your Honor will recall

7       we've made two distributions to date on administrative

8       claims pursuant to the administrative consent program

9       following confirmation.  As the Court is aware and I think

10      all parties are, these are just a small fraction of

11      administrative claims that arose and that were satisfied in

12      the case.

13                  Throughout the first year in the case and

14      thereafter, I think, you know, rough estimate, you know, $1

15      -- $2 billion of claims have been paid and satisfied.  And

16      so, this is -- and what we've been talking about has been

17      the remainder of what remains unsatisfied, but it's

18      important to keep it in context of what's happened during

19      these cases.

20                  So far, post-confirmation, Judge, $43 million has

21      been distributed.  You'll notice an increase of about a

22      million dollars as a result of catchup distributions made

23      after claims had been allowed following the last

24      distribution.  We made an initial distribution in 2019 and a

25      subsequent one in 2020.

Page 16

1           The Debtors have announced and proposed a third

2    interim distribution.  They announced -- we announced that

3    the amount will be an additional $10.5 million.

4           I hear some feedback.  Can I ask parties to mute

5    their lines if they're not speaking?

6           THE COURT:  All right.  You're coming through

7    clearly here, Mr. Fail.

8           MR. FAIL:  Okay.  I appreciate it.  Thank you,

9    Judge.

10          So we're making another distribution of $10.5

11   million, you know, subject to today's hearing.  That's an

12   equivalent additional amount of 8.3 percent to outstanding

13   creditors.  It brings the total to those creditors of 37

14   percent recovery, which is approximately one-half of the

15   amount that we may owe under the admin consent program.

16   Your Honor will recall that parties are entitled to 75 or 80

17   percent of their claims.

18          The Debtors were able to make this announcement

19   after working with their restructuring committee, but

20   importantly, also with the representative for administrative

21   claims, Mr. Polkowitz, who I see on the screen, and his

22   counsel, Ms. Morabito, who I saw earlier on the screen as

23   well.  The Debtors have made the announcement and are making

24   the distribution of available cash as it became available

25   and as prescribed by the confirmation order when we reached

Page 17

1    the certain minimum conditions.  On page 3 of the deck, we

2    provide further breakdown.

3            Before I get into that, Your Honor, we filed a

4    notice of the distribution amounts that we propose to make

5    listing each of the parties that would receive an opt-in

6    distribution, a non-opt-out distribution, and the parties

7    for whom we proposed holding back reserves for disputed

8    claims.  We filed that on July 2nd, roughly 25 days ago.

9            We encouraged any party who had a question or an

10   issue to simply email the Debtors to resolve any questions.

11   We thought that that would be the most efficient way.  And

12   we're happy to announce that it was largely successful, and

13   we eliminated filings on the docket.

14           We filed a revised notice early this morning.  It

15   started out as yesterday afternoon and it went into early

16   this morning.  We made a number of changes and a number of

17   corrections to address the responses that we received,

18   including those that came in as late as midnight last night.

19   But most notably, we increased everyone's distribution

20   percentage from the 7.3 percent that we announced on July

21   2nd to 8.3 percent, and we announced that the total recovery

22   would be increased from 36.1 to 37 percent in the notice

23   that we filed yesterday.

24           So that is positive news and positive development,

25   and we thank all the parties with whom we worked, especially

Page 18

1    and including Mr. Polkowitz and his counsel, to get to where

2    we got today.  The chart on page --

3                THE COURT:  When do the Debtors anticipate making

4    that third distribution?

5                MR. FAIL:  It's simply a matter of mechanics, Your

6    Honor.  We will, following today's hearing assuming nothing

7    gets in the way, proceed to put the wheels in motion with

8    Prime Clerk to get checks mailed out and wires lined up.  We

9    said that we would start on or about July 31.  It's just

10   simply a matter of mechanics at this point.

11               THE COURT:  Okay.

12               MR. FAIL:  So on page 3, a number of things to

13   just walk through.

14               We show the number of claims that have been -- you

15   know, that will receive a distribution, and we thought it

16   important to break out the parties who have been satisfied

17   in full.  So of the 1511 claims that received distributions

18   to date, 1,067 in the top cortile of the chart, or 70

19   percent of those parties that were administrative claims on

20   the confirmation date have been satisfied in full.  They

21   received payments through the de minimis order that the

22   Court allowed us to pay in full the amounts that we were

23   required to.

24               That leaves roughly 444, only 444 remaining of

25   allowed opt-ins and allowed opt-out creditors.  The columns

Page 19

1   on the chart show the asserted amounts, the net amounts as a

2   result of setoff, the net amounts resulting from the

3   discount of the program, the amount paid, and the amount

4   remaining to be paid, including $8.6 million that we're

5   proposing to send out to creditors now.

6           We then go on to detail the count of claims that

7   have been reconciled but are being -- distributions for

8   those claims are being held subject to resolution of

9   preferences.  There's roughly 111 claims.  Money is being

10  reserved for them in a pro rata distribution, so no party is

11  prejudiced.

12          We show that there are roughly 40 disputed claims,

13  and we show the Debtors' estimate of those claims, as well

14  as the asserted amount.

15          Moving down to the opt-out of claims to be

16  reconciled.  We've made significant progress, as I detailed

17  earlier, and we show the amount in number and dollars and

18  the Debtors' estimate of those claims, so there's some work

19  to be done there.

20          And then we show that there a number where we're

21  expecting them to be withdrawn.

22          Moving down to the bottom of the chart, Judge.  We

23  show the work that needs to be done and the work that has

24  been done importantly on the priority claims.  We've made

25  significant progress.  We show the Debtors' estimate of

Page 20

1    those amounts.  We show that we have put on objections to

2    over 400 claims that asserted secured status.  We show the

3    super-priority claims that have been asserted, and we show

4    our estimate.

5            In total, the estimate of what remains to be paid

6    is $102 million.

7            Your Honor may note that -- well, I'll go on to

8    the next page and we can into detail, a little bit more

9    detail.

10           The next page shows the estimate of additional

11   funds that would be needed to satisfy all the claims that I

12   just identified, all the 111 claims.  We start with the cash

13   balance of the Debtors' estimate they'll have at the end of

14   the month.  We take out the reserves that the Debtors are

15   putting aside for future needs and claims reserves.

16           If the distribution is made at 10.5, we have just

17   above the minimum thresholds that is required to be

18   maintained, the 10.7.

19           We identify and itemize the remaining of the

20   Debtors and the Debtors' estimates of future recoveries on

21   those.  The Debtors have outperformed their estimates since

22   the last report.  So, for example, for the real estate

23   assets, sales were showing $1.6 million remaining.  Our last

24   report showed $1.3, and we're at -- you know, we've already

25   had recoveries on this.  So in total, we show that -- we

Page 21

1    show here $26.1 million of estimated cash remaining.

2            We then carry forward some numbers from the

3    previous page showing uses, and we show the $56.8 million of

4    administrative expense claims that need to be paid; that's

5    down from $70.8 million last report and our estimate of

6    priority and secured net of reserves.

7            One thing to note here is the Debtors' estimate

8    for tax claims.  We've included and we'll have detail later

9    on, we've included the full amount of tax claims here.  Our

10   previous reporting had the amount that would have been

11   required on the effective date if we had stretched it out,

12   but we thought for full disclosure and clarity, it would be

13   better to put our full estimates in here.  Net-net, we --

14           THE COURT:  I'm sorry.  I had a -- on the priority

15   and secured, the estimate seems to be 5 million lower than

16   the estimate on the earlier page, on the previous page?

17           MR. FAIL:  It's net of reserves, Your Honor.

18           THE COURT:  Okay.

19           MR. FAIL:  So there's the reserves, so it tracks--

20           THE COURT:  -- already for that.

21           MR. FAIL:  Yup.

22           THE COURT:  All right.  And these -- I just want

23   to confirm.  When you refer to secured, these are not --

24   this is not funded debt; this is tax liens or other judicial

25   liens or other types of things like that or just claim liens

1    by people who checked the box that their claim is secured?

2            MR. FAIL:  In terms of what's been asserted, it's

3    across the board in terms of what we think net liability is,

4    Judge.  There's an overlap between the relators, for

5    example, secured claim that also has a super-priority status

6    to the extent that it becomes allowed, so there's an overlap

7    and it's not all separate.  It also may include, you know,

8    some of the claims that have been asserted as secured that

9    also, you know, may be administrative because they're post-

10   petition for, let's say, consignment.

11           THE COURT:  Okay.

12           MR. FAIL:  But we've put it all together.  We've

13   put it all together here.

14           THE COURT:  All right, very well.  All right,

15   thanks.

16           MR. FAIL:  To answer your question, it's the

17   Debtors' belief that in terms of funded debt, you know, that

18   is taken care of and that shouldn't be an issue.  The

19   remaining secured is rather miscellaneous, if anything.

20           We go through additional detail of the sources of

21   what has been recovered and where we see additional

22   abilities to recover.  On page 5, we compared to

23   confirmation estimates for parties' reference so that they

24   could see our recoveries.  Excluding recoveries from

25   avoidance actions, sources increased by 4.7 compared -- $4.7

Page 23

1   million compared to our last report.  And from confirmation

2   estimates, excluding preference recoveries, there's an

3   increase of $67.4 million, so positive news on that front

4   and the sources.

5          On the next page, we detail the uses.  And again,

6   we compare not only to our last report, but also to

7   confirmation date estimates.  Our actual uses to date remain

8   below confirmation date estimates; positive news, a positive

9   report.  Our total uses remain within confirmation date

10  estimate ranges, and that's detailed here on page 6.

11         In terms of the update that we can report on,

12  post-confirmation avoidance action recoveries.  Page 7

13  highlights that approximately 60 percent of the eligible

14  preference matters have been settled in terms of the number

15  of counterparties.  That is up from 37 percent roughly in

16  our last report.

17         Settlements have resulted in the combined cash and

18  administrative claims waiver of $50.6 million.  That's up

19  over $7 million or up over 17 percent since our last report.

20         The Debtors' performance and go forward

21  projections remain consistent with our prior estimates.

22  This case does remain challenging.  The increased time

23  during the bankruptcy pre-effective date (sound glitch) or

24  expenses in the effective date period.  The Debtors believe

25  that these expenses would have been incurred in a post-

Page 24

1   effective date period had the effective date occurred

2   earlier.

3           The Court is aware of, you know, some large

4   categories of expenses, including the claims reconciliation,

5   but significant amounts and much more significant amounts

6   have been spent to monetize the assets that have already

7   been distributed, including asset sales and recoveries

8   through litigation to date.

9           The Court will recall that the Debtors have

10  distributed significant amounts of cash that were not

11  available on the confirmation date, which is why it has

12  taken three distributions -- three distribution periods to

13  collect the money.  This was not a liquid situation where

14  all we're doing is pushing a button to make a distribution.

15          The Debtors stand ready to work with the remaining

16  disputed creditors to resolve their claims.  The preference

17  teams are ready to work to resolve those aspects.  The

18  Debtors' financial advisors and other lawyers are available

19  to work on the remaining claims.  We have made significant

20  progress and look forward to making this distribution.

21          Your Honor, I know Ms. Morabito is on the line and

22  had wanted to address the Court from the perspective and on

23  behalf of the administrative claims representative.  But

24  before I turn the podium over to her, I'm happy to answer

25  any questions Your Honor may have.

Page 25

1           THE COURT:  No.  You can go ahead, Miss Morabito.

2           MS. MORABITO:  Thank you, Your Honor.  Thank you,

3    Mr. Fail.  Good morning, Your Honor.  Erika Morabito, Quinn

4    Emanuel, on behalf of Gary Polkowitz as the administrative

5    expense claims representative in this case.  Mr. Polkowitz

6    is also on Zoom today as well, Your Honor.  Can you hear me

7    okay?

8           THE COURT:  Yes, and I can see you and him also.

9           MS. MORABITO:  Thank you.  So the reason we wanted

10   to make a statement is, as Your Honor can imagine as this

11   case continues to unfold, numerous admin creditors reach out

12   to either Mr. Polkowitz or myself at least weekly, sometimes

13   daily, sometimes with questions about their own individual

14   admin claims and sometimes questions generally about when we

15   see the end of this case coming, what our view is on an

16   effective date.

17          And so, we see that many of them are participating

18   in today's hearing and thought it would be helpful for them

19   to sort of get, you know, our view of where things sit

20   today.

21          Everybody knows this plan was confirmed on October

22   15th, 2019, which is almost two years ago.  Mr. Polkowitz,

23   of course, was appointed as the administrative expense

24   claims representative about six months after that on March

25   13th.

1          As Your Honor may recall and many of the

2    administrative creditors know, I had previously represented

3    the ad hoc group of administrative creditors and worked

4    closely with the Debtors, the UCC, and of course, the

5    administrative creditors with the assistance of this Court

6    to help construct the administrative expense claims consent

7    program, which was included in the final order, as Your

8    Honor knows.

9          So between Mr. Polkowitz and myself, we obviously

10   have a lot of history with the case and the parties here.

11   And while we're not always vocal at this hearing, we are

12   certainly conscious of the fees and that's a sensitive issue

13   to us.  We have been working very closely behind the scenes

14   in this case, particularly over the past 16 months, as many

15   of the individual creditors participating today and

16   listening and those that are not know, including what Mr.

17   Fail alluded to earlier, which is pushing the Debtors really

18   to get this third interim distribution out, both

19   expeditiously, and we hope it will take place in the

20   beginning of August and certainly in a meaningful amount.

21          But while we've done our best to work

22   collaboratively with the Debtors and their professionals and

23   they have to as well, it doesn't mean that we don't share

24   some of the frustrations that have been expressed by the

25   administrative creditors in the past; we do share those.

Page 27

1     You know, I'm going to touch on a couple of them.

2              Specifically, we saw Mr. Wander's letter that was

3     filed with the Court with request to getting more advance

4     notice with respect to the financial reports.  We share that

5     concern.  You know, we think the Debtors and their

6     professionals should be able to get financial reports and

7     presentations that they intend to file in advance of an

8     omnibus hearing more than one or two days before the

9     hearing.

10             Not that we don't understand the complexity that

11    goes into those reports and the vetting process and the

12    signoff that's needed.  But, look, professionals are getting

13    paid, all professionals, and I include myself in that

14    bucket, are getting paid significant fees in this case and

15    creditors and interested parties ought to have a little more

16    time to review these reports in advance of the hearing.

17             And while the administrative expense claim

18    representative does receive the reports, it's usually only

19    three days or so before the hearing, and those are calendar

20    days, those aren't business days.  But it's just not enough

21    time given that for a status in this case for those numbers

22    to be properly diligence so that the admin creditor can also

23    weigh in and present its view to the Court with respect to

24    any of the numbers and financial reports presented by the

25    Debtor.

1            And this is particularly important in this case

2      and to Mr. Polkowitz because he is bound by a

3      confidentiality agreement.  So oftentimes when creditors

4      reach out to us, we are unable to share certain things that

5      we may know by the Debtors.  This is one of the rare

6      instances, and it's done quarterly, where the Debtors are

7      required to disclose public information, and so, everybody

8      should have an opportunity to view and vet and ask

9      questions.

10            So this is something that we are working with the

11      Debtors.  This is not to say that the Debtors have breached

12      any of its obligations.

13            I'm sorry.  I have a 12-year-old responsible for

14      two dogs going crazy.  I apologize, Your Honor.

15            THE COURT:  That's all right.

16            MS. MORABITO:  I'm sorry.  I stand and discuss,

17      Your Honor, so I'm still trying to do this with a 12-year-

18      old who has now wrangled my dog, so I apologize.

19            This is not to say that the Debtors have breached

20      any of their obligations or haven't complied, that they've

21      met the requirements.  I'm sure that they have.  But it's

22      just a point of if they can, try to suggest maybe getting

23      reports to the claims administrator hopefully within five

24      days in advance of the hearing, even if it's in draft form,

25      and trying to get what can be filed, understanding it may be

Page 29

1    subject to updating at the actual hearing.

2           But if we can get things on file at least three

3    days in advance of the hearing so people have a reasonable

4    opportunity, including the Court, to be able to review and

5    ask questions at the omnibus hearing.  I think that would go

6    a long way.

7           The second thing that we've shared frustration

8    with, and the Debtors share the frustration with as well, is

9    that, yes, it's been almost two years since the plan has

10   been confirmed and it hasn't gone effective.  We all know

11   that there's many reasons for that and I don't need to get

12   into those.

13          But I do think it's important to note that the

14   administrative expense claims representative with the

15   Debtors, with the committee, and with other professionals

16   and few stakeholders in this case are continuing to work

17   hard to come up with a construct that would get this case to

18   an effective date sooner than waiting for the proceeds from

19   the Transform litigation to come in.

20          I think we've all realized that waiting for that

21   to happen could delay the effective date in this case

22   potentially for years.

23          We are also not resting on the third interim

24   distribution.  I think it's great progress, and we think

25   it's a significant amount.  As Mr. Fail alluded to, it is

1   now 50 percent of what certain people agreed to on the opt-

2   in.  But given the amount of administrative costs to the

3   estate continue to accrue, including professional fees, we

4   are working on a construct.  We've presented a construct to

5   the Debtors.  We have calls set up with them this week in

6   more detail.  I obviously can't get into that anymore today.

7           But the point is, and this is important for

8   administrative creditors here, we are working to get this

9   plan to go effective as expeditiously as possible.  Nobody,

10  not us, not the Debtors, and I'm sure not the Court are

11  content with letting this case linger any longer than it has

12  to.

13          To that end, Your Honor, we have had calls with

14  counsel to Transform, with litigation counsel at Akin, with

15  Mr. Brauner as the representative for the unsecured

16  creditors' committee, the fee examiner, representatives from

17  (indiscernible) for the structuring committee, and numerous

18  administrative creditors.

19          It's clear from these meetings and calls that we

20  all have to work together to get this to at least go

21  effective.  The good news is that there's no question that

22  we all share the common goal and we're committed to trying

23  to reach it.  That said, we know the task at hand will not

24  be an easy one.

25          And to complicate things further, Your Honor,

Page 31

1    there are several administrative creditors that have their

2    own individual claims, and they have reached out to Mr.

3    Polkowitz and myself asking for assistance with respect to a

4    resolution of those claims.

5             The difficulty that the admin expense

6    representative has is his duty is to the admin creditors as

7    a constituent, as a group, not an individual admin creditor.

8    What Mr. Polkowitz cares about is the numerator and the

9    denominator.  We want as much money to come into the estate

10   so that we can get the largest distribution so we can this

11   plan to go effective.

12            Unfortunately, that means that in some instances,

13   there are inherent conflicts between an individual admin

14   creditor's claim where, for example, there could be a

15   preference being sought against them, which of course, would

16   then reduce the amount of the claims if the Debtors were

17   successful on that and would increase the amount of the

18   distribution to the other administrative creditors, and that

19   obviously would be something that would be in the best

20   interest of all the administrative creditors.

21            Notwithstanding that, we have done our best to

22   serve as a conduit.  So to the extent that admin creditors

23   have reached out to us on a one-off basis and asked for

24   assistance, the assistance that we have been able to provide

25   is to make sure and request the Debtors and asking that and

Page 32

1    others at least are in communications with those admin

2    creditors who have not yet been able to reconcile their

3    claims, and I think that process has worked.

4            I appreciate the Court's time in letting us share

5    our perspective of where things stand.  Both myself and Mr.

6    Polkowitz are happy to answer any questions if the Court has

7    any.

8            THE COURT:  Okay.  I don't.  I think all your

9    statements are very sensible and I agree with the approach

10   that you and your client have taken as you've laid it out.

11           I did have, before this hearing, Mr. Wander's

12   letter that also raised the issue you had raised about

13   whether the report that Mr. Fail went through at the start

14   of this hearing could not come out earlier than on a

15   quarterly basis.  Of course, the confirmation order in

16   Paragraph 14 says that the update shall be no less

17   frequently than on a quarterly basis and the Debtors have

18   lived up to that.

19           But I think that the advance notice that you

20   requested, particularly given the role that Mr. Polkowitz

21   plays and the confidentiality constraints he's under, makes

22   sense, so that if it can go out a week before the quarter, I

23   think that would be constructive here.

24           MR. FAIL:  Your Honor, if I may just respond

25   briefly from the Debtors' perspective on how we've been

Page 33

1    performing, you know.  We also read Mr. Wander's letter.  It

2    is devoid of facts, right?  So what isn't included is the

3    fact that we filed our quarterly operating reports since

4    confirmation.

5            THE COURT:  No, it's clear, and Miss Morabita made

6    it clear and it's clear --

7            MR. FAIL:  No, I know Ms. Morabita, I know.

8            THE COURT:  -- no matter what that you haven't

9    done anything wrong.  You've complied completely with the

10   plan and the order.  I'm just suggesting that subject to

11   update, which you can do in the week before the omnibus

12   hearing, it makes sense if you can do it to get the report

13   out a week beforehand.

14           MR. FAIL:  We're happy to, Judge.  I mean, in the

15   old days, we would be bringing printouts to Court with us,

16   and this would be a supplement to my oral presentation.

17           THE COURT:  Right.

18           MR. FAIL:  We're in the world of electronic Zooms

19   and we thought it was already something superfluous or extra

20   that we were doing by providing this report.

21           THE COURT:  I think --

22           MR. FAIL:  To the extent that we can, we'll put it

23   out there, we'll put it out there earlier.  We also haven't

24   been inviting, you know, Q&A from the creditor, individual

25   creditor population, at the omnibus hearings.

Page 34

1          THE COURT:  Right.

2          MR. FAIL:  So there's a balance.

3          THE COURT:  I think that's fine.  I'm saying this

4    in part because of the nature of the administrative expense

5    creditor body.  A number of them are sophisticated and

6    understand the Chapter 11 process and/or have capable

7    counsel, but a lot don't and find the process difficult to

8    understand.  And I think the report is helpful to enable

9    them to understand, but it's also helpful for them to be

10   able to walk through it with Mr. Polkowitz or his counsel.

11          So again, this is not a criticism of the Debtors

12   and it's clear to me that they have not breached anything in

13   the confirmation order or the plan, but it's just a

14   suggestion.  That extra week I think would be productive on

15   top of the clear desire that the Debtors have expressed to

16   engage with the administrative expense creditors whose

17   claims have not yet been resolved and the role that the

18   administrative claimants representatives, i.e., Mr.

19   Polkowitz, has as a conduit to the Debtors.  So I think that

20   probably is enough said on that point.

21          Does anyone else have anything to say on the

22   status update?

23          MR. FAIL:  The only other thing I would add,

24   Judge, is that, as Ms. Morabito mentioned that she intends

25   to provide a proposal to parties.  The Debtors have also,

Page 35

1   and I just figured, you know, that's behind the scenes,

2   that's, you know, the normal Chapter 11 case trying to

3   happen behind the scenes, but, you know, there are

4   settlement proposals being contemplated.  The Debtors are,

5   you know, involved and making suggestions and proposals as

6   well, and we're optimistic that we'll find a path forward

7   together.

8           THE COURT:  Okay, all right.  I think it is fair

9   to say that absent one of those proposals or a combination

10  of them being finalized and put out on notice.  The

11  recoveries here, as I think was always the case, in large

12  part will depend on the ESL litigation.

13          But you all are correct that that is complex

14  litigation.  The Complaint is over 200 pages, and I'm

15  working on a series of motions to dismiss, which dovetails

16  with another roughly 200-page Complaint in another case

17  raising similar issues.  And obviously those things, given

18  the quality of the lawyers involved and the complexity of

19  the arguments, take time and that's just the first stage in

20  the litigation, of course.

21          I think all of the movants who made motions to

22  dismiss in those two litigations would have to understand

23  from the oral argument that took place that those motions

24  are not going to be uniformly successfully and that that

25  litigation will continue in some form.  But it is high-

Page 36

1    stakes litigation that if not resolved will involve a lot of

2    discovery and ultimately, if it's tried, a complex trial.

3            So that shouldn't be a surprise to anyone, but I'm

4    laying it out there, so they understand it.

5            MR. FAIL:  Appreciate that, Your Honor.  Thank

6    you.

7            THE COURT:  Okay.

8            MR. FAIL:  The next item on the agenda is --

9            MR. ZENSKY:  Excuse me, counsel?  Your Honor, it's

10   David Zensky.  Can I respond to Mr. Fail's comments?

11           THE COURT:  Sure.  Can you just remind me who

12   you're representing?

13           MR. ZENSKY:  Yes, of course, Your Honor.  We

14   represent -- Akin Gump Strauss Haur & Feld.  We represent

15   the litigation designees in the complex litigation you were

16   just discussing.

17           THE COURT:  Right, the ESL litigation.

18           MR. ZENSKY:  Yes.  I just wanted to say so the

19   Court is crystal clear.  Mr. Fail referred to a settlement

20   proposal.  It's not something that has -- I'm not sure what

21   part of the litigation --

22           THE COURT:  Let me interrupt you.  I assumed --

23           MR. ZENSKY:  -- it was not us.

24           THE COURT:  -- that both Miss Morabito and Mr.

25   Fail when they were talking about settlement proposals were

1    not proposing or discussing a settlement of the ESL

2    litigation.  And so, my remarks were really to make the

3    point that unless their proposals bear some fruit, there

4    will be, I think, an inevitable delay here because the

5    recovery to get to an effective date otherwise will be, I

6    believe, dependent, at least in some respect, on the ESL

7    litigation's outcome, and that's not something that's

8    imminent.

9             And, of course, the committee, as a representative

10   for all the unsecured creditors, is pursuing that

11   litigation.  I may have just confirmed it, but I took it as

12   that the proposals that Miss Morabito and Mr. Fail were

13   talking about were not to settle that litigation.

14            MR. ZENSKY:  Thank you, Your Honor.  I just wanted

15   to make sure that the Court and parties were clear on that.

16   Thank you.

17            MR. SMITH:  Hey, Your Honor, I have a question

18   about the ESL litigation with these people from ESL.

19            THE COURT:  I'm sorry.  Who is speaking?

20            MR. SMITH:  Yes, sir.  Yeah, I'm literally

21   speaking because I'm wondering when the --

22            THE COURT:  Could you just state your -- can you

23   state your name, please?

24            MR. SMITH:  My name is James Edmond Smith, and I

25   am a senior director for Sears Roebuck & Co.

Page 38

1              THE COURT:  Okay.

2              MR. SMITH:  And we were wondering when the senior

3     retirement plan for ESL was going to be paid back before

4     they expected to buy back the savings plan from everybody's

5     litigation?

6              THE COURT:  I don't know the answer to that

7     question, but it's not part of the ESL litigation that we've

8     just been discussing.

9              MR. SMITH:  ESL is with Lampert, and Lampert is

10    trying to acquire what --

11             THE COURT:  Mr. Smith, please.  This is not

12    something that either I know the answer to, nor that I

13    believe is, in fact, relevant to this case.

14             MR. SMITH:  That's what he's trying to acquire and

15    there should be absolutely no reason why --

16             THE COURT:  Mr. Smith --

17             MR. SMITH:  -- Mr. Fail feels he should oversee by

18    doing any of my job because of the Hadco of a company,

19    Orange company.  You guys, there's -- I can't do everything,

20    and I apologize for saying this right now -- but you need a

21    wet master and you guys have to reflect better.  This is not

22    professional, and that's all I have to say.

23             THE COURT:  All right, very well.  Thank you.

24    Okay.

25             MR. FAIL:  Judge, could I ask a question?

1              THE COURT:  Why don't we proceed then to the next

2      matter on the agenda, which involves the discovery dispute

3      and motion to compel under --

4              MR. FAIL:  Judge, can I -- it's Garrett Fail.  Can

5      I just interrupt?  Mr. Terence Banich from Katten is going

6      to handle the adversary proceeding matter for the Debtors,

7      but I just wanted to note.  I think that items K and L on

8      the agenda were inadvertently listed and that are not

9      related and are not pending today.  So I'll turn it over to

10     Mr. Banich, but I heard you mention the discovery and I see

11     that those letters were on there, and so, I just wanted to

12     make sure that that --

13             THE COURT:  All right.  Really just focusing on

14     the motion to compel under Rule 37.

15             MR. FAIL:   Thank you.

16             THE COURT:  But I saw Mr. Wander raise his hand.

17     So before we do that, Mr. Wander, do you have something to

18     say on the case conference.

19             MR. WANDER:  Yes, Your Honor.  Could I ask a

20     question on page 7 of the quarterly report?

21             THE COURT:  Sure.

22             MR. WANDER:  It refers to initial avoidance action

23     matters, 3,549 of them, and then the next line says total

24     actions determined to be ineligible, 1,283.  My question is,

25     was that after adversary proceedings were filed that the

Page 40

1    1,283 were determined to be ineligible?

2          THE COURT:  Do you know the answer to that, Mr.

3    Fail, or do we need to have someone from the preference --

4          MR. FAIL:  I don't, but I guess I don't get -- I

5    don't understand the relevance or importance of it, but I

6    don't know it offhand also.

7          THE COURT:  Well, it might be -- I mean, it's a

8    legitimate question.  I think the Debtors should ask one or

9    more of the preference firms that I'm assuming gave that

10   information to you, the preference recovery firms that gave

11   that information to Weil Gotshal to prepare the report.

12         It goes to, I guess, the assessment of how the

13   preference litigation was legitimately described to the

14   parties in the case and how it's proceeded, that's all, and

15   whether this was litigation or a potential --

16         MR. FAIL:  It doesn't, right.  I mean, it doesn't

17   -- it just doesn't change this -- it doesn't change this

18   report and there's nothing pending is what I'm saying.

19         THE COURT:  I don't think it -- I don't know

20   whether it does, but again, one of the aspects of this

21   report is to compare the estimates that were made at the

22   confirmation hearing.  And I don't believe that preference

23   litigation had been started then, so you can see that if

24   you're looking at the preference claims, they could be

25   described as claims that at the confirmation hearing people

Page 41

1    thought might exist or it could be rather they'll report on

2    the litigation that was actually brought, that's all.  So

3    I'd say --

4              MR. FAIL:  I'll have more information by our next

5    quarterly report, Judge.

6              THE COURT:  Right.  But in the meantime, they can

7    supply that to Mr. Wander, that information.

8              MR. WANDER:  Can I ask a follow-up question?

9              THE COURT:  Sure.

10             MR. FAIL:  It's like free discovery for a

11   potential motion that's coming, Judge.  I'm not really --

12   okay, we can do that.

13             MR. WANDER:  The next line item is matter 7, and

14   it indicates that that represents $523.7 million of

15   transfers.  My question is, what was the approximate

16   percentage recovery that the estate got on that?  I thought

17   I saw a number somewhere of approximately 19 million, but I

18   didn't know if that was it, which would be under a 5 percent

19   recovery.

20             So, Judge, that's my follow-up question, Judge,

21   and I'm happy to follow-up offline on this.  It doesn't have

22   to be answered right now.

23             MR. FAIL:  I can answer that right now.

24             THE COURT:  Well, it may not have to be answered

25   ever.

Page 42

1          MR. FAIL:  I can answer that right now.

2          THE COURT:  That type of information, unless it's

3     already been made public, doesn't necessarily have to be

4     answered since that is --

5          MR. WANDER:  I thought it was public information.

6          THE COURT:  Well, I don't know.

7          MR. FAIL:  We say on the left side of the page

8     that we've received a combination of cash and the claims

9     labors of $50.6 million.  Each case is different, each

10    percentage is different, and we're not providing anything

11    more than we've provided.  It's not to the benefit of

12    creditors.

13         THE COURT:  Right.  I've only required aggregate

14    reporting on this.

15         MR. FAIL:  Mr. Wander represents defendants in

16    ongoing preference actions.  It's inappropriate to provide

17    anything further.

18         MR. WANDER:  I was just curious if the Debtor is

19    able to break out of the 50.6 million how much is cash that

20    has been received and how much are administrative labor.

21         THE COURT:  It probably is.  But again, Mr.

22    Wander, I've not required that for an obvious reason.

23         MR. WANDER:  Okay.  Thank you, Your Honor.

24         THE COURT:  Okay.  All right.  So the next matter

25    on the agenda is in Kmart Holdings Corp and Sears, Roebuck &

Page 43

1    Co. v. Winiadaewoo Electronics America, Inc., and it is the

2    motion of the defendant, Winiadaewoo to compel production of

3    certain documents and answers to interrogatories.  I've

4    reviewed the motion and the exhibits, the plaintiff-debtors

5    objection, and the reply.

6         I'll take appearances in a second, but -- well,

7    why don't I do that now and then I'll ask my first question

8    on this and then hear brief oral argument.

9         MR. BANICH:  Good morning, Your Honor.  Terence

10   Banich for the Debtors and the plaintiffs in the adversary.

11        THE COURT:  Good morning.

12        MR. CLARK:  Good morning, Your Honor.  My name is

13   Perry Clark.  I am counsel for the defendant, Winiadaewoo

14   Electronics America Inc.

15        THE COURT:  Okay, good morning.  All right, so

16   either of you could probably answer this.  The focus of the

17   correspondence and the discovery conference that I held and

18   most of the briefing on this, certainly I think all of the

19   objection and the reply, pertain to the document production

20   request, Request for Production No. 3, "Documents concerning

21   the 'due diligence evaluation' conducted by plaintiff

22   referenced in Paragraph 21 of plaintiff's Complaint."

23        But the motion sought responses also to two

24   interrogatories, Nos. 5 and 6.  Is that still at issue or

25   has that been resolved, the interrogatory aspect of the

1    motion.

2            MR. CLARK:  Your Honor, this is Perry Clark for

3    the defendant.  That issue has not been resolved.  We're

4    seeking to compel interrogatory responses as well.

5            THE COURT:  Okay.  All right.  Well, why don't I,

6    I guess, focus on that first.  The basis for the objection

7    to the two interrogatories is that the interrogatories seek

8    information protected by the attorney-client privilege

9    and/or work-product doctrine.  But the interrogatories ask,

10   Interrogatory No. 5 asks to identify each person with

11   knowledge or information concerning the due diligence

12   evaluation referenced in Paragraph 21.

13           And Interrogatory No. 6 asks to identify the

14   existence, custodian, and location and provide a general

15   description of each document concerning the due diligence

16   evaluation.

17           As to the first one, again, identify each person

18   with knowledge or information.  I don't see how that would

19   implicate or be privileged under either attorney-client

20   privilege or work-product doctrine.

21           MR. BANICH:  I assume that question is directed at

22   me, Your Honor?

23           THE COURT:  Yes.

24           MR. BANICH:  Terence Banich for the plaintiffs.

25   Good morning.  Yeah.  I would suggest that the objection is

Page 45

1    twofold in that, you know, we obviously want to be careful

2    about when getting on the issue, subject matter of the due

3    diligence investigation, dipping our toe into a substantive

4    response and risking sort of a gotcha, you know, waiver

5    argument.

6            But I would suggest on the merits of it, all of

7    the information requested by those two interrogatories is

8    reflected in our privilege log.

9            THE COURT:  Right.  But how is it -- I don't see

10   how this is privileged though, right?  It's an interrogatory

11   and you're just identifying each person with knowledge or

12   information, so you could say, you know, lawyer X or

13   accountant Y that worked with lawyer X.  But to me, that's

14   neither a waiver of the privilege nor privileged.

15           MR. BANICH:  Well, on that understanding, we'd be

16   happy to just answer those two interrogatories referencing

17   the same people and information that's reflected on the

18   privilege log.  That's fine, Your Honor.  We're happy to do

19   that.

20           THE COURT:  And then there's the request for a

21   general description of each document concerning the due

22   diligence evaluation.  Did the parties discuss what was

23   meant by the term general description?  I mean, again --

24           MR. BANICH:  I don't recall such a discussion.

25           THE COURT:  -- this didn't really come up in our

Page 46

1    discovery conference, so this is really the first time I've

2    dealt with this point with the two of you.  Has that been

3    discussed?

4              MR. BANICH:  Right.  I don't recall -- I'm sorry.

5    I don't recall such a discussion with Mr. Clark during our

6    separate conferences or certainly not when we had our

7    conference with you, Your Honor.  But I would suggest that

8    the only -- in the context of this, again, the privilege log

9    provides, you know, sort of a basic general description of

10   the documents as Rule 26(b)(5) requires.

11             THE COURT:  Okay.  So Mr. Clark, are you looking

12   for more than that with regard to Interrogatory No. 6 where

13   you request to provide a general description of each

14   document concerning the due diligence evaluation?

15             MR. CLARK:  I'm sorry.  Your question was are we

16   asking for more than that in response to the inter- --

17             THE COURT:  More than what is -- more than the

18   description of the document in the privilege log, which is I

19   guess Exhibit 5 to the motion.

20             MR. CLARK:  No, I don't think so.  If that's what

21   they're going to stand on for the description of the

22   document, we'll take that.

23             THE COURT:  Okay, all right.  I just want to get

24   that out of the way.  I think then that confirms that the

25   real issue here is the Request for Production No. 3, which

Page 47

```
1    is the request for the actual documents concerning the due

2    diligence evaluation.  And I'm happy to hear oral argument

3    on that point, although again, I've reviewed the parties'

4    pleadings on it.

5              MR. BANICH:  Your Honor, Terence Banich for the

6    Debtors.  I'm not sure which -- if you'd like the proponent

7    of the motion to lead off or the objector.

8              THE COURT:  Well, I guess, I mean, this really, I

9    think, generally goes with who has the burden of proof.  And

10   the burden of proof as to whether a document itself is

11   privileged within the parameters of the privilege is on the

12   party asserting the privilege.

13             But I did have a question, which is, there are two

14   aspects of that.  First, the elements of the privilege

15   itself, either attorney-client or work-product, and it was

16   not clear to me whether there is a dispute as to whether the

17   elements of attorney-client privilege or work-product

18   privilege or any of them are in dispute here.

19             Now let me start with this question.  As far as

20   the attorney-client privilege is concerned, then in part

21   this is because it's in microscopic or almost microscopic

22   print, which documents are relying on the attorney-client

23   privilege for not producing?

24             MR. BANICH:  Your Honor, thank you.  Yes, and I

25   recognize the font size on the privilege log.  I guess
```

1    someone small tried to fit it all on a single page and not

2    have the rows cascade over.

3              THE COURT:  Right.

4              MR. BANICH:  But I believe, yeah, I believe if you

5    look at the second-to-last column from the right under the

6    reason withheld is what it's called, some of them will

7    contain references to attorney-client, work-product, or

8    both.  The majority of the documents -- they're not

9    numbered, I mean, other than the control number that you see

10   there.

11             THE COURT:  Right.

12             MR. BANICH:  So I can't really refer to them by

13   row one or two without counting down.  But the easiest way

14   to reference that is just to see the reason withheld, and

15   the descriptions are different to account for that

16   difference.

17             But to answer Your Honor's question from the

18   beginning and as we noted in footnote 1 of our objection on

19   page 5, I don't read the motion or even the reply to

20   challenge the -- to make an argument challenging whether or

21   not the elements are satisfied here, and we note that in the

22   footnote.

23             This really kind of is a broader -- the brush is

24   broader, and it just goes to whether or not, you know, as a

25   general matter, we can stand on the objection that the due

Page 49

1    diligence investigation is opinion work-product and, in some

2    cases, also were attorney-client communication, whether or

3    not you could just withhold those generally.  We're not

4    duking it out about the elements really.

5                    THE COURT:  Okay.

6                    MR. BANICH:  You can see that in the motion

7    papers.

8                    THE COURT:  That was my impression but let me ask

9    Mr. Clark about that.

10                    MR. CLARK:  Your Honor, I didn't mean to interrupt

11   Your Honor.

12                    Our response to that is, we actually do dispute

13   that the elements of both the privilege and the work-product

14   based on the disclosure and the privilege log that a number

15   of these documents were prepared by the data analysis and

16   advisory firm that works with counsel with plaintiffs.

17                    And what they seem to reflect and what we've

18   pointed out in our moving papers is that, you know, the due

19   diligence analysis has a factual component.  It's not

20   entirely, you know, the lawyer's opinion of whether or not

21   the due diligence investigation was sufficient and, frankly,

22   we don't care about that.  I mean, we know that counsel for

23   the plaintiffs thinks what they did was legally, that their

24   opinion is that the due diligence is reasonable.  What we're

25   after are the facts underlying that due diligence

Page 50

1    investigation.

2            And here, when you look at the privilege log, I

3    mean, what looks like happened was it had a data analysis

4    and advisory firm conduct an analysis of ordinary course of

5    business and substantial new value and reach a conclusion.

6            And as we pointed out in our opening brief, you

7    know, you can have a data analysis firm conduct a due

8    diligence investigation and you could rely on that as your

9    argument to say why you did a due diligence.

10           And so here, the dispute that we have over the

11   applicability of the privilege relates to the fact that

12   there are probably bare facts underlying this analysis that

13   should be produced and the plaintiffs haven't carried their

14   burden of showing that the information in their privilege

15   log is actually legal advice or actually is a lawyer's

16   opinion, as opposed to the bare facts.

17           And again, we're not interested in what the

18   lawyers think about the merits or the reasonableness of due

19   diligence.  We just want the facts underlying.  So that's

20   the dispute about the elements.

21           THE COURT:  But I think you -- I'm asking a more

22   narrow question, and I think you're skipping a step.  I'm

23   asking whether there is a dispute that you have raised as to

24   whether the documents that are being withheld here are

25   covered by the work-product doctrine itself, which has, you

Page 51

1    know, a specific set of elements that apply to it and a

2    specific set of inquiry as to the input in it of non-lawyers

3    and the capacity in which they were working and the capacity

4    in which the document was prepared or the context in which

5    it was prepared, et cetera.

6            I did not get the impression that you were making

7    those types of arguments.  They don't really appear in the

8    motion, in contrast to the argument that under Rule

9    26(b)(3), they could be compelled to be produced

10   notwithstanding the privilege, or alternatively, that the

11   privilege was waived.

12           MR. CLARK:  We are certainly making both of those

13   arguments, Your Honor.  And I think again, on the narrow

14   question of does the privilege, does work-product apply to

15   the documents in the privilege log.  Again, our argument

16   would be to the extent that the information on the privilege

17   log identifies spreadsheets that contain facts, we would say

18   that's not privilege.

19           THE COURT:  But you haven't briefed any of that,

20   right?  You haven't briefed the -- look, there are scores of

21   cases literally that discuss when factual information that

22   is included in or made a part of a document is or is not

23   subject to the attorney-client privilege or the work-product

24   privilege, and that's not the issue that the parties have

25   addressed here, those types of cases.

1          And I think if -- frankly, I think if that point

2    had been raised, there would have been a different

3    objection, I expect supported by an affidavit or a

4    declaration that said, you know, the firm, the law firm

5    retained so and so or consulted with so and so before the

6    commencement of this litigation to prepare this information.

7    We discussed what would be relevant as a legal matter.  Or

8    maybe it wouldn't say that; maybe it just said we had this

9    information already and we used it.

10          But I don't think that issue's really been joined.

11    You're free to join it.  I just don't think it's before me

12    today.

13          MR. CLARK:  I understand.  I understand Your

14    Honor's notice you read the briefs.  I think all I would say

15    is that the issue, the way it's been played out as the

16    parties were addressing it was simply our position that if

17    they had said -- you know, there are a number of ways to

18    prove due diligence.  There's nothing magic about due

19    diligence.  It has to be done by a lawyer.

20          I think our point was simply that you could just

21    provide the facts.

22          THE COURT:  Well, I'm not --

23          MR. CLARK:  And they're saying --

24          THE COURT:  You know, I'm not so sure that's

25    really the case here given that what the statute says in the

1    new language that came in the pleading of 2019.  The trustee

2    may, based on reasonable due diligence and the circumstances

3    of the case and taking into account a party's known or

4    reasonably knowable affirmative defenses.  If you're

5    referring to affirmative defenses, you really -- that's a

6    legal issue, right?  You need to -- I mean, it's at least

7    reasonable or logical to assume that the bean counter has to

8    be instructed as to what's relevant as far as an affirmative

9    defense.

10            MR. CLARK:  I think that's right, Your Honor, and

11   I think, you know, congress when this language was inserted

12   obviously made pains to say it's due diligence in the

13   circumstances of the case.  And, you know, I don't think of

14   this requires that a plaintiff, you know, point to their

15   Rule 11 analysis, their prefiling investigation.  I think

16   congress left it up to, you know, the circumstances of the

17   case, and any number of things would meet the due diligence

18   requirement.  I don't think --

19            THE COURT:  But it's -- but again, I'm going back

20   to the point that I started this line of questioning about,

21   which is are the parties fighting about whether the

22   privilege applies -- the work-product doctrine privilege or

23   the attorney-client privilege -- or really are they fighting

24   about whether Rule 26(b)(3) requires disclosure

25   notwithstanding the privilege.  And my distinct impression

Page 54

1    is that what they were fighting about is the latter, and

2    that may well include -- does include the points you've been

3    making, the difference between facts and opinion, for

4    example.

5             But it's clear from the case law, although the

6    parties didn't brief it because I don't believe it was

7    raised, that attorney work-product can and, in fact, usually

8    does include plenty of facts, just raw facts because that's

9    what lawyers do; they take the facts and apply the law to

10   them.

11            And it appears here in this statute that congress

12   is requiring due diligence that pertains to a legal issue,

13   which is the applicability of defenses, as well as, of

14   course, to the elements of the -- other elements of a

15   preference claim, and someone needs to be instructed by

16   that.

17            So I don't think what you're fighting over here

18   is, for example, whether a preference run by an accounting

19   firm was done at the instruction of and as part of the

20   preparation for this lawsuit, as opposed to just a run that

21   they had done, you know, years ago.

22            I think what you're arguing about is Rule 26 and

23   waiver, so I think we should get to that point.  Again, if

24   you want to make the other argument, you can, but just not

25   today because I don't think it's been made.  So with that, I

Page 55

1    think we should get to the Rule 26(b)(3) point and also the

2    waiver issue.

3            MR. BANICH:  Your Honor, would you care for me to

4    address those points?

5            THE COURT:  Sure, why don't you go ahead on that

6    point.

7            MR. BANICH:  Okay.  I understand that as the party

8    claiming the applicability of the work-product doctrine

9    here, it's our burden to establish that, at least on a prima

10   facie basis, it applies.

11           And I think as Your Honor concluded, at least

12   preliminary at our discovery conference, which now seems

13   like such a long time ago, that our privilege log

14   accomplished that.  I believe Your Honor made a comment or

15   two to that affect.

16           At the core of the matter is these documents that

17   where most of them are spreadsheets where we, as Your Honor

18   discussed earlier, the preference professionals that's a

19   combination of Katten and Acumen, now known as Stretto, went

20   through the portfolio of potential preference targets to

21   figure out what the potential exposure was.

22           And that is the document, there's a few iterations

23   of it, that's the document that Mr. Clark wants produced.

24   And I think the first task here is to get into whether or

25   not, as I think Your Honor preliminarily concluded, that

Page 56

1   these documents are inherently opinion work-product.  And if

2   that's the case, that is the end of the line.  It's the end

3   of the discussion because, as we emphasize in our papers,

4   Rule 26(b)(3)(B) states that the court must protect against

5   disclosure of opinion work-product, and several cases talk

6   about how it's virtually undiscoverable and such.

7            So I think, I would suggest that the first task

8   here is to figure out what bucket, if you will, these

9   spreadsheets fall into.  And as we talk about, in our

10  objection, is fact work-product an opinion work-product.

11  Fact work-product is, on the face of it, not discoverable,

12  but can be compelled to be produced.  Opinion work-product

13  is much different.

14           And we, in our objection I think, very clearly

15  explain why a spreadsheet analyzing whether or not we have a

16  good cause of action against the defendant and what their

17  defenses might be worth is, by definition, an example of

18  opinion work-product.

19           THE COURT:  Well, can I stop you at that point?

20           MR. BANICH:  Of course.

21           THE COURT:  A spreadsheet can say a lot of

22  different things, you know, you can have a lot of different

23  columns on it.  The Complaint in this adversary proceeding

24  says that the plaintiff, in Paragraph 17 and it attaches

25  also as an exhibit, analyzed data, including invoice number,

Page 57

1    invoice date, invoice amount, and clear date.  And then,

2    Paragraph 21 says, "Players perform their own due diligence

3    evaluation."  Paragraph 22 says, "After performing their own

4    due diligence valuation."

5            So a spreadsheet could have a column with -- which

6    is somewhat similar to Exhibit A, it could list invoice

7    number, invoice date, invoice amount, clear date for each of

8    the payments and the statement of account.  It may also have

9    a column that shows historical payment information, you

10   know, payments within a band over the previous one year.

11           It shows when those payments were.  So to me, that

12   would probably cover most defenses.  It might -- you know,

13   you might have a column that says any new value.  It doesn't

14   necessarily have to have a column that puts a percentage

15   recovery on it, right?  I mean, a spreadsheet wouldn't have

16   to say that.  It might not.

17           That might be the separate memo that the

18   spreadsheet's attached to.  So I understand very well your

19   distinction between opinion work product and fact work

20   product, but I'm not sure that the descriptions in the

21   privileged log highlight whether the fact work product could

22   be isolated from the opinion work product.

23           MR. BANICH:  All right.  Well, I would say as an

24   initial matter that I also -- the defendant has also not

25   challenged the -- at any point, the adequacy of our

1    privileged log.  This -- the issue has always been the more

2    esoteric issue of whether or not due diligence materials are

3    discoverable legally.

4              THE COURT:  I understand.

5              MR. BANICH:  So we -- all right, fair.

6              THE COURT:  And that was the subject really of our

7    conference, that there was in essence --

8              MR. BANICH:  That's right.

9              THE COURT:  -- Congress forced a waiver, if you're

10   going to refer to it in your complaint --

11             MR. BANICH:  Right.

12             THE COURT:  -- there's a waiver.

13             MR. BANICH:  Right.  And we covered that in the

14   discovery conference.

15             THE COURT:  Right.

16             MR. BANICH:  And I'm happy to discuss that again,

17   if you would like.

18             THE COURT:  No.  I'm really focusing on this other

19   issue, which I think is --

20             MR. BANICH:  All right.

21             THE COURT:  -- really the one that Mr. Clark is

22   primarily focusing on, which is one could under -- he's

23   saying -- Rule 26(b)(3), and particularly (b)(3)(b), protect

24   against disclosure of the opinion work product.  And still

25   provide the information on the payment history, which I'm

1   assuming is in their spreadsheets.

2           MR. BANICH:  Very well.  Well, let's -- I guess we

3   have to -- there's a couple of points to unpack there.  And

4   the first is what exactly are we withholding?  Because you

5   know, a spreadsheet as Your Honor correctly points out could

6   contain a lot of information or it could be much more

7   simplified.

8           The -- I would start out by saying that the

9   document we've actually withheld is basically a top line

10  analysis of gross transfers and what we think the case is

11  worth net of various defenses.  And it's not only for this

12  defendant, it's a spreadsheet that covers many targets and

13  defendants.

14          THE COURT:  All right, but they --

15          MR. BANICH:  One line of which is this defendant,

16  all right, I guess there's two defendants.

17          THE COURT:  Okay, but there -- I mean, there are,

18  I don't know what, about 11 documents I think that are

19  referred to on the privileged log.  So again, I --

20          MR. BANICH:  Right.  Right.  They went through

21  different models as time went on.  You know, there was

22  different versions of the spreadsheet.  It got updated as,

23  you know, further analysis was conducted.  So there's

24  different versions of the spreadsheet.

25          We logged them separately, which is why you see

Page 60

1    them like that.  The underlying facts that roll up into this

2    conclusion, this analysis, we've all produced to Mr. Clark

3    separately.  He has all of the underlying data -- the

4    payment histories and so on.

5            This is -- this we're -- that sort of factual

6    information upon which the conclusion is based have been

7    produced.  So naturally we would have produced that.  We

8    produced that to all defendants.  You know, but it's not in

9    our interest to hide that information.

10           But the actual document we're talking about here

11   is quite different.  It was for -- made for internal use,

12   you know?  And it has the -- it contains an application of

13   the statutory defenses to what we perceived the facts to be

14   about the transfers at issue, the parties' historical

15   payment relationship and the assessment of our -- what we

16   think new value and ordinary course might actually be

17   properly valued at.

18           So in effect, we're analyzing the strengths and

19   weaknesses of the case in this document.  It's totally

20   separate from the underlying data that holds up --

21           THE COURT:  So just to summarize then, you're

22   saying that you can't pull out the raw data, which you say

23   you've already provided any of that, but you're saying you

24   can't really redact the opinion analysis, because that's

25   essentially the whole document?

1          MR. BANICH:  Well, that's correct.  I mean, I'm

2    saying that the underlying data doesn't even appear on this

3    particular spreadsheet.  It's a totally -- this spreadsheet

4    that we're -- we've withheld is for bottom line or top line,

5    depending on your perspective, analysis of gross transfers

6    and then some columns about what the likely defenses are

7    worth.

8          THE COURT:  What about the column headings?  Do

9    they -- do the column headings themselves give any

10   conclusions?  Or do they just show the questions that were

11   asked?

12         MR. BANICH:  I believe the column headings on this

13   particular document might say like gross transfers, net new

14   value, net of OCB and new value or some words to that

15   effect.  And obviously, objective information like what the

16   name of the defendant is and things of that nature.  Not

17   very revealing on their own, but that's what they would be.

18         THE COURT:  Well, I guess, I mean, this is more of

19   a question for Mr. Clark.  When you look at 547(b), the

20   introductory clause that was added, and the most recent

21   amendments, one could certainly take the view that Congress

22   wanted the plaintiffs in these types of witness actions to

23   perform due diligence, not to inquire into the conclusions

24   they reached.

25         So one could take the view that what's really at

Page 62

1    issue is just the headings as opposed to the opinion

2    information that's underneath the headings.  And even as to

3    the waiver point, they're not offering the substance of

4    their legal analysis, they're simply reciting in the

5    complaint and then assuming if it becomes an issue at the

6    trial, they will introduce evidence that they performed due

7    diligence.

8            And it would seem to me that the headings are what

9    they would rely on and arguably what you're entitled to, but

10   not their legal conclusions.  I mean, I don't think

11   Congress said, in fact, I know it didn't say it because it's

12   not in the statute, that before you bring such a preference

13   place, you have to assume that you have a greater than, I

14   don't know, 35 percent estimate of succeeding.  I mean,

15   Congress I guess could've said that --

16           MR. BANICH:  Right.  No I think that's --

17           THE COURT:  -- although, they would've blown the

18   attorney/client privilege and work/product privilege out of

19   the water if they did.  They just said there had to be

20   reasonable due diligence.

21           MR. BANICH:  So you're absolutely right.  They

22   didn't say that.  I think -- and I think Rule 11 covers the

23   (indiscernible) investigation, where to bring the claim, all

24   you have to do is have a reasonable good faith to lead with

25   the facts and the laws to put it.

Page 63

1              I think what Congress was saying was that

2     plaintiffs shouldn't bring preference actions on transfers

3     where they know that there is a substantial new value

4     defense or an ordinary course of new business defense.

5              THE COURT:  Well, except it doesn't say that.

6              MR. BANICH:  Well, it says -- okay.

7              THE COURT:  It just says has to perform reasonable

8     due diligence.

9              MR. BANICH:  Right.  But I think -- so in this

10    case, there are hundreds of transfers that are asserted in

11    the preference action.  And the plaintiff's position is that

12    every single transfer in the transfer -- in the preference

13    period does not have a defense.  It does not have an

14    ordinary course of business defense and does not have a

15    substantial (indiscernible) value defense.

16             THE COURT:  Congress didn't say that, either.

17    Congress doesn't say there can't be any possibility of a

18    defense.  There's just reasonable due diligence.  I mean, I

19    just -- I -- as we all know, defenses are subject, in most

20    cases, although I have had a couple, a good 20 years, where

21    the defense won at summary judgment.  It's usually a fact

22    issue.

23             MR. BANICH:  Right, right.  And again --

24             THE COURT:  Where there's a dispute.

25             MR. BANICH:  Right.  And far be it for me to say

Page 64

1    what Congress intended, but it looks like from the amendment

2    of the statute, Congress intended something different than

3    what existed before.  And what that is, it seems like is an

4    analysis of the reasonably knowable affirmative defenses and

5    a due diligence that is reasonable in the circumstances of

6    the case.

7              And here, what we're asking for is just an

8    identification of what that reasonable diligence was.  And

9    their answer is that it's categorically work product.  And

10   if they're going to say in discovery that it's categorically

11   work product, then they shouldn't be allowed to close the

12   work product at some future date and say, oh, here's

13   everything that shows the new diligence.

14             And it may be that there's a conclusion in this

15   case that as a matter of law, a due diligence investigation,

16   you know, means you can't be -- they may be (indiscernible)

17   about what that means and that they need not prove anything.

18   And if that's the case, that's the legal conclusion.

19             But if there is a conclusion that they have to

20   prove something related to due diligence, the fact that

21   they're refusing to identify that proof in discovery, we

22   think means they shouldn't be able to rely on that for

23   somewhere down the line.

24             THE COURT:  Well, I was positing to you that I

25   could compel them to produce the headings on these

Page 65

1    spreadsheets, but not the conclusions underneath the

2    headings.

3              MR. BANICH:  That's interesting.  So sort of --

4    we're envisioning a spreadsheet as saying, you know, the

5    Column A is a preference, it's -- Column A is a payment.

6    Column B is like an invoice for a shipment.  Column C is

7    like a median base of payment or whatever.

8              And then, there's this like, extra column that

9    says sort of given the preceding columns, here's the

10   percentage likelihood we think we'll get on this claim.

11             THE COURT:  Right.

12             MR. BANICH:  Right, right.  Well, we'd love to get

13   that, I mean, certainly.  I'd be surprised if that was the

14   way that spreadsheet was setup. But I would agree with you,

15   those preceding columns are certainly not work product.

16             THE COURT:  Well, it -- they might well be if they

17   -- again, that was the first 10 minutes of this oral

18   argument.  It's not really -- you hadn't really briefed that

19   issue.  Work product very much can include the work of a

20   non-lawyer, clearly.  I mean, it can include an

21   investigator's work.

22             It can include insurance adjuster's work.  It can

23   include all sorts of people depending on when they were

24   retained and how they interacted.  So just the fact that

25   it's a fact doesn't take it out of the work product

Page 66

1    doctrine.  If you want to brief that issue, you can, but

2    it's not really covered in this motion.  So --

3                MR. BANICH:  And we certainly can.  I mean, sorry.

4                THE COURT:  So Mr. Banich, I interrupted you on

5    this point.

6                MR. BANICH:  Sure.

7                THE COURT:  But I think in reviewing these

8    pleadings, I was coming out basically as follows.  First, I

9    think I probably do need to see these spreadsheets in

10   camera, just to make sure that they are what you say they

11   are.  I -- and I appreciate there really hasn't been an

12   objection to the privileged log per se.

13               But I think it goes to the second part of my -- of

14   where I was coming out based on reviewing the pleadings,

15   which is that I don't think in this language and in 547,

16   Congress intended to blow a hole in the well-established and

17   sacrosanct, except for limited specific exceptions,

18   attorney/client work product privileges.

19               So and it would appear to me that the very clear

20   exception in Rule 26(b)(3)(b) would in any event shield the

21   production of conclusions, opinions, evaluation.  But that

22   the fact of a -- of the valuation, which could be evidenced

23   by the headings, just as it is evidenced by the language in

24   the privileged log itself, while arguably work product, in

25   fact it is work product, I think is just a fact that the due

Page 67

1   diligence occurred and could be compelled to be produced.

2          So I -- I'm just laying that out there to both of

3   you.  And Mr. Banich, you can respond however you want,

4   including making other arguments, but I would like you to

5   address those two points.

6          MR. BANICH:  I'm happy to, your Honor, thank you.

7   A couple of points.  I would go back -- first of all, let me

8   pick up on one of Your Honor's comments of a moment ago, of

9   how you're, you know, a tentative ruling I guess that

10  Section 547(b) as amended does not to, as Your Honor's

11  expression, blow a hole in attorney/client privilege or work

12  product.

13         It -- obviously, that is consistent with our

14  position in the briefs.  It's consistent with the plain

15  language of the statute as amended.  It doesn't say anything

16  about privilege or work product.  And on top of that, with

17  regard to the idea that we would have to produce a, I guess

18  a redacted version of this document showing the headings, I

19  would ask, if it's -- if the conclusion is that the statute

20  didn't change anything with regard to work product, then you

21  know, why is it that we would have to produce a document,

22  even redacted, that is --

23         THE COURT:  Well, it didn't -- no, I'm sorry -- it

24  did change something as to work product.  It made due

25  diligence relevant.  The fact that due diligence was done is

1   relevant.  So it does implicate, I think, 26(b)(3)(a).  It's

2   just --

3           MR. BANICH:  Right.

4           THE COURT:  -- it didn't go so far as to say that

5   -- I think it's process focused, as opposed to conclusion

6   focused, as far as the due diligence.

7           MR. BANICH:  Right.

8           THE COURT:  And so --

9           MR. BANICH:  But I think Your Honor -- yeah, I'm

10  sorry.

11          THE COURT:  -- I think it did make that inquiry

12  relevant, which is why it's in the complaint.  But it would

13  seem to me that it's the process, i.e., the process of what

14  goes through, similar to the process in the ResCap case of

15  deciding whether a settlement is reasonable.

16          You don't have to go through the conclusions and

17  all of the debate going back and forth, but just that the

18  process happened in a context where you have, you know, in

19  this case, a very large set of preference claims that

20  aggregate a large amount of money.  And you know, there was

21  an analysis done.

22          Now I guess Mr. Clark could say, well, what's to

23  prevent someone from just putting headings on and then in

24  real life having nothing underneath, no column, a column

25  that says percentage recovery or likelihood of recovery and

Page 69

1    then having nothing in it?  Or just having 100 percent at

2    each one?

3            But I think frankly that's unlikely here, and

4    probably something that is not a sufficient basis to believe

5    that the Congress meant to have the sort of a blanket waiver

6    of the privilege.

7            MR. BANICH:  I agree with that.  I would go back

8    to Your Honor's analysis from the discovery conference, when

9    we discussed this very issue.  And I believe Your Honor --

10   when raising -- when responding to or discussing Mr. Clark's

11   point about, well, he wants to guard against us, you know,

12   dropping on him presumably in a pre-trial phase, you know, a

13   document that we've withheld as work product up until that

14   point.

15           And Your Honor was like, well, you know, if they

16   don't produce it in discovery, we can't use it.  Rule 37(c)

17   is very clear about that.  And but on top of that, Your

18   Honor, so well, the privilege log is the proof that it was

19   done.  And I think that's still the right answer.

20           You know, going to show -- unless someone's

21   challenging the -- unless the defendant is challenging the

22   detail in our privileged log, which they are not, I don't

23   know why we would have to go beyond what's in the privileged

24   log.

25           That is the purpose and function of Rule 26(b)(5).

Page 70

1    And if someone is not challenging a privileged log, that

2    means we've satisfied that rule and you shouldn't ordinarily

3    go beyond it.  That's the purpose of the log.  It puts them

4    on notice of the nature and basis of the claim and we've

5    done that.  They don't challenge it.

6            So I would suggest that Your Honor was correct at

7    the discovery conference and said, well, the evidence would

8    be the privileged log.  So the -- and obviously, I mean,

9    it's -- it goes without saying if we're trying to protect

10   this document now, we're not going to use it at trial.  I --

11   Rule 37(c)(1) itself executing in that regard, if we don't

12   produce in discovery, we literally can't use it.

13           So Mr. Clark can take some solace in that.  And

14   so, with regard to your -- the other points, although I'm

15   happy to provide the spreadsheet in camera, you know, it

16   does deal with lots of other targets and defendants, some

17   reluctance to provide that --

18           THE COURT:  Well, you could just do the pages that

19   pertain to the -- when they will --

20           MR. BANICH:  I understand, we could do that.  So

21   the -- but it's important that, you know, I emphasize my

22   agreement with Your Honor's analysis, that you know, the

23   conclusion of what, you know, analysis and what a case is

24   worth is -- falls into your categorical opinion work

25   product, or opinion work product bucket, which is

Page 71

1    categorically non-discoverable.

2             So I continue to question what the purpose would

3    be of producing even the spreadsheet with just the column

4    headings, if our privileged log is not being challenged

5    given the purpose of Rule 26(b)(5), which is to put them on

6    notice of the basis for claim or privilege.

7             THE COURT:  Okay, and --

8             MR. CLARK:  And if the privilege log has not been

9    challenged, obviously we've satisfied that rule and

10   shouldn't have to go beyond it.  So --

11            THE COURT:  Okay.

12            MR. CLARK:  -- just if I could just respond?

13            THE COURT:  Sure.

14            MR. CLARK:  So on the 26(b)(5) point, 26(b)(5)

15   just says that if you withhold documents, you have to

16   provide the privileged log.  It doesn't say that if you

17   provide a privileged log you are not -- you'll prove you can

18   submit the privileged log as hearsay proof of the truth of

19   the matter of the documents listed on the privileged log.

20            The privileged log's a double hearsay.  So I

21   wouldn't say we're not -- I mean, say we're not challenging

22   the privileged log if they -- it is not true.  I mean, it

23   was challenged --

24            THE COURT:  Well, you know, and you're also saying

25   that if one got to a trial on this there might be an

1    evidentiary issue just relying on the privileged log.  And

2    the plaintiff may want to rely on the headings, right?

3            MR. CLARK:  Well, right, right.  And it just -- it

4    doesn't -- I've never seen -- I've never been in a situation

5    like this, where somebody said that their privileged log is

6    proof of something they allege in their complaint.  That

7    just -- I mean, if you can do that, that would be an

8    important thing to know, I think in the bar, because there

9    are a lot of situations where you're telling like an expert

10   or an investigator or something, you know, go look at this,

11   give me your opinion and then you could just get the opinion

12   back, or like a data analysis firm.

13           Basically like you hire a CPA.  Like you would

14   hire a CPA to say look at this, then tell me your response,

15   and then you could just put it in a privileged log and

16   (indiscernible) --

17           THE COURT:  Well, no, there's a separate --

18   there's a whole separate set of rules dealing with expert

19   testimony.  But anyway --

20           MR. CLARK:  Right, totally.

21           THE COURT:  -- I understand your point about the

22   evidentiary effectiveness.

23           MR. CLARK:  Right.  And then, if I could just --

24   yeah, another point, I really -- I doubt that this document

25   that you're going to get has these percentages.  I mean, I

Page 73

1    think what it probably says is the claims are reduced in

2    amount by the substantial lead value.  I don't know that it

3    -- I mean, I guess that is a percentage.

4            But there's two types of percentages, right?

5    There's like, a likelihood of recovery percentage, and then

6    just a percentage amount that they're entitled to, right?

7    Because you know, you get the $100,000 preference payment

8    and you ship $95,000 worth of goods.  Like that -- you would

9    get only five percent of that payment, right?

10           And that's not -- but that's different than you

11   have a 75 percent chance of getting that five percent.  So

12   I'd be surprised if that was what that actually said.

13           THE COURT:  Okay.  All right.  Anything else?

14           MR. SMITH:  Yes, Your Honor.  I would like to know

15   (indiscernible) --

16           THE COURT:  No, Mr. Smith.  I'm still on this

17   matter.  I'm only talking to Mr. Clark and Mr. Banich.

18   We'll get to your matter next.

19           MR. SMITH:  (indiscernible) --

20           MR. CLARK:  I'm sorry.  I do have just two sort of

21   housekeeping things.  So we talked earlier about the

22   interrogatories.  And I just wanted to confirm that we're

23   going to get supplemental interrogatory responses, like

24   signed interrogatory responses as we discussed.

25           THE COURT:  To those two interrogatories.

1          MR. BANICH:  What I had proposed to do, and is to

2     simply say in response to those interrogatories without

3     waiving, without being subject to some sort of argument,

4     that by answering them, you know, it affects some sort of

5     waiver in a got-ya manner, I would ask to the objective

6     issues of who has knowledge and what the documents are

7     about.

8          Interrogatory responses are going to say read or

9     privileged log, as I said earlier.  Because it contains all

10    that information.

11         THE COURT:  Including the --

12         MR. BANICH:  I'm happy to do that.

13         THE COURT:  -- including the names of the

14    individuals and the like?

15         MR. BANICH:  Well, yes, because the privileged log

16    contains a column of who the --

17         THE COURT:  Okay.

18         MR. BANICH:  -- senders and recipients sign.

19         THE COURT:  All right.

20         MR. BANICH:  And that's fine.

21         THE COURT:  That's fine.

22         MR. BANICH:  I mean, that's --

23         THE COURT:  And that's clearly not a waiver of the

24    privilege.

25         MR. BANICH:  That is --

Page 75

1          MR. CLARK:  That's fine.

2          THE COURT:  Okay.

3          MR. BANICH:  Yeah, we will do.

4          MR. SMITH:  And then the second --

5          THE COURT:  Okay.

6          MR. CLARK:  You know, Your Honor, I'm sorry if the

7    papers -- if we didn't make clear our objection -- our like,

8    dispute about the notion that we think the facts underlying

9    the opinions or the facts that are referenced in the

10   privileged log, we think under 26(b)(3) those are

11   discoverable.

12         THE COURT:  No, but that's a different point.

13   Maybe I wasn't clear how I started this argument off.  Rule

14   26 is a mechanism for compelling discovery of otherwise --

15   of privileged material.  And you made that point clearly,

16   and I've addressed it.  There's a separate argument that I

17   don't believe was made, and I wanted to make sure, and I

18   think I have the answer, it wasn't.

19         It could be sometime in the future potentially,

20   but it wasn't made in this motion, that the information

21   you're seeking in document request number three and in

22   particular as it pertains to the documents that are

23   described on the privileged log, isn't in fact privileged at

24   all.  That's a separate point.  And I don't think that point

25   was raised.  I think that --

1           MR. CLARK:  I understand.  I'm sorry.  Yeah.

2     Sorry, Your Honor.  I misunderstood.

3           THE COURT:  Okay, all right, very well.  Okay.  I

4     have before me a motion under --

5           MR. CLARK:  I'm sorry, Your Honor.  I'm sorry.

6           THE COURT:  Oh go ahead.

7           MR. CLARK:  Sorry.  One more.  Is the Court going

8     to issue and order or --?

9           THE COURT:  Yeah, I'm going to give you my ruling.

10          MR. CLARK:  Okay.

11          THE COURT:  And then I'll ask you to provide the

12    order.

13          MR. CLARK:  Understood.

14          THE COURT:  That's consistent with my ruling.

15          MR. CLARK:  And so, you'll do that in a separate -

16    -

17          THE COURT:  I'm going to do it right now.

18          MR. CLARK:  Okay, I'm sorry.

19          THE COURT:  And in bankruptcy cases, since we

20    don't have magistrates to help us out --

21          MR. CLARK:  (indiscernible) --

22          THE COURT:  -- I rule about 99 percent of the time

23    from the bench because otherwise, their work just wouldn't

24    get done and people need propped answers, if I could give

25    them to them.  So I have before me a motion by the defendant

Page 77

1    in this adversary proceeding, WINIADaewoo that's W-I-N-I-A-

2    D-a-e-w-o-o, Electronics America under Federal Rule

3    Bankruptcy Procedure 7037, which incorporates Federal Rule

4    of Civil Procedure 37, to compel document production and

5    interrogatory responses.

6          We've resolved the aspect of the motion that seeks

7    to compel responses to the movants' interrogatories'' number

8    5 and number 5 as set forth on the record, which will simply

9    be providing the same information that is on the privileged

10   log that's attached as an exhibit to the motion.  And the

11   parties have focused, therefore almost entirely, except for

12   resolving that point, on the motions request for production

13   number 3, which seeks documents concerning the "due

14   diligence evaluation" conducted by plaintiff referenced in

15   Paragraph 21 in plaintiff's complaint, which is also

16   referenced in Paragraph 22 of the complaint and arguably

17   dealt with in Paragraph 17 of the underlying complaint.

18          The Plaintiff's objection to the motion is

19   premised on the ground that the documents that have been

20   withheld, which again are on the privileged log that I've

21   already referenced, are in fact properly withheld on the

22   basis of privilege, and that the production of the documents

23   is barred in addition by Bankruptcy Rule 7026, which

24   incorporates Federal Rule of Civil Procedure 26(b)(3).

25          The parties have primarily focused on the

Page 78

1    applicable law here being federal law, which is in fact what

2    they should've done.  As the federal common law privileges

3    applies, when federal law determines the substantive rights

4    of the parties, which is the case here, given that the

5    underlying lawsuit is a creature of the Bankruptcy Code

6    wholly, i.e., the avoidance of preferential transfers under

7    Section 547 of the Bankruptcy Code.

8          See Drennan v. Certain Underwriters at Lloyd's of

9    London (In re Residential Capital, LLC) 575 B.R. 2935

10   Bankruptcy S.D.N.Y. (2017).  The record I think clearly

11   reflects that the motion does not assert that the work

12   product and attorney/client privileges don't pertain to the

13   documents listed on the privileged log.

14         I.e., the motion does not dispute any of the

15   elements of those applicable privileges as set forth in

16   Upjohn Company v. United States, 449 U.S. 338, 390, 1981, or

17   the -- as to the attorney/client privilege or the work

18   product privilege as originating with Hickman v. Taylor, 329

19   U.S. 495, 510-11 (1947).

20         Rather, the motion seeks to compel discovery of

21   the documents under either a theory as that Federal Rule of

22   Civil Procedure 26(b)(3) is applicable to the documents

23   listed on the privileged log, or by a theory of waiver.  The

24   first theory, again, is based on Rule 26(b), and it provides

25   that with regard to trial preparation, that is the basis for

Page 79

1    the withholding of almost all of the documents here.

2              "Ordinarily, a party may not discover documents

3    and (indiscernible) things that it prepared in anticipation

4    of litigation or for trial by or for another party or it's

5    representative, including the other party's attorney,

6    consultant, surety, (indiscernible) insurer or agent."

7              But subject to Rule 26(b)(4), those materials may

8    be discovered if they are otherwise discoverable under Rule

9    26(b)(1), and the party shows that it has substantial need

10   for the materials to prepare its case and cannot, without

11   undue hardship, obtain their substantial equivalent by other

12   means.

13             We are not talking here about expert witness

14   preparation or materials, which is covered by 26(b)(4).

15   What we are talking about here is whether the documents on

16   the privileged log fit into the exception in Rule

17   26(b)(3)(a).

18             Now I should note before proceeding that that rule

19   applies only to what would normally be viewed as the

20   attorney -- as the work/product privilege and not the

21   attorney/client privilege.  And certain of these documents

22   are claimed to be protected under the attorney/client

23   privilege.

24             But as to the extent that the attorney work or the

25   work product privilege is relied upon, one first needs to

Page 80

1  determine whether the materials are relevant, which is

2  generally the requirement for Rule 26(b)(1), particularly

3  here, where there's no objection based on burdensomeness or

4  any sort of balancing analysis.

5          And then, also one needs to determine whether

6  there is a substantial need for the materials for the

7  defendant to prepare its case, and whether without undue

8  hardship, they could be obtained or they're substantially

9  equivalent be obtained by other means.

10          The materials are relevant to a new provision of

11  the bankruptcy code, new based on the most recent amendments

12  to the code from 2019.  The Congress in those amendments

13  added language to the preference avoidance provision of the

14  Bankruptcy Code Section 547 of Title XI.

15          It stated now in the introductory clause to

16  Section 547(b) in relevant part, the Trustee may, and then

17  here is the new language, "based on reasonable due diligence

18  in the circumstances of the case and taking into account a

19  party's known or reasonably knowable affirmative defenses

20  under Subsection C, avoid any transfer of an interest of the

21  Debtor in property."

22          And then it goes on to list the elements of a

23  preferential transfer in the rest of Section B of 547, and

24  then the defenses in Subsection C.  As this provision is

25  new, there are not a lot of cases construing it, but they do

Page 81

1    state a common theme, which is also well-stated by the

2    leading treatise on Bankruptcy Law, Collier on Bankruptcy,

3    which states in Paragraph 547.02(a), "One can only speculate

4    about the reasons for the change.  The most plausible

5    explanation is that it seems to have been the practice for

6    Chapter 11 liquidating trusts to employ what are called in

7    the vernacular preference mills.

8            The same practice may also be prevalent in large

9    Chapter 7 cases.  These entities pursue preference actions

10   for the Trustee and take a percentage of the recovery.

11   Their business model is simple.

12           They take the list from the Debtor's statement of

13   affairs of all payments the Debtor made in the 90 days

14   before bankruptcy and filed preference actions against all

15   the recipients without undertaking any investigation of the

16   merits of the causes of action, such as whether the transfer

17   was ordinary course, whether it was COD or otherwise a

18   contemporaneous exchange or any other defense.

19           That they file adversary proceedings in the home

20   court, the defendants have to hire a distant counsel to

21   defend.  And this becomes very expensive to defend the

22   action and makes economic sense for the defendants to settle

23   for nuisance value or the cost of defense."

24           Again, that's at 5 Collier on Bankruptcy,

25   Paragraph 547.02(a).  The reason one has to speculate for

Page 82

1    the reasons for the change is that there's no relevant

2    legislative history for this amendment, although it also was

3    discussed in the American Bankruptcy Institute Commission to

4    study the reform of Chapter 11 at Pages 148 - 151 2014,

5    available at https://abiworld.appdocbox.com.

6            The limited case law is not clear as to whether

7    reasonable due diligence is in fact an element of the cause

8    of action, although it is stated as an introduction to the

9    cause of action.  One Court has concluded it is.  Husted v.

10   Taggart (In re ECS REF. Inc.) 65 V.R. 425, 457-58 (E.D. Cal.

11   2020).

12           Others have stated that they're simply not sure,

13   and don't need to decide in the particular context where the

14   issue arose.  See Solars v. Anixter -- A-n-i-x-t-e-r -- Inc.

15   (In re Trailhead Engineering LLC) 2020 BNKR Lexus 3547 at

16   19-20 (BNKR S.D. Texas December 21, 2020) and Faulkner v.

17   Lone Star Brokering LLC (In re Reagor -- R-e-a-g-o-r --

18   Dykes -- D-y-k-e-s -- Motors LP), 2021 BNKR Lexus 1643 at

19   Pages 5-7 (N.D. Texas June 18, 2021).

20           Those two cases, as was the case also with the

21   Trail -- I'm sorry, the ECS REF Inc. involved motions to

22   dismiss, and they focused on the language in the complaint.

23   The two Texas cases that I have cited both focused on more

24   than conclusory allegations of conducting due diligence and

25   focused on that the Trustee had reviewed the Debtor's bank

Page 83

1    and (indiscernible) records, invoices relating to the

2    alleged transfer, correspondence of irrelevant contract.

3          All to show that a level of discretion in bringing

4    the lawsuit was involved, i.e., it was not the type of

5    preference mill activity described in the Collier quote.

6    This is certainly a consistent interpretation with the

7    statute itself, which again simply says the Trustee may,

8    based on reasonable due diligence in the circumstances of

9    the case, and taking into account parties' known or

10   relatively knowable affirmative defenses, avoid a

11   preferential transfer.

12         Congress did not say that the reasonable due

13   diligence have resulted in a conclusion of a, for example,

14   percentage likelihood of recovery or any likelihood of

15   recovery at all for that matter.  But simply that there was

16   a reasonable amount of due diligence taken, including with

17   respect to available defenses, which in fact can be taken by

18   looking at the underlying facts for those defenses with the

19   legal context of them as set forth in Section 547 of the

20   Bankruptcy Code.

21         That would involve more than just getting a

22   payment run of payments made during the 90 days before the

23   commencement of the Bankruptcy case, but also look at the

24   records to show that there was -- payment was on account of

25   (indiscernible) the debt, and that it was not subject to a

Page 84

1    defense, unless the defense was taken into account in

2    bringing the lawsuit.

3            There is a suggestion in the motion that the very

4    operation of the statute itself in essence requires

5    disclosure of the actual due diligence that was done,

6    including the underlying analysis as to the merits, both the

7    preference claim and the defense itself.

8            I do not read the statute that way at all.  It is

9    processed based, not a statute based on the underlying

10   substance of the analysis.  And I believe the case law has

11   interpreted it that way as well.  I do so not only based on

12   the plain language of the statute and the albeit limited

13   case law, but also upon the fundamental importance of the

14   attorney/client privilege and the work/product privilege and

15   their long-standing nature.

16           See, for example, Pritchard v. County of Eerie (In

17   re County of Eerie) 546 F3d 222, 228 (2nd Cir. 2008), which

18   discusses the importance and long-standing nature of the

19   attorney/client privilege, and in light of that and its

20   purpose, the need to read new waivers or new assorted

21   waivers of the privilege narrowly or carefully.

22           It is also well recognized as a principle of

23   statutory interpretation in addition to those two points,

24   that when interpreting a statute that is asserted to have

25   substantially changed a regulatory or legislative scheme,

Page 85

1    the Court should assume that Congress did not hide elephants

2    in mouse holes.

3              Epic Systems Corp. v Lewis, 136 Supreme Court

4    1612, 1628 (2008).  And frankly, I believe it would be

5    shocking here if Congress meant a waiver of the privilege so

6    that the actual merits of the due diligence analysis would

7    be required to be disclosed given the legal nature of that

8    analysis as a result of the new language added to Section

9    547(b).

10             Again, it's much more likely and a reasonable

11   interpretation given the plain meaning of the statute and

12   the foregoing case law and principles that the statute

13   requires a process evaluation both in terms of the

14   allegations of the complaint and ultimately at trial.

15             So the information that a defendant would need

16   here for purposes of Rule 26(b)(3)(a)(ii), where it must

17   show that it has a substantial need for the materials to

18   prepare its case and cannot without undue hardship obtain

19   their substantial equivalent by other means, is a need to

20   respond to the assertion that as a process matter the

21   plaintiff engaged in reasonable due diligence for purposes

22   of Section 547(b).

23             That information really is within the control of

24   the plaintiff.  And so, therefore, the second clause of (ii)

25   would apply.  However, the need only really applies to the

Page 86

1    process point, not to the analysis, the ultimate percentage

2    or other analysis of the merits or the recovery value of the

3    claim.  It rather needs to go only to the process.

4              In any event, given the nature of that analysis,

5    which would be opinion work product, it would in all

6    likelihood and in any event not be subject to discovery

7    because of the case law pertaining to discovery of opinion

8    work product and the application of Rule 26(b)(3)(B), which

9    states that if the Court orders discovery of those

10   materials, i.e., the materials covered in 3A, it must

11   protect against disclosure of the mental impressions,

12   conclusions, opinions or legal theories of a party's

13   attorney or other representative concerning the litigation.

14             The Courts have been consistent in saying that the

15   disclosure of such information, if warranted at all,

16   requires a higher standard of a highly persuasive showing or

17   extraordinary justification to secure its release.  See, for

18   example, United States v. Petit -- P-e-t-i-t -- 438 F.3d

19   212, 215 (S.D.N.Y. 2020).

20             On the other hand, it appears to me that the

21   defendant is entitled to a redacted version of the

22   assertively privileged materials, which would show the

23   headings, which would indicate the process that the

24   Plaintiff went through in conducting its due diligence.

25             It's understood, I believe, that the plaintiff

Page 87

1    intends to rely upon the privileged log in part for showing

2    its compliance with the new clause in Section 547 pertaining

3    to due diligence.  And I believe it may well want to rely

4    also as evidenced on the headings in those materials, which

5    may mean for admissibility purposes to be admitted

6    separately.

7           Obviously, the headings would not include -- and

8    if for some reason they do, they should be redacted under

9    Rule 26(b)(3)(B) in a opinion conclusion or legal theory,

10   but simply show the process pursuant to which the analysis

11   was done to serve the due diligence element.

12          The other basis for the motion is a waiver theory.

13   There are, I believe three different theories of waiver that

14   might be applicable here.  But I conclude that none of them

15   apply except arguably as to what I've required anyway under

16   Rule 7026(b)(3)(A).

17          First, a waiver of the privilege, whether it's

18   attorney/client or work/product is recognized where the

19   party asserting the privilege has nevertheless used the

20   privileged information in an offensive way.

21          The Courts frequently make the distinction between

22   using the privilege only as the shield and not also as a

23   sword.  A subset of that waiver argument is the so-called

24   selective use, where a part of the privileged material is

25   used, but not all of it.

Page 88

1           And a third is the so-called at issue doctrine, to

2    the extent that it may apply in the federal case law as

3    opposed to where it clearly applies to the New York State

4    Case Law.  Here, the substance of the due diligence

5    materials is not being used offensively, nor is it at issue

6    because the at issue rule generally applies to the substance

7    of the (indiscernible) privileged matter being placed at

8    issue.

9           But there is no issue of the substance, as I read

10   Section 547, to the extent it requires reasonable due

11   diligence.  Again, that is a process point as opposed to an

12   analysis of the substance of the due diligence, where it

13   requires a process showing as opposed to a showing of the

14   substance of the due diligence, the actual evaluation that

15   was conducted, as a process matter needs to be shown, but

16   not the outcome of that evaluation.

17          In that sense, it's also clear that the documents

18   are not being used selectively.  They're only being used to

19   the extent they're relevant to the actual issue raised by

20   547(b)'s new language.

21          And finally, given that they're not being used

22   offensively, it is part of the underlying issue.  And it

23   would therefore not be unfair to preclude the movant's

24   access to the withheld information, since it truly is not an

25   issue in this litigation and not being placed at issue.

1          See generally, in addition to the previous cases

2    cited, NYU Winthrop Hospital v. Microbion Corp. 405 F3d 387

3    (E.D.N.Y. 2019).  In re Residential Capital LLC, 536 B.R. at

4    Pages 146 - 148.  And Pereira -- P-e-r-e-i-r-a -- v. United

5    Jersey Bank 1997 U.S. District Lexus 19751 (S.D.N.Y.

6    December 11, 1997).

7          And except to the extent subsequently narrowed as

8    to waiver by Pritchard v. County of Eerie 546 F.3d 222.

9    Granite Partners, LP v. Bear Stearns & Co. 184 FRD 49, 55

10   (S.D.N.Y. 1999).  I find the Granite Partners and

11   Residential Capital cases particularly instructive here.

12         Both of them I think focus closely on what is in

13   fact at issue in the litigation, and I believe lead to the

14   conclusion that I've reached, which is that where the issue

15   is a process issue as opposed to a legal conclusion

16   underlying a defense, which is I believe the case here, as

17   was also the case in ResCap.

18         The at issue waiver doesn't apply.  So I will

19   require the disclosure of the headings to the documents

20   listed on the privileged log.  It has been argued that the

21   privileged log itself is enough and that the headings

22   therefore don't need to be required.

23         But I believe it to be at least likely enough that

24   the plaintiff will want to introduce the headings on the

25   documents that -- into evidence that it should be provided

1   or they should be provided now to the movant.  I stated

2   during oral argument that I would like to confirm that the

3   documents are what they say they are and the privileged log,

4   given the limited number of those documents, I think that's

5   warranted here, although it may be overkill.

6           And to minimize the burden, all that needs to be

7   produced to me is the cover page of the respective documents

8   and the portion that applies to the defendant here,

9   WINNIADaewoo.

10          So I'm going to ask Mr. Clark, the movant's

11   counsel, to prepare that order.  You don't need to recite

12   any of my rulings or the -- I mean, I'm sorry, the bench

13   ruling behind it.  You can simply refer to the bench ruling

14   set forth on the record of the hearing and then state what

15   I've -- that I've denied the motion except as set forth

16   below.  And then set forth where I have granted it or how I

17   have granted it.

18          You don't need to formally settle that order on

19   Mr. Banich, Mr. Clark, but you should run it by him before

20   you email it to chambers, so he can make sure it's

21   consistent with my ruling.  And you should copy him

22   obviously on the email to chambers.

23          MR. CLARK:  Okay.

24          THE COURT:  I think you --

25          MR. BANICH:  Can I ask a clarification question?

1              THE COURT:  Yes, go ahead, Mr. Banich.

2              MR. BANICH:  Thank you.  I'm sorry.  Thank you.  I

3    understand your ruling regarding the redacting of production

4    of the redacted documents that pertain to the spreadsheets.

5    We did also withhold emails.  And I don't hear your ruling

6    to be pertaining to the emails that are withheld --

7              THE COURT:  Well, those are attorney/client, so I

8    don't --

9              MR. BANICH:  Right.

10             THE COURT:  -- think that's covered by Rule 7026.

11   I'm just referring -- at this -- in this ruling, I'm

12   referring only to the work product.  If it's

13   attorney/client, Rule 7026 doesn't apply and I've found that

14   there's no waiver.

15             MR. BANICH:  Okay.

16             THE COURT:  So --

17             MR. BANICH:  So just the spreadsheet --

18             THE COURT:  Right.

19             MR. BANICH:  Okay.  That's fair.  I understand.

20             THE COURT:  Okay.

21             MR. CLARK:  And so that's -- okay.  And then,

22   there was also the interrogatories?

23             THE COURT:  Yes, that's -- that will be in the --

24   you put that in the order, too.

25             MR. CLARK:  Okay, okay.

1          THE COURT:  Yeah.  Good -- as I -- you know,

2     consistent with what I've said needs to be disclosed in the

3     answers to those interrogatories.

4          MR. CLARK:  Okay.  All right, thank you, Your

5     Honor.

6          THE COURT:  Okay.  Thank you both.  All right.

7     The last matter on the agenda, and I know Mr. Smith has been

8     patiently waiting for this, is Item 4.  It is James Smith's

9     motion to extend the time to appeal the Court's order

10    granting the Debtor's objection to his claim in this case,

11    his proof of claim in this case.  So I have --

12         MR. SMITH:  Yeah --

13         THE COURT:  I -- just so both of -- both sides

14    know, I have reviewed the motion, and the Debtor's objection

15    to it.  So I have the benefit of that.  And I'm happy to

16    hear brief oral argument.  But again, the oral argument

17    needs to focus on the particular requirements to be shown

18    for granting a motion to extend the time to appeal an order,

19    which are set forth in Bankruptcy Rule 8002(d)(1).

20         So that's really what I'm focusing on here because

21    that -- that's what governs the determination of this

22    motion.  I don't have to hear oral argument.  The parties

23    have laid out their positions and their pleadings, but I'm

24    happy to hear brief oral argument.  So Mr. Smith, you are --

25    you have the burden of proof here as to whether this

Page 93

1    standard and Rule 8000(d)(2)(i) is satisfied, so you should

2    go first.

3              MR. SMITH:  Okay.  I felt that the motion for me

4    to be able to file as for an extension of time was literally

5    apparent in Paragraph 4, Question 4 or Answer 4, where it

6    says, "On the 25th, Mr. Smith failed (indiscernible) at the

7    hearing."

8              And nonetheless, the Court reviewed the

9    consideration and considered to give the 23rd omnibus

10   objection to the client because of the fact that he wasn't

11   there or wasn't able to give an answer to any of their

12   rebuttals or wanted (indiscernible) with answers for my

13   paperwork.

14             So I think just based off of them just trying to

15   move the case along without actually giving me a chance to

16   participate based on early recess, I'm not sure what

17   happened on that day.  But it didn't involve me not being

18   able to appear because of COVID-19, basically was the cause

19   to that.

20             THE COURT:  Well, did you have COVID-19 or --?

21             MR. SMITH:  No, but due to COVID-19 and

22   coronavirus, there was no way for people to actually make it

23   to New York.  What do you mean, if I've been tested for it?

24             THE COURT:  Well, it -- just that the Court was

25   holding hearings.  This hearing was held at that time on May

Page 94

1    25 --

2           MR. SMITH:  No, not at that --

3           THE COURT:  -- by telephone.

4           MR. SMITH:  Yes sir.  No, it has -- somehow, it

5    had replaced it in early recess, and then it went straight

6    to -- from the 18th to the 25th, there was really -- to me,

7    I don't know.  I tried to log in and I was having the

8    hardest time getting like logged in and I was just told that

9    I would be able to -- since I missed it, I would be able to

10   get the transcripts and also file an appeal.  I couldn't

11   read the document that I had sent, so I had to literally be

12   patient and try to come up with the best solution to

13   resubmit it.

14          THE COURT:  Right.  Well, why don't you tell me,

15   what is it that you would have said or are saying?

16          MR. SMITH:  Basically, I was going to say that

17   based off of the information that I have supplied, the

18   company basically has given me the -- I think it's called an

19   -- I apologize.  It's called an administrative claim.  The

20   only reason why I was unable to reflect off of a payment

21   from Weil, Gotshal and Manges was because they keep

22   questioning everyone's documents for legitimacy.

23          And I was told that they were just to pay out

24   these documents.  And as a senior director for Sears Roebuck

25   & Company as a consultant, I do find it very odd that I did

1   turn in the same documents that sometimes they do ask for

2   again, and try to think that they didn't receive them.

3           And that's why I had to make sure that the judge

4   received a full set of what I have already sent.  And I just

5   followed it up with the Court to make sure that they had

6   reflected on a way to follow.

7           THE COURT:  Okay.  Well, I have what -- I have all

8   of the documents that have been filed --

9           MR. SMITH:  Yes.

10          THE COURT:  -- that were filed as part of your

11  claim.

12          MR. SMITH:  Yes sir.

13          THE COURT:  And I had them back at the May

14  hearing, too.

15          MR. SMITH:  Right.  So basically what I wanted to

16  let them know was -- is I just wanted to let them know that

17  Sears basically supplies these documents and I haven't been

18  able to make any of my, you know, any money off of my

19  participation and basically because they have held up my

20  paycheck with type of situations like these.

21          And I just don't understand why Sears keeps

22  vouching for my employment and there's always some type of

23  delay.  I'm not sure and I don't know why they didn't call

24  the law firm that literally states that they would verify

25  over a billion dollars, but up to a billion dollars if

Page 96

1   necessary in verified funds for the overall inclusion into

2   the committees that literally sees over those debts so they

3   could be able to cross verify the information.  And I

4   thought I saw the same information for (indiscernible).

5             THE COURT:  Okay.

6             MR. SMITH:  As far as the statement.

7             THE COURT:  All right.  Okay, thank you.

8             MR. LITZ:  Good afternoon, Your Honor.  Dominic

9   Litz, Weil, Gotshal & Manges on behalf of the Debtors.  Can

10  you hear me all right?

11            THE COURT:  Yes.

12            MR. LITZ:  Thank you, Your Honor.  Your Honor, you

13  noted at the outset this is a hearing on Mr. Smith's motion

14  to extend time to file a notice of appeal.  I'm happy to

15  respond to Mr. Smith's allegations about the May 25th

16  hearing, where I feel like our position was (indiscernible)

17  out our papers in the objection, and our response to Mr.

18  Smith reply and the record that was set forth at the May

19  25th hearing.

20            However, going back to what Mr. Smith said, excuse

21  me, about the Debtor's objection to this motion, I would

22  just like to re-read Paragraph 4 to correct the record where

23  it notes on May 25th, 2021, Mr. Smith failed to appear at

24  the hearing.  Nonetheless, the Court reviewed and considered

25  Mr. Smith's response.

1         And at the hearing, the Court sustained the 23rd

2    omnibus objection and disallowed and expunged the claims in

3    full.  The Court ruled on the substance of the claims or

4    lack thereof and did not rule against Mr. Smith based on his

5    failure to appear at the hearing.

6         The Court found that the claims lacked merit and

7    Mr. Smith's claims (indiscernible) response lacked

8    credibility.  Your Honor, I don't think there's much more

9    that I need to go into on the merits of the claims.

10        With regards to Mr. Smith's motion that's before

11   the Court today, the Debtor's position is that he has failed

12   to prove excusable neglect, which is required by Bankruptcy

13   Rule 8002(d)(1)(b) to have the Court grant an extension of

14   time to file a notice of appeal.  I'm happy to answer any

15   questions Your Honor has.

16        THE COURT:  Okay.  All right, thank you.  All

17   right.  I'm going to give you my ruling on this motion now.

18   I have before me a motion by Mr. Smith for an extension of

19   his time to appeal my order that disallowed his proof of

20   claim filed in this case.  The timing here is important.  I

21   signed that order on June 7, 2021.

22        That followed a hearing on the Debtor's claim

23   objection, which took place on May 25, 2021.  The normal

24   time to file an appeal under Bankruptcy Rule 8002 is 14 days

25   after the date of the order, which would've been June 21,

1   2022.  However, Bankruptcy Rule 8002 provides an -- in

2   Paragraph D, for an extension of the time to appeal.

3           It states as except as provided in Subsection

4   (d)(2), which is not relevant here, the Bankruptcy Court may

5   extend the time to file a motion -- I'm sorry -- to file a

6   notice of appeal upon a party's motion that is filed (b)

7   within 21 days after the time prescribed by this rule, i.e.,

8   21 days after the 14 days provided for an appeal.

9           And then, the rule goes on to say, "If the party

10  shows excusable neglect."  Here, the motion was filed on the

11  21st day after the 14 days for an appeal as of right under

12  Rule 8002(a)(1), which is technically within the deadline

13  set forth in Rule 8002(d)(1).

14          The rule, as I quoted it, permits the motion to be

15  granted only if, again, the movant, Mr. Smith, shows

16  excusable neglect for his not having previously timely filed

17  his appeal.  The Bankruptcy Court is the court to decide

18  this issue as opposed to the District Court, where the

19  appeal might be filed, see Joslin V. Wechsler -- W-e-c-h-s-

20  l-e-r -- (In re Wechsler) 246 B.R. 490, 492 (S.D.N.Y. 2000).

21  And In re Enron Corp. 364 B.R. 482, 486 (S.D.N.Y. 2007).

22  Both of which cases also note that the rule requires a

23  showing of excusable neglect.

24          The Supreme Court addressed the meaning of

25  excusable neglect in Pioneer Investment Services Company v.

1    Brunswick Associates, LP, 507 U.S. 380 at 387 through 88 and

2    then at 395 1993.  First, the movant must show that its

3    failure or his failure in this case to file timely

4    constituted neglect as opposed to willfulness or knowing a

5    mission.

6           Neglect generally would be attributed to a

7    movant's inadvertence, mistake or carelessness.  I don't

8    believe here that Mr. Smith's failure to file his appeal

9    within the 14 days prescribed by Rule 8000 (2)(a)(i) was a

10   matter of a conscious choice or knowing act, but rather was

11   due to inadvertence or carelessness.  But that's just the

12   first prong of the standard.

13          After establishing neglect as opposed to

14   willfulness or knowledge of the bar date or the deadline and

15   the failure to show any unknowing basis for neglecting it,

16   the movant must show by a preponderance of the evidence that

17   the neglect was "excusable".  That analysis is to be

18   undertaken on a case by case basis, that is based on the

19   particular facts of the case.

20          Although the Court is guided by and makes the

21   determination balancing the following factors: A, the danger

22   of prejudice to the Debtor; B, the length of the delay and

23   whether or not it would impact the case; C, the reason for

24   the delay; and in particular, whether the delay was within

25   the control of the movant; and D, whether the movant acted

1    in good faith in a 395.

2           However, inadvertence, ignorance of the rules or

3    mistakes construing the rules do not usually constitute

4    excusable neglect, Midland Cogeneration Venture LP v. Enron

5    Corp (In re Enron Corp), 419 F3d 115, 126, 2nd Cir. 2005.

6    In that case, the Second Circuit held, "We have taken a hard

7    line in applying the pioneer test.  In a typical case, three

8    of the pioneer factors -- the length of the delay, the

9    danger of prejudice and the movant's good faith usually

10   weigh in favor of the parties seeking the extension."

11          We have noted, though, that we and other circuits

12   have focused on the third factor, the reason for the delay,

13   including whether it was within the reasonable control of

14   the movant.  And we've cautioned that the equities will

15   rarely if ever favor a party who fails to follow the clear

16   dictates of the Court rule.

17          And that where the rule is entirely clear, we

18   continue to expect that a party claiming excusable neglect,

19   will, in the ordinary course lose under the pioneer test.

20   And that's not -- and thus, not get the extension.  The

21   Courts have made it clear that the foregoing law applies to

22   pro se litigants like Mr. Smith as well as to those who have

23   lawyers, as stated in In re Enron Corp. 364 B.R. at 488,

24   simply to inspire a pro se litigant of the applicability of

25   an expressly stated time limitation does not constitute

Page 101

1    excusable neglect.

2            Citing Riedel -- R-i-d -- R-i-e-d-e-l v.

3    (indiscernible) Midland Bank 1997 U.S. District Lexus 4551

4    at Page 2 (N.D.N.Y April 10, 1997).  Here, I've reviewed

5    carefully Mr. Smith's motion and it does not set forth a

6    basis that would establish excusable neglect.

7            He has stated that he wants more time to obtain

8    counsel to help him on an appeal or to help him to

9    understand his position and to look into the cases before

10   choosing whether to dismiss them or not.  Under the

11   foregoing case law, that does not constitute a reasonable

12   excuse for the delay here and would require the denial of

13   the motion.

14           In addition, while I believe clearly that Mr.

15   Smith has acted in good faith, the length of the delay here

16   and the danger of prejudice to the Debtor are both also

17   points that argue in favor of denying the motion.

18           That's not because simply the fact that the Debtor

19   would have to deal with an appeal, but rather, given the

20   nature of the claim, which is of enormous size, over a

21   billion dollars, and what I believe to be the very clearly

22   lacking nature of the proof for the claim.

23           I understand and regret that Mr. Smith did not

24   attend the May 25 hearing.  People always want to be heard,

25   and I have heard Mr. Smith today on the merits of his claim.

Page 102

1    But it is clear to me, based on my recollection of the

2    hearing, as well as my review of the transcript of that

3    hearing, that particularly pages 17 through 19 of that

4    transcript, that I did not rule on the basis of his

5    nonappearance.

6           I did not treat this as a default judgment.  In

7    other words, rather, I based my ruling on my review of the

8    claim objection, which I believe clearly shifted the burden

9    to the extent the claim was a general unsecured claim, onto

10   Mr. Smith.  And that was a burden that he held, in any

11   event, with regard to the claims assertion that it was

12   secured or administrative.

13          And the documents attached to the claim and the

14   claim itself simply do not carry that burden.  And his

15   reference to them today and discussion of them similarly

16   does not carry that burden.  Again, I've reviewed those

17   documents.  I reviewed them before the May 25th hearing, and

18   I concluded then that they don't state a claim.

19          So therefore, it would in fact be prejudicial to

20   the Debtor to have to pursue an appeal after the deadline in

21   light of the merits here, as well as the impact of having

22   such a large and I believe not meritorious claim hanging

23   over the case.

24          Those are separate reasons for denying the motion,

25   given the Enron cases, however, they're not necessary, since

Page 103

1   I've concluded that the reason for the delay was within the

2   control of Mr. Smith.  So I will ask the Debtor's counsel to

3   submit an order denying the motion for the reasons stated in

4   the Court's benchroom.

5           MR. LITZ:  (indiscernible), we will do so.

6           THE COURT:  Okay.

7           MR. SMITH:  But I do have a question in regards to

8   your (indiscernible) to grant the extension of time.  Adobe

9   scans did not -- literally has a back color drop that

10  (indiscernible) your Court is not able to understand it.

11  And it was literally on a weekday.

12          So the inclusion of the 24-hour military time for

13  me to resubmit the documents based on the fact that I had to

14  literally have someone else do it for me, I did not include

15  that, like the burden of how long it took me to get it done.

16  But it was not very many days after, because I wasn't able -

17  - communicating with your --

18          THE COURT:  Okay.  Well, again, I -- the

19  bankruptcy rules lay out a maximum of 34 days.  And you are

20  within that 34 days, but --

21          MR. SMITH:  Right.

22          THE COURT:  For the last 21, to have the motion

23  granted, you have to show excusable neglect for not having

24  met the 14.  And I -- I'm not able to find that today.  So -

25  -

1          MR. SMITH:  Great.  That (indiscernible) came from

2     the application being faulted because I had the same

3     application error with -- Carvano was also not able to

4     reflect or understand the documents as well.  So I can

5     literally use the Adobe scan application as a cause for

6     documents that can be sent as a PDF through the internet as

7     an email will not come out readable.  And that literally

8     just gave me the reason not to be able to file an extension.

9          They just wanted me to re-submit the documents.  I

10    do have the documents submitted on time, if you really do

11    want to take a closer look.  The documents do reflect on

12    time implementations, but your clerk would not submit them

13    to you for me to get a closer court date until I resubmitted

14    them twice.  So they were clearly readable.

15         THE COURT:  No, but Mr. Smith, the -- it's not the

16    -- it's the motion itself for an extension of time --

17         MR. SMITH:  Okay.

18         THE COURT:  -- that needs to be filed and the

19    appeal itself, which doesn't require a record.  You just

20    filed a notice of appeal, which is a one-page notice.  So --

21         MR. SMITH:  Right.

22         THE COURT:  -- again, I've given you my ruling,

23    and I'm not going to alter it at this point.

24         MR. SMITH:  Okay.  So what was your ruling to not

25    -- so what about the --

Page 105

1          THE COURT:  I denied the motion.  I denied the

2     motion based on the record of today's hearing.

3          MR. SMITH:  Okay.  So are you -- so what does that

4     mean for me to be able to -- do I have to appeal your

5     decision as well today?

6          THE COURT:  Well, my decision is my decision.  And

7     I don't -- I'm not going to give you legal advice as to

8     whether you should appeal or whether you have a right to

9     appeal, but that -- I did lay out my decision today and

10    there'll be an order that memorializes it, that will get

11    added probably later this week.

12          And you should keep a look out for that.  It'll be

13    mailed to you.  It'll be also on ECF, and that will -- if

14    you do have a right to appeal, start your time to appeal

15    that decision.  Not the underlying order.

16          MR. SMITH:  Okay, so what --

17          THE COURT:  (indiscernible) the claim objection, I

18    mean.

19          MR. SMITH:  I am sorry.  Can you say that one more

20    time?

21          THE COURT:  What you will be getting is an order

22    denying your motion for an extension of the time to appeal.

23          MR. SMITH:  Okay.

24          THE COURT:  And --

25          MR. SMITH:  All right.

1          THE COURT:  Obviously there is a -- if there is a

2    right to appeal that, there is a time limit to do that.  But

3    the appeal --

4          MR. SMITH:  Right.

5          THE COURT:  -- would be only from that order.

6    There's not a right to appeal from the order granting the

7    claim objection.  That time has passed.

8          MR. SMITH:  No, the -- sorry, go ahead.

9          THE COURT:  So anyway, I'm going to conclude the

10   hearing at this point.  And I'll look for that order.

11         MR. SMITH:  Okay, sir.  I do have a question.

12         THE COURT:  Okay.

13         MR. SMITH:  I need to make sure that -- so I do

14   have another court date, and it was -- and do I have to -- I

15   am not a lawyer, I don't have --

16         THE COURT:  No, Mr. Smith, you don't have another

17   court date.  What you might be able to do, and I'm not going

18   to give you legal advice, but you might be able to appeal

19   the order that will get entered on denying the motion that

20   we've just been covering.

21         And but that would be just a notice of appeal that

22   you would file.  You don't need a hearing in front of me for

23   that, if you file that notice timely, i.e., within 14 days

24   of the entry of the order.

25         MR. SMITH:  If I find the application for me to

Page 107

1    (indiscernible), then -- the submission number for the day

2    that I turned in the actual paperwork, would you accept that

3    as an on-time filing, because it was filed on time, but

4    (indiscernible) --

5              THE COURT:  No.  No, I'm just dealing with the

6    motion that was filed on the record for that.  So I'm going

7    to have to conclude this hearing, Mr. Smith.  And again,

8    I'll look for the order from the Debtor's Counsel.

9              MR. SMITH:  Okay, yeah.  Have a great day.

10             THE COURT:  Okay, thank you.  And I think that

11   does it for (indiscernible) hearing for today, correct?

12             MAN:  Thank you, Your Honor.

13             THE COURT:  On Sears, the omnibus hearing?

14             MAN:  That's correct.

15             THE COURT:  Great.  Thank you.

16             MR. SMITH:  Do I have another (indiscernible)?  I

17   have another (indiscernible)?

18             (Whereupon these proceedings were concluded at

19   1:22 PM)

20

21

22

23

24

25

1                          I N D E X

2

3                         RULINGS

4                                            Page        Line

5

6    Motion Denied Regarding Redacting of Production of the

7    Redacted Documents                      90          15

8

9    James Smith's motion denied to extend the time to appeal the

10   Court's order granting the Debtor's objection to his claim

11   in this case                            102         24

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    Sonya Ledanski Hyde

7

Digitally signed by Sonya Ledanski Hyde
DN: cn=Sonya Ledanski Hyde, o, ou,
email=digital@veritext.com, c=US
Date: 2021.08.05 15:09:19 -04'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  July 28 2021

### &

**&**  7:3,10 36:14
  37:25 42:25 89:9
  94:25 96:9

### 1

**1**  3:11 15:14 48:18
  70:11 79:9 80:2
  92:19 97:13 98:12
  98:13
**1,067**  18:18
**1,283**  39:24 40:1
**1,788**  14:18
**1.1**  14:16
**1.3**  14:17 20:24
**1.6**  20:23
**10**  65:17 101:4
**10.5**  16:3,10 20:16
**10.7.**  20:18
**100**  69:1
**100,000**  73:7
**10006**  7:13
**10153**  7:6
**102**  20:6 108:11
**10601**  1:21
**10:30**  1:24
**11**  10:8 34:6 35:2
  53:15 59:18 62:22
  81:6 82:4 89:6
**111**  19:9 20:12
**115**  100:5
**11501**  109:23
**12**  28:13,17
**120**  14:19
**126**  100:5
**13**  3:7,9,21 4:4
**1300**  7:19
**136**  85:3
**13th**  25:25
**14**  3:16 32:16
  97:24 98:8,11
  99:9 103:24
  106:23

**146**  89:4
**148**  82:4 89:4
**15**  108:7
**151**  82:4
**1511**  18:17
**15th**  25:22
**16**  3:23 26:14
**1612**  85:4
**1628**  85:4
**1643**  82:18
**17**  4:6 23:19 56:24
  77:17 102:3
**18**  4:11 82:19
**18-23538**  1:3
**184**  89:9
**18th**  94:6
**19**  41:17 93:18,20
  93:21 102:3
**19-20**  82:16
**1947**  78:19
**19751**  89:5
**1981**  78:16
**1993**  99:2
**1997**  89:5,6 101:3
  101:4
**1999**  89:10
**1:22**  107:19

### 2

**2**  3:12 15:15 93:1
  98:4 99:9 101:4
**2.5**  14:13
**20**  4:18 63:20
**20-06982**  1:4 3:3
  3:18 4:1,8,13
**200**  35:14,16
**2000**  98:20
**20005**  7:20
**2005**  100:5
**2007**  98:21
**2008**  84:17 85:4
**2014**  82:4
**2017**  78:10

**2019**  15:24 25:22
  53:1 80:12 89:3
**2020**  15:25 82:11
  82:15,16 86:19
**2021**  1:23 4:15
  82:18,19 96:23
  97:21,23 109:25
**2022**  98:1
**21**  4:15 43:22
  44:12 57:2 77:15
  82:16 97:25 98:7
  98:8 103:22
**212**  86:19
**215**  86:19
**21st**  98:11
**22**  57:3 77:16
**222**  84:17 89:8
**228**  84:17
**23rd**  93:9 97:1
**24**  103:12 108:11
**246**  98:20
**248**  1:20
**25**  17:8 94:1 97:23
  101:24
**25th**  93:6 94:6
  96:15,19,23
  102:17
**26**  46:10 51:9
  53:24 54:22 55:1
  56:4 58:23 66:20
  68:1 69:25 71:5
  71:14,14 75:10,14
  77:24 78:22,24
  79:7,9,14,17 80:2
  85:16 86:8 87:9
**26.1**  21:1
**27**  1:23
**27th**  14:5
**28**  109:25
**2935**  78:9
**2nd**  17:8,21 84:17
  100:5

### 3

**3**  3:12 17:1 18:12
  43:20 46:25 51:9
  53:24 55:1 56:4
  58:23,23 66:20
  68:1 75:10 77:13
  77:24 78:22 79:17
  85:16 86:8 87:7
  87:16
**3,549**  39:23
**300**  1:20 109:22
**31**  18:9
**329**  78:18
**330**  109:21
**338**  78:16
**34**  103:19,20
**35**  62:14
**3547**  82:15
**36.1**  17:22
**364**  98:21 100:23
**37**  16:13 17:22
  23:15 39:14 69:16
  70:11 77:4
**380**  99:1
**387**  89:2 99:1
**390**  78:16
**395**  99:2 100:1
**3a**  86:10

### 4

**4**  3:13 79:7,14
  92:8 93:5,5,5
  96:22
**4,443**  14:9
**4.7**  22:25,25
**40**  14:20,24 19:12
**400**  20:2
**405**  89:2
**419**  100:5
**425**  82:10
**43**  15:20
**438**  86:18
**444**  18:24,24

| | | | |
|---|---|---|---|
| **449** 78:16 | **7** | 42:19 64:22 93:4 | **additional** 14:16 |
| **4551** 101:3 | | 93:11,18 94:9,9 | 15:5 16:3,12 |
| **457-58** 82:10 | **7** 15:5 23:12,19 | 95:18 96:3 103:10 | 20:10 22:20,21 |
| **473** 14:11 | 39:20 41:13 81:9 | 103:16,24 104:3,8 | **address** 13:3 |
| **482** 98:21 | 97:21 | 105:4 106:17,18 | 17:17 24:22 55:4 |
| **486** 98:21 | **7.3** 17:20 | **absent** 35:9 | 67:5 |
| **488** 100:23 | **70** 18:18 | **absolutely** 38:15 | **addressed** 51:25 |
| **49** 89:9 | **70.8** 21:5 | 62:21 | 75:16 98:24 |
| **490** 98:20 | **7026** 77:23 87:16 | **accept** 107:2 | **addressing** 11:21 |
| **492** 98:20 | 91:10,13 | **access** 88:24 | 12:2 52:16 |
| **495** 78:19 | **7037** 77:3 | **accomplished** | **adequacy** 57:25 |
| **5** | **75** 16:16 73:11 | 55:14 | **adjourn** 12:18 |
| | **767** 7:5 | **account** 48:15 | **adjuster's** 65:22 |
| **5** 3:14 21:15 22:22 | **8** | 53:3 57:8 80:18 | **admin** 16:15 |
| 41:18 43:24 44:10 | | 83:9,24 84:1 | 25:11,14 27:22 |
| 46:10,19 48:19 | **8.3** 16:12 17:21 | **accountant** 45:13 | 31:5,6,7,13,22 |
| 69:25 71:5,14,14 | **8.6** 19:4 | **accounting** 54:18 | 32:1 |
| 77:8,8 81:24 | **80** 16:16 | **accrue** 30:3 | **administrative** |
| **5-7** 82:19 | **8000** 93:1 99:9 | **accurate** 109:4 | 14:8,10,14,19 |
| **50** 30:1 | **8002** 92:19 97:13 | **acquire** 38:10,14 | 15:7,8,11 16:20 |
| **50.6** 23:18 42:9,19 | 97:24 98:1,12,13 | **act** 99:10 | 18:19 21:4 22:9 |
| **507** 99:1 | **88** 99:1 | **acted** 99:25 | 23:18 24:23 25:4 |
| **510-11** 78:19 | **9** | 101:15 | 25:23 26:2,3,5,6 |
| **523.7** 41:14 | | **action** 12:12 13:8 | 26:25 27:17 29:14 |
| **536** 89:3 | **90** 81:13 83:22 | 23:12 39:22 56:16 | 30:2,8,18 31:1,18 |
| **546** 84:17 89:8 | 108:7 | 63:11 81:16,22 | 31:20 34:4,16,18 |
| **547** 61:19 66:15 | **900** 7:19 | 82:8,9 | 42:20 94:19 |
| 67:10 78:7 80:14 | **9075-2** 5:14 | **actions** 22:25 | 102:12 |
| 80:16,23 83:19 | **95,000** 73:8 | 39:24 42:16 61:22 | **administrator** |
| 85:9,22 87:2 | **9641** 6:3,6 | 63:2 81:9,14 | 28:23 |
| 88:10,20 | **9647** 5:8,12,21 | **activity** 83:5 | **admissibility** 87:5 |
| **547.02** 81:3,25 | 11:9 | **actual** 23:7 29:1 | **admitted** 87:5 |
| **55** 89:9 | **9648** 5:12,21 | 47:1 60:10 84:5 | **adobe** 103:8 104:5 |
| **56.8** 21:3 | **9664** 6:7 | 85:6 88:14,19 | **adv** 1:4 |
| **575** 78:9 | **9673** 5:23 | 107:2 | **advance** 27:3,7,16 |
| **6** | **9677** 10:21 | **acumen** 55:19 | 28:24 29:3 32:19 |
| | **9680** 14:4 | **ad** 26:3 | **adversary** 3:3,18 |
| **6** 3:15 23:10 43:24 | **99** 76:22 | **add** 34:23 | 4:1,8,13 39:6,25 |
| 44:13 46:12 | **a** | **added** 61:20 | 43:10 56:23 77:1 |
| **6.3** 14:21 | | 80:13 85:8 105:11 | 81:19 |
| **60** 23:13 | **abilities** 22:22 | **addition** 77:23 | **advice** 50:15 |
| **65** 82:10 | **abiworld.appdo...** | 84:23 89:1 101:14 | 105:7 106:18 |
| **67.4** 23:3 | 82:5 | | |
| | **able** 10:14,16 | | |
| | 16:18 27:6 29:4 | | |
| | 31:24 32:2 34:10 | | |

advisors 24:18
advisory 49:16
  50:4
affairs 81:13
affect 55:15
affidavit 3:8 13:1
  52:3
affiliates 11:7
affirmative 53:4,5
  53:8 64:4 80:19
  83:10
afternoon 17:15
  96:8
agenda 10:4,5,6
  10:20,24 11:8
  12:4 36:8 39:2,8
  42:25 92:7
agent 79:6
aggregate 42:13
  68:20
ago 17:8 25:22
  54:21 55:13 67:8
agree 32:9 65:14
  69:7
agreed 30:1
agreement 5:2,16
  28:3 70:22
ahead 11:14,23
  12:7 25:1 55:5
  76:6 91:1 106:8
akin 30:14 36:14
al 1:12 3:4,19 4:2
  4:9,14 10:3
albeit 84:12
alexander 8:16
allegations 82:24
  85:14 96:15
allege 72:6
alleged 83:2
allowed 14:18,22
  15:5,23 18:22,25
  18:25 22:6 64:11

alluded 26:17
  29:25
allyson 9:9
alter 104:23
alternative 12:25
alternatively
  51:10
amended 10:4
  12:23 13:2,14
  67:10,15
amendment 64:1
  82:2
amendments
  61:21 80:11,12
america 1:15 3:4
  3:7,10,19,20 4:2,5
  4:9,11,14 43:1,14
  77:2
american 82:3
amount 11:24
  15:5 16:3,12,15
  19:3,3,14,17 21:9
  21:10 26:20 29:25
  30:2 31:16,17
  57:1,7 68:20 73:2
  73:6 83:16
amounts 17:4
  18:22 19:1,1,2
  20:1 24:5,5,10
analysis 15:4
  49:15,19 50:3,4,7
  50:12 53:15 59:10
  59:23 60:2,24
  61:5 62:4 64:4
  68:21 69:8 70:22
  70:23 72:12 80:4
  84:6,10 85:6,8
  86:1,2,4 87:10
  88:12 99:17
analyzed 56:25
analyzing 56:15
  60:18

anixter 82:14
anker 8:22
announce 17:12
announced 16:1,2
  16:2 17:20,21
announcement
  16:18,23
answer 22:16
  24:24 32:6 38:6
  38:12 40:2 41:23
  42:1 43:16 45:16
  48:17 64:9 69:19
  75:18 93:5,11
  97:14
answered 41:22
  41:24 42:4
answering 74:4
answers 43:3
  76:24 92:3 93:12
anticipate 18:3
anticipation 79:3
anymore 30:6
anyway 72:19
  87:15 106:9
apologize 10:13
  11:24 12:8 28:14
  28:18 38:20 94:19
apparent 93:5
appeal 6:2,6 92:9
  92:18 94:10 96:14
  97:14,19,24 98:2
  98:6,8,11,17,19
  99:8 101:8,19
  102:20 104:19,20
  105:4,8,9,14,14
  105:22 106:2,3,6
  106:18,21 108:9
appear 51:7 61:2
  66:19 93:18 96:23
  97:5
appearances 43:6
appeared 13:8

appears 54:11
  86:20
applicability
  50:11 54:13 55:8
  100:24
applicable 78:1
  78:15,22 87:14
application 60:12
  86:8 104:2,3,5
  106:25
applies 53:22
  55:10 78:3 79:19
  85:25 88:3,6 90:8
  100:21
apply 51:1,14
  54:9 85:25 87:15
  88:2 89:18 91:13
applying 100:7
appointed 25:23
appreciate 16:8
  32:4 36:5 66:11
approach 13:11
  32:9
approving 5:2,15
approximate
  41:15
approximately
  14:11,13,18,21
  16:14 23:13 41:17
april 14:5,11,13
  14:24 101:4
arguably 62:9
  66:24 77:16 87:15
argue 101:17
argued 89:20
arguing 54:22
argument 35:23
  43:8 45:5 47:2
  48:20 50:9 51:8
  51:15 54:24 65:18
  74:3 75:13,16
  87:23 90:2 92:16
  92:16,22,24

[arguments - believe]                                                    Page 4

**arguments** 35:19
51:7,13 67:4
**arose** 15:11 82:14
**aside** 20:15
**asked** 31:23 61:11
**asking** 11:17,25
31:3,25 46:16
50:21,23 64:7
**asks** 44:10,13
**aspect** 43:25 77:6
**aspects** 24:17
40:20 47:14
**assert** 14:21 78:11
**asserted** 19:1,14
20:2,3 22:2,8
63:10 84:24
**asserting** 14:14
47:12 87:19
**assertion** 85:20
102:11
**assertively** 86:22
**assessment** 40:12
60:15
**asset** 5:2,15 24:7
**assets** 5:4,17
20:23 24:6
**assignment** 5:6,19
**assistance** 26:5
31:3,24,24
**associates** 99:1
**assorted** 84:20
**assume** 44:21
53:7 62:13 85:1
**assumed** 36:22
**assuming** 18:6
40:9 59:1 62:5
**assumption** 5:5
5:19
**attached** 57:18
77:10 102:13
**attaches** 56:24
**attachments** 3:11

**attend** 101:24
**attorney** 44:8,19
47:15,17,20,22
48:7 49:2 51:23
53:23 54:7 62:18
66:18 67:11 78:12
78:17 79:5,20,21
79:22,24 84:14,19
86:13 87:18 91:7
91:13
**attorneys** 7:4,11
7:18
**attributed** 99:6
**august** 26:20
**authorized** 12:13
12:14,21 13:9
**authorizing** 5:3,5
5:17,19
**available** 16:24,24
24:11,18 82:5
83:17
**avenue** 7:5
**avoid** 80:20 83:10
**avoidance** 22:25
23:12 39:22 78:6
80:13
**aware** 15:9 24:3

**b**

**b** 2:1 46:10 51:9
53:24 55:1 56:4,4
58:23,23,23 61:19
65:6 66:20,20
67:10 68:1 69:25
71:5,14,14 75:10
77:24 78:22,24
79:7,9,14,17 80:2
80:16,23 85:9,16
85:22 86:8,8 87:9
87:9,16 88:20
97:13 98:6 99:22
**b.r.** 78:9 89:3
98:20,21 100:23

**back** 17:7 38:3,4
53:19 67:7 68:17
69:7 72:12 95:13
96:20 103:9
**backup** 13:16
**balance** 20:13
34:2
**balancing** 80:4
99:21
**band** 57:10
**bane** 8:23
**banich** 8:3 39:5
39:10 43:9,10
44:21,24,24 45:15
45:24 46:4 47:5,5
47:24 48:4,12
49:6 55:3,7 56:20
57:23 58:5,8,11
58:13,16,20 59:2
59:15,20 61:1,12
62:16,21 63:6,9
63:23,25 65:3,12
66:3,4,6 67:3,6
68:3,7,9 69:7
70:20 73:17 74:1
74:12,15,18,20,22
74:25 75:3 90:19
90:25 91:1,2,9,15
91:17,19
**bank** 82:25 89:5
101:3
**bankruptcy** 1:1
1:19 2:3 23:23
76:19 77:3,23
78:5,7,10 80:11
80:14 81:2,2,14
81:24 82:3 83:20
83:23 92:19 97:12
97:24 98:1,4,17
103:19
**bar** 72:8 99:14
**bare** 50:12,16

**barefoot** 5:22
7:15 10:22 11:3,6
11:6,12,14,20,23
12:7,8 13:12,18
13:21,24
**barred** 77:23
**base** 65:7
**based** 49:14 53:2
60:6 66:14 78:24
80:3,11,17 83:8
84:9,9,11 93:14
93:16 94:17 97:4
99:18 102:1,7
103:13 105:2
**basic** 46:9
**basically** 59:9
66:8 72:13 93:18
94:16,18 95:15,17
95:19
**basis** 31:23 32:15
32:17 44:6 55:10
69:4 70:4 71:6
77:22 78:25 87:12
99:15,18 101:6
102:4
**bean** 53:7
**bear** 37:3 89:9
**beginning** 26:20
48:18
**behalf** 3:6,10,22
4:5,10,16 5:22 6:7
12:14 24:23 25:4
96:9
**belief** 22:17
**believe** 23:24 37:6
38:13 40:22 48:4
48:4 54:6 55:14
61:12 69:4,9
75:17 84:10 85:4
86:25 87:3,13
89:13,16,23 99:8
101:14,21 102:8
102:22

**ben** 9:8
**bench** 76:23 90:12 90:13
**benchroom** 103:4
**benefit** 42:11 92:15
**best** 26:21 31:19 31:21 94:12
**better** 21:13 38:21
**beyond** 69:23 70:3 71:10
**billion** 14:13,16 15:15 95:25,25 101:21
**bit** 20:8
**black** 5:10 8:24
**blanket** 69:5
**blow** 66:16 67:11
**blown** 62:17
**bnkr** 82:15,16,18
**board** 22:3
**body** 34:5
**bottom** 19:22 61:4
**bound** 28:2
**box** 22:1
**brands** 5:22
**brauner** 8:4 30:15
**breached** 28:11 28:19 34:12
**break** 18:16 42:19
**breakdown** 17:2
**brief** 10:10 43:8 50:6 54:6 66:1 92:16,24
**briefed** 51:19,20 65:18
**briefing** 43:18
**briefly** 11:8 32:25
**briefs** 52:14 67:14
**bring** 62:12,23 63:2
**bringing** 33:15 83:3 84:2

**brings** 16:13
**brittany** 8:12
**broader** 48:23,24
**brokering** 82:17
**brooks** 8:5
**brought** 41:2
**brunswick** 99:1
**brush** 48:23
**bucket** 27:14 56:8 70:25
**budget** 11:17
**burden** 47:9,10 50:14 55:9 90:6 92:25 102:8,10,14 102:16 103:15
**burdensomeness** 80:3
**business** 27:20 50:5 63:4,14 81:11
**button** 24:14
**buy** 38:4
**buyer** 5:3
**buyers** 5:16

**c**

**c** 7:1 10:1 65:6 69:16 70:11 80:20 80:24 98:19 99:23 109:1,1
**cal** 82:10
**calendar** 27:19
**call** 95:23
**called** 48:6 81:6 87:23 88:1 94:18 94:19
**calls** 30:5,13,19
**camera** 66:10 70:15
**can't** 60:22,24 63:17 64:16 69:16 70:12
**capable** 34:6

**capacity** 51:3,3
**capital** 78:9 89:3 89:11
**care** 22:18 49:22 55:3
**careful** 45:1
**carefully** 84:21 101:5
**carelessness** 99:7 99:11
**cares** 31:8
**carried** 50:13
**carry** 21:2 102:14 102:16
**carvano** 104:3
**cascade** 48:2
**case** 1:3,4 13:8 15:12,13 23:22 25:5,11,15 26:10 26:14 27:14,21 28:1 29:16,17,21 30:11 35:2,11,16 38:13 39:18 40:14 42:9 52:25 53:3 53:13,17 54:5 56:2 59:10 60:19 63:10 64:6,15,18 68:14,19 70:23 78:4 79:10 80:7 80:18 82:6,20 83:9,23 84:10,13 85:12,18 86:7 88:2,4 89:16,17 92:10,11 93:15 97:20 99:3,18,18 99:19,23 100:6,7 101:11 102:23 108:11
**cases** 15:19 49:2 51:21,25 56:5 63:20 76:19 80:25 81:9 82:20,23 89:1,11 98:22

101:9 102:25
**cash** 16:24 20:12 21:1 23:17 24:10 42:8,19
**catchup** 15:22
**categorical** 70:24
**categorically** 64:9 64:10 71:1
**categories** 24:4
**cause** 56:16 82:7 82:9 93:18 104:5
**causes** 81:16
**cautioned** 100:14
**cent** 14:13
**certain** 5:3,6,17 5:19 17:1 28:4 30:1 43:3 78:8 79:21
**certainly** 26:12,20 43:18 46:6 51:12 61:21 65:13,15 66:3 83:6
**certificate** 5:14 12:10,23 13:6,15
**certified** 109:3
**cetera** 51:5
**challenge** 48:20 70:5
**challenged** 57:25 71:4,9,23
**challenging** 23:22 48:20 69:21,21 70:1 71:21
**chambers** 12:9 90:20,22
**chance** 73:11 93:15
**change** 40:17,17 67:20,24 81:4 82:1
**changed** 84:25
**changes** 17:16

[chapter - compliance]                                                        Page 6

**chapter**   10:8 34:6
35:2 81:6,9 82:4
**chart**   18:2,18 19:1
19:22
**checked**   22:1
**checks**   18:8
**chloe**   9:3
**choice**   99:10
**choosing**   101:10
**christopher**   9:12
**cir**   84:17 100:5
**circuit**   100:6
**circuits**   100:11
**circumstances**
53:2,13,16 64:5
80:18 83:8
**cited**   82:23 89:2
**citing**   101:2
**civil**   77:4,24 78:22
**claim**   14:13 21:25
22:1,5 27:17
31:14 34:15 62:23
65:10 70:4 71:6
84:7 86:3 92:10
92:11 94:19 95:11
97:20,22 101:20
101:22,25 102:8,9
102:9,13,14,18,22
105:17 106:7
108:10
**claimants**   34:18
**claimed**   79:22
**claiming**   55:8
100:18
**claims**   5:4,18 14:8
14:10,13,16,19,21
14:22 15:1,8,11
15:15,23 16:17,21
17:8 18:14,17,19
19:6,8,9,12,13,15
19:18,24 20:2,3
20:11,12,15 21:4
21:8,9 22:8 23:18

24:4,16,19,23
25:5,14,24 26:6
28:23 29:14 31:2
31:4,16 32:3
34:17 40:24,25
42:8 68:19 73:1
97:2,3,6,7,9
102:11
**clarification**
90:25
**clarity**   21:12
**clark**   3:6,8,9,16
4:5,6,10 8:20
43:12,13 44:2,2
46:5,11,15,20
49:9,10 51:12
52:13,23 53:10
55:23 58:21 60:2
61:19 68:22 70:13
71:8,12,14 72:3
72:20,23 73:17,20
75:1,6 76:1,5,7,10
76:13,15,18,21
90:10,19,23 91:21
91:25 92:4
**clark's**   69:10
**clause**   61:20
80:15 85:24 87:2
**clear**   5:4,18 13:9
30:19 33:5,6,6
34:12,15 36:19
37:15 47:16 54:5
57:1,7 66:19
69:17 75:7,13
82:6 88:17 100:15
100:17,21 102:1
**clearly**   16:7 56:14
65:20 74:23 75:15
78:10 88:3 101:14
101:21 102:8
104:14
**cleary**   7:10 10:23
11:7

**clerk**   18:8 104:12
**client**   32:10 44:8
44:19 47:15,17,20
47:22 48:7 49:2
51:23 53:23 62:18
66:18 67:11 78:12
78:17 79:21,22
84:14,19 87:18
91:7,13 93:10
**close**   64:11
**closely**   26:4,13
89:12
**closer**   104:11,13
**cod**   81:17
**code**   78:5,7 80:11
80:12,14 83:20
**cogeneration**
100:4
**collaboratively**
26:22
**collect**   24:13
**collier**   81:2,24
83:5
**color**   103:9
**column**   48:5 57:5
57:9,13,14 61:8,9
61:12 65:5,5,6,6,8
68:24,24 71:3
74:16
**columns**   18:25
56:23 61:6 65:9
65:15
**combination**   35:9
42:8 55:19
**combined**   23:17
**come**   12:4 29:17
29:19 31:9 32:14
45:25 94:12 104:7
**coming**   16:6
25:15 41:11 66:8
66:14
**commencement**
52:6 83:23

**comment**   55:14
**comments**   36:10
67:8
**commission**   82:3
**committed**   30:22
**committee**   16:19
29:15 30:16,17
37:9
**committees**   96:2
**common**   30:22
78:2 81:1
**communicating**
103:17
**communication**
49:2
**communications**
12:9 32:1
**company**   38:18
38:19 78:16 94:18
94:25 98:25
**compare**   23:6
40:21
**compared**   22:22
22:25 23:1
**compel**   3:5,9,21
4:3 5:1 39:3,14
43:2 44:4 64:25
77:4,7 78:20
**compelled**   51:9
56:12 67:1
**compelling**   75:14
**complaint**   35:14
35:16 43:22 56:23
58:10 62:5 68:12
72:6 77:15,16,17
82:22 85:14
**completely**   33:9
**complex**   35:13
36:2,15
**complexity**   27:10
35:18
**compliance**   87:2

**complicate** 30:25
**complied** 28:20
  33:9
**component** 49:19
**concern** 13:6 27:5
**concerned** 47:20
**concerning** 43:20
  44:11,15 45:21
  46:14 47:1 77:13
  86:13
**conclude** 87:14
  106:9 107:7
**concluded** 55:11
  55:25 82:9 102:18
  103:1 107:18
**conclusion** 50:5
  60:2,6 64:14,18
  64:19 67:19 68:5
  70:23 83:13 87:9
  89:14,15
**conclusions** 61:10
  61:23 62:10 65:1
  66:21 68:16 86:12
**conclusory** 82:24
**conditions** 17:1
**conduct** 50:4,7
**conducted** 43:21
  59:23 77:14 88:15
**conducting** 82:24
  86:24
**conduit** 31:22
  34:19
**conference** 10:7
  10:19 39:18 43:17
  46:1,7 55:12 58:7
  58:14 69:8 70:7
**conferences** 46:6
**confidentiality**
  28:3 32:21
**confirm** 21:23
  73:22 90:2
**confirmation**
  12:11,15,20,23

13:15 14:6 15:9
  15:20 16:25 18:20
  22:23 23:1,7,8,9
  23:12 24:11 32:15
  33:4 34:13 40:22
  40:25
**confirmed** 10:8
  25:21 29:10 37:11
**confirms** 46:24
**conflicts** 31:13
**congress** 53:11,16
  54:11 58:9 61:21
  62:11,15 63:1,16
  63:17 64:1,2
  66:16 69:5 80:12
  83:12 85:1,5
**connection** 5:7,20
**conscious** 26:12
  99:10
**consent** 15:8
  16:15 26:6
**consideration**
  93:9
**considered** 93:9
  96:24
**consignment**
  22:10
**consistent** 13:13
  23:21 67:13,14
  76:14 83:6 86:14
  90:21 92:2
**constituent** 31:7
**constitute** 100:3
  100:25 101:11
**constituted** 99:4
**constraints** 32:21
**construct** 26:6
  29:17 30:4,4
**constructive**
  32:23
**construing** 80:25
  100:3

**consultant** 79:6
  94:25
**consulted** 52:5
**contain** 48:7
  51:17 59:6
**contains** 60:12
  74:9,16
**contemplated**
  35:4
**contemporaneous**
  81:18
**content** 30:11
**context** 15:18
  46:8 51:4 68:18
  82:13 83:19
**continue** 12:2,20
  30:3 35:25 71:2
  100:18
**continues** 25:11
**continuing** 29:16
**contract** 83:2
**contracts** 5:6,20
**contrast** 51:8
**control** 48:9 85:23
  99:25 100:13
  103:2
**copy** 90:21
**core** 55:16
**coronavirus**
  93:22
**corp** 42:25 85:3
  89:2 98:21 100:5
  100:5,23
**corporation** 1:8
  1:12 3:4,19,23 4:2
  4:9,14,17 6:7 10:3
**correct** 35:13 61:1
  70:6 96:22 107:11
  107:14
**corrections** 17:17
**correctly** 59:5
**correspondence**
  43:17 83:2

**cortile** 18:18
**cost** 81:23
**costs** 30:2
**couldn't** 94:10
**could've** 62:15
**counsel** 3:16
  12:11,21 13:7,8,9
  16:22 18:1 30:14
  30:14 34:7,10
  36:9 43:13 49:16
  49:22 81:20 90:11
  101:8 103:2 107:8
**count** 19:6
**counter** 53:7
**counterparties**
  23:15
**counting** 48:13
**country** 109:21
**county** 84:16,17
  89:8
**couple** 27:1 59:3
  63:20 67:7
**course** 25:23 26:4
  31:15 32:15 35:20
  36:13 37:9 50:4
  54:14 56:20 60:16
  63:4,14 81:17
  100:19
**court** 1:1,19 3:16
  10:2,15,17,25
  11:5,11,14,19
  12:1,7,12 13:5,7
  13:13,20,23 14:2
  15:9 16:6 18:3,11
  18:22 21:14,18,20
  21:22 22:11,14
  24:3,9,22 25:1,8
  26:5 27:3,23
  28:15 29:4 30:10
  32:6,8 33:5,8,15
  33:17,21 34:1,3
  35:8 36:7,11,17
  36:19,22,24 37:15

[court - defendant's]                                                                Page 8

| | | | |
|---|---|---|---|
| 37:19,22 38:1,6 | courts 86:14 | daluz 8:6 | 102:20 |
| 38:11,16,23 39:1 | 87:21 100:21 | danger 99:21 | debtors 3:1,11,15 |
| 39:13,16,21 40:2 | court's 92:9 103:4 | 100:9 101:16 | 5:3,17 6:5 7:4 |
| 40:7,19 41:6,9,24 | 108:10 | data 49:15 50:3,7 | 10:7,10 14:1,9,12 |
| 42:2,6,13,21,24 | cover 57:12 90:7 | 56:25 60:3,20,22 | 15:2 16:1,18,23 |
| 43:11,15 44:5,23 | covered 50:25 | 61:2 72:12 | 17:10 18:3 19:13 |
| 45:9,20,25 46:11 | 58:13 66:2 79:14 | date 3:1 10:8 14:9 | 19:18,25 20:13,14 |
| 46:17,23 47:8 | 86:10 91:10 | 14:18 15:7 18:18 | 20:20,20,21 21:7 |
| 48:3,11 49:5,8 | covering 106:20 | 18:20 21:11 23:7 | 22:17 23:20,24 |
| 50:21 51:19 52:22 | covers 59:12 | 23:7,8,9,23,24 | 24:9,15,18 26:4 |
| 52:24 53:19 55:5 | 62:22 | 24:1,1,8,11 25:16 | 26:17,22 27:5 |
| 56:4,19,21 58:4,6 | covid 93:18,20,21 | 29:18,21 37:5 | 28:5,6,11,11,19 |
| 58:9,12,15,18,21 | cpa 72:13,14 | 57:1,1,7,7 64:12 | 29:8,15 30:5,10 |
| 59:14,17 60:21 | crazy 28:14 | 97:25 99:14 | 31:16,25 32:17,25 |
| 61:8,18 62:17 | creature 78:5 | 104:13 106:14,17 | 34:11,15,19,25 |
| 63:5,7,16,24 | credibility 97:8 | 109:25 | 35:4 39:6 40:8 |
| 64:24 65:11,16 | creditor 27:22 | dated 4:15 10:10 | 43:4,10 47:6 96:9 |
| 66:4,7 67:23 68:4 | 31:7 33:24,25 | david 8:17,19 | debtor's 81:12 |
| 68:8,11 70:18 | 34:5 | 36:10 | 82:25 92:10,14 |
| 71:7,11,13,24 | creditor's 31:14 | day 93:17 98:11 | 96:21 97:11,22 |
| 72:17,21 73:13,16 | creditors 16:13,13 | 107:1,9 | 103:2 107:8 |
| 73:25 74:11,13,17 | 18:25 19:5 24:16 | days 17:8 27:8,19 | 108:10 |
| 74:19,21,23 75:2 | 25:11 26:2,3,5,15 | 27:20,20 28:24 | debts 96:2 |
| 75:5,12 76:3,6,7,9 | 26:25 27:15 28:3 | 29:3 33:15 81:13 | december 82:16 |
| 76:11,14,17,19,22 | 30:8,16,18 31:1,6 | 83:22 97:24 98:7 | 89:6 |
| 81:20 82:9 85:1,3 | 31:18,20,22 32:2 | 98:8,8,11 99:9 | decide 82:13 |
| 86:9 90:24 91:1,7 | 34:16 37:10 42:12 | 103:16,19,20 | 98:17 |
| 91:10,16,18,20,23 | criticism 34:11 | 106:23 | deciding 68:15 |
| 92:1,6,13 93:8,20 | cross 96:3 | dc 7:20 | decision 105:5,6,6 |
| 93:24,24 94:3,14 | crozier 8:5 | de 18:21 | 105:9,15 |
| 95:5,7,10,13 96:5 | crystal 36:19 | deadline 98:12 | deck 17:1 |
| 96:7,11,24 97:1,3 | curious 42:18 | 99:14 102:20 | declaration 3:8 |
| 97:6,11,13,16 | currently 14:20 | deal 70:16 101:19 | 5:10 52:4 |
| 98:4,17,17,18,24 | custodian 44:14 | dealing 72:18 | default 102:6 |
| 99:20 100:16 | cut 10:12 12:1 | 107:5 | defend 81:21,21 |
| 103:6,10,18,22 | | dealt 46:2 77:17 | defendant 1:16 |
| 104:13,15,18,22 | **d** | debate 68:17 | 43:2,13 44:3 |
| 105:1,6,17,21,24 | d 2:2 8:22 10:1 | debt 21:24 22:17 | 56:16 57:24 59:12 |
| 106:1,5,9,12,14 | 77:2 82:18 92:19 | 83:25 | 59:15 61:16 69:21 |
| 106:16,17 107:5 | 93:1 97:13 98:2,4 | debtor 1:10 3:12 | 76:25 80:7 85:15 |
| 107:10,13,15 | 98:13 99:25 101:2 | 3:13,14 27:25 | 86:21 90:8 |
| court's 32:4 | 101:2 108:1 | 42:18 80:21 81:13 | defendant's 4:15 |
| | daily 25:13 | 99:22 101:16,18 | 5:11 |

[defendants - documents]                                                                  Page 9

**defendants**  42:15
59:13,16 60:8
70:16 81:20,22
**defense**  53:9 63:4
63:4,13,14,15,18
63:21 81:18,23
84:1,1,7 89:16
**defenses**  53:4,5
54:13 56:17 57:12
59:11 60:13 61:6
63:19 64:4 80:19
80:24 83:10,17,18
**definition**  56:17
**delay**  29:21 37:4
95:23 99:22,24,24
100:8,12 101:12
101:15 103:1
**denial**  101:12
**denied**  90:15
105:1,1 108:6,9
**denominator**  31:9
**denying**  101:17
102:24 103:3
105:22 106:19
**depend**  35:12
**dependent**  37:6
**depending**  61:5
65:23
**described**  40:13
40:25 75:23 83:5
**description**  44:15
45:21,23 46:9,13
46:18,21
**descriptions**
48:15 57:20
**designees**  36:15
**desire**  34:15
**detail**  19:6 20:8,9
21:8 22:20 23:5
30:6 69:22
**detailed**  19:16
23:10

**determination**
92:21 99:21
**determine**  80:1,5
**determined**  39:24
40:1
**determines**  78:3
**development**
17:24
**devoid**  33:2
**dictates**  100:16
**didn't**  62:11,22
63:16 67:20,23
68:4 75:7 93:17
95:2,23
**dierks**  8:7
**difference**  48:16
54:3
**different**  11:20,22
42:9,10 48:15
52:2 56:13,22,22
59:21,22,24 60:11
64:2 73:10 75:12
87:13
**difficult**  34:7
**difficulty**  31:5
**diligence**  27:22
43:21 44:11,15
45:3,22 46:14
47:2 49:1,19,21
49:24,25 50:8,9
50:19 52:18,19
53:2,12,17 54:12
57:2,4 58:2 61:23
62:7,20 63:8,18
64:5,8,13,15,20
67:1,25,25 68:6
77:14 80:17 82:7
82:24 83:8,13,16
84:5 85:6,21
86:24 87:3,11
88:4,11,12,14
**dipping**  45:3

**directed**  44:21
**director**  37:25
94:24
**disallowed**  97:2
97:19
**disclose**  28:7
**disclosed**  85:7
92:2
**disclosure**  21:12
49:14 53:24 56:5
58:24 84:5 86:11
86:15 89:19
**discount**  19:3
**discover**  79:2
**discoverable**
56:11 58:3 71:1
75:11 79:8
**discovered**  79:8
**discovery**  4:10
36:2 39:2,10
41:10 43:17 46:1
55:12 58:14 64:10
64:21 69:8,16
70:7,12 75:14
78:20 86:6,7,9
**discretion**  83:3
**discuss**  28:16
45:22 51:21 58:16
**discussed**  46:3
52:7 55:18 69:9
73:24 82:3
**discusses**  84:18
**discussing**  12:3
36:16 37:1 38:8
69:10
**discussion**  45:24
46:5 56:3 102:15
**dismiss**  35:15,22
82:22 101:10
**dispute**  4:10 39:2
47:16,18 49:12
50:10,20,23 63:24
75:8 78:14

**disputed**  17:7
19:12 24:16
**disputing**  14:20
**distant**  81:20
**distinct**  53:25
**distinction**  57:19
87:21
**distributed**  15:21
24:7,10
**distribution**  15:24
15:24 16:2,10,24
17:4,6,6,19 18:4
18:15 19:10 20:16
24:12,14,20 26:18
29:24 31:10,18
**distributions**
14:23 15:6,7,22
18:17 19:7 24:12
**district**  1:2 89:5
98:18 101:3
**docket**  10:21 11:9
14:3 17:13
**doctrine**  44:9,20
50:25 53:22 55:8
66:1 88:1
**document**  3:5,9
3:13,14,21 4:3,4
4:16 5:21 6:6
43:19 44:15 45:21
46:14,18,22 47:10
51:4,22 55:22,23
59:9 60:10,19,25
61:13 67:18,21
69:13 70:10 72:24
75:21 77:4 94:11
**documents**  43:3
43:20 46:10 47:1
47:22 48:8 49:15
50:24 51:15 55:16
56:1 59:18 71:15
71:19 74:6 75:22
77:13,19,22 78:13
78:21,22 79:1,2

79:15,21 88:17
89:19,25 90:3,4,7
91:4 94:22,24
95:1,8,17 102:13
102:17 103:13
104:4,6,9,10,11
108:7
**doesn't** 57:13
61:2 63:5,17
65:25 67:15 71:16
72:4 89:18 91:13
104:19
**dog** 28:18
**dogs** 28:14
**doing** 24:14 33:20
38:18
**dollars** 15:22
19:17 95:25,25
101:21
**dominic** 8:9 96:8
**don't** 59:18 62:10
62:14 66:15 68:16
69:16,22 70:5,11
73:2 75:17,24
76:20 78:12 82:13
89:22 90:11,18
91:5,8 92:22 94:7
94:14 95:21,23
97:8 99:7 102:18
105:7 106:15,16
106:22
**double** 71:20
**doubt** 72:24
**dovetails** 35:15
**draft** 28:24
**drain** 2:2 10:3
**drennan** 78:8
**drop** 103:9
**dropping** 69:12
**due** 43:21 44:11
44:15 45:2,21
46:14 47:1 48:25
49:18,21,24,25

50:7,9,18 52:18
52:18 53:2,12,17
54:12 57:2,4 58:2
61:23 62:6,20
63:8,18 64:5,15
64:20 66:25 67:24
67:25 68:6 77:13
80:17 82:7,24
83:8,12,16 84:5
85:6,21 86:24
87:3,11 88:4,10
88:12,14 93:21
99:11
**duking** 49:4
**duty** 31:6
**dykes** 82:18

**e**

**e** 2:1,1 7:1,1,24
8:15 10:1,1 77:2
82:14,17,18 86:18
89:4,4 98:19,20
101:2,2 108:1
109:1
**e.d.** 82:10
**e.d.n.y.** 89:3
**earlier** 16:22
19:17 21:16 24:2
26:17 32:14 33:23
55:18 73:21 74:9
**early** 17:14,15
93:16 94:5
**easiest** 48:13
**easy** 30:24
**ecf** 3:7,16,23 4:6
4:11,17 5:7,12,23
6:3,7 14:4 105:13
**eckhardt** 8:25
**economic** 81:22
**ecro** 2:5
**ecs** 82:10,21
**edmond** 6:2 11:16
37:24

**eerie** 84:16,17
89:8
**effect** 60:18 61:15
**effective** 3:1 10:8
21:11 23:23,24
24:1,1 25:16
29:10,18,21 30:9
30:21 31:11 37:5
**effectiveness**
72:22
**efficient** 11:1
17:11
**either** 25:12 38:12
43:16 44:19 47:15
63:16 78:21
**electronic** 33:18
**electronics** 1:15
3:4,7,10,19,20 4:2
4:5,9,11,14 43:1
43:14 77:2
**element** 82:7
87:11
**elements** 47:14,17
48:21 49:4,13
50:20 51:1 54:14
54:14 78:15 80:22
**elephants** 85:1
**eligible** 23:13
**eliminate** 14:15
**eliminated** 17:13
**email** 17:10 90:20
90:22 104:7
**emails** 91:5,6
**emanuel** 7:17
25:4
**emphasize** 56:3
70:21
**employ** 81:6
**employment**
95:22
**enable** 34:8
**encouraged** 17:9

**encumbrances**
5:5,18
**enforce** 5:1,11
11:9 12:13,22
**enforcing** 5:15
**engage** 34:16
**engaged** 85:21
**engineering** 82:15
**enormous** 101:20
**enron** 98:21 100:4
100:5,23 102:25
**entered** 13:17
106:19
**entirely** 49:20
77:11 100:17
**entities** 81:9
**entitled** 16:16
62:9 73:6 86:21
**entitlement** 14:14
**entry** 106:24
**envisioning** 65:4
**epic** 85:3
**equities** 100:14
**equivalent** 16:12
79:11 80:9 85:19
**erik** 7:22
**erika** 25:3
**error** 104:3
**esl** 35:12 36:17
37:1,6,18,18 38:3
38:7,9
**esoteric** 58:2
**especially** 17:25
**essence** 58:7 84:4
**essentially** 60:25
**establish** 55:9
101:6
**established** 66:16
**establishing** 99:13
**estate** 20:22 30:3
31:9 41:16
**estimate** 15:3,4,14
19:13,18,25 20:4

20:5,10,13 21:5,7
21:15,16 23:10
62:14
**estimated** 21:1
**estimates** 20:20
20:21 21:13 22:23
23:2,7,8,21 40:21
**et** 1:12 3:4,19 4:2
4:9,14 10:3 51:5
**evaluation** 43:21
44:12,16 45:22
46:14 47:2 57:3
66:21 77:14 85:13
88:14,16
**event** 66:20 86:4,6
102:11
**everybody** 25:21
28:7
**everybody's** 38:4
**everyone's** 17:19
**everyone's** 94:22
**evidence** 12:23
62:6 70:7 89:25
99:16
**evidenced** 66:22
66:23 87:4
**evidentiary** 72:1
72:22
**exactly** 59:4
**examiner** 30:16
**example** 20:22
22:5 31:14 54:4
54:18 56:17 83:13
84:16 86:18
**excellent** 10:16
**exception** 66:20
79:16
**exceptions** 66:17
**exchange** 81:18
**excludes** 14:22
**excluding** 22:24
23:2

**excusable** 97:12
98:10,16,23,25
99:17 100:4,18
101:1,6 103:23
**excuse** 36:9 96:20
101:12
**excused** 13:22
**executing** 70:11
**executory** 5:6,20
**exhibit** 3:11,12,13
3:14,15,15 46:19
56:25 57:6 77:10
**exhibits** 43:4
**exist** 41:1
**existed** 64:3
**existence** 44:14
**expect** 52:3
100:18
**expected** 38:4
**expecting** 19:21
**expeditiously**
26:19 30:9
**expense** 21:4 25:5
25:23 26:6 27:17
29:14 31:5 34:4
34:16
**expenses** 23:24,25
24:4
**expensive** 81:21
**expert** 72:9,18
79:13
**explain** 56:15
**explanation** 81:5
**exposure** 55:21
**expressed** 26:24
34:15
**expression** 67:11
**expressly** 100:25
**expunged** 14:12
97:2
**extend** 6:5 92:9
92:18 96:14 98:5
108:9

**extension** 6:2 93:4
97:13,18 98:2
100:10,20 103:8
104:8,16 105:22
**extent** 22:6 31:22
33:22 51:16 79:24
88:2,10,19 89:7
102:9
**extra** 33:19 34:14
65:8
**extraordinary**
86:17

**f**

**f** 2:1 109:1
**f.3d** 86:18 89:8
**f3d** 84:17 89:2
100:5
**face** 56:11
**facie** 55:10
**fact** 33:3 38:13
50:11 54:7 56:10
56:11 57:19,21
62:11 63:21 64:20
65:24,25 66:22,25
66:25 67:25 75:23
77:21 78:1 82:7
83:17 89:13 93:10
101:18 102:19
103:13
**factor** 100:12
**factors** 99:21
100:8
**facts** 33:2 49:25
50:12,16,19 51:17
52:21 54:3,8,8,9
60:1,13 62:25
75:8,9 83:18
99:19
**factual** 49:19
51:21 60:5
**fail** 6:6 7:8 10:12
10:13,16,18 11:1
11:3 13:25,25

16:7,8 18:5,12
21:17,19,21 22:2
22:12,16 25:3
26:17 29:25 32:13
32:24 33:7,14,18
33:22 34:2,23
36:5,8,19,25
37:12 38:17,25
39:4,4,15 40:3,4
40:16 41:4,10,23
42:1,7,15
**fail's** 36:10
**failed** 93:6 96:23
97:11
**fails** 100:15
**failure** 97:5 99:3
99:3,8,15
**fair** 35:8 58:5
91:19
**faith** 62:24 100:1
100:9 101:15
**fall** 56:9
**falls** 70:24
**far** 15:20 47:19
53:8 63:25 68:4,6
96:6
**faulkner** 82:16
**faulted** 104:2
**favor** 100:10,15
101:17
**federal** 77:2,3,24
78:1,2,3,21 88:2
**fee** 30:16
**feedback** 16:4
**feel** 96:16
**feels** 38:17
**fees** 26:12 27:14
30:3
**feld** 36:14
**felt** 93:3
**fifth** 7:5
**fighting** 53:21,23
54:1,17

**figure** 55:21 56:8
**figured** 35:1
**file** 6:2 12:22 13:1
27:7 29:2 81:19
93:4 94:10 96:14
97:14,24 98:5,5
99:3,8 104:8
106:22,23
**filed** 3:6,9,21 4:4
4:10,16 5:22 6:2,6
10:9,20 11:17
14:3 17:3,8,14,23
27:3 28:25 33:3
39:25 81:14 95:8
95:10 97:20 98:6
98:10,16,19
104:18,20 107:3,6
**filing** 12:10 107:3
**filings** 17:13
**final** 26:7
**finalized** 35:10
**finally** 88:21
**financial** 24:18
27:4,6,24
**find** 34:7 35:6
89:10 94:25
103:24 106:25
**fine** 13:5,6,11,23
34:3 45:18 74:20
74:21 75:1
**firm** 49:16 50:4,7
52:4,4 54:19
72:12 95:24
**firms** 40:9,10
**first** 10:6 12:19
15:13 35:19 43:7
44:6,17 46:1
47:14 55:24 56:7
59:4 65:17 66:8
67:7 78:24 79:25
87:17 93:2 99:2
99:12

**fit** 48:1 79:16
**five** 12:4 28:23
73:9,11
**focus** 43:16 44:6
89:12 92:17
**focused** 68:5,6
77:11,25 82:22,23
82:25 100:12
**focusing** 39:13
58:18,22 92:20
**follow** 41:8,20,21
95:6 100:15
**followed** 95:5
97:22
**following** 12:10
15:9,23 18:6
99:21
**follows** 66:8
**font** 47:25
**footnote** 48:18,22
**forced** 58:9
**foregoing** 85:12
100:21 101:11
109:3
**form** 28:24 35:25
**formally** 90:18
**forth** 68:17 77:8
78:15 83:19 90:14
90:15,16 92:19
96:18 98:13 101:5
**forward** 11:13
21:2 23:20 24:20
35:6
**found** 91:13 97:6
**fraction** 15:10
**frankly** 49:21
52:1 69:3 85:4
**frd** 89:9
**free** 5:4,17 41:10
52:11
**frequently** 32:17
87:21

**front** 23:3 106:22
**fruit** 37:3
**frustration** 29:7,8
**frustrations** 26:24
**full** 18:17,20,22
21:9,12,13 95:4
97:3
**function** 69:25
**fundamental**
84:13
**funded** 21:24
22:17
**funds** 20:11 96:1
**further** 15:3 17:2
30:25 42:17 59:23
**future** 20:15,20
64:12 75:19

**g**

**g** 10:1 82:17
**garrett** 6:6 7:8
10:13 13:25 39:4
**gary** 7:18 8:13
25:4
**general** 44:14
45:21,23 46:9,13
48:25 102:9
**generally** 13:9
25:14 47:9 49:3
80:2 88:6 89:1
99:6
**getting** 27:3,12,14
28:22 45:2 73:11
83:21 94:8 105:21
**give** 61:9 72:11
76:9,24 93:9,11
97:17 105:7
106:18
**given** 27:21 30:2
32:20 35:17 52:25
65:9 71:5 78:4
85:7,11 86:4
88:21 90:4 94:18
101:19 102:25

104:22
**giving** 93:15
**glitch** 23:23
**go** 10:5 11:14,23
12:7 19:6 20:7
22:20 23:20 25:1
29:5 30:9,20
31:11 32:22 55:5
67:7 68:4,16 69:7
69:23 70:3 71:10
72:10 76:6 86:3
91:1 93:2 97:9
106:8
**goal** 30:22
**goes** 27:11 40:12
47:9 48:24 66:13
68:14 70:9 80:22
98:9
**going** 27:1 28:14
35:24 38:3 39:5
46:21 53:19 58:10
64:10 68:17 69:20
70:10 72:25 73:23
74:8 76:7,9,17
90:10 94:16 96:20
97:17 104:23
105:7 106:9,17
107:6
**good** 10:2 11:3,5
25:3 30:21 43:9
43:11,12,15 44:25
56:16 62:24 63:20
92:1 96:8 100:1,9
101:15
**goods** 73:8
**gorrepati** 9:1,14
**gotcha** 45:4
**gotshal** 7:3 10:14
14:1 40:11 94:21
96:9
**gottlieb** 7:10 11:7
**governs** 92:21

granite 89:9,10
grant 97:13 103:8
granted 90:16,17
  98:15 103:23
granting 5:7,21
  92:10,18 106:6
  108:10
great 29:24 104:1
  107:9,15
greater 62:13
gross 59:10 61:5
  61:13
ground 77:19
group 26:3 31:7
guard 69:11
guess 40:4,12 44:6
  46:19 47:8,25
  59:2,16 61:18
  62:15 67:9,17
  68:22 73:3
guided 99:20
gump 36:14
guys 38:19,21

**h**

h 8:17 9:7 98:19
hadco 38:18
hadn't 65:18
half 16:14
hamilton 7:10
hand 30:23 39:16
  86:20
handle 39:6
hanging 102:22
happen 29:21
  35:3
happened 15:18
  50:3 68:18 93:17
happy 10:5 17:12
  24:24 32:6 33:14
  41:21 45:16,18
  47:2 58:16 67:6
  70:15 74:12 92:15
  92:24 96:14 97:14

hard 29:17 100:6
hardest 94:8
hardship 79:11
  80:8 85:18
harner 8:8
harris 9:2
hasn't 66:11
haur 36:14
haven't 95:17
headings 61:8,9
  61:12 62:1,2,8
  64:25 65:2 66:23
  67:18 68:23 71:4
  72:2 86:23 87:4,7
  89:19,21,24
hear 10:14 16:4
  25:6 43:8 47:2
  91:5 92:16,22,24
  96:10
heard 39:10
  101:24,25
hearing 3:1,3,18
  4:1,8,13 5:1,10,14
  6:1,1,5 10:4 12:19
  13:1,3,16,22
  16:11 18:6 25:18
  26:11 27:8,9,16
  27:19 28:24 29:1
  29:3,5 32:11,14
  33:12 40:22,25
  90:14 93:7,25
  95:14 96:13,16,19
  96:24 97:1,5,22
  101:24 102:2,3,17
  105:2 106:10,22
  107:7,11,13
hearings 33:25
  93:25
hearsay 71:18,20
held 19:8 43:17
  93:25 95:19 100:6
  102:10

help 26:6 76:20
  101:8,8
helpful 25:18 34:8
  34:9
here's 64:12 65:9
hey 37:17
he's 58:22
hickman 78:18
hide 60:9 85:1
high 35:25
higher 86:16
highlight 57:21
highlights 23:13
highly 86:16
hire 72:13,14
  81:20
historical 57:9
  60:14
histories 60:4
history 26:10
  58:25 82:2
hoc 26:3
holdco 7:11 11:7
holding 1:12 3:3
  3:18,22 4:1,8,13
  4:17 14:22 17:7
  93:25
holdings 1:8 6:7
  10:3 42:25
holds 60:20
hole 66:16 67:11
holes 85:2
home 81:19
hon 2:2
honor 10:12 11:4
  11:6 12:8 13:12
  13:18,24,25 15:1
  15:6 16:16 17:3
  18:6 20:7 21:17
  24:21,25 25:2,3,6
  25:10 26:1,8
  28:14,17 30:13,25
  32:24 36:5,9,13

37:14,17 39:19
  42:23 43:9,12
  44:2,22 45:18
  46:7 47:5,24
  49:10,11 51:13
  53:10 55:3,11,14
  55:17,25 59:5
  67:6 68:9 69:9,15
  69:18 70:6 73:14
  75:6 76:2,5 92:5
  96:8,12,12 97:8
  97:15 107:12
honor's 11:12
  12:9,17 13:21
  48:17 52:14
honor's 67:8,10
  69:8 70:22
hope 26:19
hopefully 28:23
hospital 89:2
hour 103:12
housekeeping
  10:19 73:21
https 82:5
hundred 14:13
hundreds 63:10
husted 82:9
hyde 6:25 109:3,8

**i**

i.e. 34:18 68:13
  78:6,14 83:4
  86:10 98:7 106:23
idea 67:17
identification
  64:8
identified 20:12
identifies 51:17
identify 20:19
  44:10,13,17 64:21
identifying 45:11
ignorance 100:2
ii 5:3,16 85:16,24

**iii** 5:5,19
**illinois** 12:12
**imagine** 25:10
**imminent** 37:8
**impact** 99:23
   102:21
**implementations**
   104:12
**implicate** 44:19
   68:1
**importance** 40:5
   84:13,18
**important** 15:18
   18:16 28:1 29:13
   30:7 70:21 72:8
   97:20
**importantly**
   16:20 19:24
**impression** 49:8
   51:6 53:25
**impressions** 86:11
**inadvertence** 99:7
   99:11 100:2
**inadvertently**
   39:8
**inappropriate**
   42:16
**inc.'s** 3:21
**include** 22:7
   27:13 54:2,2,8
   65:19,20,22,23
   87:7 103:14
**included** 21:8,9
   26:7 33:2 51:22
**including** 10:7
   17:18 18:1 19:4
   24:4,7 26:16 29:4
   30:3 56:25 67:4
   74:11,13 79:5
   83:16 84:6 100:13
**inclusion** 96:1
   103:12

**incorporates** 77:3
   77:24
**increase** 15:21
   23:3 31:17
**increased** 17:19
   17:22 22:25 23:22
**incurred** 23:25
**indicate** 86:23
**indicates** 41:14
**indiscernible**
   30:17 62:23 63:15
   64:16 72:16 73:15
   73:19 76:21 79:3
   79:6 83:1,25 88:7
   93:6,12 96:4,16
   97:7 101:3 103:5
   103:8,10 104:1
   105:17 107:1,4,11
   107:16,17
**individual** 25:13
   26:15 31:2,7,13
   33:24
**individually** 13:4
**individuals** 74:14
**ineligible** 39:24
   40:1
**inevitable** 37:4
**information** 28:7
   40:10,11 41:4,7
   42:2,5 44:8,11,18
   45:7,12,17 50:14
   51:16,21 52:6,9
   57:9 58:25 59:6
   60:6,9 61:15 62:2
   74:10 75:20 77:9
   85:15,23 86:15
   87:20 88:24 94:17
   96:3,4
**inherent** 31:13
**inherently** 56:1
**initial** 15:24 39:22
   57:24

**input** 51:2
**inquire** 61:23
**inquiry** 51:2
   68:11
**ins** 14:25 18:25
**inserted** 53:11
**inspire** 100:24
**instances** 28:6
   31:12
**institute** 82:3
**instructed** 53:8
   54:15
**instruction** 54:19
**instructive** 89:11
**insurance** 65:22
**insurer** 79:6
**intend** 27:7
**intended** 64:1,2
   66:16
**intends** 34:24
   87:1
**inter** 46:16
**interacted** 65:24
**interest** 31:20
   60:9 80:20
**interested** 27:15
   50:17
**interesting** 65:3
**interests** 5:4,18
**interim** 16:2
   26:18 29:23
**internal** 60:11
**internet** 104:6
**interpretation**
   83:6 84:23 85:11
**interpreted** 84:11
**interpreting**
   84:24
**interrogatories**
   43:3,24 44:7,7,9
   45:7,16 73:22,25
   74:2 91:22 92:3

**interrogatories''**
   77:7
**interrogatory** 3:5
   3:11,12 4:4 43:25
   44:4,10,13 45:10
   46:12 73:23,24
   74:8 77:5
**interrupt** 12:2
   36:22 39:5 49:10
**interrupted** 66:4
**introduce** 62:6
   89:24
**introduction** 82:8
**introductory**
   61:20 80:15
**investigation** 45:3
   49:1,21 50:1,8
   53:15 62:23 64:15
   81:15
**investigator** 72:10
**investigator's**
   65:21
**investment** 98:25
**inviting** 33:24
**invoice** 56:25 57:1
   57:1,6,7,7 65:6
**invoices** 83:1
**involve** 36:1 83:21
   93:17
**involved** 35:5,18
   82:21 83:4
**involves** 12:3 39:2
**irrelevant** 83:2
**isn't** 75:23
**isolated** 57:22
**issue** 12:13 17:10
   22:18 26:12 32:12
   43:24 44:3 45:2
   46:25 51:24 52:15
   53:6 54:12 55:2
   58:1,2,19 60:14
   62:1,5 63:22
   65:19 66:1 69:9

72:1 76:8 82:14
88:1,5,6,8,9,19,22
88:25,25 89:13,14
89:15,18 98:18
**issue's**  52:10
**issues**  14:24 35:17
74:6
**it'll**  13:17
**item**  10:20,23
11:8,9,13 12:4,4
36:8 41:13 92:8
**itemize**  20:19
**items**  39:7
**iterations**  55:22
**it'll**  105:12,13
**it's**  59:11,12 60:8
60:19 61:3 62:11
63:21 64:9,10
65:5,18,25 66:2
67:14,19 68:1,5
68:12,13 70:9,21
79:4 85:10 86:25
87:17 88:17 90:20
91:12 94:18,19
104:15,16
**iv**  5:7,21
**i'd**  65:13 73:12
**i'll**  76:11 106:10
107:8
**i'm**  57:20 58:16
58:18,25 61:1
67:2,6,23 68:9
70:14 73:16,17,20
74:12 75:6 76:1,5
76:5,9,17,18
82:21 90:10,12
91:2,11,11 92:15
92:20,23 93:16
95:23 96:14 97:14
97:17 98:5 103:24
104:23 105:7
106:9,17 107:5,6

**i've**  72:4,4 75:16
77:20 87:15 89:14
90:15,15 91:13
92:2 93:23 101:4
102:16 103:1
104:22

**j**

**j**  3:22 4:16 8:21
9:6
**jack**  9:2
**jacqueline**  8:10
**james**  6:2 7:24
9:10,15 11:16
37:24 92:8 108:9
**jasper**  9:3
**jennifer**  8:5 9:4
**jersey**  89:5
**job**  38:18
**join**  52:11
**joined**  52:10
**jonathan**  9:7
**joseph**  8:15 9:13
**joslin**  98:19
**judge**  2:3 10:2
11:2 15:20 16:9
19:22 22:4 33:14
34:24 38:25 39:4
41:5,11,20,20
95:3
**judgment**  63:21
102:6
**judicial**  21:24
**july**  1:23 17:8,20
18:9 109:25
**jump**  10:19
**june**  82:19 97:21
97:25
**justification**
86:17
**justin**  2:5

**k**

**k**  39:7 82:18
**katten**  39:5 55:19
**keep**  15:18 94:21
105:12
**keeps**  95:21
**kelsey**  8:14
**kevin**  8:25
**kimberly**  5:10
8:24
**kind**  48:23
**kmart**  1:12 3:3,18
3:22 4:1,8,13,17
42:25
**kmart's**  3:11,13
**know**  15:14,14
16:11 18:15 20:24
22:7,9,17 24:3,21
25:19 26:2,16
27:1,5 28:5 29:10
30:23 33:1,7,7,24
35:1,2,3,5 38:6,12
40:2,6,19 41:18
42:6 45:1,4,12
46:9 48:24 49:18
49:20,22 50:7
51:1 52:4,17,24
53:11,13,14,16
54:21 56:22 57:10
57:12 59:5,18,21
59:23 60:8,12
62:11,14 63:3,19
64:16 65:4 67:9
67:21 68:18,20
69:11,12,15,20,23
70:15,21,22,23
71:24 72:8,10
73:2,7,14 74:4
75:6 92:1,7,14
94:7 95:16,16,18
95:23
**knowable**  53:4
64:4 80:19 83:10

**knowing**  99:4,10
**knowledge**  44:11
44:18 45:11 74:6
99:14
**known**  13:3 53:3
55:19 80:19 83:9
**knows**  25:21 26:8
**koockogey**  9:4

**l**

**l**  7:22 39:7 98:20
101:2
**l8**  4:16
**labor**  42:20
**labors**  42:9
**lack**  97:4
**lacked**  97:6,7
**lacking**  101:22
**laid**  32:10 92:23
**lajoie**  9:4
**lampert**  38:9,9
**language**  53:1,11
66:15,23 67:15
80:13,17 82:22
84:12 85:8 88:20
**large**  24:3 35:11
68:19,20 81:8
102:22
**largely**  17:12
**largest**  31:10
**lari**  8:7
**late**  17:18
**law**  52:4 54:5,9
64:15 78:1,1,2,3
81:2 82:6 84:10
84:13 85:12 86:7
88:2,4 95:24
100:21 101:11
**laws**  62:25
**lawsuit**  54:20 78:5
83:4 84:2
**lawyer**  45:12,13
52:19 65:20
106:15

lawyer's  49:20
50:15
lawyers  24:18
35:18 50:18 51:2
54:9 100:23
lay  103:19 105:9
laya  9:5
laying  36:4 67:2
lead  47:7 62:24
73:2 89:13
leading  81:2
leases  5:6,20
leaves  18:24
ledanski  6:25
109:3,8
left  42:7 53:16
legal  50:15 52:7
53:6 54:12 62:4
62:10 64:18 83:19
85:7 86:12 87:9
89:15 105:7
106:18 109:20
legally  49:23 58:3
legislative  82:2
84:25
legitimacy  94:22
legitimate  40:8
legitimately  40:13
length  99:22
100:8 101:15
letter  3:15 4:10,15
4:15 27:2 32:12
33:1
letters  39:11
letting  30:11 32:4
let's  59:2
level  83:3
lewis  85:3
lexus  82:15,18
89:5 101:3
liability  22:3
liberty  7:12

liens  5:4,18 21:24
21:25,25
life  68:24
light  84:19 102:21
likelihood  13:17
65:10 68:25 73:5
83:14,14 86:6
limit  106:2
limitation  100:25
limited  66:17 82:6
84:12 90:4
line  24:21 39:23
41:13 53:20 56:2
59:9,15 61:4,4
64:23 100:7 108:4
lined  18:8
lines  16:5
linger  30:11
liquid  24:13
liquidating  81:6
list  57:6 80:22
81:12
listed  10:20 39:8
71:19 78:13,23
89:20
listening  26:16
listing  17:5
literally  37:20
51:21 70:12 93:4
94:11 95:24 96:2
103:9,11,14 104:5
104:7
litigant  100:24
litigants  100:22
litigation  24:8
29:19 30:14 35:12
35:14,20,25 36:1
36:15,15,17,21
37:2,11,13,18
38:5,7 40:13,15
40:23 41:2 52:6
79:4 86:13 88:25
89:13

litigation's  37:7
litigations  35:22
little  20:8 27:15
litz  8:9 96:8,9,12
103:5
lived  32:18
llc  5:23 7:11 78:9
82:15,17 89:3
lloyd's  78:8
llp  7:3,10,17
location  44:14
log  3:15 45:8,18
46:8,18 47:25
49:14 50:2,15
51:15,17 55:13
57:21 58:1 59:19
66:12,24 69:18,22
69:24 70:1,3,8
71:4,8,16,17,18
71:19,22 72:1,5
72:15 74:9,15
75:10,23 77:10,20
78:13,23 79:16
87:1 89:20,21
90:3 94:7
logged  59:25 94:8
logical  53:7
log's  71:20
london  78:9
lone  82:17
long  29:6 55:13
84:15,18 103:15
longer  30:11
look  24:20 27:12
48:5 50:2 51:20
61:19 72:10,14
83:23 101:9
104:11 105:12
106:10 107:8
looking  40:24
46:11 83:18
looks  50:3 64:1

lose  100:19
lot  26:10 34:7
36:1 56:21,22
59:6 72:9 80:25
lots  70:16
love  65:12
lower  21:15
lp  82:18 89:9 99:1
100:4
lr  5:14
luke  5:22 7:15
11:6

**m**

magic  52:18
magistrates  76:20
maheshwari  9:5
mailed  18:8
105:13
maintained  20:18
majority  48:8
making  16:10,23
18:3 24:20 35:5
51:6,12 54:3 67:4
man  107:12,14
manges  7:3 94:21
96:9
manner  74:5
march  25:24
marcus  8:10
marriott  8:11
master  38:21
material  75:15
87:24
materials  13:17
58:2 79:7,10,14
80:1,6,10 85:17
86:10,10,22 87:4
88:5
matter  1:6 10:6
10:18 11:20,22
12:2,3 18:5,10
33:8 39:2,6 41:13
42:24 45:2 48:25

52:7 55:16 57:24
64:15 71:19 73:17
73:18 83:15 85:20
88:7,15 92:7
99:10
**matters** 23:14
39:23
**matthew** 9:11
**maximum** 103:19
**mcveigh** 9:6
**mean** 26:23 33:14
40:7,16 45:23
47:8 48:9 49:10
49:22 50:3 53:6
57:15 59:17 61:1
61:18 62:10,14
63:18 65:13,20
66:3 70:8 71:21
71:22 72:7,25
73:3 74:22 87:5
90:12 93:23 105:4
105:18
**meaning** 85:11
98:24
**meaningful** 26:20
**means** 31:12
64:16,17,22 70:2
79:12 80:9 85:19
**meant** 45:23 69:5
85:5
**mechanics** 18:5
18:10
**mechanism** 75:14
**median** 65:7
**meet** 53:17
**meetings** 30:19
**memo** 57:17
**memorializes**
105:10
**mental** 86:11
**mention** 39:10
**mentioned** 34:24

**merit** 97:6
**meritorious**
102:22
**merits** 45:6 50:18
81:16 84:6 85:6
86:2 97:9 101:25
102:21
**met** 28:21 103:24
**microbion** 89:2
**microscopic** 47:21
47:21
**midland** 100:4
101:3
**midnight** 17:18
**military** 103:12
**mill** 83:5
**miller** 9:7
**million** 14:17,21
15:5,20,22 16:3
16:11 19:4 20:6
20:23 21:1,3,5,15
23:1,3,18,19
41:14,17 42:9,19
**mills** 81:7
**mineola** 109:23
**minimis** 18:21
**minimize** 90:6
**minimum** 17:1
20:17
**minutes** 65:17
**miscellaneous**
22:19
**missed** 94:9
**mission** 99:5
**mistake** 99:7
**mistakes** 100:3
**misunderstood**
76:2
**mitchell** 9:6
**model** 81:11
**models** 59:21
**moment** 67:8

**monetize** 24:6
**money** 19:9 24:13
31:9 68:20 95:18
**month** 20:14
**months** 25:24
26:14
**morabita** 33:5,7
**morabito** 7:22
16:22 24:21 25:1
25:2,3,9 28:16
34:24 36:24 37:12
**morning** 10:2,9
11:3,5 12:16
17:14,16 25:3
43:9,11,12,15
44:25
**motion** 3:5,8,21
4:3 5:1,1,11 6:1,5
11:9,17,20 12:13
12:14,18,22 13:1
13:2,10 18:7 39:3
39:14 41:11 43:2
43:4,23 44:1
46:19 47:7 48:19
49:6 51:8 66:2
75:20 76:4,25
77:6,10,18 78:11
78:14,20 84:3
87:12 90:15 92:9
92:14,18,22 93:3
96:13,21 97:10,17
97:18 98:5,6,10
98:14 101:5,13,17
102:24 103:3,22
104:16 105:1,2,22
106:19 107:6
108:6,9
**motions** 35:15,21
35:23 77:12 82:21
**motors** 82:18
**mouse** 85:2
**movant** 90:1
98:15 99:2,16,25

99:25 100:14
**movants** 35:21
**movants'** 77:7
**movant's** 88:23
90:10 99:7 100:9
**move** 93:15
**moving** 19:15,22
49:18
**mute** 16:4

**n**

**n** 7:1 10:1 77:1
82:14 108:1 109:1
**n.d.** 82:19
**n.d.n.y** 101:4
**name** 37:23,24
43:12 61:16
**names** 74:13
**narrow** 50:22
51:13
**narrowed** 89:7
**narrowly** 84:21
**natan** 8:23
**naturally** 60:7
**nature** 34:4 61:16
70:4 84:15,18
85:7 86:4 101:20
101:22
**necessarily** 42:3
57:14
**necessary** 96:1
102:25
**need** 13:15 21:4
29:11 38:20 40:3
53:6 64:17 66:9
76:24 79:9 80:6
82:13 84:20 85:15
85:17,19,25 89:22
90:11,18 97:9
106:13,22
**needed** 20:11
27:12
**needs** 19:23 20:15
54:15 79:25 80:5

86:3 88:15 90:6
92:2,17 104:18
**neglect** 97:12
98:10,16,23,25
99:4,6,13,17
100:4,18 101:1,6
103:23
**neglecting** 99:15
**neither** 45:14
**nelson** 8:12
**net** 19:1,2 21:6,13
21:13,17 22:3
59:11 61:13,14
**never** 72:4,4
**nevertheless**
87:19
**new** 1:2 7:6,13
50:5 53:1 57:13
60:16 61:13,14
63:3,4 64:13
80:10,11,17,25
84:20,20 85:8
87:2 88:3,20
93:23
**news** 17:24 23:3,8
30:21
**night** 17:18
**non** 14:10,13,21
14:25 17:6 51:2
65:20 71:1
**nonappearance**
102:5
**normal** 13:13
35:2 97:23
**normally** 79:19
**nos** 43:24
**notably** 17:19
**note** 20:7 21:7
29:13 39:7 48:21
79:18 98:22
**noted** 13:6 48:18
96:13 100:11

**notes** 96:23
**notice** 6:1 12:25
13:3 15:21 17:4
17:14,22 27:4
32:19 35:10 52:14
70:4 71:6 96:14
97:14 98:6 104:20
104:20 106:21,23
**notion** 75:8
**notwithstanding**
31:21 51:10 53:25
**nuisance** 81:23
**number** 10:20
11:8 17:16,16
18:12,14 19:17,20
23:14 34:5 41:17
48:9 49:14 52:17
53:17 56:25 57:7
75:21 77:7,8,13
90:4 107:1
**numbered** 48:9
**numbers** 21:2
27:21,24
**numerator** 31:8
**numerous** 25:11
30:17
**nw** 7:19
**ny** 1:21 7:6,13
109:23
**nyu** 89:2

**o**

**o** 2:1 10:1 77:2,2
82:17 109:1
**objection** 3:20
5:14 6:1,5 12:10
12:24 43:5,19
44:6,25 48:18,25
52:3 56:10,14
66:12 75:7 77:18
80:3 92:10,14
93:10 96:17,21
97:2,23 102:8
105:17 106:7

108:10
**objections** 13:14
14:15,20 15:3
20:1
**objective** 61:15
74:5
**objector** 47:7
**obligations** 28:12
28:20
**obtain** 79:11
85:18 101:7
**obtained** 80:8,9
**obvious** 42:22
**obviously** 26:9
30:6 31:19 35:17
45:1 53:12 61:15
67:13 70:8 71:9
87:7 90:22 106:1
**ocb** 61:14
**occurred** 24:1
67:1
**october** 25:21
**odd** 94:25
**offensive** 87:20
**offensively** 88:5
88:22
**offering** 62:3
**offhand** 40:6
**offline** 41:21
**oftentimes** 28:3
**ofwiniadaewoo**
3:6
**oh** 64:12 76:6
**okay** 10:2,25
11:24 13:20,25
16:8 18:11 21:18
22:11 25:7 32:8
35:8 36:7 38:1,24
41:12 42:23,24
43:15 44:5 46:11
46:23 49:5 55:7
59:17 63:6 71:7
71:11 73:13 74:17

75:2,5 76:3,3,10
76:18 90:23 91:15
91:19,20,21,25,25
92:4,6 93:3 95:7
96:5,7 97:16
103:6,18 104:17
104:24 105:3,16
105:23 106:11,12
107:9,10
**old** 28:13,18
33:15 109:21
**omnibus** 10:4
12:18 13:1 27:8
29:5 33:11,25
93:9 97:2 107:13
**ongoing** 42:16
**opening** 50:6
**operating** 33:3
**operation** 84:4
**opinion** 49:1,20
49:24 50:16 54:3
56:1,5,10,12,18
57:19,22 58:24
60:24 62:1 70:24
70:25 72:11,11
86:5,7 87:9
**opinions** 66:21
75:9 86:12
**opportunity**
10:11 28:8 29:4
**opposed** 50:16
54:20 62:1 68:5
88:3,11,13 89:15
98:18 99:4,13
**opt** 14:9,10,10,21
14:25 15:1,2 17:5
17:6 18:25,25
19:15 30:1
**optimistic** 35:6
**options** 12:19
**oral** 33:16 35:23
43:8 47:2 65:17
90:2 92:16,16,22

92:24
**orange** 38:19
**order** 5:1,11,15
  5:15 10:5 11:10
  13:16 14:6 16:25
  18:21 26:7 32:15
  33:10 34:13 76:8
  76:12 90:11,18
  91:24 92:9,18
  97:19,21,25 103:3
  105:10,15,21
  106:5,6,10,19,24
  107:8 108:10
**orders** 86:9
**ordinarily** 70:2
  79:2
**ordinary** 50:4
  60:16 63:4,14
  81:17 100:19
**originating** 78:18
**ought** 27:15
**outcome** 37:7
  88:16
**outperformed**
  20:21
**outs** 15:2
**outset** 96:13
**outstanding** 14:23
  16:12
**overall** 96:1
**overkill** 90:5
**overlap** 22:4,6
**oversee** 38:17
**owe** 16:15

**p**

**p** 7:1,1 10:1 86:18
  89:4
**page** 17:1 18:2,12
  20:8,10 21:3,16
  21:16 22:22 23:5
  23:10,12 35:16
  39:20 42:7 48:1
  48:19 90:7 101:4

104:20 108:4
**pages** 35:14 70:18
  82:4,19 89:4
  102:3
**paid** 15:15 19:3,4
  20:5 21:4 27:13
  27:14 38:3
**pains** 53:12
**papers** 49:7,18
  56:3 75:7 96:17
**paperwork** 93:13
  107:2
**paragraph** 32:16
  43:22 44:12 56:24
  57:2,3 77:15,16
  77:17 81:3,25
  93:5 96:22 98:2
**parallel** 12:19
**parameters** 47:11
**part** 34:4 35:12
  36:21 38:7 47:20
  51:22 54:19 66:13
  80:16 87:1,24
  88:22 95:10
**participate** 93:16
**participating**
  25:17 26:15
**participation**
  95:19
**particular** 61:3,13
  75:22 82:13 92:17
  99:19,24
**particularly**
  26:14 28:1 32:20
  58:23 80:2 89:11
  102:3
**parties** 14:3 15:10
  16:4,16 17:5,6,25
  18:16,19 22:23
  26:10 27:15 34:25
  37:15 40:14 45:22
  47:3 51:24 52:16
  53:21 54:6 77:11

77:25 78:4 92:22
  100:10
**parties'** 60:14
  83:9
**partners** 89:9,10
**party** 17:9 19:10
  47:12 55:7 79:2,4
  79:9 87:19 98:9
  100:15,18
**party's** 53:3
**party's** 79:5 80:19
  86:12 98:6
**passed** 106:7
**path** 11:13 35:6
**patient** 94:12
**patiently** 92:8
**paul** 8:8
**paull** 9:8
**pay** 18:22 94:23
**paycheck** 95:20
**payment** 57:9
  58:25 60:4,15
  65:5,7 73:7,9
  83:22,24 94:20
**payments** 18:21
  57:8,10,11 81:13
  83:22
**pdf** 104:6
**pending** 14:15
  39:9 40:18
**people** 22:1 29:3
  30:1 37:18 40:25
  45:17 65:23 76:24
  93:22 101:24
**perceived** 60:13
**percent** 16:12,14
  16:17 17:20,21,22
  18:19 23:13,15,19
  30:1 41:18 62:14
  69:1 73:9,11,11
  76:22
**percentage** 17:20
  41:16 42:10 57:14

65:10 68:25 73:3
  73:5,6 81:10
  83:14 86:1
**percentages** 72:25
  73:4
**pereira** 89:4
**perform** 57:2
  61:23 63:7
**performance**
  23:20
**performed** 62:6
**performing** 33:1
  57:3
**period** 23:24 24:1
  63:13
**periods** 24:12
**permission** 11:12
  13:21
**permits** 98:14
**perry** 3:6,8,9,16
  4:5,6,10 8:20
  43:13 44:2
**person** 44:10,17
  45:11
**perspective** 24:22
  32:5,25 61:5
**persuasive** 86:16
**pertain** 11:21
  43:19 70:19 78:12
  91:4
**pertaining** 86:7
  87:2 91:6
**pertains** 11:21
  54:12 75:22
**petit** 86:18
**petition** 22:10
**phase** 69:12
**philip** 8:18
**phillip** 8:22
**pick** 67:8
**pierce** 9:9
**pioneer** 98:25
  100:7,8,19

place   26:19 35:23
  62:13 97:23
placed   88:7,25
plain   67:14 84:12
  85:11
plains   1:21
plaintiff   12:12,15
  13:3 43:4,21
  53:14 56:24 72:2
  77:14 85:21,24
  86:24,25 89:24
plaintiff's   12:21
  43:22
plaintiffs   1:13
  3:20 43:10 44:24
  49:16,23 50:13
  61:22 63:2
plaintiff's   63:11
  77:15,18
plan   10:8 25:21
  29:9 30:9 31:11
  33:10 34:13 38:3
  38:4
plausible   81:4
played   52:15
players   57:2
plays   32:21
plaza   7:12
pleading   53:1
pleadings   47:4
  66:8,14 92:23
please   37:23
  38:11
plenty   54:8
pm   107:19
podium   10:22
  24:24
point   18:10 28:22
  30:7 34:20 37:3
  46:2 47:3 52:1,20
  53:14,20 54:23
  55:1,6 56:19
  57:25 62:3 66:5

69:11,14 71:14
  72:21,24 75:12,15
  75:24,24 77:12
  86:1 88:11 104:23
  106:10
pointed   49:18
  50:6
points   54:2 55:4
  59:3,5 67:5,7
  70:14 84:23
  101:17
polkowitz   7:18
  8:13 16:21 18:1
  25:4,5,12,22 26:9
  28:2 31:3,8 32:6
  32:20 34:10,19
population   14:25
  33:25
portfolio   55:20
portion   90:8
positing   64:24
position   52:16
  63:11 67:14 96:16
  97:11 101:9
positions   92:23
positive   17:24,24
  23:3,8,8
possibility   63:17
possible   30:9
post   15:20 22:9
  23:12,25
potential   40:15
  41:11 55:20,21
potentially   29:22
  75:19
practice   13:14
  81:5,8
pre   23:23 69:12
preceding   65:9,15
preclude   88:23
preference   14:23
  23:2,14 24:16
  31:15 40:3,9,10

40:13,22,24 42:16
  54:15,18 55:18,20
  62:12 63:2,11,12
  65:5 68:19 73:7
  80:13 81:7,9,14
  83:5 84:7
preferences   19:9
preferential   78:6
  80:23 83:11
prefiling   53:15
prejudice   99:22
  100:9 101:16
prejudiced   19:11
prejudicial
  102:19
preliminarily
  55:25
preliminary
  55:12
premised   77:19
preparation
  54:20 78:25 79:14
prepare   40:11
  52:6 79:10 80:7
  85:18 90:11
prepared   49:15
  51:4,5 79:3
preponderance
  99:16
prescribed   16:25
  98:7 99:9
present   8:1 27:23
presentation   14:3
  14:4 33:16
presentations
  27:7
presented   27:24
  30:4
presumably   69:12
prevalent   81:8
prevent   68:23
previous   21:3,10
  21:16 57:10 89:1

previously   26:2
  98:16
prima   55:9
primarily   58:22
  77:25
prime   18:8
principle   84:22
principles   85:12
print   47:22
printouts   33:15
prior   23:21
priority   14:8,14
  19:24 20:3 21:6
  21:14 22:5
pritchard   84:16
  89:8
privilege   3:15
  44:8,20 45:8,14
  45:18 46:8,18
  47:11,12,14,17,18
  47:20,23,25 49:13
  49:14 50:2,11,14
  51:10,11,14,15,16
  51:18,23,24 53:22
  53:22,23,25 55:13
  62:18,18 67:11,16
  69:6,18 71:6,8
  74:24 77:22 78:17
  78:18 79:20,21,23
  79:25 84:14,14,19
  84:21 85:5 87:17
  87:19,22
privileged   44:19
  45:10,14 47:11
  57:21 58:1 59:19
  66:12,24 69:22,23
  70:1,8 71:4,16,17
  71:18,19,20,22
  72:1,5,15 74:9,15
  75:10,15,23,23
  77:9,20 78:13,23
  79:16 86:22 87:1
  87:20,24 88:7

89:20,21 90:3
**privileges** 66:18
78:2,12,15
**pro** 7:24 19:10
100:22,24
**probably** 34:20
42:21 43:16 50:12
57:12 66:9 69:4
73:1 105:11
**procedure** 13:5
77:3,4,24 78:22
**proceed** 18:7 39:1
**proceeded** 40:14
**proceeding** 3:3,18
4:1,8,13 39:6
56:23 77:1 79:18
**proceedings**
39:25 81:19
107:18 109:4
**proceeds** 29:18
**process** 12:11
27:11 32:3 34:6,7
68:5,13,13,14,18
85:13,20 86:1,3
86:23 87:10 88:11
88:13,15 89:15
**processed** 84:9
**produce** 64:25
67:17,21 69:16
70:12
**produced** 50:13
51:9 55:23 56:12
60:2,7,7,8 67:1
90:7
**producing** 47:23
71:3
**product** 44:9,20
47:15,17 48:7
49:1,13 50:25
51:14,23 53:22
54:7 55:8 56:1,5
56:10,10,11,12,18
57:19,20,21,22

58:24 62:18 64:9
64:11,12 65:15,19
65:25 66:18,24,25
67:12,16,20,24
69:13 70:25,25
78:12,18 79:20,25
84:14 86:5,8
87:18 91:12
**production** 3:5
4:3 43:2,19,20
46:25 66:21 77:4
77:12,22 91:3
108:6
**productive** 34:14
**professional** 30:3
38:22
**professionals**
26:22 27:6,12,13
29:15 55:18
**program** 15:8
16:15 19:3 26:7
**progress** 3:1 10:7
14:7 19:16,25
24:20 29:24
**projections** 23:21
**prong** 99:12
**proof** 47:9,10
64:21 69:18 71:18
72:6 92:11,25
97:19 101:22
**properly** 27:22
60:17 77:21
**property** 80:21
**proponent** 47:6
**proposal** 34:25
36:20
**proposals** 35:4,5
35:9 36:25 37:3
37:12
**propose** 11:13
14:2 17:4
**proposed** 16:1
17:7 74:1

**proposing** 19:5
37:1
**propped** 76:24
**protect** 56:4 58:23
70:9 86:11
**protected** 44:8
79:22
**prove** 52:18 64:17
64:20 71:17 97:12
**provide** 17:2
31:24 34:25 42:16
44:14 46:13 52:21
58:25 70:15,17
71:16,17 76:11
**provided** 42:11
60:23 89:25 90:1
98:3,8
**provides** 46:9
78:24 98:1
**providing** 33:20
42:10 77:9
**provision** 80:10
80:13,24
**public** 28:7 42:3,5
**pull** 60:22
**purchase** 5:2,16
**purpose** 69:25
70:3 71:2,5 84:20
**purposes** 85:16,21
87:5
**pursuant** 5:14
12:8 15:8 87:10
**pursue** 12:19 81:9
102:20
**pursuing** 37:10
**pushing** 24:14
26:17
**put** 18:7 20:1
21:13 22:12,13
33:22,23 35:10
62:25 71:5 72:15
91:24

**puts** 57:14 70:3
**putting** 20:15
68:23

---

### q

**q&a** 33:24
**quality** 35:18
**quarropas** 1:20
**quarter** 32:22
**quarterly** 28:6
32:15,17 33:3
39:20 41:5
**question** 17:9
22:16 30:21 37:17
38:7,25 39:20,24
40:8 41:8,15,20
43:7 44:21 46:15
47:13,19 48:17
50:22 51:14 61:19
71:2 90:25 93:5
103:7 106:11
**questioning** 53:20
94:22
**questions** 17:10
24:25 25:13,14
28:9 29:5 32:6
61:10 97:15
**quinn** 7:17 25:3
**quite** 60:11
**quote** 83:5
**quoted** 98:14

---

### r

**r** 2:1 3:6,9 4:5,10
7:1 8:20 9:10 10:1
82:14,17,17 89:4
89:4 98:20 101:2
101:2 109:1
**raise** 39:16
**raised** 32:12,12
50:23 52:2 54:7
75:25 88:19
**raising** 35:17
69:10

ranges 23:10
rare 28:5
rarely 100:15
rata 19:10
raw 54:8 60:22
rdd 1:3,4 3:3,18
4:1,8,13
reach 25:11 28:4
30:23 50:5
reached 16:25
31:2,23 61:24
89:14
read 33:1 48:19
52:14 74:8 84:8
84:20 88:9 94:11
96:22
readable 104:7,14
ready 24:15,17
reagor 82:17
real 20:22 46:25
68:24
realized 29:20
really 26:17 37:2
39:13 41:11 45:25
46:1 47:8 48:12
48:23 49:4 51:7
52:10,25 53:5,23
58:6,18,21 60:24
61:25 65:18,18
66:2,11 72:24
85:23,25 92:20
94:6 104:10
reason 25:9 38:15
42:22 48:6,14
81:25 87:8 94:20
99:23 100:12
103:1 104:8
reasonable 29:3
49:24 53:2,7
62:20,24 63:7,18
64:5,8 68:15
80:17 82:7 83:8
83:12,16 85:10,21

88:10 100:13
101:11
reasonableness
50:18
reasonably 53:4
64:4 80:19
reasons 29:11
81:4 82:1 102:24
103:3
rebuttals 93:12
recall 15:6 16:16
24:9 26:1 45:24
46:4,5
receive 12:14,21
12:22 13:10 17:5
18:15 27:18 95:2
received 17:17
18:17,21 42:8,20
95:4
recess 93:16 94:5
recipients 74:18
81:15
recite 90:11
reciting 62:4
reclassified 14:12
recognize 47:25
recognized 84:22
87:18
recollection 102:1
reconcile 32:2
reconciled 14:9
19:7,16
reconciliation
14:8 24:4
record 77:8 78:10
90:14 96:18,22
104:19 105:2
107:6 109:4
records 83:1,24
recover 22:22
recovered 22:21
recoveries 20:20
20:25 22:24,24

23:2,12 24:7
35:11
recovery 16:14
17:21 37:5 40:10
41:16,19 57:15
68:25,25 73:5
81:10 83:14,15
86:2
redact 60:24
redacted 67:18,22
86:21 87:8 91:4
108:7
redacting 91:3
108:6
reduce 31:16
reduced 15:2,4
73:1
ref 82:10,21
refer 21:23 48:12
58:10 90:13
reference 22:23
48:14 102:15
referenced 43:22
44:12 75:9 77:14
77:16,21
references 48:7
referencing 45:16
referred 36:19
59:19
referring 53:5
91:11,12
refers 39:22
reflect 38:21
49:17 94:20 104:4
104:11
reflected 45:8,17
95:6
reflecting 13:2
reflects 78:11
reform 82:4
refusing 64:21
regard 46:12
67:17,20 70:11,14

78:25 102:11
regarding 5:15
91:3 108:6
regards 97:10
103:7
regret 101:23
regulatory 84:25
reisman 3:22 4:16
8:21
related 3:9,21 4:4
4:16 5:7,12,21,21
6:6 10:9 39:9
64:20
relates 50:11
relating 83:1
relationship
60:15
relatively 83:10
relators 22:4
release 86:17
relevance 40:5
relevant 38:13
52:7 53:8 67:25
68:1,12 80:1,10
80:16 82:1 88:19
98:4
relied 79:25
relief 5:7,21
reluctance 70:17
rely 50:8 62:9
64:22 72:2 87:1,3
relying 47:22 72:1
remain 23:7,9,21
23:22
remainder 13:22
15:17
remaining 14:25
18:24 19:4 20:19
20:23 21:1 22:19
24:15,19
remains 15:17
20:5

remarks  37:2
remind  36:11
replaced  94:5
reply  4:3 43:5,19
  48:19 96:18
report  14:11,17
  14:19,24 20:22,24
  21:5 23:1,6,9,11
  23:16,19 32:13
  33:12,20 34:8
  39:20 40:11,18,21
  41:1,5
reporting  21:10
  42:14
reports  27:4,6,11
  27:16,18,24 28:23
  33:3
represent  36:14
  36:14
representative
  16:20 24:23 25:5
  25:24 27:18 29:14
  30:15 31:6 37:9
  79:5 86:13
representatives
  30:16 34:18
represented  26:2
representing
  36:12
represents  41:14
  42:15
request  11:18
  27:3 31:25 43:20
  43:20 45:20 46:13
  46:25 47:1 75:21
  77:12
requested  11:18
  32:20 45:7
requests  3:13,14
require  89:19
  101:12 104:19
required  18:23
  20:17 21:11 28:7

42:13,22 85:7
  87:15 89:22 97:12
requirement
  53:18 80:2
requirements
  28:21 92:17
requires  46:10
  53:14,24 84:4
  85:13 86:16 88:10
  88:13 98:22
requiring  54:12
rescap  68:14
  89:17
reserved  19:10
reserves  17:7
  20:14,15 21:6,17
  21:19
residential  78:9
  89:3,11
resolution  19:8
  31:4
resolve  17:10
  24:16,17
resolved  34:17
  36:1 43:25 44:3
  77:6
resolving  77:12
respect  13:10 27:4
  27:23 31:3 37:6
  83:17
respective  90:7
respond  32:24
  36:10 67:3 71:12
  85:20 96:15
responding  69:10
response  4:15
  45:4 46:16 49:12
  72:14 74:2 96:17
  96:25 97:7
responses  3:6,12
  3:12,13,14 4:4
  17:17 43:23 44:4
  73:23,24 74:8

77:5,7
responsible  28:13
rest  80:23
resting  29:23
restructuring
  16:19
resubmit  94:13
  103:13
resubmitted
  104:13
result  15:3,22
  19:2 85:8
resulted  23:17
  83:13
resulting  19:2
retained  52:5
  65:24
retirement  38:3
revealing  61:17
review  10:11
  27:16 29:4 102:2
  102:7
reviewed  43:4
  47:3 82:25 92:14
  93:8 96:24 101:4
  102:16,17
reviewing  66:7,14
revised  17:14
riedel  101:2
right  11:11 13:5
  16:6 21:22 22:14
  22:14 28:15 33:2
  33:17 34:1 35:8
  36:17 38:20,23
  39:13 40:16 41:6
  41:22,23 42:1,13
  42:24 43:15 44:5
  45:9,10 46:4,23
  48:3,5,11 51:20
  53:6,10 57:15,23
  58:5,8,11,13,15
  58:20 59:14,16,20
  59:20 62:16,21

63:9,23,23,25
  65:11,12,12 68:3
  68:7 69:19 72:2,3
  72:3,20,23 73:4,6
  73:9,13 74:19
  76:3,17 91:9,18
  92:4,6 94:14
  95:15 96:7,10
  97:16,17 98:11
  103:21 104:21
  105:8,14,25 106:2
  106:4,6
rights  78:3
risking  45:4
road  109:21
robert  2:2
robins  8:14
roebuck  3:23 4:17
  37:25 42:25 94:24
role  32:20 34:17
roll  60:1
room  1:20
rough  15:14
roughly  17:8
  18:24 19:9,12
  23:15 35:16
row  48:13
rows  48:2
rule  39:14 46:10
  51:8 53:15,24
  54:22 55:1 56:4
  58:23 62:22 66:20
  69:16,25 70:2,11
  71:5,9 75:13
  76:22 77:2,3,23
  77:24 78:21,24
  79:7,8,16,18 80:2
  85:16 86:8 87:9
  87:16 88:6 91:10
  91:13 92:19 93:1
  97:4,13,24 98:1,7
  98:9,12,13,14,22
  99:9 100:16,17

102:4
**ruled** 97:3
**rules** 72:18 100:2
100:3 103:19
**ruling** 67:9 76:9
76:14 90:13,13,21
91:3,5,11 97:17
102:7 104:22,24
**rulings** 90:12
108:3
**run** 54:18,20
83:22 90:19

**s**

**s** 3:9,21 4:4,16
5:21 6:6 7:1 9:4
10:1 82:18 98:19
**s.d.** 82:16
**s.d.n.y.** 78:10
86:19 89:5,10
98:20,21
**sacrosanct** 66:17
**sale** 5:3,17 11:10
**sales** 20:23 24:7
**sara** 8:4
**sarachek** 8:15
**satisfied** 15:11,15
18:16,20 48:21
70:2 71:9 93:1
**satisfy** 20:11
**savings** 38:4
**saw** 11:16 16:22
27:2 39:16 41:17
96:4
**saying** 34:3 38:20
40:18 52:23 58:23
59:8 60:22,23
61:2 63:1 65:4
70:9 71:24 86:14
94:15
**says** 32:16 39:23
52:25 56:24 57:2
57:3,13 63:6,7
65:9 68:25 71:15

73:1 83:7 93:6
**scan** 104:5
**scans** 103:9
**scenes** 26:13 35:1
35:3
**scheme** 84:25
**scores** 51:20
**screen** 16:21,22
**se** 7:24 66:12
100:22,24
**sears** 1:8 3:12,14
3:23 4:17 6:7 10:3
37:25 42:25 94:24
95:17,21 107:13
**second** 12:25 29:7
43:6 48:5 66:13
75:4 85:24 100:6
**section** 67:10 78:7
80:14,16,23 83:19
85:8,22 87:2
88:10
**secure** 86:17
**secured** 14:8,15
14:16 20:2 21:6
21:15,23 22:1,5,8
22:19 102:12
**see** 10:16 13:14
16:21 22:21,24
25:8,15,17 39:10
40:23 44:18 45:9
48:9,14 49:6
59:25 66:9 78:8
82:14 84:16 86:17
89:1 98:19
**seek** 12:20 44:7
**seeking** 12:11
44:4 75:21 100:10
**seeks** 77:6,13
78:20
**seen** 72:4
**sees** 96:2
**selective** 87:24

**selectively** 88:18
**sellers** 5:2,16
**send** 19:5
**senders** 74:18
**senior** 37:25 38:2
94:24
**sense** 32:22 33:12
81:22 88:17
**sensible** 32:9
**sensitive** 26:12
**sent** 94:11 95:4
104:6
**separate** 22:7
46:6 57:17 60:20
72:17,18 75:16,24
76:15 102:24
**separately** 59:25
60:3 87:6
**series** 35:15
**serve** 31:22 87:11
**service** 12:14,21
13:2,2,7,7,10,15
**services** 98:25
**set** 30:5 51:1,2
68:19 72:18 77:8
78:15 83:19 90:14
90:15,16 92:19
95:4 96:18 98:13
101:5
**setoff** 19:2
**settle** 37:13 81:22
90:18
**settled** 23:14
**settlement** 35:4
36:19,25 37:1
68:15
**settlements** 23:17
**setup** 65:14
**share** 26:23,25
27:4 28:4 29:8
30:22 32:4
**shared** 29:7

**shield** 66:20 87:22
**shifted** 102:8
**ship** 73:8
**shipment** 65:6
**shocking** 85:5
**shouldn't** 63:2
64:11,22 70:2
71:10
**should've** 78:2
**show** 18:14 19:1
19:12,13,17,20,23
19:25 20:1,2,3,25
21:1,3 61:10
69:20 83:3,24
85:17 86:22 87:10
99:2,15,16 103:23
**showed** 13:7
20:24
**showing** 20:23
21:3 50:14 67:18
86:16 87:1 88:13
88:13 98:23
**shown** 88:15
92:17
**shows** 20:10 57:9
57:11 64:13 79:9
98:10,15
**shultz** 9:10
**side** 42:7
**sides** 92:13
**sign** 74:18
**signed** 73:24
97:21
**significant** 19:16
19:25 24:5,5,10
24:19 27:14 29:25
**signoff** 27:12
**similar** 35:17 57:6
68:14
**similarly** 102:15
**simple** 81:11
**simplified** 59:7

simply   17:10 18:5
    18:10 52:16,20
    62:4 74:2 77:8
    82:12 83:7,15
    87:10 90:13
    100:24 101:18
    102:14
single   48:1 63:12
sir   37:20 94:4
    95:12 106:11
sit   25:19
situation   24:13
    72:4
situations   72:9
    95:20
six   25:24
size   47:25 101:20
skipping   50:22
skrzynski   9:11
small   15:10 48:1
smith   6:3 7:24
    9:15 11:16,16,19
    11:24 12:1,6
    37:17,20,24,24
    38:2,9,11,14,16
    38:17 73:14,16,19
    75:4 92:7,12,24
    93:3,6,21 94:2,4
    94:16 95:9,12,15
    96:6,18,20,23
    97:4,18 98:15
    100:22 101:15,23
    101:25 102:10
    103:2,7,21 104:1
    104:15,17,21,24
    105:3,16,19,23,25
    106:4,8,11,13,16
    106:25 107:7,9,16
smith's   92:8
    96:13,15,25 97:7
    97:10 99:8 101:5
    108:9

solace   70:13
solars   82:14
solution   94:12
solutions   109:20
somebody   72:5
someone's   69:20
somewhat   57:6
sonya   6:25 109:3
    109:8
sooner   29:18
sophisticated   34:5
sorry   11:15 21:14
    28:13,16 37:19
    46:4,15 66:3
    67:23 68:10 73:20
    75:6 76:1,2,5,5,7
    76:18 82:21 90:12
    91:2 98:5 105:19
    106:8
sort   25:19 45:4
    46:9 60:5 65:3,9
    69:5 73:20 74:3,4
    80:4
sorts   65:23
sought   12:15
    31:15 43:23
sound   23:23
sources   22:20,25
    23:4
southern   1:2
speaking   11:15,19
    16:5 37:19,21
specific   51:1,2
    66:17
specifically   27:2
speculate   81:3,25
spent   24:6
spreadsheet   56:15
    56:21 57:5,15
    59:5,12,22,24
    61:3,3 65:4,14
    70:15 71:3 91:17

spreadsheets
    51:17 55:17 56:9
    59:1 65:1 66:9
    91:4
spreadsheet's
    57:18
sr   5:22
stage   35:19
stakeholders
    29:16
stakes   36:1
stand   24:15 28:16
    32:5 46:21 48:25
standard   86:16
    93:1 99:12
standing   84:15,18
star   82:17
start   14:7 18:9
    20:12 32:13 47:19
    59:8 105:14
started   17:15
    40:23 53:20 75:13
state   12:12 13:7
    37:22,23 81:1
    88:3 90:14 102:18
stated   10:5 80:15
    81:1 82:8,12 90:1
    100:23,25 101:7
    103:3
statement   25:10
    57:8 81:12 96:6
statements   32:9
states   1:1,19 56:4
    78:16 81:3 86:9
    86:18 95:24 98:3
status   10:7,9,19
    14:15 20:2 22:5
    27:21 34:22
statute   52:25
    54:11 62:12 64:2
    67:15,19 83:7
    84:4,8,9,12,24
    85:11,12

statutory   60:13
    84:23
stauble   9:12
stearns   89:9
steen   7:10
step   50:22
steven   3:22 4:16
    8:21
stop   56:19
straight   94:5
strauss   36:14
street   1:20 7:19
strengths   60:18
stretched   21:11
stretto   55:19
structuring   30:17
study   82:4
subject   12:17
    16:11 19:8 29:1
    33:10 45:2 51:23
    58:6 63:19 74:3
    79:7 83:25 86:6
submission   107:1
submit   13:16
    71:18 103:3 104:9
    104:12
submitted   104:10
subsection   80:20
    80:24 98:3
subsequent   15:25
subsequently   89:7
subset   87:23
substance   62:3
    84:10 88:4,6,9,12
    88:14 97:3
substantial   50:5
    63:3,15 73:2 79:9
    79:11 80:6 85:17
    85:19
substantially   80:8
    84:25
substantive   45:3
    78:3

**succeeding** 62:14
**successful** 17:12
  31:17
**successfully** 35:24
**sufficient** 49:21
  69:4
**suggest** 12:17
  28:22 44:25 45:6
  46:7 56:7 70:6
**suggesting** 33:10
**suggestion** 34:14
  84:3
**suggestions** 35:5
**suite** 7:19 109:22
**sullivan** 7:17
**summarize** 60:21
**summary** 63:21
**super** 20:3 22:5
**superfluous** 33:19
**supplement** 33:16
**supplemental**
  73:23
**supplied** 94:17
**supplies** 95:17
**supply** 41:7
**support** 3:8 4:3
  5:10
**supported** 52:3
**supreme** 85:3
  98:24
**sure** 13:23 28:21
  30:10 31:25 36:11
  36:20 37:15 39:12
  39:21 41:9 47:6
  52:24 55:5 57:20
  66:6,10 71:13
  75:17 82:12 90:20
  93:16 95:3,5,23
  106:13
**surety** 79:6
**surprise** 36:3
**surprised** 65:13
  73:12

**sustained** 97:1
**sword** 87:23
**systems** 85:3
**szydlo** 9:13

**t**

**t** 82:14 86:18,18
  109:1,1
**taggart** 82:10
**take** 10:23 20:14
  26:19 35:19 43:6
  46:22 54:9 61:21
  61:25 65:25 70:13
  81:10,12 104:11
**taken** 22:18 24:12
  32:10 83:16,17
  84:1 100:6
**talk** 56:5,9
**talked** 73:21
**talking** 15:16
  36:25 37:13 60:10
  73:17 79:13,15
**targets** 55:20
  59:12 70:16
**task** 30:23 55:24
  56:7
**tax** 21:8,9,24
**taylor** 78:18
**teams** 24:17
**technically** 98:12
**telephone** 94:3
**telephonically** 8:1
**tell** 72:14 94:14
**telling** 72:9
**tentative** 67:9
**terence** 8:3 39:5
  43:9 44:24 47:5
**term** 45:23
**terms** 15:2,6 22:2
  22:3,17 23:11,14
  85:13
**test** 100:7,19
**tested** 93:23

**testimony** 72:19
**texas** 82:16,19,23
**thank** 10:12,18
  11:1,3 12:6 13:18
  13:24 16:8 17:25
  25:2,2,9 36:5
  37:14,16 38:23
  39:15 42:23 47:24
  67:6 91:2,2 92:4,6
  96:7,12 97:16
  107:10,12,15
**thanks** 22:15
**that's** 58:8 60:24
  61:1,17 62:2,16
  64:18,18 65:3
  69:3,19 70:3
  73:10,10 74:20,21
  74:22,23 75:1,12
  75:24 76:14 77:1
  77:10 81:24 90:4
  91:10,19,21,23
  92:20,21 95:3
  97:10 99:11
  100:20 101:18
  107:14
**theme** 81:1
**theories** 86:12
  87:13
**theory** 78:21,23
  78:24 87:9,12
**thereof** 97:4
**therewith** 5:7,20
**there'll** 105:10
**there's** 58:12 59:3
  59:16,23 63:18,24
  64:14 65:8 72:17
  72:18 73:4,5
  75:16 80:3 82:1
  91:14 95:22 97:8
  106:6
**they're** 62:3,4
  64:10,21 73:6
  80:8 82:12 88:18

  88:19,21 102:25
**thing** 21:7 29:7
  34:23 72:8
**things** 18:12
  21:25 25:19 28:4
  29:2 30:25 32:5
  35:17 53:17 56:22
  61:16 73:21 79:3
**think** 10:6,23 15:9
  15:14 22:3 27:5
  29:5,13,20,24,24
  32:3,8,19,23
  33:21 34:3,8,14
  34:19 35:8,11,21
  37:4 39:7 40:8,19
  43:18 46:20,24
  47:9 50:18,21,22
  51:13 52:1,1,10
  52:11,14,20 53:10
  53:11,13,15,18
  54:17,22,23,25
  55:1,11,24,25
  56:7,14 58:19
  59:10,18 60:16
  62:10,16,22,22
  63:1,9 64:22
  65:10 66:7,9,13
  66:15,25 68:1,5,9
  68:11 69:3,19
  72:8 73:1 75:8,10
  75:18,24,25 78:10
  89:12 90:4,24
  91:10 93:14 94:18
  95:2 97:8 107:10
**thinks** 49:23
**third** 16:1 18:4
  26:18 29:23 88:1
  100:12
**thought** 17:11
  18:15 21:12 25:18
  33:19 41:1,16
  42:5 96:4

**three** 11:8 12:5
24:12,12 27:19
29:2 75:21 87:13
100:7
**thresholds** 20:17
**tiktin** 8:16
**time** 6:2,5 23:22
27:16,21 32:4
35:19 46:1 55:13
59:21 76:22 92:9
92:18 93:4,25
94:8 96:14 97:14
97:19,24 98:2,5,7
100:25 101:7
103:8,12 104:10
104:12,16 105:14
105:20,22 106:2,7
107:3,3 108:9
**timely** 98:16 99:3
106:23
**timing** 97:20
**title** 80:14
**tobey** 8:6
**today** 10:10,24
18:2 25:6,20
26:15 30:6 39:9
52:12 54:25 97:11
101:25 102:15
103:24 105:5,9
107:11
**today's** 10:4 16:11
18:6 25:18
**today's** 105:2
**toe** 45:3
**told** 94:8,23
**top** 18:18 34:15
59:9 61:4 67:16
69:17
**total** 14:25 16:13
17:21 20:5,25
23:9 39:23
**totally** 60:19 61:3
72:20

**touch** 27:1
**track** 13:11
**tracks** 21:19
**trail** 82:21
**trailhead** 82:15
**transcribed** 6:25
**transcript** 102:2,4
109:4
**transcripts** 94:10
**transfer** 63:12,12
80:20,23 81:16
83:2,11
**transfers** 41:15
59:10 60:14 61:5
61:13 63:2,10
78:6
**transform** 5:22
7:11 11:7 12:20
29:19 30:14
**transform's** 11:9
**treat** 102:6
**treatise** 81:2
**trial** 36:2 62:6
69:12 70:10 71:25
78:25 79:4 85:14
**tried** 36:2 48:1
94:7
**true** 71:22 109:4
**truly** 88:24
**trustee** 53:1 80:16
81:10 82:25 83:7
**trusts** 81:6
**truth** 71:18
**try** 28:22 94:12
95:2
**trying** 28:17,25
30:22 35:2 38:10
38:14 70:9 93:14
**turn** 10:22 24:24
39:9 95:1
**turned** 107:2
**twice** 104:14

**two** 12:19 13:11
15:7 25:22 27:8
28:14 29:9 35:22
43:23 44:7 45:7
45:16 46:2 47:13
48:13 55:15 59:16
67:5 73:4,20,25
82:20,23 84:23
**twofold** 45:1
**type** 42:2 83:4
95:20,22
**types** 21:25 51:7
51:25 61:22 73:4
**typical** 100:7

**u**

**u.s.** 2:3 78:16,19
89:5 99:1 101:3
**ucc** 26:4
**uday** 9:1,14
**ultimate** 15:4 86:1
**ultimately** 36:2
85:14
**unable** 28:4 94:20
**underlying** 49:25
50:12,19 60:1,3
60:20 61:2 75:8
77:17 78:5 83:18
84:6,9 88:22
89:16 105:15
**underneath** 62:2
65:1 68:24
**understand** 27:10
34:6,8,9 35:22
36:4 40:5 52:13
52:13 55:7 57:18
58:4 70:20 72:21
76:1 91:3,19
95:21 101:9,23
103:10 104:4
**understanding**
28:25 45:15
**understood** 13:12
76:13 86:25

**undertaken** 99:18
**undertaking**
81:15
**underwriters**
78:8
**undiscoverable**
56:6
**undue** 79:11 80:7
85:18
**unfair** 88:23
**unfold** 25:11
**unfortunately**
31:12
**uniformly** 35:24
**united** 1:1,19
78:16 86:18 89:4
**unknowing** 99:15
**unpack** 59:3
**unsatisfied** 15:17
**unsecured** 30:15
37:10 102:9
**update** 3:1 10:7
10:10 14:4,7
23:11 32:16 33:11
34:22
**updated** 59:22
**updating** 29:1
**upjohn** 78:16
**urquhart** 7:17
**use** 60:11 69:16
70:10,12 87:24
104:5
**uses** 21:3 23:5,7,9
**usually** 27:18 54:7
63:21 100:3,9

**v**

**v** 1:14 3:4,19 4:2,9
4:14 43:1 78:8,16
78:18 82:9,14,16
84:16 85:3 86:18
89:2,4,8,9 98:19
98:25 100:4 101:2

**v.r.** 82:10
**valuation** 57:4
  66:22
**value** 50:5 57:13
  60:16 61:14,14
  63:3,15 73:2
  81:23 86:2
**valued** 60:17
**various** 59:11
**venture** 100:4
**verified** 96:1
**verify** 95:24 96:3
**veritext** 109:20
**vernacular** 81:7
**version** 67:18
  86:21
**versions** 59:22,24
**vet** 28:8
**vetting** 27:11
**view** 25:15,19
  27:23 28:8 61:21
  61:25
**viewed** 79:19
**views** 12:18
**vincent** 8:11
**virtually** 56:6
**vocal** 26:11
**vouching** 95:22

**w**

**w** 77:1,2 98:19
**waiting** 29:18,20
  92:8
**waived** 51:11
**waiver** 23:18 45:4
  45:14 54:23 55:2
  58:9,12 62:3 69:5
  74:5,23 78:23
  85:5 87:12,13,17
  87:23 89:8,18
  91:14
**waivers** 84:20,21
**waiving** 74:3

**walk** 14:2 18:13
  34:10
**walker** 2:5
**wander** 8:17
  39:16,17,19,22
  41:7,8,13 42:5,15
  42:18,22,23
**wander's** 27:2
  32:11 33:1
**want** 21:22 31:9
  45:1 46:23 50:19
  54:24 66:1 67:3
  72:2 87:3 89:24
  101:24 104:11
**wanted** 11:8
  24:22 25:9 36:18
  37:14 39:7,11
  61:22 73:22 75:17
  93:12 95:15,16
  104:9
**wants** 55:23 69:11
  101:7
**warranted** 86:15
  90:5
**washington** 7:20
**wasn't** 75:13,18
  75:20 93:10,11
  103:16
**water** 62:19
**way** 17:11 18:7
  29:6 46:24 48:13
  52:15 65:14 84:8
  84:11 87:20 93:22
  95:6
**ways** 52:17
**we've** 14:18 15:4
  15:7,16 19:16,24
  20:24 21:8,9
  22:12,12 26:21
  29:7,20 30:4
  32:25 38:7 42:8
  42:11 49:17

**weaknesses** 60:19
**wechsler** 98:19,20
**week** 30:5 32:22
  33:11,13 34:14
  105:11
**weekday** 103:11
**weekly** 25:12
**weigh** 27:23
  100:10
**weil** 7:3 10:14
  13:25 40:11 94:21
  96:9
**weintraub** 8:18
**went** 17:15 32:13
  55:19 59:20,21
  86:24 94:5
**wet** 38:21
**we'd** 65:12
**we'll** 65:10 73:18
**we're** 60:5,10,18
  61:4 64:7 65:4
  70:9,10 71:21,21
  73:22
**we've** 59:9 60:2
  61:4 69:13 70:2,4
  71:9 77:6 100:14
  106:20
**what's** 61:25
  68:22 69:23
**wheels** 18:7
**white** 1:21
**wholly** 78:6
**willfulness** 99:4
  99:14
**winiadaewoo** 1:15
  3:4,10,19,20 4:2,5
  4:9,11,14 43:1,2
  43:13 77:1
**winniadaewoo**
  90:9
**winthrop** 89:2
**wires** 18:8

**withdrawn** 19:21
**withheld** 48:6,14
  50:24 59:9 61:4
  69:13 77:20,21
  88:24 91:6
**withhold** 49:3
  71:15 91:5
**withholding** 59:4
  79:1
**witness** 61:22
  79:13
**won** 63:21
**wondering** 37:21
  38:2
**words** 61:14
  102:7
**work** 19:18,23,23
  24:15,17,19 26:21
  29:16 30:20 44:9
  44:20 47:15,17
  48:7 49:1,13
  50:25 51:14,23
  53:22 54:7 55:8
  56:1,5,10,10,11
  56:12,18 57:19,19
  57:21,22 58:24
  62:18 64:9,11,12
  65:15,19,19,21,22
  65:25 66:18,24,25
  67:11,16,20,24
  69:13 70:24,25
  76:23 78:11,17
  79:20,24,25 84:14
  86:5,8 87:18
  91:12
**worked** 17:25
  26:3 32:3 45:13
**working** 16:19
  26:13 28:10 30:4
  30:8 35:15 51:3
**works** 49:16
**world** 33:18

| | |
|---|---|
| **worth** 56:17 59:11 61:7 70:24 73:8 | **'** |
| **wouldn't** 57:15 71:21 76:23 | **'s** 88:20 |
| **would've** 62:17 97:25 | |
| **wrangled** 28:18 | |
| **written** 10:9 | |
| **wrong** 33:9 | |
| **x** | |
| **x** 1:5,11,17 45:12 45:13 82:14 108:1 | |
| **xi** 80:14 | |
| **y** | |
| **y** 45:13 82:18 | |
| **ya** 74:5 | |
| **yeah** 37:20 44:25 48:4 68:9 72:24 75:3 76:1,9 92:1 92:12 107:9 | |
| **year** 15:13 28:13 28:17 57:10 | |
| **years** 25:22 29:9 29:22 54:21 63:20 | |
| **yesterday** 12:9 17:15,23 | |
| **york** 1:2 7:6,13 88:3 93:23 | |
| **you'll** 71:17 76:15 | |
| **you're** 58:9 60:21 60:23 62:9,21 67:9 71:24 72:9 72:25 75:21 | |
| **you've** 60:23 | |
| **yup** 21:21 | |
| **z** | |
| **zensky** 8:19 36:9 36:10,13,18,23 37:14 | |
| **zoom** 25:6 | |
| **zooms** 33:18 | |