TANNEN LAW GROUP, P.C.
77 W. Washington St, Suite 500
Chicago, IL 60602
Telephone: (312) 641-6650
Michael Murphy Tannen, Esq.
*Attorneys for Diana Arney*

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | |
| | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | |
| | Case No. 18-23538 |
| Debtors. | (RDD) |
| | (Jointly Administered) |

### RESPONSE OF UNIDENTIFIED AND UNIDENTIFIABLE
### FUTURE TORT CLAIMANT DIANA ARNEY
### TO MOTION TO ENFORCE SALE ORDER AND FOR OTHER RELIEF OF
### <u>RULE 363 ASSET PURCHASER TRANSFORM</u>

Unidentified and Unidentifiable Future Tort Claimant Diana Arney ("Arney"), through her attorney Michael Murphy Tannen of Tannen Law Group, P.C., having been admitted to this Court *pro hac vice*, hereby tenders her response to the motion to enforce sales order and for other relief of asset purchaser Transform SR Brands LLC ("Transform" or "New Sears")(Doc. 9647). Arney states as follows:

### **Introduction**

1. On January 7, 2020, Arney's dryer started on fire and burnt down her house and severely injured her. The dryer was manufactured by Electrolux, bore Sears's iconic Kenmore label, and was sold by Sears in 2008.

2. As a result of the fire, Arney suffered extreme respiratory distress, prolonged hospitalizations, and in-patient care at skilled nursing facilities. Arney's medical bills alone exceed

$900,000.00. Arney filed suit in November 2020, alleging that Sears's Kenmore dryer was unreasonably dangerous. Among other things, Arney alleged that lint could accumulate in the dryer's unseen nooks and crannies and ignite in the dryer's combustible plastic air duct.

3. Arney was injured and filed suit in Illinois state court after Old Sears had filed for bankruptcy in 2018; after the deadline passed for the filing of proof of claims; and after this Court approved the Rule 363 asset sale to Transform in February 2019. The order approving the asset sale to New Sears contains numerous provisions purporting to extinguish claims for successor liability against New Sears. (Arney refers to Transform as "New Sears" in this response because Edward Lampert himself referred to the asset purchaser as "New Sears" in a letter to Congress.)(See letter attached as **Exhibit A**.)

4. New Sears's motion to enforce sale order is notable in four respects: (i) its condescending vitriol; (ii) its heavy-handed threat of sanctions for Arney's supposed violation of a Rule 363 sales order entered long before she was injured and of which she had no knowledge or notice; (iii) its threadbare citation to applicable case law to support its efforts to extinguish Arney's state law cause of action for successor liability; and (iv) its studious refusal to acknowledge Arney's due process rights.

5. For the reasons that follow, Arney's state law successor liability claim is neither a "fool's errand" nor a "futile attempt to obtain findings that are in contravention of the Sales Order" nor a "fishing expedition mounted for the express purpose that the Sales Order forbids." (See motion to enforce at pgs. 3 & 11).[1]

---

[1] Moreover, the request of Arney's counsel to continue the hearing date on this motion beyond September 27 was not an attempt "to stave off the inevitable." (See email exchange of August 25, 2021 between Arney's counsel and Transform's counsel, **Exhibit B**.) Instead, Arney's counsel was stricken with breakthrough Covid on or about August 18th. Moreover, given the heady and impactful issues involved in the parties' dispute, Arney's counsel thought that the time between Transform's filing of its reply and the hearing was cramped. (**Exhibit B**.)

2

**Arney's Efforts to Secure Answers to Baseline Questions**

6.      Immediately upon being retained, Arney's counsel sought some baseline information from Old Sears and New Sears relevant to the pending motion to enforce. (See letters and emails attached as **Exhibit C**.). Here is what Arney learned:

- Debtor considers Arney's post-petition injuries and state court lawsuit as a future contingent claim. (See letter of August 9, *Id*., at page 3.) As will be discussed below, Arney disagrees.

- Debtor did not list Arney as a creditor in its schedules. *Id.*, at pages 3-4.

- Debtor did not provide actual notice to Arney of the bankruptcy before she was injured. *Id*.

- Debtor did not provide actual notice to Arney that she needed to file a proof of claim. *Id*.

- Debtor did not provide actual notice to Arney of the hearing to approve the Rule 363 asset sale from Old Sears to New Sears. *Id*.

- Debtor believes that it satisfied notice of all these events through nationwide publication. *Id*. As will be discussed below, Arney disagrees.

- Debtor believes that Arney's claim accrued when the dryer which caught on fire was manufactured, distributed, and sold in 2008. (See email dated August 4, 2021) As will be discussed below, Arney disagrees.

- Transform asserts that Arney's successor liability claim was extinguished by the court's approval of the Rule 363 sale from Old Sears to New Sears. Transform cited an asbestos case, *In Re Johns-Mansville*, 57 B.R. 680 (Bankr.S.D.N.Y. 1986) and *In Re Old Carco*, an inapposite extended warranty case. 492 B.R. 392 (Bankr. S.D.N.Y. 2013) As will be discussed below, Arney strongly disagrees that these cases warrant the snuffing out of Arney's successor liability claim.

**Status of Arney's State Court Suit**

7.      Before seeking an injunction against Arney in this Court, New Sears filed a motion in the Illinois state court case to dismiss the counts against it for two reasons: the counts did not contain enough facts to allege successor liability, and even if they did, the Rule 363 sales order barred those claims. (See motion to dismiss, *sans* exhibits, attached hereto as **Exhibit D.**)

3

8.      On June 17, 2021, in response to the motion to dismiss consistent with the Illinois Code of Civil Procedure, Arney filed a motion to continue New Sears's motion to dismiss so that Arney could conduct successor discovery. That motion was supported by the sworn affidavit of Arney's counsel and Illinois case law about the *prima facie* elements of successor liability. *See e.g., Vernon v. Shuster*, 179 Ill, 338 (1997). (The motion and affidavit are attached as **Exhibit E**.)

9.      On June 23, 2021, Arney's motion to engage in successor liability discovery before responding to New Sears's motion to dismiss was granted. (See order attached as **Exhibit F**.) She timely issued that discovery.

10.     On June 23, 2021, after the motion to conduct discovery was granted, New Sears's state court counsel sought reconsideration and clarification of the order through unorthodox, substantive, argumentative and direct email communications to the state court judge touting the primacy of the Rule 363 order approving the asset sale. These emails are attached as **Exhibit G**. The state court judge reassured New Sears's counsel that he had not denied the motion to dismiss. *Id*. Instead, the state court stated that Arney and the state court needed discovery before ruling on the motion to dismiss. Undeterred, New Sears's counsel emailed the state court judge again and argued the following:

> Thank you, Judge. I understand that part about the motion to dismiss.
>
> My issue arises from the fact that the discovery is seeking concerning the successor liability theory of recovery **cannot possibly be at issue** based on the relevant portion of the bankruptcy order. [Emphasis in original.]
>
> The Federal Bankruptcy Court explicitly found that there can be no successor liability, so how can discovery be allowed on an issue that is already legally resolved? This is a collateral estoppel issue at this point. These are not my representations on behalf of my client. I am citing a legally binding Federal Bankruptcy Order for these final findings. *Id*.

11.     On July 13, 2021, New Sears's filed its motion to enforce the sales order and for other relief in this Court.

4

12. On July 26, 2021, the state court granted New Sears's motion to stay its compliance with the successor liability discovery pending the resolution of the motion to enforce in this Court. (See order attached as **Exhibit H**.) Arney's counsel readily agreed to stay compliance with state court discovery until this Court resolves the motion to enforce.

13. As of the filing of this response, New Sears has not been required to answer the successor liability discovery in Arney's state court case.

### Arney Is Not Proceeding Against the Debtor's Estate

14. Arney has repeatedly stressed to Old Sears that she has no intention of proceeding against Old Sears's bankruptcy estate. (See letters attached as **Exhibit C**.) Arney's state law successor liability claims against New Sears and her opposition to New Sears's motion to enforce the sales order have nothing to do with Old Sears. In addition, separate and apart from opposing New Sears's motion to enforce the sales order, Arney is seeking information about whether Old Sears has any applicable primary, excess or umbrella insurance. Arney's discussions with Old Sears are ongoing and may result in a Rule 8030(b)(6) deposition. As of now, Old Sears has advised Arney that its primary insurance in effect when the dryer was manufactured and sold in 2008 has been exhausted and that Old Sears had no liability insurance in place as of the date when Arney was injured in 2020. Arney has the right to determine whether insurance proceeds exist under any policy issued to Old Sears. If so, Arney will move to lift the stay. Indeed, this Court recently granted just such a routine motion last week. (Doc.9802). Moreover, in her state court lawsuit, Arney has alleged that a joint venture existed between Old Sears and Electrolux. Should such a joint venture exist, Old Sears and Electrolux would be deemed partners. The knowledge and conduct of Old Sears would be imputed to Electrolux. Arney has assured Old Sears that she would use joint venture evidence only against Electrolux and not against Old Sears. Arney has also assured Old Sears that she would

strive not to burden the estate with unnecessary or undue administrative expense. Arney's discussions with Old Sears are ongoing in this regard as well. *Id*.

**The Issues Before this Court Are Narrow per *In Re Grumman*,
a Spot-On Case from New York Not Cited by New Sears:
Does the Sale Order Exonerate and Release New Sears from
Successor Liability to Arney; Did the Sale Order Extinguish a Claim
Arney Did Not Even Know She Had; and
<u>Was Arney Provided Due Process?</u>**

15. Arney believes that the issues before the Court in New Sears's motion to enforce are limited: Does the sale order exonerate and release New Sears from successor liability to Arney and did the sale order extinguish a claim Arney did not know she even had? See, *In Re Grumman*, *supra*, 445 B.R. 243, 256 (Bankr. S.D.N.Y. 2011)("Having concluded that the Fredericos' [successor liability] claim is not affected by the sale order, and that injunctive relief is, therefore, inappropriate, the Court has exhausted its post-confirmation jurisdiction…The Court expresses no view on whether Morgan [the successor] is liable under state law, and leaves the question to the state court."). The district court in *In Re Grumman, supra*, 467 B.R. 694, 711 similarly reasoned:

> The Court does not decide whether or not there may be circumstances under which a Rule 363 sale order could extinguish the claims of future claimants, who, because they were not injured before the close of the bankruptcy, had no way to receive notice of the bankruptcy proceedings…The Court does not reach the question of whether Morgan actually is liable as a successor to Grumman under New Jersey law. The Court holds only that, under the circumstances presented in this case, to enforce the Sales Order would deny them due process and violate the Bankruptcy Code's requirements of notice and opportunity to be heard for those affected by a bankruptcy court's rulings.

16. The bankruptcy court's opinion in *In Re Grumman* and the district court's affirmance are instructive and provide an analytical framework for the resolution of New Sears's motion to enforce. Like here, *In Re Grumman* involved a state court successor liability claim filed after the bankruptcy court had approved a Rule 363 asset sale. Like here, the tort claimant in *In Re Grumman* was injured after the asset sale had been approved by the court. Like here, the product at issue in *In*

6

*Re Grumman* was manufactured and sold by the debtor pre-petition and before the asset sale was approved. Like here, the order approving the sale in *In Re Grumman* contained numerous provisions protecting the asset purchaser from successor liability. Like here, the future tort claimant in *In Re Grumman* did not get actual notice of the bankruptcy or the pending motion approving sale. Like *In Re Grumman*, Old Sears and New Sears—both owned and controlled by Edward Lampert – intentionally chose not to appoint a future claims representative. Given the foregoing facts, the courts in *In re Grumman* determined that the Rule 363 sales order could not be enforced to enjoin the claimants' state law successor liability claim.[2]

17.    The rulings in *In Re Grumman* are not outliers. It is to that argument Arney now turns.

**Case Law Throughout the Country Holds That
Unidentified and Unidentifiable Future Tort Claimants
Are Not Bound by A Rule 363 Asset Sale Order;
Moreover, These Cases Also Consider
Whether These Tort Claimants Were Accorded Due Process Before
<u>the Asset Purchaser Tried to Extinguish Their Rights Through a Sales Order</u>**

18.    In its motion to enforce, New Sears cites but does not discuss several cases to support its argument that the Rule 363 sales order extinguished its liability to Arney. Those cases do not move the needle for New Sears. *In re Motors Liquidation*, 514 B.R. 377 (2014), involved a class action litigant's serial effort to proceed ahead of others notwithstanding four decisions issued by the judge and three other decisions by other bankruptcy judges in the South District of New York. *Douglas v. Stamco*, 363 Fed.Appx. 100 (2010) was a summary order and involved whether a successor liability count had been adequately pleaded. The Volvo case from Ohio is an outlier

---

[2] Transform's failure to cite or discuss *In Re Grumman* in its motion to enforce is disappointing. In any event, Transform should be estopped from citing new cases in its reply. Arney reserves the right to seek leave to file a sur-response should Transform inject new arguments based on *In Re Grumman* or case new law in its reply.

7

compared to the numerous cases cited below in paragraph 20. *In Re White Motor*, 75 B.R. 944 (Bankr.N.D.Ohio 1987)

19. Rather than discussing applicable case law, New Sears points to all of the provisions in the sales order which purport to bar successor liability claims. However, saying so repeatedly does not make it so, especially when it comes to future tort claimants like Arney who are unidentified and unidentifiable and whose injuries had not occurred when the asset purchase was approved.

20. Indeed, beyond *In Re Grumman*, a legion of case law from the Second Circuit, this District, and nationally demonstrates that Arney did not have an actual or contingent Rule 105 claim when the bankruptcy was filed or when the Asset Sale was approved. Moreover, Arney is not estopped by the Sales Order from alleging a state law successor liability claim because she was not afforded proper notice or due process to protect her rights before New Sears sought to snuff out those rights. See, *In Re Chateauguay Corp.*, 944 F.2d 997. 1003 (2nd Cir. 1991)(Second Circuit discussed, but did not address on ripeness grounds, the problem of characterizing claims of tort victims for products made pre-petition but whose injuries had not resulted in "tortious consequences" before bankruptcy protection was sought)[3]; *In Re Old Carco LLC*, 492 B.R. 392, 403 (Bankr. S.D.N.Y. 2013)(class action filed against Section 363 asset purchaser by holders of extended service warranties barred by order approving sale; "anyone who owns a car contemplates that it will need to be repaired," especially since the predecessor had issued two or three recall notices); *In Re Gen Motors LLC Ignition Switch Litigation*, 2017 WL 3382071 (S.D.N.Y. August 3, 2017)(preclusion of future claims "would reward debtors and asset purchasers who concealed claims known to them but unknown to potential claimants, undermining a cornerstone of bankruptcy law."); *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159 (7th Cir. 1994)(post-confirmation products liability

---

[3] Arney discusses the famous bridge hypothetical from *In Re Chateauguay* below.

8

suit against debtor's successor could not be enjoined by bankruptcy court, despite court's reservation of jurisdiction in sales order; suit was not against debtor and could not effect estate property and such an injunction order would extinguish the rights of future tort claimants without notice and consideration of their interests); *In Re Kewaunee Boiler Corp.*, 198 B.R. 519 (Bankr.N.D.Ill. 1996)(claimant who was injured in post-petition boiler room by a boiler manufactured pre-petition could not be enjoined from bringing state court products liability claim against reorganized debtor; injured worker did not have a contingent claim extinguished by Chapter 11 discharge, and even if he did, worker did not receive adequate notice or meaningful opportunity to participate in the bankruptcy); *Schwinn Cycling & Fitness. Inc. v. Benonis*, 217 B.R. 790 (Bankr. N.D.Ill. 1997)(provision in Chapter 11 confirmation order enjoining all persons holding claims against debtor arising prior or subsequent to confirmation date from bringing actions against debtor or successor was not intended to protect purchaser of debtor's assets or effect rights of persons injured post-confirmation.); *In Re Pettibone Corp.*, 90 B.R. 918 (Bankr.N.D.Ill. 1988)(automatic stay did not bar products liability action against debtor-manufacturer of forklift by forklift operator injured post-petition; court distinguished instant case from mass tort and asbestos cases where the hazards of the product were generally known but the manifestation of individual injuries was variable); *In Re Piper Aircraft*, 58 F.3d 1573 (11th Circ. 1995)(future claimants who might assert products liability claims against Chapter 11 aircraft parts manufacturer did not have pre-confirmation claims under Section 101(5) which would entitle them to participate in bankruptcy case insofar as they were not identified or identifiable; federal appellate court affirmed district court's and bankruptcy court's affirmance of objection to future claimants' whose proof of claim was based on statistical assumptions regarding the number of persons likely to be injured in the future by airplane parts manufactured pre-manufacture); *Lemelle v. Universal Manufacturing Corp.*, 18 F.3d 1268 (5th Cir.

9

1994)("even the broad definition of 'claim' cannot be extended to include…claimants whom the record indicates were completely unknown and unidentified at the time [the debtor] filed its petition and whose rights depended entirely on the fortuity of future occurrences."); *In Re All American Ashburn Inc.*, 56 B.R. 186, 189-90 (Bankr. N.D.Ga. 1986)("a sale free and clear of claims cannot divest a…claim when the claimant does not have a sustainable cause of action at the time of discharge."); *Ninth Avenue Remedial Group v. Allis- Chalmers*, 195 B.R. 716 at 732 (citing cases)("In all of the cited opinions that precluded successor liability claims against asset purchasers in bankruptcy, the claimants were in front of the bankruptcy court during the bankruptcy proceedings or the court found that the claimants should have brought their claims during the bankruptcy proceedings."); *In Re Hoffinger Industries*, 307 B.R. 112, 117 (Bankr.E.D.Ark.2004)(the Bankruptcy Code "does not define 'claim from the Chapter 11 debtor's perspective as an 'obligation to pay,' but rather as a 'right to payment:" viewed from the correct perspective, the focus must be on identifying that other party [holding the 'right to payment'] and protecting his or her due process rights.[4]); *In Re Chance Industries, Inc.*, 367 B.R. 689 (Bankr. Kan. 2006)(order confirming Chapter 11 plan did not discharge products liability claim against successor of amusement ride manufacturers for injuries suffered post confirmation; injured tort claimant did not have claim at the time when the plan was confirmed, and even if she did, discharge of her claim violated her due process rights because she was not given proper notice and an opportunity to be heard.); *In Re Savage Industries, Inc.* 43 F.3d 714, 721-22 (1st Cir. 1994)(refusing to enjoin successor liability claim against firearm manufacturer despite "free and clear" provision in asset purchase agreement

---

[4] Arney also cites to *In Re Hoffinger* because it weakens New Sears's reliance on an asbestos case to extinguish her claims. The court observed, "This is not a mass tort case based upon a product for which there is substantial authority, either through admissions or a body of judicial proceedings, that the product is intrinsically or inherently defective or dangerous such that, similar to a class action, users would be on notice that they had a claim."

between debtor and purchaser because no attempt had been made to provide notice of the sale to potential claimants).

21. Arney cites to the numerous cases above in paragraph 20 above not solely to demonstrate that New Sears cannot blithlyextinguish and enjoin her state law successor liability claims without actual notice and before she was injured. Arney shines a light specifically on the case law from the 7th Circuit and three bankruptcy court opinions authored by the Honorable Judge Jack Schmetterer from the Northern District of Illinois, Eastern Division. See, *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159 (7th Cir. 1994); *In Re Kewaunee Boiler Corp.*, 198 B.R. 519 (Bankr.N.D.Ill. 1996); *Schwinn Cycling & Fitness, Inc. v. Benonis*, 217 B.R. 790 (Bankr. N.D.Ill. 1997); *In Re Pettibone Corp.*, 90 B.R. 918 (Bankr.N.D.Ill. 1988).[5]

22. Shorn to its essence, New Sears seeks to use a bankruptcy court order and Rule 105's broad definition of "claim" to extinguish Arney's successor liability claims in a pending state court case. In so doing, New Sears focuses only on the supposed need to maximize the value of the debtor's estate. The 7th Circuit shredded this argument in *Zerand-Bernal*. Arney apologizes in advance for the lengthy block quote. However, everything the 7th Circuit says upends New Sears's contention that the supposed need to maximize sale value should expand the Code's definition of "claim" and that the bankruptcy court's jurisdiction can be extended so as to extinguish the rights of third parties:

---

[5] Judge Schmetterer is a veritable Tom Brady of the bankruptcy court for the Northern District of Illinois, if not of the entire bankruptcy court nationwide. The author of more than 900 opinions, Judge Schmetterer is retiring, effective September 30, 2021 after 36 years on the bench. Had Old Sears filed from bankruptcy in its own backyard in Illinois, its case may have been assigned to Judge Schmetterer. It bears noting that New Sears purchased the iconic trade names of Kenmore, DieHard, and Craftsman. Since New Sears was purchasing those brands, it seems likely that, in determining where to file its bankruptcy petition, New Sears assessed its potential successor liability for products made and sold pre-petition but where the injuries occurred after the Rule 363 sale had been approved. New Sears might say that Arney is speculating about Old Sears's and New Sears's choice of venue. *Realpolitik* suggests otherwise.

11

> Zerand points out that the price received in a bankruptcy sale will be lower if a court is free to disregard a condition in the sale agreement enjoining claims against the purchaser based on the sellers' misconduct. If the condition is invalid the purchaser will be buying a pig in a poke, never knowing when its seller's customers may come out of the woodwork and bring suit against it under some theory of successor liability. This possibility will depress the price of the bankrupt's assets, to the prejudice of creditors. All this is true, but proves too much. It implies, what no one believes…that by virtue of the arising-under jurisdiction a bankruptcy court enjoys a blanket power to enjoin all future lawsuits against a buyer at a bankruptcy sale in order to maximize the sale price: more, that the court could in effect immunize such buyers from all state and federal laws that might reduce the value of the assets bought from the bankrupt; in effect, that it could discharge the debts of nondebtors (like Zerand) as well as of debtors even if the creditors did not consent; that it could allow the parties to bankruptcy sales to extinguish the rights of third parties, here future tort claimants, without notice to them or (as notice might well be infeasible) any consideration of their interests. If the court could do all these nice things the result would indeed be to make the property of bankrupts more valuable than other property—more valuable to the creditors, of course, but also to the debtor's shareholders and managers to the extent that the strategic position of the debtor in possession in a reorganization enables the debtor's owners and managers to benefit from bankruptcy. But the result would not only be harm to third parties, such as the Coxes, but also a further incentive to enter bankruptcy for reasons that have nothing to do with the purposes of bankruptcy law. *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 163 (7th Cir. 1994).

23.    Moreover, the reasoning of *Zernan-Bernal* and the *Kewanee/Schwinn/Pettibone* Trifecta echo the reasoning of *In Re Grumman* and of the Second Circuit about protecting the due process rights of unknown future tort claimants. Arney points to the famous bridge hypothetical in *In Re Chateaugay Corp*:

> Consider, for example, a company that builds bridges around the world. It can estimate that of 10,000 bridges it builds, one will fail, causing 10 deaths. Having built 10,000 bridges, it becomes insolvent and files a petition in bankruptcy. Is there a "claim" on behalf of the 10 people who will be killed when they drive across the one bridge that will fail someday in the future? The potential victims are not only identified, but there is no way to identify them. Sheer fortuity will determine who will be on that bridge one day when it crashes. What notice is to be given to these potential "claimants?" *In Re Chateaugay Corp., supra*, 944 F.2d 1003.

24.    The Second Circuit did not answer its question about what constitutes sufficient notice to future claimants in *In Re Chateaugay Corp*. Nor did the Second Circuit answer the question more recently in *In re Chrysler LLC,* 576 F.3d 108 (2nd Cir. 2009)("We decline to delineate the scope of the bankruptcy court's authority to extinguish future claims until such time as we are presented with an actual claim for an injury that is caused by Old Chrysler, that occurs after the Sale, and that

12

is cognizable under state successor liability law.")  But, Judge Schmetterer squarely tackled the notice problem in *Kewanee Boiler*:

> It is hard to contemplate any meaningful notice by Kewanee Boiler. Should Debtor have sent out large stickers to be affixed to every boiler it had ever sold warning persons coming in contact with the boiler that they may be dangerous and any claims they may have for future injuries were being resolved in bankruptcy where they were invited to file a claim? To frame such a theoretical notice is to recognize why it was not sent. Few manufacturers in bankruptcy would risk the hullabaloo and enormous volume of different claims that would follow such an act. Moreover, Kewanee management probably considered its boilers to have been properly manufactured and would not have dreamed of exposing itself to the results of a public confession. However, the Debtor in this case wishes the benefit of such notice although it was not given to Smith or anyone else. *In re Kewanee Boiler Corp.*, 198 B.R. 519, 538, 541 n.9

Likewise, in this case, New Sears cannot simultaneously (i) deny liability for Arney's injuries; (ii) claim she is an unknown claimant; (iii) assert publication notice was enough to extinguish her rights; (iv) purposely choose not to appoint a future claims representative; and then (iv) drag her to bankruptcy court in New York, threaten sanctions, and assert she is bound by a sales order she had no actual notice of in a bankruptcy case where she was not listed as a creditor.  Fairness and due process demand otherwise.

## Conclusion

25.    So, Arney circles back to *In Re Grumman, In Re Chateaugay Corp., Zerand-Bernal*, and the Schmetterer Trifecta of *Pettibone, Schwinn*, and *Kewanee Boiler*.  New Sears can cite to the sales order's prohibitions against successor liability and the *ipse dixit* declarations in the asset sale agreement a hundred times if it pleases.  Those self-serving provisions matter not a whit if Arney did not have a "claim" under Section 105 when the sale was approved.  Those provisions do not bar Anrey's successor liability counts. Arney, a future tort claimant, had no notice and no reason at the time to present an interest in the bankruptcy proceedings and to take action to prevent the deprivation of her state law rights.  Arney could not have been identified as a potential claimant when the

bankruptcy was filed or before the asset sale or before the deadline for filing a proof of claim. *See, In Re Grumman, supra*, 445 B.R. 243, 254. Even if, for the sake of argument Arney knew about Sears's filing of bankruptcy in New York, that "knowledge would be meaningless, and there would be nothing for them to do. [She] could not file a proof of claim based on an accident that occurred years later." *Id*.

26. Arney repeats. The issues before this Court are narrow: Did the Rule 363 sale order extinguish her state law successor liability claim? No. Did she even have a "claim" under Section 105 such that she had to participate in Old Sears's bankruptcy? She did not. Finally, was Arney accorded due process before New Sears sought to extinguish the claim she did not know she had? She was not.

27. It is now Arney's burden to plead and prove in state court case under Illinois law that New Sears is a mere continuation of Old Sears or that what happened here was a *de facto* merger. Arney's state court case is teed up right now to see if Arney can do so. The state court has allowed successor liability discovery because New Sears has knowledge of and is in exclusive control of the facts which relate to the asset sale between Old Sears and New Sears. Arney will conduct that discovery. After that discovery is completed, she will amend her complaint accordingly. We will then see if the provisions in the asset purchase agreement have heft or are *ipse dixit* declarations to insulate New Sears, a non-debtor, from a valid successor liability claim under Illinois law.

WHEREFORE, Future Unidentified and Unidentifiable Tort Claimant Diane Arney respectfully requests that this Court deny the motion to enforce sales order and for other relief of asset purchaser Transform SR Brands LLC motion to enforce sales order and for other relief of asset purchaser Transform SR Brands LLC (Doc. 9647).

        Respectfully Submitted,
        TANNEN LAW GROUP, P.C.

        /s/ *Michael Murphy Tannen*

        Attorneys for Unidentified and Unidentifiable Future
        Tort Claimant Diana M. Arney
        (Admitted *Pro Hac Vice*)

Michael Murphy Tannen
*Mtannen@tannenlaw.com*
Timothy R. Meloy
*tmeloy@tannenlaw.com*
TANNEN LAW GROUP, P.C.
77 W. Washington St., Suite 500
Chicago, IL 60602
Telephone: (312) 641-6650