**From:** Michael Tannen
**Sent:** Wednesday, August 4, 2021 4:02 PM
**To:** DiDonato, Phil
**Cc:** lbarefoot@cgsh.com; Leinheiser, Stacey
**Subject:** RE: Arney v. Sears Holding et al.

Phil:

Thanks for taking my call yesterday.   Here is the information we talked about and which you said you could likely provide:

- Sears  has identified the 2008 policy as the one which applies to this claim and that the aggregate policy limits were exhausted before Sears sought Chapter 11 protection.  You said you'd get me a copy of the official 2008 exhaustion letter.

- You also said you'd send me a flow chart/schematic  of insurance in place in 2008 for this type of claim.  We will want to satisfy ourselves that there is no excess or umbrella insurance which might be required to drop down and defend, notwithstanding the exhaustion of Sears's primary level.

- You've indicated that you would send to me a Second Circuit case which stands for the proposition that the insurance policy which is triggered is the one in effect when the customer last had contact with Sears.

- We talked about the joint venture allegations in our underlying complaint.  We believe a joint venture exists between Sears and Electrolux.  We think we are entitled to discovery on that issue in our case.  Assuming Sears has no insurance of any kind, we would be open to getting a comfort order which would permit us  to engage in joint venture discovery from Sears in the underlying case,  with the understanding of course that we would not pursue Sears for joint venture liability or go against Sears's estate.   Evidence of a joint venture instead would be used against Electrolux.  You mentioned there might be indemnity obligations by and between Sears and Electrolux.  My hunch is that Electrolux is obligated to indemnify Sears, not the other way around.  If I am right on this point, neither of us has to get bogged down in the bankruptcy/indemnification thicket.    Perhaps, Stacey knows the answer to the question of who is to indemnify whome.

- Finally, you told me that you cant's speak for Transformco, but that you think that a successor liability claim against the asset purchaser is likely barred.  You said I should speak with Luke Barefoot.  _By copy of this email,  I would ask that Luke call me to discuss this issue._  We have no desire to litigate this point if it's as clear as you say.  I have just recently been retained and I need to conduct my own due diligence.

**EXHIBIT C**

Thanks,

mmt


Michael Murphy Tannen, Esq.



**Please note our change of address to:**
77 W. Washington St., Suite 500
Chicago, Illinois 60602
(312) 641.6650
(312) 641.6656 (facsimile)

**From:** DiDonato, Phil <Philip.DiDonato@weil.com>
**Sent:** Wednesday, August 4, 2021 4:41 PM
**To:** Leinheiser, Stacey <Stacey.Leinheiser@transformco.com>; Michael Tannen
<mtannen@tannenlaw.com>
**Subject:** RE: Arney v. Sears Holding et al.

-Removing Luke-

Michael,

My responses are below in red. With respect to a schematic of the insurance coverage, we do not have
one of these on hand. If Transform has this information, I'd ask them to please send it along. Otherwise,
we can simply confirm whether there is excess coverage that sits on top of the exhausted GL policy in
this instance.


**Philip DiDonato**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Philip.DiDonato@weil.com
+1 212 310 8636 Direct
+1 212 310 8007 Fax

**From:** Michael Tannen [mailto:mtannen@tannenlaw.com]
**Sent:** Wednesday, August 04, 2021 4:02 PM
**To:** DiDonato, Phil <Philip.DiDonato@weil.com>
**Cc:** lbarefoot@cgsh.com; Leinheiser, Stacey <Stacey.Leinheiser@transformco.com>
**Subject:** RE: Arney v. Sears Holding et al.

**Enterprise Security Team Alert:** This email originated from outside of the organization. Please use
caution when opening messages from external sources.

Phil:

Thanks for taking my call yesterday.   Here is the information we talked about and which you said you
could likely provide:

- Sears  has identified the 2008 policy as the one which applies to this claim and that the
  aggregate policy limits were exhausted before Sears sought Chapter 11 protection.  You
  said you'd get me a copy of the official 2008 exhaustion letter.
    - Attached.


- You also said you'd send me a flow chart/schematic  of insurance in place in 2008 for
  this type of claim.  We will want to satisfy ourselves that there is no excess or umbrella
  insurance which might be required to drop down and defend, notwithstanding the
  exhaustion of Sears's primary level.

- o We do not have a copy of this handy – I have asked Stacey if she is able to provide in the body of my e-mail above.

- You've indicated that you would send to me a Second Circuit case which stands for the proposition that the insurance policy which is triggered is the one in effect when the customer last had contact with Sears.
  - o On the substantive point of the timing of the Claim, we've taken a similar position on a number of product liability claims over the two-year course of these cases with guidance from our insurer, applying the "conduct test" followed by the Second Circuit.  See In re Johns-Manville, 57 B.R. 680 (Bankr. S.D.N.Y. 1986), finding that "Procedural and extraneous factors such as the timing of the filing of a summons and complaint by a third party [in the case of an indemnity claim], which is not associated with the underlying nature of the cause of action ... simply should not determine the existence or nonexistence of a 'claim.' Rather the focus should be on the time when the acts giving rise to the alleged liability were performed...." Under the conduct test, the pre-petition conduct of injuring the claimant gives rise to a "contingent" or "unliquidated" Claim, even where the triggering event is the postpetition manifestation or discovery of harm.

- We talked about the joint venture allegations in our underlying complaint.  We believe a joint venture exists between Sears and Electrolux.  We think we are entitled to discovery on that issue in our case.  Assuming Sears has no insurance of any kind, we would be open to getting a comfort order which would permit us  to engage in joint venture discovery from Sears in the underlying case,  with the understanding of course that we would not pursue Sears for joint venture liability or go against Sears's estate.   Evidence of a joint venture instead would be used against Electrolux.  You mentioned there might be indemnity obligations by and between Sears and Electrolux.  My hunch is that Electrolux is obligated to indemnify Sears, not the other way around.  If I am right on this point, neither of us has to get bogged down in the bankruptcy/indemnification thicket.    Perhaps, Stacey knows the answer to the question of who is to indemnify whome.
  - o I will ask our advisors if we have a copy of this agreement.

- Finally, you told me that you cant's speak for Transformco, but that you think that a successor liability claim against the asset purchaser is likely barred.  You said I should speak with Luke Barefoot.  _By copy of this email,  I would ask that Luke call me to discuss this issue._  We have no desire to litigate this point if it's as clear as you say.  I have just recently been retained and I need to conduct my own due diligence.

**From:** Michael Tannen
**Sent:** Thursday, August 5, 2021 4:20 PM
**To:** Leinheiser, Stacey; DiDonato, Phil; lbarefoot@cgsh.com; lbarefoot@cgsh.com
**Subject:** RE: Arney v. Sears Holding et al.

Good afternoon.

Is there any chance we can have a conference call tomorrow before 11:00 CDT or after 3:30 EDT?

We've read Luke's motion, reviewed what Stacey and Phil sent me, and conducted some research.   We have some questions which we hope you can readily answer.  Also, I do not think *In Re  Mansville* is analogous to our fact pattern as to whether there is a "claim."  We have found at least one other case—a products liability case--which focusses on when the injury occurred and whether the claimant had any knowledge of her claim when the plan was confirmed and the assets were sold.

Also, a few quick questions:

- Was the 2007-08 policy an occurrence policy?

- I do not know precisely when the dryer was sold in 2008.  Was the 2008-09 policy also exhausted and was it also an occurrence policy?

This sounds self-serving, but I was just retained.  I am reasonable, but I am thorough.  I have questions.

Let's talk.

mmt

Michael Murphy Tannen, Esq.



**Please note our change of address to:**
77 W. Washington St., Suite 500
Chicago, Illinois 60602
(312) 641.6650
(312) 641.6656 (facsimile)

# TANNEN
## LAW GROUP, P.C.

### ATTORNEYS AND COUNSELORS AT LAW

77 West Washington Street, Suite 500
Chicago, Illinois 60602
Tel: (312) 641-6650    Fax (312) 641-6656
Email: mtannen@tannenlaw.com

August 9, 2021

**_Via Email Delivery_**

Luke Barefoot
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York NY 10006

**_Via Email Delivery_**

Phil DiDonato
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

            **Re:    _Arney v. Electrolux, et al._**

Dear Counsel:

        As you know, we represent Diana Arney ("Arney") in a suit arising out of a dryer fire on
or about January 7, 2020. We will be appearing _pro hac vice_ in the bankruptcy action. I
presume you have no objection.

        I am directing this letter to both counsel for the Debtor ("Old Sears") and for the asset
purchaser, Transformco, Inc. ("New Sears"). Each of you, perhaps understandably, have sought
in our communications to emphasize that you each represent different parties with different
interests. However, the reality is that Old Sears and New Sears have a complex business
relationship.

        Further, Old Sears and New Sears have each interposed arguments that collectively seek
to extinguish Arney's claim and causes of action. In a nutshell, Old Sears asserts that (i) Arney's
state law suit violates the automatic stay; (iii) the claims period for Arney to have filed a claim
passed in 2019; and (iii) in any event, there are no available insurance policy proceeds based on
an exhaustion letter you sent me for the 2007-08 policy period. In a nutshell, New Sears
contends that New Sears bought the assets of Old Sears free and clear of any liens, including
Arney's products liability suit and her successor liability claim against New Sears.

        All of us can agree on a couple points. First, Arney was injured post-petition, post-
confirmation, and after the asset sale to New Sears was approved by the court. Because Arney
was not injured until 2020, she could not have known prior to the dryer fire of any claim she
might have against old Sears or New Sears. Second, to our knowledge, Arney did not receive
notice of the filing of Old Sears's bankruptcy or of the asset sale to New Sears.

I am glad that you have agreed to answer some of our questions and provide us with information cooperatively so that we can assess the validity of the positions taken by Old Sears and New Sears.  I will repeat what I have told both of you:  we do not have any interest in going after assets of Old Sears's bankruptcy estate.  We are not interested in hemorrhaging attorneys' fees and expenses in litigating a futile successor liability claim; however, based on our review of the law, we do not think Arney's claims were extinguished by the asset sale.

As to our open questions:

**Questions for Old Sears:**

- Phil advised me that Old Sears has allocated Arney's claim to the 2007-08 policy year.  He then forwarded me a close-out letter for that period from Chubb, the claims handler for the primary CGL carrier ACE American Insurance Company ("ACE").  Is this the only applicable primary policy of insurance?  Is the ACE policy an occurrence policy?  If so, how can Sears allocate Arney's claim to a 2008 policy when the occurrence—the dryer fire—took place in 2020?

- It looks like the ACE policy ran from August to August.  I am not sure when the dryer was distributed and sold to Arney.  It is possible that Old Sears sold the dryer after August 1, 2008, potentially triggering another CGL policy per the rationale of Old Sears?  Who was the CGL insurer for Old Sears from August 1, 2008 to August 1, 2009?  Is that policy similarly exhausted?  Are there other primary policies in effect during this time frame?

- I have advised Old Sears that we need to do our due diligence about the availability of excess and umbrella insurance.  Phil thought there was one sort of flow chart of insurance.  Stacey says such a schematic does not exist.  For the 2007-08 and 2008-09 policy periods, please identify all excess and  umbrella insurers for Old Sears.  Please advise of policy limits; whether these are occurrence or claims made policies; and whether they are following form.  Please send me  copies of these policies so I can see if any excess or umbrella insurer is obligated to drop down if the limits of an underlying policy are exhausted.  (Phil said New Sears might have answers to these insurance questions.)

- Did Old Sears procure liability insurance during the pendency of the bankruptcy which was in effect when Arney was injured in January 2020 and filed suit in November 2020?  Is this insurance an occurrence policy or claims made?  Who is the primary insurer; what are the limits of this policy; have the limits of this policy been exhausted; and are there excess and umbrella policies in place?

- Did Old Sears issue any recall notices for the type of dryer sold by Sears to Arney before the bankruptcy was filed?  After?

- Did Old Sears list in their bankruptcy as future contingent tort claimants  pre-petition purchasers of Sears dryers  who might be injured by those dryer fires post-petition, post-confirmation, or post-sale approval?

- Did Old Sears notify Arney of the filing of bankruptcy before she was injured?  Did Old Sears notify Arney of the impending asset sale to New Sears?



Letter to Bankhofoo and 980 PicBonaFiled 09/13/21 Entered 09/13/21 22:04:19 Exhibit
18-23538-shl Doc 9507-1 Pg 8 of 23
August 9, 2021
Page 3 of 4

- Phil stated that Old Sears would get us copies of the operative agreements between Old Sears and Electrolux so that I can review the indemnification provisions. I also have advised Old Sears that we have alleged a joint venture in the state tort case between Old Sears and Electrolux. I have explained that any evidence of a joint venture would be used to establish the liability of Old Sears's partner, Electrolux. We would not use that evidence to dilute the assets of Old Sears's bankruptcy estate. We should continue our discussions in this regard. This is separate and apart from looking for Old Sears's available insurance and it is unrelated to the successor liability claims against New Sears. We should continue our discussions about a comfort order that allows discovery on this point with the understanding that we will not use it against the bankruptcy estate.

**<u>Questions for New Sears:</u>**

- During our phone conference on Friday, Luke stated that no one had reason to know Arney was a creditor of Old Sears's estate. Can you confirm that this is the position of New Sears?

- During our phone conference on Friday, Luke stated that this is the first time in the Old Sears bankruptcy that a claimant has questioned whether her successor liability claim against New Sears is truly extinguished when an appliance was manufactured, distributed and sold pre-petition, but the injury occurred post-petition, post-confirmation, and post-asset sale approval. Can you please confirm this is so? There are nearly 10,000 documents filed in this bankruptcy and I have been involved in this matter for a little over a week.

- New Sears has chosen to file a motion against Arney to enforce the sale order. I told you on Friday that I think an adversary complaint is the proper procedural vehicle. Over the weekend, I have looked at additional cases, and my views on this topic are the same. Please look at Bankruptcy Rule 7001(7) and (9). I am not currently asking for more time to file my response, but by the same token, my client should not be prejudiced by a truncated briefing schedule on a motion when you are seeking injunctive and declaratory relief more appropriate sought in an adversary proceeding. We reserve our rights in that regard.

- Do you have any facts from any source to demonstrate that Arney had prior knowledge such that she knew--before she was severely injured in January 2020—about what impact a bankruptcy discharge might have, even though she had not yet suffered her injuries?

- Did New Sears notify Arney of the asset purchase agreement and that the court needed to approve the same?

- When do you contend Arney's right to payment arose?

- Does New Sears have applicable liability insurance to cover Arney's lawsuit? Please provide me with copies of any primary and excess policies.



- New Sears and Old Sears have relied on a 35 year old asbestos case, *In Re Johns-Manville*, 57 B.R. 680 (1986), in support of their argument that Arney's claims were extinguished by the approval of the asset purchase agreement. I alerted you to *In Re Grumman Olson Industries, Inc.*, 445 B.R. 343 (Bankr. S.D.N.Y. 2010), *aff'd* 467 B.R. 694 (S.D.N.Y. 2012). I do not agree with Mr. Maheshwari's efforts on Friday evening to distinguish *In Re Grumman*. Moreover, I think your citation to *Old Carco* is unavailing. That was a class action extended warranty case, with pre-petition and post-petition recall notices. The *Old Carco* court expressly noted that anyone should reasonably contemplate that their cars might need to be fixed. Surely, New Sears is not saying that Arney or New Sears actually contemplated or should have reasonably contemplated that her dryer would ignite.

*** 

I am again requesting that counsel for Old Sears and New Sears participate in a global call with me and Arney's counsel in the state tort case. I think there is much we can accomplish collaboratively to narrow and crystallize the issues before the Court. Please let me know if you are available tomorrow or Wednesday for a Zoom call.

Thank you for your attention to this matter. We look forward to hearing from you.

Sincerely,

TANNEN LAW GROUP, P.C.

*Michael M. Tannen*

Michael M. Tannen
MMT/bhs
cc: Stacey Leinheiser (via email)
    Julie Pustilnik (via email)
    Laya Maheshwari (via email)



**From:** Michael Tannen
**Sent:** Wednesday, August 11, 2021 10:42 AM
**To:** DiDonato, Phil
**Cc:** Julie Pustilnik; Marcus, Jacqueline; Leinheiser, Stacey
**Subject:** RE: Diana Arney v. Sears, et al.

Good morning, Phil.

Two more questions for our meeting today.

Was a future claims administrator appointed in this case to address the type of situation we have here, namely, claims accruing after bankruptcy is filed allegedly caused by pre-petition conduct?

Was a future claims administrator contemplated?

Thanks,

mmt

Michael Murphy Tannen, Esq.



**Please note our change of address to:**
77 W. Washington St., Suite 500
Chicago, Illinois 60602
(312) 641.6650
(312) 641.6656 (facsimile)

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG
BEIJING · BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL

STEVEN M. LOEB
CRAIG B. BROD
NICOLAS GRABAR
DAVID E. BRODSKY
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ANDRES DE LA CRUZ
DAVID C. LOPEZ
MICHAEL A. GERSTENZANG
LEV L. DASSIN
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
CHANTAL E. KORDULA

BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
COLIN D. LLOYD
COREY M. GOODMAN
RISHI ZUTSHI
JANE VANLARE
DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
AUDRY X. CASUSOL
ABENA A. MAINOO
HUGH C. CONROY, JR.

JOSEPH LANZKRON
MAURICE R. GINDI
KATHERINE R. REAVES
RAHUL MUKHI
ELANA S. BRONSON
MANUEL SILVA
KYLE A. HARRIS
LINA BENSMAN
ARON M. ZUCKERMAN
KENNETH S. BLAZEJEWSKI
MARK E. MCDONALD
F. JAMAL FULTON
RESIDENT PARTNERS

SANDRA M. ROCKS
JUDITH KASSEL
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
HEIDE H. ILGENFRITZ
ANDREW WEAVER
HELENA K. GRANNIS
JOHN V. HARRISON
LAURA BAGARELLA
JONATHAN D.W. GIFFORD
SUSANNA E. PARKER
DAVID W.S. YUDIN
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

D: +1 212 225 2829
lbarefoot@cgsh.com

August 12, 2021

<u>VIA EMAIL</u>

Michael M. Tannen, Esq.
Tannen Law Group, P.C.
77 West Washington St, Suite 500
Chicago, Illinois  60602
mtannen@tannenlaw.com

Re:  <u>In re Sears Holdings  Corp (Case No. 18-23538)  (RDD) (Bankr. S.D.N.Y.)
(Jointly  Administered)  (the "Sears Bankruptcy Proceedings")</u>

Mr. Tannen,

I write on behalf of Transform SR Brands LLC ("<u>Transform</u>" or the "<u>Buyer</u>") in
response to your August 9, 2021 letter (the "<u>Letter</u>") sent in connection with your representation
of Diana M. Arney in the above-captioned proceedings.  Pursuant to orders of the United States
Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>"), Ms. Arney is
barred and enjoined  from asserting a successor liability  claim against Transform.

As you know, we conferred on Friday, August 6, 2021, where you asked us for an
additional  three-week extension to file an objection  to our Motion to Enforce,[1] and an
adjournment  to the omnibus  hearing on September 27, 2021.  Even though Ms. Arney's counsel
had been served via both email and overnight mail, and already missed two objection  deadlines,
we responded  within the same business day granting your requests.  *See* Email from Laya
Maheshwari to Michael M. Tannen on August 6, 2021.

---

[1]       Capitalized terms used but not defined herein have the meanings ascribed to them in the *Motion to Enforce
Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of
the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption
and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related
Relief,* ECF No. 9647 (the "<u>Motion to Enforce</u>").

Mr. Tannen, p. 2

Indeed, we have duly filed a *Second Notice of Adjournment of Transform SR
Brands LLC's Motion to Enforce Order*, ECF No. 9722, in the Bankruptcy Court. In good faith,
this notice agreed to all your proposed deadlines and notified the Bankruptcy Court of the same.
While we believe that many of the questions in your Letter were either addressed during our
August 6 teleconference (as your Letter seems to acknowledge), constitute a request for us to
assist you in preparing a response to our pending motion, or are irrelevant to the relief sought by
that motion, as a matter of professional courtesy, we are undertaking to respond in writing to
each of your requests.

First, in your Letter's requests directed at the Sears estate, you suggest that
Transform may have answers to questions about the estate's pre-petition insurance coverage.
For the avoidance of doubt, we want to reiterate that Transform has no role in determining or
assessing insurance coverage that the estate may have. No such insurance policies were assumed
and assigned to Transform as part of the sale transaction, and such inquiries are appropriately
directed to counsel for the Sears estate. [2]

Second, you asked us to confirm our position that Transform had no "reason to
know" Ms. Arney was a creditor of Sears's estate. We so confirm. Simply because an
individual had purchased a product from one of the Sears entities a decade before the petition
date does not support a suggestion that such individuals held potential claims against Sears.
Moreover, no recall notices were issued with respect to the model of dryer purchased by Ms.
Arney.

Third, your attempt to characterize the dryer incident as an "injury occur[ring]
post-petition, post-confirmation, and post-asset sale approval" contradicts the characterization by
Ms. Arney in the Illinois Action. Specifically, the Complaint, Motion to Permit Discovery, and
Discovery Requests together make clear that Ms. Arney is suing Transform on a successor
liability theory, which of necessity means that her claim arose against Sears *pre*-petition, *pre*-
confirmation, and *pre*-asset sale approval. *See* Black Decl., Ex. A, C, G, H. In fact, the
pleadings in the Illinois Action are based on a purchase of a dryer that occurred nearly a decade
before the Buyer came into existence. There are no allegations in the Complaint that *Transform*
did anything to Ms. Arney, or that there is any contractual or causal nexus between Transform
and Ms. Arney's injuries.

Nevertheless, in response to your Letter's second question, this is the first time we
are litigating successor liability in the Sears Bankruptcy Action. However, the Bankruptcy Court
has already enforced its Sale Order against another set of plaintiffs in May 2021. *See Order
Denying Class Representatives' Motion for Relief from the Automatic Stay*, ECF No. 9538. At
the hearing for that enforcement proceeding, Judge Drain recognized that "nothing really is more
important to a buyer in a bankruptcy case than getting free and clear status and being relieved of
successor liability." Transcript of Hearing re Class Representatives' Motion for Relief from
Automatic Stay, ECF No. 9537 ("Transcript of Hearing"), at 44. Judge Drain also found that the

---

[2]      The Letter seeks to cast Sears and Transform as two intertwined parties and deems them "Old Sears" and
"New Sears." However, this characterization is inaccurate: Transform is a separate entity from Sears; its holding
company was created in 2018 and the entity that is the Buyer here was incorporated in 2019. There is no "Old
Sears" and/or "New Sears," and Transform is not a reorganized successor to the Sears estate.

Mr. Tannen, p. 3

Asset Purchase Agreement was clear and unambiguous that "litigation claims for claims arising prior to the closing date are excluded." *Id.* at 21.

Fourth, Transform was not required to commence an adversary proceeding and it was entirely appropriate to proceed using motion practice. *See In re Ritchie Risk-Linked Strategies Trading (Ireland), Ltd.*, 471 B.R. 331, 337 (Bankr. S.D.N.Y. 2012) (finding that when a party seeks to enforce an injunction "already in effect under this Court's existing Sale Order," it can do so through a motion to enforce and need not bring an adversary proceeding); *see also Luan v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223 (2d Cir. 2002) (confirming the bankruptcy court's jurisdiction to enforce an injunction provision in its sale order without an adversary proceeding); *In re WorldCorp, Inc.*, 252 B.R. 890, 895 (Bankr. D. Del. 2000) ("[A]n adversary proceeding is not necessary where the relief sought is the enforcement of an order previously obtained."). Moreover, in the Sears Bankruptcy Action, the Bankruptcy Court has already granted a motion to enforce its Sale Order without the commencement of a separate adversary proceeding. *See Order Granting Defendant's Motion to Enforce*, *Sayville Menlo LLC v. Transform Holdco LLC*, Adv. Proc. No. 19-08286-RDD (Bankr. S.D.N.Y. 2020), ECF No. 34 (the "Sayville Proceeding").[3] Transform is simply asking the Court to do once again what it has already done.

To the extent that your Letter suggests that an adversary proceeding should be required to avoid "prejudice[] by a truncated briefing schedule," this ignores the extension that Transform has agreed to give you. Indeed, if we stick to our mutually agreed-upon deadlines, Ms. Arney will have had more than six weeks since Transform filed its Motion to Enforce in order to file her response, which is *more* time than she would have had to respond to an adversary complaint. *See* Fed. R. Bankr. Procedure 7012(a).

Your fourth question — requesting facts to demonstrate that Ms. Arney had knowledge of her claim prior to January 2020 — misplaces the burden on Transform for facts that are uniquely within Ms. Arney's knowledge. To the Debtors, Ms. Arney was an unknown creditor. In any event, if the allegations in Ms. Arney's Complaint are true, then her claim arose when she bought the allegedly defective dryer in 2008. The Debtors satisfied their duties towards unknown creditors with publication notice. Such publication notice has been found good, sufficient, and appropriate by the Bankruptcy Court already. *See* Sale Order, ECF No. 2507, ¶¶ P, 4.

With respect to the Letter's question on when Transform contends Ms. Arney's right to payment arose, the Letter misframes the relevant inquiry. The correct question is not when the right to payment arose but when Ms. Arney's claim arose. Under the Bankruptcy Code, the term "claim" is defined broadly to include any right to payment, whether "reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5). Here, again assuming that the facts set forth in Ms. Arney's Complaint are true, Ms. Arney's claim arose when she bought the dryer with a latent defect, even if she did not have knowledge of that defect and the injury did not

---

[3]       The Sayville Proceeding was initiated as an adversary proceeding by the plaintiffs, but the defendant, an affiliate of Transform, still relied upon a motion to enforce after the adversary proceeding had concluded in order to enforce the Court's prior orders. *See Defendant's Motion to Enforce Order Granting in Part and Denying in Part Defendant's Motion to Dismiss the Amended Complaint with Prejudice*, ECF No. 25.

Mr. Tannen, p. 4

manifest itself until later. *See In re Johns-Manville Corp.*, 552 B.R. 221 (Bankr. S.D.N.Y. 2016) (finding that a claim arises when an individual is exposed prepetition to a product or other conduct giving rise to an injury underlying the right to payment); *In re Motors Liquidation Co.*, 599 B.R. 706 (S.D.N.Y. 2019) (holding that the appellant had a contingent pre-petition claim that arose the moment he was deprived of his constitutional rights, and not when his wrongful conviction was overturned).

As to your request for discovery on Transform's primary and excess liability insurance policies that could cover Ms. Arney's lawsuit, such request is improper as it bears no relationship to any of the claims or arguments at issue before the Bankruptcy Court. Such requests would only be conceivably relevant if the Bankruptcy Court determines that, notwithstanding the express findings and injunction contained in the Sale Order, Ms. Arney may proceed with an action against Transform.

We recognize you disagree with our readings of the case law. You are entitled to that position, but the proper forum for arguing the law is through briefing before the Bankruptcy Court, not a letter writing campaign. Transform does not intend to engage in further pre-briefing exchanges on these issues.

We have now cogently laid out our position on all issues from your letter. If you would like to discuss further, we are available for a call at your convenience

Sincerely,

*/s/ Luke A. Barefoot*

Luke A. Barefoot

cc (via email):  Jacqueline Marcus, Esq. and Phil DiDonato, Esq. (Weil Gotshal & Manges)

# TANNEN
## LAW GROUP, P.C.

ATTORNEYS AND COUNSELORS AT LAW

77 West Washington Street, Suite 500
Chicago, Illinois 60602
Tel: (312) 641-6650      Fax (312) 641-6656
Email: mtannen@tannenlaw.com

August 16, 2021

_**Via Email Delivery**_

Luke Barefoot
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York NY 10006

> **Re:    *Arney v. Electrolux, et al.***

Dear Mr. Barefoot:

You told me late last week you were not interested in exchanging letters with respect to Transformco's motion to enforce the sale order and our successor liability count against Transformco in our state court lawsuit. However, I am both practical and optimistic that you and your client may respond favorably to what we are proposing herein.

I will not soliloquize in this letter, other than to say this: I think Transformco's motion to enforce the asset sale order will be denied. When the motion to enforce is denied, Transformco will be subject to successor liability claims in our case in Illinois as well as successor liability claims in other suits where the plaintiffs were injured post-petition by products—and not just dryers--sold and distributed by Sears post-petition, post confirmation, and post asset sale approval.

You may have gleaned from our August 9 letter that successor liability is but one of our open issues with Old Sears and New Sears. First, we are equally interested in finding out whether Old Sears and New Sears have any insurance applicable to our client's injuries and her suit. Jackie Marcus and Phil DiDonato will be putting me in touch with Richard Kellner who purports to be knowledgeable about the existence and terms of applicable insurance policies. We are totally open in concept of figuring out a verifiable and cost-effective way of learning about the existence and terms of applicable insurance policies.

Additionally, in the underlying suit, Arney has alleged a joint venture existed between Electrolux and Old Sears. We think we are entitled to obtain written and oral joint venture discovery in our state court suit. We are open in concept to a comfort order not to use that joint venture discovery against Old Sears but instead against Electrolux under theories of partnership law and imputed liability. I am advised that Old Sears has turned over to New Sears documents relating to the relationship with Electrolux. I presume that in addition to sales documents, New Sears would have in its possession a series of interlocking agreements relating to the manufacture, licensing, sale, distribution and repair of Sears dryers manufactured by Electrolux as well as product literature. We further suspect that one or more agreements require Electrolux to indemnify Old and/or New Sears and to require Electrolux to name Old and/or New Sears as additional insureds under Electrolux's insurance policies.

So, we are suggesting a staggered approach to resolving our open issues.  We would first work together to get insurance information for Old and New Sears and joint venture discovery subject to a comfort order.  After we obtain this data, we may decide that a successor liability claim against New Sears, though viable and not barred by the bankruptcy sale order, is not necessary for our client to obtain a full and fair recovery.  (Ms. Arney has $900,000 in past medical bills alone.)

Please chat with your client and with counsel for Old Sears about whether we can agree to this phased approach. (Jackie and Phil are copied on this letter.) It is, and will be, our goal to get answers and relevant documents in as linear and cost-effective a manner as possible.  Please let us know if you are interested in this protocol by close of business in August 18.

In conclusion, when you do respond to our letter, I would request two things.  First, you do not need to mention yet again that the briefing schedule on your motion to enforce has been twice continued.  I have been all over this case and every aspect of it since I was recently retained.  Second, if referring to the Debtor and its asset purchaser respectively as "Old Sears" and "New Sears" is good enough for Ed Lampert, it should be good enough for the two of us.  (Please see his letter to Congress from 2019.)

Thank you for your attention to this matter. We look forward to hearing from you.

Sincerely,

TANNEN LAW GROUP, P.C.

*Michael M. Tannen*

Michael M. Tannen
MMT/bhs

cc: Stacey Leinheiser (via email)
    Julie Pustilnik (via email)
    Jacqueline Marcus (via email)
    Phil Donato (via email)



**Letter to Luke Barefoot and Phil DiDonato**
**August 9, 2021**
**Page 1 of 5**



## ATTORNEYS AND COUNSELORS AT LAW

77 West Washington Street, Suite 500
Chicago, Illinois 60602
Tel: (312) 641-6650    Fax (312) 641-6656
Email: mtannen@tannenlaw.com

August 9, 2021

*Via Email Delivery*

Luke Barefoot
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York NY 10006

*Via Email Delivery*

Phil DiDonato
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

Re:    *Arney v. Electrolux, et al.*

Dear Counsel:

As you know, we represent Diana Arney ("Arney") in a suit arising out of a dryer fire on or about January 7, 2020. We will be appearing *pro hac vice* in the bankruptcy action. I presume you have no objection.

I am directing this letter to both counsel for the Debtor ("Old Sears") and for the asset purchaser, Transformco, Inc. ("New Sears"). Each of you, perhaps understandably, have sought in our communications to emphasize that you each represent different parties with different interests. However, the reality is that Old Sears and New Sears have a complex business relationship.

Further, Old Sears and New Sears have each interposed arguments that collectively seek to extinguish Arney's claim and causes of action. In a nutshell, Old Sears asserts that (i) Arney's state law suit violates the automatic stay; (iii) the claims period for Arney to have filed a claim passed in 2019; and (iii) in any event, there are no available insurance policy proceeds based on an exhaustion letter you sent me for the 2007-08 policy period. In a nutshell, New Sears contends that New Sears bought the assets of Old Sears free and clear of any liens, including Arney's products liability suit and her successor liability claim against New Sears.



**Letter to Luke Barefoot and Phil DiDonato**
**August 9, 2021**
**Page 2 of 5**

      All of us can agree on a couple points. First, Arney was injured post-petition, post-confirmation, and after the asset sale to New Sears was approved by the court. Because Arney was not injured until 2020, she could not have known prior to the dryer fire of any claim she might have against old Sears or New Sears. Second, to our knowledge, Arney did not receive notice of the filing of Old Sears's bankruptcy or of the asset sale to New Sears.

      I am glad that you have agreed to answer some of our questions and provide us with information cooperatively so that we can assess the validity of the positions taken by Old Sears and New Sears. I will repeat what I have told both of you: we do not have any interest in going after assets of Old Sears's bankruptcy estate. We are not interested in hemorrhaging attorneys' fees and expenses in litigating a futile successor liability claim; however, based on our review of the law, we do not think Arney's claims were extinguished by the asset sale.

      As to our open questions:

### Questions for Old Sears:

- Phil advised me that Old Sears has allocated Arney's claim to the 2007-08 policy year. He then forwarded me a close-out letter for that period from Chubb, the claims handler for the primary CGL carrier ACE American Insurance Company ("ACE"). Is this the only applicable primary policy of insurance? Is the ACE policy an occurrence policy? If so, how can Sears allocate Arney's claim to a 2008 policy when the occurrence—the dryer fire—took place in 2020?

  **Debtors' Response**: The ACE general liability policy referenced is the only primary coverage that would cover this claim. The ACE policy is an occurrence policy. It is our position that the relevant date for fixing the claim is the date of the purchase of the dryer – the purchase of the goods creates a prepetition relationship or contact between the Debtors and the claimant. This contact with the Debtors gives rise to a contingent/unliquidated claim. (*See In re Manville Forest Prods.*, 209 F.3d 125, 129 (2d Cir.2000); *In re Piper Aircraft Corp.*, 162 B.R. 619, 627 (Bankr.S.D.Fla.1994)).

- It looks like the ACE policy ran from August to August. I am not sure when the dryer was distributed and sold to Arney. It is possible that Old Sears sold the dryer after August 1, 2008, potentially triggering another CGL policy per the rationale of Old Sears? Who was the CGL insurer for Old Sears from August 1, 2008 to August 1, 2009? Is that policy similarly exhausted? Are there other primary policies in effect during this time frame?

  **Debtors' Response**: We have requested from the insurance broker a copy of the letter confirming that the 2008-09 general liability is similarly exhausted, and will revert with a copy as soon as we are able. There are no other primary policies in effect for the 2008-09 period.



(Old Sears's Response To Counsel For Arney's August 9, 2021 Letter Received by Counsel for Arney on August 26, 2021)

**Letter to Luke Barefoot and Phil DiDonato**
**August 9, 2021**
**Page 3 of 5**

- I have advised Old Sears that we need to do our due diligence about the availability of excess and umbrella insurance. Phil thought there was one sort of flow chart of insurance. Stacey says such a schematic does not exist. For the 2007-08 and 2008-09 policy periods, please identify all excess and umbrella insurers for Old Sears. Please advise of policy limits; whether these are occurrence or claims made policies; and whether they are following form. Please send me copies of these policies so I can see if any excess or umbrella insurer is obligated to drop down if the limits of an underlying policy are exhausted. (Phil said New Sears might have answers to these insurance questions.)

  **Debtors' Response**: It is our understanding that the excess coverage for the 2007-08 and 2008-09 periods only apply after $5 million has been incurred on account of the primary policy, which, as indicated above, was exhausted prior to the Petition Date.  We are still looking into whether we will be able to provide copies of the policies.

- Did Old Sears procure liability insurance during the pendency of the bankruptcy which was in effect when Arney was injured in January 2020 and filed suit in November 2020? Is this insurance an occurrence policy or claims made? Who is the primary insurer; what are the limits of this policy; have the limits of this policy been exhausted; and are there excess and umbrella policies in place?

  **Debtors' Response**: The Debtors' liability coverage extended through 2019. We did not procure liability insurance for the period beyond 12/31/2019, as there were no remaining operations at that time.

- Did Old Sears issue any recall notices for the type of dryer sold by Sears to Arney before the bankruptcy was filed? After?

  **Debtors' Response**: We are not aware of any recall notices issued with respect to these dryers.

- Did Old Sears list in their bankruptcy as future contingent tort claimants pre-petition purchasers of Sears dryers who might be injured by those dryer fires post-petition, post-confirmation, or post-sale approval?

  **Debtors' Response**: We did not schedule future contingent claims in our filings. The schedules and statements are available on the public docket, accessible at: https://restructuring.primeclerk.com/sears/Home-Index.

- Did Old Sears notify Arney of the filing of bankruptcy before she was injured? Did Old Sears notify Arney of the impending asset sale to New Sears?

- **Debtors' Response**: No specific notice was provided to the claimant. It is the Debtors' position that our publication of the commencement of the chapter 11



**Letter to Luke Barefoot and Phil DiDonato**
**August 9, 2021**
**Page 4 of 5**

<span style="color:red">cases, the deadline to file proofs of claim, and the confirmation of the chapter 11 plan in national publications was sufficient to put potential parties in interest on inquiry notice (*See* Proofs of Publication at Docket Nos. 236, 2751, 5427).</span>

- Phil stated that Old Sears would get us copies of the operative agreements between Old Sears and Electrolux so that I can review the indemnification provisions. I also have advised Old Sears that we have alleged a joint venture in the state tort case between Old Sears and Electrolux. I have explained that any evidence of a joint venture would be used to establish the liability of Old Sears's partner, Electrolux. We would not use that evidence to dilute the assets of Old Sears's bankruptcy estate. We should continue our discussions in this regard. This is separate and apart from looking for Old Sears's available insurance and it is unrelated to the successor liability claims against New Sears. We should continue our discussions about a comfort order that allows discovery on this point with the understanding that we will not use it against the bankruptcy estate.

**Questions for New Sears:**
- During our phone conference on Friday, Luke stated that no one had reason to know Arney was a creditor of Old Sears's estate. Can you confirm that this is the position of New Sears?

- During our phone conference on Friday, Luke stated that this is the first time in the Old Sears bankruptcy that a claimant has questioned whether her successor liability claim against New Sears is truly extinguished when an appliance was manufactured, distributed and sold pre-petition, but the injury occurred post-petition, post-confirmation, and post-asset sale approval. Can you please confirm this is so? There are nearly 10,000 documents filed in this bankruptcy and I have been involved in this matter for a little over a week.

- New Sears has chosen to file a motion against Arney to enforce the sale order. I told you on Friday that I think an adversary complaint is the proper procedural vehicle. Over the weekend, I have looked at additional cases, and my views on this topic are the same. Please look at Bankruptcy Rule 7001(7) and (9). I am not currently asking for more time to file my response, but by the same token, my client should not be prejudiced by a truncated briefing schedule on a motion when you are seeking injunctive and declaratory relief more appropriate sought in an adversary proceeding. We reserve our rights in that regard.

- Do you have any facts from any source to demonstrate that Arney had prior knowledge such that she knew--before she was severely injured in January 2020— about what impact a bankruptcy discharge might have, even though she had not yet suffered her injuries?



**Letter to Luke Barefoot and Phil DiDonato**
**August 9, 2021**
**Page 5 of 5**

- Did New Sears notify Arney of the asset purchase agreement and that the court needed to approve the same?

- When do you contend Arney's right to payment arose?

- Does New Sears have applicable liability insurance to cover Arney's lawsuit? Please provide me with copies of any primary and excess policies.

- New Sears and Old Sears have relied on a 35 year old asbestos case, *In Re Johns-Manville*, 57 B.R. 680 (1986), in support of their argument that Arney's claims were extinguished by the approval of the asset purchase agreement. I alerted you to *In Re Grumman Olson Industries, Inc.*, 445 B.R. 343 (Bankr. S.D.N.Y. 2010), *aff'd* 467 B.R. 694 (S.D.N.Y. 2012). I do not agree with Mr. Maheshwari's efforts on Friday evening to distinguish *In Re Grumman*. Moreover, I think your citation to *Old Carco* is unavailing. That was a class action extended warranty case, with pre-petition and post-petition recall notices. The *Old Carco* court expressly noted that anyone should reasonably contemplate that their cars might need to be fixed. Surely, New Sears is not saying that Arney or New Sears actually contemplated or should have reasonably contemplated that her dryer would ignite.

\*\*\*

I am again requesting that counsel for Old Sears and New Sears participate in a global call with me and Arney's counsel in the state tort case. I think there is much we can accomplish collaboratively to narrow and crystallize the issues before the Court. Please let me know if you are available tomorrow or Wednesday for a Zoom call.

Thank you for your attention to this matter. We look forward to hearing from you.

Sincerely,

TANNEN LAW GROUP, P.C.

Michael M. Tannen

Michael M. Tannen
MMT/bhs
cc: Stacey Leinheiser (via
        email) Julie Pustilnik
        (via email)
        Laya Maheshwari (via email)



# TANNEN
## LAW GROUP, P.C.
### ATTORNEYS AND COUNSELORS AT LAW
77 West Washington Street, Suite 500
Chicago, Illinois 60602
Tel: (312) 641-6650      Fax (312) 641-6656
Email: mtannen@tannenlaw.com

September 8, 2021

***Via Email Delivery***
Jacqueline Marcus, Esq.
Phil DiDonato
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

*Re:    **Arney v. Electrolux, et al.***

Dear Counsel:

I am following up on several matters that we talked about since I first wrote you last month. As a preface to what follows, we are proceeding on three separate tracks:

(i)      Looking for whether Old Sears has insurance which applies to Arney's suit;

(ii)     Conducting discovery about whether Old Sears and Electrolux were engaged in a joint venture, with the understanding that if a joint venture is found, we will proceed to enforce a judgment against Electrolux; and

(iii)    Establishing successor liability against New Sears.

### Issue 1:  Verification of Liability Insurance for Old Sears

The first matter concerns what liability insurance Old Sears has or does not have which might cover Arney's claim. You have advised me that Old Sears exhausted its primary liability insurance for 2008 policy period, the year that the dryer was manufactured and sold to our client. You have also advised me that Old Sears did not have liability insurance in place on January 7, 2020, the day of the dryer fire because Old Sears was no longer a going concern. (You and I disagree about when Arney's claim accrued for purposes of triggering insurance coverage.)

I would like to confirm the existence or absence of insurance more formally. I am open to doing so in a way simultaneously establishes this point without unduly burdening the Debtor's estate. There are linear ways of achieving these twin goals: a deposition, a document subpoena and/or an affidavit signed by someone with knowledge. You mentioned that you have a go-to consultant that you speak with when insurance issues arise. From your description, he seems like a guy who could sign an affidavit or sit for a Rule 7030(b)(6) deposition.

My current belief is that the most efficient way to proceed is for me to send you a list of the types of insurance policies we are looking for; have your consultant confirm or deny such policies exist; and for the consultant, as agent for Old Sears, attest to same in an affidavit. Again, we do not want to unduly burden the Debtor's estate. If there is any applicable insurance, we can move to lift the stay and agree that Arney is only looking to insurance proceeds of the Debtor insurance.

Please chat with your client and insurance consultant and please let us know what works for you.

**Letter to Marcus and DiDonato**
**September 8, 2021**
**Page 2**

## Issue 2:  Joint Venture Discovery

As discussed above, we have alleged on our state court complaint that Old Sears and Electrolux were engaged in a joint venture.  If we are right on this point, then Old Sears and Electrolux will be treated as partners.  The knowledge and conduct of Old Sears will be attributed to Electrolux.  We will agree that we would not execute against the assets of property of Old Sears.

We repeat. We are not interested in unduly burdening the bankruptcy estate of Old Sears, but the joint venture allegations in our complaint warrant written and oral discovery.   You had mentioned offhandedly that Electrolux should have the joint venture data we are looking for.  However, our preliminary investigation tells us that Old Sears called the proverbial shots for the Old Sears/Electrolux relationship, and I suspect that Old Sears has rafts of information which Electrolux does not.  In any event, we are open to seeking a comfort order which memorializes our agreement not to use joint venture discovery against Sears.

Thank you for your attention to this matter. We look forward to hearing from you.

Sincerely,

TANNEN LAW GROUP, P.C.

*Michael M. Tannen*

Michael M. Tannen

MMT/bhs
cc: Stacey Leinheiser (via email)
    Julie Pustilnik (via email)

