CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
Sean A. O'Neal, Esq.
Luke A. Barefoot, Esq.

*Attorneys for Transform SR Brands LLC*

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*,[1] | Case No. 18-23538-RDD |
| Debtors. | Jointly Administered |

## TRANSFORM SR BRANDS LLC'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO ENFORCE ORDER (I) APPROVING THE ASSET PURCHASE AGREEMENT AMONG SELLERS AND BUYER, (II) AUTHORIZING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS, AND LEASES IN CONNECTION THEREWITH AND (IV) GRANTING RELATED RELIEF

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).   The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ........................................................................................................ 3

ARGUMENT ............................................................................................................. 5

I.   Ms. Arney is an unknown creditor, to whom sufficient publication
notice was provided. ......................................................................................... 5

II.  Ms. Arney's claims against the debtors (and thus against Transform as
alleged successor) arose pre-petition. ............................................................... 6

III. Ms. Arney's reliance on the case law is misplaced. .......................................... 7

     A.  Old Carco is the relevant controlling precedent. ........................................... 7

     B.  The cases from outside of the Second Circuit are similarly
distinguishable. ............................................................................................. 11

CONCLUSION ........................................................................................................ 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arney v. Electrolux Home Prods. Inc.*,
Case No. 2020 L 012403 (Ill. Cir. Ct. 2020) .................................................................. 1

*Dahlin v. Archer-Daniels-Midland Co.*,
No. 3:14-cv-00085SMRHCA, 2015 WL 11675667 (S.D. Iowa Sept. 29, 2015)............... 10

*In Matter of Motors Liquidation Co.*,
829 F.3d 135 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 1813 (2017) .................................6, 7, 8, 10

*In re Chateaugay Corp*,
944 F.2d 997 (2d Cir. 1991) ................................................................................. 9, 10

*In re Gen. Motors LLC Ignition Switch Litig.*,
14-MC-2543 (JMF), 2017 WL 3382071 (S.D.N.Y. Aug. 3, 2017) ................................. 10, 11

*In re Grumman*,
445 B.R. 243 (Bankr. S.D.N.Y. 2011) ................................................................. 7, 8, 11

*In re Kewanee Boiler Corp.*,
198 B.R. 519 (Bankr. N.D. Ill. 1996).............................................................................. 12

*In re Motors Liquidation Co.*,
599 B.R. 706 (S.D.N.Y. 2019) ......................................................................................... 6

*In re Old Carco LLC*,
492 B.R. 392 (Bankr. S.D.N.Y. 2013) ........................................................................... 8, 9

*In re Pettibone Corp.*,
90 B.R. 918 (Bankr. N.D. Ill. 1988)............................................................................... 12

*Schwinn Cycling & Fitness Inc. v. Benonis*,
217 B.R. 790 (N.D. Ill. 1997)................................................................................... 12, 13

*Zerand-Bernal Group, Inc. v. Cox*,
23 F.3d 159 (7th Cir. 1994).......................................................................................... 11

Transform SR Brands LLC ("Transform") hereby submits in further support of its *Motion to Enforce Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief*, ECF No. 9647 (the "Motion to Enforce"), this reply (the "Reply") to the *Response of Unidentified and Unidentifiable Future Tort Claimant Diana Arney to Motion to Enforce Sale Order and for Other Relief of Rule 363 Asset Purchaser Transform*, ECF No. 9807 (the "Objection"). In its Motion to Enforce and this Reply, Transform seeks to enforce the Sale Order[1] and enjoin Diana M. Arney from pursuing or otherwise asserting successor liability claims in the action captioned *Arney v. Electrolux Home Products Inc. et al.*, Case No. 2020 L 012403 (Ill. Cir. Ct. 2020) (the "Illinois Action"), and respectfully states as follows:

## PRELIMINARY STATEMENT

1.      It has been more than two months since Transform filed its original Motion to Enforce in this Court. In that motion, Transform requested that this Court enforce its own Sale Order and prevent further attempts to contravene its clear and unambiguous injunction precluding creditors from asserting successor liability claims against Transform. Specifically, the language in the Sale Order states that Transform purchased the Debtors' assets free and clear of all successor liability claims, and repeatedly recognizes the importance of that provision to Transform when it made its decision to buy the Debtors' assets. Notwithstanding this language, Ms. Arney filed a lawsuit premised on a theory of successor liability and has sought to pursue related discovery in

---

[1]      Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion to Enforce.

furtherance of her efforts to hold Transform liable for her injuries.

2.      Specifically, Ms. Arney's injuries were caused by a product that she purchased from the Debtors in 2008, which she alleges had a underlying defect at the time of purchase, a full decade before Transform even existed as an entity.   In its brief existence, Transform has not repaired the product or otherwise interacted with Ms. Arney or the dryer she purchased from the Debtors in any way.  Although Ms. Arney failed to specifically allege anything in her Complaint that clearly identified the basis on which she was pursuing claims against Transform, she did finally reveal through her Motion to Permit Discovery and Discovery Requests that she is suing Transform on a theory of successor liability, which means of necessity that her claim arose pre-petition, pre-confirmation, and pre-asset sale.  And yet Transform has been hauled to court in Illinois and handed invasive and cumbersome discovery requests on a question that can be answered on the face of the Sale Order.

3.      In the intervening two months, Transform has conferred with Ms. Arney's state court counsel and Bankruptcy Court counsel, responded to their letters, granted every extension request (of which there have been several), and repeatedly affirmed the importance of handling any disputes through this Court's formal, recognized framework.

4.      In her Objection, Ms. Arney includes a grab-bag of allegations that not only contradict her own filings and communications in the Illinois Action but that also fail to stand up to scrutiny in any event.

5.      In particular, in an attempt to substantiate her theory, Ms. Arney invokes a patchwork of cases, most of which are not within this jurisdiction.   To solve that problem, Ms. Arney second guesses the Debtors' choice of venue — a question not before this Court, not relevant to the case at hand, and not within Transform's purview.  Furthermore, for nearly all of

2

the cases, Ms. Arney has misconstrued the applicable holding or otherwise omitted key distinguishing facts. At base, Ms. Arney was an unknown creditor, who was provided publication notice that this Court already found to be sufficient, and has articulated no grounds to collaterally attack the findings and injunctions in the Sale Order. In this Reply, Transform will explain just why Ms. Arney's arguments are unavailing and repeat its request that this Court resolve this question once and for all.

## **BACKGROUND**

6.      As set forth more fully in the Motion to Enforce, on October 15, 2018 and continuing thereafter, each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Transform Holdco LLC ("Holdco") was selected as the winning bidder at an auction of substantially all of Debtors' assets.[2] This Court approved the proposed sale transaction on February 7, 2019, and on February 8, 2019, entered the Sale Order approving the sale of the Debtors' assets to Holdco (and, as an Affiliated Designee, Transform) free and clear of all Claims (as defined in the Sale Order) pursuant to that certain Asset Purchase Agreement. *See* Sale Order ¶¶ 19–24.

7.      Ms. Arney was an unknown creditor to the Debtors during this period and as such was not entitled to actual notice. The Debtors provided nationwide publication notice to all unknown creditors, and such notice was found sufficient by this Court. *See* Sale Order ¶¶ P, 4.

8.      On November 19, 2020, Ms. Arney filed a Complaint in the Illinois Court against Electrolux Home Products Inc., Transform, and Sears, Roebuck and Co. (the "Illinois Action Defendants")[3] for injuries allegedly sustained in an accident involving a dryer fire on January 7,

---

[2]      Holdco is the ultimate and parent entity of Transform.

[3]      Ms. Arney subsequently voluntarily dismissed the Complaint against Sears, Roebuck and Co.

3

2020. *See* First Black Decl., Ex. A. The Complaint alleges *inter alia* a product liability case arising from the Illinois Action Defendants' alleged design, manufacture, and/or sale of the dryer at issue. *See id.* ¶¶ 5–8. Under the Illinois Court's General Administrative Order in light of the Covid-19 pandemic, parties were allowed direct email communications with the Illinois Court. *See* Second Black Decl. Ex. 1. Pursuant to this General Administrative Order, both parties engaged in direct and substantive communications with the Illinois Court.

9.    Although Ms. Arney's original theory of liability against Transform in the Illinois Action was unclear on the face of her Complaint, her pursuit of discovery in response to Transform's Motion to Dismiss in the Illinois Court confirmed that she was suing Transform on a theory of successor liability.    *See* First Black Decl. Ex. C, ¶¶ 4–6. In her Motion to Permit Discovery, Ms. Arney enquired whether there was a "continuation of the seller's business operations" and whether one of the four exceptions to successor corporate non-liability applied to Transform such that Transform could be held liable as a successor based on the Debtors' sale of the dryer in 2008. *Id.* ¶ 5.[4] In her Discovery Requests, Ms. Arney sought "[a]ny and all communications relating to Transform SR Brands LLC and/or Transform Holdco LLC becoming successor to Sears, Roebuck and Co." First Black Decl. Ex. H, ¶ 23.

10.    Transform filed its Motion to Enforce before this Court on July 13, 2021, seeking to enforce the clear and unambiguous provisions of the Sale Order. Since then, Transform has granted Ms. Arney four extensions to her objection deadline. Twice, Ms. Arney missed the objection deadlines and twice Transform filed Certificates of No Objection, only to give Ms. Arney

---

[4]    Ms. Arney's state court counsel explicitly stated to the Illinois Court that it was requesting "written discovery, document production, and potentially depositions" on the "four exceptions to successor corporate nonliability." *See* Second Black Decl. Ex. 2, Email from J. Pustilnik to Judge O'Hara of the Illinois Court, dated June 3, 2021. As noted below, these communications are examples of Ms. Arney's counsel acting purusant to the General Administrative Order, despite Ms. Arney's allegations that it was only Transform that engaged in such "unorthodox" "argumentative," and "direct" communications.

another extension.  Ms. Arney used this extended window to engage in a letter-writing campaign and ultimately send Transform discovery requests — notwithstanding the fact that this action was filed so Transform could *avoid* the resource drain of discovery (and all discovery was in fact stayed by the Illinois Court pending a decision on the Motion to Enforce in this Court).

11.    Finally, after the Third Notice of Adjournment of Hearing, several hours past the Fourth Objection Deadline, Ms. Arney filed her Objection to Transform's Motion to Enforce.  The Objection, among other things, accused Transform of engaging in "condescending vitriol" and criticized its state court counsel for engaging in "unorthodox, substantive, argumentative and direct email communications" with the Illinois Court.[5]  Objection ¶ 10.  While *both* Ms. Arney and Transform engaged in such communications, Transform did so only after Ms. Arney did not follow the Illinois Court's motion procedures.[6]

12.    Transform now files this Reply to respond to the merits of Ms. Arney's various substantive arguments.

## ARGUMENT

### I.    Ms. Arney is an unknown creditor, to whom sufficient publication notice was provided.

13.    The Objection repeatedly tries to cast Ms. Arney as an "unidentified" and "unidentifiable" claimant, but the truth is that she was an unknown creditor.  At the time of filing for voluntary reorganization under Chapter 11 of the Bankruptcy Code and until the entry of the

---

[5]    It is surprising to Transform that Ms. Arney would accuse it of "condescending vitriol" but then launch into an ill-founded and factually inaccurate attack on counsel who is not even present before this Court.

[6]    Under the Illinois Court's General Administrative Order, for contested motion procedures such as discovery requests, "prior to briefing a motion, the party requesting the discovery shall confer with opposing counsel [and] obtain an agreement to conduct such discovery." *See* Second Black Decl. Ex. 1 at 3.  Ms. Arney's counsel never conferred with Transform's state court counsel, instead emailing the Illinois Court directly with her Motion for Discovery and proposed order granting discovery.  When the Illinois Court entered this order an hour later — before Transform had time to voice any objection or file a Response — Transform initiated substantive follow-up email communication.

Sale Order, the Debtors had no reason to believe she was a creditor.

14.     To comport with due process, an unknown creditor is "entitled to only constructive notice." *In re Motors Liquidation Co.*, 599 B.R. 706, 714 (S.D.N.Y. 2019). "[P]ublication notice suffices" for such creditors' claims. *In Matter of Motors Liquidation Co.*, 829 F.3d 135, 159 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 1813 (2017). In the present case, the Debtors provided publication notice to all unknown creditors and the Bankruptcy Court has already found such notice to be "good, sufficient, and appropriate." Sale Order ¶ P; *see also id.* ¶ 4 (stating that "Notice of the Sale Motion and the Sale Hearing was adequate, appropriate, fair and equitable under the circumstances and complied in all respects" with the pertinent Bankruptcy Code section, Bankruptcy Rules, Amended Case Management Order, and the Bidding Procedures Order).

## II.    Ms. Arney's claims against the debtors (and thus against Transform as alleged successor) arose pre-petition.

15.     Ms. Arney has employed a dizzying array of narratives and legal theories in her communications so far with the Illinois Court, Transform, the Debtors and this Court. While one could be forgiven for losing track of the currently active theory, there is no question that Ms. Arney's claims arose long before the Debtors' petition date.

16.     Since Ms. Arney is suing Transform on a successor liability theory, her claims necessarily arose against Sears *pre*-petition, *pre*-confirmation, and *pre*-asset sale approval. Her claims cannot arise against *Transform* because her pleadings in the Illinois Action are based on a purchase of a dryer, which she alleges had a latent defect at the time of purchase — nearly a decade before Transform even came into existence. Assuming that the facts set forth in Ms. Arney's Complaint are true, Ms. Arney's claim arose when she bought the dryer with a latent defect, even if she did not have knowledge of that defect and even if the injury did not manifest itself until later. At the time of purchase, there was both a "contact" as well as a "relationship" between the Debtors

and Ms. Arney. *Motors Liquidation Co.*, 829 F.3d at 156 (explaining that "some minimum 'contact'" or "'relationship'" makes a potential claimant "identifiable") (citations omitted).

17.    To the extent Ms. Arney now tries to change course in her Objection and characterize her injury as occurring "post-sale," this argument is not only inconsistent with the allegations made in the Illinois Action, but is ultimately unavailing. In the three years of Transform's existence, it has not had *any* contractual or causal nexus to Ms. Arney — and Ms. Arney has not alleged any such connection in her Complaint. It is for this reason that Ms. Arney has pursued successor liability theories in the Illinois Action, as without tying Transform to the Debtors' sale of the dryer, there is simply no connection between Transform and Ms. Arney on which a claim could be asserted against Transform.

## III.    Ms. Arney's reliance on the case law is misplaced.

18.    In her Objection, Ms. Arney cites a litany of case law that purportedly supports her argument. However, the cases she cites are either explicitly inapt or easily distinguishable.

### A.    Old Carco *is the relevant controlling precedent.*

19.    Ms. Arney claims in her Objection that *In re Grumman*, 445 B.R. 243 (Bankr. S.D.N.Y. 2011) is a "Spot-On Case" and its opinion and affirmance are "instructive and provide an analytical framework" for the resolution of this case. As Transform has explained to Ms. Arney's counsel, *Grumman* is readily distinguishable. In *Grumman*, the debtor manufactured and sold truck bodies that were later incorporated into completed vehicles for Ford Motor Company and General Motors. *See id.* at 245. The plaintiff in that case was injured in a truck that contained a faulty part manufactured by the debtor, which by then had filed for bankruptcy and sold its assets to the purchaser. *Id.* at 245–47. The Sale Order contained provisions clearing the purchaser entity

of potential liability for tort claims from allegedly defective products sold by the debtor before bankruptcy. *Id*. at 245–46. When the *Grumman* plaintiff sued the purchaser entity, the Court allowed the case to go forward on the basis that the plaintiff had no prior contact with the debtor and, therefore, would not have had an identifiable claim against the debtor at the time of the sale.

20.     In sum, the *Grumman* holding is premised on the fact that there were *two* degrees of separation between the debtor (a manufacturer of parts) and the plaintiff (a driver of the finished vehicle that was not purchased directly from the debtor). Therefore, it is self-evident that there would be no pre-petition relationship between the debtor and plaintiff, and the plaintiff would potentially not even know if it had a claim against the debtor unless it investigated *how* the truck was manufactured. *See Motors Liquidation Co.*, 829 F.3d at 156 (explaining that "some minimum 'contact'" or "'relationship'" makes a potential claimant "identifiable") (citations omitted). *Grumman* does not answer the question of whether the plaintiff would have had identifiable claims against Ford Motor Company or General Motors (entities that did have a direct connection with the plaintiff). Unlike the plaintiff in *Grumman*, Ms. Arney had a direct relationship with the Debtors and her complaint in the Illinois Action is predicated on facts alleged by her concerning her direct purchase of the dryer from the Debtors.

21.     Ms. Arney's Objection correctly points out Transform's cite to *In re Old Carco LLC*, 492 B.R. 392 (Bankr. S.D.N.Y. 2013), but labels it "inapposite" and promises to "discuss[ it] below." Objection ¶ 6. However, apart from one parenthetical, the Objection does not actually distinguish *Old Carco* — which readily identified the limits of *Grumman*. In *Old Carco*, the plaintiffs purchased automobiles from the debtor before its bankruptcy filing and alleged that they suffered injuries due to design flaws in those automobiles after the closing of the bankruptcy. *See* 492 B.R. at 399–401. They sued the distinct entity that had purchased the debtor's assets "free

and clear" according to the Bankruptcy Court's sale order. The Court held that the sale order barred plaintiffs' suit because (1) they had a "pre-existing relationship" with the debtor, and (2) the alleged design flaws behind their injury existed pre-petition. *Id.* at 402–03. That Ms. Arney's Objection, after promising to "discuss[]" *Old Carco* in its brief, does not even *mention* the pre-existing relationship aspect of the case's holding is telling. Objection ¶ 6.

22.    The *Old Carco* court also took into account the fact that the debtor had sent certain recall notices, but did not find those notices necessary for its holding given the clear pre-existing relationship.[7] In fact, when addressing the recall notices, the court first noted that "[a]nyone who owns a car contemplates that it will need to be repaired" and the existence of the recall notices only reinforced this statement. *Id.* at 403. Moreover, to the extent Ms. Arney has offered any causes for her injuries in her filings in this or the Illinois Court, she has not identified a *single* thing Transform has done connected to her or the allegedly defective dryer products since its purchase of Debtors' assets or Transform's existence. The natural and only conclusion from Ms. Arney's own filings is that the design flaws in the dryer that caused her injury existed pre-petition.

23.    The bridge hypothetical from *In re Chateaugay Corp*, 944 F.2d 997 (2d Cir. 1991), actually bolsters Transform's case by confirming the importance of a pre-petition relationship. The Objection uses *Chateaugay*'s bridge hypothetical as a rhetorical punchline without engaging with it, and it is undeniably powerful to imagine the "[s]heer fortuity" that could lead to any unidentified and unidentifiable group of people dying from a bridge collapse when they drive across it "someday in the future." *Id.* at 1003. However, that also makes *Chateaugay* inapplicable here because those people have *no pre-existing relationship* with the bridge or the company that

---

[7]    Not only does Ms. Arney fail to allege any similar recall notices or other facts that could have put the Debtors here on notice of a potential future claim from purchasers of the dryer, but Transform has confirmed to Ms. Arney that no such recall notices were ever sent by the Debtors or Transform. *See* Letter from Luke A. Barefoot to Michael M. Tannen dated August 12, 2021 at 2, attached to Objection Ex. C.

built it. Ms. Arney already had a relationship with the Debtors and, as her discovery requests make clear, is in fact suing Transform on the theory that it is a continuance *of that relationship*. This understanding of *Chateaugay* and its bridge hypothetical have been echoed by at least one other court. *See Dahlin v. Archer-Daniels-Midland Co.*, No. 3:14-cv-00085SMRHCA, 2015 WL 11675667, at *7 (S.D. Iowa Sept. 29, 2015) (noting that the bridge hypothetical exposes the weakness of just focusing on the debtor's conduct, and this is "ameliorated" by looking instead at a pre-petition relationship).

24.    The Objection's other major reliance on a case from this jurisdiction borders on the disingenuous. In what can only be justified as a scare tactic, the Objection points to *In re General Motors LLC Ignition Switch Litigation*, 14-MC-2543 (JMF), 2017 WL 3382071 (S.D.N.Y. Aug. 3, 2017), for the proposition that preclusion of future claims "would reward debtors and asset purchasers who concealed claims known to them but unknown to potential claimants, undermining a cornerstone of bankruptcy law." Objection ¶ 20. First, based on Ms. Arney's own filings in the Illinois Court, she is not alleging "future claims" but instead successor liability for claims that arose *pre*-petition, *pre*-confirmation, and *pre*-asset sale. Second, in *General Motors*, it was the law of the case that the debtor had "deprived Plaintiffs of their constitutional rights to notice and an opportunity to be heard." 2017 WL 3382071, at *5. The Second Circuit had already held that the Debtor knew or reasonably should have known of the product defect at issue and it knew the identities of the potential claimants (because federal law required it to keep such records of customers) and yet it failed to provide those potential claimants with actual notice. *See Motors Liquidation Co.*, 829 F.3d at 159–61.[8]

---

[8]    Ms. Arney makes the incredible statement that Transform should not be entitled to cite new case law in this Reply. *See* Objection ¶ 16 n.2. While there is no basis for such a position (which would deprive Transform of the opportunity to respond to authorities cited for the first time in the objection), this case is not strictly new as it was relied upon in the cases that Ms. Arney herself cites in the Objection.

25.     In contrast, here, Ms. Arney was an unknown creditor who was only entitled to publication notice and there are no allegations, much less findings, that the Debtors had any reason to believe that purchasers of the dryer had claims against the Debtors. Not only did the Debtor provide such notice, but also this Court has already found such notice to be satisfactory. Sale Order ¶¶ P, 4; *cf. Gen. Motors*, 2017 WL 3382071, at *5 ("[W]here, as here, the party asserting a successor liability claim could not have asserted that claim at the time of a bankruptcy because the debtor . . . failed to give constitutionally adequate notice, it would be unreasonable to treat the claim as property of the bankruptcy estate, extinguished by the bankruptcy.").

B. *The cases from outside of the Second Circuit are similarly distinguishable.*

26.     When unable to make her point persuasively from this jurisdiction's precedent, Ms. Arney brings in markedly inapplicable case law from jurisdictions around the country. The *Old Carco* opinion — issued less than a decade ago by this very Court, interpreting its own prior precedent — is thus controlling and certainly more illuminating than *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159 (7th Cir. 1994). In the nearly three decades since *Zerand-Bernal* was decided by the Seventh Circuit, courts around the country and in this district (including the *Grumman* court) have noted its weakened precedential value due to intervening Supreme Court rulings. *See Grumman*, 445 B.R. at 248 (stating that *Zerand-Bernal* is "inconsistent with the Supreme Court's decision" in *Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009), and other case law in the Second Circuit). Another two years later, *Old Carco* further circumscribed the reach of *Grumman* itself; as noted above, it is the *Old Carco* decision that is controlling in this Court.[9]

---

[9]     Ms. Arney tries to "shine[] a light" on case law from the Seventh Circuit and in particular opinions by The Honorable Judge Jack Schmetterer in a footnote that raises conjecture about the Debtors' valid venue choices. *See* Objection ¶ 21.   Rather than engage with venue speculation that is not relevant to any matter before this Court, Transform will focus on the reasoning of the various cases cited. *See id.* ¶ 21 n.5 (pontificating that if Debtors had filed for bankruptcy in Illinois, this case "may have been assigned to Judge Schmetterer").

11

27.    First, certain cases cited by Ms. Arney do not even involve a purchaser of a debtor's assets and do not analyze issues of successor liability.    For example, *In re Kewanee Boiler Corp.*, 198 B.R. 519 (Bankr. N.D. Ill. 1996), the dispute was between a potential claimant and a *reorganized debtor* — not a distinct purchaser entity like Transform.  *Compare Kewanee*, 198 B.R. at 521 ("[W]hile the reorganized Debtor has a new name, it is the *same corporate entity*.") (emphasis added) *with* Sale Order ¶ M. [10]  In fact, a detailed review of the *Kewanee* opinion reveals there is no discussion of successor liability at all and certainly no discussion regarding the Court's ability to shield a purchaser from such claims.  *See also In re Pettibone Corp.*, 90 B.R. 918 (Bankr. N.D. Ill. 1988) (adjudicating a dispute between a personal injury claimant and a debtor-in-possession that continued in the same business and had been sued in ten other similar personal injury actions since its voluntary petition for reorganization, not a distinct purchaser entity like Transform).

28.    Second, some of the other case law that Ms. Arney relies on is similarly inapplicable to this case due to their much more narrow definition of the term "claim."   For example, in *Schwinn Cycling & Fitness Inc. v. Benonis*, 217 B.R. 790 (N.D. Ill. 1997), the plan at issue confirmed by the bankruptcy court, defined a "Personal Injury Claimant" as "'a Claim resulting from a tort attributable to one of the Debtors and based upon personal injury, product liability, property damage or other similar claims occurring *prior to the* Confirmation Date.'"  *Id.* at 793 (citation omitted) (emphasis added).  Given the plan's narrow definition of a personal injury claim, the *Schwinn* Court easily held that "the Plan's injunction does not apply to, and thus, cannot

---

[10]    "The Buyer (i) is not, and shall not be considered or deemed a mere continuation of, or successor to, the Debtors in any respect; (ii) has not, *de facto* or otherwise, merged with or into the Debtors; and (iii) is not a continuation or substantial continuation, and is not holding itself out as a mere continuation, of any of the Debtors or their respective estates, businesses or operations, or any enterprise of the Debtors and there is no continuity of enterprise between the Debtors and the Buyer."

bar," the plaintiff's post-confirmation claim. *Id.* at 795-96. That is worlds apart from the present case and Sale Order, which this Court has already noted defines the term "[C]laim" "very broadly." Dec. 13, 2019 Hr'g Tr. 145:6–14, ECF 6244; Sale Order ¶ R.[11]

## CONCLUSION

For the last two months, Ms. Arney's misguided litigation strategy and unjustified discovery requests have consumed much of Transform's time and resources. This Court does not need to evaluate the merits of Ms. Arney's tort claims or diminish the gravity of her injuries to recognize that, under her *own* filings in *her* lawsuit in the Illinois Court, she represents that her right to payment arose pre-petition, pre-confirmation, and pre-asset sale approval. As a result, she cannot sue Transform on a theory of successor liability without running afoul of this Court's Sale Order.

For the foregoing reasons and the reasons set forth in Transform's Motion to Enforce, Transform respectfully requests that this Court (i) grant Transform's Motion to Enforce, (ii) enforce its Sale Order, and (iii) grant Transform such other and further relief as the Court deems just and proper.

*[Remainder of Page Left Blank Intentionally]*

---

[11]    The Sale Order's definition of "Claims" is incredibly broad and goes on for over a page. In relevant part, it includes "any derivative, vicarious, transferee or successor liability claims, alter ego claims, *de facto* merger claims, rights or causes of action… whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether known or unknown." Sale Order ¶ R.

Dated:     September 22, 2021        /s/ Luke A. Barefoot
       New York, New York        Sean A. O'Neal, Esq.
                            Luke A. Barefoot, Esq.
                            CLEARY GOTTLIEB STEEN & HAMILTON LLP
                            One Liberty Plaza
                            New York, New York 10006
                            Telephone: (212) 225-2000
                            Facsimile: (212) 225-3999

                            *Attorneys for Transform SR Brands LLC*