AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Ira S. Dizengoff
Philip C. Dublin
Sara L. Brauner
Zachary D. Lanier

*Counsel to the Official Committee of*
*Unsecured Creditors of Sears Holdings Corporation, et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| **In re** | : | Chapter 11 |
|  | : |  |
| **SEARS HOLDINGS CORPORATION, et al.,** | : | Case No. 18-23538 (RDD) |
|  | : |  |
| Debtors.[1] | : | (Jointly Administered) |
|  | : |  |

# REPLY OF AKIN GUMP STRAUSS HAUER & FELD LLP
# AND FTI CONSULTING, INC. TO OBJECTION BY ORIENT
# CRAFT LIMITED TO INTERIM APPLICATIONS FOR COMPENSATION

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc.(4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), as counsel, and FTI Consulting, Inc. ("FTI"), as financial advisor, to the Official Committee of Unsecured Creditors (the "Creditors' Committee") of Sears Holdings Corporation and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases hereby submit this reply (the "Reply") in support of the (i) *Eighth Interim Fee Application of Akin Gump Strauss Hauer & Feld LLP as Counsel to the Official Committee of Unsecured Creditors for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period of March 1, 2021 Through and Including June 30, 2021* [ECF No. 9742] (the "Akin Interim Fee Application")[2] and (ii) *Eighth Interim Fee Application of FTI Consulting, Inc., Financial Advisor to the Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al., for Interim Allowance of Compensation and Reimbursement of Expenses for the Period from March 1, 2021 through June 30, 2021* [ECF No. 9743] (the "FTI Interim Fee Application" and, together with the Akin Interim Fee Application, the "Interim Applications"), and in response to the *Objection of Orient Craft Limited to Interim Applications for Compensation (1) Akin Gump Hauer & Field LLP* [sic] *[Doc. 9742], (2) FTI Consulting Inc. [Doc. 9743], and (3) Weil, Gotshal & Manges LLP [Doc. 9745]* [ECF No. 9809] (the "Objection") filed by Orient Craft Limited ("Orient Craft") and any joinders thereto. In support of this Reply, Akin Gump and FTI respectfully state as follows.

## REPLY

1. Orient Craft objects to the Interim Applications on the basis that (i) certain administrative expense claimants remain unpaid and (ii) the "primary" reason those claimants

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Akin Interim Fee Application.

2

remain unpaid is "because most of the funds recovered by th[e] estate[s] keep going to the estates' professionals." Obj. ¶¶ 7-8. Orient Craft fails to either challenge the Interim Applications under the applicable standards set forth in the Bankruptcy Code or provide any legal or factual support for the statements made in the Objection.

2.  The review of payments to estate-retained professionals is governed by Bankruptcy Code section 330, which provides that, after notice and hearing, the bankruptcy court may award "reasonable compensation" and "reimbursement" for actual, necessary services and expenses. 11 U.S.C. § 330(a)(1). Further, when assessing the reasonableness of a fee application, the bankruptcy court "shall consider the nature, the extent, and the value of such services, taking into account all relevant factors[.]" *Id.* § 330(a)(3) (providing a non-exclusive list of factors to be considered by the bankruptcy court).

3.  In these chapter 11 cases, the Interim Compensation Order sets forth comprehensive procedures for the submission and review of interim fee applications by all estate-retained professionals. *See* Interim Compensation Order ¶ 2. Moreover, all professional fees and expenses are subject to review by the Fee Examiner, who monitors, reviews and evaluates all applications for compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Interim Compensation Order and the Fee Guidelines. *See* Fee Examiner Order ¶¶ 5-6.[3] Finally, professionals in these cases are subject not only to the foregoing procedures and review by the Fee Examiner and the Court, but also the right of any party in interest to challenge fees it views as unreasonable or unnecessary.

---

[3] Each of the Court's orders granting interim allowance of compensation to the estate-retained professionals contains a reservation of rights in favor of the Fee Examiner, such that nothing in the order precludes the Fee Examiner's review or impairs his rights in connection with approval of any professional fees or expenses on a final basis. *See, e.g.*, *Seventh Interim Order Granting Applications of Professionals for Interim Allowance of Compensation and Reimbursement of Expenses* [ECF No. 9545] ¶ 3; *see also* 11 U.S.C. § 330(a)(5).

3

4. Orient Craft, however, makes no attempt to argue that any of the fees it challenges—all of which are extensively detailed in the Interim Applications and the underlying time records—are not compensable within the meaning of Bankruptcy Code section 330. *See Akin Interim Fee Application ¶¶ 26-48, 53; FTI Interim Fee Application ¶¶ 14-19.* Instead, without support, Orient Craft objects to the Interim Applications wholesale because Orient Craft opted out of the Administrative Expense Claims Consent Program (as defined in the Confirmation Order) and, therefore, has not received payment on account of its administrative expense claim. But estate-retained professionals are not similarly situated to other administrative claimants in that: (i) professionals' retention and employment, and the terms thereof, are subject to court approval; (ii) Bankruptcy Code sections 330 and 331 expressly contemplate that professionals may receive interim payments prior to a final fee application, subject to disgorgement under Bankruptcy Code section 330(a)(5); and (iii) the professionals in these chapter 11 cases expressly bargained for a carve-out from certain secured creditors' collateral, which is held in trust solely for the benefit of professionals and does not constitute estate property distributable to other administrative claimants. *See Final Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [ECF No. 952] ¶ 21(f); *see also In re Unitcast*, 214 B.R. 992, 1002 (Bankr. N.D. Ohio 1997) ("[P]rofessional's fees are 'interim' not so that the professional will insure the administrative solvency of the case, but so that the Court may be able to judge the propriety of the fees under [Bankruptcy Code section] 330 with facts that may come to light after the payments are rendered.").

4

5. The relief Orient Craft seeks—namely, denying the Interim Applications simply because Orient Craft has not yet been paid on its own administrative expense claim—finds no support in either the Bankruptcy Code or any other applicable law.  H.R. Rep. No. 95-595 (1977), 1978 U.S. Code Cong. & Admin. News 5787, 6147 ("Those who must wind up the affairs of a debtor's estate must be assured of payment, or else they will not participate in the liquidation or distribution of the estate."); *cf. In re Headlee Mgmt. Corp.*, 519 B.R. 452, 459-61 (Bankr. S.D.N.Y. 2014) (observing that, in a converted chapter 11 case, to interpret Bankruptcy Code section 726(b) as mandating pro rata treatment among all administrative claimants by disgorging professionals' fees would be contrary to the legislative scheme enacted by Congress); *In re St. Joseph Cleaners, Inc.*, 346 B.R. 430, 444 (Bankr. W.D. Mich. 2006) ("[T]he Bankruptcy Code guarantees through [Bankruptcy Code s]ection 363(c) and the limitations of [Bankruptcy Code s]ection 549 that absolute equality of distribution will not be realized as soon as the [c]hapter 11 debtor uses the first dollar of estate property to pay for a post-petition good or service.  Consequently, it is reasonable to ask why [c]hapter 11 professionals should be singled out in pursuit of an unachievable goal based upon a remedy which is not found anywhere within the Bankruptcy Code itself[.]").

6. Moreover, an objection to the Interim Applications is not the proper procedural vehicle to seek relief from the Confirmation Order or any of this Court's other orders.  *See* Obj. ¶ 3 (alleging that it appears testimony at confirmation was "false and misleading"), ¶ 6 (discussing the carve-out account).[4]  This is not the first time administrative expense claimants (including

---

[4] The Court, in its confirmation findings, recognized that the Plan had the best chance of maximizing creditors' recoveries in a manner "that is fair in light of all the creditors' rights under the applicable agreements and the Bankruptcy Code, including the DIP agreement and order, the cash collateral order and the carveout provided for in it, including the language that I've already referenced regarding the placement of the carveout amounts in a segregated account and in trust solely for the use of the professionals." Oct. 7, 2019 Hr'g Tr. 176:18-177:4.

Orient Craft) have sought to shoehorn their dissatisfaction with the Plan into issues not properly before the Court, with no conceivable result other than professionals for the Debtors and Creditors' Committee expending unnecessary resources in responding to such spurious allegations. *See, e.g.*, May 25, 2021 Hr'g Tr. 45:19-23 (COURT: "Well, I—I guess I understand you and your client's frustration, but I've never heard of a situation where it's a requirement for a debtor to carry a particular burden of proof on a particular motion that they explain all the other things that they're doing or not doing in a case.").

7. In addition to these numerous legal and procedural infirmities, the Objection is rife with factual misstatements. *First*, Orient Craft is incorrect that "professionals for the . . . Committee have received 100% of their fees." Obj. ¶ 7. As is clear from the Akin Interim Fee Application (and its prior fee applications), Akin Gump is ***not*** seeking current payment in respect of certain fees incurred post-confirmation in connection with prosecuting the Jointly Asserted Causes of Action. Indeed, those voluntary deferments represent almost 75% of the fees for which Akin Gump seeks allowance under the Akin Interim Fee Application. *See* Akin Interim Fee Application at ii-iii (stating that, of the aggregate $1,275,056.05 in fees for which Akin Gump seeks allowance, $931,297.00 was in respect of services performed in connection with the Jointly Asserted Causes of Action); *id.* at iv n.5 ("At this time, Akin Gump is not seeking payment of its fees incurred during the Compensation Period in connection with the prosecution of the Jointly Asserted Causes of Action[.]"). In total, as of the filing of the Akin Interim Fee Application, Akin Gump had agreed voluntarily to defer payment on over $6 million in fees incurred in connection with the Jointly Asserted Causes of Action.[5]

---

[5] As disclosed in the Akin Interim Fee Application (and in prior applications), Akin Gump has voluntarily deferred payment of all fees incurred in connection with the Jointly Asserted Causes of Action in excess of $10 million. *See* Akin Interim Fee Application, at iii n.4.

8. *Second*, Orient Craft misleadingly invokes the aggregate fees and expenses incurred by Akin Gump over the entire course of these chapter 11 cases to date, as if that figure alone indicates unreasonableness and is the reason why the Plan has not become effective. Obj. ¶¶ 5, 8. But, as set forth above, Akin Gump's fees and expenses are paid from either (i) a segregated account established pursuant to the Confirmation Order solely to fund the Jointly Asserted Causes of Action or (ii) the carve-out account (which, as set forth above, is not property of the Debtors' estates). Neither of these accounts comprises value that otherwise would be available for distribution to administrative claimants.

9. With this information—all of which was publicly available—in hand, Orient Craft's attempt to scapegoat the estate-retained professionals and impugn the efforts by the Debtors and Creditors' Committee to progress these chapter 11 cases to a conclusion strains credulity. Indeed, the efforts of these professionals, including (i) litigating the appeal of the superpriority claims asserted by ESL and other Second Lien Parties under Bankruptcy Code section 507(b) (which, if allowed, would prime Orient Craft and other administrative claimants), (ii) enforcing the Debtors' rights against Transform under the Asset Purchase Agreement and (iii) ensuring that the Jointly Asserted Causes of Action—the estates' most valuable remaining assets—are pursued in the most value-maximizing manner are in furtherance of, not contrary to, the interests of administrative claimants and all of the Debtors' other creditors.

10. *Finally*, Orient Craft blatantly misrepresents Akin Gump and FTI's efforts to evaluate the need for, and potentially secure, additional financing to continue to prosecute the Jointly Asserted Causes of Action. *See* Obj. ¶ 9. In conducting this work, Akin Gump and FTI are acting not on their own account, but on behalf of the estates and at the direction of the Litigation Designees, who are fiduciaries charged with the role of overseeing the prosecution of

the Jointly Asserted Causes of Action for the benefit of the Debtors' creditors. *See* Confirmation Order ¶¶ 18-20. The underlying premise in the Objection—that it is somehow improper to secure postpetition financing to fund the costs of administration—effectively would foreclose a debtor from ever securing additional credit to fund its bankruptcy case. Obj. ¶ 9 ("[T]he estates' professionals now seek to be paid for trying to find someone who will pay them more money!"); *but see* 11 U.S.C. § 364. That, of course, is not the law and would be contrary to the Debtors' and the Creditors' Committee's fiduciary duties to maximize the value of the estates. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352 (1985) ("The [debtor in possession] is accountable for all property . . . and has the duty to maximize the value of the estate") (citations and quotations omitted). As made clear in the Debtors' most recent status report, an additional $80.5 million in cash is needed to consummate the Plan. *Status Update Presentation to the Court*, dated July 27, 2021 [ECF No. 9680]. Accordingly, the fiduciaries for the Debtors' estates have an obligation to ensure that the estates' most valuable assets can be and are pursued in a manner that will maximize value for all creditors. This result cannot be achieved without sufficient funding, not just for professionals, but also for expert witnesses and other litigation costs.

11.    As with Orient Craft's apparent dissatisfaction with the Plan and the Confirmation Order, the Objection is not an appropriate vehicle to litigate the merits of speculative future events or disagreements regarding the business judgment of the Debtors and the Litigation Designees. Indeed, this Court has observed, "[i]t doesn't appear [] that the best way to reach a settlement with over 30 sophisticated defendants in a mega lawsuit, is to tell them we really need some money right now." May 25, 2021 Hr'g Tr. 51:17-20. Thus, with respect to the only issue even arguably before the Court regarding such efforts, the Akin Gump and FTI merely reiterate

8

what they stated in the Interim Applications: the limited fees incurred by Akin Gump and FTI in analyzing issues related to potential third-party financing and the amount of additional value necessary to prosecute the Jointly Asserted Causes of Action—as would be undertaken in connection with any effort by an estate retained professional to obtain credit under Bankruptcy Code section 364—are imminently reasonable and appropriate under the circumstances. *See* Akin Interim Fee Application ¶¶ 31-34; FTI Interim Fee Application ¶ 16.

## CONCLUSION

12.     For the reasons set forth herein, the Akin Gump and FTI submit that the Objection should be denied with respect to the Interim Applications.

## RESERVATION OF RIGHTS

13.     For the avoidance of doubt, Akin Gump and FTI expressly reserve all rights with respect to the Objection and any joinders thereto, including the right to supplement and join in any other filings, take discovery and present further arguments at any hearing on the Interim Applications. Further, nothing contained herein shall constitute a waiver of any of the rights or remedies of Akin Gump or FTI, each of which is expressly reserved.

| | |
|---|---|
| New York, New York<br>Dated:  September 23, 2021 | AKIN GUMP STRAUSS HAUER & FELD LLP<br><br>/s/ *Philip C. Dublin*<br>Ira S. Dizengoff<br>Philip C. Dublin<br>Sara L. Brauner<br>Zachary D. Lanier<br>One Bryant Park<br>New York, New York 10036<br>Telephone: (212) 872-1000<br>Facsimile: (212) 872-1002<br>E-mail: idizengoff@akingump.com<br>　　　　pdublin@akingump.com<br>　　　　sbrauner@akingump.com<br>　　　　zlanier@akingump.com<br><br>*Counsel to the Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al.* |