WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------x
                                              :
In re                                         :    Chapter 11
                                              :
SEARS HOLDINGS CORPORATION, et al.,           :    Case No. 18-23538 (RDD)
                                              :
        Debtors.¹                             :    (Jointly Administered)
                                              :
-----------------------------------------------------------x
```

## REPLY OF WEIL, GOTSHAL & MANGES LLP
## IN SUPPORT OF INTERIM FEE APPLICATION

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 130 West 42nd Street, 17th Floor, New York, NY 10036.

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Weil, Gotshal & Manges LLP ("Weil") respectfully represents:

1. The sum and substance of the objection lodged by Orient Craft Limited ("OCL") is that estate professionals should not be compensated until OCL's individual claims are satisfied. ECF 9019, 9810. OCL's logic is patently flawed.

2. The contrasts between OCL and estate professionals could not be starker. OCL is a prepetition creditor, claiming $272,761.72 in prepetition priority claims (claims 1135, 1142, and 7843). OCL conducted no postpetition business with the Debtors, took on no postpetition credit risk from the Debtors, and provided no postpetition benefit to the Debtors.[2] Estate professionals, on the other hand, by definition, exclusively provided postpetition services and benefit in these cases. Moreover, while essentially every other postpetition creditor stopped providing goods or services to the Debtors 4 months into these cases and 29 months ago (when the Debtors sold their businesses), estate professionals were asked to continue to provide services and benefits to wind down the Debtors' estates and satisfy the remaining creditors. Estate professionals did not agree to provide services postpetition, post-sale, or post-confirmation on a subordinated basis. Their Court-approved engagements and compensation procedures provided for payment out of secured creditors' collateral, ahead of secured and unsecured prepetition and administrative creditors. Those arrangements cannot be changed retroactively. OCL's objection, therefore, should be dismissed summarily.

---

[2] The same can be said of Weihai Lianqiao International Coop. Group Co., Ltd. ("Weihai"), which joined in OCL's objection. Weihai has a prepetition priority claim that the Debtors reduced by approximately 2/3 from the amount Weihai originally asserted.

3. OCL has not raised a single objection to any one of the thousands of time and expense entries in Weil's application for the period March through June 2021. None of OCL's statements is a valid basis for an objection to Weil's application.[3]

4. Contrary to OCL's myopic suggestion, these cases were not run for the benefit of estate professionals. The chapter 11 sales of the Debtors' going-concern businesses alone satisfied billions of dollars of prepetition secured debt, preserved thousands of jobs, leases and contracts, and satisfied in full claims of creditors whose leases and contracts were assumed. Throughout these cases, the Debtors paid in cash and in full approximately $5 billion in liabilities to third parties – excluding professionals. Additional material liabilities of the Debtors were assumed and satisfied by third parties. The overwhelmingly vast majority of all postpetition creditors were paid and satisfied in full in the ordinary course prior to confirmation of the chapter 11 plan in these cases. Following confirmation, the Debtors then satisfied in full more than 70% in number of the allowed administrative claims still outstanding. The Debtors also paid approximately 50% of the amount owed to the remaining allowed administrative claims. OCL is part of a small minority of creditors that voluntarily elected not to receive any payments pursuant to the Administrative Consent Program.

5. No creditor of the Debtors would recover any amount without estate professionals. Following the sale of the Debtors' businesses, the Debtors were left without any of their employees (previously buildings-full of finance, real estate, vendor-related, legal, and other

---

[3] As the Court has cautioned OCL before, 2019 confirmation hearing testimony is not relevant here, where the subject of the pending applications is services performed from March through June 2021. Nevertheless, the Debtors deny allegations of "false and misleading" testimony. *See* Obj. ¶3.

teams). The Debtors' professionals were required and tasked to conduct the winddown and administration of the Debtors' estates.[4]

6. Weil's services as lead counsel for the Debtors through these cases were necessary and produced benefits that outweighed the costs. Among other things, Weil's services stabilized, funded, and sold the Debtors' going concern businesses; Weil crafted and obtained confirmation of the chapter 11 plan and Administrative Consent Program; and, post-confirmation, Weil recovered millions through sales and litigation, and reduced liability for secured, administrative, and priority claims by billions, eliminating massive priming and dilution of creditors like OCL. Weil also obtained and then defended on appeals orders of this Court, including a decision that disallowed claims for hundreds of millions of dollars alleging a superpriority senior to administrative creditors like OCL.[5] Weil has not been responsible for or charged the estates for prosecution of avoidance actions or prosecution or funding of what has been referred to as the "ESL/D&O" litigations.

7. OCL is plainly wrong to claim the "primary reason" the plan is not effective is that estate professionals have been paid for their services. First: again, without the Debtors' professionals' services, there would have been no distributable assets and no ability to cull the valid creditors from the massive pool of claims that have been disallowed, reclassified, or reduced.

---

[4] The same would be true in a chapter 7, where a trustee and its retained financial and legal advisors would be compensated ahead of existing creditors. Of course, secured and superpriority creditors would also recover ahead of administrative creditors in a chapter 7 scenario.

[5] OCL attempts to sensationalize its objection by referencing amounts aggregated over three years and by ignoring the clear reductions of costs over time apparent in Weil's application: approximately 50% of all of Weil's fees were incurred in the first interim application period (through the sale of the Debtors' businesses); approximately 80% of all fees were incurred in the first year of the cases (through confirmation of the Debtors' plan). OCL also is wrong when it states that Weil received 100% of its allowed fees in these cases. Obj. ¶7. Weil's application shows clearly that Weil has not received approved payments of the 20% holdback allowed for the past 3 interim application periods (covering a 1-year period beginning June 2020). ECF 9745 at 5-6.

Second, and relatedly: nothing required estate professionals to work without compensation; thus, even in an alternate world where prepetition priority creditors like OCL were paid ahead of postpetition professional expenses, allowed professional expenses would remain administrative claims required to be paid in full prior to a plan effective date.  Third: OCL ignores the impact of various post-confirmation disputes with, among others, Transform, including the dispute over whether Transform was obligated to satisfy or reimburse the Debtors for $90 million of vendor priority claims.  Fourth: OCL ignores what the Court acknowledged at confirmation: the consequence of the fact that the "Debtors may require the proceeds of, among other things, the ESL Litigation to fund payments under the Plan" (Griffith Decl. at 62:13) is that "the more [the Debtors are] relying on preference recoveries and the ESL/D&O litigation, the more [creditors are] going to have to wait for a distribution." (Hr'g. Tr. Oct. 3, 2019 at 183.)  The Court is very well aware of the status of the ongoing litigations.

8. Finally, OCL's disparaging allegation that the fees have been approved without appropriate review is belied by the public comments made by the Court, the Office of the United States Trustee, and the fee examiner appointed in these cases.

9.     Weil has satisfied the standards for interim compensation under sections 330 and 331 of the Bankruptcy Code.  Accordingly, Weil's application should be granted.

Dated: September 23, 2021
      New York, New York

*/s/  Garrett A. Fail*
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Debtors
and Debtors in Possession*