TANNEN LAW GROUP, P.C.
77 W. Washington St, Suite 500
Chicago, IL 60602
Telephone: (312) 641-6650
Michael Murphy Tannen, Esq.
*Attorneys for Diana Arney*

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | ) |
| | ) Case No. 18-23538 |
| Debtors. | ) (RDD) |
| | ) (Jointly Administered) |

**FUTURE TORT CLAIMANT DIANA ARNEY'S STATUS REPORT
REGARDING OTHER FEDERAL LAWSUITS INVOLVING KENMORE
DRYER FIRES AND REQUEST FOR JUDICIAL NOTICE OF SAME**

Future Tort Claimant Diana Arney ("Arney"), through her attorney Michael Murphy Tannen of Tannen Law Group, P.C., having been admitted to this Court *pro hac vice*, hereby tenders her status report regarding other federal lawsuits involving Kenmore dryer fires and request for judicial notice of same. Arney states as follows:

**Introduction**

1. Arney filed her response Transform's motion to enforce the Rule 363 sales order and for other relief on September 13, 2021. (Doc No. 9807).

2. New Sears filed its reply on September 22, 2021. (Doc. No. 9828.)

3. Hearing on the motion to enforce is set for September 27.

4. This status report is supported by the affidavit of Arney's bankruptcy counsel, Michael Murphy Tannen, attached hereto as **Exhibit 1**.

5. New Sears's motion to enforce seeks to extinguish Arney's state court cause of action against New Sears for successor liability. New Sears seeks to enjoin Arney from proceeding with discovery about successor liability which the state court has already authorized.

6. Resolution of the motion to enforce is in part dependent on what Old Sears and New Sears knew or should have known about Arney's future tort claim and when they knew it.

7. On pages 5-6, of its reply, New Sears unequivocally writes the following:

> "At the time of the filing for voluntary reorganization under Chapter 11 of the Bankruptcy Code [October 25, 2018] and until the entry of the Sales Order [February 8, 2019], <u>the Debtors had no reason to believe she [Arney] was a creditor</u>." [Emphasis added.]

8. Because New Sears asserts that that Arney was completely unknown, New Sears goes on to argue that publication notice was sufficient notice both of the bankruptcy and the of the hearing on the motion to approve the asset sale from Old Sears to New Sears.

9. Since being retained and particularly since the filing of Arney's response on September 13, Arney's bankruptcy counsel has been investigating whether Sears and/or Electrolux were involved in litigation relating to dryer fires caused by the accumulation of lint. (**Exhibit 1** at ¶ 7). Such suits would arguably constitute notice to Old Sears and New Sears of the types of tort claims which might arise post-petition and post-sale confirmation.

10. As set forth in the affidavit, Arney has recently obtained data about other dryer fire litigation which, like Arney's state court suit, involve allegations that Sear's Kenmore dryers were defective because lint accumulated in the nooks and crannies behind the drum and near the dryer's heat source. These federal court lawsuits include *MemberSelect Ins. Co. v. Electrolux Home Prod., Inc.*, No. 13 CV 4097, 2015 WL 6083201 (N.D. Ill. Oct. 15, 2015) and *Roberts v. Electrolux Home Prod., Inc.*, No. CV13-2339-CAS VBKX, 2014 WL 4568632 (C.D. Cal. Sept. 11, 2014).

11. This Court can take judicial notice of pleadings, motions, and orders in other lawsuits. *In re Lyondell Chem. Co.*, 505 B.R. 409, 418 (S.D.N.Y. 2014)(District Court held the Bankruptcy Court did not abuse its discretion in taking judicial notice of the existence of other litigation involving the parties).

12. What follows is a short status report of these two lawsuits. Arney is still investigating whether there are more class action suits with similar allegations.

## Litigation Status Report

### *MemberSelect Insurance Company v. Electrolux Home Products, Inc.*

13. *MemberSelect* was a subrogation action filed in federal court in Illinois by the insurer of a homeowner whose home was gutted by a Kenmore dryer fire. The named defendants were Sears and Electrolux. Sears sued Electrolux for indemnification and for breach of contract. (See cross-claim, attached as **Exhibit 2.**) Sears attached to its cross-claim two contracts between Sears and Electrolux, so-called Uniform Terms and Conditions and a Supply Agreement, collectively attached as **Exhibit 3.**

14. In a decision awarding sanctions against Sears to MemberSelect, the federal court wrote as follows:

> The UTC Agreement gives Sears the Right to receive from Electrolux information about the methods of manufacturing products, as well the right to inspect any production facility and the merchandise being manufactured (UTC Agreement, ¶ 6). The Supply Agreement gives Sears the right to require that Electrolux manufacture products for Sears according to specifications set forth in that agreement (Supply Agreement, ¶ 12.A); to approve any changes to products specifications (*Id.* at ¶ 12.E); and to require that testing of the products be done pursuant to a protocol approved in advance by Sears (*Id.* at ¶ 12.A). Both agreements provide that Electrolux would provide training and other information necessary for Sears to install and service the products manufactured for it by Electrolux (UTC ¶ 7.2; Supply Agreement ¶ 14.D).

(**Exhibit 4** at p. 8) Further, the federal court wrote, "These contracts. . . can be read as indicating that Sears was more than simply a passive acquirer of the [Kenmore] dryer manufactured by Electrolux, but instead was intimately involved in and knowledgeable of the product design."[1] *Id.*

15. Sears was especially vigilant about protecting its iconic Kenmore trade name. Kenmore's name was to be splashed all over the dryer and product literature (**Exhibit 3**, Supply Agreement, ¶ 2A). Electrolux was to adhere to the "mores of Kenmore," meaning that the dryers manufactured by Electrolux for Sears were a better value than other dryers made by Electrolux. (*Id.* at ¶ 2B). Electrolux also had to recognize "the importance of and the benefit derived from advertising, marketing, and promoting the Kenmore brand." (*Id.* at ¶ 6J, Kenmore Brand Building, capitalization in original).

16. These agreements--and Arney has not seen the exhibits attached to the agreements or Sears's Vendors Guide referred therein—essentially require Electrolux to jump high when Sears so commands.

### *Shawn Roberts, et al., v. Electrolux Home Products, Inc.*

17. In 2014, a class action was filed in the United States District Court for the Central District of California. The case was captioned as *Roberts, et al v. Electrolux Home Products, Inc.*, and is called "*Roberts.*" The allegations of the complaint in *Roberts* echo the allegations in Arney's state law case in Illinois. (See second amended complaint in *Roberts*, **Exhibit 5**.) The allegations centered around the defective design of the dryers, accumulated lint, and how these design defects could cause dryer fires. Arney has similarly alleged that the Kenmore dryer was defective because a combustible plastic duct and blower housing was placed near the dryer's heat source. The *Roberts*

---

[1] The law firm which represented Old Sears in *MemberSelect* also represents New Sears in Arney's state court case, and in that role, has moved to dismiss Arney's complaint and has opposed her right to get successor liability discovery.

complaint contained detailed allegations that Electrolux knew of these design defects for years and failed to adequately instruct customers about how to maintain their dryers.

18. A nationwide class was certified. The class consisted of people who bought or owned clothes dryers manufactured by Electrolux between 2002 and 2011 under the following brands: Frigidaire, White Westinghouse, Kelvinator, Gibson, Tappan, Crosley, and Kenmore.

19. After much written and oral discovery, settlement was reached and approved in 2014. The order approving the settlement is attached as **Exhibit 6**; and the settlement agreement is attached as **Exhibit 7**.[2] The settlement order required various modes of notice to class members, including notice by mail to certain customers whose addresses were known to Electrolux.

20. The settlement terms also included the following:

- Owners of dryers were to receive free-standing enhanced warnings about the dangers of lint, known as "Customer Instruct Safety Notices."

- Owners of dryers were entitled to free cleaning of their dryers, called "Safety Cleaning Service."

- A subclass was formed of customers who might experience dryer fires in the future, after settlement in 2014 until December 31, 2022. These subclass members were entitled to $1,300 for repair and replacement of their dryers and for property damage.

21. Arney's preliminary investigation, still ongoing, reveals that Arney did not receive actual notice of the settlement of the *Roberts* class action. She did not receive the updated enhanced Safety Notice, either. She was not advised that her dryer could be cleaned free of charge. Similarly, in these bankruptcy proceedings, Arney has not received actual notice of anything other than the motion to enforce. Arney has already established, and New Sears has admitted, that Arney was not listed as a creditor in this bankruptcy. Nor was she given actual notice of the bankruptcy, the

---

[2] Personal injury claims resulting from dryer fires were carved out of the *Roberts* nationwide settlement, However, Arney posits that that to Sears and Electrolux, it is just as foreseeable that a dryer fire would cause personal injury as it would property damage.

5

deadline for filing a proof of claims for an injury she had not yet suffered, or of the hearing to approve the asset sale which extinguished a state law claim which had not yet accrued for an injury she had not yet suffered.

22. Numerous questions abound about the *Roberts* class action, including:

- Did Sears know about a nationwide class action alleging design defects in their iconic Kenmore dryers which could cause dryer fires?

- Was Sears involved in the settlement of this nationwide class action? Was Sears involved in the decision as to whether Sears's customers would receive actual mail notice of the settlement or would notifying Sears's customers of a dangerous design defect in its Kenmore dryers hurt "Kenmore Brand Building?" Did Sears refuse to share its customer information with Electrolux or the claims administrator who was to send out actual notice of the class action settlement?

- Did Sears or Electrolux, on behalf of Sears, tender the enhanced Safety Notice to its customers?

- Since Sears owned and controlled repair services under its agreement with Electrolux, did Sears receive notice of Kenmore dryer fires <u>after</u> Roberts was settled in 2014 and <u>before</u> Old Sears filed for bankruptcy in late 2018 and <u>before</u> the asset sale to New Sears was approved in early 2019?

- Another component of the class settlement was that customers who felt unsafe about Electrolux ball hitch dryers could get rebates to buy new dryers.with the Frigidaire or Electrolux brand names. Kenmore dryers were not included. Why? Did Sears know about this rebate program? Did Sears knowingly decide not to participate?

23. This Court can take judicial notice of these two lawsuits. At best, the assertion in Transform's reply brief, filed two days ago, that "the Debtors had no reason to believe she [Arney] was a creditor" is a conclusory, unsupported declaration. At worst, the statement is untrue. In either event, Transform has not borne its burden to obtain an injunction against Arney to litigate her state court case. Thus, Transform's motion to enforce should be denied. Alternatively, before Arney's right to conduct discovery and plead successor liability counts against Transform in her state court case is sought to be extinguished, the record needs to be more fully developed on what Old Sears

knew and when they knew it. This is so, even if the present hearing or ruling on the motion to enforce is continued beyond September 27.[3]

                                          Respectfully Submitted,
                                          TANNEN LAW GROUP, P.C.

                                          /s/ *Michael Murphy Tannen*

                                          Attorneys for Future Tort Claimant Diana M. Arney
                                          (Admitted *Pro Hac Vice*)

Michael Murphy Tannen
*Mtannen@tannenlaw.com*
Timothy R. Meloy
*tmeloy@tannenlaw.com*
TANNEN LAW GROUP, P.C.
77 W. Washington St., Suite 500
Chicago, IL 60602
Telephone: (312) 641-6650

---

[3] Arney's counsel suggested that the hearing proceed in October given the issues implicated in the case. Citing local practice, counsel for New Sears refused this request.