TANNEN LAW GROUP, P.C.
77 W. Washington St, Suite 500
Chicago, IL 60602
Telephone: (312) 641-6650
Michael Murphy Tannen, Esq.
*Attorneys for Diana Arney*

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) ) | |
| | ) | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al*., | ) ) | |
| | ) | Case No. 18-23538 |
| Debtors. | ) | (RDD) |
| | ) | (Jointly Administered) |
| | ) ) | |

**FUTURE TORT CLAIMANT DIANA ARNEY'S MOTION FOR COURT
TO TAKE JUDICIAL NOTICE OF LITIGATION INVOLVING
ELECTROLUX-MANUFACTURED DRYERS WITH BALL-HITCH DESIGN**

Future Tort Claimant Diana Arney ("Arney"), through her attorney Michael Murphy Tannen of Tannen Law Group, P.C., having been admitted to this Court *pro hac vice*, hereby tenders her motion for this Court to take judicial notice of litigation involving Electrolux-manufactured dryers with ball-hitch design. Arney states as follows:

**Introduction**

1. This is probably the most prominent and self-assured line in New Sears's reply in support of its motion to enforce the sales order against Arney to prevent her from pleading and proving a claim for successor liability in her state court case:

> "At the time of the filing for voluntary reorganization under Chapter 11 of the Bankruptcy Code [October 25, 2018] and until the entry of the Sales Order [February 8, 2019], the Debtors had no reason to believe she [Arney] was a creditor." [Emphasis added.] (Doc. No. 9828)

Prominent and self-assured indeed, but now, this Court has allowed Arney to discover whether this statement is debunkable.

2. Through this motion, Arney requests that this Court take judicial notice of dryer fire litigation involving dryers manufactured by Electrolux with the ball hitch design, including of course, those which bore the iconic Kenmore brand and were sold by Old Sears. In her Status Report (Doc No. 9845), Arney brought to the Court's attention two cases, *MemberSelect Insurance Co. v. Sears Holding Co. et al.*, 2015 WL 6083201 (N.D. Ill. October 15, 2015) ("*MemberSelect*,") a subrogation suit filed in federal court in Illinois, and *Roberts v. Electrolux*, 2013 WL 7753579 (C.D. Cal. March 4, 2013) a nationwide class action filed in federal court in California included Kenmore dryers. *Roberts* settled in 2015, with future relief awarded to class members through 2022.

3. Arney has just recently learned of yet other dryer fire litigation, including an effort to centralize 35 federal dryer fire suits from 21 districts involving 353 separate subrogors in a proceeding captioned as *In Re Electrolux Dryer Products Liability Litigation*, MDL No. 2477 ("*Electrolux MDL Suit*"). All 35 of the federal lawsuits involved allegations that Electrolux-manufactured ball-hitch dryers which were unreasonably dangerous. As will be discussed below, Old Sears opposed MDL centralization. In fact, Old Sears formally adopted Electrolux's arguments that all 35 cases should stay where they were and be litigated separately.

4. New Sears's motion to enforce seeks to extinguish Arney's state court cause of action against New Sears for successor liability. New Sears seeks to enjoin Arney from proceeding with discovery about successor liability which the state court has already authorized.

5. The following facts are undisputed. The Kenmore dryer at issue was manufactured by Electrolux in 2008 and sold by Old Sears in 2008. Old Sears filed for bankruptcy in October 2018. The asset sale from Old Sears to New Sears was approved in February 2019. Arney's dryer started on fire and she was injured in January 2020; she filed suit later in 2020.

6. This fact is also undisputed: Arney did not receive actual notice of Old Sears's filing for bankruptcy; the deadline for filing a proof of claim; or the motion to approve the asset sale from Old Sears to New Sears. Old Sears and New Sears both contend that Arney was unknown and entitled to publication notice that her tort rights would be extinguished by the asset sale.

7. Turning to the recent procedural history of this dispute, Arney filed her response Transform's motion to enforce the Rule 363 sales order and for other relief on September 13, 2021, (Doc No. 9807).

8. New Sears filed its reply on September 22, 2021. (Doc. No. 9828) This is the brief where New Sears declared that Old Sears did not know, nor should it have reasonably known of Arney's claim when Old Sears sought bankruptcy protection and a quick sale to New Sears.

9. On September 24, 2021, Arney filed her status report wherein she advised this Court of *MemberSelect* and *Roberts*, (Doc. No. 9845).

10. Hearing on New Sears's motion to enforce the Rule 363 sale order against Arney proceeded on September 27, 2021.

11. At the hearing on September 27, this Court often cited to the facts, analysis, and holdings in the Second Circuit's opinion in 2016, *In Re Motors Liquidation Company*, 829 F.3d 135. The Second Circuit addressed the *quid pro quo* inherent in Rule 363 sales:

> If a debtor reveals in bankruptcy the claims against it and provides claimants with due process of law, then the Code affords vast protections. Both Section 1141(c) and Sections 363(f) permit "free and clear" provisions that act as liability shield. These provisions provide enormous incentives to a struggling company to be forthright. But if a debtor does not reveal claims that it is aware of, then bankruptcy cannot protect it. Courts must "limit the opportunity for a completely unencumbered beginning to the 'honest but unfortunate debtor.'" *Grogan v. Garner*, 498 U.S. 279, 286-91 (1991), *quoting Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934). *Motors Liquidation*, 829 F.3d at 160.

3

12. Adequacy of notice turns on what the debtor knew, or, with reasonable diligence should have known. If the debtor knew or reasonably should have known about the claims, then due process entitles potential claimants to actual notice of the bankruptcy proceeding, but if the claims were unknown, publication notice suffices. *Motors Liquidation*, 829 F.3d at 159.

13. This Court has allowed Arney to conduct discovery about whether Old Sears knew or reasonably should have known about dryer fire litigation and dryer fires before Old Sears filed for bankruptcy in October 2018 and before Old Sears sold its assets to New Sears less than four months later in February 2019.

14. As set forth above, Arney has recently obtained data about other dryer fire litigation which, like Arney's state court suit, involve allegations that Sear's Kenmore dryers were defective because lint accumulated in the nooks and crannies behind the drum and near the dryer's heat source. These suits are addressed below.[1]

## This Court Can Take Judicial Notice of Other Lawsuits
## Involving Fires and Ball-Hitch Dryers

15. Under Federal Rule of Evidence 201, "a court may take judicial notice, whether requested or not" of a fact "not subject to reasonable dispute in that it is (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b)-(c); *see also Black's Law Dictionary* 923 (9th ed. 2009) (defining judicial notice as a "court's acceptance, for purposes of convenience and without requiring a party's proof, of a well-known and indisputable fact"). The "traditional textbook treatment" of Rule 201 has included two categories for judicial notice: "matters of common knowledge" and "facts capable of verification." Fed. R. Evid. 201,

---

[1] Arney's investigation of the existence of other suits is ongoing as this motion goes to press.

4

*Advisory Committee Notes, Note to Subdivision (b).* A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

16. Judicial notice can encompass the status of other lawsuits and the substance of the papers filed in those actions. *Schenk v. Citibank/Citigroup/Citicorp*, 2010 WL 5094360, at *2 (S.D.N.Y. Dec. 9, 2010); *In re Lyondell Chem. Co.*, 505 B.R. 409, 418 (S.D.N.Y. 2014) (district court held the bankruptcy court did not abuse its discretion in taking judicial notice of the existence of other litigation involving the parties); *Anderson v. Rochester-Genesee Regional Transp. Corp.*, 337 F.3d 201, 205 (2d Cir. 2003) (taking judicial notice of a district court opinion that was not submitted in the record on appeal); *Kramer v. Time-Warner, Inc.*, 937 F.2d 767 at 774 (2d Cir. 1991) (taking judicial notice of a complaint filed in another action). Arney recognizes that when courts take judicial notice of documents filed in other lawsuits, it is not for the truth of the matter asserted in the other litigation, but rather to establish the fact of such litigation and related filings. *Id.* at 774.

17. Based on the foregoing, Arney has supplied the necessary information so this Court can take Judicial notice of the following matters.

### *MemberSelect Insurance Company v. Electrolux Home Products, Inc.*

18. *MemberSelect* was a subrogation action filed in federal court in Illinois by the insurer of a homeowner whose home was gutted by a Kenmore dryer fire resulting in more than $500,000 in property damage. (The ECF electronic docket for *MemberSelect* is attached as **Exhibit A**.)

19. Arney requests that this Court take judicial notice of the following in *MemberSelect*. These documents have been filed with a court. These documents are readily accessible in the court's public records. They are not subject to reasonable dispute and are capable of accurate and ready determination:

- The named defendants were Old Sears and Electrolux.

- Old Sears was represented by O'Hagan LLC (O'Hagan"). O'Hagan currently represents New Sears in Arney's state court suit. New Sears, through O'Hagan has moved to dismiss Arney's state court suit.

- Sears sued Electrolux for indemnification and for breach of contract. (See cross-claim, attached as **Exhibit B**.)

- Sears attached to its cross-claim two contracts between Sears and Electrolux, so-called Uniform Terms and Conditions and a Supply Agreement, collectively attached as **Exhibit C.**

- Simultaneously with its filing of its cross-claim against Electrolux, Old Sears filed a motion for summary judgment supported by the two-page affidavit of an Old Sears laundry engineer who stated that Old Sears had nothing to do with the design of or warnings for Kenmore ball hitch dryers. The affiant also opined that Sears had no knowledge of any dryer defects. (The affidavit is attached as **Exhibit D**.)

- Old Sears was sanctioned for withholding the UTC and the Supply Agreement for months into the litigation and then moving for summary judgment without producing these key contracts. (See Report and Recommendation and sanctions order, attached as **Exhibit E**.) In the magistrate judge's report and recommendations as to sanctions against Sears, which the court adopted, Judge Schenkier wrote as follows:

    > The UTC Agreement gives Sears the Right to receive from Electrolux information about the methods of manufacturing products, as well the right to inspect any production facility and the merchandise being manufactured (UTC Agreement, ¶ 6). The Supply Agreement gives Sears the right to require that Electrolux manufacture products for Sears according to specifications set forth in that agreement (Supply Agreement, ¶ 12.A); to approve any changes to products specifications (*Id.* at ¶ 12.E); and to require that testing of the products be done pursuant to a protocol approved in advance by Sears (*Id.* at ¶ 12.A). Both agreements provide that Electrolux would provide training and other information necessary for Sears to install and service the products manufactured for it by Electrolux (UTC ¶ 7.2; Supply Agreement ¶ 14.D). (**Exhibit E** at p. 8)

- Further, the federal court in *MemberSelect* wrote, "These contracts. . . can be read as indicating that Sears was more than simply a passive acquirer of the [Kenmore] dryer manufactured by Electrolux, but instead was intimately involved in and knowledgeable of the product design." *Id.* at 8-9.

- The Supply Agreement also contains provisions about the protection of Old Sears's Kenmore trade name. Kenmore's name was to be placed all over the dryer and product literature (**Exhibit C**, Supply Agreement, ¶ 2A). Electrolux was required to adhere to the "mores of Kenmore," meaning that the dryers manufactured by Electrolux for Sears were a better value than other dryers made by Electrolux. (*Id*. at ¶ 2B). Electrolux also had to recognize "the importance of and the benefit derived

6

from advertising, marketing, and promoting the Kenmore brand." *Id.* at ¶ 6J, Kenmore Brand Building (capitalization in original).

- The Supply Agreement further obligated Electrolux to establish and staff a Customer Call Center to field calls from customers of Old Sears. The call records and warranty cards remained property of Sears. *Id.* at ¶ 14B.

- On May 21, 2015, the parties filed their proposed Rule 16 pretrial order, attached hereto as **Exhibit F**. Electrolux and Old Sears interposed common admitted and disputed facts; similar objections to exhibits; and common objections to MemberSelect's experts. (**Exhibit F**, see stipulated facts at p. 2-4, objections to witnesses at p. 5-18, motions in limine to bar plaintiff's warning expert at p. 16-17; and Old Sears's and Electrolux's objections to exhibits, Schedule C, *passim*.)

### *Shawn Roberts, et al., v. Electrolux Home Products, Inc.*

20.     In 2014, a class action was filed in the United States District Court for the Central District of California. The case was captioned as *Roberts, et al v. Electrolux Home Products, Inc.*, and is called "*Roberts.*" The ECF docket for Roberts is attached as **Exhibit G**.

21.     Arney requests that this Court take judicial notice of the following in *Roberts*. These documents have been filed with a court. These documents are readily accessible in the court's public records. They are not subject to reasonable dispute and are capable of accurate and ready determination:

- The allegations of the class action complaint in *Roberts* centered around the defective design of the dryers, accumulated lint, and how these design defects could cause dryer fires. (Arney has similarly alleged that the Kenmore dryer was defective *because* a combustible plastic duct and blower housing was placed near the dryer's heat source.) The *Roberts* complaint contained detailed allegations that Electrolux knew of these design defects for years and failed to adequately instruct customers about how to maintain their dryers.

- *Roberts* was settled in 2014. The order approving the settlement is attached as **Exhibit H**; and the settlement agreement is attached as **Exhibit I**.

- As part of the settlement, a nation-wide class and several subclasses were certified. The class consisted of people who bought or owned clothes dryers manufactured by Electrolux between 2002 and 2011 under the following brands: Frigidaire, White

7

Westinghouse, Kelvinator, Gibson, Tappan, Crosley, and <u>Kenmore</u>[2] (emphasis added). (**Exhibit I** at p. 14-15) A subclass included those who had already experienced dryer fires. *Id.* at 15

- Another subclass was formed of customers who might experience dryer fires <u>in the future</u>, after settlement in 2014 until December 31, 2022[3] (emphasis added). *Id.* These subclass members were entitled to $1,300 for repair and replacement of their dryers and for property damage. *Id.*

- Class plaintiffs recommended, and the court approved, a settlement and future claims representative to tender notice and handle past and future claims. (See **Exhibit H**, pages 3, 7, 11, 14.)

- The settlement order required various modes of notice to class members, including notice by mail to certain customers whose addresses were known to Electrolux.[4]  *Id.* at 4-5.
- Settlement Class Members were to receive free-standing enhanced warnings about the dangers of lint, known as "Customer Instruct Safety Notices." *Id.* at 7.

- Settlement Class Members were entitled to free cleaning of their dryers, called "Safety Cleaning Service." *Id.* at 10.

- Settlement Class Members could get a rebate in the future to buy a Frigidaire or Electrolux branded dryer. *Id.* at 12.

### *In Re Electrolux Dryer Federal Multidistrict Litigation*

23. In July 2013, pursuant to 28 U.S.C. Section 1407, American Family Mutual Insurance Company ("American Family") filed a motion to centralize in the federal court for the Northern District of Illinois 35 separate lawsuits from 21 different federal districts in a matter captioned as *In Re Electrolux Dryer Products Liability Litigation*, MDL No. 2477  ("*Electrolux MDL Suit*").  The motion to transfer is attached as **Exhibit J** and the ECF docket from the *Electrolux MDL Suit* is attached as **Exhibit K**.  All 35 of the federal lawsuits involved allegations that Electrolux manufactured ball-hitch dryers which were unreasonably dangerous.  **Exhibit J**.

---

[2] Arney's Kenmore dryer was manufactured in 2008.
[3] Arney's dryer fire occurred in January 2020.
[4] Arney's counsel has confirmed that Arney did not receive actual notice via mail of the *Roberts* suit or of the class-wide settlement.

8

24. Arney requests that this Court take judicial notice of the following. These documents have been filed with a court. These documents are readily accessible in the court's public records. They are not subject to reasonable dispute and are capable of accurate and ready determination:

- The ECF service list for American Family's motion to transfer and all other pleadings was thirty pages long and included dozens of court clerks and hundreds of counsel. (*Id.* at 92-121).

- Of the 35 lawsuits, Old Sears was a named defendant in three of them: *MemberSelect*, *TOPA Insurance Company v. Electrolux, et al.*("*TOPA*")(Southern District of California); and *Homesite Insurance v. Electrolux, et al.* ("*Homesite*")(Northern District of Indiana).

- The 35 lawsuits involved over 250 dryer fires. *Id.* at 2. See multidistrict complaints attached collectively as **Exhibit L**.

- The same law firms jointly represented Old Sears and Electrolux in *TOPA* and *Homesite*. (The ECF dockets for TOPA and Homesite are attached respectively as **Exhibits M** and **N**.)

- *Roberts*, the nationwide class action discussed above, was one of the lawsuits which were sought to be centralized. (**Exhibit J** at 27.)

- Most of the suits were subrogation actions brought by insurers. State Farm had filed such a suit in the Northern District of Illinois, attaching to their complaint more than 200 dryer fire claims which in total amounted to more than $12 million in damages. (See amended complaint in *State Farm Fire and Casualty Company v. Electrolux Home Products, Inc.*, **Exhibit O**.)

- The filing of the Section 1407 motion to transfer in the Electrolux MDL Suit was spread of record in all of the 35 affected lawsuits, including those in which Sears was named as a defendant. (See *MemberSelect* ECF docket, **Exhibit A** at no. 23; *Homesite* ECF docket, **Exhibit M** at no. 66).

- Notice of the motion to transfer in the *Electrolux MDL Suit* was spread of record in *MemberSelect* on July 23, 2013. *Id.*

- On August 8, 2013, in the Electrolux MDL Suit, Electrolux filed its response in opposition to the Section 1407 motion to transfer. (See **Exhibit P**, no. 83-1.)

- Shortly thereafter, on August 19, 2013, Old Sears filed its Statement of Position in the Electrolux MDL Suit, attached as **Exhibit Q**. Old Sears adopted Electrolux's opposition to MDL centralization. Id. Notice of Old Sears's Statement of Position was sent to all of the court clerks and lawyers on the ECF service list. Id.

- The attorney who filed and served Old Sears's Statement of Position was affiliated with O'Hagan LLC ("O'Hagan"). O'Hagan represented Old Sears in *MemberSelect*. O'Hagan currently represents <u>New Sears</u> in Arney's state court suit.

- On October 16, 2013, the MDL Panel denied the Section 1407 motion to transfer. The Panel's decision was (i) included in the case's ECF docket; (ii) spread of record in the 35 cases; and (iii) officially published at 978 F.Supp.2d 1376. (The order denying transfer and the Federal Supplement opinion are attached collectively as **Exhibit R**.)

- In the order denying transfer, Old Sears was denominated by the MDL Panel as a "Defendant" opposing transfer. *Id.*, at footnote 3.

### Judicial Notice of Lawsuits Involving Electrolux-Manufactured Dryers with the Ball-Hitch Design Is Appropriate and Convenient

26.     Judicial notice of other dryer fire litigation involving Electrolux-manufactured dryers with a ball hitch design is particularly appropriate and convenient in this case. For one thing, Old Sears asserts that it has no one to attest to the completeness of Old Sears's responses to production requests and no one to swear to the veracity of any interrogatory answers. (See email correspondence and emails attached as **Exhibit S**.) (Arney disputes this point as a matter of fact and law.) For another thing, Arney is striving to not burden Old Sears's estate with onerous administrative charges. Old Sears should not object that this Court take judicial notice of the existence of lawsuits and pleadings, motions, and orders in those lawsuits. That would be a total waste of Old Sears's money. Lastly, New Sears has unequivocally declared that Old Sears has no reason to know that Arney was a creditor. Judicial notice of the existence of all these dryer fire cases casts doubt on that declaration.

27.     Moreover, at the hearing on New Sears's motion to enforce on September 27, counsel for New Sears pronounced that the *MemberSelect* was a "one-off" subrogation case and that Old Sears was not a party to the *Roberts* nationwide class action, so neither case would impute actual or constructive knowledge of dryer defects to Old Sears.

28.    Not so. Old Sears and New Sears cannot ignore the existence of the numerous ECF dockets, complaints, motions, briefs, and orders in *MemberSelect*, *Roberts*, the Electrolux MDL Suit, or the nearly three dozen suits itemized in that MDL proceeding and filed all over the country alleging that dryers manufactured by Electrolux with the ball hitch design were unreasonably dangerous. All of this litigation was filed before Old Sears filed for bankruptcy in October 2018 and before Old Sears sold its assets—including the iconic Kenmore line of appliances—to New Sears in February 2019. And even if Old Sears and New Sears pretend that all this dryer fire litigation never existed or does not matter, Arney respectfully submits that she has provided this Court with the necessary information so that this Court must take judicial notice of same.

Wherefore, Future Tort Claimant Diane Arney respectfully requests that this Court take judicial notice, pursuant to Federal Rule of Evidence 201 of other dryer fire litigation involving dryers manufactured by Electrolux with the ball hitch design. Specifically, Arney requests that this Court take judicial notice of the dryer fire cases cited herein, including the ECF dockets, the pleadings, motions, and orders from same.

> Respectfully Submitted,
> TANNEN LAW GROUP, P.C.
>
> /s/ *Michael Murphy Tannen*
>
> Attorneys for Future Tort Claimant Diana M. Arney
> (Admitted *Pro Hac Vice*)

Michael Murphy Tannen
*Mtannen@tannenlaw.com*
Timothy R. Meloy
*tmeloy@tannenlaw.com*
TANNEN LAW GROUP, P.C.
77 W. Washington St., Suite 500
Chicago, IL 60602
Telephone: (312) 641-6650