# EXHIBIT H

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

SHAWN ROBERTS, et al.,

                 Plaintiffs,

      vs.

ELECTROLUX HOME PRODUCTS, INC.,

             Defendants.

---

This Document Relates To: All Actions.

Master File No.
SACV12-1644-CAS(VBKx)
c/w: CV13-2339-CAS(VBKx)

CLASS ACTION

**ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT**

The Honorable Christina A. Snyder

       Plaintiffs Shannon Carty, Matthew Downs, Stephen Gavic, Michelle McGowan and Tammie Humphrey, on behalf of themselves and a nationwide Settlement Class ("Plaintiffs"), and Defendant Electrolux Home Products, Inc. ("Electrolux") (collectively, "the Parties") have entered into a Settlement Agreement ("Settlement Agreement" or "Agreement"). The Parties previously

-1-

submitted the Settlement Agreement to this Court for preliminary approval of the class action settlement provided for therein (the "Settlement"). On May 5, 2014, this Court entered a Class Settlement Preliminary Approval Order ("Preliminary Approval Order"), which included provisional certification of a nationwide class ("Settlement Class"). Now, the matter having come before the Court for hearing on August 18, 2014, having considered the Parties' joint motion for entry of an order granting final approval of the proposed Settlement and for entry of final judgment in this matter; the Parties' memoranda in support; Class Counsel's application for attorneys' fees, expenses, and incentive awards; briefing submitted to the Court on class members' objections; and arguments presented to the Court at the final approval hearing, the Court FINDS, CONCLUDES, ORDERS, AND ADJUDGES as follows:

## I.      JURISDICTION OF THE COURT

The Parties and the members of the nationwide Settlement Class ("Settlement Class Members") have submitted to the jurisdiction of this Court for purposes of the Settlement; the Court has personal jurisdiction over the Parties and the Settlement Class Members; the Court has subject matter jurisdiction to release all claims and causes of action released in the Settlement; and the Court has subject matter jurisdiction to approve the Settlement.

## II.     CLASS CERTIFICATION

In the Preliminary Approval Order, this Court granted conditional class certification to the above-referenced Settlement Class, as well as to the Past Dryer Fire Subclass and Future Dryer Fire Subclass. The Court ordered that notice of the Settlement be directed by the claims administrator to the Settlement Class and Subclasses, defined as follows:

a. <u>Settlement Class.</u> All residents of the United States who purchased,

[PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT
MASTER FILE NO. 8:12-cv-01644-CAS-VBK

primarily for personal or household purposes, a Dryer. A "Dryer" is defined in the Settlement Agreement as a Frigidaire-, White Westinghouse-, Kelvinator-, Gibson-, Tappan-, Crosley-, or Kenmore- brand ball-hitch freestanding clothing dryer manufactured by Electrolux between January 1, 2002, and December 31, 2011. Excluded from the Settlement Class are (a) officers, directors, and employees of Electrolux and its parents or subsidiaries; (b) insurers of Settlement Class Members; (c) subrogees or entities claiming to be subrogated to the rights of Dryer purchasers, owners, or a Settlement Class Members; and (d) issuers or providers of extended Dryer warranties or service contracts.

b. Past Dryer Fire Subclass. All Settlement Class Members who experienced a Past Dryer Fire Event, defined as a fire in the drum, behind the drum, in the lint screen or adjacent air duct and blower, or base of the Dryer that occurred within 10 years after the purchase date of the Dryer that caused the Settlement Class Member to incur some unreimbursed out-of-pocket expense, including, but not limited to, property damage, insurance deductible, or repair or replacement of their Dryer.

c. Future Dryer Fire Subclass. All Settlement Class Members who experience a Future Dryer Fire Event, defined as after the Final Approval Order has been entered, but within the first 10 years after purchase of the Dryer, a fire occuring in the drum, behind the drum, in the lint screen or adjacent air duct and blower, or base of the Dryer that causes the Settlement Class Member to incur some unreimbursed out-of-pocket expense, including, but not limited to, property

3

damage, insurance deductible, or repair or replacement of their Dryer.

The Court found and concluded that the Settlement Class and the two subclasses satisfied all the requirements of due process and other applicable federal law and made several specific decisions relating to the Settlement Class. First, the Court appointed Edward A. Wallace, Amy E. Keller, and Dawn M. Goulet of Wexler Wallace LLP, Erin Dickinson and Charles Crueger of Hansen Reynolds Dickinson Crueger LLC, and Gregory F. Coleman of Greg Coleman Law PC as Co-Lead Counsel for Plaintiffs and the Settlement Class ("Class Counsel"), with authority to execute any and all pleadings and documents on behalf of the Settlement Class. Second, the Court appointed Plaintiffs Shannon Carty, Matthew Downs, Stephen Gavic, Michelle McGowan and Tammie Humphrey as class representatives ("Class Representatives"). Third, the Court appointed Kurtzman Carson Consultants ("KCC") as Class Administrator.

Having considered all submissions filed with the Court pursuant to the Preliminary Approval Order, the Court now finds and concludes that those provisional findings and conclusions should be, and hereby are, confirmed in all respects as a final class certification order under Federal Rule of Civil Procedure 23 for the purposes of implementing the nationwide class action Settlement provided for in the Settlement Agreement and entering final judgment in this action. The Court also overrules any remaining objections, and awards Class Counsel the requested attorneys' fees and costs and Class Representatives' the requested incentive payments.

## III. NOTICE

The Court considered the Settlement Notice Plan submitted by the parties, and the Declaration of Carla A. Peak of KCC describing the Notice Plan. The Preliminary Approval Order approved (1) the form and content of a mailed notice

of the Settlement to be provided to identifiable members of the Settlement Class (the "Settlement Notice"); (2) the form and content of a publication notice (the "Publication Notice") to be published in the nationally-circulated magazines *Parade* and *People*, as well as Internet banner notices which ran on websites such as HGTV.com and Facebook.com; (3) the form and content of the Frequently Asked Questions Form (the "FAQ") to be posted on the website created for this Settlement by the Settlement Administrator and mailed to any Settlement Class Member who requests a hard copy; (4) the form and content of the Claim Form; and (5) the plan specified in the Settlement Agreement for distributing and publishing the Settlement Notice, the FAQ, the Publication Notice, and the Claim Form.

The Court finds that the Notice itself is appropriate, and complies with Fed. R. Civ. P. 23(b)(3), 23(c)(2)(B), and 23(e), because the Settlement Notice, FAQ, and Publication Notice fairly, accurately, and reasonably informed members of the Settlement Class, in plain language, of (1) appropriate information about the nature of this litigation and the essential terms of the Settlement Agreement; (2) appropriate information about, and means for obtaining, additional information regarding this litigation and the Settlement Agreement; (3) appropriate information about, and means for obtaining and submitting, a Claim Form; (4) appropriate information about the right of members of the Settlement Class to exclude themselves from the Settlement, object to the terms of the Settlement Agreement, including Class Counsel's request for an award of attorneys' fees and costs, and the procedures to do so; and (5) appropriate information about the consequences of failing to submit a Claim Form or failing to comply with the procedures and the deadline for opting out of, or objecting to, the Settlement.

Additionally, the Notice is appropriate and complies with the applicable

rules because it describes in plain language: (1) the nature of the action; (2) the definition of the Settlement Class and Subclasses; (3) the class claims, issues, or defenses; (4) that a Class member could enter an appearance through an attorney if the member so desired; (5) that the Court will exclude from the Class any member who timely requested exclusion; (6) the time and manner for requesting exclusion; (7) the time and manner for objecting to the Settlement; and (8) the binding effect of a judgment on Settlement Class members under Fed. R. Civ. P. 23(c)(3) and the terms of the releases.

On June 19, 2014, Carla A. Peak submitted a declaration informing the Court of the Parties' compliance with the notice procedures. And on August 8, 2014, Kenneth A. Stalzer—counsel for Electrolux—informed the Court that KCC timely mailed letters, pursuant to 28 U.S.C. § 1715, to the Attorney General of the United States and the attorneys general of each of the 50 states, U.S. territories, and the District of Columbia, and that no objections to the Settlement were received.

The Court finds that the Notice Plan—which includes the direct notice and publication notice as described above, in addition to the creation of a Settlement website (which includes copies of the Notice, Claim Form, FAQ or "long form" notice, and relevant pleadings) and toll-free number that Settlement Class members may call for additional information, meets the requirements of due process and Fed. R. Civ. P. 23(c) and (e), is the best notice practicable under the circumstances, and constitutes sufficient notice to all persons entitled to notice.

Accordingly, the Court hereby finds and concludes that members of the Settlement Class have been provided the best notice practicable of the Settlement and that such notice satisfies all requirements of federal and California laws and due process. The Court finally approves the Notice Plan in all respects. The

Court also finds that notice to appropriate federal and state officials pursuant to the federal Class Action Fairness Act has been timely sent and that such notice satisfies the requirements of the federal Class Action Fairness Act, 28 U.S.C. § 1715. Any objections to the notice provided to the Class are hereby overruled.

## IV.    FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT

In the Preliminary Approval Order, the Court found that the Settlement Agreement appeared to be fair, reasonable, and adequate. The Court confirms this finding, holds that the Settlement is fair, reasonable and adequate and grants final approval of the Settlement.

### A.    Benefits Available Under the Settlement

Pursuant to the Settlement, Electrolux is required to provide several different benefits to Settlement Class Members: (1) a Customer-Instruct Safety Notice mailed to identifiable Settlement Class Members with the Settlement Notice and posted to Frigidaire and Electrolux's websites (as well as the Settlement website); (2) a free safety cleaning service for Settlement Class Members who experienced a Qualifying Performance Problem (as that term is defined in the Settlement Agreement), and to provide training to its authorized service professionals regarding the proper way to perform this cleaning service pursuant to the Settlement and for Dryers in the future; (3) cash reimbursement to members of the Past Dryer Fire Subclass and the Future Dryer Fire Subclass of out-of-pocket expenses incurred due to a Dryer fire within the first 10 years after purchase; and (4) a cash rebate to any Settlement Class Members for the purchase of a new Frigidaire- or Electrolux-brand dryer or other qualifying home appliance upon the submission of a qualifying claim form, or a discount code to any Settlement Class Member who submits a qualifying claim form to be used in purchasing new products from Electrolux's direct-to-consumer website,

www.ElectroluxAppliances.com, in lieu of purchasing a new home appliance. The Settlement does not require consumers to release any personal injury or property damage claims—save for the economic loss to the Dryers, themselves.

Plaintiffs' counsel retained Frank Bernatowicz to perform a valuation of the various benefits under this Settlement. Mr. Bernatowicz has a Bachelor of Science in Electrical Engineering and a Master of Business Administration degree (along with a concentration in Accounting). He is also a Professional Engineer and Certified Public Accountant with lengthy experience as described in his Declaration. (ECF No. 153-1 at 28-29.) Mr. Bernatowicz employed methods and analyses of a type reasonably relied upon by experts in his field forming opinions or inferences on valuation. In connection with his valuation, Mr. Bernatowicz also relied upon the Settlement Agreement, reports of two of Plaintiffs' other experts (Marthinus van Schoor, Ph.D. and Carol Pollack-Nelson, Ph.D.), a report authored by the Federal Emergency Management Agency ("FEMA") concerning dryer fires which utilized conservative, voluntarily-reported data from the National Fire Incident Reporting System ("NFIRS") where the fire department was called, and a review and summary of literature on consumer motivation and behavior concerning recall effectiveness authored by the United States Consumer Product Safety Commission ("CPSC"). The Court has reviewed Mr. Bernatowicz's valuation, along with the Parties' submissions and the record, and makes the following findings concerning the Settlement's benefits.

### 1. Customer-Instruct Safety Notice

The Court finds that the Customer-Instruct Safety Notice confers significant benefits to Class Members, informing them that lint can build up inside of their Dryers—more specifically, behind the drums of the Dryers—and should be cleaned by an authorized service professional at least every 18 months. The Court

1    notes that, in addition to being disseminated to identifiable class members by U.S.

2    Mail and electronic mail, the notice is also posted to Electrolux and Frigidaire's

3    websites and the Settlement website.

4           This Customer-Instruct Safety Notice was negotiated and developed by the

5    Parties to address the allegations in Plaintiffs' Second Amended Consolidated

6    Class Action Complaint ("Complaint"), as well as certain findings by their expert

7    witnesses.  Electrolux's cleaning instructions and warning in its Use and Care

8    Guides contained no specific instructions that consumers needed to clean and

9    remove lint *behind* the drums of these Dryers—where lint could accumulate next

10    to the Dryers' heat source.  Notably, Plaintiffs' expert Carol Pollack Nelson, a

11    human factors psychologist specializing in consumer product safety (and who

12    formerly worked for the United States Consumer Product Safety Commission),

13    found—based upon research and a survey of Electrolux dryer owners—that

14    consumers were not likely to follow safety and cleaning instructions when they are

15    buried within the materials consumers receive when purchasing a Dryer.  A stand-

16    alone instruction is more likely to be read and understood by consumers and,

17    according to Plaintiffs' expert Frank Bernatowicz, will "have a significant impact

18    on the number of future fire incidents that will occur related to the subject

19    Electrolux dryers," because it will influence consumer behavior.  Mr. Bernatowicz

20    estimates, utilizing data from Dr. van Schoor concerning future fires, that the

21    benefits to the Class from the Customer-Instruct Safety Notice are valued at

22    approximately $15.8 million.[1]

23

24    _____

25    [1] Mr. Bernatowicz provides "full utilization" values and "projected utilization"
values.  The Court discusses Mr. Bernatowicz's "projected utilization" values,

26    here, but notes that Mr. Bernatowicz provides a range of values as well as
Electrolux's overall total potential liability as part of Class Counsel's Application

27                                        *(Footnote cont'd on next page.)*

28    [PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL
JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE
AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT
MASTER FILE NO. 8:12-cv-01644-CAS-VBK

The Court finds that this portion of the Settlement provides a substantial benefit to the Class and addresses the defects alleged in Plaintiffs' Complaint.

### 2. Safety Cleaning Service, Free-of-Charge to Class Members

Class members who experienced a Qualifying Service Problem with their Dryers—such as overheating, burning, or scorching of laundry loads—within the first five years of the purchase of the subject Dryers (and if the Dryers are less than ten years old—the "useful life" of these Dryers), are eligible for one free cleaning of the Dryer by an Electrolux-authorized service representative. Eligible Class members may schedule this cleaning any time within the next two years, and will be reminded 30 days before the end of that period to schedule the service. The cost of this service, which takes about an hour to perform, is estimated to be approximately $100 and there is no evidence in the record to rebut this estimate. Further, under the terms of the Settlement, should the cleaning be more than $100 or take more than one hour, Class members will *not* be charged for this service. As described in the Settlement Agreement and represented by the Parties to this Court—this service will occur free-of-charge to qualifying Class members.

Another component to this Settlement benefit requires Electrolux to provide training materials to its authorized service technicians concerning how to properly clean the subject Dryers. Plaintiffs' counsel notes that, through testimony provided to the Court from Electrolux's witnesses, in order to clean these Dryers, the drums of the Dryers must be removed and lint cleaned from the heater pan. These witnesses also testified that Electrolux previously provided no training or

---

*(Footnote cont'd from previous page.)*

for Attorneys' Fees and Expenses and for Service Awards. (ECF No. 153.) No one has presented any evidence rebutting Mr. Bernatowicz's valuations.

[PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT
MASTER FILE NO. 8:12-cv-01644-CAS-VBK

1  instructions to its authorized service technicians to clean the Dryers.  So, in some

2  instances, if Class members previously requested and paid for a cleaning, there

3  would be no guarantee that their Dryers would be properly cleaned, and that lint

4  would be removed from behind the drums and in the heater pans.

5      Mr. Bernatowicz examined this and other data provided by Plaintiffs' expert

6  Dr. van Schoor.  Dr. van Schoor's report included findings that the number of

7  Dryer fires increases up to year five, and then significantly declines immediately

8  thereafter.    Further, individuals who experience the "Qualifying Service

9  Problems" discussed in the Settlement Agreement may have Dryer conditions that

10 are more likely to result in a fire.  Dr. Bernatowicz determined that the benefit to

11 the Class members under this portion of the Settlement is approximately $11.9

12 million.

13     The Court finds, based upon a review of the record, that this portion of the

14 Settlement also provides a tangible benefit and a service to the Class members—

15 free of charge—that is not a coupon.

16      **3.    Monetary Benefits for Dryer Fire Subclass Members**

17     Class members who experience a Dryer fire within the first ten years after

18 the Dryer's purchase (which is, again, the useful life of the Dryers) will be eligible

19 to receive up to $1,300 for unreimbursed expenses incurred in repairing or

20 replacing their Dryers or for property damage.  This benefit is available for

21 individuals who experienced a Dryer fire in the past or may experience one in the

22 future for the entire prospective useful life of the last models of these Dryers

23 sold—or until December 31, 2022.  Again, like the other benefits available to the

24 Class members, individuals who make claims under this portion of the Settlement

25 will not be releasing any personal injury or property damage claims—except for

26 economic loss claims regarding damage to the Dryers themselves.

27

28

---
11

1  Utilizing data from Plaintiffs' experts, the estimated value of this portion of
2  the Settlement is $7.8 million based upon expected utilization rates. This portion
3  of the Settlement provides real, tangible benefits in the form of monetary relief to
4  the Fire Subclass members.

5  ### 4. Cash Rebates and Online Vouchers to Purchase New
6  ### Products

7  Finally, the Settlement provides up to $350 off the purchase price of a
8  replacement Electrolux- or Frigidaire-brand clothes Dryer or an online code that
9  can be used to purchase a number of Electrolux products at up to a 20% discount
10 online. Customers will have up to two years to use the cash rebate benefit or
11 online voucher code, and will be reminded to do so 30 days prior to its expiration.
12 Additionally, the rebates and vouchers are fully transferrable—Settlement Class
13 members may sell or give these benefits away to non-Class members.

14 The parties presented evidence and argument to the Court that Electrolux
15 ceased producing these Dryers in 2011. Therefore, individuals who purchase new
16 Electrolux products using the benefits provided under the Settlement will *not* be
17 purchasing one of the allegedly-defective Dryers.

18 Significantly, Mr. Bernatowicz did not assign a value to this portion of the
19 Settlement.

20 ### B. Additional Fairness Considerations

21 The Court finds that the benefits offered to the Settlement Class members
22 are substantial. Taking other factors into account as required for final approval,
23 the Court finds that the Settlement was negotiated with the assistance of
24 nationally-renowned mediator Jonathan Marks, who submitted a declaration that
25 the Settlement was reached after arms' length negotiations without any evidence
26 of fraud or collusion in the negotiation process.

27

28

12

The Settlement was reached notwithstanding that on the merits Plaintiffs faced a number of obstacles on the merits, including that Electrolux has won every case it has tried regarding the alleged defects found in these Dryers, and that Electrolux takes the position that over 99 percent of Dryer owners will never experience a fire.  In addition to issues presented on the merits proving design defects and causation, Plaintiffs faced obstacles regarding the economic loss rule and manifestation of injury defenses under state law.  Plaintiffs also faced obstacles related to the certification of a nation-wide or several state-wide classes and maintaining certification through trial.

Having considered (1) the benefits offered to Settlement Class Members; (2) the strength of Plaintiffs' case on the merits, and the defenses that may be asserted by Electrolux; (3) the risks to members of the Settlement Class that Electrolux would successfully defend some or all of the claims asserted by Plaintiffs, whether litigated on a classwide basis or by members of the Settlement Class themselves; (4) the expense and complexity of continued litigation; (5) the length of time that would be required for members of the Settlement Class, or any group thereof, to obtain a final judgment through one or more trials and appeals; (6) the experience and views of Co-Lead Counsel and Electrolux's counsel; and (7) the small number of members of the Settlement Class who have elected to be excluded from the Settlement or who have objected to the Settlement, the Court finds the Settlement to be fair, reasonable, and adequate.  Moreover, the Court finds that the Settlement is the result of extended, arm's length negotiations among experienced counsel, before an experienced mediator, and is non-collusive.

In consideration of the foregoing, the Court grants final approval of the Settlement Agreement and enters this Final Order and Judgment implementing its terms, including but not limited to the releases in the Settlement Agreement as to

[PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT
MASTER FILE NO. 8:12-cv-01644-CAS-VBK

Settlement Class members except those who timely sought exclusion. All
objections filed by members of the Settlement Class have been considered by the
Court and are hereby overruled, as explained further herein. The Court finds that
the Settlement Agreement is in all respects fair, reasonable, adequate, and in the
best interest of the Settlement Class and hereby adopts and incorporates the terms
of the Settlement Agreement for purposes of this Final Order and Judgment,
including the definitions set forth in the Agreement. The Parties are directed to
consummate the Settlement Agreement in accordance with its terms.

## V.     FEES, COSTS, AND INCENTIVE AWARDS

The Court recognizes that Mr. Marks's declaration also stated that
attorneys' fees were negotiated separately and apart from the Settlement. The
Court finds that certain provisions of this Settlement will require additional work
by Class Counsel, and that they have incurred, and will continue to incur,
additional fees and expenses for which they will not seek reimbursement,
including potential follow-on enforcement actions and monitoring of the
Settlement. Class Counsel must monitor the Fire Subclass portion of this
Settlement until at least December 31, 2022, as the Settlement provides for a meet
and confer process regarding any denied claims.

The Court finds that the lodestar method is the appropriate approach for the
calculation of attorneys' fees in this case. *See In re Bluetooth Headset Prods.
Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011); *In re Ferrero Litig.*, No. 11-cv-
00205-KSC, 2012 U.S. Dist. LEXIS 94900, *10 (S.D. Cal. July 9, 2014), *aff'd*,
No. 12-56469, 2014 U.S. App. LEXIS 13573 (9th Cir. July 16, 2014) (in class
action settlement providing for injunctive relief, "[t]he Court concludes that
Plaintiffs are prevailing parties as the term is used in the fee-shifting provision of

[PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL
JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE
AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT
MASTER FILE NO. 8:12-cv-01644-CAS-VBK

1    the Consumer Legal Remedies Act, and Class Counsel are thus entitled to a
2    reasonable fee and expense award for their work.").  This litigation asserted claims
3    under fee-shifting statutes including state consumer protection statutes (Cal. Civ.
4    Code § 1750, *et seq.*, Ark. Code Ann. § 4-88-107, *et seq.*, N.Y. G.B.L. § 349, *et*
5    *seq.*), and the Magnuson-Moss Warranty Improvement Act (15 U.S.C. § 2301, *et.*
6    *seq.*)), each of which provides for attorneys' fees to a successful plaintiff (15
7    U.S.C. § 2310(d); Cal. Civ. Code. § 1780(e); Ark. Code Ann § 4-88-113; N.Y.
8    G.B.L. § 349(h)) as well as significant injunctive relief and safety benefits.  Under
9    these circumstances the lodestar method of calculating fees is the appropriate
10   method by which to measure attorneys' fees in this matter.

11          The Court hereby awards Class Counsel $8,000,000 for their incurred
12   expenses and costs, as well as for attorneys' fees.  As the record reflects, all of the
13   attorneys appointed Class Counsel—in addition to local counsel in each of the
14   consolidated actions—have prosecuted this action, with no guarantee of recovery,
15   and have advanced all costs to date.  The Court notes that Class Counsel has
16   incurred over $627,000 in costs.  As of July 22, 2014, this $8,000,000 request
17   represented only a 1.23x multiplier on Class Counsel's fees[2]—and this multiplier
18   will likely decrease as the Settlement moves forward and Class Counsel continues
19   to monitor claims and respond to inquiries from the Class members.  The Court
20   finds that this multiplier is appropriate given the extensive amount of time spent
21   by Class Counsel over the course of the two years prosecuting this action, the
22   complexity of the case, the quality of representation, the novelty of issues
23   presented (including the sophisticated engineering concepts involved in this case),

24
25   _____
26   [2] The Court finds that Class Counsel's hourly rates are consistent with prevailing
     market rates.
27

28
[PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL
JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE
AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT
MASTER FILE NO. 8:12-cv-01644-CAS-VBK

1    and the risk of nonpayment. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th

2    Cir. 1998) (citations omitted).

3          The Court also notes that a settlement valuation cross-check supports this

4    fee award. The evidence and expert testimony submitted to the Court supports a

5    valuation of the Settlement benefits totaling a minimum of $35.5 million in

6    projected-utilization values. This value is based on expected utilization rates for

7    which no contradictory evidence has been submitted. According to the evidence

8    submitted, the total potential value of the Settlement is $155 million, however,

9    that number was not used in evaluating the fee request. The cash rebate portion of

10   the Settlement has not been valued or included in performing a valuation for

11   lodestar cross-check purposes.

12         The requested fees approximate 21% of the value of the Settlement. This is

13   well within—and even below—the benchmark recognized as appropriate in this

14   Circuit. *See Hanlon*, 150 F.3d at 1029; *Iorio v. Allianz Life Ins. Co. of N. Am.,

15   Inc.*, No. 05-cv-0633-JLS (CAB), 2011 U.S. Dist. LEXIS 21824, **36-37 (S.D.

16   Cal. Mar. 3, 2011) (attorneys' fees represented 16.48% of settlement's "full

17   utilization value," and 29.95% of the settlement's "projected utilization value").

18   The payment of attorneys' fees and costs will not diminish any of the benefits

19   provided to the Settlement Class members.

20         The Court further awards $3,000 as an incentive award to each Class

21   Representative: Shannon Carty, Matthew Downs, Stephen Gavic, Michelle

22   McGowan and Tammie Humphrey, for their time spent prosecuting this action—

23   including sitting for depositions, responding to discovery, and making their homes

24   and Dryers available for inspection. The Court notes that certain Class

25   Representatives experienced past dryer fires, and will submit claim forms as part

26   of the Past Dryer Fire Subclass, and their claims will be considered and paid

27

28   [PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL
     JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE
     AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT
     MASTER FILE NO. 8:12-cv-01644-CAS-VBK

1 pursuant to the terms of the Settlement Agreement.

2 The Court further finds that the Class Representatives are individually
3 releasing claims for the property damage experienced as a result of their Dryer
4 fires (and none of the absent Settlement Class members are providing these
5 releases). The Court notes that, as part of their individual settlements, Plaintiffs
6 will receive the following for individual (non-class) property damage claims:
7 $25,000 to Shannon Carty; $7,587.33 to Matthew Downs; and $1,239.65 to
8 Michelle McGowan. These separate settlement amounts do not render the Class
9 Representatives inadequate or otherwise cause a conflict of interest; rather, the
10 Class Representatives are settling their individual claims and providing releases—
11 above and beyond the Settlement—as part of their own individual property
12 damage claims. The Court finds that this creates no conflict of interest between
13 the Class Representatives and the Class; nor does it creates a conflict between
14 Class Counsel and the Class. *See La Fleur v. Medical Mgmt. Int'l*, No. 13-01960-
15 VAP (OPx), 2014 U.S. Dist. LEXIS 90367, *22 (C.D. Cal. June 25, 2014)
16 (incentive payment of $15,000 to each named plaintiff approved because, *inter
17 alia*, the named plaintiffs released *all* claims against the defendant); *Hillgamyer v.
18 Reliastar Life Ins. Co.*, No. 11-cv-729, 2013 U.S. Dist. LEXIS 147457 (W.D. Wis.
19 Oct. 4, 2013) (pursuit and settlement of class representative's individual claim not
20 incompatible with her serving as class representative so long as no class-wide
21 release given). Finally, the Court awards $839 in litigation costs to Tammie
22 Humphrey for the destructive testing of her Dryer as a necessary cost to pursue
23 this litigation.

24 These amounts shall be paid by Electrolux consistent with the terms of the
25 Settlement Agreement and will not diminish any of the benefits afforded to the
26 Settlement Class members.

---

17

## VI. **OBJECTIONS TO THE SETTLEMENT**

The Court has had an opportunity to review the objections submitted by a small percentage of the Settlement Class Members (10 objections by consumers, and objections from four professional, or serial objectors) and finds that an overwhelming majority of the Settlement Class have not objected to the settlement (there are approximately 6.5 million Class members), and notes that a majority of the consumer objectors have represented to Class Counsel that they will be or have withdrawn their objections.[3] *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) ("[i]t is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the proposed class settlement action are favorable to class members."). *See also Churchill Vill., LLC v. GE*, 361 F.3d 566, 577 (9th Cir. 2003) (settlement approved with 500 opt-outs and 45 objections out of 90,000 class members); *Fulford v. Logitech, Inc.*, No. 08-cv-02041 MMC, 2010 U.S. Dist. LEXIS 29042, *12 (N.D. Cal. Mar. 5, 2010) (response of Class favored settlement where only 12 of 82,000 class members objected). Of the remaining objections, the Court has carefully considered the letters and briefs submitted on behalf of the objectors and by Class Counsel and overrules the objections on the following bases.

---

[3] All objections received by Class members were attached to the Declaration of Amy E. Keller (ECF No. 163). The Court has reviewed those objections in connection with issuing this Order, and finds that the objections, if not formally withdrawn, are overruled for the same reasons discussed herein related to the other objections.

18

**A.  Consumer Objectors**

**1.  Objector Jerry Atkins**

The Court notes that Mr. Atkins bases his objection on three main points: 1) that Electrolux has failed to inform owners of the cause and remedies considering long-term use of the Dryers; 2) that Electrolux has offered no preventative solutions; and 3) that Electrolux has not identified any design changes in newer models that would eliminate the alleged defect.

The Court finds that Mr. Atkins's objections are actually addressed by the terms of the Settlement: 1) Class members are receiving a Safety Notice that informs them that lint must be cleaned from behind the Dryers' drums to reduce the risk of fire and that this cleaning must be performed every 18 months; 2) Electrolux is cleaning eligible Class members' Dryers at no cost to the Class members; and 3) that newer models of Electrolux dryers do not contain the alleged defect or "ball-hitch" design described in Plaintiffs' Complaint.  Mr. Atkins states that he fears that the "suit will permit escaping responsibilities for defective design," however, that ignores the reality of Electrolux's obligations under the terms of the Settlement as well as the fact that Class members are not, nor will they be required to, release any personal injury or property damage claims for past or future Dryer fires.  Mr. Atkins's objection is hereby overruled.

**2.  Objector Ronald Mondary**

Mr. Mondary objects to the Settlement for a number of reasons; however, his objections are the result of a misunderstanding of the Settlement Agreement and issues with Electrolux that appear to have nothing to do with the allegations of this case.  Namely, Mr. Mondary argues that he will be charged for the safety cleaning benefit; however, that benefit will be provided to eligible class members free-of-charge.  Concerning Mr. Mondary's other objections (that his refrigerator

[PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL
JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE
AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT
MASTER FILE NO. 8:12-cv-01644-CAS-VBK

1 is not, as advertised, energy efficient, or that delivery persons who installed his

2 Electrolux machines burglarized his home), those claims are not the subject of this

3 lawsuit, and he retains the right to seek relief concerning those other events, as

4 appropriate, pursuant to another lawsuit if he so chooses. Mr. Mondary's

5 objection is hereby overruled.

6 **B.    "Professional" or "Serial" Objectors**

7 The Court notes that, initially, three objections were filed by "professional"

8 or "serial" objectors on July 28, 2014. One of those objections, advanced by

9 Daniel Hall, who is represented by Timothy Hanigan, was later withdrawn after

10 Class Counsel submitted a response to his objection on August 11, 2014.[4] Two

11 objections remain. Neither counsel for the objectors nor the objectors themselves

12 appeared at the Fairness Hearing on August 18, 2014. The objectors submitted no

13 evidence or expert testimony in support of their objections.

14 The objections submitted by these professional objectors do not seek to

15 benefit the Class and appear to be made for the improper purpose of delaying the

16 Settlement to extract a fee. Their main claim, that nothing short of a total recall of

17 all Dryers could constitute a fair and reasonable settlement, not only ignores the

---

[4] Despite the withdrawal of this objection, the Court notes that the objection would have been overruled in its entirety. It is unclear whether Mr. Hall even had standing to object to the Settlement. The rest of Mr. Hall's objections misunderstand or misread the Settlement Agreement, or provide no evidence or support (besides attorney argument) to advance his objection. For example, the Court overrules Mr. Hall's characterization of the Settlement as providing only "illusory value" to the Class—as stated herein—the benefits to the Class are substantial. Mr. Hall also misinterprets the Settlement Agreement concerning his objections related to the Fire Subclasses—no Class member is required to release his or her personal injury or property damage claims under the Settlement. Finally, no conflicts exist between Class Counsel, the Class Representatives, and the Class. As explained herein, Class Counsel's attorneys' fees request is reasonable and the Class Representatives' settlement of their individual claims does not render them inadequate.

20

[PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT
MASTER FILE NO. 8:12-cv-01644-CAS-VBK

allegations of the case and the positions of the Parties, but is meritless and demonstrates a failure to appreciate the fact that settlements are by necessity compromises. As the Ninth Circuit recognized in *Hanlon v. Chrysler Corp.*:

> Of course it is possible . . . that [a] settlement could have been better. But this possibility does not mean [a] settlement presented [is] not fair, reasonable or adequate. Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion. In this regard, the fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness. There [is] no disparate treatment between class members; all stood to benefit equally, a fact which lessens the likelihood that the named Plaintiff and their attorneys colluded with [the defendant] to increase their own recovery at the expense of the unnamed Plaintiff who Class Counsel had a duty to represent. . . . [Objectors who] . . . thought that [their personal claim was being sacrificed for the greater good] had the right to opt out of the class.

*Hanlon*, 150 F.3d at 1027.

The Court addresses the particular objections of the professional objectors as follows.

### 1. Objector Patrick Sweeney, Represented by Darrell Palmer

The Court has considered the objections of Mr. Sweeney, overrules them in their entirety, finds that they are not made for the purpose of benefitting the Class), and finds that they are meritless in all respects. The objections are filed by

[PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL
JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE
AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT
MASTER FILE NO. 8:12-cv-01644-CAS-VBK

counsel who routinely files objections to class settlements.  *See, e.g., City of Roseville Empls. Ret. Sys. v. Orloff*, No. 11-35455, 2012 U.S. App. LEXIS 11512, **7-8 (9th Cir. June 7, 2012) (Mr. Palmer's appeal of an award of attorneys' fees found to be "meritless" and based upon misapprehensions of the law); *Larsen v. Trader Joe's Co*., No. 11-cv-05188-WHO, 2014 U.S. Dist. LEXIS 95538, **22-24 (N.D. Cal. July 11, 2014) (overruling objections and recognizing that "[l]ike Darrell Palmer, attorney Patrick Sweeney also has a long history of representing objectors in class action proceedings"); *In re Dell Sec. Litig*., No. A-06-CV-726-SS, ECF No. 342 (W.D. Tex. Jan. 11, 2011) (Palmer's objection showed "little respect for the intelligence of [the] Court."); *In re BP Oil Spill*, No. 13-30095 (5th Cir.) (Palmer and co-counsel Theodore Harold Frank "made inaccurate representations" to a district court and failed to "apprise [their clients] of multiple factual inaccuracies contained in written and verbal submissions of counsel").[5] Here, as noted in Plaintiffs' response to Mr. Sweeney's objection, the fact that Mr. Palmer's client is also a serial objector in class action matters raises additional issues as to the legitimacy of the objection.

Aside from the fact that the Court finds that the objection is lawyer-driven and appears to be brought for an improper motive, and would otherwise delay important safety benefits to the Settlement Class members, the Court also finds that the objection is without merit, without evidentiary support and rests on inaccurate premises and mischaracterizations of the Settlement.

While a portion of the Settlement provides Settlement Class members with cash rebates and vouchers, those benefits are not valued or included for purposes

---

[5] The Court notes that Mr. Palmer has faced disciplinary actions in a number of courts, and has a pending disciplinary action before the State Bar of California.

[PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT
MASTER FILE NO. 8:12-cv-01644-CAS-VBK

of valuing the Settlement or in calculating an award of attorneys' fees. The Settlement provides numerous other benefits to the Settlement Class Members that specifically address the allegations in Plaintiffs' Complaint—such as safety measures including a notice to consumers, training regarding cleaning and a cleaning program designed to prevent fires. Contrary to Objectors' unsupported arguments, the cleaning benefit is a significant and tangible benefit to Dryer owners and is not a "coupon" or a "discount for services." The cleaning program is neither unreasonably limited nor "valueless" as Mr. Sweeney (and, as discussed below, the other objectors) asserts without support. Further, the Settlement also includes cash payments to individuals who have suffered a fire and cash payments to those individuals who buy a new dryer or other product. These actual benefits are not "coupons."[6]

The Court finds that Mr. Sweeney's claims that the Settlement is "valueless" are without merit and consist of nothing more than unsupported attorney argument that contradicts the evidence presented to this Court. As discussed fully herein, the Settlement provides significant safety benefits to the Class and provides real economic relief to Class Members. The Court finds the valuation of the Settlement performed by Mr. Bernatowicz to be reliable and based upon standard accounting practices, and notes that the Mr. Sweeney has provided no evidence that Mr. Bernatowicz's calculation is "speculative," or "excessive," as his objection so states.[7] Objectors have not provided their own

---

[6] The cash rebate program has not been used to value the Settlement, but the Court notes that it does provide additional value to the Class, objectors' arguments to the contrary.

[7] Mr. Sweeney also states that the settlement benefit provided to the Fire Subclass members is of "little value" because he misinterprets the Settlement. The Settlement is *not capped*, will be *fully-funded* by Electrolux, and does *not* require

*(Footnote cont'd on next page.)*

23

valuation of the Settlement and have provided no evidence or expert testimony as to what they believe its value might be. They conclude without support or evidence that the Settlement is simply "valueless." These conclusory statements cannot be weighed against the significant evidence and expert testimony supporting the value of the Settlement benefits. *See In re Toyota Unintended Acceleration*, No. 8:10ML 02151 JVS (FMOx), 2013 U.S. Dist. LEXIS 123298, **310-311 (C.D. Cal. July 24, 2013) (rejecting unsupported objections to a proposed fee award where the objectors presented no expert declaration or other evidence undermining the Court's conclusions).

Mr. Sweeney also questions whether the Settlement will reduce the risk of fires, and points to the FEMA Report cited by Mr. Bernatowicz as evidence of the average damage caused by a dryer fire in the United States. Mr. Sweeney provides no expert testimony to support his speculation based on this FEMA report on dryer fire rates or on the rate of failure of Electrolux's Dryers, and his objection on this point is overruled on that basis alone. In any event, his assumption that the FEMA report forecasts dryer fires or reflects all dryer fires in the United States is inaccurate. As explained by Class Counsel at the Fairness Hearing, the National Fire Incident Reporting System ("NIFRS") data in the FEMA report does not forecast Dryer failure rates. This is because the NIFRS data only contains data from *fire departments* who *voluntarily* report information on fires where the fire department was actually called. Mr. Bernatowicz and Dr. van Schoor used Electrolux's own information to forecast potential Dryer fires

---

*(Footnote cont'd from previous page.)*

any release of personal injury or property damage claims (save for the economic loss to the Dryer, itself). That is, individuals who experience a Dryer fire may recoup dollar for dollar what they paid for their Dryers, and may still pursue their own personal injury or property damage claims.

---

24

1   using broad search terminology in Electrolux's warranty database, which the

2   Court finds to be reliable for purposes of this settlement.  Mr. Bernatowicz's

3   valuation of the benefit provided by the safety cleaning and notice provisions of

4   the Settlement is accepted as reliable by this Court. Mr. Sweeney has provided no

5   evidence to show that this valuation is speculative or inaccurate.

6        Mr. Sweeney's arguments that commonality "may" not exist are likewise

7   overruled.  His argument that commonality may not exist because "every fire is

8   different" or "issues of comparative negligence" may exist is unexplained and

9   lacks merit, given members of the Fire Subclass receive identical benefits (that is,

10  up to the value they paid for the Dryers for economic loss related to the Dryers)

11  under the Settlement and Class Members' property damage or personal injury

12  claims are *not* released under the Settlement: they (or their insurers) are still able

13  to pursue those claims.  Mr. Sweeney's argument that commonality does not exist

14  among the Class members is also without merit because Plaintiffs' claims arise

15  from breach of warranty and violations of state consumer protection laws—

16  damages from those violations which occur at the *point of sale* of the Dryers—not

17  if and when the Dryers catch fire.

18       Mr. Sweeney's argument that Class Counsel are somehow "inadequate"

19  because they are "putting their own interests ahead of the class" lacks foundation

20  and contradicts the evidence.  Sweeney and Palmer never explain their basis for

21  this conclusory statement.  Jonathan Marks, the mediator overseeing settlement

22  negotiations, found no evidence of collusion or that counsel put their interests

23  ahead of the Class.  Mr. Marks' opinion is compelling and objectors provide no

24  evidence to the contrary.  Mr. Sweeney's objection on this basis is overruled.

25       Mr. Sweeney also takes issue with the requested fee award.  The Court has

26  found that Class Counsel's fee request is reasonable, and the information provided

27

28

[PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL
JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE
AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT
MASTER FILE NO. 8:12-cv-01644-CAS-VBK

Case 8:12-cv-01644-CAS-VBK   Document 996-9   Filed 04/12/16   Page 44 of 35   Page ID
#:37

1    to the Court concerning their lodestar and hourly rates is adequate.  *See* Section V,

2    *supra*. Mr. Sweeney provides no evidence or expert declaration to contradict

3    Plaintiffs' submissions.  As such, his objection to the amount of Plaintiffs'

4    attorneys' fee request is properly overruled.  *See In re Toyota Unintended*

5    *Acceleration*, 2013 U.S. Dist. LEXIS 123298, **310-311 ("All objectors to the

6    proposed fee award contend that it is excessive.  As a preliminary matter, the

7    Court notes that none of the objectors have provided an expert declaration or any

8    other evidence undermining the Court's conclusions herein.").  As described above

9    in this Court's approval of Attorneys' fees, the multiplier requested by Class

10   Counsel is more than appropriate given the complexity of the case, the work

11   required, the discovery performed, and the results obtained for the Class—which

12   are substantial and appropriate.

13        Objectors' argument that the fee petition was not timely filed is also

14   overruled.  Plaintiffs intent to seek attorneys' fees and the amount of those fees

15   have been in the record of this case since April 2014, and both the Plaintiffs'

16   motion for Final Approval and Class Counsel's application for Attorneys' Fees

17   were filed within the deadlines set by this Court.  Plaintiffs' request for

18   Preliminary Approval, filed on April 30, 2014, listed the bases for approval, the

19   terms of the Settlement, attached the Notices and outlined the amount of fees

20   attorneys were seeking.  The Notices also provided Class members with

21   information concerning the amount of fees requested.  Objectors fail to explain

22   how these filings provide insufficient notice regarding the terms of the Settlement

23   and the amount of fees Class Counsel is seeking (especially when the terms are

24   identical).  Plaintiffs' application for attorneys' fees and expenses was filed *prior*

25   to the deadline to submit objections.  Further, the Court notes that this Settlement

26   does not involve a common fund apportioned between relief and fees—and the

27

28

26

attorneys' fee award will not reduce any benefits received by the Class. Thus, any objection regarding a so-called "clear sailing" provision is also overruled. *See Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-cv-09405-CAS-FFMx, 2014 U.S. Dist. LEXIS 14301, **29-30 (C.D. Cal. Jan. 30, 2014) ("The Settlement Agreement merely provides that PCNA will not object to a fee petition by plaintiffs' counsel so long as the requested fees and costs do not exceed $950,000. This type of provision is appropriate when, as here, it does not impact the substantive benefits offered to the class."); *Calloway v. Cash Am. Net of California LLC*, No. 09-CV-04858 RS, 2011 U.S. Dist. LEXIS 41098, **3-5 (N.D. Cal. Apr. 12, 2011) (where no common fund exists, no adversarial relationship exists between class counsel and the class concerning fees). As evidenced by their extensive objections, Mr. Sweeney, represented by Mr. Palmer, appear to have had ample opportunity to review and critique Class Counsel's fee petition and their objection based on the timing of the filing of Plaintiffs' Fee Petition therefore lacks merit.

The Court has considered the entirety of Mr. Sweeney's objection and overrules that objection as lacking merit and foundation.

### 2. Objectors Kristina Newman and Joyce Miller, Represented by Steve Miller, John C. Kress, and Jonathan Fortman

The Court has considered the objections of Ms. Newman and Ms. Miller, overrules them in their entirety, finds that they too appear to have been made with an improper motive (to extract a fee and not to benefit the Class), and finds that they are meritless. The Court finds that these objections are driven by counsel well-known and recognized by Courts for routinely filing meritless objections to class action settlements. *See, e.g., In re New Motor Vehicles Canadian Exp.*

1    *Antitrust Litig.*, MDL No. 1532, 2011 U.S. Dist. LEXIS 40843, *29-30 n.22 (D.

2    Me. Apr. 13, 2011) (arguments raised by Mr. Miller rejected as "specious"); *In re*

3    *Am. Int'l Grp., Inc. Sec. Litig.*, No. 04-cv-08141-DAB, 2012 U.S. Dist. LEXIS

4    13784, *9-10 (Mr. Miller's objection that the requirements for filing a claim were

5    too complicated rejected as "speculative"); *In re Lawnmower Engine Horsepower*

6    *Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997 (E.D. Wis. 2010) (overruling

7    objections by Mr. Kress and Mr. Fortman); *In re Pre-Filled Propane Tank Mktg.*

8    *& Sales Practices Litig.*, MDL No. 2086, 2010 U.S. Dist. LEXIS 106888 (W.D.

9    Mo. Oct. 4, 2010) (overruling objections by Mr. Fortman on behalf of objector

10   John Kress).   The Court also notes the other examples of the attorney-driven

11   objections from this group of lawyers filed in Plaintiffs' response to their

12   objection (ECF No. 164).

13        In addition to the fact that the objections appear to be driven by an improper

14   motive and would delay the important safety benefits the Class would receive

15   under this Settlement, the Court also notes that they are without merit.

16        The Court has already held that the Settlement does not attribute any value

17   to coupons.  *See* Sections IV.A. and B, V., and VI.B.1., *supra.*   For the same

18   reasons as set forth in the foregoing sections of this Court's Order, Ms. Newman

19   and Ms. Miller's objections on this point are likewise overruled.

20        The Court also overrules Newman and Miller's objections regarding the

21   purported "lack of benefit" the Settlement provides the Settlement Class for the

22   same reasons contained in Sections IV.A. and B, V., and VI.B.1., *supra.*  As fully

23   set forth therein, the Settlement provides numerous benefits to the Settlement

24   Class Members that specifically address the allegations in Plaintiffs' Complaint—

25   such as safety measures including a notice to consumers, training regarding

26   cleaning, and a cleaning program designed to prevent fires. The Settlement also

27

28

[PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL
JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE
AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT
MASTER FILE NO. 8:12-cv-01644-CAS-VBK

1    includes cash payments to individuals who have suffered a fire and cash payments

2    to those individuals who buy a new dryer or other product.  No part of the

3    Settlement requires class members to release personal injury or property damage

4    claims above the economic loss to the Dryers, themselves.

5         Ms. Newman and Ms. Miller provide no expert testimony or evidentiary

6    support for their objection that the Settlement is "without benefit" and their

7    objections consist of nothing more than unsupported attorney argument that

8    contradicts the evidence presented to this Court.  Their unsupported objections

9    cannot properly be weighed against the ample evidence and expert testimony

10   before this Court supporting the valuation of the Settlement benefits.  *See supra*

11   Section VI.B.1.

12        The objectors assert that the claim procedure is complicated, that Class

13   members who experienced a fire may not have evidence to support that they

14   actually had a fire, and that the Settlement should skip the claims process,

15   altogether, and send checks for $1,300 to each Class member who experienced a

16   fire.  This objection is without merit and is overruled.

17         The Court finds that the claims procedure is reasonable and adequate.

18   Further, the acceptable documentation to prove that Subclass members

19   experienced a fire suggested in the Settlement papers (such as photographs of the

20   Dryer, fire department reports, or documentation from insurance companies) are

21   more than reasonable, especially considering that Class Counsel may meet-and-

22   confer with Electrolux to resolve any claims that are denied for lack of sufficient

23   documentation.[8]

24

25   _____

26   [8] One consumer objector (Mr. Olesh) withdrew his objection on this basis after
     discussing the many different types of supporting documentation he could submit

27                                                                      *(Footnote cont'd on next page.)*

                                          29
28   [PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND FINAL
     JUDGMENT, GRANTING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE
     AWARDS, AND OVERRULING OBJECTIONS TO SETTLEMENT
     MASTER FILE NO. 8:12-cv-01644-CAS-VBK

The objectors also takes issue with the requested attorneys' fees and incentive awards; however, as noted herein, Class Counsel has provided adequate support to justify their reasonable fee request, and the fee request is further supported by the valuation of the Settlement benefits.  *See* discussion *supra* Section VI.B.1.  As described above in this Court's approval of attorneys' fees, the multiplier requested by Class Counsel is more than appropriate given the complexity of the case, the work required, the discovery performed, and the results obtained for the Class.  *See supra* Section V.

Finally, neither Class Counsel nor the Class Representatives placed their interests ahead of the interests of the absent Class members—as the objectors erroneously suggest.  As is shown in the evidence submitted by the mediator, Mr. Marks, there was no collusion in negotiating the attorneys' fees in this matter and those fees were negotiated *separate and apart* from the Class Settlement.  The Class Representatives' settlement of their own personal property damage claims— separate and apart from the Settlement and without reducing any of the Settlement benefits—does not make them inadequate representatives, nor does it implicate any breach of fiduciary duty to the absent Class members by Class Counsel.  *See supra* Section V.

The Court has considered the objections raised by Ms. Newman and Ms. Miller, finds they lack merit, and overrules them in their entirety.

## VII.   EXCLUSIONS FROM THE SETTLEMENT CLASS

The Court notes, as it did in its discussion regarding objectors to the Settlement, that there have been few objections to the Settlement.  The Settlement

_____

*(Footnote cont'd from previous page.)*

to support his claim as a Subclass member.  *See* Declaration of Amy E. Keller (ECF No. 163).

---

30

1  Administrator has received requests for exclusion from 62 members of the
2  Settlement Class, and has provided Class Counsel and Electrolux's counsel copies
3  of those requests. Class Counsel and Electrolux's counsel have jointly filed with
4  the Court a list of those persons who have timely elected to be excluded. All
5  persons named in the list on file with the Court as having filed timely exclusions
6  with the Settlement Administrator are hereby excluded from the Settlement Class
7  and will not be bound by the terms of the Settlement. Each individual or entity
8  who falls within the definition of the Settlement Class shall be bound by the terms
9  of the Settlement.

10 **VIII. IMPLEMENTATION OF SETTLEMENT**

11 Consistent with the Settlement Agreement, Electrolux shall make the
12 payments described in the Settlement Agreement, including, without limitation,
13 payment to each Settlement Class Member of the cash rebate amount, free Dryer
14 cleaning service, or cash reimbursement for a dryer fire, pursuant to applicable
15 terms and documentation requirements set forth in the Settlement Agreement. The
16 Parties shall carry out their respective obligations as stated in the Settlement
17 Agreement.

18 **IX. RELEASE, COVENANT NOT TO SUE, AND EFFECT OF**
19 **SETTLEMENT**

20     **A.    Release**

21         **1.    Settlement Class Members Who Are Not Members of**
22            **the Past or Future Dryer Fire Subclass**

23 In consideration of the terms of the Settlement Agreement, as to Plaintiffs
24 and Settlement Class Members who are not members of the Past Dryer Fire
25 Subclass or currently members of the Future Dryer Fire Subclass, they are hereby
26 found, deemed, and adjudged to have fully, finally, and forever released and

27

28

31

discharged all known and unknown claims, actions, and causes of action dealing whatsoever with the Dryers, other than claims for personal injury or property damage. If any Class member becomes a member of the Future Dryer Fire Subclass in the future, he or she does not waive his or her ability to pursue additional compensation pursuant to this Settlement. Plaintiffs have expressly, knowingly, and voluntarily waived the provisions of Section 1542 of the California Civil Code, which provides as follows, "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

Plaintiffs have expressly waived and relinquished all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code and of all similar laws of other States, to the fullest extent that they may lawfully waive such rights or benefits pertaining to their released claims.

## 2. Members of the Past Dryer Fire Subclass or Future Dryer Fire Subclass

In consideration of the terms of the Settlement Agreement, as to members of the Past Dryer Fire Subclass or for those individuals who become members of the Future Dryer Fire Subclass, they are hereby found, and will be found, deemed, and adjudged to have fully, finally, and forever released and discharged all known and unknown claims, actions, and causes of action for economic loss dealing whatsoever with the Dryers, specifically excluding claims for personal injury or damage to property other than the Dryers. Plaintiffs have expressly, knowingly, and voluntarily waived the provisions of Section 1542 of the California Civil

1  Code, which provides as follows, "A general release does not extend to claims

2  which the creditor does not know or suspect to exist in his favor at the time of

3  executing the release, which if known by him must have materially affected his

4  settlement with the debtor."

5  Plaintiffs have expressly waived and relinquished all rights and benefits that

6  they may have under, or that may be conferred upon them by, the provisions of

7  Section 1542 of the California Civil Code and of all similar laws of other States, to

8  the fullest extent that they may lawfully waive such rights or benefits pertaining to

9  their released claims.

10  The Court shall retain jurisdiction over the Parties and the Agreement with

11  respect to the future performance of the terms of the Agreement, and to assure that

12  all payments and other actions required of any of the Parties by the Settlement are

13  properly made.

14  **B.    Covenant Not to Sue**

15  In consideration of the terms of the Settlement Agreement, all Settlement

16  Class Members, including Plaintiffs, are hereby found, deemed, and adjudged to

17  have (a) covenanted and agreed that neither Plaintiffs nor any of the Settlement

18  Class Members, nor anyone authorized to act on behalf of any of them, will

19  commence, authorize, or accept any benefit from any judicial or administrative

20  action or proceeding, other than as expressly provided for in this Settlement,

21  against Releasees (as defined in the Settlement Agreement), or any of them, in

22  either their personal or corporate capacity, with respect to any claim, matter, or

23  issue that in any way arises from, is based on, or relates to any alleged loss, harm,

24  or damages allegedly caused by Releasees, or any of them, in connection with the

25  Released Claims (as defined in the Settlement Agreement); (b) waive and disclaim

26  any right to any form of recovery, compensation, or other remedy in any such

27

28

action or proceeding brought by or on behalf of any of them; and (c) agree that the
Settlement Agreement shall be a complete bar to any such action.

C. **Settlement Agreement as Exclusive Remedy for Released Claims**

Upon entry of this Order and Judgment, enforcement of the Settlement Agreement shall be the exclusive remedy for all members of the Settlement Class, including Plaintiffs, all of whom are hereby permanently barred and enjoined from instituting, commencing, prosecuting or continuing to prosecute, either directly or indirectly, any claims released under the Settlement Agreement against Electrolux or Releasees, as the release provisions of the Settlement Agreement define these terms. Settlement Class Members who are prosecuting or asserting any of the released claims are ordered to take whatever measures necessary to effectuate dismissal of their claims.

D. **Effect of a Final Judicial Determination of Invalidity or Unenforceability**

If, after entry of this Final Order and Judgment by the Court, a notice of appeal of this Final Order and Judgment is timely filed by any party, objector, claimant, or other person or entity, and if an appellate court makes a final determination that this Final Order and Judgment is in any respect invalid, contrary to law, or unenforceable (except for such determinations that are limited to the attorneys' fees or incentive awards), this Order shall be automatically vacated, the Settlement Agreement shall be null and void, and Electrolux may fully contest certification of any class as if no Settlement Class or subclasses had been certified. In addition, the Parties shall return to their respective positions in this lawsuit as they existed immediately before the Parties executed the Settlement Agreement, and nothing stated herein or in the Settlement Agreement shall be

1   deemed an admission or waiver of any kind by any of the Parties or used as

2   evidence against, or over the objection of, any of the Parties for any purpose in

3   this action or in any other action.

4   **X.    NO ADMISSION OF LIABILITY**

5           The Parties entered into the Settlement Agreement solely for the purpose of

6   compromising and settling disputed claims.  Nothing contained in the Settlement

7   Agreement, any documents relating to the Settlement, the Preliminary Approval

8   Order, or this Final Order and Judgment shall be construed, deemed, or offered as

9   an admission by any of the Parties or any member of the Settlement Class for any

10  purpose in any judicial or administrative action or proceeding of any kind,

11  whether in law or equity.  In entering this Order with this provision and other

12  limiting provisions, this Court specifically refers to and invokes the Full Faith and

13  Credit Clause of the United States Constitution and the doctrine of comity and

14  requests that any court in any other jurisdiction reviewing, construing, or applying

15  this Order implement and enforce such limiting provision.

16  **XI.   ENTRY OF FINAL JUDGMENT**

17          The Court hereby dismisses with prejudice all claims alleged in this action.

18  The Court further orders the entry of, and enters, this Final Order and Judgment on

19  all claims, counts, and causes of action alleged in this action by Plaintiffs, on

20  behalf of themselves, the Settlement Class, or both.  In entering this Final Order

21  and Judgment, this Court specifically refers to and invokes the Full Faith and

22  Credit Clause of the United States Constitution and the doctrine of comity, and

23  requests that any court in any other jurisdiction reviewing, construing, or applying

24  this Judgment implement and enforce its terms in their entirety.

25          Without affecting the finality of this Final Order and Judgment in any way,

26  this Court hereby reserves jurisdiction over (1) implementation of this Settlement

27

28

and this action; (2) all matters relating to the administration and consummation of the Settlement; and (3) all Parties to this action for the purpose of implementing, enforcing, and monitoring compliance with, effectuating, administering, and interpreting the provisions of Settlement Agreement and this Final Order and Judgment.

In issuing this Order, the Court grants final approval to the Settlement, awards the requested attorneys' fees and costs, awards the requested incentive payments to the Class Representatives, and overrules the objections as stated herein.

IT IS SO ORDERED.

Dated: September 11, 2014

Christina A. Snyder
United States District Judge