# EXHIBIT P

# THE UNITED STATES JUDICIAL PANEL
# ON MULTIDISTRICT LITIGATION

IN RE ELECTROLUX DRYER PRODUCT )       MDL No. 2477
LIABILITY LITIGATION )

## ELECTROLUX'S OPPOSITION TO MOTION OF AMERICAN FAMILY FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 2

    A.    The Subrogation and Individual Homeowner Cases ............................. 3

        1.    Discovery Has Focused on Local, Individualized Issues.......................... 4

        2.    Trial Has Focused on Local, Individualized Issues ................................... 6

        3.    Current Status of the Subrogation and Individual Homeowner
            Cases ...................................................................................................... 8

    B.    Current Status of the Class Actions ..................................................... 11

III.   ARGUMENT ................................................................................................... 12

    A.    Individual Issues of Fact and Law Predominate .................................. 12

    B.    Transfer Would Not Increase Convenience for the Parties and the
        Witnesses ............................................................................................. 14

    C.    Transfer Would Not Promote Judicial Efficiency Because Many of the
        Cases Are Substantially Advanced ..................................................... 14

    D.    Transfer Would Not Promote Judicial Efficiency Because of the
        Multiplicity of State Laws That Would Apply in a Single Proceeding ............. 16

    E.    Existing Cooperation in Sharing Discovery Obviates Any Need for an
        MDL...................................................................................................... 18

    F.    At a Minimum, Coordination or Consolidation of the Class Actions with
        the Subrogation and Individual Homeowner Actions Is Unwarranted ............... 18

    G.    A Word About American Family .......................................................... 19

IV.   CONCLUSION................................................................................................. 19

# TABLE OF AUTHORITIES

**Page**

## CASES

*Cronin v. J.B.E. Olson Corp.*,
501 P.2d 1153 (Cal. 1972) ...................................................................................................17

*Cunis v. Brennan*,
308 N.E.2d 617 (Ill. 1974) ..................................................................................................16

*Fisher v. Bristol-Myers Squibb Co.*,
181 F.R.D. 365 (N.D. Ill. 1995) ..........................................................................................16

*In re Air Crash Disaster at Anchorage, Alaska on Nov. 27, 1970*,
342 F. Supp. 755 (J.P.M.L. 1972) .......................................................................................15

*In re Allianz Life Ins. Co. of N. Am. Deferred Annuity Mktg. and Sales Practice Litig.*,
517 F. Supp. 2d 1364 (J.P.M.L. 2002)..................................................................................15

*In re Asbestos and Asbestos Insulation Material Prods. Liab. Litig.*,
431 F. Supp. 906 (J.P.M.L. 1977) ................................................................................15, 18

*In re Asbestos Sch. Prods. Liab. Litig.*,
606 F. Supp. 713 (J.P.M.L. 1985) ................................................................................13, 15

*In re Cable Tie Patent Litig.*,
487 F. Supp. 1351 (J.P.M.L. 1980) ..............................................................................13, 15

*In re Chiropractic Antitrust Litig.*,
483 F. Supp. 811 (J.P.M.L. 1980) .......................................................................................15

*In re Darvocet, Darvon and Propoxyphene Prods. Liab. Litig.*,
856 F. Supp. 2d 904 (E.D. Ky. 2012) ..................................................................................16

*In re Eli Lilly & Co. "Oraflex" Prods. Liab. Litig.*,
578 F. Supp. 422 (J.P.M.L. 1984) ................................................................................14, 15

*In re G.D. Searle & Co. "Copper 7" IUD Prods. Liab. Litig.*,
483 F. Supp. 1343 (J.P.M.L. 1980) ..............................................................................13, 18

*In re Insulin Mfg. Antitrust Litig.*,
487 F. Supp. 1359 (J.P.M.L. 1980) .....................................................................................12

*In re Klein Litig.*,
No. 3:12-01177, 2013 WL 50076 (J.P.M.L. Feb. 7, 2013 .....................................................19

*In re Merscorp Inc., Real Estate Settlement Procedures Act (RESPA) Litig.*,
560 F. Supp. 2d 1371 (J.P.M.L. 2008)..................................................................................17

*In re Pharm. Benefit Plan Adm'rs Pricing Litig.*,
206 F. Supp. 2d 1362 (J.P.M.L. 2002)..................................................................................14

*In re Plumbing Fixture Cases*,
298 F. Supp. 484 (J.P.M.L. 1968) .......................................................................................12

*In re Reglan/Metoclopramide Prods. Liab. Litig.*,
622 F. Supp 2d 1380 (J.P.M.L. 2009)..................................................................................15

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page**

*In re Sears, Roebuck & Co. Emp't Practices Litig.*,
    487 F. Supp. 1362 (1980)....................................................................................13, 14

*In re Shoulder Pain Pump-chondrolysis Prods. Liab. Litig.*,
    571 F. Supp. 2d 1367 (J.P.M.L. 2008) ...................................................................18

*In re Table Saw Prods. Liab. Litig.*
    641 F. Supp. 2d 1384 (J.P.M.L. 2009) ...................................................................13

*In re Tampon Prods. Liab. Litig.*,
    533 F. Supp. 1346 (J.P.M.L. 1982).....................................................................14, 15

*In re Texas Instruments Inc. Emp't Practices Litig.*,
    441 F. Supp. 928 (J.P.M.L. 1977).........................................................................13

*In re Title Ins. Real Estate Settlement Procedures Act (RESPA) & Antitrust Litig.*,
    560 F. Supp. 2d 1374 (J.P.M.L. 2008) ...................................................................17

*In re U.S. Navy Variable Reinlistment Bonus Litig.*,
    407 F. Supp. 1405 (J.P.M.L 1976) .........................................................................14

*In re Vioxx Prods. Liab. Litig.*,
    478 F. Supp. 897 (E.D. La. 2007) ..........................................................................16

*In re Zimmer, Inc.*,
    237 F. Supp. 2d 1376 (J.P.M.L. 2002) ...................................................................15

*In re: Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*,
    804 F. Supp. 2d 1376 (J.P.M.L. 2011) ...................................................................13

*In re: Nutella Mktg. and Sales Practices Litig.*,
    804 F. Supp. 2d 1374 (J.P.M.L. 2011) ...................................................................13

*Mikolajczyk v. Ford Motor Co.*,
    901 N.E.2d 329 (Ill. 2008) ...............................................................................16, 17

*Tirrell v. Navistar Int'l, Inc.*,
    591 A.2d 643 (N.J. 1991) ........................................................................................16

## STATUTES

28 U.S.C. § 1407....................................................................................................12, 13, 15

New Jersey Statute § 2A:58C-1 *et seq.*....................................................................16

## I.   **INTRODUCTION**

American Family's motion to transfer more than fifty cases to one court for pretrial purposes should be denied.   The only common thread in all of these cases is that a dryer manufactured by Electrolux was at the scene of a fire.  Each of these cases turns on case-specific, highly individualized questions regarding whether the fire started in the dryer rather than elsewhere on the property, whether any fire that started in the dryer resulted from a design defect, and if so, what the defect is (an issue on which the various plaintiffs disagree). Importantly, presence is not causation.  Moreover, in four recent trials involving these types of allegations (Electrolux *prevailed* in all four trials), the cases turned on individual, site-specific evidence.  This underscores the critical role of causation based on the particular facts of each case, which thus drives discovery and varies in each case.

Ascertaining the cause of each fire requires localized, case-specific evidence from firemen and other first responders, fire marshals, claim adjusters, property owners and occupants, builders, and others familiar with the circumstances of the fire, post-fire investigations, and potential alternative causes such as property conditions and the dryer's installation, venting, use, and maintenance.  Despite claims to the contrary, each fire also involves unique expert testimony based on the specific circumstances of the fire and a detailed inspection of the particular dryer in question, which might be gas or electric, free-standing or stacked, recently manufactured or twenty years old, and sold under any number of models and brand names.   Additionally, causation itself is a question of state law, and those disparate causation standards will dictate discovery rulings based on relevance and legal standards for later consideration of summary judgment.

Apart from the lack of commonality, American Family's motion should be denied because many of the cases in question have been pending for years (some since 2008).  Of the

fifty subrogation and individual homeowner cases that American Family seeks to consolidate for pretrial purposes, seven have already been tried or settled, and five were just dismissed.[1] Discovery has been completed in eight more, and seven others will complete discovery this year. Of those cases, four have 2013 trial dates, and a fifth is expected to. Many other cases are well into discovery. American Family told the Wisconsin District Court last year that it would seek an MDL transfer, but then waited too long while each case marched toward conclusion pursuant to its own schedule.

Furthermore, discovery is already being coordinated—*including a discovery sharing agreement for all three American Family cases*. American Family is, therefore, in no position to complain about the current posture of these cases. Nor is any other plaintiff. Discovery in all the cases is streamlined given the predominance of local witnesses and individual, site-specific issues. If more coordination were necessary, any plaintiff in a jurisdiction with multiple cases could have taken steps to do so. That they have not further demonstrates that the parties have coordinated to the extent the individual nature of each of these cases permits.

American Family's inclusion of two putative class actions in its MDL transfer request alone mandates rejection of the motion because they are fundamentally incompatible with the other actions. The putative class actions involve different types of plaintiffs and different claims, and they implicate different case management concerns, including limits on pre-class-certification discovery (both fact and expert) that do not apply in the other actions.

## II.    <u>BACKGROUND</u>

Electrolux Home Products, Inc. ("Electrolux") manufactures clothes dryers for domestic and commercial use that have been sold under many brand names, including Frigidaire,

---

[1]    In addition, in a consolidated action by State Farm that involves multiple fires, twenty-one fire damage claims are in the process of being dismissed.

Kenmore, GE, Gibson, White Westinghouse, Crosley, Tappan, and Electrolux itself, and in a variety of models and platforms, including electric and gas models for each of the freestanding and laundry center (stacked washer and dryer) categories.

Several years ago, property insurance companies that paid their respective insureds' claims began to file subrogation actions against Electrolux, asserting ever-evolving theories that the dryers had defects and caused fires. Some subrogation cases involve multiple, unrelated fires, and others concern only a single fire. Some homeowners have also sued Electrolux directly. In addition, there are putative class actions pending in Arkansas and California. All the cases are at disparate stages and involve predominantly different fact patterns and disparate state laws. The class actions, in turn, involve legal theories that are different from one another and from the subrogation claims and the individual homeowner claims.

### A.    The Subrogation and Individual Homeowner Cases

The subrogation and individual homeowner cases are pending in a number of federal district and state courts. Each case is driven by individual, site-specific facts; the only common issue is whether the fires were caused by an alleged defect in a dryer manufactured by Electrolux. Nevertheless, causation in each case, which is dispositive, depends on facts unique to that case.

A threshold issue in each case is whether the fire started in the dryer or elsewhere on the property. That requires discovery from local fire fighters, local and state fire marshals, local building department personnel, and local claims adjusters. Depending on where the fire occurred (house, apartment, or store), whether the insured owned or rented the premises, and whether the dryer was already on the property when the insured took occupancy, discovery also may extend to present and former owners, tenants, landlords, property managers, and builders (who are sometimes sued).

Even if the fire did start in the dryer, the plaintiff must prove that the dryer was defective, which is by no means a common issue. The cases identified in American Family's motion involve different dryer models and designs made over a nearly 20-year period, and different alleged defects, as varied as allegedly defective screws, seals, and motors, as well as bearing failures, control panel flammability, and excess lint accumulation.[2] (*See* Ex. 1.)[3]

Even if the fire originated in the dryer, it must be determined whether the dryer was properly installed and vented in accord with the applicable building code, which is location specific. Also important is whether the insured followed the warnings and instructions provided with the dryer. These case-specific issues are crucial, as the failure to properly install, vent, use, and maintain the dryer is a common cause and predominantly an affirmative defense.[4] Accordingly, discovery often involves people who sold, installed, or serviced the dryer, and others familiar with how the dryer was used and maintained.

## 1. Discovery Has Focused on Local, Individualized Issues.

The insurer plaintiffs concede that almost all the relevant witnesses are local residents whose testimony would have no bearing on any other case. State Farm, for example, in its Rule 26(a)(1) disclosure in the largest case at issue (a consolidation of roughly 200 claims in the Northern District of Illinois), identified as potential witnesses present and former occupants,

---

[2] Excess lint accumulation is the most common theory, but it is also the most amorphous. Every dryer collects lint, and in almost every fire where a dryer is present, lint will burn regardless of cause. Thus, ascertaining the cause in cases where lint accumulation is the alleged culprit requires an especially thorough factual investigation, including of the installation, venting, use, and maintenance of the dryer, and of other property conditions that could have triggered the fire.

[3] Exhibit 1 is based on Exhibit 1 to American Family's motion but has been expanded to include disclosed experts, the dates, if known, for discovery cutoff, motion cutoff, and trial, and recent events, including the dismissal by Travelers of all of its cases.

[4] While improper installation and venting are often the culprits in any dryer fire, failure to clean the dryer, or drying flammable items like foam rubber, can also cause fires.

present and former owners, tenants, landlords, property managers, housekeepers, relatives, neighbors, appliance sellers, and service repair personnel, who State Farm said have relevant information regarding, among other things, the purchase, installation, operation, maintenance, and/or repair of the dryer at issue, the fire, and the resulting damages. (*See* Ex. 2.)[5] State Farm also identified private investigators or investigating police, firefighters, and building inspectors, who State Farm said have relevant information regarding, among other things, the cause of the fire, the fire scene, the dryer, the chain of custody of evidence, and damages. (*Id.*)

Moreover, American Family, like other insurer plaintiffs, has objected to Electrolux's discovery requests seeking information about the insurer's corporate strategy and knowledge, arguing with some success that discovery into the purportedly common issue of American Family's own view that dryers manufactured by Electrolux are defective is irrelevant and that discovery instead should be limited to claim-specific facts concerning each insured's underlying claims. (*See* Ex. 4, p. 7 (American Family objecting to request for discovery of its "analysis, including testing, of dryers manufactured by Electrolux").)

Likewise, State Farm objected to Electrolux's attempt to obtain discovery on such issues as dryer testing, arguing that such discovery "mis-frames all of the claims and defenses at issue by ignoring foundational principles of subrogation. The real rights at issue are not those of an insurance company, but rather, the rights at issue are those of the Subrogor [the insured who suffered the fire]." (*See* Ex. 5, pp. 2-3; *see also* Ex. 6, pp. 5-6.)

Likewise, Travelers Insurance Company has objected to Electrolux discovery requests concerning alleged dryer fires other than the specific fire at issue, arguing that, "If there was a

---

[5]    In *American Family a/s/o John Power and Debra Doll-Power v. Electrolux Home Prods. Inc.*, No. 1:10-cv-07864 (N.D. Ill.), for example—a case that settled earlier this year—American Family sued not only Electrolux, but also a local installer, ABT Electronics, alleging that the fire was caused by improper installation. (*See* Ex. 3.)

fire in another house and another expert who Travelers had retained or anybody else had retained in that case, it wouldn't be relevant to this dryer." (*See* Ex. 7, p. 7:13-15.) Travelers similarly asserted that "[Electrolux has] to make that determination from the nuts and bolts of that dryer, not from some other testimony in another case. We're here on this case, your Honor, just this case alone, just this dryer, just the [insureds]." (*Id.*, 7:21-24.)

In short, contrary to any contention that an MDL is warranted due to purported common issues about alleged defects in Electrolux-manufactured dryers, the insurers themselves have consistently argued that discovery in each case is inherently local. This is true of both local witnesses and experts. In those subrogation cases where expert witnesses have been designated, more than 29 experts have been identified, and only eight have been identified in more than one case.[6] Thus, the theory that an MDL transfer would streamline expert discovery is contradicted by the how the insurers in fact are litigating these cases.

### 2. Trial Has Focused on Local, Individualized Issues.

The predominance of individual issues is evident from the cases that have been tried. Not only has Electrolux prevailed at four of the five trials, but all of them have turned primarily on local evidence unique to the circumstances of each fire.[7]

In *Standard Fire Ins. Co. a/s/o Julie Newcomb v. Electrolux Home Prods., Inc.*, No. 08-CV-540 (W.D. Wis.)—a case where local fire respondents and investigators, among others, were deposed—the insurer alleged that a fire was caused by a defect that allowed excess lint to accumulate in the dryer's rear heater pan, and that the dryer had come with inadequate warnings.

---

[6]     These figures are derived by comparing expert witness designations noted in Exhibit 1.

[7]     Although consolidation would be only for pretrial proceedings, the cases that have been tried demonstrate that the cases turn on local, case-specific facts, not common issues, and develop in varied ways depending on the particular state's law on issues such as causation and affirmative defenses.

Electrolux contended that any lint build-up resulted from uncleaned debris and the condition of the plastic exhaust vent. Electrolux's expert witness testified that if the dryer had been properly vented, lint would not have accumulated in the heater pan. The jury found in favor of Electrolux.[8]

*State Farm Gen. Ins. a/s/o Mei Haroutounyan v. Electrolux Home Prods., Inc.*, No. EC053578—a Los Angeles case tried in June 2012—involved a fire that damaged a condominium and adjacent common areas. The insurer alleged that the dryer, a Kenmore gas model, allowed excess lint to accumulate behind the drum. In addition to the condo owners, at least 12 witnesses, including experts, were deposed regarding the installation, venting and condition of the dryer, the fire inspection, the dryer design, and the adequacy of Electrolux's warnings. Electrolux presented testimony that the venting was non-compliant with the California building code, causing it to clog, and that (apart from cleaning the internal lint filter) the owners ignored warnings to service and clean the dryer and exhaust system every 18 months. The jury found in favor of Electrolux.

*New Jersey Mfr. Ins. Grp. a/s/o Kecia Ellis and Kathleen Brand v. Electrolux Home Prods., Inc,* No. 3:10-CV-01597-AET (D.N.J.)—tried in April 2013—involved a fire that damaged the insureds' and their neighbor's houses. The insurer alleged that the dryer allowed lint to accumulate in a diffuser mounted to the rear wall of the dryer cabinet. Among the many witnesses deposed were a patrolman who responded to the fire, the Fire Marshal, and personnel that had repaired (but not cleaned) the dryer.[9] As in the *Haroutounyan* case, the insureds did not

---

[8]    American Family attaches an opinion in which another court conjectured that Electrolux had withheld evidence in the *Standard Fire* case. Electrolux's victory in three ensuing trials, however, negates the suggestion that *Standard Fire* was an anomaly.

[9]    Several Electrolux employees were deposed. Significantly, the depositions were, by agreement, coordinated for use in three pending cases.

have the dryer and exhaust system cleaned or regularly clean the lint filter. Evidence demonstrated that the fire had originated from lint that had accumulated in the base of the dryer rather than in the diffuser. The jury found in favor of Electrolux.

Most recently, *Travelers Prop. Cas. Ins. Co. a/s/o Aaron Anderson and Analiza Bernat v. Electrolux Home Prods., Inc.*, No. CV 12-5112-DMG (C.D. Cal.)—tried in July 2013—involved a Frigidaire free-standing gas dryer that allegedly caused a fire in the insureds' home. Travelers claimed that a design defect allowed lint to accumulate in the heater pan behind the dryer drum, which was ultimately ignited by the gas heat source. Electrolux contended, among other things, that the fire started outside the dryer and that the dryer burned because it was present, not because it was the cause. The homeowners and fire department personnel, among others, were deposed. The jury found that the design of the dryer did not cause the fire.[10]

As is clear from these trial cases, the predominant focus in each case necessarily is the unique circumstances of each fire, including property conditions and the installation, venting, use, and maintenance of the dryers. MDL transfer would not simplify discovery into the unique details of each fire.

### 3. Current Status of the Subrogation and Individual Homeowner Cases

American Family has identified fifty subrogation and individual homeowner cases for MDL transfer. As Exhibit 1 reveals, many of these cases were filed three, four, or even five years ago. Seven of the cases have already been tried or settled, and another five were just

---

[10] In addition to these four trials, there was a trial in Illinois state court in January 2013. In that case, *American Family Mut. Ins. Co. a/s/o/ Howard G. and Laura Kamerer v. Electrolux Home Prods., Inc.*, No. 2008 L 009809 (Cook Cty. Cir. Ct.), American Family alleged that a faulty gas valve exposed a secondary valve washer to constant flames, which in turn caused the dryer to overheat and ignite any combustible material within the dryer cabinet—a theory that has not been asserted in any of the other cases. That American Family prevailed on this unique theory further illustrates that alleged defect is not a common feature of the cases, but rather shows the diversity of claims and fact patterns in these cases.

dismissed (several of which had 2013 trial dates).[11]   Another eight have already completed discovery, and seven others will do so by year end.  Of those, four are set for trial this year, and a fifth is expected to be.  Many of the other cases are well into discovery.  Thus, many of the cases are substantially advanced, and would only suffer delay if they were now to be transferred.

Moreover, the discovery in these cases generally has been coordinated.  In three cases, insurers have been allowed to consolidate multiple claims in single lawsuits, including the consolidated State Farm case in the Northern District of Illinois that originally involved more than 200 fires.  The other two, filed by American Family in the Western District of Wisconsin and the Northern District of Illinois, were limited by court rulings to claims based on in-state fires in recognition of the fact that the claims are inherently local.  (*See* Ex. 8, 6:17-7:3.)[12]

Those rulings, although contested by Electrolux, have hastened the coordination of discovery insofar as the predominance of local, individualized issues will allow.  For example, there is already a sharing agreement that covers all three cases filed by American Family—the consolidated cases in the Northern District of Illinois and the Western District of Wisconsin, and an individual action in the Northern District of Ohio, *American Family Mut. Ins. Co. v. Electrolux Home Prods., Inc.,* No. 12-cv-03000.  Under this agreement, to the limited extent that documents and deposition testimony in any one of those cases would be relevant to another case, they freely can be used in the other cases.  Thus, it is hard to understand how an MDL transfer could improve efficiency in the American Family cases.

---

[11]    Travelers decided to dismiss five federal cases (and a state case) in light of Electrolux's recent trial victory in California.  The dismissal of those cases, which collectively sought more than $1.7 million in damages, refutes any notion that an MDL is necessary to resolve this litigation expeditiously.  Indeed, if all of the Travelers cases already were part of an MDL, the trial likely would not yet have occurred and it is likely that all the cases would remain pending.

[12]    These rulings post-date (and tacitly disagree with) the ruling in the State Farm consolidated case that allowed broader consolidation.  The instant motion by American Family appears to be a purely tactical attempt to circumvent those latter rulings.

Furthermore, Electrolux has produced in the State Farm consolidated case all of the documents it has produced in the American Family consolidated cases, and in all three consolidated cases Electrolux has produced deposition transcripts from individual subrogation cases. In many of the other cases, there have been combined depositions.

Electrolux also has agreed, on request, to reproduce documents that it had produced in other cases, including *Electric Ins. Co. a/s/o Beringer v. Electrolux Home Prods., Inc.,* No. 09-3792 (D.N.J.), and *The Charter Oak Fire Ins. Co. a/s/o Mavruk v. Electrolux Home Prods., Inc.*, No. 10-cv-11 (E.D.N.Y.). Discovery from these cases was produced in the consolidated cases.[13] In addition, in cases where the Grotefeld Hoffmann firm is counsel for the plaintiff insurer, the parties have frequently agreed that documents and depositions from the consolidated case can be used in the other cases.[14] In fact, in all of the subrogation cases, when a plaintiff has asked Electrolux to produce the documents it produced in other cases, Electrolux has agreed to the extent the cases involve the same dryer platform (either gas or electric) and airflow.

That said, to the extent plaintiffs believe more efficiency is needed, they have had other means available they did not pursue. For example, there are ten federal districts in which more than one subrogation case is pending.[15] All but one of those districts (the Northern District of Alabama) allow designating cases as related under rules far more lenient than those for obtaining an MDL transfer. Yet none of those plaintiffs have sought a related case designation, even

---

[13] Some of this cooperation also extends to pending state court cases, which of course are not affected by American Family's motion.

[14] The sharing agreement has certain limitations, such as obtaining State Farm's written approval. Electrolux offered Allstate this arrangement in *Allstate Ins. Co. a/s/o Martin v. Electrolux Home Prods., Inc.*, No. 1:11-cv-1616 (S.D. Ind.), which was settled before the parties reached an agreement on sharing discovery.

[15] Those districts are the Northern District of Alabama, the Central District of California, the Northern District of Illinois, the Northern and Southern Districts of Indiana, the Eastern District of Michigan, the District of New Jersey, the Eastern District of New York, the Northern District of Ohio, and the Eastern District of Pennsylvania.

where the same insurance company, represented by the same counsel, is a plaintiff in multiple cases (as in district courts in Illinois, Indiana and Ohio). Although Electrolux maintains that the cases would not qualify as related, the point is that if any plaintiff actually believes further coordination is necessary, it should attempt to do so locally before resorting to the drastic measure of an MDL transfer.[16]

### B.  Current Status of the Class Actions

American Family also seeks to transfer two putative consumer class actions, one in the Eastern District of Arkansas and one in the Central District of California. These cases range far wider than whether a defect caused someone's dryer to catch fire. The proposed class in the Arkansas case would include everyone in Arkansas who bought an Electrolux dryer that allegedly has a defective dryer drum—regardless of whether any damage has occurred.[17] The proposed class in the California case is even broader, including everyone in the country who owns an Electrolux dryer manufactured before 2010.[18]

The Arkansas case was filed a year ago, and was soon followed by the California case. Both courts already have invested substantial resources in managing the cases. Discovery covers a broad range of class-action specific issues that are not germane to the subrogation and individual homeowner actions, such as whether consumers may recover damages for the

---

[16]  The Eastern District of New York raised the idea *sua sponte* but then decided against it. *And in the Northern District of Illinois, American Family actually filed a request for related case designation but then apparently withdrew it.*

[17]  The full definition is "All persons in the State of Arkansas that purchased or otherwise acquired an Electrolux designed and/or manufactured clothes dryer primarily for personal, family, or household purposes, and not for resale, having a defective dryer drum."

[18]  The full definition is, in relevant part, "[A]ll persons in the United States who purchased or otherwise acquired an Electrolux designed and/or manufactured clothes dryer, manufactured prior to the Design Change in 2010, primarily for personal, family, or household purposes, and not for resale." A proposed damage subclass is limited to people who incurred property damage.

purchase of dryers that were never involved in a fire. Motions for class certification in each case will likely be filed by December 20, 2013.

## III.  ARGUMENT

MDL transfer requires a showing that (i) the common issues of fact are sufficient to warrant transfer, (ii) transfer would be convenient for the parties and witnesses, and (iii) transfer would promote judicial efficiency. 28 U.S.C. § 1407; *In re Plumbing Fixture Cases*, 298 F. Supp. 484 (J.P.M.L. 1968). The moving party has the burden of establishing each of these factors. *In re Insulin Mfg. Antitrust Litig.*, 487 F. Supp. 1359, 1361 (J.P.M.L. 1980). American Family has not done so.

### A.  Individual Issues of Fact and Law Predominate.

American Family posits six purported common issues in its motion. (*See* Motion, p. 4.) Five of them, however, are mere conclusory allegations that, collectively, amount to the simple assertion that the dryers at issue had a defect. And the sixth—whether the plaintiffs suffered damages as a result—is anything but common for the all of the reasons discussed herein.

Leaving aside the various defect theories alleged in these cases—and also that different models, formats and brand names of dryers over a nearly 20-year period are involved—the defect issue occupies a comparatively small part of discovery and trial in these cases. The primary issue always is causation, which depends on the origin of the fire (the dryer or elsewhere on the property), whether, if the fire started in the dryer, the dryer was defective, and whether, even if a particular dryer in a given case may be defective, it had been properly installed, vented, used, and maintained. All of these are individual, site-specific issues, as American Family and the other insurers argued when refusing to produce discovery concerning their corporate analyses of the dryers.

American Family notes that Electrolux is a defendant (not necessarily the only defendant) in all these cases, but that does not establish a predominate commonality. The question is not the number of defendants but rather the number of issues. Where individual issues predominate, the Panel has denied MDL transfer motions even where, as here, the same defendant was sued in all of the cases. *See, e.g.*, *In re: Nutella Mktg. and Sales Practices Litig.*, 804 F. Supp. 2d 1374, 1375 (J.P.M.L. 2011); *In re G.D. Searle & Co. "Copper 7" IUD Prods. Liab. Litig*., 483 F. Supp. 1343, 1344 (J.P.M.L. 1980); *In re Sears, Roebuck & Co. Emp't Practices Litig.*, 487 F. Supp. 1362, 1362 (1980); *In re Texas Instruments Inc. Emp't Practices Litig.*, 441 F. Supp. 928, 928-29 (J.P.M.L. 1977).[19]

Nor does the number of cases at issue warrant MDL transfer. In *In re Table Saw Prods. Liab. Litig.*, for example, the Panel denied MDL transfer of more than 40 cases involving table saw accidents where the plaintiffs alleged that the saws were defective because they lacked "flesh detection" technology. Despite the focus on a single alleged defect, the Panel held that MDL transfer would not serve the goals of Section 1407 because, among other reasons, "[e]ach action arises from an individual accident that occurred under necessarily unique circumstances."[20] *Id.*, 641 F. Supp. 2d 1384 (J.P.M.L. 2009); *see also In re: Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1376 (J.P.M.L. 2011) (denying five motions to transfer more than 20 cases involving same state statute); *In re Asbestos Sch. Prods. Liab. Litig.*, 606 F. Supp. 713, 713-714 (J.P.M.L. 1985) (denying motion to transfer 20

---

[19]    In fact, the Panel has observed that it can be easier for the parties to streamline on their own, without an MDL transfer, when the same defendant is involved. *See, e.g., In re Cable Tie Patent Litig*., 487 F. Supp. 1351, 1354 (J.P.M.L. 1980); *Sears, Roebuck*, 487 F. Supp. at 1364; *Texas Instruments*, 441 F. Supp. at 929.

[20]    Although the Panel in *Table Saw* noted that different manufacturers were involved—a factor that, as noted above, can cut both ways in MDL transfer analysis—the sheer variety of dryers here that were manufactured over nearly 20 years renders the cases here just as diverse as those in *Table Saw*.

cases); *In re Eli Lilly & Co. "Oraflex" Prods. Liab. Litig.*, 578 F. Supp. 422, 423 (J.P.M.L. 1984) (denying motion to transfer 27 cases); *In re U.S. Navy Variable Reinlistment Bonus Litig.*, 407 F. Supp. 1405, 1407 (J.P.M.L 1976) (denying motion to transfer 25 cases).

The relevant inquiry is not the number of cases or defendants, but whether common issues predominate in each case. Where they do not, MDL transfer must be denied. *See, e.g., In re Tampon Prods. Liab. Litig.*, 533 F. Supp. 1346, 1347 (J.P.M.L. 1982) (transfer denied as to 92 actions where Panel was "not persuaded that common questions of fact will predominate"); *In re Sears, Roebuck*, 487 F. Supp. at 1363 (transfer denied where "individual rather than common factual questions predominate"); *In re Pharm. Benefit Plan Adm'rs Pricing Litig.*, 206 F. Supp. 2d 1362, 1363 (J.P.M.L. 2002) (when actions share "a few factual questions, [but] unique questions of fact predominate" transfer is inappropriate); *Eli Lilly "Oraflex,"* 578 F. Supp. at 423 ("Although we recognize that the actions in this litigation involve some common questions of fact, we are not persuaded that these common questions of fact will, in the future course of this litigation, predominate over individual questions of fact present in each action.").

### B.     Transfer Would Not Increase Convenience for the Parties and the Witnesses.

Most witnesses are local residents who will be deposed locally no matter where the cases are domiciled. And party witnesses will continue to be deposed wherever the parties agree. MDL transfer would, however, require all of the locally-based counsel in these disparate cases (pending in districts from coast to coast) to travel to another forum to attend hearings and conferences. Thus, on balance, MDL transfer would decrease convenience.

### C.     Transfer Would Not Promote Judicial Efficiency Because Many of the Cases Are Substantially Advanced.

Many of the cases at issue were filed years ago. Some have settled or been tried or dismissed, and of the active cases, many will soon start trial or complete discovery. MDL

14

transfer at this juncture would disrupt progress in all of those cases, with no countervailing benefit.

Where, as here, an MDL transfer motion includes many substantially advanced cases, MDL transfer should be denied. *See, e.g., Eli Lilly "Oraflex,"* 578 F. Supp. at 423 (transfer denied where one case had been tried, one had settled, and "several other actions have been scheduled for trial within the next six months"); *Asbestos Sch. Prods.*, 606 F. Supp. at 714 (transfer denied where "one action included in the Section 1407 motion has already been tried, and several other actions have been scheduled for trial within the next six months"); *In re Reglan/Metoclopramide Prods. Liab. Litig.*, 622 F. Supp 2d 1380, 1381 (J.P.M.L. 2009) (transfer denied where many of the cases were two or three years old and significant discovery had occurred); *In re Chiropractic Antitrust Litig.*, 483 F. Supp. 811, 813 (J.P.M.L. 1980) (transfer denied because discovery was nearly complete in one action, and any benefit from transfer was not sufficient to justify the delay); *Cable Tie Patent Litig.*, 487 F. Supp. at 1354 (transfer denied because cases had been pending for three years); *In re Zimmer, Inc.*, 237 F. Supp. 2d 1376, 1377 (J.P.M.L. 2002) (transfer denied because, among other reasons, more than two years of discovery had already occurred); *Tampon Prod.*, 533 F. Supp. at 1347 (transfer denied because discovery was well advanced and trial in several cases was imminent); *In re Allianz Life Ins. Co. of N. Am. Deferred Annuity Mktg. and Sales Practice Litig.*, 517 F. Supp. 2d 1364, 1365 (J.P.M.L. 2002) (transfer denied because some of the cases were at significantly advanced stage); *In re Asbestos and Asbestos Insulation Material Prods. Liab. Litig.*, 431 F. Supp. 906, 909 (J.P.M.L. 1977) (transfer denied where it would delay discovery or trial of some cases).[21]

---

[21]    American Family's conjecture about additional lawsuits does not warrant transfer. *See, e.g., In re Air Crash Disaster at Anchorage, Alaska on Nov. 27, 1970*, 342 F. Supp. 755 (J.P.M.L. 1972) (transfer denied even though Panel expected additional actions to be filed).

**D.      Transfer Would Not Promote Judicial Efficiency Because of the Multiplicity of State Laws That Would Apply in a Single Proceeding.**

In diversity cases, product liability claims such as those here are governed by the law of the state in which the court sits, even after an MDL transfer. *See In re Darvocet, Darvon and Propoxyphene Prods. Liab. Litig.*, 856 F. Supp. 2d 904, 912-13 (E.D. Ky. 2012) ("A federal court sitting in diversity is bound to follow the law of the forum state. . . . It is not the place of this Court, sitting in diversity in an MDL proceeding, to announce a new rule of law." (internal citation omitted)); *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 897, 903 (E.D. La. 2007) ("[T]he MDL court must apply the law of the transferor forum, that is, the law of the state in which the action was filed, including the transferor forum's choice-of-law rules.").

The state laws governing causation are not uniform, and are most appropriately adjudicated by the courts of that state. *See, e.g.*, *Fisher v. Bristol-Myers Squibb Co.*, 181 F.R.D. 365, 368-69, 373 (N.D. Ill. 1995) (noting differences in state law of causation in the products liability context). In some states, product liability laws are statutory, and even in those the statutes are inconsistent, more so when filtered through the each state's common law.

New Jersey, for example, consolidates negligence, strict liability, and breach of warranty claims into a single "product liability action" under New Jersey Statute Section 2A:58C-1 *et seq.* *See Tirrell v. Navistar Int'l, Inc.*, 591 A.2d 643, 647 (N.J. 1991) ("The Product Liability Act no longer recognizes negligence or breach of warranty . . . as a viable separate claim for 'harm' (as defined in the Act) caused by a defective product."). Other states maintain separate causes of action for negligence and strict liability. *See, e.g.*, *Mikolajczyk v. Ford Motor Co.*, 901 N.E.2d 329, 345 (Ill. 2008) (setting forth elements for cause of action for strict liability in Illinois); *Cunis v. Brennan*, 308 N.E.2d 617, 618 (Ill. 1974) (setting forth elements for cause of action for negligence in Illinois). Some states require proof that a product is "unreasonably dangerous" for

a claim of strict liability; others do not. *Compare, e.g.*, *Cronin v. J.B.E. Olson Corp.*, 501 P.2d 1153, 1163 (Cal. 1972) ("We conclude that the trial court did not err by refusing to instruct the jury that plaintiff must establish that the defective condition of the product made it unreasonably dangerous to the user or consumer."), *with Mikolajczyk,* 901 N.E.2d at 345 ("Under Illinois law, the elements of a claim of strict liability based on a defect in the product are: (1) a condition of the product as a result of manufacturing or design, (2) *that made the product unreasonably dangerous*, . . ." (emphasis added)).[22]  In some states, contributory negligence is a complete bar to recovery; in others it may be only an offset or it may not apply at all.

If the motion were granted, the transferee judge would face a thicket of inconsistent state laws that would pose a problem not only for ruling on pretrial motions such as motions for summary judgment, but also in determining questions of relevance under each state's law for discovery purposes.[23]  Discovery disputes in these cases have mostly been over relevance, which depends on the elements of the claims and defenses.  Thus, to resolve discovery motions, the transferee judge would first need to master the state substantive law applicable to each claim. That very real consequence hardly advances efficiency.  It would be more efficient to litigate these cases where they are currently situated.  *See, e.g.*, *In re Title Ins. Real Estate Settlement Procedures Act (RESPA) & Antitrust Litig.*, 560 F. Supp. 2d 1374, 1376 (J.P.M.L. 2008) (denying MDL transfer and noting that "[t]hese actions, involving antitrust claims pertaining to

---

[22]    Time and space do not allow for a comprehensive survey of the differences in the various states' laws.  The above examples are merely illustrative.

[23]    American Family, citing *In re Merscorp Inc., Real Estate Settlement Procedures Act (RESPA) Litig.*, 560 F. Supp. 2d 1371 (J.P.M.L. 2008), contends that transfer is appropriate even where there are unique state law claims.  (Motion, p. 8.)  *Merscorp* is inapposite.  In that case, the plaintiffs moved to vacate a conditional order that would have transferred their two cases to an existing MDL; the court noted that, if the order were vacated, the only remaining issue in the MDL would be under the federal RESPA statute.  *Id.* at 1372.

the title insurance industry, encompass different regulatory regimes in the states in which actions are pending along with variances in insurance regulation and law in each state").

### E. Existing Cooperation in Sharing Discovery Obviates Any Need for an MDL.

As described above, there are already sharing agreements in place that not only pertain to all of the lawsuits filed by American Family itself, but effectively to all cases. Where, as here, there is already cooperation in discovery in multiple cases and suitable alternatives exist to minimize the possibility of duplicative discovery, MDL transfer is unnecessary. *See, e.g.*, *In re Shoulder Pain Pump-chondrolysis Prods. Liab. Litig.*, 571 F. Supp. 2d 1367 (J.P.M.L. 2008); *G.D. Searle & Co.*, 483 F. Supp. at 1345; *Asbestos Prods. Liab. Litig.*, 431 F. Supp. at 909.

Furthermore, if plaintiffs really believe that further coordination is necessary, they should seek localized solutions before resorting to the extreme measure of an MDL transfer

### F. At a Minimum, Coordination or Consolidation of the Class Actions with the Subrogation and Individual Homeowner Actions Is Unwarranted.

American Family is seeking to transfer not only fifty subrogation and individual homeowner actions, but also two putative class actions that reach far beyond the narrow circumstances of individual home fires. These two kinds of actions are fundamentally incompatible. They involve different claims (the class actions, unlike the other actions, are not solely based on property damage), different types of plaintiffs, and different discovery issues that cannot be coordinated effectively.

Moreover, class actions require far more judicial management than the other actions, and the judges in these class actions have already invested substantial time in doing so. It would be both inefficient and disruptive to transfer these actions to another district now, when the parties are in full scale discovery directed toward briefing on class certification.

### G.    A Word About American Family

Lastly, it bears noting that American Family, of all the plaintiffs involved, is perhaps least qualified to seek MDL transfer.  American Family is a plaintiff in only three cases, where discovery is already being shared.  American Family filed its motion after twice failing to persuade a district court that it should be allowed to assert claims based on out-of-state fires, and is using its motion to attempt to circumvent those rulings.  *Cf. In re Klein Litig.*, No. 3:12-01177, 2013 WL 50076, at *1 (J.P.M.L.  Feb. 7, 2013) (denying MDL motion because it was a subterfuge to manufacture personal jurisdiction and circumvent a possible unfavorable ruling).

Furthermore, in the time since American Family first raised the idea of an MDL transfer last year, cases across the country have progressed closer to trial (and American Family itself has repeatedly requested and obtained scheduling accommodations in its own cases).  It is too late for this motion, and American Family is the wrong party to be making it.

### IV.    CONCLUSION

For all the foregoing reasons, Electrolux respectfully requests that American Family's motion to transfer be denied in full.

Dated: August 8, 2013

Robert H. Shulman
David B. Killalea
Manatt, Phelps & Phillips, LLP
700 12th Street, N.W., Suite 1100
Washington, DC  20005
(202) 585-6500

Donald R. Brown
Manatt, Phelps & Phillips, LLP
11355 West Olympic Blvd.
Los Angeles, CA  90064
(310) 312-4000

*Attorneys for the Electrolux Companies*