WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
In re                                                   :      Chapter 11
:
SEARS HOLDINGS CORPORATION, *et al.*,   :      Case No. 18-23538 (RDD)
:
Debtors.[1]                                        :      (Jointly Administered)
:
------------------------------------------------------------x

## DEBTORS' SUPPLEMENTAL OBJECTION AND REPLY IN SUPPORT OF (A) DEBTORS' TWENTY-FIRST OMNIBUS OBJECTION TO PROOFS OF CLAIM AND (B) DEBTORS' TWENTY-THIRD OMNIBUS OBJECTION TO PROOFS OF CLAIM

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 130 West 42nd Street, 17th Floor, New York, NY 10036.

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of (a) the *Debtors' Twenty-First Omnibus Objection to Proofs of Claim or Ballots (Reclassified/Disallowed Claims)* (ECF No. 8451) (the "**Twenty-First Objection**") and (b) the *Debtors' Twenty-Third Omnibus Objection to Proofs of Claim (No Liability Claims)* (ECF No. 9284) (the "**Twenty-Third Objection**") and in reply to the responses filed by: (i) Patricia Adams ("**Adams**") (ECF No. 8473) (the "**Adams Response**"), (ii) Jooheee Paek ("**Paek**") (ECF No. 9304) (the "**Paek Response**"), (iii) Beau LeBaron ("**LeBaron**") (ECF Nos. 9336 and 9539) (collectively, the "**LeBaron Response**"), (iv) Puja Thakkar ("**Thakkar**") (ECF No. 9340) (the "**Thakkar Response**"), (v) Lorraine Majeski ("**Majeski**") (ECF No. 9315) (the "**Majeski Response**"), and (vi) Marshall Lindquist ("**Lindquist**") (ECF No. 9339) (the "**Lindquist Response**").[2]

### Reply

**A.    Adams**

1.    Adams filed proof of claim 9124 asserting a claim for $7,350 (the "**Adams Claim**"), seeking priority status pursuant to Bankruptcy Code section 507(a)(4) for $2,850 and administrative expense priority status pursuant to Bankruptcy Code section 503(b)(9) for $5,240.66.[3] The basis for the Adams Claim is a prepetition demand for the replacement value of a cooking range.

---

[2] Collectively, the "**Responses**" and the "**Respondents**."

[3] The Adams Response asserts a larger claim of $8,090.66.

2. The Twenty-First Objection sought, among other things, to disallow the Adams Claim.

3. Priority under section 507(a)(4) is reserved for employees who are entitled to prepetition employment benefits. *See e.g.*, 11 U.S.C. § 507(a)(4). Adams did not claim to be an employee of the Debtors, did not claim benefits, and, thus, did not and cannot satisfy her burden to entitle her to a priority claim under section 507(a)(4).

4. Priority under section 503(b)(9) is reserved for parties who provided "goods received by the debtor within 20 days before the date of commencement." 11 U.S.C. § 503(b)(9). Adams did not claim to provide "goods received by the debtor within 20 days before the date of commencement." Instead, Adams claims to have purchased goods from the Debtors prior to the 20-day window.

5. Adams is not entitled to an administrative or a priority claim. To avoid additional cost and delay, the Debtors request the Court reclassify the Adams Claim as a general unsecured claim at a sufficiency hearing, and the Debtors reserve the right to object to the merits of the Adams Claim at a later date.

**B.  Paek**

6. Paek filed proof of claim 12053 (the "**Paek Claim**") asserting a claim for $20,724 and seeking unspecified priority status for unpaid vacation hours.

7. The Twenty-Third Objection sought, among other things, to disallow the Paek Claim.

8. Bankruptcy Code section 507(a)(4), the provision that would afford priority to claims of employees, limits priority to claims for wages earned within 180 days before the

petition date and further limits claims to $12,850.  Paek was terminated in February 2016, well outside the 180-day window required for section 507(a)(4).  *See* Paek Response.

9. Paek is not entitled to a priority claim.  To avoid additional cost and delay, the Debtors request the Court reclassify the Paek Claim as a general unsecured claim at a sufficiency hearing, and the Debtors reserve the right to object to the merits of the Paek Claim at a later date.[4]

### C.    **LeBaron**

10. The Court established April 10, 2019, as the general bar date for prepetition claims in this cases.  *See* ECF No. 2676.

11. On April 13, 2020, a year after the bar date and six months after confirmation of the chapter 11 plan in these cases, LeBaron filed proofs of claim 24733 and 24734, each asserting a claim for $70,615.73 (the "**LeBaron Claims**"), seeking priority status for $13,650[5] pursuant to Bankruptcy Code section 507(a)(4), priority status for $20,000 pursuant to Bankruptcy Code section 507(a)(5), and priority status for $36,964.73 pursuant to Bankruptcy Code section 50(a)(4A) (*sic*).  The basis for the LeBaron Claims are for unpaid wages and benefits.

12. The Twenty-Third Objection sought, among other things, to disallow the LeBaron Claims on the basis that they were filed after the bar date without permission of the Court.

13. LeBaron failed to satisfy his burden to demonstrate that the LeBaron Claims should be allowed to be filed as late as they were.  The LeBaron Response does not allege any

---

[4] Paek was a part-time employee who was ineligible for severance benefits, including payment for unused vacation hours.  Even if Paek had been eligible for payment for unused vacation hours, the Debtors' policy would have limited her claim to a maximum of 120 hours compared to the 314 hours claimed.

[5] At the time the Debtors' cases were filed, the priority cap under section 507(a)(4) was $12,850.  Pursuant to section 104(c) of the Bankruptcy Code, the priority cap under 507(a)(4) remains $12,850.

facts sufficient to justify excusable neglect, as required by the Bankruptcy Code and case law in the Second Circuit.

14. The Debtors request the Court disallow the late-filed LeBaron Claims at a sufficiency hearing. The Debtors reserve the right to object to the LeBaron Claims on the merits at a later date.

15. To the extent the Court does not disallow the LeBaron Claims, the Court should disallow claim 24734 as duplicative of claim 24733 and reclassify $57,765.73 of claim 24733 as a general unsecured claim at a sufficiency hearing. LeBaron does not assert a claim that entitled to priority pursuant to section 507(a)(5), and section 507(a)(4) limits priority claims to $12,850. the Debtors reserve the right to object to the merits of the LeBaron Claims at a later date

**D.    Thakkar**

16. Thakkar filed proof of claim 16723 (the "**Thakkar Claim**") asserting a claim for $95,000, seeking priority status pursuant to Bankruptcy Code section 507(a)(4). The basis for the Thakkar Claim is unpaid wages and severance and alleged harassment.

17. The Twenty-Third Objection sought, among other things, to disallow the Thakkar Claim.

18. Bankruptcy Code section 507(a)(4) limits priority to claims for wages earned within 180 days before the petition date and further limits claims to $12,850. Thakkar claims wages and severance for a period well outside the 180-day window required for section 507(a)(4). *See* Thakkar Claim (asserting wage claims from 2014-2015).

19. Thakkar is not entitled to a priority claim. To avoid additional cost and delay, the Debtors request the Court reclassify the Thakkar Claim as a general unsecured claim at

5

a sufficiency hearing, and the Debtors reserve the right to object to the merits of the Thakkar Claim at a later date.

### E. Majeski

20. On May 7, 2019, Majeski filed proofs of claim 19385 and 19391 (collectively, the "**Majeski Claims**"), each asserting a claim for $9,938.00, seeking priority status pursuant to Bankruptcy Code section 507(a)(5). The basis for the Majeski Claims appears to be a claim for pension benefits.

21. The Twenty-Third Objection sought, among other things, to disallow the Majeski Claims on the basis that they were filed after the bar date without permission of the Court.

22. Bankruptcy Code section 507(a)(5) limits priority to claims for wages earned within 180 days before the petition date and further limits claims to $12,850. The Majeski Response states that Majeski was an employee of the Debtors between 1970 and 1990, well outside the window requirement for section 507(a)(4).[6]

23. Majeski is not entitled to a priority claim. To avoid additional cost and delay, the Debtors request the Court reclassify claim 19385 as a general unsecured claim at a sufficiency hearing, and the Debtors reserve the right to object to the merits of claim 19385 at a later date. The Debtors request that the Court disallow claim 19381 as duplicative of claim 19385.

### F. Lindquist

24. Lindquist filed proof of claim 9701 (the "**Lindquist Claim**") asserting, among other things, a claim for $12,850, seeking priority status pursuant to Bankruptcy Code section 507(a)(4).

---

[6] *See* Majeski Response ("I was also advised that this Benefit was only available to me at the time of initiating my full retirement benefits. As of February 23, 2021, I have not yet retired, and do not plan to initiate my retirement pension for another two years").

25. The Twenty-Third Objection sought, among other things, to disallow the Lindquist Claim.

26. Bankruptcy Code section 507(a)(4), the provision that would afford priority to claims of employees, limits priority to claims for wages earned within 180 days before the petition date and further limits claims to $12,850. Lindquist was terminated in June 2017, well outside the 180-day window required for section 507(a)(4). *See* Lindquist Response.[7]

27. Lindquist is not entitled to a priority claim. To avoid additional cost and delay, the Debtors request the Court reclassify the Lindquist Claim as a general unsecured claim at a sufficiency hearing, and the Debtors reserve the right to object to the merits of the Lindquist Claim at a later date

28. A claimant asserting priority bears the burden of establishing its entitlement to such priority.[8] Statutory priorities under the Bankruptcy Code are to be construed and awarded

---

[7] Although Lindquist was awarded an arbitration award during the 180-day priority period, under case law in this district, the facts that gave rise to the Lindquist Claim were already fixed when he was terminated in June of 2017, well outside the priority period, therefore giving rise to a matured and disputed claim, and thus is not entitled to priority. *See* Lindquist Response. *See In re Avaya*, 2019 WL 1858847 at *7 (Bankr. S.D.N.Y. 2019) ("[claimant's] contention that the $92,000 was not earned until the [lawsuit] was filed in September 2016, within the 180-day period, is wrong. He confuses a disputed claim with an unmatured claim. By June 2009, all of the facts giving rise to his employment discrimination claim (and [debtor's] alleged liability) were fixed. At that point, [claimant] held an unliquidated, matured, disputed employment discrimination claim and brought a lawsuit in 2012 on that claim.").

[8] *See, e.g., In re Bethlehem Steel Corp.*, 479 F.3d 167, 172 (2d Cir. 2007) ("The burden of proving entitlement to priority payment . . . rests with the party requesting it."); *In re Drexel Burnham Lambert Grp. Inc.*, 134 B.R. 482, 489 (Bankr. S.D.N.Y. 1991) ("The burden of establishing entitlement to priority rests with the claimant and should only be granted under extraordinary circumstances, to wit, when the parties seeking priority have sustained their burden of demonstrating that their services are actual and necessary to preserve the estate.") (quotation omitted).

narrowly and consistent with the intent of the Bankruptcy Code.[9] Moreover, Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). Upon an objection, the claimant has the burden to demonstrate the validity of the claim.[10]

Dated: October 28, 2021
      New York, New York

/s/ Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors
and Debtors in Possession*

---

[9] *See, e.g.*, *Howard Delivery Serv. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 667, 669 (2006) (noting the longstanding principle that administrative claims "must be tightly construed" to accomplish the Bankruptcy Code's objective of equal distribution to creditors); *In re Bayou Grp., LLC*, 431 B.R. 549, 558 (Bankr. S.D.N.Y. 2010) (emphasizing "the general rule that priorities must be narrowly construed in light of the presumption in bankruptcy cases that the debtor's limited resources will be equally distributed among all unsecured creditors"); *In re A.C.E. Elevator Co., Inc.*, 347 B.R. 473, 479 (Bankr. S.D.N.Y. 2006) ("Because the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, statutory priorities are narrowly construed.") (quoting *Tr. of Amalgamated Ins. Fund v. McFarlin's Inc.*, 789 F.2d 98, 100 (2d Cir. 1986)).

[10] *See Residential Capital, LLC*, 2016 WL 796860, at *9 (S.D.N.Y. 2016); *In re Arcapita Bank B.S.C.(c)*, 2013 WL 6141616, at *1 (Bankr. S.D.N.Y. 2013), *aff'd sub nom. In re Arcapita Bank B.S.C.(c)*, 508 B.R. 814 (S.D.N.Y. 2014); *In re Motors Liquidation Co.*, 2012 WL 1886755, at *3 (S.D.N.Y. 2012); *In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09 Civ. 2229 (DC), 2010 WL 234827, at *5 (S.D.N.Y. Jan. 22, 2010).