```
 1   UNITED STATES BANKRUPTCY COURT

 2   SOUTHERN DISTRICT OF NEW YORK

 3   Case No. 18-23538-rdd

 4   - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

 5   In the Matter of:

 6

 7   SEARS HOLDING CORPORATION,

 8            Debtor.

 9   - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

10   Adv. Case No. 20-06480-rdd

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

12   KMART HOLDING CORPORATION et al.,

13                 Plaintiffs,

14            v.

15   WINNING RESOURCES LIMITED,

16                 Defendant.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

18   Adv. Case No. 20-06594-rdd

19   - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

20   SEARS, ROEBUCK AND CO. et al.,

21                 Plaintiffs,

22            v.

23   CLEVA HONG KONG LTD.

24                 Defendants.

25   - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
```

1          United States Bankruptcy Court

2          300 Quarropas Street, Room 248

3          White Plains, NY 10601

4

5          November 10, 2021

6          10:05 AM

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21   B E F O R E :

22   HON ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   UNKNOWN

Page 3

1   HEARING re Motion for Omnibus Objection to Claim(s) /

2   Debtors Twenty-First Omnibus Objection to Proofs of Claim or

3   Ballots (Reclassified/Disallowed Claims) (ECF #8451)

4   Responses Filed:

5   A. Patricia Adams Response (ECF #8473)

6   B. Debtors' Supplemental Objection and Reply in Support

7   (ECF# 1002)

8   C. Reply of Beau LaBaron (ECF #10058)

9

10  HEARING re Motion for Omnibus Objection to Claim(s) /

11  Debtors Twenty-Third Omnibus Objection to Proofs of Claim

12  (No Liability Claims) (ECF #9284)

13  Responses Filed:

14  A. Response of Joonhee Paek (ECF #9304)

15  B. Response of Lorraine Majeski (ECF #9315)

16  C. Response of Lorraine Majeski (ECF #10044)

17  D. Objection of Beau LaBaron (ECF #9333)

18  E. Objection of Beau LaBaron (ECF #9336)

19  F. Objection of Marshall Lindquist (ECF #9339)

20  G. Objection of Beau Brady LeBaron (ECF #9539)

21  H. Debtors' Supplement Objection and Report in Support

22  (ECF #10002)

23  I. Reply of Beau LaBaron(ECF #10058)

24

25

Page 4

1    HEARING re Motion for Omnibus Objection to Claim(s) /

2    Debtors Thirty-First Omnibus Objection to Proofs of Claim

3    (Reclassify Secured Claims) (ECF #9658)

4    Responses Filed:

5    Debtors' Reply in Support (ECF #10024)

6

7    HEARING re Debtors' Thirty-Third Omnibus Objection to Proofs

8    of Claim (To Reclassify or Disallow Claims) filed by Garrett

9    A. Fail on behalf of Sears Holdings Corporation (ECF #9787)

10   Responses Filed:

11   Debtors' Reply in Support (ECF #10024)

12

13   HEARING re Motion for Omnibus Objection to Claim(s) /

14   Debtors Thirty-Sixth Omnibus Objection to Proofs of Claim

15   (Reclassifying Claims) (ECF #9975)

16   Responses Filed:

17   Response of Kingdom Seekers Inc. (ECF #10031)

18

19   HEARING re Adversary proceeding: 20-06480-rdd Kmart Holding

20   Corporation et al v. Winning Resources Limited

21   Motion to Dismiss Adversary Proceeding filed by Alexander

22   Tiktin on behalf of Winning Resources Limited. (ECF #11)

23

24

25

Page 5

1    HEARING re Adversary proceeding: 20-06480-rdd Kmart Holding

2    Corporation et al v. Winning Resources Limited

3    Declaration of David H. Wander, Esq. (related document(s)11)

4    filed by Alexander Tiktin on behalf of Winning

5    Resources Limited. (ECF #12)

6

7    HEARING re Adversary proceeding: 20-06480-rdd Kmart Holding

8    Corporation et al v. Winning Resources Limited Declaration

9    of Syed Mohi (related document(s)11) filed by Alexander

10   Tiktin on behalf of Winning Resources Limited. (ECF #13)

11

12   HEARING re Adversary proceeding: 20-06480-rdd Kmart Holding

13   Corporation et al v. Winning Resources Limited Objection to

14   Motion Plaintiff's Objection to Winning Resources Limited's

15   Motion to Dismiss (related document(s)11) filed by Steven J.

16   Reisman on behalf of Kmart Holding Corporation, Sears,

17   Roebuck and Co. (ECF #14)

18

19   HEARING re Adversary proceeding: 20-06480-rdd Kmart Holding

20   Corporation et al v. Winning Resources Limited IN SUPPORT OF

21   MOTION TO DISMISS THE COMPLAINT, PURSUANT TO RULE 7004 OF

22   THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND RULES 4(m)

23   AND 12(b)(5) OF THE FEDERAL RULES OF CIVIL PROCEDURE filed

24   by Alexander Tiktin on behalf of Winning Resources Limited.

25

```
 1    HEARING re Adversary proceeding: 20-06480-rdd Kmart Holding

 2    Corporation et al v. Winning Resources Limited Declaration

 3    of Terence G. Banich in Support of Plaintiffs' Objection to

 4    Winning Resources Limited's Motion to Dismiss (related

 5    document(s)14) filed by Steven J. Reisman on behalf of Kmart

 6    Holding Corporation, Sears, Roebuck and Co. (ECF #19)

 7

 8    HEARING re Adversary proceeding: 20-06480-rdd Kmart Holding

 9    Corporation et al v. Winning Resources Limited Supplemental

10    Declaration BY DAVID H. WANDER, ESQ. IN SUPPORT OF MOTION BY

11    WINNING RESOURCES LIMITED TO DISMISS THE COMPLAINT, PURSUANT

12    TO RULE 7004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

13    AND RULES 4(m) AND 12(b)(5) OF THE FEDERAL RULES OF

14    CIVIL PROCEDURE (related document(s)11) filed by David H.

15    Wander on behalf of Winning Resources Limited.(ECF #21)

16

17    HEARING re Adversary proceeding: 20-06480-rdd Kmart Holding

18    Corporation et al v. Winning Resources Limited Response

19    PLAINTIFFS RESPONSE TO SUPPLEMENTAL DECLARATION OF DAVID H.

20    WANDER IN SUPPORT OF MOTION BY WINNING RESOURCES LIMITED TO

21    DISMISS THE COMPLAINT (related document(s)21) filed by

22    Steven J. Reisman on behalf of Kmart Holding Corporation,

23    Sears, Roebuck and Co. (ECF #23)

24

25
```

Page 7

1    HEARING re Adversary proceeding: 20-06480-rdd Kmart Holding

2    Corporation et al v. Winning Resources Limited

3    Notice of Adjournment of Hearing (ECF #24)

4

5    HEARING re Amended Notice of Agenda / Notice of Amended

6    Agenda of Matters Scheduled for Hearing to be Conducted

7    Through Zoom on November 10, 2021 at 10:00 a.m.

8

9    HEARING re Notice of Agenda of Matters Scheduled for Hearing

10    to be Conducted Through Zoom on November 10, 2021 at

11    10:00 a.m.

12

13    HEARING re Adversary proceeding: 20-06594-rdd Sears, Roebuck

14    and Co. et al v. Cleva Hong Kong Ltd. Motion to Dismiss

15    Adversary Proceeding filed by Michael R. Herz on behalf of

16    Cleva Hong Kong Ltd. (ECF #4)

17

18    HEARING re Adversary proceeding: 20-06594-rdd Sears, Roebuck

19    and Co. et al v. Cleva Hong Kong Ltd. Affidavit Declaration

20    of Hong Chen (related document(s)4) Filed by Michael R. Herz

21    on behalf of Cleva Hong Kong Ltd. (ECF #5)

22

23

24

25

1    HEARING re Adversary proceeding: 20-06594-rdd Sears, Roebuck

2    and Co. et al v. Cleva Hong Kong Ltd. Notice of Hearing on

3    Motion to Dismiss Adversary Proceeding (related

4    document(s)4) filed by Michael R. Herz

5    on behalf of Cleva Hong Kong Ltd. (ECF #6)

6

7    HEARING re Certificate of Service Regarding Motion to

8    Dismiss Adversary Proceeding, Declaration in Support, Notice

9    of Hearing (related document(s)6, 5, 4) Filed by Michael R.

10   Herz on behalf of Cleva Hong Kong Ltd. (ECF 37)

11

12   HEARING re Adversary proceeding: 20-06594-rdd Sears, Roebuck

13   and Co. et al v. Cleva Hong Kong Ltd. Memorandum of Law

14   (related document(s)4) filed by Brigette McGrath on behalf

15   of Kmart Holding Corporation, Sears, Roebuck and Co.

16   (ECF #12)

17

18   HEARING re Adversary proceeding: 20-06594-rdd Sears, Roebuck

19   and Co. et al v. Cleva Hong Kong Ltd. REPLY OF DEFENDANT

20   CLEVA HONG KONG LTD. IN SUPPORT OF MOTION TO DISMISS

21   ADVERSARY PROCEEDING PURSUANT TO FEDERAL RULE OF CIVIL

22   PROCEDURE 12(b)(5) (related document(s)9, 4) filed by

23   Michael R. Herz on behalf of Cleva Hong Kong Ltd. (ECF #14)

24

25

Page 9

1    HEARING re Adversary proceeding: 20-06594-rdd Sears, Roebuck

2    and Co. et al v. Cleva Hong Kong Ltd. Affidavit DECLARATION

3    OF MICHAEL R. HERZ, ESQ. IN SUPPORT OF MOTION OF DEFENDANT

4    CLEVA HONG KONG LTD., TO DISMISS ADVERSARY PROCEEDING

5    PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(5)

6    (related document(s)14) Filed by Michael R. Herz on behalf

7    of Cleva Hong Kong Ltd. (ECF #15)

8

9    HEARING re Adversary proceeding: 20-06594-rdd Sears, Roebuck

10   and Co. et al v. Cleva Hong Kong Ltd. REPLY OF DEFENDANT

11   CLEVA HONG KONG LTD. IN SUPPORT OF MOTION TO DISMISS

12   ADVERSARY PROCEEDING PURSUANT TO FEDERAL RULE OF CIVIL

13   PROCEDURE 12(b)(5) AND DECLARATION OF MICHAEL HERZ IN

14   SUPPORT THEREOF (related document(s)15, 14) Filed by Michael

15   R. Herz on behalf of Cleva Hong Kong Ltd. (ECF #16)

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 10

```
 1    A P P E A R A N C E S :

 2

 3    WEIL, GOTSHAL & MANGES LLP

 4         Attorneys for the Debtors

 5         767 Fifth Avenue

 6         New York, NY 10153

 7

 8    BY:  DOMINIC LITZ

 9

10

11

12

13    JOOHEE PAEK, Pro Se

14    BEAU LEBARON, Pro Se

15    LORRAINE MAJESKI, Pro Se

16

17

18

19

20

21

22

23

24

25
```

Page 11

```
 1                    P R O C E E D I N G S

 2              THE COURT:  Good morning.  This is Judge Drain.

 3    We're here on Sears Holding Corporation, et al, omnibus

 4    hearing date.  This hearing is being held completely

 5    remotely primarily by Zoom for the government, unless

 6    someone doesn't have access to a device with a screen, in

 7    which case they're appearing by telephone.

 8              I have the Notice of Amended Agenda for today's

 9    omnibus hearing, and I'm happy to go down it in the order of

10    the agenda.  So the first matter on is that portion of the

11    Debtor's Twenty-First Omnibus Objection to Proofs of Claim

12    and the related supplement dated October 28th as it applies

13    to Patricia Adams.  It also deals with a claim filed by Beau

14    LeBaron, but that's also addressed in the next matter on the

15    calendar, which is the Debtor's Twenty-Third Omnibus

16    Objection, and I'll hear that objection then.

17              So is Ms. Adams on the phone or on Zoom?  Okay.

18    Do I have counsel for the Debtors?

19              MR. LITZ:  Good morning, Your Honor.  Dominic

20    Litz, Weil, Gotshal Manges on behalf of the Debtors.  Can

21    you hear me all right?

22              THE COURT:  Yes, I can hear you and see you fine.

23              MR. LITZ:  Thank you.

24              THE COURT:  So let me ask you, have there been any

25    further developments on this claim objection after the
```

1    response by Ms. Adams and then the Debtor's supplemental

2    objection that was filed on the 28th and served on the 28th

3    of October?

4           MR. LITZ:  There has not.

5           THE COURT:  Okay.  All right.  I will grant that

6    portion of the claim objection that seeks to reclassify the

7    priority claim asserted by Ms. Adams to a general unsecured

8    claim.  And when I say priority, I mean both her assertion

9    that the claim is entitled to priority under Section

10   507(e)(4), and treatment as an administrative expense under

11   503(b)(9) of the Bankruptcy Code.

12          It's clear from my review of her claim and her

13   response to the Omnibus Objection that this claim is not

14   entitled to priority under either of those two sections.

15   The burden of proof as to whether a claim is entitled to

16   priority status under Section 507 of the Bankruptcy Code is

17   on the Claimant.  See Bethlehem Steel Corp., 479 F.3d 167,

18   172 (2d Cir. 2007) and In re OldCo. M Corporation, 438 B.R.

19   775, 786 (Bankruptcy S.D.N.Y. 2010).

20          And in addition, the courts should construe

21   requests for priority treatment narrowly given the policy of

22   the Bankruptcy Code generally providing for pro rata

23   treatment of all unsecured claims except where Congress has

24   specifically delineated that priority treatment is

25   warranted.  See Howard Delivery Services v. Zurich American

1   Insurance Company, 547 U.S. 651, 667, and 669 (2006) and

2   Amalgamated Insurance Fund v. McFarland's, Inc., 789 F.2d

3   98, 100 (2d Cir. 1986).

4          Here, the asserted basis for priority treatment

5   isn't actually within Sections 5074, 503(b)(9).  Ms. Adams

6   did not provide goods and services to the Debtor.  Rather,

7   the Debtor provided services to her, and it's the claim for

8   those deficient goods and services, that is the basis for

9   her claim.  So she would not fit within the administrative

10  expense priority under 503(b)(9), nor would she fit within

11  507(a)(4), which is reserved for employees.

12         It's clear from her claim and her response that

13  she's not an employee and this is not a claim for pre-

14  petition wages or benefits.  She does not assert that this

15  service agreement was supported by any sort of deposit that

16  she would be entitled to having an administrative expense

17  claim for as limited by the applicable provision, which is

18  507(a)(7) of the Code, and she wouldn't fit into any other

19  provision of 507.

20         So you can submit an order reclassifying Ms.

21  Adams' claim as a general unsecured claim, and it should

22  state obviously that all of the Debtor's other potential

23  objections to the claim are fully reserved.

24         MR. LITZ:  Thank you, Your Honor.  We'll submit

25  the order.

1            THE COURT:  Okay.  All right.  The next matter on

2    the agenda addresses responses to the Debtor's Twenty-Third

3    Omnibus Objection to Proofs of Claim, which then was

4    supplemented by and in large measure replaced by the

5    Debtor's Supplemental Objection and reply dated October 28.

6    And there were responses to these by -- these Omnibus

7    Objections by a number of Creditors.  So I'm happy to go

8    through those in order.

9            The first one that we'll address is Ms. Paek,

10   Joonhee Paek, P-A-E-K.  I hope I'm pronouncing that

11   correctly.

12            MS. PAEK:  Yes.

13            THE COURT:  Ms. Paek, are you on the phone?

14            MS. PAEK:  Yeah.  No, I'm on the Zoom.

15            THE COURT:  Oh, there you are.  Very well.  I see

16   you.  Thank you.  Okay.  So Ms. Paek, what the Debtors are

17   seeking here for purposes of this hearing is to reclassify

18   your priority claim, because you've checked the box for

19   priority claim, to a general unsecured claim.  They're not

20   at this point disputing whether you have a claim against

21   Sears.

22            They just dispute that to the extent that claim

23   would be allowed, it's not a priority claim, i.e. that it

24   would be entitled to distributions in full before the

25   general unsecured Creditors are paid.  And the basis for

1    that assertion is that the claim you have for unpaid

2    vacation would not fall within the priority that Congress

3    provided for in either -- well, in Section 507(a)(4)(A) of

4    the Bankruptcy Code, which says that there's a fourth

5    priority unsecured claim.  It's capped in a dollar amount

6    for a person earned within 180 days before the date of the

7    filing of the bankruptcy petition or the date of the

8    cessation of the Debtor's business, whichever occurs first,

9    for, among other things, wages, salaries, and vacation.

10           So, to be within that priority, the vacation pay

11   covered in your claim and response would need to have been

12   earned before April 18 -- I'm sorry, between April 18, 2018,

13   and the date that the Debtors filed their bankruptcy case,

14   which was 180 days later.  And the Debtors contend that you

15   were not working at that time and therefore could not have

16   earned the vacation.  They state that you were -- you ceased

17   your employment in 2016 and therefore wouldn't fall within

18   this priority.

19           MS. PAEK:  So Your Honor, I actually worked the

20   time.  I cannot recall exactly back in 2014 or '13, and then

21   I switched my status to part-time.  And so those are

22   actually accumulated unpaid vacation time.  At the time, the

23   pharmacist -- I am a pharmacist, and in our region, we had a

24   (indiscernible) choice because I worked in a very remote

25   area.  And so I wasn't able to take vacation, so my district

1    manager told me that we can work things out and I can roll

2    over to the following years and whatnot, and I can always

3    use later years or later time.

4            And according to the California Labor Law, unpaid

5    vacation time, vacation hours, is earned income, and I am

6    entitled to get paid.  And so -- but unfortunately, my

7    district manager quit, and then the new manager got onboard.

8    And so I reached out to the employee -- the HR, and they

9    said just work with your DM, district manager, and see what

10   -- then this district manager had no idea how to handle

11   anything.  Then I changed so many district managers.

12   Thereafter, they actually laid me off because the pharmacy,

13   that store closing down.  And --

14           THE COURT:  When were you laid off?

15           MS. PAEK:  I believe it was 2016.

16           THE COURT:  Okay.

17           MS. PAEK:  Yeah, 2000 -- yeah, late 2016, I

18   believe.

19           THE COURT:  Okay.  So let me be clear.  You may

20   well have a claim for unpaid vacation as you noted, both

21   against Sears and under the California Labor Laws.  But this

22   objection is not about whether you have a claim.  It's about

23   whether that claim is entitled to payment ahead of the other

24   unsecured claims in the case as a priority claim.  And

25   Congress --

1          MS. PAEK:  Mm-hmm.

2          THE COURT:  -- in Section 507 of the Bankruptcy

3    Code listed a number of types of claims that have priority,

4    and otherwise all other types of unsecured claims, i.e.

5    claims that don't have a lien securing them, are general

6    priority.  And the only priority that your claim could fit

7    into, which is a claim for unpaid vacation or wages,

8    Congress limited.

9          It made the decision that the only priority claim

10   for wages or vacation is for wages or vacation -- and I'm

11   quoting from the statute now -- earned within 180 days

12   before the date of the filing of the petition in bankruptcy.

13   So you would have to have earned your vacation or wages

14   between April 18, 2018 and the bankruptcy petition date to

15   fit into this priority.

16          And it's clear to me from the facts that that

17   didn't happen, that you actually earned it sometime before

18   you were laid off, which was in 2016.  So this objection is

19   right in the sense that you don't have a priority claim, and

20   that's all it -- that's all the relief it seeks.  It doesn't

21   seek to disallow your claim, that Debtors are reserving

22   those rights.  But because they want to make distributions

23   on priority claims to get that out of the way, they brought

24   this objection so that your claim wouldn't be paid before

25   it's supposed to be paid.

1          MS. PAEK:  Okay, but I -- am I still be entitled

2     to get payment?

3          THE COURT:  You might.  They haven't waived their

4     right to object to your claim on the merits.  That's

5     reserved for the future.  And I have to say that the

6     likelihood of your getting paid on that claim in full has

7     been addressed in a number of hearings before me and in the

8     Debtor's Plan and Disclosure Statement.

9          The ability of general unsecured Creditors, and

10    that's where your claim would fall, to recover in full

11    really depends largely upon the recovery in ongoing lawsuits

12    against other parties like Mr. Lampert's company.  And those

13    are in still fairly early stages, and one can't really make

14    a prediction how those lawsuits will turn out, whether

15    they'll result in a big recovery, or alternatively no

16    recovery, or something in between.

17         So what the Debtors are trying to do is fix the

18    amount of claims that are entitled to 100 percent payment as

19    a priority claim because they may well have enough money to

20    make those payments in the near future as opposed to

21    payments on the general unsecured Creditors, which will have

22    to wait for litigation recoveries.

23         MS. PAEK:  Mm-hmm.

24         THE COURT:  Okay?

25         MS. PAEK:  Okay.

1              THE COURT:  So I'm sorry about this, but that's

2      the -- you know, that's how the Bankruptcy Code is

3      structured in terms of giving priority to certain types of

4      claims and not to most claims.

5              MS. PAEK:  All righty.  Thank you, sir.

6              THE COURT:  Okay.  So I will enter an order

7      granting the claim objection insofar as it sought to

8      reclassify this claim from priority to general unsecured.

9      And it'll reserve the Debtor's rights to object on other

10     grounds and your rights, obviously, to assert the claim as a

11     general unsecured claim.

12             MS. PAEK:  Okay.  Thank you.

13             THE COURT:  Okay.  All right.  The next claim is a

14     claim by Lorraine Majeski.  I don't know -- oh, I see you,

15     Ms. Majeski.

16             MS. MAJESKI:  Hello.

17             THE COURT:  Good morning.  And again, although

18     this claim objection was originally not one that sought only

19     to reclassify your claim, it raised issues about the bar

20     date and the merits of the claim.  At this point, based on

21     the supplement to the objection and the reply to your

22     response to their claim objection, the Debtors are seeking

23     only two things.

24             First, there are two claims filed.  There's one

25     that's number 19381 and there's a shortly later one filed as

Page 20

1    19385, and they object to the first one on the basis that

2    the second one supersedes it, and there shouldn't be a

3    double recovery on two of the same claims.

4           In addition to that, they seek to reclassify the

5    surviving claim, 19385, from priority to general unsecured.

6    I don't know if you were listening when I was talking to Ms.

7    Paek right before you, but again, the Bankruptcy Code

8    establishes priorities for certain types of claims if they

9    fall within the parameters in the section of the Bankruptcy

10   Code that does that.  And all other unsecured claims are

11   treated pro rata without that priority.

12          And so when I say "reclassify", there -- your

13   claim had asserted priority status, and the Debtors are

14   contending that it doesn't really fit within any priority

15   section of the Bankruptcy Code and therefore should be

16   treated as an unsecured claim.  I read your response, and I

17   think in large part you're looking just to determine what

18   your pension benefits are.  Am I right about that?

19          MS. MAJESKI:  No, not really.

20          THE COURT:  Oh, okay.

21          MS. MAJESKI:  What I was trying to do is get proof

22   from Sears because at the time that I actually entered the

23   claim, I couldn't find what I did with the letter.  Because

24   I wasn't able to collect the retirement benefit unless I

25   initiated my entire pension.  So I had asked for a letter

Page 21

1    from them, and I actually had gotten it in May of 2018 that

2    said if I retired in 2019, the amount would've been 9,900;

3    if I retired in '21, it was 12,000; if I retired in 2023, it

4    was 15,000.

5              So that was the letter I was seeking.  And I

6    looked at the claim because they said a duplicate, but in

7    essence, if the first one was for the one at that time that

8    I would've retired around that time that they fired -- filed

9    bankruptcy, it would've been one number, right?  But I

10   didn't know what the 15,000 would've been in '23 because I

11   couldn't find it.  So I mean, theoretically in my letter

12   that I wrote to you, I said, well, the second claim

13   theoretically then would be the difference between the 9,900

14   and the 15.

15             THE COURT:  So when did you retire?

16             MS. MAJESKI:  I haven't.  I'm still working.

17             THE COURT:  What --

18             MS. MAJESKI:  And so --

19             THE COURT:  But --

20             MS. MAJESKI:  -- my thing --

21             THE COURT:  No, not at Sears, obviously, right?

22             MS. MAJESKI:  Mm-hmm.  Right.

23             THE COURT:  You're not working at Sears.

24             MS. MAJESKI:  Right.  No, I'm not.

25             THE COURT:  But you're covered by --

1          MS. MAJESKI:  I retired in 1970, but I couldn't

2     take the supplement pension benefit until I fully retired.

3          THE COURT:  Right.

4          MS. MAJESKI:  So it's kind of like age

5     discrimination.

6          THE COURT:  Well --

7          MS. MAJESKI:  Wait a second, that's my money.

8          THE COURT:  Right.  But so when did you --

9          MS. MAJESKI:  But I -- I'm not --

10         THE COURT:  When did you leave Sears?

11         MS. MAJESKI:  1990.

12         THE COURT:  1990.  Okay.  So I think you have a

13    claim against your pension.  The pension has assets that are

14    set aside for you.  And to the extent that they're

15    deficient, there's a, as you note, a federal statute ERISA

16    that provides some protection for people who are

17    beneficiaries of a pension that is deficient.  But is this

18    pension a Sears pension or is it a pension -- is it a group

19    pension or a -- solely a Sears pension?

20         MS. MAJESKI:  It's a Sears pension.

21         THE COURT:  But it doesn't kick in until -- the

22    benefits don't kick in until you're retired generally even

23    if you're not --

24         MS. MAJESKI:  So --

25         THE COURT:  -- working for Sears anymore?

1              MS. MAJESKI:  This is a very unusual benefit

2     because it was a supplement.  In addition to my regular

3     pension because I was in a management position, this was --

4     I'm just going to say for the lack of a better term like an

5     added benefit.

6              THE COURT:  Okay.

7              MS. MAJESKI:  And it was a lump sum benefit that I

8     was entitled to.

9              THE COURT:  I got you.

10             MS. MAJESKI:  And that's what I am saying, hey,

11    wait a second, you know?  That still is a retirement

12    benefit.  I'm still entitled to it.

13             THE COURT:  Okay.  I understand.  So it's not a

14    multi-employer pension plan.  It's a Sears benefit.

15             MS. MAJESKI:  Correct.

16             THE COURT:  All right.  Okay.  So...

17             MS. MAJESKI:  And since it's not a wage, I don't

18    how that could be taken out as not a priority claim because

19    it's not a wage that I'm earned --

20             THE COURT:  No, that's right.

21             MS. MAJESKI:  -- it's a --

22             THE COURT:  But there's a separate category, the

23    wage indication, etc., that I read out before, which is

24    507(a)(4).  The next junior priority after that is

25    507(a)(5), which is for allowed unsecured claims for

Page 24

1    contributions to an employee benefit plan arising from

2    services rendered within 180 days before the date of the

3    filing of the bankruptcy case.  So again, it's that limited

4    period where there's a priority.  It's for contributions to

5    the plan for services rendered 180 days before the

6    bankruptcy petition date.  So you would be outside of that

7    period because you weren't rendering services to Sears 180

8    days before the bankruptcy since you stopped working for

9    Sears in 1990.

10             It doesn't mean, again, that you don't have a

11   claim.  It just means that you don't have a priority claim.

12   I was asking you the questions I was asking you because I

13   was hopeful that there might be assets in a pension plan

14   that you could look to, and I was going to tell Sears to

15   give you the information so that you could look to the

16   pension plan trustee to make a claim.

17             MS. MAJESKI:  Could I still look at it?  Because

18   maybe I'm incorrect.

19             THE COURT:  Well, I don't -- it doesn't sound like

20   there is such a pension plan, but I will ask the Debtors to

21   check.  And if there is such a plan that was actually set up

22   with the trustee and funded, and if not funded maybe ERISA

23   kicks in and the PBGC would owe you money.  So I'll ask Mr.

24   Litz, the Debtor's lawyer, to --

25             Well, first, Mr. Litz, do you have information

Page 25

1    about the specific benefit supplement that's the basis for

2    Ms. Majeski's claim?

3            MR. LITZ:   Your Honor, I don't have that

4    information offhand.   I'm happy to contact Ms. Majeski --

5            THE COURT:   Right.

6            MR. LITZ:   -- after this hearing in the next day

7    or so --

8            THE COURT:   Right.

9            MR. LITZ:   -- with supplemental information.

10           THE COURT:   So I -- Ms. Majeski, Mr. Litz is going

11   to contact you and get more information about this

12   supplemental benefit and see -- for this purpose, to see

13   whether there -- it was set up as a -- like a pension plan

14   with a separate trustee and separate assets.   And if that's

15   the case, then he'll put you in touch with the trustee.

16   There may not be one.   It may not have been set up like a

17   pension plan with a trustee and separate assets and separate

18   funding.   But to the extent it is, then I'm directing the

19   Debtor to provide you the information on who that trustee is

20   or -- you know, so that you can talk to them.

21           But as far as a claim against Sears is concerned,

22   while it may be a claim, and the Debtors are reserving their

23   rights on that, and you're reserving your rights on that, it

24   is not a priority claim.   It doesn't fit within the specific

25   priority that Congress set up for contributions to an

1    employee benefit plan.  Because again, it's a priority only

2    if it arises from services rendered within 180 days before

3    the bankruptcy filing date, and there were no services

4    rendered to the Debtor during that period.

5              And again, as I said at the beginning of this

6    hearing, priorities are to be construed carefully and

7    narrowly because there's a general policy that's only varied

8    by the specific statutory sections that give priorities in

9    favor of all unsecured Creditors being treated the same as

10   opposed to, you know, some leaping ahead of others.  Except

11   where, again, Congress says they can, and you don't fit into

12   that section, which would be the only applicable one here.

13             So I will grant the supplemental objection.  It

14   does appear to me that your second claim subsumes the full

15   amount of your claim.  It just needs to be fixed.  The

16   dollar amount needs to be fixed.  And the fact that I would

17   disallow the earlier claim as duplicative doesn't prevent

18   you from fixing that dollar amount.  At a minimum, it's the

19   amount that would've been in that claim.  But if you figure

20   out there's more owed based on your actual retirement date,

21   then that would be the amount of your claim.

22             MS. MAJESKI:  How would I go about adjusting that?

23             THE COURT:  Well, if you want to spend the time to

24   do that, you would get that information from Mr. Litz.

25             MS. MAJESKI:  I already have the letter stating

 1    what it would be in 2023 --

 2                THE COURT:  Oh, okay.

 3                MS. MAJESKI:  -- and the exact amount.

 4                THE COURT:  All right.

 5                MS. MAJESKI:  Yeah.

 6                THE COURT:  So you have that.  So --

 7                MS. MAJESKI:  And he has it as well.

 8                THE COURT:  All right.  So that's fine.

 9                MS. MAJESKI:  The other thing --

10                THE COURT:  But again, unfortunately, and this is

11    what I told Ms. Paek before you, at this point in the case,

12    the Debtors really are not focusing on fixing the amount,

13    the allowed amount, of general unsecured claims.  Because

14    it's possible -- and I hate to say this, but it's possible

15    that holders of general unsecured claims will recover

16    nothing or very little.  It all depends on the litigation

17    claims.

18                So they're spending their money, which actually

19    ultimately comes out of the Creditors because you know, it's

20    money being spent on fixing priority claims because those

21    are claims that look like they will be paid in full.  And so

22    I don't think you should assume that the work to be done on

23    the exact amount of your claim will be done soon.  They'll

24    do that --

25                MS. MAJESKI:  And --

```
 1              THE COURT:  They'll do that when it looks like
 2    there are meaningful assets to distribute.
 3              MS. MAJESKI:  I understand.  Can I raise a
 4    concern?
 5              THE COURT:  Sure.
 6              MS. MAJESKI:  So I had gotten a letter dated
 7    October 4th from Sears, and in this letter, they said that
 8    PBG and C had already decided that I wasn't entitled to
 9    this, but that's not what you're asking Mr. Litz to do.
10              THE COURT:  Well, maybe it is.
11              MS. MAJESKI:  I'd like to know --
12              THE COURT:  No, it may be.  I want them to look
13    into the status and really the nature of this benefit.  And
14    if it is set up as a pension covered by ERISA, then to put
15    you in touch with the trustee.  If they've already done
16    that, then Mr. Litz will look into that, and conclude that,
17    you know, it really wasn't the pension and there is no
18    trustee and maybe that's what this letter is about.
19              Then, you know, he'll explain that to you, but I'm
20    not ruling anything as to your rights under ERISA or the
21    like.  I just want to -- I want you to have more information
22    as to whether there is a -- you know, a trustee for this
23    plan and assets for it.
24              MS. MAJESKI:  I would really like to know how that
25    supplemental benefit was set up.  So thank you so much, Your
```

1    Honor.

2             THE COURT:  All right.

3             MS. MAJESKI:  I really do appreciate it.

4             THE COURT:  Okay.  Very well.  So I --

5             MS. MAJESKI:  Okay.

6             THE COURT:  So the Debtor's lawyer will send me an

7    order that grants the claim objection as follows.  It

8    disallows the first claim filed, 19381 as duplicative of the

9    remaining claim, 19385.  And all of the Debtor's rights and

10   all of your rights in respect to that surviving claim are

11   fully reserved, except that it also reclassifies that claim

12   as a general unsecured claim, not a priority claim.  Okay.

13            The next claim objection, and this is also an

14   objection to two claims, is to the claim of LeBaron, Beau

15   LeBaron, Beau LeBaron.

16            MR. LEBARON:  Yep, I'm right here, Your Honor.

17            THE COURT:  Good morning.  And --

18            MR. LEBARON:  Good morning.

19            THE COURT:  -- it similarly addresses or seeks two

20   forms of -- actually, three forms of relief.  First, it

21   seeks to disallow the earlier filed claim as duplicative of

22   the other claim.

23            MR. LEBARON:  Right.

24            THE COURT:  And second, seeks a determination

25   that, to the extent that the claim was filed after the bar

1   date for pre-petition claims, that the pre-petition claims

2   in the proof of claim be disallowed as untimely filed.  And

3   then also objects to the priority of the claims to the

4   extent that they would not fit into either Section 507(a)(5)

5   or 507(a)(4) of the Bankruptcy Code.  I think that -- and I

6   have Mr. LeBaron's responses, and I think one actually came

7   in recently.

8           MR. LEBARON:  Yeah.

9           THE COURT:  I want to --

10          MR. LEBARON:  Sorry about that.

11          THE COURT:  No, that's fine.  I want to first

12  address the bar date issue.  The -- as I read the claims --

13  this is more of a question for Mr. Litz than for you, Mr.

14  LeBaron.  As I read the claim, only a portion of it is for

15  the pre-bankruptcy period, the period before the bankruptcy

16  petition date, which was October 15, 2018.  The attachment

17  to the claim lists a lot of commissions with respect to

18  sales occurring from October 16th, which would've been a day

19  after the petition date, and then further into 2018.

20          So this is really, again, a question for the

21  Debtor's lawyer.  I think the whole claim would be

22  disallowed for having been filed after the bar date for pre-

23  petition claims, right?  It's just that portion that's pre-

24  petition that would be disallowed.

25          MR. LITZ:  That's correct, Your Honor.

1          THE COURT:  Okay.  And then as far as the -- as

2     that is concerned, Mr. LeBaron, I really didn't see a basis

3     in your responsive papers to the objection.

4          MR. LEBARON:  Can I give you some just -- one bit

5     of input?

6          THE COURT:  Well, I want to go through --

7          MR. LEBARON:  (Indiscernible)

8          THE COURT:  Because I -- there are multiple

9     objections to the claim.  I just want to focus on why the

10    claim was filed late, and it was filed late.

11         MR. LEBARON:  Okay.

12         THE COURT:  It was filed on April 13, 2020 when

13    the bar date was April 10, 2019.  So it was over a year

14    after the bar date, and actually six months after the plan

15    was confirmed.  So that's what I want to focus on first, why

16    was it filed late?

17         MR. LEBARON:  Well, I was obviously a project

18    consultant from 2018 to -- is it too loud, you guys?  I'm

19    sorry if it is.

20         THE COURT:  No, I can hear you.

21         MR. LEBARON:  I was a project consultant from 2018

22    in February until the bar date or the actual filing date

23    10/15/2018.  And up to that point, there was a lot of, I

24    guess, vendors walking, having problems, and I was hit -- I

25    was actually sent to you by the Labor Board.  If you know

1    the facts in my original plan paperwork, there is 17

2    violations of the Labor Law in California that apply here.

3              Basically, I didn't think I could come to this

4    case.  I thought I was out of luck.  And I went to the Labor

5    Board for transform and for an apportion of transform of me.

6    The Labor Board then, after looking at all the stuff I had,

7    said, well, wait, this part goes before the filing date for

8    Sears, so it could be possible.  And then when we talked

9    more an looked into it, we found all the violations.  They

10   felt -- they sent me to you with this number.  I didn't come

11   to you with this number.  I didn't come to you with this

12   number.  They sent me here saying this is the number that

13   you should be asking for.

14             Now, there is $8,000 in penalties included in that

15   total number that needs to probably be removed, and I can

16   (indiscernible) Mr. Litz about that.  I just didn't know.  I

17   have to say excusable neglect because I was working.  All

18   the bar dates I was an employee selling, generating revenue

19   for the Debtor because I was still employed from them up

20   until 6/9/2019.  I have paperwork that says I was let go,

21   terminated, on 6/12/2019.

22             Now, they say I was leased to a transform, but I

23   was an employee of Sears all the way through.  So on the bar

24   date, the 22nd, I was actually out selling a project for

25   generating revenue, thus helping them.  And in this

Page 33

1    shortfall of that part after the filing date, all the

2    dollars that I'm trying to talk about are basically due to

3    the fact that the Debtor's license was suspended for some

4    part of that time.  They couldn't operate.

5           I wasn't told this.  I'm required to go to their

6    appointments and sell and bring money in, yet they are not

7    required to have a license in the state of California.

8    They're not required to follow the law, and they're not

9    required to pay me for those projects because six months

10   later they canceled them all because they transform -- they

11   go to transform, and I don't get paid.  I just get let go,

12   terminated, and that's where I come back with this number.

13          Now, I have to say I'm not a lawyer and I've never

14   done this before.  This is -- I guess the word -- term -- I

15   could say is excusable neglect because truthfully, I was the

16   (indiscernible) employee.  I didn't know on the 22nd that I

17   was going to have this problem on June 19th.

18          THE COURT:  Well --

19          MR. LEBARON:  I was told I was going to be paid.

20          THE COURT:  Well, I guess that's the question I

21   have, which is when the commissions accrued --

22          MR. LEBARON:  Biweekly.

23          THE COURT:  Well, let me -- I'm just -- I'm going

24   to focus in on the claim.

25          MR. LEBARON:  Okay.  There's a compensation

1   handbook from Sears, from the Debtor, called --

2            THE COURT:  No, I know.

3            MR. LEBARON:  -- the 1591.

4            THE COURT:  I'm sorry.  I just --

5            MR. LEBARON:  Okay.

6            THE COURT:  You can't see me, but --

7            MR. LEBARON:  No problem.

8            THE COURT:  -- I'm looking at the claim.  They

9   start I think -- I think the earliest ones --

10           MR. LEBARON:  April 13th.

11           THE COURT:  April 13 of 2018.

12           MR. LEBARON:  Correct.

13           THE COURT:  And then they go through October 13,

14   2018.  So --

15           MR. LEBARON:  Right.  And I do apologize to the

16   Court.  I know I sent a lot of paperwork to all of your

17   people --

18           THE COURT:  No, that's fine.

19           MR. LEBARON:  -- and all your people that work

20   there.

21           THE COURT:  That's why I'm just focusing on that

22   period.  I -- having listened to you carefully, I think what

23   you're saying to me is that you didn't file a claim by the

24   bar date because you felt that you were going to be paid on

25   these amounts, on these commissions.

Page 35

1          MR. LEBARON:  Correct.

2          THE COURT:  And but --

3          MR. LEBARON:  Yeah.

4          THE COURT:  But when would you normally be paid on

5    them?  For example, one back from April or May, when would

6    you be normally paid on those commissions?

7          MR. LEBARON:  Well, they -- when I first attempted

8    to, with my manager from the LA office here in California, I

9    was told that I couldn't -- I could not regain on that.

10   However, then I was told later on in May of 2019 by

11   management to fill out these claim forms, not these forms,

12   but separate forms from within the company, to regain that

13   money.  Because they said you can get it back --

14         THE COURT:  Okay.

15         MR. LEBARON:  -- and that's when I said, okay,

16   I'll try, but then I was terminated.

17         THE COURT:  But that was --

18         MR. LEBARON:  And --

19         THE COURT:  But I'm just focusing on the bar date

20   and then --

21         MR. LEBARON:  Well, the bar date -- here's the

22   thing.  Like with the bar date, and I understand what you're

23   trying to say.  I really would want to find out is if my

24   thinking is wide and respond.  There was only two weeks.  At

25   that point, I was under the impression I could not get my

Page 36

1   commissions reinstated that they took from me, which amount

2   to what's in their own policy deductions that are basically

3   beyond my control.

4           So my position is to sell interiors.  I sold

5   kitchens.  I sold $1 million in kitchens.  I lost about

6   $282,000 in kitchen revenue, which ended at digging my

7   commission throughout the entire period.  Now, that was

8   really -- the fallout happened after 10/15.  On the bar

9   date, I wasn't experiencing the deductions in my paycheck

10  until early February.  So February, the first couple of

11  weeks of February, I didn't get a check.

12          I talked to a supervisor.  Then the 19th passes,

13  the 22nd passes, and that day -- as a matter of fact, I was

14  actually out sick.  I got bit by a brown recluse and my hand

15  was like the size of a softball.  But here nor there, I

16  didn't even know at that point I had a claim.  I knew that

17  they had a claim that they sent me.  I figured, okay, you

18  just leave it in and it's going to go through.  It's going

19  to pass through, in other words, like a --

20          THE COURT:  Can I -- when -- you frequently --

21  before the items that are on this proof of claim that are

22  listed as being unpaid, how frequently would you get paid by

23  Sears?

24          MR. LEBARON:  That's actually included on those

25  two packets I first initially gave you on 4/13/2020.

1  There's a form -- there's a sheet in there that has all my

2  paydays.  Every -- biweekly.

3          THE COURT:  It's biweekly, right?

4          MR. LEBARON:  Yeah, and California law, it's

5  required that way so if you --

6          THE COURT:  All right --

7          MR. LEBARON:  -- sell --

8          THE COURT:  -- so --

9          MR. LEBARON:  -- it's a two-week period.

10          THE COURT:  So, it's biweekly and it's based on a

11  salary or based on commissions?  It's the latter, right?

12          MR. LEBARON:  It's based on a commission, but in

13  California, they call those wages and --

14          THE COURT:  Okay.

15          MR. LEBARON:  -- after the fact.

16          THE COURT:  So, if you -- why would you not know

17  shortly after, you know, let's say the first one of these

18  missed payments is in April of 2018.  Why would you not know

19  that it was missed?

20          MR. LEBARON:  I can tell you why.  The manager in

21  my office collected pay stubs.  Right?  You put them in an

22  envelope and then you put them in his desk, in a file

23  cabinet somewhere, so we just got everything electronically

24  transferred to your account.  I never got a pay stub until I

25  started asking these questions about this, because it came

Page 38

1    late in the year.  I said, these guys are going to be -- if

2    I'm going to come to the new company, what happens to those

3    claims I filed with the company already.

4            They said, yeah, they're going to go through.  You

5    have to go through them with a manager.  That was just -- I

6    mean, you've got to realize my position was every day on the

7    field, three appointments a day from New York to San Diego

8    to Santa Barbara.  I was on the road.  So, there was like,

9    when the check arrived in your account, all you know is the

10   money got there.  I would go back and argue.  I argued for

11   months about this with my managers, and they hated me at the

12   end because I honestly -- every time I saw a deduction, I

13   was like, what's this for.

14           There was nothing on my pay stub with that and I

15   have now -- it took me two years to get the pay stubs.  I

16   didn't get those until February 25th, 2021.

17           THE COURT:  But wouldn't you know that you --

18           MR. LEBARON:  They withheld my pay stubs for that

19   long.

20           THE COURT:  How much -- are there things -- are

21   the items on the proof of claim that weren't being paid

22   before the petition date?  Were there other amounts that

23   were paid during those pay period, during the petition --

24           MR. LEBARON:  Well, yes.  There's the basic --

25   what happens is that these people, they have a policy where

1    you start a job.  It gets measured.  It gets recapped and

2    then the installer goes in and starts.  Once that happens, I

3    should be clear from deduction unless a gross mistake

4    happens, because there's two measures.  That second measure

5    keeps me -- it goes to RTP status.  It's in their

6    compensation book.

7            That's one of their policies and the point is, is

8    that I get dinged every time, for every job I sell and

9    because I sell a lot more jobs, there's always mistakes, but

10   the point is, these mistakes come at the very end when I

11   have nothing to do with the project, so when it's beyond my

12   control, in California law and in their own policy book, I

13   should not be getting dinged and that was my point all

14   along.  They go --

15           THE COURT:  I'm just --

16           MR. LEBARON:  -- as far as deducting an entire

17   check.

18           THE COURT:  -- focusing on whether there was

19   excusable neglect at this point and what --

20           MR. LEBARON:  Okay.

21           THE COURT:  What I'm still trying to understand

22   is, normally --

23           MR. LEBARON:  So, you're wondering, why I didn't

24   file a claim --

25           THE COURT:  Let me finish, because I'm going to

```
 1   try to ask this question better than I asked it before.

 2   Normally, someone that gets a biweekly payment pretty much

 3   expects to get dollar X, right?  And if they don't get

 4   dollar X, a red flag goes up and they say why --

 5            MR. LEBARON:  Right.

 6            THE COURT:  Why am I not getting what I'm owed?

 7   Why am I getting --

 8            MR. LEBARON:  Okay

 9            THE COURT:  -- you know, instead of X, why am I

10   getting X minus, you know, $5,000.

11            MR. LEBARON:  I have a very good answer for you.

12            THE COURT:  Okay.

13            MR. LEBARON:  I have a very straight answer for

14   you.  Your Honor, I had -- I was one of the -- it may not

15   seem like it now, but I was one of the better reps for

16   interiors then.  I was selling, like -- my first month out,

17   I sold $142,000.  Right?  My first month.  That was a lot

18   for that -- for my area.  It was a pretty good number.  The

19   next month, was $116,000.  Basically, what happened was I

20   was making money starting in July.

21            Those checks started rolling in for me.  My mom

22   had breast cancer.  I was basically taking care of her and

23   also working full time, selling and making my numbers.  When

24   I had a chance to stop and slow down and look at it, it was

25   already mid-October, because I stopped to look at it because
```

Page 41

1    suddenly October came and my numbers went like this, and I

2    was still telling.  I couldn't figure out why checks were

3    disappearing.

4             Fourteen checks, I didn't get paid for throughout

5    that period, after the petition date, and that's when I

6    didn't think about it, because I was like, you know, I'm

7    going to try to stay on for Transform.  I want to be part of

8    the new company, but I was also bugging management about my

9    pay, and they would say -- waving me off, saying, hey, just

10   to run your leads and come back, we'll talk about it.

11            So, I did.  I did what management asked me to do.

12   I probably did the wrong thing by not saying anything, but I

13   wanted to keep my job because I felt if I made a noise, I

14   would be fired and I loved what I did.

15            THE COURT:  And you say they told you that

16   sometime, when, after the bankruptcy case?

17            MR. LEBARON:  Oh, my gosh, I think the first time

18   I got written up was December because I didn't make my

19   numbers and that was basically because of fallout in clients

20   and I just went in saying look, I got docked for $1,000.

21   And they said, don't worry about it.  You know, we're moving

22   to be moving to service.  So, you have to realize that

23   during that period, service was happening or the bid was out

24   there, right?

25            That bid, we were told we were going somewhere

1   else and starting something new and that got really dropped

2   and the whole ship -- department got, I believe from that,

3   that whole transaction, I'm sorry to say, I think that's

4   what really messed up my situation.  There was a walkout.

5          THE COURT:  But when --

6          MR. LEBARON:  The people above me were responsible

7   for my check were gone.

8          THE COURT:  When -- I mean, look, the bar date

9   order is in February and the bar date is April 2019.  What

10  were you -- what happened between February and April that

11  cause you not to file a claim?

12         MR. LEBARON:  Excellent question.  There was

13  somebody that was above me that was my project coordinator

14  who was responsible for making sure I would get paid, and my

15  projects moved.  He quit.  He quit in December.  They hired

16  someone in January who didn't work out and who did nothing.

17  I didn't get a check in January, all of February, half of

18  March, and all of April.  Not one check.  I got expense

19  checks, mind you, for mileage, right, for going everywhere,

20  but I didn't get a single check while selling over $299,000,

21  which I would've made around -- I mean, they paid me $9,000

22  that year.  I sold $399,000 in projects.

23         THE COURT:  But that's not a good fact for you on

24  the bar date, because that looks like you were pretty much

25  on notice that they weren't paying you.

Page 43

1          MR. LEBARON:  Well, that was the second week of my

2     first -- so February was my first two weeks of nonpayment,

3     so that first two weeks went by and sometimes, you get a

4     job, it goes in, and it doesn't measure fast enough, so

5     sometimes, it takes two to four weeks, so I realize there's

6     a wheel.  There's always a wheel turning, and I know the

7     money's coming in, but the point is, is that you -- I went

8     to the town hall meeting.  I saw the letter saying Peter --

9     Eddie Lampert says he doesn't assume there's going to be any

10    issue with pay.

11         I was experiencing it right then.  That's when I

12    wrote t my manager and wrote letters and I got written up

13    for writing too many emails about it.  Nobody said anything,

14    so I was going to management, who didn't instruct me what to

15    do, because I didn't know.  I was just working my -- every

16    day.  I had a job six days a week, 16 hours a day, and that

17    was Sears Home Improvement, and I was selling and generating

18    revenue for -- I hate to day it, but for the bankruptcy.  I

19    mean, I was helping people I the bankruptcy, as far as I

20    knew.

21         THE COURT:  All right.  Okay.

22         MR. LEBARON:  That's what they were telling us, at

23    least.  I -- look, you're not under oath.  This has not been

24    scheduled as an evidentiary hearing.  I don't have Sears'

25    side of the story on this.  I can tell you preliminarily,

1    it's going to be difficult for you to convince me that this

2    claim should be treated as timely for the pre-bankruptcy

3    portion of it.  The Second Circuit -- and it's not alone in

4    this -- takes bar dates really seriously and in fact --

5              MR. LEBARON:  Can I ask a question?

6              THE COURT:  Well --

7              MR. LEBARON:  Can I ask you a question?

8              THE COURT:  You can as soon as I --

9              MR. LEBARON:  Okay.

10             THE COURT:  I want to explain this to you first.

11             MR. LEBARON:  Okay.

12             THE COURT:  In fact, they say, "They have taken a

13   hard line in applying the excusable neglect test."  They say

14   in a typical case, three of the factors -- the length of the

15   delay, the danger of prejudice, the movant's good faith --

16   usually weigh in favor of the party seeking the extension.

17   But the circuit and other circuit -- the other circuits have

18   focused on the third factor the reason for the delay,

19   including whether it was within the reasonable control of

20   the movant.

21             And then they say, "We caution that the equities

22   will rarely, if ever, favor a party who fails to follow the

23   clear dictates of the court rule, and that when the rule is

24   entirely clear" -- that would be the bar date order -- "we

25   continue to expect that a party claiming excusable neglect

Page 45

1    will, in the ordinary course, lose under the test."

2              Now here, the delay is really long.  I mean, it's

3    a year and in addition to that, it's six months after the

4    plan was confirmed and at least from what you've told me,

5    although I understand that you were working hard and you

6    were getting some money so, you know, it wasn't -- as you

7    told me, it wasn't clear that this money --

8              MR. LEBARON:  I wasn't getting --

9              THE COURT:  -- wasn't being owed.

10             MR. LEBARON:  I wasn't getting my wages.  I was

11   expenses, which is a totally different item.

12             THE COURT:  Well, okay.  But that's not --

13             MR. LEBARON:  That's just gas.

14             THE COURT:  But that's not a good fact for you.

15   That indicates that something's wrong that would lead

16   someone to --

17             MR. LEBARON:  Well --

18             THE COURT:  -- file a proof of claim.  I'm not

19   ruling on this today --

20             MR. LEBARON:  Okay -- at that point --

21             THE COURT:  I'm just giving -- I'm just giving you

22   the heads up.

23             MR. LEBARON:  Sorry, go ahead.

24             THE COURT:  -- that it's an uphill fight and --

25             MR. LEBARON:  I understand that, but I just want

1    to point out that it is illegal for a company to not pay me

2    my wages after a bankruptcy filing.

3              THE COURT:  That's a separate --

4              MR. LEBARON:  Is that not true?

5              THE COURT:  I'm not talking about the wages your

6    earned post-bankruptcy.  And I'm not --

7              MR. LEBARON:  Okay.

8              THE COURT:  -- talking about not paying wages,

9    either.  You still have a claim for it.

10             MR. LEBARON:  Okay.

11             THE COURT:  The issue is whether --

12             MR. LEBARON:  Right.

13             THE COURT:  -- that claim was barred by the

14   failure to file it in a timely fashion.  It's two different

15   things.

16             MR. LEBARON:  So -- I get that, and I would say

17   this.  My one response to that is -- so you know how I --

18   where I stand is that if I was working six days a week

19   required to run appointments and they literally write you up

20   if you don't do it and they make you also work night a week

21   and you're in office two days a week, and I have Sunday.

22   Right?  And I also have a mom in the hospital in Carlsbad

23   about 120 miles away with cancer who's getting through

24   surgery.

25             That period of time was when that happened, so

1   from August 25th 2018 until November to December at least, I

2   was in -- worked every day, six days a week, because I had -

3   - they were piling (indiscernible) on, because they said, if

4   you don't perform, you're not going to make it to service.

5   And, you know, I can't prove exactly what the manager said.

6   I mean, I do have some proof of what they were telling us to

7   say, obviously.

8              THE COURT:  Okay.

9              MR. LEBARON:  But --

10             THE COURT:  And that's what -- I will need --

11             MR. LEBARON:  The fact of the matter is, is that -

12   -

13             THE COURT:  I will need --

14             MR. LEBARON:  I believe --

15             THE COURT:  -- evidence on that point.  But again,

16   if you were only getting paid expenses for that pre-

17   bankruptcy period --

18             MR. LEBARON:  I took a loan.

19             THE COURT:  I appreciate you want to keep your

20   job, but unless they're making you threats such as, you

21   know, don't file a claim or we're going to fire you, which

22   they're not allowed to do --

23             MR. LEBARON:  Well, I'll just say this.  They told

24   us on 4/19 that when the claim came up in a meeting, they

25   said, don't do anything.  Just let it sit, because --

```
 1                THE COURT:  Yeah, but that's after --

 2                MR. LEBARON:  -- you know --

 3                THE COURT:  That's after the bar date.  So --

 4                MR. LEBARON:  Right, but it's also before ---

 5     December 15th, there was a letter stating that we were going

 6     to service, so if we were going to service --

 7                THE COURT:  Again --

 8                MR. LEBARON:  -- I thought there'd be no problem.

 9                THE COURT:  That's -- well, but again, that's

10     after the bar date, too.  So --

11                MR. LEBARON:  Well, service was January, right?

12     January 2019?

13                THE COURT:  I'm sorry.

14                MR. LEBARON:  (indiscernible).

15                THE COURT:  Yes.  I think that's right.

16                MR. LEBARON:  So, we didn't find out that we were

17     actually Transform until February 19th, 2019.  That's when I

18     found out officially that we were going to become Transform.

19                THE COURT:  Okay.

20                MR. LEBARON:  And service was out the door, right.

21                THE COURT:  So, let me focus, then, on the post-

22     petition period.

23                MR. LEBARON:  Sure.

24                THE COURT:  What, if anything -- this is now a

25     question for the Debtors -- what, if anything, are you
```

Page 49

1    objecting to with respect to the post-petition claim, if

2    anything?  Maybe you're not.

3              MR. LITZ:  Your Honor --

4              MR. LEBARON:  (indiscernible).

5              THE COURT:  No, I'm asking the Debtor.  The

6    Debtors' lawyer, this.

7              MR. LITZ:  Your Honor, as you noted, this is a

8    sufficiency hearing, and we are reserving our rights with

9    respect to post-petition claims --

10             THE COURT:  Right.

11             MR. LITZ:  -- asserted by Mr. LeBaron.

12             THE COURT:  Okay.  So, Mr. LeBaron, that portion

13   of your claim, which is the largest portion, is not going to

14   be addressed by anything from today.

15             MR. LEBARON:  Okay.

16             THE COURT:  I'll also note that even if I deemed

17   your claim to be timely filed, if I eventually found

18   excusable neglect, which I've already told you is going to

19   be an uphill fight, you would only have a priority for the

20   statutory cap that was in effect at that time, which is

21   $12,850.  That's --

22             MR. LEBARON:  Okay, can I ask you one --

23             THE COURT:  -- nothing, obviously.  That's better

24   than nothing, but that's a lot less than the --

25             MR. LEBARON:  I understand that, and I knew that

1    that was potential here.  I realized that going into it, but

2    I have a question is, what would -- is there something I'm

3    able to still fight on the other part?  Because I feel like

4    they didn't pay me --

5              THE COURT:  Yeah, if they -- if you were to --

6              MR. LEBARON:  A lot of bad things happened after

7    the (indiscernible) date.

8              THE COURT:  I mean, again, this is not really

9    before me today, but if you were taken on by Transform, then

10   you would have a claim against Transform and I'm not --

11             MR. LEBARON:  I have a case against Transform as

12   well.

13             THE COURT:  -- sure even -- and it's murky, to be

14   -- I don't know whether the Debtors have any responsibility

15   post the Transform transaction.  I don't know how that was

16   documented with you and that's not rightly before me, so I'm

17   not going to address that today.

18             MR. LEBARON:  Okay, that's no problem.  I'm not

19   going to bring it up.  I just know that I have good

20   sufficient evidence that shows that --

21             THE COURT:  All right.

22             MR. LEBARON:  -- transition.

23             THE COURT:  Well, that's something that you can

24   talk about with the Debtors because again, their focus is

25   not on the general unsecured claims right now.  It's on the

Page 51

1    priority claims --

2              MR. LEBARON:  Okay.

3              THE COURT:  -- and on the post-petition --

4              MR. LEBARON:  Yeah.

5              THE COURT:  -- administrative expenses.  That's

6    what their focus --

7              MR. LEBARON:  I just felt that unsecured --

8              THE COURT:  So, this is not --

9              MR. LEBARON:  -- or wages unpaid --

10             THE COURT:  So unlike the last two claim

11   objections that I heard where I was very upfront with the

12   claimants that while their unsecured claim survives subject

13   to the Debtor's right to object to it on the merits, that

14   probably won't get addressed for quite a while.  But your

15   post-petition claim will be addressed right away, soon.

16             MR. LEBARON:  Okay.

17             THE COURT:  So you should be talking with the

18   Debtors about it, about why you think the Debtors are liable

19   instead of Transform.  And it may be that as part of that,

20   they can resolve the $12,850 issue as to whether you would

21   have a priority claim for that or not based on the bar date

22   issue.

23             MR. LEBARON:  Okay.

24             THE COURT:  So what I'll do today, and all that I

25   will do today, is grant the supplemental objection to the

1     extent that it reclassifies your prepetition claim as a

2     general unsecured claim except for the statutory cap for

3     wages, commissions, et cetera, which is the $12,850.

4                MR. LEBARON:  Okay.

5                THE COURT:  But the order will also say that all

6     rights as to the merits of that priority claim and the other

7     claim, the unsecured claim, and the post-petition claim are

8     fully reserved.

9                MR. LEBARON:  I understand.

10               THE COURT:  And that includes your right to assert

11    that there is excusable neglect on the pre-petition -- you

12    know, the prepetition portion, both the $12,850 and the rest

13    that's pre-petition, and the Debtor's rights obviously to

14    say that it's untimely.

15               MR. LEBARON:  Okay.

16               THE COURT:  And my guess is, my expectation is you

17    guys may well resolve that issue, the $12,850, along with

18    the administrative claim together before I have another

19    hearing, but we'll see.

20               MR. LEBARON:  Okay.  And I have one last question.

21    On there, I believe (indiscernible) discussed this, there is

22    a $10,000 or $20,000 (indiscernible) for my policy, it was a

23    life insurance policy.  I thought that was owned.  Is that

24    not the case?  I'm not sure.

25               THE COURT:  I'm sorry, I don't understand.

1           MR. LEBARON:  There was a $45,000 life insurance

2      policy that came with my position.  And I thought after the

3      first year, you owned it.  And I'm puzzled, because when

4      they went out of business, that just vanished and I've never

5      seen anything of it again.  So they filed for ten of that.

6           THE COURT:  That's a separate -- that's also

7      nothing I am dealing with in this order.

8           MR. LEBARON:  Okay.  Okay.

9           THE COURT:  Okay.

10          MR. LEBARON:  Thank you, Your Honor.

11          THE COURT:  Okay, all right.  So I will look for

12     that order, Mr. Litz.  And you should just copy Mr. LeBaron

13     on it when you send it to chambers so he can make sure it's

14     consistent with my ruling.

15          MR. LITZ:  Thank you, Your Honor.

16          THE COURT:  Okay.  So the next one on my list is

17     the claim of Marshall Lindquist.  Is Mr. Lindquist on Zoom

18     or on the phone?  Okay.  He is not apparently.  This is

19     another modified claim objection.  It was originally a books

20     and records objection.  And in the supplement, the Debtors

21     simply sought to reclassify the claim, preserving their

22     other rights.  Right, Mr. Litz?  Am I correct on that?

23          MR. LITZ:  That's correct, Your Honor.

24          THE COURT:  Okay.  And I will grant that objection

25     and reclassify the claim.  The claim wouldn't fit in the

Page 54

1    180-day window under either 507(a)(4) or 507(a)(5).  The

2    claim, it is clear, is for services rendered before the date

3    that Mr. Lindquist was terminated, which was in June of

4    2017.  So he would not be entitled to a priority claim.  And

5    as the Debtors cite, the fixing of that claim, which could

6    have fallen within the 180-day period, is irrelevant to the

7    priority.  What is relevant is when the facts giving rise to

8    the claim occurred, i.e. the services rendered.  And that

9    was well before the 180-day period set forth in 507(a)(4) or

10   507(a)(5).  The fixing of the claim just liquidated it but

11   did not create it, in other words.  It was an unliquidated,

12   matured claim before that.  See In re Avaya Inc., 2019 WL

13   1858847 *6-7 (Bankr. S.D.N.Y. April 22, 2019).  So you can

14   email that order to chambers.

15           And then we have the claim of Puja Thakkar.  I

16   hope I'm pronouncing that right, T-h-a-k-k-a-r.  Is Ms.

17   Thakkar on the phone?  Okay.  This is another

18   reclassification objection.  The rest of the original

19   objection is reserved.  And it's clear to me based on Ms.

20   Thakkar's claim that, again, her claim for wages and/or

21   benefits in addition to being well above the statutory cap,

22   was for services rendered before the 180 days would have

23   run.  Or would have started, excuse me, for purposes of

24   507(a)(4) and (a)(5) of the Bankruptcy Code.

25           It appears that she worked through 2015.  There's

1   some suggestion that she was being harassed by Sears

2   employees in February of 2018, which again, is outside of

3   the 180-day window and in all likelihood wouldn't be a

4   priority claim because it wouldn't be for wages or the like.

5   It was clearly pre-petition.

6           So you can submit the same type of order that I've

7   already asked you to submit on the other ones, reclassifying

8   the claim and reserving all other objections and Ms.

9   Thakkar's right to respond.

10          MR. LITZ:  Thank you, Your Honor.  We'll submit

11  the order.

12          THE COURT:  Okay.  And then we have Mr. Bass'

13  response to the 31st Omnibus Objection, which objected not

14  on the basis that the claim should be reclassified from

15  priority to general unsecured, but rather that it should be

16  reclassified as not being a secured claim.  Is Mr. Bass on

17  the phone or on Zoom?  Okay.

18          I have reviewed the proof of claim which attaches

19  a settlement agreement for $5,150 dated March 10, 1998.

20  It's not clear to me why such a claim is being pursued at

21  this point in any event.  But there is no evidence of any

22  security interest being granted and no recordation of any

23  judgment and no perfection of any lien shown on the proof of

24  claim.  And based on the objection that was filed, if not

25  even before then, Mr. Bass had the responsibility to

1    establish a valid and perfected and enforceable lien by

2    showing the appropriate documentation since the Debtors had

3    shifted any presumption of the validity of the claim back

4    onto the claimant.  So he has not carried his burden of

5    proof on the reclassification point.  See In re Arcapita

6    Bank B.S.C.(c), 508 B.R. 814, 814 (S.D.N.Y. 2014) and In re

7    Oneida Limited, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009),

8    affirmed 2010 WL 234827 *5 (S.D.N.Y. January 22, 2010).

9           So you can submit an order reclassifying the claim

10   from secured to general unsecured and reserving all other

11   defenses and claims.

12          The next claim objection on the agenda is the

13   Debtor's objection to -- I believe it's Mr. Mirjalili's

14   proof of claim.  That's M-i-r-j-a-l-i-l-i, Proof of Claim

15   1818.  Again, this is an objection on the basis that the

16   claim has been listed as secured on the proof of claim.  And

17   again, the Debtors have asserted that there is no evidence

18   of any lien or the perfection of any lien in respect of that

19   claim.

20          Is Mr. Mirjalili on the phone or on Zoom?  No.

21   Okay.

22          I've reviewed the claim objection.  And, again,

23   there is no evidence of any lien documentation.  The one

24   issue I have is he underlined in the priority section a

25   deposit towards services.  There is no evidence of any

1   deposit in the attachments that he's attached to the claim,

2   which include the purchase agreement and an addendum to it

3   for heating and cooling services.  And I was unable to see

4   any sort of deposit provided for there, which, in addition

5   to maybe creating a lien depending on how it was documented,

6   might create a priority under Section 507(a)(7).  There is

7   clearly no priority for taxes or for simply the purchase of

8   the services.

9           And in light of that and Mr. Mirjalili's failure

10  to attend today's hearing and answer that question I had

11  about a deposit, I conclude that the Debtors shifted the

12  burden of proof to the extent that there was a presumptive

13  validity of the claim as to the priority and the secured

14  claim back onto the claimant.  And Mr. Mirjalili has not

15  carried his burden of proof to show that the claim is either

16  secured or entitled to priority treatment.  So you can email

17  that order to chambers.

18          Let me just add there is a warning label or a

19  required disclosure under the law of the State of Washington

20  on the agreement between Sears and Mr. Mirjalili that refers

21  to the purchaser's right to a pro-rata share of either a

22  $12,000 bond or deposit required to be made by the service

23  provider under Washington law.  There is no evidence that

24  that is what Mr. Mirjalili is looking to here.  But I will

25  ask you to put into the order that to the extent that Mr.

1    Jalili asserts a right to a specific pro rata share of any

2    bond or deposit posted under Washington law applicable to

3    the agreement, those rights are preserved.

4            MR. LITZ:  Thank you, Your Honor.  We will do so.

5            THE COURT:  Okay.  All right.  And then the last

6    one on my list at least is the Debtor's 36th Omnibus

7    Objection as supplemented, again, to the claim of Kingdom

8    Seekers Inc./Aron Goldberger.  There are actually two claims

9    here, Claim 26515 in the amount of $5,531,000, and Claim

10   26517 in the amount of $2,500,000.  The objection, again,

11   seeks to reclassify these claims as general unsecured

12   claims.  They've been filed as secured and priority claims.

13   And I have the Kingdom Seekers Inc. response to the

14   objection.  Is anyone on the phone or on Zoom on behalf of

15   Kingdom Seekers, Inc. or Aron Goldberger?  No.

16           All right.  I have reviewed the objection as well

17   as the claims themselves, and it's clear to me that the

18   objection should be granted and the claim should be

19   reclassified with the preservation of all rights on the

20   merits with respect to the unsecure claim, i.e. post-

21   reclassification.  There is no evidence of any lien

22   whatsoever, no security interest, no evidence of any

23   judgement that may have been recorded, and no evidence of

24   any other form of perfection.

25           As far as the administrative expenses that are

Page 59

```
1    claimed, it appears to me that the Claimant has misread the

2    applicable provisions that it cites and asserts a claim

3    under 507(a)(2) and 507(a)(1), not on the basis of the

4    Debtor's obligations that would give rise to such a priority

5    claim, but rather the claimant's obligations to its own

6    creditor or Mr. Goldberger's creditor.

7            In addition, in looking at the attachments to the

8    proof of claim, it appears that to the extent it's based on

9    any work done or commissions earned, they are years before

10   the bankruptcy petition date and well outside of the 180

11   days before the petition date as well.  The dates on the

12   attachments are in 2011.  So I will grant the claim

13   objection insofar as it seeks to reclassify the two claims

14   as general unsecured claims.  So you can submit that order

15   as well.

16           I'd like to make a suggestion on the orders.

17   Sometimes you do an omnibus order.  I think probably it's

18   better here to do individual orders.  What I suggest you do

19   is send me one.  And if I have any changes to it, you can

20   note those changes and then mark up the others to track that

21   order.  Okay.

22           MR. LITZ:  Thank you, Your Honor.  We'll do that.

23           THE COURT:  Okay, very well.  I think that

24   concludes today's agenda.  I think all the other matters

25   were adjourned.
```

1            MR. LITZ:  That's correct.

2            THE COURT:  Okay.  In the future when you submit

3       the binder where there is a response to a claim objection

4       and the Debtors have replied, you should include in the

5       binder the proofs of claim that were filed.

6            MR. LITZ:  We'll make sure to do that.

7            THE COURT:  So we don't have to track them down.

8       Okay.  I see someone on the screen.

9            MS. NELSON:  Yes.  I was supposed to be here

10      today.  I don't know if I just came in at the wrong time.

11      For Nelecia Nelson.

12            THE COURT:  Okay.  Are you here on the Sears case?

13            MS. NELSON:  Yes, I am.

14            THE COURT:  Okay.  I think --

15            MR. LITZ:  Your Honor, I think I can address this

16      one very briefly.

17            THE COURT:  Okay.

18            MR. LITZ:  Ms. Nelson had filed a response to one

19      of our omnibus objections and was inadvertently put on a CNO

20      that was filed with the Court.  So we are revising to remove

21      her and work with Ms. Nelson to reconcile her claim.

22            THE COURT:  Okay.  So on the omnibus objection

23      that they submitted that covers your claim, Ms. Nelson, I

24      will enter an order only on the objections that were not

25      opposed.  Since you opposed their objection, and that's been

Page 61

1    confirmed now on the record, the hearing on your claim will

2    be adjourned to a later date.  The Debtors in the meantime

3    will try to work with you to see if they can understand the

4    arguments you've made, and they may agree, they may

5    disagree.  But it's not going forward today and your claim,

6    it still survives to be dealt with on a later date.  And

7    you'll get notice of that date.  Okay, very well.

8            MS. NELSON:  Okay, thank you.

9            THE COURT:  Okay.  All right.  Thanks a lot.

10           (Whereupon these proceedings were concluded at

11   11:27 AM)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 62

1                           I N D E X

2

3                           RULINGS

4                                           Page        Line

5    Motion to Reclassify Claim from

6    Priority to General Unsecured

7    Granted                                12          5

8

9    Motion to Reclassify Claim from

10   Priority to General Unsecured

11   Granted                                19          7

12

13   Supplemental Objection Granted         26          13

14

15   Claim Objection Granted with

16   Stipulations                           29          7

17

18   Supplemental Objection Granted

19   with Stipulations                      51          25

20

21   Motion to Reclassify Claim Granted     53          24

22

23   Motion to Reclassify Claim Granted

24   with Stipulations                      59          12

25

Page 63

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7    *[signature: Sonya M. Ledanski Hyde]*

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  November 12, 2021