**Proposed Hearing Date and Time: December 3, 2021, at 2:00 PM (Eastern Time)**
**Proposed Objection Date and Time: December 1, 2021, at 4:00 PM (Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jared R. Friedmann
Jacqueline Marcus
Garrett Fail

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                          :
**In re**                                 :        **Chapter 11**
                                          :
**SEARS HOLDINGS CORPORATION,** *et al.*, :        **Case No. 18-23538 (RDD)**
                                          :
         **Debtors.**[1]                  :        **(Jointly Administered)**
                                          :
-------------------------------------------------------------------x

# NOTICE OF DEBTORS' MOTION PURSUANT TO FED. R. BANKR. P. 9019(a) FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT REGARDING THE EDA LITIGATION AND TAX ASSESSMENT ISSUES

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is c/o M-III Partners, LP, 1700 Broadway, 19th Floor, New York, NY 10019.

**PLEASE TAKE NOTICE** that Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), by and through their undersigned counsel, filed a motion (the "**Motion**") for entry of an order (the "**Order**") pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for approval of a settlement and compromise among the Debtors, the Village of Hoffman Estates, Community Unit School District 300, Metropolitan Water Reclamation District of Greater Chicago, School District U-46, Elgin Community College, Hoffman Estates Park District, Poplar Creek Library District, County of Cook, Cook County Forest Preserve District, Barrington Township, Barrington Area Library District, and Northwest Mosquito Abatement District, which the Cook County Treasurer joined as a signatory, pursuant to her powers under the principle of good faith and respect for comity.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 118, 300 Quarropas Street, White Plains, New York, 10601-4140 (the "**Bankruptcy Court**") on **December 3, 2021 at 2:00 p.m. (Eastern Time)** (the "**Hearing**"), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the Motion (the "**Objections**") shall (i) be in writing; (ii) state the name and address of the objecting party and nature of the claim or interest of such party; (iii) state with particularity the legal and factual bases of such objection; (iv) conform to the Bankruptcy Rules and the Local Bankruptcy Rules; (v) be filed with the Bankruptcy Court, together with proof of service, electronically, in accordance with General Order M-399 (available at www.nysb.uscourts.gov) by registered users of the Court's Electronic Case Filing system, and by all other parties in interest, on a CD-ROM, in text-searchable

portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance

with the customary practices of the Bankruptcy Court and General Order M-399, to the extent

applicable; and (vi) be served in accordance with the *Amended Order Implementing Certain Notice

and Case Management Procedures*, entered on November 1, 2018 (ECF No. 405), so as to be filed

and received no later than **December 1 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

       **PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted upon default.

Dated:       November 23, 2021
           New York, New York

          */s/ Jared R. Friedmann*
          WEIL, GOTSHAL & MANGES LLP
          767 Fifth Avenue
          New York, New York  10153
          Telephone:  (212) 310-8000
          Facsimile:  (212) 310-8007
          Jared R. Friedmann
          Jacqueline Marcus
          Garrett Fail

          *Attorneys for Debtors*
          *and Debtors in Possession*

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jared R. Friedmann
Jacqueline Marcus
Garrett Fail

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                              :
**In re**                                     :         **Chapter 11**
                                              :
**SEARS HOLDINGS CORPORATION**, *et al.*,     :         **Case No. 18-23538 (RDD)**
                                              :
        **Debtors.**[1]                       :         **(Jointly Administered)**
                                              :
-------------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT TO FED. R. BANKR. P. 9019(a) FOR ENTRY OF
AN ORDER APPROVING SETTLEMENT AGREEMENT REGARDING
THE EDA LITIGATION AND TAX ASSESSMENT ISSUES**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is c/o M-III Partners, LP, 1700 Broadway, 19th Floor, New York, NY 10019.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..............................................................................................1

JURISDICTION AND VENUE ............................................................................................4

RELIEF REQUESTED..........................................................................................................4

BACKGROUND ...................................................................................................................5

I.      The EDA Dispute.......................................................................................................5

     A.      The EDA Act and EDA Agreement.................................................................5

     B.      Chapter 11 Proceedings and Limited Abstention Order .................................6

     C.      Transform's Designation of the EDA Agreement for Assumption and
           Assignment ......................................................................................................7

     D.      The 2017 EDA Settlement ...............................................................................8

     E.      The School District's Separate Settlement with Transform ...................................9

II.     The Sears PTAB Appeals ........................................................................................10

III.    Settlement of the EDA and PTAB Disputes ...........................................................12

THE SETTLEMENT AGREEMENT SHOULD BE APPROVED ............................................15

I.      Legal Standards.......................................................................................................15

II.     The Settlement Agreement Satisfies the Requirements of Rule 9019(a) ..........................16

III.    Rejection of the EDA Agreement Pursuant to the Settlement Agreement Reflects
        the Debtors' Sound Business Judgment...................................................................19

WAIVER OF BANKRUPTCY RULE 6004(h) REQUIREMENT IS WARRANTED ...............20

NOTICE...........................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Drexel Burnham Lambert Grp., Inc.*,
    134 B.R. 499 (Bankr. S.D.N.Y. 1991)............................................................... 15-16

*NLRB v. Bildisco & Bildisco*,
    465 U.S. 513 (1984)........................................................................................19

*Cosoff v. Rodman (In re W.T. Grant Co.)*,
    699 F.2d 599 (2d Cir. 1983)........................................................................ 15-16

*Fla. Trailer & Equip. Co. v. Deal*,
    284 F.2d 567 (5th Cir. 1960) ...........................................................................16

*In re Helm*,
    335 B.R. 528 (Bankr. S.D.N.Y. 2006)..............................................................19

*In re Hibbard Brown & Co.*,
    217 B.R. 41 (Bankr. S.D.N.Y. 1998)................................................................15

*In re Ionosphere Clubs, Inc.*,
    156 B.R. 414 (S.D.N.Y. 1993).........................................................................15

*Nellis v. Shugrue*,
    165 B.R. 115 (S.D.N.Y. 1994).........................................................................15

*In re Old Carco LLC*,
    406 B.R. 180 (Bankr. S.D.N.Y. 2009)..............................................................19

*In re Penn Traffic Co.*,
    524 F.3d 373 (2d Cir. 2008) ............................................................................19

*Protective Comm. for Indep. S'holders of TMT Trailer Ferry Inc. v. Anderson*,
    390 U.S. 414 (1968)...........................................................................15-16, 18-19

*In re Purofied Down Prods. Corp.*,
    150 B.R. 519 (S.D.N.Y. 1993).........................................................................16

**Statutes and Rules**

20 ILCS 620/4(g) ...........................................................................................................5

20 ILCS 620/4.5 .............................................................................................................5

28 U.S.C. § 105(a) .........................................................................................................4

28 U.S.C. § 157(b) ........................................................................................................4

28 U.S.C. § 365(a) ....................................................................................................4, 19

28 U.S.C. § 1334 ..........................................................................................................4

28 U.S.C. § 1408 ..........................................................................................................4

28 U.S.C. § 1409 ..........................................................................................................4

Fed. R. Bankr. P. 6004 ................................................................................................20

Fed. R. Bankr. P. 9019 ........................................................................................ *passim*

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, "**Sears**" or the "**Debtors**"), by and through their undersigned counsel, hereby file this motion (the "**Motion**") pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for approval of the *Settlement Agreement Concerning the EDA* (the "**Settlement Agreement**," attached hereto as Exhibit 1) among the Debtors, the Village of Hoffman Estates (the "**Village**"), Community Unit School District 300 (the "**School District**"), Metropolitan Water Reclamation District of Greater Chicago, School District U-46, Elgin Community College, Hoffman Estates Park District, Poplar Creek Library District, County of Cook, Cook County Forest Preserve District, Barrington Township, Barrington Area Library District, Northwest Mosquito Abatement District, (collectively, the "**Parties**"), which the Cook County Treasurer joined as a signatory pursuant to her powers under the principle of good faith and respect for comity. The Parties anticipate the Settlement Agreement being fully executed either prior to the December 3, 2021 hearing date or soon thereafter.[2]

## PRELIMINARY STATEMENT

1.      The Debtors seek the Court's approval to enter into the Settlement Agreement to resolve, on a global basis, two separate disputes between and among the Parties regarding: (i) the compliance of the Debtors and the Village with an Economic Development Agreement (the "**EDA Agreement**") that has been the subject of several years of litigation in both Illinois state court and

---

[2] As discussed in the Debtors' *Motion for an Order Shortening Notice with Respect to Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019(a) for Entry of an Order Approving Settlement Agreement Regarding the EDA Litigation and Tax Assessment Issues* (the "**Motion to Shorten**") filed concurrently herewith, the Settlement Agreement is highly time-sensitive, and will become null and void if not approved in time to meet certain year-end deadlines. For that reason, the Debtors file this Motion and the Motion to Shorten in advance of execution and delivery of a fully-executed Settlement Agreement.

before this Court, as well as the Debtors' ability to assume and assign the EDA Agreement; and (ii) the Debtors' pending appeals before the Property Tax Appeals Board of the State of Illinois (the "**PTAB**") of property taxes levied against their then-corporate headquarters for the years 2016, 2017, and 2018 (the "**Sears PTAB Appeals**").  While the two disputes are independent and unrelated, each involves—and could not effectively be settled without the agreement of—all of the Parties, as well as the Cook County Treasurer.

2.     The Settlement Agreement, which resolves these two issues on a global basis, is fair and equitable, reasonable, and in the best interests of the Debtors' estates and their creditors. If approved, the Settlement Agreement will provide an influx of $12.35 million into the estates within days of the Settlement Agreement becoming final.  Additionally, the Settlement Agreement will eliminate the substantial ongoing burdens, expenses, and risks associated with litigation of both disputes.

3.     The Settlement Agreement fairly and equitably resolves the dispute over the EDA Agreement.  The School District seeks to dissolve the 788-acre economic development project area within the Village (the "**EDA**") and have the EDA Agreement rejected or otherwise terminated, so that certain funds that would otherwise be paid to Sears, as the developer, by the Village out of a special tax allocation fund would instead be allocated among the taxing districts, including the School District.  In October 2020, the School District attempted to achieve this goal through a bilateral settlement with Transform Holdco and its affiliates (collectively, "**Transform**"), which was contingent upon the Debtors rejecting the EDA Agreement in exchange for no consideration.  The Debtors declined, and this Court denied the School District's subsequent motion to compel rejection, reasoning that the bilateral settlement attempted to resolve the EDA dispute "on the backs of the [D]ebtor and the Village."  Nov. 20, 2020 Hrg. Tr. (ECF No. 9125) at

2

79:19-22.  The instant Settlement Agreement, in contrast, provides value to all stakeholders, including to the Debtors and the Village.  In addition, the Debtors have agreed to reject the EDA Agreement, and the Village has agreed to pass an ordinance dissolving the EDA effective as of December 31, 2021, subject to the conditions set forth in the Settlement Agreement.  The School District has separately reached an agreement with Transform regarding withdrawal of its designation of the EDA Agreement for assumption and assignment.  As a result, the School District and other taxing districts will achieve their goal of ending the EDA, and the Parties will no longer face the burden and expense of further litigation.

4.      To accomplish this aspect of the Settlement Agreement, this Motion asks the Court to order the EDA Agreement rejected as of December 31, 2021, without the need for further action from the Debtors, notice or Court order, contingent upon: (i) the School District filing a stipulation executed by Transform irrevocably withdrawing its designation of the EDA Agreement, and (ii) the Debtors and the Village receiving the payments provided for in the Settlement Agreement.

5.      The Settlement Agreement also fairly and equitably resolves the PTAB Appeals. The Debtors' experts opine that the estimated fair market value and property assessments for Sears's property in the EDA were incorrectly calculated in each of 2016, 2017, and 2018, and that the Debtors are entitled to property tax refunds totaling approximately $14.5 million for those years.  The School District has challenged the Debtors' appraisal; the School District's own experts argue that Sears should only receive property tax refunds totaling approximately $8.6 million.  The Settlement Agreement provides an immediate $12.35 million payment to the Debtors.

6.      The Settlement Agreement represents sound business judgment and brings finality to these long-standing, expensive, and complex disputes.  Moreover, the Settlement Agreement is the product of arms'-length negotiations between and among the Parties and their advisors,

facilitated through extensive mediation by John DeGroote, a former global company general counsel with significant experience mediating and arbitrating complex, multi-party disputes. The Debtors' Restructuring Committee has approved the Settlement Agreement based on its own reasoned judgment, and the Unsecured Creditors' Committee and the Post Effective Date Committee have also independently reviewed and approved the terms of the settlement and support the relief requested in this Motion.

7.       Accordingly, and for all of the reasons set forth below, Debtors respectfully request that the Court grant the relief requested in this Motion by approving the Settlement Agreement pursuant to Fed. R. Bankr. P. 9019(a) and ordering the EDA Agreement rejected pursuant to Section 365(a) of the Bankruptcy Code effective as of December 31, 2021, contingent upon the conditions described above and set forth in the Settlement Agreement.

## JURISDICTION AND VENUE

8.       This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

9.       By this Motion, pursuant to Section 365 of the Bankruptcy Code and Bankruptcy Rule 9019(a), the Debtors respectfully request that the Court enter the proposed order attached hereto as Exhibit 2 (the "**Proposed Order**"): (1) approving the Settlement Agreement; (2) authorizing the Parties and the Cook County Treasurer to take any action as may be necessary or appropriate to implement, effectuate, and fully perform under the Settlement Agreement; (3) ordering that the EDA Agreement shall be rejected effective as of December 31, 2021, contingent upon the School District filing a stipulation executed by Transform irrevocably withdrawing its

designation of the EDA Agreement, upon the Debtors' receipt of $12.35 million and the Village's receipt of $1.5 million as provided for in the Settlement Agreement, without the need for any further action by the Debtors, notice or order from this Court; and (4) waiving for cause any automatic 14-day stay that might apply under the Bankruptcy Rules.

## **BACKGROUND**

### I.     **The EDA Dispute**

#### A.     **The EDA Act and EDA Agreement**

10.     In 1989, the Illinois legislature passed the Economic Development Area Tax Increment Allocation Act, 20 ILCS 620/1 *et seq.* (the "**EDA Act**"), to incentivize Sears to move its corporate headquarters to undeveloped prairie farmland in the Village.  In 1990, in accordance with the EDA Act, Sears and the Village executed the EDA Agreement, pursuant to which Sears agreed to pay certain up-front costs to develop the 788-acre EDA.  Under the EDA Act and the EDA Agreement, Sears, as holder of notes issued under the EDA Act, was entitled to annual payment of certain property tax rebates as compensation for those development costs.

11.     As of 2012, Sears had not yet been fully reimbursed for its development costs, and the Illinois General Assembly amended the EDA Act to extend the period of reimbursement for up to 15 more years—until 2027, unless terminated early—with Sears, as the developer, to be paid out of a portion of annual property tax collected from properties within the EDA so long as certain conditions were met. *See* Ill. Public Act 097-0636, at Section 15-5, § 4(g), *codified at* 20 ILCS 620/4(g) (2012).  The 2012 Amendment also added a section titled "Recapture," which provides for the Village to reduce the EDA Funds (as defined in the Settlement Agreement) distributed to the developer, *pro rata*, for any time period in which the developer failed to maintain 4,250 jobs in the EDA, and for the EDA and attendant developer reimbursements to be terminated entirely if the developer maintains no jobs within the EDA. *See id.* § 4.5(b), (c) (amended text), *codified at*

20 ILCS § 620/4.5 (2012).   Under either scenario, any funds that would have been paid to the developer under the EDA Act and EDA Agreement are instead to be distributed among the appropriate taxing districts within the EDA, including the School District.  *See id.*

12.     Sears continued to receive its annual payments under the EDA Act without interruption until 2018, which amounts were paid out of tax receipts then held in the Village's Special Tax Allocation Fund (as defined in the Settlement Agreement).

13.     On October 10, 2018, the School District filed a civil Complaint against the Village and Sears in the Circuit Court of Cook County, Illinois, *Community Unit School District 300, et al. v. Village of Hoffman Estates, et al.*, No. 2018-CH-12683 (Ill. Cir. Ct.) (the "**Illinois Action**"). In its Complaint, the School District alleged that Sears failed to maintain the requisite number of jobs within the EDA beginning in 2017 and sought to (i) prevent the Village from distributing to Sears certain of the 2017 EDA Funds (as defined in the Settlement Agreement) and all of the 2018 EDA Funds (as defined in the Settlement Agreement) and (ii) enjoin the Village from making any further distributions of EDA Funds during the pendency of the Illinois Action.

## B.     Chapter 11 Proceedings and Limited Abstention Order

14.     On October 15, 2018 (the "**Commencement Date**"), each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code before this Court.  As a result, the Illinois Action was automatically stayed pursuant to Section 362 of the Bankruptcy Code.

15.     On November 12, 2018, the School District filed a *Motion for Relief from the Automatic Stay or, in the Alternative, for Abstention* (ECF No. 652) (the "**Abstention Motion**"), seeking authorization to continue litigating the Illinois Action in state court. Sears opposed the Abstention Motion, and on February 28, 2019, Sears filed its own *Motion to Compel Turnover of Estate Property* (ECF No. 2715) (the "**Turnover Motion**"), seeking an order compelling the

Village to turn over to Sears the remaining 2017 EDA Funds then held in Village's Special Tax Allocation Fund.[3]

16.     Following a hearing on April 18, 2019, this Court ruled that it would abstain from hearing "the issues raised in the Turnover Motion, and the School District and all other relevant parties are authorized to proceed to prosecute and achieve complete relief and resolution with respect to the matters raised in the Turnover Motion related to whether the Debtors or the School District are entitled to receive from the Village all or any portion of those funds [then] held by the Village in the Fund"—*i.e.*, issues related to distribution of the 2017 EDA Funds. *Order Granting the School District's Motion for Abstention* (ECF No. 3362) (the "**Limited Abstention Order**") ¶ 2.[4]  With respect to all other matters, the automatic stay was to remain in effect.  *See id.* ¶ 5.  The parties then returned to Illinois state court to continue litigating the Illinois Action.

### C.     Transform's Designation of the EDA Agreement for Assumption and Assignment

17.     In the interim, the Debtors separately negotiated and entered into an Asset Purchase Agreement ("**APA**") with Transform and certain of its affiliates on January 17, 2019.  *See Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* (ECF No. 2507), Ex. B.  Under the APA,

---

[3] In December 2018, Sears, the School District, and the Village executed an agreement—which was so-ordered by this Court in early January 2019—which allowed the Village to immediately distribute 45% of the 2017 EDA Funds to the various taxing districts within Illinois who would normally receive that distribution, leaving only the disputed 55% portion of the 2017 EDA Funds remaining in the Special Tax Allocation Fund. *See Stipulation and Order by and Among the Village, Sears and the School District Concerning Funds Held Pursuant to the EDA Act* (ECF No. 1548).

[4] The Court also ordered the Village to disburse to Sears approximately $2.5 million from EDA Funds then held by the Village in the Special Tax Allocation Fund. *See Order Directing Partial Turnover of EDA Funds to Debtors and Reserving Balance Pending Court Order* (ECF No. 3678).

Transform held the right to designate executory contracts (including the EDA Agreement) for assumption and assignment. Nothing in the APA precluded the Debtors from assigning an executory contract to another party if Transform chose not to designate that contract for assumption and assignment, or if Transform initially designated the contract but later changed its mind and withdrew the designation.

18.     On May 2, 2019, Transform designated the EDA Agreement for assumption and assignment. *See* ECF No. 3539.

19.     The School District objected to the assumption and assignment. *See* ECF Nos. 3288, 3783. Additionally, on August 16, 2019, the School District filed its First Amended Complaint in the Illinois Action, which added Transform entities as defendants.

**D.     The 2017 EDA Settlement**

20.     On October 23, 2019, the Debtors, the Village, and the School District entered into a settlement of their dispute regarding distribution of 2017 EDA Funds. *See Amended Stipulation and Order by and Among the Village of Hoffman Estates, the Debtors, and the Community Unit School District 300 Concerning 2017 EDA Funds Held in the Special Tax Allocation Fund* (ECF No. 5492) (the "**2017 EDA Settlement**"). Under the 2017 EDA Settlement, the Village was ordered to distribute to Sears $5,154,317 of the 2017 EDA Funds, and to distribute to the School District $2 million of the 2017 EDA Funds. *See id.* at 3-4. The School District released all claims against Sears and the Village with respect to the disputed 2017 EDA Funds, and withdrew with prejudice any complaint, claim, or other litigation seeking to prevent the Sears from receiving those EDA Funds. *See id.* ¶ 1. The School District also dismissed with prejudice all monetary claims against Sears concerning EDA Funds from earlier years. *See id.* Sears, for its part, agreed to relinquish any right it might have with respect to the 2018 EDA Funds and to relinquish any rights, claims or interests to any subsequent years' EDA Funds, if applicable. *Id.* ¶ 2.

21.     The 2017 EDA Settlement also provided that "nothing in this Stipulation and Order shall waive, extinguish, or otherwise release the rights, if any, of Debtors' assignee to the EDA Agreement, as applicable, to EDA Funds levied for tax year 2018 or for any subsequent year." *Id.* ¶ 18.

### E.     The School District's Separate Settlement with Transform

22.     Following the 2017 EDA Settlement, the School District amended its Complaint in the Illinois Action several more times to reflect its goal of dissolving the EDA and terminating the EDA Agreement entirely.  Then, on October 27, 2020, the School District provided the Debtors with a copy of a conditional settlement agreement between the School District and Transform, pursuant to which Transform agreed to withdraw its designation of the EDA Agreement for assumption and assignment, in exchange for $2.9 million.  *See Decl. of Jared Friedmann in Supp. of Debtors' Opp. to the School District's Motion to Deem the EDA Agreement Rejected or, in the Alternative, to Compel Debtors to Reject the Agreement* (ECF No. 9084), Ex. 2 (the "**Transform Settlement**").  The Transform Settlement gave no money or other consideration to the Debtors, but was contingent upon the Debtors rejecting the EDA Agreement, either voluntarily or pursuant to an order of this Court.  *See* Transform Settlement at 8-9.

23.     The Debtors declined to voluntarily reject the EDA Agreement, and the School District filed a *Motion to Deem the EDA Agreement Rejected Pursuant to the Debtors' Confirmed Chapter 11 Plan, or, in the Alternative, to Compel the Debtors to Reject the Agreement* (ECF No. 9061) (the "**Motion to Compel**").  The Debtors opposed, arguing that if Transform withdrew its designation of the EDA Agreement, the Debtors had the right—and fiduciary duty—to look for another assignee who might offer value to the estates in exchange for assignment of the EDA Agreement.

24.    This Court denied the Motion to Compel on November 23, 2020. *See Order Denying Motion to Compel* (ECF No. 9116). On December 4, 2020, the School District appealed this Court's November 23, 2020 Order to the United States District Court for the Southern District of New York (the "**Bankruptcy Appeal**"). *See Notice of Appeal* (ECF No. 9147). By Order dated December 23, 2020, including extension orders entered thereafter, all deadlines in the Bankruptcy Appeal have been stayed pending further order of the District Court. *See In re Sears Holdings Corp.*, No. 20-CV-10431, ECF No. 5 (S.D.N.Y. Dec. 23, 2020).

25.    The dispute regarding the EDA Act and EDA Agreement remains ongoing. On January 26, 2021, the Illinois state court denied Sears's Motion to Dismiss the Fourth Amended Complaint, holding that Sears had an interest in the action given the uncertainty as to whether Transform would take assignment of the EDA Agreement. The School District thereafter filed a Fifth Amended Complaint, again seeking, *inter alia*, an order declaring that the EDA should be dissolved or terminated. The Fifth Amended Complaint is currently pending in the Illinois Action, subject to, among other things, the state court's order dated August 10, 2021 directing the Plaintiffs to file their verifications to the Fifth Amended Verified Complaint, or file a Sixth Amended Verified Complaint.

## II.    The Sears PTAB Appeals

26.    The Sears PTAB Appeals pending for tax years 2016, 2017, and 2018 are unrelated to the Illinois Action. The Sears PTAB Appeals relate to property tax assessments extended against Sears' former corporate headquarters property that is located within the EDA.

27.    The former Sears corporate headquarters property includes 193.15 acres of land that is improved with the former Sears's corporate headquarters and the Sears Child Development Center (the "**Sears Campus**"). *See Declaration of David S. Martin in Support of Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Entry of an Order Approving Settlement Agreement*

*Regarding the EDA Agreement and Tax Assessment Issues*, filed contemporaneously herewith ("**Martin Decl.**") ¶ 3.   For tax years 2016, 2017, and 2018, Sears paid a total of $31,369,774 in property taxes levied against the Sears Campus.  *Id.* ¶ 4.

28.    On or about December 9, 2016, November 13, 2017, and January 23, 2019, Sears filed the Sears PTAB Appeals before the PTAB for tax years 2016, 2017, and 2018 (Case Nos. 16-21549, 17-20023, and 18-23983, respectively).  *Id.* ¶ 5.  These appeals challenged the correctness of the property tax assessed values extended against the Sears Campus by the Cook County assessing officials.  *Id.*  For each of the applicable tax years, the Cook County assessing officials assessed the Sears Campus based on an estimated fair market value of $153,730,000.  Sears has submitted as evidence an appraisal of the Sears Campus that reflects an estimated fair market value of $77,320,000.  *Id.*  Based on Sears's appraisal evidence, if it were to prevail in the PTAB Appeals, it would be entitled to property tax refunds of $4,656,945 for 2016, $4,730,285 for 2017, and $5,114,345 for 2018—or a total of $14,501,575.  *Id.*  In addition, Sears would be entitled to statutory interest on the refund amounts.  *Id.*

29.    The School District and the Village have intervened in each of the Sears PTAB Appeals.  The School District has submitted as evidence appraisals of the Sears Campus that reflect an estimated fair market value of $106,905,000.  *Id.* ¶ 6.  If the School District were to prevail in the PTAB Appeals, Sears would be entitled to tax refunds of  $2,644,600 for 2016, $2,860,280 for 2017, and $3,096,513 for 2018—or a total of $8,597,393—as well as statutory interest on the refund amounts.  *Id.*

30.    In response to a joint request by the parties in light of the pending Settlement Agreement, on November 19, 2021, the PTAB adjourned hearings on the Sears PTAB Appeals that had been scheduled for November 30, 2021 to a date in 2022 to be determined.  *Id.* ¶ 7.

### III.    Settlement of the EDA and PTAB Disputes

31.     Between January and August 2021, the Debtors, the School District, and the Village engaged in a lengthy settlement negotiation process, which ultimately resulted in the Settlement Agreement, with the assistance of John DeGroote, a highly experienced and nationally-respected mediator. *See Declaration of Brian J. Griffith in Support of Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Entry of an Order Approving Settlement Agreement Regarding the EDA Agreement and Tax Assessment Issues*, filed contemporaneously herewith ("**Griffith Decl.**") ¶¶ 4-7. The Debtors, the School District, and the Village engaged Mr. DeGroote to help bridge the remaining gap among them after significant good faith attempts to resolve the dispute among themselves. *Id. ¶ 6.* The settlement discussions and mediation focused on reaching a global resolution of the two separate legal disputes—*i.e.*, (i) the status and future of the EDA, including rejection of the EDA Agreement, dissolution of the EDA, and resolution of the Illinois Action; and (ii) the Sears PTAB Appeals. *Id.* ¶ 4.

32.     The mediation process included a group mediation session on March 9, 2021, as well as numerous telephone calls, emails, and *ad hoc* discussions of the various complex and thorny issues involved in the two distinct disputes. *Id.* ¶ 6. After several rounds of negotiations, the process culminated in a neutral mediator's proposal presented by Mr. DeGroote on August 8, 2021. *Id.* ¶ 6.

33.     From that mediator's proposal, the Parties arrived at an agreement on a global settlement of the EDA and PTAB disputes. *Id.* ¶ 7. That agreement is reflected in the Settlement Agreement. *Id.* The Debtors' Restructuring Committee has approved the terms of the Settlement Agreement, and the Unsecured Creditors' Committee and the Post Effective Date Committee have also reviewed and given their approval of the Settlement Agreement. *Id.* ¶ 8.

34.     A summary of the principal terms of the Settlement Agreement as relevant to the

Debtors are set forth below:[5]

### *Debtors*

- The Village will pay the Debtors $12.35 within five business days after the EDA Dissolution Entry Date (as defined below).  The Village will make these payments solely out of EDA Funds currently being held in its Special Tax Allocation Fund.

- After receiving their $12.35 million payment from the Village, the Debtors will withdraw with prejudice all pending property tax assessment appeals before the PTAB Board relating to real property of the Debtors located in the EDA, including the Sears PTAB Appeals.

- The EDA Agreement will be rejected as of the EDA Dissolution Effective Date (defined below) without the need for further action from the Debtors, notice or court order, contingent upon the School District filing the stipulation executed by Transform irrevocably withdrawing its designation of the EDA Agreement, and upon the Debtors and the Village receiving the payments provided for in the Settlement Agreement.

### *The Village*

- The Village will adopt an ordinance (the "**Ordinance**") dissolving the EDA within five business days after the order of this Court approving the Settlement Agreement becomes a final order (the "**EDA Dissolution Entry Date**"), with the Ordinance to become effective as of December 31, 2021 (the "**EDA Dissolution Effective Date**").  If the Ordinance does not become effective on or before December 31, 2021, the Settlement Agreement will be deemed null and void and unenforceable.

- The Village will receive a one-time cash payment of $1.5 million within five business days after the EDA Dissolution Entry Date.  The Village will receive these payments solely out of EDA Funds currently being held in its Special Tax Allocation Fund.

- The Village will serve a certified copy of the Ordinance on the Cook County Clerk and Cook County Treasurer within seven business days following the EDA Dissolution Entry Date.

---

[5] The description of the Settlement Agreement provided herein is only intended as a summary of the principal terms concerning the Debtors.  For the avoidance of doubt, the terms of the Settlement Agreement itself, and not the summary, shall govern.

13

*The School District and Other Taxing Districts*

- The School District will receive all EDA Funds that remain in the Special Tax Allocation Fund after the Debtors and the Village have each received their respective $12.35 million and $1.5 million payments as provided in the Settlement Agreement and subject to a $40,000 cash reserve to satisfy all reporting and auditing costs required of the Village under Section 4.7 of the EDA Act.

- The School District will resolve and pay all claims by and from other taxing districts (excluding the Village) relating to the Illinois Action and consistent with the EDA Act.

- The School District will comply with the settlement agreement between the School District and Transform, executed as of December 9, 2020 and amended as of May 17, 2021.

- Within five business days of the EDA Dissolution Entry Date, the School District, in concert with the Other Taxing Districts, will dismiss, with prejudice, all non-bankruptcy litigation relating to the EDA, including the Illinois Action.

- Within 10 business days after the EDA Dissolution Entry Date, the School District will file the stipulation executed by Transform irrevocably withdrawing its designation of the EDA Agreement; and will, within five business days following the Debtors' rejection of the EDA Agreement becoming effective, withdraw and/or dismiss, with prejudice, all claims filed in the chapter 11 cases and the Bankruptcy Appeal pending before the District Court.

- All Parties will dismiss, with prejudice, all litigation against the other Parties and release all claims against each other relating to the Illinois Action, the PTAB Appeals, these chapter 11 cases, the EDA Act, or the EDA Agreement, including all claims for violation of the automatic stay and all claims relating to the operation and administration of the EDA and compliance with the EDA Act, except for each of the Parties' respective performance of the obligations set forth in the Settlement Agreement.

- All other taxing districts will join in and comply with (i) the authorizations, directions, and contributions in the Settlement Agreement; (ii) dismissal with prejudice of applicable litigation, including the Illinois Action, provided for in the Settlement Agreement; and (iii) the grant of mutual releases by and among the Parties as set forth in the Settlement Agreement.

14

## THE SETTLEMENT AGREEMENT SHOULD BE APPROVED

35.    The Settlement Agreement is fair and equitable, reasonable, and in the best interests of the Debtors' estates.  The Debtors, therefore, request approval of the Settlement Agreement pursuant to Fed. R. Bankr. P. 9019(a).

## I.    Legal Standards

36.    Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the [Debtors] and after notice and a hearing, the court may approve a compromise or settlement."  Rule 9019(a) "empowers the Bankruptcy Court to approve compromises and settlements if they are in the best interests of the estate."  *Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

37.    In determining whether to approve a proposed settlement, a Bankruptcy Court must find that the proposed settlement is fair and equitable, reasonable, and in the best interests of the debtor's estates and creditors.  *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Air Line Pilots Ass'n, Int'l. v. Am. Nat'l Bank & Tr. Co. of Chicago (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).  The decision to approve a particular compromise or settlement is within the sound discretion of the Bankruptcy Court, *Drexel Burnham*, 134 B.R. at 505, but that discretion should be exercised "in light of the general public policy favoring settlements."  *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); *see also Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) ("[T]he general rule [is] that settlements are favored and, in fact, encouraged by the approval process outlined above.").  It is appropriate for the Court to consider the opinions of the Debtors that a settlement is fair and equitable.  *Nellis*, 165 B.R. at 122.

38.    The Court need not decide the numerous issues of law and fact raised by a settlement in order to grant approval; rather, it should "canvass the issues and see whether the

settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)); *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) (in making the determination of reasonableness, the court need not conduct a "mini-trial" on the merits). Put another way, "[a]ll that [the proponent of the settlement] must do is establish [that] it is prudent to eliminate the risks of litigation to achieve specific certainty though admittedly [the settlement] might be considerably less (or more) than were the case fought to the bitter end." *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 573 (5th Cir. 1960) (citation omitted).

39.     Relying on the guiding language of *TMT Trailer Ferry*, courts in this Circuit have set forth the following factors to be considered in evaluating the reasonableness of settlement:

a.  the probability of success in litigation, with due consideration for the uncertainty in fact and law;

b.  the difficulties of collecting any litigated judgment;

c.  the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay;

d.  the proportion of creditors who do not object to, or who affirmatively support, the proposed settlement;

e.  the competence and experience of counsel who support the settlement;

f.  the relative benefits to be received by members of any affected class;

g.  the extent to which the settlement is truly the product of arm's-length bargaining and not the product of fraud or collusion; and

h.  the debtor's informed judgment that the settlement is fair and reasonable.

*See Purofied Down Prods.*, 150 B.R. at 522; *Drexel Burnham*, 134 B.R. at 506.

## II.     The Settlement Agreement Satisfies the Requirements of Rule 9019(a)

40.     In this case, the Debtors, acting through their independent Restructuring Committee and their advisors and with the support of the Unsecured Creditors' Committee and the Post

Effective Date Committee, have concluded that the Settlement Agreement is fair and equitable, reasonable, and in the best interests of the estates.

41.     **First**, the Settlement Agreement provides significant and near-immediate benefits to the Debtors and their creditors, in contrast to the uncertainty and expense of continued litigation of the PTAB Appeals and the EDA dispute.  If approved, the Settlement Agreement would fully and finally resolve these disputes, permitting the Debtors and their advisors to focus resources and attention on consummating the Plan and concluding these cases.

42.     As to the PTAB Appeals, the Debtors' best-case scenario through continued litigation would be recovery of approximately $14.5 million in tax refunds.  And even that best-case scenario would require the Debtors to continue to incur litigation expenses that would reduce the overall recovery to the estates.  In contrast, the Settlement Agreement gives the Debtors close to the full amount they seek *immediately*—providing the estates with $12.35 million in desperately needed funds within days of approval—without incurring any further legal costs.

43.     As to the EDA dispute, the Debtors face the prospect of prolonged, costly litigation in the Illinois Action—a case which has already stretched on for nearly three years, and which is still in the pleading stage.  For the Debtors, "success" in the Illinois Action would simply mean that they may retain the right to potentially assign the EDA Agreement to another as-yet unidentified buyer (a right disputed by the School District).  However, the value of that right is contingent on several factors, including: (i) whether Transform de-designates the EDA Agreement, (ii) a decision as to whether the EDA Agreement can be assigned to another party at all, and (iii) whether any as-yet unidentified party would be willing to pay for assignment of EDA Agreement, notwithstanding the substantial litigation and uncertainty that would come with it.  This is a highly contested right, to which it is difficult to attach a dollar value.  However, in the context of a global

17

settlement, the ability to thwart dissolution of the EDA, including by potentially assigning the agreement to a third party, proved to be a valuable bargaining chip that the Debtors have leveraged in exchange for a very favorable settlement of the PTAB Appeals.

44.    In short, the global Settlement Agreement provides significant value to all stakeholders.  In exchange for significant and much-needed funds, the Debtors will reject the EDA Agreement and the Village will pass an ordinance dissolving the EDA effective as of December 31, 2021.  As a result, the School District and other taxing districts will achieve their goal of ending the EDA, and the Parties will no longer face the burden and expense of further litigation.  Thus, the first, second, third, and sixth *TMT Trailer Ferry* factors favor approval of the Settlement Agreement.

45.    *Second*, the Unsecured Creditors' Committee and the Post Effective Date Committee support the Settlement Agreement.  The fourth *TMT Trailer Ferry* factor therefore also favors approval.

46.    *Third*, the Parties are represented by sophisticated and experienced professionals— highly regarded law firms and financial advisors with significant restructuring, litigation, and other relevant experience.  The Debtors' professionals, for their part, fully understand complexity of the EDA dispute and the PTAB Appeals, as they have been analyzing, discussing, and litigating these issues for several years already.  *See* Griffith Decl. ¶ 13.  In addition to Weil, Gotshal & Manges, LLP, the Debtors' counsel in these bankruptcy proceedings, the Debtors also are represented in connection with the Illinois Action and the Sears PTAB Appeals by highly experienced counsel from Neal Gerber Eisenberg LLP, including partner David S. Martin, who has over 35 years of experience with property tax issues, including specifically with the Cook County, Illinois property tax scheme and PTAB Board.  *See id. ¶* 5; Martin Decl. ¶ 1.  The Debtors' professionals fully

understand the potential consequences to creditors of the estates if the Settlement Agreement is not consummated and have recommended that the Debtors enter into the Settlement Agreement. Griffith Decl. ¶ 13.  The fifth *TMT Trailer Ferry* factor, therefore, also favors approval.

47.     **Fourth**, the Settlement Agreement is the product of lengthy, sometimes contentious, arm's length negotiations between the Parties.  *See* Griffith Decl. ¶ 14.  Most recently, those negotiations were facilitated by Mr. DeGroote, a highly skilled and experienced mediator, who provided invaluable assistance to the Parties in reaching a global Settlement Agreement acceptable to all sides.  *See id.* ¶¶ 6-7. The seventh *TMT Trailer Ferry* factor, therefore, also supports approval.

48.     **Fifth**, the Debtors—in consultation with the Unsecured Creditors' Committee and the Post Effective Date Committee, and supported by the reasoned judgment of the experienced Restructuring Committee—believe the Settlement Agreement is fair and equitable, reasonable, and in the best interests of the estates.  *Id.* ¶ 8.  The final *TMT Trailer Ferry* factor, therefore, also supports approval.

49.     Accordingly, the Debtors submit that the settlement and compromise embodied in the Settlement Agreement is appropriate in light of the relevant factors, is fair and equitable, and should be approved pursuant to Fed. R. Bankr. P. 9019(a).

III.    **Rejection of the EDA Agreement Pursuant to the Settlement Agreement Reflects the Debtors' Sound Business Judgment.**

50.     Section 365(a) of the Bankruptcy Code provides that a debtor in possession "subject to the court's approval, may assume or reject any executory contract."  11 U.S.C § 365(a).  Courts defer to a debtor's business judgment in rejecting an executory contract and, upon finding that a debtor has exercised its sound business judgment, approve the rejection under section 365(a) of the Bankruptcy Code.  *See, e.g.*, *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984)

(recognizing the "business judgment" standard used to approve rejection of executory contracts); *In re Penn Traffic Co.*, 524 F.3d 373, 383 (2d Cir. 2008). The "business judgment" standard is not a strict standard; it requires only a showing that either assumption or rejection of the executory contract will benefit the debtor's estate. *See In re Helm*, 335 B.R. 528, 538 (Bankr. S.D.N.Y. 2006) ("To meet the business judgment test, the debtor in possession must 'establish that rejection will benefit the estate.'") (citation omitted); *see also In re Old Carco LLC*, 406 B.R. 180, 188-90 (Bankr. S.D.N.Y. 2009) ("A debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of 'bad faith, or whim or caprice.'") (quoting *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001)).

51.    The Debtors have determined in their sound business judgment that rejecting the EDA Agreement in connection with this global settlement of the outstanding EDA and PTAB disputes is in the best interest of the Debtors' estates in light of, *inter alia*, the total monetary recovery that the estates will receive in the near term. *See supra* ¶¶ 41-44; Griffith Decl. ¶¶ 8-14.

## **WAIVER OF BANKRUPTCY RULE 6004(h) REQUIREMENT IS WARRANTED**

52.    To implement the foregoing successfully, the Debtors request that the Court waive the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). As explained above, the relief requested herein is necessary for the Debtors to expeditiously consummate the Settlement Agreement and realize the benefits thereunder. Accordingly, ample cause exists to justify granting a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h).

## **NOTICE**

53.    Notice of this Motion will be provided in accordance with the procedures set forth in the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 (ECF No. 405) (the "**Amended Case Management Order**"). Notice also

will be provided to all Parties to the Settlement Agreement.  The Debtors respectfully submit that no further notice is required.

54.    No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request that the Court enter the Proposed Order attached hereto as Exhibit 2, approving the Settlement Agreement and granting such additional and further relief as the Court deems just and appropriate.

Dated: November 23, 2021
      New York, New York

      */s/ Jared R. Friedmann*      
      WEIL, GOTSHAL & MANGES LLP
      767 Fifth Avenue
      New York, New York  10153
      Telephone:  (212) 310-8000
      Facsimile:  (212) 310-8007
      Jared R. Friedmann
      Jacqueline Marcus
      Garrett Fail

      *Attorneys for Debtors*
      *and Debtors in Possession*

## Exhibit 1

**Settlement Agreement**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |

## SETTLEMENT AGREEMENT CONCERNING THE EDA

**WHEREAS**, in 1989 the economic development project area (the "**EDA**") was established pursuant to the Economic Development Area Tax Increment Allocation Act, 20 ILCS 620/1 *et seq.* (the "**EDA Act**"), certain ordinances were entered in connection therewith, and that certain economic development agreement (the "**EDA Agreement**") was entered by and between the Village of Hoffman Estates (the "**Village**") and Sears, Roebuck & Co., as the developer ("**Sears**" or the "**Developer**").

**WHEREAS**, on October 10, 2018, Community Unit School District 300 (the "**School District**") brought suit against the Village and Sears Holdings Corporation ("**SHC**," and together with certain of its affiliates, including Sears, KMART Holding Corporation and Sears Holdings Management Corporation ("**SHMC**"), as debtors and debtors in possession in the above-captioned chapter 11 cases (the "**Bankruptcy Cases**"), collectively, the "**Debtors**") in the Circuit Court of Cook County, State of Illinois (the "**Circuit Court**"), in a matter styled *Community Unit School District 300 v. Village of Hoffman Estates, et al.*, Case No. 2018 CH 12683 (the "**Illinois Action**"), seeking declaratory, injunctive and other relief arising from SHC's alleged failure to comply with certain terms and conditions of the EDA Act and the EDA Agreement, pursuant to which the Developer receives annual distributions from the Village's special tax allocation fund

maintained under the EDA Act (the "**Special Tax Allocation Fund**" and the funds therein, the "**EDA Funds**").

**WHEREAS**, on October 15, 2018, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") commencing the Bankruptcy Cases and staying the Illinois Action pursuant to section 362 of the Bankruptcy Code.

**WHEREAS**, on January 11, 2019 (ECF No. 1548), the Bankruptcy Court entered a stipulation and order that, among other things, authorized and directed the Village to (i) distribute the forty-five percent (45%) portion (the "**45% Portion**") of those EDA Funds then held in the Special Tax Allocation Fund consisting of property taxes levied for tax year 2017 that were distributed in calendar year 2018 (the "**2017 EDA Funds**") to the Village, the School District, and various other taxing districts within the EDA (specifically, Barrington Area Public Library District, Elgin Community College, Barrington Township, Metropolitan Water Reclamation District of Greater Chicago, Northwest Mosquito Abatement District, Hoffman Estates Park District, Poplar Creek Library District, School District U-46, County of Cook, Cook County Forest Preserve District, collectively, the "**Other Taxing Districts**") and (ii) continue to hold in the Special Tax Allocation Fund the then remaining fifty-five percent (55%) (the "**55% Portion**") of such 2017 EDA Funds pending further order of the Bankruptcy Court or a written agreement among the parties thereto.

**WHEREAS**, on April 18, 2019, the Bankruptcy Court issued (i) the *Order Granting Community Unit School District 300's Motion for Abstention* (ECF No. 3362) allowing the Circuit Court to adjudicate certain issues raised before the Bankruptcy Court, and (ii) the *Order Directing*

*Partial Turnover of EDA Funds to Debtors and Reserving the Balance Pending Court Order* (ECF No. 3678) ordering and directing the Village (a) to disburse to the Developer $2,508,660.33 of the 2017 EDA Funds then held in the Special Tax Allocation Fund and (b) to continue to hold in the Special Tax Allocation Fund the then balance of the 2017 EDA Funds.

**WHEREAS**, on October 23, 2019, the Bankruptcy Court entered the *Amended Stipulation and Order By and Among the Village of Hoffman Estates, the Debtors, and the Community Unit School District 300 Concerning 2017 EDA Funds Held in the Special Tax Allocation Fund* (ECF No. 5492), pursuant to which, among other things: (i) the Debtors relinquished any rights, claims or interests they may have had with respect to property taxes levied for tax year 2018 that were distributed in calendar year 2019 (the "**2018 EDA Funds**") and any subsequent years' EDA Funds in exchange for, among other things, receipt of $5,153,317 of the 2017 EDA Funds then held in the Special Tax Allocation Fund; and (ii) the School District released all rights, claims and interests in and to the 2017 EDA Funds then held in the Special Tax Allocation Fund and withdrew its remaining claims and objections to confirmation of the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* (ECF No. 4476) (as the same may have been amended or modified, the "**Plan**," and as subsequently confirmed by order of the Bankruptcy Court on October 15, 2019 (the "**Confirmation Order**") in exchange for, among other things, receipt of $2,000,000 of the 2017 EDA Funds then held in the Special Tax Allocation Fund.

**WHEREAS**, on March 4, 2020, the Circuit Court entered an agreed order that, among other things, authorized and directed the Village to (i) distribute the 45% Portion of the 2018 EDA Funds then held in the Special Tax Allocation Fund to the School District and the Other Taxing Districts consistent with the EDA Act and (ii) continue to hold in the Special Tax Allocation Fund

the then remaining 55% Portion of such 2018 EDA Funds (there being no 2017 EDA Funds remaining) pending further order of the Circuit Court.

WHEREAS, on or about December 9, 2016, November 13, 2017, and January 23, 2019, SHMC, one of the Debtors, filed before the Property Tax Appeal Board (the "**PTAB Board**") certain property tax assessment appeals for tax years 2016, 2017 and 2018 (Case Nos. 16-21549, 17-20023 and 18-23983, respectively) relating to certain real property located within the EDA and seeking property tax assessment refunds (the "**Sears PTAB Appeals**"). The School District and Village intervened in each of the Sears PTAB Appeals, which are currently scheduled for hearings before the PTAB Board commencing on November 30, 2021.

WHEREAS, by Order dated November 23, 2020 (ECF No. 9116), the Bankruptcy Court denied the School District's motion to deem the EDA Agreement rejected pursuant to the Plan, or alternatively, to compel the Debtors to reject the EDA Agreement; and on December 4, 2020, the School District appealed such order (the "**Bankruptcy Appeal**") to the United States District Court for the Southern District of New York (the "**District Court**").  By Order dated December 23, 2020, including extension orders entered thereafter, all deadlines in the Bankruptcy Appeal have been stayed pending further order of the District Court.

WHEREAS, on or about December 9, 2020, the School District, Transform (as defined therein) and the other Plaintiffs (as defined below) executed that certain settlement agreement (as thereafter amended, the "**Transform Settlement Agreement**"), pursuant to which, among other things, the parties thereto settled certain asserted rights, claims and interests of Transform relating to, among other things, the Illinois Action, the EDA Agreement and certain EDA Funds.

WHEREAS, the initial complaint filed in the Illinois Action by the School District has been amended from time to time to, among other things, add and realign parties thereto such that

currently pending before the Circuit Court is the "Fifth Amended Verified Complaint", which complaint remains subject to, among other things, the Circuit Court's Order dated August 10, 2021 directing plaintiffs (the "**Plaintiffs**") to file their verifications to the Fifth Amended Verified Complaint, or to file a Sixth Amended Verified Complaint.

**WHEREAS**, on or about February 24, 2021, the Debtors, the Village and the School District agreed to non-binding mediation ("**Mediation**") before John DeGroote of DeGroote Partners, LLC regarding, among other things, various issues and claims relating to the Illinois Action, the Sears PTAB Appeals, the Bankruptcy Cases, the Bankruptcy Appeal, the EDA, the EDA Agreement, the EDA Act and the EDA Funds.

**WHEREAS**, as a result of the Mediation, the Debtors, the Village and the School District have reached agreement on the principal terms of a global settlement, and the Other Taxing Districts have joined in agreement on the terms of that global settlement, which settlement terms are fully set forth in this agreement (this "**Settlement Agreement**"), made and entered into as of _____, 2021. The Cook County Treasurer joined as a signatory to this Settlement Agreement, under principles of good faith and comity, only to perform the necessary obligations required, as the Cook County Treasurer, to implement the agreement of the Debtors, Village, School District and Other Taxing Districts in the Settlement Agreement.

**WHEREAS,** notwithstanding anything to the contrary, the Cook County Clerk's Office, not being a party subject to the Court's jurisdiction nor being a party to the Settlement Agreement, but respecting the principles of comity, will take all actions necessary to make the EDA properties fully subject to the property tax levies of the School District, the Village, and the Other Taxing Districts for the next available tax year, which is 2021 and which is billed in calendar year 2022 following the EDA Dissolution Entry Date (as defined below) and receipt of the Ordinance as

described in Section 3.f. below and which must be presented to the Cook County Clerk's Office before the last day of May 2022.

**WHEREAS,** the School District shall receive substantial financial benefit, including their tax base benefit, of the Debtors' irrevocable rejection of the EDA Agreement, the irrevocable withdrawal and waiver by Transform of its designation rights in respect of the EDA Agreement and the entry by the Village of the Ordinance (as defined below) on or prior to the EDA Dissolution Effective Date (as defined below and subject to the proviso in Section 3.e. herein regarding the non-occurrence of the EDA Dissolution Effective Date).

**WHEREAS**, each Party (as defined below) covenants and represents that it has obtained (and will provide written proof of the same to those Parties that request the foregoing) all required internal approvals and authorizations in respect of the terms of this Settlement Agreement and therefore maintains full authority to enter into and effectuate their respective responsibilities and obligations under the terms of this Settlement Agreement.

**NOW, THEREFORE,** in consideration of the foregoing and the mutual promises and covenants contained herein and other good and valuable consideration exchanged by and among the Debtors, the Village, the School District and the Other Taxing Districts (collectively, the "**Parties**"), the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the Parties each agrees as follows:

1.      The above recitals and attached exhibits are incorporated and included in the terms of this Settlement Agreement.

2.      In consideration of the mutual covenants and agreements contained herein and subject to the terms and conditions of this Settlement Agreement, the **<u>Debtors</u>**:

a.    Shall, within five (5) business days of execution of this Settlement Agreement by each of the Parties, as well as the Cook County Treasurer, file in the Bankruptcy Court a motion pursuant to Fed. R. Bankr. P. 9019(a) for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Settlement Order**"), (i) approving this Settlement Agreement and (ii) ordering the EDA Agreement rejected without any further action by the Debtors, notice, or order from the Bankruptcy Court, effective solely as of December 31, 2021, contingent upon (A) the School District's filing of the Designation Rights Stipulation (as defined below), (B) the Debtors' receipt of the $12.35 million distribution in accordance with Section 2.b. of this Settlement Agreement, and (C) the Village's receipt of the $1.5 million distribution in accordance with Section 3.d. of this Settlement Agreement.  In connection with such rejection of the EDA Agreement, the Village agrees that it holds no rejection damages claims.

b.    Shall receive a one-time cash settlement payment of $12.35 million (twelve million three hundred fifty thousand dollars), which shall be paid in full by the Village solely from the Special Tax Allocation Fund within five (5) business days following the EDA Dissolution Entry Date. Funding of the foregoing settlement distribution shall come solely from a combination of the following sources in the following order: (i) from the 55% Portion of the 2018 EDA Funds currently held the Special Tax Allocation Fund; (ii) from the 55% Portion of the property taxes levied for tax year 2019 that were extended and collected (net of statutory deductions under the EDA Act and any tax assessment offsets from the Cook County Treasurer) in calendar year 2020 (the "**2019 EDA Funds**") and currently held in the Special Tax Allocation Fund; (iii) from the 55% Portion of the property taxes levied for tax year 2020 that were extended and collected (net of statutory deductions under the EDA Act and any tax assessment offsets from the Cook County Treasurer) in calendar year 2021 (the "**2020 EDA Funds**") and currently held in the Special Tax

Allocation Fund; (iv) from the 45% Portion of the 2019 EDA Funds currently held in the Special

Tax Allocation Fund; and (v) from the 45% Portion of the 2020 EDA Funds currently held in or

to be received into the Special Tax Allocation Fund.

        c.      Shall, within ten (10) business days after EDA Dissolution Entry Date

(but only after the Debtors' receipt of the settlement payment described in Section 2.b. above),

withdraw or otherwise cause to be withdrawn, *with prejudice*, all pending property tax assessment

appeals before the PTAB Board relating to real property of the Debtors located solely within the

EDA, including, without limitation, the Sears PTAB Appeals.

        3.      In consideration of the mutual covenants and agreements contained herein and

subject to the terms and conditions of this Settlement Agreement, the **Village**:

        a.      Shall receive and retain, without offset or deduction, all statutory

distributions provided for and entitled to under the EDA Act for tax year 2020 (i.e., calendar year

2021) and all prior tax years during the existence of the EDA.

        b.      Shall continue to maintain all of its rights, claims and interests provided for

and entitled to under the EDA Act through the end of tax year 2020, except as otherwise expressly

set forth in this Settlement Agreement.

        c.      Shall receive annually as provided by law any property taxes levied by the

Village directly against properties formerly located in the EDA and disbursed by the Cook County

Treasurer for tax years 2021 and thereafter (i.e., calendar years 2022 and thereafter).

        d.      Shall be paid solely from the Special Tax Allocation Fund a one-time cash

settlement payment of $1.5 million (one million five hundred thousand dollars) within five (5)

business days following the EDA Dissolution Entry Date. Funding of the foregoing settlement

distribution shall come solely from a combination of the following sources in the following order:

(i) from the 55% Portion of the 2018 EDA Funds currently held in the Special Tax Allocation Fund: (ii) from the 55% Portion of the 2019 EDA Funds currently held in the Special Tax Allocation Fund; (iii) from the 55% Portion of the 2020 EDA Funds currently held in the Special Tax Allocation Fund; (iv) from the 45% Portion of the 2019 EDA Funds currently held in the Special Tax Allocation Fund; and (v) from the 45% Portion of the 2020 EDA Funds currently held in or to be received into the Special Tax Allocation Fund.

e.      Shall, subject to the occurrence of the Settlement Effective Date, adopt or otherwise cause the adoption of an ordinance dissolving the EDA (the "**Ordinance**"), substantially in the form attached hereto as **Exhibit B,** which Ordinance shall be entered and published within five (5) business days following the Settlement Effective Date (the "**EDA Dissolution Entry Date**"), but which EDA dissolution shall only become effective as of December 31, 2021 (the "**EDA Dissolution Effective Date**"); provided, however, that if the EDA Dissolution Entry Date does not occur on or prior to December 31, 2021, this Settlement Agreement (including, without limitation, any and all  actions undertaken in connection with this Settlement Agreement) is and shall be deemed null and void and unenforceable, all Parties shall retain all of their respective rights, claims and interests under or in respect of the EDA, the EDA Act, the EDA Agreement and otherwise, and the Village shall not have waived, nor be deemed to have waived, any rights, claims and/or interests it may have under the EDA Act, including, without limitation, under Section 4(g) thereof.

f.      Shall, within seven (7) business days following EDA Dissolution Entry Date (subject to the proviso in Section 3.e. herein regarding the non-occurrence of the EDA Dissolution Effective Date), serve a certified copy of the Ordinance on both the Cook County Clerk and the Cook County Treasurer. The Cook County Clerk shall not be subject to the

jurisdiction of the Bankruptcy Court, however, in good faith and respect for comity, upon the Settlement Effective Date, the Clerk's Office shall take all actions necessary to the extent and following the occurrence of the EDA Dissolution Effective Date to make the EDA properties fully subject to the property tax levies of the School District, the Village, and the Other Taxing Districts for tax year 2021 pursuant to Section 7 of this Settlement Agreement. The Cook County Treasurer shall take all actions necessary to distribute funds according to the adjusted levies set up by the Cook County Clerk's Office to the extent and following the occurrence of the EDA Dissolution Effective Date making the EDA properties fully subject to the property tax levies of the School District and the Other Taxing Districts for tax year 2021 pursuant to Section 7 of this Settlement Agreement.

g.    Shall, subject to the applicable terms of and obligations under this Settlement Agreement, continue to comply with the EDA Act until the occurrence of the EDA Dissolution Effective Date (subject to the proviso in Section 3.e. herein regarding the non-occurrence of the EDA Dissolution Effective Date).

h.    Shall, subject to the occurrence of the Settlement Effective Date, disburse to the Debtors and the School District EDA Funds in such amounts, from such sources and in accordance with such terms and conditions as set forth in this Settlement Agreement, including but not limited, to Section 4.b. herein.

i.    Shall provide to the School District an accounting of all EDA Funds remaining prior to disbursement of such EDA Funds to the School District pursuant to Section 4.b. herein.

4.    In consideration of the mutual covenants and agreements contained herein and subject to the terms and conditions of this Settlement Agreement, the **School District**:

a.    Shall, within five (5) business days of the EDA Dissolution Entry Date, in concert with the Other Taxing Districts, dismiss or otherwise cause to be dismissed, *with prejudice*, all non-bankruptcy litigation relating to the EDA, including, without limitation, the Illinois Action and the objections to the Sears PTAB Appeals, including by filing in the Circuit Court an agreed upon dismissal order (the "**Circuit Court Dismissal Order**") substantially in the form attached hereto as **Exhibit C**. *For the avoidance of doubt*, the School District shall (i) dismiss its objections, claims and related filings pending before the Bankruptcy Court at the time and in the manner provided in Section 4.f. *infra*, and (ii) dismiss its Bankruptcy Appeal at the time and in the manner provided in Section 4.g. *infra*.

b.    Shall receive from the Village any and all EDA Funds available from the 55% Portion and the 45% Portion of the EDA Funds, if any, remaining in the Special Tax Allocation Fund (i) solely after receipt by the Debtors and the Village of all of their respective settlement distributions as set forth in and required under Sections 2.a. and 3.d. herein, and (ii) subject to a cash reserve of $40,000.00 (forty thousand dollars) to satisfy all reporting and auditing costs required of the Village under Section 4.7 of the EDA Act.  Such distributions by the Village, solely from the EDA Funds then remaining in the Special Tax Allocation Fund, shall be made no later than seven (7) business days after the Debtors and the Village have received full and final payment of their respective distributions as set forth in and required under Sections 2.a. and 3.d. herein. To the extent any additional 2020 EDA Funds are subsequently received by the Village from the Cook County Treasurer into the Special Tax Allocation Fund, such 2020 EDA Funds shall be distributed to the School District by the Village from the Special Tax Allocation Fund within fourteen (14) business days of each receipt thereof.

      c.      Shall use any and all EDA Funds paid to the School District pursuant to this

Settlement Agreement to satisfy its obligations, including: (i) first, to comply with the terms of the

Transform Settlement Agreement unless Transform and the School District agree otherwise; and

(ii) second, to distribute the balance of the EDA Funds, after payments required pursuant to this

Settlement Agreement and the Transform Settlement Agreement, to the School District and the

Other Taxing Districts, excepting the Village, consistent with the EDA Act (including, without

limitation, Section 4(g)(2)(D) thereof), and utilizing tax year 2020 tax rates to calculate the

distributions. The receipt by each of the Other Taxing Districts of its proportionate share of the

balance of EDA Funds constitutes an acknowledgment that all of its claims relating to the Illinois

Action have been settled and paid.

      d.      Shall receive annually as provided by law its applicable non-EDA tax share

of amounts provided by the Cook County Treasurer for tax years 2021 and thereafter (i.e., calendar

years 2022 and thereafter).

      e.      Shall, within ten (10) business days following the EDA Dissolution Entry

Date, file with the Bankruptcy Court the "Stipulation Irrevocably Withdrawing Designation of

Transform Holdco LLC of Sears Economic Development Agreement" (the "**Designation Rights**

**Stipulation**"), effective as of the EDA Dissolution Effective Date, substantially in the form

attached hereto as __Exhibit D__.

      f.      Shall, within five (5) business days following the Debtors' rejection of the

EDA Agreement becoming effective, withdraw or otherwise cause to be withdrawn, *with*

*prejudice*, all of the School District's objections, claims and related filings pending before the

Bankruptcy Court. School District U-46 also shall, within five (5) business days following the

Debtors' rejection of the EDA Agreement becoming effective, withdraw or otherwise cause to be

withdrawn, *with prejudice*, all of its objections, claims and related filings pending before the Bankruptcy Court.

        g.      Shall, within five (5) business days following the Debtors' rejection of the EDA Agreement becoming effective, dismiss or otherwise cause to be dismissed, *with prejudice*, the Bankruptcy Appeal pending before the District Court, including by filing in the District Court an agreed upon stipulation of voluntary dismissal, substantially in the form attached hereto as **Exhibit E**.

        5.      In consideration of the mutual covenants and agreements contained herein and subject to the terms and conditions of this Settlement Agreement, including, without limitation, the occurrence of the Settlement Effective Date, the School District and the Other Taxing Districts each agree, authorize and direct the Cook County Treasurer (and any other applicable agency), and the Cook County Treasurer expressly agrees, to deduct, debit, offset, reimburse and/or otherwise collect, directly and solely from the ad valorem tax levy for the School District and the Other Taxing Districts (it being clear that the Village shall be expressly excluded from any and all such liabilities, deductions, debits, offsets, collections and/or reimbursement obligations notwithstanding the EDA Act or any other applicable law) in proportion to their recovery percentages (consistent with the language in the last sentence of Section 4.5(b) of the EDA Act), any and all property tax assessment refund liabilities arising from or relating to any and all properties located within the EDA prior to and including tax year 2020 that were paid by or through the Cook County Treasurer in respect of any property tax assessment related refunds and appeals (including any PTAB appeals) for any time periods prior to the EDA Dissolution Effective Date. Once the Village is excluded, the Cook County Treasurer's Office will proportionately increase each remaining Taxing District's deduction, debit, or offset for such refund liabilities based on the

13

remaining Taxing District's tax rates.  Such refund liabilities paid on or after levy year 2021 shall

be included in the Cook County Treasurer's annual certification pursuant to 35 ILCS 200/18-233.

6.      Notwithstanding anything herein to the contrary, the Village and its officers,

directors, committee members, employees, agents, advisors, representatives, attorneys and other

professionals (the "**Village Representatives**") are hereby exculpated and shall have no liability to

the fullest extent of any and all claims (as defined in Section 101(5) of the Bankruptcy Code),

causes of actions, demands, suits, liabilities, obligations, losses, damages, offsets and/or judgments

of any kind or nature, whether known or unknown, contingent or non-contingent, statutory or

non-statutory, arising from, out of or based upon actions taken or not taken by the Village or the

Village Representatives in respect of the terms of this Settlement Agreement, including, without

limitation, the distributions made or to be made under this Settlement Agreement, including the

Village's distributions from the Special Tax Allocation Fund solely to the School District and to

no Other Taxing Districts of any remaining 55% Portion or 45% Portion of the EDA Funds.  For

the avoidance of doubt, neither the Village nor the Village Representatives are exculpated or

otherwise excused from liability for any breach of the terms of this Settlement Agreement.

7.      Though not a party and not subject to the jurisdiction of the Bankruptcy Court, but

in good faith and respect for comity, upon the Settlement Effective Date, the Cook County Clerk's

Office shall act to extend the property tax levies of the Village, the School District and the Other

Taxing Districts directly against the properties within the EDA beginning with the 2021 tax year

and that the incremental equalized assessed value of the properties located within the EDA will be

recognized in tax year 2021 as "New Property" under the Illinois Property Tax Extension

Limitation Law (35 ILCS 200/18-155, *et seq.*)  Upon the Settlement Effective Date, the Cook

County Treasurer's Office shall distribute any and all property taxes extended against properties

14

located within the EDA to the Village, the School District and the Other Taxing Districts based on their respective tax rates beginning with the 2021 tax year.

8.    Each of the Parties, on behalf of themselves and their past, present, and future officers, directors, board members, trustees, employees, agents, advisors, accountants, attorneys, assignees, and representatives or other entities acting on their behalf or through which they claim a beneficial interest, hereby mutually exculpate, release and absolutely and forever discharge (*except for each of the Parties' respective performance of the obligations set forth in this Settlement Agreement and as otherwise provided herein*) each other Party, as well as their past and present companies, subsidiaries, and affiliates, and their respective present and former officers, directors, board members, shareholders, trustees, employees, agents, advisors, accountants, attorneys, assignees, and representatives, of and from any and all claims (as defined in Section 101(5) of the Bankruptcy Code), demands, damages, debts, liabilities, judgments, accounts, obligations, costs, expenses, actions, and causes of action of every kind and nature whatsoever, whether now known or unknown, asserted or which could have been asserted, suspected or unsuspected, choate or inchoate, which the Parties now have, own, or hold, or at any time heretofore ever had, owned, or held against any of them from the beginning of the world to the EDA Dissolution Effective Date, which arise out of, relate to, or are based upon the Illinois Action, the Sears PTAB Appeals, the Bankruptcy Cases, the Bankruptcy Appeal, the EDA Agreement, the EDA (including, without limitation, all of the notes issued in connection with the development thereof), the EDA Act, the EDA Funds, any claims or violations arising under section 362 of the Bankruptcy Code and any claims in any way relating to or arising from the Village's administration of the EDA and compliance with the EDA Act.

9.      All Other Taxing Districts shall join in and comply with, among other things, the (a) authorizations, directions and contributions contemplated in this Settlement Agreement, (b) dismissal, *with prejudice*, of all applicable litigation, including, without limitation, the Illinois Action, and (c) grant of mutual releases by and among all Parties as set forth herein, including, without limitation, the release of the Village for solely distributing to the School District and no Other Taxing Districts any remaining 55% Portion and/or 45% Portion of the EDA Funds, if any, as required herein.

10.     Subject to the proviso in Section 3.e. herein regarding the non-occurrence of the EDA Dissolution Effective Date, this Settlement Agreement shall be effective solely upon entry by the Bankruptcy Court of a final, non-appealable Settlement Order approving this Settlement Agreement (the "**Settlement Effective Date**").

11.     Each Party, as well as the Cook County Treasurer, shall do and perform, or cause to be done and performed, all such further acts and things, and shall execute and deliver all such other agreements, certificates, instruments, notices and documents, as another Party, as well as the Cook County Treasurer, may reasonably request in order to carry out the intent and accomplish the purposes of this Settlement Agreement and the consummation of the transactions contemplated thereby and hereby.

12.     This Settlement Agreement may be executed in multiple counterparts, any of which may be transmitted by e-mail/PDF, and each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

13.     This Settlement Agreement may be modified only by a written document signed by the Parties, as well as Cook County Treasurer.  No waiver of this Settlement Agreement or of any

of the promises, obligations, terms, or conditions hereof shall be valid unless it is written and signed by the person against whom the waiver is to be enforced.

14.     Each Party acknowledges that it has had the opportunity to consult with legal counsel of its choosing prior to entering into this Settlement Agreement and that it enters this Agreement knowingly and voluntarily.  By executing this Settlement Agreement, each Party represents and attests to the other that (a) the person executing this Settlement Agreement on its behalf is duly authorized and empowered (including, without limitation, approval by their governing bodies) to execute and deliver this Settlement Agreement, and (b) this Settlement Agreement constitutes the legal, valid and binding obligation of such person, enforceable against it in accordance with the Settlement Agreement's terms.

15.     The Parties, as well as the Cook County Clerk and Cook County Treasurer, cooperated in the drafting of this Settlement Agreement, and in the event that it is determined that any provision herein is ambiguous, that provision shall not be presumptively construed against any such person.

16.     This Settlement Agreement is solely for the benefit of, and shall be binding upon, the Parties and their respective successors or permitted assigns, and shall not confer any right or remedies, either intended or incidental, upon any third party who is not a party to this Settlement Agreement.

17.     To the extent there is any inconsistency between this Settlement Agreement and the Plan and Confirmation Order, this Settlement Agreement shall supersede and govern.

18.      This Settlement Agreement, including all attachments hereto, supersedes all prior oral or written agreements, communications, and negotiations, if any, by and among the Parties (excepting prior stipulations executed by and among the Parties and orders entered in the

Bankruptcy Cases and in the Illinois Action) and constitutes the entire agreement by and among the Parties with respect to the subject matter hereof.

19.    The Bankruptcy Court and the Circuit Court shall concurrently retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Settlement Agreement and the Settlement Order.


(Signature pages follow)

**Community Unit School District 300**

Signature: _____

Printed Name: _____

Title: _____

**The Village of Hoffman Estates**

Signature: _____

Printed Name: _____

Title: _____

**Debtors, including Sears, Roebuck and Co., as Developer**

Signature: _____

Printed Name: _____

Title: _____

**Metropolitan Water Reclamation District of Greater Chicago**

Signature: _____

Printed Name: _____

Title: _____

**School District U-46**

Signature: _____

Printed Name: _____

Title: _____

**Elgin Community College**

Signature: _____

Printed Name: _____

Title: _____

**Hoffman Estates Park District**

Signature: _____

Printed Name: _____

Title: _____

**Poplar Creek Library District**

Signature _____

Printed Name: _____

Title: _____

**County of Cook**

Signature: _____

Printed Name: _____

Title: _____

**Cook County Forest Preserve District**

Signature: _____

Printed Name: _____

Title: _____

**Barrington Township**

Signature: _____

Printed Name: _____

Title: _____

**Barrington Area Public Library District**

Signature: _____

Printed Name: _____

Title: _____

**Northwest Mosquito Abatement District**

Signature: _____

Printed Name: _____

Title: _____

**Cook County Treasurer**

Signature: _____

Printed Name: _____

Title: _____

## **EXHIBITS**

EXHIBIT A – SETTLEMENT ORDER

EXHIBIT B – ORDINANCE

EXHIBIT C – CIRCUIT COURT DISMISSAL ORDER

EXHIBIT D – DESIGNATION RIGHTS STIPULATION

EXHIBIT E – BANKRUPTCY APPEAL DISMISSAL STIPULATION

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
In re                                    :    **Chapter 11**
:
**SEARS HOLDINGS CORPORATION**, *et al.*,    :    **Case No. 18-23538 (RDD)**
:
Debtors.[1]                              :    **(Jointly Administered)**
:
------------------------------------------------------------x

## ORDER APPROVING SETTLEMENT AGREEMENT
## REGARDING THE EDA LITIGATION AND TAX ASSESSMENT ISSUES

Upon the motion, dated November 23, 2021 (the "**Motion**")[2] of Sears Holdings

Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned

chapter 11 cases (collectively, the "**Debtors**"), for entry of an order pursuant to Rule 9019(a) of

the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") (i) approving that certain

Settlement Agreement attached to the Motion as Exhibit 1 (the "**Settlement Agreement**"), by and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is c/o M-III Partners, LP, 1700 Broadway, 19th Floor, New York, NY 10019.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion and the Settlement Agreement, as applicable.

among the Debtors, the Village of Hoffman Estates (the "**Village**"), Community Unit School District 300 (the "**School District**"), Metropolitan Water Reclamation District of Greater Chicago, School District U-46, Elgin Community College, Hoffman Estates Park District, Poplar Creek Library District, County of Cook, Cook County Forest Preserve District, Barrington Township, Barrington Area Library District, and Northwest Mosquito Abatement District (collectively, the "**Parties**"), which the Cook County Treasurer joined as a signatory pursuant to her powers under the principle of good faith and respect for comity, and (ii) pursuant to Section 365 of the Bankruptcy Code, ordering the EDA Agreement rejected effective December 31, 2021, subject to the contingencies provided herein; and the Court having jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief sought in the Motion and the opportunity for a hearing thereon having been provided in accordance with the Amended Case Management Order;and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion (the "**Hearing**"); and upon the record of the Hearing, and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that such relief is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The relief requested in the Motion is granted.

2.      Pursuant to Bankruptcy Rule 9019(a), the Settlement Agreement is approved and the Debtors are authorized to enter into the Settlement Agreement.

3.      The Parties (including, without limitation, the Village) and the Cook County Treasurer are authorized and directed to take any action as may be necessary or appropriate to implement, effectuate, and fully perform under the Settlement Agreement, including, without limitation, to execute and deliver all instruments and documents in respect thereof.

4.      Notwithstanding anything to the contrary, the Cook County Clerk's Office, not being a party subject to the Court's jurisdiction nor being a party to the Settlement Agreement, but respecting the principles of comity, will take all actions necessary to make the EDA properties fully subject to the property tax levies of the School District, the Village, and the Other Taxing Districts for the next available tax year, which is 2021 and which is billed in calendar year 2022 following the EDA Dissolution Entry Date and receipt of the Ordinance as described in Section 3.f. of the Settlement Agreement and which must be presented to the Cook County Clerk's Office before the last day of May 2022.

5.      Contingent upon (i) the School District filing the Designation Rights Stipulation irrevocably withdrawing Transform's designation of the EDA Agreement, (ii) the Debtors' receipt of $12.35 million in payments provided for in the Settlement Agreement, and (iii) the Village's receipt of $1.5 million in payments provided for in the Settlement Agreement, the EDA Agreement shall be rejected, effective as of December 31, 2021, in accordance with section 365 of the Bankruptcy Code and the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* (ECF No. 5139), without the need for any

further action by the Debtors, notice or order from this Court; <u>provided</u>, <u>however</u>, that if the EDA

Dissolution Entry Date (as defined in the Settlement Agreement) does not occur on or prior to

December 31, 2021, the Settlement Agreement (including, without limitation, any and all actions

undertaken in connection therewith) shall be deemed null and void and unenforceable consistent

with the terms thereof.

6.      Upon the occurrence of the Settlement Effective Date, the Cook County

Treasurer shall be authorized to deduct, debit, offset, reimburse and/or otherwise collect, directly

and solely from the ad valorem tax levy for the School District and the Other Taxing Districts

(but expressly excluding the Village), any and all property tax assessment refund liabilities arising

from or relating to any and all properties located within the EDA prior to and including tax year

2020 in accordance with Section 5 of the Settlement Agreement.

7.      Any automatic 14-day stay of this Order that might apply under the

Bankruptcy Rules is waived, for cause, and this Order is effective immediately upon its entry.

8.      The Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2021
       White Plains, New York

                              _____
                              THE HONORABLE ROBERT D. DRAIN
                              UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

ORDINANCE NO. _____ - 2021

**VILLAGE OF HOFFMAN ESTATES**

**AN ORDINANCE DISSOLVING THE ECONOMIC DEVELOPMENT AREA
HOFFMAN ESTATES, IL**

WHEREAS, the Village of Hoffman Estates (the "Village") has created an Economic Development Project Area (the "EDA") pursuant to the "Economic Development Area Tax Increment Allocation Act" (20 ILCS 620/1 et. seq.) (the "EDA Act");

WHEREAS, the following taxing districts (collectively, the "Taxing Districts") have authority to levy a real property tax against property located within the EDA: the Village, Community Unit School District 300 (the "School District"), Barrington Area Public Library District, Elgin Community College, Barrington Township, Metropolitan Water Reclamation District of Greater Chicago, Northwest Mosquito Abatement District, Hoffman Estates Park District, Poplar Creek Library District, School District U-46, County of Cook, and Cook County Forest Preserve District;

WHEREAS, as of date hereof the Village holds approximately $17.4 million in EDA funds in the Village's special tax allocation fund maintained in accordance with the EDA Act (the "Special Tax Allocation Fund");

WHEREAS, the School District and certain Taxing Districts are plaintiffs in litigation pending in the Circuit Court of Cook County, State of Illinois, *inter alia*, contesting certain provisions of the EDA Act and the administration of the EDA thereunder (2018 CH 12683) (the "State Court Litigation");

WHEREAS, the parties to the State Court Litigation, including, without limitation, the Developer, certain of the other Debtors (each as defined in the Settlement Agreement) and the Village, wish to settle the State Court Litigation and certain related matters and have entered into and approved that certain Settlement Agreement dated _____, 2021 (the "Settlement Agreement"), which Settlement Agreement has been approved by order of the United States Bankruptcy Court for the Southern District of New York dated _____, 2021;

WHEREAS, all of the Taxing Districts have provided to the Village written evidence that their corporate authorities have approved the Settlement Agreement;

WHEREAS, pursuant to the terms of the Settlement Agreement, the Village will not distribute the EDA funds currently held in the Special Tax Allocation Fund according to state law, but will instead distribute such EDA funds in accordance with the terms of the Settlement Agreement;

WHEREAS, pursuant to the terms of the Settlement Agreement, the Taxing Districts, except for the Village, are liable to the Cook County Treasurer for any property tax assessment appeal refunds for tax year 2020 and any prior tax year arising from or relating to any property located within the EDA;

WHEREAS, pursuant to the terms of the Settlement Agreement, following distribution of certain of the EDA funds to the Debtors and the Village from the Special Tax Allocation Fund, all EDA funds then remaining in the Special Tax Allocation Fund will then be distributed to the School District for further distribution, including to the Taxing Districts, in accordance with the terms of the Settlement Agreement;

WHEREAS, pursuant to the terms of the Settlement Agreement, the Cook County Clerk's Office shall act to extend the property tax levies of the Taxing Districts and the Village directly against the properties within the EDA beginning with the 2021 tax year and the incremental equalized assessed value of the properties located within the EDA will be recognized in tax year 2021 as "New Property" under the Illinois Property Tax Extension Limitation Law (35 ILCS 200/18-155, et seq.); and

WHEREAS, pursuant to the terms of the Settlement Agreement, the Cook County Treasurer's Office shall distribute any and all property taxes extended against properties located within the EDA to the Taxing Districts and the Village based on their respective tax rates beginning with the 2021 tax year.

NOW, THEREFORE, subject to the terms of the Settlement Agreement, the Village of Hoffman Estates hereby dissolves the Special Tax Allocation Fund for the Economic Development Project Area and terminates the Economic Development Project Area as an Economic Development Project Area, effective as of December 31, 2021.

- 3 -

PASSED THIS _____ day of _____, 2021

| VOTE | AYE | NAY | ABSENT | ABSTAIN |
|------|-----|-----|--------|---------|
| Trustee Karen V. Mills | _____ | _____ | _____ | _____ |
| Trustee Anna Newell | _____ | _____ | _____ | _____ |
| Trustee Gary J. Pilafas | _____ | _____ | _____ | _____ |
| Trustee Gary G. Stanton | _____ | _____ | _____ | _____ |
| Trustee Michael Gaeta | _____ | _____ | _____ | _____ |
| Trustee Karen Arnet | _____ | _____ | _____ | _____ |
| President William D. McLeod | _____ | _____ | _____ | _____ |

APPROVED THIS _____ DAY OF _____, 2021

_____
Village President

ATTEST:

_____
Village Clerk

Published in pamphlet form this _____ day of _____, 2021.

# EXHIBIT C

**IN THE CIRCUIT COURT OF COOK COUNTY**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| COMMUNITY UNIT SCHOOL DISTRICT 300, an Illinois school district, BARRINGTON LIBRARY DISTRICT, an Illinois public library, ELGIN COMMUNITY COLLEGE, an Illinois community college district, BARRINGTON TOWNSHIP, an Illinois township, METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO, an Illinois special purpose district, and SCHOOL DISTRICT U-46, an Illinois public school district, | ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| VILLAGE OF HOFFMAN ESTATES, an Illinois municipal corporation; and SEARS HOLDINGS CORPORATION, a Delaware corporation, SEARS, ROEBUCK & CO., a New York Corporation. KMART HOLDING CORPORATION, a Delaware corporation, SEARS HOLDINGS MANAGEMENT CORPORATION, a Delaware corporation, HOFFMAN ESTATES PARK DISTRICT, an Illinois park district, NORTHWEST MOSQUITO ABATEMENT DISTRICT, an Illinois mosquito abatement district, COOK COUNTY FOREST PRESERVE, an Illinois forest preserve, COOK COUNTY, an Illinois county, and POPLAR CREEK LIBRARY DISTRICT, an Illinois public library district. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 2018 CH 12683 |
| Defendants. | ) ) | |

**AGREED ORDER**

This matter, coming to be heard on Plaintiffs' Motion for Voluntary Dismissal, and all parties

having been fully apprised, IT IS HEREBY ORDERED:

1.      The Court grants Plaintiffs' Motion and dismisses this instant matter in its entirety,

with prejudice, pursuant to the terms of the "Settlement Agreement Concerning the EDA" dated

_____, 2021 (the "Settlement Agreement") and filed with the United States Bankruptcy

Court for the Southern District of New York (the "Bankruptcy Court").

2.      This Court and the Bankruptcy Court shall concurrently retain jurisdiction to hear

and determine all matters arising from or related to the implementation, interpretation, and/or

enforcement of the Settlement Agreement.

Order prepared by:                                          ENTERED:
Robbins Schwartz Nicholas Lifton & Taylor
Kenneth M. Florey
Katie Zumalt-Rogers
55 W. Monroe, Suite 800
Chicago, Illinois 60603                                     _____
Cook County Attorney No. 91219                              Judge

Kory Atkinson
Law Office of Kory Atkinson
236 West Lake Street, Suite 100
Bloomingdale, Illinois 60108                                _____
Cook County No. 44788                                       Date

# EXHIBIT D

## Exhibit A

Kenneth M. Florey
ROBBINS, SCHWARTZ, NICHOLAS,
LIFTON & TAYLOR, LTD.
631 E. Boughton Road, Suite 200
Bolingbrook, Illinois 60440
Tel: (630) 929-3639
Email: kflorey@robbins-schwartz.com

      and

Allen G. Kadish
ARCHER & GREINER, P.C.
1211 Avenue of the Americas
New York, New York 10036
Tel: (212) 682-4940
Email: akadish@archerlaw.com

      and

Matthew T. Gensburg
GENSBURG CALANDRIELLO & KANTER, P.C.
200 West Adams Street, Suite 2425
Chicago, Illinois 60606
Tel: (312) 263-2200
Email: mgensburg@gcklegal.com

*Attorneys for Community Unit School District 300*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*,[1] | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None);

11

## STIPULATION IRREVOCABLY WITHDRAWING
## DESIGNATION OF TRANSFORM HOLDCO LLC OF
## SEARS ECONOMIC DEVELOPMENT AGREEMENT

This Stipulation (the "**Stipulation**") is made and entered into by Transform Holdco LLC, a Delaware limited liability company ("**Transform**") and Community Unit School District 300, an Illinois school district ("**District 300**"). Transform and District 300 shall collectively be referred to as the "**Parties**".

### RECITALS

**WHEREAS,** on April 2, 2019, this Court entered the *Order (I) Authorizing Assumption and Assignment of Certain Executory Contracts and Leases and (II) Granting Related Relief* (the "**Assumption/Assignment Order**") [Dkt. No. 3008];

**WHEREAS,** pursuant to the Assumption/Assignment Order, on May 2, 2019, the above-captioned debtors (the "Debtors") filed a *Notice of Assumption and Assignment of Additional Executory Contracts* [Dkt. No. 3539], through which the Debtors designated the Economic Development Agreement between Debtor Sears, Roebuck and Co. and the Village of Hoffman Estates including amendments 1-4 (as amended. the "**EDA Agreement**") as Additional Assigned Agreements (as defined in the Assumption/Assignment Order);

**WHEREAS,** this Stipulation is made in accordance with paragraph 17 of the Assumption/Assignment Order which provides that Transform may withdraw the proposed assumption of an applicable Additional Assigned Agreement by filing a notice of withdrawal with the Court; and

**WHEREAS,** the Parties entered into an Amendment to Settlement Agreement ("the

---

BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

EAST\181135824.2

Amendment to Settlement Agreement") which provides that Paragraph 2 of the Settlement Agreement[2] executed as of December 9, 2020 is revised such that the EDA Agreement irrevocably is not assumed and assigned to Transform.

**NOW THEREFORE**, in consideration of the mutual promises and covenants contained herein and in the Amendment to Settlement Agreement, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, it is hereby stipulated and agreed to by the Parties as follows:

1.    The above recitals are incorporated herein by reference.

2.    Despite Transform's prior designation, pursuant to paragraph 17 of the Assumption/Assignment Order, Transform hereby irrevocably withdraws its proposed assumption of the EDA Agreement.  In doing so, Transform hereby acknowledges and stipulates that (i) any current claims or interests in the EDA Agreement are irrevocably withdrawn, waived and retracted, and (ii) it will not, directly or indirectly, seek nor assert any prospective claim or interest in the EDA Agreement; provided that, for the avoidance of doubt, nothing in this Stipulation affects or limits, in any way Transform's right to payment pursuant to Paragraph 3 of the Settlement Agreement.

3.    Each Party is authorized to have this Stipulation executed by its counsel as set forth below.

4.    This Stipulation may be executed in multiple counterparts, any of which may be transmitted by facsimile or email, and each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Amendment to Settlement Agreement.

13

**IN WITNESS WHEREOF**, the Parties have caused this Stipulation to be executed as of

May ___, 2021.


TRANSFORM HOLDCO LLC,
a Delaware limited liability company

By Its Counsel,

By: _____
          Richard A. Chesley, Esq.
          Rachel Ehrlich Albanese, Esq.
          R. Craig Martin, Esq.
          Thomas Geselbracht, Esq.

DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 335-4500
Email: Richard.Chesley@dlapiper.com
          Rachel.Albanese@dlapiper.com
          Craig.Martin@dlapiper.com
          Thomas.Geselbracht@dlapiper.com

[SIGNATURES CONTINUE ON NEXT PAGE]

14

COMMUNITY UNIT SCHOOL DISTRICT 300,
an Illinois school district

By Its Counsel,

ROBBINS, SCHWARTZ, NICHOLAS,
LIFTON & TAYLOR, LTD.

By: _____
       Kenneth M. Florey
631 E. Boughton Road, Suite 200
Bolingbrook, Illinois 60440
Tel: (630) 929-3639
Email: kflorey@robbins-schwartz.com

       and

Allen G. Kadish
ARCHER & GREINER, P.C.
1211 Avenue of the Americas
New York, New York 10036
Tel: (212) 682-4940
Email: akadish@archerlaw.com

       and

Matthew T. Gensburg
GENSBURG CALANDRIELLO & KANTER, P.C.
200 West Adams Street, Suite 2425
Chicago, Illinois 60606
Tel: (312) 263-2200
Email: mgensburg@gcklegal.com

221081328v1

15

# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____
                                                          )
COMMUNITY UNIT SCHOOL DISTRICT 300,       )
                                                          )        Case No. 20-cv-10431 (JPC)
                              Appellant,                  )
                                                          )
        v.                                                )
                                                          )
SEARS HOLDINGS CORPORATION, *et al.,*     )
                                                          )
                              Appellees.                  )
_____          )

## STIPULATION OF VOLUNTARY DISMISSAL

WHEREAS, on December 10, 2020, Appellant filed the *Notice of Appeal* [ECF No. 1] to appeal that certain *Order Denying the Motion of Community Unit School District 300 to Deem Economic Development Agreement Rejected Pursuant to the Debtors' Confirmed Chapter 11 Plan, or, in the Alternative, to Compel the Debtors to Reject the Agreement* [United States Bankruptcy Court for the Southern District of New York Chapter 11 Case No. 18-23538, ECF No. 9116], entered on November 23, 2020.

WHEREAS, Appellant and Appellees (the "Parties") have entered into that certain *Settlement Agreement Concerning the EDA* dated _____, 2021 (the "**Settlement Agreemen**t") and the Settlement Agreement having been approved by the United States Bankruptcy Court for the Southern District of New York [Bankruptcy ECF No. _____], and the Settlement Agreement providing, among other things, that the above-captioned action (this "**Appeal**") and all other litigation be dismissed, *with prejudice*, with each Party bearing its own costs and expenses.

IT IS HEREBY STIPULATED AND AGREED, by and among the Parties through their respective counsel that, pursuant to Rule 8023 of the Federal Rules of Bankruptcy Procedure, that

this Appeal is and shall be voluntarily dismissed, *with prejudice*, with each Party to bear its own

costs and expenses.


Dated: December __, 2021                          Dated: December __, 2021

By: _____              By: _____
Allen G. Kadish                                          Jared R. Friedmann
Archer & Greiner, P.C.                               Weil, Gotshal & Manges LLP
1211 Avenue of the Americas                     767 Fifth Avenue
New York, NY 10036                                 New York, NY 10153
Tel: (212) 682-4940                                   Tel: (212) 310-8000
Email: akadish@archerlaw.com               Email: Jared.Friedmann@weil.com

            -and-                                             *Counsel for Sears Holdings*
                                                                   *Corporation, et al., Appellees*
Kenneth M. Florey
631 E. Boughton Road, Suite 200
Bolingbrook, Illinois 60440
Tel: (630) 929-3639
Email: kflorey@robbins-schwartz.com

            -and-

Matthew T. Gensburg
GENSBURG CALANDRIELLO & KANTER, P.C.
200 West Adams Street, Suite 2425
Chicago, Illinois 60606
Tel: (312) 263-2200
Email: mgensburg@gcklegal.com

*Counsel for Community Unit School District* 300*,*
*Appellant*

**Exhibit 2**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | : | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **SEARS HOLDINGS CORPORATION,** *et al.*, | : | **Case No. 18-23538 (RDD)** |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |
| | : | |

---------------------------------------------------------------x

## ORDER APPROVING SETTLEMENT AGREEMENT
## REGARDING THE EDA LITIGATION AND TAX ASSESSMENT ISSUES

Upon the motion, dated November 23, 2021 (the "**Motion**")[2] of Sears Holdings

Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned

chapter 11 cases (collectively, the "**Debtors**"), for entry of an order pursuant to Rule 9019(a) of

the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") (i) approving that certain

Settlement Agreement attached to the Motion as Exhibit 1 (the "**Settlement Agreement**"), by and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is c/o M-III Partners, LP, 1700 Broadway, 19th Floor, New York, NY 10019.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion and the Settlement Agreement, as applicable.

among the Debtors, the Village of Hoffman Estates (the "**Village**"), Community Unit School District 300 (the "**School District**"), Metropolitan Water Reclamation District of Greater Chicago, School District U-46, Elgin Community College, Hoffman Estates Park District, Poplar Creek Library District, County of Cook, Cook County Forest Preserve District, Barrington Township, Barrington Area Library District, and Northwest Mosquito Abatement District (collectively, the "**Parties**"), which the Cook County Treasurer joined as a signatory pursuant to her powers under the principle of good faith and respect for comity, and (ii) pursuant to Section 365 of the Bankruptcy Code, ordering the EDA Agreement rejected effective December 31, 2021, subject to the contingencies provided herein; and the Court having jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief sought in the Motion and the opportunity for a hearing thereon having been provided in accordance with the Amended Case Management Order;and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion (the "**Hearing**"); and upon the record of the Hearing, and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that such relief is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The relief requested in the Motion is granted.

2.      Pursuant to Bankruptcy Rule 9019(a), the Settlement Agreement is approved and the Debtors are authorized to enter into the Settlement Agreement.

3.      The Parties (including, without limitation, the Village) and the Cook County Treasurer are authorized and directed to take any action as may be necessary or appropriate to implement, effectuate, and fully perform under the Settlement Agreement, including, without limitation, to execute and deliver all instruments and documents in respect thereof.

4.      Notwithstanding anything to the contrary, the Cook County Clerk's Office, not being a party subject to the Court's jurisdiction nor being a party to the Settlement Agreement, but respecting the principles of comity, will take all actions necessary to make the EDA properties fully subject to the property tax levies of the School District, the Village, and the Other Taxing Districts for the next available tax year, which is 2021 and which is billed in calendar year 2022 following the EDA Dissolution Entry Date and receipt of the Ordinance as described in Section 3.f. of the Settlement Agreement and which must be presented to the Cook County Clerk's Office before the last day of May 2022.

5.      Contingent upon (i) the School District filing the Designation Rights Stipulation irrevocably withdrawing Transform's designation of the EDA Agreement, (ii) the Debtors' receipt of $12.35 million in payments provided for in the Settlement Agreement, and (iii) the Village's receipt of $1.5 million in payments provided for in the Settlement Agreement, the EDA Agreement shall be rejected, effective as of December 31, 2021, in accordance with section 365 of the Bankruptcy Code and the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* (ECF No. 5139), without the need for any

further action by the Debtors, notice or order from this Court; provided, however, that if the EDA

Dissolution Entry Date (as defined in the Settlement Agreement) does not occur on or prior to

December 31, 2021, the Settlement Agreement (including, without limitation, any and all actions

undertaken in connection therewith) shall be deemed null and void and unenforceable consistent

with the terms thereof.

6.      Upon the occurrence of the Settlement Effective Date, the Cook County

Treasurer shall be authorized to deduct, debit, offset, reimburse and/or otherwise collect, directly

and solely from the ad valorem tax levy for the School District and the Other Taxing Districts

(but expressly excluding the Village), any and all property tax assessment refund liabilities arising

from or relating to any and all properties located within the EDA prior to and including tax year

2020 in accordance with Section 5 of the Settlement Agreement.

7.      Any automatic 14-day stay of this Order that might apply under the

Bankruptcy Rules is waived, for cause, and this Order is effective immediately upon its entry.

8.      The Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2021
      White Plains, New York

                _____
                THE HONORABLE ROBERT D. DRAIN
                UNITED STATES BANKRUPTCY JUDGE