WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jared R. Friedmann
Jacqueline Marcus
Garrett Fail

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
In re                                             :    Chapter 11
:
**SEARS HOLDINGS CORPORATION,** *et al.*,         :    Case No. 18-23538 (RDD)
:
Debtors.[1]                                       :    (Jointly Administered)
:
---------------------------------------------------------------x

### DECLARATION OF BRIAN J. GRIFFITH IN SUPPORT OF DEBTORS' MOTION PURSUANT TO FED. R. BANKR. P. 9019(a) FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT REGARDING THE EDA LITIGATION AND TAX ASSESSMENT ISSUES

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is c/o M-III Partners, LP, 1700 Broadway, 19th Floor, New York, NY 10019.

**DECLARATION OF BRIAN J. GRIFFITH – Page 1**

Pursuant to 28 U.S.C. § 1746, I, Brian J. Griffith, hereby declare as follows:

1. I submit this Declaration in Support of *the Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019(a) for Entry of an Order Approving Settlement Agreement Regarding the EDA Litigation and Tax Assessment Issues* (the "**Motion**"), filed concurrently with this Declaration.

2. I have been a Managing Director of M-III Advisory Partners, LP ("**M-III**") for the past six years. As Managing Director at M-III, I am responsible for leading deal teams where we are retained by either creditors or debtors. Assignments range from operational improvement to distressed situations, both in and out of court. Depending on the assignment, deal responsibilities range from short-term profit improvement roles to multi-year turnaround advisory assignments in numerous industries, including: retail, financial services, real estate development, healthcare, energy, consumer products, manufacturing, automotive, and food services. Typical areas of focus on debtor engagements are treasury, cash forecasting, process improvement, cost reductions, development of strategic alternatives, and negotiations with creditors and parties-in-interest. Prior to my current role with M-III, I served in interim management roles, including as a chief financial officer and chief restructuring officer.

3. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge gleaned during the course of my engagement with the Debtors; my discussions with other members of the M-III team and the Debtors' other advisors; my review of relevant documents; and my views based upon my experience. If called to testify, I would testify competently to each of the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of M-III for the Debtors.

4. Between January and August 2021, the Debtors, Community Unit School District 300 (the "**School District**"), and the Village of Hoffman Estates, Illinois (the "**Village**") engaged

in a lengthy settlement negotiation and mediation process, focused on reaching a global resolution of: (i) a dispute regarding compliance of the Debtors and the Village with an Economic Development Agreement (the "**EDA Agreement**") that has been the subject of several years of litigation in both Illinois state court and before this Court, as well as the Debtors' ability to assume and assign the EDA Agreement; and (ii) the Debtors' pending appeals before the Property Tax Appeals Board of the State of Illinois (the "**PTAB**") of property taxes levied against their then-corporate headquarters for the years 2016, 2017, and 2018 (the "**Sears PTAB Appeals**").

5.  Settlement negotiations and mediation were primarily handled on behalf of the Debtors by the Debtors' counsel Weil, Gotshal & Manges LLP and Neal Gerber Eisenberg LLP, who regularly consulted with the Restructuring Committee and M-III and kept us updated about the process and progress of negotiations.

6.  After the Debtors, the School District, and the Village made significant good faith attempts to resolve the disputes among themselves through lengthy settlement negotiations, they engaged mediator John DeGroote to help bridge the remaining gap among them. I understand that the mediation process included a group mediation session on March 9, 2021, as well as numerous telephone calls, emails, and *ad hoc* discussions of the various complex and thorny issues involved in the two distinct disputes. On August 8, 2021, we received a mediator's proposal from Mr. DeGroote.

7.  From that mediator's proposal—which all parties eventually accepted—the parties arrived at an agreement on a global settlement of the EDA and PTAB disputes. That agreement is reflected in the *Settlement Agreement Concerning the EDA* (the "**Settlement Agreement**"), attached as Exhibit 1 to the Motion. In relevant part, the Settlement Agreement will provide an immediate influx of $12.35 million within days of the Settlement Agreement becoming final, and

will immediately eliminate the substantial ongoing burdens, expenses, and risks associated with litigation of both of the aforementioned disputes.

8.   I, along with the Debtors' counsel and other advisors, consulted with and received the approval of the Restructuring Committee on the terms Settlement Agreement. I also understand that the Unsecured Creditors' Committee and the Post Effective Date Committee have reviewed and support the Settlement Agreement.

9.   The Settlement Agreement provides significant and near-immediate benefits to the Debtors and their creditors, in contrast to the uncertainty and expense of continued litigation of the PTAB Appeals and the EDA dispute.

10.  As to the PTAB Appeals, the School District has challenged the Debtors' appraisal and the School District's experts argue that Sears should only receive property tax refunds totaling approximately $8.6 million, whereas the Debtors argue that they should recover approximately $14.5 million in tax refunds. The Settlement Agreement gives the Debtors close to the full amount they seek *immediately*—providing the estates with $12.35 million in desperately needed funds within days of approval—without incurring any further legal costs and eliminates the risk of a lower recovery.

11.  As to the EDA dispute, the Debtors face the prospect of prolonged, costly litigation in which "success" would simply mean that they may retain the right to potentially assign the EDA Agreement to another as-yet unidentified buyer (a right disputed by the School District). However, the value of that right is contingent on several factors, including: (i) whether Transform de-designates the EDA Agreement, (ii) a decision as to whether the EDA Agreement can be assigned to another party at all, and (iii) whether any as-yet unidentified party would be willing to pay for assignment of EDA Agreement, notwithstanding the substantial litigation and uncertainty that

would come with it. In short, this is a highly contested right, to which it is difficult to attach a dollar value. However, in the context of a global settlement, the ability to thwart dissolution of the EDA, including by potentially assigning the agreement to a third party, proved to be a valuable bargaining chip that the Debtors have leveraged in exchange for a very favorable settlement of the PTAB Appeals.

12. If approved, the Settlement Agreement would fully and finally resolve these disputes, permitting the Debtors and their advisors to focus resources and attention on consummating the Plan and concluding these cases, rather than depleting estate assets with further litigation expenses.

13. The parties to the Settlement Agreement are represented by sophisticated and experienced professionals—highly regarded law firms and financial advisors with significant restructuring, litigation, and other relevant experience. The Debtors' professionals, for their part, fully understand the complexity of the EDA dispute and the PTAB Appeals, as they have been analyzing, discussing, and litigating these issues for several years already. The Debtors' professionals fully understand the potential consequences to the estates' creditors if the Settlement Agreement is not consummated and have recommended that the Debtors enter into the Settlement Agreement.

14. In summary, the Settlement Agreement is the product of lengthy, sometimes contentious, arm's length negotiations between the parties, facilitated by a highly skilled and experienced mediator; the Debtors' Restructuring Committee concluded that the Settlement Agreement is fair and equitable, reasonable, and in the best interests of the Debtors' estates; and the Unsecured Creditors' Committee and the Post Effective Date Committee both support the Settlement Agreement as well.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: November 23, 2021      By: */s/ Brian J. Griffith*
New York, NY                              Brian J. Griffith