WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
                                    :

**In re**                           :           **Chapter 11**

**SEARS HOLDINGS CORPORATION,** *et al.,*  :           **Case No. 18-23538 (RDD)**

          **Debtors.**[1]         :           **(Jointly Administered)**

                                      :
-----------------------------------------------------------------x

**REPLY IN SUPPORT OF DEBTORS' EIGHTEENTH OMNIBUS
OBJECTION TO PROOFS OF CLAIM SOLELY WITH RESPECT TO CLAIMS
OF PUERTO RICO ELECTRIC POWER AUTHORITY (CLAIM NOS. 20119 & 20121)**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is c/o M-III Partners, LP, 1700 Broadway, 19th Floor, New York, NY 10019.

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases, respectfully represent as follows in reply to the response (the "**Response**") (ECF No. 7985) filed by the Puerto Rico Electric Power Authority ("**PREPA**") to the *Debtors' Eighteenth Omnibus Objection to Proofs of Claim or Ballots (Reduce & Reclassify Claims/Ballots)* (ECF No. 7859) (the "**Objection**") with respect to PREPA's proofs of claim: Claim Nos. 20119 and 20121 (together, the "**Claims**"):[2]

1.      The Objection sought to reclassify as general unsecured claims PREPA's Claims for unpaid bills for prepetition electricity.  In its Response, PREPA asks this Court to overturn this Court's own prior decision, affirmed by the United States District Court for the Southern District of New York (the "**District Court**"), which held that electricity does not qualify as a "good" under section 503(b)(9) of the Bankruptcy Code.  PREPA asks this Court to ignore the District Court in this jurisdiction and instead to look to Puerto Rican law and to follow non-binding and unpersuasive decisions of bankruptcy courts in other districts.  This Court should overrule PREPA's Response and grant the Objection.

**A.      The Uniform Commercial Code Definition Applies In Determining Whether Electricity is a "Good" Under Section 503(b)(9) of the Bankruptcy Code**

2.      The intent of the Bankruptcy Code is to ensure equality of treatment of similarly situated creditors.  *See Begier v. IRS*, 496 U.S. 53, 58 (1990) ("Equality of distribution among creditors is a central policy of the Bankruptcy Code.").  As demonstrated below, PREPA's

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Objection.

interpretations would lead to inconsistent treatment of similarly situated creditors and absurd results in these and other cases.

3.      Federal law governs the interpretation of federal statutes such as the Bankruptcy Code. *See, e.g.*, *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 97 (1991); *Off. Comm. of Unsecured Creditors v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys. Inc.)*, 997 F.2d 1039, 1056 (3d Cir. 1993). Consistent with the foregoing, courts have unanimously adopted the federal interpretation of the definition of "goods" under section 2-105(1) of the Uniform Commercial Code ("**UCC**") when construing section 503(b)(9) in the context of electricity. *See, e.g.*, *In re Escalera Res. Co.*, 563 B.R. 336, 354 (Bankr. D. Colo. 2017) (providing summary of case law).[3] "There is no need for the Court to engage in a choice of law analysis … since the Court is only required to construe federal law." *Id.* at 350 n.6 ("Neither the state law of Colorado (where the Debtor filed for bankruptcy protection) nor Wyoming (where the electrical energy was delivered …), both of which have adopted their own versions of the UCC, applies directly.").

4.      This Court and the District Court are among the courts that have adopted the federal interpretation of the definition of "goods" under UCC section 2-105(1) when construing section 503(b)(9) in the context of electricity. *See, e.g.,* Opinion and Order at 10-11, *Hudson Energy Servs., LLC v. Great Atl. & Pac. Tea Co. (In re Great Atl. & Pac. Tea Co.)*, Case No. 7:12-cv-07629 (CS) (S.D.N.Y. Sept. 16, 2013), ECF No. 15 (finding that this Court's holding that UCC section 2-105(1) should provide the definition of "goods" for purposes of interpreting section 503(b)(9), as done by numerous other courts, was not in error); Hr'g Tr. at 118:10-20, *In re Great*

---

[3] The *Escalera* court found that all bankruptcy courts construing section 503(b)(9) have turned to the UCC. *See, e.g.*, *In re NE Opco, Inc.*, 501 B.R. 233, 237 (Bankr. D. Del. 2013); *In re Erving Indus., Inc.*, 432 B.R. 354, 365 (Bankr. D. Mass. 2010); *GFI Wis. Inc. v. Reedsburg Util. Comm'n*, 440 B.R. 791, 797 (W.D. Wis. 2010) ("Every bankruptcy court to consider the issue . . . has applied the Uniform Commercial Code definition of goods."); *In re Pilgrim's Pride Corp.*, 421 B.R. 231 (Bankr. N.D. Tex. 2009); *In re Samaritan All., LLC*, 2008 WL 2520107 (Bankr. E.D. Ky. June 28, 2008).

*Atl. & Pac. Tea Co.* ("**A&P**"), Case No. 10-24549 (RDD) (Bankr. S.D.N.Y. Nov. 6, 2014) ("**A&P Hr'g Tr.**"), ECF No. 4589 ("[The District Court] also agreed with my opinion that the Court should be guided in this determination by the definition of goods found in the Uniform Commercial Code and, more specifically, UCC Section 2-105(1) and 2-105(4) . . . [W]e both concluded that we should not apply a state by state interpretation of UCC 2-105 but rather should apply a national or federal interpretation guided by that section . . . .").

5.      "Section 503(b)(9) is not like those provisions of the [Bankruptcy] Code (*e.g.*, section 522(b)) that specifically reference state law or provisions that turn on prepetition rights under other, including state, law (*e.g.*, section 541(a))." *Pilgrim's Pride*, 421 B.R. at 236. "Differences in state law should not lead to different meanings for 'goods' from state to state." *Id.* at 236 n.5.

6.      Notwithstanding all of the foregoing, and without either precedent or an explanation for why the federal interpretation of the UCC definition should not apply in the context of section 503(b)(9), PREPA asks this Court to overturn its prior decisions and look to Puerto Rican law, under which electricity is a "good," to determine the Bankruptcy Code priority for its Claims. *See* Response ¶ 6.

7.      As its sole support for this proposition, PREPA cites to *Enron Power Mktg., Inc. v. Nevada Power Co.*, as a single example of the District Court applying another state's law to treat electricity as a good for purposes of the UCC. *See* No. 01-16034 (AJG), 2004 WL 2290486, at *2 (S.D.N.Y. Oct. 12, 2004); Response ¶ 8 n.5. But the *Enron* decision had nothing to do with interpretation of section 503(b)(9) of the Bankruptcy Code, which is the only issue here. The claims at issue in *Enron* were breach of contract claims – typical state-law claims, which necessarily look to an underlying contract and any choice of law provisions; the claims were not

like those PREPA alleged here – priority claims arising under the Bankruptcy Code. *See Enron Power Mktg.*, 2004 WL 2290486, at \*2. Accordingly, PREPA has no support for its argument.

8. PREPA's approach to look to local laws to define "goods" and to interpret section 503(b)(9) would lead to absurd outcomes: different priorities for the same claim depending on where electricity was provided (for claims of different providers in different jurisdictions and for claims by the same provider delivering in multiple jurisdictions). The Debtors in these cases operated 687 retail stores in forty-nine (49) states, Guam, Puerto Rico, and the U.S. Virgin Islands. *See* Riecker Declaration ¶ 25. PREPA's approach would run counter to the constitutional mandate for uniformity and the very purpose of the Bankruptcy Code.[4] The ridiculous outcome that would result from PREPA's approach is what courts, including this Court, sought to avoid when they adopted the UCC section 2-105(1) definition of "goods."[5]

9. There simply is no basis to overturn precedent of this Court and other courts, as PREPA requests, and to define "goods" using Puerto Rican law for purposes of interpreting Bankruptcy Code section 503(b)(9).

**B.    Priorities Must Be Construed Narrowly and, Therefore, Electricity is Not a "Good" Under Section 503(b)(9) of the Bankruptcy Code**

10. While courts have unanimously agreed that the federal interpretation of the definition of "goods" under UCC section 2-105(1) governs when construing section 503(b)(9) in the context of electricity, federal courts have not been unanimous in their interpretation.

11. This Court recognized the lack of uniformity. In *A&P*, this Court held that electricity was not a good that was entitled to administrative expense priority under section

---

[4] *See* U.S. Const. art. I, § 8, cl. 4 ("To establish . . . uniform Laws on the subject of Bankruptcies throughout the United States…"); *see also Pilgrim's Pride*, 421 B.R. at 236 ("One of the cardinal rules of bankruptcy law is that similarly situated claims should receive the same treatment.") (citing to *Till v. SCS Credit Corp.*, 541 U.S. 465, 477 (2004)).

[5] *See, e.g., Pilgrim's Pride*, 421 B.R. at 236 ("[T]he court must …, in construing section 503(b)(9), take account of

503(b)(9) of the Bankruptcy Code. *See* A&P Hr'g Tr. at 117:11-126:16. The decision was affirmed by the District Court in 2015. *See Hudson Energy Servs., LLC v. Great Atl. & Pac. Tea Co. (In re Great Atl. & Pac. Tea Co.)*, 538 B.R. 666 (S.D.N.Y. 2015). In reaching its decision, this Court highlighted the fact that despite courts all adopting UCC section 2-105(1)'s definition of "goods" to ensure a uniform interpretation of "goods" under section 503(b)(9), the circuit split of authority made it apparent that electricity does not clearly fit in the definition. *See* A&P Hr'g Tr. at 101:3-19, 106:18-21. The Court concluded that statutory priorities must be construed narrowly, consistent with the intent of the Bankruptcy Code and in such a manner as to avoid absurd results. *See id.* (citing *Howard Delivery Serv., Inc. v. Zurich Am. Ins.*, 547 U.S. 651, 667, 669 (2006)). The Court found:

> [A]s far as I'm concerned, I don't think that Congress left it up to us where people can be that wrong, or at least half of them are that wrong. . . that's not how it should be identified. And *Howard*—the

the need for uniform interpretation of the [Bankruptcy] Code."); A&P, *Modified Bench Ruling on the Motion of Hudson Energy Services, L.L.C. for Allowance of an Administrative Claim*, at 9:8-22 (Oct. 25, 2012), ECF No. 4017 ("It is certainly conceivable to me that there would be situations where sellers of electricity would have a contract that would not clearly be covered by any particular state's law or might provide for delivery in various states, and it appears to me that it would be better, therefore, to apply a uniform-throughout-the-country analysis to the issue, as opposed to simply applying the New York UCC's definitions to Section 503(b)(9)."). The Bankruptcy Court for the Eastern District of Virginia highlighted the problem in rejecting a state-law definition in that case:

> The Fourth Circuit has instructed that state law should be used to define terms in the Bankruptcy Code not otherwise defined by Congress. *See In re Price*, 562 F.3d 618, 624–25 (4th Cir. 2009) (applying North Carolina law, which had adopted the UCC, to define "purchase money security interest" in § 1325(a) of the Bankruptcy Code). ***This may prove to be impractical in large bankruptcy cases like this one, where there have been multiple transactions in 48 states and Puerto Rico that implicate § 503(b)(9) of the Bankruptcy Code.*** The question arises what state law does the Court apply? ***It would be inefficient to look at each transaction that occurred in every state or territory that has an interest in the transaction, decide which state law may apply to the transaction, determine how the law of each applicable state or territory would individually construe the term "goods," and then apply that definition to the individual claim at hand. This approach could lead to inconsistent treatment for otherwise similar claims. The Court does not believe that Congress intended a disparate application of the term "goods," but rather contemplated a consistent, uniform approach to its interpretation.*** For this reason, the Court will adopt and apply a federal definition for the term "goods" for purposes of § 503(b)(9) of the Bankruptcy Code.

*In re Circuit City Stores, Inc.* 416 B.R. 531, 535 (Bankr. E.D. Va. 2009) (emphasis added).

> Supreme Court case in *Howard* is just not simply a policy generally favoring a narrow interpretation in priorities. The Supreme Court decided the case on that basis. Where there was an ambiguity, the Court said well, Congress had to be clearer. . . . I have to accept the fact that this is ambiguous. And then you go back to *Howard*.

A&P Hr'g Tr. at 101:3-19, 106:18-21.

12.    PREPA's Response adds nothing new to the analysis. First, PREPA highlights the split in authority, and, therefore, the ambiguity underlying this Court's and the District Court's prior decisions. Next, PREPA unpersuasively argues that this Court should give disproportional weight to the decisions of the bankruptcy court in Puerto Rico interpreting federal law, that it would be "inequitable to apply New York case law," because PREPA lacks the minimum contacts with New York for this Court's precedent applying the same federal law to be relevant. *See* Response ¶ 5 (arguing PREPA's electricity was "generated, transmitted and distributed in Puerto Rico, supplied to Debtors in Puerto Rico, metered in Puerto Rico, and consumed by Debtors in Puerto Rico."). This argument would create a new "minimum contacts" requirement for courts to follow that would supersede *stare decisis* and other rules of interpretation and precedent. The "minimum contacts" requirement is typically reserved to determine whether a court has personal jurisdiction over a party from another jurisdiction; however, here, PREPA has not argued that this Court lacks jurisdiction over the asserted section 503(b)(9) priority Claims.

13.    Next, PREPA cherry-picks a handful of cases from bankruptcy courts in Puerto Rico, Wisconsin, Massachusetts, Colorado, and Montana and alleges from counting them that a majority of courts now have held electricity fits within the UCC section 2-105(1) definition of "goods" in the context of section 503(b)(9).[6] *See* Response ¶ 9 (citing to six cases). PREPA

---

[6] In addition, PREPA cites other cases outside the context of section 503(b)(9) that treated electricity as a "good" under the UCC or federal statutes other than the Bankruptcy Code. *See* Response ¶¶ 9-10. Such cases are not determinative of the issue here: is electricity a "good" in the context of section 503(b)(9), taking into account the intent of the Bankruptcy Code which favors narrowly construing priorities.

asks that this Court follow this new "majority." Clearly, though, just as many cases reached the opposite conclusion. *See In re N. Pac. Canners & Packers Inc.*, 628 B.R. 337, 344 (Bankr. D. Or. 2021); *Great Atl. & Pac. Tea Co.*, 538 B.R. at 666; *In re NE Opco, Inc.*, 501 B.R. 233, 260 (Bankr. D. Del. 2013) (reviewing circuit split and "conclud[ing] that electricity is not a good"); *Pilgrim's Pride*, 421 B.R. at 239 (holding the electricity was not a good and noting "[n]one of these cases [from other jurisdictions stating electricity is a good] binds this court, and it respectfully disagrees with their holdings"); *In re Samaritan All., LLC*, No. 07-50735, 2008 WL 2520107, at *4 (Bankr. E.D. Ky. June 20, 2008) (the "court concludes that while courts are divided on the general question of whether or not electricity is 'goods,' the court agrees with the Debtor that section 503(b)(9) is not applicable…"). The most recent reported decision was *North Pacific Canners*, decided in May 2021. The bankruptcy court there joined this Court and held that electricity is not a "good," finding specifically that "[i]t is far from clear that the electricity … qualifies as goods within the meaning of § 503(b)(9)." 628 B.R. at 344. The Supreme Court has instructed that where there is "[a]ny doubt concerning the appropriate characterization" of a claim, it "is best resolved in accord with the Bankruptcy Code's equal distribution aim." *Howard*, 547 U.S. at 668.

14.     PREPA's final plea, for this Court to simply join the other side of a circuit split, likewise is not persuasive. While splits of authority between circuits should be avoided when possible, given the existing split of authorities, adopting PREPA's view would neither avoid nor resolve a circuit split here. This Court need not blindly follow the non-binding decisions of certain courts when a reasonable interpretation adopted by a multitude of other courts, including this one

and the District Court, is readily available and will avoid an absurd and detrimental outcome in these chapter 11 cases.

15.    Based on all of the foregoing, the Debtors request that this Court overrule the Response and sustain the Objection with respect to PREPA's Claims.  The Debtors reserve all rights to supplement this reply and to make additional arguments at the hearing scheduled to consider the Objection.

Dated: December 16, 2021
       New York, New York

/s/ Garrett A. Fail
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Debtors
and Debtors in Possession*