Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 18-23538-rdd

4    Adv. Case No. 20-06594-rdd

5    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7

8    SEARS HOLDINGS CORPORATION,

9

10           Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   SEARS, ROEBUCK AND CO. et al.,

13               Plaintiff,

14         v.

15   CLEVA HONG KONG LTD.,

16               Defendants.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

18

19               United States Bankruptcy Court

20               300 Quarropas Street, Room 248

21               White Plains, NY 10601

22

23               December 14, 2021

24               10:20 AM

25

```
 1   B E F O R E :

 2   HON ROBERT D. DRAIN

 3   U.S. BANKRUPTCY JUDGE

 4

 5   ECRO:   JUSTIN WALKER

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 3

1   HEARING re 18-23538-rdd Sears Holdings Corporation Notice of

2   Agenda of Matters Scheduled for Hearing to be Conducted

3   Through Zoom on December 14, 2021 at 10:00 a.m.

4

5   HEARING re 18-23538-rdd Sears Holdings Corporation Motion to

6   Approve Compromise / Debtors' Motion for Authorization and

7   Approval of Settlement and Mutual Release among Sears,

8   Roebuck and Co., Sears Holdings Corporation, and 233 S.

9   Wacker, LLC Pursuant to Bankruptcy Rule 9019 filed by

10  Jacqueline Marcus on behalf of Sears Holdings Corporation

11  (ECF # 10099)

12

13  HEARING re Adversary proceeding: 20-06594-rdd Sears, Roebuck

14  and Co. et al v. Cleva Hong Kong Ltd.

15  Motion to Dismiss Adversary Proceeding filed by Michael R.

16  Herz on behalf of Cleva Hong Kong Ltd. (ECF #4)

17

18  HEARING re Adversary proceeding: 20-06594-rdd Sears, Roebuck

19  and Co. et al v. Cleva Hong Kong Ltd.

20  Affidavit Declaration of Hong Chen (related document(s)4)

21  Filed by Michael R. Herz on behalf of Cleva Hong Kong Ltd.

22  (ECF #5)

23

24

25

Page 4

1   HEARING re Adversary proceeding: 20-06594-rdd Sears, Roebuck

2   and Co. et al v. Cleva Hong Kong Ltd.

3   Notice of Hearing on Motion to Dismiss Adversary Proceeding

4   (related document(s)4) filed by Michael R. Herz on behalf of

5   Cleva Hong Kong Ltd. (ECF #6)

6

7   Certificate of Service Regarding Motion to Dismiss Adversary

8   Proceeding, Declaration in Support, Notice of Hearing

9   (related document(s)6, 5, 4) Filed by Michael R. Herz on

10  behalf of Cleva Hong Kong Ltd. (ECF 37)

11

12  HEARING re Adversary proceeding: 20-06594-rdd Sears, Roebuck

13  and Co. et al v. Cleva Hong Kong Ltd.

14  Memorandum of Law (related document(s)4) filed by Brigette

15  McGrath on behalf of Kmart Holding Corporation, Sears,

16  Roebuck and Co. (ECF # 12)

17

18  HEARING re Adversary proceeding: 20-06594-rdd Sears, Roebuck

19  and Co. et al v. Cleva Hong Kong Ltd.

20  REPLY OF DEFENDANT CLEVA HONG KONG LTD. IN SUPPORT OF MOTION

21  TO DISMISS ADVERSARY PROCEEDING PURSUANT TO FEDERAL RULE OF

22  CIVIL PROCEDURE 12(b)(5) (related document(s)9, 4) filed by

23  Michael R. Herz on behalf of Cleva Hong Kong Ltd. (ECF #14)

24

25

Page 5

1    HEARING re Adversary proceeding: 20-06594-rdd Sears, Roebuck

2    and Co. et al v. Cleva Hong Kong Ltd.

3    Affidavit DECLARATION OF MICHAEL R. HERZ, ESQ. IN SUPPORT OF

4    MOTION OF DEFENDANT CLEVA HONG KONG LTD., TO DISMISS

5    ADVERSARY PROCEEDING PURSUANT TO FEDERAL RULE OF CML

6    PROCEDURE 12(b)(5) (related document(s) 14) Filed by Michael

7    R. Herz on behalf of Cleva Hong Kong Ltd.  (ECF #15)

8

9    HEARING re Adversary proceeding: 20-06594-rdd Sears, Roebuck

10   and Co. et al v. Cleva Hong Kong Ltd.

11   REPLY OF DEFENDANT CLEVA HONG KONG LTD. IN SUPPORT OF MOTION

12   TO DISMISS ADVERSARY PROCEEDING PURSUANT TO FEDERAL RULE OF

13   CML PROCEDURE 12(b)(5) AND DECLARATION OF MICHAEL HERZ IN

14   SUPPORT THEREOF (related document(s) 15, 14) Filed by

15   Michael R. Herz on behalf of Cleva Hong Kong Ltd. (ECF #16)

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 6

1   A P P E A R A N C E S :

2

3   WEIL, GOTSHAL & MANGES LLP

4        Attorneys for the Debtors

5        767 Fifth Avenue

6        New York, NY 10153

7

8   BY:  GARRETT FAIL  (TELEPHONICALLY)

9

10  ASK LLP

11        Attorneys for Kmart Holding Corporation

12        2600 Eagan Woods Drive, Suite 400

13        St. Paul, MN 55121

14

15  BY:  NICHOLAS C. BROWN (TELEPHONICALLY)

16

17  FOX ROTHSCHILD LLP

18        Attorneys for Cleva Hong Kong

19        49 Market Street

20        Morristown, NJ 07960

21

22  BY:  MICHAEL R. HERZ (TELEPHONICALLY)

23

24

25

Page 7

1   FOX ROTHSCHILD LLP

2         Attorneys for Cleva Hong Kong

3         2 West Washington Street, Suite 1100

4         Greenville, SC 29601

5

6   BY:  MICHAEL K. MCCARRELL (TELEPHONICALLY)

7

8   ALSO PRESENT TELEPHONICALLY:

9

10  KARA E. CASTEEL

11  BRIGETTE MCGRATH

12  PHILIP D. ANKER

13  SARA BRAUNER

14  PHIL DIDONATO

15  ZACH LANIER

16  DOMINIC LITZ

17  JACQUELINE MARCUS

18  ERIKA MORABITO

19  BRITTANY NELSON

20  GARY POLKOWITZ

21  NATAN BANE

22  THOMAS DAVIS

23  KEVIN ECKHARDT

24  PATRICK ENG

25  SCOTT FRIEDMAN

1   UDAY GORREPATI

2   TAYLOR HARRISON

3   ANA LUCIA HURTADO

4   CHLOE A. JASPER

5   JENNIFER KOOCKOGEY

6   TYLER OKADA

7   TRAVIS PEENE

8   ALLYSON PIERCE

9   JOSEPH SZYDIO

10   DAVID H. WANDER

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2            THE COURT:  Good morning.  This is Judge Drain.

3    We're here today in in Re Sears Holdings Corporation, et al.

4    We're handling these matters completely remotely, primarily

5    by Zoom, unless someone doesn't have access to a screen, in

6    which case, they will be appearing by telephone.

7                 So I have the agenda for today's session.  And at

8    least on the agenda, there's just one matter scheduled; all

9    the other ones are adjourned or stated that there'll be an

10   order submitted based on resolution on a consensual basis.

11                The matter that's contested is Kmart Holding

12   Corp., et al v. Cleva Hong Kong Ltd. and the defendant's

13   motion to dismiss.

14                There was some confusion, I think, as to whether

15   another matter might be back on the calendar, which is the

16   Debtors' motion for approval of a settlement involving the

17   Calder sculpture.  That CNO was submitted, I think, Thursday

18   last week and I don't need a hearing on it.  I was traveling

19   at that time, and have entered some, but not all of the

20   Sears orders that came in during that period.

21                So if anyone is on for that matter, and assuming

22   that there, in fact, were no objections to the motion, I did

23   have a chance to review the motion this morning and I don't

24   need a hearing on it.

25            MR. FAIL:  Thank you, Judge.  Garrett Fail, Weil

1    Gotshal, on behalf of the Debtors.  Appreciate your

2    attention to that matter and for the update for parties in

3    interest.

4              THE COURT:  All right.  So why don't we then turn

5    to the Cleva Hong Kong Ltd. motion, which is motion under

6    Bankruptcy Rule 7012, incorporating Federal Rule of Civil

7    Procedure 12(b)(5), seeking an order dismissing the

8    adversary proceeding on the basis of lack of or insufficient

9    service of process.

10             MR. BROWN:  Good morning, Your Honor.  This is

11   Nick Brown on behalf of the plaintiffs.

12             THE COURT:  Good morning.

13             MR. HERZ:  Good morning, Your Honor.  Michael Herz

14   at Fox Rothschild on behalf of Cleva Hong Kong, and with me

15   today is my colleague from South Carolina, Kevin McCarrell,

16   and Kevin will be presenting argument for Cleva Hong Kong

17   today.

18             THE COURT:  Okay, very well.  So I've reviewed the

19   parties' pleadings on this, namely the motion itself with

20   the attached declaration of Hong Chen, the Debtors'

21   objection to the motion with the attached declaration of

22   Bethany Rubis, and the movant's reply with Mr. Herz's

23   declaration.

24             This was not scheduled as an evidentiary hearing,

25   as I understand it, so I'm focusing primarily on the

1    parties' arguments and undisputed facts at this point.  And

2    I think those would include the two summonses and the

3    certificate of service, but parties should tell me if

4    there's any other undisputed fact that they think is

5    relevant.

6              But with that introduction, I'm happy to hear

7    brief oral argument.

8              MR. McCARRELL:  Thank you, Your Honor.  Kevin

9    McCarrell of Fox Rothschild Law Firm on behalf of plaintiff,

10   Cleva Hong Kong.  We are here today on a motion to dismiss

11   the Debtors' adversary proceeding, which the Debtors seek

12   (sound glitch) in allegedly preferential transfers.

13             Your Honor, the basis of our motion is quite

14   lucrative point of sale (sound glitch).  First, the Second

15   Circuit established the per se rule that plaintiffs serving

16   as (sound glitch) defendant.

17             THE COURT:  I'm sorry.  You're fading in and out.

18   I'm not sure if that's because you're moving back and forth

19   from the mic, but if you can just be a little closer to your

20   microphone, I'd appreciate it.

21             MR. McCARRELL:  Okay.  Sorry about that, Your

22   Honor.

23             First, Your Honor, the Second Circuit has

24   established per se ruling that a plaintiff serving an

25   international defendant must commence service within 90 days

1    under Rule 4(m), and the plaintiffs have conceded that they

2    failed to do so.

3            Second, Your Honor, even if the Court were to

4    apply the (sound glitch) standard, flexible due diligence,

5    the plaintiffs' delay in this case (sound glitch).

6            And third, Your Honor, this Court entered a

7    procedures order governing this adversary proceeding, along

8    with other adversary proceedings, that set forth the

9    deadlines that (sound glitch), many of which have quite well

10   passed.  And this procedures order specifically provides for

11   dismissal (sound glitch).

12           Your Honor, I understand you've reviewed the

13   briefing, so I won't (sound glitch) background facts.  I

14   will mention -- I don't know if we said this in our

15   pleadings -- Cleva Hong Kong is a manufacturer of vacuum

16   cleaners and (sound glitch) and they sold goods (sound

17   glitch) --

18           THE COURT:  I'm sorry.  Can I interrupt you?  I'm

19   hearing like every other word.  I don't know what the -- do

20   you have headphones by any chance, Mr. McCarrell?

21           MR. McCARRELL:  I do not, Your Honor.  I could

22   call in instead.

23           THE COURT:  Well, I think you should do that.  I

24   just want to make sure the transcript is clear.

25           MR. McCARRELL:  Okay.  Thank you, Your Honor.

```
 1                THE COURT:  Okay.

 2                MR. McCARRELL:  I apologize.

 3                THE COURT:  That's fine.  That's fine, it's no

 4    problem.  Take your time to dial in.

 5                MR. McCARRELL:  Your Honor, I pushed over to phone

 6    audio.  Is that any clearer?

 7                THE COURT:  That's much better.  Thank you.

 8                MR. McCARRELL:  Okay.  I apologize, Your Honor.

 9    And for the record, your law clerk did conduct an audio

10    check.  Don't blame your employees because I'm not sure what

11    happened in the interim.

12                THE COURT:  That's fine.  That's fine.  So you

13    were going to go into the factual background.  But can I ask

14    you a couple of questions before then that I would like you

15    to focus on, either now or after you go through the factual

16    background.

17                The first is, under the case law, what is the

18    difference, if any, between the flexible due diligence

19    standard applied to a plaintiffs' actions to serve a foreign

20    defendant, which clearly applies if the efforts to undertake

21    service were commenced within the 90 days -- that's the

22    first standard -- and the standard generally under Rule 4(m)

23    and the Zapata line of cases, which recognize, first, that

24    the Court shall grant extension or recognize an exception to

25    the 90-day period upon a showing of good cause.  And
```

1    further, under Zapata and the line of cases in the exercise

2    of discretion may do so even absent good cause.

3            What is the meaningful distinction between those

4    two standards?

5            MR. McCARRELL:  Well, Your Honor, I think the

6    first issue is accordance in order for the Court to give an

7    extension for good cause that the plaintiffs actually asked

8    for an extension, and they didn't.  The plaintiffs never --

9    the plaintiffs sat on their hands for months after filing

10   its Complaint and never filed a motion requesting an

11   extension.

12           And so, Your Honor, the case law that I'm familiar

13   with when considering the good cause standard on a motion of

14   the plaintiff to extend.  And, Your Honor, our position, of

15   course, is that we don't even need to get to the flexible

16   due diligence standard.

17           THE COURT:  Well, the rule doesn't actually say

18   that.  I'm sorry.  The rule doesn't actually say that.  It

19   says that if a defendant is not served within 90 days after

20   the Complaint is filed, the Court on motion must dismiss the

21   action without prejudice against that defendant or order

22   that service be made within a specified time.  But if the

23   plaintiff shows good cause for the failure, the Court must

24   extend the time for service for an appropriate period.

25           So it doesn't really tie it into request for an

1    extension and, in fact --

2              MR. McCARRELL:  Well, I'm also familiar -- excuse

3    me, Your Honor, didn't mean to interrupt.

4              I'm also familiar, Your Honor, with case law in

5    which the judge issues a rule to show cause shortly after

6    the 90-day period had expired, and that may be another

7    opportunity for the plaintiffs to show good cause.

8              But I've not seen anything in this case where the

9    plaintiffs have affirmatively sought to show good cause.

10   Even in their response brief, you know, they filed an

11   affidavit talking about some of the issues with COVID, et

12   cetera, and, Your Honor, none of that is good cause for the

13   delay.  The mail never stopped --

14             THE COURT:  I'm going back to my question though,

15   Mr. McCarrell, which is what is the distinction between

16   flexible due diligence standard and either cause or the

17   exercise of discretion even without a showing of cause under

18   the Zapata case and in similar cases.

19             MR. McCARRELL:  And, Your Honor, I think to answer

20   that question.  I'm not sure if you're answering whether

21   it's good cause or flexible due diligence.  I don't know

22   that there is a whole lot of difference between the

23   standards that you're applying.

24             I think what I was suggesting earlier is that the

25   procedure in which these issues arise may be different in

1    some of the case law, but I'm not sure that the difference

2    in good cause or flexible due diligence is that different.

3         THE COURT:  Okay.  And then the other question I

4    had is, I think you should at some point address what missed

5    deadline in the procedures order prejudices the defendant.

6         MR. McCARRELL:  Well, Your Honor, I think

7    regarding the prejudice issue, I'd first like to point out

8    as we stated in our brief, the prejudice inquiry generally

9    only comes after determining that the plaintiffs' failure to

10   serve is not a result of their own negligence, and we cited

11   the Kogan v. Facebook case to that in our briefs.

12         Furthermore, Your Honor, the Second Circuit -- you

13   mentioned the Zapata case.  The Second Circuit in Zapata

14   case specifically said that it's been prejudiced when

15   they're forced to defend what would be an otherwise time-

16   barred action, so there's prejudice there.

17         But to answer your question about specifically the

18   procedures order.  If Your Honor is suggesting that the

19   plaintiffs had shown some sort of good cause for you to

20   amend your procedures order, then I understand your point

21   that we would perhaps not be prejudiced if all it takes is

22   for Your Honor to submit an amended procedures order.

23         But, Your Honor, we don't believe they've done

24   that; they have not shown good cause.  And all of the

25   deadlines that have passed with regard to discovery, et

1    cetera have prejudiced us for your inability to defend what

2    would otherwise be a time-barred action.

3            THE COURT:  Okay, so I interrupted you.  You were

4    going through just the timeline here I think.

5            MR. McCARRELL:  Thank you, Your Honor.

6            So, yes, as I was I think indicating, Cleva is a

7    manufacturer of vacuum cleaners and other floor care

8    products, as well as ecofriendly gardening tools.  They've

9    sold good to the Debtors on an extension of credit pursuant

10   to the agreement between the parties, as in a typical

11   preference action.

12           Of course, as Your Honor is well aware, the

13   Debtors filed their bankruptcy petition on October 15, 2018.

14   Although the plaintiffs' Complaint has a timestamp on it

15   indicating it may have been prepared as early as October

16   2019, they waited until a few days before the two-year

17   statute of limitations to file this action on October 9,

18   2020.

19           The clerk of court promptly issued a summons.  The

20   initial summons stated that service -- that the response to

21   the Complaint was due within 30 days of issuance of the

22   summons.  And the Debtors took no action from the time the

23   summons was issued until mid-March when they apparently

24   requested a second summons be issued.

25           And that second summons had different language in

1    the summons and said that it should be -- the response was

2    due within 30 days of service.  They then waited another

3    month approximately before they served the pleadings to

4    their process server, who then apparently waited another

5    four months before they ever sent the pleadings abroad.

6           The plaintiffs have given no good cause or reasons

7    as to why the pleadings would not have been put in the mail

8    before they were.

9           And, Your Honor, I think we've hit the case

10   highlights.  You know, the Second Circuit has --

11          THE COURT:  I'm sorry.  I'm sorry.  But on the

12   facts, did Cleva Hong Kong file a claim in this case?

13          MR. McCARRELL:  Your Honor, I believe there was.

14   Yes, Your Honor, there was a proof of claim filed.

15          THE COURT:  Okay.

16          MR. McCARRELL:  And we're not contesting the case

17   law that talks about, you know, filing a proof of claim, you

18   know, submitting yourself to the jurisdiction of the

19   Bankruptcy Court.

20          THE COURT:  That's not why I asked it.  I'm sure

21   you're about to tell me, but you don't need to.  The

22   requirement to serve properly is separate and apart from

23   being within the jurisdiction of the Court for core versus

24   non-core purposes and the like.  I was just curious as to

25   Cleva's awareness of the bankruptcy case and the plan

Page 19

1    process.

2            Okay.  You can go ahead.

3            MR. McCARRELL:  Thank you, Your Honor.

4            Again, the Second Circuit, starting with the

5    Montalbano case in 1985 and running to (sound glitch) case

6    in 2010 has a string of increasingly clear statements that

7    in the Second Circuit, in order to serve an actual

8    defendant, you have to at least attempt within the 90-day

9    period required by Rule 4(m); and if not, the exception for

10   service of foreign entities is inapplicable.

11           And, Your Honor, the plaintiffs have cited some

12   cases that -- in the District Court level that apply to

13   flexible due diligence standards and suggest that there's

14   some sort of split among the District Courts about how to

15   apply the Second Circuit's rulings.

16           Your Honor, however, all the cases they cite were

17   before the Whitman case in 2005, which set forth perhaps the

18   strongest statement for the rule.  And we have a series of -

19   - a string cite of cases in our brief taking up almost two

20   pages of our brief of District Court cases after that apply

21   the per se very clear rule that plaintiffs must attempt some

22   sort of step towards service within the 90 days or else the

23   case must be dismissed.

24           THE COURT:  Although the Teligent case with its

25   analysis was affirmed in 2007 by the District Court.

Page 20

1              MR. McCARRELL:  Thank you, Your Honor.  I would

2    have to go back and look at the affirmation to determine.  I

3    appreciate you bringing that to my attention.

4              THE COURT:  Okay.

5              MR. McCARRELL:  But, Your Honor, even if Your

6    Honor were to apply the flexible due diligence standard, the

7    plaintiffs have failed to meet their burden.  I already went

8    through the background there.  You know, the plaintiffs have

9    indicated that they couldn't move forward because of COVID,

10   or they elected not to move forward because of COVID.

11             But, Your Honor, the case on your docket, Jupiter

12   Workshop -- and the adversary proceeding number there is 20-

13   06390.  In that case, the same law firm that's here today

14   filed a declaration indicating that they had been told that

15   defendant was not going to accept service.  They obtained a

16   new summons from the court the same day and put the

17   pleadings in the mail to their process server the same day.

18             There's no reason why the plaintiffs should have

19   sat on this for months and months without getting the

20   documents to the process server to start service attempts.

21   The suggestion that the process server told them, well,

22   there could be delays because of COVID, so we chose to do

23   nothing is nonsensical.  If your process server is telling

24   you there's going to be delays, that ought to accelerate the

25   process so that you make sure that you're not the cog in the

1    wheel slowing down the process.

2          And so, Your Honor, again, even if you were to

3    apply the flexible due diligence standard, we believe the

4    facts are clear that the case should be dismissed.

5          And, Your Honor, we talked about the procedures

6    order.  We also think that provides an additional basis for

7    dismissal of this action.

8          Unless Your Honor has any further questions for

9    me, that's my argument.

10         THE COURT:  Okay.  Under the case law, I had a

11   hard time finding a case in the foreign defendant context

12   where a court, at least in the Second Circuit, had granted a

13   motion to dismiss under Rule 12(b)(5) where service was

14   effectuated any earlier than a couple of months at least

15   over a year since the issuance of the summons.

16         Do you have any that do that?

17         MR. McCARRELL:  Your Honor, as you're asking that

18   question, I believe there is one that was dismissed within

19   six months, that the name of it is not coming to me off the

20   top of my head and I'd have to dig into it to see if I'm

21   correct on that and which court that was.

22         THE COURT:  Okay.  And I guess there may have been

23   one like that where there was no attempt to serve

24   whatsoever.  I mean, there still hadn't been when the motion

25   was brought.  But I'm focusing on ones where there had been

Page 22

1    an attempt; in fact, there had been service.

2         It seems to me the cases generally that grant

3    these types of motions either involve a situation where

4    there still had not been service or, alternatively, the time

5    was well past a year.  For example: in Bozel, it was 25

6    months; in Travers Tool, it was over a year; in DEF, it was

7    two and a half years.

8         Maybe the one you're thinking of is Yellowave v.

9    Mana.  But there, there'd been no attempt to serve in the

10   180 days before the motion was filed and no attempts

11   thereafter.

12        But if you or one of your colleagues can, you

13   know, maybe find one while I'm listening to Mr. Brown, you

14   can come back and let me know.

15        MR. McCARRELL:  Okay.  Thank you, Your Honor.  And

16   our position on that generally is, you know, it's not the

17   role of the attorney representing a defendant to bring to

18   the attention of the plaintiff that they have failed to

19   effect service.  And so, you know --

20        THE COURT:  I understand that, absolutely.  In

21   fact, I think the record is clear, although Mr. Brown can

22   tell me otherwise, that the law firm for the plaintiff was

23   told in October of 2020 that the counsel for the Cleva

24   entity that they had spoken with was not a counsel for Cleva

25   Hong Kong and was not authorized to accept service, so I

Page 23

1    think that record is clear.

2              I mean, you're right.  The defendant doesn't have

3    to say anything as to whether you served them properly or

4    not.  But beyond that, I think here, Sears was on notice

5    that they were going to have to serve through the Hague

6    Convention or otherwise serve abroad.

7              Okay.  So why don't I hear from the plaintiff

8    then.

9              MR. BROWN:  Thank you, Your Honor.  I hope you can

10   hear me well.

11             THE COURT:  Yes.

12             MR. BROWN:  Thank you.  Nick Brown on behalf of

13   the plaintiffs in this adversary proceeding.  Thank you for

14   hearing us today.

15             Your Honor, last time I appeared before you, it

16   was on a telephone conference hearing, but it was on the

17   exact same issue in this same debtor case against Jupiter

18   Workshops, which is the preference proceeding that defense

19   counsel just referenced.

20             So Your Honor may recall we dealt with a very

21   similar issue on that one, and I'll be talking more about

22   that issue today because we have very similar facts today.

23             But first, Your Honor, I want to make sure that

24   the Court is clear, or at least that we can get some

25   clarity, on the record here regarding the awareness of the

Page 24

1    defendant in October 2020 when this Complaint was filed.  In

2    plaintiffs' response, we attached the declaration of Miss

3    Rubis, and to that declaration as Exhibit C is an email

4    chain between counsel in my office and counsel for the

5    defendant, which Your Honor had just referenced.

6         I can pull it up on the screen if it's helpful or

7    I can just refer to it.  But important to know here is

8    within an hour of filing the Complaint, apparently, defense

9    counsel must have received automatic electronic notice or

10   somehow obtained it.  We got an email from defense counsel

11   introducing themselves, saying -- here, I can pull it up

12   here if it's helpful -- saying, "I hope all is well and you

13   and the family are holding up during these crazy times."

14   Emphasis on crazy times because, of course, a big reason why

15   we opted not to immediately serve this Complaint is, of

16   course, because of COVID-19.

17        I mean, there's no reason to argue about the

18   significance of the pandemic and I'm not going to go into

19   that, but it is worth noting that defense counsel

20   acknowledged the craziness of the times that we were dealing

21   with.

22        Defense counsel went on to say, "I was hoping you

23   guys would somehow miss this one," referring to this

24   adversary proceeding.  "I'm sure we'll have lots to

25   discuss."

1          We responded three days later, saying, "Hi.  We

2     are well.  Miss Rubis is handling this case, but you can

3     probably put it on a backburner for a long time (emphasis on

4     the word long) because foreign service is basically not

5     happening during COVID."

6          And Miss Rubis then replied herself later that

7     day, introducing herself and asking if defense counsel would

8     like to discuss the case.  A couple of days later, she asked

9     defense counsel if they would be willing to accept service

10    on behalf of their client.  And the response was, "Hi,

11    Bethany.  We are not authorized to accept service.  Thank

12    you.  Mike."

13         There was no explanation from Mr. Herz that his

14    firm did not represent Cleva Hong Kong.  There was no

15    indication that we should not be corresponding with Mr. Herz

16    on this case.  And remember, Mr. Herz reached out to us

17    about this adversary proceeding and said it was simply we

18    are not authorized to accept service.

19         So, yes, we understood early on that we would need

20    to formally serve process through the Hague Convention or

21    some other acceptable means, but we always understood that

22    Mr. Herz and his firm represented the defendant.  Now I

23    understand in Mr. Herz's declaration that he agrees with

24    that.  But from our perspective, we had no reason to know

25    anything other than that his firm represented this

Page 26

1   defendant.  We, therefore, believe that his firm and his

2   client were well aware of this Complaint, so we just wanted

3   to make sure the record is clear on that based on the

4   information in front of Your Honor.

5            Your Honor asked a few pointed questions to

6   defense counsel that I wanted to address.

7            Number one, is there a distinction between the

8   flexible due diligence standard and the good cause standard.

9   I don't see a marked difference in the two standards.  One,

10  of course, apply in instances where the foreign country

11  exception applies, and they agree with the plain language of

12  Rule 4(m), which says that the 90-day rule only applies to

13  domestic service, which we agree with, Your Honor, and

14  which, as the Court is aware, there are plenty of cases in

15  this district that back that up.

16           I'll go into why we meet both standards, but I

17  think the analysis is more or less the same.

18           The second question Your Honor had was, what is

19  the prejudice, if any, regarding the procedures order and

20  the deadline that are in place.  The answer is there is

21  absolutely no prejudice whatsoever.  The reason being that

22  there is a procedures order in place for this adversary

23  proceeding.  It's found on the Debtors' main docket number

24  9060, procedures order that was entered in November of 2020.

25           This particular procedures order and the avoidance

Page 27

1   actions that it relates to, which are all listed in that

2   order, included many foreign adversary proceedings.  And we

3   anticipated that service would, in some instances, take a

4   long time, which tends to be the case when you're dealing

5   with foreign defendants.

6          So in Paragraph 4 in the procedures order, we

7   specifically state that we'd included several foreign

8   defendants with this procedures order.  Under the various

9   foreign services rules, and I'm reading this now:

10          "Service of an expired document would not be

11   proper.  Accordingly, inclusion of a foreign defendants on

12   this procedures motion is intended to effectuate proper

13   service.  The timeline for effectuating proper service is

14   dependent on the country of each respective foreign

15   defendant and may take several months, and in some

16   jurisdictions potentially over a year."

17          This is the important part: "To the extent that

18   deadlines contained in proposed orders need to be adjusted

19   based on the actual service date of a foreign defendant,

20   plaintiff intends on working with each foreign defendant

21   after successful service to determine if any deadlines in

22   the proposed orders need to be extended and intends on

23   freely extending as needed."

24          That's not only just lip service, Your Honor, we

25   have been honoring that.  That has been our position in the

1    many foreign defendant cases that we've had in this case and

2    fully plan on honoring the same with respect to this

3    defendant if this case is allowed to proceed after today.

4    We're not trying to play gotcha or get one under Cleva Hong

5    Kong, certainly not.

6          And what we would like to do is propose a

7    scheduling order and timeframe that closely mirrors the

8    deadlines that would have been in place had service been

9    effected on a domestic defendant, so similar timeframes.

10   But I'm confident that's something I ought to be able to

11   work out with defense counsel.

12         The third question that Your Honor had posed was

13   whether there was a claim that was filed in this case.

14   There certainly was.  Cleva Hong Kong filed an

15   administrative claim, I believe, so they're familiar with

16   the case and the workings and, you know, taking affirmative

17   steps to participate in the case.

18         I further believe that Cleva Hong Kong may have

19   sold its claim to a third party assignee, so I'm not sure if

20   they are technically a claimant at this time, but they

21   certainly were at one point.

22         So, Your Honor, I'd like to talk a little bit

23   about why my firm was diligent and reasonable in service and

24   why there is no prejudice to defendant, which I think is the

25   appropriate analysis under either the flexible due diligence

1    or good cause standards.

2           As the declaration points out, we were very

3    concerned, and around the time of the filing of this

4    Complaint, about the COVID-19 pandemic.  Lest anyone forget,

5    this was prior to vaccinations; we were only about six

6    months really into the pandemic itself.  There was a lot of

7    uncertainty and fear, a lot of office closures, a lot of

8    government-ordered shutdowns, including the two states where

9    my firm holds offices.

10           The impact of the pandemic was worldwide, perhaps

11   no more so at this particular time than China and Hong Kong,

12   which is the location of defendant.  Where we, like everyone

13   else, we're reading newspaper articles and other news

14   sources and understood that there were closures in China.

15   Governmental offices were being shut down at various times.

16   Cases were peaking in the fall and winter months between

17   when this Complaint was filed and when we actually set this

18   out for service.

19           So, you know, frankly, Your Honor, we weren't sure

20   if service was possible.  Certainly, our thinking was if we

21   waited -- you know, at that time I don't think anyone knew

22   how long the pandemic was going to last.  But if we wanted a

23   few months, maybe things would get better, and it would be a

24   better time to attempt service.

25           So I don't think there's anything controversial

1      about that way of thinking, but I'm happy to hear from

2      defense counsel about why that type of thinking is

3      unreasonable.  But we made a decision to hold off on service

4      of process, of course, knowing that Rule 4(m) and the 90-day

5      rule does not apply to foreign service.

6           The other factor going into our state of mind was

7      our awareness or our knowledge that defendant was aware of

8      the Complaint.  We had already told them that we expected

9      that service would take a long time because of COVID-19

10     pandemic.  We didn't see any reason why there would be

11     prejudice there when we asked defense counsel if they would

12     be willing to accept service in light of the pandemic and

13     they said no; they insisted on formal service, which is

14     their right.

15          Going into the no prejudice element.

16          THE COURT:  Excuse me.  Before we do that, the law

17     firm said quite promptly in October that they wouldn't

18     accept service, which I think clearly left the only

19     alternative being service through the Hague Convention or

20     even more difficult means of serving a foreign defendant,

21     which would entail the retention of a company to effectuate

22     service, which eventually was done, I guess, sometime in

23     April of 2021.

24          I understand that the plaintiff may well have

25     thought that service would be delayed in any event because

Page 31

1    of COVID beyond the normal delay of serving under the Hague

2    Convention, but why not simply put that in the hands of the

3    service company -- what is it, ACB I think is their name.

4              MR. BROWN:  APS perhaps.

5              THE COURT:  Sorry, ABS, excuse me.

6              -- and leave it up to them as to, you know, if

7    there's a window open, they can go do it; and if not, then,

8    you know, they can't do it.  But there's that step that

9    doesn't appear to be taken, which I think is the main focus

10   for the defendant here, which is hiring the service agent to

11   effectuate service abroad because they couldn't start that

12   process until they were hired to do it.  And again, that

13   didn't happen until a little over six months after the

14   summons.

15             MR. BROWN:  Sure, Your Honor.  So it's important

16   to keep in mind that there were something like a hundred or

17   slightly less foreign adversary proceedings that the Debtors

18   were contemplating and ended up filing in the Sears and

19   Kmart cases as far as preference actions go, and we filed

20   them in a couple of waves.  The first waves was in June,

21   such as the Jupiter Workshop case that we referenced.

22             But back in June or back in the summer of 2020, we

23   reached out to our process server, APS, who we use a lot for

24   foreign service, and we asked them how are we going -- what

25   is COVID going to do to the ability to serve process.  And

1    the response we got was an explanation that basically APS

2    wasn't sure, the timeframes might be delayed, and it kind of

3    depends on the specific locale, but, you know, there may be

4    delays.

5              So in speaking with them and thinking about it,

6    yes, we could have put the onus on the process server to

7    say, well, here, take this paperwork; when you feel it's

8    appropriate, go ahead and send it out.  Or we could have

9    just held back and waited until we thought that it would

10   make more sense to try to attempt service and then give it

11   to a process server.

12             And that's what we did here because it wasn't like

13   our process was saying, oh yes, don't worry about COVID,

14   we'll get it done.  It was more, like, yeah, I mean, there's

15   some reason to be uncertain about the state of things.  So,

16   yeah, we decided to hold back, rather than put the onus on

17   the process server.

18             Of course, by March, which is when we were able to

19   confirm that service had actually been successful in the

20   Jupiter case -- that was March 2021 -- that was when we

21   thought, okay, let's go ahead and give this to our process

22   server in this Cleva case so that they can send it out, and

23   that's what happened.  We sent it to them in March, and they

24   were able to get it out eventually and it ended up being

25   served within 11 months from the filing date, so less than a

Page 33

1    year.  I'll note that the Jupiter case, service was

2    accomplished within nine months after the filing date.

3            So it's a unique situation, Your Honor, where, you

4    know, I mean, what if there was a -- I don't know what to

5    compare it to, but let's say that China was in the middle of

6    a war or something, it would, you know, justify some

7    hesitance about whether service could actually be effected

8    in China.  You know, I guess, yeah, we could have given it

9    to our service of process server and said, hey, you guys

10   figure it out, or we could have just made what I think is a

11   very reasonable decision and said let's hold off on this and

12   see if things get better, and that's what we did.

13           THE COURT:  Okay.  So you were going to then turn

14   to the prejudice element.

15           MR. BROWN:  Thank you.

16           Like I had -- so first of all, defendant did have

17   notice.  I noticed in defendant's declaration that he said

18   that he had no direct correspondence with Cleva Hong Kong.

19   But his other client was, I guess, the North American

20   affiliate of Cleva Hong Kong who he was representing, and I

21   didn't see anything about him not, you know, talking with

22   that client about this.

23           I think it's fair to assume that somehow, someway

24   this defendant got notice, whether it was through his

25   attorney who was representing him or through the affiliate.

Page 34

1    I don't think it's reasonable to assume that the defendant

2    did not have notice of this Complaint at the time that their

3    counsel contacted us or shortly thereafter.

4            But, you know, it's not like we didn't give the

5    defendant an opportunity to speed up the process.  So if

6    they're saying that they are prejudiced as a result of this

7    delay, well, we asked you if you would accept service and

8    get the ball rolling and you declined.

9            There is no evidence of any way that plaintiff

10   could have benefited from delaying service.  Like I've said,

11   we will work with them on the deadlines.  We don't expect to

12   enforce the deadlines in the procedures order and the

13   procedures order is clear on that.

14           The money that is involved in this lawsuit is

15   already in the hands of the defendant, so if there was

16   interest to be earned on this money, defendant had the

17   benefit of that.  They had the benefit to use this money as

18   it pleased.

19           There's no reputational harm here, Your Honor,

20   because we're not asserting that Cleva Hong Kong did

21   anything wrong.  There's no allegation of actual fraud or

22   any breach of fiduciary duty or anything like that.  This is

23   a preference action based on a statutory right to recover

24   payments made in the 90 days preceding the petition date.

25           So I don't see why defendant -- and, of course,

Page 35

1   they filed a claim in the case, so they've already agreed to

2   participate in this case, so I don't see how defendant is

3   prejudiced at all.  On the other hand, of course, the

4   statute of limitations has run, so if Your Honor were to

5   dismiss this Complaint, we would be out of luck as far as

6   trying to bring a new Complaint against Cleva Hong Kong.

7          It's a large amount of money that we think there's

8   a good basis for avoidance and recovery that would certainly

9   benefit to the estate.  The estate is by no means flush with

10  cash, so every little bit helps, and this is a big important

11  case for the estate.

12         We've already incurred the cost of foreign

13  service.  Defendant has not incurred any costs, except with

14  respect to the motion to dismiss and appearing at this

15  hearing.

16         And then the other factor, Your Honor, that is

17  important and to keep in mind is the reasonable prospect of

18  service.  A lot of cases talk about that or give the

19  plaintiff an opportunity to effect service if the Court

20  feels like there's a good chance that service is likely to

21  take place.  And, of course, here, service has already been

22  effectuated via the proper channels.  I understand that

23  defendant did not even pursue a motion to dismiss until

24  after service had been effectuated, so it's not like there's

25  any question about whether service can happen here.

1          Again, this isn't a case where it's just been

2     languishing for years.  This isn't a case where we haven't

3     shown an intent to serve defendant.  We were very clear

4     within a week of filing, our intent was to serve this; it

5     was just going to take some time.  We'd like for you to

6     accept service, but we understand that you're not going to

7     do that.

8          But, you know, this isn't something where we have

9     one defendant of 10 and we're just kind of ignoring the

10    defendant.  This isn't a case like many of these others in

11    the Second Circuit where the plaintiff was attempting to

12    serve a domestic agent of a foreign corporation where those

13    courts have found that the foreign country exception doesn't

14    apply.  We've always been clear that our intent was to serve

15    this in China, and it's been less than a year.

16         So without a clear prejudice to the defendant, I

17    think the case law is pretty clear here and the facts in

18    this particular case and the unprecedented issues related to

19    the pandemic justify the Court to be able to find, you know,

20    reasonable diligence and a basis to allow service, even

21    though it was made about 11 months after the filing date,

22    and to allow the case to proceed.

23              THE COURT:  Okay.  All right.

24              Mr. McCarrell, do you have any response to any of

25    that?

1          MR. McCARRELL:  Yes, Your Honor, if I may briefly.

2          Plaintiffs' counsel started out his presentation

3     talking about the Jupiter Workshop case and indicating there

4     were "similar" facts in that case.  I've already pointed out

5     those facts are very different because in that case when the

6     plaintiffs were told that the defendant was not willing to

7     accept service, they immediately and very quickly, the same

8     day, obtained the second summons and sent it to their

9     process server for service in Hong Kong.  That was, in fact,

10    one day before filing this Complaint on October 9, 2020.

11         There is absolutely no reason why they could not

12    have done the exact same thing the following day to send the

13    pleadings to their process server.

14         Your Honor, I also heard Mr. Brown suggest that,

15    or more specifically assume, that Cleva Hong Kong had notice

16    of this filing because Cleva North America was aware, and I

17    just want to be clear there's nothing in the record on that

18    point.  As we sit here today, I don't know that that's true,

19    and, Your Honor, plaintiffs' counsel is certainly making a

20    lot of assumptions there in that statement.

21         As far as likening the pandemic to a war --

22         THE COURT:  And let me just interrupt you.  I

23    agree with you on that.  I think it's one thing to say

24    defendant -- I'm sorry.  It's one thing to say plaintiff may

25    have logically assumed that the same counsel would be

Page 38

1    representing both companies.  But it's another thing to say

2    that even if they weren't representing both companies, the

3    fact that counsel was representing the U.S. entity would

4    somehow mean that the Hong Kong company would have notice of

5    the pleading.

6             Mr. Hong Chen's declaration, it's a little

7    artfully drafted in that it says, "Cleva Hong Kong, Ltd. did

8    not receive any documentation or notice from plaintiffs of

9    the above-captioned suit before September 6, 2021."

10            On the other hand, Mr. Herz's declaration says in

11   Paragraph 3, "In talking with the Fox relationship partner

12   for Cleva Hong Kong, I understand..." -- and that's you,

13   Kevin McCarrell -- "... I understand that Fox had no direct

14   communications with Cleva Hong Kong regarding this adversary

15   proceeding."  That's a little artful too, but then it goes

16   on to say, "Or otherwise until after Cleva Hong Kong

17   received the Complaint and second summons on or about

18   September 6, 2021."

19            So, you know, the supposition that counsel had

20   communicated with Cleva Hong Kong about this is

21   contradicted.  That still leaves open whether Cleva Hong

22   Kong knew it from some other basis, including, you know, the

23   foreign company or just having access to the docket.

24            I don't think -- no one has suggested though or

25   said that Cleva Hong Kong filed a notice of appearance and,

1    therefore, would have gotten electronic notice of

2    everything, right?  That's not in the record.

3         MR. McCARRELL:  Correct.

4         THE COURT:  Okay.  So anyway, I interrupted you,

5    but I didn't want you to think my silence was necessarily

6    agreeing that Cleva Hong Kong had notice before September of

7    2021.

8         MR. McCARRELL:  Thank you, Your Honor.  Thank you.

9         Your Honor, as far as likening the pandemic to a

10   war, I don't understand the analogy here.  In this case, the

11   mail never stopped, email was always going, you could always

12   pick up the phone.  This was not a situation where it was

13   impossible to get communication into China.

14        And let's focus on what the process server

15   actually told plaintiffs' counsel.  I think there was some

16   paraphrasing about what the process server said.  But if we

17   look at Exhibit 12-2 filed by the plaintiff, which is a

18   transmission from their process server to plaintiffs'

19   counsel, on Page 3 of Exhibit 12-2, it's buried sort of in

20   the middle of the page or top middle of the page.

21        It says, "The entire process normally takes six to

22   eight months through the Central Authority in Hong Kong.  An

23   equivalent alternative method for service of process is

24   outlined below."  And then there's a note, "Timeframes may

25   vary due to the COVID-19 worldwide pandemic."  That's a mild

1    caution there about what the possibility of a potential

2    delay.

3           And likewise, Exhibit 12-3 filed by the plaintiffs

4    is an email.  The process server advises, "We are still

5    sending requests abroad.  The timeframes may vary with the

6    COVID-19 worldwide pandemic.  Some offices and courts may be

7    temporarily closed or have reduced hours and staff.  They

8    don't always tell us, but we'll resume as their situation

9    allows."

10           Your Honor, those statements from the process

11   server hardly indicate that the plaintiffs should have sat

12   and done nothing for six months after filing the Complaint

13   before asking for a second summons, waiting another month

14   until sending it to their process server.

15           And finally, Your Honor, with respect to the

16   prejudice issue.  Cleva is not some huge company; they're

17   not Sears.  They have been impacted by this bankruptcy

18   filing since it was filed in 2018.  And here we are three

19   years later still dealing with this issue, being held

20   hostage or the ability to make business decisions and

21   whether they are going to have a significant sum of money

22   clawed back into this estate to pay, most likely, Debtors'

23   attorneys and administrative claimants.

24           And so, Your Honor, there's absolutely a huge

25   prejudice to my client.  They have a right to rely on

1    statute of limitations and timely service.  As plaintiffs'

2    counsel acknowledged, they have a right to insist on proper

3    service and have no duty to accept service, and the

4    plaintiffs simply waited entirely too long to commence

5    service attempts.

6              Thank you, Your Honor.

7              THE COURT:  Okay, thank you.  All right.

8              I have before me a motion by the defendant in this

9    adversary proceeding, Cleva Hong Kong, Ltd., to dismiss the

10   Complaint pursuant to Bankruptcy Rule 7012, which

11   incorporates Federal Rule of Civil Procedure 12(b)(5) on the

12   basis of insufficient service of process.

13             Cleva Hong Kong, Ltd. is a foreign corporation

14   located in Hong Kong, and accordingly, a series of rules

15   pertain to proper service of it.  Rule 7004 with, I believe,

16   irrelevant differences incorporates Federal Rule of Civil

17   Procedure 4 with respect to the issue before me.

18             First, the one time limit specifically stated in a

19   separate provision of Rule 7004, namely 7004(e), for when a

20   Complaint should be served, specifically states, "This

21   subdivision does not apply to service in a foreign country."

22             That leaves the reference instead to Rule

23   7004(a)(1) as far as proper service is concerned, and that

24   takes one to Federal Rules of Civil Procedure 4.  Rule

25   4(c)(1) states, "In general, a summons must be served with a

Page 42

1    copy of the Complaint.  The plaintiff is responsible for

2    having the summons and Complaint served within the time

3    allowed by Rule 4(m) and must furnish the necessary copies

4    to the person who makes service."

5              Rule 4(m) of the Federal Rules of Civil Procedure

6    states:

7              "If a defendant is not served within 90 days after

8    the Complaint is filed, the Court, on motion or on its own

9    after notice to the plaintiff, must dismiss the action

10   without prejudice against that defendant or order that

11   service be made within a specified time.  But if the

12   plaintiff shows good cause for the failure, the Court must

13   extend the time for service for an appropriate period.  This

14   (m) does not apply to service in a foreign country under

15   Rule 4(f), 4(h)(2), or 4(j)(1) or to service of a notice

16   under Rule 71.1(d)(3)(A)."

17             And those subsections of Rule 4 do apply to

18   service in a foreign country.  4(f)(1) states that, "Unless

19   federal law provides otherwise, an individual may be served

20   at a place not within any judicial district of the United

21   States, (i) by any internationally agreed means of service

22   that is reasonably calculated to give notice, such as those

23   authorized by the Hague Convention or the service abroad of

24   judicial and extrajudicial documents."

25             THE COURT:  I will note here that the Defendant

1   was eventually served, and I believe this is undisputed, but

2   in any event, based on the certificate of service, even if

3   there were a dispute, it's clear was eventually served under

4   the Hague Convention in Hong Kong, China and the United

5   States both being participants in that convention.

6           Then, Rule 4(h) states that, unless federal law

7   provides otherwise, or the defendant's wavier has been filed

8   a domestic or foreign corporation, or partnership, or other

9   unincorporated association that is subject to suit under a

10  common name, must be served.

11          And then we go to subsection 2:  At a place not

12  within any judicial district of the United States, in any

13  manner prescribed by Rule 4(f) for serving the individual.

14          So, at least by its plain terms, the 90-day limit

15  under Rule 4(m), including as incorporated by Rule 4(c),

16  would not apply to service under the Hague Convention, on a

17  foreign corporation, as was done here.

18          However, the Second Circuit has put its own gloss

19  on those rules in a series of cases, which, the extent of

20  which still remains, to my mind, somewhat unclear.  It's

21  fair to say that that gloss started with Montalbano v. Easco

22  Handtools, Inc., 766 F.2d 737 (2d Cir. 1985).

23          There, the Plaintiff had not served the moving

24  Defendant within the then-applicable time for service, which

25  was 120 days, in effect at that time.

1        And the Court noted as follows:  "Where service of

2    process is insufficient, the Courts have broad discretion to

3    dismiss the action or to retain the case, but quash the

4    service that has been made on defendant," quoting 5(c),

5    Wright and Miller, Federal Practice and Procedure, Section

6    1354, 585, 1969.  And then, continuing on with the quote

7    from the opinion, "Even though service would ordinarily be

8    quashed and the action preserved, where there is a

9    reasonable prospect, the plaintiff ultimately will be able

10   to serve defendant properly."  Citation submitted.

11       Here, the District Court did not contravene

12   subdivision 4(j), even though it did not preserve the

13   action.  Subdivision 4(j), with its foreign country

14   exception to its 180-day period for service, is simply

15   inapplicable here, because Easco never attempted to serve

16   process in a foreign country under Subdivision 1; the 120-

17   day time limit imposed by Rule 4(j) seems, therefore,

18   perfectly proper, especially since Easco -- that is the

19   Plaintiff -- has not exactly bent over backward to affect

20   service.  So saying, we hold the dismissal of OH for failure

21   to make service is proper, nothing that such dismissal is,

22   in any event, conditional.

23       This, obviously, is not exactly the clearest

24   exposition of any sort of per se rule, as asserted by the

25   motion, that if a plaintiff fails to commence service within

1    the 120-day period, but thereafter does so, it is somehow

2    not within the limits of a time period under the federal

3    rules.

4            First, here, service was never commenced, it

5    appears.  Secondly, the -- in the foreign forum that is --

6    so, therefore, their 120-day period would, logically, apply

7    under the rule, because service was tried to be commenced in

8    the United States instead, where Rule 4 and 4(j) would not

9    have any exception.

10            And in any event, the Court focused on the

11    diligence of the Plaintiff in trying to effectuate service,

12    which might or might not apply to foreign service, but also

13    could, as easily, I believe, apply to good faith attempts

14    service in the United States.  But that, clearly, is not the

15    last word in the Second Circuit on timeliness limitations on

16    proper service of a foreign defendant.

17            Two decisions appeared in 2005 discussing the

18    issue.  The first was USHA (India), Limited v. Honeywell,

19    International, Inc., 421 F.3d 129, (2d Cir. 2005).  In that

20    case, again, the foreign defendant was never served with

21    process.  As noted at page 133.  The Court then quoted

22    Federal Civil Procedure 4(m), which had, again, the 120

23    period instead of the 90-day period.  But as the Court

24    noted, creates an exception for service for a foreign

25    country, pursuant to subdivision F.

1          The Court then stated, "This exception does not

2     apply if, as here, the Plaintiff did not attempt to serve

3     the Defendant in the foreign country," citing Montalbano, id

4     at page 134.

5          Again, therefore, one logically, under Montalbano,

6     would apply the time limit in Rule 4(m), because there was

7     no attempt to serve the defendant in the foreign country.

8          Then, in December of 2005, the circuit, in a

9     summary order, Russo Securities v. Ryckman, 159 Fed. App'x

10    294, (2d Cir. December 15, 2005), stated, "The District

11    Court did not abuse its discretion in dismissing Lawrence

12    Rickman's crossclaim against Alparco.

13         There is no merit to Rickman's argument that they

14    should be excused from diligently pursuing a crossclaim that

15    was filed by his lawyer on his behalf because he did not

16    know about it."  In any event, whereas here, a party does

17    not attempt service of process on a foreign defendant such

18    as Alparco, related claims may be dismissed pursuant to the

19    120-day time limit established by Federal Rule of Civil

20    Procedure 4(m), and the exception for service of process for

21    foreign entities is inapplicable; citing again, Montalbano

22    v. Easco.  Again, the crossclaim plaintiff had made no

23    attempt to serve, whether in or outside of the 120-day

24    limit.

25         Finally, in DEF v. ABC, 366 Fed. App'x. 250,

1    (February 18, 2010), cert denied, para.  Humanitarian

2    Foundation, Inc. v. Banco Cent. Del para. 2010 U.S. LEXIS

3    5266, (US June 28, 2010).

4            The Circuit said the following:  "Defendant's

5    third-party complaint against the banks in liquidation was

6    also correctly dismissed.  Defendants waited two years

7    before attempting to serve process on the banks in

8    liquidation, and never successfully served process on them.

9    We have previously held inapplicable the foreign country

10   exception to Federal Rule of Civil Procedure 4(m)'s 120-day

11   time limit for service, where a party did not attempt

12   service within the 120-day limit, and not exactly bent over

13   backward to affect service," citing Montalbano.  "Likewise,

14   we do not find that the District Court abused its discretion

15   here where Defendants waited two and a half years to attempt

16   service, never effective service, and did not explain why

17   they not been able to affect service."

18            Clearly, in that case, the circuit posited at

19   least a relevant consideration, i.e., where service was not

20   attempted within the 120-day limit, which was not present in

21   the other cases that I've just gone through.  But that was

22   not a conclusive factor, even as a new factor, because here,

23   in the DEF v. ABC opinion, the Court went onto say that the

24   plaintiff had not exactly bent over backward to affect

25   service and, in fact, waited two and a half years to attempt

1    service and never affected service, and did not explain why

2    they had not been able to affect service.

3              Having summarized the Circuit Court cases, and

4    their exegesis on the so-called foreign country exception to

5    Rule 4(m)'s deadline, I will note, however that a number of

6    lower court's have taken the view that the exception applies

7    only if the plaintiff makes an attempt to begin service on a

8    foreign defendant within 120 days.  See, for example,

9    Trilliant Funding Inc. v. Marengere (In re Bozel S.A.) 2017

10   U.S. District LEXIS 116135, (S.D.N.Y. July 25, 2017).  And

11   Astor Chocolate Corp. v. Elite Gold Limited, US Dist. LEXIS

12   78862 (S.D.N.Y. May 5, 2020), at page 14 through 15.

13             Both of those cases cite the Honeywell case,

14   which, arguably, does not stand for that proposition, as

15   well as DEF v. ABC, which has other factors noted in

16   affirming the Court's exercise of its discretion to dismiss,

17   in addition to that proposition.

18             Both of those opinions then state, when the

19   foreign country exception does apply, the Court uses a

20   flexible due diligence standard to determine whether service

21   of process was timely.

22             Under that standard, the plaintiff bears the

23   burden of proving that it exercised due diligence in not

24   timely serving the defendant.  The Court assesses the

25   reasonableness of the plaintiff's efforts and the prejudice

1    to the defendant from any delay, and can exercise its

2    discretion, notwithstanding the fact that the rule itself

3    appears to have no limitation on time of serving a complaint

4    on a foreign entity.  See In re Bozel, SA 2017 U.S. Dist.

5    LEXIS at 2, and Elite Gold, 2020 U.S. Dist. LEXIS 78862 at

6    page 15.

7              There are other courts that have held that the

8    exception does apply, even if the service occurred, or

9    efforts to -- I'm sorry -- even if efforts to make service

10   initiated after the applicable time period, whether it's 120

11   or 90 days, based on the date that the rule applies.  See,

12   for example, In re Teligent Inc., 372 BR 594, (S.D.N.Y.

13   2007).

14             In any event, and obviously quite properly, the

15   Courts don't provide a blank check for the time to serve a

16   foreign defendant.  And, as I've noted, apply the flexible

17   due diligence standard.

18             Moreover, even the courts that do not apply the

19   foreign company exception to Rule 4(M), recognize that Rule

20   4 itself provides discretion as well as a mandatory good

21   faith exception to the requirement otherwise to dismiss,

22   under Rule 4(M).  Again, see Elite Gold, 2020 U.S. Dist.

23   LEXIS 78862, at page 15 through 16, and In re Bozel, S.A.

24             As far as I can tell, and the parties have not

25   disagreed with this proposition, there appears to be very

Page 50

1    little difference between the flexible discretion standard

2    and the Court's analysis of the exceptions to Rule 4(M)'s

3    90-day period within Rule 4(M) and Rule 4, separate and

4    apart from the foreign defendant exception.

5            As noted, again, by the Elite Gold case, the

6    factors to be considered there are quite similar to the

7    factors applicable under the flexible due diligence

8    standard.  The existence of those exceptions was applied and

9    discussed in Zapata v. City of New York, 502 F.3d 192, (2d

10   Cir. 2007), which did not apply or deal with a foreign

11   defendant at all, but instead applied other exceptions to

12   the then 120-period in Rule 4(M).

13           Noting that, the Court, under the rule, is guided

14   by a proviso to the rules provision, that the Court shall

15   dismiss the actual (indiscernible) without prejudice, or

16   direct that service be affected within a specified time

17   provided that if the plaintiff shows good cause for the

18   failure of the Court, shall extend the time for service for

19   an appropriate period.

20           In addition, as discussed at length in the Zapata

21   opinion, the Court held, "That District Courts have

22   discretion to grant extensions, even in the absence of good

23   cause," id at 196.

24           Again, the focus there is on similar factors as

25   under the flexible due diligence standard that I've already

Page 51

1    described, namely the Court's exercise of its discretion

2    must be informed by its analysis of the impact that a

3    dismissal or extension, one or the other, would have on the

4    parties; including a focus on the effect on the parties of

5    the potential running of an applicable statute of

6    limitations, which was the primary focus, as well as whether

7    the Plaintiff had shown a colorable excuse for not serving

8    the Defendant in a timely fashion.

9             Although, importantly, in footnote 8 to the Zapata

10   opinion, the Circuit said the following:  "Because Zapata

11   was denied an extension, we express no opinion on what

12   circumstances will indicate an abuse of discretion, where a

13   district Court has granted an extension, without a showing

14   of good cause.  While we read Bogle-Assegai to indicate that

15   this Court would not disturb a District Court's dismissal

16   absent some colorable excuse raised by the Plaintiff.

17   Nothing, in our opinion, should be read as a per se rule,

18   that District Courts must require such an excuse in all

19   cases."

20            Having said that, I will note that in the case

21   law, courts generally have, since Zapata, focused on whether

22   there's at least a colorable excuse for the delayed service,

23   and not focused on prejudice unless there was such an

24   excuse.  See, for example, Kogan v. Facebook, Inc., 334

25   F.R.D. 393, 403 (S.D.N.Y. 2020).  See also Smith v. Bray, B-

Page 52

1    R-A-Y, 2014 U.S. Dist. LEXIS 158488, (S.D.N.Y. November 10,

2    2014) at page 15.  "To obtain a discretionary extension

3    absent a showing of good cause, the Plaintiff must

4    ordinarily advance some colorable excuse for neglect, citing

5    Zapata, note 7.  Courts balance the justifiable excuses

6    offered by the Plaintiff, the length of the delay and any

7    prejudice to either party,".

8            And then, finally, see Klein, K-L-E-I-N, v. VA,

9    2019 U.S. Dist. LEXIS 46412, (W.D.N.Y. March 2019), at page

10   11, where the Court, in fact, went further and stated,

11   "Moreover, Zapata recognizes that a District Court need not

12   require that the plaintiff raise a colorable excuse in order

13   to exercise its discretion to grant an extension of time for

14   service."  And, rather summarily, therefore, denied

15   defendant's motion.

16           Although it noted that it had, the plaintiff had

17   recognized, had articulated some form of an excuse for not

18   serving in a timely way, which would, in addition to the

19   effect of losing the cause of action, because of a time bar

20   required a dismissal.

21           The facts here that are undisputed are as follows:

22   Plaintiff's adversary complaint was filed October 9, 2020,

23   and the summons was issued October 14, 2020.  Almost

24   immediately after the filing of the complaint, the law firm

25   that had appeared for a domestic affiliate of the Defendant,

1    Cleva Hong Kong Limited; contacted counsel for the

2    Plaintiff, Sears, to note that the complaint had been filed.

3    And, as noted in the email chain exhibits to the Lubis

4    declaration, there ensued, in a very short period, an

5    exchange whereby counsel for the Plaintiff responded to that

6    inquiry by noting that, while there would be much to talk

7    about, it was likely that the matter would be put on hold

8    for a long time, given the nature of the defendant being a

9    foreign entity and the COVID pandemic, which was also

10   acknowledged in the initial email that came from counsel,

11   for the US affiliate.

12           In reviewing that email chain, it is clear, I

13   believe, that counsel never disavowed that it was counsel,

14   not only for the US affiliate, but also for the Defendant,

15   Cleva Hong Kong Limited; nor did it state that it was

16   counsel in Cleva Hong Kong Limited.  It is also clear that

17   by mid-October, counsel for the US affiliate had made it

18   clear to counsel for the Plaintiff, that it would not accept

19   service for the Defendant.  In so doing, it did not state

20   that it was, again, not -- it again, did not state that it

21   was not counsel or the Defendant, just that it was not

22   authorized to accept service.

23           After this exchange, apparently, nothing happened

24   in this lawsuit for approximately six months.  A second

25   summons was issued March 5, 2021; the first one, again,

Page 54

1    having been issued October 14, 2020.  And relatively soon

2    thereafter, in April, the summons was provided to a company

3    called APS International for service under the Hague

4    Convention.  Thereafter, it was, in fact, served on

5    September 16, 2021, under the Hague Convention.

6         And the same counsel that responded to the filing

7    of the complaint by initiating contact with Plaintiff's

8    counsel, is now representing Cleva Hong King Limited in this

9    adversary proceeding.

10        Cleva Hong King Limited has submitted declarations

11   by its President and CEO, Hong Chen, which states, in

12   paragraph 3, "Cleva Hong Kong Limited did not receive any

13   documentation or notice from plaintiffs of the above-

14   captioned suit, before September 6, 2021."  And a

15   declaration by one of the lawyers at Cleva Hong Kong's

16   counsel, which also was counsel for the US affiliated, Cleva

17   North America, which states, in paragraph 3:  "Fox was not

18   …" -- that's the law firm, -- "Fox was not attained by Cleva

19   Hong Kong to represent it in this adversary proceeding until

20   on or about September 29, 2021, approximately one week

21   before filing the motion to dismiss, on October 6, 2021."

22        Further, in talking with the Fox relationship

23   partner for Cleva Hong Kong, Kevin McCarrell, I understand

24   that Fox had no direct communications with Cleva Hong Kong,

25   regarding this adversary proceeding, or otherwise, until

Page 55

1    after Cleva Hong Kong received the complaint and second

2    summons on or about September 6, 2021.

3            Although the Plaintiff's counsel has argued that

4    Cleva Hong Kong Limited had notice of the adversary

5    proceeding, shortly after it was filed, at best, therefore,

6    there's a disputed issue as to whether it did, with evidence

7    to indicate to the contrary that it could not.

8            Based on my review of the case law, by which I'm

9    governed, notwithstanding what appears to me to be the plain

10   language of Rule 7004 and Rule 4(M), and (F) and (H), I must

11   weigh the exercise of reasonable due diligence, or a

12   colorable basis for there not being negligence in turning

13   over the summons to be served, approximately six months

14   after the summons was issued; that is, the first summon.

15   And the prejudice, if I find the sufficient basis, to go

16   further and look at prejudice resulting from the ultimate

17   service here, roughly 330 days after the issuance of the

18   original summons.

19           I will note that no court, I think, has given any

20   bright line date for a lapse of time being too long between

21   the issuance of a summons and service on a foreign

22   defendant.  But it appears to me, from the case law --

23   although I've obviously not read every case on this issue --

24   that cases that state that service has been too delayed,

25   have involved one of two factors:  either, first, that

1    service was never made, which was clearly the case in

2    certain of the Second Circuit cases, the cases from the

3    Second Circuit Court of Appeals that I've previously cited,

4    as well as Yellowave Court v. Mana, 2000 U.S. Dist. LEXIS

5    14813 at page 7, (S.D.N.Y. October 11, 2000) or,

6    alternatively, where service was made only well after a year

7    after the summons was obtained.  See In re Bozel, S.A., 2017

8    U.S. Dist. LEXIS 116135 at page 7, which applied the

9    flexible due diligence standard; which, frankly, appears to

10   me, largely on all fours with the discussion in Zapata, as

11   applied by the cases, where there were gaping periods of

12   inactivity and a delay of ten months before speaking with

13   defendant's counsel, and another five months before the

14   defendant was located and served at its foreign address, and

15   the time to serve after filing was 25 months.

16   In DEF v. ABC, 366 Fed. App'x at 253, the dismissal was

17   appropriate, where the Plaintiff waited two and a half years

18   to attempt service, without excuse.

19           In Travers Tool Company v. Southern Overseas

20   Express Line, Inc., 2000 U.S. Dist. LEXIS, 1582 at page 5,

21   (S.D.N.Y. February 17, 2000), under the flexible due

22   diligence standard, an extension was not granted, where the

23   plaintiff gave no explanation why there were no efforts,

24   over the last year, to serve.

25           Here, it's clear and, I believe, not disputed,

1   that a reasonable sign for service under the Hague

2   Convention, during this period, where COVID affects the

3   conduct of various businesses, is roughly six to eight

4   months.  And, therefore, the time between the issuance of

5   the second summons in March of 2021, and actual service in

6   September of 2021, would not appear to be anything out of

7   line.

8           There's no indication that during that period, in

9   fact, there was any lack of due diligence, but rather that

10  the -- it appears to me, clear that the APS International

11  Service agent acted diligently under the circumstances, to

12  effectuate service under the Hague Convention in Hong Kong.

13  The issue is whether the delay between the issuance of the

14  summons in October of 2020, mid-October of 2020, and

15  initiating the actual service, in April of 2021, a period of

16  about 180, 190 days, was not sufficiently diligent or was,

17  in the phraseology of the Zapata case law, not colorably --

18  or colorably, not negligent.

19          It appears to me, under the circumstances, that

20  that delay was justified in some measure by the following:

21  First, and most important, I believe the Plaintiff could

22  have reasonably assumed that counsel or the US affiliate

23  that had initiated contact when the complaint was filed,

24  was, in fact, aware of the complaint, of course.  But, more

25  importantly, would be representing the defendant,

1    ultimately. And it had been assured that the matter would

2    not be going forward for a long time, until service was

3    effectuated.

4            Secondly, although this is just barely colorable,

5    Plaintiff has stated that given the effects of COVID in the

6    fall of 2020, going through the winter into early 2021,

7    when, in many places around the world, COVID was at its

8    height, it chose not even to provide the summons and

9    complaint to the APS International Service Agent, in the

10   belief that service would be unduly delayed, in any event,

11   until the COVID situation became clearer.  And only decided

12   to do so when it saw that service had been effectuated in

13   March of 2021, in Hong Kong, in another adversary

14   proceeding, in the Sears case, the Jupiter adversary

15   proceeding; thus showing that service could, in fact, be

16   effectuated, notwithstanding COVID.

17           I say that's just colorable because, again, it

18   takes several months to effectuate service under the Hague

19   Convention, in Hong Kong.  And, therefore, the service in

20   the Jupiter lawsuit started months before, when it was

21   actually effectuated in March of 2021.

22           So, my main focus is on the reasonableness of the

23   Plaintiff's counsel's belief that the Defendant would be

24   aware of this lawsuit, from its inception, given that

25   counsel for the US affiliate initiated contact with

Page 59

1    Plaintiff's counsel; essentially, right after the lawsuit

2    was filed, and never disavowed that it wasn't representing

3    the Defendant, as well as the US affiliate, and was under, I

4    think, no misimpression that the Defendant was different

5    than the US affiliate, and a foreign entity.

6           I believe that that is sufficient to take the

7    Court to the analysis of prejudice to the parties, and any

8    related inequities that would be caused by, on the one hand,

9    granting the motion and dismissing the lawsuit, and on the

10   other, denying the motion.

11          I don't believe there are any particular

12   inequities, or inequitable conduct, by the Defendant, or its

13   counsel.  The Defendant did not evade service of process.

14   It did not lead on the Plaintiff as to whether it, through

15   its US counsel, accept process; to the contrary, it

16   promptly, counsel promptly informed Plaintiff's counsel that

17   it would not accept process.  And therefore, the delay here

18   is not specifically attributable to any, I think, strategic

19   conduct undertaken by Defendant.

20          On the other hand, as I've said, I believe

21   Plaintiff did reasonably infer that counsel was aware of and

22   did not disavow its representation of the Defendant when it

23   initiated the contact, after the complaint was filed.

24          The underlying lawsuit is, as noted by counsel for

25   the Defendant during oral argument, a typical action to

1    avoid preferential transfers.  As everyone who has any

2    remote contacts with the Bankruptcy Code as it applies to

3    preferential transfers, there is nothing wrong with

4    receiving a preferential transfer.  The preference avoidance

5    statute is a legislative construct designed to further the

6    policy of equality of distribution by, in effect, looking

7    back 90 days before the petition date to transfers that

8    preferred, simply by being made, some creditors over those

9    who did not receive transfers, and providing, therefore, for

10   their avoidance and the sharing of the transfer among all

11   the similarly situated creditors.

12          The amount at issue is significant.  In the

13   aggregate, it's over $14.5 million of allegedly preferential

14   transfers that are being sought to be avoided here.  But the

15   lawsuit does not cause any reputational harm to the

16   Defendant, and more importantly, the funds at issue are in

17   the Defendant's hands.  And there's no prejudgment

18   attachment or any such remedy available.  Further, if

19   there's any disparity between any interest earned on the

20   money, pending any judgment, and the right to prejudgment

21   interest, I believe the Court has the power to apply an

22   equitable exception to prejudgment interest, in light of the

23   delay between the issuance of the summons and the actions to

24   effectuate service here.

25          But, in any event, there's no benefit to the

Page 61

1   Plaintiff by delay.  The Plaintiff has every reason to

2   expedite the lawsuit, to bring in, if the lawsuit has merit,

3   value to the estate.

4            The Zapata case makes it clear, quoting the

5   official comment to the 1993 amendment to Rule 4.  That

6   prejudice, generally, deriving from the expiration of a

7   statute of limitations, before the lawsuit can be reserved,

8   is prejudiced to the Plaintiff, Zapata 502 F3d at 195

9   through 96.

10           It does go onto state that prejudice may also be

11  found to a defendant based on the defendant's reasonable

12  reliance on a statute of limitations.  But it does appear to

13  me that the prejudice here to the Plaintiff, far outweighs

14  the prejudice to the Defendant under the facts before me.

15  The amount of time we're talking about here, where there was

16  a delay, is, as I said, roughly six months; which is not, I

17  believe, a material time, affecting any reasonable reliance

18  issues.

19           Whereas, on the other hand, the Plaintiff and its

20  creditors, for whom this action is being brought, would

21  suffer serious prejudice based on the running of the statute

22  of limitations, if I granted the motion.

23           The Defendants have also, Defendant has also

24  asserted that my order that's currently in effect, setting

25  forth procedures for the initial stages of preference

Page 62

1    actions in this bankruptcy case, sets forth certain

2    deadlines that will have passed.  And if the order remains

3    in effect to this lawsuit, that could prejudice the

4    defendant.

5              However, paragraph 4 of the procedure's order,

6    acknowledges that there would be material delay in serving

7    foreign defendants, and that under those circumstances, it's

8    anticipated that the deadlines would freely be extended as

9    needed, based on the actual date of service.

10             Even if that were not in, that paragraph, were not

11   in the order, I would clearly impose such relief here, so

12   that the deadlines, which were intended only to maximize the

13   efficient administration of these lawsuits, and not to give

14   any party, either Plaintiff or Defendant, a leg up.  All the

15   other would do just that, and not prejudice the Defendant,

16   i.e., would just enable the lawsuit to be dealt with

17   procedurally on an efficient basis, building in the

18   opportunity for settlement discussions, mediation, and the

19   like, as well as a recognized process for dealing with

20   discovery disputes and the like.

21             So, I find that the factor of prejudice

22   significantly and strongly argues that the motion should be

23   denied, and that the Plaintiffs delay here.  And again, I'm

24   focusing on the six months, roughly, between the issuance of

25   the summons and the commencement of the foreign process

Page 63

```
 1    service is not so egregious or so unreasonable, as to

 2    require me to overlook that prejudice.

 3              As I noted, I've not been able to find a case

 4    where such a delay was found to warrant dismissal,

 5    especially given the circumstances here, the nature of the

 6    lawsuit and the balance of harms, as between the two

 7    parties.

 8              So, I will deny the motion and ask counsel for the

 9    Plaintiff to submit an order to that effect.  It should just

10    refer to my bench ruling; it doesn't need to recite any

11    aspect of it.  You don't need to formally settle that order

12    on counsel for the Defendant.  But you, obviously, need to

13    copy them when you email it to chambers and you might as

14    well run it by them for a day or so before you submit to

15    chambers.

16              So, are there any questions?

17              MR. HERZ:  Thank you, Your Honor.  I did want to

18    make one comment that I realize, as you were making the

19    ruling, the reference I made to Docket entry 9060, with the

20    language on paragraph 4 about giving foreign defendants more

21    time and extending deadlines, that is the procedures motion

22    that we filed; it was not the procedures order.

23              THE COURT:  But in any event, you've agreed to

24    that relief.

25              MR. HERZ:  That's correct.
```

1          THE COURT:  And I granted the motion on that

2    basis.  But I appreciate your clarifying that.  Okay.  Thank

3    you both.

4          MR. HERZ:  Thank you, Your Honor.

5          MR. BROWN:  Thank you, Your Honor.

6

7          (Whereupon these proceedings were concluded at

8    2:06 PM)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 65

1                 C E R T I F I C A T I O N

2

3      I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6

7

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  December 15, 2021