Hearing Date and Time: January 20, 2022 at 2:00 p.m. (Eastern Time)
Objection Deadline: January 13, 2022 at 4:00 p.m. (Eastern Time)

**DLA PIPER LLP (US)**
Richard A. Chesley
R. Craig Martin
Rachel Ehrlich Albanese
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

*Counsel to Transform Holdco LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | Case No. 18-23538 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF HEARING ON MOTION TO ENFORCE THE ORDER (I) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF LEASE WITH MOAC MALL HOLDINGS LLC AND (II) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that on January 4, 2022, Transform Holdco LLC

("Transform"), for itself and on behalf of its affiliate Transform Leaseco LLC, as buyer of

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

substantially all of the Debtors' assets, filed the *Motion to Enforce the Order (I) Authorizing Assumption and Assignment of Lease with MOAC Mall Holdings LLC and (II) Granting Related Relief* (the "<u>Motion</u>"), with the Bankruptcy Court for the Southern District of New York (the "<u>Court</u>").

**PLEASE TAKE FURTHER NOTICE** that any objection or other response to the Motion must be (i) filed with the Clerk of the Court on or before January 13, 2022, at 4:00 p.m. prevailing Eastern Time (the "<u>Objection Deadline</u>") and (ii) served no later than the Objection Deadline on the undersigned counsel.

**PLEASE TAKE FURTHER NOTICE** that the Motion will be heard at the omnibus hearing that has been scheduled for January 20, 2022 at 2:00 p.m. (prevailing Eastern Time) before The Honorable Robert D. Drain, United States Bankruptcy Court, 300 Quarropas Street, White Plains, NY 10601-4140.

Dated: New York, New York
       January 4, 2022

Respectfully submitted,

**DLA Piper LLP (US)**
1251 Avenue of the Americas**,** 27th Floor
New York, NY 10020-1104
Phone: (212) 335-4500
Fax: (212) 335-4501


By: _/s/ Richard A. Chesley_
     Richard A. Chesley
     R. Craig Martin
     Rachel Ehrlich Albanese

     *Counsel to Transform Holdco LLC*

EAST\187422489.2

**REDACTED**

**DLA PIPER LLP (US)**
Richard A. Chesley
R. Craig Martin
Rachel Ehrlich Albanese
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

*Counsel to Transform Holdco LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 18-23538 (RDD) |
| SEARS HOLDINGS CORPORATION, *et al.,* | (Jointly Administered) |
| Debtors.[1] | |

## MOTION TO ENFORCE THE ORDER (I) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF LEASE WITH MOAC MALL HOLDINGS LLC AND (II) GRANTING RELATED RELIEF

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................1

JURISDICTION AND VENUE ..........................................................................................4

BACKGROUND ...................................................................................................................4

    I.     The Lease ................................................................................................4

    II.    Proceedings ............................................................................................5

    III.   The Proposed Subtenant ........................................................................6

RELIEF REQUESTED...........................................................................................................9

BASIS FOR RELIEF .........................................................................................................10

ARGUMENT .......................................................................................................................10

    I.     This Court's Assignment Order Has Been Satisfied.............................10

    II.    MOAC Has No Objection or Veto Rights, And Its Attempt to Claim as Much Constitutes Improper Interference ...............................................11

    III.   The Sublease Is Valid Under the Master Lease Requirements.............13

    IV.   An Order Regarding the Sublease Will Bar Further Interference.........15

NOTICE ..............................................................................................................................16

CONCLUSION....................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bristol Labs. Div. of Bristol-Myers Co. v. Staats*,
620 F.2d 17 (2d Cir. 1980)...................................................................................15

*Chevron U.S.A. Inc. v. Echazabal*,
536 U.S. 73 (2002)..............................................................................................15

*In re Johns-Manville Corp.*,
551 B.R. 104 (S.D.N.Y. 2016)............................................................................16

*In re McLean Indus.*
68 B.R. 690 (Bankr. S.D.N.Y. 1986)..................................................................10

*In re Motors Liquidation Co.*,
522 B.R. 13 (Bankr. S.D.N.Y. 2014)..................................................................16

*In re Ritchie Risk-Linked Strategies Trading (Ireland), Ltd.*,
471 B.R. 331 (Bankr. S.D.N.Y. 2012)................................................................16

*Travelers Indem. Co. v. Bailey*,
557 U.S. 137 (2009)............................................................................................10

*World Props., Inc. v. Arlon, Inc.*,
663 F. Supp. 2d 98 (D. Conn. 2009)...................................................................15

**Statutes**

28 U.S.C. §§ 157 and 1334 ......................................................................................4

28 U.S.C. §§ 1408 and 1409 ....................................................................................4

Bankruptcy Code section 105(a)..........................................................................4, 10

**Other Authorities**



Transform Holdco LLC (the "<u>Buyer</u>" or "<u>Transform</u>"), for itself and on behalf of its affiliate Transform Leaseco LLC, as buyer of substantially all of the Debtors' assets under a Sale Order (ECF No. 2507),[2] files this motion (the "<u>Motion</u>") requesting entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>** (the "<u>Proposed Order</u>") to enforce the *Order (I) Authorizing the Assumption and Assignment of Lease with MOAC Mall Holdings LLC and (II) Granting Related Relief* (ECF No. 5074) (the "<u>Assignment Order</u>") against MOAC Mall Holdings LLC ("<u>MOAC</u>") and respectfully states as follows:

### PRELIMINARY STATEMENT

1.     Since even before the sale of substantially all of the Debtors' assets to Transform nearly three years ago, MOAC has made very clear its intentions: capture for itself the value of Sears' Mall of America lease (the "<u>Master Lease</u>," attached hereto as **<u>Exhibit B</u>**). Despite having been able to successfully assume and assign all its other leases, Transform found itself facing objection after objection for over two years from MOAC. Now, after MOAC has failed on appeal in the Second Circuit Court of Appeals to overturn this Court's 2019 Assignment Order assigning the valuable lease, MOAC is yet again fighting to stop Transform from subletting under the Master Lease. It has done so by purporting to "object" and "not consent" to the proposed sublease between Transform and ▮▮▮▮▮ (the "<u>Sublease</u>," attached hereto as **<u>Exhibit C</u>**) by contending that ▮▮▮▮▮ (the "Subtenant") is not a suitable tenant for the Mall of America. Lost within MOAC's latest effort is the simple fact that it has neither veto nor consent rights over any sublease.

---

[2] *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief*, Feb. 8, 2019.

1

Nonetheless, by simply raising yet another "objection," MOAC has interfered with Transform's ability to sublease the space.

2.      In August 2019, this Court entered the Assignment Order, which (i) authorized the purchase and assignment of a lease at the Mall of America from Sears to Transform, (ii) and provided that Transform must sublease some portion of that property within two years (which has been extended by the Second Circuit) and (iii) prohibited MOAC from improperly interfering with Transform's ability to do so.  The Assignment Order also provided that the landlord be given the right of first refusal with respect to that sublease.  During the pendency of appeal, in which Transform has now prevailed, Transform subleased the property within the set time period and made the offer available to the landlord (who has rejected it).  Thus, under the terms of this Court's Assignment Order, Transform is entitled to sublease the property as proposed.  However, MOAC is now claiming that the Subtenant is not an acceptable type of tenant under the terms of the Master Lease.  This specious contention is the very type of interference that is "improper" under the terms of the Assignment Order.  Transform therefore files this Motion to ask this Court to enforce the terms of the Assignment Order against MOAC and permit Transform and the proposed subtenant to proceed with the Sublease.

3.      MOAC's latest actions are calculated: the Sublease, which was provided to MOAC as required, contains a litigation contingency (appropriate under the circumstances), ██████ ████████████████████████████████████████████████████████████████ ████████████████████████████████  By "objecting" to the Sublease where it has no legal right, MOAC is directly interfering with Transform's Sublease with the Subtenant by asserting that the lease is invalid under the terms of the Master Lease.

4.    This Court recognized the possibility of gamesmanship from both parties when it approved assumption and assignment of the Master Lease in 2019.  To protect MOAC's interest in having the space filled, the Court ordered Transform to sublet a portion of the space within two years of the order—a deadline that was later tolled by the Second Circuit until 60 days after its December 17, 2021 opinion was issued.  *See* Assignment Order ¶ 17; *see also* Tolling Order, attached hereto as **Exhibit H.**  But to prevent MOAC from using this timeline to run out the clock, this Court also barred MOAC from "improperly interfering" with any proposed sublease.  *See* Assignment Order ¶ 17.  That order is being violated by MOAC, most recently by questioning the propriety of the Sublease.

5.    It goes without saying that MOAC has no legal or business reason to object to the Sublease with ███.  At the outset, this Court has already recognized the virtually unfettered rights of Transform to sublease its Master Lease.  *See* Hr'g Tr. 56:24–59:20, Aug. 23, 2019, attached hereto as **Exhibit G**.  Moreover, MOAC knows quite well the "fit" of █████ in the Mall of America.  Not only does █████ occupy space in a number of America's leading malls, ███ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████.

6.    MOAC's actions are made all the more egregious by its repeated claims—before this Court and on appeal—that a vacant space is detrimental to the Mall of America.  Indeed, those very concerns caused this Court to require a timely sublease.  Nevertheless, MOAC seeks to keep the space vacant by "objecting" to the Sublease through manufactured contractual veto rights it does not have.  Its reasoning is simple: MOAC will do whatever is necessary to capture the full value of the Master Lease for itself.

7.      With the Second Circuit now rejecting MOAC's position, this Court should not allow MOAC to continually throw up roadblocks and sidestep several court rulings by inventing consent rights it does not have and creating issues where there are none.  Transform respectfully requests this Court's assistance in enforcing its Assignment Order against MOAC and facilitating the Sublease with the Subtenant by confirming that all applicable contingencies have been satisfied.

## JURISDICTION AND VENUE

8.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York, dated December 1, 2016.

9.      Venue is proper under 28 U.S.C. §§ 1408 and 1409.

10.      The statutory predicate for the relief sought herein is section 105(a) of the Bankruptcy Code.

## BACKGROUND

### I.    The Lease

11.      This case centers around a sale of a lease from Sears to Transform in Mall of America: a 5.6 million square-foot mall in Bloomington, Minnesota that welcomes millions of visitors every year with attractions like its miniature golf course, wedding venue, varied retailers, and comedy club.

12.      In 1991, MOAC offered Sears a 100-year lease at just $10 in rent per year.  To induce Sears to enter into the then-experimental venture, the lease gave Sears—after operating as a department store for 15 years—broad authority to sublease or assign the lease for uses "compatible and consistent with" the Mall.  *See* Amended and Restated Reciprocal Easement and Operating Agreement ("REA") at 126, attached hereto as **Exhibit E**.  Given that the Mall contains

4

a broad array of attractions—from traditional retail stores to hotels, a water park, and a roller coaster—this amounts to virtually unlimited sublet rights for Sears. *See* Ex. G 130:12–15 (Court noting the "broad rights pertaining to use restrictions").

13.    The terms of Sears's Master Lease comprise three different documents totaling 339 pages.  Relevant to this motion, only one requirement must be met to sublet under the Master Lease: the subtenant must be a "retail" store "compatible and consistent with" the "operation of a first-class regional shopping center." *See* Ex. E at 126.  The Master Lease contains no consent right or other veto power by MOAC—its sublease allowances are nearly unfettered.[3]

## II.    Proceedings

14.    As the Court is well aware, as part of its bankruptcy proceedings, Sears sold most of its assets to Transform pursuant to an Asset Purchase Agreement that allowed the Sears estate to sell the Mall of America lease to Transform.

15.    This Court issued the Assignment Order authorizing the sale of this lease to Transform, over MOAC's multiple objections, on September 5, 2019. *See* Assignment Order. MOAC appealed the order to the District Court, which affirmed, and ultimately to the Second Circuit, which also affirmed on December 17, 2021. *See* Summary Order, attached hereto as **Exhibit F**.[4]

16.    Before both this Court and on appeal, MOAC expressed concern that the former Sears space would remain vacant, which it asserted would cause harm to the Mall of America. *See* Ex. G 105:19–106:4.  To assuage these concerns, this Court added two requirements. First, MOAC had to be given the right of first refusal to sublease the space at the same price, terms and

---

[3] There are certain restrictions on the use of space that are not implicated here. *See* Ex. E at 55–56.

[4] Although the District Court initially found in favor of MOAC, the District Court later reconsidered its opinion and determined that it lacked jurisdiction.  The Second Circuit did not reach the merits, instead affirming on jurisdictional grounds.

conditions, using the procedure outlined for sales in the Master Lease.  *See* Ex. B § 6.3(B)(1).

Second, the Court required that a sublease for a portion of the premises be signed within two years.

*See* Assignment Order ¶ 17. But the Court also barred MOAC from "improperly interfer[ing] with

the Buyer's attempt to sublet the premises."  *See* Assignment Order ¶ 18.

17.    While on appeal, as the two-year deadline drew near, the Second Circuit extended

the two-year deadline until 60 days after its ruling, which was later issued on December 17, 2021.

*See* Ex. H.  That 60-day deadline now runs until February 15, 2022.

18.    On January 3, 2022, the deadline to request a panel hearing or rehearing en banc

passed without a petition by MOAC, making the Second Circuit's ruling final in all respects.

## III.    The Proposed Subtenant

19.    Since the approval of its purchase of the lease, Transform searched for a subtenant

to take some or all of the space.  This initially proved difficult due to headwinds in the "brick and

mortar" retail environment, which was exacerbated in 2020 with the onset of the COVID-19

pandemic.  *See* Declaration of D. Scott Carr, attached hereto as **Exhibit D**, ¶ 3.

20.    After many months of discussions and negotiations, Transform located a potential

subtenant seriously interested in subleasing part of the space.  *Id.* ¶ 4.  On February 5, 2021,

Transform notified MOAC that it had been negotiating with ████ to assume a portion of the

premises under the Master Lease.  ████ is a well-known international retailer that sells clothing,

homeware, accessories and beauty products.  *See id.* ¶ 4.  ████████████████████████

████████████████████████████████████████████

████████████████████████████████  █  ████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

6



21.     ████ is a sought-after tenant. ████████████████████

████. Indeed, ████████████ should be a welcome addition to the Mall

of America.

22.     In early 2021, Transform requested that MOAC consent to ████ right of quiet

enjoyment under the sublease, and that the parties agree that whoever prevails in the appeal would

receive the value of the sublease.  Specifically, Transform proposed that it would (1) escrow all

rent from the Subtenant; (2) consent to any higher and better lease that is found within a reasonable

time; and (3) not argue that the entry into the sublease would moot MOAC's appeal.  *See* Ex. D ¶

5.  This proposal would have satisfied the September 5, 2021 deadline and would have preserved

the value of the leased space for the benefit of the prevailing party on the appeal.  But MOAC

refused to discuss the proposed subtenancy unless Transform provided information it did not have, including what would be done with the remaining two floors for which no subtenant has been found.  *Id*. ¶ 6.

23.    In the end, after many months of negotiations, Transform was able to reach a signed sublease agreement with the Subtenant.  The Sublease recognizes the pendency of the dispute with MOAC and, accordingly, includes a litigation contingency clause that delays the effectiveness of the sublease until a "Critical Determination" has been made that: "(i) the Master Lease Assignment is fully valid and enforceable," (ii) the Sublease "is a valid and enforceable sublease under [the] Master Lease," (iii) the Sublease "constitutes a sublet as contemplated under" the Second Circuit stay order, and "(iv) the ROFR Resolution Date . . . has occurred in connection with this Lease." *See* Ex. C §1.1(I).

24.    Thus, the Sublease contains four simple requirements:

a.    Transform prevailed before the Second Circuit;

b.    Transform can sublease to ███████;

c.    The deadline imposed by this Court and tolled by the Second Circuit has not expired without a signed sublease; and

d.    Transform has offered MOAC the right of first refusal.

*Id.*

25.    Given that the first three of these has occurred, Transform sought to complete the last step in the process: offering MOAC the right of first refusal in a letter dated November 4, 2021, attached hereto as **Exhibit I**.  Under section 6.3 of the Master Lease—which this Court ordered would apply to any sublease—Transform must give MOAC "notice of the offer," which MOAC "shall either reject or accept" within 45 days.  *See* Ex. B, § 6.3(B)(1).

26.     In the letter, Transform enclosed a copy of the executed Sublease, and "first offer[ed] to MOAC the right to sublease the space from Transform at the same price, terms, and conditions." *See* Ex. I.  In accordance with section 6.3 of the Master Lease, Transform requested that MOAC accept or reject the offer within 45 days.

27.     Forty-three days later—and shortly after the Second Circuit issued its opinion affirming this Court—MOAC rejected its right of first refusal in a letter dated December 17, 2021, attached hereto as **Exhibit J**.  In the same letter, however, MOAC also purported to "object" to the Sublease, and claimed it "does not consent to the sublease because" ██████████████

████████████████████████████████████████████████████████████████

██████████████████████████  MOAC made these sweeping declarations despite having no objection or consent rights in the Master Lease and with full knowledge that ████████████

████████████████████████████████████████████████████████████████

███████████

## RELIEF REQUESTED

28.     By this Motion, Transform respectfully requests that the Court enter the Proposed Order enforcing the Assignment Order against MOAC and prohibiting MOAC from continuing to improperly interfere with Transform's attempt to sublet the premises.

29.     Specifically, Transform asks the Court to hold that the four Sublease litigation contingency provisions have been met: (1) Transform prevailed in the assignment litigation; (2) Transform can sublease to ██████; (3) Transform has satisfied the sublease deadline imposed by this Court and extended by the Second Circuit; and (4) Transform has offered MOAC the right of first refusal, which MOAC rejected.  Such an order would cure MOAC's improper interference and allow the Sublease to proceed.

30.     Transform also asks the Court to order MOAC to cease all improper interference with the Sublease, in accordance with this Court's Assignment Order and enjoin MOAC from interfering with any future subleases with respect to the remainder of the leased premises.

## BASIS FOR RELIEF

31.     Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Indeed, a "Bankruptcy Court plainly [has] jurisdiction to interpret and enforce its own prior orders." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *In re McLean Indus*. 68 B.R. 690, 695 (Bankr. S.D.N.Y. 1986) ("All courts [ ] have inherent contempt power to enforce compliance with their lawful orders. The duty of any court to hear and resolve legal disputes carries with the power to enforce the order.").

## ARGUMENT

### I.     This Court's Assignment Order Has Been Satisfied

32.     In this Court's Assignment Order, it imposed two requirements for Transform to sublease the premises, each of which has been satisfied. First, MOAC had to be given the right of first refusal to purchase the space at the same price, terms and conditions, using the procedure outlined for sales in the Master Lease. *See* Ex. B § 6.3(B)(1). Second, the Court required that a portion of the premises be sublet within two years, so long as MOAC did not improperly interfere with Transform's ability to sublease the space. *See* Assignment Order ¶ 17. Both of these requirements have been met.

33.     First, the Court required that Transform follow the procedures outlined in the Master Lease regarding prospective purchases, which requires that MOAC be given the right of first refusal to purchase the space at the same price, terms and conditions. *See* Ex. B § 6.3(B)(1). The Master Lease requires that Transform "first offer to Landlord the right to purchase the

10

[property interest] at the price offered to Tenant pursuant to a bona fide offer in a good faith, arms-length transaction with a prospective purchaser-assignee unrelated to Tenant and on the same terms and conditions." *Id.* At the hearing on August 23, 2019, this Court required this provision to apply to subleases as well. *See* Ex. G 94:20-95:22. In keeping with this requirement, Transform offered MOAC the right of first refusal in a letter dated November 4, 2021. *See* Ex. I. MOAC rejected this offer with only two days remaining in the right of first refusal period, and shortly after the Second Circuit issued its opinion. Although MOAC attempted to reject the offer while also objecting to the Sublease, the plain language of the Master Lease does not allow for such an objection. *See* Ex. B § 6.3(B)(1). MOAC has two options: accept or reject. *Id.* There is no "reject and object" option. Thus, the required procedure has taken place, and this provision of the Master Lease has been satisfied.

34.     Second, the Court required that a sublease for a portion of the premises be signed within two years, which was extended by the Second Circuit until February 2022. *See* Assignment Order ¶ 17. This has been satisfied by ▆▆▆▆ and Transform's fully-executed Sublease.

## II.     MOAC Has No Objection or Veto Rights, And Its Attempt to Claim as Much Constitutes Improper Interference

35.     MOAC has been uncooperative since the Assignment Order was entered. Most recently, MOAC improperly interfered with Transform's attempts to sublet the space when it asserted non-existent veto rights in a letter dated December 17, 2021. *See* Ex. J. In the letter, MOAC purported to "object" to the Sublease, and claimed it "does not consent to the sublease because" ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *See* Ex. J. This strains credulity. Not only is ▆▆▆▆ an optimal subtenant, but MOAC has no right to object to the sublease—nor did MOAC point to any provision saying as much.

36.     MOAC's manufacturing of this "objection" is its latest—and most desperate—attempt to deny Transform the benefit of its bargain and seek to capture all the economic upside of the Master Lease for itself.   As MOAC well knows, the Sublease includes a litigation contingency clause that delays the effectiveness of the Sublease until a "Critical Determination" has been made that: "(i) the Master Lease Assignment is fully valid and enforceable," (ii) the Sublease "is a valid and enforceable sublease under Master Lease,"  (iii) the Sublease "constitutes a sublet as contemplated under" the Second Circuit stay order, and "(iv) the ROFR Resolution Date (as defined in [the Sublease]) has occurred."  *See* Ex. C §1.1(I). MOAC's objection gambit is an attempt to stymie this provision of the Sublease.

37.     As MOAC also knows, the Sublease is valid under the terms and conditions of the Master Lease and its efforts to create new terms and conditions must fail.  Indeed, distilled to its essence, MOAC's objection is nothing more than improper interference with Transform's ability to sublet the premises, as prohibited by the Assignment Order.  Given that this Court barred MOAC from improperly interfering with Transform's efforts to sublease the premises, this Court should enforce that order and conclude that the four Sublease requirements have been met, which would allow the Sublease to proceed and cure MOAC's interference.[5]

## III.   The Sublease Is Valid Under the Master Lease Requirements

38.     To the extent that MOAC's claims amount to an argument that the Sublease is invalid under the terms of the Master Lease, that argument also fails.  The Master Lease provides virtually unlimited sublet rights.  Under the terms of the Master Lease, the subtenant need only be

---

[5] MOAC's actions also seek to call into question whether the "ROFR Resolution Date" in the fourth condition has been met.  By attaching caveats to its rejection of its right of first refusal, MOAC has created ambiguity that causes confusion with the Sublease.  This is not only interference with the Sublease—but it is improper.  Such a conclusion is evident by the text of Section 6.3 of the Master Lease, which only allows MOAC, when presented with a sublease, to either exercise its right of first refusal or decline to do so.  *See* Ex. B Ex. B § 6.3(B)(1).  There is no basis for MOAC to object or withhold consent, while still declining to exercise its right of first refusal.

a "retail" store that is "compatible and consistent with" the "operation of a first-class regional shopping center." *See* Ex. E at 126.

39.     This provision sought to require a sublessee that is compatible with the rest of the Mall of America.[6] As discussed above, ▮▮▮ certainly fits that mold. ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮ ▮▮▮▮▮▮▮▮

40.     The Court need look no further than the other stores in Mall of America to see that ▮▮▮ is "compatible and consistent with" the Mall. ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

41.     Not only does ▮▮▮ fit with the overall tenant mix in the mall, ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ For these reasons, ▮▮▮ undoubtedly meets the requirement that it is a retailor "compatible and consistent" with the "operation of a first-class regional shopping center."

---

[6] As this Court recognized, virtually any store fits that requirement. Ex. G at 130:12–15.

13

42.    MOAC apparently takes issue with ███ fitting this mold, claiming that ███

███████████████████████████████████████████████ *See* Ex. J.  It does

not explain that reasoning, perhaps because any explanation would necessarily be specious.  *Id.*

43.    First, MOAC already has a number of tenants similar to ███████████

███████████████████████████████████████████████████████

██████████████████████

44.    Second, ███████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████

45.    Finally, as MOAC's counsel explained at oral argument, the REA has an extensive

list of "what types of uses would be inimical" to the Mall.  *See* Ex. G 57:23.  This list includes

those that would clearly be inimical to mall use—such as mobile homes or trailer courts, labor

camps and junk yards—as well as those that are closer to the line, such as bowling alleys, kiosks,

pet shops, and restaurants that contain breweries over a certain size.  *See* Ex. E at 55–56.  Given

such extensively-enumerated requirements, the contract should be read in light of the interpretive

canon *expressio unius est exclusio alterius*, where the "expressing one item of an associated group

or series excludes another left unmentioned."  *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 80

(2002).[7]  There is nothing on the expressly enumerated list of improper types of stores that would remotely suggest that ███████ is an inappropriate sub-tenant.

46.     As such, MOAC's objection to the Sublease is no more than a brazen attempt to prevent Transform from subleasing the space, because ███████ is consistent with the operation of a first-class regional shopping center.  Thus, MOAC's actions constitute improper interference with the Sublease.

## IV.    An Order Regarding the Sublease Will Bar Further Interference.

47.     Given MOAC's continued interference, this Court can end the matter once and for all by holding that the Sublease's requirements for the litigation contingency have been met. Namely, that: (i) Transform has prevailed in the assignment litigation; (ii) the Sublease "is a valid and enforceable sublease under [the] Master Lease," (iii) the Sublease "constitutes a sublet as contemplated under" the Assignment Order, as extended by Second Circuit stay order, and "(iv) the ROFR Resolution Date . . . has occurred in connection with this Lease."  *See* Ex. C §1.1(I).

48.     By issuing such an order, the Court can not only cure MOAC's improper interference thus far, but it can also guard against any future interference by MOAC.  Such a ruling is essential to bring this years-long litigation to an end and give the parties the finality they need to conduct their affairs.[8]

---

[7] Courts routinely apply the same canons of construction to analyze contracts, statutes and the Constitution. *See, e.g.*, *Bristol Labs. Div. of Bristol-Myers Co. v. Staats*, 620 F.2d 17, 18 (2d Cir. 1980) (concluding interpretation was "untenable as a matter of both statutory interpretation and contractual construction"); *World Props., Inc. v. Arlon, Inc.*, 663 F. Supp. 2d 98, 107 (D. Conn. 2009) (arguments underlying statutory linguistic analysis apply with equal force to contractual linguistic analysis).

[8] This Court has the power to enter such an order and, by doing so, it will enforce the non-interference provision of its own Assignment Order.  Transform need not file an adversary proceeding to achieve this end. *See In re Ritchie Risk-Linked Strategies Trading (Ireland), Ltd.*, 471 B.R. 331, 337 (Bankr. S.D.N.Y. 2012) ("As a threshold matter, contrary to Bancorp's argument, the Motion need not have been brought as an adversary proceeding since U.S. Bank seeks only the enforcement of an injunction already in effect under this Court's existing Sale Order, not the issuance of a new injunction.  Indeed, an adversary proceeding is not necessary where the relief sought is the enforcement of an order previously obtained." (internal quotation marks omitted)); *see also In re Motors Liquidation Co.*, 522 B.R. 13, 22 (Bankr. S.D.N.Y. 2014) (separate adversary proceeding is not required to enforce injunction in

49.    Accordingly, for the reasons stated herein, Transform submits that pursuant to the terms of the Master Lease, Sublease and Assignment Order, all requirements to sublet the premises have been fulfilled and MOAC should be prohibited from further interfering with Transform's ability to sublet the premises.

## NOTICE

50.    Notice will be provided in accordance with the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 (ECF No. 405). Transform submits that no other or further notice is required.

## CONCLUSION

**WHEREFORE**, Transform respectfully requests that this Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as may be just and proper under the circumstances.

Dated: New York, New York
      January 4, 2022

Respectfully submitted,

**DLA Piper LLP (US)**
1251 Avenue of the Americas**,** 27th Floor
New York, NY 10020-1104
Phone: (212) 335-4500
Fax: (212) 335-4501

By*: /s/ Richard A. Chesley*
    Richard A. Chesley
    R. Craig Martin
    Rachel Ehrlich Albanese

    *Counsel to Transform Holdco LLC*

---

sale order); *In re Johns-Manville Corp*., 551 B.R. 104, 115 (S.D.N.Y. 2016) ("While a proceeding to obtain an injunction must be brought as an adversary proceeding, 'the enforcement of a preexisting injunction' may be accomplished as a contested matter rather than through an adversary proceeding.").