## Exhibit D

**Declaration of D. Scott Carr**

# No. 20-1846(L); 20-1953(XAP)

IN THE

# United States Court of Appeals for the Second Circuit

IN RE: SEARS HOLDINGS CORPORATION, *Debtor*

MOAC MALL HOLDINGS LLC,

*Appellant-Cross-Appellee*,

v.

TRANSFORM HOLDCO LLC,

*Appellee-Cross-Appellant*.

On Appeal from the United States District Court
for the Southern District of New York

**DECLARATION OF D. SCOTT CARR IN SUPPORT OF EMERGENCY MOTION TO TOLL THE DEADLINE TO SUBLET PENDING RESOLUTION OF THE APPEAL**

I, D. Scott Carr, declare under penalty of perjury:

1. I am currently employed by Appellee-Cross-Appellant Transform Holdco LLC ("Transform") as President – Real Estate. I have held this position since March 2020. Except where noted, I have personal knowledge of the matters set forth below. I respectfully submit this declaration (this "Declaration") in support of Transform's motion to expedite the hearing on this appeal and its decision.

2. I have 32 years' experience in the commercial real estate markets, particularly relating to the leasing and marketing of retail spaces and spaces in shopping centers. I have prior experience including direct leasing and oversight of the entire leasing function for a portfolio of 165 retail shopping centers totaling more than 16,000,000 square feet.

3. Since the bankruptcy court entered its September 5, 2019 order authorizing the sale of Sears' lease at the Mall of America in Bloomington, Minnesota, Transform has engaged in substantial marketing efforts to locate a subtenant to occupy portions of the premises pursuant to the two-year deadline included within the bankruptcy court's order. I was personally

involved in some of these efforts, and supervised the efforts of others working on Transform's behalf. Finding retailers willing to lease a large space in a shopping mall was already a challenging process in late 2019 due to market conditions affecting brick and mortar retailers. Those challenges were exacerbated by the COVID-19 pandemic and its implications for indoor in-person shopping.

4. Earlier this year, Transform made significant progress in locating a potential subtenant seriously interested in subleasing one of three floors in the space. That potential tenant is a well-known international department store and fast fashion retailer. The potential subtenant indicated that it would not sign a lease or even a binding letter of intent absent assurances that it will be able to remain in the space regardless of the outcome of this litigation.

5. As the likelihood of closing a sublease with a subtenant came near, Transform reached out to MOAC in an attempt to reach an agreement that would preserve the subtenancy while preserving all of MOAC'S rights on this appeal. In order to provide certainty to the subtenant, while ensuring

3

that MOAC's appeal is not prejudiced, Transform proposed that if MOAC would allow the subtenant to remain in the property by taking over the sublease in the event it prevails on this appeal, Transform would agree to the following terms: (1) All rent from the subtenant would be placed in escrow pending the resolution of this litigation; (2) Transform would consent to any higher and better lease found by MOAC within a reasonable time; and (3) Transform would not argue that the entry into the sublease would moot MOAC's appeal.

6.  Unfortunately, MOAC was unwilling even to discuss the proposed subtenant without receiving information that Transform is incapable of providing, such as what is to be done with the other two floors for which, to date, no subtenant has been located.

7.  Based on my experience in the market for leasing commercial real estate in shopping centers, as well as my experience attempting to market this particular space, I believe there is a substantial risk that, absent binding assurances that its sublease will be respected by MOAC, or prompt resolution of this litigation, the potential subtenant will decline to enter into

4

a lease for this location. This potential subtenant remains interested in leasing the space, however, and I believe that if Transform prevails on the appeal, it will be able to enter into a sublease within 60 days after the Court's ruling provided MOAC does not improperly interfere with Transform's attempt to sublet to that potential tenant. I also believe, based both on my experience in the market generally and through attempting to market these premises specifically, that if Transform is unable to agree to a sublease with this subtenant, there is a substantial risk that Transform will have great difficulty in finding another subtenant.

*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, to the best of my knowledge, information and belief, and after reasonable inquiry, I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 12, 2021
      Hoffman Estates, IL

                                                  D. Scott Carr