David W. Dykhouse (dwdykhouse@pbwt.com)
Daniel A. Lowenthal (dalowenthal@pbwt.com)
PATTERSON BELKNAP WEBB & TYLER, LLP
1133 Avenue of the Americas
New York, New York 10036-6710
Tel:  (212) 336-2000
Fax:  (212) 336-2222

Thomas J. Flynn (tflynn@larkinhoffman.com)
Gregory S. Otsuka (*pro hac vice* pending) (gotsuka@larkinhoffman.com)
LARKIN HOFFMAN DALY & LINDGREN, LTD.
8300 Norman Center Drive, Suite 1000
Minneapolis, Minnesota 55437-1060
Tel:  (952) 835-3800
Fax:  (952) 896-3333

*Attorneys for MOAC Mall Holdings LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | Chapter 11 |
| In re: | ) | Case No. 18-23538 (RDD) |
| | ) | |
| SEARS HOLDINGS CORPORATION, *et al.*, | ) | (Jointly Administered) |
| | ) | |
| Debtors.[1] | ) | |

**MOAC MALL HOLDINGS LLC'S OBJECTION TO MOTION OF TRANSFORM
HOLDCO LLC TO ENFORCE THE ORDER (I) AUTHORIZING ASSUMPTION AND
ASSIGNMENT OF LEASE WITH MOAC MALL HOLDINGS LLC AND
(II) GRANTING RELATED RELIEF**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are as follows:  Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ........................................................................................................................2

I.  PROCEEDINGS IN THIS COURT ...................................................................................2

II.  PROCEEDINGS ON APPEAL ........................................................................................3

ARGUMENT .............................................................................................................................5

I.  MOAC'S STILL-PENDING APPEAL OF THE ASSIGNMENT ORDER
    DIVESTS THIS COURT OF JURISDICTION. ..................................................................5

II.  THE COURT ALSO LACKS JURISDICTION BECAUSE THE MOTION
     DOES NOT PRESENT AN ACTUAL CASE OR CONTROVERSY. ..............................7

III.  EVEN IF THE COURT HAD JURISDICTION, THE MOTION WOULD FAIL
      ON ITS MERITS. ...........................................................................................................8

        A.  The Requirements for the "Litigation Contingency" Have Not Been Met. .............9

        B.  The Relief Sought By the Motion Would Contravene the District Court's
            Stay Order ..............................................................................................................11

        C.  MOAC Has Not Improperly Interfered with Transform's Attempt to
            Sublet the Premises. ...............................................................................................12

CONCLUSION ........................................................................................................................13

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aetna Life Ins. of Hartford v. Haworth,* 300 U.S. 227 (1937) ............................................... 7, 8, 13

*Alvarez v. Smith*, 558 U.S. 87 (2009) ............................................................................................. 7

*Dicola v. Am. Steamship Owners Mut. Protection & Indem. Ass'n, Inc.
   (In re Prudential Lines, Inc.)*, 170 B.R. 222 (S.D.N.Y. 1994) ............................................... 5, 6

*Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982) ........................................... 5, 6

*In re Wright*, 220 B.R. 543 (Bankr. S.D.N.Y. 1998) ...................................................................... 8

*Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67 (1983) ......................................................... 7, 8

*MOAC Mall Holdings LLC v. Transform Holdco LLC (In re Sears Holdings Corp.)*,
   613 B.R. 51 (S.D.N.Y. 2020) ...................................................................................................... 3

*Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26 (1976) ...................................................... 7

*Taylor v. United States*, 822 F.3d 84 (2d Cir. 2016) ................................................................. 5, 6

*United States v. Fruehauf*, 365 U.S. 146 (1961) ........................................................................... 8

*United States v. Rodgers*, 101 F.3d 247 (2d Cir. 1996) ................................................................ 6

**Other Authorities**

§ 365 (b)(3)(A) of the Bankruptcy Code ......................................................................................... 3

11 U.S.C. § 363 ....................................................................................................................... 1, 3, 4

U.S. Const. Art. III, § 2 .................................................................................................................... 7

**Rules**

Fed. R. App. P. 41 ............................................................................................................................ 5

MOAC Mall Holdings LLC ("MOAC"), by and through its undersigned counsel, hereby submits this objection (the "Objection") to the Motion to Enforce the Order (I) Authorizing Assumption and Assignment of Lease with MOAC Mall Holdings LLC and (II) Granting Related Relief (the "Motion") (ECF No. 10194) filed by Transform Holdco LLC ("Transform"),[1] and in support states as follows:

## PRELIMINARY STATEMENT

1.      MOAC is the owner of Mall of America. Over MOAC's objections, the Court entered an order ("Assignment Order," ECF No. 5074) that authorized the Debtors' assignment of their Mall of America lease to Transform. MOAC moved to stay the Assignment Order pending appeal based on the possibility that a court might find that 11 U.S.C. § 363(m) applied to the Assignment Order. The Court denied the motion to stay based on its belief, which was confirmed by Transform's consistent statements, that § 363(m) did not apply to the Assignment Order and would not moot an appeal.

2.      MOAC appealed the Assignment Order to the District Court, and the District Court vacated the Assignment Order because the assignment violated § 365(b)(3)(A). Transform subsequently raised for the first time the argument that § 363(m) deprived the District Court jurisdiction to hear the appeal, a position that directly contradicted Transform's statements to this Court. The District Court, "with great regret" vacated its prior order based on its holding that § 363(m) deprived it of jurisdiction.

3.      MOAC appealed the District Court's order, and the Second Circuit affirmed in a summary order dated December 17, 2021. MOAC timely filed a motion to stay the issuance of

---

[1] Transform Holdco LLC is the movant and buyer of Debtors' assets. Its affiliate Transform Leaseco LLC is the proposed landlord under the Sublease. For purposes of this opposition, MOAC follows the convention used in the Motion of referring to both entities as "Transform."

the mandate pending a petition to the Supreme Court for a writ of certiorari. The parties currently are briefing that stay motion, and the Second Circuit has neither ruled on the motion nor issued the mandate.

4.    By its Motion, Transform asks the Court to issue an order that directly impacts the very issues that are subject to MOAC's still-pending appeal, such that granting the Motion would upend the appeal. The Motion should be denied for several reasons. First, under well-established binding precedent, MOAC's filing of its notice of appeal of the Assignment Order divested the Court of jurisdiction over the aspects of the bankruptcy case that are involved in MOAC's appeal, which plainly includes the issues raised in the Motion. Second, the Motion does not present an actual "case" or "controversy," as required by Article III of the Constitution, but instead improperly seeks an advisory opinion, and for that additional reason the Court lacks jurisdiction. Third, even if the Court did have jurisdiction to decide the Motion, the Motion would fail on its merits. Contrary to Transform's conclusory statements, the "litigation contingency" in the Sublease clearly has not been met. Such a determination that the litigation contingency had been met, moreover, would contravene an order by the District Court that stays certain actions, including the relief sought by Transform, until the Second Circuit issues a mandate. Finally, even if the Court had jurisdiction, it also should deny Transform's request to "estop" MOAC from "further interference with Transform's ability to consummate the Sublease or any future subleases" because MOAC has not improperly interfered with the Sublease in any way, and there is no present dispute that is ripe for redress.

## **BACKGROUND**

## I.    **PROCEEDINGS IN THIS COURT**

5.    MOAC objected to the Debtors' assignment of their lease (the "MOAC Lease") of 120,000 square feet at Mall of America (the "Leased Premises"). (*See generally* ECF No. 4889.)

After an evidentiary hearing, the Court overruled MOAC's objections and issued the Assignment Order, which approved the assignment.

6.      Out of an abundance of caution, MOAC filed a motion to stay the Assignment Order pending appeal (ECF No. 5110), along with its notice of appeal. Transform objected to MOAC's request for a stay, arguing that it was not needed and that the lack of a stay would not affect an appeal. (ECF No. 5152 at 11–14.)

7.      At the hearing on MOAC's stay motion, Transform again reiterated that failure to obtain the stay would *not* render the appeal moot and that § 363(m) was in no way implicated. (ECF No. 5413, Hr'g Tr. 8:1-18.) When asked directly by the Court, Transform agreed that it would not change its position or argue on appeal that § 363(m) applies. (*Id.*) (THE COURT: "[Y]ou're not going to go to the district [court] and say 363(m) applies here…" TRANSFORM COUNSEL: "…I think we couldn't rely on 363(m) for the purposes of arguing mootness…") Ultimately, the Court denied MOAC's request for a stay. (*Id.* at 15:8-12.)

## II.     <u>PROCEEDINGS ON APPEAL</u>

8.      MOAC timely appealed the Assignment Order to the District Court. On appeal, the District Court vacated and remanded the Assignment Order, holding that the assignment violated § 365(b)(3)(A). *MOAC Mall Holdings LLC v. Transform Holdco LLC (In re Sears Holdings Corp.)*, 613 B.R. 51 (S.D.N.Y. 2020) ("Decision on Appeal").

9.      Shortly after it entered the Decision on Appeal, at Transform's request and with MOAC's consent, the District Court entered an order (the "Stay Order") that approved the parties' stipulation, which included agreements from both sides to refrain from taking certain actions while the case is being appealed. (Stay Order, attached hereto as **Exhibit 1**). The Stay Order included the following restrictions:

> Transform shall not sublease or enter into any similar agreement or contract related to any of the property at the Mall subject to the Lease, or otherwise voluntarily take or induce any out-of-court action that could in any way impair MOAC's ability to vindicate its position in these proceedings, including on further appeal, without written consent of MOAC and its counsel of record. Transform will not take any out-of-court action that might cause MOAC's position on appeal to be mooted.

Ex. 1, ¶ 3. The Stay Order remains in place until the Second Circuit issues its mandate. *Id*. at ¶ 5.

10.    The day after the Stay Order was entered, Transform filed a motion for rehearing, arguing for the first time that the District Court lacked jurisdiction over the appeal, asserting that it was moot under § 363(m) because the Assignment Order was not stayed pending appeal, a position directly contrary to Transform's statements to this Court.

11.    Following additional briefing, the District Court issued its Order Granting Transform Holdco LLC's Motion for Rehearing, and on Rehearing Vacating the Court's Original Decision on Appeal (the "Vacating Order," attached hereto as **Exhibit 2**). In the Vacating Order, the District Court "with great regret" ruled in favor of Transform and held, "The decision on appeal is vacated, and MOAC's appeal is dismissed as statutorily moot." (Ex. 2 at 3.) The District Court's ruling was based on its finding that § 363(m) applied to the Assignment Order and that under Second Circuit precedent § 363(m) was a jurisdictional provision and, thus, could not be waived. (*Id*. at 13-16.)

12.    MOAC appealed to the Second Circuit, arguing that the District Court erred because § 363(m) does not apply to the Assignment Order, and, even if it did, § 363(m) is not jurisdictional and, therefore, Transform waived its rights under § 363(m), or was judicially estopped from asserting them. The Second Circuit entered its Summary Order in which it affirmed the Vacating Order on December 17, 2021.

13.    On January 6, 2022, before the Second Circuit issued the mandate, MOAC filed a

Motion to Stay the Issuance of the Mandate in accordance with Fed. R. App. P. 41. ("Motion to

Stay Mandate," attached hereto, without voluminous exhibits, as **Exhibit 3**.) In its Motion to

Stay Mandate, MOAC requests that the Second Circuit stay the mandate pending MOAC's

petition for a writ of certiorari to the Supreme Court. Among other things, MOAC argued that

there was "good cause" for a stay because Transform, through the present Motion, has sought to

deprive MOAC of its appellate rights by asking this Court for an order that would, in

Transform's view, "end the matter once and for all." (Ex. 3 at 16-17.) The parties have not

completed their briefing on MOAC's motion. The Second Circuit has neither ruled on the motion

nor issued the mandate.

## ARGUMENT

## I.    MOAC'S STILL-PENDING APPEAL OF THE ASSIGNMENT ORDER DIVESTS THIS COURT OF JURISDICTION.

14.    This Court does not have jurisdiction to hear Transform's motion. "The filing of a

notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of

appeals and divests the district court of its control over those aspects of the case involved in the

appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). The court of

appeals "retain[s] jurisdiction—and an appeal does not conclude—until the mandate issues."

*Taylor v. United States*, 822 F.3d 84, 89 (2d Cir. 2016).

15.    A bankruptcy court, like a district court, is divested of jurisdiction over the

aspects of the bankruptcy case that are involved in the appeal. *See Dicola v. Am. Steamship*

*Owners Mut. Protection & Indem. Ass'n, Inc. (In re Prudential Lines, Inc.)*, 170 B.R. 222, 243

(S.D.N.Y. 1994). Indeed, "a lower court may take no action which interferes with the appeal

process or with the jurisdiction of the appellate court." *Id*. The reason for this "divestiture of

jurisdiction" rule is "rooted in the interest of judicial economy, designed to avoid confusion or waste of time resulting from having the same issues before two courts at the same time." *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996) (internal quotation and citations omitted).

16.     Here, Transform's motion asks the Court to rule on aspects of the bankruptcy case that are involved in MOAC's appeal, namely the Assignment Order. (*See* Motion at ¶ 15.) Not only that, Transform asks the Court to greatly expand on its Assignment Order by entering an order that, according to Transform, would "permit Transform and the proposed subtenant to proceed with the Sublease." (Motion at ¶ 2.) The problem for Transform, however, is that MOAC appealed the Assignment Order to the District Court and to the Second Circuit. Thus, MOAC's appeal divests this Court "of its control over those aspects of the case involved in the appeal." *Griggs*, 459 U.S. at 58. Moreover, while the Second Circuit issued an order on MOAC's appeal, the Second Circuit has not issued the mandate, and, accordingly, the Second Circuit retains jurisdiction. *See Taylor*, 822 F.3d at 89.

17.     Deciding Transform's Motion would impermissibly "interfere[] with the appeal process or with the jurisdiction of the appellate court." *Dicola*, 170 B.R. at 243. In Transform's estimation, this Court's granting of the Motion would "end the matter once and for all" and "bring this years-long litigation to an end and give the parties the finality they need to conduct their affairs." (Motion at ¶¶ 47-48.) Clearly, if the Motion could end the matter once and for all, by definition it would interfere with the appeal process and with the Second Circuit's jurisdiction.

18.     Transform cannot plausibly argue that it merely asks the Court to enforce the Assignment Order. The relief sought in the Motion goes well beyond the terms of the Assignment Order. Indeed, Transform asks the Court to interpret the terms of the proposed Sublease and to "estop" MOAC from future "interference" with Transform's consummation of

the Sublease. It should be evident that asking the Court to interpret and opine on the Sublease, an agreement that did not even exist when the Assignment Order was entered and has not previously been presented to the Court, goes well beyond merely enforcing the terms of the Assignment Order.

19.    Because the Court is divested of jurisdiction over matters involved in MOAC's appeal, including the Assignment Order, the Court does not have jurisdiction to decide the Motion.

## II.    THE COURT ALSO LACKS JURISDICTION BECAUSE THE MOTION DOES NOT PRESENT AN ACTUAL CASE OR CONTROVERSY.

20.    The Court does not have jurisdiction for an additional reason: the Motion does not present an actual "case" or "controversy," as required by Article III of the Constitution.

21.    A court's subject matter jurisdiction under Article III of the Constitution is limited to deciding "cases" and "controversies." U.S. Const. Art. III, § 2; see also *Alvarez v. Smith*, 558 U.S. 87, 92 (2009). An actual controversy "must be a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. of Hartford v. Haworth,* 300 U.S. 227, 241 (1937).

22.    Moreover, "[t]o satisfy the Article III case or controversy requirement, a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983). Any judicial determinations absent such a showing, would be "gratuitous and thus inconsistent with the Article III limitation." *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 38 (1976). Stated differently, "federal courts may adjudicate only live controversies and must generally refrain from issuing advisory

Pg 11 of 81

opinions." *In re Wright*, 220 B.R. 543, 544 (Bankr. S.D.N.Y. 1998) (citing *United States v. Fruehauf*, 365 U.S. 146 (1961)).

23.     Here, the Motion does not satisfy the case or controversy requirement. Transform asks the Court to estop MOAC from interfering with Transform's ability to consummate the Sublease or any future sublease. By doing so Transform improperly asks the Court to issue "an opinion advising what the law would be upon a hypothetical state of facts" *Aetna Life Ins.,* 300 U.S. at 241. As explained more fully below (*see* ¶¶ 40-43), there is no present dispute that is ripe of adjudication regarding the Sublease, including whether it complies with other applicable leasing agreements.

24.     Moreover, there is no need for the Court to "enforce" the provision of the Assignment Order that forbids MOAC from improperly interfering with Transform's attempt to sublet the Leased Premises. Indeed, Transform stated that by executing the Sublease it *already satisfied* the condition that the Assignment Order prohibited MOAC from improperly interfering with. (Motion at ¶ 34.) Thus, by Transform's own admission, it suffered no "actual injury that can be redressed by a favorable decision." *Iron Arrow Honor Soc'y*, 464 U.S. at 70.

25.     Similarly, in asking the Court to declare that the requirements for the "litigation contingency" in the Sublease have been met, Transform makes clear that it has not "suffered some actual injury that can be redressed by a favorable judicial decision." *Id.* Instead, Transform improperly asks the Court to state its interpretation of the contingency provisions of the Sublease, a contract that has not been the subject of any dispute before the Court.

## III.     **EVEN IF THE COURT HAD JURISDICTION, THE MOTION WOULD FAIL ON ITS MERITS.**

26.     Even if MOAC's appeal of the Assignment Order did not divest this Court of jurisdiction, and even if Transform presented an actual case or controversy for the Court to

decide, Transform's Motion still should be denied. The requirements for the "litigation contingency" clearly have not been met. Moreover, MOAC has not improperly interfered in any way with Transform's attempt to sublet the premises.

### A.    The Requirements for the "Litigation Contingency" Have Not Been Met.

27.    Transform asks the Court to hold that the requirements for the "litigation contingency" of the Sublease have been met. (Motion at ¶ 47.) But a review of the relevant terms of the Sublease (most of which Transform fails to bring to the Court's attention) establish that the "litigation contingency" has not been met. Thus, the Sublease by its own terms cannot take effect.[2]

28.    To begin with, the Sublease states that



---

[2] Transform filed a motion to seal portions of its Motion and accompanying exhibits. (ECF No. 10193.) While the Court has not yet ruled on the motion to seal, MOAC has redacted portions of this Objection that reference materials that Transform has sought to seal.

[3]



32.    Clearly, this contingency—the Litigation Resolution—has not been met. The Second Circuit has not issued its mandate. In fact, MOAC has filed a motion to stay the Second Circuit's issuance of the mandate pending MOAC's petition for a writ of certiorari with the Supreme Court.

██████████████████████████████ Simply put, the Litigation Resolution has not occurred.

Transform's assertion that "the Second Circuit's ruling [is] final in all respects" is plainly wrong.

33.    ████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████

34.    Accordingly, even if the Court had jurisdiction and even if Transform presented

an actual case or controversy, Transform's request that the Court issue an order that the Critical

Determination has been satisfied would fail because that contingency has not been met.

**B.    The Relief Sought By the Motion Would Contravene the District Court's Stay Order.**

35.    Transform's request that the Court hold that the requirements for the Critical

Determination have been met also would fail because doing so would contravene the District

Court's Stay Order.

36.    On March 11, 2020, the District Court entered the Stay Order, which approved the

parties' Stipulation. The Stay Order, among other things, stated that "Transform shall not

sublease…any of the property at the Mall subject to the Lease, or otherwise voluntarily take or

induce any out-of-court action that could in any way impair MOAC's ability to vindicate its

position in these proceedings, including on further appeal…Transform will not take any out-of-

court action that might cause MOAC's position on appeal to be mooted." (Ex. 1 at ¶ 3.) The Stay

Order remains in effect until the Second Circuit issues a mandate. (*Id*. at ¶ 5.)

37.    By its Motion, Transform seeks an order that "would allow the Sublease to

proceed" and that would "end the matter once and for all." (Motion at ¶¶ 37, 47.) Such relief

would violate the Stay Order in at least three ways: (i) Transform is not permitted to sublease the

premises; (ii) Transform may not impair MOAC's ability to vindicate its position on further appeal; and (iii) Transform may not cause MOAC's position on appeal to be mooted.

38.    Accordingly, for this additional reason, Transform's requested relief must be denied.

## C.    MOAC Has Not Improperly Interfered with Transform's Attempt to Sublet the Premises.

39.    The second form of relief sought in the Motion—an order estopping MOAC "from any further interference with Transform's ability to consummate the Sublease"—also should be denied if the Court has jurisdiction. (Motion, Proposed Order at 2.)

40.    MOAC has not "interfered" with Transform's ability to consummate the Sublease. As established above, Transform's inability to consummate the Sublease results from the terms of the Sublease, which require the yet-to-occur Litigation Resolution; the Stay Order, which prohibits the consummation of the Sublease; and the ongoing appeal of the Assignment Order. None of those actions constitute "improper interference" by MOAC. Indeed, MOAC simply has exercised its appellate rights, actions that Transform evidently deems as "uncooperative." (Motion at ¶ 35.)

41.    Nor does MOAC's December 17, 2021 letter to Transform constitute "improper interference." In that letter, MOAC's counsel stated that MOAC objected to the Sublease and that ██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

42.    ████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████ MOAC

has not sought such relief, and that dispute is not before this Court or any other court. Thus, Transform's arguments that the Sublease is valid under the Master Lease simply are not ripe.

43.     Rather than seek redress for any present harm, Transform evidently wants this Court to preemptively head off any hypothetical future challenge to the Sublease. The Court should decline to do so. *See Aetna Life Ins.*, 300 U.S. at 241 (Article III requires "substantial controversy…as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.")

## CONCLUSION

Wherefore, for the foregoing reasons, MOAC respectfully requests that the Court (i) deny the Motion in its entirety, and (ii) grant such further relief as the court deems just and proper.


Dated:  January 13, 2022                          Respectfully submitted,

                                                  */e/ Gregory S. Otsuka*
                                                  Thomas J. Flynn (Admitted *pro hac vice*)
                                                  Gregory S. Otsuka (*Pro hac vice* pending)
                                                  Larkin Hoffman Daly & Lindgren, Ltd.
                                                  8300 Norman Center Drive
                                                  Suite 1000
                                                  Minneapolis, Minnesota  55437-1060
                                                  (952) 835-3800
                                                  tflynn@larkinhoffman.com
                                                  gotsuka@larkinhoffman.com

                                                  David W. Dykhouse
                                                  Daniel A. Lowenthal
                                                  Patterson Belknap Webb & Tyler, LLP
                                                  1133 Avenue of the Americas
                                                  New York, New York  10036-6710
                                                  (212) 336-2000
                                                  dwdykhouse@pbwt.com
                                                  dalowenthal@pbwt.com

                                                  *Attorneys for MOAC Mall Holdings LLC*

4859-5752-8841, v. 2

# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re** | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION,** *et al.,* | **Bankr. Case No. 18-23538 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |
| **MOAC MALL HOLDINGS LLC,** | |
| **Appellant,** | |
| **v.** | **Case No. 19-cv-09140 (CM)** |
| **SEARS HOLDINGS CORPORATION and TRANSFORM HOLDCO LLC,** *et al.,* | |
| **Appellees.** | |

### STIPULATION OF TRANSFORM HOLDCO LLC, SEARS HOLDINGS CORPORATION, AND MOAC MALL HOLDINGS LLC FOR STAY PENDING APPEAL OF DISTRICT COURT DECISION

---

[1]    The debtors (collectively, the "Debtors") in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

1

Transform Holdco LLC (the "Buyer"), for itself and on behalf of its affiliate Transform
Leaseco LLC ("Transform Leaseco" and together with the Buyer, "Transform"), Sears Holdings
Corporation ("Sears"), and MOAC Mall Holdings LLC ("MOAC") stipulate as follows:

**WHEREAS**, on September 5, 2019, the bankruptcy court below entered an *Order (I)*
*Authorizing Assumption and Assignment of Lease With MOAC Mall Holdings LLC and (II)*
*Granting Related Relief* [Bankr. ECF No. 5133] (the "Bankruptcy Order");

**WHEREAS**, on September 20, 2019, MOAC filed a motion for a stay pending appeal of
the Bankruptcy Order [Bankr. ECF No. 5110]. The bankruptcy court denied that motion for stay
pending appeal, [Bankr. ECF No. 5246] and thus there was no stay of the Bankruptcy Order. As
a result, Transform had the right to market a lease ("Lease") that was assumed and assigned to
Transform by the Bankruptcy Order at the Mall of America (the "Mall") in Minneapolis,
Minnesota;

**WHEREAS**, MOAC appealed the Bankruptcy Order on September 12, 2019 [Bankr. ECF
No. 5133], and this Court entered its *Decision on Appeal*, 2020 WL 953528, vacating and
remanding the Bankruptcy Order, on February 27, 2020 (the "Decision");

**WHEREAS**, Rule 8025 of the Federal Rules of Bankruptcy Procedure and Rule 8(a) of
the Federal Rules of Appellate Procedure provide that this Court has the authority to issue a stay
pending appeal of this Court's Decision; and

**WHEREAS**, Transform intended to seek a stay pending appeal. Transform conferred with
MOAC and Sears to seek  their consent to a stay pending appeal, and MOAC and Sears have
consented to a stay on the terms set forth herein.

### AGREEMENT

NOW, THEREFORE, the Parties stipulate and agree as follows:

2

1.      The Parties agree that this stipulated Order is intended to satisfy the requirements of Rule 8025 of the Federal Rules of Bankruptcy Procedure and this Court's Individual Practices and Procedures.

2.      Upon entry of the Court's approval of this stipulated Order and until any ruling of the Second Circuit Court of Appeals, judgment of this Court shall be stayed pending appeal to the Second Circuit Court of Appeals, and local Bankruptcy Rule 8024-1 notwithstanding shall not automatically become the order or judgment of the Bankruptcy Court or require a motion for further proceedings to be filed.

3.      As a condition of MOAC's consent to such stay, from the date hereof until the termination of the stay, Transform shall continue to pay rent and other costs and fees due under the Lease during the pendency of any appeal of the Decision, and otherwise comply with the terms of the Lease.  In addition, from the date hereof until the termination of the stay, Transform shall not sublease or enter into any similar agreement or contract related to any of the property at the Mall subject to the Lease, or otherwise voluntarily take or induce any out-of-court action that could in any way impair MOAC's ability to vindicate its position in these proceedings, including on further appeal, without written consent of MOAC and its counsel of record. Transform will not take any out-of-court action that might cause MOAC's position on appeal to be mooted.

4.      As a further condition of MOAC's consent to such stay, from the date hereof until the termination of the stay, MOAC shall have the right to market the Lease, however, shall not sublease or enter into any similar agreement or contract related to any of the property at the Mall subject to the Lease, or otherwise voluntarily take or induce any out-of-court action that could in any way impair Transform's ability to vindicate its position in these proceedings, including on

3

further appeal, without written consent of Transform and its counsel of record. MOAC will not take any out-of-court action that might cause Transform's position on appeal to be mooted.

5.    The terms and conditions of this stipulated Order shall be immediately effective and enforceable upon entry. Once this stipulation is approved by the Court, it shall remain in place until the earlier of (i) the expiration of the time period within which to appeal any judgment of this Court; (ii) if an appeal is taken, the sending down of the mandate of the Second Circuit Court of Appeals.

6.    Other than expressly set forth herein, this Order shall not be construed to affect in any way the legal positions of the parties with respect to the Lease. Neither party shall seek to introduce or otherwise use this Order in any fashion to support their positions in any further proceedings except to enforce compliance with the terms hereof.

*[Remainder of Page Intentionally Left Blank]*

4

7.    This Court shall retain jurisdiction with respect to any matters, claims, rights, or

disputes arising from or related to the implementation of this stipulated Order.

Dated: March 9, 2020

**DLA PIPER LLP (US)**

By: _R. Craig Martin_ _

Richard A. Chesley
Rachel Ehrlich Albanese
R. Craig Martin
Alana M. Friedberg
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
Telephone: (212) 335-4500
richard.chesley@dlapiper.com
rachel.albanese@dlapiper.com
craig.martin@dlapiper.com
alana.friedberg@dlapiper.com

*Counsel for the Buyer*

**WEIL, GOTSHAL & MANGES LLP**

By: __Jacqueline Marcus__

Jacqueline Marcus
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Counsel for the Debtors and Debtors in Possession*

**IT IS SO ORDERED.**

Dated: _March 1_, 2020
        New York, NY

**LARKIN, HOFFMAN, DALY & LINDGREN, LTD.**

By: _Alexander J. Beeby_ _

Thomas J. Flynn
Alexander J. Beeby
8300 Norman Center Drive, Suite 100
Minneapolis, MN 55437
Telephone: (952) 835-3800
tflynn@larkinhoffman.com
abeeby@larkinhoffman.com

-and-

**PATTERSON BELKNAP WEBB & TYLER LLP**

By: _David Dykhouse_ _

David Dykhouse
Daniel Lowenthal
1133 Avenue of the Americas
New York, NY 10036
Telephone: (212) 336-2000
dwdykhouse@pbwt.com
dalowenthal@pbwt.com

*Counsel for MOAC*

_____
THE HONORABLE COLLEEN
MCMAHON, CHIEF U.S.D.J.

# Exhibit 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re: SEARS HOLDINGS CORPORATION,
et al.,

                                        Debtors.

MOAC MALL HOLDINGS LLC,

                                        Appellant,                         No. 19 Civ. 09140 (CM)

        -against-

TRANSFORM HOLDCO LLC and
SEARS HOLDINGS CORPORATION, et al.

                                        Appellees.

---

**ORDER GRANTING TRANSFORM HOLDCO LLC'S MOTION FOR REHEARING,
AND ON REHEARING VACATING THE COURT'S ORIGINAL DECISION ON
APPEAL**

McMahon, C.J.:

        Appellant MOAC Mall Holdings LLC ("MOAC") took an appeal to this court from an

order of the United States Bankruptcy Court for the Southern District of New York (Drain, B.J.),

which approved the assignment and assumption of the certain lease (the "Lease") of the Sears store

at the Mall of America in Minneapolis, Minnesota to an entity known as Transform Leaseco LLC.[1]

The parties filed lengthy briefs discussing the complicated issue raised by the appeal; they held an

oral argument at which the court questioned them closely on contested points of law.

---

[1] Transform Leaseco LLC ("Leaseco") is wholly owned by Transform Holdco LLC ("Holdco"). They are represented
by the same counsel who have filed only one set of briefs and motions throughout the appeal. These two entities were
referred to as "Transform" throughout the appellate opinion. However, as a technical matter relevant to this opinion
on rehearing, it was Leaseco who was the designated assignee of the Sears lease, and Holdco who made the
designation, and it turns out to be necessary to refer to them as separate entities, rather than collectively as
"Transform," in critical portions of this opinion. Therefore, in this opinion references to "Transform" reflect arguments
made in the one set of papers filed on behalf of both Leaseco and Holdco.

At no point in this entire process – through briefing and oral argument – did either side suggest that the court might lack jurisdiction over the appeal. MOAC did not seek a stay pending appeal in this court, and Transform did not move to dismiss MOAC's appeal for want of jurisdiction. Everyone behaved as though that were a foregone conclusion.

It took several weeks of concentrated work to write the forty-three-page decision disposing of the appeal. In the end, the court vacated the order of the Bankruptcy Court, concluding that the assignment of the Mall of America Lease to Leaseco violated § 365(b)(3)(A) of the Bankruptcy Code.

Transform has not appealed that decision to the United States Court of Appeals for the Second Circuit. Instead, Transform filed the instant motion, in which is asserts for the first time – albeit on the basis of facts known to it throughout the pendency of the appeal, but never revealed to this court – that this court lacked jurisdiction over the appeal all along, because the order appealed from was not stayed pending appeal.

Ordinarily, the failure to raise a known argument while a case is under adjudication precludes the granting of a motion for rehearing/reargument. *In re Soundview Elite Ltd.*, No. 14-cv-7666, 2015 WL 1642986, at *1 (S.D.N.Y. Apr. 13, 2015), *aff'd*, 646 F. App'x 1 (2d Cir. 2016). As Transform did not raise the appellate implications of Judge Drain's denial of MOAC's motion for a stay pending appeal under § 363(m) of the Bankruptcy Code, under the traditional rules applicable to such motions, its motion for rehearing would be summarily denied.

Transform insists, however, that the court must entertain the motion, because the issue it raises is both "jurisdictional" – that is, it goes to the court's power to hear the appeal in the first instance – and nonwaivable. Transform also argues that it cannot be estopped to raise the issue of the court's jurisdiction belatedly, even though – as I now know – its counsel flatly stated to the

bankruptcy judge that § 363(m) had no applicability to the assignment of the Mall of America Lease to Leaseco, *and that Transform did not intend to argue otherwise*, in order to induce him to deny MOAC's motion for a stay.

Transform's motion for rehearing is granted. The court has examined its appellate jurisdiction for the first time. Having done so, I conclude, with great regret, that this court lacked the power to hear and decide MOAC's appeal.

The decision on appeal is vacated, and MOAC's appeal is dismissed as statutorily moot.

## BACKGROUND

*The Original Sale Order and the Asset Purchase Agreement*

Though I have no wish to rehash details discussed in the opinion I am now vacating, Transform's latest gambit needs to be contextualized.

Sears, Roebuck and Co. ("Sears"), Sears Holdings Corporation and its affiliated debtors (collectively, the "Debtors") filed for bankruptcy in October 2018. Former Sears executives formed Transform – a group of entities including, for our purposes, a parent company known as Holdco and an affiliate called Leaseco – to try to recapture and market Sears' assets. Transform, through the vehicle Holdco, submitted the best bid to purchase substantially all of Sears' assets.

The Debtors and Holdco entered into an Asset Purchase Agreement (the "APA") to memorialize Holdco's purchase. Pursuant to the APA, Holdco paid Sears over $1.4 billion to purchase all of Sears' assets, properties and rights related to its business,[2] which included all of the following:

- Assigned Agreements and the Designation Rights
- Lease Rights
- Owned real property
- Inventory, receivables, equipment and improvements

---

[2] Property excluded from the asset sale is not relevant to this appeal and rehearing motion.

- Intellectual Property
- Goodwill
- Data
- Books and records
- Marketing materials (including Sears iconic catalogs, its original marketing innovation)
- Claims
- Actions
- Contracts related to the business
- Store cash

In February 2019, the Bankruptcy Court approved the APA in a § 363(b) sale order (the "Sale Order"). (Bankr. Dkt. No. 2507, APX87.)[3] In the Sale Order, the Bankruptcy Court held that Holdco had purchased Sears' assets for "fair consideration." (*Id.* at 7, ¶ J.)

Among the bundle of assets purchased by Transform pursuant to the APA were (1) certain specifically Assigned Agreements, and (2) Designation Rights for contracts identified as "Designatable Leases." (*Id.* at 3.) "Designation Rights" are the right to designate to whom a lease between Sears (or an affiliate, such as Kmart) and some landlord should be assigned. Because Holdco had purchased Designation Rights, once it identified an assignee, Sears was required, per the terms of the APA, to assign the lease to Holdco's chosen assignee, as long as Holdco satisfied certain conditions that were specified in the APA. ("APA," Ex. B. to the Sale Order, APX184, as amended by Ex. F to Bankr. Dkt. No. 2599, APX3593, at § 2.6.)

All told, there were hundreds of "Designatable Leases," one of which was Sears' lease at the Mall of America in Minneapolis. As this court noted in the decision on appeal, Transform intended to continue to operate about 425 of those properties as Sears or Kmart stores. It planned to use its Designation Rights to bring about the assignment of the rest of the Designatable Leases

---

[3] "Bankr. Dkt." refers to the proceedings before Judge Drain in *In re Sears Holdings Corp., et al.*, No. 18-23538 (RDD) (Bankr. S.D.N.Y) and "APX" refers to the record on appeal to this court.

to itself (through an affiliate, such as Transform Leaseco), and then to sublease the spaces covered by those leases to new tenants at what it hoped would be a handsome profit.

Pursuant to § 2.6 of the APA, Transform Holdco purchased the Designation Rights for all Designatable Leases on the closing date. (*Id.*) Its right to designate assignees under the leases vested at the closing of the APA. (*Id.* at §§ 2.6, 5.2(a).) But the APA made clear, "For the avoidance of doubt, the sale . . . of the Designation Rights provided for herein on the Closing Date *shall not effectuate a sale, transfer, assignment or conveyance of any Designatable Lease to Buyer [Holdco] or any other Assignee* . . . ." (*Id.* at § 2.6 (emphasis added).) Any such "sale, transfer, assignment or conveyance" would only occur on something called the "Designation Assignment Date" – defined in the APA as the date of the "sale, transfer, assignment, conveyance and delivery" of the designated lease by Sears to Holdco's designee. (*See id.* at §§ 2.6, 5.2(d).) The APA also set out precisely when and how Sears' interest in any individual Sears would pass to Holdco's designee:

> On each Assumption Effective Date,[4] pursuant to section 365 of the Bankruptcy Code and the Approval Order, Sellers shall assume and assign to the applicable Assignee any Designatable Lease so designated by Buyer for assumption and assignment in accordance with the terms of this Agreement, and Buyer shall pay all or be responsible for Cure Costs with respect to such Designatable Leases.

(*Id.* § 2.7(c).)

Certain leases were assigned to Holdco as designee simultaneously with the closing of the APA and Holdco's acquisition of Designation Rights. (*See id.* § 2.7(b).) Those leases are listed in Exhibit A to the Sale Order. (APX170.) The Mall of America-Sears Lease that was the subject of the appeal to this court is not one of those leases.

---

[4] With respect to designatable leases to which objections to designation were lodged – such as the lease before this court – this date is defined as "the fifth (5th) Business Day following the date of resolution of any objection to assumption and assignment of such Lease." (*Id.* § 1.1.) In the case of the Mall of America Lease, the Designation Assignment Date and the Assumption Effective Date were the same day.

*The Subsequent Designation of the Mall of America Lease, The Objection, and The Appeal*

On April 2, 2019, Judge Drain entered an order establishing a procedure for Holdco to designate additional contracts for assumption and assignment to its desired assignees. (Bankr. Dkt. No. 3008, APX1290.) Once Holdco identified an additional lease to be designated for assumption and assignment, the Debtors were to file a notice with the court. Any party objecting to such an assignment had to serve and file a written objection with the Bankruptcy Court eight days after the filing of (i) the notice, or (ii) evidence of adequate assurance of future performance pursuant to 11 U.S.C. § 365(b)(3) – whichever was later.  (*Id.*)

Two weeks later, on April 19, 2019, Holdco filed a notice of "additional designatable leases" for assignment to itself or an affiliated entity (the "Notice"). (Bankr. Dkt. No. 3298, APX1331.) Among the additional designated leases was the Mall of America Lease. Holdco designated its affiliate, Leaseco, as the assignee of that particular lease.

MOAC objected to the Notice on the ground, among others, that the Debtors had not demonstrated that Leaseco met the qualifications for assignment of a shopping center lease as set forth in § 365(b)(3). (Bankr. Dkt. No. 3501, APX1344.) Over the course of the next few months, MOAC filed supplemental objections to the designation. Many other  parties also filed objections to other lease assignments proposed in the April 19 Notice; all such objections except MOAC's were resolved.

As one might surmise from the name of Holdco's designee, the Mall of America Lease was intended to be marketed to a new tenant or tenants not yet identified. The parties stipulated that Holdco had no intention of operating a Sears store at the Mall of America, but rather intended to sublease the premises to a third-party tenant at a profit to Transform. (Bankr. Dkt. No. 4865 ¶¶ 11-14, APX1783.) In fact, this was MOAC's major motivation for fighting the assignment – it did not

6

want to see Sears' anchor tenant space divided or occupied by whoever would pay Transform the highest price. MOAC wanted another big box retailer to take over the space – even if it (like Sears) paid little or no rent – both to "preserve the character" of Mall of America (a concept discussed at length in this court's opinion disposing of the appeal) and to ward off the possibility that MOAC might find itself in default on co-tenancy provisions in the leases of other Mall tenants.

Judge Drain conducted an evidentiary hearing on MOAC's objections on August 23, 2019. At that hearing, Leaseco – the proposed assignee – presented evidence that it met the requirements of § 365(b)(3)(A)-(D), as required by law and by the APA. It also offered two additional "concessions" that were intended to assuage MOAC's objections. It agreed (i) to put $1.1 million (effectively one year's rent, which the assignee would have had to pay in any event) into escrow; and (ii) to guarantee that it would sublet at least portion of the premises within two years. Leaseco also expressly agreed to operate in full compliance with the Lease (including the "Uses" section of the Lease and the REA), and to honor MOAC's buy-back rights under Article 6.3 of the Lease.

At the conclusion of the hearing, the Bankruptcy Court overruled MOAC's objections in an oral opinion read into the record. On September 5, Judge Drain signed a final order (the "Assignment Order") authorizing the assumption and assignment of the Mall of America Lease to Leaseco. (Bankr. Dkt. No. 5074, APX1947.) In that order, the Bankruptcy Court found that Leaseco met all the requirements for assignment of a shopping center lease, as set forth in 11 U.S.C. § 365. The Assignment Order imposed on Leaseco, as a condition of the assignment, the obligation to undertake the concessions it had offered during the hearing, and specifically ordered Leaseco to comply with the "Uses" section and to honor MOAC's buy-back rights.

The Assignment Order is the official bankruptcy court order by which the objections to the

assignment were  resolved. It is the order from which an appeal was taken to this court – the appeal

that was disposed of by this court's decision dated February 27, 2020. (Dkt. No. 26.)

*The Stay Proceedings*

MOAC moved to stay the Assignment Order pending appeal on September 6, the day after

it was filed. (Bankr. Dkt. No. 5083, Ex. A. to "Reh'g Resp.," Dkt. No. 33; Bankr. Dkt. No. 5110.)

On September 18, Judge Drain held a hearing on MOAC's stay motion. (*See* "Stay Tr.," Bankr.

Dkt. No. 5413; Ex. A to "Mot. for Reh'g," Dkt. No. 29-1.)

MOAC argued that, in light of 11 U.S.C. § 363(m), it needed a stay in order to protect its

right to appellate review of the Bankruptcy Court's September 5 Assignment Order. That section

of the Code provided as follows:

> The reversal or modification on appeal of an authorization under subsection (b) or
> (c) of this section of a sale or lease of property does not affect the validity of a sale
> or lease under such authorization to an entity that purchased or leased such property
> in good faith, whether or not such entity knew of the pendency of the appeal, unless
> such authorization and such sale or lease were stayed pending appeal.

The Bankruptcy Court was skeptical that any stay was necessary. While noting that the

assignment was being made in accordance with the original § 363 Sale Order, Judge Drain said,

"I can't imagine 363(m) as far as the sale is concerned applying here." (Stay Tr. at 8:4-5.) He

reasoned that MOAC was appealing the Assignment Order only insofar as it related to only one of

the roughly 600 Sears leases Holdco had the right to designate throughout the bankruptcy

proceeding, while the authorization for the transfer of property that was the subject of the Sale

Order – the sale of the Designation Rights – applied to all the leases. (*Id.*)

While it was in the happy position of having prevailed in the Bankruptcy Court, Transform

agreed that no stay was necessary. At the stay hearing, counsel for Transform represented to the

Bankruptcy Court that § 363(m) did not apply to MOAC's challenge to the Assignment Order. He

stated, "in effect, because we do not have a transaction, I think we couldn't rely on 363(m) for the

purposes of arguing mootness *because we have not closed on a transaction to assume and assign*

*this to a sub-debtor* [sic]." (*Id.* at 8:14-18 (emphasis added).)[5] In other words, Transform argued

to the Bankruptcy Court that an assignment to an intermediary entity such as Leaseco, without a

subsequence transfer to some as-yet unidentified third party or parties that would occupy the Sears

space, was not  a § 363(b) or (c) "sale or lease" for the purposes of § 363(m).

The Bankruptcy Court ultimately concluded that no stay was necessary to preserve

MOAC's right to appeal, finding, "This is not -- this is a 365 order. It's an outgrowth of the sale.

It's not a 363(m), *and they're not going to rely on 363(m),* which [Transform's counsel]'s just

reiterated for the second time." (*Id.* at 9:23-25, 10:1 (emphasis added).) Judge Drain believed that

the only "sale or lease of property" that was authorized pursuant to § 363(b) or (c) – which is a

prerequisite for the applicability of § 363(m) – was the sale of Sears' assets (including the specific

leases assigned directly to Holdco and the right to designate assignees for  additional but as-yet-

unidentified "designatable" leases), as memorialized in the original Sale Order. He also plainly

relied on  Transform's representation that § 363(m) would not moot the appeal in the absence of a

stay when he rejected MOAC's principal argument for irreparable harm and concluded that it had

not made a substantial showing of the need for a stay on the merits. In response to MOAC's

concern that the district court might independently deem the appeal moot, Judge Drain stated that

Transform would be estopped from so arguing. (*Id.* at 10:2-16.)

On September 27, Judge Drain entered an order denying MOAC's stay motion. (Bankr.

Dkt. No. 5246.) The order clearly stated that the Assignment Order was "immediately enforceable

---

[5] As the parties were discussing the subleasing of the Sears premises at Mall of America, Transform's counsel must
have said "sublettor," which was mistranscribed as "subdebtor."

and effective as of its entry on September 5, 2019." (*Id.*) Per the terms of the APA and the Assignment Order, the transaction closed five business days later, and the Mall of America Lease was assumed by Sears and then assigned to Leaseco.

> *Proceedings in the District Court*

On October 2, MOAC filed the instant appeal, challenging the Assignment Order under § 365. (Dkt. No. 1.) At the September 18 hearing before the Bankruptcy Court, MOAC had reserved its right to seek leave for a stay in the event "equitable mootness" became an issue (Stay Tr. at 10:20-25, 11:1-7),[6] but it neither appealed from Judge Drain's order denying a stay pending appeal nor sought a stay pending appeal from this court. I have little doubt this was because Transform had represented to Judge Drain that the appeal would not be moot under § 363(m).

As a result, this court – which does not pretend to expertise in bankruptcy law – was unaware of the possibility that the appeal might be moot because of Judge Drain's refusal to enter a stay pending appeal. I read the briefs and the record; I heard oral argument; and I worked for over a month on what turned out to be a very complicated appeal, relying on the arguments raised by the parties.

Ultimately, this court concluded that the Bankruptcy Court had erred in finding that Transform satisfied § 365(b)(3)(A) – a section of the Code that requires, in connection with the assignment of a lease for premises in a shopping center, that the proposed assignee's financial condition and operating performance be similar to the financial condition and operating performance of the debtor at the time the debtor became the lessee under the lease. The bankruptcy

---

[6] Equitable mootness is a prudential doctrine whereby district courts may dismiss a bankruptcy appeal as moot when effective relief would be inequitable. This doctrine applies to avoid unraveling underlying plans that have been substantially consummated. Here, Transform has not argued for equitable mootness; it only argues for statutory mootness. Moreover, to the extent the doctrine may apply to Transform's consummation of its plan to sublease the Mall of America Lease to an actual tenant, based on a stipulation entered in this court – *see infra.*, at page 11 – it can do no such thing.

judge had expressly found that Leaseco's financial condition and operating performance were not
similar to that of Sears when its Mall of America lease commenced back in 1991. In light of that
finding (which was amply supported by the record), this court did not believe that any judicially-
created performance guarantees, such as those sanctioned by the Bankruptcy Court[7] could be
substituted for the standard expressly written into law by Congress.

As a result, this court vacated the Assignment Order to the extent it had authorized the
assumption and assignment of the Sears Lease to Leaseco – i.e., it modified the Assignment Order
– and remanded the case to the Bankruptcy Court. (Dkt. No. 26); *In re Sears Holdings Corp.*, 613
B.R. 51 (S.D.N.Y. 2020).

Subsequently, this Court so-ordered a stipulation between the parties that allowed both
parties to market the Lease pending further appeal, but forbade either party from entering into any
sublease or similar agreement for the Sears space. (Dkt. No. 28.)

The following day, Transform filed the instant motion for rehearing, arguing for the first
time that this Court lacked appellate jurisdiction over MOAC's appeal under 11 U.S.C. § 363(m),
because MOAC had not obtained a stay of the Assignment Order. (Dkt. No. 29.)

**ANALYSIS**

Transform moves for rehearing pursuant to Bankruptcy Rule 8022. "The standard for
granting such a motion, derived from Rule 40 of the Federal Rules of Appellate Procedure, requires
the movant to state with particularity each point of law or fact that the movant believes the district
court or BAP has "overlooked or misapprehended." *Soundview Elite*, 2015 WL 1642986, at *1

---

[7] The Bankruptcy Court concluded that Transform/Leaseco did not have to abide by the literal terms of § 365(b)(3)(A)
because (i) it seemed (by virtue of its fundraising capabilities) to have a net worth of at least $50 million (the
justification for that number is explained in the opinion on the appeal), and (ii) it had agreed to abide by all terms of
the Lease. This court concluded that things could not be substituted for the very different requirements set forth in the
statute.

(internal quotations and citations omitted). This strict standard does not allow the movant to reargue its case, but rather is intended to "direct the court's attention to a material matter of law or fact which it has overlooked in deciding the case, and which, had it been given consideration, would probably have brought about a different result." *Id.*

This court has admitted complete unawareness of the possibility that the appeal it so laboriously considered and decided might well be moot. I cannot say that I "overlooked" the issue, because both sides were aware that 11 U.S.C. § 363(m) had been raised in the Bankruptcy Court, but neither side called it to my attention during the pendency of the appeal. I would certainly not have "overlooked" this issue if it had been raised, since lack of appellate jurisdiction would have foreclosed me from deciding the appeal as argued (not to mention, saved me a great deal of work). I would instead have been limited me to whether Leaseco's assumption of the lease in the absence of a stay was done "in good faith" – an issue not briefed or argued to this court.  That certainly would have "brought about a different result" on the appeal.

Having lost on the appeal, Transform has apparently thought better of the position it took before Judge Drain. It now argues that § 363(m) renders MOAC's appeal of the unstayed Assignment Order moot, thus precluding appellate review by this court.

MOAC responds that Transform has waived any rights it might have had under § 363(m) and is judicially estopped from relying on any protection the statute might otherwise have afforded it. MOAC also argues that Transform was correct when it represented to Judge Drain that § 363(m) did not apply to the Assignment Order.[8]

After deliberation, I must reject MOAC's arguments. Because the Second Circuit takes the position that § 363(m) is "jurisdictional," neither waiver nor judicial estoppel can be relied on to

---

[8] I am not insensible to the fact that MOAC took exactly the opposite position when it moved before Judge Drain for a stay pending appeal.

overcome it. And, regrettably, § 363(m) does protect the assignment of the Mall of America Lease

from appellate review in the absence of a stay, because the assignment of that lease was a "sale"

within the meaning of that section.

Accordingly, MOAC's appeal is, and always was, statutorily moot.

**I.      Because Section 363(m) is "Jurisdictional," Waiver and Estoppel Cannot Be Relied On to Create Appellate Jurisdiction Where None Exists.**

District courts have jurisdiction to hear bankruptcy appeals pursuant to 28 U.S.C. § 158.

However, § 363(m) imposes a limitation on the exercise of that jurisdiction:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363.

The Second Circuit has "held in no ambiguous terms that section 363(m) *is a limit on our*

*jurisdiction* and that, absent an entry of a stay of the Sale Order, we only retain authority to review

challenges to the 'good faith' aspect of the sale. Specifically, we held in *Gucci I* that we *lack*

*jurisdiction* to review the 'unstayed *sale order*,' of a sale subject to the protections of section

363(m) and concluded that 'we may neither reverse *nor modify* the judicially-authorized sale.'" *In*

*re WestPoint Stevens, Inc.*, 600 F.3d 231, 248 (2d Cir. 2010) (emphasis added) (quoting *In re*

*Gucci*, 105 F.3d 837, 838–840 (2d Cir. 1997)). Moreover, the statute makes it plain that knowledge

of the pendency of an appeal does not in and of itself constitute "bad faith." Whether Transform's

behavior before the Bankruptcy Court would qualify as bad faith is not a question that anyone has

suggested I answer; it was certainly not raised on the appeal.

The Court of Appeals in *WestPoint* left open the possibility for, "A narrow

exception . . . for challenges to the Sale Order that are so divorced from the overall transaction that

the challenged provision would have affected none of the considerations on which the purchaser relied." *Id.* at 249. No one has pointed this court to any case in which such an exception has been found.

MOAC nonetheless insists that Transform's representations to the bankruptcy judge render the appeal not moot under the doctrines of waiver and judicial estoppel. While this court is appalled by Transform's behavior, I must disagree that either doctrine confers jurisdiction over an appeal where Congress has expressly removed it.

*Waiver*

MOAC contends that § 363(m) should be treated like any other statute, such that a party can knowingly waive its protection. Transform's counsel's representation to the Bankruptcy Court that the statute was inapplicable, and that Transform could not and would not rely on § 363, was, MOAC contends, a waiver of Transform's right to rely on the statute.

While waiver and forfeiture are applicable to many procedural conditions – for example, the "final decision" requirement for appeals, Title VII's exhaustion requirement, and the forum defendant rule in diversity cases, *see Williams v. KFC Nat. Mgmt. Co.*, 391 F.3d 411, 416 n.1 (2d Cir. 2004) (collecting cases)[9] – they cannot be relied on to create appellate jurisdiction where there is none. Given the Second Circuit's recognition of a clear distinction between limits on jurisdiction and waivable procedural conditions, I find it difficult to believe that the Court of Appeals would deem a statutory requirement to be "jurisdictional" – that is, one conferring or denying jurisdiction – and yet conclude that jurisdiction could attach via waiver, which is tantamount to by consent of

---

[9] Recently, the Second Circuit determined in *In re Indu Craft, Inc.*, 749 F.3d 107, 113, 116 (2d Cir. 2014) that Rule 6(b)(1) of the Federal Rules of Appellate Procedure (Appeal in a Bankruptcy Case) "is a nonjurisdictional rule" subject to waiver and forfeiture, emphasizing the difference between court-promulgated rules and jurisdictional limits enacted by Congress.

the parties. If § 363(m) is a jurisdiction-depriving statute, then its requirements cannot be waived;

"Parties cannot waive a defect in the Court's appellate jurisdiction." *In re Bucurescu*, 282 B.R.

124, 130 n.19 (S.D.N.Y. 2002) (citing *Kamerling v. Massanari,* 295 F.3d 206, 212–13 (2d Cir.

2002); *Goldberg v. Cablevision Sys. Corp.,* 261 F.3d 318, 323 (2d Cir. 2001)).

Of course, the language of the statute does not exactly suggest that an appellate court lacks

the power to reverse or modify an unstayed bankruptcy court order (it does, after all, presume that

a district or appellate court has entered just such an order). But it does say that any such order will,

in the absence of bad faith, be ineffective to undo a sale or lease already consummated in the

absence of a stay. This, of course, means that an appellate court cannot fashion effective relief in

the absence of a stay, which is what renders the appeal moot. Such "statutory" or "bankruptcy"

mootness "furthers the policy of finality in bankruptcy sales and assists the bankruptcy court to

secure the best price for the debtor's assets." *Gucci*, 105 F.3d at 840 (citing *United States v.

Salerno*, 932 F.2d 117, 123 (2d Cir. 1991)). As explained by the Sixth Circuit, § 363(m):

> reflects the more general constitutional consideration that an appeal must be
> dismissed as moot when, by virtue of intervening events, the court of appeals cannot
> fashion effective relief. Though reflective of the general prohibition against
> advisory opinions undergirding the constitutional mootness doctrine, bankruptcy
> mootness under § 363(m) is broader. Even if the appeal is not moot as a
> constitutional matter because a court could provide a remedy, the policy favoring
> finality in bankruptcy sales reflected in § 363(m) requires that certain appeals
> nonetheless be treated as moot absent a stay.

*Weingarten Nostat, Inc. v. Serv. Merch. Co.*, 396 F.3d 737, 742 (6th Cir. 2005) (internal citations

omitted).

The Second Circuit has quite clearly interpreted § 363(m) as a jurisdiction-depriving statute

– that is, a statute that removes the appellate court's power to decide any issue except the issue of

bad faith. I sit as a district court in the Second Circuit, so I am constrained by the words used by

my Court of Appeals to describe my power. And if I lack all power to grant effective relief by

congressional command, the parties are not free to agree otherwise, whether by consent or by
waiver.

Significantly, MOAC calls the court's attention to no case in which an appellate court's
order overturning an unstayed and fully consummated Bankruptcy Court order authorizing a § 363
sale was deemed effective by virtue of waiver. In the only case it cites, *In re Paige*, 443 B.R. 878,
908 (D. Utah 2011), *aff'd in part, rev'd in part*, 685 F.3d 1160 (10th Cir. 2012), the district court
considered the possibility that § 363(m) could be waived, but ultimately rejected the proposition
that any waiver occurred. *See id.*

*Estoppel*

With respect to estoppel, MOAC argues that, at the stay hearing, Judge Drain relied on
Transform's representations that § 363(m) would not moot MOAC's appeal, which led him to
conclude that MOAC would not suffer irreparable harm if he denied the stay. Now Transform
seeks to benefit from a complete reversal of that representation.

Judicial estoppel is an equitable doctrine to be exercised in the sound discretion of the
Court. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). It is "designed to prevent a party who
plays fast and loose with the courts from gaining unfair advantage through the deliberate adoption
of inconsistent positions." *Wight v. BankAmerica Corp.*, 219 F.3d 79, 89 (2d Cir. 2000). Judicial
estoppel typically applies when "1) a party's later position is 'clearly inconsistent' with its earlier
position; 2) the party's former position has been adopted in some way by the court in the earlier
proceeding; and 3) the party asserting the two positions would derive an unfair advantage against
the party seeking estoppel." *In re Adelphia Recovery Tr.*, 634 F.3d 678, 695–96 (2d Cir. 2011).
The Second Circuit has "further limit[ed] judicial estoppel to situations where the risk of

inconsistent results with its impact on judicial integrity is certain." *Intellivision v. Microsoft Corp.*,

484 F. App'x 616, 619 (2d Cir. 2012) (internal citations omitted).

All the conditions for application of judicial estoppel would seem to be met here.

Transform has taken different positions that are clearly inconsistent. Judge Drain plainly relied on

Transform's representations – both that § 363(m) did not apply to this situation and that Transform

had no intention of arguing otherwise – when he concluded that MOAC had failed to demonstrate

that it would suffer irreparable injury in the absence of a stay. In response to Judge Drain's

question, "So you're not relying on -- you  wouldn't -- you're not going to go to the district and say

363(m) applies here. This is over," Transform's counsel replied:

> MR CHESLEY: "Well, we -- in effect, because we do not have a
> transaction, I think we couldn't rely on 363(m) for the purposes of arguing mootness
> because we have not closed on a transaction to assume and assign this to a sub
> debtor [sic].
>
> THE COURT: The specific assign.
>
> MR. CHESLEY: Correct, Your Honor."

(Stay Tr. at 8:11-20.) Judge Drain then reiterated his understanding of Transform's comments:

"It's not a 363(m), and they're not going to rely on 363(m), which Mr. Chesley's just reiterated for

the second time." (*Id.* at 9:24-25, 10:1.)

Finally, Transform has derived an unfair advantage from its switch in position, because

MOAC appears to have been lulled into not seeking a stay before this court.

The question is whether that gets MOAC past § 363(m).

Although the Second Circuit has "never held . . . that judicial estoppel can never apply to

matters affecting subject matter jurisdiction," it has cautioned that "'special care' should be taken

in considering whether judicial estoppel should apply 'to matters affecting federal subject matter

jurisdiction.'" *Intellivision*, 484 F. App'x at 621 (quoting *Wight*, 219 F.3d at 89). This special care

is warranted because, "It is axiomatic that a *lack of subject matter jurisdiction may be raised at any time* even by a party who originally asserted jurisdiction." *Wight*, 219 F.3d at 90 (emphasis added) (internal quotation and citations omitted). Although Transform represented that it could not and would not rely on § 363(m), when it comes to "jurisdictional" considerations, "The bottom line is that irrespective of how the parties conduct their case, the courts have an independent obligation to ensure that federal jurisdiction is not extended beyond its proper limits." *Id.*

Moreover, as a bankruptcy judge in this district recently pointed out, "Judicial estoppel applies to inconsistent factual positions, not alternative legal theories of the case." *In re DeFlora Lake Dev. Assocs., Inc.*, 571 B.R. 587, 599 (Bankr. S.D.N.Y. 2017). Transform's representation to Judge Drain that § 363(m) did not apply to the instant appeal, because there had not yet been a "sale" of Sears' Mall of America Lease as that term is used in § 363(m) is at best a mixed question of law and fact, if not a pure question of law.  The assertion that a particular statute does not apply to undisputed facts is not, it seems to me, an "inconsistent factual position" – it is an inconsistent legal position.

Therefore, as much as I hate to say it, judicial estoppel appears to me inapplicable. And I do hate to say it, for if ever there were an appropriate situation for the application of judicial estoppel, this would be it.

## II.  *Weingarten* is not Outcome Determinative.

Transform argues that the Sixth Circuit's opinion in *Weingarten Nostat, Inc. v. Service Merchandise Co.*, 396 F.3d 737 (6th Cir. 2005) compels the conclusion that MOAC's appeal is mooted by the absence of a stay of the Assignment Order. (*See* Mot. for Reh'g at 5.)

*Weingarten* is the only case known to this court in which the assignment of a lease pursuant to designation rights was deemed a protected transaction under § 363(m). Its facts are so nearly

identical to those in this case as to render it deceptively appealing as a precedent. But I do not believe that it controls the outcome of this motion – and not simply because it was decided in a different circuit.

In *Weingarten*, the debtor, Service Merchandise, sold the designation rights to most of its real property and retail leases to KLA (the equivalent of Holdco) for $116.4 million. *See* 396 F.3d at 739. KLA's parent corporation, Kimco, then partnered with Schottenstein Stores Corporation to form an entity known as JLPK (the Leaseco equivalent), which was designated by KLA as the assignee of the Service Merchandise lease in a mall known as Argyle Village Square Shopping Center. *See id.* at 739, n. 1. JLPK, like Leaseco, had no intention of operating a business on the site; it intended to sublease the space. The difference between that case and ours is that, in *Weingarten*, the sublessees had already been identified and the premises were to be subleased at roughly the same time as the assignment. *See id.* at 739–40.

Weingarten, the landlord at Argyle Village, objected to both prongs of the transaction. It objected to the assignment to JLPK, because JLPK did not meet the "similarity" requirements required by § 365(b)(3)(A). And it objected to the sublease of a portion of the premises to Michaels, an arts and crafts store, because having Michaels in the mall would both (i) place Weingarten in breach of its lease with Jo-Ann's, a competing crafts store, in violation of § 365(b)(3)(C), and (ii) disrupt the tenant mix or balance of Argyle Village under § 365(b)(3)(D). *See id.* at 740.

After first siding with the landlord – ironically, on the very ground on which MOAC prevailed in this court on the appeal (namely, that JLPK, the intermediate assignee did not meet the similarity in "financial condition and operating performance" criteria of § 365(b)(3)(A)) – the Bankruptcy Court reversed field and approved the transaction, pursuant to both §§ 363 and 365. It

did so after Kimco and Schottenstein's – neither of whom was ever the assignee of Service Merchandise's lease – agreed to guarantee a year's base rent on the leased premises.

Weingarten "vigorously" sought a stay pending appeal, from both the district court and the Sixth Circuit. However, its many applications were denied, and the transactions closed. Although the aggrieved landlord pursued its appeal in the absence of a stay, the Sixth Circuit dismissed Weingarten's appeal as moot under § 363(m). It reasoned that (1) lease assignments for consideration were "sales" within the meaning of that statute; and (2) the two-part transaction in question was actually a single transaction, pursuant to which Service Merchandise had "sold" its lease to the ultimate subtenant, Michaels. *See id.* at 742–43.

There are two important factual distinctions between this case and *Weingarten*.

First, as MOAC correctly points out, in *Weingarten* "the assignee paid *separate consideration* for the assignment." (Reh'g Resp. at 16 (emphasis added).) JLPK, the party in Leaseco's position in the *Weingarten* transaction, paid $300,000 in order to be designated as the assignee of the lease. *See* 396 F.3d at 743. Of course, JLPK paid that money to its affiliate, KLA – not to Service Merchandise's bankruptcy estate. But at least it paid something to someone in the transactional chain. There is no suggestion in the record before me that Leaseco paid anything to anyone who controlled the Lease – not to Sears, the assignor; not to Holdco, the designator; and not to ESL Investments, Inc., their mutual parent – in order to procure the assignment of the Mall of America Lease from Sears. But for reasons discussed below, I think this first factual distinction irrelevant.

It is the second reason that causes me to conclude that the Sixth Circuit's opinion, while interesting and informative, does not necessarily control the outcome of Transform's motion. The *Weingarten* court ultimately blessed the transaction because the assignment to intermediate

assignee JLPK (the party in Leaseco's shoes) was but the first half of a two-step but ultimately

unitary transaction, whereby Service Merchandise (the debtor) assigned (sold) its lease to the

ultimate subtenant, Michaels. To the Sixth Circuit, that was a critically important factor – one that

caused it to "discount" the intermediate assignment to JLPK, and overlook Weingarten's argument

that JLPK did not meet the requirements of § 365(b)(3)(A):

> Service Merchandise's assignment of the lease to JLPK pursuant to the designation-
> of-rights agreement with KLA constitutes a single transaction *if we consider the
> overall result of the transaction.* If the details of the transaction are discounted, it
> is clear that *Service Merchandise sold the Argyle Village lease to Michaels* pursuant
> to §§ 363(b) and 365. The relevant case law demonstrates that *a stay pending
> appeal is required when the sale and assignment are part of a single transaction,*
> and there is no reason that this protection should be lost merely because the
> transaction has been separated into two steps.

*Id.* (emphasis added).

In our case, we have no second step – none has occurred, and none is anticipated in the

foreseeable future. No ultimate subtenant had been identified at the time the Assignment Order

was approved and entered; none has been identified to date. That this made a difference to the

outcome below could not be clearer; Transform's counsel represented to Judge Drain that the

absence of a second-step transaction took the assignment of Sears' Mall of America lease to

Leaseco out of the purview of § 363(m). (*See* Stay Tr. at 8:14-18.) Put otherwise, Transform

essentially argued to Judge Drain that *Weingarten* did not preclude MOAC's appeal.

Because the Sixth Circuit's "unitary transaction" analysis ultimately dictated the outcome

in *Weingarten*, I cannot accept  Transform's invitation to hold that *Weingarten* is outcome-

determinative here, or to conclude that its reasoning would necessarily apply to the intermediate

step in a two-step transaction in a case, like this one, where the assignee has not closed on the

ultimate sublease.

21

If Transform is to prevail, it must be because the intermediate step, the assignment of the lease from Sears to Leaseco, was a "sale" within the meaning of § 363(m) – an issue never discussed by the Sixth Circuit in *Weingarten*. It is to that issue that I now turn.

## III.   The Assignment Order is Protected by § 363(m).

Section 363(m) applies to the "sale or lease of property."

A sale, per Black's Law Dictionary, is the transfer of property or title for a price. *Sale*, Black's Law Dictionary (11th ed. 2019). The Second Circuit has never opined on whether an assignment of an interest in property is tantamount to a "sale" for purposes of § 363(m). However, other courts that have faced this issue have concluded that such assignments are sales, because either (1) they were assignments for valuable consideration, or (2) the bankruptcy court authorized the § 365 assignment under § 363 as well.

Applying either criterion, the intermediate assignment of the Mall of America Lease to Leaseco qualifies as a § 363(m) sale.

The Sixth and Fourth Circuits, as well as one of my colleagues in this District, have expressly held that a lease assignment for valuable consideration is a § 363 sale. *See Weingarten*, 396 F.3d at 742 (The Sixth Circuit holds that "the assignment of a lease for a valuable consideration" is a sale for § 363(m) purposes); *In re Adamson Co. Inc.*, 159 F.3d 896, 898 (4th Cir. 1998) (same); *see also In re Cooper*, 592 B.R. 469, 480 (S.D.N.Y. 2018), *appeal dismissed* (Mar. 1, 2019) ("This Court sees no meaningful distinction between a sale, on the one hand, and a transfer of property in exchange for valid consideration, on the other."). The Third and Ninth circuits have similarly treated assignments for consideration as § 363(m) "sales." *See Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 493 (3d Cir. 1998) (buyer purchased franchise agreement for $230,000); *In re Exennium, Inc.*, 715 F.2d 1401, 1404 (9th Cir. 1983)

(buyer purchased four of debtor's leases for over $78,000); *see also In re Am. Banknote Corp.*,
No. 99 B 11577, 2000 WL 815910, at *2 (S.D.N.Y. June 22, 2000) (debtor received $380,000 for
assuming lease); *but c.f. In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1085 (3d Cir. 1990) (appellee
conceded that § 363(m) did not apply to mere lease assignments).

I can see no reason not to reach the same conclusion, and to hold that an assignment for
consideration constitutes a "sale" as that word is used in the Code.

> (i)   The Assignment of the Lease Was a Sale Because It Was a Transfer of an
> Interest in Property for Consideration.

The Assignment Order authorized a transfer of Sears' interest in the Lease to Leaseco. And
I must reject MOAC's contention that this particular assignment cannot be a "sale" within the
meaning of these cases because it was not supported by independent consideration.

The Assignment Order directs Holdco to pay all cure costs due to MOAC under the Lease.
(Assignment Order ¶ 11.) As noted above, this was the bargain struck in the APA; when a specific
lease was designated for assignment, five business days after the resolution of any objections
thereto (the Assumption Effective Date), Sears would assume the lease and assign the lease to
Holdco's designee --  but only after Holdco paid cure costs for that lease. (APA § 2.7(c.).)

Under the Bankruptcy Code, a debtor that assumes an unexpired ease is responsible for
paying cure costs when the debtor assumes an unexpired lease. *See* 11 U.S.C. § 365(b)(1)(A).
Sears did not become responsible for cure costs until is assumed the Mall of America Lease, which
occurred on the Assumption Effective Date. Holdco's satisfaction of Sears' obligation to pay those
cure costs constitutes valid consideration for the assignment of the Mall of America Lease itself.
*See Thales Alenia Space France v. Thermo Funding Co., LLC*, 959 F. Supp. 2d 459, 467 (S.D.N.Y.
2013) (citing *Mencher v. Weiss*, 306 N.Y. 1, 8 (1953)). And because Sears had no obligation to
pay cure costs until the Assumption Effective Date, the payment of those costs by Holdco

constitutes new consideration – not simply the carrying out of a preexisting obligation to which Holdco agreed in the APA. Indeed, Sears would not have incurred the statutory obligation to pay cure costs if the Bankruptcy Court's had not approved Sears' assumption of the MOAC Lease.

I thus have no difficulty concluding that the assignment to Leaseco was a "sale," because Sears transferred its interest in the Mall of America lease to Holdco's designee for consideration.

> (ii)     The Assignment Was a Sale Pursuant to Both §§ 363 and 365.

That said, not every assignment under § 365 is *per se* a "§ 363(m) sale." Only assignments/sales that fall within § 363(b) or (c) of the Code qualify as "sales" for the purposes of § 363(m). As the Third Circuit put it, "[A] party need only obtain a stay pending appeal when the debtor receives authorization to assign and sell executory contracts or leases under *both* § 363 and § 365." *Cinicola v. Scharffenberger*, 248 F.3d 110, 124 (3d Cir. 2001) (emphasis added).

So the question becomes whether this particular assignment was authorized under both statutes, or was merely an assignment under § 365. The answer is: both.

Cases in other Circuit Courts of Appeal have attached great importance to whether the bankruptcy court "purported to authorize a section 363 sale" to distinguish such sales from cases where the debtor "merely assigns a lease under section 365." *In re Rickel Home Ctrs., Inc.*, 209 F.3d 291, 302 (3d Cir. 2000); *see also Weingarten*, 396 F.3d at 743; *Krebs*, 141 F.3d at 498. Numerous courts have applied § 363(m) to transactions where the bankruptcy court invoked § 363 as well as § 365 in order to authorize a transaction.

In *Krebs*, for example, the debtor moved to assume and assign three franchise agreements to the highest bidder at auction. 141 F.3d at 493. The court distinguished its case from *Slocum* (in which the Third Circuit had concluded that a "mere assignment" pursuant to § 365 was not a § 363(m) "sale") because, in *Krebs*, "the bankruptcy judge in this case authorized both an

assumption under section 365 and a subsequent sale under section 363." *Id.* at 498. Similarly, in *Rickel*, the debtor sold and assigned 41 leases to the buyer or its affiliate. 209 F.3d at 295. Once again, the court distinguished the case from *Slocum* because, "the District Court explicitly authorized a sale of the leases pursuant to section 363, despite [the appellant]'s contention that section 363 was inapplicable to this transaction." *Id.* at 302. I note also that the Sixth Circuit in *Weingarten* authorized the transaction under both § 363 and § 365. *Weingarten, supra*., 396 F.3d at 743.

And so we turn to the language of the Assignment Order in this case. Its text answers the question. The assignment of the Mall of America Lease is a sale for purposes of § 363(m) because the assignment of this particular designatable lease – which I have found to be a sale, a transfer of an interest in property for consideration) – repeatedly references §363 as well as § 365 as providing authority for the assignment. Despite Judge Drain's on-the-record statement that the Assignment Order would be "only" a "365," the text of the Assignment Order provides that, "*Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors . . . are authorized to take any and all actions as may be: (i) reasonably necessary or desirable to implement the assumption and assignment of the Designated Lease pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement, the Related Agreements, the Sale Order, and this Order . . .*" (Assignment Order ¶ 5 (emphasis added)); and "*Pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code, the Debtors are authorized to transfer the Designated Lease in accordance with the terms of the Asset Purchase Agreement and the Sale Order*" (*id.* ¶ 6 (emphasis added)). These references alone are enough to bring the assignment of the Mall of America lease within the ambit of § 363(m).

Furthermore, the integrity of Assignment Order has to be protected by § 363(m), because the Assignment Order is "inextricably intertwined" with the Sale Order. *See Cinicola*, 248 F.3d at 126. As Judge Drain recognized at the hearing, the assignment to Leaseco was an "outgrowth" of the Sale Order. (Stay Tr. at 9:24.) Nothing could be more patent. The "sale" by assignment of leases to be designated in the future was originally authorized by the Sale Order, which was itself entered pursuant to § 363(b) of the Code. The Sale Order adopted the APA between Sears and Holdco – with all of its terms and conditions of sales of the designatable leases, as explained above – and incorporated the terms of that agreement into the Sale Order. The APA, as incorporated into the Sale Order, specifically provided that the "sale" of any designatable lease would take place only when an assignee is designated and the assignment is authorized

It is difficult to see how the Assignment Order effectuating a "sale" authorized pursuant to the Sale Order could be anything but "inextricably intertwined" with that Sale Order – an order that, while expressly stating that it did not bring about the "sale" of any particular lease, specifies when that sale would take place and sets out all the steps needed to effectuate the actual sale of any designated lease. The two orders could not operate more closely "in conjunction" with each other.

*Cinicola* is persuasive authority for this proposition. There, the debtor's trustee asked the bankruptcy court to approve a settlement agreement that involved the sale of assets and the assignment of executory contracts to a buyer for over $25 million. *Cinicola*, 248 F.3d at 116. The executory contracts included certain physicians' employment contracts, and the physicians objected to the assignment. *See id.* at 116–17. The bankruptcy court, invoking §§ 363 and 365, authorized the settlement agreement, but deferred action on the assignment of the physicians' contracts in order to address their objections. *See id.* at 117, 122. After a hearing on the physicians'

objections, the bankruptcy court entered a second order authorizing the assignment of the contracts under § 365. *See id.* at 125. The trustee assigned the contracts and subsequently closed on the settlement agreement. *See id.* at 117.

Notwithstanding the fact that the second order invoked only § 365, the Third Circuit determined it was "clear the Bankruptcy Court intended its Second Order to operate in conjunction with its First Order," such that the assumption and assignment of the employment contracts were "inextricably intertwined" with the debtor's sale of assets to the buyer in the settlement agreement. *Id.* at 125–26. Its reasoning is reminiscent of the Sixth Circuit's determination, in *Weingarten*, that a transaction carried out in two steps should be viewed from the perspective of the ultimate result.

Here, even if the Assignment Order itself were only a § 365 order (as Judge Drain obviously believed it to be), it was certainly an "outgrowth of the sale" (as he also believed), such that the two orders are inextricably intertwined. The transaction could not have been carried out without reference to both orders.

MOAC's arguments to the contrary are unconvincing.

First, MOAC argues that, unlike the Sale Order, the Assignment Order does not explicitly reference § 363(m). But in none of the cases discussed above did the court expressly reference subsection (m), as opposed to § 363 generally. *See, e.g.*, *Rickel*, 209 F.3d at 302; *Krebs*, 141 F.3d at 498.

MOAC also urges that, because it has a right to object as part of the designation process, its objection cannot be deemed "finally resolved" until its appeal is decided. Unfortunately, the language of § 363(m) is unforgiving: "Although an appellant's challenge to a sale authorization might raise meritorious arguments . . . denial of a requested stay has the effect of precluding this Court from reviewing those issues, other than the good faith of the purchaser, if the sale has closed

in the interim." *Gucci*, 105 F.3d at 840. The assignment of the Lease to Leaseco has taken place; the unstayed transaction has closed. Section 363(m) would be meaningless if "final resolution" of an objection were deemed delayed until a decision is rendered on appeal even in the absence of a stay. Indeed, the entire § 363(m) jurisprudence that has (finally) been called to the attention of this court consists of cases in which the objection was not "finally resolved" on MOAC's reading, because the landlord took an appeal. Yet appeal after appeal from consummated transaction has been dismissed for statutory mootness because of a desire to give "finality" to the judgments of the Bankruptcy Court – judgments that would be interlocutory in nature if they did not "finally resolve" objections. When it comes to statutory mootness under § 363(m), there are "special consequences of denying a stay of a bankruptcy sale" such that I may not review even the most meritorious arguments on appeal if the sale has closed in the interim. *See id.* at 840.

Next, MOAC argues that Transform provided no more or less consideration based on the approval or denial of the assignment of the Mall of America Lease. But as explained above (*see supra*, pp. 23–24), that is simply not so; Holdco made a separate and independent payment, in satisfaction of an obligation imposed by law on Sears, in order to bring about the assignment.

Finally, I have considered the possibility that this case presents the never-before-found and possibly mythical "exception" to the usual rule of statutory mootness that was mentioned in passing in *WestPoint*, 600 F.3d at 249. The *WestPoint* court speculated that there might be "challenges to the Sale Order that are so divorced from the overall transaction that the challenged provision would have affected none of the considerations on which the purchaser relied, thereby allowing a higher court to entertain an appeal from a consummated transaction in the absence of a stay. *Cf. Krebs Chrysler–Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 499 (3d Cir.1998)

(stating that an appeal is not moot under § 363(m) unless the party failed to obtain a stay and reviewing courts can fashion a remedy "that will not affect the validity of the sale")." *Id.*

Unfortunately for MOAC, I cannot conclude that this case would fall within any such exception. Judge Drain did say (also in passing) that § 363(m) probably would not apply to the Assignment Order because MOAC was appealing from just one assignment among 600 that were authorized by the Sale Order. But nothing in the record supports a conclusion that losing the opportunity to sublease the Mall of America space "would have affected none of the considerations on which [Transform/Holdco] relied" in making the deal enshrined in the APA. If, as MOAC insists, Mall of America is a very special mall in the pantheon of American malls, then the opportunity to sublease Sears' very valuable space at this very special mall might well have been integral to any deal Transform was willing to enter. Any "finding" that Transform would have agreed to  the same deal, on the same terms memorialized in the Sale Order, without gaining the ability to sublease the Mall of America space would be pure conjecture on my part. There was no hearing at which evidence was adduced on that issue; and it is not a conclusion one can reach simply because the Mall of America lease is but one among 600.

So either the Assignment Order brought about a § 363(m) sale, or it is protected by virtue of its connection to the APA and the Sale Order. Either way, Transform wins.

I am not suggesting that MOAC needed to obtain a stay of the actual Sale Order at the time it was entered. It could not possibly have done so, since at that point no one knew to whom the Mall of America Lease might be designated, so there would have been no basis on which to object. But Sears' assignment of the Mall of America Lease to Leaseco in the Assignment Order is protected by § 363(m), because, per the terms of the APA, the Assignment Order effected a sale (a transfer for consideration) of that lease, as authorized by the Sale Order. If MOAC had obtained

a stay of the Assignment Order from Judge Drain, we would not be here today. And if MOAC had

asked this court to impose a stay prior to the consummation of the assignment, we might not be

here today.[10] But it did not.

It is, therefore, with deep regret that I grant the motion for rehearing and, on rehearing,

dismiss MOAC's appeal as statutorily moot. That necessitates the vacatur of this court's decision

on appeal.

## CONCLUSION

For the reasons stated above, Transform's motion for rehearing is GRANTED. On

rehearing, this Court concludes that it lacks appellate jurisdiction over MOAC's appeal because it

is statutorily moot under § 363(m). Therefore, this court's decision on appeal at Dkt. No. 26 is

VACATED and MOAC's appeal at Dkt. No. 1 is DISMISSED.

This constitutes a written opinion and order of the court. The Clerk of Court is directed to

close the motion at Dkt. No. 29.

Dated:  May 11, 2020

New York, New York

_____

                        Chief Judge

BY ECF TO ALL PARTIES

---

[10] Obviously, I cannot go back in time and say with certainty what ruling would have issued if MOAC had sought a stay pending appeal back in September of last year. Other landlords, such as the landlord in Weingarten, have tried and failed to obtain stays pending appeal in similar circumstances. For all I know, it was already too late by the time MOAC filed its notice of appeal. However, I certainly cannot say that I absolutely would have denied any such application.

# Exhibit 3

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

**Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

### MOTION INFORMATION STATEMENT

Docket Number(s): 20-1846(L), 20-1953(XAP)  _____ Caption [use short title] _____

Motion for: Stay of Issuance of Mandate

_____

_____

Set forth below precise, complete statement of relief sought:

Appellant/Cross-Appellee MOAC Mall Holdings LLC requests

that this Court stay the issuance of the mandate pending

the filing and disposition of a petition for a writ of certiorari

in the Supreme Court of the United States pursuant to

Fed. R. App. 41 (d).

MOAC Mall Holdings LLC v. Transform Holdco L

_____

MOVING PARTY: MOAC Mall Holdings LLC        OPPOSING PARTY: Transform Holdco LLC

☐ Plaintiff            ☐ Defendant

☑ Appellant/Petitioner  ☐ Appellee/Respondent

MOVING ATTORNEY: Daniel A. Lowenthal        OPPOSING ATTORNEY: Richard A. Chesley

[name of attorney, with firm, address, phone number and e-mail]

Patterson Belknap Webb & Tyler LLP        DLA Piper LLP (US)

1133 Avenue of the Americas, New York, NY 10036   1251 Avenue of the Americas, New York, NY 10020

212-336-2000, dalowenthal@pbwt.com        212-335-4500, richard.chesley@dlapiper.com

Court- Judge/ Agency appealed from: United States District Court, S.D.N.Y., Hon. Colleen McMahon, Chief Judge

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes   ☐ No (explain): _____
_____

Opposing counsel's position on motion:
☐ Unopposed  ☑ Opposed  ☐ Don't Know
Does opposing counsel intend to file a response:
☑ Yes   ☐ No   ☐ Don't Know

FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:

Has this request for relief been made below?   ☐ Yes ☑ No
Has this relief been previously sought in this court?  ☐ Yes ☑ No
Requested return date and explanation of emergency: _____
_____
_____
_____

Is oral argument on motion requested?   ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?   ☑ Yes ☐ No If yes, enter date: Appeal was heard on April 30, 2021

Signature of Moving Attorney:

/s/ Daniel A. Lowenthal        Date: 01/06/2022   Service by: ☑ CM/ECF   ☐ Other [Attach proof of service]

Form T-1080 (rev.12-13)

# 20-1846(L)

## 20-1953 (XAP)

IN THE

# United States Court of Appeals
# for the Second Circuit

◆◆

IN RE: SEARS HOLDINGS CORPORATION,

*Debtor*

◆◆

MOAC MALL HOLDINGS LLC,

*Appellant-Cross-Appellee,*

v.

TRANSFORM HOLDCO LLC,

*Appellee-Cross-Appellant,*

On Appeal from the United States District Court
for the Southern District of New York

---

## MOTION OF APPELLANT-CROSS-APPELLEE TO STAY THE ISSUANCE OF THE MANDATE

---

THOMAS J. FLYNN
LARKIN HOFFMAN DALY & LINDGREN LTD.
8300 Norman Center Drive, Suite 1000
Minneapolis, Minnesota 55437
(952) 835-3800
tflynn@larkinhoffman.com

DAVID W. DYKHOUSE
DANIEL A. LOWENTHAL
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000
dwdykhouse@pbwt.com
dalowenthal@pbwt.com

*Attorney for Appellant-Cross-Appellee*

## DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellant/Cross-Appellee MOAC Mall Holdings LLC submits this corporate disclosure statement that it is a wholly owned subsidiary of Mall of America Company LLC. There is no publicly held corporation that owns 10% or more of the stock in either of these companies or any of their affiliates.

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ...................................................................i

TABLE OF AUTHORITIES .................................................................iii

INTRODUCTION ....................................................................................1

PROCEDURAL AND FACTUAL BACKGROUND ...............................3

     A.    GENERAL BACKGROUND ...................................................3

     B.    BANKRUPTCY COURT PROCEEDINGS...........................4

     C.    DISTRICT COURT FIRST DECISION ON APPEAL............5

     D.    DISTRICT COURT STAY ORDER AND THE
           PARTIES' PRESERVATION OF STATUS QUO ..................6

     E.    DISTRICT COURT SECOND DECISION ON APPEAL.......7

     F.    SECOND CIRCUIT APPEAL..................................................7

     G.    TRANSFORM'S BANKRUPTCY COURT MOTION ............8

ARGUMENT ...........................................................................................9

I.    MOAC'S PETITION FOR CERTIORARI PRESENTS A
     SUBSTANTIAL QUESTION FOR SUPREME COURT
     REVIEW. .....................................................................................10

     A.    Supreme Court Review Is Warranted to Resolve a
           Circuit Split. ........................................................................11

     B.    Supreme Court Review Also Is Warranted To Decide
           Under What Circumstances Section 363(m) Applies. ..........14

II.    THERE IS GOOD CAUSE FOR A STAY. ....................................16

III.    ALTERNATIVE RELIEF..............................................................20

CONCLUSION ......................................................................................20

CERTIFICATE OF COMPLIANCE......................................................22

# TABLE OF AUTHORITIES

**Cases**

*Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) ........................................... 14

*Brown v. Ellman (In re Brown)*, 851 F.3d 619 (6th Cir. 2017) ............... 12

*Burlington Northern R.R. v. Brotherhood of Maint. of Way Emps.*,
    481 U.S. 429 (1987) ............................................................................ 12

*Hollingsworth v. Perry,* 558 U.S. 183 (2010) ............................. 11, 16, 19

*In re Adelphia Commc'ns Corp.*, 361 B.R. 337 (S.D.N.Y. 2007) ............. 17

*In re Energy Future Holdings Corp.*, 949 F.3d 806
    (3d Cir. 2020) ................................................................................. 11, 16

*Pinnacle Restaurant at Big Sky, LLC v. CH SP Acquisitions,
    LLC (In re Spanish Peaks Holdings II, LLC)*, 872 F.3d 892
    (9th Cir. 2017) .................................................................................... 12

*Reynolds v. Servisfirst Bank (In re Stanford)*, 17 F.4th 116
    (11th Cir. 2021) .................................................................................. 12

*Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133 (2d Cir. 1986),
    *rev'd on other grounds*, 481 U.S. 1 (1987) ........................................ 17

*Trinity 83 Dev. Co., LLC v. ColFin Midwest Funding, LLC*, 917 F.3d
    599 (7th Cir. 2019) ............................................................................. 12

*Tze Wung Consultants, Ltd. v. Bank of Baroda (In re
    Indu Craft, Inc.)*, 749 F.3d 107 (2d. Cir. 2014) ................................. 13

**Statutes**

11 U.S.C. § 363 ........................................................................... passim

11 U.S.C. § 365 ............................................................................. 6, 16

**Rules**

Fed. R. App. P. 41 ...................................................................... 1, 9, 20

## INTRODUCTION

Appellant/Cross-Appellee MOAC Mall Holdings LLC ("MOAC") in accordance with Federal Rule of Appellate Procedure 41(d)(1) moves to stay this Court's mandate pending the filing and disposition of a petition for a writ of certiorari in the Supreme Court of the United States.

At issue in this case is the assignment of the lease for the Sears anchor tenant space at Mall of America to Appellee/Cross-Appellant Transform Holdco LLC ("Transform"). After the bankruptcy court authorized the assignment, the district court first vacated the bankruptcy court's authorizing order. The district court then granted Transform's motion for rehearing and vacated its prior order after finding that section 363(m) of title 11 of the United States Code (the "Bankruptcy Code") deprived it of jurisdiction to hear the appeal. This Court affirmed the district court in a summary order and judgment dated December 17, 2021 (the "Decision"). MOAC intends to file a petition for a writ of certiorari with the Supreme Court for review of the Decision.

Up to this point, the parties agreed to, and did in fact, preserve the status quo during the appeal process. The parties stipulated to a stay order in the district court that preserved the status quo during the

pendency of the appeal until this Court issues its mandate. Now, however, even before the mandate has issued, Transform has already started the process to upend the status quo and irreparably injure MOAC in apparent anticipation of the stay expiring upon issuance of the mandate. Transform executed a sublease with a subtenant, the effectiveness of which was delayed by a "litigation contingency," and has asked the bankruptcy court to enforce the order presently on appeal to "allow the Sublease to proceed," which, in Transform's view, would "end the matter once and for all."

This case presents the axiomatic circumstance in which a stay of the mandate is warranted. There is a circuit split of authority as to whether § 363(m) provides a jurisdictional bar to hear appeals absent a stay of the underlying order. The Decision relies on this Court's "binding precedent in *In re WestPoint Stevens, Inc.*, under which § 363(m) deprived the District Court of appellate jurisdiction." (Decision at 10.) Several Circuits, however, reject this Court's characterization of § 363(m) as a jurisdictional bar. The parties here have already agreed to a stay that remains in place until the mandate is issued, and by issuing a stay of the mandate, this Court will conclusively preserve the Supreme Court's

2.

ability to address a critically important question concerning rights to appellate review.

Not only will MOAC's petition "present a substantial question," there also is "good cause for a stay" to prevent Transform from causing irreparable injury by proceeding with a sublease before the Supreme Court has a chance to even consider a certiorari petition.

Accordingly, MOAC respectfully requests that this Court stay the mandate pending the filing and disposition of MOAC's petition for a writ of certiorari.[1]

## PROCEDURAL AND FACTUAL BACKGROUND

### A. GENERAL BACKGROUND

This case arises from the attempt by Chapter 11 debtor Sears Holdings Corporation to assign its lease at Mall of America to Transform.[2] MOAC, the owner of the property, objected to the assignment.

---

[1] MOAC notified Transform's counsel of its intent to file this motion, and Transform's counsel indicated that Transform opposes this motion and will submit an opposition.

[2] "Transform" refers collectively to Transform Holdco LLC and its affiliates, including Transform Leaseco LLC, to which Sears assigned the MOAC Lease.

MOAC signed the lease (the "MOAC Lease") with Sears in 1991 for premises (the "Leased Premises") in one of four anchor buildings. (A-93-173.) As an anchor space, the Leased Premises is key to Mall of America's success, and any failure to replace Sears with a tenant that can draw tenants to the shopping center in the same way as Sears of 1991 would threaten the viability of Mall of America. (*See generally*, Bky. ECF No. 4875.)

### B.   BANKRUPTCY COURT PROCEEDINGS

In Sears's Chapter 11 bankruptcy case, the bankruptcy court approved Transform's purchase of substantially all of Sears's assets through a sale under 11 U.S.C. § 363. ("Sale Order," A-10–92.) The Sale Order included Transform's right to designate and seek assignment of approximately 600 leases, including the MOAC Lease, from Sears. (SPA-87.)

Two months later, Transform designated the MOAC Lease for proposed assignment. (Bky. ECF No. 3298.) MOAC objected to this assignment on numerous grounds. (*See generally* Bky. ECF No. 4889 (summarizing MOAC's objections).) After an evidentiary hearing on MOAC's objections (A-454–558), the bankruptcy court overruled MOAC's

objections and issued an order that approved the lease assignment to Transform (the "Assignment Order") (SPA-65–85).

Out of an abundance of caution, MOAC filed a motion to stay the Assignment Order pending appeal (Bky. ECF No. 5110) along with its timely notice of appeal (A-432–34). Transform objected to MOAC's request for a stay, arguing that it was not needed because the lack of a stay order does not affect an appeal, and there was, therefore, no risk that MOAC's appeal would be rendered moot. (*See* Bky. ECF No. 5152 at 11–14.)

At the bankruptcy court's hearing on MOAC's stay motion, Transform again reiterated that failure to obtain a stay does *not* render the appeal moot, and that § 363 (m) is in no way implicated. (A-442.) The bankruptcy judge agreed with Transform, stating, "I can't imagine 363(m) as far as the sale is concerned applying here." (A-442). Ultimately, the bankruptcy court denied MOAC's request for a stay. (A-452–53.)

## C. DISTRICT COURT FIRST DECISION ON APPEAL

MOAC timely appealed the Assignment Order to the United States District Court for the Southern District of New York. After briefing and oral argument, the district court vacated the Assignment Order, holding

5.

that the assignment violated § 365 (b)(3)(A) of the Bankruptcy Code. ("First Decision on Appeal," SPA-86–128).

### D. DISTRICT COURT STAY ORDER AND THE PARTIES' PRESERVATION OF STATUS QUO

Shortly after the district court entered the First Decision on Appeal, at Transform's request, and with MOAC's consent, the district court entered an order (the "Stay Order") approving a stipulation whereby both sides agreed to refrain from taking certain actions while the case is being appealed. (S.D.N.Y. ECF No. 28.) The Stay Order, among other things, restricted Transform as follows:

> [U]ntil the termination of the stay, Transform shall not sublease or enter into any similar agreement or contract related to any of the property at the Mall subject to the Lease, or otherwise voluntarily take or induce any out-of-court action that could in any way impair MOAC's ability to vindicate its position in these proceedings, including on further appeal, without written consent of MOAC and its counsel of record. Transform will not take any out-of-court action that might cause MOAC's position on appeal to be mooted.

(*Id.* at ¶ 3.) The parties agreed that the Stay Order would remain in place "if an appeal is taken" until "the sending down of the mandate of the Second Circuit Court of Appeals." (*Id.* at ¶ 5.)

6.

### E.   DISTRICT COURT SECOND DECISION ON APPEAL

The day after the Stay Order was entered, Transform filed a motion
for rehearing, arguing for the first time that the district court lacked
jurisdiction over the appeal of the Assignment Order as a result of § 363
(m) because the Assignment Order was not stayed pending appeal,
directly contrary to its prior representations to the bankruptcy court. (A-
611–26; SPA-2.)

Following additional briefing, the district court issued its Order
Granting Transform Holdco LLC's Motion for Rehearing, and on
Rehearing Vacating the Court's Original Decision on Appeal (the
"Vacating Order"). (SPA-1–30.) In the Vacating Order, the district court
"with great regret" held that "[t]he decision on appeal is vacated, and
MOAC's appeal is dismissed as statutorily moot." (SPA-3.) The district
court's ruling was based on its finding that § 363 (m) applied to the
Assignment Order and that it was a jurisdictional provision and, thus,
could not be waived. (SPA-13–16.)

### F.   SECOND CIRCUIT APPEAL

MOAC appealed to this Court, arguing, among other things, that the
district court erred because: (i) § 363 does not apply to the Assignment

Order, and (ii) even if it did, § 363 (m) is not jurisdictional and, therefore, waiver or judicial estoppel overcomes its effect. (A-659–63.)

On December 17, 2021, this Court entered the Decision in which it affirmed the Vacating Order. The Court first affirmed the district court's "threshold" finding that § 363 (m) applied to the Assignment Order. (Decision at 7-10.) The Court then ruled that its "binding precedent" foreclosed MOAC's argument that Transform waived its ability to rely on § 363 (m) or is estopped from doing so. (*Id.* at 10.) Specifically, the Court relied on its prior holdings, including *In re WestPoint Stevens, Inc.*, 600 F.3d 231 (2d Cir. 2010), which held that § 363 (m) deprived the district court of appellate jurisdiction, to conclude in this case that "the District Court had no authority to reverse or modify a sale order in a way that affects the validity of a § 363 sale, regardless of the merit of the petitioner's appeal." (Decision at 11.)

MOAC intends to file a petition for certiorari with the Supreme Court within the time period allowed by Supreme Court Rule 13.

### G.  TRANSFORM'S BANKRUPTCY COURT MOTION

On January 4, 2022, two days prior to the filing of this motion, Transform filed a motion in the bankruptcy court. ("Bankruptcy Motion,"

attached hereto as Exhibit A, Bky. ECF No. 10194.) In the Bankruptcy

Motion, Transform states that it has executed a sublease, which includes

a litigation contingency that must be satisfied before the sublease

becomes effective. (*Id.* at ¶ 23.) Transform asserts that "the Second

Circuit's ruling [is] final in all respects." (*Id.* at ¶ 18.) Accordingly,

Transform asks the bankruptcy court to hold that the sublease's

"litigation contingency provisions have been met," which would "allow

the Sublease to proceed." (*Id.* at ¶ 29.) According to Transform, such a

ruling from the bankruptcy court would "end the matter once and for all"

and would "bring this years-long litigation to an end and give the parties

. . . finality." (*Id.* at ¶ 48.)

## ARGUMENT

Federal Rule of Appellate Procedure 41(d)(1) authorizes an appellate

court "to stay the mandate pending the filing of a petition for a writ of

certiorari in the Supreme Court" if the motion "show[s] that the petition

would present a substantial question and that there is good cause for a

stay." To obtain a stay, the moving party need not show that reversal on

the merits is probable; rather, the moving party will carry its burden if

there is a "fair" prospect of reversal. *Rostker v. Goldberg*, 448 U.S. 1306,

1309 (1980). As long as the question presented is "fairly debatable," a stay is appropriate. *Bowen v. Kendrick*, 483 U.S. 1304, 1305 (1987). A stay is particularly appropriate here in light of the circuit split of authority, which by itself creates a "fairly debatable" issue that is ripe for Supreme Court review.

## I.   MOAC'S PETITION FOR CERTIORARI PRESENTS A SUBSTANTIAL QUESTION FOR SUPREME COURT REVIEW.

MOAC's petition for certiorari will present a "substantial question" for Supreme Court review. The Supreme Court will grant a petition for a writ of certiorari "only for compelling reasons," which may include when "a United States court of appeals has entered a decision in conflict with the decision of another United States court of appeals on the same important matter" or when "a United States court of appeals has decided an important question of federal law that has not been, but should be, settled by this Court." Sup. Ct. R. 10(a), (c).

Both of those circumstances are present in this case. MOAC respectfully submits that there is "a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari" and "a fair prospect that a majority of the Court will vote to

10.

reverse the judgment below." *See Hollingsworth v. Perry,* 558 U.S. 183, 190 (2010) (per curiam).

### A. Supreme Court Review Is Warranted to Resolve a Circuit Split.

The district court in its Vacating Order held that it was "constrained" by the Second Circuit's interpretation of § 363 (m) "as a jurisdiction-depriving statute." (SPA-15.) Likewise, this Court's Decision rested on this Court's "binding precedent" that holds that "§ 363 (m) deprived the District Court of appellate jurisdiction." (Decision at 10-11.) Accordingly, this Court held that neither waiver nor judicial estoppel can overcome § 363 (m). (Decision at 10.)

The Second Circuit's position that § 363 (m) is "jurisdictional," however, directly conflicts with other Circuits that reject Section 363(m) as a jurisdictional bar. For instance, the Third Circuit held,

> But in our Circuit, "mootness" is a bit of a misnomer because we have construed § 363 (m) as a constraint *not on our jurisdiction,* but *on our capacity to fashion relief.*

*In re Energy Future Holdings Corp.,* 949 F.3d 806, 820 (3d Cir. 2020) (emphasis added). Likewise, the Seventh Circuit explained that § 363 (m) can provide a valid defense but is not technically a mootness doctrine merely because it proscribes particular relief:

11.

> Many a statute forecloses particular relief. Think
> of the Norris-LaGuardia Act, 29 U.S.C. § 101,
> which prohibits the use of injunctions in some
> labor disputes. When a court concludes that the
> Act applies, it dismisses the suit but does not
> declare it moot.

*Trinity 83 Dev. Co., LLC v. ColFin Midwest Funding, LLC*, 917 F.3d 599,

602 (7th Cir. 2019) (citing *Burlington Northern R.R. v. Brotherhood of

Maint. of Way Emps.*, 481 U.S. 429 (1987)). Other Circuits also reject the

interpretation that § 363 (m) is a jurisdictional bar. *See, e.g., Pinnacle

Restaurant at Big Sky, LLC v. CH SP Acquisitions, LLC (In re Spanish

Peaks Holdings II, LLC)*, 872 F.3d 892, 896 n.4 (9th Cir. 2017) (rejecting

the argument that the appeal was moot because "[b]y its terms, section

363(m) preserves *the validity* of a sale challenged on appeal.") (emphasis

extant); *Brown v. Ellman (In re Brown)*, 851 F.3d 619, 623 (6th Cir. 2017)

(requiring "parties alleging statutory mootness under § 363 (m) to prove

that the reviewing court is unable to grant effective relief without

affecting the validity of the sale," a standard which allows appellant to

"contest errors of law made by the bankruptcy court"); *Reynolds v.

Servisfirst Bank (In re Stanford)*, 17 F.4th 116, 122 (11th Cir. 2021)

("Statutory mootness under 363(m), however *is not jurisdictional*," even

though courts on appeal "are barred by the Code from affording the relief an appellant seeks.") (emphasis added).

The circumstances of this case present a stark example of the severe and inequitable consequences of interpreting § 363 (m) as a jurisdictional bar: "regardless of the merit of [MOAC's] appeal," this Court's precedent "foreclosed" MOAC's arguments that Transform "waived its ability to rely on § 363 (m) or is estopped from doing so." (Decision at 10-11.)

Not only does the Second Circuit's holdings that § 363 (m) is a jurisdictional bar reflect its split with the other Circuits, but if the Supreme Court were to grant certiorari, there is more than a "fair prospect" that the Court would reverse the Second Circuit's determination.

Construing § 363 (m) as "jurisdictional" is contrary to this Court's instruction, following Supreme Court precedent, that unless a statute "clearly states that a threshold limitation on a statute's scope shall count as jurisdictional," then "courts should treat the restriction as nonjurisdictional in character." *Tze Wung Consultants, Ltd. v. Bank of Baroda (In re Indu Craft, Inc.)*, 749 F.3d 107, 112 (2d. Cir. 2014) (emphasis added) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515–16

(2006)). Here, not only does § 363 (m) fail to "clearly state" that its scope is jurisdictional, but its text actually presupposes jurisdiction for "reversal or modification on appeal." 11 U.S.C. § 363 (m).

Moreover, the Second Circuit's precedent on which the Decision is based regarding the "jurisdictional" impact of § 363 (m) does not reveal a considered approach to reach that conclusion. In fact, none of the Second Circuit precedent on which the Decision rests discusses the distinction between constraints on relief and limits on jurisdiction, explains any basis for considering the two concepts as synonymous, or analyzes whether Congress intended for the statute to be treated as jurisdictional.

In sum, "there is a reasonable probability [the Supreme Court] will grant certiorari" to resolve the Circuit split and "a fair prospect that the Court will then reverse the" determination that Section 363(m) is jurisdictional.

## B. Supreme Court Review Also Is Warranted To Decide Under What Circumstances Section 363(m) Applies.

Before reaching its determination that § 363 (m) deprives the district court of appellate jurisdiction, this Court agreed with the district court's "threshold requirement" that § 363 (m) actually applied to the Assignment Order. (Decision at 8.) In doing so, the Court held that the

14.

language in the Sale Order and Assignment Order "supports the conclusion that the successful assignment of the leases," including the MOAC Lease, "was integral to the Sale Order." (*Id.*)

An important question that has not been, but should be, settled by the Supreme Court is whether the limitations of § 363 (m) of the Bankruptcy Code apply to the assignment of a lease authorized under § 365, as specifically at issue in this case, or, more generally, to any other transaction that is not a sale or lease under § 363(b) or (c).

In this case, the bankruptcy court, the district court, and this Court each analyzed the issue differently and came to conflicting conclusions. The bankruptcy court interpreted its own Sale Order and Assumption Order and concluded, "I can't imagine 363(m) as far as the sale is concerned applying here." (A-441–42.) Ultimately, this Court affirmed the district court's determination "that the assignment of the lease to Leaseco was integral to the sale of Sears's assets to Transform" based on the language of the Sale Order and Assignment Order (Decision at 7-8.)

Neither the district court nor the Second Circuit, however, answered the critical inquiry that is indicated by the statutory text of § 363 (m): would the reversal or modification of the Assignment Order "affect the

15.

validity of" the sale authorized by the Sale Order. *See* 11 U.S.C. § 363 (m); *cf. In re Energy Future*, 949 F.3d at 820-21 (Section 363(m) "by its terms forbids only those appeals that 'affect the validity of a sale," not all those that call into question any aspect of such a sale.")

At a minimum, as the differing standards applied by the three courts in this case illustrate, this case presents a substantial question to the Supreme Court, namely, under what circumstances do the provisions of § 363 (m) apply to a transaction, such as the assignment of the MOAC Lease, that is not by its terms a sale or lease under § 363.

## II.   THERE IS GOOD CAUSE FOR A STAY.

There is good cause to stay the mandate pending Supreme Court review and disposition of the substantial questions that MOAC intends to raise in a petition for a writ of certiorari.

In order to show good cause for a stay, an applicant must show "a likelihood that irreparable harm will result from the denial of a stay." *Hollingsworth*, 558 U.S. at 190.

Here, the irreparable harm to MOAC is evident: even *before* the mandate issues, Transform has made clear that it is intent on consummating the sublease of the Leased Premises before MOAC's

16.

appeal of the Decision is final, which, in Transform's view, would "end the matter once and for all."

The "loss of appellate rights is a quintessential form of prejudice." *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 348 (S.D.N.Y. 2007) (internal quotation and citations omitted). Accordingly, "where the denial of a stay pending appeal risks mooting *any* appeal of *significant* claims of error, the irreparable harm requirement is satisfied." *Id.* at 349 (emphasis in original).

In addition to the loss of appellate rights, one of the key concerns warranting a stay pending appeal is whether, absent a stay, the appellant "can be restored to the *status quo ante* if the appeal should result in a reversal in his favor. The irreparability of the harm increases in proportion to its irreversibility." *Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1153 (2d Cir. 1986), *rev'd on other grounds*, 481 U.S. 1 (1987).

Here, the "likelihood that irreparable harm will result" is starkly illustrated by Transform's Bankruptcy Motion. In that Motion, Transform ignores the fact that the mandate has not issued, fails to mention, as it well knew, that MOAC was seeking a stay of the mandate, and erroneously claims that the Decision is "final in all respects." (Ex. A

17.

at ¶ 18.) According to Transform's representations to the bankruptcy court, "Transform prevailed in the assignment litigation," and therefore the bankruptcy court should enter an order to "allow the Sublease to proceed." (*Id.* at ¶ 29.) Doing so, as Transform puts it, would "end the matter once and for all." (*Id.* at ¶ 47.)

The likelihood of irreparable harm is clear. Absent a stay of the mandate, Transform will press forward to effectuate the sublease in order to, in its words, "bring this years-long litigation to an end and give the parties the finality they need to conduct their affairs." (*Id.* at ¶ 48.) In fact, Transform already has sought to do just that even *before* the mandate has issued.

Absent a stay of the mandate, Transform will take actions that would upend the status quo that the parties had agreed to preserve until the matter is finally resolved. Those actions, as Transform states, would be an effort to moot MOAC's appellate rights, including its right to petition the Supreme Court for a writ of certiorari and to prosecute its appeal to finality.

Moreover, Transform's attempted sublease of the Leased Premises as described in the Bankruptcy Motion would alter the status quo in

18.

irreversible ways. For instance, any tenant that was disharmonious with the character of its Mall of America space would significantly reduce the value of the real estate of its part of Mall of America, thereby adversely impacting MOAC's ability to attract tenants and harming Mall of America's reputation and financial performance.

While MOAC has established the likelihood of irreparable harm, "[i]n close cases," a court may "balance the equities and weigh the relative harms to the applicant and respondent." *Hollingsworth*, 558 U.S. at 190.

Any claim by Transform that it would be harmed by a stay is belied by its actions. Indeed, Transform itself has recognized the need to maintain the status quo during the pendency of this dispute, including the resolution of appeals. Transform already has consented to a stay during which neither side would sublease the Leased Premises or "voluntarily take or induce any out-of-court action that could in any way impair" the opponent's "ability to vindicate its position in these proceedings, including on further appeal." (Stay Order, S.D.N.Y. ECF No. 28 at ¶¶ 3-4.) That consensual stay remains in effect, by its terms, until this Court sends down its mandate. Indeed, even in entering into the sublease that is the subject of its new Bankruptcy Motion, Transform

19.

included a "litigation contingency" that evidences its intent to preserve the status quo until the appeal process concludes. Where Transform errs is in requesting that the bankruptcy court determine that the litigation contingency has been met because "the Second Circuit's ruling [is] final in all respects." The Decision is not final, and the mandate should be stayed so it does not become final pending Supreme Court review.

This Court should stay the mandate to allow MOAC the "ability to vindicate its position in these proceedings," including by seeking a writ of certiorari.

## III.   ALTERNATIVE RELIEF

In the event the Court does not fully grant the requested stay as allowed by Federal Rule of Appellate Procedure 41(d)(2), MOAC respectfully requests that the Court grant a temporary stay of the mandate for 14 days to allow a short time for MOAC to promptly present an application for a stay to the Supreme Court, as permitted by Supreme Court Rule 23.

## CONCLUSION

Because MOAC's petition presents a substantial question and because MOAC has shown good cause, MOAC respectfully requests that the Court grant this motion to stay the mandate pending the filing and

20.

disposition of a petition for a writ of certiorari in the Supreme Court. In the alternative, MOAC respectfully requests that the Court stay the mandate for 14 days to permit MOAC time to file an application for stay with the Supreme Court.

Respectfully submitted,

Dated: January 6, 2022

*/s/ Daniel A. Lowenthal*
David W. Dykhouse
Daniel A. Lowenthal
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York  10036-6710
(212) 336-2000
dwdykhouse@pbwt.com
dalowenthal@pbwt.com


Thomas J. Flynn
Larkin Hoffman Daly & Lindgren, Ltd.
8300 Norman Center Drive, Suite 1000
Minneapolis, Minnesota  55437-1060
(952) 835-3800
tflynn@larkinhoffman.com

*Attorneys for MOAC Mall Holdings LLC*

21.

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(a) because it contains 4,091 words, excluding the parts exempted by Fed. R. App. P. 32(f) and 27(a)(2)(B).

This motion also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Microsoft Word in Century 14-point font, a proportionally-spaced typeface.

*/s/ Daniel A. Lowenthal*
Daniel A. Lowenthal

4857-6279-1943, v. 5