**DLA PIPER LLP (US)**
Richard A. Chesley
R. Craig Martin
Rachel Ehrlich Albanese
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

*Counsel to Transform Holdco LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SEARS HOLDINGS CORPORATION, *et al.,*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 18-23538 (RDD)<br><br>(Jointly Administered) |

**REPLY IN SUPPORT OF MOTION TO ENFORCE THE ORDER (I) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF LEASE WITH MOAC MALL HOLDINGS LLC AND (II) GRANTING RELATED RELIEF**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

RESPONSE............................................................................................................................. 2

I.  The Bankruptcy Court Maintains Jurisdiction to Enforce the Order................................. 2

    A.  The Appeal is Final, and the Ministerial Task of a Mandate Does Not Change
        That ......................................................................................................................... 2

    B.  MOAC's Other Jurisdictional Claims Should be Rejected..................................... 6

II. MOAC's Substantive Arguments Are Without Merit ......................................................... 7

    A.  The Sublease Requirements Have Been Met.......................................................... 7

    B.  The District Court Order is Inapplicable ............................................................... 7

    C.  MOAC Has Improperly Interfered with the Lease ................................................ 8

CONCLUSION....................................................................................................................... 8

# TABLE OF AUTHORITIES

**CASES**

*Deep v. Boies*,
   2009 WL 10675920 (N.D.N.Y. Dec. 18, 2009)..................................................................4

*In re Adler, Coleman Clearing Corp.*,
   469 F. Supp. 2d 112 (S.D.N.Y. 2007)..................................................................................4, 5

*In re Whispering Pines Ests., Inc.*,
   369 B.R. 752 (1st Cir. 2007)....................................................................................................3

*Republic Nat. Gas Co. v. Oklahoma*,
   334 U.S. 62 (1948)...............................................................................................................1, 3

*Rife v. Ashcroft*,
   374 F.3d 606 (8th Cir. 2004) ...................................................................................................5

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021)..............................................................................................................6

*United States v. Rodgers*,
   101 F.3d 247 (2d Cir. 1996)............................................................................................2, 3, 4

*Wal-Mart Stores, Inc. v. Rodriguez*,
   322 F.3d 747 (1st Cir. 2003)....................................................................................................8

**OTHER AUTHORITIES**

Fed. R. App. P. 41........................................................................................................................3

Fed. R. Bankr. P. 8005.................................................................................................................5

Fed. R. Bankr. P. 9021.................................................................................................................6

Fed. R. Civ. P. 70.........................................................................................................................6

Transform Holdco LLC (the "Buyer" or "Transform"), for itself and on behalf of its affiliate Transform Leaseco LLC, as buyer of substantially all of the Debtors' assets under a Sale Order (ECF No. 2507),[2] files this reply (the "Reply") in support of its *Motion to Enforce the Order (I) Authorizing the Assumption and Assignment of Lease with MOAC Mall Holdings LLC and (II) Granting Related Relief* (ECF No. 10194) (the "Motion to Enforce") and in response to Mall of America's ("MOAC") *Objection to Motion to Enforce the Order (I) Authorizing the Assumption and Assignment of Lease with MOAC Mall Holdings LLC and (II) Granting Related Relief* (ECF No. 10230) (the "Objection") and respectfully states as follows:

## PRELIMINARY STATEMENT

1. MOAC's chief contention is that the Second Circuit mandate has not yet issued, and thus, the Court cannot consider the enforcement motion. But such a contention represents a fundamental misunderstanding of the function of a mandate. A mandate does not have any independent significance, and the question is whether this Court's enforcement of its order will interfere with an appellate proceeding. The answer is undoubtedly no, because the proceeding is final in all respects, and—even if it were not—the issue before this Court has no bearing on the issues before the Second Circuit.

2. MOAC's argument rests on a sleight of hand, making arguments as if there is a stay of the Second Circuit's *judgment*. But MOAC did not make a motion for that purpose. MOAC did not even file a petition for rehearing. All MOAC did was file a motion to stay the "ministerial" task of entering a mandate, *Republic Nat. Gas Co. v. Oklahoma*, 334 U.S. 62, 68 (1948), which—

---

[2] *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief*, Feb. 8, 2019.

in this case—has no practical effect on anything. Multiple lower courts have considered proceedings where, as here, a judgment has been issued but a mandate had not, and MOAC's attempt to create a *per se* rule otherwise should be rejected.

3.      MOAC's near-exclusive reliance on specious jurisdictional arguments underscores its weakness on the substance. MOAC only addresses the substance by claiming that it has not actually filed any court proceeding to dispute the sublease, and therefore it cannot be interfering with the sublease, but MOAC has disputed the sublease as indicated in the letter it wrote to Transform, which Transform attached as an exhibit to its Motion to Enforce. In that letter, MOAC claimed that, although it would not exercise its right of first refusal with respect to the sublease, it did in fact object to it. MOAC's claim that it has not interfered with the sublease ignores the business realities on the ground and should be rejected — MOAC knows precisely what it is doing and its actions are designed to prevent Transform from obtaining the value and benefit of the Lease even though it has now fully complied with the Assignment Order. This Court should grant the Motion to Enforce to ensure Transform obtains the benefit of the Sale Order and the Assignment Order.

## RESPONSE

### I.    The Bankruptcy Court Maintains Jurisdiction to Enforce the Order

#### A.    The Appeal is Final, and the Ministerial Task of a Mandate Does Not Change That

4.      MOAC relies primarily on an argument that an appeal divests a court of jurisdiction. Opp. 5–7. MOAC makes a *per se* argument, claiming that a "bankruptcy court, like a district court, is divested of jurisdiction over the aspects of the bankruptcy case that are involved in the appeal." Opp. 5. But the "divestiture of jurisdiction rule is, however, not a *per se* rule." *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996). "[I]ts application is guided by concerns

of efficiency and is not automatic" because a *per se* "rule is subject to abuse." *Id*. Even so, the flexible rule only applies where the issue before the bankruptcy court would affect the issues on appeal. And even then, the ordered remedy is only limited so as not to "directly affect the outcome of the appeal." *In re Whispering Pines Ests., Inc.*, 369 B.R. 752, 761 (1st Cir. 2007). Transform's motion cannot possibly interfere with the appeal process for two reasons.

5.  First, the appeal is done. Judgment was entered, and the deadline to move for rehearing of that judgment has long since passed. MOAC's motion thus relies on a faulty premise: that its desperate request for a stay of the mandate pending Supreme Court review somehow makes the appeal "pending." But the mandate is simply a ministerial task. *See Republic Nat. Gas Co. v. Oklahoma*, 334 U.S. 62, 68 (1948) (calling a mandate "a ministerial act" that does not affect finality of judgment). There is no judicial determination required to cause a mandate to issue, as the issuance of the mandate is an act taken by the Clerk's office, merely by certifying the judgment entered. *See* Fed. R. App. P. 41. Thus, MOAC's reliance on such a flimsy ministerial task underscores the weakness of its position. For MOAC's claim to hold water, it would have needed to seek a stay of the *judgment*, which it did not request, and the deadline for which has long passed.

6.  Second, even if the pending motion had any effect on the judgment, the issue before this Court has nothing to do with the appeal. The appeal concerns whether § 363(m) divests an appellate court of jurisdiction. The present motion concerns whether MOAC is violating this Court's non-interference provision of the Assignment Order. The questions presented in Transform's motion were never touched on by the district court or the appellate court — the events giving rise to the motion even post-dated the Second Circuit oral argument.

7.  Multiple lower courts have held that they have jurisdiction to consider questions after the judgment but before the mandate. The Southern District of New York held as much,

3

holding that "the clerk's ministerial function of actually entering the mandate" did not bar proceedings at the lower court. *In re Adler, Coleman Clearing Corp.*, 469 F. Supp. 2d 112, 116 n.2 (S.D.N.Y. 2007). Similarly, the Northern District of New York rejected the precise argument MOAC presents here. There, the Court noted that there were "no substantive proceedings pending on appeal, . . . and my research has not revealed any [authority] supporting [the] assertion that a judgment cannot be certified and registered until after a mandate by the Court of Appeals is issued." *Deep v. Boies*, 2009 WL 10675920, at *4 (N.D.N.Y. Dec. 18, 2009). Thus, where the judgment had been issued but the mandate had not, the lower court held that it still could exercise jurisdiction. MOAC cites no case dealing with this world between judgment and mandate that holds otherwise.

8. Moreover, application of the divestiture rule "is guided by concerns of efficiency." *Rodgers*, 101 F.3d at 251. Those efficiency concerns counsel in favor of considering the issue raised by Transform now. Various deadlines are looming, and this litigation has been pending for nearly three years. It is time to end the litigation once and for all. MOAC's desperate attempts to delay ministerial tasks so it can further delay Transform from moving in a subtenant should not get in the way of this Court enforcing its own orders.

9. MOAC conclusorily asserts that Transform's motion "would impermissibly interfere with the appeal process or with the jurisdiction of the appellate court." Opp. at 6. But MOAC does not explain how the motion would interfere with the appeal process. That is because it cannot: the appeal is done and final in all respects, and the pending motion to enforce would have no effect on that appeal, even if it were non-final. Indeed, MOAC's "rigid proposition would run counter to the judicial economy ends that the rule [it] invokes was fashioned to promote, and

4

it would give license for the type of dogmatic formalism and abuse about which the *Rogers* court cautioned." *In re Adler*, 469 F. Supp. 2d at 116.

10. The mandate's primary import is one of timing. For example, some timelines are keyed off the issuance of the mandate. *See*, *e.g.*, *Rife v. Ashcroft*, 374 F.3d 606, 617 (8th Cir. 2004) (keying immigration removal timeframes off issuance of mandate). The mandate can also be relevant in situations where the appellate court reverses the lower court, requiring follow-on proceedings below. But here the mandate simply affirms the District Court, which held it had no jurisdiction to consider any issues related to the Assignment Order; it will not require *anyone* to do *anything*. Thus, MOAC's attempt to hide behind it is all the more nonsensical.

11. Finally, the judge-made divestiture doctrine — encouraging efficiency — cannot give way to Bankruptcy Rule 8005, which provides that "the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest." Fed. R. Bankr. P. 8005. Here, consideration of the motion is expressly allowed by Rule 8005, and the Court need only issue an order that will protect the rights of the parties in interest. And all parties are served by allowing a subtenant to lease the space. Transform gets the value of its lease, and MOAC eliminates the eyesore of an empty anchor tenant. Indeed, MOAC expressed fear of an empty space in its mall (Motion to Enforce at 4, 6)—a fear that, ironically, MOAC itself is bringing to pass through its continued delays.[3]

---

[3] Should the Court believe that it does not have jurisdiction, it can simply hold the decision until after the mandate has issued. But it certainly would not bar the Court teeing up the issue for prompt resolution. *See In re Adler*, 469 F. Supp. 2d at 116 (allowing fulsome briefing before mandate issued).

5

### B. MOAC's Other Jurisdictional Claims Should be Rejected

12. MOAC next claims that there is no case or controversy because "there is no present dispute." Opp. at 8. As MOAC appears to have it, they must physically bar the doors to the store for there to be a case or controversy. But that is not the rule. Transform has been harmed by MOAC's interference with the lease, which violates the terms of the Assignment Order. That alone is enough to satisfy the low level of a case or controversy. *See TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2203 (2021) ("To demonstrate their personal stake, plaintiffs must be able to sufficiently answer the question: 'What's it to you?'"). Beyond assertions, MOAC does not actually explain how the motion here could possibly fail the "case or controversy" requirement. Instead, MOAC's claim here appears to simply be on the merits, claiming that the Court will disagree and find that MOAC has not interfered. But that possibility does not extinguish a case or controversy. And MOAC cites no law to support such a far-flung claim.

13. Indeed, Rule 70 of the Federal Rules of Civil Procedure authorizes this precise type of enforcement motion. It provides that, if "a judgment requires a party . . . to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done — at the disobedient party's expense — by another person appointed by the court."[4] Given that the rules expressly authorize Transform to file the Enforcement Motion, MOAC's thin attempts to argue otherwise should be rejected.

14. MOAC then takes a run at the litigation contingency, claiming that, if this Court determines that the litigation contingency has been met, it would constitute an advisory opinion. But Transform simply proposed that the Court declare the litigation contingency has been met as

---

[4] Bankruptcy Rule 9021 incorporates this rule by reference. *See* Fed. R. Bankr. P. 9021 Advisory Cmte Notes ("[The rule] clarifies the availability of the same remedies for the enforcement of a bankruptcy court judgment as those provided for the enforcement of a district court judgment.").

6

a remedy to cure the ongoing interference by MOAC. Otherwise, this Court would be playing whack-a-mole for months as MOAC thinks up more yet-unseen ways to try to block the sublease. The case or controversy surrounds MOAC's interference with the sublease, with which MOAC has interfered by trying to cloud the provisions of this contingency. This Court can remedy that interference by declaring that the litigation contingency provisions have been met, which will effectively resolve this dispute once and for all.

## II.    MOAC's Substantive Arguments Are Without Merit

### A.    The Sublease Requirements Have Been Met

15.    As an afterthought, MOAC attempts to dispute the substance of the motion, but its sole argument—duplicative of the above points—rings hollow. MOAC claims that the decision is not final under the litigation contingency because of its pending motion to stay the mandate. Opp. at 10. But MOAC has not moved to stay the Second Circuit judgment. It has moved to stay the mandate, which, in the case of a blanket affirmance by the Second Circuit, is a hollow act that has no effect on the validity of the judgment. The judgment is fully in effect, and MOAC's failure to stay the judgment dooms its claim.

### B.    The District Court Order is Inapplicable

16.    MOAC next claims that the District Court's Stay Order — entered following its first opinion — bars this claim. In that order, the District Court said that Transform could not take any action that would render MOAC's appeal moot. But MOAC omits that the order expressly limits that requirement "until any ruling of the Second Circuit Court of Appeals." Ex. 1 ¶ 2. The Second Circuit ruling has already come down, the judgment is final, and there is nothing substantively left for the Second Circuit to do. Thus, this is inapplicable.

7

### C. MOAC Has Improperly Interfered with the Lease

17. MOAC finally claims that, simply because it has declared its objection to the sublease, that it cannot constitute interference because it has not sued in a court. But MOAC well knows that, in business, creating this uncertainty surrounding the sublease will have the very effect of interfering. *See Wal-Mart Stores, Inc. v. Rodriguez*, 322 F.3d 747, 750 (1st Cir. 2003) (recognizing "an interest in ending litigation which has frustrated [a company's] need for business certainty"). MOAC's argument is akin to it saying "one step further and I shoot" and then claiming that there is no interference unless MOAC actually shoots. Such an argument is disingenuous, at best, and should be rejected by this Court.

### CONCLUSION

**WHEREFORE**, Transform respectfully requests that this Court enter the Order and grant such other further relief as appropriate.

Dated: New York, New York
       January 18, 2022

Respectfully submitted,

**DLA Piper LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, NY 10020-1104
Phone: (212) 335-4500
Fax: (212) 335-4501

By: */s/ Richard A. Chesley*
    Richard A. Chesley
    R. Craig Martin
    Rachel Ehrlich Albanese

*Counsel to Transform Holdco LLC*