Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 18-23538-rdd

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   SEARS HOLDING CORPORATION ET AL.,

8

9        Debtors.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                  United States Bankruptcy Court

13                  300 Quarropas Street, Room 248

14                  White Plains, NY 10601

15

16

17                  January 20, 2022

18                  2:10 PM

19

20

21  B E F O R E :

22  HON ROBERT D. DRAIN

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  ART

Page 2

1    HEARING re Status Update on Debtors; Progress Towards

2    Effective Date.

3

4    HEARING re Notice of Hearing on Interim Applications for

5    Allowance of Compensation and Reimbursement of Expenses on

6    January 20, 2022 at 2:00 p.m. (ECF #10171)

7

8    HEARING re Monthly Fee Statement Ninth Interim Fee

9    Application of Prime Clerk LLC, as Administrative Agent to

10   the Debtors, for Services Rendered and Reimbursement of

11   Expenses for the Period from July 1, 2021 through October

12   31, 2021 filed by Prime Clerk, LLC. (ECF #10162)

13

14   HEARING re Application for Interim Professional Compensation

15   /Sixth Interim Fee Application of Henick, Feinstein LLP as

16   Special Conflicts Counsel to the Official Committee of

17   Unsecured Creditors for Allowance of Compensation for

18   Services Rendered and Reimbursement of Expenses for the

19   Period of July 1, 2021 through October 31, 2021

20   for Herrick, Feinstein LLP, Special Counsel, period:

21   7/1/2021 to 10/31/2021, fee:$76,275.00, expenses:

22   $30,428.89. filed by Herrick, Feinstein LLP. (ECF #10156)

23

24

25

Page 3

1    HEARING re Application for Interim Professional Compensation

2    Eighth Joint Application of Paul E. Harner, as Fee Examiner

3    and Ballard Spahr LLP, as Counsel to the Fee Examiner, for

4    Interim Allowance of Compensation for Professional Services

5    Rendered and Reimbursement of Actual and Necessary Expenses

6    Incurred from July 1, 2021 through October 31, 2021 for Fee

7    Examiner, Other Professional, period: 7/1/2021 to

8    10/31/2021, fee:$276793.00, expenses: $0.00. filed by Fee

9    Examiner. (ECF #10161)

10    ·

11    HEARING re Application for Interim Professional

12    Compensation/Ninth Application of Weil, Gotshal & Manges

13    LLP, as Attorneys for the Debtors, for Interim Allowance of

14    Compensation for Professional Services Rendered and

15    Reimbursement of Actual and Necessary Expenses IncmTed from

16    July 1, 2021 through and including October 31, 2021 for

17    Weil, Gotshal & Manges LLP, Debtor's Attorney, period: 7

18    /112021 to 10131/2021, fee:$2,517,997.00, expenses:

19    $148,882.59. filed by Weil, Gotshal & Manges LLP. (ECF

20    #10160)

21

22

23

24

25

Page 4

1    HEARING re Objection to Motion FOR COMPENSATION BY (1) AKIN

2    GUMP HAUER & FIELD LLP [Doc. 10154]; (2) FTI CONSULTING INC.

3    [Doc. 10155]; AND (3) WEIL, GOTSHAL & MANGES LLP [Doc.

4    10160] (related document(s)10160, 10154, 10155) filed by

5    Alexander Tiktin on behalf of Orient Craft Ltd. (ECF #

6    10191)

7

8    HEARING re Application for Interim Professional Compensation

9    // Ninth Interim Fee Application of Akin Gump Strauss Hauer

10   & Feld LLP as Counsel to the Official Committee of

11   Unsecured Creditors for Allowance of Compensation for

12   Services Rendered and Reimbursement of Expenses for the

13   Period of July 1, 2021 Through and Including October 31,

14   2021 for Akin Gump Strauss Hauer & Feld LLP, Creditor Comm.

15   Aty, period: 711/2021 to 1013112021, fee:$839,969.00,

16   expenses: $287,232.21. filed by Akin Gump Strauss Hauer &

17   Feld LLP. (ECF #10154)

18

19   HEARING re Objection to Motion FOR COMPENSATION BY (1) AKIN

20   GUMP HAUER & FIELD LLP [Doc. 10154]; (2) FTI CONSULTING INC.

21   [Doc. 10155]; AND (3) WEIL, GOTSHAL & MANGES LLP [Doc.

22   10160] (related document(s)10160, 10154, 10155) filed by

23   Alexander Tiktin on behalf of Orient Craft Ltd. (ECF #

24   10191)

25

1   HEARING re Application for Interim Professional Compensation

2   // Ninth Interim Application of FTI Consulting, Inc.,

3   Financial Advisor to the Official Committee of Unsecured

4   Creditors of Sears Holdings Corporation, et al. for Interim

5   Allowance of Compensation and Reimbursement of Expenses for

6   the Period from July 1, 2021 Through October 31, 2021 for

7   FTI CONSULTING, INC., Other Professional, period: 7/112021

8   to 1013112021, fee:$266,139.00, expenses: $0.00. filed by

9   FTI CONSULTING, INC. (ECF #10155)

10

11   HEARING re Objection to Motion FOR COMPENSATION BY (1) AKIN

12   GUMP HAUER & FIELD LLP [Doc. 10154]; (2) FTI CONSULTING INC.

13   [Doc. 10155]; AND (3) WEIL, GOTSHAL & MANGES LLP [Doc.

14   10160] (related document(s)10160, 10154, 10155) filed by

15   Alexander Tiktin on behalf of Orient Craft Ltd. (ECF #

16   10191)

17

18   HEARING re Motion for Objection to Claim(s) Number: 20138

19   and 26385 of the North Carolina Department of Revenue (ECF

20   #9985)

21

22   HEARING re Response to Motion (related document(s)9985)

23   filed by Matthew Sommer on behalf of North Carolina

24   Department of Revenue (ECF #10163)

25

Page 6

1    HEARING re Motion to Compel I Motion to Enforce the Order

2    (I) Authorizing Assumption and Assignment of Lease with MOAC

3    Mall Holdings LLC and (II) Granting Related Relief filed by

4    Richard A. Chesley on behalf of Transform Holdco LLC (ECF #

5    10194)

6

7    HEARING re Motion to File Under Seal/ Motion of Transform

8    Holdco LLC for Leave to File Under Seal Portions of

9    Transform Holdco LLC's Motion to Enforce and Accompanying

10   Exhibits filed by Richard A. Chesley on behalf of Transform

11   Holdco LLC. (ECF #10193)

12

13   HEARING re Order to Show Cause signed on 12/28/2021 why an

14   answer with attorney representation has not been filed by

15   Defendant, Grace and Son Construction Company of Greenville,

16   Inc. and why Defendant has not retained counsel to represent

17   it in this adversary proceeding (ECF #7)

18

19   HEARING re Notice of Agenda of Matters Scheduled for Hearing

20   to be Conducted Through Zoom on January 20, 2022 at 2:00

21   p.m.

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

```
 1    A P P E A R A N C E S :

 2

 3    WEIL, GOTSHAL & MANGES LLP

 4         Attorneys for Debtors

 5         767 Fifth Avenue

 6         New York, NY 10153

 7

 8    BY: GARRETT FAIL (TELEPHONICALLY)

 9

10    AKIN GUMP

11         Attorneys for Official Unsecured Creditors Committee

12         1 Bryant Park

13         New York, NY 10036

14

15    BY: SARA BRAUNER (TELEPHONICALLY)

16

17    TARTER KRINSKY DROGIN LLP

18         Attorneys for Orient Craft

19         1350 Broadway

20         New York, NY 10019

21

22    BY:  DAVID WANDER (TELEPHONICALLY)

23

24

25
```

Page 8

1    BALLARD SPAHR LLP

2         Attorneys for Fee Examiner

3         919 Market Street

4         Wilmington, DE 19801

5

6    BY:  TOBEY DALUZ (TELEPHONICALLY)

7

8    SHEPPARD MULLIN

9         Attorneys for Fee Examiner

10        30 Rockefeller Plaza

11        New York, NY 10112

12

13    BY: PAUL HARNER (TELEPHONICALLY)

14

15    QUINN EMANANUEL UEQUHART SULLIVAN, LLP

16        Attorneys for Administrative Claims Representative

17        1300 I Street, NW

18        Washington, DC 20005

19

20    BY: ERIKA MORABITO (TELEPHONICALLY)

21

22

23

24

25

```
 1   DLA PIPER LLP

 2        Attorneys for Transform Holdco LLC

 3        1201 North Market Street

 4        Wilmington, DE 19801

 5

 6   BY:  ROBERT CRAIG MARTIN (TELEPHONICALLY)

 7

 8   LARKIN HOFFMAN LAW FIRM

 9        Attorneys for MOAC Mall Holdings LLC

10        8300 Norman Center Drive

11        Minneapolis, MN 55437

12

13   BY:  GREGORY OTSUKA  (TELEPHONICALLY)

14

15   PATTERSON BELKNAP WEBB TYLER LLP

16        Attorneys for MOAC Mall Holdings LLC

17        1133 Avenue of the Americas

18        New York, NY 10036

19

20   BY:  DAVID DYKHOUSE (TELEPHONICALLY)

21

22

23

24

25
```

1              P R O C E E D I N G S

2          THE COURT:  Okay, good afternoon everyone.  This

3     is Judge Drain.  We're here in In re Sears Holdings

4     Corporation, et al.  The matters on today's agenda are all

5     being heard remotely, primarily by Zoom, unless someone

6     doesn't have access to a screen, in which case they're

7     appearing by telephone.

8              I'm happy to go down the agenda submitted by the

9     Debtor's counsel, in order, as we've done periodically for

10    some time now, at the start of these omnibus hearings.

11    We'll start with a status report on the Debtor's progress

12    toward achieving the effective date.  In that regard, I'll

13    note that I received a status update for today's hearing,

14    dated January 20, for a status update for January 20, which

15    I believe is also on the docket.

16             I'm not sure who, from the Debtor's counsel will

17    be providing the status report, but you can go ahead at this

18    point.

19         MR. FAIL:  Thank you, Your Honor.  Garrett Fail,

20    Weil Gothsal & Manges for the Debtors.  Are you able to hear

21    me this afternoon?

22         THE COURT:  Yes, fine, thanks.

23         MR. FAIL:  Good.  Good to see you, Your Honor.

24    The presentation we filed on the docket for today is at

25    docket 10240, for those following along.  As I've done in

1     the past, I'll walk the Court through it.  And, as in the

2     past, before I start, I will note that the Debtor's

3     coordinated, over the past several weeks and months, on the

4     content of the report, with not only the Pre-Effective Date

5     Committee, but also separately with the advisors for the

6     Administrative Claims Representative, and the UCC, as well

7     as the Administrative Claims Representative.

8             In advance of this report, the Debtor's thank each

9     of the participants for their time and their analysis and

10    their cooperation.

11            The punchline of today's report is, it's good

12    news; forward progress.  But I'll walk you through the

13    details and explain how I get there.

14            If we start on page two, Judge, you'll see this is

15    the claim status (indiscernible).  And as in the past, we've

16    divided he claims up.  The top section deals with those

17    parties that are eligible to receive distributions, because

18    they opted in, or didn't opt out, for payment.

19            You'll see that the number of … you'll see that

20    basically -- not basically -- you'll see that we fully

21    satisfied 1,068 claims, and that was out of the 1,560.  So,

22    about 58 of 8 percent have already been allowed and

23    satisfied in full, out of the administrative claims that

24    opted in.

25            In addition, you'll see from this report -- and

Page 12

1    that's the de minimis lines that have been paid in full, but

2    the majority in number, the vast majority.  So, that leaves

3    what you see as the allowed opt-out non-de minimis, and

4    allowed non-opt-out, non-de minimis.

5          And you'll see, if you compare this report to last

6    time's, that we increased the number of allowed claims by

7    40.  That's by resolving, you know, disputed claims.  So,

8    forward progress in revolving claims and moving them to the

9    allowed category.

10          You'll also note, that it appears from this chart,

11   that there are only 492 claims eligible for distribution; a

12   small fraction of those that we started with.  And there's

13   actually, behind the scenes on these numbers, even less than

14   492 claims.

15          As a result of preference settlements and other

16   settlements, certain parties that received initial

17   distributions are capped, and only 440 claims are eligible

18   for future distributions.  The amounts on the right-hand

19   side of the page do track the total that's remaining to be

20   paid to them, which is $41.3 million to those parties that

21   are allowed.  There's only 440 of them.

22          In the past quarter, we continue to make progress

23   on disputed claims, as I mentioned, including those that

24   were allowed.  In the first category, you'll see the number

25   of opt-in claims that were subject to preference increased

Page 13

1    by eight; the number of non-opt-out claims that were subject

2    to preference, decreased by 23.  Those that needed to be

3    reconciled, decreased by 30.

4              So, it's only five claims, really, where the

5    substance of the claims remain to be disputed.  And you'll

6    see that the distributions that are being held on account of

7    those disputed claims have been reduced dramatically.

8              And I'll speak more later, Judge, but we think

9    we've gotten, you know, as far as we can with most of these,

10   without going into protracted litigation with promises of

11   appeals, where the benefit of going further, you know, we

12   might be hitting the point of diminishing returns.  But to

13   say that we have only five disputed claims out of the

14   thousands that we started with, is the real accomplishment.

15             In terms of the few parties that opted out, Judge,

16   we've reconciled another 15 of them, which brings the total

17   up to 55.  We have resolved 76 that were subject to

18   objection, and we're down to only seven opt-outs that remain

19   unresolved.  And, you know, we come to the same point of

20   diminishing returns and trying to get down to perfect,

21   dealing with parties that refuse to settle or promise to

22   appeal.

23             And then, we note here, that there's one large

24   claim, when you remove duplication, that has been disallowed

25   and subject to appeal, and that's related to the 507

Page 14

1    appeals.  That's flagged so the parties can see that it's

2    outstanding and that work needs to be done, as we did in the

3    past fee allocation period, to preserve this Court's

4    judgment up on appeal before the Second Circuit.

5              So, moving down to the second half of the page --

6              THE COURT:  I'm sorry, what is -- is there a

7    reserve on that one?  And if so, what is it?

8              MR. FAIL:  It is not --there is no reserve.  It is

9    an opt-out.  So, there's no reserve for it.

10             THE COURT:  Okay.

11             MR. FAIL:  Down on the second half of the page, on

12   the bottom, we go through claims that aren't receiving

13   distributions to date, but nonetheless, are claims that

14   could be entitled to 100 percent recovery, and that would

15   need to be paid on or shortly after the effective date.

16             The first category are claims that could be

17   entitled to share in a $3 million 1114 settlement.  The

18   number is, you know, very high in the number of claims that

19   have been asserted, but they share pro rata in a pot of $3

20   million, so the liability is limited.  In addition, this

21   number of claims is high because a population that we were

22   dealing with, of retirees or their widows, or widowers.  You

23   know, we looked and included here, claims that were asserted

24   as general unsecured, claims that were asserted as secured,

25   administrative priority, the gamut; but that could be

1    included in the universe that someone will have to reconcile

2    to pay out at a later date.

3            The next section is broken out into two, but it's

4    taxes.  And a lot of work was spent in the lower section, in

5    this past period, by the Debtors, to reduce both the number

6    of outstanding claims, and bringing asserted amounts

7    remaining down closer to the actual estimates that the

8    Debtors have shown.

9            We removed from this chart, claims that were

10   asserted for post-petition taxes and, in general, those have

11   either been paid, or will be paid, and we may file an

12   objection to clean up the docket.  But this shows

13   prepetition claims that remain outstanding.  And so, you'll

14   see a decrease in the number, and you'll see that we've

15   already filed objections to get rid of certain claims.  And

16   since we filed this report, we've made further progress

17   resolving even some of those objections.

18            After the tax line, we come to severance.  This

19   number is also increased, but the Debtor's estimate for the

20   severance has not increased.  These are folks that were

21   severed prepetition.  Their meeting amount of severance has

22   not been paid.  And so, the Debtor's have an estimate for

23   it, and we've just increased the number of parties that may

24   be eligible for it.  And we filed some objections to other

25   non-tax claims.

1          The secured line includes, primarily, in this

2     giant number, parties asserting second lien debt, and the

3     Debtors have agreed to defer fighting about that until the

4     results of the second circuit appeal are known, to see if we

5     can resolve it without further litigation or contemporaneous

6     litigation and appeals.

7          The punchlines on this page are tremendous

8     progress in reducing the number in getting the reserves

9     down.  You will note, Judge, on the bottom, that the

10    estimated allowed amounts, after discount, has gone up

11    slightly; we're showing $159.4 million, up from $153 million

12    last time.  And on the bottom right, you'll see the amount

13    that we estimate that we will need to pay, is $106.1

14    million.  It's up slightly from $99.7 from last time.  The

15    primary driver of the increase is an increase in the

16    Debtor's estimate for potential liability they may have, for

17    prepetition priority taxes.

18          The Debtor's prior estimates included everything

19    to the best of their knowledge, based on books and records.

20    Certain taxing jurisdictions are conducting audits.  And the

21    results of those audits are unknown and uncertain.  And

22    certainly, we're not admitting any additional liability, but

23    we're flagging for parties that may be relying on this for

24    other purposes, that there could be additional prepetition

25    priority tax claims included.

 1          I'll move to the next page, if that's okay, you

 2     have no other questions, Judge?

 3          THE COURT:  No, that's fine.

 4          MR. FAIL:  The next page, you know, is a waterfall

 5     recovery analysis; again, positive news.  We're showing cash

 6     balances of 34.5 million, up from our last report, where it

 7     was 23.4.  We're showing a dramatic reduction in reserves as

 8     a result of resolving disputed claims, and cleaning up for

 9     potential settlements that didn't occur.  And that shows,

10     remaining cash of $30 million, up for $17 last time.

11          In terms of the assets that remain to be modified,

12     again, progress, that was described in the fee applications,

13     and that Your Honor is seeing in various notices that were

14     filed; there's 1.1 estimate in remaining real estate to

15     come.  It's down from last time, but because of the

16     monetization of assets, that contributed to the increase in

17     cash.  The same with respect to other proceeds, which has

18     come down, because assets were monetized and cash was

19     received.  So, the total remaining assets have come down

20     from 42 to 28.8; it was a decrease of 13.1, but you'll see

21     an increase of 17 in cash.  So, net-net, the Debtors are

22     doing well in terms of asset monetization.

23          The claims numbers here tie to page 2.  And so, at

24     the bottom, you see the potential difference between the

25     cash available and the projected uses, excluding litigation-

1    based recovery from preferences and ESL litigation; is 62.6

2    million, up slightly, slightly, from the 58.2 in the last

3    report; again, primarily driven as a result of the taxes

4    that I mentioned earlier.

5            If Your Honor has no questions, I'll flip the page

6    to 4.

7            THE COURT:  That's fine.

8            MR. FAIL:  Thank you.  So, page 4 is the Debtor's

9    announcement that as a result of the cash on hand, on cash

10   expected to come in, the Debtors expect that they'll be able

11   to make a fourth distribution of $17.7 million, on account

12   of opt-in and non-opt-out administrative claims, before the

13   end of March.

14           The chart below shows a $15.4 million would be

15   allocated to those who would currently allow claims, with a

16   reserve of $1.2 or $1.3 million being added to those that

17   were forced withhold; because parties are still subject to

18   preferences.  And large driver of that are foreign

19   defendants, where service has been difficult.  And despite

20   everything the Debtors have attempted to do, you know,

21   continue to be drag.

22           Nonetheless, 17.7 is a tremendous distribution.  A

23   few ways you can look at that number, Judge:  If you look at

24   it as $17.7 out of the $53.3 million, which is what is owed

25   today, that's one-third of what we would owe to those

1    administrative creditors.  But it also, you know, is

2    significant when you consider that it would get those

3    creditors to the 50 percent mark of the allowed amount of

4    their claims, pre-discount.  That alone is significant.  But

5    when you consider that we only owe those parties either 75

6    percent or 80 percent of what we owe, you know, this

7    distribution will get to two-thirds of what we owe them, or

8    62 percent of them; between 66 and 62 percent of what we

9    would owe to those parties.

10         So, a significant distribution.  The cash

11    available is a direct result of the litigation and asset

12    monetization that's occurred over the past period, that Your

13    Honor is very familiar with.

14         The statistics that I just gave you, you know,

15    would be a good baseline.  The Debtors working with the Pre-

16    Effective Date Committee believe that they might be able to

17    do even more.  And the Debtors, with consent and support of

18    the Pre-Effective Date Committee and the UCC advisors, and

19    the administrative claims rep, as well as the largest

20    administrative creditor, are going to propose the following

21    additions:

22         To the extent that we are able to pay that 50

23    percent mark, with the $17.7 million, we're proposing to

24    allocate, roughly, $2 million, a little bit up, $2.3

25    million, to pay off and satisfy 199, close to 200, of the

1    440 opt-in and non-opt-out claimants that currently remain.

2    So, again, we've described how we've satisfied the vast

3    majority already.  This would allow 45 percent of those

4    administrative creditors to end their involvement with these

5    cases.

6            We propose to do it by paying off de minimis

7    creditors.  Your Honor, in the past, for the earlier

8    distribution, you recognized the benefit of, the

9    administrative benefit that comes by making one-time

10   payments, up to $15,000, to parties.  We're now proposing,

11   to the extent that funds are available, to pay off the 50

12   percent mark to everybody after doing this, everybody that

13   would remain, to pay people that are owed up to $20,000

14   remaining in their opt-in and non-opt outs.  And it would

15   still allow us to pay 50 percent, up to 50 percent of the

16   remaining creditors.

17           And again, we think that that that meets the goals

18   of efficiencies for the cases, you know, ending parties'

19   involvements, and maximizing future distributions.  We're

20   happy to have the support of the various constituents for

21   it.

22           Because it is a deviation, you know, from the

23   otherwise-established process, we would propose to submit a

24   form of order on presentment to Your Honor.  We don't think

25   it's controversial, but this way we can get your blessing.

1    We're previewing it now.  But the money is there to go out

2    the door, one way or another, which is the good news.

3           The other item that I mentioned earlier, to try to

4    conserve administrative resources going forward, the Debtors

5    have gotten, you know, in credibly far in resolving claims;

6    will continue to do so through the next distribution.  After

7    that point, you know, we'll consider, and probably dial back

8    and not pursue, you know, litigation to the end on the few

9    remaining disputed claims, and will wait and conserve

10   resources.  So, anybody that remains outstanding that wants

11   to negotiate and engage, we would suggest now is the time to

12   do so.

13          One other administrative savings that we have

14   discussed, and have the support of the Pre-Effective Date

15   Committee, as well as the estate's largest administrative

16   creditor -- we think that we'll be able to pay off the 50

17   percent, up to the 50 percent; pay off the 45 percent of de

18   minimis, and still have funds available to pay off close to

19   70 different taxing jurisdictions that have asserted

20   prepetition priority real estate tax claims; that have

21   asserted post-petition interest on those.

22          And the benefit of that would be to reduce ongoing

23   administrative expenses of tracking, reconciling and

24   updating and negotiating with those parties, as well as

25   stopping the accrual of interest.  The total cost would be

1    less than $1 million.  Just as with the with the de minimis

2    program, the Debtors would only go forward with that payment

3    to the extent that we're able to meet the -- cross that 50

4    percent threshold.  But we're happy to have the support of

5    the various constituents for that.  We think it will help

6    reduce costs going forward.

7           Again, because that's a deviation from the current

8    state of play, we would propose to include that in a

9    proposed order, that we would file on presentment.  And

10   hopefully, have that dealt with at or prior to the February

11   hearing, so that we could move forward, after that, to

12   distribution.

13          Your Honor, the Debtors are continuing to work

14   with the Pre-Effective Date Committee, the Administrative

15   Claims Representative, State's counsel, the UCC and its

16   counsel, on additional ways to advance these cases.  The

17   Debtors are doing everything, and have done everything

18   that's within their control, to monetize the assets and then

19   distribute what's available.

20          Additional assets, you know, remain held up,

21   including, as a result of litigation, including with result

22   to Transform; Your Honor is aware of the over $6 million

23   that's being held there.  And as well, as the reserves that

24   are being maintained for disputed claims.

25          We're doing everything within our power to advance

1   it, and the result is the 17.7 that can go out the door by

2   the end of March.

3           I'm happy to answer any questions, but that's the

4   status report for today.

5           THE COURT:  I just, I want to make sure I

6   understood one point.  You are suggesting that after that

7   fourth distribution, that it's unlikely that you would

8   engage in more negotiations on the relatively small number

9   of still-disputed claims.

10          At that point, they're either going to sit there,

11  or the Claimant needs to do something to bring it to my

12  attention.  Is that the, basically, the logic?

13          MR. FAIL:  We would not encourage anything to

14  bring it to your attention.  The claims process remains in

15  the Debtor's control.  Certain parties have vowed to

16  litigate to appeal.  Your Honor is going to be faced, I

17  think, today, with some that have gone on to appellate

18  levels and Supreme Court cert.  We're not looking to

19  increase the cost.

20          So, they'll be dealt with as and when, you know,

21  it's appropriate, when there's additional funds to pay for

22  it, and it makes sense to do it.  They know who they are.

23  The objections are on file.  There's -- I don't think

24  there's anything to do, Judge.

25          THE COURT:  Okay.  Appreciate the update.  Does

1    anyone have anything more to say on this, or questions about

2    it.

3              MR. WANDER:  Yes, Your Honor.  David Wander of

4    Tarter Krinsky, on behalf of Orient Craft.  Good afternoon,

5    Your Honor.

6              THE COURT:  Good afternoon.

7              MR. WANDER:  One question is, the Akin Gump law

8    firm says they're owed $6 million.  Is that added to the

9    $62.6 million that needs to come in for the plan to go

10   effective?  Or does that get paid some other way?

11             MS. BRAUNER:  Good afternoon, Your Honor.  Sara

12   Brauner, Akin Gump, on behalf of the Committee.  The answer

13   is no.  The $6 million that I believe Mr. Wander is

14   referring to, is the amount that we have disclosed

15   continually in fee applications and at the prior hearing,

16   and in our reply this time around, in respect of the jointly

17   asserted causes of action; the ESL, and others' litigation.

18   That is not reflected anywhere in this account.  That is to

19   be paid from the trust account, or any other funding

20   obtained specifically in respect of that litigation.

21             THE COURT:  Okay.  Thanks.

22             MR. WANDER:  With regard to the priority claims --

23   I'm looking at page 2, and there was mention about the

24   retiree claims.  Do those have to get reconciled for the

25   plan to go effective?  And who does the reconciliation of

1    that?  And how long might that take?

2                MR. FAIL:  They do not have to be reconciled for

3    the plan to go effective.  It's a fixed pot of $3 million to

4    be share by those that are entitled to it.  And whether it -

5    - and I don't want to say I believe that it's the retiree

6    representatives' job to deal with the reconciliation; the

7    Debtors are not spending to do that at this time.

8                MR. WANDER:  Is that the same with regard to the

9    other, like the severance claims?

10               MR. FAIL:  No, it is not the same with respect to

11   the severance claims.  Those are obligations of the Debtors,

12   and the Debtors will reconcile those.

13               MR. WANDER:  Okay.  Thank you.

14               THE COURT:  Okay.  Very well.  All right, thanks.

15   Why don't we go on then to the next item on the agenda,

16   which is a group of interim fee applications.  I've reviewed

17   --

18               MR. FAIL:  Oh, that's right, Your Honor --

19               THE COURT:  I'm sorry, I didn't mean -- to say as

20   a preface, I've reviewed the fee applications, the statement

21   by the fee examiner, about them, and the objection to three

22   of them, by Orient Craft, and the responses by Weil Gotshal

23   and Akin Gump to that objection.

24               MR. FAIL:  Thank you, Your Honor.  I propose to

25   just request, on behalf of all of the applicants, that Your

1    Honor grants the applications without further -- without

2    anything further.  And I'm happy to answer any questions,

3    and I'm sure the other professionals are as well but …

4              THE COURT:  I, as I noted, I've reviewed the

5    Examiner's status report, which is dated January 13, the Fee

6    Examiner's report, that is.  And, let me just, whether it's

7    Mr. Harner or his counsel, is there any update to that, or

8    is that the most recent view of the Fee Examiner on these

9    interim applications?

10             MS. DALUZ:  Your Honor, this is Tobey Daluz from

11   Ballard Spahr on behalf of the Examiner.  Mr. Harner is also

12   on the line.  I knew he wanted to address any questions from

13   the Court.  But since he hasn't yet turned on his screen, I

14   will say to you, there is no further update from the report

15   that was filed just a couple of days ago.

16             THE COURT:  And I'm assuming that the applicants

17   have no problem with including the same language in an order

18   here, that has been in the prior orders, regarding the

19   Examiner's rights; which he also addresses in paragraph 8,

20   the last paragraph of his status report; basically,

21   preserving all the objections that the Examiner would have,

22   in light of the ongoing process in considering the

23   Examiner's review and proposals and discussions with the

24   firms.

25             MR. FAIL:  Garrett Fail for Weil, Your Honor.

1   Weil has no issues, and I haven't heard from any other

2   professional.  I presume that there's no issue.  It's been

3   in every order since, and we're happy to accommodate the Fee

4   Examiner in this request, and going forward.

5            MS. DALUZ:  Confirmed with the UCC as well, Your

6   Honor.

7            THE COURT:  Okay, thanks.

8            MR. HARNER:  Apologies, Your Honor, I was having

9   trouble turning back on my video and audio, but Ms. Daluz is

10  completely correct; that's exactly where we stand.

11           THE COURT:  Okay.  And this is also some of what I

12  will reprise from the last hearing we had on interim fees.

13  Is it fair to say that the Examiner's view is that, given

14  the size of the firms, the nature of the ongoing work

15  they're doing, and consequently the holdbacks -- in relation

16  to those tasks -- and the sort of estimated amount of future

17  bills that, at this point, no holdback is warranted?

18           MR. HARNER:  Your Honor, what I would say about

19  that, is that I think that the holdbacks are not necessary,

20  because the (indiscernible) can be done, you know, given the

21  size of the firms.

22           What I would say is that, given the administrative

23  insolvency gap in the case, which has been discussed at some

24  length today, is that some of them, you know, or all of them

25  may need to think about whether or not there needs to be …

1    You know, all these firms have made a lot of money on this

2    case.  And I don't mean to disparage them for that, but it

3    may need to be the case, actually, that the law firms, as

4    well as -- or the professionals, generally, as well as

5    everybody else, need to think about whether or not to take a

6    claw back from what they've earned her, to try to close that

7    gap.

8              MR. FAIL:  This is Garrett Fail from Weil, on

9    behalf of Weil.  Thank you, Mr. Harner for that thought.

10   But I would remind the Court that the Debtors have paid out

11   over $5 billion in administrative costs, to various

12   administrative claimants that aren't professionals.  And

13   that the report that we just showed includes, and highlights

14   that we paid out, to date, you know, $50-something million

15   to prepetition creditors; included in that are the pre-

16   petition administrative creditors.

17             So, the work that's been done and the applications

18   that have been filed are for post-petition work, at the

19   rates that were approved, and on the terms that were

20   approved.  And the professionals have not agreed to fund a

21   deficiency for prepetition creditors, or post-petition

22   creditors.  So …

23             THE COURT:  I think we're covering two different

24   issues.  The issue I was asking Mr. Harner about was whether

25   there should be a holdback at this point; which really goes

1    to, in my mind, concerns about the ability, if I determine,

2    ultimately, that some portion of fees and expenses that was

3    paid on an interim basis, should not be paid on a final

4    basis, and there isn't enough unpaid amounts for future

5    periods to set off against that determination.

6            And I think I heard Mr. Harner clearly that the

7    firm's financial health, and his view of what the range of

8    potential -- a ruling like that by me, would be that, it

9    wouldn't warrant a holdback, beyond the 20 percent holdback

10   under the fee order.

11           As far as a final fee application is concerned for

12   each of the firms, I think that's a separate issue.  Namely,

13   separate and apart from the merits of the applications;

14   whether the firm should consider any reduction in order to

15   enable the case to go effective.  And that's really for a

16   future date.  I don't view that as an interim fee issue.

17           MR. FAIL:  Right, Your Honor, I just want to be

18   very clear that at each of these interim steps, this has

19   been --

20           MR. HARNER:  I'm so sorry to interrupt --

21           MR. FAIL:  -- one party or another.

22           [OVERLAPPING SPEAKERS]

23           THE COURT:  I'm sorry, you two are talking over

24   each other.  I just want to -- why don't we let Mr. Fail

25   finish.

1            MR. HARNER:  I'm so sorry to interrupt Mr. Fail,

2       but, you know, on those two different issues, I do

3       completely agree that there is no reason to oppose an

4       additional holdback point.  As I have said several times,

5       (indiscernible) if there is, ultimately, a (indiscernible)

6       imposed by the Court.  So, I'm not worried about that.

7            The only other separate issue I was raising, was

8       whether or not, you know, given the administrative expense

9       gap, these firms are (indiscernible) some reductions and try

10      to close that gap.

11           THE COURT:  That's a fair point.  That's been

12      hanging over the case since the confirmation hearing,

13      frankly. But I think it's premature to deal with that now.

14      I know that -- or I trust that, at least -- I'm pretty sure

15      I know that also -- that the firms, and the administrative

16      expense creditors, are aware of that gap acutely; that's why

17      we're having these reports at every omnibus date.

18           And there are substantial assets out there.

19      There's substantial litigation pending, big ticket

20      litigation pending.  And so, I think it's premature to do

21      that. I mean, in smaller cases, firms often make some

22      accommodation to enable the plan to go effective.  But --

23           MR. HARNER:  And, Your Honor, I couldn't agree

24      more.  But that's -- I just wanted to raise the issue, but I

25      also did not want to disagree with Mr. Fail, or any of the

1    other professionals, that there's no point, at this point,

2    in opposing an additional holdback.  I just think it's worth

3    it.

4              THE COURT:  All right.  I guess the one other

5    question I have -- in looking at the time records, I don't

6    get this impression, but I just want to make sure there's

7    no, like lingering professional out there that's billing,

8    that at this point, really shouldn't be.  That's not my

9    impression that I'm getting; that the firms are doing the

10   work that needs to be done, and not -- you know, the

11   professionals that were on monthly fee compensation

12   arrangements, have either stopped or have substantially

13   changed those.  So, I just want to make sure that's the

14   case.  I don't want there to be some lingering firm that's -

15   -

16             MR. HARNER:  I'm going to ask my colleague, Ms.

17   Daluz, whether or not she will confirm that, but I believe

18   that to be the case.

19             MS. DALUZ:  Your Honor, I agree that not only are

20   the number of fee applications, but the size of the fee

21   requests have been decreasing each quarter, as we would

22   expect to see at this stage in the case.  We do not think

23   that there is any -- I think, off the top of my head, any

24   particular firm that we think may be billing beyond what we

25   would expect.  And if we do see those kind of anomalies, we

1    are raising them in our preliminary reports and discussing

2    it with the individual firms.

3            THE COURT:  And again, I read the fee

4    applications.  I can get a pretty good sense of that too,

5    but I, obviously, am not discussing it with the firms, about

6    their staffing, but that's something that you all are free

7    to do.

8            MS. DALUZ:  Yes.  And often, Your Honor, now we

9    don't draft full-blown preliminary reports.  We are kind of

10   producing just a short form schedule to go through with law

11   firms; as opposed to doing full-blown, you know, legal

12   diatribes, as we did in the -- as we thought was necessary

13   in the early stages of the case.

14           THE COURT:  Okay, very well.  So, the fee

15   applications, interim fee applications by Prime Clerk, as

16   administrative agent; Herrick Feinstein is conflicts counsel

17   for the Committee.  And the Fee Examiner and his counsel

18   aren't opposed.  I've reviewed those, and I think I can see

19   why there were no objections to them, and I will grant them

20   on an interim basis with the reservation of rights language

21   that we've had for the Fee Examiner.  And obviously, it's

22   being done on an interim basis for everybody.

23           The interim applications by Weil Gotshal, Akin

24   Gump and FTI, were objected to by Orient Craft.  I had dealt

25   with a very similar set of objections to the same firm's

1    compensation the last time this was up, which was September

2    27, and denied the objection.  And I'm not sure, really -- I

3    went back and reviewed the transcript, Mr. Wander, and in

4    part, you were doing it to reserve your rights, although

5    everyone's rights are fully reserved.  I have no problem

6    with your doing that, but I'm not sure there's anything new

7    in this objection from the issues that I considered last

8    time.

9              MR. WANDER:  Your Honor, David Wander of Tarter

10   Krinsky on behalf of Orient Craft.  I'll be very brief.

11             There is not that much new except another four

12   months have passed without the plan going effective.  And I

13   am heartened by Mr. Harner's comments.

14             On behalf of my client, who is an opt-out

15   creditor, the Debtor's status report paints a different

16   picture than forward progress; because for those who opted

17   out, the bottom line is, how much money is needed for the

18   plan to go effective?  And apparently, there are additional

19   tax claims that have arisen, and the bottom-line number of

20   how much money the estate needs to go effective, has gone up

21   by $5 million.

22             So, the progress that's made to administrative

23   creditors who are going to get some money from the next

24   distribution, does not incur to the benefit of those who

25   opted out.  And if Your Honor may recall, you know, it was

1   predicted that the plan would go effective in six to 12

2   months.

3           But I appreciate Your Honor letting me make these

4   comments.  And that's all.  I didn't expect that Your Honor

5   was going to grant my application, but with four more months

6   going by, and us no closer to an effective date -- and

7   that's what's been missing from the discussion.  We all know

8   that the preference recoveries will not come close to

9   bridging the gap.  And that's what we told was going to get

10  us effective.

11          And the big litigation has been at a standstill

12  for a year and a half.  And I'm concerned what happens when

13  Your Honor moves on.  So, that's why I wanted to file the

14  objection, to keep my comments in the forefront, and we'll

15  see what the next four months brings, Your Honor.

16          MR. FAIL:  Your Honor, just briefly, because I

17  fear this will appear again in three months and then,

18  possibly, after you get to leave this behind and we are

19  stuck with it.

20          It is just simply false to say that we are not

21  closer.  At the last hearing, the applications included time

22  to distribute $10.5 million.  Here we are in the third

23  distribution.  Here we are talking about giving out $17.5

24  million.  We have reduced the administrative claims.  We've

25  given out more.  And he's an opt-out creditor.  So, he'll

1    get paid before the prepetition taxes.

2              It's absolutely false to say we're no closer, or

3    to blame the Debtors for updating their estimates on

4    prepetition taxes subject to, that have been subject to

5    reconciliation.  We've delayed the reconciliation to deal

6    with the admins first, and they'll be what they'll be.  But

7    it is absolutely just false and misleading, and we're all

8    tired of hearing it.

9              THE COURT:  Okay.  Well, I believe that the

10   update, basically, as the prior updates have sown, is that

11   pending the effective date, the Debtors, with the assistance

12   of the Committee, have been doing the work that a post-

13   confirmation trust would normally do, to enable

14   distributions, which would generally have been held back --

15   because of disputed claims, because of realizing on assets

16   that hadn't been turned into cash yet, and the like.

17             So, I think that work is all productive work and

18   has actually, I think, led to some significant increases in

19   the estimates.

20             Mr. Wander is right in that the preference

21   recoveries were considerably lower, and are projected to be

22   considerably lower than they had been projected to be at the

23   confirmation hearing.  But those were not the only sources

24   of recovery here.  And I think people knew that at the time

25   of the administrative claims settlement.

1          And the major litigation, the ESL litigation, is

2     clearly something that has a big ticket on it, and is also

3     tied up in a major portion of the remaining uncertainty

4     here, as far as other related litigations between those

5     parties.  And that will move ahead, and needs to be dealt

6     with very carefully, so that all the parties' rights in

7     those disputes are dealt with properly.

8          I don't see a reason, I guess, therefore, to have

9     any holdback for these three firms, whose underlying work is

10    not -- for this period -- has not been objected to in any --

11    as far as the substance under Section 330 standards are

12    concerned.

13         The work is necessary to get to the point to make

14    the distributions to creditors.  And I guess it's that

15    simple.  And in large measure, it's carved out of the

16    Secured Creditor's collateral, provided for in a fund under

17    the plan, for litigation; which the Committee has agreed not

18    to tap in full.  And therefore, I don't believe there is a

19    basis to either holdback or disallow some portion of the

20    requested fees in these interim applications.

21         MR. FAIL:  Thank you, Your Honor.

22         THE COURT:  So, I'll ask the Debtors to submit the

23    one order, with schedules A and B, for the six applicants.

24    And it will get entered shortly.

25         MR. FAIL:  The next item on the agenda, then, is

Page 37

1    the motion to enforce an order authorizing assumption and

2    release -- assumption and assignment of a lease with MOAC

3    Mall Holdings, LLC.

4             THE COURT:  Could I --?

5             MS. MORABITO:  Excuse me, Your Honor.  Sorry, I

6    hate to interrupt like this, I'm sorry.

7             THE COURT:  That's fine.

8             MS. MORABITO:  This is Erika Morabito at Quinn

9    Emmanuel, on behalf of the Admin Expense Claims

10   Representative.  I'm just wondering, there's many of us on

11   the call that were dialing in, in case Your Honor had

12   questions with respect to agenda items number 1 and 2.  And

13   we would ask permission to be able to drop now, if that's

14   okay with Your Honor?

15            THE COURT:  Yes.  That's fine.  In fact, I was

16   about to interrupt Mr. Fail to say that everyone should feel

17   to drop off if they're not involved in what I think is

18   actually the last matter on the calendar; which is this

19   Transform, Mall of Americas matter.  Because I think the

20   matter that had been on the agenda, which was an order to

21   show cause related to one of the adversary proceedings, has

22   come off.  I just want to confirm that, that the K-Mart

23   versus Grace and Son Construction Company is not going

24   forward today?

25            Okay.  So, if anyone was on for that one, they

1    don't need to stay on either.

2              MS. MORABITO:  Thank you, Your Honor.

3              THE COURT:  Okay, very well.  So, let's go back to

4    the Transform Hold Co.-MOAC Mall motion.

5              MR. MARTIN:  Good afternoon, Your Honor, this is

6    Craig Martin from DLA Piper, representing Transform.  Can

7    you see and hear me all right?

8              THE COURT:  Yes, fine, thanks.

9              MR. MARTIN:  Thank you, Your Honor.

10             MR. OTSUKA:  Good afternoon, Your Honor.  This is

11   Greg Otsuka for MOAC Mall Holdings.  Also with me on the

12   Zoom hearing is David Dykhouse of the Patterson Belknap

13   Firm.  Your Honor, I would just note that I filed my pro hac

14   vice application on January 10.  I have not seen an order

15   yet granting that motion, but I would ask the Court's

16   permission to appear and argue today?

17             THE COURT:  Okay. Did you email it to chambers

18   with a proposed order?

19             MR. OTSUKA:  I did, Your Honor.

20             THE COURT:  Okay.  It's probably already been

21   sent, or if it won't, it will get entered very shortly.  So,

22   you can certainly argue today.

23             Okay.  I have reviewed the pleadings related to

24   this motion.  And the first one is Transform's motion to

25   file portions of its motion under seal.  The parties didn't

1   exactly file my procedures for a ceiling motion; namely, to

2   provide me, by email, with the motion, the unredacted

3   document and the proposed order.  But I've reviewed the

4   unredacted documents and the redactions.  And I'll note that

5   I don't believe there is any opposition to the sealing

6   motion, and that, in fact, MOAC has tried to comply with the

7   relief that was sought, but redacting certain portions of

8   its objection.

9            So, my inclination, unless anyone has anything

10  more to say about this, is to enter an order directing the

11  sealing of the motion papers and the objection, and having

12  the redacted versions be the only versions on the public

13  docket of the case.

14           Those types of orders are always subject to

15  someone's seeking to reopen the matter.  But frankly, this

16  is not particularly a matter of public note.  I think it

17  really does fit very cleanly into what 107(b) generally

18  deals with, which is commercial information; the disclosure

19  of which could put a party at a disadvantage.

20           And so, again, I'm inclined to grant the motion.

21  Does anyone have anything to say about it?

22           MR. MARTIN:  Your Honor, this is Craig Martin.

23  Mr. Otsuka and I did confer prior to the hearing, and we're

24  grateful for Your Honor inuring that; we thought you might,

25  in lack of the opposition.  And we think that we can conduct

1    the hearing without any need to seal anything that we're

2    going to argue today.  So, I'll simply refer to the

3    subtenant as 'Subtenant.'  And much of what we needed to

4    redact, is not going to be relevant for today's hearing; if

5    it is, we'll address it.  But we did confer, and I think we

6    can cover it without sealing the hearing or any portion of

7    the transcript.

8            THE COURT:  Okay, very well.  So, I'll ask you

9    then, Mr. Martin, to email the sealing order to chambers.

10           MR. MARTIN:  We will do so after the hearing, Your

11   Honor.  Thank you.

12           THE COURT:  Okay.  So, then we have the underlying

13   motion and the opposition.  I guess, the first thing I want

14   to ask is, has there been any development on the motion for

15   a stay under Federal Appellate Rule 41 of the issuance of

16   the mandate?

17           MR. OTSUKA:  Your Honor --

18           MR. MARTIN:  Go ahead, Mr. Otsuka.

19           MR. OTSUKA:  Sorry, Your Honor.  Greg Otsuka. The

20   only development is that, that motion is currently in

21   briefing in the second circuit.  We filed the motion.

22   Transform has filed the response.  We have time to file a

23   reply.  But as of now, that motion is pending.

24           THE COURT:  Okay.  All right.  So, I'm happy to

25   hear brief oral argument on this.  I guess I'd like the

1    parties to focus first, though, on the stipulation and order

2    from the District Court, so ordered in March of 2020, by

3    then Chief Judge McMahon, and how it affects the motion now

4    before me.

5            MR. MARTIN:  Yes, Your Honor.  If it pleases the

6    Court, I'd be happy to go first on our view on that.

7            THE COURT:  Okay.

8            MR. MARTIN:  Craig Martin, again, for the record.

9    So, our view on that is -- and I think if you look -- it's

10   important to understand the context in which that order was

11   entered.  Initially, we argued in front of the District

12   Court, the substance of the motion, and MOAC prevailed on

13   that.  And that consent and stipulation order was then

14   entered.

15           After it was entered, we then filed a motion for

16   rehearing, which was granted.  That resulted in MOAC filing

17   an appeal on the rehearing motion, and that's what we argued

18   to the Second Circuit Court of Appeals.

19           The problem with the consent order is that in

20   paragraph 2, it says that it would be, remain in place until

21   the Second Circuit Rules, which has occurred.  As MOAC

22   points out in their briefing, I believe it's paragraph 6,

23   says that that order would not terminate until the mandate

24   issues.

25           THE COURT:  Paragraph 5.

1          MR. MARTIN:  Yeah, paragraph 5, I apologize.  I

2    think the key is, is that in the actual Second Circuit

3    judgment, in their very last footnote, they talk about how,

4    because of the way in which the District Court judgments and

5    orders were entered, there never was a judgment entered.

6    And that as a result, that consent and stay order ceased to

7    have effectiveness.

8          Because, the way I read their footnote is, number

9    one, it related to the original judgment of the District

10   Court, which was vacated by the order on the rehearing.  And

11   number two, because under the various rules of procedure,

12   had a judgment been entered by the District Court on the

13   rehearing order, that judgment wouldn't become final in 150

14   days; which time has passed.  And the consent order would

15   have lost its efficacy.

16          So, our view is that for those two reasons,

17   indicated by the Second Circuit in its footnote, in its

18   summary order, disposing of the matter, the consent order

19   and stipulation does not have any effect any longer.

20          And if Your Honor needs me to direct it to you,

21   would be happy to --

22          THE COURT:  Well, I'm looking for it here.  Can

23   you just read it?  Rather than my leafing through here, can

24   you read that note?

25          MR. MARTIN:  Yes.  I'm reading from Exhibit F of

1    our motion.  It's the final page, footnote 3.  It's quite a

2    long one.  But in essence, it says that the District Court's

3    May 11, 2020 order granting Transforms motion for rehearing,

4    and vacating the Court's original decision in favor of MOAC,

5    in its June 8, 2020 order denying MOAC's motion for

6    rehearing, and directing the District Clerk of Court, in

7    effect, to close the case; together constitute a final

8    decision that, quote, "Ended the litigation of the merits

9    and left nothing four the Court to do but execute the

10   judgment." Citing Hall v. Hall, in 28 USC 12 91.

11   Parenthetical omitted.

12           Continuing.  We appreciate that on March 11, 2020,

13   the District Court entered a stay of what it described as

14   its initial judgment in favor of MOAC.  The District Court

15   may well have thought that the stay remained in place, after

16   it later granted Transform's motion for a rehearing.  We

17   note, however, that no judgment of the District Court was

18   ever actually set forth in a separate document at any point.

19   Of course, in the absence of a separate document, judgment

20   is deemed entered 150 days after the order from which the

21   appeal lies and is entered, citing Federal Rule of Civil

22   Procedure 58(c)(2)(B).  But we will repeat our strong

23   suggestion that where, quote, "The district Court makes a

24   decision intended to be final, the better procedure is to

25   set forth the decision in a separate document called a

 1   judgment."  Citations omitted.

 2          That's the complete footnote, Your Honor.  So, as

 3   we read that, as I say, we believe the Second Circuit is

 4   pointing out that the consent stay and stipulation expired

 5   by operation of the Federal Rule of Civil Procedure

 6   governing final judgments issued by District Court, up to

 7   the Second Circuit.

 8          THE COURT:  For one of jurisdiction, in essence, I

 9   guess, right?

10          MR. MARTIN:  I suppose so.  You know, you always

11   to hate to second guess anything any party's done.  But

12   certainly is MOAC is concerned about a further stay, they

13   could have sought that from the Second Circuit.

14          And that's why I wanted to put that consent

15   stipulation in context.  It was originally entered on a

16   motion in which Transform had lost the appeal.  And so, the

17   design behind it, in my mind -- Mr. Otsuka may disagree --

18   but it was to protect us form not being able to continue to

19   pursue subleases.  Of course, we've now obtained a sublease.

20   And then, when the rehearing happened, neither party did

21   anything with respect to that.  And I construe the Second

22   Circuit is saying, because of neither party doing anything,

23   and because the District Court didn't enter any judgment, to

24   the extent that stay remained valid, it expired under

25   Federal Rule of Civil Procedure 58, 150 days after the

1   District Court's judgment.  And that time period passed long

2   ago.  The appeal was pending for quite some time in the

3   Second Circuit.

4           THE COURT:  Okay.  Mr. Otsuka, you want to address

5   that point, and then we can go onto the other ones?

6           MR. OTSUKA:  I would Your Honor.  Thank you.  A

7   few points:  The first is, except for the first sentence or

8   two of Mr. Martin's argument that he just made, none of that

9   argument appears in their briefing.  We raised this issue in

10  our response.

11          In their reply, it's one paragraph on page 7 of

12  the reply.  And they hang their hat on the phrase in

13  paragraph 2, of this order that says, "Until any ruling of

14  the Second Circuit of Appeals."

15          So, the first point is, the rest of that argument

16  has not been made and should not be allowed right now.

17          In any event, the order of the District Court

18  says, "Judgment of this Court shall be stayed."  It doesn't

19  refer to any -- the judgment that was just entered, at the

20  time of this order.  As Mr. Martin pointed out, after

21  Transform lost on the merits in the District Court, they

22  asked our consent to enter into this stay.  And it was only

23  after we agreed and then -- that the Court entered this

24  stay.

25  And then, the very next day, Transform, for the first time,

1   raised this jurisdictional argument; which as we point out

2   in our papers, they assured this Court that they would not

3   make it on any later appeal.  So, in our view, this order

4   clearly stays the judgement of the District Court.  It

5   doesn't refer to only the first judgement, and moreover, it

6   is also clear that the say is in place until the sending

7   down of the mandate of the Second Circuit, which hasn't

8   happened.

9            THE COURT:  I -- I agree with you on those points.

10   I think that if you just stopped in paragraph three, I

11   wouldn't, but it seems to me that paragraph five is -- is in

12   keeping with what you just said.  But, I guess that leaves

13   the issue addressed in the footnote to the Second Circuit's

14   decision, which is I think a pretty strong indication that

15   the Circuit doesn't believe this stay is in effect at this

16   point.

17            MR. OTSUKA:  Well, I would also say, Your Honor,

18   that it was a footnote after -- I think it's a footnote to

19   the word affirmed.  So it's clearly dicta.  They don't say -

20   -

21            THE COURT:  It's from the Second Circuit.

22            MR. OTSUKA:  I -- I understand.

23            THE COURT:  I'm not that pretty -- I'm not that

24   eager to just ignore it.

25            MR. OTSUKA:  And I'm not suggesting that you

1   ignore it, Your Honor.  But I also point out that they don't

2   come out and say this order is not effective.  They -- they

3   -- they -- they make comments about the order --

4           THE COURT:  No, but the do -- but they do say the

5   judgement is -- is -- that in essence it's -- it's done.

6   Now they -- I think they can reconsider that, or rethink

7   that as part of the briefing on the stay of the mandate, the

8   requested stay of the mandate, but -- but at least as far as

9   what I have before me right now, it doesn't seem to me like

10  they would be holding the parties to this stipulated order.

11          MR. OTSUKA:  Well, the other point I would make,

12  Your Honor, is whatever the judgement -- whatever the

13  effectiveness the judgement may have, the terms of this

14  order say that the stipulation made itself, shall remain in

15  place until the standing down of the mandate.  What we're --

16  what we are relying on is in paragraph three, that Transform

17  shall not do a number of things, and as long as the mandate

18  is not issued, this stipulation remains in place and

19  Transform shall not do all of those things that are

20  identified in paragraph three.

21          THE COURT:  Well, again though, but if -- if -- if

22  the -- the court that so ordered it can't enforce it, I'm

23  not sure that means anything.  But let me ask a related

24  question, and this is to both of you.  The -- the sublease

25  has a -- a provision that talks about when the lease term

1    commences, Section 1.2, which refers to the litigation

2    resolution date, and then that definition of litigation

3    resolution references another definition, the "critical

4    determination".  And regardless of whether this -- this

5    stipulation is a binding order; this is really I guess a

6    question for Mr. Martin first.  Why isn't the lease -- the

7    sublease itself one that contemplates the term commencing

8    only when you have a final order, as people define final

9    orders, i.e. it -- it doesn't admit of any rehearing,

10   reconsideration, transfer or appeal, and any further

11   possibility of any stay, remand, removal, rehearing,

12   reconsideration, transfer, or appeal resulting in the

13   critical determination; and I guess, in light of that, given

14   that there is a pending motion under Rule 41D to stay the

15   mandate and the possibility of a cert petition after that.

16   The -- the relief you're seeking here, ultimately, it would

17   occur to me doesn't -- doesn't -- doesn't -- the lease

18   doesn't start -- the sublease doesn't start until that

19   process is done.  So, I guess ultimately the question I have

20   is why are we here at this point?

21              MR. MARTIN:  Yes.  Craig Martin, again, for the

22   record.  I don't disagree with the way that, Your Honor, is

23   reading it that the litigation resolution is the date by

24   which various events would begin to occur that would lead to

25   occupancy.  The reason we're here today, however, is because

1    of the assignment order that, Your Honor, entered after our

2    trial, ECF Number 5074 had certain conditions in it that we

3    needed to satisfy within certain time periods.

4            The two that we're worried about, specifically,

5    and that we submit we have satisfied, is that the -- we've

6    given the MOAC in it's capacity as a Landlord it's rights

7    under Section 6.3 of the Master Lease.  And the second item

8    that we're concerned about is that, Your Honor's order,

9    signed an order required that we at least lease some portion

10   of the property subject to the Master Lease.

11           THE COURT:  Well, except it really wasn't -- I --

12   I read that provision a little differently than -- than I

13   think you do, and maybe you're being extra careful about it.

14   But -- and I -- I go back to the transcript.  The -- the two

15   year limitation came up because this was a very long term

16   lease and there was 70 more years left to run on it.  And --

17           MR. MARTIN:  Correct.

18           THE COURT:  -- under the case law, I was concerned

19   that if it just remained -- if you said to, or left MOAC to

20   believe that you were perfectly content to leave the space

21   empty for 70 years, they would be forced to pay you

22   something and I didn't believe that was right under the case

23   law.  And during oral argument, one of your colleagues,

24   counsel for Transform, said well, we think we will get it

25   leased within two years.  That's a reasonable time.  There

1    was testimony to that effect and so long as the landlord

2    didn't block us from doing that.  And obviously that

3    testimony and the two years didn't take into account two

4    years of appeals.

5              MR. MARTIN:  Or a -- or a pandemic -- global

6    pandemic.

7              THE COURT:  Well, that's a separate issue. I -- I

8    really, that -- I mean, it was on the condition that the

9    landlord not interfere.  And, you know, it's my order.  It's

10   my -- I understand my logic behind it and the logic was to

11   give you all two years to lease it, starting when you had

12   the opportunity to do so.  Not, you know, two years would

13   run while you were prevented to do it.  It seems to me that

14   that type of relief, if the circuit does not grant the --

15   issues the mandate, does not grant the stay, makes sense to

16   fix that.  I mean, it's just contrary to the premise of the

17   order that, again, was that when your hand is free, you

18   should have two years to litigate.  It wasn't a question of,

19   you know, the landlord, you know, like telling perspective

20   tenants not to talk to you.  I mean, that would have been

21   interference.  But the concept was you had two years to do

22   it.  Not that you would have two weeks to do it after two

23   years of appeal -- a year and -- almost two years of

24   appeals.

25             MR. MARTIN:  Yes.  Craig Martin again, Your Honor.

1    And just to comment on that, and I -- and I appreciate what

2    you're saying because it sounds like what you're saying that

3    we might have two years from the completion of appeals,

4    which, obviously --

5              THE COURT:  Right.

6              MR. MARTIN:  -- would be much more time --

7              THE COURT:  That's right.

8              MR. MARTIN:  Our concern obviously was calculating

9    it from the entry of the order --

10             THE COURT:  Right.

11             MR. MARTIN:  -- put us -- actually put us into

12   September of last year.  We -- you may have seen in the

13   documents we submitted, we did as --

14             THE COURT:  You got an extension from the Second

15   Circuit.

16             MR. MARTIN:  Yeah, we did ask for 60 days after

17   their ruling, and they gave that to us.  We calculate that

18   to be February 15th, so obviously this is a very valuable

19   lease.  We don't want to take any chance that we somehow

20   lose this -- this piece of property that we acquired due to

21   the passage of time.  So --

22             THE COURT:  Well --

23             MR. MARTIN:  -- obviously our proposed form of

24   order has a paragraph 3C that says that we've satisfied the

25   contingency by entering into the sublease so that we don't

1    have to worry about the two year time period.

2           THE COURT:  Right, but that's -- that's a good --

3    see that's why I think our interpretation's a little

4    different.  It's not really satisfy the contingency; it's

5    just saying that this was -- that deadline was not -- I

6    didn't contemplate that deadline under these facts.  That's

7    it --

8           MR. MARTIN:  Okay.

9           THE COURT:  But -- then I -- I guess I want to go

10   to a related point.  The Circuit already gave Transform

11   extra time, visa ve the lease.  It has before it a motion

12   for a stay of the mandate.  Any court, including the

13   Circuit, can condition stay on various things.  They

14   condition it on posting a bond, if there's a risk, for

15   example, you lose the sublease, just because there's a -- a

16   circ petition pending.  And so the Circuit could say well,

17   we'll grant the stay if you post the bond.  It could also

18   say we'll grant the stay as long as the two year condition

19   is extended.  And you could certainly related to them this

20   section of the transcript where I say that's, you know, how

21   I viewed my order and it comes right out of the oral

22   argument and the discussion that you should have a full two

23   years to market and sell the lease, or to, you know, as a

24   sublease.

25           Given that that's in front of the Circuit already,

1   with those possibilities, I'm -- I am reluctant to just

2   charge ahead before they rule on the motion for a stay of

3   the issuance of the mandate.

4           MR. MARTIN:  I understand that point, Your Honor,

5   Craig Martin, again.  So it sounds like that potentially two

6   things that might, Your Honor's read the papers and I'm not

7   going to make a pitch for why we think the current order is

8   final.  I understand where, Your Honor's coming from, it

9   seems like there are two options that might help solve the

10  problem.  The first would be to invoke the rules in Your

11  Honor's court and set this for a final hearing.  The reply

12  brief is due on the 25th and is on the -- is on the 25th,

13  so, you know, we would expect a ruling from the Second

14  Circuit on the stay of the mandate probably by the end of

15  the month, early February.  But since we're concerned about

16  that timeline, it may make sense to invoke a Bankruptcy Rule

17  8005.  There's also a Federal Rule of thought procedure

18  called Indicative Ruling --

19          THE COURT:  Well that's it -- that's actually 8008

20  has the Indicative Ruling.

21          MR. MARTIN:  8008?  I'm sorry, I misspoke, yeah.

22  Called Indicative Ruling, which allows us to do what, Your

23  Honor, just said, which is to, you know, write a letter to

24  the Clerk, and say that we had this hearing, provide the

25  transcript, and say that you've indicated your thoughts on

1    this record.  I guess the one portion of that rule that's

2    not clear from this record is whether you would actually

3    grant our proposed order or whether you would clarify the

4    two year time frame to be two years from completion of, you

5    know, exhaustion of appeals, which would either be when the

6    mandate doesn't issue, I suppose, or if the Second Circuit

7    stays the mandate and the Supreme Court grants Cert -- it

8    could be, you know, we all know how long that takes, it

9    could be another couple of years.  We just don't want to

10   lose our lease while that -- that time is pending; and I'm -

11   - as I'm sure, Your Honor, appreciates, there's some

12   confusion over when that deadline runs.  We -- we believe

13   we've satisfied the requirements with the 6.3A offer as,

14   Your Honor has seen in the exchange of letters from November

15   and December, and that we've satisfied the contingency.  But

16   --

17              THE COURT:  Well --

18              MR. MARTIN:  -- if, Your Honor, feels the mandate

19   issue prohibits you from -- from addressing that --

20              THE COURT:  Well, there are two aspects of the

21   condition to the -- to the start of the lease.  There's the

22   litigation contingency, and then there's the compliance with

23   the right of first offer, and compliance with the lease

24   itself.  And you -- your motion duly seeks determination of

25   both of those points.  The objection was premised almost

1   entirely on arguments why the first point, i.e. the

2   litigation contingency, is at best is premature, and at

3   worst something that I don't have the power to rule on.

4   There is a little bit in the objection about the second

5   point, which really said very little -- really it didn't say

6   anything more than the language in the denial letter, which

7   basically questioned whether the proposed subtenant fits

8   within 6.3 and is the type of tenant that can come in. I

9   don't think I'm in a position to give any indicative ruling

10   on that point yet, because I don't really have any evidence

11   other than is submitted in a motion as to the nature of the

12   subtenant's business.  It may be fairly easy to decide that

13   issue, but I'm not sure I'm -- I can't give an indicative

14   ruling, I don't think, on that point.

15        I know you think you've made that case pretty

16   clearly, based on other leases that MOAC has granted, et

17   cetera, the nature of this subtenant's -- proposed

18   subtenant's business, et cetera, but -- but it's a different

19   issue than interpreting my own order, which is really the

20   first point.

21        MR. MARTIN:  Perhaps the owner, Craig Martin

22   again, may by -- may be some combination of what I said,

23   which is that we make the Second Circuit aware of this and

24   we also adjourn this motion, pending the decision on the

25   mandate, and if the mandate is not stayed, we could then

1    seek a further hearing on these other issues and with the

2    clarity on the timing, we're then not, you know, pressed for

3    some arbitrary deadline where we need that decision or we'd

4    (indiscernible) the lease (indiscernible).

5              THE COURT:  Right.  Well, I don't want to short

6    circuit, Mr. Otsuka may want to -- may have some remarks on

7    this.  I don't to short circuit the arguments that MOAC has

8    made, but I did -- I did want to give you both my

9    preliminary thoughts on the divestiture issue.

10             First, I don't think that the mandate is -- the

11   issuance of the mandate is to be ignored.  I think it is a

12   critical step in the appellate process, and until it's

13   issued, with -- with very limited exceptions, the -- the

14   lower court, I don't think has the ability to take an action

15   that would interfere with the appeal process, and I think

16   that's -- that's laid out pretty clearly in the case law on

17   the jurisdictional law.  It's discussed in United States v

18   Rivera, 844 F.2nd, 916, 921 (2nd Cir. 1988), and I think

19   even more tellingly in, I wouldn't even try to pronounce it,

20   Y L U G H I O U G H E N Y, an Ohio Coal Company v Milliken,

21   200 F.3rd, 942, 951-52 (6th Cir. 1999) or a hearing on merit

22   denied 2000 US opt Lexus 3382, 6th Circuit, March 2, 2000.

23   Cert denied 531 US 818, 2000.

24             The Abner Coleman case that the reply mostly

25   relies on for the statement that the lower court can act in

1    certain circumstances where the mandate hasn't been issued

2    yet, was one where there was no request for a stay of it,

3    and the district court was up -- up against the speedy trial

4    issue.  I think Deep v Boys, which -- which the reply also

5    relies on, pretty much sort of blindly cited the Abner

6    Coleman case with a broader proposition, and the -- the

7    Sixth Circuit case says, yes, even though ministerial, it

8    does have a meaning and I think, particularly where there is

9    a motion for a stay of the mandate, that's important and

10   that take is laid out in the advisory committee notes to

11   Rule 41D.  But I'm not sure that gets MOAC to where it wants

12   to go here, because I'm not sure that the divestiture

13   doctrine really applies in this situation, necessarily.

14   There's a good discussion of it in Ray Winimo Realty Corp,

15   270 BR 99, SDNY 2001, also citing that and later cases in

16   another district court opinion Ratcliff v Rancheros Legacy

17   Meat Company, 2020 US District Lexus 127, 276 at 9 through

18   10, District Court Minnesota, July 2021; as well as by Judge

19   Chapman in Ray Sabine Oil and Gas Corp 548 BRF 674, 679,

20   Bankruptcy SDNY 2016.

21         So the -- the point there is that the mere fact of

22   a pending appeal doesn't divest the court of jurisdiction to

23   implement and enforce the order.  That flips the burden of

24   getting a stay, pending appeal on its head.  You wouldn't

25   have to move for a stay pending appeal, if the very fact of

Page 58

1      and appeal divested the court of implementing the order it's

2      being appealed from.  Instead, the rule makers said no, you

3      have to rule for a stay, pending appeal and win before that

4      happens.  What -- what you can't do, under the divestiture

5      doctrine is expand on, or alter the order that's on appeal,

6      or interfere with the appeal.  And I -- I think that's an

7      important point.  Now, my order authorizing the assumption

8      and assignment of the lease from September 5, 2019, which

9      has the two year limitation in it, isn't really, I don't

10     think the subject of the appeal.

11            I think the subject of the appeal is the -- the

12     district court's determination that 363M deprived it of the

13     ability to reverse my order.  On the other hand, this matter

14     is before the district court -- I mean, I'm sorry, it is

15     before the Court of Appeals in the Motion for Stay of the

16     Mandate.  They have the ability to condition that request on

17     various things and I think it would be useful for the

18     District Court, for the Circuit Court, excuse me, to -- to

19     know my view of that two year limitation.  And I think I

20     have the power to, through you, to let them know of that

21     view under Bankruptcy Rule 8008, which says that if a party

22     files a timely motion in the Bankruptcy Court for relief

23     that the Court lacks authority to grant, because of an

24     appeal, that has been docketed and is pending.  The

25     Bankruptcy Court may defer considering the motion, deny the

1   motion, or state that the Court would grant the motion if

2   the court where the appeal is pending remands for that

3   purpose, or state that the motion raises a substantial

4   issue.  And then B says the movant must properly notify the

5   clerk of the court when the appeal is pending, if the

6   Bankruptcy Court state that it would grant the motion or

7   that the motion raises a substantial issue.

8              And I think I would grant as modified, the motions

9   request with respect to the two year period, but really, by

10  saying that I don't believe that it applies, under these

11  facts, not because of anything wrong that MOAC did, but

12  because the premise of the two year limitation was that two

13  years was a reasonable time, if Transform was free to do so,

14  to find a tenant.  And if it couldn't do so, by that point,

15  adequate assurance would require that it not hold onto the

16  lease anymore.

17             MR. OTSUKA:  Your Honor, I didn't want to

18  interrupt.  May I be heard on --

19             THE COURT:  Sure.  Yeah, go ahead, no I wanted to

20  lay that all out on the table.  That's not a ruling. I  want

21  to lay out my thinking so that you all can respond to it.

22             MR. OTSUKA:  Your Honor, on the two year point, I

23  certainly understand that the Court is maybe giving more

24  color describing the Court's reasoning for why the order is

25  entered and it may be interpreting the Court's own order.  A

1   couple of things that I would point out, however, in terms

2   of if the Court is inclined to say that the two years

3   doesn't begin to run until any appeal is final, whatever

4   that may mean.  Obviously, Transform has been marketing this

5   sublease during this time.  That's why they have a signed

6   sublease, right?  So it doesn't make sense to me that they

7   should be given two more years when they have spent this

8   time, at least, some of it, probably most of it, marketing

9   and -- and looking for a subtenant, which they believe that

10  they have found a suitable subtenant.

11             THE COURT:  Right.

12             MR. OTSUKA:  So --

13             THE COURT:  That -- can I interrupt you?  That's a

14  fair point, but at the same time it has to be enough time so

15  that the deal can be closed -- or a deal can be closed after

16  what would be a reasonable condition, which is that the

17  prospective subtenant is reasonably assured that after it

18  closes, it won't be divested because of some further ruling

19  on appeal.  So, I understand.

20             MR. OTSUKA:  It --

21             THE COURT:  Another two years is -- my point is

22  that the debtor, Transform shouldn't be up against a, you

23  know, an imminent deadline here, because of not its own

24  inability to market the premises but to close, because of

25  the pending appeals.

1           MR. OTSUKA:  And I understand that, Your Honor,

2    and I would also point out, as Mr. Martin said and as the

3    Court recognized, the Second Circuit did extend that two

4    year period, and that was with the consent of MOAC.

5    Transform has not sought -- has not asked the Second Circuit

6    to extend that deadline.  Maybe with the Court's comments

7    today, it may do so, but my only point is that that request

8    to further extend that deadline has not brought to MOAC, I'm

9    not sitting here today with an answer to that.

10          THE COURT:  Right.

11          MR. OTSUKA:  But my point is, we did consent for

12   that very reason, that Your Honor is pointing out.  We

13   consented to the -- to the Second Circuit extending the

14   deadline out another 60 days.  So I guess that's all I would

15   say about the two year time period.

16          THE COURT:  Okay.  All right.

17          MR. OTSUKA:  In -- in terms of the jurisdictional

18   question, I'm not sure how much, Your Honor, wants to --

19   wants to hear on that.  I -- I agree and it was -- this was

20   in my notes that what the Court said that a lower court may

21   not expand or alter its prior judgement that's on appeal,

22   and I think quite clearly, that's what Transform seeks here.

23   They're asking the Court, putting aside this -- the question

24   of did they satisfy the -- the two year provision?

25          All the other relief that they're asking for,

1    they're asking the Court to give an opinion on all these

2    other conditions that -- that Transform says it has

3    satisfied.  We quite -- quite clearly say they haven't.

4    That -- I'm happy to get into the substance of that, but

5    that is very obviously expanding on the -- on the assignment

6    order.  The assignment order --

7              THE COURT:  Yes, but --

8              MR. OTSUKA:  -- authorized --

9              THE COURT:  -- but it doesn't seem to be

10   interfering with it.  I mean, if -- if -- if -- see, I

11   actually think that is the type of thing that I could --

12   that aspect, I think I probably could rule on.  I'm not sure

13   it's really T'd up for me to rule on today because I think I

14   need to hear some evidence on compliance with the right of

15   first offer and the, you know, and the lease in terms of an

16   acceptable subtenant.  But that's -- that's a question that

17   is really, to me, very far removed from whether Section 363M

18   isolates consideration of my order on appeal.  I think

19   that's a very different issue.  I mean, for example, if --

20   if I had authorized the assumption and assignment of the

21   lease or -- or the -- yeah, the assumption and assignment of

22   the lease and it required ongoing adequate assurance

23   payments, right?  Which it did in fact, I mean, it's only

24   $10.00 a year, plus taxes, but if in year two, Transform

25   didn't pay the taxes and you wanted to enforce that cure

1    payment here as opposed to in Minnesota in state court, that

2    wouldn't interfere with the appeal.  I mean, it's  separate

3    issue.  Say -- similarly with the ability to sublease.  I

4    don't see how that interferes with the appeal.  It's a --

5    it's a separate issue.

6            MR. OTSUKA:  Your Honor, a few things.  So first

7    of all, Transform is asking the Court to issue and order

8    that says Transform has prevailed in the litigation

9    regarding assignment of the Master Lease, therefore the

10   Master Lease assignment is fully valid and enforceable.

11           THE COURT:  That's -- I -- that's the -- I

12   understand.  That point, I understand and that's why I was

13   focusing on the two different issues.  I think that --

14           MR. OTSUKA:  So may --

15           THE COURT:  And the reason they want that decided

16   is they're concerned about the two years.  And but --

17           MR. OTSUKA:  But Your Honor --

18           THE COURT:  -- but they're also asking for a

19   determination that the right of first offer was complied

20   with and -- and -- that -- that and that the lease -- the

21   prospective subtenant is an acceptable tenant under the

22   lease, and to me, that -- that's different than saying all

23   of the litigation is done.  Clearly, all of the litigation

24   is done, that's something before the Circuit, whether it's

25   done or not.  That's up before the Circuit.  That's the

1    process of getting a stay or not of the -- of the -- the --

2    the mandate and -- but that's all occasioned by what I think

3    is a misplaced concern by Transform, that they're up against

4    a deadline that's about to expire and may well expire before

5    Cirt is dealt with, and -- and I think that's a separate

6    issue.  But as far as the other --

7              MR. OTSUKA:  If you --

8              THE COURT:  -- relief they're seeking, while I'm

9    not prepared to do it today, because this is not an

10   evidentiary hearing, I don't see how that interferes with

11   the appellate process.

12             MR. OTSUKA:  I -- I'm sorry, Your Honor, just to

13   clarify, when you say the other relief they're seeking,

14   which -- which part of that were you referring?

15             THE COURT:  Well, they -- they -- they attach to

16   their motion MOAC's letter which says we don't accept the

17   subtenant, and they want a determination that you've done

18   that improperly, because this is an acceptable subtenant,

19   and that the lease has been complied with.  To me that's --

20   that -- that has very little, if anything to do with the

21   appeal.  Whereas, if they ask for the determination they're

22   all -- that the litigation contingency is -- is over, well,

23   I think that -- that does have something with the appeal.

24             MR. OTSUKA:  I understand. ]

25             THE COURT:  I mean, how could I tell the Second

1    Circuit that the litigation's over when they have a motion

2    pending before them for a stay of the mandate?

3              MR. OTSUKA:  I -- I understand the distinction

4    you're just  -- Your Honor's making, and I -- and I

5    certainly agree that there's a difference -- I'm not

6    conceded the same conclusion that, Your Honor, just said,

7    but I do agree that -- that is -- it's not proper for this

8    Court to make the determination that the litigation

9    contingency, as a whole, has been satisfied.

10             THE COURT:  Right.  Okay.

11             MR. OTSUKA:  So -- I -- I don't know where that

12   leaves us right now.

13             THE COURT:  Well, I think -- again, where I think

14   it leaves us is I could schedule an evidentiary hearing on

15   the lease compliance issues, if you will.  You know, has the

16   right of first offer been complied with and is the proposed

17   subtenant a tenant that could be rejected by the landlord.

18   I don't want to have -- I mean, we're not having that

19   hearing today, it wasn't scheduled as an evidentiary

20   hearing.  I don't know when I would have time to do it.  I

21   don't know if anyone wants to take discovery on it.  But I

22   don't -- I don't think anything more needs to be said on

23   that point today.  What I don't believe requires an

24   evidentiary hearing, but which I also believe I should defer

25   on under Rule 8008, is a ruling on the other portion of the

1   motion which, as you said, seeks a determination that the --

2   the contingency has occurred.  Which really means the

3   litigation is done.  But I think I should state and

4   authorize and direct the movant, Transform, to so inform the

5   Circuit that I believe the two year limitation under my

6   order doesn't apply in these circumstances where the S&E

7   tenant, Transform, has obtained, under what apparently is a

8   -- a fully documented sublease, a tenant, and the only thing

9   impeding that tenant from taking, under the sublease, within

10   the two years is the fact of the pending appeal and -- and

11   litigation occasioned by the landlord's denial of

12   acceptability of the tenant and the right of first offer

13   being complied with.  And I think, frankly, because you have

14   a pending motion for a stay of the mandate, if the Circuit

15   wants to grant that stay, it could put conditions on it like

16   extending the two year period, posting a bond, whatever.  If

17   it doesn't extend -- if it doesn't stay the mandate, I

18   believe that at that point, I should determine, and I'm

19   telling you know how I will determine it, the two year

20   issue, and -- and determine that that two years doesn't run

21   until the appellate process is finished, with suitable time

22   to close the deal.  And we'll leave it at that.

23          I mean, that's the really pressing dispute.  That

24   really is a case for controversy.  It's very live, I mean,

25   they lose this tenant if -- if that two years runs under the

1   interpretation that I'm not accepting, but I think there

2   should be an order that reflects that.  I'm not accepting

3   it.  And similarly, the issue of an acceptable tenant is --

4   is live too, and I think I have jurisdiction over it,

5   because it's part of the adequate assurance, you know, I

6   basically said, this has to get done.  This part of the

7   assignment of the lease.

8           So I don't want to interfere with what you've T'd

9   up in the Circuit court, but I think they should know how I

10  would rule if they denied the stay and leave it at that.

11          So I would -- I would not dismiss the motion, I

12  would defer consideration of it.  I think the parties should

13  discuss whether they need discovery, agree on a discovery

14  schedule, and get a hearing date for an evidentiary hearing,

15  which I think would be no more than half a day, and they can

16  get that from Ms. Lee in the clerks' office.  And again, I -

17  - I'm telling you both now that I would make it clear that

18  the two year limitation doesn't apply in this situation

19  where those two issues, namely the acceptable tenant and

20  then right of first offer, have been raised by the landlord,

21  basically right at the end of the two year period, and the

22  appeals process has prevented the closing of what would

23  otherwise be a, you know, a real tenant, sublease.  Because,

24  again, that wasn't -- that wasn't what I was addressing in

25  that condition of adequate assurance of future performance.

Page 68

1    What I was addressing was a situation where Transform

2    literally didn't come up with someone, who was real, within

3    two years and just kept the landlord hanging out there,

4    potentially for up to 70 years, because that was the

5    remainder of the lease, which wasn't -- which I didn't

6    believe fair.

7               MR. OTSUKA:  Thank you, Your Honor, if I --

8               THE COURT:  So I don't think you needed an order

9    on this at this point. I think obviously you should get the

10   transcript, promptly, and let the Circuit know the result

11   and then you may want to give me a scheduling order or if

12   you're comfortable that you can take whatever discovery you

13   need before the hearing, just schedule the hearing and we'll

14   go ahead with the evidentiary hearing.  If it's at any time

15   in the next couple of months, it will probably held

16   remotely.  I have a well developed form of remote hearing

17   order and procedure that you can get from Mr. Andino in the

18   Clerks' office that, you know, just help you plan for that.

19              MR. MARTIN:  Your Honor, this is Craig Martin.

20   Thank you for that. I think what I've heard you say is on

21   the 8008 indication to the Second Circuit, that we are

22   authorized and directed to do so, and that we can provide

23   the transcript.  You won't be doing any type of writing on

24   that --

25              THE COURT:  Right.

1          MR. MARTIN:  -- so what we'll -- we'll figure out

2    how to do that, and then we will be happy to confer with Mr.

3    Otsuka so that our clients can decide how much discovery

4    they want and then work together to come up with an

5    appropriate hearing date on these other issues that you've

6    identified today.

7          THE COURT:  And as -- and as you know from the

8    last evidentiary hearing before me, my practice is to take

9    direct testimony by declaration or affidavit with the

10   witness to be life for cross and redirect.  And for the

11   parties to meet and confer and agree on the admissibility of

12   as many exhibits as they, in good faith, can agree on being

13   admissible, and submit a joint exhibit book, along with the

14   witness declarations of direct testimony to chambers a few

15   days before the evidentiary hearing, and a separate binder

16   of any exhibits whose admissibility they want to fight over.

17          MR. OTSUKA:  Your Honor, Greg Otsuka, one more

18   time, or at least one more time for now. I heard you say

19   earlier, and I just want to make sure that the -- the

20   transcript is reasonably clear, since there won't be a

21   written order, that -- I heard you say that the two year --

22   in the Court's opinion, the two year deadline shouldn't

23   expire by virtue of the issues that you identified, but that

24   it also is not true that the two years should -- should

25   start over --

1            THE COURT:  Yeah --

2            MR. OTSUKA:  -- that there should be some

3      reasonable time --

4            THE COURT:  There should be a reasonable time to

5      enable the identified transaction to close.

6            MR. OTSUKA:  Understood.

7            THE COURT:  Okay.  I think you're on mute, Mr.

8      Martin, although I don't see the symbol of that, but you're

9      on mute.  Maybe it's because you took off your headset?  I

10     don't know.

11           MR. MARTIN:  A can you -- are you able to hear me?

12           THE COURT:  Yeah, now I -- now I can hear you.

13     Yeah.

14           MR. MARTIN:  Just to be -- just to be clear on

15     that point, the -- the sublease has a provision that,

16     obviously, we have had a hard time getting a tenant, because

17     of the litigation, and there is a timeline on the litigation

18     resolution of 270 days.  It -- so however long this takes,

19     it is foreseeable that our subtenant, if we exceed that time

20     period, would have the ability to exit, and we would

21     effectively be starting over on a subtenant, so -- I

22     understand if you don't want to make a ruling today, two

23     years may be appropriate, depending on what happens.  It may

24     not --

25           THE COURT:  If you --

1          MR. MARTIN:  I don't want to impose that today --

2          THE COURT:  I think all I can say at this point is

3    it should be a reasonable time and -- look the Circuit may

4    do all sort -- it may -- it may grant the stay, but it --

5    but impose a bond requirement.  You know, there are lots of

6    things that could be done.  So I don't want to take that

7    away from them.  But I do want to let the know how I viewed

8    this order because it think that's important for them to

9    know.  This condition in the order.

10         MR. MARTIN:  And I appreciate that.  I just wanted

11   it to be clear that we do -- even though the clock that Your

12   Honor -- we thought, Your Honor, set, may not be running, we

13   do have a clock running in our -- in our sublease.

14         THE COURT:  A separate deal clock.  That -- that's

15   fair and that's something you could raise with the Circuit.

16   I'm just focusing on a reasonable time at this point.

17         MR. MARTIN:  Understood and thank you, Your Honor.

18   Unless you have any other question for me, I think we

19   understand where you're coming from and --

20         THE COURT:  Okay.

21         MR. MARTIN:  -- what steps you would like us to

22   take.

23         THE COURT:  All right.  Very well.  Thank you.

24         MR. OTSUKA:  Thank you.

25         MAN 1:   Thank you, Your Honor.

1          WOMAN 1:  Thank you, Your Honor.

2          THE COURT:  Okay. I think that concludes the

3     mattes in the Sears case for today, so I'll be signing off

4     at this point.  Thanks everyone.

5          MAN 1:  Thank you, Your Honor.

6          WOMAN 1:  Thank you.

7          (Whereupon these proceedings were concluded at

8     4:00 PM)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              C E R T I F I C A T I O N

2

3      I, Sonya Ledanski Hyde, certified that the foregoing

4  transcript is a true and accurate record of the proceedings.

5

6  *Sonya M. Ledanski Hyde*

7

8  Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20  Veritext Legal Solutions

21  330 Old Country Road

22  Suite 300

23  Mineola, NY 11501

24

25  Date:  January 24, 2022

**&**

**&**   3:12,17,19 4:2
4:3,10,14,16,20
4:21 5:12,13 7:3
10:20

**0**

**0.00.**   3:8 5:8

**1**

**1**   2:11,19 3:6,16
4:1,13,19 5:6,11
7:12 22:1 37:12
71:25 72:1,5,6
**1,068**   11:21
**1,560**   11:21
**1.1**   17:14
**1.2**   18:16 48:1
**1.3**   18:16
**10**   38:14 57:18
**10.00**   62:24
**10.5**   34:22
**10/31/2021**   2:21
3:8
**100**   14:14
**10019**   7:20
**10036**   7:13 9:18
**10112**   8:11
**10131/2021**   3:18
**1013112021**   4:15
5:8
**10153**   7:6
**10154**   4:2,4,17,20
4:22 5:12,14
**10155**   4:3,4,21,22
5:9,13,14
**10156**   2:22
**10160**   3:20 4:4,4
4:22,22 5:14,14
**10161**   3:9
**10162**   2:12
**10163**   5:24
**10171**   2:6

**10191**   4:6,24 5:16
**10193**   6:11
**10194**   6:5
**10240**   10:25
**106.1**   16:13
**10601**   1:14
**107**   39:17
**11**   43:3,12
**1114**   14:17
**112021**   3:18
**1133**   9:17
**11501**   73:23
**12**   34:1 43:10
**12/28/2021**   6:13
**1201**   9:3
**12151**   73:6
**127**   57:17
**13**   26:5
**13.1**   17:20
**1300**   8:17
**1350**   7:19
**148,882.59.**   3:19
**15**   13:16
**15,000**   20:10
**15.4**   18:14
**150**   42:13 43:20
44:25
**153**   16:11
**159.4**   16:11
**15th**   51:18
**17**   17:10,21
**17.5**   34:23
**17.7**   18:11,22,24
19:23 23:1
**18-23538**   1:3
**19801**   8:4 9:4
**1988**   56:18
**199**   19:25
**1999**   56:21

**2**

**2**   4:2,20 5:12
17:23 19:24 24:23
37:12 41:20 43:22

45:13 56:22
**2,517,997.00**   3:18
**2.3**   19:24
**20**   1:17 2:6 6:20
10:14,14 29:9
**20,000**   20:13
**200**   19:25 56:21
**2000**   56:22,22,23
**20005**   8:18
**2001**   57:15
**20138**   5:18
**2016**   57:20
**2019**   58:8
**2020**   41:2 43:3,5
43:12 57:17
**2021**   2:11,12,19
2:19 3:6,6,16,16
4:13,14 5:6,6
57:18
**2022**   1:17 2:6 6:20
73:25
**23**   13:2
**23.4.**   17:7
**24**   73:25
**248**   1:13
**25th**   53:12,12
**26385**   5:19
**266,139.00**   5:8
**27**   33:2
**270**   57:15 70:18
**276**   57:17
**276793.00**   3:8
**28**   43:10
**28.8**   17:20
**287,232.21.**   4:16
**2:10**   1:18
**2nd**   56:18

**3**

**3**   4:3,21 5:13
14:17,19 25:3
43:1
**30**   8:10 13:3 17:10

**30,428.89.**   2:22
**300**   1:13 73:22
**31**   2:12,19 3:6,16
4:13 5:6
**330**   36:11 73:21
**3382**   56:22
**34.5**   17:6
**363m**   58:12 62:17
**3c**   51:24

**4**

**4**   18:6,8
**40**   12:7
**41**   40:15
**41.3**   12:20
**41d**   48:14 57:11
**42**   17:20
**440**   12:17,21 20:1
**45**   20:3 21:17
**492**   12:11,14
**4:00**   72:8

**5**

**5**   28:11 33:21
41:25 42:1 58:8
**50**   19:3,22 20:11
20:15,15 21:16,17
22:3 28:14
**507**   13:25
**5074**   49:2
**53.3**   18:24
**531**   56:23
**548**   57:19
**55**   13:17
**55437**   9:11
**58**   11:22 43:22
44:25
**58.2**   18:2

**6**

**6**   22:22 24:8,13
41:22
**6.3**   49:7 55:8
**6.3a**   54:13

**60**   51:16 61:14
**62**   19:8,8
**62.6**   18:1 24:9
**66**   19:8
**674**   57:19
**679**   57:19
**6th**   56:21,22

**7**

**7**   3:17 6:17 45:11
**7/1/2021**   2:21 3:7
**7/112021**   5:7
**70**   21:19 49:16,21
   68:4
**711/2021**   4:15
**75**   19:5
**76**   13:17
**76,275.00**   2:21
**767**   7:5

**8**

**8**   11:22 26:19 43:5
**80**   19:6
**8005**   53:17
**8008**   53:19,21
   58:21 65:25 68:21
**818**   56:23
**8300**   9:10
**839,969.00**   4:15
**844**   56:18

**9**

**9**   57:17
**91**   43:10
**916**   56:18
**919**   8:3
**921**   56:18
**942**   56:21
**951-52**   56:21
**99**   57:15
**99.7**   16:14
**9985**   5:20,22

**a**

**ability**   29:1 56:14
   58:13,16 63:3
   70:20
**able**   10:20 18:10
   19:16,22 21:16
   22:3 37:13 44:18
   70:11
**abner**   56:24 57:5
**absence**   43:19
**absolutely**   35:2,7
**accept**   64:16
**acceptability**
   66:12
**acceptable**   62:16
   63:21 64:18 67:3
   67:19
**accepting**   67:1,2
**access**   10:6
**accommodate**
   27:3
**accommodation**
   30:22
**accompanying**
   6:9
**accomplishment**
   13:14
**account**   13:6
   18:11 24:18,19
   50:3
**accrual**   21:25
**accurate**   73:4
**achieving**   10:12
**acquired**   51:20
**act**   56:25
**action**   24:17
   56:14
**actual**   3:5,15 15:7
   42:2
**acutely**   30:16
**added**   18:16 24:8
**addition**   11:25
   14:20

**additional**   16:22
   16:24 22:16,20
   23:21 30:4 31:2
   33:18
**additions**   19:21
**address**   26:12
   40:5 45:4
**addressed**   46:13
**addresses**   26:19
**addressing**   54:19
   67:24 68:1
**adequate**   59:15
   62:22 67:5,25
**adjourn**   55:24
**admin**   37:9
**administrative**
   2:9 8:16 11:6,7,23
   14:25 18:12 19:1
   19:19,20 20:4,9
   21:4,13,15,23
   22:14 27:22 28:11
   28:12,16 30:8,15
   32:16 33:22 34:24
   35:25
**admins**   35:6
**admissibility**
   69:11,16
**admissible**   69:13
**admit**   48:9
**admitting**   16:22
**advance**   11:8
   22:16,25
**adversary**   6:17
   37:21
**advisor**   5:3
**advisors**   11:5
   19:18
**advisory**   57:10
**affidavit**   69:9
**affirmed**   46:19
**afternoon**   10:2,21
   24:4,6,11 38:5,10

**agenda**   6:19 10:4
   10:8 25:15 36:25
   37:12,20
**agent**   2:9 32:16
**ago**   26:15 45:2
**agree**   30:3,23
   31:19 46:9 61:19
   65:5,7 67:13
   69:11,12
**agreed**   16:3 28:20
   36:17 45:23
**ahead**   10:17 36:5
   40:18 53:2 59:19
   68:14
**akin**   4:1,9,14,16
   4:19 5:11 7:10
   24:7,12 25:23
   32:23
**al**   1:7 5:4 10:4
**alexander**   4:5,23
   5:15
**allocate**   19:24
**allocated**   18:15
**allocation**   14:3
**allow**   18:15 20:3
   20:15
**allowance**   2:5,17
   3:4,13 4:11 5:5
**allowed**   11:22
   12:3,4,6,9,21,24
   16:10 19:3 45:16
**allows**   53:22
**alter**   58:5 61:21
**americas**   9:17
   37:19
**amount**   15:21
   16:12 19:3 24:14
   27:16
**amounts**   12:18
   15:6 16:10 29:4
**analysis**   11:9 17:5
**andino**   68:17

**announcement**
18:9
**anomalies** 31:25
**answer** 6:14 23:3
24:12 26:2 61:9
**anybody** 21:10
**anymore** 59:16
**apart** 29:13
**apologies** 27:8
**apologize** 42:1
**apparently** 33:18
66:7
**appeal** 13:22,25
14:4 16:4 23:16
41:17 43:21 44:16
45:2 46:3 48:10
48:12 50:23 56:15
57:22,24,25 58:1
58:3,5,6,10,11,24
59:2,5 60:3,19
61:21 62:18 63:2
63:4 64:21,23
66:10
**appealed** 58:2
**appeals** 13:11
14:1 16:6 41:18
45:14 50:4,24
51:3 54:5 58:15
60:25 67:22
**appear** 34:17
38:16
**appearing** 10:7
**appears** 12:10
45:9
**appellate** 23:17
40:15 56:12 64:11
66:21
**applicants** 25:25
26:16 36:23
**application** 2:9,14
2:15 3:1,2,11,12
4:8,9 5:1,2 29:11
34:5 38:14

**applications** 2:4
17:12 24:15 25:16
25:20 26:1,9
28:17 29:13 31:20
32:4,15,15,23
34:21 36:20
**applies** 57:13
59:10
**apply** 66:6 67:18
**appreciate** 23:25
34:3 43:12 51:1
71:10
**appreciates** 54:11
**appropriate**
23:21 69:5 70:23
**approved** 28:19
28:20
**arbitrary** 56:3
**argue** 38:16,22
40:2
**argued** 41:11,17
**argument** 40:25
45:8,9,15 46:1
49:23 52:22
**arguments** 55:1
56:7
**arisen** 33:19
**arrangements**
31:12
**art** 1:25
**aside** 61:23
**asked** 45:22 61:5
**asking** 28:24
61:23,25 62:1
63:7,18
**aspect** 62:12
**aspects** 54:20
**asserted** 14:19,23
14:24 15:6,10
21:19,21 24:17
**asserting** 16:2
**asset** 17:22 19:11

**assets** 17:11,16,18
17:19 22:18,20
30:18 35:15
**assignment** 6:2
37:2 49:1 58:8
62:5,6,20,21 63:9
63:10 67:7
**assistance** 35:11
**assuming** 26:16
**assumption** 6:2
37:1,2 58:7 62:20
62:21
**assurance** 59:15
62:22 67:5,25
**assured** 46:2
60:17
**attach** 64:15
**attempted** 18:20
**attention** 23:12,14
**attorney** 3:17
6:14
**attorneys** 3:13 7:4
7:11,18 8:2,9,16
9:2,9,16
**aty** 4:15
**audio** 27:9
**audits** 16:20,21
**authority** 58:23
**authorize** 66:4
**authorized** 62:8
62:20 68:22
**authorizing** 6:2
37:1 58:7
**available** 17:25
19:11 20:11 21:18
22:19
**avenue** 7:5 9:17
**aware** 22:22
30:16 55:23

**b**

**b** 1:21 36:23
39:17 43:22 59:4

**back** 21:7 27:9
28:6 33:3 35:14
38:3 49:14
**balances** 17:6
**ballard** 3:3 8:1
26:11
**bankruptcy** 1:1
1:12,23 53:16
57:20 58:21,22,25
59:6
**based** 16:19 18:1
55:16
**baseline** 19:15
**basically** 11:20,20
23:12 26:20 35:10
55:7 67:6,21
**basis** 29:3,4 32:20
32:22 36:19
**behalf** 4:5,23 5:15
5:23 6:4,10 24:4
24:12 25:25 26:11
28:9 33:10,14
37:9
**believe** 10:15
19:16 24:13 25:5
31:17 35:9 36:18
39:5 41:22 44:3
46:15 49:20,22
54:12 59:10 60:9
65:23,24 66:5,18
68:6
**belknap** 9:15
38:12
**benefit** 13:11 20:8
20:9 21:22 33:24
**best** 16:19 55:2
**better** 43:24
**beyond** 29:9
31:24
**big** 30:19 34:11
36:2
**billing** 31:7,24

billion  28:11
bills  27:17
binder  69:15
binding  48:5
bit  19:24 55:4
blame  35:3
blessing  20:25
blindly  57:5
block  50:2
blown  32:9,11
bond  52:14,17
   66:16 71:5
book  69:13
books  16:19
bottom  14:12 16:9
   16:12 17:24 33:17
   33:19
boys  57:4
br  57:15
brauner  7:15
   24:11,12
brf  57:19
bridging  34:9
brief  33:10 40:25
   53:12
briefing  40:21
   41:22 45:9 47:7
briefly  34:16
bring  23:11,14
bringing  15:6
brings  13:16
   34:15
broader  57:6
broadway  7:19
broken  15:3
brought  61:8
bryant  7:12
burden  57:23
business  55:12,18

**c**

c  7:1 10:1 43:22
   73:1,1

calculate  51:17
calculating  51:8
calendar  37:18
call  37:11
called  43:25 53:18
   53:22
capacity  49:6
capped  12:17
careful  49:13
carefully  36:6
carolina  5:19,23
carved  36:15
case  1:3 10:6
   27:23 28:2,3
   29:15 30:12 31:14
   31:18,22 32:13
   37:11 39:13 43:7
   49:18,22 55:15
   56:16,24 57:6,7
   66:24 72:3
cases  20:5,18
   22:16 30:21 57:15
cash  17:5,10,17
   17:18,21,25 18:9
   18:9 19:10 35:16
category  12:9,24
   14:16
cause  6:13 37:21
causes  24:17
ceased  42:6
ceiling  39:1
center  9:10
cert  23:18 48:15
   54:7 56:23
certain  12:16
   15:15 16:20 23:15
   39:7 49:2,3 57:1
certainly  16:22
   38:22 44:12 52:19
   59:23 65:5
certified  73:3
cetera  55:17,18

chambers  38:17
   40:9 69:14
chance  51:19
changed  31:13
chapman  57:19
charge  53:2
chart  12:10 15:9
   18:14
chesley  6:4,10
chief  41:3
cir  56:18,21
circ  52:16
circuit  14:4 16:4
   40:21 41:18,21
   42:2,17 44:3,7,13
   44:22 45:3,14
   46:7,15,21 50:14
   51:15 52:10,13,16
   52:25 53:14 54:6
   55:23 56:6,7,22
   57:7 58:18 61:3,5
   61:13 63:24,25
   65:1 66:5,14 67:9
   68:10,21 71:3,15
circuit's  46:13
circumstances
   57:1 66:6
cirt  64:5
citations  44:1
cited  57:5
citing  43:10,21
   57:15
civil  43:21 44:5,25
claim  5:18 11:15
   13:24
claimant  23:11
claimants  20:1
   28:12
claims  8:16 11:6,7
   11:16,21,23 12:6
   12:7,8,11,14,17
   12:23,25 13:1,4,5
   13:7,13 14:12,13

14:16,18,21,23,24
15:6,9,13,15,25
16:25 17:8,23
18:12,15 19:4,19
21:5,9,20 22:15
22:24 23:9,14
24:22,24 25:9,11
33:19 34:24 35:15
35:25 37:9
clarify  54:3 64:13
clarity  56:2
claw  28:6
clean  15:12
cleaning  17:8
cleanly  39:17
clear  29:18 46:6
   54:2 67:17 69:20
   70:14 71:11
clearly  29:6 36:2
   46:4,19 55:16
   56:16 61:22 62:3
   63:23
clerk  2:9,12 32:15
   43:6 53:24 59:5
clerks  67:16 68:18
client  33:14
clients  69:3
clock  71:11,13,14
close  19:25 21:18
   28:6 30:10 34:8
   43:7 60:24 66:22
   70:5
closed  60:15,15
closer  15:7 34:6
   34:21 35:2
closes  60:18
closing  67:22
coal  56:20
coleman  56:24
   57:6
collateral  36:16
colleague  31:16

colleagues 49:23
color 59:24
combination
  55:22
come 13:19 15:18
  17:15,18,19 18:10
  24:9 34:8 37:22
  47:2 55:8 68:2
  69:4
comes 20:9 52:21
comfortable
  68:12
coming 53:8
  71:19
comm 4:14
commences 48:1
commencing 48:7
comment 51:1
comments 33:13
  34:4,14 47:3 61:6
commercial 39:18
committee 2:16
  4:10 5:3 7:11 11:5
  19:16,18 21:15
  22:14 24:12 32:17
  35:12 36:17 57:10
company 6:15
  37:23 56:20 57:17
compare 12:5
compel 6:1
compensation 2:5
  2:14,17 3:1,4,12
  3:14 4:1,8,11,19
  5:1,5,11 31:11
  33:1
complete 44:2
completely 27:10
  30:3
completion 51:3
  54:4
compliance 54:22
  54:23 62:14 65:15

complied 63:19
  64:19 65:16 66:13
comply 39:6
conceded 65:6
concept 50:21
concern 51:8 64:3
concerned 29:11
  34:12 36:12 44:12
  49:8,18 53:15
  63:16
concerns 29:1
concluded 72:7
concludes 72:2
conclusion 65:6
condition 50:8
  52:13,14,18 54:21
  58:16 60:16 67:25
  71:9
conditions 49:2
  62:2 66:15
conduct 39:25
conducted 6:20
conducting 16:20
confer 39:23 40:5
  69:2,11
confirm 31:17
  37:22
confirmation
  30:12 35:13,23
confirmed 27:5
conflicts 2:16
  32:16
confusion 54:12
consent 19:17
  41:13,19 42:6,14
  42:18 44:4,14
  45:22 61:4,11
consented 61:13
consequently
  27:15
conserve 21:4,9
consider 19:2,5
  21:7 29:14

considerably
  35:21,22
consideration
  62:18 67:12
considered 33:7
considering 26:22
  58:25
constituents
  20:20 22:5
constitute 43:7
construction 6:15
  37:23
construe 44:21
consulting 4:2,20
  5:2,7,9,12
contemplate 52:6
contemplates 48:7
contemporaneous
  16:5
content 11:4
  49:20
context 41:10
  44:15
contingency
  51:25 52:4 54:15
  54:22 55:2 64:22
  65:9 66:2
continually 24:15
continue 12:22
  18:21 21:6 44:18
continuing 22:13
  43:12
contrary 50:16
contributed 17:16
control 22:18
  23:15
controversial
  20:25
controversy 66:24
cooperation 11:10
coordinated 11:3
corp 57:14,19

corporation 1:7
  5:4 10:4
correct 27:10
  49:17
cost 21:25 23:19
costs 22:6 28:11
counsel 2:16,20
  3:3 4:10 6:16 10:9
  10:16 22:15,16
  26:7 32:16,17
  49:24
country 73:21
couple 26:15 54:9
  60:1 68:15
course 43:19
  44:19
court 1:1,12 10:2
  10:22 11:1 14:6
  14:10 17:3 18:7
  23:5,18,25 24:6
  24:21 25:14,19
  26:4,13,16 27:7
  27:11 28:10,23
  29:23 30:6,11
  31:4 32:3,14 35:9
  36:22 37:4,7,15
  38:3,8,17,20 40:8
  40:12,24 41:2,6,7
  41:12,18,25 42:4
  42:10,12,22 43:6
  43:9,13,14,17,23
  44:6,8,23 45:4,17
  45:18,21,23 46:2
  46:4,9,21,23 47:4
  47:21,22 49:11,18
  50:7 51:5,7,10,14
  51:22 52:2,9,12
  53:11,19 54:7,17
  54:20 56:5,14,25
  57:3,16,18,22
  58:1,14,15,18,18
  58:22,23,25 59:1
  59:2,5,6,19,23

60:2,11,13,21
61:3,10,16,20,20
61:23 62:1,7,9
63:1,7,11,15,18
64:8,15,25 65:8
65:10,13 67:9
68:8,25 69:7 70:1
70:4,7,12,25 71:2
71:14,20,23 72:2
**court's** 14:3 38:15
43:2,4 45:1 58:12
59:24,25 61:6
69:22
**cover** 40:6
**covering** 28:23
**craft** 4:5,23 5:15
7:18 24:4 25:22
32:24 33:10
**craig** 9:6 38:6
39:22 41:8 48:21
50:25 53:5 55:21
68:19
**credibly** 21:5
**creditor** 4:14
19:20 21:16 33:15
34:25
**creditor's** 36:16
**creditors** 2:17
4:11 5:4 7:11 19:1
19:3 20:4,7,16
28:15,16,21,22
30:16 33:23 36:14
**critical** 48:3,13
56:12
**cross** 22:3 69:10
**cure** 62:25
**current** 22:7 53:7
**currently** 18:15
20:1 40:20

**d**

**d** 1:22 10:1
**daluz** 8:6 26:10
26:10 27:5,9

**31:17,19 32:8**
**date** 2:2 10:12
11:4 14:13,15
15:2 19:16,18
21:14 22:14 28:14
29:16 30:17 34:6
35:11 48:2,23
67:14 69:5 73:25
**dated** 10:14 26:5
**david** 7:22 9:20
24:3 33:9 38:12
**day** 45:25 67:15
**days** 26:15 42:14
43:20 44:25 51:16
61:14 69:15 70:18
**dc** 8:18
**de** 8:4 9:4 12:1,3,4
20:6 21:17 22:1
**deadline** 52:5,6
54:12 56:3 60:23
61:6,8,14 64:4
69:22
**deal** 25:6 30:13
35:5 60:15,15
66:22 71:14
**dealing** 13:21
14:22
**deals** 11:16 39:18
**dealt** 22:10 23:20
32:24 36:5,7 64:5
**debt** 16:2
**debtor** 60:22
**debtor's** 3:17 10:9
10:11,16 11:2,8
15:19,22 16:16,18
18:8 23:15 33:15
**debtors** 1:9 2:1,10
3:13 7:4 10:20
15:5,8 16:3 17:21
18:10,20 19:15,17
21:4 22:2,13,17
25:7,11,12 28:10
35:3,11 36:22

**december** 54:15
**decide** 55:12 69:3
**decided** 63:15
**decision** 43:4,8,24
43:25 46:14 55:24
56:3
**declaration** 69:9
**declarations**
69:14
**decrease** 15:14
17:20
**decreased** 13:2,3
**decreasing** 31:21
**deemed** 43:20
**deep** 57:4
**defendant** 6:15,16
**defendants** 18:19
**defer** 16:3 58:25
65:24 67:12
**deficiency** 28:21
**define** 48:8
**definition** 48:2,3
**delayed** 35:5
**denial** 55:6 66:11
**denied** 33:2 56:22
56:23 67:10
**deny** 58:25
**denying** 43:5
**department** 5:19
5:24
**depending** 70:23
**deprived** 58:12
**described** 17:12
20:2 43:13
**describing** 59:24
**design** 44:17
**despite** 18:19
**details** 11:13
**determination**
29:5 48:4,13
54:24 58:12 63:19
64:17,21 65:8
66:1

**determine** 29:1
66:18,19,20
**developed** 68:16
**development**
40:14,20
**deviation** 20:22
22:7
**dial** 21:7
**dialing** 37:11
**diatribes** 32:12
**dicta** 46:19
**difference** 17:24
65:5
**different** 21:19
28:23 30:2 33:15
52:4 55:18 62:19
63:13,22
**differently** 49:12
**difficult** 18:19
**diminishing** 13:12
13:20
**direct** 19:11 42:20
66:4 69:9,14
**directed** 68:22
**directing** 39:10
43:6
**disadvantage**
39:19
**disagree** 30:25
44:17 48:22
**disallow** 36:19
**disallowed** 13:24
**disclosed** 24:14
**disclosure** 39:18
**discount** 16:10
19:4
**discovery** 65:21
67:13,13 68:12
69:3
**discuss** 67:13
**discussed** 21:14
27:23 56:17

18-23538-shl   Doc 10284-1   Filed 02/04/22   Entered 02/04/22 15:56:09   Transcript
of January 20   2022 Hearing   Pg 80 of 93
[discussing - example]                                                    Page 7

discussing 32:1,5
discussion 34:7
52:22 57:14
discussions 26:23
dismiss 67:11
disparage 28:2
disposing 42:18
dispute 66:23
disputed 12:7,23
13:5,7,13 17:8
21:9 22:24 23:9
35:15
disputes 36:7
distinction 65:3
distribute 22:19
34:22
distribution 12:11
18:11,22 19:7,10
20:8 21:6 22:12
23:7 33:24 34:23
distributions
11:17 12:17,18
13:6 14:13 20:19
35:14 36:14
district 1:2 41:2
41:11 42:4,9,12
43:2,6,13,14,17
43:23 44:6,23
45:1,17,21 46:4
57:3,16,17,18
58:12,14,18
divest 57:22
divested 58:1
60:18
divestiture 56:9
57:12 58:4
divided 11:16
dla 9:1 38:6
doc 4:2,3,3,20,21
4:21 5:12,13,13
docket 10:15,24
10:25 15:12 39:13

docketed 58:24
doctrine 57:13
58:5
document 4:4,22
5:14,22 39:3
43:18,19,25
documented 66:8
documents 39:4
51:13
doesn't 10:6
doing 17:22 20:12
22:17,25 27:15
31:9 32:11 33:4,6
35:12 44:22 50:2
68:23
door 21:2 23:1
draft 32:9
drag 18:21
drain 1:22 10:3
dramatic 17:7
dramatically 13:7
drive 9:10
driven 18:3
driver 16:15
18:18
drogin 7:17
drop 37:13,17
due 51:20 53:12
duly 54:24
duplication 13:24
dykhouse 9:20
38:12

**e**

e 1:21,21 3:2 7:1,1
10:1,1 56:20 73:1
eager 46:24
earlier 18:4 20:7
21:3 69:19
early 32:13 53:15
earned 28:6
easy 55:12
ecf 2:6,12,22 3:9
3:19 4:5,17,23 5:9

5:15,19,24 6:4,11
6:17 49:2
ecro 1:25
effect 42:19 43:7
46:15 50:1
effective 2:2 10:12
11:4 14:15 19:16
19:18 21:14 22:14
24:10,25 25:3
29:15 30:22 33:12
33:18,20 34:1,6
34:10 35:11 47:2
effectively 70:21
effectiveness 42:7
47:13
efficacy 42:15
efficiencies 20:18
eight 13:1
eighth 3:2
either 15:11 19:5
23:10 31:12 36:19
38:1 54:5
eligible 11:17
12:11,17 15:24
email 38:17 39:2
40:9
emananuel 8:15
emmanuel 37:9
empty 49:21
enable 29:15
30:22 35:13 70:5
encourage 23:13
ended 43:8
enforce 6:1,9 37:1
47:22 57:23 62:25
enforceable 63:10
engage 21:11 23:8
enter 39:10 44:23
45:22
entered 36:24
38:21 41:11,14,15
42:5,5,12 43:13
43:20,21 44:15

45:19,23 49:1
59:25
entering 51:25
entirely 55:1
entitled 14:14,17
25:4
entry 51:9
erika 8:20 37:8
esl 18:1 24:17
36:1
essence 43:2 44:8
47:5
established 20:23
estate 17:14 21:20
33:20
estate's 21:15
estimate 15:19,22
16:13,16 17:14
estimated 16:10
27:16
estimates 15:7
16:18 35:3,19
et 1:7 5:4 10:4
55:16,18
event 45:17
events 48:24
everybody 20:12
20:12 28:5 32:22
everyone's 33:5
evidence 55:10
62:14
evidentiary 64:10
65:14,19,24 67:14
68:14 69:8,15
exactly 27:10 39:1
examiner 3:2,3,7
3:9 8:2,9 25:21
26:8,11,21 27:4
32:17,21
examiner's 26:5,6
26:19,23 27:13
example 52:15
62:19

18-23538-shl    Doc 10284-1    Filed 02/04/22    Entered 02/04/22 15:56:09    Transcript
of January 20    2022 Hearing    Pg 81 of 93
[exceed - frankly]                                                    Page 8

exceed  70:19
exceptions  56:13
exchange  54:14
excluding  17:25
excuse  37:5 58:18
execute  43:9
exhaustion  54:5
exhibit  42:25
  69:13
exhibits  6:10
  69:12,16
exit  70:20
expand  58:5
  61:21
expanding  62:5
expect  18:10
  31:22,25 34:4
  53:13
expected  18:10
expense  30:8,16
  37:9
expenses  2:5,11
  2:18,21 3:5,8,15
  3:18 4:12,16 5:5,8
  21:23 29:2
expire  64:4,4
  69:23
expired  44:4,24
explain  11:13
extend  61:3,6,8
  66:17
extended  52:19
extending  61:13
  66:16
extension  51:14
extent  19:22
  20:11 22:3 44:24
extra  49:13 52:11

**f**

f  1:21 42:25 73:1
f.2nd  56:18
f.3rd  56:21

faced  23:16
fact  37:15 39:6
  57:21,25 62:23
  66:10
facts  52:6 59:11
fail  7:8 10:19,19
  10:23 14:8,11
  17:4 18:8 23:13
  25:2,10,18,24
  26:25,25 28:8,8
  29:17,21,24 30:1
  30:25 34:16 36:21
  36:25 37:16
fair  27:13 30:11
  60:14 68:6 71:15
fairly  55:12
faith  69:12
false  34:20 35:2,7
familiar  19:13
far  13:9 21:5
  29:11 36:4,11
  47:8 62:17 64:6
favor  43:4,14
fear  34:17
february  22:10
  51:18 53:15
federal  40:15
  43:21 44:5,25
  53:17
fee  2:8,8,15,21 3:2
  3:3,6,8,8,18 4:9
  4:15 5:8 8:2,9
  14:3 17:12 24:15
  25:16,20,21 26:5
  26:8 27:3 29:10
  29:11,16 31:11,20
  31:20 32:3,14,15
  32:17,21
feel  37:16
feels  54:18
fees  27:12 29:2
  36:20

feinstein  2:15,20
  2:22 32:16
feld  4:10,14,17
field  4:2,20 5:12
fifth  7:5
fight  69:16
fighting  16:3
figure  69:1
file  6:7,8 15:11
  22:9 23:23 34:13
  38:25 39:1 40:22
filed  2:12,22 3:8
  3:19 4:4,16,22 5:8
  5:14,23 6:3,10,14
  10:24 15:15,16,24
  17:14 26:15 28:18
  38:13 40:21,22
  41:15
files  58:22
filing  41:16
final  29:3,11
  42:13 43:1,7,24
  44:6 48:8,8 53:8
  53:11 60:3
financial  5:3 29:7
find  59:14
fine  10:22 17:3
  18:7 37:7,15 38:8
finish  29:25
finished  66:21
firm  9:8 24:8
  29:14 31:14,24
  38:13
firm's  29:7 32:25
firms  26:24 27:14
  27:21 28:1,3
  29:12 30:9,15,21
  31:9 32:2,5,11
  36:9
first  12:24 14:16
  35:6 38:24 40:13
  41:1,6 45:7,7,15
  45:25 46:5 48:6

53:10 54:23 55:1
  55:20 56:10 62:15
  63:6,19 65:16
  66:12 67:20
fit  39:17
fits  55:7
five  13:4,13 46:11
fix  50:16
fixed  25:3
flagged  14:1
flagging  16:23
flip  18:5
flips  57:23
focus  41:1
focusing  63:13
  71:16
folks  15:20
following  10:25
  19:20
footnote  42:3,8,17
  43:1 44:2 46:13
  46:18,18
forced  18:17
  49:21
forefront  34:14
foregoing  73:3
foreign  18:18
foreseeable  70:19
form  20:24 32:10
  44:18 51:23 68:16
forth  43:18,25
forward  11:12
  12:8 21:4 22:2,6
  22:11 27:4 33:16
  37:24
found  60:10
four  33:11 34:5
  34:15 43:9
fourth  18:11 23:7
fraction  12:12
frame  54:4
frankly  30:13
  39:15 66:13

18-23538-shl   Doc 10284-1   Filed 02/04/22   Entered 02/04/22 15:56:09   Transcript
of January 20   2022 Hearing   Pg 82 of 93
[free - holding]                                                                Page 9

**free** 32:6 50:17
59:13
**front** 41:11 52:25
**fti** 4:2,20 5:2,7,9
5:12 32:24
**full** 11:23 12:1
32:9,11 36:18
52:22
**fully** 11:20 33:5
63:10 66:8
**fund** 28:20 36:16
**funding** 24:19
**funds** 20:11 21:18
23:21
**further** 13:11
15:16 16:5 26:1,2
26:14 44:12 48:10
56:1 60:18 61:8
**future** 12:18
20:19 27:16 29:4
29:16 67:25

**g**

**g** 10:1 56:20,20
**gamut** 14:25
**gap** 27:23 28:7
30:9,10,16 34:9
**garrett** 7:8 10:19
26:25 28:8
**gas** 57:19
**general** 14:24
15:10
**generally** 28:4
35:14 39:17
**getting** 16:8 31:9
57:24 64:1 70:16
**giant** 16:2
**give** 50:11 55:9,13
56:8 62:1 68:11
**given** 27:13,20,22
30:8 34:25 48:13
49:6 52:25 60:7
**giving** 34:23
59:23

**global** 50:5
**go** 10:8,17 14:12
21:1 22:2 23:1
24:9,25 25:3,15
29:15 30:22 32:10
33:18,20 34:1
38:3 40:18 41:6
45:5 49:14 52:9
57:12 59:19 68:14
**goals** 20:17
**goes** 28:25
**going** 13:10,11
19:20 21:4 22:6
23:10,16 27:4
31:16 33:12,23
34:5,6,9 37:23
40:2,4 53:7
**good** 10:2,23,23
11:11 19:15 21:2
24:4,6,11 32:4
38:5,10 52:2
57:14 69:12
**gothsal** 10:20
**gotshal** 3:12,17,19
4:3,21 5:13 7:3
25:22 32:23
**gotten** 13:9 21:5
**governing** 44:6
**grace** 6:15 37:23
**grant** 32:19 34:5
39:20 50:14,15
52:17,18 54:3
58:23 59:1,6,8
66:15 71:4
**granted** 41:16
43:16 55:16
**granting** 6:3
38:15 43:3
**grants** 26:1 54:7
**grateful** 39:24
**greenville** 6:15
**greg** 38:11 40:19
69:17

**gregory** 9:13
**group** 25:16
**guess** 31:4 36:8,14
40:13,25 44:9,11
46:12 48:5,13,19
52:9 54:1 61:14
**gump** 4:2,9,14,16
4:20 5:12 7:10
24:7,12 25:23
32:24

**h**

**h** 56:20,20
**hac** 38:13
**half** 14:5,11 34:12
67:15
**hall** 43:10,10
**hand** 12:18 18:9
50:17 58:13
**hang** 45:12
**hanging** 30:12
68:3
**happened** 44:20
46:8
**happens** 34:12
58:4 70:23
**happy** 10:8 20:20
22:4 23:3 26:2
27:3 40:24 41:6
42:21 62:4 69:2
**hard** 70:16
**harner** 3:2 8:13
26:7,11 27:8,18
28:9,24 29:6,20
30:1,23 31:16
**harner's** 33:13
**hat** 45:12
**hate** 37:6 44:11
**hauer** 4:2,9,14,16
4:20 5:12
**he'll** 34:25
**head** 31:23 57:24
**headset** 70:9

**health** 29:7
**hear** 10:20 38:7
40:25 61:19 62:14
70:11,12
**heard** 10:5 27:1
29:6 59:18 68:20
69:18,21
**hearing** 2:1,4,4,8
2:14 3:1,11 4:1,8
4:19 5:1,11,18,22
6:1,7,13,19,19
10:13 22:11 24:15
27:12 30:12 34:21
35:8,23 38:12
39:23 40:1,4,6,10
53:11,24 56:1,21
64:10 65:14,19,20
65:24 67:14,14
68:13,13,14,16
69:5,8,15
**hearings** 10:10
**heartened** 33:13
**held** 13:6 22:20
22:23 35:14 68:15
**help** 22:5 53:9
68:18
**henick** 2:15
**herrick** 2:20,22
32:16
**high** 14:18,21
**highlights** 28:13
**hitting** 13:12
**hoffman** 9:8
**hold** 38:4 59:15
**holdback** 27:17
28:25 29:9,9 30:4
31:2 36:9,19
**holdbacks** 27:15
27:19
**holdco** 6:4,8,9,11
9:2
**holding** 1:7 47:10

**holdings** 5:4 6:3
9:9,16 10:3 37:3
38:11
**hon** 1:22
**honor** 10:19,23
17:13 18:5 19:13
20:7,24 22:13,22
23:16 24:3,5,11
25:18,24 26:1,10
26:25 27:6,8,18
29:17 30:23 31:19
32:8 33:9,25 34:3
34:4,13,15,16
36:21 37:5,11,14
38:2,5,9,10,13,19
39:22,24 40:11,17
40:19 41:5 42:20
44:2 45:6 46:17
47:1,12 48:22
49:1 50:25 53:4
53:23 54:11,14,18
59:17,22 61:1,12
61:18 63:6,17
64:12 65:6 68:7
68:19 69:17 71:12
71:12,17,25 72:1
72:5
**honor's** 49:8 53:6
53:8,11 65:4
**hopefully** 22:10
**hyde** 6:25 73:3,8

**i**

**i.e.** 48:9 55:1
**identified** 47:20
69:6,23 70:5
**ignore** 46:24 47:1
**ignored** 56:11
**ii** 6:3
**imminent** 60:23
**impeding** 66:9
**implement** 57:23
**implementing**
58:1

**important** 41:10
57:9 58:7 71:8
**impose** 71:1,5
**imposed** 30:6
**impression** 31:6,9
**improperly** 64:18
**inability** 60:24
**inclination** 39:9
**inclined** 39:20
60:2
**include** 22:8
**included** 14:23
15:1 16:18,25
28:15 34:21
**includes** 16:1
28:13
**including** 3:16
4:13 12:23 22:21
22:21 26:17 52:12
**incmted** 3:15
**increase** 16:15,15
17:16,21 23:19
**increased** 12:6,25
15:19,20,23
**increases** 35:18
**incur** 33:24
**incurred** 3:6
**indicated** 42:17
53:25
**indication** 46:14
68:21
**indicative** 53:18
53:20,22 55:9,13
**indiscernible**
11:15 27:20 30:5
30:5,9 56:4,4
**individual** 32:2
**inform** 66:4
**information** 39:18
**initial** 12:16 43:14
**initially** 41:11
**insolvency** 27:23

**intended** 43:24
**interest** 21:21,25
**interfere** 50:9
56:15 58:6 63:2
67:8
**interference**
50:21
**interferes** 63:4
64:10
**interfering** 62:10
**interim** 2:4,8,14
2:15 3:1,4,11,13
4:8,9 5:1,2,4
25:16 26:9 27:12
29:3,16,18 32:15
32:20,22,23 36:20
**interpretation**
67:1
**interpretation's**
52:3
**interpreting**
55:19 59:25
**interrupt** 29:20
30:1 37:6,16
59:18 60:13
**inuring** 39:24
**invoke** 53:10,16
**involved** 37:17
**involvement** 20:4
**involvements**
20:19
**isolates** 62:18
**issuance** 40:15
53:3 56:11
**issue** 27:2 28:24
29:12,16 30:7,24
45:9 46:13 50:7
54:6,19 55:13,19
56:9 57:4 59:4,7
62:19 63:3,5,7
64:6 66:20 67:3
**issued** 44:6 47:18
56:13 57:1

**issues** 27:1 28:24
30:2 33:7 41:24
50:15 56:1 63:13
65:15 67:19 69:5
69:23
**item** 21:3 25:15
36:25 49:7
**items** 37:12

**j**

**january** 1:17 2:6
6:20 10:14,14
26:5 38:14 73:25
**job** 25:6
**joint** 3:2 69:13
**jointly** 24:16
**judge** 1:23 10:3
11:14 13:8,15
16:9 17:2 18:23
23:24 41:3 57:18
**judgement** 46:4,5
47:5,12,13 61:21
**judgment** 14:4
42:3,5,9,12,13
43:10,14,17,19
44:1,23 45:1,18
45:19
**judgments** 42:4
44:6
**july** 2:11,19 3:6
3:16 4:13 5:6
57:18
**june** 43:5
**jurisdiction** 44:8
57:22 67:4
**jurisdictional**
46:1 56:17 61:17
**jurisdictions**
16:20 21:19

**k**

**k** 37:22
**keep** 34:14
**keeping** 46:12

kept  68:3
key  42:2
kind  31:25 32:9
knew  26:12 35:24
know  12:7 13:9
  13:11,19 14:18,23
  17:4 18:20 19:1,6
  19:14 20:18,22
  21:5,7,8 22:20
  23:20,22 27:20,24
  28:1,14 30:2,8,14
  30:15 31:10 32:11
  33:25 34:7 44:10
  50:9,12,19,19
  52:20,23 53:13,23
  54:5,8,8 55:15
  56:2 58:19,20
  60:23 62:15 65:11
  65:15,20,21 66:19
  67:5,9,23 68:10
  68:18 69:7 70:10
  71:5,7,9
knowledge  16:19
known  16:4
krinsky  7:17 24:4
  33:10

**l**

l  56:20
lack  39:25
lacks  58:23
laid  56:16 57:10
landlord  49:6
  50:1,9,19 65:17
  67:20 68:3
landlord's  66:11
language  26:17
  32:20 55:6
large  13:23 18:18
  36:15
largest  19:19
  21:15
larkin  9:8

law  9:8 24:7 28:3
  32:10 49:18,23
  56:16,17
lay  59:20,21
lead  48:24
leafing  42:23
lease  6:2 37:2
  47:25 48:6,17
  49:7,9,10,16
  50:11 51:19 52:11
  52:23 54:10,21,23
  56:4 58:8 59:16
  62:15,21,22 63:9
  63:10,20,22 64:19
  65:15 67:7 68:5
leased  49:25
leases  55:16
leave  6:8 34:18
  49:20 66:22 67:10
leaves  12:2 46:12
  65:12,14
led  35:18
ledanski  6:25 73:3
  73:8
lee  67:16
left  43:9 49:16,19
legacy  57:16
legal  32:11 73:20
length  27:24
letter  53:23 55:6
  64:16
letters  54:14
letting  34:3
levels  23:18
lexus  56:22 57:17
liability  14:20
  16:16,22
lien  16:2
lies  43:21
life  69:10
light  26:22 48:13
limitation  49:15
  58:9,19 59:12

66:5 67:18
limited  14:20
  56:13
line  15:18 16:1
  26:12 33:17,19
lines  12:1
lingering  31:7,14
literally  68:2
litigate  23:16
  50:18
litigation  13:10
  16:5,6 17:25 18:1
  19:11 21:8 22:21
  24:17,20 30:19,20
  34:11 36:1,1,17
  43:8 48:1,2,23
  54:22 55:2 63:8
  63:23,23 64:22
  65:8 66:3,11
  70:17,17
litigation's  65:1
litigations  36:4
little  19:24 49:12
  52:3 55:4,5 64:20
live  66:24 67:4
llc  2:9,12 6:3,4,8
  6:11 9:2,9,16 37:3
llc's  6:9
llp  2:15,20,22 3:3
  3:13,17,19 4:2,3
  4:10,14,17,20,21
  5:12,13 7:3,17 8:1
  8:15 9:1,15
logic  23:12 50:10
  50:10
long  25:1 43:2
  45:1 47:17 49:15
  50:1 52:18 54:8
  70:18
longer  42:19
look  18:23,23
  41:9 71:3

looked  14:23
looking  23:18
  24:23 31:5 42:22
  60:9
lose  51:20 52:15
  54:10 66:25
lost  42:15 44:16
  45:21
lot  15:4 28:1
lots  71:5
lower  15:4 35:21
  35:22 56:14,25
  61:20

**m**

maintained  22:24
major  36:1,3
majority  12:2,2
  20:3
makers  58:2
making  20:9 65:4
mall  6:3 9:9,16
  37:3,19 38:4,11
man  71:25 72:5
mandate  40:16
  41:23 46:7 47:7,8
  47:15,17 48:15
  50:15 52:12 53:3
  53:14 54:6,7,18
  55:25,25 56:10,11
  57:1,9 58:16 64:2
  65:2 66:14,17
manges  3:12,17
  3:19 4:3,21 5:13
  7:3 10:20
march  18:13 23:2
  41:2 43:12 56:22
mark  19:3,23
  20:12
market  8:3 9:3
  52:23 60:24
marketing  60:4,8
mart  37:22

**martin** 9:6 38:5,6
38:9 39:22,22
40:9,10,18 41:5,8
41:8 42:1,25
44:10 45:20 48:6
48:21,21 49:17
50:5,25,25 51:6,8
51:11,16,23 52:8
53:4,5,21 54:18
55:21,21 61:2
68:19,19 69:1
70:8,11,14 71:1
71:10,17,21
**martin's** 45:8
**master** 49:7,10
63:9,10
**matter** 1:5 37:18
37:19,20 39:15,16
42:18 58:13
**matters** 6:19 10:4
**mattes** 72:3
**matthew** 5:23
**maximizing** 20:19
**mcmahon** 41:3
**mean** 25:19 28:2
30:21 50:8,16,20
58:14 60:4 62:10
62:19,23 63:2
64:25 65:18 66:23
66:24
**meaning** 57:8
**means** 47:23 66:2
**measure** 36:15
**meat** 57:17
**meet** 22:3 69:11
**meeting** 15:21
**meets** 20:17
**mention** 24:23
**mentioned** 12:23
18:4 21:3
**mere** 57:21
**merit** 56:21

**merits** 29:13 43:8
45:21
**milliken** 56:20
**million** 12:20
14:17,20 16:11,11
16:14 17:6,10
18:2,11,14,16,24
19:23,24,25 22:1
22:22 24:8,9,13
25:3 28:14 33:21
34:22,24
**mind** 29:1 44:17
**mineola** 73:23
**minimis** 12:1,3,4
20:6 21:18 22:1
**ministerial** 57:7
**minneapolis** 9:11
**minnesota** 57:18
63:1
**misleading** 35:7
**misplaced** 64:3
**missing** 34:7
**misspoke** 53:21
**mn** 9:11
**moac** 6:2 9:9,16
37:2 38:4,11 39:6
41:12,16,21 43:4
43:14 44:12 49:6
49:19 55:16 56:7
57:11 59:11 61:4
61:8
**moac's** 43:5 64:16
**modified** 17:11
59:8
**monetization**
17:16,22 19:12
**monetize** 22:18
**monetized** 17:18
**money** 21:1 28:1
33:17,20,23
**month** 53:15
**monthly** 2:8 31:11

**months** 11:3
33:12 34:2,5,15
34:17 68:15
**morabito** 8:20
37:5,8,8 38:2
**motion** 4:1,19
5:11,18,22 6:1,1,7
6:7,9 37:1 38:4,15
38:24,24,25 39:1
39:2,6,11,20
40:13,14,20,21,23
41:3,12,15,17
43:1,3,5,16 44:16
48:14 52:11 53:2
54:24 55:11,24
57:9 58:15,22,25
59:1,1,3,6,7 64:16
65:1 66:1,14
67:11
**motions** 59:8
**movant** 59:4 66:4
**move** 17:1 22:11
36:5 57:25
**moves** 34:13
**moving** 12:8 14:5
**mullin** 8:8
**mute** 70:7,9

**n**

**n** 7:1 10:1 56:20
73:1
**nature** 27:14
55:11,17
**necessarily** 57:13
**necessary** 3:5,15
27:19 32:12 36:13
**need** 14:15 16:13
27:25 28:3,5 38:1
40:1 56:3 62:14
67:13 68:13
**needed** 13:2 33:17
40:3 49:3 68:8
**needs** 14:2 23:11
24:9 27:25 31:10

33:20 36:5 42:20
65:22
**negotiate** 21:11
**negotiating** 21:24
**negotiations** 23:8
**neither** 44:20,22
**net** 17:21,21
**never** 42:5
**new** 1:2 7:6,13,20
8:11 9:18 33:6,11
**news** 11:12 17:5
21:2
**ninth** 2:8 3:12 4:9
5:2
**non** 12:3,4,4 13:1
15:25 18:12 20:1
20:14
**normally** 35:13
**norman** 9:10
**north** 5:19,23 9:3
**note** 10:13 11:2
12:10 13:23 16:9
38:13 39:4,16
42:24 43:17
**noted** 26:4
**notes** 57:10 61:20
**notice** 2:4 6:19
**notices** 17:13
**notify** 59:4
**november** 54:14
**number** 5:18
11:19 12:2,6,24
13:1 14:18,18,21
15:5,14,19,23
16:2,8 18:23 23:8
31:20 33:19 37:12
42:8,11 47:17
49:2
**numbers** 12:13
17:23
**nw** 8:17
**ny** 1:14 7:6,13,20
8:11 9:18 73:23

| o | | | p |
|---|---|---|---|
| **o**  1:21 10:1 56:20 73:1 | 38:23 40:8,12,24 41:7 45:4 52:8 61:16 65:10 70:7 71:20 72:2 | 47:2,3,10,14 48:5 48:8 49:1,8,9 50:9 50:17 51:9,24 52:21 53:7 54:3 | **p**  7:1,1 10:1 |

**o**  1:21 10:1 56:20 73:1
**objected**  32:24 36:10
**objection**  4:1,19 5:11,18 13:18 15:12 25:21,23 33:2,7 34:14 39:8 39:11 54:25 55:4
**objections**  15:15 15:17,24 23:23 26:21 32:19,25
**obligations**  25:11
**obtained**  24:20 44:19 66:7
**obviously**  32:5,21 50:2 51:4,8,18,23 60:4 62:5 68:9 70:16
**occasioned**  64:2 66:11
**occupancy**  48:25
**occur**  17:9 48:17 48:24
**occurred**  19:12 41:21 66:2
**october**  2:11,19 3:6,16 4:13 5:6
**offer**  54:13,23 62:15 63:19 65:16 66:12 67:20
**office**  67:16 68:18
**official**  2:16 4:10 5:3 7:11
**oh**  25:18
**ohio**  56:20
**oil**  57:19
**okay**  10:2 14:10 17:1 23:25 24:21 25:13,14 27:7,11 32:14 35:9 37:14 37:25 38:3,17,20

38:23 40:8,12,24 41:7 45:4 52:8 61:16 65:10 70:7 71:20 72:2
**old**  73:21
**omitted**  43:11 44:1
**omnibus**  10:10 30:17
**ones**  45:5
**ongoing**  21:22 26:22 27:14 62:22
**operation**  44:5
**opinion**  57:16 62:1 69:22
**opportunity**  50:12
**oppose**  30:3
**opposed**  32:11,18 63:1
**opposing**  31:2
**opposition**  39:5 39:25 40:13
**opt**  11:18 12:3,4 12:25 13:1,18 14:9 18:12,12 20:1,1,14,14 33:14 34:25 56:22
**opted**  11:18,24 13:15 33:16,25
**options**  53:9
**oral**  40:25 49:23 52:21
**order**  6:1,13 10:9 20:24 22:9 26:17 27:3 29:10,14 36:23 37:1,20 38:14,18 39:3,10 40:9 41:1,10,13 41:19,23 42:6,10 42:13,14,18,18 43:3,5,20 45:13 45:17,20 46:3

47:2,3,10,14 48:5 48:8 49:1,8,9 50:9 50:17 51:9,24 52:21 53:7 54:3 55:19 57:23 58:1 58:5,7,13 59:24 59:25 62:6,6,18 63:7 66:6 67:2 68:8,11,17 69:21 71:8,9
**ordered**  41:2 47:22
**orders**  26:18 39:14 42:5 48:9
**orient**  4:5,23 5:15 7:18 24:4 25:22 32:24 33:10
**original**  42:9 43:4
**originally**  44:15
**otsuka**  9:13 38:10 38:11,19 39:23 40:17,18,19,19 44:17 45:4,6 46:17,22,25 47:11 56:6 59:17,22 60:12,20 61:1,11 61:17 62:8 63:6 63:14,17 64:7,12 64:24 65:3,11 68:7 69:3,17,17 70:2,6 71:24
**outs**  13:18 20:14
**outstanding**  14:2 15:6,13 21:10
**overlapping**  29:22
**owe**  18:25 19:5,6 19:7,9
**owed**  18:24 20:13 24:8
**owner**  55:21

**p**  7:1,1 10:1
**p.m.**  2:6 6:21
**page**  11:14 12:19 14:5,11 16:7 17:1 17:4,23 18:5,8 24:23 43:1 45:11
**paid**  12:1,20 14:15 15:11,11,22 24:10,19 28:10,14 29:3,3 35:1
**paints**  33:15
**pandemic**  50:5,6
**papers**  39:11 46:2 53:6
**paragraph**  26:18 26:20 41:20,22,25 42:1 45:11,13 46:10,11 47:16,20 51:24
**parenthetical**  43:11
**park**  7:12
**part**  33:4 47:7 64:14 67:5,6
**participants**  11:9
**particular**  31:24
**particularly**  39:16 57:8
**parties**  11:17 12:16,20 13:15,21 14:1 15:23 16:2 16:23 18:17 19:5 19:9 20:10,18 21:24 23:15 36:5 36:6 38:25 41:1 47:10 67:12 69:11
**party**  29:21 39:19 44:20,22 58:21
**party's**  44:11
**passage**  51:21
**passed**  33:12 42:14 45:1

patterson 9:15
38:12
paul 3:2 8:13
pay 15:2 16:13
19:22,25 20:11,13
20:15 21:16,17,18
23:21 49:21 62:25
paying 20:6
payment 11:18
22:2 63:1
payments 20:10
62:23
pending 30:19,20
35:11 40:23 45:2
48:14 52:16 54:10
55:24 57:22,24,25
58:3,24 59:2,5
60:25 65:2 66:10
66:14
people 20:13
35:24 48:8
percent 11:22
14:14 19:3,6,6,8,8
19:23 20:3,12,15
20:15 21:17,17,17
22:4 29:9
perfect 13:20
perfectly 49:20
performance
67:25
period 2:11,19,20
3:7,17 4:13,15 5:6
5:7 14:3 15:5
19:12 36:10 45:1
52:1 59:9 61:4,15
66:16 67:21 70:20
periodically 10:9
periods 29:5 49:3
permission 37:13
38:16
perspective 50:19
petition 15:10
21:21 28:16,18,21

48:15 52:16
phrase 45:12
picture 33:16
piece 51:20
piper 9:1 38:6
pitch 53:7
place 41:20 43:15
46:6 47:15,18
plains 1:14
plan 24:9,25 25:3
30:22 33:12,18
34:1 36:17 68:18
play 22:8
plaza 8:10
pleadings 38:23
pleases 41:5
plus 62:24
pm 1:18 72:8
point 10:18 13:12
13:19 21:7 23:6
23:10 27:17 28:25
30:4,11 31:1,1,8
36:13 43:18 45:5
45:15 46:1,16
47:1,11 48:20
52:10 53:4 55:1,5
55:10,14,20 57:21
58:7 59:14,22
60:1,14,21 61:2,7
61:11 63:12 65:23
66:18 68:9 70:15
71:2,16 72:4
pointed 45:20
pointing 44:4
61:12
points 41:22 45:7
46:9 54:25
population 14:21
portion 29:2 36:3
36:19 40:6 49:9
54:1 65:25
portions 6:8 38:25
39:7

position 55:9
positive 17:5
possibilities 53:1
possibility 48:11
48:15
possibly 34:18
post 15:10 21:21
28:18,21 35:12
52:17
posting 52:14
66:16
pot 14:19 25:3
potential 16:16
17:9,24 29:8
potentially 53:5
68:4
power 22:25 55:3
58:20
practice 69:8
pre 11:4 19:4,15
19:18 21:14 22:14
28:15
predicted 34:1
preface 25:20
preference 12:15
12:25 13:2 34:8
35:20
preferences 18:1
18:18
preliminary 32:1
32:9 56:9
premature 30:13
30:20 55:2
premise 50:16
59:12
premised 54:25
premises 60:24
prepared 64:9
prepetition 15:13
15:21 16:17,24
21:20 28:15,21
35:1,4

presentation
10:24
presentment
20:24 22:9
preserve 14:3
preserving 26:21
pressed 56:2
pressing 66:23
presume 27:2
pretty 30:14 32:4
46:14,23 55:15
56:16 57:5
prevailed 41:12
63:8
prevented 50:13
67:22
previewing 21:1
primarily 10:5
16:1 18:3
primary 16:15
prime 2:9,12
32:15
prior 16:18 22:10
24:15 26:18 35:10
39:23 61:21
priority 14:25
16:17,25 21:20
24:22
pro 14:19 38:13
probably 21:7
38:20 53:14 60:8
62:12 68:15
problem 26:17
33:5 41:19 53:10
procedure 42:11
43:22,24 44:5,25
53:17 68:17
procedures 39:1
proceeding 6:17
proceedings
37:21 72:7 73:4
proceeds 17:17

process 20:23
23:14 26:22 48:19
56:12,15 64:1,11
66:21 67:22
producing 32:10
productive 35:17
professional 2:14
3:1,4,7,11,14 4:8
5:1,7 27:2 31:7
professionals 26:3
28:4,12,20 31:1
31:11
program 22:2
progress 2:1
10:11 11:12 12:8
12:22 15:16 16:8
17:12 33:16,22
prohibits 54:19
projected 17:25
35:21,22
promise 13:21
promises 13:10
promptly 68:10
pronounce 56:19
proper 65:7
properly 36:7
59:4
property 49:10
51:20
proposals 26:23
propose 19:20
20:6,23 22:8
25:24
proposed 22:9
38:18 39:3 51:23
54:3 55:7,17
65:16
proposing 19:23
20:10
proposition 57:6
prospective 60:17
63:21

protect 44:18
protracted 13:10
provide 39:2
53:24 68:22
provided 36:16
providing 10:17
provision 47:25
49:12 61:24 70:15
public 39:12,16
punchline 11:11
punchlines 16:7
purpose 59:3
purposes 16:24
pursue 21:8 44:19
put 39:19 44:14
51:11,11 66:15
putting 61:23

**q**

quarropas 1:13
quarter 12:22
31:21
question 24:7
31:5 47:24 48:6
48:19 50:18 61:18
61:23 62:16 71:18
questioned 55:7
questions 17:2
18:5 23:3 24:1
26:2,12 37:12
quinn 8:15 37:8
quite 43:1 45:2
61:22 62:3,3
quote 43:8,23

**r**

r 1:21 7:1 10:1
73:1
raise 30:24 71:15
raised 45:9 46:1
67:20
raises 59:3,7
raising 30:7 32:1
rancheros 57:16

range 29:7
rata 14:19
ratcliff 57:16
rates 28:19
ray 57:14,19
rdd 1:3
read 32:3 42:8,23
42:24 44:3 49:12
53:6
reading 42:25
48:23
real 13:14 17:14
21:20 67:23 68:2
realizing 35:15
really 13:4 28:25
29:15 31:8 33:2
39:17 48:5 49:11
50:8 52:4 55:5,5
55:10,19 57:13
58:9 59:9 62:13
62:17 66:2,23,24
realty 57:14
reason 30:3 36:8
48:25 61:12 63:15
reasonable 49:25
59:13 60:16 70:3
70:4 71:3,16
reasonably 60:17
69:20
reasoning 59:24
reasons 42:16
recall 33:25
receive 11:17
received 10:13
12:16 17:19
receiving 14:12
recognized 20:8
61:3
reconcile 15:1
25:12
reconciled 13:3
13:16 24:24 25:2

reconciliation
24:25 25:6 35:5,5
reconciling 21:23
reconsider 47:6
reconsideration
48:10,12
record 41:8 48:22
54:1,2 73:4
records 16:19
31:5
recoveries 34:8
35:21
recovery 14:14
17:5 18:1 35:24
redact 40:4
redacted 39:12
redacting 39:7
redactions 39:4
redirect 69:10
reduce 15:5 21:22
22:6
reduced 13:7
34:24
reducing 16:8
reduction 17:7
29:14
reductions 30:9
refer 40:2 45:19
46:5
references 48:3
referring 24:14
64:14
refers 48:1
reflected 24:18
reflects 67:2
refuse 13:21
regard 10:12
24:22 25:8
regarding 26:18
63:9
regardless 48:4
rehearing 41:16
41:17 42:10,13

18-23538-shl    Doc 10284-1    Filed 02/04/22    Entered 02/04/22 15:56:09    Transcript
of January 20    2022 Hearing    Pg 89 of 93
[rehearing - s&e]                                                                    Page 16

43:3,6,16 44:20
48:9,11
**reimbursement**
2:5,10,18 3:5,15
4:12 5:5
**rejected** 65:17
**related** 4:4,22
5:14,22 6:3 13:25
36:4 37:21 38:23
42:9 47:23 52:10
52:19
**relation** 27:15
**relatively** 23:8
**release** 37:2
**relevant** 40:4
**relief** 6:3 39:7
48:16 50:14 58:22
61:25 64:8,13
**relies** 56:25 57:5
**reluctant** 53:1
**relying** 16:23
47:16
**remain** 13:5,18
15:13 17:11 20:1
20:13 22:20 41:20
47:14
**remainder** 68:5
**remained** 43:15
44:24 49:19
**remaining** 12:19
15:7 17:10,14,19
20:14,16 21:9
36:3
**remains** 21:10
23:14 47:18
**remand** 48:11
**remands** 59:2
**remarks** 56:6
**remind** 28:10
**remote** 68:16
**remotely** 10:5
68:16

**removal** 48:11
**remove** 13:24
**removed** 15:9
62:17
**rendered** 2:10,18
3:5,14 4:12
**reopen** 39:15
**rep** 19:19
**repeat** 43:22
**reply** 24:16 40:23
45:11,12 53:11
56:24 57:4
**report** 10:11,17
11:4,8,11,25 12:5
15:16 17:6 18:3
23:4 26:5,6,14,20
28:13 33:15
**reports** 30:17
32:1,9
**represent** 6:16
**representation**
6:14
**representative**
8:16 11:6,7 22:15
37:10
**representatives**
25:6
**representing** 38:6
**reprise** 27:12
**request** 25:25
27:4 57:2 58:16
59:9 61:7
**requested** 36:20
47:8
**requests** 31:21
**require** 59:15
**required** 49:9
62:22
**requirement** 71:5
**requirements**
54:13
**requires** 65:23

**reservation** 32:20
**reserve** 14:7,8,9
18:16 33:4
**reserved** 33:5
**reserves** 16:8 17:7
22:23
**resolution** 48:2,3
48:23 70:18
**resolve** 16:5
**resolved** 13:17
**resolving** 12:7
15:17 17:8 21:5
**resources** 21:4,10
**respect** 17:17
24:16,20 25:10
37:12 44:21 59:9
**respond** 59:21
**response** 5:22
40:22 45:10
**responses** 25:22
**rest** 45:15
**result** 12:15 17:8
18:3,9 19:11
22:21,21 23:1
42:6 68:10
**resulted** 41:16
**resulting** 48:12
**results** 16:4,21
**retained** 6:16
**rethink** 47:6
**retiree** 24:24 25:5
**retirees** 14:22
**returns** 13:12,20
**revenue** 5:19,24
**reverse** 58:13
**review** 26:23
**reviewed** 25:16,20
26:4 32:18 33:3
38:23 39:3
**revolving** 12:8
**richard** 6:4,10
**rid** 15:15

**right** 12:18 16:12
25:14,18 29:17
31:4 35:20 38:7
40:24 44:9 45:16
47:9 49:22 51:5,7
51:10 52:2,21
54:23 56:5 60:6
60:11 61:10,16
62:14,23 63:19
65:10,12,16 66:12
67:20,21 68:25
71:23
**rights** 26:19 32:20
33:4,5 36:6 49:6
**risk** 52:14
**rivera** 56:18
**road** 73:21
**robert** 1:22 9:6
**rockefeller** 8:10
**room** 1:13
**roughly** 19:24
**rule** 40:15 43:21
44:5,25 48:14
53:2,16,17 54:1
55:3 57:11 58:2,3
58:21 62:12,13
65:25 67:10
**rules** 41:21 42:11
53:10
**ruling** 29:8 45:13
51:17 53:13,18,20
53:22 55:9,14
59:20 60:18 65:25
70:22
**run** 49:16 50:13
60:3 66:20
**running** 71:12,13
**runs** 54:12 66:25

| s |
| --- |

**s** 4:4,22 5:14,18
5:22 7:1 10:1
**s&e** 66:6

sabine 57:19
sara 7:15 24:11
satisfied 11:21,23
  20:2 49:5 51:24
  54:13,15 62:3
  65:9
satisfy 19:25 49:3
  52:4 61:24
savings 21:13
saying 44:22 51:2
  51:2 52:5 59:10
  63:22
says 24:8 41:20,23
  43:2 45:13,18
  51:24 57:7 58:21
  59:4 62:2 63:8
  64:16
scenes 12:13
schedule 32:10
  65:14 67:14 68:13
scheduled 6:19
  65:19
schedules 36:23
scheduling 68:11
screen 10:6 26:13
sdny 57:15,20
seal 6:7,8 38:25
  40:1
sealing 39:5,11
  40:6,9
sears 1:7 5:4 10:3
  72:3
second 14:4,5,11
  16:2,4 40:21
  41:18,21 42:2,17
  44:3,7,11,13,21
  45:3,14 46:7,13
  46:21 49:7 51:14
  53:13 54:6 55:4
  55:23 61:3,5,13
  64:25 68:21
section 11:16 15:3
  15:4 36:11 48:1

49:7 52:20 62:17
secured 14:24
  16:1 36:16
see 10:23 11:14,19
  11:19,20,25 12:3
  12:5,24 13:6 14:1
  15:14,14 16:4,12
  17:20,24 31:22,25
  32:18 34:15 36:8
  38:7 52:3 62:10
  63:4 64:10 70:8
seeing 17:13
seek 56:1
seeking 39:15
  48:16 64:8,13
seeks 54:24 61:22
  66:1
seen 38:14 51:12
  54:14
sell 52:23
sending 46:6
sense 23:22 32:4
  50:15 53:16 60:6
sent 38:21
sentence 45:7
separate 29:12,13
  30:7 43:18,19,25
  50:7 63:2,5 64:5
  69:15 71:14
separately 11:5
september 33:1
  51:12 58:8
service 18:19
services 2:10,18
  3:4,14 4:12
set 29:5 32:25
  43:18,25 53:11
  71:12
settle 13:21
settlement 14:17
  35:25
settlements 12:15
  12:16 17:9

seven 13:18
severance 15:18
  15:20,21 25:9,11
severed 15:21
share 14:17,19
  25:4
sheppard 8:8
short 32:10 56:5,7
shortly 14:15
  36:24 38:21
show 6:13 37:21
showed 28:13
showing 16:11
  17:5,7
shown 15:8
shows 15:12 17:9
  18:14
side 12:19
signature 73:6
signed 6:13 49:9
  60:5
significant 19:2,4
  19:10 35:18
signing 72:3
similar 32:25
similarly 63:3
  67:3
simple 36:15
simply 34:20 40:2
sit 23:10
sitting 61:9
situation 57:13
  67:18 68:1
six 34:1 36:23
sixth 2:15 57:7
size 27:14,21
  31:20
slightly 16:11,14
  18:2,2
small 12:12 23:8
smaller 30:21
solutions 73:20

solve 53:9
someone's 39:15
sommer 5:23
son 6:15 37:23
sonya 6:25 73:3,8
sorry 14:6 25:19
  29:20,23 30:1
  37:5,6 40:19
  53:21 58:14 64:12
sort 27:16 57:5
  71:4
sought 39:7 44:13
  61:5
sounds 51:2 53:5
sources 35:23
southern 1:2
sown 35:10
space 49:20
spahr 3:3 8:1
  26:11
speak 13:8
speakers 29:22
special 2:16,20
specifically 24:20
  49:4
speedy 57:3
spending 25:7
spent 15:4 60:7
staffing 32:6
stage 31:22
stages 32:13
stand 27:10
standards 36:11
standing 47:15
standstill 34:11
start 10:10,11
  11:2,14 48:18,18
  54:21 69:25
started 12:12
  13:14
starting 50:11
  70:21

state 22:8 59:1,3,6
63:1 66:3
state's 22:15
statement 2:8
25:20 56:25
states 1:1,12
56:17
statistics 19:14
status 2:1 10:11
10:13,14,17 11:15
23:4 26:5,20
33:15
stay 38:1 40:15
42:6 43:13,15
44:4,12,24 45:22
45:24 46:15 47:7
47:8 48:11,14
50:15 52:12,13,17
52:18 53:2,14
57:2,9,24,25 58:3
58:15 64:1 65:2
66:14,15,17 67:10
71:4
stayed 45:18
55:25
stays 46:4 54:7
step 56:12
steps 29:18 71:21
stipulated 47:10
stipulation 41:1
41:13 42:19 44:4
44:15 47:14,18
48:5
stopped 31:12
46:10
stopping 21:25
strauss 4:9,14,16
street 1:13 8:3,17
9:3
strong 43:22
46:14
stuck 34:19

subject 12:25 13:1
13:17,25 18:17
35:4,4 39:14
49:10 58:10,11
sublease 44:19
47:24 48:7,18
51:25 52:15,24
60:5,6 63:3 66:8,9
67:23 70:15 71:13
subleases 44:19
submit 20:23
36:22 49:5 69:13
submitted 10:8
51:13 55:11
substance 13:5
36:11 41:12 62:4
substantial 30:18
30:19 59:3,7
substantially
31:12
subtenant 40:3,3
55:7 60:9,10,17
62:16 63:21 64:17
64:18 65:17 70:19
70:21
subtenant's 55:12
55:17,18
suggest 21:11
suggesting 23:6
46:25
suggestion 43:23
suitable 60:10
66:21
suite 73:22
sullivan 8:15
summary 42:18
support 19:17
20:20 21:14 22:4
suppose 44:10
54:6
supreme 23:18
54:7

sure 10:16 23:5
26:3 30:14 31:6
31:13 33:2,6
47:23 54:11 55:13
57:11,12 59:19
61:18 62:12 69:19
symbol 70:8

**t**

t 73:1,1
t'd 62:13 67:8
table 59:20
take 25:1 28:5
50:3 51:19 56:14
57:10 65:21 68:12
69:8 71:6,22
takes 54:8 70:18
talk 42:3 50:20
talking 29:23
34:23
talks 47:25
tap 36:18
tarter 7:17 24:4
33:9
tasks 27:16
tax 15:18,25
16:25 21:20 33:19
taxes 15:4,10
16:17 18:3 35:1,4
62:24,25
taxing 16:20
21:19
telephone 10:7
telephonically 7:8
7:15,22 8:6,13,20
9:6,13,20
tell 64:25
telling 50:19
66:19 67:17
tellingly 56:19
tenant 55:8 59:14
63:21 65:17 66:7
66:8,9,12,25 67:3
67:19,23 70:16

tenants 50:20
term 47:25 48:7
49:15
terminate 41:23
terms 13:15 17:11
17:22 28:19 47:13
60:1 61:17 62:15
testimony 50:1,3
69:9,14
thank 10:19 11:8
18:8 25:13,24
28:9 36:21 38:2,9
40:11 45:6 68:7
68:20 71:17,23,24
71:25 72:1,5,6
thanks 10:22
24:21 25:14 27:7
38:8 72:4
that's 52:2
they're 10:6
thing 40:13 62:11
66:8
things 47:17,19
52:13 53:6 58:17
60:1 63:6 71:6
think 13:8 20:17
20:24 21:16 22:5
23:17,23 27:19,25
28:5,23 29:6,12
30:13,20 31:2,22
31:23,24 32:18
35:17,18,24 37:17
37:19 39:16,25
40:5 41:9 42:2
46:10,14,18 47:6
49:13,24 52:3
53:7 55:9,14,15
56:10,11,14,15,18
57:4,8 58:6,10,11
58:17,19 59:8
61:22 62:11,12,13
62:18 63:13 64:2
64:5,23 65:13,13

65:22 66:3,13
67:1,4,9,12,15
68:8,9,20 70:7
71:2,8,18 72:2
**thinking** 59:21
**third** 18:25 34:22
**thirds** 19:7
**thought** 28:9
32:12 39:24 43:15
53:17 71:12
**thoughts** 53:25
56:9
**thousands** 13:14
**three** 25:21 34:17
36:9 46:10 47:16
47:20
**threshold** 22:4
**ticket** 30:19 36:2
**tie** 17:23
**tied** 36:3
**tiktin** 4:5,23 5:15
**time** 10:10 11:9
16:12,14 17:10,15
20:9 21:11 24:16
25:7 31:5 33:1,8
34:21 35:24 40:22
42:14 45:1,2,20
45:25 49:3,25
51:6,21 52:1,11
54:4,10 59:13
60:5,8,14,14
61:15 65:20 66:21
68:14 69:18,18
70:3,4,16,19 71:3
71:16
**time's** 12:6
**timeline** 53:16
70:17
**timely** 58:22
**times** 30:4
**timing** 56:2
**tired** 35:8

**tobey** 8:6 26:10
**today** 10:24 18:25
23:4,17 27:24
37:24 38:16,22
40:2 48:25 61:7,9
62:13 64:9 65:19
65:23 69:6 70:22
71:1 72:3
**today's** 10:13
11:11 40:4
**today's** 10:4
**told** 34:9
**top** 11:16 31:23
**total** 12:19 13:16
17:19 21:25
**track** 12:19
**tracking** 21:23
**transaction** 70:5
**transcribed** 6:25
**transcript** 33:3
40:7 49:14 52:20
53:25 68:10,23
69:20 73:4
**transfer** 48:10,12
**transform** 6:4,7,9
6:10 9:2 22:22
37:19 38:4,6
40:22 44:16 45:21
45:25 47:16,19
49:24 52:10 59:13
60:4,22 61:5,22
62:2,24 63:7,8
64:3 66:4,7 68:1
**transform's** 38:24
43:16
**transforms** 43:3
**tremendous** 16:7
18:22
**trial** 49:2 57:3
**tried** 39:6
**trouble** 27:9
**true** 69:24 73:4

**trust** 24:19 30:14
35:13
**try** 21:3 28:6 30:9
56:19
**trying** 13:20
**turned** 26:13
35:16
**turning** 27:9
**two** 11:14 15:3
19:7 28:23 29:23
30:2 42:11,16
45:8 49:4,14,25
50:3,3,11,12,18
50:21,22,22,23
51:3 52:1,18,22
53:5,9 54:4,4,20
58:9,19 59:9,12
59:12,22 60:2,7
60:21 61:3,15,24
62:24 63:13,16
66:5,10,16,19,20
66:25 67:18,19,21
68:3 69:21,22,24
70:22
**tyler** 9:15
**type** 50:14 55:8
62:11 68:23
**types** 39:14

**u**

**u** 56:20,20
**u.s.** 1:23
**ucc** 11:6 19:18
22:15 27:5
**uequhart** 8:15
**ultimately** 29:2
30:5 48:16,19
**uncertain** 16:21
**uncertainty** 36:3
**underlying** 36:9
40:12
**understand** 41:10
46:22 50:10 53:4
53:8 59:23 60:19

61:1 63:12,12
64:24 65:3 70:22
71:19
**understood** 23:6
70:6 71:17
**united** 1:1,12
56:17
**universe** 15:1
**unknown** 16:21
**unpaid** 29:4
**unredacted** 39:2,4
**unresolved** 13:19
**unsecured** 2:17
4:11 5:3 7:11
14:24
**update** 2:1 10:13
10:14 23:25 26:7
26:14 35:10
**updates** 35:10
**updating** 21:24
35:3
**usc** 43:10
**useful** 58:17
**uses** 17:25

**v**

**v** 43:10 56:17,20
57:4,16
**vacated** 42:10
**vacating** 43:4
**valid** 44:24 63:10
**valuable** 51:18
**various** 17:13
20:20 22:5 28:11
42:11 48:24 52:13
58:17
**vast** 12:2 20:2
**veritext** 73:20
**versions** 39:12,12
**versus** 37:23
**vice** 38:14
**video** 27:9
**view** 26:8 27:13
29:7,16 41:6,9

42:16 46:3 58:19
58:21
**viewed** 52:21 71:7
**virtue** 69:23
**visa** 52:11
**vowed** 23:15

**w**

**wait** 21:9
**walk** 11:1,12
**wander** 7:22 24:3
24:3,7,13,22 25:8
25:13 33:3,9,9
35:20
**want** 23:5 25:5
29:17,24 30:25
31:6,13,14 37:22
40:13 45:4 51:19
52:9 54:9 56:5,6,8
59:17,20 63:15
64:17 65:18 67:8
68:11 69:4,16,19
70:22 71:1,6,7
**wanted** 26:12
30:24 34:13 44:14
59:19 62:25 71:10
**wants** 21:10 57:11
61:18,19 65:21
66:15
**warrant** 29:9
**warranted** 27:17
**washington** 8:18
**waterfall** 17:4
**way** 20:25 21:2
24:10 42:4,8
48:22
**ways** 18:23 22:16
**we've** 10:9 11:15
13:9,16 15:14,16
15:23 20:2,2
32:21 34:24 35:5
44:19 49:5 51:24
54:13,15

**webb** 9:15
**weeks** 11:3 50:22
**weil** 3:12,17,19
4:3,21 5:13 7:3
10:20 25:22 26:25
27:1 28:8,9 32:23
**went** 33:3
**we're** 10:3
**white** 1:14
**widowers** 14:22
**widows** 14:22
**wilmington** 8:4
9:4
**win** 58:3
**winimo** 57:14
**withhold** 18:17
**witness** 69:10,14
**woman** 72:1,6
**wondering** 37:10
**word** 46:19
**work** 14:2 15:4
22:13 27:14 28:17
28:18 31:10 35:12
35:17,17 36:9,13
69:4
**working** 19:15
**worried** 30:6 49:4
**worry** 52:1
**worst** 55:3
**worth** 31:2
**write** 53:23
**writing** 68:23
**written** 69:21
**wrong** 59:11

**x**

**x** 1:4,10

**y**

**y** 56:20,20
**yeah** 42:1 51:16
53:21 59:19 62:21
70:1,12,13
**year** 34:12 49:15
50:23 51:12 52:1

52:18 54:4 58:9
58:19 59:9,12,22
61:4,15,24 62:24
62:24 66:5,16,19
67:18,21 69:21,22
**years** 49:16,21,25
50:3,4,11,12,18
50:21,23,23 51:3
52:23 54:4,9
59:13 60:2,7,21
63:16 66:10,20,25
68:3,4 69:24
70:23
**york** 1:2 7:6,13,20
8:11 9:18

**z**

**zoom** 6:20 10:5
38:12