UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

**MOTION INFORMATION STATEMENT**

Docket Number(s): __20-1846-bk(L); 20-1953-bk(XAP)__        _____ Caption [use short title] _____

Motion for: Clarification of order tolling the deadline to

sublet pending appeal.

_____

Set forth below precise, complete statement of relief sought:

Clarification that tolling deadline is inapplicable

in light of Bankruptcy Court's indicative ruling or, in the alternative,

to toll the deadline until after the Supreme Court

resolves the issues raised by MOAC.

In Re: Sears Holdings Corporation

_____

_____

MOVING PARTY: Transform Holdco LLC                  OPPOSING PARTY: MOAC Mall Holdings LLC

[ ] Plaintiff          [ ] Defendant

[ ] Appellant/Petitioner    [✔] Appellee/Respondent

MOVING ATTORNEY: Richard A. Chesley          OPPOSING ATTORNEY: David W. Dykhouse

[name of attorney, with firm, address, phone number and e-mail]

DLA Piper LLP (US)                              Patterson Belknap Webb & Tyler LLP

1251 Avenue of the Americas                     1133 Avenue of the Americas

New York, NY 10020                              New York, NY 10036

Court- Judge/ Agency appealed from: McMahon, J., United States District Court for the Southern District of New York.

**Please check appropriate boxes:**                          **FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has movant notified opposing counsel (required by Local Rule 27.1):     Has this request for relief been made below?     [✔] Yes  [ ] No
[✔] Yes  [ ] No (explain): _____          Has this relief been previously sought in this court?  [ ] Yes [✔] No
_____                         Requested return date and explanation of emergency:
                                                Return date requested by February 15, 2022. Emergency relief is warranted
Opposing counsel's position on motion:                because this Court's prior tolling order set a deadline of February 15, 2022,
[ ] Unopposed [✔] Opposed [ ] Don't Know              and it is unclear whether this deadline continues to apply following the
Does opposing counsel intend to file a response:            Bankruptcy Court's indicative ruling.
[✔] Yes  [ ] No  [ ] Don't Know

Is oral argument on motion requested?   [ ] Yes [✔] No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?   [✔] Yes [ ] No If yes, enter date: April 30, 2021

**Signature of Moving Attorney:**

/s/ Richard A. Chesley      Date: 4 Feb 2022     Service by: [✔] CM/ECF  [ ] Other [Attach proof of service]

_____

Form T-1080 (rev.12-13)

# No. 20-1846(L); 20-1953(XAP)

## United States Court of Appeals
## for the Second Circuit

IN RE: SEARS HOLDINGS CORPORATION,

*Debtor*

MOAC MALL HOLDINGS LLC,

*Appellant-Cross-Appellee,*

v.

TRANSFORM HOLDCO LLC,

*Appellee-Cross-Appellant.*

On Appeal from the United States District Court
for the Southern District of New York

**TRANSFORM'S EMERGENCY MOTION TO CLARIFY CERTAIN ISSUES
PENDING MOAC'S PETITION FOR WRIT OF CERTIORARI**

**Date by which relief is requested:**
**No later than February 15, 2022**

**DLA PIPER LLP (US)**
Richard A. Chesley
R. Craig Martin
Rachel Ehrlich Albanese
1251 Avenue of the Americas
New York, NY 10020
(212) 335-4500
Richard.Chesley@us.dlapiper.com

Appellee-Cross-Appellant Transform Holdco LLC ("Transform") respectfully submits this motion ("Clarification Motion") for an order clarifying this Court's August 17, 2021 tolling order ("Tolling Order") based on an indicative ruling from the bankruptcy court.  In support of this Clarification Motion, Transform submits the declaration of D. Scott Carr ("Carr Declaration").

This Clarification Motion relates to a valuable lease ("Lease") at the Mall of America.  Transform purchased the Lease from the Sears bankruptcy estate, and MOAC Mall Holdings LLC ("MOAC") is the landlord to Transform under the Lease. When the bankruptcy court approved the sale and assignment of the Lease to Transform, it entered an order ("Assignment Order") that required Transform to sublease a portion of the space within two years after the entry of the Assignment Order and, in accordance with the Lease, required Transform to offer a right of first refusal to MOAC in the event of any transfer of the Lease.  SPA-82.  The Assignment Order also prohibited MOAC from "improperly interfering" with Transform's efforts. *Id*.  Due to Transform's concerns that the two-year period would lapse

during the appellate process, this Court tolled that deadline until sixty days

after its order on the pending appeal, or until February 15, 2022, following

issuance of the Court's December 17, 2021 Summary Order.

Transform has entered into a sublease ("Sublease") with a subtenant

("Subtenant")[1] for a portion of the premises within the time frame

established by the Assignment Order as extended by this Court.  MOAC has

objected to the Subtenant and the Sublease.  Thus, Transform filed a motion

to enforce the Assignment Order's non-interference provision with the

bankruptcy court ("Bankruptcy Enforcement Motion") to enable the

bankruptcy court to determine whether Transform had satisfied the sublease

provisions of the Assignment Order.  MOAC objected to the Bankruptcy

Enforcement Motion.

The bankruptcy court held oral argument on January 20, 2022, on the

Bankruptcy Enforcement Motion.  Relevant to this Clarification Motion, the

bankruptcy court—interpreting its own order—held that the two-year

---

[1]      The Sublease (including the identity of the Subtenant) is confidential
but has been provided in unredacted form to MOAC.

period "did not apply" to the circumstances here.  But, given the pendency

of matters before this Court, the bankruptcy court did not enter an order and

instead issued an indicative ruling[2] that the two-year period was

---

[2]    Rule 8008 of the Federal Rules of Bankruptcy Procedure (the
"Bankruptcy Rules") contains similar concepts to those in Rule 12.1 of the
Federal Rules of Appellate Procedure (the "Appellate Rules") and
provides:

(a) **Relief Pending Appeal**.  If a party files a timely motion in the
bankruptcy court for relief that the court lacks authority to grant
because of an appeal that has been docketed and is pending, the
bankruptcy court may:

(1) defer considering the motion;

(2) deny the motion; or

(3) state that the court would grant the motion if the court where
the appeal is pending remands for that purpose, or state that the
motion raises a substantial issue.

(b) **Notice to the Court where the appeal is pending.** The movant
must promptly notify the clerk of the court where the appeal is
pending if the bankruptcy court states that it would grant the motion
or that the motion raises a substantial issue.

(c) **Remand after an indicative Ruling**. If the bankruptcy court states
that it would grant the motion or that the motion raises a substantial
issue, the district court or BAP may remand for further proceedings,
but it retains jurisdiction unless it expressly dismisses the appeal. If the
district court or BAP remands but retains jurisdiction, the parties must
promptly notify the clerk of that court when the bankruptcy court has
decided the motion on remand.

inapplicable here.  Several days later, this Court entered its order staying the issuance of the mandate pending disposition on MOAC's expected petition for writ of certiorari.

Now that this Court has granted a stay of the mandate, Transform brings this motion to clarify that, notwithstanding this Court's Tolling Order extending the two-year time frame in the Assignment Order to February 15, 2022, the two-year period has not started and will not lapse, based on the bankruptcy court's indicative ruling.  Alternatively, if this Court disagrees with the bankruptcy court's interpretation of its Assignment Order in its indicative ruling, Transform respectfully requests that the Court further toll the February 15, 2022 deadline.

## BACKGROUND

### I.    Lower Court Proceedings

As part of its bankruptcy proceedings, Sears sold most of its assets to Transform including the Lease for a three-story anchor location with nearly 70 years remaining at the Mall of America in Minneapolis, Minnesota. *See* SPA-4.

The bankruptcy court entered the Assignment Order authorizing the sale of the Lease to Transform, over MOAC's objection, on September 5, 2019. *See* SPA-65. In response to MOAC's objection to the assignment, however, the bankruptcy court required Transform to sublet a portion of the premises within two years of the sale, "on the condition that [MOAC] does not improperly interfere with [Transform's] attempt to sublet the premises." *See* SPA-82.

MOAC appealed the Assignment Order to the district court. The district court originally vacated the bankruptcy court's order and remanded in a February 27, 2020 decision. SPA-86. Transform then petitioned the district court for rehearing because the court lacked jurisdiction over the appeal from the sale order under 11 U.S.C. § 363(m). The district court granted rehearing, vacated its February 27, 2020 decision, and dismissed MOAC's appeal for lack of appellate jurisdiction. MOAC then appealed to this Court without seeking a stay of the district court's rehearing decision; Transform conditionally cross-appealed the district court's original ruling.

6

## II.    This Court Affirms the District Court's Decision

On March 9, 2021, after the appeal was fully briefed, Transform filed a
motion to expedite the appeal, citing the then-upcoming two-year
September 5, 2021 deadline to sublet as grounds for expediting the hearing
and decision.  On March 16, 2021, this Court granted the motion to expedite,
scheduling oral argument for April 30, 2021.

On August 12, 2021, Transform filed a motion to toll the deadline to
sublet in the bankruptcy order.  On August 17, 2021, this Court granted the
tolling motion, tolling the deadline to sublet until sixty days after this Court
"enters its decision regarding the appeal."

On December 17, 2021, this Court issued a summary order affirming
the district court's ruling, effectively tolling the deadline in the Assignment
Order to sublet any portion of the Lease to February 15, 2022.

## III.    MOAC's Interference and the Bankruptcy Enforcement Motion

The Lease has substantial value because, among other things, it has a
term that runs until 2091 and has a rent of just $10 per year.  *See* SPA-88-89.
Since the bankruptcy court approved Transform's purchase of the Lease,

Transform searched for a subtenant to take some or all of the space in order to comply with the Assignment Order and to realize some value from the Lease. In a difficult environment for brick-and-mortar retailers, this was a challenging process, all the more with the onset of the COVID-19 pandemic in 2020. *See* Carr Decl. ¶ 3.

After 18 months of searching, Transform identified a major retailer interested in subleasing part of the space available under the Lease. *See* Carr Decl. ¶ 4. But the Subtenant wants certainty that it will be able to remain in the leased premises. *See* Carr Decl. ¶ 5.

After many months of negotiations, Transform signed the Sublease with the Subtenant. The Sublease recognizes the pendency of the dispute with MOAC and, accordingly, includes a clause that conditions the effectiveness of the Sublease upon a "Litigation Resolution," meaning a determination that: (i) the Assignment Order is fully valid and enforceable, (ii) the Sublease is a valid and enforceable sublease under the Lease, (iii) the Sublease constitutes a sublet as contemplated under the Assignment Order, and "(iv) the ROFR Resolution Date . . . has occurred in connection with th[e]

8

Lease." *See* Carr Decl. ¶ 6.  The Sublease has a provision that if the Litigation

Resolution or the ROFR Resolution have not occurred within 270 days after

the day the Sublease was executed on November 2, 2021, then either

Transform or the Subtenant can terminate the Sublease, unless they agree

otherwise ("Sublease Termination Provision").  *See* Carr Decl. ¶ 6.  The

bankruptcy court noted that Transform is facing a "separate deal clock" due

to the Sublease Termination Provision.  Ex. 1, 71:10-15.

On November 4, 2021, Transform sent a notice to MOAC of the right

of first refusal as required by the Assignment Order and the Lease ("ROFR

Notice").  *See* Carr Decl. ¶ 7.  In the ROFR Notice, Transform provided the

executed Sublease, and "first offer[ed] to MOAC the right to sublease the

space from Transform at the same price, terms, and conditions."  *See* Carr

Decl. ¶ 7.  In accordance with section 6.3 of the Lease, Transform requested

that MOAC accept or reject the offer within 45 days.

On December 17, 2021, shortly after this Court issued its Summary

Order, MOAC rejected the right of first refusal.  *See* Carr Decl. ¶ 8.  MOAC

also purported to "object" to the Subtenant and the Sublease and claimed it "does not consent to the sublease."  *See* Carr Decl. ¶ 8.

On January 5, 2022, in response to MOAC's rejection of the ROFR Notice and after the deadline for MOAC to move for rehearing of this Court's Summary Order, Transform filed a motion to enforce the Assignment Order in the bankruptcy court.   Transform asked the bankruptcy court to (i) rule that the litigation contingency requirements had been met since there was no stay of this Court's Summary Order, permitting the Sublease to proceed to closing absent such a stay and (ii) prohibit MOAC from further improper interference with Transform's Sublease.  Transform also sought a ruling that it has satisfied the requirements of the Assignment Order and the Lease with respect to MOAC's right of first refusal and the Sublease and Subtenant.

One day after Transform filed the Bankruptcy Enforcement Motion, MOAC filed its motion to stay issuance of the mandate in this Court.  While the motion to stay was pending, on January 20, 2022, the bankruptcy court

heard arguments on the Bankruptcy Enforcement Motion.[3]  In response to

Transform's request for the bankruptcy court to conclude that the

Assignment Order is "fully valid and enforceable," the bankruptcy court

"defer[red] consideration" of that question, Ex. 1, 67:12, because whether "all

of the litigation is done," is "something before the Circuit."  Ex. 1, 63:23–24.

Transform also raised the anticipated expiration of the two-year period

in the Assignment Order, as extended in the Tolling Order.  The bankruptcy

court concluded that the concern over the expiration of the time period in

the Assignment Order was "misplaced" and a "separate issue" from

whether the litigation had been resolved, Ex. 1, 64:3–7, concluding that it had

jurisdiction over the right of first refusal issue and the appropriateness of the

Sublease and the Subtenant and that "the two-year limitation under [the

Assignment Order] doesn't apply in these circumstances."  Ex. 1, 66:5–6.  The

bankruptcy judge authorized and directed Transform to inform this Court

---

[3]    Transform seeks to have this Clarification Motion considered the
necessary notice of the indicative ruling under Appellate Rule 12.1 and
Bankruptcy Rule 8008 and provides the relevant portion of the transcript of
the bankruptcy court as **Exhibit 1** ("Ex. 1").

of these views as indicative of how the bankruptcy court would rule if it had

jurisdiction to do so.  Ex. 1, 66:4–6.

## ARGUMENT

### I.    This Court should adopt the bankruptcy court's indicative ruling or remand the question back to the bankruptcy court for entry of an order.

As part of its Bankruptcy Enforcement Motion, Transform raised

concerns over the anticipated, imminent expiration of the two-year period

in the Assignment Order, as extended by the Tolling Order to February 15,

2022.  MOAC argued in response that the two-year deadline is still in effect.

The bankruptcy court heard arguments in relation to the deadline, and then

authorized and directed Transform to submit an indicative ruling to this

Court reflecting the bankruptcy court's interpretation of that provision of its

Assignment Order.  *See* Ex. 1, 52:20-24, 58:17-59:14, 66:4-13, 19-22; 67:8-10.

The bankruptcy court stated that "the two-year limitation . . . doesn't

apply in these circumstances."  Ex. 1, 66:5–6.  Specifically, the bankruptcy

judge explained that he never intended for the two-year period to apply

while the case was on appeal.  *See* Ex.1, 59:8-16; 66:3-13.  He emphasized that

"Transform shouldn't be up against . . . an imminent deadline . . . because of the pending appeals," Ex. 1, 60:22-25, and clarified that the purpose of including a two-year limitation was to provide a reasonable time for Transform to find a subtenant and implement a sublease.  Ex. 1, 60:13-19. The bankruptcy court further stated that "it is important for [the Second Circuit] to know" the bankruptcy court's view on this limitation.  Ex.1, 71:2-9; *see also* Ex. 1, 59:8-16; 70:4-5.  In essence, the bankruptcy court was of the view that Transform was not yet subject to the two-year sublease deadline and that—although it understood Transform had been cautious in seeking the Tolling Order from this Court—it was not necessary under the circumstances.

To resolve the resulting ambiguity, this Court can either order that the Tolling Order has no further force or effect, as no further extension was or is needed, or the Court can issue an order remanding the two-year question under the Assignment Order to the bankruptcy court to permit it to formalize its indicative ruling under Appellate Rule 12.1 and the similar Bankruptcy Rule 8008: that the two-year deadline to sublet is no longer

applicable.  The bankruptcy court has set a hearing on the sublease aspects

of the Bankruptcy Enforcement Motion for March 25, 2022; thus, if the Court

remands to permit the bankruptcy court to implement its indicative order,

any remand order should further toll the deadline in the Tolling Order

through the date on which the bankruptcy court rules on the issue on

remand.

## II.    Should the Court disagree with the bankruptcy court's indicative ruling, a further extension of the sublease deadline is warranted.

If the Court disagrees with the bankruptcy court's interpretation of the

Assignment Order it entered, or declines to either adopt the bankruptcy

court's indicative ruling or remand for implementation of that ruling,

Transform respectfully requests that the deadline to sublet be tolled until (a)

sixty days after the later of the issuance of the mandate from this Court if

MOAC's expected petition for writ of certiorari is denied prior to July 30,

2022 (thereby aligning with the Sublease Termination Provision)[4] and (b) if

---

[4]    Under Appellate Rule 41(d)(4), this Court "must issue the mandate immediately on receiving a copy of a Supreme Court order denying the petition, unless extraordinary circumstances exist."

14

the writ of certiorari is denied after that date or is granted, the matter is remanded back to the bankruptcy court and the bankruptcy court implements the indicative ruling.[5]

Tolling the deadline in this manner would allow Transform's rights under the Assignment Order to remain unchanged and unharmed. Once the mandate is issued, if Transform prevails before July 30, 2022, it will need time to finalize issues with its Subtenant and MOAC. If that does not happen before July 30, 2022, and the Subtenant terminates the Sublease, Transform will need time to find a new subtenant and negotiate a new sublease.

---

[5]    As stated in Transform's prior motion seeking the Tolling Order, which is incorporated by this reference, the All Writs Act empowers federal courts "to issue such commands as may be necessary or appropriate to effectuate and prevent frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *Sprint Spectrum L.P. v. Mills*, 283 F.3d 404, 413 (2d Cir. 2002); *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977). Additionally, "[f]ederal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (internal quotation marks omitted); *Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 441 (2d Cir. 1964) (courts have "inherent power to grant [a] requested stay" of arbitration). Just as before, these doctrines justify this request.

The requested extension is consistent with the interests of justice and will allow Transform the necessary time it needs to close on the Sublease or seek further relief from the bankruptcy court to provide it time to find another qualified subtenant to ensure it does not lose the value of the Lease it purchased, as applicable.

## CONCLUSION

Transform respectfully requests that this Court enter an order clarifying that (i) the two-year deadline for Transform to sublet under the Tolling Order is inapplicable or remanding the matter to the bankruptcy court to permit it to order its indicative ruling or (ii) if the Court determines the two-year deadline remains applicable, then further tolling it until sixty days after the denial of a writ of certiorari, or if certiorari is granted, until sixty days after the matter is fully remanded to the bankruptcy court.

Date: February 4, 2022                    /s/ Richard Chesley

Richard A. Chesley
R. Craig Martin
Rachel Ehrlich Albanese
John O. Wray
Shelby Nace
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020
(212) 335-4500
Richard.Chesley@us.dlapiper.com

*Attorney for Appellee-Cross-Appellant
Transform Holdco LLC*

# Exhibit 1

```
                                                   Page 1

 1    UNITED STATES BANKRUPTCY COURT

 2    SOUTHERN DISTRICT OF NEW YORK

 3    Case No. 18-23538-rdd

 4    - - - - - - - - - - - - - - - - - - - - - - - - - - x

 5    In the Matter of:

 6

 7    SEARS HOLDING CORPORATION ET AL.,

 8

 9          Debtors.

10    - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                    United States Bankruptcy Court

13                    300 Quarropas Street, Room 248

14                    White Plains, NY 10601

15

16

17                    January 20, 2022

18                    2:10 PM

19

20

21    B E F O R E :

22    HON ROBERT D. DRAIN

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO:   ART
```

1  HEARING re Status Update on Debtors; Progress Towards

2  Effective Date.

3

4  HEARING re Notice of Hearing on Interim Applications for

5  Allowance of Compensation and Reimbursement of Expenses on

6  January 20, 2022 at 2:00 p.m. (ECF #10171)

7

8  HEARING re Monthly Fee Statement Ninth Interim Fee

9  Application of Prime Clerk LLC, as Administrative Agent to

10  the Debtors, for Services Rendered and Reimbursement of

11  Expenses for the Period from July 1, 2021 through October

12  31, 2021 filed by Prime Clerk, LLC. (ECF #10162)

13

14  HEARING re Application for Interim Professional Compensation

15  /Sixth Interim Fee Application of Henick, Feinstein LLP as

16  Special Conflicts Counsel to the Official Committee of

17  Unsecured Creditors for Allowance of Compensation for

18  Services Rendered and Reimbursement of Expenses for the

19  Period of July 1, 2021 through October 31, 2021

20  for Herrick, Feinstein LLP, Special Counsel, period:

21  7/1/2021 to 10/31/2021, fee:$76,275.00, expenses:

22  $30,428.89. filed by Herrick, Feinstein LLP. (ECF #10156)

23

24

25

18-23538-shl    Doc 10284-2    Filed 02/04/22    Entered 02/04/22 15:56:09    Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 22 of 117

Page 3

```
 1    HEARING re Application for Interim Professional Compensation

 2    Eighth Joint Application of Paul E. Harner, as Fee Examiner

 3    and Ballard Spahr LLP, as Counsel to the Fee Examiner, for

 4    Interim Allowance of Compensation for Professional Services

 5    Rendered and Reimbursement of Actual and Necessary Expenses

 6    Incurred from July 1, 2021 through October 31, 2021 for Fee

 7    Examiner, Other Professional, period: 7/1/2021 to

 8    10/31/2021, fee:$276793.00, expenses: $0.00. filed by Fee

 9    Examiner. (ECF #10161)

10      .

11    HEARING re Application for Interim Professional

12    Compensation/Ninth Application of Weil, Gotshal & Manges

13    LLP, as Attorneys for the Debtors, for Interim Allowance of

14    Compensation for Professional Services Rendered and

15    Reimbursement of Actual and Necessary Expenses IncmTed from

16    July 1, 2021 through and including October 31, 2021 for

17    Weil, Gotshal & Manges LLP, Debtor's Attorney, period: 7

18    /112021 to 10131/2021, fee:$2,517,997.00, expenses:

19    $148,882.59. filed by Weil, Gotshal & Manges LLP. (ECF

20    #10160)

21

22

23

24

25
```

1    HEARING re Objection to Motion FOR COMPENSATION BY (1) AKIN

2    GUMP HAUER & FIELD LLP [Doc. 10154]; (2) FTI CONSULTING INC.

3    [Doc. 10155]; AND (3) WEIL, GOTSHAL & MANGES LLP [Doc.

4    10160] (related document(s)10160, 10154, 10155) filed by

5    Alexander Tiktin on behalf of Orient Craft Ltd. (ECF #

6    10191)

7

8    HEARING re Application for Interim Professional Compensation

9    // Ninth Interim Fee Application of Akin Gump Strauss Hauer

10   & Feld LLP as Counsel to the Official Committee of

11   Unsecured Creditors for Allowance of Compensation for

12   Services Rendered and Reimbursement of Expenses for the

13   Period of July 1, 2021 Through and Including October 31,

14   2021 for Akin Gump Strauss Hauer & Feld LLP, Creditor Comm.

15   Aty, period: 711/2021 to 1013112021, fee:$839,969.00,

16   expenses: $287,232.21. filed by Akin Gump Strauss Hauer &

17   Feld LLP. (ECF #10154)

18

19   HEARING re Objection to Motion FOR COMPENSATION BY (1) AKIN

20   GUMP HAUER & FIELD LLP [Doc. 10154]; (2) FTI CONSULTING INC.

21   [Doc. 10155]; AND (3) WEIL, GOTSHAL & MANGES LLP [Doc.

22   10160] (related document(s)10160, 10154, 10155) filed by

23   Alexander Tiktin on behalf of Orient Craft Ltd. (ECF #

24   10191)

25

1    HEARING re Application for Interim Professional Compensation

2    // Ninth Interim Application of FTI Consulting, Inc.,

3    Financial Advisor to the Official Committee of Unsecured

4    Creditors of Sears Holdings Corporation, et al. for Interim

5    Allowance of Compensation and Reimbursement of Expenses for

6    the Period from July 1, 2021 Through October 31, 2021 for

7    FTI CONSULTING, INC., Other Professional, period: 7/112021

8    to 1013112021, fee:$266,139.00, expenses: $0.00. filed by

9    FTI CONSULTING, INC. (ECF #10155)

10

11    HEARING re Objection to Motion FOR COMPENSATION BY (1) AKIN

12    GUMP HAUER & FIELD LLP [Doc. 10154]; (2) FTI CONSULTING INC.

13    [Doc. 10155]; AND (3) WEIL, GOTSHAL & MANGES LLP [Doc.

14    10160] (related document(s)10160, 10154, 10155) filed by

15    Alexander Tiktin on behalf of Orient Craft Ltd. (ECF #

16    10191)

17

18    HEARING re Motion for Objection to Claim(s) Number: 20138

19    and 26385 of the North Carolina Department of Revenue (ECF

20    #9985)

21

22    HEARING re Response to Motion (related document(s)9985)

23    filed by Matthew Sommer on behalf of North Carolina

24    Department of Revenue (ECF #10163)

25

18-23538-shl    Doc 10284-2    Filed 02/04/22    Entered 02/04/22, 15:56:09    Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 25 of 117

Page 6

1    HEARING re Motion to Compel I Motion to Enforce the Order

2    (I) Authorizing Assumption and Assignment of Lease with MOAC

3    Mall Holdings LLC and (II) Granting Related Relief filed by

4    Richard A. Chesley on behalf of Transform Holdco LLC (ECF #

5    10194)

6

7    HEARING re Motion to File Under Seal/ Motion of Transform

8    Holdco LLC for Leave to File Under Seal Portions of

9    Transform Holdco LLC's Motion to Enforce and Accompanying

10   Exhibits filed by Richard A. Chesley on behalf of Transform

11   Holdco LLC. (ECF #10193)

12

13   HEARING re Order to Show Cause signed on 12/28/2021 why an

14   answer with attorney representation has not been filed by

15   Defendant, Grace and Son Construction Company of Greenville,

16   Inc. and why Defendant has not retained counsel to represent

17   it in this adversary proceeding (ECF #7)

18

19   HEARING re Notice of Agenda of Matters Scheduled for Hearing

20   to be Conducted Through Zoom on January 20, 2022 at 2:00

21   p.m.

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

```
                                                        Page 7
 1    A P P E A R A N C E S :

 2

 3    WEIL, GOTSHAL & MANGES LLP

 4         Attorneys for Debtors

 5         767 Fifth Avenue

 6         New York, NY 10153

 7

 8    BY: GARRETT FAIL (TELEPHONICALLY)

 9

10    AKIN GUMP

11         Attorneys for Official Unsecured Creditors Committee

12         1 Bryant Park

13         New York, NY 10036

14

15    BY: SARA BRAUNER (TELEPHONICALLY)

16

17    TARTER KRINSKY DROGIN LLP

18         Attorneys for Orient Craft

19         1350 Broadway

20         New York, NY 10019

21

22    BY:  DAVID WANDER (TELEPHONICALLY)

23

24

25
```

```
 1    BALLARD SPAHR LLP

 2          Attorneys for Fee Examiner

 3          919 Market Street

 4          Wilmington, DE 19801

 5

 6    BY:  TOBEY DALUZ (TELEPHONICALLY)

 7

 8    SHEPPARD MULLIN

 9          Attorneys for Fee Examiner

10          30 Rockefeller Plaza

11          New York, NY 10112

12

13    BY: PAUL HARNER (TELEPHONICALLY)

14

15    QUINN EMANANUEL UEQUHART SULLIVAN, LLP

16          Attorneys for Administrative Claims Representative

17          1300 I Street, NW

18          Washington, DC 20005

19

20    BY: ERIKA MORABITO (TELEPHONICALLY)

21

22

23

24

25
```

```
 1   DLA PIPER LLP
 2         Attorneys for Transform Holdco LLC
 3         1201 North Market Street
 4         Wilmington, DE 19801
 5
 6   BY:  ROBERT CRAIG MARTIN (TELEPHONICALLY)
 7
 8   LARKIN HOFFMAN LAW FIRM
 9         Attorneys for MOAC Mall Holdings LLC
10         8300 Norman Center Drive
11         Minneapolis, MN 55437
12
13   BY:  GREGORY OTSUKA  (TELEPHONICALLY)
14
15   PATTERSON BELKNAP WEBB TYLER LLP
16         Attorneys for MOAC Mall Holdings LLC
17         1133 Avenue of the Americas
18         New York, NY 10036
19
20   BY:  DAVID DYKHOUSE (TELEPHONICALLY)
21
22
23
24
25
```

```
 1                    P R O C E E D I N G S

 2            THE COURT:  Okay, good afternoon everyone.  This

 3     is Judge Drain.  We're here in In re Sears Holdings

 4     Corporation, et al.  The matters on today's agenda are all

 5     being heard remotely, primarily by Zoom, unless someone

 6     doesn't have access to a screen, in which case they're

 7     appearing by telephone.

 8            I'm happy to go down the agenda submitted by the

 9     Debtor's counsel, in order, as we've done periodically for

10     some time now, at the start of these omnibus hearings.

11     We'll start with a status report on the Debtor's progress

12     toward achieving the effective date.  In that regard, I'll

13     note that I received a status update for today's hearing,

14     dated January 20, for a status update for January 20, which

15     I believe is also on the docket.

16            I'm not sure who, from the Debtor's counsel will

17     be providing the status report, but you can go ahead at this

18     point.

19            MR. FAIL:  Thank you, Your Honor.  Garrett Fail,

20     Weil Gothsal & Manges for the Debtors.  Are you able to hear

21     me this afternoon?

22            THE COURT:  Yes, fine, thanks.

23            MR. FAIL:  Good.  Good to see you, Your Honor.

24     The presentation we filed on the docket for today is at

25     docket 10240, for those following along.  As I've done in
```

Page 11

1    the past, I'll walk the Court through it.  And, as in the

2    past, before I start, I will note that the Debtor's

3    coordinated, over the past several weeks and months, on the

4    content of the report, with not only the Pre-Effective Date

5    Committee, but also separately with the advisors for the

6    Administrative Claims Representative, and the UCC, as well

7    as the Administrative Claims Representative.

8            In advance of this report, the Debtor's thank each

9    of the participants for their time and their analysis and

10   their cooperation.

11           The punchline of today's report is, it's good

12   news; forward progress.  But I'll walk you through the

13   details and explain how I get there.

14           If we start on page two, Judge, you'll see this is

15   the claim status (indiscernible).  And as in the past, we've

16   divided he claims up.  The top section deals with those

17   parties that are eligible to receive distributions, because

18   they opted in, or didn't opt out, for payment.

19           You'll see that the number of … you'll see that

20   basically -- not basically -- you'll see that we fully

21   satisfied 1,068 claims, and that was out of the 1,560.  So,

22   about 58 of 8 percent have already been allowed and

23   satisfied in full, out of the administrative claims that

24   opted in.

25           In addition, you'll see from this report -- and

Page 12

1    that's the de minimis lines that have been paid in full, but

2    the majority in number, the vast majority.  So, that leaves

3    what you see as the allowed opt-out non-de minimis, and

4    allowed non-opt-out, non-de minimis.

5            And you'll see, if you compare this report to last

6    time's, that we increased the number of allowed claims by

7    40.  That's by resolving, you know, disputed claims.  So,

8    forward progress in revolving claims and moving them to the

9    allowed category.

10           You'll also note, that it appears from this chart,

11   that there are only 492 claims eligible for distribution; a

12   small fraction of those that we started with.  And there's

13   actually, behind the scenes on these numbers, even less than

14   492 claims.

15           As a result of preference settlements and other

16   settlements, certain parties that received initial

17   distributions are capped, and only 440 claims are eligible

18   for future distributions.  The amounts on the right-hand

19   side of the page do track the total that's remaining to be

20   paid to them, which is $41.3 million to those parties that

21   are allowed.  There's only 440 of them.

22           In the past quarter, we continue to make progress

23   on disputed claims, as I mentioned, including those that

24   were allowed.  In the first category, you'll see the number

25   of opt-in claims that were subject to preference increased

Page 13

1    by eight; the number of non-opt-out claims that were subject

2    to preference, decreased by 23.  Those that needed to be

3    reconciled, decreased by 30.

4            So, it's only five claims, really, where the

5    substance of the claims remain to be disputed.  And you'll

6    see that the distributions that are being held on account of

7    those disputed claims have been reduced dramatically.

8            And I'll speak more later, Judge, but we think

9    we've gotten, you know, as far as we can with most of these,

10   without going into protracted litigation with promises of

11   appeals, where the benefit of going further, you know, we

12   might be hitting the point of diminishing returns.  But to

13   say that we have only five disputed claims out of the

14   thousands that we started with, is the real accomplishment.

15           In terms of the few parties that opted out, Judge,

16   we've reconciled another 15 of them, which brings the total

17   up to 55.  We have resolved 76 that were subject to

18   objection, and we're down to only seven opt-outs that remain

19   unresolved.  And, you know, we come to the same point of

20   diminishing returns and trying to get down to perfect,

21   dealing with parties that refuse to settle or promise to

22   appeal.

23           And then, we note here, that there's one large

24   claim, when you remove duplication, that has been disallowed

25   and subject to appeal, and that's related to the 507

1    appeals.  That's flagged so the parties can see that it's

2    outstanding and that work needs to be done, as we did in the

3    past fee allocation period, to preserve this Court's

4    judgment up on appeal before the Second Circuit.

5            So, moving down to the second half of the page --

6            THE COURT:  I'm sorry, what is -- is there a

7    reserve on that one?  And if so, what is it?

8            MR. FAIL:  It is not --there is no reserve.  It is

9    an opt-out.  So, there's no reserve for it.

10           THE COURT:  Okay.

11           MR. FAIL:  Down on the second half of the page, on

12   the bottom, we go through claims that aren't receiving

13   distributions to date, but nonetheless, are claims that

14   could be entitled to 100 percent recovery, and that would

15   need to be paid on or shortly after the effective date.

16           The first category are claims that could be

17   entitled to share in a $3 million 1114 settlement.  The

18   number is, you know, very high in the number of claims that

19   have been asserted, but they share pro rata in a pot of $3

20   million, so the liability is limited.  In addition, this

21   number of claims is high because a population that we were

22   dealing with, of retirees or their widows, or widowers.  You

23   know, we looked and included here, claims that were asserted

24   as general unsecured, claims that were asserted as secured,

25   administrative priority, the gamut; but that could be

1    included in the universe that someone will have to reconcile

2    to pay out at a later date.

3           The next section is broken out into two, but it's

4    taxes.  And a lot of work was spent in the lower section, in

5    this past period, by the Debtors, to reduce both the number

6    of outstanding claims, and bringing asserted amounts

7    remaining down closer to the actual estimates that the

8    Debtors have shown.

9           We removed from this chart, claims that were

10   asserted for post-petition taxes and, in general, those have

11   either been paid, or will be paid, and we may file an

12   objection to clean up the docket.  But this shows

13   prepetition claims that remain outstanding.  And so, you'll

14   see a decrease in the number, and you'll see that we've

15   already filed objections to get rid of certain claims.  And

16   since we filed this report, we've made further progress

17   resolving even some of those objections.

18          After the tax line, we come to severance.  This

19   number is also increased, but the Debtor's estimate for the

20   severance has not increased.  These are folks that were

21   severed prepetition.  Their meeting amount of severance has

22   not been paid.  And so, the Debtor's have an estimate for

23   it, and we've just increased the number of parties that may

24   be eligible for it.  And we filed some objections to other

25   non-tax claims.

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri   Pg 35 of 117

Page 16

1          The secured line includes, primarily, in this

2     giant number, parties asserting second lien debt, and the

3     Debtors have agreed to defer fighting about that until the

4     results of the second circuit appeal are known, to see if we

5     can resolve it without further litigation or contemporaneous

6     litigation and appeals.

7          The punchlines on this page are tremendous

8     progress in reducing the number in getting the reserves

9     down.  You will note, Judge, on the bottom, that the

10    estimated allowed amounts, after discount, has gone up

11    slightly; we're showing $159.4 million, up from $153 million

12    last time.  And on the bottom right, you'll see the amount

13    that we estimate that we will need to pay, is $106.1

14    million.  It's up slightly from $99.7 from last time.  The

15    primary driver of the increase is an increase in the

16    Debtor's estimate for potential liability they may have, for

17    prepetition priority taxes.

18         The Debtor's prior estimates included everything

19    to the best of their knowledge, based on books and records.

20    Certain taxing jurisdictions are conducting audits.  And the

21    results of those audits are unknown and uncertain.  And

22    certainly, we're not admitting any additional liability, but

23    we're flagging for parties that may be relying on this for

24    other purposes, that there could be additional prepetition

25    priority tax claims included.

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri   Pg 36 of 117

Page 17

 1              I'll move to the next page, if that's okay, you

 2      have no other questions, Judge?

 3              THE COURT:  No, that's fine.

 4              MR. FAIL:  The next page, you know, is a waterfall

 5      recovery analysis; again, positive news.  We're showing cash

 6      balances of 34.5 million, up from our last report, where it

 7      was 23.4.  We're showing a dramatic reduction in reserves as

 8      a result of resolving disputed claims, and cleaning up for

 9      potential settlements that didn't occur.  And that shows,

10      remaining cash of $30 million, up for $17 last time.

11              In terms of the assets that remain to be modified,

12      again, progress, that was described in the fee applications,

13      and that Your Honor is seeing in various notices that were

14      filed; there's 1.1 estimate in remaining real estate to

15      come.  It's down from last time, but because of the

16      monetization of assets, that contributed to the increase in

17      cash.  The same with respect to other proceeds, which has

18      come down, because assets were monetized and cash was

19      received.  So, the total remaining assets have come down

20      from 42 to 28.8; it was a decrease of 13.1, but you'll see

21      an increase of 17 in cash.  So, net-net, the Debtors are

22      doing well in terms of asset monetization.

23              The claims numbers here tie to page 2.  And so, at

24      the bottom, you see the potential difference between the

25      cash available and the projected uses, excluding litigation-

Page 18

1   based recovery from preferences and ESL litigation; is 62.6

2   million, up slightly, slightly, from the 58.2 in the last

3   report; again, primarily driven as a result of the taxes

4   that I mentioned earlier.

5           If Your Honor has no questions, I'll flip the page

6   to 4.

7           THE COURT:  That's fine.

8           MR. FAIL:  Thank you.  So, page 4 is the Debtor's

9   announcement that as a result of the cash on hand, on cash

10  expected to come in, the Debtors expect that they'll be able

11  to make a fourth distribution of $17.7 million, on account

12  of opt-in and non-opt-out administrative claims, before the

13  end of March.

14          The chart below shows a $15.4 million would be

15  allocated to those who would currently allow claims, with a

16  reserve of $1.2 or $1.3 million being added to those that

17  were forced withhold; because parties are still subject to

18  preferences.  And large driver of that are foreign

19  defendants, where service has been difficult.  And despite

20  everything the Debtors have attempted to do, you know,

21  continue to be drag.

22          Nonetheless, 17.7 is a tremendous distribution.  A

23  few ways you can look at that number, Judge:  If you look at

24  it as $17.7 out of the $53.3 million, which is what is owed

25  today, that's one-third of what we would owe to those

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 38 of 117

Page 19

 1    administrative creditors.  But it also, you know, is

 2    significant when you consider that it would get those

 3    creditors to the 50 percent mark of the allowed amount of

 4    their claims, pre-discount.  That alone is significant.  But

 5    when you consider that we only owe those parties either 75

 6    percent or 80 percent of what we owe, you know, this

 7    distribution will get to two-thirds of what we owe them, or

 8    62 percent of them; between 66 and 62 percent of what we

 9    would owe to those parties.

10         So, a significant distribution.  The cash

11    available is a direct result of the litigation and asset

12    monetization that's occurred over the past period, that Your

13    Honor is very familiar with.

14         The statistics that I just gave you, you know,

15    would be a good baseline.  The Debtors working with the Pre-

16    Effective Date Committee believe that they might be able to

17    do even more.  And the Debtors, with consent and support of

18    the Pre-Effective Date Committee and the UCC advisors, and

19    the administrative claims rep, as well as the largest

20    administrative creditor, are going to propose the following

21    additions:

22         To the extent that we are able to pay that 50

23    percent mark, with the $17.7 million, we're proposing to

24    allocate, roughly, $2 million, a little bit up, $2.3

25    million, to pay off and satisfy 199, close to 200, of the

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri   Pg 39 of 117

Page 20

1  440 opt-in and non-opt-out claimants that currently remain.

2  So, again, we've described how we've satisfied the vast

3  majority already.  This would allow 45 percent of those

4  administrative creditors to end their involvement with these

5  cases.

6       We propose to do it by paying off de minimis

7  creditors.  Your Honor, in the past, for the earlier

8  distribution, you recognized the benefit of, the

9  administrative benefit that comes by making one-time

10  payments, up to $15,000, to parties.  We're now proposing,

11  to the extent that funds are available, to pay off the 50

12  percent mark to everybody after doing this, everybody that

13  would remain, to pay people that are owed up to $20,000

14  remaining in their opt-in and non-opt outs.  And it would

15  still allow us to pay 50 percent, up to 50 percent of the

16  remaining creditors.

17       And again, we think that that that meets the goals

18  of efficiencies for the cases, you know, ending parties'

19  involvements, and maximizing future distributions.  We're

20  happy to have the support of the various constituents for

21  it.

22       Because it is a deviation, you know, from the

23  otherwise-established process, we would propose to submit a

24  form of order on presentment to Your Honor.  We don't think

25  it's controversial, but this way we can get your blessing.

18-23538-shl  Doc 10284-2  Filed 02/04/22  Entered 02/04/22 15:56:09  Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 40 of 117

Page 21

1   We're previewing it now.  But the money is there to go out

2   the door, one way or another, which is the good news.

3           The other item that I mentioned earlier, to try to

4   conserve administrative resources going forward, the Debtors

5   have gotten, you know, in credibly far in resolving claims;

6   will continue to do so through the next distribution.  After

7   that point, you know, we'll consider, and probably dial back

8   and not pursue, you know, litigation to the end on the few

9   remaining disputed claims, and will wait and conserve

10  resources.  So, anybody that remains outstanding that wants

11  to negotiate and engage, we would suggest now is the time to

12  do so.

13          One other administrative savings that we have

14  discussed, and have the support of the Pre-Effective Date

15  Committee, as well as the estate's largest administrative

16  creditor -- we think that we'll be able to pay off the 50

17  percent, up to the 50 percent; pay off the 45 percent of de

18  minimis, and still have funds available to pay off close to

19  70 different taxing jurisdictions that have asserted

20  prepetition priority real estate tax claims; that have

21  asserted post-petition interest on those.

22          And the benefit of that would be to reduce ongoing

23  administrative expenses of tracking, reconciling and

24  updating and negotiating with those parties, as well as

25  stopping the accrual of interest.  The total cost would be

18-23538-shl  Doc 10284-2  Filed 02/04/22  Entered 02/04/22 15:56:09  Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 41 of 117

                                                                    Page 22

1      less than $1 million.  Just as with the with the de minimis

2      program, the Debtors would only go forward with that payment

3      to the extent that we're able to meet the -- cross that 50

4      percent threshold.  But we're happy to have the support of

5      the various constituents for that.  We think it will help

6      reduce costs going forward.

7               Again, because that's a deviation from the current

8      state of play, we would propose to include that in a

9      proposed order, that we would file on presentment.  And

10     hopefully, have that dealt with at or prior to the February

11     hearing, so that we could move forward, after that, to

12     distribution.

13              Your Honor, the Debtors are continuing to work

14     with the Pre-Effective Date Committee, the Administrative

15     Claims Representative, State's counsel, the UCC and its

16     counsel, on additional ways to advance these cases.  The

17     Debtors are doing everything, and have done everything

18     that's within their control, to monetize the assets and then

19     distribute what's available.

20              Additional assets, you know, remain held up,

21     including, as a result of litigation, including with result

22     to Transform; Your Honor is aware of the over $6 million

23     that's being held there.  And as well, as the reserves that

24     are being maintained for disputed claims.

25              We're doing everything within our power to advance

1    it, and the result is the 17.7 that can go out the door by

2    the end of March.

3            I'm happy to answer any questions, but that's the

4    status report for today.

5            THE COURT:  I just, I want to make sure I

6    understood one point.  You are suggesting that after that

7    fourth distribution, that it's unlikely that you would

8    engage in more negotiations on the relatively small number

9    of still-disputed claims.

10           At that point, they're either going to sit there,

11   or the Claimant needs to do something to bring it to my

12   attention.  Is that the, basically, the logic?

13           MR. FAIL:  We would not encourage anything to

14   bring it to your attention.  The claims process remains in

15   the Debtor's control.  Certain parties have vowed to

16   litigate to appeal.  Your Honor is going to be faced, I

17   think, today, with some that have gone on to appellate

18   levels and Supreme Court cert.  We're not looking to

19   increase the cost.

20           So, they'll be dealt with as and when, you know,

21   it's appropriate, when there's additional funds to pay for

22   it, and it makes sense to do it.  They know who they are.

23   The objections are on file.  There's -- I don't think

24   there's anything to do, Judge.

25           THE COURT:  Okay.  Appreciate the update.  Does

18-23538-shl   Doc 10284-2   Filed 02/04/22   Entered 02/04/22 15:56:09   Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri   Pg 43 of 117

Page 24

```
 1    anyone have anything more to say on this, or questions about

 2    it.

 3              MR. WANDER:  Yes, Your Honor.  David Wander of

 4    Tarter Krinsky, on behalf of Orient Craft.  Good afternoon,

 5    Your Honor.

 6              THE COURT:  Good afternoon.

 7              MR. WANDER:  One question is, the Akin Gump law

 8    firm says they're owed $6 million.  Is that added to the

 9    $62.6 million that needs to come in for the plan to go

10    effective?  Or does that get paid some other way?

11              MS. BRAUNER:  Good afternoon, Your Honor.  Sara

12    Brauner, Akin Gump, on behalf of the Committee.  The answer

13    is no.  The $6 million that I believe Mr. Wander is

14    referring to, is the amount that we have disclosed

15    continually in fee applications and at the prior hearing,

16    and in our reply this time around, in respect of the jointly

17    asserted causes of action; the ESL, and others' litigation.

18    That is not reflected anywhere in this account.  That is to

19    be paid from the trust account, or any other funding

20    obtained specifically in respect of that litigation.

21              THE COURT:  Okay.  Thanks.

22              MR. WANDER:  With regard to the priority claims --

23    I'm looking at page 2, and there was mention about the

24    retiree claims.  Do those have to get reconciled for the

25    plan to go effective?  And who does the reconciliation of
```

Page 25

1    that?  And how long might that take?

2             MR. FAIL:  They do not have to be reconciled for

3    the plan to go effective.  It's a fixed pot of $3 million to

4    be share by those that are entitled to it.  And whether it -

5    - and I don't want to say I believe that it's the retiree

6    representatives' job to deal with the reconciliation; the

7    Debtors are not spending to do that at this time.

8             MR. WANDER:  Is that the same with regard to the

9    other, like the severance claims?

10            MR. FAIL:  No, it is not the same with respect to

11   the severance claims.  Those are obligations of the Debtors,

12   and the Debtors will reconcile those.

13            MR. WANDER:  Okay.  Thank you.

14            THE COURT:  Okay.  Very well.  All right, thanks.

15   Why don't we go on then to the next item on the agenda,

16   which is a group of interim fee applications.  I've reviewed

17   --

18            MR. FAIL:  Oh, that's right, Your Honor --

19            THE COURT:  I'm sorry, I didn't mean -- to say as

20   a preface, I've reviewed the fee applications, the statement

21   by the fee examiner, about them, and the objection to three

22   of them, by Orient Craft, and the responses by Weil Gotshal

23   and Akin Gump to that objection.

24            MR. FAIL:  Thank you, Your Honor.  I propose to

25   just request, on behalf of all of the applicants, that Your

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri   Pg 45 of 117

Page 26

1    Honor grants the applications without further -- without

2    anything further.  And I'm happy to answer any questions,

3    and I'm sure the other professionals are as well but …

4              THE COURT:  I, as I noted, I've reviewed the

5    Examiner's status report, which is dated January 13, the Fee

6    Examiner's report, that is.  And, let me just, whether it's

7    Mr. Harner or his counsel, is there any update to that, or

8    is that the most recent view of the Fee Examiner on these

9    interim applications?

10             MS. DALUZ:  Your Honor, this is Tobey Daluz from

11   Ballard Spahr on behalf of the Examiner.  Mr. Harner is also

12   on the line.  I knew he wanted to address any questions from

13   the Court.  But since he hasn't yet turned on his screen, I

14   will say to you, there is no further update from the report

15   that was filed just a couple of days ago.

16             THE COURT:  And I'm assuming that the applicants

17   have no problem with including the same language in an order

18   here, that has been in the prior orders, regarding the

19   Examiner's rights; which he also addresses in paragraph 8,

20   the last paragraph of his status report; basically,

21   preserving all the objections that the Examiner would have,

22   in light of the ongoing process in considering the

23   Examiner's review and proposals and discussions with the

24   firms.

25             MR. FAIL:  Garrett Fail for Weil, Your Honor.

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 46 of 117

Page 27

1    Weil has no issues, and I haven't heard from any other

2    professional.  I presume that there's no issue.  It's been

3    in every order since, and we're happy to accommodate the Fee

4    Examiner in this request, and going forward.

5                MS. DALUZ:  Confirmed with the UCC as well, Your

6    Honor.

7                THE COURT:  Okay, thanks.

8                MR. HARNER:  Apologies, Your Honor, I was having

9    trouble turning back on my video and audio, but Ms. Daluz is

10   completely correct; that's exactly where we stand.

11               THE COURT:  Okay.  And this is also some of what I

12   will reprise from the last hearing we had on interim fees.

13   Is it fair to say that the Examiner's view is that, given

14   the size of the firms, the nature of the ongoing work

15   they're doing, and consequently the holdbacks -- in relation

16   to those tasks -- and the sort of estimated amount of future

17   bills that, at this point, no holdback is warranted?

18               MR. HARNER:  Your Honor, what I would say about

19   that, is that I think that the holdbacks are not necessary,

20   because the (indiscernible) can be done, you know, given the

21   size of the firms.

22               What I would say is that, given the administrative

23   insolvency gap in the case, which has been discussed at some

24   length today, is that some of them, you know, or all of them

25   may need to think about whether or not there needs to be …

1    You know, all these firms have made a lot of money on this

2    case.  And I don't mean to disparage them for that, but it

3    may need to be the case, actually, that the law firms, as

4    well as -- or the professionals, generally, as well as

5    everybody else, need to think about whether or not to take a

6    claw back from what they've earned her, to try to close that

7    gap.

8              MR. FAIL:  This is Garrett Fail from Weil, on

9    behalf of Weil.  Thank you, Mr. Harner for that thought.

10   But I would remind the Court that the Debtors have paid out

11   over $5 billion in administrative costs, to various

12   administrative claimants that aren't professionals.  And

13   that the report that we just showed includes, and highlights

14   that we paid out, to date, you know, $50-something million

15   to prepetition creditors; included in that are the pre-

16   petition administrative creditors.

17             So, the work that's been done and the applications

18   that have been filed are for post-petition work, at the

19   rates that were approved, and on the terms that were

20   approved.  And the professionals have not agreed to fund a

21   deficiency for prepetition creditors, or post-petition

22   creditors.  So …

23             THE COURT:  I think we're covering two different

24   issues.  The issue I was asking Mr. Harner about was whether

25   there should be a holdback at this point; which really goes

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 48 of 117

Page 29

1    to, in my mind, concerns about the ability, if I determine,

2    ultimately, that some portion of fees and expenses that was

3    paid on an interim basis, should not be paid on a final

4    basis, and there isn't enough unpaid amounts for future

5    periods to set off against that determination.

6            And I think I heard Mr. Harner clearly that the

7    firm's financial health, and his view of what the range of

8    potential -- a ruling like that by me, would be that, it

9    wouldn't warrant a holdback, beyond the 20 percent holdback

10   under the fee order.

11           As far as a final fee application is concerned for

12   each of the firms, I think that's a separate issue.  Namely,

13   separate and apart from the merits of the applications;

14   whether the firm should consider any reduction in order to

15   enable the case to go effective.  And that's really for a

16   future date.  I don't view that as an interim fee issue.

17           MR. FAIL:  Right, Your Honor, I just want to be

18   very clear that at each of these interim steps, this has

19   been --

20           MR. HARNER:  I'm so sorry to interrupt --

21           MR. FAIL:  -- one party or another.

22           [OVERLAPPING SPEAKERS]

23           THE COURT:  I'm sorry, you two are talking over

24   each other.  I just want to -- why don't we let Mr. Fail

25   finish.

1           MR. HARNER:  I'm so sorry to interrupt Mr. Fail,

2      but, you know, on those two different issues, I do

3      completely agree that there is no reason to oppose an

4      additional holdback point.  As I have said several times,

5      (indiscernible) if there is, ultimately, a (indiscernible)

6      imposed by the Court.  So, I'm not worried about that.

7           The only other separate issue I was raising, was

8      whether or not, you know, given the administrative expense

9      gap, these firms are (indiscernible) some reductions and try

10     to close that gap.

11          THE COURT:  That's a fair point.  That's been

12     hanging over the case since the confirmation hearing,

13     frankly. But I think it's premature to deal with that now.

14     I know that -- or I trust that, at least -- I'm pretty sure

15     I know that also -- that the firms, and the administrative

16     expense creditors, are aware of that gap acutely; that's why

17     we're having these reports at every omnibus date.

18          And there are substantial assets out there.

19     There's substantial litigation pending, big ticket

20     litigation pending.  And so, I think it's premature to do

21     that. I mean, in smaller cases, firms often make some

22     accommodation to enable the plan to go effective.  But --

23          MR. HARNER:  And, Your Honor, I couldn't agree

24     more.  But that's -- I just wanted to raise the issue, but I

25     also did not want to disagree with Mr. Fail, or any of the

Page 31

```
 1    other professionals, that there's no point, at this point,

 2    in opposing an additional holdback.  I just think it's worth

 3    it.

 4              THE COURT:  All right.  I guess the one other

 5    question I have -- in looking at the time records, I don't

 6    get this impression, but I just want to make sure there's

 7    no, like lingering professional out there that's billing,

 8    that at this point, really shouldn't be.  That's not my

 9    impression that I'm getting; that the firms are doing the

10    work that needs to be done, and not -- you know, the

11    professionals that were on monthly fee compensation

12    arrangements, have either stopped or have substantially

13    changed those.  So, I just want to make sure that's the

14    case.  I don't want there to be some lingering firm that's -

15    -

16              MR. HARNER:  I'm going to ask my colleague, Ms.

17    Daluz, whether or not she will confirm that, but I believe

18    that to be the case.

19              MS. DALUZ:  Your Honor, I agree that not only are

20    the number of fee applications, but the size of the fee

21    requests have been decreasing each quarter, as we would

22    expect to see at this stage in the case.  We do not think

23    that there is any -- I think, off the top of my head, any

24    particular firm that we think may be billing beyond what we

25    would expect.  And if we do see those kind of anomalies, we
```

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri   Pg 51 of 117

Page 32

```
 1    are raising them in our preliminary reports and discussing

 2    it with the individual firms.

 3              THE COURT:  And again, I read the fee

 4    applications.  I can get a pretty good sense of that too,

 5    but I, obviously, am not discussing it with the firms, about

 6    their staffing, but that's something that you all are free

 7    to do.

 8              MS. DALUZ:  Yes.  And often, Your Honor, now we

 9    don't draft full-blown preliminary reports.  We are kind of

10    producing just a short form schedule to go through with law

11    firms; as opposed to doing full-blown, you know, legal

12    diatribes, as we did in the -- as we thought was necessary

13    in the early stages of the case.

14              THE COURT:  Okay, very well.  So, the fee

15    applications, interim fee applications by Prime Clerk, as

16    administrative agent; Herrick Feinstein is conflicts counsel

17    for the Committee.  And the Fee Examiner and his counsel

18    aren't opposed.  I've reviewed those, and I think I can see

19    why there were no objections to them, and I will grant them

20    on an interim basis with the reservation of rights language

21    that we've had for the Fee Examiner.  And obviously, it's

22    being done on an interim basis for everybody.

23              The interim applications by Weil Gotshal, Akin

24    Gump and FTI, were objected to by Orient Craft.  I had dealt

25    with a very similar set of objections to the same firm's
```

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri   Pg 52 of 117

Page 33

1   compensation the last time this was up, which was September

2   27, and denied the objection.  And I'm not sure, really -- I

3   went back and reviewed the transcript, Mr. Wander, and in

4   part, you were doing it to reserve your rights, although

5   everyone's rights are fully reserved.  I have no problem

6   with your doing that, but I'm not sure there's anything new

7   in this objection from the issues that I considered last

8   time.

9            MR. WANDER:  Your Honor, David Wander of Tarter

10  Krinsky on behalf of Orient Craft.  I'll be very brief.

11           There is not that much new except another four

12  months have passed without the plan going effective.  And I

13  am heartened by Mr. Harner's comments.

14           On behalf of my client, who is an opt-out

15  creditor, the Debtor's status report paints a different

16  picture than forward progress; because for those who opted

17  out, the bottom line is, how much money is needed for the

18  plan to go effective?  And apparently, there are additional

19  tax claims that have arisen, and the bottom-line number of

20  how much money the estate needs to go effective, has gone up

21  by $5 million.

22           So, the progress that's made to administrative

23  creditors who are going to get some money from the next

24  distribution, does not incur to the benefit of those who

25  opted out.  And if Your Honor may recall, you know, it was

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 53 of 117

Page 34

```
 1    predicted that the plan would go effective in six to 12

 2    months.

 3            But I appreciate Your Honor letting me make these

 4    comments.  And that's all.  I didn't expect that Your Honor

 5    was going to grant my application, but with four more months

 6    going by, and us no closer to an effective date -- and

 7    that's what's been missing from the discussion.  We all know

 8    that the preference recoveries will not come close to

 9    bridging the gap.  And that's what we told was going to get

10    us effective.

11            And the big litigation has been at a standstill

12    for a year and a half.  And I'm concerned what happens when

13    Your Honor moves on.  So, that's why I wanted to file the

14    objection, to keep my comments in the forefront, and we'll

15    see what the next four months brings, Your Honor.

16            MR. FAIL:  Your Honor, just briefly, because I

17    fear this will appear again in three months and then,

18    possibly, after you get to leave this behind and we are

19    stuck with it.

20            It is just simply false to say that we are not

21    closer.  At the last hearing, the applications included time

22    to distribute $10.5 million.  Here we are in the third

23    distribution.  Here we are talking about giving out $17.5

24    million.  We have reduced the administrative claims.  We've

25    given out more.  And he's an opt-out creditor.  So, he'll
```

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri   Pg 54 of 117

Page 35

1    get paid before the prepetition taxes.

2            It's absolutely false to say we're no closer, or

3    to blame the Debtors for updating their estimates on

4    prepetition taxes subject to, that have been subject to

5    reconciliation.  We've delayed the reconciliation to deal

6    with the admins first, and they'll be what they'll be.  But

7    it is absolutely just false and misleading, and we're all

8    tired of hearing it.

9            THE COURT:  Okay.  Well, I believe that the

10   update, basically, as the prior updates have sown, is that

11   pending the effective date, the Debtors, with the assistance

12   of the Committee, have been doing the work that a post-

13   confirmation trust would normally do, to enable

14   distributions, which would generally have been held back --

15   because of disputed claims, because of realizing on assets

16   that hadn't been turned into cash yet, and the like.

17           So, I think that work is all productive work and

18   has actually, I think, led to some significant increases in

19   the estimates.

20           Mr. Wander is right in that the preference

21   recoveries were considerably lower, and are projected to be

22   considerably lower than they had been projected to be at the

23   confirmation hearing.  But those were not the only sources

24   of recovery here.  And I think people knew that at the time

25   of the administrative claims settlement.

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 55 of 117

Page 36

1           And the major litigation, the ESL litigation, is

2     clearly something that has a big ticket on it, and is also

3     tied up in a major portion of the remaining uncertainty

4     here, as far as other related litigations between those

5     parties.  And that will move ahead, and needs to be dealt

6     with very carefully, so that all the parties' rights in

7     those disputes are dealt with properly.

8           I don't see a reason, I guess, therefore, to have

9     any holdback for these three firms, whose underlying work is

10    not -- for this period -- has not been objected to in any --

11    as far as the substance under Section 330 standards are

12    concerned.

13          The work is necessary to get to the point to make

14    the distributions to creditors.  And I guess it's that

15    simple.  And in large measure, it's carved out of the

16    Secured Creditor's collateral, provided for in a fund under

17    the plan, for litigation; which the Committee has agreed not

18    to tap in full.  And therefore, I don't believe there is a

19    basis to either holdback or disallow some portion of the

20    requested fees in these interim applications.

21          MR. FAIL:  Thank you, Your Honor.

22          THE COURT:  So, I'll ask the Debtors to submit the

23    one order, with schedules A and B, for the six applicants.

24    And it will get entered shortly.

25          MR. FAIL:  The next item on the agenda, then, is

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri   Pg 56 of 117

Page 37

| | |
|---|---|
| 1 | the motion to enforce an order authorizing assumption and |
| 2 | release -- assumption and assignment of a lease with MOAC |
| 3 | Mall Holdings, LLC. |
| 4 | THE COURT:  Could I --? |
| 5 | MS. MORABITO:  Excuse me, Your Honor.  Sorry, I |
| 6 | hate to interrupt like this, I'm sorry. |
| 7 | THE COURT:  That's fine. |
| 8 | MS. MORABITO:  This is Erika Morabito at Quinn |
| 9 | Emmanuel, on behalf of the Admin Expense Claims |
| 10 | Representative.  I'm just wondering, there's many of us on |
| 11 | the call that were dialing in, in case Your Honor had |
| 12 | questions with respect to agenda items number 1 and 2.  And |
| 13 | we would ask permission to be able to drop now, if that's |
| 14 | okay with Your Honor? |
| 15 | THE COURT:  Yes.  That's fine.  In fact, I was |
| 16 | about to interrupt Mr. Fail to say that everyone should feel |
| 17 | to drop off if they're not involved in what I think is |
| 18 | actually the last matter on the calendar; which is this |
| 19 | Transform, Mall of Americas matter.  Because I think the |
| 20 | matter that had been on the agenda, which was an order to |
| 21 | show cause related to one of the adversary proceedings, has |
| 22 | come off.  I just want to confirm that, that the K-Mart |
| 23 | versus Grace and Son Construction Company is not going |
| 24 | forward today? |
| 25 | Okay.  So, if anyone was on for that one, they |

1    don't need to stay on either.

2              MS. MORABITO:  Thank you, Your Honor.

3              THE COURT:  Okay, very well.  So, let's go back to

4    the Transform Hold Co.-MOAC Mall motion.

5              MR. MARTIN:  Good afternoon, Your Honor, this is

6    Craig Martin from DLA Piper, representing Transform.  Can

7    you see and hear me all right?

8              THE COURT:  Yes, fine, thanks.

9              MR. MARTIN:  Thank you, Your Honor.

10             MR. OTSUKA:  Good afternoon, Your Honor.  This is

11   Greg Otsuka for MOAC Mall Holdings.  Also with me on the

12   Zoom hearing is David Dykhouse of the Patterson Belknap

13   Firm.  Your Honor, I would just note that I filed my pro hac

14   vice application on January 10.  I have not seen an order

15   yet granting that motion, but I would ask the Court's

16   permission to appear and argue today?

17             THE COURT:  Okay. Did you email it to chambers

18   with a proposed order?

19             MR. OTSUKA:  I did, Your Honor.

20             THE COURT:  Okay.  It's probably already been

21   sent, or if it won't, it will get entered very shortly.  So,

22   you can certainly argue today.

23             Okay.  I have reviewed the pleadings related to

24   this motion.  And the first one is Transform's motion to

25   file portions of its motion under seal.  The parties didn't

18-23538-shl  Doc 10284-2  Filed 02/04/22  Entered 02/04/22 15:56:09  Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 58 of 117

Page 39

1    exactly file my procedures for a ceiling motion; namely, to

2    provide me, by email, with the motion, the unredacted

3    document and the proposed order.  But I've reviewed the

4    unredacted documents and the redactions.  And I'll note that

5    I don't believe there is any opposition to the sealing

6    motion, and that, in fact, MOAC has tried to comply with the

7    relief that was sought, but redacting certain portions of

8    its objection.

9            So, my inclination, unless anyone has anything

10   more to say about this, is to enter an order directing the

11   sealing of the motion papers and the objection, and having

12   the redacted versions be the only versions on the public

13   docket of the case.

14           Those types of orders are always subject to

15   someone's seeking to reopen the matter.  But frankly, this

16   is not particularly a matter of public note.  I think it

17   really does fit very cleanly into what 107(b) generally

18   deals with, which is commercial information; the disclosure

19   of which could put a party at a disadvantage.

20           And so, again, I'm inclined to grant the motion.

21   Does anyone have anything to say about it?

22           MR. MARTIN:  Your Honor, this is Craig Martin.

23   Mr. Otsuka and I did confer prior to the hearing, and we're

24   grateful for Your Honor inuring that; we thought you might,

25   in lack of the opposition.  And we think that we can conduct

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 59 of 117

Page 40

1    the hearing without any need to seal anything that we're

2    going to argue today.  So, I'll simply refer to the

3    subtenant as 'Subtenant.'  And much of what we needed to

4    redact, is not going to be relevant for today's hearing; if

5    it is, we'll address it.  But we did confer, and I think we

6    can cover it without sealing the hearing or any portion of

7    the transcript.

8              THE COURT:  Okay, very well.  So, I'll ask you

9    then, Mr. Martin, to email the sealing order to chambers.

10             MR. MARTIN:  We will do so after the hearing, Your

11   Honor.  Thank you.

12             THE COURT:  Okay.  So, then we have the underlying

13   motion and the opposition.  I guess, the first thing I want

14   to ask is, has there been any development on the motion for

15   a stay under Federal Appellate Rule 41 of the issuance of

16   the mandate?

17             MR. OTSUKA:  Your Honor --

18             MR. MARTIN:  Go ahead, Mr. Otsuka.

19             MR. OTSUKA:  Sorry, Your Honor.  Greg Otsuka. The

20   only development is that, that motion is currently in

21   briefing in the second circuit.  We filed the motion.

22   Transform has filed the response.  We have time to file a

23   reply.  But as of now, that motion is pending.

24             THE COURT:  Okay.  All right.  So, I'm happy to

25   hear brief oral argument on this.  I guess I'd like the

Page 41

1    parties to focus first, though, on the stipulation and order

2    from the District Court, so ordered in March of 2020, by

3    then Chief Judge McMahon, and how it affects the motion now

4    before me.

5              MR. MARTIN:  Yes, Your Honor.  If it pleases the

6    Court, I'd be happy to go first on our view on that.

7              THE COURT:  Okay.

8              MR. MARTIN:  Craig Martin, again, for the record.

9    So, our view on that is -- and I think if you look -- it's

10   important to understand the context in which that order was

11   entered.  Initially, we argued in front of the District

12   Court, the substance of the motion, and MOAC prevailed on

13   that.  And that consent and stipulation order was then

14   entered.

15             After it was entered, we then filed a motion for

16   rehearing, which was granted.  That resulted in MOAC filing

17   an appeal on the rehearing motion, and that's what we argued

18   to the Second Circuit Court of Appeals.

19             The problem with the consent order is that in

20   paragraph 2, it says that it would be, remain in place until

21   the Second Circuit Rules, which has occurred.  As MOAC

22   points out in their briefing, I believe it's paragraph 6,

23   says that that order would not terminate until the mandate

24   issues.

25             THE COURT:  Paragraph 5.

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri   Pg 61 of 117

Page 42

1           MR. MARTIN:  Yeah, paragraph 5, I apologize.  I

2    think the key is, is that in the actual Second Circuit

3    judgment, in their very last footnote, they talk about how,

4    because of the way in which the District Court judgments and

5    orders were entered, there never was a judgment entered.

6    And that as a result, that consent and stay order ceased to

7    have effectiveness.

8           Because, the way I read their footnote is, number

9    one, it related to the original judgment of the District

10   Court, which was vacated by the order on the rehearing.  And

11   number two, because under the various rules of procedure,

12   had a judgment been entered by the District Court on the

13   rehearing order, that judgment wouldn't become final in 150

14   days; which time has passed.  And the consent order would

15   have lost its efficacy.

16          So, our view is that for those two reasons,

17   indicated by the Second Circuit in its footnote, in its

18   summary order, disposing of the matter, the consent order

19   and stipulation does not have any effect any longer.

20          And if Your Honor needs me to direct it to you,

21   would be happy to --

22          THE COURT:  Well, I'm looking for it here.  Can

23   you just read it?  Rather than my leafing through here, can

24   you read that note?

25          MR. MARTIN:  Yes.  I'm reading from Exhibit F of

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri   Pg 62 of 117

Page 43

1    our motion.  It's the final page, footnote 3.  It's quite a

2    long one.  But in essence, it says that the District Court's

3    May 11, 2020 order granting Transforms motion for rehearing,

4    and vacating the Court's original decision in favor of MOAC,

5    in its June 8, 2020 order denying MOAC's motion for

6    rehearing, and directing the District Clerk of Court, in

7    effect, to close the case; together constitute a final

8    decision that, quote, "Ended the litigation of the merits

9    and left nothing four the Court to do but execute the

10   judgment." Citing Hall v. Hall, in 28 USC 12 91.

11   Parenthetical omitted.

12          Continuing.  We appreciate that on March 11, 2020,

13   the District Court entered a stay of what it described as

14   its initial judgment in favor of MOAC.  The District Court

15   may well have thought that the stay remained in place, after

16   it later granted Transform's motion for a rehearing.  We

17   note, however, that no judgment of the District Court was

18   ever actually set forth in a separate document at any point.

19   Of course, in the absence of a separate document, judgment

20   is deemed entered 150 days after the order from which the

21   appeal lies and is entered, citing Federal Rule of Civil

22   Procedure 58(c)(2)(B).  But we will repeat our strong

23   suggestion that where, quote, "The district Court makes a

24   decision intended to be final, the better procedure is to

25   set forth the decision in a separate document called a

18-23538-shl  Doc 10284-2  Filed 02/04/22  Entered 02/04/22 15:56:09  Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 63 of 117

                                                                    Page 44

 1    judgment."  Citations omitted.

 2              That's the complete footnote, Your Honor.  So, as

 3    we read that, as I say, we believe the Second Circuit is

 4    pointing out that the consent stay and stipulation expired

 5    by operation of the Federal Rule of Civil Procedure

 6    governing final judgments issued by District Court, up to

 7    the Second Circuit.

 8              THE COURT:  For one of jurisdiction, in essence, I

 9    guess, right?

10              MR. MARTIN:  I suppose so.  You know, you always

11    to hate to second guess anything any party's done.  But

12    certainly is MOAC is concerned about a further stay, they

13    could have sought that from the Second Circuit.

14              And that's why I wanted to put that consent

15    stipulation in context.  It was originally entered on a

16    motion in which Transform had lost the appeal.  And so, the

17    design behind it, in my mind -- Mr. Otsuka may disagree --

18    but it was to protect us form not being able to continue to

19    pursue subleases.  Of course, we've now obtained a sublease.

20    And then, when the rehearing happened, neither party did

21    anything with respect to that.  And I construe the Second

22    Circuit is saying, because of neither party doing anything,

23    and because the District Court didn't enter any judgment, to

24    the extent that stay remained valid, it expired under

25    Federal Rule of Civil Procedure 58, 150 days after the

 1    District Court's judgment.  And that time period passed long

 2    ago.  The appeal was pending for quite some time in the

 3    Second Circuit.

 4              THE COURT:  Okay.  Mr. Otsuka, you want to address

 5    that point, and then we can go onto the other ones?

 6              MR. OTSUKA:  I would Your Honor.  Thank you.  A

 7    few points:  The first is, except for the first sentence or

 8    two of Mr. Martin's argument that he just made, none of that

 9    argument appears in their briefing.  We raised this issue in

10    our response.

11              In their reply, it's one paragraph on page 7 of

12    the reply.  And they hang their hat on the phrase in

13    paragraph 2, of this order that says, "Until any ruling of

14    the Second Circuit of Appeals."

15              So, the first point is, the rest of that argument

16    has not been made and should not be allowed right now.

17              In any event, the order of the District Court

18    says, "Judgment of this Court shall be stayed."  It doesn't

19    refer to any -- the judgment that was just entered, at the

20    time of this order.  As Mr. Martin pointed out, after

21    Transform lost on the merits in the District Court, they

22    asked our consent to enter into this stay.  And it was only

23    after we agreed and then -- that the Court entered this

24    stay.

25    And then, the very next day, Transform, for the first time,

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 65 of 117

Page 46

```
 1    raised this jurisdictional argument; which as we point out

 2    in our papers, they assured this Court that they would not

 3    make it on any later appeal.  So, in our view, this order

 4    clearly stays the judgement of the District Court.  It

 5    doesn't refer to only the first judgement, and moreover, it

 6    is also clear that the say is in place until the sending

 7    down of the mandate of the Second Circuit, which hasn't

 8    happened.

 9              THE COURT:  I -- I agree with you on those points.

10    I think that if you just stopped in paragraph three, I

11    wouldn't, but it seems to me that paragraph five is -- is in

12    keeping with what you just said.  But, I guess that leaves

13    the issue addressed in the footnote to the Second Circuit's

14    decision, which is I think a pretty strong indication that

15    the Circuit doesn't believe this stay is in effect at this

16    point.

17              MR. OTSUKA:  Well, I would also say, Your Honor,

18    that it was a footnote after -- I think it's a footnote to

19    the word affirmed.  So it's clearly dicta.  They don't say -

20    -

21              THE COURT:  It's from the Second Circuit.

22              MR. OTSUKA:  I -- I understand.

23              THE COURT:  I'm not that pretty -- I'm not that

24    eager to just ignore it.

25              MR. OTSUKA:  And I'm not suggesting that you
```

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri   Pg 66 of 117

Page 47

1    ignore it, Your Honor.  But I also point out that they don't

2    come out and say this order is not effective.  They -- they

3    -- they -- they make comments about the order --

4              THE COURT:  No, but the do -- but they do say the

5    judgement is -- is -- that in essence it's -- it's done.

6    Now they -- I think they can reconsider that, or rethink

7    that as part of the briefing on the stay of the mandate, the

8    requested stay of the mandate, but -- but at least as far as

9    what I have before me right now, it doesn't seem to me like

10   they would be holding the parties to this stipulated order.

11             MR. OTSUKA:  Well, the other point I would make,

12   Your Honor, is whatever the judgement -- whatever the

13   effectiveness the judgement may have, the terms of this

14   order say that the stipulation made itself, shall remain in

15   place until the standing down of the mandate.  What we're --

16   what we are relying on is in paragraph three, that Transform

17   shall not do a number of things, and as long as the mandate

18   is not issued, this stipulation remains in place and

19   Transform shall not do all of those things that are

20   identified in paragraph three.

21             THE COURT:  Well, again though, but if -- if -- if

22   the -- the court that so ordered it can't enforce it, I'm

23   not sure that means anything.  But let me ask a related

24   question, and this is to both of you.  The -- the sublease

25   has a -- a provision that talks about when the lease term

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri   Pg 67 of 117

Page 48

1    commences, Section 1.2, which refers to the litigation

2    resolution date, and then that definition of litigation

3    resolution references another definition, the "critical

4    determination".  And regardless of whether this -- this

5    stipulation is a binding order; this is really I guess a

6    question for Mr. Martin first.  Why isn't the lease -- the

7    sublease itself one that contemplates the term commencing

8    only when you have a final order, as people define final

9    orders, i.e. it -- it doesn't admit of any rehearing,

10   reconsideration, transfer or appeal, and any further

11   possibility of any stay, remand, removal, rehearing,

12   reconsideration, transfer, or appeal resulting in the

13   critical determination; and I guess, in light of that, given

14   that there is a pending motion under Rule 41D to stay the

15   mandate and the possibility of a cert petition after that.

16   The -- the relief you're seeking here, ultimately, it would

17   occur to me doesn't -- doesn't -- doesn't -- the lease

18   doesn't start -- the sublease doesn't start until that

19   process is done.  So, I guess ultimately the question I have

20   is why are we here at this point?

21           MR. MARTIN:  Yes.  Craig Martin, again, for the

22   record.  I don't disagree with the way that, Your Honor, is

23   reading it that the litigation resolution is the date by

24   which various events would begin to occur that would lead to

25   occupancy.  The reason we're here today, however, is because

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 68 of 117

Page 49

 1    of the assignment order that, Your Honor, entered after our

 2    trial, ECF Number 5074 had certain conditions in it that we

 3    needed to satisfy within certain time periods.

 4          The two that we're worried about, specifically,

 5    and that we submit we have satisfied, is that the -- we've

 6    given the MOAC in it's capacity as a Landlord it's rights

 7    under Section 6.3 of the Master Lease.  And the second item

 8    that we're concerned about is that, Your Honor's order,

 9    signed an order required that we at least lease some portion

10    of the property subject to the Master Lease.

11          THE COURT:  Well, except it really wasn't -- I --

12    I read that provision a little differently than -- than I

13    think you do, and maybe you're being extra careful about it.

14    But -- and I -- I go back to the transcript.  The -- the two

15    year limitation came up because this was a very long term

16    lease and there was 70 more years left to run on it.  And --

17          MR. MARTIN:  Correct.

18          THE COURT:  -- under the case law, I was concerned

19    that if it just remained -- if you said to, or left MOAC to

20    believe that you were perfectly content to leave the space

21    empty for 70 years, they would be forced to pay you

22    something and I didn't believe that was right under the case

23    law.  And during oral argument, one of your colleagues,

24    counsel for Transform, said well, we think we will get it

25    leased within two years.  That's a reasonable time.  There

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 69 of 117

Page 50

```
 1    was testimony to that effect and so long as the landlord

 2    didn't block us from doing that.  And obviously that

 3    testimony and the two years didn't take into account two

 4    years of appeals.

 5              MR. MARTIN:  Or a -- or a pandemic -- global

 6    pandemic.

 7              THE COURT:  Well, that's a separate issue. I -- I

 8    really, that -- I mean, it was on the condition that the

 9    landlord not interfere.  And, you know, it's my order.  It's

10    my -- I understand my logic behind it and the logic was to

11    give you all two years to lease it, starting when you had

12    the opportunity to do so.  Not, you know, two years would

13    run while you were prevented to do it.  It seems to me that

14    that type of relief, if the circuit does not grant the --

15    issues the mandate, does not grant the stay, makes sense to

16    fix that.  I mean, it's just contrary to the premise of the

17    order that, again, was that when your hand is free, you

18    should have two years to litigate.  It wasn't a question of,

19    you know, the landlord, you know, like telling perspective

20    tenants not to talk to you.  I mean, that would have been

21    interference.  But the concept was you had two years to do

22    it.  Not that you would have two weeks to do it after two

23    years of appeal -- a year and -- almost two years of

24    appeals.

25              MR. MARTIN:  Yes.  Craig Martin again, Your Honor.
```

1    And just to comment on that, and I -- and I appreciate what

2    you're saying because it sounds like what you're saying that

3    we might have two years from the completion of appeals,

4    which, obviously --

5              THE COURT:  Right.

6              MR. MARTIN:  -- would be much more time --

7              THE COURT:  That's right.

8              MR. MARTIN:  Our concern obviously was calculating

9    it from the entry of the order --

10             THE COURT:  Right.

11             MR. MARTIN:  -- put us -- actually put us into

12   September of last year.  We -- you may have seen in the

13   documents we submitted, we did as --

14             THE COURT:  You got an extension from the Second

15   Circuit.

16             MR. MARTIN:  Yeah, we did ask for 60 days after

17   their ruling, and they gave that to us.  We calculate that

18   to be February 15th, so obviously this is a very valuable

19   lease.  We don't want to take any chance that we somehow

20   lose this -- this piece of property that we acquired due to

21   the passage of time.  So --

22             THE COURT:  Well --

23             MR. MARTIN:  -- obviously our proposed form of

24   order has a paragraph 3C that says that we've satisfied the

25   contingency by entering into the sublease so that we don't

18-23538-shl  Doc 10284-2  Filed 02/04/22  Entered 02/04/22 15:56:09  Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 71 of 117

Page 52

```
1      have to worry about the two year time period.

2              THE COURT:  Right, but that's -- that's a good --

3      see that's why I think our interpretation's a little

4      different.  It's not really satisfy the contingency; it's

5      just saying that this was -- that deadline was not -- I

6      didn't contemplate that deadline under these facts.  That's

7      it --

8              MR. MARTIN:  Okay.

9              THE COURT:  But -- then I -- I guess I want to go

10     to a related point.  The Circuit already gave Transform

11     extra time, visa ve the lease.  It has before it a motion

12     for a stay of the mandate.  Any court, including the

13     Circuit, can condition stay on various things.  They

14     condition it on posting a bond, if there's a risk, for

15     example, you lose the sublease, just because there's a -- a

16     circ petition pending.  And so the Circuit could say well,

17     we'll grant the stay if you post the bond.  It could also

18     say we'll grant the stay as long as the two year condition

19     is extended.  And you could certainly related to them this

20     section of the transcript where I say that's, you know, how

21     I viewed my order and it comes right out of the oral

22     argument and the discussion that you should have a full two

23     years to market and sell the lease, or to, you know, as a

24     sublease.

25              Given that that's in front of the Circuit already,
```

18-23538-shl  Doc 10284-2  Filed 02/04/22  Entered 02/04/22 15:56:09  of 9  Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 72 of 117

Page 53

```
 1   with those possibilities, I'm -- I am reluctant to just

 2   charge ahead before they rule on the motion for a stay of

 3   the issuance of the mandate.

 4           MR. MARTIN:  I understand that point, Your Honor,

 5   Craig Martin, again.  So it sounds like that potentially two

 6   things that might, Your Honor's read the papers and I'm not

 7   going to make a pitch for why we think the current order is

 8   final.  I understand where, Your Honor's coming from, it

 9   seems like there are two options that might help solve the

10   problem.  The first would be to invoke the rules in Your

11   Honor's court and set this for a final hearing.  The reply

12   brief is due on the 25th and is on the -- is on the 25th,

13   so, you know, we would expect a ruling from the Second

14   Circuit on the stay of the mandate probably by the end of

15   the month, early February.  But since we're concerned about

16   that timeline, it may make sense to invoke a Bankruptcy Rule

17   8005.  There's also a Federal Rule of thought procedure

18   called Indicative Ruling --

19           THE COURT:  Well that's it -- that's actually 8008

20   has the Indicative Ruling.

21           MR. MARTIN:  8008?  I'm sorry, I misspoke, yeah.

22   Called Indicative Ruling, which allows us to do what, Your

23   Honor, just said, which is to, you know, write a letter to

24   the Clerk, and say that we had this hearing, provide the

25   transcript, and say that you've indicated your thoughts on
```

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 73 of 117

Page 54

```
 1    this record.  I guess the one portion of that rule that's

 2    not clear from this record is whether you would actually

 3    grant our proposed order or whether you would clarify the

 4    two year time frame to be two years from completion of, you

 5    know, exhaustion of appeals, which would either be when the

 6    mandate doesn't issue, I suppose, or if the Second Circuit

 7    stays the mandate and the Supreme Court grants Cert -- it

 8    could be, you know, we all know how long that takes, it

 9    could be another couple of years.  We just don't want to

10    lose our lease while that -- that time is pending; and I'm -

11    - as I'm sure, Your Honor, appreciates, there's some

12    confusion over when that deadline runs.  We -- we believe

13    we've satisfied the requirements with the 6.3A offer as,

14    Your Honor has seen in the exchange of letters from November

15    and December, and that we've satisfied the contingency.  But

16    --

17            THE COURT:  Well --

18            MR. MARTIN:  -- if, Your Honor, feels the mandate

19    issue prohibits you from -- from addressing that --

20            THE COURT:  Well, there are two aspects of the

21    condition to the -- to the start of the lease.  There's the

22    litigation contingency, and then there's the compliance with

23    the right of first offer, and compliance with the lease

24    itself.  And you -- your motion duly seeks determination of

25    both of those points.  The objection was premised almost
```

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 of 9 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri   Pg 74 of 117

Page 55

1    entirely on arguments why the first point, i.e. the

2    litigation contingency, is at best is premature, and at

3    worst something that I don't have the power to rule on.

4    There is a little bit in the objection about the second

5    point, which really said very little -- really it didn't say

6    anything more than the language in the denial letter, which

7    basically questioned whether the proposed subtenant fits

8    within 6.3 and is the type of tenant that can come in. I

9    don't think I'm in a position to give any indicative ruling

10   on that point yet, because I don't really have any evidence

11   other than is submitted in a motion as to the nature of the

12   subtenant's business.  It may be fairly easy to decide that

13   issue, but I'm not sure I'm -- I can't give an indicative

14   ruling, I don't think, on that point.

15        I know you think you've made that case pretty

16   clearly, based on other leases that MOAC has granted, et

17   cetera, the nature of this subtenant's -- proposed

18   subtenant's business, et cetera, but -- but it's a different

19   issue than interpreting my own order, which is really the

20   first point.

21        MR. MARTIN:  Perhaps the owner, Craig Martin

22   again, may by -- may be some combination of what I said,

23   which is that we make the Second Circuit aware of this and

24   we also adjourn this motion, pending the decision on the

25   mandate, and if the mandate is not stayed, we could then

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri   Pg 75 of 117

Page 56

1    seek a further hearing on these other issues and with the

2    clarity on the timing, we're then not, you know, pressed for

3    some arbitrary deadline where we need that decision or we'd

4    (indiscernible) the lease (indiscernible).

5            THE COURT:  Right.  Well, I don't want to short

6    circuit, Mr. Otsuka may want to -- may have some remarks on

7    this.  I don't to short circuit the arguments that MOAC has

8    made, but I did -- I did want to give you both my

9    preliminary thoughts on the divestiture issue.

10           First, I don't think that the mandate is -- the

11   issuance of the mandate is to be ignored.  I think it is a

12   critical step in the appellate process, and until it's

13   issued, with -- with very limited exceptions, the -- the

14   lower court, I don't think has the ability to take an action

15   that would interfere with the appeal process, and I think

16   that's -- that's laid out pretty clearly in the case law on

17   the jurisdictional law.  It's discussed in United States v

18   Rivera, 844 F.2nd, 916, 921 (2nd Cir. 1988), and I think

19   even more tellingly in, I wouldn't even try to pronounce it,

20   Y L U G H I O U G H E N Y, an Ohio Coal Company v Milliken,

21   200 F.3rd, 942, 951-52 (6th Cir. 1999) or a hearing on merit

22   denied 2000 US opt Lexus 3382, 6th Circuit, March 2, 2000.

23   Cert denied 531 US 818, 2000.

24           The Abner Coleman case that the reply mostly

25   relies on for the statement that the lower court can act in

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 76 of 117

Page 57

1    certain circumstances where the mandate hasn't been issued

2    yet, was one where there was no request for a stay of it,

3    and the district court was up -- up against the speedy trial

4    issue.  I think Deep v Boys, which -- which the reply also

5    relies on, pretty much sort of blindly cited the Abner

6    Coleman case with a broader proposition, and the -- the

7    Sixth Circuit case says, yes, even though ministerial, it

8    does have a meaning and I think, particularly where there is

9    a motion for a stay of the mandate, that's important and

10    that take is laid out in the advisory committee notes to

11    Rule 41D.  But I'm not sure that gets MOAC to where it wants

12    to go here, because I'm not sure that the divestiture

13    doctrine really applies in this situation, necessarily.

14    There's a good discussion of it in Ray Winimo Realty Corp,

15    270 BR 99, SDNY 2001, also citing that and later cases in

16    another district court opinion Ratcliff v Rancheros Legacy

17    Meat Company, 2020 US District Lexus 127, 276 at 9 through

18    10, District Court Minnesota, July 2021; as well as by Judge

19    Chapman in Ray Sabine Oil and Gas Corp 548 BRF 674, 679,

20    Bankruptcy SDNY 2016.

21            So the -- the point there is that the mere fact of

22    a pending appeal doesn't divest the court of jurisdiction to

23    implement and enforce the order.  That flips the burden of

24    getting a stay, pending appeal on its head.  You wouldn't

25    have to move for a stay pending appeal, if the very fact of

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri   Pg 77 of 117

Page 58

```
 1    and appeal divested the court of implementing the order it's

 2    being appealed from.  Instead, the rule makers said no, you

 3    have to rule for a stay, pending appeal and win before that

 4    happens.  What -- what you can't do, under the divestiture

 5    doctrine is expand on, or alter the order that's on appeal,

 6    or interfere with the appeal.  And I -- I think that's an

 7    important point.  Now, my order authorizing the assumption

 8    and assignment of the lease from September 5, 2019, which

 9    has the two year limitation in it, isn't really, I don't

10    think the subject of the appeal.

11              I think the subject of the appeal is the -- the

12    district court's determination that 363M deprived it of the

13    ability to reverse my order.  On the other hand, this matter

14    is before the district court -- I mean, I'm sorry, it is

15    before the Court of Appeals in the Motion for Stay of the

16    Mandate.  They have the ability to condition that request on

17    various things and I think it would be useful for the

18    District Court, for the Circuit Court, excuse me, to -- to

19    know my view of that two year limitation.  And I think I

20    have the power to, through you, to let them know of that

21    view under Bankruptcy Rule 8008, which says that if a party

22    files a timely motion in the Bankruptcy Court for relief

23    that the Court lacks authority to grant, because of an

24    appeal, that has been docketed and is pending.  The

25    Bankruptcy Court may defer considering the motion, deny the
```

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri   Pg 78 of 117

Page 59

1   motion, or state that the Court would grant the motion if

2   the court where the appeal is pending remands for that

3   purpose, or state that the motion raises a substantial

4   issue.  And then B says the movant must properly notify the

5   clerk of the court when the appeal is pending, if the

6   Bankruptcy Court state that it would grant the motion or

7   that the motion raises a substantial issue.

8           And I think I would grant as modified, the motions

9   request with respect to the two year period, but really, by

10  saying that I don't believe that it applies, under these

11  facts, not because of anything wrong that MOAC did, but

12  because the premise of the two year limitation was that two

13  years was a reasonable time, if Transform was free to do so,

14  to find a tenant.  And if it couldn't do so, by that point,

15  adequate assurance would require that it not hold onto the

16  lease anymore.

17          MR. OTSUKA:  Your Honor, I didn't want to

18  interrupt.  May I be heard on --

19          THE COURT:  Sure.  Yeah, go ahead, no I wanted to

20  lay that all out on the table.  That's not a ruling. I  want

21  to lay out my thinking so that you all can respond to it.

22          MR. OTSUKA:  Your Honor, on the two year point, I

23  certainly understand that the Court is maybe giving more

24  color describing the Court's reasoning for why the order is

25  entered and it may be interpreting the Court's own order.  A

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 79 of 117

Page 60

```
 1    couple of things that I would point out, however, in terms
 2    of if the Court is inclined to say that the two years
 3    doesn't begin to run until any appeal is final, whatever
 4    that may mean.  Obviously, Transform has been marketing this
 5    sublease during this time.  That's why they have a signed
 6    sublease, right?  So it doesn't make sense to me that they
 7    should be given two more years when they have spent this
 8    time, at least, some of it, probably most of it, marketing
 9    and -- and looking for a subtenant, which they believe that
10    they have found a suitable subtenant.
11              THE COURT:  Right.
12              MR. OTSUKA:  So --
13              THE COURT:  That -- can I interrupt you?  That's a
14    fair point, but at the same time it has to be enough time so
15    that the deal can be closed -- or a deal can be closed after
16    what would be a reasonable condition, which is that the
17    prospective subtenant is reasonably assured that after it
18    closes, it won't be divested because of some further ruling
19    on appeal.  So, I understand.
20              MR. OTSUKA:  It --
21              THE COURT:  Another two years is -- my point is
22    that the debtor, Transform shouldn't be up against a, you
23    know, an imminent deadline here, because of not its own
24    inability to market the premises but to close, because of
25    the pending appeals.
```

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 80 of 117

Page 61

```
 1              MR. OTSUKA:  And I understand that, Your Honor,

 2     and I would also point out, as Mr. Martin said and as the

 3     Court recognized, the Second Circuit did extend that two

 4     year period, and that was with the consent of MOAC.

 5     Transform has not sought -- has not asked the Second Circuit

 6     to extend that deadline.  Maybe with the Court's comments

 7     today, it may do so, but my only point is that that request

 8     to further extend that deadline has not brought to MOAC, I'm

 9     not sitting here today with an answer to that.

10              THE COURT:  Right.

11              MR. OTSUKA:  But my point is, we did consent for

12     that very reason, that Your Honor is pointing out.  We

13     consented to the -- to the Second Circuit extending the

14     deadline out another 60 days.  So I guess that's all I would

15     say about the two year time period.

16              THE COURT:  Okay.  All right.

17              MR. OTSUKA:  In -- in terms of the jurisdictional

18     question, I'm not sure how much, Your Honor, wants to --

19     wants to hear on that.  I -- I agree and it was -- this was

20     in my notes that what the Court said that a lower court may

21     not expand or alter its prior judgement that's on appeal,

22     and I think quite clearly, that's what Transform seeks here.

23     They're asking the Court, putting aside this -- the question

24     of did they satisfy the -- the two year provision?

25              All the other relief that they're asking for,
```

1    they're asking the Court to give an opinion on all these

2    other conditions that -- that Transform says it has

3    satisfied.  We quite -- quite clearly say they haven't.

4    That -- I'm happy to get into the substance of that, but

5    that is very obviously expanding on the -- on the assignment

6    order.  The assignment order --

7              THE COURT:  Yes, but --

8              MR. OTSUKA:  -- authorized --

9              THE COURT:  -- but it doesn't seem to be

10   interfering with it.  I mean, if -- if -- if -- see, I

11   actually think that is the type of thing that I could --

12   that aspect, I think I probably could rule on.  I'm not sure

13   it's really T'd up for me to rule on today because I think I

14   need to hear some evidence on compliance with the right of

15   first offer and the, you know, and the lease in terms of an

16   acceptable subtenant.  But that's -- that's a question that

17   is really, to me, very far removed from whether Section 363M

18   isolates consideration of my order on appeal.  I think

19   that's a very different issue.  I mean, for example, if --

20   if I had authorized the assumption and assignment of the

21   lease or -- or the -- yeah, the assumption and assignment of

22   the lease and it required ongoing adequate assurance

23   payments, right?  Which it did in fact, I mean, it's only

24   $10.00 a year, plus taxes, but if in year two, Transform

25   didn't pay the taxes and you wanted to enforce that cure

Page 63

1    payment here as opposed to in Minnesota in state court, that

2    wouldn't interfere with the appeal.  I mean, it's  separate

3    issue.  Say -- similarly with the ability to sublease.  I

4    don't see how that interferes with the appeal.  It's a --

5    it's a separate issue.

6            MR. OTSUKA:  Your Honor, a few things.  So first

7    of all, Transform is asking the Court to issue and order

8    that says Transform has prevailed in the litigation

9    regarding assignment of the Master Lease, therefore the

10   Master Lease assignment is fully valid and enforceable.

11           THE COURT:  That's -- I -- that's the -- I

12   understand.  That point, I understand and that's why I was

13   focusing on the two different issues.  I think that --

14           MR. OTSUKA:  So may --

15           THE COURT:  And the reason they want that decided

16   is they're concerned about the two years.  And but --

17           MR. OTSUKA:  But Your Honor --

18           THE COURT:  -- but they're also asking for a

19   determination that the right of first offer was complied

20   with and -- and -- that -- that and that the lease -- the

21   prospective subtenant is an acceptable tenant under the

22   lease, and to me, that -- that's different than saying all

23   of the litigation is done.  Clearly, all of the litigation

24   is done, that's something before the Circuit, whether it's

25   done or not.  That's up before the Circuit.  That's the

1    process of getting a stay or not of the -- of the -- the --

2    the mandate and -- but that's all occasioned by what I think

3    is a misplaced concern by Transform, that they're up against

4    a deadline that's about to expire and may well expire before

5    Cirt is dealt with, and -- and I think that's a separate

6    issue.  But as far as the other --

7              MR. OTSUKA:  If you --

8              THE COURT:  -- relief they're seeking, while I'm

9    not prepared to do it today, because this is not an

10   evidentiary hearing, I don't see how that interferes with

11   the appellate process.

12             MR. OTSUKA:  I -- I'm sorry, Your Honor, just to

13   clarify, when you say the other relief they're seeking,

14   which -- which part of that were you referring?

15             THE COURT:  Well, they -- they -- they attach to

16   their motion MOAC's letter which says we don't accept the

17   subtenant, and they want a determination that you've done

18   that improperly, because this is an acceptable subtenant,

19   and that the lease has been complied with.  To me that's --

20   that -- that has very little, if anything to do with the

21   appeal.  Whereas, if they ask for the determination they're

22   all -- that the litigation contingency is -- is over, well,

23   I think that -- that does have something with the appeal.

24             MR. OTSUKA:  I understand. ]

25             THE COURT:  I mean, how could I tell the Second

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri   Pg 84 of 117

Page 65

1    Circuit that the litigation's over when they have a motion

2    pending before them for a stay of the mandate?

3                MR. OTSUKA:  I -- I understand the distinction

4    you're just  -- Your Honor's making, and I -- and I

5    certainly agree that there's a difference -- I'm not

6    conceded the same conclusion that, Your Honor, just said,

7    but I do agree that -- that is -- it's not proper for this

8    Court to make the determination that the litigation

9    contingency, as a whole, has been satisfied.

10               THE COURT:  Right.  Okay.

11               MR. OTSUKA:  So -- I -- I don't know where that

12   leaves us right now.

13               THE COURT:  Well, I think -- again, where I think

14   it leaves us is I could schedule an evidentiary hearing on

15   the lease compliance issues, if you will.  You know, has the

16   right of first offer been complied with and is the proposed

17   subtenant a tenant that could be rejected by the landlord.

18   I don't want to have -- I mean, we're not having that

19   hearing today, it wasn't scheduled as an evidentiary

20   hearing.  I don't know when I would have time to do it.  I

21   don't know if anyone wants to take discovery on it.  But I

22   don't -- I don't think anything more needs to be said on

23   that point today.  What I don't believe requires an

24   evidentiary hearing, but which I also believe I should defer

25   on under Rule 8008, is a ruling on the other portion of the

1    motion which, as you said, seeks a determination that the --

2    the contingency has occurred.  Which really means the

3    litigation is done.  But I think I should state and

4    authorize and direct the movant, Transform, to so inform the

5    Circuit that I believe the two year limitation under my

6    order doesn't apply in these circumstances where the S&E

7    tenant, Transform, has obtained, under what apparently is a

8    -- a fully documented sublease, a tenant, and the only thing

9    impeding that tenant from taking, under the sublease, within

10   the two years is the fact of the pending appeal and -- and

11   litigation occasioned by the landlord's denial of

12   acceptability of the tenant and the right of first offer

13   being complied with.  And I think, frankly, because you have

14   a pending motion for a stay of the mandate, if the Circuit

15   wants to grant that stay, it could put conditions on it like

16   extending the two year period, posting a bond, whatever.  If

17   it doesn't extend -- if it doesn't stay the mandate, I

18   believe that at that point, I should determine, and I'm

19   telling you know how I will determine it, the two year

20   issue, and -- and determine that that two years doesn't run

21   until the appellate process is finished, with suitable time

22   to close the deal.  And we'll leave it at that.

23            I mean, that's the really pressing dispute.  That

24   really is a case for controversy.  It's very live, I mean,

25   they lose this tenant if -- if that two years runs under the

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri   Pg 86 of 117

Page 67

 1    interpretation that I'm not accepting, but I think there

 2    should be an order that reflects that.  I'm not accepting

 3    it.  And similarly, the issue of an acceptable tenant is --

 4    is live too, and I think I have jurisdiction over it,

 5    because it's part of the adequate assurance, you know, I

 6    basically said, this has to get done.  This part of the

 7    assignment of the lease.

 8              So I don't want to interfere with what you've T'd

 9    up in the Circuit court, but I think they should know how I

10    would rule if they denied the stay and leave it at that.

11              So I would -- I would not dismiss the motion, I

12    would defer consideration of it.  I think the parties should

13    discuss whether they need discovery, agree on a discovery

14    schedule, and get a hearing date for an evidentiary hearing,

15    which I think would be no more than half a day, and they can

16    get that from Ms. Lee in the clerks' office.  And again, I -

17    - I'm telling you both now that I would make it clear that

18    the two year limitation doesn't apply in this situation

19    where those two issues, namely the acceptable tenant and

20    then right of first offer, have been raised by the landlord,

21    basically right at the end of the two year period, and the

22    appeals process has prevented the closing of what would

23    otherwise be a, you know, a real tenant, sublease.  Because,

24    again, that wasn't -- that wasn't what I was addressing in

25    that condition of adequate assurance of future performance.

1   What I was addressing was a situation where Transform

2   literally didn't come up with someone, who was real, within

3   two years and just kept the landlord hanging out there,

4   potentially for up to 70 years, because that was the

5   remainder of the lease, which wasn't -- which I didn't

6   believe fair.

7            MR. OTSUKA:  Thank you, Your Honor, if I --

8            THE COURT:  So I don't think you needed an order

9   on this at this point. I think obviously you should get the

10  transcript, promptly, and let the Circuit know the result

11  and then you may want to give me a scheduling order or if

12  you're comfortable that you can take whatever discovery you

13  need before the hearing, just schedule the hearing and we'll

14  go ahead with the evidentiary hearing.  If it's at any time

15  in the next couple of months, it will probably held

16  remotely.  I have a well developed form of remote hearing

17  order and procedure that you can get from Mr. Andino in the

18  Clerks' office that, you know, just help you plan for that.

19           MR. MARTIN:  Your Honor, this is Craig Martin.

20  Thank you for that. I think what I've heard you say is on

21  the 8008 indication to the Second Circuit, that we are

22  authorized and directed to do so, and that we can provide

23  the transcript.  You won't be doing any type of writing on

24  that --

25           THE COURT:  Right.

1          MR. MARTIN:  -- so what we'll -- we'll figure out

2    how to do that, and then we will be happy to confer with Mr.

3    Otsuka so that our clients can decide how much discovery

4    they want and then work together to come up with an

5    appropriate hearing date on these other issues that you've

6    identified today.

7          THE COURT:  And as -- and as you know from the

8    last evidentiary hearing before me, my practice is to take

9    direct testimony by declaration or affidavit with the

10   witness to be life for cross and redirect.  And for the

11   parties to meet and confer and agree on the admissibility of

12   as many exhibits as they, in good faith, can agree on being

13   admissible, and submit a joint exhibit book, along with the

14   witness declarations of direct testimony to chambers a few

15   days before the evidentiary hearing, and a separate binder

16   of any exhibits whose admissibility they want to fight over.

17          MR. OTSUKA:  Your Honor, Greg Otsuka, one more

18   time, or at least one more time for now. I heard you say

19   earlier, and I just want to make sure that the -- the

20   transcript is reasonably clear, since there won't be a

21   written order, that -- I heard you say that the two year --

22   in the Court's opinion, the two year deadline shouldn't

23   expire by virtue of the issues that you identified, but that

24   it also is not true that the two years should -- should

25   start over --

18-23538-shl   Doc 10284-2   Filed 02/04/22   Entered 02/04/22 15:56:09   of 9 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri   Pg 89 of 117

Page 70

```
 1                  THE COURT:  Yeah --
 2                  MR. OTSUKA:  -- that there should be some
 3      reasonable time --
 4                  THE COURT:  There should be a reasonable time to
 5      enable the identified transaction to close.
 6                  MR. OTSUKA:  Understood.
 7                  THE COURT:  Okay.  I think you're on mute, Mr.
 8      Martin, although I don't see the symbol of that, but you're
 9      on mute.  Maybe it's because you took off your headset?  I
10      don't know.
11                  MR. MARTIN:  A can you -- are you able to hear me?
12                  THE COURT:  Yeah, now I -- now I can hear you.
13      Yeah.
14                  MR. MARTIN:  Just to be -- just to be clear on
15      that point, the -- the sublease has a provision that,
16      obviously, we have had a hard time getting a tenant, because
17      of the litigation, and there is a timeline on the litigation
18      resolution of 270 days.  It -- so however long this takes,
19      it is foreseeable that our subtenant, if we exceed that time
20      period, would have the ability to exit, and we would
21      effectively be starting over on a subtenant, so -- I
22      understand if you don't want to make a ruling today, two
23      years may be appropriate, depending on what happens.  It may
24      not --
25                  THE COURT:  If you --
```

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri   Pg 90 of 117

Page 71

```
 1              MR. MARTIN:  I don't want to impose that today --

 2              THE COURT:  I think all I can say at this point is

 3    it should be a reasonable time and -- look the Circuit may

 4    do all sort -- it may -- it may grant the stay, but it --

 5    but impose a bond requirement.  You know, there are lots of

 6    things that could be done.  So I don't want to take that

 7    away from them.  But I do want to let the know how I viewed

 8    this order because it think that's important for them to

 9    know.  This condition in the order.

10              MR. MARTIN:  And I appreciate that.  I just wanted

11    it to be clear that we do -- even though the clock that Your

12    Honor -- we thought, Your Honor, set, may not be running, we

13    do have a clock running in our -- in our sublease.

14              THE COURT:  A separate deal clock.  That -- that's

15    fair and that's something you could raise with the Circuit.

16    I'm just focusing on a reasonable time at this point.

17              MR. MARTIN:  Understood and thank you, Your Honor.

18    Unless you have any other question for me, I think we

19    understand where you're coming from and --

20              THE COURT:  Okay.

21              MR. MARTIN:  -- what steps you would like us to

22    take.

23              THE COURT:  All right.  Very well.  Thank you.

24              MR. OTSUKA:  Thank you.

25              MAN 1:   Thank you, Your Honor.
```

Page 72

1          WOMAN 1:  Thank you, Your Honor.

2          THE COURT:  Okay. I think that concludes the

3    mattes in the Sears case for today, so I'll be signing off

4    at this point.  Thanks everyone.

5          MAN 1:  Thank you, Your Honor.

6          WOMAN 1:  Thank you.

7          (Whereupon these proceedings were concluded at

8    4:00 PM)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 73

1                    C E R T I F I C A T I O N

2

3          I, Sonya Ledanski Hyde, certified that the foregoing

4     transcript is a true and accurate record of the proceedings.

5

6

7

8     Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20     Veritext Legal Solutions

21     330 Old Country Road

22     Suite 300

23     Mineola, NY 11501

24

25     Date:  January 24, 2022

| & | | | |
|---|---|---|---|
| **&**  3:12,17,19 4:2<br>4:3,10,14,16,20<br>4:21 5:12,13 7:3<br>10:20 | **10191**  4:6,24 5:16<br>**10193**  6:11<br>**10194**  6:5<br>**10240**  10:25<br>**106.1**  16:13<br>**10601**  1:14<br>**107**  39:17 | 45:13 56:22<br>**2,517,997.00**  3:18<br>**2.3**  19:24<br>**20**  1:17 2:6 6:20<br>10:14,14 29:9<br>**20,000**  20:13<br>**200**  19:25 56:21 | **30,428.89.**  2:22<br>**300**  1:13 73:22<br>**31**  2:12,19 3:6,16<br>4:13 5:6<br>**330**  36:11 73:21<br>**3382**  56:22<br>**34.5**  17:6 |
| **0** | **11**  43:3,12 | **2000**  56:22,22,23 | **363m**  58:12 62:17 |
| **0.00.**  3:8 5:8 | **1114**  14:17<br>**112021**  3:18 | **20005**  8:18<br>**2001**  57:15 | **3c**  51:24 |
| **1** | **1133**  9:17<br>**11501**  73:23 | **20138**  5:18<br>**2016**  57:20 | **4** |
| **1**  2:11,19 3:6,16<br>4:1,13,19 5:6,11<br>7:12 22:1 37:12<br>71:25 72:1,5,6 | **12**  34:1 43:10<br>**12/28/2021**  6:13<br>**1201**  9:3<br>**12151**  73:6 | **2019**  58:8<br>**2020**  41:2 43:3,5<br>43:12 57:17<br>**2021**  2:11,12,19 | **4**  18:6,8<br>**40**  12:7<br>**41**  40:15<br>**41.3**  12:20 |
| **1,068**  11:21<br>**1,560**  11:21 | **127**  57:17<br>**13**  26:5 | 2:19 3:6,6,16,16<br>4:13,14 5:6,6<br>57:18 | **41d**  48:14 57:11<br>**42**  17:20<br>**440**  12:17,21 20:1 |
| **1.1**  17:14<br>**1.2**  18:16 48:1<br>**1.3**  18:16 | **13.1**  17:20<br>**1300**  8:17<br>**1350**  7:19 | **2022**  1:17 2:6 6:20<br>73:25<br>**23**  13:2 | **45**  20:3 21:17<br>**492**  12:11,14<br>**4:00**  72:8 |
| **10**  38:14 57:18<br>**10.00**  62:24<br>**10.5**  34:22 | **148,882.59.**  3:19<br>**15**  13:16<br>**15,000**  20:10<br>**15.4**  18:14 | **23.4.**  17:7<br>**24**  73:25<br>**248**  1:13 | **5** |
| **10/31/2021**  2:21<br>3:8<br>**100**  14:14 | **150**  42:13 43:20<br>44:25<br>**153**  16:11 | **25th**  53:12,12<br>**26385**  5:19<br>**266,139.00**  5:8 | **5**  28:11 33:21<br>41:25 42:1 58:8<br>**50**  19:3,22 20:11<br>20:15,15 21:16,17<br>22:3 28:14 |
| **10019**  7:20<br>**10036**  7:13 9:18<br>**10112**  8:11 | **159.4**  16:11<br>**15th**  51:18<br>**17**  17:10,21 | **27**  33:2<br>**270**  57:15 70:18<br>**276**  57:17 | **507**  13:25<br>**5074**  49:2<br>**53.3**  18:24 |
| **10131/2021**  3:18<br>**1013112021**  4:15<br>5:8 | **17.5**  34:23<br>**17.7**  18:11,22,24<br>19:23 23:1 | **276793.00**  3:8<br>**28**  43:10<br>**28.8**  17:20 | **531**  56:23<br>**548**  57:19<br>**55**  13:17 |
| **10153**  7:6<br>**10154**  4:2,4,17,20<br>4:22 5:12,14 | **18-23538**  1:3<br>**19801**  8:4 9:4<br>**1988**  56:18 | **287,232.21.**  4:16<br>**2:10**  1:18<br>**2nd**  56:18 | **55437**  9:11<br>**58**  11:22 43:22<br>44:25 |
| **10155**  4:3,4,21,22<br>5:9,13,14 | **199**  19:25<br>**1999**  56:21 | **3** | **58.2**  18:2 |
| **10156**  2:22<br>**10160**  3:20 4:4,4<br>4:22,22 5:14,14 | **2** | **3**  4:3,21 5:13<br>14:17,19 25:3<br>43:1 | **6** |
| **10161**  3:9<br>**10162**  2:12<br>**10163**  5:24<br>**10171**  2:6 | **2**  4:2,20 5:12<br>17:23 19:24 24:23<br>37:12 41:20 43:22 | **30**  8:10 13:3 17:10 | **6**  22:22 24:8,13<br>41:22<br>**6.3**  49:7 55:8<br>**6.3a**  54:13 |

| | | | |
|---|---|---|---|
| **60** 51:16 61:14 | **a** | **additional** 16:22 | **agenda** 6:19 10:4 |
| **62** 19:8,8 | | 16:24 22:16,20 | 10:8 25:15 36:25 |
| **62.6** 18:1 24:9 | **ability** 29:1 56:14 | 23:21 30:4 31:2 | 37:12,20 |
| **66** 19:8 | 58:13,16 63:3 | 33:18 | **agent** 2:9 32:16 |
| **674** 57:19 | 70:20 | **additions** 19:21 | **ago** 26:15 45:2 |
| **679** 57:19 | **able** 10:20 18:10 | **address** 26:12 | **agree** 30:3,23 |
| **6th** 56:21,22 | 19:16,22 21:16 | 40:5 45:4 | 31:19 46:9 61:19 |
| **7** | 22:3 37:13 44:18 | **addressed** 46:13 | 65:5,7 67:13 |
| | 70:11 | **addresses** 26:19 | 69:11,12 |
| **7** 3:17 6:17 45:11 | **abner** 56:24 57:5 | **addressing** 54:19 | **agreed** 16:3 28:20 |
| **7/1/2021** 2:21 3:7 | **absence** 43:19 | 67:24 68:1 | 36:17 45:23 |
| **7/112021** 5:7 | **absolutely** 35:2,7 | **adequate** 59:15 | **ahead** 10:17 36:5 |
| **70** 21:19 49:16,21 | **accept** 64:16 | 62:22 67:5,25 | 40:18 53:2 59:19 |
| 68:4 | **acceptability** | **adjourn** 55:24 | 68:14 |
| **711/2021** 4:15 | 66:12 | **admin** 37:9 | **akin** 4:1,9,14,16 |
| **75** 19:5 | **acceptable** 62:16 | **administrative** | 4:19 5:11 7:10 |
| **76** 13:17 | 63:21 64:18 67:3 | 2:9 8:16 11:6,7,23 | 24:7,12 25:23 |
| **76,275.00** 2:21 | 67:19 | 14:25 18:12 19:1 | 32:23 |
| **767** 7:5 | **accepting** 67:1,2 | 19:19,20 20:4,9 | **al** 1:7 5:4 10:4 |
| **8** | **access** 10:6 | 21:4,13,15,23 | **alexander** 4:5,23 |
| | **accommodate** | 22:14 27:22 28:11 | 5:15 |
| **8** 11:22 26:19 43:5 | 27:3 | 28:12,16 30:8,15 | **allocate** 19:24 |
| **80** 19:6 | **accommodation** | 32:16 33:22 34:24 | **allocated** 18:15 |
| **8005** 53:17 | 30:22 | 35:25 | **allocation** 14:3 |
| **8008** 53:19,21 | **accompanying** | **admins** 35:6 | **allow** 18:15 20:3 |
| 58:21 65:25 68:21 | 6:9 | **admissibility** | 20:15 |
| **818** 56:23 | **accomplishment** | 69:11,16 | **allowance** 2:5,17 |
| **8300** 9:10 | 13:14 | **admissible** 69:13 | 3:4,13 4:11 5:5 |
| **839,969.00** 4:15 | **account** 13:6 | **admit** 48:9 | **allowed** 11:22 |
| **844** 56:18 | 18:11 24:18,19 | **admitting** 16:22 | 12:3,4,6,9,21,24 |
| **9** | 50:3 | **advance** 11:8 | 16:10 19:3 45:16 |
| | **accrual** 21:25 | 22:16,25 | **allows** 53:22 |
| **9** 57:17 | **accurate** 73:4 | **adversary** 6:17 | **alter** 58:5 61:21 |
| **91** 43:10 | **achieving** 10:12 | 37:21 | **americas** 9:17 |
| **916** 56:18 | **acquired** 51:20 | **advisor** 5:3 | 37:19 |
| **919** 8:3 | **act** 56:25 | **advisors** 11:5 | **amount** 15:21 |
| **921** 56:18 | **action** 24:17 | 19:18 | 16:12 19:3 24:14 |
| **942** 56:21 | 56:14 | **advisory** 57:10 | 27:16 |
| **951-52** 56:21 | **actual** 3:5,15 15:7 | **affidavit** 69:9 | **amounts** 12:18 |
| **99** 57:15 | 42:2 | **affirmed** 46:19 | 15:6 16:10 29:4 |
| **99.7** 16:14 | **acutely** 30:16 | **afternoon** 10:2,21 | **analysis** 11:9 17:5 |
| **9985** 5:20,22 | **added** 18:16 24:8 | 24:4,6,11 38:5,10 | **andino** 68:17 |
| | **addition** 11:25 | | |
| | 14:20 | | |

[announcement - billing]                                                      Page 3

**announcement**
18:9
**anomalies** 31:25
**answer** 6:14 23:3
24:12 26:2 61:9
**anybody** 21:10
**anymore** 59:16
**apart** 29:13
**apologies** 27:8
**apologize** 42:1
**apparently** 33:18
66:7
**appeal** 13:22,25
14:4 16:4 23:16
41:17 43:21 44:16
45:2 46:3 48:10
48:12 50:23 56:15
57:22,24,25 58:1
58:3,5,6,10,11,24
59:2,5 60:3,19
61:21 62:18 63:2
63:4 64:21,23
66:10
**appealed** 58:2
**appeals** 13:11
14:1 16:6 41:18
45:14 50:4,24
51:3 54:5 58:15
60:25 67:22
**appear** 34:17
38:16
**appearing** 10:7
**appears** 12:10
45:9
**appellate** 23:17
40:15 56:12 64:11
66:21
**applicants** 25:25
26:16 36:23
**application** 2:9,14
2:15 3:1,2,11,12
4:8,9 5:1,2 29:11
34:5 38:14

**applications** 2:4
17:12 24:15 25:16
25:20 26:1,9
28:17 29:13 31:20
32:4,15,15,23
34:21 36:20
**applies** 57:13
59:10
**apply** 66:6 67:18
**appreciate** 23:25
34:3 43:12 51:1
71:10
**appreciates** 54:11
**appropriate**
23:21 69:5 70:23
**approved** 28:19
28:20
**arbitrary** 56:3
**argue** 38:16,22
40:2
**argued** 41:11,17
**argument** 40:25
45:8,9,15 46:1
49:23 52:22
**arguments** 55:1
56:7
**arisen** 33:19
**arrangements**
31:12
**art** 1:25
**aside** 61:23
**asked** 45:22 61:5
**asking** 28:24
61:23,25 62:1
63:7,18
**aspect** 62:12
**aspects** 54:20
**asserted** 14:19,23
14:24 15:6,10
21:19,21 24:17
**asserting** 16:2
**asset** 17:22 19:11

**assets** 17:11,16,18
17:19 22:18,20
30:18 35:15
**assignment** 6:2
37:2 49:1 58:8
62:5,6,20,21 63:9
63:10 67:7
**assistance** 35:11
**assuming** 26:16
**assumption** 6:2
37:1,2 58:7 62:20
62:21
**assurance** 59:15
62:22 67:5,25
**assured** 46:2
60:17
**attach** 64:15
**attempted** 18:20
**attention** 23:12,14
**attorney** 3:17
6:14
**attorneys** 3:13 7:4
7:11,18 8:2,9,16
9:2,9,16
**aty** 4:15
**audio** 27:9
**audits** 16:20,21
**authority** 58:23
**authorize** 66:4
**authorized** 62:8
62:20 68:22
**authorizing** 6:2
37:1 58:7
**available** 17:25
19:11 20:11 21:18
22:19
**avenue** 7:5 9:17
**aware** 22:22
30:16 55:23

**b**

**b** 1:21 36:23
39:17 43:22 59:4

**back** 21:7 27:9
28:6 33:3 35:14
38:3 49:14
**balances** 17:6
**ballard** 3:3 8:1
26:11
**bankruptcy** 1:1
1:12,23 53:16
57:20 58:21,22,25
59:6
**based** 16:19 18:1
55:16
**baseline** 19:15
**basically** 11:20,20
23:12 26:20 35:10
55:7 67:6,21
**basis** 29:3,4 32:20
32:22 36:19
**behalf** 4:5,23 5:15
5:23 6:4,10 24:4
24:12 25:25 26:11
28:9 33:10,14
37:9
**believe** 10:15
19:16 24:13 25:5
31:17 35:9 36:18
39:5 41:22 44:3
46:15 49:20,22
54:12 59:10 60:9
65:23,24 66:5,18
68:6
**belknap** 9:15
38:12
**benefit** 13:11 20:8
20:9 21:22 33:24
**best** 16:19 55:2
**better** 43:24
**beyond** 29:9
31:24
**big** 30:19 34:11
36:2
**billing** 31:7,24

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 96 of 117
[billion - colleague]                                                    Page 4

**billion** 28:11
**bills** 27:17
**binder** 69:15
**binding** 48:5
**bit** 19:24 55:4
**blame** 35:3
**blessing** 20:25
**blindly** 57:5
**block** 50:2
**blown** 32:9,11
**bond** 52:14,17
   66:16 71:5
**book** 69:13
**books** 16:19
**bottom** 14:12 16:9
   16:12 17:24 33:17
   33:19
**boys** 57:4
**br** 57:15
**brauner** 7:15
   24:11,12
**brf** 57:19
**bridging** 34:9
**brief** 33:10 40:25
   53:12
**briefing** 40:21
   41:22 45:9 47:7
**briefly** 34:16
**bring** 23:11,14
**bringing** 15:6
**brings** 13:16
   34:15
**broader** 57:6
**broadway** 7:19
**broken** 15:3
**brought** 61:8
**bryant** 7:12
**burden** 57:23
**business** 55:12,18

**c**

**c** 7:1 10:1 43:22
   73:1,1

**calculate** 51:17
**calculating** 51:8
**calendar** 37:18
**call** 37:11
**called** 43:25 53:18
   53:22
**capacity** 49:6
**capped** 12:17
**careful** 49:13
**carefully** 36:6
**carolina** 5:19,23
**carved** 36:15
**case** 1:3 10:6
   27:23 28:2,3
   29:15 30:12 31:14
   31:18,22 32:13
   37:11 39:13 43:7
   49:18,22 55:15
   56:16,24 57:6,7
   66:24 72:3
**cases** 20:5,18
   22:16 30:21 57:15
**cash** 17:5,10,17
   17:18,21,25 18:9
   18:9 19:10 35:16
**category** 12:9,24
   14:16
**cause** 6:13 37:21
**causes** 24:17
**ceased** 42:6
**ceiling** 39:1
**center** 9:10
**cert** 23:18 48:15
   54:7 56:23
**certain** 12:16
   15:15 16:20 23:15
   39:7 49:2,3 57:1
**certainly** 16:22
   38:22 44:12 52:19
   59:23 65:5
**certified** 73:3
**cetera** 55:17,18

**chambers** 38:17
   40:9 69:14
**chance** 51:19
**changed** 31:13
**chapman** 57:19
**charge** 53:2
**chart** 12:10 15:9
   18:14
**chesley** 6:4,10
**chief** 41:3
**cir** 56:18,21
**circ** 52:16
**circuit** 14:4 16:4
   40:21 41:18,21
   42:2,17 44:3,7,13
   44:22 45:3,14
   46:7,15,21 50:14
   51:15 52:10,13,16
   52:25 53:14 54:6
   55:23 56:6,7,22
   57:7 58:18 61:3,5
   61:13 63:24,25
   65:1 66:5,14 67:9
   68:10,21 71:3,15
**circuit's** 46:13
**circumstances**
   57:1 66:6
**cirt** 64:5
**citations** 44:1
**cited** 57:5
**citing** 43:10,21
   57:15
**civil** 43:21 44:5,25
**claim** 5:18 11:15
   13:24
**claimant** 23:11
**claimants** 20:1
   28:12
**claims** 8:16 11:6,7
   11:16,21,23 12:6
   12:7,8,11,14,17
   12:23,25 13:1,4,5
   13:7,13 14:12,13

14:16,18,21,23,24
15:6,9,13,15,25
16:25 17:8,23
18:12,15 19:4,19
21:5,9,20 22:15
22:24 23:9,14
24:22,24 25:9,11
33:19 34:24 35:15
35:25 37:9
**clarify** 54:3 64:13
**clarity** 56:2
**claw** 28:6
**clean** 15:12
**cleaning** 17:8
**cleanly** 39:17
**clear** 29:18 46:6
   54:2 67:17 69:20
   70:14 71:11
**clearly** 29:6 36:2
   46:4,19 55:16
   56:16 61:22 62:3
   63:23
**clerk** 2:9,12 32:15
   43:6 53:24 59:5
**clerks** 67:16 68:18
**client** 33:14
**clients** 69:3
**clock** 71:11,13,14
**close** 19:25 21:18
   28:6 30:10 34:8
   43:7 60:24 66:22
   70:5
**closed** 60:15,15
**closer** 15:7 34:6
   34:21 35:2
**closes** 60:18
**closing** 67:22
**coal** 56:20
**coleman** 56:24
   57:6
**collateral** 36:16
**colleague** 31:16

colleagues 49:23
color 59:24
combination 55:22
come 13:19 15:18 17:15,18,19 18:10 24:9 34:8 37:22 47:2 55:8 68:2 69:4
comes 20:9 52:21
comfortable 68:12
coming 53:8 71:19
comm 4:14
commences 48:1
commencing 48:7
comment 51:1
comments 33:13 34:4,14 47:3 61:6
commercial 39:18
committee 2:16 4:10 5:3 7:11 11:5 19:16,18 21:15 22:14 24:12 32:17 35:12 36:17 57:10
company 6:15 37:23 56:20 57:17
compare 12:5
compel 6:1
compensation 2:5 2:14,17 3:1,4,12 3:14 4:1,8,11,19 5:1,5,11 31:11 33:1
complete 44:2
completely 27:10 30:3
completion 51:3 54:4
compliance 54:22 54:23 62:14 65:15

complied 63:19 64:19 65:16 66:13
comply 39:6
conceded 65:6
concept 50:21
concern 51:8 64:3
concerned 29:11 34:12 36:12 44:12 49:8,18 53:15 63:16
concerns 29:1
concluded 72:7
concludes 72:2
conclusion 65:6
condition 50:8 52:13,14,18 54:21 58:16 60:16 67:25 71:9
conditions 49:2 62:2 66:15
conduct 39:25
conducted 6:20
conducting 16:20
confer 39:23 40:5 69:2,11
confirm 31:17 37:22
confirmation 30:12 35:13,23
confirmed 27:5
conflicts 2:16 32:16
confusion 54:12
consent 19:17 41:13,19 42:6,14 42:18 44:4,14 45:22 61:4,11
consented 61:13
consequently 27:15
conserve 21:4,9
consider 19:2,5 21:7 29:14

considerably 35:21,22
consideration 62:18 67:12
considered 33:7
considering 26:22 58:25
constituents 20:20 22:5
constitute 43:7
construction 6:15 37:23
construe 44:21
consulting 4:2,20 5:2,7,9,12
contemplate 52:6
contemplates 48:7
contemporaneous 16:5
content 11:4 49:20
context 41:10 44:15
contingency 51:25 52:4 54:15 54:22 55:2 64:22 65:9 66:2
continually 24:15
continue 12:22 18:21 21:6 44:18
continuing 22:13 43:12
contrary 50:16
contributed 17:16
control 22:18 23:15
controversial 20:25
controversy 66:24
cooperation 11:10
coordinated 11:3
corp 57:14,19

corporation 1:7 5:4 10:4
correct 27:10 49:17
cost 21:25 23:19
costs 22:6 28:11
counsel 2:16,20 3:3 4:10 6:16 10:9 10:16 22:15,16 26:7 32:16,17 49:24
country 73:21
couple 26:15 54:9 60:1 68:15
course 43:19 44:19
court 1:1,12 10:2 10:22 11:1 14:6 14:10 17:3 18:7 23:5,18,25 24:6 24:21 25:14,19 26:4,13,16 27:7 27:11 28:10,23 29:23 30:6,11 31:4 32:3,14 35:9 36:22 37:4,7,15 38:3,8,17,20 40:8 40:12,24 41:2,6,7 41:12,18,25 42:4 42:10,12,22 43:6 43:9,13,14,17,23 44:6,8,23 45:4,17 45:18,21,23 46:2 46:4,9,21,23 47:4 47:21,22 49:11,18 50:7 51:5,7,10,14 51:22 52:2,9,12 53:11,19 54:7,17 54:20 56:5,14,25 57:3,16,18,22 58:1,14,15,18,18 58:22,23,25 59:1 59:2,5,6,19,23

[court - discussed]

60:2,11,13,21
61:3,10,16,20,20
61:23 62:1,7,9
63:1,7,11,15,18
64:8,15,25 65:8
65:10,13 67:9
68:8,25 69:7 70:1
70:4,7,12,25 71:2
71:14,20,23 72:2
**court's** 14:3 38:15
43:2,4 45:1 58:12
59:24,25 61:6
69:22
**cover** 40:6
**covering** 28:23
**craft** 4:5,23 5:15
7:18 24:4 25:22
32:24 33:10
**craig** 9:6 38:6
39:22 41:8 48:21
50:25 53:5 55:21
68:19
**credibly** 21:5
**creditor** 4:14
19:20 21:16 33:15
34:25
**creditor's** 36:16
**creditors** 2:17
4:11 5:4 7:11 19:1
19:3 20:4,7,16
28:15,16,21,22
30:16 33:23 36:14
**critical** 48:3,13
56:12
**cross** 22:3 69:10
**cure** 62:25
**current** 22:7 53:7
**currently** 18:15
20:1 40:20

**d**

**d** 1:22 10:1
**daluz** 8:6 26:10
26:10 27:5,9

31:17,19 32:8
**date** 2:2 10:12
11:4 14:13,15
15:2 19:16,18
21:14 22:14 28:14
29:16 30:17 34:6
35:11 48:2,23
67:14 69:5 73:25
**dated** 10:14 26:5
**david** 7:22 9:20
24:3 33:9 38:12
**day** 45:25 67:15
**days** 26:15 42:14
43:20 44:25 51:16
61:14 69:15 70:18
**dc** 8:18
**de** 8:4 9:4 12:1,3,4
20:6 21:17 22:1
**deadline** 52:5,6
54:12 56:3 60:23
61:6,8,14 64:4
69:22
**deal** 25:6 30:13
35:5 60:15,15
66:22 71:14
**dealing** 13:21
14:22
**deals** 11:16 39:18
**dealt** 22:10 23:20
32:24 36:5,7 64:5
**debt** 16:2
**debtor** 60:22
**debtor's** 3:17 10:9
10:11,16 11:2,8
15:19,22 16:16,18
18:8 23:15 33:15
**debtors** 1:9 2:1,10
3:13 7:4 10:20
15:5,8 16:3 17:21
18:10,20 19:15,17
21:4 22:2,13,17
25:7,11,12 28:10
35:3,11 36:22

**december** 54:15
**decide** 55:12 69:3
**decided** 63:15
**decision** 43:4,8,24
43:25 46:14 55:24
56:3
**declaration** 69:9
**declarations**
69:14
**decrease** 15:14
17:20
**decreased** 13:2,3
**decreasing** 31:21
**deemed** 43:20
**deep** 57:4
**defendant** 6:15,16
**defendants** 18:19
**defer** 16:3 58:25
65:24 67:12
**deficiency** 28:21
**define** 48:8
**definition** 48:2,3
**delayed** 35:5
**denial** 55:6 66:11
**denied** 33:2 56:22
56:23 67:10
**deny** 58:25
**denying** 43:5
**department** 5:19
5:24
**depending** 70:23
**deprived** 58:12
**described** 17:12
20:2 43:13
**describing** 59:24
**design** 44:17
**despite** 18:19
**details** 11:13
**determination**
29:5 48:4,13
54:24 58:12 63:19
64:17,21 65:8
66:1

**determine** 29:1
66:18,19,20
**developed** 68:16
**development**
40:14,20
**deviation** 20:22
22:7
**dial** 21:7
**dialing** 37:11
**diatribes** 32:12
**dicta** 46:19
**difference** 17:24
65:5
**different** 21:19
28:23 30:2 33:15
52:4 55:18 62:19
63:13,22
**differently** 49:12
**difficult** 18:19
**diminishing** 13:12
13:20
**direct** 19:11 42:20
66:4 69:9,14
**directed** 68:22
**directing** 39:10
43:6
**disadvantage**
39:19
**disagree** 30:25
44:17 48:22
**disallow** 36:19
**disallowed** 13:24
**disclosed** 24:14
**disclosure** 39:18
**discount** 16:10
19:4
**discovery** 65:21
67:13,13 68:12
69:3
**discuss** 67:13
**discussed** 21:14
27:23 56:17

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 of 9 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 99 of 117
[discussing - example]                                                    Page 7

discussing 32:1,5
discussion 34:7
  52:22 57:14
discussions 26:23
dismiss 67:11
disparage 28:2
disposing 42:18
dispute 66:23
disputed 12:7,23
  13:5,7,13 17:8
  21:9 22:24 23:9
  35:15
disputes 36:7
distinction 65:3
distribute 22:19
  34:22
distribution 12:11
  18:11,22 19:7,10
  20:8 21:6 22:12
  23:7 33:24 34:23
distributions
  11:17 12:17,18
  13:6 14:13 20:19
  35:14 36:14
district 1:2 41:2
  41:11 42:4,9,12
  43:2,6,13,14,17
  43:23 44:6,23
  45:1,17,21 46:4
  57:3,16,17,18
  58:12,14,18
divest 57:22
divested 58:1
  60:18
divestiture 56:9
  57:12 58:4
divided 11:16
dla 9:1 38:6
doc 4:2,3,3,20,21
  4:21 5:12,13,13
docket 10:15,24
  10:25 15:12 39:13

docketed 58:24
doctrine 57:13
  58:5
document 4:4,22
  5:14,22 39:3
  43:18,19,25
documented 66:8
documents 39:4
  51:13
doesn't 10:6
doing 17:22 20:12
  22:17,25 27:15
  31:9 32:11 33:4,6
  35:12 44:22 50:2
  68:23
door 21:2 23:1
draft 32:9
drag 18:21
drain 1:22 10:3
dramatic 17:7
dramatically 13:7
drive 9:10
driven 18:3
driver 16:15
  18:18
drogin 7:17
drop 37:13,17
due 51:20 53:12
duly 54:24
duplication 13:24
dykhouse 9:20
  38:12

e

e 1:21,21 3:2 7:1,1
  10:1,1 56:20 73:1
eager 46:24
earlier 18:4 20:7
  21:3 69:19
early 32:13 53:15
earned 28:6
easy 55:12
ecf 2:6,12,22 3:9
  3:19 4:5,17,23 5:9

5:15,19,24 6:4,11
  6:17 49:2
ecro 1:25
effect 42:19 43:7
  46:15 50:1
effective 2:2 10:12
  11:4 14:15 19:16
  19:18 21:14 22:14
  24:10,25 25:3
  29:15 30:22 33:12
  33:18,20 34:1,6
  34:10 35:11 47:2
effectively 70:21
effectiveness 42:7
  47:13
efficacy 42:15
efficiencies 20:18
eight 13:1
eighth 3:2
either 15:11 19:5
  23:10 31:12 36:19
  38:1 54:5
eligible 11:17
  12:11,17 15:24
email 38:17 39:2
  40:9
emananuel 8:15
emmanuel 37:9
empty 49:21
enable 29:15
  30:22 35:13 70:5
encourage 23:13
ended 43:8
enforce 6:1,9 37:1
  47:22 57:23 62:25
enforceable 63:10
engage 21:11 23:8
enter 39:10 44:23
  45:22
entered 36:24
  38:21 41:11,14,15
  42:5,5,12 43:13
  43:20,21 44:15

45:19,23 49:1
  59:25
entering 51:25
entirely 55:1
entitled 14:14,17
  25:4
entry 51:9
erika 8:20 37:8
esl 18:1 24:17
  36:1
essence 43:2 44:8
  47:5
established 20:23
estate 17:14 21:20
  33:20
estate's 21:15
estimate 15:19,22
  16:13,16 17:14
estimated 16:10
  27:16
estimates 15:7
  16:18 35:3,19
et 1:7 5:4 10:4
  55:16,18
event 45:17
events 48:24
everybody 20:12
  20:12 28:5 32:22
everyone's 33:5
evidence 55:10
  62:14
evidentiary 64:10
  65:14,19,24 67:14
  68:14 69:8,15
exactly 27:10 39:1
examiner 3:2,3,7
  3:9 8:2,9 25:21
  26:8,11,21 27:4
  32:17,21
examiner's 26:5,6
  26:19,23 27:13
example 52:15
  62:19

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 100 of 117
[exceed - frankly]                                                          Page 8

exceed 70:19
exceptions 56:13
exchange 54:14
excluding 17:25
excuse 37:5 58:18
execute 43:9
exhaustion 54:5
exhibit 42:25
  69:13
exhibits 6:10
  69:12,16
exit 70:20
expand 58:5
  61:21
expanding 62:5
expect 18:10
  31:22,25 34:4
  53:13
expected 18:10
expense 30:8,16
  37:9
expenses 2:5,11
  2:18,21 3:5,8,15
  3:18 4:12,16 5:5,8
  21:23 29:2
expire 64:4,4
  69:23
expired 44:4,24
explain 11:13
extend 61:3,6,8
  66:17
extended 52:19
extending 61:13
  66:16
extension 51:14
extent 19:22
  20:11 22:3 44:24
extra 49:13 52:11

**f**

f 1:21 42:25 73:1
f.2nd 56:18
f.3rd 56:21

faced 23:16
fact 37:15 39:6
  57:21,25 62:23
  66:10
facts 52:6 59:11
fail 7:8 10:19,19
  10:23 14:8,11
  17:4 18:8 23:13
  25:2,10,18,24
  26:25,25 28:8,8
  29:17,21,24 30:1
  30:25 34:16 36:21
  36:25 37:16
fair 27:13 30:11
  60:14 68:6 71:15
fairly 55:12
faith 69:12
false 34:20 35:2,7
familiar 19:13
far 13:9 21:5
  29:11 36:4,11
  47:8 62:17 64:6
favor 43:4,14
fear 34:17
february 22:10
  51:18 53:15
federal 40:15
  43:21 44:5,25
  53:17
fee 2:8,8,15,21 3:2
  3:3,6,8,8,18 4:9
  4:15 5:8 8:2,9
  14:3 17:12 24:15
  25:16,20,21 26:5
  26:8 27:3 29:10
  29:11,16 31:11,20
  31:20 32:3,14,15
  32:17,21
feel 37:16
feels 54:18
fees 27:12 29:2
  36:20

feinstein 2:15,20
  2:22 32:16
feld 4:10,14,17
field 4:2,20 5:12
fifth 7:5
fight 69:16
fighting 16:3
figure 69:1
file 6:7,8 15:11
  22:9 23:23 34:13
  38:25 39:1 40:22
filed 2:12,22 3:8
  3:19 4:4,16,22 5:8
  5:14,23 6:3,10,14
  10:24 15:15,16,24
  17:14 26:15 28:18
  38:13 40:21,22
  41:15
files 58:22
filing 41:16
final 29:3,11
  42:13 43:1,7,24
  44:6 48:8,8 53:8
  53:11 60:3
financial 5:3 29:7
find 59:14
fine 10:22 17:3
  18:7 37:7,15 38:8
finish 29:25
finished 66:21
firm 9:8 24:8
  29:14 31:14,24
  38:13
firm's 29:7 32:25
firms 26:24 27:14
  27:21 28:1,3
  29:12 30:9,15,21
  31:9 32:2,5,11
  36:9
first 12:24 14:16
  35:6 38:24 40:13
  41:1,6 45:7,7,15
  45:25 46:5 48:6

53:10 54:23 55:1
  55:20 56:10 62:15
  63:6,19 65:16
  66:12 67:20
fit 39:17
fits 55:7
five 13:4,13 46:11
fix 50:16
fixed 25:3
flagged 14:1
flagging 16:23
flip 18:5
flips 57:23
focus 41:1
focusing 63:13
  71:16
folks 15:20
following 10:25
  19:20
footnote 42:3,8,17
  43:1 44:2 46:13
  46:18,18
forced 18:17
  49:21
forefront 34:14
foregoing 73:3
foreign 18:18
foreseeable 70:19
form 20:24 32:10
  44:18 51:23 68:16
forth 43:18,25
forward 11:12
  12:8 21:4 22:2,6
  22:11 27:4 33:16
  37:24
found 60:10
four 33:11 34:5
  34:15 43:9
fourth 18:11 23:7
fraction 12:12
frame 54:4
frankly 30:13
  39:15 66:13

[free - holding]                                                                        Page 9

**free** 32:6 50:17
  59:13
**front** 41:11 52:25
**fti** 4:2,20 5:2,7,9
  5:12 32:24
**full** 11:23 12:1
  32:9,11 36:18
  52:22
**fully** 11:20 33:5
  63:10 66:8
**fund** 28:20 36:16
**funding** 24:19
**funds** 20:11 21:18
  23:21
**further** 13:11
  15:16 16:5 26:1,2
  26:14 44:12 48:10
  56:1 60:18 61:8
**future** 12:18
  20:19 27:16 29:4
  29:16 67:25

**g**

**g** 10:1 56:20,20
**gamut** 14:25
**gap** 27:23 28:7
  30:9,10,16 34:9
**garrett** 7:8 10:19
  26:25 28:8
**gas** 57:19
**general** 14:24
  15:10
**generally** 28:4
  35:14 39:17
**getting** 16:8 31:9
  57:24 64:1 70:16
**giant** 16:2
**give** 50:11 55:9,13
  56:8 62:1 68:11
**given** 27:13,20,22
  30:8 34:25 48:13
  49:6 52:25 60:7
**giving** 34:23
  59:23

**global** 50:5
**go** 10:8,17 14:12
  21:1 22:2 23:1
  24:9,25 25:3,15
  29:15 30:22 32:10
  33:18,20 34:1
  38:3 40:18 41:6
  45:5 49:14 52:9
  57:12 59:19 68:14
**goals** 20:17
**goes** 28:25
**going** 13:10,11
  19:20 21:4 22:6
  23:10,16 27:4
  31:16 33:12,23
  34:5,6,9 37:23
  40:2,4 53:7
**good** 10:2,23,23
  11:11 19:15 21:2
  24:4,6,11 32:4
  38:5,10 52:2
  57:14 69:12
**gothsal** 10:20
**gotshal** 3:12,17,19
  4:3,21 5:13 7:3
  25:22 32:23
**gotten** 13:9 21:5
**governing** 44:6
**grace** 6:15 37:23
**grant** 32:19 34:5
  39:20 50:14,15
  52:17,18 54:3
  58:23 59:1,6,8
  66:15 71:4
**granted** 41:16
  43:16 55:16
**granting** 6:3
  38:15 43:3
**grants** 26:1 54:7
**grateful** 39:24
**greenville** 6:15
**greg** 38:11 40:19
  69:17

**gregory** 9:13
**group** 25:16
**guess** 31:4 36:8,14
  40:13,25 44:9,11
  46:12 48:5,13,19
  52:9 54:1 61:14
**gump** 4:2,9,14,16
  4:20 5:12 7:10
  24:7,12 25:23
  32:24

**h**

**h** 56:20,20
**hac** 38:13
**half** 14:5,11 34:12
  67:15
**hall** 43:10,10
**hand** 12:18 18:9
  50:17 58:13
**hang** 45:12
**hanging** 30:12
  68:3
**happened** 44:20
  46:8
**happens** 34:12
  58:4 70:23
**happy** 10:8 20:20
  22:4 23:3 26:2
  27:3 40:24 41:6
  42:21 62:4 69:2
**hard** 70:16
**harner** 3:2 8:13
  26:7,11 27:8,18
  28:9,24 29:6,20
  30:1,23 31:16
**harner's** 33:13
**hat** 45:12
**hate** 37:6 44:11
**hauer** 4:2,9,14,16
  4:20 5:12
**he'll** 34:25
**head** 31:23 57:24
**headset** 70:9

**health** 29:7
**hear** 10:20 38:7
  40:25 61:19 62:14
  70:11,12
**heard** 10:5 27:1
  29:6 59:18 68:20
  69:18,21
**hearing** 2:1,4,4,8
  2:14 3:1,11 4:1,8
  4:19 5:1,11,18,22
  6:1,7,13,19,19
  10:13 22:11 24:15
  27:12 30:12 34:21
  35:8,23 38:12
  39:23 40:1,4,6,10
  53:11,24 56:1,21
  64:10 65:14,19,20
  65:24 67:14,14
  68:13,13,14,16
  69:5,8,15
**hearings** 10:10
**heartened** 33:13
**held** 13:6 22:20
  22:23 35:14 68:15
**help** 22:5 53:9
  68:18
**henick** 2:15
**herrick** 2:20,22
  32:16
**high** 14:18,21
**highlights** 28:13
**hitting** 13:12
**hoffman** 9:8
**hold** 38:4 59:15
**holdback** 27:17
  28:25 29:9,9 30:4
  31:2 36:9,19
**holdbacks** 27:15
  27:19
**holdco** 6:4,8,9,11
  9:2
**holding** 1:7 47:10

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 102 of 117
[holdings - keeping]                                                    Page 10

**holdings**  5:4 6:3
  9:9,16 10:3 37:3
  38:11
**hon**  1:22
**honor**  10:19,23
  17:13 18:5 19:13
  20:7,24 22:13,22
  23:16 24:3,5,11
  25:18,24 26:1,10
  26:25 27:6,8,18
  29:17 30:23 31:19
  32:8 33:9,25 34:3
  34:4,13,15,16
  36:21 37:5,11,14
  38:2,5,9,10,13,19
  39:22,24 40:11,17
  40:19 41:5 42:20
  44:2 45:6 46:17
  47:1,12 48:22
  49:1 50:25 53:4
  53:23 54:11,14,18
  59:17,22 61:1,12
  61:18 63:6,17
  64:12 65:6 68:7
  68:19 69:17 71:12
  71:12,17,25 72:1
  72:5
**honor's**  49:8 53:6
  53:8,11 65:4
**hopefully**  22:10
**hyde**  6:25 73:3,8

**i**
**i.e.**  48:9 55:1
**identified**  47:20
  69:6,23 70:5
**ignore**  46:24 47:1
**ignored**  56:11
**ii**  6:3
**imminent**  60:23
**impeding**  66:9
**implement**  57:23
**implementing**
  58:1

**important**  41:10
  57:9 58:7 71:8
**impose**  71:1,5
**imposed**  30:6
**impression**  31:6,9
**improperly**  64:18
**inability**  60:24
**inclination**  39:9
**inclined**  39:20
  60:2
**include**  22:8
**included**  14:23
  15:1 16:18,25
  28:15 34:21
**includes**  16:1
  28:13
**including**  3:16
  4:13 12:23 22:21
  22:21 26:17 52:12
**incmted**  3:15
**increase**  16:15,15
  17:16,21 23:19
**increased**  12:6,25
  15:19,20,23
**increases**  35:18
**incur**  33:24
**incurred**  3:6
**indicated**  42:17
  53:25
**indication**  46:14
  68:21
**indicative**  53:18
  53:20,22 55:9,13
**indiscernible**
  11:15 27:20 30:5
  30:5,9 56:4,4
**individual**  32:2
**inform**  66:4
**information**  39:18
**initial**  12:16 43:14
**initially**  41:11
**insolvency**  27:23

**intended**  43:24
**interest**  21:21,25
**interfere**  50:9
  56:15 58:6 63:2
  67:8
**interference**
  50:21
**interferes**  63:4
  64:10
**interfering**  62:10
**interim**  2:4,8,14
  2:15 3:1,4,11,13
  4:8,9 5:1,2,4
  25:16 26:9 27:12
  29:3,16,18 32:15
  32:20,22,23 36:20
**interpretation**
  67:1
**interpretation's**
  52:3
**interpreting**
  55:19 59:25
**interrupt**  29:20
  30:1 37:6,16
  59:18 60:13
**inuring**  39:24
**invoke**  53:10,16
**involved**  37:17
**involvement**  20:4
**involvements**
  20:19
**isolates**  62:18
**issuance**  40:15
  53:3 56:11
**issue**  27:2 28:24
  29:12,16 30:7,24
  45:9 46:13 50:7
  54:6,19 55:13,19
  56:9 57:4 59:4,7
  62:19 63:3,5,7
  64:6 66:20 67:3
**issued**  44:6 47:18
  56:13 57:1

**issues**  27:1 28:24
  30:2 33:7 41:24
  50:15 56:1 63:13
  65:15 67:19 69:5
  69:23
**item**  21:3 25:15
  36:25 49:7
**items**  37:12

**j**
**january**  1:17 2:6
  6:20 10:14,14
  26:5 38:14 73:25
**job**  25:6
**joint**  3:2 69:13
**jointly**  24:16
**judge**  1:23 10:3
  11:14 13:8,15
  16:9 17:2 18:23
  23:24 41:3 57:18
**judgement**  46:4,5
  47:5,12,13 61:21
**judgment**  14:4
  42:3,5,9,12,13
  43:10,14,17,19
  44:1,23 45:1,18
  45:19
**judgments**  42:4
  44:6
**july**  2:11,19 3:6
  3:16 4:13 5:6
  57:18
**june**  43:5
**jurisdiction**  44:8
  57:22 67:4
**jurisdictional**
  46:1 56:17 61:17
**jurisdictions**
  16:20 21:19

**k**
**k**  37:22
**keep**  34:14
**keeping**  46:12

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 103 of 117
[kept - mart]                                                                    Page 11

**kept** 68:3
**key** 42:2
**kind** 31:25 32:9
**knew** 26:12 35:24
**know** 12:7 13:9
13:11,19 14:18,23
17:4 18:20 19:1,6
19:14 20:18,22
21:5,7,8 22:20
23:20,22 27:20,24
28:1,14 30:2,8,14
30:15 31:10 32:11
33:25 34:7 44:10
50:9,12,19,19
52:20,23 53:13,23
54:5,8,8 55:15
56:2 58:19,20
60:23 62:15 65:11
65:15,20,21 66:19
67:5,9,23 68:10
68:18 69:7 70:10
71:5,7,9
**knowledge** 16:19
**known** 16:4
**krinsky** 7:17 24:4
33:10

**l**

**l** 56:20
**lack** 39:25
**lacks** 58:23
**laid** 56:16 57:10
**landlord** 49:6
50:1,9,19 65:17
67:20 68:3
**landlord's** 66:11
**language** 26:17
32:20 55:6
**large** 13:23 18:18
36:15
**largest** 19:19
21:15
**larkin** 9:8

**law** 9:8 24:7 28:3
32:10 49:18,23
56:16,17
**lay** 59:20,21
**lead** 48:24
**leafing** 42:23
**lease** 6:2 37:2
47:25 48:6,17
49:7,9,10,16
50:11 51:19 52:11
52:23 54:10,21,23
56:4 58:8 59:16
62:15,21,22 63:9
63:10,20,22 64:19
65:15 67:7 68:5
**leased** 49:25
**leases** 55:16
**leave** 6:8 34:18
49:20 66:22 67:10
**leaves** 12:2 46:12
65:12,14
**led** 35:18
**ledanski** 6:25 73:3
73:8
**lee** 67:16
**left** 43:9 49:16,19
**legacy** 57:16
**legal** 32:11 73:20
**length** 27:24
**letter** 53:23 55:6
64:16
**letters** 54:14
**letting** 34:3
**levels** 23:18
**lexus** 56:22 57:17
**liability** 14:20
16:16,22
**lien** 16:2
**lies** 43:21
**life** 69:10
**light** 26:22 48:13
**limitation** 49:15
58:9,19 59:12

66:5 67:18
**limited** 14:20
56:13
**line** 15:18 16:1
26:12 33:17,19
**lines** 12:1
**lingering** 31:7,14
**literally** 68:2
**litigate** 23:16
50:18
**litigation** 13:10
16:5,6 17:25 18:1
19:11 21:8 22:21
24:17,20 30:19,20
34:11 36:1,1,17
43:8 48:1,2,23
54:22 55:2 63:8
63:23,23 64:22
65:8 66:3,11
70:17,17
**litigation's** 65:1
**litigations** 36:4
**little** 19:24 49:12
52:3 55:4,5 64:20
**live** 66:24 67:4
**llc** 2:9,12 6:3,4,8
6:11 9:2,9,16 37:3
**llc's** 6:9
**llp** 2:15,20,22 3:3
3:13,17,19 4:2,3
4:10,14,17,20,21
5:12,13 7:3,17 8:1
8:15 9:1,15
**logic** 23:12 50:10
50:10
**long** 25:1 43:2
45:1 47:17 49:15
50:1 52:18 54:8
70:18
**longer** 42:19
**look** 18:23,23
41:9 71:3

**looked** 14:23
**looking** 23:18
24:23 31:5 42:22
60:9
**lose** 51:20 52:15
54:10 66:25
**lost** 42:15 44:16
45:21
**lot** 15:4 28:1
**lots** 71:5
**lower** 15:4 35:21
35:22 56:14,25
61:20

**m**

**maintained** 22:24
**major** 36:1,3
**majority** 12:2,2
20:3
**makers** 58:2
**making** 20:9 65:4
**mall** 6:3 9:9,16
37:3,19 38:4,11
**man** 71:25 72:5
**mandate** 40:16
41:23 46:7 47:7,8
47:15,17 48:15
50:15 52:12 53:2
53:14 54:6,7,18
55:25,25 56:10,11
57:1,9 58:16 64:2
65:2 66:14,17
**manges** 3:12,17
3:19 4:3,21 5:13
7:3 10:20
**march** 18:13 23:2
41:2 43:12 56:22
**mark** 19:3,23
20:12
**market** 8:3 9:3
52:23 60:24
**marketing** 60:4,8
**mart** 37:22

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 104 of 117

[martin - ny]                                                                Page 12

**martin** 9:6 38:5,6 38:9 39:22,22 40:9,10,18 41:5,8 41:8 42:1,25 44:10 45:20 48:6 48:21,21 49:17 50:5,25,25 51:6,8 51:11,16,23 52:8 53:4,5,21 54:18 55:21,21 61:2 68:19,19 69:1 70:8,11,14 71:1 71:10,17,21

**martin's** 45:8

**master** 49:7,10 63:9,10

**matter** 1:5 37:18 37:19,20 39:15,16 42:18 58:13

**matters** 6:19 10:4

**mattes** 72:3

**matthew** 5:23

**maximizing** 20:19

**mcmahon** 41:3

**mean** 25:19 28:2 30:21 50:8,16,20 58:14 60:4 62:10 62:19,23 63:2 64:25 65:18 66:23 66:24

**meaning** 57:8

**means** 47:23 66:2

**measure** 36:15

**meat** 57:17

**meet** 22:3 69:11

**meeting** 15:21

**meets** 20:17

**mention** 24:23

**mentioned** 12:23 18:4 21:3

**mere** 57:21

**merit** 56:21

**merits** 29:13 43:8 45:21

**milliken** 56:20

**million** 12:20 14:17,20 16:11,11 16:14 17:6,10 18:2,11,14,16,24 19:23,24,25 22:1 22:22 24:8,9,13 25:3 28:14 33:21 34:22,24

**mind** 29:1 44:17

**mineola** 73:23

**minimis** 12:1,3,4 20:6 21:18 22:1

**ministerial** 57:7

**minneapolis** 9:11

**minnesota** 57:18 63:1

**misleading** 35:7

**misplaced** 64:3

**missing** 34:7

**misspoke** 53:21

**mn** 9:11

**moac** 6:2 9:9,16 37:2 38:4,11 39:6 41:12,16,21 43:4 43:14 44:12 49:6 49:19 55:16 56:7 57:11 59:11 61:4 61:8

**moac's** 43:5 64:16

**modified** 17:11 59:8

**monetization** 17:16,22 19:12

**monetize** 22:18

**monetized** 17:18

**money** 21:1 28:1 33:17,20,23

**month** 53:15

**monthly** 2:8 31:11

**months** 11:3 33:12 34:2,5,15 34:17 68:15

**morabito** 8:20 37:5,8,8 38:2

**motion** 4:1,19 5:11,18,22 6:1,1,7 6:7,9 37:1 38:4,15 38:24,24,25 39:1 39:2,6,11,20 40:13,14,20,21,23 41:3,12,15,17 43:1,3,5,16 44:16 48:14 52:11 53:2 54:24 55:11,24 57:9 58:15,22,25 59:1,1,3,6,7 64:16 65:1 66:1,14 67:11

**motions** 59:8

**movant** 54:4 66:4

**move** 17:1 22:11 36:5 57:25

**moves** 34:13

**moving** 12:8 14:5

**mullin** 8:8

**mute** 70:7,9

**n**

**n** 7:1 10:1 56:20 73:1

**nature** 27:14 55:11,17

**necessarily** 57:13

**necessary** 3:5,15 27:19 32:12 36:13

**need** 14:15 16:13 27:25 28:3,5 38:1 40:1 56:3 62:14 67:13 68:13

**needed** 13:2 33:17 40:3 49:3 68:8

**needs** 14:2 23:11 24:9 27:25 31:10

33:20 36:5 42:20 65:22

**negotiate** 21:11

**negotiating** 21:24

**negotiations** 23:8

**neither** 44:20,22

**net** 17:21,21

**never** 42:5

**new** 1:2 7:6,13,20 8:11 9:18 33:6,11

**news** 11:12 17:5 21:2

**ninth** 2:8 3:12 4:9 5:2

**non** 12:3,4,4 13:1 15:25 18:12 20:1 20:14

**normally** 35:13

**norman** 9:10

**north** 5:19,23 9:3

**note** 10:13 11:2 12:10 13:23 16:9 38:13 39:4,16 42:24 43:17

**noted** 26:4

**notes** 57:10 61:20

**notice** 2:4 6:19

**notices** 17:13

**notify** 59:4

**november** 54:14

**number** 5:18 11:19 12:2,6,24 13:1 14:18,18,21 15:5,14,19,23 16:2,8 18:23 23:8 31:20 33:19 37:12 42:8,11 47:17 49:2

**numbers** 12:13 17:23

**nw** 8:17

**ny** 1:14 7:6,13,20 8:11 9:18 73:23

**[o - passed]**                                                                                    Page 13

| **o** | | | **p** |
|---|---|---|---|
| **o** 1:21 10:1 56:20 73:1 | 38:23 40:8,12,24 41:7 45:4 52:8 61:16 65:10 70:7 71:20 72:2 | 47:2,3,10,14 48:5 48:8 49:1,8,9 50:9 50:17 51:9,24 52:21 53:7 54:3 | **p** 7:1,1 10:1 |
| **objected** 32:24 36:10 | **old** 73:21 | 55:19 57:23 58:1 | **p.m.** 2:6 6:21 |
| **objection** 4:1,19 5:11,18 13:18 15:12 25:21,23 33:2,7 34:14 39:8 39:11 54:25 55:4 | **omitted** 43:11 44:1 | 58:5,7,13 59:24 59:25 62:6,6,18 63:7 66:6 67:2 68:8,11,17 69:21 71:8,9 | **page** 11:14 12:19 14:5,11 16:7 17:1 17:4,23 18:5,8 24:23 43:1 45:11 |
| | **omnibus** 10:10 30:17 | | **paid** 12:1,20 14:15 15:11,11,22 24:10,19 28:10,14 29:3,3 35:1 |
| | **ones** 45:5 | | |
| | **ongoing** 21:22 26:22 27:14 62:22 | | |
| **objections** 15:15 15:17,24 23:23 26:21 32:19,25 | **operation** 44:5 | **ordered** 41:2 47:22 | **paints** 33:15 |
| **obligations** 25:11 | **opinion** 57:16 62:1 69:22 | **orders** 26:18 39:14 42:5 48:9 | **pandemic** 50:5,6 |
| **obtained** 24:20 44:19 66:7 | **opportunity** 50:12 | **orient** 4:5,23 5:15 7:18 24:4 25:22 32:24 33:10 | **papers** 39:11 46:2 53:6 |
| **obviously** 32:5,21 50:2 51:4,8,18,23 60:4 62:5 68:9 70:16 | **oppose** 30:3 | **original** 42:9 43:4 | **paragraph** 26:20 26:20 41:20,22,25 42:1 45:11,13 46:10,11 47:16,20 51:24 |
| | **opposed** 32:11,18 63:1 | **originally** 44:15 | |
| | **opposing** 31:2 | **otsuka** 9:13 38:10 38:11,19 39:23 40:17,18,19,19 44:17 45:4,6 46:17,22,25 47:11 56:6 59:17,22 60:12,20 61:1,11 61:17 62:8 63:6 63:14,17 64:7,12 64:24 65:3,11 68:7 69:3,17,17 70:2,6 71:24 | |
| **occasioned** 64:2 66:11 | **opposition** 39:5 39:25 40:13 | | **parenthetical** 43:11 |
| **occupancy** 48:25 | **opt** 11:18 12:3,4 12:25 13:1,18 14:9 18:12,12 20:1,1,14,14 33:14 34:25 56:22 | | **park** 7:12 |
| **occur** 17:9 48:17 48:24 | | | **part** 33:4 47:7 64:14 67:5,6 |
| **occurred** 19:12 41:21 66:2 | **opted** 11:18,24 13:15 33:16,25 | | **participants** 11:9 |
| **october** 2:11,19 3:6,16 4:13 5:6 | **options** 53:9 | **outs** 13:18 20:14 | **particular** 31:24 |
| | **oral** 40:25 49:23 52:21 | **outstanding** 14:2 15:6,13 21:10 | **particularly** 39:16 57:8 |
| **offer** 54:13,23 62:15 63:19 65:16 66:12 67:20 | **order** 6:1,13 10:9 20:24 22:9 26:17 27:3 29:10,14 36:23 37:1,20 38:14,18 39:3,10 40:9 41:1,10,13 41:19,23 42:6,10 42:13,14,18,18 43:3,5,20 45:13 45:17,20 46:3 | **overlapping** 29:22 | **parties** 11:17 12:16,20 13:15,21 14:1 15:23 16:2 16:23 18:17 19:5 19:9 20:10,18 21:24 23:15 36:5 36:6 38:25 41:1 47:10 67:12 69:11 |
| **office** 67:16 68:18 | | **owe** 18:25 19:5,6 19:7,9 | |
| **official** 2:16 4:10 5:3 7:11 | | **owed** 18:24 20:13 24:8 | **party** 29:21 39:19 44:20,22 58:21 |
| **oh** 25:18 | | **owner** 55:21 | **party's** 44:11 |
| **ohio** 56:20 | | | **passage** 51:21 |
| **oil** 57:19 | | | **passed** 33:12 42:14 45:1 |
| **okay** 10:2 14:10 17:1 23:25 24:21 25:13,14 27:7,11 32:14 35:9 37:14 37:25 38:3,17,20 | | | |

[patterson - proceeds]

patterson 9:15 38:12
paul 3:2 8:13
pay 15:2 16:13 19:22,25 20:11,13 20:15 21:16,17,18 23:21 49:21 62:25
paying 20:6
payment 11:18 22:2 63:1
payments 20:10 62:23
pending 30:19,20 35:11 40:23 45:2 48:14 52:16 54:10 55:24 57:22,24,25 58:3,24 59:2,5 60:25 65:2 66:10 66:14
people 20:13 35:24 48:8
percent 11:22 14:14 19:3,6,6,8,8 19:23 20:3,12,15 20:15 21:17,17,17 22:4 29:9
perfect 13:20
perfectly 49:20
performance 67:25
period 2:11,19,20 3:7,17 4:13,15 5:6 5:7 14:3 15:5 19:12 36:10 45:1 52:1 59:9 61:4,15 66:16 67:21 70:20
periodically 10:9
periods 29:5 49:3
permission 37:13 38:16
perspective 50:19
petition 15:10 21:21 28:16,18,21

48:15 52:16
phrase 45:12
picture 33:16
piece 51:20
piper 9:1 38:6
pitch 53:7
place 41:20 43:15 46:6 47:15,18
plains 1:14
plan 24:9,25 25:3 30:22 33:12,18 34:1 36:17 68:18
play 22:8
plaza 8:10
pleadings 38:23
pleases 41:5
plus 62:24
pm 1:18 72:8
point 10:18 13:12 13:19 21:7 23:6 23:10 27:17 28:25 30:4,11 31:1,1,8 36:13 43:18 45:5 45:15 46:1,16 47:1,11 48:20 52:10 53:4 55:1,5 55:10,14,20 57:21 58:7 59:14,22 60:1,14,21 61:2,7 61:11 63:12 65:23 66:18 68:9 70:15 71:2,16 72:4
pointed 45:20
pointing 44:4 61:12
points 41:22 45:7 46:9 54:25
population 14:21
portion 29:2 36:3 36:19 40:6 49:9 54:1 65:25
portions 6:8 38:25 39:7

position 55:9
positive 17:5
possibilities 53:1
possibility 48:11 48:15
possibly 34:18
post 15:10 21:21 28:18,21 35:12 52:17
posting 52:14 66:16
pot 14:19 25:3
potential 16:16 17:9,24 29:8
potentially 53:5 68:4
power 22:25 55:3 58:20
practice 69:8
pre 11:4 19:4,15 19:18 21:14 22:14 28:15
predicted 34:1
preface 25:20
preference 12:15 12:25 13:2 34:8 35:20
preferences 18:1 18:18
preliminary 32:1 32:9 56:9
premature 30:13 30:20 55:2
premise 50:16 59:12
premised 54:25
premises 60:24
prepared 64:9
prepetition 15:13 15:21 16:17,24 21:20 28:15,21 35:1,4

presentation 10:24
presentment 20:24 22:9
preserve 14:3
preserving 26:21
pressed 56:2
pressing 66:23
presume 27:2
pretty 30:14 32:4 46:14,23 55:15 56:16 57:5
prevailed 41:12 63:8
prevented 50:13 67:22
previewing 21:1
primarily 10:5 16:1 18:3
primary 16:15
prime 2:9,12 32:15
prior 16:18 22:10 24:15 26:18 35:10 39:23 61:21
priority 14:25 16:17,25 21:20 24:22
pro 14:19 38:13
probably 21:7 38:20 53:14 60:8 62:12 68:15
problem 26:17 33:5 41:19 53:10
procedure 42:11 43:22,24 44:5,25 53:17 68:17
procedures 39:1
proceeding 6:17
proceedings 37:21 72:7 73:4
proceeds 17:17

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 107 of 117
[process - rehearing]                                                    Page 15

**process** 20:23
23:14 26:22 48:19
56:12,15 64:1,11
66:21 67:22
**producing** 32:10
**productive** 35:17
**professional** 2:14
3:1,4,7,11,14 4:8
5:1,7 27:2 31:7
**professionals** 26:3
28:4,12,20 31:1
31:11
**program** 22:2
**progress** 2:1
10:11 11:12 12:8
12:22 15:16 16:8
17:12 33:16,22
**prohibits** 54:19
**projected** 17:25
35:21,22
**promise** 13:21
**promises** 13:10
**promptly** 68:10
**pronounce** 56:19
**proper** 65:7
**properly** 36:7
59:4
**property** 49:10
51:20
**proposals** 26:23
**propose** 19:20
20:6,23 22:8
25:24
**proposed** 22:9
38:18 39:3 51:23
54:3 55:7,17
65:16
**proposing** 19:23
20:10
**proposition** 57:6
**prospective** 60:17
63:21

**protect** 44:18
**protracted** 13:10
**provide** 39:2
53:24 68:22
**provided** 36:16
**providing** 10:17
**provision** 47:25
49:12 61:24 70:15
**public** 39:12,16
**punchline** 11:11
**punchlines** 16:7
**purpose** 59:3
**purposes** 16:24
**pursue** 21:8 44:19
**put** 39:19 44:14
51:11,11 66:15
**putting** 61:23

**q**

**quarropas** 1:13
**quarter** 12:22
31:21
**question** 24:7
31:5 47:24 48:6
48:19 50:18 61:18
61:23 62:16 71:18
**questioned** 55:7
**questions** 17:2
18:5 23:3 24:1
26:2,12 37:12
**quinn** 8:15 37:8
**quite** 43:1 45:2
61:22 62:3,3
**quote** 43:8,23

**r**

**r** 1:21 7:1 10:1
73:1
**raise** 30:24 71:15
**raised** 45:9 46:1
67:20
**raises** 59:3,7
**raising** 30:7 32:1
**rancheros** 57:16

**range** 29:7
**rata** 14:19
**ratcliff** 57:16
**rates** 28:19
**ray** 57:14,19
**rdd** 1:3
**read** 32:3 42:8,23
42:24 44:3 49:12
53:6
**reading** 42:25
48:23
**real** 13:14 17:14
21:20 67:23 68:2
**realizing** 35:15
**really** 13:4 28:25
29:15 31:8 33:2
39:17 48:5 49:11
50:8 52:4 55:5,5
55:10,19 57:13
58:9 59:9 62:13
62:17 66:2,23,24
**realty** 57:14
**reason** 30:3 36:8
48:25 61:12 63:15
**reasonable** 49:25
59:13 60:16 70:3
70:4 71:3,16
**reasonably** 60:17
69:20
**reasoning** 59:24
**reasons** 42:16
**recall** 33:25
**receive** 11:17
**received** 10:13
12:16 17:19
**receiving** 14:12
**recognized** 20:8
61:3
**reconcile** 15:1
25:12
**reconciled** 13:3
13:16 24:24 25:2

**reconciliation**
24:25 25:6 35:5,5
**reconciling** 21:23
**reconsider** 47:6
**reconsideration**
48:10,12
**record** 41:8 48:22
54:1,2 73:4
**records** 16:19
31:5
**recoveries** 34:8
35:21
**recovery** 14:14
17:5 18:1 35:24
**redact** 40:4
**redacted** 39:12
**redacting** 39:7
**redactions** 39:4
**redirect** 69:10
**reduce** 15:5 21:22
22:6
**reduced** 13:7
34:24
**reducing** 16:8
**reduction** 17:7
29:14
**reductions** 30:9
**refer** 40:2 45:19
46:5
**references** 48:3
**referring** 24:14
64:14
**refers** 48:1
**reflected** 24:18
**reflects** 67:2
**refuse** 13:21
**regard** 10:12
24:22 25:8
**regarding** 26:18
63:9
**regardless** 48:4
**rehearing** 41:16
41:17 42:10,13

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 108 of 117
[rehearing - s&e]                                                                Page 16

43:3,6,16 44:20
48:9,11
**reimbursement**
2:5,10,18 3:5,15
4:12 5:5
**rejected** 65:17
**related** 4:4,22
5:14,22 6:3 13:25
36:4 37:21 38:23
42:9 47:23 52:10
52:19
**relation** 27:15
**relatively** 23:8
**release** 37:2
**relevant** 40:4
**relief** 6:3 39:7
48:16 50:14 58:22
61:25 64:8,13
**relies** 56:25 57:5
**reluctant** 53:1
**relying** 16:23
47:16
**remain** 13:5,18
15:13 17:11 20:1
20:13 22:20 41:20
47:14
**remainder** 68:5
**remained** 43:15
44:24 49:19
**remaining** 12:19
15:7 17:10,14,19
20:14,16 21:9
36:3
**remains** 21:10
23:14 47:18
**remand** 48:11
**remands** 59:2
**remarks** 56:6
**remind** 28:10
**remote** 68:16
**remotely** 10:5
68:16

**removal** 48:11
**remove** 13:24
**removed** 15:9
62:17
**rendered** 2:10,18
3:5,14 4:12
**reopen** 39:15
**rep** 19:19
**repeat** 43:22
**reply** 24:16 40:23
45:11,12 53:11
56:24 57:4
**report** 10:11,17
11:4,8,11,25 12:5
15:16 17:6 18:3
23:4 26:5,6,14,20
28:13 33:15
**reports** 30:17
32:1,9
**represent** 6:16
**representation**
6:14
**representative**
8:16 11:6,7 22:15
37:10
**representatives**
25:6
**representing** 38:6
**reprise** 27:12
**request** 25:25
27:4 57:2 58:16
59:9 61:7
**requested** 36:20
47:8
**requests** 31:21
**require** 59:15
**required** 49:9
62:22
**requirement** 71:5
**requirements**
54:13
**requires** 65:23

**reservation** 32:20
**reserve** 14:7,8,9
18:16 33:4
**reserved** 33:5
**reserves** 16:8 17:7
22:23
**resolution** 48:2,3
48:23 70:18
**resolve** 16:5
**resolved** 13:17
**resolving** 12:7
15:17 17:8 21:5
**resources** 21:4,10
**respect** 17:17
24:16,20 25:10
37:12 44:21 59:9
**respond** 59:21
**response** 5:22
40:22 45:10
**responses** 25:22
**rest** 45:15
**result** 12:15 17:8
18:3,9 19:11
22:21,21 23:1
42:6 68:10
**resulted** 41:16
**resulting** 48:12
**results** 16:4,21
**retained** 6:16
**rethink** 47:6
**retiree** 24:24 25:5
**retirees** 14:22
**returns** 13:12,20
**revenue** 5:19,24
**reverse** 58:13
**review** 26:23
**reviewed** 25:16,20
26:4 32:18 33:3
38:23 39:3
**revolving** 12:8
**richard** 6:4,10
**rid** 15:15

**right** 12:18 16:12
25:14,18 29:17
31:4 35:20 38:7
40:24 44:9 45:16
47:9 49:22 51:5,7
51:10 52:2,21
54:23 56:5 60:6
60:11 61:10,16
62:14,23 63:19
65:10,12,16 66:12
67:20,21 68:25
71:23
**rights** 26:19 32:20
33:4,5 36:6 49:6
**risk** 52:14
**rivera** 56:18
**road** 73:21
**robert** 1:22 9:6
**rockefeller** 8:10
**room** 1:13
**roughly** 19:24
**rule** 40:15 43:21
44:5,25 48:14
53:2,16,17 54:1
55:3 57:11 58:2,3
58:21 62:12,13
65:25 67:10
**rules** 41:21 42:11
53:10
**ruling** 29:8 45:13
51:17 53:13,18,20
53:22 55:9,14
59:20 60:18 65:25
70:22
**run** 49:16 50:13
60:3 66:20
**running** 71:12,13
**runs** 54:12 66:25

|  |
|---|
| **s** |

**s** 4:4,22 5:14,18
5:22 7:1 10:1
**s&e** 66:6

**sabine** 57:19
**sara** 7:15 24:11
**satisfied** 11:21,23
  20:2 49:5 51:24
  54:13,15 62:3
  65:9
**satisfy** 19:25 49:3
  52:4 61:24
**savings** 21:13
**saying** 44:22 51:2
  51:2 52:5 59:10
  63:22
**says** 24:8 41:20,23
  43:2 45:13,18
  51:24 57:7 58:21
  59:4 62:2 63:8
  64:16
**scenes** 12:13
**schedule** 32:10
  65:14 67:14 68:13
**scheduled** 6:19
  65:19
**schedules** 36:23
**scheduling** 68:11
**screen** 10:6 26:13
**sdny** 57:15,20
**seal** 6:7,8 38:25
  40:1
**sealing** 39:5,11
  40:6,9
**sears** 1:7 5:4 10:3
  72:3
**second** 14:4,5,11
  16:2,4 40:21
  41:18,21 42:2,17
  44:3,7,11,13,21
  45:3,14 46:7,13
  46:21 49:7 51:14
  53:13 54:6 55:4
  55:23 61:3,5,13
  64:25 68:21
**section** 11:16 15:3
  15:4 36:11 48:1

49:7 52:20 62:17
**secured** 14:24
  16:1 36:16
**see** 10:23 11:14,19
  11:19,20,25 12:3
  12:5,24 13:6 14:1
  15:14,14 16:4,12
  17:20,24 31:22,25
  32:18 34:15 36:8
  38:7 52:3 62:10
  63:4 64:10 70:8
**seeing** 17:13
**seek** 56:1
**seeking** 39:15
  48:16 64:8,13
**seeks** 54:24 61:22
  66:1
**seen** 38:14 51:12
  54:14
**sell** 52:23
**sending** 46:6
**sense** 23:22 32:4
  50:15 53:16 60:6
**sent** 38:21
**sentence** 45:7
**separate** 29:12,13
  30:7 43:18,19,25
  50:7 63:2,5 64:5
  69:15 71:14
**separately** 11:5
**september** 33:1
  51:12 58:8
**service** 18:19
**services** 2:10,18
  3:4,14 4:12
**set** 29:5 32:25
  43:18,25 53:11
  71:12
**settle** 13:21
**settlement** 14:17
  35:25
**settlements** 12:15
  12:16 17:9

**seven** 13:18
**severance** 15:18
  15:20,21 25:9,11
**severed** 15:21
**share** 14:17,19
  25:4
**sheppard** 8:8
**short** 32:10 56:5,7
**shortly** 14:15
  36:24 38:21
**show** 6:13 37:21
**showed** 28:13
**showing** 16:11
  17:5,7
**shown** 15:8
**shows** 15:12 17:9
  18:14
**side** 12:19
**signature** 73:6
**signed** 6:13 49:9
  60:5
**significant** 19:2,4
  19:10 35:18
**signing** 72:3
**similar** 32:25
**similarly** 63:3
  67:3
**simple** 36:15
**simply** 34:20 40:2
**sit** 23:10
**sitting** 61:9
**situation** 57:13
  67:18 68:1
**six** 34:1 36:23
**sixth** 2:15 57:7
**size** 27:14,21
  31:20
**slightly** 16:11,14
  18:2,2
**small** 12:12 23:8
**smaller** 30:21
**solutions** 73:20

**solve** 53:9
**someone's** 39:15
**sommer** 5:23
**son** 6:15 37:23
**sonya** 6:25 73:3,8
**sorry** 14:6 25:19
  29:20,23 30:1
  37:5,6 40:19
  53:21 58:14 64:12
**sort** 27:16 57:5
  71:4
**sought** 39:7 44:13
  61:5
**sounds** 51:2 53:5
**sources** 35:23
**southern** 1:2
**sown** 35:10
**space** 49:20
**spahr** 3:3 8:1
  26:11
**speak** 13:8
**speakers** 29:22
**special** 2:16,20
**specifically** 24:20
  49:4
**speedy** 57:3
**spending** 25:7
**spent** 15:4 60:7
**staffing** 32:6
**stage** 31:22
**stages** 32:13
**stand** 27:10
**standards** 36:11
**standing** 47:15
**standstill** 34:11
**start** 10:10,11
  11:2,14 48:18,18
  54:21 69:25
**started** 12:12
  13:14
**starting** 50:11
  70:21

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 110 of 117
[state - think]                                                                   Page 18

state  22:8 59:1,3,6
  63:1 66:3
state's  22:15
statement  2:8
  25:20 56:25
states  1:1,12
  56:17
statistics  19:14
status  2:1 10:11
  10:13,14,17 11:15
  23:4 26:5,20
  33:15
stay  38:1 40:15
  42:6 43:13,15
  44:4,12,24 45:22
  45:24 46:15 47:7
  47:8 48:11,14
  50:15 52:12,13,17
  52:18 53:2,14
  57:2,9,24,25 58:3
  58:15 64:1 65:2
  66:14,15,17 67:10
  71:4
stayed  45:18
  55:25
stays  46:4 54:7
step  56:12
steps  29:18 71:21
stipulated  47:10
stipulation  41:1
  41:13 42:19 44:4
  44:15 47:14,18
  48:5
stopped  31:12
  46:10
stopping  21:25
strauss  4:9,14,16
street  1:13 8:3,17
  9:3
strong  43:22
  46:14
stuck  34:19

subject  12:25 13:1
  13:17,25 18:17
  35:4,4 39:14
  49:10 58:10,11
sublease  44:19
  47:24 48:7,18
  51:25 52:15,24
  60:5,6 63:3 66:8,9
  67:23 70:15 71:13
subleases  44:19
submit  20:23
  36:22 49:5 69:13
submitted  10:8
  51:13 55:11
substance  13:5
  36:11 41:12 62:4
substantial  30:18
  30:19 59:3,7
substantially
  31:12
subtenant  40:3,3
  55:7 60:9,10,17
  62:16 63:21 64:17
  64:18 65:17 70:19
  70:21
subtenant's  55:12
  55:17,18
suggest  21:11
suggesting  23:6
  46:25
suggestion  43:23
suitable  60:10
  66:21
suite  73:22
sullivan  8:15
summary  42:18
support  19:17
  20:20 21:14 22:4
suppose  44:10
  54:6
supreme  23:18
  54:7

sure  10:16 23:5
  26:3 30:14 31:6
  31:13 33:2,6
  47:23 54:11 55:13
  57:11,12 59:19
  61:18 62:12 69:19
symbol  70:8

**t**

t  73:1,1
t'd  62:13 67:8
table  59:20
take  25:1 28:5
  50:3 51:19 56:14
  57:10 65:21 68:12
  69:8 71:6,22
takes  54:8 70:18
talk  42:3 50:20
talking  29:23
  34:23
talks  47:25
tap  36:18
tarter  7:17 24:4
  33:9
tasks  27:16
tax  15:18,25
  16:25 21:20 33:19
taxes  15:4,10
  16:17 18:3 35:1,4
  62:24,25
taxing  16:20
  21:19
telephone  10:7
telephonically  7:8
  7:15,22 8:6,13,20
  9:6,13,20
tell  64:25
telling  50:19
  66:19 67:17
tellingly  56:19
tenant  55:8 59:14
  63:21 65:17 66:7
  66:8,9,12,25 67:3
  67:19,23 70:16

tenants  50:20
term  47:25 48:7
  49:15
terminate  41:23
terms  13:15 17:11
  17:22 28:19 47:13
  60:1 61:17 62:15
testimony  50:1,3
  69:9,14
thank  10:19 11:8
  18:8 25:13,24
  28:9 36:21 38:2,9
  40:11 45:6 68:7
  68:20 71:17,23,24
  71:25 72:1,5,6
thanks  10:22
  24:21 25:14 27:7
  38:8 72:4
that's  52:2
they're  10:6
thing  40:13 62:11
  66:8
things  47:17,19
  52:13 53:6 58:17
  60:1 63:6 71:6
think  13:8 20:17
  20:24 21:16 22:5
  23:17,23 27:19,25
  28:5,23 29:6,12
  30:13,20 31:2,22
  31:23,24 32:18
  35:17,18,24 37:17
  37:19 39:16,25
  40:5 41:9 42:2
  46:10,14,18 47:6
  49:13,24 52:3
  53:7 55:9,14,15
  56:10,11,14,15,18
  57:4,8 58:6,10,11
  58:17,19 59:8
  61:22 62:11,12,13
  62:18 63:13 64:2
  64:5,23 65:13,13

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 111 of 117
[think - view]                                                                    Page 19

65:22 66:3,13
67:1,4,9,12,15
68:8,9,20 70:7
71:2,8,18 72:2
**thinking** 59:21
**third** 18:25 34:22
**thirds** 19:7
**thought** 28:9
32:12 39:24 43:15
53:17 71:12
**thoughts** 53:25
56:9
**thousands** 13:14
**three** 25:21 34:17
36:9 46:10 47:16
47:20
**threshold** 22:4
**ticket** 30:19 36:2
**tie** 17:23
**tied** 36:3
**tiktin** 4:5,23 5:15
**time** 10:10 11:9
16:12,14 17:10,15
20:9 21:11 24:16
25:7 31:5 33:1,8
34:21 35:24 40:22
42:14 45:1,2,20
45:25 49:3,25
51:6,21 52:1,11
54:4,10 59:13
60:5,8,14,14
61:15 65:20 66:21
68:14 69:18,18
70:3,4,16,19 71:3
71:16
**time's** 12:6
**timeline** 53:16
70:17
**timely** 58:22
**times** 30:4
**timing** 56:2
**tired** 35:8

**tobey** 8:6 26:10
**today** 10:24 18:25
23:4,17 27:24
37:24 38:16,22
40:2 48:25 61:7,9
62:13 64:9 65:19
65:23 69:6 70:22
71:1 72:3
**today's** 10:13
11:11 40:4
**today's** 10:4
**told** 34:9
**top** 11:16 31:23
**total** 12:19 13:16
17:19 21:25
**track** 12:19
**tracking** 21:23
**transaction** 70:5
**transcribed** 6:25
**transcript** 33:3
40:7 49:14 52:20
53:25 68:10,23
69:20 73:4
**transfer** 48:10,12
**transform** 6:4,7,9
6:10 9:2 22:22
37:19 38:4,6
40:22 44:16 45:21
45:25 47:16,19
49:24 52:10 59:13
60:4,22 61:5,22
62:2,24 63:7,8
64:3 66:4,7 68:1
**transform's** 38:24
43:16
**transforms** 43:3
**tremendous** 16:7
18:22
**trial** 49:2 57:3
**tried** 39:6
**trouble** 27:9
**true** 69:24 73:4

**trust** 24:19 30:14
35:13
**try** 21:3 28:6 30:9
56:19
**trying** 13:20
**turned** 26:13
35:16
**turning** 27:9
**two** 11:14 15:3
19:7 28:23 29:23
30:2 42:11,16
45:8 49:4,14,25
50:3,3,11,12,18
50:21,22,22,23
51:3 52:1,18,22
53:5,9 54:4,4,20
58:9,19 59:9,12
59:12,22 60:2,7
60:21 61:3,15,24
62:24 63:13,16
66:5,10,16,19,20
66:25 67:18,19,21
68:3 69:21,22,24
70:22
**tyler** 9:15
**type** 50:14 55:8
62:11 68:23
**types** 39:14

**u**

**u** 56:20,20
**u.s.** 1:23
**ucc** 11:6 19:18
22:15 27:5
**uequhart** 8:15
**ultimately** 29:2
30:5 48:16,19
**uncertain** 16:21
**uncertainty** 36:3
**underlying** 36:9
40:12
**understand** 41:10
46:22 50:10 53:4
53:8 59:23 60:19

61:1 63:12,12
64:24 65:3 70:22
71:19
**understood** 23:6
70:6 71:17
**united** 1:1,12
56:17
**universe** 15:1
**unknown** 16:21
**unpaid** 29:4
**unredacted** 39:2,4
**unresolved** 13:19
**unsecured** 2:17
4:11 5:3 7:11
14:24
**update** 2:1 10:13
10:14 23:25 26:7
26:14 35:10
**updates** 35:10
**updating** 21:24
35:3
**usc** 43:10
**useful** 58:17
**uses** 17:25

**v**

**v** 43:10 56:17,20
57:4,16
**vacated** 42:10
**vacating** 43:4
**valid** 44:24 63:10
**valuable** 51:18
**various** 17:13
20:20 22:5 28:11
42:11 48:24 52:13
58:17
**vast** 12:2 20:2
**veritext** 73:20
**versions** 39:12,12
**versus** 37:23
**vice** 38:14
**video** 27:9
**view** 26:8 27:13
29:7,16 41:6,9

18-23538-shl Doc 10284-2 Filed 02/04/22 Entered 02/04/22 15:56:09 Emergency
Motion to Clarify Certain Issues Pending MOACs Petition for Wri    Pg 112 of 117
[view - zoom]                                                                                          Page 20

42:16 46:3 58:19
58:21
**viewed** 52:21 71:7
**virtue** 69:23
**visa** 52:11
**vowed** 23:15

**w**

**wait** 21:9
**walk** 11:1,12
**wander** 7:22 24:3
24:3,7,13,22 25:8
25:13 33:3,9,9
35:20
**want** 23:5 25:5
29:17,24 30:25
31:6,13,14 37:22
40:13 45:4 51:19
52:9 54:9 56:5,6,8
59:17,20 63:15
64:17 65:18 67:8
68:11 69:4,16,19
70:22 71:1,6,7
**wanted** 26:12
30:24 34:13 44:14
59:19 62:25 71:10
**wants** 21:10 57:11
61:18,19 65:21
66:15
**warrant** 29:9
**warranted** 27:17
**washington** 8:18
**waterfall** 17:4
**way** 20:25 21:2
24:10 42:4,8
48:22
**ways** 18:23 22:16
**we've** 10:9 11:15
13:9,16 15:14,16
15:23 20:2,2
32:21 34:24 35:5
44:19 49:5 51:24
54:13,15

**webb** 9:15
**weeks** 11:3 50:22
**weil** 3:12,17,19
4:3,21 5:13 7:3
10:20 25:22 26:25
27:1 28:8,9 32:23
**went** 33:3
**we're** 10:3
**white** 1:14
**widowers** 14:22
**widows** 14:22
**wilmington** 8:4
9:4
**win** 58:3
**winimo** 57:14
**withhold** 18:17
**witness** 69:10,14
**woman** 72:1,6
**wondering** 37:10
**word** 46:19
**work** 14:2 15:4
22:13 27:14 28:17
28:18 31:10 35:12
35:17,17 36:9,13
69:4
**working** 19:15
**worried** 30:6 49:4
**worry** 52:1
**worst** 55:3
**worth** 31:2
**write** 53:23
**writing** 68:23
**written** 69:21
**wrong** 59:11

**x**

**x** 1:4,10

**y**

**y** 56:20,20
**yeah** 42:1 51:16
53:21 59:19 62:21
70:1,12,13
**year** 34:12 49:15
50:23 51:12 52:1

52:18 54:4 58:9
58:19 59:9,12,22
61:4,15,24 62:24
62:24 66:5,16,19
67:18,21 69:21,22
**years** 49:16,21,25
50:3,4,11,12,18
50:21,23,23 51:3
52:23 54:4,9
59:13 60:2,7,21
63:16 66:10,20,25
68:3,4 69:24
70:23
**york** 1:2 7:6,13,20
8:11 9:18

**z**

**zoom** 6:20 10:5
38:12

# No. 20-1846(L); 20-1953(XAP)

In The

## United States Court of Appeals
## for the Second Circuit

In Re: Sears Holdings Corporation,                    *Debtor*

MOAC Mall Holdings LLC,

*Appellant-Cross-Appellee,*

v.

Transform Holdco LLC,

*Appellee-Cross-Appellant.*

On Appeal from the United States District Court
for the Southern District of New York

**DECLARATION OF D. SCOTT CARR IN SUPPORT OF TRANSFORM'S
EMERGENCY MOTION TO CLARIFY CERTAIN ISSUES PENDING MOAC'S
PETITION FOR WRIT OF CERTIORARI**

I, D. Scott Carr, declare under penalty of perjury:

1.     I am currently employed by Appellee-Cross-Appellant Transform Holdco LLC ("Transform") as President – Real Estate. I have held this position since March 2020. Except where noted, I have personal knowledge of the matters set forth below. I respectfully submit this declaration (this "Declaration") in support of Transform's motion to clarify.

2.     I have 32 years' experience in the commercial real estate markets, particularly relating to the leasing and marketing of retail spaces and spaces in shopping centers. I have prior experience including direct leasing and oversight of the entire leasing function for a portfolio of 165 retail shopping centers totaling more than 16,000,000 square feet.

3.     Since the bankruptcy court entered its September 5, 2019 order authorizing the sale of Sears' lease at the Mall of America in Bloomington, Minnesota, Transform has engaged in substantial marketing efforts to locate a subtenant to occupy portions of the premises pursuant to the two-year deadline included within the bankruptcy court's order. I was personally involved in some of these efforts and supervised the efforts of others

2

working on Transform's behalf. Finding retailers willing to lease a large space in a shopping mall was already a challenging process in late 2019 due to market conditions affecting brick and mortar retailers. Those challenges were exacerbated by the COVID-19 pandemic and its implications for indoor in-person shopping.

4. Early in 2021, after approximately 18 months of searching, Transform made significant progress in locating a major retailer seriously interested in subleasing one of three floors in the space and later entered into a sublease with the subtenant.

5. Given MOAC's ongoing litigation with Transform, the subtenant required comfort that it would be able to remain in the space. Thus, the sublease includes a litigation contingency clause to this effect.

6. The litigation contingency clause delays the effectiveness of the sublease until a "Critical Determination" has been made that: "(i) the Master Lease Assignment is fully valid and enforceable," (ii) the Sublease "is a valid and enforceable sublease under [the] Master Lease," (iii) the Sublease "constitutes a sublet as contemplated under" the Second Circuit stay order,

3

and "(iv) the ROFR Resolution Date . . . has occurred in connection with this Lease." The Sublease also has a provision that if the Litigation Resolution or the ROFR Resolution have not occurred within 270 days after the day the Sublease was executed on November 2, 2021, then either Transform or the Subtenant can terminate the Sublease, unless they agree otherwise.

7.      On November 4, 2021, Transform sent notice to MOAC of the right of first refusal as required by the bankruptcy court 's order and the master lease. In the notice, Transform provided the executed sublease and offered MOAC the right to sublease the space from Transform at the same price, terms, and conditions.

8.      On December 17, 2021, MOAC responded to the notice, rejecting the right of first refusal and stating that they objected and did not consent to the sublease.

Pursuant to 28 U.S.C. § 1746, to the best of my knowledge, information and belief, and after reasonable inquiry, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  February 4, 2022
      Hoffman Estates, IL

                                           D. Scott Carr