UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
In re                                                        :
                                                             :    Chapter 11
**SEARS HOLDINGS CORPORATION**, *et al.*,                    :
                                                             :    Case No. 18-23538 (RDD)
                                                             :
            Debtors.[1]                                      :    (Jointly Administered)
------------------------------------------------------------ x

### FORTIETH MONTHLY FEE STATEMENT OF M-III ADVISORY PARTNERS, LP FOR COMPENSATION EARNED AND EXPENSES INCURRED FOR PERIOD OF JANUARY 1, 2022 THROUGH JANUARY 31, 2022

1. In accordance with the *Order Authorizing Debtors to Retain M-III Advisory Partners, LP to Provide a Chief Restructuring Officer and Certain Additional Personnel for Debtors Nunc Pro Tunc To Commencement Date* [ECF No. 814] (the "**Retention Order**"),[2] M-III Advisory Partners, LP ("**M-III**") hereby submits its fortieth monthly report (the "**Monthly Report**") on compensation earned and expenses incurred for the period commencing on January

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is c/o M-III Partners, LP, 1700 Broadway, 19th Floor, New York, NY 10019.

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the Retention Order.

1, 2022 through and including January 31, 2022 (the "**Reporting Period**"). During the Reporting Period, M-III incurred total fees and expenses of $545,463.72, comprised of $545,033.00 of fees and $430.72 of expenses.

2. During the Reporting Period, M-III provided services central to the Debtors' restructuring process, including:

   a. Chief Restructuring Officer: Mohsin Y. Meghji in his role as Chief Restructuring Officer, continued to provide day-to-day oversight regarding issues including but not limited to: cash/liquidity management, the resolution of post-closing disputes with the Buyer, post-asset sale matters, and other Chapter 11 reporting requirements, as well as supervising all activity by the M-III team.

   b. Asset Disposition: On an ongoing basis, M-III also assisted the Debtors in matters related to the India and Hong Kong entities foreign cash valuation, including the ongoing work related to the India tax returns.

   c. Business Operations: On an ongoing basis, M-III assisted the Debtors with issues related to operating as a debtor-in-possession operating in chapter 11 including addressing an issue related to an individual attempting to change the Debtors' officers and directors and related contact information in the state of California, and negotiating with a former customer to settle a past due debt owed to the Debtors. M-III also prepared numerous accounts payable requests and maintained reporting for non-real estate accounts payable. M-III also sent creditors payment confirmations. M-III also reviewed pre-petition and post-petition invoices submitted from various creditors outside of the proofs of claim process to determine if the invoices related to the Debtor or the Buyer and responded to the creditor. M-III assisted the Debtors in responding to an audit confirmation for a restructuring professional.

   d. Case Administration: On an ongoing basis, M-III advised and assisted the Debtors with respect to internal and external communications planning and documentation. M-III also completed analysis and assisted the Debtors on various motions. M-III also prepared for and participated in strategic meetings with Debtors' counsel. M-III also assisted the Debtors regarding addressing issues related to the Effective Date. M-III also prepared an update presentation to the Bankruptcy Court and attended the Bankruptcy Court hearing.

   e. Claims Administration and Objections (Other Than Governmental Units, Real Estate, Priority and Secured Claims): M-III advised and assisted the Debtors with reconciling the Administrative Expense Consent Program Non-Opt-Out Group for administrative claimants that filed an Opt-In Ballot and were not part of the initial, second, and third distribution, filed a Non-Opt-Out Ballot or did not respond to ballot solicitation. This included reconciling the creditors amounts to the

company's books and records and negotiating with creditors. M-III also responded to numerous inquiries from creditors regarding the Administrative Expense Consent Program Ballot and the claims reconciliation process. M-III also prepared omnibus objection exhibits and certificates of no objections to proofs of claim and ballots. M-III also continued reviewing Opt-Out Ballots in comparison to the Debtors' books and records. M-III also prepared omnibus objection exhibits to Opt-Out Ballots. M-III also continued to assist in settlement negotiations with creditors and Debtors' counsel. M-III also revised various sensitivity analysis reports related to the potential fourth distribution. M-III also continued to maintain reporting and tracking related to the Administrative Expense Consent Program Ballot and the claims reconciliation process.

f. <u>Claims Administration and Objections (Governmental Units)</u>: M-III advised and assisted the Debtors with reconciling the administrative and priority tax claims related to governmental units. This included reconciling the creditors amounts to the company's books and records and negotiating with creditors. M-III also responded to numerous inquiries from creditors regarding the claim's reconciliation process. M-III also prepared omnibus objection exhibits and certificates of no objections to proofs of claim. M-III also continued to maintain reporting and tracking related to the claim's reconciliation process.

g. <u>Claims Administration and Objections (Priority Non-Tax Claims)</u>: M-III advised and assisted the Debtors with reconciling the priority non-tax claims. This included reconciling the claim amounts to the company's books and records and negotiating with creditors. M-III also prepared omnibus objection exhibits and certificates of no objections to proofs of claim. M-III also assisted the Debtors in settlement negotiations with creditors and Debtors' counsel. M-III also continued to maintain reporting and tracking related to the priority non-tax claims reconciliation process.

h. <u>Claims Administration and Objections (Secured Claims)</u>: M-III advised and assisted the Debtors with reconciling the secured claims including employee, life insurance and other claims asserting a secured claim that lack a valid security interest. This included reconciling the claim amounts to the company's books and records and negotiating with creditors. M-III also prepared omnibus objection exhibits and certificates of no objections to proofs of claim. M-III also assisted the Debtors in settlement negotiations with creditors and Debtors' counsel. M-III also continued to maintain reporting and tracking related to the secured claims reconciliation process.

i. <u>Corporate Governance and Board Matters</u>: On an ongoing basis, M-III prepared for and participated in meetings of the Restructuring Committee of the Board.

j. <u>Employment and Fee Applications</u>: M-III prepared its monthly invoice in compliance with its retention order. M-III also coordinated with the Debtors to submit professional fee invoices including payments in accordance with the Interim Fee Order and updated the professional fee reporting.

k. <u>Estate Tracker Reporting</u>: M-III also prepared weekly reports to illustrate cash flows and liquidity as compared to the forecast including related methodologies, as well as cash management planning. M-III distributed the Estate Tracker Report to the Restructuring Committee and Pre-Effective Date Committee and addressed questions.

l. <u>Insurance and Damage Claim Processing and Management</u>: On an ongoing basis M-III assisted the Debtors in the pursuit of various damage and insurance claims where the Debtors are the plaintiff. This included managing outside counsel and the collection of settlement proceeds. M-III also assisted the Debtors in managing general liability claims and legal cases where the Debtors are the defendant. M-III also worked with the Debtors' insurance claims processing agent, to manage these claims and cases.

m. <u>Litigation</u>: M-III continued to review and analyze updates related to the Calder Sculpture. M-III also assisted with litigation matters to enforce the APA related to the foreign entities cash litigation. M-III also assisted with litigation matters being handled by various Ordinary Course Professionals.

n. <u>Litigation Trust</u>: M-III assisted the Debtors in analyzing how receipt of the shareholder Litigation Trust funds should be accounted and reported for accounting and tax purposes.

o. <u>Meetings and Communications with Creditors</u>: On an ongoing basis, M-III prepared for and participated in meetings and teleconferences with the Official Committee of Unsecured Creditors and their respective advisors.

p. <u>Meetings and Communications with Restructuring Committee</u>: On an ongoing basis, M-III prepared and participated in meetings and teleconferences with the Debtors' Restructuring Committee.

q. <u>Meetings and Communications with Pre-Effective Date Committee</u>: On an ongoing basis, M-III prepared and participated in meetings and teleconferences with the Debtors' Pre-Effective Date Committee.

r. <u>Non-Debtor Entities Remaining with the Debtors</u>: On an ongoing basis, M-III assisted the Debtors with accounting and other matters related to SHC Israel Ltd. and Sears Holdings Mauritius Holding Company. M-III also assisted the Debtors in preparing and participating in meetings and teleconferences regarding the orderly winddown of SHC Israel Ltd.

s. <u>Ordinary Course Professionals (OCP)</u>: On an ongoing basis, M-III assisted the Debtors with reviewing and preparing the OCP invoices for payment in accordance with the OCP Motion, maintained respective reporting and sent payment confirmations. M-III also continues to work with the Debtors to resolve other legal non-OCP invoices and matters related to the case. M-III also worked with various law firms to gather and review the forms to be retained as an OCP. M-III also

        assisted the Debtors with quarterly reporting related to the Ordinary Course Professionals.

t.    <u>Preference Analysis</u>: On an ongoing basis, M-III continues to work with the preference firms to support the preference project across the engaged firms including providing the Debtors' resolution amounts and priority type for numerous proofs of claim, following up with the Debtors on inquiries related to the resolution of preferences and providing supporting documentation. M-III also reviewed settlement agreements and provided comments where applicable. M-III also updated the Debtors reporting and claims register to reflect proofs of claim that were settled. M-III also reviewed and analyzed the settlement results and cash remittances to the forecast. M-III also assisted the Debtors in monitoring and reporting related to the disputed preference claims.

u.    <u>Real Estate – Claims Administration and Objections</u>: On an ongoing basis M-III assisted the Debtors with reviewing and reconciling the administrative and priority claims and ballots related to real estate. M-III also assisted the Debtors with preparing the omnibus objections to proofs of claim and certificates of no objection exhibits. M-III also continued to assist in settlement negotiations with creditors and Debtors' counsel including updating the interest from the county websites, phone calls and email correspondence for administrative claims. M-III also continued to maintain reporting and tracking related to the real estate claims reconciliation process.

v.    <u>Real Estate – Property Management</u>: On an ongoing basis, M-III assisted the Debtors in the management of its real estate assets and related accounts payable.

w.    <u>Real Estate – Property Taxes Payable by the Estate</u>: On an ongoing basis, M-III assisted the Debtors in analyzing property tax bills presented for payment to determine what amount, if any, is owed by the Debtors or potentially other parties.

x.    <u>Real Estate – Unencumbered Real Estate Sales & Analysis</u>: On an ongoing basis, M-III assisted the Debtors in due diligence, analysis, reporting, marketing, and monetization related to the unencumbered real estate. M-III worked closely with the Debtors to list, market and sell unencumbered assets to a variety of real estate investors. M-III also assisted the Debtors with the analysis of unencumbered properties with a view towards selling these assets in a timely manner for favorable prices.

y.    <u>Reporting</u>: On an ongoing basis, M-III assisted with matters related to the US Trustee, assisted the Debtors with accounting related items including but not limited to, preparing monthly bank reconciliations, reviewing monthly financial statement accounts and monthly reporting for the Post-Confirmation Corporate Quarterly Operating Report and the Post-Confirmation Corporate Quarterly Operating Report. M-III also continued to update professional fee reporting.

5

z. **Tax Issues**: On an ongoing basis, M-III assisted the Debtors with following up with various states regarding the status of the Sales and Use Tax refunds. M-III also assisted the Debtors with two officer notices for two former officers with the State of Illinois including numerous phone calls with the State of Illinois, completing additional forms and memo for the protest and request for administrative hearing. M-III also assisted the Debtors in gathering information and evaluating potential tax recoveries related to Sales and Use Tax and Payroll Tax. M-III also addressed numerous tax letters and tax liens from various taxing authorities related to pre-petition amounts. M-III assisted the Debtors in preparing supporting information for 1099-NEC's.

aa. **Unclaimed Funds**: On an ongoing basis, M-III assisted in the unclaimed funds process and followed up with the Debtors on inquiries related to additional information regarding unclaimed funds. M-III also liaised with a financial institution to gather the information and supporting documents to obtain a Medallion Signature Guarantees. M-III also assisted the Debtors by preparing letters to follow-up on reimbursement of outstanding credits to be refunded back to the Debtors.

3. **Exhibit A** attached hereto includes a summary of fees and expenses and a list of the personnel that provided services to the Debtors during the Reporting Period, their respective titles, their respective billing rates, the aggregate hours spent by each individual, and the total compensation earned by each individual.

4. **Exhibit B** attached hereto is a breakdown of the reasonable expenses incurred by M-III during the Reporting Period.

Dated:   February 7, 2022
         New York, New York

By: /s/ *Mohsin Y. Meghji*
Mohsin Y. Meghji
Managing Partner
M-III Advisory Partners, LP
1700 Broadway,
19th Floor
New York, NY 10019

WEIL:\98226163\2\99910.F766

**Exhibit A**

WEIL:\98226163\2\99910.F766

**Case No.: 18-23538 (RDD)**
**Case Name: Sears Holdings Corporation**
**M-III Advisory Partners, LP**
January 1 Through January 31, 2022

**Summary of Compensation Sought for the Reporting Period**

| TOTAL HOURS | TOTAL FEES | TOTAL EXPENSES | TOTAL COMPENSATION | MONTHLY COMPENSATION FEES (100%) | MONTHLY COMPENSATION EXPENSES (100%) | TOTAL MONTHLY COMPENSATION |
|---|---|---|---|---|---|---|
| 789.0 | $545,033.00 | $430.72 | $545,463.72 | $545,033.00 | $430.72 | $545,463.72 |

2

**Case No.: 18-23538 (RDD)**
**Case Name: Sears Holdings Corporation**
**M-III Advisory Partners, LP**
January 1 Through January 31, 2022

**Summary of Hours Billed by Professional**

| Employee Name | Title | Total Hours | Rate (a) | Total |
|---|---|---|---|---|
| Meghji, Mohsin | Managing Partner | 12.5 | $1,225 | $15,312.50 |
| Gallagher, William | Managing Director | 6.1 | $1,050 | 6,405.00 |
| Griffith, Brian | Managing Director | 45.8 | $1,050 | 48,090.00 |
| Murphy, William | Senior Director | 121.8 | $875 | 106,575.00 |
| Korycki, Mary | Director | 222.7 | $850 | 189,295.00 |
| Acevedo, Enrique | Director | 1.2 | $750 | 900.00 |
| Detrick, Andrew | Vice President | 95.9 | $675 | 64,732.50 |
| Kim, Tyler | Senior Associate | 1.1 | $575 | 632.50 |
| Flanagan, Tomas | Associate | 17.4 | $495 | 8,613.00 |
| Coletta, Timothy | Analyst | 194.7 | $395 | 76,906.50 |
| Dotson, Kimberly | Analyst | 1.8 | $395 | 711.00 |
| Morris, Paul | Analyst | 45.4 | $395 | 17,933.00 |
| Ramnani, Ravi | Analyst | 5.0 | $395 | 1,975.00 |
| Urena, Amanda | Analyst | 17.6 | $395 | 6,952.00 |
| **Total** | | **789.0** | | **$545,033.00** |

**Note:**
(a)  The billing rate reflects M-III Advisory Partners, LP 2022 billing rates.  [ECF 9297]

3

**Exhibit B**

18-23538-shl    Doc 10285    Filed 02/07/22    Entered 02/07/22 16:55:59    Main Document
Pg 10 of 11

WEIL:\98226163\2\99910.F766

**Case No.: 18-23538 (RDD)**
**Case Name: Sears Holdings Corporation**
**M-III Advisory Partners, LP**
January 1 Through January 31, 2022

**Summary of Necessary Expenses Incurred**

| Description | Total |
|---|---:|
| Telephone/Internet/IT | $414.82 |
| Meals | 15.90 |
| **Total (a)** | **$430.72** |

**Note:**

(a)  Total amounts are based on M-III's expense reporting system as of the date of this Monthly Report and may not be reflective of all expenses incurred during the Reporting Period.  As such, future monthly reports may include expenses incurred during the Reporting Period.

2