David W. Dykhouse (dwdykhouse@pbwt.com)
Daniel A. Lowenthal (dalowenthal@pbwt.com)
PATTERSON BELKNAP WEBB & TYLER, LLP
1133 Avenue of the Americas
New York, New York 10036-6710
Tel: (212) 336-2000
Fax: (212) 336-2222

Thomas J. Flynn (Admitted *pro hac vice*) (tflynn@larkinhoffman.com)
Gregory S. Otsuka (Admitted *pro hac vice*) (gotsuka@larkinhoffman.com)
LARKIN HOFFMAN DALY & LINDGREN, LTD.
8300 Norman Center Drive, Suite 1000
Minneapolis, Minnesota 55437-1060
Tel: (952) 835-3800
Fax: (952) 896-3333
*Attorneys for MOAC Mall Holdings LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 18-23538 (RDD) |
| SEARS HOLDINGS CORPORATION, *et al.*, | (Jointly Administered) |
| Debtors.[1] | |

**OBJECTION TO NOTICE OF PRESENTMENT OF SCHEDULING ORDER FOR TRANSFORM HOLDCO LLC'S MOTION TO ENFORCE THE ORDER (I) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF LEASE WITH MOAC MALL HOLDINGS LLC AND (II) GRANTING RELATED RELIEF**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

MOAC Mall Holdings LLC ("MOAC"), by and through its undersigned counsel, hereby submits this objection (the "Objection") to the Notice of Presentment of Scheduling Order for Transform Holdco LLC's Motion to Enforce the Order (I) Authorizing Assumption and Assignment of Lease with MOAC Mall Holdings LLC and (II) Granting Related Relief (the "Notice") filed by Transform Holdco LLC ("Transform"),[2] and in support states as follows:

1. By the Notice, Transform requests entry of a scheduling order (the "Scheduling Order") for an evidentiary hearing to consider "(i) whether the parties complied with the ROFR provisions of the master lease with respect to the sublease, and (ii) whether the sublease is valid and enforceable under the terms of the master lease" (the "Sublease Issues"). Notice at 2.

2. MOAC objects to the Notice and to this Court holding an evidentiary hearing because the Court does not have subject matter jurisdiction with respect to the Sublease Issues. The Sublease Issues raise a state-law contract matter between two non-debtor parties, the resolution of which would have no impact on the bankruptcy estate. The Master Lease (as defined below) has been assumed and assigned to Transform (subject to appeal rights). Absent that assignment being reversed on appeal, Transform took the contract *cum onere* and, thus, has whatever rights it has under the Master Lease; nothing about the dispute between MOAC and Transform regarding the proposed sublease will have any impact on the Sears bankruptcy case or estate. Accordingly, a proceeding in this Court to determine the Sublease Issues does not arise under title 11 and neither arises in, nor is related to, a case under title 11, as required under 11 U.S.C. § 1334(b) in order to confer jurisdiction on this Court.

3. MOAC therefore objects to the entry of the Scheduling Order and, to the extent the Court does not immediately deny the remaining aspects of Transform's motion for lack of

---

[2] Transform Holdco LLC is the movant and buyer of the Debtors' assets. Its affiliate Transform Leaseco LLC is the proposed landlord under the Sublease. For purposes of this Objection, MOAC refers to both entities as "Transform."

2

jurisdiction, requests that the Court instead allow for briefing and decision on the subject matter jurisdiction issue before entering an order regarding discovery related to the requested evidentiary hearing.

## BACKGROUND

### I. THE COURT'S ENTRY OF THE ASSIGNMENT ORDER AND PENDING APPEAL

4. The Court entered the Order (I) Authorizing Assumption and Assignment of Lease with MOAC Mall Holdings LLC and (II) Granting Related Relief (the "Assignment Order") (ECF No. 5074) on September 5, 2019. By the Assignment Order, the Court authorized the Debtor's assignment of its lease with MOAC (the "Master Lease") to Transform. The Assignment Order also required Transform to "initially sublet a portion of the premises for the [Master] Lease within two years, on the condition that [MOAC] does not improperly interfere with [Transform's] attempt to sublet the premises for the [Master] Lease" (the "Adequate Assurance Sublet Deadline"). Assignment Order at 18.

5. MOAC timely appealed the Assignment Order to the District Court, and then to the Second Circuit. That appeal remains pending, and the Second Circuit entered an order on January 24, 2022 staying the issuance of the mandate pending the outcome of a petition for writ of certiorari with the United States Supreme Court.

### II. TRANSFORM'S MOTION TO ENFORCE THE ASSIGNMENT ORDER

6. Transform executed a proposed sublease (the "Sublease") with a subtenant (the "Subtenant").[3] Transform then filed a motion with this Court, which it styled as a motion to enforce the Assignment Order (the "Motion to Enforce") (ECF No. 10194). Pursuant to the Motion to Enforce, Transform sought an order declaring, among other things, that certain contingencies in

---

[3] Transform filed the Sublease under seal and has kept the identity of the Subtenant confidential.

3

the Sublease had been satisfied, that the litigation over the Assignment Order had been concluded notwithstanding the pending appeal, and that the Adequate Assurance Sublet Deadline had been complied with. MOAC objected to the Motion to Enforce principally on the grounds that the Court was divested of jurisdiction due to the pending appeal. *See* ECF No. 10230.

7. The Court conducted a hearing on the Motion to Enforce on January 20, 2022. At the hearing, the Court expressed that its intent in imposing the two-year Adequate Assurance Sublet Deadline was due to its concern that Transform might be "perfectly content to leave the space empty for 70 years." Tr. of Jan. 20, 2022 Hrg. at 49:14-23. Moreover, the two-year deadline was, in the Court's view, "the really pressing dispute" in the Motion to Enforce that "really is a case [or] controversy." *Id*. at 66:23-24. Importantly, the Court appeared to agree that it was divested of jurisdiction to clarify the Adequate Assurance Sublet Deadline, *id.* at 52:9-53:3, and, relatedly, to declare that the "litigation contingency" in the sublease had been satisfied, *id.* at 54:20-55:3. The Court provided an "indicative ruling" on the record for Transform to raise with the Second Circuit regarding the inapplicability of the Adequate Assurance Sublet Deadline under the present circumstances when the appeal remained pending.

8. The Court indicated that it might treat the Sublease Issues on which Transform now seeks to proceed to an evidentiary hearing differently. *Id*. at 67:3-7 ("[T]he issue of an acceptable tenant is . . . live too, and I think I have jurisdiction over it, because it's part of the adequate assurance . . . I basically said, this has to get done."). The Court did not specifically address whether the Court had subject matter jurisdiction to hear the Sublease Issues. The Court did appear to recognize, however, that the issue of an acceptable tenant is "a different issue than interpreting my own order." *Id*. at 55:15-20. Indeed, as described below, the Sublease Issues, which are the only issues presented by the Notice, are pure questions of state law regarding rights under the assigned

4

Master Lease that are wholly independent of the bankruptcy and therefore cannot be decided by this Court.

### III. THE TWO-YEAR ADEQUATE ASSURANCE SUBLET DEADLINE

9. Transform filed a motion in the Second Circuit on February 10, 2022 in which it cited this Court's January 20, 2022 transcript as an indicative ruling and sought an order that the two-year Adequate Assurance Sublet Deadline is no longer applicable.

10. Given that Transform's motion in the Second Circuit went beyond this Court's indicative ruling—requesting an order that the deadline was entirely "inapplicable" instead of providing for a reasonable time period, as this Court indicated—MOAC filed a limited opposition to Transform's motion. MOAC stated that it does not oppose entry of an order providing that the two-year Adequate Assurance Deadline does not apply to the current Sublease. As a consequence of that concession, there is no current controversy between the parties regarding the Adequate Assurance Sublet Deadline as it relates to the current Sublease. At the same time, MOAC did request that the Second Circuit's order preserve the parties' rights as to a reasonable deadline with respect to any other sublease in the event that the current Sublease is not consummated, based on the facts and circumstances at that time, if it were to occur. As of the date of this filing, the Second Circuit has not issued an order on Transform's motion.

**ARGUMENT**

**I.    THE BANKRUPTCY COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION TO DECIDE THE SUBLEASE ISSUES.**

   **A.    Legal Standard**

11.    A bankruptcy court "has an independent obligation to determine the scope of its jurisdiction over" matters that it is asked to decide. *Scott v. Am. Sec. Ins. Co.* (*In re Scott*), 572 B.R. 492, 510 (Bankr. S.D.N.Y. 2017).

12.    Federal district courts and bankruptcy courts have "original but not exclusive jurisdiction" over "civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Accordingly, there are three types of original but not exclusive jurisdiction that district and bankruptcy courts may exercise, which "are colloquially referred to as 'arising under,' 'arising in,' and 'related to' jurisdiction." *Ames Dep't Stores, Inc. v. Lumbermens Mut. Cas. Co.* (*In re Ames Dep't Stores, Inc.*), 542 B.R. 121, 135 (Bankr. S.D.N.Y. 2015).

13.    A bankruptcy court has "arising under" jurisdiction over claims that "rest on provisions of the Bankruptcy Code or require construction of the Bankruptcy Code for their determination." *Id.*; *Scott*, 572 B.R. at 511 (citation and quotation omitted).

14.    "[A] bankruptcy court can exercise 'arising in' jurisdiction over a claim if, by its very nature, the claim can only be brought in a bankruptcy case, because it has no existence outside of bankruptcy." *Ames*, 542 B.R. at 135.

15.    A bankruptcy court has "related to" jurisdiction over "those matters that are not in the first two categories that nevertheless relate to a bankruptcy case." *Id.* at 136. "[A] civil proceeding is 'related to' a title 11 case if the action's outcome might have any conceivable effect on the bankrupt estate." *Parmalat Capital Fin. Ltd. v. Bank of America Corp.*, 639 F.3d 572, 579 (2d Cir. 2011) (citation and quotation omitted).

16. Moreover, "bankruptcy jurisdiction is divided into 'core' and 'non-core' jurisdiction." *Scott*, 572 B.R. at 510 (citation and quotation omitted). "Core proceedings are those that either 'arise under' title 11, or "arise in' cases under title 11." *Id*. at 511 (citing 28 U.S.C. § 157(a)). "Bankruptcy judges may hear and determine . . . all core proceedings" subject to appellate review. 28 U.S.C. § 157(b)(1). 28 U.S.C. § 157(b)(2) contains a non-exhaustive list of core proceedings.

17. "Non-core proceedings are those that are not core but that are otherwise related to a case under title 11." *Id*. (citing 28 U.S.C. 157(c)(1)); *Stern v. Marshall*, 564 U.S. 462, 477 (2011) ("The terms 'non-core' and 'related' are synonymous."). For non-core proceedings, absent the parties' consent, a bankruptcy judge cannot enter a final order but instead "shall submit proposed findings of fact and conclusions of law to the district court." 28 U.S.C. § 157(c)(1). The district court then reviews the proposed findings and conclusions *de novo* and enters any final orders or judgments. *Id*.

### B. The Court Does Not Have Jurisdiction to Decide the Sublease Issues.

18. With respect to the Sublease Issues, the Court does not have "arising under," "arising in," or "related to" jurisdiction.

19. The Sublease Issues do not "arise under" Title 11 because they do not invoke any rights that are created by federal bankruptcy law. *See Scott*, 572 B.R. at 511 ("Proceedings that 'arise under' the Bankruptcy Code are those 'that clearly invoke substantive rights created by federal bankruptcy law.'"). Instead, the rights at stake in the Sublease Issues arise only from the Master Lease.

20. The Sublease Issues also do not "arise in" Title 11 because they would exist outside of the bankruptcy. *Ames*, 542 B.R. at 135. Indeed, the Sublease Issues are merely state law contract issues regarding the terms of the Master Lease or Sublease, namely whether Transform complied

7

with the ROFR provision in the Master Lease and whether the Sublease complies with the terms of the Master Lease. The same issues could arise whenever Transform proposes a new subtenant under the Master Lease, whether that occurs ten, twenty, or even sixty years from now.

21.    Nor are the Sublease Issues "related to" a case under Title 11 because the outcome of those Issues would not "have any conceivable effect on the bankrupt estate." *Parmalat Capital Fin. Ltd.*, 639 F.3d at 579. The Master Lease has already been assumed and assigned by the estate to Transform, and the present dispute can neither unwind that transfer nor affect its value to the bankruptcy estate.

22.    The Sublease Issues involve disputes between two non-debtor parties—Transform and MOAC. Deciding whether Transform satisfied the ROFR provision in the Master Lease and whether the Sublease is valid and enforceable under the Master Lease does not require the interpretation of the Assignment Order, or any other order entered by this Court. Even Transform in its Notice frames the Sublease Issues solely as determinations of compliance with the Master Lease. *See* Notice at 2 ("(i) whether the parties *complied with the ROFR provisions of the master lease* with respect to the sublease, and (ii) whether the sublease is valid and enforceable *under the terms of the master lease*.") (emphasis added).

23.    The attenuation of the Sublease Issues from the Assignment Order is even more clear given that the two-year Adequate Assurance Sublet Deadline is no longer an issue with respect to the Sublease, as confirmed by the parties' submissions to the Second Circuit. Indeed, the only purported jurisdictional basis for Transform proceeding on its Motion to Enforce in this Court was the two-year Adequate Assurance Sublet Deadline, by which Transform attempts to shoehorn the state law Sublease Issues into a question of whether MOAC "improperly interfered"

8

with the Sublease to excuse the applicability of that deadline.[4] Because of this Court's indicative ruling, and given that MOAC has conceded that the two-year Adequate Assurance Sublet Deadline no longer applies to the Sublease, there is no longer any argument that enforcement of the "adequate assurance" requirement would provide a basis for this Court to exercise subject matter jurisdiction with respect to the Sublease Issues.

24. The Sublease Issues simply do not impact the assumption and assignment of the Master Lease from the Debtor to Transform, which was authorized by the Assignment Order. As noted above, these same issues may arise regarding potential subtenants throughout the Master Lease's 70-year remaining term, and there can be no dispute that this Court would lack subject matter jurisdiction to resolve such disputes between Transform and MOAC regarding subtenants fifty years hence. The present dispute regarding compliance with those same terms of the Master Lease is no different. Another example further illustrates the point. The Master Lease establishes certain requirements with which the tenant must comply if it makes improvements to the leased premises. If, years from now, Transform and MOAC have a dispute regarding whether those construction provisions were breached, that dispute would not be related to this bankruptcy case and would not be subject to this Court's jurisdiction. There is no meaningful distinction between that sort of dispute under the Master Lease and the Sublease Issues, all of which involve disputes between non-Debtor parties regarding the terms of a lease that has been assumed and assigned by the Debtor. Just as with those potential disputes, the resolution of the Sublease Issues would not

---

[4] For the avoidance of doubt, MOAC does not concede that this Court would have subject matter jurisdiction as to the Sublease Issues on the basis of "enforcing" the two-year Adequate Assurance Sublet Deadline. That deadline required Transform to place a subtenant within two years "on the condition that" MOAC not "improperly interfere" with Transform's efforts to identify a subtenant. At most, this Court retained jurisdiction to find the two-year deadline was no longer applicable due to purported "improper interference." Such jurisdiction would *not* confer subject matter jurisdiction to effectively issue declaratory relief that the substantive terms of the Master Lease had been complied with for all purposes with respect to the Sublease Issues, as Transform appears to now seek.

9

"have any conceivable effect on the bankruptcy estate," and the Court does not have "related to" jurisdiction.

## II.    AT MOST, THIS IS A NON-CORE PROCEEDING.

25.    While MOAC disputes that the Court has even "related to" jurisdiction to decide the Sublease Issues, a proceeding to determine the Sublease Issues, at most, would be a non-core proceeding. *Stern*, 564 U.S. 462 at 477 ("[T]he [Bankruptcy Code] simply does not provide for a proceeding that is simultaneously core and yet only related to the bankruptcy case."). In that case, MOAC does not consent to this Court's entry of a final order.

## III.    THE COURT LACKS PERSONAL JURISDICTION OVER MOAC.

26.    In the absence of bankruptcy jurisdiction, this Court (and the District Court) lack nationwide personal jurisdiction. MOAC is organized and based in Minnesota, and has no business operations or other connections to New York to subject it to personal jurisdiction in New York, either generally or specifically related to this dispute, which concerns construction under Minnesota law of a Master Lease for property in Minnesota. MOAC therefore also objects to any determination of the Sublease Issues in this Court based on the absence of personal jurisdiction.

## CONCLUSION

WHEREFORE, for the foregoing reasons, MOAC respectfully requests that the Court deny Transform's request to enter the Scheduling Order and deny any remaining aspects of the Motion to Enforce for lack of jurisdiction or, alternatively, enter a scheduling order for briefing and decision on the subject matter jurisdiction issue before entering an order regarding discovery

related to the requested evidentiary hearing on the Sublease Issues, and grant such further relief as the court deems just and proper.

Dated:  February 14, 2022	Respectfully submitted,

                             /e/ Gregory S. Otsuka
Thomas J. Flynn (Admitted *pro hac vice*)
Gregory S. Otsuka (Admitted *pro hac vice*)
Larkin Hoffman Daly & Lindgren, Ltd.
8300 Norman Center Drive
Suite 1000
Minneapolis, Minnesota  55437-1060
(952) 835-3800
tflynn@larkinhoffman.com
gotsuka@larkinhoffman.com

David W. Dykhouse
Daniel A. Lowenthal
Patterson Belknap Webb & Tyler, LLP
1133 Avenue of the Americas
New York, New York  10036-6710
(212) 336-2000
dwdykhouse@pbwt.com
dalowenthal@pbwt.com

*Attorneys for MOAC Mall Holdings LLC*

4887-6842-1902, v. 2