ROPES & GRAY LLP
Gregg M. Galardi
Andrew G. Devore
Daniel G. Egan
1211 Avenue of the Americas
New York, NY 10036-8704
Tel: (212) 596-9000
Fax: (212) 596-9090

ROPES & GRAY LLP
Douglas Hallward-Driemeier (admitted *pro hac vice*)
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6807
Tel: (202) 508-4600
Fax: (202) 508-4650

LARKIN HOFFMAN DALY & LINDGREN, LTD.
Gregory S. Otsuka (admitted *pro hac vice*)
8300 Norman Center Drive, Suite 1000
Minneapolis, MN 55437-1060
Tel: (952) 835-3800
Fax: (952) 896-3333

*Attorneys for MOAC Mall Holdings LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 18-23538 (RDD) |
| SEARS HOLDINGS CORPORATION, *et al.*, | Chapter 11 |
| Debtors.[1] | (Jointly Administered) |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**OBJECTION OF MOAC MALL HOLDINGS LLC TO SUBJECT MATTER JURISDICTION WITH RESPECT TO TRANSFORM HOLDCO LLC'S MOTION TO ENFORCE THE ORDER AUTHORIZING ASSUMPTION AND ASSIGNMENT OF LEASE WITH MOAC MALL HOLDINGS LLC**

MOAC Mall Holdings LLC ("MOAC"), by and through its undersigned counsel, hereby submits this objection (this "Objection"), pursuant to this Court's request for additional briefing, with respect to MOAC's contentions that this Court lacks subject matter jurisdiction and personal jurisdiction over MOAC with respect to all remaining disputes concerning the *Motion to Enforce the Order (I) Authorizing Assumption and Assignment of Lease with MOAC Mall Holdings LLC and (II) Granting Related Relief* [ECF No. 10194] (the "Motion to Enforce") filed by Transform Holdco LLC ("Transform"). In support of this Motion, MOAC respectfully submits as follows:

**PRELIMINARY STATEMENT**

1.  As this Court preliminarily determined and as demonstrated below, given MOAC's agreement that the two-year period under this Court's assumption and assignment order for Transform to sublet the lease space at the Mall of America is no longer applicable to the currently proposed sublease, the remaining state law contractual issues raised by Transform in the Motion to Enforce are matters as to which this Court lacks the subject matter jurisdiction, and as a result, does not have personal jurisdiction over MOAC. By the Motion to Enforce, Transform seeks to have this Court resolve purely state law contractual disputes between two non-debtor parties, MOAC and Transform, the resolution of which will have no impact on the Debtors or their bankruptcy estates. Thus, not only is the Motion to Enforce an improper procedural vehicle for Transform to seek the declaratory relief it seeks, this Court does not have "arising under," "arising in," or even "related to" jurisdiction under 28 U.S.C. §§ 157 and 1334 and the standing order of reference in place in this district. Accordingly, this Court must dismiss the Motion to Enforce for lack of jurisdiction.

2

## BACKGROUND

**I.    LEASE ASSIGNMENT PROCEEDINGS**

2.    In 1991, MOAC entered into a lease agreement with Sears for Sears to serve as one of four anchor tenants and occupy a three-floor space within the Mall of America in Bloomington, Minnesota. *See* ECF No. 3927, Ex. A (the "Master Lease"). The Master Lease has a term of 100 years and is governed by and to be construed in accordance with Minnesota state law. *Id.* § 29.4. The Master Lease also contains contractual requirements and limitations pertaining to the tenant's use of the leased premises and its ability to sublease the premises to a third party, including a contractual right of first refusal ("ROFR") in favor of MOAC. *See e.g., id.* § 6.3(B).

3.    In 2018, Sears filed for chapter 11 bankruptcy. During Sears' chapter 11 cases, Sears sold a substantial portion of its assets to Transform. After that sale was approved, Sears sought Bankruptcy Court approval to assume and assign the Master Lease to Transform pursuant to Bankruptcy Code section 365. MOAC objected to this assignment, arguing, among other things, that Sears and Transform failed to satisfy the adequate assurance requirements of Bankruptcy Code sections 365(b)(3) and (f)(2). *See* ECF Nos. 2199, 3501, 3926, 4450, 4889. Following a hearing, the Bankruptcy Court overruled MOAC's objection and entered an order on September 5, 2019 authorizing Sears to assume and assign the Master Lease to Transform. *See* ECF No. 5074 (the "Assignment Order").

4.    The Master Lease had approximately 70 years remaining on its term, and Transform had no intention to itself occupy and operate out of the premises, and instead planned to locate a subtenant. Accordingly, to provide adequate assurance to MOAC based on the Court's concern that Transform could leave the leased premises vacant for an extended period of time to MOAC's detriment, the Assignment Order required Transform to "initially sublet a portion of the premises for the Designated Lease within two years, on the condition that [MOAC] does not improperly

3

interfere with [Transform's] attempt to sublet the premises for the Designated Lease" (the "Adequate Assurance Sublet Deadline"). Assignment Order ¶ 17.

5.    On September 13, 2019, Sears filed its *Modified Second Amended Joint Chapter 11 Plan*. *See* ECF No. 5141. On October 15, 2019, this Court confirmed that plan. *See* ECF No. 5370.

## II.    THE DISTRICT COURT APPEAL

6.    MOAC appealed the Assignment Order to the District Court and filed a motion with the Bankruptcy Court seeking a stay of the Assignment Order pending appeal out of an abundance of caution based on concern that Transform may argue in the District Court that Bankruptcy Code section 363(m) mooted MOAC's appeal in the absence of a stay. *See* ECF No. 5110. Transform objected to MOAC's request for a stay, arguing that a stay was not needed and a lack of a stay would not affect the appeal. *See* ECF No. 5152. At the hearing on MOAC's stay motion, Transform repeatedly represented that the absence of a stay would not render the appeal moot because section 363(m) was not applicable, and that it would not argue its applicability on appeal. This Court, relying on Transform's representations and its own determination that section 363(m) would not apply, denied MOAC's stay motion. *See* ECF No. 5246.

7.    On appeal, the District Court first vacated and remanded the Assignment Order, ruling that the assignment violated Bankruptcy Code section 365(b)(3)(A) because Sears and Transform failed to provide MOAC with adequate assurance that the financial condition and operating performance of Transform, as the assignee, is similar to the financial condition and operating performance of Sears as of the time Sears became the lessee under the lease. *See MOAC Mall Holdings LLC v. Transform Holdco LLC* (*In re Sears Holdings Corp.*), 613 B.R. 51 (S.D.N.Y. 2020). After the District Court reversed the Assignment Order, Transform filed a motion for rehearing with the District Court, arguing for the first time that the District Court lacked

4

jurisdiction over the appeal under Bankruptcy Code section 363(m) because the Assignment Order was not stayed pending appeal—a position directly contrary to Transform's repeated representations and assurances to this Court.

8.      Following additional briefing, the District Court, "with great regret," issued an opinion and order (the "District Court Appeal Dismissal Order") dismissing MOAC's appeal and holding that section 363(m) deprived it of jurisdiction and that the protections of such provision were not waivable or subject to judicial estoppel, notwithstanding that "[Transform's] counsel flatly stated to the bankruptcy judge that § 363(m) had no applicability to the assignment of the Mall of America Lease to [Transform], *and that Transform did not intend to argue otherwise*, in order to induce him to deny MOAC's motion for a stay." *See* Ex. B at 2-3 (emphasis in original).

### III. THE SECOND CIRCUIT APPEAL

9.      MOAC appealed the District Court Appeal Dismissal Order to the Second Circuit. In light of the pending appeals and Transform's apparent inability to locate a subtenant to occupy the premises during the pending appeal, on August 12, 2021, Transform filed a motion in the Second Circuit requesting an order tolling the Adequate Assurance Sublet Deadline (which was then subject to expire on September 5, 2021) for 60 days after the date the Second Circuit entered a decision on appeal. *See* Ex. C (ECF No. 116-3) at 11 (asserting that the tolling order was necessary in order "to maintain the status quo while [the Second Circuit] considers the pending appeal."). MOAC did not oppose that motion, and the Second Circuit granted Transform's requested extension to 60 days after the Second Circuit entered a decision on appeal. *See* Ex. D.

10.     On December 17, 2021, the Second Circuit entered a summary order affirming the District Court Appeal Dismissal Order, holding that section 363(m) of the Bankruptcy Code created a jurisdictional bar to MOAC's appeal. *See* Ex. E. On January 6, 2022, MOAC filed a motion with the Second Circuit seeking to stay the issuance of the mandate in accordance with

5

Fed. R. App. P. 41 pending MOAC's petition for a writ of certiorari to the U.S. Supreme Court in light of the circuit split on the question of whether section 363(m) creates a jurisdictional bar (which thus would not be subject to waiver or judicial estoppel) or is not jurisdictional and only limits the types of remedies on appeal (and thus would be subject to waiver and judicial estoppel). *See, e.g.*, *In re Energy Future Holdings Corp.*, 949 F.3d 806, 820 (3d Cir. 2020) ("[W]e have construed § 363(m) as a constraint not on our jurisdiction, but on our capacity to fashion relief."). On January 24, 2022, the Second Circuit granted MOAC's motion and stayed the issuance of the mandate pending the filing and disposition of a petition for writ of certiorari. *See* Ex. F.

## IV. THE SUBLEASE

11. While the appeal was pending, Transform entered into a sublease agreement (the "Sublease") with a subtenant for a portion of the leased premises in Mall of America covered by the Master Lease.[2] The Sublease contains certain conditions precedent to its effectiveness, including a "litigation contingency" that Transform prevail in the pending appeals with respect to the Assignment Order by a date certain. *See* Motion to Enforce ¶ 3.

## V. TRANSFORM'S MOTION TO ENFORCE

12. On January 4, 2022, after the Second Circuit issued its summary order affirming the District Court Appeal Dismissal Order but before it entered an order staying the issuance of the mandate, Transform filed the Motion to Enforce requesting this Court to determine that (a) the litigation contingency in the Sublease had been satisfied, notwithstanding the ongoing appeals, (b) Transform had satisfied the two-year Adequate Assurance Sublet Deadline (as extended by the Second Circuit) by entering into the Sublease, (c) Transform complied with the ROFR requirement

---

[2] Transform filed the Sublease under seal and has kept the identity of the Subtenant confidential.

6

in the Master Lease with respect to the Sublease, and (d) the Sublease complies with all of the other Master Lease requirements, including with respect to the use of the leased premises.

13.     MOAC filed an initial objection to the Motion to Enforce, arguing, among other things, that its pending appeal of the Assignment Order divested this Court of jurisdiction over the Motion to Enforce (the "Divestiture Objection"). *See* ECF No. 10230.

14.     The Court held an initial hearing on the Motion to Enforce and the Divestiture Objection on January 20, 2022. At the hearing, the Court made clear that it would not grant the portion of Transform's motion seeking a ruling that Transform had prevailed in the litigation given the ongoing appeals and the then-pending motion to stay the issuance of the mandate to satisfy the Sublease's "litigation contingency." *See* Ex. G. at 65:23-66:3. In addition, the Court stated that it never intended the Adequate Assurance Sublet Deadline to apply in the present circumstances when a subtenant had been located but there were ongoing appeals of the Assignment Order that effectively prevented Transform from placing the subtenant in the premises. *See id.* at 66:3-13. The Court stated that its intent with the Adequate Assurance Sublet Deadline was to protect MOAC by requiring Transform to enter into a sublease within a reasonable time and not "ke[ep] the landlord hanging out there, potential[ly] for up to 70 years." *See id.* at 68:1-6.

15.     While the Court determined it was divested of jurisdiction with respect to certain aspects of the Motion to Enforce, the Court determined that it had not been divested of jurisdiction to enforce the terms of the Assignment Order. *See id.* at 57:11-58:10. As to the enforcement of the Assignment Order, Transform argued that the Court had jurisdiction with respect to the Motion to Enforce because MOAC had allegedly interfered with the two-year Adequate Assurance Sublet Deadline set forth in the Assignment Order and, on that basis Transform sought to have this Court determine the two state law contractual issues as to whether (i) Transform had complied with the

7

terms of the Master Lease regarding the ROFR and (ii) the Sublease satisfied the requirements of the Master Lease (together, the "Master Lease Compliance Issues"). Because the Court was concerned that it might have been divested of jurisdiction as to the proper interpretation of the Adequate Assurance Sublet Deadline, it made an indicative ruling pursuant to Fed. R. Bankr. P. 8008 as to its interpretation of the Adequate Assurance Sublet Deadline that Transform should have a "reasonable time" to place a subtenant following the conclusion of the appeals, and instructed Transform to notify the Second Circuit of its indicative ruling. The Court also requested the parties to submit a scheduling order with respect to the Master Lease Compliance Issues.

## VI.    THE SECOND CIRCUIT'S LIMITED REMAND

16. On February 4, 2022, in light of the Bankruptcy Court's indicative ruling regarding the Adequate Assurance Sublet Deadline, Transform filed a motion with the Second Circuit requesting clarification that the Adequate Assurance Sublet Deadline does not apply to the Sublease. *See* Ex. H. Given that Transform's motion went beyond the Bankruptcy Court's indicative ruling—requesting an order that the Adequate Assurance Sublet Deadline was entirely "inapplicable" instead of providing for a reasonable time period, as the Bankruptcy Court indicated—MOAC filed a limited objection to that motion. In that limited objection, MOAC represented to the Second Circuit that it did not oppose entry of an order that the two-year Adequate Assurance Sublet Deadline would not apply to the current Sublease.[3] *See* Ex. I. On February 16, 2022, the Second Circuit entered an order remanding to the Bankruptcy Court for the limited purpose of ruling on the applicability of the two-year Adequate Assurance Sublet Deadline. *See* Ex. J.

---

[3] At the same time, MOAC did request, consistent with this Court's indicative ruling, that the Second Circuit's order preserve the parties' rights as to a reasonable deadline with respect to any other sublease in the event the current Sublease is not consummated, based on the facts and circumstances at that time, if it were to occur.

8

## VII.   TRANSFORM'S REQUEST FOR APPROVAL OF A SCHEDULING ORDER

17.   While waiting for clarification from the Second Circuit and despite MOAC's concession that the two-year Adequate Assurance Sublet Deadline would not apply to the Sublease, on February 9, 2022, Transform filed with this Court a notice of presentment seeking entry of a scheduling order establishing, among other things, a discovery schedule leading to an evidentiary hearing on March 25, 2022, on the two Master Lease Compliance Issues, namely: (a) "whether the parties complied with the ROFR provisions of the master lease with respect to the sublease," and (b) "whether the sublease is valid and enforceable under the terms of the master lease." *See* ECF No. 10289-1.

18.   On February 14, 2022, MOAC filed an objection to the notice of presentment, arguing that the Court lacks subject matter jurisdiction with respect to the Master Lease Compliance Issues, and also lacks personal jurisdiction over MOAC. *See* ECF No. 10298. Specifically, MOAC asserted that the Court did not have subject matter jurisdiction under 28 U.S.C. § 1334(b) to decide the Master Lease Compliance Issues, which presented state-law contract disputes between two non-debtor parties, the resolution of which would have no impact on the Debtors or their bankruptcy estates. *See id*. ¶ 2.  Similarly, MOAC asserted that, in the absence of bankruptcy subject matter jurisdiction, the Bankruptcy Court lacked personal jurisdiction over MOAC because nationwide personal jurisdiction under the Bankruptcy Rules only applies to matters within the Bankruptcy Court's subject matter jurisdiction. *See id.* ¶ 26.[4]

19.   On February 22, 2022, Transform filed a reply in support of its notice of presentment, arguing only that this Court was not divested of jurisdiction by virtue of the pending

---

[4]   MOAC also asserted that, to the extent the Bankruptcy Court had "related to" bankruptcy jurisdiction, the Master Lease Compliance Issues present "non-core" matters for which the Bankruptcy Court does not have authority to enter final orders.  *Id.* ¶ 25.

9

appeal, and did not address the absence of subject matter jurisdiction under 28 U.S.C. § 1334(b) with respect to the Master Lease Compliance Issues. *See* ECF No. 10317.

### VIII. THE BANKRUPTCY COURT'S CONCERNS REGARDING SUBJECT MATTER JURISDICTION

20. At the hearing on February 24, 2022, this Court questioned its jurisdiction with respect to the Master Lease Compliance Issues, stating: "I'm not sure what the hook is here as opposed to just going to state court." *See* Ex. K at 31:22-24. The Court suggested that Transform could argue in state court in Minnesota that it has "an acceptable tenant, the lease doesn't prevent it, MOAC is frustrating our assignment, we seek injunctive relief and monetary relief." *Id.* at 31:24-25, 32:1.

21. The Court further noted that Transform was not asking for enforcement of a prior decision: "[T]here's no prior determination by me, as there was in the [*In re*] *Ames* [*Dep't Stores, Inc.*, 317 B.R. 260 (Bankr. S.D.N.Y. 2004),] case and as there was in the [*In re*] *Petrie Retail* [*Inc.*, 304 F.3d 223 (2d Cir. 2002),] case, on the merits of [the Master Lease Compliance Issues]." *Id.* at 32:16-18. Further, the Court emphasized that MOAC was not disputing the Assignment Order when it raised the Master Lease Compliance Issues. "So by raising those two issues, I don't think MOAC is challenging my order. They're accepting that it's assigned for purposes of this litigation, although they have the pending appeal." *Id.* at 32:18-21. Because, however, Transform had not responded to MOAC's challenge to subject matter jurisdiction, the Court permitted the parties to provide further briefing on jurisdiction. *Id.* at 32:3-5.

### ARGUMENT

### I. DETERMINATION OF THE MASTER LEASE COMPLIANCE ISSUES IS NOT A CORE PROCEEDING TO ENFORCE THE ASSIGNMENT ORDER

22. While the Court would have core jurisdiction to enforce the unstayed Assignment Order, *see*, *e.g.*, *In re Ames Dep't Stores, Inc.*, 317 B.R. 260, 270 (Bankr. S.D.N.Y. 2004); *In re*

10

*Motors Liquidation Co.*, 514 B.R. 377, 379 n.8 (Bankr. S.D.N.Y. 2014), as the Court properly observed, nothing about the Master Lease Compliance Issues requires an interpretation or enforcement of the Assignment Order. These are state law contract issues, the resolution of which will have no impact on the bankruptcy cases or Debtors' estates. *See* Ex. K at 32:16-18. As the Court noted, nothing about MOAC's objections to the proposed Sublease and subtenant are challenges to the enforcement or implementation of the Assignment Order, and the Master Lease Compliance Issues assumes the Assignment Order is valid, subject to MOAC's ongoing appeal.

23.    The attenuation of the Master Lease Compliance Issues from the Assignment Order is even more clear given that the two-year Adequate Assurance Sublet Deadline is no longer an issue with respect to the proposed Sublease, as confirmed by the parties' submissions to the Second Circuit and MOAC's representation to this Court. *See* Ex. I; Ex. K at 27:10-22. The only purported jurisdictional basis for Transform proceeding on its Motion to Enforce in this Court was the two-year Adequate Assurance Sublet Deadline, and by arguing that MOAC "improperly interfered" with Transform entering into the proposed Sublease.[5] Given that MOAC has conceded that the two-year Adequate Assurance Sublet Deadline will no longer apply with respect to the proposed Sublease, there is no longer any argument that enforcement of this "adequate assurance" requirement in the Assignment Order would provide a jurisdictional basis for this Court to determine the state-law Master Lease Compliance Issues with respect to the proposed Sublease.

---

[5]    For the avoidance of doubt, MOAC does not concede that this Court would have subject matter jurisdiction as to the Master Lease Compliance Issues on the basis of "enforcing" the two-year Adequate Assurance Sublet Deadline. That deadline required Transform to place a subtenant within two years "on the condition that" MOAC not "improperly interfere" with Transform's efforts to identify a subtenant. At most, this Court retained jurisdiction to find the two-year deadline was no longer applicable due to purported "improper interference." Such jurisdiction would *not* confer subject matter jurisdiction to effectively issue declaratory relief that the substantive terms of the Master Lease had been complied with for all purposes with respect to the Master Lease Compliance Issues, as Transform appears to now seek.

11

24.     Unlike in *Ames* and *Petrie Retail*, this Court had no occasion to determine the Master Lease Compliance Issues in entering the Assignment Order and, accordingly, there is no core jurisdiction for the Court to determine the Master Lease Compliance Issues as the purported "enforcement" of that order.  *See Ames*, 317 B.R. at 263-64; *Petrie Retail*, 304 F.3d at 226-27. Indeed, the Bankruptcy Court would not have been able to decide the Master Lease Compliance Issues in connection with the Assignment Order, even if this Sublease had been contemplated at the time of the assumption and assignment.  As the Second Circuit has held, proceedings under section 365 are not to be used to decide state-law contract disputes with respect to the assumed contract.  *Orion Pictures Corp. v. Showtime Networks, Inc.* (*In re Orion Pictures Corp.*), 4 F.3d 1095, 1098 (2d Cir. 1993) ("We hold that it was error for the bankruptcy court to decide a disputed factual issue between the parties to a contract in the context of determining whether the debtor or trustee should be permitted to assume that contract."); *see also In re The Great Atl. & Pac. Tea Co.,* 544 B.R. 43, 50 (Bankr. S.D.N.Y. 2016) (same) (citing *Orion*).  Instead, as the Second Circuit held in *Orion*, at most a bankruptcy court has related-to jurisdiction to decide breach of contract issues relating to an assumed contract.  But, critically, in *Orion*, unlike here, the debtor was a party to the contract claim and it was the debtor asserting damages. *Orion*, 4 F.3d at 1102.  And as set forth below, state-law contract disputes between two non-debtors that have no impact on the bankruptcy estates clearly are not within the bankruptcy court's "related to" jurisdiction. *See also Great Atl. & Pac. Tea Co.*, 544 B.R. at 50 (declining to decide contract dispute in motion to reject lease).

12

## II.  THERE IS NO SUBJECT MATTER JURISDICTION OVER THE MASTER LEASE COMPLIANCE ISSUES

25.    As demonstrated above, the Master Lease Compliance Issue are not core issues concerning enforcement of the Assignment Order.  More importantly, as shown below, this Court lacks subject matter jurisdiction to even hear the Master Lease Compliance Issues.

### A.    There Is No "Arising Under" Or "Arising In" Jurisdiction

26.    A bankruptcy court has "arising under" jurisdiction over matters that "clearly invoke substantive rights created by federal law" or "that, by their nature, could arise only in the context of a bankruptcy case." *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108-09 (2d Cir. 2006); *Scott v. Am. Sec. Ins. Co.* (*In re Scott*), 572 B.R. 492, 511 (Bankr. S.D.N.Y. 2017) ("Proceedings that 'arise under' the Bankruptcy Code are those that clearly invoke substantive rights created by federal bankruptcy law." (internal citation and quotations omitted)); *Ames Dep't Stores, Inc. v. Lumbermens Mut. Cas. Co.* (*In re Ames Dep't Stores, Inc.*), 542 B.R. 121, 135 (Bankr. S.D.N.Y. 2015) (courts having "arising under" jurisdiction over matters that "rest on provisions of the Bankruptcy Code, or require construction of the Bankruptcy Code for their determination").  A claim seeking a declaration of contempt for a breach of the automatic stay, for example, arises under Bankruptcy Code, because it is based on section 362 of the Bankruptcy Code. *See id.*

27.    The Master Lease Compliance Issues do not "arise under" title 11 because they do not invoke any rights created by federal bankruptcy law and they are not claims that could arise only in the context of a bankruptcy case. *See Scott*, 572 B.R. at 511 (claims that "arise under" the Bankruptcy Code are "those federal questions that have their origin in title 11 of the United States Code (i.e., the Bankruptcy Code), and where relief is sought based upon a right created by title 11") (internal citations omitted).  Instead, the Master Lease Compliance Issues derive solely from the Master Lease and the interpretation thereof under Minnesota state law.  Minnesota contract

13

law, rather than the Bankruptcy Code, gives rise to the Master Lease Compliance Issues. Though Transform purported to take an assignment of the lease pursuant to 365 of the Bankruptcy Code, that section does not provide a standard to evaluate MOAC's and Transform's competing interpretations of the Master Lease, nor does it provide a cause of action.

28. Nor does this Court have "arising in" jurisdiction with respect to the Master Lease Compliance Issues. Specifically, a bankruptcy court has "arising in" jurisdiction over matters that "are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010) (internal citation and quotations omitted); *Ames*, 542 B.R. at 135 ("[A] bankruptcy court can exercise 'arising in' jurisdiction over a claim if, by its very nature, the claim can only be brought in a bankruptcy case, because it has no existence outside of bankruptcy."). Claims against a debtor's estate and enforcement of a bankruptcy court's orders fall within this category. *See id.*

29. The Master Lease Compliance Issues do not "arise in" title 11 because they would exist outside of bankruptcy. *Ames*, 542 B.R. at 135. The Master Lease Compliance Issues are merely contractual issues regarding the terms of the Master Lease—namely, whether Transform complied with the ROFR provision and whether the Sublease complies with the terms of the Master Lease. These are standard, state-law contractual landlord/tenant disputes whose only connection to the Sears bankruptcy is that Sears was once, but is no longer, the tenant. *See, e.g.*, *Gupta, M.D. v. Quincy Med. Center*, 858 F.3d 657, 663-64 (1st Cir. 2017) (state law breach of contract claims of a debtor's former employees against a purchaser of the debtor's assets do not "arise in" or "arise under" title 11 and are not "related to" the chapter 11 bankruptcy); *Orion*, 4 F.3d at 1102 (holding that breach of contract claim brought by the debtor with respect to an assumed contract is, at most, "related to" jurisdiction).

14

**B.   The Court Does Not Have "Related To" Jurisdiction With Respect To The Master Lease Compliance Issues**

30.   This Court also does not have "related to" jurisdiction with respect to the Master Lease Compliance Issues.

31.   Prior to the confirmation of a chapter 11 plan, a proceeding is related to a bankruptcy case only "if the action's outcome might have any conceivable effect on the bankrupt estate." *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011) (internal citation and quotations omitted); *Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir. 1992) (same). "Conceivable effects typically manifest themselves by altering the amount of property available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors." *Allstate Ins. Co. v. CitiMortgage, Inc.*, 11-cv-1927 (RJS), 2012 WL 967582, at *4 (S.D.N.Y. Mar. 13, 2012). For example, claims by a bankruptcy estate against the corporation's pre-petition accountants for various torts satisfy the "conceivable effect" test of "related to" jurisdiction, because a judgment in favor of the bankruptcy estate would increase the recoveries of creditors. *See Parmalat*, 639 at 579.

32.   The test for "related to" jurisdiction is different and more stringent, however, once a bankruptcy plan is confirmed. After plan confirmation, it is generally understood that "the bankruptcy court's jurisdiction shrinks." *See Penthouse Media Grp. v. Guccione* (*In re Gen. Media, Inc.*), 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005). A court's "related to" jurisdiction post-confirmation is limited to "matters pertaining to the implementation or execution of the plan," because "the debtor's estate, and thus bankruptcy jurisdiction, [otherwise] ceases to exist." *In re Urban Box Office Network, Inc.*, No. 01-Civ-8854, 2003 WL 22971510, at *3 (S.D.N.Y. Dec. 18, 2003). For example, post-confirmation, a bankruptcy court lacks authority to evaluate a debtor's

15

acquisition of its non-debtor affiliates' debt from third-party lenders. *See In re Metro-Goldwyn-Mayer Studios Inc.*, 459 B.R. 550, 556-57 (Bankr. S.D.N.Y. 2011).

33. For a bankruptcy court to have "related to" jurisdiction post-confirmation, the party "invoking the bankruptcy court's post-confirmation jurisdiction must satisfy two requirements." *Gen. Media*, 335 B.R. at 73. First, the matter must have a "close nexus" to the bankruptcy plan by affecting the interpretation, implementation, consummation, execution or administration of the confirmed plan. Second, the plan must provide for the retention of jurisdiction over the matter. *See Savoy Senior Hous. Corp. v. TRBC Ministries, LLC*, 401 B.R. 589, 597 (S.D.N.Y. 2009); *Gen. Media*, 335 B.R. at 73. Courts have also found that post-confirmation "related to" jurisdiction requires evidence that the action will "affect[] an integral aspect of the bankruptcy process." *In re Metro-Goldwyn-Mayer Studios Inc.*, 459 B.R. at 556.

34. There is no nexus—let alone a close nexus—between the Master Lease Compliance Issues and the Sears confirmed chapter 11 plan. Transform's motion (and this opposition) presumes that the Master Lease has already been assumed and assigned by the estate to Transform, and the present disputes related to the Master Lease Compliance Issues do not require an interpretation of the Sears plan. Nor would any decision with respect to the Master Lease Compliance Issues unwind the assignment by Sears or affect the value of the assignment to the Sears bankruptcy estates. Indeed, nothing about the determination of the Master Lease Compliance Issues will impact a single cent of the amounts available for distribution to Sears' creditors under its confirmed chapter 11 plan. For the same reason, the Master Lease Compliance Issues do not "affect[] an integral aspect of the bankruptcy process." *Metro-Goldwyn-Mayer Studios*, 459 B.R. at 556. Instead, the Master Lease Compliance Issues exclusively involve the interpretation of provisions of the Master Lease under Minnesota state law involving only non-

16

debtor parties and the non-debtor parties' respective rights and obligations thereunder. The Master Lease Compliance Issues exist independent of the bankruptcy cases and have no nexus to Sears' confirmed chapter 11 plan and, accordingly, the Bankruptcy Court does not have "related to" jurisdiction under 28 U.S.C. § 157.

35. Even under the less stringent pre-confirmation standard, this Court would still be without jurisdiction because resolution of the Master Lease Compliance Issues will have no "conceivable effect" on the bankruptcy estates. The Master Lease has been assigned to Transform *in toto* (subject only to appeal rights) and is no longer part of the bankruptcy estates. Transform and MOAC, both non-debtors, have their respective rights under the Master Lease and applicable nonbankruptcy state law, and nothing about the dispute over the proposed Sublease will have any impact on the Sears bankruptcy cases or estates. It will not alter the amount of any distributions to creditors and will not allocate any distributions as between creditors. Rather, it will simply determine non-debtor parties' state law contractual rights under agreements that exist independent of the bankruptcy cases—and which could remain in place for up to 70 years after the bankruptcy cases are closed.

36. Indeed, given the length of the remaining lease term, Transform could well propose another subtenant to MOAC ten, twenty, or even sixty years from now and issues identical to the Master Lease Compliance Issues could arise with respect to that proposed sublease. There can be no dispute that the Bankruptcy Court would lack jurisdiction at such a future date to resolve contractual lease and sublease disputes between Transform and MOAC. The present dispute is no different.

37. Accordingly, the Bankruptcy Court does not have "related to" jurisdiction because there is no "close nexus" between the Master Lease Compliance Issues and the bankruptcy estate

17

or chapter 11 plan and resolution of the Master Lease Compliance Issues would not "have any conceivable effect on the bankruptcy estate."

### III. THE BANKRUPTCY COURT AND DISTRICT COURT LACK PERSONAL JURISDICTION OVER MOAC

38. In the absence of bankruptcy jurisdiction, this Court also lacks nationwide personal jurisdiction. *See* FED. R. BANKR. P. 7004(f) (providing for nationwide personal jurisdiction only for "a case under the [Bankruptcy] Code or a civil proceeding arising under the [Bankruptcy] Code, or arising in or related to a case under the [Bankruptcy] Code").

39. Without nationwide personal jurisdiction, the Bankruptcy Court and District Court could only exercise personal jurisdiction to the same extent as a state court in New York. *See* FED. R. CIV. P. 4(k)(1)(A); NY CPLR §§ 301, 302. MOAC which is organized and based in Minnesota. MOAC has no business operations in or other connections to New York to subject it to personal jurisdiction in New York, either generally or specifically related to this dispute, which concerns construction under Minnesota law of a Master Lease for property in Minnesota. Accordingly, this Court cannot exercise personal jurisdiction over MOAC with respect to the Master Lease Compliance Issues. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 137 S. Ct. 1773 (2017) (explaining constitutional limits to a state court's exercise of personal jurisdiction).

### IV. THE DISTRICT COURT LACKS AUTHORITY TO ENTER A FINAL JUDGMENT GRANTING THE MOTION TO ENFORCE

40. While MOAC disputes that the Court has even "related to" jurisdiction to decide the Master Lease Compliance Issues, any proceeding to determine such issues would be, at most, a non-core proceeding. *Stern v. Marshall*, 564 U.S. 462, 477 (2011) ("[T]he [Bankruptcy Code] simply does not provide for a proceeding that is simultaneously core and yet only related to the bankruptcy case."); *see also Orion*, 4 F.3d at 1102 (holding that breach of contract claim brought

18

by the debtor with respect to an assumed contract is, at most, "related to" jurisdiction). In that case, MOAC does not consent to this Court's entry of a final order.

## **RESERVATION OF RIGHTS**

41. This Objection is filed with a full reservation of rights, including the right to amend and/or supplement this Objection in all respects.

## **NOTICE**

42. Notice will be provided in accordance with the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 [ECF No. 405]. MOAC submits that no other or further notice is required.

*[Text continues on following page]*

WHEREFORE, for the reasons set forth above, MOAC respectfully requests that the Court dismiss the Motion to Enforce for lack of jurisdiction.

Dated: March 9, 2022  
       New York, New York

Respectfully submitted,

*/s/ Gregg M. Galardi*  
Gregg M. Galardi  
Andrew G. Devore  
Daniel G. Egan  
ROPES & GRAY LLP  
1211 Avenue of the Americas  
New York, NY 10036  
Telephone: (212) 596-9000  
gregg.galardi@ropesgray.com  
andrew.devore@ropesgray.com  
daniel.egan@ropesgray.com

Douglas Hallward-Driemeier (admitted *pro hac vice*)  
ROPES & GRAY LLP  
2099 Pennsylvania Avenue, NW  
Washington, DC 20006-6807  
Telephone: (202) 508-4600  
Facsimile: (202) 508-4650  
douglas.hallward-driemeier@ropesgray.com

-and-

Gregory S. Otsuka (admitted *pro hac vice*)  
LARKIN HOFFMAN DALY & LINDGREN, LTD.  
8300 Norman Center Drive  
Suite 1000  
Minneapolis, MN 55437  
Telephone: (952) 835-3800  
tflynn@larkinhoffman.com  
gotsuka@larkinhoffman.com

*Attorneys for MOAC Mall Holdings LLC*