# EXHIBIT C

**Transform's Motion to Toll Deadline (2nd Cir)**

## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

### MOTION INFORMATION STATEMENT

Docket Number(s): __20-1846-bk(L); 20-1953-bk(XAP)__   _____
                                                        Caption [use short title]

Motion for: __Tolling the deadline to sublet__

__pending appeal.__

_____

_____

Set forth below precise, complete statement of relief sought:

__Tolling of bankruptcy court's two-year sublet condition__

__until 60 days after this court decides the appeal.__

_____

_____

_____

_____

**In Re: Sears Holdings Corporation**

MOVING PARTY: Transform Holdco LLC          OPPOSING PARTY: MOAC Mall Holdings LLC

☐ Plaintiff          ☐ Defendant

☐ Appellant/Petitioner          ☑ Appellee/Respondent

MOVING ATTORNEY: Richard A. Chesley          OPPOSING ATTORNEY: David W. Dykhouse
                  [name of attorney, with firm, address, phone number and e-mail]

DLA Piper LLP                                Patterson Belknap Webb & Tyler LLP

1251 Avenue of the Americas                  1133 Avenue of the Americas

New York, NY 10020                           New York, NY 10036

Court- Judge/ Agency appealed from: McMahon, J., United States District Court for the Southern District of New York.

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes  ☐ No (explain): _____
_____

Opposing counsel's position on motion:
☑ Unopposed  ☐ Opposed  ☐ Don't Know
Does opposing counsel intend to file a response:
☐ Yes  ☐ No  ☑ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below?  ☐ Yes ☑ No
Has this relief been previously sought in this court?  ☐ Yes ☑ No
Requested return date and explanation of emergency:
Return date as soon as possible, but no later than September 3, 2021. Emergency relief is warranted
because (1) the appeal may become moot and (2) this court's March 16, 2021
order will be frustrated if the imminent September 5, 2021
sublet deadline is not tolled.

Is oral argument on motion requested?  ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?  ☑ Yes ☐ No If yes, enter date: April 30, 2021

**Signature of Moving Attorney:**

/s/ Richard A. Chesley          Date: 8/12/2021          Service by: ☑ CM/ECF  ☐ Other [Attach proof of service]

Form T-1080 (rev.12-13)

# No. 20-1846(L); 20-1953(XAP)

I͟N T͟H͟E

## United States Court of Appeals
## for the Second Circuit

IN RE: SEARS HOLDINGS CORPORATION,                    *Debtor*

MOAC MALL HOLDINGS LLC,

*Appellant-Cross-Appellee,*

v.

TRANSFORM HOLDCO LLC,

*Appellee-Cross-Appellant.*

On Appeal from the United States District Court
for the Southern District of New York

**DECLARATION OF D. SCOTT CARR IN SUPPORT OF EMERGENCY MOTION
TO TOLL THE DEADLINE TO SUBLET PENDING RESOLUTION OF THE
APPEAL**

I, D. Scott Carr, declare under penalty of perjury:

1.      I am currently employed by Appellee-Cross-Appellant Transform Holdco LLC ("Transform") as President – Real Estate.  I have held this position since March 2020. Except where noted, I have personal knowledge of the matters set forth below. I respectfully submit this declaration (this "Declaration") in support of Transform's motion to expedite the hearing on this appeal and its decision.

2.      I have 32 years' experience in the commercial real estate markets, particularly relating to the leasing and marketing of retail spaces and spaces in shopping centers. I have prior experience including direct leasing and oversight of the entire leasing function for a portfolio of 165 retail shopping centers totaling more than 16,000,000 square feet.

3.      Since the bankruptcy court entered its September 5, 2019 order authorizing the sale of Sears' lease at the Mall of America in Bloomington, Minnesota, Transform has engaged in substantial marketing efforts to locate a subtenant to occupy portions of the premises pursuant to the two-year deadline included within the bankruptcy court's order. I was personally

2

involved in some of these efforts, and supervised the efforts of others working on Transform's behalf. Finding retailers willing to lease a large space in a shopping mall was already a challenging process in late 2019 due to market conditions affecting brick and mortar retailers. Those challenges were exacerbated by the COVID-19 pandemic and its implications for indoor in-person shopping.

4.      Earlier this year, Transform made significant progress in locating a potential subtenant seriously interested in subleasing one of three floors in the space. That potential tenant is a well-known international department store and fast fashion retailer. The potential subtenant indicated that it would not sign a lease or even a binding letter of intent absent assurances that it will be able to remain in the space regardless of the outcome of this litigation.

5.      As the likelihood of closing a sublease with a subtenant came near, Transform reached out to MOAC in an attempt to reach an agreement that would preserve the subtenancy while preserving all of MOAC'S rights on this appeal. In order to provide certainty to the subtenant, while ensuring

that MOAC's appeal is not prejudiced, Transform proposed that if MOAC would allow the subtenant to remain in the property by taking over the sublease in the event it prevails on this appeal, Transform would agree to the following terms: (1) All rent from the subtenant would be placed in escrow pending the resolution of this litigation; (2) Transform would consent to any higher and better lease found by MOAC within a reasonable time; and (3) Transform would not argue that the entry into the sublease would moot MOAC's appeal.

6.      Unfortunately, MOAC was unwilling even to discuss the proposed subtenant without receiving information that Transform is incapable of providing, such as what is to be done with the other two floors for which, to date, no subtenant has been located.

7.      Based on my experience in the market for leasing commercial real estate in shopping centers, as well as my experience attempting to market this particular space, I believe there is a substantial risk that, absent binding assurances that its sublease will be respected by MOAC, or prompt resolution of this litigation, the potential subtenant will decline to enter into

4

a lease for this location. This potential subtenant remains interested in leasing the space, however, and I believe that if Transform prevails on the appeal, it will be able to enter into a sublease within 60 days after the Court's ruling provided MOAC does not improperly interfere with Transform's attempt to sublet to that potential tenant. I also believe, based both on my experience in the market generally and through attempting to market these premises specifically, that if Transform is unable to agree to a sublease with this subtenant, there is a substantial risk that Transform will have great difficulty in finding another subtenant.

*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, to the best of my knowledge, information

and belief, and after reasonable inquiry, I declare under penalty of perjury

that the foregoing is true and correct.


Dated:  August 12, 2021
      Hoffman Estates, IL

                                               D. Scott Carr

# No. 20-1846(L); 20-1953(XAP)

IN THE

# United States Court of Appeals
# for the Second Circuit

IN RE: SEARS HOLDINGS CORPORATION,

*Debtor*

MOAC MALL HOLDINGS LLC,

*Appellant-Cross-Appellee,*

v.

TRANSFORM HOLDCO LLC,

*Appellee-Cross-Appellant.*

On Appeal from the United States District Court
for the Southern District of New York

## APPELLEE-CROSS-APPELLANT'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED EMERGENCY MOTION TO TOLL THE DEADLINE TO SUBLET PENDING RESOLUTION OF THE APPEAL

**Date by which relief is requested:**
**As soon as possible, but no later than**
**September 3, 2021**

**DLA PIPER LLP (US)**
Richard A. Chesley
R. Craig Martin
Rachel Ehrlich Albanese
1251 Avenue of the Americas
New York, NY 10020
(212) 335-4500
Richard.Chesley@us.dlapiper.com

Appellee-Cross-Appellant Transform Holdco LLC ("Transform")
respectfully submits this memorandum of law pursuant to 28 U.S.C. § 1651,
in support of its unopposed emergency motion to toll the deadline to sublet
pending resolution of the appeal (the "Tolling Motion"), along with the
accompanying declaration of D. Scott Carr in support of the Tolling Motion
("Carr Declaration").

This Tolling Motion seeks to maintain the status quo while this Court
considers the pending appeal regarding a valuable lease at the Mall of
America ("MOAC"), which Transform purchased from the Sears
bankruptcy estate. Part of the assignment order being appealed here
required Transform to find a new, operating sublessee for a portion of the
space by September 5, 2021. SPA-82. The order also prohibited MOAC from
"improperly interfering" with that effort. *Id*.

To comply with that requirement, and to capture the value of the lease,
Transform has expended substantial effort since 2019 to locate a subtenant.
This effort was already a difficult one because of the deteriorating market
for brick and mortar retailers and was further complicated and delayed by

2

the COVID-19 pandemic, which has had a devastating impact on shopping malls.

Earlier this year, Transform finally found a subtenant interested in subleasing one of the three floors subject to Sears' lease. *See* Carr Decl. ¶ 4. However, the subtenant would not conclude the transaction absent assurance that it will be able to remain in the premises if MOAC prevails on this appeal. Additionally, the parties had agreed that while this appeal is pending, Transform will not, among other things, enter into a sublease without the written consent of MOAC and its counsel. *See* SPA-11 (citing Dist. Ct. Dkt. No. 28). Transform sought MOAC's consent to this potential sublease but MOAC would not meaningfully discuss the matter. *See id*. ¶ 5.

The impending September 5, 2021 deadline could divest Transform of the very assignment at issue on this appeal, thereby divesting this Court of its right to decide the appeal in the process.  To avoid this harm, Transform requests that the Court enter an order tolling the September 5, 2021 deadline

to sublet until 60 days[1] after the Court enters its order resolving the appeal.

Transform has conferred with MOAC and understands it does not oppose

the relief requested.

## BACKGROUND

### I.    Lower Court Proceedings

As part of its bankruptcy proceedings, Sears sold most of its assets to

Transform pursuant to an Asset Purchase Agreement that, *inter alia,* allowed

the Sears estate to sell the Mall of America lease to Transform. *See* SPA-4.

The lease here is for a three-story location with nearly 70 years remaining.

*See id*.

The bankruptcy court issued an order authorizing the sale of this lease

to Transform, over MOAC's objection, on September 5, 2019. *See* SPA-65. In

response to MOAC's objection to the assignment, the bankruptcy court

required Transform to sublet a portion of the premises within two years of

---

[1]     If Transform loses its prospective subtenant before resolution of this appeal, 60 days will no doubt be inadequate to find a replacement subtenant. Transform reserves all rights to seek a greater extension of that period as well as to seek damages from MOAC for unreasonably interfering with Transform's ability to sublease the property in violation of the bankruptcy court's injunction.

4

the sale, "on the condition that [MOAC] does not improperly interfere with [Transform's] attempt to sublet the premises." *See* SPA-82.

MOAC appealed the sale order to the district court. The district court originally vacated the bankruptcy court's order and remanded in a February 27, 2020 decision. SPA-86. After entry of that order, Transform and MOAC entered into a stipulation under which they agreed that Transform could market the lease to potential new subtenants, but that no action would be taken with respect to any potential lease without the written consent of MOAC and its counsel. *See* SPA-11.

Transform then petitioned the district court for rehearing on the grounds that the court lacked jurisdiction over the appeal from the sale order pursuant to 11 U.S.C. § 363(m). The district court granted rehearing, vacated its February 27, 2020 decision, and dismissed MOAC's appeal for lack of appellate jurisdiction. MOAC then appealed to this Court without seeking a stay of the district court's rehearing decision; Transform conditionally cross-appealed the district court's original ruling.

## II.      This Court Grants Expedited Review

On March 9, 2021, after the appeal was fully briefed, Transform filed a

motion to expedite the appeal, citing the upcoming September 5, 2021

deadline to sublet as grounds for expediting the hearing and decision. On

March 16, 2021, this Court granted the motion to expedite, scheduling oral

argument for April 30, 2021.

The appeal remains pending.

## III.     The Inability to Find a Subtenant While the Appeal Remains Extant

Sears entered into the lease for a three-story location at the Mall of

America in 1991. Sears ceased operations at the store in 2019, but the

underlying lease, which runs until 2091 and has a rent of $10 per year, has

substantial value. *See* SPA-88-89.

Since the approval of its purchase of the lease, Transform searched for

a subtenant to take some or all of the space. In a difficult environment for

brick and mortar retailers, that has been a challenging process, and was

made all the more challenging in 2020 with the onset of the COVID-19

pandemic. *See* Carr Declaration ¶ 3.

6

After 18 months of searching, however, Transform made significant

progress in locating a potential subtenant seriously interested in subleasing

part of the space. *Id.* ¶ 4. But it is not possible to close that deal without

certainty that the subtenant will be able to remain in the leased premises (but

pay rent to whomever is determined to be the rightful owner of the lease)

regardless of the outcome of this appeal. *Id.* ¶¶ 4-5. Transform requested that

MOAC consent to the subtenant's right of quiet enjoyment under the

sublease, and that the parties agree that whoever prevails in this appeal

would receive the value of the lease. Specifically, Transform proposed that

it would (1) escrow all rent from the subtenant; (2) consent to any higher and

better lease that is found within a reasonable time; and (3) not argue that the

entry into the sublease would moot MOAC's appeal. *Id.* ¶ 5. This proposal

would have satisfied the September 5, 2021 deadline and would have

preserved the value of the leased space for the benefit of the prevailing party

on this appeal.

MOAC refused to discuss the proposed subtenancy unless Transform

provided information it did not have, including what will be done with the

7

remaining two floors for which no subtenant has been found. *Id*. If MOAC

simply runs out the clock on this appeal, it will seek to recapture the leased

property even if it loses the appeal: given the extraordinary challenges in the

shopping center and retail markets, there is a substantial risk that, as this

Court decides the appeal, Transform will be unable to either immediate close

a sublease with the tenant they have identified or find another subtenant in

any reasonable period of time, let alone in the next few weeks. *Id.* ¶ 6. That

could frustrate the appellate process merely because the process will have

consumed all the time contemplated by the bankruptcy court's initial order

approving the sale and sublease rights in Transform's favor.

ARGUMENT

## I.    This Court may Toll the Deadline under the All Writs Act

This Court is authorized to issue an order tolling the September 5, 2021

deadline until after the Court reaches a decision on the underlying appeal.

*See* 28 U.S.C. § 1651 (authorizing federal courts to "issue all writs necessary

or appropriate in aid of their respective jurisdictions and agreeable to the

8

usages and principles of law"). 28 U.S.C. § 1651; *see also Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 425 (2d Cir. 2004).

The All Writs Act empowers the Court to issue orders requiring action form litigants and lower courts. *See, e.g., Yonkers Racing Corp. v. City of Yonkers*, 858 F.2d 855, 863–65 (2d Cir.1988) (approving district court's removal under the All Writs Act of state court action, in absence of independent removal jurisdiction); *Benjamin v. Malcolm*, 803 F.2d 46, 53 (2d Cir. 1986) (affirming an order of the district court joining third-party defendants under the All Writs Act).[2] The deadline to sublet in the bankruptcy court order must be tolled while the appeal is resolved for this Court to be able to render its decision on this appeal.

Four independent reasons support tolling the deadline here.

---

[2] This Court, rather than the bankruptcy court, has jurisdiction to toll the order. *See In re Neuman*, 67 B.R. 99 (S.D.N.Y. 1986) (bankruptcy court lacks jurisdiction to modify an appealed order). Alternatively, as the case suggests, should the Court elect, it may order the bankruptcy court to toll the deadline. In either event, the analysis is the same.

9

18-23538-shl Doc 810348-3 Filed 03/09/22 Entered 03/09/22 19:26:19 Exhibit C -
Transforms Motion to Toll Deadline (2nd Cir)    Pg 18 of 24

## A. Tolling the Deadline Prevents Frustration of This Court's Prior Order

The All Writs Act empowers federal courts "to issue such commands as may be necessary or appropriate to effectuate and prevent frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *Sprint Spectrum L.P. v. Mills*, 283 F.3d 404, 413 (2d Cir. 2002); *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977).

The Court, by granting the motion to expedite the appeal, has already recognized the need for this issue to be determined prior to the September 5, 2021 deadline. Issuing an order extending the deadline to sublet would prevent frustration of the order granting the motion to expedite, while allowing the Court the time it needs to analyze the issues and draft an opinion.

Doubtless, the bankruptcy court did not impose the two year requirement believing that the appellate process would take that full period, nor could the bankruptcy court have anticipated a global pandemic would slow the courts—and business dealings—to make fulfillment of the two-year deadline nearly impossible.

10

## B. Tolling the Deadline Will Maintain the Status Quo

In determining whether to issue an order under the All Writs Act,
courts have "wide latitude." *United States v. Austin*, 496 F. Supp. 3d 815, 823
(S.D.N.Y. 2020). Indeed, federal courts often use the All-Writs Act to issue
orders to maintain the status quo while litigation is pending. *In re Johns-
Manville Corp.*, 27 F.3d 48 (2d Cir. 1994) (holding that federal courts had
authority under All-Writs Act to protect jurisdiction by staying payments
from trust while litigation surrounding the trust was pending); *see Arrow
Transp. Co. v. Southern Ry.*, 372 U.S. 658, 671 n. 22 (1963) (All Writs Act grants
"power to preserve the court's jurisdiction or maintain the status quo by
injunction pending review of an agency's action through the prescribed
channels."). As such, issuing an order tolling the deadline to sublet would
be appropriate because it would maintain the status quo while the appeal is
pending and would prevent MOAC from arguing that the lease should
revert to it during a pending appeal.

## C. Tolling the Deadline Preserves this Appeal

A court may issue an order under the All Writs Act where doing so is necessary to prevent the court from losing its ability to reach and resolve the merits of the federal suit before it. *See In re Baldwin–United Corp.,* 770 F.2d 328, 335 (2d Cir. 1985). Here, should the deadline to sublet pass prior to the Court's decision, MOAC could argue that the passing of the deadline means they are entitled to the lease irrespective of the Court's decision on this appeal, which would deprive the Court of its ability to reach and resolve the merits of the case. *See* Carr Declaration ¶ 7. This tactic could undermine a decision in favor of Transform such that upon winning the appeal, it loses the very legal rights it defended in that appeal.

## D. Tolling the Deadline Achieves the Rational Ends of Law

Finally, the broad power conferred by the All Writs Act is aimed at achieving "the rational ends of law." *United States v. Catoggio*, 698 F.3d 64, 67 (2d Cir. 2012). The rational ends of the law here require this Court to decide the pending issues, rather than allowing for the appeal to be frustrated by a technicality. Indeed, this Court "has expressed on numerous occasions its

12

preference that litigation disputes be resolved on the merits." *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995). This Court can meet that end by tolling the September deadline.

Even before the COVID-19 pandemic, it was challenging to find retail tenants willing to open large new stores in shopping centers. Carr, ¶ 3. If the September 5, 2021 deadline is not tolled, there is a significant risk that Transform would be irreparably injured by losing the subtenant, and it would be all but impossible to find another appropriate subtenant before the September 5, 2021 deadline. *Id.*, ¶ 7. No "rational ends of law" could support such an outcome. *Catoggio*, 698 F.3d at 67.

## II.    This Court's Inherent Powers Allow It to Toll the Deadline

"Federal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (internal quotation marks omitted). The Supreme Court has concluded that this inherent power sweeps broadly to allow courts the ability to dispose of cases in an orderly fashion. *See, e.g., Link v. Wabash R.*

*Co.*, 370 U.S. 626, 630 (1962) (upholding *sua sponte* dismissal for failure to prosecute); *Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 441 (2d Cir. 1964) (courts have "inherent power to grant [a] requested stay" of arbitration).

This case falls within that well-established case law. Tolling the deadline would allow the parties' rights to remain unharmed, while also giving this Court the time it needs to consider the issues raised by the parties and issue an opinion. Once the opinion is issued, if Transform prevails, it will need time to sign a new tenant post-judgment, and this extension will allow Transform the time to finalize the sublease with the Tenant previously identified or seek further relief from the bankruptcy court to provide it time to find another qualified candidate.

[*Remainder of page intentionally left blank*]

14

CONCLUSION

Transform respectfully requests that this Court enter an order tolling the deadline for Transform to sublet for an additional sixty days after this Court enters its decision regarding the appeal.

Date: August 12, 2021                          */s/ Richard A. Chesley*   

Richard A. Chesley
R. Craig Martin
Rachel Ehrlich Albanese
John O. Wray
Shelby Nace
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020
(212) 335-4500
Richard.Chesley@us.dlapiper.com

*Attorney for Appellee-Cross-Appellant*

## CERTIFICATION OF WORD COUNT

I certify that this Memorandum of Law complies with the word limit

requirements in Second Circuit Local Rule 27.1 and Federal Rule of

Appellate Procedure 27(d)(2) because this Memorandum of Law contains

less than 5,200 words.

 */s/ Richard A. Chesley* 
Richard A. Chesley