# EXHIBIT E

**Second Circuit Summary Order Affirming Dismissal**

20-1846-bk (L)
In re: Sears Holdings Corporation

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

1   At a stated term of the United States Court of Appeals for the Second Circuit,
2   held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the
3   City of New York, on the 17th day of December, two thousand twenty-one.
4
5       PRESENT:    RAYMOND J. LOHIER, JR.,
6                   JOSEPH F. BIANCO,
7                       *Circuit Judges*,
8                   RONNIE ABRAMS,
9                       *District Judge*.*
10      -----------------------------------------------------------------
11
12      IN RE: SEARS HOLDINGS CORPORATION,
13
14          *Debtor*.
15
16      -----------------------------------------------------------------
17
18      MOAC MALL HOLDINGS LLC,
19

---

* Judge Ronnie Abrams, of the United States District Court for the Southern District of New York, sitting by designation.

|   |   |   |
|---|---|---|
| | *Appellant-Cross-Appellee*, | |
| | v. | Nos. 20-1846-bk, 20-1953-bk |
| | TRANSFORM HOLDCO LLC, | |
| | *Appellee-Cross-Appellant*, | |
| | SEARS HOLDINGS CORPORATION, | |
| | *Debtor-Appellee*. | |

-----------------------------------------------------------------

FOR APPELLANT-CROSS-APPELLEE:    ALEXANDER J. BEEBY (Thomas J. Flynn, *on the brief*), Larkin Hoffman Daly & Lindgren Ltd., Minneapolis, MN; David W. Dykhouse, Daniel A. Lowenthal, Patterson Belknap Webb & Tyler LLP, New York, NY

FOR APPELLEE-CROSS-APPELLANT:    RICHARD A. CHESLEY (Rachel Ehrlich Albanese, *on the brief*), DLA Piper LLP, New York, NY; Craig Martin, DLA Piper LLP, Wilmington, DE

Appeal from a judgment of the United States District Court for the Southern District of New York (Colleen McMahon, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court is AFFIRMED.

1       Appellant-Cross-Appellee MOAC Mall Holdings LLC ("MOAC") appeals

2   from a judgment of the United States District Court for the Southern District of

3   New York (McMahon, J.), which (1) dismissed as moot under 11 U.S.C. § 363(m)

4   MOAC's appeal from a September 5, 2019 assignment order (the "Assignment

5   Order") issued by the United States Bankruptcy Court for the Southern District

6   of New York (Drain, B.J.), and (2) denied MOAC's motion for rehearing.

7   Appellee-Cross-Appellant Transform Holdco LLC ("Transform") conditionally

8   appeals the District Court's initial order of February 27, 2020, which reversed the

9   Bankruptcy Court's judgment entered in Transform's favor.   We assume the

10  parties' familiarity with the underlying facts and procedural history, to which we

11  refer only as necessary to explain our decision to affirm.   Because we conclude

12  that MOAC's appeal was properly dismissed as moot, we do not address the

13  merits of Transform's conditional cross-appeal.

14      "A district court's order in a bankruptcy case is subject to plenary review,

15  meaning that this Court undertakes an independent examination of the factual

16  findings and legal conclusions of the bankruptcy court."   D.A.N. Joint Venture

17  v. Cacioli (In re Cacioli), 463 F.3d 229, 234 (2d Cir. 2006) (quotation marks

3

1   omitted).    A bankruptcy court's conclusions of law are reviewed <u>de novo</u> and its

2   findings of fact for clear error.    <u>Id.</u>    We review <u>de novo</u> questions about

3   whether an appeal relating to a bankruptcy court decision is moot.    See

4   <u>Contrarian Funds LLC v. Aretex LLC (In re WestPoint Stevens, Inc.)</u>, 600 F.3d

5   231, 247 (2d Cir. 2010).

6       Two provisions of the Bankruptcy Code, 11 U.S.C. § 363(b)(1) and 11

7   U.S.C. § 363(m), are principally at issue in this case, which arises from a Chapter

8   11 bankruptcy proceeding involving Sears Holding Corporation ("Sears").

9   Sears formerly occupied space in the Mall of America in Minneapolis under a

10  lease with MOAC.

11      By order dated February 8, 2019 (the "Sale Order"), the Bankruptcy Court

12  authorized a sale under 11 U.S.C § 363(b), which, with exceptions not pertinent

13  here, permits a trustee, after notice and a hearing, to use, sell, or lease property of

14  the estate outside of the ordinary course of business.    11 U.S.C. § 363(b)(1).[1]

---

[1] Section 363(b)(1) provides:
    (1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate, except that if the debtor in connection with offering a product or a service discloses to an individual a policy

4

1   Through the Sale Order, Transform, among other things, purchased from Sears

2   the right to designate which assignee would assume Sears's lease.   The parties

3   do not dispute that the Sale Order was authorized under § 363(b).   After the sale

4   closed, the Bankruptcy Court entered the Assignment Order, which authorized

5   Transform to assign the lease to its wholly-owned subsidiary, Transform Leaseco

6   LLC ("Leaseco"), and permitted Leaseco to assume the lease.   MOAC moved to

7   stay Transform's assignment of the lease, but the Bankruptcy Court entered an

8   order denying the motion.   MOAC then appealed the Assignment Order to the

9   District Court, but it is undisputed that it did so without first obtaining from the

10  District Court a stay of the assignment pending resolution of the appeal.

---

    prohibiting the transfer of personally identifiable information about individuals to persons that are not affiliated with the debtor and if such policy is in effect on the date of the commencement of the case, then the trustee may not sell or lease personally identifiable information to any person unless—
        (A) such sale or such lease is consistent with such policy; or
        (B) after appointment of a consumer privacy ombudsman in accordance with section 332, and after notice and a hearing, the court approves such sale or such lease—
            (i) giving due consideration to the facts, circumstances, and conditions of such sale or such lease; and
            (ii) finding that no showing was made that such sale or such lease would violate applicable nonbankruptcy law.

11 U.S.C. § 363(b)(1).

5

Relying on § 363(m), Transform — at the latest possible stage in the District Court proceedings — challenged the District Court's review on appeal of the Bankruptcy Court's Assignment Order.   Section 363(m) "creates a rule of statutory mootness . . . which bars appellate review of any sale authorized by 11 U.S.C. § 363(b) . . . so long as the sale was made to a good-faith purchaser and was not stayed pending appeal."   In re WestPoint Stevens, Inc., 600 F.3d at 247 (quotation marks omitted).   The text of § 363(m) provides as follows:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).   Thus, as the text makes clear, in the absence of a stay, § 363 limits appellate review of a final sale to "challenges to the 'good faith' aspect of the sale" without regard to the merits of the appeal.   In re WestPoint Stevens, Inc., 600 F.3d at 247; see also Licensing by Paolo, Inc. v. Sinatra (In re Gucci), 105 F.3d 837, 838 (2d Cir. 1997).   The provision reflects Congress's "uniquely important interest in assuring the finality of a sale that is completed pursuant to

6

1   11 U.S.C. § 363(b)" and protecting good faith purchasers.   In re WestPoint

2   Stevens, Inc., 600 F.3d at 248.

3       We have held that § 363(m) also limits appellate review of any transaction

4   that is integral to a sale authorized under § 363(b) — for example, where

5   removing the transaction from the sale would prevent the sale from occurring or

6   otherwise affect its validity.   See id. at 250 (citing In re Stadium Mgmt. Corp.,

7   895 F.2d 845, 849 (1st Cir. 1990)); see also Cinicola v. Scharffenberger, 248 F.3d

8   110, 125 (3d Cir. 2001).   The Bankruptcy Court concluded that § 363(m) does not

9   apply to the assignment in this case.   But we note that the parties before it did

10  not raise the legal question that is before us — namely, whether the assignment is

11  integral to the Sale Order such that § 363(m) applies to the assignment.   The

12  parties elected instead to focus the Bankruptcy Court's attention on whether

13  MOAC would suffer irreparable harm in the absence of the stay.

14      The District Court, however, was squarely presented with the issue of

15  whether the assignment in this case was integral to the Sale Order and

16  determined that it was.   We agree that the assignment of the lease to Leaseco

17  was integral to the sale of Sears's assets to Transform, especially since both the

7

1  Sale Order and the Assignment Order expressly state that the latter is integral to

2  the former.   Specifically, the Sale Order states that "[t]he assumption and

3  assignment of the Assigned Agreements are integral to the Asset Purchase

4  Agreement" pursuant to which the sale was accomplished.   Joint App'x 28.

5  "Assigned Agreements" is defined in the Asset Purchase Agreement to include

6  "Designatable Leases" like the Mall of America lease.   Supp. App'x 11.   The

7  Assignment Order contains language nearly identical to the Sale Order.   It

8  provides that "[t]he assumption and assignment of the Designated [Mall of

9  America] Lease is integral to the Asset Purchase Agreement."   Special App'x

10 72.[2]   Taken together, this language supports the conclusion that the successful

11 assignment of the leases, including the Mall of America lease at issue here, was

12 integral to the Sale Order.   The District Court thus correctly found that

13 § 363(m)'s threshold requirement was satisfied.

14        Urging a contrary conclusion, MOAC argues that the term "integral" is

15 ambiguous and that the assignment of the lease here is not integral to the

---

[2] "Integral" is not defined in the contracts or the orders, so the word is defined by its ordinary meaning and means "essential to completeness."   MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2020).

8

1   § 363(b) sale because the Sale Order does not guarantee that Transform's

2   designated assignee would be approved.   According to MOAC, the Sale Order

3   provides that the parties must adhere to the designation-of-rights procedure

4   contained in the Sale Order and Asset Purchase Agreement, and that while

5   failure to abide by the procedure might scuttle the sale, an unsuccessful

6   assignment could not.

7       We are not persuaded.   Under the designation-of-rights procedure,

8   Transform's designated assignee must be approved if (1) the assignee satisfied

9   certain contractual and statutory conditions, and (2) either no one objected to the

10  assignment or the Bankruptcy Court resolved any objections in Transform's

11  favor.   See Joint App'x 71–72; see also Special App'x 42.   Here, the Bankruptcy

12  Court resolved MOAC's challenge to the assignment in Transform's favor and

13  approved the Assignment Order after finding that Leaseco had complied with all

14  necessary contractual and statutory requirements.   In the absence of a stay of

15  the assignment, reversing or modifying the Bankruptcy Court's approval of the

16  assignment after the court has made such a finding would negate the parties'

17  agreement.   Reversing or modifying the Bankruptcy Court's approval would

9

1    also run contrary to § 363(m)'s rule limiting appellate jurisdiction over an

2    unstayed sale order to the narrower issue of whether the sale was entered in

3    good faith.    See In re Gucci, 105 F.3d at 840 (recognizing "that a rule limiting

4    appellate jurisdiction over unstayed sale orders to the issue of good faith furthers

5    the policy of finality in bankruptcy sales").

6          MOAC next argues that Transform has waived its ability to rely on

7    § 363(m), or is estopped from doing so, because it raised its jurisdictional

8    argument only after the District Court ruled against it on the merits and because

9    it insisted before the Bankruptcy Court that § 363(m) was not applicable under

10   the circumstances of this case.    At most, MOAC acknowledges, the statute's

11   limitations on available appellate relief can render an affected appeal moot, but

12   MOAC contends that these limitations are not "truly jurisdictional" and are

13   therefore subject to waiver and judicial estoppel.

14         But that argument is foreclosed by our binding precedent in In re

15   WestPoint Stevens, Inc., under which § 363(m) deprived the District Court of

16   appellate jurisdiction, and which followed the Supreme Court's warning in

17   Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2005), that we not conflate

10

jurisdictional and nonjurisdictional statutory limitations. "We have held in no ambiguous terms that section 363(m) is a limit on our jurisdiction and that, absent an entry of a stay of the Sale Order, we only retain authority to review challenges to the 'good faith' aspect of the sale." In re WestPoint Stevens, Inc., 600 F.3d at 248; see also In re Gucci, 105 F.3d at 838 (holding that, pursuant to § 363(m), appellate courts "have no jurisdiction to review an unstayed sale order once the sale occurs, except on the limited issue of whether the sale was made to a good faith purchaser"). Thus, absent the entry of a stay (and excepting challenges to a purchaser's good faith), the District Court had no authority to reverse or modify a sale order in a way that affects the validity of a § 363 sale, regardless of the merit of the petitioner's appeal. See In re WestPoint Stevens, Inc., 600 F.3d at 247; In re Gucci, 105 F.3d at 840; cf. Bowles v. Russell, 551 U.S. 205, 213–14 (2007).

Relying primarily on Arbaugh, MOAC also argues that § 363(m) cannot be jurisdictional because it is not phrased in clearly jurisdictional terms and because viewing the statute as imposing a jurisdictional limitation conflates threshold requirements bearing on a statute's applicability, such as elements of a claim,

11

1    with jurisdictional requirements.   In advancing this argument, MOAC suggests

2    that we did not mean to hold in In re WestPoint Stevens, Inc. that, under

3    circumstances that also exist in this case, § 363(m) divests appellate courts of

4    jurisdiction to grant relief.   In urging a contrary conclusion, moreover, MOAC

5    mistakenly relies in part on cases that relate to a district court's original subject-

6    matter jurisdiction rather than, as here, appellate jurisdiction.   MOAC's

7    argument ignores that, in the absence of a stay, the District Court, on appeal, was

8    unable to grant effective relief without impacting the validity of the sale at issue,

9    thus rendering the case moot by operation of a clear limit on its appellate review

10   that is imposed by Congress, not by rule.   Moreover, in a summary order issued

11   earlier this year, a panel of this Court reaffirmed that § 363(m) is jurisdictional

12   because it "creates a rule of statutory mootness."   In re Pursuit Holdings (NY),

13   LLC, 845 F. App'x 60, 62 (2d Cir. 2021) (quoting In re WestPoint Stevens, Inc., 600

14   F.3d at 247).   For these reasons, we are unpersuaded by MOAC's argument that

15   statutory mootness under § 363(m) is subject to waiver or judicial estoppel, or

16   that the statute conferred jurisdiction upon the District Court under the

17   circumstances of this case.

1    Finally, the District Court did not abuse its discretion when it dismissed

2    MOAC's alternative good-faith purchaser argument — raised for the first time in

3    MOAC's own motion for a rehearing — as untimely.   As previously noted,

4    under the circumstances here, the reviewing courts "only retain authority to

5    review <u>challenges</u> to the 'good faith' aspect of the sale."   <u>In re WestPoint</u>

6    <u>Stevens, Inc.</u>, 600 F.3d at 248 (emphasis added).   In other words, appellate

7    review is available only when the parties challenge the good-faith aspect of a

8    sale.   Here, neither party raised the good-faith issue on Transform's motion for

9    a rehearing, and the District Court did not err in declining to address the issue

10   <u>sua sponte</u>, as a court is not required to review the issue <u>sua sponte</u> before

11   dismissing an appeal as moot under § 363(m).   The District Court therefore

12   neither overlooked nor misapprehended a point of law or fact previously raised,

13   as is required to grant a motion for a rehearing under Bankruptcy Rule 8022.

14   In sum, because MOAC failed to obtain a stay of the Assignment Order,

15   we agree with the District Court that it lacked jurisdiction to review that order.

13

1       We have considered MOAC's remaining arguments and conclude that

2   they are without merit.   For the foregoing reasons, the judgment of the District

3   Court is AFFIRMED.[3]

4                                       FOR THE COURT:
5                                       Catherine O'Hagan Wolfe, Clerk of Court

---

[3] The District Court's May 11, 2020 order granting Transform's motion for rehearing and vacating the court's original decision in favor of MOAC, and its June 8, 2020 order denying MOAC's motion for rehearing and directing the district clerk of court in effect to close the case, together constitute a final decision that "end[ed] the litigation on the merits and [left] nothing for the court to do but execute the judgment." Hall v. Hall, 138 S. Ct. 1118, 1123–24 (2018); see 28 U.S.C. § 1291 (providing appellate jurisdiction over "appeals from all final decisions of the district courts").   We appreciate that, on March 11, 2020, the District Court entered a stay of what it described as its initial judgment in favor of MOAC.   The District Court may well have thought that the stay remained in place after it later granted Transform's motion for rehearing.   We note, however, that no judgment of the District Court was ever actually set forth in a separate document at any point.   Of course, in the absence of a separate document, judgment is deemed entered 150 days after the order from which the appeal lies is entered.   Fed. R. Civ. P. 58(c)(2)(B).   But we will repeat our strong suggestion that "where the District Court makes a decision intended to be 'final,' the better procedure is to set forth the decision in a separate document called a judgment." Elfenbein v. Gulf & W. Indus., Inc., 590 F.2d 445, 449 (2d Cir. 1978), abrogated on other grounds by Espinoza ex rel. JPMorgan Chase & Co. v. Dimon, 797 F.3d 229 (2d Cir. 2015).

14

**United States Court of Appeals for the Second Circuit**
**Thurgood Marshall U.S. Courthouse**
**40 Foley Square**
**New York, NY 10007**

**DEBRA ANN LIVINGSTON**
CHIEF JUDGE

Date: December 17, 2021
Docket #: 20-1846bk
Short Title: In Re: Sears Holdings Corporat

**CATHERINE O'HAGAN WOLFE**
CLERK OF COURT

DC Docket #: 19-cv-9140
DC Court: SDNY (WHITE PLAINS)DC Docket #: 19-cv-9140
DC Court: SDNY (WHITE PLAINS)
DC Judge: McMahon

### BILL OF COSTS INSTRUCTIONS

The requirements for filing a bill of costs are set forth in FRAP 39. A form for filing a bill of costs is on the Court's website.

The bill of costs must:
*   be filed within 14 days after the entry of judgment;
*   be verified;
*   be served on all adversaries;
*   not include charges for postage, delivery, service, overtime and the filers edits;
*   identify the number of copies which comprise the printer's unit;
*   include the printer's bills, which must state the minimum charge per printer's unit for a page, a cover, foot lines by the line, and an index and table of cases by the page;
*   state only the number of necessary copies inserted in enclosed form;
*   state actual costs at rates not higher than those generally charged for printing services in New York, New York; excessive charges are subject to reduction;
*   be filed via CM/ECF or if counsel is exempted with the original and two copies.

18-23538-shl Doc 10348-5 Filed 03/09/22 Entered 03/09/22 19:26:19 Exhibit E - Second Circuit Summary Order Affirming Dismissal Pg 17 of 18

Case 20-1846, Document 125, 12/17/2021, 3231241, Page 1 of 2

**United States Court of Appeals for the Second Circuit**
**Thurgood Marshall U.S. Courthouse**
**40 Foley Square**
**New York, NY 10007**

**DEBRA ANN LIVINGSTON**
**CHIEF JUDGE**

Date: December 17, 2021
Docket #: 20-1846bk
Short Title: In Re: Sears Holdings Corporat

**CATHERINE O'HAGAN WOLFE**
**CLERK OF COURT**

DC Docket #: 19-cv-9140
DC Court: SDNY (WHITE PLAINS)DC Docket #: 19-cv-9140
DC Court: SDNY (WHITE PLAINS)
DC Judge: McMahon

# VERIFIED ITEMIZED BILL OF COSTS

Counsel for
_____

respectfully submits, pursuant to FRAP 39 (c) the within bill of costs and requests the Clerk to prepare an itemized statement of costs taxed against the
_____

and in favor of
_____

for insertion in the mandate.

Docketing Fee            _____

Costs of printing appendix (necessary copies _____ ) _____

Costs of printing brief (necessary copies _____ \_\_\_\_ ) _____

Costs of printing reply brief (necessary copies _____ ) _____

**(VERIFICATION HERE)**

_____
Signature