**DLA PIPER LLP (US)**                  **Hearing Date: March 25, 2022, 10:00 A.M.**
Richard A. Chesley
R. Craig Martin                         **Reply Deadline: March 23, 2022, 4:00 P.M.**
Rachel Ehrlich Albanese
1251 Avenue of the Americas
New York, NY  10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

*Counsel to Transform Holdco LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 18-23538 (RDD) |
| SEARS HOLDINGS CORPORATION, *et al.*, | |
| | (Jointly Administered) |
| Debtors.[1] | |

**RESPONSE TO OBJECTION OF MOAC MALL HOLDINGS LLC TO SUBJECT MATTER JURISDICTION WITH RESPECT TO TRANSFORM HOLDCO LLC'S MOTION TO ENFORCE THE ORDER AUTHORIZING ASSUMPTION AND ASSIGNMENT OF LEASE WITH MOAC MALL HOLDINGS LLC**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................4

BACKGROUND .....................................................................................................................6

ARGUMENT..........................................................................................................................8

    A.       This Court has Jurisdiction to Determine that Transform has Satisfied Paragraph 17 of the Assignment Order. ................................................................................................ 8

    B.       This Court Has Personal Jurisdiction Over MOAC............................................. 11

NOTICE...............................................................................................................................11

CONCLUSION......................................................................................................................12

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page**

*Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 151 (2009)                      9

*In re Interstate Bakeries Corp.*, 751 F.3d 955, 960 (8th Cir. 2014)              10

*In re Lafayette Radio Elecs. Corp.*, 761 F.2d 84, 89 n.3 (2d Cir. 1985)           9

*In re Motors Liquidation Co.*, 829 F.3d 135, 153 (2d Cir. 2016)                   9

*In re Petrie Retail, Inc.*, 304 F.3d 223, 231 (2d Cir. 2002)                     11

Transform Holdco LLC ("**Transform**"), by and through its undersigned counsel, hereby submits this response to the objection of MOAC Mall Holdings LLC ("**MOAC**") to subject matter jurisdiction and personal jurisdiction with respect to all remaining disputes concerning the *Motion to Enforce the Order (I) Authorizing Assumption and Assignment of Lease with MOAC Mall Holdings LLC and (II) Granting Related Relief* [ECF No. 10194] (the "**Motion to Enforce**").  In response, Transform respectfully states as follows:

## PRELIMINARY STATEMENT

1.      Paragraph 17 of this Court's Assignment Order provides that "the Buyer must initially sublet a portion of the premises for the Designated Lease within two years, on the condition that the counterparty to the Designated Lease does not improperly interfere with the Buyer's attempt to sublet the premises for the Designated Lease."  Assignment Order ¶ 17. Transform now seeks a determination that, having located the Subtenant and entered into the Sublease, it has satisfied paragraph 17's requirement that it "initially sublet . . . within two years."

2.      MOAC disagrees.  MOAC is willing to *stipulate* that paragraph 17 has been satisfied with respect to this particular Sublease, but if for any reason the Sublease falls through, it insists that paragraph 17 of the Assignment Order should be rewritten to require Transform to find a new subtenant within a reasonable time.

3.      The question here is whether this Court has jurisdiction to adjudicate this dispute over Transform's compliance with paragraph 17 of the Assignment Order, which it does.  The two-year deadline to initially sublet a portion of the Premises is not in the Master Lease.  It was added to the Assignment Order, as a form of adequate assurance, in response to MOAC's expressed concern about the harm the Mall would suffer if the premises remained dark for a

substantial period.  No other court could possibly have jurisdiction to evaluate the scope of rights arising under a requirement imposed by the Assignment Order itself.

4.       If there was any doubt on this point, the Assignment Order provides a rule of decision: "This Court shall retain *exclusive* jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of this Order . . .  to adjudicate disputes related to . . . this Order . . . and to enforce the injunctions set forth herein."  Assignment Order ¶ 24 (emphasis added).

5.       This dispute is that simple: Transform seeks an order deeming paragraph 17 satisfied; MOAC purports to reserve rights that were created under the Assignment Order.  This dispute thus arises under the Assignment Order, and this Court is the only court with jurisdiction to determine the scope of the parties' rights.

6.       MOAC tries to have it both ways by stipulating that the two-year requirement has been met by this Subtenant,[2] yet refusing to concede that the two-year requirement has been satisfied.  This is too cute.  The Court imposed the two-year condition to protect MOAC from dilatory behavior by Transform.  MOAC is now asking that the requirement be extended because its exercise of its appellate rights, still ongoing, has already consumed more than two years and may cause Transform to lose the Subtenant.  But Transform satisfied the Court's requirement to *initially sublet within two years* when it entered into the Sublease.  That should be the end of it.

7.       In the final analysis, this jurisdictional dispute is really up to MOAC.  If MOAC wants to keep any benefit from the Assignment Order's two-year deadline, it is subject to this Court's jurisdiction on interpreting and enforcing that deadline, including determining any

---

[2]        Given the commercial sensitivities, the parties continue to refer to the potential subtenant as "Subtenant."

subsequent disputes arising from it.  If it is willing to concede the deadline has been satisfied, then this dispute is moot.

## BACKGROUND

8.      After notice and a hearing, this Court entered the Assignment Order on September 5, 2019.  Although the Court granted the motion to assume, assign, and transfer the Master Lease to Transform, it imposed conditions in response to objections raised by MOAC throughout the Assignment Hearing.  *See* Hr'g Tr. 53 & 64, Aug. 19, 2019 (argument that Transform has no tenant); *id.* at 106 (MOAC expressing concern over the length of the lease: "[A]t a minimum, we'd need some period of time that [we'd] want this to not go dark . . .").  To resolve these concerns, the Court ruled that "two years was not an unreasonable amount of time for a property like this to enter into at least one material sublease as assignment, which again subject to the broad, or well, their phrase, weak restriction in the lease, Sears and its assignees have an absolute right to do."  *Id.* at 134:1–6.  This ruling became the basis for paragraph 17's two-year deadline, which provides that "the Buyer must initially sublet a portion of the premises for the Designated Lease within two years, on the condition that the counterparty to the Designated Lease does not improperly interfere with the Buyer's attempt to sublet the premises for the Designated Lease."  Assignment Order ¶ 17.

9.      MOAC has resolutely pursued its appeal of the Assignment Order over the past two and a half years.  Prior to the Second Circuit's decision rejecting MOAC's appeal on December 17, 2021, and within the Assignment Order's two-year deadline, Transform had entered into discussions with a well-known international department store and fast fashion retailer for a sublease of a portion of the leased premises. *See In re Sears Holding Corp.*, Dkt. No. 20-1846 at ECF 116-2 (2d. Cir 2021) (Declaration of D. Scott Carr, ¶ 4).  Although Transform reached out to

MOAC to negotiate an agreement that would preserve the subtenancy while preserving MOAC's rights on appeal, MOAC was essentially unwilling even to discuss the proposed Subtenancy. *Id.*, ¶ 6.

10.     Even so, Transform was able to enter into a Sublease, contingent on the litigation with MOAC being resolved in Transform's favor within 270 days from the date the Sublease was signed, November 2, 2021.  Given MOAC's unwillingness to agree that the Sublease satisfied paragraph 17 of the Assignment Order, among other disputes, Transform filed the Motion to Enforce.  Although the Motion to Enforce initially sought a broader ruling with respect to the litigation contingency in the Sublease,[3] only one issue is now before the Court:  whether Transform has satisfied the two-year deadline in the Assignment Order.

11.     On February 16, 2022, the Second Circuit issued a limited remand to this Court to enable it to enter a ruling on the two-year deadline.  At the February 24 hearing on the Motion to Enforce, MOAC stated that it was willing to waive the two-year deadline solely for the Subtenant but to preserve its right to object in the future that the deadline had not been met, if (for whatever reason) this Sublease fell through.  The Subtenant is otherwise ready to move in, but for MOAC's continuing appeals.

12.     At the hearing, the Court asked the parties to agree to an order regarding the Second Circuit's limited remand or agree to a date for a hearing on the form of order and on the subject matter jurisdiction issues raised by MOAC if an agreement on the form of order was not reached by March 4, 2022.  On March 4, the parties notified the Court that they had not agreed to the form of order but had agreed to a briefing schedule on the form of order and the subject matter jurisdiction issues.

---

[3]        Transform is no longer requesting such additional relief.

13.     On March 9, 2022, MOAC filed a supplemental objection (the "**Supplemental Objection**"), contending that the Court lacks jurisdiction to enter any further orders beyond summarily denying the Motion to Enforce.  *See* ECF No. 10348 (submitting a proposed form of order).

## ARGUMENT

### A.  This Court has Jurisdiction to Determine that Transform has Satisfied Paragraph 17 of the Assignment Order.

14.     MOAC's jurisdictional arguments fail to engage with the actual issue before the Court.  The only remaining dispute between the parties is as follows:  Transform seeks an order providing in relevant part that "Transform has initially sublet a portion of the premises for the Designated Lease within two years, thereby satisfying the two-year sublease deadline set forth in paragraph 17 of the Assignment Order."  *See* Ex. A (proposed form of order). This mirrors the precise language in paragraph 17.

15.     MOAC does not agree that such an order should be entered. Instead, it would not have the Court make its own determination, but rather would have the Court rely on MOAC's say-so in resolving the current dispute over paragraph 17.  As MOAC explained in the February 24 hearing, it will only "waive" the provision in paragraph 17 with respect to this subtenant. Feb. 24 Hr'g Tr. 33:2. It refused to say that paragraph 17 had been satisfied.  But agreeing that Transform has initially sublet the lease — as the Assignment Order requires — should be the end of the matter.  MOAC's refusal to consent to an order that simply acknowledges that paragraph 17 has been satisfied amounts to an attempt to expand its rights under the Assignment Order. Indeed, in rejecting Transform's proposed order that mirrored the language of paragraph 17, MOAC insisted on a wholesale rewrite of this provision of the Assignment Order that would add new requirements for Transform beyond the two-year deadline.

16.     The only court with jurisdiction to evaluate the scope of that provision is this Court. As the Court said on February 24, there is an "really an enormous . . . body of caselaw that says that if the issue is the application of the court's order and the interpretation of it, then that's arising in jurisdiction and a core matter." Feb. 24 Hr'g Tr. 31:2-6.

17.     The Court is correct.  In *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 151 (2009), the Supreme Court held that "the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders," particularly when the bankruptcy court explicitly retained jurisdiction to enforce that order when it issued it.  *Id*. (citing *Local Loan Co. v. Hunt*, 292 U. S. 234 (1934)); *accord In re Motors Liquidation Co.*, 829 F.3d 135, 153 (2d Cir. 2016); *In re Lafayette Radio Elecs. Corp.*, 761 F.2d 84, 89 n.3 (2d Cir. 1985) (explaining that a bankruptcy court retains ancillary jurisdiction to decide issues under an order it entered even where there is no arising in, arising under, or related to jurisdiction).  As in *Travelers*, this Court retained jurisdiction over this dispute in the Assignment Order:  "This Court shall retain *exclusive* jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of this Order . . .  to adjudicate disputes related to . . . this Order . . . and to enforce the injunctions set forth herein." Assignment Order ¶ 24 (emphasis added).  Transform now asks the Court to interpret and enforce its prior order in determining whether or not the two-year deadline of paragraph 17 has been satisfied.

18.     Put another way, but for the bankruptcy proceeding, the two-year deadline would not exist; thus, disputes over it must inherently arise in the bankruptcy.  This is evident by how it came about:  the Master Lease did not impose the two-year requirement, as it did not specify any time frame in which to sublease the store after it "went dark."  The two-year deadline instead arises out of the Assignment Order.  Thus, any dispute about it necessarily springs from this bankruptcy

9

case.  *See* Hr'g Tr. 52:20-24, Jan. 20, 2022 ("[T]hat's, you know, how I viewed my order and it comes right out of the oral argument and the discussion that you should have a full two years to market and sell the lease, or to, you know, as a sublease.").

19.     MOAC's "concession" that it is willing to waive any rights it has under the two-year deadline but only with respect only to this particular Sublease does not alter the analysis. Transform's contention is that it has satisfied the two-year deadline as written.   MOAC's willingness to make a concession as to the current Sublease does not resolve the dispute and therefore does not eliminate this Court's ability to determine it.  *See*, *e.g.*, *In re Interstate Bakeries Corp.*, 751 F.3d 955, 960 (8th Cir. 2014) (partial waiver of an argument not sufficient to eliminate live dispute).  To be precise, MOAC's position is that if, for whatever reason, the Sublease falls through, MOAC should have the ability to enforce some version of the two-year deadline against Transform down the road.  This is true even though the only reason the Premises would remain vacant is MOAC's refusal to consent to the Subtenant moving into the Premises pending further appeals.  Even MOAC's counterargument relies on a twisted reading of the Assignment Order — and thus still means only this Court can determine its validity.

20.     MOAC has offered no explanation for its attempt to preserve the right to invoke this Court's two-year deadline in the future if the Sublease does not take effect.  And it should not be able to do so.  In response to MOAC's expressed concern that Transform would do nothing and leave the space dark, the Court imposed the two-year deadline on Transform.  As it turns out, the property has remained dark solely due to MOAC's actions.  Transform has done precisely what the Court required of it:  it has actively marketed the lease and obtained the Subtenant, which is ready to take possession of the Premises.  The only reason it has not done so is because of MOAC's

unwillingness to agree to leave the Subtenant in place if it prevails in the Supreme Court, with the benefit of the Sublease transferred to MOAC.

21.      This Court plainly has jurisdiction to resolve this dispute and enter an order stating that Transform has complied with paragraph 17 of the Assignment Order.

**B.  This Court Has Personal Jurisdiction Over MOAC.**

22.      MOAC's argument regarding personal jurisdiction is derivative of its subject-matter jurisdiction argument.  *See* MOAC Br. at 20.  Although this argument is thus necessarily pretermitted by the subject-matter jurisdiction argument, it is still flatly wrong as a matter of law.

23.      Participation in a bankruptcy gives the bankruptcy court jurisdiction over the party participating in the proceedings.  For example, "filing a proof of claim," or "appear[ing] in the debtors' bankruptcy proceeding, fil[ing] a motion with the bankruptcy court seeking determination and payment of its administrative rent charge, and submit[ting] objections to the debtors' motion seeking approval of the assumption and assignment of unexpired leases as well as the debtors' plan of reorganization" give the Court personal jurisdiction.  *In re Petrie Retail, Inc.*, 304 F.3d 223, 231 (2d Cir. 2002).  MOAC filed a proof of claim in the Sears' bankruptcy, and it objected to the assumption and assignment of the Lease.  MOAC thus submitted to personal jurisdiction to evaluate what is functionally MOAC's own claim to rights under paragraph 17 of the Assignment Order that the Court imposed at MOAC's behest.

**<u>NOTICE</u>**

24.      Notice will be provided in accordance with the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 (ECF No. 405).  Transform submits that no other or further notice is required.

## CONCLUSION

**WHEREFORE**, Transform respectfully submits that this Court has jurisdiction over the

Motion to Enforce and MOAC, and the Court should enter Transform's proposed form of order.


Dated: New York, New York
      March 21, 2022

Respectfully submitted,

**DLA Piper LLP (US)**
1251 Avenue of the Americas**,** 27th Floor
New York, NY 10020-1104
Phone: (212) 335-4500
Fax: (212) 335-4501


By: */s/ Rachel Ehrlich Albanese*
    Richard A. Chesley
    R. Craig Martin
    Rachel Ehrlich Albanese

    *Counsel to Transform Holdco LLC*