Hearing Date and Time: March 25, 2022 at 10:00 a.m. (prevailing Eastern Time)
Reply Deadline: March 23, 2022 at 4:00 p.m. (prevailing Eastern Time)

ROPES & GRAY LLP
Gregg M. Galardi
Andrew G. Devore
Daniel G. Egan
1211 Avenue of the Americas
New York, NY 10036-8704
Tel: (212) 596-9000
Fax: (212) 596-9090

ROPES & GRAY LLP
Douglas Hallward-Driemeier (admitted *pro hac vice*)
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6807
Tel: (202) 508-4600
Fax: (202) 508-4650

LARKIN HOFFMAN DALY & LINDGREN, LTD.
Gregory S. Otsuka (admitted *pro hac vice*)
8300 Norman Center Drive, Suite 1000
Minneapolis, MN 55437-1060
Tel: (952) 835-3800
Fax: (952) 896-3333

*Attorneys for MOAC Mall Holdings LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 18-23538 (RDD) |
| SEARS HOLDINGS CORPORATION, *et al.*, | Chapter 11 |
| Debtors.[1] | (Jointly Administered) |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**REPLY IN SUPPORT OF OBJECTION OF
MOAC MALL HOLDINGS LLC TO SUBJECT
MATTER JURISDICTION WITH RESPECT TO TRANSFORM
HOLDCO LLC'S MOTION TO ENFORCE THE ORDER AUTHORIZING
ASSUMPTION AND ASSIGNMENT OF LEASE WITH MOAC MALL HOLDINGS LLC**

MOAC Mall Holdings LLC ("MOAC"), by and through its undersigned counsel, hereby submits this reply (this "Reply") in support of its objection [ECF No. 10348] (the "Objection")[2] to this Court's exercise of subject matter jurisdiction and personal jurisdiction over MOAC with respect to all remaining disputes concerning the *Motion to Enforce the Order (I) Authorizing Assumption and Assignment of Lease with MOAC Mall Holdings LLC and (II) Granting Related Relief* [ECF No. 10194] (the "Motion to Enforce") filed by Transform Holdco LLC ("Transform"). In support of this Reply, MOAC respectfully submits as follows:

**REPLY**

1.  Transform has now abandoned its request that the Court determine the Master Lease Compliance issues, tacitly conceding that this Court lacks jurisdiction with respect to the state-law contract issues. *See Response to Objection of MOAC Mall Holdings LLC to Subject Matter Jurisdiction*, Dkt. No. 10358 ("Transform Response") ¶ 10 & n.3 ("Transform is no longer requesting such additional relief."). Nonetheless, after imposing on MOAC the costs of filing its Objection with respect to subject matter and personal jurisdiction as to the Master Lease Compliance Issues, Transform now seeks to entirely redefine the scope of the dispute, asserting that:

> The only remaining dispute between the parties is as follows: Transform seeks an order providing in relevant part that "Transform has initially sublet a portion of the premises for the Designated

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Objection. All citations to exhibits ("Ex. _") are to the exhibits attached to MOAC's Objection.

2

> Lease within two years, thereby satisfying the two-year sublease deadline set forth in paragraph 17 of the Assignment Order."

*See* Transform Response ¶ 14 & Ex. A (proposed order). Transform has thus now pivoted to seek entirely different relief to which it is not entitled, a determination—contrary to the terms of the Second Circuit's limited remand and unsupported by fact—that "Transform has initially sublet a portion of the premises," when that is decidedly not so.[3]

2.  The procedural history of the Second Circuit's limited remand illustrates the bait-and-switch Transform now attempts. This Court's indicative ruling was that the Adequate Assurance Sublet Deadline would not apply under the current circumstances and should be amended to provide a "reasonable time" following the conclusion of appeals for Transform to place a subtenant. *See, e.g.*, Ex. G. (Jan. 20, 2022 Tr.) at 71:16 ("I'm just focusing on a reasonable time at this point."). Upon Transform's own motion, the Second Circuit issued a limited remand to permit this Court to implement its indicative ruling. Transform now seeks relief beyond what this Court indicated it was prepared to enter and outside the scope of the Second Circuit's limited remand, asking that the Court now enter an order that the deadline has been "satisfied," a request this Court has already considered and rejected in its indicative ruling. *Id.* at 52:2-7.

3.  The declaration now requested by Transform is also unsupported by fact. While Transform has a proposed "sublease," that agreement has various unsatisfied contingencies, including that the ongoing appeal must be conclusively resolved in Transform's favor. The Adequate Assurance Sublet Deadline was not an empty gesture that Transform could satisfy in a check-the-box exercise through presenting a proposed sublease with numerous conditions that

---

[3]   To the extent that Transform's current proposed order could be construed to be a back-door determination of the Master Lease Compliance Issues, that would be contrary to Transform's express abandonment of such issues for determination by this Court and its tacit concession that the Court lacks subject matter jurisdiction as to the Master Lease Compliance Issues.

3

were not (and might never be) satisfied. Rather, it requires an actual, enforceable sub-tenancy, which is precisely why this Court provided in its indicative ruling that the deadline would be amended to provide a "reasonable" time following conclusion of the appeal.

4. Attached hereto as <u>Exhibit I</u> is MOAC's proposed form of order on the limited remand consistent with this Court's indicative ruling that Transform should be provided a "reasonable time" to place a subtenant following the conclusion of appeals. In an attempt (apparently unsuccessful) to avoid disputes over the deadline under the present circumstances, and as previously represented to this Court and the Second Circuit, MOAC agrees that the Adequate Assurance Sublet Deadline will not apply to the currently proposed sublease, but to the extent the proposed sublease is not consummated, as this Court provided in its indicative ruling, Transform shall have a "reasonable time" to place a subtenant.

## **ARGUMENT**

### I. ANY ORDER ON THE TWO-YEAR ADEQUATE ASSURANCE SUBLET DEADLINE MUST TRACK THIS COURT'S INDICATIVE RULING THAT FORMED THE BASIS FOR THE LIMITED REMAND

5. At the first hearing on Transform's Motion to Enforce on January 20, 2022, the Court made clear that it viewed the issues surrounding the satisfaction of the sublease's litigation contingency and the satisfaction of the two-year Adequate Assurance Sublet Deadline as interrelated, and for which the divestiture doctrine precluded the Court from amending or clarifying the Assignment Order absent issuance of the mandate from the Second Circuit:

> I also believe I should defer on under Rule 8008, is a ruling on the other portion of the motion which, as you said, seeks a determination that the -- the contingency has occurred. Which really means the litigation is done. But I think I should state and authorize and direct the movant, Transform, to so inform the Circuit that I believe the two year limitation under my order doesn't apply in these circumstances where the S&E tenant, Transform, has obtained, under what apparently is a -- a fully documented sublease, a tenant, and the only thing impeding that tenant from taking, under the

> sublease, within the two years is the fact of the pending appeal and – and litigation occasioned by the landlord's denial of acceptability of the tenant and the right of first offer being complied with. And I think, frankly, because you have a pending motion for a stay of the mandate, if the Circuit wants to grant that stay, it could put conditions on it like extending the two year period, posting a bond, whatever. If it doesn't extend -- if it doesn't stay the mandate, I believe that at that point, I should determine, and I'm telling you know how I will determine it, the two year issue, and -- and determine that that two years doesn't run until the appellate process is finished, with suitable time to close the deal. And we'll leave it at that.

Ex. G. (Jan. 20, 2022 Tr.) at 65:24-66:22.

6. The Court also made clear that while the two-year deadline should not expire simply because of the ongoing appeal, the two-year deadline would not start over because Transform already had, as demonstrated by the current proposed sublease, the ability to market the sublease for more than two years. The Court instead indicated that the deadline would be a "reasonable" time to consummate a sublease following conclusion of the appeal. *See id.* at 60:13-19 (in response to MOAC's point that Transform has already had more than two years to market the sublease, the Court noted "[t]hat's a fair point, but at the same time it has to be enough time so that the deal can be closed—or a deal can be closed after what would be a reasonable condition . . . ."); *id.* at 70:4-5 ("There should be a reasonable time to enable the identified transaction to close."); *id.* at 71:2-3 ("I think all I can say at this point is it should be a reasonable time . . . ."); *id.* at 71:16 ("I'm just focusing on a reasonable time at this point.").

7. Following this Court's indicative ruling, Transform filed its motion in the Second Circuit to clarify that "the two-year deadline for Transform to sublet under the Tolling Order is inapplicable or remanding the matter to the bankruptcy court to permit it to order its indicative ruling." *See* Ex. H. at 16. Given that Transform's motion went beyond this Court's indicative ruling—requesting an order that the Adequate Assurance Sublet Deadline was entirely

5

"inapplicable" instead of providing for a reasonable time period—MOAC filed a limited objection to that motion. *See id.* In that limited objection, MOAC represented to the Second Circuit that it did not oppose entry of an order that the two-year Adequate Assurance Sublet Deadline would not apply to the current Sublease.[4] *See* Ex. I. On February 16, 2022, the Second Circuit entered an order on Transform's motion remanding to this Court "for the limited purpose of ruling on the issue of the two-year deadline." *See* Ex. J. Now that Transform has obtained limited remand premised on this Court's indicative ruling, Transform asks this Court to entirely disregard its indicative ruling and the limited remand, and instead conclude that the Adequate Assurance Sublet Deadline has been "satisfied" by the currently proposed sublease. *See* Transform Response ¶ 14 & Ex. A (proposed order).

8.  Transform's proposed order is clearly outside the scope of the limited remand, which was premised on this Court's indicative ruling and is even beyond Transform's own (already overreaching) motion to the Second Circuit to determine that the deadline was "inapplicable" by instead seeking a declaration that the deadline was "satisfied." And now, Transform seeks to have an additional issue determined, that "Transform has initially sublet a portion of the premises."

9.  This Court has already considered and rejected Transform's requested declaration in its indicative ruling. At the January 20, 2022 hearing, after the Court indicated its views on the two-year deadline, Transform's counsel argued that "we've satisfied the contingency by entering into the sublease so that we don't have to worry about the two year time period." Ex. G. at 51:23-52:1. The Court rejected this argument, noting its indicative ruling was *not* that the deadline was

---

[4] At the same time, MOAC did request, consistent with this Court's indicative ruling, that the Second Circuit's order preserve the parties' rights as to a reasonable deadline with respect to any other sublease in the event the current Sublease is not consummated, based on the facts and circumstances at that time, if it were to occur.

6

satisfied, and instead that the deadline was not contemplated under the present circumstances with a pending appeal:

> [T]hat's why I think our interpretation's a little different.  It's not really satisfy the contingency; it's just saying that this was – that deadline was not – I didn't contemplate that deadline under these facts.  That's it.

*Id.* at 52:3-7.

10. Any order on the limited remand must be limited to this Court's indicative ruling, namely that there be a "reasonable" period to consummate a sublease following the conclusion of the appeal.  *See* FED. R. BANKR. P. 8008(a) (providing that the bankruptcy court may "state that the court would grant the motion if the court where the appeal is pending remands for that purpose"); FED. R. BANKR. P. 8008(c) ("If the bankruptcy court states that it would grant the motion, [the appellate court] may remand for further proceedings, but it retains jurisdiction unless it expressly dismisses the appeal."); *see also* FED. R. APP. P. 12.1 (same).

11. There can be no dispute that this Court's indicative ruling specified that the two-year deadline was only to be amended to provide a "reasonable" time following the conclusion of the appeal:

> And I think I would grant as modified, the motions request with respect to the two year period, but really, by saying that I don't believe that it applies, under these facts, not because of anything wrong that MOAC did, but because the premise of the two year limitation was that two years was a reasonable time, if Transform was free to do so, to find a tenant.  And if it couldn't do so, by that point, adequate assurance would require that it not hold onto the lease anymore.

Ex. G at 59:8-16.  Transform cannot now, on limited remand to permit this Court to implement its indicative ruling, ignore the Court's indicative ruling and request an entirely different order, which this Court has already rejected.

7

## II. MOAC'S PROPOSED ORDER IS CONSISTENT WITH THIS COURT'S INDICATIVE RULING

12. MOAC's proposed order on the limited remand, attached to this Reply as Exhibit I, is entirely consistent with the Court's indicative ruling. Specifically, MOAC's proposed order provides that, consistent with its prior representations to the Second Circuit and this Court, MOAC would not contend that the currently proposed sublease ran afoul of the Adequate Assurance Sublet Deadline, but if the currently proposed sublease is not consummated, Transform would have a "reasonable" time to place a new subtenant. Specifically, MOAC's proposed order would amend and clarify the two-year deadline as follows:

> In the event that the Proposed Sublease (as defined in this Order) is not consummated, the Buyer must initially sublet a portion of the premises for the Designated Lease within a reasonable time following the conclusion of MOAC's appeals of the Assignment Order, on the condition that the counterparty to the Designated Lease does not improperly interfere with the Buyer's attempt to sublet the premises for the Designated Lease. All parties' rights are reserved regarding such reasonable time period following the conclusion of such appeals, which period shall not exceed two years following the conclusion of such appeals. This Court will determine what a reasonable time period is for the foregoing requirement, based on the facts and circumstances at that time, upon an appropriate motion by either party, in the event that the Proposed Sublease is not consummated.

MOAC respectfully requests that the Court enter MOAC's proposed form of order on the limited remand, which is entirely consistent with this Court's indicative ruling and MOAC's agreement that the deadline would not apply to the currently proposed sublease.

13. Transform's true complaint seems to be that MOAC's voluntary agreement does not go as far as it would like to deem the Adequate Assurance Sublet Deadline irrevocably satisfied. But that deadline was put in place for a reason, and nothing requires MOAC to waive the requirement for all time, particularly if the currently proposed subtenant exercises its

8

contractual rights to walk away from the proposed sublease for failed contingencies or otherwise fails to consummate the sub-tenancy for whatever reason.

### III.  ANY ORDER THAT "TRANSFORM HAS INITIALLY SUBLET A PORTION OF THE PREMISES" WOULD BE ERRONEOUS

14. Not only is Transform's proposed order contrary to this Court's indicative ruling, it is also unsupported by fact, and at best premature, to declare that "Transform has initially sublet a portion of the premises . . . thereby satisfying the two-year sublease deadline." *See* Transform Proposed Order (Dkt. No. 10358-1) ¶ 1. While Transform has a "sublease" in hand, Transform does not have a tenant that is ready, willing, and able to occupy the premises today. Instead, the proposed sublease has various unsatisfied contingencies, including that the ongoing appeal be conclusively resolved in Transform's favor.

15. Unless and until such contingencies are satisfied or waived—and Transform has provided no indication such contingencies have been waived—there is no basis to declare, today, that Transform has "initially sublet" any portion of the premises. Indeed, in its Motion to Enforce, Transform falsely characterized the requirements of paragraph 17 of the Assignment Order as a Court-imposed requirement "that a sublease for a portion of the premises *be signed within two years*." Motion to Enforce ¶ 34 (emphasis added). That, of course, is not what the Assignment Order provided, which was a requirement to actually "sublet" a portion of the premises. Such adequate assurance would be entirely hollow if Transform could, for example, sign a "sublease" with a host of contingencies that would never happen merely to "check the box" of having a sublease. While an extreme example, the current sublease is no different. The sublease has various unsatisfied contingencies, including with respect to conclusion of the appeal. The sublease is not currently effective, and may never be. Any order declaring that "Transform has initially sublet a portion of the premises" would be, as of today, erroneous.

9

16. As this Court previously noted, "how could I tell the Second Circuit that the litigation's over when they have a motion pending before them for a stay of the mandate?" Ex. G. at 64:25-65:2. This is even truer now that the Second Circuit has stayed the issuance of the mandate.

## IV. THE COURT LACKS PERSONAL JURISDICTION OVER MOAC WITH RESPECT TO ANY DISPUTES BEYOND ENFORCEMENT OR AMENDMENT OF THE ASSIGNMENT ORDER

17. While Transform has now abandoned its request for this Court to determine the Master Lease Compliance Issues, to avoid any suggestion of waiver or consent to personal jurisdiction, MOAC is nevertheless compelled to respond to Transform's argument that "[p]articipation in a bankruptcy gives the bankruptcy court jurisdiction over the party participating in the proceedings." Transform Response ¶ 23. For the avoidance of doubt, MOAC does not contest that the Court has personal jurisdiction over MOAC with respect to the Assignment Order, its enforcement, or any modification thereto consistent with this Court's indicative ruling. But MOAC does not consent to—and indeed continues to object to—personal jurisdiction in this Court with respect to the Master Lease Compliance Issues and any other relief Transform may seek under the terms of the Master Lease or outside the enforcement of the terms of the Assignment Order. Contrary to Transform's argument, filing a proof of claim or appearing in a debtor's bankruptcy proceedings does not establish personal jurisdiction over MOAC for all purposes, particularly in disputes with non-debtor third parties like Transform. *See, e.g.*, *Granfinanciera, SA v. Nordberg*, 492 U.S. 33, 60 & n.14 (1989) (noting that submission of a proof of claim submits the claimant to the jurisdiction of the bankruptcy court only with respect to the claim and any counterclaims the debtor or bankruptcy trustee may have) (citing *Katchen v. Landy*, 382 U.S. 323, 335 (1966)).

WHEREFORE, for the reasons set forth above, MOAC respectfully requests that the Court (i) enter MOAC's proposed form of order on the limited remand attached hereto as Exhibit I, and (ii) dismiss the Motion to Enforce in its entirety for lack of jurisdiction and as moot.

Dated: March 23, 2022　　　　　　　Respectfully submitted,
New York, New York

　　　　　　　　　　　　　　　　　　　*/s/ draft*
　　　　　　　　　　　　　　　　　　　Gregg M. Galardi
　　　　　　　　　　　　　　　　　　　Andrew G. Devore
　　　　　　　　　　　　　　　　　　　Daniel G. Egan
　　　　　　　　　　　　　　　　　　　ROPES & GRAY LLP
　　　　　　　　　　　　　　　　　　　1211 Avenue of the Americas
　　　　　　　　　　　　　　　　　　　New York, NY 10036
　　　　　　　　　　　　　　　　　　　Telephone: (212) 596-9000
　　　　　　　　　　　　　　　　　　　gregg.galardi@ropesgray.com
　　　　　　　　　　　　　　　　　　　andrew.devore@ropesgray.com
　　　　　　　　　　　　　　　　　　　daniel.egan@ropesgray.com

　　　　　　　　　　　　　　　　　　　Douglas Hallward-Driemeier (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　ROPES & GRAY LLP
　　　　　　　　　　　　　　　　　　　2099 Pennsylvania Avenue, NW
　　　　　　　　　　　　　　　　　　　Washington, DC 20006-6807
　　　　　　　　　　　　　　　　　　　Telephone: (202) 508-4600
　　　　　　　　　　　　　　　　　　　Facsimile: (202) 508-4650
　　　　　　　　　　　　　　　　　　　douglas.hallward-driemeier@ropesgray.com

　　　　　　　　　　　　　　　　　　　-and-

　　　　　　　　　　　　　　　　　　　Gregory S. Otsuka (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　LARKIN HOFFMAN DALY & LINDGREN, LTD.
　　　　　　　　　　　　　　　　　　　8300 Norman Center Drive
　　　　　　　　　　　　　　　　　　　Suite 1000
　　　　　　　　　　　　　　　　　　　Minneapolis, MN 55437
　　　　　　　　　　　　　　　　　　　Telephone: (952) 835-3800
　　　　　　　　　　　　　　　　　　　tflynn@larkinhoffman.com
　　　　　　　　　　　　　　　　　　　gotsuka@larkinhoffman.com
　　　　　　　　　　　　　　　　　　　*Attorneys for MOAC Mall Holdings LLC*

# EXHIBIT I

**Proposed Form of Order
on Limited Remand**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 18-23538 (RDD) |
| SEARS HOLDINGS CORPORATION, *et al.*, | Chapter 11 |
| Debtors.[1] | (Jointly Administered) |

**ORDER ON LIMITED REMAND FROM SECOND CIRCUIT REGARDING ORDER (I) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF LEASE WITH MOAC MALL HOLDINGS LLC AND (II) GRANTING RELATED RELIEF**

Upon the Order entered on February 16, 2022 by the United States Court of Appeals for the Second Circuit (the "Remand Order"), which pursuant to Federal Rules of Appellate Procedure 6 and 12.1 remanded to this Court for the limited purpose of ruling on the issue of the two-year deadline contained in this Court's Order (I) Authorizing Assumption and Assignment of Lease with MOAC Mall Holdings LLC and (II) Granting Related Relief (Dkt. No. 5074) (the "Assignment Order"); and the Court having entered the Assignment Order providing, among other things, that "the Buyer must initially sublet a portion of the premises for the Designated Lease

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

within two years, on the condition that the counterparty to the Designated Lease does not improperly interfere with the Buyer's attempt to sublet the premises for the Designated Lease" (Assignment Order ¶ 17) (the "Adequate Assurance Sublet Deadline"); and MOAC Mall Holdings LLC ("MOAC") having appealed the Assignment Order; and during the pendency of that appeal, the Second Circuit having entered an Order on August 17, 2021 (the "Tolling Order") that granted the motion of Transform Holdco LLC ("Transform") to toll the Sublet Deadline until sixty days after the Second Circuit entered its decision regarding the appeal of MOAC; and the Second Circuit having issued its Summary Order deciding MOAC's appeal on December 17, 2021; and Transform having filed a Motion to Enforce the Assignment Order (the "Motion to Enforce") (Dkt. No. 10194) in which it identified a certain proposed sublease (as filed under seal as Exhibit C to the Motion to Enforce, the "Proposed Sublease"); and this Court having issued an indicative ruling regarding the Adequate Assurance Sublet Deadline during oral argument on the Motion to Enforce on January 20, 2022; and Transform having filed an Emergency Motion to Clarify Certain Issues Pending MOAC's Petition for Writ of Certiorari in the Second Circuit (the "Emergency Motion") on February 4, 2022; and the Second Circuit having issued the Remand Order; and the Court having conducted a hearing concerning the Remand Order on March 25, 2022; and after due deliberation and sufficient cause appearing,

**IT IS HEREBY ORDERED:**

1. By agreement of MOAC, the Adequate Assurance Sublet Deadline contained in the final sentence of paragraph 17 of the Assignment Order shall not apply to the Proposed Sublease.

2. The Adequate Assurance Sublet Deadline is hereby amended and clarified, and superseded in it entirety, as follows:

> In the event that the Proposed Sublease (as defined in this Order) is not consummated, the Buyer must initially sublet a portion of the premises for the

2

Designated Lease within a reasonable time following the conclusion of MOAC's appeals of the Assignment Order, on the condition that the counterparty to the Designated Lease does not improperly interfere with the Buyer's attempt to sublet the premises for the Designated Lease. All parties' rights are reserved regarding such reasonable time period following the conclusion of such appeals, which period shall not exceed two years following the conclusion of such appeals. This Court will determine what a reasonable time period is for the foregoing requirement, based on the facts and circumstances at that time, upon an appropriate motion by either party, in the event that the Proposed Sublease is not consummated.

3. This Order does not impact or impair MOAC's rights to object to or contest the Proposed Sublease on any grounds other than that the Proposed Sublease does not comply with the Adequate Assurance Sublet Deadline.

Dated: March ___, 2022  
      New York, New York                                _____  
                                                     THE HONORABLE ROBERT D. DRAIN  
                                                     UNITED STATES BANKRUPTCY JUDGE