AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Ira S. Dizengoff
Philip C. Dublin
Sara L. Brauner
Zachary D. Lanier

*Counsel to the Official Committee of Unsecured
Creditors of Sears Holdings Corporation, et al.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SEARS HOLDINGS CORPORATION, et al., | : | Case No. 18-23538 (RDD) |
| | : | |
| | : | (Jointly Administered) |
| Debtors.[1] | : | |

-------------------------------------------------------------x

**SUMMARY SHEET FOR TENTH INTERIM FEE APPLICATION OF AKIN GUMP
STRAUSS HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE
PERIOD OF NOVEMBER 1, 2021 THROUGH AND INCLUDING FEBRUARY 28, 2022**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc.(4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

| **General Information** | |
| --- | --- |
| Name of Applicant: | Akin Gump Strauss Hauer & Feld LLP ("<u>Akin Gump</u>")[2] |
| Authorized to Provide Services to: | The Official Committee of Unsecured Creditors and the Litigation Designees[3] |
| Petition Date: | October 15, 2018 |
| Retention Date: | December 10, 2018, *nunc pro tunc* to October 24, 2018 |
| Prior Applications: | 9 |

| **Summary of Fees and Expenses Sought in this Application** | |
| --- | --- |
| Time Period Covered by the Application: | November 1, 2021 through and including February 28, 2022 (the "<u>Compensation Period</u>") |
| *Compensation & Expenses Sought for Services Performed on Behalf of the Creditors' Committee in Connection with the Chapter 11 Cases* | |
| Amount of Compensation Sought as Actual, Reasonable and Necessary for the Compensation Period: | $302,859.00 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary for the Compensation Period: | $466.22 |
| *Compensation & Expenses Sought for Services Performed on Behalf of the Litigation Designees in Connection with the Jointly Asserted Causes of Action* | |
| Amount of Compensation Sought as Actual, Reasonable and Necessary for the Compensation Period: | $233,780.00 |

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application, the *Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors and (II) Granting Related Relief*, dated October 15, 2019 [ECF No. 5370] (the "<u>Confirmation Order</u>") or the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors*, dated October 15, 2019 [ECF No. 5370-1] (the "<u>Plan</u>"), as applicable.

[3] As described further herein, pursuant to the Confirmation Order and effective as of the date thereof, Akin Gump serves as "primary litigation counsel to act on behalf of the Litigation Designees to investigate, commence, prosecute and otherwise litigate the Jointly Asserted Causes of Action" in addition to its role as counsel to the Creditors' Committee. *See* Confirmation Order ¶ 22. To facilitate review of Akin Gump's fees attributable to its role as Primary Trust Litigation Counsel following entry of the Confirmation Order, a separate task code (Task Code 20) contains all such work.

| | |
|---|---|
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary for the Compensation Period: | $44,480.31 |

*Total Compensation & Expenses Sought for Services Performed on Behalf of the Creditors' Committee and the Litigation Designees in Connection with the Chapter 11 Cases and the Jointly Asserted Causes of Action*

| | |
|---|---|
| Total Amount of Compensation Sought as Actual, Reasonable and Necessary for the Compensation Period: | $536,639.00 |
| Total Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary for the Compensation Period: | $44,946.53 |
| Total Compensation and Expenses Requested for the Compensation Period: | $581,585.53 |

### *Summary of Fees and Expenses Allowed Pursuant to Prior Applications*

| | |
|---|---|
| Total Compensation Approved by Interim Order to Date: | $50,258,876.50 |
| Total Expenses Approved by Interim Order to Date: | $14,109,338.45 |
| Total Compensation and Expenses Approved by Interim Order to Date: | $64,368,214.95 |
| Total Allowed Compensation Paid to Date: | $43,194,458.50[4] |
| Total Allowed Expenses Paid to Date: | $13,284,264.17 |
| Total Allowed Compensation and Expenses Paid to Date: | $56,478,722.67 |

---

[4] Specifically, Akin Gump has received $33,194,458.50 in respect of fees incurred in connection with Akin Gump's representation of the Creditors' Committee and $10,000,000.00 in respect of fees incurred in connection with the prosecution of the Jointly Asserted Causes of Action.

| *Summary of Fees, Professionals, Rates and Budget in this Application* | |
|---|---|
| Compensation Sought in the Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed (80% of Fees): | $80,640.00[5] |
| Expenses Sought in the Application Already Paid Pursuant to the Compensation Order But Not Yet Allowed (100% of Expenses): | $138.02[6] |
| Total Compensation and Expenses Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $80,778.02 |
| Total Compensation and Expenses Sought in this Application Not Yet Paid: | $455,860.98 |
| Voluntary Fee Waiver and Expense Reduction in this Compensation Period: | $209,079.39[7] |

| *Summary of Fees and Expenses Sought in this Application* | |
|---|---|
| Blended Rate in this Application for All Attorneys: | $902.22 |
| Blended Rate in this Application for All Timekeepers: | $902.22 |

[5] At this time, Akin Gump is not seeking payment in respect of its fees incurred during the Compensation Period in connection with the prosecution of the Jointly Asserted Causes of Action. Accordingly, the amount reflected above in respect of compensation already paid pursuant to the Interim Compensation Order but not yet allowed excludes fees incurred during the Compensation Period in connection with the prosecution of the Jointly Asserted Causes of Action. Specifically, the amount already paid comprises (i) $34,750.40 (80% of $ 43,438.00) as compensation for services rendered during the period of November 1, 2021 through November 30, 2021, as requested in the Thirty-Eighth Monthly Fee Statement and (ii) $45,889.60 (80% of $57,362.00) as compensation for services rendered during the period of December 1, 2021 through December 31, 2021, as requested in the Thirty-Ninth Monthly Fee Statement. Notwithstanding the fact that the amounts already paid does not represent the total fees incurred by Akin Gump during the Compensation Period, Akin Gump respectfully requests that the Court authorize the payment of all fees incurred by Akin Gump during the Compensation Period.

[6] This amount comprises (i) $138.02 for reimbursement of actual and necessary expenses during the period of November 1, 2021 through November 30, 2021, as requested in the Thirty-Eighth Monthly Fee Statement. By agreement with certain vendors and other parties retained by the Litigation Designees in connection with the prosecution of the Jointly Asserted Causes of Action, Akin Gump is not seeking reimbursement of certain expenses of such vendors at this time.

[7] Akin Gump voluntarily reduced its fees and expenses prior to the filing of the applicable Monthly Fee Statement by the following amounts: (a) $200,102.00 for fee reductions and (b) $8,977.39 for expense reductions. The voluntary fee reductions relate to, among other things: (i) fees incurred by professionals or paraprofessionals for attending meetings, conferences or hearings at which their presence was not essential to the issues or matters addressed therein; (ii) duplicative work or work performed by professionals or paraprofessionals billing a *de minimis* amount of time to the Chapter 11 Cases during the applicable period; and (iii) fees incurred in connection with certain administrative tasks. Consequently, Akin Gump does not seek payment of these fees and expenses in this Application.

| Number of Timekeepers Included in this Application: | 9 (9 attorneys; 0 paraprofessionals and other non-legal staff) |
|---|---|
| Number of Attorneys Billing Fewer than 15 Hours to the Case During the Compensation Period: | 2 |
| Increase in Rates Since Date of Retention: | 4 |
| Interim or Final Application: | Interim |

## <u>SUMMARY OF MONTHLY FEE STATEMENTS</u>

| Date Filed | ECF No. | Period Covered | Fees Requested | Expenses Requested | Fees Paid | Expenses Paid |
|---|---|---|---|---|---|---|
| 01/13/22 | 10228 | 11/01/21 – 11/30/21 | $89,310.80 (80% of $111,638.50) | $14,152.94 | $34,750.40 | $138.02 |
| 02/14/22 | 10299 | 12/01/21 – 12/31/21 | $109,493.20 (80% of $136,866.50) | $4,351.22 | $45,889.60 | $0.00 |
| 3/25/22 | 10370 | 01/01/22– 01/31/22 | $98,222.80 (80% of $122,778.50) | $18,885.21 | $0.00 | $0.00 |
| 3/31/22 | 10385 | 02/01/22– 02/28/22 | $132,284.40 (80% of $165,355.50) | $7,557.16 | $0.00 | $0.00 |

<u>Summary of Any Objections to Monthly Fee Statements</u>:  None

<u>Compensation and Expenses Sought in This Application Not Yet Paid</u>:  $455,860.98

## COMPENSATION BY PROFESSIONAL
## NOVEMBER 1, 2021 THROUGH AND INCLUDING FEBRUARY 28, 2022

| Name of Professional | Position | Department | Office | Year of Admission | 2021 Rate | 2022 Rate | Total Hours | Total Amount |
|---|---|---|---|---|---|---|---|---|
| Brauner, Sara L. | Partner | Financial Restructuring | NY | 2011 | $1,265.00 | $1,400.00 | 117.00 | $157,995.00 |
| Dizengoff, Ira S. | Partner | Financial Restructuring | NY | 1993 | $1,655.00 | $1,775.00 | 5.90 | $10,472.50 |
| Chapman, Dean L. | Partner | Litigation | NY | 2009 | $1,265.00 | $1,400.00 | 78.00 | $105,771.00 |
| Zensky, David M. | Partner | Litigation | NY | 1988 | $1,655.00 | $1,775.00 | 8.40 | $14,214.00 |
| Lanier, Zachary D. | Counsel | Financial Restructuring | DA | 2017 | N/A | $1,095.00 | 17.20 | $18,834.00 |
| Lanier, Zachary D.[8] | Associate | Financial Restructuring | DA | 2017 | $980.00 | N/A | 18.80 | $18,424.00 |
| Szydlo, Joseph E. | Associate | Financial Restructuring | NY | 2019 | $810.00 | $965.00 | 42.10 | $37,898.50 |
| Nolan, Sean M. | Associate | Litigation | NY | 2018 | $855.00 | $1,005.00 | 39.90 | $37,099.50 |
| Collins, Russell | Staff Attorney | Practice Attorney | NY | 1998 | $500.00 | $535.00 | 267.50 | $135,930.50 |

[8] Zachary D. Lanier was promoted to the position of Counsel, effective as of January 2022. Accordingly, the time Mr. Lanier billed during November and December of 2021, as an Associate, is listed separately from the time that he billed during January and February 2022, as Counsel.

**TOTAL FEES**
**NOVEMBER 1, 2021 THROUGH AND INCLUDING FEBRUARY 28, 2022**

| PROFESSIONALS | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners | $1,378.18 | 209.30 | $288,452.50 |
| Senior Counsel / Counsel | $1,095.00 | 17.20 | $18,834.00 |
| Associates | $622.73 | 368.30 | $229,352.50 |
| Paraprofessionals and Other Non-Legal Staff | $0.00 | 0.00 | $0.00 |
| **Blended Attorney Rate** | **$902.22** | | |
| **Blended Rate for All Timekeepers** | **$902.22** | | |
| **Total Fees Incurred** | | **594.80** | **$536,639.00** |

**COMPENSATION BY PROJECT CATEGORY**
**NOVEMBER 1, 2021 THROUGH AND INCLUDING FEBRUARY 28, 2022**

| Task Code | Project Category | Total Hours Billed | Total Amount |
|---|---|---|---|
| 2 | Case Administration | -- | -- |
| 3 | Akin Gump Fee Application/Monthly Billing Reports | 38.10 | 37,909.00 |
| 4 | Analysis of Other Professionals Fee Applications/Reports | 0.50 | 490.00 |
| 5 | Review/Preparation of Schedules, Statements | -- | -- |
| 6 | Retention of Professionals | -- | -- |
| 7 | Creditors Committee Matters/Meetings (including 341 Meetings) | 3.60 | 3,843.50 |
| 8 | Hearings and Court Matters/Court Preparation | 16.80 | 18,979.50 |
| 9 | Financial Reports and Analysis | -- | -- |
| 10 | DIP, Cash Collateral Usage, Adequate Protection and Exit Financing | 150.50 | 201,810.50 |
| 11 | Executory Contract/Lease Issues | -- | -- |
| 12 | General Claims Analysis/Claims Objections | 4.80 | 5,821.50 |
| 13 | Analysis of Pre-Petition Transactions | -- | -- |
| 14 | Insurance Issues | -- | -- |
| 15 | Secured Creditors Issues/Communications/Meetings | -- | -- |
| 16 | Automatic Stay Issues | -- | -- |
| 17 | General Litigation Matters/Adversary Proceedings | -- | -- |
| 18 | Tax Issues | -- | -- |
| 19 | Labor Issues/Employee Benefits | -- | -- |
| 20 | Jointly Asserted Causes of Action | 351.00 | 233,780.00 |

| Task Code | Project Category | Total Hours Billed | Total Amount |
|---|---|---|---|
| 21 | Exclusivity | -- | -- |
| 22 | Disclosure Statement/Solicitation/Plan/Confirmation | 28.00 | 32,409.00 |
| 23 | Asset Dispositions/363 Asset Sales | 0.30 | 420.00 |
| 24 | Real Estate Issues | -- | -- |
| 25 | Travel Time | -- | -- |
| 26 | Securities Law Issues | -- | -- |
| 27 | Environmental | -- | -- |
| 28 | General Corporate Matters | 1.20 | 1,176.00 |
| 29 | Intercompany Claims/Intercompany Transactions/Cash Management | -- | -- |
| 30 | Customer, Supplier and Vendor Issues (including Critical Vendors) | -- | -- |
| 31 | Business Operations | -- | -- |
| **Total** | | **594.80** | **$536,639.00** |

**EXPENSE SUMMARY**
**NOVEMBER 1, 2021 THROUGH AND INCLUDING FEBRUARY 28, 2022[9]**

| Disbursement Activity | Amount |
|---|---|
| Computerized Legal Research - Lexis - in contract 30% discount | $6,582.36 |
| Computerized Legal Research - Westlaw - in contract 30% discount | $9,336.25 |
| Computerized Legal Research - Westlaw - out of contract | -- |
| Computerized Legal Research - Courtlink - in contract 50% discount | $2,155.13 |
| Computerized Legal Research - Other | $1,436.27 |
| Color Copy | -- |
| Courier Service/Messenger Service - Off Site | -- |
| Document Retrieval | -- |
| Duplication - In House | -- |
| Duplication - Off Site | -- |
| Filing Fees | -- |
| Imaging/Computerized Litigation Support | -- |
| Meals - Overtime | -- |
| Meals - Business | -- |
| Meals (100%) | -- |
| Miscellaneous | -- |
| Office Supplies – Printing | -- |
| Overtime - Admin Staff | -- |
| Postage | -- |

---

[9] The expenses incurred during the Compensation Period include, among other thing, $25,032.12 relating to the payment of professional fees and expenses incurred by Lighthouse Global (f/k/a H5), Akin Gump's document management and e-discovery provider.

| Disbursement Activity | Amount |
|---|---|
| Professional Fees - Consultant Fees | $25,032.12 |
| Professional Fees - Legal | -- |
| Professional Fees - Misc. | -- |
| Professional Fees - Process Server | -- |
| Research | -- |
| Telephone - Long Distance | -- |
| Transcripts | $404.40 |
| Travel - Airfare | -- |
| Travel - Ground Transportation | -- |
| Travel - Lodging (Hotel, Apt, Other) | -- |
| Local Transportation - Overtime | -- |
| **Total** | **$44,946.53** |

**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002
Ira S. Dizengoff
Philip C. Dublin
Sara L. Brauner
Zachary D. Lanier

*Counsel to the Official Committee of Unsecured*
*Creditors of Sears Holdings Corporation, et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SEARS HOLDINGS CORPORATION, et al., | : | Case No. 18-23538 (RDD) |
| | : | |
| | : | (Jointly Administered) |
| Debtors.[1] | : | |

---------------------------------------------------------------x

**TENTH INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS
HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE
<u>PERIOD OF NOVEMBER 1, 2021 THROUGH AND INCLUDING FEBRUARY 28, 2022</u>**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc.(4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), counsel to the Official

Committee of Unsecured Creditors (the "Creditors' Committee") of Sears Holdings Corporation

and its affiliated debtors and debtors in possession (collectively, the "Debtors"), hereby submits

this tenth application (the "Application"), pursuant to sections 330(a) and 331 of title 11 of the

United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and Rule 2016-1 of the Local Bankruptcy Rules for the

Southern District of New York (the "Local Bankruptcy Rules"), requesting interim allowance of

compensation for services rendered to the Creditors' Committee and the Litigation Designees for

the period of November 1, 2021 through and including February 28, 2022 (the "Compensation

Period") and for reimbursement of expenses incurred in connection therewith.  In support of this

Application, Akin Gump submits the declaration of Philip C. Dublin, a partner at Akin Gump,

which declaration is attached hereto as **Exhibit A** and incorporated by reference into this

Application.  In further support of this Application, Akin Gump respectfully represents as

follows.

## **INTRODUCTION**

1.      By this Application, Akin Gump seeks (i) interim allowance of compensation for

the professional services rendered by Akin Gump during the Compensation Period in the amount

of $536,639.00, representing 594.80 hours of professional services and 0.00 hours of

paraprofessional and other non-legal services and (ii) reimbursement of actual and necessary

expenses incurred by Akin Gump during the Compensation Period in the amount of $44,946.53.[2]

---

[2] The expenses incurred during the Compensation Period include, among other things, $25,032.12 relating to the
payment of professional fees and expenses incurred by Lighthouse Global (f/k/a H5), Akin Gump's document
management and e-discovery provider.

2.      This Application has been prepared in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the *Order Authorizing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, dated November 16, 2018 [ECF No. 796] (the "Interim Compensation Order"), the *Order Authorizing Appointment of Independent Fee Examiner Pursuant to 11 U.S.C. § 327*, dated April 22, 2019 [ECF No. 3307] (the "Fee Examiner Order"), the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York (June 17, 2013) promulgated pursuant to Local Bankruptcy Rule 2016-1(a) (the "Local Guidelines") and the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 for Attorneys in Larger Chapter 11 Cases, effective as of November 1, 2013 (the "U.S. Trustee Guidelines" and, together with the Local Guidelines, the "Fee Guidelines").

3.      The Chair (as defined herein) of the Creditors' Committee has been given the opportunity to review this Application and has approved the compensation and reimbursement of expenses requested herein.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory bases for the relief requested herein are Bankruptcy Code sections 330 and 331, Bankruptcy Rule 2016 and Local Bankruptcy Rule 2016-1.

## BACKGROUND

### A.    The Debtors' Chapter 11 Cases

7.      On October 15, 2018, and continuing thereafter, each of the Debtors filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to

operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a)

and 1108.  The Debtors' chapter 11 cases (the "Chapter 11 Cases") are jointly administered for

procedural purposes only.  No trustee or examiner has been appointed in the Chapter 11 Cases.

8.      On October 24, 2018 (the "Formation Date"), the Office of the United States

Trustee for Region 2 (the "U.S. Trustee") appointed the Creditors' Committee pursuant to

Bankruptcy Code section 1102(a).  *See Notice of Appointment of Official Committee of*

*Unsecured Creditors* [ECF No. 276].  The Creditors' Committee currently comprises seven

members.[3]  Simon Property Group, L.P. serves as chair of the Creditors' Committee (the

"Chair").

9.      On January 3, 2019, the U.S. Trustee filed the *Motion of United States Trustee for*

*Order Authorizing Appointment of Independent Fee Examiner* [ECF No. 1470].  On April 22,

2019, this Court entered the Fee Examiner Order [ECF No. 3307].  On the same day, Paul E.

Harner was appointed as fee examiner in the Chapter 11 Cases (the "Fee Examiner").  The Fee

Examiner has retained Ballard Spahr LLP as legal counsel.

### B.    Retention of Akin Gump

10.     On the Formation Date, the Creditors' Committee selected Akin Gump as its legal

counsel.  On November 28, 2018, the Creditors' Committee filed its application to retain and

---

[3] The following entities currently comprise the Creditors' Committee:  (i) The Bank of New York Mellon Trust Company, N.A. as Indenture Trustee; (ii) Brixmor Operating Partnership, L.P.; (iii) Computershare Trust Company, N.A.; (iv) Oswaldo Cruz; (v) Pension Benefit Guaranty Corporation; (vi) Simon Property Group, L.P.; and (vii) Winiadaewoo Electronics America, Inc.  *See Amended Notice of Appointment of Official Committee of Unsecured Creditors*, dated March 31, 2020 [ECF No. 7539].

employ Akin Gump as counsel to the Creditors' Committee [ECF No. 923] (the "Akin Retention Application"), which application was authorized by an order of this Court dated December 10, 2018 [ECF No. 1107] (the "Akin Retention Order").[4]

11.     The Akin Retention Order authorizes the Creditors' Committee to retain and employ Akin Gump as its counsel in the Chapter 11 Cases in accordance with Akin Gump's normal hourly rates and disbursement policies, *nunc pro tunc* to October 24, 2018, all as contemplated by the Akin Retention Application.  Specifically, the Akin Retention Order authorizes Akin Gump to be compensated on an hourly basis and to be reimbursed for actual and necessary out-of-pocket expenses.

12.     On October 15, 2019, the Court entered the Confirmation Order [ECF No. 5370] approving the Plan.  Pursuant to the Confirmation Order, the Creditors' Committee was granted joint standing with the Debtors to commence, prosecute, settle and otherwise dispose of the: (i) Specified Causes of Action; (ii) other Preserved Causes of Action against the ESL parties; (iii) all claims and causes of action asserted in the pending adversary proceeding captioned *Sears Holdings Corp. v. Lampert*, Adv. Pro. 19-08250 (RDD) (Bankr. S.D.N.Y.) (the "Adversary Proceeding") and any other claims or causes of action ancillary thereto; and (iv) claims or causes of action against insurance carriers related to coverage for claims asserted in the Adversary Proceeding (the foregoing referred to collectively as the "Jointly Asserted Causes of Action"). The Jointly Asserted Causes of Action are overseen by designees who will be the initial members of the Liquidating Trust Board upon the Effective Date of the Plan (the "Litigation Designees").[5]

---

[4] The Creditors' Committee selected FTI Consulting, Inc. ("FTI") to serve as its financial advisor and Houlihan Lokey Capital, Inc. ("Houlihan") to serve as its investment banker on October 25, 2019 and October 29, 2019, respectively.  The orders authorizing the retention of FTI [ECF No. 1325] and Houlihan [ECF No. 1326] were entered on December 19, 2018.

[5] The initial members of the Liquidating Trust Board will be: (i) Patrick Bartels; (ii) Alan Carr; (iii) Eugene Davis; (iv) William Transier; and (v) Raphael Wallander.

Pursuant to the Confirmation Order, Akin Gump serves as "primary litigation counsel to act on

behalf of the Litigation Designees to investigate, commence, prosecute and otherwise litigate the

Jointly Asserted Causes of Action." *See* Confirmation Order ¶ 22.[6]  The Confirmation Order

authorizes Akin Gump to be compensated on an hourly basis and to be reimbursed for actual and

necessary out-of-pocket expenses.[7]  *Id.*

## C.    Prior Fee Applications and Fee Statements Filed During the Compensation Period

13.    On December 14, 2021 Akin Gump filed and served the Ninth Interim Fee

Application of Akin Gump Strauss Hauer & Feld LLP as Counsel to the Official Committee of

Unsecured Creditors for Allowance of Compensation for Services Rendered and Reimbursement

of Expenses for the Period of July 1, 2021 Through and Including October 31, 2021 [ECF No.

10154] (the "Ninth Interim Fee Application").[8]  Pursuant to the Ninth Interim Fee Application,

Akin Gump requested interim allowance of fees in the amount of $839,969.00 and

reimbursement of expenses in the amount of $287,232.21 for the period from July 1, 2021

through and including October 31, 2021.  On January 3, 2022, Orient Craft Limited ("Orient

Craft") filed an objection to the Ninth Interim Fee Application [ECF No. 10191] (the "Orient

---

[6] The Creditors' Committee Settlement provided, among other things, that three of the five members of the Liquidating Trust Board would be selected by the Creditors' Committee and the remaining two members would be selected by the Debtors.  In turn, the proposed members of the Liquidating Trust Board would choose, subject to various factors and procedures, primary litigation counsel for the Liquidating Trust.  In July 2019, the proposed members of the Liquidating Trust Board chose Akin Gump to serve as Primary Trust Litigation Counsel.

[7] Akin Gump's fees and expenses attributable to the services it performs as counsel to the Creditors' Committee in connection with the Chapter 11 Cases are paid out of the Debtors' carve-out account.  Pursuant to the terms of the Plan and Confirmation Order, however, Akin Gump's fees and expenses attributable to the services it performs as Primary Trust Litigation Counsel—as well as the fees and expenses of other professionals retained in connection with the Jointly Asserted Causes of Action—are paid out of a segregated account established to provide initial funding for such litigation (the "Litigation Funding Account").  *See* Confirmation Order ¶ 52(d).  At this time, Akin Gump is not seeking payment from the Litigation Funding Account in respect of its fees incurred during the Compensation Period in connection with prosecution of the Jointly Asserted Causes of Action.  Notwithstanding the foregoing, Akin Gump respectfully requests that the Court authorize the payment of such fees so that Akin Gump may be paid such amounts if Akin Gump seeks payment of such amounts.

[8] A copy of the Ninth Interim Fee Application can be accessed at:
https://restructuring.primeclerk.com/sears/Home-DownloadPDF?id1=MTMxMjYxMg==&id2=-1.

Craft Objection"), as well as the fee applications of other estate-retained professionals.  On

January 18, 2022, Akin Gump filed a reply in support of the Ninth Interim Fee Application [ECF

No. 10232].  On January 20, 2022, the Court held a hearing to consider approval of

professionals' fee applications, including the Ninth Interim Fee Application, and entered an order

approving such fee applications and overruling the Orient Craft Objection [ECF No. 10252] (the

"Ninth Interim Fee Order").[9]

14.     On January 13, 2022, Akin Gump filed and served the Thirty-Eighth Monthly Fee

Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and

Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the

Period of November 1, 2021 Through November 30, 2021 [ECF No. 10228] (the "Thirty-Eighth

Monthly Fee Statement"),[10] pursuant to which Akin Gump sought payment of (i) $89,310.80

(80% of $111,638.50) as compensation for professional services rendered and (ii) $14,152.94 for

reimbursement of expenses.  Akin Gump did not receive any objections to the Thirty-Eighth

Monthly Fee Statement and received payment of $34,750.40 in fees and $138.02 in expenses in

respect thereof on February 2, 2022.  As discussed in further detail above, the amount of fees

paid to date with respect to the Thirty-Eighth Monthly Fee Statement includes those fees

incurred by Akin Gump for its services to the Creditors' Committee and excludes fees incurred

by Akin Gump in connection with prosecution of the Jointly Asserted Causes of Action.

15.     On February 14, 2022, Akin Gump filed and served the Thirty-Ninth Monthly Fee

Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and

---

[9] Notwithstanding entry of the Ninth Interim Fee Order, Akin Gump has agreed to allow the Debtors to continue
holding back 20% of its allowed fees ($167,993.80) in respect of its services to the Creditors' Committee for the
compensation period subject to the Ninth Interim Fee Order.  For the avoidance of doubt, Akin Gump is not seeking
payment from the estates for any fees incurred in defending the Ninth Interim Fee Application.

[10] A copy of the Thirty-Eighth Monthly Fee Statement can be accessed at:
https://restructuring.primeclerk.com/sears/Home-DownloadPDF?id1=MTMxNTQwMw==&id2=-1.

Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of December 1, 2021 Through December 31, 2021 [ECF No. 10299] (the "Thirty-Ninth Monthly Fee Statement"),[11] pursuant to which Akin Gump sought payment of (i) $109,493.20 (80% of $136,866.50) as compensation for professional services rendered and (ii) $4,351.22 for reimbursement of expenses. Akin Gump did not receive any objections to the Thirty-Ninth Monthly Fee Statement and received payment of $45,889.60 in fees and $0.00 in expenses in respect thereof on March 14, 2022. As discussed in further detail above, the amount of fees paid to date with respect to the Thirty-Ninth Monthly Fee Statement includes those fees incurred by Akin Gump for its services to the Creditors' Committee and excludes fees incurred by Akin Gump in connection with prosecution of the Jointly Asserted Causes of Action.

16.     On March 25, 2022 Akin Gump filed and served the *Fortieth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of January 1, 2022 Through January 31, 2022* [ECF No. 10370] (the "Fortieth Monthly Fee Statement"),[12] pursuant to which Akin Gump sought payment of (i) $98,222.80 (80% of $122,778.50) as compensation for professional services rendered and (ii) $18,885.21 for reimbursement of expenses. As of the date hereof, Akin Gump has not received any objections to the Fortieth Monthly Fee Statement.

17.     On March 31, 2022, Akin Gump filed and served the Forty-First Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the

---

[11] A copy of the Thirty-Ninth Monthly Fee Statement can be accessed at:
https://restructuring.primeclerk.com/sears/Home-DownloadPDF?id1=MTMyMDAzNw==&id2=-1.
[12] A copy of the Fortieth Monthly Fee Statement can be accessed at:
https://restructuring.ra.kroll.com/sears/Home-DownloadPDF?id1=MTMyNjE1OA==&id2=-1.

Period of February 1, 2022 Through February 28, 2022 [ECF No. 10385] (the "Forty-First

Monthly Fee Statement"),[13] pursuant to which Akin Gump sought payment of (i) $132,284.40

(80% of $165,355.50) as compensation for professional services rendered and (ii) $7,557.16 for

reimbursement of expenses.  As of the date hereof, Akin Gump has not received any objections

to the Forty-First Monthly Fee Statement.

**SUMMARY OF PROFESSIONAL COMPENSATION
AND REIMBURSEMENT OF EXPENSES REQUESTED**

18.      By this Application, Akin Gump requests allowance of interim compensation for

professional services rendered during the Compensation Period in the amount of $536,639.00

and expense reimbursements of $44,946.53.[14]  During the Compensation Period, Akin Gump

professionals and paraprofessionals expended a total of 594.80 hours for which compensation is

sought.

19.      The fees charged by Akin Gump in the Chapter 11 Cases are billed in accordance

with Akin Gump's existing billing rates and procedures in effect during the Compensation

Period.  The rates Akin Gump charges for the services rendered by its professionals and

paraprofessionals in the Chapter 11 Cases are the same rates Akin Gump charges for professional

and paraprofessional services rendered in comparable non-bankruptcy related matters.  Such fees

are reasonable based on the customary compensation charged by comparably skilled practitioners

in comparable non-bankruptcy cases in a competitive national legal market.  The disclosures

---

[13] A copy of the Forty-First Monthly Fee Statement can be accessed at:
https://restructuring.ra.kroll.com/sears/Home-DownloadPDF?id1=MTMyNzkzOA==&id2=-1.

[14] Akin Gump voluntarily reduced its fees and expenses prior to the filing of the applicable Monthly Fee Statement
by the following amounts: (a) $200,102.00 for fee reductions and (b) $8,977.39  for expense reductions.  The
voluntary fee reductions relate to, among other things: (i) fees incurred by professionals or paraprofessionals for
attending meetings, conferences or hearings at which their presence was not essential to the issues or matters
addressed therein; (ii) duplicative work or work performed by professionals or paraprofessionals billing a *de minimis*
amount of time to the Chapter 11 Cases during the applicable period; and (iii) fees incurred in connection with
certain administrative tasks.  Consequently, Akin Gump does not seek payment of these fees and expenses in this
Application.

required by the U.S. Trustee Guidelines regarding the customary and comparable compensation are annexed hereto as **Exhibit B**.

20.     Akin Gump maintains computerized records of the time spent by all Akin Gump professionals and paraprofessionals in connection with the Chapter 11 Cases.  A summary of compensation by timekeeper is attached hereto in **Exhibit C**, and a summary of fees by task code is attached hereto in **Exhibit D**.  The itemized time records for Akin Gump professionals and paraprofessionals performing services during the Compensation Period have been filed and served in the Monthly Fee Statements in accordance with the Interim Compensation Order.

21.     Akin Gump also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services.  A summary of the categories of expenses and amounts for which reimbursement is requested by this Application is attached hereto as **Exhibit E**.

22.     Akin Gump's staffing plan for the Compensation Period is attached hereto as **Exhibit F**.

### SUMMARY OF SERVICES PERFORMED BY AKIN GUMP DURING THE COMPENSATION PERIOD

23.     The services provided by Akin Gump during the Compensation Period were actual and necessary for the administration of the Chapter 11 Cases, performed at the request of the Creditors' Committee and/or the Litigation Designees and commensurate with the complexity and significance of this matter.

24.     The following is a summary of the professional services rendered by Akin Gump during the Compensation Period.  This summary is organized in accordance with Akin Gump's internal system of task codes established at the outset of the Chapter 11 Cases based on the Fee Guidelines.  In classifying services into task codes, Akin Gump attempted to place the services

10

performed in the category that most closely related to the services provided.  The below does not include summaries for certain task codes for which a *de minimis* amount of time was billed during the Compensation Period.

25.    Moreover, the following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed.  Rather, it merely is an attempt to highlight certain of those areas in which services were rendered, as well as to identify certain of the matters and issues that Akin Gump was required to address during the Compensation Period.

**A.    Akin Gump Fee Application/Monthly Billing Reports (Task Code 3)**

| Total Hours | Fees |
|:---:|:---:|
| 38.10 | $37,909.00 |

26.    This category includes time spent by Akin Gump professionals and paraprofessionals preparing and drafting the Ninth Interim Fee Application and each of the Monthly Fee Statements and responding to all inquiries and requests regarding the foregoing. Pursuant to the Interim Compensation Order, the Ninth Interim Fee Application and the Monthly Fee Statements contained a list of individuals who rendered services to the Creditors' Committee during the relevant compensation period, information as to each individual's title, billing rate and hours worked and a comprehensive breakdown of the fees incurred and disbursements expended. To minimize costs in connection with this time-intensive process, Akin Gump relied on paraprofessionals to prepare the initial drafts of the Ninth Interim Fee Application and Monthly

Fee Statements, thereby limiting the time spent by professionals on the review of fees, where reasonably practicable.

**B.      Court Hearings (Task Code 8)**

| Total Hours | Fees |
|:---:|:---:|
| 16.80 | $18,979.50 |

27.      This category includes time spent by Akin Gump professionals and paraprofessionals in connection with Court hearings held during the Compensation Period. During the Compensation Period, Akin Gump professionals prepared for and participated in hearings on November 10, 2021, December 3, 2021, December 14, 2021, January 20, 2022 and February 24, 2022.

28.      In preparing for hearings, Akin Gump professionals reviewed and analyzed all issues, applicable motions and applications filed with the Court, including any objections and responses thereto, discussed with the Debtors' advisors and other relevant parties the relief requested and, as necessary, asserted the Creditors' Committee's and the Litigation Designee's position, as applicable, at such hearings and conferences.  In addition, following each hearing or conference, Akin Gump provided the Creditors' Committee and the Litigation Designees with updates and analyses of the results thereof.

**C.      DIP, Cash Collateral Usage, Adequate Protection and Exit Financing (Task Code 10)**

| Total Hours | Fees |
|:---:|:---:|
| 150.50 | $201,810.50 |

29.      This category includes time spent by Akin Gump professionals analyzing issues in connection with various financing alternatives to facilitate the continued prosecution of the Jointly Asserted Causes of Action and discussing the same with counsel to the Debtors and the Administrative Claims Representative.  Pursuant to the Confirmation Order, and as described above, Akin Gump's fees and expenses attributable to the services it performs as Primary Trust

Litigation Counsel—as well as the fees and expenses of other professionals retained in connection with the Jointly Asserted Causes of Action—are paid out of a segregated account established to provide initial funding for such litigation (the "Litigation Funding Account"). *See* Confirmation Order ¶ 52(d).

30.     Following entry of the Confirmation Order, the funds allocated to the Litigation Funding Account have been used to pay, among other things, (i) professional fees incurred in connection with prosecution of the Jointly Asserted Causes of Action including, without limitation, attorneys' fees and expenses of various experts and (ii) costs incurred relating to the payment of a document and e-discovery vendor that, among other things, maintains a database of approximately 14,000,000 documents produced in connection with discovery related to the Jointly Asserted Causes of Action.[15]

31.     In light of the ongoing and protracted nature of the Adversary Proceeding, the complex legal issues implicated and the number of well-represented parties involved, the Litigation Designees determined that the initial funding allocated under the Confirmation Order would be insufficient to fund the prosecution (through trial) of the Jointly Asserted Causes of Action and, ultimately, ensure that the value of such actions is maximized for the benefit of the Debtors' estates and creditors.

32.     Specifically, during the Compensation Period, Akin Gump, at the direction of the Litigation Designees and on behalf of the Debtors' estates, (i) analyzed the extent to which third party financing could be obtained and the amount of additional funding necessary to prosecute the Jointly Asserted Causes of Action to completion, (ii) explored various alternatives in

---

[15] More specifically, Akin Gump incurs costs for H5's loading and hosting of productions from Defendants (as defined below) and third-parties that Akin Gump has received. Akin Gump also incurs costs when using H5's proprietary key document identification technology to search for and identify specific documents or narrow search results for documents so Akin Gump professionals can review smaller sets of documents.

connection with the same, (iii) negotiated with potential third party providers of such financing

and ultimately reached an agreement in principle with a proposed funder, (iv) conducted legal

research relating to the same and (v) began drafting a motion to approve such

financing.  Throughout the Compensation Period, Akin Gump professionals regularly consulted

on the foregoing matters with FTI, and regularly apprised the Debtors and the Administrative

Claims Representative of developments related to any potential funding and the status of any

such negotiations.  The Litigation Designees intend to file such motion seeking approval of the

contemplated financing in the near term.

**D.        Jointly Asserted Causes of Action (Task Code 20)[16]**

| Total Hours | Fees |
| :---: | :---: |
| 351.00 | $233,780.00 |

33.        This category includes time spent by Akin Gump professionals and

paraprofessionals in connection with Akin Gump's role as Primary Trust Litigation Counsel to

the Litigation Designees, including prosecution of the first amended adversary complaint [Adv.

Pro. No. 19-08250, ECF No. 52] (the "First Amended Adversary Complaint") filed in the

Adversary Proceeding.  Prior to the Compensation Period, on November 25, 2019, Akin Gump,

on behalf of the Creditors' Committee and the Debtors, filed the First Amended Adversary

Complaint.  Akin Gump's comprehensive and continuing investigation (the "Investigation") into

the related-party transactions that preceded the commencement of the Chapter 11 Cases and the

claims arising therefrom, including the Jointly Asserted Causes of Action, formed the bases for

the claims and causes of actions asserted in the First Amended Adversary Complaint.

---

[16] As described further herein, pursuant to the Confirmation Order and effective as of the date thereof, Akin Gump
serves as Primary Trust Litigation Counsel in addition to its role as counsel to the Creditors' Committee.  *See*
Confirmation Order ¶ 22.  To facilitate review of Akin Gump's fees attributable to its role as counsel to the
Litigation Designees following entry of the Confirmation Order, this task code (Task Code 20) contains all such
work.

34.     During the Compensation Period, Akin Gump sought to conserve resources by limiting the work performed in connection with the Adversary Proceeding pending a ruling on certain motions to dismiss while still performing the tasks necessary to ensure that the agreed-upon schedule reflected in the Stay Order could be maintained following such ruling.[17]   In addition to regularly consulting with the Litigation Designees with respect to the Investigation and Adversary Proceeding, the primary work streams undertaken by Akin Gump during the Compensation Period in connection with the Adversary Proceeding and the Investigation are set forth below.  Following the close of the Compensation Period, the Court entered an order [Adv. Pro. No. 19-08250, ECF No. 270] authorizing mediation among the Plaintiffs and Defendants in the Adversary Proceeding, as well as the Admin Representative and certain of the Defendants' insurance carriers.  The mediation is now underway and is set to run through May 23, 2022 unless extended by further order of the Court.

### 1.     Fact and Expert Discovery

35.     During the Compensation Period, Akin Gump engaged in discovery with the Defendants and certain third parties.  Specifically, during the Compensation Period, Akin Gump received four document productions from certain Defendants and third parties totaling approximately 755 documents.

---

[17] On November 18, 2020, the Court entered the *Stipulation and Order Regarding Partial Stay of Action and Amendment of Scheduling Order* [Adv. Pro. No. 19-08250, ECF No. 230] (the "Stay Order"), pursuant to which the parties to the Adversary Proceeding agreed to amend the Amended Scheduling Order entered on September 21, 2020 [Adv. Pro. No. 19-08250, ECF No. 219].   The Stay Order extended the deadline for the parties to exchange updated lists of proposed deponents to 28 days after the later of (i) the date on which the Court decides the last of the pending motions to dismiss filed by the defendants named in the First Amended Adversary Complaint (the "Defendants") or (ii) 45 days after the date on which the Court entered the Stay Order.  The Stay Order did not affect the Defendants' obligations to produce documents and privilege logs, engage in meet-and-confers, as appropriate, or the rights of the Plaintiffs to move to compel or otherwise seek Court intervention related to any discovery disputes.  In addition, the Stay Order did not affect the parties' ongoing efforts to seek document discovery from third parties and, if necessary, to move to compel document discovery from such parties.

36.    In accordance with agreed upon procedures, Akin Gump professionals: (i) continued to review the voluminous discovery produced in connection with the Adversary Proceeding,[18] which, including the approximately 755 documents produced during the Compensation Period, totals over 14,000,000 documents; (iii) continued preparing for depositions by, among other things, drafting fact chronologies concerning the prepetition transactions; and (iv) continued to exchange letters, emails and other correspondence with certain Defendants and third parties to resolve various discovery disputes.

37.    In addition, Akin Gump professionals continued to communicate with certain experts who were retained previously to perform analyses, provide advice and, if appropriate, ultimately testify with respect to certain issues relevant to the First Amended Adversary Complaint.

## 2.    D&O Insurance Coverage Litigation

38.    During the Compensation Period, certain Defendants who are former directors of Sears Holdings Corporation (the "Director Defendants") continued to litigate a state court action in New York, captioned *Alvarez v. XL Specialty Insurance Co.*, Case No. 655391/2019 (N.Y. Sup. Ct. Sept. 17, 2019), with certain providers of liability insurance to the directors and officers of Sears Holdings Corporation (the "D&O Coverage Proceeding"). In the D&O Coverage Proceeding, the Director Defendants sought declaratory relief relating to, among other things, the extent to which coverage is available for the fees the Director Defendants have incurred (and continue to incur) defending against the Adversary Proceeding and potential damages awards issued against the Director Defendants in connection with the Adversary Proceeding. On July 13, 2021, the D&O Coverage Proceeding was resolved by the trial court in favor of the Director

---

[18] To minimize costs associated with the document review process, Akin Gump engaged contract attorneys to conduct the first-level review of documents received in connection with the Investigation and Adversary Proceeding.

Defendants.  On August 2, 2021, one of the insurers appealed the trial court's decision.  On February 17, 2022, the appellate court affirmed the trial court's decision.

39.     In addition, during the Compensation Period, Defendant Seritage Growth Properties, L.P. ("Seritage") continued to litigate a state court action in Delaware, captioned *Seritage Growth Properties, L.P. v. QBE Insurance Corp.*, Case No. N21C-03-015 (Del. Super. Ct. Mar. 2, 2021) (the "Seritage Coverage Proceeding" and, together with the D&O Coverage Proceeding, the "Insurance Coverage Proceedings"), in which it is seeking declaratory relief, money damages, punitive damages and attorneys' fees against several of their insurers.  In its complaint, Seritage alleges that certain of its insurers breached their obligations to provide insurance coverage to Seritage in connection with its defense in the Adversary Proceeding.

40.     In light of the effects the Insurance Coverage Proceedings may have on the insurance proceeds recoverable by the Plaintiffs in the Adversary Proceeding, Akin Gump professionals continued to monitor the Insurance Coverage Proceedings throughout the Compensation Period, engaged in discussions and correspondence related thereto and performed research and analyses in connection therewith.

41.     Akin Gump professionals also prepared and exchanged letters with certain director and officer Defendants regarding the allocation or liability insurance proceeds.

**E.     Disclosure Statement/Solicitation/Plan/Confirmation (Task Code 22)**

| Total Hours | Fees |
|---|---|
| 28.00 | $32,409.00 |

42.     This category includes time spent during the Compensation Period addressing emergence-related items.

43.     Among other things, Akin Gump attorneys analyzed open issues relating to the Effective Date and the process by which the Debtors plan to effectuate distributions under the

Plan.  In connection therewith, Akin Gump attorneys reviewed and analyzed the Plan and the

Confirmation Order and discussed with the Debtors and the other members of the Pre-Effective

Date Committee the quarterly status reports filed by the Debtors.  In addition, Akin Gump

attorneys communicated with Debtors' counsel in order to ensure that the Creditors' Committee

remained apprised of the Debtors' contemplated distributions to holders of Allowed

Administrative Expense Claims.

## ACTUAL AND NECESSARY DISBURSEMENTS

44.    Akin Gump seeks allowance of reimbursement of expenses in the amount of

$44,946.53 for expenses incurred during the Compensation Period in the course of providing

professional services to the Creditors' Committee and the Litigation Designees.  Akin Gump's

disbursement policies pass through all out-of-pocket expenses at actual cost or an estimated

actual cost when the actual cost is difficult to determine.  For example, as it relates to

computerized research, Akin Gump believes that it does not make a profit on that service as a

whole although the cost of any particular search is difficult to ascertain.  Other reimbursable

expenses (whether the service is performed by Akin Gump in-house or through a third party

vendor) include, but are not limited to, long-distance calls, overtime meals, deliveries, court

costs, transcript fees, discovery and temporary legal staffing services, travel and clerk fees.

## FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

45.    Bankruptcy Code section 330 provides, in relevant part, that the Court may award

to a professional person "reasonable compensation for actual, necessary services rendered[.]"

*See* 11 U.S.C. § 330(a)(1).  In turn, Bankruptcy Code section 330 provides as follows:

> In determining the amount of reasonable compensation to be awarded, the
> court shall consider the nature, the extent, and the value of such services,
> taking into account all relevant factors, including –
>
> (A)    the time spent on such services;

(B)     the rates charged for such services;

(C)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)     whether the compensation is reasonably based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

46.     The clear congressional intent and policy expressed in Bankruptcy Code section 330 is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases. *In re Drexel Burnham Lambert Grp., Inc.*, 133 B.R. 13, 20 (Bankr. S.D.N.Y. 1991) ("Congress' objective in requiring that the market, not the Court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal specialists."); *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 850 (3d. Cir. 1994) (citations and internal quotations omitted) ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts.").

47.     In assessing the "reasonableness" of the fees requested, the Second Circuit has stated that courts should consider the factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, while also incorporating the "lodestar method." *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections,* 522 F.3d 182, 190

19

(2d Cir. 2007) (citing *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974),

*abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 92–93, 96 (1989)).  The

"lodestar method" of calculating the reasonable fee contemplates "the number of hours

reasonably expended . . . multiplied by a reasonable hourly rate."  *See Hensley v. Eckerhart et*

*al.*, 461 U.S. 424, 433 (1983); *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002); *Perdue v. Kenny*

*A*., 130 S.Ct. 1662, 1672 (2010); *In re Drexel Burnham Lambert Grp., Inc.* 133 B.R. 13 (Bankr.

S.D. N.Y. 1991).  The factors set forth in *Johnson* and *In re First Colonial Corp. of Am.*, 544 F.2d

1291, 1298-99 (5th Cir. 1977) have been adopted by most courts.[19]  *See In re Nine Assocs., Inc.*,

76 B.R. 943, 945 (S.D.N.Y. 1987) (adopting *First Colonial/Johnson* analysis); *In re Cuisine*

*Magazine, Inc.*, 61 B.R. 210, 212-13 (Bankr. S.D.N.Y 1986) (same); *Green v. City of New York*,

403 Fed. Appx. 626, 629 (2d Cir. 2010) (summary order); *see generally* 3 COLLIER ON

BANKRUPTCY ¶ 330.03[9] (Lawrence P. King ed., 16th ed. 2016) (describing *First Colonial* and

*Johnson* as the "leading cases to be considered in determining a reasonable allowance of

compensation").

48.    Akin Gump respectfully submits that a consideration of these factors should result

in the Court's allowance of the full compensation sought in this Application.

      a.  <u>Time and Labor Required</u>.  Akin Gump billed a total of 594.80 hours of
professional services and 0.00 hours of paraprofessional and other non-legal
services during the Compensation Period.  As evidenced by this Application,
Akin Gump professionals and paraprofessionals worked diligently and
efficiently without unnecessary duplication of efforts throughout the
Compensation Period.  This is particularly true when considering the nature
and complexity of the issues that arose in the Chapter 11 Cases, including the
treatment of various claims, including administrative expense claims, and in
connection with the Adversary Proceeding, the Second Action and the
prosecution of the First Amended Adversary Complaint and working to secure

---

[19] The factors articulated by the Fifth Circuit in *First Colonial* were first articulated by the Fifth Circuit in *Johnson,*
with the *First Colonial* court adding the factor of the "spirit of economy," which was later rejected by Congress.  *See*
*Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*, 127 F.3d 1398,
1403 (11th Cir. 1997).

additional funding in connection with the same.  Akin Gump's representation of the Creditors' Committee and the Litigation Designees has required it to balance the need to provide quality services with the need to act quickly and represent these parties in an effective, efficient and timely manner.  Akin Gump submits that the hours spent were reasonable given the size and complexity of the Chapter 11 Cases and the significant legal issues raised.

b.   <u>Novelty and Difficulty of the Questions</u>.  Akin Gump tasked knowledgeable professionals to research, analyze and provide advice on difficult and complex bankruptcy, litigation and finance issues.  Notably, and as further described herein, Akin Gump's skilled teams assisted the Creditors' Committee and Litigation Designees in, among other things: (i) monitoring the D&O Coverage Proceedings and analyzing the effect such proceedings may have on potential damages awards issued against the Director Defendants in connection with the Adversary Proceeding; (ii) evaluating potential sources of funding for the continued prosecution of the Jointly Asserted Causes of Action; and (iii) assisting expert witnesses in preparing relevant reports on complex issues relevant to the Adversary Proceeding.

c.   <u>Skill Requisite to Perform the Legal Services Properly</u>.  Akin Gump believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Akin Gump's practice and its creative approach to the resolution of issues has contributed to the successful administration of the Chapter 11 Cases and benefited the Debtors, the Creditors' Committee and the Litigation Designees.  Due to the nature and complexity of the legal issues presented in the Chapter 11 Cases, Akin Gump was required to exhibit a high degree of legal skill in areas related to, *inter alia*, bankruptcy, litigation and financing matters.  Additionally, Akin Gump's strong working relationship with the legal and financial advisors to other parties in interest enabled Akin Gump to work with such advisors towards a swift, consensual resolution of many of the salient issues in the Chapter 11 Cases.

d.   <u>Preclusion of Other Employment by Applicant Due to Acceptance of the Case</u>.  Due to the size of Akin Gump's financial restructuring and litigation departments, Akin Gump's representation of the Creditors' Committee and the Litigation Designees did not preclude its acceptance of new clients, but the demands for immediate and substantive action in the Chapter 11 Cases imposed significant burdens on Akin Gump professionals and paraprofessionals working concurrently on other matters.

e.   <u>Customary Fee</u>.  The rates Akin Gump charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin Gump charges for professional and paraprofessional services rendered in comparable nonbankruptcy matters.  Akin Gump's fee structure also is equivalent to the fee structure used by Akin Gump for restructuring, workout, bankruptcy, insolvency and comparable matters, as well as similar complex

corporate and litigation matters, whether in-court or otherwise, regardless of whether a fee application is required. The firm's customary hourly rates and rate structure reflect that restructuring and related matters typically involve great complexity, numerous tasks requiring a high level of expertise and severe time pressures, as is the case here. Akin Gump's rate structure is similar to the rate structure used by other, similar law firms that work on other, similar matters.

f.  <u>Whether the Fee Is Fixed or Contingent</u>. Pursuant to Bankruptcy Code sections 330 and 331, all fees sought by professionals employed under Bankruptcy Code section 1103 are contingent pending final approval by the Court, and are subject to adjustment depending upon the services rendered and the results obtained. The contingency of full and actual compensation to Akin Gump increased the risk Akin Gump was assuming by representing the Creditors' Committee and the Litigation Designees in the Chapter 11 Cases.

g.  <u>Time Limitations Imposed by the Client or Other Circumstances</u>. As previously set forth herein, Akin Gump was required to attend to certain issues arising in the Chapter 11 Cases under compressed timelines. The tremendous efforts of Akin Gump professionals and paraprofessionals in completing this work permitted the Creditors' Committee to address effectively various issues for the benefit of the Debtors' unsecured creditors.

h.  <u>Amount Involved and Results Obtained</u>. Akin Gump professionals and paraprofessionals worked diligently to maximize value for the Debtors' estates and creditors. During the Compensation Period, and as described in the summary of services herein, Akin Gump was instrumental in maximizing value for the benefit of unsecured creditors. In particular, the Jointly Asserted Causes of Actions, and any recoveries to the Debtors' estates therefrom, may provide material benefits to all creditors and is the only likely source of recovery for unsecured creditors in the Chapter 11 Cases. Akin Gump submits that the fees requested in this Application are reasonable and appropriate when considering the results that may be obtained on behalf of unsecured creditors, as more fully described in the summary of services.

i.  <u>Experience, Reputation and Ability of Attorneys</u>. Akin Gump is an international law firm that consistently is recognized as a top tier law firm in the field of creditors' rights, business reorganizations and liquidations under chapter 11 of the Bankruptcy Code. During the Compensation Period, Akin Gump solicited the skill and expertise of its attorneys, a number of which have practiced law for over 20 years in a number of jurisdictions and legal disciplines. Akin Gump attorneys have actively represented creditors and creditors' committees, as well as other parties in interest, in a number of the nation's largest chapter 11 cases, including *In re Mallinckrodt plc*, *In re Global Eagle Entertainment, Inc., In re BBGI US, Inc. (f/k/a Brooks Brothers Group, Inc.)*, *In re Diamond Offshore Drilling, Inc.*, *In re Purdue Pharma L.P.*, *In re Nine West Holdings, Inc.*, *In re iHeartMedia, Inc.*, *In re Cumulus*

*Media Inc.*, *In re Avaya Inc.*, *In re Chassix Holdings, Inc.*, *In re Energy Future Holdings Corp.*, *In re Dynegy Holdings, LLC*, *In re Nortel Networks Inc.*, *In re Lightsquared Inc.*, *In re Longview Power, LLC*, *In re Eastman Kodak Company*, *In re Cal Dive International, Inc.*, *In re Washington Mutual Inc.*, *In re NII Holdings, Inc.*, *In re MPM Silicones, LLC*, *In re Overseas Shipholding Group, Inc.*, *In re QCE Finance LLC*, *In re Residential Capital, LLC*, *In re Solutia, Inc.*, *In re WorldCom, Inc.*, *In re XO Communications, Inc.*, *In re Tower Automotive LLC*, *In re VeraSun Energy Corp.*, and many others. Akin Gump's extensive experience enables it to perform the services described herein competently and expeditiously. In addition to its expertise in the area of corporate reorganization, Akin Gump has called upon the expertise of its partners and associates in other practice areas to perform the wide-ranging scope of the legal work necessitated by the Chapter 11 Cases, as described above.

j.  <u>"Undesirability" of the Cases</u>. This factor is not applicable to the Chapter 11 Cases.

k.  <u>Nature and Length of Professional Relationship</u>. Akin Gump has been rendering professional services to the Creditors' Committee since it was selected as counsel to the Creditors' Committee on October 24, 2018. In addition, pursuant to the Confirmation Order and effective as of the date thereof, Akin Gump has been rendering professional services to the Litigation Designees in connection with the Jointly Asserted Causes of Action.

49.    For the reasons set forth above, the services rendered by Akin Gump were necessary and beneficial to the Creditors' Committee and the Litigation Designees and consistently performed in a timely manner. The compensation sought in this Application is reasonable in light of the value of such services to the Creditors' Committee, the Litigation Designees and all unsecured creditors, Akin Gump's demonstrated skill and expertise in the bankruptcy field (as well as other areas of expertise relevant to the Chapter 11 Cases) and the customary compensation charged by comparably skilled practitioners at Akin Gump. Accordingly, Akin Gump respectfully submits that the Court should approve the compensation for professional services and reimbursement of expenses sought herein.

50.    No agreement or understanding exists between Akin Gump and any other person for the sharing of any compensation to be received for professional services rendered or to be

rendered in connection with the Chapter 11 Cases.  No prior application has been made in this

Court or in any other court for the relief requested herein as it relates to the Compensation

Period.

## **ATTORNEY STATEMENT PURSUANT TO U.S. TRUSTEE GUIDELINES**

51.    The following is provided in response to the request for additional information set

forth in ¶ C.5. of the U.S. Trustee Guidelines.

**Question**:    Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain.

Response:    No.

**Question**:    If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

Response:    Not applicable.

**Question**:    Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

Response:    No.

**Question**:    Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees.

Response:    Yes.  During the Compensation Period, 11.70 hours and $5,816.00 in fees were spent reviewing time records for compliance with the Fee Guidelines.

**Question**:    Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

Response:    See above.

**Question**:    If the fee application includes any rate increases since retention:  (i) Did your client review and approve those rate increases in advance?  (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order

24

to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

Response:    Akin Gump disclosed to the Creditors' Committee the hourly rates charged at the time of its retention and the hourly rates to be charged beginning in January 2022 in the 2022 Rates Supplemental Declaration, which the Creditors' Committee agreed to.

## **RESERVATION OF RIGHTS**

52.    To the extent that there are services rendered or expenses incurred that relate to the Compensation Period but were not processed prior to the preparation of the Application, Akin Gump reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

*[Remainder of page left blank intentionally.]*

**CONCLUSION**

WHEREFORE, Akin Gump respectfully requests: (i) an interim allowance of compensation for professional services rendered during the Compensation Period in the amount of $536,639.00 and expense reimbursement in the amount of $44,946.53; (ii) the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to Akin Gump's right to seek additional compensation for services performed and expenses incurred during the Compensation Period which were not processed at the time of the Application; and (iii) such other and further relief as the Court deems just, proper and equitable.

Dated:  April 14, 2022
       New York, New York

AKIN GUMP STRAUSS HAUER & FELD LLP

By:  */s/  Philip C. Dublin*
Ira S. Dizengoff
Philip C. Dublin
Sara L. Brauner
Zachary D. Lanier
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
pdublin@akingump.com
sbrauner@akingump.com
zlanier@akingump.com

*Counsel to the Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al.*

## **EXHIBIT A**

**CERTIFICATION OF PHILIP C. DUBLIN**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
In re:                                          :        Chapter 11
                                                :
SEARS HOLDINGS CORPORATION, et al.              :        Case No. 18-23538 (RDD)
                                                :
                                                :        (Jointly Administered)
                 Debtors.[1]                    :
------------------------------------------------------------------x

### CERTIFICATION UNDER THE FEE GUIDELINES IN RESPECT OF THE TENTH INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OF NOVEMBER 1, 2021 THROUGH AND INCLUDING FEBRUARY 28, 2022

I, Philip C. Dublin, hereby certify that:

1.      I am a partner with Akin Gump,[2] with responsibility for the Chapter 11 Cases of

the above-captioned Debtors.  Akin Gump is counsel to Creditors' Committee of Sears Holdings

Corporation and its affiliated debtors and debtors in possession (collectively, the "Debtors").

---

[1] The Debtors in the Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc.(4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used herein but otherwise not defined shall have the meanings ascribed to such terms in the Application.

Akin Gump also serves as Primary Trust Litigation Counsel to the Litigation Designees pursuant to the Confirmation Order.

2.      In accordance with the Fee Guidelines, this certification is made with respect to the Application, for interim allowance of compensation and reimbursement of expenses incurred during the Compensation Period.

3.      In respect of section B.1 of the Local Guidelines, I certify that:

(a)    I have read the Application;

(b)    to the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Fee Guidelines;

(c)    the fees and disbursements sought are billed at rates in accordance with those customarily charged by Akin Gump and generally accepted by Akin Gump's clients; and

(d)    in providing a reimbursable service, Akin Gump does not make a profit on that service, whether the service is performed by Akin Gump in-house or through a third party.

4.      In accordance with section B.2 of the Local Guidelines and as required by the Interim Compensation Order, I certify that Akin Gump has complied with those provisions requiring it to provide the Debtors and the Creditors' Committee with a statement of Akin Gump's fees and disbursements accrued during the previous month, although, due to administrative limitations, such statements were not always provided within the timeframe set forth in the Local Guidelines or the Interim Compensation Order.

5.      In respect of section B.3 of the Local Guidelines, I certify that the Debtors, the U.S. Trustee and the members of the Creditors' Committee are each being provided with a copy of the Application.

Dated: April 14, 2022                                    By: _/s/  Philip C. Dublin_____
New York, New York                                      Philip C. Dublin

2

## **EXHIBIT B**

**CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURE**

| Blended Hourly Rates | | |
|---|---|---|
| **Category of Timekeeper** | **Billed by NY and DA Offices for Preceding Year[1]** | **Billed in this Application** |
| Partner | $1,353.84 | $1,378.18 |
| Senior Counsel and Counsel | $959.46 | $1,095.00 |
| Associate | $696.50 | $622.73 |
| Legal Assistant | $325.51 | $0.00 |
| **All Timekeepers Aggregated** | **$970.29** | **$902.22** |

---

[1] Consistent with the U.S. Trustee Guidelines, this **Exhibit B** discloses the blended hourly rate for the aggregate of all timekeepers in the domestic offices of Akin Gump in which timekeepers collectively billed more than 10% of the hours to these cases during the Compensation Period (*i.e.*, the New York office), segregated by category, and excluding all data from timekeepers practicing primarily in the financial restructuring group.  This data is based on information from a rolling 12-month year ending February 28, 2022.

## **EXHIBIT C**

**SUMMARY OF COMPENSATION BY TIMEKEEPER**

| Name of Professional | Position | Department | Office | Year of Admission | 2021 Rate | 2022 Rate | Total Hours | Total Amount |
|---|---|---|---|---|---|---|---|---|
| Brauner, Sara L. | Partner | Financial Restructuring | NY | 2011 | $1,265.00 | $1,400.00 | 117.00 | $157,995.00 |
| Dizengoff, Ira S. | Partner | Financial Restructuring | NY | 1993 | $1,655.00 | $1,775.00 | 5.90 | $10,472.50 |
| Chapman, Dean L. | Partner | Litigation | NY | 2009 | $1,265.00 | $1,400.00 | 78.00 | $105,771.00 |
| Zensky, David M. | Partner | Litigation | NY | 1988 | $1,655.00 | $1,775.00 | 8.40 | $14,214.00 |
| Lanier, Zachary D. | Counsel | Financial Restructuring | DA | 2017 | N/A | $1,095.00 | 17.20 | $18,834.00 |
| Lanier, Zachary D.[1] | Associate | Financial Restructuring | DA | 2017 | $980.00 | N/A | 18.80 | $18,424.00 |
| Szydlo, Joseph E. | Associate | Financial Restructuring | NY | 2019 | $810.00 | $965.00 | 42.10 | $37,898.50 |
| Nolan, Sean M. | Associate | Litigation | NY | 2018 | $855.00 | $1,005.00 | 39.90 | $37,099.50 |
| Collins, Russell | Staff Attorney | Practice Attorney | NY | 1998 | $500.00 | $535.00 | 267.50 | $135,930.50 |

---

[1] Zachary D. Lanier was promoted to the position of Counsel, effective as of January 2022. Accordingly, the time Mr. Lanier billed during November and December of 2021, as an Associate, is listed separately from the time that he billed during January and February 2022, as Counsel.

**<u>EXHIBIT D</u>**

**SUMMARY OF COMPENSATION BY TASK CODE AGAINST BUDGETED HOURS
AND FEES**

| Task Code | Task Code Category | Hours Budgeted (Low – High) | Amount Budgeted (Low – High) | Actual Hours | Actual Amount |
|---|---|---|---|---|---|
| 2 | General Case Administration | 0 | $0.00 | -- | -- |
| 3 | Akin Gump Fee Application/Monthly Billing Reports | 25 – 50 | $25,000.00 – $50,000.00 | 38.10 | $37,909.00 |
| 4 | Analysis of Other Professionals' Fee Applications/Reports | 5 – 10 | $5,000.00 – $10,000.00 | 0.50 | $490.00 |
| 5 | Review/Preparation of Schedules, Statements | 0 | $0.00 | -- | -- |
| 6 | Retention of Professionals | 0 | $0.00 | -- | -- |
| 7 | Creditor Committee matters/Meetings (including 341 meetings) | 5 – 10 | $5,000.00 – $10,000.00 | 3.60 | $3,843.50 |
| 8 | Court Hearings | 10 – 20 | $7,500.00 – $25,000.00 | 16.80 | $18,979.50 |
| 9 | Financial Reports and Analysis | 0 | $0.00 | -- | -- |
| 10 | DIP, Cash Collateral Usage and Exit Financing | 100 - 200 | $140,000.00 – $250,000.00 | 150.50 | $201,810.50 |
| 11 | Executory Contracts/Lease Issues | 0 | $0.00 | -- | -- |
| 12 | General Claims Analysis/Claims Objections | 5 – 10 | $5,000.00 – $10,000.00 | 4.80 | $5,821.50 |
| 13 | Analysis of Pre-Petition Transactions | 0 | $0.00 | -- | -- |
| 14 | Insurance Issues | 0 | $0.00 | -- | -- |

| Task Code | Task Code Category | Hours Budgeted (Low – High) | Amount Budgeted (Low – High) | Actual Hours | Actual Amount |
|---|---|---|---|---|---|
| 15 | Secured Creditors Issues /Communications/ Meetings | 0 | $0.00 | -- | -- |
| 16 | Automatic Stay Issues | 0 | $0.00 | -- | -- |
| 17 | General Litigation Matters/Adversary Proceedings | 0 | $0.00 | -- | -- |
| 18 | Tax Issues | 0 | $0.00 | -- | -- |
| 19 | Labor Issues/Employee Benefits | 0 | $0.00 | -- | -- |
| 20 | Jointly Asserted Causes of Action | 250 – 500 | $150,000.00 - $400,000.00 | 351.00 | $233,780.00 |
| 21 | Exclusivity | 0 | $0.00 | -- | -- |
| 22 | Disclosure Statement/ Solicitation/Plan/ Confirmation | 10 – 25 | $5,000.00 – $10,000.00 | 28.00 | $11,602.50 |
| 23 | Asset Dispositions/363 Asset Sales | 10 – 30 | $10,000.00 – $45,000.00 | 15.80 | $32,409.00 |
| 24 | Real Estate Issues | 0 | $0.00 | -- | -- |
| 25 | Travel Time | 0 | $0.00 | -- | -- |
| 28 | General Corporate Matters | 5 – 10 | $5,000.00 – $10,000.00 | 1.20 | $1,176.00 |
| 29 | Intercompany Claims/ Intercompany Transactions/Cash Management | 0 | $0.00 | -- | -- |

| Task Code | Task Code Category | Hours Budgeted (Low – High) | Amount Budgeted (Low – High) | Actual Hours | Actual Amount |
|---|---|---|---|---|---|
| 30 | Customer, Supplier, and Vendor Issues (including Critical Vendor issues) | 0 | $0.00 | -- | -- |
| 31 | Business Operations | 0 | $0.00 | -- | -- |
| **TOTAL** | | **420 – 850** | **$357,500.00 - $820,000.00** | **594.80** | **$536,639.00** |

## EXHIBIT E

**SUMMARY OF EXPENSES BY CATEGORY**

| Disbursement Activity | Amount[1] |
|---|---|
| Computerized Legal Research - Lexis - in contract 30% discount | $6,582.36 |
| Computerized Legal Research - Westlaw - in contract 30% discount | $9,336.25 |
| Computerized Legal Research - Westlaw - out of contract | -- |
| Computerized Legal Research - Courtlink - in contract 50% discount | $2,155.13 |
| Computerized Legal Research - Other | $1,436.27 |
| Color Copy | -- |
| Courier Service/Messenger Service - Off Site | -- |
| Document Retrieval | -- |
| Duplication - In House | -- |
| Duplication - Off Site | -- |
| Filing Fees | -- |
| Imaging/Computerized Litigation Support | -- |
| Meals - Overtime | -- |
| Meals - Business | -- |
| Meals (100%) | -- |
| Miscellaneous | -- |
| Office Supplies – Printing | -- |
| Overtime - Admin Staff | -- |
| Postage | -- |
| Professional Fees - Consultant Fees | $25,032.12 |
| Professional Fees - Legal | -- |
| Professional Fees - Misc. | -- |

---

[1] The expenses incurred during the Compensation Period include, among other thing, $25,032.12 relating to the payment of professional fees and expenses incurred by Lighthouse Global (f/k/a H5), Akin Gump's document management and e-discovery provider.

| Disbursement Activity | Amount[1] |
|---|---|
| Professional Fees - Process Server | -- |
| Research | -- |
| Telephone - Long Distance | -- |
| Transcripts | $404.40 |
| Travel - Airfare | -- |
| Travel - Ground Transportation | -- |
| Travel - Lodging (Hotel, Apt, Other) | -- |
| Local Transportation - Overtime | -- |
| **Total** | **$44,946.53** |

## **EXHIBIT F**

**STAFFING PLAN**

| Category of Timekeeper | Number of Timekeepers Expected to Work on Matter During the Compensation Period | Average Hourly Rate |
|---|---|---|
| Partner | 5 | $1,378.18 |
| Senior Counsel and Counsel | 1 | $1,095.00 |
| Associate | 5 | $622.73 |
| Paralegals & Non-Legal Staff | 3 | $305.00 |