```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
IN RE:                                                        :
                                                              :
SEARS HOLDINGS CORPORATION, et al.,                           :
                                      Debtors.                :    OPINION AND ORDER
--------------------------------------------------------------x
TRANSFORM HOLDCO LLC,                                         :    21 CV 5782 (VB)
                                      Appellant,             :
                                                              :
v.                                                            :
                                                              :
SEARS HOLDINGS CORPORATION, et al.,                           :
                                      Appellees.              :
--------------------------------------------------------------x
```

Briccetti, J.:

Appellant Transform Holdco LLC ("Transform") appeals from the June 15, 2021, Order of the U.S. Bankruptcy Court for the Southern District of New York (Hon. Robert D. Drain, Judge) granting the motion of Sears Holding Corporation and its affiliates ("Debtors") to compel Transform to return approximately $6.3 million in cash formerly held by the Debtors' non-debtor Indian and Hong Kong subsidiaries ("Foreign Subsidiaries").

For the following reasons, the bankruptcy court's order is AFFIRMED.

The Court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a).

## BACKGROUND

I.     The Bankruptcy Proceedings

On October 15, 2018, the Debtors filed for Chapter 11 bankruptcy protection. Having determined that selling their business as a going concern would maximize the estate value, the Debtors engaged in an auction process. (A-516).[1] Pursuant to an Asset Purchase Agreement

---

[1] "A-__" refers to the appendices submitted by the parties pursuant to Rule 8018 of the Federal Rules of Bankruptcy Procedure. (See Docs. ##10-1 to 10-16; 17-1; 19).

1

("APA"), executed on January 17, 2019, the Debtors agreed to sell substantially all their assets to Transform for $5.2 billion, subject to bankruptcy court approval. (A-40). A copy of the APA was filed with the bankruptcy court on January 18, 2019. (Id.).

Following a contested hearing that spanned several days, on February 8, 2019, the bankruptcy court approved the APA and the transaction with Transform. (A-510).

The sale closed on February 11, 2019.[2] The same day, the parties executed an amendment to the APA (the "First Amendment"), a copy of which was filed with the bankruptcy court on February 14, 2019. (A-1713).

II.     The APA and First Amendment

Pursuant to the APA, the Debtors would transfer certain assets ("Acquired Assets") and certain liabilities ("Assumed Liabilities") to Transform at closing. Certain other assets ("Excluded Assets") and liabilities ("Excluded Liabilities") were expressly excluded from the transfer. Excluded Assets included "all bank accounts" and "all cash and cash equivalents." (APA § 2.2; A-7109).

Section 2.13(a) of the APA governs the transfer of "Acquired Foreign Assets," i.e., assets held by the Foreign Subsidiaries. This appeal arises from a dispute over changes implemented to Section 2.13(a) by the First Amendment, which provides, in relevant part:

> On the Closing Date, (i) the Sellers shall use reasonable best efforts to cause each of the Foreign Subsidiaries to sell, transfer, assign, convey and deliver, or cause to be sold, transferred assigned, conveyed and delivered to Buyer or the applicable Assignee, and Buyer or such applicable Assignee shall use reasonable best efforts to purchase all right, title and interest of each of the Foreign Subsidiaries, in, to or

---

[2] Following closing, the parties have engaged in almost continuous disputes surrounding the APA. (See, e.g., A-2222 (Transform Holdco LLC's Motion to Assign Matter to Mediation); A-2243 (Debtors' (I) Motion to (A) Enforce the Asset Purchase Agreement and Automatic Stay Against Transform Holdco LLC and (B) Compel Turnover of Estate Property and (II) Response to Transform Holdco LLC's Motion to Assign Matter to Mediation); A-2531 (Transform Holdco LLC's Adversary Complaint)).

> under all assets, properties and rights Related to the Business (other than the Excluded Assets) and any other assets of the type that would have been Acquired Assets had they been owned by the Sellers as of the Closing Date . . . (collectively, the "<u>Acquired Foreign Assets</u>") . . . and (ii) subject to and to the extent of the transfer of the Acquired Foreign Assets, Buyer shall assume, effective as of the Closing, and shall timely perform and discharge in accordance with their respective terms all Liabilities (other than Excluded Liabilities) of the type that would have been Assumed Liabilities had the applicable Foreign Subsidiary been a Seller as of the Closing Date. . . . If, at any time prior to the date that is sixty (60) days after the Closing Date, Buyer determines (in its sole discretion) and notifies the Seller that it is necessary or desirable to acquire all of the equity interests in any Foreign Subsidiary in lieu of the acquisition of assets and assumption of liabilities contemplated by the first sentence of this Section 2.13(a), then the Sellers shall use reasonable best efforts to transfer such equity interests, which equity interests shall be deemed to be Acquired Foreign Assets.

APA § 2.13(a); (A-7122).

Section 2.1 of the APA, the provision defining "Acquired Assets," was also amended to add that, "subject to Section 2.13, any Acquired Foreign Assets" would be "Acquired Assets" purchased by Transform. (A-7108).

In addition, Section 2.4 of the APA, the provision setting forth "Excluded Liabilities," was amended to add that "[f]or the avoidance of doubt, . . . the Liabilities of any entity that is an Acquired Foreign Asset shall not be Excluded Liabilities." (A-7115).

III.    <u>The Foreign Subsidiary Cash Dispute</u>

At about the time the APA was executed in January 2019, according to the Declaration of Enrique Acevedo submitted by the Debtors (A-4679 ("Acevedo Declaration")), the Debtors' finance department represented to the Debtors' financial advisors "that the Debtors might recover 'at most' $1 million to $1.5 million from India (and likely nothing) and 'could' recover nothing from Hong Kong" for the Debtors' estates. (A-4681–82). In fact, the finance department informed, "the Debtors had transferred $620,000 to Hong Kong on January 18 to ensure the subsidiary's solvency through February 1." (<u>Id</u>.) Therefore, the Debtors' financial

3

advisors "concluded that any attempt to recover cash held in the Indian and Hong Kong subsidiaries at that time would be futile." (A-4682).

On April 9, 2019, after the parties had executed the First Amendment and the sale had closed, Transform elected to acquire "all of the equity interests" in the Foreign Subsidiaries pursuant to amended Section 2.13(a). (A-4616).

In July 2020, the Debtors, spurred by a development unrelated to this dispute, began investigating whether any entities sold to Transform pursuant to the APA held substantial cash as of closing. (A-4682). Through this effort, the Debtors discovered, contrary to their previous determination, that the Foreign Subsidiaries possessed approximately $6.3 million in cash (the "Foreign Subsidiary Cash") on the closing date. (A-4639).

Accordingly, by letter dated January 25, 2021, the Debtors sought from Transform a return of the Foreign Subsidiary Cash, asserting the Foreign Subsidiary Cash was an Excluded Asset improperly acquired by Transform. (A-4639). Transform refused. (A-4642). The parties were unable to resolve the issue, and on April 6, 2021, the Debtors filed the Third Motion to Enforce the Asset Purchase Agreement seeking an order from the bankruptcy court compelling Transform to transfer the $6.3 million in Foreign Subsidiary Cash to the Debtors. (A-4538).

IV. The Bankruptcy Court Orders

Following briefing from the parties and oral argument on April 27, 2021, the Court issued a preliminary bench ruling granting the Debtors' requested relief. (A-7022–35).

The bankruptcy court noted "[t]he parties disagree as to the plain meaning of Section 2.13." (A-7027). The disagreement focused on the meaning of the phrases "in lieu of" and "deemed to be" in the following portion of Section 2.13(a), as amended by the First Amendment:

> If, at any time prior to the date that is sixty (60) days after the Closing Date, [Transform] determines (in its sole discretion) and notifies the [Debtors] that it is

4

> necessary or desirable to acquire all of the equity interests in any Foreign Subsidiary <u>in lieu of</u> the acquisition of assets and assumption of liabilities contemplated by the first sentence of this Section 2.13(a), then the [Debtors] shall use reasonable best efforts to transfer such equity interests, which equity interests shall be <u>deemed to be</u> Acquired Foreign Assets.

APA § 2.13(a) (emphasis added); (A-7122).

Transform argued "in lieu of" should be construed as providing Transform the choice of (i) acquiring the designated assets and liabilities pursuant to the first sentence of Section 2.13(a) or (ii) acquiring <u>all</u> assets and liabilities of the Foreign Subsidiaries if it elected to acquire the equity of those entities, including assets that would otherwise qualify as "Excluded Assets." (A-7029). The bankruptcy court, however, rejected Transform's interpretation and agreed with the Debtors that the choice provided to Transform was of transaction structure, <u>i.e.</u>, between an asset sale and a stock sale to acquire the Foreign Subsidiaries without otherwise changing the negotiated economics of what assets Transform was (and was not) purchasing.

The bankruptcy court also agreed with the Debtors that the "deemed to be" language, added via the First Amendment, served the specific purpose of carving Excluded Assets out from what was transferred to Transform upon the stock sale-election. (A-7029). Adopting Transform's interpretation, the bankruptcy court reasoned, would render this language meaningless because Transform's interpretation could be achieved solely through the language that Transform would "acquire all of the equity interests." <u>Id</u>.

The bankruptcy court also discussed how Transform's interpretation represented a material change to how the APA terms were presented to the bankruptcy court and other parties in interest, and such interpretation was not presented to the bankruptcy court at the time it approved the transaction or after, nor discussed at the sale hearing. (A-7030).

Lastly, the bankruptcy court rejected Transform's argument that the Debtors had acquiesced to Transform's acquisition of the Foreign Subsidiary Cash by not objecting to its

5

transfer for nearly two years between closing and January 2021. (A-7031). Referring to the Acevedo Declaration, the bankruptcy court noted the Debtors "did not have the critical fact of the dollar amount of cash in the Debtors' bank accounts . . . until well after the stock transfer." (A-7031). Accordingly, the bankruptcy court found the Debtors did not have full knowledge of their rights and the material facts during the period they were allegedly inactive, and therefore could not have acquiesced to Transform's acquisition of the Foreign Subsidiary Cash. Id.

Following the bankruptcy court's preliminary bench ruling, the parties submitted supplemental briefing on the circumstances surrounding adoption of the First Amendment. In support of its supplemental papers, Transform submitted the declaration of Keith Stopen, a former employee of the Debtors, stating he sent a balance sheet to the Debtors' financial advisors shortly after closing that listed the Foreign Subsidiary Cash. (A-5001).

In response, the Debtors submitted a competing declaration from William Murphy, one of the Debtors' financial advisors, acknowledging that he received the balance sheet reflecting the Foreign Subsidiary Cash, but explaining the same email included "voluminous data" and that the Foreign Subsidiary Cash was "not germane" to the task for which the balance sheet was received and reviewed. (A-5010). Accordingly, Mr. Murphy did not review this line item.

After considering the supplemental memoranda of law and supporting declarations submitted by the parties, on June 15, 2021, the bankruptcy court entered a final order adopting its April 27, 2021, bench ruling. (A-5193–94).

On June 16, 2021, Transform filed a notice of appeal. (A-5215).

# DISCUSSION

I. <u>Standard of Review</u>

A district court reviews a bankruptcy court's conclusions of law <u>de novo</u> and its findings of fact under a clearly erroneous standard. See <u>In re Ames Dep't Stores, Inc.</u>, 582 F.3d 422, 426 (2d Cir. 2009).[3]

With respect to a bankruptcy court's factual findings, clear error exists only when a reviewing court is "left with the definite and firm conviction that a mistake has been committed." <u>In re Manville Forest Prods. Corp.</u>, 896 F.2d 1384, 1388 (2d Cir. 1990). "[T]he standard of review for a mixed question depends on whether answering it entails primarily legal or factual work." <u>U.S. Bank Nat'l Ass'n v. Vill. at Lakeridge, LLC</u>, 138 S. Ct. 960, 962 (2018).

II. <u>Plain Language of Section 2.13(a)</u>

A. <u>Legal Standard</u>

Whether the language of a contractual provision is ambiguous is a question of law that the Court reviews <u>de novo</u>. See <u>Alta Berkeley VI C.V. v. Omneon, Inc.</u>, 41 A.3d 381, 385 (Del. 2012).[4]

"Delaware law adheres to the objective theory of contracts, <u>i.e.</u>, a contract's construction should be that which would be understood by an objective, reasonable third party." <u>Salamone v. Gorman</u>, 106 A.3d 354, 367–68 (Del. 2014).

---

[3]   Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

[4]   Delaware courts generally honor choice-of-law clauses. See <u>Change Cap. Partners Fund I, LLC v. Volt Elec. Sys., LLC</u>, 2018 WL 1635006, at *4 (Del. Super. Ct. Apr. 3, 2018). Section 13.8(a) of the APA provides Delaware law governs all claims arising out of or relating to the APA and the parties agree that Delaware law applies. (See Doc. #10 at 26; Doc. #17 at 19). Accordingly, the Court applies Delaware law.

7

"Unless there is ambiguity, Delaware courts interpret contract terms according to their plain, ordinary meaning." Alta Berkeley VI C.V. v. Omneon, Inc., 41 A.3d at 381. Importantly, "[c]ontract language is not ambiguous merely because the parties dispute what it means. To be ambiguous, a disputed contract term must be fairly or reasonably susceptible to more than one meaning." Id. at 385.

When interpreting an unambiguous contract, "courts must read the specific [challenged] provisions of the contract in light of the entire contract. That is true in all commercial contexts, but especially so when the contract at issue involves a definitive acquisition agreement addressing the sale of an entire business." Chi. Bridge & Iron Co. N.V. v. Westinghouse Elec. Co., 166 A.3d 912, 913–14 (Del. 2017). Courts "will not read a contract to render a provision or term meaningless or illusory." Osborn ex rel. Osborn v. Kemp, 991 A.2d 1153, 1159 (Del. 2010). In addition, if the parties to a contract omit terms, "[i]t is not the role of this court to second-guess the parties and read into their agreement what they have omitted." Golden Rule Fin. Corp. v. S'holder Rep. Servs. LLC, 2021 WL 305741, at *11 (Del. Ch. Jan. 29. 2021).

B.    Analysis

Transform argues the bankruptcy court erred in concluding Transform did not acquire the Foreign Subsidiary Cash under the unambiguous terms of the APA.

The Court disagrees.

The parties do not dispute the Foreign Subsidiary Cash is an Excluded Asset. (Doc. #17, at 11). Their disagreement turns on whether amended Section 2.13(a) permitted Transform to acquire Excluded Assets that would ordinarily transfer with stock ownership upon electing to purchase the equity of the Foreign Subsidiaries.

This Court acknowledges, as did the bankruptcy court, that unless otherwise negotiated, a buyer who purchases "all of the equity interests" (APA § 2.13(a)) in a company will receive all the company's assets. (A-7029). However, to read the phrase "all of the equity interests" in isolation ignores the remainder of Section 2.13(a) as well as the rest of the 126-page APA.

When read in its entirety, the unambiguous language of Section 2.13(a) permits Transform to use a stock sale structure to purchase the Foreign Subsidiaries "in lieu of" the original structure of acquiring the Foreign Subsidiaries' assets and liabilities. Nowhere does Section 2.13—or any other provision of the APA—deem Excluded Assets, such as the Foreign Subsidiary Cash, to be Acquired Assets if Transform elected to purchase the Foreign Subsidiaries' equity. In fact, Section 2.13(a) does just the opposite by "deeming" the equity interests of the Foreign Subsidiaries to be Acquired Foreign Assets; <u>i.e.</u>, treating the Foreign Subsidiaries' equity as Acquired Foreign Assets and transferring such assets, <u>other</u> than any accompanying Excluded Assets, to Transform at closing.

As the bankruptcy court noted, the language that Transform would purchase "all of the equity interests" would have been sufficient to support Transform's interpretation. The parties did not need to add the "deemed to be" phrase in the First Amendment unless the parties "intended to exclude from the assets transferred the cash and other excluded assets." (A-7029). Consequently, Transform's interpretation would render the "deemed to be" phrase superfluous.

Not only is Transform's position contrary to the plain meaning of Section 2.13(a), but it also does not comport with the amendments made to Section 2.4. As part of the First Amendment, the parties amended Section 2.4 to provide, "[f]or the avoidance of doubt . . . the Liabilities of any entity that is an Acquired Foreign Asset shall not be Excluded Liabilities." (APA § 2.4; A-7115). Therefore, the parties explicitly memorialized that Transform would

9

acquire certain Excluded Liabilities if they elected to purchase the equity interests of the Foreign Subsidiaries. The First Amendment did not, however, make a similar change to include Excluded Assets within Acquired Assets if Transform elected to purchase the Foreign Subsidiaries' equity.

Accordingly, the order of the bankruptcy court must be affirmed.

II.   Consideration of Parol Evidence

Because the APA is unambiguous, the Court does not reach Transform's argument that the bankruptcy court improperly considered parol evidence because any such consideration was, at most, harmless error. See Salamone v. Gorman, 106 A.3d at 367.

III.   Acquiescence

Transform argues the bankruptcy court erred in determining the Debtors did not acquiesce to Transform's receipt of the Foreign Subsidiary Cash.

The Court disagrees.

A.   Legal Standard

Because acquiescence is an affirmative defense, the burden of proof is on Transform. See In re Coinmint, LLC, 261 A.3d 867, 887–889 (Del. Ch. 2021). To prevail, Transform must prove by a preponderance of the evidence that the Debtors:

> [had] full knowledge of [their] rights and the material facts and (1) remain[ed] inactive for a considerable time; or (2) freely [did] what amounts to recognition of the complained of act; or (3) act[ed] in a manner inconsistent with the subsequent repudiation, which leads the other party to believe the act has been approved.

Klaassen v. Allegro Dev. Corp., 106 A.3d 1035, 1047 (Del. 2014); In re Coinmint, LLC, 261 A.3d at 896. Accordingly, whether a challenging party acquiesced to an action "hinges on the challenging party's knowledge." Cont'l Ins. Co. v. Rutledge & Co., Inc., 750 A.2d 1219, 1240 (Del. Ch. 2000).

10

B.     Analysis

The bankruptcy court did not err when it concluded Transform did not establish the Debtors acquiesced to Transform's receipt of the Foreign Subsidiary Cash.

"There is no direct proof in the record that [the Debtors] had full knowledge of their rights or of all material facts until shortly before they" demanded return of the Foreign Subsidiary Cash. Cantera v. Marriott Senior Living Servs., Inc., 1999 WL 118823, at *8 (Del. Ch. Feb. 18, 1999). At about the time the APA was executed, the Debtors' finance department represented to the Debtors there was little or no recoverable cash in the Foreign Subsidiary bank accounts. Thereafter, through an unrelated examination, the Debtors' advisors received evidence of the actual Foreign Subsidiary Cash amounts—namely, the $6.3 million. However, the Debtors assert they did not examine this evidence because it was produced as part of voluminous data that was not germane to the task for which it was requested. (A-5010). Accordingly, the bankruptcy court's factual determination that the Debtors did not know the true amount of the Foreign Subsidiary Cash was not clearly erroneous.

The Court thus agrees with the bankruptcy court that Transform has not demonstrated any inaction by the Debtors amounted to acquiescence. See In re Coinmint, LLC, 261 A.3d at 895–896 (defendant proved acquiescence where plaintiff did "not identify a single fact of which it was unaware"); Klaassen v. Allegro Dev. Corp., 106 A.3d at 1047–48 (defendant proved acquiescence where plaintiff did "not claim that he lacked full knowledge of either his rights or the material facts").

Moreover, Transform waived its argument that the bankruptcy court improperly considered the Acevedo Declaration in reaching its conclusion by not raising it at the hearing on the Debtors' motion to enforce the APA and, subsequently, only in a footnote in its post-hearing

11

supplemental brief. (A-4728). It is well-established in the Second Circuit that arguments made only in a footnote are not preserved for appellate review. United States v. Svoboda, 347 F.3d 471, 480 (2d Cir. 2003); see also Zanyu Jin v. Holder, 346 F. App'x 637, 639 (2d Cir. 2009) (summary order) (concluding an argument in an immigration appeal was "waived because . . . [petitioners] failed to raise this issue before the BIA until their reply brief, and then only in a footnote").

Finally, "[b]ankruptcy courts have the discretion to decide an issue without holding an evidentiary hearing, and a district court can reverse such a decision only if it amounts to an abuse of discretion." Halkias v. Great Atl. & Pac. Tea Co. (In re Great Atl. & Pac. Tea Co.), 618 B.R. 57, 65 (S.D.N.Y. 2020), aff'd, 850 F. App'x 811 (2d Cir. 2021) (summary order). "A bankruptcy court does not abuse its discretion in reaching a decision without holding an evidentiary hearing where the record provided ample evidence on which the court could make such a decision." Id. Here, as described above, the record did provide such evidence.

Accordingly, the bankruptcy court's order must be affirmed.

## CONCLUSION

The bankruptcy court's Order of June 15, 2021, is AFFIRMED.

The Clerk is instructed to terminate the pending appeal and close this case.

Dated: May 6, 2022
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge