WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York  10110
Telephone:  212-382-3300
*Co-Counsel for the Official Committee of Retirees*
*With Life Insurance Benefit*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Case No: 18-23538 (RDD) |
| SEARS HOLDINGS CORPORATION, *et al*, | Chapter 11 |
| Debtors. | (Jointly Administered) |

## SUMMARY STATEMENT FOR FINAL FEE APPLICATION OF WOLLMUTH MAHER & DEUTSCH LLP AS CO-COUNSEL TO OFFICIAL RETIREES COMMITTEE FOR ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FOR THE PERIOD JULY 9, 2019 THROUGH MAY 13, 2022

### SUMMARY OF FEE APPLICATION

| | |
|---|---|
| Name of Applicant: | Wollmuth Maher & Deutsch LLP |
| Authorized to Provide Professional Services to: | Official Committee of Retirees With Life Insurance Benefit |
| Role in the Case: | Co-Counsel |
| Date of Retention: | Order Entered September 23, 2019 (ECF 5223) *Nunc Pro Tunc* to July 9, 2019 |
| Case Compensation Period: | July 9, 2019 through May 13, 2022 |
| Total Compensation Sought: | $175,000.00[1] |

---

[1] The Order establishing the committee for retirees provided that there would be a cap on fees of $250,000, subject to a request to increase that amount.  Given the increased volume of services provided, as described in the application, the Official Committee of Retirees has filed a request for an increase in that cap to $350,000, inclusive of the fees of both counsel.  That application will be filed contemporaneously with this Final Fee Application.  To the extent that the Court raises the cap or denies the motion, the applicant will seek half of the cap amount that applies.

Total Expense
Reimbursement Sought:                    $


This is a:                    ___ Monthly    ___ Interim    _X_ Final Application

This is Wollmuth Maher & Deutsch LLP's <u>final</u> fee application in this case.

**SUMMARY OF ALL FEES AND EXPENSES REQUESTED, APPROVED AND RECEIVED TO DATE**

| Interim Fee Application/Period Covered | Fees Requested | Fees Received Pursuant to Monthly Invoices and/or Court Order | Fees Approved by Court Order | Expenses Requested | Expenses Received Pursuant to Monthly Invoices and/or Court Order | Expenses Approved by Court Order |
|---|---|---|---|---|---|---|
| N/A | | | | | | |
| Total Expenses Received to Date | | | | | | |

| | |
|---|---|
| TOTAL FEES HELD BACK TO DATE | N/A |
| TOTAL EXPENSES HELD BACK TO DATE | N/A |
| TOTAL HOLDBACK | N/A |

**TIMEKEEPER SUMMARY**

| Name of Professional & Title | Year of Admission | Hours | Rate[2] | Fees |
|---|---|---|---|---|
| James N. Lawlor, Partner | Area of Expertise: Bankruptcy, Litigation.<br><br>Member of the New York Bar (1993), New Jersey Bar (1992). Joined the firm in 2002. | 268.80 | 780 | 209,664.00 |
| Cassandra Postighione, Associate | Area of Expertise: Litigation.<br><br>Member of the New York Bar (2017), New Jersey Bar (2017) Joined the firm in 2016. | 112.60 | | 51,169.00 |
| Kimberly E. Dorismund, Paralegal | N/A | 158.10 | 75 | 11,857.50 |
| Simon D. Rybansky, Paralegal | N/A | 1.50 | 205 | 307.50 |
| Celenydiana Adames, Paralegal | N/A | 48.80 | 75 | 3,660.00 |
| Anthony A. Hallums, Paralegal | N/A | 89.70 | 75 | 6,727.50 |
| Scarlet E.Meltzer, Paralegal | N/A | 75.26 | 115.40 | 8,685.00 |
| Michele Klinger, Paralegal | N/A | 82.65 | 177.70 | 14,687.50 |
| Alexander T. Cukier, Law Clerk | N/A | 39.10 | 220.25 | 8,611.80 |

---

[2] For attorneys, rates reflect the original rate at the time of retention, as well as the firm's ordinary course rate increases for attorneys and increases for attorneys based on experience levels.  With respect to paraprofessionals and law clerks, as explained in the application rates were reduced for certain services, _e.g._, assisting Sears retirees in preparing claims, and the rate shown may be the blended rate for the timekeeper.

| | | | | |
|---|---|---|---|---|
| Amanda E. Benincasa, Law Clerk | N/A | 3.30 | 285.00 | 940.50 |
| | **TOTALS*:** | **1,015** | | **$316,310.30** |

*Before Travel Time Reductions.

## SUMMARY OF SERVICES

| SERVICES RENDERED | HOURS | FEES |
|---|---|---|
| a) **Asset Analysis and Recovery:** Identification and review of potential assets including causes of action and non-litigation recoveries. | 0 | $0.00 |
| b) **Asset Disposition:** Sales, leases, abandonment and related transaction work. | 0 | $0.00 |
| c) **Avoidance Action Litigation:** Preference and fraudulent transfer litigation. | 0 | $0.00 |
| d) **Business Operations:** Issues related to debtor-in-possession operating in chapter 11 such as employee, vendor, tenant issues and other similar problems. | 0 | $0.00 |
| e) **Case Administration:** Coordination and compliance activities, including preparation of statement of financial affairs, schedules, list of contracts, United States Trustee interim statements and operating reports; contacts with the United States Trustee; general creditor inquires. | 0 | $0.00 |
| f) **Claims Administration and Objections:** Specific claim inquiries; bar date motions; analyses, objections and allowance of claims. | 223.0 | $145,353.80 |
| g) **Employee Benefits/Pensions:** Review issues such as severance, retention, 401K coverage and continuance of pension plan. | 767.5 | $157,384.50 |
| h) **Fee/Employment Applications:** Preparations of employment and fee applications for self or others; motions to Establish interim procedures. | 15.4 | $7,824.50 |
| i) **Fee/Employment Objections:** Review of an objections to the employment and fee applications of others. | 0 | $0.00 |
| j) **Financing:** Matters under 361, 363 and 364 including cash collateral and secured clams; loan document analysis. | 0 | $0.00 |
| k) **Litigation:** Other than Avoidance Action Litigation (there should be a separate category established for each major matter). | 0 | $0.00 |

| SERVICES RENDERED | HOURS | FEES |
|---|---|---|
| l)  **Meeting of Creditors:** <br> Preparing for and attending the conference of creditors, the 341(a) meeting and other creditors' committee meetings. | 0 | $0.00 |
| m)  **Plan and Disclosure Statement:** <br> Formulation, presentation and confirmation; compliance with the plan confirmation order, related orders and rules; disbursement and case closing activities, except those related to allowance and objections to allowance of claims. | 0 | $0.00 |
| n)  **Relief from Stay Proceedings:** <br> Matters relating to termination or continuation of automatic stay under 362. | 0 | $0.00 |
| o)  **Accounting/Auditing:** <br> Activities related to maintaining and auditing books of account, preparation of financial statements and account analysis. | 0 | $0.00 |
| p)  **Business Analysis:** <br> Preparation and review of company business plan; development and review of strategies; preparation and review of cash flow forecasts and feasibility studies. | 0 | $0.00 |
| q)  **Corporate Finance:** <br> Review financial aspects of potential mergers, acquisitions and disposition of company or subsidiaries. | 0 | $0.00 |
| r)  **Data Analysis:** <br> Management information systems review, installation and analysis, construction, maintenance and reporting of significant case financial data, lease rejection, claims, etc. | 0 | $0.00 |
| s)  **Litigation Consulting:** <br> Providing consulting and expert witness services related to various bankruptcy matters such as insolvency, feasibility, avoiding actions; forensic accounting, etc. | 0 | $0.00 |
| t)  **Reconstruction Accounting:** <br> Reconstructing books and records from past transactions and bringing accounting current. | 0 | $0.00 |
| u)  **Tax Issues:** <br> Analysis of tax issues and preparation of state and federal tax returns. | 0 | $0.00 |
| v)  **Valuation:** <br> Appraise or review appraisals of assets. | 0 | $0.00 |

| SERVICES RENDERED | HOURS | FEES |
|---|---|---|
| w)  **Travel Time** | 9.00 | $5,847.50 |
| x)  **Less ½ Travel Time** | **(4.5)** | **($2,923.20)** |
| **SERVICE TOTALS** | **1,010.50** | **$313,386.55** |

## SUMMARY OF DISBURSEMENTS

| DISBURSEMENTS | AMOUNT |
|---|---|
| a) **Filing Fees**<br>Payable to Clerk of Court. | $0.00 |
| b) **Computer Assisted Legal Research**<br>Westlaw, Lexis and a description of manner calculated. | 882.59 |
| c) **Pacer Fees**<br>Payable to the Pacer Service Center for search and/or print. | 47.10 |
| d) **Fax**<br>Include per page fee charged. | 0.00 |
| e) **Case Specific Telephone/Conference Call Charges**<br>Including Court Conference and/or Hearings. Exclusive of overhead charges. | 0.00 |
| f) **In-house Reproduction Services**<br>Exclusive of overhead charges. | 0.00 |
| g) **Outside Reproduction Services**<br>Including scanning services. | 0.00 |
| h) **Other Research**<br>Title searches, UCC searches, Asset searches, Accurint. | 0.00 |
| i) **Court Reporting**<br>Transcripts. | 0.00 |
| j) **Travel**<br>Mileage, tolls, airfare, parking. | 519.60 |
| k) **Courier & Express Carriers**<br>Overnight and personal delivery. | 550.18 |
| l) **Postage** | 0.00 |
| m) **Other** | 10.00 |
| **DISBURSEMENTS TOTAL:** | $2,009.47 |

I certify under penalty of perjury that the above is true.

New York, New York
Dated: May 26, 2022

*/s/ James N. Lawlor*
James N. Lawlor

**Hearing Date: To Be Determined**
**Objection Date: To Be Determined**

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York  10110
Telephone:  212-382-3300
*Co-Counsel for the Official Committee of Retirees*
*With Life Insurance Benefit*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No: 18-23538 (RDD) |
| SEARS HOLDINGS CORPORATION, *et al*, | Chapter 11 |
| Debtors. | (Jointly Administered) |

**FINAL FEE APPLICATION OF WOLLMUTH MAHER & DEUTSCH LLP AS CO-COUNSEL TO OFFICIAL RETIREES COMMITTEE FOR ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FOR THE PERIOD JULY 9, 2019 THROUGH MAY 13, 2022**

TO:   **THE HONORABLE ROBERT D. DRAIN**
      **UNITED STATES BANKRUPTCY JUDGE**:

Wollmuth Maher & Deutsch LLP ("Wollmuth" or the "Firm"), co-counsel Official

Committee of Retirees With Life Insurance Benefit ("Retirees Committee") for Sears Holdings

Corp. ("Sears") and its affiliated debtors (each a "Debtor" and collectively, the "Debtors") in the

above-captioned chapter 11 cases ("Cases"), files its Final Fee Application (this "Application")

seeking (i) an increase in the cap on fees for services rendered to the Retirees Committee, (ii)

allowance of compensation for professional legal services rendered in the aggregate amount of

$175,000.00,[3] and (iii) allowance of reimbursement for actual and necessary expenses incurred

in the aggregate amount of $2,009.47 for the case compensation period commencing from the

time of the Firm's retention *nunc pro tunc* to July 9, 2019 through and including May 13, 2022

(<u>Case Compensation Period</u>"), pursuant to sections 330 and 331 of title 11 of the United States

Code (<u>Bankruptcy Code</u>"), Rule 2016 of the Federal Rules of Bankruptcy Procedure

(<u>Bankruptcy Rules</u>"), Rule 2016-1 of the Local Rules for the United States Bankruptcy Court for

the Southern District of New York (<u>Local Rules</u>") and the Order Authorizing Procedures for

Interim Compensation and Reimbursement of Expenses of Professionals ("<u>Interim

Compensation Order</u>") (ECF 796).  In support of this Application, Wollmuth represents as

follows:

## <u>JURISDICTION</u>

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief requested herein are

sections 330 and 331 of the Bankruptcy Code.

## <u>GENERAL BACKGROUND</u>

2.      Commencing on October 15, 2018, and periodically thereafter (as applicable, the

"<u>Commencement Date</u>"), Sears and certain of its subsidiaries commenced with this Court

voluntary Cases under Chapter 11 of the Bankruptcy Code.  The Debtors' Cases have been

consolidated for procedural purposes only and are being jointly administered pursuant to Rule

---

[3] The Formation Order (as defined below) provided that there would be a cap on fees of $250,000, subject to a request to increase that amount.  Given the increased volume of services provided, as described below, the Retirees Committee has filed a request for an increase in that cap to $350,000, inclusive of the fees of both counsel.  That application will be filed simultaneously with this Final Fee Application.  To the extent that the Court raises the cap or denies the motion, the applicant will seek half of the cap amount that applies.

1015(b) of the Bankruptcy Rules.  Accordingly, the Debtors were authorized to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

3.      On May 28, 2019, certain retirees of Sears that held vested life insurance benefits

("Retirees"), with the assistance of Wollmuth and the Law Offices of Michael M. Mulder

("Mulder Law"), moved for appointment of an official committee of retirees with life insurance

benefit pursuant to 11 U.S.C. § 1114(d) of the Bankruptcy Code (ECF 4054).  As disclosed in

the motion, Mulder Law previously served as lead-Class Counsel for plaintiffs and the class in *In

re: Sears Retiree Group Life Insurance Litigation*, Civil Action No. 97 C 7453 (D. Ill.) ("Sears

Life Insurance Litigation"), which resulted in a Stipulation of Settlement with vested retiree life

insurance benefits for the class.  Nonetheless, Sears purportedly terminated the vested life

insurance benefit earned by Retirees without notice.

4.      Over the objection of the Debtors, the Court granted the motion by Order dated

June 25, 2019 ("Formation Order") (ECF 4357).

5.      In addition to the authorization for formation of a committee, the Formation Order

stated that "[t]he committee to be appointed pursuant to this Order shall have a budget not to

exceed $250,000; provided, however, the committee may seek reasonable increases for cause

upon application to the Court."

6.      The United States Trustee formally appointed the Retirees Committee on July 9,

2019 (ECF 4470).[4]

---

[4] The Retirees Committee currently comprises: (i) Ronald Olbrysh, (ii) Mary Rose Steininger, (iii) James T. Nally, and (iv) Joseph E. Hartzell. Richard Bruce was a member of the Retirees Committee until his death on August 1, 2021.

7.     The Retirees Committee selected Wollmuth and Mulder Law to represent it in matters relating to the disputed retiree benefits.  On September 23, 2019, this Court entered an Order that approved Wollmuth's retention as co-counsel to the Retirees Committee (ECF 5223) ("Retention Order") *nunc pro tunc* to July 9, 2019.  A true and correct copy of the Retention Order is attached hereto as Exhibit "**A**".

8.     In or about January 1, 2020, Wollmuth adjusted the billing rates of the firm's associate attorneys reflected in the accompanying summary chart in the ordinary course of the Firm's business due to such associates' increase in seniority and experience level and such "step increases" were within the Firm's initial range of billing rates effective at the time of the firm's retention in the Cases and were not attributable to a rate increase.  However, recognizing that there was a cap on fees in this case and the Retirees Committee had retained two firms, Wollmuth did not make any adjustments for partner time.

9.     On October 15, 2019, the Court entered an order ("Confirmation Order") (ECF 5370) confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holding Corporation and Its Affiliated Debtors ("Plan") (ECF 4476), which Confirmation Order attached a copy of the confirmed Plan as Exhibit A thereto.

10.     Pursuant to the Plan and the Confirmation Order, final fee applications are due shortly after the occurrence of the "Effective Date" as defined in the Plan.  However, as Wollmuth does not anticipate having to provide continued substantial services and will remain capped for any future services it may provide to the Committee, regardless of whether the Court permits an increase in that cap, the firm now files its final fee application with summaries and schedules set forth in the accompanying summary sheet reflecting all fees and expenses sought

4

for the Case Compensation Period, as well as summaries and schedules of all hours billed and categories of services and disbursements throughout the Case Compensation Period.

**The Debtors' 1114 Motion and Retirees Committee's Opposition**

11.     On July 29, 2019, the Debtors filed a motion for modification of retiree benefits ("1114 Motion") (ECF 4635), whereby it sought what was essentially nunc pro tunc approval of the earlier termination of the life insurance benefit of the Retirees.  The termination was made without formal notice to the Retirees.  The Official Committee of Unsecured Creditors joined with the Debtors in the 1114 Motion (ECF 4887).

12.     On August 6, 2019, the Retirees Committee filed an objection to the 1114 Motion (ECF 4768), asserting, inter alia, that the life insurance benefit may only be modified or terminated after notice and a hearing following good faith negotiations between the Debtors and an authorized representative in accordance with the requirements set forth in Section 1114 of the Bankruptcy Code.

13.     The Retiree Committee also filed an Objection to confirmation of the Debtors' Plan based on the Plan's failure to notice and address the Retirees' potential claims under Section 1114  (ECF 4702) ("Retiree Plan Objection").

**Negotiations With and Discovery From Debtors**

14.     Beginning on July 22, 2019, the Retirees Committee, through counsel, engaged in negotiations with Debtors regarding the estates' efforts to modify the benefits of the Retirees. *See generally* ECF 4635 and 4768.

15.     On July 29, 2019, the Retirees Committee sent the Debtors an informal request seeking information about, among other things, potential retirees subject to the 1114 Motion, the Debtors' decision to terminate the benefit and their knowledge of the Stipulation of Settlement.

While the Debtors provided certain information shortly after receipt of such request, Debtors'

initial refused to provide other information resulted in separate negotiations between the parties

to narrow the dispute until the parties agreed to what Debtors would provide to the Retirees

Committee.

### Negotiations With and Discovery From Securian

16.    On September 10, 2019, the Debtors and the Retirees Committee requested an

adjournment for additional time for discovery and analysis after determining that Debtors'

productions contained insufficient information in order to determine (i) the identification of the

retirees who were policyholders of the Securian Policy as well as the retirees' beneficiaries; (ii)

the identity of retirees that may be policyholders that may not hold vested benefits as a result of

either being the beneficiary of a policy that was less than $5,000 on the petition date or holding

supplemental policies that also may not constitute vested benefits; (iii) which of the retirees'

claims were paid by Securian between January 1, 2019 and April 15, 2019 ("Breach Period");

and (iv) the mortality rate of retirees who passed away during the Breach Period.[5]  (ECF 5115).

17.    On August 22, 2019, the Court granted the Debtors' and the Retirees Committee's

request for an adjournment of the hearing on Debtors' motion for modification of retiree benefits

in order to allow additional time for discovery and analysis, including to serve a subpoena upon

Securian Financial Group, Inc. ("Securian"), the parent company of Securian Life Insurance

Company, which held the Group Term Life Insurance Policy of Debtors' retirees that was

unilaterally terminated on March 15, 2019.

18.    On August 27, 2019, the Retirees Committee submitted an Application requesting

entry of an order pursuant to Bankruptcy Rule 2004 authorizing the Retirees Committee to serve

---

[5] At approximately this time, Debtors also informed the Retirees Committee that Securian would not produce the
necessary information unless it was in receipt of a subpoena requesting such information.

document requests through a subpoena on Securian Financial Group, Inc. (ECF 5001). The

Application was granted on August 28, 2019 (ECF 5015).

19.    After formal service of the subpoena to Securian, the Retirees Committee

subsequently entered into negotiations with Securian spanning several weeks for the production

of information that, among other things, could be utilized to calculate a reasonable estimate of

retirees that have passed away between April 15, 2019 and the date of formal termination of the

benefit, and the total number of living retirees as of present day.

### Resolution of the 1114 Motion

20.    The Retiree Committee and the Debtors were able to resolve the 1114 Motion

pursuant to a negotiated settlement that was incorporated into an Order of the Court dated

October 9, 2019 (ECF 5342) ("Retiree Plan Settlement").

21.    The Retiree Plan Settlement provided, inter alia, that a $3 million administrative

claim reserve would be established to be used exclusively to pay allowed administrative claims

to beneficiaries of Retirees that died during a specific time period.  Remaining eligible Retirees

were permitted to file proofs of claim in order to receive compensation as general unsecured

creditors on the terms set for the in the Retiree Plan Settlement, and the Retiree Plan Objection

was withdrawn.

### Assistance to Retirees in Filing and Review of Claims

22.    The Retirees Committee expressed a concern that the claims process would be

difficult for many of the Retirees to navigate.  Indeed, the average age of Retirees is between 80

and 90 of age, with some well over 100.  Moreover, claimants entitled to seek treatment as

administrative creditors under the Retiree Plan Settlement (the "Gap Claimants") are themselves

older and there was no way to determine if they would have the needed documentation.

7

23.     Wollmuth and Mulder Law were and remain in continuous contact with the remaining active members of the Retirees Committee, assisted and advised the Retirees Committee as to its communications with Retirees regarding significant matters in the Cases and addressed Retirees either directly or through a retiree organization.  Retirees or their survivors had often reached out before the settlement was reached, and once the settlement was disclosed, claimants began seeking assistance or explanation as to the claim process and their entitlement to a claim.

24.     Wollmuth provided a unique telephone number to be included with the notice sent to Retirees in order to provide a point of contact for inquiries from Retirees for information or assistance in addressing their claims or the status of the Chapter 11 Cases.  The Firm has received over 3,300 voices mails, which were returned over the course of many months by paraprofessionals at the Firm.  Attorneys and paralegals at Wollmuth similarly fielded hundreds more direct inquiries from Retirees or their survivors.  Mulder Law also received hundreds of direct inquiries.

25.     As claims began to be filed, it quickly became apparent based on even a small sample that there were numerous deficiencies that made distribution of the Retiree Settlement funds problematic.  Claims themselves often contained one or more errors or omitted key information, for example:

- Claims stated an incorrect or entirely omitted the Retiree's Sears Life Insurance benefit amount;

- Claims did not identify the Retiree entitled to the benefit;

- Claims failed to include any information as to whether a Retiree was alive or deceased;

- Claims that did indicate a Retiree was deceased did not include a date of death; and

8

- Claims that indicated a date of death omitted evidence, such as a death
certificate.

26.     With the help of Wollmuth and Mulder Law, the Retirees Committee has

examined approximately 7,000 filed proofs of claim, roughly 5,400 of which were claims filed

by Retirees or survivors (the "Claims"), all documentation provided with respect to each such

Claim, the Stipulation, Securian Policy records, publicly available documents and published

records of death.  The review was labor intensive and necessitated because of the deficiencies,

but it resulted in some 350 Claims that might qualify for administrative treatment or that had to

be further examined in order to eliminate them from participating.  After the culling, Wollmuth

and Mulder Law re-examined the smaller pool of Claims with errors, reached out to claimants

via phone and email and provided assistance so that the appropriate claimants could receive their

benefits.  Moreover, the delay in the Plan's Effective Date and in distributions resulted in many

of those Retirees repeatedly inquiring on the status of their potential distributions.

27.     Given the age of the policies and the Retirees' ages, it is no surprise that many

Retirees, beneficiaries and survivors did not have complete or the most up-to-date information

included.  In order to make sure that the Debtors pay the correct Retiree, beneficiary or survivor,

however, as well as the correct amount on account of Claims in accordance with the Retiree

Benefits Order, Wollmuth, in conjunction with Mulder Law, were required to contact retirees,

search the Securian records, search public records, send emails and make multiple phone calls to

determine whether the Claims were entitled to treatment as Gap Claims or were even proper

claims at all.

28.     Upon information and belief, the work of Wollmuth and Mulder Law was not

duplicative of each other and the work of the Plan Administrator and other estate professionals as

Wollmuth coordinated with the estate professionals and its summary work product was turned

over and formed the basis of the recent objections to claims filed in the case.  As a result of the

Firms' services, approximately 270 Claims will be receiving the full amount available under the

Retiree Settlement, and an additional $1 million will be freed up for other creditors.  Moreover,

survivors of Retirees that passed away before termination of the life insurance benefit were

provided information that allowed them to make claims directly for benefits to Securian.  Finally,

the remaining 5,000 Claims have been identified as proper and valid Claims held by Retirees

that, hopefully, will share as general unsecured creditors in the proceeds generated under the

Plan.

### **RELIEF REQUESTED AND BASIS**

29.    By this Application, Wollmuth respectfully seeks Court approval for (i) an

increase in the Court's initial cap of $250,000.00 in the Formation Order on fees payable by the

estates to professionals representing the Retirees Committee, (ii) allowance of compensation for

professional legal services rendered in the aggregate amount of $175,000.00, and (iii) allowance

of reimbursement for actual and necessary expenses incurred in the aggregate amount of

$2,009.47 as co-counsel for the Retirees Committee during the Case Compensation Period.

30.    Pursuant to the Retention Order, the firm maintained hourly billing records that

(collectively, the "Invoices") that reflect an aggregate amount of $316,310.30 in fees and an

aggregate amount of $2,009.47 in expenses during the Case Compensation Period.  Both

Wollmuth and Mulder Law have agreed that regardless of any cap, fees will be split equally to

compensate for fees incurred, provided the Court authorizes such relief, and that the firms will be

limited to those amounts.  True and correct copies of Invoices are attached as Exhibit "**B**" to this

Fee Application.

31.     As set forth in detain below and as evidenced by the time entries submitted with the Invoices, both firms spent a substantial amount of time addressing not just the legal and factual issues resulting from the Debtors termination of benefits, but also addressing thousands of Retirees' requests for information and assistance.  The amount of time, even at discounted rates, is well in excess of the cap, either current or proposed.  The work, however, was not duplicative of the work of other estate professionals, but rather has enhanced it.

32.     In accordance with the Court's Interim Compensation Order and the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York, dated November 25, 2009, and the United States Trustee Fee Guidelines, attached as Exhibit A to the Invoices are detailed time records of Wollmuth's services rendered during the Case Compensation Period, describing the nature of the services rendered to the Retirees Committee each day, the time devoted to such services in increments of one-tenth of an hour, and the identity of all professionals and paraprofessionals performing the services.  Also, attached as part of Exhibit B are detailed descriptions of the Firm's actual expenses incurred during the Case Compensation Period.

33.     All of the fees and expenses reflected in the Invoices, which were incurred by the Firm as co-counsel to the Retirees Committee during the Case Compensation Period, are summarized by category in the accompanying Summary Statement Cover Sheet for this Application.

34.     Wollmuth has expended a total of 1,015 hours rendering services as co-counsel during the Case Compensation Period, having a value of $316,310.30.  The rates, including any rate increase, charged by Wollmuth are reasonable and reflect the firm's conscientious efforts to

have personnel with appropriate experience, and where possible with lower hourly rates, perform services whenever the complexities and exigencies of the matter permitted.

35.     Given the nature and value of the services as described herein that Wollmuth provided to the Retirees Committee, the amounts sought for approval under this Application are fair and reasonable under section 330 of the Bankruptcy Code given the complexity of these Cases; the time expended by attorneys and professionals; the nature and extent of the services rendered; the value of such services; and the costs of comparable services other than in a case under the Bankruptcy Code.

36.     Wollmuth has received no payment and no promises for payment from any source for services rendered in connection with these Cases other than those in accordance with the Bankruptcy Rules.  There is no agreement or understanding between Wollmuth and any other person (other than members of Wollmuth) for the sharing of compensation to be received for the services rendered in these Cases with the sole exception of addressing the Court-ordered cap on compensation.  In fact, Wollmuth anticipates that regardless of the cap amount, it will not be paid in full for its services or for accrued fees in the successful pursuit of the formation of the Retirees Committee, for which it does not seek, and will receive, any compensation.

37.     During the Case Compensation Period, Wollmuth was required to furnish substantial services to the Retirees Committee, which occupied various professionals within the firm.  To assist the Court in evaluating the nature, extent and reasonableness of the compensation requested, the following is a narrative summary of some of the more significant services rendered.

## SUMMARY OF SERVICES RENDERED DURING THE COMPENSATION PERIOD

38.     In rendering services during these Cases, Wollmuth's legal team has been composed primarily of professionals with extensive experience in bankruptcy and in the applicable legal practice areas for the matters for which the firm was retained.  These professionals have coordinated assignments, both internally and with the co-counsel to maximize efficiency and avoid any duplication of effort.

39.     All services were rendered by Wollmuth at the request of the Retirees Committee and were necessary, reasonable and appropriate under the circumstances and beneficial to the estates at the time the services were rendered.  The compensation sought by Wollmuth in this Application is comparable to or less than customary compensation sought by comparably skilled professionals in cases under the Bankruptcy Code.  In addition, the compensation sought is based on Wollmuth's standard and usual rates for similar services in representations other than under the Bankruptcy Code.

40.     The services provided by Wollmuth during the Case Compensation Period were rendered to ensure no unnecessary duplication and are grouped into the billing categories set forth in the Firm's Invoices.  The attorneys and professionals who rendered services relating to each category are identified in the foregoing attachments and summaries of the hours and fees of each for the Case Compensation Period and the total compensation by billing category are included in the Firm's Invoice.  Because detailed descriptions of the services rendered and expenses incurred by Wollmuth are included in the Invoices, the following descriptions will describe only in summary form the services performed by Wollmuth during the Case Compensation Period.

41.     The initial portion of the firm's services during the Case Compensation Period were in connection with assisting and advising the Retirees Committee in its consultations and negotiations with the Debtors and other parties in interest with respect to the disputed retiree life insurance benefits.  To that end, Wollmuth examined the original case file from Sears Life Insurance Litigation and when such files were not available, sought to obtain copies of the case file from the Illinois federal district court in order to establish the Retirees entitlement to relief under Section 1114 of the Bankruptcy Code, as well as to establish a method to provide Retirees with notice of potential claims.

42.     The firm also assisted with the review and preparation of opposition to the 1114 Motion, as well as the Retiree Plan Objection that set for the Retirees Committee's demand that the Debtors properly provide for the rights of the Retirees under Section 1114 of the Bankruptcy Code.

43.     Wollmuth also reviewed information provided by the third-party life insurance provider, Securian, with which the Debtors had previously been under contract, to identify the remaining Retirees or their beneficiaries that might be entitled to administrative expense treatment for their claims.

44.     The Firm also participated in investigation and negotiation over the amount and types of claims Retirees would receive, the potential source of funds used to satisfy those claims and, if necessary, the formal litigation against the Debtors and their estates had the negotiations proven to be unsuccessful.

45.     Wollmuth also assisted the Retirees Committee in its investigation of the conduct and knowledge of the Debtors, their insiders and the Debtors' management team with respect to

14

the retiree benefits in light of existence of the Stipulation of Settlement executed in the Sears

Life Insurance Litigation.

46.     Wollmuth was and remains in continuous contact with the members of the

Retirees Committee, assisted and advised the Retirees Committee as to its communications with

Retirees regarding significant matters in the Cases and addressed Retirees either directly or

through a retiree organization.  Indeed, Wollmuth provided for a unique telephone number to be

included with the notice sent to Retirees in order to provide a point of contact for inquiries from

Retirees for information or assistance in addressing their claims or the status of the Chapter 11

Cases.

47.     The Firm also undertook the task of reviewing claims in order to establish the

correct Gap Claimants entitled the proceeds of the Retiree Plan Settlement.  That labor-intensive

process was necessary so that the funds could be distributed to those rightfully entitled to them

and the balance released to the Plan Administrator.  Upon information and belief, the Plan

Administrator has relied on that information and will be preparing an application to establish the

appropriate Gap Claimants and their treatment.

48.     Additionally, the Firm continued to monitor important developments in the Cases

that had implications for Retirees, including the Debtors' Plan.

**ACTUAL AND NECESSARY EXPENSES INCURRED
DURING THE CASE COMPENSATION PERIOD**

49.     As set forth above and as described more fully in each of the Invoices by this

Application, Wollmuth also respectfully seeks Court approval and allowance for reimbursement

for actual and necessary expenses incurred in connection with the rendition of services as co-

counsel to the Retirees Committee during the Case Compensation Period in the aggregate

amount of $175,000.00.

15

50.     It is Wollmuth's policy to charge its clients the amounts incurred by Wollmuth for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client.  Examples of such expenses are postage, overnight mail, courier delivery, computer assisted legal research, photocopying, outgoing facsimile transmissions, transportation and long-distance telephone.

51.     Wollmuth represents as follows with regard to its charges for actual and necessary costs and expenses during the Case Compensation Period:

a.     Long-distance telephone charges are billed at actual costs;

b.     Photocopy charges are $.10 per page;

c.     Incoming facsimiles are not billed. Outgoing facsimiles are billed at the rate of $1.00 per page;

d.     Outside information services, including computer assisted legal research and PACER, are billed at actual costs;

e.     Car services are capped at $100.00 per hour and only permitted for travel after 8:00 p.m. or on weekends; and

f.     Working meal charges are billed at actual cost but are capped at $20 per person and are only charged for meals after 8:00 p.m. or on weekends.

52.     Moreover, Wollmuth submits that all expenses for the Case Compensation Period are sufficiently detailed in the Invoices.

53.     In accordance with the factors enumerated in section 330 of the Bankruptcy Code, the amounts requested for approval herein for compensation and expense reimbursement are fair and reasonable given: (a) the complexity of these Cases; (b) the time expended; (c) the nature and extent of the services rendered; (d) the value of such services; and (e) the cost of comparable services other than in a case under the Bankruptcy Code.

54.     Section 330 provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services

16

rendered . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330 sets forth the criteria for the award of compensation and reimbursement: In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including – (a) the time spent on such services; (b) the rates charged for such services; (c) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (d) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (e) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy or appropriate field of law; and (f) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title. *See* 11 U.S.C. § 330(a)(3). In these Cases, Wollmuth respectfully submits that the services for which it seeks compensation in the Case Compensation Period were necessary for and beneficial to the Retirees Committee and were performed economically, effectively, and efficiently. Wollmuth further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Retirees Committee. Further, in accordance with the factors enumerated in section 330 of the Bankruptcy Code, the amount of fees requested is fair and reasonable given: (i) the complexity of these Cases; (ii) the time expended; (iii) the nature and extent of the services rendered; (iv) the value of such services; and (v) the costs of comparable services other than in a case under the Bankruptcy Code. Accordingly, the approval of the compensation and expense reimbursement sought herein is warranted.

55.     Pursuant to the Certification of James N. Lawlor attached hereto as Exhibit "**C**",

the undersigned has reviewed the requirements of the Local Rules, and certifies that this

Application and the Exhibits attached hereto comply therewith.

## **CONCLUSION**

WHEREFORE, Wollmuth respectfully requests that the Court enter an order (i)

authorizing an increase in the cap established in the Formation Order, (ii) for allowance of

compensation to the Firm for professional legal services rendered as co-counsel for Retirees

Committee during the Case Compensation Period in the aggregate amount of $175,000, and (iii)

for allowance of reimbursement to the Firm for actual and necessary expenses incurred during the

Case Compensation Period in the aggregate amount of $2,009.47.


New York, New York
May 26, 2022

Respectfully submitted,

By: */s/ James N. Lawlor*
                James N. Lawlor

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York  10110
Telephone:  212-382-3300

*Co-Counsel to the Official Committee of*
*Retirees with Life Insurance Benefits of the*
*Sears Holdings Corporation, et al.*

**INDEX OF EXHIBITS TO THE FOURTH INTERIM FEE
APPLICATION OF WOLLMUTH MAHER & DEUTSCH LLP
FOR THE PERIOD JULY 9, 2019 THROUGH MAY 13, 2022**

**Exhibit A** - Retention Order

**Exhibit B** - Invoice for July 9, 2019 through May 13, 2022

**Exhibit C** - Certification of James N. Lawlor