**Hearing Date: To Be Determined**
**Objection Date: To Be Determined**

THE LAW OFFICES OF MICHAEL M. MULDER
1603 Orrington Avenue, Suite 600
Evanston, Illinois 60201
Telephone: 312-263-0272
*Co-Counsel for the Official Committee of Retirees*
*With Life Insurance Benefits*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SEARS HOLDINGS CORPORATION, *et al*,<br><br>Debtors. | Case No: 18-23538 (RDD)<br><br>Chapter 11<br><br>(Jointly Administered) |

**SUMMARY STATEMENT FOR FINAL FEE APPLICATION OF LAW
OFFICES OF MICHAEL M. MULDER AS CO-COUNSEL TO OFFICIAL
RETIREES COMMITTEE FOR ALLOWANCE OF COMPENSATION FOR
PROFESSIONAL SERVICES RENDERED FOR THE PERIOD JULY 9, 2019
THROUGH MAY 13, 2022**

**SUMMARY OF FEE APPLICATION**

| | |
|---|---|
| Name of Applicant: | Law Offices of Michael M. Mulder |
| Authorized to Provide Professional Services to: | Official Committee of Retirees With Life Insurance Benefits |
| Role in the Case: | Co-Counsel |
| Date of Retention: | Order Entered September 23, 2019 (ECF 5222)<br>*Nunc Pro Tunc* to July 9, 2019 |
| Case Compensation Period: | July 9, 2019 through May 13, 2022 |
| Total Compensation Sought: | $175,000.00[1] |
| This is a: | __ Monthly ___ Interim __X_ Final Application |

---

[1] The Order establishing the committee for retirees provided that there would be a cap on fees of $250,000, subject to a request to increase that amount. Given the increased volume of services provided, as described in the application, the Official Committee of Retirees has filed a request for an increase in that cap to $350,000, inclusive of the fees of both counsel. That application will be filed simultaneously with this Final Fee Application. To the extent that the Court raises the cap or denies the motion, the applicant will seek half of the cap amount that applies.

This is the Law Offices of Michael M. Mulder's <u>final</u> fee application in this case.

**SUMMARY OF ALL FEES REQUESTED, APPROVED AND RECEIVED TO DATE**

| Interim Fee Application/Period Covered | Fees Requested | Fees Received Pursuant to Monthly Invoices and/or Court Order | Fees Approved by Court Order | Expenses Requested | Expenses Received Pursuant to Monthly Invoices and/or Court Order | Expenses Approved by Court Order |
|---|---|---|---|---|---|---|
| N/A | | | | | | |
| Total Expenses Received to Date | | | | | | |

| | |
|---|---|
| **TOTAL FEES HELD BACK TO DATE** | **N/A** |
| **TOTAL EXPENSES HELD BACK TO DATE** | **N/A** |
| **TOTAL HOLDBACK** | **N/A** |

## TIMEKEEPER SUMMARY

| Time-keeper | Position | Yr. of Admission | Rate | Hrs. | Total 07/09/2019 – 04/22/2022 |
|---|---|---|---|---|---|
| Michael M. Mulder | Principal | Area of Expertise: Litigation, Class Action. Member of Illinois Bar (1975) Joined the firm in 1982. | $900 | 121.5 | $109,350.00 |
| Elena N. Liveris | Associate | Area of Expertise: Litigation, Class Action. Member of the Illinois Bar (2008). Joined the firm in 2013. | $690 | 70.1 | $48,369.00 |
| Alex Donnelly | Paralegal | | $240 | 395.2 | $94,848.00 |
| Sarah Pitre | Paralegal | | $240 | 51.7 | $12,408.00 |
| **TOTAL** | | | | **638.5** | **$264,975.00** |
| **Total Compensation Sought:** | | | | | **$175,000.00** |

**SUMMARY OF SERVICES**

| SERVICE | HOURS | VALUE |
|---|---|---|
| Employee Benefits/Pensions | 638.5 | $264,975.00 |
| Travel | (0.0) | ($0.00) |
| Less ½ Travel Time | (0.0) | ($0.00) |
| **TOTAL SERVICES:** | 638.5 | $264,975.00 |
| **Total Compensation Sought:** | | **$175,000.00** |

**Hearing Date: To Be Determined**
**Objection Date: To Be Determined**

THE LAW OFFICES OF MICHAEL M. MULDER
1603 Orrington Avenue, Suite 600
Evanston, Illinois 60201
Telephone:  312-263-0272
*Co-Counsel for the Official Committee of Retirees*
*With Life Insurance Benefits*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>SEARS HOLDINGS CORPORATION, *et al*,<br><br>Debtors. | Case No: 18-23538 (RDD)<br><br>Chapter 11<br><br>(Jointly Administered) |

**FINAL FEE APPLICATION OF LAW OFFICES OF MICHAEL M. MULDER
AS CO-COUNSEL TO OFFICIAL RETIREES COMMITTEE FOR
ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES
RENDERED FOR THE PERIOD JULY 9, 2019 THROUGH MAY 13, 2022**

TO:    **THE HONORABLE ROBERT D. DRAIN**
       **UNITED STATES BANKRUPTCY JUDGE**:

The Law Offices of Michael M. Mulder ("Mulder Law" or the "Firm"), co-counsel to the

Official Committee of Retirees With Life Insurance Benefits ("Retirees Committee") for Sears

Holdings Corp. ("Sears") and its affiliated debtors (each a "Debtor" and collectively, the

"Debtors") in the above-captioned chapter 11 cases ("Cases"), files its Final Fee Application

(this "Application") seeking (i) an increase in the cap on fees for services rendered to the

Retirees Committee, and (ii) allowance of compensation for professional legal services rendered

in the aggregate amount of $175,000.00[2] for the case compensation period commencing from the

---

[2] The Formation Order (as defined below) provided that there would be a cap on fees of $250,000, subject to a request to increase that amount.  Given the increased volume of services provided, as described below, the Retirees Committee has filed a request for an increase in that cap to $350,000, inclusive of the fees of both counsel.  That

time of the Firm's retention *nunc pro tunc* to July 9, 2019 through and including May 13, 2022

("Case Compensation Period"), pursuant to sections 330 and 331 of title 11 of the United States

Code ("Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure

("Bankruptcy Rules"), Rule 2016-1 of the Local Rules for the United States Bankruptcy Court

for the Southern District of New York ("Local Rules") and the Order Authorizing Procedures for

Interim Compensation and Reimbursement of Expenses of Professionals ("Interim

Compensation Order") (ECF 796).  Mulder Law does not seek reimbursement for actual and

necessary expenses.  In support of this Application, Mulder Law represents as follows:

## JURISDICTION

1.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief requested herein are

sections 330 and 331 of the Bankruptcy Code.

## GENERAL BACKGROUND

2.       Commencing on October 15, 2018, and periodically thereafter (as applicable, the

"Commencement Date"), Sears and certain of its subsidiaries commenced with this Court

voluntary Cases under Chapter 11 of the Bankruptcy Code.  The Debtors' Cases have been

consolidated for procedural purposes only and are being jointly administered pursuant to Rule

1015(b) of the Bankruptcy Rules.  Accordingly, the Debtors were authorized to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

---

application will be filed simultaneously with this Final Fee Application.  To the extent that the Court raises the cap
or denies the motion, the applicant will seek half of the cap amount that applies.

3.      On May 28, 2019, certain retirees of Sears that held vested life insurance benefits ("Retirees"), with the assistance of Mulder Law and Wollmuth Maher & Deutsch LLP ("WMD"), moved for appointment of an official committee of retirees with life insurance benefits pursuant to 11 U.S.C. § 1114(d) of the Bankruptcy Code (ECF 4054).  As disclosed in the motion, Mulder Law's predecessor firm previously served as lead-Class Counsel for plaintiffs and the class in *In re: Sears Retiree Group Life Insurance Litigation*, Civil Action No. 97 C 7453 (D. Ill.) ("Sears Life Insurance Litigation"), which resulted in a Stipulation of Settlement with vested retiree life insurance benefits for the class.  Nonetheless, Sears purportedly terminated the vested life insurance benefit earned by Retirees without notice.

4.      Over the objection of the Debtors, the Court granted the motion by Order dated June 25, 2019 ("Formation Order") (ECF 4357).

5.      In addition to the authorization for formation of a committee, the Formation Order stated that "[t]he committee to be appointed pursuant to this Order shall have a budget not to exceed $250,000; provided, however, the committee may seek reasonable increases for cause upon application to the Court."

6.      The United States Trustee formally appointed the Retirees Committee on July 9, 2019 (ECF 4470).[3]

7.      The Retirees Committee selected Mulder Law and WMD to represent it in matters relating to the disputed retiree benefits.  On September 23, 2019, this Court entered an Order that approved Mulder Law's retention as co-counsel to the Retirees Committee (ECF 5222)

---

[3] The Retirees Committee currently comprises: (i) Ronald Olbrysh, (ii) Mary Rose Steininger, (iii) James T. Nally, and (iv) Joseph E. Hartzell.  Richard Bruce was a member of the Retirees Committee until his death on August 1, 2021.

("Retention Order") *nunc pro tunc* to July 9, 2019.  A true and correct copy of the Retention

Order is attached hereto as Exhibit "**A**".

8.      On October 15, 2019, the Court entered an order ("Confirmation Order") (ECF

5370) confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holding

Corporation and Its Affiliated Debtors ("Plan") (ECF 4476), which Confirmation Order attached

a copy of the confirmed Plan as Exhibit A thereto.

9.      Pursuant to the Plan and the Confirmation Order, final fee applications are due

shortly after the occurrence of the "Effective Date" as defined in the Plan.  However, as Mulder

Law does not anticipate having to provide continued substantial services and will remain capped

for any future services it may provide to the Committee, regardless of whether the Court permits

an increase in that cap, the firm now files its final fee application with summaries and schedules

set forth in the accompanying summary sheet reflecting all fees and expenses sought for the Case

Compensation Period, as well as summaries and schedules of all hours billed and categories of

services and disbursements throughout the Case Compensation Period.

### The Debtors' 1114 Motion and Retirees Committee's Opposition

10.      On July 29, 2019, the Debtors filed a motion for modification of retiree benefits

("1114 Motion") (ECF 4635), whereby it sought what was essentially *nunc pro tunc* approval of

the earlier termination of the life insurance benefit of the Retirees.  The termination was made

without formal notice to the Retirees.  The Official Committee of Unsecured Creditors joined

with the Debtors in the 1114 Motion (ECF 4887).

11.      On August 6, 2019, the Retirees Committee filed an objection to the 1114 Motion

(ECF 4768), asserting, inter alia, that the life insurance benefit may only be modified or

terminated after notice and a hearing following good faith negotiations between the Debtors and

an authorized representative in accordance with the requirements set forth in Section 1114 of the

Bankruptcy Code.

12.     The Retiree Committee also filed an Objection to confirmation of the Debtors'

Plan based on the Plan's failure to notice and address the Retirees' potential claims under

Section 1114 (ECF 4702) ("Retiree Plan Objection").

## Negotiations With and Discovery From Debtors

13.     Beginning on July 22, 2019, the Retirees Committee, through counsel, engaged in

negotiations with Debtors regarding the estates' efforts to modify the benefits of the Retirees.

*See generally* ECF 4635 and 4768.

14.     On July 29, 2019, the Retirees Committee sent the Debtors an informal request

seeking information about, among other things, potential retirees subject to the 1114 Motion, the

Debtors' decision to terminate the benefit and their knowledge of the Stipulation of Settlement.

While the Debtors provided certain information shortly after receipt of such request, Debtors'

initial refusal to provide other information resulted in separate negotiations between the parties

to narrow the dispute until the parties agreed to what Debtors would provide to the Retirees

Committee.

## Negotiations With and Discovery from Securian

15.     On September 10, 2019, the Debtors and the Retirees Committee requested an

adjournment for additional time for discovery and analysis after determining that Debtors'

productions contained insufficient information in order to determine (i) the identification of the

retirees who were policyholders of the Securian Policy as well as the retirees' beneficiaries; (ii)

the identity of retirees that may be policyholders that may not hold vested benefits as a result of

either being the beneficiary of a policy that was less than $5,000 on the petition date or holding

supplemental policies that also may not constitute vested benefits; (iii) which of the retirees'

claims were paid by Securian between January 1, 2019 and April 15, 2019 ("Breach Period");

and (iv) the mortality rate of retirees who passed away during the Breach Period.[4]  (ECF 5115).

16.     On August 22, 2019, the Court granted the Debtors' and the Retirees Committee's

request for an adjournment of the hearing on Debtors' motion for modification of retiree benefits

in order to allow additional time for discovery and analysis, including to serve a subpoena upon

Securian Financial Group, Inc. ("Securian"), the parent company of Securian Life Insurance

Company, which held the Group Term Life Insurance Policy of Debtors' retirees that was

unilaterally terminated on March 15, 2019.

17.     On August 27, 2019, the Retirees Committee submitted an Application requesting

entry of an order pursuant to Bankruptcy Rule 2004 authorizing the Retirees Committee to serve

document requests through a subpoena on Securian Financial Group, Inc. (ECF 5001). The

Application was granted on August 28, 2019. (ECF 5015).

18.     After formal service of the subpoena to Securian, the Retirees Committee

subsequently entered into negotiations with Securian spanning several weeks for the production

of information that, among other things, could be utilized to calculate a reasonable estimate of

retirees that have passed away between April 15, 2019 and the date of formal termination of the

benefit, and the total number of living retirees as of present day.

---

[4] At approximately this time, Debtors also informed the Retirees Committee that Securian would
not produce the necessary information unless it was in receipt of a subpoena requesting such
information.

**Resolution of the 1114 Motion**

19.     The Retiree Committee and the Debtors were able to resolve the 1114 Motion

pursuant to a negotiated settlement that was incorporated into an Order of the Court dated

October 9, 2019 (ECF 5342) ("Retiree Plan Settlement").

20.     The Retiree Settlement provided, inter alia, that a $3 million administrative claim

reserve would be established to be used exclusively to pay allowed administrative claims to

beneficiaries of Retirees that died during a specific time period, the remaining retirees were

permitted to file proofs of claim in order to receive compensation as general unsecured creditors

and the Retiree Plan Objection was withdrawn.

**Assistance to Retirees in Filing and Review of Claims**

21.     The Retirees Committee expressed a concern that the claims process would be

difficult for many of the Retirees to navigate.  Indeed, the average age of Retirees is between 80

and 90 of age, with some well over 100.  Moreover, claimants entitled to seek treatment as

administrative creditors under the Retiree Plan Settlement (the "Gap Claimants") are themselves

older and there was no way to determine if they would have the needed documentation.

22.     Wollmuth and Mulder Law were and remain in continuous contact with the

remaining active members of the Retirees Committee, assisted and advised the Retirees

Committee as to its communications with Retirees regarding significant matters in the Cases and

addressed Retirees either directly or through a retiree organization.  Retirees or their survivors

had often reached out before the settlement was reached, and once the settlement was disclosed,

claimants began seeking assistance or explanation as to the claim process and their entitlement to

a claim.

23.    Wollmuth provided a unique telephone number to be included with the notice sent to Retirees in order to provide a point of contact for inquiries from Retirees for information or assistance in addressing their claims or the status of the Chapter 11 Cases.  The Firm has received over 3,300 voices mails, which were returned over the course of many months by paraprofessionals at the Firm.  Attorneys and paralegals at Wollmuth similarly fielded hundreds more direct inquiries from Retirees or their survivors.  Mulder Law also received hundreds of direct inquiries.

24.    As claims began to be filed, it quickly became apparent based on even a small sample that there were numerous deficiencies that made distribution of the Retiree Settlement funds problematic.  Claims themselves often contained one or more errors or omitted key information, for example:

- Claims stated an incorrect or entirely omitted the Retiree's Sears Life Insurance benefit amount;

- Claims did not identify the Retiree entitled to the benefit;

- Claims failed to include any information as to whether a Retiree was alive or deceased;

- Claims that did indicate a Retiree was deceased did not include a date of death; and

- Claims that indicated a date of death omitted evidence, such as a death certificate.

25.    With the help of Wollmuth and Mulder Law, the Retirees Committee has examined approximately 7,000 filed proofs of claim, roughly 5,400 of which were claims filed by Retirees or survivors (the "**Claims**"), all documentation provided with respect to each such Claim, the Stipulation, Securian Policy records, publicly available documents and published records of death.  The review was labor intensive and necessitated because of the deficiencies, but it resulted in some 350 Claims that might qualify for administrative treatment or that had to

8

be further examined in order to eliminate them from participating.  After the culling, Wollmuth

and Mulder Law re-examined the smaller pool of Claims with errors, reached out to claimants

via phone and email and provided assistance so that the appropriate claimants could receive their

benefits.  Moreover, the delay in the Plan's Effective Date and in distributions resulted in many

of those Retirees repeatedly inquiring on the status of their potential distributions.

26.    Given the age of the policies and the Retirees' ages, it is no surprise that many

Retirees, beneficiaries and survivors did not have complete or the most up-to-date information

included.  In order to make sure that the Debtors pay the correct Retiree, beneficiary or survivor,

however, as well as the correct amount on account of Claims in accordance with the Retiree

Benefits Order, Wollmuth, in conjunction with Mulder Law, were required to contact retirees,

search the Securian records, search public records, send emails and make multiple phone calls to

determine whether the Claims were entitled to treatment as Gap Claims or were even proper

claims at all.

27.    Upon information and belief, the work of Wollmuth and Mulder Law was not

duplicative of each other and the work of the Plan Administrator and other estate professionals as

Wollmuth coordinated with the estate professionals and its summary work product was turned

over and formed the basis of the recent objections to claims filed in the case.  As a result of the

Firms' services, approximately 270 Claims will be receiving the full amount available under the

Retiree Settlement, and an additional $1 million will be freed up for other creditors.  Moreover,

survivors of Retirees that passed away before termination of the life insurance benefit were

provided information that allowed them to make claims directly for benefits to Securian.  Finally,

the remaining 5,000 Claims have been identified as proper and valid Claims held by Retirees

that, hopefully, will share as general unsecured creditors in the proceeds generated under the Plan.

## **RELIEF REQUESTED AND BASIS**

28.     By this Application, Mulder Law respectfully seeks Court approval for (i) an increase in the Court's initial cap of $250,000 in the Formation Order on fees payable by the estates to professionals representing the Retirees Committee, and (ii) allowance of compensation for professional legal services rendered in the aggregate amount of $175,000.00 as co-counsel for the Retirees Committee during the Case Compensation Period.

29.     Pursuant to the Retention Order, the firm maintained hourly billing records (collectively, the "Invoices") that reflect an aggregate amount of $264,975.00 in fees during the Case Compensation Period.  Both Mulder Law and WMD are subject to a combined cap of $250,000 on fees, provided, however, the Court permitted requests to increase that capped amount for cause.  Counsel have agreed that any cap on fees will be split equally to compensate for fees incurred, provided the Court authorizes such relief.   True and correct copies of Invoices are attached as Exhibit "**B**" to this Fee Application.

30.     Mulder Law in this Fee Application and WMD in its application are both requesting that the cap be increased by a total $100,000 (i.e., a cap of $350,000).  As set forth in detain below and as evidenced by the time entries submitted with the Invoices, both firms spent a substantial amount of time addressing not just the legal and factual issues resulting from the Debtors termination of benefits, but also addressing thousands of Retirees' requests for information and assistance.  The amount of time, even at discounted rates, is well in excess of the cap, either current or proposed.  The work, however, was not duplicative of the work of other

10

estate professionals, but rather has enhanced it. The Retirees Committee have indicated that they support an increase in the cap.

31.    In accordance with the Court's Interim Compensation Order and the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York, dated November 25, 2009, and the United States Trustee Fee Guidelines, attached as Exhibit A to the Invoices are detailed time records of Mulder Law's services rendered during the Case Compensation Period, describing the nature of the services rendered to the Retirees Committee each day, the time devoted to such services in increments of one-tenth of an hour, and the identity of all professionals and paraprofessionals performing the services.

32.    All of the fees reflected in the Invoices, which were incurred by the Firm as co-counsel to the Retirees Committee during the Case Compensation Period, are summarized by category in the accompanying Summary Statement Cover Sheet for this Application.

33.    Mulder Law has expended a total of 638.5 hours rendering services as co-counsel during the Case Compensation Period, having a value of $264,975.00. The rates, including any rate increase, charged by Mulder Law are reasonable and reflect the firm's conscientious efforts to have personnel with appropriate experience, and where possible with lower hourly rates, perform services whenever the complexities and exigencies of the matter permitted.

34.    Given the nature and value of the services as described herein that Mulder Law provided to the Retirees Committee, the amounts sought for approval under this Application are fair and reasonable under section 330 of the Bankruptcy Code given the complexity of these Cases; the time expended by attorneys and professionals; the nature and extent of the services rendered; the value of such services; and the costs of comparable services other than in a case under the Bankruptcy Code.

35.     Mulder Law has received no payment and no promises for payment from any

source for services rendered in connection with these Cases other than those in accordance with

the Bankruptcy Rules.  There is no agreement or understanding between Mulder Law and any

other person (other than members of Mulder Law) for the sharing of compensation to be received

for the services rendered in these Cases with the sole exception of addressing the Court-ordered

cap on compensation.  In fact, Mulder Law anticipates that regardless of the cap amount, it will

not be paid in full for its services or for the more than $264,975.00 in accrued fees, including

almost $60,000 in fees accrued prior to the Case Compensation Period, in the successful pursuit

of the formation of the Retirees Committee, for which it does not seek and will not receive any

compensation.

36.     During the Case Compensation Period, Mulder Law was required to furnish

substantial services to the Retirees Committee, which occupied various professionals within the

firm.  To assist the Court in evaluating the nature, extent and reasonableness of the compensation

requested, the following is a narrative summary of some of the more significant services

rendered.

### SUMMARY OF SERVICES RENDERED DURING THE COMPENSATION PERIOD

37.     In rendering services during these Cases, Mulder Law's legal team has been

composed primarily of professionals with extensive experience in complex litigation and in the

applicable legal practice areas for the matters for which the firm was retained.  These professionals

have coordinated assignments, both internally and with the co-counsel to maximize efficiency and

avoid any duplication of effort.

38.     All services were rendered by Mulder Law at the request of the Retirees

Committee and were necessary, reasonable and appropriate under the circumstances and

beneficial to the estates at the time the services were rendered.  The compensation sought by

Mulder Law in this Application is comparable to or less than customary compensation sought by

comparably skilled professionals in cases under the Bankruptcy Code.  In addition, the

compensation sought is based on Mulder Law's standard and usual rates for similar services in

representations other than under the Bankruptcy Code.

39.    The services provided by Mulder Law during the Case Compensation Period were

rendered to ensure no unnecessary duplication and are grouped into the billing categories set

forth in the Firm's Invoices.  The attorneys and professionals who rendered services relating to

each category are identified in the foregoing attachments and summaries of the hours and fees of

each for the Case Compensation Period and the total compensation by billing category are

included in the Firm's Invoice.  Because detailed descriptions of the services rendered and

expenses incurred by Mulder Law are included in the Invoices, the following descriptions will

describe only in summary form the services performed by Mulder Law during the Case

Compensation Period.

40.    The initial portion of the firm's services during the Case Compensation Period

were in connection with assisting and advising the Retirees Committee in its consultations and

negotiations with the Debtors and other parties in interest with respect to the disputed retiree life

insurance benefits.  To that end, Mulder Law examined the original case file from Sears Life

Insurance Litigation and when such files were not available, sought to obtain copies of the case

file from the Illinois federal district court in order to establish the Retirees entitlement to relief

under Section 1114 of the Bankruptcy Code, as well as to establish a method to provide Retirees

with notice of potential claims.

41.     The firm also assisted with the review and preparation of opposition to the 1114 Motion, as well as the Retiree Plan Objection that set for the Retirees Committee's demand that the Debtors properly provide for the rights of the Retirees under Section 1114 of the Bankruptcy Code.

42.     Mulder Law also reviewed information provided by the third-party life insurance provider, Securian, with which the Debtors had previously been under contract, to identify the remaining Retirees or their beneficiaries that might be entitled to administrative expense treatment for their claims.

43.     The firm also participated in investigation and negotiation over the amount and types of claims Retirees would receive, the potential source of funds used to satisfy those claims and, if necessary, the formal litigation against the Debtors and their estates had the negotiations proven to be unsuccessful.

44.     Mulder Law also assisted the Retirees Committee in its investigation of the conduct and knowledge of the Debtors, their insiders and the Debtors' management team with respect to the retiree benefits in light of existence of the Stipulation of Settlement executed in the Sears Life Insurance Litigation.

45.     Mulder Law was and remains in continuous contact with the members of the Retirees Committee, assisted and advised the Retirees Committee as to its communications with Retirees regarding significant matters in the Cases and addressed Retirees either directly or through a retiree organization.  Indeed, Mulder Law has received over one hundred inquiries from Retirees for information or assistance in addressing their claims, while the WMD firm has received thousands of inquiries from Retirees for information or assistance in addressing their claims or the status of the Chapter 11 Cases.

14

46.     The Firm also undertook the task of reviewing claims in order to establish the correct Gap Claimants entitled the proceeds of the Retiree Plan Settlement.  That labor intensive process was necessary so that the funds could be distributed to those rightfully entitled to them and the balance released to the Plan Administrator.  Upon information and belief, the Plan Administrator has relied on that information, and will be preparing an application to establish the appropriate Gap Claimants and their treatment.

47.     Additionally, the Firm continued to monitor important developments in the Cases that had implications for Retirees, including the Debtors' Plan.

48.     In accordance with the factors enumerated in section 330 of the Bankruptcy Code, the amounts requested for approval herein for compensation are fair and reasonable given: (a) the complexity of these Cases; (b) the time expended; (c) the nature and extent of the services rendered; (d) the value of such services; and (e) the cost of comparable services other than in a case under the Bankruptcy Code.

49.     Section 330 provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).  Section 330 sets forth the criteria for the award of compensation and reimbursement: In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including – (a) the time spent on such services; (b) the rates charged for such services; (c) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (d) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the

15

problem, issue, or task addressed; (e) with respect to a professional person, whether the person is

board certified or otherwise has demonstrated skill and experience in the bankruptcy or

appropriate field of law; and (f) whether the compensation is reasonable based on the customary

compensation charged by comparably skilled practitioners in cases other than cases under this

title.  *See* 11 U.S.C. § 330(a)(3).  In these Cases, Mulder Law respectfully submits that the

services for which it seeks compensation in the Case Compensation Period were necessary for

and beneficial to the Retirees Committee and were performed economically, effectively, and

efficiently.  Mulder Law further submits that the compensation requested herein is reasonable in

light of the nature, extent, and value of such services to the Retirees Committee.  Further, in

accordance with the factors enumerated in section 330 of the Bankruptcy Code, the amount of

fees requested is fair and reasonable given: (i) the complexity of these Cases; (ii) the time

expended; (iii) the nature and extent of the services rendered; (iv) the value of such services; and

(v) the costs of comparable services other than in a case under the Bankruptcy Code.

Accordingly, the approval of the compensation sought herein is warranted.

    50.    Pursuant to the Certification of Michael M. Mulder attached hereto as Exhibit

"**C**", the undersigned has reviewed the requirements of the Local Rules, and certifies that this

Application and the Exhibits attached hereto comply therewith.

16

## **CONCLUSION**

WHEREFORE, Mulder Law respectfully requests that the Court enter an order (i) authorizing an increase in the cap established in the Formation Order, and (ii) for allowance of compensation to the Firm for professional legal services rendered as co-counsel for Retirees Committee during the Case Compensation Period in the aggregate amount of $175,000.


New York, New York
May 26, 2022

Respectfully submitted,

By: */s/ Michael M. Mulder*
Michael M. Mulder

Michael M. Mulder*
Elena N. Liveris*
THE LAW OFFICES OF MICHAEL M. MULDER
1603 Orrington Avenue, Suite 600
Evanston, Illinois 60201
Telephone:  312-263-0272

*Co-Counsel to the Official Committee of
Retirees with Life Insurance Benefits of the
Sears Holdings Corporation, et al.
*Admitted pro hac vice*

**INDEX OF EXHIBITS TO THE FOURTH INTERIM FEE
APPLICATION OF LAW OFFICES OF MICHAEL M. MULDER
FOR THE PERIOD JULY 9, 2019 THROUGH MAY 13, 2022**

**Exhibit A** - Retention Order

**Exhibit B** - Invoices for July 9, 2019 through May 13, 2022

**Exhibit C** - Certification of Michael M. Mulder