AKERMAN LLP
50 North Laura Street, Suite 3100
Jacksonville, Florida 32202
Telephone: (904) 798-3700
Facsimile: (904) 798-3730
David E. Otero
*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION,** *et.al.,* | **Case No. 18-23538 (RDD)** |
| | **(Jointly Administered)** |
| **Debtors.** | |

**NOTICE OF HEARING ON DEBTORS' (A) OBJECTION TO
CLAIM 26186 OF TEXAS COMPTROLLER OF PUBLIC ACCOUNTS
ON BEHALF OF THE STATE OF TEXAS AND LOCAL SALES TAX
JURISDICTIONS, AND (B) MOTION FOR TURNOVER OF PROPERTY OF
THE ESTATE AND APPLICATION OF FUNDS OWED TO DEBTORS IN
SATISFACTION OF CLAIMS 20615, 26368, 20373, AND 20614, OR, IN THE
ALTERNATIVE, (C) MOTION FOR AN ORDER, PURSUANT TO SECTIONS
105(a) AND 502(c) OF THE BANKRUPTCY CODE, ESTIMATING CLAIMS**

      **PLEASE TAKE NOTICE** that, on May 27, 2022, Sears Holdings Corporation and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") filed the *Debtors' (A) Objection to Claim 26186 of Texas Comptroller of Public Accounts on Behalf of the State of Texas and Local Sales Tax Jurisdictions, and (B) Motion for Turnover of Property of the Estate and Application of Funds Owed to Debtors in Satisfaction of Claims 20615, 26368, 20373, and 20614, or, in the Alternative, (C) Motion for an Order, Pursuant to Sections 105(A) and 502(C) of the Bankruptcy Code, Estimating Claims* (the "**Objection**") with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

      **PLEASE TAKE FURTHER NOTICE** that the Objection requests, among other relief, that the Bankruptcy Court disallow and expunge Claim 26186 of the Texas Comptroller of Public Accounts on Behalf of the State of Texas and Local Sales Tax Jurisdictions (the "**Proof of Claim**") on the ground(s) that the Debtors have no liability under such Proof of Claim because such Proof of Claim: (i) states no basis for the asserted claim, or (ii) Debtors books and records do not support asserted claim.

**ANY CLAIM THAT THE BANKRUPTCY COURT EXPUNGES AND DISALLOWS WILL BE TREATED AS IF IT HAD NOT BEEN FILED AND YOU WILL NOT BE ENTITLED TO ANY DISTRIBUTION ON ACCOUNT THEREOF**.

**PLEASE TAKE FURTHER NOTICE** that the *Court-Ordered Claims Hearing Procedures* (the "**Claims Hearing Procedures**"), annexed hereto as **Exhibit B**, shall apply and govern the Objection to the Claims. The Claims Hearing Procedures provide for certain mandatory actions by claimants (each, a "**Claimant**" and collectively, the "**Claimants**") within certain time periods. Therefore, please review the Claims Hearing Procedures carefully. Failure to comply with the Claims Hearing Procedures may result in the disallowance and expungement of a Proof of Claim without further notice to the respective Claimant(s).

**PLEASE TAKE FURTHER NOTICE** that, if Claimant does NOT oppose the disallowance and expungement of its applicable Claim(s), as listed on **Exhibit A** annexed hereto, then Claimant does NOT need to file a written response (the "**Response**") to the Objection and Claimant does NOT need to appear at the Hearing (as defined herein).

**PLEASE TAKE FURTHER NOTICE** that, if Claimant DOES oppose the disallowance and expungement of its applicable Claim(s), as listed on **Exhibit A** annexed hereto, then Claimant MUST file with the Bankruptcy Court and serve on the parties listed below a Response to the Objection, so as to be filed and received by no later than **June 17, 2022, at 4:00 p.m. (Prevailing Eastern Time)** (the "**Response Deadline**").

**PLEASE TAKE FURTHER NOTICE** that Response(s) to the Objection, if any, must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, and shall be filed with the Bankruptcy Court (i) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (ii) by all other parties-in-interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 (ECF No. 405) (the "**Amended Case Management Order**"), so as to be filed with the Bankruptcy Court and received by the parties listed below by or before the Response Deadline.

**PLEASE TAKE FURTHER NOTICE** that Response(s) to the Objection, if any, must contain, at a minimum, the following: (i) a caption setting forth the name of the Bankruptcy Court, the names of the Debtors, the case number and the title of the Objection to which the Response is directed; (ii) the name of the Claimant and description of the basis for the amount of the Claim; (iii) a concise statement setting forth the reasons why the Claim should not be disallowed and expunged for the reasons set forth in the Objection, including, but not limited to, the specific factual and legal bases upon which Claimant will rely in opposing the Objection; (iv) all documentation or other evidence of the Claim, to the extent not included with the Proof of

2

Claim previously filed with the Bankruptcy Court, upon which Claimant will rely in opposing the Objection; (v) the address(es) to which the Debtors must return any reply to Claimant's Response, if different from that presented in the applicable Proof of Claim; and (vi) the name, address, and telephone number of the person (which may be Claimant or Claimant's designated legal representative) possessing ultimate authority to reconcile, settle, or otherwise resolve the Claim on Claimant's behalf.

## CLAIMANTS SHOULD NOT CONTACT THE CLERK OF THE BANKRUPTCY COURT TO DISCUSS THE MERITS OF THEIR CLAIMS.

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court will consider a Response only if the Response is timely filed, served, and received in accordance with the *Amended Case Management Order* and the procedures set forth herein. A Response will be deemed timely filed, served, and received only if the original Response is actually received on or before the Response Deadline by (i) the chambers of the Honorable Robert D. Drain, United States Bankruptcy Court, 300 Quarropas Street, White Plains, New York 10601; (ii) Weil, Gotshal, & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, Esq., Jacqueline Marcus, Esq., Garrett A. Fail, Esq., and Sunny Singh, Esq.), attorneys for the Debtors; and (iii) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Philip C. Dublin, Esq., Ira Dizengoff, Esq., and Sara Lynne Brauner, Esq.), attorneys for the Official Committee of Unsecured Creditors appointed in these cases.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise permitted under the Claims Hearing Procedures, a hearing to consider the Objection will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601, on **June 29, 2022 at 10 a.m. (Prevailing Eastern Time)** (the "**Hearing**"). If Claimant files a Response to the Objection, Claimant should plan to appear at the Hearing. The Debtors, however, reserve the right to continue the Hearing on the Objection with respect to the Claim(s) that are the subject of such Response. If the Debtors do continue the Hearing with respect to such Claim(s), then the Hearing on the Objection with respect to such Claim(s) will be held at a later date. If the Debtors do not continue the Hearing with respect to such Claim(s), then a Hearing on the Objection will be conducted on the above date.

**PLEASE TAKE FURTHER NOTICE** that if Claimant does not timely file and serve a Response to the Objection, the Debtors may, on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed as **Exhibit A** to the Objection, which order may be entered without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that, if the Bankruptcy Court does NOT disallow and expunge the Proofs of Claim subject to the Objection, the Debtors retain the right to object on other grounds to the Proofs of Claim(s) (or to any other Claim(s) Claimant may have filed) at a later date. Claimant will receive a separate notice of any such objection(s).

63553253;6

**PLEASE TAKE FURTHER NOTICE** that Claimant may participate in the Hearing telephonically, provided Claimant complies with the Bankruptcy Court's instructions (including, without limitation, providing prior written notice to counsel for the Debtors and any statutory committee), which can be found on the Bankruptcy Court's website at www.nysb.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE** that any responding parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

**PLEASE TAKE FURTHER NOTICE** that, if any Claimant wishes to view the complete Objection, such Claimant can do so for free at
https://restructuring.primeclerk.com/sears.

Dated:  May 27, 2022
      Jacksonville, Florida

*/s/ David E. Otero*
David E. Otero
AKERMAN LLP
50 North Laura Street, Suite 3100
Jacksonville, Florida 32202
Telephone:  (904) 798-3700
Facsimile:   (904) 798-3700

*Attorneys for Debtors*
*and Debtors in Possession*

63553253;6

**Exhibit A**

| Name of Claimant | Affected Claim Nos. | Amount to be Expunged | Reason for Disallowance and Expungement |
|---|---|---|---|
| Texas Comptroller of Public Accounts on Behalf of the State of Texas and Local Sales Tax Jurisdictions | 26186 (objection).<br><br>20615, 26368, 20373, and 20614 (satisfied in full). | $34,213,109.46 | No liability for 26186. Erroneous disallowance of Debtors' sales tax credits and refund claims. Debtors are owed a refund, to be set-off against amounts owed to Claimant and thereby satisfying claims 20615, 26368, 20373, and 20614 in full. |

## Exhibit B

## Claims Hearing Procedures

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                   :

**In re**                      :          **Chapter 11**
                   :

**SEARS HOLDINGS CORPORATION**, *et al.*,  :         **Case No. 18-23538 (RDD)**
                   :

            **Debtors.**[1]      :          **(Jointly Administered)**
                   :

------------------------------------------------------------x

## COURT-ORDERED CLAIMS HEARING PROCEDURES

      The claims hearing procedures (the "**Claims Hearing Procedures**") described

herein have been ordered by the United States Bankruptcy Court for the Southern District of New

York (the "**Bankruptcy Court**") to apply to the Chapter 11 cases of the Sears Holdings

Corporation and its affiliated debtors (collectively, the "**Debtors**").

## Claims Hearing Procedures

1.      Pursuant to the *Amended Order Implementing Certain Notice and Case Management
      Procedures*, entered on November 1, 2018 (ECF No. 405) (the "**Amended Case
      Management Order**"), the Bankruptcy Court established periodic omnibus hearings
      (the "**Omnibus Hearings**") in these Chapter 11 cases. The Debtors shall schedule the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation. The location of the Debtors' corporate headquarters is 1700 Broadway, 19th Floor, New York, New York 10019.

return date for claims objections, omnibus or otherwise, for hearing at Omnibus Hearings or other hearings the Debtors may schedule with the Bankruptcy Court.

2.      The Bankruptcy Court may enter an order at the scheduled hearing sustaining an objection to proofs of claim (each, a "**Proof of Claim**") with respect to which no response (a "**Response**")[2] is properly filed and served.

3.      The hearing to consider an objection to Proofs of Claim as to which a Response is properly filed and served (each, a "**Contested Claim**") shall be set for a contested hearing (each, a "**Claims Hearing**") to be scheduled by the Debtors, in their sole discretion, as set forth herein. The Debtors may request that the Bankruptcy Court schedule Claims Hearings on the date and/or time of the Omnibus Hearings or at another date and time.

4.      The Debtors shall schedule a Claims Hearing for a Contested Claim as follows:

        For a non-evidentiary hearing to address whether the Contested Claim has failed to state a claim against the Debtors which can be allowed and should be dismissed pursuant to Bankruptcy Rule 7012 (a "**Sufficiency Hearing**"), unless the Debtors serve the applicable claimant (the "**Claimant**") with a Notice of Merits Hearing (as defined herein), the Sufficiency Hearing shall go forward at the return date set in accordance with paragraph 1 of these Claims Hearing Procedures. The legal standard of review that will be applied by the Bankruptcy Court at a Sufficiency Hearing will be equivalent to the standard applied by the Bankruptcy Court upon a motion to dismiss for failure to state a claim upon which relief can be granted.

        For an evidentiary hearing on the merits of a Contested Claim (a "**Merits Hearing**"), the Debtors may, in their sole discretion, serve upon the relevant Claimant, by email or overnight delivery, with a copy to the Creditors' Committee, and file with the Bankruptcy Court, a notice substantially in the form attached to the *Order Approving (I) Claims Objection Procedures, (II) Claims Settlement Procedures, and (III) Claims Hearing Procedures* (ECF No. 3014) as **Exhibit 2** (a "**Notice of Merits Hearing**") at least thirty (30) calendar days prior to the date of such Merits Hearing.  The rules and procedures applicable to such Merits Hearing will be set forth in any scheduling order issued by the Bankruptcy Court in connection therewith.

5.      Discovery with respect to a Contested Claim will not be permitted until either:  (i) the Bankruptcy Court has held a Sufficiency Hearing and determined that the Contested Claim states a claim that could be allowed and should not be dismissed pursuant to Bankruptcy Rule 7012; or (ii) the Debtors have served on the relevant Claimant a Notice of Merits Hearing with respect to the Contested Claim.

---

[2] Any information submitted in connection with a Proof of Claim shall be part of the record with respect to the relevant Claim, and any such information already submitted need not be resubmitted in connection with the Claims Hearing Procedures.

63553253;6

6.      The Debtors may file and serve a reply (a "**Reply**") to a Response no later than 4:00 p.m. (Prevailing Eastern Time) on the day that is at least two (2) business days prior to the date of the applicable hearing.

7.      The Debtors, in their sole discretion, are authorized to further adjourn a hearing scheduled in accordance herewith at any time by providing notice to the Bankruptcy Court and the Claimant.

8.      **Sanctions**.  The Bankruptcy Court will consider appropriate sanctions, including allowance or disallowance of the Contested Claim, if either party does not follow the Claims Hearing Procedures.

BY ORDER OF THE BANKRUPTCY COURT

AKERMAN LLP
50 North Laura Street, Suite 3100
Jacksonville, Florida 32202
Telephone: (904) 798-3700
Facsimile: (904) 798-3730
David E. Otero
*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION,** *et.al.,* | **Case No. 18-23538 (RDD)** |
| **Debtors.** | **(Jointly Administered)** |

**DEBTORS' (A) OBJECTION TO CLAIM 26186**
**OF TEXAS COMPTROLLER OF PUBLIC ACCOUNTS ON**
**BEHALF OF THE STATE OF TEXAS AND LOCAL SALES TAX**
**JURISDICTIONS, AND (B) MOTION FOR TURNOVER OF PROPERTY OF**
**THE ESTATE AND APPLICATION OF FUNDS OWED TO DEBTORS IN**
**SATISFACTION OF CLAIMS 20615, 26368, 20373, AND 20614, OR, IN THE**
**ALTERNATIVE, (C) MOTION FOR AN ORDER, PURSUANT TO SECTIONS**
**105(a) AND 502(c) OF THE BANKRUPTCY CODE, ESTIMATING CLAIMS**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

      Sears Holdings Corporation and its debtor affiliates[1], as debtors and debtors in possession

in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839);

63553253;6

follows in support of this Debtors' (A) Objection to Claim 26186 of Texas Comptroller of Public

Accounts on Behalf of the State of Texas and Local Sales Tax Jurisdictions, and (B)  Motion for

Turnover of Property of the Estate and Application of Funds Owed to Debtors in Satisfaction of

Claims 20615, 26368, 20373, and 20614, or, in the Alternative, (C) Motion for an Order, Pursuant

to Sections 105(A) and 502(C) of the Bankruptcy Code, Estimating Claims (the "**Objection**"):

### Background

1.    Beginning on October 15, 2018 (the "**Petition Date**") and continuing thereafter,

each of the Debtors commenced with the United States Bankruptcy Court for the Southern District

of New York (the "**Bankruptcy Court**") a voluntary case under chapter 11 of title 11 of the United

States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their

business and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

2.    On October 24, 2018, the United States Trustee for Region 2 appointed an official

committee of unsecured creditors. No trustee or examiner has been appointed in these chapter 11

cases.

3.    The Debtors' chapter 11 cases are being jointly administered for procedural

purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**").

---

Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart
Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business
Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida),
L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc.
(0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying
Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding
Corporation (4816). The location of the Debtors' corporate headquarters is 1700 Broadway, 19th Floor, New York,
New York 10019.

2

63553253;6

4.      On February 8, 2019, the Bankruptcy Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* (ECF No. 2507), pursuant to which the Debtors sold substantially all their assets to Transform Holdco LLC.

5.      On July 9, 2019, the Debtors filed the Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors (as amended, supplemented, or modified in accordance with its terms) (the "**Plan**")[2] (ECF No. 4776).  On October 15, 2019, the Bankruptcy Court confirmed the Plan (ECF No. 5370) (the "**Confirmation Order**"). Pursuant to section 9.2(a)(i) of the Plan, the Debtors' chapter 11 estates are substantively consolidated for distribution purposes.

6.      Additional information regarding the Debtors' business, capital structure, and the Plan is set forth in the Disclosure Statement for Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors (ECF No. 4478).

## Jurisdiction

7.      This Bankruptcy Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

8.      During the course of these cases, the Texas Comptroller of Public Accounts on Behalf of the State of Texas and Local Sales Tax Jurisdictions (the "**Comptroller**") filed various

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Plan.

3

proofs of claim against the Debtors, including proof of claim no. 26186[3] (the "**Proof of Claim**"). In the Proof of Claim, the Comptroller is asserting a claim for taxes and interest totaling $31,984,113.38 as a priority claim under 11 U.S.C. § 507(a)(8) and a claim for penalties totaling $2,228,996.08 as a general unsecured nonpriority claim, for a total claim of $34,213,109.46.

9.      The Debtors file this Objection pursuant to section 502 of the Bankruptcy Code and Bankruptcy Rule 3007, seeking entry of an order (a) disallowing the Proof of Claim in full, and (b) requiring the Comptroller to turnover to Sears, Roebuck and Co. ("**Sears**") not less than $166,637.45[4], or, in the alterative, (c) estimating the maximum allowable amount of the Proof of Claim under 11 U.S.C. § 507(a)(8) as $0.

10.      The Debtors do not owe money to the Comptroller. The vast majority of the amount of the Proof of Claim is based on amounts the Comptroller erroneously disallowed for valid credits taken by Sears on its sales tax returns totaling $25,097,288 over a period of 11 years. But even if the credits were properly disallowed, the Comptroller agreed that the Comptroller would have no claim if the Comptroller completed audits of valid sales tax refund claims filed by Sears covering the same periods. And in fact, it is undisputed that Sears filed such refund claims. In addition, Sears made an overpayment of sales tax of $903,041.82 to the Comptroller.  After netting all claims of Sears against the Comptroller with the valid claims of the Comptroller against the Debtors, Debtors are owed $166,637.45 by the Comptroller.

---

[3] The governmental unit priority claims bar date was September 3, 2019. Claim No. 26186 against Sears Roebuck and Co. (the subject Proof of Claim) expressly amends Claim No. 18462, and Claim 18462 has been withdrawn.

[4] In addition to the Proof of Claim, the Comptroller also filed four other pending proofs of claim under 11 U.S.C. § 507(a)(8) in these bankruptcy cases: Claim 20615 in the amount of $175,908 against Sears Operations LLC; Claim 26368 in the amount of $234,421.81 against Kmart Stores of Texas LLC; Claim 20373 in the amount of $43,362.87 against Kmart Corporation; and Claim 20614 in the amount of $62,514.68 against Innovel Solutions, Inc. Debtors agree that Claims 20615, 20373, and 20614 should be allowed in full and that Claim 26368 should be allowed in the tentatively agreed amount of $176,000 for a total of $457,785.55 (the "**Comptroller's Allowed Claims**"). The Comptroller's Allowed Claims against the other Debtors should be set off against the $624,423 owed to Sears Roebuck and Co. by the Comptroller pursuant to this Objection, making for a net turnover to Debtors of $166,637.45 and thereby satisfying claims 20615, 26368, 20373, and 20614 in full.

11.     A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

### Factual Background

12.     At all times relevant to this Objection, Sears was registered with the Comptroller to report and remit sales and use tax on retail sales in the state of Texas.  Sears operated numerous retail locations in Texas that sold items that were subject to Texas sales tax, and other retail locations that delivered to Texas residents that also were subject to Texas sales tax.  As required by Texas law, Sears reported and remitted the full amount of sales tax owed on the customers' purchases at the time of the purchase on an accrual basis, even though often times the customers financed the purchase and the sales tax had not yet been collected from the customers.  Sears filed monthly sales and use tax returns in Texas until the time the Debtors sold substantially all their assets to Transform Holdco LLC in February, 2019.

13.     Citibank, N.A. ("**Citi**") and Sears entered into a private label credit card agreement entitled Amended and Restated Program Agreement dated as of November 3, 2003 (as amended or restated, the "**Agreement**") whereby Citi and Sears worked together to provide financing to Sears' customers to make purchases at Sears.  Pursuant to the Agreement, credit cards that bore the name of Sears were issued to Sears's customers (the "**Credit Cards**").  Sears's customers used their Credit Cards to purchase items from Sears, thereby financing their purchases, including the sales tax due and owing on the purchases. Sears also accepted checks as payment on certain purchases from their customers.

14.     After Sears reported and paid the sales tax, certain customers defaulted in repaying the financed amounts due (including the financed sales tax) for their purchases made with their Credit Cards.  Also, other customers used the Credit Cards fraudulently, resulting in charge-backs

63553253;6

of the financed amounts by Citi to Sears. Finally, some of the checks were rejected by the issuing banks because the customers had insufficient funds in their accounts, and those amounts were charged back to Sears as well. All of the foregoing account balances, which included the sales tax attributable to the purchases, after collection efforts over a period of time, were determined to be worthless and uncollectible for accounting and tax purposes, and the unpaid balances were charged-off and deducted for income tax purposes (collectively, the "**Bad Debts**").

15.     Texas law provides that a retailer and an assignee of a lender are entitled to a credit or refund for sales taxes paid to the Comptroller on the portion of a credit card account that is not paid by the customers and subsequently is determined to be worthless and uncollectible and actually charged off for income tax purposes.

16.     Citi assigned to Sears all of its rights to take credits or file refunds with the Comptroller to make claims for return of sales tax based on the Bad Debts related to the Credit Cards. Sears provided assignment forms from Citi to the Comptroller that cover the Audit Periods.

17.     For the period between November 2007 through October 2018, Sears collected and remitted a massive $914,739,601 in Texas sales and use tax to the Comptroller. On its Texas sales tax returns for the same periods, Sears (as retailer) claimed bad debt credits for sales tax remitted by Sears to the Comptroller based on the Bad Debts during those time periods totaling $25,097,288 (the "**Credits**"): only approximately 2.5% of the sales and use tax remitted.

18.     The Comptroller subsequently conducted three separate audits of Sears' sales and use tax returns for three separate periods of time spanning from November 2007 through October 2018 (the "**Audits**"): November, 2007 through September, 2011 (the "First Audit Period") which audit was commenced in October 2011; October, 2011 through June, 2016 (the "Second Audit Period") which audit was commenced in November 2015; and July, 2016 through October, 2018

6

(the "Third Audit Period", and together with the First Audit Period and the Second Audit Period, the "Audit Periods") which was commenced in May 2019.

19.     As a result of the Audits, the Comptroller made three separate assessments against Sears (the "**Assessments**"): on March 8, 2013 for the First Audit; on February 28, 2018 for the Second Audit; and on November 4, 2020 for the Third Audit Period. Most of the tax assessed in the Assessments was a disallowance of the Credits based on the Bad Debts. There was also a much smaller amount assessed for use tax on certain expense and fixed assets ("**Use Tax**").   The Assessments compose the amounts sought in the Comptroller's Proof of Claim: $25,097,288 for sales tax and $677,079 for Use Tax (including interest).  The Comptroller wants Sears to pay this amount in addition to the $914,739,601 already paid by Sears during the 11 years encompassed by the Audit Periods.

A.     **Sales Tax**

20.     Sears has formally contested all amounts of the Assessments related to Bad Debts, and the corresponding amounts contained in the Proof of Claim, totaling $25,097,288 in sales tax. The Assessments related to Bad Debts are based on the Comptroller's erroneous legal position, asserted for the first time with regard to Sears in 2012 in connection with the audit of the First Audit Period, that a retailer cannot take bad debt sales tax credits for credit card charge-offs that were not financed by the retailer.  Instead, the Comptroller asserted for the first time that Sears must instead file a refund claim for such bad debts.[5] Importantly, the net economic effect would be the same: Sears would not owe taxes for the periods based on Bad Debts.

21.     In view of the Comptroller's stated reason for the Assessments related to Bad Debts, Sears also did file sales tax refund claims for the same periods (the "**Refund Claims**") to

---

[5] The Comptroller's current position on this issue is less than clear.

further protect its position that the Credits were valid and essentially moot the Comptroller's argument for an outstanding tax liability. The Refund Claims should be allowed in the total amount of $25,448,797 ($351,509 in excess of the erroneously disallowed Credits totaling $25,097,288 via the Assessments)[6]. Thus, the Credits were originally understated by Sears in the amount of $351,509. Attached hereto as **Exhibit B** is store-by-store support for the calculation of Sears' Refund Claims and valid Credits.

22.     The Comptroller's office has agreed that it will set off any tax refund allowed pursuant to the Refund Claims against the tax assessed in the Assessments, and pay Sears any overage (and Sears would pay any deficiency). Accordingly, if the Refund Claims are allowed as shown in **Exhibit B**, no money would be owed under the Assessments other than the small amount of Use Tax ($677,079). The Refund Claims have been pending since September 2012 and the newest has been pending since April 2019. The Comptroller first assigned an auditor to review the Sears refund claims in April 2013 and the auditor has been replaced on the audits no fewer than three times to date. In spite of the excessive age of the Refund Claims and the related audits, the Comptroller has failed to complete any audit of the Refund Claims to date. Over the past 10 years, Sears has provided voluminous amounts of documents, data, and other support to date and yet no meaningful progress has been made on the audit of the Refund Claims.

   **B.**     **Use Taxes**

---

[6] The Comptroller's claim goes through the end of October, 2018 (a half month after the Filing Date) and $66,725 of the Proof of Claim is thus subject to objection on that basis. But, because that amount isn't substantial and for the sake of ease of administration and clarity, Sears also calculated the correct allowed amount of Credits and the Sears' Refund Claims through the end of October, 2018. The Refund Claims are slightly higher than the Credits, even though they are based on the same Bad Debts, because Sears used a more precise method for calculating the Refund Claims in its self-audit than it used for calculating the original Credits. Because the statute of limitations was open due to the pending Audits, Sears was entitled to claim additional amounts.

8

23.     Sears does not contest the amounts listed in the Assessments or Proof of Claim for the Comptroller's calculation of Use Tax. However, as discussed below, Sears does dispute that any amounts are still owed to the Comptroller as a result of overpayments and setoff.

24.     Sears already paid all $1,714,741.36 of the Assessments based on Use Tax that were made prior to the Petition Date (the First Audit Period and Second Audit Period). Indeed, the Comptroller included the $1,714,741.36 in Use Tax in both the Gross Tax owed and Payments made by Sears in the Proof of Claim. Thus the Use Tax assessed in the First and Second Audit nets to zero.

25.     As is typical in contested audits, though, until all issues are resolved, Sears did not pay interest on those amounts of Use Tax. The associated interest reflected in the Proof of Claim for the First Audit Period and Second Audit Period is $423,196.  Sears does not contest that the interest on Use Tax assessed in the First Audit Period and Second Audit Period was owed.

26.     After the Petition Date, for the Third Audit Period, the Comptroller assessed additional Use Tax of $242,763 and interest of approximately $11,120, for a total of $253,883. Assuming the interest accrued prior to the Filing Date, Sears also will not contest the Use Tax and interest thereon for the Third Audit Period.

27.     Accordingly, Sears does not contest interest on Use Tax for the First Audit Period and Second Audit Period ($423,196) and Use Tax and interest for the Third Audit Period ($253,883), for a total of $677,079 (the "**Uncontested Amounts**").

C.      **The Comptroller's Proof of Claim and Overpayment Due to Sears**

28.     On May 27, 2020, the Comptroller filed its Proof of Claim, asserting the full unpaid amounts assessed in the three audits: tax, interest, and penalty totaling $34,213,109.46 with $31,984,113.38 designated as priority.  The Proof of Claim did not attach any supporting

documents, but included an Addendum that broke down the amounts claimed by "Period." These three Audit Periods reflect the results of the three Audits conducted by the Comptroller that led to the Assessments that comprise the Proof of Claim. The Audits are discussed below in more detail. Sears refers to those audit results and any other information received from the Comptroller in order to respond to the Comptroller's Proof of Claim in as much detail as possible.

29.     The Comptroller assessed $13,623,997.89 in additional sales tax, $5,300,342.39 in interest, and $1,400,289.62 in penalties in its audit for the First Audit Period for Bad Debts. In its Audit Report, the Comptroller's auditor (Nomie Namie) stated that "Taxpayer provided insufficient records to conduct a sample or detailed review." This reason for denial was incorrect and contrary to the facts. Sears provided a complete list of accounts that were the subject of Sears' Credits, as well as all of the underlying transactions Sears had for those accounts. The auditor acknowledged receipt of both. The Comptroller's course of dealing with Sears was to do an account level audit with customer statement copies for the sample accounts that the auditor selects. In this audit, the auditor selected no sample and instead assessed for all the Credits, without warning that the auditor was about to do so or complaint about the sufficiency of proof being offered by Sears. Although not stated in writing in the audit report, the Comptroller's auditor and supervisor stated at the time that the reason for the Assessment related to the Credits was the Comptroller's position that retailers cannot take credits for bad debts unless the retailer self-financed. Such a position was contrary to the Comptroller's prior audits of Sears' sale and use tax returns which allowed credits on bad debts. In addition, as shown in greater detail below, the position is contrary to the Texas statute, the Comptroller's then and present rule, the Comptroller's own rulings, and its own prior policy. Sears' protest of the Assessment for the First Audit Period is still pending.

30.    The Comptroller assessed $8,010,778.22 in additional sales tax, $1,653,846.45 in interest, and $801,077.86 in penalties for the Second Audit Period for Bad Debts.  Again, Sears provided ample evidence in support of its Credits of the type that had previously been accepted as sufficient by the Comptroller.  In the Audit Report, the Comptroller's auditor (Jerry Delrosario Jr.) stated the following in the Exam Comment: "BAD DEBTS WERE DISALLOWED AS THEY WERE TAKEN ON THE SALES TAX RETURNS FOR ASSIGNED PRIVATE LABEL BAD DEBTS."  This statement is in line with the reason for the Assessment in the First Audit. Sears' protest of the Assessment for the Second Audit Period is still pending.

31.    The Comptroller assessed $3,462,512[7] in additional sales tax, $158,599.27 in interest, and $27,628.60 in penalties for the Third Audit Period for Bad Debts. Once again, Sears provided ample evidence in support of its Credits of the type that had previously been accepted as sufficient by the Comptroller in the past. There is no stated reason for assessment of the Sears' Credits in any of the audit related documents or communications.  The closest to an explanation that Sears was given is the title of Exam 401 which is "Bad Debt Reversal" and indicates 100% disallowance, but offers no underlying reason for the disallowance.  While there does not appear to be any written statement as to the basis for such reversal and the assessment, Sears suspects the denial was pursuant to the newly-espoused policy of denying all retailer bad debt credits that were not self-financed, and Sears contests such position.

32.    The Proof of Claim also shows Sears paid the Comptroller $903,041.82 during the Third Audit Period.  Sears typically made estimated sales tax payments in Texas and the amounts owed (to either side) were trued up after the actual returns were filed.  A $903,041.82 overpayment was the result of an estimated payment remitted by Sears in September 2018 for monthly sales and

---

[7] The Proof of Claim shows total Net Tax of $2,802,233.16 after improperly deducting the principal portion of the Overpayment ($903,041.82) discussed in paragraph 32.

63553253;6

use tax liability due for September; actuals were due and filed on October 20, 2018. After adding accrued but unpaid interest to the $903,041.82 overpayment of sales tax through March, 2022, the total amount due to Sears is now $949,993 (the "**Overpayment**").

## Legal Analysis

33.     A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).  Upon an objection, the claimant has the burden to demonstrate the validity of the claim. *See Rozier v. Rescap Borrower Claims Tr. (In re Residential Capital, LLC)*, No. 15 Civ. 3248, 2016 WL, 796860, at *9 (S.D.N.Y. 2016); *In re Arcapita Bank B.S.C.(c)*, No. 12–11076 (SHL), 2013 WL 6141616, at *1 (Bankr. S.D.N.Y. Nov. 21, 2013), *aff'd sub nom. In re Arcapita Bank B.S.C.(c)*, 508 B.R. 814, 817 (S.D.N.Y. 2014); *In re Motors Liquidation Co.*, No. 09-50026, 2012 WL 1886755, at *3 (S.D.N.Y. May 12, 2012); *In re Oneida, Ltd.,* 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09 Civ. 2229 (DC), 2010 WL 234827, at *5 (S.D.N.Y. Jan. 22, 2010); *In re Adelphia Commc'ns Corp.*, No. 02-41729, 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

34.     Further, "[i]f a proof of claim is not supported by the requisite documentation, it is not presumed to be prima facie valid." *In re Aiolova*, 2013 WL 5818893 (Bankr. S.D.N.Y. Oct. 29, 2013). This Bankruptcy Court routinely disallows and expunges claims for which no supporting documentation has been submitted by the claimant. *See, e.g., In re Breitburn Energy Partners LP*, Case No. 16-11390 (SMB) (Apr. 11, 2017) (ECF No. 1164) (disallowing and expunging claims without sufficient documentation); *In re Chassix Holdings, Inc.*, Case No. 15-10578 (MEW) (Apr. 21, 2016) (ECF No. 478) (same).

35.     Section 541 of the Bankruptcy Code defines "property of the estate" broadly, including all "interests of the debtor in property" "wherever located and by whomever held." 11

U.S.C. § 541(a). The Bankruptcy Code provides various tools to marshal the assets of an estate for the benefit of the estate's creditors. One such tool is turnover, pursuant to 11 U.S.C. § 542. *See Geron v. Peebler (In re Pali Holdings, Inc.)*, 488 B.R. 841, 851 (Bankr. S.D.N.Y. 2013). "A turnover action's essence is in bringing the estate's property into its custody" by invoking "the court's most basic equitable powers to gather and manage property of the estate."

36.    Section 542(a) provides that an entity in possession, custody, or control of estate property "shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." The party seeking turnover of estate property must therefore show: "(1) the property is in the possession, custody or control of another entity; (2) the property can be used in accordance with the provisions of [11 U.S.C. §] 363; and (3) the property has more than inconsequential value to the debtor's estate." *Kramer v. Mahia (In re Khan)*, No. 10-46901-ESS, 2014 WL 10474969 at *26 (E.D.N.Y. Dec. 24, 2014) (quoting *Zazzali v. Minert (In re DBSI, Inc.)*, 468 B.R. 663, 669 (Bankr. D. Del. 2011).

37.    Under § 502(c) of the Bankruptcy Code, this Court has the authority to "estimate[] for purposes of allowance under this section any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of this case." 11 U.S.C. § 502(c). Claims estimation is proper when, as here, fixing a contingent or unliquidated claim facilitates a quick and efficient reorganization. *In re Adelphia Bus. Solutions, Inc.*, 341 B.R. 415, 422 (Bankr. S.D.N.Y. 2003) (claims estimation "provides a means for a bankruptcy court to achieve reorganization, and/or distribution on claims, without awaiting the results of legal proceedings that could take a very long time to determine"). Estimation has also been used specifically to cap the amount of a claim. *See, e.g., In re Nw. Airlines Corp.,* No. 05- 17930(ALG), 2008 WL 2945998, at *1 (Bankr. S.D.N.Y. July 25, 2008) (estimating the maximum amount of

13

tort claim); *see also In re Washington Mut., Inc.,* 442 B.R. 314, 341 (Bankr. D. Del. 2011) (setting

maximum reserve amount and noting that if party was "successful at trial in obtaining a claim

larger than the estimate, their distribution would be capped at the estimated amount").

38.    "[N]either the Code nor the Rules prescribes any method for estimating a claim,

and it is therefore committed to the reasonable discretion of the court." *Id.* at 424; *see also In re*

*Ralph Lauren Womenswear, Inc.,* 197 B.R. 771, 775 (Bankr. S.D.N.Y. 1996). "An estimate

necessarily implies no certainty; it is not a finding or a fixing of an exact amount. It is merely the

court's best estimate for the purpose of permitting the case to go forward and thus not unduly

delaying the matter." *In re Windsor Plumbing Supply Co., Inc.,* 170 B.R. 503, 521 (Bankr.

E.D.N.Y. 1994) (citing *In re Nova Real Estate Inv. Trust,* 23 B.R. 62, 66 (Bankr. E.D. Va. 1982)).

## The Proof of Claim Should Be Denied in Full

39.    Texas law provides that a retailer and an assignee of a lender are entitled to a credit

or refund of sales taxes paid on the portion of an account determined to be worthless and actually

charged off for federal income tax purposes. In this case, Sears reported and remitted the sales tax

on all of its taxable sales during the Audit Periods.  Each of the accounts comprising the subject

Credits had an outstanding balance due and was determined to be worthless and actually charged

off for income tax purposes.  Sears also filed the back-up Refund Claims which the Comptroller

acknowledges were timely and cover the Audit Periods, and actually exceed the total amount of

the Assessments by $351,509, as supported by **Exhibit B**.  Thus, the Comptroller's Proof of Claim

should be denied in full.

(i)    *The Credits and Refund Claims Were Permitted Under the Texas Statute.*

40.    Sears took the Credits and filed the Refund Claims pursuant to Texas Tax Code

Ann. § 151.426(c) (West 2019), which provides:

63553253;6

> Subject to Subsection (e), a retailer or any person who extends credit to a purchaser under a retailer's private label credit agreement, or an assignee or affiliate of either, is entitled to credit or reimbursement for taxes paid on the portion of:
>
> (1)    an account determined to be worthless and actually charged off for federal income tax purposes; or
>
> (2)    the remaining unpaid sales price of a taxable item when the item is repossessed under a conditional sales contract.

Texas Tax Code Ann. § 151.426(e) (West 2019) provides:

> A person is entitled to a credit or reimbursement provided by Subsection (c) only if:
>
> (1)    the retailer:
>
>     (A)    has a valid sales or use tax permit; and
>
>     (B)    remits the tax for which the credit or reimbursement is sought;
>
> (2)    all payments on an account are prorated between taxable and nontaxable charges; and
>
> (3)    the retailer or person claiming the credit or reimbursement provides detailed records outlining:
>
>     (A)    the amount the purchaser contracted to pay;
>
>     (B)    taxable and nontaxable charges;
>
>     (C)    the tax collected and remitted;
>
>     (D)    the unpaid portion of the sales price assigned; and
>
>     (E)    the taxpayer number of the seller who collected and remitted the tax.

41.    Succinctly stated, the plain language of Texas Tax Code § 151.426(c) provides that "a retailer or any person who extends credit to a purchaser under a retailer's private label credit agreement, or an assignee or affiliate of either, is entitled to credit or reimbursement for taxes paid." (emphasis added).   Accordingly, subsection (c) entitles (i) **a retailer (without the requirement that it extended the credit)**, (ii) a lender that extended credit, (iii) **a retailer that extended credit**, or (iv) an **assignee** of either the retailer or the lender to a credit or reimbursement.

42.    Thus, under the plain language of Tex. Tax Code § 151.426(c), Sears does not need to show it was a retailer that extends credit to a purchaser because subsection (c) entitles a retailer

that did not extend credit or any entity that is an assignee of a lender that extended credit under a retailer's private label card program to a credit or reimbursement.

43. Citi extended the credit with regard to $24,798,061 of the Bad Debts as shown by **Exhibit B**. It is undisputed that Sears was a "retailer" under Texas law "who extends credit to a purchaser under a retailer's private label credit agreement" pursuant to the Agreement, and (iii) Sears also was "an assignee" of Citi as a result of the assignment of the right to the Credits from Citi to Sears.

44. Sears also extended the credit itself with regard to $650,736 of the Bad Debts as shown by **Exhibit B**. It is undisputed that Sears was a "retailer" under Texas law, and (ii) Sears was a person "who extends credit to a purchaser under a retailer's private label credit agreement" pursuant to the Agreement, and thus qualifies under Tex. Tax Code § 151.426(c). Sears also qualifies for this portion of the Bad Debts under § 151.426(a) (A seller may withhold the payment of the tax on a portion of the sales price of a taxable item that remains unpaid by the purchaser if: (1) during the reporting period in which the item was sold, leased, or rented the seller determines that the unpaid portion will remain unpaid; (2) the seller enters the unpaid portion of the sales price in the seller's books as a bad debt; and (3) the bad debt is claimed as a deduction for federal tax purposes during the same or a subsequent reporting period.).

45. Accordingly, under the clear language of the statute, Sears is "entitled to credit or reimbursement for taxes paid" either in its own right as a "retailer" or as an "assignee" of Citi. Thus, during the Audit Periods, Sears was entitled to and took Credits on its monthly sales and use tax returns for sales taxes paid on the portion of a debt determined to be Bad Debts, and the Assessments, except as they pertain to the Uncontested Amounts, are

erroneous. In any event, Sears was entitled to be paid more than the Assessments based on the Refund Claims for the Audit Periods.

(ii)    *The Credits and Refund Claims Were Also Permitted Under the Comptroller's Regulation in Effect at the Time.*

46.    The Comptroller's regulation cannot command a different result that the plain language of the Texas statute. *See Feiss v. State Farm Lloyds*, 202 S.W.3d 744, 747-48 (Tex. 2006) (explaining that an agency's construction of a statute cannot change the plain language of the statute); *Hegar v. Ryan, LLC*, No. 03-13-00400-CV, 2015 WL 3393917 (Tex. App. May 20, 2015) (portion of Texas Administrative Code that requires claimants to file support for bad debt refund claims that is not required by statute is invalid and illegal). In this case, the regulation in effect during the Audit Periods is in concert with the statute. The regulation with respect to sales tax paid on bad debts is 34 Tex. Admin. Code § 3.302 (Accounting Methods, Credit Sales, Bad Debt Deductions, Repossessions, Interest on Sales Tax, and Trade-Ins) which stated in relevant part:

> (d)    Bad Debts
> (1)    Any portion of the sales price of a taxable item that the retailer or private label credit provider cannot collect is considered to be a bad debt.
> * * *
> (C)    A retailer who extends credit to a purchaser on an account that is later determined to be a bad debt, a person who extends credit to a purchaser under a retailer's private label credit agreement on an account that is later determined to be a bad debt, or an assignee or affiliate of either who extends credit on an account that is later determined to be a bad debt, is entitled to a **credit** or **refund** for the tax paid to the comptroller on the bad debt.

(emphasis added).

47.     In pertinent part, "….a person who extends credit to a purchaser under a retailer's private label credit agreement on an account that is later determined to be a bad debt, or an assignee …. of [a person] who extends credit on an account that is later determined to be a bad debt, is entitled to a credit or refund for the tax paid to the comptroller on the bad debt."

48.     Under the clear language of Rule 3.302(d)(1)(C): (i) Citi is "a person who extends credit to a purchaser under a retailer's private label credit agreement", and (ii) Sears is "an assignee" of Citi.  Thus, Sears is "entitled to a credit or refund for the tax paid to the comptroller on the bad debt" as "an assignee" of Citi under the Comptroller's own regulation as well, and the Assessments as they pertain to Bad Debts are erroneous.

   (iii)   *The Comptroller's Aborted Attempt to Change its Regulation in 2015 Shows the Comptroller's Policy Has Always been to Permit Retailer Credits.*

49.     In 2015, the Comptroller attempted to revise the language of 34 Tex. Admin. Code § 3.302 to assert the same position it is asserting to support the Assessments: that retailers cannot claim credits if they did not finance the underlying transactions.  Previously, the Comptroller had published guidance discussed in greater detail below that retailers, private label credit providers, and assignees or affiliates of either could take credits for bad debts on sales and use tax reports. *See Tax Policy News*, Vol XI, Issue 6 (June 1, 2001), https://star.comptroller.texas.gov/view/200106351L?q1=200106351L; Memorandum from Eleanor H. Kim, Assistant Director of Tax Administration to Sales Tax Policy Section (March 22, 2002), https://star.comptroller.texas.gov/view/200203888L?q1=200203888L.  The Comptroller attempted to revise the regulation in 2015 by adding a new paragraph (2) to provide that taxpayers must request a refund instead of a credit for tax paid on accounts later determined to be worthless and actually charged off for federal income tax purposes. The Comptroller expressly stated in the draft regulation comments that it was revising its policy to require that all taxpayers, whether

18

retailers, private label credit providers, assignees, or affiliates, request a refund for tax paid on bad debts and that the credits currently allowed by statute will not be allowed going forward. Taxpayers responded with comments noting that the legislature specifically and clearly stated multiple times in the statue (Tax Code §151.416) that retailers or other persons such as assignees may take credits or seek refunds and that the Comptroller had no authority to change the plain statutory language of the statute chosen by the legislature. After receiving these comments, the Comptroller ceased pursuing this change. The fact that the Comptroller attempted to change the existing bad debt regulation to address this same issue and to take this same position shows that the law was and is today that retailers are allowed to take bad debt sales tax credits on returns and are not limited to filing refund claims.

     *(iv)    The Credits and Refund Claims Are Also Permitted Under the Comptroller's New Amended Regulation Now in Effect.*

50.    When the Comptroller finally amended the bad debt regulation (34 Tex. Admin. Code § 3.302) effective January 6, 2022, the Comptroller again confirmed that retailers could continue to take credits.[8] Like the prior version of the regulation, the new regulation also specifies that a retailer (as opposed to the "retailer who extends credit"), private label credit provider, or an assignee or affiliate of either can claim a credit or refund on a bad debt:

(d)(2)  Persons who may claim a credit or refund.

(A) Only a retailer, private label credit provider, or assignee or affiliate of either may claim a credit or refund for sales and use tax paid on the bad debt or the unpaid portion of the sales price of a taxable item repossessed under a conditional sales contract.

---

[8] There is no statement that the new regulation applies retroactively and therefore under Texas law, it only applies prospectively and thus not to the Audit Periods. *See* Tex. Gov't Code § 2001.036 (agency regulations are effective 20 days after they are filed with the office of the secretary of state); *Kittman v. State Bd. of Pharmacy of Tex.*, 607 S.W.2d 26 (Tex. Civ. App. 1980) (pharmacist's license could not be revoked based upon a regulation that was not effective until after the pharmacist's alleged violation). Still, the revised regulation continues the policy of allowing retailers like Sears to take credits.

63553253;6

> (B) Only one person is entitled to a credit or refund for sales and use tax paid to the comptroller on each bad debt or repossession.

51.     The new regulation limits credits to permitted persons. Sears held a valid permit for all periods:

> (d)(7) Claiming a credit or refund.
> (A) Permitted persons. A person who holds, or held at the time of the sale, a valid Texas sales and use tax permit and who is otherwise entitled to claim a credit or refund authorized under this subsection may:
> (i) claim a credit on the person's sales and use tax report for tax paid on a bad debt only if the person files the tax report electronically and claims the credit in the reporting period in which the person's books reflect the bad debt or subsequent reporting periods; or
> (ii) request a refund in writing from the comptroller for sales and use tax paid on a bad debt.
> (B) Non-permitted persons. A person who does not hold a valid Texas sales and use tax permit but is otherwise entitled to a credit or refund under this subsection can only request a refund in writing from the comptroller for sales and use tax paid to the comptroller on the bad debt or the unpaid portion of the sales price of a taxable item repossessed.

52.     Thus, Sears meets all the criteria in the amended regulation to take the Credits as well.

> *(v)     The Comptroller's Publications Confirm That a Credit is Available for Bad Debts.*

53.     In its February 2018 Tax Policy News publication, the Comptroller acknowledged that retailers have a right to take bad debt credits on their sales tax returns as long as the returns are electronically filed stating, "If you are claiming bad debt credit on your sales tax return, you must file electronically using Webfile or Electronic Data Interchange (EDI) beginning with the January 2018 return due on Feb. 20, 2018." *See Tax Policy News* (Feb. 2018), https://comptroller.texas.gov/taxes/tax-policy-news/2018-february.php.   Sears filed its sales tax returns electronically throughout all of the audit periods.

20

54.     This is consistent with previous guidance provided by the Comptroller in prior Tax Policy News publications. There is no published guidance that provides that a retailer cannot take credits if it was an assignee.  To the contrary, in June 2001 the Comptroller stated, "Effective October 1, 1999, a private label card provider, or assignee or affiliate of the retailer or private label credit provider, may take a **credit** or seek a refund for the tax paid to the Comptroller by the retailer on a bad debt deemed to be worthless." *Tax Policy News*, Vol. XI, Issue 6 (June 1, 2001), https://star.comptroller.texas.gov/view/200106351L?q1=200106351L; (emphasis added).   This policy was confirmed in a March 22, 2002 memorandum to the Comptroller's Sales Tax Policy Section which added a requirement that an assignment must be provided.  The memorandum states, "It has been the agency's policy and continues to be the agency's policy that the assignee of a tax refund must directly submit the refund assignment form before any refund or **credit** can be claimed."  Memorandum from Eleanor H. Kim, Assistant Director of Tax Administration to Sales Tax Policy Section (March 22, 2002), https://star.comptroller.texas.gov/view/200203888L?q1=200203888L (emphasis added).[9] Thus, the Credits are consistent with the Comptroller's published policy as well.

*(vi)     Sears provided Supporting Information for the Credits and Refund Claims.*

55.     Pursuant to Texas Tax Code Ann. § 151.426(e) and 34 Tex. Admin. Code § 3.302, auditors may require proof to support bad debt sales tax credits and refunds.  Claimants are not required to provide all supporting information with the initial filings of the refund claims to satisfy 34 Tex. Admin. Code §3.325.  *See Heger*, 2015 WL 3393917 (portion of Texas Administrative Code including 34 Tex. Admin. Code §3.325 that required claimants to file support for bad debt

---

[9]   The Comptroller's internal Audit Policy Memo #113 dated August 17, 2007, https://star.comptroller.texas.gov/view/200708432L?q1=200708432L  states that assignees must file refund claims, but does not limit retailers. Also, the discussion of assignees is directly contrary to the relief granted under the statute and regulation and thus invalid.

refund claims at the time the claims are filed is not required by statute is invalid and illegal). Instead, in the course of an audit, such information is requested and produced and may vary from claim to claim depending upon numerous factors.  For example, the Comptroller permits a person whose volume and character of uncollectible accounts warrants an alternative method of substantiating the credit to maintain other types of records if "the records fairly and equitable apportion the taxable and nontaxable elements of a bad debt and compute the amount of sales tax imposed and remitted and the comptroller approves the procedures used." 34 Tex. Admin. Code §3.325(d)(5)(A).  Similarly, a person can "implement a system to report future tax responsibilities based on a historical percentage using statistical sampling if the system utilizes records provided by the person claiming the credit or reimbursement and the comptroller approves the procedures used."  *Id*. at (d)(5)(B).

56.    Sears and Citi maintained substantial detailed and confidential records (i.e., cardholder name and address, account number, transactions, payment records, and taxable percentages) pursuant to the Agreements that support the Credits and Refund Claims.  In the Audits, Sears provided voluminous amounts of such information to the Comptroller on numerous occasions pursuant to Tex. Tax Code § 151.426(e) and 34 Tex. Admin. Code § 3.302, or as requested by the auditors.  While Sears produced substantial back-up for the Credits and Refund Claims on numerous occasions, it has offered to produce even more, but the auditors refused to review such documentation and did not request any additional information, choosing instead to rely on the Comptroller's legal arguments to assess.  For example, in connection with the First Audit Period, Sears provided documentation in June 2012 (detail records regarding gross charge offs, principal charge offs, recoveries and non-taxable transactions for Sears' nationwide losses and Texas losses), September 2012 (copies of assignments), October 2012 (Citi's consolidated

22

federal tax returns for 2007-2011 with Excel workbook containing detailed charge-off information for a test year: gross charge-off by month by state, principal charge-off by month by state, and principal charge-off net of recovery payments by state by month. The principal charge-off by month for Texas substantiates the monthly deductions taken by Sears in the test year. The workbook also provides a high level reconciliation to Citi's federal tax return: a reconciliation from the total losses for all states and all months in the test year to line 15 on the Citi pro-forma federal income tax return), January 2013 (Texas form 01-911, detail transactions records for over 800,000 purchases, and detail account level data for over 185,000 charged off accounts), March 1, 2013 (data of similar nature to the data provided in January 2013), and June 13, 2013 (charged off accounts listing, raw transactions listing (purchases, payments, adjustments, etc. for the life of the accounts), Sears' stores master address file, and complete file with all recovery payments received during the refund periods).

57.    In the end, the auditors requested no additional support for the Credits and instead assessed, claiming insufficient documents with regard to the First Audit Period and denying solely on the legal argument that Sears was not entitled to take the Credits under Texas law. Sears communicated that it disagreed with the Assessments and offered to provide any supporting information requested.

(vii)    *Interest and Penalties on the Bad Debts Should Also Be Disallowed.*

58.    The Comptroller included $7,112,788.11 in interest as a priority claim in the Proof of Claim and $2,228,996.08 in penalties as a general unsecured claim related to Credits taken by Sears for the Bad Debts. Because Sears does not owe the taxes based on the Bad Debts that are the subject of the Proof of Claim, it also does not owe the interest and penalties claimed by the Comptroller on those amounts.

59.     Further, the penalties and interest should not be assessed even if tax was owing. Texas permits assessment of interest and a 10% penalty for taxes that are paid late. *See* Tex. Tax Code §§ 111.061(a), 151.512, 151.703(a). However, the Comptroller's regulations also permit the Comptroller to settle or waive interest and penalties if the "taxpayer exercised reasonable diligence" in complying with the tax laws. *See* 34 Tex. Admin. Code § 3.5(a).

60.     When considering a waiver of penalties, the factors considered by the Comptroller are:

> (A) the taxpayer's audit history, including, but not limited to, the errors identified in prior audits;
> (B) the tax issues involved;
> (C) whether a change in comptroller policy occurred during the audit period;
> (D) whether changes in the law took effect during the audit period;
> (E) the size and sophistication of the taxpayer;
> (F) whether tax was collected but not remitted;
> (G) whether returns were timely filed;
> (H) the completeness of the taxpayer's records;
> (I) the taxpayer's efforts to comply with the recordkeeping requirements of this state, such as maintaining an accrual system for taxable purchases;
> (J) delinquencies in other taxes;
> (K) reliance on advice provided by the comptroller's office pursuant to §3.10(c) of this title (relating to Taxpayer Bill of Rights); and
> (L) the error rate in the current audit.

34 Tex. Admin. Code § 3.5(b)(3).

61.     Here, Sears meets the requirements for waiver of the penalty because its audit history shows that it has always timely filed and paid its Texas taxes and the issue in the Assessment is not an issue that was raised in any prior audit (at least prior to late 2012). Also, a change occurred in the Comptroller's policy during the audit period because the Comptroller had previously always allowed Sears to take credits for bad debt and Sears relied on advice provided by the Comptroller's office in allowing it to take bad debt credits in previous audits. It is the policy

24

of the Comptroller to stand behind the tax advice issued by its employees (even if the advice is incorrect). *See* Statement of Position, 8107P0409B11, May 1, 1981, https://star.comptroller.texas.gov/view/8107P0409B11?q1=8107P0409B11. Though the Comptroller is not necessarily bound by the erroneous advice of its agents, both its policy and Taxpayer's Bill of Rights "will give relief to a taxpayer who follows erroneous advice given by an agency employee." 34 Tex. Adm. Code § 3.10(b)(2). In this instance, the Comptroller has established a course of conduct in always permitting Sears in particular and retailers in general to take credits for sales tax paid on bad debts. Accordingly, the penalty should be waived.

62.    The interest imposed on the Assessment should also be waived under the factors set forth in the Comptroller's regulation. The following factors are considered when requesting a waiver of interest: "(1) undue delay caused by comptroller personnel; (2) reliance on advice provided by the comptroller's office pursuant to §3.10(c) of this title; and (3) natural disasters." 34 Tex. Admin. Code § 3.5(e). Here, the interest must be waived because the amount of interest is a direct result of the Comptroller's undue delay in conducting the Audits, and the audit of the Refund Claims in particular, which have gone on for 10 years and counting, and Sears' reliance on advice provided by the Comptroller's office in previously allowing Sears (and other retailers) to take credits for bad debts. Under the Comptroller's own regulation, interest on the Assessments should be waived.

63.    Further, the Debtors believe that post-petition interest may be included in the Proof of Claim which is not permitted under the Bankruptcy Code. *See* 11 U.S.C. § 502(b); *Fullmer v. U.S. (In re Fullmer)*, 962 F.2d 1463, 1467 (10th Cir. 1992) (*abrogated on other grounds*).

**The Comptroller Should Be Compelled to Turn Over $166,637.45 to the Debtors**

64.     The Refund Claims should be allowed in the total amount of $25,448,797, which is $351,509 in excess of the erroneously disallowed Credits via the Assessments (the **"Net Refund Claim:"**), as shown by **Exhibit B**, the store-by-store support for the calculation of  Sears' Refund Claims and valid Credits.

65.     In addition, it is uncontested that Sears made the Overpayment in the principal amount of $903,041.82 as it is reflected as a payment in the Proof of Claim.  The Overpayment made by Sears in September 2018 were estimated pre-payments made to receive the discount on the sales tax owed for that month. Tex. Tax Code § 151.424 provides a taxpayer a 1.25% discount on the sales taxes due and owing if the taxpayer prepays "a reasonable estimate of the tax liability" for the month.  To qualify for the prepayment discount, the tax prepayment must be made on or before the 15th day of the month for which the prepayment is made. Tex. Tax Code § 151.424(b)(2).  The sales taxes are still not actually "due and payable" until the following month. Tex. Tax Code § 151.401. The tax return is due on the 20th day of the following month. Tex. Tax Code § 151.424(c); Tex. Admin. Code § 3.286(h)(2)(D). In this case, the tax return for the prepayment was filed on October 20, 2018.  "The amount of a prepayment made by a taxpayer under this section shall be credited against the amount of actual tax liability of the taxpayer as shown on the tax report of the taxpayer. If there is a tax liability owed by the taxpayer in excess of the prepayment credit, the taxpayer shall send to the comptroller the remaining tax liability at the time of filing the . . . monthly report." Tex. Tax Code § 151.424(c). "If the amount of the prepayment exceeds the actual tax liability, the excess of the prepayment shall be credited against future tax liability of the taxpayer or refunded to the taxpayer as provided by Subchapter C of Chapter 111 of this code." Tex. Tax Code § 151.424(d). The regulation states, "If the prepayment exceeded the actual liability, the permit holder will be mailed an overpayment notice or refund

26

warrant." Tex. Admin. Code § 3.286(h)(2)(D). Under Texas law, a claim for refund accrues on the date that the tax becomes "due and payable." *Sharp v. Int'l Business Machines Corp.*, 927 S.W.2d 790 (Tex. App. 1996). The Overpayment of $949,993 including interest is clearly due to Sears and owed by the Comptroller.

66.     However, Sears owes the Comptroller for the Uncontested Amounts totaling $677,079 (Use Tax for the First Audit Period and Second Audit Period ($423,196) and Use Tax for the Third Audit Period ($253,883)).

67.     In addition, the Debtors owe the Comptroller $457,785.55 in connection with the Comptroller's Allowed Claims (Claim 20615 in the amount of $175,908 against Sears Operations LLC; Claim 26368 should be allowed in the tentatively agreed amount of $176,000 against Kmart Stores of Texas LLC; Claim 20373 in the amount of $43,362.87 against Kmart Corporation; and Claim 20614 in the amount of $62,514.68 against Innovel Solutions, Inc.).

68.     The Net Refund Claim ($351,509), plus the Overpayment ($949,993), less the Uncontested Amounts ($677,079) and less the Allowed Claims ($457,785.55), lead to a net turnover to the Debtors of **$166,637.45** and thereby satisfy claims 20615, 26368, 20373, and 20614 in full.

## In the Alternative, the Court Should Estimate the Proof of Claim and the Comptroller's Allowed Claims at $0

69.     In the alternative, without prejudice to the Debtors' ability to collect refunds to which the Debtors are entitled, the Debtors request that the Court estimate the amount of Proof of Claim and the Allowed Claims at $0 under 11 U.S.C. § 507(a)(8) for purposes of distribution under the Plan and Confirmation Order.

70.    The Proof of Claim and Allowed Claims affect the Debtors' ability to make distributions under the confirmed Plan.

71.    Here, as explained in detail above, the Comptroller owes more money to the Debtors than the Debtors owed to the Comptroller.  Where there is no likelihood of legal liability on a proof of claim, estimation at zero dollars for purposes of distribution is appropriate. *See, e.g., In re Genesis Health Ventures, Inc.* 272 B.R. 558 (Bankr. D. Del. 2002), aff'd 112 Fed. Appx. 140 (3d Cir. 2004) (estimating claim under federal False Claims Act at zero dollars because claimant failed to adduce evidence required to show violation of same). In addition, courts have found that the greater the contingency of the claim, the more likely it is to be estimated at zero dollars. *See In re Rock & Republic Enters.,* No. 10-11728, 2011 WL 4756571, at *6-9 (Bankr. S.D.N.Y. 2011) (finding that if the relevant contingent indemnification claim were estimated, the court would estimate such claim at zero dollars in light of its highly speculative nature and the "multi-tiered" contingencies involved); *In re Amatex Corp.,* 110 B.R. 168, 170 (Bankr. E.D. Pa. 1990) ("Pursuant to 11 U.S.C. § 502(c)(1), a contingent claimant is said to generally be entitled to file a claim, but the amount of the claim is subject to estimation by the bankruptcy court. We note that such claims are often fragile in the face of the estimation process and valued at zero.") (internal citations omitted).

72.    Accordingly, the Proof of Claim should be estimated at $0 for purposes of distribution under the confirmed Plan and Confirmation Order. In addition to the Proof of Claim, the Comptroller's other pending proofs of claim under 11 U.S.C. § 507(a)(8) in these bankruptcy cases: Claim 20615 in the amount of $175,908 against Sears Operations LLC; Claim 26368 in the amount of $234,421.81 (tentatively settled for $176,000) against Kmart Stores of Texas LLC; Claim 20373 in the amount of $43,362.87 against Kmart Corporation; and Claim 20614 in the

28

amount of $62,514.68 against Innovel Solutions, Inc., should also be estimated at $0 for purposes of distribution under the confirmed Plan and Confirmation Order.

## Conclusion and Relief Requested

73.     In summary, the bad debt Credits taken by Sears should have been allowed in the Audits, and thus the Comptroller's Proof of Claim should not be allowed with regard to the portion of  the Assessments related to the Bad Debts.  The Net Refund Claim, plus the Overpayment, less the Uncontested Amounts and less the Allowed Claims, lead to a net turnover to the Debtors of $166,637.45, and thereby satisfy Claims 20615, 26368, 20373, and 20614 in full.

74.     In the alternative, the Debtors request that the Court estimate the amount of Proof of Claim and the Comptroller's Allowed Claims at zero under 11 U.S.C. § 507(a)(8) for purposes of distribution under the Plan and Confirmation Order.

## Reservation of Rights

75.     The Debtors hereby reserve the right to amend, modify, and/or supplement this Objection to the extent an objection to the Comptroller's Proof of Claim is not granted. A separate notice and hearing will be scheduled for any such objection.

## Notice

76.     Notice of this Objection has been provided in accordance with the procedures set forth in the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 (ECF No. 405) (the "**Amended Case Management Order**"). The Debtors respectfully submit that no further notice is required.

77.     No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

63553253;6

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the

relief requested herein and such other and further relief as is just.

Dated: May 27, 2022

_/s/ David E. Otero_
David E. Otero
AKERMAN LLP
50 North Laura Street, Suite 3100
Jacksonville, Florida 32202
Telephone:  (904) 798-3700
Facsimile:   (904) 798-3700

*Attorneys for Debtors*
*and Debtors in Possession*

63553253;6

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION**, *et.al.*, | **Case No. 18-23538 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

## ORDER GRANTING DEBTORS' (A) OBJECTION TO CLAIM 26186 OF TEXAS COMPTROLLER OF PUBLIC ACCOUNTS ON BEHALF OF THE STATE OF TEXAS AND LOCAL SALES TAX JURISDICTIONS AND (B) MOTION FOR TURNOVER OF PROPERTY OF THE ESTATE AND APPLICATION OF FUNDS OWED TO DEBTORS IN SATISFACTION OF CLAIMS 20615, 26368, 20373, AND 20614, OR, IN THE ALTERNATIVE, (C) MOTION FOR AN ORDER, PURSUANT TO SECTIONS 105(a) AND 502(c) OF THE BANKRUPTCY CODE, ESTIMATING CLAIMS

Upon the Debtors' (A) Objection to Claim 26186 of the Texas Comptroller of Public Accounts on Behalf of the State of Texas and Local Sales Tax Jurisdictions and (B) Motion for Turnover of Property of the Estate and Application of Funds Owed to Debtors in Satisfaction of Claims 20615, 26368, 20373, and 20614, or, In the Alternative, (C) Motion for an Order, Pursuant to Sections 105(a) and 502(c) of the Bankruptcy Code Estimating Claims filed May 26, 2022 (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 1700 Broadway, 19th Floor, New York, New York, 10019.

"**Objection**")[2] of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105 and 502 under title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule 3007 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), for an order (i) disallowing Claim 26186, (ii) requiring turnover of property of the estate, (iii), estimating claims, and (iv) granting related relief, all as more fully set forth in the Objection; and the Bankruptcy Court having jurisdiction to consider the Objection and the relief requested therein in accordance with 28 U.S.C. §§ 157(a)-(b) and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and consideration of the Objection and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief requested in the Objection having been provided, and it appearing that no other or further notice need be provided in accordance with the Amended Case Management Order; and such notice having been adequate and appropriate under the circumstances, and it appearing that other or further notice need not be provided; and the Bankruptcy Court having held a hearing to consider the relief requested in the Objection on June 29, 2022 (the "**Hearing**"); and upon the record of the Hearing, and upon all of the proceedings had before the Bankruptcy Court; and the Bankruptcy Court having determined that the legal and factual bases set forth in the Objection establish just cause for the relief granted herein; and is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

      **IT IS HEREBY ORDERED THAT**

---

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the Objection.

53041777;5

1.      The Objection is granted.

2.      Pursuant to section 502 of the Bankruptcy Code and Bankruptcy Rule 3007, Claim 26186 of the Texas Comptroller of Public Accounts on Behalf of the State of Texas and Local Sales Tax Jurisdictions is disallowed in its entirety.

3.      The Debtors, the Debtors' claims and noticing agent, Prime Clerk, and the Clerk of this Bankruptcy Court are authorized to take all actions necessary or appropriate to give effect to this Order, including but not limited to noting that Claims 20615, 26368, 20373, and 20614 are satisfied in full.

4.      The terms and conditions of this Order are effective immediately upon entry.

Dated:_____, 2022
        White Plains, New York

                                _____
                                HONORABLE ROBERT D. DRAIN
                                UNITED STATES BANKRUPTCY JUDGE

53041777;5

**<u>Exhibit B</u>**

**Store-by-Store Analysis**

63553253;6

| Purchase Location / Store Number | Store/Delivery City | Store/Delivery State | Net Bad Debt for the Claim | Tax Claimed |
|---|---|---|---|---|
| 5049940101001808 | KATY | TX | $ 252,984 | $ 19,178 |
| 5049940101001809 | TOMBALL | TX | $ 162,951 | $ 12,353 |
| 5049940101001811 | EULESS | TX | $ 78,604 | $ 5,959 |
| 5049940101001819 | ROWLETT | TX | $ 106,731 | $ 8,091 |
| 5049940101001833 | BROWNFIELD | TX | $ 54,304 | $ 4,117 |
| 5049940101001856 | FORT WORTH | TX | $ 95,947 | $ 7,273 |
| 5049940101001857 | LEAGUE CITY | TX | $ 163,913 | $ 12,426 |
| 5049940101001858 | BURLESON | TX | $ 187,839 | $ 14,240 |
| 5049940101001859 | WALLISVILLE | TX | $ 91,152 | $ 6,910 |
| 5049940101001865 | HENDERSON | TX | $ 51,342 | $ 3,892 |
| 5049940101001866 | CROCKETT | TX | $ 85,654 | $ 6,493 |
| 5049940101001928 | MANSFIELD | TX | $ 130,310 | $ 9,878 |
| 5049940101001932 | SEALY | TX | $ 119,377 | $ 9,050 |
| 5049940101001936 | FLOWER MOUND | TX | $ 116,211 | $ 8,810 |
| 5049940101001937 | MCKINNEY | TX | $ 238,914 | $ 18,111 |
| 5049940101001938 | PEARLAND | TX | $ 400,805 | $ 30,384 |
| 5049940101001965 | PASADENA | TX | $ 223,370 | $ 16,933 |
| 5049940101001975 | JACKSONVILLE | TX | $ 90,247 | $ 6,841 |
| 5049940101002014 | ATHENS | TX | $ 52,848 | $ 4,006 |
| 5049940101002187 | AUSTIN | TX | $ 153,460 | $ 11,633 |
| 5049940101002531 | AUSTIN | TX | $ 28,735 | $ 2,178 |
| 5049940101002709 | ALVIN | TX | $ 81,824 | $ 6,203 |
| 5049940101002739 | AZLE | TX | $ 70,143 | $ 5,317 |
| 5049940101002909 | MURPHY | TX | $ 42,031 | $ 3,186 |
| 5049940101003014 | EL CAMPO | TX | $ 81,418 | $ 6,172 |
| 5049940101003026 | LIBERTY | TX | $ 361,807 | $ 27,428 |
| 5049940101003296 | SWEETWATER | TX | $ 180,702 | $ 13,698 |
| 5049940101003328 | HUNTSVILLE | TX | $ 448,645 | $ 34,011 |
| 5049940101003331 | WICHITA FALLS | TX | $ 145,332 | $ 11,017 |
| 5049940101003337 | KINGSVILLE | TX | $ 295,528 | $ 22,403 |
| 5049940101003338 | EAGLE PASS | TX | $ 795,185 | $ 60,281 |
| 5049940101003348 | BRENHAM | TX | $ 234,106 | $ 17,747 |
| 5049940101003358 | KERRVILLE | TX | $ 249,951 | $ 18,948 |
| 5049940101003378 | CORSICANA | TX | $ 366,578 | $ 27,789 |
| 5049940101003388 | GREENVILLE | TX | $ 421,358 | $ 31,942 |
| 5049940101003398 | EARLY | TX | $ 312,048 | $ 23,655 |
| 5049940101003406 | DEL RIO | TX | $ 357,999 | $ 27,139 |
| 5049940101003408 | BIG SPRING | TX | $ 235,401 | $ 17,845 |
| 5049940101003418 | NACOGDOCHES | TX | $ 316,612 | $ 24,002 |
| 5049940101003425 | BASTROP | TX | $ 324,113 | $ 24,570 |
| 5049940101003438 | LIVINGSTON | TX | $ 390,752 | $ 29,622 |
| 5049940101003458 | NEW BRAUNFELS | TX | $ 273,777 | $ 20,754 |
| 5049940101003468 | BAY CITY | TX | $ 238,544 | $ 18,083 |
| 5049940101003478 | TAYLOR | TX | $ 188,181 | $ 14,265 |
| 5049940101003488 | ATHENS | TX | $ 318,087 | $ 24,113 |
| 5049940101003496 | BEEVILLE | TX | $ 320,054 | $ 24,262 |

| Purchase Location / Store Number | Store/Delivery City | Store/Delivery State | Net Bad Debt for the Claim | Tax Claimed |
|---|---|---|---|---|
| 5049940101003497 | GRANBURY | TX | $ 269,864 | $ 20,458 |
| 5049940101003508 | SULPHUR SPRINGS | TX | $ 312,785 | $ 23,711 |
| 5049940101003518 | STEPHENVILLE | TX | $ 308,845 | $ 23,413 |
| 5049940101003527 | TEMPLE | TX | $ 486,374 | $ 36,871 |
| 5049940101003528 | WAXAHACHIE | TX | $ 521,581 | $ 39,540 |
| 5049940101003536 | UVALDE | TX | $ 274,071 | $ 20,777 |
| 5049940101003538 | PLAINVIEW | TX | $ 412,084 | $ 31,239 |
| 5049940101003548 | JASPER | TX | $ 292,527 | $ 22,176 |
| 5049940101003558 | WHARTON | TX | $ 95,023 | $ 7,203 |
| 5049940101003568 | MINERAL WELLS | TX | $ 220,679 | $ 16,729 |
| 5049940101003607 | RICHMOND | TX | $ 449,347 | $ 34,064 |
| 5049940101003616 | GEORGETOWN | TX | $ 211,748 | $ 16,052 |
| 5049940101003617 | LAGRANGE | TX | $ 152,972 | $ 11,596 |
| 5049940101003627 | LOCKHART | TX | $ 23,276 | $ 1,764 |
| 5049940101003639 | CANTON | TX | $ 318,594 | $ 24,152 |
| 5049940101003667 | MOUNT PLEASANT | TX | $ 273,265 | $ 20,716 |
| 5049940101003670 | SILSBEE | TX | $ 26,618 | $ 2,018 |
| 5049940101003672 | DECATUR | TX | $ 351,029 | $ 26,611 |
| 5049940101003686 | MARBLE FALLS | TX | $ 277,751 | $ 21,056 |
| 5049940101003697 | ROCKWALL | TX | $ 209,370 | $ 15,872 |
| 5049940101003705 | PORTLAND | TX | $ 57,433 | $ 4,354 |
| 5049940101003717 | MARSHALL | TX | $ 345,228 | $ 26,171 |
| 5049940101003728 | ALICE | TX | $ 352,290 | $ 26,706 |
| 5049940101003744 | SEGUIN | TX | $ 297,107 | $ 22,523 |
| 5049940101003747 | WEATHERFORD | TX | $ 295,677 | $ 22,414 |
| 5049940101003756 | PLEASANTON | TX | $ 248,861 | $ 18,865 |
| 5049940101003758 | HENDERSON | TX | $ 5,312 | $ 403 |
| 5049940101003766 | FORT STOCKTON | TX | $ 191,681 | $ 14,531 |
| 5049940101003774 | GIDDINGS | TX | $ 49,888 | $ 3,782 |
| 5049940101003789 | GREENVILLE | TX | $ 16,834 | $ 1,276 |
| 5049940101003806 | CARTHAGE | TX | $ 156,078 | $ 11,832 |
| 5049940101003816 | FREDERICKSBURG | TX | $ 181,982 | $ 13,796 |
| 5049940101003827 | ROCKPORT | TX | $ 324,288 | $ 24,583 |
| 5049940101003837 | PORT LAVACA | TX | $ 67,426 | $ 5,111 |
| 5049940101003866 | GATESVILLE | TX | $ 219,198 | $ 16,617 |
| 5049940101003882 | PAMPA | TX | $ 169,981 | $ 12,886 |
| 5049940101003897 | VERNON | TX | $ 22,360 | $ 1,695 |
| 5049940101003907 | GRAHAM | TX | $ 126,521 | $ 9,591 |
| 5049940101003916 | ORANGE | TX | $ 206,130 | $ 15,626 |
| 5049940101003927 | GUN BARREL CITY | TX | $ 438,308 | $ 33,227 |
| 5049940101003948 | MEXIA | TX | $ 356,783 | $ 27,047 |
| 5049940101003956 | ATLANTA | TX | $ 324,325 | $ 24,586 |
| 5049940101003957 | CLEBURNE | TX | $ 415,339 | $ 31,486 |
| 5049940101003961 | BOERNE | TX | $ 215,432 | $ 16,331 |
| 5049940101003967 | PALESTINE | TX | $ 354,303 | $ 26,859 |
| 5049940101003988 | MINEOLA | TX | $ 357,381 | $ 27,092 |

| Purchase Location / Store Number | Store/Delivery City | Store/Delivery State | Net Bad Debt for the Claim | Tax Claimed |
|---|---|---|---|---|
| 5049940101003990 | GAINESVILLE | TX | $ 87,214 | $ 6,611 |
| 5049940101003991 | CLEVELAND | TX | $ 70,568 | $ 5,350 |
| 5049940101003997 | WOODVILLE | TX | $ 32,339 | $ 2,452 |
| 5049940101004541 | SAN ANTONIO | TX | $ 140,237 | $ 10,631 |
| 5049940101004693 | SAN ANTONIO | TX | $ 253,685 | $ 19,231 |
| 5049940101004798 | FLORESVILLE | TX | $ 83,712 | $ 6,346 |
| 5049940101004838 | BORGER | TX | $ 49,976 | $ 3,789 |
| 5049940101005175 | LAKEWAY | TX | $ 15,979 | $ 1,211 |
| 5049940101005248 | SAN ANTONIO | TX | $ 30,730 | $ 2,330 |
| 5049940101005319 | GRAND PRAIRIE | TX | $ 224,424 | $ 17,013 |
| 5049940101005500 | HOUSTON | TX | $ 40,983 | $ 3,107 |
| 5049940101005696 | SAN MARCOS | TX | $ 210,985 | $ 15,994 |
| 5049940101005698 | EASTLAND | TX | $ 76,758 | $ 5,819 |
| 5049940101005710 | WESLACO | TX | $ 465,925 | $ 35,321 |
| 5049940101005812 | PARIS | TX | $ 62,698 | $ 4,753 |
| 5049940101006942 | SPRING | TX | $ 234,395 | $ 17,769 |
| 5049940101007005 | PASADENA | TX | $ 96,789 | $ 7,337 |
| 5049940101007141 | CENTER | TX | $ 18,621 | $ 1,412 |
| 5049940101007148 | LEAGUE CITY | TX | $ 4,042 | $ 306 |
| 5049940101007176 | DALHART | TX | $ 76,038 | $ 5,764 |
| 5049940101007178 | SUGAR LAND | TX | $ 210,729 | $ 15,975 |
| 5049940101007263 | VERNON | TX | $ 50,225 | $ 3,807 |
| 5049940101007379 | CYPRESS | TX | $ 405,388 | $ 30,731 |
| 5049940101007389 | HUMBLE | TX | $ 262,528 | $ 19,902 |
| 5049940101007391 | CONROE | TX | $ 375,480 | $ 28,464 |
| 5049940101007489 | BLANCO | TX | $ 46,147 | $ 3,498 |
| 5049940101007567 | CEDAR HILL | TX | $ 223,783 | $ 16,964 |
| 5049940101007686 | DALLAS | TX | $ 68,117 | $ 5,164 |
| 5049940101007697 | DRIPPING SPRINGS | TX | $ 15,108 | $ 1,145 |
| 5049940101007729 | VICTORIA | TX | $ 69,790 | $ 5,291 |
| 5049940101007787 | CLEVELAND | TX | $ 288,128 | $ 21,842 |
| 5049940101007907 | ROUND ROCK | TX | $ 59,390 | $ 4,502 |
| 5049940101009099 | HOUSTON | TX | $ 53,709 | $ 4,072 |
| 5049940101009201 | CARROLLTON | TX | $ 79,696 | $ 6,042 |
| 5049940101009258 | DUMAS | TX | $ 25,227 | $ 1,912 |
| 5049940101009591 | LAMESA | TX | $ 9,245 | $ 701 |
| 5049940101009776 | HEREFORD | TX | $ 43,025 | $ 3,262 |
| 5049940101009935 | PLANO | TX | $ 57,300 | $ 4,344 |
| 5049940102001017 | HOUSTON | TX | $ 3,165,677 | $ 239,982 |
| 5049940102001027 | EL PASO | TX | $ 3,176,980 | $ 240,838 |
| 5049940102001057 | DALLAS | TX | $ 3,706,786 | $ 281,002 |
| 5049940102001067 | HOUSTON | TX | $ 4,482,147 | $ 339,780 |
| 5049940102001076 | LEWISVILLE | TX | $ 2,856,716 | $ 216,560 |
| 5049940102001080 | FRISCO | TX | $ 2,948,538 | $ 223,521 |
| 5049940102001087 | HOUSTON | TX | $ 3,410,996 | $ 258,579 |
| 5049940102001097 | SAN ANTONIO | TX | $ 6,311,419 | $ 478,452 |

| Purchase Location / Store Number | Store/Delivery City | Store/Delivery State | Net Bad Debt for the Claim | Tax Claimed |
|---|---|---|---|---|
| 5049940102001127 | HOUSTON | TX | $ 3,918,033 | $ 297,016 |
| 5049940102001137 | AUSTIN | TX | $ 2,798,310 | $ 212,132 |
| 5049940102001167 | SAN ANTONIO | TX | $ 4,550,892 | $ 344,991 |
| 5049940102001176 | PASADENA | TX | $ 3,515,146 | $ 266,474 |
| 5049940102001177 | ARLINGTON | TX | $ 590,064 | $ 44,731 |
| 5049940102001187 | MESQUITE | TX | $ 7,582,364 | $ 574,799 |
| 5049940102001197 | HOUSTON | TX | $ 3,850,237 | $ 291,876 |
| 5049940102001207 | RICHARDSON | TX | $ 1,852,200 | $ 140,410 |
| 5049940102001217 | CORPUS CHRISTI | TX | $ 4,624,244 | $ 350,552 |
| 5049940102001227 | DALLAS | TX | $ 4,216,103 | $ 319,612 |
| 5049940102001237 | HOUSTON | TX | $ 1,422,834 | $ 107,861 |
| 5049940102001247 | LUBBOCK | TX | $ 2,748,162 | $ 208,331 |
| 5049940102001257 | FRIENDSWOOD | TX | $ 4,024,456 | $ 305,083 |
| 5049940102001267 | FORT WORTH | TX | $ 3,131,612 | $ 237,399 |
| 5049940102001277 | SAN ANTONIO | TX | $ 5,826,845 | $ 441,718 |
| 5049940102001297 | HURST | TX | $ 4,348,704 | $ 329,664 |
| 5049940102001307 | ABILENE | TX | $ 2,124,114 | $ 161,023 |
| 5049940102001317 | EL PASO | TX | $ 6,552,480 | $ 496,726 |
| 5049940102001327 | BAYTOWN | TX | $ 2,882,348 | $ 218,503 |
| 5049940102001337 | PLANO | TX | $ 2,993,576 | $ 226,935 |
| 5049940102001357 | AUSTIN | TX | $ 2,848,828 | $ 215,962 |
| 5049940102001367 | WACO | TX | $ 3,164,912 | $ 239,924 |
| 5049940102001377 | HOUSTON | TX | $ 4,652,275 | $ 352,677 |
| 5049940102001387 | AMARILLO | TX | $ 2,877,256 | $ 218,117 |
| 5049940102001397 | ODESSA | TX | $ 1,714,514 | $ 129,973 |
| 5049940102001407 | BEAUMONT | TX | $ 2,546,937 | $ 193,077 |
| 5049940102001417 | HUMBLE | TX | $ 3,894,772 | $ 295,252 |
| 5049940102001427 | SAN ANTONIO | TX | $ 3,747,160 | $ 284,062 |
| 5049940102001437 | ARLINGTON | TX | $ 5,334,870 | $ 404,422 |
| 5049940102001447 | FORT WORTH | TX | $ 3,087,731 | $ 234,073 |
| 5049940102001457 | THE WOODLANDS | TX | $ 2,580,416 | $ 195,615 |
| 5049940102001487 | CEDAR PARK | TX | $ 2,399,194 | $ 181,877 |
| 5049940102001629 | PHARR | TX | $ 58,613 | $ 4,443 |
| 5049940102001847 | PHARR | TX | $ 2,399,834 | $ 181,925 |
| 5049940102002077 | TYLER | TX | $ 3,254,291 | $ 246,699 |
| 5049940102002097 | AUSTIN | TX | $ 1,231,459 | $ 93,354 |
| 5049940102002147 | TYLER | TX | $ 2,036,398 | $ 154,374 |
| 5049940102002177 | PARIS | TX | $ 1,481,269 | $ 112,291 |
| 5049940102002197 | IRVING | TX | $ 1,682,928 | $ 127,578 |
| 5049940102002227 | WICHITA FALLS | TX | $ 1,252,367 | $ 94,939 |
| 5049940102002247 | TEXAS CITY | TX | $ 4,456,140 | $ 337,808 |
| 5049940102002487 | LAKE JACKSON | TX | $ 2,607,612 | $ 197,676 |
| 5049940102002497 | LAREDO | TX | $ 3,371,334 | $ 255,572 |
| 5049940102002507 | KILLEEN | TX | $ 6,393,208 | $ 484,652 |
| 5049940102002517 | BROWNSVILLE | TX | $ 1,070,359 | $ 81,141 |
| 5049940102002537 | MCALLEN | TX | $ 2,719,768 | $ 206,178 |

| Purchase Location / Store Number | Store/Delivery City | Store/Delivery State | Net Bad Debt for the Claim | Tax Claimed |
|---|---|---|---|---|
| 5049940102002547 | SAN ANGELO | TX | $ 1,470,514 | $ 111,476 |
| 5049940102002557 | HARLINGEN | TX | $ 2,015,948 | $ 152,824 |
| 5049940102002567 | COLLEGE STATION | TX | $ 1,939,636 | $ 147,039 |
| 5049940102002577 | LONGVIEW | TX | $ 1,344,345 | $ 101,911 |
| 5049940102002587 | TEXARKANA | TX | $ 1,488,939 | $ 112,872 |
| 5049940102002617 | LUFKIN | TX | $ 1,439,562 | $ 109,129 |
| 5049940102002627 | DENTON | TX | $ 1,630,503 | $ 123,604 |
| 5049940102002637 | VICTORIA | TX | $ 1,270,059 | $ 96,280 |
| 5049940102002657 | SHERMAN | TX | $ 1,076,927 | $ 81,639 |
| 5049940102002876 | PORT ARTHUR | TX | $ 67,763 | $ 5,137 |
| 5049940102007935 | MIDLAND | TX | $ 430,887 | $ 32,664 |
| 5049940102007941 | MCALLEN | TX | $ 144,355 | $ 10,943 |
| 5049940102007942 | EL PASO | TX | $ 15,423 | $ 1,169 |
| 5049940102007944 | EL PASO | TX | $ 80,344 | $ 6,091 |
| 5049940102007945 | EL PASO | TX | $ 76,805 | $ 5,822 |
| 5049940102007953 | EL PASO | TX | $ 8,803 | $ 667 |
| 5049940102008033 | EL PASO | TX | $ 136,233 | $ 10,328 |
| 5049940102008208 | EL PASO | TX | $ 79,215 | $ 6,005 |
| 5049940102009911 | MISSION | TX | $ 134,719 | $ 10,213 |
| 5049940102009917 | ROUND ROCK | TX | $ 169 | $ 13 |
| 5049940103005054 | MCALLEN | TX | $ 62,164 | $ 4,712 |
| 5049940103005067 | ROUND ROCK | TX | $ 287,432 | $ 21,789 |
| 5049940103005086 | DALLAS | TX | $ 502,711 | $ 38,109 |
| 5049940103005087 | PASADENA | TX | $ 327,722 | $ 24,844 |
| 5049940103005156 | HOUSTON | TX | $ 49,310 | $ 3,738 |
| 5049940103005176 | KINGWOOD | TX | $ 15,921 | $ 1,207 |
| 5049940103005195 | RICHMOND | TX | $ 301,282 | $ 22,839 |
| 5049940103005196 | HOUSTON | TX | $ 388,313 | $ 29,437 |
| 5049940103005236 | HOUSTON | TX | $ 2,050 | $ 155 |
| 5049940103005237 | SPRING | TX | $ 51,928 | $ 3,937 |
| 5049940103005246 | HOUSTON | TX | $ 824,547 | $ 62,507 |
| 5049940103005247 | HOUSTON | TX | $ 419,164 | $ 31,776 |
| 5049940103005276 | KATY | TX | $ 121,359 | $ 9,200 |
| 5049940103005457 | SUGAR LAND | TX | $ 400,061 | $ 30,328 |
| 5049940103005688 | HOUSTON | TX | $ 117,526 | $ 8,909 |
| 5049940103005736 | HOUSTON | TX | $ 194,306 | $ 14,730 |
| 5049940104007107 | PARIS | TX | $ 29,525 | $ 2,238 |
| 5049940104007118 | SAN ANTONIO | TX | $ 13,726 | $ 1,041 |
| 5049940104007127 | GARLAND | TX | $ 144,129 | $ 10,926 |
| 5049940104007167 | THE WOODLANDS | TX | $ 67,294 | $ 5,101 |
| 5049940104007247 | FARMERS BRNCH | TX | $ 101,903 | $ 7,725 |
| 5049940104007257 | LONGVIEW | TX | $ 42,029 | $ 3,186 |
| 5049940104007265 | WICHITA FALLS | TX | $ 39,198 | $ 2,972 |
| 5049940104007275 | SHERMAN | TX | $ 52,873 | $ 4,008 |
| 5049940104007320 | COLLEGE STATION | TX | $ 280,094 | $ 21,233 |
| 5049940104007335 | ABILENE | TX | $ 68,462 | $ 5,190 |

| Purchase Location / Store Number | Store/Delivery City | Store/Delivery State | Net Bad Debt for the Claim | Tax Claimed |
|---|---|---|---|---|
| 5049940104007337 | GARLAND | TX | $ 144,214 | $ 10,933 |
| 5049940104007345 | AMARILLO | TX | $ 51,811 | $ 3,928 |
| 5049940104007766 | KERRVILLE | TX | $ 22,499 | $ 1,706 |
| 5049940104007817 | TEXARKANA | TX | $ 66,313 | $ 5,027 |
| 5049940104007851 | LAREDO | TX | $ 52,064 | $ 3,947 |
| 5049940104007901 | DALLAS | TX | $ 1,227,659 | $ 93,066 |
| 5049940104007926 | HOUSTON | TX | $ 389 | $ 29 |
| 5049940104007995 | HOUSTON | TX | $ 746,022 | $ 56,554 |
| 5049940104008107 | DALLAS | TX | $ 1,043,981 | $ 79,141 |
| 5049940104008127 | FORT WORTH | TX | $ 133,750 | $ 10,139 |
| 5049940104008137 | HOUSTON | TX | $ 98,317 | $ 7,453 |
| 5049940104008147 | BEAUMONT | TX | $ 1,034,974 | $ 78,459 |
| 5049940104008157 | HOUSTON | TX | $ 226,872 | $ 17,199 |
| 5049940104008159 | SAN ANTONIO | TX | $ 1,631 | $ 124 |
| 5049940104008167 | GARLAND | TX | $ 148,456 | $ 11,254 |
| 5049940104008177 | PFLUGERVILLE | TX | $ 97,254 | $ 7,373 |
| 5049940104008187 | HOUSTON | TX | $ 178,582 | $ 13,538 |
| 5049940104008207 | EL PASO | TX | $ 88,427 | $ 6,703 |
| 5049940104008217 | HARLINGEN | TX | $ 223,053 | $ 16,909 |
| 5049940104008227 | VICTORIA | TX | $ 1,378,386 | $ 104,492 |
| 5049940104008237 | FORT WORTH | TX | $ 62,983 | $ 4,775 |
| 5049940104008247 | DALLAS | TX | $ 201,845 | $ 15,301 |
| 5049940104008267 | LAKE JACKSON | TX | $ 109,024 | $ 8,265 |
| 5049940104008287 | DICKINSON | TX | $ 143,563 | $ 10,883 |
| 5049940104008342 | LUBBOCK | TX | $ 8,770 | $ 665 |
| 5049940104008347 | BELTON | TX | $ 104,818 | $ 7,946 |
| 5049940104008377 | HOUSTON | TX | $ 170,017 | $ 12,889 |
| 5049940104008391 | SAN ANTONIO | TX | $ 18,447 | $ 1,398 |
| 5049940104008397 | ARLINGTON | TX | $ 120,826 | $ 9,160 |
| 5049940104008467 | DALLAS | TX | $ 2,293,431 | $ 173,859 |
| 5049940104008491 | CORPUS CHRISTI | TX | $ 51,138 | $ 3,877 |
| 5049940104008565 | ROUND ROCK | TX | $ 1,790 | $ 136 |
| 5049940104008647 | HOUSTON | TX | $ 52,907 | $ 4,011 |
| 5049940104008735 | HUMBLE | TX | $ 161,743 | $ 12,261 |
| 5049940104008876 | LEWISVILLE | TX | $ 1,932 | $ 146 |
| 5049940104008907 | PLANO | TX | $ 1,218 | $ 92 |
| 5049940104008946 | GARLAND | TX | $ 35,950 | $ 2,725 |
| 5049940104009142 | GARLAND | TX | $ 127,176 | $ 9,641 |
| 5049940104009302 | GARLAND | TX | $ 11,136 | $ 844 |
| 5049940104009422 | ROUND ROCK | TX | $ 1,100 | $ 83 |
| 5049940104009510 | HOUSTON | TX | $ 5,977 | $ 453 |
| 5049940104009524 | SAN ANTONIO | TX | $ 2,333 | $ 177 |
| 5049940104009580 | DALLAS | TX | $ 2,800 | $ 212 |
| 5049940104009710 | MESQUITE | TX | $ 98,772 | $ 7,488 |
| 5049940104009712 | FT WORTH | TX | $ 81,576 | $ 6,184 |
| 5049940104009717 | HOUSTON | TX | $ 1,673,978 | $ 126,900 |

6

| Purchase Location / Store Number | Store/Delivery City | Store/Delivery State | Net Bad Debt for the Claim | | Tax Claimed | |
|---|---|---|---|---|---|---|
| 5049940104009877 | GARLAND | TX | $ | 29,351 | $ | 2,225 |
| 5049940104009902 | SAN ANTONIO | TX | $ | 89,764 | $ | 6,805 |
| 5049940104009903 | SHERMAN | TX | $ | 8,728 | $ | 662 |
| 5049940104009904 | SAN ANTONIO | TX | $ | 8,915 | $ | 676 |
| 5049940105001916 | SAN ANTONIO | TX | $ | 178,994 | $ | 13,569 |
| 5049940105004025 | SAN ANTONIO | TX | $ | 70,816 | $ | 5,368 |
| 5049940105004046 | MCALLEN | TX | $ | 31,145 | $ | 2,361 |
| 5049940105004057 | AMARILLO | TX | $ | 633,041 | $ | 47,989 |
| 5049940105004068 | HOUSTON | TX | $ | 203,073 | $ | 15,394 |
| 5049940105004096 | HOUSTON | TX | $ | 17,302 | $ | 1,312 |
| 5049940105004486 | WEBSTER | TX | $ | 487,318 | $ | 36,942 |
| 5049940105004596 | CARROLLTON | TX | $ | 14,875 | $ | 1,128 |
| 5049940105004617 | GRAPEVINE | TX | $ | 600,501 | $ | 45,522 |
| 5049940105004650 | FORT WORTH | TX | $ | 79,415 | $ | 6,020 |
| 5049940105004831 | CARROLLTON | TX | $ | 36,135 | $ | 2,739 |
| 5049940105005314 | MESQUITE | TX | $ | 79,680 | $ | 6,040 |
| 5049940105005409 | DALLAS | TX | $ | 27,327 | $ | 2,072 |
| 5049940105005603 | ALLEN | TX | $ | 79,689 | $ | 6,041 |
| 5049940105005653 | ARLINGTON | TX | $ | 5,338 | $ | 405 |
| 5049940105007487 | SPRING | TX | $ | 105,303 | $ | 7,983 |
| 5049940105007631 | AUSTIN | TX | $ | 134,935 | $ | 10,229 |
| 5049940105007818 | SAN ANTONIO | TX | $ | 125,870 | $ | 9,542 |
| 5049940105007920 | ARLINGTON | TX | $ | 63,350 | $ | 4,802 |
| 5049940105009284 | SPRING | TX | $ | 85,057 | $ | 6,448 |
| 5049940105009411 | FORT WORTH | TX | $ | 167,695 | $ | 12,713 |
| 5049940105009481 | AUSTIN | TX | $ | 126,502 | $ | 9,590 |
| 5049940105009796 | HOUSTON | TX | $ | 77,581 | $ | 5,881 |
| 5049940105009897 | FARMERS BRANCH | TX | $ | 104,513 | $ | 7,923 |
| 5049940106002332 | ALLEN | TX | $ | 57,543 | $ | 4,362 |
| 5049940106002612 | SAN ANTONIO | TX | $ | 290,429 | $ | 22,017 |
| 5049940106002699 | SAN ANTONIO | TX | $ | 318,904 | $ | 24,175 |
| 5049940106002757 | FRISCO | TX | $ | 323,440 | $ | 24,519 |
| 5049940106006036 | FORT WORTH | TX | $ | 279,491 | $ | 21,187 |
| 5049940106006037 | AUSTIN | TX | $ | 389,918 | $ | 29,559 |
| 5049940106006059 | LEWISVILLE | TX | $ | 250,145 | $ | 18,963 |
| 5049940106006094 | HURST | TX | $ | 594,355 | $ | 45,056 |
| 5049940106006103 | LUFKIN | TX | $ | 327,347 | $ | 24,815 |
| 5049940106006105 | DALLAS | TX | $ | 294,314 | $ | 22,311 |
| 5049940106006136 | LUBBOCK | TX | $ | 609,766 | $ | 46,225 |
| 5049940106006167 | HUMBLE | TX | $ | 785,211 | $ | 59,525 |
| 5049940106006174 | SAN ANTONIO | TX | $ | 346,061 | $ | 26,234 |
| 5049940106006197 | EL PASO | TX | $ | 326,611 | $ | 24,760 |
| 5049940106006222 | PLANO | TX | $ | 286,041 | $ | 21,684 |
| 5049940106006231 | HOUSTON | TX | $ | 224,020 | $ | 16,982 |
| 5049940106006247 | HOUSTON | TX | $ | 275,620 | $ | 20,894 |
| 5049940106006329 | ODESSA | TX | $ | 159,342 | $ | 12,079 |

| Purchase Location / Store Number | Store/Delivery City | Store/Delivery State | Net Bad Debt for the Claim | Tax Claimed |
|---|---|---|---|---|
| 5049940106006339 | HOUSTON | TX | $ 584,456 | $ 44,306 |
| 5049940106006349 | LAKE JACKSON | TX | $ 376,565 | $ 28,546 |
| 5049940106006367 | HOUSTON | TX | $ 75,076 | $ 5,691 |
| 5049940106006369 | WACO | TX | $ 304,264 | $ 23,065 |
| 5049940106006379 | SAN ANTONIO | TX | $ 238,994 | $ 18,118 |
| 5049940106006397 | AUSTIN | TX | $ 298,918 | $ 22,660 |
| 5049940106006409 | ABILENE | TX | $ 660,413 | $ 50,064 |
| 5049940106006427 | FORT WORTH | TX | $ 311,249 | $ 23,595 |
| 5049940106006429 | SAN ANTONIO | TX | $ 606,306 | $ 45,962 |
| 5049940106006459 | DALLAS | TX | $ 223,886 | $ 16,972 |
| 5049940106006469 | CORPUS CHRISTI | TX | $ 246,809 | $ 18,710 |
| 5049940106006470 | IRVING | TX | $ 293,904 | $ 22,280 |
| 5049940106006499 | WICHITA FALLS | TX | $ 461,674 | $ 34,998 |
| 5049940106006519 | PASADENA | TX | $ 220,896 | $ 16,746 |
| 5049940106006529 | AMARILLO | TX | $ 436,228 | $ 33,069 |
| 5049940106006549 | COLLEGE STATION | TX | $ 666,795 | $ 50,548 |
| 5049940106006559 | KILLEEN | TX | $ 286,555 | $ 21,723 |
| 5049940106006563 | LAREDO | TX | $ 276,755 | $ 20,980 |
| 5049940106006577 | PARIS | TX | $ 231,756 | $ 17,569 |
| 5049940106006634 | CEDAR PARK | TX | $ 529,548 | $ 40,144 |
| 5049940106006644 | HOUSTON | TX | $ 619,532 | $ 46,965 |
| 5049940106006647 | BROWNSVILLE | TX | $ 370,773 | $ 28,107 |
| 5049940106006648 | MCALLEN | TX | $ 113,584 | $ 8,611 |
| 5049940106006649 | HOUSTON | TX | $ 164,501 | $ 12,470 |
| 5049940106006650 | SAN ANGELO | TX | $ 241,713 | $ 18,324 |
| 5049940106006664 | TEXAS CITY | TX | $ 187,226 | $ 14,193 |
| 5049940106006669 | HARLINGEN | TX | $ 484,172 | $ 36,704 |
| 5049940106006678 | DENTON | TX | $ 100,228 | $ 7,598 |
| 5049940106006699 | TYLER | TX | $ 559,584 | $ 42,421 |
| 5049940106006704 | VICTORIA | TX | $ 119,066 | $ 9,026 |
| 5049940106006709 | ARLINGTON | TX | $ 150,924 | $ 11,441 |
| 5049940106006714 | PORT ARTHUR | TX | $ 136,731 | $ 10,365 |
| 5049940106006739 | RICHARDSON | TX | $ 388,957 | $ 29,486 |
| 5049940106006749 | MIDLAND | TX | $ 255,574 | $ 19,374 |
| 5049940106006797 | TEXARKANA | TX | $ 844,194 | $ 63,996 |
| 5049940106006817 | BEAUMONT | TX | $ 207,997 | $ 15,768 |
| 5049940106006847 | MESQUITE | TX | $ 273,061 | $ 20,700 |
| 5049940106006874 | AUSTIN | TX | $ 279,589 | $ 21,195 |
| 5049940106006877 | SAN ANTONIO | TX | $ 283,689 | $ 21,506 |
| 5049940106006879 | HOUSTON | TX | $ 271,948 | $ 20,616 |
| 5049940106006899 | FORT WORTH | TX | $ 341,187 | $ 25,864 |
| 5049940106006929 | BAYTOWN | TX | $ 227,536 | $ 17,249 |
| 5049940106006949 | FRIENDSWOOD | TX | $ 371,096 | $ 28,132 |
| 5049940106006957 | THE WOODLANDS | TX | $ 175,857 | $ 13,331 |
| 5049940106007479 | SHERMAN | TX | $ 21,570 | $ 1,635 |
| 5049940107004986 | LONGVIEW | TX | $ 10,271 | $ 779 |

| Purchase Location / Store Number | Store/Delivery City | Store/Delivery State | Net Bad Debt for the Claim | | Tax Claimed | |
|---|---|---|---|---|---|---|
| 5049940108001847 | CORPUS CHRISTI | TX | $ | 702,773 | $ | 53,275 |
| 5049940109001902 | HOUSTON | TX | $ | 254,703 | $ | 19,308 |
| 5049940109001914 | AUSTIN | TX | $ | 260,918 | $ | 19,780 |
| 5049940109001928 | ARLINGTON | TX | $ | 15,479 | $ | 1,173 |
| 5049940109001931 | AUSTIN | TX | $ | 32,296 | $ | 2,448 |
| 5049940112007051 | HOUSTON | TX | $ | 47,923 | $ | 3,633 |
| 5049940112007934 | N RICHLND HLS | TX | $ | 13,527 | $ | 1,025 |
| 5049940112007992 | STAFFORD | TX | $ | 127,894 | $ | 9,695 |
| 5049940112009710 | HOUSTON | TX | $ | 2,951 | $ | 224 |
| 5049940112009712 | GARLAND | TX | $ | 7,445 | $ | 564 |
| 5049940112009717 | SAN ANTONIO | TX | $ | 3,030 | $ | 230 |
| 5049940112009903 | AUSTIN | TX | $ | 715,839 | $ | 54,266 |
| 5049940201001201 | MISSOURI CITY | TX | $ | 606,405 | $ | 45,970 |
| 5049940201001203 | SAN ANTONIO | TX | $ | 461,426 | $ | 34,979 |
| 5049940201001214 | MISSION | TX | $ | 127,681 | $ | 9,679 |
| 5049940201001215 | PORTLAND | TX | $ | 566,055 | $ | 42,911 |
| 5049940201001242 | SWEETWATER | TX | $ | 289,571 | $ | 21,952 |
| 5049940201002876 | TEXARKANA | TX | $ | 175,026 | $ | 13,268 |
| 5049940201007841 | MCALLEN | TX | $ | 76,127 | $ | 5,771 |
| 5049940201007927 | MCALLEN | TX | $ | 540,858 | $ | 41,001 |
| 5049940201007932 | CARROLLTON | TX | $ | 671,136 | $ | 50,877 |
| 5049940201007935 | ABILENE | TX | $ | 704,357 | $ | 53,395 |
| 5049940201007941 | BROWNSVILLE | TX | $ | 687,937 | $ | 52,151 |
| 5049940201007942 | EL PASO | TX | $ | 479,104 | $ | 36,320 |
| 5049940201007944 | EL PASO | TX | $ | 566,945 | $ | 42,979 |
| 5049940201007945 | EL PASO | TX | $ | 408,656 | $ | 30,979 |
| 5049940201007953 | EL PASO | TX | $ | 427,280 | $ | 32,391 |
| 5049940201007967 | EL PASO | TX | $ | 462,326 | $ | 35,048 |
| 5049940201007973 | EL PASO | TX | $ | 730,919 | $ | 55,409 |
| 5049940201007975 | HARLINGEN | TX | $ | 817,048 | $ | 61,938 |
| 5049940201007976 | KILLEEN | TX | $ | 422,203 | $ | 32,006 |
| 5049940201007980 | LAREDO | TX | $ | 599,165 | $ | 45,421 |
| 5049940201007982 | LONGVIEW | TX | $ | 313,874 | $ | 23,794 |
| 5049940201007994 | LUBBOCK | TX | $ | 366,999 | $ | 27,821 |
| 5049940401061392 | HOUSTON | TX | $ | 80,839 | $ | 6,128 |
| 5049940401061416 | CARROLLTON | TX | $ | 28,151 | $ | 2,134 |
| 5049940401061497 | AUSTIN | TX | $ | 2,919 | $ | 221 |
| 5049940401061520 | SAN ANTONIO | TX | $ | 1,842 | $ | 140 |
| 5049940401061596 | LUFKIN | TX | $ | 26,261 | $ | 1,991 |
| 5049940401095257 | MCALLEN | TX | $ | 27,409 | $ | 2,078 |
| 5049940401095272 | MIDLOTHIAN | TX | $ | 3,982 | $ | 302 |
| 5049940401095273 | CARROLLTON | TX | $ | 541 | $ | 41 |
| 5049940401095443 | HOUSTON | TX | $ | 3,361 | $ | 255 |
| 5049940401095450 | CARROLLTON | TX | $ | 25,698 | $ | 1,948 |
| 5049940401095487 | SAN ANTONIO | TX | $ | 5,376 | $ | 408 |
| 5049940401095488 | ALLEN | TX | $ | 4,597 | $ | 349 |

| Purchase Location / Store Number | Store/Delivery City | Store/Delivery State | Net Bad Debt for the Claim | Tax Claimed |
|---|---|---|---|---|
| 5049940401095489 | HOUSTON | TX | $ 18,847 | $ 1,429 |
| 5049940401095490 | HOUSTON | TX | $ 4,345 | $ 329 |
| 5049940401095503 | HOUSTON | TX | $ 673 | $ 51 |
| 5049940401095519 | MIDLOTHIAN | TX | $ 4,356 | $ 330 |
| 5049940401095654 | HOUSTON | TX | $ 115 | $ 9 |
| 5049940401095682 | SAN ANTONIO | TX | $ 123 | $ 9 |
| 5049940401095806 | HOUSTON | TX | $ 278 | $ 21 |
| 5049940401095901 | HOUSTON | TX | $ 27,183 | $ 2,061 |
| 5049940401095907 | HOUSTON | TX | $ 14,831 | $ 1,124 |
| 5049940401095956 | COMFORT | TX | $ 64,203 | $ 4,867 |
| 5049940401095994 | FARMERS BRANCH | TX | $ 177,855 | $ 13,483 |
| 5049940401096160 | RICHARDSON | TX | $ 63,279 | $ 4,797 |
| 5049940401096173 | LUBBOCK | TX | $ 255 | $ 19 |
| 5049940401096175 | FRISCO | TX | $ 38,072 | $ 2,886 |
| 5049940401096177 | SAN ANTONIO | TX | $ 818 | $ 62 |
| 5049940401096179 | GEORGETOWN | TX | $ 18,840 | $ 1,428 |
| 5049940401096191 | GEORGETOWN | TX | $ 19,908 | $ 1,509 |
| 5049940401096192 | HOUSTON | TX | $ 42,817 | $ 3,246 |
| 5049940401096208 | LAMARQUE | TX | $ 56,257 | $ 4,265 |
| 5049940401096348 | PLANO | TX | $ 48,810 | $ 3,700 |
| 5049940401096349 | STAFFORD | TX | $ 52 | $ 4 |
| 5049940401096350 | STAFFORD | TX | $ 1,776 | $ 135 |
| 5049940403095450 | MCKINNEY | TX | $ 151 | $ 11 |
| 5049940403096307 | PLANO | TX | $ 105 | $ 8 |
| Remote Sales (i.e., sears.com) to TX Cardholders | VARIOUS | TX | $ 57,788,415 | $ 4,324,752 |

Sears Allowed Credits/Refund Claims- Tax only (Credit Card Bad Debt only)

|  |  |  |  |  |
|---|---|---|---|---|
|  | 1st Period |  | $ 179,140,664 | $ 13,580,189 |
|  | 2nd Period |  | $ 101,787,481 | $ 7,716,245 |
|  | 3rd Period |  | $ 49,284,897 | $ 3,501,628 |
|  | Grand Total |  | $ 330,213,042 | $ 24,798,061 |

Sears Allowed Credits/Refund Claims- Tax only (Sears other Bad Debt only)

|  |  |  |  |  |
|---|---|---|---|---|
|  | 1st Period |  | $ 4,101,897 | $ 310,954 |
|  | 2nd Period |  | $ 3,704,039 | $ 280,794 |
|  | 3rd Period |  | $ 830,254 | $ 58,989 |
|  | Grand Total |  | $ 8,636,189 | $ 650,736 |

Sears Allowed Credits/Refund Claims- Tax only (Sears Credit Card and other Bad Debt only)

|  |  |  |  |  |
|---|---|---|---|---|
|  | 1st Period |  | $ 183,242,560 | $ 13,891,143 |
|  | 2nd Period |  | $ 105,491,520 | $ 7,997,038 |
|  | 3rd Period |  | $ 50,115,151 | $ 3,560,616 |
|  | Grand Total |  | $ 338,849,231 | $ 25,448,797 |