**HALPERIN BATTAGLIA BENZIJA, LLP**　　　　　　　　　Hearing Date: June 29, 2022
Alan D. Halperin, Esq.　　　　　　　　　　　　　　　　　Time: 10:00 a.m.
Donna H. Lieberman, Esq.　　　　　　　　　　Objection Date: June 15, 2022
40 Wall Street, 37th Floor　　　　　　　　　　　　　　　Time: 4:00 p.m.
New York, NY 10005
Telephone: (212) 765-9100
Email: ahalperin@halperinlaw.net
Email: dlieberman@halperinlaw.net

*Counsel to Relator Carl Ireland,*
*Administrator of the Estate of James Garbe*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
**In re**　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:　　**Chapter 11**
**SEARS HOLDINGS CORPORATION,** *et al.*,　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:　　**Case No. 18-23538 (RDD)**
　　　　　　Debtors.[1]　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:　　**(Jointly Administered)**
---------------------------------------------------------- x

**RELATOR CARL IRELAND'S LIMITED OBJECTION**
**TO THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY CODE**
**SECTIONS 105, 362, 364 AND 1142 AND BANKRUPTCY RULES 3020(d),**
**4001 AND 9014 AUTHORIZING ENTRY BY THE DEBTORS' ESTATES INTO**
**THE LITIGATION FUNDING ARRANGEMENT WITH BENCH WALK 21p, L.P.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); Max Serv, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (19870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC ,Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None): SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

{00330058.1 / 1274-001 }

1

Relator Carl Ireland, Administrator of the Estate of James Garbe ("Relator") by and through his undersigned counsel, submits this Limited Objection (the "Objection") to the Motion of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to Bankruptcy Code Sections 105, 362, 364 and 1142 and Bankruptcy Rules 3020(D), 4001 and 9014 Authorizing Entry by the Debtors' Estates Into the Litigation Funding Arrangement with Bench Walk 21p, L.P. (the "Motion"). In support of his Objection, Relator respectfully represents as follows:

## PRELIMINARY STATEMENT

As discussed below, the Creditors' Committee, on behalf of the Debtors' estates, is asking this Court to authorize litigation funding arrangements with respect to the most significant causes of action in these cases. The Creditors' Committee seeks approval of funding arrangements that will prime the senior liens of Relator and the United States of America (the "Mortgagees") and also grant the proposed litigation funder superpriority claims superior to the superpriority claims of the Mortgagees.

The Motion asserts that such action is appropriate because the Mortgagees are adequately protected, but the record in these cases, including information provided in the Declaration of Patrick Bartels (which accompanies the Motion) tells a different story. More than two and one-half years have passed since Plan confirmation, and the Plan Effective Date has not yet occurred. Preference recoveries have been significantly less than projected, the estimates about the values of other assets have proven overly optimistic, and periodic status reports filed by the Debtors show cash levels that are sometimes well below the amount of the Mortgagees' secured claims.

Relator therefore submits this Objection to the relief requested in the Motion. He characterizes the objection as "limited" because it focuses on two points, one of which (point (ii)

{00330058.1 / 1274-001 }

2

below) may be a matter of clarification rather than a disagreement between Relator and the Creditors' Committee.

(i) The liens of the Mortgagees should retain their senior position and not be primed by (or *pari passu*) with the liens of the proposed litigation funder. Likewise, the Mortgagees' superpriority administrative claim should remain senior to other claims, including those of the litigation funder.

(ii) The litigation funding term sheet discusses the rights of holders of *Allowed* Secured, Priority and Administrative Claims[2] to be paid (and the timing and priority of such payments). It must also recognize the rights of holders of Disputed Secured, Priority and Administrative Claims, including the claims of the Mortgagees, and provide for the reservation of funds for such Disputed Claims.

## DISCUSSION

**Background**

1. As the Court is aware from prior filings by Relator in these cases, as of the dates of the Debtors' bankruptcy filings, the Mortgagees together held a perfected first lien on real property owned by the Debtors, as well as the proceeds of that property. The value of the secured claim was approximately $18.2 million as of the deadlines for filing pre-petition claims in these cases, and claims were timely filed.

2. The rights of the Mortgagees and the priority of their secured claims were preserved in the DIP financing orders entered by this Court.[3] In addition, in the sale order approving the sale of the Debtors' operating business, the Court granted the Mortgagees a lien against the sale proceeds of the property (and did not except the Carve-Out from the scope of the

---

[2] Capitalized terms used but not defined in this Objection shall have the meanings ascribed to such terms in the Motion.

[3] *See* Senior DIP Order, D.N. 955, ¶ 65; Junior DIP Order, D.N. 1436, ¶ 64.

Mortgagees' liens), and a superpriority administrative expense claim against the Debtors as adequate protection to satisfy any diminution of the value of the replacement lien post-closing.[4]

3. Relator raised concerns at the confirmation hearing about the value of the Mortgagees' replacement lien and adequate protection, given the Debtors' lack of sufficient cash, the uncertain value of other assets, the continuing costs of the cases, and the Debtors' intent to make distributions to creditors junior in priority to the Mortgagees prior to the Effective Date of the Plan. At that time, the Court denied Relator's request that funds be segregated for the Mortgagees' secured claims, but granted the Mortgagees additional adequate protection, in the form of liens on Total Assets in the event of diminution in the value of the Mortgagees' replacement lien, without disturbing or in any way diminishing the rights granted to the Mortgagees under the sale order. (The Court also authorized the Mortgagees to re-visit the issue of segregating funds in the event of a change in circumstances.)[5] *See* Confirmation Order, D.N. 5370, ¶ 65.[6]

**Recent Developments**

4. It is now more than two and one-half years since the Confirmation Order was entered, and despite optimistic projections and predictions, not just at the confirmation hearing

---

[4] *See* Sale Order, D.N. 2507, ¶ 71.

[5] *See* Confirmation Order, D.N. 5370, ¶ 65. For ease of reference, the relevant paragraphs of the DIP Orders, the Sale Order and the Confirmation Order are provided on **Exhibit A** to this Objection.

[6] Relator filed a Motion for an Order (I) Determining the Value of Relator's Collateral as of the Sale of Such Collateral; (II) Determining the Amount of any Diminution in the Amount of the Sales Proceeds Allocable to Such Collateral After the Sale; (III) Directing Payment of Relator's Secured and Superpriority Administrative Claims; and (IV) Granting Related Relief [D.N.4931] in advance of the confirmation hearing. The Debtors filed an objection to that motion [D.N. 7471], Relator filed a reply [D.N. 7828] and the United States filed a joinder to certain of the relief requested by Relator [D.N.7836]. That matter is still pending, but has been adjourned without date.

but at subsequent hearings and status conferences, creditors are still waiting for the Effective Date of the Plan. The Mortgagees are in a uniquely difficult position, since they have been assured on multiple occasions that they are adequately protected because—thanks to their senior liens and superpriority administrative expense claims -- they are "first in line" for payment. However, the reality is something quite different. The Mortgagees have spent two and one-half years watching millions of dollars leave the bankruptcy estates to pay professionals and other holders of administrative claims, while they have been paid nothing, no funds have been reserved for them and the occurrence of the Effective Date remains uncertain.

5. The Debtors' most recent status reports were filed with this Court on October 19, 2021 and January 19, 2022. *See* D.N. 9979, 10240. The October report shows assets (cash, net of reserves[7], and an estimated value for "remaining" assets) of $55.7 million, and liabilities (amounts still owed on administrative, secured and priority claims, net of reserves, and estimated post-confirmation expenses through June 30, 2022) of $113.9 million, for a shortfall of $58.2 million.

6. The January 19, 2022 report evidences that the Debtors are moving farther from the Effective Date of their Plan rather than closer to it. In January, assets were valued at $59.5 million, and liabilities were estimated at $122.0 million, for a shortfall of $62.6 million. The January report showed more cash on hand than the October report ($30.6 million vs. $13.5

---

[7] It is difficult to ascertain what the Debtors mean by "reserves." Page 2 of the January 2022 status report (titled Claims Status Update) has a column for "Net Distribution/Reserves to Date" that shows "($53.2)" million for administrative claims, likely a reference to distributions made under the administrative claims settlement procedures. The chart estimates that allowed priority and secured claims (a category that Relator assumes includes the Mortgagees' secured and superpriority administrative claims), will total $52.9 million, but it does not appear that any funds are reserved for such claims. The next page of the status report (titled Recovery Analysis) shows total reserves as of 1/1/20222 as $3.9 million. D.N. 10240. It is not apparent from the status report whether or for whom those funds are being reserved, but the "reserve" of $3.9 million is certainly not a sufficient reserve for the Mortgagees' claims.

{00330058.1 / 1274-001 }

5

million), but a few weeks after the filing of the later report, notice of a fourth distribution to participants in the administrative claims settlement process was filed. D.N.10295. That notice stated that approximately $17.7 million would be distributed to certain holders of administrative claims in March of 2022, and consistent therewith, the quarterly report filed by the Debtors on April 29, 2022 shows that more than $17.4 million was disbursed by Debtor Sears, Roebuck and Company during the period February 27th and April 2nd 2022. D.N. 10416.

7. It appears clear that the Plan will not become effective unless and until the Debtors realize a substantial recovery from the causes of action that the Motion defines as the Jointly Asserted Causes of Action. The Confirmation Order (i) granted the Creditors' Committee joint standing with the Debtors to pursue these claims and causes of action, with the litigations to be overseen by the Litigation Designees, and (ii) $25 million to be set immediately aside by the Debtors for the prosecution of the Jointly Asserted Causes of Action. (That funding is defined in the Motion as the Initial Litigation Funding.)

**The Motion for Approval of Litigation Financing**

8. The Creditors' Committee has now filed the Motion, together with a term sheet and the declaration of Patrick Bartels (the "Bartels Declaration"), who states in his declaration that he has served as one of the Litigation Designees since the entry of the Confirmation Order. The Motion seeks entry of an order authorizing the Debtors' estates to enter into a litigation funding agreement with Bench Walk 21p, L.P. for up to $35 million in additional funding for the prosecution of the Jointly Asserted Causes of Action. The Motion notes that the Initial Litigation Funding has been exhausted.

9. The terms of the proposed litigation funding are summarized in the Motion and its accompanying term sheet. The terms of the proposed funding that are of concern to Relator are as follows:

- The term sheet provides that all recoveries from the Primary Causes of Action -- the Jointly Asserted Causes of Action -- will be applied in accordance with a negotiated waterfall, following the first draw on the litigation funding facility. Pursuant to the waterfall, the litigation funder receives first dollars, up to the amount of its capital outlay plus a 15% IRR. *The litigation funding will therefore both prime the liens of the Mortgagees and grant the funder a superpriority claim in a superior position to that of the Mortgagees. The amount due to the litigation funder as first dollars paid from the litigation recoveries may well be in excess of $40 million.*

- The term sheet contemplates the payment of Allowed Administrative Expense Claims, Allowed Secured Claims and Allowed Priority Claims in full, after the payments contemplated in paragraph (a) hereof, and after payments to Litigation Designees of the Designee Contingency Fee.[8] However, it does not make it clear whether funds will be reserved for disputed claims in those categories.

- The "Fees" section of the term sheet provides, with respect to legal fees that have accrued prior to approval of the litigation funding arrangements and are unpaid (which will be more than $7.5 million), that such fees will be paid from litigation funding immediately after the Effective Date. If there is not enough money remaining in the litigation funding facility to make that payment, such fees come after payment of Allowed Secured, Priority and Administrative Claims. *While this provision does not prime the Mortgagees' claims, it is noteworthy that the parties that negotiated the litigation funding made special provisions for the payment of their own already outstanding claims. Apparently, they are not willing to rely on the value of the litigations that are being funded.*

10. The Motion argues that the Mortgagees are adequately protected, and that priming their liens with respect to the litigation proceeds, *which the Motion itself characterizes as* "critical to satisfying outstanding administrative, priority and secured claims, consummating the

---

[8] The waterfall also puts the Designee Contingency Fee of the Litigation Designees ahead of the Mortgagees. This is of less concern to Relator because the Designee Contingency Fee is not payable unless and until the litigation proceeds are $150 million or more, and the calculation of the fee is based upon only the funds of $150 million and above. Relator believes if there is a litigation recovery of $150 million, then the Mortgagees' secured and superpriority claims should be adequately protected.

*Plan, and ultimately, ensuring a recovery in these Chapter 11 Cases for holders of general unsecured claims"* (Motion, ¶ 1) will not alter that. *See* Motion, ¶¶ 1, 57-62.

11. In support of the assertion that the Mortgagees are adequately protected, the Motion points to the remaining preference recoveries and the proceeds from the Jointly Asserted Causes of Action, while failing to address the fact that the amounts of these recoveries are entirely speculative. Moreover, to date, predictions and projections about the values of litigation and other assets in these cases have fallen far short of reality. In fact, a review of the status reports filed by the Debtors since the entry of the Confirmation Order evidences that the Debtors have not consistently held enough cash to pay the Mortgagees' secured claims.

12. The Motion also quotes from statements of the Court at the confirmation hearing of October 3, 2019 regarding the Court's analysis of the adequate protection issue on that date. However, the Bartels Declaration that accompanies and is intended to support the Motion clearly illustrates that the situation in October of 2019 is *not* the situation today. The declaration addresses the fact that in 2019, immediately prior to the confirmation hearing, it was contemplated that Primary Trust Litigation Counsel would be paid up to $10 million on an hourly rate basis, and that compensation would then change to a contingency fee arrangement. Mr. Bartels acknowledges that the Litigation Designees abandoned this approach, and explains that "[B]ecause of the changes since July 2019 – including, among other things, the expected length of time necessary to consummate the Plan and establish the Liquidating Trust (including as a result of a reduction in expected preference recoveries)," the contingency fee arrangement was no longer appropriate. Bartels Declaration, ¶ 21.

13. Relator very much recognizes the importance of the Jointly Asserted Causes of Action to creditors and to the consummation of the Plan, and his objection to the relief requested

{00330058.1 / 1274-001}

in the Motion is a narrow one. He objects to the priming of the Mortgagees' liens and the elevation of the proposed litigation funder's claims above the superpriority claims of the Mortgagees, and requests that the parties make it clear that funds will be reserved for holders of Disputed Secured, Priority and Administrative Claims (a category that currently includes the Mortgagees), as well as paid to holders of Allowed Secured, Priority and Administrative Claims.

14. The Motion and the Bartels Declaration assert that the Jointly Asserted Causes of Action are very valuable, and note that the amount sought in litigation is in excess of $2 billion. Relator notes, however, that for all of the confidence that parties closer to the Jointly Asserted Causes of Action than Relator express in the value of those claims, they want Relator and its co-mortgagee to assume the risk if those predictions are wrong. Primary Trust Litigation Counsel is unwilling to move forward with the contingency arrangements that were contemplated earlier in this process, while the proposed litigation funder is unwilling to have a secured claim of $18.2 million ahead of it in line for the proceeds of the litigation.

15. These positions undercut the movant's assertion that the Mortgagees are and will be adequately protected if this litigation financing is approved; neither Primary Litigation Trust counsel nor the litigation funder is willing to take the economic risk that they together seek to foist on Mortgagees who have been held in suspended animation for two and one- half years, while junior creditors have been paid and the Debtors' reported financial situation has deteriorated. Relator respectfully submits that the amount of the Mortgagees' secured claim -- $18.2 million – should be escrowed for the benefit of the Mortgagees, to insure that the proposed litigation funding does not do violence to the adequate protection granted to the Mortgagees.

## CONCLUSION

Relator respectfully requests that this Court deny the Motion, to the extent that it seeks authorization (i) to prime the liens of the Mortgagees and grant another party a superpriority claim that is senior to (or *pari passu* with) the superpriority administrative claim of the Mortgagees, or (ii) to permit the disbursement of litigation proceeds without reserving funds for the claims of the Mortgagees, and granting Relator such other relief as may be just and proper.

Dated: New York, New York
June 15, 2022

Respectfully submitted,

HALPERIN BATTAGLIA BENZIJA, LLP

*By: /s/Alan D. Halperin*
Alan D. Halperin, Esq.
Donna H. Lieberman, Esq.
40 Wall Street, 37th Floor
New York, NY 10005
Telephone: (212) 765-9100
ahalperin@halperinlaw.net
dlieberman@halperinlaw.net

*Counsel to Relator Carl Ireland, Administrator for the Estate of James Garbe*