**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | : | Case No. 18-23538 (RDD) |
| Debtors.[1] | : | (Jointly Administered) |
| Sears Holding Corp., *et al.* | : | |
| Plaintiffs | : | |
| vs. | : | |
| Edward Scott Lampert, *et al.* | : | |
| Defendants. | : | Consolidated at |
| | | Adv. Pro. 19-08250 (RDD) |
| Sears Holdings Corporation, *et al.*. | : | |
| Plaintiffs | : | |
| vs. | : | |
| Andrew H. Tisch, *et al.* | : | |
| Defendants. | : | |

**DECLARATION IN SUPPORT OF JOINT MOTION OF DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENTS, GRANTING CERTAIN RELATED RELIEF AND AUTHORIZING CERTAIN NONMATERIAL PLAN MODIFICATIONS IN FURTHERANCE OF THE EFFECTIVE DATE OF THE PLAN**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is c/o M-III Partners, LP, 1700 Broadway, 19th Floor, New York, NY 10019.

I, Patrick Bartels, make this declaration under 28 U.S.C. § 1746:

1. I submit this declaration (the "Declaration") in support of the *Joint Motion of Debtors and Official Committee of Unsecured Creditors for Entry of an Order Approving Settlement Agreements, Granting Certain Related Relief and Authorizing Certain Nonmaterial Plan Modifications in Furtherance of the Effective Date of the Plan* (the "Motion").[2]

2. Except as otherwise indicated, all statements and opinions in this Declaration are based on my personal experience and knowledge, my discussions with the other Litigation Designees and their professionals and my review of the relevant documents. If called to testify, I could and would testify competently to each of the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Litigation Designees.

3. I currently serve as a Litigation Designee and have acted in such capacity since the Court entered the Confirmation Order on October 15, 2019 authorizing the appointment of five Litigation Designees to oversee prosecution of the Jointly Asserted Cause of Action prior to the Effective Date. The Confirmation Order granted the Litigation Designees the "exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Jointly Asserted Causes of Action pursuant to the terms of the Liquidating Trust Agreement applicable to the Liquidating Trust Board (including, for the avoidance of doubt, section 6.5(c) of the Liquidating Trust Agreement)," including all claims and causes of action asserted in the Consolidated Adversary Proceeding. *See* Confirmation Order ¶ 18. Consistent with their mandate, the Litigation Designees have been involved in all aspects of the pursuit of the Consolidated Adversary Proceeding.

---

[2] Capitalized terms used in this Declaration but not otherwise defined have the meanings given to them in the Motion or the Settlement Agreement, as applicable.

4.  Since their appointment, the Litigation Designees have conducted regular meetings to discuss and strategize the prosecution of the Consolidated Adversary Proceeding. During this time, and as described at greater length in the Motion, the Litigation Designees worked with their professionals to (i) file an amended complaint in the Insider Action, (ii) identify Sears Holdings Corp.'s public shareholders and file a complaint against certain of those shareholders on behalf of the Debtors' estates and the Creditors' Committee, (iii) serve and largely complete document discovery in respect of the foregoing, (iv) retain and work with six testifying and consulting experts and (v) brief and argue myriad motions to dismiss filed by certain of the Defendants. Additionally, the Litigation Designees were closely involved in the effort to secure additional funding to prosecute the Consolidated Adversary Proceeding, as I described at greater length in my declaration filed with this Court on April 21, 2022 [ECF No. 10407].

5.  The Litigation Designees are parties to the Mediation that has led to the proposed Settlement Agreement and related resolutions. During the Mediation, the Litigation Designees engaged in countless conversations with their professionals, during which time they received updates on the Mediation and authorized their professionals to make certain proposals and counterproposals. On one occasion, I and two other Litigation Designees participated in a mediation session directly with the mediators.

6.  The Litigation Designees have carefully reviewed the terms of the Settlement Agreements and related resolutions. Following careful consideration, the Litigation Designees voted, in accordance with paragraphs 18 and 19 of the Confirmation Order and Section 10.8(a) of the Plan to approve the Settlement Agreements and related resolutions.[3]

---

[3] For the avoidance of doubt, all representations regarding the views of the Litigation Designees contained herein are based upon their determination, in accordance with the governance set forth in paragraphs 18 and 19 of the Confirmation Order and Section 10.8(a) of the Plan, to support entry into the Settlement Agreements and the bases for such determination.

7. In accordance with that determination, the Litigation Designees agree with the arguments asserted in the Motion in support of entry of an order approving the Settlement Agreements and related resolutions. In sum, although the Litigation Designees believe that the claims and causes of action asserted in the Consolidated Adversary Proceeding are meritorious and highly valuable, the defendants have asserted many defenses. The substantial risks—which risks, ultimately, are borne by creditors (including administrative and priority creditors)—in pursuing those claims to judgment must be weighed against the difficult circumstances of the Chapter 11 Cases and the limited resources that are available to pursue what certainly would be a multi-year, expensive and complex litigation.

8. Indeed, despite the strength of the claims asserted in the Consolidated Adversary Proceeding, the outcome of any litigation is inherently uncertain and must be evaluated in light of applicable facts and circumstances. The Consolidated Adversary Proceeding is no exception. If the Consolidated Adversary Proceeding were litigated to completion, the result could be a $2 billion judgment (plus interest) in the Plaintiffs' favor—but the result also could be zero. And of course, the outcome could fall somewhere between those two extremes, as certain claims may be successful and others may fail.

9. Additionally, the Litigation Designees recognize that prosecution of the Consolidated Adversary Proceeding would be extraordinarily complex. The Consolidated Adversary Proceeding involves more than 30 claims against nearly 200 defendants, including the Debtors' officers, directors and controlling (and non-controlling) shareholders, as well as the Debtors' advisors and lenders. The claims stem from three separate, complex transactions (or sets of transactions)—the Lands' End Spin-off, the Seritage Transaction and the Related-Party Financings—that unfolded over more than four years, and each of which individually could have

4

given rise to its own sprawling litigation. The complexity of the litigation involved is evidenced both by the magnitude of the pending Motions to Dismiss and the volume of document discovery taken to date.

10. Timing is a critical factor as well. The Litigation Designees recognize it could take years to reach a judgment in this litigation. Once the Court rules on the pending Motions to Dismiss, the parties would still need to engage in fact depositions, expert discovery, summary judgment briefing (if permitted) and trial. Following trial, one or more parties might seek to appeal the outcome (first to the District Court and then to the Second Circuit), and the Defendants likely have the resources to post a bond if necessary pending appeal. And there may be yet further delays associated with collection. Thus, even if the Court were to issue a decision on the pending Motions to Dismiss in the near term, the Plaintiffs anticipate it could be several years before they may be able to realize any proceeds from the litigation to distribute to creditors. By contrast, the Settlement Agreement would provide the Estates with a meaningful economic recovery immediately.

11. Furthermore, the Plaintiffs' successful prosecution of the Consolidated Adversary Proceeding would turn in large part on their ability to obtain necessary litigation funding to prosecute these large, complex cases against Defendants. The Litigation Designees believe strongly that the litigation funding proposal they obtained and presented to the Court would achieve this goal and be sufficient to enable the successful prosecution of the Consolidated Adversary Proceeding. Nevertheless, the Litigation Funding Motion presently faces six separate objections; moreover, the Admin Representative indicated that it would have filed its own objection to the Litigation Funding Motion and taken extensive discovery if the parties had not arrived at the Settlement Agreement. If the Litigation Funding Motion were not approved in full

5

(either by reducing the amount of the proposed funding or by denying the Litigation Funding Motion outright), the Plaintiffs' ability to prosecute the Consolidated Adversary Proceeding would be materially handicapped, and the value of the Consolidated Adversary Proceeding necessarily would be far less.

12.     The Settlement Agreements and related resolutions contemplated by the Motion, all of which are the product of arm's-length negotiations among sophisticated parties advised by experienced counsel and overseen by highly-respected mediators, trade the substantial uncertainty and indeterminacy of the Chapter 11 Cases for much needed closure.

13.     For all the reasons set forth in the Motion and herein, the Litigation Designees support approval of the Settlement Agreements and related relief contemplated by the Motion.

Dated: August 9, 2022
      Charlotte, North Carolina

_____
Patrick Bartels
On Behalf of the Litigation Designees