UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
In re                                                        :   Chapter 11
                                                             :
SEARS HOLDINGS CORPORATION, *et al.*,                        :   Case No. 18-23538 (RDD)
                                                             :   (Jointly Administered)
            Debtors.[1]                                  :
------------------------------------------------------------ x
Sears Holding Corp., *et al.*                                :
                                                             :
           Plaintiffs                                  :
   vs.                                                  :
Edward Scott Lampert, *et al.*                               :
                                                             :
           Defendants.                                 :   Consolidated at
------------------------------------------------------------ x   Adv. Pro. 19-08250 (RDD)
Sears Holdings Corporation, *et al.*.                        :
                                                             :
           Plaintiffs                                  :
   vs.                                                  :
Andrew H. Tisch, *et al.*                                    :
                                                             :
           Defendants.                                 :
------------------------------------------------------------ x

# DECLARATION OF BRIAN J. GRIFFITH IN SUPPORT OF THE JOINT MOTION OF DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENTS, GRANTING CERTAIN RELATED RELIEF, AND AUTHORIZING CERTAIN NON-MATERIAL PLAN MODIFICATIONS IN FURTHERANCE OF THE EFFECTIVE DATE OF THE PLAN

      I, Brian J. Griffith, declare under 28 U.S.C. § 1746, under penalty of perjury to the best of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C.

my knowledge and belief, that:

1.  I am a Managing Director of M-III Partners, LLC, which has its principal offices at 130 West 42nd Street, 17th Floor, New York, NY 10036 and represents Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"). As Managing Director at M-III, I am responsible for leading deal teams where we are retained by either creditors or debtors. Assignments range from operational improvement to distressed situations both in and out of court. Depending on the assignment, deal responsibilities range from short-term profit improvement roles to multi-year turnaround advisory assignments in numerous industries, including: retail, financial services, real estate development, healthcare, energy, consumer products, manufacturing, automotive, and food services. Typical areas of focus on debtor engagements are treasury, cash forecasting, process improvement, cost reductions, development of strategic alternatives, and negotiations with creditors and parties-in-interest. Prior to my current role with M-III, I served in interim management roles, including as a chief financial officer and chief restructuring officer.

2.  I've been working for the Debtors since June 2015, prior to the commencement of these Chapter 11 Cases. Amongst other aspects of the Chapter 11 Cases, I or one of my team members had responsibilities related to the Sale Transaction, the 507(b) Appeals and the Second Circuit 507(b) Appeals, the confirmation of the Plan, the approval and administration of the Administrative Expense Claims Consent Program, and the administration of the Chapter 11 Cases since confirmation.

---

(4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is c/o M-III Partners, LP, 1700 Broadway, 19th Floor, New York, NY 10019.

3. I submit this declaration ("**Declaration**") in support of the *Joint Motion of Debtors and Official Committee of Unsecured Creditors for Entry of an Order Approving Settlement Agreements, Granting Certain Related Relief, and Authorizing Certain Non-Material Plan Modifications in Furtherance of the Effective Date of the Plan* ("**Motion**"), filed concurrently with this Declaration.[2]

4. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge of the Debtors' operations and finances gleaned during the course of my engagement with the Debtors; my discussions with other members of the M-III team and the Debtors' other advisors; my review of relevant documents; and my views based upon my experience. If called to testify, I would testify competently to each of the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of M-III for the Debtors.

## Settlement Agreements

5. I have been involved in the iterative negotiations of the Mediation and the corresponding analysis of the impact of any given proposal on the Estates, distributions, and other stakeholders. The final terms of the Settlement Agreements resolve without the need of further litigation (i) the Consolidated Adversary Proceeding, (ii) longstanding disputes with Transform, such as the Second Circuit 507(b) Appeals, the Transform Foreign Cash Appeal, and other issues arising under the Asset Purchase Agreement, (iii) the Seritage Disputes, and (iv) the 507(b) Claim asserted by Wilmington Trust, as Indenture Trustee and Collateral Agent of the Second Lien Notes. The Settlement Agreements and the resolution of other disputes described herein and in the Motion are a result of months of good faith, arm's-length negotiation among the parties, and the

---

[2] Unless otherwise noted, all capitalized terms not otherwise defined in this Declaration shall have the meanings prescribed to them in the Motion.

culmination of which achieves a compromise in the best interest of the Debtors' Estates and which will facilitate meaningful recoveries to creditors. In addition, the modifications to the Plan and the Liquidating Trust Agreement, as described in the Motion, will not have any negative effect on any party in interest and will enhance the efficiency of the wind down of the Debtors' Estates.

**A.    The Claims between the Debtors and Seritage**

6.    The Motion accurately describes the terms of the Settlement Agreement with respect to the Seritage Disputes. The resolution of the Seritage Disputes will yield a $500,000 recovery to the Debtors by the Seritage Defendants. I believe that the $500,000 payment to the Debtors is a reasonable settlement of the claims asserted by the Debtors against the Seritage Defendants and by the Seritage Defendants against the Debtors. Further disputes or litigation of each of the separate issues would be prolonged and expensive, reserves for disputed claims could need to be maintained pending outcome of the disputes, and the outcome of any litigation is uncertain. I believe the proposed resolution of the Seritage Disputes is well within the range of reasonableness.

**B.    Second Lien Notes Settlement**

7.    The Motion and Proposed Order include the resolution of the Second Circuit 507(b) Appeal as it relates to Wilmington Trust. While the Debtors are hopeful for an advantageous ruling in the Second Circuit 507(b) Appeals, the outcome is uncertain, as is the case with most litigation. The Second Lien Notes Settlement, together with the corresponding resolution of the Second Circuit 507(b) Appeals with respect to the ESL Defendants (as defined in the Settlement Agreement), substantially reduces the potential liability of the Debtors and provides finality with four (4) of the five (5) parties to the Second Circuit 507(b) Appeals. Therefore, I believe the Wilmington Trust Settlement is reasonable and should be approved.

**C.      Settlement with Transform**

8.      As part of the Settlement Agreement, the Debtors and Transform have also agreed to resolve the Remaining APA Issues—a wide range of issues that have been disputed between the parties for significant periods of time and at great expense. The Motion accurately describes the resolution of the Remaining APA Issues.

9.      Importantly, pursuant to the Settlement Agreement, over $5 million will be released to the Debtors months or years before appellate litigation would otherwise conclude. As this Court is aware, disputes arising under the Asset Purchase Agreement and any interpretation thereof is fact-intensive, time-consuming, costly, and uncertain. I believe the resolutions of the Remaining APA Issues provide for reasonable compromises by both parties for the benefit of the Debtors' Estates and eliminates the need for further litigation. Therefore, I believe the resolutions of the Remaining APA Issues should be approved.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

| | |
|---|---|
| Dated: August 9, 2022<br>New York, New York | By: */s/ **Brian J. Griffith***<br>Brian J. Griffith<br>Managing Director<br>M-III Advisory Partners, LP |