**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Ira S. Dizengoff
Philip C. Dublin
Sara L. Brauner
Zachary D. Lanier

*Counsel to the Official Committee of Unsecured*
*Creditors of Sears Holdings Corporation, et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SEARS HOLDINGS CORPORATION, et al., | : | Case No. 18-23538 (RDD) |
| | : | |
| | : | (Jointly Administered) |
| Debtors.[1] | : | |

-------------------------------------------------------------x

**SUMMARY SHEET FOR ELEVENTH INTERIM**
**AND FINAL FEE APPLICATION OF AKIN GUMP STRAUSS**
**HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE**
**OF UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION**
**FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR**
**THE PERIOD OF OCTOBER 24, 2018 THROUGH AND INCLUDING JUNE 30, 2022**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is c/o M-III Partners, LP, 1700 Broadway, 19th Floor, New York, NY 10019.

| General Information | |
|---|---|
| Name of Applicant: | Akin Gump Strauss Hauer & Feld LLP ("Akin Gump")[2] |
| Authorized to Provide Services to: | The Official Committee of Unsecured Creditors and the Litigation Designees[3] |
| Petition Date: | October 15, 2018 |
| Retention Date: | December 10, 2018, *nunc pro tunc* to October 24, 2018 |
| Prior Applications: | 10 |

## SUMMARY OF ELEVENTH COMPENSATION PERIOD

| Summary of Fees and Expenses Sought for the Eleventh Compensation Period | |
|---|---|
| Time Period Covered by the Application: | March 1, 2022 through and including June 30, 2022 (the "Eleventh Compensation Period") |
| *Compensation & Expenses Sought for Services Performed on Behalf of the Creditors' Committee in Connection with the Chapter 11 Cases* | |
| Amount of Compensation Sought as Actual, Reasonable and Necessary for the Eleventh Compensation Period: | $491,562.00 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary for the Eleventh Compensation Period: | $161.87 |

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application, the *Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors and (II) Granting Related Relief*, dated October 15, 2019 [ECF No. 5370] (the "Confirmation Order") or the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors*, dated October 15, 2019 [ECF No. 5370-1] (the "Plan"), as applicable.

[3] As described further in the Application, pursuant to the Confirmation Order and effective as of the date thereof, Akin Gump serves as "primary litigation counsel to act on behalf of the Litigation Designees to investigate, commence, prosecute and otherwise litigate the Jointly Asserted Causes of Action" in addition to its role as counsel to the Creditors' Committee. *See* Confirmation Order ¶ 22. To facilitate review of Akin Gump's fees attributable to its role as Primary Trust Litigation Counsel following entry of the Confirmation Order, a separate task code (Task Code 20) was set up for all such work.

| | |
|---|---|
| *Compensation & Expenses Sought for Services Performed on Behalf of the Litigation Designees in Connection with the Jointly Asserted Causes of Action* | |
| Amount of Compensation Sought as Actual, Reasonable and Necessary for the Eleventh Compensation Period: | $825,525.50 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary for the Eleventh Compensation Period: | $87,622.06 |
| *Total Compensation & Expenses Sought for Services Performed on Behalf of the Creditors' Committee and the Litigation Designees in Connection with the Chapter 11 Cases and the Jointly Asserted Causes of Action* | |
| Total Amount of Compensation Sought as Actual, Reasonable and Necessary for the Eleventh Compensation Period: | $1,317,087.50 |
| Total Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary for the Eleventh Compensation Period: | $87,783.93 |
| Total Compensation and Expenses Requested for the Eleventh Compensation Period: | $1,404,871.43 |
| **Summary of Fees and Expenses Paid Relating to the Eleventh Compensation Period** | |
| Compensation Sought for the Eleventh Compensation Period Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed (80% of Fees): | $116,743.60 |
| Expenses Sought for the Eleventh Compensation Period Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed (100% of Expenses): | $0.00 |
| Total Compensation and Expenses Sought for the Eleventh Compensation Period Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $116,743.60 |
| Total Compensation and Expenses Sought for the Eleventh Compensation Period Not Yet Paid: | $1,288,128.43 |
| Voluntary Fee Waiver and Expense Reduction in the Eleventh Compensation Period: | $223,175.08[4] |

---

[4] Akin Gump voluntarily reduced its fees and expenses incurred during the Eleventh Compensation Period prior to the filing of the applicable Monthly Fee Statement by the following amounts: (a) $211,102.50 for fee reductions and (b) $12,072.58 for expense reductions. The voluntary fee reductions relate to, among other things: (i) fees incurred by professionals or paraprofessionals for attending meetings, conferences or hearings at which their presence was not

| *Summary of Rates and Timekeepers in the Eleventh Compensation Period* | |
|---|---|
| Blended Rate During the Eleventh Compensation Period for All Attorneys: | $1,350.82 |
| Blended Rate During the Eleventh Compensation Period for All Timekeepers: | $1,323.57 |
| Number of Timekeepers During the Eleventh Compensation Period: | 19 (17 attorneys; 2 paraprofessionals and other non-legal staff) |
| Number of Attorneys Billing Fewer than 15 Hours to the Case During the Eleventh Compensation Period: | 10 |
| Interim or Final Application: | Interim |

Summary of Any Objections to Monthly Fee Statements Relating to the Eleventh Compensation Period:  None

## SUMMARY OF FINAL COMPENSATION PERIOD

| *Summary of Fees and Expenses Sought for the Final Compensation Period* | |
|---|---|
| Time Period Covered by the Application: | October 24, 2018 through and including June 30, 2022 (the "Final Compensation Period") |
| *Compensation & Expenses Sought for Services Performed on Behalf of the Creditors' Committee in Connection with the Chapter 11 Cases* | |
| Amount of Compensation Sought as Actual, Reasonable and Necessary for the Final Compensation Period: | $38,016,952.50 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary for the Final Compensation Period: | $3,896,484.53 |
| *Compensation & Expenses Sought for Services Performed on Behalf of the Litigation Designees in Connection with the Jointly Asserted Causes of Action* | |
| Amount of Compensation Sought as Actual, Reasonable and Necessary for the Final Compensation Period: | $14,095,650.50 |

---

essential to the issues or matters addressed therein; (ii) duplicative work or work performed by professionals or paraprofessionals billing a *de minimis* amount of time to the Chapter 11 Cases during the applicable period; and (iii) fees incurred in connection with certain administrative tasks.  Consequently, Akin Gump does not seek payment of these fees and expenses in this Application.

| | |
|---|---|
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary for the Final Compensation Period: | $10,345,500.08 |
| *Total Compensation & Expenses Sought for Services Performed on Behalf of the Creditors' Committee and the Litigation Designees in Connection with the Chapter 11 Cases and the Jointly Asserted Causes of Action* | |
| Total Amount of Compensation Sought as Actual, Reasonable and Necessary for the Final Compensation Period: | $52,112,603.00 |
| Total Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary for the Final Compensation Period: | $14,241,984.61 |
| Total Compensation and Expenses Requested for the Final Compensation Period: | $66,354,587.61 |
| **Summary of Fees and Expenses Allowed Pursuant to Prior Applications** | |
| Total Compensation for the Final Compensation Period Approved by Interim Order to Date: | $50,258,876.50 |
| Total Expenses for the Final Compensation Period Approved by Interim Order to Date: | $14,109,338.45 |
| Total Compensation and Expenses for the Final Compensation Period Approved by Interim Order to Date: | $64,368,214.95 |
| Total Allowed Compensation for the Final Compensation Period Paid to Date: | $43,553,489.30[5] |
| Total Allowed Expenses for the Final Compensation Period Paid to Date: | $13,284,730.39 |
| Total Allowed Compensation and Expenses for the Final Compensation Period Paid to Date: | $56,838,219.69 |

---

[5] Specifically, Akin Gump has received $33,553,489.30 in respect of fees incurred in connection with Akin Gump's representation of the Creditors' Committee and $10,000,000.00 in respect of fees incurred in connection with the prosecution of the Jointly Asserted Causes of Action.

| *Summary of Fees and Expenses Paid Relating to the Final Compensation Period* | |
|---|---|
| Compensation Sought for the Final Compensation Period Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed (80% of Fees): | $359,030.80 |
| Expenses Sought for the Final Compensation Period Already Paid Pursuant to the Compensation Order But Not Yet Allowed (100% of Expenses): | $466.22 |
| Total Compensation and Expenses Sought for the Final Compensation Period Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $359,497.02 |
| Total Compensation and Expenses Sought for the Final Compensation Period Not Yet Paid:[6] | $9,516,367.92 |
| Voluntary Fee Waiver and Expense Reduction for the Final Compensation Period: | $2,724,722.14 |
| *Summary of Rates and Timekeepers in the Final Compensation Period* | |
| Blended Rate During the Final Compensation Period for All Attorneys: | $854.03 |
| Blended Rate During the Final Compensation Period for All Timekeepers: | $823.92 |
| Number of Timekeepers During the Final Compensation Period: | 138 (112 attorneys; 26 paraprofessionals and other non-legal staff) |
| Number of Attorneys Billing Fewer than 15 Hours to the Case During the Final Compensation Period: | 21 |
| Increase in Rates Since Date of Retention: | 4 |
| Interim or Final Application: | Final |

---

[6] As disclosed in prior fee applications, pursuant to the terms of the Plan and Confirmation Order, Akin Gump's fees and expenses attributable to the services it performs as Primary Trust Litigation Counsel—as well as the fees and expenses of other professionals retained in connection with the Jointly Asserted Causes of Action—have been paid out of the Litigation Funding Account. *See* Confirmation Order ¶ 52(d). Since June 2020, Akin Gump has not sought payment from the Litigation Funding Account in respect of its fees incurred in connection with prosecution of the Jointly Asserted Causes of Action. Similarly, since May 2021, Akin Gump has not sought reimbursement from the Litigation Funding Account in respect of its expenses incurred in connection with prosecution of the Jointly Asserted Causes of Action. Notwithstanding the foregoing, Akin Gump requested in its prior Interim Fee Applications that the Court authorize the payment of such fees and reimbursement of such expenses on an interim basis and, by this Application, seeks final allowance and payment of such fees.

## COMPENSATION BY PROFESSIONAL
## FOR THE ELEVENTH COMPENSATION PERIOD

| Name of Professional | Department | Office | Year of Admission | Rate | Total Hours | Total Amount |
|---|---|---|---|---|---|---|
| **Partners** | | | | | | |
| Brauner, Sara L. | FRS | NY | 2011 | $1,400.00 | 357.50 | $500,500.00 |
| Chapman, Dean L. | LIT | NY | 2009 | $1,400.00 | 287.60 | $402,640.00 |
| Dizengoff, Ira S. | FRS | NY | 1993 | $1,775.00 | 46.20 | $82,005.00 |
| Lee, Fred | COR | DA | 2005 | $1,775.00 | 7.50 | $13,312.50 |
| Qureshi, Abid | FRS | NY | 1995 | $1,775.00 | 10.50 | $18,637.50 |
| Welkis, Scott | COR | NY | 1997 | $1,565.00 | 11.50 | $17,997.50 |
| Zensky, David M. | LIT | NY | 1988 | $1,775.00 | 58.60 | $104,015.00 |
| **Senior Counsel / Counsel** | | | | | | |
| Kane, John | LIT | NY | 2016 | $1,130.00 | 7.70 | $8,701.00 |
| Lanier, Zachary D. | FRS | DA | 2017 | $1,095.00 | 31.10 | $34,054.50 |
| Latov, Jeffrey | LIT | NY | 2017 | $1,095.00 | 18.90 | $20,695.50 |
| Tizravesh, Roxanne | LIT | HO | 2009 | $1,330.00 | 7.40 | $9,842.00 |
| **Associates / Staff Attorneys** | | | | | | |
| Collins, Russell | LIT | NY | 1998 | $535.00 | 51.20 | $27,392.00 |

| Name of Professional | Department | Office | Year of Admission | Rate | Total Hours | Total Amount |
|---|---|---|---|---|---|---|
| Glackin, Patrick | LIT | NY | 2019 | $925.00 | 20.00 | $18,500.00 |
| Kulikowski, Jillian | LIT | NY | 2019 | $925.00 | 13.80 | $12,765.00 |
| Nolan, Sean M. | LIT | NY | 2018 | $1,005.00 | 8.80 | $8,844.00 |
| Szydlo, Joseph E. | FRS | NY | 2019 | $965.00 | 22.80 | $22,002.00 |
| Tatum, Laura | COR | DA | 2020 | $775.00 | 6.30 | $4,882.50 |
| **Paralegals / Legal Assistants** | | | | | | |
| Krasa, Dagmara | FRS | NY | N/A | $475.00 | 14.10 | $6,697.50 |
| Robins, Kelsey | FRS | NY | N/A | $265.00 | 13.60 | $3,604.00 |

## COMPENSATION BY PROFESSIONAL
## FOR THE FINAL COMPENSATION PERIOD

| TIMEKEEPER | DPT. | OFFICE | YEAR OF ADMISSION | APPLICABLE RATE[7] | TOTAL HOURS | TOTAL AMOUNT |
|---|---|---|---|---|---|---|
| PARTNERS | | | | | | |
| Adler, Aimee | TAX | NY | 2001 | $1,040.00 | 138.50 | $132,840.00 |
| Bain, John Allen | COR | DA | 2007 | $985.00 | 224.80 | $203,506.00 |
| Berchem, Kerry | COR | NY | 1991 | $1,210.00 | 32.40 | $39,204.00 |
| Botter, David | FRS | NY | 1990 | $1,475.00 | 191.40 | $266,035.00 |
| Brauner, Sara L. | FRS | NY | 2011 | $1,400.00 | 4,070.10 | $4,675,504.00 |
| Brimmage, Marty | LIT | DA | 1995 | $1,425.00 | 138.30 | $181,056.50 |
| Chapman, Dean L. | LIT | NY | 2009 | $1,400.00 | 4,114.10 | $4,658,203.50 |
| Chen, Julius | LIT | DC | 2010 | $1,075.00 | 344.40 | $329,964.00 |
| Crawford, Ashley | LIT | SF | 2003 | $880.00 | 5.00 | $4,400.00 |
| Dizengoff, Ira S. | FRS | NY | 1993 | $1,775.00 | 889.00 | $1,372,254.50 |
| Dublin, Philip | FRS | NY | 1999 | $1,655.00 | 1,511.15 | $2,199,559.25 |

---

[7] During the Final Compensation Period, Akin Gump periodically increased its hourly rates. Such rate increases were in accordance with the *Declaration of Ira S. Dizengoff in Support of the Application of the Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al. to Retain and Employ Akin Gump Strauss Hauer & Feld LLP, as Counsel, Effective Nunc Pro Tunc to October 24, 2018*, attached as Exhibit B to the Akin Retention Application (as defined herein). The amount in this column reflects either the hourly rate for the timekeeper in effect at the time the services were last rendered by such timekeeper or the timekeeper's 2022 rate.

| Timekeeper | Dpt. | Office | Year of Admission | Applicable Rate[7] | Total Hours | Total Amount |
|---|---|---|---|---|---|---|
| Hsu, Alice | COR | NY | 1999 | $930.00 | 9.50 | $8,835.00 |
| Jacob, John | HLT | DC | 1993 | $1,135.00 | 7.00 | $7,945.00 |
| Jacobson, Howard | TAX | DC | 1979 | $1,120.00 | 165.20 | $179,999.00 |
| Kuhn, Stephen | COR | NY | 1991 | $1,295.00 | 19.40 | $25,123.00 |
| Lawrence, Lacy | LIT | DA | 2006 | $1,350.00 | 1,177.90 | $1,238,462.00 |
| Leader, Susan | LIT | LA | 2001 | $1,020.00 | 23.50 | $22,422.00 |
| Lee, Fred | COR | DA | 2005 | $1,775.00 | 32.10 | $43,078.50 |
| Leyden, Lauren | LAB | NY | 2006 | $1,200.00 | 39.60 | $43,503.00 |
| Miller, Allison | COR | NY | 2003 | $1,250.00 | 616.00 | $678,800.00 |
| Morris, Williams | COR | HO | 1985 | $1,125.00 | 13.80 | $15,525.00 |
| Phelps, David | COR | LA | 1987 | $1,240.00 | 383.00 | $435,166.00 |
| Qureshi, Abid | FRS | NY | 1995 | $1,775.00 | 783.00 | $1,137,593.00 |
| Roush, Corey | LIT | DC | 1997 | $970.00 | 20.30 | $19,691.00 |
| Ru, Meng | COR | NY | 2005 | $1,100.00 | 133.60 | $130,814.00 |
| Sorkin, Joseph | LIT | NY | 2008 | $1,425.00 | 1,750.05 | $2,007,459.25 |

| Timekeeper | Dpt. | Office | Year of Admission | Applicable Rate[7] | Total Hours | Total Amount |
|---|---|---|---|---|---|---|
| Tysse, James | LIT | DC | 2008 | $1,135.00 | 13.30 | $15,095.50 |
| Vondle, David | IP | DC | 2002 | $1,020.00 | 125.70 | $123,696.00 |
| Welkis, Scott | COR | NY | 1997 | $1,565.00 | 392.70 | $484,462.50 |
| Williams, Joshua | TAX | NY | 2004 | $1,120.00 | 41.20 | $43,306.00 |
| Zensky, David M. | LIT | NY | 1988 | $1,775.00 | 952.80 | $1,486,415.00 |
| **Senior Counsel / Counsel** | | | | | | |
| Brown, Ashley | IP | HO | 2011 | $865.00 | 50.10 | $40,449.00 |
| Carty, Christopher | LIT | NY | 2010 | $980.00 | 917.10 | $858,051.00 |
| Danishefsky, Menachem | TAX | NY | 2011 | $950.00 | 31.00 | $26,517.50 |
| Demander, Kathryn | LIT | DA | 2013 | $805.00 | 490.00 | $380,938.00 |
| Doniak, Christine | LIT | NY | 1998 | $745.00 | 111.50 | $83,067.50 |
| Elder, Eugene | HLT | DC | 1990 | $975.00 | 6.50 | $6,337.50 |
| Farovitch, Aaron | TAX | NY | 2017 | $690.00 | 142.60 | $91,212.00 |
| Fey, Hilary | COR | LA | 1997 | $885.00 | 65.50 | $56,545.00 |
| Field, Eric | LAB | DC | 1998 | $1,170.00 | 14.70 | $17,199.00 |

| TIMEKEEPER | DPT. | OFFICE | YEAR OF ADMISSION | APPLICABLE RATE[7] | TOTAL HOURS | TOTAL AMOUNT |
|---|---|---|---|---|---|---|
| Freeman, Alexis | FRS | NY | 2001 | $1,100.00 | 683.10 | $702,713.00 |
| Goodman, Evan | COR | DC | 2012 | $810.00 | 22.50 | $18,225.00 |
| Kane, John | LIT | NY | 2016 | $1,130.00 | 3,285.70 | $2,668,103.50 |
| Koo, Angeline | LIT | NY | 2005 | $940.00 | 542.20 | $481,570.00 |
| Lanier, Zachary D. | FRS | DA | 2017 | $1,095.00 | 2,781.15 | $2,120,681.50 |
| Latov, Jeffrey | LIT | NY | 2017 | $1,095.00 | 3,280.20 | $2,529,092.50 |
| Lee, David | IP | DC | 2000 | $905.00 | 28.90 | $23,762.50 |
| Lloyd, Matthew | LIT | DA | 2014 | $910.00 | 240.80 | $219,128.00 |
| Locke, Adam | LIT | NY | 2012 | $915.00 | 450.80 | $381,706.50 |
| Lyashenko, Ekaterina | TAX | NY | 2018 | $620.00 | 13.60 | $8,432.00 |
| Matheson, Clayton | IP | SA | 2010 | $950.00 | 102.50 | $92,487.00 |
| McGrady, Erica | COR | DC | 1997 | $905.00 | 228.40 | $199,187.00 |
| Meier, Brennan | LIT | DA | 2013 | $910.00 | 254.10 | $231,231.00 |
| Mongan, William | LIT | NY | 2012 | $860.00 | 10.20 | $8,772.00 |
| Morris, Brandon | TAX | NY | 2009 | $1,040.00 | 63.40 | $62,725.00 |

| Timekeeper | Dpt. | Office | Year of Admission | Applicable Rate[7] | Total Hours | Total Amount |
|---|---|---|---|---|---|---|
| Murphy, John | LIT | NY | 2011 | $960.00 | 41.50 | $39,840.00 |
| O'Brien, Patrick | LIT | DA | 2004 | $935.00 | 286.10 | $260,702.00 |
| Park, Daniel | LIT | DA | 2011 | $1,045.00 | 1,448.70 | $1,079,846.00 |
| Peckham, Heather | LIT | DA | 2000 | $905.00 | 685.50 | $577,644.00 |
| Petree, Nicholas | LIT | HO | 2012 | $910.00 | 7.00 | $6,370.00 |
| Schmitten, Matthew | LIT | DC | 2014 | $640.00 | 33.20 | $21,248.00 |
| Sharad, Saurabh | LIT | NY | 2015 | $1,005.00 | 1,068.80 | $877,154.00 |
| Staber, David | FRS | DA | 1988 | $975.00 | 7.70 | $7,507.50 |
| Stark, Dustin | LAB | NY | 2013 | $915.00 | 7.20 | $6,588.00 |
| Tizravesh, Roxanne | LIT | HO | 2009 | $1,330.00 | 1,452.70 | $1,476,402.50 |
| Tolentino, Raymond | LIT | DC | 2013 | $910.00 | 171.60 | $145,117.00 |
| Villota, Carlos | COR | DA | 1997 | $820.00 | 164.80 | $135,136.00 |
| Williams, Richard | LIT | NY | 2014 | $960.00 | 5.00 | $4,800.00 |
| Windscheffel, Dennis | LIT | SA | 2014 | $965.00 | 75.50 | $68,034.50 |
| **Associates / Staff Attorneys** | | | | | | |

| TIMEKEEPER | DPT. | OFFICE | YEAR OF ADMISSION | APPLICABLE RATE[7] | TOTAL HOURS | TOTAL AMOUNT |
|---|---|---|---|---|---|---|
| Agahzadeh, Alex | COR | DA | 2014 | $775.00 | 16.70 | $12,942.50 |
| Aminian, Sarah | COR | LA | 2018 | $540.00 | 177.00 | $93,276.00 |
| Angell, Cynthia | LIT | NY | 2013 | $930.00 | 7.60 | $7,068.00 |
| Vicken, Antounian | COR | LA | 2017 | $555.00 | 137.10 | $72,016.50 |
| Badini, Douglas | COR | DC | 2017 | $690.00 | 18.90 | $13,041.00 |
| Brewer, Erin | LIT | SF | 2018 | $510.00 | 105.60 | $52,611.00 |
| Byun, Michael | FRS | LA | 2013 | $890.00 | 184.30 | $160,588.00 |
| Chatterjee, Raja | COR | DA | 2018 | $495.00 | 6.50 | $3,217.50 |
| Chen, Michael | LIT | NY | 2019 | $540.00 | 654.50 | $348,230.00 |
| Clarke, Robertson | FRS | DA | 2011 | $975.00 | 77.60 | $71,637.00 |
| Collins, Russell | LIT | NY | 1998 | $535.00 | 5,298.10 | $2,528,716.50 |
| Elliott, Amy | TAX | DC | 2008 | $550.00 | 15.10 | $8,086.00 |
| Figueroa, Santana | LIT | NY | 2018 | $810.00 | 63.40 | $50,502.00 |
| Fydrych, Victoria | LIT | NY | 2020 | $540.00 | 8.40 | $4,536.00 |
| Generales, Markos | LIT | LA | 2018 | $495.00 | 6.00 | $2,970.00 |

| Timekeeper | Dpt. | Office | Year of Admission | Applicable Rate[7] | Total Hours | Total Amount |
|---|---|---|---|---|---|---|
| Glackin, Patrick | LIT | NY | 2019 | $925.00 | 2,347.50 | $1,372,479.00 |
| Handschumacher, Kelly | LIT | NY | 2017 | $520.00 | 25.90 | $13,468.00 |
| Hill, John | COR | NY | 2019 | $540.00 | 135.40 | $70,638.00 |
| Hiner, Chance | FRS | DA | 2017 | $660.00 | 98.00 | $58,284.00 |
| Holland, Erica | LIT | NY | 2016 | $770.00 | 158.50 | $122,045.00 |
| Kessler, Boris | COR | NY | 2016 | $645.00 | 34.40 | $22,188.00 |
| Kulikowski, Jillian | LIT | NY | 2019 | $925.00 | 3,136.40 | $1,868,648.00 |
| Lewis, Jacqueline | COR | DC | 2018 | $630.00 | 165.50 | $90,317.00 |
| Lombardi, Nicholas | LIT | DA | 2018 | $980.00 | 571.10 | $435,340.50 |
| Maizel, Elise | LIT | NY | 2017 | $940.00 | 703.40 | $537,466.00 |
| Mahkamova, Shirin | FRS | NY | 2019 | $700.00 | 1,713.90 | $969,706.00 |
| Marshall, Michelle | COR | LA | 2018 | $540.00 | 53.00 | $27,956.00 |
| McNeilly, Edward | FRS | LA | 2017 | $760.00 | 119.90 | $75,906.00 |
| Mernick, A.Y. | COR | DA | 2017 | $725.00 | 8.00 | $5,800.00 |
| Miller, Katlyne | LIT | DA | 2018 | $700.00 | 440.70 | $239,060.50 |

| Timekeeper | Dpt. | Office | Year of Admission | Applicable Rate[7] | Total Hours | Total Amount |
|---|---|---|---|---|---|---|
| Nolan, Sean M. | LIT | NY | 2018 | $1,005.00 | 1,412.80 | $1,040,349.00 |
| Erin Parlar | LIT | NY | 2015 | $815.00 | 174.00 | $141,810.00 |
| Phillips, Colin | IP | HO | 2017 | $555.00 | 12.90 | $7,159.50 |
| Praestholm, Amanda | LIT | DA | 2017 | $785.00 | 304.30 | $189,542.50 |
| Rusconi, Margo | LIT | DC | 2019 | $510.00 | 9.90 | $5,049.00 |
| Savar, Ramin | COR | LA | 2015 | $690.00 | 345.10 | $215,229.00 |
| Steed, Allison | COR | DC | 2018 | $650.00 | 154.60 | $82,525.00 |
| Szydlo, Joseph E. | FRS | NY | 2019 | $965.00 | 1,988.10 | $1,190,105.50 |
| Tandy, Lewis | LIT | DA | 2018 | $700.00 | 671.30 | $361,088.50 |
| Tatum, Laura | COR | DA | 2020 | $775.00 | 6.30 | $4,882.50 |
| Threadcraft, Tiffanye | COR | NY | 2013 | $870.00 | 146.20 | $115,360.50 |
| Young, Melodie | LIT | NY | 2003 | $435.00 | 502.20 | $217,779.00 |
| Youngs, Conor | COR | NY | 2021 | $610.00 | 88.40 | $52,182.50 |
| **Paralegals / Legal Assistants** | | | | | | |
| Andron, Jonathan | LIT | NY | N/A | $270.00 | 123.00 | $33,105.00 |

| TIMEKEEPER | DPT. | OFFICE | YEAR OF ADMISSION | APPLICABLE RATE[7] | TOTAL HOURS | TOTAL AMOUNT |
|---|---|---|---|---|---|---|
| Belkin, Boris | COR | NY | N/A | $385.00 | 38.00 | $14,630.00 |
| Blair, Laurel | LIT | DA | N/A | $355.00 | 5.00 | $1,775.00 |
| Chau, Lok Fung | LIT | NY | N/A | $355.00 | 5.90 | $2,094.50 |
| Csizmadia, Suzanne | LIT | HO | N/A | $330.00 | 107.30 | $35,409.00 |
| Edwards, Paul | LIT | NY | N/A | $355.00 | 28.20 | $9,583.50 |
| Ejoh, Kareen | LIT | NY | N/A | $270.00 | 352.70 | $94,359.00 |
| Ginsborg, Michael | LIT | NY | N/A | $265.00 | 27.30 | $7,234.50 |
| Greer, Michael | LIT | HO | N/A | $310.00 | 59.60 | $18,317.00 |
| Hicks, Adria | LIT | DC | N/A | $350.00 | 17.30 | $5,872.00 |
| Kemp, Brenda | FRS | DA | N/A | $330.00 | 156.80 | $51,744.00 |
| Krasa, Dagmara | FRS | NY | N/A | $475.00 | 395.40 | $158,239.50 |
| Langmack, Jennifer | LIT | NY | N/A | $335.00 | 5.90 | $1,976.50 |
| Leonard, Massai | LIT | NY | N/A | $325.00 | 11.50 | $3,737.50 |
| Levy, Sophia | FRS | NY | N/A | $245.00 | 457.40 | $107,825.00 |
| Ma, Jim | LIT | NY | N/A | $380.00 | 46.30 | $17,594.00 |

| TIMEKEEPER | DPT. | OFFICE | YEAR OF ADMISSION | APPLICABLE RATE[7] | TOTAL HOURS | TOTAL AMOUNT |
|---|---|---|---|---|---|---|
| Moore, James | LIT | NY | N/A | $285.00 | 76.30 | $21,745.50 |
| Munoz, Alondra | LIT | NY | N/A | $205.00 | 48.80 | $9,759.00 |
| Pinkney, Matt | LIT | NY | N/A | $195.00 | 102.80 | $20,046.00 |
| Racanati, Francesco | LIT | NY | N/A | $285.00 | 59.40 | $16,929.00 |
| Robertson, Emony | LIT | NY | N/A | $220.00 | 511.80 | $109,608.00 |
| Robins, Kelsey | FRS | NY | N/A | $265.00 | 39.20 | $11,143.50 |
| Smith, Turner | COR | NY | N/A | $205.00 | 6.00 | $1,230.00 |
| Southwell, Tracy | FRS | LA | N/A | $395.00 | 215.20 | $83,247.00 |
| Walls, Bennett | LIT | NY | N/A | $230.00 | 410.00 | $87,193.00 |
| Yen, Diros | LIT | NY | N/A | $255.00 | 7.70 | $1,963.50 |

**BLENDED RATES
FOR ELEVENTH COMPENSATION PERIOD**

| PROFESSIONALS | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners | $1,461.52 | 779.40 | $1,139,107.50 |
| Senior Counsel / Counsel | $1,125.85 | 65.10 | $73,293.00 |
| Associates / Staff Attorneys | $767.99 | 122.90 | $94,385.50 |
| Paraprofessionals and Other Non-Legal Staff | $371.90 | 27.70 | $10,301.50 |
| **Blended Attorney Rate** | **$1,350.82** | | |
| **Blended Rate for All Timekeepers** | **$1,323.57** | | |
| **Total Fees Incurred** | | **995.10** | **$1,317,087.50** |

**BLENDED RATES
FOR FINAL COMPENSATION PERIOD**

| PROFESSIONALS | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners | $1,209.77 | 18,358.80 | $22,209,917.50 |
| Senior Counsel / Counsel | $830.98 | 19,271.85 | $16,014,522.50 |
| Associates / Staff Attorneys | $581.13 | 22,304.50 | $12,961,802.50 |
| Paraprofessionals and Other Non-Legal Staff | $279.46 | 3,314.80 | $926,360.50 |
| **Blended Attorney Rate** | **$854.03** | | |
| **Blended Rate for All Timekeepers** | **$823.92** | | |
| **Total Fees Incurred** | | **63,249.95** | **$52,112,603.00** |

AKIN GUMP STRAUSS HAUER & FELD LLP

One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Ira S. Dizengoff
Philip C. Dublin
Sara L. Brauner
Zachary D. Lanier

*Counsel to the Official Committee of Unsecured
Creditors of Sears Holdings Corporation, et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
|  |  |
|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| SEARS HOLDINGS CORPORATION, et al., | : | Case No. 18-23538 (RDD) |
|  | : |  |
|  | : | (Jointly Administered) |
|  | : |  |
| Debtors.[1] | : |  |

-----------------------------------------------------------------x

**ELEVENTH INTERIM AND FINAL FEE APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OF OCTOBER 24, 2018 THROUGH AND INCLUDING JUNE 30, 2022**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is c/o M-III Partners, LP, 1700 Broadway, 19th Floor, New York, NY 10019.

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), counsel to the Official Committee of Unsecured Creditors (the "Creditors' Committee") of Sears Holdings Corporation and its affiliated debtors and debtors in possession (collectively, the "Debtors"), hereby submits this eleventh application (the "Application"), pursuant to sections 330(a) and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), requesting: (i) interim allowance of compensation for services rendered to the Creditors' Committee and the Litigation Designees in the amount of $1,317,087.50 and reimbursement of expenses incurred in connection therewith in the amount of $87,783.93 for the period of March 1, 2022 through and including June 30, 2022 (the "Eleventh Compensation Period"); (ii) final allowance of compensation for services rendered to the Creditors' Committee and the Litigation Designees in the amount of $52,112,603.00 and reimbursement of expenses incurred in connection therewith in the amount of $14,241,984.61 for the period of October 24, 2018 through and including June 30, 2022 (the "Final Compensation Period"), which Final Compensation Period includes the Eleventh Compensation Period; and (iii) payment of all unpaid fees and expenses from October 24, 2018 through and including June 30, 2022, including (a) $667,851.70, representing 20% of fees incurred for the period of June 1, 2020 through and including June 30, 2022 in connection with Akin Gump's representation of the Creditors' Committee, which amounts were not previously paid by the Debtors' Estates upon the agreement of Akin Gump, (b) $7,891,262.00 of fees incurred for the period of June 1, 2020 through and including June 30, 2022 in connection with the prosecution of the Jointly Asserted Causes of Action and (c) $957,254.22 of expenses for the period of May 1, 2021 through and including June 30, 2022 in connection with the prosecution of the Jointly Asserted Causes of Action.  In support

2

of this Application, Akin Gump submits the declaration of Philip C. Dublin, a partner at Akin Gump, which declaration is attached hereto as **Exhibit A** and incorporated by reference into this Application.  In further support of this Application, Akin Gump respectfully represents as follows.[2]

## INTRODUCTION

1.      By this Application, Akin Gump seeks: (i) interim allowance of (a) compensation for professional services rendered by Akin Gump during the Eleventh Compensation Period in the amount of $1,317,087.50, representing 967.40 hours of professional services and 27.70 hours of paraprofessional and other non-legal services and (b) reimbursement of actual and necessary expenses incurred by Akin Gump during the Eleventh Compensation Period in the amount of $87,783.93; (ii) final allowance of (a) compensation for professional services rendered by Akin Gump during the Final Compensation Period in the amount of $52,112,603.00, representing 59,935.15 hours of professional services and 3,314.80 hours of paraprofessional and other non-legal services and (b) reimbursement of actual and necessary expenses incurred by Akin Gump during the Final Compensation Period in the amount of $14,241,984.61; and (iii) payment of all unpaid fees and expenses from October 24, 2018 through and including June 30, 2022, including (a) $667,851.70, representing 20% of fees incurred for the period of June 1, 2020 through and including June 30, 2022 in connection with Akin Gump's representation of the Creditors' Committee, which amounts were not previously paid by the Debtors' Estates upon the agreement of Akin Gump, (b) $7,891,262.00 of fees incurred for the period of June 1, 2020 through and including June 30, 2022 in connection with the prosecution of the Jointly Asserted Causes of

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the *Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors and (II) Granting Related Relief*, dated October 15, 2019 [ECF No. 5370] (the "Confirmation Order") or the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors*, dated October 15, 2019 [ECF No. 5370-1] (the "Plan"), as applicable.

Action and (c) $957,254.22 of expenses for the period of May 1, 2021 through and including June 30, 2022 in connection with the prosecution of the Jointly Asserted Causes of Action.[3]

2.        In recognition of the Debtors' financial condition throughout the course of the Chapter 11 Cases and the significant professional fees incurred by the Debtors' estates in connection therewith, Akin Gump voluntarily reduced its fees and expenses incurred during the Final Compensation Period prior to the filing of the applicable Monthly Fee Statement by the following amounts, in total: (a) $2,466,247.00 for fee reductions[4] and (b) $258,475.14 for expense reductions.

3.        This Application has been prepared in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the *Order Authorizing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, dated November 16, 2018 [ECF No. 796] (the "Interim Compensation Order"), to the extent applicable, the *Order Authorizing Appointment of Independent Fee Examiner Pursuant to 11 U.S.C. § 327*, dated April 22, 2019 [ECF No. 3307] (the "Fee Examiner Order"), the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York (June 17, 2013) promulgated pursuant to Local Bankruptcy Rule 2016-1(a) (the "Local Guidelines") and the

---

[3] As disclosed in prior fee applications, pursuant to the terms of the Plan and Confirmation Order, Akin Gump's fees and expenses attributable to the services it performs as Primary Trust Litigation Counsel—as well as the fees and expenses of other professionals retained in connection with the Jointly Asserted Causes of Action—have been paid out of the Litigation Funding Account. *See* Confirmation Order ¶ 52(d). Since June 2020, Akin Gump has not sought payment from the Litigation Funding Account in respect of its fees incurred in connection with prosecution of the Jointly Asserted Causes of Action. Similarly, since May 2021, Akin Gump has not sought reimbursement from the Litigation Funding Account in respect of its expenses incurred in connection with prosecution of the Jointly Asserted Causes of Action. Notwithstanding the foregoing, Akin Gump requested in its prior Interim Fee Applications that the Court authorize the payment of such fees and reimbursement of such expenses on an interim basis and, by this Application, seeks final allowance and payment of such fees.

[4] The voluntary fee reductions relate to, among other things: (i) fees incurred by professionals or paraprofessionals for attending meetings, conferences or hearings at which their presence was not essential to the issues or matters addressed therein; (ii) duplicative work or work performed by professionals or paraprofessionals billing a *de minimis* amount of time to the Chapter 11 Cases during the applicable period; and (iii) fees incurred in connection with certain administrative tasks. Consequently, Akin Gump does not seek payment of these fees and expenses in this Application.

United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 for Attorneys in Larger Chapter 11 Cases, effective as of November 1, 2013 (the "U.S. Trustee Guidelines" and, together with the Local Guidelines, the "Fee Guidelines").

4.      The Chair (as defined herein) of the Creditors' Committee has been given the opportunity to review this Application and has approved the compensation and reimbursement of expenses requested herein.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

6.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory bases for the relief requested herein are Bankruptcy Code sections 330 and 331, Bankruptcy Rule 2016 and Local Bankruptcy Rule 2016-1.

## BACKGROUND

A.      **The Debtors' Chapter 11 Cases**

8.      On October 15, 2018, and continuing thereafter, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. The Debtors' chapter 11 cases (the "Chapter 11 Cases") are jointly administered for procedural purposes only. No trustee or examiner has been appointed in the Chapter 11 Cases.

9.      On October 24, 2018 (the "Formation Date"), the Office of the United States Trustee for Region 2 (the "U.S. Trustee") appointed the Creditors' Committee pursuant to Bankruptcy Code section 1102(a). *See Notice of Appointment of Official Committee of Unsecured*

*Creditors* [ECF No. 276].  The Creditors' Committee currently comprises seven members.[5]  Simon

Property Group, L.P. serves as chair of the Creditors' Committee (the "Chair").

10.     On January 3, 2019, the U.S. Trustee filed the *Motion of United States Trustee for*

*Order Authorizing Appointment of Independent Fee Examiner* [ECF No. 1470].  On April 22, 2019,

this Court entered the Fee Examiner Order [ECF No. 3307].  On the same day, Paul E. Harner was

appointed as fee examiner in the Chapter 11 Cases (the "Fee Examiner").  The Fee Examiner has

retained Ballard Spahr LLP as legal counsel.

**B.     Retention of Akin Gump**

11.     On the Formation Date, the Creditors' Committee selected Akin Gump as its legal

counsel.  On November 28, 2018, the Creditors' Committee filed its application to retain and

employ Akin Gump as counsel to the Creditors' Committee [ECF No. 923] (the "Akin Retention

Application"), which application was authorized by an order of this Court dated December 10,

2018 [ECF No. 1107] (the "Akin Retention Order").[6]

12.     The Akin Retention Order authorizes the Creditors' Committee to retain and

employ Akin Gump as its counsel in the Chapter 11 Cases in accordance with Akin Gump's normal

hourly rates and disbursement policies, *nunc pro tunc* to October 24, 2018, all as contemplated by

the Akin Retention Application.  Specifically, the Akin Retention Order authorizes Akin Gump to

---

[5] The following entities currently comprise the Creditors' Committee: (i) The Bank of New York Mellon Trust Company, N.A. as Indenture Trustee; (ii) Brixmor Operating Partnership, L.P.; (iii) Computershare Trust Company, N.A.; (iv) Oswaldo Cruz; (v) Pension Benefit Guaranty Corporation; (vi) Simon Property Group, L.P.; and (vii) Winiadaewoo Electronics America, Inc.  *See Amended Notice of Appointment of Official Committee of Unsecured Creditors*, dated March 31, 2020 [ECF No. 7539].

[6] The Creditors' Committee selected FTI Consulting, Inc. ("FTI") to serve as its financial advisor and Houlihan Lokey Capital, Inc. ("Houlihan") to serve as its investment banker on October 25, 2019 and October 29, 2019, respectively. The orders authorizing the retention of FTI [ECF No. 1325] and Houlihan [ECF No. 1326] were entered on December 19, 2018.

be compensated on an hourly basis and to be reimbursed for actual and necessary out-of-pocket expenses.

13.     On October 15, 2019, the Court entered the Confirmation Order.  Pursuant to the Confirmation Order, the Creditors' Committee was granted joint standing with the Debtors to commence, prosecute, settle and otherwise dispose of the Jointly Asserted Causes of Action (as described in more detail herein).  The prosecution of the Jointly Asserted Causes of Action is overseen by designees who were chosen to be the initial members of the Liquidating Trust Board upon the Effective Date (the "<u>Litigation Designees</u>") and serve in an interim capacity prior to the Effective Date with all the same rights and duties afforded to such members after the Effective Date.[7]  Pursuant to the Confirmation Order, Akin Gump serves as "primary litigation counsel to act on behalf of the Litigation Designees to investigate, commence, prosecute and otherwise litigate the Jointly Asserted Causes of Action."  *See* Confirmation Order ¶ 22.[8]  The Confirmation Order authorizes Akin Gump to be compensated on an hourly basis and to be reimbursed for actual and necessary out-of-pocket expenses.  *Id*.

**C.     Monthly Fee Statements Filed During the Eleventh Compensation Period**

14.     On May 16, 2022, Akin Gump filed and served the *Forty-Second Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of March 1, 2022 Through March 31, 2022* [ECF No. 10444] (the "<u>Forty-Second Monthly</u>

---

[7] The Litigation Designees are as follows: (i) Patrick Bartels; (ii) Alan Carr; (iii) Eugene Davis; (iv) William Transier; and (v) Raphael Wallander.

[8] The Creditors' Committee Settlement provided, among other things, that three of the five members of the Liquidating Trust Board would be selected by the Creditors' Committee and the remaining two members would be selected by the Debtors.  In turn, the proposed members of the Liquidating Trust Board would choose, subject to various factors and procedures, primary litigation counsel for the Liquidating Trust.  In July 2019, the proposed members of the Liquidating Trust Board chose Akin Gump to serve as Primary Trust Litigation Counsel.

Fee Statement"),[9] pursuant to which Akin Gump sought payment of (i) $176,231.60 (80% of $220,289.50) as compensation for professional services rendered and (ii) $72,015.09 for reimbursement of expenses.  Akin Gump did not receive any objections to the Forty-Second Monthly Fee Statement and received payment of $116,743.60 in fees and $0.00 in expenses in respect thereof on July 5, 2022.  As discussed in further detail above, the amount of fees paid to date with respect to the Forty-Second Monthly Fee Statement includes those fees incurred by Akin Gump for its services to the Creditors' Committee and excludes fees incurred by Akin Gump in connection with prosecution of the Jointly Asserted Causes of Action.

15.     On June 28, 2022, Akin Gump filed and served the *Forty-Third Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of April 1, 2022 Through April 30, 2022* [ECF No. 10512] (the "Forty-Third Monthly Fee Statement"),[10] pursuant to which Akin Gump sought payment of (i) $328,518.80 (80% of $410,648.50) as compensation for professional services rendered and (ii) $7,073.40 for reimbursement of expenses.  As of the date hereof, Akin Gump has not received any objections to the Forty-Third Monthly Fee Statement.  As discussed in further detail above, the amount of fees paid to date with respect to the Forty-Third Monthly Fee Statement includes those fees incurred by Akin Gump for its services to the Creditors' Committee and excludes fees incurred by Akin Gump in connection with prosecution of the Jointly Asserted Causes of Action.

---

[9] A copy of the Forty-Second Monthly Fee Statement can be accessed at:
https://restructuring.ra.kroll.com/sears/Home-DownloadPDF?id1=MTMzMzM1MA==&id2=-1.

[10] A copy of the Forty-Third Monthly Fee Statement can be accessed at:
https://restructuring.ra.kroll.com/sears/Home-DownloadPDF?id1=MTMzNjI0Mg==&id2=-1.

16.    On August 1, 2022, Akin Gump filed and served the *Amended Forty-Fourth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of May 1, 2022 Through May 31, 2022* [ECF No. 10554] (the "Forty-Fourth Monthly Fee Statement"),[11] pursuant to which Akin Gump sought payment of (i) $218,322.00 (80% of $272,902.50) as compensation for professional services rendered and (ii) $3,233.86 for reimbursement of expenses.  As of the date hereof, Akin Gump has not received any objections to the Forty-Fourth Monthly Fee Statement.  As discussed in further detail above, the amount of fees paid to date with respect to the Forty-Fourth Monthly Fee Statement includes those fees incurred by Akin Gump for its services to the Creditors' Committee and excludes fees incurred by Akin Gump in connection with prosecution of the Jointly Asserted Causes of Action.

17.    On August 2, 2022, Akin Gump filed and served the *Forty-Fifth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of June 1, 2022 Through June 30, 2022* [ECF No. 10555] (the "Forty-Fifth Monthly Fee Statement"),[12] pursuant to which Akin Gump sought payment of (i) $330,597.60 (80% of $413,247.00) as compensation for professional services rendered and (ii) $5,377.28 for reimbursement of expenses.  As of the date hereof, Akin Gump has not received any objections to the Forty-Fifth Monthly Fee Statement.  As discussed in further detail above, the amount of fees paid to date with respect to the Forty-Fifth Monthly Fee Statement includes those fees incurred by

---

[11] The Forty-Fourth Monthly Fee Statement amended a prior version of the monthly fee statement for such period, filed on July 21, 2022 [ECF No. 10534], to remove certain expenses unrelated to the Chapter 11 Cases that were inadvertently included.  A copy of the Forty-Fourth Monthly Fee Statement can be accessed at: https://restructuring.ra.kroll.com/sears/Home-DownloadPDF?id1=MTM0MDU3Ng==&id2=-1.

[12] A copy of the Forty-Fourth Monthly Fee Statement can be accessed at: https://restructuring.ra.kroll.com/sears/Home-DownloadPDF?id1=MTM0MDc3OQ==&id2=-1.

Akin Gump for its services to the Creditors' Committee and excludes fees incurred by Akin Gump in connection with prosecution of the Jointly Asserted Causes of Action.

### SUMMARY OF PROFESSIONAL COMPENSATION
### AND REIMBURSEMENT OF EXPENSES REQUESTED

18.      By this Application, Akin Gump requests (i) interim allowance of compensation for services rendered to the Creditors' Committee and the Litigation Designees for the Eleventh Compensation Period in the amount of $1,317,087.50 and reimbursement of expenses incurred in connection therewith in the amount of $87,783.93; (ii) final allowance of compensation for services rendered to the Creditors' Committee and the Litigation Designees during the Final Compensation Period in the amount of $52,112,603.00 and reimbursement of expenses incurred in connection therewith in the amount of $14,241,984.61; and (iii) payment of all unpaid fees and expenses from October 24, 2018 through and including June 30, 2022, including (a) $667,851.70, representing 20% of fees incurred for the period of June 1, 2020 through and including June 30, 2022 in connection with Akin Gump's representation of the Creditors' Committee, which amounts were not previously paid by the Debtors' Estates upon the agreement of Akin Gump, (b) $7,891,262.00 of fees incurred for the period of June 1, 2020 through and including June 30, 2022 in connection with the prosecution of the Jointly Asserted Causes of Action and (c) $957,254.22 of expenses for the period of May 1, 2021 through and including June 30, 2022 in connection with the prosecution of the Jointly Asserted Causes of Action.  During the Eleventh Compensation Period, Akin Gump professionals and paraprofessionals expended a total of 995.10 hours for which compensation is sought.  During the Final Compensation Period, Akin Gump professionals and paraprofessionals expended a total of 63,249.95 hours for which compensation is sought.

19.    The fees charged by Akin Gump in the Chapter 11 Cases are billed in accordance with Akin Gump's existing billing rates and procedures in effect during the Final Compensation Period.    The rates Akin Gump charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin Gump charges for professional and paraprofessional services rendered in comparable non-bankruptcy related matters.    Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.    The disclosures required by the U.S. Trustee Guidelines regarding the customary and comparable compensation are annexed hereto as **Exhibit B**.

20.    Akin Gump maintains computerized records of the time spent by all Akin Gump professionals and paraprofessionals in connection with the Chapter 11 Cases.    Summaries of compensation by timekeeper during the Eleventh Compensation Period and the Final Compensation Period are attached hereto in **Exhibit C**, and summaries of fees by task code during the Eleventh Compensation Period and the Final Compensation Period are attached hereto in **Exhibit D**.    The itemized time records for Akin Gump professionals and paraprofessionals performing services during the Final Compensation Period have been filed and served in the Monthly Fee Statements in accordance with the Interim Compensation Order.

21.    Akin Gump also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services.    Summaries of the categories of expenses and amounts for which reimbursement is requested for the Eleventh Compensation Period and the Final Compensation Period are attached hereto as **Exhibit E**.

22.    A summary of Akin Gump's Monthly Fee Statements filed during the Final Compensation Period is attached hereto as **Exhibit F**, and a summary of the voluntary reductions

taken by Akin Gump in respect of its fees and expenses during the Final Compensation Period is attached hereto as **Exhibit G.**

23.     A summary of hours and fees by project category against budgeted hours and fees for the Eleventh Compensation Period is attached hereto as **Exhibit H**, and a summary of Akin Gump's staffing plan for the Eleventh Compensation Period is attached hereto as **Exhibit I**.

## SUMMARY OF SERVICES PERFORMED BY
## AKIN GUMP DURING THE FINAL COMPENSATION PERIOD

24.     Since its appointment as counsel to the Creditors' Committee almost four years ago and as counsel to the Litigation Designees in connection with confirmation of the Plan, Akin Gump has rendered an extraordinary level of professional service. As described in more detail below, the Creditors' Committee were confronted with myriad complex legal issues throughout the Chapter 11 Cases that required significant effort and attention from Akin Gump and the Creditors' Committee's other professionals on an expedited timeframe. Similarly, the Litigation Designees were tasked with overseeing the prosecution of the Jointly Asserted Causes of Action, an extraordinary complex litigation involving more than 30 claims against nearly 200 defendants. The services provided by Akin Gump during the Final Compensation Period, which includes the Eleventh Compensation Period, were actual and necessary for the administration of the Chapter 11 Cases, performed at the request of the Creditors' Committee and/or the Litigation Designees and commensurate with the complexity and significance of this matter.

25.     The following sections summarize the professional services rendered by Akin Gump throughout the Final Compensation Period. This summary is organized in accordance with Akin Gump's internal system of task codes established at the outset of the Chapter 11 Cases based on the Fee Guidelines. In classifying services into task codes, Akin Gump attempted to place the services performed in the category that most closely related to the services provided.

26.     Moreover, summaries of services rendered during the Final Compensation Period are not intended to be a detailed description of all work performed over the course of nearly four years.  Rather, the summaries highlight certain of those areas in which services were rendered and identify certain matters and issues that Akin Gump was required to address.  Additionally, and particularly in light of the duration of the Chapter 11 Cases, the below provides a higher level summary of the work performed in each task code than each of the ten prior Interim Fee Applications (as defined herein) filed by Akin Gump during the Chapter 11 Cases, which applications can be referenced for additional detail on the work performed.  Finally, the below does not include summaries for certain task codes for which a *de minimis* amount of time was billed during the Final Compensation Period.

A.     **General Case Administration (Task Code 2)**

|  | **Total Hours** | **Total Fees** |
|---|---|---|
| **Eleventh Compensation Period** | 0.70 | $762.50 |
| **Final Compensation Period** | 680.80 | $453,867.50 |

27.     This category includes time spent by Akin Gump professionals and paraprofessionals performing various administrative services in order to represent the Creditors' Committee effectively and efficiently, including, among other things:  (i) general case and procedural research and reviewing background materials; (ii) reviewing and analyzing the motions and orders filed by the Debtors and communications with the Debtors' professionals regarding such motions; (iii) preparing and revising internal task lists; (iv) preparing and filing administrative pleadings on behalf of the Creditors' Committee; and (v) communicating with the members of the Creditors' Committee, the Debtors' advisors and other parties in interest regarding general case administration and related matters.

28.     Throughout the Final Compensation Period, Akin Gump was in close contact with counsel to the Debtors and other relevant parties in interest on a regular basis to discuss when

various motions and applications would be filed and the type of information the Creditors'

Committee would require to analyze each motion or application properly and in a timely manner.

Akin Gump also consulted with FTI and Houlihan regularly with respect to documents and other

information received from the Debtors, their representatives and other parties in interest.

29.     Akin Gump professionals and paraprofessionals also regularly monitored the

docket for the Chapter 11 Cases to remain apprised of critical matters.   For each significant

pleading filed, Akin Gump professionals and paraprofessionals worked to ensure that the

appropriate parties were notified of its contents, relevant response deadlines, hearing dates and any

other critical matters related thereto.   Due to Akin Gump's experience counseling official

committees of unsecured creditors, Akin Gump believes it was able to address all issues relating

to case administration that have arisen during the pendency of the Chapter 11 Cases in an effective

and efficient manner.

**B.     Akin Gump Fee Application/Monthly Billing Reports (Task Code 3)**

|  | **Total Hours** | **Total Fees** |
|---|---|---|
| **Eleventh Compensation Period** | 30.80 | $26,868.00 |
| **Final Compensation Period** | 1,754.60 | $1,234,067.50 |

30.     This category includes time spent by Akin Gump professionals and

paraprofessionals preparing and drafting Akin Gump's prior interim fee applications [ECF Nos.

3190, 4846, 6231, 7816, 8378, 9180, 9412, 9742 and 10154] (together with this Application, the

"Interim Fee Applications") and each of the forty-five monthly fee statements filed by Akin Gump

during the Final Compensation Period (the "Monthly Fee Statements") and responding to all

inquiries and requests regarding the foregoing.   Pursuant to the Interim Compensation Order, each

of the Interim Fee Applications and each of the Monthly Fee Statements contained a list of

individuals who rendered services during the relevant compensation period, information as to each

individual's title, billing rate and hours worked and a comprehensive breakdown of the fees

incurred and disbursements expended. To minimize costs in connection with this time-intensive process, Akin Gump relied on paraprofessionals to prepare the initial drafts of the Interim Fee Applications and Monthly Fee Statements, thereby limiting the time spent by professionals on the review of fees, where reasonably practicable.

**C.    Retention of Professionals (Task Code 6)**

|  | Total Hours | Total Fees |
|---|---|---|
| **Eleventh Compensation Period** | 0.00 | $0.00 |
| **Final Compensation Period** | 892.50 | $461,583.00 |

31.    This category includes time spent by Akin Gump professionals and paraprofessionals with respect to various professional retention matters including, among other things: (i) preparing the Akin Retention Application; (ii) assisting FTI and Houlihan in the preparation and filing of their respective retention applications and declarations in support of the same; and (iii) reviewing and analyzing the retention applications for the Debtors' advisors. With respect to each retention application and any supplements thereto, Akin Gump provided a summary of the key terms of the engagement to the Creditors' Committee and recommendations on any proposed changes to such advisors' terms of engagement. If necessary, Akin Gump, on behalf of the Creditors' Committee, engaged with the Debtors' advisors to discuss the terms of proposed Debtor retentions or any other issues identified with respect to their engagement.

32.    For example, early in the Chapter 11 Cases, Akin Gump, on behalf of the Creditors' Committee, negotiated with Evercore Group L.L.C. ("Evercore") over the terms of its engagement by the Restructuring Subcommittee. When no consensual resolution could be reached, Akin Gump prepared and filed the *Objection of the Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al., to Debtors' Application to Retain and Employ Evercore Group L.L.C. as Investment Banker* [ECF No. 629] (the "Evercore Objection"). Through further negotiation and

following a hearing before the Court on the Evercore Objection, Evercore agreed to, among other things, reduce its proposed minimum fee by over 50% to $1.3 million.

**D.    Creditor Committee Matters/Meetings (Task Code 7)**

|  | Total Hours | Total Fees |
|---|---|---|
| **Eleventh Compensation Period** | 2.50 | $3,500.00 |
| **Final Compensation Period** | 873.80 | $903,565.50 |

33.    This category includes time spent by Akin Gump professionals and paraprofessionals: (i) preparing for and participating in meetings and conference calls with the Creditors' Committee as a whole or with individual members of the Creditors' Committee; (ii) participating in regularly scheduled update calls among the professionals to the Creditors' Committee regarding pending matters and strategy; (iii) attending meetings on behalf of the Creditors' Committee; (iv) responding to numerous inquiries from individual unsecured creditors; and (v) attending to other general Creditors' Committee matters.

34.    The Creditors' Committee played a very active role in the Chapter 11 Cases and Akin Gump, together with the Creditors' Committee's other professionals, held numerous telephonic meetings with the full Creditors' Committee in addition to numerous telephonic conferences with individual Creditors' Committee members.  Prior to each scheduled meeting with the Creditors' Committee, Akin Gump attorneys reviewed pending matters, coordinated with the Creditors' Committee's other advisors and prepared an agenda addressing issues requiring the Creditors' Committee's attention.  In addition, Akin Gump prepared, or assisted FTI and Houlihan in preparing, detailed memoranda and presentations for the Creditors' Committee addressing pertinent matters in the Chapter 11 Cases.

35.    Through meetings, conference calls and correspondence, Akin Gump assisted the Creditors' Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in the Chapter 11 Cases, monitoring closely the Debtors'

management of their business and the Chapter 11 Cases and reaching independent conclusions on the merits of specific matters. Akin Gump professionals and paraprofessionals devoted a significant number of hours to this category in order to provide information relating to the Chapter 11 Cases to the Creditors' Committee and ensure that the Creditors' Committee was prepared to make informed decisions with respect to significant case issues. Although the tasks in this category do not necessarily relate to specific legal issues, they nevertheless were essential because they facilitated Akin Gump's management of the Chapter 11 Cases and supported Akin Gump's performance of other substantive tasks.

**E.    Court Hearings (Task Code 8)**

|  | Total Hours | Total Fees |
|---|---|---|
| **Eleventh Compensation Period** | 14.70 | $19,877.50 |
| **Final Compensation Period** | 3,308.20 | $2,788,033.00 |

36.    This category includes time spent by Akin Gump professionals and paraprofessionals in connection with the court hearings and status conferences held during the Final Compensation Period. Indeed, during the Chapter 11 Cases, Akin Gump participated in over 60 hearings, status conferences and Chambers conferences held before the Court.

37.    Notably, several significant hearings required extensive preparation and participation of numerous Akin Gump attorneys on behalf of both the Creditors' Committee and the Litigation Designees. These hearings included, among others: (i) the three-day, evidentiary hearing held on February 4, 2019, February 6, 2019 and February 7, 2019 (the "Sale Hearing") to approve the Debtors' sale of substantially all of their assets (the "Sale Transaction") to Transform HoldCo, LLC ("Transform"); (ii) the two-day evidentiary hearing held on July 23, 2019 and July 31, 2019 regarding the extent of the Second Lien Parties' (as defined herein) Section 507(b) Claims (as defined herein) and any offsetting 506(c) Surcharges (as defined herein); (iii) the two-day confirmation hearing held on October 3, 2019 and October 7, 2019, which resulted in confirmation

of the Plan on October 7, 2019 and entry of the Confirmation Order on October 15, 2019 [ECF No. 5293]; and (iv) the three-day hearing held on August 19, 2020, August 25, 2020 and August 31, 2020 on the Insider Action Motions to Dismiss (as defined herein).[13]

38.    In preparing for hearings and conferences, Akin Gump professionals and paraprofessionals, together with the Creditors' Committee's and/or Litigation Designees' other advisors, reviewed and analyzed all issues, applicable motions and applications filed with the Court, including any objections and responses thereto, discussed with the Debtors' advisors and other relevant parties the relief requested and, as necessary, asserted the Creditors' Committee's and/or Litigation Designees' positions at such hearings.  In addition, following each hearing or conference, Akin Gump provided the Creditors' Committee and/or Litigation Designees with updates and analyses of the results thereof.

**F.    DIP, Cash Collateral Usage, Adequate Protection and Exit Financing (Task Code 10)**

|  | Total Hours | Total Fees |
|---|---|---|
| **Eleventh Compensation Period** | 308.30 | $421,591.00 |
| **Final Compensation Period** | 1,893.60 | $2,034,575.00 |

39.    This category includes time spent by Akin Gump professionals and paraprofessionals in connection with (i) the Debtors' request for approval of postpetition financing and use of cash collateral and (ii) the Litigation Designees' exploration of various financing alternatives to facilitate the continued prosecution of the Jointly Asserted Causes of Action.

### 1.    Debtors' DIP Financing Efforts

40.    On the Petition Date, the Debtors filed the *Debtors' Motion for Authority to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Certain Protections to Prepetition Secured Parties, and (D) Schedule Second Interim Hearing and Final Hearing* [ECF

---

[13] Fees incurred in respect of the oral arguments on the Insider Action Motions to Dismiss were billed to Task Code 20.

No. 7] (the "DIP Motion"). Pursuant to the DIP Motion, the Debtors sought approval of a $1.83 billion senior secured superpriority priming financing facility (the "DIP ABL Facility"), comprising approximately $300 million of incremental new financing and a roll up of $1.53 billion of claims under the Debtors' prepetition asset-based credit facility. By the DIP Motion, the Debtors also sought to schedule a hearing for approval an anticipated junior term loan facility (the "Junior DIP Facility").

41.     The Creditors' Committee believed that certain aspects of the DIP ABL Facility could unfairly prejudice unsecured creditors and limit the Debtors' flexibility in the Chapter 11 Cases. Accordingly, Akin Gump professionals engaged in a thorough analysis of the terms of the DIP ABL Facility and, on November 14, 2018, filed the *Omnibus Objection of the Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al., to the Debtors' DIP Financing Motion and Cash Management Motion* [ECF No. 740] (the "DIP Objection"), pursuant to which the Creditors' Committee set forth its opposition to, among other things: (i) the proposed roll up under the DIP ABL Facility; (ii) the granting of certain superpriority claims and liens in favor of the lenders under the DIP ABL Facility (the "DIP ABL Lenders"); (iii) the granting of adequate protection liens and claims to the prepetition secured parties; and (iv) the waiver of the Debtors' rights to surcharge collateral.

42.     On November 25, 2018, the Debtors filed a motion seeking approval of a $350 Junior DIP Facility to be provided by a consortium of lenders. In response, on November 26, 2018, the Creditors' Committee filed a supplemental DIP objection [ECF No. 884] (the "Supplemental DIP Objection") to the Junior DIP Facility on grounds that, among other things, it had many of the same deficiencies the Creditors' Committee identified with the DIP ABL Facility. Following the filing of the DIP Objection and the Supplemental DIP Objection, Akin Gump, on

behalf of the Creditors' Committee, continued efforts to reach a resolution of the articulated objections and subsequently reached agreement with the Debtors and the DIP ABL Lenders resolving all of the Creditors' Committee's DIP-related objections.  The Court ultimately entered orders approving the DIP ABL Facility on November 30, 2018 [ECF No. 955] and the Junior DIP Facility on December 28, 2018 [ECF No. 1436].

### 2.    Litigation Financing Efforts

43.    This category also includes time spent by Akin Gump professionals over the course of the past year analyzing issues in connection with various financing alternatives to facilitate the continued prosecution of the Jointly Asserted Causes of Action.  In light of the protracted nature of the Consolidated Adversary Proceeding (as defined herein), the complex legal issues implicated and the number of well-represented parties, the Litigation Designees, on behalf of the Debtors' estates, determined that the initial funding allocated under the Confirmation Order would be insufficient to fund the prosecution (through trial) of the Jointly Asserted Causes of Action and, ultimately, ensure that the value of such actions was maximized for the benefit of the Debtors' estates and creditors.

44.    Accordingly, Akin Gump, at the direction of the Litigation Designees and on behalf of the Debtors' estates, (i) analyzed the extent to which third party financing could be obtained and the amount of additional funding necessary to prosecute the Jointly Asserted Causes of Action to completion, (ii) explored various alternatives in connection with the same and (iii) negotiated with potential third party providers of such financing and reached an agreement in principle with a proposed funder.

45.    Through these efforts, on April 21, 2022, Akin Gump prepared and filed the *Motion of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to Bankruptcy*

*Code Sections 105, 362, 364 and 1142 and Bankruptcy Rules 3020(d), 4001 and 9014 Authorizing Entry by the Debtors' Estates into the Litigation Funding Arrangement with Bench Walk 21p, L.P.* [ECF No. 10407] (the "<u>Litigation Funding Motion</u>").  As described further in the Litigation Funding Motion, the proposed funding would have provided up to $35 million for purposes of prosecuting the Jointly Asserted Causes of Action.  By agreement among the parties in interest, however, Akin Gump filed the Litigation Funding Motion while a mediation in respect of the Insider Action (the "<u>Mediation</u>") was ongoing.  *See Order Appointing Mediators* [Adv. Pro. 19-08250; ECF No. 270].  The hearing on the Litigation Funding Motion was adjourned from June 29, 2022 to a date to be determined.[14]  As part of the *Joint Motion of Debtors and Official Committee of Unsecured Creditors for Entry of an Order Approving Settlement Agreements, Granting Certain Related Relief and Authorizing Certain Nonmaterial Plan Modifications in Furtherance of the Effective Date of the Plan* (the "<u>Settlement Motion</u>") [ECF No. 10566], filed contemporaneously herewith, the parties have agreed to further stay the Litigation Funding Motion pending approval of the Settlement Motion and, upon entry of a final approving the Settlement Motion, the Litigation Funding Motion will be withdrawn.

## G.    General Claims Analysis/Claims Objections (Task Code 12)

|  | Total Hours | Total Fees |
|---|---|---|
| **Eleventh Compensation Period** | 0.60 | $840.00 |
| **Final Compensation Period** | 931.80 | $879,135.50 |

46.    This category includes time spent throughout the Final Compensation Period by Akin Gump professionals and paraprofessionals reviewing and analyzing claims and potential claims against the Debtors' estates, as well as working with the Debtors' professionals to establish

---

[14] *See Notice of Cancellation and Adjournment of Hearing on Motion of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to Bankruptcy Code Sections 105, 362, 364 and 1142 and Bankruptcy Rules 3020(D), 4001 and 9014 Authorizing Entry by the Debtors' Estates into the Litigation Funding Arrangement with Bench Walk 21p, L.P.* [ECF No. 10531].

procedures in connection therewith.  Specifically, Akin Gump, in conjunction with FTI and

Houlihan, worked with the Debtors' advisors to determine the amount and validity of secured,

priority, administrative and unsecured claims asserted against the Debtors' estates.  In connection

with the same, Akin Gump, together with FTI: (i) performed analyses with respect to the bases for

various claims and potential settlements thereof, including administrative expense claims; (ii)

participated in negotiations among the Debtors and certain creditors asserting secured or

administrative expense claims, including participation in meetings and discussions with the Pre-

Effective Date Committee established pursuant to the Confirmation Order; (iii) reviewed analyses

prepared by the Debtors' advisors to pursue preference actions under Bankruptcy Code section 547

and other comparable actions under applicable nonbankruptcy law to understand, among other

things, the potential offsets to asserted claims; (iv) analyzed various issues regarding the resolution

of claims pursuant to the Administrative Expense Claims Consent Program and all distributions

on account thereof; and (v) provided the Creditors' Committee with updates regarding the

foregoing, including claims pool estimates and issues related thereto.

**H.     Analysis of Pre-Petition Transactions (Task Code 13) and Jointly Asserted Causes
of Action (Task Code 20)[15]**

|  | Total Hours (TC 013) | Total Fees (TC 013) |
|---|---|---|
| **Eleventh Compensation Period** | 0.00 | $0.00 |
| **Final Compensation Period** | 12,807.30 | $9,386,844.00 |
|  | Total Hours (TC 020) | Total Fees (TC 020) |
| **Eleventh Compensation Period** | 624.10 | $825,525.50 |
| **Final Compensation Period** | 22,074.40 | $17,891,262.00 |

47.     These categories include time spent by Akin Gump professionals and

paraprofessionals conducting a comprehensive investigation (the "Investigation") into the series

---

[15] As described further herein, pursuant to the Confirmation Order and effective as of the date thereof, Akin Gump serves as "primary litigation counsel to act on behalf of the Litigation Designees to investigate, commence, prosecute and otherwise litigate the Jointly Asserted Causes of Action" in addition to its role as counsel to the Creditors' Committee. *See* Confirmation Order ¶ 22.  To facilitate review of Akin Gump's fees attributable to its role as counsel

of prepetition related-party transactions that preceded the commencement of the Chapter 11 Cases and potential claims and causes of action arising therefrom (*i.e.*, the Jointly Asserted Causes of Action). Ultimately, as described below, this Investigation resulted in the filing of the Amended Complaint (as defined herein) by the Creditors' Committee, which complaint included 26 additional counts and 27 additional defendants not previously included in the Restructuring Subcommittee's Original Complaint (as defined herein). Following confirmation of the Plan, the Litigation Designees were tasked with overseeing the prosecution of the Jointly Asserted Causes of Action. The below details the most material services performed by Akin Gump on behalf of the Estates with respect to these matters.[16]

### 1. Rule 2004 Investigation

48.     On November 6, 2018, shortly after being retained by the Creditors' Committee, Akin Gump attorneys prepared and filed a motion pursuant to Bankruptcy Rule 2004 to conduct an investigation into the prepetition related-party transactions. *See Motion of the Official Committee of Unsecured Creditors of Sears Holdings Corporation et al. for the Entry of an Order Pursuant to Bankruptcy Code Section 105 and Federal Rules of Bankruptcy Procedure 2004, 9006, and 9016 Authorizing Expedited Discovery of the Debtors and Third Parties* [ECF No. 484] (the "Rule 2004 Motion"). The Court approved the Rule 2004 Motion on November 16, 2018.

49.     Following the approval of the Rule 2004 Motion, and in coordination with the counsel to the Restructuring Subcommittee, Akin Gump attorneys engaged in significant document

---

to the Litigation Designees following entry of the Confirmation Order, a separate task code (Task Code 20) contains all such work. Moreover, given the ongoing nature of the work performed by Akin Gump in respect of Investigation (as defined herein) and then prosecuting the Jointly Asserted Causes of Action—both prior to confirmation of the Plan on behalf of the Creditors' Committee and then following confirmation on behalf of the estates and at the direction of the Litigation Designees—the task codes covering this work are summarized together.

[16] As set forth in the Settlement Motion, many of the claims and causes of action underlying the Jointly Asserted Causes of Action are contemplated to be settled pursuant to the terms of the Settlement Agreement (as defined herein), subject to approval by the Court.

discovery. Specifically, Akin Gump professionals served approximately 28 document requests and subpoenas and reviewed over 360,000 documents and 6.3 million pages produced in the Chapter 11 Cases in connection with the Investigation. During this time, Akin Gump professionals also prepared for and participated in the interviews of the following key witnesses in connection with the Investigation: (i) Edward S. Lampert; (ii) Kunal S. Kamlani; (iii) Naren Sinha; (iv) Rob Riecker; (v) Ann Reese; (vi) Scott Charles; (vii) Jeff Schiedemeyer; (viii) Marc Puntus; (ix) Richard Latella; (x) Rob Schriesheim; (xi) Jeffrey Stollenwerck; and (xii) Myron Marcinkowski. To prepare for each interview, Akin Gump professionals and paraprofessionals reviewed hundreds of public and nonpublic documents to distill the complex factual background underlying the prepetition transactions, prepared compilations of key documents to be presented to each interviewee and drafted outlines to facilitate effective questioning. Following each interview, Akin Gump attorneys reviewed the witness's testimony and related documentation and incorporated the testimony into legal memoranda.

50. The Investigation resulted in the Creditors' Committee filing a standing motion on January 23, 2019, whereby the Creditors' Committee sought authority to pursue certain claims and causes of action against the ESL Parties on behalf of the estates. *See Motion of the Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al. for Entry of an Order Granting (I) Leave, Standing, and Authority to Commence and Prosecute Claims on Behalf of the Debtors' Estates and (II) Non-Exclusive Settlement Authority in Respect of Such Claims* [ECF No. 1765] (the "Standing Motion"). The Standing Motion totaled 125 pages and attached a complaint totaling 109 pages and asserting 14 separate claims and cause of action. Ultimately, the Standing Motion was withdrawn[17] in connection with the Debtors' agreement to grant the Creditors'

---

[17] Closely related to the Standing Motion and the Investigation, Akin Gump, on behalf of the Creditors' Committee prepared and filed the *Preliminary Omnibus Objection of the Official Committee of Unsecured Creditors of Sears*

Committee joint standing to prosecute the Jointly Asserted Causes of Action, as directed by the Litigation Designees, in connection with the Committee Settlement in the Plan.

51.    On April 17, 2019, as a result of its own investigation, the Restructuring Subcommittee filed a complaint on behalf of certain of the Debtors and their Estates against the ESL Parties and certain other defendants [ECF No. 3278] (the "Original Complaint") to commence the adversary proceeding captioned *Sears Holdings Corp. v. Lampert*, Case No. 19-08250 (RDD) (Bankr. S.D.N.Y.) (the "Insider Action"). The Original Complaint sought over $2 billion in damages arising from certain prepetition related-party transactions. In the period following the filing of the Original Complaint and confirmation of the Plan, Akin Gump attorneys carefully reviewed the Original Complaint and worked with counsel to the Restructuring Subcommittee to prepare potential amendments thereto.

### 2.    The Adversary Proceeding

52.    The Plan confirmed by the Court on October 7, 2019 contemplated that the Debtors' remaining assets would be transferred to the Liquidating Trust. *See* Plan Art X.3. At the time of confirmation, however, the Debtors did not have sufficient cash to consummate the Plan. Therefore, for the interim period between confirmation and the Effective Date, the Confirmation Order provided for the immediate appointment of the initial members of the Liquidating Trust Board to serve as the Litigation Designees and oversee the prosecution of the Jointly Asserted Causes of Action with the same "rights and entitlement to be afforded to the Liquidation Trust Board on the Effective Date of the Plan in respect of the Jointly Asserted Causes of Action." *See* Confirmation Order ¶ 18.

---

*Holdings Corporation, et al. to the ESL Proofs of Claim* [ECF No. 2025] (the "ESL Claim Objection") on January 26, 2019. Ultimately, like the Standing Motion, the ESL Claim Objection was withdrawn.

53.     In addition, the Confirmation Order granted the Creditors' Committee joint standing with the Debtors to pursue the Jointly Asserted Causes of Action and authorized the retention of Akin Gump as primary litigation counsel "to act on behalf of the Litigation Designees to investigate, commence, prosecute, and otherwise litigate the Jointly Asserted Causes of Action." Id. ¶¶ 17, 22.

54.     In accordance with the foregoing, on November 25, 2019, the Creditors' Committee, on behalf of and together with certain of the Debtors and their Estates (collectively, the "Plaintiffs"), and at the direction of the Litigation Designees, filed an amended complaint in the Insider Action [Case No. 19-8250, ECF No. 52] (the "Amended Complaint").  The Amended Complaint was based on the Investigation described above.

55.     Leading up to the filing of the Amended Complaint, Akin Gump professionals conducted extensive legal research and analysis of several dozen discrete legal issues in connection with potential claims arising from the Debtors' prepetition transactions.  That research and analysis ultimately resulted in 26 additional counts and 27 additional defendants (collectively, the "Insider Action Defendants") not previously included in the Original Complaint.  It also eliminated claims related to three related-party transactions the Litigation Designees did not view as likely to be successful.  Critically, the new claims asserted in the Amended Complaint included breach of fiduciary duty claims against certain of the Debtors' directors and officers related to the Lands' End Spin-off and the Seritage Transaction, thereby triggering substantial additional D&O liability insurance coverage.

56.     For the almost three years following the filing of the Amended Complaint in November 2019, Akin Gump has prosecuted the Jointly Asserted Causes of Action.  Specifically, on behalf of the estates and at the direction of the Litigation Designees, Akin Gump, among other

things: (i) served 19 sets of document requests on the Insider Action Defendants and approximately 33 subpoenas on third parties; (ii) exchanged dozens of letters with discovery targets and engaged in more than 100 meet-and-confers regarding document productions and privilege logs; (iii) secured the production of approximately 500,000 documents by the defendants, more than 12 million documents by Transform and approximately 350,000 by all other third parties; (iv) reviewed and analyzed the voluminous discovery produced in anticipation of depositions, including the drafting of multiple memoranda; (v) interviewed, retained, provided materials to and reviewed preliminary analyses of six consulting and testifying experts; and (vi) as described below, briefed and argued myriad motions to dismiss filed by certain of the Insider Action Defendants.

57.    Following the filing of the Amended Complaint, on February 21, 2020, the Insider Action Defendants filed 15 separate motions to dismiss (totaling 437 pages) [Adv. Pro. No. 19-08250; ECF Nos. 95-101, 103-111, 113-116, 118-127, 129-137] (collectively, the "Insider Action Motions to Dismiss").  Akin Gump professionals devoted significant time to reviewing the Insider Action Motions to Dismiss, as well as supporting affidavits and exhibits.  Specifically, Akin Gump professionals analyzed all case law cited in support of the Insider Action Motions to Dismiss, performed legal research related to issues raised therein and prepared three separate briefs in opposition thereto (totaling 373 pages) [Adv. Pro. No. 19-08250; ECF Nos. 163-165] (the "Opposition Briefs").  In connection with the Opposition Briefs, Akin Gump professionals conducted extensive research and prepared detailed analyses with respect to discrete legal issues arising in connection with the arguments asserted in the Insider Action Motions to Dismiss.  Akin Gump professionals also spent considerable time reviewing the reply briefs filed by certain Defendants [Adv. Pro. No. 19-08250; ECF Nos. 174-189], analyzing case law cited therein and preparing for oral argument with respect to the Insider Action Motions to Dismiss.

58.    On August 19, 2020, August 25, 2020 and August 31, 2020, Akin Gump professionals presented oral arguments to the Court on the Insider Action Motions to Dismiss.  As of the date hereof, the Court has not issued rulings on the Insider Action Motions to Dismiss.

### 3.    The Public Shareholder Action

59.    Akin Gump professionals also identified public shareholders of the Debtors who benefited from certain of the transactions challenged under the Amended Complaint and worked with ASK LLP as appropriate in connection with the Public Shareholder Action (as defined below). Akin Gump, together with conflicts counsel, identified the public shareholders in an extensive discovery process in which counsel served and negotiated 127 subpoenas.

60.    On October 15, 2020, ASK LLP filed an adversary complaint to commence the action captioned *Sears Holdings Corp. v. Tisch,* Case No. 20-07007 (RDD) (Bankr. S.D.N.Y.) (the "Public Shareholder Action" and, together with the Insider Action, the "Consolidated Adversary Proceeding") against 139 public shareholders of Sears Holdings, each of whom, individually or collectively with affiliates, received in excess of $2 million in benefits from either or both of the Lands' End Spin-off and Seritage Transaction [Case No. 20-7007, ECF No. 1] (collectively, the "Public Shareholder Defendants").

61.    On January 19, 2021, the Public Shareholder Defendants filed numerous motions to dismiss the Public Shareholder Action [Case No. 20-7007, ECF Nos. 39-40, 43, 46, 48, 55, 60-65, 67] (collectively, the "Public Shareholder Action Motions to Dismiss").  On February 19, 2021, the Creditors' Committee, on behalf of the Estates, filed its opposition brief [Case No. 20-7007, ECF No. 94].  On March 5, 2021, the Public Shareholder Defendants filed their reply briefs [Case No. 20-7007, ECF Nos. 109-112] and, on March 12, 2021, the Court heard oral argument on the

Public Shareholder Action Motions to Dismiss [Case No. 20-7007, ECF Nos. 109-112]. As of the

date hereof, the Court has not issued rulings on the Public Shareholder Action Motions to Dismiss.

### 4.    D&O Insurance Coverage Litigation

62.    During the pendency of the Insider Action and Public Shareholder Action, certain

Defendants who are former directors of Sears Holdings Corporation (the "Director Defendants")

litigated a state court action in New York, captioned *Alvarez v. XL Specialty Insurance Co.*, Case

No. 655391/2019 (N.Y. Sup. Ct. Sept. 17, 2019), with certain providers of liability insurance (the

"D&O Coverage Proceeding") regarding the extent to which coverage is available for the fees the

Director Defendants have incurred (and continue to incur) defending against the Insider Action

and Public Shareholder Action and potential damages awards issued in connection therewith.

Later, Defendant Seritage Growth Properties, L.P. ("Seritage") filed a separate state court action

in Delaware, captioned *Seritage Growth Properties, L.P. v. QBE Insurance Corp.*, Case No. N21C-

03-015 (Del. Super. Ct. Mar. 2, 2021) (the "Seritage Coverage Proceeding" and, together with the

D&O Coverage Proceeding, the "Insurance Coverage Proceedings").

63.    In light of the potential effects the Insurance Coverage Proceedings on the insurance

proceeds recoverable by the Plaintiffs in the Insider and Public Shareholder Actions, Akin Gump

professionals devoted time to monitoring the Insurance Coverage Proceedings, engaging in

discussions and correspondence related thereto and performing research and analyses in

connection therewith.

### 5.    Mediation

64.    On April 6, 2022, by agreement of the Plaintiffs and the Defendants, the Court

entered an order appointing the Honorable Shelley C. Chapman, the Honorable James M. Peck,

Ret. and Jed D. Melnick as mediators (the "Mediators") in the Insider Action [Case No. 19-8250,

ECF No. 270] (the "Mediation Order").[18]    The mediation parties included the Debtors, the Litigation Designees, the Insider Action Defendants, the Admin Representative and the D&O insurance carriers (the "Mediation Parties").  *See* Mediation Order ¶ 3.

65.    On May 31, 2022, the Court entered an order [Case No. 19-8250, ECF No. 275] extending the Mediation from May 23, 2022 through June 13, 2022, and providing the Mediators with the right to extend the Mediation in their sole discretion and without further order of the Court.

66.    On June 14, 2022, the Mediators filed a notice extending the Mediation through and including June 30, 2022.  The Mediation has continued since that date.

67.    On August 9, 2022, as a result of the Mediation, the Mediation Parties and others agreed to the terms of a settlement agreement (the "Settlement Agreement") that will largely resolve the Consolidated Adversary Proceeding, end certain disputes between the Debtors and Transform, significantly de-risk the Second Circuit 507(b) Appeals (as defined herein) and otherwise narrow the remaining open issues in the Chapter 11 Cases.  *See* Settlement Motion. Most significantly, in consideration of the resolutions in the Settlement Motion, the Defendants and other parties will pay to the Estates approximately $180 million.  This cash and the elimination of the financial burdens and uncertainty associated with litigating the disputes underlying the Settlement Motion will allow the Debtors to facilitate distributions to creditors and pave the way to emergence.

68.    Since the Mediation began in April 2022, Akin Gump professionals spent considerable time preparing for and participating in Mediation sessions, preparing a confidential

---

[18] While neither the Public Shareholder Action nor any ancillary issues related to the Estates were originally subject to the Mediation, the Settlement Agreement largely resolves the Public Shareholder Action (and provides a mechanism for additional defendants in that action who have not done so already to settle and avoid further litigation) and certain ancillary disputes according to the terms set forth therein.

Mediation statement and negotiating the terms of a resolution to resolve myriad gating issues with various parties in interest. Ultimately, Akin Gump's efforts were critical in facilitating agreement on the terms of the Settlement Agreement.

## I.    Secured Creditor Issues/Communications/Meetings (Task Code 15)

|  | Total Hours | Total Fees |
|---|---|---|
| **Eleventh Compensation Period** | 0.00 | $0.00 |
| **Final Compensation Period** | 2,081.70 | $1,666,952.00 |

69.    This category includes time spent by Akin Gump professionals and paraprofessionals conducting a comprehensive review and analysis of the Debtors' secured debt. As of the Petition Date, the Debtors and their non-Debtor affiliates had funded debt obligations totaling approximately $5.6 billion, approximately $4 billion of which was secured. At the outset of the Chapter 11 Cases, Akin Gump attorneys reviewed each of the secured debt documents to determine the extent and validity of certain prepetition liens and reviewed the results of lien searches to determine the extent to which security interests were perfected properly. Thereafter, Akin Gump professionals prepared extensive summaries and memoranda detailing the results of their findings, an analysis of the various facilities and any issues arising therefrom.

70.    In addition, this category includes time spent by Akin Gump professionals and paraprofessionals in connection with claims asserted by ESL, Cyrus Capital Partners, L.P. ("Cyrus") and Wilmington Trust, N.A. ("Wilmington Trust" and, together with ESL and Cyrus, the "Second Lien Parties") arising under Bankruptcy Code section 507(b) (the "Section 507(b) Claims"), and the Debtors' proposed surcharges of the Second Lien Parties' collateral pursuant to Bankruptcy Code section 506(c) (the "506(c) Surcharges"). Specifically, Akin Gump attorneys, along with the Creditors' Committee's other advisors, performed, among others, the following tasks in connection with the litigation of the Section 507(b) Claims and 506(c) Surcharges before the Court:

- analyzed the common reply brief [ECF No. 4439] and each of the individual reply briefs filed by the Second Lien Parties [ECF Nos. 4440, 4441, 4445];

- reviewed each expert report and supplemental declaration filed by the Debtors [ECF No. 4567] and the Second Lien Parties [ECF Nos. 4569, 4571, 4573];

- reviewed and analyzed expert and fact discovery regarding the Section 507(b) Claims and 506(c) Surcharges, including the various motions *in limine* to exclude or strike certain testimony [ECF Nos. 4564, 4564, 4566, 4568, 4570];

- participated in the depositions of the Second Lien Parties' three witnesses and the Debtors' two witnesses; and

- attended and participated in the two-day evidentiary hearing on the Section 507(b) Claims and 506(c) Surcharges before the Court.

71.     Following extensive briefing, discovery and submission of expert reports, the Court held a two-day evidentiary trial in connection with the parties' disputes regarding the Section 507(b) Claims and 506(c) Surcharges and ordered that (x) the Second Lien Parties were not entitled to any Section 507(b) Claims [ECF No. 4740] (the "507(b) Order") and (y) the Debtors had not satisfied their burden of establishing the 506(c) Surcharges [ECF No. 4793] (the "506(c) Order").

72.     Thereafter, in August 2019, the Second Lien Parties each filed notices of appeal of the 507(b) Order (the "507(b) Appeals") to the United States District Court for the Southern District of New York (the "District Court") [Case Nos. 7:19-cv-7660-VB; 7:19-cv-07697-VB; 7:19-cv-7782-VB], which cases subsequently were consolidated [Case No. 7:19-cv-7660-VB, ECF No. 23].

73.     On September 18, 2019, ESL filed the *Motion of ESL for Certification of Direct Appeal to the United States Court of Appeals for the Second Circuit*, [Case No. 7:19-cv-07660 (VB); ECF No. 6] (the "Certification Motion").[19]  Akin Gump professionals worked closely with Debtors' counsel to consider the relief requested in the Certification Motion and potential

---

[19] Cyrus and Wilmington Trust filed joinders to the Certification Motion on September 17, 2019 and September 18, 2019, respectively [Case No. 7:19-cv-07660 (VB); ECF Nos. 12, 14].

responses thereto.  On October 8, 2019, Akin Gump, on behalf of the Creditors' Committee filed the *Opposition of the Official Committee of Unsecured Creditors to Motion to Certify Direct Appeals to the Second Circuit*, [Case No. 7:19-cv-07660; ECF No. 33] (the "Committee Opposition to Certification").[20]  After filing the Committee Opposition to Certification, Akin Gump professionals participated in a status conference before the District Court, during which the District Court denied the Certification Motion, largely on the grounds put forward by the Debtors and the Creditors' Committee.  *See Order*, Case No. 7:19-cv-07660 (VB); ECF No. 40.

74.    On November 1, 2019, following the District Court's denial of the Certification Motion filed by the Second Lien Parties,[21] the Second Lien Parties submitted to the District Court their joint appellant brief setting forth several arguments in favor of granting their asserted Section 507(b) Claims.  *See* Case No. 7:19-cv-07660 (VB); ECF No. 45.[22]

75.    On December 9, 2019, the Debtors and the Creditors' Committee filed their joint appellee brief [Case No. 7:19-cv-07660; ECF No. 51] in which they argued, among other things, that the Court's valuation methodology was consistent with the Supreme Court's ruling in *Rash* and otherwise contested the Second Lien Parties' remaining arguments.  In preparing the appellee

---

[20] Similarly, on October 8, 2019 the Debtors filed the *Debtors' Memorandum of Law in Opposition to Motion for Certification of Direct Appeal*, [Case No. 7:19-cv-07660 (VB); ECF No. 31].

[21] Specifically, on September 18, 2019, ESL filed the *Motion of ESL for Certification of Direct Appeal to the United States Court of Appeals for the Second Circuit*, 19-cv-07660 (VB), [ECF No. 6] (the "Certification Motion").  Cyrus and Wilmington Trust filed joinders to the Certification Motion on September 17, 2019 and September 18, 2019, respectively.  In response, on October 8, 2019, Akin Gump, on behalf of the Creditors' Committee filed the *Opposition of the Official Committee of Unsecured Creditors to Motion to Certify Direct Appeals to the Second Circuit*, 19-cv-07660, [ECF No. 33].  On October 17, 2019, Akin Gump attorneys participated in a status conference before the District Court, during which the District Court denied the Certification Motion, largely on the grounds put forward by the Debtors and the Creditors' Committee.  *See* 19-cv-7660 (VB), [ECF No. 40].

[22] On August 27, 2019 and September 4, 2019, respectively, the Debtors and the Creditors' Committee appealed the 507(b) Order's denial of a surcharge under Bankruptcy Code section 506(c) to the District Court [Case Nos. 7:19-cv-8002-NSR; 7:19-cv-8237-UA] (the "506(c) Appeals").  The 506(c) Appeals subsequently were stayed pending resolution of the 507(b) Appeals.  *See* Memorandum Opinion and Order, Case No. 7:19-cv-8002-NSR, ECF No. 25.

brief, Akin Gump attorneys worked closely with Debtors' counsel to research and develop the arguments in support of the Court's ruling in connection with entry of the 507(b) Order.

76.     On September 1, 2020, the District Court affirmed the Court's decision regarding the Second Lien Parties' asserted Section 507(b) Claims. *See* Opinion and Order, Case No. 7:19-cv-7660-VB; ECF No. 59.

77.     On September 30, 2020, each of the Second Lien Parties appealed the District Court's decision to the United States Court of Appeals for the Second Circuit [Case Nos. 20-3343; 20-3346; 20-3349] (the "Second Circuit 507(b) Appeals"). On September 24, 2021, the Second Circuit heard oral argument. As of the date hereof, the Second Circuit 507(b) Appeals remain pending before the Second Circuit, and no decision has been issued.

78.     Finally, in connection with the Mediation, Akin Gump worked closely with Debtors' counsel to resolve certain issues in connection with the appeals, which resolutions are incorporated into the Settlement Agreement.

**J.     Automatic Stay Issues (Task Code 16)**

|  | Total Hours | Total Fees |
|---|---|---|
| **Eleventh Compensation Period** | 0.00 | $0.00 |
| **Final Compensation Period** | 398.30 | $334,713.00 |

79.     This category includes time spent throughout the Chapter 11 Cases by Akin Gump professionals and paraprofessionals reviewing and analyzing each of the motions for relief from the automatic stay under Bankruptcy Code section 362 filed in the Chapter 11 Cases (collectively, the "Lift Stay Motions"), including, among others, the Lift Stay Motions filed by (i) FTI Consulting Canada, Inc., the Honourable J. Douglas Cunningham, Q.C., Morneau Shepell Ltd. and 1291079 Ontario Limited (collectively, the "Canadian Plaintiffs") on April 16, 2019 [ECF No. 3237], through which the Canadian Plaintiffs sought to join Sears Holdings Corporation as a named defendant in proceedings before the Ontario Superior Court of Justice relating to certain

prepetition dividends and (ii) certain of the Director Defendants on August 8, 2019 [ECF No. 4794], through which the Director Defendants sought and order permitting certain insurance carriers to reimburse the Director Defendants for defense costs the Director Defendants anticipated incurring in connection with the Consolidated Adversary Proceeding. In connection therewith, Akin Gump attorneys (a) analyzed the relief requested in each motion, (b) conducted legal research regarding the automatic stay and its applicability to the relevant disputes, (c) reviewed all pleadings and underlying documentation, (d) held conference calls with the Debtors' professionals to ascertain and understand the Debtors' position on each of the Lift Stay Motions and (e) analyzed the effect the relief requested by the Lift Stay Motions would have on the Debtors' estates and creditors.

**K.     Labor Issues/Employee Benefits (Task Code 19)**

|  | Total Hours | Total Fees |
|---|---|---|
| **Eleventh Compensation Period** | 0.00 | $0.00 |
| **Final Compensation Period** | 475.50 | $437,051.50 |

80.     This category includes time spent by Akin Gump professionals and paraprofessionals reviewing, analyzing and negotiating the Debtors' proposed incentive plans and severance packages for certain of the Debtors' employees. Specifically, at the outset of the Chapter 11 Cases, the Creditors' Committee negotiated with the Debtors regarding the Debtors' key employee incentive plan (the "KEIP") and key employee retention plan (the "KERP," and together with the KEIP, the "Incentive Plans").

81.     As a result of the Creditors' Committee's input, the Incentive Plans subsequently approved by the Court in December 2019 contained several modifications, including with regard to, among other things: (i) notice rights for the Creditors' Committee and others with respect to the Debtors' intent to pay any KEIP award on account of certain acceleration events; (ii) the proposed payouts for each KEIP participant in advance of any acceleration payment; (iii)

performance with respect to the cash flow targets for the performance periods; (iv) the timing of payments; and (v) the effect of certain change of control events on KEIP or KERP awards.

82.     This category also includes time spent by Akin Gump professionals and paraprofessionals reviewing and analyzing the terms of the PBGC Settlement incorporated into the Plan and Confirmation Order.  Negotiations relating to the PBGC Settlement began on January 26, 2019, after PBGC objected to the Sale Transaction.  In order to resolve PBGC's objection, the Debtors entered into the PBGC Settlement, pursuant to which PBGC would, among other things: (i) withdraw its objection to the Sale Transaction; (ii) take reasonable efforts to ensure that non-Debtor KCD IP, LLC ("KCD") waived its claims against the Debtors; (iii) release the Debtors of all pension funding liabilities and waive any termination premiums; and (iv) vote in favor of the Plan.  In consideration thereof, the PBGC Settlement called for PBGC to receive an allowed general unsecured claim against each Debtor in the amount of $800 million as well as a priority interest in the first $80 million of proceeds (which subsequently was increased to $97.5 million) recovered from the Liquidating Trust.

83.     Leading up to confirmation of the Plan, Akin Gump professionals evaluated the terms of the PBGC Settlement and analyzed the potential impact of the PBGC Settlement on unsecured creditors' recoveries.  Ultimately, the Debtors, PBGC and the Creditors' Committee agreed to the terms of the PBGC Settlement, thereby reducing significantly the amount of PBGC's asserted claims against the estates and ensuring PBGC's support of the Plan.

84.     Finally, this category includes time spent by Akin Gump professionals and paraprofessionals in connection with the motion to appoint an official committee of retired employees (the "1114 Committee"), which was filed by former employees of Sears, Roebuck & Co. on May 28, 2019 [ECF No. 4054] (the "Retirees" and such motion, the "Retiree Motion").

85.     In connection with the Retiree Motion, the Retirees asserted that, pursuant to a prepetition settlement, the Debtors were prohibited from modifying or terminating a certain life insurance benefit plan with respect to certain former employees that were part of a class action (the "Life Insurance Plan") and that the Debtors violated such settlement when they abruptly terminated the Life Insurance Plan as of March 15, 2019.  The Debtors objected to the Retiree Motion on June 14, 2019 [ECF No. 4238] (the "Objection to Retiree Motion") and filed a motion seeking to modify the terms of certain life insurance plans [ECF No. 4635] (the "1114 Motion") in accordance with a draft settlement proposal made to the 1114 Committee (the "Initial Proposal"), which the Creditors' Committee reviewed and approved.

86.     On August 6, 2019, the 1114 Committee rejected the Initial Proposal, offered a counterproposal (the "Retirees' Counterproposal") and filed an objection to the 1114 Motion [ECF No. 4768] (the "Retirees' 1114 Objection").   Akin Gump attorneys worked closely with the Debtors' professionals in an effort to understand the terms of the Retirees' Counterproposal and evaluate the impact that such proposal would have on the Debtors' financial condition and ability to confirm a plan.

87.     Following numerous discussions, on August 15, 2019, the Debtors, with the approval of the Creditors' Committee, proposed a revised settlement to the 1114 Committee, which the 1114 Committee accepted on the eve of the Confirmation Hearing.  On October 10, 2019, the Court entered an order: (i) permitting the Debtors to terminate the Life Insurance Plans; and (ii) authorizing the Debtors to implement the terms of the revised settlement [ECF No. 5015].

L.      **Disclosure Statement/Solicitation/Plan/Confirmation (Task Code 22)**

|  | Total Hours | Total Fees |
|---|---|---|
| **Eleventh Compensation Period** | 10.80 | $14,787.50 |
| **Final Compensation Period** | 4,174.90 | $3,993,320.50 |

88.     This category includes time spent by Akin Gump professionals and paraprofessionals during the Chapter 11 Cases in connection with, among other things, the review and analysis of the various iterations of the Debtors' plan of reorganization and associated disclosure statements following the sale of substantially all of the Debtors' assets to Transform.

89.     Specifically, on April 17, 2019, the Debtors filed an initial chapter 11 plan [ECF No. 3275] (the "Initial Plan") and associated disclosure statement (the "Initial Disclosure Statement") [ECF No. 3276]. On May 16, 2019, Debtors filed amended versions of the Initial Plan [ECF No. 3894] (the "Amended Plan") and Initial Disclosure Statement [ECF No. 3895] (the "Amended Disclosure Statement"). Among other changes from the Initial Plan, the Amended Plan provided for (i) the substantive consolidation of the Debtors' estates and (ii) a $17.5 million increase (from $80 million to $97.5 million) in PBGC's priority interest in proceeds recovered from the Liquidating Trust.

90.     Akin Gump engaged in extensive negotiations with the Debtors and their advisors regarding the terms of the Initial Plan and the Amended Plan and the treatment of unsecured creditors thereunder. Despite these efforts, the Creditors' Committee believed that the Amended Disclosure Statement did not adequately address certain issues of key significance to unsecured creditors. Thus, on May 22, 2019, Akin Gump, on behalf of the Creditors' Committee, filed an objection to the Disclosure Statement [ECF No. 3995] (the "Disclosure Statement Objection"), in which it argued that the Amended Plan: (i) was patently unconfirmable; (ii) prejudiced the prosecution of the Jointly Asserted Causes of Action; (iii) prevented unsecured creditors from selecting the members of the Liquidating Trust Board; and (iv) failed to satisfy the best interests

of creditors test under Bankruptcy Code section 1129(a)(7).  Subsequently, on May 28, 2019, the Debtors filed a second amended plan [ECF Nos. 4041] (the "Second Amended Plan") and associated amended disclosure statement [ECF Nos. 4042] (the "Second Amended Disclosure Statement").

91.    Thereafter, Akin Gump continued to engage in discussions with counsel for the Debtors regarding the issues raised in the Disclosure Statement Objection.  As a result of such discussions, on June 17, 2019, the Creditors' Committee and the Debtors reached an agreement in principle on the terms of a settlement (the "Committee Settlement").  On July 9, 2019, the Debtors filed the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [ECF No. 4476] (the "Modified Second Amended Plan") and the *Disclosure Statement for the Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [ECF No. 4478] (the "Modified Second Amended Disclosure Statement"), which reflected the terms of the Committee Settlement.  As a result of the Committee Settlement, the following changes, among others, were incorporated into the confirmed Plan:

- the Creditors' Committee was authorized to appoint three of the five members of the Liquidating Trust Board;

- the Liquidating Trust was provided initial funding of approximately $25 million in cash;

- the Creditors' Committee was provided with consent rights, such consent not to be unreasonably withheld, with respect to any settlement or resolution of claims asserted by certain parties in interest, including the Section 507(b) Claims;

- the Creditors' Committee was provided with consent rights, such consent not to be unreasonably withheld, with respect to the settlement of any administrative expense claims;

- the Creditors' Committee was provided with consultation rights with respect to the settlement or resolution of issues related to ongoing disputes between the Debtors and Transform regarding the APA Disputes; *provided, however,* that none of the APA Disputes would be settled without the Creditors' Committee's consent to the

extent that such settlement results in the settlement or impairment of the Preserved Causes of Action; and

- the Plan, the Liquidating Trust Agreement, and all other Plan-related documents were required to be reasonably acceptable to the Creditors' Committee.

92. In the weeks leading up to the confirmation hearing, Akin Gump worked closely with counsel for the Debtors to ensure that the terms of the Plan incorporated the Committee Settlement and otherwise appropriately protected the interests of unsecured creditors. To that end, Akin Gump professionals, among other things: (i) negotiated and commented on the Liquidating Trust Agreement, the proposed Confirmation Order and all other Plan-related documents; (ii) participated in briefing, discovery and depositions relating to confirmation of the Plan; and (iv) analyzed ESL's appeal of the confirmation order and coordinated closely with the Debtors to facilitate a consensual resolution of the confirmation issues raised by ESL.

93. Following confirmation of the Plan, Akin Gump participated in period Post Effective Date Committee calls along with the Chair of the Committee and otherwise worked closely with counsel for the Debtors to evaluate various issues related to distributions under the Plan. In addition, Akin Gump communicated with unsecured creditors regularly regarding the status of the Effective Date and anticipated next steps in connection with the same.

**M.    Asset Dispositions/363 Asset Sales (Task Code 23)**

|  | Total Hours | Total Fees |
|---|---|---|
| **Eleventh Compensation Period** | 1.50 | $2,100.00 |
| **Final Compensation Period** | 8,063.80 | $7,273,718.00 |

94. This category includes time spent by Akin Gump professionals and paraprofessionals in connection with the Sale Transaction and the events leading up to its consummation, as well as various disputes that arose between the Debtors and Transform in connection with the APA (as defined herein).

95.     Less than a month after the Petition Date, on November 1, 2018, the Debtors filed the *Debtors' Motion for Approval of Global Bidding Procedures* [ECF No. 429] (the "Global Bidding Procedures Motion"), which set forth procedures (the "Global Bidding Procedures") for conducting the Debtors' contemplated sale process.  The Creditors' Committee and its advisors dedicated a significant amount of time and effort to understanding and evaluating the Global Bidding Procedures and the extent to which they would facilitate a value-maximizing sale process. The Creditors' Committee's primary concerns with respect to the Global Bidding Procedures were: (i) issues related to the purchase of substantially all of the Debtors' assets through an insider credit bid; (ii) the feasibility of a going concern sale of substantially all of the Debtors' assets and the likelihood of administrative insolvency resulting therefrom; and (iii) the realizable value to unsecured creditors from a going concern sale as compared to various alternatives.  As such, Akin Gump was closely involved in each step in the Debtors' sale processes, including: (a) the negotiation and implementation of bidding procedures, including the Global Bidding Procedures; (b) the marketing of the Debtors' assets to third parties; and (c) the selection of purchasers for such assets, including Transform.

96.     On November 9, 2018 and November 14, 2018, the Creditors' Committee filed two objections to the Global Bidding Procedures [ECF Nos. 640, 729] (together, the "Global Bidding Procedures Objections").  By the Global Bidding Procedures Objections, the Creditors' Committee set forth certain concerns with respect to the Global Bidding Procedures, including that, among other things, the Global Bidding Procedures: (i) emphasized a going concern sale process that might not be value maximizing as compared to alternatives (such as an orderly liquidation of the Debtors' various business lines and real estate assets) and (ii) required the Debtors to incur

additional postpetition financing—and thus encumber valuable unencumbered assets—in order to consummate any such going concern transaction.

97.    On November 15, 2018, the Court held a hearing to consider the Global Bidding Procedures and approved a modified form of Bidding Procedures to include certain procedural protections requested by the Creditors' Committee.

98.    Following the Court's approval of the Global Bidding Procedures, the Debtors began soliciting bids for their various assets and held an auction, which Akin Gump and the Creditors' Committee's other advisors participated in, that began on January 14, 2019 and continued through January 16, 2019.  At the conclusion of the auction, the Debtors designated Transform as the successful bidder and, on January 17, 2019, executed an asset purchase agreement with Transform (the "APA"), subject to Court approval.

99.    The Creditors' Committee believed that the APA contained material deficiencies and, if approved, would harm the interests of unsecured creditors.  Accordingly, at the direction of the Creditors' Committee, Akin Gump prepared and drafted an objection to the proposed Sale Transaction [ECF No. 2309] (the "Sale Objection"), which was filed on January 26, 2019.  By the Sale Objection, the Creditors' Committee voiced its concerns regarding the deficiencies of the APA, including (i) the lack of certainty over administrative solvency; (ii) the overly-aggressive business plan on which the Sale Transaction was premised; and (iii) the potential release of colorable and valuable causes of action that the Creditors' Committee had sought to pursue.

100.    Following the filing of the Sale Objection, Akin Gump professionals and paraprofessionals shifted their focus to preparing for the Sale Hearing.  In connection therewith, Akin Gump professionals and paraprofessionals: (i) prepared and served various discovery requests on the parties in interest; (ii) reviewed all documents produced by the Debtors and other

parties in interest in a compressed amount of time; (iii) worked closely with the Creditors'
Committee's other advisors to prepare and draft the declarations of the Creditors' Committee's
four witnesses; and (iv) prepared, defended and took the depositions of 12 witnesses.

101.    The three-day, evidentiary Sale Hearing took place on February 4, 2019, February
6, 2019 and February 7, 2019, at the conclusion of which the Court approved the Sale Transaction.

102.    This category also includes time spent by Akin Gump professionals and
paraprofessionals in connection with certain post-sale disputes relating to the APA (the "APA
Disputes") between the Debtors and Transform.  Specifically, on March 11, 2019, the Debtors filed
a motion to enforce the APA and compel the turnover of estate property that the Debtors argued
Transform wrongfully was withholding [ECF No. 2796] (the "Turnover Motion"), to which the
Creditors' Committee joined [ECF No. 2808].

103.    On March 18, 2019, Transform filed a response to the Turnover Motion [ECF No.
2864], which was followed, on March 20, 2019, by the Debtors' reply in support of the Turnover
Motion [ECF No. 2913].  Akin Gump attorneys analyzed and reviewed Transform's and the
Debtors' respective filings, prepared internal memoranda regarding the same, consulted with the
Creditors' Committee's other professionals on a regular basis and apprised the Creditors'
Committee of all developments.

104.    Thereafter, on May 25, 2019, Transform filed an adversary proceeding against the
Debtors [ECF No. 4033] (the "Transform Adversary Proceeding").    During the Final
Compensation Period, Akin Gump attorneys and the Creditors' Committee's other advisors
analyzed Transform's and the Debtors' arguments asserted in the Transform Adversary
Proceeding, conducted research regarding those arguments, attended various depositions and

prepared memoranda for the Creditors' Committee regarding their assessment of the parties' arguments.

105.    The Court held a hearing on the APA Disputes on July 11, 2019, but left open three issues relating to the APA Disputes (the "Primary Remaining APA Disputes"): (i) the amount of "available cash" the Debtors had at the closing of the APA; (ii) whether the Debtors breached their obligations to manage payables in the ordinary course; and (iii) whether Transform was liable for certain mechanics' liens.[23]

106.    Ultimately, following additional discovery and subsequent briefing, during the Final Compensation Period, the Debtors and the Creditors' Committee determined that it was in the best interests of the Debtors' estates and creditors to settle the Primary Remaining APA Disputes with Transform and, thereby, avoid the costs associated with continuing the litigation. Accordingly, the Debtors and the Creditors Committee engaged in extensive negotiations with Transform regarding the terms of a proposed settlement (the "APA Settlement") and, on January 10, 2020, filed a motion seeking approval of the APA Settlement [ECF No. 6327].  On January 28, 2020, the Court entered an order approving the APA Settlement [ECF No. 6413].

107.    Concurrently with its efforts relating to the Sale Transaction, Akin Gump reviewed, analyzed and coordinated with the Debtors and their advisors with respect to the other asset sales that occurred during the Compensation Period, including, among others, (i) the sale of the Sears Home Improvement Business to Service.com (the "SHIP Sale"), (ii) the sale of certain assets to Amerco Real Estate Company (the "U-Haul Sale") and certain *de minimis* asset sales.  Specifically, Akin Gump, along with the Creditors' Committee's other advisors, conducted a thorough analysis of the asset purchase agreements for such sales, the sale orders approving such transactions and

---

[23] As described in the Settlement Motion, a number of additional disputes arose during the Chapter 11 Cases in connection with the APA, certain of which disputes have been resolved in connection with the Settlement Agreement.

ancillary documents related thereto.  With respect to each of the SHIP Sale, the U-Haul Sale and other *de minimis* asset sales, Akin Gump worked closely with the Creditors' Committee's other advisors as well as the Debtors and their advisors to ensure that the proposed transactions were in the best interests of the Debtors' Estates and creditors.

## ACTUAL AND NECESSARY DISBURSEMENTS

108.   Akin Gump seeks (i) interim allowance of reimbursement in the amount of $87,783.93 for expenses incurred during the Eleventh Compensation Period and (ii) final allowance of reimbursement in the amount of $14,241,984.61 for expenses incurred during the Final Compensation Period in the course of providing professional services to the Creditors' Committee and the Litigation Designees.  Akin Gump's disbursement policies pass through all out-of-pocket expenses at actual cost or an estimated actual cost when the actual cost is difficult to determine.  For example, as it relates to computerized research, Akin Gump believes that it does not make a profit on that service as a whole although the cost of any particular search is difficult to ascertain.  Other reimbursable expenses (whether the service is performed by Akin Gump in-house or through a third party vendor) include, but are not limited to, long-distance calls, overtime meals, deliveries, court costs, transcript fees, discovery and temporary legal staffing services, travel and clerk fees.

## FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

109.   Bankruptcy Code section 330 provides, in relevant part, that the Court may award to a professional person "reasonable compensation for actual, necessary services rendered[.]"  *See* 11 U.S.C. § 330(a)(1).  In turn, Bankruptcy Code section 330 provides as follows:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A)     the time spent on such services;

(B)     the rates charged for such services;

(C)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)     whether the compensation is reasonably based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

110.    The clear congressional intent and policy expressed in Bankruptcy Code section 330 is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases. *In re Drexel Burnham Lambert Grp., Inc.*, 133 B.R. 13, 20 (Bankr. S.D.N.Y. 1991) ("Congress' objective in requiring that the market, not the Court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal specialists."); *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 850 (3d. Cir. 1994) (citations and internal quotations omitted) ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts.").

111.    In assessing the "reasonableness" of the fees requested, the Second Circuit has stated that courts should consider the factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, while also incorporating the "lodestar method." *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections,* 522 F.3d 182, 190 (2d Cir. 2007) (citing *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), *abrogated on other*

grounds by *Blanchard v. Bergeron,* 489 U.S. 87, 92–93, 96 (1989)).  The "lodestar method" of calculating the reasonable fee contemplates "the number of hours reasonably expended . . . multiplied by a reasonable hourly rate."  *See Hensley v. Eckerhart et al.*, 461 U.S. 424, 433 (1983); *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002); *Perdue v. Kenny A*., 130 S.Ct. 1662, 1672 (2010); *In re Drexel Burnham Lambert Grp., Inc.* 133 B.R. 13 (Bankr. S.D. N.Y. 1991).  The factors set forth in *Johnson* and *In re First Colonial Corp. of Am.*, 544 F.2d 1291, 1298-99 (5th Cir. 1977) have been adopted by most courts.[24]  *See In re Nine Assocs., Inc.*, 76 B.R. 943, 945 (S.D.N.Y. 1987) (adopting *First Colonial/Johnson* analysis); *In re Cuisine Magazine, Inc.*, 61 B.R. 210, 212-13 (Bankr. S.D.N.Y 1986) (same); *Green v. City of New York*, 403 Fed. Appx. 626, 629 (2d Cir. 2010) (summary order); *see generally* 3 COLLIER ON BANKRUPTCY ¶ 330.03[9] (Lawrence P. King ed., 16th ed. 2016) (describing *First Colonial* and *Johnson* as the "leading cases to be considered in determining a reasonable allowance of compensation").

112.    Akin Gump respectfully submits that a consideration of these factors should result in the Court's allowance of the full compensation sought in this Application.

> a.    <u>Time and Labor Required</u>.  Akin Gump billed a total of 59,935.15 hours of professional services and 3,314.80 hours of paraprofessional and other non-legal services during the Final Compensation Period.  As evidenced by this Application, Akin Gump professionals and paraprofessionals worked diligently and efficiently without unnecessary duplication of efforts throughout the Final Compensation Period.  This is particularly true when considering the nature and complexity of the issues that arose in the Chapter 11 Cases, including, among other things: (i) analyzing and objecting to the DIP ABL Facility and Junior DIP Facility; (ii) conducting the Investigation; (iii) prosecuting objections to the Global Bidding Procedures and the Sale Transaction and facilitating negotiations regarding the APA Disputes; (iv) analyzing and objecting to the Second Lien Parties Section 507(b) Claims and responding to the related 507(b) Appeals; (v) prosecuting the Disclosure Statement Objection; (vi) facilitating a consensual resolution of disputes between the Debtors and the 1114 Committee;

---

[24] The factors articulated by the Fifth Circuit in *First Colonial* were first articulated by the Fifth Circuit in *Johnson*, with the *First Colonial* court adding the factor of the "spirit of economy," which was later rejected by Congress.  *See Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*, 127 F.3d 1398, 1403 (11th Cir. 1997).

(vii) engaging in extensive negotiations with the Debtors regarding various iterations of the Plan and implementing the Committee Settlement in connection therewith; (viii) negotiating the treatment of administrative expense claims and the terms of the Administrative Expense Claims Consent Program; (ix) preparing and drafting the Amended Complaint; (x) prosecuting the Jointly Asserted Causes of Action; and (xi) participating in the Mediation and formulating the Settlement Agreement that will allow the Plan to go effective. Akin Gump's representation of the Creditors' Committee and the Litigation Designees has required it to balance the need to provide quality services with the need to act quickly and represent these parties in an effective, efficient and timely manner. Akin Gump submits that the hours spent were reasonable given the size and complexity of the Chapter 11 Cases and the significant legal issues raised.

b.    <u>Novelty and Difficulty of the Questions</u>.  Akin Gump tasked knowledgeable professionals to research, analyze and provide advice on difficult and complex bankruptcy, litigation, finance, labor, real estate, tax other issues.  Notably, and as further described herein, Akin Gump's skilled teams assisted the Creditors' Committee and Litigation Designees in evaluating, among other things: (i) the first-day relief; (ii) the DIP Motion; (iii) the Global Bidding Procedures Motion; (iv) the prepetition transactions, the Sale Transaction and other asset transactions; (v) the Debtors' and ESL's relative obligations under the APA; (vi) the Section 507(b) Claims and 506(c) Surcharges; (vii) the PBGC Settlement; (viii) the Retiree Settlement; (ix) the Committee Settlement (x) the Disclosure Statement and Plan; (xi) the Administrative Expense Claims Consent Program; (xii) the status and progression of the Consolidated Adversary Proceeding, including the Insider Action, Public Shareholder Action and D&O Coverage Proceedings; (xiii) potential sources of funding for the continued prosecution of the Jointly Asserted Causes of Action; and (xiv) the Adversary Proceeding Settlement Agreement.

c.    <u>Skill Requisite to Perform the Legal Services Properly</u>.  Akin Gump believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Akin Gump's practice and its creative approach to the resolution of issues has contributed to the successful administration of the Chapter 11 Cases and benefited the Debtors, the Creditors' Committee and the Litigation Designees.  Due to the nature and complexity of the legal issues presented in the Chapter 11 Cases, Akin Gump was required to exhibit a high degree of legal skill in areas related to, *inter alia*, bankruptcy, litigation, finance, labor, real estate, tax and other matters. Additionally, Akin Gump's strong working relationship with the legal and financial advisors to other parties in interest enabled Akin Gump to work with such advisors towards a swift, consensual resolution of many of the salient issues in the Chapter 11 Cases.

d.    <u>Preclusion of Other Employment by Applicant Due to Acceptance of the Case</u>. Due to the size of Akin Gump's financial restructuring and litigation

departments, Akin Gump's representation of the Creditors' Committee and the Litigation Designees did not preclude its acceptance of new clients, but the demands for immediate and substantive action in the Chapter 11 Cases imposed significant burdens on Akin Gump professionals and paraprofessionals working concurrently on other matters.

e.   <u>Customary Fee</u>.  The rates Akin Gump charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin Gump charges for professional and paraprofessional services rendered in comparable nonbankruptcy matters.   Akin Gump's fee structure also is equivalent to the fee structure used by Akin Gump for restructuring, workout, bankruptcy, insolvency and comparable matters, as well as similar complex corporate and litigation matters, whether in-court or otherwise, regardless of whether a fee application is required.  The firm's customary hourly rates and rate structure reflect that restructuring and related matters typically involve great complexity, numerous tasks requiring a high level of expertise and severe time pressures, as is the case here.  Akin Gump's rate structure is similar to the rate structure used by other, similar law firms that work on other, similar matters.

f.   <u>Whether the Fee Is Fixed or Contingent</u>.  Pursuant to Bankruptcy Code sections 330 and 331, all fees sought by professionals employed under Bankruptcy Code section 1103 are contingent pending final approval by the Court, and are subject to adjustment depending upon the services rendered and the results obtained. The contingency of full and actual compensation to Akin Gump increased the risk Akin Gump was assuming by representing the Creditors' Committee and the Litigation Designees in the Chapter 11 Cases.

g.   <u>Time Limitations Imposed by the Client or Other Circumstances</u>.  As previously set forth herein, Akin Gump was required to attend to certain issues arising in the Chapter 11 Cases under compressed timelines.  Throughout the Final Compensation Period, Akin Gump and the Creditors' Committee's and Litigation Designees' other advisors were faced with limited time in which to engage in negotiations while also preparing to prosecute objections at various hearings as necessary.  For example, Akin Gump engaged in extensive negotiations with the advisors for the Debtors, Transform and others, with respect to the Sale Transaction, while simultaneously preparing and prosecuting the Sale Objection during a three-day evidentiary hearing.   The tremendous efforts of Akin Gump professionals and paraprofessionals in completing this work permitted the Creditors' Committee and Litigation Designees to address effectively various issues for the benefit of the Debtors' creditors.

h.   <u>Amount Involved and Results Obtained</u>.  Throughout the Chapter 11 Cases, Akin Gump professionals and paraprofessionals worked diligently to maximize value for the Debtors' estates and creditors.  As described in the summary of services herein, Akin Gump, among other things, (i) worked diligently to ensure that any sale of the Debtors' assets preserved valuable estate causes of action

49

for the benefit of creditors, (ii) cooperated with the Debtors and their advisors to minimize the administrative expense burden of the Chapter 11 Cases, including through the Administrative Expense Claims Consent Program, (iii) challenged the assertion of sizable Section 507(b) Claims that, if allowed in full, would have eliminated any potential for recovery for general unsecured creditors, (iv) negotiated a comprehensive settlement with the Debtors on behalf of the Creditors' Committee that ensured appropriate governance rights for the Creditors' Committee over the Jointly Asserted Causes of Action and the Liquidating Trust and (v) litigated the highly complex Jointly Asserted Causes of Action that is subject to the pending Settlement Motion.   While the Settlement Motion may not result in a recovery for general unsecured creditors, it will provide sufficient funds to consummate the Plan, make final distributions to holders of administrative expense claims.  Akin Gump submits that the fees requested in this Application are reasonable and appropriate when considering the results that may be obtained on behalf of unsecured creditors, as more fully described in the summary of services.

i.   <u>Experience, Reputation and Ability of Attorneys</u>.   Akin Gump is an international law firm that consistently is recognized as a top tier law firm in the field of creditors' rights, business reorganizations and liquidations under chapter 11 of the Bankruptcy Code.  During the Final Compensation Period, Akin Gump solicited the skill and expertise of its attorneys, a number of which have practiced law for over 20 years in a number of jurisdictions and legal disciplines.  Akin Gump attorneys have actively represented creditors and creditors' committees, as well as other parties in interest, in a number of the nation's largest chapter 11 cases, including *In re Revlon, Inc.*, *In re Honx, Inc.*, *In re GWG Holdings, Inc.*, *In re Strike, LLC*, *In re Grupo Aeroméxico S.A.B. de C.V.*, *In re Mallinckrodt plc*, *In re Global Eagle Entertainment, Inc.*, *In re BBGI US, Inc. (f/k/a Brooks Brothers Group, Inc.)*, *In re Diamond Offshore Drilling, Inc.*, *In re Purdue Pharma L.P.*, *In re Nine West Holdings, Inc.*, *In re iHeartMedia, Inc.*, *In re Cumulus Media Inc.*, *In re Avaya Inc.*, *In re Chassix Holdings, Inc.*, *In re Energy Future Holdings Corp.*, *In re Dynegy Holdings, LLC*, *In re Nortel Networks Inc.*, *In re Lightsquared Inc.*, *In re Longview Power, LLC*, *In re Eastman Kodak Company*, *In re Cal Dive International, Inc.*, *In re Washington Mutual Inc.*, *In re NII Holdings, Inc.*, *In re MPM Silicones, LLC*, *In re Overseas Shipholding Group, Inc.*, *In re QCE Finance LLC*, *In re Residential Capital, LLC*, *In re Solutia, Inc.*, *In re WorldCom, Inc.*, *In re XO Communications, Inc.*, *In re Tower Automotive LLC*, *In re VeraSun Energy Corp.*, and many others.  Akin Gump's extensive experience enables it to perform the services described herein competently and expeditiously.  In addition to its expertise in the area of corporate reorganization, Akin Gump has called upon the expertise of its partners and associates in other practice areas to perform the wide-ranging scope of the legal work necessitated by the Chapter 11 Cases, as described above.

j.   <u>"Undesirability" of the Cases</u>.  This factor is not applicable to the Chapter 11 Cases.

k. <u>Nature and Length of Professional Relationship</u>.   Akin Gump has been rendering professional services to the Creditors' Committee since it was selected as counsel to the Creditors' Committee on October 24, 2018.   In addition, pursuant to the Confirmation Order and effective as of the date thereof, Akin Gump has been rendering professional services to the Litigation Designees in connection with the Jointly Asserted Causes of Action.

113.   For the reasons set forth above, the services rendered by Akin Gump were necessary and beneficial to the Creditors' Committee and the Litigation Designees and consistently performed in a timely manner.  The compensation sought in this Application is reasonable in light of the value of such services to the Creditors' Committee, the Litigation Designees and all unsecured creditors, Akin Gump's demonstrated skill and expertise in the bankruptcy field (as well as other areas of expertise relevant to the Chapter 11 Cases) and the customary compensation charged by comparably skilled practitioners at Akin Gump.  Accordingly, Akin Gump respectfully submits that the Court should approve the compensation for professional services and reimbursement of expenses sought herein.

114.   No agreement or understanding exists between Akin Gump and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with the Chapter 11 Cases.  No prior application has been made in this Court or in any other court for the relief requested herein as it relates to the Final Compensation Period.

## **ATTORNEY STATEMENT PURSUANT TO U.S. TRUSTEE GUIDELINES**

115.   The following is provided in response to the request for additional information set forth in ¶ C.5. of the U.S. Trustee Guidelines.

<u>**Question**</u>:      Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain.

<u>Response</u>:      No.

**Question**:     If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

Response:     Not applicable.

**Question**:     Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

Response:     No.

**Question**:     Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees.

Response:     Yes.  During the Eleventh Compensation Period, 5.50 hours and $6,221.00 in fees were spent reviewing time records for compliance with the Fee Guidelines; during the Final Compensation Period, 750.40 hours and $504,034.00 in fees were spent reviewing time records for compliance with the Fee Guidelines.

**Question**:     Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

Response:     See above.

**Question**:     If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance?  (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

Response:     Akin Gump disclosed to the Creditors' Committee the hourly rates charged at the time of its retention and the hourly rates to be charged beginning in January 2019, 2020, 2021 and 2022 in the Akin Retention Application and in supplemental declarations filed in advance of each calendar year [ECF Nos. 6301, 9194 and 10175], which the Creditors' Committee agreed to.

## RESERVATION OF RIGHTS

116.    To the extent that there are services rendered or expenses incurred that relate to the

Final Compensation Period but were not processed prior to the preparation of the Application,

Akin Gump reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

*[Remainder of page left blank intentionally.]*

**CONCLUSION**

WHEREFORE, Akin Gump respectfully requests: (i) interim allowance of compensation for services rendered to the Creditors' Committee and the Litigation Designees for the Eleventh Compensation Period in the amount of $1,317,087.50 and reimbursement of expenses incurred in connection therewith in the amount of $87,783.93; (ii) final allowance of compensation for services rendered to the Creditors' Committee and the Litigation Designees during the Final Compensation Period in the amount of $52,112,603.00 and reimbursement of expenses incurred in connection therewith in the amount of $14,241,984.61; (iii) payment of all unpaid fees and expenses from October 24, 2018 through and including June 30, 2022, including (a) $667,851.70, representing 20% of fees incurred for the period of June 1, 2020 through and including June 30, 2022 in connection with Akin Gump's representation of the Creditors' Committee, which amounts were not previously paid by the Debtors' Estates upon the agreement of Akin Gump, (b) $7,891,262.00 of fees incurred for the period of June 1, 2020 through and including June 30, 2022 in connection with the prosecution of the Jointly Asserted Causes of Action and (c) $957,254.22 of expenses for the period of May 1, 2021 through and including June 30, 2022 in connection with the prosecution of the Jointly Asserted Causes of Action; and (iv) such other and further relief as the Court deems just, proper and equitable.

Dated:  August 9, 2022
          New York, New York

AKIN GUMP STRAUSS HAUER & FELD LLP

By:  */s/  Philip C. Dublin*
Ira S. Dizengoff
Philip C. Dublin
Sara L. Brauner
Zachary D. Lanier
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
pdublin@akingump.com
sbrauner@akingump.com
zlanier@akingump.com

*Counsel to the Official Committee of Unsecured Creditors of
Sears Holdings Corporation, et al.*

## **EXHIBIT A**

**CERTIFICATION OF PHILIP C. DUBLIN**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------x
In re:                                           :      Chapter 11
                                                 :
SEARS HOLDINGS CORPORATION, et al.               :      Case No. 18-23538 (RDD)
                                                 :
                                                 :      (Jointly Administered)
                      Debtors.[1]                :
--------------------------------------------------------------x

### CERTIFICATION UNDER THE FEE GUIDELINES IN RESPECT OF THE ELEVENTH INTERIM AND FINAL FEE APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OF OCTOBER 24, 2018 THROUGH AND INCLUDING JUNE 30, 2022

I, Philip C. Dublin, hereby certify that:

1.      I am a partner with Akin Gump,[2] with responsibility for the Chapter 11 Cases of the

above-captioned Debtors.  Akin Gump is counsel to Creditors' Committee of Sears Holdings

Corporation and its affiliated debtors and debtors in possession (collectively, the "Debtors").  Akin

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is c/o M-III Partners, LP, 1700 Broadway, 19th Floor, New York, NY 10019.

[2] Capitalized terms used herein but otherwise not defined have the meanings ascribed to such terms in the Application.

Gump also serves as Primary Trust Litigation Counsel to the Litigation Designees pursuant to the Confirmation Order.

2.      In accordance with the Fee Guidelines, this certification is made with respect to the Application, for interim allowance of compensation and reimbursement of expenses incurred during the Compensation Period.

3.      In respect of section B.1 of the Local Guidelines, I certify that:

    (a)      I have read the Application;

    (b)      to the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Fee Guidelines;

    (c)      the fees and disbursements sought are billed at rates in accordance with those customarily charged by Akin Gump and generally accepted by Akin Gump's clients; and

    (d)      in providing a reimbursable service, Akin Gump does not make a profit on that service, whether the service is performed by Akin Gump in-house or through a third party.

4.      In accordance with section B.2 of the Local Guidelines and as required by the Interim Compensation Order, to the extent applicable, I certify that Akin Gump has complied with those provisions requiring it to provide the Debtors and the Creditors' Committee with a statement of Akin Gump's fees and disbursements accrued during the previous month, although, due to administrative limitations, such statements were not always provided within the timeframe set forth in the Local Guidelines or the Interim Compensation Order.

5.      In respect of section B.3 of the Local Guidelines, I certify that the Debtors, the U.S. Trustee and the members of the Creditors' Committee are each being provided with a copy of the Application.

Dated: August 9, 2022                          By: _/s/  Philip C. Dublin_____
New York, New York                          Philip C. Dublin

2

## **EXHIBIT B**

**CUSTOMARY AND COMPARABLE COMPENSATION
DISCLOSURE FOR THE ELEVENTH COMPENSATION PERIOD**

| Blended Hourly Rates | | |
|---|---|---|
| **Category of Timekeeper** | **Billed by NY Office for Year Ending June 30, 2022[1]** | **Billed in this Application** |
| Partner | $1,400.68 | $1,209.77 |
| Senior Counsel and Counsel | $981.47 | $830.98 |
| Associate | $715.27 | $581.13 |
| Legal Assistant | $348.84 | $279.46 |
| **All Timekeepers Aggregated** | **$999.14** | **$823.92** |

---

[1] Consistent with the U.S. Trustee Guidelines, this **Exhibit B** discloses the blended hourly rate for the aggregate of all timekeepers in the domestic offices of Akin Gump in which timekeepers collectively billed more than 10% of the hours to these cases during the Eleventh Compensation Period (*i.e.*, the New York office), segregated by category, and excluding all data from timekeepers practicing primarily in the financial restructuring group.  This data is based on information from a rolling 12-month year ending June 30, 2022.

## EXHIBIT C

**COMPENSATION BY PROFESSIONAL**

## COMPENSATION BY PROFESSIONAL
## FOR THE ELEVENTH COMPENSATION PERIOD

| NAME OF PROFESSIONAL | DEPARTMENT | OFFICE | YEAR OF ADMISSION | RATE | TOTAL HOURS | TOTAL AMOUNT |
|---|---|---|---|---|---|---|
| PARTNERS | | | | | | |
| Brauner, Sara L. | FRS | NY | 2011 | $1,400.00 | 357.50 | $500,500.00 |
| Chapman, Dean L. | LIT | NY | 2009 | $1,400.00 | 287.60 | $402,640.00 |
| Dizengoff, Ira S. | FRS | NY | 1993 | $1,775.00 | 46.20 | $82,005.00 |
| Lee, Fred | COR | DA | 2005 | $1,775.00 | 7.50 | $13,312.50 |
| Qureshi, Abid | FRS | NY | 1995 | $1,775.00 | 10.50 | $18,637.50 |
| Welkis, Scott | COR | NY | 1997 | $1,565.00 | 11.50 | $17,997.50 |
| Zensky, David M. | LIT | NY | 1988 | $1,775.00 | 58.60 | $104,015.00 |
| SENIOR COUNSEL / COUNSEL | | | | | | |
| Kane, John | LIT | NY | 2016 | $1,130.00 | 7.70 | $8,701.00 |
| Lanier, Zachary D. | FRS | DA | 2017 | $1,095.00 | 31.10 | $34,054.50 |
| Latov, Jeffrey | LIT | NY | 2017 | $1,095.00 | 18.90 | $20,695.50 |
| Tizravesh, Roxanne | LIT | HO | 2009 | $1,330.00 | 7.40 | $9,842.00 |
| ASSOCIATES / STAFF ATTORNEYS | | | | | | |

| Name of Professional | Department | Office | Year of Admission | Rate | Total Hours | Total Amount |
|---|---|---|---|---|---|---|
| Collins, Russell | LIT | NY | 1998 | $535.00 | 51.20 | $27,392.00 |
| Glackin, Patrick | LIT | NY | 2019 | $925.00 | 20.00 | $18,500.00 |
| Kulikowski, Jillian | LIT | NY | 2019 | $925.00 | 13.80 | $12,765.00 |
| Nolan, Sean M. | LIT | NY | 2018 | $1,005.00 | 8.80 | $8,844.00 |
| Szydlo, Joseph E. | FRS | NY | 2019 | $965.00 | 22.80 | $22,002.00 |
| Tatum, Laura | COR | DA | 2020 | $775.00 | 6.30 | $4,882.50 |
| **Paralegals / Legal Assistants** | | | | | | |
| Krasa, Dagmara | FRS | NY | N/A | $475.00 | 14.10 | $6,697.50 |
| Robins, Kelsey | FRS | NY | N/A | $265.00 | 13.60 | $3,604.00 |

## COMPENSATION BY PROFESSIONAL
## FOR THE FINAL COMPENSATION PERIOD

| TIMEKEEPER | DPT. | OFFICE | YEAR OF ADMISSION | APPLICABLE RATE[1] | TOTAL HOURS | TOTAL AMOUNT |
|---|---|---|---|---|---|---|
| PARTNERS | | | | | | |
| Adler, Aimee | TAX | NY | 2001 | $1,040.00 | 138.50 | $132,840.00 |
| Bain, John Allen | COR | DA | 2007 | $985.00 | 224.80 | $203,506.00 |
| Berchem, Kerry | COR | NY | 1991 | $1,210.00 | 32.40 | $39,204.00 |
| Botter, David | FRS | NY | 1990 | $1,475.00 | 191.40 | $266,035.00 |
| Brauner, Sara L. | FRS | NY | 2011 | $1,400.00 | 4,070.10 | $4,675,504.00 |
| Brimmage, Marty | LIT | DA | 1995 | $1,425.00 | 138.30 | $181,056.50 |
| Chapman, Dean L. | LIT | NY | 2009 | $1,400.00 | 4,114.10 | $4,658,203.50 |
| Chen, Julius | LIT | DC | 2010 | $1,075.00 | 344.40 | $329,964.00 |
| Crawford, Ashley | LIT | SF | 2003 | $880.00 | 5.00 | $4,400.00 |
| Dizengoff, Ira S. | FRS | NY | 1993 | $1,775.00 | 889.00 | $1,372,254.50 |

---

[1] During the Final Compensation Period, Akin Gump periodically increased its hourly rates. Such rate increases were in accordance with the *Declaration of Ira S. Dizengoff in Support of the Application of the Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al. to Retain and Employ Akin Gump Strauss Hauer & Feld LLP, as Counsel, Effective Nunc Pro Tunc to October 24, 2018*, attached as <u>Exhibit B</u> to the Akin Retention Application (as defined herein). The amount in this column reflects either the hourly rate for the timekeeper in effect at the time the services were last rendered by such timekeeper or the timekeeper's 2022 rate.

| Timekeeper | Dpt. | Office | Year of Admission | Applicable Rate[1] | Total Hours | Total Amount |
|---|---|---|---|---|---|---|
| Dublin, Philip | FRS | NY | 1999 | $1,655.00 | 1,511.15 | $2,199,559.25 |
| Hsu, Alice | COR | NY | 1999 | $930.00 | 9.50 | $8,835.00 |
| Jacob, John | HLT | DC | 1993 | $1,135.00 | 7.00 | $7,945.00 |
| Jacobson, Howard | TAX | DC | 1979 | $1,120.00 | 165.20 | $179,999.00 |
| Kuhn, Stephen | COR | NY | 1991 | $1,295.00 | 19.40 | $25,123.00 |
| Lawrence, Lacy | LIT | DA | 2006 | $1,350.00 | 1,177.90 | $1,238,462.00 |
| Leader, Susan | LIT | LA | 2001 | $1,020.00 | 23.50 | $22,422.00 |
| Lee, Fred | COR | DA | 2005 | $1,775.00 | 32.10 | $43,078.50 |
| Leyden, Lauren | LAB | NY | 2006 | $1,200.00 | 39.60 | $43,503.00 |
| Miller, Allison | COR | NY | 2003 | $1,250.00 | 616.00 | $678,800.00 |
| Morris, Williams | COR | HO | 1985 | $1,125.00 | 13.80 | $15,525.00 |
| Phelps, David | COR | LA | 1987 | $1,240.00 | 383.00 | $435,166.00 |
| Qureshi, Abid | FRS | NY | 1995 | $1,775.00 | 783.00 | $1,137,593.00 |
| Roush, Corey | LIT | DC | 1997 | $970.00 | 20.30 | $19,691.00 |

| Timekeeper | Dpt. | Office | Year of Admission | Applicable Rate[1] | Total Hours | Total Amount |
|---|---|---|---|---|---|---|
| Ru, Meng | COR | NY | 2005 | $1,100.00 | 133.60 | $130,814.00 |
| Sorkin, Joseph | LIT | NY | 2008 | $1,425.00 | 1,750.05 | $2,007,459.25 |
| Tysse, James | LIT | DC | 2008 | $1,135.00 | 13.30 | $15,095.50 |
| Vondle, David | IP | DC | 2002 | $1,020.00 | 125.70 | $123,696.00 |
| Welkis, Scott | COR | NY | 1997 | $1,565.00 | 392.70 | $484,462.50 |
| Williams, Joshua | TAX | NY | 2004 | $1,120.00 | 41.20 | $43,306.00 |
| Zensky, David M. | LIT | NY | 1988 | $1,775.00 | 952.80 | $1,486,415.00 |
| **Senior Counsel / Counsel** | | | | | | |
| Brown, Ashley | IP | HO | 2011 | $865.00 | 50.10 | $40,449.00 |
| Carty, Christopher | LIT | NY | 2010 | $980.00 | 917.10 | $858,051.00 |
| Danishefsky, Menachem | TAX | NY | 2011 | $950.00 | 31.00 | $26,517.50 |
| Demander, Kathryn | LIT | DA | 2013 | $805.00 | 490.00 | $380,938.00 |
| Doniak, Christine | LIT | NY | 1998 | $745.00 | 111.50 | $83,067.50 |
| Elder, Eugene | HLT | DC | 1990 | $975.00 | 6.50 | $6,337.50 |

| Timekeeper | Dpt. | Office | Year of Admission | Applicable Rate[1] | Total Hours | Total Amount |
|---|---|---|---|---|---|---|
| Farovitch, Aaron | TAX | NY | 2017 | $690.00 | 142.60 | $91,212.00 |
| Fey, Hilary | COR | LA | 1997 | $885.00 | 65.50 | $56,545.00 |
| Field, Eric | LAB | DC | 1998 | $1,170.00 | 14.70 | $17,199.00 |
| Freeman, Alexis | FRS | NY | 2001 | $1,100.00 | 683.10 | $702,713.00 |
| Goodman, Evan | COR | DC | 2012 | $810.00 | 22.50 | $18,225.00 |
| Kane, John | LIT | NY | 2016 | $1,130.00 | 3,285.70 | $2,668,103.50 |
| Koo, Angeline | LIT | NY | 2005 | $940.00 | 542.20 | $481,570.00 |
| Lanier, Zachary D. | FRS | DA | 2017 | $1,095.00 | 2,781.15 | $2,120,681.50 |
| Latov, Jeffrey | LIT | NY | 2017 | $1,095.00 | 3,280.20 | $2,529,092.50 |
| Lee, David | IP | DC | 2000 | $905.00 | 28.90 | $23,762.50 |
| Lloyd, Matthew | LIT | DA | 2014 | $910.00 | 240.80 | $219,128.00 |
| Locke, Adam | LIT | NY | 2012 | $915.00 | 450.80 | $381,706.50 |
| Lyashenko, Ekaterina | TAX | NY | 2018 | $620.00 | 13.60 | $8,432.00 |
| Matheson, Clayton | IP | SA | 2010 | $950.00 | 102.50 | $92,487.00 |

| Timekeeper | Dpt. | Office | Year of Admission | Applicable Rate[1] | Total Hours | Total Amount |
|---|---|---|---|---|---|---|
| McGrady, Erica | COR | DC | 1997 | $905.00 | 228.40 | $199,187.00 |
| Meier, Brennan | LIT | DA | 2013 | $910.00 | 254.10 | $231,231.00 |
| Mongan, William | LIT | NY | 2012 | $860.00 | 10.20 | $8,772.00 |
| Morris, Brandon | TAX | NY | 2009 | $1,040.00 | 63.40 | $62,725.00 |
| Murphy, John | LIT | NY | 2011 | $960.00 | 41.50 | $39,840.00 |
| O'Brien, Patrick | LIT | DA | 2004 | $935.00 | 286.10 | $260,702.00 |
| Park, Daniel | LIT | DA | 2011 | $1,045.00 | 1,448.70 | $1,079,846.00 |
| Peckham, Heather | LIT | DA | 2000 | $905.00 | 685.50 | $577,644.00 |
| Petree, Nicholas | LIT | HO | 2012 | $910.00 | 7.00 | $6,370.00 |
| Schmitten, Matthew | LIT | DC | 2014 | $640.00 | 33.20 | $21,248.00 |
| Sharad, Saurabh | LIT | NY | 2015 | $1,005.00 | 1,068.80 | $877,154.00 |
| Staber, David | FRS | DA | 1988 | $975.00 | 7.70 | $7,507.50 |
| Stark, Dustin | LAB | NY | 2013 | $915.00 | 7.20 | $6,588.00 |
| Tizravesh, Roxanne | LIT | HO | 2009 | $1,330.00 | 1,452.70 | $1,476,402.50 |

| TIMEKEEPER | DPT. | OFFICE | YEAR OF ADMISSION | APPLICABLE RATE[1] | TOTAL HOURS | TOTAL AMOUNT |
|---|---|---|---|---|---|---|
| Tolentino, Raymond | LIT | DC | 2013 | $910.00 | 171.60 | $145,117.00 |
| Villota, Carlos | COR | DA | 1997 | $820.00 | 164.80 | $135,136.00 |
| Williams, Richard | LIT | NY | 2014 | $960.00 | 5.00 | $4,800.00 |
| Windscheffel, Dennis | LIT | SA | 2014 | $965.00 | 75.50 | $68,034.50 |
| **ASSOCIATES / STAFF ATTORNEYS** | | | | | | |
| Agahzadeh, Alex | COR | DA | 2014 | $775.00 | 16.70 | $12,942.50 |
| Aminian, Sarah | COR | LA | 2018 | $540.00 | 177.00 | $93,276.00 |
| Angell, Cynthia | LIT | NY | 2013 | $930.00 | 7.60 | $7,068.00 |
| Vicken, Antounian | COR | LA | 2017 | $555.00 | 137.10 | $72,016.50 |
| Badini, Douglas | COR | DC | 2017 | $690.00 | 18.90 | $13,041.00 |
| Brewer, Erin | LIT | SF | 2018 | $510.00 | 105.60 | $52,611.00 |
| Byun, Michael | FRS | LA | 2013 | $890.00 | 184.30 | $160,588.00 |
| Chatterjee, Raja | COR | DA | 2018 | $495.00 | 6.50 | $3,217.50 |
| Chen, Michael | LIT | NY | 2019 | $540.00 | 654.50 | $348,230.00 |

| TIMEKEEPER | DPT. | OFFICE | YEAR OF ADMISSION | APPLICABLE RATE[1] | TOTAL HOURS | TOTAL AMOUNT |
|---|---|---|---|---|---|---|
| Clarke, Robertson | FRS | DA | 2011 | $975.00 | 77.60 | $71,637.00 |
| Collins, Russell | LIT | NY | 1998 | $535.00 | 5,298.10 | $2,528,716.50 |
| Elliott, Amy | TAX | DC | 2008 | $550.00 | 15.10 | $8,086.00 |
| Figueroa, Santana | LIT | NY | 2018 | $810.00 | 63.40 | $50,502.00 |
| Fydrych, Victoria | LIT | NY | 2020 | $540.00 | 8.40 | $4,536.00 |
| Generales, Markos | LIT | LA | 2018 | $495.00 | 6.00 | $2,970.00 |
| Glackin, Patrick | LIT | NY | 2019 | $925.00 | 2,347.50 | $1,372,479.00 |
| Handschumacher, Kelly | LIT | NY | 2017 | $520.00 | 25.90 | $13,468.00 |
| Hill, John | COR | NY | 2019 | $540.00 | 135.40 | $70,638.00 |
| Hiner, Chance | FRS | DA | 2017 | $660.00 | 98.00 | $58,284.00 |
| Holland, Erica | LIT | NY | 2016 | $770.00 | 158.50 | $122,045.00 |
| Kessler, Boris | COR | NY | 2016 | $645.00 | 34.40 | $22,188.00 |
| Kulikowski, Jillian | LIT | NY | 2019 | $925.00 | 3,136.40 | $1,868,648.00 |
| Lewis, Jacqueline | COR | DC | 2018 | $630.00 | 165.50 | $90,317.00 |

| Timekeeper | Dpt. | Office | Year of Admission | Applicable Rate[1] | Total Hours | Total Amount |
|---|---|---|---|---|---|---|
| Lombardi, Nicholas | LIT | DA | 2018 | $980.00 | 571.10 | $435,340.50 |
| Maizel, Elise | LIT | NY | 2017 | $940.00 | 703.40 | $537,466.00 |
| Mahkamova, Shirin | FRS | NY | 2019 | $700.00 | 1,713.90 | $969,706.00 |
| Marshall, Michelle | COR | LA | 2018 | $540.00 | 53.00 | $27,956.00 |
| McNeilly, Edward | FRS | LA | 2017 | $760.00 | 119.90 | $75,906.00 |
| Mernick, A.Y. | COR | DA | 2017 | $725.00 | 8.00 | $5,800.00 |
| Miller, Katlyne | LIT | DA | 2018 | $700.00 | 440.70 | $239,060.50 |
| Nolan, Sean M. | LIT | NY | 2018 | $1,005.00 | 1,412.80 | $1,040,349.00 |
| Erin Parlar | LIT | NY | 2015 | $815.00 | 174.00 | $141,810.00 |
| Phillips, Colin | IP | HO | 2017 | $555.00 | 12.90 | $7,159.50 |
| Praestholm, Amanda | LIT | DA | 2017 | $785.00 | 304.30 | $189,542.50 |
| Rusconi, Margo | LIT | DC | 2019 | $510.00 | 9.90 | $5,049.00 |
| Savar, Ramin | COR | LA | 2015 | $690.00 | 345.10 | $215,229.00 |
| Steed, Allison | COR | DC | 2018 | $650.00 | 154.60 | $82,525.00 |

| TIMEKEEPER | DPT. | OFFICE | YEAR OF ADMISSION | APPLICABLE RATE[1] | TOTAL HOURS | TOTAL AMOUNT |
|---|---|---|---|---|---|---|
| Szydlo, Joseph E. | FRS | NY | 2019 | $965.00 | 1,988.10 | $1,190,105.50 |
| Tandy, Lewis | LIT | DA | 2018 | $700.00 | 671.30 | $361,088.50 |
| Tatum, Laura | COR | DA | 2020 | $775.00 | 6.30 | $4,882.50 |
| Threadcraft, Tiffanye | COR | NY | 2013 | $870.00 | 146.20 | $115,360.50 |
| Young, Melodie | LIT | NY | 2003 | $435.00 | 502.20 | $217,779.00 |
| Youngs, Conor | COR | NY | 2021 | $610.00 | 88.40 | $52,182.50 |
| **PARALEGALS / LEGAL ASSISTANTS** | | | | | | |
| Andron, Jonathan | LIT | NY | N/A | $270.00 | 123.00 | $33,105.00 |
| Belkin, Boris | COR | NY | N/A | $385.00 | 38.00 | $14,630.00 |
| Blair, Laurel | LIT | DA | N/A | $355.00 | 5.00 | $1,775.00 |
| Chau, Lok Fung | LIT | NY | N/A | $355.00 | 5.90 | $2,094.50 |
| Csizmadia, Suzanne | LIT | HO | N/A | $330.00 | 107.30 | $35,409.00 |
| Edwards, Paul | LIT | NY | N/A | $355.00 | 28.20 | $9,583.50 |
| Ejoh, Kareen | LIT | NY | N/A | $270.00 | 352.70 | $94,359.00 |

| TIMEKEEPER | DPT. | OFFICE | YEAR OF ADMISSION | APPLICABLE RATE[1] | TOTAL HOURS | TOTAL AMOUNT |
|---|---|---|---|---|---|---|
| Ginsborg, Michael | LIT | NY | N/A | $265.00 | 27.30 | $7,234.50 |
| Greer, Michael | LIT | HO | N/A | $310.00 | 59.60 | $18,317.00 |
| Hicks, Adria | LIT | DC | N/A | $350.00 | 17.30 | $5,872.00 |
| Kemp, Brenda | FRS | DA | N/A | $330.00 | 156.80 | $51,744.00 |
| Krasa, Dagmara | FRS | NY | N/A | $475.00 | 395.40 | $158,239.50 |
| Langmack, Jennifer | LIT | NY | N/A | $335.00 | 5.90 | $1,976.50 |
| Leonard, Massai | LIT | NY | N/A | $325.00 | 11.50 | $3,737.50 |
| Levy, Sophia | FRS | NY | N/A | $245.00 | 457.40 | $107,825.00 |
| Ma, Jim | LIT | NY | N/A | $380.00 | 46.30 | $17,594.00 |
| Moore, James | LIT | NY | N/A | $285.00 | 76.30 | $21,745.50 |
| Munoz, Alondra | LIT | NY | N/A | $205.00 | 48.80 | $9,759.00 |
| Pinkney, Matt | LIT | NY | N/A | $195.00 | 102.80 | $20,046.00 |
| Racanati, Francesco | LIT | NY | N/A | $285.00 | 59.40 | $16,929.00 |
| Robertson, Emony | LIT | NY | N/A | $220.00 | 511.80 | $109,608.00 |

| Timekeeper | Dpt. | Office | Year of Admission | Applicable Rate[1] | Total Hours | Total Amount |
|---|---|---|---|---|---|---|
| Robins, Kelsey | FRS | NY | N/A | $265.00 | 39.20 | $11,143.50 |
| Smith, Turner | COR | NY | N/A | $205.00 | 6.00 | $1,230.00 |
| Southwell, Tracy | FRS | LA | N/A | $395.00 | 215.20 | $83,247.00 |
| Walls, Bennett | LIT | NY | N/A | $230.00 | 410.00 | $87,193.00 |
| Yen, Diros | LIT | NY | N/A | $255.00 | 7.70 | $1,963.50 |

## EXHIBIT D

**COMPENSATION BY PROJECT CATEGORY**

**COMPENSATION BY PROJECT CATEGORY**
**FOR ELEVENTH COMPENSATION PERIOD**

| Task Code | Project Category | Total Hours Billed | Total Amount |
|---|---|---|---|
| 2 | Case Administration | 0.70 | 762.50 |
| 3 | Akin Gump Fee Application/Monthly Billing Reports | 30.80 | 26,868.00 |
| 4 | Analysis of Other Professionals Fee Applications/Reports | 1.10 | 1,235.50 |
| 7 | Creditors Committee Matters/Meetings (including 341 Meetings) | 2.50 | 3,500.00 |
| 8 | Hearings and Court Matters/Court Preparation | 14.70 | 19,877.50 |
| 10 | DIP, Cash Collateral Usage, Adequate Protection and Exit Financing | 308.30 | 421,591.00 |
| 12 | General Claims Analysis/Claims Objections | 0.60 | 840.00 |
| 20 | Jointly Asserted Causes of Action | 624.10 | 825,525.50 |
| 22 | Disclosure Statement/Solicitation/Plan/Confirmation | 10.80 | 14,787.50 |
| 23 | Asset Dispositions/363 Asset Sales | 1.50 | 2,100.00 |
| **Total** | | **995.10** | **$1,317,087.50** |

**COMPENSATION BY PROJECT CATEGORY**
**FOR FINAL COMPENSATION PERIOD**

| Task Code | Project Category | Total Hours Billed | Total Amount |
|---|---|---|---|
| 2 | Case Administration | 680.80 | $453,867.50 |
| 3 | Akin Gump Fee Application/Monthly Billing Reports | 1,754.60 | $1,234,067.50 |
| 4 | Analysis of Other Professionals Fee Applications/Reports | 204.70 | $157,188.00 |
| 5 | Review/Preparation of Schedules, Statements | 35.20 | $29,497.00 |
| 6 | Retention of Professionals | 892.50 | $461,583.00 |
| 7 | Creditors Committee Matters/Meetings (including 341 Meetings) | 873.80 | $903,565.50 |
| 8 | Hearings and Court Matters/Court Preparation | 3,308.20 | $2,788,033.00 |
| 9 | Financial Reports and Analysis | 69.90 | $66,218.50 |
| 10 | DIP, Cash Collateral Usage, Adequate Protection and Exit Financing | 1,893.60 | $2,034,575.00 |
| 11 | Executory Contract/Lease Issues | 63.10 | $46,019.50 |
| 12 | General Claims Analysis/Claims Objections | 931.80 | $879,135.50 |
| 13 | Analysis of Pre-Petition Transactions | 12,807.30 | $9,386,844.00 |
| 14 | Insurance Issues | 177.30 | $172,992.50 |
| 15 | Secured Creditors Issues/Communications/Meetings | 2,081.70 | $1,666,952.00 |
| 16 | Automatic Stay Issues | 398.30 | $334,713.00 |
| 17 | General Litigation Matters/Adversary Proceedings | 67.20 | $62,252.50 |
| 18 | Tax Issues | 304.60 | $297,409.00 |
| 19 | Labor Issues/Employee Benefits | 475.50 | $437,051.50 |
| 20 | Jointly Asserted Causes of Action | 22,074.40 | $17,891,262.00 |
| 21 | Exclusivity | 100.90 | $82,862.00 |
| 22 | Disclosure Statement/Solicitation/Plan/Confirmation | 4,174.90 | $3,993,320.50 |
| 23 | Asset Dispositions/363 Asset Sales | 8,063.80 | $7,273,718.00 |
| 24 | Real Estate Issues | 1,419.90 | $1,088,891.00 |
| 25 | Travel Time | 121.15 | $126,814.50 |
| 28 | General Corporate Matters | 86.00 | $55,348.00 |
| 29 | Intercompany Claims/Intercompany Transactions/Cash Management | 161.10 | $162,354.50 |

| Task Code | Project Category | Total Hours Billed | Total Amount |
|---|---|---|---|
| 30 | Customer, Supplier and Vendor Issues (including Critical Vendors) | 3.80 | $2,995.00 |
| 31 | Business Operations | 23.90 | $23,073.00 |
| **Total** | | **63,249.95** | **$52,112,603.00** |

**<u>EXHIBIT E</u>**

**EXPENSE SUMMARY**

**EXPENSE SUMMARY**
**FOR ELEVENTH COMPENSATION PERIOD**

| Disbursement Activity | Amount |
|---|---|
| Computerized Legal Research - Lexis - in contract 30% discount | $1,800.35 |
| Computerized Legal Research - Westlaw - in contract 30% discount | $12,328.74 |
| Computerized Legal Research - Courtlink - in contract 50% discount | $1,473.49 |
| Computerized Legal Research - Other | $1,419.63 |
| Courier Service/Messenger Service - Off Site | $226.30 |
| Meals - Overtime | $155.99 |
| Meals – In House | $171.48 |
| Overtime - Admin Staff | $272.00 |
| Professional Fees - Consultant Fees | $69,012.39 |
| Transcripts | $61.20 |
| Travel - Ground Transportation | $504.57 |
| Local Transportation - Overtime | $357.79 |
| **Total** | **$87,783.93** |

**EXPENSE SUMMARY**
**FOR FINAL COMPENSATION PERIOD**

| Disbursement Activity | Amount |
|---|---|
| Color Copy | $6,230.85 |
| Computer Parts and Peripherals | $8,997.97 |
| Computerized Legal Research - Lexis - in contract 30% discount | $118,340.00 |
| Computerized Legal Research - Lexis – out of contract | $100.70 |
| Computerized Legal Research - Westlaw - in contract 30% discount | $384,413.03 |
| Computerized Legal Research - Westlaw - out of contract | $1,553.17 |
| Computerized Legal Research - Courtlink - in contract 50% discount | $11,978.69 |
| Computerized Legal Research - Courtlink – out of contract | $254.61 |
| Computerized Legal Research - Other | $15,359.46 |
| Contract Labor - Attorney | $70,024.39 |
| Courier Service/Messenger Service - Off Site | $9,272.59 |
| Court Costs | $2,885.30 |
| Depositions | $13,106.55 |
| Document Retrieval | $9,513.44 |
| Dues – Miscellaneous Dues | $50.00 |
| Duplication - In House | $68,235.50 |
| Duplication - Off Site | $10,885.28 |
| Equipment Rental | $8,683.95 |
| Filing Fees | $2,298.00 |
| Imaging/Computerized Litigation Support | $136,815.70 |
| Local Transportation – Overtime | $15,796.86 |
| Meals - Overtime | $3,555.73 |
| Meals - Business | $11,784.62 |
| Meals In House | $54,822.67 |
| Miscellaneous | $5,544.47 |
| Office Supplies – Binding | $19,730.33 |
| Office Supplies – Other | $187.50 |
| Office Supplies – Printing | $13,778.83 |
| Overtime - Admin Staff | $4,734.92 |
| Postage | $664.04 |
| Professional Fees – Appraisal Fees | $366,959.00 |
| Professional Fees - Consultant Fees | $5,625,973.13 |
| Professional Fees - Legal | $3,052,200.65 |

| Disbursement Activity | Amount |
|---|---|
| Professional Fees - Misc. | $3,790,086.67 |
| Professional Fees - Process Server | $38,819.20 |
| Research | $2,938.36 |
| Telephone - Long Distance | $5,461.50 |
| Telephone – Cell/Pagers | $30.00 |
| Title Company | $98,512.00 |
| Trademark Service Fees | $550.00 |
| Transcripts | $119,354.15 |
| Travel – Airfare | $18,629.42 |
| Travel – Auto Rental | $55.02 |
| Travel – Auto (Mileage) | $109.04 |
| Travel - Ground Transportation | $35,341.17 |
| Travel – Incidentals – Out of Town Travel | $43.00 |
| Travel - Lodging (Hotel, Apt, Other) | $72,235.13 |
| Travel - Parking | $843.83 |
| Travel – Telephone & Fax | $2,369.19 |
| Travel – Train Fare | $1,875.00 |
| **Total** | **$14,241,984.61** |

## EXHIBIT F

**SUMMARY OF MONTHLY FEE STATEMENTS**

| DATE FILED | ECF NO. | PERIOD COVERED | FEES REQUESTED | EXPENSES REQUESTED | FEES PAID | EXPENSES PAID |
|---|---|---|---|---|---|---|
| 02/12/19 | 2567 | 10/24/18 – 10/31/18 | $873,974.00 (80% of $1,092,467.50) | $8,488.36 | $1,092,467.50 | $8,488.36 |
| 03/11/19 | 2794 | 11/01/18 – 11/30/18 | $4,062,269.60 (80% of $5,077,837.00) | $94,516.91 | $4,062,269.60 | $94,516.91 |
| 03/26/19 | 2958 | 12/01/18 – 12/31/18 | $3,460,633.60 (80% of $4,325,792.00) | $198,291.83 | $4,325,792.00 | $198,291.83 |
| 04/05/19 | 3063 | 01/01/19 – 01/31/19 | $5,749,269.60 (80% of $7,186,587.00) | $308,404.81 | $7,186,587.00 | $308,404.81 |
| 04/10/19 | 3118 | 02/01/19 – 02/28/19 | $2,101,726.00 (80% of $2,627,157.50) | $715,982,84 | $2,627,157.50 | $715,982.84 |
| 06/03/19 | 4112 | 03/01/19 – 03/31/19 | $811,521.20 (80% of $1,014,401.50) | $274,293.00 | $1,014,401.50 | $274,293.00 |
| 07/30/19 | 4411 | 04/01/19 – 04/30/19 | $1,088,636.80 (80% of $1,360,796.00) | $419,284.56 | $1,360,796.00 | $419,284.56 |
| 07/30/19 | 4641 | 05/01/19 – 05/31/19 | $1,634,706.40 (80% of $2,043,383.00) | $93,342.50 | $2,043,383.00 | $93,342.50 |
| 08/14/19 | 4843 | 06/01/19 – 06/30/19 | $1,057,952.80 (80% of $1,322,441.00) | $30,640.02 | $1,322,441.00 | $30,640.02 |
| 09/06/19 | 5086 | 07/01/19 – 07/31/19 | $1,148,464.80 (80% of $1,435,581.00) | $62,099.98 | $1,435,581.00 | $62,099.98 |
| 10/14/19 | 5364 | 08/01/19 – 08/31/19 | $1,098,212.80 (80% of $1,372,766.00) | $93,272.94 | $1,372,766.00 | $93,272.94 |
| 11/22/19 | 6077 | 09/01/19 – 09/30/19 | $979,921.60 (80% of $1,224,902.00) | $47,323.21 | $1,224,902.00 | $47,323.21 |
| 12/09/19 | 6169 | 10/01/19 – 10/31/19 | $1,080,638.40 (80% of $1,350,798.00) | $115,774.84 | $1,350,798.00 | $115,774.84 |
| 01/30/20 | 6794 | 11/01/19 – 11/30/19 | $791,316.00 (80% of $989,145.00) | $305,321.24 | $989,145.00 | $305,321.24 |
| 02/21/20 | 7328 | 12/01/19 – 12/31/19 | $765,714.80 (80% of $957,143.50) | $303,709.74 | $957,143.50 | $303,709.74 |

| DATE FILED | ECF No. | PERIOD COVERED | FEES REQUESTED | EXPENSES REQUESTED | FEES PAID | EXPENSES PAID |
|---|---|---|---|---|---|---|
| 03/21/20 | 7484 | 01/01/20 – 01/31/20 | $821,655.60 (80% of $1,027,069.50) | $292,872.76 | $1,027,069.50 | $292,872.76 |
| 04/01/20 | 7633 | 02/01/20 – 02/29/20 | $995,003.60 (80% of $1,243,754.50) | $522,731.98 | $1,243,754.50 | $522,731.98 |
| 05/04/20 | 7899 | 03/01/20 – 03/31/20 | $1,320,330.00 (80% of $1,650,412.50) | $343,378.99 | $1,650,412.50 | $343,378.99 |
| 05/29/20 | 7990 | 04/01/20 – 04/30/20 | $1,860,676.80 (80% of $2,325,846.00) | $1,119,787.78 | $2,325,846.00 | $1,119,787.78 |
| 06/30/20 | 8201 | 05/01/20 – 05/31/20 | $1,243,474.40 (80% of $1,554,343.00) | $373,741.27 | $1,554,343.00 | $373,741.27 |
| 08/07/20 | 8354 | 06/01/20 – 06/30/20 | $1,243,681.60 (80% of $1,554,602.00) | $536,905.24 | $1,081,989.00 | $536,905.24 |
| 09/02/20 | 8413 | 07/01/20 – 07/31/20 | $772,513.60 (80% of $965,642.00) | $1,480,780.86 | $46,341.60 | $1,480,780.86 |
| 10/01/20 | 8471 | 08/01/20 – 08/31/20 | $1,095,300.00 (80% of $1,369,125.00) | $1,285,052.79 | $55,766.00 | $1,285,052.79 |
| 11/11/20 | 9078 | 09/01/20 – 09/30/20 | $620,320.80 (80% of $775,401.00) | $563,481.20 | $38,370.00 | $563,481.20 |
| 12/01/20 | 9133 | 10/01/20 – 10/31/20 | $459,368.40 (80% of $574,210.50) | $754,380.85 | $15,428.00 | $754,380.85 |
| 01/15/21 | 9236 | 11/01/20 – 11/30/20 | $364,348.40 (80% of $455,435.50) | $597,400.01 | $25,914.40 | $597,400.01 |
| 02/12/21 | 9292 | 12/01/20 – 12/31/20 | $265,552.80 (80% of $331,941.00) | $148,172.80 | $33,609.60 | $148,172.80 |
| 03/23/21 | 9366 | 01/01/21 – 01/31/21 | $373,962.40 (80% of $467,453.00) | $1,193,365.13 | $52,154.40 | $1,193,365.13 |
| 04/09/21 | 9399 | 02/01/21 – 02/28/21 | $373,616.00 (80% of $467,020.00) | $323,536.88 | $68,656.00 | $323,536.88 |
| 05/14/21 | 9495 | 03/01/21 – 03/31/21 | $328,761.60 (80% of $410,952.00) | $250,032.60 | $48,356.40 | $250,032.60 |

| DATE FILED | ECF NO. | PERIOD COVERED | FEES REQUESTED | EXPENSES REQUESTED | FEES PAID | EXPENSES PAID |
|---|---|---|---|---|---|---|
| 06/11/21 | 9565 | 04/01/21 – 04/30/21 | $287,660.80 (80% of $359,576.00) | $219,339.07 | $114,884.40 | $219,339.07 |
| 07/20/21 | 9663 | 05/01/21 – 05/31/21 | $228,466.40 (80% of $285,583.00) | $628,112.62 | $54,135.60 | $100,431.19 |
| 08/10/21 | 9723 | 06/01/21 – 06/30/21 | $175,474.40 (80% of $219,343.00) | $118,286.63 | $57,949.20 | $106,684.99 |
| 10/06/21 | 9876 | 07/01/21 – 07/31/21 | $161,170.80 (80% of $201,463.50) | $143,380.82 | $75,594.00 | $867.05 |
| 10/28/21 | 9996 | 08/01/21 – 08/31/21 | $152,125.60 (80% of $190,157.00) | $83,797.54 | $67,949.20 | $284.26 |
| 12/01/21 | 10116 | 09/01/21 – 09/30/21 | $176,814.80 (80% of $221,018.50) | $45,688.54 | $88,173.60 | $289.69 |
| 12/8/21 | 10139 | 10/01/21 – 10/31/21 | $181,864.00 (80% of $227,330.00) | $14,365.31 | $86,563.60 | $0.00 |
| 01/13/22 | 10228 | 11/01/21 – 11/30/21 | $89,310.80 (80% of $111,638.50) | $14,152.94 | $34,750.40 | $138.02 |
| 02/14/22 | 10299 | 12/01/21 – 12/31/21 | $109,493.20 (80% of $136,866.50) | $4,351.22 | $45,889.60 | $0.00 |
| 3/25/22 | 10370 | 01/01/22 – 01/31/22 | $98,222.80 (80% of $122,778.50) | $18,885.21 | $52,667.60 | $0.00 |
| 3/31/22 | 10385 | 02/01/22 – 02/28/22 | $132,284.40 (80% of $165,355.50) | $7,557.16 | $108,979.60 | $328.20 |
| 05/16/22 | 10444 | 03/01/22 – 03/31/22 | $176,231.60 (80% of $220,289.50) | $72,015.09 | $116,743.60 | $0 |
| 06/28/22 | 10512 | 04/01/22 – 04/30/22 | $328,518.80 (80% of $410,648.50) | $7,073.40 | $0 | $0 |
| 07/21/22 | 10534 | 05/01/22– 05/31/22 | $218,322.00 (80% of $272,902.50) | $3,368.44 | $0 | $0 |
| 08/02/22 | 10555 | 06/01/22 – 06/30/22 | $330,597.60 (80% of $413,247.00) | $5,377.28 | $0 | $0 |

**<u>EXHIBIT G</u>**

**SUMMARY OF VOLUNTARY REDUCTIONS TO FEES AND EXPENSES**

| Date Filed | ECF No. | Period Covered | Fee Reduction | Expense Reduction |
|---|---|---|---|---|
| 03/11/19 | 2794 | 11/01/18 – 11/30/18 | $177,537.00 | $9,963.10 |
| 03/26/19 | 2958 | 12/01/18 – 12/31/18 | $136,543.50 | $10,390.21 |
| 04/05/19 | 3063 | 01/01/19 – 01/31/19 | $120,017.00 | $25,001.60 |
| 04/10/19 | 3118 | 02/01/19 – 02/28/19 | $173,017.50 | $6,569.80 |
| 06/03/19 | 4112 | 03/01/19 – 03/31/19 | $198,673.50 | $3,298.78 |
| 07/30/19 | 4411 | 04/01/19 – 04/30/19 | $69,757.00 | $239.35 |
| 07/30/19 | 4641 | 05/01/19 – 05/31/19 | $63,412.50 | $15,715.52 |
| 08/14/19 | 4843 | 06/01/19 – 06/30/19 | $71,905.00 | $5,755.18 |
| 09/06/19 | 5086 | 07/01/19 – 07/31/19 | $74,217.50 | $15,942.66 |
| 10/14/19 | 5364 | 08/01/19 – 08/31/19 | $69,894.00 | $8,737.34 |
| 11/22/19 | 6077 | 09/01/19 – 09/30/19 | $46,715.00 | $8,090.18 |
| 12/09/19 | 6169 | 10/01/19 – 10/31/19 | $28,938.50 | $3,123.09 |
| 01/30/20 | 6794 | 11/01/19 – 11/30/19 | $35,442.00 | $10,363.64 |
| 02/21/20 | 7328 | 12/01/19 – 12/31/19 | $31,445.50 | $2,308.23 |
| 03/21/20 | 7484 | 01/01/20 – 01/31/20 | $46,724.00 | $1,008.77 |
| 04/01/20 | 7633 | 02/01/20 – 02/29/20 | $34,810.00 | $8,042.19 |

| Date Filed | ECF No. | Period Covered | Fee Reduction | Expense Reduction |
|---|---|---|---|---|
| 05/04/20 | 7899 | 03/01/20 – 03/31/20 | $28,607.00 | $14,467.71 |
| 05/29/20 | 7990 | 04/01/20 – 04/30/20 | $23,841.50 | $11,747.05 |
| 06/30/20 | 8201 | 05/01/20 – 05/31/20 | $32,293.50 | $4,857.91 |
| 08/07/20 | 8354 | 06/01/20 – 06/30/20 | $31,972.50 | $0.00 |
| 09/02/20 | 8413 | 07/01/20 – 07/31/20 | $37,504.50 | $5,342.67 |
| 10/01/20 | 8471 | 08/01/20 – 08/31/20 | $88,490.50 | $26,096.17 |
| 11/11/20 | 9078 | 09/01/20 – 09/30/20 | $39,862.00 | $6,478.73 |
| 12/01/20 | 9133 | 10/01/20 – 10/31/20 | $30,047.00 | $1,770.11 |
| 01/15/21 | 9236 | 11/01/20 – 11/30/20 | $31,650.50 | $1,241.80 |
| 02/12/21 | 9292 | 12/01/20 – 12/31/20 | $22,075.00 | $1,830.17 |
| 03/23/21 | 9366 | 01/01/21 – 01/31/21 | $72,051.00 | $2,119.59 |
| 04/09/21 | 9399 | 02/01/21 – 02/28/21 | $31,109.00 | $1,774.52 |
| 05/14/21 | 9495 | 03/01/21 – 03/31/21 | $34,388.50 | $2,575.84 |
| 06/11/21 | 9565 | 04/01/21 – 04/30/21 | $28,024.50 | $2,392.96 |
| 07/20/21 | 9663 | 05/01/21 – 05/31/21 | $25,241.50 | $1,910.26 |
| 08/10/21 | 9723 | 06/01/21 – 06/30/21 | $30,438.50 | $1,599.11 |

| Date Filed | ECF No. | Period Covered | Fee Reduction | Expense Reduction |
|---|---|---|---|---|
| 10/06/21 | 9876 | 07/01/21 – 07/31/21 | $17,224.50 | $2,926.97 |
| 10/28/21 | 9996 | 08/01/21 – 08/31/21 | $23,032.00 | $1,981.57 |
| 12/01/21 | 10116 | 09/01/21 – 09/30/21 | $25,807.00 | $1,116.23 |
| 12/8/21 | 10139 | 10/01/21 – 10/31/21 | $22,332.00 | $2,356.83 |
| 01/13/22 | 10228 | 11/01/21 – 11/30/21 | $32,518.50 | $2,334.38 |
| 02/14/22 | 10299 | 12/01/21 – 12/31/21 | $37,250.00 | $1,991.32 |
| 3/25/22 | 10370 | 01/01/22 – 01/31/22 | $78,768.50 | $1,388.85 |
| 3/31/22 | 10385 | 02/01/22 – 02/28/22 | $51,565.00 | $3,262.94 |
| 05/16/22 | 10444 | 03/01/22 – 03/31/22 | $42,302.00 | $1,288.03 |
| 06/28/22 | 10512 | 04/01/22 – 04/30/22 | $42,587.50 | $2,587.03 |
| 07/21/22 | 10534 | 05/01/22– 05/31/22 | $39,352.50 | $1,377.42 |
| 08/02/22 | 10555 | 06/01/22 – 06/30/22 | $86,860.50 | $6,820.10 |
| **TOTAL** | | | **$2,466,246.50** | **$258,475.14** |

## EXHIBIT H

**SUMMARY OF COMPENSATION BY TASK CODE AGAINST
BUDGETED HOURS AND FEES FOR ELEVENTH COMPENSATION PERIOD**

| Task Code | Task Code Category | Hours Budgeted (Low – High) | Amount Budgeted (Low – High) | Actual Hours | Actual Amount |
|---|---|---|---|---|---|
| 2 | General Case Administration | 0-5 | $0.00 - $4,000 | 0.70 | $762.50 |
| 3 | Akin Gump Fee Application/Monthly Billing Reports | 25 – 50 | $25,000.00 – $50,000.00 | 30.80 | $26,868.00 |
| 4 | Analysis of Other Professionals' Fee Applications/Reports | 0 – 5 | $0.00 - $4,000 | 1.10 | $1,235.50 |
| 7 | Creditor Committee matters/Meetings (including 341 meetings) | 0 – 5 | $0.00 - $7,000 | 2.50 | $3,500.00 |
| 8 | Court Hearings | 10 – 20 | $7,500.00 – $25,000.00 | 14.70 | $19,877.50 |
| 10 | DIP, Cash Collateral Usage and Exit Financing | 200 - 400 | $280,000.00 – $750,000.00 | 308.30 | $421,591.00 |
| 12 | General Claims Analysis/Claims Objections | 0 – 5 | $0.00 - $7,000 | 0.60 | $840.00 |
| 20 | Jointly Asserted Causes of Action | 500 – 1000 | $700,000.00 - $1,200,000.00 | 624.10 | $825,525.50 |
| 22 | Disclosure Statement/ Solicitation/Plan/ Confirmation | 10 – 25 | $12,000.00 – $30,000.00 | 10.80 | $14,787.50 |
| 23 | Asset Dispositions/363 Asset Sales | 0 – 5 | $0.00 - $7,000 | 1.50 | $2,100.00 |
| **TOTAL** | | **745 – 1,520** | **$1,024,500.00 - $2,084,000.00** | **995.10** | **$1,317,087.50** |

## EXHIBIT I

**STAFFING PLAN FOR ELEVENTH COMPENSATION PERIOD**

| Category of Timekeeper | Number of Timekeepers Expected to Work on Matter During the Compensation Period | Average Hourly Rate |
| --- | --- | --- |
| Partner | 6 | $1,378.18 |
| Senior Counsel and Counsel | 2 | $1,112.50 |
| Associate | 5 | $622.73 |
| Paralegals & Non-Legal Staff | 3 | $371.90 |