**HALPERIN BATTAGLIA BENZIJA, LLP**
Alan D. Halperin, Esq.
Donna H. Lieberman, Esq.
40 Wall Street, 37th Floor
New York, NY 10005
Telephone: (212) 765-9100
Email: ahalperin@halperinlaw.net
Email: dlieberman@halperinlaw.net

*Counsel to Relator Carl Ireland,*
*Administrator of the Estate of James Garbe*

**Hearing Date: August 31, 2022**
**Time: 10:00 a.m.**
**Objection Date: August 24, 2022**
**Time: 4:00 p.m.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------- x
**In re**                                                 :
                                                          :     **Chapter 11**
**SEARS HOLDINGS CORPORATION, *et al.*,**                 :
                                                          :     **Case No. 18-23538 (RDD)**
**Debtors.[1]**                                            :
                                                          :     **(Jointly Administered)**
--------------------------------------------------------- x

## RELATOR CARL IRELAND'S STATEMENT AND RESERVATION OF RIGHTS WITH RESPECT TO THE APPLICATION OF AD HOC GROUP OF ADMIN

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); Max Serv, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (19870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC ,Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None): SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).

**CLAIMANTS PURSUANT TO 11 U.S.C. §§ 503(b)(1), 503(b)(3)(D) AND 503(b)(4) FOR ALLOWANCE AND REIMBURSEMENT OF REASONABLE PROFESSIONAL FEES AND ACTUAL NECESSARY EXPENSES IN MAKING A SUBSTANTIAL CONTRIBUTION IN THESE CHAPTER 11 CASES**

Relator Carl Ireland, Administrator of the Estate of James Garbe ("Relator") by and through his undersigned counsel, submits this Statement and Reservation of Rights (the "Statement") to the Application of Ad Hoc Group of Admin Claimants Pursuant to 11 U.S.C. §§ 503(b)(1), 503(b)(3)(D) and 503(b)(4) for Allowance and Reimbursement of Reasonable Professional Fees and Actual Necessary Expenses in Making a Substantial Contribution in these Chapter 11 Cases (the "Application").  In connection therewith, Relator respectfully represents as follows:

## DISCUSSION

1.      By the Application, the Ad Hoc Group of Admin Claimants asks the Court to determine that its actions made a "substantial contribution" to these cases, as that term is used in section 503(b)(3) of the Bankruptcy Code and interpreted in case law within the Second Circuit. Relator takes no position regarding the Ad Hoc Group's characterization of its role, and does not object to the Application.  Rather, Relator submits this Statement to express his concerns about the amount of money that has left and continues to leave these bankruptcy estates, while Relator, who has been repeatedly told that he is adequately protected by his replacement liens and superpriority administrative claim, continues to wait for payment.

2.      For the almost three years since the entry of the Confirmation Order, Relator has watched as the Debtors expended substantial sums of monies, draining the estates of funds against which Relator – with adequate protection in the form of replacement liens and superpriority administrative claims – had senior claims. The Relator is relieved by the mediated settlement of the litigations against Edward Lampert, ESL and others (the "Settlement"), but

notes that the filing of the motion for approval of the Settlement was immediately followed by filings by parties seeking some portion of those funds, including numerous final fee applications and the Application, in addition to the continued billing of other professionals on a go-forward basis.   While the sum to be realized by the Settlement is substantial, as this Court is well aware, even vast sums can and do dissipate quickly in large chapter 11 cases.

3.        Given that reality and Relator's unique position and seniority of claims, as set forth in prior orders of this Court, Relator determined it was important to state his concerns, to ensure that it would not be argued later that Relator should have "spoken up."

**Background**

4.        As of the date of the Debtors' bankruptcy filings, Relator and his co-mortgagee, the United States (together, the "Mortgagees") held a perfected first lien on real property owned by the Debtors, as well as the proceeds of that property. The secured claim arose pursuant to the settlement of a litigation brought under the False Claims Act and analogous State statutes, and was approved by the U.S. District Court for the Southern District of Illinois by Order dated January 19, 2018.   *United States ex rel. Garbe v. Kmart Corp.*, Case No. 12-cv-881, D.N. 497.

5.        The settlement, in the amount of $59 million, resolved claims of $375 million in damages and $110 billion in statutory penalties, and secured the payment of the settlement amount with the grant of mortgages on two properties.[2]   The face amount of the mortgage that was in place as of the Petition Date was $17.4 million, and the mortgage note and security agreement provided for interest and attorneys' fees.  Relator timely filed a secured claim in these cases in the amount of approximately $18.2 million.

---

[2] Detail about the underlying action and the settlement agreement are provided in Relator's Motion (defined in paragraph 7 hereof) and the exhibits to that Motion.

6.      The rights of the Mortgagees and the priority of their secured claims were preserved in the DIP financing orders entered by this Court,[3] and the Mortgagees (and only the Mortgagees) continued to hold a perfected first mortgage on the property through the date of its sale. Relator filed a limited objection to the proposed sale of the Debtors' assets, and in the Sale Order dated February 8, 2019 [D.N. 2507, ¶ 71], the Court granted the Mortgagees liens against the sale proceeds of the property (and did not except the Carve-Out from the scope of the Mortgagees' liens), and a superpriority administrative expense claim against the Debtors, as adequate protection to satisfy any diminution of the value of the replacement lien post-closing.

7.      Relator obtained an appraisal of the property at issue immediately after the sale occurred, using the appraisal firm that had been employed by the Debtors in connection with the underlying settlement.  The appraisal, which valued the property at $22.1 million, was filed with the Court in connection with Relator's August 2019 Motion for an Order (I) Determining the Value of Relator's Collateral as of the Sale of Such Collateral; (II) Determining the Amount of Any Diminution In the Amount of the Sales Proceeds Allocable to Such Collateral After the Sale; (III) Directing Payment of Relator's Secured and Superpriority Administrative Claims; and (IV) Granting Related Relief [D.N. 4931] ("Relator's Motion").[4]

8.      Relator raised concerns at the October 2019 confirmation hearing about the value of the Mortgagees' replacement liens and adequate protection, given the Debtors' lack of sufficient cash, the uncertain value of other assets, the continuing costs of the cases, and the Debtors' intent to make distributions to creditors junior in priority to the Mortgagees prior to the

---

[3] *See* Senior DIP Order, D.N. 955, ¶ 65; Junior DIP Order, D.N. 1436, ¶ 64.
[4] The Debtors had the property appraised almost nine months after the sale closed, and that appraisal valued the property at approximately $16.9 million.  Interestingly, as noted in Relator's Motion, just three months after the sale closed, the Debtors and buyer Transform jointly filed notarized deeds of transfer with the Puerto Rico Real Property Registrar, representing that the property was sold to Transform for $20,770,000.

Effective Date of the Plan.  While the Court denied Relator's request that funds be segregated for

the Mortgagees' secured claims, language was added to the Confirmation Order granting the

Mortgagees additional adequate protection, in the form of liens on Total Assets in the event of

diminution in the value of the Mortgagees' replacement liens.  (The Confirmation Order made it

clear that the grant of additional adequate protection in no way disturbed or diminished the rights

granted to the Mortgagees under the Sale Order.) *See* Confirmation Order, D.N. 5370, ¶ 65.[5]

**Relator's Concerns**

9.      Relator is very pleased that the mediation of the actions against Edward Lampert,

ESL Investments and others has proven successful, and that the Debtors anticipate the receipt of

$175 million shortly after Court approval of the Settlement. However, Relator continues to be

concerned about the adequate protection of his claims, particularly as funds leave the estates to

pay creditors junior to the Mortgagees.

10.     The Settlement has brought with it the Application, as well as numerous final fee

applications from professionals in these cases.  The Application seeks an order approving a

substantial contribution claim of $750,000 and directing payment of that amount when other

administrative claims are paid, and it is anticipated that most administrative claims will be paid

before the Plan Effective Date. Thus, funds will continue to be distributed to holders of

administrative claims, and the substantial contribution claim, if allowed, may be paid, together

with millions of dollars in other professional fees. Moreover, there may be estate professionals

who continue to bill until the Effective Date, and there will undoubtedly be professionals

---

[5] The relevant paragraphs of the DIP orders, the Sale Order and the Confirmation Order are Exhibit A to Relator's Limited Objection to the Motion of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to Bankruptcy Code Sections 105, 362, 364 and 1142 and Bankruptcy Rules 3020(D), 4001 and 9014 Authorizing Entry by the Debtors' Estates Into the Litigation Funding Arrangement with Bench Walk 21p, L.P.[ D.N 10484] and Relator did not wish to burden the Court by repeating them here. However, Relator is happy to provide those extracts should the Court deem it helpful.

retained by the Liquidating Trust. Yet no funds are or will be escrowed or set aside for the Mortgagees' secured and superpriority administrative claims.

11.    The Mortgagees have been assured on multiple occasions that they are adequately protected because—thanks to their senior liens and superpriority administrative expense claims -- they are "first in line" for payment.  Much as Relator would like to believe that the Mortgagees' claims are adequately protected, as noted above, he has spent close to three years watching millions of dollars leave the bankruptcy estates to pay professionals and other holders of claims junior to those of the Mortgagees, while the Mortgagees have been paid nothing and no funds have been reserved for them.[6]

12.    The Settlement certainly makes the occurrence of the Effective Date more likely, and the motion seeking approval of that Settlement states that the "Effective Date is now within reach."  However, even assuming the approval of the Settlement on August 31st, there is no certainty about the Effective Date; the litigation involving the claims of Cyrus Capital is pending before the Second Circuit, and continues to put the occurrence of the Effective Date at risk.[7]

13.    Relator respectfully submits that with the last remaining material assets of the estates being reduced to cash, and as the estates continue to incur expenses that are junior in right to Relator's claim and those junior claims are paid, appropriate consideration must be afforded to the Mortgagees initial position as the holders of a perfected first mortgage on real property and

---

[6] The most recent status report filed by the Debtors is their January 19, 2022 report. [D.N. 10240].That report estimates that allowed priority and secured claims (a category that Relator assumes includes the Mortgagees' secured and superpriority administrative claims), will total $52.9 million, but it does not appear that $52.9 million is reserved for such claims or explain how that number is determined (given that asserted priority and secured claims are considerably more than $52.9 million).  See Status Report, Claims Status Update (page 2).

[7] Relator notes that Cyrus Capital has filed a reservation of rights with respect to the motion for approval of the Settlement, noting that while it supports the Settlement, "it does not support distribution of Estate funds prior to resolution of the Cyrus Appeal or the establishment of an appropriate reserve to account for Cyrus's section 507(b) claim" [D.N. 10596, ¶ 9].

liens on proceeds of the same, and the Court-ordered senior protections granted to the

Mortgagees.  The amount of the Mortgagees' secured claim as of the bar date in these cases --

$18.2 million – should be escrowed for the benefit of the Mortgagees, to insure that (with or

without the Plan becoming effective) adequate funds are in place for the Mortgagees' claims, and

that such funds are preserved to ensure the Mortgagees a remedy and the benefits of the

protections granted by this Court.

Dated: New York, New York
         August 24, 2022

                                        Respectfully submitted,

                                        HALPERIN BATTAGLIA BENZIJA, LLP

                                        *By: /s/Alan D. Halperin*
                                        Alan D. Halperin, Esq.
                                        Donna H. Lieberman, Esq.
                                        40 Wall Street, 37th Floor
                                        New York, NY 10005
                                        Telephone: (212) 765-9100
                                        ahalperin@halperinlaw.net
                                        dlieberman@halperinlaw.net

                                        *Counsel to Relator Carl Ireland, Administrator for the
                                        Estate of James Garbe*