Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 18-23538-rdd

4    Adv. Case No. 19-08250-rdd

5    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7

8    SEARS HOLDINGS CORPORATION, et al.,

9

10          Debtors.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   SEARS HOLDINGS CORPORATION et al.,

13               Plaintiffs,

14          v.

15   LAMPERT et al.,

16               Defendants.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

18               United States Bankruptcy Court

19               300 Quarropas Street, Room 248

20               White Plains, NY 10601

21

22               August 31, 2022

23               10:10 AM

24

25

Page 2

1    B E F O R E :

2    HON  ROBERT  D.  DRAIN

3    U.S.  BANKRUPTCY  JUDGE

4

5    ECRO:    JUSTIN  WALKER

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1   HEARING re Application for Interim Professional Compensation

2   / Tenth Application of Weil, Gotshal & Manges LLP, as

3   Attorneys for the Debtors, for Interim Allowance of

4   Compensation for Professional Services Rendered and

5   Reimbursement of Actual and Necessary Expenses Incurred

6   period: 11/1/2021 to 2/28/2022, fee:$1,574, 106.50,

7   expenses: $213,032.12. filed by Weil, Gotshal & Manges LLP.

8   (ECF #10401)

9

10  HEARING re Notice of Hearing on Interim Applications for

11  Allowance of Compensation and Reimbursement of Expenses on

12  May 26, 2022 at 10:00 A.M. (related document(s) 10397,

13  10396, 10401, 10399, 10398) filed by Garrett A. Fail on

14  behalf of Sears Holdings Corporation. (ECF #10406)

15

16  HEARING re Status Report Fee Examiner's Eighth Status Report

17  Regarding Review of Interim Fee and Expense Applications

18  Filed by Chantelle D. McClamb on behalf of Fee Examiner.

19  (ECF #10440)

20

21

22

23

24

25

Page 4

1    HEARING re Application for Interim Professional Compensation

2    / Tenth Application of Weil, Gotshal & Manges LLP, as

3    Attorneys for the Debtors, for Interim Allowance of

4    Compensation for Professional Services Rendered and

5    Reimbursement of Actual and Necessary Expenses Incurred

6    period: 11/1/2021 to 2/28/2022, fee:$1,574,106.50, expenses:

7    $213,032.12. filed by Weil, Gotshal & Manges LLP. (ECF

8    #10401)

9

10   HEARING re Notice of Hearing on Interim Applications for

11   Allowance of Compensation and Reimbursement of Expenses on

12   May 26, 2022 at 10:00 A.M. (related document(s)10397, 10396,

13   10401, 10399, 10398) filed by Garrett A. Fail on behalf of

14   Sears Holdings Corporation. (ECF #10406)

15

16   HEARING re Status Report Fee Examiner's Eighth Status Report

17   Regarding Review of Interim Fee and Expense Applications

18   Filed by Chantelle D, McClamb on behalf of Fee Examiner.

19   (ECF #10440)

20

21

22

23

24

25

Page 5

1    HEARING re Application for Interim Professional Compensation

2    /Tenth Interim Fee Application of Akin Gump Strauss Hauer &

3    Feld LLP as Counsel to the Official Committee of Unsecured

4    Creditors for Allowance of Compensation for Services

5    Rendered and Reimbursement of Expenses for the Period:

6    11/1/2021 to 2/28/2022, fee:$536,639.00, expenses:

7    $44,946.53. filed by Akin Gump Strauss Hauer & Feld LLP.

8    (Dublin, Philip) (ECF #10398)

9

10   HEARING re Notice of Hearing on Interim Applications for

11   Allowance of Compensation and Reimbursement of Expenses on

12   May 26, 2022 at 10:00 A.M. (related document(s)10397, 10396,

13   10401, 10399, 10398) filed by Garrett A. Fail on behalf of

14   Sears Holdings Corporation. (ECF #10406)

15

16   HEARING re Related Documents: Status Report Fee Examiner's

17   Eighth Status Report Regarding Review of Interim Fee and

18   Expense Applications Filed by Chantelle D. McClamb on behalf

19   of Fee Examiner. (ECF #10440)

20

21   HEARING re Response to Motion Administrative Expense Claims

22   Representative's Reservation of Rights Regarding Interim Fee

23   Application Of Akin Gump Strauss Hauer & Feld LLP (related

24   document(s)10398) filed by Eric Mark Kay on behalf of Gary

25   Polkowitz. (ECF #10443)

Page 6

1    HEARING re Application for Interim Professional Compensation

2    /Tenth Interim Application of FTI Consulting, Inc.,

3    Financial Advisor to the Official Committee of Unsecured

4    Creditors of Sears Holdings Corporation, et al. for Interim

5    Allowance of Compensation and Reimbursement of Expenses for

6    the Period: 11/1/2021 to 2/28/2022, fee:$80,462.00,

7    expenses: $0.00. filed by FTI Consulting, Inc. (ECF #10399)

8

9    HEARING re Notice of Hearing on Interim Applications for

10   Allowance of Compensation and Reimbursement of Expenses on

11   May 26, 2022 at 10:00 A.M. (related document(s)10397, 10396,

12   10401, 10399, 10398) filed by Garrett A. Fail on behalf of

13   Sears Holdings Corporation. (ECF #10406)

14

15   HEARING re Related Document: Status Report Fee Examiner's

16   Eighth Status Report Regarding Review of Interim Fee and

17   Expense Applications Filed by Chantelle D. McClamb on behalf

18   of Fee Examiner. (ECF #10440)

19

20

21

22

23

24

25

Page 7

1   HEARING re Application for Interim Professional Compensation

2   /Seventh Interim Fee Application of Herrick, Feinstein LLP

3   as Special Conflicts Counsel to the Official Committee of

4   Unsecured Creditors for Allowance of Compensation for

5   Services Rendered and Reimbursement of Expenses for the

6   Period: 11/1/2021 to 2/28/2022, fee:$46,688.00, expenses:

7   $509.69. filed by Herrick, Feinstein LLP. (ECF #10396)

8

9   HEARING re Notice of Hearing on Interim Applications for

10  Allowance of Compensation and Reimbursement of Expenses on

11  May 26, 2022 at 10:00 A.M. (related document(s)10397, 10396,

12  10401, 10399, 10398) filed by Garrett A. Fail on behalf of

13  Sears Holdings Corporation. (ECF #10406)

14

15  HEARING re Related Document: Status Report Fee Examiner's

16  Eighth Status Report Regarding Review of Interim Fee and

17  Expense Applications Filed by Chantelle D. McClamb on behalf

18  of Fee Examiner, (ECF #10440)

19

20

21

22

23

24

25

Page 8

1   HEARING re Monthly Fee Statement and Tenth Interim Fee

2   Application of Kroll Restructuring Administration LLC, as

3   Administrative Agent to the Debtors, for Services Rendered

4   and Reimbursement of Expenses for (1) The Combined Monthly

5   Fee Period from January 1, 2022 through February 28, 2022

6   and (II) The Interim Fee Period of November 1, 2021 through

7   February 28, 2022 filed by Kroll Restructuring

8   Administration LLC. (ECF #10397)

9

10  HEARING re Notice of Hearing on Interim Applications for

11  Allowance of Compensation and Reimbursement of Expenses on

12  May 26, 2022 at 10:00 A.M. (related document(s)10397, 10396,

13  10401, 10399, 10398) filed by Garrett A. Fail on behalf of

14  Sears Holdings Corporation. (ECF #10406)

15

16  HEARING re Related Document: Status Report Fee Examiner's

17  Eighth Status Report Regarding Review of Interim Fee and

18  Expense Applications Filed by Chantelle D. McClamb on behalf

19  of Fee Examiner. (ECF #10440)

20

21

22

23

24

25

```
1   HEARING re Application for Interim Professional Compensation

2   Ninth Joint Application of Paul E. Harner, as Fee Examiner

3   and Ballard Spahr LLP, as Counsel to the Fee Examiner, for

4   Interim Allowance of Compensation for Professional Services

5   Rendered and Reimbursement, period: 11/1/2021 to 2/28/2022,

6   fee:$269,013.50, expenses: $111.60 filed by Fee Examiner.

7   (ECF #10409)

8

9   HEARING re Supplemental Notice of Hearing on Interim

10  Applications for Allowance of Compensation and Reimbursement

11  of Expenses on May 26, 2022 at 10:00 A.M. (related

12  document(s)10409, 10406) filed by Garrett A. Fail on behalf

13  of Sears Holdings Corporation. (ECF #10410)

14

15  HEARING re Related Document: Status Report Fee Examiner's

16  Eighth Status Report Regarding Review of Interim Fee and

17  Expense Applications Filed by Chantelle D. McClamb on behalf

18  of Fee Examiner. (ECF #10440)

19

20  HEARING re Fourth Application for Interim Professional

21  Compensation for the period March 1, 2021 through September

22  30, 2021 for Morritt Hock & Hamroff LLP, Special Counsel,

23  period: 3/1/2021 to 9/30/2021, fee:$17,883.50, expenses:

24  $7.40. filed by Morritt Hock & Hamroff LLP. (ECF #10217)

25
```

Page 10

1   HEARING re Supplemental Notice of Hearing on Interim

2   Applications for Allowance of Compensation and Reimbursement

3   of Expenses on May 26, 2022 at 10:00 A.M. (related

4   document(s)10406, 10217) filed by Garrett A. Fail on behalf

5   of Sears Holdings Corporation. (ECF #10411)

6

7   HEARING re Related Document: Status Report Fee Examiner's

8   Eighth Status Report Regarding Review of Interim Fee and

9   Expense Applications Filed by Chantelle D. McClamb on behalf

10  of Fee Examiner. (ECF #10440)

11

12  HEARING re Application for Interim Professional Compensation

13  / Fourth Interim Fee Application of Deloitte Tax LLP for

14  Compensation for Services Rendered as Tax Services Provider,

15  period: 11/1/2019 to 3/31/2020, fee:$53,422.00, expenses:

16  $0.00. filed by Garrett A. Fail. (ECF #10433)

17

18  HEARING re Notice of Hearing on Interim Applications for

19  Allowance of Compensation and Reimbursement of Expenses on

20  June 29, 2022 at 10:00 a.m. (related document(s)10434,

21  10433) filed by Garrett A. Fail on behalf of Sears Holdings

22  Corporation. (ECF #10442)

23

24

25

Page 11

1    HEARING re Related Document: Status Report Fee Examiner's

2    Eighth Status Report Regarding Review of Interim Fee and

3    Expense Applications Filed by Chantelle D, McClamb on behalf

4    of Fee Examiner. (ECF #10440)

5

6    HEARING re Application for Interim Professional Compensation

7    / Fifth Interim Fee Application of Deloitte Tax LLP for

8    Compensation for Services Rendered as Tax Services Provider,

9    period: 4/1/2020 to 12/31/2021, fee:$257,411.50, expenses:

10   $0.00. filed by Garrett A. Fail. (ECF #10434)

11

12   HEARING re Notice of Hearing on Interim Applications for

13   Allowance of Compensation and Reimbursement of Expenses on

14   June 29, 2022 at 10:00 a.m. (related document(s)10434,

15   10433) filed by Garrett A. Pail on behalf of Sears Holdings

16   Corporation. (ECF #10442)

17

18   HEARING re Related Document: Status Report Fee Examiner's

19   Eighth Status Report Regarding Review of Interim Fee and

20   Expense Applications Filed by Chantelle D, McClamb on behalf

21   of Fee Examiner. (ECF #10440)

22

23

24

25

1    HEARING re Application for Final Professional Compensation

2    of Wollmuth Maher & Deutsch LLP. filed by James N. Lawlor.

3    (Attachments: # 1 Exhibit A #2 Exhibit B #3 Exhibit C) (ECF

4    #10452)

5

6    HEARING re Notice of Hearing on Final Fee Applications for

7    Allowance of Compensation and Reimbursement for Expenses on

8    June 29, 2022, at 10:00 a.m. (related document(s)10453,

9    10452) filed by Garrett A. Fail on behalf of Sears Holdings

10   Corporation. (ECF #10460)

11

12   HEARING re Application for Final Professional Compensation

13   of Law Offices of Michael M. Mulder. filed by James N,

14   Lawlor. (ECF #10453)

15

16   HEARING re Notice of Hearing on Final Fee Applications for

17   Allowance of Compensation and Reimbursement for Expenses on

18   June 29, 2022, at 10:00 a.m. (related document(s)10453,

19   10452) filed by Garrett A. Fail on behalf of Sears Holdings

20   Corporation. (ECF #10460)

21

22

23

24

25

1    HEARING re Motion to Authorize /Motion of the Official

2    Committee of Unsecured Creditors for Entry of an Order

3    Pursuant to Bankruptcy Code Sections 105, 362, 364 and 1142

4    and Bankruptcy Rules 3020(d), 4001 and 9014 Authorizing

5    Entry by the Debtors' Estates into the Litigation Funding

6    Arrangement with Bench Walk 21p, LP, filed by Ira 8.

7    Dizengoff on behalf of Official Committee of Unsecured

8    Creditors of Sears Holdings Corporation, et al. (ECF

9    #10407)

10

11    HEARING re Affidavit of Service of Victor Wong Regarding

12    Motion of the Official Committee of Unsecured Creditors for

13    Entry of an Order Authorizing Entry by the Debtors' Estates

14    into the Litigation Funding Arrangement with Bench Walk 21p,

15    L.P. (related document(s)10407) Filed by Adam M. Adler on

16    behalf of Kroll Restructuring Administration LLC. (ECF

17    #10413)

18

19

20

21

22

23

24

25

1    HEARING re Notice of Hearing on Motion of the Official

2    Committee of Unsecured Creditors for Entry of an Order

3    Pursuant to Bankruptcy Code Sections 105, 362, 364 and 1142

4    and Bankruptcy Rules 3020(d), 4001 and $014 Authorizing

5    Entry by the Debtors Estates into the Litigation Funding

6    Arrangement with Bench Walk 21p, L.P. (related

7    document(s)10407) filed by Ira S. Dizengoff on behalf of

8    Official Committee of Unsecured Creditors of Sears Holdings

9    Corporation, et al. (ECF #10454)

10

11   HEARING re Notice of Hearing on Motion of the Official

12   Committee of Unsecured Creditors for Entry of an Order

13   Pursuant to Bankruptcy Code Sections 105, 362, 364 and 1142

14   and Bankruptcy Rules 3020(d), 4001 and 9014 Authorizing

15   Entry by the Debtors Estates into the Litigation Funding

16   Arrangement with Bench Walk 21p, L.P, (related

17   document(s)10407) (ECF #10454)

18

19   HEARING re Objection to Motion Relator Carl Irelands Limited

20   Objection to the Motion of the Official Committee of

21   Unsecured Creditors for Entry of an Order Pursuant to

22   Bankruptcy Code Sections 105, 362, 364 and 1142 and

23   Bankruptcy Rules 3020(d), 4001 and 9014 Authorizing Entry by

24   the Debtors Estates Into the Litigation Funding Arrangement

25   with Bench Walk 21p, L.P. (related document(s)10407) (ECF

```
 1   #10408)

 2

 3   HEARING re Objection to Motion of the Official Committee of

 4   Unsecured Creditors for Entry of an Order Pursuant to

 5   Bankruptcy Code Section 105, 363, 364 and 1142 and

 6   Bankruptcy Rules 3020(D), 4001, and 9014 Authorizing Entry

 7   by the Debtors Estates into the Litigation Funding

 8   Arrangement with Bench Walk 21p L.P. (related

 9   document(s)10407) filed by Joseph E. Sarachek on behalf of

10   A&A HK Industrial, AMW Vietnam Co. Ltd., Helen Andrews Inc.,

11   Mansheen Industries, Ltd., Mien Co., Ltd., Mingle Fashion

12   Limited, Purcell Murray, Samil Solutions, Shanghai Fochier,

13   Strong Progress Garment Factory Company LTD. (ECF #10485)

14

15   HEARING re Motion for Objection to Claim(s) Number: 26186 of

16   Texas Comptroller of Public Accounts on Behalf of the State

17   of Texas and Local Sales Tax Jurisdictions, and (B) Motion

18   for Turnover of Property of the Estate and Application of

19   Funds Owed to Debtors in Satisfaction of Claims 20615,

20   26368, 20373, and 20614, or, in the Alternative, (C) Motion

21   for an Order, Pursuant to Sections 105(A) and 502(C) of the

22   Bankruptcy Code, Estimating Claims with hearing to be held

23   on 6/29/2022 at 10:00 AM at Courtroom TBA, White Plains

24   Courthouse (RDD) Responses due by 6/17/2022, filed by David

25   Evan Otero on behalf of Sears Holdings Corporation.
```

Page 16

1    HEARING re Objection to Motion Objection of Wilmington

2    Trust, National Association, as Indenture Trustee and

3    Collateral Agent, to Motion of the Official Committee of

4    Unsecured Creditors for Entry of an Order Pursuant to

5    Bankruptcy Code Sections 105, 362, 364, and 1142 and

6    Bankruptcy Rules 3020(D), 4001 and 9014 Authorizing Entry by

7    the Debtors' Estates into the Litigation Funding Arrangement

8    with Bench Walk 21P, L.P. (related document(s) 10407) filed

9    by Edward M. Fox on behalf of Wilmington Trust, National

10   Association. (ECF #10486)

11

12   HEARING re Objection to Motion OF THE OFFICIAL COMMITTEE OF

13   UNSECURED CREDITORS FOR ORDER AUTHORIZING LITIGATION FUNDING

14   WITH BENCH WALK 2ip, L.P. [Doc. 10407] AND JOINDER TO

15   OBJECTION OF WILMINGTON TRUST, NATIONAL ASSOCIATION, AS

16   INDENTURE TRUSTEE AND COLLATERAL AGENT [Doc. 10486] (related

17   document(s) 10407) filed by Alexander Tiktin on behalf of

18   Orient Craft Ltd. (ECF #10490)

19

20   HEARING re Motion to Approve Motion to be Listed as a

21   Priority Debt, Demand Acknowledgement of Employment and Type

22   of Work Performed (ECF #10487)

23

24

25

1    HEARING re Motion to Approve (CORRECTING HEARING DATE Motion

2    to be Listed as a Priority Debt, Demand Acknowledgement of

3    Employment and Type of Work Performed (related to ECF

4    #10487) (ECF #10488)

5

6    HEARING re Response to Motion of the Official Committee of

7    Unsecured Creditors for Entry of an Order Pursuant to

8    Bankruptcy Code Section 105, 363, 364 and 1142 and

9    Bankruptcy Rules 3020(D), 4001, and 9014 Authorizing Entry

10   by the Debtors Estates into the Litigation Funding

11   Arrangement with Bench Walk 21p L.P. (related

12   document(s)10407) filed by Brian P. Morgan on behalf of

13   Whitebox Multi-Strategy Partners, LP. (ECF #10496)

14

15   HEARING re Adversary proceeding: 19-08250-rdd Sears Holdings

16   Corporation et al v. Lampert et al

17   Joint Motion to Approve Compromise / Joint Motion of Debtors

18   and Official Committee of Unsecured Creditors for Entry of

19   an Order Approving Settlement Agreements, Granting Certain

20   Related Relief, and Authorizing Certain Nonmaterial Plan

21   Modifications in Furtherance of the Effective Date of the

22   Plan

23

24

25   Transcribed by:  Sonya Ledanski Hyde

18-23538-shl   Doc 10655   Filed 10/04/22   Entered 10/04/22 11:06:21   Main Document
Pg 18 of 172

```
                                        Page 18

 1   A P P E A R A N C E S :

 2

 3   WEIL, GOTSHAL & MANGES, LLP

 4        Attorneys for the Debtor

 5        767 Fifth Avenue

 6        New York, NY 10153

 7

 8   BY:  GARRETT A. FAIL

 9        RAY C. SCHROCK

10

11   HOLWELL SHUSTER & GOLDBERG LLP

12        Attorney for Kunal Kamlani

13        425 Lexington Avenue 14th floor

14        New York, NY 10017

15

16   BY:  DANIEL P GOLDBERG

17

18   BALLARD SPAHR LLP

19        Attorney for Fee Examiner

20        1675 Broadway, 19th floor

21        New York, NY 10019

22

23   BY:  TOBEY M. DALUZ

24

25
```

Veritext Legal Solutions
212-267-6868          www.veritext.com          516-608-2400

Page 19

```
 1    FAEGRE DRINKER BIDDLE & REATH LLP

 2          Attorney for Ad Hoc Group of Admin Claimants

 3          1177 6th Avenue, 41st floor

 4          New York, NY 10036

 5

 6    BY:  BRIAN P. MORGAN

 7

 8    AKIN GUMP STRAUSS HAUER & FELD LLP

 9          Attorney for Official Committee of Unsecured Creditors

10          Bank of America Tower

11          1 Bryant Park

12          New York, NY 10036

13

14    BY:  IRA S. DIZENGOFF

15          DEAN CHAPMAN

16          SARA BRAUNER

17

18    DAVIDOFF HUTCHER & CITRON

19          Attorney for HK Sino-Thai Trading Company

20          605 3rd Avenue

21          New York, NY 10158

22

23    BY:  DAVID WANDER

24

25
```

Page 20

```
 1   SEYFARTH SHAW LLP

 2        Attorney for Wilmington Trust, National Association

 3        233 S Wacker Dr # 8000

 4        Chicago, IL 60606

 5

 6   BY:  EDWARD M. FOX

 7

 8   MORGAN, LEWIS & BOCKIUS LLP

 9        Attorney for Whitebox Multi-Strategy Partners, LP

10        101 Park Avenue

11        New York, NY 10178

12

13   BY:  MELISSA Y. BOEY

14

15   WILMER, CUTLER, PICKERING, HALE AND DORR

16        Attorney for Mr. Lampert and the ESL defendants

17        250 Greenwich Street, 45th Floor

18        New York, New York 10007

19

20   BY:  PHILIP D. ANKER

21

22

23

24

25
```

Page 21

1    QUINN EMANUEL

2         Attorney on behalf of Admin Expense Claims

3         Representative

4         1300 I St NW #900

5         Washington, DC 20005

6

7    BY:  ERIKA MORABITO

8

9    MILBANK

10        Attorneys for Cyrus

11        55 Hudson Yards

12        New York, NY 10001

13

14   BY:  ANDREW J. LEBLANC

15        ERIC REIMER

16        TOM KRELLER

17

18   HALPERIN BATTAGLIA BENZIJA, LLP

19        Attorney for Relator Carl Ireland

20        40 Wall Street

21        New York, NY 10005

22

23   BY:  ALAN D. HALPERIN

24

25

Page 22

```
 1   LOCKE LORD LLP

 2         Attorney for PBGC

 3         Brookfield Place

 4         200 Vesey Street

 5         New York, NY 10281

 6

 7   BY:  BRIAN RAYNOR

 8

 9   ALSO PRESENT TELEPHONICALLY:

10   BRIAN J. GRIFFITH

11   BILL MURPHY

12   PATRICK J. BARTELS JR.

13   RYAN BARTLEY

14   PAUL BASTA

15   ROBERT BRITTON

16   GABRIEL BRUNSWICK

17   CHRISTOPHER CARTY

18   RACHEL M. CHERINGTON

19   KELLEY A. CORNISH

20   THERESA A. DRISCOLL

21   PHILIP DUPLIN

22   KEITH FISCHER

23   EDWARD M. FOX

24   JARED R. FRIEDMANN

25   LESLIE C. HELLMAN
```

Page 23

```
 1    MICHAEL COURTNEY KEATS

 2    HOORI KIM

 3    JENNIFER S. KOOKOGEY-LAJOIE

 4    THOMAS R. KRELLER

 5    ZACHARY LANIER

 6    JAMES LAWLOR

 7    NOAH LEVINE

 8    SIDNEY P. LEVINSON

 9    SCOTT BRIAN LUFTGLASS

10    COURTNEY MORGAN

11    MICHAEL M. MULDER

12    BILL MURPHY

13    BRITTANY J. NELSON

14    SEAN E. O'DONNELL

15    SEAN O'NEAL

16    RYANNE PERIO

17    ALLYSON PIERCE

18    GARY POLKOWITZ

19    LAUREL D. ROGLEN

20    ELIZA RONALDS-HANNON

21    JOSEPH E. SARACHEK

22    PAUL KENAN SCHWARTZBERG

23    COURTNEY SOLOMON

24    SAMUEL STAR

25    JOSEPH SZYDLO
```

Page 24

1  ANDREW THAU

2  DAVID ZENSKY

3  ANDREW DEVORE

4  ANDREW FRACKMAN

5  BRIAN D. GLUECKSTEIN

6  MATTHEW GURGEL

7  LESLIE C. HEILMAN

8  THOMAS ROSS HOOPER

9  MARK J. HYLAND

10  THOMAS KRELLER

11  NOAH LEVINE

12  DANIEL SHAMAH

13  ERICA WEISGERBER

14  NOVA A. ALINDOGAN

15  ANNE AUFHAUSER

16  NATAN BANE

17  BRIANNA B BILTER

18  MICHAEL J. BIMKRANT

19  SOMA BISWAS

20  KEVIN ECKHARDT

21  JACK EYERS

22  MATT FERNAND

23  KEITH FISCHER

24  UDAY GORREPATI

25  TAYLOR HARRISON

Page 25

1    WAYNE KELLNER

2    DIETRICH KNAUTH

3    STEPHANIE P. LASCANO

4    DONNA H. LIEBERMAN

5    KYLE A LONERGAN

6    JUSTIN ORMAND

7    MELISSA PETTIT

8    KEITH D ROFLAND

9    BRAD ERIC SCHELER

10   ANDREW SCURRIA

11   PETER B. SIROKA

12   CHRISTOPHER STAUBLE

13   MICHAEL P. STEMHELM

14   ANDREW THAU

15   ALEXANDER TIKTIN

16   MARGARET A VESPER

17   PHILIP WEINTRAUB

18   ALEX WOLF

19   OWEN RICHARD WOLFE

20   MELANIE WESTOVER YANEZ

21   BRUICE BERKOWITZ

22   ROBERT HONEYWELL

23   KUNAL KAMLANI

24   TYLER F. KUSMA

25   JUSTIN ORMAND

Page 26

1    MELISSA PETTIT

2    JOEL W. STERNMAN

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 27

1              P R O C E E D I N G S

2              THE COURT:  Okay, good morning.  This is Judge

3      Drain and we're here in In Re:  Sears Holding Corporation,

4      et al.  I have the amended agenda for today's hearings and

5      I'm happy to go down in the order of the agenda.

6              MR. SCHROCK:  Excellent.  Thanks very much, Your

7      Honor.  Hear me okay?

8              THE COURT:  Yes, I hear you fine.  Thanks.

9              MR. SCHROCK:  Great.  Your Honor, for the record,

10     Ray Schrock, Weil, Gotshal, and Manges, counsel for the

11     Debtor.  I'm joined this morning by my partner, Garrett

12     Fail.

13             MR. FAIL:  Morning, Your Honor.

14             THE COURT:  Morning.

15             MR. SCHROCK:  We also have with us from the

16     Debtors in the virtual courtroom Brian Griffith and William

17     Murphy from M-3 Advisory Partners as well as Paul Weiss

18     attorneys are on the line.  They represented the independent

19     directors of the Debtors in connection with their

20     investigation, among other (indiscernible).

21             THE COURT:  Okay.

22             MR. SCHROCK:  Additional Debtors' advisors are

23     also on the line and as are members of the Debtors' board of

24     directors who are listening in.  Thanks to all of them for

25     all of their hard work in getting this here today, and Your

Page 28

1   Honor, before I get started, I would just like to thank the

2   Court, for taking the time to hear these significant matters

3   today.

4           We're at a very important point in the cases and

5   on the precipice, we believe, subject to this Court's

6   approval, going a long-awaited effective date and for the

7   plan -- Chapter 11 plan in these cases.  I know the Court

8   knows very well what it took to get to this point, and we

9   thought it was very important to do everything possible to

10  preside -- to have Your Honor preside over today's hearing.

11          We would also like to thank all of the parties in

12  -- that it took to get here.  It took a lot of compromise

13  and, you know, literally years' worth of work to get to this

14  point and, you know, there are -- some people say that it

15  takes a village, for an extraordinary, may have taken a

16  couple villages.  It was very, very difficult to get here.

17          We did file and amended order as well as -- at ECF

18  10622 this morning, that was bringing together final term of

19  a settlement between Cyrus and PBGC relating to some matters

20  that allow, we think, and expedite the effective date to

21  occur.

22          Your Honor, first on the agenda is the joint

23  motion of the Debtors and the Creditors Committee for

24  approval of certain settlements that resolve years of

25  litigation and open disputes.  I will let our colleagues at

Page 29

1    Akin present the details and answer any questions, but I

2    would like to just add a few points that merit approval of

3    the settlement.

4         First of all, Your Honor, the settlement's

5    unopposed, which I think in these cases, speaks very loudly.

6    Settlement sets the Debtors on a path for the plan effective

7    date.  It will get over $180 million to the Debtors which

8    will enable the Debtors to, among other things, satisfy

9    allowed and reserved for disputed secured administrative

10   priority claims on the effective date, reserve funds for

11   liquidating trust wind down activities, and with the consent

12   of the PBGC, still make an initial $10 million distribution

13   on the PBGC's priority claim, a $10 million payment to the

14   alleged 507 super priority claimant, Cyrus.

15        We expect that the effective date in these cases

16   can occur within roughly 30 days of receipt of the

17   settlement proceeds.  We'll do everything possible, subject

18   to this Court's approval, to make that occur even faster,

19   but think it's about roughly 30 days to get the settlement

20   proceeds in and then really it's just mechanical, just

21   pushing out the funds after that.

22        I'd also just like to mention that, you know, the

23   Court-approved mediators were instrumental in getting to

24   this point.  Judges Chapman, former Judge Peck, Mr. Melnick,

25   were available, engaged, frankly above and beyond what, you

Page 30

1    know, we have seen even in my practice for involvement in

2    trying to get the parties in a multi-faceted, complex case

3    to come together.

4            And as a matter of process, for this first motion,

5    the Debtors would like to introduce as evidence the two

6    declarations what were filed in support of the motion.

7    Those are the declaration of Patrick Bartels filed at ECF

8    No. 10567 and the declaration of Brian Griffith filed at ECF

9    No. 10568.

10           THE COURT:  Okay.  I've reviewed each of those

11   declarations.  Is Mr. Bartels on the line --

12           MR. SCHROCK:  Present.

13           THE COURT:  Okay.

14           MR. BARTELS:  Here, Your Honor.

15           THE COURT:  There's a lot of pictures on the

16   screen.  I'm just trying to locate you.  If you could say

17   your name again or --

18           MR. BARTELS:  I'm here, Patrick Bartels.  I have

19   the background of the skyline of Charlotte, North Carolina -

20   -

21           THE COURT:  Oh, I see --

22           MR. BARTELS:  -- behind me.

23           THE COURT:  Okay.  Would you raise your right

24   hand, please?  Do you swear or affirm to tell the truth, the

25   whole truth, and nothing but the truth, so help you God?

Page 31

1           MR. BARTELS:  Yes.

2           THE COURT:  Okay.

3           MR. BARTELS:  I do.

4           THE COURT:  So, Mr. Bartels, you submitted a

5    declaration dated August 9th, 2022 in support of the joint

6    motion of the Debtors and the Committee for approval of the

7    settlement and related relief, knowing that it would be your

8    direct testimony for this motion.  Sitting here today, on

9    the 31st of August, is there anything in the declaration

10   that you'd wish to change?

11          MR. BARTELS:  No, sir.

12          THE COURT:  Okay.  As Mr. Schrock stated, there

13   were no objections to this motion; although, there were a

14   couple of reservations of rights.  So, I don't believe

15   anyone would be cross examining you and based on my review

16   of the declaration, I don't have any questions of you, so --

17          MR. BARTELS:  Thank you, Your Honor.

18          THE COURT:  You could consider your testimony

19   complete.  And then --

20          MR. BARTELS:  Thank you.

21          THE COURT:  -- as Mr. Schrock said, I also have a

22   declaration of Brian Griffith.  I see him there as well on

23   the screen.  Would you raise your right hand, please, Mr.

24   Griffith?  Do you swear or affirm to tell the truth, the

25   whole truth, and nothing but the truth, so help you God?

Page 32

1            MR. GRIFFITH:  I do.

2            THE COURT:  Okay.  And like Mr. Bartels, Mr.

3     Griffith you submitted a declaration in support of the first

4     motion on the agenda, the settlement motion, dated August

5     9th, 2022, knowing that it would -- it was intended to be

6     your direct testimony in connection with the motion.  And

7     sitting here today, on August 31, is there anything in it

8     that you wish to change?

9            MR. GRIFFITH:  No, Your Honor.

10            THE COURT:  Okay.  I may have questions for you

11     later in the hearing that are unrelated to the motion, if

12     the Debtors' counsel can't answer them, about the Debtors'

13     cash position and reserves and the like, but I don't have

14     any questions on the declaration, and again, the motion is

15     unopposed, so I don't believe anyone has any desire or

16     standing to cross examine you.  So, your testimony is

17     complete.

18            MR. GRIFFITH:  Thank you, Your Honor.

19            THE COURT:  Okay, thank you.

20            MR. SCHROCK:  Thanks, Your Honor.  I'd also like

21     to note for the record that we filed a revised form of order

22     yesterday as well and the one today that I referenced that

23     incorporates the settlement that I referred to previously

24     with Cyrus and the PBGC and also resolves some concerns

25     articulated by various administrative creditors, the

Page 33

1    reservation of rights about potential delays in the

2    occurrence of the effective date.

3                As a result of that settlement, which I can

4    outline and which is quite simple, there are no impediments

5    to the plan effective date occurring if the Court approves

6    the settlement today.  Settlement with PBGC and Cyrus, the

7    remaining holder of 507(b) claims other than Debtors after

8    implementation of the settlement gets, you know, to each,

9    $10 million from the liquidating trust on the plan effective

10   date.

11               The appeal pending in the Second Circuit will

12   continue.  Following the decision, PBGC and Cyrus will

13   engage in good faith negotiations to determine whether

14   settlement can be reached to avoid any further litigation

15   and in the interim the liquidating trust will not make

16   distributions beyond the initial $10 million to each party -

17   - to either party.  In addition, the Debtors agree to

18   release any claims it may have against Cyrus other than

19   those asserted in connection with the 507(b) and 506(c)

20   litigations.

21               Secured, administrative, priority, and believe

22   general unsecured claims are benefitted and not hurt by the

23   settlement.  As I said and Mr. Dizengoff will go into the

24   additional details regarding the settlement for the joint

25   asserted causes of action, the other party with standing and

Page 34

1    the other co-movant on this motion.  The global settlement

2    also resolves longstanding disputes between the Debtors and

3    Transform, bringing cash back to the Debtors' estate and

4    avoiding, we believe, further, you know, costly years of

5    litigation.

6           And the second item on the agenda is related to

7    one of those disputes.  We'll go into that at a later point,

8    but at this point, Judge, unless you have any questions for

9    me, I'll cede the podium over to Mr. Dizengoff.

10          THE COURT:  Well, I don't know if Mr. Dizengoff

11   was planning to address this or not, but I want to focus on

12   the first matter that you just discussed, which is the

13   proposed revision to the order on this motion that provides

14   for an interim distribution to the PBGC, on account of its

15   priority claim, its 507 claim, and separately, as part of

16   the settlement with Cyrus, provides for a distribution to

17   Cyrus of $10 million.

18          I look at those two matters somewhat differently.

19   As far as the PBGC is concerned, my recollection -- and this

20   is also stated in the underlying motion -- is that PBGC as

21   part of the PBG settlement, earlier in the case, before the

22   confirmation --

23          MR. SCHROCK:  Right.

24          THE COURT:  -- has a priority claim to the first

25   $97.5 million of proceeds recovered by the liquidating trust

Page 35

1    which is, in fact, the interests of the liquidating trust

2    have been represented pre-effective date by the joint

3    committee of the representatives of the Creditors Committee

4    and the Debtors, after payment of all admin expense claims,

5    priority non-tax claims, priority tax claims, other 507(b)

6    priority claims, and secured claims.

7           So PBGC's interest is behind that group and I want

8    to explore in some more depth, given the payment proposed in

9    the order to PBGC, whether -- not whether -- what is the

10   basis for the Debtors' belief that those more senior

11   creditors would not be left high and dry or bereft of their

12   entitlement to payment under the plan, based on that $10

13   million payment.  And to that extent, the settlement

14   proposed with Cyrus raises the same issue, so there's, in

15   aggregate what's being proposed in the amended order is a

16   $20 million effective date payment.

17          Currently, the Cyrus claim to that is disallowed,

18   and so appealed to the Second Circuit, and I understand the

19   logic behind the proposed settlement, but I'm just focusing

20   on the -- right now, the cash position, both before and

21   after that payment, in light of reasonable projections on

22   payment of senior claims.

23          And the Debtors have been periodically updating

24   the Court and the parties on the status of their liquidation

25   of secured, administrative, and priority claims, so I have

Page 36

1    some background on that, but the last update was several

2    months ago, and I just want to have you walk through for me

3    why those payments don't jeopardize the effective date

4    occurring under the plan, which contemplates payment of

5    those senior claims for the plan to go effective, because

6    clearly one of the underlying premises of the motion is to

7    enable the effective date to go -- to occur, and the payment

8    of those senior claims.

9            So, I don't know who wants to address that, but I

10   would like to hear that at this point.

11           MR. SCHROCK:  Your Honor, just a couple of quick

12   comments.  I think that we can have Brian Griffiths be able

13   to address some of the Court's concerns around that, but in

14   sum and substance, this -- the $20 million of payment are

15   designed to be made, you know, after effectively, you know,

16   consistent with the PBGC settlement, you know, immediately

17   upon the effective date but after payment of the secured

18   priority and administrative claims are made and there's --

19   if there's a disputed claim, we're going to reserve for

20   those more senior claims, but we  can walk you through and

21   we'll just need to take a couple minutes here in the

22   background just to go over Mr. Griffith, the basis for the

23   company's -- for the Debtors' cash position and why the

24   Debtors have sufficient cash even after payment of the

25   senior claims  to make the payments under the terms of the

Page 37

1    settlement.

2              THE COURT:  Okay.  Let me -- I mean, I got this

3    proposed order this morning, so I just want to make sure --

4              MR. SCHROCK:  Yeah.

5              THE COURT:  -- I understand the point that you

6    just made that --

7              MR. SCHROCK:  It's going to be --

8              THE COURT:  -- the $10 million payments are to be

9    made --

10             MR. SCHROCK:  On the effective date.

11             THE COURT:  Yes.  Paragraph 14(b) does say on the

12   effective date.  You're right.

13             MR. SCHROCK:  Right.

14             THE COURT:  And there's an additional $10 million

15   reserve on the effective date --

16             MR. SCHROCK:  Correct.

17             THE COURT:  -- for Cyrus and PBGC, pending outcome

18   of the appeal or settlement of it.  But, so you correct me

19   on that point, but I'm still -- I still want to make -- so

20   that assumes the effective date will have occurred, which

21   means that --

22             MR. SCHROCK:  Correct.

23             THE COURT:  -- administrative expenses and secured

24   claims will either be paid on the effective date, or if

25   they're objected to, appropriately reserved for, so I guess

Page 38

1    that's the focus for what Mr. Griffith should be walking me

2    through.

3              MR. SCHROCK:  Yes, Your Honor, and we'll be sure

4    to cover that, because we did come up with that number in

5    the settlement based upon what the Debtors' projections are

6    for, you know, with sufficient cushion for excess cash that

7    we could safely say that after payment of all those expenses

8    to go effective and reserving for anything that's disputed,

9    that we would have, you know, that $30 million we would make

10   those payments and that that would clear the way for the

11   effective date.

12             THE COURT:  Okay.  So --

13             MR. FAIL:  Your Honor, if --

14             THE COURT:  Go ahead.

15             MR. FAIL:  Good morning.  It's Garrett Fail.  I

16   think Mr. Griffith can confirm my statements that -- the

17   following statements that the $180 million in settlement

18   proceeds that are coming in, together with cash on hand at

19   the proposed effective date, will be sufficient to both

20   satisfy allowed administrative expense claims including

21   those that are -- have received partial payment pursuant to

22   the administrative consent program and so there's roughly

23   $27.5 million owed on account of that constituents that have

24   received part, plus those that have not received, you know,

25   the opt outs.  That's another $6.4 million of allowed

Page 39

1     claims, so clearly, 180 minus 33, there's sufficient to pay

2     the allowed administrative.

3              There's also sufficient cash to satisfy a reserve

4     for 100 percent of the asserted amount of any disputed

5     administrative claims.  There will be sufficient amount to

6     reserve for the asserted amount of the secured claim that's

7     outstanding.  There will be --

8              THE COURT:  And that's the --

9              MR. FAIL:  -- sufficient --

10             THE COURT:  That's the Carl Ireland claim?

11             MR. FAIL:  The relator, Your Honor, at $18.2

12    million.

13             THE COURT:  Right.  Okay.

14             MR. FAIL:  There's sufficient amounts to pay the

15    amounts owed under the retiree settlement of 1.7.  There's

16    sufficient amounts to pay priority severance that's ready to

17    be paid on the effective date of 3.6.  There's available

18    amounts to pay taxes that are agreed upon of another 14.

19    And there's a sufficient amount in addition to all of that

20    to reserve for disputed priority and disputed tax

21    obligations.

22             And then there's further -- and very critically

23    and importantly -- a sufficient amount to reserve pursuant

24    to the plan and the liquidating trust agreement for the

25    future winddown activities of the liquidating trust.  And

Page 40

1  then, Your Honor, after that, there is $10 million available

2  to go to PBGC, $10 million to go to Cyrus, $10 million to

3  put aside so that it is not used for winddown activities,

4  and then additional amounts expected to be available, a

5  small amount -- you know, hopefully, it grows -- but

6  additional cash after that and remaining assets to be

7  monetized after that.

8         But Your Honor, the intent of this settlement was

9  to allow the plan to go effective, which in our mind, means

10  satisfying administrative claims, secured priority, and

11  reserving, as the plan requires, in full until it's

12  resolved, the remaining disputed claims, and after that,

13  Cyrus and PBGC will split the amount after reserves for

14  amounts required for the winddown activities and the $10

15  million -- the three $10 million chunks contemplate that.

16         And I think -- I would hope that in summary, Mr.

17  Griffith can confirm that information for you.

18         THE COURT:  Before I ask Mr. Griffith that

19  question, in covering the administrative expenses, both

20  those that have been allowed and a full reserve for the

21  others that are still open, that haven't been disallowed,

22  have you counted the amounts that are currently being sought

23  in the final fee applications?

24         MR. FAIL:  Thank you, Your Honor.  Yes.  Included

25  in my calculation of what would remain to be distributed by

Page 41

1    the liquidating trust and the cash on hand balances, include

2    payments in full of amounts accrued and incurred prior to

3    that date.

4              So there are sufficient funds to pay the

5    administrative claims that have been filed plus other

6    administrative expenses incurred throughout the cases in the

7    ordinary course, including the professional fees that are

8    being sought today and then still have money to be

9    distributed to the PBGC and now Cyrus, and that was part of

10   the success of the settlement, Your Honor, and in

11   particular, getting the quantum of funds that we did in

12   order to satisfy all expenses and provide a material return

13   to the beneficiaries of the liquidating trust.

14             THE COURT:  Okay.  So, Mr. Griffith, you heard Mr.

15   Fail's summary being permitted with the Debtors' current

16   cash and claim position.  Was it accurate?

17             MR. GRIFFITH:  It was accurate, Your Honor, yes.

18             THE COURT:  Okay.  Does anyone want to question

19   either -- question Mr. Griffith or argue with Mr. Fail about

20   that summary?

21             MS. MORABITO:  Your Honor, Erika Morabito of Quinn

22   Emanuel on behalf of the admin expense claim rep.  Can you

23   hear me --

24             THE COURT:  Yes, yes.

25             MS. MORABITO:  -- see me okay?

1              THE COURT:  Good morning, yes.

2              MS. MORABITO:  I don't want to argue with Mr. Fail

3    or cross examine Mr. Griffith, but I do -- and I actually

4    did not intend on making our statements until after Akin

5    finished with their description and summary of the

6    settlement, but you raised the very points  that we were

7    inundated with questions from our admins and so there are a

8    couple other things, I think, that are important in the plan

9    that got the admins comfortable with the new language in the

10   proposed order that I think adds additional protection to

11   those admin claimants.

12             So because I do have several administrative

13   creditors listening in today, we reached out as many as we

14   could and walked them through that and we  did indicate that

15   we would walk through it orally with the Court to avoid a

16   bunch of reservations of rights being filed, with Your

17   Honor, indulgence, it should take less than three minutes,

18   if I can just point out a couple other provisions in the

19   plan that I think are important as it relates to the

20   agreements that were made as part of the original plan and

21   confirmation order so that they understand with certainty

22   that this settlement agreement is not seeking to modify

23   those previous rights they had agreed to under the plan.

24             THE COURT:  Right.  No, that would be helpful.

25   Thank you.

Page 43

```
 1              MS. MORABITO:  Okay.  So first, Your Honor, with

 2    respect to the opt-ins, non-opt-outs, and just by way of

 3    reminder these were those claimants who agreed by supporting

 4    the plan, they would have no more than 75 or 80 percent of

 5    the allowed claim amount being paid.

 6              THE COURT:  Right.

 7              MS. MORABITO:  And there's a provision --

 8              THE COURT:  The non-opt-outs are at 80 and the

 9    opt-ins are at 75.

10              MS. MORABITO:  Correct.

11              THE COURT:  Right.

12              MS. MORABITO:  That's exactly right.  And there's

13    a provision in the plan, in the plan confirmation order,

14    which is 52(a)(4), and the plan provides that additional

15    distributions shall be made to holders of settled admin

16    expense claims -- which is a defined term -- at all times

17    when cash on hand in $10 million.

18              And this is important, because what that means is

19    when these settlement proceeds come in, even if the

20    effective date has not yet occurred, the Debtors are

21    obligated and shall make distributions to the remaining -- I

22    heard Mr. Fail say -- was $27.5 million of those opt-in,

23    non-opt-outs.  So, there's nothing in the settlement

24    agreement that's going to modify what was a heavily

25    negotiated condition for those people to support the plan.
```

Page 44

1    That's number one.

2              Number two, the questions came from the opt-outs,

3    which was, what does this mean for the opt-outs, if in fact

4    now we were always required to be paid on the effective

5    date, if there's going to be a distribution being made, to

6    your point, Your Honor, to PBGC and Cyrus.  Are we still

7    going to get paid on the effective date in advance of those

8    payments going out?

9              The answer is, obviously the opt-outs would like

10   to now become opt-ins so they can be paid pre-effective

11   date, but that's not happening because that would be a

12   material modification of the plan.

13             THE COURT:  There was a time when --

14             MS. MORABITO:  But it is --

15             THE COURT:  -- you could do that, which has

16   passed.

17             MS. MORABITO:  Correct.

18             THE COURT:  Right.

19             MS. MORABITO:  And I think Mr. Fail stated it

20   correctly which is, it is true that the opt-outs, which I

21   believe are $6.4 million is what Mr. Fail stated a few

22   minutes ago, those claims will, in fact, be paid on the

23   effective date and they will be paid prior to the

24   distributions being made to Cyrus and PBGC.  And with that

25   clarification, I certainly reviewed the order that was

Page 45

1    submitted and had changes, and I think Your Honor raised a

2    good point with respect to 14(c), which is the distribution

3    language, and maybe we could add in Paragraph C where it

4    states that for the sole benefit of Cyrus and/or the PBGC,

5    pending outcome or settlement of Cyrus' Section 507(b)

6    appeal, if we insert in there, pursuant to this order and

7    the plan and confirmation order.

8            I think by adding that it's also going to be

9    pursuant to the order and the plan and confirmation order,

10   there's no question then that the payments to PBGC and Cyrus

11   -- although they're current on the effective date -- they

12   would only occur after those other admins that are -- admins

13   and secured priority claims are also supposed to be paid on

14   the effective date.

15           I think that was always the intent, but I think

16   Your Honor, you know, pointed us all out to something that

17   maybe we can tighten up a little bit.

18           THE COURT:  I have no problem with that.

19           MS. MORABITO:  Okay.  With that, Your Honor, I

20   think having both of those language -- that language

21   included in the plan, as well as language in the settlement

22   agreement in Section 3(a) as well as the proposed settlement

23   order Paragraph 3, which is very clear that distributions

24   must be made in accordance with terms of the plan and the

25   settlement agreement and the confirmation order, I think

Page 46

1    that's boots and suspenders, at least for our constituents,

2    to make sure that those are paid with the settlement

3    proceeds that are  coming in and that they can be paid

4    either pre-effective if they're opt-ins or non-opt-outs, and

5    then obviously with respect to the opt-outs and others, they

6    can be paid pursuant to the plan on that priority scheme set

7    out on the effective date.

8              THE COURT:  Okay.  Thank you.

9              MS. MORABITO:  Thanks, Your Honor.

10             THE COURT:  Okay.

11             MR. FOX:  Your Honor, Edward Fox.  If I may?

12             THE COURT:  Sure.

13             MR. FOX:  Among the amounts that were indicated by

14   Mr. Fail, there's in addition what the proposed order calls

15   the second lien note settlement.  There's a payment there of

16   $4.1 million.  I just want to make sure that that's

17   included, and given the language that was added to the

18   proposed order this morning, I just want to clarify that

19   there's --

20             MR. SCHROCK:  We can so confirm, Your Honor, that

21   Mr. Fox's settlement is accounted for as part of the funds

22   flow for the effective date.

23             THE COURT:  Okay.  And that is part of this

24   settlement, so I'm assuming that that's --

25             MR. SCHROCK:  Yes.

Page 47

```
 1                THE COURT:  -- in there.

 2                MR. SCHROCK:  Yes.

 3                THE COURT:  All right.

 4                MR. LEBLANC:  Your Honor, it's Andrew Leblanc of

 5      Milbank on behalf of Cyrus.

 6                THE COURT:  Yes.

 7                MR. LEBLANC:  Hi, Your Honor.  I'm joined by my

 8      colleagues Eric Reimer and Tom Kreller who are also on the

 9      line.  I don't -- I think Mr. Schrock has faithfully

10      described the terms of the settlement.  I'm happy to answer

11      any questions Your Honor has.  We had -- the questions Your

12      Honor asked about the availability of the $30 million, the

13      10, 10 and 10, was a focus of ours as well when the concept

14      was raised with us to try to resolve our reservation of

15      rights.

16                We're pleased to have come to a resolution of this

17      on the terms that are reflected there.  Critically, you

18      know, I think a couple of points that I would add, Your

19      Honor, that incremental $10 million escrow that Your Honor

20      noted in Section 14, that was critical to our resolution

21      because that money will be available, depending on the

22      outcome of the Second Circuit decision.

23                And in addition, there's other language added to

24      make clear that the priorities, assuming our claim is

25      allowed as an administrative claim, that it would retain its
```

Page 48

```
1    priority over the PBGC's claim, which is a post-effective

2    date claim, we're -- that should be clear.

3              And we've also made some changes that may not be

4    obvious to the Court, but are designed -- the settlement as

5    structured, because the Debtor is retaining its 506(c)

6    arguments with respect to if we have an allowed 507(b)

7    claim, the plan as proposed suggests that we are not the

8    beneficiaries of fiduciary duties, and so we've made some

9    clarifying comments and Section 14 modifies that  to make

10   clear that the litigation trust -- the litigation trustee

11   owed fiduciary duties to Cyrus while it continues to be a

12   potential beneficiary of the trust, while those appeals are

13   pending.  I just wanted to make --

14             THE COURT:  Those duties are in the form of Cyrus

15   for that purpose, being a trust beneficiary.

16             MR. LEBLANC:  Correct.  That's exactly right, Your

17   Honor.  The language of the trust agreement itself suggests

18   that it wouldn't -- the Trustee would not owe us duties as

19   long as a claim was retained against us, and we didn't want

20   that to be misconstrued, and so we've clarified that.  It

21   doesn't change anything.  As long as we're a beneficiary,

22   we're owed duties and we have the reporting rights that are

23   contained in the agreement.

24             THE COURT:  Okay.

25             MR. LEBLANC:  So, happy to answer any questions
```

Page 49

1   Your Honor has, but assuming this is approved, Your Honor,

2   it would resolve our reservation of rights that we filed at

3   Docket 10596.

4           THE COURT:  Okay.

5           MR. LEBLANC:  Thank you.

6           THE COURT:  All right.  So as far as -- I mean,

7   this was the relief that the relator requested, but the cash

8   will be set aside in the $18 million and change amount that

9   was in Mr. Ireland's reservation and that will be the amount

10  under the order, I'm assuming, the prior order, dealing with

11  his adequate protection rights.

12          MR. SCHROCK:  It's the amount of the claim, Your

13  Honor --

14          THE COURT:  Right.

15          MR. SCHROCK:  So pursuant to the plan --

16          THE COURT:  Right, but he's -- that's his adequate

17  protection is that there's --

18          MR. SCHROCK:  Agree, Your Honor.  Yes, Your Honor.

19          THE COURT:  And I'm assuming --

20          MR. HALPERIN:  Your Honor --

21          THE COURT:  -- fairly promptly distributed.

22  There's no reason that I'm aware of to keep it hanging out

23  there.

24          MR. SCHROCK:  The claim hasn't been allowed yet,

25  Your Honor, but you know, as soon as it is allowed, the

Page 50

1    distributions would be made.

2          THE COURT:  Right.  Okay.

3          MR. HALPERIN:  Your Honor, it's Alan Halperin

4    (indiscernible).

5          THE COURT:  Yes.

6          MR. HALPERIN:  Alan Halperin on behalf of relator

7    Carl Ireland.  I would just start by saying it really is

8    just a reservation of rights.  We're delighted at the

9    settlement.  It relieves a lot of anxiety and a lot of

10   concern about the liquidity and ability to get to an end

11   game.  I think everything I've heard works.  The only thing

12   I just want to be clear about -- need to be precise and

13   clear -- the reserves that are being made where reserve was

14   use for Relator Carl Ireland.  A good look at the Cyrus

15   language, think it was, we can see, those funds are

16   restricted, correct, meaning they won't sit there until and

17   unless claim is allowed or paid.

18         THE COURT:  The 18 --

19         MR. HALPERIN:  -- otherwise.

20         THE COURT:  The $18 million and change that is

21   reserved on the Ireland claim.

22         MR. SCHROCK:  In the disputed claims reserve.

23   Yes, Your Honor.

24         THE COURT:  Okay.

25         MR. HALPERIN:  Yes.

Page 51

1                THE COURT:  All right.  And -- okay.  So, I had

2        said earlier that some of the issues related to the two

3        additions to the order, one involving PBGC and one involving

4        Cyrus are related and we've just been going through those.

5        The other issue I wanted to raise was this.  Unlike the PBGC

6        resolution, which doesn't alter the estate's rights vis-à-

7        vis PBGC's claim, because that claim was settled, the Cyrus

8        resolution provides for an actual payment on Cyrus' claim

9        under 507(b), which, again, currently is disallowed.

10               So, my question there is really one going to

11       notice.  There has been in place in these cases for a long

12       time procedures regarding settlements and the amount of

13       notice that needs to be provided.  Not having seen this

14       agreement until this morning, I've not gone through them all

15       and there may be, again, a modification of that in the plan,

16       but I -- there was really no notice of this settlement until

17       -- well, there really -- it was filed this morning.  So,

18       what is the basis for proceeding with it today as opposed

19       to, under the provisions for notice of settlements that, I

20       think are in effect in the case?

21               MR. FAIL:  Your Honor, Garret Fail from Weil for

22       the Debtors.  Any notice provisions can be shortened by Your

23       Honor.  We believe that here a resolution today is in the

24       best interest is in the best interests of all parties and

25       that the likely, you know, next beneficiary of the funds

1    other than Cyrus is PBGC up to $97.5 million --

2              THE COURT:  Right.

3              MR. FAIL:  -- and that distributions, if any, to

4    the general unsecureds are, you know, not likely at this

5    moment and if, you know, at some later date -- so the fact

6    that this settlement benefits every other creditor waiting

7    to be paid and has the support of the Creditors Committee,

8    the administrative claims rep, and parties that have been

9    actively involved in the cases, we thought justifies

10   shortening notice and facilitating the effective date which

11   we know that many parties have been waiting for.

12             THE COURT:  Well, what basket in the settlement

13   procedures order does this fall under?  I mean, it's a $10

14   million settlement, so --

15             MR. FAIL:  I don't know that we're relying, Your

16   Honor, on any of the prior orders as much as we are, you

17   know -- I don't recall if we -- if notice is possible with

18   just at the $10 million threshold with the parties that are

19   consenting, which include the prepetition lenders, the

20   administrative claims representative, the UCC.

21             THE COURT:  Well --

22             MR. FAIL:  Right, so all of the parties that have

23   been consultation parties have supported this and have been

24   involved along the way.

25             THE COURT:  Well, let me ask this question.  When

Page 53

1    were you contemplating making these payments?  I mean --

2              MR. FAIL:  Upon the effective date.

3              THE COURT:  No, no, but when --

4              MR. FAIL:  -- the plan, Your Honor.

5              THE COURT:  -- do you think that's going to

6    happen?  I mean, it would seem to me --

7              MR. SCHROCK:  Within 30 to 60 days, Your Honor.

8              THE COURT:  All right.  So, I don't see why you

9    couldn't do a notice of -- you know, either follow the

10   procedure in the most current order or plan provision, or do

11   a notice of presentment --

12             MR. FAIL:  -- Judge.

13             THE COURT:  I think it's highly unlikely that

14   anyone would object or that such an objection would be

15   granted.  I just think it's safer to do it that way,

16   including for Cyrus, because, you know, there's basically --

17   I appreciate that the key constituents that you just listed

18   have been part of the negotiation of this, you know, behind

19   the scenes for some time, but as far as, you know, notice

20   requirements, I just -- I'm uncomfortable that that's

21   enough.

22             MR. FAIL:  Yes, Your Honor --

23             MR. LEBLANC:  Your Honor, this is Andrew -- sorry.

24   Go ahead, Mr. Fail.

25             MR. FAIL:  I think we're probably going to say the

Page 54

1    same thing, Mr. Leblanc, that it's a chicken and egg.  Cyrus

2    was unwilling to withdraw its reservation of rights and

3    allow the order to -- the settlement to be approved absent

4    this.  It's a key component and therefore integral to the

5    approval of the settlement and then to allow the, you know,

6    mechanics to start going into effect to prevent anybody from

7    trying to stop it.

8              THE COURT:  Well, so let me ask.  I mean, if the

9    effective date wouldn't be occurring for 30 to 60 days, why

10   couldn't I address the settlement and say that it's

11   approved, conditioned on the approval of the -- Cyrus

12   signing them.  I don't -- I mean, unless there's some

13   immediate step you have to take in the next 10 to 20 days,

14   that --

15             MR. LEBLANC:  Your --

16             THE COURT:  -- wouldn't otherwise be taking, I

17   don't see why I couldn't do that.

18             MR. LEBLANC:  Your Honor, again Andrew Leblanc

19   with Milbank on behalf of Cyrus.  I think there are two

20   issues.  One is exactly what Mr. Fail said, which is we are

21   relying on this to withdraw our reservation or rights.  Your

22   Honor, obviously, it's not an objection, and what -- the

23   reservation of rights makes clear that we would be -- we're

24   not opposed to the settlement.  We're supportive of the

25   settlement, but we are opposed to what may happen with the

Page 55

1    proceeds --

2              THE COURT:  Okay.

3              MR. LEBLANC:  -- to the extent that they're

4    distributed in a way that -- and so we, in the absence of

5    the settlement that we reached that's reflected in this, we

6    would be taking other steps including seeking a stay of

7    distributions and things along those lines.  That's one

8    issue.

9              The second issue is, the Second Circuit -- we

10   argued this on September 24th of last year.  The Second

11   Circuit could rule at any time and I think the reason that

12   people reached this agreement is because that issue is sub

13   judice and --

14             THE COURT:  Well, I think you can --

15             MR. LEBLANC:  -- I don't want that status quo to

16   change.

17             THE COURT:  -- pretty well tell them today that

18   you have a resolution of it and they -- and you request them

19   to hold it off.  And frankly, it's a settlement that's, the

20   Debtors have agreed to today, so -- and they're --

21             MR. LEBLANC:  The only issue is --

22             THE COURT:  Let me finish.  And there are reasons

23   why they're agreeing to it today, which is that this

24   reservation has not turned into an objection, and frankly,

25   that you wouldn't be seeking a stay.  So again, I just -- I

Page 56

1    don't understand how literally half an hour's notice is

2    enough notice of a $10 million settlement.  The settlement

3    may well make sense.  In fact, I think it does make sense.

4    But, you know, there is such a thing as notice and due

5    process, so that's what I'm going to do on this, which is I

6    will consider the settlement on its merits.

7              I appreciate that the Cyrus settlement is an

8    integral part to the distribution aspect under which I'm

9    considering the settlement and the settlement won't,

10   therefore, the -- an order approving the settlement, would

11   not be effective until the Cyrus settlement is effective.

12             MR. LEBLANC:  Your Honor, again, Andrew Leblanc.

13   Two issues, just so the Court is aware.  It was not --

14   because our appeal remained outstanding and we are hoping to

15   get a decision, we weren't -- we informed the Second Circuit

16   of the existence of a settlement and I know ESL had informed

17   the Second Circuit through a 28(j) letter that they had

18   resolved their appeal, but we weren't otherwise intending to

19   inform the Second Circuit because we don't want to disrupt

20   their decision making.

21             We can obviously do that if we have to, to make

22   them aware that we have a resolution, that we wouldn't want

23   them to issue a decision for some period of time, but that

24   once the settlement that we've struck is approved, we do

25   need -- we do want them to issue a decision.  We're trying

Page 57

1    to avoid that outcome.

2              THE COURT:  Okay.

3              MR. LEBLANC:  The second issue, Your Honor --

4              THE COURT:  I think people become judges on the

5    Second Circuit, so they understand those issues.

6              MR. LEBLANC:  Understood, Your Honor.  The second

7    issue, and again, this is not directly my issue nor is the

8    notice issue directly our issue, but I -- the one question I

9    have is if the settlement -- I believe that the payment by

10   the insurers is triggered off of when the settlement is

11   effective.  And that's the one thing that I'm sure no one

12   wants to delay that issue.

13             MR. SCHROCK:  I have a potential solution for Mr.

14   Leblanc, if I could just --

15             THE COURT:  Okay.

16             MR. SCHROCK:  -- jump in here, Your Honor.  So, I

17   think what we could do is have the settlement order entered.

18   You know, we have the settlement with Cyrus.  The Debtors

19   would stipulate that we're not going to make plan

20   distributions that would be made on the effective date prior

21   to, you know, the lapsing of the time --

22             THE COURT:  Right.

23             MR. SCHROCK:  -- for the Court's order --

24             THE COURT:  That actually makes --

25             MR. SCHROCK:  And that way --

Page 58

1                    THE COURT:  That makes sense.

2                    MR. SCHROCK:  -- they're protected.

3                    THE COURT:  That's really -- that's what Cyrus'

4       reservations is about, is the distributions of the --

5                    MR. SCHROCK:  Right.  And we -- that way, Mr.

6       Leblanc wouldn't feel the need to go seek a stay.  We'd

7       certainly stipulate that, you know, we're not going to be

8       making those effective date distributions prior to the 21

9       days.  And if for some reason there was a problem with Court

10      approval of the settlement, you know, we would certainly

11      even stipulate, we're not going to make those distributions

12      before the Court could have a hearing on, you know,

13      approval.

14                   THE COURT:  On the objection.

15                   MR. SCHROCK:  Correct.

16                   THE COURT:  It may not -- it may be less than 21

17      days.  Again, I've not gone through and tracked --

18                   MR. SCHROCK:  Right.

19                   THE COURT:  -- the orders that are in effect

20      governing settlements.  It may be that this one doesn't

21      require -- you know, it's a whole menu depending on the size

22      of the settlement and who signed off on it and the like.

23      So, it may be less than the 21 days.

24                   MR. FAIL:  Ten business days, Judge, I think under

25      ECF 3014.

Page 59

1            THE COURT:  Okay.

2            MR. SCHROCK:  We could certainly add that

3    stipulation and, you know, for Mr. Leblanc and his client

4    and I think that way, we get the funds in right away, allow

5    this order to go effective, and certainly, you know, cover

6    that all.

7            THE COURT:  Okay.  And again, as far as the notice

8    is concerned, it would be done by notice of presentment.  I

9    actually don't think there will be objections.  I agree with

10   what people have said to me and I understand the basis for

11   the settlement.  I don't have reservations about it.  I'm

12   really saying this for due process purposes and part of due

13   process is someone may have a light bulb go off and say, you

14   know --

15           MR. SCHROCK:  Right.

16           THE COURT:  -- everyone on the screen who did the

17   negotiations missed the following point, but I certainly

18   don't see it and of course, I spent a lot of time on the

19   506(c), 507(b) issues, as did the District Court, and I

20   think certainly as far as I was concerned, and I -- having

21   read the District Court's opinion, I think the district

22   judge would probably think the same thing, to resolve the

23   issue once and for all, given the amount of the claims, even

24   though the merits, we both decided were in favor of the

25   Debtors, is warranted by a settlement like this.

Page 60

1            So, I'm really doing it so that there wouldn't be

2    any question of it not standing up if there weren't

3    sufficient notice of it.  So, I think Mr. Schrock's proposal

4    should be incorporated in the order.  So --

5            MR. SCHROCK:  We're happy to do so.

6            THE COURT:  So, I wanted to address those two

7    points first since they were brand new this morning;

8    although, the first one that we addressed had been looming

9    over the settlement because of the reservations of rights

10   for some time now, i.e., the confidence one would have that

11   it does, in fact, enable an effective date to occur.

12           So having said that, I'm happy to hear Mr.

13   Dizengoff.

14           MR. SCHROCK:  Cede the podium.

15           MR. DIZENGOFF:  Okay, thank you, Your Honor.  Good

16   morning.  Ira Dizengoff, Akin, Gump, Strauss, Hauer, and

17   Feld for the record.  On behalf of both the litigation

18   designees and the Official Creditors Committee.

19           Your Honor, we extent -- gave you an extensive

20   motion in connection with approval of the settlement, so I

21   don't want to belabor that and go over it and repeat what is

22   abundantly clear from the paper record.  And in light of Mr.

23   Schrock's brief comments about the settlement and the

24   merits, I don't want to repeat that, either.  And the

25   settlement itself is supplemented by what he said today with

Page 61

1    the Cyrus and the PBGC settlements as well.

2            The settlements themselves underlying the

3    settlement motion, as you know, Your Honor, bring an

4    immediate influx of about $180 million of cash into these

5    estates.  That is a monumental outcome here and very

6    important to get to the effective date, and it will provide

7    as Mr. Griffith said in his testimony and as clarified by

8    you in the follow-up questions, enough funds to pay

9    administrative creditors, secured claimants, and take this

10   plan to be effective and will provide meaningful recovery as

11   well to the PBGC on account of their priority unsecured

12   claim.

13           So that, Your Honor, is really a herculean outcome

14   on these estates which started in a very uncertain time and

15   a very uncertain outcome in what people have referred to as

16   the retail apocalypse.  So, Your Honor, the results here are

17   the culmination of literally years of work by numerous

18   parties in both the main Chapter 11 cases and the adversary

19   proceeding.

20           And I would say this, from my own personal

21   experience and obviously you as well and Mr. Schrock and the

22   Weil team and the Akin team as well, there were lots of ups

23   and downs during the course of this case and it was not

24   without dispute.  But through the good offices of our

25   mediators -- Judge Chapman, Judge Peck, and Mr. Melnick --

Page 62

1   we were able to reach consensus on very complicated issues

2   and bring enough value to these estates to get to the

3   effective date.

4           And it's only through people's hard work and

5   constructive dialog in connection that we can actually get

6   there.  So, I did want to pause for one second and say it

7   was actually a pleasure working with the Weil Gotshal team.

8   Mr. Schrock and Mr. Fail did a fantastic job keeping the

9   Creditors Committee informed, keeping -- even when we had a

10  dispute about issues, keeping us very professional and

11  getting to a consensual resolution on things.  And also want

12  to compliment my partner Sara Brauner who did a terrific job

13  and it's obviously -- sometimes not seen to you, Judge,

14  about the hard work that goes in these outcomes and these

15  settlements, so I want to compliment both Mr. Fail and Ms.

16  Brauner on that outcome.  It's really a terrific thing.

17          So, Your Honor, three years ago in October of

18  2019, we got to consensual resolution on the plan of

19  reorganization.  We set the groundwork for getting to

20  monetizing effectively the insider actions and we have now

21  done that, which I think is only 30 or 60 days away.  And

22  that could not have happened without an enormous analysis, a

23  lot of hard work, and deep dive into various causes of

24  action which you know very well and I don't have to dictate

25  and tell you about what the depth and understanding of the

Page 63

1    complicated issues that are here.

2            You have literally read hundreds of pages in

3    connection with the motion to dismiss and it is very, very

4    complicated issues.  As you know, Your Honor, there were

5    millions of documents that were produced in discovery, which

6    we have poured through.  As Your Honor is well aware, there

7    were long and complicated oral arguments in connection with

8    this, and the issues are bespoke.  There are lots of issues

9    of first impression, about statute of limitations, and the

10   like and various defenses to the various causes of action.

11           In a word, Your Honor, this is complex and there's

12   no other way to say other than this just has an uncertain

13   outcome.  The designees, as you saw in the declaration from

14   Mr. Bartels, have their own views about the merits and

15   demerits of litigation. They are well informed,

16   sophisticated professionals and in the end of the day, Your

17   Honor, in light of the circumstances about collectability,

18   they looked at things with an appropriate lens.

19           Litigation, as you know, is expensive and

20   litigation also has uncertain outcomes.  And while they've

21   been -- invested themselves and their time and their energy

22   into analyzing all these things and exercising their

23   fiduciary obligations, they've come to the conclusion,

24   correctly, that it is now time to get to the effective date,

25   for all involved.  And there are lots of claimants that have

Page 64

1    benefitted by this settlement that's before you.

2            So, the settlement agreement, Your Honor,

3    represent an important achievement and a good outcome for

4    the Debtors' estates and its creditors.  One thing I just

5    want to highlight for you, Your Honor, is the settlement

6    itself resolves the insider actions in their entirety.

7    There is a public shareholder action aspect of this and

8    we're hoping that people, there's a little bit of time left

9    to sign onto that, but for the most part, that resolved it.

10   For people who are paying their share of the settlement,

11   public shareholder settlement portion, which is $7.5

12   million, that's all detailed in the motion itself, so I

13   don't want to spell that out to you.

14           Your Honor, just to conclude my remarks and

15   comments on it, I would be remiss if I didn't take a moment

16   to just thank you, Your Honor, for the staggering commitment

17   to this case and your countless other matters.  I don't mean

18   to start a parade of, you know, thank yous, thank yous, for

19   your --

20           THE COURT:  No, please don't.

21           MR. DIZENGOFF:  -- time and service, Your Honor.

22   I won't.  but it's -- you know, it's an understatement to

23   say that you'll be missed, so I thank you for that and wish

24   you success and happiness in the future in the next days.

25   Your Honor, with that, unless you have questions for me,

Page 65

1      Your Honor, and how the Committee and the designees have

2      evaluated this, we would ask that you, subject to the caveat

3      on the Cyrus aspect of it, enter 10622 on the ECF number.

4      That is the most -- that is the order approving the

5      settlement and I'll pause there for any questions that you

6      might have for me.

7            THE COURT:  Okay.  I don't think I have questions

8      on the settlement as they would relate to the factors that I

9      need to consider; merits, delayed cost, competency of the

10     parties negotiating, et cetera.  I do have a couple of just

11     questions that I just would like some clarification on.

12           You mentioned that this would -- this settlement

13     would resolve the claims in one of the two adversary

14     proceedings.  It wouldn't resolve, at least as of now, all

15     of the claims for those who are not settling in the public

16     shareholder proceeding.  And I had a couple of questions

17     related to that.  I received the email that referenced the

18     filing of the updated list of settling parties, the list of

19     participating public shareholder defendants, and I have a

20     question about that.

21           There was a -- one of the additional public

22     shareholder defendants was Goldman Sachs Profit Sharing

23     Master Trust.  There's another public shareholder defendant

24     that I think was not participating earlier, Goldman Sachs

25     and Co., LLC, and I just don't know if that was a glitch and

Page 66

1    maybe counsel at Morgan Lewis could answer this or are they

2    not participating while -- I'm assuming an affiliate,

3    Goldman Sachs Profit Sharing Master Trust is participating?

4             MR. DIZENGOFF:  Your Honor, outside my bailiwick.

5             THE COURT:  Okay.

6             MR. DIZENGOFF:  But we asked the same question

7    yesterday, so I'm going to punt to either the Morgan Lewis

8    team or Kara Casteel who -- from ASK who's dealing with the

9    public shareholder litigation.

10            THE COURT:  Okay.  Why don't I hear from counsel

11   from Morgan Lewis.

12            MS. BOEY:  Good morning, Your Honor. This is

13   Melissa Boey from Morgan Lewis on behalf of the Sears Non-

14   Insider Defendant Group and that includes both Goldman Sachs

15   and the Goldman Sachs Master Trust.  The Master Trust has

16   opted to participate in the settlement according to its

17   terms, but Goldman Sachs and Co. has not.

18            The way these funds are structured is that they

19   are not actually sort of affiliated with one another and

20   don't make -- the same decision makers are not -- sorry.

21   There are different decision makers for each of them and so

22   the participation of one does not, you know, cover the

23   release of the other and the Goldman Sachs defendant as well

24   as the other Goldman Sachs related defendants are not

25   participating in the settlement at this time.

Page 67

```
1              THE COURT:  Okay.  All right.  That clarifies

2    that.  And related to the non-participating parties, I had a

3    question or two about the contribution bar provision in the

4    order.  First, I just want to confirm -- I believe this is

5    the case -- that the motion with the proposed order which

6    hasn't changed, I think, since the motion was filed, as to

7    the contribution bar provisions was served on all of the

8    defendants in the two litigations.  I think we've confirmed

9    that, but there are so many parties, I just want to have

10   someone on the plaintiffs' side -- or the movants' side --

11             MR. SCHROCK:  It's a good question.  Mr. Fail, do

12   you know the service?  Because I don't remember who did the

13   service for us.  But I think the answer is definitely yes,

14   but someone needs to confirm that.

15             MR. FAIL:  Ms. Brauner, do you know who you got

16   the list from?

17             MS. BRAUNER:  Good morning, Your Honor.  Sara

18   Brauner, Akin Gump on behalf of the Committee and the

19   designees.  The service list included all parties to the

20   litigation, meaning public shareholder action, original

21   action, and the main Chapter 11 cases.

22             THE COURT:  Okay.  All right.  I'm asking that

23   because again, there is a contribution bar in the proposed

24   order noticed in the motion and there is some back and forth

25   in the caselaw in the Second Circuit in the lower courts as
```

Page 68

1    to the types of contribution bar that a Court can approve

2    where there isn't notice compared to where there is notice

3    and here, there was -- I believe there was notice.  I mean,

4    that was what we confirmed as well.

5            And on that basis, I believe the contribution bar

6    is appropriate.  If there had not been notice, I think you

7    might've needed a formulation that it be -- that the

8    judgment credit be the greater of the settlement attributed

9    to common damages and the settling defendant's proportion

10   and share.  The way it's listed or written now, it's just

11   the settling defendant's proportion and share.  But given

12   the lack of objection and given the notice, I'm comfortable

13   with the way it's worded in the proposed order and in the

14   motion.

15           The last point I have is that -- is really a

16   procedural one and it, again, is related to the non-settling

17   parties.  The non-settling parties have -- how much longer

18   do they have to join in, if they want to join in?

19           MR. ANKER:  Your Honor, this is Philip Anker from

20   Wilmer, Cutler, Pickering, Hale and Dorr -- for Mr. Lampert

21   and the ESL defendants.  I think as it is written, non-

22   settling public shareholder defendants have until the day

23   before Your Honor's entry of the order.  So, if you were to

24   enter the order today, they technically are out of time.

25   I'm speaking only on behalf of my client.  If Your Honor and

Page 69

1    other parties were agreeable to extend that period, we

2    certainly would have no objection to doing so, but I think

3    as written, I'll enter the order tomorrow, it would be

4    until, you know, 11:59 tonight.

5         THE COURT:  Okay.  That's how I read it, too, but

6    it's really a practical issue for the, I think the

7    plaintiffs' side of the settlement as to whether they want

8    to build a cushion in there that I could put in the order or

9    not, and I'm just throwing that out there for them.

10   Secondly -- because I don't know if they've made a bit push

11   to do this and it's still pending or whether they've already

12   done that and they've gotten all the answers they expect to

13   get.

14        The other point is that I think from the

15   plaintiffs' side, you need to get a date from Judge Lane as

16   to, you know, a pretrial conference as to the remaining

17   people.  As I read it, the only parties to -- who made

18   motions to dismiss have settled.  There are a couple of

19   parties who filed a joinder which I think is of dubious

20   quality in a litigation like this and that might be an issue

21   that people want to discuss with Judge Lane.

22        But he would have the benefit of my work on the

23   motions to dismiss, but I'm not sure what the status of,

24   first, whether the plaintiffs want to build in any more time

25   for people to sign on than just the date of the entry of the

Page 70

1    order and secondly, I think just as a practical matter, this

2    wouldn't go in the order, but you ought to think about

3    scheduling a conference with Judge Lane.

4           And I'm comfortable with it being the way it is,

5    i.e., defendants time to sign on ends when the order is

6    entered.  Or if the plaintiffs are willing to give people an

7    extension and you put that in the order, I'm comfortable

8    with that, too.  So, you don't have to tell me now.  You

9    could think about it.

10          So, my last question on -- set of questions on

11   this, it's not related to the settlement.  It's related to

12   the aspect of the motion that seeks a modification of the

13   plan.  So, before I turn to that, does anyone else have

14   anything to say on the settlement itself?

15          MR. RAYNOR:  Yes, Your Honor.  This is Brian

16   Raynor on behalf of PBGC.

17          THE COURT:  Yes.

18          MR. RAYNOR:  We'd just like to voice our support

19   on behalf of the settlement.  Of course, it's not perfect,

20   but there are a number of compromises made and we appreciate

21   the efforts of the estate professionals to broker the

22   settlement and the agreement that's set forth therein.

23          THE COURT:  Okay, thank you.  And of course, PBGC

24   is next in line here, so obviously, that's an important --

25          MR. RAYNOR:  Yes, Your Honor.

Page 71

```
1              THE COURT:  An important fact for me.  Okay.  So,
2    hearing no one on the settlement aspect of the motion, which
3    is, you know, 95 percent of it, I did want to turn to the
4    aspect of the motion that seeks a modification of the plan.
5    It's clear the plan has not been substantially consummated.
6    It hasn't even gone effective at this point; although, it
7    has been confirmed.
8              So, there is an ability to grant the relief, but I
9    wanted to focus on the proposed amendments and they
10   basically go to two points:  first, changes to the
11   liquidating trust agreement; and secondly, just timing of
12   objecting to claims.  On the second point, the plan provides
13   in Paragraph 12.1 that any objections to claims, including
14   admin expense claims, secured claims, ESL 507(b) priority
15   claims, other 507(b) priority claims, priority tax claims,
16   priority non-tax claims, general unsecured claims, ESL
17   unsecured claims, shall be served and filed on or before the
18   later of 180 days after the effective date and B, on such
19   later date as ordered by the Bankruptcy Court for cause.
20             So, the amendment, the proposed modification to
21   the plan that changes that 180-day date to 365 or such later
22   date as ordered by the Bankruptcy Court, and then a later
23   date for general unsecured claims and ESL unsecured claims
24   to 550 days after the effective date or such later date, to
25   me, I'm not really sure that that even is a modification,
```

Page 72

1   given that the plan itself recognizes that it could be a

2   later date as ordered by the Bankruptcy Court and that's

3   what you're asking me to do.

4          It does say for cause.  I'm assuming the cause

5   here is that it is far from clear, in fact, probably

6   unlikely, that there will be meaningful distributions or

7   maybe even any distributions to general unsecured claims.

8   And the trust does not want to incur the expense in going

9   through a claim objection process unless that prospect

10  appears and it wouldn't appear for some time and that's why

11  the date is extended.

12         I'm not sure, though, why there's a later date for

13  the admin and priorities, if someone could explain that for

14  me so I --

15         MR. FAIL:  Yes, Your Honor.

16         THE COURT:  -- determine whether there is

17  sufficient cause to extend the date.

18         MR. FAIL:  Thanks, Judge.  It's Garrett Fail from

19  Weil for the Debtors.  I think, unless there's a bust in the

20  document, we did bifurcate.  We extended for a longer period

21  objections to general unsecureds --

22         THE COURT:  Yes.  Yes.

23         MR. FAIL:  -- because that is -- and then we

24  extended the period from 180 to 365, you know, basically

25  instead of six months, so that in four-and-a-half months we

Page 73

1    weren't back here.  And the reason, Judge, is not to delay

2    objections.  In fact, the vast majority are probably subject

3    to objections, but as Your Honor knows in mega cases,

4    sometimes summary objections are filed but reserve rights to

5    file others, so if there's a late claim objection pending,

6    we haven't objected to the substance.  If the claim is

7    subject to a preference action, it may be disallowed.  The

8    Debtors didn't invest to file all grounds for others, you

9    know, that could be a matter of law going first before

10   matter of fact.

11             And so you know, the Debtors have not waived any

12   rights to defend against claims.  It's for the benefit of

13   all of the beneficiaries that have gotten the reduction of

14   the claims, you know, down billion dollars so far and so

15   it's simply a matter of convenience.  If we didn't extend

16   now, in four-and-a-half months, we would be before Judge

17   Lane extending until all claims in the first category are

18   ultimately allowed or disallowed by final order.

19             It's just a matter of procedure and we're just

20   trying to save that money. We do not think it's a plan

21   modification.  It's simply getting permission now rather

22   than later.

23             THE COURT:  Okay.  Okay.  And then as far as the

24   other changes are concerned, they essentially boil down to

25   recognizing that the work of the --

Page 74

1           MR. FAIL:  Litigation designees.

2           THE COURT:  The litigation review committee is

3    done and you don't need them anymore and the trust can be

4    operated by a trustee without that level of oversight and

5    expense.  And that makes sense to me and does not appear to

6    me to be a material change that affects parties' rights in

7    any meaningful way, but I did want to raise a couple of

8    points.

9           The liquidating trust board served as a sort of an

10   oversight of the trustee and in some ways, that was -- is

11   taken over by the PBGC in the amendments, and that makes

12   sense, again, because the PBGC is entitled to the next $97.5

13   million, subject to the appeal by Cyrus that we've been

14   discussing.

15          But for example, Section 4.8 of the liquidating

16   trust agreement just essentially deletes the reporting

17   obligation to the board and says that the trust -- sorry --

18   the liquidating trustee shall timely prepare, file, and

19   distribute statements, reports, and submissions as may be

20   necessary to cause the liquidating trust to be in compliance

21   in all material respects with applicable law.

22          I think I would be more comfortable with just a,

23   you know, a, at least semiannual report as to the status of

24   the trust.

25          MR. FAIL:  Your Honor, I think that in the 9019

Page 75

1   order, we agreed to a monthly reporting and consultation and

2   so we would love less, but we agreed to financial reporting.

3   Imagine it'll be rather static and slow, but we were happy

4   to provide updates.

5             THE COURT:  I'm not sure I saw that.  If that's in

6   here, that's great.

7             MR. LEBLANC:  Your Honor, this is Andrew Leblanc

8   of Milbank.  It is monthly reporting.  That's reporting to

9   Cyrus and PBGC --

10            THE COURT:  Oh, yeah.  Right.

11            MR. LEBLANC:  It's not necessarily --

12            THE COURT:  I was thinking that something should

13   be filed just to --

14            MR. FAIL:  Filed on the docket?

15            THE COURT:  Yeah.

16            MR. SCHROCK:  We could --

17            THE COURT:  Not monthly --

18            MR. SCHROCK:  -- do that.

19            THE COURT:  Reporting -- and it's now Cyrus as

20   well as the PBGC.  That was today's change, but I think I

21   would like something filed, at least on a semiannual basis.

22   The monthly reporting is fine, but you know, I just think

23   you could -- I'm assuming the reports are going to be

24   somewhat in writing.  It shouldn't be onerous for the

25   trustee to turn those into one semiannual report.

Page 76

1          MR. SCHROCK:  We'll do that.  We'll make the

2     change, Your Honor.

3          THE COURT:  Okay.

4          MR. FAIL:  Sure.

5          THE COURT:  I think -- I'm working off the

6     blackline.  I think Section 6.2 should be headed "Powers and

7     Duties of the Liquidating Trustee."  And there's just a typo

8     at the end of the third line, the words "at the" should come

9     out at the end of the third line of 6.2(a).

10          MR. FAIL:  Got it.

11          THE COURT:  The PIP on Page 36 of the blackline,

12     there is a provision for the trust professionals to submit

13     reasonably detailed invoices on a monthly basis to the

14     liquidating trustee and PBGC, and I guess that's now Cyrus

15     as well.  On Page 31, 6.4, it says "The liquidating trustee

16     shall receive compensation for its actual reasonable and

17     documented services to be paid out of liquidating trust

18     assets, up to a total amount not to exceed $3 million."

19          There's -- I don't think there's any reporting

20     mechanism on that.  It's just, there's a cap.  But I don't

21     know if you want to -- to me, I would include the

22     liquidating trustee at least supporting that in 6.4 with,

23     you know, detailed invoices -- not on a monthly basis, but

24     just to show what is the basis for whatever that person or

25     their firm is going to charge.

Page 77

```
1              MR. SCHROCK:  Yeah, we'll add that provision, Your

2    Honor.

3              THE COURT:  Okay.  And then lastly, I think

4    there's a glitch, again, because of the removal of the

5    board, in the exculpation provision on Page 44 of the

6    blackline.  It says, "Any action taken or admitted to be

7    taken with the express approval of the Bankruptcy Court,"

8    then just says, comma, "the liquidating trustee shall

9    conclusively be deemed not to constitute gross negligence."

10   But I mean, the liquidating trustee shouldn't be able to

11   approve its own gross negligence, so I think that needs to

12   be addressed.

13             I think it was worded before that -- the way it

14   was worded before was, "Any action taken or admitted to be

15   taken with the express approval of the Bankruptcy Court in

16   respect of such an action, the board shall be conclusively

17   deemed not to constitute gross negligence."  So, I think

18   it's just, if the Court approves it, then that's enough.

19   And the way it's worded not, it doesn't work, so I think

20   that needs to be changed.

21             MR. SCHROCK:  We'll fix that.

22             THE COURT:  Okay.  So let me turn back, then, to

23   the motion as a whole.  Does anyone --

24             MR. LEBLANC:  Your Honor --

25             THE COURT:  -- anything further to say on that?
```

Page 78

1    Yes.

2              MR. LEBLANC:  Just one point in -- as we were

3    flipping through together the liquidating trust agreement, I

4    note that 6.2(a) allows -- and going back to one of your

5    first questions, Judge, about settlement procedures and

6    maybe how you can get comfortable approving the Cyrus deal

7    today; 6.2(a) does provide that upon the effective date, the

8    liquidating trustee could settle all claims regardless of,

9    you know, the amounts.  So, in a way, you know, we're

10   getting ahead, but had the plan gone effective and the Cyrus

11   deal been cut -- Cyrus/PBGC deal been cut, there was a path

12   -- I'm not going to press, Your Honor.

13             THE COURT:  Right, but we're not on that path

14   because Cyrus raised its point but it didn't want to wait

15   until the -- and nor did the other side.

16             MR. LEBLANC:  Okay.

17             THE COURT:  So, I don't think that works.

18             MR. LEBLANC:  Okay.

19             THE COURT:  Okay.  I have before me the joint

20   motion of the -- I'm sorry.  I do want to raise one final

21   point.  I think this is right, but I would like you just to

22   double check.  The liquidating trust retains all the assets

23   of the liquidating trust as provided for under the plan.

24   Because the parties wanted to pursue the litigation before

25   the effective date, the Committee was set up to do that.

Page 79

1              I just want to make sure that there is no glitch

2    because of that and that that would somehow leave the

3    liquidating trust without those assets.  I don't think

4    that's the case.  I don't think that's what the parties

5    intended, but I think you should just double check that to

6    make sure that they're fully preserved, notwithstanding the

7    earlier order authorizing their pursuit by the Committee.

8              It's just -- you know, I'm aware of other cases

9    where a glitch like that basically gave a defendant a free

10   pass.

11             MR. SCHROCK:  We'll double check it, Your Honor.

12             THE COURT:  Okay.

13             MR. SCHROCK:  Thank you.

14             THE COURT:  So, as I was saying, I have before me

15   a motion by the Debtors and the Official Committee of

16   Unsecured Creditors which seeks two forms of relief, first a

17   comprehensive settlement or largely comprehensive settlement

18   of two sets of claims brought in two separate adversary

19   proceedings against the so-called insider defendants and

20   secondly against the public shareholder defendants.  Those

21   proceedings are currently consolidated in Adversary

22   Proceeding No. 19-08250.

23             Secondly, and related to the status of when the

24   claims were pursued and when the settlement was entered

25   into, the Debtors seek a modification of the confirmed but

1    not effective date Chapter 11 plan relating to the

2    governance of the liquidating trust established under the

3    plan to go into effect on the effective date of the plan.

4            As discussed during this hearing, the settlement

5    motion was modified to reflect a further settlement with the

6    PBGC and Cyrus -- I'm using the defined term in the motion -

7    - that resolved their reservations of rights about

8    distribution of the settlement proceeds.  The two sets of

9    claims comprise the most important remaining assets of the

10   Sears Debtors' estates.  The Court clearly has jurisdiction

11   over the settlement motion.

12           It was specifically reserved under the plan and

13   confirmation order and is critical to the performance of the

14   plan and I specifically kept my own assignment in respect of

15   the matters covered by the settlement, notwithstanding my

16   retirement, as part of my recall, given my familiarity with

17   the issues which had been addressed, frankly, in one way or

18   another since almost the beginning of these cases in 2018

19   and certainly more specifically when the two adversary

20   proceedings were filed and motions to dismiss were filed,

21   objected to, and argued.

22           Settlements and compromises are a normal part of

23   the process of reorganization in bankruptcy and are strongly

24   favored, often even more so than in a non-bankruptcy

25   setting, given the additional issues regarding the rights of

Page 81

1    various parties in interest, the time value of money, and

2    the like in a situation where the plaintiff is insolvent.

3    See Protective Committee of Independent Stockholders of TMT

4    Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968).

5              As that decision stated, in determining whether to

6    approve a settlement, the Bankruptcy Court must make an

7    informed independent judgment that the settlement is "fair

8    and equitable" and "in the best interests of the estate."

9              Based on the framework laid out in that case,

10   Courts in this Circuit have analyzed the following factors

11   in evaluating settlements: one, the probability of success

12   should the issues be litigated versus the present and the

13   future benefits of the settlement without the delay and

14   expense of litigation and subsequent appeals; the likelihood

15   of complex and protracted litigation if the settlement is

16   not approved, including the difficulty in collecting on the

17   judgment; the interests of creditors including the degree to

18   which creditors support the proposed settlement; whether

19   other interested parties support the settlement; the

20   competency and experience of counsel supporting and the

21   experience and knowledge that the Court -- that's for

22   appeals -- in reviewing the settlement; the nature and

23   breadth of the releases to be obtained by officers and

24   directors and other insiders; and the extent to which the

25   settlement is the product of arm's length bargaining.

Page 82

1          That last factor affects the one that came just

2     before it.  See Global Vision Products v. Truesdell, 2009

3     U.S. Dist. Lexis 64213, at *13-14 (S.D.N.Y., July 15, 2009).

4          The Court need not conduct an independent

5     investigation in formulating its opinion as to the

6     reasonableness of the settlement.  Rather, the Court can

7     give weight to the parties' informed judgment that the

8     settlement is fair and equitable.  See In re:  Drexel

9     Burnham Lambert Group, Inc., 134 B.R. 493, 496 (Bankr. SDNY

10    1991).

11          The Court's responsibility is to canvass the

12    issues, see whether the settlement falls below the lowest

13    point in the range of reasonableness.  In re:  Nuevo Pueblo,

14    LLC, 608 F. App'x. 40, 42 (2d Cir. 2015), quoting In re:

15    W.T. Grant Company, 699 F.2d 599, 608 (2d Cir. 1983).

16          This proposed settlement occurs after confirmation

17    of the Chapter 11 plan in these cases, so the issue as to

18    whether the settlement's proposed distribution scheme

19    complies with the cod's priority scheme which is often

20    critical with respect to a preconfirmation settlement, is

21    not relevant here.  See In re:  Iridium Operating, LLC, 478

22    F.3d 452, 464 (2d Cir. 2007).

23          I will note in light of those considerations,

24    first, that after due notice there were no objections to the

25    settlement and the parties who filed reservations of rights

Page 83

1    and who are most affected by the settlement -- that is,

2    those who might be arguing strenuously for there to be more

3    money paid, actually have supported the settlement.  That

4    includes the PBGC, which stands next in line with a $97.5

5    million priority claim junior to the claims that will

6    clearly be paid in full under the settlement, based on

7    today's record.

8            As far as the probability of success on the merits

9    is concerned, the issues at stake in these two litigations

10   are indeed, as counsel for the Committee stated, complex and

11   difficult and in some respects sui generis.  They raise --

12   they constitute both difficult legal issues including the

13   extent of the safe harbor under Section 543(e) in the

14   Bankruptcy Code and choice of law issues pertaining to

15   potential applicability of statutes of limitations.

16           In one respect, they also include a collapsing

17   analysis with regard to the Seritage transaction litigation

18   and they include factual issues as well, including, most

19   importantly, what would inevitably, if motions to dismiss

20   were not granted, involve evidentiary valuation issues

21   pertaining to the transferor Debtor's insolvency at the time

22   of the transfers as well as whether it was inevitable even

23   in the absence of insolvency that their undercapitalization

24   would result in eventual insolvency and finally whether the

25   requisite intent could be shown or belief as to the ability

Page 84

1    to pay debts as they came due in the future.

2          The aggregate claims asserted in the litigations

3    were substantially higher than the settlement amount

4    exceeding $1.4 billion with the settlement amount of $175

5    million with regard to the litigations themselves.  However,

6    the merits, as I said, would require one to, in a settlement

7    context, discount those numbers by assessments of

8    probability of success.

9          In addition, the litigation, as I noted, would be

10   protracted and complex and therefore expensive and, as is

11   clear from the motion as well as the Court's judicial notice

12   of the Creditors Committee's motion for third-party funding

13   of the litigation, the Debtors' estate, absent an agreement

14   by professionals to work on a contingency fee basis, where

15   professionals really weren't willing to take substantial or

16   full risk on a contingency fee basis, might well have proven

17   it's sufficient to pursue the litigations to their

18   conclusion against very determined and well-heeled

19   adversaries.

20         The conclusion, I believe, clearly wouldn't occur

21   until the termination of appeals, so the time during which

22   creditors would wait for a distribution if the litigation

23   continued would be far longer than under the proposed

24   settlement.  I think the motion is correct that it would be

25   at least two years, as opposed to 30 to 60 days from today.

Page 85

1           The settlement is clearly the product of arm's

2    length bargaining by very capable counsel representing the

3    estate with the Debtors' counsel looking over their shoulder

4    and therefore, although the major parties to settlement on

5    the defendants' side are insiders, I do not find the

6    releases to be inappropriate here, the typical litigation

7    releases for the claims that are actually being litigated.

8           In addition to the arm's length nature of the

9    negotiations and the experience of the counsel and the

10   businesspeople supervising those litigations, this

11   settlement was also the product of a lengthy mediation with

12   three mediators, including a current colleague of mine,

13   Judge Chapman, a former colleague, former Judge Peck, and

14   what was described as an insurance mediator since a major

15   portion of the settlement involved accessing the Debtors'

16   insurance.

17           I want to thank all three mediators, in particular

18   -- although I don't want to single her out for the quality

19   of the work.  I assume all three had very high-quality work,

20   but I want to thank in particular Judge Chapman who unlike

21   the other two, did it for free which is what we do for each

22   other.  But where there is a heavily mediated settlement,

23   particularly one that is unopposed at the end of the day,

24   the Court takes considerable amount of comfort the

25   settlement is fair and reasonable and in the best interests

Page 86

1    of the estate.

2            The last factor in respect of this settlement that

3    I want to address, which is unusual, is that it comes where

4    absent the settlement, there would be  considerable  concern

5    as to whether, A, administrative and secured creditors would

6    be paid in full as they're entitled to be, and thus, B,

7    whether the case would stay in Chapter 11 at all, whether

8    the confirmed plan would fail and an additional level of

9    administrative  expense would be layered in, namely the cost

10   of a Chapter 7 case and a Chapter 7 Trustee.

11           There are always issues when there's a settlement

12   -- or often, at least, issues where there's a settlement

13   that leaves senior creditors paid in full or nearly in full

14   and more junior creditors with little or no recovery, and

15   the Court must, in that context, make sure that those who

16   are being paid in full are not causing the settlement to be

17   pursued in a way that shortchanges the others who are not

18   being paid in full.

19           I don't believe that has occurred here, and

20   importantly, there is the extra layer that I've just

21   described that those senior creditors, in addition to

22   running the risk of adverse decision and a delayed

23   distribution themselves might well be primed, if the

24   settlement was not approved, because of the very real

25   likelihood the case would be converted to Chapter 7.

Page 87

1          So, it is clear to me that the proposed settlement

2     is fair and reasonable and in the best interest of the

3     estate, and I will approve it.

4          I do so with the mechanism that we discussed

5     earlier, which is that the Debtors will protect Cyrus'

6     interest, as Mr. Schrock described, until there is

7     sufficient notice of the Court's prior orders governing

8     proposed settlements of the Cyrus settlement, which was just

9     filed today, and I trust that the Second Circuit will

10    understand that that notice period will be short and that

11    the parties to the appeal would want a -- legitimately want

12    a ruling delayed just for that short period and for no

13    longer, and in fact, would welcome a ruling promptly after

14    that short period of the appeal which is currently sub

15    judice.

16          I noted during oral argument that the settlement

17    includes in it a contribution bar for non-settling parties.

18    Frankly, there are not many non-settling parties anymore at

19    this point.  They're all in the public shareholder portion

20    of the litigation.  Given the notice to them and the lack of

21    objection, I conclude that the contribution bar is

22    reasonable in the light of the Second Circuit caselaw,

23    including In re:  Masters Mates and Pilots Pension Plan, 957

24    F.2d 1020, 1028-29 (2d Cir. 1992) and the District Court

25    cases that have construed it, including Carroll v. LeBoeuf,

Page 88

1    Lamb, Green, & MacCrae, LLP, 2008 U.S. Dist. Lexis 54042 at

2    Page 9 (S.D.N.Y. July 16, 2008).

3         Given the role of the settling parties and the

4    non-settling parties, I believe that the equities do not

5    favor a mutual bar as some Courts have considered, but

6    simply a bar of the settling parties, since -- I'm sorry, in

7    favor of the settling parties, given who's left and their

8    belief as to their ultimate proportionate share of

9    liability, that there is no liability whatsoever.  See

10   Gerber v. MTC Electronic Technologies Company, Ltd., 328

11   F.3d 297, 309 (2d Cir. 2003) and the ruling by the District

12   Court on remand on the mutual bar issue, Kayne v. MTC

13   Electronic Technologies Co., 2005 U.S. Distr. LEXIS 10312,

14   (E.D.N.Y. May 30, 2015).

15        Let me turn then to the aspect of the motion that

16   seeks modification of the confirmed plan.  Under Section

17   1127(b) of the Bankruptcy Code, the Court has the power on

18   motion by the plan proponent, the Debtor, to approve

19   modification of a confirmed plan that has not been

20   substantially consummated.  It's clear here that the plan in

21   fact has not even gone effective and, therefore, it has not

22   been substantially consummated.

23        The Court, when faced with such a motion, looks at

24   three main points where the plan has not been substantially

25   consummated.  First, whether the modification represents a

Page 89

1   minor change to the plan that does not affect legal

2   relationships of the parties that would affect their

3   distribution, for example, or other rights that would be

4   material under the plan.

5          Second, has the party seeking the modification

6   demonstrated that the circumstances warrant the

7   modification.  And third, whether the separate disclosure

8   requirement under Section 1127(c) of the plan has been

9   implicated; that requirement not being a requirement in all

10  circumstances, or one and all circumstances pertaining to a

11  modification sought under Section 1127(b).

12         The Court also has to ensure itself that the plan

13  does not violate -- as modified, does not violate Sections

14  1122 or 1123 of the Code and would still be subject to

15  confirmation under Section 1129 of the Code.

16         As to that latter point, I am satisfied that

17  that's the case.  That's largely -- well, in fact, entirely,

18  because the modifications requested and as slightly amended

19  based on the colloquy during oral argument are indeed minor

20  and do not alter the legal relationships among the Debtor

21  and its creditors and other parties in interest, such that

22  the change would be significant, as opposed to minor changes

23  of procedure.

24         Here, the proposed modifications all reflect what

25  the Court has actually approved in connection with

Page 90

1    confirmation, which is that the function of the trust and

2    the Liquidating Trust Board be fulfilled by the Post-

3    Confirmation Committee authorized to oversee the conduct of

4    the litigations that are being settled, which were the

5    primary litigations to be pursued by the trust if the

6    effective date had occurred.

7              There's no reason to have that Board anymore.  It

8    would clearly not be in the interest of any creditor to

9    continue the Board.  The oversight function that would have

10   been performed by the Board is not adequately performed by

11   those who would have the most interest currently in the

12   remaining assets and the making of distributions, namely the

13   PBGC and Cyrus.  For the same reason, the circumstances

14   warrant modification, given the outcome of litigation and

15   the timing of the effective date in light of the settlement.

16             And finally, also for the same reason, a modified

17   disclosure statement and a potential resolicitation are not

18   warranted.  The reason for the modifications is amply

19   described in the settlement motion, and the notion that a

20   creditor would have a right revote on the plan in light of

21   these minor changes is simply not credible.  See generally

22   the discussion in In re Boylan Int'l, Ltd., 32 B.R. 43, 47,

23   and as to disclosure, 51-52 (Bankr. S.D.N.Y. 2011) and the

24   cases and authorities cited therein, including H. Rep. No.

25   95-595, 95th Cong., 1st Sess. 411 (1977), where Congress

Page 91

1    noted that if the plan modifications are minor, "the court

2    might determine that additional disclosure was not required

3    under the circumstances."

4            So, I can certainly make the findings necessary

5    under 1127(b) and approve the modifications.  I think the

6    order itself actually needs to be revised a little bit to

7    reflect that the plan, as modified, is confirmed, which is a

8    requirement of 1127.  It's partly there, but I don't think

9    entirely there in the draft that was provided.

10           So, I'll look for a revised order and it should be

11   entered either today or tomorrow, if it gets in, depending

12   on when it gets in.

13           MR. SCHROCK:  Great, Your Honor.  Thank you.

14   We'll get you a revised order as promptly as we can.

15           THE COURT:  Okay, great.  I urge the people not to

16   spend too much time or brain cells on the reservation on

17   distributions to protect Cyrus.  I think the record -- I

18   think, as Mr. Schrock described it, is clear and is

19   sufficient.  So, I hope that can be done, just based on what

20   was stated on the record, without any further negotiation or

21   involvement of the mediators.

22           MR. SCHROCK:  That would certainly be our goal,

23   Your Honor.

24           THE COURT:  Okay.  And, look, if there's some

25   dispute, just each side submit to me your language right

Page 92

1   away, rather than trying to resolve it, and I'll just choose

2   the language that I think works.

3           MR. SCHROCK:  Very good, Your Honor.  I think we

4   should be able to work through it, but we'll make sure to do

5   that today.

6           THE COURT:  So, I think there may be a number of

7   people who are on the line who were on just for that, and

8   you can certainly be excused.  And then we can just go down

9   the rest of the agenda.

10          The next matter is really on for presentment.  And

11  I do have myself retained authority over this one.  It's the

12  settlement with Oracle America, which is tied into the

13  settlement with Transform that I just approved.  So, noting

14  that it's unopposed and was on notice of presentment on due

15  notice, that will get entered by me accordingly, and I think

16  you emailed the proposed order to me yesterday.  So, that

17  will get entered.

18          MR. DIZENGOFF:  Thank you, Judge.

19          THE COURT:  And then the next matter is the

20  application of the Ad Hoc Group of Administrative Claimants,

21  under Sections 503(b)(3) and (b)(4) of the Bankruptcy Code,

22  for a substantial contribution award.

23          MR. MORGAN: Good morning, Your Honor.  Brian

24  Morgan from Faegre Drinker Biddle & Reath, on behalf of the

25  Ad Hoc Group of Admin Claimants.  I recognize that I'm a

Page 93

1    recent addition to this case.  The Group was formerly

2    represented by Ms. Morabido, who now represents the Admin

3    Expense Claims representative.

4           Your Honor, by way of the application, as you

5    noted, we're seeking an order allowing as an administrative

6    priority claim and authorizing the Debtors to reimburse the

7    reasonable fees and expenses incurred by the Ad Hoc Group

8    and making a substantial contribution to these Chapter 11

9    cases.  We're moving under 503(b)(d) and 503(b)(4), or

10   503(b)(1) in the alternative.

11          The motion is uncontested and the Debtors support

12   the relief requested therein.  The Relator, Carl Ireland,

13   did file a reservation of rights with respect to the

14   application, in which he raised concern about payment of the

15   claim prior to the effective date.

16          As has been discussed today, that claim's been

17   reserved for, so we don't think that payment of this

18   substantial contribution claim would impact that.  In any

19   event, we're prepared to -- or do agree, rather, to payment

20   on the effective date.  And we'll submit a proposed order,

21   which has been revised, to that effect, which should cure

22   that concern.

23          The contributions of the Ad Hoc Group to this case

24   are detailed in our papers, and I know Your Honor is very

25   familiar with the leadership role that they played, having

Page 94

1    briefly recognized that they served at the fulcrum point for

2    the negotiations with respect to the admin claim consent

3    program.

4            I'm happy to answer any questions Your Honor may

5    have, but otherwise, we'd rely on our papers, the

6    declarations submitted in support, and ask that the relief

7    sought in the application be granted.

8            THE COURT:  Okay.  I don't doubt that the

9    Committee is entitled to a substantial contribution claim.

10   Their role in this case falls within the case law, including

11   the Granite Partners case that I think is still the leading

12   case, 213 B.R. 440 (Bankr. S.D.N.Y. 1997), but see also In

13   re Synergy Pharmaceuticals Inc., 621 B.R. 588, 609-10

14   (Bankr. S.D.N.Y. 2020), and the other cases that you've

15   cited in your pleadings, including the Bayou case.

16           This group did in fact play a leadership role that

17   was essentially different than the normal role of a

18   creditor, and it led ultimately to the appointment of a

19   representative of all the administrative claimants, which I

20   think, frankly, without officially assuming those duties,

21   the Ad Hoc Group was doing.

22           But I do have one issue, which is although I have

23   the three declarations, which satisfies one element of the

24   showing besides the requirements laid out in Granite and

25   Synergy Pharmaceuticals, and In Re Bayou Group, 431 B.R.

Page 95

1   549, 562 (Bankr. S.D.N.Y. 2010), I don't have any time

2   records.

3           And to determine the reasonableness of the fee --

4   and I appreciate it's half of what was paid -- I need to

5   look at those, I think, under the case law and the

6   commentary, which says that with one caveat, in determining

7   the reasonableness of the fee, the Court should apply the

8   standard of Section 330 of the Code.  That caveat being that

9   under 503(b)(4), you don't look at what was reasonable for

10  the lawyer at the time.  That is an element of it, but you

11  also look at the whole substantial contribution amounts,

12  which I've already done.  But what I haven't done is

13  consider the time records.

14          So, I will -- and for this proposition, see In re

15  Bayou Group, 431 B.R. 566 and at note 18.  See also In re 29

16  Brooklyn Avenue, LLC, 548 B.R. 642, 652 (Bankr. E.D.N.Y.

17  2016).

18          So, I think what I need to do is I will grant the

19  application, but fix the amount, whether it's $750,000 or

20  something less than that, just based on a reasonableness

21  determination after I've had a chance to review the time

22  records, which I'll do promptly if someone sends those to

23  me.

24          MR. MORGAN:  Understood, Your Honor.  And just so

25  I'm clear, we can submit those in-camera in order to avoid -

Page 96

1   -

2           THE COURT:  Yeah.

3           MR. MORGAN:  -- having to redact records?

4           THE COURT:  That's fine.  That's fine.  I need to

5   satisfy myself that I, you know...  For example, those time

6   records for the $750,000 don't have duplicate entries, don't

7   have multiple people billing for the same task, those sorts

8   of things.

9           MR. MORGAN:  I appreciate that, Your Honor.  We

10  can send you those records today.

11          THE COURT:  All right.  Very well.

12          MR. HARNER:  (indiscernible) It's Paul Harner, the

13  Examiner.  I think that's a very reasonable approach, and I

14  don't think that requires our involvement.  And

15  congratulations, by the way.  It's your last day.  But I

16  think that's a very reasonable, does not require our

17  involvement, and --

18          THE COURT:  No, I don't think it does.  I don't

19  think this --

20          MR. HARNER:  If you're --

21          THE COURT:  I don't --

22          MR. HARNER:  If you're willing to do that, that

23  would be great.

24          THE COURT:  All right.  Well, I'm more -- I have

25  to do it, and I don't require the Examiner to do it.  I

Page 97

1   don't believe it's required under the order appointing you

2   to review this type of application.

3            MR. HARNER:  Okay.

4            THE COURT:  So, you should not feel that you need

5   to do that.  So, speaking of your duties, though, the next

6   matter on the calendar are the interim fees, and then that's

7   followed by final fee applications.

8            My inclination is to take the final fee

9   applications and skip the interim fees, which I think we

10  each applicant -- unless I'm missing something -- are

11  incorporated into the final applications.

12           MR. SCHROCK:  They are.  They are, Your Honor.

13           THE COURT:  Okay.  I mean, I've reviewed them, as

14  I reviewed all of the interim applications, but since

15  they're incorporated in the final ones, I think I'd like to

16  turn to the final fees.

17           MR. SCHROCK:  Thanks, Your Honor.  I'm happy to

18  kick it off here, Your Honor.  As you noted, we'd adjourned

19  the hearing on the 10th interim applications and filed the

20  11th interim and final applications for the period

21  thereafter.

22           There are no objections on the substance of the

23  applications.  And as noted in the report by the Fee

24  Examiner -- and I feel free to turn it over here to Mr.

25  Harner here in just a moment -- each of the professionals

Page 98

1    reached agreements regarding their applications.

2              There was a substantial amount of dialogue,

3    certainly, between the Fee Examiner and myself as we were

4    working through this.  Resolutions reached were incorporated

5    into the proposed order and filed with the Court yesterday.

6    The reductions, which I'm sure Mr. Harner will go through,

7    have been noted.

8              The amounts that the professionals have agreed to

9    take care here, we believe are fair and reasonable.  And we

10   do note that -- and we'll certainly, if any party wants to

11   speak up under their reservations of rights that were noted

12   regarding the timing of payment -- I would note that

13   although these amounts are large, this was an extraordinary

14   complex case, and the amount of work done here over the past

15   four years has been nothing short of, frankly,

16   extraordinary.

17             And it's not so large in comparison to the over $4

18   billion in amounts satisfied post-petition by the Debtors

19   for administrative claimants, including during the time in

20   which the Debtors operated as one of the country's largest

21   retailers.  Landlords, vendors, contract counterparties,

22   taxing authorities, employees; all of the parties were paid.

23   And each of the applicants can appear at their own request.

24             But if Your Honor has no questions, we certainly

25   are supportive of all the applications being granted, and I

Page 99

1  would, frankly, turn it over to Mr. Harner and ask if he'd

2  like to add anything.

3          MR. HARNER:  (indiscernible)

4          THE COURT:  I'm sorry.  Can I interrupt?  Because

5  maybe you could address this too --

6          MR. SCHROCK:  Yes.

7          THE COURT:  -- in addition to what else --

8          MR. SCHROCK:  Sure.

9          THE COURT:  -- you were going to say.  Either Mr.

10  Harner or Mr. Schrock.  I received the proposed final fee

11  order and I also, I think, understand, because I received a

12  chart at our request from the Fee Examiner as to the

13  negotiated reductions.  And I'm...  In some respects, I just

14  don't know what to make of the information on the final fee

15  order.  So, if people have that chart --

16          MR. SCHROCK:  Yes.

17          THE COURT:  -- they should take it out.  And what

18  I'm getting to is, in some places the chart shows more fees

19  paid than fees requested, not by a lot.  But for example,

20  for Herrick Feinstein, Weil Gotshal, and Paul Weis.

21          So, for Herrick Feinstein, it says total fees

22  requested $3,710,104.  And it says total fees paid,

23  $3,869,802.  And there's similar for Weil and Paul Weis,

24  although the amount of difference is smaller.

25          So, I just don't -- when it says total fees paid,

```
                                                          Page 100
 1   is that to be paid?  I'm just trying to understand why --

 2            MR. FAIL:  No, Your Honor.  I --

 3            THE COURT:  -- there's more paid than --

 4            MR. FAIL:  I can try --

 5            THE COURT:  -- the amount requested.

 6            MR. FAIL:  I could try to take this, Your Honor.

 7   It's Garrett Fail, from Weil, for the Debtors.

 8            MR. HARNER:  Garrett, could you hold on for a

 9   second?  And of sorry to interrupt, Your Honor, but I think

10   Ms. Daluz may be able to address that, because there are

11   some inconsistencies in what was paid when and so on and so

12   forth.  And we probably did not to a very good job of

13   describing all of that on the chart.

14            THE COURT:  Okay.

15            MR. HARNER:  But Ms. Daluz may be able to cast

16   some light on that.

17            MS. DALUZ:  Well, I think one point of

18   clarification -- good afternoon, Your Honor.  Tobey Daluz,

19   from Ballard Spahr, on behalf of the Examiner.  I think

20   you're referring to right now the charts that are attached

21   to the fee order.

22            THE COURT:  Yes.

23            MS. DALUZ:  And if that's the case, then that was

24   drafted by Weil Gotshal, and Mr. Fail would probably be able

25   to enlighten the matter.
```

Page 101

```
 1              THE COURT:  Okay.
 2              MS. DALUZ:  I think, perhaps, Mr. Harner, I
 3    thought you were referring to the chart that we sent to you
 4    yesterday at your request --
 5              THE COURT:  No --
 6              MS. DALUZ:  -- which I'm happy to walk you
 7    through.
 8              THE COURT:  No, I'll get to that in a moment.  But
 9    I just -- on the fee order, maybe -- Mr. Fail, can you tell
10    me what the explanation is for that?
11              MR. FAIL:  Yeah.  The explanation at a high level
12    is we tried to comply with the form that's required, which
13    requires the columns to say, "requested and paid".  And so,
14    what we did here in the text of the order was to say that
15    the fees requested would be allowed.  Because it doesn't
16    have -- the form order doesn't have "requested" and a column
17    for "allowed".
18              So, we reduced the requested by the voluntary
19    reduction, and the reduced amount reflecting the agreements
20    will be, therefore, approved.
21              However, as a result of the interim compensation
22    orders, amounts had been paid in excess in some cases.  But,
23    because this period covered for -- the application goes
24    through June and we're already through August, the Debtors'
25    professionals and the Debtors will work so that there is a
```

Page 102

1    true up.  So, we complied with the form --

2              THE COURT:  Right.

3              MR. FAIL:  -- and it shows accurately that they've

4    received for the period through June in some instances more

5    than will be allowed.  However, there is work that has been

6    paid for July and August, and therefore, true ups will be

7    made such that no amounts in excess net will be paid.

8              THE COURT:  Okay.  So, I think, just as far as the

9    chart is concerned, then you should add that to the

10   footnote, that...  And I think it's just for those three

11   firms.  I don't think there's an issue -- no, FTI has the

12   same issue, as does --

13             MR. FAIL:  Right.

14             THE COURT:  -- as does Kroll.  Wherever there is

15   that point and --

16             MR. FAIL:  You could almost disregard the fee.

17   You could almost disregard the --

18             THE COURT:  Well, I think what you should say is

19   that there will either be a true up as against the total

20   fees requested, or if that isn't sufficient -- if there's

21   not enough to make a true up, then there'll be disgorgement

22   to reflect the total fees requested.

23             MR. FAIL:  Not a problem.  That's consistent with

24   the understanding, Judge.

25             MR. HARNER:  Your Honor, it's Paul Harner, and

Page 103

1    that sounds exactly correct to me.

2            THE COURT:  Okay.

3            MR. HARNER:  I think that's what we should do.

4            THE COURT:  Okay.  And then I did have another

5    question on the chart that Ballard Spahr provided.  Just

6    doing the math, and now I think as far as the total fees

7    requested point is concerned the columns other than for --

8            MR. FAIL:  That was prior to the reduction, Judge.

9            THE COURT:  Other than for Akin --

10           MR. FAIL:  That's why the numbers (indiscernible).

11           THE COURT:  -- except for Akin Gump.  I think Akin

12   Gump, the total fees requested...  Well, Akin Gump should

13   tell me.  Is it the same thing that -- the 51 number is the

14   reduced number?

15           MS. BRAUNER:  Yes, Your Honor.  Sara Brauner, Akin

16   Gump, on behalf to the Committee.  That's correct.

17           THE COURT:  Okay.  And I think that's the case,

18   then, for all of the professionals, that the total fees

19   requested column reflects the negotiated reductions agreed

20   to between the various professionals and the Fee Examiner.

21   That's right, I think.  Right?

22           MS. DALUZ:  Your Honor, in fact the chart that we

23   sent to you, we calculated total fees requested merely by

24   adding up everybody's final fee application amount.  So,

25   there would be a discrepancy between our chart and the

Page 104

1    charts that are attached to the final fee order.

2              So, if you were looking at the total fees

3    requested column on our chart and then the negotiated --

4              THE COURT:  Yeah.  No, I --

5              MS. DALUZ:  -- reductions --

6              THE COURT:  I took that total fees requested and

7    then deducted the reductions.

8              MS. DALUZ:  Exactly.

9              THE COURT:  And --

10             MR. FAIL:  Yes, Your Honor.

11             THE COURT:  And I think that does foot to the

12   total fees requested column in the proposed order.  Correct?

13             MR. FAIL:  Yes, Your Honor.

14             THE COURT:  Okay.

15             MS. DALUZ:  By maybe a few thousand dollars off.

16   But we think it's a rounding error.

17             THE COURT:  Well --

18             MR. HARNER:  Yes.

19             MS. DALUZ:  We hope -- it's for a few thousand --

20   I mean, literally three or four thousand dollars, Your

21   Honor.

22             MR. HARNER:  (indiscernible)

23             THE COURT:  I'm sorry, Mr. Harner.  You're not

24   coming through.

25             MR. HARNER:  (indiscernible)

Page 105

1              THE COURT:  Okay.  All right.  So, my last

2      question is a small one, which is I think I have final fee

3      applications, except from McAndrews, Held & Malloy.  Are

4      they going to do a final fee application?  I mean, they

5      should.  Does anyone know what their status is?

6              MR. HARNER:  Well, sure.  What we expect is that

7      they will.  The Fee Examiner is going to be discharged but

8      there were three firms that did not submit final fee

9      applications by the August 9th deadline that was set.  So if

10     they do, unfortunately, I suppose that Judge Lane will need

11     to review those.  But they have not been submitted.

12             THE COURT:  So, there are three of those.

13     McAndrews, Held & Malloy, and Stout Risius Ross.  I'm not

14     sure what those two firms do.  Are they done, as far as...

15             MS. DALUZ:  Your Honor, our understanding is that

16     -- Tobey Daluz again, for the record -- that McAndrews Held

17     was an IP firm and Stout Risius was a real estate firm.  I

18     believe Stout Risius worked closely with the Akin Gump firm.

19     In fact, later we've seen that some of the bills appear as

20     expenses in connection with the litigation, or other matters

21     being handled by the Committee.  So maybe Akin Gump can give

22     more color on those firms.  The same with respect to Ask,

23     who has a bifurcated retention.  Part of it was on a

24     contingency fee basis, which we would not be -- we reviewed

25     to make sure it was in accordance with their retention --

Page 106

```
 1              THE COURT:  Right.
 2              MS. DALUZ:  -- and their exhibits.  But we did not
 3      review for reasonableness.
 4              THE COURT:  Right.
 5              MS. DALUZ:  This litigation designee retention
 6      would be reviewed for reasonableness.  Both of those firms,
 7      the amounts are de minimis, frankly, in the context of the
 8      overall fees in the case.  And so we thought if they just
 9      missed the deadline and could file a fee application, that
10      the parties that remain in the case, the Debtor and the
11      Judge would be able to address them appropriately.
12              We're happy to share our review and what we found
13      objectionable with anybody of the Debtors' counsel or with
14      the Judge, if he so requests.  McAndrews Held, we don't have
15      any input on a dollar amount on a total basis.  It's a
16      little bit higher, but not one that -- it's only $600,000 or
17      so, and not one that we thought should, you know, slow this
18      process.
19              THE COURT:  So, as far as Stout Risius is
20      concerned, maybe Ms. Brauner, are they still working?
21              MS. BRAUNER:  So, they're not, Your Honor.  And I
22      would defer to my partner, Dean Chapman, to provide
23      additional color on their role in connection with the
24      adversary proceeding.
25              THE COURT:  But it's not expected that they're
```

Page 107

1   going to be doing any material work going forward, right?

2           MS. BRAUNER:  That's correct.

3           THE COURT:  And what about --

4           MS. BRAUNER:  That's correct.

5           THE COURT:  This is not just -- I'm not even sure

6   whether there Committee professionals or Debtor

7   professionals.  McAndrews Held & Malloy?

8           MR. FAIL:  They were Debtors' professionals,

9   Judge.  I don't know whether they're continuing to do

10  anything.  I don't think they are.  And so I think this was,

11  as Ms. Daluz pointed out, just -- Daluz  pointed out that

12  this was just that they didn't file finals --

13          THE COURT:  Right.

14          MR. FAIL:  -- in the timeframe.  And so it's

15  without prejudice to their ability to seek final

16  compensation --

17          THE COURT:  And Ask LLP does have this bifurcated

18  arrangement.  Some of their work is on contingency fee.

19  That's never been subject, really, to the Fee Examiner's

20  review, and I've been dealing with their statements.  And

21  then there's some small portion that I guess is not.

22          But again, this is probably a question for the

23  Committees.  Are they doing any -- I'm assuming they're not

24  doing any additional work, other than the preference work at

25  this point.

Page 108

1            MS. GOLDBERG:  Your Honor, this is Aron Goldberger

2   speaking --

3            THE COURT:  No, before you speak, I just want to

4   have the Committee answer that question.

5            MS. BRAUNER:  Sure, Your Honor.  Sara Brauner, for

6   the Committee.  Ask is currently prosecuting the public

7   shareholder actions as well, so pending --

8            THE COURT:  Okay.

9            MS. BRAUNER:  -- resolute those issues --

10           THE COURT:  All right.

11           MS. BRAUNER:  -- would be when (indiscernible) --

12           THE COURT:  So they might do something.  So, my

13  inclination on those three firms is, in the paragraph that

14  relieves the Fee Examiner of his duties going forward, have

15  a proviso that the Examiner will provide the -- I guess it

16  would be the Liquidating Trustee -- he's the one that would

17  be objecting -- or it's the one that would be objecting to

18  claims, right --

19           MR. FAIL:  Yes, Judge.

20           THE COURT:  With your analysis of any interim

21  applications?

22           MS. DALUZ:  Just to be clear, Your Honor, we have

23  --

24           THE COURT:  Put those three to the front.

25           MS. DALUZ:  Absolutely.  And just to be clear, we

Page 109

1    have provided that feedback to each of those firms already.

2    It is subject to 408 confidentiality settlement provisions.

3    So I just want to state that on the record, so that all

4    parties are aware that they'll be given to the Trustee.

5              THE COURT:  And that's --

6              MR. HARNER:  (indiscernible)

7              THE COURT:  And that would be in the order too --

8              MR. HARNER:  -- Your Honor --

9              THE COURT:  -- so I would be directing the

10   Examiner to do that.

11             MR. HARNER:  Yeah, but Your Honor, that would be

12   completely consistent with my view and --

13             THE COURT:  Okay.

14             MR. HARNER:  -- and being (indiscernible) again if

15   (indiscernible) this entire process under the umbrella of

16   confidentiality and Rule 408 and so on and so forth.  So

17   that would be completely consistent with my view, yes.

18             THE COURT:  Okay.

19             MR. HARNER:  Yes, sir.

20             THE COURT:  All right.  So, I --

21             MS. GOLDBERG:  Your Honor, this is Aron Goldberg,

22   because I just want to clarify --

23             THE COURT:  Please, Ms. Goldberg.  I'll hear you.

24   I'm just trying to get all my questions out on the table,

25   and then I was going to go back to Mr. Harner, who was going

Page 110

1    to address in more detail his review of the fees as the Fee

2    Examiner.

3              MS. GOLDBERG:  I just want to clarify -- I'm just

4    trying to clarify if it was stated that there was no

5    objection to final fee applications.

6              THE COURT:  I have your objection.

7              MS. GOLDBERG:  Okay.

8              THE COURT:  I'll hear you.  I'm just trying to get

9    my questions answered and --

10             MS. GOLDBERG:  Okay.  I just thought I heard -- I

11   thought I heard that there was no objections.

12             THE COURT:  I have your pleading.

13             MS. GOLDBERG:  Okay.  Thank you --

14             THE COURT:  Okay.

15             MS. GOLDBERG:  -- Your Honor.

16             THE COURT:  So, in each of the interim

17   applications, including those that preceded Mr. Harner's

18   appointment as the Fee Examiner, I've recognized, and in t

19   he post-appointment ones, it's in the orders, that the Fee

20   Examiner's rights are fully reserved for the final

21   applications.

22             I think he had some input during the process

23   behind the scenes with applicants as to, you know, is

24   thinking about interim applications, but his rights were

25   reserved until the end.  And the statement that he filed in

Page 111

1    connection with the final fee applications reflects that he

2    was actively pursuing negotiations, and his comments with

3    all of the final applicants, and those would either reach an

4    agreement or he would raise the issues at the finals fee

5    hearing.

6           We've been informed that there was an agreement on

7    all of the final applications.  But having made that

8    groundwork, if you want to say further anything about your

9    process and where you came out, Mr. Harner, you can go ahead

10   at this point.

11          MR. HARNER:  Well, yes, Sir.  And thank you, Your

12   Honor.  There were literally more than 100-plus interim and

13   final fee applications filed in this case.  And we submitted

14   -- as I said, on a totally confidential basis, tens if not

15   close to 100 preliminary reports on those.  And again, --

16   and then -- but we kept those completely and totally

17   confidential and under the (indiscernible) of Evidence Rule

18   408.

19          We then reached a final resolution on most of the

20   final fee applications with the help of Mr. Schrock and Mr.

21   Fail and others in the last couple of weeks.  And it was

22   contributory to getting us across the finish line -- not us

23   -- everybody across the finish line.

24          Was I happy about where those came out?  Probably

25   not.  But that's the nature of settlement.  And Mr. Schrock

Page 112

1    said that earlier about the nature of the global settlement

2    in the case.  But we did that because it was the right thing

3    to do.

4            So, you know, I think with all (indiscernible) a

5    couple or two or three firms who didn't file -- it's three

6    firms that file final applications --

7            THE COURT:  Right.

8            MR. HARNER:  -- we got there and it was the right

9    thing to do.  It wasn't at the level, Your Honor, of what I

10   would have liked to have seen.  Probably not.  But that's

11   the nature of settlement.  So, now I'll shut up.

12           THE COURT:  So, have you reached agreement with

13   everyone except for the three firms that I had already

14   mentioned that haven't made a final application?

15           MR. HARNER:  Yes, Sir.  Yes, Sir.

16           THE COURT:  All right.

17           MR. HARNER:  Right.

18           MS. BRAUNER:  Just one point --

19           MR. HARNER:  (indiscernible)

20           MS. BRAUNER:  -- of clarification, Your Honor.

21   Sorry.  Stout is not a law firm.  Stout was an expert

22   retained.

23           THE COURT:  Okay.

24           MS. BRAUNER:  So just for clarification --

25           THE COURT:  Right.

Page 113

```
 1              MS. BRAUNER:  -- they would not be filing a fee

 2    application --

 3              MR. HARNER:  (indiscernible) and I'm sorry, Your

 4    Honor.  I should have been clear about this.  We were

 5    reviewing the fees of not just law firms --

 6              THE COURT:  Right.

 7              MR. HARNER:  -- but advisory firms.

 8              THE COURT:  If they were retained under Section

 9    320 -- well, the equivalent for the Committee under 1104,

10    they should file a fee app, as Deloitte and FTI and Alvarez.

11              MR. CHAPMAN:  Your Honor, just so --

12              MR. HARNER:  (indiscernible)

13              MR. CHAPMAN:  Dean Chapman -- just so the record

14    is perfectly clear --

15              MR. HARNER:  Yes.

16              MR. CHAPMAN:  Stout performed --

17              MR. HARNER:  Yes.  Correct.

18              MR. CHAPMAN:  Stout performed two functions in the

19    case.  They were real estate advisors to the Restructuring

20    Subcommittee, the Paul Weis Group, back during the Rule 2004

21    investigation in 2018 and 2019.  So that was Phase 1.  Phase

22    2, we retained them as experts to the Committee, the

23    litigation designees in the, I think, adversary proceeding.

24    So I think that might explain --

25              THE COURT:  So it's Phase 1 that they need to do a
```

Page 114

1    final on.

2              MS. BRAUNER:  That's right, Your Honor.

3              THE COURT:  As Phase 2, I assume they're a part of

4    the expenses.

5              MS. BRAUNER:  Correct.

6              THE COURT:  (indiscernible) expenses.

7              MS. BRAUNER:  That's right.

8              THE COURT:  Okay.  All right.  So, most of these

9    fee applications are unopposed.  Two are not.  The Weil

10   Gotshal and Akin Gump applications.  And there was a limited

11   objection by Orient Craft Ltd. and an objection by Kingdom

12   Seekers Inc. to both of those applications.

13             And just for the record, in addition to the self-

14   editing that those firms have done periodically and

15   including in respect of the final fee applications that they

16   submitted, each of those firms reduced their fees by $1

17   million.

18             So, I believe Ms. Goldberger is speaking on behalf

19   of Kingdom Seekers, Inc., and I don't know whether I have

20   counsel for Orient Craft.  Why don't I deal with Orient

21   Craft's objection first, since it was a limited one; was

22   dealing with the issue that we dealt with a fair amount at

23   the beginning of this hearing in the morning about the

24   reasonable assurance of payment or reserve for payment of

25   administrative priority and secured claims?

Page 115

1          But Mr. Wander, are you still pursuing the

2    objections?

3          MR. WANDER:  Your Honor, can you hear me?

4          THE COURT:  Yes.

5          MR. WANDER:  Good morning, Your Honor, or

6    afternoon.  David Wander, of Tarter Krinsky & Drogin,

7    counsel for Orient Craft.  Your Honor, I've made my views

8    well known throughout this case when I was first

9    representing Pearl Global at the confirmation hearing, and

10   thereafter when I was represented to administrative

11   creditors, H.K. Sino-Thai Trading and now Orient Craft,

12   which is an opt-out creditor.

13          I don't need to repeat what I've said at various

14   times in this case.  I have a different view of the case.

15   But at this point, Your Honor, I just would just to get my

16   client paid and move on and wish Your Honor good luck in the

17   next phase of Your Honor's case.  And to thank Your Honor

18   for listening to me when I spoke, and whether you agreed

19   with what I said or not, you always gave me a fair hearing,

20   so to speak.  And for that, I thank you.  And there's

21   nothing further I need to say at this point.

22          THE COURT:  Okay.  So I think, then, at this

23   point, you're not pursuing the limited objection because as

24   I understand it, the law firms have agreed that they would

25   not get paid in advance of the effective date, and we

Page 116

1    discussed at the beginning of the hearing, there would be

2    either payment for the non -- there would be payment for the

3    opt-out creditors on the effective date.

4            MR. WANDER:  Yes, Your Honor.  And I thank the

5    administrative claims representative and counsel for

6    protecting the opt-outs.  And so, with that in mind, I think

7    my objection speaks for itself, but I'm not pursuing

8    anything other than having my client get paid.

9            THE COURT:  Okay.  All right.  You know, before I

10   hear from Ms. Goldberger, I did have one more question.  And

11   it came up in the context of a reservation of rights by the

12   administrative claims representative, which referenced a

13   contingency fee or a potential contingency fee arrangement

14   with Akin Gump.  Is that an agreement that was never

15   executed?  What is the status of that?  Because as I read

16   the fee application, it's on an hourly basis.  It's not on a

17   contingency fee basis.

18           MAN 1:  Your Honor, that's correct.  It was never

19   -- it never got to fruition, partly because the trust ran

20   out of money and needed additional financing.  So there were

21   drafts exchanged, but never got to fruition.

22           THE COURT:  Okay.  So, Mr. Harner, did you look

23   into that issue?  I mean, I certainly didn't approve

24   anything under 328(a), so I'm not sure what the status of

25   such an agreement would be if it had been executed.  But, I

```
                                                      Page 117
 1    mean, frankly, I don't know what the contingency -- the

 2    people that they're talking to would be, but on $175

 3    million, it could conceivably be more than the litigation

 4    fees that Akin Gump has agreed to accept.

 5              MR. HARNER:  Your Honor, maybe Ms. Daluz could

 6    address that.  We have not looked into that issue in detail.

 7    Let me put it that way.

 8              THE COURT:  All right.

 9              MAN 1:  Your Honor, just to be clear, there is no

10    contingency fee.  There is no --

11              THE COURT:  All right.  It was just something that

12    -- it was discussed --

13              MAN 1:  It was discussed --

14              THE COURT:  It was in the draft --

15              MAN 1:  Correct, it was discussed --

16              THE COURT:  -- but not final.

17              MAN 1:  Correct.

18              THE COURT:  Okay.  So, that's fine.

19              MAN 1:  That's correct.

20              THE COURT:  Maybe that's all I need --

21              MAN 1:  (indiscernible)

22              THE COURT:  That's all I need to hear.

23              MAN 1:  (indiscernible) And I'm sorry, Your Honor.

24    But that makes sense to me.  Yeah, correct.

25              THE COURT:  Okay.  All right.  Okay.  So, why
```

Page 118

1    don't I hear, then, Kingdom Seekers' objections to the two

2    fee applications?

3                MS. GOLDBERG:  Everyone, this is Aron Goldberg on

4    behalf of Kingdom Seekers Inc.  So, just to summarize the

5    objection that we're moving forward with, these new

6    application fees were submitted after Kingdom Seekers Inc.

7    was allowed to be heard for our motion.  So, we're basically

8    objecting to this application fees because we think that we

9    should be allowed to be heard first before the application

10   fees can be approved.

11               THE COURT:  Okay.  Well, I have reviewed the

12   objection, as well as the underlying motion that you refer

13   to.  And I'll note the following things.  First, the Court

14   previously addressed an objection by the Debtors to two

15   claims filed in these cases by Kingdom Seekers Inc., Claim

16   Numbers 26515 and 26517.  And I granted that objection in an

17   order dated November 16, 2021.

18               As I explained at the hearing on the objection,

19   which was on November 10, 2021, the objection did not object

20   to the allowance of the claims, but rather only to the

21   claims' assertion that they were secured and/or that they

22   were entitled to administrative expense or priority status

23   under Section 507 of the Bankruptcy Code, more specifically,

24   entitled to priority under Section 507 as to wages and

25   benefits earned within 180 days of the petition date and/or

Page 119

1    507(a)(2) and 503(b), as a post-petition administrative

2    expense.

3          It was clear from the documents in the claim and

4    the assertions in the claim that there was no lien securing

5    the claim, the claims plural, and that the claims didn't

6    fall within the time limitations set up by Congress for

7    administrative expense claims or priority claims; that they

8    arose no later than 2016, well before the petition --

9          MS. GOLDBERG:  This particular objection --

10          THE COURT: Ma'am, I'm laying out the basis for my

11    prior ruling.

12          MS. GOLDBERG:  Mm hmm.

13          THE COURT:  Since then, Ms. Goldberg has

14    corresponded with the Court -- she's pro se -- and was

15    informed that if she seeks relief from that order, she would

16    need to make a motion either under Rule 60 or Rule 59 of the

17    Bankruptcy Rules.  I don't believe she ever appealed the

18    order.  And I believe that is what is currently before the

19    Court, having been filed on June 15, 2022.

20          The Court does not have to hold a hearing on such

21    a motion at all under the Bankruptcy Rules, and often does

22    not, based on its review of the motion and the standards for

23    having one be granted under Rule 59 and Rule 60.

24          Because Ms. Goldberger didn't attend the original

25    hearing in November and because she's pro se, we did

Page 120

1   schedule it.  But it was adjourned because all the other

2   matters on the calendar before today's hearing were

3   adjourned while I was still active on the bench.

4          When I retired, I kept jurisdiction, as I said,

5   over the matters that were covered for today.  But I did not

6   keep jurisdiction over this matter.  And that's why it's not

7   on the calendar for today.  It will be scheduled by Judge

8   Lane and you should deal with his chambers to have it be

9   heard, if he determines to hear it.  Again, he may decide

10  that based on his review of the motion, the transcript of

11  the hearing that I held on the claim objection and my order,

12  and the case law interpreting motions for vacature of an

13  order or reconsideration, that he doesn't need a hearing.

14  He may just issue an order.

15         But that's why it's not on for today.  And it's

16  really not a basis for me to put off the matters that were

17  on for today, including these two fee applications, for me

18  to hear this.  Frankly --

19         MS. GOLDBERG:  Your Honor, may I speak?

20         THE COURT:  Frankly, Ms. Goldberger, if I were to

21  hear today, I would deny --

22         MS. GOLDBERG:  (indiscernible) this motion --

23         THE COURT:  -- because I would have --

24         MS. GOLDBERG:  This objection --

25         THE COURT:  -- all my cards on the table.

Page 121

1    Frankly, if I did hear it today, I would deny it because it

2    doesn't meet the standards.

3           MS. GOLDBERG:  This objection is not based on

4    those motions.  2:40:28 They're based on 10488, which is a

5    motion to just simply acknowledge my -- the employment and

6    type of work performed.  Not based on the motions of 265 or

7    26517.

8           THE COURT:  But you don't need any --

9           MS. GOLDBERG:  Both back in November --

10          THE COURT:  You filed a claim.  It's still extant

11   as far as an unsecured claim.  So you don't need any further

12   order on that.  It's --

13          MS. GOLDBERG:  The objection is based on

14   incomplete work of the attorney not completing or responding

15   or even making service to motion 10488.

16          THE COURT:  But that motion either sought -- and

17   again, you're pro se, so I'm trying to read between the

18   lines of what you're seeking.  It either sought

19   reconsideration of my earlier or it's seeking relief that

20   you don't need and that I couldn't granted this time, which

21   is a determination that your unsecured claim should be

22   allowed?  And there's no reason to have anyone spend any

23   money or time on that because, as I noted earlier in this

24   hearing, it's highly that unsecured claims will receive any

25   distribution in the case.  So --

Page 122

1           MS. GOLDBERG:  So I'm seeking -- I'm seeking

2    acknowledgment of employment and the type of work performed,

3    which is Motion 10488.

4           THE COURT:  Well --

5           MS. GOLDBERG:  Nothing to do with --

6           THE COURT:  I understand, but that doesn't --

7           MS. GOLDBERG:  -- what (indiscernible).

8           THE COURT:  That doesn't apply -- there's no such

9    thing as an acknowledgment of work performed that I would

10   decide.  You filed a proof of claim.  The Debtor has a

11   period in which to object to it.  That period hasn't run.

12   It just sits there.

13          MS. GOLDBERG:  Okay.  And there was no objection

14   to the Motion 10488, which was submitted on June 15th, which

15   leaves us unopposed.

16          THE COURT:  It wasn't clear to me whether it --

17   what it was seeking.  If it was seeking reconsideration of

18   the disallowance of the administrative expense or secured

19   nature of your two claims, or Kingdom Seekers' two claims,

20   then it would be denied.

21          MS. GOLDBERG:  The motion was seeking -- demand an

22   acknowledgment of employment and the type of work performed.

23          THE COURT:  All right.  I'm going to say this one

24   more time --

25          MS. GOLDBERG:  -- that I was an employee --

Page 123

1            THE COURT:  I'm going to cut this off.  There is

2    no such thing as an order granting a motion to acknowledge

3    employment.  That's not -- it doesn't fall within any relief

4    that I can grant.  You filed a claim on that basis.  The

5    claim is there.  And it will be determined in due course, if

6    there is a reason to do it.  At this point, there is no

7    reason to do it because there's no distribution on general

8    unsecured claims anticipated.

9            MS. GOLDBERG:  Thank you, Your Honor.

10           THE COURT:  Okay.  All right.  So that leaves --

11   there really are -- to the extent that they still exist --

12   I'm not really sure they do.  I'm overruling the objections

13   to the fee applications of Akin Gump and Weil Gotshal.

14           I appointed a Fee Examiner in this case.  I'm not

15   a huge fan of fee examiners generally.  I think they are

16   warranted in large cases and that is because it can become a

17   very difficult task for the Court to deal with multiple fee

18   applications over an extended time that are in many cases

19   quite lengthy, and the Court then properly -- as does the

20   U.S. Trustee -- rely on work done by a fee examiner.  And I

21   think we had an active and quite capable of the examiner

22   here.

23           His concerns have been resolved.  I know that in

24   the past, some fee examiners have just said I need this,

25   without any reference to the standard under Section 330.

Page 124

1    I'm assuming that based on the settlements here, that wasn't

2    the case.

3            In any event, I have considered that the

4    applications of the applicants during the case.  And in

5    these final the applications, I have considered the largest

6    ones, again, those being Akin Gump's and Weil Gotshal's.

7    And I have reviewed them in the light of the standard set

8    out by Congress in Section 330 of the Bankruptcy Code, which

9    states that in determining the amount of reasonable

10   compensation to be awarded, the court shall consider the

11   nature and the extent and the value of such services, taking

12   into account all relevant factors, including the time spent

13   on such services, the rates charged for such services,

14   whether those services were necessary to the administration

15   of or beneficial at the time at which the service was

16   rendered, toward the completion of a case under this title;

17   whether the services were performed within a reasonable

18   amount of time, commensurate with the complexity, importance

19   and nature of the problem, issue or task addressed, and (e)

20   whether the compensation is reasonable based on the

21   customary compensation charged by comparably skilled

22   practitioners in cases other than cases under this title.

23           The next section is Subsection of Section 330,

24   Subsection 4(a) states, the court shall not allow

25   compensation for unnecessary duplication of services or

Page 125

1    services that were not reasonably likely to benefit the

2    debtor's estate or necessary to the administration of the

3    case.

4            It's an objective inquiry, based on what services

5    a reasonable lawyer or legal firm would have performed in

6    the same circumstances.  See In re Ames Department Stores,

7    Inc., 76 F.3d 66, 72 (2d Cir. 1996).  And given the focus of

8    the state on what was reasonable at the time the service was

9    rendered, the Court should not invoke perfect hindsight.

10   See, for example, In re Angelika Films, 57th, Inc., 227 B.R.

11   29, 42 (Bankr. S.D.N.Y. (1998), aff'd 246 B.R. 176 (S.D.N.Y

12   2000).

13           And indeed, the benefit and necessary criteria of

14   Section 330 do not require a professional to be 100 percent

15   successful.  They're satisfied if a reasonable attorney

16   would have believed at the time that a particular service

17   would benefit the estate, taking into consideration the

18   chances of success and a reasonably projected attendant

19   cost.  Id.

20           The Code makes it clear that the Court should look

21   at whether the compensation is based on customary

22   compensation charged by comparably skilled practitioners in

23   cases other than cases under this title.  That has led

24   courts to state that the inquiry is often a market-driven

25   approach, that is, if the Debtor's professionals who the

Page 126

1    court has previously approved charge the same amount or

2    comparable amounts as the applicable market for comparable

3    services, that the court would need good and articulate

4    reasons to reduce their fees as excessive.  See Zolfo,

5    Cooper Co. v. Sunbeam-Oster Co., Inc., 50 F.3d 253, 258-60

6    (3d Cir. 1995) and In re Raytech Corp., 241 B.R. 785, 785-90

7    (D. Conn. 1999).

8            A corollary is that when they presume subject to

9    rebuttal that the staffing and other practical decisions

10   made by attorneys whose retention has been authorized by the

11   court have been made in good faith, in view of their legal

12   and ethical responsibilities.  Obviously, subject to

13   Congress' concern about avoiding unnecessary duplication of

14   effort.  In re Drexel Burnham Lambert Group, Inc., 133 B.R.

15   13, 23 (Bankr. S.D.N.Y. 1991).

16           And that's also in light of the fact that the

17   applicant still bears the burden of proving reasonableness

18   of compensation.  Zeisler & Zeisler v. Prudential Insurance

19   Company, 210 B.R. 19, 24 (B.A.P. 2d Cir. 1997).

20           It's also the case that consistent with a market-

21   driven approach, the Court, and frankly, a fee examiner as

22   well, should review bills in the light of the normal billing

23   judgment that would be expected of a law firm by its client.

24   Again, it is clearly the case the clients will often obtain

25   a reduction of a fee based on discussions tween the client

Page 127

1   and the firm over what was appropriate billing judgment.

2   Again, see Zolfo, Cooper Co. v. Sunbeam-Oster Co., Inc.,, 50

3   F.3d 253, 259.

4          Courts determining the applications, that is,

5   bankruptcy courts, enjoy wide discretion in determining

6   reasonable fee awards.  See Zeisler & Zeisler v. Prudential

7   Insurance Company, 210 B.R. 19, 24., and In re Raytech

8   Corp., 241 B.R. 785, 788.  And given the fact that they have

9   a great deal of experience in reviewing fee awards, and when

10  it happens, objections to them, it's understandable why that

11  discretion is granted.  Zolfo, Cooper Co. v. Sunbeam-Oster,

12  Inc., 50 F.3d 253, 329.

13         I have noted nits and gnats in the applications

14  that I believe would have been picked up and have been

15  picked up by the Fee Examiner.  The big question for me is

16  not that, but rather whether these firms, which no one has

17  disputed are working at market rates, somehow made decisions

18  that at the time, in light of the facts known at the time,

19  led to over-billing.

20         I have concluded that the agreements that have

21  been reached take those factors into account and will not

22  further reduce the applications.  The work generally done in

23  this case involved a number of very complex issues, none

24  more complex than weighing the alternatives of a litigated

25  approach to the hilt against the Debtors' owner and related

Page 128

1    parties, including board members, and pursuing the sale

2    approach.  Neither was clear, as a clear option.

3            There are pros and cons to each of them, and the

4    ultimate result related to the Transform sale involved

5    serious concessions by Transform related to litigation

6    claims that could only have been obtained after extensive

7    analysis, preceded by extensive discovery.

8            The remaining claims against those parties were

9    pursued aggressively and I have asked himself whether the

10   cost of that pursuit was too high.  And I've decided that

11   given the agreed reductions, it was not.  I say that in part

12   because I understand the cost of high-stakes multiparty,

13   multi-issue litigation, including the need to retain experts

14   who could be available not only for trial, but also for

15   negotiations and setting trial strategy.

16           Those expenses are a large portion of the Akin

17   Gump litigation fees.  And until the market changes, if it

18   ever will, and market rates go down, that type of litigation

19   is just very expensive.

20           So I will grant the fee applications in the

21   revised amounts sought.

22           MR. SCHROCK:  Thank you.  Thank you very much,

23   Your Honor.  We'll make those changes (indiscernible) link

24   to the order.  And on behalf of the Debtors, I believe that

25   that concludes the matters on the agenda.  And I just want

Page 129

1    to note that it's been an honor and privilege to be able to

2    appear before you, and I wish you the very best in your

3    retirement.

4            THE COURT:  Well, thank you.  I wish all of you

5    the very best too.  So, I'll look for both of those orders.

6    Oh, you know, I'm sorry.  I did not address one specific --

7    two specific applications, and I should do that.

8            In addition to their the applications, the two

9    counsel to the Retirees' Committee asked to raise the cap on

10   their fees that I had set when I authorized the formation of

11   the Committee.  I'm aware of the work that they did, which

12   was more extensive -- was required to be more expensive than

13   I had originally thought.  It might be.

14           I always had in mind that the cap might be raised

15   if in fact there was more work to do and they did it.  And

16   there is no objection to the amounts that they have sought

17   to split between them, the  $175,000.  In fact, the Fee

18   Examiner specifically addressed that applications and stated

19   that he has no objection to it as far as the time records

20   and the work that was done.  And I don't either.

21           So, that should be covered in the order and it

22   will be covered, but I just wanted to note that on the

23   record.

24           So, I'll look for the fee order with the added

25   footnotes that I discussed with Mr. Fail, as well as the

Page 130

1    order on the settlement agreement that we already discussed.

2    And separately, the order on the substantial contribution

3    application, which should come along the time records and I

4    can review those.  So that order won't be entered as soon as

5    the other ones, but it'll be entered promptly.

6              Okay.  Thank you, all.

7

8              (Whereupon these proceedings were concluded at

9    1:08 PM)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 131

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  September 2, 2022

**[& - 175]**                                                                 Page 1

**&**

**&** 3:2,7 4:2,7 5:2
5:7,23 9:22,24
12:2 18:3,11
19:1,8,18 20:8
88:1 92:24
105:3,13 107:7
115:6 126:18
127:6

**0**

**0.00.** 6:7 10:16
11:10
**014** 14:4

**1**

**1** 8:4,5,6 9:21
12:3 19:11
93:10 113:21,25
114:16 116:18
117:9,13,15,17
117:19,21,23
**1,574** 3:6
**1,574,106.50** 4:6
**1.4** 84:4
**1.7.** 39:15
**10** 29:12,13 33:9
33:16 34:17
35:12 37:8,14
40:1,2,2,14,15
43:17 47:13,13
47:13,19 52:13
52:18 54:13
56:2 118:19
**100** 39:4 111:12
111:15 125:14
**10001** 21:12
**10005** 21:21
**10007** 20:18
**10017** 18:14

**10019** 18:21
**10036** 19:4,12
**101** 20:10
**10153** 18:6
**10158** 19:21
**10178** 20:11
**1020** 87:24
**10217** 9:24 10:4
**1028-29** 87:24
**10281** 22:5
**10312** 88:13
**10396** 3:13 4:12
5:12 6:11 7:7,11
8:12
**10397** 3:12 4:12
5:12 6:11 7:11
8:8,12
**10398** 3:13 4:13
5:8,13,24 6:12
7:12 8:13
**10399** 3:13 4:13
5:13 6:7,12 7:12
8:13
**10401** 3:8,13 4:8
4:13 5:13 6:12
7:12 8:13
**10406** 3:14 4:14
5:14 6:13 7:13
8:14 9:12 10:4
**10407** 13:9,15
14:7,17,25 15:9
16:8,14,17
17:12
**10408** 15:1
**10409** 9:7,12
**10410** 9:13
**10411** 10:5
**10413** 13:17
**10433** 10:16,21
11:15

**10434** 10:20
11:10,14
**10440** 3:19 4:19
5:19 6:18 7:18
8:19 9:18 10:10
11:4,21
**10442** 10:22
11:16
**10443** 5:25
**10452** 12:4,9,19
**10453** 12:8,14
12:18
**10454** 14:9,17
**10460** 12:10,20
**10485** 15:13
**10486** 16:10,16
**10487** 16:22
17:4
**10488** 17:4
121:4,15 122:3
122:14
**10490** 16:18
**10496** 17:13
**105** 13:3 14:3,13
14:22 15:5,21
16:5 17:8
**10567** 30:8
**10568** 30:9
**10596** 49:3
**106.50** 3:6
**10601** 1:20
**10622** 28:18
65:3
**10:00** 3:12 4:12
5:12 6:11 7:11
8:12 9:11 10:3
10:20 11:14
12:8,18 15:23
**10:10** 1:23

**10th** 97:19
**11** 28:7 61:18
67:21 80:1
82:17 86:7 93:8
**11/1/2019** 10:15
**11/1/2021** 3:6
4:6 5:6 6:6 7:6
9:5
**1104** 113:9
**111.60** 9:6
**1122** 89:14
**1123** 89:14
**1127** 88:17 89:8
89:11 91:5,8
**1129** 89:15
**1142** 13:3 14:3
14:13,22 15:5
16:5 17:8
**11501** 131:23
**1177** 19:3
**11:59** 69:4
**11th** 97:20
**12.1** 71:13
**12/31/2021** 11:9
**12151** 131:7
**13** 126:15
**13-14** 82:3
**1300** 21:4
**133** 126:14
**134** 82:9
**14** 37:11 39:18
45:2 47:20 48:9
**14th** 18:13
**15** 82:3 119:19
**15th** 122:14
**16** 88:2 118:17
**1675** 18:20
**17,883.50** 9:23
**175** 84:4 117:2

**[175,000 - 3rd]**                                                              Page 2

**175,000**  129:17
**176**  125:11
**18**  49:8 50:18,20
    95:15
**18-23538**  1:3
**18.2**  39:11
**180**  29:7 38:17
    39:1 61:4 71:18
    71:21 72:24
    118:25
**19**  126:19 127:7
**19-08250**  1:4
    17:15 79:22
**1968**  81:4
**1977**  90:25
**1983**  82:15
**1991**  82:10
    126:15
**1992**  87:24
**1995**  126:6
**1996**  125:7
**1997**  94:12
    126:19
**1998**  125:11
**1999**  126:7
**19th**  18:20
**1:08**  130:9
**1st**  90:25

**2**

**2**  12:3 113:22
    114:3 119:1
    131:25
**2/28/2022**  3:6
    4:6 5:6 6:6 7:6
    9:5
**20**  35:16 36:14
    54:13
**200**  22:4

**2000**  125:12
**20005**  21:5
**2003**  88:11
**2004**  113:20
**2005**  88:13
**2007**  82:22
**2008**  88:1,2
**2009**  82:2,3
**2010**  95:1
**2011**  90:23
**2015**  82:14
    88:14
**2016**  95:17
    119:8
**2018**  80:18
    113:21
**2019**  62:18
    113:21
**2020**  94:14
**2021**  8:6 9:21,22
    118:17,19
**2022**  1:22 3:12
    4:12 5:12 6:11
    7:11 8:5,5,7,12
    9:11 10:3,20
    11:14 12:8,18
    31:5 32:5
    119:19 131:25
**20373**  15:20
**20614**  15:20
**20615**  15:19
**21**  58:8,16,23
**210**  126:19
    127:7
**213**  94:12
**213,032.12.**  3:7
    4:7
**21p**  13:6,14 14:6
    14:16,25 15:8
    16:8 17:11

**227**  125:10
**23**  126:15
**233**  20:3
**24**  126:19 127:7
**241**  126:6 127:8
**246**  125:11
**248**  1:19
**24th**  55:10
**250**  20:17
**253**  126:5 127:3
    127:12
**257,411.50**  11:9
**258-60**  126:5
**259**  127:3
**26**  3:12 4:12
    5:12 6:11 7:11
    8:12 9:11 10:3
**26186**  15:15
**26368**  15:20
**265**  121:6
**26515**  118:16
**26517**  118:16
    121:7
**269,013.50**  9:6
**27.5**  38:23 43:22
**28**  8:5,7 56:17
**29**  10:20 11:14
    12:8,18 95:15
    125:11
**297**  88:11
**2:40:28**  121:4
**2d**  82:14,15,22
    87:24 88:11
    125:7 126:19
**2ip**  16:14

**3**

**3**  12:3 27:17
    45:22,23 76:18
    92:21

**3,710,104**  99:22
**3,869,802**  99:23
**3.6.**  39:17
**3/1/2021**  9:23
**3/31/2020**  10:15
**30**  9:22 29:16,19
    38:9 47:12 53:7
    54:9 62:21
    84:25 88:14
**300**  1:19 131:22
**3014**  58:25
**3020**  13:4 14:4
    14:14,23 15:6
    16:6 17:9
**309**  88:11
**31**  1:22 32:7
    76:15
**31st**  31:9
**32**  90:22
**320**  113:9
**328**  88:10
    116:24
**329**  127:12
**33**  39:1
**330**  95:8 123:25
    124:8,23 125:14
    131:21
**36**  76:11
**362**  13:3 14:3,13
    14:22 16:5
**363**  15:5 17:8
**364**  13:3 14:3,13
    14:22 15:5 16:5
    17:8
**365**  71:21 72:24
**390**  81:4
**3d**  126:6
**3rd**  19:20

**[4 - accurately]**                                                                     Page 3

| 4 |
|---|
| **4**  43:14 92:21 93:9 95:9 98:17 124:24 |
| **4.1**  46:16 |
| **4.8**  74:15 |
| **4/1/2020**  11:9 |
| **40**  21:20 82:14 |
| **4001**  13:4 14:4 14:14,23 15:6 16:6 17:9 |
| **408**  109:2,16 111:18 |
| **411**  90:25 |
| **414**  81:4 |
| **41st**  19:3 |
| **42**  82:14 125:11 |
| **424**  81:4 |
| **425**  18:13 |
| **43**  90:22 |
| **431**  94:25 95:15 |
| **44**  77:5 |
| **44,946.53.**  5:7 |
| **440**  94:12 |
| **452**  82:22 |
| **45th**  20:17 |
| **46,688.00**  7:6 |
| **464**  82:22 |
| **47**  90:22 |
| **478**  82:21 |
| **493**  82:9 |
| **496**  82:9 |

| 5 |
|---|
| **50**  126:5 127:2 127:12 |
| **502**  15:21 |
| **503**  92:21 93:9,9 93:10 95:9 119:1 |

| 506  33:19 48:5 |
|---|
| 59:19 |
| **507**  29:14 33:7 33:19 34:15 35:5 45:5 48:6 51:9 59:19 71:14,15 118:23 118:24 119:1 |
| **509.69.**  7:7 |
| **51**  103:13 |
| **51-52**  90:23 |
| **52**  43:14 |
| **53,422.00**  10:15 |
| **536,639.00**  5:6 |
| **54042**  88:1 |
| **543**  83:13 |
| **548**  95:16 |
| **549**  95:1 |
| **55**  21:11 |
| **550**  71:24 |
| **562**  95:1 |
| **566**  95:15 |
| **57th**  125:10 |
| **588**  94:13 |
| **59**  119:16,23 |
| **595**  90:25 |
| **599**  82:15 |

| 6 |
|---|
| **6.2**  76:6,9 78:4,7 |
| **6.4**  38:25 44:21 76:15,22 |
| **6/17/2022**  15:24 |
| **6/29/2022**  15:23 |
| **60**  53:7 54:9 62:21 84:25 119:16,23 |
| **600,000**  106:16 |
| **605**  19:20 |

| 60606  20:4 |
|---|
| **608**  82:14,15 |
| **609-10**  94:13 |
| **621**  94:13 |
| **642**  95:16 |
| **64213**  82:3 |
| **652**  95:16 |
| **66**  125:7 |
| **699**  82:15 |
| **6th**  19:3 |

| 7 |
|---|
| **7**  86:10,10,25 |
| **7.40.**  9:24 |
| **7.5**  64:11 |
| **72**  125:7 |
| **75**  43:4,9 |
| **750,000**  95:19 96:6 |
| **76**  125:7 |
| **767**  18:5 |
| **785**  126:6 127:8 |
| **785-90**  126:6 |
| **788**  127:8 |

| 8 |
|---|
| **8**  13:6 |
| **80**  43:4,8 |
| **80,462.00**  6:6 |
| **8000**  20:3 |

| 9 |
|---|
| **9**  88:2 |
| **9/30/2021**  9:23 |
| **900**  21:4 |
| **9014**  13:4 14:14 14:23 15:6 16:6 17:9 |
| **9019**  74:25 |
| **95**  71:3 90:25 |
| **957**  87:23 |

| 95th  90:25 |
|---|
| **97.5**  34:25 52:1 74:12 83:4 |
| **9th**  31:5 32:5 105:9 |

| a |
|---|
| **a&a**  15:10 |
| **a.m.**  3:12 4:12 5:12 6:11 7:11 8:12 9:11 10:3 10:20 11:14 12:8,18 |
| **ability**  50:10 71:8 83:25 107:15 |
| **able**  36:12 62:1 77:10 92:4 100:10,15,24 106:11 129:1 |
| **absence**  55:4 83:23 |
| **absent**  54:3 84:13 86:4 |
| **absolutely** 108:25 |
| **abundantly** 60:22 |
| **accept**  117:4 |
| **accessing**  85:15 |
| **account**  34:14 38:23 61:11 124:12 127:21 |
| **accounted**  46:21 |
| **accounts**  15:16 |
| **accrued**  41:2 |
| **accurate**  41:16 41:17 131:4 |
| **accurately** 102:3 |

achievement
64:3
acknowledge
121:5 123:2
acknowledge...
16:21 17:2
acknowledgm...
122:2,9,22
action 33:25
62:24 63:10
64:7 67:20,21
73:7 77:6,14,16
actions 62:20
64:6 108:7
active 120:3
123:21
actively 52:9
111:2
activities 29:11
39:25 40:3,14
actual 3:5 4:5
51:8 76:16
ad 19:2 92:20,25
93:7,23 94:21
adam 13:15
add 29:2 45:3
47:18 59:2 77:1
99:2 102:9
added 46:17
47:23 129:24
adding 45:8
103:24
addition 33:17
39:19 46:14
47:23 84:9 85:8
86:21 93:1 99:7
114:13 129:8
additional 27:22
33:24 37:14
40:4,6 42:10

43:14 65:21
80:25 86:8 91:2
106:23 107:24
116:20
additions 51:3
address 34:11
36:9,13 54:10
60:6 86:3 99:5
100:10 106:11
110:1 117:6
129:6
addressed 60:8
77:12 80:17
118:14 124:19
129:18
adds 42:10
adequate 49:11
49:16
adequately
90:10
adjourned
97:18 120:1,3
adler 13:15
admin 19:2 21:2
35:4 41:22
42:11 43:15
71:14 72:13
92:25 93:2 94:2
administration
8:2,8 13:16
124:14 125:2
administrative
5:21 8:3 29:9
32:25 33:21
35:25 36:18
37:23 38:20,22
39:2,5 40:10,19
41:5,6 42:12
47:25 52:8,20
61:9 86:5,9

92:20 93:5
94:19 98:19
114:25 115:10
116:5,12 118:22
119:1,7 122:18
admins 42:7,9
45:12,12
admitted 77:6
77:14
adv 1:4
advance 44:7
115:25
adversaries
84:19
adversary 17:15
61:18 65:13
79:18,21 80:19
106:24 113:23
adverse 86:22
advisor 6:3
advisors 27:22
113:19
advisory 27:17
113:7
aff'd 125:11
affect 89:1,2
affidavit 13:11
affiliate 66:2
affiliated 66:19
affirm 30:24
31:24
afternoon
100:18 115:6
agenda 27:4,5
28:22 32:4 34:6
92:9 128:25
agent 8:3 16:3
16:16
aggregate 35:15
84:2

aggressively
128:9
ago 36:2 44:22
62:17
agree 33:17
49:18 59:9
93:19
agreeable 69:1
agreed 39:18
42:23 43:3
55:20 75:1,2
98:8 103:19
115:18,24 117:4
128:11
agreeing 55:23
agreement
39:24 42:22
43:24 45:22,25
48:17,23 51:14
55:12 64:2
70:22 71:11
74:16 78:3
84:13 111:4,6
112:12 116:14
116:25 130:1
agreements
17:19 42:20
98:1 101:19
127:20
ahead 38:14
53:24 78:10
111:9
akin 5:2,7,23
19:8 29:1 42:4
60:16 61:22
67:18 103:9,11
103:11,12,15
105:18,21
114:10 116:14
117:4 123:13

[akin - apply]                                                                                    Page 5

124:6 128:16
**al** 1:8,12,15 6:4
13:8 14:9 17:16
17:16 27:4
**alan** 21:23 50:3
50:6
**alex** 25:18
**alexander** 16:17
25:15
**alindogan** 24:14
**alleged** 29:14
**allow** 28:20 40:9
54:3,5 59:4
124:24
**allowance** 3:3
3:11 4:3,11 5:4
5:11 6:5,10 7:4
7:10 8:11 9:4,10
10:2,19 11:13
12:7,17 118:20
**allowed** 29:9
38:20,25 39:2
40:20 43:5
47:25 48:6
49:24,25 50:17
73:18 101:15,17
102:5 118:7,9
121:22
**allowing** 93:5
**allows** 78:4
**allyson** 23:17
**alter** 51:6 89:20
**alternative**
15:20 93:10
**alternatives**
127:24
**alvarez** 113:10
**amended** 27:4
28:17 35:15
89:18

**amendment**
71:20
**amendments**
71:9 74:11
**america** 19:10
92:12
**ames** 125:6
**amount** 39:4,5,6
39:19,23 40:5
40:13 43:5 49:8
49:9,12 51:12
59:23 76:18
84:3,4 85:24
95:19 98:2,14
99:24 100:5
101:19 103:24
106:15 114:22
124:9,18 126:1
**amounts** 39:14
39:15,16,18
40:4,14,22 41:2
46:13 78:9
95:11 98:8,13
98:18 101:22
102:7 106:7
126:2 128:21
129:16
**amply** 90:18
**amw** 15:10
**analysis** 62:22
83:17 108:20
128:7
**analyzed** 81:10
**analyzing** 63:22
**anderson** 81:4
**andrew** 21:14
24:1,3,4 25:10
25:14 47:4
53:23 54:18
56:12 75:7

**andrews** 15:10
**angelika** 125:10
**anker** 20:20
68:19,19
**anne** 24:15
**answer** 29:1
32:12 44:9
47:10 48:25
66:1 67:13 94:4
108:4
**answered** 110:9
**answers** 69:12
**anticipated**
123:8
**anxiety** 50:9
**anybody** 54:6
106:13
**anymore** 74:3
87:18 90:7
**apocalypse**
61:16
**app** 113:10
**app'x** 82:14
**appeal** 33:11
37:18 45:6
56:14,18 74:13
87:11,14
**appealed** 35:18
119:17
**appeals** 48:12
81:14,22 84:21
**appear** 72:10
74:5 98:23
105:19 129:2
**appears** 72:10
**applicability**
83:15
**applicable** 74:21
126:2

**applicant** 97:10
126:17
**applicants** 98:23
110:23 111:3
124:4
**application** 3:1
3:2 4:1,2 5:1,2
5:23 6:1,2 7:1,2
8:2 9:1,2,20
10:12,13 11:6,7
12:1,12 15:18
92:20 93:4,14
94:7 95:19 97:2
101:23 103:24
105:4 106:9
112:14 113:2
116:16 118:6,8
118:9 130:3
**applications**
3:10,17 4:10,17
5:10,18 6:9,17
7:9,17 8:10,18
9:10,17 10:2,9
10:18 11:3,12
11:20 12:6,16
40:23 97:7,9,11
97:14,19,20,23
98:1,25 105:3,9
108:21 110:5,17
110:21,24 111:1
111:7,13,20
112:6 114:9,10
114:12,15 118:2
120:17 123:13
123:18 124:4,5
127:4,13,22
128:20 129:7,8
129:18
**apply** 95:7
122:8

appointed 123:14

appointing 97:1

appointment 94:18 110:18,19

appreciate 53:17 56:7 70:20 95:4 96:9

approach 96:13 125:25 126:21 127:25 128:2

appropriate 63:18 68:6 127:1

appropriately 37:25 106:11

approval 28:6 28:24 29:2,18 31:6 54:5,11 58:10,13 60:20 77:7,15

approve 16:20 17:1,17 68:1 77:11 81:6 87:3 88:18 91:5 116:23

approved 29:23 49:1 54:3,11 56:24 81:16 86:24 89:25 92:13 101:20 118:10 126:1

approves 33:5 77:18

approving 17:19 56:10 65:4 78:6

argue 41:19 42:2

argued 55:10 80:21

arguing 83:2

argument 87:16 89:19

arguments 48:6 63:7

arm's 81:25 85:1,8

aron 108:1 109:21 118:3

arose 119:8

arrangement 13:6,14 14:6,16 14:24 15:8 16:7 17:11 107:18 116:13

articulate 126:3

articulated 32:25

aside 40:3 49:8

asked 47:12 66:6 128:9 129:9

asking 67:22 72:3

aspect 56:8 64:7 65:3 70:12 71:2 71:4 88:15

asserted 33:19 33:25 39:4,6 84:2

assertion 118:21

assertions 119:4

assessments 84:7

assets 40:6 76:18 78:22 79:3 80:9 90:12

assignment 80:14

association 16:2 16:10,15 20:2

assume 85:19 114:3

assumes 37:20

assuming 46:24 47:24 49:1,10 49:19 66:2 72:4 75:23 94:20 107:23 124:1

assurance 114:24

attached 100:20 104:1

attachments 12:3

attend 119:24

attendant 125:18

attorney 18:12 18:19 19:2,9,19 20:2,9,16 21:2 21:19 22:2 121:14 125:15

attorneys 3:3 4:3 18:4 21:10 27:18 126:10

attributed 68:8

aufhauser 24:15

august 1:22 31:5 31:9 32:4,7 101:24 102:6 105:9

authorities 90:24 98:22

authority 92:11

authorize 13:1

authorized 90:3 126:10 129:10

authorizing 13:4,13 14:4,14 14:23 15:6 16:6 16:13 17:9,20 79:7 93:6

availability 47:12

available 29:25 39:17 40:1,4 47:21 128:14

avenue 18:5,13 19:3,20 20:10 95:16

avoid 33:14 42:15 57:1 95:25

avoiding 34:4 126:13

awaited 28:6

award 92:22

awarded 124:10

awards 127:6,9

aware 49:22 56:13,22 63:6 79:8 109:4 129:11

**b**

b 2:1 12:3 15:17 24:17 25:11 33:7,19 35:5 37:11 45:5 48:6 51:9 59:19 71:14,15,18 86:6 88:17 89:11 91:5 92:21,21 93:9,9 93:10 95:9 119:1

**b.a.p.**  126:19
**b.r.**  82:9 90:22
  94:12,13,25
  95:15,16 125:10
  125:11 126:6,14
  126:19 127:7,8
**back**  34:3 67:24
  73:1 77:22 78:4
  109:25 113:20
  121:9
**background**
  30:19 36:1,22
**bailiwick**  66:4
**balances**  41:1
**ballard**  9:3
  18:18 100:19
  103:5
**bane**  24:16
**bank**  19:10
**bankr**  82:9
  90:23 94:12,14
  95:1,16 125:11
  126:15
**bankruptcy**  1:1
  1:18 2:3 13:3,4
  14:3,4,13,14,22
  14:23 15:5,6,22
  16:5,6 17:8,9
  71:19,22 72:2
  77:7,15 80:23
  80:24 81:6
  83:14 88:17
  92:21 118:23
  119:17,21 124:8
  127:5
**bar**  67:3,7,23
  68:1,5 87:17,21
  88:5,6,12
**bargaining**
  81:25 85:2

**bartels**  22:12
  30:7,11,14,18
  30:18,22 31:1,3
  31:4,11,17,20
  32:2 63:14
**bartley**  22:13
**based**  31:15
  35:12 38:5 81:9
  83:6 89:19
  91:19 95:20
  119:22 120:10
  121:3,4,6,13
  124:1,20 125:4
  125:21 126:25
**basically**  53:16
  71:10 72:24
  79:9 118:7
**basis**  35:10
  36:22 51:18
  59:10 68:5
  75:21 76:13,23
  76:24 84:14,16
  105:24 106:15
  111:14 116:16
  116:17 119:10
  120:16 123:4
**basket**  52:12
**basta**  22:14
**battaglia**  21:18
**bayou**  94:15,25
  95:15
**bears**  126:17
**beginning**  80:18
  114:23 116:1
**behalf**  3:14,18
  4:13,18 5:13,18
  5:24 6:12,17
  7:12,17 8:13,18
  9:12,17 10:4,9
  10:21 11:3,15

11:20 12:9,19
13:7,16 14:7
15:9,16,25 16:9
16:17 17:12
21:2 41:22 47:5
50:6 54:19
60:17 66:13
67:18 68:25
70:16,19 92:24
100:19 103:16
114:18 118:4
128:24
**belabor**  60:21
**belief**  35:10
  83:25 88:8
**believe**  28:5
  31:14 32:15
  33:21 34:4
  44:21 51:23
  57:9 67:4 68:3,5
  84:20 86:19
  88:4 97:1 98:9
  105:18 114:18
  119:17,18
  127:14 128:24
**believed**  125:16
**bench**  13:6,14
  14:6,16,25 15:8
  16:8,14 17:11
  120:3
**beneficial**
  124:15
**beneficiaries**
  41:13 48:8
  73:13
**beneficiary**
  48:12,15,21
  51:25
**benefit**  45:4
  69:22 73:12

125:1,13,17
**benefits**  52:6
  81:13 118:25
**benefitted**  33:22
  64:1
**benzija**  21:18
**bereft**  35:11
**berkowitz**  25:21
**bespoke**  63:8
**best**  51:24,24
  81:8 85:25 87:2
  129:2,5
**beyond**  29:25
  33:16
**biddle**  19:1
  92:24
**bifurcate**  72:20
**bifurcated**
  105:23 107:17
**big**  127:15
**bill**  22:11 23:12
**billing**  96:7
  126:22 127:1,19
**billion**  73:14
  84:4 98:18
**bills**  105:19
  126:22
**bilter**  24:17
**bimkrant**  24:18
**biswas**  24:19
**bit**  45:17 64:8
  69:10 91:6
  106:16
**blackline**  76:6
  76:11 77:6
**board**  27:23
  74:9,17 77:5,16
  90:2,7,9,10
  128:1

**bockius** 20:8
**boey** 20:13
  66:12,13
**boil** 73:24
**boots** 46:1
**boylan** 90:22
**brad** 25:9
**brain** 91:16
**brand** 60:7
**brauner** 19:16
  62:12,16 67:15
  67:17,18 103:15
  103:15 106:20
  106:21 107:2,4
  108:5,5,9,11
  112:18,20,24
  113:1 114:2,5,7
**breadth** 81:23
**brian** 17:12 19:6
  22:7,10 23:9
  24:5 27:16 30:8
  31:22 36:12
  70:15 92:23
**brianna** 24:17
**brief** 60:23
**briefly** 94:1
**bring** 61:3 62:2
**bringing** 28:18
  34:3
**brittany** 23:13
**britton** 22:15
**broadway** 18:20
**broker** 70:21
**brookfield** 22:3
**brooklyn** 95:16
**brought** 79:18
**bruice** 25:21
**brunswick**
  22:16

**bryant** 19:11
**build** 69:8,24
**bulb** 59:13
**bunch** 42:16
**burden** 126:17
**burnham** 82:9
  126:14
**business** 58:24
**businesspeople**
  85:10
**bust** 72:19

**c**

**c** 12:3 15:20,21
  18:1,9 22:25
  24:7 27:1 33:19
  45:2,3 48:5
  59:19 89:8
  131:1,1
**calculated**
  103:23
**calculation**
  40:25
**calendar** 97:6
  120:2,7
**called** 79:19
**calls** 46:14
**camera** 95:25
**canvass** 82:11
**cap** 76:20 129:9
  129:14
**capable** 85:2
  123:21
**cards** 120:25
**care** 98:9
**carl** 14:19 21:19
  39:10 50:7,14
  93:12
**carolina** 30:19

**carroll** 87:25
**carty** 22:17
**case** 1:3,4 30:2
  34:21 51:20
  61:23 64:17
  67:5 79:4 81:9
  86:7,10,25
  89:17 93:1,23
  94:10,10,11,12
  94:15 95:5
  98:14 100:23
  103:17 106:8,10
  111:13 112:2
  113:19 115:8,14
  115:14,17
  120:12 121:25
  123:14 124:2,4
  124:16 125:3
  126:20,24
  127:23
**caselaw** 67:25
  87:22
**cases** 28:4,7
  29:5,15 41:6
  51:11 52:9
  61:18 67:21
  73:3 79:8 80:18
  82:17 87:25
  90:24 93:9
  94:14 101:22
  118:15 123:16
  123:18 124:22
  124:22 125:23
  125:23
**cash** 32:13 34:3
  35:20 36:23,24
  38:6,18 39:3
  40:6 41:1,16
  43:17 49:7 61:4

**cast** 100:15
**casteel** 66:8
**category** 73:17
**cause** 71:19 72:4
  72:4,17 74:20
**causes** 33:25
  62:23 63:10
**causing** 86:16
**caveat** 65:2 95:6
  95:8
**cede** 34:9 60:14
**cells** 91:16
**certain** 17:19,20
  28:24
**certainly** 44:25
  58:7,10 59:2,5
  59:17,20 69:2
  80:19 91:4,22
  92:8 98:3,10,24
  116:23
**certainty** 42:21
**certified** 131:3
**cetera** 65:10
**chambers** 120:8
**chance** 95:21
**chances** 125:18
**change** 31:10
  32:8 48:21 49:8
  50:20 55:16
  74:6 75:20 76:2
  89:1,22
**changed** 67:6
  77:20
**changes** 45:1
  48:3 71:10,21
  73:24 89:22
  90:21 128:17,23
**chantelle** 3:18
  4:18 5:18 6:17
  7:17 8:18 9:17

10:9 11:3,20
**chapman** 19:15
29:24 61:25
85:13,20 106:22
113:11,13,13,16
113:18
**chapter** 28:7
61:18 67:21
80:1 82:17 86:7
86:10,10,25
93:8
**charge** 76:25
126:1
**charged** 124:13
124:21 125:22
**charlotte** 30:19
**chart** 99:12,15
99:18 100:13
101:3 102:9
103:5,22,25
104:3
**charts** 100:20
104:1
**check** 78:22
79:5,11
**cherington**
22:18
**chicago** 20:4
**chicken** 54:1
**choice** 83:14
**choose** 92:1
**christopher**
22:17 25:12
**chunks** 40:15
**cir** 82:14,15,22
87:24 88:11
125:7 126:6,19
**circuit** 33:11
35:18 47:22
55:9,11 56:15

56:17,19 57:5
67:25 81:10
87:9,22
**circumstances**
63:17 89:6,10
89:10 90:13
91:3 125:6
**cited** 90:24
94:15
**citron** 19:18
**claim** 15:15
29:13 34:15,15
34:24 35:17
36:19 39:6,10
41:16,22 43:5
47:24,25 48:1,2
48:7,19 49:12
49:24 50:17,21
51:7,7,8 61:12
72:9 73:5,6 83:5
93:6,15,18 94:2
94:9 118:15
119:3,4,5
120:11 121:10
121:11,21
122:10 123:4,5
**claim's** 93:16
**claimant** 29:14
**claimants** 19:2
42:11 43:3 61:9
63:25 92:20,25
94:19 98:19
**claims** 5:21
15:19,22 21:2
29:10 33:7,18
33:22 35:4,5,5,6
35:6,22,25 36:5
36:8,18,20,25
37:24 38:20
39:1,5 40:10,12

41:5 43:16
44:22 45:13
50:22 52:8,20
59:23 65:13,15
71:12,13,14,14
71:15,15,15,16
71:16,17,23,23
72:7 73:12,14
73:17 78:8
79:18,24 80:9
83:5 84:2 85:7
93:3 108:18
114:25 116:5,12
118:15,20,21
119:5,5,7,7
121:24 122:19
122:19 123:8
128:6,8
**clarification**
44:25 65:11
100:18 112:20
112:24
**clarified** 48:20
61:7
**clarifies** 67:1
**clarify** 46:18
109:22 110:3,4
**clarifying** 48:9
**clear** 38:10
45:23 47:24
48:2,10 50:12
50:13 54:23
60:22 71:5 72:5
84:11 87:1
88:20 91:18
95:25 108:22,25
113:4,14 117:9
119:3 122:16
125:20 128:2,2

**clearly** 36:6
39:1 80:10 83:6
84:20 85:1 90:8
126:24
**client** 59:3 68:25
115:16 116:8
126:23,25
**clients** 126:24
**close** 111:15
**closely** 105:18
**cod's** 82:19
**code** 13:3 14:3
14:13,22 15:5
15:22 16:5 17:8
83:14 88:17
89:14,15 92:21
95:8 118:23
124:8 125:20
**collapsing** 83:16
**collateral** 16:3
16:16
**colleague** 85:12
85:13
**colleagues** 28:25
47:8
**collectability**
63:17
**collecting** 81:16
**colloquy** 89:19
**color** 105:22
106:23
**column** 101:16
103:19 104:3,12
**columns** 101:13
103:7
**combined** 8:4
**come** 30:3 38:4
43:19 47:16
63:23 76:8
130:3

comes  86:3
comfort  85:24
comfortable
  42:9 68:12 70:4
  70:7 74:22 78:6
coming  38:18
  46:3 104:24
comma  77:8
commensurate
  124:18
commentary
  95:6
comments  36:12
  48:9 60:23
  64:15 111:2
commitment
  64:16
committee  5:3
  6:3 7:3 13:2,7
  13:12 14:2,8,12
  14:20 15:3 16:3
  16:12 17:6,18
  19:9 28:23 31:6
  35:3,3 52:7
  60:18 62:9 65:1
  67:18 74:2
  78:25 79:7,15
  81:3 83:10 90:3
  94:9 103:16
  105:21 107:6
  108:4,6 113:9
  113:22 129:9,11
committee's
  84:12
committees
  107:23
common  68:9
company  15:13
  19:19 82:15
  88:10 126:19

127:7
company's
  36:23
comparable
  126:2,2
comparably
  124:21 125:22
compared  68:2
comparison
  98:17
compensation
  3:1,4,11 4:1,4
  4:11 5:1,4,11
  6:1,5,10 7:1,4
  7:10 8:11 9:1,4
  9:10,21 10:2,12
  10:14,19 11:6,8
  11:13 12:1,7,12
  12:17 76:16
  101:21 107:16
  124:10,20,21,25
  125:21,22
  126:18
competency
  65:9 81:20
complete  31:19
  32:17
completely
  109:12,17
  111:16
completing
  121:14
completion
  124:16
complex  30:2
  63:11 81:15
  83:10 84:10
  98:14 127:23,24
complexity
  124:18

compliance
  74:20
complicated
  62:1 63:1,4,7
complied  102:1
complies  82:19
compliment
  62:12,15
comply  101:12
component  54:4
comprehensive
  79:17,17
comprise  80:9
compromise
  17:17 28:12
compromises
  70:20 80:22
comptroller
  15:16
conceivably
  117:3
concept  47:13
concern  50:10
  86:4 93:14,22
  126:13
concerned  34:19
  59:8,20 73:24
  83:9 102:9
  103:7 106:20
concerns  32:24
  36:13 123:23
concessions
  128:5
conclude  64:14
  87:21
concluded
  127:20 130:8
concludes
  128:25

conclusion
  63:23 84:18,20
conclusively
  77:9,16
condition  43:25
conditioned
  54:11
conduct  82:4
  90:3
conference
  69:16 70:3
confidence
  60:10
confidential
  111:14,17
confidentiality
  109:2,16
confirm  38:16
  40:17 46:20
  67:4,14
confirmation
  34:22 42:21
  43:13 45:7,9,25
  80:13 82:16
  89:15 90:1,3
  115:9
confirmed  67:8
  68:4 71:7 79:25
  86:8 88:16,19
  91:7
conflicts  7:3
cong  90:25
congratulations
  96:15
congress  90:25
  119:6 124:8
  126:13
conn  126:7
connection
  27:19 32:6

33:19 60:20
62:5 63:3,7
89:25 105:20
106:23 111:1
**cons**  128:3
**consensual**
62:11,18
**consensus**  62:1
**consent**  29:11
38:22 94:2
**consenting**
52:19
**consider**  31:18
56:6 65:9 95:13
124:10
**considerable**
85:24 86:4
**consideration**
125:17
**considerations**
82:23
**considered**  88:5
124:3,5
**considering**
56:9
**consistent**  36:16
102:23 109:12
109:17 126:20
**consolidated**
79:21
**constituents**
38:23 46:1
53:17
**constitute**  77:9
77:17 83:12
**constructive**
62:5
**construed**  87:25
**consultation**
52:23 75:1

**consulting**  6:2,7
**consummated**
71:5 88:20,22
88:25
**contained**  48:23
**contemplate**
40:15
**contemplates**
36:4
**contemplating**
53:1
**context**  84:7
86:15 106:7
116:11
**contingency**
84:14,16 105:24
107:18 116:13
116:13,17 117:1
117:10
**continue**  33:12
90:9
**continued**  84:23
**continues**  48:11
**continuing**
107:9
**contract**  98:21
**contribution**
67:3,7,23 68:1,5
87:17,21 92:22
93:8,18 94:9
95:11 130:2
**contributions**
93:23
**contributory**
111:22
**convenience**
73:15
**converted**  86:25
**cooper**  126:5
127:2,11

**cornish**  22:19
**corollary**  126:8
**corp**  126:6
127:8
**corporation**  1:8
1:12 3:14 4:14
5:14 6:4,13 7:13
8:14 9:13 10:5
10:22 11:16
12:10,20 13:8
14:9 15:25
17:16 27:3
**correct**  37:16,18
37:22 43:10
44:17 48:16
50:16 58:15
84:24 103:1,16
104:12 107:2,4
113:17 114:5
116:18 117:15
117:17,19,24
**correcting**  17:1
**correctly**  44:20
63:24
**corresponded**
119:14
**cost**  65:9 86:9
125:19 128:10
128:12
**costly**  34:4
**counsel**  5:3 7:3
9:3,22 27:10
32:12 66:1,10
81:20 83:10
85:2,3,9 106:13
114:20 115:7
116:5 129:9
**counted**  40:22
**counterparties**
98:21

**countless**  64:17
**country**  131:21
**country's**  98:20
**couple**  28:16
31:14 36:11,21
42:8,18 47:18
65:10,16 69:18
74:7 111:21
112:5
**course**  41:7
59:18 61:23
70:19,23 123:5
**court**  1:1,18
27:2,8,14,21
28:2,7 29:23
30:10,13,15,21
30:23 31:2,4,12
31:18,21 32:2
32:10,19 33:5
34:10,24 35:24
37:2,5,8,11,14
37:17,23 38:12
38:14 39:8,10
39:13 40:18
41:14,18,24
42:1,15,24 43:6
43:8,11 44:13
44:15,18 45:18
46:8,10,12,23
47:1,3,6 48:4,14
48:24 49:4,6,14
49:16,19,21
50:2,5,18,20,24
51:1 52:2,12,21
52:25 53:3,5,8
53:13 54:8,16
55:2,14,17,22
56:13 57:2,4,15
57:22,24 58:1,3
58:9,12,14,16

[court - daluz]

| | | | |
|---|---|---|---|
| 58:19 59:1,7,16 | 114:8 115:4,22 | **credit** 68:8 | **cut** 78:11,11 |
| 59:19 60:6 | 116:9,22 117:8 | **creditor** 52:6 | 123:1 |
| 64:20 65:7 66:5 | 117:11,14,16,18 | 90:8,20 94:18 | **cutler** 20:15 |
| 66:10 67:1,22 | 117:20,22,25 | 115:12 | 68:20 |
| 68:1 69:5 70:17 | 118:11,13 | **creditors** 5:4 6:4 | **cyrus** 21:10 |
| 70:23 71:1,19 | 119:10,13,14,19 | 7:4 13:2,8,12 | 28:19 29:14 |
| 71:22 72:2,16 | 119:20 120:20 | 14:2,8,12,21 | 32:24 33:6,12 |
| 72:22 73:23 | 120:23,25 121:8 | 15:4 16:4,13 | 33:18 34:16,17 |
| 74:2 75:5,10,12 | 121:10,16 122:4 | 17:7,18 19:9 | 35:14,17 37:17 |
| 75:15,17,19 | 122:6,8,16,23 | 28:23 32:25 | 40:2,13 41:9 |
| 76:3,5,11 77:3,7 | 123:1,10,17,19 | 35:3,11 42:13 | 44:6,24 45:4,5 |
| 77:15,18,22,25 | 124:10,24 125:9 | 52:7 60:18 61:9 | 45:10 47:5 |
| 78:13,17,19 | 125:20 126:1,3 | 62:9 64:4 79:16 | 48:11,14 50:14 |
| 79:12,14 80:10 | 126:11,21 129:4 | 81:17,18 84:12 | 51:4,7,8 52:1 |
| 81:6,21 82:4,6 | **court's** 28:5 | 84:22 86:5,13 | 53:16 54:1,11 |
| 85:24 86:15 | 29:18 36:13 | 86:14,21 89:21 | 54:19 56:7,11 |
| 87:24 88:12,17 | 57:23 59:21 | 115:11 116:3 | 57:18 58:3 61:1 |
| 88:23 89:12,25 | 82:11 84:11 | **criteria** 125:13 | 65:3 74:13 75:9 |
| 91:1,15,24 92:6 | 87:7 | **critical** 47:20 | 75:19 76:14 |
| 92:19 94:8 95:7 | **courthouse** | 80:13 82:20 | 78:6,10,11,14 |
| 96:2,4,11,18,21 | 15:24 | **critically** 39:22 | 80:6 87:5,8 |
| 96:24 97:4,13 | **courtney** 23:1 | 47:17 | 90:13 91:17 |
| 98:5 99:4,7,9,17 | 23:10,23 | **cross** 31:15 | |
| 100:3,5,14,22 | **courtroom** | 32:16 42:3 | **d** |
| 101:1,5,8 102:2 | 15:23 27:16 | **culmination** | **d** 2:2 3:18 4:18 |
| 102:8,14,18 | **courts** 67:25 | 61:17 | 5:18 6:17 7:17 |
| 103:2,4,9,11,17 | 81:10 88:5 | **cure** 93:21 | 8:18 9:17 10:9 |
| 104:4,6,9,11,14 | 125:24 127:4,5 | **current** 41:15 | 11:3,20 13:4 |
| 104:17,23 105:1 | **cover** 38:4 59:5 | 45:11 53:10 | 14:4,14,23 15:6 |
| 105:12 106:1,4 | 66:22 | 85:12 | 16:6 17:9 20:20 |
| 106:19,25 107:3 | **covered** 80:15 | **currently** 35:17 | 21:23 23:19 |
| 107:5,13,17 | 101:23 120:5 | 40:22 51:9 | 24:5 25:8 27:1 |
| 108:3,8,10,12 | 129:21,22 | 79:21 87:14 | 93:9 126:7 |
| 108:20,24 109:5 | **covering** 40:19 | 90:11 108:6 | **daluz** 18:23 |
| 109:7,9,13,18 | **craft** 16:18 | 119:18 | 100:10,15,17,18 |
| 109:20,23 110:6 | 114:11,20 115:7 | **cushion** 38:6 | 100:23 101:2,6 |
| 110:8,12,14,16 | 115:11 | 69:8 | 103:22 104:5,8 |
| 112:7,12,16,23 | **craft's** 114:21 | **customary** | 104:15,19 |
| 112:25 113:6,8 | **credible** 90:21 | 124:21 125:21 | 105:15,16 106:2 |
| 113:25 114:3,6 | | | 106:5 107:11,11 |

**[daluz - designee]**

108:22,25 117:5
**damages** 68:9
**daniel** 18:16
  24:12
**date** 17:1,21
  28:6,20 29:7,10
  29:15 33:2,5,10
  35:2,16 36:3,7
  36:17 37:10,12
  37:15,20,24
  38:11,19 39:17
  41:3 43:20 44:5
  44:7,11,23
  45:11,14 46:7
  46:22 48:2 52:5
  52:10 53:2 54:9
  57:20 58:8
  60:11 61:6 62:3
  63:24 69:15,25
  71:18,19,21,22
  71:23,24,24
  72:2,11,12,17
  78:7,25 80:1,3
  90:6,15 93:15
  93:20 115:25
  116:3 118:25
  131:25
**dated** 31:5 32:4
  118:17
**david** 15:24
  19:23 24:2
  115:6
**davidoff** 19:18
**day** 63:16 68:22
  71:21 85:23
  96:15
**days** 29:16,19
  53:7 54:9,13
  58:9,17,23,24
  62:21 64:24

71:18,24 84:25
  118:25
**dc** 21:5
**de** 106:7
**deadline** 105:9
  106:9
**deal** 78:6,11,11
  114:20 120:8
  123:17 127:9
**dealing** 49:10
  66:8 107:20
  114:22
**dealt** 114:22
**dean** 19:15
  106:22 113:13
**debt** 16:21 17:2
**debtor** 18:4
  27:11 48:5
  88:18 89:20
  106:10 107:6
  122:10
**debtor's** 83:21
  125:2,25
**debtors** 1:10 3:3
  4:3 8:3 13:5,13
  14:5,15,24 15:7
  15:19 16:7
  17:10,17 27:16
  27:19,22,23
  28:23 29:6,7,8
  30:5 31:6 32:12
  32:12 33:7,17
  34:2,3 35:4,10
  35:23 36:23,24
  38:5 41:15
  43:20 51:22
  55:20 57:18
  59:25 64:4
  72:19 73:8,11
  79:15,25 80:10

84:13 85:3,15
  87:5 93:6,11
  98:18,20 100:7
  101:24,25
  106:13 107:8
  118:14 127:25
  128:24
**debts** 84:1
**decide** 120:9
  122:10
**decided** 59:24
  128:10
**decision** 33:12
  47:22 56:15,20
  56:23,25 66:20
  66:21 81:5
  86:22
**decisions** 126:9
  127:17
**declaration** 30:7
  30:8 31:5,9,16
  31:22 32:3,14
  63:13
**declarations**
  30:6,11 94:6,23
**deducted** 104:7
**deemed** 77:9,17
**deep** 62:23
**defend** 73:12
**defendant** 65:23
  66:14,23 79:9
**defendant's**
  68:9,11
**defendants** 1:16
  20:16 65:19,22
  66:24 67:8
  68:21,22 70:5
  79:19,20 85:5
**defenses** 63:10

**defer** 106:22
**defined** 43:16
  80:6
**definitely** 67:13
**degree** 81:17
**delay** 57:12 73:1
  81:13
**delayed** 65:9
  86:22 87:12
**delays** 33:1
**deletes** 74:16
**delighted** 50:8
**deloitte** 10:13
  11:7 113:10
**demand** 16:21
  17:2 122:21
**demerits** 63:15
**demonstrated**
  89:6
**denied** 122:20
**deny** 120:21
  121:1
**department**
  125:6
**depending**
  47:21 58:21
  91:11
**depth** 35:8
  62:25
**described** 47:10
  85:14 86:21
  87:6 90:19
  91:18
**describing**
  100:13
**description** 42:5
**designed** 36:15
  48:4
**designee** 106:5

designees  60:18
  63:13 65:1
  67:19 74:1
  113:23
desire  32:15
detail  110:1
  117:6
detailed  64:12
  76:13,23 93:24
details  29:1
  33:24
determination
  95:21 121:21
determine  33:13
  72:16 91:2 95:3
determined
  84:18 123:5
determines
  120:9
determining
  81:5 95:6 124:9
  127:4,5
deutsch  12:2
devore  24:3
dialog  62:5
dialogue  98:2
dictate  62:24
dietrich  25:2
difference  99:24
different  66:21
  94:17 115:14
differently
  34:18
difficult  28:16
  83:11,12 123:17
difficulty  81:16
direct  31:8 32:6
directing  109:9
directly  57:7,8

directors  27:19
  27:24 81:24
disallowance
  122:18
disallowed
  35:17 40:21
  51:9 73:7,18
discharged
  105:7
disclosure  89:7
  90:17,23 91:2
discount  84:7
discovery  63:5
  128:7
discrepancy
  103:25
discretion  127:5
  127:11
discuss  69:21
discussed  34:12
  80:4 87:4 93:16
  116:1 117:12,13
  117:15 129:25
  130:1
discussing  74:14
discussion  90:22
discussions
  126:25
disgorgement
  102:21
dismiss  63:3
  69:18,23 80:20
  83:19
dispute  61:24
  62:10 91:25
disputed  29:9
  36:19 38:8 39:4
  39:20,20 40:12
  50:22 127:17

disputes  28:25
  34:2,7
disregard
  102:16,17
disrupt  56:19
dist  82:3 88:1
distr  88:13
distribute  74:19
distributed
  40:25 41:9
  49:21 55:4
distribution
  29:12 34:14,16
  44:5 45:2 56:8
  80:8 82:18
  84:22 86:23
  89:3 121:25
  123:7
distributions
  33:16 43:15,21
  44:24 45:23
  50:1 52:3 55:7
  57:20 58:4,8,11
  72:6,7 90:12
  91:17
district  1:2
  59:19,21,21
  87:24 88:11
dive  62:23
dizengoff  13:7
  14:7 19:14
  33:23 34:9,10
  60:13,15,16
  64:21 66:4,6
  92:18
doc  16:14,16
docket  49:3
  75:14
document  3:12
  4:12 5:12,24

6:11,15 7:11,15
  8:12,16 9:12,15
  10:4,7,20 11:1
  11:14,18 12:8
  12:18 13:15
  14:7,17,25 15:9
  16:8,17 17:12
  72:20
documented
  76:17
documents  5:16
  63:5 119:3
doing  60:1 69:2
  94:21 103:6
  107:1,23,24
dollar  106:15
dollars  73:14
  104:15,20
donna  25:4
don't  93:17
dorr  20:15
  68:20
double  78:22
  79:5,11
doubt  94:8
downs  61:23
dr  20:3
draft  91:9
  117:14
drafted  100:24
drafts  116:21
drain  2:2 27:3
drexel  82:8
  126:14
drinker  19:1
  92:24
driscoll  22:20
driven  125:24
  126:21

**drogin** 115:6
**dry** 35:11
**dubious** 69:19
**dublin** 5:8
**due** 15:24 56:4
  59:12,12 82:24
  84:1 92:14
  123:5
**duplicate** 96:6
**duplication**
  124:25 126:13
**duplin** 22:21
**duties** 48:8,11
  48:14,18,22
  76:7 94:20 97:5
  108:14

**e**

**e** 2:1,1 9:2 15:9
  18:1,1 23:14,21
  27:1,1 83:13
  124:19 131:1
**e.d.n.y.** 88:14
  95:16
**earlier** 34:21
  51:2 65:24 79:7
  87:5 112:1
  121:19,23
**earned** 118:25
**ecf** 3:8,14,19 4:7
  4:14,19 5:8,14
  5:19,25 6:7,13
  6:18 7:7,13,18
  8:8,14,19 9:7,13
  9:18,24 10:5,10
  10:16,22 11:4
  11:10,16,21
  12:3,10,14,20
  13:8,16 14:9,17
  14:25 15:13

16:10,18,22
  17:3,4,13 28:17
  30:7,8 58:25
  65:3
**eckhardt** 24:20
**ecro** 2:5
**editing** 114:14
**edward** 16:9
  20:6 22:23
  46:11
**effect** 51:20 54:6
  58:19 80:3
  93:21
**effective** 17:21
  28:6,20 29:6,10
  29:15 33:2,5,9
  35:2,16 36:3,5,7
  36:17 37:10,12
  37:15,20,24
  38:8,11,19
  39:17 40:9
  43:20 44:4,7,10
  44:23 45:11,14
  46:4,7,22 48:1
  52:10 53:2 54:9
  56:11,11 57:11
  57:20 58:8 59:5
  60:11 61:6,10
  62:3 63:24 71:6
  71:18,24 78:7
  78:10,25 80:1,3
  88:21 90:6,15
  93:15,20 115:25
  116:3
**effectively** 36:15
  62:20
**effort** 126:14
**efforts** 70:21
**egg** 54:1

**eighth** 3:16 4:16
  5:17 6:16 7:16
  8:17 9:16 10:8
  11:2,19
**either** 33:17
  37:24 41:19
  46:4 53:9 60:24
  66:7 91:11 99:9
  102:19 111:3
  116:2 119:16
  121:16,18
  129:20
**electronic** 88:10
  88:13
**element** 94:23
  95:10
**eliza** 23:20
**email** 65:17
**emailed** 92:16
**emanuel** 21:1
  41:22
**employee**
  122:25
**employees** 98:22
**employment**
  16:21 17:3
  121:5 122:2,22
  123:3
**enable** 29:8 36:7
  60:11
**ends** 70:5
**energy** 63:21
**engage** 33:13
**engaged** 29:25
**enjoy** 127:5
**enlighten**
  100:25
**enormous** 62:22
**ensure** 89:12

**enter** 65:3 68:24
  69:3
**entered** 57:17
  70:6 79:24
  91:11 92:15,17
  130:4,5
**entire** 109:15
**entirely** 89:17
  91:9
**entirety** 64:6
**entitled** 74:12
  86:6 94:9
  118:22,24
**entitlement**
  35:12
**entries** 96:6
**entry** 13:2,5,13
  13:13 14:2,5,12
  14:15,21,23
  15:4,6 16:4,6
  17:7,9,18 68:23
  69:25
**equitable** 81:8
  82:8
**equities** 88:4
**equivalent**
  113:9
**eric** 5:24 21:15
  25:9 47:8
**erica** 24:13
**erika** 21:7 41:21
**error** 104:16
**escrow** 47:19
**esl** 20:16 56:16
  68:21 71:14,16
  71:23
**essentially**
  73:24 74:16
  94:17

[established - fact]                                                                 Page 16

**established** 80:2
**estate** 15:18
  34:3 70:21 81:8
  84:13 85:3 86:1
  87:3 105:17
  113:19 125:2,17
**estate's** 51:6
**estates** 13:5,13
  14:5,15,24 15:7
  16:7 17:10 61:5
  61:14 62:2 64:4
  80:10
**estimating**
  15:22
**et** 1:8,12,15 6:4
  13:8 14:9 17:16
  17:16 27:4
  65:10
**ethical** 126:12
**evaluated** 65:2
**evaluating**
  81:11
**evan** 15:25
**event** 93:19
  124:3
**eventual** 83:24
**everybody**
  111:23
**everybody's**
  103:24
**evidence** 30:5
  111:17
**evidentiary**
  83:20
**exactly** 43:12
  48:16 54:20
  103:1 104:8
**examine** 32:16
  42:3

**examiner** 3:18
  4:18 5:19 6:18
  7:18 8:19 9:2,3
  9:6,18 10:10
  11:4,21 18:19
  96:13,25 97:24
  98:3 99:12
  100:19 103:20
  105:7 108:14,15
  109:10 110:2,18
  123:14,20,21
  126:21 127:15
  129:18
**examiner's** 3:16
  4:16 5:16 6:15
  7:15 8:16 9:15
  10:7 11:1,18
  107:19 110:20
**examiners**
  123:15,24
**examining**
  31:15
**example** 74:15
  89:3 96:5 99:19
  125:10
**exceed** 76:18
**exceeding** 84:4
**excellent** 27:6
**excess** 38:6
  101:22 102:7
**excessive** 126:4
**exchanged**
  116:21
**exculpation**
  77:5
**excused** 92:8
**executed** 116:15
  116:25
**exercising** 63:22

**exhibit** 12:3,3,3
**exhibits** 106:2
**exist** 123:11
**existence** 56:16
**expect** 29:15
  69:12 105:6
**expected** 40:4
  106:25 126:23
**expedite** 28:20
**expense** 3:17
  4:17 5:18,21
  6:17 7:17 8:18
  9:17 10:9 11:3
  11:20 21:2 35:4
  38:20 41:22
  43:16 71:14
  72:8 74:5 81:14
  86:9 93:3
  118:22 119:2,7
  122:18
**expenses** 3:5,7
  3:11 4:5,6,11
  5:5,6,11 6:5,7
  6:10 7:5,6,10
  8:4,11 9:6,11,23
  10:3,15,19 11:9
  11:13 12:7,17
  37:23 38:7
  40:19 41:6,12
  93:7 105:20
  114:4,6 128:16
**expensive** 63:19
  84:10 128:19
  129:12
**experience**
  61:21 81:20,21
  85:9 127:9
**expert** 112:21
**experts** 113:22
  128:13

**explain** 72:13
  113:24
**explained**
  118:18
**explanation**
  101:10,11
**explore** 35:8
**express** 77:7,15
**extant** 121:10
**extend** 69:1
  72:17 73:15
**extended** 72:11
  72:20,24 123:18
**extending** 73:17
**extension** 70:7
**extensive** 60:19
  128:6,7 129:12
**extent** 35:13
  55:3 60:19
  81:24 83:13
  123:11 124:11
**extra** 86:20
**extraordinary**
  28:15 98:13,16
**eyers** 24:21

**f**

**f** 2:1 25:24
  82:14 131:1
**f.2d** 82:15 87:24
**f.3d** 82:22 88:11
  125:7 126:5
  127:3,12
**faced** 88:23
**faceted** 30:2
**facilitating**
  52:10
**fact** 35:1 44:3,22
  52:5 56:3 60:11
  71:1 72:5 73:2

**[fact - final]**                                                                Page 17

73:10 87:13
88:21 89:17
94:16 103:22
105:19 126:16
127:8 129:15,17
**factor** 82:1 86:2
**factors** 65:8
81:10 124:12
127:21
**factory** 15:13
**facts** 127:18
**factual** 83:18
**faegre** 19:1
92:24
**fail** 3:13 4:13
5:13 6:12 7:12
8:13 9:12 10:4
10:16,21 11:10
12:9,19 18:8
27:12,13 38:13
38:15,15 39:9
39:11,14 40:24
41:19 42:2
43:22 44:19,21
46:14 51:21,21
52:3,15,22 53:2
53:4,12,22,24
53:25 54:20
58:24 62:8,15
67:11,15 72:15
72:18,18,23
74:1,25 75:14
76:4,10 86:8
100:2,4,6,7,24
101:9,11 102:3
102:13,16,23
103:8,10 104:10
104:13 107:8,14
108:19 111:21
129:25

**fail's** 41:15
**fair** 81:7 82:8
85:25 87:2 98:9
114:22 115:19
**fairly** 49:21
**faith** 33:13
126:11
**faithfully** 47:9
**fall** 52:13 119:6
123:3
**falls** 82:12 94:10
**familiar** 93:25
**familiarity**
80:16
**fan** 123:15
**fantastic** 62:8
**far** 34:19 49:6
53:19 59:7,20
72:5 73:14,23
83:8 84:23
102:8 103:6
105:14 106:19
121:11 129:19
**fashion** 15:11
**faster** 29:18
**favor** 59:24 88:5
88:7
**favored** 80:24
**february** 8:5,7
**fee** 3:6,16,17,18
4:6,16,17,18 5:2
5:6,16,17,19,22
6:6,15,16,18 7:2
7:6,15,16,18 8:1
8:1,5,6,16,17,19
9:2,3,6,6,15,16
9:18,23 10:7,8
10:10,13,15
11:1,2,4,7,9,18
11:19,21 12:6

12:16 18:19
40:23 84:14,16
95:3,7 97:7,8,23
98:3 99:10,12
99:14 100:21
101:9 102:16
103:20,24 104:1
105:2,4,7,8,24
106:9 107:18,19
108:14 110:1,5
110:18,19 111:1
111:4,13,20
113:1,10 114:9
114:15 116:13
116:13,16,17
117:10 118:2
120:17 123:13
123:14,15,17,20
123:24 126:21
126:25 127:6,9
127:15 128:20
129:17,24
**feedback** 109:1
**feel** 58:6 97:4,24
**fees** 41:7 93:7
97:6,9,16 99:18
99:19,21,22,25
101:15 102:20
102:22 103:6,12
103:18,23 104:2
104:6,12 106:8
110:1 113:5
114:16 117:4
118:6,8,10
126:4 128:17
129:10
**feinstein** 7:2,7
99:20,21
**feld** 5:3,7,23
19:8 60:17

**fernand** 24:22
**ferry** 81:4
**fiduciary** 48:8
48:11 63:23
**fifth** 11:7 18:5
**file** 28:17 73:5,8
74:18 93:13
106:9 107:12
112:5,6 113:10
**filed** 3:7,13,18
4:7,13,18 5:7,13
5:18,24 6:7,12
6:17 7:7,12,17
8:7,13,18 9:6,12
9:17,24 10:4,9
10:16,21 11:3
11:10,15,20
12:2,9,13,19
13:6,15 14:7
15:9,24 16:8,17
17:12 30:6,7,8
32:21 41:5
42:16 49:2
51:17 67:6
69:19 71:17
73:4 75:13,14
75:21 80:20,20
82:25 87:9
97:19 98:5
110:25 111:13
118:15 119:19
121:10 122:10
123:4
**filing** 65:18
113:1
**films** 125:10
**final** 12:1,6,12
12:16 28:17
40:23 73:18
78:20 97:7,8,11

[final - general]

97:15,16,20
99:10,14 103:24
104:1 105:2,4,8
107:15 110:5,20
111:1,3,7,13,19
111:20 112:6,14
114:1,15 117:16
124:5
**finally** 83:24
90:16
**finals** 107:12
111:4
**financial** 6:3
75:2
**financing**
116:20
**find** 85:5
**findings** 91:4
**fine** 27:8 75:22
96:4,4 117:18
**finish** 55:22
111:22,23
**finished** 42:5
**firm** 76:25
105:17,17,18
112:21 125:5
126:23 127:1
**firms** 102:11
105:8,14,22
106:6 108:13
109:1 112:5,6
112:13 113:5,7
114:14,16
115:24 127:16
**first** 28:22 29:4
30:4 32:3 34:12
34:24 43:1 60:7
60:8 63:9 67:4
69:24 71:10
73:9,17 78:5

79:16 82:24
88:25 114:21
115:8 118:9,13
**fischer** 22:22
24:23
**fix** 77:21 95:19
**flipping** 78:3
**floor** 18:13,20
19:3 20:17
**flow** 46:22
**fochier** 15:12
**focus** 34:11 38:1
47:13 71:9
125:7
**focusing** 35:19
**follow** 53:9 61:8
**followed** 97:7
**following** 33:12
38:17 59:17
81:10 118:13
**foot** 104:11
**footnote** 102:10
**footnotes** 129:25
**foregoing** 131:3
**form** 32:21
48:14 101:12,16
102:1
**formation**
129:10
**former** 29:24
85:13,13
**formerly** 93:1
**forms** 79:16
**formulating**
82:5
**formulation**
68:7
**forth** 67:24
70:22 100:12
109:16

**forward** 107:1
108:14 118:5
**found** 106:12
**four** 72:25 73:16
98:15 104:20
**fourth** 9:20
10:13
**fox** 16:9 20:6
22:23 46:11,11
46:13
**fox's** 46:21
**frackman** 24:4
**framework** 81:9
**frankly** 29:25
55:19,24 80:17
87:18 94:20
98:15 99:1
106:7 117:1
120:18,20 121:1
126:21
**free** 79:9 85:21
97:24
**friedmann**
22:24
**front** 108:24
**fruition** 116:19
116:21
**fti** 6:2,7 102:11
113:10
**fulcrum** 94:1
**fulfilled** 90:2
**full** 40:11,20
41:2 83:6 84:16
86:6,13,13,16
86:18
**fully** 79:6
110:20
**function** 90:1,9
**functions**
113:18

**funding** 13:5,14
14:5,15,24 15:7
16:7,13 17:10
84:12
**funds** 15:19
29:10,21 41:4
41:11 46:21
50:15 51:25
59:4 61:8 66:18
**further** 33:14
34:4 39:22
77:25 80:5
91:20 111:8
115:21 121:11
127:22
**furtherance**
17:21
**future** 39:25
64:24 81:13
84:1

**g**

**g** 27:1
**gabriel** 22:16
**game** 50:11
**garment** 15:13
**garret** 51:21
**garrett** 3:13
4:13 5:13 6:12
7:12 8:13 9:12
10:4,16,21
11:10,15 12:9
12:19 18:8
27:11 38:15
72:18 100:7,8
**gary** 5:24 23:18
**general** 33:22
52:4 71:16,23
72:7,21 123:7

**generally** 90:21
123:15 127:22
**generis** 83:11
**gerber** 88:10
**getting** 27:25
29:23 41:11
62:11,19 73:21
78:10 99:18
111:22
**give** 70:6 82:7
105:21
**given** 35:8 46:17
59:23 68:11,12
72:1 80:16,25
87:20 88:3,7
90:14 109:4
125:7 127:8
128:11
**glitch** 65:25
77:4 79:1,9
**global** 34:1 82:2
112:1 115:9
**glueckstein** 24:5
**gnats** 127:13
**go** 27:5 33:23
34:7 36:5,7,22
38:8,14 40:2,2,9
53:24 58:6 59:5
59:13 60:21
70:2 71:10 80:3
92:8 98:6
109:25 111:9
128:18
**goal** 91:22
**god** 30:25 31:25
**goes** 62:14
101:23
**going** 28:6 36:19
37:7 43:24 44:5
44:7,8 45:8 51:4

51:10 53:5,25
54:6 56:5 57:19
58:7,11 66:7
72:8 73:9 75:23
76:25 78:4,12
99:9 105:4,7
107:1,1 108:14
109:25,25
122:23 123:1
**goldberg** 18:11
18:16 108:1
109:21,21,23
110:3,7,10,13
110:15 118:3,3
119:9,12,13
120:19,22,24
121:3,9,13
122:1,5,7,13,21
122:25 123:9
**goldberger**
108:1 114:18
116:10 119:24
120:20
**goldman** 65:22
65:24 66:3,14
66:15,17,23,24
**good** 27:2 33:13
38:15 42:1 45:2
50:14 60:15
61:24 64:3
66:12 67:11,17
92:3,23 100:12
100:18 115:5,16
126:3,11
**gorrepati** 24:24
**gotshal** 3:2,7 4:2
4:7 18:3 27:10
62:7 99:20
100:24 114:10
123:13

**gotshal's** 124:6
**gotten** 69:12
73:13
**governance** 80:2
**governing** 58:20
87:7
**granite** 94:11,24
**grant** 71:8 82:15
95:18 123:4
128:20
**granted** 53:15
83:20 94:7
98:25 118:16
119:23 121:20
127:11
**granting** 17:19
123:2
**great** 27:9 75:6
91:13,15 96:23
127:9
**greater** 68:8
**green** 88:1
**greenwich** 20:17
**griffith** 22:10
27:16 30:8
31:22,24 32:1,3
32:9,18 36:22
38:1,16 40:17
40:18 41:14,17
41:19 42:3 61:7
**griffiths** 36:12
**gross** 77:9,11,17
**grounds** 73:8
**groundwork**
62:19 111:8
**group** 19:2 35:7
66:14 82:9
92:20,25 93:1,7
93:23 94:16,21
94:25 95:15

113:20 126:14
**grows** 40:5
**guess** 37:25
76:14 107:21
108:15
**gump** 5:2,7,23
19:8 60:16
67:18 103:11,12
103:12,16
105:18,21
114:10 116:14
117:4 123:13
128:17
**gump's** 124:6
**gurgel** 24:6

### h

**h** 25:4 90:24
**h.k.** 115:11
**hale** 20:15 68:20
**half** 56:1 72:25
73:16 95:4
**halperin** 21:18
21:23 49:20
50:3,3,6,6,19,25
**hamroff** 9:22,24
**hand** 30:24
31:23 38:18
41:1 43:17
**handled** 105:21
**hanging** 49:22
**hannon** 23:20
**happen** 53:6
54:25
**happened** 62:22
**happening**
44:11
**happens** 127:10
**happiness** 64:24

| | | | |
|---|---|---|---|
| **happy**  27:5 | **hearing**  3:1,10 | **hi**  47:7 | 45:1,16,19 46:9 |
| 47:10 48:25 | 3:10,16 4:1,10 | **high**  35:11 | 46:11,20 47:4,7 |
| 60:5,12 75:3 | 4:10,16 5:1,10 | 85:19 101:11 | 47:11,12,19,19 |
| 94:4 97:17 | 5:10,16,21 6:1,9 | 128:10,12 | 48:17 49:1,1,13 |
| 101:6 106:12 | 6:9,15 7:1,9,9 | **higher**  84:3 | 49:18,18,20,25 |
| 111:24 | 7:15 8:1,10,10 | 106:16 | 50:3,23 51:21 |
| **harbor**  83:13 | 8:16 9:1,9,9,15 | **highlight**  64:5 | 51:23 52:16 |
| **hard**  27:25 62:4 | 9:20 10:1,1,7,12 | **highly**  53:13 | 53:4,7,22,23 |
| 62:14,23 | 10:18,18 11:1,6 | 121:24 | 54:18,22 56:12 |
| **harner**  9:2 | 11:12,12,18 | **hilt**  127:25 | 57:3,6,16 60:15 |
| 96:12,12,20,22 | 12:1,6,6,12,16 | **hindsight**  125:9 | 60:19 61:3,13 |
| 97:3,25 98:6 | 12:16 13:1,11 | **hk**  15:10 19:19 | 61:16 62:17 |
| 99:1,3,10 100:8 | 14:1,1,11,11,19 | **hmm**  119:12 | 63:4,6,11,17 |
| 100:15 101:2 | 15:3,15,22 16:1 | **hoc**  19:2 92:20 | 64:2,5,14,16,21 |
| 102:25,25 103:3 | 16:12,20 17:1,1 | 92:25 93:7,23 | 64:25 65:1 66:4 |
| 104:18,22,23,25 | 17:6,15 28:10 | 94:21 | 66:12 67:17 |
| 105:6 109:6,8 | 32:11 58:12 | **hock**  9:22,24 | 68:19,25 70:15 |
| 109:11,14,19,25 | 71:2 80:4 97:19 | **hold**  55:19 | 70:25 72:15 |
| 111:9,11 112:8 | 111:5 114:23 | 100:8 119:20 | 73:3 74:25 75:7 |
| 112:15,17,19 | 115:9,19 116:1 | **holder**  33:7 | 76:2 77:2,24 |
| 113:3,7,12,15 | 118:18 119:20 | **holders**  43:15 | 78:12 79:11 |
| 113:17 116:22 | 119:25 120:2,11 | **holding**  27:3 | 91:13,23 92:3 |
| 117:5 | 120:13 121:24 | **holdings**  1:8,12 | 92:23 93:4,24 |
| **harner's**  110:17 | **hearings**  27:4 | 3:14 4:14 5:14 | 94:4 95:24 96:9 |
| **harrison**  24:25 | **heavily**  43:24 | 6:4,13 7:13 8:14 | 97:12,17,18 |
| **hauer**  5:2,7,23 | 85:22 | 9:13 10:5,21 | 98:24 100:2,6,9 |
| 19:8 60:16 | **heeled**  84:18 | 11:15 12:9,19 | 100:18 102:25 |
| **headed**  76:6 | **heilman**  24:7 | 13:8 14:8 15:25 | 103:15,22 |
| **hear**  27:7,8 28:2 | **held**  15:22 105:3 | 17:15 | 104:10,13,21 |
| 36:10 41:23 | 105:13,16 | **holwell**  18:11 | 105:15 106:21 |
| 60:12 66:10 | 106:14 107:7 | **hon**  2:2 | 108:1,5,22 |
| 109:23 110:8 | 120:11 | **honeywell**  25:22 | 109:8,11,21 |
| 115:3 116:10 | **helen**  15:10 | **honor**  27:7,9,13 | 110:15 111:12 |
| 117:22 118:1 | **hellman**  22:25 | 28:1,10,22 29:4 | 112:9,20 113:4 |
| 120:9,18,21 | **help**  30:25 31:25 | 30:14 31:17 | 113:11 114:2 |
| 121:1 | 111:20 | 32:9,18,20 | 115:3,5,7,15,16 |
| **heard**  41:14 | **helpful**  42:24 | 36:11 38:3,13 | 115:17 116:4,18 |
| 43:22 50:11 | **herculean**  61:13 | 39:11 40:1,8,24 | 117:5,9,23 |
| 110:10,11 118:7 | **herrick**  7:2,7 | 41:10,17,21 | 120:19 123:9 |
| 118:9 120:9 | 99:20,21 | 42:17 43:1 44:6 | 128:23 129:1 |

honor's  68:23
  115:17
hooper  24:8
hoori  23:2
hope  40:16
  91:19 104:19
hopefully  40:5
hoping  56:14
  64:8
hour's  56:1
hourly  116:16
hudson  21:11
huge  123:15
hundreds  63:2
hurt  33:22
hutcher  19:18
hyde  17:25
  131:3,8
hyland  24:9

**i**

i.e.  60:10 70:5
ii  8:6
il  20:4
imagine  75:3
immediate
  54:13 61:4
immediately
  36:16
impact  93:18
impediments
  33:4
implementation
  33:8
implicated  89:9
importance
  124:18
important  28:4
  28:9 42:8,19
  43:18 61:6 64:3

70:24 71:1 80:9
importantly
  39:23 83:19
  86:20
impression  63:9
inappropriate
  85:6
inclination  97:8
  108:13
include  41:1
  52:19 76:21
  83:16,18
included  40:24
  45:21 46:17
  67:19
includes  66:14
  83:4 87:17
including  38:20
  41:7 53:16 55:6
  71:13 81:16,17
  83:12,18 85:12
  87:23,25 90:24
  94:10,15 98:19
  110:17 114:15
  120:17 124:12
  128:1,13
incomplete
  121:14
inconsistencies
  100:11
incorporated
  60:4 97:11,15
  98:4
incorporates
  32:23
incremental
  47:19
incur  72:8
incurred  3:5 4:5
  41:2,6 93:7

indenture  16:2
  16:16
independent
  27:18 81:3,7
  82:4
indicate  42:14
indicated  46:13
indiscernible
  27:20 50:4
  96:12 99:3
  103:10 104:22
  104:25 108:11
  109:6,14,15
  111:17 112:4,19
  113:3,12 114:6
  117:21,23
  120:22 122:7
  128:23
indulgence
  42:17
industrial  15:10
industries  15:11
inevitable  83:22
inevitably  83:19
influx  61:4
inform  56:19
information
  40:17 99:14
informed  56:15
  56:16 62:9
  63:15 81:7 82:7
  111:6 119:15
initial  29:12
  33:16
input  106:15
  110:22
inquiry  125:4
  125:24
ins  43:2,9 44:10
  46:4

insert  45:6
insider  62:20
  64:6 66:14
  79:19
insiders  81:24
  85:5
insolvency
  83:21,23,24
insolvent  81:2
instances  102:4
instrumental
  29:23
insurance  85:14
  85:16 126:18
  127:7
insurers  57:10
int'l  90:22
integral  54:4
  56:8
intend  42:4
intended  32:5
  79:5
intending  56:18
intent  40:8
  45:15 83:25
interest  35:7
  51:24 81:1 87:2
  87:6 89:21 90:8
  90:11
interested  81:19
interests  35:1
  51:24 81:8,17
  85:25
interim  3:1,3,10
  3:17 4:1,3,10,17
  5:1,2,10,17,22
  6:1,2,4,9,16 7:1
  7:2,9,16 8:1,6
  8:10,17 9:1,4,9
  9:16,20 10:1,8

10:12,13,18
11:2,6,7,12,19
33:15 34:14
97:6,9,14,19,20
101:21 108:20
110:16,24
111:12
**interpreting**
120:12
**interrupt**  99:4
100:9
**introduce**  30:5
**inundated**  42:7
**invest**  73:8
**invested**  63:21
**investigation**
27:20 82:5
113:21
**invoices**  76:13
76:23
**invoke**  125:9
**involve**  83:20
**involved**  52:9,24
63:25 85:15
127:23 128:4
**involvement**
30:1 91:21
96:14,17
**involving**  51:3,3
**ip**  105:17
**ira**  13:6 14:7
19:14 60:16
**ireland**  21:19
39:10 50:7,14
50:21 93:12
**ireland's**  49:9
**irelands**  14:19
**iridium**  82:21
**issue**  35:14 51:5
55:8,9,12,21

56:23,25 57:3,7
57:7,8,8,12
59:23 69:6,20
82:17 88:12
94:22 102:11,12
114:22 116:23
117:6 120:14
124:19 128:13
**issues**  51:2
54:20 56:13
57:5 59:19 62:1
62:10 63:1,4,8,8
80:17,25 81:12
82:12 83:9,12
83:14,18,20
86:11,12 108:9
111:4 127:23
**it'll**  75:3 130:5
**item**  34:6

## j

**j**  21:14 22:10,12
23:13 24:9,18
56:17
**jack**  24:21
**james**  12:2,13
23:6
**january**  8:5
**jared**  22:24
**jennifer**  23:3
**jeopardize**  36:3
**job**  62:8,12
100:12
**joel**  26:2
**join**  68:18,18
**joinder**  16:14
69:19
**joined**  27:11
47:7

**joint**  9:2 17:17
17:17 28:22
31:5 33:24 35:2
78:19
**joseph**  15:9
23:21,25
**jr**  22:12
**judge**  2:3 27:2
29:24 34:8
53:12 58:24
59:22 61:25,25
62:13 69:15,21
70:3 72:18 73:1
73:16 78:5
85:13,13,20
92:18 102:24
103:8 105:10
106:11,14 107:9
108:19 120:7
**judges**  29:24
57:4
**judgment**  68:8
81:7,17 82:7
126:23 127:1
**judice**  55:13
87:15
**judicial**  84:11
**july**  82:3 88:2
102:6
**jump**  57:16
**june**  10:20
11:14 12:8,18
101:24 102:4
119:19 122:14
**junior**  83:5
86:14
**jurisdiction**
80:10 120:4,6
**jurisdictions**
15:17

**justifies**  52:9
**justin**  2:5 25:6
25:25

## k

**kamlani**  18:12
25:23
**kara**  66:8
**kay**  5:24
**kayne**  88:12
**keats**  23:1
**keep**  49:22
120:6
**keeping**  62:8,9
62:10
**keith**  22:22
24:23 25:8
**kelley**  22:19
**kellner**  25:1
**kenan**  23:22
**kept**  80:14
111:16 120:4
**kevin**  24:20
**key**  53:17 54:4
**kick**  97:18
**kim**  23:2
**kingdom**  114:11
114:19 118:1,4
118:6,15 122:19
**knauth**  25:2
**know**  28:7,13,14
29:22 30:1 33:8
34:4,10 36:9,15
36:15,16 38:6,9
38:24 40:5
45:16 47:18
49:25 51:25
52:4,5,11,15,17
53:9,16,18,19
54:5 56:4,16

57:18,21 58:7
58:10,12,21
59:3,5,14 61:3
62:24 63:4,19
64:18,22 65:25
66:22 67:12,15
69:4,10,16 71:3
72:24 73:9,11
73:14 74:23
75:22 76:21,23
78:9,9 79:8
93:24 96:5
99:14 105:5
106:17 107:9
110:23 112:4
114:19 116:9
117:1 123:23
129:6
**knowing** 31:7
32:5
**knowledge**
81:21
**known** 115:8
127:18
**knows** 28:8 73:3
**kookogey** 23:3
**kreller** 21:16
23:4 24:10 47:8
**krinsky** 115:6
**kroll** 8:2,7 13:16
102:14
**kunal** 18:12
25:23
**kusma** 25:24
**kyle** 25:5

**l**

**l.p** 14:16
**l.p.** 13:15 14:6
14:25 15:8 16:8

16:14 17:11
**lack** 68:12 87:20
**laid** 81:9 94:24
**lajoie** 23:3
**lamb** 88:1
**lambert** 82:9
126:14
**lampert** 1:15
17:16 20:16
68:20
**landlords** 98:21
**lane** 69:15,21
70:3 73:17
105:10 120:8
**language** 42:9
45:3,20,20,21
46:17 47:23
48:17 50:15
91:25 92:2
**lanier** 23:5
**lapsing** 57:21
**large** 98:13,17
123:16 128:16
**largely** 79:17
89:17
**largest** 98:20
124:5
**lascano** 25:3
**lastly** 77:3
**late** 73:5
**laurel** 23:19
**law** 12:13 73:9
74:21 83:14
94:10 95:5
112:21 113:5
115:24 120:12
126:23
**lawlor** 12:2,14
23:6

**lawyer** 95:10
125:5
**layer** 86:20
**layered** 86:9
**laying** 119:10
**leadership**
93:25 94:16
**leading** 94:11
**leave** 79:2
**leaves** 86:13
122:15 123:10
**leblanc** 21:14
47:4,4,7 48:16
48:25 49:5
53:23 54:1,15
54:18,18 55:3
55:15,21 56:12
56:12 57:3,6,14
58:6 59:3 75:7,7
75:11 77:24
78:2,16,18
**leboeuf** 87:25
**led** 94:18 125:23
127:19
**ledanski** 17:25
131:3,8
**left** 35:11 64:8
88:7
**legal** 83:12 89:1
89:20 125:5
126:11 131:20
**legitimately**
87:11
**lenders** 52:19
**length** 81:25
85:2,8
**lengthy** 85:11
123:19
**lens** 63:18

**leslie** 22:25 24:7
**letter** 56:17
**level** 74:4 86:8
101:11 112:9
**levine** 23:7
24:11
**levinson** 23:8
**lewis** 20:8 66:1
66:7,11,13
**lexington** 18:13
**lexis** 82:3 88:1
88:13
**liability** 88:9,9
**lieberman** 25:4
**lien** 46:15 119:4
**light** 35:21
59:13 60:22
63:17 82:23
87:22 90:15,20
100:16 124:7
126:16,22
127:18
**liked** 112:10
**likelihood** 81:14
86:25
**limitations** 63:9
83:15 119:6
**limited** 14:19
15:12 114:10,21
115:23
**line** 27:18,23
30:11 47:9
70:24 76:8,9
83:4 92:7
111:22,23
**lines** 55:7
121:18
**link** 128:23
**liquidating**
29:11 33:9,15

34:25 35:1
39:24,25 41:1
41:13 71:11
74:9,15,18,20
76:7,14,15,17
76:22 77:8,10
78:3,8,22,23
79:3 80:2 90:2
108:16
**liquidation**
35:24
**liquidity** 50:10
**list** 65:18,18
67:16,19
**listed** 16:20 17:2
53:17 68:10
**listening** 27:24
42:13 115:18
**literally** 28:13
56:1 61:17 63:2
104:20 111:12
**litigated** 81:12
85:7 127:24
**litigation** 13:5
13:14 14:5,15
14:24 15:7 16:7
16:13 17:10
28:25 33:14
34:5 48:10,10
60:17 63:15,19
63:20 66:9
67:20 69:20
74:1,2 78:24
81:14,15 83:17
84:9,13,22 85:6
87:20 90:14
105:20 106:5
113:23 117:3
128:5,13,17,18

**litigations** 33:20
67:8 83:9 84:2,5
84:17 85:10
90:4,5
**little** 45:17 64:8
86:14 91:6
106:16
**llc** 8:2,8 13:16
65:25 82:14,21
95:16
**llp** 3:2,7 4:2,7
5:3,7,23 7:2,7
9:3,22,24 10:13
11:7 12:2 18:3
18:11,18 19:1,8
20:1,8 21:18
22:1 88:1
107:17
**local** 15:17
**locate** 30:16
**locke** 22:1
**logic** 35:19
**lonergan** 25:5
**long** 28:6 48:19
48:21 51:11
63:7
**longer** 68:17
72:20 84:23
87:13
**longstanding**
34:2
**look** 34:18 50:14
91:10,24 95:5,9
95:11 116:22
125:20 129:5,24
**looked** 63:18
117:6
**looking** 85:3
104:2

**looks** 88:23
**looming** 60:8
**lord** 22:1
**lot** 28:12 30:15
50:9,9 59:18
62:23 99:19
**lots** 61:22 63:8
63:25
**loudly** 29:5
**love** 75:2
**lower** 67:25
**lowest** 82:12
**lp** 13:6 17:13
20:9
**luck** 115:16
**luftglass** 23:9

**m**

**m** 12:13 13:15
16:9 18:23 20:6
22:18,23 23:11
27:17
**ma'am** 119:10
**maccrae** 88:1
**maher** 12:2
**main** 61:18
67:21 88:24
**major** 85:4,14
**majority** 73:2
**makers** 66:20,21
**making** 42:4
53:1 56:20 58:8
90:12 93:8
121:15
**malloy** 105:3,13
107:7
**man** 116:18
117:9,13,15,17
117:19,21,23

**manges** 3:2,7
4:2,7 18:3 27:10
**mansheen** 15:11
**march** 9:21
**margaret** 25:16
**mark** 5:24 24:9
**market** 125:24
126:2,20 127:17
128:17,18
**master** 65:23
66:3,15,15
**masters** 87:23
**material** 41:12
44:12 74:6,21
89:4 107:1
**mates** 87:23
**math** 103:6
**matt** 24:22
**matter** 1:6 30:4
34:12 70:1 73:9
73:10,15,19
92:10,19 97:6
100:25 120:6
**matters** 28:2,19
34:18 64:17
80:15 105:20
120:2,5,16
128:25
**matthew** 24:6
**mcandrews**
105:3,13,16
106:14 107:7
**mcclamb** 3:18
4:18 5:18 6:17
7:17 8:18 9:17
10:9 11:3,20
**mean** 37:2 44:3
49:6 52:13 53:1
53:6 54:8,12
64:17 68:3

77:10 97:13
104:20 105:4
116:23 117:1
**meaning** 50:16
67:20
**meaningful**
61:10 72:6 74:7
**means** 37:21
40:9 43:18
**mechanical**
29:20
**mechanics** 54:6
**mechanism**
76:20 87:4
**mediated** 85:22
**mediation** 85:11
**mediator** 85:14
**mediators** 29:23
61:25 85:12,17
91:21
**meet** 121:2
**mega** 73:3
**melanie** 25:20
**melissa** 20:13
25:7 26:1 66:13
**melnick** 29:24
61:25
**members** 27:23
128:1
**mention** 29:22
**mentioned**
65:12 112:14
**menu** 58:21
**merely** 103:23
**merit** 29:2
**merits** 56:6
59:24 60:24
63:14 65:9 83:8
84:6

**michael** 12:13
23:1,11 24:18
25:13
**mien** 15:11
**might've** 68:7
**milbank** 21:9
47:5 54:19 75:8
**million** 29:7,12
29:13 33:9,16
34:17,25 35:13
35:16 36:14
37:8,14 38:9,17
38:23,25 39:12
40:1,2,2,15,15
43:17,22 44:21
46:16 47:12,19
49:8 50:20 52:1
52:14,18 56:2
61:4 64:12
74:13 76:18
83:5 84:5
114:17 117:3
**millions** 63:5
**mind** 40:9 116:6
129:14
**mine** 85:12
**mineola** 131:23
**mingle** 15:11
**minimis** 106:7
**minor** 89:1,19
89:22 90:21
91:1
**minus** 39:1
**minutes** 36:21
42:17 44:22
**misconstrued**
48:20
**missed** 59:17
64:23 106:9

**missing** 97:10
**mm** 119:12
**modification**
44:12 51:15
70:12 71:4,20
71:25 73:21
79:25 88:16,19
88:25 89:5,7,11
90:14
**modifications**
17:21 89:18,24
90:18 91:1,5
**modified** 80:5
89:13 90:16
91:7
**modifies** 48:9
**modify** 42:22
43:24
**moment** 52:5
64:15 97:25
101:8
**monetized** 40:7
**monetizing**
62:20
**money** 41:8
47:21 73:20
81:1 83:3
116:20 121:23
**monthly** 8:1,4
75:1,8,17,22
76:13,23
**months** 36:2
72:25,25 73:16
**monumental**
61:5
**morabido** 93:2
**morabito** 21:7
41:21,21,25
42:2 43:1,7,10
43:12 44:14,17

44:19 45:19
46:9
**morgan** 17:12
19:6 20:8 23:10
66:1,7,11,13
92:23,24 95:24
96:3,9
**morning** 27:2
27:11,13,14
28:18 37:3
38:15 42:1
46:18 51:14,17
60:7,16 66:12
67:17 92:23
114:23 115:5
**morritt** 9:22,24
**motion** 5:21
13:1,1,12 14:1
14:11,19,20
15:3,15,17,20
16:1,3,12,20,20
17:1,1,6,17,17
28:23 30:4,6
31:6,8,13 32:4,4
32:6,11,14 34:1
34:13,20 36:6
60:20 61:3 63:3
64:12 67:5,6,24
68:14 70:12
71:2,4 77:23
78:20 79:15
80:5,6,11 84:11
84:12,24 88:15
88:18,23 90:19
93:11 118:7,12
119:16,21,22
120:10,22 121:5
121:15,16 122:3
122:14,21 123:2

**motions** 69:18
69:23 80:20
83:19 120:12
121:4,6
**movant** 34:1
**movants** 67:10
**move** 115:16
**moving** 93:9
118:5
**mtc** 88:10,12
**mulder** 12:13
23:11
**multi** 17:13 20:9
30:2 128:13
**multiparty**
128:12
**multiple** 96:7
123:17
**murphy** 22:11
23:12 27:17
**murray** 15:12
**mutual** 88:5,12

**n**

**n** 12:2,13 18:1
27:1 131:1
**name** 30:17
**natan** 24:16
**national** 16:2,9
16:15 20:2
**nature** 81:22
85:8 111:25
112:1,11 122:19
124:11,19
**nearly** 86:13
**necessarily**
75:11
**necessary** 3:5
4:5 74:20 91:4
124:14 125:2,13

**need** 36:21
50:12 56:25
58:6 65:9 69:15
74:3 82:4 95:4
95:18 96:4 97:4
105:10 113:25
115:13,21
117:20,22
119:16 120:13
121:8,11,20
123:24 126:3
128:13
**needed** 68:7
116:20
**needs** 51:13
67:14 77:11,20
91:6
**negligence** 77:9
77:11,17
**negotiated**
43:25 99:13
103:19 104:3
**negotiating**
65:10
**negotiation**
53:18 91:20
**negotiations**
33:13 59:17
85:9 94:2 111:2
128:15
**neither** 128:2
**nelson** 23:13
**net** 102:7
**never** 107:19
116:14,18,19,21
**new** 1:2 18:6,14
18:21 19:4,12
19:21 20:11,18
20:18 21:12,21
22:5 42:9 60:7

118:5
**ninth** 9:2
**nits** 127:13
**noah** 23:7 24:11
**non** 35:5 43:2,8
43:23 46:4
66:13 67:2
68:16,17,21
71:16 80:24
87:17,18 88:4
116:2
**nonmaterial**
17:20
**normal** 80:22
94:17 126:22
**north** 30:19
**note** 32:21 46:15
78:4 82:23
95:15 98:10,12
118:13 129:1,22
**noted** 47:20
84:9 87:16 91:1
93:5 97:18,23
98:7,11 121:23
127:13
**notice** 3:10 4:10
5:10 6:9 7:9
8:10 9:9 10:1,18
11:12 12:6,16
14:1,11 51:11
51:13,16,19,22
52:10,17 53:9
53:11,19 56:1,2
56:4 57:8 59:7,8
60:3 68:2,2,3,6
68:12 82:24
84:11 87:7,10
87:20 92:14,15
**noticed** 67:24

**noting** 92:13
**notion** 90:19
**notwithstanding**
79:6 80:15
**nova** 24:14
**november** 8:6
118:17,19
119:25 121:9
**nuevo** 82:13
**number** 15:15
38:4 44:1,2 65:3
70:20 92:6
103:13,14
127:23
**numbers** 84:7
103:10 118:16
**numerous** 61:17
**nw** 21:4
**ny** 1:20 18:6,14
18:21 19:4,12
19:21 20:11
21:12,21 22:5
131:23

**o**

**o** 2:1 27:1 131:1
**o'donnell** 23:14
**o'neal** 23:15
**object** 53:14
118:19 122:11
**objected** 37:25
73:6 80:21
**objecting** 71:12
108:17,17 118:8
**objection** 14:19
14:20 15:3,15
16:1,1,12,15
53:14 54:22
55:24 58:14
68:12 69:2 72:9

73:5 87:21
110:5,6 114:11
114:11,21
115:23 116:7
118:5,12,14,16
118:18,19 119:9
120:11,24 121:3
121:13 122:13
129:16,19
**objectionable**
106:13
**objections** 31:13
59:9 71:13
72:21 73:2,3,4
82:24 97:22
110:11 115:2
118:1 123:12
127:10
**objective** 125:4
**obligated** 43:21
**obligation** 74:17
**obligations**
39:21 63:23
**obtain** 126:24
**obtained** 81:23
128:6
**obvious** 48:4
**obviously** 44:9
46:5 54:22
56:21 61:21
62:13 70:24
126:12
**occur** 28:21
29:16,18 36:7
45:12 60:11
84:20
**occurred** 37:20
43:20 86:19
90:6

**occurrence** 33:2
**occurring** 33:5
36:4 54:9
**occurs** 82:16
**october** 62:17
**officers** 81:23
**offices** 12:13
61:24
**official** 5:3 6:3
7:3 13:1,7,12
14:1,8,11,20
15:3 16:3,12
17:6,18 19:9
60:18 79:15
**officially** 94:20
**oh** 30:21 75:10
129:6
**okay** 27:2,7,21
30:10,13,23
31:2,12 32:2,10
32:19 37:2
38:12 39:13
41:14,18,25
43:1 45:19 46:8
46:10,23 48:24
49:4 50:2,24
51:1 55:2 57:2
57:15 59:1,7
60:15 65:7 66:5
66:10 67:1,22
69:5 70:23 71:1
73:23,23 76:3
77:3,22 78:16
78:18,19 79:12
91:15,24 94:8
97:3,13 100:14
101:1 102:8
103:2,4,17
104:14 105:1
108:8 109:13,18

110:7,10,13,14
112:23 114:8
115:22 116:9,22
117:18,25,25
118:11 122:13
123:10 130:6
**old** 131:21
**once** 56:24
59:23
**onerous** 75:24
**ones** 97:15
110:19 124:6
130:5
**open** 28:25
40:21
**operated** 74:4
98:20
**operating** 82:21
**opinion** 59:21
82:5
**opposed** 51:18
54:24,25 84:25
89:22
**opt** 38:25 43:2,2
43:8,9,22,23
44:2,3,9,10,20
46:4,4,5 115:12
116:3,6
**opted** 66:16
**option** 128:2
**oracle** 92:12
**oral** 63:7 87:16
89:19
**orally** 42:15
**order** 13:2,13
14:2,12,21 15:4
15:21 16:4,13
17:7,19 27:5
28:17 32:21
34:13 35:9,15

37:3 41:12
42:10,21 43:13
44:25 45:6,7,9,9
45:23,25 46:14
46:18 49:10,10
51:3 52:13
53:10 54:3
56:10 57:17,23
59:5 60:4 65:4
67:4,5,24 68:13
68:23,24 69:3,8
70:1,2,5,7 73:18
75:1 79:7 80:13
91:6,10,14
92:16 93:5,20
95:25 97:1 98:5
99:11,15 100:21
101:9,14,16
104:1,12 109:7
118:17 119:15
119:18 120:11
120:13,14
121:12 123:2
128:24 129:21
129:24 130:1,2
130:4
**ordered** 71:19
71:22 72:2
**orders** 52:16
58:19 87:7
101:22 110:19
129:5
**ordinary** 41:7
**orient** 16:18
114:11,20,20
115:7,11
**original** 42:20
67:20 119:24
**originally**
129:13

ormand  25:6,25
oster  126:5
  127:2,11
otero  15:25
ought  70:2
outcome  37:17
  45:5 47:22 57:1
  61:5,13,15
  62:16 63:13
  64:3 90:14
outcomes  62:14
  63:20
outline  33:4
outs  38:25 43:2
  43:8,23 44:2,3,9
  44:20 46:4,5
  116:6
outside  66:4
outstanding
  39:7 56:14
overall  106:8
overruling
  123:12
oversee  90:3
oversight  74:4
  74:10 90:9
owe  48:18
owed  15:19
  38:23 39:15
  48:11,22
owen  25:19
owner  127:25

**p**

p  17:12 18:1,1
  18:16 19:6 23:8
  25:3,13 27:1
page  76:11,15
  77:5 88:2

pages  63:2
paid  37:24
  39:17 43:5 44:4
  44:7,10,22,23
  45:13 46:2,3,6
  50:17 52:7
  76:17 83:3,6
  86:6,13,16,18
  95:4 98:22
  99:19,22,25
  100:1,3,11
  101:13,22 102:6
  102:7 115:16,25
  116:8
pail  11:15
paper  60:22
papers  93:24
  94:5
parade  64:18
paragraph
  37:11 45:3,23
  71:13 108:13
park  19:11
  20:10
part  34:15,21
  38:24 41:9
  42:20 46:21,23
  53:18 56:8
  59:12 64:9
  80:16,22 105:23
  114:3 128:11
partial  38:21
participate
  66:16
participating
  65:19,24 66:2,3
  66:25 67:2
participation
  66:22

particular  41:11
  85:17,20 119:9
  125:16
particularly
  85:23
parties  28:11
  30:2 35:24
  51:24 52:8,11
  52:18,22,23
  61:18 65:10,18
  67:2,9,19 68:17
  68:17 69:1,17
  69:19 74:6
  78:24 79:4 81:1
  81:19 82:7,25
  85:4 87:11,17
  87:18 88:3,4,6,7
  89:2,21 98:22
  106:10 109:4
  128:1,8
partly  91:8
  116:19
partner  27:11
  62:12 106:22
partners  17:13
  20:9 27:17
  94:11
party  33:16,17
  33:25 84:12
  89:5 98:10
pass  79:10
passed  44:16
path  29:6 78:11
  78:13
patrick  22:12
  30:7,18
paul  9:2 22:14
  23:22 27:17
  96:12 99:20,23
  102:25 113:20

pause  62:6 65:5
pay  39:1,14,16
  39:18 41:4 61:8
  84:1
paying  64:10
payment  29:13
  35:4,8,12,13,16
  35:21,22 36:4,7
  36:14,17,24
  38:7,21 46:15
  51:8 57:9 93:14
  93:17,19 98:12
  114:24,24 116:2
  116:2
payments  36:3
  36:25 37:8
  38:10 41:2 44:8
  45:10 53:1
pbg  34:21
pbgc  22:2 28:19
  29:12 32:24
  33:6,12 34:14
  34:19,20 35:9
  36:16 37:17
  40:2,13 41:9
  44:6,24 45:4,10
  51:3,5 52:1 61:1
  61:11 70:16,23
  74:11,12 75:9
  75:20 76:14
  78:11 80:6 83:4
  90:13
pbgc's  29:13
  35:7 48:1 51:7
pearl  115:9
peck  29:24
  61:25 85:13
pending  33:11
  37:17 45:5
  48:13 69:11

73:5 108:7
**pension** 87:23
**people** 28:14
    43:25 55:12
    57:4 59:10
    61:15 64:8,10
    69:17,21,25
    70:6 91:15 92:7
    96:7 99:15
    117:2
**people's** 62:4
**percent** 39:4
    43:4 71:3
    125:14
**perfect** 70:19
    125:9
**perfectly** 113:14
**performance**
    80:13
**performed**
    16:22 17:3
    90:10,10 113:16
    113:18 121:6
    122:2,9,22
    124:17 125:5
**perio** 23:16
**period** 3:6 4:6
    5:5 6:6 7:6 8:5,6
    9:5,21,23 10:15
    11:9 56:23 69:1
    72:20,24 87:10
    87:12,14 97:20
    101:23 102:4
    122:11,11
**periodically**
    35:23 114:14
**permission**
    73:21
**permitted** 41:15

**person** 76:24
**personal** 61:20
**pertaining**
    83:14,21 89:10
**peter** 25:11
**petition** 98:18
    118:25 119:1,8
**pettit** 25:7 26:1
**pharmaceuticals**
    94:13,25
**phase** 113:21,21
    113:25 114:3
    115:17
**philip** 5:8 20:20
    22:21 25:17
    68:19
**picked** 127:14
    127:15
**pickering** 20:15
    68:20
**pictures** 30:15
**pierce** 23:17
**pilots** 87:23
**pip** 76:11
**place** 22:3 51:11
**places** 99:18
**plains** 1:20
    15:23
**plaintiff** 81:2
**plaintiffs** 1:13
    67:10 69:7,15
    69:24 70:6
**plan** 17:20,22
    28:7,7 29:6 33:5
    33:9 35:12 36:4
    36:5 39:24 40:9
    40:11 42:8,19
    42:20,23 43:4
    43:13,13,14,25
    44:12 45:7,9,21

45:24 46:6 48:7
    49:15 51:15
    53:4,10 57:19
    61:10 62:18
    70:13 71:4,5,12
    71:21 72:1
    73:20 78:10,23
    80:1,3,3,12,14
    82:17 86:8
    87:23 88:16,18
    88:19,20,24
    89:1,4,8,12
    90:20 91:1,7
**planning** 34:11
**play** 94:16
**played** 93:25
**pleading** 110:12
**pleadings** 94:15
**please** 30:24
    31:23 64:20
    109:23
**pleased** 47:16
**pleasure** 62:7
**plural** 119:5
**plus** 38:24 41:5
    111:12
**pm** 130:9
**podium** 34:9
    60:14
**point** 28:4,8,14
    29:24 34:7,8
    36:10 37:5,19
    42:18 44:6 45:2
    59:17 68:15
    69:14 71:6,12
    78:2,14,21
    82:13 87:19
    89:16 94:1
    100:17 102:15
    103:7 107:25

111:10 112:18
    115:15,21,23
    123:6
**pointed** 45:16
    107:11,11
**points** 29:2 42:6
    47:18 60:7
    71:10 74:8
    88:24
**polkowitz** 5:25
    23:18
**portion** 64:11
    85:15 87:19
    107:21 128:16
**position** 32:13
    35:20 36:23
    41:16
**possible** 28:9
    29:17 52:17
**post** 48:1 90:2
    98:18 110:19
    119:1
**potential** 33:1
    48:12 57:13
    83:15 90:17
    116:13
**poured** 63:6
**power** 88:17
**powers** 76:6
**practical** 69:6
    70:1 126:9
**practice** 30:1
**practitioners**
    124:22 125:22
**pre** 35:2 44:10
    46:4
**preceded** 110:17
    128:7
**precipice** 28:5

| | | | |
|---|---|---|---|
| precise  50:12 | priority  16:21 | 131:4 | proof  122:10 |
| preconfirmation | 17:2 29:10,13 | proceeds  29:17 | properly  123:19 |
| 82:20 | 29:14 33:21 | 29:20 34:25 | property  15:18 |
| preference  73:7 | 34:15,24 35:5,5 | 38:18 43:19 | proponent |
| 107:24 | 35:6,25 36:18 | 46:3 55:1 80:8 | 88:18 |
| prejudice | 39:16,20 40:10 | process  30:4 | proportion  68:9 |
| 107:15 | 45:13 46:6 48:1 | 56:5 59:12,13 | 68:11 |
| preliminary | 61:11 71:14,15 | 72:9 80:23 | proportionate |
| 111:15 | 71:15,16 82:19 | 106:18 109:15 | 88:8 |
| premises  36:6 | 83:5 93:6 | 110:22 111:9 | proposal  60:3 |
| prepare  74:18 | 114:25 118:22 | produced  63:5 | proposed  34:13 |
| prepared  93:19 | 118:24 119:7 | product  81:25 | 35:8,14,15,19 |
| prepetition | privilege  129:1 | 85:1,11 | 37:3 38:19 |
| 52:19 | pro  119:14,25 | products  82:2 | 42:10 45:22 |
| present  22:9 | 121:17 | professional  3:1 | 46:14,18 48:7 |
| 29:1 30:12 | probability | 3:4 4:1,4 5:1 6:1 | 67:5,23 68:13 |
| 81:12 | 81:11 83:8 84:8 | 7:1 9:1,4,20 | 71:9,20 81:18 |
| presentment | probably  53:25 | 10:12 11:6 12:1 | 82:16,18 84:23 |
| 53:11 59:8 | 59:22 72:5 73:2 | 12:12 41:7 | 87:1,8 89:24 |
| 92:10,14 | 100:12,24 | 62:10 125:14 | 92:16 93:20 |
| preserved  79:6 | 107:22 111:24 | professionals | 98:5 99:10 |
| preside  28:10,10 | 112:10 | 63:16 70:21 | 104:12 |
| press  78:12 | problem  45:18 | 76:12 84:14,15 | proposition |
| presume  126:8 | 58:9 102:23 | 97:25 98:8 | 95:14 |
| pretrial  69:16 | 124:19 | 101:25 103:18 | pros  128:3 |
| pretty  55:17 | procedural | 103:20 107:6,7 | prosecuting |
| prevent  54:6 | 68:16 | 107:8 125:25 | 108:6 |
| previous  42:23 | procedure  53:10 | profit  65:22 | prospect  72:9 |
| previously | 73:19 89:23 | 66:3 | protect  87:5 |
| 32:23 118:14 | procedures | program  38:22 | 91:17 |
| 126:1 | 51:12 52:13 | 94:3 | protected  58:2 |
| primary  90:5 | 78:5 | progress  15:13 | protecting  116:6 |
| primed  86:23 | proceeding | projected | protection  42:10 |
| prior  41:2 44:23 | 17:15 51:18 | 125:18 | 49:11,17 |
| 49:10 52:16 | 61:19 65:16 | projections | protective  81:3 |
| 57:20 58:8 87:7 | 79:22 106:24 | 35:21 38:5 | protracted |
| 93:15 103:8 | 113:23 | promptly  49:21 | 81:15 84:10 |
| 119:11 | proceedings | 87:13 91:14 | proven  84:16 |
| priorities  47:24 | 65:14 79:19,21 | 95:22 130:5 | provide  41:12 |
| 72:13 | 80:20 130:8 | | 61:6,10 75:4 |

78:7 106:22
108:15
**provided** 51:13
78:23 91:9
103:5 109:1
**provider** 10:14
11:8
**provides** 34:13
34:16 43:14
51:8 71:12
**proving** 126:17
**provision** 43:7
43:13 53:10
67:3 76:12 77:1
77:5
**provisions**
42:18 51:19,22
67:7 109:2
**proviso** 108:15
**prudential**
126:18 127:6
**public** 15:16
64:7,11 65:15
65:19,21,23
66:9 67:20
68:22 79:20
87:19 108:6
**pueblo** 82:13
**punt** 66:7
**purcell** 15:12
**purpose** 48:15
**purposes** 59:12
**pursuant** 13:3
14:3,13,21 15:4
15:21 16:4 17:7
38:21 39:23
45:6,9 46:6
49:15
**pursue** 78:24
84:17

**pursued** 79:24
86:17 90:5
128:9
**pursuing** 111:2
115:1,23 116:7
128:1
**pursuit** 79:7
128:10
**push** 69:10
**pushing** 29:21
**put** 40:3 69:8
70:7 108:24
117:7 120:16

**q**

**quality** 69:20
85:18,19
**quantum** 41:11
**quarropas** 1:19
**question** 40:19
41:18,19 45:10
51:10 52:25
57:8 60:2 65:20
66:6 67:3,11
70:10 103:5
105:2 107:22
108:4 116:10
127:15
**questions** 29:1
31:16 32:10,14
34:8 42:7 44:2
47:11,11 48:25
61:8 64:25 65:5
65:7,11,16
70:10 78:5 94:4
98:24 109:24
110:9
**quick** 36:11
**quinn** 21:1
41:21

**quite** 33:4
123:19,21
**quo** 55:15
**quoting** 82:14

**r**

**r** 2:1 18:1 22:24
23:4 27:1 131:1
**rachel** 22:18
**raise** 30:23
31:23 51:5 74:7
78:20 83:11
111:4 129:9
**raised** 42:6 45:1
47:14 78:14
93:14 129:14
**raises** 35:14
**ran** 116:19
**range** 82:13
**rates** 124:13
127:17 128:18
**ray** 18:9 27:10
**raynor** 22:7
70:15,16,18,25
**raytech** 126:6
127:7
**rdd** 1:3,4 15:24
17:15
**reach** 62:1
111:3
**reached** 33:14
42:13 55:5,12
98:1,4 111:19
112:12 127:21
**read** 59:21 63:2
69:5,17 116:15
121:17
**ready** 39:16
**real** 86:24
105:17 113:19

**really** 29:20
50:7 51:10,16
51:17 58:3
59:12 60:1
61:13 62:16
68:15 69:6
71:25 84:15
92:10 107:19
120:16 123:11
123:12
**reason** 49:22
55:11 58:9 73:1
90:7,13,16,18
121:22 123:6,7
**reasonable**
35:21 76:16
85:25 87:2,22
93:7 95:9 96:13
96:16 98:9
114:24 124:9,17
124:20 125:5,8
125:15 127:6
**reasonableness**
82:6,13 95:3,7
95:20 106:3,6
126:17
**reasonably**
76:13 125:1,18
**reasons** 55:22
126:4
**reath** 19:1 92:24
**rebuttal** 126:9
**recall** 52:17
80:16
**receipt** 29:16
**receive** 76:16
121:24
**received** 38:21
38:24,24 65:17
99:10,11 102:4

recognize  92:25
recognized  94:1
  110:18
recognizes  72:1
recognizing
  73:25
recollection
  34:19
reconsideration
  120:13 121:19
  122:17
record  27:9
  32:21 60:17,22
  83:7 91:17,20
  105:16 109:3
  113:13 114:13
  129:23 131:4
records  95:2,13
  95:22 96:3,6,10
  129:19 130:3
recovered  34:25
recovery  61:10
  86:14
redact  96:3
reduce  126:4
  127:22
reduced  101:18
  101:19 103:14
  114:16
reduction  73:13
  101:19 103:8
  126:25
reductions  98:6
  99:13 103:19
  104:5,7 128:11
refer  118:12
reference
  123:25
referenced
  32:22 65:17

116:12
referred  32:23
  61:15
referring  100:20
  101:3
reflect  80:5
  89:24 91:7
  102:22
reflected  47:17
  55:5
reflecting
  101:19
reflects  103:19
  111:1
regard  83:17
  84:5
regarding  3:17
  4:17 5:17,22
  6:16 7:16 8:17
  9:16 10:8 11:2
  11:19 13:11
  33:24 51:12
  80:25 98:1,12
regardless  78:8
reimburse  93:6
reimbursement
  3:5,11 4:5,11
  5:5,11 6:5,10
  7:5,10 8:4,11
  9:5,10 10:2,19
  11:13 12:7,17
reimer  21:15
  47:8
relate  65:8
related  3:12
  4:12 5:12,16,23
  6:11,15 7:11,15
  8:12,16 9:11,15
  10:3,7,20 11:1
  11:14,18 12:8

12:18 13:15
  14:6,16,25 15:8
  16:8,16 17:3,11
  17:20 31:7 34:6
  51:2,4 65:17
  66:24 67:2
  68:16 70:11,11
  79:23 127:25
  128:4,5
relates  42:19
relating  28:19
  80:1
relationships
  89:2,20
relator  14:19
  21:19 39:11
  49:7 50:6,14
  93:12
release  33:18
  66:23
releases  81:23
  85:6,7
relevant  82:21
  124:12
relief  17:20 31:7
  49:7 71:8 79:16
  93:12 94:6
  119:15 121:19
  123:3
relieves  50:9
  108:14
rely  94:5 123:20
relying  52:15
  54:21
remain  40:25
  106:10
remained  56:14
remaining  33:7
  40:6,12 43:21
  69:16 80:9

90:12 128:8
remand  88:12
remarks  64:14
remember
  67:12
reminder  43:3
remiss  64:15
removal  77:4
rendered  3:4
  4:4 5:5 7:5 8:3
  9:5 10:14 11:8
  124:16 125:9
reorganization
  62:19 80:23
rep  41:22 52:8
  90:24
repeat  60:21,24
  115:13
report  3:16,16
  4:16,16 5:16,17
  6:15,16 7:15,16
  8:16,17 9:15,16
  10:7,8 11:1,2,18
  11:19 74:23
  75:25 97:23
reporting  48:22
  74:16 75:1,2,8,8
  75:19,22 76:19
reports  74:19
  75:23 111:15
represent  64:3
representative
  21:3 52:20 93:3
  94:19 116:5,12
representative's
  5:22
representatives
  35:3
represented
  27:18 35:2 93:2

115:10
**representing**
85:2 115:9
**represents**
88:25 93:2
**request** 55:18
98:23 99:12
101:4
**requested** 49:7
89:18 93:12
99:19,22 100:5
101:13,15,16,18
102:20,22 103:7
103:12,19,23
104:3,6,12
**requests** 106:14
**require** 58:21
84:6 96:16,25
125:14
**required** 40:14
44:4 91:2 97:1
101:12 129:12
**requirement**
89:8,9,9 91:8
**requirements**
53:20 94:24
**requires** 40:11
96:14 101:13
**requisite** 83:25
**reservation** 5:22
33:1 47:14 49:2
49:9 50:8 54:2
54:21,23 55:24
91:16 93:13
116:11
**reservations**
31:14 42:16
58:4 59:11 60:9
80:7 82:25
98:11

**reserve** 29:10
36:19 37:15
39:3,6,20,23
40:20 50:13,22
73:4 114:24
**reserved** 29:9
37:25 50:21
80:12 93:17
110:20,25
**reserves** 32:13
40:13 50:13
**reserving** 38:8
40:11
**resolicitation**
90:17
**resolute** 108:9
**resolution** 47:16
47:20 51:6,8,23
55:18 56:22
62:11,18 111:19
**resolutions** 98:4
**resolve** 28:24
47:14 49:2
59:22 65:13,14
92:1
**resolved** 40:12
56:18 64:9 80:7
123:23
**resolves** 32:24
34:2 64:6
**respect** 43:2
45:2 46:5 48:6
77:16 80:14
82:20 83:16
86:2 93:13 94:2
105:22 114:15
**respects** 74:21
83:11 99:13
**responding**
121:14

**response** 5:21
17:6
**responses** 15:24
**responsibilities**
126:12
**responsibility**
82:11
**rest** 92:9
**restricted** 50:16
**restructuring**
8:2,7 13:16
113:19
**result** 33:3
83:24 101:21
128:4
**results** 61:16
**retail** 61:16
**retailers** 98:21
**retain** 47:25
128:13
**retained** 48:19
92:11 112:22
113:8,22
**retaining** 48:5
**retains** 78:22
**retention** 105:23
105:25 106:5
126:10
**retired** 120:4
**retiree** 39:15
**retirees** 129:9
**retirement**
80:16 129:3
**return** 41:12
**review** 3:17 4:17
5:17 6:16 7:16
8:17 9:16 10:8
11:2,19 31:15
74:2 95:21 97:2
105:11 106:3,12

107:20 110:1
119:22 120:10
126:22 130:4
**reviewed** 30:10
44:25 97:13,14
105:24 106:6
118:11 124:7
**reviewing** 81:22
113:5 127:9
**revised** 32:21
91:6,10,14
93:21 128:21
**revision** 34:13
**revote** 90:20
**richard** 25:19
**right** 30:23
31:23 34:23
35:20 37:12,13
39:13 42:24
43:6,11,12
44:18 47:3
48:16 49:6,14
49:16 50:2 51:1
52:2,22 53:8
57:22 58:5,18
59:4,15 67:1,22
75:10 78:13,21
90:20 91:25
96:11,24 100:20
102:2,13 103:21
103:21 105:1
106:1,4 107:1
107:13 108:10
108:18 109:20
112:2,7,8,16,17
112:25 113:6
114:2,7,8 116:9
117:8,11,25
122:23 123:10

rights  5:22
  31:14 33:1
  42:16,23 47:15
  48:22 49:2,11
  50:8 51:6 54:2
  54:21,23 60:9
  73:4,12 74:6
  80:7,25 82:25
  89:3 93:13
  98:11 110:20,24
  116:11
risius  105:13,17
  105:18 106:19
risk  84:16 86:22
road  131:21
robert  2:2 22:15
  25:22
rofland  25:8
roglen  23:19
role  88:3 93:25
  94:10,16,17
  106:23
ronalds  23:20
room  1:19
ross  24:8 105:13
roughly  29:16
  29:19 38:22
rounding
  104:16
rule  55:11
  109:16 111:17
  113:20 119:16
  119:16,23,23
rules  13:4 14:4
  14:14,23 15:6
  16:6 17:9
  119:17,21
ruling  87:12,13
  88:11 119:11

run  122:11
running  86:22
ryan  22:13
ryanne  23:16

s

s  3:12 4:12 5:12
  5:24 6:11 7:11
  8:12 9:12 10:4
  10:20 11:14
  12:8,18 13:15
  14:7,7,17,25
  15:9,15 16:8,17
  17:12 18:1
  19:14 20:3 23:3
  27:1
s.d.n.y  125:11
s.d.n.y.  82:3
  88:2 90:23
  94:12,14 95:1
  125:11 126:15
sachs  65:22,24
  66:3,14,15,17
  66:23,24
safe  83:13
safely  38:7
safer  53:15
sale  128:1,4
sales  15:17
samil  15:12
samuel  23:24
sara  19:16 62:12
  67:17 103:15
  108:5
sarachek  15:9
  23:21
satisfaction
  15:19
satisfied  89:16
  98:18 125:15

satisfies  94:23
satisfy  29:8
  38:20 39:3
  41:12 96:5
satisfying  40:10
save  73:20
saw  63:13 75:5
saying  50:7
  59:12 79:14
says  74:17 76:15
  77:6,8 95:6
  99:21,22,25
scenes  53:19
  110:23
schedule  120:1
scheduled  120:7
scheduling  70:3
scheler  25:9
scheme  46:6
  82:18,19
schrock  18:9
  27:6,9,10,15,22
  30:12 31:12,21
  32:20 34:23
  36:11 37:4,7,10
  37:13,16,22
  38:3 46:20,25
  47:2,9 49:12,15
  49:18,24 50:22
  53:7 57:13,16
  57:23,25 58:2,5
  58:15,18 59:2
  59:15 60:5,14
  61:21 62:8
  67:11 75:16,18
  76:1 77:1,21
  79:11,13 87:6
  91:13,18,22
  92:3 97:12,17
  99:6,8,10,16

111:20,25
  128:22
schrock's  60:3
  60:23
schwartzberg
  23:22
scott  23:9
screen  30:16
  31:23 59:16
scurria  25:10
sdny  82:9
se  119:14,25
  121:17
sean  23:14,15
sears  1:8,12
  3:14 4:14 5:14
  6:4,13 7:13 8:14
  9:13 10:5,21
  11:15 12:9,19
  13:8 14:8 15:25
  17:15 27:3
  66:13 80:10
second  33:11
  34:6 35:18
  46:15 47:22
  55:9,9,10 56:15
  56:17,19 57:3,5
  57:6 62:6 67:25
  71:12 87:9,22
  89:5 100:9
secondly  69:10
  70:1 71:11
  79:20,23
section  15:5
  17:8 45:5,22
  47:20 48:9
  74:15 76:6
  83:13 88:16
  89:8,11,15 95:8
  113:8 118:23,24

[section - shaw]                                                        Page 35

123:25 124:8,23
124:23 125:14
**sections** 13:3
14:3,13,22
15:21 16:5
89:13 92:21
**secured** 29:9
33:21 35:6,25
36:17 37:23
39:6 40:10
45:13 61:9
71:14 86:5
114:25 118:21
122:18
**securing** 119:4
**see** 30:21 31:22
41:25 50:15
53:8 54:17
59:18 81:3 82:2
82:8,12,21 88:9
90:21 94:12
95:14,15 125:6
125:10 126:4
127:2,6
**seek** 58:6 79:25
107:15
**seekers** 114:12
114:19 118:1,4
118:6,15 122:19
**seeking** 42:22
55:6,25 89:5
93:5 121:18,19
122:1,1,17,17
122:21
**seeks** 70:12 71:4
79:16 88:16
119:15
**seen** 30:1 51:13
62:13 105:19
112:10

**self** 114:13
**semiannual**
74:23 75:21,25
**send** 96:10
**sends** 95:22
**senior** 35:10,22
36:5,8,20,25
86:13,21
**sense** 56:3,3
58:1 74:5,12
117:24
**sent** 101:3
103:23
**separate** 79:18
89:7
**separately** 34:15
130:2
**september** 9:21
55:10 131:25
**serious** 128:5
**seritage** 83:17
**served** 67:7
71:17 74:9 94:1
**service** 13:11
64:21 67:12,13
67:19 121:15
124:15 125:8,16
**services** 3:4 4:4
5:4 7:5 8:3 9:4
10:14,14 11:8,8
76:17 124:11,13
124:13,14,17,25
125:1,4 126:3
**sess** 90:25
**set** 46:6 49:8
62:19 70:10,22
78:25 105:9
119:6 124:7
129:10

**sets** 29:6 79:18
80:8
**setting** 80:25
128:15
**settle** 78:8
**settled** 43:15
51:7 69:18 90:4
**settlement** 17:19
28:19 29:3,6,17
29:19 31:7 32:4
32:23 33:3,6,6,8
33:14,23,24
34:1,16,21
35:13,19 36:16
37:1,18 38:5,17
39:15 40:8
41:10 42:6,22
43:19,23 45:5
45:21,22,25
46:2,15,21,24
47:10 48:4 50:9
51:16 52:6,12
52:14 54:3,5,10
54:24,25 55:5
55:19 56:2,2,6,7
56:9,9,10,11,16
56:24 57:9,10
57:17,18 58:10
58:22 59:11,25
60:9,20,23,25
61:3 64:1,2,5,10
64:11 65:5,8,12
66:16,25 68:8
69:7 70:11,14
70:19,22 71:2
78:5 79:17,17
79:24 80:4,5,8
80:11,15 81:6,7
81:13,15,18,19
81:22,25 82:6,8

82:12,16,20,25
83:1,3,6 84:3,4
84:6,24 85:1,4
85:11,15,22,25
86:2,4,11,12,16
86:24 87:1,8,16
90:15,19 92:12
92:13 109:2
111:25 112:1,11
130:1
**settlement's**
29:4 82:18
**settlements**
28:24 51:12,19
58:20 61:1,2
62:15 80:22
81:11 87:8
124:1
**settling** 65:15,18
68:9,11,16,17
68:22 87:17,18
88:3,4,6,7
**seventh** 7:2
**severance** 39:16
**seyfarth** 20:1
**shamah** 24:12
**shanghai** 15:12
**share** 64:10
68:10,11 88:8
106:12
**shareholder**
64:7,11 65:16
65:19,22,23
66:9 67:20
68:22 79:20
87:19 108:7
**sharing** 65:22
66:3
**shaw** 20:1

**short** 87:10,12
  87:14 98:15
**shortchanges**
  86:17
**shortened** 51:22
**shortening**
  52:10
**shoulder** 85:3
**show** 76:24
**showing** 94:24
**shown** 83:25
**shows** 99:18
  102:3
**shuster** 18:11
**shut** 112:11
**side** 67:10,10
  69:7,15 78:15
  85:5 91:25
**sidney** 23:8
**sign** 64:9 69:25
  70:5
**signature** 131:7
**signed** 58:22
**significant** 28:2
  89:22
**signing** 54:12
**similar** 99:23
**simple** 33:4
**simply** 73:15,21
  88:6 90:21
  121:5
**single** 85:18
**sino** 19:19
  115:11
**sir** 31:11 109:19
  111:11 112:15
  112:15
**siroka** 25:11
**sit** 50:16

**sits** 122:12
**sitting** 31:8 32:7
**situation** 81:2
**six** 72:25
**size** 58:21
**skilled** 124:21
  125:22
**skip** 97:9
**skyline** 30:19
**slightly** 89:18
**slow** 75:3
  106:17
**small** 40:5 105:2
  107:21
**smaller** 99:24
**sole** 45:4
**solomon** 23:23
**solution** 57:13
**solutions** 15:12
  131:20
**soma** 24:19
**somewhat** 34:18
  75:24
**sonya** 17:25
  131:3,8
**soon** 49:25
  130:4
**sophisticated**
  63:16
**sorry** 53:23
  66:20 74:17
  78:20 88:6 99:4
  100:9 104:23
  112:21 113:3
  117:23 129:6
**sort** 66:19 74:9
**sorts** 96:7
**sought** 40:22
  41:8 89:11 94:7
  121:16,18

128:21 129:16
**sounds** 103:1
**southern** 1:2
**spahr** 9:3 18:18
  100:19 103:5
**speak** 98:11
  108:3 115:20
  120:19
**speaking** 68:25
  97:5 108:2
  114:18
**speaks** 29:5
  116:7
**special** 7:3 9:22
**specific** 129:6,7
**specifically**
  80:12,14,19
  118:23 129:18
**spell** 64:13
**spend** 91:16
  121:22
**spent** 59:18
  124:12
**split** 40:13
  129:17
**spoke** 115:18
**st** 21:4
**staffing** 126:9
**staggering**
  64:16
**stake** 83:9
**stakes** 128:12
**standard** 95:8
  123:25 124:7
**standards**
  119:22 121:2
**standing** 32:16
  33:25 60:2
**stands** 83:4

**star** 23:24
**start** 50:7 54:6
  64:18
**started** 28:1
  61:14
**state** 15:16
  109:3 125:8,24
**stated** 31:12
  34:20 44:19,21
  81:5 83:10
  91:20 110:4
  129:18
**statement** 8:1
  90:17 110:25
**statements**
  38:16,17 42:4
  74:19 107:20
**states** 1:1,18
  45:4 124:9,24
**static** 75:3
**status** 3:16,16
  4:16,16 5:16,17
  6:15,16 7:15,16
  8:16,17 9:15,16
  10:7,8 11:1,2,18
  11:19 35:24
  55:15 69:23
  74:23 79:23
  105:5 116:15,24
  118:22
**statute** 63:9
**statutes** 83:15
**stauble** 25:12
**stay** 55:6,25
  58:6 86:7
**stemhelm** 25:13
**step** 54:13
**stephanie** 25:3
**steps** 55:6

| | | | |
|---|---|---|---|
| **sternman** 26:2 | **submitted** 31:4 | 73:4 | **t** |
| **stipulate** 57:19 | 32:3 45:1 94:6 | **sunbeam** 126:5 | **t** 110:18 131:1,1 |
| 58:7,11 | 105:11 111:13 | 127:2,11 | **table** 109:24 |
| **stipulation** 59:3 | 114:16 118:6 | **super** 29:14 | 120:25 |
| **stockholders** | 122:14 | **supervising** | **take** 36:21 42:17 |
| 81:3 | **subsection** | 85:10 | 54:13 61:9 |
| **stop** 54:7 | 124:23,24 | **supplemental** | 64:15 84:15 |
| **stores** 125:6 | **subsequent** | 9:9 10:1 | 97:8 98:9 99:17 |
| **stout** 105:13,17 | 81:14 | **supplemented** | 100:6 127:21 |
| 105:18 106:19 | **substance** 36:14 | 60:25 | **taken** 28:15 |
| 112:21,21 | 73:6 97:22 | **support** 30:6 | 74:11 77:6,7,14 |
| 113:16,18 | **substantial** | 31:5 32:3 43:25 | 77:15 |
| **strategy** 17:13 | 84:15 92:22 | 52:7 70:18 | **takes** 28:15 |
| 20:9 128:15 | 93:8,18 94:9 | 81:18,19 93:11 | 85:24 |
| **strauss** 5:2,7,23 | 95:11 98:2 | 94:6 | **talking** 117:2 |
| 19:8 60:16 | 130:2 | **supported** 52:23 | **tarter** 115:6 |
| **street** 1:19 | **substantially** | 83:3 | **task** 96:7 123:17 |
| 20:17 21:20 | 71:5 84:3 88:20 | **supporting** 43:3 | 124:19 |
| 22:4 | 88:22,24 | 76:22 81:20 | **tax** 10:13,14 |
| **strenuously** | **success** 41:10 | **supportive** | 11:7,8 15:17 |
| 83:2 | 64:24 81:11 | 54:24 98:25 | 35:5,5 39:20 |
| **strong** 15:13 | 83:8 84:8 | **suppose** 105:10 | 71:15,16 |
| **strongly** 80:23 | 125:18 | **supposed** 45:13 | **taxes** 39:18 |
| **struck** 56:24 | **successful** | **sure** 37:3 38:3 | **taxing** 98:22 |
| **structured** 48:5 | 125:15 | 46:2,12,16 | **taylor** 24:25 |
| 66:18 | **sufficient** 36:24 | 57:11 69:23 | **tba** 15:23 |
| **sub** 55:12 87:14 | 38:6,19 39:1,3,5 | 71:25 72:12 | **team** 61:22,22 |
| **subcommittee** | 39:9,14,16,19 | 75:5 76:4 79:1,6 | 62:7 66:8 |
| 113:20 | 39:23 41:4 60:3 | 86:15 92:4 98:6 | **technically** |
| **subject** 28:5 | 72:17 84:17 | 99:8 105:6,14 | 68:24 |
| 29:17 65:2 73:2 | 87:7 91:19 | 105:25 107:5 | **technologies** |
| 73:7 74:13 | 102:20 | 108:5 116:24 | 88:10,13 |
| 89:14 107:19 | **suggests** 48:7,17 | 123:12 | **telephonically** |
| 109:2 126:8,12 | **sui** 83:11 | **suspenders** 46:1 | 22:9 |
| **submissions** | **suite** 131:22 | **swear** 30:24 | **tell** 30:24 31:24 |
| 74:19 | **sum** 36:14 | 31:24 | 55:17 62:25 |
| **submit** 76:12 | **summarize** | **synergy** 94:13 | 70:8 101:9 |
| 91:25 93:20 | 118:4 | 94:25 | 103:13 |
| 95:25 105:8 | **summary** 40:16 | **szydlo** 23:25 | **ten** 58:24 |
| | 41:15,20 42:5 | | |

tens    111:14

tenth    3:2 4:2 5:2
  6:2 8:1

term    28:18
  43:16 80:6

termination
  84:21

terms    36:25
  45:24 47:10,17
  66:17

terrific    62:12,16

testimony    31:8
  31:18 32:6,16
  61:7

texas    15:16,17

text    101:14

thai    19:19
  115:11

thank    28:1,11
  31:17,20 32:18
  32:19 40:24
  42:25 46:8 49:5
  60:15 64:16,18
  64:18,23 70:23
  79:13 85:17,20
  91:13 92:18
  110:13 111:11
  115:17,20 116:4
  123:9 128:22,22
  129:4 130:6

thanks    27:6,8,24
  32:20 46:9
  72:18 97:17

thau    24:1 25:14

theresa    22:20

thing    50:11 54:1
  56:4 57:11
  59:22 62:16
  64:4 103:13
  112:2,9 122:9

123:2

things    29:8 42:8
  55:7 62:11
  63:18,22 96:8
  118:13

think    28:20 29:5
  29:19 36:12
  38:16 40:16
  42:8,10,19
  44:19 45:1,8,15
  45:15,20,25
  47:9,18 50:11
  50:15 51:20
  53:5,13,15,25
  54:19 55:11,14
  56:3 57:4,17
  58:24 59:4,9,20
  59:21,22 60:3
  62:21 65:7,24
  67:6,8,13 68:6
  68:21 69:2,6,14
  69:19 70:1,2,9
  72:19 73:20
  74:22,25 75:20
  75:22 76:5,6,19
  77:3,11,13,17
  77:19 78:17,21
  79:3,4,5 84:24
  91:5,8,17,18
  92:2,3,6,15
  93:17 94:11,20
  95:5,18 96:13
  96:14,16,18,19
  97:9,15 99:11
  100:9,17,19
  101:2 102:8,10
  102:11,18 103:3
  103:6,11,17,21
  104:11,16 105:2
  107:10,10

110:22 112:4
  113:23,24
  115:22 116:6
  118:8 123:15,21

thinking    75:12
  110:24

third    76:8,9
  84:12 89:7

thomas    23:4
  24:8,10

thought    28:9
  52:9 101:3
  106:8,17 110:10
  110:11 129:13

thousand
  104:15,19,20

three    40:15
  42:17 62:17
  85:12,17,19
  88:24 94:23
  102:10 104:20
  105:8,12 108:13
  108:24 112:5,5
  112:13

threshold    52:18

throwing    69:9

tied    92:12

tighten    45:17

tiktin    16:17
  25:15

time    28:2 44:13
  51:12 53:19
  55:11 56:23
  57:21 59:18
  60:10 61:14
  63:21,24 64:8
  64:21 66:25
  68:24 69:24
  70:5 72:10 81:1
  83:21 84:21

91:16 95:1,10
  95:13,21 96:5
  98:19 119:6
  121:20,23
  122:24 123:18
  124:12,15,18
  125:8,16 127:18
  127:18 129:19
  130:3

timeframe
  107:14

timely    74:18

times    43:16
  115:14

timing    71:11
  90:15 98:12

title    124:16,22
  125:23

tmt    81:3

tobey    18:23
  100:18 105:16

today    27:25
  28:3 31:8 32:7
  32:22 33:6 41:8
  42:13 51:18,23
  55:17,20,23
  60:25 68:24
  78:7 84:25 87:9
  91:11 92:5
  93:16 96:10
  120:5,7,15,17
  120:21 121:1

today's    27:4
  28:10 75:20
  83:7 120:2

tom    21:16 47:8

tomorrow    69:3
  91:11

tonight    69:4

[total - use]

**total** 76:18
99:21,22,25
102:19,22 103:6
103:12,18,23
104:2,6,12
106:15
**totally** 111:14
111:16
**tower** 19:10
**tracked** 58:17
**trading** 19:19
115:11
**trailer** 81:4
**transaction**
83:17
**transcribed**
17:25
**transcript**
120:10 131:4
**transferor** 83:21
**transfers** 83:22
**transform** 34:3
92:13 128:4,5
**trial** 128:14,15
**tried** 101:12
**triggered** 57:10
**true** 44:20 102:1
102:6,19,21
131:4
**truesdell** 82:2
**trust** 16:2,9,15
20:2 29:11 33:9
33:15 34:25
35:1 39:24,25
41:1,13 48:10
48:12,15,17
65:23 66:3,15
66:15 71:11
72:8 74:3,9,16
74:17,20,24

76:12,17 78:3
78:22,23 79:3
80:2 87:9 90:1,2
90:5 116:19
**trustee** 16:2,16
48:10,18 74:4
74:10,18 75:25
76:7,14,15,22
77:8,10 78:8
86:10 108:16
109:4 123:20
**truth** 30:24,25
30:25 31:24,25
31:25
**try** 47:14 100:4
100:6
**trying** 30:2,16
54:7 56:25
73:20 92:1
100:1 109:24
110:4,8 121:17
**turn** 70:13 71:3
75:25 77:22
88:15 97:16,24
99:1
**turned** 55:24
**turnover** 15:18
**tween** 126:25
**two** 30:5 34:18
44:2 51:2 54:19
56:13 60:6
65:13 67:3,8
71:10 79:16,18
79:18 80:8,19
83:9 84:25
85:21 105:14
112:5 113:18
114:9 118:1,14
120:17 122:19
122:19 129:7,8

**tyler** 25:24
**type** 16:21 17:3
97:2 121:6
122:2,22 128:18
**types** 68:1
**typical** 85:6
**typo** 76:7

**u**

**u.s.** 2:3 81:4
82:3 88:1,13
123:20
**ucc** 52:20
**uday** 24:24
**ultimate** 88:8
128:4
**ultimately** 73:18
94:18
**umbrella** 109:15
**uncertain** 61:14
61:15 63:12,20
**uncomfortable**
53:20
**uncontested**
93:11
**undercapitaliz...**
83:23
**underlying**
34:20 36:6 61:2
118:12
**understand**
35:18 37:5
42:21 56:1 57:5
59:10 87:10
99:11 100:1
115:24 122:6
128:12
**understandable**
127:10

**understanding**
62:25 102:24
105:15
**understatement**
64:22
**understood** 57:6
95:24
**unfortunately**
105:10
**united** 1:1,18
**unnecessary**
124:25 126:13
**unopposed** 29:5
32:15 85:23
92:14 114:9
122:15
**unrelated** 32:11
**unsecured** 5:3
6:3 7:4 13:2,7
13:12 14:2,8,12
14:21 15:4 16:4
16:13 17:7,18
19:9 33:22
61:11 71:16,17
71:23,23 72:7
79:16 121:11,21
121:24 123:8
**unsecureds** 52:4
72:21
**unusual** 86:3
**unwilling** 54:2
**update** 36:1
**updated** 65:18
**updates** 75:4
**updating** 35:23
**ups** 61:22 102:6
**urge** 91:15
**use** 50:14

**[v - work]**

**v**

v  1:14 17:16
  81:4 82:2 87:25
  88:10,12 126:5
  126:18 127:2,6
  127:11
vacature  120:12
valuation  83:20
value  62:2 81:1
  124:11
various  32:25
  62:23 63:10,10
  81:1 103:20
  115:13
vast  73:2
vendors  98:21
veritext  131:20
versus  81:12
vesey  22:4
vesper  25:16
victor  13:11
vietnam  15:10
view  109:12,17
  115:14 126:11
views  63:14
  115:7
village  28:15
villages  28:16
violate  89:13,13
virtual  27:16
vis  51:6,7
vision  82:2
voice  70:18
voluntary
  101:18

**w**

w  26:2
w.t.  82:15

wacker  20:3
wages  118:24
wait  78:14 84:22
waiting  52:6,11
waived  73:11
walk  13:6,14
  14:6,16,25 15:8
  16:8,14 17:11
  36:2,20 42:15
  101:6
walked  42:14
walker  2:5
walking  38:1
wall  21:20
wander  19:23
  115:1,3,5,6
  116:4
want  34:11 35:7
  36:2 37:3,19
  41:18 42:2
  46:16,18 48:19
  50:12 55:15
  56:19,22,25
  60:21,24 62:6
  62:11,15 64:5
  64:13 67:4,9
  68:18 69:7,21
  69:24 71:3 72:8
  74:7 76:21
  78:14,20 79:1
  85:17,18,20
  86:3 87:11,11
  108:3 109:3,22
  110:3 111:8
  128:25
wanted  48:13
  51:5 60:6 71:9
  78:24 129:22
wants  36:9
  57:12 98:10

warrant  89:6
  90:14
warranted
  59:25 90:18
  123:16
washington
  21:5
way  38:10 43:2
  52:24 53:15
  55:4 57:25 58:5
  59:4 63:12
  66:18 68:10,13
  70:4 74:7 77:13
  77:19 78:9
  80:17 86:17
  93:4 96:15
  117:7
wayne  25:1
ways  74:10
we've  48:3,8,20
  51:4 56:24 67:8
  74:13 105:19
  111:6
weeks  111:21
weighing  127:24
weight  82:7
weil  3:2,7 4:2,7
  18:3 27:10
  51:21 61:22
  62:7 72:19
  99:20,23 100:7
  100:24 114:9
  123:13 124:6
weintraub  25:17
weis  99:20,23
  113:20
weisgerber
  24:13
weiss  27:17

welcome  87:13
westover  25:20
whatsoever  88:9
white  1:20 15:23
whitebox  17:13
  20:9
wide  127:5
william  27:16
willing  70:6
  84:15 96:22
wilmer  20:15
  68:20
wilmington  16:1
  16:9,15 20:2
wind  29:11
winddown
  39:25 40:3,14
wish  31:10 32:8
  64:23 115:16
  129:2,4
withdraw  54:2
  54:21
wolf  25:18
wolfe  25:19
wollmuth  12:2
wong  13:11
word  63:11
worded  68:13
  77:13,14,19
words  76:8
work  16:22 17:3
  27:25 28:13
  61:17 62:4,14
  62:23 69:22
  73:25 77:19
  84:14 85:19,19
  92:4 98:14
  101:25 102:5
  107:1,18,24,24
  121:6,14 122:2

**[work - à]**                                                                 Page 41

122:9,22 123:20
127:22 129:11
129:15,20
**worked**  105:18
**working**  62:7
76:5 98:4
106:20 127:17
**works**  50:11
78:17 92:2
**worth**  28:13
**wouldn't**  55:25
**writing**  75:24
**written**  68:10,21
69:3

**x**

**x**  1:5,11,17

**y**

**y**  20:13
**yanez**  25:20
**yards**  21:11
**yeah**  37:4 75:10
75:15 77:1 96:2
101:11 104:4
109:11 117:24
**year**  55:10
**years**  28:13,24
34:4 61:17
62:17 84:25
98:15
**yesterday**  32:22
66:7 92:16 98:5
101:4
**york**  1:2 18:6,14
18:21 19:4,12
19:21 20:11,18
20:18 21:12,21
22:5
**yous**  64:18,18

**z**

**zachary**  23:5
**zeisler**  126:18
126:18 127:6,6
**zensky**  24:2
**zolfo**  126:4
127:2,11

**à**

**à**  51:6