**Hearing Date and Time: November 3, 2022 at 2:00 p.m.  (Eastern Time)**
**Objection Date and Time: October 17, 2022 at 4:00 p.m. (Eastern Time)**

**DUANE MORRIS LLP**
Wendy M. Simkulak, Esq. (WS-8945)
1540 Broadway, 14th Floor
New York, NY 10036-4086
(212) 692-1000 (Telephone)
(212) 692-1020 (Facsimile)
and
Catherine B. Heitzenrater, Esq. (PA 205597)
(admitted *pro hac vice*)
Elisa M. Hyder, Esq. (PA 328054)
30 South 17th Street
Philadelphia, PA 19103-4196
(215) 979-1000 (Telephone)
(215) 979-1020 (Facsimile)
*Counsel for the Chubb Companies*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                    :
In re                               :            Chapter 11
                                    :
SEARS HOLDINGS CORPORATION, et al., :            Case No. 18-23538 (SHL)
                                    :
          Debtors.¹                 :            (Jointly Administered)
                                    :
------------------------------------------------------------x
```

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is c/o M-III Partners, LP, 1700 Broadway, 19th Floor, New York, NY 10019.

**NOTICE OF MOTION OF THE CHUBB COMPANIES FOR ENTRY OF AN ORDER (I)
RULING THAT DEFAULT JUDGMENT, SETTLEMENT AGREEMENTS AND STATE
COURT ORDERS ARE VOID *AB INITIO* PURSUANT TO 11 U.S.C. §§ 105(a) AND
362(a) AND WITHOUT EFFECT; AND (II) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that on October 7, 2022, ACE American Insurance Company

and each of its U.S.-based affiliates and any successors of each of the foregoing (collectively, the

"**Chubb Companies**") filed the *Motion of the Chubb Companies for Entry of an Order (I) Ruling*

*that Default Judgment, Settlement Agreements and State Court Orders Are Void Ab Initio Pursuant*

*to 11 U.S.C. §§ 105(a) and 362(a) and Without Effect; and (II) Granting Related Relief* (the

"**Motion**").

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will be held before

the Honorable Sean H. Lane, United States Bankruptcy Judge, at the United States Bankruptcy

Court for the Southern District of New York (the "**Court**"), Courtroom 118, 300 Quarropas Street,

White Plains, New York, 10601-4140, on **November 3, 2022 at 2:00 p.m.** (prevailing Eastern

Time) (the "**Hearing**").

**PLEASE TAKE FURTHER NOTICE** that any objections or other responses

("**Objections**") to the Motion shall (i) be in writing, (ii) comply with the Federal Rules of

Bankruptcy Procedure and the Local Bankruptcy Rules for the Court, (iii) be filed with the Court

electronically in accordance with General Order M-399, and (iv) be served upon: (1) counsel for

the Chubb Companies, (a) Wendy M. Simkulak, Esq., Duane Morris LLP, 1540 Broadway, 14th

Floor, New York, NY 10036, (b) Catherine B. Heitzenrater, Esq., Duane Morris LLP, 30 S. 17th

Street, Philadelphia, PA 19103, and (c) Elisa M. Hyder, Esq., Duane Morris LLP, 30 S. 17th Street,

Philadelphia, PA 19103; and (2) all other parties pursuant to and in accordance with the *Amended*

*Order Implementing Certain Notice and Case Management Procedures* [ECF No. 405] (the

2

"**Amended Case Management Order**"), entered on November 1, 2018, so as to be actually filed and received no later than **October 17, 2022 at 4:00 p.m.** (prevailing Eastern Time) (the "**Objection Deadline**").

       **PLEASE TAKE FURTHER NOTICE** that the relief requested may be granted without a hearing if no Objection is timely filed and served in accordance with the Amended Case Management Order.

Dated: October 7, 2022          Respectfully submitted,

                      DUANE MORRIS LLP

                      */s/ Wendy M. Simkulak*
                      Wendy M. Simkulak, Esq. (WS-8945)
                      1540 Broadway, 14th Floor
                      New York, NY 10036-4086
                      (212) 692-1000 (Telephone)
                      (212) 692-1020 (Facsimile)

                      and

                      Catherine B. Heitzenrater, Esq. (PA 205597) (admitted pro hac vice)
                      Elisa M. Hyder, Esq. (PA 328054)
                      30 South 17th Street
                      Philadelphia, PA 19103-4196
                      (215) 979-1000 (Telephone)
                      (215) 979-1020 (Facsimile)

                      *Counsel for the Chubb Companies*

**Hearing Date and Time: November 3, 2022 at 2:00 p.m. (Eastern Time)**
**Objection Date and Time: October 17, 2022 at 4:00 p.m. (Eastern Time)**

**DUANE MORRIS LLP**
Wendy M. Simkulak, Esq. (WS-8945)
1540 Broadway, 14th Floor
New York, NY 10036-4086
(212) 692-1000 (Telephone)
(212) 692-1020 (Facsimile)
and
Catherine B. Heitzenrater, Esq. (PA 205597) (admitted pro hac vice)
Elisa M. Hyder, Esq. (PA 328054)
30 South 17th Street
Philadelphia, PA 19103-4196
(215) 979-1000 (Telephone)
(215) 979-1020 (Facsimile)
*Counsel for the Chubb Companies*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                                             :
**In re**                                                   :          **Chapter 11**
                                                             :
**SEARS HOLDINGS CORPORATION,** *et al.*,                   :          **Case No. 18-23538 (SHL)**
                                                             :
                    **Debtors.**[1]                          :          **(Jointly Administered)**
                                                             :
-------------------------------------------------------------x

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is c/o M-III Partners, LP, 1700 Broadway, 19th Floor, New York, NY 10019.

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...................................................................................... ii

**PRELIMINARY STATEMENT** ...............................................................................1

**JURISDICTION AND VENUE** ...............................................................................2

**BACKGROUND** ........................................................................................................2

    **A.**    **The Bankruptcy Cases** ................................................................... 2

    **B.**    **The Insurance Program** ................................................................ 3

    **C.**    **The Lawsuit, Default Judgment, Settlement Agreements, And State Court Orders** ................................................................................ 5

        *1.*    *The Lawsuit* ....................................................................... 5

        *2.*    *The Default Judgment is entered and the First Settlement Agreement is signed all in violation of the automatic stay and the Stay Extension Order*7

        *3.*    *The Second Settlement Agreement is signed and the State Court Orders are entered based on the void Default Judgment, and Plaintiff orchestrates the Stay Relief Stipulation without acknowledging her stay violations to the Court.* ........................................................................... 9

**RELIEF REQUESTED** ...........................................................................................14

**ARGUMENT** ............................................................................................................14

    **A.**    **The Court Has Jurisdiction To Hear And Grant This Motion.** ................... 15

        *1.*    *The AL Policy Is Property Of The Debtors' Bankruptcy Estates.* ............ 15

        *2.*    *The Court Has Jurisdiction To Enforce The Automatic Stay And The Stay Extension Order.* ............................................................. 16

    **B.**    **The Chubb Companies Have Standing To Bring This Motion.** ................... 18

    **C.**    **The Default Judgment Was Void When Entered And Remains Void and Without Effect As A Violation of the Automatic Stay And The Stay Extension Order.** ................................................................ 20

        *1.*    *The Default Judgment Was Void When It Was Entered.* ......................... 20

        *2.*    *The Default Judgment Remains Void.* .................................................... 22

    **D.**    **The Court Should Also Rule That The Settlement Agreements And State Court Orders Are Void *Ab Initio* And Without Effect.** ......................... 26

**NOTICE** ...................................................................................................................31

**NO PRIOR REQUEST** ..........................................................................................31

## TABLE OF AUTHORITIES

**Cases**

*In re API, Inc.*, 331 B.R. 828 (Bankr. D. Minn. 2005) ...................................................20

*Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147
    (D.N.J. 2005)...........................................................................................................18, 20

*In re Beck Indus., Inc.*, 338 F. Supp. 1369 (S.D.N.Y. 1972) ........................................26

*In re Bell*, No. 14-60510, 2014 WL 6913509 (Bankr. N.D.N.Y. Nov. 13, 2014) .................. 26-27

*In re Bernard L. Madoff Inv. Secs., LLC*, 512 F. App'x 18 (2d Cir. 2013) ...................30

*In re Colonial Realty Co.*, 980 F.2d 125 (2d Cir. 1992).........................................21, 30

*In re Congoleum, Corp.*, 362 B.R. 167 (Bankr. D.N.J. 2007) ......................................18

*Conner v. Howe*, 344 F. Supp. 2d 1164 (S.D. Ind. 2004)............................................26

*Couloute v. Hunt, Leibert, Chester & Jacobson, LLC*, 295 B.R. 689 (D. Conn.
    2003) ...................................................................................................................16

*In re Dabrowski*, 257 B.R. 394 (Bankr. S.D.N.Y. 2001)........................................25, 29

*E. Equip. & Servs. Corp. v. Factory Point Nat'l Bank, Bennington*, 236 F.3d 117
    (2d Cir. 2001)............................................................................................................16

*E. Refractories Co. v. Forty Eight Insulations Inc.*, 157 F.3d 169 (2d Cir. 1998) ............ 20, 22-23

*In re Ehmke*, No. 05-023039-DEM, 2006 WL 1994904 (E.D.N.Y. July 14, 2006).......... 25, 28-29

*In re Enron Corp.*, 306 B.R. 465 (Bankr. S.D.N.Y. 2004) . When the Stay Relief
    Order ...................................................................................................................24-25

*Etuk v. Slattery*, 936 F.2d 1433 (2d Cir. 1991) ............................................................20

*In re Extraction Oil & Gas, Inc.*, No. 20-11548 (CSS), 2020 WL 7074142 (Bankr.
    D. Del. Dec. 3, 2020) ...........................................................................................28

*In re Flores*, 291 B.R. 44 (Bankr. S.D.N.Y. 2003).......................................................30

*In re Floyd*, 359 B.R. 431 (Bankr. D. Conn. 2007) .....................................................21

*In re Heating Oil Partners, LP*, 422 F. App'x 15 (2d Cir. 2011).........................*Passim*

*In re Heating Oil Partners*, No. 3:08-CV-1976 CSH, 2009 WL 5110838 (D.
    Conn. Dec. 17, 2009) ............................................................................................22

*Inn World Rep., Inc. v. MB Fin. Bank NA*, No. 19-CV-2559 (VSB), 2021 WL 4951455 (S.D.N.Y. Oct. 25, 2021) .........................................................................16

*In re Johns–Manville Corp.*, 36 B.R. 743 (Bankr. S.D.N.Y. 1984), *aff'd*, 52 B.R. 940 (S.D.N.Y. 1985) ...................................................................................................18

*Johns–Manville Corp. v. Asbestos Litig. Grp. (In re Johns-Manville Corp.)*, 40 B.R. 219 (S.D.N.Y. 1984) ...............................................................................................15

*In re Johns-Manville Corp.*, 517 F.3d 52 (2d Cir. 2008) *rev'd on other grounds sub nom*, Travelers Indem. Co. v. Bailey, 557 U.S. 137 (2009) ...............................17

*Loewi Realty Corp. v. Chanticleer Assocs., Ltd. (In re Chanticleer Assoc., Ltd.)*, 592 F.2d 70 (2d Cir. 1979) ...............................................................................................15

*MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89 (2d Cir. 1988) .........................................15

*In re Marine Pollution Serv., Inc.*, 99 B.R. 210 (Bankr. S.D.N.Y. 1989) ...................................21

*In re MF Glob. Holdings Ltd.*, 469 B.R. 177 (Bankr. S.D.N.Y. 2012) .........................................15

*In re Mid-Valley, Inc.,* 305 B.R. 425 (Bankr. W.D. Pa. 2004) .....................................................20

*In re Motors Liquidation Co.*, 514 B.R. 377 (Bankr. S.D.N.Y. 2014), *aff'd*, 829 F.3d 135 (2d Cir. 2016) ...............................................................................................17

*In re Nalley*, 507 B.R. 411 (Bankr. S.D. Ga. 2014) ...................................................................28

*Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522 (2d Cir. 1994) ..............................................21

*In re Robinson*, 228 B.R. 75 (Bankr. E.D.N.Y. 1998) .................................................................25

*Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano*, 140 S. Ct. 696 (2020) .........................................................................................................................23-24

*In re Sasson*, 424 F.3d 864 (9th Cir. 2005) ...................................................................... 25, 28-29

*In re Soares*, 107 F.3d 969 (1st Cir. 1997) ...................................................................................20

*In re Standard Insulations, Inc.*, 138 B.R. 947 (Bankr. W.D. Mo. 1992) ....................................18

*In re Telles*, No. 8-20-70325-REG, 2020 WL 2121254 (Bankr. E.D.N.Y. Apr. 30, 2020) .........................................................................................................................23-24

*Truong v. Litman*, 312 F. App'x 377 (2d Cir. 2009) ....................................................................16

*United States v. Colasuonno*, 697 F.3d 164 (2d Cir. 2012) .........................................................16

*Valencia v. Rodriguez (In re Rodriguez)*, 235 Fed. App'x. 383 (9th Cir. 2007) ..........................28

iii

*In re WorldCom, Inc.*, 325 B.R. 511 (Bankr. S.D.N.Y. 2005)........................................... 20, 22-23

**Statutes**

11 U.S.C. § 105(a) ......................................................................................................*Passim*

11 U.S.C. § 362(a) ......................................................................................................*Passim*

11 U.S.C. § 362(d) ..................................................................................................................22

11 U.S.C. § 541(a)(1)..............................................................................................................15

11 U.S.C. § 1109(b) ........................................................................................................... 18-19

28 U.S.C. § 157.........................................................................................................................2

28 U.S.C. § 157(b).....................................................................................................................2

28 U.S.C. § 1334(a) ....................................................................................................... 2, 15-16

28 U.S.C. § 1408.......................................................................................................................2

28 U.S.C. § 1409.......................................................................................................................2

DM3\9090160.1

**MOTION OF THE CHUBB COMPANIES FOR ENTRY OF AN ORDER (I) RULING THAT DEFAULT JUDGMENT, SETTLEMENT AGREEMENTS AND STATE COURT ORDERS ARE EACH VOID *AB INITIO* PURSUANT TO 11 U.S.C. §§ 105(a) AND 362(a) AND WITHOUT EFFECT; AND (II) GRANTING RELATED RELIEF**

ACE American Insurance Company ("**ACE American**") and each of its U.S.-based affiliates and any successors of each of the foregoing (collectively, the "**Chubb Companies**") hereby move (the "**Motion**") this Court for entry of an order substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**") (I) ruling that the Default Judgment, the Settlement Agreements, and the State Court Orders (each as defined herein) are void *ab initio* pursuant to 11 U.S.C. §§ 105(a) and 362(a) and without effect, and (II) granting related relief. In support of the Motion, the Chubb Companies respectfully state as follows:

**PRELIMINARY STATEMENT**

Upon the commencement of these bankruptcy cases and entry of this Court's Stay Extension Order (as defined herein) extending the automatic stay to protect certain non-debtors, including employees, Shelley S. Hawkins ("**Plaintiff**") should have immediately ceased all activity in her pending lawsuit against certain of the above-captioned Debtors and their employee. Instead, Plaintiff willfully pursued prosecution of her alleged claims against certain of the defendants, including one of the Debtors and one of the Debtors' employees, each protected by either the automatic stay or the Stay Extension Order. Plaintiff's actions resulted in a series of violations of the automatic stay and the Stay Extension Order. Plaintiff should not be permitted to benefit from those actions; rather, the Default Judgment, Settlement Agreements, and State Court Orders (each as defined herein) all resulting from Plaintiff's blatant disregard for the automatic stay and this Court's order should be ruled to be void *ab initio* and without effect.

1

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334(a).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief requested herein are 11 U.S.C. §§ 105(a) and 362(a).

## BACKGROUND

### A.      The Bankruptcy Cases

4.      Beginning on October 15, 2018 (the "**Petition Date**"), Sears Holdings Corporation ("**Sears**") and certain of its affiliates (collectively, and including Sears, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), commencing bankruptcy cases that were administratively consolidated at Case No. 18-23538 (the "**Bankruptcy Cases**").

5.      On January 9, 2019, this Court entered that certain *Order Extending the Automatic Stay to Certain Non-Debtor Parties* [ECF No. 1528] (the "**Stay Extension Order**"), which, among other things, extended the automatic stay imposed by section 362(a) of the Bankruptcy Code to, *inter alia*, certain employees of the Debtors[2] and certain actions and claims against them.  A true and correct copy of the Stay Extension Order is attached hereto as **Exhibit B** and is incorporated herein by reference.

6.      The Bankruptcy Cases remain open.[3]

---

[2]      As discussed more fully below, the Stay Extension Order extended the automatic stay to the employee of the Debtors for the claims involved in the Lawsuit, which is defined and discussed herein.

[3]      On October 15, 2019, the Court entered that certain *Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors and (II) Granting Related Relief* [ECF No.

B.      **The Insurance Program**

7.      Prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "**Policies**") to one or more of the Debtors as named insureds.

8.      Prior to the Petition Date, the Chubb Companies and the Debtors and/or their affiliates also entered into certain written agreements in connection with the Policies (as renewed, amended, modified, endorsed or supplemented from time to time, and including any exhibit or addenda thereto, collectively, the "**Insurance Agreements**" and together with the Policies, the "**Insurance Program**").

9.      The Insurance Program includes, *inter alia*, Policy No. H09044188 (as renewed, amended, modified, endorsed or supplemented from time to time, and together with any agreements, exhibits or addenda thereto, the "**AL Policy**") issued by ACE American to Sears as first named insured, pursuant to which ACE American provides certain automobile liability insurance for the period of August 1, 2016 to August 1, 2017 to certain of the Debtors and other insureds subject to certain limits, deductibles, exclusions, terms, and conditions, as more particularly described therein.  A true and correct copy of the declaration pages of the AL Policy is attached hereto as **<u>Exhibit C</u>** and is incorporated herein by reference.

10.     Pursuant to the Insurance Program, the Debtors were required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Insurance Program (collectively, the "**Obligations**").

---

5370], confirming the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [ECF No. 4476] (the "**Plan**").  The Effective Date (as defined in the Plan) of the Plan has not occurred.

11.    On August 20, 2020, the Court entered that certain *Order Authorizing (I) The Assumption of the Insurance Programs, and (II) The Assignment of a Certain Portion of the Insurance Programs and the Debtors' Interest in Certain Collateral Related Thereto to Transform Holdco LLC* [ECF No. 8396] (the "**Assumption Order**"), which, among other things, authorized the Debtors to enter into that certain Assumption Agreement, dated as of August 10, 2020, attached to the Assumption Order as Exhibit 1 (the "**Assumption Agreement**").[4]

12.    Pursuant to the Assumption Order and the Assumption Agreement, the Debtors assumed the entirety of the Insurance Program and assigned a certain portion thereof to Transform Holdco LLC ("**Transform**"), with the Retained Insurance Contracts (as defined in the Assumption Agreement) remaining with the Debtors.

13.    With respect to such Retained Insurance Contracts, the Chubb Companies agreed under the Assumption Agreement to reimburse themselves for certain Obligations under the Retained Insurance Contracts, including deductible obligations, solely by applying certain collateral held by the Chubb Companies to such Obligations, with no recourse to the Debtors to the extent such Obligations exceed the amount of collateral.  *See* Assumption Agreement § 4.1.

14.    The Assumption Agreement also included a certain release of the Chubb Companies and certain of their related parties by the Debtors and a certain release of the Debtors and certain of their related parties by the Chubb Companies.  *See* Assumption Agreement §§ 6, 7.

---

[4]    The Debtors and the Chubb Companies had also previously entered into a separate settlement agreement related to certain reinsurance and commutation agreements between them, but that transaction did not impact the AL Policy and is irrelevant to the matter discussed herein.

15.      The AL Policy is a Retained Insurance Contract under the Assumption Agreement

and the Assumption Order, and therefore remains property of the Debtors' estate, and is implicated

by the Lawsuit (as defined herein) and the claims asserted therein, discussed below.[5]

**C.      The Lawsuit, Default Judgment, Settlement Agreements, And State Court
Orders[6]**

*1.      The Lawsuit*

16.      Prior to the Petition Date, on or about September 20, 2018, Plaintiff filed a

complaint (the "**Complaint**") in the Superior Court of the State of Washington for Snohomish

County (the "**State Court**") against Debtor Sears Holdings Management Corporation ("**Sears**

**Holdings Management**") and Debtor A&E Factory Service, L.L.C. ("**A&E Factory Service**,"

and together with Sears Holdings Management, collectively, the "**Debtor Defendants**"), non-

debtor Edwin G. Miguel and two other non-debtor defendants[7] (collectively, the "**Non-Debtor**

**Defendants**," and together with the Debtor Defendants, collectively, the "**Defendants**"),[8]

commencing a lawsuit proceeding under Case No. 18-2-08408-31 (the "**Lawsuit**").   A true and

---

[5]      For the avoidance of doubt, nothing herein constitutes a representation, admission or determination as to the existence of coverage or the applicability of the Insurance Program or any portion thereof, including the AL Policy, with respect to the Lawsuit or Plaintiff's claims.

[6]      For the convenience of the Court, and due to the complexity of the facts at issue in this Motion, the Chubb Companies have prepared a timeline of the most relevant facts for the Court's reference, which is attached hereto as **Exhibit D**.  The timeline does not include a complete description of the events identified therein, nor all relevant events, but is intended to provide an overview-at-a-glance to the extent that is helpful.

[7]      In addition to Mr. Miguel, the two other Non-Debtor Defendants that the Complaint was originally filed against were (1) Fatemah Alsuwaidan, who allegedly struck Plaintiff's vehicle before being hit by Mr. Miguel, and (2) Jenni Wakida who was allegedly involved in a separate motor vehicle accident with Plaintiff a few weeks after the incident involving Mr. Miguel and Ms. Alsuwaidan. Jenni Wakida was dismissed from the Lawsuit on May 3, 2019, and her involvement therein is not relevant to this Motion.

[8]      None of the Chubb Companies were included as Defendants in the Complaint.  *See* Complaint.  However, as discussed further below, ACE American was subsequently added as a defendant in the Lawsuit through the Amended Complaint (as defined herein).  For the avoidance of doubt, the term Defendants as used herein shall not include any of the Chubb Companies.

correct copy of the Complaint is attached hereto as **Exhibit E** and is incorporated herein by reference.

17.     As relevant here, the Complaint alleges, in pertinent part, that Plaintiff's vehicle was rear ended by Fatemah Alsuwaidan and that moments later Edwin G. Miguel, a Sears employee, was unable to stop and rear ended Fatemah Alsuwaidan's vehicle causing a second collision with Plaintiff's vehicle. *See* Complaint ¶¶ 12-18.

18.     On the Petition Date (October 15, 2018), the automatic stay went into effect pursuant to section 362(a) of the Bankruptcy Code, staying all claims against the Debtors, including the Debtor Defendants.

19.     The Stay Extension Order was entered on January 9, 2019, and extended the automatic stay imposed by section 362(a) of the Bankruptcy Code to certain claims and lawsuits, including the Lawsuit as to all of the Non-Debtor Defendants, including Mr. Miguel.

20.     On January 24, 2019, defense counsel retained by the Chubb Companies in the Lawsuit sent a notice to Plaintiff's counsel via U.S. mail notifying Plaintiff's counsel that the Stay Extension Order was entered in the Bankruptcy Cases and that the stay was applicable to the Debtors, which included the Debtor Defendants (the "**Stay Notice**").  The Stay Notice also included a copy of the Stay Extension Order and all of the exhibits thereto.  A true and correct copy of the Stay Notice is attached hereto as **Exhibit F** and is incorporated herein by reference.

21.     However, despite the commencement of the Bankruptcy Cases, entry of the Stay Extension Order, and notice to Plaintiff's counsel thereof, Plaintiff willfully continued to pursue the Lawsuit against A&E Factory Service (a Debtor), Ms. Alsuwaidan, and Mr. Miguel.

> 2. *The Default Judgment is entered and the First Settlement Agreement is signed all in violation of the automatic stay and the Stay Extension Order*

22.     On April 25, 2019, Plaintiff moved (the "**Default Judgment Motion**") the State Court for an order of default and default judgment in the Lawsuit against A&E Factory Service (a Debtor), Ms. Alsuwaidan, and Mr. Miguel (collectively, the "**Default Judgment Defendants**"),[9] each of whom was protected by the automatic stay and/or the Stay Extension Order.  A true and correct copy of the Default Judgment Motion is attached hereto as **Exhibit G** and is incorporated herein by reference.

23.     On May 2, 2019, the State Court granted Plaintiff's motion and entered a default judgment in favor of Plaintiff against the Default Judgment Defendants in the amount of $399,297.32 plus $1,455.05 in statutory costs (the "**Default Judgment**").  A true and correct copy of the Default Judgment is attached hereto as **Exhibit H** and is incorporated herein by reference.

24.     On August 26, 2020, Plaintiff, through her counsel, sent a letter (the "**Demand Letter**") to Mr. Miguel stating that Mr. Miguel was "now a Judgment Debtor" and owed Plaintiff $440,827.61 due to the Default Judgment and interest thereon.  A true and correct copy of the Demand Letter is attached hereto as **Exhibit I** and is incorporated herein by reference.

25.     The Demand Letter included as enclosures a Notice of Deposition and a Subpoena and claimed that Mr. Miguel was required to appear in Plaintiff's counsel's office and to bring with him his "financial paperwork related to bank accounts, wages, all property owned, and so forth."  *See* Demand Letter at 1.

---

[9]     Plaintiff did not seek entry of default judgment by the Default Judgment Motion against either Sears Holdings Management or Jenni M. Wakida.  *See* Default Judgment Motion.  For the avoidance of doubt, the term Default Judgment Defendants as used herein does not include either Sears Holdings Management or Ms. Wakida.

26.     The Demand Letter also stated that Plaintiff's counsel could "free [Mr. Miguel] from this judgment and subpoena," but, astoundingly, that this "offer to free [Mr. Miguel] from paying this judgment *is withdrawn if [Mr. Miguel] contact[s] [his] insurance company*."  *See* Demand Letter at 1-2 (emphasis added).

27.     In Mr. Miguel's response to the Chubb Companies' interrogatories in the Lawsuit (the "**Response to Interrogatories**"), a true and correct copy of which is attached hereto as **Exhibit J** and incorporated herein by reference, Mr. Miguel confirmed that, after Plaintiff's counsel sent the Demand Letter, Plaintiff's counsel provided recommendations to Mr. Miguel as to counsel that Mr. Miguel could personally retain, and that Mr. Miguel retained one of the lawyers Plaintiff's counsel suggested.  *See* Response to Interrogatories at 10.

28.     On October 7, 2020, seemingly in acknowledgement of the effect of the automatic stay, Plaintiff filed a motion with the State Court seeking an order vacating the Default Judgment against *only* A&E Factory Service (the "**A&E Motion to Vacate**").  A true and correct copy of the A&E Motion to Vacate is attached hereto as **Exhibit K** and is incorporated herein by reference.

29.     Plaintiff did *not* move to vacate the Default Judgment as to Mr. Miguel at this time despite the terms of the Stay Extension Order, which she had knowledge of, but instead continued with her collection and enforcement efforts against Mr. Miguel by engaging in settlement discussions with Mr. Miguel through the counsel that Plaintiff recommended to him.

30.     These discussions resulted in Mr. Miguel entering into a settlement agreement with Plaintiff that the parties executed on October 9, 2020, *while the automatic stay and the Stay Extension Order were in effect* (the "**First Settlement Agreement**").  A true and correct copy of the First Settlement Agreement is attached hereto as **Exhibit L** and is incorporated herein by reference.

31.     In the First Settlement Agreement, Mr. Miguel "recognizes and acknowledges" that the Default Judgment has been entered against him, that the amount of the Default Judgment with ongoing interest was approximately $443,323, and that the entry of the Default Judgment leaves "Defendant Miguel's personal assets exposed and at risk to execution and collection by Plaintiff." First Settlement Agreement at 6.

32.     By the First Settlement Agreement, Mr. Miguel agreed, among other things, to assign certain claims against ACE American to Plaintiff in exchange for Plaintiff's agreement not to execute the Default Judgment against Mr. Miguel.  *See* First Settlement Agreement at 7-8.  The First Settlement Agreement does not reference the Bankruptcy Cases, the automatic stay, or the Stay Extension Order.

> 3.     *The Second Settlement Agreement is signed and the State Court Orders are entered based on the void Default Judgment, and Plaintiff orchestrates the Stay Relief Stipulation without acknowledging her stay violations to the Court.*

33.     On March 27, 2021, more than five months after the First Settlement Agreement was signed, Plaintiff's counsel sent an email (the "**Second Settlement Email**") to the counsel Plaintiff recommended for Mr. Miguel, which included as an attachment a *second* draft settlement agreement (the "**Draft Second Settlement Agreement**").  True and correct copies of the Second Settlement Email and the Draft Second Settlement Agreement are attached hereto as **Exhibits M** and **N**, respectively, and are each incorporated herein by reference.

34.     The Draft Second Settlement Agreement did not seek a judgment of $443,323, as was sought in the First Settlement Agreement, but instead provided, *inter alia*, that "Defendant Miguel recognizes and acknowledges that *judgment is being sought against him in this action in an amount exceeding $1,500,000*," and that "[t]he parties agree that *the reasonable value of the past and future damages sustained by and justly due Plaintiff is $1,500,000* and hereby stipulate

9

to entry of judgment against Defendant Miguel in Plaintiff's favor for that principal amount."
Draft Second Settlement Agreement at 7, 9 (emphasis added).

35.     The Draft Second Settlement Agreement again included an agreement from Mr.
Miguel to assign certain claims against ACE American to Plaintiff in exchange for Plaintiff's
agreement not to execute the now-significantly-increased confession of judgment against Mr.
Miguel. Draft Second Settlement Agreement at 8-9. Notably, Plaintiff was already assigned these
rights pursuant to the First Settlement Agreement. *See* First Settlement Agreement at 7-8.

36.     No explanation was provided in the Second Settlement Email as to why a second
settlement agreement was necessary or why the amount of the confession of judgment contained
therein ($1.5 million) was suddenly more than *three times greater* than the judgment contained in
the First Settlement Agreement ($443,323). *See* Second Settlement Email. The Second Settlement
Agreement also makes no reference at all to the First Settlement Agreement, notwithstanding
Plaintiff's agreement in the First Settlement Agreement not to further enforce or execute on the
Default Judgment as to Mr. Miguel. *See* Second Settlement Agreement.

37.     However, interestingly, just *two days* before Plaintiff's counsel sent the Draft
Second Settlement Agreement to Mr. Miguel, Plaintiff and the Debtors entered into that certain
proposed *Stipulation, Agreement, and Order Granting Limited Relief from the Automatic Stay
(Shelley S. Hawkins)* (the "**Stay Relief Stipulation**"), dated as of March 25, 2021, which the
Debtors filed in the Bankruptcy Cases under notice of presentment [ECF No. 9372]. A true and
correct copy of the Stay Relief Stipulation is attached hereto as **<u>Exhibit O</u>** and is incorporated
herein by reference.

38.    The Stay Relief Stipulation acknowledges, among other things, that (a) the Stay Extension Order was entered and extended the automatic stay to the Lawsuit; and (b) "[t]he Lawsuit remains pending but stayed in the [State Court]." Stay Relief Stipulation ¶¶ C, E.

39.    The Stay Relief Stipulation also states that Plaintiff "desires to **resume** the Lawsuit solely against the Non-Debtor Defendants," including Mr. Miguel, *see* Stay Relief Stipulation ¶ E (emphasis added), which is directly contrary to the fact that Plaintiff *never ceased* her prosecution of the Lawsuit against Mr. Miguel.

40.    The Stay Relief Stipulation also provides that, subject to and upon Court approval thereof, the automatic stay and the Stay Extension Order shall be modified to permit Plaintiff to continue the Lawsuit solely against the "Non-Debtor Defendants," including Mr. Miguel, and any insurer(s) thereof.  Even though the Stay Relief Stipulation states that Plaintiff "shall be entitled to pursue any remedies … against any of the Non-Debtor Defendants, and shall not be prohibited from … seeking to collect or enforce any judgment or settle any claims, controversies, or lawsuits against any of the Non-Debtor Defendants on any terms that are acceptable to [Plaintiff]," Stay Relief Stipulation ¶ 2, the Stay Relief Stipulation does not acknowledge either that the Default Judgment was sought and entered in violation of the automatic stay and the Stay Extension Order or that Plaintiff had already entered into the First Settlement Agreement with Mr. Miguel based thereon.

41.    On April 5, 2021, the Court entered an order approving the Stay Relief Stipulation [ECF No. 9392] (the "**Stay Relief Order**").

42.    On June 23, 2021, Mr. Miguel signed the second settlement agreement, which Plaintiff then countersigned on June 25, 2021 (the fully-executed second settlement agreement, the "**Second Settlement Agreement**," and together with the First Settlement Agreement,

collectively, the "**Settlement Agreements**"). A true and correct copy of the Second Settlement Agreement is attached hereto as **Exhibit P** and is incorporated herein by reference.

43.     The only substantive differences between the Draft Second Settlement Agreement and the fully-executed version of the Second Settlement Agreement were (1) the increase of the interest rate included therein from 5.25% to 12%, and (2) the addition of a severability clause. *See* Second Settlement Agreement at 10, 13.

44.     As did the draft thereof, the Second Settlement Agreement still included, *inter alia*, the assignment of certain claims against ACE American to Plaintiff – which had already been assigned to Plaintiff pursuant to the First Settlement Agreement – and Mr. Miguel's agreement to a confession of judgment in favor of Plaintiff in the amount of $1,500,000. *See* Second Settlement Agreement at 7-9. The Second Settlement Agreement also still did not mention, let alone expressly supersede or replace, the First Settlement Agreement or the prior assignment of claims and prior agreement not to enforce or execute on the Default Judgment against Mr. Miguel contained therein.

45.     On June 30, 2021, Plaintiff filed a motion dated as of June 24, 2021 – the day after Mr. Miguel signed the Second Settlement Agreement – with the State Court seeking an order vacating the Default Judgment against Mr. Miguel (the "**Miguel Motion to Vacate**," and together with the A&E Motion to Vacate, the "**Motions to Vacate**"). A true and correct copy of the Miguel Motion to Vacate is attached hereto as **Exhibit Q** and is incorporated herein by reference.

46.     The Miguel Motion to Vacate was granted on June 30, 2021. A true and correct copy of the order vacating the default judgment Against Mr. Miguel (the "**Order Miguel Motion to Vacate**") is attached hereto as **Exhibit R** and is incorporated herein by reference.

47.     On July 12, 2021, Plaintiff filed a motion dated as of July 6, 2021 (the "**Settlement Motion**") in the State Court for a determination of reasonableness with respect to the Second

Settlement Agreement and for judgment thereon. A true and correct copy of the Settlement Motion is attached hereto as **Exhibit S** and is incorporated herein by reference.

48.     On July 15, 2021, Plaintiff filed a motion, also dated as of July 6, 2021, (the "**Dismissal Motion**") in the State Court for voluntary dismissal of the Debtor Defendants from the Lawsuit, but not for voluntary dismissal of Mr. Miguel. A true and correct copy of the Dismissal Motion is attached hereto as **Exhibit T** and is incorporated herein by reference.

49.     On July 21, 2021, the State Court entered an order (the "**Settlement Order**") determining $1,500,000 to be a reasonable settlement amount between Plaintiff and Mr. Miguel and providing that the State Court will separately enter final judgment against Mr. Miguel in the amount of $1,500,000, plus interest. A true and correct copy of the Settlement Order is attached hereto as **Exhibit U** and is incorporated herein by reference.

50.     On September 2, 2021, the State Court entered a further order (the "**Confession of Judgment Order**," and, together with the Settlement Order, collectively, the "**State Court Orders**") approving Mr. Miguel's confession of judgment and entering judgment against him and in favor of Plaintiff in the amount of $1,500,000, plus interest. A true and correct copy of the Confession of Judgment Order is attached hereto as **Exhibit V** and is incorporated herein by reference.

51.      On September 8, 2021, Plaintiff filed an amended complaint, and then on September 15, 2021, Plaintiff filed a corrected amended complaint (the "**Amended Complaint**") in the Lawsuit, asserting, *inter alia*, Mr. Miguel's purportedly-assigned contract and bad faith claims against ACE American. These filings name ACE American as a defendant in the Lawsuit for the first time.

52.     On August 26, 2022, Plaintiff filed a Second Amended Complaint,[10] again asserting, *inter alia*, Mr. Miguel's purportedly-assigned contract and bad faith claims against ACE American (the "**Second Amended Complaint**").[11]   A true and correct copy of the Second Amended Complaint is attached hereto as **Exhibit W** and is incorporated herein by reference.

## RELIEF REQUESTED

53.     By this Motion, the Chubb Companies respectfully request entry of the Proposed Order ruling that the Default Judgment, Settlement Agreements and State Court Orders are each void *ab initio* pursuant to sections 105(a) and 362(a) of the Bankruptcy Code and without effect and grant such other and further relief as this Court determines to be necessary.

## ARGUMENT

54.     Throughout her prosecution of the Lawsuit, Plaintiff has acted in flagrant disregard of the protections afforded to the Debtors under the Bankruptcy Code and to Mr. Miguel under this Court's Stay Extension Order.   Now that the Chubb Companies have been made aware of Plaintiff's conduct (which was intentionally kept from the Chubb Companies through Plaintiff's counsel's instruction that his offer to "free" Mr. Miguel from the Default Judgment would be withdrawn if Mr. Miguel contacted his insurance company), the Chubb Companies must seek redress in this Court through a ruling that Plaintiff's actions in violation of the automatic stay and Stay Extension Order are void *ab initio* and without effect.

---

[10]     In asserting claims directly against the Chubb Companies, Plaintiff seeks fixed and actual damages of the $1.5 million confession of judgment amount contained in the Second Settlement Agreement, as well as additional, but not specified, actual damages, punitive damages, and interest thereon.

[11]     The Chubb Companies have responded to Plaintiff's Motion for Partial Summary Judgment in the Lawsuit. In their response, the Chubb Companies have asserted that the Default Judgment is void as a violation of the automatic stay, but the Chubb Companies have not sought any relief in the State Court with respect to that issue. After the Chubb Companies' response to Plaintiff's Motion for Partial Summary Judgment Plaintiff refiled the exact same partial summary judgment motion a second time, resulting in a reset response deadline and hearing date.   The Chubb Companies therefore intend to respond again to Plaintiff's Motion for Partial Summary Judgment, and may seek an order in the State Court staying the consideration of that motion pending a ruling from this Court on this Motion.

### A.    The Court Has Jurisdiction To Hear And Grant This Motion.

55.    The Chubb Companies assert that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(a).  In further support of this Court's jurisdiction, the Chubb Companies also assert that the AL Policy is property of the Debtors' bankruptcy estates, and that this Court must hear this dispute to ensure the continued efficacy of the automatic stay and Stay Extension Order.

#### 1.    The AL Policy Is Property Of The Debtors' Bankruptcy Estates.

56.    Section 541(a) of the Bankruptcy Code defines property of the estate to broadly include, *inter alia*, "all legal or equitable interest of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).

57.    It is axiomatic that "a bankruptcy court has jurisdiction over all of the property of the debtor's estate, wherever located."  *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 91 (2d Cir. 1988) (*citing Straton v. New*, 283 U.S. 318, 320-21 (1931) (stating that the purpose of bankruptcy law is "to place the property of the bankrupt, wherever found, under the control of the court, for equal distribution among the creditors")); *see also Loewi Realty Corp. v. Chanticleer Assocs., Ltd. (In re Chanticleer Assoc., Ltd.)*, 592 F.2d 70, 73-74 (2d Cir. 1979) ("[T]he [bankruptcy] court's power to preserve its jurisdiction by enjoining proceedings that would remove property from the bankrupt estate is fundamental.").

58.    It is also well-established that a debtor's insurance policy constitutes property of the debtor's bankruptcy estate.  *See, e.g.*, *Johns–Manville Corp. v. Asbestos Litig. Grp. (In re Johns-Manville Corp.)*, 40 B.R. 219, 230 (S.D.N.Y. 1984) ("That insurance falls within the scope of the Debtor's 'property' is suggested by the expansive fashion in which property has been defined generally under the Code."); *In re MF Glob. Holdings Ltd.*, 469 B.R. 177, 190 (Bankr.

15

S.D.N.Y. 2012) ("[I]t is well-settled that a debtor's liability insurance is considered property of the estate.").

59.     The AL Policy is a Retained Insurance Contract under the Assumption Agreement and Assumption Order, and therefore was not transferred to Transform, but rather remains with the Debtors and available to pay claims against the Debtors and the other insureds thereunder subject to the terms thereof.

60.     Accordingly, the AL Policy is property of the Debtors' estates and falls within the jurisdiction of this Court.

    2.    *The Court Has Jurisdiction To Enforce The Automatic Stay And The Stay Extension Order.*

61.     As the United States Court of Appeals for the Second Circuit (the "**Second Circuit**") has held, "[a]ny relief for a violation of the stay must be sought in the [b]ankruptcy [c]ourt" under 28 U.S.C. § 1334(a), not in the state court where the alleged violations occurred. *E. Equip. & Servs. Corp. v. Factory Point Nat'l Bank, Bennington*, 236 F.3d 117, 121 (2d Cir. 2001); *see also Truong v. Litman*, 312 F. App'x 377, 378 (2d Cir. 2009) (affirming district court's finding that claims that parties violated the automatic stay are "properly filed in the U.S. Bankruptcy Court with jurisdiction over the [debtor's] bankruptcy action"); *Couloute v. Hunt, Leibert, Chester & Jacobson, LLC*, 295 B.R. 689, 692 (D. Conn. 2003) ("As only the bankruptcy court has the authority to make such a finding [as to whether the automatic stay was violated], the case is properly adjudicated in bankruptcy court.").

62.     While a non-bankruptcy court may have jurisdiction to determine whether the automatic stay applies to a proceeding pending before it, bankruptcy courts have jurisdiction to provide relief with respect to the violation of the automatic stay.  *United States v. Colasuonno*, 697 F.3d 164, 172 n.4 (2d Cir. 2012); *see also Inn World Rep., Inc. v. MB Fin. Bank NA*, No. 19-CV-

16

2559 (VSB), 2021 WL 4951455, at *2 (S.D.N.Y. Oct. 25, 2021) (dismissing action filed in the District Court where plaintiffs' claims arose from alleged violations of the automatic stay because the District Court lacks subject matter jurisdiction over the action).

63.      Moreover, in addition to this Court's authority and jurisdiction under section 362 of the Bankruptcy Code, this Court also expressly retained jurisdiction to hear and determine all matters arising from or related to the implementation and enforcement of the Stay Extension Order. *See* Stay Extension Order ¶ 8; *see also In re Johns-Manville Corp.*, 517 F.3d 52, 60 (2d Cir. 2008) *rev'd on other grounds sub nom*, *Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009) ("It is undisputed that the bankruptcy court had continuing jurisdiction to interpret and enforce its own … orders."); *In re Motors Liquidation Co.*, 514 B.R. 377, 381 (Bankr. S.D.N.Y. 2014), *aff'd*, 829 F.3d 135 (2d Cir. 2016) ("Bankruptcy courts … have subject matter jurisdiction to enforce their orders in bankruptcy cases and proceedings under those courts' '*arising in*' jurisdiction." (emphasis in original)).

64.      Accordingly, this Motion is properly brought before this Court, which has jurisdiction to hear, consider, and remedy Plaintiff's violations of the automatic stay and of this Court's Stay Extension Order raised herein.  *See In re Heating Oil Partners, LP*, 422 F. App'x 15, 18 (2d Cir. 2011) (affirming district court's judgment affirming bankruptcy court's decision to grant debtor's insurer's motion to declare default judgment void *ab initio* as violation of the automatic stay).

65.      Indeed, if the Court fails to rule as void the Default Judgment, Settlement Agreements and State Court Orders, Plaintiff will be rewarded for her violations of the Bankruptcy Code and this Court's order, and the protections afforded by the automatic stay will be vitiated.

B.    **The Chubb Companies Have Standing To Bring This Motion.**

66.    Under section 1109(b) of the Bankruptcy Code, a "party in interest ... may raise and may appear and be heard on any issue in a case" under chapter 11.  11 U.S.C. § 1109(b).

67.    The term "party in interest" is an elastic term "designed to give a Court great latitude to insure fair representation of all constituencies impacted in any significant way by a Chapter 11 case." *In re Johns–Manville Corp.*, 36 B.R. 743, 754 (Bankr. S.D.N.Y. 1984), *aff'd*, 52 B.R. 940 (S.D.N.Y. 1985).

68.    The test to determine whether an entity is a party in interest is "whether the prospective party in interest has a sufficient stake in the outcome of the proceeding so as to require representation," which "sufficient stake" may include "a pecuniary interest that is directly or adversely affected."  *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 158 (D.N.J. 2005) (citing *In re Torrez*, 132 B.R. 924, 934 (Bankr. E.D. Cal. 1991) and *Davis v. Cox*, 356 F.3d 76, 93 (1st Cir. 2004)).

69.    Courts have recognized that a debtor's liability insurer is a "party in interest" where such insurer is responsible to pay claims brought against the debtor or other insureds under a debtor's insurance policy.  *See, e.g.*, *In re Congoleum, Corp.*, 362 B.R. 167, 173-74 (Bankr. D.N.J. 2007) (stating that an insurer had standing to object to plan confirmation because the plan implicated funds the bulk of which were to be provided by the insurer); *In re Standard Insulations, Inc.*, 138 B.R. 947, 950 (Bankr. W.D. Mo. 1992) (finding insurers had standing as parties in interest under section 1109(b) to object to claims against the estate where insurers were responsible for payment of injury claims).

70.    Under very similar facts to those at issue here, the Second Circuit has specifically held that an insurance company has standing to seek an order from a bankruptcy court that a default judgment entered by a state court against a debtor in violation of the automatic stay was void where

the insurance company will indemnify the debtor, in full or in part, for such judgment. *In re Heating Oil Partners, LP*, 422 F. App'x at 17 ("Without a doubt, [debtor's insurer], which has a personal stake in whether the default judgment is void, is a party in interest pursuant to section 1109(b).").

71.    Here, just as the insurer in *Heating Oil*, the Chubb Companies have a pecuniary interest that has been adversely affected by the Default Judgment and the resulting Settlement Agreements and State Court Orders.

72.    The Chubb Companies have a contractual right to defend the Debtors and the other insureds under the AL Policy, including Mr. Miguel,[12] and to contest both liability and damages. However, Plaintiff's actions addressed herein (including, *inter alia*, (1) conditioning any settlement of the Default Judgment on Mr. Miguel not contacting his insurance company, (2) preparing and entering into *two* settlement agreements with Mr. Miguel assigning certain claims against ACE American to Plaintiff, and (3) seeking and obtaining the State Court Orders determining the reasonableness of the Second Settlement Agreement and entering the inflated $1.5 million confession of judgment against Mr. Miguel) deprived the Chubb Companies of these contractual rights while simultaneously seeking to hold the Chubb Companies financially responsible for Plaintiff's claims, as well as asserting additional extra-contractual claims against the Chubb Companies.

73.    The Chubb Companies' interests, as well as their contractual rights and obligations are, therefore, directly affected by the Default Judgment, the Settlement Agreements, and the State

---

[12]    As previously noted above, nothing herein constitutes a representation, admission or determination as to the existence of coverage or the applicability of the Insurance Program or any portion thereof, including the AL Policy, with respect to the Lawsuit or Plaintiff's claims, including any of Plaintiff's claims against Mr. Miguel.

Court Orders, and, accordingly, the Chubb Companies have standing as "parties in interest" to bring this Motion for an order ruling all of the foregoing void.[13]

### C.  The Default Judgment Was Void When Entered And Remains Void and Without Effect As A Violation of the Automatic Stay And The Stay Extension Order.

#### 1.  *The Default Judgment Was Void When It Was Entered.*

74.    The filing of a bankruptcy petition imposes an automatic stay against "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title."  11 U.S.C. § 362(a).

75.    The automatic stay is one of the fundamental debtor protections provided under the Bankruptcy Code, and, as such, courts should rigorously enforce the automatic stay and discourage stay violations.  *See E. Refractories Co. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998) (citing H.R. Rep. No. 95–595, at 340 (1977)); *In re Soares*, 107 F.3d 969, 975–76 (1st Cir. 1997) ("In order to secure these important protections [of the automatic stay], courts must display a certain rigor in reacting to violations of the automatic stay.").

76.    The "long held view" in the Second Circuit is that any action that violates the automatic stay is void *ab initio*.  *In re WorldCom, Inc.*, 325 B.R. 511 n. 8 (Bankr. S.D.N.Y. 2005)

---

[13]    The Chubb Companies also have constitutional standing to bring this Motion.  The requirements for constitutional standing under Article III are: (1) an "injury-in-fact" that is concrete, actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) a substantial likelihood that the requested relief will remedy the alleged injury in fact.  *See Etuk v. Slattery*, 936 F.2d 1433, 1440 (2d Cir. 1991) (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472 (1982)); *In re Mid-Valley, Inc.*, 305 B.R. 425, 431 (Bankr. W.D. Pa. 2004). *In re API, Inc.*, 331 B.R. 828, 858 (Bankr. D. Minn. 2005). The Chubb Companies clearly meet this standard, because (1) the Chubb Companies have suffered an injury-in-fact through the adverse impacts on their contractual rights and pecuniary interests, which was (2) directly caused by the Default Judgment, the Settlement Agreements and the State Court Orders, and (3) such injury can be redressed by the Court entering an order ruling that the Default Judgment, the Settlement Agreements and the State Court Orders are void  and without effect as requested by this Motion.  *See Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 161 (D.N.J. 2005) (finding insurers met requirements for Article III standing to raise issues covered in court's Rule 2019 compliance order).

(citing *In re Best Payphones, Inc.*, 279 B.R. 92, 97 & n. 8 (Bankr. S.D.N.Y. 2002)); *see also Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994) ("[A]ny proceedings or actions described in section 362(a)(1) are void and without vitality if they occur after the automatic stay takes effect.").

77.     It is also well-established that the continued prosecution of a state court action barred by the automatic stay and the entry of a default judgment in such action in violation of the automatic stay is void *ab initio* and of no force or effect.  *See In re Heating Oil Partners, LP*, 422 F. App'x at 18 (finding that continued prosecution of lawsuit against debtor after automatic stay went into effect "render[ed] that proceeding and all subsequent actions, including the default judgment, in that case void and without vitality"); *In re Floyd*, 359 B.R. 431, 434 (Bankr. D. Conn. 2007) ("It is well-settled law in this Circuit that a postpetition state-court judgment … is void ab initio when entered in violation of § 362(a).").

78.     Accordingly, any effort by Plaintiff and her counsel to pursue the Lawsuit and to obtain and enforce any judgment against the Debtors after the Petition Date or against Mr. Miguel after this Court entered the Stay Extension Order on January 8, 2019 was a violation of the automatic stay and is therefore null and void.

79.     However, in blatant disregard of the automatic stay and the Stay Extension Order (a copy of which defense counsel served on Plaintiff's counsel),[14] Plaintiff moved the State Court

---

[14]     As set forth herein, in January 2019, Plaintiff received notice of the Stay Extension Order through the Stay Notice, which necessarily notified Plaintiff of the pendency of these Bankruptcy Cases and the extension of the stay to Mr. Miguel to the extent she had not previously received such notice.  Even if Plaintiff *never* received notice of these Bankruptcy Cases, however, the automatic stay imposed by section 362(a) was automatically in effect upon the Petition Date, and any acts by Plaintiff in violation thereof are still void.  *See In re Colonial Realty Co*., 980 F.2d 125, 137 (2d Cir. 1992) ("By its very terms, no action by any court is necessary for the stay to take effect."); *In re Marine Pollution Serv., Inc*., 99 B.R. 210, 217 (Bankr. S.D.N.Y. 1989) ("[A]ctions taken in violation of the stay are void even where there is no actual notice of the existence of the stay.").

for default and default judgment against the Default Judgment Defendants, including Mr. Miguel, who were all protected by the automatic stay and/or the Stay Extension Order, on April 25, 2019.

80.      This Default Judgment Motion was a clear violation of the automatic stay and the Stay Extension Order, and the resulting Default Judgment entered by the State Court against the Default Judgment Defendants on May 2, 2019 is, therefore, void and without effect.

2.      *The Default Judgment Remains Void.*

81.      Pursuant to section 362(d) of the Bankruptcy Code, a court may grant a party relief from the automatic stay by "terminating, annulling, modifying, or conditioning" the automatic stay.  11 U.S.C. § 362(d).

82.      As this Court has explained, "[t]hese remedies are independent and each apply to specific circumstances." *In re WorldCom, Inc.*, 325 B.R. at 519.

83.      An order *terminating* the automatic stay operates only prospectively, from the date of entry of the order, and the entry of the termination order "does not affect the status of actions taken between the filing of the bankruptcy petition and the entry of the termination order." *E. Refractories Co. Inc.*, 157 F.3d at 172; *see also In re WorldCom, Inc.*, 325 B.R. at 519.

84.      Thus, the termination of the automatic stay does "not reinstate or validate a stay violation," but rather it operates *prospectively* and "merely permits a creditor to initiate or re-initiate its action."  *In re Heating Oil Partners*, No. 3:08-CV-1976 CSH, 2009 WL 5110838, at *10 (D. Conn. Dec. 17, 2009) (quoting *In re WorldCom, Inc.*, 325 B.R. at 519).

85.      In contrast to an order terminating the automatic stay, "an order 'annulling' a stay does have retroactive effect, and thereby reaches back in time to validate proceedings or actions that would otherwise be deemed void *ab initio*." *E. Refractories Co. Inc.*, 157 F.3d at 172.

86.      Here, Plaintiff ostensibly could have sought (although the Chubb Companies do not believe such request would be proper as discussed in paragraph 92 and n.15, *infra*) entry of an

order by this Court *annulling* the automatic stay retroactively in an attempt to validate Plaintiff's

prior actions which violated the automatic stay.  *See E. Refractories Co. Inc.*, 157 F.3d at 172; *In*

*re WorldCom, Inc.*, 325 B.R. at 519 ("When an action has been commenced in violation of the

stay, that action can only be made legitimate by an order retroactively validating the action."); *but*

*see In re Telles*, No. 8-20-70325-REG, 2020 WL 2121254, at *5 (Bankr. E.D.N.Y. Apr. 30, 2020)

(denying motion to retroactively lift automatic stay based on Supreme Court's decision in *Roman*

*Catholic Archdiocese of San Juan v. Acevedo Feliciano*, 140 S. Ct. 696 (2020)).

87.    Plaintiff did not do so.

88.    Instead, Plaintiff entered into the Stay Relief Stipulation with the Debtors which

simply terminated the automatic stay then in place and as extended to certain non-debtors for the

"limited purpose of allowing the Lawsuit to proceed against the Non-Debtor Defendants and any

insurer(s) thereof."  Stay Relief Stipulation ¶ 2.

89.    The Stay Relief Order did not "annul" or otherwise retroactively lift the automatic

stay, nor did the Stay Relief Order even mention, let alone purport to validate or ratify, the Default

Judgment (or entry into the First Settlement Agreement).

90.    To the contrary, Plaintiff, through her bankruptcy counsel, signed and entered into

the Stay Relief Stipulation which stated only that Plaintiff desired to resume the Lawsuit, implying,

falsely, that Plaintiff had stopped prosecuting the Lawsuit prior to entering into the Stay Relief

Stipulation, and failing to disclose to this Court the pervasive and ongoing stay violations that

Plaintiff engaged in in the Lawsuit.  *See* Stay Relief Stipulation ¶ E.

91.    Indeed, the Stay Relief Order does not mention Plaintiff's prior violations of the

automatic stay or operate to annul the automatic stay retroactively, but rather includes language

permitting Plaintiff to prospectively "enforce any judgment … against any of the non-Debtor Defendants." Stay Relief Order ¶ 2.

92.     The Stay Relief Order did not (and, after the Supreme Court's ruling in *Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano*, 140 S. Ct. 696 (2020),[15] likely could not) authorize Plaintiff to enforce or otherwise utilize any *void* judgment such as the Default Judgment. *See In re Enron Corp.*, 306 B.R. 465, 477–78 (Bankr. S.D.N.Y. 2004) (stating that "[movant] should have requested that this Court annul, rather than 'lift' or terminate, the automatic stay" and that "[t]erminating rather than annulling the automatic stay to continue with an action that is deemed void … makes no sense"). When the Stay Relief Order was entered, there was no valid judgment in the Lawsuit for Plaintiff to pursue, enforce or otherwise utilize, and the terms of the Stay Relief Order did not purport to change this fact.

93.     Because Plaintiff did not seek, and the Court did not enter, any order retroactively lifting the automatic stay, the Default Judgment remains exactly what it was when it was entered— void *ab initio* and without effect.

94.     Although Plaintiff acted to vacate the Default Judgment first as against A&E Factory Service on October 7, 2020 and then later as against Mr. Miguel on June 30, 2021 by the Motions to Vacate, this does not change the fact that the Default Judgment was void *ab initio* and

---

[15]     In *Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano*, 140 S. Ct. 696 (2020), the Supreme Court held that federal courts can use *nunc pro tunc* orders only to reflect the reality of what has already happened, and that such orders are not "some Orwellian vehicle for revisionist history—creating 'facts' that never occurred in fact." *Acevedo*, 140 S. Ct. at 700-01. At least one court in the Second Circuit has held that the *Acevedo* Court's holding precludes the entry of orders annulling or lifting the automatic stay retroactively. *See In re Telles*, No. 8-20-70325-REG, 2020 WL 2121254, at *4 (Bankr. E.D.N.Y. Apr. 30, 2020) (acknowledging that Second Circuit courts have previously granted retroactive stay relief but declining to grant such relief because "[t]he landscape of the law is different post-*Acevedo*, and this Court is bound to follow the precedent set by the Supreme Court"). Accordingly, while not an issue for this present Motion (because, as discussed herein, Plaintiff never requested, and this Court never granted, retroactive stay relief), bankruptcy courts' authority to enter stay relief orders with retroactive effect so as to ratify past stay violations is at the very least called into question by *Acevedo*.

24

without effect when it was entered, or the fact that Plaintiff violated the automatic stay and the

terms of the Stay Extension Order by, *inter alia*, filing the Default Judgment Motion, and obtaining

entry of the Default Judgment against the Default Judgment Defendants.  *See In re Robinson*, 228

B.R. 75, 87 (Bankr. E.D.N.Y. 1998) (finding that secured creditor and its law firm willfully

violated the automatic stay after deliberately requesting and obtaining entry of judgment in

violation of the automatic stay even where law firm had judgment against debtor vacated before

debtor brought motion to enforce automatic stay); *see also In re Enron Corp.*, 306 B.R. at 465

(stating that a stay violation can "only be made legitimate by an order retroactively validating the

action").

95.     Accordingly, this Court should exercise its authority pursuant to sections 105(a)

and 362(a) of the Bankruptcy Code to rule that the Default Judgment was and continues to be void

*ab initio* and without effect.  *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or

judgment that is necessary or appropriate to carry out the provisions of this title."); *In re Heating

Oil Partners, LP*, 422 F. App'x at 18 (affirming district court's judgment affirming bankruptcy

court order ruling state court default judgment void *ab initio* pursuant to section 362(a)); *In re

Ehmke*, No. 05-023039-DEM, 2006 WL 1994904, at *5 (E.D.N.Y. July 14, 2006) (explaining that,

pursuant to Congress' power to enact uniform bankruptcy laws such as the Bankruptcy Code,

"state court judgments will be treated differently, with less or even no effect, then they would be

treated in state court" but that this "is not regarded as 'second-guessing' the merits decided by the

state court" and is "merely a necessary incident of enforcing the provisions of the Bankruptcy

Code"); *In re Dabrowski*, 257 B.R. 394, 406 (Bankr. S.D.N.Y. 2001) (stating that, because a void

state court judgment entered in violation of the Bankruptcy Code is null, "vacating such a judgment

is a mere formality"); *see also In re Sasson*, 424 F.3d 864, 871 (9th Cir. 2005) ("In the exercise of

federal bankruptcy power, bankruptcy courts may avoid state judgments in core bankruptcy proceedings … may modify judgments, and … may discharge them.").

> **D.      The Court Should Also Rule That The Settlement Agreements And State Court Orders Are Void *Ab Initio* And Without Effect.**

96.     Plaintiff did not stop at obtaining the void Default Judgment in violation of the automatic stay and the Stay Extension Order.

97.     To the contrary, despite having notice of these Bankruptcy Cases and the protections extended to Mr. Miguel through the Stay Extension Order, Plaintiff proceeded to attempt to collect on the void Default Judgment and used the void Default Judgment as at least additional leverage when engaging in settlement negotiations with Mr. Miguel (and the counsel Plaintiff hand-selected for him), while the automatic stay was still in effect and applicable to Mr. Miguel through the Stay Extension Order.

98.     Not only were the motion for and the entry of the Default Judgment violations of the automatic stay and the Stay Extension Order, but Plaintiff's subsequent efforts to then leverage the Default Judgment against Mr. Miguel so as to pressure him into resolving Plaintiff's stayed claims, including by sending the Demand Letter, were also violations.  *In re Bell*, No. 14-60510, 2014 WL 6913509, at *3 (Bankr. N.D.N.Y. Nov. 13, 2014) (explaining that communications are typically found to violate the stay where "evidence of coercion or harassment is present"); *Conner v. Howe*, 344 F. Supp. 2d 1164, 1172 (S.D. Ind. 2004) ("[Section 362(a)] acts to stay any attempt to enforce a judgment, regardless of when it was obtained."); *see also In re Beck Indus., Inc.*, 338 F. Supp. 1369, 1372 (S.D.N.Y. 1972) (finding default judgment to be violation of the automatic stay and directing plaintiffs to "take steps to vacate the default judgment" and to repay "all monies taken from or paid out … in satisfaction of that default judgment").

99.    Plaintiff's Demand Letter, which claimed that Mr. Miguel is "now a Judgment Debtor" who owed Plaintiff $440,827.61 for the Default Judgment, and that Mr. Miguel was also required to appear in Plaintiff's counsel's office with numerous financial documents (*see* Demand Letter at 1) seems intended to coerce Mr. Miguel through threatened action to satisfy the void Default Judgment.  This is exactly the type of communication prohibited by section 362(a).  *See In re Bell*, 2014 WL 6913509, at *3 (stating that courts find correspondence to be a violation of the automatic stay where there is a "demand for payment of a prepetition debt accompanied by coercion in the form of threatened action or some other consequence for nonpayment, or harassment to induce the debtor to pay").

100.    Plaintiff's repeated improper and prohibited acts to collect on her prepetition claims and enforce the void Default Judgment resulted in two separate settlement agreements with Mr. Miguel.

101.    While the Second Settlement Agreement was executed after the Stay Relief Order was entered, it was prepared and presented to Mr. Miguel, *weeks* before the Stay Relief Order was entered.   Very few changes were made to the Second Settlement Agreement between when Plaintiff sent it to Mr. Miguel on March 27, 2021 and when it was signed, and all of the key terms, such as the amount of the $1.5 million judgment and Plaintiff's agreement not to enforce or execute any judgment against Mr. Miguel, remained the same.

102.    Accordingly, the Second Settlement Agreement is, in essence, a *pre-stay relief settlement*, just as the First Settlement Agreement, which Plaintiff willfully pursued through her harassing and coercive conduct while the automatic stay and Stay Extension Order were still in effect.[16]

---

[16]    Notably, the Second Settlement Agreement was also entered into *after* Plaintiff already agreed not to enforce the Default Judgment against Mr. Miguel pursuant to the First Settlement Agreement. Thus, this Second Settlement

103.    The Settlement Agreements and the State Court Orders all also stemmed from, and are based upon (in whole or in part), the Default Judgment, which was void *ab initio*. Without that Default Judgment, Plaintiff would have had no basis to assert in the Demand Letter that Mr. Miguel was "now a Judgment Debtor" owing more than $440,800 to Plaintiff.  *See* Demand Letter at 1. Thus, the Default Judgment provided the basis for the Demand Letter and Plaintiff's threats contained therein to enforce any judgment against Mr. Miguel, depose him, and compel him to produce various financial documents unless he agreed to discuss a settlement of his purported liability to Plaintiff—with any such settlement expressly condition upon Mr. Miguel *not* consulting or advising his insurance company.[17]  *See* Demand Letter at 2.

104.    While Plaintiff did move to vacate the Default Judgment against Mr. Miguel (*see* Miguel Motion to Vacate), she did so only *after* she had successfully used the Default Judgment as leverage to convince Mr. Miguel to enter into the Settlement Agreements.  Thus, the Settlement

---

Agreement could have only been the result of Plaintiff's coercive and/or harassing communications with Mr. Miguel based on her threatened enforcement of the Default Judgment, which she continued even after the execution of the First Settlement Agreement, all before the Stay Relief Order was entered.

[17]    Moreover, because both of the Settlement Agreements were prepared before the entry of the Stay Relief Order and without the approval of this Court, and because they both implicate the AL Policy (which is property of the Debtors' estates), both of the Settlement Agreements should be ruled to be void *ab initio* and without effect as violations of the automatic stay and of the Stay Extension Order despite the fact that the Second Settlement Agreement was signed after the Stay Relief Order was entered.  *See Valencia v. Rodriguez (In re Rodriguez)*, 235 Fed. App'x. 383, 385 (9th Cir. 2007) (declaring post-petition settlement agreement to be void as violation of the automatic stay where bankruptcy court did not approve, and debtors' creditors did not receive notice of, settlement, regardless of whether debtors challenged the settlement agreement's validity in the bankruptcy court); *In re Extraction Oil & Gas, Inc.*, No. 20-11548 (CSS), 2020 WL 7074142, at *3-4 (Bankr. D. Del. Dec. 3, 2020) (declaring that settlement agreement that impacted property of the estate was void *ab initio* as violation of the automatic stay).

Further, because the Settlement Order approved the Second Settlement Agreement and the Settlement Order then paved the way for entry of the Confession of Judgment Order, which entered judgment against Mr. Miguel in favor of Plaintiff in the $1.5 million amount set forth in the Second Settlement Agreement, each of the State Court Orders should also be ruled to be void *ab initio* and without effect.  *See Valencia v. Rodriguez (In re Rodriguez)*, 235 Fed. App'x. at 385 (affirming district court's decision "that the state court judgment enforcing the [void] settlement agreement is necessarily void as well"); *In re Nalley*, 507 B.R. 411, 419 (Bankr. S.D. Ga. 2014) (declaring state court divorce decree void where it incorporated terms of settlement entered into in violation of the stay); *see also Ehmke*, 2006 WL 1994904, at *5 (stating that state court judgments may be treated as having "no effect" as a "necessary incident" of bankruptcy courts "enforcing the provision of the Bankruptcy Code"); *Sasson*, 424 F.3d at 871 (stating that bankruptcy courts "may avoid" and "may discharge" state judgments in exercise of federal bankruptcy power).

Agreements and the State Court Orders all trace back to the void Default Judgment, which was sought and entered in violation of the automatic stay and this Court's Stay Extension Order.

105.    To allow Plaintiff to use and leverage the void Default Judgment that she acquired in complete disregard of the protections granted to the Debtors and Mr. Miguel in these Bankruptcy Cases would effectively ratify, arguably even *reward*, Plaintiff for her willful and malicious stay violations.[18]

106.    This Court should not countenance such an untenable result.

107.    Instead, in addition to ruling that the Default Judgment is void *ab initio* and without effect, the Court should also rule as void and without effect each of the Settlement Agreements and the State Court Orders, which were each based, in whole or in part, upon the void Default Judgment and grant such other and further relief as the Court determines to be appropriate under the circumstances.

108.    The Court has the power to grant this relief.  *See* 11 U.S.C. §§ 105(a), 362(a); *Heating Oil*, 422 F. App'x at 18; *Ehmke*, 2006 WL 1994904, at *5; *Dabrowski*, 257 B.R. at 406 (a bankruptcy court's voiding of a state court judgment entered in violation of the Bankruptcy Code is "a mere formality"); *see also Sasson*, 424 F.3d at 871 ("In the exercise of federal bankruptcy power, bankruptcy courts may avoid state judgments in core bankruptcy proceedings … may modify judgments, and … may discharge them.").

109.    Anything less than a ruling that the Default Judgment, Settlement Agreements and State Court Orders are void and without effect would leave Plaintiff's sustained and consistent

---

[18]    Although the Chubb Companies have not sought sanctions in this Motion, the Chubb Companies reserve all of their rights to do so on account of Plaintiff's prior actions in violation of the automatic stay and the Stay Extension Order and/or should Plaintiff undertake similar actions in the future (including, for the avoidance of doubt and without limitation, purporting to settle her claims against Mr. Miguel for inflated values or failing to engage with counsel selected by the Chubb Companies to represent Mr. Miguel).

practice of violating the automatic stay and the Stay Extension Order unchecked and would undermine the protections afforded to the Debtors and Mr. Miguel under the Bankruptcy Code and by this Court.

110.    Plaintiff should not be rewarded for her "rush to the courthouse" tactics and persistent stay violations geared towards obtaining access to the Debtors' insurance and artificially inflating her potential recovery under such insurance.  This is the precise result that section 362(a) of the Bankruptcy Code was intended to prevent.  *See In re Colonial Realty Co.*, 980 F.2d 125, 133 (2d Cir. 1992) (stating that the purpose of the automatic stay is to "prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts" (quoting *Fidelity Mortg. Invs. v. Camelia Builders, Inc*., 550 F.2d 47, 55 (2d Cir. 1976))); *In re Flores*, 291 B.R. 44, 49 (Bankr. S.D.N.Y. 2003) ("The automatic stay is designed to preclude the rush to the courthouse, the piecemeal dismantling of the debtor's estate and the instant destruction of the debtor's economic life or business by individual creditors' actions against the debtor and debtor's property in their own interests."); *see also In re Bernard L. Madoff Inv. Secs., LLC*, 512 F. App'x 18, 20 (2d Cir. 2013) (explaining that, were it not for the Court's extension of the automatic stay to non-debtors and injunction of certain actions against such non-debtors, "there would ensue a chaotic rush to the courthouse … of those seeking assets that the trustee claims are properly part of the [debtor's] estate").

111.    Accordingly, for all of the foregoing reasons, the Court should rule not only that the Default Judgment is void *ab initio* and without effect, but also that the Settlement Agreements and State Court Orders are all void *ab initio* and without effect, as well.[19]

---

[19]    For the avoidance of doubt, the Chubb Companies do not seek to deprive the Plaintiff of her rights to assert her claim, or of her day in court.  Rather, the voiding of the Default Judgment, Settlement Agreements and State Court

## NOTICE

112.    Notice of this Motion has been provided to Plaintiff, Mr. Miguel, and all other parties as required under and in accordance with the procedures set forth in the *Amended Order Implementing Certain Notice and Case Management Procedures* [ECF No. 405].  The Chubb Companies respectfully submit that no further notice of this Motion is required or necessary.

## NO PRIOR REQUEST

113.    No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Chubb Companies respectfully ask the Court to enter an order substantially in the form of the Proposed Order (i) ruling that the Default Judgment, Settlement Agreements, and State Court Orders are all void and without effect, and (ii) granting such other and further relief as this Court may deem appropriate and/or necessary.

Dated:  October __, 2022

Respectfully submitted,

DUANE MORRIS LLP

*/s/ Wendy M. Simkulak*
Wendy M. Simkulak, Esq. (WS-8945)
1540 Broadway, 14th Floor
New York, NY 10036-4086
(212) 692-1000 (Telephone)
(212) 692-1020 (Facsimile)
and
Catherine B. Heitzenrater, Esq. (PA 205597) (admitted pro hac vice)
Elisa M. Hyder, Esq. (PA 328054)
30 South 17th Street
Philadelphia, PA 19103-4196
(215) 979-1000 (Telephone)
(215) 979-1020 (Facsimile)

*Counsel for the Chubb Companies*

---

Orders would return Plaintiff to the position she *should have been in* when the Stay Relief Order was entered; namely, asserting her claims in the State Court without the benefit of her ill-gotten and void judgments.

**DUANE MORRIS LLP**
Wendy M. Simkulak, Esq. (WS-8945)
1540 Broadway, 14th Floor
New York, NY 10036-4086
(212) 692-1000 (Telephone)
(212) 692-1020 (Facsimile)
and
Catherine B. Heitzenrater, Esq. (PA 205597)
(admitted *pro hac vice*)
Elisa M. Hyder, Esq. (PA 328054)
30 South 17th Street
Philadelphia, PA 19103-4196
(215) 979-1000 (Telephone)
(215) 979-1020 (Facsimile)
*Counsel for the Chubb Companies*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
--------------------------------------------------------------x
                                    :
In re                               :       Chapter 11
                                    :
SEARS HOLDINGS CORPORATION, et al., :       Case No. 18-23538 (SHL)
                                    :
          Debtors.¹                 :       (Jointly Administered)
                                    :
--------------------------------------------------------------x
```

<u>CERTIFICATE OF SERVICE</u>

---

¹       The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is c/o M-III Partners, LP, 1700 Broadway, 19th Floor, New York, NY 10019.

I, Wendy M. Simkulak, certify that I am not less than 18 years of age, and that the date set forth below, I caused a true and correct copy of the foregoing *Motion of the Chubb Companies for Entry of an Order (I) Ruling that Default Judgment, Settlement Agreements and State Court Orders Are Void* Ab Initio *Pursuant to 11 U.S.C. §§ 105(a) and 362(a) and Without Effect; and (II) Granting Related Relief* to be filed and served via CM/ECF on all parties registered to receive electronic notification in this case and via electronic mail and first class mail, postage prepaid, to the parties set forth on the attached service list, unless otherwise noted.

Under penalty of perjury, I declare that the foregoing is true and correct.


Dated: October 7, 2022                          */s/ Wendy M. Simkulak*
                                                 Wendy M. Simkulak, Esq.

## SERVICE LIST

### Via Federal Express

Chambers of the Honorable Judge Sean H. Lane
United States Bankruptcy Court for the Southern District of New York
300 Quarropas Street, Room 248
White Plains, New York 10601

### Via First Class Mail

c/o Sears Holdings Corporation
3333 Beverly Road Hoffman Estates IL 60179
Attn: Stephen Sitley Esq., and Luke J. Valentino, Esq.
*The Debtors*

Shelley S. Hawkins
22221 32nd Ave SE
Bothell, WA 98021
*Plaintiff*

Edwin Miguel
17805 29th Drive SE
Bothell, Washington 98012

### Via First Class Mail and Electronic Mail

Law Offices of Terence F. Traverso, PS
1408 140th Place NE, Suite 140
Bellevue, WA 98007
Attn: Terence F. Traverso
assistant1@traversolaw.com
*Attorney for Plaintiff*

Foster Garvey P.C.
1111 Third Avenue, Suite 3000
Seattle, WA 98101
Attn: Dan Youngblut
dan.youngblut@foster.com
*Attorney for Plaintiff*

Malcolm Law Firm PLLC
8201 164th Ave. NE, Suite 200
Redmond, WA 98052
Attn: Sean B. Malcolm
sean@kirklandtriallawyer.com
*Attorney for Mr. Edwin Miguel*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attn: Ray C. Schrock, P.C., Jacqueline Marcus, Esq., Garret A. Fail, Esq., and Sunny Singh, Esq.
ray.schrock@weil.com
garrett.fail@weil.com
jacqueline.marcus@weil.com
sunny.singh@weil.com
*Counsel to the Debtors*

Office of the United States Trustee for Region 2
201 Varick Street, Suite 1006
New York, New York 10014
Attn: Paul Schwartzberg, Esq.
paul.schwartzberg@usdoj.gov
*U.S. Trustee*

Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, NY 10036
Attn: Paul D. Leake, Esq., Shana A. Elberg, Esq., and George R. Howard, Esq.
 paul.leake@skadden.com
shana.elberg@skadden.com
george.howard@skadden.com
*Counsel for Bank of America, N.A., administrative agent under the First Lien Credit Facility and
the DIP ABL Agent*

Davis Polk & Wardell LLP
450 Lexington Avenue
New York, NY, 10017
Attn: Marshall S. Huebner, Esq. and Eli J. Vonnegut, Esq.
marshall.huebner@davispolk.com
eli.vonnegut@davispolk.com
*Counsel for Citibank, N.A., as administrative agent under the Stand-Alone L/C Facility*

Cleary, Gottlieb
One Liberty Plaza, New York, NY, 10006
Attn: Sean A. O'Neal, Esq.
soneal@cgsh.com
*Counsel for JPP, LLC, as agent under the Second Lien Credit Facility, IP/Ground Lease Term
Loan Facility, and the Consolidated Secured Loan Facility*

Kelley Drye & Warren LLP
101 Park Avenue, New York, NY 10178
Attn: Eric R. Wilson, Esq., Benjamin D. Feder, Esq., and T. Charlie Liu, Esq.
ewilson@kelleydrye.com

bfeder@kelleydrye.com
cliu@kelleydrye.com
*Counsel for Computershare Trust Company, N.A., as trustee for the Second Lien PIK Notes, the Holdings Unsecured PIK Notes, and the Holdings Unsecured Notes*

Seyfarth Shaw LLP
620 Eighth Avenue
New York, NY 10018
Attn: Edward M. Fox, Esq.
emfox@seyfarth.com
*Counsel for Wilmington Trust, National Association, as indenture trustee for the Second Lien Notes*

Carter Ledyard & Milburn LLP
2 Wall Street, New York, NY 10015
Attn: James Gadsden, Esq.
gadsden@clm.com
*Counsel for The Bank of New York Mellon Trust Company, as successor trustee for the SRAC Unsecured PIK Notes, SRAC Unsecured Notes, and the SRAC Medium Term Notes*

Locke Lord LLP
111 South Wacker Drive, Chicago, IL 60606
Attn: Brian A. Raynor, Esq.
braynor@lockelord.com
*Counsel for the Pension Benefit Guaranty Corporation*

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park, New York, NY 10036
Attn: Philip C. Dublin, Esq., Ira Dizengoff, Esq., and Sara Lynne Brauner, Esq.
pdublin@akingump.com
idizengoff@akingump.com
sbrauner@akingump.com
*Counsel for the Official Committee of Unsecured Creditors*