<div align="right">Hearing Date and Time:  November 3, 2022 at 2:00 P.M. (ET)<br>
Relates to Motion [D.I. 10661]</div>

**FOSTER GARVEY P.C.**
Dan Youngblut (DY-1988)
1111 Third Avenue, Suite 3000
Seattle, WA 98101
Telephone:  (206) 447-2908
Email:  dan.youngblut@foster.com

**THE LAW OFFICES OF TERENCE F. TRAVERSO**
Terence F. Traverso (*admitted pro hac vice*)
1408 140th Place NE, Suite 140
Bellevue, WA 98007
Telephone:  (425) 453-0115
Email:  assistant1@traversolaw.com

*Counsel to Shelley S. Hawkins*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | Chapter 11 |
| **SEARS HOLDINGS CORPORATION, *et al.*,** | Case No. 18-23538 (SHL) |
| **Debtors.[1]** | (Jointly Administered) |

### OBJECTION OF SHELLEY S. HAWKINS TO MOTION OF THE CHUBB COMPANIES FOR ENTRY OF AN ORDER (I) RULING THAT DEFAULT JUDGMENT, SETTLEMENT AGREEMENTS AND STATE COURT ORDERS ARE EACH VOID AB INITIO PURSUANT TO 11 U.S.C. §§ 105(a) AND 362(a) AND WITHOUT EFFECT; AND (II) GRANTING RELATED RELIEF

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC (5554); Sears STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).

<u>**TABLE OF CONTENTS**</u>

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT ........................................................................1

BACKGROUND .................................................................................................2

    A.  The Washington Litigation, the Chapter 11 Cases, and
        the Stay Extension Order ...................................................................2

    B.  The Assumption Agreement and the Stay Relief Order...........................3

    C.  Subsequent Developments in the Washington Litigation.......................5

    D.  Partial Summary Judgment Motion ........................................................8

ARGUMENT .......................................................................................................8

    A.  There is No Basis to Void Vacated Orders or Post-Stay Relief Agreements..........8

        I.        The Default Judgment................................................................9

        II.       The Settlement Agreements......................................................10

        III.     The State Court Orders .............................................................14

    B.  Ace American Has Waived its Right to Object to Purported Stay Violations.....16

    C.  The Motion Is Barred by the Equitable Doctrine of Laches..................18

    D.  There Is No Good Reason for Ace American to Invoke
        this Court's Jurisdiction.......................................................................20

    E.  Ace American Lacks Standing to Bring the Motion
        and Assert Stay Violations ..................................................................24

    F.  Ace American's Arguments on Retroactive Stay Termination
        Are a Red Herring ...............................................................................25

NOTICE...............................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013)............................................................................ 10

*In re Beck Indus., Inc*, 338 F.Supp. 1369 (S.D.N.Y. 1972) ............................................................ 9

*In re Bolus*, 2022 WL 3948685 (Bankr. M.D. Pa. Aug. 29, 2022).............................................. 12

*In re Congoleum Corp.*, 362 B.R. 167 (Bankr. D.N.J. 2007) ...................................................... 25

*In re Extraction Oil & Gas, Inc.*, 2020 WL 7074142 (Bankr. D. Del. Dec. 3, 2020) ................. 12

*In re Grove Instruments, Inc.*, 573 B.R. 307 (Bankr. D. Mass. 2017).................................... 21, 24

*In re Heating Oil Partners, LP*, 422 F. App'x 15 (2d Cir. 2011) ................................................ 24

*In re Johns-Manville Corp.*, 517 F.3d 52 (2d Cir. 2008) ("<u>*Manville III*</u>") .................................. 21

*In re Johns-Manville Corp.*, 600 F.3d 135 (2d Cir. 2010)...................................................... 20, 21

*In re Lehman Bros. Inc.*, 617 B.R. 231 (Bankr. S.D.N.Y. 2020)............................................ 18, 19

*In re MF Global Holdings Ltd.*, 515 B.R. 193 (Bankr. S.D.N.Y. 2014) ...................................... 22

*In re Nilhan Developers, LLC*, 622 B.R. 795 (Bankr. N.D. Ga. 2020) ........................................ 25

*In re Ottoman*, 621 B.R. 7687 (Bankr. E.D. Mich. 2020) ............................................................ 14

*In re Quigley Co., Inc.*, 676 F.3d 45 (2d Cir. 2012) .................................................................... 20

*In re Rodriguez*, 235 Fed. App'x 383 (9th Cir. 2017) ................................................................. 12

*In re Soundview Elite Ltd.*, 565 B.R. 534 (Bankr. S.D.N.Y. 2017)........................................ 21, 23

*In re Standard Insulations, Inc.*, 138 B.R. 947 (Bankr. W.D. Mo. 1992) ................................... 24

*In re Taylor*, 2018 WL 1413538 (Bankr. D. Conn. Mar. 20, 2018) ............................................ 25

*In Terrace Housing Associates, Ltd.*, 577 B.R. 459 (Bankr. E.D. Pa. 2017).............................. 19

*In re Uhrig*, 306 B.R. 687 (Bankr. M.D. Fla. 2004)................................................................... 17

*In re W.R. Grace & Co.*, 591 F.3d 164 (3d Cir. 2009) ................................................................ 21

## **Bankruptcy Court Orders/Related**

*Affidavit of Service* [D.I. 9383] ........................................................................................4

*Order Authorizing (I) The Assumption of the Insurance Programs, and (II) The Assignment of a
Certain Portion of the Insurance Programs and the Debtors' Interest in Certain Collateral
Related Thereto to Transform Holdco LLC* [D.I. 8396]
("Assumption Agreement Order")............................................................3, 4, 21, 22, 23

*Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holding
Corporation and its Affiliated Debtors and (II) Granting Related Relief* [D.I. 5370] ...................1

*Order Extending the Automatic Stay to Certain Non-Debtor Parties* [D.I. 1528]
("Stay Extension Order").................................................................................. *passim*

*Stipulation, Agreement, and Order Granting Limited Relief from the Automatic Stay
(Shelley S.* Hawkins) [D.I. 9372] ("Stay Relief Stipulation") .........................................4, 5, 16, 17

*Stipulation, Agreement, and Order Granting Limited Relief from the Automatic Stay
(Shelley S.* Hawkins) [D.I. 9392] ("Stay Relief Order")...................................................... *passim*

Shelley S. Hawkins ("Hawkins") hereby files this objection (this "Objection") to the Motion[2] filed by Ace American[3] [D.I. 10661] (the "Motion"). In support of this Objection, Hawkins respectfully states as follows:

## PRELIMINARY STATEMENT

The Motion filed by Ace American is all hat and no cattle. What non-Debtor, non-creditor Ace American fundamentally asks this Court to do, more than *three years* after the Debtors confirmed a plan [D.I. 5370], is inject itself into state court litigation by a non-Debtor against a non-Debtor and that non-Debtor's insurance company. What's more, Ace American does so by asking this Court to void certain agreements or court orders which are, as Ace American itself concedes, either already vacated (or rendered moot) or which were executed by non-Debtor Hawkins and non-Debtor defendant Edwin G. Miguel ("Miguel") or entered by the state court after Hawkins obtained relief (supported by the Debtors and not objected to by Ace American) from this Court—lifting the automatic stay against Miguel and any insurers of Miguel. For this reason alone, Hawkins respectfully submits that the Court should deny the Motion.

Even if the Motion targeted agreements or orders which violate the automatic stay—which it does not—Ace American has waived its right to assert an automatic stay violation. Ace American has spent much of the past year trying to remove the Washington Litigation to federal court, which the Western Washington District Court ultimately denied, found to be "improper," and merited an award of attorneys' fees to Hawkins. Now, more than *1.5 years* after Ace American

---

[2]    Capitalized terms used but not defined herein shall have the meanings given to them in the *Motion of the Chubb Companies for Entry of an Order (I) Ruling that Default Judgment, Settlement Agreements and State Court Orders are Each Void Ab Initio Pursuant to 11 U.S.C. §§ 105(a) and 362(a) and Without Effect; and (II) Granting Related Relief* [D.I. 10661].

[3]    The Motion was filed by "the Chubb Companies," but for ease of reference herein, this Objection will refer to the movant as Ace American Insurance Company ("Ace American"), the only "Chubb Company" which is named as a defendant in the Washington litigation.

1

failed to object to the stay which Hawkins sought and obtained (with the support of the Debtors),
Ace American, a non-Debtor, asks this Court to throw out the preceding 1.5 years of extensive
litigation activity (in which it participated) in the state court. Ace American's delay in seeking
redress from this Court for purported stay violations is unexplained and inexcusable.

Additionally, the Washington Litigation does not (and will not) have any impact on the
Debtors, their reorganization efforts, or their bankruptcy estates. The Debtors have been dismissed
from the Washington Litigation, Ace American has released all claims it may have against the
Debtors, and Ace American admits that it was an insurer of Miguel. In any case, the claims which
Miguel validly assigned to Hawkins in the Washington Litigation are independent tort claims
which have nothing to do with the Debtors. Ace American's attempt to invoke this Court's
jurisdiction to take sweeping action with respect to state court litigation which has nothing to do
with the Debtors in this Court is, at best, questionable. And Ace American's standing to bring the
Motion is likewise questionable, as Ace American is neither a Debtor nor a creditor of the Debtors.

For these reasons, and as more fully set forth below, Hawkins respectfully requests that the
Court deny the Motion and grant such other and further relief as is just and appropriate under the
circumstances.

## **BACKGROUND**

A.      **The Washington Litigation, the Chapter 11 Cases, and the Stay Extension Order.**

1.      On November 16, 2016, in pertinent part, Hawkins was involved in a motor vehicle
collision with, among others, Miguel (who was driving a van licensed to Sears Management LSE)
which left her with severe injuries. Hawkins has not yet seen a dime of recovery for her injuries.

2.      On or about September 20, 2018 (approximately a month before the petition date
of these chapter 11 cases), Hawkins filed a complaint (the "Original Complaint") in the Snohomish

2

County Superior Court in the State of Washington (the "Snohomish Court"), thereby commencing

the present litigation (together with any related proceedings in Washington state and federal courts,

the "Washington Litigation"). The Original Complaint named as defendants, among other parties,

Sears Holdings Management Corporation ("Holdings") and A&E Factory Service, LLC ("A&E").

3.       On or about October 15, 2018, Holdings and A&E filed for chapter 11 bankruptcy

in this Court.

4.       On or about January 9, 2019, this Court entered that certain *Order Extending the*

*Automatic Stay to Certain Non-Debtor Parties* [D.I. 1528] (the "Stay Extension Order"),

extending the automatic stay created upon the filings of the Debtors' chapter 11 cases to dozens of

lawsuits across the country listed on a spreadsheet, including the Washington Litigation.

5.       On or about October 7, 2020, Hawkins voluntarily moved to vacate a default

judgment it had obtained against A&E, which was granted by the Snohomish Court. (No default

judgment was ever entered against Holdings.)

**B.       The Assumption Agreement and the Stay Relief Order.**

6.       On   August   20,   2020,   this   Court   entered   an   order   [D.I. 8396-1]

(the "Assumption Agreement Order") approving that certain Assumption Agreement (as defined

in the Motion). A condition precedent to the effectiveness of the Assumption Agreement is that:

> [T]he automatic stay provided under section 362(a) of the Bankruptcy Code . . . shall
> be lifted, without further order of the Court, to permit (a) claimants with . . . direct
> action claims arising under the Insurance Programs to proceed with their claims and
> (b) the Chubb Companies to administer, handle, defend, settle and/or pay (including all
> costs related thereto) (I) all . . . direct action claims arising under the Insurance
> Programs and (II) any claim for which an order has been entered by the Court granting
> the claimant relief from the automatic stay . . . to proceed with its claim.

(Assumption Agreement § 2.1(b)(x).)

7.       Additionally, the order approving the Assumption Agreement provided that "any

proofs of claim filed by the Chubb Companies with respect to the Insurance Programs are hereby

3

expunged." (Assumption Agreement Order ¶ 8). The Assumption Agreement also provided for

Ace American to broadly release the Debtors as follows:

> [T]he Chubb Companies, jointly and severally, on behalf of themselves and all of their
> affiliates, subsidiaries [etc.] . . . waive, release, acquit and forever discharge each of the
> Original Insureds [Sears Debtors] . . . from any and all claims, counterclaims, rights,
> demands, obligations, causes of action, actions, costs, damages, losses, liabilities, and
> attorneys' fees, arising under any federal, state, or local statute or regulation, ordinance
> or common law, whether asserted or asserted, known or unknown [etc.]. which may
> have existed or may currently exist that the Chubb Companies Releasors may have
> against any or all of the Original Insured Releasees from the beginning of time through
> the Agreement Effective Date related to the Retained Insurance Policies . . . .

(Assumption Agreement § 7.1.)

8.      In November 2020, Hawkins retained bankruptcy counsel (Deborah Crabbe and

Dan Youngblut at Foster Garvey) to advise Hawkins and Mr. Terry Traverso (Hawkins' counsel

in the Washington Litigation) regarding the implications of the Stay Extension Order on the

Washington Litigation. (*See Declaration of Terence F. Traverso*, filed as Exhibit A herewith

(the "Traverso Dec.") ¶ 3.)

9.      Subsequently, upon advice of bankruptcy counsel, Hawkins negotiated the terms of

the Stay Relief Stipulation with the Debtors. On March 25, 2021, the Debtors filed the Stay Relief

Stipulation [D.I. 9372]—the title of which clearly referred to Shelley S. Hawkins—by way of

"notice of presentment." On March 30, 2021, Prime Clerk filed an Affidavit of Service [D.I. 9383]

for the Stay Relief Stipulation, which demonstrates that the Stay Relief Stipulation was served

upon counsel to the Chubb Companies. No party—including Ace American or any of the Chubb

Companies—objected to the Stay Relief Stipulation.

10.     On April 5, 2021, this Court (per the Honorable Robert D. Drain), entered an order

[D.I. 9392] approving the Stay Relief Stipulation (the "Stay Relief Order"). Among other things,

the Stay Relief Order expressly allowed the Washington Litigation to "proceed against the Non-

Debtor Defendants and any insurer(s) thereof." (Stay Relief Order ¶ 2 (emphases added).) The

defined term "Non-Debtor Defendant" in the Stay Relief Stipulation included, among others, Miguel. The Stay Relief Order further clarified that "any insurer from which coverage is sought . . . [can] administer, handle, defend, settle, and/or pay such claims in the ordinary course of business and without further order of this Bankruptcy Court." (Stay Relief Order ¶ 6.)

**C.    Subsequent Developments in the Washington Litigation.**

11.    On June 23, 2021, more than two months after this Court entered the Stay Relief Order, Miguel entered into a settlement agreement (referred to in the Motion as the Second Settlement Agreement) with Hawkins. The Second Settlement Agreement was negotiated at arm's-length between counsel for Hawkins and counsel for Miguel, Miguel executed the Second Settlement Agreement freely, voluntarily, and upon the advice of his counsel. (*See Declaration of Sean B. Malcolm*, filed as Exhibit B herewith (the "Malcolm Dec.") ¶ 4; *Declaration of Edwin G. Miguel*, filed as Exhibit C herewith (the "Miguel Dec.") ¶¶ 4-5.) Moreover, as the Snohomish Court recently observed, the Second Settlement Agreement "is clear in regard to purpose and . . . benefit," and was "entered into with defendant Miguel and the assistance of his attorney, Sean Malcolm, who interlineated some provisions in the proposed settlement before it was finalized." (*See* Traverso Dec. Ex. D.)

12.    Among other things, the Second Settlement Agreement provided for Miguel to confess judgment in Hawkins' favor and to assign to Hawkins all of his "rights, privileges, claims, causes or chose of action that he may have against his insurers . . . including, but not limited to Ace American Insurance Company, Ace Limited, Chubb, and any other insurer . . . ." In exchange, Hawkins agreed not to execute on the judgment against Miguel's assets. An insured defendant's assignment of claims against his or her insurer who acts in bad faith is permitted under state law and not uncommon as settlement structure between claimants and defendants. (*See* Traverso Dec.

5

¶ 7.)

13.    Also on June 23, 2021, Miguel executed a Confession of Judgment in the principal amount of $1,500,000 (the "Confession of Judgment").

14.    In late June 2021, Hawkins moved to vacate the Default Judgment previously entered against Miguel, and the Snohomish Court subsequently vacated the Default Judgment.

15.    On July 20, 2021, the Snohomish Court entered an order approving the Second Settlement Agreement.  On the same date, the Court emailed a copy of this order to Ace American's hired attorneys at Williams, Kastner & Gibbs.  Ace American never appealed or filed a motion for reconsideration of the Snohomish Court's order approving the Second Settlement Agreement, and never took any other action (until the present Motion) to invalidate or reverse the Snohomish Court's order.  (*See* Traverso Dec. ¶ 5.)

16.    On August 12, 2021, counsel for Miguel sent to Ace American the 20-day "notice to cure" mandated under Washington's Insurance Fair Conduct Act prior to filing certain lawsuits against insurance companies.  Ace American did not take any action in response thereto.  (*See* Malcolm Dec. ¶ 5.)

17.    On September 2, 2021, the Snohomish Court entered an order approving the Confession of Judgment.  Ace American never appealed or filed a motion for reconsideration of the Snohomish Court's order approving the Confession of Judgment, and never took any other action (until the present Motion) to invalidate or reverse the Snohomish Court's order.  (*See* Traverso Dec. ¶ 5.)

18.    On September 8, 2021, Hawkins, as Miguel's assignee, filed an amended complaint (as further amended on or about August 26, 2022, the "Amended Complaint"), premised on the post-Stay Relief Order Second Settlement Agreement and Confession of Judgment, which named

6

Ace American Insurance Company as a defendant.

19.    On October 27, 2021, Ace American filed a notice of removal in the District Court for the Western District of Washington (the "District Court"), Case No. 21-cv-01459-RAJ-BAT. On January 10, 2022, the District Court magistrate judge entered a recommendation and report granting a motion filed by Hawkins to remand the case back to the Snohomish Court, finding Ace American's removal effort to be "improper," and granting Hawkins' request for attorneys' fees and expenses in connection with Ace American's removal efforts. (*See* Traverso Dec. Ex. A.)  On June 22, 2022, the District Court judge entered an order approving the report and recommendation.

20.    Meanwhile, on or about February 2, 2022, in response to a written discovery request from Hawkins which, in pertinent part, asked Ace American to explain all reasons why it failed to retain insurance defense counsel for Miguel or appear in the Washington Litigation, Ace American did not mention the Stay Extension Order or anything relating to these chapter 11 cases. (*See* Traverso Dec. Ex. B.)

21.    On August 31, 2022, Hawkins filed *Plaintiff's Motion for Partial Summary Judgment Against Defendant Ace American Insurance Company* in the Snohomish Court (the "Partial SJ Motion").  (*See* Traverso Dec. Ex. C.)  The motion followed months of intense discovery, motion practice, and ancillary litigation.  The summary judgment motion is currently set for hearing on October 21, 2022.  (*See* Traverso Dec. ¶ 8.)

22.    On September 6, 2022, Ace American filed an answer to the Amended Complaint. In that answer, Ace American "admits that . . . Edwin Miguel was an insured under the [AL] Policy." (*See Traverso* Dec. Ex. E.)

23.    On October 7, 2022—the same date as the Motion was filed—the Snohomish Court held that Ace American was procedurally barred from "relitigat[ing] the reasonableness" of the

7

Confession of Judgment because Ace American "did not challenge the court's reasonableness finding . . . through intervention in the action, nor by motion for reconsideration, . . . nor through any other avenue."  (*See* Traverso Dec. Ex. D.)

24.    Finally, also on October 7, 2022—*3.75 years* after this Court's entry of the Stay Extension Order, *nearly 3 years* after the Debtors confirmed a chapter 11 plan, and *1.5 years* after this Court granted Hawkins relief from the Stay Extension Order (with the Debtors' support)— Ace American filed the present Motion, asserting that various acts and events in the Washington Litigation—all of which have already been vacated by the Snohomish Court, superseded or rendered moot, or occurred after the Stay Relief Order—violated the automatic stay and are void.

**D.    Partial Summary Judgment Motion.**

25.    Hawkins respectfully submits that the above background is sufficient for this Court to rule on the Motion.  To the extent further background may help the Court, additional information is available in the Partial SJ Motion.  (*See* Traverso Dec. Ex. C.)

<u>**ARGUMENT**</u>

**A.    There is No Basis to Void Vacated Orders or Post-Stay Relief Agreements.**

26.    Per the Motion, Ace American asks this Court to rule that each of (a) the Default Judgment, (b) the Settlement Agreements (comprised of the First Settlement Agreement and the Second Settlement Agreement), and (c) the State Court Orders (comprised of the Settlement Order and the Confession of Judgment Order), as all of the foregoing are defined in the Motion, are void *ab initio*.  However, the Default Judgment has been vacated, the First Settlement Agreement has been superseded and is no force or effect, and the remaining targets of the Motion were agreements executed by non-Debtor parties or orders entered by the Snohomish Court <u>well after</u> this Court entered the Stay Relief Order.  The facts and law do not support the relief requested in the Motion.

I.      The Default Judgment.

27.     The Motion seeks to have this Court rule that the Default Judgment (as defined in the Motion) is void *ab initio*. However, the Default Judgment, which was entered against A&E and Miguel, was vacated by the Snohomish Court on or about June 30, 2021. The Default Judgment therefore has no legal force or effect. Ace American knows this.

28.     There is no basis or reason for the Court to void the Default Judgment. The Amended Complaint—the genesis of the Washington Litigation against Ace American—was not even filed until more than two months after the Default Judgment was vacated by the Snohomish Court and does not depend on the Default Judgment in any way. How could it? By the time Ace American became a defendant in the Washington Litigation, the Default Judgment was dead. Hawkins never attempted to collect against A&E on account of the Default Judgment, and Hawkins has not actively sought—and will not seek—any form of relief against the Debtors, all of whom have been dismissed from the Washington Litigation.

29.     One of the cases cited by Ace Americans highlights the futility of its request to have this Court "void" the already vacated Default Judgment. In *In re Beck Indus., Inc.*, the District Court for the Southern District of New York, in pertinent part, directed that a plaintiff which had violated the automatic stay "take steps to vacate the default judgment" and to "restore . . . all monies taken from or paid out . . . in satisfaction of that default judgment . . . ." 338 F.Supp. 1369, 1372 (S.D.N.Y. 1972). But here, Hawkins vacated the Default Judgment more than a year before the Motion was filed, and Hawkins never collected any money with respect to the Default Judgment. In other words, Hawkins has already provided all of the injunctive relief which Ace American, per its own case law, could theoretically receive, and the request to vacate the Default Judgment is therefore moot. "A case becomes moot—and therefore no longer a 'Case' or

9

'Controversy' for purposes of Article III—when the issues presented are no longer 'live' . . . ." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (Roberts, J.) (citations and certain internal quotation marks omitted).

30.    The Default Judgment is dead.  Accordingly, Hawkins respectfully requests that the Motion's request to void the Default Judgment be denied as moot.

II.    <u>The Settlement Agreements</u>.

31.    The Motion seeks to have this Court rule that the Settlement Agreements (as defined therein) are void  *ab initio*.  The defined term Settlement Agreements is comprised of the First Settlement Agreement and the Second Settlement Agreement, each as defined in the Motion.

32.    The First Settlement Agreement (which, although signed, was never in proper form under Washington law and never "binding"), however, is no longer relevant.  It was superseded in every respect by the Second Settlement Agreement.   The fact that the Second Settlement Agreement "did not mention, let alone expressly supersede or replace, the First Settlement Agreement" (Motion ¶ 44) is of no moment.  The Snohomish Court has approved the Second Settlement Agreement, which, as Ace American notes, is substantially similar to the First Settlement Agreement.  No party could credibly argue that a later-in-time agreement between the same parties covering the same subject matter and structure (and approved by the Snohomish Court, no less) does not supersede the earlier-in-time agreement.  No party is seeking to enforce any rights or obligations purportedly created by the (non-binding and superseded) First Settlement Agreement.  Accordingly, much like the Default Judgment, the First Settlement Agreement is dead, and whatever issues were present with respect to the First Settlement Agreement are moot.

33.    The Second Settlement Agreement was executed on June 23, 2021, more than *2.5 months after* this Court entered the Stay Relief Order.  Ace American has never appealed the

Snohomish Court's subsequent order approving the Second Settlement Agreement or filed a motion seeking reconsideration of it, and the Snohomish Court recently held that Ace American is now barred from attacking the Second Settlement Agreement and the Confession of Judgment. Ace American did not, at least for more than *one year*, seek any relief from this Court regarding the purported violation of the Stay Extension Order by Hawkins executing the Second Settlement Agreement with Miguel in June 2021. By June 23, 2021—the date on which Miguel signed the Second Settlement Agreement—it is undisputed that the Stay Extension Order, per its clear terms, no longer extended to Miguel and any insurers of Miguel. Accordingly, the Second Settlement Agreement did not violate the automatic stay or the Stay Extension Order.

34.    In seeming recognition of this, Ace American argues that the Second Settlement Agreement "trace[s] back to the void Default Judgment, which was sought and entered in violation of the automatic stay and this Court's Stay Extension Order." (Motion ¶ 104.) Ace American then asserts that, in essence, the Second Settlement Agreement would never have been agreed to by Miguel had it not been for the Default Judgment.

35.    Ace American's "tracing" argument, however, falls flat. As an initial matter, the lifting of the Stay Extension Order as to Miguel cleared any impediment for Hawkins to proceed on the Original Complaint against Miguel. As a result, setting aside the Default Judgment and the First Settlement Agreement, Miguel had continuing, significant liability exposure in the Washington Litigation. The Second Settlement Agreement does not refer to or rely on the Default Judgment in any way; in fact, it refers expressly to the "judgment that is *being* sought" (*i.e.*, the Confession of Judgment later approved by the Snohomish Court).

36.    Furthermore, the closest Ace American comes to providing legal support for its argument that the Second Settlement Agreement is somehow tainted by actions or events which

11

occurred prior to this Court entering the Stay Relief Order are the cases cited in footnote 17 of the

Motion, which are clearly distinguishable from the facts at hand.[4]  By contrast, a recent bankruptcy

court decision dispels the notion that any "tracing" doctrine can apply to these facts.  In *In re Bolus*,

a state court held oral argument on a summary judgment motion against the debtor on October 2,

2020, even though the debtor had filed for bankruptcy on September 30, 2020, and granted the

summary judgment motion against the debtor.  2022 WL 3948685, at *2 (Bankr. M.D. Pa. Aug.

29, 2022).  The debtor filed a motion for reconsideration on October 5, 2020, but the debtor's

bankruptcy case was dismissed on the morning of October 14, 2020.  *Id.*  Later that same day (*i.e.*,

still October 14, 2020), the court denied the debtor's motion for reconsideration and affirmed the

prior summary judgment, which judgment was later entered against debtor on October 22, 2020.

*Id.*  The debtor's bankruptcy case was reinstated on October 29, 2020, and the debtor brought an

adversary proceeding approximately a year later to, among other things, obtain declaratory relief

that the October 14 order and October 22 judgment were void *ab initio*.  *Id.* at *3-4.  The

bankruptcy court rejected the debtor's that argument, noting that based on applicable state law, the

October 14 order was an "independent order" under applicable Pennsylvania law and which did

not violate the automatic stay.  *Id.* at *6-7.

37.    To be clear, the October 14 order in *Bolus* was essentially a reaffirmation of the

October 2 order, and the parties to that case <u>did not dispute</u> that the October 2 order violated the

automatic stay.  *Id.* at *4.  And yet, the bankruptcy court quickly determined that the October 14

---

[4]    *In re Rodriguez*, 235 Fed. App'x 383 (9th Cir. 2017) involved the bankruptcy court voiding an unapproved settlement entered into by a <u>debtor</u> while the automatic stay was in effect.  Here, Miguel (a <u>non-Debtor</u>) entered into a settlement with Hawkins (a <u>non-Debtor</u>) more than two months <u>after</u> this Court granted Hawkins relief—without objection from Ace American—from the Stay Extension Order to pursue claims against Miguel and his insurer (*i.e.*, Ace American).  *In re Extraction Oil & Gas, Inc.*, 2020 WL 7074142 (Bankr. D. Del. Dec. 3, 2020) involved a counterparty to a rejected executory contract which was interfering with a debtor's ongoing business relationships.  Such a fact pattern bears no resemblance to the matter at hand.

order was an independent order.  Here, the relationship between the Second Settlement Agreement and the Confession of Judgment (and the corresponding orders approving the same by the Snohomish Court), on the one hand, and the Default Judgment and any actions which took place prior to this Court entering the Stay Relief Order, on the other hand, is *much* more attenuated. Simply put, if a court order is "independent" and does not violate the automatic stay, even though it was entered during a two-week gap in the automatic stay and *reaffirmed* a prior order which *did* violate the stay, it is hard to conceive how any of the targets of the Motion are not similarly "independent" and free from any potential argument that they violated the Stay Extension Order.

38.    Ace American also ignores the fact that Miguel entered into the Second Settlement Agreement freely, voluntarily, and upon advice of counsel given the allegations made against Miguel in the Original Complaint (filed before any of the Debtors filed for chapter 11).  The now-vacated Default Judgment simply has nothing to do with the Second Settlement Agreement.  Ace American's disappointment that Miguel assigned his tort claims against Ace American—which Ace American can fully defend in the Snohomish Court—does not mean that the Second Settlement Agreement violated the automatic stay or the Stay Extension Order.

39.    Likewise, Ace American's suggestion that Hawkins "coerced" or "harassed" Miguel is mere conjecture.  Miguel and his lawyer both state that there was no coercion or harassment, and Miguel executed the Second Settlement Agreement and the Confession of Judgment freely, voluntarily, and on advice of counsel.  (*See* Malcolm Dec. ¶ 6; Miguel Dec. ¶ 5.) Although the word of Miguel and his counsel should be final on the matter, the October 7, 2022 ruling from the Snohomish Court (noting the negotiating efforts of Miguel's counsel) also belies Ace American's narrative.  (*See* Traverso Dec. Ex. D.)  In any case, Ace American's speculations are defeated by the declarations filed in connection with this Objection by Miguel and his counsel,

each stating that Miguel entered into the Second Settlement Agreement freely, without any coercion, and on the advice of his counsel. (Miguel Dec. ¶ 5.)

40.    Instead, Ace American tries to make hay of the fact that Hawkins' counsel emailed Miguel's counsel on March 27, 2021 (two days after the Stay Relief Stipulation was filed on the docket and approximately nine days prior to this Court entering the Stay Relief Order), with a draft form of the Second Settlement Agreement attached. But as shown on Exhibit M to the Motion, the email from Hawkins' counsel was *in response* to an email from *Miguel's* counsel requesting settlement papers. Accordingly, Miguel effectively waived any protection he had under the Stay Extension Order. *See In re Ottoman*, 621 B.R. 768, 787 (Bankr. E.D. Mich. 2020) (debtor waives its claim for alleged violations of the automatic stay where debtor "participated in any violation of the automatic stay that occurred by the entry into the Settlement Agreement").[5] In any case, any alleged stay violation (and Hawkins does not believe that the late March 2021 emails between counsel constitute a stay violation) is de minimis in light of the fact that the Second Settlement Agreement was not executed until months after the Stay Relief Order.

41.    For those reasons, Hawkins respectfully requests that the Motion be denied with respect to the Settlement Agreements, *i.e.*, the irrelevant and mooted First Settlement Agreement and the Second Settlement Agreement (signed more than two months after the Stay Relief Order). The Snohomish Court is the proper forum for Ace American to defend itself.

III.    The State Court Orders.

42.    Finally, the Motion seeks to have this Court rule that the State Court Orders (as defined therein) are void *ab initio*. The defined term State Court Orders is comprised of the

---

[5]    As an aside, Hawkins notes the irony of Ace American, whose interests are adverse to Miguel, being upset about purported stay violations as against Miguel, who sought Ace American's help but never requested an extension of the automatic stay from the Debtors or this Court and entered into the Second Settlement Agreement in large part to avoid filing for bankruptcy (and thereby getting the protection of the stay himself).

Settlement Order and the Confession of Judgment Order, each as defined in the Motion. Neither State Court Order, however, "traces back" to any conduct occurring prior to the Stay Relief Order, and the above discussion of *Bolus* applies with equal force to the State Court Orders.

43. With respect to the Settlement Order, as discussed above, Miguel, upon the advice of counsel, executed the Second Settlement Agreement on June 23, 2021, more than *two months after* the Stay Relief Order was entered by this Court. The Settlement Order, entered by the Snohomish Court on July 21, 2021, approved the *Second* Settlement Agreement, which is independent of any pre-Stay Relief Order litigation.[6] The Second Settlement Agreement resolved Miguel's potential liability exposure under the Original Complaint, which was filed in advance of the chapter 11 cases and was clear to be litigated after the Stay Relief Order. Simply put, Ace American does not provide any cognizable explanation for how the Settlement Order violated the automatic stay, the Stay Extension Order, or any order of this Court.

44. With respect to the Confession of Judgment Order, as discussed above, Miguel, as required by the Second Settlement Agreement and upon the advice of counsel, executed the Confession of Judgment on June 23, 2021, again more than *two months after* the Stay Relief Order was entered by this Court. The Snohomish Court entered an order approving the Second Settlement Agreement on September 2, 2021. The Confession of Judgment Order, thereafter, is in the same posture as the Settlement Order, and there is no violation of the automatic stay, the Stay Extension Order, or any order of this Court.

45. Moreover, the relief that Ace American is requesting would be a clear violation of

---

[6] Ace American makes much of the fact that the amount in the Second Settlement Agreement was "three times greater" than the amount in the First Settlement Agreement. This change in the amount relates to a worsening of Hawkins' injuries and damages and demonstrates the independence (in time and subject matter) of the Second Settlement Agreement. In any case, the Snohomish Court approved the Second Settlement Agreement as reasonable under applicable Washington law, and Ace American has an opportunity to contest damages in the Washington Litigation. (*See* Traverso Dec. ¶¶ 5-6.)

Miguel's rights and Hawkins' rights.  In sum, Ace American is asking this Court to void orders entered by the Snohomish Court approving agreements between Hawkins and Miguel—neither of whom is a Debtor—which were executed well after this Court entered the Stay Relief Order.  There is no basis, and Ace American does not assert any basis, for this Court to determine that Miguel's right to appear in the Snohomish Court and make his own decisions—decisions which do not and cannot have any impact on the Debtors or their assets—somehow belonged to Ace American all along.  To the extent that Ace American believes it was somehow wronged by the agreements between Hawkins and Miguel or by Miguel's voluntary actions, and that (among other things) it did not engage in any bad faith conduct, as the Amended Complaint alleges, Ace American is free to assert whatever defenses and arguments it wishes in the Washington Litigation.  Not every disadvantageous development for Ace American in the Washington Litigation is tantamount to an automatic stay violation that can be remedied by this Court.

46.    For those reasons, Hawkins respectfully requests that the Motion be denied with respect to the State Court Orders, *i.e.*, the Settlement Order and the Confession of Judgment Order.

**B.    Ace American Has Waived its Right to Object to Purported Stay Violations.**

47.    Even if the Court finds that the Default Judgment, the Settlement Agreements, and the State Court Orders violated the automatic stay or the Stay Extension Order—which Hawkins respectfully submits they did not—Ace American has waived its right to object in this Court to any such purported violations.

48.    The Debtors agreed with Hawkins to provide for limited relief from the automatic stay, as applicable to the Washington Litigation through the Stay Extension Order.  That stipulation was served on Ace American in late March 2021.  Ace American did not object or seek any relief from this Court with respect to the Stay Relief Order.

49.     The Second Settlement Agreement and the Confession of Judgment were executed well after this Court entered the Stay Relief Order and subsequently heard and approved by the Snohomish Court.  <u>Ace American did not object or seek any relief from this Court</u>.

50.     The Amended Complaint was filed on September 8, 2021 (more than a year ago), and significant discovery, motion practice, and other developments have taken place in connection with that Amended Complaint.  Until October 7, 2022—more than a year after the Amended Complaint was filed and mere moments after the Snohomish Court observed that Ace American had not sought to set aside the Settlement Order through "any . . . avenue" of relief in the Washington Litigation—<u>Ace American did not object or seek any relief from this Court</u>.  In fact, Ace American did not even mention these chapter 11 cases or the Stay Extension Order in response to an interrogatory in February 2022 regarding why Ace American did not retain insurance defense counsel for Miguel or appear in the Washington Litigation prior to June 23, 2021.  Had these chapter 11 cases or the Stay Extension Order influenced Ace American's course of conduct in any manner, the response to that interrogatory would likely have been different.

51.     The case of *In re Uhrig*, 306 B.R. 687 (Bankr. M.D. Fla. 2004) is analogous and supports the argument that Ace American has waived its rights here.  In *Uhrig*, the bankruptcy court found that the debtor "by his actions, or lack thereof, waived his right to complain about alleged violations of the automatic stay." *Id.* at 694.  In so holding, the bankruptcy court reasoned (citations omitted) that when a debtor "appears and defends a suit on any basis other than application of the automatic stay, then [the debtor] waives the automatic stay." *Id.*  "To hold otherwise," the bankruptcy court reasoned, would provide the debtor with a "trump card that he could play if he did not like the outcome of the action . . . ."  *Uhrig* applies with extra force here, given that Ace American is not a Debtor and all targets of the Motion have been vacated or relate

to events occurring well after this Court entered the Stay Relief Order. It is only after Ace American spent the past year conducting discovery and seeking to remove the Washington Litigation to the District Court, and after the adverse ruling entered by the Snohomish Court moments before Ace American filed this Motion, that Ace American now appears before this Court, on the eve of the Effective Date of the Debtors' chapter 11 plan, to play its "trump card" and remedy these purported stay violations. Ace American is a day late and a dollar short.

52.    The grievous injuries that Hawkins suffered as a result of the car accident, thus giving rise to the Washington Litigation, occurred *nearly six years ago*. The efforts by Ace American to further delay and obstruct the Washington Litigation—after Ace American failed to object to the Stay Relief Stipulation and failed to even take any action in this Court until the eve of summary judgment in the Washington Litigation—should be given short shrift. For these reasons, Hawkins respectfully submits that Ace American has, by its inaction, waived any right to object to the purported (and now vacated) violations of the Stay Extension Order.

**C.    The Motion Is Barred by the Equitable Doctrine of Laches.**

53.    Although Hawkins respectfully submits that the Court need not consider the matter in light of the above arguments, the equitable doctrine of laches also bars the relief sought in the Motion. Laches prohibits "unreasonable, inexcusable and prejudicial delay." *In re Lehman Bros. Inc.*, 617 B.R. 231, 246 (Bankr. S.D.N.Y. 2020). "A party asserting a laches defense must show that the plaintiff has inexcusably slept on its rights so as to make a decree against the defendant unfair and that defendant has been prejudiced by the plaintiff's unreasonable delay . . . ." *Id.* (citations and internal quotation marks omitted). Moreover, the two elements "are integrally related and must be weighted together. Where there is no excuse for delay," for example, the party asserting laches "need show little prejudice." *Id.* (citations and internal quotation marks omitted).

54.     The facts here satisfy these elements.  Ace American could have objected in March 2021 to the Debtors' request (by way of the Stay Relief Stipulation) to provide relief from the Stay Extension Order to Hawkins, but it did not.  Ace American could have raised the purported stay violations in the Snohomish Court or this Court at any time, but until October 7, 2022, it did not. Instead, Ace American spent the last year pursuing a removal effort that was denied by the District Court and otherwise actively participating in the Washington Litigation.  The right to seek alternative forms of relief is not "an entitlement" for Ace American to "engage in costly and protracted Dickensian litigation." *Lehman Bros.*, 617 B.R. at 247.

55.     The case of *In Terrace Housing Associates, Ltd.*, is instructive.  577 B.R. 459 (Bankr. E.D. Pa. 2017).  There, the bankruptcy court ruled that a debtor was barred from asserting alleged stay violations when it waited approximately two years from the date of the alleged violations to file a motion with the bankruptcy court.  *Id.* at 463.  The bankruptcy court found that had the debtor "raised the stay violation in a prompt fashion," the allegedly offending party "could have minimized or avoided its exposure to Debtor's claim," but instead "relied on Debtor's silence and apparent acquiescence" to exercise its rights and remedies.  *Id.*  The facts here are even more favorable for laches than in *Terrace* because, as has been discussed throughout, Hawkins sought and obtained relief from the Stay Extension Order <u>with the support of the Debtors and with no objection from Ace American</u>.  And, Ace American, which is neither a Debtor nor a creditor of the Debtors, and is represented by sophisticated counsel from a well-regarded international law firm, could have litigated its concerns regarding the purported stay violations *prior to* engaging in protracted litigation in Washington state, including substantial discovery.

56.     There is no excuse for Ace American's delay, and Hawkins therefore "need show little prejudice." *Lehman Bros.*, 617 B.R. at 246.  Yet, the prejudice to Hawkins (and Miguel) that

would result from granting the Motion is clear:  it would put the Washington Litigation in an uncertain and confused posture on the eve of a summary judgment hearing and further delay any recovery Hawkins may receive out of the Washington Litigation injury.  Such a delay may be would not only be immensely prejudicial to Hawkins, a motor vehicle collision victim with limited resources who has still not gotten any recovery six years after the collision in question, but also to Miguel, who would then be stripped of the protections his counsel obtained for him through the Second Settlement Agreement.

57.     Accordingly, to the extent the Court determines it is necessary to consider the issue, Hawkins respectfully requests that the Court deny the Motion on the grounds that the relief it requests is barred by the equitable doctrine of laches.

**D.     There Is No Good Reason for Ace American to Invoke this Court's Jurisdiction.**

58.     The thin jurisdictional reed upon which Ace American bases its Motion is the Stay Extension Order and the past relationship between the Debtors and Ace American.  But the removal of the Debtors from the Washington Litigation (not to mention the claims bar date in these chapter 11 cases and the running of the statute of three-year tort limitations against the Debtors under Washington law), the Stay Relief Order and the fundamental lack of "any conceivable effect" of the Washington Litigation on the Debtors or their estates should be taken into account when assessing whether Ace American has properly invoked this Court's jurisdiction.

59.     As this Court knows, bankruptcy courts are inherently courts of *in rem* jurisdiction to adjudicate the rights of "anyone, whether named in the action or not, . . . to the property or thing in question."  *In re Johns-Manville Corp.*, 600 F.3d 135, 152 (2d Cir. 2010) (citations and internal quotation marks omitted).  The "touchstone for bankruptcy jurisdictions remains whether its outcome might have <u>any conceivable effect</u> on the bankruptcy estate."  *In re Quigley Co., Inc.*,

676 F.3d 45, 57 (2d Cir. 2012) (emphasis added) (citations and internal quotation marks omitted).

60.     "A bankruptcy court only has jurisdiction to enjoin third-party non-debtor claims that <u>directly affect</u> the *res* of the bankruptcy estate." *Manville*, 600 F.3d 146 (internal quotation marks omitted) (emphasis added) (citing *In re Johns-Manville Corp.*, 517 F.3d 52, 66 (2d Cir. 2008) ("*Manville III*")).[7]  For instance, where individuals sued the state of Montana, which had filed a proof of claim against a debtor seeking indemnification or contribution, the Third Circuit ruled that the bankruptcy court lacked jurisdiction to enjoin the state court proceedings because such lawsuit could only "have an impact on the debtor's estate . . . through the intervention of yet another lawsuit." *In re W.R. Grace & Co.*, 591 F.3d 164, 173 (3d Cir. 2009).  As a result, bankruptcy courts routinely hold that they lack jurisdiction to intervene where non-debtors sue other non-debtors on direct, rather than derivative, actions. *See, e.g.*, *In re Soundview Elite Ltd.*, 565 B.R. 534, 553 (Bankr. S.D.N.Y. 2017) (lawsuit was not for plaintiff's "loss as creditors of the Debtors . . . but rather their individualized losses allegedly uniquely caused by wrongful conduct of [the non-debtor defendant].").

61.     A quick look at the Washington Litigation, however, calls into doubt Ace American's assertion that this Court has sufficient *in rem* jurisdiction.  All of the claims in the Amended Complaint are claims assigned to Hawkins which could have been brought by <u>Miguel</u> against Ace American.  These claims are not derivative of the Debtors.  Hawkins does not seek to recover for, among other things, any breach of a duty owed by Ace American to any Debtor, and does not assert any "direct action claim" against Ace American on account of any wrong

---

[7]     As this Court likely knows, although the Supreme Court reversed *Manville III*, it did so on the "narrow grounds" that the "jurisdictional issue was not subject to collateral attack" and "did not contradict the conclusion of jurisdictional inquiry" set forth in *Manville III*.  *Manville*, 600 F.3d at 152.  Bankruptcy courts now routinely cite *Manville III* when analyzing the propriety of asserted bankruptcy court jurisdiction. *See, e.g.*, *Soundview*, 565 B.R. at 544-45; *Grove Instruments*, 573 B.R. at 315.

potentially perpetrated against her by any of the Debtors.

62.    To be sure, Ace American asserts that this Court has jurisdiction over its Motion because the AL Policy (as defined in the Motion) is allegedly property of the Debtors' estates.[8] (*See, e.g.*, Motion ¶ 59.)  In light of the Debtors' non-involvement in the Washington Litigation, however, any suggestion that this Court should stretch to find jurisdiction over the Motion because the AL Policy is "available to pays claims <u>against the Debtors</u>" is a red herring.  That the AL Policy is "available to pay claims against . . . <u>the other insureds</u>" (like Miguel) may be true enough, but (1) ignores the reality that most of the relief sought in the Amended Complaint is premised on independent tort claims which, if adjudicated in Hawkins' favor, would be paid from Ace American's own assets and (2) any recovery Hawkins gets which comes from the AL Policy falls straight in line with the Stay Relief Order's grant of relief to Hawkins to "proceed against the <u>Non-Debtor Defendants</u> and any <u>insurer(s)</u> thereof."  (Stay Relief Order ¶ 2 (emphases added).)

63.    At bottom, the analysis showing the direct, non-derivative nature of Hawkins' claims against Ace American is simple.  Hawkins was injured by Miguel, and Miguel has confessed to a judgment admitting his legal responsibility for those injuries.  The Debtors agreed to relief from the automatic stay (against Miguel <u>and</u> his insurers), and Miguel thereafter entered into the Second Settlement Agreement and the Confession of Judgment with Hawkins.  Hawkins dismissed the Debtors from the Washington Litigation.  Since Ace American is an insurer of Miguel (as Ace American admits), then, to the limited extent that Hawkins gets any recovery from

---

[8]    Ace American, for its part, admits that non-Debtor Miguel is an "insured" under the AL Policy (*see* Traverso Dec. Ex. E), and the AL Policy is a per-occurrence insurance policy with no maximum aggregate liability, such that any amounts which Hawkins recovers from that policy would not affect the Debtors' estates, taking such proceeds of the AL Policy outside of the scope of the property of the estate.  *See In re MF Global Holdings Ltd.*, 515 B.R. 193, 203 (Bankr. S.D.N.Y. 2014) (citations omitted).  "In these instances, courts have held that the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution."  *Id.* (citations and internal quotation marks omitted)An analysis of whether the proceeds of the AL Policy are property of the estate is not necessary to resolve this Motion, however, and Hawkins respectfully reserves the right to further brief the issue if necessary.

the AL Policy, she is expressly permitted to do so by the clear terms of Stay Extension Order authorizing her to "proceed against the Non-Debtor Defendants and any insurer(s) thereof." (Stay Relief Order ¶ 2 (emphases added).)  And, since Ace American owes duties to Miguel such that Miguel may have claims against Ace American (claims which were then properly assigned to Hawkins under the Second Settlement Agreement), then any such related litigation relates to Ace American's "own purported misconduct . . . not for [debtor's] misconduct" and therefore are the kinds of claims the "Second Circuit [has] held . . . [are] independent, non-derivative claims." *Soundview*, 565 B.R. at 546.  And if Ace American believes it did not violate any duties, or that the facts do not otherwise support the claims brought by Hawkins, Ace American is free to argue as much in the Washington Litigation.  No matter the outcome of the Washington Litigation, there is no impact on the Debtors.[9]

64.    As a final observation on the jurisdictional inquiry, the Original Complaint, filed before the Debtors' petition date, would have proceeded against Miguel at *some point in time*.[10] Accordingly, even setting aside the Stay Relief Order, which clearly authorized Hawkins to settle with Miguel and pursue claims against Miguel's insurers, Hawkins would get her day in court against Miguel at *some point in time*.  Miguel is not a debtor subject to the protections of the Bankruptcy Code.  Ace American is not a debtor subject to the protections of the Bankruptcy Code.

---

[9]    As an aside, Ace American's reliance on the Assumption Agreement is curious.  The Assumption Agreement Order lifted the automatic stay to permit Hawkins and others to bring "direct action claims" and "any claim for which an order has been entered by the Court granting the claimant relief from the automatic stay . . . to proceed with its claim" (Assumption Agreement Order ¶ 10.)  The Assumption Agreement Order perhaps rendered the subsequent Stay Relief Order redundant (though no less effective).  The claims in the Amended Complaint fall squarely within this language.  Additionally, the Assumption Agreement Order provided that "any proofs of claim filed by the Chubb Companies with respect to the Insurance Programs are hereby expunged" (Assumption Agreement Order ¶ 8), and further caused Ace American to broadly release the Debtors (Assumption Agreement § 7.1), thereby ensuring there is no way Ace American can hold the Debtors secondarily or vicariously liable (through theories such as indemnification or contribution) for its alleged misconduct.

[10]    In fact, the automatic stay will likely have lifted as against all parties in the world by the time the Motion is heard, if the Debtors' notice of the "imminent occurrence" of the Effective Date on October 28, 2022, holds true.

Hawkins is not a debtor and her claims belong to her, not a bankruptcy estate.  The bottom line is there is no way the post-confirmation Debtors (likely post-Effective Date Debtors by the time of the hearing on the Motion) or their assets will be at risk by anything that could happen in the Washington Litigation, which is now solely a state-law dispute by and among non-Debtors (Hawkins, Miguel, and Ace American) based on independent, direct claims which Hawkins (through assignment from Miguel) has against Ace American.

65.    For those reasons, Hawkins respectfully submits that this Court does not have the authority to enjoin this (a) expressly permitted (per the Stay Relief Order) (b) state-law dispute (c) between non-Debtor parties (d) which cannot by its very nature affect the Debtors or their bankruptcy estates.[11]

### E.    Ace American Lacks Standing to Bring the Motion and Assert Stay Violations.

66.    Ace American asserts that it has standing to bring this Motion based on the Second Circuit's ruling in *In re Heating Oil Partners, LP*, 422 F. App'x 15 (2d Cir. 2011).  *Heating Oil*, however, is inapposite.  There, the insurer argued that a default judgment against *the debtor* was a violation of the automatic stay and therefore void, a judgment which the insurer would "be held responsible to satisfy in whole or in part."  *Id.* at 17.  This is not the case here.  There is no judgment against any of the Debtors at issue; nor will Hawkins seek one.  The Confession of Judgment was executed by a non-Debtor more than two months after this Court entered the Stay Relief Order.  This also distinguishes *In re Standard Insulations, Inc.*, 138 B.R. 947, 950 (Bankr. W.D. Mo.

---

[11]    The foregoing discussion regarding jurisdiction notwithstanding, Hawkins respectfully observes that the Court need not wade into the thorny jurisdictional morass given that the targets of the Motion are not violations of the Stay Extension Order (because of, among other things, the Stay Relief Order) and because of the other arguments set forth herein (waiver, laches, etc.).  *See In re Grove Instruments, Inc.*, 573 B.R. 307, 315 (Bankr. D. Mass. 2017) ("Because the Court holds that the proposed settlement would not meet the standards [of] this Court . . . the Court is not required to run the considerable gauntlet necessary to determine its subject matter jurisdiction or adjudicatory authority in this instance.") (emphasis added).

1992), where the insurer had standing because it was "responsible for payment of injury claims caused by exposure to <u>debtor's</u> products during covered periods" (emphasis added).

67.    But even more damningly, Ace American is not a Debtor or a creditor of the Debtors, and the case law is clear that "[n]on-debtor, non-creditor, third parties are not within the zone of interests the automatic stay was intended to protect and, therefore, lack prudential standing to pursue stay violations." *In re Nilhan Developers, LLC*, 622 B.R. 795, 802 (Bankr. N.D. Ga. 2020); *accord In re Taylor*, 2018 WL 1413538, at *5 (Bankr. D. Conn. Mar. 20, 2018) ("[N]on-debtor, non-creditor, third parties, . . . lack prudential standing to pursue stay violation remedies . . . ."). Any adverse outcome in the Washington Litigation will only affect *Ace American's* assets, not any assets of the Debtors' bankruptcy estates.[12]

68.    As with the jurisdictional discussion, Hawkins respectfully observes that the Court need not parse through the morass of prudential standing doctrine to resolve the Motion, as the targets of the Motion are not violations of the automatic stay or the Stay Extension Order. To the extent the Court determines otherwise, however, the facts and law demonstrate that Ace American lacks standing to bring the Motion because Ace American will not have any claim against any of the Debtors no matter the outcome of the Washington Litigation.

**F.    Ace American's Arguments on Retroactive Stay Termination Are a Red Herring.**

69.    As a final matter, Ace American spills a lot of ink on *Acevedo*, whether (and under

---

[12]    Ironically, it appears, based on a brief review of the Assumption Agreement, that the Debtors (effectively) paid Ace American, by allowing Ace American to credit any unpaid amounts owed by the Debtors to Ace American for amounts due on behalf of applicable insurance programs, through "applying, on behalf of the Debtors, the Remaining LOC Proceeds" without any further recourse to the Debtors. (Assumption Agreement § 4.1.) Therefore, assets of the Debtors' estates have (arguably) already been transferred <u>to</u> *Ace American*. In exchange for this receipt of estate assets, Ace American assumed its obligations under the Retained Insurance Contracts, obligations which it now seeks to avoid. The fact that payments (in essence) went from Debtors to Ace American here separates this case from *In re Congoleum Corp.*, 362 B.R. 167 (Bankr. D.N.J. 2007) cited by Ace American, in which the court held that an insurer had standing because the insurer was the primary source of funding for *the plan*. *Id.* at 174. Ace American does not allege that the current posture of the Washington Litigation threatens Ace American's ability to fund the Debtors' confirmed reorganization plan.

what circumstances) retroactive stay relief is available, and the failure by Hawkins to seek any such retroactive relief. That discussion is little more than a red herring. The plain fact is that Hawkins simply did not seek that relief because everything that remains in the ongoing Washington Litigation is not dependent on anything that happened prior to the Stay Relief Order. The Snohomish Court has vacated the Default Judgment; it no longer exists. The First Settlement Agreement (which was never binding in any event) has been superseded; it no longer exists. The Settlement Second Agreement and the Confession of Judgment, as well as the State Court Orders approving the same, were all executed and/or entered, as the case may be, well after this Court's entry of the Stay Relief Order; no retroactive relief (to the extent permitted under *Acevedo*) was or is necessary to remove any cloud of the Stay Extension Order. The fact that Hawkins did not seek such retroactive stay relief has nothing to do with the Motion or the issues before this Court.

## **NOTICE**

70.     Notice of this Objection has been provided to Ace American and other parties as set forth on the Certificate of Service immediately following the signature block below.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, Hawkins respectfully requests that this Court deny the Motion and grant such other and further relief as is appropriate under the circumstances.

Dated:  October 17, 2022

<div style="margin-left:3em">

**FOSTER GARVEY P.C.**

*/s/ Dan Youngblut*
Dan Youngblut (DY-1988)
1111 Third Avenue, Suite 3000
Seattle, WA 98101
Telephone:  (206) 447-2908
Email:  dan.youngblut@foster.com

**THE LAW OFFICES OF TERENCE F. TRAVERSO**

Terence F. Traverso, WSBA No. 21178 (*admitted pro hac vice*)
1408 140th Place NE, Suite 140
Bellevue, WA 98007
Telephone:  (425) 453-0115
Email:  assistant1@traversolaw.com

</div>

**FOSTER GARVEY P.C.**
Dan Youngblut (DY-1988)
1111 Third Avenue, Suite 3000
Seattle, WA 98101
Telephone:  (206) 447-2908
Email:  dan.youngblut@foster.com

**THE LAW OFFICES OF TERENCE F. TRAVERSO**
Terence F. Traverso (*admitted pro hac vice*)
1408 140th Place NE, Suite 140
Bellevue, WA 98007
Telephone:  (425) 453-0115
Email:  assistant1@traversolaw.com

*Counsel to Shelley S. Hawkins*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | Chapter 11 |
| **SEARS HOLDINGS CORPORATION, *et al.*,** | Case No. 18-23538 (SHL) |
| **Debtors.**[1] | (Jointly Administered) |

## <u>CERTIFICATE OF SERVICE</u>

I, Dan Youngblut, certify that I am not less than 18 years of age, and that on the date set

forth below, I caused a true and correct copy of the foregoing *Objection of Shelley S. Hawkins to*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC (5554); Sears STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816

*Motion of the Chubb Companies for Entry of an Order (I) Ruling that Default Judgment, Settlement Agreements and State Court Orders are Each Void* Ab Initio *Pursuant to 11 U.S.C. §§ 105(a) and 362(a) and Without Effect; and (II) Granting Related Relief* to be filed and served via CM/ECF on all parties registered to receive electronic notification in this case and via electronic mail and first class mail, postage prepaid, to the parties set forth on the attached service list, unless otherwise noted.

Under penalty of perjury, I declare that the foregoing is true and correct.

Dated:  October 17, 2022

*/s/ Dan Youngblut*
Dan Youngblut, Esq.

## SERVICE LIST

### Via Federal Express

Chambers of the Honorable Judge Sean H. Lane
United States Bankruptcy Court for the Southern District of New York
300 Quarropas Street, Room 248
White Plains, New York 10601

### Via First Class Mail

c/o Sears Holdings Corporation
3333 Beverly Road Hoffman Estates IL 60179
Attn: Stephen Sitley Esq., and Luke J. Valentino, Esq.
*The Debtors*

Edwin Miguel
17805 29th Drive SE
Bothell, Washington 98012

### Via First Class Mail and Electronic Mail

Malcolm Law Firm PLLC
8201 164th Ave. NE, Suite 200 Redmond, WA 98052
Attn: Sean B. Malcolm
sean@kirklandtriallawyer.com
*Attorney for Mr. Edwin Miguel*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attn: Ray C. Schrock, P.C., Jacqueline Marcus, Esq., Garret A. Fail, Esq., and Sunny Singh, Esq.
ray.schrock@weil.com
garrett.fail@weil.com
jacqueline.marcus@weil.com
sunny.singh@weil.com
*Counsel to the Debtors*

Office of the United States Trustee for Region 2
201 Varick Street, Suite 1006
New York, New York 10014
Attn: Paul Schwartzberg, Esq.
paul.schwartzberg@usdoj.gov
*U.S. Trustee*

Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, NY 10036
Attn: Paul D. Leake, Esq., Shana A. Elberg, Esq., and George R. Howard, Esq.
 paul.leake@skadden.com
shana.elberg@skadden.com
george.howard@skadden.com
*Counsel for Bank of America, N.A., administrative agent under the First Lien Credit Facility and the DIP ABL Agent*

Davis Polk & Wardell LLP
450 Lexington Avenue
New York, NY, 10017
Attn: Marshall S. Huebner, Esq. and Eli J. Vonnegut, Esq.
marshall.huebner@davispolk.com
eli.vonnegut@davispolk.com
*Counsel for Citibank, N.A., as administrative agent under the Stand-Alone L/C Facility*

Cleary, Gottlieb
One Liberty Plaza, New York, NY, 10006
Attn: Sean A. O'Neal, Esq.
soneal@cgsh.com
*Counsel for JPP, LLC, as agent under the Second Lien Credit Facility, IP/Ground Lease Term Loan Facility, and the Consolidated Secured Loan Facility*

Kelley Drye & Warren LLP
101 Park Avenue, New York, NY 10178
Attn: Eric R. Wilson, Esq., Benjamin D. Feder, Esq., and T. Charlie Liu, Esq.
ewilson@kelleydrye.com
bfeder@kelleydrye.com
cliu@kelleydrye.com
*Counsel for Computershare Trust Company, N.A., as trustee for the Second Lien PIK Notes, the Holdings Unsecured PIK Notes, and the Holdings Unsecured Notes*

Seyfarth Shaw LLP
620 Eighth Avenue
New York, NY 10018
Attn: Edward M. Fox, Esq.
emfox@seyfarth.com
*Counsel for Wilmington Trust, National Association, as indenture trustee for the Second Lien Notes*

Carter Ledyard & Milburn LLP
2 Wall Street, New York, NY 10015
Attn: James Gadsden, Esq.
gadsden@clm.com

*Counsel for The Bank of New York Mellon Trust Company, as successor trustee for the SRAC Unsecured PIK Notes, SRAC Unsecured Notes, and the SRAC Medium Term Notes*

Locke Lord LLP
111 South Wacker Drive, Chicago, IL 60606
Attn: Brian A. Raynor, Esq.
braynor@lockelord.com
*Counsel for the Pension Benefit Guaranty Corporation*

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park, New York, NY 10036
Attn: Philip C. Dublin, Esq., Ira Dizengoff, Esq., and Sara Lynne Brauner, Esq.
pdublin@akingump.com
idizengoff@akingump.com
sbrauner@akingump.com
*Counsel for the Official Committee of Unsecured Creditors*

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park, New York, NY 10036
Attn: Philip C. Dublin, Esq., Ira Dizengoff, Esq., and Sara Lynne Brauner, Esq.
pdublin@akingump.com
idizengoff@akingump.com
sbrauner@akingump.com
*Counsel for the Official Committee of Unsecured Creditors*

Duane Morris LLP
1540 Broadway, 14th Floor
New York, NY 10036
Attn: Wendy Simkulak, Esq.
wmsmkulak@duanemorris.com
*Counsel for the Chubb Companies (Movant)*

Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103
Attn: Catherine Heitzenrater, Esq., Elisa M. Hyder, Esq.
cheitzenrater@duanemorris.com
*Counsel for the Chubb Companies (Movant)*