**DUANE MORRIS LLP**
Wendy M. Simkulak, Esq. (WS-8945)
1540 Broadway, 14th Floor
New York, NY 10036-4086
(212) 692-1000 (Telephone)
(212) 692-1020 (Facsimile)
and
Catherine B. Heitzenrater, Esq. (PA 205597) (admitted pro
hac vice)
Elisa M. Hyder, Esq. (PA 328054)
30 South 17th Street
Philadelphia, PA 19103-4196
(215) 979-1000 (Telephone)
(215) 979-1020 (Facsimile)
*Counsel for the Chubb Companies*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
|  |  |  |
|---|---|---|
| | : | |
| **In re** | : | **Chapter 11** |
| | : | |
| **SEARS HOLDINGS CORPORATION,** *et al.*, | : | **Case No. 18-23538 (SHL)** |
| | : | |
| **Debtors.**[1] | : | **(Jointly Administered)** |
| | : | |

------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is c/o M-III Partners, LP, 1700 Broadway, 19th Floor, New York, NY 10019.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ...........................................................................1

ARGUMENT .......................................................................................................2

    A.    **The Chubb Companies Properly Seek the Relief Requested by the Motion in this Court** ........................................................................ 2

        1.    *The Court's Jurisdiction to Hear the Motion is Without Question*............. 3

        2.    *The Chubb Companies Undoubtedly Have Standing to Bring the Motion*. 5

        3.    *The Chubb Companies Have Not Waived their Right to Seek Relief with Respect to Plaintiff's Multiple Violations of the Automatic Stay and the Stay Extension Order* ............................................................... 8

        4.    *Plaintiff Has Not Met, and Cannot Meet, Her Burden for Her Laches Defense* ............................................................................ 10

    B.    **The Court Should Enter an Order Ruling that All of the Default Judgment, Settlement Agreements, and State Court Orders Are Void *Ab Initio* and Without Effect** ............................................... 13

        1.    *Plaintiff Concedes that the Default Judgment and First Settlement Agreement Violated the Automatic Stay and the Stay Extension Order* ... 14

        2.    *The Court Should Not Allow Plaintiff to Reap the Benefits of Her Ill-Gotten Gains* ........................................................................ 15

# TABLE OF AUTHORITIES

## Cases

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) ........................................................15, 19

*In re Ames Dep't Stores, Inc.*, 542 B.R. 121 (Bankr. S.D.N.Y. 2015) ...........................4

*In re Beck Indus., Inc.*, 38 F.Supp. 1369 (S.D.N.Y. 1972) ...........................................15

*In re Best Payphones, Inc.*, 279 B.R. 92 (Bankr. S.D.N.Y. 2002) ..................................4

*In re Bolus*, No. 5:20-02899-MJC, 2022 WL 3948685 (Bankr. M.D. Pa. Aug. 29, 2022) ................................................................................................................18

*In re Brizinova*, 554 B.R. 64 (Bankr. E.D.N.Y. 2016) .................................................11

*In re Congoleum Corp.*, 362 B.R. 167 (Bankr. D.N.J. 2007) ..........................................7

*E. Equip. & Servs. Corp. v. Factory Point Nat'l Bank, Bennington*, 236 F.3d 117 (2d Cir. 2001) ................................................................................................9

*E. Refractories Co. Inc. v. Forty Eight Insulations Inc.*, 157 F.3d 169 (2d Cir. 1998) ........................................................................................................18

*In re Elegant Merch., Inc.*, 41 B.R. 398 (Bankr. S.D.N.Y. 1984) ..................................6

*Felske v. Hirschmann*, No. 10 CIV. 8899 RMB, 2012 WL 716632 (S.D.N.Y. Mar. 1, 2012) ...................................................................................................3, 5, 14

*In re Heating Oil Partners, LP*, 422 F. App'x 15 (2d Cir. 2011) ...............................5-6

*In re Heating Oil Partners*, No. 3:08-CV-1976 CSH, 2009 WL 5110838 (D. Conn. Dec. 17, 2009) .......................................................................................4

*In re Lehman Bros. Inc.*, 617 B.R. 231 (Bankr. S.D.N.Y. 2020)..................................12

*In re Nilhan Developers, LLC*, 622 B.R. 795 (Bankr. N.D. Ga. 2020) ..........................7

*Norton v. Sam's Club*, 145 F.3d 114 (2d Cir. 1998)............................................3, 5, 14

*Ostano Commerzanstalt v. Telewide Sys., Inc.*, 790 F.2d 206 (2d Cir. 1986) ..............10

*In re Ottoman*, 621 B.R. 768 (Bankr. E.D. Mich. 2020) .............................................16

*In re Panek*, 402 B.R. 71 (Bankr. D. Mass. 2009)........................................................19

*In re Robinson*, 228 B.R. 75 (Bankr. E.D.N.Y. 1998) ...........................................14-15

*In re Rodriguez*, 235 Fed. App'x 383 (9th Cir. 2007) ...................................................17

*Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano*, 140 S. Ct. 696
(2020) ...................................................................................................................8

*In re Saucier*, 353 B.R. 383 (Bankr. D. Conn. 2006) ........................................... 12-13

*In re Singer Co. N.V.*, No. 00-10423, 2000 WL 33716976 (Bankr. S.D.N.Y. Nov.
3, 2000) ......................................................................................................... 4, 16-17

*In re Soares*, 107 F.3d 969 (1st Cir. 1997) ...............................................................19

*In re Standard Insulations, Inc.*, 138 B.R. 947 (Bankr. W.D. Mo. 1992) ................. 5-6

*In re Taylor*, No. 15-31208 (AMN), 2018 WL 1413538 (Bankr. D. Conn. Mar.
20, 2018) ...............................................................................................................7

*In re Terrace Hous. Assocs., Ltd.*, 577 B.R. 459 (Bankr. E.D. Pa. 2017) ...................13

*Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339 (S.D.N.Y. 1998) ........................11

*In re Uhrig*, 306 B.R. 687 (Bankr. M.D. Fla. 2004) .....................................................10

*Zuckerman v. Metro. Museum of Art*, 928 F.3d 186 (2d Cir. 2019) ............................11

**Statutes**

11 U.S.C. § 105(a) ........................................................................................ *passim*

11 U.S.C. § 362(a) ........................................................................................ *passim*

28 U.S.C. § 157(b) ..............................................................................................3, 4

28 U.S.C. § 1334(a) ...........................................................................................3, 4

11 U.S.C. § 1109(b) ...........................................................................................5-7

**REPLY OF THE CHUBB COMPANIES IN SUPPORT OF MOTION OF THE CHUBB
COMPANIES FOR ENTRY OF AN ORDER (I) RULING THAT DEFAULT
JUDGMENT, SETTLEMENT AGREEMENTS AND STATE COURT ORDERS ARE
EACH VOID *AB INITIO* PURSUANT TO 11 U.S.C. §§ 105(a) AND 362(a) AND
WITHOUT EFFECT; AND (II) GRANTING RELATED RELIEF**

ACE American Insurance Company and each of its U.S.-based affiliates and any

successors of each of the foregoing (collectively, the "**Chubb Companies**") hereby file this reply

(the "**Reply**")[2] to the *Objection of Shelley S. Hawkins to Motion of the Chubb Companies for Entry*

*of an Order (I) Ruling that Default Judgment, Settlement Agreements and State Court Orders are*

*Each Void* Ab Initio *Pursuant to 11 U.S.C. §§ 105(a) and 362(a) and Without Effect; and (II)*

*Granting Related Relief* [ECF No. 10681] (the "**Objection**") and in support of entry of the

Proposed Order attached hereto as **Exhibit A**.[3] In support of the Reply, the Chubb Companies

respectfully state as follows:

## PRELIMINARY STATEMENT

Plaintiff concedes that the Default Judgment and the First Settlement Agreement violated

the automatic stay and the Stay Extension Order. Yet Plaintiff nevertheless argues that the Motion

should be denied with respect to the Default Judgment and the First Settlement Agreement because

those violations are purportedly either "de minimis" or "moot." This argument lacks any support

in Second Circuit case law and must be rejected. Plaintiff's argument that the Motion should be

denied with respect to the Second Settlement Agreement and the State Court Orders because they

do not trace back to the void Default Judgment must also fail. The facts of this case and Plaintiff's

own actions make it clear that the Second Settlement Agreement and the State Court Orders

---

[2]    Any capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the
*Motion of the Chubb Companies for Entry of an Order (I) Ruling that Default Judgment, Settlement Agreements and
State Court Orders Are Each Void* Ab Initio *Pursuant to 11 U.S.C. §§ 105(a) and 362(a) and Without Effect; and (II)
Granting Related Relief* [ECF No. 10661] (the "**Motion**").

[3]    The Proposed Order was served in hard copy together with the Motion and all other exhibits thereto on
October 7, 2022 but was inadvertently not electronically filed with the Motion.

stemmed directly from and were based on, at least in part, the void Default Judgment and Plaintiff's intentional use of that Default Judgment as additional leverage against Mr. Miguel.

Plaintiff also argues that the Chubb Companies are not properly seeking relief in this Court on various grounds. However, contrary to Plaintiff's assertions, this Court's jurisdiction and authority over the Motion is clear, as is the Chubb Companies' standing to bring the Motion in this Court. Plaintiff also fails to meet her burden to show – and, indeed, cannot show – that the Chubb Companies waived their right to seek relief in this Court for Plaintiff's violations of the automatic stay and Stay Extension Order or that the doctrine of laches applies to bar the Chubb Companies from pursuing the Motion. Despite Plaintiff's complaint about purported delay, it was Plaintiff who attempted to keep the full extent of her stay violations from coming to light, which the Chubb Companies only became aware of through document discovery in the State Court Action in late July 2022 and through a deposition of Mr. Miguel in September 2022.

The automatic stay and this Court's Stay Extension Order must be rigorously enforced. Anything less than an order ruling that all of the Default Judgment, both Settlement Agreements, and the State Court Orders are void *ab initio* and without effect would effectively condone and reward Plaintiff for her sustained practice of disregarding the protections afforded by the automatic stay and by this Court's own Stay Extension Order. Such a result is not supported by applicable law and would violate the clear policy of the Bankruptcy Code. For all of the foregoing reasons and all of the reasons set forth in the Motion, the Chubb Companies respectfully request that the Objection be overruled and that all of the relief requested in the Motion be granted.

## **ARGUMENT**

A.    **The Chubb Companies Properly Seek the Relief Requested by the Motion in this Court**

1.    In the Objection, Plaintiff argues that the Court's jurisdiction to hear the Motion

2

and the Chubb Companies' standing to bring the Motion are both "questionable."  Plaintiff further

argues that the Chubb Companies have not properly brought the Motion before this Court because

the Chubb Companies have waived their right to challenge Plaintiff's violations of the automatic

stay and the Stay Extension Order, and because the doctrine of laches applies to bar the Chubb

Companies from seeking relief with respect to Plaintiff's violations.  However, none of Plaintiff's

arguments is supported by applicable law or the facts of this case.

     *1.    The Court's Jurisdiction to Hear the Motion is Without Question*

    2.    Plaintiff does not dispute that this Court has jurisdiction over matters arising from

stay violations pursuant to 28 U.S.C. §§ 157 and 1334(a).  Plaintiff also does not dispute that this

Court expressly retained jurisdiction to hear all matters related to the Stay Extension Order.

Plaintiff further does not dispute that the AL Policy is property of the Debtors' bankruptcy estates

and, therefore, falls within this Court's jurisdiction.  Accordingly, Plaintiff concedes each of these

points to be true.  *See Felske v. Hirschmann*, No. 10 CIV. 8899 RMB, 2012 WL 716632, at *3

(S.D.N.Y. Mar. 1, 2012) ("A plaintiff effectively concedes a defendant's arguments by his failure

to respond to them."); *see also Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues

not sufficiently argued in the briefs are considered waived.").

    3.    Plaintiff instead argues that bankruptcy courts lack jurisdiction to intervene when

non-debtors sue non-debtors on direct, rather than derivative, actions, and that Plaintiff's claims

against ACE American in the State Court Action are "non-derivative." (Objection ¶¶ 60-63.)

    4.    However, this argument is irrelevant.  The Chubb Companies do not ask the Court

to exercise jurisdiction over third party claims against non-debtors here.  Rather, the Chubb

Companies ask this Court to exercise its jurisdiction under 28 U.S.C. §§ 157 and 1334(a) and its

authority under 11 U.S.C. §§ 105(a) and 362(a)[4] to enter an order ruling that the Default Judgment, the Settlement Agreements, and the State Court Orders are all void *ab initio* and without effect.[5]

5.        As this Court has explained, a matter related to the application or violation of the automatic stay "is a core matter, going to fundamental, and critically important, bankruptcy policy." *In re Ames Dep't Stores, Inc.*, 542 B.R. 121, 141 (Bankr. S.D.N.Y. 2015).   Thus, "[a]llegations concerning stay violations are claims arising under the Bankruptcy Code and give rise to core proceedings" which bankruptcy courts have jurisdiction to hear pursuant to 28 U.S.C. § 157(b). *Singer*, 2000 WL 33716976, at *2.

6.        Therefore, because the Motion is based upon and raises violations of the automatic stay, as automatically applied to the Debtors and as made applicable to Mr. Miguel by the Stay Extension Order, the Chubb Companies have properly invoked this Court's jurisdiction under 28 U.S.C. §§ 157 and 1334(a).  The Court's jurisdiction over the Motion is clear.[6]

---

[4]        The Effective Date of the Plan occurred just a few days ago on October 29, 2022.  (*See Notice of Occurrence of Effective Date* [ECF No. 10693].)  Pursuant to section 15.7 of the Plan, all stays arising or entered under section 105 and section 362 of the Bankruptcy Code were lifted or otherwise terminated on the Effective Date, unless otherwise provided in the Plan, the Confirmation Order, or another order of the Bankruptcy Court.  The stays and injunctions lifted on the Effective Date were replaced, however, by the injunction imposed by section 15.8 of the Plan.  Regardless, the occurrence of the Effective Date has no impact on the fact that Plaintiff committed multiple violations of the automatic stay and the Stay Extension Order when they were in effect, or on this Court's jurisdiction and authority to grant the Motion.  *See In re Singer Co. N.V.*, No. 00-10423, 2000 WL 33716976, at *3 (Bankr. S.D.N.Y. Nov. 3, 2000) (holding that occurrence of plan effective date does not render a stay violation moot); *In re Heating Oil Partners*, No. 3:08-CV-1976 CSH, 2009 WL 5110838 (D. Conn. Dec. 17, 2009) (entering order after plan effective date occurred ruling that default judgment entered while automatic stay was in effect was void *ab initio*).  Moreover, the Confirmation Order expressly provides that, "notwithstanding the entry of this Confirmation Order *or the occurrence of the Effective Date*, this Court … shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases … to the fullest extent permitted by law."  (Confirmation Order ¶ 67 (emphasis added).)  The Motion clearly falls within the jurisdiction expressly retained by this Court under the Confirmation Order.

[5]        At various points in the Objection, Plaintiff states that the Chubb Companies are asking this Court "to void" the Default Judgment, the Settlement Agreements, and the State Court Orders.  However, the Chubb Companies are not asking this Court to void anything but instead to rule that each of the foregoing is already void and without effect.  This is because it is well-established in the Second Circuit that actions that violate the automatic stay are *void* as soon as they occur, not *voidable*.  *In re Best Payphones, Inc.*, 279 B.R. 92, 98 (Bankr. S.D.N.Y. 2002) (stating that the Second Circuit adheres to the majority view that stay violations are "void" and not "voidable").

[6]        As a "final observation" in Plaintiff's challenge of this Court's jurisdiction, Plaintiff argues that the State Court Action would have necessarily "proceeded against Miguel at *some point in time*." (Objection ¶ 64 (emphasis in original).)  This argument appears to be based, at least in part, on the fact that the occurrence of the Effective Date of

2.    *The Chubb Companies Undoubtedly Have Standing to Bring the Motion*

7.      Plaintiff does not dispute that the Chubb Companies have both Article III standing and standing as parties in interest pursuant to section 1109(b) of the Bankruptcy Code to bring the Motion.  Thus, Plaintiff concedes the Chubb Companies' Article III and party-in-interest standing.  *See Felske*, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012); *see also Norton*, 145 F.3d at 117.

8.      Plaintiff instead only argues that the Chubb Companies nevertheless lack standing because: (i) the Second Circuit's ruling in *In re Heating Oil Partners, LP*, 422 F. App'x 15 (2d Cir. 2011) is inapplicable; and (ii) the Chubb Companies are neither Debtors nor creditors of the Debtors.  (Objection ¶¶ 66-67.)  However, not only is *Heating Oil* clearly applicable, but it also shows that Plaintiff's "non-debtor, non-creditor" standing argument must fail.

9.      As explained in the Motion, the insurer in *Heating Oil* sought an order from the bankruptcy court providing that a default judgment entered in violation of the automatic stay was void *ab initio*.  *Heating Oil*, 22 F. App'x at 16.  Likewise, the Chubb Companies seek entry of an order ruling that the Default Judgment and the resulting Settlement Agreements and State Court Orders are void *ab initio* pursuant to sections 105(a) and section 362(a) of the Bankruptcy Code and without effect due to Plaintiff's violations of the automatic stay and the Stay Extension Order.

10.     Despite the clear similarities between the facts of *Heating Oil* and the facts at hand, Plaintiff argues that *Heating Oil* is inapposite based on an apparent mischaracterization of the

---

the Plan would have lifted the automatic stay.  (*Id.* n. 10.)  However, Plaintiff fails to account for the injunction imposed by section 15.8(b) of the Plan, which provides, among other things, that "all Entities who have ... Claims against ... any or all of the Debtors ... and other parties in interest, along with their respective present or former employees ... are permanently enjoined, on and after the Effective Date, with respect to such Claims, from (i) commencing, conducting, or continuing in any manner ... any suit, action, or other proceeding of any kind ... against or affecting the Debtors ... or the property of any of the Debtors ...[.]" (Plan § 15.8(b).)  Thus, while the Chubb Companies certainly do not seek to deprive Plaintiff of her day in court, Plaintiff's argument that the State Court Action definitely would have proceeded against Mr. Miguel is certainly questionable given the terms of the Plan.

case.[7]  Specifically, Plaintiff asserts that in *Heating Oil* "the insurer argued that a default judgment against *the debtor* was a violation of the automatic stay and therefore void."  (Objection ¶ 66 (emphasis in original).)  In fact, the default judgment at issue in *Heating Oil* was entered against the debtor *and its non-debtor affiliate*.  *Heating Oil*, 422 F. App'x at 16.  The insurer sought entry of an order declaring that the default judgment was void *ab initio* as to both the debtor and this non-debtor affiliate, which the Second Circuit held that the insurer had standing to do.  *Id.*

11.    Contrary to Plaintiff's assertions, the Second Circuit held that the insurer had standing not simply because the default judgment at issue was entered against the debtor but because the insurer had a "personal stake in whether the default judgment is void."  *Id.*  Based on this personal stake, the Second Circuit found that the insurer was, "[w]ithout a doubt," a "party in interest pursuant to section 1109(b)" and, therefore, had standing to bring its motion.  *Id.*

12.    Here, just as the insurer in *Heating Oil*, the Chubb Companies have a personal stake in whether the Default Judgment and the resulting Settlement Agreements and State Court Orders are void given that Plaintiff seeks payment from the Chubb Companies on account of her alleged claims against Mr. Miguel together with extra-contractual claims purportedly assigned to Plaintiff under the Settlement Agreements.  Therefore, just as the insurer in *Heating Oil*, the Chubb Companies have standing as parties in interest under section 1109(b) to bring their Motion.[8]

---

[7]    Similarly, Plaintiff's argument that *In re Standard Insulations, Inc.*, 138 B.R. 947 (Bankr. W.D. Mo. 1992) is distinguishable appears to be based on a mischaracterization of that case.  Plaintiff emphasizes in her Objection that the insurers in *Standard Insulations* had standing because their policies provided coverage for claims arising from "exposure to debtor's products."  (Objection ¶ 66 (emphasis in original).)  However, the *Standard Insulations* court found the insurers had standing not simply because the debtor's products caused the injuries that were the basis of the challenged proofs of claim, but because "insurance [was] the only asset of consequence" in connection with the claims.  *Standard Insulations*, 138 B.R. at 950.  Because the insurers would be responsible for paying the claims, they had standing as parties in interest under section 1109(b) to object to the claims.  *Id.*  Likewise, because Plaintiff seeks to hold the Chubb Companies financially responsible for her asserted claims in the State Court Action, the Chubb Companies have standing as parties in interest to bring the Motion.

[8]    Plaintiff also asserts, based on an admittedly "brief review" of the Assumption Agreement, that the Debtors paid ACE American in connection with that agreement by "allowing" the Chubb Companies to credit unpaid amounts due from the Debtors by applying the proceeds of the Chubb Companies' letter of credit.  (Objection ¶ 67 n. 12.)

13.    Furthermore, in *Heating Oil* the Second Circuit specifically rejected the very argument that Plaintiff asserts here: namely, that the insurer lacked standing to invoke the protections of the automatic stay because it was neither a debtor nor a creditor of the estate. *Id.* at 16-17.  As the Second Circuit explained, the question of the insurer's standing was tied to whether the insurer was a party in interest under section 1109(b), which depends on whether the party has a sufficient stake in the outcome of the proceeding. *Id.* at 17.  In other words, whether the insurer is a creditor is not dispositive or even the proper question.

14.    Plaintiff fails to acknowledge this aspect of the Second Circuit's ruling in *Heating Oil*.  Instead, Plaintiff cites *In re Nilhan Developers, LLC*, 622 B.R. 795 (Bankr. N.D. Ga. 2020) – which is not from this Circuit – and *In re Taylor*, No. 15-31208 (AMN), 2018 WL 1413538 (Bankr. D. Conn. Mar. 20, 2018) as purported support for her argument that the Chubb Companies lack standing simply because they are not creditors.  However, the movants in each of these two cases sought damages pursuant to section 362(k).  *See Nilhan*, 622 B.R. at 802 (finding movant "does not fall within the aggrieved parties that may seek relief under section 362(k)"); *Taylor*, 2018 WL 1413538, at *5 (concluding movants lacked standing to pursue remedies under section

---

However, no estate assets were transferred to the Chubb Companies in connection with the Assumption Agreement. Instead, the Assumption Agreement involved the transfer *from* the Chubb Companies to the Debtors' purchaser of the majority of the proceeds of the Chubb Companies' letter of credit that they held as collateral for the Debtors' insurance obligations.  (Assumption Agreement § 3.3.)  Neither the letter of credit nor the proceeds thereof are or were property of the Debtors' bankruptcy estates.  *In re Elegant Merch., Inc.*, 41 B.R. 398, 399 (Bankr. S.D.N.Y. 1984).  While the Chubb Companies did agree to reimburse themselves and/or pay unpaid amounts due from the Debtors solely by applying the retained proceeds of their letter of credit to such amounts, the Chubb Companies already had the right, but not the obligation, to do this.  (*Id.* § 2.1(b)(vii).)  The Debtors did not "allow" the Chubb Companies to exercise this right that they already possessed.

As part of Plaintiff's discussion (and mischaracterization) of the Assumption Agreement, Plaintiff argues without any support that the Chubb Companies are seeking to avoid their obligations.  The Chubb Companies reject this baseless and unsupported argument.

Lastly, Plaintiff references (and also mischaracterizes) *In re Congoleum Corp.*, 362 B.R. 167 (Bankr. D.N.J. 2007) in connection with the Assumption Agreement.  However, Plaintiff fails to show how *Congoleum* – wherein insurers were found to have standing to object to plan confirmation because the plan would be funded in substantial part by the insurers – bears any relationship whatsoever to the Assumption Agreement.

362(k)).  The Chubb Companies are not seeking sanctions through the Motion nor damages under

section 362(k) and, accordingly, *Nilhan* and *Taylor* are wholly inapplicable on their facts.  In

contrast, and despite Plaintiff's surprising argument that it is "inapposite," *Heating Oil* is factually

applicable, binding precedent on this Court, directly contradicts Plaintiff's arguments, and

supports the Chubb Companies' standing.

15.     Therefore, just as the Second Circuit did in *Heating Oil*, the Court should find that

the Chubb Companies have standing as parties in interest to bring the Motion.

> 3.    *The Chubb Companies Have Not Waived their Right to Seek Relief with*
> *Respect to Plaintiff's Multiple Violations of the Automatic Stay and the*
> *Stay Extension Order*

16.     Plaintiff also argues that the Chubb Companies cannot seek the relief sought by the

Motion because ACE American purportedly waived its right to object to Plaintiff's violations of

the automatic stay and the Stay Extension Order.  However, neither the facts of this case nor

Plaintiff's one out-of-Circuit case supports this argument.

17.     Specifically, Plaintiff argues that ACE American waived its right to bring this

Motion by not objecting to the entry of the Stay Relief Order.  (Objection ¶ 50.)  However, as

discussed in the Motion, the Stay Relief Stipulation did not disclose the existence of the Default

Judgment or Plaintiff's other preexisting violations of the automatic stay and Stay Extension

Order.  Plaintiff also did not seek retroactive relief from the automatic stay or the Stay Extension

Order.[9]  She did not ask this Court to validate or ratify her past and ongoing violations, nor did the

Stay Relief Stipulation purport to allow Plaintiff to enforce or otherwise utilize the void Default

---

[9]     Plaintiff admits in her Objection that she never sought retroactive relief from the automatic stay or the Stay
Extension Order.  (Objection ¶ 69.)  Plaintiff thus argues that the Chubb Companies discussion of retroactive stay
relief and the Supreme Court's decision in *Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano*, 140 S. Ct.
696 (2020) is a "red herring."  (*Id.*)  However, far from being a red herring, the Chubb Companies' discussion of this
matter in the Motion establishes Plaintiff's fatal flaw in failing to even seek retroactive stay relief, while also showing
that Plaintiff may *never* have been able to retroactively lift the automatic stay so as to validate her stay violations.

Judgment.  Simply put, Plaintiff's violations of the automatic stay and the Stay Extension Order were not at issue in the Stay Relief Stipulation or the Stay Relief Order.  Therefore, the Chubb Companies' decision not to object to the entry of the Stay Relief Order does not waive their right to seek relief with respect to Plaintiff's violation of the automatic stay and Stay Extension Order.

18.    Plaintiff next argues that ACE American waived the right to bring the Motion because it did not seek relief from this Court until after the Second Settlement Agreement was executed, the State Court Orders were entered, and discovery and motion practice had taken place in connection with the Amended Complaint.[10]  (Objection ¶ 50.)  However, as set forth in the declaration of Lloyd Bernstein attached hereto as **Exhibit B** (the "**Bernstein Declaration**"), the Chubb Companies received copies of the Demand Letter, First Settlement Agreement, Second Settlement Email, and Draft Second Settlement Agreement through discovery in the State Court Action on or about July 29, 2022.  (Bernstein Decl. ¶¶ 6-7.)[11]  Prior to receiving this discovery, the Chubb Companies were not aware of these documents[12] and, therefore, did not know the full extent of Plaintiff's violations of the automatic stay and Stay Extension Order and the clear

---

[10]    Plaintiff also appears to argue that ACE American waived its right to seek relief in this Court because it never asked the State Court to set aside the Settlement Order based on Plaintiff's violations of the automatic stay and Stay Extension Order.  However, Plaintiff fails to acknowledge that the Second Circuit has long held that "[a]ny relief for a violation of the stay must be sought in the [b]ankruptcy [c]ourt," not in the state court where the alleged stay violations occurred.  *E. Equip. & Servs. Corp. v. Factory Point Nat'l Bank, Bennington*, 236 F.3d 117, 121 (2d Cir. 2001).  The Chubb Companies' compliance with this well-settled law in seeking relief from this Court, and not the State Court, does not waive the Chubb Companies' right to seek such relief from this Court.

[11]    Plaintiff claims that the State Court emailed a copy of the Settlement Order "to Ace American's hired attorney at Williams, Kastner & Gibbs."  (Objection ¶ 15.)  However, Williams, Kastner & Gibbs was never counsel for any of the Chubb Companies in the State Court Action or otherwise in connection with this matter.  Williams, Kastner & Gibbs was defense counsel hired by the Debtor Defendants' third party claim administrator to represent the Debtor Defendants and Mr. Miguel and had no attorney-client relationship with ACE American.

[12]    Plaintiff claims that Mr. Miguel's counsel sent to ACE American a "notice to cure" under Washington's Insurance Fair Conduct Act.  (Objection ¶ 16.)  Mr. Miguel's counsel did send a letter dated August 12, 2021 to ACE American, jointly with Plaintiff's counsel and with Plaintiff's counsel's letterhead (the "**IFCA Letter**").  A true and correct copy of the IFCA Letter is attached as Exhibit A to the Bernstein Declaration. Just as the Stay Relief Stipulation, the IFCA Letter did not disclose the existence of the Default Judgment or Plaintiff's other preexisting violations of the automatic stay and Stay Extension Order.  (Bernstein Decl. ¶ 5; Ex. A.)

connection between, and the direct path from, the void Default Judgment to the Settlement

Agreements and State Court Orders.[13]

19.     For this reason, *In re Uhrig*, 306 B.R. 687 (Bankr. M.D. Fla. 2004), the only case

Plaintiff cites in support of her waiver argument, is entirely inapposite.  In *Uhrig*, the debtor was

an attorney who actively participated in the district court litigation while his bankruptcy case was

pending despite being fully aware of the plaintiff's stay violations.  *Id.* at 694-95.  Indeed, the

debtor *consented* to the entry of default judgment against him.  *Id.* at 693.  The debtor made an

informed and strategic decision to wait to raise the stay violations, doing so only after the plaintiff

obtained a damages award and sought a dischargeability finding in the bankruptcy court.  *Id.* at

695.  In contrast, the Chubb Companies acted swiftly and promptly in seeking relief in this Court

once they became aware of Plaintiff's egregious actions in violation of the automatic stay and State

Extension Order.  Thus, *Uhrig*, which also had nothing to do with the violation of a bankruptcy

court order as is the case here, is inapplicable.[14]

20.     Therefore, Plaintiff's argument that the Chubb Companies waived their right to

bring the Motion must be rejected.

> ### 4.     *Plaintiff Has Not Met, and Cannot Meet, Her Burden for Her Laches Defense*

21.     Plaintiff lastly argues that the equitable doctrine of laches bars the Chubb

Companies from seeking the relief sought in the Motion.  However, Plaintiff bears the burden of

---

[13]     Plaintiff also contends that "Ace American now appears before this Court, on the eve of the Effective Date of the Debtors' chapter 11 plan."  (Objection ¶ 51.)  While this is one of several references to the Effective Date in the Objection, Plaintiff never actually argues that the occurrence of the Effective Date itself prohibits the Court from granting the Motion.  Even if Plaintiff does try to make this argument, it, too, would be unsuccessful because, as discussed above, the occurrence of the Effective Date has no impact on the Motion.

[14]     Furthermore, the holding in *Uhrig* is contrary to the law in this Circuit.  The Second Circuit has long held that a debtor cannot waive the protections of the automatic stay. *Ostano Commerzanstalt v. Telewide Sys., Inc.*, 790 F.2d 206, 207 (2d Cir. 1986).  Thus, not only is *Uhrig* not binding precedent on this Court, it is refuted by the well-established law in this Circuit.

establishing a laches defense, and Plaintiff has not met her burden. *See Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 360 (S.D.N.Y. 1998) ("Defendants bear the burden of proving laches."); *In re Brizinova*, 554 B.R. 64 (Bankr. E.D.N.Y. 2016) (stating that laches is an "affirmative defense" with the burden on the proponent to show it bars the movant's claim).

22.    The proponent of a laches defense must establish that (1) the movant "has inexcusably slept on its rights so as to make a decree against the defendant unfair" and (2) the proponent "has been prejudiced by the [movant's] unreasonable delay in bringing the action." *Zuckerman v. Metro. Museum of Art*, 928 F.3d 186, 193 (2d Cir. 2019). Plaintiff has not established either of these two required elements.

23.    With respect to the first element, Plaintiff fails to show that the Chubb Companies inexcusably and unreasonably delayed bringing the Motion. Plaintiff only argues that ACE American could have objected to the Stay Relief Stipulation in March 2021 or "could have raised the purported stay violations in the [State Court] or in this Court at any time." (Objection ¶ 54.) However, as discussed above, the Chubb Companies' decision not to object to Plaintiff obtaining prospective relief from the Stay Extension Order is irrelevant. Plaintiff also offers no support for the argument that the Chubb Companies' decision not to seek relief in the State Court for Plaintiff's violations of *this* Court's Stay Extension Order establishes a laches defense.

24.    Plaintiff is also wrong that the Chubb Companies could have filed the Motion with this Court at any time. As noted above, the Chubb Companies only learned of the Demand Letter, the existence of the First Settlement Agreement, the timing of the negotiations for the Second Settlement Agreement and the critical role that the Default Judgment played in connection with all of the foregoing through discovery in the State Court Action in late July 2022, just a few months

prior filing the Motion.  (*See* Bernstein Decl. ¶¶ 6-7.)[15]  Unlike the movants in *In re Lehman Bros.*

*Inc.*, 617 B.R. 231 (Bankr. S.D.N.Y. 2020), who were eleven years into the bankruptcy case and

six years into pending litigation before they raised claims based on facts they knew upon the

commencement of the case, the Chubb Companies exhibited no inexcusable or unreasonable delay,

and Plaintiff has not shown otherwise.  *See In re Saucier*, 353 B.R. 383, 386 (Bankr. D. Conn.

2006) (rejecting laches defense because "debtors' delay in seeking to avoid the lien of which they

had no prior knowledge was … excusable.").  Thus, Plaintiff's laches defense fails.

25.      Plaintiff's laches defense also fails because she does not establish prejudice, the

second element of her affirmative defense.  As Plaintiff concedes in her Objection, the elements

of unreasonable delay and prejudice "are integrally related and must be weighted together."

*Lehman Bros.*, 617 B.R. at 246.  Thus, because the Chubb Companies did not unreasonably delay

filing the Motion, Plaintiff's burden to prove prejudice is even heavier.  However, Plaintiff fails to

prove any prejudice at all.  She merely argues that she will suffer prejudice because the State Court

Action will be put "in an uncertain and confused posture" and "further delay any recovery [she]

may receive out of the [State Court Action] injury." (Objection ¶ 56.)  But, the State Court Action

will not be put in a uncertain posture; Plaintiff will be put back in the position she should have

been in after the Stay Relief Order was entered to proceed on her Complaint.[16]  Further, mere

---

[15]      Indeed, Plaintiff, through her counsel, took affirmative steps to prevent the Chubb Companies from becoming aware of the full extent of her actions for as long as possible.  As set forth in the Motion, Plaintiff's Demand Letter expressly told Mr. Miguel that Plaintiff's "offer to free [Mr. Miguel] from paying this judgment ***is withdrawn if [Mr. Miguel] contact[s] [his] insurance company***."  (Demand Letter at 2 (emphasis added).)  This was clearly intended to keep the Chubb Companies in the dark with respect to Plaintiff's and Mr. Miguel's negotiations, which occurred while the automatic stay and Stay Extension Order were in effect and applicable to Mr. Miguel, and to hide the critical role that the Default Judgment played in jumpstarting those negotiations.

[16]      Plaintiff also argues that Mr. Miguel will be prejudiced if the Motion is granted.  (Objection ¶ 56.)  However, Mr. Miguel is not the party asserting the laches defense, so any alleged prejudice to *him* is not relevant.  *See Saucier*, 353 B.R. at 386 (stating that the proponent of a laches must show that "the delay caused [it] a disadvantage." (alterations in original)).  Even if any prejudice to Mr. Miguel was relevant to the laches analysis, which it is not, Plaintiff fails to show how granting the Motion would prejudice Mr. Miguel.  In fact, Mr. Miguel will *benefit* from Plaintiff being returned to the original position she was in when the Complaint was filed.  Indeed, the Chubb

passage of time is not sufficient to establish a laches defense. *See Saucier*, 353 B.R. at 386 ("Passage of time in itself does not constitute prejudice.").

26.    The facts of this case also do not compare to those in *In re Terrace Hous. Assocs., Ltd.*, 577 B.R. 459 (Bankr. E.D. Pa. 2017), the only case Plaintiff cites in support of her alleged prejudice.  In *Terrace*, the debtor waited to seek relief for stay violations until two years after the dismissal of its bankruptcy case and the sale of its property at foreclosure, which foreclosure sale could not be undone.  *Id.* at 463.  In contrast, if the Court grants the Motion, Plaintiff will simply be returned to the position she should have been in in the State Court Action when the Stay Relief Order was entered had she not violated the automatic stay and the Stay Extension Order.  Plaintiff fails to show that this constitutes the prejudice required to support her laches defense.

27.    Based on all of the foregoing, it is beyond question that the Motion is properly before the Court, and all of Plaintiff's arguments to the contrary should be rejected.

**B.    The Court Should Enter an Order Ruling that All of the Default Judgment, Settlement Agreements, and State Court Orders Are Void *Ab Initio* and Without Effect**

28.    Plaintiff argues that the Motion should be denied because the issues with respect to the Default Judgment and First Settlement Agreement are "dead" and "moot."  Plaintiff also argues that the Second Settlement Agreement and State Court Orders were executed and entered, respectively, after the entry of the Stay Relief Order and do not trace back to the Default Judgment.  However, Plaintiff concedes that the Default Judgment and First Settlement Agreement violated the automatic stay and the Stay Extension Order, and, contrary to Plaintiff's arguments, applicable law, the clear facts of this case, and Plaintiff's egregious actions all support granting the Motion.

---

Companies will defend the claims against Mr. Miguel as they would in any other case and, if a damages determination is made by a finder of fact without the taint of the void Default Judgment and the Settlement Agreements, pay any such damages pursuant to the terms, conditions and limitations of the AL Policy.

1.    *Plaintiff Concedes that the Default Judgment and First Settlement Agreement Violated the Automatic Stay and the Stay Extension Order*

29.    Plaintiff concedes that the Stay Extension Order applied to and extended the automatic stay to the State Court Action.  (Objection ¶ 4.)  Plaintiff also does not dispute that both the Default Judgment was entered and the First Settlement Agreement was executed in violation of the automatic stay and the Stay Extension Order, and, thus, concedes these facts to be true.  *See Felske*, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012); *see also Norton*, 145 F.3d at 117. Plaintiff then ignores that the Default Judgement was plainly used as leverage to secure the Settlement Agreements and State Court Orders – which alone warrants granting the Motion.

30.    Plaintiff nevertheless argues that the issues with respect to the Default Judgment and the First Settlement Agreement[17] are "moot" because the Default Judgment was vacated by the State Court and because the First Settlement Agreement was "superseded in every respect by the Second Settlement Agreement."[18]   (Objection ¶¶ 27, 32.)   However, Plaintiff's argument is directly refuted by *In re Robinson*, 228 B.R. 75 (Bankr. E.D.N.Y. 1998), which is cited in the Motion (but also ignored by Plaintiff).   The creditor in *Robinson* moved for and obtained a judgment against the debtor in state court while the debtor was protected by the automatic stay. *Id.* at 79.   A few weeks later, the state court vacated the judgment at the creditor's request.  *Id.* When the debtor subsequently sought relief from the bankruptcy court for the creditor's stay

---

[17]    With respect to the First Settlement Agreement, Plaintiff also argues that it was never "in proper form" and never "binding." (Objection ¶ 32.)   However, Plaintiff offers no support for her claim that a fully executed agreement was not binding between the parties.   Upon information and belief, Plaintiff never advised Mr. Miguel that the agreement was not binding.  Indeed, during his September 16, 2022 deposition taken in the State Court Action, a true and correct copy of the transcript of which is attached as Exhibit B to the Bernstein Declaration, Mr. Miguel testified that he understood that, by signing the First Settlement Agreement, Plaintiff agreed not to pursue her claims against Mr. Miguel and that all of Plaintiff's claims against him were resolved.  (Bernstein Decl., Ex. B at 40-41.)  Plaintiff also fails to show how, then, the Second Settlement Agreement could be in proper form.

[18]    Plaintiff again offers no support for her claim that the Second Settlement Agreement superseded the First Settlement Agreement, which the Second Settlement Agreement does not expressly provide.   Regardless, even assuming that this was in fact the case, it is irrelevant.

violation, the court did not deny the motion on the basis that it was moot because the judgment was vacated.  Instead, the court *granted* the motion and found that the creditor willfully violated the automatic stay, warranting the debtor's requested relief.  *Id.* at 87.[19]

31.    Likewise, Plaintiff's willful violations of the automatic stay and the Stay Extension Order in obtaining the Default Judgment and then leveraging it to secure the Settlement Agreements and the State Court Orders supports granting the relief requested in the Motion.[20]

> 2.    *The Court Should Not Allow Plaintiff to Reap the Benefits of Her Ill-Gotten Gains*

32.    Plaintiff focuses much of her Objection on the timing of the execution of the Second Settlement Agreement and the entry of each of the State Court Orders compared to the entry of the Stay Relief Order.  Essentially, Plaintiff asks this Court to ignore that the Second Settlement Agreement and the State Court Orders all directly stem from the void Default Judgment that Plaintiff obtained in clear violation of the automatic stay and the Stay Extension Order.

33.    Plaintiff does not contest that, after obtaining the void Default Judgment, her counsel sent Mr. Miguel the Demand Letter while the Stay Extension Order was still in effect and applicable to Mr. Miguel.  Plaintiff further does not contest that the Demand Letter claimed that Mr. Miguel was a "Judgment Debtor" who owed Plaintiff $440,827.61 for the Default Judgment.

---

[19]    Plaintiff's reliance on *In re Beck Indus., Inc.*, 38 F.Supp. 1369, 1372 (S.D.N.Y. 1972) is also misplaced.  That the court in *Beck* ordered the plaintiff to take steps to vacate the default judgment does not mean that this Court cannot grant *other* relief with respect to a void default judgment where it has already been vacated. The *Beck* court did not hold that vacating the void default judgment was the *only* possible remedy available for a stay violation.

[20]    Contrary to Plaintiff's argument that the issues presented in this case are somehow no longer "live," there is in fact an actual controversy in this case regarding Plaintiff's repeated violations of the automatic stay and Stay Extension Order.  This controversy is not rendered moot by either the State Court vacating the Default Judgment or the Second Settlement Agreement allegedly superseding the First Settlement Agreement.  *See Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) (holding that a case is moot if the dispute "is no longer embedded in any actual controversy about the plaintiffs' particular legal rights").  There is a live dispute here about Plaintiff's ability to leverage the void Default Judgment into the Second Settlement Agreement and State Court Orders, and then continue to prosecute claims based thereon.

Of course, the Demand Letter did not acknowledge in any way that the Default Judgment was, in fact, void and entirely unenforceable against Mr. Miguel, or that Mr. Miguel continued to be protected by the Stay Extension Order.

34.    The Demand Letter demonstrates that Plaintiff willfully used the void Default Judgment as significant leverage when engaging in settlement negotiations with Mr. Miguel.

35.    Plaintiff also does not contest that the vast majority, if not the entirety, of these settlement negotiations occurred between Plaintiff and Mr. Miguel while the automatic stay was in effect and applicable to Mr. Miguel through the Stay Extension Order.  Indeed, the First Settlement Agreement was signed and all of the key terms of the Second Settlement Agreement were determined all before the Stay Relief Order was entered.

36.    Plaintiff instead attempts to downplay these negotiations.  Plaintiff argues that any alleged stay violations that occurred as a result of Plaintiff's communications with Mr. Miguel in connection with the Second Settlement Agreement prior to the entry of the Stay Relief Order were "de minimis."[21]  (Objection ¶ 40.)

37.    However, as this Court stated in *Singer*, "[a] violation of the automatic stay is just that, a violation of the automatic stay—there is no such thing as a slight violation." *Singer*, 2000 WL 33716976, at *3.  For this reason, this Court rejected the state court plaintiff's argument in

---

[21]    Plaintiff also argues that Mr. Miguel "waived any protection he had under the Stay Extension Order" because his counsel (who was recommended to Mr. Miguel by Plaintiff's counsel) allegedly requested Plaintiff's counsel send "settlement papers." (Objection ¶ 40.)  Plaintiff cites *In re Ottoman*, 621 B.R. 768 (Bankr. E.D. Mich. 2020), a case from the Sixth Circuit (which is directly contradicted by and entirely inconsistent with the law in the Second Circuit) wherein the debtors were found to have waived their right to bring a stay violation claim, to support this argument. (*Id.*) However, as noted above, the Second Circuit has held that debtors cannot waive the protections of the automatic stay.  Moreover, the Sixth Circuit, unlike the Second Circuit, follows the minority rule that actions taken in violation of the automatic stay are voidable, not void. *Ottoman*, 621 B.R. at 794.  Thus, *Ottoman* – which is not binding precedent on this Court – is refuted by relevant Second Circuit precedent, does not even apply the same standard for stay violations as the Second Circuit, and has no bearing on this case.  Plaintiff also fails to show how *Ottoman* supports her argument that Mr. Miguel waived his protections under the Stay Extension Order, an order of this Court.

*Singer* that a violation of the automatic stay committed a few weeks before the occurrence of the effective date of the debtor's plan was only a "brief violation." *Id.* The Court should likewise reject Plaintiff's argument here that any of her violations of the automatic stay and the Stay Extension Order were "de minimis" violations, as there is simply no such thing.

38.    Regardless, none of Plaintiff's violations of the automatic stay and Stay Extension Order were merely "de minimis." In fact, each violation of the automatic stay and the Stay Extension Order that Plaintiff committed in this case was a necessary and crucial step towards the Settlement Agreements and the State Court Orders, Plaintiff's ultimate goal.

39.    After improperly obtaining the void Default Judgment in blatant disregard of the automatic stay and the Stay Extension Order, Plaintiff continued to disregard the automatic stay and the Stay Extension Order by giving effect to the void Default Judgment through leveraging it to obtain the Second Settlement Agreement and State Court Orders.[22]

40.    Plaintiff also disregarded the relief that she argues that the Stay Relief Order granted her. Plaintiff contends that the Stay Relief Order granted Plaintiff relief to "proceed on the Original Complaint against Miguel."[23] (Objection ¶ 35.) Thus, according to Plaintiff,

---

[22]    Plaintiff unsuccessfully attempts to distinguish *In re Rodriguez*, 235 Fed. App'x 383 (9th Cir. 2007), wherein the court affirmed that a settlement agreement and a state court order approving the settlement agreement were both void as violations of the automatic stay. Plaintiff argues that *Rodriguez* is inapplicable because the settlement agreement in that case was with the debtor, whereas the Settlement Agreements here were with Mr. Miguel, a non-debtor. (Objection ¶ 36 n. 4.) However, the *Rodriguez* court found that the settlement agreement was void not simply because it was with the debtor but because the settlement agreement violated the automatic stay. *Rodriguez*, 235 Fed App'x at 385. Likewise, the Settlement Agreements here, which Plaintiff negotiated with Mr. Miguel while he was protected by the automatic stay, violated the automatic stay and the Stay Extension Order. Therefore, like the *Rodriguez* court, this Court should enter an order ruling that the Settlement Agreements and, necessarily, the State Court Orders are all void *ab initio* pursuant to sections 105(a) and 362(a) of the Bankruptcy Code and without effect.

[23]    Plaintiff claims that the Assumption Order "perhaps rendered the subsequent Stay Relief Order redundant" because the Assumption Order lifted the automatic stay "to permit [Plaintiff] … to bring 'direct action claims' and 'claims for which an order has been entered by the Court granting the claimant relief from the automatic stay.'" (Objection ¶ 63 n. 9.) Plaintiff asserts that her claims "fall squarely within this language." (*Id.*) However, this assertion is surprising (and confusing) given that Plaintiff concedes she did not have relief from the automatic stay prior to the entry of the Stay Relief Order (which was entered after the Assumption Order). Plaintiff also fails to show how any of her claims *against Mr. Miguel* (which form the basis of the Second Settlement Agreement and State Court Orders) constitute direct action claims, which are certain claims that may be brought directly against insurers pursuant

following the entry of the Stay Relief Order Plaintiff should have started from the position of the *Complaint*. However, Plaintiff did not do so. Instead, Plaintiff proceeded on and continued from the negotiations with Mr. Miguel that began with the Demand Letter that improperly leveraged the void Default Judgment. Plaintiff never acted in accordance with the relief granted to her by the Stay Relief Order, as that relief is described in Plaintiff's own words. Therefore, Plaintiff cannot rely on the entry of the Stay Relief Order now to justify her actions that all started with and stemmed from the void Default Judgment, particularly as the Stay Relief Order does not even mention the Default Judgment or Plaintiff's use of the Default Judgment as a negotiation tool.

41.    Following Plaintiff's improper actions and disregard for this Court's orders to their ultimate and intended conclusion, the State Court Orders approving the Second Settlement Agreement and entering the agreed $1.5 million judgment against Mr. Miguel in favor of Plaintiff also stemmed from and were based on, in whole or in part, the void Default Judgment that never should have been entered by the State Court.[24]

42.    The Court should not ignore Plaintiff's blatant disregard for one of the most fundamental protections of the Bankruptcy Code. *See E. Refractories Co. Inc. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998) ("The automatic stay provision is one of the fundamental debtor protections provided by the bankruptcy laws." (internal quotations omitted)).

---

to applicable state law (typically, a state direct action statute). In any event, neither the Assumption Order nor the Stay Relief Order ratified the void Default Judgment nor authorized Plaintiff to use the void Default Judgment as additional leverage in her negotiations with Mr. Miguel.

[24]    *In re Bolus*, No. 5:20-02899-MJC, 2022 WL 3948685 (Bankr. M.D. Pa. Aug. 29, 2022), another case from outside of this Circuit that Plaintiff cites as purported support for her Objection, is also inapplicable. While the summary judgment order at issue in *Bolus* did state that it affirmed a prior summary judgment order entered in violation of the automatic stay, the second order also separately and independently granted the plaintiff's summary judgment motion. *Id.* at *7. The court therefore found that the second order was a "standalone order" and was not dependent on the first void order. *Id.* at *5. Here, the State Court Orders are not standalone orders that are separate and independent of Plaintiff's violations of the automatic stay and the Stay Extension Order. To the contrary, the State Court Orders are based upon and stemmed from, at least in part, the void Default Judgment and Plaintiff's actions to leverage the void Default Judgment to pressure Mr. Miguel to enter into not one but two settlement agreements.

43.     For the automatic stay to have any meaning and to provide the protections Congress intended, it must be *rigorously* enforced.  *In re Soares*, 107 F.3d 969, 975–76 (1st Cir. 1997) ("In order to secure these important protections, courts must display a certain rigor in reacting to violations of the automatic stay."); *In re Panek*, 402 B.R. 71, 76 (Bankr. D. Mass. 2009) ("[T]he protections afforded by the automatic stay are meaningless if they are not enforced.").  Likewise, the protections conferred by the Stay Extension Order should also be rigorously enforced.

44.     The Default Judgment and Plaintiff's coercive communications and threats to enforce the Default Judgment against Mr. Miguel were the main reasons, if not the only reasons, Plaintiff was able to obtain the Settlement Agreements and the State Court Orders.[25]

45.     Thus, if both of the Settlement Agreements and the State Court Orders are not ruled to be void and without effect, this would effectively ratify the Default Judgment.  Said differently, to rule that only the Default Judgment and the First Settlement Agreement are void and without effect would be an insufficient remedy for Plaintiff's multiple and repeated violations of the automatic stay and this Court's Stay Extension Order.

46.     Such a result would not only undermine this Court's own order but also the purposes and protections of section 362(a) of the Bankruptcy Code.  This should not be allowed by this Court.  Instead, the Court should enforce the Stay Extension Order and properly exercise

---

[25]     Plaintiff argues that Mr. Miguel's entry into the Second Settlement Agreement was not the result of any coercive communications from Plaintiff.  According to Mr. Miguel's declaration attached to the Objection, Mr. Miguel settled with Plaintiff to "help [him] protect [his] personal assets and avoid bankruptcy." (Miguel Decl. ¶ 5.)  However, Mr. Miguel entered into the First Settlement Agreement with Plaintiff while he and his assets were *already* protected by the Stay Extension Order.  Contrary to Mr. Miguel's declaration, when ACE American's defense counsel deposed Mr. Miguel in the State Court Action on September 16, 2022, Mr. Miguel testified that he signed the Second Settlement Agreement due to the stress he was under, which was caused by, among other things, the Default Judgment.  (*See* Bernstein Decl., Ex B at 43-46.)  Mr. Miguel also testified that he was considering filing for bankruptcy due to all the stress he was under and the negative impacts on his credit.  (*See* Bernstein Declaration, Ex. B at 51.)  What made Mr. Miguel feel so stressed that he entered into the First Settlement Agreement while under the protection of the Stay Extension Order and then, for an unexplained reason, entered into the Second Settlement Agreement, which only *increased* his purported judgment owed to Plaintiff?  The answer can only be the improperly obtained Default Judgment and Plaintiff's threats to collect on it.

its authority by entering an order ruling all of the Default Judgment, the Settlement Agreements, and the State Court Orders void *ab initio* pursuant to sections 105(a) and section 362(a) of the Bankruptcy Code and without effect.

WHEREFORE, the Chubb Companies respectfully ask the Court to overrule the Objection and enter an order substantially in the form of the Proposed Order attached hereto as **Exhibit A** (i) ruling that the Default Judgment, Settlement Agreements, and State Court Orders are all void and without effect, and (ii) granting such other and further relief as this Court may deem appropriate and/or necessary.

Dated: November 1, 2022

Respectfully submitted,

DUANE MORRIS LLP

*/s/ Wendy M. Simkulak*

Wendy M. Simkulak, Esq. (WS-8945)
1540 Broadway, 14th Floor
New York, NY 10036-4086
(212) 692-1000 (Telephone)
(212) 692-1020 (Facsimile)
and
Catherine B. Heitzenrater, Esq. (PA 205597) (admitted pro hac vice)
Elisa M. Hyder, Esq. (PA 328054)
30 South 17th Street
Philadelphia, PA 19103-4196
(215) 979-1000 (Telephone)
(215) 979-1020 (Facsimile)

*Counsel for the Chubb Companies*