Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 18-23538-shl

4    Adv. Case No. 20-06982-shl

5    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7

8    SEARS HOLDINGS CORPORATION,

9

10           Debtor.

11    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12    KMART HOLDING CORPORATION, et al.,

13                 Plaintiffs,

14           v.

15    WINIADAEWOO ELECTRONICS AMERICA INC.,

16                 Defendant.

17    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

18

19                 United States Bankruptcy Court

20                 300 Quarropas Street, Room 248

21                 White Plains, NY 10601

22

23                 December 21, 2022

24                 2:17 pm

25

```
 1    B E F O R E :

 2    HON SEAN H. LANE

 3    U.S. BANKRUPTCY JUDGE

 4

 5    ECRO:   UNKNOWN

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

 1    HEARING re Omnibus Hearing

 2

 3    HEARING re Doc. #10738 Application For Final Professional

 4    Compensation Of Weil, Gotshal & Manges LLP, As Attorneys For

 5    Debtors Period: 7/1/2022 To 10/31/2022,

 6    Fee:$1,134,520.00, Expenses: $3,802.26

 7

 8    HEARING re Doc. #10532 Application For Interim Professional

 9    Compensation / Twelfth Quarterly Report Of Katten Muchin

10    Rosenman LLP, As Special Avoidance Counsel For The Debtors,

11    For Allowance Of Contingent Fees And Reimbursement Of

12    Expenses For The Period From April 1, 2022 Through june 30,

13    2022

14

15    HEARING re Doc. #10533 Application For Interim Professional

16    Compensation / Twelfth Quarterly Report Of Stretto For

17    Allowance Of Contingent Fees And Reimbursement Of Expenses

18    For The Period From April 1, 2022 Through June 30, 2022

19

20    HEARING re Doc. #10735 Application For Final Decree /

21    Liquidating Trustee's Motion For Entry of (I) Final Decree

22    Closing Certain Of The Chapter 11 Cases And (IT) Granting

23    Related Relief

24

25

Page 4

1    HEARING re Adversary proceeding: 20-06982-shl Kmart Holding

2    Corporation et al v. Winiadaewoo Electronics America Inc.

3     Doc. #36 Motion To Compel / Motion Of Plaintiffs For Order

4    (I) Enforcing Procedures Order Governing Preference

5    Adversary Proceedings With Amounts In Controversy In

6    Excess Of $500,000 And (II) Granting Related Relief

7

8    HEARING re Adversary proceeding: 20-06982-shl Kmart Holding

9    Corporation et al v. Winiadaewoo Electronics America Inc.

10   Doc. #41 Objection To Motion To Enforce Procedures Order

11

12   HEARING re Adversary proceeding: 20-06982-shl Kmart Holding

13   Corporation et al v. Winiadaewoo Electronics America Inc.

14   Doc. #42 Reply In Support Of Motion Of Plaintiffs For Order

15   (1) Enforcing Procedures Order Governing Preference

16   Adversary Proceedings With Amounts In Controversy In

17   Excess Of $500,000 And (II) Granting Related Relief

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 5

```
 1   A P P E A R A N C E S :

 2

 3   WEIL, GOTSHAL & MANGES LLP

 4        Attorneys for the Bidding Trustee

 5        767 Fifth Avenue

 6        New York, NY 10153

 7

 8   BY:  GARRETT FAIL

 9

10   KATTEN, MUCHIN, ROSENMAN LLP

11        Attorneys for the Debtor

12        525 West Monroe Street

13        Chicago, IL 60661

14

15   BY:  TERENCE G. BANICH

16        STEVEN J. REISMAN

17        MICHAEL ROSELLA

18

19   LAW OFFICES OF PERRY R. CLARK

20        Attorneys for Winia Electronics America, Inc.

21        825 San Antonio Road, Suite 201

22        Palo Alto, CA 94303

23

24   BY:  PERRY R. CLARK

25
```

1    ALSO PRESENT TELEPHONICALLY:

2    ROBERT A. BRADBURY

3    GAITANA JARAMILLO

4    WILLIAM MURPHY

5    ERIKA L. MORABITO

6    ANNE J. PENACHIO

7    GARY POLKOWITZ

8    PAUL KENAN SCHWARTZBERG

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 7

1                    P R O C E E D I N G S

2           THE COURT:  Good afternoon.  This is Judge Sean

3    Lane in the United States Bankruptcy Court for the Southern

4    District of New York and we're here for a 2:00 hearing in

5    the Sears Holding Corporation Chapter 11 case.  So, we'll

6    start with appearances.  Let me find out whose here on

7    behalf of the Debtor.

8           MR. FAIL:  Hi.  Good afternoon, Judge.  Garrett

9    Fail, Weil, Gotshal and Manges on behalf of the bidding

10   Trustee.  Good afternoon.

11          THE COURT:  All right.  Good afternoon.  I

12   understand that one of the matters we have on deals with the

13   adversary proceeding and so let me find out who's here on

14   behalf of the Plaintiff in that adversary proceeding.

15          MR. BANICH:  Yes, Your Honor.  This is Terence

16   Banich from Katten, Muchin, Rosenman in Chicago on behalf of

17   the Plaintiffs.

18          THE COURT:  Good afternoon.  And on behalf of the

19   Defendant in that proceeding?

20          MR. CLARK:  Good afternoon, Your Honor.  My name

21   is Perry Clark.  I represent the Defendant, WINIA

22   Electronics America, Inc.

23          THE COURT:  All right.  Good afternoon.  And let

24   me get any other appearances for today's proceeding.

25          MR. ROSENMAN:  Your Honor, Steven Reisman of

Page 8

1    Katten Muchin Rosenman.  I'm here with respect to the Katten

2    and Stretto fee applications that are on -- or fee

3    application court -- fee app that's on for today.  And I'm

4    joined by my partners Mr. Banich and my associates are

5    Michael Rosella.  I've promoted him a little too early.

6             THE COURT:  All right.  That's -- I'm sure that's

7    not a problem from Mr. Rosella's point of view.  Now, any

8    other appearances?

9             MR. ROSELLA:  Good afternoon, Your Honor.  Michael

10   Rosella from Katten Muchin Rosenman, (indiscernible) person

11   just mentioned.

12            THE COURT:  All right.  Good afternoon to you.

13   All right.  So, with that, I will turn it over to Mr. Fail

14   to start us off.

15            MR. FAIL:  Thanks, Judge.  We filed an agenda at

16   Docket Number 10764, and I'll just run through the

17   uncontested matters in that order.  The first out -- the

18   first item is a final application of Weil, Gotshal & Manges

19   for fees and expenses incurred from July 1 through October

20   31, 2022, a couple days after the plan went effective and

21   the last day that these would be subject to court approval

22   in these cases.

23            Your Honor will recall after taking over these

24   cases that the Debtors were successful in negotiating a

25   settlement and resolution of pending litigation.  The funds

Page 9

1    came in and the work done in this period included work to

2    effectuate the effective date of the Chapter 11 plan for the

3    Debtors in these cases.  And you'll see later on, on the

4    agenda, is the Liquidating Trustee's motion to close out

5    certain of the cases to help clear the Court's dockets of

6    matters that no longer need to (indiscernible).

7              THE COURT:  All right.  That all -- I appreciate

8    the recap.  And so, I did see that there was a certificate

9    of no objection filed as to the Katten Muchin application.

10   I didn't see -- I didn't see such thing for the Weil

11   application, but I didn't see any objection.  So, any --

12   anything else that I wanted to address as to the uncontested

13   fee matters?

14             MR. FAIL:  No, Your Honor.  I'd be happy to answer

15   any questions.  But otherwise, we'd request that the Weil,

16   the Katten, and the Stretto matters be approved.

17             THE COURT:  All right.  Anybody wish to be heard

18   in connection with these three fee matters?  All right.  Let

19   the record reflect there is no one chiming in and also

20   reflect that there, in fact, was no objections of any of

21   these fee applications.  I'm happy to grant them all.  I

22   find that the applications here are appropriate given the

23   facts and circumstances of the case and applicable law.  And

24   I'm happy to approve them.  And so, I will so order the

25   record.  You'll get the appropriate orders.  But this order

1    into the record allows things to move forward while those

2    written orders are pending.

3              And so, with that, Mr. Fail, I guess we can move

4    on to II.

5              MR. FAIL:  Thank you, Judge.  II is the

6    Liquidating Trustee's Motion to close the cases of 52 what

7    we're referring to as subsidiary debtor cases.  The Chapter

8    11 plan was effective -- became effective.  The plan was

9    substantially consummated.  All of the factors weigh in

10   favor of closing these Chapter 11 dockets, the cases were to

11   remind you, Your Honor, substantially -- consolidated for

12   procedural purposes at the beginning of the case.  That one

13   main docket will remain docket will remain open so if the

14   other Debtors need to access the Court for any remaining

15   matters subsequent any reconciliation that might come before

16   you.  And this does not affect any adversary proceedings

17   that will remain open (indiscernible) on the main case.

18              So, to cut down on U.S. Trustee fees,

19   administrative burdens, and to clear out your docket, we

20   would request that this motion be granted as well.

21              THE COURT:  All right.  Thank you very much.

22   Anybody wish to be heard in connection with Liquidating

23   Trustee's motion for a final decree closing certain of these

24   Chapter 11 cases?

25              MR. FAIL:  Judge, I just want -- I'd just note we

Page 11

1    did file a certificate of no objection and it was a redline

2    of a proposed order attached.  Your Honor may recall in

3    these cases, as part of the confirmation years ago, an

4    administrative claims representative was appointed to assist

5    and represent those creditors that were not paid in full

6    during the cases, during the course of (indiscernible)

7    served in that capacity.  And we had in clarifying language

8    to this order that we cleared, I think, responsibilities and

9    duties were discharged on a go-forward basis.  And better

10   synced for service and just wanted to just point that out to

11   Your Honor.

12           THE COURT:  All right.  That makes -- that makes

13   sense.  And I assume that you didn't hear from the U.S.

14   Trustee's Office in connection with this particular motion.

15   I ask because they oftentimes weigh in on these kinds of

16   motions.

17           MR. FAIL:  I see Mr. Schwartzberg's box on the

18   screen, but we received no comments and no objections.

19           THE COURT:  All right.  Mr. Schwartzberg, do you

20   have anything to add?

21           MR. SCHWARTZBERG:  I have nothing, Your Honor.

22   Paul Schwartzberg for the U.S. Trustee's Office.  I have no

23   objection.

24           THE COURT:  All right.  All right.  I'm happy to

25   grant this motion at ECF Number 10735.  It is a not uncommon

Page 12

1    kind of motion in a case involving this many different

2    debtor cases to streamline at a certain point the debtors

3    that need to remain in bankruptcy from those that don't, and

4    thus, reduce some of the cost of being in bankruptcy, which

5    is always a good idea.  So, I'm happy to grant this motion

6    and just to make sure we have a proposed order.  Obviously,

7    there's a redline version of that and I'll use that version.

8             So, that motion is granted.  Next up.

9             MR. FAIL:  Thank you, Judge.

10            THE COURT:  So, we now segue to III, the adversary

11   proceeding, which deals with the motion to enforce

12   procedures dealing with arbitration.  I've seen the motion.

13   I've seen the opposition.  I've seen the reply.  And I

14   confess, I spent some time debating what to do in a context

15   of this.  And so, in order to save a little bit of time and

16   not set anybody up for -- to -- for a more heated colloquy,

17   I just thought I would tell you where I am on this.  And

18   then you can argue whatever you'd like argue, and I'll hear

19   from everybody.  But I've been in your shoes in a former

20   life.  I always wanted to know what the judge was thinking

21   if the judge had something in mind ahead of time, so I think

22   it's only fair -- and in the spirit of the holidays, to do

23   that.

24            So, the whole point of the order was to send cases

25   to mediation in a case this large, to try to keep

1    administrative expenses down.  And so, it's a fairly easy

2    act by this Court to find cause to the extent that there was

3    issues in timing in this case that didn't allow that process

4    happen to let it happen now.  There's clearly a lot of bad

5    blood between these parties and I am aware of the discovery

6    disputes that were on in front of Judge Drain as a

7    reflection of that.

8            There were certainly plenty of missed

9    opportunities here.  I understand the response of the

10    Defendant, which is so technically, this is how you could

11    have done it and this, that, and the other thing.  But I

12    also understand that when people are getting along in cases,

13    that's kind of how it's supposed to be.  And there are lots

14    of times when judge -- people say, we don't want to bring

15    this to the judge.  This is not the kind of thing we want to

16    bring to the judge.  It's a common discussion in the U.S.

17    Attorney's Office (indiscernible) cases.  Do we bring this

18    to the judge?  And the answer's, like, well, what's the

19    reason to do that.  Because the judge will assume that we're

20    responsible adults and we can work out most of our problems.

21    And that is true.

22            I will say that you always have to be careful when

23    there are court ordered deadlines.  At a certain point, you

24    lose the ability to not bother me and that's fine.  That's

25    an occupational hazard on my part in taking this job.  So, I

Page 14

1    can never really blame somebody if you say, well, I had an

2    emergency hearing that was requested on Friday that I had

3    earlier today because somebody said, Judge, I have this

4    problem.  And I'm just -- I'm in a box and I need relief

5    before Christmas.  And I understand and that's part of the

6    gig.

7              So, and perhaps it may have been, given the

8    party's relationship, the better course to come and ask me

9    for some sort of relief or modification of the order.  But I

10   understand people were trying to get along.  And I'm not

11   going to hold people trying to get along against them.

12   That's how the system's supposed to work.

13             So, my inclination is -- well, I don't have a

14   magic equity wand that I always tell people doesn't exist in

15   bankruptcy.  I do have an ability and discretion for good

16   cause shown to amend an order like this and to do that

17   because if that's what the order said, the case was supposed

18   to be mediated, that's what the order said.

19             And if, because of the way the case unfolded,

20   timing became problematic and then things descended into

21   disagreement, that's a problem I actually can fix with the

22   waive of then pen and just amend the order to say mediation

23   has not taken place there -- for lots of reasons, discovery,

24   this, that, and the other thing, and then things fell apart

25   and to just reset the deadline for that.  And sadly, I

Page 15

1    understand it means that if people can't agree on things

2    going forward, then they'll be back in front of me.  And I'm

3    certainly happy to make amendments to the regular procedures

4    to account for the fact that people aren't getting along.

5              And if that means that you can't choose a

6    mediator.  Well, everybody can, you know, pick three names

7    that they agree upon, submit them, and I'll pick one.  Or if

8    you can't even do that, you can each submit two and then

9    I'll pick one from the four.  And you don't even tell me who

10   identified who and I'll just pick blind.  But hopefully, it

11   won't come to that because that's probably not the result.

12   But I understand, I'm the option of last resort and the

13   blunt instrument to deal with those kinds of things and

14   that's fine.

15             So, I mention all this in the spirit of the

16   holidays so we can avoid unnecessary acrimony and a

17   detailing of a past history that probably all counsel would

18   agree on one thing that they could probably live without

19   reliving, again, this afternoon.

20             And so, I'm certainly happy to hear from anybody.

21   If somebody wants to take a run at me to change my mind,

22   that's fine.  But that's sort of where I am.  And I don't

23   want to yell at anybody, and I don't want to start second-

24   guessing all of you and getting into this -- these kinds of

25   things.  In a way, it's sort of any extension of discovery

1    disputes, there's almost nothing better than discovery

2    dispute other than to say a fight about attorney's fee in

3    bankruptcy.

4              So, I've already had a couple of those this week,

5    so I'm trying to end on a positive holiday note.  And so --

6    so, that's where I am.  And so, so I'll hear first from the

7    Plaintiff.  If -- I'm not going to award anybody any fees,

8    so -- because the spirit of things sort of sides with the

9    Plaintiffs.  The technical aspects of complying with the

10   order side with the Defendants.  But again, putting the

11   forest and the trees in context, the whole point of the

12   order is to have a mediation.  That's what should happen, so

13   let's do that and I'll set dates for that to happen.

14             And so, with that, let me hear from the Plaintiff

15   if there's anything you wanted -- you either want to

16   convince me otherwise or anything you wanted to add, or a

17   specific request that you had as to some relief to help

18   things go more smoothly going forward.

19             MR. BANICH:  Good afternoon, Judge.  It's Terence

20   Banich for the Plaintiffs.  And I wanted to start by

21   thanking Your Honor for those very helpful remarks, and

22   particularly they'll spark the spirit of the procedures

23   order and of the holidays, for that matter.  Before I get

24   into anything, I wanted to just clarify one thing.  And

25   that's that while there have been some discovery disputes

1    with the Defendant in the past history of this adversary,

2    Mr. Clark, who represents the Defendant, we have gotten

3    along quite well.

4              THE COURT:  All right.

5              MR. BANICH:  And I think Mr. Clark is a very able

6    advocate.  And we have not had the sort of, you know, spats

7    that lawyers don't get along have.  We -- it hasn't been

8    like that at all.  There just has been some, perhaps

9    difficulty in communicating on some matters, maybe some, you

10   know, genuine disagreements about what our burdens were in

11   discovery.  And it kind of snowballed into some other

12   things.

13             THE COURT:  All right.  That can happen.

14             MR. BANICH:  So, you know, we don't --

15             THE COURT:  That can happen.

16             MR. BANICH:  Yeah.

17             THE COURT:  Again, I bore people with this story.

18   Sometimes I have a box in my office of various mementos from

19   my days in practice, partially to remind myself of the

20   difficulty of being in practice.  Right?  It's not easy and

21   when you're advocating on behalf of your client.  And it

22   could be a challenge.  So, I'm happy to be able to try to

23   let all of us move forward in a productive and peaceful way.

24   And I'm happy to hear that you and Mr. Clark are getting

25   along.  That solves a lot of problems, and so thank you for

Page 18

1    sharing that.

2              MR. BANICH:  Of course.  So, in terms of the

3    relief, I hear -- heard your analysis, Judge, and we agree

4    that the spirit of the procedures order, you know, requires

5    among other things there to be a mediation or an attempt at

6    it in good faith.  We have been -- stood ready to do that

7    since our first communication with Mr. Clark on the subject

8    in October of 2021.  We stand ready to do so today.  And

9    however, whatever procedural path Your Honor wishes to take

10   to get to that result, we're obviously only too happy to

11   agree to it.

12             Now, we haven't had the chance to discuss

13   potential dates with Mr. Clark.  So, I heard Your Honor say

14   that you were going to set a date.  But I --

15             THE COURT:  Yeah, my thought would be that it's

16   something that should happen in the next three months.  That

17   sounds about right given where you are, that you've done all

18   the other work.  And if you can't agree on a mediator, then

19   you can just suggest some names and not identify who

20   suggested who.  And I'll pick one.  And you can take some

21   solace in the fact that I was on a panel dealing with

22   mediation in bankruptcy court.  And I was on it with an

23   academic, which is good because they have a different

24   perspective about these things.  And a number of judges in

25   the audience said, well, I don't require it when people

1    don't want to do it because I just find it's not worth it.

2    And she, well, yeah, I can see that point of view, but

3    studies show that the success in mediation does not, in

4    fact, vary with whether people want to go to mediate or not,

5    which was actually a surprise to me.

6              So -- and so, I think that's just something that -

7    - to the extent that people have, anybody has any reluctance

8    about mediation, you can share that tidbit or not with not

9    your client if it helps to smooth the waters.

10             So, does a three-month deadline for having a

11   mediation have sense?

12             MR. BANICH:  To me, Your Honor, I think that's

13   perfectly acceptable.  Thank you.

14             THE COURT:  All right.  Anything else, counsel,

15   before I hear from the other side.

16             MR. BANICH:  No.  No, Your Honor.  Thank you for

17   the time.

18             THE COURT:  All right.  Thank you.  Mr. Clark,

19   anything that you wanted to share?

20             MR. CLARK:  Thank you, Your Honor.  So, this will

21   -- this -- you setting of the deadline to complete the issue

22   will also operate to reset the other deadlines in the

23   procedures order.

24             THE COURT:  No.

25             MR. CLARK:  The deadlines for the other --

1          THE COURT:  No, it won't.  That's a separate

2     thing.  If there's discover and people are fighting about

3     discovery deadlines and cutoffs, you can try to work it out.

4     And if you can't -- and if you can't work it out, I'm very

5     likely to go along.  If you can't -- if you can't work it

6     out, then people -- we'll do the time-honored tradition of

7     submitting letters and then we'll have a conference.

8     Frankly, I will say -- and sometimes I regret making this

9     offer.  But I usually find that if a conference on discovery

10    can avoid lengthy letter-writing campaigns, I always

11    encourage to people to instead of writing the nastygrams

12    that sort of happen in discovery disputes to just say,

13    Judge, we need a conference.  The vast majority of discovery

14    disputes can be talked through during a conference.

15          And I always have those conferences with the

16    understanding that everybody reserves their rights if

17    there's a substantive legal issue that needs briefing, then

18    you can say, Judge, we actually should brief this.  And so,

19    there are times when there's complicated privilege issues or

20    things of that sort, so nobody will ever give up their right

21    to legally brief something like that.  But frankly, we all

22    know most discovery disputes are not about that, they're

23    about other things.  And as somebody who was a litigator

24    before taking this job and with 12-odd years on the bench, I

25    -- you know, we can handle most discovery disputes by phone.

1          So, my thought would be just make sure to talk to

2     each other ahead of time.  If you have a discovery dispute

3     you can call chambers.  I try to schedule those, you know,

4     within a day or two of getting the request.  And so, I'm not

5     trying to reset other deadlines.  Frankly, the mediation, it

6     doesn't really necessarily track other deadlines.  And so, I

7     understand there was a need -- there was a request for

8     documents, which is you know, I guess part and parcel for

9     understanding the other side's position.  And that's fine.

10    It sounds like you sorted through that.

11          But I'll request that you have a conference.  And

12    if you have a discovery issue, then just reach out to

13    chambers.  A one line, one sentence letter saying, Judge, we

14    need a discovery conference, would suffice.

15          MR. CLARK: Yeah, no, I -- thank you, Your Honor.

16    And I do appreciate your collaborative approach.  Certainly,

17    not all judges are like that.  Only concern is that --

18          THE COURT:  You can tell me whether it's wise or

19    not, but we try.

20          MR. CLARK:  No, I understand.  I wouldn't -- yeah,

21    I understand.   My only concerning is telegraphing that, you

22    know, for example, there's a fact discovery put on.  It was

23    set to -- it's key to the conclusion of mediation.  And

24    there's an expert report, you know, deadline and an

25    expert -- in fact, a position deadline that's key to the

Page 22

1    completion of the engagement --

2            THE COURT:  Okay.  I think I get your drift.  So,

3    if they're separate and independent and they are what they

4    are, that's fine.  If you're -- if you have deadlines coming

5    up that would be delayed because you say, we'll do the

6    mediation first.  That makes perfect sense to me.  So, you

7    know, what I'd say, work it out with the other side and say

8    we want to rejigger the upcoming deadlines in light of the -

9    -  that we're going to take a hiatus -- essentially, a

10    hiatus for a mediation, that's fine, completely makes sense

11    to me.

12            MR. CLARK:  Okay.  So, those deadlines would just

13    be extended commiserate with whether -- whether it would or

14    --

15            THE COURT:  Yeah, I mean, the idea behind

16    mediation also is to save some money.  We all know most

17    civil disputes settle and the question is sort of when they

18    resolve themselves.  Each case is different, but the idea,

19    hopefully, is to -- is to be able to save a little bit of

20    money in the process.  But that's fine.  So, what I would

21    say is the -- you could -- what I always like to do though

22    in each case is have a scheduling order, so we all know

23    where we are.  And so, it -- with this sort of reopening of

24    mediation, if you want to work together on some deadlines

25    consistent with that, and you agree, submit it to me, and

Page 23

```
1    I'm happy to so order it.  We'll put it on the docket and
2    that way everybody has something.  Because I find life
3    without a scheduling order is not a good place to be.  So,
4    it protects everybody.
5            So -- but again, it can be as formal or informal
6    as you want.  It can be, you know, a revised proposed
7    scheduling order.  It can be a letter saying you all agree
8    these are the deadlines.  And certainly, each case is
9    different in terms of how much detail you have about
10   specific discovery events such as provision of expert
11   reports and things of that sort.  But I'm happy to follow
12   your lead on that.
13           I don't remember what the discovery -- what the
14   order -- any scheduling order here, which obviously predates
15   me, and I didn't preside over what those look like and how
16   much detail's in there.  But some cases, more detail's
17   better than others.  So -- but I'll be guided by your
18   thinking on that -- your collective thinking.
19           MR. CLARK:  Yeah.  Just with the understanding
20   that we are going to redo the scheduling order that we
21   already have, we'll try to reach an agreement on redoing
22   that.
23           THE COURT:  All right.  All right.  Anything else,
24   Mr. Clark?
25           MR. CLARK:  No, Your Honor.
```

```
 1              THE COURT:  All right.

 2              MR. BANICH:  Your Honor, I just have one

 3    procedural --

 4              THE COURT:  Sure.

 5              MR. BANICH:  -- point to bring up before we move

 6    on.  In terms of selecting the mediator, I'd just wish to

 7    point out that the procedures order that we've been talking

 8    about does require that the parties select a mediator from

 9    one of six people listed on Exhibit 3 to the procedures

10    order.  So, there's like a closed universe, technically, of

11    these --

12              THE COURT:  That's fine. I --

13              MR. BANICH:  -- potential mediators?

14              THE COURT:  -- I'm, yeah, I'm not trying to over -

15    - I'm not trying to, other than reopen the ability to do

16    this, I'm not trying to substantively amend the procedures

17    order.  That's fine.  Thank you for that reminder.  I was

18    just speaking about mediation generally, the mediation drill

19    that we have --

20              MR. BANICH:  Yes, sir.

21              THE COURT:  -- but that's fine.  So, whatever the

22    procedures orders say on that is fine.  And obviously, to

23    the extent that you all reach agreement about things -- I'm

24    always happy to entertain that, but -- but yeah.  So, choose

25    a mediator and just get me -- get me something.  Whether
```

Page 25

```
 1    it's a letter that has scheduling or a proposed revised

 2    scheduling order, whatever you think is easiest and most

 3    cost-effective, and I'll enter that.  And I will consider

 4    today to be essentially an oral application as the deadlines

 5    are going to change given that you're going to go ahead with

 6    mediation.  And I understand that so people cannot worry

 7    about that.  If -- so, if there's a deadline, it's going to

 8    get blown in a month, you don't have to worry about that

 9    because I understand.  You clued me in, so thank you.

10              Anything else from anyone?

11              MR. BANICH:  No, sir.  Thank you very much.

12              THE COURT:  All right.

13              MR. CLARK:  Nope, thanks Your Honor.

14              THE COURT:  Thank you very much.  I appreciate and

15    I hope I've made things easier rather than more difficult.

16    But I guess time will tell.  But if you need anything,

17    you'll let me know.  Otherwise, I'll wait for a revised

18    scheduling order, and we'll take it from there.

19              And with that, Mr. Fail, is there anything else on

20    the agenda for today?

21              MR. FAIL:  Just again, thank you.  Happy Holiday

22    and Happy New Year to you and chambers.

23              THE COURT:  All right.  Thank you very much.

24    Happy Holidays to you all, you, and your families, and stay

25    healthy.  We hope -- and I'll mention this to counsel here
```

Page 26

```
 1    because I don't know if I've said this to any of you.  We

 2    hope to be coming back in person.  Certainly, my hope if the

 3    COVID numbers cooperate that we would have -- we'll be able

 4    to do that sometime, you know, say February or March,

 5    something like that.  We'll all have to see because COVID

 6    has had a lot of surprises for all of us.  And the idea

 7    would be better than all these circumstances, we default to

 8    in-person, but we'd always have a virtual option available

 9    for anybody who has any particular health concerns.  We

10    obviously don't want anyone to be in a bad by virtue of just

11    having to show up in court.

12            So, that's the hope.  But I'll keep everybody

13    informed.  And if anybody has any suggestions about that

14    kind of stuff going forward, I always welcome informal

15    comments.  And I think I'm not alone, I think that's true

16    for all my colleagues.  So, feel free to reach out to me or

17    our clerk of court or deputy clerk report if you have any

18    ideas.  We're trying to make this work the best for our

19    customers, for folks who appear in front of us consistent

20    with health and safety needs.

21            So, that's why I just figured I'd just clue you in

22    where I -- I'm hoping to head.  Knock wood, and we'll see --

23    we'll see how it goes.  But in the meantime, happy holidays,

24    and be well.

25            MR. BANICH:  Thank you, Judge.
```

1           MR. FAIL:  Thank you, Your Honor.

2     (Whereupon these proceedings were concluded at 2:45 PM)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        **I N D E X**

2

3                        RULINGS

4                                              Page        Line

5    Docket #10764 Granted                     9           21

6    Docket #10735 Granted                     11          25

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 29

1                C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    *(signature)*

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  December 27, 2022