Michael S. Davis
Bryan D. Leinbach
ZEICHNER ELLMAN & KRAUSE LLP
1211 Avenue of the Americas
New York, NY 10036
(212) 223-0400
mdavis@zeklaw.com
bleinbach@zeklaw.com

*Attorneys for AIG EUROPE, S.A*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>SEARS HOLDINGS CORPORATION et al.,<br><br>                Debtors. | Chapter 11<br><br>Case Nos. 18-23538 (SHL)<br>Jointly Administered |
| AIG EUROPE, S.A.,<br><br>                Plaintiff,<br><br>      v.<br><br>SEARS HOLDING CORPORATION,<br>TRANSFORM HOLDCO LLC and SANTA<br>ROSA MALL, LLC<br><br>                Defendant. | Adv. Pro. No. |

## ADVERSARY COMPLAINT

Plaintiff AIG Europe, S.A., f/k/a Lex-London, a division of AIG Europe Ltd.

("AESA"), by and through its undersigned counsel, for its Complaint against defendants Sears

Holding Corporation ("Sears"), Transform Holdco LLC ("Transform"), and Santa Rosa Mall, LLC

("SRM") allege, upon information and belief, as follows:

## NATURE OF ACTION

1.      This is an action seeking: (i) to enforce the indemnity provisions of an insurance settlement entered into by the Debtors in January 2019 (ii) a permanent injunction preventing defendant SRM from commencing an action against AESA that is tantamount to a collateral attack on the Bankruptcy Court's Order dated April 30, 2020 [Docket No. 7881]; and (iii) a declaratory judgment that AESA properly paid its named insured Sears pursuant to the AESA Policy (defined below) and that a certificate of insurance issued by Sears' broker, AON Risk Services, Inc. ("Aon"), naming SRM , does not alter AESA's obligations under the terms of the AESA Policy.

2.      Regarding the first claim, Sears executed a settlement agreement dated January 17, 2018 (the "Settlement Agreement") pursuant to which the Debtors agreed to, *inter alia*, indemnify and defend the Underwriters, including AESA, in any action under the AESA Policy relating to damage to Store No. 1915 due to Hurricane Irma and Hurricane Maria, as defined in the Settlement Agreement, brought by "any other person, including but not limited to . . . landlord(s)."  Pursuant to this indemnity provision, Sears and/or defendant Transform is obligated to indemnify and defend AESA against any claim by SRM, which alleges it is a landlord under a lease agreement with a Sears subsidiary, that it is entitled to payments under the AESA Policy due to alleged damage to its property, Store No. 1915, caused by Hurricane Irma and Hurricane Maria. To date, Sears has refused to defend and indemnify AESA under this Settlement Agreement, despite repeated demands.

3.      Regarding the second claim, defendant SRM has stated its intent to commence a lawsuit against AESA seeking payment pursuant to the AESA Policy (defined

below), alleging that it is a loss payee under a certificate of insurance (the "COI") issued by Aon. The issues associated with the AESA Policy and COI were litigated in this Court, and the Court issued rulings that conclusively resolve certain issues relating to SRM's proposed new action. Specifically, by its Order dated April 30, 2020 Order [Docket No. 7881] (the "April 30, 2020 Order"), this Court held, *inter alia*, that (i) the Settlement Agreement is enforceable as a transaction in the "ordinary course of business"; and (ii) that SRM's proposed lawsuit against AESA would trigger the Debtors' defense and indemnity obligation under the Settlement Agreement. The Court's April 30, 2020 Order was affirmed by the District Court by Memorandum Opinion and Order dated September 27, 2021. The April 30, 2020 Order is a final Order because SRM voluntarily discontinued its appeal of the District Court's September 27, 2021 Order. Given the Court's April 30, 2020 Order and the Debtors' confirmed reorganization plan, defendant SRM should be permanently enjoined from commencing a lawsuit that would be tantamount to a collateral attack on the confirmed plan and the April 30, 2020 Order.

4.    Regarding the third claim, AESA seeks a declaration that SRM is neither an insured, additional insured, nor a third party beneficiary under the AESA Policy and therefore, lacks privity and standing to seek recovery under the Policy for any alleged loss or damage thereunder; that all loss and damage allegedly sustained in connection with Hurricane Irma or Hurricane Maria was fully and finally settled by and between the Underwriters, including AESA, and Sears under, and pursuant to, the Agreement; that the Settlement Agreement expressly released any and all claims - both known and unknown - relative to Hurricane Irma and Hurricane Maria; that AESA was among those insurers expressly released under the terms of the Settlement Agreement; that all settlement amounts due and owing under the Settlement Agreement were paid to Sears as required by, and pursuant to, the AESA Policy's Loss Payable provision which is clear

in that all loss shall be adjusted with, and payable to, Sears (¶53); that AESA was contractually obligated to pay Sears all settlement amounts under the Settlement Agreement; that the COI dated October 25, 2017 upon which SRM relies for recovery from AESA did not change the terms of the Policy including, but not limited to the Loss Payable provision therein; and, to the extent that SRM has any claims relative to Hurricane Irma or Hurricane Maria, such claims and demand for recovery are more property directed at, and are the responsibility of, Sears and/or Transform based upon their individual/collective agreement to defend, hold harmless and indemnify AESA from any and all claims, demands and causes of action by any alleged owner, coinsured, additional insured and/or loss payee which may assert any claim arising out of Hurricane Irma and/or Hurricane Maria as expressly set forth in the Settlement Agreement.  A true and correct copy of the Settlement Agreement is attached as **Exhibit A**.

5.     AESA also seeks a declaration and enforcement of Sears' and/or Transform's duty to defend, hold harmless and indemnify AESA from any and all claims, demands and causes of action by any alleged owner, coinsured, additional insured and/or loss payee which may assert any claim arising out of Hurricane Irma and/or Hurricane Maria as expressly set forth in the Settlement Agreement.  Exhibit A at ¶6.

## PARTIES

6.     Plaintiff AESA, in each of its respective capacities, is an insurance company organized under the laws of Luxembourg.

7.     Upon information and belief, SRM is a limited liability company organized under the laws of the U.S. territory of Puerto Rico.

4

8.      Upon information and belief, Transform is a limited liability company organized under the laws of Delaware.

9.      Sears and certain other affiliated companies[1] (collectively, the "Debtors") each filed a voluntary bankruptcy petition in this Court.  The Debtors' cases are being jointly administered.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over the adversary proceeding, which arises under title 11 of the United States Code and arises in and relates to the Chapter 11 cases of the Debtors commenced in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court" or the "Court").

11.      This adversary proceeding is a core proceeding to be heard and determined by this Court pursuant to 28 U.S.C. § 157(b).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR - Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc. (3626)); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).

12.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1408 and 1409.

## PROCEDURAL BACKGROUND

13.     Beginning on October 15, 2018 (the "Petition Date") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 the United States Code (the "Bankruptcy Code") in the Bankruptcy Court.

14.     The Debtors allege that they were operating their business and managing their properties as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

15.     The Debtors and Transform entered into that certain asset purchase agreement, dated as of January 17, 2019 for the sale of substantially all the Debtors' assets.

16.     On October 15, 2019, the Court entered the Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan of Sears and Its Affiliated Debtors (the "Confirmed Plan") and (II) Granting Related Relief [Docket No. 5370] (the "Confirmation Order"), confirming the Plan (as defined in the Confirmation Order).

## FACTS COMMON TO ALL COUNTS

A.     **SRM's Lease with Debtors**

17.     Upon information and belief, SRM is a retail landlord in Bayamón, Puerto Rico.

18.     Prior to the Petition Date, SRM leased premises in Bayamón, Puerto Rico to SR – Rover de Puerto Rico, LLC f/k/a Sears Roebuck de Puerto Rico, Inc. ("Sears PR") to

operate a store ("Store No. 1915") pursuant to a lease agreement (the "Lease").  Sears PR is a subsidiary of Sears.  Sears PR and Sears were both Debtors in this bankruptcy case.

19.    As stated in the April 30, 2020 Order, the Lease provided, *inter alia*, that Sears PR was obligated to maintain insurance for Store No. 1915 either through an insurance company or through Sears as self-insurer.

20.    As stated in the April 30, 2020 Order, the Lease further provided, *inter alia*, that if Store No. 1915 incurred more than $100,000 in damages caused by "fire or other insured casualty, then" Sears PR was required to deposit the proceeds of any insurance claim into an account maintained in SRM's name.

21.    As stated in the April 30, 2020 Order, the Lease further provided, *inter alia*, that if Sears PR chose to satisfy its insurance obligations under the Lease by self-insurance through Sears, then Sears PR was required to repair, restore, or rebuild upon the damage to, or destruction of, Store No. 1915.

22.    As stated in the April 30, 2020 Order, Sears PR did not maintain its own insurance policy; and Sears did not self-insure.

**B.    <u>The Policy</u>**

23.    AESA is just one of several participants in a market of insurers (the "Underwriters" or, collectively, the "Market") which issued an all-risk, commercial property insurance policies to Sears for the term period of June 1, 2017 to June 1, 2018, and each policy is expressly subject to all terms, conditions, limitations and exclusions as may be contained within each respective policy (collectively, the "Policies").

24.     AESA issued its commercial property insurance Policy No. PTNAM1701557 (the "AESA Policy") to Sears for the term period of June 1, 2017 to June 1, 2018, with such Policy providing all-risk coverage subject to each Policy's terms, conditions, limitations and exclusions.  Sears is the Named Insured under the AESA Policy.  A true and correct copy of the AESA Policy is attached as **Exhibit B**.

25.     AESA participated in the Sears commercial property insurance program on a quota share basis with the primary layer of insurance providing $50,000,000 in limits subject to each Policy's terms and conditions.

26.     AESA's participation in the Sears insurance program was 8.5% and liability under the AESA Policy, if any, is several and not joint.

27.     The AESA Policy insures the interest of the Named Insured – Sears – for real property in which the insured has an insurable interest.

28.     Upon information and belief, Sears procured the AESA Policy by and through its broker, Aon.

29.     While AESA issued the AESA Policy subject to its own terms, conditions, limitations and exclusions, the policies of all insurers subscribing to the Sears program contained a Manuscript Policy Form.  See Exhibit B.

30.     The AESA Policy's Manuscript Form states, in relevant part as follows:

**Named Insured:**

The Sears Holding Corporation and as more fully detailed in Risk Details.

31.     The AESA Policy's Manuscript Form states, in relevant part as follows:

**53. Loss Payable:**

Loss, if any, shall be adjusted with and payable to Sears Holdings
Corporation or as directed by it."

32.     Based upon the express language of the AESA Policy, all loss shall be adjusted with and payable to the Named Insured - Sears.

33.     To the extent there was insured loss or damage under the AESA Policy during the 2017 – 2018 policy term, AESA was contractually obligated to adjust the loss with, and make payment directly to, Sears or as directed by it.

**C.      The Hurricanes and the Insurance Claims**

34.     In 2017, Hurricane Maria and Hurricane Irma (the "Hurricanes") allegedly damaged SRM's property, Store 1915, which was leased to Sears, the Named Insured under the AESA Policy.

35.     SRM seeks recovery under the AESA Policy for the loss and damage to Store No. 1915.

36.     AESA disputes that it has any liability to SRM for this loss and damage.

37.     AESA has fully satisfied any and all obligations as may have existed for all loss and damage due to the Hurricanes claimed under the AESA Policy for the 2017-2018 policy period.

38.     On September 8, 2017 and September 28, 2017, respectively, Sears submitted claims under the AESA Policy relating in part to the damage to Store No. 1915.

39.     As stated in the April 30, 2020 Order, the Underwriters, including AESA disputed the nature, scope, extent, and amount of certain of the losses and damages claimed and disputed their responsibility to cover those losses and damages.

**D.    The Alleged Certificate of Insurance**

40.     Upon information and belief, SRM contends that on or about October 25,2017, Aon provided a COI in connection with Store No. 1915.  A true and correct copy of the COI is attached as **Exhibit C**.

41.     The COI dated October 25, 2017, was issued only *after* the Hurricanes impacted SRM's shopping center located in Bayamon, Puerto Rico.

42.     The COI does not list SRM as a Named Insured or an Additional Insured and, the COI expressly states the following:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

43.     The COI's terms do not amend, modify, extend or alter the coverage afforded by the Policy identified in the COI including, but not limited to the Named Insured, the Program Deductibles for Named Windstorm, and, the Loss Payable provision.

44.     By the express terms of the COI, the Certificate does not and did not create a contract between the issuing insurer(s) and the certificate holder, one of which is SRM.

45.     The COI also expressly states, in part, that "Coverage subject to the lease requirement, if any."

46.     In its communication dated January 24, 2023, SRM alleges, in part, that "Every year Sears purchased insurance and provided an insurance certificate as evidence that SRM was a loss payee."  A true and correct copy of SRM's January 24, 2023 letter is attached as **Exhibit D**.

47.     SRM is not the Named Insured as defined by the AESA Policy.

**C.     The Settlement Agreement**

48.     As stated above, the Underwriters, including AESA, disputed the nature, scope, extent, and amount of certain of the losses and damages claimed and disputed their responsibility to cover those losses and damages.

49.     In 2019, after considerable negotiation, debtor Sears entered into the Settlement Agreement with the Market, including AESA.

50.     Pursuant to the Settlement Agreement, the Market, including AESA, agreed to pay the final settlement amount of $13,260,122, and in exchange the Debtors released the Market from "any and all claims that were made, could have been made, or could be made in the future relating to or arising out of" the Policy relating to the Hurricanes.

51.     In the Settlement Agreement, Sears affirmatively warrants that it

is the only party of interest with regard to the Hurricane Irma Loss,
Hurricane Maria Loss and the Claim under the Policies, including
any and all claims that were made, could have been made, or could

be made in the future under the Policies for the Hurricane Irma Loss,
Hurricane Maria Loss and the Claim…

52.     The Settlement Agreement also provides:

Releasor [Sears] agrees to hold harmless, indemnity, and defend the
Releasees from any and all actions, demands, and claims under the
Policies which Releasor, or any mortgagee, co-owner, coinsured,
additional insured, and/or loss payee, assignee, or subrogee of
Releasor or any properties, may assert at a later date arising out of
the matters herein released.

AESA is defined as one of the Releasees under the Settlement Agreement.  Moreover, the Policy

is specifically identified and encompassed within the definition of "Policies" under in the

Settlement Agreement.

53.     Subsequent to September 2017, the Market paid $46,332,916 in

installments to Sears in satisfaction of its September 8, 2017 and September 28, 2017 claims.

54.     On the Petition Date and continuing thereafter, the Debtors filed voluntary

petitioners under Chapter 11 of the Bankruptcy Code.  Pursuant to the Bankruptcy Code, upon

filing of voluntary bankruptcy petitions, the proceeds paid to Sears in connection with its

September 8, 2017 and September 28, 2017 claims under the AESA Policy became property of

the Debtors' bankruptcy estates.

C.     **The Confirmed Plan**

55.     On October 15, 2019, the Court entered the Confirmation Order which

confirmed the Debtor's Confirmed Plan.

56.    Pursuant to Section 13.4 of the Confirmed Plan, all "Insurance Contracts" are assumed, unless otherwise rejected:

> 13.4. Insurance Policies. Notwithstanding anything to the contrary in the Definitive Documents, the Plan (including Sections 10.8, 13.5, and 15.11 hereof), the Plan Supplement, any bar date notice, or claim objection, and any other document related to any of the foregoing, and any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases): on the Effective Date (i) all Insurance Contracts issued or providing coverage to the Debtors and/or the Debtors' directors and officers shall, unless specifically rejected by the Debtors before the Confirmation Hearing (subject to the applicable insurer's right to object to such rejection), be **assumed in their entirety by the Debtors, and upon such assumption, the Liquidating Trust shall remain liable in full for any and all now existing or hereafter arising obligations, liabilities, terms, provisions and covenants of any of the Debtors under such Insurance Contracts (regardless of when they arise), without the need or requirement for an insurer to file a proof of Claim, Administrative Expense Claim** or objection to any cure amount and shall not be subject to any bar date or similar deadline governing Claims or cure amounts;

(Emphasis added)

57.    Also pursuant to Section 13.4 of the Confirmed Plan, the automatic stay and injunctions set forth in the Confirmed Plan were lifted, *inter alia*, to allow claimants to assert direct claims against insurers:

> (ii) nothing shall alter or modify the terms and conditions of and/or any rights, obligations, benefits, claims, rights to payments, or recoveries under the Insurance Contracts, including, but not limited to, any agreement to arbitrate disputes, without the express written consent of the parties (or their successors) thereto; and (iii) **the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit**: (a) claimants with workers' compensation claims or

direct action claims against an insurer under applicable non-bankruptcy law to proceed with their claims; (b) insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of the Bankruptcy Court, (I) workers' compensation claims, **(II) claims where a claimant asserts a direct claim against any insurer under applicable non-bankruptcy law**, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay to proceed with its claim, and (III) all costs in relation to each of the foregoing; (c) the Insurers to draw against any or all of the collateral or security provided by or on behalf of the Debtors at any time and to hold the proceeds thereof as security for the obligations of the Debtors (and, after the Effective Date, of the Liquidating Trust as the successor of the Debtors) and/or apply such proceeds to the obligations of the Debtors (and, after the Effective Date, of the Liquidating Trust as the successor of the Debtors) under the applicable Insurance Contracts, in such order as the applicable Insurer may determine; (d) claims made by former directors and officers of Sears Canada Inc., under any D&O Policy and any related payments by insurers under such policies in respect of such claims; and (e) the insurers to cancel any Insurance Contracts, and take other actions relating thereto, to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the Insurance Contracts.

(Emphases added)

"Insurance Contracts" are defined in the Confirmed Plan as "all insurance policies that have been issued at any time to or provide coverage to any of the Debtors (including, but not limited to, any D&O Policies) and all agreements, documents or instruments relating thereto (including, but not limited to, any Program Agreements or Collateral Agreements)."

58.    Pursuant to Section 13.5 of the Confirmed Plan, indemnification claims arising out of prepetition conduct are classified as General Unsecured Claims under the Plan:

13.5. Indemnification Obligations. Subject to the occurrence of the Effective Date, the obligations of each Debtor to indemnify, defend, reimburse or limit the liability of any Released Parties, against any Claims or Causes of Action as provided in the Debtors' articles of organization, certificates of incorporation, bylaws, other

organizational documents or applicable law, shall survive confirmation of the Plan, and shall be assumed by such Debtor solely to the extent necessary to recover and have access to insurance proceeds. **Indemnification claims arising out of prepetition conduct shall be treated as General Unsecured Claims against the Debtors to the extent Allowed. Indemnification claims arising out of postpetition conduct shall be treated as Administrative Expense Claims against the Debtors to the extent Allowed.**

(Emphasis added)

59.     Pursuant to the Confirmation Order, the "Insurance Contracts" as defined by the Confirmed Plan that were assumed by the debtors were assigned to defendant Transform:

> For the avoidance of doubt, Insurance Contracts assumed by the Debtors and assigned to Transform as authorized by order of the Bankruptcy Court pursuant to the Asset Purchase Agreement are not subject to section 13.4 of the Plan.

**D.    SRM's Attempts to Seek Relief Against AESA**

60.     After the Petition Date, SRM sought to move to commence an action against AESA seeking insurance proceeds under the AESA Policy.

61.     SRM first filed two separate unsuccessful motions seeking to lift the automatic stay in order to pursue claims against the Debtors.

62.     After its motions to lift the automatic stay were denied, SRM filed a motion for an Order finding the automatic stay inapplicable or, in the alternative, for relief from the automatic stay to pursue claims against the Debtors and pursue a claim against AESA (the "Motion").  The Debtors opposed SRM's Motion.

63.     By the April 30, 2020 Order, this Court denied SRM's Motion.  In reaching this holding, the Court found, among other things, that (i) the Settlement Agreement between the debtors and AIG is enforceable as a transaction in the "ordinary course of business"; and (ii) SRM's proposed lawsuit against AESA would trigger the Debtors' indemnity obligation under the Settlement Agreement.

64.     The Court's April 30, 2020 was affirmed by the District Court by Memorandum Opinion and Order dated September 27, 2021.

65.     On October 22, 2021, appealed the District Court's Memorandum Opinion and Order dated September 27, 2021 to the United States Court of Appeals for the Second Circuit.

66.     By stipulation, SRM voluntarily withdrew its appeal to the Second Circuit. As a result, this Court's April 30, 2020 Order is a final order.

**E.      SRM's Anticipated Lawsuit Against AESA**

67.     By letter dated January 24, 2023, SRM counsel demanded that AESA "commence a settlement dialogue" with SRM regarding the AESA Policy and the COI.  In the letter, SRM states that if the AESA does not respond to its letter by February 13, 2023, then SRM "will be forced to file a lawsuit."  Exhibit D.

68.     On or about December 8, 2022, SRM allegedly filed a Notice Prior to Initiating Civil Action (Article 27.164, Peruto Rico Insurance Code) upon AESA.  A true and correct copy of the Notice is attached as **Exhibit E**.

69.     On or about December 15, 2022, SRM allegedly filed an Amended Notice purportedly confirming that the claimant is Santa Rosa Mall LLC and, informing that CCM is the property management company that manages the business of SRM.  A true and correct copy of the Amended Notice is attached as **Exhibit F**.

70.     After receiving the letter, AESA has contacted counsel for the Debtors requesting that the Debtors indemnify and defend AESA against SRM's actions and proposed litigation pursuant to the defense and indemnity provisions of the Settlement Agreement.

71.      To date, AESA has not received any substantive response to its demand for defense and indemnity.

**FIRST CAUSE OF ACTION**
**(Enforcement of the Indemnity Provisions of the Settlement Agreement)**

72.     AESA repeats and realleges the allegations contained in paragraphs 1 through 72.

73.     The Settlement Agreement is a valid contract between *inter alia* Sears and AESA.

74.     Pursuant to the Settlement Agreement, Sears is obligated to:

to hold harmless, indemnity, and defend the Releasees from any and all actions, demands, and claims under the Policies which Releasor, or any mortgagee, co-owner, coinsured, additional insured, and/or loss payee, assignee, or subrogee of Releasor or any properties, may assert at a later date arising out of the matters herein released

AESA is a "Releasee" as the term is defined in the Settlement Agreement.

75.    SRM counsel's January 24, 2023 letter also triggers Sears' obligation to indemnify and defend AESA.

76.    SRM's filing of a Notice Prior to Initiating Civil Action (December 8, 2022) and the Amended Notice Prior to Initiating Civil Action triggers Sears' obligation to indemnify and defend AESA.

77.    To date, Sears has refused to respond to AESA's  request that Sears indemnify and defend AESA against SRM's threatened actions, despite repeated demands.

78.    By reason of the foregoing, AESA respectfully requests the entry of an Order enforcing the defense and indemnity provisions of the Settlement Agreement and directing Sears to defend and indemnify AESA.

79.    To the extent that that Transform assumed Sears' obligations under the Settlement Agreement , AESA alternatively, respectfully requests entry of an Order enforcing the defense and indemnity provisions of the Settlement Agreement and directing Transform to defend AESA.

## SECOND CAUSE OF ACTION
### (Permanent Injunction Against SRM)

80.    AESA repeats and realleges the allegations contained in paragraphs 1 through 80.

81.    As set forth above, SRM has threatened to bring a lawsuit against AESA.

82.    Also as set forth above, SRM's threatened action is contrary to both the April 30, 2020 Order and the Confirmed Plan.

83.    AESA would suffer irreparable injury if SRM were allowed to pursue is claims. Specifically, if SRM is allowed to prosecute an action in another jurisdiction, it could and, upon information and belief, would, attempt to relitigate issues that have already been determined by this Court in its April 30, 2020 Order and the Confirmation Order.

84.    AESA would also suffer irreparable injury if SRM were allowed to pursue its claims as such proceeding potentially subjects AESA to duplicative liability, exposure and payments under the AESA Policy for those sums previously paid to Sears in full satisfaction of any and all claims as may have existed relative to Hurricane Maria.

85.    AESA's remedies available at law, such as monetary damages, are inadequate to compensate for the injury that they would suffer if SRM were allowed to commence its lawsuit in contravention of the April 30, 2020 Order, Confirmation Order and Confirmed Plan.

86.    A balancing of the hardships weights in favor of issuing the permanent injunction against SRM. As set forth above, the potential for conflicting rulings in two different courts represents irreparable harm to AESA that could not be remedied by monetary relief. Conversely, SRM would face no hardship in being held to the rulings of this Court because it has already subjected itself to the jurisdiction of this Court and was given notice and an opportunity to be heard by this Court.

87.    By reason of the foregoing, AESA respectfully requests entry of an Order permanently enjoining SRM from commencing an action against AESA regarding the AESA Policy.

## THIRD CAUSE OF ACTION
### (Declaratory Judgments Regarding SRM, Sears and Transform)

88.     AESA repeat and reallege the allegations contained in paragraphs 1 through 88.

## Declaratory Judgment Regarding SRM

89.     By way of letter dated January 24, 2023, SRM demanded – under the express threat of litigation – that AESA pay for that loss and damage allegedly sustained on or about September 20, 2017 to its Bayamon, Puerto Rico location, Store No. 1915, as a result of the Hurricanes, a claim estimated by SRM to be in excess of $30,000,000.00.  See Exhibit D.

90.     SRM's January 24, 2023 letter, Notice and Amended Notice Prior to Initiating Civil Action confirm the imminent threat of litigation against AESA.

91.     Sears submitted a claim in connection with the Hurricanes for loss and damage to its properties including, but not limited to Store No. 1915.

92.     Upon receipt of the claims, the Underwriters retained an independent adjuster who investigated the nature, scope and extent of the claimed loss and damage.

93.     In connection with the adjustment, certain disputes arose between Sears and the Underwriters regarding the nature, scope and extent and amount of loss and damage that was caused by, and/or was attributable to, the Hurricanes that may be covered under the policies including, but not limited to the AESA Policy.

94.    The AESA Policy expressly states that the "Named Insured" is Sears and the Loss Payable provision therein directs that loss, if any, shall be adjusted with and payable to Sears or as directed by Sears.

95.    Under the express terms of the AESA Policy, AESA was contractually obligated to pay directly to Sears any and all sums relative to insured loss and damage arising out of the Hurricanes.

96.    The COI naming SRM did not amend, extend or alter the AESA Policy or, AESA's obligation to pay Sears all sums due and owing under the AESA Policy.

97.    AESA issued the AESA Policy to Sears and Sears is the Named Insured under the AESA Policy.

98.    The AESA Policy is a contract between AESA and Sears.

99.    SRM is not named as an insured, additional insured or third-party beneficiary in or under the AESA Policy.

100.    Any purported COI issued by Aon to SRM does not serve to change, modify or alter any term or condition under the AESA Policy.

101.    Any purported COI issued by Aon to SRM does not confer upon SRM the status of insured, additional insured or third party beneficiary status.

102.    The AESA Policy is clear that in the event of covered loss or damage that exceeds the applicable deductibles, all loss is to be adjusted with and payable to Sears or as directed by it.

21

103.    AESA received no direction by Sears to adjust any loss with, or make payment to, SRM for its loss or damage.

104.    There is no privity of contract by and between AESA and SRM.

105.    There is no privity of contract by and between AESA and SRM such that SRM may seek recovery under the AESA Policy to which SRM is not a party.

106.    As there is no privity of contract by and between AESA and SRM, SRM lacks standing to seek recovery under the AESA Policy.

107.    As SRM lacks privity and standing to seek recovery under the AESA Policy, AESA seeks a declaration that AESA has no liability for SRM's purported loss and damage under the AESA Policy.

108.    Consistent with and pursuant to the AESA Policy, AESA adjusted all Hurricanes loss and damage with Sears due to the Hurricanes and as such, AESA has no liability for SRM's claims.

109.    Consistent with and pursuant to the AESA Policy, AESA tendered all settlement payments to Sears for the claimed loss and damage due to the Hurricanes and as such, AESA has no liability for SRM's claims.

110.    Although certain disputes arose between AESA and Sears regarding the nature, scope, extent and amount of loss and damage that was caused by and/or was attributable to the Hurricanes, Sears and AESA agreed to settle their disputes for a sum certain and entered into the Settlement Agreement.

111.     In consideration for the Settlement Agreement, Sears released AESA from any and all claims, causes of actions, appraisals, demands and damages of any kind – known or unknown - as more specifically set forth in the Settlement Agreement.  See Exhibit A.

112.     AESA has no further or additional liability to Sears, Transform, SRM or any other party who claims to be an owner, additional insured or loss payee under the AESA Policy for the 2017-2018 policy period for any losses allegedly due to the Hurricanes.

**Declaratory Judgment Regarding Sears and Transform**

113.     In consideration for the Settlement Agreement, Sears agreed defend, indemnify and hold harmless AESA from any and all actions, demands and claims under the Policy, including but not limited to the SRM claim, as more specifically set forth in the Settlement Agreement.  See Exhibit A.

114.     Pursuant to the Settlement Agreement, in the event that SRM is permitted to proceed with its claim and/or commences any litigation, Sears and/or Transform must defend and indemnify and hold AESA harmless in any action or proceeding commenced by SRM.

115.     To the extent any sums are due and owing to SRM for any loss and damage due to the Hurricanes – which is denied – then such sums are owed by Sears and/or Transform as set forth in the Settlement Agreement.  See Exhibit A.

116.     AESA has no liability for any of SRM's claims loss and damage allegedly due to the Hurricanes as AESA has been fully released from any and all causes of action known or unknown as may be had by any owner, coinsured, additional insured and/or loss payee, assignee or subrogee of Sears and/or Transform.

117.    A justiciable controversy exists between AESA, Sears, and Transform concerning Sears and Transform's duty to defend, hold harmless and indemnify AESA for any claims as may be asserted SRM may have, if any.

**Actual Controversy**

118.    Upon information and belief, SRM seeks coverage under the AESA Policy for physical loss and damage to Store No. 1915 located in Bayamon, Puerto Rico. AESA maintains that no coverage is owed under the AESA Policy for SRM's loss and damage. An actual and justiciable controversy exists among the parties regarding the nature, scope and extent of AESA's, Sears' and/or Transform's obligation and/or liability, if any, to SRM under the AESA Policy.

119.    As stated above, AESA avers that SRM is neither an insured, additional insured, nor a third party beneficiary under the AESA Policy and therefore, lacks privity and standing to seek recovery under the Policy for any alleged loss or damage thereunder; that all loss and damage allegedly sustained in connection with the Hurricanes was fully and finally settled by and between the Underwriters, including AESA, and Sears under and pursuant to the Settlement Agreement; that the Settlement Agreement expressly released any and all claims relative to the Hurricanes both known and unknown; that AESA was among those expressly released under the terms of the Settlement Agreement; that all settlement amounts due and owing under the Settlement Agreement were paid to Sears pursuant to the AESA Policy's Loss Payable provision (¶53); AESA was contractually obligated to pay Sears the settlement amounts under the Settlement Agreement; that the COI issued by Aon, dated October 25, 2017, did not change the terms of the AESA Policy including, but not limited to, the Loss Payable provision therein; and, to the extent

that SRM has any claims relative to the Hurricanes, such claims and demand for recovery are more property directed at Sears and/or Transform.

WHEREFORE, AESA demand judgment against defendants as follows:

(a)    on Count I, enforcing the defense and indemnity provisions of the Settlement Agreement and directing Sears and/or Transform to defend and indemnify AESA;

(b)    on Count II, granting a permanent injunction in favor of AESA and against SRM, enjoining it from commencing a lawsuit against AESA or otherwise continuing to prosecute an action prior to such judgment;

(c)    on Count III, AESA demands as follows:

(1) That SRM is not entitled to recover for any alleged loss or damage due to the Hurricanes under the AESA Policy because it is neither an insured, additional insured, nor a third-party beneficiary under the AESA Policy;

(2) That SRM has no privity with and lacks standing to recover under the AESA Policy;

(3) That even if this Court were to find that SRM can allege or state a cause of action under which relief may be had under the AESA Policy – which is denied - that the AESA Policy expressly states that all loss shall be adjusted with and payable to the Named Insured, Sears or as directed by Sears. As the AESA Policy requires AESA to adjust all loss and make payment to Sears or as directed by it – a direction which was never received –SRM has no liability for SRM's claims;

(4) That in the event that SRM's claim is allowed to proceed with its claim relative to the Hurricanes, that Sears and/or Transform have a duty to defend,

hold harmless and indemnify AESA for any action or proceeding as may be brought by SRM and, direct Sears and/or Transform to provide such defense/indemnity forthwith;

(d)    applicable costs and fees; and

(e)    for such other and further relief as the court deems just and proper

Dated:    New York, New York
          February 13, 2023

ZEICHNER ELLMAN & KRAUSE LLP

By:  /s/ Bryan D. Leinbach
     Michael S. Davis
     Bryan D. Leinbach
     1211 Avenue of the Americas
     New York, New York 10036
     (212) 223-0400
     mdavis@zeklaw.com
     bleinbach@zeklaw.com

HINSHAW & CULBERTSON LLP
Courtney Murphy
800 Third Avenue,13th Floor
New York, NY 10022
(212) 471-6200
cmurphy@hinshawlaw.com

*Attorneys for AESA*