# EXHIBIT A

**CONFIDENTIAL SETTLEMENT AND RELEASE AGREEMENT**

This Settlement and Release Agreement ("Agreement") is entered into between Sears Holdings Corporation ("Releasor" or "Sears") and Certain Interested Insurers of Releasor, including Certain Underwriters at Lloyd's, London, Subscribing to Policy No. PTNAM1701559, PTNAM1701562 and PTNAM1701122, Allied World Assurance Company, Ltd and Allied World Assurance Company, Ltd Subscribing to Policy P003839/014, Chubb, Zurich North America ("Zurich"), Lexington UK ("Lexington"), Westport Insurance Company ("Westport"), Liberty Mutual Insurance Company ("Liberty Mutual"), Tokio Marine America ("Tokio"), Certain Underwriters At Lloyd's, Novae Syndicates Limited ("Novae"), HDI, Ironshore, Sompo Endurance Insurance ("Sompo"), Starr Surplus Lines Insurance Company ("Starr"), Chubb Custom Insurance Company, Executive Risk Specialty Insurance Company, General Security Indemnity Company of Arizona ("GSINDA") and Aspen Insurance ("Aspen") (collectively, "Releasees" or "Underwriters"). Releasor and Releasees may sometimes be referred to as the "Parties."

WHEREAS, Releasees provided certain insurance coverage for Sears' properties for the policy period June 1, 2017 to June 1, 2018 (the "Policy Period") under various all-risk manuscript policies, including policy nos. PTNAM1701559, PTNAM1701562, PTNAM1701122, Allied World Assurance Company, Ltd policy no. P003839/014, Chubb policy no. GPAD3739824A010, Zurich policy no. XXP9260680-10, Lexington policy no. PTNAM1701557, Westport policy no. NAP0452105-05, Starr policy no. SLSTPTY10966117, Chubb Custom Insurance Company policy no. 44681214-06, Executive Risk Specialty Insurance Company policy no. 44681215-06 and GSINDA policy no. T0234451703681, Liberty Mutual policy no. MJ2-L9L-426774-037, Tokio Marine policy no. LCP6480167-06, Novae policy no. XR04017ADFRT, HDI policy no. XPD14886-00, Ironshore policy no. 000423108, Sompo policy no. PTNAM1701564, and Aspen policy no. PXAA52817 (the "Policies"), subject to the Policies' terms, conditions, limitations, and exclusions;

WHEREAS, certain of Sears' property was damaged by Hurricane Irma which occurred on or about September 7, 2017 (the "Hurricane Irma Loss");

WHEREAS, certain of Sears' property was damaged by Hurricane Maria which occurred on or about September 16, 2017 (the "Hurricane Maria Loss");

WHEREAS, Sears submitted claim(s) to Underwriters seeking recovery for its Hurricane Irma and Hurricane Maria Loss and damage (the "Claim");

WHEREAS, Underwriters previously made, will make and agreed to make payments to Sears totaling $46,332,916 with regard to its Claim. To the extent that any money is still owed by any insurer for their pro rata share of the agreed upon $46,332,916 prior payment, such amount shall be promptly paid by such insurer and not later than 10 business days after the execution of this Agreement.

WHEREAS, certain disputes arose between Sears and Underwriters regarding the nature, scope, extent and amount of Loss and damage that was caused by, and/or was attributable to, Hurricane Irma and Hurricane Maria that may be covered under the Policies, if any;

WHEREAS, Releasor and Releasees have, through negotiation and compromise and without acknowledgment of liability, reached an agreement as the Hurricane Irma Loss, Hurricane Maria Loss and the Claim under the Policies; and

WHEREAS, for the avoidance of doubt, the resolution of the Hurricane Irma Loss, Hurricane Maria Loss and Claim includes *any and all* claims that were made, could have been made, or could be made in the future under the Policies for the Policy Period June 1, 2017 to June 1, 2018 in any way relating to or arising out of the Hurricane Irma Loss, Hurricane Maria Loss and the Claim.

ACCORDINGLY, Releasor and Releasees agree as follows:

1.    Releasees severally and not jointly will pay Releasor Thirteen Million Two Hundred Sixty Thousand One Hundred Twenty Two Dollars and Zero Cents (USD $13,260,122.00) in exchange for a full and final release of the Hurricane Irma Loss, Hurricane Maria Loss and the Claim under the Policies, including any and all claims that Releasor or any other party made, could have made, or could make in the future under the Policies for the Hurricane Irma Loss, Hurricane Maria Loss and the Claim. No further or additional consideration has been promised by Releasees. Releasor explicitly acknowledges that Releasees have no duty to pay Releasor or any other party any further amounts under the Policies for the Hurricane Irma Loss, Hurricane Maria Loss and the Claim,  including any and all claims that were made, could have been made, or could be made in the future under the Policies for the Hurricane Irma Loss, Hurricane Maria Loss and the Claim.

2.    Subject to Releasor's execution of this Agreement and delivery thereof to Releasees, Releasees will pay the above-described amount by wire transfer or check to Releasor within 10 business days from the date of execution of this Agreement by Releasor. Payment by any of Releasees of its share of the settlement shall satisfy the terms of this Agreement and be binding as between Releasor and the entity making payment, notwithstanding the failure to comply of any other of the Releasees.

3.    In consideration of the Settlement, Releasor does, hereby, for itself and its predecessors, heirs, executors, successors, assigns, affiliates, subsidiaries, administrators, shareholders, trustees, creditors, mortgage holders, landlords, and agents, remise, release, and forever discharge *in their entirety,* Releasees, their agents, servants, employees, officers, insurers, reinsurers, adjusters, managing agencies, coverholders, third-party administrators, attorneys, independent contractors, successors, assigns, affiliates, subsidiaries and all other persons, firms, corporations, and entities, and each and every one of them from all obligations under the Policies in relation to the Hurricane Irma Loss, Hurricane Maria Loss and the Claim, including any and all claims that were made, could have been made, or could be made in the future under the Policies in relation to the Hurricane Irma Loss, Hurricane Maria Loss and the Claim. Except as otherwise set forth herein, this shall include *all* legal actions, appraisals, claims,

467818.1

demands, equitable relief, rights, actions, causes of action, bad faith, extra-contractual damages, punitive damages, and/or any other damages known or unknown, anticipated or unanticipated, which Releasor has now or claims to have now or which may hereafter accrue against Releasees under the Policies, which are in anyway related to and/or arising out of the Hurricane Irma Loss, Hurricane Maria Loss and the Claim.

4.      Releasor expressly acknowledges that this Agreement resolves all claims for the Policy Period June 1, 2017 to June 1, 2018 for the Hurricane Irma Loss, Hurricane Maria Loss and the Claim, including any and all claims that Releasor or any other party made, could have made, or could make in the future under the Policies for the Hurricane Irma Loss, Hurricane Maria Loss and the Claim.. Releasor expressly waives its right to assert any further claims under the Policies for the Policy Period at issue in relation to the Hurricane Irma Loss, Hurricane Maria Loss and the Claim and acknowledges that the consideration supporting this Agreement fully and completely satisfies the obligations of all Releasees under the Policies for all claims, whether or not submitted, in relation to the Hurricane Irma Loss, Hurricane Maria Loss and the Claim. Releasor assumes all risk of mistake of law and/or fact, including but not limited to what rights may exist and/or waiving rights as to unknown and/or unanticipated claims.

5.      Releasor further warrants that Releasor is the only party of interest with regard to the Hurricane Irma Loss, Hurricane Maria Loss and the Claim under the Policies , including any and all claims that were made, could have been made, or could be made in the future under the Policies for the Hurricane Irma Loss, Hurricane Maria Loss and the Claim and that it has not assigned or otherwise transferred or attempted to transfer, either separately or collectively, any of its legal actions, claims, demands, rights, actions, causes of action and/or damages related to the Hurricane Irma Loss, Hurricane Maria Loss and the Claim, including any and all claims that were made, could have been made, or could be made in the future under the Policies in relation to the Hurricane Irma Loss, Hurricane Maria Loss and the Claim, all of which are all released in this Agreement. Releasor further warrants that, to its knowledge, none of its affiliates, subsidiaries, administrators, shareholders, trustees, and creditors are parties of interest with regard to any portion of the Hurricane Irma Loss, Hurricane Maria Loss and the Claim, including any and all claims that were made, could have been made, or could be made in the future under the Policies in relation to the Hurricane Irma Loss, Hurricane Maria Loss and the Claim.

6.      Releasor agrees to hold harmless, indemnify, and defend the Releasees from any and all actions, demands, and claims under the Policies which Releasor, or any mortgagee, co-owner, coinsured, additional insured, and/or loss payee, assignee, or subrogee of Releasor or any other person, including but not limited to owner(s) and/or landlord(s) of any of Releasor's properties, may assert at a later date arising out of the matters herein released.

7.      Releasor acknowledges that this Agreement shall not be construed as an admission of liability or coverage by Releasees as to Hurricane Irma Loss, Hurricane Maria Loss and the Claim, or any portion thereof, including any and all claims that were made, could have been made, or could be made in the future under the Policies for the Hurricane Irma Loss, Hurricane Maria Loss and the Claim. Releasor recognizes that this settlement is being paid without waiver of any of the Releasees' rights under the Policies, and is subject to the Policies' terms, conditions, exclusions and limitations.

467818.1

8.      Releasor further acknowledges that this Agreement constitutes the entire agreement between the Releasor and Releasees as respects the Hurricane Irma Loss, Hurricane Maria Loss and the Claim and any and all claims that were made, could have been made, or could be made in the future under the Policies related to the Hurricane Irma Loss, Hurricane Maria Loss and the Claim, and that in executing this Agreement, Releasor has not relied upon any representation or statement not set forth herein, and that the representations contained in this Agreement are the complete and full representations to which they have agreed.

9.      Except as set forth herein, the terms of this Agreement, including but not limited to the amount of the settlement payment for the Hurricane Irma Loss, Hurricane Maria Loss and the Claim, shall remain confidential and shall not be disclosed without the written consent of Releasees to any person except as by court order, by law, to enforce the terms of the Agreement, or as necessary for the bankruptcy or to apply for or obtain insurance. Should any court order the disclosure of the terms of this Agreement to any other entity or person, the parties shall attempt to maintain its terms under seal. If any third party seeks disclosure of this Agreement from Releasor except as provided above, Releasor will inform Releasees within forty-eight (48) hours of such effort and will forward any writings evidencing any such request to Releasees. Notice shall be marked priority and sent via U.S. mail and electronic mail to: Courtney Murphy, Clausen Miller PC, 28 Liberty Street, New York, New York 10005, and cmurphy@clausen.com. Notwithstanding the foregoing, Releasor may disclose the terms of this Agreement to its legal, accounting, tax and/or financial advisors, in any required securities filings, and to the extent that Releasor's legal counsel and/or its independent accountants advise that such disclosure is required.

10.     A facsimile and/or electronically transmitted (.pdf) signature upon this Agreement shall constitute an original signature for all purposes.

11.     The purpose of this Agreement is to fully, finally, and completely resolve all portion of the Hurricane Irma Loss, Hurricane Maria Loss and the Claim, including any and all claims that were made, could have been made, or could be made in the future under the Policies in relation to the Hurricane Irma Loss, Hurricane Maria Loss and the Claim.

12.     The provisions of this Agreement are severable, and if any part of it is found to be unenforceable, the other paragraphs, or parts thereof, shall remain full, valid, and enforceable. This Agreement shall survive termination of any arrangements contained herein.

13.     Having had the opportunity to confer with counsel, Releasor hereby declares that the terms of this Agreement have been completely read, fully understood, and voluntarily accepted for the purposes of making a final settlement and release of the Hurricane Irma, Hurricane Maria and the Claim that were made, could have been made, or could be made in the future under the Policies. For purposes of construing this Agreement, no party shall be considered the drafter, and this Agreement shall be considered fully integrated.

462818.1

14.    The undersigned warrants and verifies that he/she has full authority to execute this Agreement and bind all parties releasing claims herein.

15.    It is understood and agreed by and between the Parties that any and all claims for subrogation and/or all recovery rights of claims for the Hurricane Irma Loss, Hurricane Maria Loss and/or the Claim shall be, and will remain, governed by the **Subrogation and Subrogation Waiver** provision (¶21 thereof) within the subject Policies of insurance.  Notwithstanding this Policies of insurance requirement, it is further agreed by and between the Parties that this Agreement does not, in any way, waive, limit, estop and/ or release any liability, recovery, claim and damages against any responsible or potentially responsible party – not otherwise released by the terms of this Agreement - to the full extent of the law, and at the discretion of the Releasor.   Releasees shall not be responsible for payment of any cost or expense incurred by Releasor in any future claims for recovery against third parties which are in any way related to the Hurricane Irma, Hurricane Maria and/or the Claim.

**Sears Holding Corporation:**

By: Name: _Dale Menendez_

Print Name: _DALE MENENDEZ_

Position: _DIRECTOR, PROPERTY CLAIMS_

Sworn and subscribed before me this _17_ day of _January_ 2018

_____
Notary Public

EILEEN TEMPLEMAN
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
July 13, 2020

**Certain Underwriters At Lloyd's Subscribing to Policy PTNAM1701559:**

By: Name: _____

Print Name: _____

Position: _____

Sworn and subscribed before me this _____ day of _____, 2018

_____
Notary Public

**Certain Underwriters At Lloyd's Subscribing to Policy PTNAM1701562:**

By: Name: _____

Print Name: _____

Position: _____

Sworn and subscribed before me this _____ day of _____, 2018

_____
Notary Public

467818.1

**Certain Underwriters At Lloyd's Subscribing to Policy PTNAM1701122:**

By: Name: _____

Print Name: _____

Position: _____

Sworn and subscribed before me this ____ day of _____, 2018

_____
Notary Public

467818.1

**Allied World Assurance Company, Ltd and Allied World Assurance Company, Ltd Subscribing to Policy P003839/014:**

By: Name: _____

Print Name: _____

Position: _____

Sworn and subscribed before me this _____ day of _____, 2018

_____
Notary Public

**Chubb Subscribing to Policy GPAD3739824A010:**

By: Name: _____

Print Name: _____

Position: _____

Sworn and subscribed before me this _____ day of _____, 2018

_____
Notary Public

467818.1

**Zurich Subscribing to Policy XXP9260680-10:**

Print Name: _____

Position: _____

Sworn and subscribed before me this _____ day of _____, 2018

_____
Notary Public

**Lexington Subscribing to Policy PTNAM1701557:**

By: Name: _____

Print Name: _____

Position: _____

Sworn and subscribed before me this _____ day of _____, 2018

_____
Notary Public

467818.1

**Westport Subscribing to Policy NAP0452105-05:**

By: Name: _____

Print Name: _____

Position: _____

Sworn and subscribed before me this \_\_\_\_ day of _____, 2018

_____
Notary Public

**Starr Surplus Lines Insurance Company Subscribing to Policy SLSTPTY10966117**
**Chubb Custom Insurance Company Subscribing to Policy 44681214-06**
**Executive Risk Specialty Insurance Company Subscribing to Policy 44681205-06**
**General Security Indemnity Company of Arizona Subscribing to T0234451703681**

By: Name: _____

Print Name: _____

Position: _____

Sworn and subscribed before me this _____ day of _____, 2018

_____
Notary Public

467818.1

**Liberty Mutual Subscribing to Policy MJ2-L9L-426774-037:**

By: Name: _____

Print Name: _____

Position: _____

Sworn and subscribed before me this _____ day of _____, 2018

_____
Notary Public

467818.1

**Tokio Marine Subscribing to Policy LCP6480167-06:**

By: Name: _____

Print Name: _____

Position: _____

Sworn and subscribed before me this _____ day of _____, 2018

_____
Notary Public

467818.1

**Novae Subscribing to Policy XR04017ADFRT:**

By: Name: _____

Print Name: _____

Position: _____

Sworn and subscribed before me this _____ day of _____, 2018


_____
Notary Public

467818.1

**HDI Subscribing to Policy XPD14886-00:**

By: Name: _____

Print Name: _____

Position: _____

Sworn and subscribed before me this _____ day of _____, 2018

_____
Notary Public

**Ironshore Subscribing to Policy 000423108:**

By: Name: _____

Position: _____

Sworn and subscribed before me this _____ day of _____, 2018

_____
Notary Public

467818.1

**Sompo Subscribing to Policy PTNAM1701564:**

By: Name: _____

Print Name: _____

Position: _____

Sworn and subscribed before me this _____ day of _____, 2018


_____
Notary Public

467818.1

**Aspen Subscribing to Policy PXAA52817:**

By: Name: _____

Print Name: _____

Position: _____

Sworn and subscribed before me this _____ day of _____, 2018


_____
Notary Public

467818.1