# EXHIBIT D

# RÍOS GAUTIER & CESTERO, C.S.P.
*Attorneys at Law*

Carlos R. Ríos Gautier                                                                                      Herman Cestero Rodríguez
María Cristina Mullan Dávila                                                                                                 Counsel

January 24, 2023

Mr. John Hancock
jon.hancock@aig.com
Chief Executive Officer
International General Insurance
58 Fenchurch Street
London EC3M 4AAB, United Kingdom

Mr. Anthony Vidovich
anthony.vidovich@aig.com
Chief Claims Officer
General Insurance
1690 New Britain Avenue
Farmington, CT

Mr. Keith Howell
keith.howell@aig.com
Property & Energy Claims
The AIG Building
58 Fenchurch Street
London EC3M 4AAB

Re:   *Policy Number PTNAM1701557*
      *(Period: June 1, 2017, to June 1, 2018)*

Gentlemen:

I write on behalf of my client, Santa Rosa Mall, LLC, ("SRM"), the owner of a shopping center located in Bayamón, Puerto Rico that was heavily damaged by Hurricane María when it devastated Puerto Rico on or about September 20, 2017.

The purpose of this letter is to make a good faith attempt to commence a settlement dialogue between AIG Europe Ltd ("AIG"), on behalf of a group of Underwriters, and my client, whose owners and affiliates are long-standing customers of AIG, and part of a well-respected second-generation family company that has been doing business in Puerto Rico for 47 years, led by Vadim

27 González Giusti, Ste. 300 • Guaynabo, Puerto Rico 00968-3076
Phone (787) 753-7750 • Fax (787) 759-6768

Re: Policy Number PTNAM1701557
    (Period: June 1, 2017, to June 1, 2018)

Page 2

A. Nikitine, and because I believe that filing a complaint on behalf of an insured party or loss payee against its insurance company should be a measure of last resort.

Agnes B. Suárez, President of AIG Insurance Company of Puerto Rico, graciously recommended that I contact you to see if prolonged litigation regarding the referenced policy, with damages that my client believes exceed $30,000,000, might be avoided.[1]

Our previous efforts to initiate settlement discussions with the lawyer who represented, and may still represent, the Underwriters of the referenced policy, who joined AIG in underwriting such policy, were not reciprocated.

For your convenience, I have attached a summary of certain factual background points that we consider to be indisputable. SRM maintains that AIG and the other Underwriters knew that it was an additional insured and/or loss payee under the referenced policy, yet it improperly paid the insurance proceeds to a bankrupt Sears tenant. As a result, SRM remains entitled to receive remuneration for the insurance proceeds it should have received from the Underwriters plus damages resulting from the Underwriters' failure to properly and timely remit such funds directly to SRM, for the repair and rebuilding of the property following Hurricane María.

After various attempts to resolve this controversy, on December 15, 2022, SRM and its affiliates, represented by Commercial Centers Management Realty S. en C., filed an amended "Notice Prior to Initiating Civil Action" (Article 27.164 of Puerto Rico's Insurance Code) with the Insurance Commissioner of Puerto Rico and to Underwriters pursuant to the Service of Suit Clause in the Contract of Insurance, as well as to their last known legal representatives. As of this date, the Underwriters have not responded to such filing, and have until February 13, 2023, to do so and propose an alternative solution that is acceptable to my client.

If my client does not hear back with an acceptable alternative solution by that date, it will be forced to file a lawsuit. In that case, it will pursue all additional remedies that are available to it, including consequential damages, interest, attorneys' fees, court costs and other costs.

In my view, Puerto Rico's laws and jurisprudence read into the insurance policy a fiduciary duty of the insurer to treat the insured with the utmost good faith. Since the facts as described in the Annex point out that the Underwriters did not act in good faith, if this case goes to trial, SRM is entitled not only to be made whole for its losses that were to be covered under the policy, but also for the consequential damages resulting therefrom.

---

[1] A copy of this letter will be sent to Courtney Murphy, Esq. who on behalf of Lexington UK a division of AIG Europe Ltd, responded to a letter from counsel for Santa Rosa Mall in the Bankruptcy Court on July 23, 2019.

Re: Policy Number PTNAM1701557
    (Period: June 1, 2017, to June 1, 2018)

Page 3

There is a window of opportunity now to hold a serious dialogue to settle this case and clarify any doubts or questions you may have to avoid litigation. As a courtesy, my client is willing to travel almost anywhere on short notice to meet and try to resolve this matter.

I appreciate your prompt response as to whether you are willing to meet and discuss this matter as soon as possible.

Sincerely,

Carlos R. Ríos Gautier

c. Ms. Courtney Murphy, Esq,

## Annex

Santa Rosa Mall, LLC ("SRM") was the landlord under a lease agreement with a Sears subsidiary, originally entered in 1965, wherein Sears agreed to maintain property insurance for the leased premises and include my client as a loss payee for the sole purpose of using the insurance proceeds to repair and restore the building in case of loss.

Every year Sears purchased insurance and provided an insurance certificate as evidence that SRM was a loss payee.

On or around September 20, 2017, Hurricane María caused substantial damage to the insured property.

On October 25, 2017, Aon Risk Services Central, Inc., as Sears' insurance broker and authorized representative of the Underwriters, issued Certificate of Property Insurance No. 570069040317 which specifically identifies the above-referenced policy's coverage of the leased premises and SRM and certain of its affiliates as loss payees.

On October 26, 2017, Sears confirmed to SRM that it had made an insurance claim to the Underwriters for the loss and agreed to deposit the insurance proceeds for SRM's benefit as the insurance payments were paid.

On October 30, 2017, SRM notified AIG Insurance Company Puerto Rico that the claim had been filed and that Sears was required under the Lease with SRM to "promptly and expeditiously repair the damage caused [by Hurricane María] and/or rebuild the premises." And "all net sums recovered for loss or damage under any applicable insurance policy must be deposited in a special account in the name of Landlord [SRM] to be applied to the cost of rebuilding the premises."

SRM and Sears exchanged letters regarding the need to repair and restore the property to reopen the store.

On October 15, 2018, Sears filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, at which time an Automatic Stay became effective, and Sears placed on hold all reconstruction efforts on the demised premises.

On November 27, 2018, SRM's local insurance broker, CVR Insurance Group, Inc., initiated a series of communications with AIG Puerto Rico which was escalated to Mr.

Keith Howell, Major Loss Claims Adjuster, Property & Energy Claims, AIG Property Casualty, London.

The above notwithstanding, on or about January 17, 201[9]¹, Sears, as Debtor in possession, apparently entered into a *Confidential Settlement and Release Agreement* with the Underwriters wherein the Underwriters delivered certain funds solely and directly to the Debtor and in return thereof received indemnification and a hold harmless from Debtor in the event anyone, such as SRM, filed a claim for funds due under an insurance policy issued by the Underwriters.

My client was not aware of the aforesaid Settlement Agreement until months after it became effective. Due to the bankruptcy case and Automatic Stay, together with the indemnification and hold harmless in the Settlement Agreement, the Underwriters could not be sued in court until the stay was lifted. Since the plan of bankruptcy for Sears became effective on October 29, 2022, resulting in the lifting of the Automatic Stay, my client is entitled to be made whole by the Underwriters that had a contractual obligation to remit the insurance proceeds to it for the repair and rebuilding of the insured property.

---

¹ While the Confidential Settlement and Release Agreement states it was signed on "January 17, 2018", based on Ms. Murphy's correspondence, the correct effective date was January 17, 2019.