**Exhibit 5**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| ROBERT L. JANEGA, Individually, and as Administrator of the Estate of John R. Janega, Deceased, and Pamela Janega, | ) ) ) No. 2021L006219 |
| Plaintiffs, | ) |
| vs. | ) |
| ELECTROLUX HOME PRODUCTS, INC., a foreign corporation, et al. | ) |
| Defendants. | ) |
| UNITED SERVICES AUTOMOBILE ASSOC. as subrogee of MARK L. STEHLING, | ) |
| Intervening Plaintiff, | ) |
| vs. | ) |
| ELECTROLUX HOME PRODUCTS, INC., | ) |
| Defendant. | ) |

**PLAINTIFFS' FIRST SET OF REQUEST FOR PRODUCTION OF DOCUMENTS
ADDRESSED TO TRANSFORM HOLDCO LLC**

Pursuant to Illinois Supreme Court Rules, you are hereby requested to produce the below-listed documents and/or items for purposes of discovery. Said documents and tangible things (or identical copies thereof) are to be produced at the offices of DE LUCA LEVINE LLC, 501 East Germantown Pike, Third Floor, East Norriton, PA 19401, within twenty-eight (28) days of the date of service hereof and supplemented thereafter in accordance with the Illinois Supreme Court Rules.

**Definitions and Instructions**

**A. Definitions**

1.   **Document** – When used in these requests for production, the term "document" shall be construed in its broadest sense so as to include recorded information in any form, and shall include without limitation, both an original and any non-identical copy, writing, any printed or graphic representation, catalogue, circular, advertisement, brochure, label, manual, report, letter, drawing, sketch, note, and memorandum. The term "document" shall also include any information

stored in, maintained on, or accessible through computers, disk drives, or other limitation program files, data files and data compilations from which information can be obtained (translated, if necessary, by you, into a reasonably useable form), together with the codes or programming instructions and other materials necessary to understand and to use such systems.

2. **Government Agency** – When used in these requests for production, the term "governmental agency" shall mean any local, state, or federal agency or organization whatsoever, or anyone acting on their behalf, including without limitation, fire department, police department, fire marshal, Consumer Product Safety Commission, or other local, state or federal agency.

3. **Identify/Identity** – When used in these requests for production, the term "identify" or "identity" when used in connection with a person, shall mean that you provide the full name, business and home address, business and home telephone number, employer, date of birth, and social security number. When used in connection with a document, the term "identify" or "identity" shall mean that you provide either the document itself, or the following:

    a. date(s) the document was generated,

    b. identity of the author(s) of the document,

    c. description of the document (e.g., letter, deed, memorandum, etc.),

    d. identity of any indicated recipient(s) of the document,

    e. identity of every person to whom the document has ever been disclosed, and the date(s) and circumstances of each such disclosure, and

    f. subject matter of the document.

4. **Fire** – When used in these requests for production, the term "fire" shall mean the fire referred to in the Complaint in this matter, which gives rise to Plaintiffs' claims.

5. **Incident** – When used in these requests for production, the term "incident" or "incidents" shall mean the incident that gave rise to this cause of action as more fully described in the Complaint and alleged in the Complaint to have been caused by the Electrolux's dryer.

6. **Person** – When used in these requests for production, the term "person" includes any individual, partnership, corporation, or other business or legal entity, unincorporated association, or society, municipal or other corporation, local, state, or federal government, their agencies or political subdivisions, and any court or governmental agency. The singular shall include the plural, and the male shall include the female.

7. **Photograph** – When used in these requests for production, the term "photograph" shall mean any visual photographic or electronic reproduction of any type "whatsoever", including without limitation, negatives, slides, photographs, motion pictures, films, videotapes, and computer graphics files. When copies of photographs are provided, you shall produce (at the expense of these plaintiffs) unretouched (or otherwise modified by electronic or photographic means) full-frame 5 inch by 7 inch glossy photographs from original negatives of all frames of all rolls of film, together with a contact sheet showing each such negative. When copies of all videotapes are provided, you shall produce (at the expense of these plaintiffs) an unretouched (or otherwise modified by electronic or photographic means) copy from the original tape recording.

8. **Subject Dryer** – When used in these requests for production, the term "subject dryer" shall mean the dryer alleged by Plaintiffs to be defective which caused or contributed to the fire, and shall include, without limitation, the product itself, any component parts, whether or not contained within the product, and any associated wiring or other related items.

9. **Substantially Similar Dryers** – When used in these requests for production, the term "Substantially Similar Dryers" shall mean all Electrolux gas and electric ball hitch clothes dryers designed, manufactured and/or distributed by Defendant and/or its predecessor companies.

10. **Subject Property** – When used in these requests for production, the term "Subject Property" shall mean the property at which the incident described in Plaintiffs' Complaint occurred, including without limitation any buildings or other improvements.

11. **Transform Holdco LLC, You**, **and Your** – When used in these requests for production, the terms "Transform Holdco," "You," and "Your" shall mean Transform Holdco LLC, **its predecessors and successors in interest**, its present and former officers, directors and employees, its parent, subsidiaries, divisions, entities, and affiliated companies, and its attorneys, representatives, agents and all other persons acting or authorized to act on its behalf, including third-party entities.

12. **Electrolux** – When used in these requests for production, the terms "Electrolux," shall mean Electrolux Home Products, Inc., Electrolux North America and Electrolux AB, their predecessors and successors in interest, their present and former officers, directors and employees, their parents, subsidiaries, divisions, entities, and affiliated companies, and their attorneys, representatives, agents and all other persons acting or authorized to act on their behalf, including third-party entities.

13. "**Electrolux Ball Hitch Clothes Dryers**" – When used in these requests for production, the term "Electrolux Ball Hitch Clothes Dryers" shall mean and include all **gas** and **electric** clothes dryers designed, manufactured and distributed by Electrolux Home Products, Inc. at its Webster City, Iowa facility between 1995 and 2011.

14. "**Electrolux Bulkhead Clothes Dryers**" – When used in these requests for production, the term "Electrolux Bulkhead Clothes Dryers" shall mean and include all **gas** and **electric** clothes dryers designed, manufactured and distributed by Electrolux Home Products, Inc. at its Juarez, Mexico facility from 2008 to the present.

### B. Instructions

1. Your responses to these requests shall be served within the time frame provided by the Illinois Supreme Court Rules.

2. If you refuse to respond to any of these requests, or to produce any document, on the basis of a claim of privilege or exemption from discovery, please furnish the following information for each such document:

    a. date(s) the document was generated,

    b. identity of the author(s) of the document,

    c. description of the document (e.g., letter, deed, memorandum, etc.),

      d.    identity of any indicated recipient(s) of the document,

      e.    identity of every person to whom the document has ever been disclosed, and the date(s) and circumstances of each such disclosure,

      f.    subject matter of the document,

      g.    basis for claiming privilege or exemption from discovery, and

      h.    all facts upon which you rely to support your claim or privilege or exemption from discovery.

      3.    In the event you object to any request in whole or in part, state in complete detail in your response the nature of your objection, and comply with any part of the request to which you do not object.

      4.    These requests require you to provide information within your possession, custody, or control, and within the possession, custody, or control of anyone over whom you have control, including without limitation, any officer, agent, servant, employee, attorney, insurance company, investigator, or independent adjusting company.

      5.    These requests are continuing in character so as to require you to promptly supplement your responses if you obtain further or different information or documents after serving your responses, in accordance with the Illinois Supreme Court Rules.

## **DOCUMENTS TO BE PRODUCED**

The following documents shall be produced:

      1.    Produce photographs, motion pictures, slides, videotapes, and any other depictions of: (a) the scene of the incident; and (b) the items or evidence taken from the incident scene.

      2.    Produce documentation concerning any examination, test, analysis, evaluation or study of any item or evidence believed to have been involved in the incident or to have been removed from the subject property.

      3.    Produce documentation consisting of, or referring to, any statement or report from any person who claims to be a witness to the incident or who claims to have knowledge of any circumstances surrounding the incident.

      4.    Produce documents, reports, communications or statements you have obtained from any person not a party to this action relating to the incident, the cause of the incident, the condition of the subject dryer and/or the subject property before or after the incident.

      5.    Produce documents or tangible things you intend to use or offer as an exhibit or demonstrative aid at trial or otherwise show to the trier of fact.

      6.    Produce all documentation pertaining in any way to communications between You (and/or Your predecessor companies) and the Consumer Product Safety Commission ("CPSC"), or other like governmental or consumer organization, relating to investigations and/or inquiries

involving fires, defects and/or safety hazards in ball hitch clothes dryers designed and manufactured by Electrolux and sold by You (and/or Your predecessor companies).

7. Produce all documentation pertaining in any way to communications of any kind between You (or Your predecessor companies) and the Underwriters Laboratories ("UL"), or other like governmental or consumer organization, regarding gas and electric ball hitch clothes dryers designed and manufactured by Electrolux Home Products, Inc.

8. Produce documentation that accompanied the subject dryer at the time of sale, including but not limited to: (i) owner's guide/manuals, (ii) use and care guides, (iii) bills of material, (iv) performance checklists, (v) installation instructions, (vi) parts catalogs; and (vii) on-product labels and any revisions thereto.

9. Produce all technical bulletins, service bulletins and service flashes received by You (or Your predecessor companies) related to the subject dryer.

10. Produce all testimony given under oath in any deposition, video-taped deposition, arbitration or trial, including all exhibits referred to in such testimony, by any employee or former employee of Transform Holdco LLC (or Your predecessor companies) in cases involving allegations of fires originating in ball-hitch clothes dryers designed and manufactured by Electrolux and sold by You (or Your predecessor companies).

11. Produce documents relating to any inspection, service, repair, maintenance, and/or reconditioning of the subject dryer by Transform Holdco LLC (or Your predecessor companies) and/or anyone on Transform Holdco LLC's behalf.

12. Produce documents relating to the purchase history of the subject dryer.

13. Produce the Vendor Supply Agreements and/or contract between Transform Holdco LLC (or Your predecessor companies) and Electrolux Home Products, Inc., Electrolux North America or Electrolux AB that relates to the subject dryer.

14. Produce the Universal Terms and Conditions (UTC) Agreements and/or contracts between Transform Holdco LLC (or Your predecessor companies) and Electrolux Home Products, Inc., Electrolux North America or Electrolux AB that relates to the subject dryer.

15. Produce any indemnification or reimbursement agreements between Transform Holdco LLC (or Your predecessor companies) and Electrolux Home Products, Inc., Electrolux North America or Electrolux AB that may in any way apply to this claim or be used to satisfy any judgment that may be entered in this action.

16. Produce indemnification or reimbursement agreements between Transform Holdco LLC (or Your predecessor companies) and Electrolux Home Products, Inc., Electrolux North America or Electrolux AB that may in any way apply to claims alleging that clothes dryers manufactured by Electrolux and sold by Transform Holdco LLC (or Your predecessor companies) were defective from 1995 to the present.

17. Produce all contracts and/or agreements between You (or Your predecessor companies) and Electrolux concerning clothes dryers, including but not limited to Purchase Orders, Vendor Agreements, Universal Terms and Conditions and Vendor Information Guides between 1995 and the present.

18. Produce correspondence to, or from Electrolux, concerning fires alleged to have occurred in Electrolux ball-hitch dryers sold by Transform Holdco LLC (or Your predecessor companies) from 1995 to the present.

19. Produce correspondence to, or from, Electrolux about methods to be used by Transform Holdco LLC's (or Your predecessor companies) technicians, employees, agents, subcontractors, independent contractors and/or representatives concerning the installation of Electrolux ball hitch dryers.

20. Produce correspondence to, or from, Electrolux about dryer performance issues caused by lint accumulation, poor airflow or improper venting in Electrolux ball hitch clothes dryers.

21. Produce all correspondence, instructions, technical/service bulletins, service flashes, technical manuals, notices, or other written information sent to You (or Your predecessor companies) by Electrolux from 1995 to the present concerning: (i) manufacturing deficiencies of the front drum seals; (ii) gaps forming at the front seal; and (iii) performance issues caused by restricted air flow in ball hitch dryers manufactured by Electrolux.

22. Produce all communications You (or Your predecessor companies) received from Electrolux about its ball hitch clothes dryers concerning the following:

    a. installation, performance, maintenance, repair or service of Electrolux ball-hitch dryers;
    b. ignition of fire within Electrolux ball-hitch dryers;
    c. observation of smoke within or from Electrolux ball-hitch dryers;
    d. accumulation of lint within Electrolux ball-hitch dryers;
    e. cleaning or removal of lint from the area behind the drum in Electrolux ball-hitch dryers;
    f. cleaning or removal of lint from the lint trap or blower housing in Electrolux ball-hitch dryers;
    g. venting of exhaust from Electrolux ball-hitch dryers;
    h. replacement or service of either plastic or flexible foil exhaust duct in Electrolux ball-hitch dryers;
    i. replacement or service of any seals within Electrolux ball-hitch dryers;
    j. excessive temperatures inside Electrolux ball-hitch dryers;
    k. air flow problems and/or air leakage involving the lint management system in Electrolux ball-hitch dryers;
    l. scorched or burned laundry within Electrolux ball-hitch dryers;
    m. excessive drying times in Electrolux ball-hitch dryers;

      n.    damage or failure of the rear drum bearing or bracket;
      o.    gaps forming at the front drum seals in Electrolux ball-hitch dryers; and
      p.    causes of airflow restrictions inside Electrolux ball-hitch dryers

23. Produce documents relating to communications internal to Transform Holdco LLC's organization that concern complaints, hazards, failures, defects and/or fires associated or allegedly associated with Electrolux ball hitch clothes dryers.

24. Produce documents related to Your (or Your predecessor companies) sale of clothes dryers manufactured by Electrolux between 1995 and the present including, but not limited to, all reports and memoranda that identify the number of clothes dryers designed and manufactured by Electrolux and sold by You (or Your predecessor companies) per fiscal year, quarter and/or month.

25. Produce documents related to training materials supplied to You (or Your predecessor companies) by Electrolux between 1995 and the present about the proper and/or recommended maintenance, service, repair and/or installation of clothes dryers designed and manufactured by Electrolux.

26. Produce all material, data and information concerning warranty claims contained in any Transform Holdco LLC (or Your predecessor companies) database, or database freely accessible by any employee of Transform Holdco LLC, including, but not limited to the "Terradata" system, for all gas and electric ball hitch clothes dryers manufactured by Electrolux and sold by You that includes any reference to the words "fire", "smoke", burn" or "burnt", "melt" or "melting", "lint", "lint accumulation", "seal", "heater pan" and "scorched" from 1995 to the present.

27. Produce all warranty service records referring or relating to any service performed at any time after January 1, 2000, by You (or Your predecessor companies) or on Your (or Your predecessor companies) behalf of a ball-hitch clothes dryer manufactured by Electrolux concerning any of the following:

    a. Ignition of fire within the dryer;
    b. Observation of smoke within or from the dryer;
    c. Accumulation of lint within the dryer;
    d. Cleaning or removal of lint from the area behind the drum;
    e. Cleaning or removal of lint from the air duct or blower housing;
    f. Venting of exhaust from the dryer;
    g. Replacement or service of either plastics or foil flexible exhaust duct;
    h. Replacement or service of any seals within the dryer;
    i. Scorched or burned laundry within the dryer;
    j. Excessive/long drying times;
    k. Improper installation;
    l. Improper venting materials;
    m. Damage to or failure of the rear drum bearing; or
    n. Contact of the drum back or baffle with the heating element.

28. Produce all documentation referring to or relating to any communication between You (or Your predecessor companies) and Electrolux concerning the periodic cleaning of the interior of Electrolux manufactured dryers, the manner in which such cleaning is to be performed, the appropriate time intervals for such cleaning, the costs of performing such cleaning, whether such cleanings have been performed and the manner and frequency of any such cleaning.

29. Produce all documentation, lists or charts that identify lawsuits filed against You (or Your predecessor companies) from 1995 to the present alleging that a fire originated in a ball hitch clothes dryer designed and manufactured by Electrolux and sold by You (or Your predecessor companies).

30. Produce all documentation, lists or charts that identify lawsuits filed against You (or Your predecessor companies) from 1995 to the present alleging that a ball hitch clothes dryer designed and manufactured by Electrolux and sold by You (or Your predecessor companies) was defective.

31. Produce all documentation relating to insurance claims, notice letters, subrogation demands and/or incident reports received by You (or Your predecessor companies) and any of Your (or Your predecessor companies') agents, representatives, claims companies, distributors or third party agencies (including, but not limited to, Sedgwick) from 1995 to the present alleging that a fire originated in a ball hitch clothes dryer designed and manufactured by Electrolux and sold by You (or Your predecessor companies).

32. Produce a copy of all documents sent to or received by You (or Your predecessor companies) with respect to any insurance claims, notice letters, subrogation demands and/or incident reports involving a fire alleged to have been caused by a ball hitch clothes dryer designed and manufactured by Electrolux and sold by Transform Holdco LLC (or Your predecessor companies).

33. Produce all documentation relating to any life testing, reliability testing, quality control testing or Design Failure Mode and Effects Analysis (DFMEA) and/or any other similar design review or risk analysis performed by You (or Your predecessor companies), or on Your behalf, on ball hitch clothes dryers designed and manufactured by Electrolux regarding the following:

   a. the accumulation of lint within the dryer cabinet;
   b. the ignition of lint within the dryer cabinet;
   c. generation of lint under normal and/or abnormal dryer usage conditions;
   d. temperatures within dryers under normal and/or abnormal dryer usage conditions;
   e. the determination of the back pressure standard of .75 inches of water column identified as being acceptable for exhaust systems in the installation instructions distributed with Electrolux manufactured dryers;

      f.     the exhaust system configurations described in the charts incorporated into the installation instructions distributed with Electrolux manufactured dryers;

      g.     the flammability, ignition or burning of plastic component materials, including, but not limited to, the plastic air duct, blower housing or impeller;

      h.     the failure of the rear drum bearing and/or drum bracket;

      i.     contact of the rear dryer drum and/or baffle with the heating element;

      j.     the ability of lint to escape from the drum and the effect of lint escaping the drum;

      k.     the effect that lint accumulating in the lint filter has on the dryer, including airflow and temperatures within the dryer and the migration and accumulation of lint within the dryer; and

      l.     comparing lint accumulation in Electrolux ball hitch dryers against lint accumulation in dryers produced by other manufacturers.

34. Produce all cost/benefit analyses and/or engineering analyses, studies, or reports regarding alternate materials used and/or considered for use in the (a) lint trap grill or lint trap; (b) lint screen; (c) lint screen frame; (d) lint duct; (e) blower impeller or blower wheel; (f) air duct; (g) door catch; (h) door switch used; and/or (f) blower housing; for ball hitch clothes dryers manufactured by Electrolux and sold by You (or Your predecessor companies).

35. Produce all documentation relating to any life testing, reliability testing, quality control testing or Design Failure Mode and Effects Analysis (DFMEA) and/or any other similar design review or risk analysis performed by Transform Holdco LLC (or Your predecessor companies') engineers regarding lint accumulation near the electric coils or gas burner in ball hitch clothes dryers designed and manufactured by Electrolux between 1995 to the present.

36. Produce all documentation relating to any life testing, reliability testing, quality control testing or Design Failure Mode and Effects Analysis (DFMEA) and/or any other similar design review or risk analysis performed by Transform Holdco LLC (or Your predecessor companies') engineers regarding the ignition of plastic component parts in ball hitch clothes dryers designed and manufactured by Electrolux between 1995 to the present.

37. Produce documents created, designed, published and/or used by You (or Your predecessor companies) to ensure Electrolux ball hitch clothes dryers installed by You (or Your predecessor companies) or on Your (or Your predecessor companies) behalf are or were installed in a manner consistent with Electrolux's written instructions, suggestions, recommendations and/or warnings concerning the safe and/or proper use, care, maintenance and/or installation of Electrolux dryers.

38. Produce documents related to any claim of injury and/or property damage presented to You (or Your predecessor companies) that allegedly resulted from a fire in a ball hitch dryer designed and manufactured by Electrolux since 1995.

39. Produce documents related to any studies, tests, experiments and/or investigations performed by You (or Your predecessor companies) or on Your (or Your predecessor companies')

behalf about the cause of any dryer fire, including by not limited to any fire in a clothes dryer designed and manufactured by Electrolux between 1995 and the present.

40. Produce internal reports, memoranda, correspondence and/or emails concerning and/or relating to fires in clothes dryers manufactured by Electrolux, the cause of fires in clothes dryers manufactured by Electrolux and/or avoidance of fires in clothes dryers manufactured by Electrolux, created, reviewed, discussed, considered and/or relied upon by You (or Your predecessor companies) for any reason between 1995 and the present.

41. Produce documents related to reports of fires in clothes dryers manufactured by Electrolux and received by You (or Your predecessor companies) from whatever source and used and/or relied upon by You (or Your predecessor companies) in the course of making ordinary business decisions regarding and/or related to consumer safety, including but not limited to whether mandatory reporting was required by You (or Your predecessor companies) under the Consumer Product Safety Act ("CPSA"), between 1995 and the present.

42. Produce documents that identify the brand names, trademarks, logos and/or service marks that You (or Your predecessor companies) own and authorized Electrolux to use in connection with its production of clothes dryers sold by You between 1995 and the present.

43. Produce documents related to any policy of insurance and/or the procurement and/or maintenance of any policy of insurance by You (or Your predecessor companies) or on Your (or Your predecessor companies') behalf that protects You, in whole or in part, from harm caused and/or allegedly caused by fires in clothes dryers manufactured by Electrolux.

44. Produce documents related to any reports, memoranda, and/or communication by and between You (or Your predecessor companies) and any third party claims administrator and/or insurer about any fires in ball-hitch clothes dryers manufactured by Electrolux and sold by You (or Your predecessor companies).

45. Produce documents related to any communication by and between You (or Your predecessor companies) and Electrolux related to any proposed design, design changes, design verifications, design testing and/or design safety of Electrolux ball hitch clothes dryers sold by You (or Your predecessor companies).

        Respectfully submitted,

      **BY:** *Mark V. Ferrante*
        Mark V. Ferrante, Esquire
        Law Offices of Mark V. Ferrante
        221 North La Salle Street, Suite 1500
        Chicago, IL  60601
        (312) 578-0303
        Facsimile:  (312) 578-9707
        Email:  mvf@ferrantelaw.com
        Attorney No. 15175

      **BY:** *W. Gregory Aimonette*
        W. Gregory Aimonette, Esquire
        Clausen Miller, P.C.
        10 South La Salle Street
        Chicago, IL  60603
        (312) 855-10103
        Facsimile:  (312) 606-7777
        Email:  waimonette@clausen.com
        Attorney No. 901181

      **BY:** *Raymond E. Mack*
        Raymond E. Mack, Esquire
        PA ID No.: 91815 (*Pro Hac Vice*)
        Patrick A. Hughes, Esquire
        PA ID No.: 91415 (*Pro Hac Vice*)
        Andrew G. Hunt, Esquire
        PA ID No.: 320749 (*Pro Hac Vice*)
        de LUCA LEVINE LLC
        512 Township Line Road, Suite 220
        Blue Bell, PA  19422
        Telephone:  (215) 383-0081
        Fax:  (215) 383-0082
        E-Mail:  rmack@delucalevine.com
          phughes@delucalevine.com

Dated:  November 3, 2022

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| ROBERT L. JANEGA, Individually, and as Administrator of the Estate of John R. Janega, Deceased, and Pamela Janega, ) ) ) ) | No. 2021L006219 |
| Plaintiffs, ) ) | |
| vs. ) ) | |
| ELECTROLUX HOME PRODUCTS, INC., a foreign corporation, et al. ) ) ) | |
| Defendants. ) ) | |
| _____ ) | |
| UNITED SERVICES AUTOMOBILE ASSOC. as subrogee of MARK L. STEHLING, ) ) ) | |
| Intervening Plaintiff, ) ) | |
| vs. ) ) | |
| ELECTROLUX HOME PRODUCTS, INC., ) ) | |
| Defendant. ) | |

**<u>CERTIFICATE OF SERVICE</u>**

This is to certify that a copy of the foregoing Plaintiffs' First Set of Requests for Production of Documents Addressed to the TRANSFORM HOLDCO LLC was duly served on November 3, 2022, upon the following via e-mail as follows:

James R. Shultz, Esquire  jay.shultz@tuckerellis.com
Nathan T. Newman, Esquire  nathan.newman@tuckerellis.com
Dina Lupancu, Esquire  dina.lupancu@tuckerellis.com
Tucker Ellis LLP
233 South Wacker Drive, Suite 6950
Chicago, IL  60606

Frederick William Bode, III, Esquire   rbode@dmclaw.com
Dickie, McCamey & Chilcote, P.C.
Two PPG Place, Suite 400
Pittsburgh, PA  15222
*Attorneys for Defendant,*
*Electrolux Home Products, Inc., Sears Roebuck & Co., Sears Holding Management Corporation*

Lucas Sun, Esquire   lsun@ohaganmeyer.com
O'Hagan Meyer, LLC
One E. Wacker Drive, Suite 3400
Chicago, IL  60601
*Attorneys for Defendants,*
*Transform SR Brands LLC and Transform Holdco LLC*

Mark V. Ferrante, Esquire   mvf@ferrantelaw.com
Law Offices of Mark V. Ferrante
221 North La Salle Street, Suite 1500
Chicago, IL  60601

W. Gregory Aimonette, Esquire   waimonette@clausen.com
Clausen Miller, P.C.
10 South La Salle Street
Chicago, IL  60603
*Attorneys for Plaintiffs*

Russell M. Barnett, Esquire   rbarnett@rmblawfirm.com
Russell M. Barnett & Associates, LLC
400 South County Farm Road, Suite 200
Wheaton, IL  60887
*Attorneys for Intervening Plaintiff,*
*United Services Automobile Association as subrogee of Mark L. Stehling*

*s/ Patrick A. Hughes*
Patrick A. Hughes, Esquire