de LUCA LEVINE LLC
301 E. Germantown Pike, Third Floor
East Norriton, PA 19401
Telephone: (215) 383-0081
Andrew G. Hunt, Esq.
*Attorney Robert and Pamela Janega*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:**<br><br>**SEARS HOLDING CORPORATION, et al.,**<br><br>Debtors. | **Chapter 11**<br><br>**Case No. 18-23538**<br><br>**Jointly Administered** |

**OBJECTION TO TRANSFORM HOLDCO LLC AND
TRANSFORM SR BRANDS LLC's MOTION TO ENFORCE**

Robert Janega, individually and as the independent administrator of the estate of John R. Janega, and Pamela Janega, submits this Objection to Transform Holdco LLC and Transform SR Brands LLC's (collectively "Transform") Motion to Enforce, ECF No. 10798, the Court's Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtor's Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Leases in Connection Therewith, and (IV) Granting Related Relief, ECF No. 2507 ("Sale Order).

**INTRODUCTION**

Transform purchased the assets of the Debtor and now seeks to enforce the Sale Order's "free and clear" provision against successor liability claims brought against them by the Janegas in a wrongful death action filed in the Illinois state court. The Janegas' Illinois state court action

1

arises from a fire caused by a defectively designed dryer they purchased from the Debtor that resulted in the death of their son. Importantly, the fire occurred after the Sale Order was entered. Transform's Motion to Enforce comes one year and seven months after the Janegas' filed suit and four months after the Illinois state court declined to grant a motion to dismiss Transform filed on the exact same issue. After initially participating in discovery in the state court action, Transform filed the instant Motion.

Enforcing the Sale Order against the Janegas here violates their Due Process rights. In the Second Circuit, Due Process requires that there be some contact or a relationship between the Debtor and the Janegas' sufficient enough so that the claims were "identifiable" before the Sale Order was entered and, if the Debtor knew or should have known of such claims before the sale, actual notice of the impending sale.

Here, the pre-petition sale of the dryer by Sears to the Janegas does not rise to the level of contact sufficient to make the claims identifiable before the Sale Order. The Janegas could not possibly have known their dryer was defectively designed until it caught fire after the entry of the Sale Order. Transform's position to the contrary would mean that every consumer would have to scour public legal notices for potential § 363 asset sales of every manufacturer or seller of every consumer product that they had ever purchased and, upon finding one, hire a lawyer to contest the sale, all in an effort to proactively preserve their right to sue the asset purchaser should such product contain a defect and cause them injuries someday in the future.

Moreover, there is reason to believe that the Debtor knew the subject dryer was defectively designed prior to the entry of the Sale Order, as the Debtor received numerous identical design defect claims arising from the same dryer design years before it ever entered bankruptcy. Under

2

the circumstances, discovery is warranted to determine whether the Janegas were entitled to actual notice of the sale.

However, before the Court weigh in on such issues, the Janegas' request the Court permissibly abstain from ruling on Transform's Motion to Enforce and leave the issue to the Illinois state court, which has already considered the same issue and ordered that discovery take place before its ruling. The issues raised in the Motion to Enforce – successor liability under Illinois law – is an issue of state law involving two non-Debtors and no assets of the Debtor's estate. Under the circumstances, the Court should decline to indulge Transform's forum shopping and permissively abstain from ruling on Transform's Motion to Enforce. Abstention will allow the Parties to continue to litigate the issue in Illinois state court in order to best allocate court and party resources.

Accordingly, the Janegas respectfully request this Honorable Court deny Transform's Motion to Enforce.

**FACTUAL BACKGROUND**

**I.     THE SEARS' BANKRUPTCY AND SALE ORDER**

1. Sears Holdings Corporation and a number of related entities (collectively "Sears") filed for Chapter 11 bankruptcy on October 15, 2018. As part of its plan, Sears proposed to sell substantially all of its assets to Transform and said plan was approved by the Court on February 8, 2019. Sale Order, ECF No. 2507.

2. The Sale Order contemplated that the sale would be free and clear of all claims and that Transform would not be subject to successor liability with respect to Sears' business prior to the closing date of the sale. Sale Order, ECF No. 2507, ¶ M.

3

3. Transform tacitly admits that the Janegas were not provided actual notice of the Sale Order before closing. *See* Transform's Motion, ECF No. 10798, at 17.

## II. THE JANEGAS' CLAIM AND ILLINOIS LAWSUIT

4. Sometime in the fall of 2008, the Janegas purchased a dryer from a store operated by Sears. The dryer operated without issue until it suddenly caught fire on August 5, 2019, killing the Janegas' son, Robert. *See* Compl., Exhibit A to Decl. of Andrew Hunt, at ¶ 11, 19. The Janegas filed a wrongful death action against the dryer manufacturer, Electrolux Home Products Inc. ("Electrolux"), as well as two Sears entities and Transform in the Circuit Court of Cook County, Illinois on June 16, 2021. *See generally* Compl., Exhibit A to Decl. of Andrew Hunt.

5. The Janegas' Complaint specifically averred, *inter alia*, that the subject dryer was defectively designed and that Transform was liable as a successor in interest to Sears. *See* Compl., Exhibit A to Decl. of Andrew Hunt, at ¶ 33.

6. Attorneys on behalf of Transform entered their appearance in the matter on July 13, 2021. *See* Entry of Appearance, Exhibit B to Decl. of Andrew Hunt.

7. Electrolux removed the matter to the United States District Court for the Northern District of Illinois on July 28, 2021. Electrolux contended that diversity jurisdiction existed because Sears and Transform had been fraudulently joined. *See* Decl. of Andrew Hunt, ¶ 7 (Notice of Removal, *Janega et al. v. Electrolux Home Prod. Inc.* 1:21-cv-03998, ECF No. 1 (N.D. Il.)).

8. The Janegas thereafter filed a Motion for Remand on August 25, 2021. *See* Decl. of Andrew Hunt, ¶ 8 (Motion to Remand, *Janega et al. v. Electrolux Home Prod. Inc.* 1:21-cv-03998, ECF No. 12 (N.D. Il.)).

9. Transform responded to the Janegas' Motion to Remand by acknowledging that the Janegas' claims were premised solely on successor liability and arguing that the Sale Order

4

foreclosed such claims. *See* Transform's Response to Motion to Remand, Exhibit C to Decl. of Andrew Hunt, at 1.

10. On February 17, 2022, the District Court granted the Janegas' Motion to Remand, holding, *inter alia*, that Transform did not show "that there was no possibility that the state court could find that the sale order is unenforceable . . . so Transform is not fraudulently joined." *See* Opinion and Order, Exhibit D to Decl. of Andrew Hunt, at 13.

11. After the matter had been remanded back to the Circuit Court for Cook County, on October 25, 2022, Transform filed a Motion to Dismiss arguing that the Janegas' claims were foreclosed by the Sale Order. *See* Motion to Dismiss, Exhibit E to Decl. of Andrew Hunt.

12. On November 14, 2022, the Circuit Court continued the motion after finding that "discovery is necessary on the successor liability issue." *See* Order, Exhibit F to Decl. of Andrew Hunt.

13. On November 3 and December 27, 2022, the Janegas served written discovery requests on Transform. *See* Decl. of Andrew Hunt, ¶13. On November 4, 2022, Transform served written discovery requests on the Janegas. *See* Decl. of Andrew Hunt, ¶13.

14. Though Plaintiffs have duly responded to Transform's written discovery requests, Transform has not responded to Plaintiffs' written discovery requests. *See* Decl. of Andrew Hunt, ¶14. On February 6, 2023, counsel for the Janegas emailed counsel for Transform to inquire about the status of the overdue discovery responses. Counsel for Transform responded that same day, implying that Transform would respond to such discovery but simply needed additional time to gather the requested documents. *See* Email, Exhibit G to Decl. of Andrew Hunt.

15. On March 3, 2023, Transform filed the instant Motion to Enforce. For the reasons stated below, Transform's Motion should be denied.

5

**LEGAL ARGUMENT**

16. Transform argues that the Sale Order forecloses the Janegas' claims and asks the Court to enjoin further action against it in the Circuit Court for Cook County, Illinois. Transform contends that the Sale Order is enforceable against the Janegas because it alleges that the Janegas' claims are contingent claims – despite stemming from a fire that occurred after the Sale Order was entered – and that its publication notice of the Sale Order was sufficient to apprise the Janegas of the proposed sale and comported with Due Process.

17. The Janegas submit that neither assertion is correct and that, even if they were, the Court should exercise permissive abstention under 28 U.S. Code § 1334(c)(1), leaving the issue of Transform's successor liability under Illinois law to the Circuit Court for Cook County, Illinois.

I. **THE SALE ORDER DID NOT EXTINGUISH THE JANEGAS' CLAIMS AGAINST TRANSFORM BECAUSE THE PARTIES' PRE-PETITION CONTACT WAS NOT SUFFICIENT TO MAKE SUCH CLAIMS IDENTIFIABLE UNTIL AFTER THE SALE ORDER WAS ENTERED**

18. The Janegas' claims against Transform are not precluded by the Sale Order because the Parties' pre-petition contact did not make such claims identifiable until after the Sale Order was entered.

19. While a sale of debtor assets is permitted to be made "free and clear of any interest in such property," 11 U.S. Code § 363(f), a Sale Order can only preclude interests arising from successor liability claims to the extent such interests are "claims" within the meaning of the Chapter 11 definition of the word. *See In Matter of Motors Liquidation Co.*, 829 F.3d 135, 154-56 (2d Cir. 2016).

20. Claims, under 11 U.S. Code § 101(5), can be contingent on future events. However, when claims arise from "pre-petition conduct that has not yet resulted in detectable injury, much

6

less the extreme case of pre-petition conduct that has not yet resulted in any tortious consequence to a victim . . . [such claims] engender enormous practical and perhaps constitutional problems." *In Matter of Motors Liquidation Co.*, 829 F.3d at 156 (citations and quotations omitted). As the Second Circuit has recognized, "[a]ccepting as claimants those future tort victims whose injuries are caused by pre-petition conduct but do not become manifest until after confirmation, arguably puts considerable strain not only on the Code's definition of 'claim,' but also on the definition of 'creditor'-an entity that has a claim against the debtor that *arose* at the time of or before the order for relief concerning the debtor." *In re Chateaugay Corp.*, 944 F.2d 997, 1004 (2d Cir. 1991) (quotations omitted).

21.    "To avoid any practical and constitutional problems, courts require some minimum contact, or relationship, that makes identifiable the individual with whom the claim does or would rest." *In Matter of Motors Liquidation Co.*, 829 F.3d at 156 (citations and quotations omitted). Put another way, the Second Circuit has advised that:

> a bankruptcy court may approve a § 363 sale "free and clear" of successor liability claims if those claims flow from the debtor's ownership of the sold assets. Such a claim must arise from a (1) right to payment (2) that arose before the filing of the petition or resulted from pre-petition conduct fairly giving rise to the claim. Further, there must be some contact or relationship between the debtor and the claimant **such that the claimant is identifiable**.

*Id.* (emphasis added); *see also In re Tronox Inc.*, No. 14-CV-5495 (JPO), 2021 WL 653148, at *5 (S.D.N.Y. Feb. 19, 2021).

22.    Part and parcel to this analysis of whether the preclusion of successor liability claims by a § 363 sale comports with Due Process is whether the claimant was given adequate notice before the sale. The general rule is that: "If the debtor knew or reasonably should have known about the claims, then due process entitles potential claimants to actual notice of the

7

bankruptcy proceedings, but if the claims were unknown, publication notice suffices." *In Matter of Motors Liquidation Co.*, 829 F.3d 135 at 159.

23. While the Second Circuit's requirement that a claimant be "identifiable" does not specifically delineate *to whom* such claimant should be identifiable – the claimant or the debtor – the case law makes clear that Due Process could potentially be satisfied with either, provided that adequate notice is given. *See In re Westinghouse Elec. Co.*, No. 18-CV-1786 (AJN), 2019 WL 1375670, at *3 (S.D.N.Y. Mar. 27, 2019) ("This general logic is consistent with the Circuit's explanation that the Code's inclusion of 'unmatured' and 'contingent' claims is usually said to refer to obligations that will become due upon the happening of a future event that was within the actual or presumed contemplation of the parties at the time the original relationship between the parties was created.").

24. For example, in the *Matter of Motors Liquidation Co.*, the Second Circuit ruled that tort claimants injured *prior* to the closing of the sale from pre-petition purchased motor vehicles had "claims" within the meaning of the Bankruptcy Code. 829 F.3d at 157 (emphasis added). However, under the facts of such case, the debtor, as a vehicle manufacturer, was required by law to maintain a list of purchasers and it was found that the vehicle manufacturer either knew or should have known of the specific defect that caused the injuries prior to the sale. *Id.* at 159. Because the claimants were identifiable to the debtor, the debtor was required to provide such claimants actual notice of the sale and publication notice violated the claimants' Due Process rights. *Id.*

25. *In re Old Carco LLC* similarly involved design defect claims against a vehicle manufacturer by claimants that had purchased the vehicle before the sale order. 492 B.R. at 403. Importantly, the claimants did not allege personal injuries related to the alleged "fuel spit back"

8

design defect but rather sought damages because their vehicles now required "more servicing and is worth less money." *Id.* at 405. The vehicle manufacturer had also issued several recall notices related to the issue before the claimants' purchase of the vehicles. *Id.* at 403. Under the circumstances, the court found the claim were identifiable to the claimant because "Anyone who owns a car contemplates that it will need to be repaired, particularly when, as here, Old Carco had already issued at least two and possibly three recall notices for the "fuel spit back" problem for certain Durango and other Old Carco vehicles before the original purchasers bought their vehicles from Old Carco." *Id.*

26. Thus, when read together, Due Process can either be satisfied where the claimant is known to the debtor and the claimants are given actual notice of the sale or via publication where the claimant should have known of their claims because their pre-petition relationship with the debtor made its injuries foreseeable. While, as will be discussed in further detail below, the Janegas believe that their claims could have been identifiable to Sears and therefore actual notice was required, the claims were not identifiable to the Janegas. The Janegas do not dispute that their right to payment resulted from certain pre-petition contact with the debtor – i.e. the sale of the defective product by Sears to the Janegas. However, the mere sale of an ordinary consumer good, without more, in insufficient to establish that the Janegas' claims were identifiable. The Janegas could not possibly have known their dryer was defectively designed until it caught fire after the entry of the Sale Order.

27. Transform relies on both *In Matter of Motors Liquidation Co.* and *In re Old Carco LLC,* for the general proposition that "a section 363 purchaser is not liable for claims arising from post-sale injuries arising from products purchased prepetition." Motion, ECF No. 10789, ¶ 16. However, such cases are inapposite because there was evidence in each case that the claimants

9

were identifiable, alieving the "practical and constitutional problems" engendered by a finding that such claims were barred by a § 363(f) sale. *In Matter of Motors Liquidation Co.*, 829 F.3d at 156. Neither case holds – as they must to be directly on points here – that Due Process has been satisfied by notice publication to a tort claimant who was personally injured after a sale order and whose only pre-petition contact with the debtor had been the purchase of an ordinary consumer product.

28. Unlike *Matter of Motors Liquidation Co.*, this matter does not deal with pre-closing injuries or economic damages. It deals with post-closing personal injuries. Moreover, in such case, the debtor knew of the defect and the identity of all potential claimants before the sale and, therefore, actual notice was required to comport with Due Process, which was not provided to the Janegas here. Unlike *In re Old Carco LLC*, Sears has not issued any recalls for the subject dryer and someone who merely owns a dryer is not going to contemplate that it will catch fire upon ordinary and foreseeable use and cause extensive injuries resulting in the death of a family member to the same extent that a vehicle purchaser might contemplate that their vehicle may need more service due to a defect.

29. Accordingly, because the purchase of the dryer did not provide any indication that the Janegas had a claim against Sears, the claim was not identifiable. Because the claim was not identifiable, the Sale Order cannot preclude the Janegas' successor liability claims against Transform.

## II.  FOR ARGUMENT SAKE, EVEN IF THE JANEGAS' CLAIMS WERE IDENTIFIABLE, DISCOVERY IS NEEDED TO DETERMINE WHETHER PUBLICATION NOTICE VIOLATED THE JANEGAS' DUE PROCESS RIGHTS

30. Transform argues that the Janegas were unknown creditors and, therefore, could properly be served by publication in accordance with Due Process.

31. Transform should not be able to have it both ways. If the sale of a dryer made it sufficiently "identifiable" to the Janegas that they had a claim against Sears before the dryer caught fire, then such sale should have also been sufficiently identifiable to Sears, so that the Janegas were entitled to actual notice of the sale.

32. The seller of a consumer product is in a better position than the consumer to determine whether a product it sold was defective – either through receipt of other similar lawsuits or warranty claims and through their coordination and contact with the manufacturer – and the identity of the people to whom they sold such products – through sales records and warranty information.

33. In any event, there is evidence that Sears was aware that the ball-hitch style dryer it sold to the Janegas were defectively designed well before it filed for bankruptcy due to numerous complaints and lawsuit from consumers arising from fires caused by such dryers. *See, e.g., In re: Electrolux Dryer Prod. Liab. Litig.*, 978 F. Supp. 2d 1376 (U.S. Jud. Pan. Mult. Lit. 2013) (Sears opposing the centralization of numerous lawsuits alleging its ball-hitch style dryers were defective in design into an MDL).[1]

34. Should the Court find the Janegas' purchase of the dryer made such claim sufficiently identifiable, the Janegas should be entitled to further discovery regarding what Debtors

---

[1] The design defect allegations in such actions are the same design defect allegations the Janegas make here. *Compare In re: Electrolux Dryer Prod. Liab. Litig.*, 978 F. Supp. 2d 1376 ("common factual questions predominate on a single alleged common defect—the "ball-hitch" design— which poses a fire hazard through the same mechanism, accumulation of lint behind the drum near the heat source); *with* Compl., Exhibit A to Decl. of Andrew Hunt, ¶ 13(a) (the dryer is defective because "lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer.").

11

knew or did not know about the design defect that caused the Janegas' fire in order to determine whether Due Process required actual notice.

### III. THE COURT SHOULD APPLY PERMISSIVE ABSTENTION UNDER 28 U.S. CODE § 1334(c)(1).

35. The Janegas do not dispute that a bankruptcy court has jurisdiction over the interpretation of its own sale order. *See, e.g., In re Old Carco LLC*, 636 B.R. 347, 358 (Bankr. S.D.N.Y. 2022). Such jurisdiction, however, is concurrent to federal or state non-bankruptcy courts considering issues arising from sale orders, even when the sale order specifically states it will retain exclusive jurisdiction to interpret and enforce the order. *See Id.* at 356 n.3.[2]

36. The Bankruptcy Court has discretion under 28 U.S. Code § 1334 to defer to the concurrent jurisdiction of a non-bankruptcy court. *See, e.g., id.* Section 1334 states that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S. Code § 1334(c)(1).

37. In determining whether permissive abstention is appropriate:

courts weigh considerations of comity and federalism, judicial economy, and efficiency, including: (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court

---

[2] Because jurisdiction is conferred by statute, a court order can neither confer nor extinguish jurisdiction. *See In re Haven Eldercare, LLC*, 503 F. App'x 13, 15 (2d Cir. 2012) ("the bankruptcy court, in its July 2008 Sale Order, retained exclusive jurisdiction over any disputes relating to that order. . . despite the wording of the Sale Order, the bankruptcy court's jurisdiction was concurrent rather than exclusive").

> with enforcement left to the bankruptcy court, (9) the burden on the court's docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*In re Old Carco LLC*, 636 B.R. at 357–58 (collecting cases). "Courts assessing possible permissive abstention have considered one or more of these factors, and not necessarily all twelve." *Id.* (citations omitted). "A court thus need not plod through a discussion of each factor in the laundry lists developed in prior decisions." *Id.* (citations and quotations omitted).

38.    A number of such factors weigh in favor of abstention here. For example, the first factor – the effect or lack thereof on the efficient administration of the estate – weighs in favor of abstention because the abstention will have no impact on the efficient administration of the estate. The Janegas are seeking recovery against Transform only – not any asset of the Sears' estate. This fact also invokes factor six – the degree of relatedness or remoteness of the proceeding to the main bankruptcy case – and factor twelve – the presence in the proceeding of nondebtor parties. *See, e.g., In re Portrait Corp. of Am., Inc.*, 406 B.R. 637, 643 (Bankr. S.D.N.Y. 2009) (abstention is warranted in party because "resolution of CPI's motion to enforce the Sale Order is at most only tangentially related to the Debtors' bankruptcy estates. Although this Court has jurisdiction, this is a dispute between two non-debtors in which the Debtors' estates apparently have no financial interest.").

39.    Factor two – the extent to which state law issues predominate over bankruptcy issues – also weighs in favor of abstention because the Janegas' successor liability claims against Transform arise under Illinois state law.

40.    The Janegas' successor liability claims against Transform also invoke the right to a jury trial, meaning that factor 11 weighs in favor of abstention. *See, e.g., In re Old Carco LLC*,

13

636 B.R. at 360–61 ("Factor eleven, the existence of a right to a jury trial, weighs in favor of abstaining.").

41. Factor 10 – the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties – further weighs in favor of abstention. Transform, as the purchaser, was clearly aware of the terms of the Sale Order prior to the filing of the Janegas' suit and fully aware that the Janegas alleged that Transform was a successor in interest to Sears by at least July 13, 2021 (the date of their attorney's entry of appearance into the matter). Thus, Transform waited over one year and seven months before filing the instant Motion to Enforce. Prior to filing the Motion to Enforce here, Transform specifically sought to have the Janegas' claims dismissed because of the Sale Order, first in the Federal District Court of the Northern District of Illinois when arguing against the Janegas' Motion to Remand, and then in the Circuit Court for Cook County in its own Motion to Dismiss. After both courts refused to hold that the Sale Order barred the Janegas' claims, Transform participated in discovery in the Circuit Court for Cook County action for four months before filing its Motion to Enforce here. These actions leave little doubt that Transform is forum shopping to get the result it desires. *See, e.g, In re Portrait Corp. of Am., Inc.*, 406 B.R. at 643 ("while CPI makes a colorable argument that it learned sufficient facts to file its motion to enforce the Sale Order only after completing discovery in the Ohio Action, CPI's pursuit of the motion in this Court, rather than in the Ohio District Court, many months after the commencement of the Ohio Action and after CPI's assertion of a counterclaim in the Ohio Action, raises more than a suggestion of forum shopping."); *see also In re Old Carco LLC*, 636 B.R. at 362 ("the Court is not persuaded by FCA's statement that this Court 'is best positioned to decide what claims and allegations get through the gate' and 'must set the guideposts for the' MDL Court. (Motion ¶ 1.) First, the MDL Court has concurrent jurisdiction.

Second, FCA has frequently left it to nonbankruptcy courts to exercise the 'gatekeeping' function.").

42. Based on the forgoing, the Court should permissively abstain from ruling on Transform's Motion to Enforce and allow the Parties to continue to litigate the issue in the Circuit Court for Cook County. Even if the Court permits discovery here to determine whether the Janegas were entitled to actual notice, that may delay the proceedings in Circuit Court for Cook County. It would be a much more efficient use of party and court resources to litigate all of the Janegas' claims in a single court.

43. Accordingly, permissible abstention is warranted

## CONCLUSION

44. For the reasons stated above, the Janegas respectfully request this Honorable Court deny Transform's Motion to Enforce.

Respectfully submitted,

/s/ Andrew G. Hunt, Esq.
de LUCA LEVINE LLC
301 E. Germantown Pike, Third Floor
East Norriton, PA 19401
Telephone: (215) 383-0081
ahunt@delucalevine.com
*Attorney Robert and Pamela Janega*