**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROBERT L. JANEGA, individually and as administrator of the estate of John R. Janega, deceased, and PAMELA JANEGA,<br><br>Plaintiffs,<br><br>v.<br><br>ELECTROLUX HOME PRODUCTS, INC., SEARS, ROBUCK AND CO., SEARS HOLDINGS MANAGEMENT CORP., TRANSFORM HOLDCO, LLC, TRANSFORM SR BRANDS LLC<br><br>Defendants,<br><br>and<br><br>DIANA M. ARNEY,<br><br>Plaintiff,<br><br>v.<br><br>ELECTROLUX HOME PRODUCTS, INC., TRANSFORM SR BRANDS LLC,<br><br>Defendants. | No. 21 CV 3998<br>No. 21 CV 5750<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

John Janega died in a fire allegedly caused by a defective dryer in August 2019. Five months later, in January 2020, Diana Arney was injured in a fire allegedly caused by the same type of dryer. Janega's parents, Robert Janega (the administrator

of his son's estate) and Pamela Janega, as well as Arney, sued defendants in the Circuit Cook of Cook County. Defendant Electrolux removed both cases to federal court, and plaintiffs moved to remand. For the reasons discussed below, Electrolux did not timely remove *Arney* to federal court and Electrolux has not established that there is no possibility of successor liability against defendant Transform SR Brands LLC or that the automatic stay conclusively applies to the Janegas' claim against Sears. Transform and Sears are therefore proper defendants. Electrolux's notice of removal did not include the consent of those defendants, and Electrolux has not established diversity jurisdiction over these cases. I grant plaintiffs' motions to remand.

I.  **Jurisdiction and Standard of Review**

Federal courts have subject-matter jurisdiction over disputes between diverse citizens (where the amount in controversy exceeds $75,000). 28 U.S.C. § 1332. This jurisdiction is construed narrowly; the parties must be completely diverse from each other. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 71 (7th Cir. 1992). When a plaintiff files a case in state court that could have been filed originally in federal court, the defendant can remove the case to federal court. 28 U.S.C. § 1441(a). But if, at any time, it appears that the federal court lacks subject-matter jurisdiction over the case, it must remand the case to state court. *See* 28 U.S.C. § 1447(c). "The party seeking removal has the burden of establishing federal jurisdiction." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009).

One way that a defendant seeking to establish federal jurisdiction can prevail is by showing that a non-diverse defendant has been fraudulently joined, and that its

2

citizenship is therefore irrelevant to determining diversity jurisdiction. *Poulos*, 959 F.2d at 72-73. A court can find fraudulent joinder in one of two situations: when "there has been outright fraud in plaintiff's pleading of jurisdictional facts" or when there is "no possibility" that the plaintiff's claim against the non-diverse defendant can succeed in state court on remand. *Hoosier Energy Rural Elec. Co-op, Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1315 (7th Cir. 1994) (citation omitted). A defendant faces a "heavy burden" in proving fraudulent joinder. *Schur*, 577 F.3d at 764.

## II. Facts

John Janega died in a fire caused by an allegedly defective dryer on August 5, 2019. [1-1] ¶ 19.[1] Robert Janega, John's father and the administrator of his estate, purchased the dryer in the fall of 2008 from a store operated by Sears. *Id.* ¶ 11. The dryer was allegedly designed and manufactured by Electrolux. *Id.* ¶¶ 8, 9, 11, 12. In June 2021, Robert and Pamela Janega brought a wrongful-death and survival-act suit in the Circuit Court of Cook County, alleging negligence, product liability, and property damage. [1-1]. They named as defendants Electrolux (the dryer manufacturer), Sears (the dryer seller), and Transform (the current owner of Sears's assets). *Id.* The complaint identified Electrolux, Sears, and Transform SR Brands LLC as foreign corporations. *Id.* It also identified Transform Holdco LLC as a Delaware corporation. *Id.* Electrolux was served with the complaint on June 25, 2021

---

[1] Bracketed numbers refer to entries on the *Janega* district court docket, 21-cv-03998. Bracketed numbers preceded by "*Arney*" refer to entries on the *Arney* district court docket, 21-cv-05750. Page numbers are taken from the CM/ECF header placed at the top of filings.

3

(according to the Janegas, [12-1] at 7) or June 28, 2021 (according to Electrolux, [16] at 6).

Diana Arney was severely and permanently injured in a fire caused by an allegedly defective dryer on January 7, 2020. *Arney* [1-1] at 10–11. Electrolux allegedly designed and manufactured the dryer, *id.* at 8, and Transform (individually and d/b/a Sears) allegedly sold the dryer, *id.* at 24–25. Arney sued in the Circuit Court of Cook County, alleging defective design, defective manufacture, failure to warn, and negligence. *See Arney* [1-1]. She named Electrolux, Transform, and Sears as defendants, but later dismissed Sears. *Arney* [1-3]. Electrolux was served with the complaint on December 7, 2020. *Arney* [13-1] ¶ 28. On May 19, 2021, Transform moved to dismiss the case, arguing that it couldn't be held liable under the asset sale order issued in Sears's bankruptcy proceedings. *Id.* Transform attached the sale order to that motion. *Id.* Five months later, on October 27, 2021, Electrolux removed the case to federal court. *Arney* [1]. Arney moved to remand. *Arney* [13].[2]

Separately, Sears filed for Chapter 11 bankruptcy in the Southern District of New York in October 2018. [12-1] at 4. The bankruptcy judge issued a sale order in February 2019, approving the sale of Sears's assets to Transform. *Arney* [1-9] ¶ M. That order provided that the sale or transfer of assets would not subject Transform to any liability, including under theories of successor liability, de facto merger, or substantial continuity. *Id.* It also provided that Transform was not a mere

---

[2] Arney's case is assigned to Judge Kness. *Arney* [1-1]. But because the motions to remand in *Arney* and *Janega* presented similar issues, Judge Kness and I agreed to transfer the motion to remand in *Arney* to me pursuant to Internal Operating Procedure 13(h). [24].

4

continuation or substantial continuation of Sears, wasn't holding itself out as a mere continuation of Sears, hadn't merged with Sears, and there was no continuity of enterprise between the two. *Id.*

Soon after Arney filed suit in state court and after Transform moved to dismiss, Transform filed a motion in bankruptcy court to enforce the sale order and a motion in the Circuit Court of Cook County to stay discovery pending the bankruptcy court's ruling on the motion to enforce (the state court had granted limited discovery on the issue of successor liability). *See Arney* [1] ¶¶ 8–10; *Arney* [1-7]; *Arney* [1-8]. The bankruptcy court held a hearing on the motion to enforce, *Arney* [1] ¶¶ 8–10, and said that Transform would not be subject to successor liability, absent due-process and privity issues (there is an outstanding question about whether Arney purchased the dryer). *Arney* [1-10] at 74–76. The bankruptcy judge left open for discovery whether Arney had been granted adequate notice of the sale order, which was entered before the fire in her home. *Id.* at 76. Transform has not filed a motion to enforce the sale order in the Janegas' suit but Transform and Electrolux argue in their briefs that the judge's ruling in the *Arney* bankruptcy hearing (which, they rightly note, was not final, *Arney* [1] ¶ 11) requires me to find that there is no possibility that the state court could impose successor liability on Transform. *See* [15] at 6; [16] at 10–12.

Defendants argue that removal is proper because Sears (an Illinois corporation) and Transform (whose citizenship Transform doesn't disclose and Electrolux admits it doesn't know, [15]; [1] ¶ 17 n.3) are fraudulently joined. Sears is improperly joined, defendants say, because the automatic stay in the bankruptcy

5

proceedings bars plaintiffs from suing Sears. [16] at 7–10. Transform is improperly joined because the sale order says Transform is not subject to any kind of successor liability. *Id.* at 10–12; [15] at 6–7. Electrolux is therefore the only proper defendant, so diversity jurisdiction exists. *See* [16] at 6–7, 12.

Plaintiffs, meanwhile, say defendants' substantive arguments are beside the point because Electrolux didn't timely file its removal notice. [12-1] at 7; *Arney* [13-1] at 11–12. Even if Electrolux did timely file, the Janegas say they are not subject to the automatic stay because they suffered damages after Sears filed for bankruptcy. [12-1] at 7–9. (Sears is not a party to Arney's suit. *Arney* [1-3].) And plaintiffs say a state court could find that one of the Illinois-law exceptions to successor non-liability applies here, so Transform isn't fraudulently joined. [12-1] at 10–12; *Arney* [13-1] at 5–6.

### III. Analysis

#### A. Electrolux's timeliness in filing notice of removal

Under 28 U.S.C. § 1446(b), defendants have two windows of time in which they can file a notice of removal: either thirty days after receipt by the defendant of the initial pleading, § 1446(b)(1), or, "if the case stated by the initial pleading is not removable," thirty days "after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." § 1446(b)(3). All defendants who have been properly joined and served must consent to removal. § 1446(b)(2)(A).

6

The 30-day removal clock is triggered only when the defendant receives a pleading or litigation paper "facially" and "unambiguously" revealing the predicate for removal. *See Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 821, 823–24 (7th Cir. 2013). If the pleading (in conjunction with other litigation papers, if need be) doesn't reveal a predicate for removal, the defendants aren't expected to follow up on potential clues that, with further investigation, could reveal a predicate for removal. *See Railey v. Sunset Food Mart, Inc.*, 16 F.4th 234, 240–41 (7th Cir. 2021). But a defendant "cannot bury its head in the sand or feign ignorance about information within its control." *Id.* at 241. "If removability turns on information about the defendant that the defendant itself knows or can readily ascertain," then the clock begins to run. *Id.*

Here, plaintiffs say that Electrolux knew there was a predicate for removal when it received service of process.[3] *See* [17] at 3–5; *Arney* [13-1] at 11–12; *Arney* [13-3] (timeline of operative events). The complaints named Transform as a defendant. And as a participant in the bankruptcy proceedings, Electrolux had received a copy of the sale order with the successor-liability language, filed on February 8, 2019. [1-5]. Because that language unambiguously provided a predicate for removal—namely, that Transform can't be sued, so its citizenship should be disregarded—the argument is that the clock began to run upon service of process. [17] at 3–5; *Arney* [13-1] at 11–12.

---

[3] Electrolux received service of process on December 7, 2020, in the *Arney* case, *Arney* [13-1] ¶ 28, and either June 25 or June 28, 2021, in the *Janega* case, *compare* [12-1] at 7 *with* [16] at 6.

7

Arney also argues that even if the clock didn't begin to run upon service of process, there were at least three other times at which it arguably began to run—all of them more than 30 days before Electrolux removed. On May 19, 2021, Transform filed a motion to dismiss in state court. *Arney* [13-1] ¶ 28; *Arney* [13-8] at 5–8. Attached to that motion was a copy of the sale order. *Arney* [13-1] ¶ 28. On July 13, 2021, after the state court said Arney could conduct discovery on successor liability, Transform filed a motion in bankruptcy court to enforce the sale order. *Id.*; [1-4]. Electrolux, as a party in the bankruptcy proceedings, received a copy of that motion. *Arney* [13-1] ¶ 28. On July 15, 2021, Transform filed a motion in state court to stay successor-liability discovery pending the bankruptcy court's order on the motion to enforce the sale order. *Id.* In essence, Arney says that the clock began to run 30 days after: February 8, 2019; if not, May 19, 2021; if not, July 13, 2021; if not, July 15, 2021. The latest date on which Electrolux could properly remove the *Arney* case was August 15, 2021, she says. *Id.* But Electrolux removed it on October 27, 2021. *Arney* [1].

Electrolux says it only became aware of the successor-liability issue when Transform moved to enforce the bankruptcy court's sale order on July 13, 2021. [16] at 4–5; [1-4]. And even then, Electrolux says, the 30-day removal clock didn't begin to run because Electrolux discovered the successor-liability issue through independent investigation and not through receipt of a paper in the state court. [16] at 4–5.

8

One question here is whether papers in other litigation to which the defendant is a party can trigger the 30-day removal clock under § 1446(b)(3). In general, "there can be no removal on the basis of an order or other document in another case." *Wisconsin v. Amgen, Inc.*, 516 F.3d 530, 534 (7th Cir. 2008). But the *Amgen* court implied that there could be an exception to that rule when the defendant seeking removal in one case was also a party in the separate case that generated the predicate for removal. *See id.* at 534 (citing *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 969–70 (8th Cir. 2007) and *Green v. R.J. Reynolds Tobacco Co.*, 274 F.3d 263, 266–68 (5th Cir. 2001) and *Doe v. Am. Red Cross*, 14 F.3d 196, 202–03 (3d Cir. 1993)). An order in other litigation can serve as a predicate for removal if it is sufficiently related to the case in which removal is sought (usually because it involved the same defendant and similar facts and legal conclusions). *Doe*, 14 F.3d at 202–03; *see also Green*, 274 F.3d at 267–68.

But the *Dahl*, *Green*, and *Doe* courts only addressed judicial decisions ("orders") and not "other papers." 28 U.S.C. § 1446(b)(3). *See, e.g., Doe*, 14 F.3d at 202 ("[W]e hinge our decision on the term 'order' and not on the term 'other paper.'"). Transform's motion to enforce the sale order against Arney (filed in bankruptcy court) and its motion to dismiss (filed in state court), which included the sale order as an exhibit, are not "orders" but "other papers." In run-of-the-mill removal cases, where other litigation isn't at issue, party filings, as well as papers that arise in discovery, frequently provide the predicate for removal. *See, e.g., Gross v. FCA US LLC*, No. 17-cv-4889, 2017 WL 6065234, at n.3 (N.D. Ill. Dec. 7, 2017) (deposition); *Martin v. Glob.*

9

*Experience Specialists, Inc.*, No. 13-cv-07749, 2014 WL 2598788, at *6 (N.D. Ill. June 10, 2014) (interrogatory answers); Wright & Miller, Federal Practice and Procedure § 3731 (4th ed.). At the latest then, Transform's motion to dismiss, filed May 19, 2021, started the removal clock in *Arney*. *Arney* [13-1] ¶ 28. That motion was a paper filed in the removed case and it alerted Electrolux to the possibility that the sale order protected Transform from successor liability. "[D]iligent counsel had everything necessary to recognize" that the sale order may bar Arney's claim against Transform. *See Railey*, 16 F.4th at 241. Electrolux had until June 20, 2021, to remove in the *Arney* litigation. But it only did so on October 27, 2021, *Arney* [1], so its removal was untimely.

If a "paper" from a different case, albeit one that was sufficiently related to the removed case, can start the removal clock, then Transform's motions in the bankruptcy proceedings and *Arney* also established the predicate for removal in *Janega*. Electrolux participated in the bankruptcy case and was a party to *Arney*. Both of those proceedings involved the prospect of tort claims similar to the one asserted in *Janega*, and the legal conclusion of Transform's successor liability was at issue in the other proceedings as in *Janega*. In any event, independently of the receipt of these papers Electrolux knew about the sale order—so again, diligent counsel had everything necessary to recognize the argument for removability upon service of process. Electrolux therefore had thirty days from receipt of service of process to remove. But Electrolux and the Janegas disagree about whether process was served on June 25 or 28, *compare* [12-1] at 7 *with* [16] at 6, and thus on whether Electrolux's

10

July 28 removal was timely. I could resolve this factual dispute in an evidentiary hearing, but the outcome would be the same because, as I explain below, remand is required even if removal were timely.[4]

### B. Transform's successor liability

As the bankruptcy court itself noted, there are outstanding questions about due process and (in Arney's case) privity. *Arney* [1-10] at 62, 74. In fact, the bankruptcy judge withheld final judgment on the motion to enforce the sale order, pending discovery on those issues. *Id.* at 74. The state court also granted limited discovery on whether Transform might be held liable under state-law exceptions to the default rule that successors are not held liable. *Arney* [20] at 6–7. (In contrast, the bankruptcy judge said that absent due-process or privity issues, Transform clearly couldn't be held liable under Second Circuit law. *Arney* [1-10] at 43, 69–74.)

Defendants argue that plaintiffs' motions to remand are essentially collateral attacks on the bankruptcy court's sale order and its non-final ruling on the motion to enforce the sale order. [16] at 12. That argument would be more availing if there were no question about due process or privity. In that case, I'd have to decide whether a state court is bound to follow a bankruptcy court's sale order finding that no exceptions to successor non-liability apply. But that's not the case here. The bankruptcy judge hasn't ruled on due-process or privity issues, so defendants must show that there's no possibility that a state court could find Transform subject to

---

[4] Similarly, if the removal clock has not started in either *Arney* or *Janega*, because the papers received by Electrolux did not "affirmatively and unambiguously" reveal the predicates for removal, *see Walker*, 727 F.3d at 824, then remand is still required for the reasons discussed below.

11

liability for due-process or privity reasons. *See Hoosier Energy*, 34 F.3d at 1315. Defendants have not carried that burden.

They say plaintiffs' arguments that plaintiffs were entitled to actual notice (instead of publication notice), *Arney* [19-1] at 6–7, fail for three reasons: 1) Sears didn't manufacture the dryer, 2) Electrolux hasn't admitted knowledge of defects, and 3) in Arney's case, if she didn't purchase the dryer, then she was not a "known or knowable potential claimant entitled to actual notice." *Id.*

The first two reasons are just an argument that the facts here are different from those in *In re Motors Liquidation Co.*, 829 F.3d 135 (2d Cir. 2016). There, the Second Circuit said that because debtor GM knew or reasonably should have known of ignition-switch defects in their cars and knew the identity of many affected owners, creditors with ignition-switch claims were constitutionally entitled to actual notice. *Id.* at 159–60. Because GM had issued only publication notice, the sale order barring GM's successor from liability was unenforceable. *Id.* at 161–63. But nothing in the language of the case suggests that successor liability turned on the fact that GM *admitted* knowledge or that GM alone (and not car sellers as well) could be liable. Discovery in this case will get to the same question that was central in *Motors Liquidation*—what defendant knew or should have known about defects in its product. *Id.* at 159–60. And defendants' third reason—that if Arney wasn't a direct purchaser, she wasn't entitled to actual notice, *Arney* [19-1] at 6—is only relevant if discovery shows that Arney wasn't a direct purchaser. If she was, then notice remains an issue.

12

In any event, Electrolux says, these issues should be decided by the bankruptcy court because interpretation and enforcement of a sale order fall under its "arising in" jurisdiction. *Id.* at 7 (citing *In re Motors Liquidation Co.*, 829 F.3d at 153 and *In re Vista Mktg. Grp., Ltd.*, 548 B.R. 502, 512 (Bankr. N.D. Ill. 2016)). Even assuming that analyzing the due-process issue involves interpreting the sale order, I'm interpreting the sale order to determine whether I have jurisdiction. And courts always have jurisdiction to determine whether they have jurisdiction. *See Simic v. City of Chi.*, 851 F.3d 734, 738 (7th Cir. 2017); *see also In re Mahurkar Double Lumen Hemodialysis Catheter Pat. Litig.*, 140 B.R. 969, 973 (Bankr. N.D. Ill. 1992); *In re Mid-City Parking, Inc.*, 332 B.R. 798, 802 (Bankr. N.D. Ill. 2005); *BioConvergence LLC v. Attariwala*, No. 19-cv-01745-SEB-TAB, 2020 WL 1915269, at *2 (S.D. Ind. Apr. 20, 2020). Finally, if defendants believe the state court cannot or should not decide these issues, defendants can file a motion in state court to stay proceedings on these issues pending decision by the bankruptcy court—just as they did before on the successor-liability issue. *See Arney* [1-8].

Defendants haven't shown that there is no possibility that the state court could find that the sale order is unenforceable against Transform, so Transform is not fraudulently joined.

### C. The automatic stay's application to plaintiffs

Defendants argue that the Janegas cannot sue Sears, an Illinois citizen, because the bankruptcy court's automatic stay bars suit from plaintiffs whose claims arose before Sears filed its bankruptcy petition. [16] at 7–10. But the Janegas say their claims arose after Sears filed for bankruptcy—specifically when the fire

13

occurred. [12-1] at 7–8. The legal question is when a "claim" arises under 11 U.S.C. § 362(a)(6), which bars any "act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." To answer this question, I apply the "conduct test," which says that "the date of a claim is determined by the date of the conduct giving rise to the claim." *St. Catherine Hosp. of Indiana, LLC v. Indiana Family & Soc. Servs. Admin.*, 800 F.3d 312, 315 (7th Cir. 2015). But which conduct? The sale of the dryer or the fire it caused? The answer is unsettled in this circuit. To "best serve the policy goals underlying the bankruptcy process," *id.* at 316, a court should usually find that a claim arose "at the earliest point possible," *id.* (quoting *In re Chicago*, 974 F.2d 775, 782 (1992)). That includes "contingent" and "unmatured" claims—claims where, for instance, a defective product was sold pre-petition, but the product only caused injury after the window for filing claims in the bankruptcy proceedings closed. *Id.* at 315–16.

That definition of "claim" means that someone who didn't know they had a contingent claim when they purchased the product "would be forever barred from raising this claim" against the debtor or its successors. *In re Chicago*, 974 F.2d at 782. Recognizing the harsh implications of that definition, the court of appeals has implied that the conduct test does not apply to tort claims. *St. Catherine Hosp.*, 800 F.3d at 318 ("[T]here are exceptions to [the conduct] rule—most notably, where the claimant is the victim of pre-petition tortious conduct, but does not realize he or she has been a victim until some harm manifests after the bankruptcy."). At the same time, the court has implied that an exception isn't even necessary to avoid that harsh result; a

14

tort claim can only arise with the injury because, by definition, there is no tort without an injury. *See Fogell v. Zell*, 221 F.3d 955, 960 (7th Cir. 2000) ("A claim implies a legal right … and before a tort occurs the potential victim has no legal right, 'contingent' or otherwise."); *id.* ("It is a fundamental principle of tort law that there is no tort without a harm."); *Schweitzer v. Consol. Rail Corp.*, 758 F.2d 936, 940–44 (3d Cir. 1985) (cited approvingly by *St. Catherine Hosp.*, 800 F.3d at 318). Under either rationale, the outcome is the same. There is a reasonable possibility that a court could hold that the Janegas' claim arose when the fire occurred, so the automatic stay doesn't apply to them. Sears therefore was not fraudulently joined.

Sears is an Illinois citizen and not diverse from the Janegas. The citizenship of Transform is unknown, and therefore, Electrolux has not established diversity of citizenship with Arney or the Janegas. This court lacks subject-matter jurisdiction over these cases.

## IV. Conclusion

Plaintiffs did not fraudulently join Sears and Transform in their cases, and the notice of removal did not include the consent of all defendants. The motions to remand, [12]; *Arney* [13], are granted. The clerk shall remand both cases to the Circuit Court of Cook County and terminate the cases on the federal dockets.[5]

ENTER:

                                                            Manish S. Shah
                                                          United States District Judge

Date: February 17, 2022

---

[5] If Electrolux had an "objectively reasonable basis" for seeking removal, the plaintiffs are not entitled to an award of attorney fees and costs incurred as a result of the removal. *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005); *Lott v. Pfizer, Inc.*, 492 F.3d 789, 792–93 (7th Cir. 2007); 28 U.S.C. § 1447(c). Electrolux presented objectively reasonable arguments for both the timeliness of its removal and the fraudulent joinder of Transform and Sears. I decline to award fees and costs here.