**Eric L. Moore**
202 Island Avenue
San Diego, CA 92101
Moorelyndell7@gmail.com
(619) 923-1020 Fax
Pro se

FILED
U.S. BANKRUPTCY COURT

2023 MAR 13  P 3 42

S.D. OF N.Y.

**Hearing Date and Time:**

**Related to Docs. 872, 892, 1730, 2355-1, 2356, 2886, 3276, 5370, 5370-1, 9788, 9987, 10566, 10613, 10629**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

In re:

Sears Holdings Corporation, *et al.,*

                                    Debtors.

Case No. 18-23538 (SHL)

Chapter 11

(Jointly Administered)

**ERIC L. MOORE'S MOTION INFORMING SRZ LIQUIDATING TRUST OF THE
EXPIRATION OF THE DEADLINE TO PUBLISH THE GOOD FAITH VALUATION,
REQUEST THAT THEY FILE AN EXTENSION OF THE SAME, AND NOTICE THAT
THE DEFAULT HAS BEEN WITHDRAWN FOR THE 10/15/2018 BONDS (CUSIP
812350AE6) AND THE 12/15/2019 BONDS (CUSIP 812350AF3)**

TO THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE:

1. My name is Eric L. Moore, I am a Liquidating Trust beneficiary with standing to file this

   Motion and Notice. I personally hold, and/or consult for individuals that own, over five

   million shares of Common Stock and over $70 million in face value of the 10/15/2018 Bonds

   and 12/15/2019 Bonds, collectively making us, "The Moore Group," among the top 10

   largest shareholders and bondholders of Sears Holdings.

2. Our group has been, and continues to be, longtime supporters of the other large shareholders and associated leadership, including former CEO, Eddie S. Lampert, of ESL Investments and Bruce Berkowitz of Fairholme Funds.

3. The purpose of this motion is to:

   a. Inform the Court and SRZ Liquidating Trust (the **"Trust"**), as well as other parties in interest, of the expiration of a court-ordered deadline which passed on or about March 1st, 2023.

   b. Request that the Liquidating Trustee file a motion asking for an extension of such deadline, and/or publish an update of their progress toward the valuation of the Liquidating Trust assets.

   c. Request that the Trustee confirm who will be making payments to bondholders, as the bonds are worth par, and Liquidating Trust beneficiaries have been receiving conflicting information as to who will be disbursing the payments to bondholders (as further explained in this motion).

**Chapter 11 Liquidating Plan Becomes Effective**

4. On October 15, 2019, the Court confirmed the Debtors' Modified Second Amended Joint Chapter 11 Plan (the **"Plan"**). This plan became effective on or about October 29, 2022, and pursuant to that plan as amended, the remaining assets of the debtors are to be transferred to the Liquidating Trust.[1]

5. Upon information and belief, the assets of the Liquidating Trust were transferred to the Liquidating Trust on or about November 1st, 2022.

---

[1] See Plan, Article X.3.

2

6. According to the Plan and the Trust, the assets being transferred to the Liquidating Trust consist of all remaining assets of the debtors, including the debtors' rights in the Asset Purchase Agreement (The **"Agreement"**). The Declaration of Trust section of the Agreement reads in part:

   " *On the Effective Date, and in accordance with sections 1123 and 1141 of the Bankruptcy Code and pursuant to the terms of the Plan and the Confirmation Order, all title and interest in all of the Liquidating Trust Assets, which constitute all assets of the Debtors that have not been distributed on or prior to the Effective Date, including without limitation all remaining General Assets and funds received pursuant to the Settlement Order, as well as the rights and powers of each Debtor in such Liquidating Trust Assets, including, without limitation, all of the Debtors' rights under the Asset Purchase Agreement, shall irrevocably and automatically vest in the Liquidating Trust, free and clear of all liens, Claims, encumbrances and Interests (legal, beneficial or otherwise) for the benefit of the Liquidating Trust Beneficiaries...* "[2]

### Date to Publish the Good Faith Valuation

7. The Trust Agreement requires that a good faith valuation of Trust assets be published to the Trust beneficiaries as soon as reasonably practicable. The Declaration of Trust reads in part:

   "*As soon as reasonably practicable after Liquidating Trust Assets are transferred to the Liquidating Trust, but in no event later than 120 days thereafter, the Liquidating Trust shall make a good faith valuation of Liquidating Trust Assets and the Liquidating Trustee shall apprise, in writing, the Liquidating Trust Beneficiaries of such valuation.*" [3]

---

[2] See Document 10613, pages 56-57

[3] See Document 10613, pages 21-22

8.  Discounting holidays, the date to publish the valuation of the assets in the Liquidating Trust
    expired on or about March 1st, 2023. It is possible that the Liquidating Trustee is unaware of
    this court-ordered deadline, as this is a large and complex case with over 10,000 documents
    and many moving parts.

**Correspondence from Liquidating Trust Employees and Brokerages**

9.  Because the Trust has yet to publish on their website or issue a press release, or otherwise
    apprise all parties in interest at the same time and in a uniform manner, beneficiaries are
    inquiring with their brokerages and with various Liquidating Trust employees. The
    information they receive, if they are responded to, is incomplete and often unintentionally
    inaccurate. To be clear, Liquidating Trust employees are not intentionally providing
    misinformation or incomplete information.

10. For at least the last 45 days, beneficiaries have reported that employees at the Liquidating
    Trust have responded to the email messages and phone calls of some, but not others.

11. Some of these email responses have been posted on various online stock forums such as
    StockTwits.com and SeekingAlpha.com, and others.

12. Some of these email responses allege that general unsecured creditors are not Liquidating
    Trust beneficiaries. This is in direct conflict with the Plan documents and with orders of this
    Court.[4]

13. Other email responses allege that the Liquidating Trust has no significant assets left for
    distribution to bondholders and/or general unsecured creditors and that unsecured creditors
    have no path to recovery.

---

[4] See Document 5370-1 pages 11-12 under section 1.106 Liquidating Trust Beneficiaries, and
section 1.108 Liquidating Trust Interests; See also Document 3276, page 57, 1.76 "General
Unsecured Claim"

14. However, the Liquidating Trust cannot speak on behalf of the Bond Indenture Trustees, as
the Liquidating Trust is not responsible for any payments or disbursements to noteholders or
bondholders. The Plan says that the Bond Indenture Trustees, through the DTC, will provide
distributions to noteholders. The relevant section of the plan reads in part:

*"Notwithstanding any provision of the Plan to the contrary, distributions to holders of any*
*Notes shall be made to or at the direction of each of the applicable Indenture Trustees each*
*of which will act as Disbursing Agent for distributions to the respective holders of Notes as*
*applicable...[5]*

15. Because Sears Holdings bonds are still trading, it is unfair that some bondholders do not
receive email responses, and those who do, receive incomplete or inaccurate information,
while others, who do not initiate contact, are apprised of nothing. This practice is unfair in
general, as all Liquidating Trust beneficiaries should be on even ground and receive non-
public information at the same time and in the same manner.

**Misinformation Posted Online**

16. Unfortunately, some of this inaccurate information has fueled online bloggers. Once received
from a source at the Liquidating Trust, the misinformation is then posted online and
influences the behavior of market participants and brokerage firms.

17. As an example, Seeking Alpha is a large platform, and their reach is worldwide (a self-
reported 17 million unique visitors per month). One particular blogger on this platform, who
goes by the name "Wyco Researcher,"[6] who has already been publishing erroneous

---

[5] See Document 10613, pages 21-22

[6] Upon information and belief, his real name is Christopher Peters. He alleges to appear at court
hearings in this case on a regular basis via Zoom, and in multiple online posts, he alleges to have

information about Sears Holdings for years, is publishing this incomplete and/or inaccurate information from Trust employees.

18. As shown in several examples attached to this motion, this blogger encourages readers to file frivolous motions with the Court and to email the Court in bad faith.

19. Wyco Researcher/Christopher Peters, with permission from SeekingAlpha.com, has for years posted verifiably false information about the rulings in this bankruptcy case. He has posted defamatory and slanderous information about me, Eddie S. Lampert, the Court, and anyone posting rulings of the Court or documents showing that bondholders and shareholders are not wiped out. I have attached a few of these posts, which number in the hundreds. **(Exhibit A)**

20. Before and after the petition date, I published several articles about Sears Holdings on Seeking Alpha, in some cases attaching the orders of this Court, to correct misinformation published by Wyco Researcher and others.

21. However, in 2020, at the request of Wyco Researcher and others, I was removed as a contributor and commentor on Seeking Alpha, due to false and libelous information provided to them by him. Although I proved this information was false, I have yet to be reinstated.

---

"overheard" lawyers in the hallway giving him an "inside scoop" as to what is happening with the Bankruptcy case.

**Settlement of Billions of Dollars in Lawsuits and Claims**

22. It is very likely that there would <u>not</u> be any significant assets in the Liquidating Trust, were it

   not for the successful negotiation and settlement of lawsuits and claims totaling multi-billions

   of dollars over the past 48 months, as outlined in the order[7] summarizing these settlements.[8]

23. As a result of resolving these extensive legal battles, there are substantial assets at the Trust.

**Sears' 368(a)(1)(G) Tax Reorganization (the "G Reorganization")**

24. This is a very complex tax reorganization and bankruptcy case. Few people know that this

   entire process, including the liquidation of Sears Holdings and transfer of the debtors' assets

   to Transform Holdco, qualified as one or more reorganizations under section 368(a) of the

   IRS tax code.[9]

25. Unbeknownst to most bondholders and shareholders, this type of tax reorganization[10]

   <u>requires</u> that a distribution be made to former creditors of Sears Holdings, pursuant to

   Section 354 of the code.[11]

26. A target in a G Reorganization must satisfy a "distribution requirement", pursuant to which it

   distributes the consideration received in the G Reorganization. In this case, the target was

---

[7] See Documents 10566 and 10629

[8] For example, the PBGC claim was reduced from roughly $1.7 billion to roughly $900 million, and the case was substantively consolidated pursuant to the <u>Plan Settlement.</u> See Document 10566, page 19

[9] See Document 1730, page 69, section 2.12(a) <u>Tax Reorganization</u>; see also *Introduction to Taxable and Tax-Free Mergers and Acquisitions* by Samuel C. Thompson, Jr., "Introduction to 368 Acquisitive Reorganizations," pages 106-119

[10] See *Mergers, Acquisitions and Tender Offers Law and Strategies* by Professor Samuel C. Thompson Jr., Chapter 16:15, "The G Reorganization and the Acquisition of the Bankrupt Sears"

[11] See Document 1730, page 32, under "Distribution Requirement."

Sears Holdings Corporation, and the acquiring organization is ESL as Parent and Transform

Holdco as the acquiring subsidiary.[12]

27. For clarity, I have enclosed an image that illustrates a 368(a)(1)(A) reorganization,[13] per the

Asset Purchase Agreement.[14]



<hr />

[12] See *Mergers, Acquisitions and Tender Offers Law and Strategies* by Professor Samuel C.
Thompson Jr., Chapter 16:15, "The G Reorganization and the Acquisition of the Bankrupt Sears"

[13] This image is copied from *Corporate Taxation Through the Lens of Mergers and Acquisitions*
by Professor Samuel C. Thompson, Jr. 2nd Edition; page 107

[14] Document 1730 pages 22 and 69, among others

**Liquidating Trust Has Over $5 Billion in Cash/Assets Against Unsecured Bond Debt of Less Than $750 Million and PBGC Debt of Less Than $900 Million[15]**

28. Although the Plan says, "Distributions to junior classes will only be made if senior classes are satisfied (or adequately reserved for),"[16] all senior classes have been paid, and/or rolled over or subordinated.[17] Therefore, this condition has been satisfied.

29. The *first* source of recovery for general unsecured creditors, including bondholders, is the subordination of the $2 billion in senior secured debt owned by ESL, and the contribution of the same, of which $1.3 billion was credit bid. According to a declaration filed by Kunal Kamlani, this subordination creates a recovery for unsecured creditors.[18]

30. The *second* source of recovery for general unsecured creditors, including unsecured bondholders, is the $3.9 billion[19] in previously unencumbered assets securing the Junior DIP loan of $350 million. Of these assets, at least $1 billion was obtained from the sale of Innovel Solutions to Costco.[20]

31. The *third* source of recovery for general unsecured creditors is the tax refund of $900 million due from the IRS for the tax credit of the same amount.[21]

---

[15] See Document 872, Annex 1, page 39, Prepetition Indebtedness table

[16] See Document 3276, page 15

[17] See Document 2355-1, page 621; Document 2886, pages 40-41; Document 9788, page 23; and Document 9987, page 20

[18] See Document 2356, page 6 at 13; see also Document 892 page 20

[19] See Document 2886 pages 194-196

[20] See Transform Press Release dated March 17, 2020; See Also Document 1436 pages 22-23 explaining that the debtors and their estates are deemed to be express third party beneficiaries to the remaining assets.

[21] See Document 20, page 4, "The Debtors' Tax Attributes"

32. The *fourth* source of recovery for general unsecured creditors is from the sale of the
inventory at the 410 stores that were liquidated. The inventory that was sold at these stores
had a book value of at least $1.657 billion.[22]

33. The *fifth* source of recovery is from the surplus proceeds generated from the going-concern
business. Transform has been essentially debt free since March 17, 2020, with just a small
amount of real estate debt ($175 million).[23]

34. Consistent with these identifiable sources of recovery, default of the bonds was withdrawn.

### Withdrawal of the Default Notice of the 10/15/2018 Bonds and 12/15/2019 Bonds[24]

35. The default was withdrawn on the Sears Holdings bonds on or about the second business day
after the Effective Date (November 2nd, 2022). Notice was sent from Morgan Stanley/E-
Trade informing bondholders that the 10/15/2018 Bonds and 12/15/2019 Bonds were no
longer in default. This notice from Morgan Stanley/E-Trade is **attached as Exhibit B.**

36. I was personally informed by Morgan Stanley that full payment on these bonds was
imminent. However, certain parties are still informing beneficiaries in writing that there is no
money in the Liquidating Trust to make payments to bondholders and/or general unsecured
creditors. The relief requested in this motion is as follows:

---

[22] See Document 1730, page 10(b) "Inventory and Receivables"

[23] See Transform Press Release dated March 17, 2020

[24] These bonds also have dates of 10/15/2048 CUSIP 812350AE6 and 12/15/2049 CUSIP
812350AF3

**Prayer for Relief**

The Moore Group respectfully requests that the Liquidating Trust:

a. Provide the valuation of the Liquidating Trust assets to all beneficiaries and parties in interest at the same time and in the same manner.

b. File a motion asking for an extension of the deadline to publish a valuation of the assets in the Liquidating Trust, and/or publish an update of their progress toward the valuation of the assets in the Liquidating Trust.

c. Confirm if the Liquidating Trust is making distributions to bondholders, or if the Bond Indenture Trustees will be making those distributions.

Dated: March 13, 2023

By: /s/ Eric L. Moore
202 Island Avenue
San Diego, CA 92101
(619) 923-1020 Fax
Moorelyndell7@gmail.com
Pro se

I certify that copies of this motion were mailed to the following:

M3 Partners

130 West 42nd Street 17th Floor

New York, New York 10036

Attn: Kunal S. Kamlani

Sunny Singh, Esq

Weil, Gotshal & Manges LLP

767 Fifth Avenue

New York, N.Y. 10153

Jared R. Friedmann, Esq

Weil, Gotshal & Manges LLP

767 Fifth Avenue

New York, N.Y. 10153

Phil DiDonato, Esq

Weil, Gotshal & Manges LLP

767 Fifth Avenue

New York, N.Y.

Garret A. Fail, Esq

Weil, Gotshal & Manges LLP

767 Fifth Avenue

New York, N.Y. 10153

Computershare Trust Company, N.A.

250 Royal Street

Canton, MA 02021

(781) 575-4210 Fax

Bond Indenture Trustee/12/15/2019 Unsecured 8% Notes


Eric L. Moore

202 Island Avenue

San Diego, CA 92101

Moorelyndell7@gmail.com

(619)923-1020

# *EXHIBIT A*



**WYCO Researcher**     Today, 11:52 AM     ⋮

Contributor    Premium

Comments (7.4K)

*Author's Reply* Judge Drain was an idiot-AGAIN-IMO at the hearing. There was an additional settlement with Cyrus re: their reservation of rights and their appeal for a $10m reserve to be established on the effective date-IDIOT Drain wants a notice of this to be filed so it gives the opportunity of those impacted to file an objection-BUT all the parties agreed to it. Total BS-waste of time and more legal fees . He is such an idiot!!!!-it will delay the effective date a little.

Effective date no 30-60 days.

NOTHING, REPEAT NOTHING at the hearing was mentioned about some 2nd plan, some merger, some distribution to SHLDQ shareholders. Yet I assume people will still assert the APA rules-WRONG. It is the confirmed plan.

I did not watch/listen to the rest of the hearing I am going to lunch.,



## WYCO Researcher

Yesterday,
12:44 PM

Contributor   Premium

Comments (7.59K)

*Author's Reply @WYCO Researcher* What a joke all these reddit people and ESL whatever (E.M.) assert BS about recoveries/distribution/amount in liquidating trust - yet never asked M3 about the amount or who are beneficiaries - when they find out how little is actually in the trust they will change their con to something about a merger with SRG and TransformCo again-

These insane assertions will never end as long as fools on reddit still follow EM BS.



## WYCO Researcher

03 Jan. 2023    

`Contributor`  `Premium`

Comments (7.59K)

***Author's Reply*** Suggestion to those wanting to know what/how much is in the liquidating trust - file an objection for the payment of $2,768,759.63 to Jones Lang LaSalle Americas, Inc., (fee docket 10753). Just write some BS letter that 1) you have standing as trust beneficiary 2) assert that you believe that there is not enough money to pay this fee. 3) send via email.

Don't bother having proper service-you are not really trying to file a proper notice of objection-you are just trying to get/encourage/suggest Judge Lane to ask if there is enough cash to pay the fee and then ask a follow-up question about approximately how much is estimated to be in the trust.

I hope I can "attend" the hearing via zoom-but I am going to be a friend's boat-often the internet service is poor out on the water.



## WYCO Researcher

Today, 4:21 PM

**Contributor**  **Premium**

Comments (7.48K)

*Author's Reply* Remember when the 20 day notice is filed-IMMEDIATELY email a letter objecting -mentioning the content of the APA. The court can ignore the objection if it is not properly served-BTW. Those on the bottom who might get a tiny recovery will be pissed because there will be additional legal fees spent responding to your objection that will be rejected. BUT at least you will know (assuming there is a filed response) why the content of the APA is not in the plan. The easy response is that the "confirmed" plan controls....as stated in the "confirmed plan".

Just sending a letter to Judge Lane asking questions can be ignored. Call Mr. Fox who is the lawyer representing 2lien notes as lawyers for Wilmington Trust-he does talk/respond.

 **WYCO Researcher**

Interesting to note that all those asserting BS about how much is in the liquidating trust that will be paid to shareholders and noteholders have not posted what they estimate the amount to be reported by the trustee.

Actually I think the reality has or is beginning to sink in for many that there is no recovery at all for investors and they were misled (a nice way of saying lied to) by some on YouTube/reddit/stocktwits) There is no 368 re-org-there is no Sears Holdings Corp either BTW. Shares were cancelled. SHLDQ-take your tax loss and move on to some other foolishness.

Feb. 15, 2023 • 8:52 PM • View



## WYCO Researcher

Today, 12:57 PM

**Contributor** **Premium**

Comments (7.6K)

*Author's Reply* *@Ferry28* I assume you are joking! There is almost no money in the trust account left after paying the latest professional fees. This was stated at the latest hearing on Jan 18. Did you listen to the hearing or just follow the BS from a convicted felon? I was on a boat, so I did not attend but I got info from a person who attended via zoom. Are you asserting the lawyers lied at the hearing?



## WYCO Researcher

**Article Update**    Yesterday, 7:41 PM    ⋮

**Contributor**    **Premium**

Comments (7.48K)

*Author's Reply* Really? It has been a month and people still make comments asserting total BS!

If you look at the above article and see the info on assets/source of cash you will see Sears had very little assets as of 1/1/2022. They subsequently paid additional legal fees and claims. They also received settlement $, which was mostly paid out to certain claim holders and the rest of that settlement money was set aside to pay some claims that are still disputed. There is very little value in the liquidating trust account. Anyone asserting huge amounts in the liquidating trust could be just a con artist, joking, and/or ignorant. If there was a lot of value in the liquidating trust account, the filing from earlier (doc 10240) would be incorrect/false filing with a federal court.

# EXHIBIT B

# Fixed income security update



from Morgan Stanley

Alert Inbox                                          Log On

We are writing to let you know about the material event, shown below, related to a fixed income security in your account.

**CUSIP:**   812350AF3

**Issue:**   Sears Holdings Corporation - 8% due 12/15/2049

**Event:**   Default notice withdrawn

**Date:**   11/02/2022 10:20:27

12/2/22, 8:27 AM                              E*TRADE - Alerts Center

**DOW** ▼-0.57%                   **NASDAQ** ▼-1.21%                    **S&P 500** ▼-0.90%

≡                              E✳TRADE                              Log
                          from Morgan Stanley

✉  🔧  ➤  ❓

# Inbox

**All**    **Account Alerts**    **Symbol Alerts**

Back to All                                              Previous  |  Next

🗑  11/03/22 07:25 AM ET              Fixed income security update

We are writing to let you know about the material event, shown below, related
to a fixed income security in your account.

**CUSIP:**    812350AE6

**Issue:**    Sears Holdings Corporation - 6.625% due 10/15/2048

**Event:**    Default event-UnknownChanged/Withdrawn

**Date:**    11/02/2022 10:20:27

If you have questions, please call the Fixed Income Service Desk at 877-
355-3237 from 8:00 a.m. to 5 p.m. ET.

Change or manage your alert delivery preferences.

(c) 2022 E*TRADE Securities LLC, Member SIPC, a business of Morgan Stanley. All rights reserved. Important disclosures.

**Check the background of E*TRADE Securities LLC and Morgan Stanley Smith Barney LLC on FINRA's
BrokerCheck and see E*TRADE Securities LLC and E*TRADE Capital Management, LLC Relationship
Summary and Morgan Stanley Smith Barney LLC Relationship Summary.**