```
                                                          Page 1

 1   UNITED STATES BANKRUPTCY COURT
 2   SOUTHERN DISTRICT OF NEW YORK
 3   Case No. 18-23538-rdd
 4   Adv. Case No. 19-08250-rdd
 5   - - - - - - - - - - - - - - - - - - - - - - - - - -x
 6   In the Matter of:
 7
 8   SEARS HOLDINGS CORPORATION, et al.,
 9
10          Debtors.
11   - - - - - - - - - - - - - - - - - - - - - - - - - -x
12   SEARS HOLDINGS CORPORATION et al.,
13             Plaintiffs,
14        v.
15   LAMPERT et al.,
16             Defendants.
17   - - - - - - - - - - - - - - - - - - - - - - - - - -x
18             United States Bankruptcy Court
19             300 Quarropas Street, Room 248
20             White Plains, NY 10601
21
22             August 31, 2022
23             10:10 AM
24
25
```

Page 2

```
 1   B E F O R E :
 2   HON ROBERT D. DRAIN
 3   U.S. BANKRUPTCY JUDGE
 4
 5   ECRO:   JUSTIN WALKER
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                                                            Page 37
 1   settlement.
 2           THE COURT:  Okay.  Let me -- I mean, I got this
 3   proposed order this morning, so I just want to make sure --
 4           MR. SCHROCK:  Yeah.
 5           THE COURT:  -- I understand the point that you
 6   just made that --
 7           MR. SCHROCK:  It's going to be --
 8           THE COURT:  -- the $10 million payments are to be
 9   made --
10           MR. SCHROCK:  On the effective date.
11           THE COURT:  Yes.  Paragraph 14(b) does say on the
12   effective date.  You're right.
13           MR. SCHROCK:  Right.
14           THE COURT:  And there's an additional $10 million
15   reserve on the effective date --
16           MR. SCHROCK:  Correct.
17           THE COURT:  -- for Cyrus and PBGC, pending outcome
18   of the appeal or settlement of it.  But, so you correct me
19   on that point, but I'm still -- I still want to make -- so
20   that assumes the effective date will have occurred, which
21   means that --
22           MR. SCHROCK:  Correct.
23           THE COURT:  -- administrative expenses and secured
24   claims will either be paid on the effective date, or if
25   they're objected to, appropriately reserved for, so I guess
```

```
                                                              Page 37
 1    settlement.
 2              THE COURT:  Okay.  Let me -- I mean, I got this
 3    proposed order this morning, so I just want to make sure --
 4              MR. SCHROCK:  Yeah.
 5              THE COURT:  -- I understand the point that you
 6    just made that --
 7              MR. SCHROCK:  It's going to be --
 8              THE COURT:  -- the $10 million payments are to be
 9    made --
10              MR. SCHROCK:  On the effective date.
11              THE COURT:  Yes.  Paragraph 14(b) does say on the
12    effective date.  You're right.
13              MR. SCHROCK:  Right.
14              THE COURT:  And there's an additional $10 million
15    reserve on the effective date --
16              MR. SCHROCK:  Correct.
17              THE COURT:  -- for Cyrus and PBGC, pending outcome
18    of the appeal or settlement of it.  But, so you correct me
19    on that point, but I'm still -- I still want to make -- so
20    that assumes the effective date will have occurred, which
21    means that --
22              MR. SCHROCK:  Correct.
23              THE COURT:  -- administrative expenses and secured
24    claims will either be paid on the effective date, or if
25    they're objected to, appropriately reserved for, so I guess
```

```
                                                          Page 38
 1    that's the focus for what Mr. Griffith should be walking me
 2    through.
 3              MR. SCHROCK:  Yes, Your Honor, and we'll be sure
 4    to cover that, because we did come up with that number in
 5    the settlement based upon what the Debtors' projections are
 6    for, you know, with sufficient cushion for excess cash that
 7    we could safely say that after payment of all those expenses
 8    to go effective and reserving for anything that's disputed,
 9    that we would have, you know, that $30 million we would make
10    those payments and that that would clear the way for the
11    effective date.
12              THE COURT:  Okay.  So --
13              MR. FAIL:  Your Honor, if --
14              THE COURT:  Go ahead.
15              MR. FAIL:  Good morning.  It's Garrett Fail.  I
16    think Mr. Griffith can confirm my statements that -- the
17    following statements that the $180 million in settlement
18    proceeds that are coming in, together with cash on hand at
19    the proposed effective date, will be sufficient to both
20    satisfy allowed administrative expense claims including
21    those that are -- have received partial payment pursuant to
22    the administrative consent program and so there's roughly
23    $27.5 million owed on account of that constituents that have
24    received part, plus those that have not received, you know,
25    the opt outs.  That's another $6.4 million of allowed
```

Page 39

```
 1   claims, so clearly, 180 minus 33, there's sufficient to pay
 2   the allowed administrative.
 3           There's also sufficient cash to satisfy a reserve
 4   for 100 percent of the asserted amount of any disputed
 5   administrative claims.  There will be sufficient amount to
 6   reserve for the asserted amount of the secured claim that's
 7   outstanding.  There will be --
 8           THE COURT:  And that's the --
 9           MR. FAIL:  -- sufficient --
10           THE COURT:  That's the Carl Ireland claim?
11           MR. FAIL:  The relator, Your Honor, at $18.2
12   million.
13           THE COURT:  Right.  Okay.
14           MR. FAIL:  There's sufficient amounts to pay the
15   amounts owed under the retiree settlement of 1.7.  There's
16   sufficient amounts to pay priority severance that's ready to
17   be paid on the effective date of 3.6.  There's available
18   amounts to pay taxes that are agreed upon of another 14.
19   And there's a sufficient amount in addition to all of that
20   to reserve for disputed priority and disputed tax
21   obligations.
22           And then there's further -- and very critically
23   and importantly -- a sufficient amount to reserve pursuant
24   to the plan and the liquidating trust agreement for the
25   future winddown activities of the liquidating trust.  And
```

```
                                                          Page 40
 1   then, Your Honor, after that, there is $10 million available
 2   to go to PBGC, $10 million to go to Cyrus, $10 million to
 3   put aside so that it is not used for winddown activities,
 4   and then additional amounts expected to be available, a
 5   small amount -- you know, hopefully, it grows -- but
 6   additional cash after that and remaining assets to be
 7   monetized after that.
 8            But Your Honor, the intent of this settlement was
 9   to allow the plan to go effective, which in our mind, means
10   satisfying administrative claims, secured priority, and
11   reserving, as the plan requires, in full until it's
12   resolved, the remaining disputed claims, and after that,
13   Cyrus and PBGC will split the amount after reserves for
14   amounts required for the winddown activities and the $10
15   million -- the three $10 million chunks contemplate that.
16            And I think -- I would hope that in summary, Mr.
17   Griffith can confirm that information for you.
18            THE COURT:  Before I ask Mr. Griffith that
19   question, in covering the administrative expenses, both
20   those that have been allowed and a full reserve for the
21   others that are still open, that haven't been disallowed,
22   have you counted the amounts that are currently being sought
23   in the final fee applications?
24            MR. FAIL:  Thank you, Your Honor.  Yes.  Included
25   in my calculation of what would remain to be distributed by
```

```
                                                         Page 41
 1    the liquidating trust and the cash on hand balances, include
 2    payments in full of amounts accrued and incurred prior to
 3    that date.
 4          So there are sufficient funds to pay the
 5    administrative claims that have been filed plus other
 6    administrative expenses incurred throughout the cases in the
 7    ordinary course, including the professional fees that are
 8    being sought today and then still have money to be
 9    distributed to the PBGC and now Cyrus, and that was part of
10    the success of the settlement, Your Honor, and in
11    particular, getting the quantum of funds that we did in
12    order to satisfy all expenses and provide a material return
13    to the beneficiaries of the liquidating trust.
14          THE COURT:  Okay.  So, Mr. Griffith, you heard Mr.
15    Fail's summary being permitted with the Debtors' current
16    cash and claim position.  Was it accurate?
17          MR. GRIFFITH:  It was accurate, Your Honor, yes.
18          THE COURT:  Okay.  Does anyone want to question
19    either -- question Mr. Griffith or argue with Mr. Fail about
20    that summary?
21          MS. MORABITO:  Your Honor, Erika Morabito of Quinn
22    Emanuel on behalf of the admin expense claim rep.  Can you
23    hear me --
24          THE COURT:  Yes, yes.
25          MS. MORABITO:  -- see me okay?
```

Page 49

```
1   Your Honor has, but assuming this is approved, Your Honor,
2   it would resolve our reservation of rights that we filed at
3   Docket 10596.
4           THE COURT:  Okay.
5           MR. LEBLANC:  Thank you.
6           THE COURT:  All right.  So as far as -- I mean,
7   this was the relief that the relator requested, but the cash
8   will be set aside in the $18 million and change amount that
9   was in Mr. Ireland's reservation and that will be the amount
10  under the order, I'm assuming, the prior order, dealing with
11  his adequate protection rights.
12          MR. SCHROCK:  It's the amount of the claim, Your
13  Honor --
14          THE COURT:  Right.
15          MR. SCHROCK:  So pursuant to the plan --
16          THE COURT:  Right, but he's -- that's his adequate
17  protection is that there's --
18          MR. SCHROCK:  Agree, Your Honor.  Yes, Your Honor.
19          THE COURT:  And I'm assuming --
20          MR. HALPERIN:  Your Honor --
21          THE COURT:  -- fairly promptly distributed.
22  There's no reason that I'm aware of to keep it hanging out
23  there.
24          MR. SCHROCK:  The claim hasn't been allowed yet,
25  Your Honor, but you know, as soon as it is allowed, the
```

```
                                                          Page 50
 1   distributions would be made.
 2           THE COURT:  Right.  Okay.
 3           MR. HALPERIN:  Your Honor, it's Alan Halperin
 4   (indiscernible).
 5           THE COURT:  Yes.
 6           MR. HALPERIN:  Alan Halperin on behalf of relator
 7   Carl Ireland.  I would just start by saying it really is
 8   just a reservation of rights.  We're delighted at the
 9   settlement.  It relieves a lot of anxiety and a lot of
10   concern about the liquidity and ability to get to an end
11   game.  I think everything I've heard works.  The only thing
12   I just want to be clear about -- need to be precise and
13   clear -- the reserves that are being made where reserve was
14   use for Relator Carl Ireland.  A good look at the Cyrus
15   language, think it was, we can see, those funds are
16   restricted, correct, meaning they won't sit there until and
17   unless claim is allowed or paid.
18           THE COURT:  The 18 --
19           MR. HALPERIN:  -- otherwise.
20           THE COURT:  The $18 million and change that is
21   reserved on the Ireland claim.
22           MR. SCHROCK:  In the disputed claims reserve.
23   Yes, Your Honor.
24           THE COURT:  Okay.
25           MR. HALPERIN:  Yes.
```