```
                                                                Page 1

 1    UNITED STATES BANKRUPTCY COURT

 2    SOUTHERN DISTRICT OF NEW YORK

 3    Case No. 18-23538-rdd

 4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

 5    In the Matter of:

 6

 7    SEARS HOLDINGS CORPORATION,

 8

 9            Debtor.

10    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12              United States Bankruptcy Court

13              300 Quarropas Street, Room 248

14              White Plains, NY 10601

15

16              February 7, 2019

17              9:27 AM

18

19

20

21    B E F O R E :

22    HON ROBERT D. DRAIN

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO:  NAROTAM RAI
```

18-23538-shl Doc 10820-3 Filed 03/31/23 Entered 03/31/23 12:15:30 Exhibit C Pg 2 of 12
18-23538-rdd Doc 2886 Filed 02/11/19 Entered 03/19/19 10:50:26 Main Document Pg 2 of 247

Page 2



1  HEARING re Evidentiary Hearing
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25  Transcribed by:  Sonya Ledanski Hyde

Page 47

1            MR. SCHROCK:  That's why I'm here.

2            THE COURT:  You were going through the sale

3    process and the conduct of what people have referred to as

4    the auction here.  One of the provisions of the sale

5    procedures order, all of which are waivable in the exercise

6    of fiduciary duties, is to require qualified bidders to

7    provide an allocation of what they're -- what assets they're

8    paying what for.  It's uncontroverted that ESL did not do

9    that.  I have traditionally viewed --

10           MR. SCHROCK:  We waived it, Your Honor.

11           THE COURT:  You waived that condition?

12           MR. SCHROCK:  We did.

13           THE COURT:  I have viewed that condition which

14   appears in sale orders generally as serving the purpose of

15   letting a seller, the Debtor, and its constituents value a

16   global proposal as against piecemeal proposals so that you

17   can slice and dice the auction to see whether some

18   combination of bids will equal a global bid or a reduced

19   global bid.

20           It also, though, does have the benefit of giving

21   you the Debtors' -- giving you the buyer's viewpoint of what

22   the -- when the buyer's a credit bidder -- of what the

23   unencumbered assets are.  But maybe you can just tell me,

24   why did you waive it here?

25           MR. SCHROCK:  Your Honor, at the end of the day,

Page 48

1   we didn't have qualified bids for even sections of the
2   business and when we looked at this in total, and given that
3   the structure of the auction was going to be comparison of
4   the Debtors looking at a going concern versus a winddown,
5   while we did have some indications from ESL around
6   allocations and a view, we had to take -- and I think it's
7   fair to take -- we took a global view as to what
8   consideration was being provided to the company and we
9   understood that the entire business would have to be valued
10  as a whole.
11          But given that we didn't have any particular bids
12  or qualified bids for particular divisions, that wasn't as
13  much of a concern for the company.
14          THE COURT:  Okay.
15          MR. SCHROCK:  So the benefits of the sale
16  transaction really do significantly outweigh an orderly
17  winddown.  And, Your Honor, I know there's been press around
18  the Debtors' severance obligations and what we were doing.
19  I do want to make clear for the record that under either
20  scenario, the Debtors were honoring severance obligations.
21  Those claims are administrative claims in these cases under
22  governing Second Circuit -- Second Circuit precedent.
23          We deliberately made sure that -- and it was one
24  of the primary purposes around having the winddown, to make
25  sure we could pay severance claims.  But we are entitled to

Page 49

1   take into account in turning a highest or best offer, not
2   just the economic points.  And people make light of it, but
3   there's 45,000 people out there that are working for this
4   company, and it matters.  These people will have jobs.  As a
5   going concern, we've got uncontroverted testimony from Mr.
6   Kamlani about the steps that they're taking with this
7   business plan.
8           This business plan is being financed by major
9   commercial banks.  They and we are true believers in a going
10  concern for sales -- for Sears, rather.  In a winddown,
11  we're going to lose all those jobs.  With the exception of
12  probably a few stores and perhaps in Guam, Puerto Rico where
13  there, you know, have some highly profitable operations, we
14  would have to GOB them and we'd see that certain businesses
15  could be possibly be sold in divisions, in parts.
16          But, Your Honor, this truly is -- like many
17  retailers, it's a melting ice cube and the timing is so
18  urgent, and we saw that even with the Services.com purchase
19  of Parts Direct, which ended up with them not closing.
20  We're now going to end up having to argue with them around
21  the return of the deposit.  But we saw, and we believe the
22  evidence is uncontroverted, that there were significant
23  risks around the winddown.
24          The protection agreement liabilities are going to
25  be honored in a sale transaction.  In a winddown, they would

18-23538-shl    Doc 10820-3    Filed 03/31/23    Entered 03/31/23 12:15:30    Exhibit C
Pg 6 of 12
18-23538-rdd    Doc 2886    Filed 02/11/19    Entered 03/19/19 10:50:26    Main Document
Pg 50 of 247

Page 50

1    very likely be rejected unless we could find somebody to

2    take those liabilities and basically sell that part of the

3    business for zero or negative value.

4            THE COURT:  Well, while we're on this subject of

5    the protection of the warranty, the protection agreements,

6    there was some discussion yesterday about the risk that

7    there would be a delay in the approval of the KCD --

8            MR. SCHROCK:  Yes.

9            THE COURT:  -- transfer.  I thing your

10   announcement of the PBGC resolution somewhat ameliorates

11   that or more than somewhat, but you still have to go to a

12   third party to get approval.  How is the risk allocated

13   pending that approval?

14           MR. SCHROCK:  So, Your Honor, we've handled that.

15   If you take a look at Slide 27, section -- this is handled

16   in Section 2.8B of the Asset Purchase Agreement which states

17   that from the closing date until such time as the transfer

18   of the KCD notes and the assumption of purchase agreement

19   liability occurs, the buyer provides services to the

20   applicable sellers sufficient to enable the sellers to

21   perform the purchase agreement liabilities and in

22   consideration for such services, the sellers are paying to

23   the buyer an amount equal to the aggregate amounts paid by

24   buyers or sellers with respect to any licenses which buyers

25   license as the KCD IP.

Page 167

1       THE COURT: Okay. Is that the line going out the
2   door there?
3       MS. LIEBERMAN: Hopefully not going out the door,
4   Your Honor.
5       THE COURT: Okay.
6       MS. LIEBERMAN: Good afternoon, Your Honor. Donna
7   Lieberman from Halperin Battaglia Benzija.
8       Your Honor, we represent Paul Ireland, the
9   administrator of the estate of James Garbe. The objection
10  that we filed as at Docket Number 1931, and it's a fairly
11  discrete objection, Your Honor. Although, as you can
12  imagine, it's one that's very important to our client.
13      Your Honor, the objector as well as the United
14  States of America holds a mortgage against one piece of
15  Sears real estate. That piece of real estate is identified
16  by the Debtors as 8975. It is listed on APA Schedule
17  1.1(p), the operating owned property. So it is presumably a
18  piece of real estate that the Debtors wish to convey to the
19  buyer.
20      The objection is very simple, Your Honor. The
21  mortgagees have a perfected first lien mortgage on this
22  property. The Court may recall that we actually filed a
23  limited objection to the DIP motions in connection with
24  this. My colleague, Mr. Halperin, argued that -- and both
25  of the -- both the final DIP orders have specific language

Page 168

1  about the fact that this mortgage is not primed.  Nobody is
2  pari passu with this mortgage lien.
3       Your Honor, the face amount of the mortgage note
4  is $17.4 million.  There is a provision in the mortgage note
5  and the related documents for a small amount of annual
6  interest as well as a provision for professional fees.  I'm
7  sure the Court will not be surprised, as we state in our
8  objection, we do not consent to the sale of our collateral.
9  We want to know that if this -- if this mortgage is not
10 going to be paid at closing that the amount -- that the
11 amount of the mortgage, which we've calculated and we've
12 given the Debtor the precise number, that that amount is
13 segregated and reserved.
14      THE COURT:  Okay.
15      MS. LIEBERMAN:  And obviously the second piece is
16 if we cannot reach agreement with the Debtor about the value
17 of the collateral that either party can bring that issue to
18 this Court on motion.
19      THE COURT:  Okay.  So what is the Debtor's
20 proposed treatment of this -- through the sale?  I mean,
21 obviously the Lender is entitled to adequate protection of
22 its interest in the property.
23      MR. SINGH:  That's right, Your Honor.  We have --
24      THE COURT:  State your name, please.
25      MR. SINGH:  Sorry.  Sonny Singh, Weil, Gotshal on

Page 169

1  behalf of the Debtors, Your Honor.

2          I think we've got a very narrow issue here.  The
3  valuation reservation of rights, I think we have no problem
4  with that.  If we have to come back later and deal with
5  that, we can.  And our position simply is that under 363(f),
6  their liens get to attach to the proceeds of sale, excuse
7  me, which -- right here, as Your Honor knows, the
8  transaction is primarily assumptions of liabilities, which
9  are the proceeds that are coming in.  There're no other
10 liens on this asset, so whatever those proceeds may be we'll
11 have to fight about another day with the objecting party,
12 but there's no basis to -- they haven't traced -- There's no
13 basis to say we set aside $17.8 million of cash that's just
14 sitting aside in the company's --

15         THE COURT:  Well, I think you need to give them an
16 adequate protection lien on assets then.  I mean, I don't
17 know how -- they're actually protected otherwise.

18         MR. SINGH:  I believe under the DIP order -- so,
19 Your Honor, as long as it's not against a particular asset,
20 right, and we don't have to --

21         THE COURT:  But they have a super priority that --
22 where they're actually covered then.  I think that's --

23         MR. SINGH:  Right, which --

24         THE COURT:  And then you can litigate what the
25 actual value was and what you're entitled to be paid.

Page 170

```
 1              MR. SINGH:  And, Your Honor, I think we would be
 2   fine with that because that doesn't require any segregation
 3   of whatever funds they're asserting.
 4              THE COURT:  Okay.
 5              MR. SINGH:  We have no problem with that.
 6              THE COURT:  All right.
 7              MS. LIEBERMAN:  Your Honor, as you can imagine,
 8   our only concern is that once the value is set that we know
 9   that the money is there and available --
10              THE COURT:  Right.
11              MS. LIEBERMAN:  -- for our client.
12              THE COURT:  Okay.
13              MS. LIEBERMAN:  Because we have been hearing a
14   great deal about competing claims --
15              THE COURT:  Right.
16              MS. LIEBERMAN:  And whether this is an
17   administratively solvent estate.
18              THE COURT:  All right.  So I vaguely remember the
19   carveout in the DIP order.  But, I mean, this is a first
20   lien on this property.  It's worth what it's worth, and it
21   can't be paid just by a, you know, just saying we're going
22   to pay you someday.  They need to have a -- indubitable
23   equivalent in something.  So --
24              MR. SINGH:  Yes, Your Honor.
25              THE COURT:  -- you need to give them that to them.
```

Page 171

1     MR. SINGH:  I think we could probably add a short
2  paragraph to specifically give the adequate protection lien
3  that Your Honor outlined --
4     THE COURT:  Okay.
5     MR. SINGH:  -- relating to -- with everybody's
6  rights reserved as to the underlying claim.
7     THE COURT:  As to the value and either party's
8  right to --
9     MR. SINGH:  And value.
10    THE COURT:  -- bring the -- bring that issue to
11 the Court.
12    MS. LIEBERMAN:  Thank you, Your Honor.
13    MR. SINGH:  Exactly.  Thank you, Your Honor.
14    THE COURT:  Okay.
15    MR. FONG:  Good afternoon, Your Honor.  Chris Fong
16 from Nixon Peabody on behalf of US Bank in its capacity as
17 the KCD indenture trustee.
18    THE COURT:  Yes.
19    MR. FONG:  We don't have any objection to the
20 sale.  I just rise with respect to a discrete issue that we
21 have with the sale documents with which we would like to
22 reserve our rights.
23    I think, as you know, US Bank is the indenture
24 trustee under indenture with KCDIP, a non-debtor subsidiary.
25    THE COURT:  Right.

Page 247

1      C E R T I F I C A T I O N

2

3    I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5    **Sonya Ledanski Hyde**

*Digitally signed by Sonya Ledanski Hyde*
*DN: cn=Sonya Ledanski Hyde, o, ou,*
*email=digital@veritext.com, c=US*
*Date: 2019.02.11 10:13:05 -05'00'*

8    Sonya Ledanski Hyde

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

25   Date:    February 9, 2019