Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 18-23538-shl; Adv. Proc. No. 20-06307-shl

4    - - - - - - - - - - - - - - - - - - - - - - - - -x

5    In the Matters of:

6    SEARS HOLDINGS CORPORATION, et al.,

7               Debtors.

8    - - - - - - - - - - - - - - - - - - - - - - - - -x

9    KMART HOLDING CORPORATION, et al.,

10              Plaintiffs,

11   v.

12   BEST-LOCK (ASIA) LTD.,

13              Defendant.

14   - - - - - - - - - - - - - - - - - - - - - - - - -x

15              United States Bankruptcy Court

16              300 Quarropas Street, Room 248

17              White Plains, New York 10601

18

19

20

21              March 29, 2023

22              11:04 AM

23   B E F O R E:

24   HON. SEAN H. LANE

25   U.S. BANKRUPTCY JUDGE

 1    18-23538-shl Sears Holdings Corporation, et al.

 2    Ch 11

 3

 4

 5    Omnibus Hearing

 6

 7    Adversary proceeding: 20-06307-shl Kmart Holding Corporation

 8    et al v. Best-Lock (Asia) Ltd.

 9    Status Conference Re: Doc. #5 Motion To Dismiss Adversary

10    Proceeding Filed By Best-Lock (Asia) Ltd.

11

12    Adversary proceeding: 20-06307-shl Kmart Holding Corporation

13    et al v. Best-Lock (Asia) Ltd.

14    Status Conference Re: Doc. #7 Response To Motion To Dismiss

15    Filed On Behalf of Kmart Holding Corporation

16

17    Adversary proceeding: 20-06307-shl Kmart Holding Corporation

18    et al v. Best-Lock (Asia) Ltd.

19    Status Conference Re: Doc. #9 Letter to the Court Requesting

20    Status Conference Filed on Behalf of M3 Advisory Partners,

21    LP

22

23    Doc. #10800 Order Scheduling Status Conference Re: Beau

24    LeBaron***THIS MATTER WILL BE RESCHEDULED***

25

1    BENCH RULING Re: Doc. #10661 Motion of the Chubb Companies

2    for Entry of an Order (I) Ruling that Default Judgment,

3    Settlement Agreements and State Court Orders are Void Ab

4    Initio Pursuant to 11 U.S.C. 105(a) and 362(a) and Without

5    Effect; and (II) Granting Related Relief

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Lisa Beck

Page 4

```
 1   A P P E A R A N C E S :

 2   WEIL, GOTSHAL & MANGES LLP

 3        Attorneys for SRZ Liquidating Trust

 4        767 Fifth Avenue

 5        New York, NY 10153

 6

 7   BY:  GARRET A. FAIL, ESQ.

 8        FURQAAN SIDDIQUI, ESQ.

 9        (VIA ZOOM)

10

11   ASK LLP

12        Attorneys for M3 Advisory Partners, LP

13        2600 Eagan Woods Drive

14        Suite 400

15        St. Paul, MN 55121

16

17   BY:  RICHARD REDING, ESQ.

18        (VIA ZOOM)

19

20

21

22

23

24

25
```

**Page 5**

```
1    DUANE MORRIS LLP

2         Attorneys for The Chubb Companies

3         30 South 17th Street

4         Philadelphia, PA 19103

5

6    BY:  CATHERINE BEIDEMAN HEITZENRATER, ESQ.

7         (VIA ZOOM)

8

9    FOSTER GARVEY PC

10        Attorneys for Shelley Hawkins

11        1111 Third Avenue

12        Suite 3000

13        Seattle, WA 98101

14

15   BY:  DAN YOUNGBLUT, ESQ.

16        (VIA ZOOM)

17

18

19

20

21

22

23

24

25
```

Page 6

```
 1                    P R O C E E D I N G S
 2              THE COURT:  All right.  So with that, the next
 3   matter that's up is Sears Holding Corporation Chapter 11
 4   case on for a variety of matters as are reflected in the
 5   agenda that was filed on the docket.  And so, let me find
 6   out who's here for the liquidating trustee.
 7              MR. REDING:  Richard J. Reding appearing on behalf
 8   of the liquidating trustee in the Best Lock matter, Your
 9   Honor.
10              THE COURT:  All right.  Good to have you here.
11   And so let me find out who the other appearances are from
12   parties this morning.
13              MS. HEITZENRATER:  Good afternoon, Your Honor.
14   Kate Heitzenrater for The Chubb Companies.
15              THE COURT:  All right.  Good morning to you.  Any
16   other appearances?
17              MR. YOUNGBLUT:  Good morning, Your Honor.
18              MR. FAIL:  Good morning --
19              MR. YOUNGBLUT:  Oh.  I apologize.
20              MR. FAIL:  Please, please, please.
21              MR. YOUNGBLUT:  This is Dan Youngblut from Foster
22   Garvey on behalf of Shelley Hawkins here for the bench
23   ruling, Your Honor.
24              THE COURT:  All right.  Good morning to you as
25   well.  And Mr. Fail?
```

Page 7

1           MR. FAIL:  Good morning, Your Honor.  Garrett

2    Fail, Weil Gotshal & Manges, for the liquidating trustee.

3           THE COURT:  All right.  Good morning.  Any other

4    appearances?

5           All right.  So I do have the agenda.  I know

6    there's been a tweak to the agenda which has been conveyed

7    to chambers.  Again, I always want to thank folks for giving

8    us a heads up as to what's happening and what's not

9    happening in terms of just what's on the agenda.

10           So with -- I'll start off by turning it over to

11    the liquidating trustee.

12           MR. FAIL:  Thank you very much, Your Honor.  We

13    can proceed with the order that is on the agenda if it

14    pleases the Court.  There's no general update.  The case is

15    proceeding along the lines that we expected it would.  There

16    was a recent ruling from the Supreme Court denying a cert

17    petition in one matter that was on appeal which will allow

18    distributions to flow out to the PBGC in an initial

19    distribution in the coming weeks.  But other than that, we

20    intend to prepare and file an update with the Court on a

21    semi-annual basis.  And I believe that will be in the next

22    month or so.

23           THE COURT:  All right.  Thank you very much.  So I

24    think we can just go right down the agenda then.

25           MR. FAIL:  Yes, sir.  So the first item is an

Page 8

1   adversary proceeding going forward as a status conference.

2   My firm's not handling that matter.

3           THE COURT:  Oh.  Well, let me just back up -- I'm

4   going to back up just to the contested matter that's no

5   longer on for today.

6           MR. FAIL:  Not -- okay.

7           THE COURT:  Yeah, just to try to make some sort of

8   record as best we can.

9           So this was put on the calendar based on numerous

10  requests that Mr. Beau LeBaron had submitted to the Court.

11  And then I think at a certain point, the Court issued an

12  order to try to tee up his issues which I think, as that

13  order noted, had been the subject of a hearing and were

14  still out there.  And we just thought that in the interest

15  of clarity, it'd be good to have something and figure out

16  where we are.

17          And then I understand from Ms. Ebanks, my

18  courtroom deputy, that it was explained that Mr. LeBaron had

19  a scheduling conflict.  He's appearing in some other court

20  somewhere in California and asked to adjourn this even

21  though I think it was sort of set for his benefit.  But be

22  that as it may, I understand it's off.  I did not see Mr.

23  LeBaron here.  I just want to make it clear sometimes these

24  things don't go as planned.  But he's not here as it turns

25  out.

1         And so, Mr. Fail, am I right in saying that that's

2    going to be adjourned to April 19th?

3         MR. FAIL:  It was going to be adjourned.  I don't

4    believe April 19th was set.  It was indeed to be determined.

5    That day doesn't --

6         THE COURT:  Okay.  That --

7         MR. FAIL:  -- work for me but we can --

8         THE COURT:  That's fine.  So what I would say is

9    if I could ask you the favor of taking the laboring oar and

10   finding out what date would work and then communicating that

11   to chambers.  Whatever's fine with you all is fine with me.

12   The idea, though, again, just in these circumstances, it's

13   always good to be as clear as possible.  So I would think

14   that at a certain point, once it's agreed that there be a

15   notice sent -- put on the docket and then sent to Mr.

16   LeBaron so it's very clear.

17        And -- but any date you want to pick is fine.  My

18   thought would be maybe sometime in the next couple of

19   months, whatever works.  But just again, talk to Ms. Ebanks

20   and we'll get that done.  But thank you very much again for

21   the heads up as to what the status was going into this

22   morning.  It's much appreciated.

23        And so, with that, I'll turn it back to you to

24   address the adversary proceeding.

25        MR. FAIL:  I'm not sure who's handling that matter

1    for the liquidating trust thereon.

2         MR. REDING:  Yes.  Yes, Your Honor.  I'll be

3    handling the Best Lock adversary proceeding, Your Honor.

4         THE COURT:  All right.  Thank you.  So I did see

5    that's number 2 on the -- well, it's II.  And number 2

6    otherwise on the agenda.  I don't -- I understand that

7    there's no one here for Best Lock (Asia) Ltd. who is the

8    defendant in that adversary but I just want to confirm that.

9    Anyone here for Best Lock (Asia)?

10        No.  All right.  And I think there was a request

11   for a status conference to discuss the very reasonable issue

12   of exactly what the best way to proceed is here.  And so,

13   I'll turn it over to you, counsel, in the first instance and

14   then we can chat about it.

15        MR. REDING:  Yes, Your Honor.  We -- there's a pro

16   se motion -- well, described as a motion to dismiss.  It was

17   sort of a letter motion that was filed, looks like in late

18   July of 2021.  We filed a response to that.  It's basically

19   been sitting out there.  So I think probably the best way to

20   go forward is how ever the Court would like to dispose of

21   that.  And then we can proceed from there.  Assume probably

22   give them time to interpose an answer.  And then if they

23   don't, proceed to a default judgment.

24        THE COURT:  All right.  And that motion to dismiss

25   was filed by the corporation pro se.  Correct?

1          MR. REDING:  Yes.  That is correct, Your Honor.

2          THE COURT:  All right.  And so I -- let me just

3     also for purposes of today -- the request for a status

4     conference -- what I'm trying to get at is just to make a

5     record as to anything that's been sent to this particular

6     defendant to make it clear that they can't proceed pro se

7     and that today is on for a hearing.  I'm looking at the

8     agenda and I'm just -- was there service of the notice of

9     the status conference today?

10          MR. REDING:  I believe so, Your Honor.  We've

11    tried to reach out to them and we have not heard a response

12    in quite some time.  I believe we've tried emailing them as

13    well and we've received notices that those emails have

14    bounced back.

15          THE COURT:  All right.  All right.  So, yeah, I

16    have the notice of status conference that was filed by ASK

17    at docket number 10 in the adversary proceeding.  My binder

18    doesn't have like a certificate of service of that.  So what

19    I thought might be the best -- I'm always worried about

20    taking one step forward only to take two steps back because

21    you have some issue about notice.  So maybe the thing to do

22    is to schedule this -- if you want to submit an order to

23    show cause that the motion to dismiss will be denied and the

24    case will essentially be that the plaintiff will move

25    forward with a default.

Page 12

1          If there's no appearance made by counsel and that

2     include the notion that counsel -- I'm sorry -- that a

3     corporate entity can't proceed pro se in court and then also

4     provide in that order to show cause that this order to show

5     cause will be served on Best Lock.  And you can include an

6     email address, the best email address you have and also just

7     a regular address.  And if you want to do it by overnight

8     mail or how ever you want to do it.  And then after, I

9     think we have it teed up procedurally to clear away the

10    motion to dismiss if no one shows up and to allow you to go

11    ahead with your default, again, if no one shows up.  I'm

12    certainly -- I'm sure you'll draft a much more beautiful

13    document than what I've just described.  And so, if you

14    think there are other bells and whistles that would be

15    appropriate to put in such a draft order to show cause,

16    please use your considerable professional judgment.  But

17    that would be my thought just to sort of clear away things

18    and set aside enough proper path.  That's one way to do it.

19    I'm open to any other suggestions you might have if there's

20    a better way to do it.

21          Any thoughts, counsel?

22          MR. REDING:  Not really, Your Honor.  I think

23    proceeding with an order to show cause makes sense to me.

24    You know, make sure that they've got proper notice of that.

25    That all makes sense to me as well.  And just try to head

Page 13

```
 1    off any issues that might come up down the road as best as
 2    we can.
 3              THE COURT:  Yeah.  I think you put it very well is
 4    to just make sure that it's teed up and we don't have sort
 5    of an albatross procedurally hanging around the case as you
 6    move forward.  So that would be great.
 7              And again, I would say pick a date so that there's
 8    sufficient time.  And just one of the dates you already have
 9    scheduled.  And if you draft the order, submit it and then
10    I'll sign it and then, again, it will provide that U.S.
11    counsel for the liquidating trustee will handle service.
12    And then I think we should be in a good spot.
13              All right.  Thank you very much for that.
14    Anything else on that particular matter?
15              MR. REDING:  Not on this end, Your Honor.
16              THE COURT:  All right.  So I know there's a bench
17    ruling that I need to get to.  Is there anything else that
18    we need to address in this case before we get to the bench
19    ruling?
20              MR. FAIL:  No, Your Honor.  Not that I'm aware of.
21    Thank you.
22              THE COURT:  All right.  Thank you very much.
23    Again, thank you to counsel for the liquidating trustee to
24    keep us on the straight and narrow path here.  Much
25    appreciated.
```

1          And with that, I know that folks are waiting for a

2     bench ruling.  And so I'll segue to that.  I understand that

3     both parties are here for the bench ruling.

4          So with that, I will proceed.

5          Before the Court is the motion of ACE American

6     Insurance Company and its U.S. affiliates, which are

7     collectively referred to as Chubb, for entry of an order

8     ruling that certain judgments, agreements and orders entered

9     in a state court litigation are void ab initio under Section

10    362 of the Bankruptcy Code.  See motion of the Chubb

11    entities for entry of an order (I) ruling that default

12    judgment, settlement agreements and state court orders are

13    void ab initio pursuant to 11 U.S.C. Section 105(a) and

14    362(a) and without effect; and (II) granting related relief.

15    That's all at ECF number 10661.  And I'll refer to that as

16    "the Motion".  For the reasons to be discussed, the Court

17    finds that certain of these events are certainly void for

18    violating the automatic stay but others are not.

19    Accordingly, the Motion is granted in part and denied in

20    part.

21          So let me give a little bit of a background.

22          The parties' briefs set forth extensive facts in

23    this matter.  And it's my assessment that really none of

24    these are disputed.  Familiarity with the facts set forth in

25    these briefs is assumed but nonetheless, I'll provide a

Page 15

1    brief review of the main facts that are central to

2    understand Chubbs' motion.

3            So on October 15th, 2018, Sears Holding

4    Corporation and certain of its affiliates filed for relief

5    under Chapter 11 of the Bankruptcy Code.  And that is

6    obviously referred to as the petition date.

7            On January 9th, 2019, this Court also entered an

8    order extending the automatic stay to certain nondebtor

9    parties.  See ECF 1528.  And this stay extension order

10   extended the automatic stay under Section 362(a) of the

11   Bankruptcy Code to certain employees of the debtors and as

12   to certain actions and claims against them.

13           Prior to the debtors' bankruptcy filing, Chubb had

14   issued insurance policies to one or more of the debtors.

15   These included policy number H09044188, the so-called AL

16   policy, which was issued by ACE American to Sears as first

17   named insured.  Under the AL policy, ACE American provided

18   automobile liability insurance to certain of the debtors and

19   other insureds for the period of August 1st, 2016 to August

20   1st, 2017.

21           On August 20th of 2020, the Court entered an order

22   authorizing the assumption of the insurance programs (see

23   ECF number 8396) which approved the debtors' assumption and

24   assignment of its insurance programs to Transform Holdco LLC

25   with certain retained insurance contracts remaining with the

Page 16

```
1    debtors.  The AL policy is a retained insurance contract and

2    therefore technically remains property of the debtors'

3    estate.

4           On September 20th of 2018, less than a month

5    before the bankruptcy cases were filed, Shelley Hawkins

6    commenced a lawsuit, as Plaintiff, under case number 18-2-

7    08408-31, the Washington lawsuit, against Debtor Sears

8    Holding Management Corporation and Debtor A&E Factory

9    Service, LLC, which I'll refer to as the debtor defendants.

10   That lawsuit was also against nondebtor Edwin G. Miguel and

11   two other nondebtor defendants in the Superior Court in the

12   state of Washington for Snohomish County, which I'll refer

13   to as the Washington state court.  And this is all reflected

14   in the complaint which is attached as Exhibit E to the

15   motion.

16          The Washington lawsuit alleges that Plaintiff's

17   vehicle was rearended by a third party and that Edwin

18   Miguel, a Sears employee, then rearended that third party

19   causing a second collision with Plaintiff's vehicle.  (See

20   the Complaint at paragraphs 12 through 18.)

21          On the petition date, the automatic stay went into

22   effect under Section 362 of the Bankruptcy Code.  And what

23   that means is that there was -- it stayed all claims against

24   the debtors including the debtor defendants in the

25   Washington lawsuit.
```

1          The stay extension order was then entered on

2     January 9th of 2019 which extended the automatic stay to

3     nondebtor defendant Mr. Miguel in the Washington lawsuit.

4     On January 24th, 2019, Chubb's counsel in the Washington

5     lawsuit sent a notice to Plaintiff's counsel informing the

6     plaintiff the Court had signed an order extending the

7     automatic stay to Sears Holding Corporation and its debtor

8     affiliates and attaching a copy of the stay extension order.

9     (See Exhibit F to the motion.)

10          Chubb's notice did not reference Mr. Miguel

11     specifically and exhibit to the stay extension order clearly

12     references Mr. Miguel as one of the nondebtor parties to

13     which the stay was extended.  And again, see that notice of

14     extending the stay order attached as Exhibit F to the

15     motion.

16          Despite this, the plaintiff continued to pursue

17     the Washington lawsuit against both Debtor A&E Factory

18     Service and Mr. Miguel.  On April 25th, 2019, the plaintiff

19     moved the Washington state court for an order of default

20     against both A&E Factor Service and Mr. Miguel, each of whom

21     was protected by the automatic stay and/or the stay

22     extension order at the time.

23          The plaintiff also sought a default against the

24     third party who had caused the collision but that wasn't

25     relevant for -- is not relevant for our decision here today.

Page 18

1        On May 2nd, 2019, the Washington state court

2   granted Plaintiff's motion and entered a default judgment in

3   favor of the Plaintiff against A&E Factory Service and Mr.

4   Miguel in the amount of $399,297.32 plus a certain amount in

5   statutory costs.

6        On August 26th, 2020, Plaintiff's counsel then

7   sent a demand letter to Mr. Miguel stating -- Mr. Miguel was

8   now a judgment debtor and owed Plaintiff that -- some

9   $440,827.61 plus interest due to the default judgment.  The

10  demand letter included a subpoena and claimed that Mr.

11  Miguel was required to appear at the office of Plaintiff's

12  counsel and bring his financial paperwork related to bank

13  accounts, wages, all property owned and so forth.  See

14  Demand Letter at 1 which is attached as Exhibit I to the

15  motion.

16       The demand letter also stated that Plaintiff's

17  counsel could free Mr. Miguel of this judgment subpoena but

18  that this offer in freeing Mr. Miguel in paying his judgment

19  is withdrawn if Mr. Miguel contacts his insurance company."

20  See id. at 1-2.

21       Chubb asserts that Plaintiff's counsel also

22  provided recommendations to Mr. Miguel as to counsel that

23  Mr. Miguel could personally retain and that Mr. Miguel

24  ultimately retained one of those lawyers.  See Response to

25  Interrogatories at 10 attached as Exhibit J of the motion.

Page 19

1          On October 7th, 2020, more than 15 months after

2     the default judgment was entered, Plaintiff filed a motion

3     with the Washington state court to vacate the default

4     judgment against A&E Factory Service.  Plaintiff did not,

5     however, move to vacate the default judgment against Mr.

6     Miguel at that time.

7          On October 9th, 2020, Mr. Miguel and the plaintiff

8     executed a settlement agreement.  And we're going to call

9     this the first settlement agreement which provided Mr.

10    Miguel recognizes and acknowledges -- that's the term in the

11    settlement agreement -- that the default judgment has been

12    entered against him, that the amount of the default judgment

13    with ongoing interest was approximately $443,323 and that

14    the entry of the default judgment leaves Mr. Miguel's

15    personal assets exposed and at risk to execution and

16    collection by Plaintiff.  See First Settlement Agreement at

17    6 attached as Exhibit L to the motion.

18          Mr. Miguel agreed, among other things, to assign

19    certain claims against ACE American to Plaintiff in exchange

20    for Plaintiff's agreement not to execute the default

21    judgment against Mr. Miguel.  See id. at 7 through 8.  The

22    first settlement agreement makes no mention of the debtors'

23    bankruptcy cases, the automatic stay or the stay extension

24    order.

25          On March 25th, 2021, Plaintiff and the debtors

1    entered into a proposed stipulation agreement and order

2    granting limited relief from the automatic stay at ECF

3    number 9372.  This stay relief stipulation acknowledges,

4    among other things, that the stay extension order was

5    entered and extended the automatic stay to the Washington

6    lawsuit and that the Washington lawsuit remains pending but

7    stayed in the Washington state court.  See stay relief

8    stipulation, paragraph C and E.

9         It further states that Plaintiff desires to resume

10   the Washington lawsuit solely against the nondebtor

11   defendants including Mr. Miguel.  See id. paragraph E.  The

12   stay relief stipulation further provides the automatic stay

13   and the stay extension order shall be modified to permit

14   Plaintiff to continue the Washington lawsuit solely against

15   the nondebtor defendants including Mr. Miguel and any

16   insureds thereof.

17        On April 5th, 2021, the Court entered an order

18   approving the stay relief stipulation.  See ECF number 9392.

19        On March 27th, 2021, two days after the stay

20   relief stipulation was entered into, Plaintiff's counsel

21   sent Mr. Miguel's counsel a second draft settlement

22   agreement.  This second settlement agreement did not seek a

23   judgment of some $443,000 as was included in the first

24   settlement agreement but instead provided, among other

25   things, that the defendant Miguel recognizes and

Page 21

1    acknowledges that judgment is being sought against him in

2    this action in an amount exceeding $1.5 million and the

3    parties agree that the reasonable value of the past and

4    future damages sustained by and justly due to Plaintiff is

5    $1.5 million.  And it's hereby stipulated to entry of

6    judgment against Defendant Miguel in Plaintiff's favor for

7    that principal amount.  See second settlement agreement at

8    pages 7 through 9 attached as Exhibit N to the motion.

9          The second settlement agreement again included an

10   agreement from Mr. Miguel to assign certain claims against

11   ACE American to Plaintiff in exchange for Plaintiff's

12   agreement not to execute the confession of judgment against

13   Mr. Miguel which had now been increased to 1.5 million.  See

14   id.

15         On June 23rd, 2021, Mr. Miguel signed the second

16   settlement agreement.  On June 30th, 2021, Plaintiff filed a

17   motion with the Washington state court seeking an order

18   vacating the default judgment against Mr. Miguel which

19   motion was granted on the same day.

20         Then on July 12th, 2021, Plaintiff filed a motion

21   in the Washington state court for a determination of

22   reasonableness with respect to the second settlement

23   agreement and for judgment thereon.

24         On July 15th, 2021, Plaintiff filed a motion in

25   the Washington state court for voluntary dismissal of the

Page 22

1   debtor defendants in the Washington lawsuit but not for

2   dismissal of Mr. Miguel.  Then on July 21st, 2021, the

3   Washington state court entered an order determining $1.5 to

4   be a reasonable settlement between Plaintiff and Mr. Miguel

5   and providing that the Washington state court will

6   separately enter final judgment against Mr. Miguel in the

7   amount of $1.5 million plus interest.

8           On September 2nd, 2021, the Washington state court

9   entered a further order, which I'll refer to as the

10  confession of judgment, approving Mr. Miguel's confession of

11  judgment entering judgment against him and in favor of

12  Plaintiff in the amount of $1.5 million plus interest.

13          Plaintiff subsequently filed an amended complaint

14  in the Washington lawsuit asserting Mr. Miguel's

15  purportedly-assigned contract and bad faith claims against

16  ACE American and naming ACE American as a defendant in the

17  Washington lawsuit for the first time.

18          So turning to the legal standard, the automatic

19  stay is made operable by Section 362 of the Bankruptcy Code

20  and is one of the debtor's key protections in bankruptcy.

21  See, e.g., Midlantic National Bank v. New Jersey Dept. of

22  Environmental Protection, 474 U.S. 494 at 503, a case from

23  1986.  It is meant to provide "complete, immediate, albeit

24  temporary relief to the debtor from creditors, and also to

25  prevent dissipation of the debtor's assets before orderly

1    distribution to creditors can be effected."  S.E.C. v.

2    Brennan, 230 F.3d 65 at 70 (2nd Cir. 2000) which is quoting

3    Penn Terra Ltd. v. Department of Envtl. Resources, 733 F.2d

4    267 at 271 (3d Cir. 1984).

5            By its very terms, no action by a Court is

6    necessary for the stay to take effect.  See In re Colonial

7    Realty Company, 980 F.2d 125 at 137 (2nd Cir. 1992).

8            Importantly, the automatic stay allows the

9    bankruptcy court to centralize all disputes concerning

10   property of the debtor's estate so that organization could

11   proceed efficiently unimpeded by uncoordinated proceedings

12   in other arenas.  See Brennan, 230 F.3d at 70 which is

13   quoting In re State Lines Inc., 197 F.3d 631 at 640 (2nd

14   Cir. 1999).

15           So central is the stay under Section 362 to an

16   orderly bankruptcy process that actions taken in violation

17   of the stay are void and without effect.  See In re Colonial

18   Realty, 980 F.2d at 137.  See also Rexnord Holdings, Inc. v.

19   Bidermann, 21 F.3d 522 at 527 (2nd Cir. 1994), In re

20   Signature Apparel Grp., 577 B.R. 54 at 88 (Bankr. S.D.N.Y.

21   2017).

22           As one of the fundamental debtor protections

23   provided for under the Bankruptcy Code, Courts rigorously

24   enforce the automatic stay and discourage stay violations.

25   See Eastern Refractories Co. v. Forty Eight Insulations

```
1     Inc., 157 F.3d 169 at 172 (2nd Cir. 1998) citing H.R.Rep.

2     No. 95-595, at 340 from 1977.  See also In re Soares, 107

3     F.3d 969 at 975 through 76 (1st Cir. 1997).

4            So applying these principles here, the Court has

5     jurisdiction to hear and determine all matters arising from

6     and relating to implementation and enforcement of the

7     automatic stay and the stay extension order.  See State

8     Extension Order at paragraph 8.  See also In re

9     Johns-Manville Corporation, 517 F.3d 52 at 60 (2nd Cir.

10    2008) which notes "It is undisputed that the bankruptcy

11    court had continuing jurisdiction to interpret and enforce

12    its own...orders."  See also In re Motors Liquidation

13    Company, 514 B.R. 377 at 381 (Bankr. S.D.N.Y. 2014) noting

14    that bankruptcy courts have subject matter jurisdiction to

15    enforce the orders in bankruptcy cases and proceedings under

16    the Court's arising under a jurisdiction.

17           Indeed, any relief for violation of the automatic

18    stay must be sought in bankruptcy court under Section 334 --

19    I'm sorry -- under 28 U.S.C., Section 1334(a) and is not to

20    be sought in the state court where the alleged violation

21    might have occurred.  See Eastern Equipment & Services Corp.

22    v. Factory Point Nat'l Bank in Bennington, 236 F.3d at 117,

23    121 (2d Cir. 2001).  See also Truong v. Litman, 312 F. App'x

24    377, 378 (2nd Cir. 2009); see Couloute v. Hunt, Leibert,

25    Chester & Jacobson, LLC, at 295 B.R. 689 at 692 (D. Conn.
```

Page 25

1    2003).

2             An order terminating the automatic stay operates

3    only prospectively.  Thus, the termination of the automatic

4    stay does not reinstate or validate a stay violation but

5    rather merely permits a creditor to initiate or reinitiate

6    an action as of that time.  See In re Heating Oil Partners,

7    2009 WL 5110838 at *10 (D. Conn. Dec. 17, 2009) which is

8    quoting the In re WorldCom case, 325 B.R. 511 at 519 (Bankr.

9    S.D.N.Y. 2005).

10            So applying these standards here, the efforts by

11   the plaintiff and her counsel to pursue the Washington

12   lawsuit and obtain and enforce any judgment against the

13   debtors after the petition date or to pursue, obtain any

14   judgment against Mr. Miguel after the Court entered the stay

15   extension order on January 8th, 2019 were clearly violations

16   of the automatic stay to the extent they occurred before

17   this Court modified the automatic stay in the stay relief

18   stipulation on April 5th, 2021.

19            Accordingly, the motion by the plaintiff in the

20   Washington state court seeking default was in clear

21   violation of the automatic stay and the stay extension

22   order.  And the resulting default judgment entered by the

23   Washington state court against A&E Factory Services and Mr.

24   Miguel in May of 2019 is therefore void and without effect.

25            In the same vain, the plaintiff's subsequent

Page 26

1    efforts to invoke the default judgment against Mr. Miguel so

2    as to urge him into resolving Plaintiff's claims including

3    sending the demand letters were also violations.  See Conner

4    v. Howe, 344 F. Supp. 2d 1164 and 1172 (S.D. Ind. 2004)

5    which notes that Section 362(a) acts to stay any attempt to

6    enforce a judgment regardless of when it was obtained.

7          Last but not least, the execution of the first

8    settlement agreement in October of 2020 was in violation of

9    the automatic stay as it further attempted collection on the

10   plaintiff's claim.  The stay relief order did not annul or

11   otherwise retroactively lift the automatic stay or did the

12   stay relief order even mention let alone purport to validate

13   or ratify the default judgment.  Indeed, it is conspicuously

14   silent as to the default judgment with the first settlement

15   agreement, which the Court finds to be an alarming lack of

16   candor to the Court.  And indeed, I think counsel flew

17   exceedingly close to the sun in many respects in connection

18   with the actions taken before there was actually relief from

19   the stay and the stay order which the Court finds to be

20   exceedingly troubling.

21         So Chubb argues that the relief granted in the

22   Washington lawsuit subsequent to the entry of the stay

23   relief order is also void.  Specifically, the second

24   settlement agreement, the settlement order and the

25   confession of judgment.  But the stay relief stipulations

Page 27

1    specifically lifted the automatic stay against certain

2    nondebtor parties while leaving the stay in place with

3    respect to the debtors (see the stay relief stipulation in

4    paragraph 2) and explicitly permitted the Washington lawsuit

5    to proceed against the nondebtor defendants and any insureds

6    thereof (see stay relief order, paragraph 2).  The term

7    "nondebtor defendant" was defined to include, among others,

8    Mr. Miguel.  See stay relief stipulation at Section A.

9    Entry of the stay relief order therefore left the plaintiff

10   free to pursue litigation against Mr. Miguel.

11           Additionally, the stay relief order further

12   clarified that any insurer from which coverage is sought can

13   administer, handle, defend, settle and/or pay such claims in

14   the ordinary course of business without further order of

15   this bankruptcy court.  See stay relief order at paragraph

16   6.

17           Stay relief order was noticed for presentment

18   before the Court and a copy of the pleading was served on

19   counsel to Chubb among others.  See notice of presentment of

20   stipulation agreement order granting limited relief from the

21   automatic stay, ECF number 9372.  See also affidavit of

22   service, ECF number 9383.  No party objected to the stay

23   relief stipulation which was granted on April 5th, 2021 at

24   which point the stay relief stipulation became effective and

25   the stay was lifted with respect to Mr. Miguel and the

Page 28

1   Washington lawsuit.  See stay relief stipulation, paragraph

2   1.

3           The Washington state court's entry of the default

4   judgment and Mr. Miguel's entry into the first settlement

5   agreement occurred prior to the entry of the stay relief

6   order and those documents are clearly void and actions are

7   clearly void because they were entered in violation of the

8   automatic stay.  But the second settlement agreement was not

9   entered into by Mr. Miguel until June 23rd, more than two

10  months after the stay relief order was granted.  Likewise,

11  the settlement order and the confession of judgment were

12  entered by the Washington state court subsequent to the stay

13  relief order.

14          In addition, the second settlement agreement, the

15  settlement order and the confession of judgment do not

16  directly impact the assets of the debtors or the debtors'

17  estates.  Indeed, the debtors have not taken any position on

18  the motion or as the liquidating trustee meaning that the

19  two parties against whom the stay violations previously took

20  place, the debtors and Mr. Miguel, are not seeking any

21  relief from the Court based on the facts here.  Accordingly,

22  the Court finds the stay is not implicated with respect to

23  those documents.

24          So Chubb notes that while the second settlement

25  agreement was executed after entry of the stay relief order,

Page 29

1    Chubb relies on the fact that it was prepared and presented

2    to Mr. Miguel before the stay relief order was granted.

3    Thus, Chubb argues the second settlement agreement is, in

4    essence, a pre-stay relief settlement.  Chubb also argues

5    that the second settlement agreement was a result of

6    harassing and forced conduct while the automatic stay and

7    the stay extension order were still in effect.

8           But even if the terms of the second settlement

9    agreement were drafted prior to the entry of the stay relief

10   order, the fact is that Mr. Miguel did not bind himself to

11   it until after the stay had been lifted against him.

12   Importantly, Mr. Miguel was represented by counsel at the

13   time the settlement agreement was negotiated and

14   consummated.

15          Chubb next argues that the default judgment was

16   leveraged by Plaintiff's counsel to force Mr. Miguel to

17   enter into the second settlement agreement and notes that

18   Mr. Miguel's counsel was recommended to him by the plaintiff

19   apparently suggesting Mr. Miguel did not receive adequate

20   representation.  But the actual evidence on this issue is to

21   the contrary.  Sean McDowell (sic), Esquire submitted an

22   affidavit stating that he was retained by Mr. Miguel in

23   September 2020 in connection with the Washington lawsuit

24   that Mr. Malcolm negotiated both settlement agreements with

25   Plaintiff's counsel at arm's length and Mr. Malcolm

Page 30

1    represented Mr. Miguel's best interest based on the facts

2    and circumstances of the matter at hand and that any

3    suggestion that his client was harassed or forced into

4    signing either settlement agreement is simply unfounded.

5    See declaration of Sean B. McDowell (sic), paragraphs 2 and

6    6, ECF number 10681-2.

7           Likewise, Mr. Miguel submitted a declaration in

8    which he stated that he signed the second settlement

9    agreement freely, voluntarily on advice of counsel.  See

10   declaration of Edwin G. Miguel, paragraph 4, ECF number

11   10681-3.

12          Mr. Miguel specifically stated that he didn't

13   enter into the agreement as a result of coercion or

14   harassment but determined upon the advice of counsel that

15   settling the matter "would help me protect my personal

16   assets and avoid bankruptcy, and was therefore in

17   my best interests".  See paragraph 5 of his declaration.

18          Mr. Miguel also stated that settlement agreements

19   were not based upon the default judgment.  See Id.

20          To the extent any issue with Mr. Miguel's

21   representation by counsel goes to the validity of the second

22   settlement agreement itself such as used are more

23   appropriately directed to the Washington state court.  And

24   so this court is not taking any views except to the extent

25   that I'm rejecting the notions that this was a result of

1    coercion as had been suggested by Chubb.

2           Additionally, to the extent that Chubb suggested

3    the second settlement agreement should be void due to the

4    improper leverage on the part of the plaintiff, any

5    reasonableness inquiry with respect to Mr. Miguel's entry

6    into the second settlement is something for the Washington

7    state court to consider in the first instance as between

8    these two nondebtor parties.  And the same is true of any

9    rights that the insurance company may have in state court.

10           Chubb also makes a tracing argument suggesting the

11   second settlement agreement, the settlement order and the

12   confession of judgment are tainted by the default judgment

13   and first settlement agreement and therefore must be

14   declared void despite the fact that the automatic stay was

15   lifted with respect to Mr. Miguel at the time these were all

16   actually executed.

17           But the cases relied on by Chubb can be easily

18   distinguished.  First, the cases cited by Chubb do not

19   involve settlements or orders that were entered into after

20   relief from the automatic stay was granted by the bankruptcy

21   court.  Second, the cases cited by Chubb involve situations

22   where a debtor's assets were directly impacted by the

23   activity in question unlike the situation in this case.

24   See, e.g., Valencia v. Rodriguez, 235 Fed. App'x. 383 (9th

25   Cir. 2017) (sic), which involved a bankruptcy court voiding

1    an unapproved settlement entered into while the automatic

2    stay was in effect.  See also In re Extraction Oil & Gas,

3    Inc., 2020 WL 7074142 (Bankr. D. Del. Dec. 3, 2020) which

4    held that a temporary restraining order and settlement

5    agreement entered into with a third party during the

6    pendency of the debtor's cases violate the automatic stay

7    because they interfered with an existing business

8    relationship with the debtors and were therefore exercising

9    control over estate property.  See In re Nalley, 507 B.R.

10   411 at 419 (Bankr. S.D. Ga. 2014) which held that provisions

11   in divorce decrees entered into between the joint

12   debtor/husband and wife during the pendency of the

13   bankruptcy case is void because it constituted diversion of

14   property of the bankruptcy estate in violation of the

15   automatic stay.  See also Sasson v. Sokoloff, 424 F.3d 864

16   (9th Cir. 2005) holding that the bankruptcy court had

17   subject matter jurisdiction to enter a money judgment in a

18   nondischargeability action where the underlying debt had

19   been reduced to judgment in state court.  See In re Ehmke,

20   2006 WL 1994904 (E.D.N.Y. July 14, 2006) holding that the

21   bankruptcy court could grant the motion to reject a contract

22   under Section 365 of the Bankruptcy Code without

23   contravening the Rooker-Feldman doctrine.

24          The Court was unable to locate case law directly

25   supporting Chubb's tracing argument and indeed counsel to

Page 33

1    Chubb admitted they were unable to locate any such cases.

2    See hearing transcript in this case of November 3rd, 2022 at

3    page 40, lines 7 through 13, ECF number 10716.

4           So for all these reasons, the Court finds that the

5    default judgment and first settlement agreement were entered

6    in violation of the automatic stay and therefore are void ab

7    initio.  But for the second settlement agreement, the

8    settlement order and the confession of judgment, those were

9    entered subsequent to the stay being lifted against Mr.

10   Miguel and do not implicate the asses of the debtors or

11   debtors' estates or certainly what parties argued.

12   Therefore, they do not implicate the automatic stay and

13   there's nothing about the automatic stay that would render

14   them void ab initio.

15          So that's the Court's ruling.  Of course, I will

16   end with one note that I don't want the Court's ruling as to

17   the matters that are considered to be not void ab initio to

18   be in any way an endorsement of the actions here which I

19   find to be awfully close to the line and certainly not the

20   way that these things should proceed.  I think there was a

21   lot of clever lawyering here to steer clear of things and

22   fix things after the fact.  The bottom line is, though,

23   given the declarations that I have of Mr. Miguel and his

24   counsel and given that those documents were executed after

25   the stay was lifted unnoticed to Chubb and everyone else,

Page 34

1    that the liquidating trustee and the debtors have not

2    weighed in, I reached the conclusion that I did.  But if you

3    tweak a small fact or two here or there in this fact

4    pattern, I would reach very strikingly a different

5    conclusion.

6          And so, I, again, will leave to the state court in

7    Washington to assess all the parties' rights.  The only

8    thing I'm addressing is whether these action were void ab

9    initio in light of the automatic stay.  So it's not to be

10   read as an endorsement of any party's position or not in

11   connection with other issues that might properly come before

12   the Washington state court.

13         And finally, I have concluded that several actions

14   were void ab initio and those are clear.

15         So given all that, I'll ask that prevailing --

16   counsel to the prevailing party should settle an order on

17   five days notice and that proposed order should be

18   consistent with my usual practice submitted on the docket by

19   filing a notice of proposed order on the case management

20   electronic case filing docket with a copy of the proposed

21   order attached as an exhibit to the notice.  And a copy of

22   the notice and proposed order should be served on opposing

23   counsel.

24         So that's the Court's ruling.  And let me ask if

25   there's anything else that we need to address here this

1    morning before adjourning.

2              Just in the interest of clarity, I'll just circle

3    the virtual room.  Mr. Fail, anything else from the

4    liquidating trustee?

5              MR. FAIL:  No.  Thank you very much for your time,

6    Your Honor.  Appreciate it.

7              THE COURT:  All right.  Anything else from Chubb?

8              MS. HEITZENRATER:  No.  Thank you very much, Your

9    Honor.

10             THE COURT:  All right.  Anything else from the

11   plaintiffs in the Washington state court action?

12             MR. YOUNGBLUT:  No, Your Honor.  Thank you.

13             THE COURT:  All right.  I certainly would

14   encourage folks who when they run into bankruptcy cases when

15   they're pursuing these kind of personal injury cases, they

16   need to talk to somebody who knows something about

17   bankruptcy because the next one of these will not go so

18   well.  And it's really not the way to go.  So more than that

19   I will not say.

20             And with that, I wish you all a pleasant day, good

21   afternoon.  Be well.

22             MR. FAIL:  Thank you.

23             MS. HEITZENRATER:  Thank you, Your Honor.

24    (Whereupon, these proceedings were concluded at 11:48 a.m.)

25

1                          I N D E X

2

3                        R U L I N G S

4

5     DESCRIPTION                               PAGE      LINE

6     Motion of the Chubb Companies for entry of    14        22

7       order ruling that default judgment,

8       settlement agreements and state court

9       orders are void ab initio granted in part

10      and denied in part

11    Default judgment and first settlement        33         5

12      agreement were entered in violation of

13      automatic stay and therefore are void

14      ab initio

15    Second settlement agreement, settlement      33         7

16      order and confession of judgment were

17      entered subsequent to stay being lifted

18      against Mr. Miguel and therefore, are

19      not rendered void ab initio

20

21

22

23

24

25

Page 37

1          C E R T I F I C A T I O N

2

3   I, Lisa Beck, certify that the foregoing transcript is a

4                                    roceedings.

5

6   _____

7   Lisa Beck

8

9   Date:  March 30, 2023

10

11  Veritext Legal Solutions

12  330 Old Country Road

13  Suite 300

14  Mineola, NY 11501

15

16

17

18

19

20

21

22

23

24

25