| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | **NOT FOR PUBLICATION** |
| ------------------------------------------------------------x | |
| In re | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.* | Case No. 18-23538 (SHL) |
| Liquidating Debtors.[1] | (Jointly Administered) |
| ------------------------------------------------------------x | |

## MEMORANDUM OF DECISION

**A P P E A R A N C E S:**

**WEIL, GOTSHAL & MANGES LLP**
*Counsel to the Liquidating Trustee*
   By:   Ray C. Schrock, P.C.
         Jacqueline Marcus, Esq.
         Garrett A. Fail, Esq.
767 Fifth Avenue
New York, New York 10153

**CORRETJER, LLC**
*Counsel to Puerto Rico Electric Power Authority*
   By:   Eduardo J. Corretjer Reyes, Esq.
         Rafael H. Ramírez Polanco, Esq.
625 Ponce de León Ave.
San Juan, PR 00917-4819

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the *Eighteenth Omnibus Objection to Proofs of Claim or Ballots (Reduce or Reclassify Claims/Ballots)* (the "Objection") [ECF No. 7859] of the above-captioned liquidating debtors (collectively, the "Debtors") to proofs of claim numbered 20119 and 20121 (together, the "Claims") filed by the Puerto Rico Electric Power Authority ("PREPA") against, respectively, Debtors Kmart Corporation and Sears, Roebuck de Puerto Rico, Inc., in the amount

---

[1]   On January 11, 2023, the Court entered the *Order (I) Entering Final Decree Closing Certain of the Chapter 11 Cases and (II) Granting Related Relief* [ECF No. 10776], closing the affiliated Chapter 11 cases and directing that all motions, notices, and other pleadings relating to any of the affiliated debtors be filed in the above-captioned case.

of US$530,672.70. PREPA filed the Claims as administrative priority claims for unpaid electricity expenses incurred prior to the Debtors' filing for bankruptcy. By this Objection, the Debtors seek to reclassify the Claims as general unsecured claims because they contend that electric energy is not a "good" under Section 503(b)(9) of the Bankruptcy Code and, therefore, should not be accorded priority status as an administrative expense claim. For the reasons set forth below, the Court agrees and grants the Debtors' objection.[2]

## BACKGROUND

PREPA supplied commercial metered electric power to the Debtors' more than 20 Kmart Corporation locations and close to 20 Sears Roebuck de Puerto Rico locations across Puerto Rico. *See generally* Claim Nos. 20119 and 20121. These were just a handful of the Debtors' many locations, as the Debtors operated some 687 retail stores in 49 states, Guam, Puerto Rico, and the United States Virgin Islands. *See Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York* ¶ 25 [ECF No. 3].

On October 15, 2018 (the "Petition Date"), the Debtors filed for relief under Chapter 11 of the Bankruptcy Code. *See generally Chapter 11 Voluntary Petition for Non-Individual* [ECF No. 1]. Roughly one year later, PREPA filed the Claims for unpaid pre-petition electricity charges, seeking $363,723.50 and $166,948.95 in administrative expense claims from Kmart and Sears Roebuck de Puerto Rico, respectively. The Claims reflected charges for electricity provided to the Debtors in the 20 days prior to the Debtors' bankruptcy filing.

---

[2] This matter was taken under advisement without argument on the merits. Instead, the parties consented to a decision based on the pleadings. *See Notice Regarding Debtors' Eighteenth Omnibus Objection to Proofs of Claim Numbers 20119 and 20121* [ECF No. 10733].

2

On April 22, 2020, the Debtors filed the Objection. PREPA responded to the Objection (the "Response") [ECF No. 7985] on May 27, 2020. The Debtors filed a reply to the Response (the "Reply") [ECF No. 10168] on December 16, 2021.

## DISCUSSION

### A. The Legal Standard

A claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If the claim is properly filed, it is *prima facie* evidence that the claim is valid. *See* Fed. R. Bankr. P. 3001(f). A party in interest may object to a proof of claim, and once an objection is made, the court must determine whether the objection is well founded. *See* 4 Collier on Bankruptcy ¶ 502.02[2] (16th ed. rev. 2022).

Although Bankruptcy Rule 3001(f) establishes the initial evidentiary effect of a filed claim, the burden of proof rests on different parties at different times for an unsecured claim. *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). Notwithstanding the *prima facie* validity of correctly filed proofs of claim, an objector can overcome a claim's presumptive legal validity by producing "evidence equal in force to the *prima facie* case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd sub nom. Peter J. Solomon Co. v. Oneida Ltd.*, 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010) (internal citations and quotations omitted). The burden then reverts to the claimant, who must "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Id.*; *see also Residential Capital, LLC*, 2016 WL 796860, at *9 (S.D.N.Y. Feb. 22, 2016); *In re Arcapita Bank B.S.C.(c)*, 2013 WL 6141616, at *1 (Bankr. S.D.N.Y. Nov. 21, 2013), *aff'd*, 508 B.R. 814 (S.D.N.Y. 2014); *In re Motors Liquidation Co.*, 2012 WL 1886755, at *3 (S.D.N.Y. May 21,

2012). Said differently, once a party objects to the *prima facie* validity of a claim, "it is for the claimant to prove his claim, not for the objector to disprove it." *In re Bennett*, 83 B.R. 248, 252 (Bankr. S.D.N.Y. 1988).

Section 507 of the Bankruptcy Code grants priority status to administrative expenses allowed under Section 503(b). *See* 11 U.S.C. § 507(a)(2). Section 503(b) in turn provides that claimants should be granted an administrative expense claim for the value of any goods received by the debtor within 20 days before the date of commencement of the bankruptcy case that are sold to the debtor in the ordinary course of business. *See* 11 U.S.C. § 503(b)(9). An administrative claim under Section 503(b)(9) is entitled to full payment, in contrast with an unsecured claim that only recovers *pro rata* based on the amount of value left in the estate after payment of higher priority creditors. *See* 11 U.S.C. §§ 1326(b)(1), 1322(a)(2).

For those seeking priority status like PREPA here, claimants have the burden of proving entitlement to administrative priority. *See, e.g.*, *In re Bethlehem Steel Corp.*, 479 F.3d 167, 172 (2d Cir. 2007) ("The burden of proving entitlement to priority payment as an administrative expense . . . rests with the party requesting it."); *In re Ditech Holding Corp.*, 2020 WL 3635547, at *9 (Bankr. S.D.N.Y. July 3, 2020) ("The Claimants have the burden to demonstrate their right to administrative priority."); *In re Drexel Burnham Lambert Grp. Inc.*, 134 B.R. 482, 489 (Bankr. S.D.N.Y. 1991) ("The burden of establishing entitlement to priority rests with the claimant and 'should only be granted under extraordinary circumstances . . . when the parties seeking priority have sustained their burden of demonstrating that their services are actual and necessary to preserve the estate.'") (quoting *In re Amfesco Indus., Inc.*, 81 B.R. 777, 785 (Bankr. E.D.N.Y. 1988); *see also* 4 Collier on Bankruptcy ¶ 507.01 (16th ed. rev. 2022). Given the presumption in bankruptcy cases that the debtor's assets will be equitably distributed among

creditors, the statute granting priority status is narrowly construed because priority claims reduce the total funds available for claimants. *See Howard Delivery Serv. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 667 (2006) ("To give priority to a claimant not clearly entitled thereto is not only inconsistent with the policy of equality of distribution; it dilutes the value of the priority for those creditors Congress intended to prefer.") (internal citations and quotations omitted).

**B. The Claims Here**

In the Objection, the Debtors contend that the Claims are not entitled to administrative status because electric energy expenses incurred in the 20 days prior to the filing of a bankruptcy petition do not qualify as "goods" under Section 503(b)(9).

As part of the Bankruptcy Code set forth in Title 11 of the United States Code, Section 503(b)(9) is federal law. As such, the definition of "goods" under Section 503(b)(9) is also a matter of federal, and not state, interpretation. *See, e.g.*, *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 97 (1991); *Off. Comm. of Unsecured Creditors v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys. Inc.)*, 997 F.2d 1039, 1056 (3d Cir. 1993). Neither Section 503(b)(9), nor the Bankruptcy Code, defines the term "goods." *Cf. In re Escalera Resources Co.*, 563 B.R. 336, 347 (Bankr. D. Colo. 2017) ("BAPCPA's sparse legislative history is of little help . . . there is no legislative history as to why [Section] 503(b)(9) was needed . . . ."); *In re Plastech Engineered Prod., Inc.*, 394 B.R. 147, 151 (Bankr. E.D. Mich. 2008) ("There is little legislative history to [Section] 503(b)(9)."). Nor is the term "goods" used consistently elsewhere in the U.S. Code. *See In re Pilgrim's Pride Corp.*, 421 B.R. 231, 236 n.3 (Bankr. N.D. Tex. 2009) ("If, in other contexts Congress had established a consistent ambit for the term 'goods,' it would be useful. The court has found two places in the United States Code where Congress has defined 'goods.' In 49 U.S.C. § 80101(3), the word 'goods' is defined as 'merchandise or personal property that

5

has been, is being, or will be transported.' In contrast to this relatively narrow definition, 29 U.S.C. § 203(i) defines 'goods' very broadly to include 'goods . . . , wares, products, commodities, merchandise, or articles or subjects of commerce of any character . . . .' Because these two definitions have such disparate effect, the court does not consider either helpful in discerning Congress's meaning in the use of the word in Section 503(b)(9).").

Given the absence of guidance from Congress, bankruptcy courts have looked to other sources to provide guidance on what constitutes a "good," specifically the Uniform Commercial Code (the "UCC"). *See* 4 Collier on Bankruptcy ¶ 503.16[1] (16th ed. 2022) ("Although 'goods' is not defined in the Code, bankruptcy courts have adopted the definition in Article 2 of the Uniform Commercial Code.") (citing *GFI Wisconsin, Inc. v. Reedsburg Utility Comm'n (In re Grede Foundries, Inc.)*, 440 B.R. 791, 797 (W.D. Wis. 2010); *In re Circuit City Stores, Inc.*, 416 B.R. 531, 537 (Bankr. E.D. Va. 2009); *In re Goody's Family Clothing, Inc.*, 401 B.R. 131, 134 (Bankr. D. Del. 2009) ("Given the near unanimous nationwide adoption of Article 2 of the U.C.C., the Court concludes that the term goods in [S]ection 503(b)(9) conforms with the meaning given in UCC 2-105(1); 'goods' are something that is moveable."); *In re Samaritan Alliance, LLC,* 2008 Bankr. LEXIS 1830, at *6-7 (Bankr. E.D. Ky. June 20, 2008) (applying Article 2 definition of goods for claims under Section 503(b)(9))). The adoption of the model UCC definition of goods under UCC § 2-105 satisfies one of the core principles of federal bankruptcy law, namely, ensuring uniform treatment of creditor claimants. *See, e.g., Cent. Va. Cmty. Coll. v. Katz,* 546 U.S. 356, 376 n.13 (2006) ("Congress has the power to enact bankruptcy laws the purpose and effect of which are to ensure uniformity in treatment of state and private creditors."); *Pilgrim's Pride Corp.,* 421 B.R. at 236 ("One of the cardinal rules of bankruptcy law

is that similarly situated claims should receive the same treatment.") (citing *Till v. SCS Credit Corp.*, 541 U.S. 465, 477 (2004)).

To that end, bankruptcy courts have looked to the definition of "goods" in Section 2-105(1) of the UCC in applying Section 503(b)(9), "citing the UCC's nearly nationwide adoption, the similarity of its definition to the non-legal meaning of the word, and other courts' uniform[ ] agree[ment] that the UCC provides the operative definition." *Hudson Energy Servs., LLC v. The Great Atl. & Pac. Tea Co, Inc. (In re The Great Atl. & Pac. Tea Co., Inc.)*, 498 B.R. 19, 21–22 (S.D.N.Y. 2013) (citations and quotations omitted); *see also In re Erving Indus., Inc.*, 432 B.R. 354, 365 (Bankr. D. Mass. 2010) ("Given the wide usage and acceptance of the definition of goods found in the UCC at § 2–105(1), it is hardly plausible that Congress expected bankruptcy judges to roll up their sleeves and set to work re-inventing the proverbial wheel and divining a more amorphous 'common understanding' of the term.") (emphasis omitted).

Drawing on the UCC, this Court has ruled that electric energy is not a "good" under the UCC and, by extension, is not a good for Section 503(b)(9) purposes. *See In re The Great Atl. & Pac. Tea Co., Inc.*, Hr'g Tr. 117:11-126:16 (Bankr. S.D.N.Y. Nov. 6, 2014) [Case No. 10-24549 (RDD), ECF No. 4589] (the "A&P Hr'g Tr."). That ruling was affirmed by the District Court for the Southern District of New York. *See Hudson Energy Services, LLC v. The Great Atl. & Pac. Tea Co., Inc. (In re The Great Atl. & Pac. Tea Co., Inc.)*, 538 B.R. 666 (S.D.N.Y. 2015); *cf. In re Circuit City Stores, Inc.*, 416 B.R. 531, 535 (Bankr. E.D. Va. 2009) (concluding that Congress did not intend "a disparate application of the term 'goods,' but rather contemplated a consistent, uniform approach to its interpretation."). In reaching its decision, this Court emphasized that statutory priorities must be construed narrowly, especially when there is ambiguity. As this Court noted, such ambiguity is supported by the stark split of opinion on this question. *See* A&P

7

Hr'g Tr. at 101:3-17, 106:18-21 ("[A]s far as I'm concerned, I don't think that Congress left it up to us where people can be that wrong, or at least half of them are that wrong . . . . Where there was an ambiguity, the Court said well, Congress had to be clearer."). In affirming this Court's decision, the District Court similarly noted that "where it is 'far from clear' that a claim falls within the Bankruptcy Code's priority provisions, courts should 'reject [an] expanded interpretation . . [u]nless and until Congress otherwise directs.'" *In re The Great Atl. & Pac. Tea Co.*, 538 B.R. at 673 (quoting *Howard Delivery*, 547 U.S. at 668). Citing to the "divergent judicial opinions on the issue," the District Court agreed that it was "'far from clear' that electricity falls within the meaning of goods under Section 503(b)(9)." *Id.* at 674 (quoting *Howard Delivery*, 547 U.S. at 668).

Notwithstanding the clear answer on this issue from our Court, PREPA argues that this Court should ignore this precedent and instead adopt the view of bankruptcy courts in the First, Seventh, Ninth, and Tenth Circuits, which have held that electric energy is a good under the UCC and should be granted administrative priority under Section 503(b)(9). *See* Response ¶¶ 5, 9. As a threshold matter, PREPA mischaracterizes the nature of the circuit split in asserting that "a majority of federal courts that have addressed the issue have ruled that electricity is a good for purposes of [S]ection 503(b)(9)." *See id.* ¶ 9. In fact, just as many cases have reached the opposite conclusion. *See In re N. Pac. Canners & Packers Inc.*, 628 B.R. 337, 344 (Bankr. D. Or. 2021) (observing that "[i]t is far from clear that . . . electricity . . . qualifies as goods [under] [Section] 503(b)(9)."), *aff'd sub nom. PacifiCorp v. N. Pac. Canners & Packers, Inc.*, 2023 WL 1765691, at *5 (D. Or. Feb. 3, 2023) (finding that electric power is not a "good" and does not give rise to a priority claim); *Great Atl. & Pac. Tea Co.*, 538 B.R. at 673 (holding electricity was not movable at the time of identification to the parties' contract and therefore did not constitute a

8

"good" for administrative expense purposes); *In re NE Opco, Inc.*, 501 B.R. 233, 260 (Bankr D. Del. 2013) (assessing circuit split and "conclud[ing] that electricity is not a good under [S]ection 503(b)(9)"); *Pilgrim's Pride*, 421 B.R. at 239 (finding that electricity was not a good under the UCC and reiterating "[n]one of these cases [from other jurisdictions stating electricity is a good] binds this court, and it respectfully disagrees with their holdings."); *In re Samaritan All., LLC*, 2008 WL 2520107, at *4 (Bankr. E.D. Ky. June 20, 2008) (noting that courts are divided on whether electricity is "goods" and finding Section 503(b)(9) inapplicable). This difference of opinion does not support the result urged by PREPA and, in fact, reaffirms the wisdom of this Court's prior ruling on this issue. *See* A&P Hr'g Tr. at 101:3-17, 106:18-21.

PREPA also cites to *Enron Power Mktg., Inc. v. Nevada Power Co. (In re Enron Corp.)*, 2004 WL 2290486 (S.D.N.Y. Oct. 12, 2004) to support its contention that the Court should adopt the approach of the Bankruptcy Court of Puerto Rico, which applied Puerto Rico law, and find that electricity constitutes a good under the UCC in the context of Section 503(b)(9). *See* Response ¶ 8 & n.5. As the Debtors point out, however, the *Enron* decision is easily distinguishable. The claims in *Enron* were state law breach of contract claims for unpaid electricity, not Section 503(b)(9) claims. *See In re Enron*, 2004 WL 2290486, at *1-*2. With a state law claim, the bankruptcy court in *Enron* properly applied the law of the underlying contract and its choice of law provisions. *See Cargill v. Charles Kowsky Resources, Inc.,* 949 F.2d 51, 55 (2d Cir. 1991) ("In the absence of a violation of a fundamental state policy, New York courts generally defer to the choice of law made by the parties to a contract.").[3] But that is

---

[3] *See also Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 152 (2d Cir. 2016) ("Under New York choice-of-law rules, where the parties agree that [a certain jurisdiction's] law controls, this is sufficient to establish choice of law.") (citation and quotation omitted). Absent any significant federal bankruptcy policy, a bankruptcy court applies the choice-of-law rules of the forum state. *In re Tyson*, 433 B.R. 68, 97 (S.D.N.Y. 2010); *see also Halperin v. Morgan Stanley Inv. Mgmt., Inc. (In re Tops Holding II Corp.)*, 646 B.R. 617, 692 (Bankr. S.D.N.Y. 2022) ("Where no

9

not the case for Section 503(b)(9) claims, which are subject to the overriding federal bankruptcy policies of uniformity and equitable distribution among administrative creditors. If this Court were to look to state law to assess Section 503(b)(9) claims as PREPA suggests, the bankruptcy court would face absurd results. Debtors with multi-state footprints could face different priorities for the same claim by the same provider, simply because the electricity was delivered in different jurisdictions. As the Debtors note, "PREPA's approach would run counter to the constitutional mandate for uniformity and the very purpose of the Bankruptcy Code."[4] Reply ¶ 8 & n.5 (citing U.S. Const. art. I, § 8, cl. 4) ("To establish . . . uniform Laws on the subject of Bankruptcies throughout the United States . . . ").

Invoking a minimum contacts analysis from case law on personal jurisdiction, PREPA also argues that this court should apply Puerto Rico law rather than New York case law. *See* Response ¶¶ 6-7 ("PREPA has no minimum contacts with New York with regards to its relationship with Debtors. It would be highly inequitable to apply New York case law to determine that the electricity supplied by PREPA to Debtors in Puerto Rico is not a good and leave without administrative priority under [S]ection 503(b)(9) the value of said electric energy. . . . "). But as PREPA has not argued that the Court lacks jurisdiction here, it is inappropriate to conduct a "minimum contacts" analysis to decide the priority of PREPA's Claims. Indeed, such a result would be inconsistent with the concerns about uniformity discussed above.

Finally, if this Court sought guidance in decisions outside of Section 503(b)(9), it appears that courts do not uniformly treat electricity as a good under the UCC. Most state courts

---

significant policy calling for the imposition of federal choice of law rules exists, bankruptcy courts must apply the choice of law rules of the forum state, here the choice of law rules of New York.").

[4]      Further, even assuming that the Court was to apply a breach of contract lens, rather than a Section 503(b)(9) analysis, PREPA has provided no evidence that Puerto Rico law governs these particular claims. Indeed, PREPA notes that while there may be written contracts that govern these claims, "PREPA has been unable to determine if there are written contracts for all, some, or none of Debtors' accounts with PREPA." Response ¶ 8 n.5.

10

applying the UCC Article 2 definition of goods[5] outside of bankruptcy hold that electricity is a service while in transmission but constitutes a good once metered and identifiable. *See Puget Sound Energy, Inc. v. Pac. Gas & Elec. Co. (In re Pac. Gas & Elec. Co.)*, 271 B.R. 626, 639–40 (N.D. Cal. 2002) (summarizing case law); *see also Cincinnati Gas & Elec. Co. v. Goebel*, 502 N.E.2d 713, 715 (Ohio Mun. Ct., Hamilton Cty. 1986) ("We distinguish electricity in its raw state from metered amounts passing through utility-owned conduits and into the homes of consumers. The latter-described form of electricity is 'goods' as defined in the Uniform Commercial Code."); *Yoby v. Cleveland*, 155 N.E.3d 258, 279 (Ohio Ct. App., Cuyahoga Cty. 2020) (finding that electricity, regardless of meter status, is a service); *Otte v. Dayton Power & Light Co.*, 523 N.E.2d 835, 839 (Ohio Sup. Ct. 1988) ("Consumers, moreover, do not pay for individual electrically charged particles. Rather, they pay for each kilowatt hour provided. Thus, consumers are charged for the length of time electricity flows through their electrical systems. They are not paying for individual products but for the privilege of using . . . service."); *Lilley v. Cape Hatteras Elec. Membership Corp.*, 13 U.C.C. Rep. Serv. 2d 82 (E.D. N.C. 1990), *judgment aff'd on other grounds*, 960 F.2d 146 (4th Cir. 1992) (holding the sale of electricity was not a transaction in "goods" under the North Carolina enactment of UCC Section 2-105). Thus, this case law does not provide any useful guidance in determining the priority of these Claims.

---

[5] The Uniform Commercial Code states: "'[g]oods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities . . . and things in action." UCC § 2-105(1). The comments to the UCC definition state that "[t]he definition of goods is based on the concept of movability. . . . It is not intended to deal with things which are not fairly identifiable as movables before the contract is performed." Official Comment, UCC § 2-105(1). Even outside the context of 2-105, the UCC notes that "identifying" goods at some point prior to delivery is a distinction of goods. *See* UCC §§ 2-501, 2-613, 2-709.

11

## CONCLUSION

For the reasons set forth above, the Debtors' Objection to the Claims is granted. The Debtors are directed to settle an order on three days' notice. The proposed order must be submitted by filing a notice of the proposed order on the Case Management/Electronic Case Filing docket, with a copy of the proposed order attached as an exhibit to the notice. A copy of the notice and proposed order shall also be served upon opposing counsel.

Dated: White Plains, New York
      May 15, 2023

                                */s/ Sean H. Lane*
                                UNITED STATES BANKRUPTCY JUDGE